# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.,* | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |

## DISCLOSURE STATEMENT FOR THIRD AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**
Alfredo R. Pérez
Clifford Carlson
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

**WEIL, GOTSHAL & MANGES LLP**
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors and Debtors in Possession*

Dated: March 24, 2021
      Houston, Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**DISCLOSURE STATEMENT, DATED MARCH 24, 2021**

**Solicitation of Votes on the**
**Plan of Reorganization of**

**FIELDWOOD ENERGY LLC, *ET AL.***

**THIS SOLICITATION OF VOTES (THE "<u>SOLICITATION</u>") IS BEING CONDUCTED TO OBTAIN SUFFICIENT VOTES TO ACCEPT THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES (COLLECTIVELY, THE "<u>DEBTORS</u>") ATTACHED HERETO AS <u>EXHIBIT A</u> (AS MAY BE FURTHER MODIFIED, AMENDED OR SUPPLEMENTED FROM TIME TO TIME, AND TOGETHER WITH ALL EXHIBITS AND SCHEDULES THERETO, THE "<u>PLAN</u>").**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN <u>IS 4:00 P.M. (PREVAILING CENTRAL TIME) ON APRIL 26, 2021</u> UNLESS EXTENDED BY THE DEBTORS.**

**THE RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS MAY VOTE ON THE PLAN IS MARCH 24, 2021 (THE "<u>RECORD DATE</u>").**

---

**RECOMMENDATION BY THE DEBTORS**

The board of directors of Fieldwood Energy Inc. ("**FWE Parent**") and each of the governing bodies for each of its affiliated debtors have approved the transactions contemplated by the Plan. The Debtors believe the Plan is in the best interests of all stakeholders and recommend that all creditors whose votes are being solicited submit ballots to accept the Plan.

Subject to the terms and provisions of that certain *Restructuring Support Agreement* dated as of August 4, 2020 (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**RSA**"), the following parties have agreed to vote in favor of or otherwise support the Plan:

- holders of approximately 87% in aggregate principal amount of Claims under the Debtors' Prepetition FLTL Credit Agreement (as defined herein);

- holders of approximately 88.71% in aggregate principal amount of Claims under the Debtors' Prepetition SLTL Credit Agreement (as defined herein); and

- Apache Corporation.

In addition, the Debtors' Plan is supported by the Prepetition FLFO Lenders holding 100% of the FLFO Claims and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "**Creditors' Committee**").

The Creditors' Committee strongly recommends that all holders of General Unsecured Claims vote to accept the Plan, and that all holders of Unsecured Trade Claims elect for their claims to be treated as Unsecured Trade Claims, execute Trade Agreements, and vote to accept the Plan.

---

**HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THE DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS BEFORE CASTING A VOTE WITH RESPECT TO THE PLAN.**

**NEITHER THIS DISCLOSURE STATEMENT NOR THE MOTION SEEKING APPROVAL THEREOF CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS UNLAWFUL.**

**THE OFFER OF, ISSUANCE OF, AND DISTRIBUTION OF THE NEW EQUITY INTERESTS (OTHER THAN THE BACKSTOP COMMITMENT PREMIUM EQUITY INTERESTS, THE NEW MONEY WARRANTS, AND ANY NEW EQUITY INTERESTS ISSUED UPON EXERCISE OF THE NEW MONEY WARRANTS OR UNDER THE MANAGEMENT INCENTIVE PLAN), THE SUBSCRIPTION RIGHTS, THE SLTL WARRANTS, AND THE GUC WARRANTS UNDER <u>ARTICLE IV</u> OF THE PLAN, AND ANY NEW EQUITY INTERESTS ISSUED UPON EXERCISE OF THE SUBSCRIPTION RIGHTS, THE SLTL WARRANTS, OR THE GUC WARRANTS, SHALL BE EXEMPT, PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE, WITHOUT FURTHER**

ACT OR ACTIONS BY ANY PERSON, FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND ALL RULES AND REGULATIONS PROMULGATED THEREUNDER, AND ANY OTHER APPLICABLE SECURITIES LAWS, TO THE FULLEST EXTENT PERMITTED BY SECTION 1145 OF THE BANKRUPTCY CODE.

THE ISSUANCE AND SALE, AS APPLICABLE, OF THE SECOND LIEN BACKSTOP COMMITMENT PREMIUM EQUITY INTERESTS TO BE ISSUED PURSUANT TO THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE ERO BACKSTOP PREMIUM, AND THE NEW MONEY WARRANTS TO BE ISSUED PURSUANT TO THE NEW MONEY WARRANT AGREEMENT (INCLUDING ANY NEW EQUITY INTERESTS ISSUED UPON EXERCISE OF THE NEW MONEY WARRANTS) ARE BEING MADE IN RELIANCE ON THE EXEMPTION FROM REGISTRATION SET FORTH IN SECTION 4(A)(2) OF THE SECURITIES ACT AND/OR REGULATION D THEREUNDER.

WITH RESPECT TO THE FOREGOING SECURITIES ISSUED IN RELIANCE ON THE EXEMPTION FROM REGISTRATION SET FORTH IN SECTION 4(A)(2) OF THE SECURITIES ACT AND/OR REGULATION D THEREUNDER, SUCH SECURITIES WILL BE CONSIDERED "RESTRICTED SECURITIES" AND MAY NOT BE TRANSFERRED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR UNDER AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUCH AS UNDER CERTAIN CONDITIONS, THE RESALE PROVISIONS OF RULE 144 OF THE SECURITIES ACT. WITH RESPECT TO THE FOREGOING SECURITIES ISSUED PURSUANT TO SECTION 1145(A) OF THE BANKRUPTCY CODE, SUCH SECURITIES MAY BE RESOLD WITHOUT REGISTRATION UNDER THE SECURITIES ACT OR OTHER FEDERAL SECURITIES LAWS PURSUANT TO THE EXEMPTION PROVIDED BY SECTION 4(A)(1) OF THE SECURITIES ACT, UNLESS THE HOLDER IS AN "UNDERWRITER" WITH RESPECT TO SUCH SECURITIES, AS THAT TERM IS DEFINED IN SECTION 1145(B) OF THE BANKRUPTCY CODE. IN ADDITION, SUCH SECTION 1145 EXEMPT SECURITIES GENERALLY MAY BE RESOLD WITHOUT REGISTRATION UNDER STATE SECURITIES LAWS PURSUANT TO VARIOUS EXEMPTIONS PROVIDED BY THE RESPECTIVE LAWS OF THE SEVERAL STATES.

THE AVAILABILITY OF THE EXEMPTION UNDER SECTION 1145 OF THE BANKRUPTCY CODE, SECTION 4(A)(2) OF THE SECURITIES ACT AND/OR REGULATION D THEREUNDER, OR ANY OTHER APPLICABLE SECURITIES LAWS WILL NOT BE A CONDITION TO THE OCCURRENCE OF THE EFFECTIVE DATE.

THE SECURITIES ISSUED PURSUANT TO THE PLAN HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR BY ANY STATE SECURITIES COMMISSION OR SIMILAR PUBLIC, GOVERNMENTAL, OR REGULATORY AUTHORITY, AND NEITHER THE SEC NOR ANY SUCH AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF

THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

CERTAIN STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT, INCLUDING STATEMENTS INCORPORATED BY REFERENCE, PROJECTED FINANCIAL INFORMATION (SUCH AS THAT REFERRED TO IN THE PRECEDING PARAGRAPH AND UNDER THE CAPTION "FINANCIAL PROJECTIONS" ELSEWHERE IN THE DISCLOSURE STATEMENT) AND OTHER FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBED HEREIN.

FURTHERMORE, READERS ARE CAUTIONED THAT ANY FORWARD-LOOKING STATEMENTS HEREIN, INCLUDING ANY PROJECTIONS, ARE SUBJECT TO A NUMBER OF ASSUMPTIONS, RISKS, AND UNCERTAINTIES, MANY OF WHICH ARE BEYOND THE CONTROL OF THE DEBTORS. IMPORTANT ASSUMPTIONS AND OTHER IMPORTANT FACTORS THAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY INCLUDE, BUT ARE NOT LIMITED TO, THOSE FACTORS, RISKS AND UNCERTAINTIES DESCRIBED IN MORE DETAIL UNDER THE HEADING "CERTAIN RISK FACTORS TO BE CONSIDERED" BELOW, AS WELL AS THE VOLATILITY OF AND POTENTIAL FOR SUSTAINED LOW OIL AND NATURAL GAS PRICES, THE SUPPLY AND DEMAND FOR OIL AND NATURAL GAS, CHANGES IN COMMODITY PRICES FOR OIL AND NATURAL GAS, THE DEBTORS' ABILITY TO MEET PRODUCTION VOLUME TARGETS, THE UNCERTAINTY OF ESTIMATING PROVED RESERVES AND UNPROVED RESOURCES, THE DEBTORS' ABILITY TO DEVELOP PROVED UNDEVELOPED RESOURCES AND OTHER RISKS INHERENT IN THE DEBTORS' BUSINESS. PARTIES ARE CAUTIONED THAT THE FORWARD-LOOKING STATEMENTS SPEAK AS OF THE DATE MADE, ARE BASED ON THE DEBTORS' CURRENT BELIEFS, INTENTIONS AND EXPECTATIONS, AND ARE NOT GUARANTEES OF FUTURE PERFORMANCE. ACTUAL RESULTS OR DEVELOPMENTS MAY DIFFER MATERIALLY FROM THE EXPECTATIONS EXPRESSED OR IMPLIED IN THE FORWARD-LOOKING STATEMENTS, AND THE DEBTORS UNDERTAKE NO OBLIGATION TO UPDATE ANY SUCH STATEMENTS. THE DEBTORS AND POST-EFFECTIVE DATE DEBTORS, AS APPLICABLE, DO NOT INTEND AND UNDERTAKE NO OBLIGATION TO UPDATE OR OTHERWISE REVISE ANY FORWARD-LOOKING STATEMENTS, INCLUDING ANY PROJECTIONS CONTAINED HEREIN, TO REFLECT EVENTS OR CIRCUMSTANCES EXISTING OR ARISING AFTER THE DATE HEREOF OR TO REFLECT THE OCCURRENCE OF UNANTICIPATED EVENTS OR OTHERWISE, UNLESS INSTRUCTED TO DO SO BY THE BANKRUPTCY COURT.

NO INDEPENDENT AUDITOR OR ACCOUNTANT HAS REVIEWED OR APPROVED THE FINANCIAL PROJECTIONS OR THE LIQUIDATION ANALYSIS HEREIN.

THE DEBTORS HAVE NOT AUTHORIZED ANY PERSON TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, IN CONNECTION WITH THE PLAN OR THE DISCLOSURE STATEMENT.

THE STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THE DISCLOSURE STATEMENT.

THE INFORMATION IN THE DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN OR OBJECTING TO CONFIRMATION. NOTHING IN THE DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.

ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THE DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

THE PLAN PROVIDES THAT THE FOLLOWING PARTIES ARE DEEMED TO GRANT THE RELEASES PROVIDED FOR THEREIN: (I) THE HOLDERS OF ALL CLAIMS THAT VOTE TO ACCEPT THE PLAN, (II) THE HOLDERS OF ALL CLAIMS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT THAT DO NOT VOTE EITHER TO ACCEPT OR TO REJECT THE PLAN, (III) THE HOLDERS OF ALL CLAIMS OR INTERESTS THAT VOTE, OR ARE DEEMED, TO REJECT THE PLAN BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH THEREIN, (IV) THE HOLDERS OF ALL CLAIMS AND INTERESTS THAT WERE GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH THEREIN BUT DID NOT OPT OUT, AND (V) THE RELEASED PARTIES (EVEN IF SUCH RELEASED PARTY PURPORTS TO OPT OUT OF THE RELEASES SET FORTH THEREIN).

HOLDERS OF CLAIMS IN VOTING CLASSES (1, 3, 4, 5, 6A, AND 6B) HAVE RECEIVED A BALLOT THAT INCLUDES THE OPTION TO OPT OUT OF THE RELEASES CONTAINED IN SECTION 10.7(B) OF THE PLAN. HOLDERS OF CLAIMS AND INTERESTS IN NON-VOTING CLASSES (2, 8 AND 10) HAVE RECEIVED A RELEASE OPT-OUT FORM ATTACHED TO THEIR NOTICE OF NON-VOTING STATUS AND NOTICE OF RIGHT TO OPT OUT OF CERTAIN RELEASES. SEE EXHIBIT F FOR A DESCRIPTION OF THE RELEASES AND RELATED PROVISIONS.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

    A.    Overview of Restructuring Transactions ................................................. 2

    B.    Credit Bid Transaction ........................................................................... 5

          1.    M&A Process ............................................................................... 6

          2.    Negotiations with Consenting Creditors ..................................... 6

          3.    Pro Forma Capital Structure of Credit Bid Purchaser ................ 7

    C.    Further Transaction Proposals ............................................................... 9

    D.    Apache Transactions and FWE I ........................................................... 9

    E.    FWE III ................................................................................................ 11

    G.    Abandoned Properties .......................................................................... 12

          1.    Discussions with the Government, Predecessors, CIOs, and Sureties ..................................................................................... 13

          2.    Agreed Activities on Abandoned Properties, Operational Transition Packets, and 90-Day Transition Services Agreements relating to Abandoned Properties ............................................... 13

          3.    Potential Consensual, Commercial Arrangements with Predecessors ............................................................................. 14

          4.    Notice to Predecessors and CIOs .............................................. 15

    H.    363 Credit Bid Transaction ................................................................. 15

    I.    Settlement with the Creditors' Committee ........................................... 16

    J.    Settlement with the Ad Hoc Group of SLTL Lenders ......................... 17

    K.    Recommendation ................................................................................. 19

    L.    Confirmation Timeline ........................................................................ 19

    M.    Inquiries .............................................................................................. 19

II. SUMMARY OF PLAN TREATMENT ............................................................. 20

III. OVERVIEW OF DEBTORS ........................................................................... 23

    A.    General Overview ................................................................................ 23

    B.    Debtors' Corporate History and Structure ........................................... 24

          1.    Corporate History ..................................................................... 24

          2.    Debtors' Corporate and Governance Structure .......................... 28

    C.    Equity Ownership ................................................................................ 29

    D.    Prepetition Indebtedness ...................................................................... 30

1. First Lien First Out Credit Agreement................................................30

2. First Lien Term Loan Agreement ...................................................31

3. Second Lien Term Loan Agreement................................................32

4. Intercreditor Agreements ............................................................32

5. DB Receivables Facility ..............................................................33

6. Surety Bonds...............................................................................33

7. Unsecured Claims.......................................................................33

8. Intercompany Claims..................................................................33

IV. KEY EVENTS LEADING TO COMMENCEMENT OF CHAPTER 11 CASES ...............34

A. Cost Reduction...................................................................................34

B. Vendor and Surety Issues....................................................................35

C. Prepetition Restructuring Efforts .........................................................35

V. OVERVIEW OF CHAPTER 11 CASES..................................................................37

A. Commencement of Chapter 11 Cases and First Day Motions...............37

B. First Day Motions ..............................................................................37

C. Procedural Motions and Retention of Professionals.............................37

D. Appointment of Creditors' Committee ................................................38

E. Postpetition Hedging Agreements and Treatment of Hedging Obligations Under the Plan..................................................................................39

F. Final Hearing on Vendor, Insurance, Cash Management, and DIP Motion .........39

G. The Creditors' Committee's Challenge Rights.....................................40

H. Statements and Schedules, and Claims Bar Dates ................................40

I. Extension of Debtors' Exclusivity ......................................................41

J. Motion to Approve Second Lien Backstop Commitment Letter ............41

K. Motion to Assume Sublease................................................................43

L. Vendor Program.................................................................................43

M. Lien Analysis ....................................................................................43

P. Regulatory Matters.............................................................................46

Q. Emergency Motion to Compel BP to Perform Under Executory Contracts..........47

VI. RESTRUCTURING TRANSACTIONS AND PLAN IMPLEMENTATION....................48

A. Approval of Credit Bid Transaction ....................................................48

B. Approval of Apache Transactions .......................................................49

C. Approval of Abandonment of Abandoned Properties ...........................50

VII. TRANSFER RESTRICTIONS AND CONSEQUENCES UNDER FEDERAL
SECURITIES LAWS ..................................................................................51

    A.    Section 1145 of the Bankruptcy Code and Subscription Transfers .....................51

    B.    Section 4(a)(2) of the Securities Act and Subscription Transfers.........................52

VIII. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ..................54

    **A.**    Consequences to the Debtors ..............................................................55

        1.    Cancellation of Debt and Reduction of Tax Attributes ............................55

        2.    Limitation of NOL Carryforwards and Other Tax Attributes....................56

        3.    Sale of Certain Assets ...............................................................57

        4.    Potential Transfer of Assets to a Liquidating Trust .................................57

    B.    Consequences to Holders of Certain Claims ...........................................58

        1.    Taxable Exchange – Structure of Credit Bid Transaction .........................58

        2.    Distributions in Discharge of Accrued OID or Interest.............................60

        3.    Character of Gain or Loss ...........................................................60

        4.    Disposition of New Equity Interests .................................................61

        5.    Exercise and Disposition of the SLTL Warrants and GUC
Warrants ................................................................................61

        6.    Disposition of Interests in the Single Share ........................................61

        7.    Tax Treatment of Subscription Rights ...............................................62

    C.    Tax Treatment of a Liquidating Trust and Holders of Beneficial Interests ...........63

        1.    Classification of Liquidating Trust .................................................63

        2.    General Tax Reporting by Liquidating Trust and its Beneficiaries ...........63

    D.    Information Reporting and Back-Up Withholding ......................................64

IX. CERTAIN RISK FACTORS TO BE CONSIDERED ......................................................65

    A.    Certain Bankruptcy Law Considerations ...............................................65

        1.    Risk of Termination of RSA ........................................................65

        2.    Risk of Non-Confirmation of the Plan..............................................66

        3.    Risk of Non-Consensual Confirmation and Conversion into
Chapter 7 Cases.......................................................................66

        4.    Risk of Non-Occurrence of the Effective Date....................................66

        5.    Risks Related to Possible Objections to the Plan.....................................67

        6.    Parties in Interest May Object to Plan's Classification of Claims
and Interests ...........................................................................67

        7.    Conditions to Credit Bid Transaction May Not Be Satisfied ...................67

8. Releases, Injunctions, and Exculpations Provisions May Not Be Approved.................................................................................67

B. Additional Factors Affecting the Value of NewCo and its Subsidiaries ..............68

1. Projections and Other Forward-Looking Statements Are Not Assured, and Actual Results May Vary.................................................68

2. Risks Associated with the Debtors' Business and Industry....................68

C. Factors Relating to New Equity Interests to Be Issued under Plan ......................70

1. Market for Equity of NewCo ...............................................................70

2. Potential Dilution ...............................................................................70

3. Significant Holders .............................................................................70

4. New Equity Interests Subordinated to NewCo's Indebtedness ................70

5. Valuation of NewCo Not Intended to Represent Trading Value of New Equity Interests of NewCo .........................................................71

6. No Intention to Pay Dividends..............................................................71

D. Factors Relating to Second Lien Backstop Commitment Letter ...........................71

1. Bankruptcy Court Might Not Approve Second Lien Backstop Commitment Letter.............................................................................71

E. Risks Related to Equity Rights Offerings and ERO Backstop Agreements..........71

1. Bankruptcy Court Might Not Approve FLTL Equity Rights Offering Procedures or SLTL Equity Rights Offering Procedures ...........71

2. Debtors May Not Secure ERO Backstop Agreements .............................71

F. Risks Related to Recoveries for Holders of General Unsecured Claims Under the Plan.......................................................................................72

1. Allowed General Unsecured Claims Could be More than Projected ........72

2. Residual Distributable Value of the Single Share of Post-Effective Date FWE Parent ...............................................................................72

G. Additional Factors......................................................................................72

1. Debtors Could Withdraw Plan .............................................................72

2. Debtors Have No Duty to Update ..........................................................72

3. No Representations Outside the Disclosure Statement Are Authorized........................................................................................73

4. No Legal or Tax Advice Is Provided by the Disclosure Statement ...........73

5. No Admission Made ............................................................................73

6. Certain Tax Consequences...................................................................73

X. VOTING PROCEDURES AND REQUIREMENTS.....................................................73

A. Voting Deadline .........................................................................................73

iv

|  | B. | Voting Procedures | 74 |
|  | C. | Parties Entitled to Vote | 74 |
|  |  | 1. Fiduciaries and Other Representatives | 76 |
|  |  | 2. Agreements Upon Furnishing Ballots | 76 |
|  |  | 3. Change of Vote | 76 |
|  | D. | Waivers of Defects, Irregularities, etc. | 76 |
|  | E. | Further Information, Additional Copies | 77 |

XI. CONFIRMATION OF PLAN ................................................................................. 77

| | A. | Confirmation Hearing | 77 |
| | B. | Objections to Confirmation | 77 |
| | C. | Requirements for Confirmation of Plan | 79 |
| | | 1. Acceptance of Plan | 79 |
| | | 2. Best Interests Test | 80 |
| | | 3. Feasibility | 81 |
| | | 4. Valuation | 83 |

XII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF PLAN.............. 83

| | A. | Alternative Plan of Reorganization | 83 |
| | B. | Sale under Section 363 of the Bankruptcy Code | 83 |
| | C. | Liquidation Under Chapter 7 of Bankruptcy Code | 84 |

XIII. CONCLUSION AND RECOMMENDATION ..................................................... 84

| Exhibit A: | **Plan** |
| Exhibit B: | **Leases, Rights of Way and Rights of Use and Easement Related to Purchased Oil & Gas Lease Interests** |
| Exhibit C: | **Leases, Rights of Way and Rights of Use and Easement Related to FWE I Oil & Gas Lease Interests** |
| Exhibit D: | **Leases, Rights of Way and Rights of Use and Easement Related to FWE III Oil & Gas Lease Interests** |
| Exhibit E: | **Leases, Rights of Way and Rights of Use and Easement Related to Abandoned Properties** |
| Exhibit F: | **Plan Release Provisions** |
| Exhibit G: | **Credit Bid Purchase Agreement** |
| Exhibit H: | **First Lien Exit Facility Commitment Letter** |
| Exhibit I: | **Second Lien Exit Facility Term Sheet** |
| Exhibit J: | **Apache Term Sheet Implementation Agreement** |
| Exhibit K: | **Organizational Chart** |
| Exhibit L: | **Liquidation Analysis** |
| Exhibit M: | **Valuation Analysis** |
| Exhibit N: | **Financial Projections** |
| Exhibit O: | **Chevron Term Sheet** |

# I.
# INTRODUCTION

Fieldwood Energy LLC ("**FWE**") and its debtor affiliates[2] (each, a "**Debtor**," and collectively, the "**Debtors**" or the "**Company**") submit this disclosure statement (including any exhibits and schedules hereto and as may be further amended, supplemented, or modified, the "**Disclosure Statement**") in connection with the Solicitation of votes on the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* dated March 24, 2021 attached hereto as **Exhibit A** (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**"). The Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") on August 3, 2020 and August 4, 2020 (as applicable, the "**Petition Date**"). The Debtors' chapter 11 cases are being jointly administered for procedural purposes only (together, the "**Chapter 11 Cases**").

The purpose of the Disclosure Statement is to provide information of a kind, and in sufficient detail, to enable creditors of the Debtors that are entitled to vote on the Plan to make an informed decision on whether to vote to accept or reject the Plan. The Disclosure Statement contains, among other things, summaries of the Plan, certain statutory provisions, events contemplated in the Chapter 11 Cases, and certain documents related to the Plan.[3]

As described more fully below, the Plan provides for a comprehensive set of restructuring transactions, including consummation of the Credit Bid Transaction and the Apache Transactions (each as defined below), which are collectively designed to (i) recapitalize and preserve the going concern value of specified Debtors' Deepwater Assets and Shelf Assets (each as defined below) and the jobs of over 1,000 employees and contractors, (ii) maximize recoveries to the Debtors' stakeholders, and (iii) ensure that all plugging and abandonment and decommissioning obligations (the "**P&A Obligations**") are addressed in a methodical and safe manner by responsible parties, as determined by Bureau of Safety and Environmental Enforcement ("**BSEE**").

The restructuring contemplated by the Plan is a significant achievement for the Debtors, developed in the midst of an unprecedented and challenging operating environment. The Debtors strongly believe that the Plan is in the best interests of their creditors, equity holders and estates, and represents the best available alternative at this time. Indeed, the Plan is supported by several of the Debtors' key stakeholders, including the DIP Lenders, the Prepetition FLTL Lenders holding approximately 87% of the FLTL Claims, the Prepetition SLTL Lenders holding approximately 88.71% of the SLTL Claims, the Prepetition FLFO Lenders holding 100% of the FLFO Claims, the Creditors' Committee, and Apache Corporation ("**Apache**"), the predecessor in interest for the vast majority of the Debtors' Shelf Assets. Moreover, the Plan is the culmination

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[3] Capitalized terms used in the Disclosure Statement, but not defined herein, have the meanings ascribed to them in the Plan. To the extent any inconsistencies exist between the Disclosure Statement and the Plan, the Plan will govern.

of extensive arm's length negotiations that have occurred over the past several months with, among others, the Debtors' Consenting Creditors (as defined below), Apache, and the Creditors' Committee and reflects ongoing discussions the Debtors have had with the Debtors' regulators, including representatives from the Bureau of Ocean Energy Management ("**BOEM**"), BSEE, the Department of Interior ("**DOI**") and the Department of Justice ("**DOJ**"), the FLFO Lender, and other key constituencies.

### A. *Overview of Restructuring Transactions*

Pursuant to the RSA by and among the Debtors, lenders holding approximately 87% of the Company's debt under the FLTL Credit Agreement (the "**Consenting FLTL Lenders**"), lenders holding approximately 88.71% of the Company's debt under the SLTL Credit Agreement (the "**Consenting SLTL Lenders**," and, together with the Consenting FLTL Lenders, the "**Consenting Creditors**"),[4] and Apache (together with the Debtors, the Consenting Creditors, and any subsequent person or entity that becomes a party to the RSA, the "**RSA Parties**"), the RSA Parties agreed to support the transactions set forth therein and in the term sheet memorializing the agreement between certain of the Debtors and Apache and certain of its affiliates regarding the framework for a restructuring with respect to the Legacy Apache Properties (as defined below) (the "**Apache Term Sheet**").

Consistent with the RSA, and as discussed in greater detail below, the Plan provides for, among other things, the following transactions to occur on the Effective Date for the below categories of assets and related liabilities:

- **Specified Deepwater Assets and Shelf Assets**: The Debtors will consummate the sale of certain of their assets, including specified Deepwater Assets and Shelf Assets (each defined below), (collectively, the "**Purchased Oil & Gas Lease Interests**") to a new entity ("**Credit Bid Purchaser**") formed at the direction of the Consenting FLTL Lenders for aggregate consideration of approximately $1.03 billion, consisting of (i) a credit bid of the Allowed FLTL Claims up to the FLTL Claims Allowed Amount, (ii) cash in the amount up to approximately $105 million[5], (iii) the GUC Warrants, (iv) the SLTL Warrants, and (v) the assumption of certain liabilities set forth in the Credit Bid Purchase Agreement, including the assumption of the Allowed FLFO Claims remaining following distribution of the FLFO Distribution Amount (approximately $139 million of the FLFO Claims Allowed Amount *less* the approximately $119 million of the principal amount of the First Lien Exit Facility) (the "**Credit Bid Transaction**"). A schedule of the oil and gas leases, rights-of-way and rights-of-use and easement included as part of the

---

[4] Since the RSA was executed on August 4, 2020, additional lenders holding FLTL Claims and/or SLTL Claims have executed joinders to the RSA, including the members of the Ad Hoc Group of SLTL Lenders (as defined below).

[5] The Credit Bid Purchase Agreement caps the total cash consideration to be paid by Credit Bid Purchaser for the Credit Bid Acquired Interests at an amount equal to (i) the proceeds of the up to $185 million Second Lien Exit Facility, plus (ii) the proceeds of the approximately $40 million Equity Rights Offerings, minus (iii) $120 million.

Purchased Oil & Gas Lease Interests is annexed hereto as **Exhibit B**[6] (which may be amended, modified, or supplemented from time to time).

- **Legacy Apache Properties**: After the consummation of the Credit Bid Transaction, FWE will implement a divisive merger pursuant to which FWE will be divided into Fieldwood Energy I LLC ("**FWE I**") and Fieldwood Energy III LLC ("**FWE III**"). Through the divisive merger, FWE I will be allocated and vested with certain assets FWE acquired from Apache (the "**Legacy Apache Properties**") and related liabilities and obligations. FWE I will, among other things, own, operate, plug and abandon, and decommission the Legacy Apache Properties. A schedule of the oil and gas leases, rights-of-way, and rights-of-use and easement related to the Legacy Apache Properties is annexed hereto as **Exhibit C**[7] (which may be amended, modified, or supplemented from time to time).[8]

- **FWE III Properties**: Through the divisive merger, FWE III will be allocated and vested with all of FWE's assets other than the Purchased Oil & Gas Lease Interests, Legacy Apache Properties and Abandoned Properties (defined below) (the "**FWE III Properties**"). FWE III will, among other things, own, operate, plug and abandon, and decommission the FWE III Properties and related assets and liabilities. The oil and gas leases, rights-of-way, and rights-of-use and easement related to the FWE III Properties includes those listed on the schedule annexed hereto as **Exhibit D**[9] (which may be amended, modified, or supplemented from time to time).

- **FWE IV Properties**: In accordance with an executed, non-binding term sheet with Chevron U.S.A. Inc. ("**CUSA**") which is attached hereto as **Exhibit O** (the "**Chevron Term Sheet**") and described in further detail below, FWE will create a new entity, Fieldwood Energy IV LLC ("**FWE IV**"), through a divisive merger and FWE IV will be allocated and vested with certain interests in a portion of the leases assigned previously to FWE by CUSA (and its predecessors and affiliates), and with the platforms, wells, pipelines and equipment (including production equipment) located on and attributable to the CUSA interest in such leases, and any

---

[6] For ease of reference, a copy of the exhibit in excel is available at the following link: http://media.primeclerk.com/fieldwoodenergy/ExhibitBLeasesRelatedtoPurchasedOilGasLeaseInterests.xlsx and in pdf at: http://media.primeclerk.com/fieldwoodenergy/ExhibitBLeasesRelatedtoPurchasedOilGasLeaseInterests.pdf

[7] For ease of reference, a copy of the exhibit in excel is available at the following link: http://media.primeclerk.com/fieldwoodenergy/ExhibitCLeasesRelatedtoFWEIOilGasLeaseInterests.xlsx and in pdf at: http://media.primeclerk.com/fieldwoodenergy/ExhibitCLeasesRelatedtoFWEIOilGasLeaseInterests.pdf

[8] For any lease that is listed on **Exhibit C** (**Leases Related to FWE I Oil & Gas Interests**) and also on any of **Exhibits B, D or E**, (i) FWE I is to obtain solely the right, title and interest of FWE obtained from Apache in such lease and (ii) the interests to be obtained by the Credit Bid Purchaser or FWE III or to be abandoned, as applicable, shall be all right, title and interest of FWE in such lease (less such right, title and interest obtained from Apache).

[9] For ease of reference, a copy of the exhibit in excel is available at the following link: http://media.primeclerk.com/fieldwoodenergy/ExhibitDLeasesRelatedtoFWEIIIOilGasLeaseInterestss.xlsx and in pdf at: http://media.primeclerk.com/fieldwoodenergy/ExhibitDLeasesRelatedtoFWEIIIOilGasLeaseInterests.pdf

3

hydrocarbons produced from such leases, if applicable (collectively "**FWE IV Properties**").

- **Abandoned Properties**: Immediately upon the occurrence of the Effective Date, certain of the Debtors' assets (the "**Abandoned Properties**") will be abandoned pursuant to sections 105(a) and 554(a) of the Bankruptcy Code. The Debtors anticipate that BSEE will issue orders compelling either all or certain entities who are in the chain of title (collectively, the "**Predecessors**") and/or current co-working interest owners (collectively, the "**CIOs**") for each of the Abandoned Properties to perform the P&A Obligations for each respective property. A schedule of the oil and gas leases, rights-of-way, and rights-of-use and easement related to the Abandoned Properties is annexed hereto as **Exhibit E**[10] (which may be amended, modified, or supplemented from time to time).[11] As further detailed below, the Debtors have taken several steps to facilitate the safe and orderly operational transfer of the Abandoned Properties currently operated by the Debtors and are working to reach long-term commercial agreements similar to the FWE I structure with interested Predecessors for assuming operational control for Abandoned Properties operated by the Debtors. The Debtors (i) have dedicated approximately $6 million, in addition to amounts spent in the ordinary course, on safety related repairs and improvements on the Abandoned Properties and (ii) have provided Predecessors detailed operational information on the Abandoned Properties. Additionally, for any Predecessor with whom a consensual arrangement has not yet been agreed to, Credit Bid Purchaser will offer a 90-day transition period post-Effective Date during which Credit Bid Purchaser will offer to manage at the requesting Predecessor's cost and on its behalf any of the Abandoned Properties.

*Satisfaction and Treatment of Claims and Interests*

In addition, the Plan provides for the resolution, satisfaction, settlement and discharge of claims against and interests in the Debtors and their estates. All holders of Allowed Administrative Expense Claims, Allowed DIP Claims, Allowed Postpetition Hedge Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Other Secured Claims will have their claims satisfied in full, either through payment in Cash or other treatment as specified in the Plan.

All holders of Allowed FLFO Claims will receive their Pro Rata Share of the FLFO Distribution Amount and all remaining Allowed FLFO Claims will be assumed by the NewCo Entities, as modified to the extent set forth in the First Lien Exit Facility Documents.

All holders of Allowed FLTL Claims will receive their Pro Rata Share of (i) 100% of the equity in NewCo (subject to dilution as set forth in section 4.4 of the Plan) and (ii) the FLTL Subscription Rights.

---

[10] For ease of reference, a copy of the exhibit in excel is available at the following link: http://media.primeclerk.com/fieldwoodenergy/ExhibitELeasesRelatedtoAbandonedProperties.xslx and in pdf at: http://media.primeclerk.com/fieldwoodenergy/ExhibitELeasesRelatedtoAbandonedProperties.pdf

[11] A Serial Register for the FWE III Properties and Abandoned Properties is available at the following link: http://media.primeclerk.com/fieldwoodenergy/SerialRegisters.pdf

All holders of Allowed SLTL Claims will receive their Pro Rata Share of the SLTL Warrants and the SLTL Subscription Rights.

Holders of Unsecured Trade Claims that have executed Trade Agreements will receive in the aggregate Cash in the amount of the lesser of (i) $8 million and (ii) 14% of the aggregate amount of Allowed Unsecured Trade Claims.

The holders of Allowed General Unsecured Claims will receive their Pro Rata Share of the GUC Warrants (defined below) and any residual distributable value of the Post-Effective Date Debtors and FWE I after satisfaction of (i) Allowed Administrative Expense Claims, Allowed DIP Claims, Allowed Postpetition Hedge Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims, Allowed Unsecured Trade Claims, all Cure Amounts and (ii) all fees, expenses, costs and other amounts pursuant to the Plan and incurred by the Post-Effective Date Debtors in connection with post-Effective Date operations and wind-down.

All holders of other claims against the Debtors or existing equity interests in FWE Parent will not receive a recovery under the Plan.

To facilitate the implementation of the Plan, the Plan provides for (i) the funding of a claims reserve for Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Other Secured Claims, Allowed Unsecured Trade Claims, and Cure Amounts; (ii) the Professional Fee Escrow; (iii) the Plan Administrator Expense Reserve; and (iv) the payment of other fees and expenses, such as fees and expenses incurred under the DIP Order, fees and expenses incurred in connection with implementing the Apache Transactions, and the fees and expenses of the Ad Hoc Secured Lenders' advisors.

The Plan also includes injunctions, releases, and exculpations in sections 10.5, 10.6, 10.7, 10.8, and 10.9. The relevant provisions regarding such injunctions, releases, and exculpations provided under the Plan are annexed hereto as **Exhibit F**. Section 10.7(b) of the Plan provides for releases by holders of claims and interests (the "**Third Party Release**"). Entry of the Confirmation Order by the Bankruptcy Court shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes, by reference, each of the related provisions and definitions under the Plan, and, furthermore, shall constitute the Bankruptcy Court's finding that the Third-Party Release is (i) consensual, (ii) essential to the confirmation of the Plan, (iii) given in exchange for the good and valuable consideration provided by the Released Parties, (iv) a good faith settlement and compromise of the claims released by the Third-Party Release, (v) in the best interests of the Debtors and their estates, (vi) fair, equitable and reasonable, (vii) given and made after due notice and opportunity for hearing, and (viii) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release. You are advised and encouraged to review and consider the Plan carefully, including the release, exculpation and injunction provisions, as your rights might be affected.

### B.  *Credit Bid Transaction*

Before and following the Petition Date, the Debtors explored a dual-track restructuring, where they conducted a robust marketing process for the Deepwater Assets while also engaging in negotiations with the Consenting Creditors regarding the terms of a restructuring that would

include a recapitalization through a sale of the specified Deepwater Assets and Shelf Assets to the Prepetition FLTL Lenders through a credit bid transaction.

### 1. M&A Process

Before the Petition Date, the Company commenced a robust sale and marketing process (the "**M&A Process**") for the Company's Deepwater Assets through its investment banker, Houlihan Lokey Capital, Inc. ("**Houlihan**").

Houlihan, which specializes in advising companies in the oil & gas industry with respect to traditional mergers and acquisitions, asset level acquisitions and divestitures, financial restructuring and recapitalization transactions, conducted the M&A Process from June 30, 2020 through September 3, 2020. Houlihan marketed the Deepwater Assets to 47 parties identified as potential third party buyers. Houlihan's outreach covered a broad spectrum of national and international strategic buyers and financial sponsors who were believed to be potential buyers of the Debtor's Deepwater Assets and have the financial wherewithal to support the proposed transaction. Following the Petition Date, Houlihan continued the M&A Process, which ultimately resulted in 18 parties executing confidentiality agreements and obtaining access to a virtual data room ("**VDR**"), 15 management presentations, and receipt of approximately 12 written bid letters and other indications of interest. In addition, Houlihan provided the Creditors Committee's advisors with access to all of the information provided to potential buyers, including access to the VDR. After analyzing the bids and the financial condition of the bidders and consulting with the DIP Lenders and Consenting FLTL Lenders, the Debtors determined that none of the bids received was actionable.

### 2. Negotiations with Consenting Creditors

Concurrently with the M&A Process, the Debtors continued to engage with the Consenting Creditors regarding the terms of a comprehensive restructuring in accordance with the restructuring term sheet attached as **Exhibit A** to the RSA (the "**Restructuring Term Sheet**"), which provides, in relevant part, that subject to all consent rights of the applicable Consenting Creditors under the RSA, the Debtors' restructuring may include the following transactions:

> "**Specified Assets**. As determined and agreed by the Company, the Requisite DIP Commitment Parties and Requisite FLTL Lenders, through conveyance(s) or divisional merger(s), the transfer or other disposition of all or substantially all of the Specified Assets to one or more purchasers or a new entity ("**Lender NewCo**") to be formed at the direction of the Requisite DIP Commitment Parties and the Requisite FLTL Lenders through (i) a standalone sale or sales pursuant to section 363 of the Bankruptcy Code either via a credit bid or otherwise, (ii) a sale or sales pursuant to a Plan either via a credit bid or otherwise, or (iii) an equitization transaction pursuant to a Plan."

Following several months of negotiations, the Debtors, the Ad Hoc Group of Secured Lenders, and Apache agreed on the terms of the Plan and negotiated a substantially final version of the purchase and sale agreement, by and between FWE, the other seller parties, and the Credit

Bid Purchaser, together with any and all related agreements, exhibits, and schedules in connection therewith, as amended, supplemented or otherwise modified from time to time (the "**Credit Bid Purchase Agreement**"), a copy of which is attached hereto as **Exhibit G**.

On the Effective Date of the Plan, pursuant to sections 105, 363, 365, 1123, 1129, 1141(b) and 1141(c) of the Bankruptcy Code, in accordance with the Credit Bid Purchase Agreement, subject to the satisfaction or waiver of all applicable closing conditions under the Credit Bid Purchase Agreement, (i) all Credit Bid Acquired Interests will be transferred to, and the Credit Bid Acquired Interests owned by the Debtors will vest free and clear of all Liens[12] (other than Credit Bid Permitted Encumbrances except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens), Claims, charges, Interests, or other encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights, and (ii) all Credit Bid Assumed Liabilities will be assumed by the Credit Bid Purchaser. Moreover, the vast majority of the Debtors' employees and management team will continue to be employed by Credit Bid Purchaser.

### 3. Pro Forma Capital Structure of Credit Bid Purchaser

Upon the Effective Date, the Debtors estimate that Credit Bid Purchaser will have up to $304 million in funded debt, comprised of approximately $119 million from the First Lien Exit Facility and up to $185 million from the Second Lien Exit Facility. In addition, the Credit Bid Purchaser is anticipated to raise $40 million through the Equity Rights Offerings on the Effective Date. Of the estimated up to $225 million of new money that the Credit Bid Purchaser is anticipated to raise, $120 million will be used to capitalize the Credit Bid Purchaser's balance sheet, and the remainder will be used to fund the cash portion of the Credit Bid Consideration.

Credit Bid Purchaser's capital structure will consist of:

- *First Lien Exit Facility*. A $118,599,082.31 first lien term loan facility resulting from the assumption of the Allowed FLFO Claims remaining following distribution of the FLFO Distribution Amount (approximately $139 million of the FLFO Claims Allowed Amount *less* the approximately $119 million of the principal amount of the First Lien Exit Facility). A copy of the First Lien Exit Facility Commitment Letter, with the First Lien Exit Facility Term Sheet as an attachment thereto, will be attached hereto as **Exhibit H**.

- *Second Lien Exit Facility*. An up to $185 million second lien term loan facility to be fully backstopped by the Second Lien Backstop Parties in accordance with and subject to the terms and conditions of the Second Lien Backstop Commitment Letter, as further described below in Section V.I. The facility will be comprised of loans in an amount equal to (i) $100 million plus (ii) an additional amount equal to the lesser of (x) $85 million and (y) the amount necessary to provide the Credit Bid Purchaser with no less than $120 million of cash on hand on the Effective Date, after giving effect to all transactions to occur on the Effective Date. 25% of the up to $85 million of new money raised through a debt offering will be allocated to certain of the Second Lien Backstop Parties and 75% will be offered to all DIP

---

[12] Provided that the Retained Properties (as defined in the Apache Implementation Agreement) shall be transferred in accordance with the Decommissioning Agreement.

Lenders, including the Second Lien Backstop Parties and their applicable affiliates, on a *pro rata* basis. In addition, at any time after the Effective Date, the Credit Bid Purchaser will be permitted to borrow up to $50 million under an incremental facility, which incremental facility will not be committed on the Effective Date. $100 million of the proceeds of the Second Lien Term Loan Facility will fund the initial capital needs of the Credit Bid Purchaser, and up to $85 million in proceeds will be used by the Credit Bid Purchaser to purchase the Credit Bid Acquired Assets. A copy of the Second Lien Exit Facility Term Sheet is attached hereto as **Exhibit I**.

Credit Bid Purchaser will raise additional capital through the Equity Rights Offerings:

- **FLTL Equity Rights Offering**. All Prepetition FLTL Lenders will be allowed to participate in a $20 million (the "**FLTL Equity Rights Offering Amount**") equity rights offering (the "**FLTL Equity Rights Offering**") in accordance with the rights offering procedures (the "**FLTL Equity Rights Offering Procedures**"). In addition, the Debtors intend to negotiate the terms of a backstop commitment agreement (the "**FLTL ERO Backstop Agreement**") with certain DIP Lenders and certain FLTL Lenders that elect to participate in the backstop (the "**FLTL ERO Backstop Parties**"), pursuant to which the FLTL ERO Backstop Parties will agree to fully backstop the FLTL Equity Rights Offering in exchange for, among other things, a backstop commitment premium equal to 8% of the FLTL Equity Rights Offering Amount, to be issued at a 30% discount to the equity value of NewCo on the Effective Date. In the coming days, the Debtors plan to file an emergency motion seeking approval of the FLTL Equity Rights Offering Procedures and entry into the FLTL ERO Backstop Agreement and will request that a hearing on such motion be heard no later than the deadline for filing the Plan Supplement.

- **SLTL Equity Rights Offering**. All Prepetition SLTL Lenders will be allowed to participate in a $20 million (the "**SLTL Equity Rights Offering Amount**") equity rights offering (the "**SLTL Equity Rights Offering**") in accordance with the rights offering procedures (the "**SLTL Equity Rights Offering Procedures**"). In addition, the Debtors intend to negotiate the terms of a backstop commitment agreement (the "**SLTL ERO Backstop Agreement**") with the Ad Hoc Group of SLTL Lenders who will participate in the backstop (the "**SLTL ERO Backstop Parties**"), pursuant to which the SLTL ERO Backstop Parties will agree to fully backstop the SLTL Equity Rights Offering in exchange for, among other things, a backstop commitment premium equal to 8% of the SLTL Equity Rights Offering Amount, to be issued at a 30% discount to the equity value of NewCo on the Effective Date. In the coming days, the Debtors plan to file an emergency motion seeking approval of the SLTL Equity Rights Offering Procedures and entry into the SLTL ERO Backstop Agreement and will request that a hearing on such motion be heard no later than the deadline for filing the Plan Supplement.

### C. *Further Transaction Proposals*

The Debtors and Consenting Creditors have been willing to consider actionable proposals from third-parties for transactions that would provide consideration to the Debtors' estates in an amount that exceeds the Credit Bid Amount plus the value of any other consideration provided by the Credit Bid Purchaser to the Debtors pursuant to the Credit Bid Purchase Agreement and the Plan (the aggregate consideration under the Credit Bid Purchase Agreement is currently approximately $1.03 billion, but for the avoidance of doubt, the Credit Bid Amount may be increased up to the FLTL Claims Allowed Amount).

The Debtors continued to consider such proposals pursuant to certain procedures as provided for in the Disclosure Statement Motion (as defined below), up through February 26, 2021, the Bid Deadline. Moreover, the procedures provided, among other things, that in evaluating whether any third-party bids qualify as a Qualified Bid (as defined in the Disclosure Statement Motion), the Debtors may consider several factors including, but not limited to, (i) the amount and form of consideration of the purchase price, (ii) the assets included in or excluded from the bid, (iii) the value to be provided to the Debtors and their estates, (iv) the transaction structure and execution risk, and (v) the impact on all key stakeholders. Moreover, to the extent the Debtors received one or more Qualified Bids on or before the Bid Deadline, the Debtors would have, no later than three (3) Business Days after the Bid Deadline, filed with the Court a notice of receipt of such Qualified Bid(s) and the Debtors' proposed procedures for selecting the highest or otherwise best bid, including, but not limited to, any procedures for submitting revised bids and/or holding an auction to the extent the Debtors determine holding an auction will maximize value to the Debtors' estates. For the avoidance of doubt, the Credit Bid Purchaser (i) shall be deemed a Qualified Bidder that is allowed to participate in any bidding and auction process held by the Debtors and (ii) may increase the Credit Bid Amount of their proposal up to the FLTL Claims Allowed Amount of $1,142,688,815.28 in principal plus any accrued but unpaid interest or fees under the Prepetition FLTL Credit Agreement as of the Petition Date.

Since the Debtors filed the Disclosure Statement Motion, the Debtors have executed at least one confidentiality agreement with an interested party and provided such party additional information regarding its business and access to the VDR. Any third party that sought to submit a Qualified Bid by the Bid Deadline and had demonstrated that it had the ability to submit a Qualified Bid obtained access to the VDR after executing a confidentiality agreement on customary terms that were reasonable to the Debtors.

### D. *Apache Transactions and FWE I*

In accordance with the RSA, the Debtors, the Consenting Creditors, and Apache have negotiated final forms of the definitive documents providing for the transactions contemplated by, or relating to, the Apache Term Sheet (the "**Apache Definitive Documents**"). The documents comprising the Apache Definitive Documents are identified in that certain *Apache Term Sheet Implementation Agreement*, dated January 1, 2021 by and between FWE and GOM Shelf LLC (collectively, the "**Fieldwood PSA Parties**"), on one hand, and Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC (collectively, the "**Apache PSA Parties**"), on the other (the "**Implementation Agreement**"), a copy of which is attached hereto as **Exhibit J**.

The transactions contemplated under the Apache Definitive Documents (collectively, the "**Apache Transactions**") include, among other things, (i) FWE's assumption of any executory contracts[13] or unexpired leases required to implement the Apache Transactions pursuant to the Plan, (ii) FWE's conversion from a Delaware limited liability company to a Texas limited liability company, (iii) FWE's division into FWE I and FWE III in accordance with that certain *Agreement and Plan of Merger of Fieldwood Energy LLC into Fieldwood Energy I LLC and Fieldwood Energy III LLC* (the "**Plan of Merger**"), and (iv) the Credit Bid Purchaser, FWE I and FWE III's entry into various other agreements required to implement the Apache Transactions.

Below is a brief description of FWE I.[14]

FWE I will engage in the ownership and operation of the FWE I Assets, including addressing the FWE I Obligations in accordance with applicable laws and regulations and the Decommissioning Agreement. Certain of those FWE I Obligations will include the plugging and abandonment of wells and the ultimate decommissioning of platforms and offshore infrastructure in the Gulf of Mexico. FWE I will be managed by the Sole Manager selected by the Debtors and Apache in accordance with the Apache Term Sheet, the identity of which will be disclosed in the Plan Supplement before the Confirmation Hearing. Operations of the properties will initially be performed by the Credit Bid Purchaser under a transition services agreement (the "**TSA**") between the parties. Upon any termination of the TSA, FWE I may elect, with the consent of Apache and in accordance with the FWE I LLC Agreement, to have a third-party service provider operate the properties. The Credit Bid Purchaser will employ the vast majority of Debtors' employees post-Effective Date, which will ensure that operations will continue to be handled during the TSA period by personnel with the most experience with these properties. The TSA does not have a specified term, which means it may continue in effect for an extended period of time; however, FWE I and the Credit Bid Purchaser respectively hold a 90-day and a 180-day termination right. Cash flow generated from operations of the Legacy Apache Properties will be used primarily to pay for costs under the TSA and for plugging, abandonment, and decommissioning activities.

In addition to the liquidity provided through cash flows from the Legacy Apache Properties, (i) the Debtors will provide liquidity by capitalizing FWE I on the Effective Date with $50 million minus the accrual of post-petition decommissioning spend by the Debtors on the Legacy Apache Properties, which the Debtors project will be approximately $25 million, and (ii) Apache will provide liquidity in the form of up to $400 million of proceeds to be used by FWE I to perform plugging, abandonment, and decommissioning in accordance with the terms and conditions of the Standby Credit Facility Documents.

Under the Decommissioning Agreement, separate security has previously been provided to Apache to secure plugging, abandonment, and decommissioning obligations associated with the Apache Legacy Properties, including approximately $238 million in funds in Trust A (defined below) and approximately $498 million in letters of credit and surety bonds (payable in accordance with their terms and conditions).

---

[13] To the extent the Decommissioning Agreement (as discussed further below) is an executory contract, it will be assumed and become the obligation of FWE I under the Plan of Merger.

[14] The descriptions of the assets and obligations in this section is for informational purposes only and are qualified in their entirety by reference to the Apache Definitive Documents.

## E. *FWE III*

FWE III will be allocated and vested with those rights, assets, and properties relating to the FWE III Oil & Gas Interests (collectively, the "**FWE III Assets**") and those liabilities and obligations relating to the FWE III Assets (the "**FWE III Obligations**").

On the Effective Date, FWE III will be capitalized with approximately $27 million of capital through a combination of approximately (i) $5-15 million of cash on hand and (ii) $12-22 million in future cash commitments from the Credit Bid Purchaser, which the Debtors believe will provide the Plan Administrator with adequate funding to operate the FWE III Assets, and satisfy the FWE III Obligations, including the P&A Obligations associated with the FWE III Assets. Moreover, an additional $12 million in outstanding security provided by surety bonds will be available to backstop any of the FWE III Obligations (in accordance with the terms and conditions of such bonds).

Upon the Effective Date, the Plan Administrator, the identity of which will be disclosed before the Confirmation Hearing, will serve as the sole officer, director, or manager of FWE III and perform all duties in accordance with the terms of the Plan and Plan Administrator Agreement, a copy of which will be filed in the Plan Supplement. The Plan Administrator's powers and authority include, among other things, engaging in the ownership, operation, plugging and abandonment, and decommissioning of the FWE III Assets, including the FWE III Oil & Gas Lease Interests.

All of the membership interests of FWE I and FWE III will be owned by FWE Parent, as reorganized on the Effective Date ("**Post-Effective Date FWE Parent**"). On the Effective Date, one share of Post-Effective Date FWE Parent common stock (the "**Single Share**") will be issued to the Plan Administrator to hold in trust as custodian for the benefit of holders of Allowed General Unsecured Claims and the Single Share will be recorded on the books and records maintained by the Plan Administrator.

## F. *FWE IV*

Over the past several months, the Debtors and CUSA have been in negotiations regarding a consensual arrangement similar to the agreement reached with Apache at the outset of these chapter 11 cases. The Debtors are pleased to report that these efforts have culminated in an agreement-in-principle with CUSA on a framework for treatment of the FWE IV Properties, which is memorialized in Chevron Term Sheet attached hereto as **Exhibit O**.

The Chevron Term Sheet contemplates that the parties will work in good faith to negotiate the definitive documents and any other agreements required to implement the transaction contemplated in the Chevron Term Sheet in each case in accordance with the terms and conditions set forth herein ("**Chevron Definitive Documents**"). The key terms of the Chevron Term Sheet provide, among others:

- **FWE IV Properties**. FWE will create a new entity, FWE IV, via a Texas divisive merger and FWE IV will be allocated and vested with the FWE IV Properties.

- **Turnkey Removal Agreement**. CUSA, FWE IV and Credit Bid Purchaser will enter into the Turnkey Removal Agreement whereby, upon agreement of the price for a decommissioning project, Credit Bid Purchaser will decommission the corresponding FWE IV Properties on a lump sum, turnkey payment basis, and Credit Bid Purchaser will earn a single pre-agreed payment (turnkey amount) in exchange for completing such decommissioning project. The Turnkey Removal Agreement provides, among other things, that FWE will contribute at Closing $5,000,000 into an escrow account to cover operations to prepare the FWE IV Properties for decommissioning and that FWE IV will pay Credit Bid Purchaser as it performs such work. Credit Bid Purchaser shall not be required to undertake any decommissioning project until funds therefor are in the FWE IV escrow account and funding obligations of co-working interest owners or other predecessors-in-interest have been agreed on by the parties.

- **Contractor Operator Agreement**. FWE IV and Credit Bid Purchaser will enter into a Contract Operator Agreement whereby Credit Bid Purchaser will manage the administrative and corporate expenses of FWE IV along with the FWE IV Properties for a period of 5 years, subject to agreed-upon conditions for assignment.

- **Net Profits**. FWE IV will pay all net profits from production generated by the FWE IV Properties, after deducting royalties and taxes and less amounts required to cover operating expenditures of FWE IV into an escrow account to be used for decommissioning.

- **Neptune Spar Transition Services Agreement**. Credit Bid Purchaser will enter into a transition services agreement for transition services to be provided by Credit Bid Purchaser at CUSA's cost for the period prior to commencement of CUSA's campaign covering decommissioning of the Neptune Spar and related equipment and infrastructure.

- **Deepwater Assets Surety Bond**. Credit Bid Purchaser will deliver to CUSA on the second anniversary of closing of the transaction described in the Chevron Term Sheet a $25 million irrevocable surety bond issued by a qualifying surety, for which CUSA shall be the sole private beneficiary and which CUSA shall be entitled to call to cover and/or to reimburse certain decommissioning costs of certain assets of Credit Bid Purchaser described in the Chevron Term Sheet. If Credit Bid Purchaser does not provide the surety bond, it will establish an escrow fund and provide a five percent (5%) net profit interest on its production until the escrow fund has received $25 million.

### G. *Abandoned Properties*

Immediately upon the occurrence of the Effective Date of the Plan, all of the Abandoned Properties shall be automatically abandoned by the Debtors pursuant to sections 105(a) and 554(a) of the Bankruptcy Code, without further notice or order of the Court. The Debtors anticipate that BSEE will issue orders compelling either all or certain of the Predecessors and/or CIOs for each of the Abandoned Properties to perform the P&A Obligations for each respective property. Debtors have been coordinating with BSEE, Predecessors and CIOs on the safe and orderly operational transfer of the Abandoned Properties.

## 1. Discussions with the Government, Predecessors, CIOs, and Sureties

Since before the Petition Date, the Company has been in active discussions with BOEM and BSEE, as well as representatives from DOI and DOJ, to keep the U.S. government apprised of the Company's restructuring efforts and plans with respect to its properties. The Company has continued discussions with the DOI, DOJ, BOEM and BSEE on a regular basis regarding the structure of the Plan and progress on the Apache Definitive Documents and has provided the DOI, DOJ, BOEM and BSEE with diligence and operational updates on the Debtors' various properties and leases. Additionally, the Debtors are actively engaging in discussions with Predecessors that are being facilitated by the DOI and DOJ for the purpose of ensuring that the Predecessors have access to, and are provided with, appropriate and adequate information on the Abandoned Properties that the Debtors operate to inform them of actions required to take over operational control of such Abandoned Properties.

The Debtors have also been in regular discussions with many of the Predecessors and CIOs regarding the terms of their proposed restructuring, including the Debtors' intent to abandon the Abandoned Properties, in an effort to ensure that responsibility for such Abandoned Properties and the related P&A Obligations are transitioned in an orderly manner to the Predecessors or CIOs, as the case may be, while also exploring the potential to negotiate consensual, commercial arrangements similar to the FWE I structure. To help facilitate these discussions, the Debtors have responded to numerous formal and informal information and document requests, providing such Predecessors and CIOs with access to extensive diligence regarding the Abandoned Properties and other aspects of the Debtors' restructuring and Plan in the form of, among other things, presentations tailored to certain predecessors' potential exposure for P&A Obligations and liability and ways to mitigate such potential liability, access to an online tool (the "**Relativity Site**") that allows for easy sorting to review federal offshore leases and provides relevant information pertaining to each lease interest, including the field, block, lease number, type, rights owned, effective date, expiration date, operator, working interest, and status of the lease. In addition, for each of the FWE III Oil & Gas Lease Interests and Abandoned Properties, the Relativity Site provides (i) all identified predecessors in title and working interest owners, (ii) current record title ownership and chain of record title information, (iii) asset/liability ownership detail, (iv) BOEM bonds with ID number, beneficiary, surety and description tied to each lease, (v) 3rd party bonds with ID number, beneficiary, surety and description, and (vi) BSEE and FWE estimates of asset retirement obligation ("**ARO**") information, including gross/net amounts and asset count information. The Debtors have also been in discussions with their surety providers and have responded to numerous formal and informal information and document requests from the sureties by producing thousands of documents, granting sureties with access to the Relativity Site, and providing certain sureties with presentations tailored to their potential exposure for P&A liability and ways to mitigate such potential liability.

## 2. Agreed Activities on Abandoned Properties, Operational Transition Packets, and 90-Day Transition Services Agreements relating to Abandoned Properties

To facilitate the safe and orderly operational transition of the Abandoned Properties currently operated by the Debtors and the assumption of the P&A Obligations related to same, the Debtors are taking the following actions:

- The Debtors have dedicated approximately $6 million, in addition to amounts spent in the ordinary course, on safety related repairs and improvements on the Abandoned Properties. Despite the circumstances in which the Debtors find themselves and the intention to abandon properties under the Plan, the Debtors have continued to expend resources on the Abandoned Properties during the pendency of the Chapter 11 Cases.

- The Debtors are in the process of completing comprehensive operational transition packets of information ("**OTP**") organized by each abandoned platform and its associated wells and infrastructure, which will provide Predecessors and CIOs with information, or access to information, of a kind and detail that a potential purchaser of such property would require, including extensive information regarding, among other things, the condition of the Abandoned Properties and related equipment (including the status of any applicable Incidents of Non-Compliance, "**INCs**"), all files, records, databases, data, and other information related to the properties, and all applicable permits and regulatory requirements. The Debtors provided the first OTPs to the affected Predecessors during the week of March 1, 2021, and will provide the remaining OTPs to Predecessors and CIOs on a rolling basis as soon as they are ready over the coming weeks.

Additionally, Credit Bid Purchaser will offer a 90-day transition period post-Effective Date during which Credit Bid Purchaser will manage any of the Abandoned Properties at the requesting Predecessor's cost. Beginning the week of March 1, 2021, the Debtors, on behalf of Credit Bid Purchaser, provided identified Predecessors with a form of transition services agreement pursuant to which Credit Bid Purchaser will provide operational and other ancillary services in the same or similar manner that the Debtors have handled those services in the past with respect to the Abandoned Properties. The vast majority of employees of the Debtors will be employed by the Credit Bid Purchaser post-Effective Date, ensuring that the most knowledgeable and experienced personnel will continue to maintain the properties in a safe manner. To the extent any of the funds relating to the $6 million amount described above remained unspent at the end of this period with respect to a specific Abandoned Property, such funds will be provided to the respective Predecessor or spent as agreed.

### 3. Potential Consensual, Commercial Arrangements with Predecessors

The Debtors continue to work toward reaching long-term commercial agreements similar to the FWE I and FWE IV structures with various Predecessors. Under such long-term consensual, commercial agreements, Credit Bid Purchaser would continue for a specified period the management of certain identified Abandoned Properties and the expedient decommissioning of the asset base under terms to be agreed by the parties. A term sheet outlining terms available to all Predecessors that will require operatorship capabilities related to the Abandoned Properties has been provided to all relevant Predecessors. The Debtors have provided (and will continue to provide) the DOI, DOJ, BOEM and BSEE with regular updates on the status of their negotiations with each of the Predecessors.

Although the Debtors are hopeful that these discussions will result in consensual arrangements, there can be no guarantee that the relevant Predecessors will be willing to enter into consensual arrangements with the Debtors regarding the orderly transition of the Abandoned

Properties and related assets. As such, following entry of the Confirmation Order, the Debtors will continue to work—whether on a consensual or nonconsensual basis—with each such Predecessor and, if applicable, CIO to ensure the smooth and safe transition of the Abandoned Properties.

### 4. Notice to Predecessors and CIOs

As detailed in the *Motion Of Debtors For Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (VI) Approving Procedures for Objections to the Assignment and Transfer of Property of The Estate; (VII) Approving Bid Submission Deadline and Procedures for Submission of Higher or Better Bids; and (VIII) Granting Related Relief* filed contemporaneously herewith (the "**Disclosure Statement Motion**"), the Debtors will serve each Predecessor and CIO with a copy of the order approving the Disclosure Statement and notice of the intent to abandon the Abandoned Properties pursuant to the Plan by first class mail or overnight mail.

### H. *363 Credit Bid Transaction*

Pursuant to section 5.2(c) of the Plan, (x) if the Confirmation Date does not occur before the Confirmation Outside Date or (y) if the estimated amount of Allowed Specified Administrative Expense Claims to be satisfied under the Plan on or after the Effective Date is projected at any time prior to the Confirmation Date to exceed the Toggle Amount (the next Business Day after the occurrence of (x) or (y), the "**Toggle Date**"), then, with the consent of the Required DIP Lenders and Requisite FLTL Lenders, the Debtors will:

   (i)   within 7 days of the Toggle Date, file a motion (the "**Toggle Motion**"), in form and substance acceptable to the Debtors, the Required DIP Lenders and Requisite FLTL Lenders, seeking entry of an order of the Bankruptcy Court approving a credit bid sale transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders) pursuant to section 363 of the Bankruptcy Code on substantially the same terms as provided in the Credit Bid Purchase Agreement (which terms shall be acceptable to the Debtors, the Requisite FLTL Lenders, and Required DIP Lenders), free and clear of all Liens (other than (i) any and all Liens securing the FLFO Claim or the First Lien Exit Facility or (ii) Credit Bid Permitted Encumbrances except in the case of Fieldwood U.A. Interests, which shall vest free and clear of all Liens other than Liens described in clause (i) above to the extent contemplated by the First Lien Exit Facility Documents, Claims, charges, Interests, or other encumbrances, the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights that are applicable to the Credit Bid Acquired Interests;

   (ii)  within 15 days of the Toggle Date and subject to the reasonable consent of Apache, the Requisite FLTL Lenders, the Required DIP Lenders and the Debtors, amend the Apache Definitive Documents as reasonably required to effectuate the 363 Credit Bid Transaction to the Credit Bid Purchaser (or another special purpose

bidding entity formed by or at the direction of the Prepetition FLTL Lenders); *provided* that no such actions shall require the Apache PSA Parties to alter the economics of the Apache Definitive Documents without the Apache PSA Parties' express written consent; and

(iii)     within 35 days of the Toggle Date, obtain entry of an order of the Bankruptcy Court approving the 363 Credit Bid Transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders).

## I.   *Settlement with the Creditors' Committee*

On March 9, 2021, the Debtors, together with the Consenting Creditors, reached an agreement in principle with the Creditors' Committee. That agreement is reflected in the Plan and provides, among other things, that:

- An unsecured creditor that is a third-party provider of goods or services to the Debtors and holds a claim arising from the provision of such goods and services (a "**Trade Creditor**") may elect to have its claim treated as an Unsecured Trade Claim; [15]

- Holders of Unsecured Trade Claims will agree (i) to enter into a Trade Agreement (as defined in the Plan) on trade terms that are no less favorable than the terms provided to the Debtors prior to the Petition Date, and (ii) to waive any and all liens against the Debtors, their assets and any co-owned assets, or any other affiliated person or entity (including any co-working interest owner of the Debtors), or any such person's or entity's respective assets or property (real or personal), regardless of the statute or other legal authority upon which the lien is asserted, held or asserted by the Trade Creditor relating to the Unsecured Trade Claim;

- Such holders of Allowed Unsecured Trade Claims in Class 6A that have executed Trade Agreements will receive Cash in the aggregate amount of the lesser of (i) $8 million and (ii) 14% of the Allowed Amount of Allowed Unsecured Trade Claims. Pursuant to the Trade Agreements;

- Holders of Allowed General Unsecured Claims in Class 6B will receive their Pro Rata Share of (i) 8-year warrants for 3.5% of the New Equity Interests (calculated on a fully diluted basis giving effect to the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of the Plan, the New Equity Interests issuable upon the exercise of the Subscription Rights, the Backstop Commitment Premium Equity Interests, and the New Equity Interests issuable upon the exercise of the New Money Warrants and SLTL Tranche 1 Warrants, but excluding the effect of any New Equity Interests issuable in connection with the Management Incentive Plan), with a strike price set at an equity value equal to $1,321,000,000, the terms of which

---

[15] A Trade Creditor that does not elect to have its claim treated as an Unsecured Trade Claim, or that does not agree to enter into a Trade Agreement or waive its liens as provided in the Plan, will have its claim treated as a General Unsecured Claim in Class 6B.

shall be set forth in the GUC Warrant Agreement; *provided*, that if the SLTL Tranche 2 Warrants are exercised, the GUC Warrants shall be subject to adjustment or true-up as necessary to retain such percentage after giving effect to the exercise of the SLTL Tranche 2 Warrants (the "**GUC Warrants**") and (ii) any distributable value of the Post-Effective Date Debtors and FWE I after satisfaction of (x) Allowed Administrative Expense Claims, Allowed DIP Claims, Allowed Postpetition Hedge Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims, Allowed FLFO Claims, all Cure Amounts and (y) all fees, expenses, costs and other amounts pursuant to the Plan and incurred by the Post-Effective Date Debtors in connection with post-Effective Date operations and wind-down;

- the GUC Warrants will be held by FWE Parent for distribution in accordance with the Plan. In addition, to the extent all of the Cash distributable to holders of Allowed Unsecured Trade Claims is not distributed on or about the Effective Date, any such undistributed Cash will be held by FWE Parent for future distribution in accordance with the Plan;

- a person or entity selected by the Creditors' Committee, subject to the consent of the Debtors, Required DIP Lenders, and Requisite FLTL Lenders, with such consent not to be unreasonably withheld, will be appointed as Plan Administrator and the Plan Administrator Expense Reserve shall be funded with $8 million in Cash;

- FLTL Deficiency Claims shall not receive any distribution or recovery under the Plan;

- on the Effective Date, the Post-Effective Date Debtors shall be deemed to have released all preference actions pursuant to section 547 of the Bankruptcy Code against the holders of Unsecured Trade Claims and General Unsecured Claims (in each case, solely in their capacity as holders of Unsecured Trade Claims and General Unsecured Claims, as applicable);

- the Creditors' Committee's will waive, as of the Effective Date, its right as provided in the DIP Order (defined below) to assert any Challenge to certain of the Lenders' asserted liens;

- the Creditors' Committee will support and not object to the Plan; and

- the Creditors' Committee will submit a letter to holders in Classes 6A and 6B of General Unsecured Claims recommending that such holders vote to accept the Plan.

### J. *Settlement with the Ad Hoc Group of SLTL Lenders*

The Debtors filed their initial plan of reorganization on January, 1, 2021 [Docket No. 722] (the "**Initial Plan**"), with the support and the Ad Hoc Group of Secured Lenders and Apache, and subsequently filed an amended plan on March 15, 2021 [Docket No. 1020] (the "**March 15 Plan**"), with the additional support of the Creditors' Committee.

In March 2021, certain of the Prepetition SLTL Lenders formed an ad hoc group represented by Kasowitz Benson Torres LLP (the "**Ad Hoc Group of SLTL Lenders**"). The Ad Hoc Group of SLTL Lenders raised issues with respect to the Debtors' restructuring, the Initial Plan, and the March 15 Plan, including the valuation analysis prepared by Houlihan, attached hereto as **Exhibit M** and the value of the recovery being offered to the Prepetition SLTL Lenders under the March 15 Plan. The Ad Hoc Group of SLTL Lenders believed that they were entitled to additional value on account of their secured claim, given the increases to oil and gas prices between the date of filing the Initial Plan and the March 15 Plan.

The Debtors, the Consenting Creditors, and the Ad Hoc Group of SLTL Lenders, and their respective advisors, engaged in vigorous, arm's-length negotiations to resolve all of their respective issues on a consensual basis. The negotiations were a success, and on March 16, 2021, the Debtors, together with the Consenting Creditors, reached an agreement in principle with the Ad Hoc Group of SLTL Lenders (the "**SLTL Settlement**"). In particular, the SLTL Settlement improves recoveries for SLTL Claims under the Plan, compared to the Initial Plan. That agreement is reflected in the Plan and provides, among other things, that:

- Holders of Allowed SLTL Claims will be separately classified from General Unsecured Claims and will receive their Pro Rata Share of (i) 8-year warrants for 25% of the New Equity Interests, with a strike price set at a $1,321 million equity value, with no Black-Scholes protections (the "**SLTL Tranche 1 Warrants**"), (ii) 8-year warrants for 32.5% of the New Equity Interests, with a strike price at $1,585 million equity value, with no Black-Scholes protections (the "**SLTL Tranche 2 Warrants**" and, together with the SLTL Tranche 1 Warrants, the "**SLTL Warrants**"), and (iii) subscription rights to acquire New Equity Interests with an aggregate value equal to $20 million, issued at a 30% discount to the equity value of NewCo on the Effective Date;

- The Ad Hoc Group of SLTL Lenders will backstop the incremental $20 million equity rights offering, with an 8% backstop fee, which is payable in equity at a 30% discount to the equity value of NewCo on the Effective Date; and

- The Debtors will pay the reasonable professional fees of Kasowitz Benson Torres LLP.

As a result of the SLTL Settlement, the Ad Hoc Group of SLTL Lenders now support the Plan. The Plan is also supported by the Consenting Creditors, Apache, the Prepetition FLFO Lenders, and the Creditors' Committee. The terms of the SLTL Settlement have been embodied in the Plan and will be approved pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code via entry of the Confirmation Order, which will include findings that, among other things, the compromises and settlements under the Plan, including, but not limited to, the SLTL Settlement, are in the best interests of the Debtors, their Estates, their creditors, and other parties in interest and are fair equitable, and well within the range of reasonableness.

The Debtors believe that the Plan, as modified to implement the SLTL Settlement, represents the best available path to the Debtors to reorganize and maximize value for their stakeholders benefit.

### K. *Recommendation*

The Debtors are confident that they can implement the Restructuring described above to maximize stakeholder recoveries. Confirmation of the Plan will facilitate the reorganization and recapitalization of the Debtors' deepwater E&P business into a more streamlined efficient enterprise that will help preserve the jobs of in excess of 1,000 employees and contractors and its ability to successfully exploit oil and gas assets in the Gulf of Mexico to generate revenue and pay royalties to the U.S. Government. Moreover, the Debtors believe that the Plan does so in a manner where the P&A Obligations will continue to be performed in a safe and responsible manner by the relevant parties (as determined by BSEE) and will accelerate the decommissioning work performed on multiple wells, pipelines, platforms, and other facilities and substantially reduce the number of platforms in the Gulf of Mexico. For these reasons, among others, the Debtors strongly recommend that holders of Claims entitled to vote on the Plan vote to accept the Plan.

### L. *Confirmation Timeline*

The Debtors seek to move forward expeditiously with the Solicitation of votes and a hearing on confirmation of the Plan in an effort to minimize the continuing accrual of administrative expenses. Accordingly, subject to the Bankruptcy Court's approval, the Debtors are proceeding on the following timeline with respect to the Disclosure Statement and the Plan:

| | |
|---|---|
| Hearing on Approval of Disclosure Statement | March 24, 2021 1:30 p.m. (prevailing Central Time) |
| Plan Supplement Filing | April 16, 2021 at 4:00 p.m. (prevailing Central Time) |
| Voting Deadline | April 26, 2021 at 4:00 p.m. (prevailing Central Time) |
| Deadline to Object to Confirmation of Plan | April 26, 2021 at 4:00 p.m. (prevailing Central Time) |
| Deadline to File (i) Reply to Plan Objection(s) and (ii) Brief in Support of Plan Confirmation | May 3, 2021 |
| Confirmation Hearing | May 4, 2021 at [●] (prevailing Central Time), subject to the Bankruptcy Court's schedule |

### M. *Inquiries*

If you have any questions about the packet of materials you have received, please contact Prime Clerk LLC, the Debtors' voting agent (the "**Voting Agent**"), at (855) 631-5346 (toll free from the United States or Canada) or +1 (917) 460-0913 (international). Additional copies of the Disclosure Statement, the Plan, or the Plan Supplement (when filed) are available upon written request made to the Voting Agent at the following address:

19

Fieldwood Energy LLC Ballot Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street
New York, NY 10165

Copies of the Disclosure Statement, which includes the Plan and the Plan Supplement (when filed) are also available on the Voting Agent's website, https://cases.primeclerk.com/FieldwoodEnergy/. PLEASE DO NOT DIRECT INQUIRIES TO THE BANKRUPTCY COURT.

## II.
## SUMMARY OF PLAN TREATMENT

The following table summarizes: (i) the treatment of Claims and Interests under the Plan; (ii) which Classes are impaired by the Plan; (iii) which Classes are entitled to vote on the Plan; and (iv) the estimated recoveries for holders of Claims and Interests. The table is qualified in its entirety by reference to the full text of the Plan. The Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes will be treated as set forth in Section 3.6 of the Plan.

| Class and Designation | Treatment | Impairment and Entitlement to Vote | Estimated Allowed Amount | Approx. Percentage Recovery |
|---|---|---|---|---|
| 1 (Other Secured Claims) | Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Post-Effective Date Debtors, such holder shall receive either (i) payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter, (ii) such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired, or (iii) any other treatment consistent with the provisions of section 1129 of the Bankruptcy Code, including by providing such holder with the "indubitable equivalent" of their Allowed Other Secured Claim (which, for the avoidance of doubt, may be in the form of a multi-year promissory note or other financial instrument); *provided*, that any Allowed Other Secured Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties. | Impaired (**Entitled** to vote) | $4.2 million - $9.5 million | 100% |

| Class and Designation | Treatment | Impairment and Entitlement to Vote | Estimated Allowed Amount | Approx. Percentage Recovery |
|---|---|---|---|---|
| 2 (Priority Non-Tax Claims) | Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall, at the option of the Debtors or the Post-Effective Date Debtors (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter; *provided*, that any Allowed Priority Non-Tax Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties. | Unimpaired **(Not entitled** to vote because presumed to accept) | $0 – $500,000 | 100% |
| 3 (FLFO Claims) | Except to the extent that a holder of an Allowed FLFO Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of such Allowed FLFO Claim, (a) each holder of an Allowed FLFO Claim shall receive its Pro Rata Share of the FLFO Distribution Amount and (b) all remaining Allowed FLFO Claims shall be assumed by the NewCo Entities as modified to the extent set forth in the First Lien Exit Facility Documents. The Liens securing the FLFO Claims that attach to the Credit Bid Acquired Interests shall be retained and deemed assigned to the First Lien Exit Facility Agent upon the Effective Date to secure the obligations under the First Lien Exit Facility. | Impaired **(Entitled** to vote) | $138,599,082.31 | 100% |

| Class and Designation | Treatment | Impairment and Entitlement to Vote | Estimated Allowed Amount | Approx. Percentage Recovery |
|---|---|---|---|---|
| 4 (FLTL Claims) | Except to the extent that a holder of an Allowed FLTL Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed FLTL Claim and in consideration for the Credit Bid Transaction, each holder of an Allowed FLTL Claim shall receive its Pro Rata Share of:<br>(i) 100% of the New Equity Interests, subject to dilution by (w) the Backstop Commitment Equity Premium Interests, (x) the New Equity Interests issued upon exercise of the Subscription Rights, (y) any New Equity Interests issued upon the exercise of the New Money Warrants, SLTL Warrants, or the GUC Warrants, and (z) any New Equity Interests issued pursuant to the Management Incentive Plan; and<br>(ii) the FLTL Subscription Rights. | Impaired<br><br>(**Entitled** to vote) | $1,142,688,815.28 [16] | 44.7% -45.4% |
| 5 (SLTL Claims) | Except to the extent that a holder of an Allowed SLTL Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed SLTL Claim, each holder of an Allowed SLTL Claim shall receive its Pro Rata Share of:<br>(i) the SLTL Warrants; and<br>(ii) the SLTL Subscription Rights. | Impaired<br><br>(**Entitled** to vote) | $517,500,000.00 [17] | 16.7% -35.4% |
| 6A (Unsecured Trade Claims) | Except to the extent that a holder of an Allowed Unsecured Trade Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed Unsecured Trade Claim, each holder of an Allowed Unsecured Trade Claim that has executed a Trade Agreement shall receive:<br>(i) if 14% of the aggregate amount of all Allowed Unsecured Trade Claims is less than or equal to $8,000,000, Cash in an amount equal to 14% of the Allowed amount of such holder's Allowed Unsecured Trade Claim; or<br>(ii) if 14% of the aggregate amount of Allowed Unsecured Trade Claims is greater than $8,000,000, its Pro Rata share of $8,000,000. | Impaired<br><br>(**Entitled** to vote) | $43.2 million - $51.9 million | 14% |

---

[16] $1,142,688,815.28 is the principal amount of the Allowed FLTL Claims. In addition, as of the Petition Date, $39,370,574.84 of accrued but unpaid interest or fees were due and owing under the Prepetition FLTL Credit Agreement.

[17] $517,500,000.00 is the principal amount of the Allowed SLTL Claims. In addition, as of the Petition Date, $26,073,707.75 of accrued but unpaid interest or fees were due and owing under the Prepetition SLTL Credit Agreement.

| Class and Designation | Treatment | Impairment and Entitlement to Vote | Estimated Allowed Amount | Approx. Percentage Recovery |
|---|---|---|---|---|
| 6B (General Unsecured Claims) | Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on or after the Effective Date, in full and final satisfaction of and in exchange for such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive, up to the full amount of such holder's Allowed General Unsecured Claim, its Pro Rata Share of: <br>(i) the GUC Warrants; and <br>(ii) any Residual Distributable Value. | Impaired <br><br>(**Entitled** to vote) | $963 million - $1,138 million | 0.8% - 14.3% |
| 7 (Intercompany Claims) | On or after the Effective Date, all Intercompany Claims shall be adjusted, reinstated, or discharged in the Debtors' or Post-Effective Date Debtors' discretion. | Unimpaired <br><br>(**Not entitled** to vote because presumed to accept) | N/A | 0% - 100% |
| 8 (Subordinated Securities Claims) | All Subordinated Securities Claims, if any, shall be discharged, cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Allowed Subordinated Securities Claims will not receive any distribution on account of such Allowed Subordinated Securities Claims. | Impaired <br><br>(**Not entitled** to vote because deemed to reject) | $0 | 0% |
| 9 (Intercompany Interests) | On the Effective Date, all Intercompany Interests, in the Debtors' or the Post-Effective Date Debtors' discretion, shall be adjusted, reinstated, cancelled, or discharged in the Debtors' or Post-Effective Date Debtors' discretion. | Unimpaired <br><br>(**Not entitled** to vote because presumed to accept) | N/A | 0% - 100% |
| 10 (Existing Equity Interests) | On the Effective Date, all Existing Equity Interests shall be canceled, released, and extinguished, and will be of no further force or effect. | Impaired <br><br>(**Not entitled** to vote because deemed to reject) | N/A | 0% |

### III.
### OVERVIEW OF DEBTORS

#### A.  *General Overview*

The Company is one of the largest oil and gas exploration and production companies in the Gulf of Mexico (the "**GOM**").  Its portfolio of properties includes both deepwater assets and shallow water assets in the GOM.  The majority of the Company's shallow water assets were

acquired in 2013 when the Company purchased the Legacy Apache Properties from Apache. The Company's other shallow water assets were acquired through multiple other subsequent transactions including its 2014 acquisition of certain subsidiaries of SandRidge Energy, Inc. comprising its Gulf Coast division (the shallow water "**Non-Apache Properties**" and, together with the shallow water Legacy Apache Properties, the "**Shelf Assets**"). The Company subsequently acquired a number of deepwater assets in 2018 when it purchased Noble Energy, Inc.'s deepwater business (the "**Noble Properties**") as part of its previous chapter 11 case discussed below. Since 2018, the Company has acquired additional interests in its Noble Properties and additional deepwater assets to further diversify and complement its portfolio of properties (together with the Noble Properties, the "**Deepwater Assets**").

Despite the Company's strategic growth plans and diversified mix of properties, the Company's liquidity profile has become volatile in recent years, primarily as a result of (i) the precipitous decline in crude oil prices starting in 2014 and then again in 2020 and (ii) more recently, the effects of the COVID-19 pandemic. These adverse market conditions first led the Company to restructure its balance sheet pursuant to prepackaged chapter 11 cases commenced in February of 2018 – *In re Fieldwood Energy LLC*, Case No. 18-30649 (DRJ) (the "**2018 Restructuring**"). In April 2018, the Bankruptcy Court entered an order confirming the Company's plan of reorganization, pursuant to which the Company reduced its funded debt obligations by more than $1.6 billion and acquired the Noble Properties. Since the 2018 Restructuring, however, worsening market conditions coupled with significant decommissioning costs related to its Shelf Assets have resulted in reduced liquidity for the Company.

## B. *Debtors' Corporate History and Structure*

### 1. Corporate History

FWE was established in December 2012 as a portfolio company of certain energy funds of Riverstone Holdings LLC, a private energy and power-focused investment firm. The Company operates an energy business focused on the acquisition, development, exploration, and production of oil and natural gas properties. The Company's oil and natural gas assets consist primarily of producing oil and natural gas properties located primarily offshore in the GOM. FWE was initially capitalized in September 2013 in connection with the acquisition of shallow water assets from Apache.[18] In early 2014, the Company completed an acquisition of certain GOM assets from SandRidge Energy, Inc.[19] In connection with the 2018 Restructuring, the Company acquired the deepwater Noble Properties. Since 2018, the Company has grown its deepwater asset base through opportunistic acquisitions of additional deepwater assets and through a strategic exploration and development program by drilling and completing five deepwater wells near facilities that FWE either owns, operates, or to which is has a contractual right to flow-back. The combination of FWE's shallow water and deepwater properties makes it one of the largest oil and gas exploration and production companies in the GOM by leasehold and operated production.

---

[18] Debtor GOM Shelf LLC and FW GOM Pipeline, Inc. were also acquired in this acquisition.

[19] The following Debtors were acquired in this transaction: Dynamic Offshore Resources NS, LLC, Fieldwood Energy Offshore LLC, Fieldwood Onshore LLC, Fieldwood SD Offshore LLC, Bandon Oil and Gas GP, LLC, Bandon Oil and Gas, LP, Fieldwood Energy SP LLC, Galveston Bay Pipeline LLC, and Galveston Bay Processing LLC.

The following map illustrates the locations of the Debtors' oil and natural gas properties as of the Petition Date:



As of the Petition Date, the Debtors had over 300 operated platforms spread across more than 1.5 million gross acres. The Debtors employ over 600 employees across their offices in Houston, Lafayette, and offshore. In addition, the Debtors have approximately 500 additional contractor personnel on their facilities on a daily basis. The Debtors maintain operational control over greater than 95% of their diversified asset base. During the first three months of 2020, the Debtors have produced, on average, 79,410 barrels of oil equivalent per day. In a typical year, the Debtors spend significant sums on helicopters, drilling rigs, and various marine vessels to support operations, including support for producing fields, workovers, recompletions, ongoing maintenance, drilling, and decommissioning activities.

Additionally, as one of the largest facility and well owners in the GOM, the Debtors have an extensive well plugging and abandonment ("**P&A**") and decommissioning programs. In recent years, the Company has maintained a robust staff specifically dedicated to managing P&A and decommissioning operations. The Company has performed a significant amount of well-P&A work in-house using Company-owned spreads and specialized employees.

The Company prides itself on being an industry leader in establishing vigorous systems to manage its risk associated with offshore GOM operations effectively and is committed to maintaining safe and efficient operations, with the paramount goal of protecting personnel, the environment, and its facilities. To mitigate risk and support the Company's daily operations, the Company maintains a multi-tier insurance program. The Company's current energy package policy includes insurance coverage for pollution as well as third-party pollution liabilities, control of well, and property damage from operational and windstorm risk. In addition, the Company requires each of its contractors working on its facilities to maintain insurance coverage appropriate for the services provided by the contractor and for the contractor to name the Company as an additional insured under its insurance policies. The Company also requires each contractor to provide contractual indemnification to the Company for bodily injury and property damage arising out of the contractor's operations.

(a)    <u>Regulation of Debtors' Business and Decommissioning Obligations</u>

The Debtors are subject to the local, state, and federal laws and regulations in the jurisdictions where they operate. The laws and regulations that impact the Debtors' operations include those relating to the operation of wells and facilities (including platforms, pipelines, and gathering or processing units), environmental protection, health and safety, and oil and natural gas exploration and development.

The Company's operations in the GOM include a substantial number of oil and gas leases situated in federal waters and issued by the U.S. Department of the Interior. Specifically, the Company owns an interest in over 350 oil, gas, and mineral leases ("**Oil and Gas Leases**"), and is party to hundreds of joint operating agreements, unitization agreements, and farm-out agreements governing operations of the Oil and Gas Leases. Of their Oil and Gas Leases, almost all are offshore leases granted by BOEM or its predecessor entity. Operation of the Oil and Gas Leases in the GOM is subject to regulation by BOEM and BSEE (as well as other federal agencies including the Environmental Protection Agency and the United States Coast Guard) and requires compliance with the regulations of these agencies and other federal regulations and orders issued pursuant to various federal laws, including the Outer Continental Shelf Lands Act. For offshore operations, lessees must obtain BOEM approval for exploration, development, and production plans before the commencement of such operations. In addition to permits required from other agencies such as the U.S. Environmental Protection Agency, lessees must obtain a permit from BSEE before commencing drilling and must comply with regulations governing, among other things, engineering and construction specifications for production facilities, safety procedures, well containment, P&A, and removal of infrastructure facilities. The Company has some operations in Texas and Louisiana; those operations are subject to regulation by various state regulators.

(b)    <u>Obligations to the United States Government</u>

To cover the various obligations of lessees and operators, such as the cost to plug and abandon wells and decommission and remove platforms and pipelines at the end of production on a lease, BOEM may require that lessees post surety bonds or other acceptable financial assurances that such obligations will be met. As of the Petition Date, the Debtors have obtained approximately $175 million in surety bonds for the benefit of BOEM to secure various of the Debtors' P&A Obligations.

(c)    <u>Obligations to Third Parties</u>

Pursuant to BSEE regulations, the Company is jointly and severally liable for P&A obligations with all current and prior owners in the chain of title for all P&A liability that was accrued during the prior and current owners' ownership period. Therefore, in connection with many of its acquisitions of oil and gas properties, the Company has entered into various arrangements with the sellers that establish how the decommissioning of the subject oil and gas properties will be addressed in compliance with BOEM and BSEE regulations, including (as discussed below) with Apache.

<u>Obligations to Third Parties Excluding Apache</u>. As stated, the Debtors have entered into various arrangements with third parties concerning P&A Obligations assumed or that may arise

26

during the Debtors' ownership of any acquired assets. In connection with the P&A Obligations owed to third parties (other than Apache), the Debtors have obtained approximately $494 million in surety bonds and maintain less than $10 million in escrow deposits, in each case for the benefit of such third parties.

Obligations to Apache. As explained above, the Company, in 2013, purchased the Legacy Apache Properties from Apache and agreed to assume decommissioning liabilities for certain properties that Apache previously owned and operated (the Legacy Apache Properties together with the previously owned and operated properties, the "**Apache Properties**"). The Debtors' decommissioning obligations owed to Apache with respect to the Apache Properties is governed by the provisions of the Decommissioning Agreement.

Under the Decommissioning Agreement, the Debtors must spend a minimum amount ($80 million through 2022) each year on decommissioning the Apache Properties or fund any shortfall into a decommissioning trust for which Apache holds a beneficial interest (the "**Trust A**"). If the Company fails to perform the decommissioning required by the government, Apache may perform the decommissioning itself and seek reimbursement from the Company. If the Debtors fail to reimburse Apache, then Apache may then seek reimbursement first from proceeds held in Trust A and then from certain letters of credit or surety bonds issued for its benefit and described below. Any amounts collected by Apache under the letters of credit or surety bonds, but not used for reimbursement for Apache decommissioning work, are required to be deposited into Trust A.

Under the Decommissioning Agreement and related documents, as amended in connection with the 2018 Restructuring, the Company has provided Apache with the following security and credit support relating to decommissioning of the Apache Properties:

- Approximately $498 million in letters of credit, provided that the Company has the right to replace up to $150 million of letters of credit with an equivalent amount of surety bonds in form and substance acceptable to Apache, which the Debtors have exercised;

- The conveyance of net profits interests into Trust A; and

- A first-priority springing lien on the assets of Trust A upon certain conditions being fulfilled, including the condition that the NPIs are recharacterized by the Bankruptcy Court.

Each month, the Debtors are obligated to deposit certain of the net profits generated by certain of the Apache Properties into Trust A. Certain funds in Trust A may be reimbursed to the Debtors if the Company certifies that the required minimum spend on decommissioning will be performed in the applicable year, and other funds in Trust A continue to accrue until the amounts therein equal approximately $300 million. As the Company decommissions the Apache Properties, funds in Trust A and the amount of the letters of credit or surety bonds may be reduced if they together exceed 125% of the Debtors' remaining decommissioning liabilities under the Decommissioning Agreement. Under FWE's decommissioning program, the Company has performed approximately $1.4 billion of decommissioning work, and has plugged and abandoned over 1,100 wells, 400 pipelines, and 380 platforms and other facilities through year-end 2019.

In connection with the 2018 Restructuring, the Debtors and Apache amended the Decommissioning Agreement to its current form. Under the Apache Term Sheet, all of the Debtors' obligations under the Decommissioning Agreement will continue with FWE I.

(d)     2018 Restructuring

On February 15, 2018, the Debtors commenced the 2018 Restructuring in the Bankruptcy Court. Pursuant to a pre-packaged plan of reorganization (the "**2018 Plan**"), the Debtors reduced their total funded debt from approximately $3.3 billion to $1.7 billion and reduced the Company's annual debt service obligations by up to $128 million.

Additionally, pursuant to the 2018 Plan, the Company acquired the deepwater Noble Properties for a purchase price of approximately $480 million, before customary adjustments. The Noble Properties have increased the Company's base of cash-flow positive assets meaningfully and have provided accretive value to the Debtors through operational efficiencies and synergies with the Debtors' existing assets. The Company's purchase of the Noble Properties was funded by a portion of the proceeds from an equity rights offering to certain of the Company's then-second lien lenders (the "**2018 Rights Offering**").

(e)     Other Matters

FWE is the indirect owner of economic interests in approximately 10% of Fieldwood Mexico, with the remaining 90% owned primarily by Riverstone V FW Holdings, LLC and its affiliates. Fieldwood Mexico is not a debtor in these Chapter 11 Cases. Fieldwood Mexico is the designated operator of the undeveloped Ichalkil and Pokoch fields in Mexico and splits all costs and profits equally with its Mexican partner, PetroBal, S.A.P.I. de C.V. FWE manages Fieldwood Mexico and provides technical and administrative services to Fieldwood Mexico pursuant to various service agreements on arm's-length terms.

**2.     Debtors' Corporate and Governance Structure**

FWE Parent is approximately 49% owned by Riverstone Holdings LLC and certain of its affiliates, approximately 49.5% owned by its previous lenders and participants of the 2018 Rights Offering, and approximately 1.5% owned by employees through settlements of restricted stock units issued under a management incentive plan. Collectively, the Debtors consist of 14 entities registered under the laws of Delaware, Texas, and Louisiana. The Debtors also own two wholly-owned, non-debtor, domestic affiliates formed in Delaware and a wholly-owned, non-debtor, non-domestic affiliate formed in the Netherlands. A chart illustrating the Debtors' organizational structure as of the Petition Date is annexed hereto as **Exhibit K**.

All of the other Debtors are wholly-owned, direct or indirect subsidiaries of FWE Parent. FWE Parent's Board of Directors (the "**Board**") functions as the Debtors' governing board with respect to the decision-making underlying these Chapter 11 Cases. The Board has seven members. Before July 8, 2020, G.M. McCarroll served as Chairman of the Board. He was also the Debtors' President and Chief Executive Officer. G.M. McCarroll resigned his positions effective as of July 1, 2020 pursuant to a separation agreement with the Company and continues to provide transition services at the Board's direction under a consulting agreement. The Board thereafter resolved to create an Executive Leadership Team (the "**ELT**") in lieu of appointing an individual to replace

G.M. McCarroll as Chief Executive Officer. The Board has appointed Michael T. Dane (Senior Vice President and Chief Financial Officer), Thomas R. Lamme (Senior Vice President and General Counsel), and Gary D. Mitchell (Senior Vice President – Production) to serve on the ELT. In addition, the Board formed the Leadership Transition Committee (the "**LTC**") to oversee the ELT. Jim LaChance, an independent director, who joined the Board on July 8, 2020, is the sole member of the LTC.

Each Debtor other than FWE Parent is either a member-managed or manager-managed limited liability company or a corporation with a one-person or two-person board of directors, with the exception of one partnership entity that is managed by its general partner. FWE Parent's Board consists of the following seven directors:

| Name | Position |
| --- | --- |
| Mark S. Boyadjian | Independent Director |
| Jason Dillow | Director |
| Bartow Jones | Director |
| Jim LaChance[20] | Independent Director |
| N. John Lancaster | Director |
| Jason Mudrick | Director |
| James H. Painter | Independent Director |

The Company has highly experienced managers for its operations. The Company's core management team consists of the following individuals:

| Name | Position |
| --- | --- |
| Michael T. Dane | Senior Vice President and Chief Financial Officer |
| Thomas R. Lamme | Senior Vice President, General Counsel, and Secretary |
| Gary D. Mitchell | Senior Vice President, Production |
| Gary Janik | Senior Vice President, Reservoir Engineering, Acquisitions and Mexico |
| John Seeger | Senior Vice President, Operations |
| John Smith | Senior Vice President, Business Development |

### C. *Equity Ownership*

The following entities own, directly or indirectly, 10% or more of equity interests in FWE Parent:

a) Certain funds sponsored by, or affiliated with, Riverstone Holdings LLC collectively own approximately 49% of common stock in FWE Parent (the "**Common Stock**").

b) Certain funds sponsored by, or affiliated with, Bardin Hill Investment Partners LP collectively own approximately 12% of the Common Stock.

---

[20] Jim LaChance was appointed a director in July 2020. The terms of his engagement are governed by that certain *Independent Director Agreement*, dated July 12, 2020.

c) Certain funds sponsored by, or affiliated with, Mudrick Capital Management LP collectively own approximately 11% of the Common Stock.

Each of the Debtors other than FWE Parent is directly or indirectly wholly-owned by FWE Parent.

### D. *Prepetition Indebtedness*

Immediately before the Petition Date, the Debtors' funded prepetition indebtedness was approximately $1,800 million, consisting of the following:

| Facility | Maturity | Principal |
|---|---|---|
| Fieldwood - First Lien Debt Obligations | | |
| First Lien First Out Term Loans | 12/31/2021 | $139 million |
| First Lien Last Out Term Loans | 04/11/2022 | $1,143 million |
| Fieldwood - Second Lien Debt Obligations | | |
| Second Lien Term Loans | 04/11/2023 | $518 million |
| Total Funded Debt | | $1,800 million |

The below description of the Debtors' prepetition indebtedness is for informational purposes only and is qualified in its entirety by reference to the specific agreements evidencing such indebtedness.

### 1. First Lien First Out Credit Agreement

Certain of the Debtors are parties to that certain *Second Amended and Restated Credit Agreement-First Out*, dated as of June 28, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified before the date hereof, the "**Prepetition FLFO Credit Agreement**") between FWE, as borrower, FWE Parent, as holdings, Goldman Sachs Bank USA, as administrative agent (the "**Prepetition FLFO Administrative Agent**"), Cantor Fitzgerald Securities ("**CFS**"), as collateral agent (in its capacity as such, the "**Prepetition FLFO Collateral Agent**"), and the Lenders (as defined therein) from time to time party thereto (the "**Prepetition FLFO Lenders**"). The Prepetition FLFO Credit Agreement establishes (i) a term loan credit facility that matures on December 31, 2021, pursuant to which an aggregate principal amount of approximately $50 million in term loans (the "**Initial FLFO Term Loans**") are outstanding, (ii) a multi-draw term loan credit facility that matures on December, 31, 2021, pursuant to which an aggregate principal amount of approximately $50 million in term loans (together with the Initial FLFO Term Loans, the "**FLFO Term Loans**") are outstanding, and (iii) a revolving credit facility that matures on December 31, 2021, pursuant to which (a) an aggregate principal amount of approximately $17 million in revolving loans is outstanding and (b) a reimbursement obligation in favor of the Prepetition FLFO Administrative Agent with respect to approximately $22 million in drawn letters of credit is outstanding, plus, in each case, any applicable interest, fees, and other amounts.

Certain of the Debtors guaranteed the Obligations (as defined in the Prepetition FLFO Credit Agreement (the "**FLFO Obligations**")) of FWE pursuant to that certain *Amended and Restated Guarantee Agreement*, dated as of April 11, 2018, among FWE, FWE Parent, certain other Debtors as guarantors (collectively, with FWE Parent, the "**FLFO Guarantors**") and the

FLFO Collateral Agent. In order to secure the FLFO Obligations and the guarantee provided with respect to the FLFO Obligations, each of FWE and the FLFO Guarantors granted, or confirmed their continuing grant of, a first priority security interest in, and lien upon, substantially all of their material personal property, subject to customary exceptions, pursuant to that certain *Second Amended and Restated Collateral Agreement*, dated as of June 28, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified before the date hereof, the "**FLFO Collateral Agreement**") among FWE, the FLFO Guarantors, the Prepetition FLFO Administrative Agent, and the Prepetition FLFO Collateral Agent. In addition to the liens and security interests granted pursuant to the Prepetition FLFO Collateral Agreement, FWE and certain of the FLFO Guarantors granted, or confirmed their continuing grant of, first priority Mortgages (as defined in the FLFO Credit Agreement, the "**FLFO Mortgages**") on certain oil and gas properties located in Alabama, Louisiana, Mississippi, and Texas, and otherwise in jurisdictions where recordation with BOEM was required.

## 2. First Lien Term Loan Agreement

Certain of the Debtors are parties to that certain *Amended and Restated First Lien Credit Agreement*, dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition FLTL Credit Agreement**"), among FWE, as borrower, FWE Parent, as holdings, the lenders from time to time party thereto (the "**Prepetition FLTL Lenders**" and, together with the Prepetition FLFO Lenders, the "**Prepetition First Lien Lenders**"), and Cantor Fitzgerald Securities, as administrative agent and collateral agent (the "**Prepetition FLTL Administrative Agent**" and, together with the Prepetition FLFO Administrative Agent and the Prepetition FLFO Collateral Agent, the "**Prepetition First Lien Agents**"). As of the Petition Date, the aggregate amount outstanding under the FLTL Credit Agreement was approximately $1,142,688,815.28, plus any unpaid interest, fees, premiums, or other amounts due thereunder.

Certain of the Debtors guaranteed the Obligations (as defined in the FLTL Credit Agreement (the "**FLTL Obligations**")) of FWE pursuant to that certain *Amended and Restated Guarantee Agreement*, dated as of April 11, 2018, among FWE, FWE Parent, certain other Debtors as guarantors (collectively, with FWE Parent, the "**FLTL Guarantors**") and the FLTL Administrative Agent. In order to secure the FLTL Obligations and the guarantee provided with respect to the FLTL Obligations, each of FWE and the FLTL Guarantors granted, or confirmed their continuing grant of, a first priority security interest in, and lien upon, substantially all of their material personal property, subject to customary exceptions, pursuant to that certain Amended and Restated Collateral Agreement, dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified before the date hereof, the "**FLTL Collateral Agreement**", and, together with the FLFO Collateral Agreement, the "**First Lien Collateral Agreements**") among FWE, the FLTL Guarantors and the FLTL Administrative Agent, as collateral agent. In addition to the liens and security interests granted pursuant to the FLTL Collateral Agreement, FWE and certain of the FLTL Guarantors granted, or confirmed their continuing grant of, first priority Mortgages (as defined in the FLTL Credit Agreement and, together with the FLFO Mortgages, the "**First Lien Mortgages**", the First Lien Mortgages, together with the First Lien Collateral Agreements and any other "Security Documents" as defined in the Prepetition FLFO Credit Agreement and Prepetition FLTL Credit Agreement, respectively, the "**First Lien Security Documents**") on certain oil and gas properties located in Alabama, Louisiana, Mississippi, and Texas, and otherwise in jurisdictions where recordation with BOEM

was required. The security interest and lien securing the FLTL Obligations is *pari passu* with the security interest and lien securing the FLFO Obligations; however, pursuant to the terms of the Pari Passu Intercreditor Agreement (as defined below), any proceeds from the collateral securing the FLFO Obligations and the FLTL Obligations are required to be applied first towards the repayment of the FLFO Obligations and, thereafter, towards the repayment of the FLTL Obligations.

### 3. Second Lien Term Loan Agreement

Certain of the Debtors are parties to that certain *Amended and Restated Second Lien Credit Agreement*, dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition SLTL Credit Agreement**" and, together with the Prepetition FLFO Credit Agreement and Prepetition FLTL Credit Agreement, the "**Prepetition Credit Agreements**"), among FWE, as borrower, FWE Parent, as holdings, the lenders from time to time party thereto (the "**Prepetition SLTL Lenders**" and, together with the Prepetition First Lien Lenders, the "**Prepetition Lenders**"), and Cortland Capital Market Services LLC, as administrative agent and collateral agent (the "**Prepetition SLTL Administrative Agent**" and, together with the Prepetition First Lien Agents, the "**Prepetition Administrative Agents**"). As of the Petition Date, the aggregate amount outstanding under the Prepetition SLTL Credit Agreement was approximately $517,500,000, plus any unpaid interest, fees, premiums, or other amounts due thereunder (collectively, the "**SLTL Claims**").

Certain of the Debtors guaranteed the Obligations (as defined in the SLTL Credit Agreement (the "**SLTL Obligations**")) of FWE pursuant to that certain *Amended and Restated Guarantee Agreement*, dated as of April 11, 2018, among FWE, FWE Parent, certain other Debtors as guarantors (collectively, with FWE Parent, the "**SLTL Guarantors**") and the Prepetition SLTL Administrative Agent. In order to secure the SLTL Obligations and the guarantee provided with respect to the SLTL Obligations, each of FWE and the SLTL Guarantors granted, or confirmed their continuing grant of, a second priority security interest in, and lien upon, substantially all of their material personal property, subject to customary exceptions, pursuant to that certain Amended and Restated Collateral Agreement, dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified before the date hereof, the "**SLTL Collateral Agreement**") among FWE, the SLTL Guarantors and the SLTL Administrative Agent, as collateral agent. In addition to the liens and security interests granted pursuant to the SLTL Collateral Agreement, FWE and certain of the SLTL Guarantors granted, or confirmed their continuing grant of, second priority Mortgages (as defined in the SLTL Credit Agreement, and, together with the First Lien Mortgages, the "**Mortgages**", the Mortgages, together with the First Lien Security Documents and any other "Security Documents" as defined in the SLTL Credit Agreement, the "**Security Documents**") on certain oil and gas properties located in Alabama, Louisiana, Mississippi, and Texas, and otherwise in jurisdictions where recordation with BOEM was required.

### 4. Intercreditor Agreements

The relative contractual rights of the Prepetition FLFO Lenders, on the one hand, and the Prepetition FLTL Lenders, on the other hand, are governed by that certain *Pari Passu Intercreditor Agreement*, dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Pari Passu Intercreditor Agreement**"). The Pari

Passu Intercreditor Agreement controls the rights and obligations as among the holders of the FLFO Obligations (the "**Prepetition FLFO Secured Parties**"), the holders of the FLTL Obligations (together with the Prepetition FLFO Secured Parties, the "**Prepetition First Lien Credit Agreement Secured Parties**") and certain other providers of Secured Hedge Agreements (as defined in the Pari Passu Intercreditor Agreement) with respect to, among other things, priority of security over collateral, matters of debtor-in-possession financing, the use of cash collateral, and adequate protection.

The relative contractual rights of the Prepetition First Lien Credit Agreement Secured Parties, on the one hand, and holders of the SLTL Obligations (the "**Prepetition Second Lien Secured Parties**"), on the other hand, are governed by that certain *Intercreditor Agreement*, dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Senior Intercreditor Agreement**"). The Senior Intercreditor Agreement controls the rights and obligations of the Prepetition First Lien Credit Agreement Secured Parties and the Prepetition Second Lien Secured Parties with respect to, among other things, priority of security over collateral, matters of debtor-in-possession financing, the use of cash collateral, and adequate protection.

### 5. DB Receivables Facility

Certain of the Debtors and a non-Debtor affiliate are parties to that certain *Master Receivables Purchase Agreement* dated as of December 23, 2019 among FWE, as originator, FW FinCo LLC, as seller, Deutsche Bank AG New York Branch, as administrative agent, Deutsche Bank Trust Company Americas, as a purchaser and the other purchasers party thereto (the "**DB Receivables Facility**"). As of the Petition Date, there were no amounts due and owing on the DB Receivables Facility. Subsequent to the Petition Date, the DB Receivables Facility terminated on its own terms.

### 6. Surety Bonds

Before the Petition Date, the Company had approximately $1.165 billion in surety bonds that it maintains to satisfy various contractual and regulatory requirements. As stated above, this includes approximately $177 million in surety bonds for the benefit of BOEM. This also includes $498 million in surety bonds and contracts similar to surety bonds, which either have been issued directly to Apache on the Company's behalf or have been issued to Deutsche Bank as collateral for an equal dollar amount of letters of credit that Deutsche Bank has issued to Apache on the Company's behalf.

### 7. Unsecured Claims

Further, in the ordinary course of their business, the Debtors incur trade debt with numerous vendors in connection with their operations. However, a significant number of the Debtors' prepetition trade obligations have been satisfied by the Debtors in accordance with first day relief granted by the Bankruptcy Court (as described below).

### 8. Intercompany Claims

In the ordinary course of business, intercompany transactions (collectively, "**Intercompany Transactions**," and each intercompany receivable and payable generated

pursuant to an Intercompany Transaction, an "**Intercompany Claim**") occur when, among other things, (i) FWE receives funds on behalf of Debtor and non-Debtor affiliates and managed entities (the "**Non-Debtor Affiliates**"), (ii) FWE makes payments and disbursements on behalf of Debtor and Non-Debtor Affiliates, and (iii) funds are transferred between and among the Debtors and the Non-Debtor Affiliates (primarily between FWE, Fieldwood Mexico, and SP 49 Pipeline LLC).

Debtor to Debtor Intercompany Transactions and Intercompany Claims are not generally settled by actual transfers of cash among the Debtors. Instead, the Debtors track all Intercompany Transactions and Intercompany Claims electronically in their centralized accounting system, the results of which are recorded concurrently on the applicable Debtor's balance sheets and regularly reconciled. The accounting system requires that all general ledger entries be balanced at the legal-entity level and, therefore, when the accounting system enters an intercompany receivable on one entity's balance sheet, it also automatically creates a corresponding intercompany payable on the applicable affiliate's balance sheet. This results in a net balance of zero when consolidating all intercompany accounts. Additional detail regarding Intercompany Transactions and Intercompany Claims is set forth in the Cash Management Motion (defined below).

# IV.
# KEY EVENTS LEADING TO
# COMMENCEMENT OF CHAPTER 11 CASES

The Company proactively took a number of steps before filing these Chapter 11 Cases in an effort to deleverage its balance sheet, bolster liquidity, address near-term interest payments, and maximize value for stakeholders. The Company, however, has continued to face a challenging commodity price environment, which has constrained its liquidity and affected operations. Ultimately, the precipitous decline in oil prices from the combined effect of the COVID-19 pandemic and general deterioration of commodity prices forced the Company to pursue restructuring transactions.

### A. *Cost Reduction*

The Company commenced production shut-ins during late March 2020 in response to the deteriorating commodity price environment. Initially, twenty-nine (29) low-margin shelf fields were shut-in, resulting in a savings of approximately $5 million in monthly operating expenses. The Company, thereafter, commenced a broad shut-in during late April 2020 due to the continued oil price collapse. The Company effectively shut-in all operated production fields other than eight (8) dry gas fields and one shelf field. For deepwater assets, all properties except one non-operated field were shut-in from late April 2020 to June 2020. The Company was able to limit its operating expenses during the shut-in period.

In addition to the shut-ins, the Company has implemented other cost savings measures, such as a reduction in force, salary reductions for certain staff and contractors, including a 10% salary cut for corporate employees earning more than $150,000 per year, elimination of the matching program under the 401(k) plan for employees, and stricter vendor management practices.

## B. *Vendor and Surety Issues*

As a result of the foregoing, before the Petition Date, several of the Company's vendors and surety providers took action, or threatened to take action, to secure payments of alleged amounts that are either due and owing or may become due and owing in the future. For example, in the months leading up to the Petition Date, the Company received numerous demands from several of its surety providers requesting that the Company either release them from their bonds, or, in the alternative, post collateral in the amounts of their unreleased bonds. In fact, after sending one or more demand letters, two sureties filed lawsuits against the Company. In one lawsuit, filed in the United States District Court for the Southern District of Texas (Houston Division), Travelers Casualty and Surety Company of America ("**Travelers**") alleges that defendants have breached certain obligations under an indemnity agreement and seeks, among other relief, an injunction requiring the defendants to either release Travelers from certain performance bonds or provide collateral to secure defendants' obligations under the indemnity agreements in the amount of $60,000,000. FWE is also a defendant in a lawsuit filed by Aspen American Insurance Company ("**Aspen**") in the District Court of Harris County, Texas. Aspen's complaint alleges FWE breached its contract with Aspen by failing to post collateral sufficient to protect Aspen in the event of claims being made under certain performance bonds issued by Aspen. Aspen seeks monetary damages as a result of the alleged breach. The Debtors have filed answers to both lawsuits, contesting (among other allegations) that they breached the indemnity agreements and that the surety providers are entitled to any equitable relief such as an injunction. Both lawsuits are currently stayed by the automatic stay.

## C. *Prepetition Restructuring Efforts*

Before filing these Chapter 11 Cases, the Company took several steps to attempt to address its capital structure and liquidity needs without a comprehensive in-court restructuring. Despite these efforts, it became apparent that the Debtors' revenue and cash flow generating capacity would not be sufficient to service their outstanding debt on a go-forward basis and to maintain the liquidity necessary to operate their businesses and preserve long-term viability and enterprise value.

As a result, the Company determined that a restructuring transaction was necessary to position itself for long term success. The Debtors retained Weil, Gotshal & Manges LLP ("**Weil**"), as restructuring counsel, and Houlihan, as investment banker, to explore strategic alternatives and assist in developing and implementing a comprehensive plan to restructure its balance sheet. The Debtors also retained AlixPartners, LLP ("**AlixPartners**"), as financial advisor, to assist in preparing their operations for a potential chapter 11 restructuring as part of their contingency plan.

As discussions regarding a potential restructuring transaction progressed, it became necessary for the Company to seek forbearances under its Credit Agreements to provide additional time for negotiations over potential restructuring transactions to develop. On May 7, 2020, the Company entered into certain *Temporary Limited Forbearance and Amendment* agreements (collectively, the "**TLF Agreements**") with consenting lenders for each Prepetition Credit Agreement (collectively, the "**TLF Consenting Lenders**"). The TLF Agreements required the TLF Consenting Lenders to forbear from exercising their respective rights and remedies under the Credit Agreements with respect to certain defaults by the Company under the various Credit Agreements. Among the defaults were the Company's failure to deliver a Conforming Audit

35

Opinion (as defined under the TLF Agreements) to the FLFO Administrative Agent, the Company's failure to satisfy its reimbursement obligations with respect to payment under a certain letter of credit in accordance with the FLFO Credit Agreement, and the Company's failure to make certain interest payments under the Credit Agreements, including interest payments that became due on April 30, 2020 in the amount of approximately $1.3 million under the FLFO Credit Agreement, $20 million under the FLTL Credit Agreement, and $11.7 million under the SLTL Credit Agreement.

As part of the TLF Consenting Lenders' agreement to forbear from exercising their contractual rights with respect to defaults under the Credit Agreements, the TLF Consenting Lenders and the Company agreed to certain forbearance milestones. The milestones were intended to help facilitate negotiations to ensure continued progress toward a potential restructuring transaction. The milestones included, among other things, the Company's requirement to deliver to the TLF Consenting Lenders, and/or their agents or advisors by dates certain, a strategic monthly operating plan, a comprehensive restructuring term sheet, a 13-week consolidated weekly cash flow forecast, and a DIP budget.

Thereafter, the Company and TLF Consenting Lenders executed four amendments to the TLF Agreements, including to extend the forbearance periods thereunder, with the most recent amendments extending the forbearance periods to July 31, 2020. The forbearance periods were further extended by email leading up to the Petition Date.

During the months leading up to the Petition Date, the Company worked alongside its lenders and other stakeholders to formulate strategic alternatives. These efforts culminated in an agreement with Apache on the framework for a restructuring with respect to the Legacy Apache Properties. The framework is memorialized in the Apache Term Sheet, executed on July 31, 2020. The Apache Term Sheet is attached as **Exhibit B** to the Restructuring Term Sheet, which is annexed to **Exhibit A** of the *Declaration of Michael Dane in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 29] (the "**First Day Declaration**"). A summary of the Apache Term Sheet is set forth in paragraphs 8-11 of the First Day Declaration. As explained above, given that the P&A Obligations related to the Legacy Apache Properties are among the Company's most significant liabilities, the terms set forth under the Apache Term Sheet form the cornerstone of the Debtors' restructuring and provide a resolution for one of the Debtors' most significant liabilities.

After extensive negotiations, the Company reached an agreement with Apache and the Ad Hoc Group of Secured Lenders on the Restructuring Term Sheet and the RSA, both of which further refined the terms of the Debtors' reorganization. The RSA, which was executed on August 4, 2020, is attached to the First Day Declaration as **Exhibit A**, with the Restructuring Term Sheet attached thereto as **Exhibit A**. A summary of the Restructuring Term Sheet and RSA is set forth in paragraphs 12-13 of the First Day Declaration. With the framework for the Debtors' restructuring in place, the Debtors filed for chapter 11.

36

**V.**
**OVERVIEW OF CHAPTER 11 CASES**

### A. *Commencement of Chapter 11 Cases and First Day Motions*

On August 3, 2020 and August 4, 2020, the Debtors commenced their Chapter 11 Cases. The Debtors continue managing their properties and operating their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### B. *First Day Motions*

On August 4, 2020, the Debtors filed multiple motions seeking various relief from the Bankruptcy Court to enable the Debtors to facilitate a smooth transition into chapter 11 and minimize any disruptions to the Debtors' operations (the "**First Day Motions**"). The Bankruptcy Court granted substantially all of the relief requested in the First Day Motions and entered various orders authorizing the Debtors to, among other things:

- Restrict certain transfers of equity interests in the Debtors (the "**NOL Motion**") [Docket Nos. 50, 327];

- Pay certain prepetition taxes and assessments [Docket No. 60];

- Continue paying employee wages and benefits [Docket No. 51];

- Continue insurance and surety bond programs (the "**Insurance Motion**") [Docket Nos. 152, 340];

- Obtain postpetition financing and use of cash collateral (the "**DIP Motion**") [Docket Nos. 58, 346];

- Continue the use of the Debtors' cash management system, bank accounts, and business forms (the "**Cash Management Motion**") [Docket Nos. 49, 341];

- Pay certain prepetition interest owner obligations, joint interest billings, and operating expenses (the "**JIB/Critical Vendor Motion**") [Docket Nos. 62, 342]; and

- Establish procedures for utility companies to request adequate assurance of payment and to prohibit utility companies from altering or discontinuing service [Docket No. 61].

### C. *Procedural Motions and Retention of Professionals*

The Debtors have filed various motions regarding procedural issues that are common to chapter 11 cases of similar size and complexity as these Chapter 11 Cases. The Bankruptcy Court granted substantially all of the relief request in such motions and entered various orders authorizing the Debtors to, among other things:

- Jointly administer the Debtors' estates [Docket No. 17];

37

- File a consolidated creditor matrix and list of 30 largest unsecured creditors and modify the requirement to file a list of equity security holders [Docket No. 57];

- Establish procedures for the interim compensation and reimbursement of expenses of chapter 11 professionals [Docket No. 367];

- Employ professionals utilized by the Debtors in the ordinary course of business [Docket No. 293];

- Extend the deadline to remove civil actions [Docket No. 631];

- Extend the deadline to file Bankruptcy Rule 2015.3 reports [Docket No. 638]; and

- Extend the deadline to assume or reject unexpired leases of nonresidential real property [Docket No. 712].

The Debtors filed several applications and obtained authority to retain various professionals to assist the Debtors in carrying out their duties under the Bankruptcy Code during the Chapter 11 Cases. These professionals include (i) AlixPartners; (ii) Houlihan, as investment banker; (iii) Weil, as counsel to the Debtors; (iv) Jones Walker LLP; (v) Ryan LLC; and (vi) Prime Clerk LLC, as claims, noticing, and solicitation agent. The Bankruptcy Court has entered orders authorizing the retention of certain of these professionals [Docket Nos. 412 (AlixPartners), 530 (Houlihan), 355 (Weil), 411 (Jones Walker), 1014 (Ryan LLC), and 19 (Prime Clerk)]. The Debtors reserve the right to seek and retain additional professionals. As of the date hereof, 29 professionals utilized in the ordinary course filed declarations regarding their retention by the Debtors.

### D.  *Appointment of Creditors' Committee*

On August 18, 2020, the Creditors' Committee was appointed by the Office of the United States Trustee for Region 7 (the "**U.S. Trustee**") pursuant to section 1102 of the Bankruptcy Code to represent the interests of unsecured creditors in these Chapter 11 Cases [Docket No. 183]. The original members of the Creditors' Committee included (i) Oceaneering International, Inc.; (ii) Subsea 7 US LLC; (iii) Halliburton Energy Services, Inc.; (iv) TETRA Technologies, Inc.; and (v) Workstrings International, L.L.C. The Creditors' Committee has retained Stroock & Stroock & Lavan LLP ("**Stroock**") and Pachulski Stang Ziehl & Jones LLP ("**Pachulski**") as co-counsel[21], and Conway MacKenzie, LLC ("**Conway**") as its financial advisor. The Bankruptcy Court entered orders authorizing the Creditors' Committee's retention of such professionals [Docket Nos. 471 (Stroock), 472 (Conway), and 1044 (Pachulski)]. The Creditors Committee is currently comprised of: (i) Sea Robin Pipeline, LLC, (ii) Aggreko, LLC, and (iii) Partco, LLC.

---

[21] On February 19, 2021, the Creditors' Committee filed the *Application for Approval of the Employment of Pachulski Stang Ziehl & Jones LLP as Co-Counsel to the Official Committee of Unsecured Creditors, Effective as of January 20, 2021* [Docket No. 894] to retain Pachulski as its counsel, in place of Cole Schotz P.C.

### E. *Postpetition Hedging Agreements and Treatment of Hedging Obligations Under the Plan*

On August 18, 2020, the Debtors filed the *Emergency Motion of Debtors for Order (I) Authorizing Debtors to (A) Enter into and Perform Under New Postpetition Hedging Agreements, and (B) Grant Related Liens and Superpriority Claims, and (II) Modifying Automatic Stay, and (III) Granting Related Relief* [Docket No. 185] (the "**Hedging Motion**"). On August 24, 2020, the Bankruptcy Court entered the *Emergency Order (I) Authorizing Debtors to (A) Enter into and Perform Under New Postpetition Hedging Agreements and (B) Grant Related Liens and Superpriority Claims, (II) Modifying Automatic Stay, and (III) Granting Related Relief* [Docket No. 242] (the "**Hedging Order**").

Pursuant to the Hedging Order, the Debtors have entered into and performed under new financial derivative transactions pursuant to contracts (the "**Postpetition Hedging Agreements**" and the claims arising thereunder, the "**Hedging Obligations**") in the ordinary course of business. In accordance with the DIP Order and Hedging Order, the Debtors have secured and otherwise ensured payment of the Hedging Obligations by providing the hedging counterparties: (a) superpriority administrative claims on account of the Hedging Obligations under section 364(c)(1) of the Bankruptcy Code, which are *pari passu* with the DIP Obligations (as defined in the DIP Order) provided under the DIP Order, and (b) first-priority liens in the DIP Collateral which are *pari passu* with the DIP Liens.

Pursuant to Section 2.7 of the Plan, on (or as soon thereafter as is reasonably practicable) the later of (a) the Effective Date and (b) the first Business Day on which the Allowed Postpetition Hedge Claim becomes due and owing in accordance with the terms of and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities, each holder of an Allowed Postpetition Hedge Claim shall receive in full and final satisfaction of such Claim, either (x) Cash in an amount equal to the Allowed amount of such Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code or (y) such other treatment as to which the Debtors, the Post-Effective Date Debtors, or NewCo and its subsidiaries (including the Credit Bid Purchaser), as applicable, and the holder of such Allowed Postpetition Hedge Claim will have agreed upon in writing; *provided*, that any Allowed Postpetition Hedge Claim assumed by the Credit Bid Purchaser in accordance with the foregoing clause (y) pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties. Nothing herein shall modify any of the contractual rights under a Postpetition Hedging Agreement of a holder of an Allowed Postpetition Hedge Claim in their capacity as a holder of an Allowed Postpetition Hedge Claim.

### F. *Final Hearing on Vendor, Insurance, Cash Management, and DIP Motion*

On August 22, 2020, the Bankruptcy Court entered the *Order Continuing the Hearing on the Motions* [Docket No. 221], which continued the hearing on the Insurance Motion, Cash Management Motion, JIB/Critical Vendor Motion, NOL Motion, and DIP Motion to consider granting the requested relief on a final basis for August 24, 2020 to September 14, 2020 (the "**Final Hearing**"). On September 11, 2020, the Bankruptcy Court entered a final order on the NOL Motion [Docket No. 327].

Before the Final Hearing, eight parties objected or joined in objections to the Insurance Motion, Cash Management Motion, and JIB Critical Vendor Motion [Docket Nos. 189, 311, 196, 197, 212, 284, 306, 308]. The Debtors filed revised proposed orders reflecting changes made by the Debtors to resolve these objections [Docket Nos. 332, 338, 337], which the Bankruptcy Court entered on a final basis at the Final Hearing [Docket Nos. 340, 341, 342].

Seventeen parties objected or joined in objections to the DIP Motion [Docket Nos. 188, 192, 196, 200, 201, 202, 203, 205, 206, 211, 212, 213, 216, 218, 222, 230, 284]. Following the Final Hearing, the Debtors filed a revised proposed order reflecting changes made by the Debtors to (i) resolve objections raised by various parties in interest and (ii) address comments raised by the Bankruptcy Court at the Final Hearing [Docket No. 344], which the Bankruptcy Court entered on a final basis on September 15, 2020 (the "**DIP Order**") [Docket No. 346]. The DIP Order authorized the Debtors to obtain the DIP Facility, a multiple-draw senior secured term loan facility in a principal amount not to exceed $100 million. On the closing date, the Debtors borrowed an aggregate principal amount equal to $10 million under the DIP Facility. To date, the Debtors have not made any additional draws under the DIP Facility.

### G. *The Creditors' Committee's Challenge Rights*

Pursuant to the DIP Order, the Creditors' Committee was provided the right to challenge certain stipulations made by the Debtors in the DIP Order regarding, among other things, the validity, perfection, and priority of certain pre-petition liens, "by no later than (i) 75 days after enter of this Final Order, (ii) any such later date as has been agreed to, in writing, by the Prepetition Agents (with the consent of the DIP Lenders) as applicable, and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph" (the "**Challenge Period**"). On November 25, 2020, the Court entered the *Stipulation and Agreed Order Extending the Official Committee of Unsecured Creditors' Challenge Period Under the Final DIP Order* [Docket No. 603], which extended the Challenge Period to December 18, 2020.

The Committee investigated the validity of the secured lenders' liens and the other items subject to the Challenge Period, and ultimately concluded that certain unencumbered assets existed, which conclusion was disputed by the Debtors and DIP Lenders. On December 21, 2020, the Court entered the *Stipulation and Agreed Order by and Among the Debtors, the Prepetition Agents and the Official Committee of Unsecured Creditors Extending the Challenge Period as to Preserved Claims* [Docket No. 680], further extending the Challenge Period until February 8, 2021 with respect to certain assets that the Creditors' Committee determined are not subject to valid pre-petition liens and do not constitute pre-petition collateral. The parties subsequently entered into additional stipulations further extending the Challenge Period, while the Creditors' Committee, Debtors and Consenting Creditors engaged in negotiations concerning treatment of unsecured creditors' Claims under the Plan. In light of the settlement in principle discussed above, the parties anticipate further extending the Challenge Period and that the Creditors' Committee will waive all challenges upon approval of the settlement and confirmation of the Plan as of the Effective Date.

### H. *Statements and Schedules, and Claims Bar Dates*

On October 14, 2020, the Bankruptcy Court entered an order approving (i) November 25, 2020 as the deadline for all creditors or other parties in interest to file proofs of Claim (the "**Bar**

Date"); and (ii) February 1, 2021 as the deadline for all governmental units to file a proof of Claim [Docket No. 466].

The Debtors provided notice of the Bar Date to all known creditors and parties in interest, and published notice of the Bar Date in the national edition of the *New York Times*.

On October 13, 2020, the Debtors filed their schedules of assets and liabilities and statements of financial affairs detailing known Claims against the Debtors. [Docket Nos. 429-456]. Further, as of the date hereof, over 882 proofs of Claim had been filed against the Debtors. The Debtors continue to review and refine their analysis of the filed Claims.

Further, the Debtors intend to reject certain executory contracts pursuant to the Plan. Any counterparty to an executory contract that is rejected must file and serve a proof of Claim on the applicable Debtor that is party to the applicable executory contract to be rejected by no later than the applicable bar date set forth in the Plan or the Bankruptcy Court order governing such rejection.

## I. *Extension of Debtors' Exclusivity*

On December 1, 2020, the Debtors filed a motion seeking to extend the exclusive periods pursuant to section 1121(d) of the Bankruptcy Code (the "**Exclusivity Motion**") [Docket No. 625].

On January 4, 2021, the Bankruptcy Court held a hearing on the Exclusivity Motion. On January 8, 2021, the Bankruptcy Court entered the *Order Pursuant to Section 1121(d) of the Bankruptcy Code Extending the Exclusive Period* [Docket No. 751] (the "**Exclusivity Order**"), pursuant to which the Debtors' exclusive period in which to file a chapter 11 plan was extended from December 1, 2020, through and including March 1, 2021 and the Debtors' exclusive period in which to solicit acceptances of its chapter 11 plan was extended from January 30, 2021, through and including April 30, 2021. In addition, the Bankruptcy Court established procedures under the Exclusivity Order to provide the Company's surety providers the option to commence an expedited adversary proceeding on or before January 20, 2021 requesting that the Bankruptcy Court determine whether the surety providers hold administrative expense claims pursuant to section 503(b) of the Bankruptcy Code against any of the Debtors for surety bond premiums on account of surety bonds that were issued prior to the Petition Date. No surety providers filed such an adversary proceeding.

On March 1, 2021, the Debtors filed a motion seeking a further extension of the exclusive periods for filing a chapter 11 plan and soliciting a chapter 11 through May 31, 2021 and July 29, 2021 [Docket No. 930].

## J. *Motion to Approve Second Lien Backstop Commitment Letter*

As described above, the Credit Bid Purchaser's capital structure will consist of (i) the First Lien Exit Facility and (ii) an up to $185 million Second Lien Exit Facility, which includes a New Money Investment of up to $85 million.

In order to ensure the commitments under the Second Lien Exit Facility, including the New Money Investment, the Debtors have agreed to enter into the a backstop commitment letter (the "**Second Lien Backstop Commitment Letter**") to be entered into by and among the Debtors, the Credit Bid Purchaser, NewCo, and the entities listed on Schedule I thereto (collectively, the

"**Second Lien Backstop Parties**" and each individually, a "**Second Lien Backstop Party**"). Pursuant to the Second Lien Backstop Commitment Letter, the Second Lien Exit Facility will be fully backstopped by the Second Lien Backstop Parties pursuant to the terms thereof, resulting in an aggregate commitment of $185 million (the "**Aggregate Commitment**"). The terms of the Second Lien Backstop Commitment Letter ensure that the Credit Bid Purchaser has a source of necessary new capital committed to fund its initial capital needs and consummate the Credit Bid Transaction.

In exchange for the commitments and obligations of the Second Lien Backstop Parties under the Second Lien Backstop Commitment Letter, each Second Lien Backstop Party will be entitled to, among other things: (i) its *pro rata* share of a backstop commitment premium equal to $14.8 million, representing 8% of the amount of the Aggregate Commitment, to be paid by NewCo in the form of New Equity Interests in NewCo at a discount of 30% to equity value  (the "**Second Lien Backstop Commitment Premium**"); (ii) its New Money Second Lien Term Loans Allocation Percentage of warrants for up to 24% of the New Equity Interests in NewCo (the "**New Money Warrants**"); (iii) in the event of an Alternative Transaction (as defined below), its *pro rata* share of an Alternative Transaction Premium (as defined in the Second Lien Backstop Commitment Letter) equal to 5% of the Aggregate Commitment, to be paid by the Company in cash and which shall become payable on (A) the date of the consummation of any sale, transfer or other disposition of all or a material portion of the Acquired Interests (as defined in the Credit Bid Purchase Agreement) to any person or persons other than the Credit Bid Purchaser, (B) the date of the consummation of any series of sales, transfers or other dispositions of any portion of the Acquired Interests that, when taken collectively, constitutes a disposition of all or a material portion of the Acquired Interests to any person or persons other than the Credit Bid Purchaser, or (C) the date of the consummation of any plan of reorganization, winding up, liquidation, sale or disposition, reorganization, merger or restructuring of the Company or any of the other Debtors (other than (x) the "Restructuring" and "Restructuring Transactions" as defined in and contemplated under the Restructuring Support Agreement, or (y) any liquidation under Chapter 7 of the Bankruptcy Code pursuant to which a material portion of the Acquired Interests are a part of the liquidating estate) without the use of the commitments under the Second Lien Backstop Commitment Letter, regardless of whether such plan or other transaction contemplates a sale of assets of the Debtors, a recapitalization or any alternative structure (any such transaction contemplated by clauses (A), (B), or (C), an "**Alternative Transaction**"); *provided* that the Alternative Transaction Premium shall not become due in the event that (a) the Second Lien Backstop Parties shall have failed to comply with the PA Execution Covenant (as defined in the Second Lien Backstop Commitment Letter) or (b) if the Credit Bid Purchase Agreement is terminated due to (x) Credit Bid Purchaser's breach, (y) if the Second Lien Backstop Parties commit to support the FLTL Equity Rights Offering and the FLTL Equity Rights Offering is not consummated as a result of the breach of such commitment by a Second Lien Backstop Party, or (z) the Credit Bid Purchaser being unable to credit bid (the foregoing clauses (x) through (z), the "**Specified Exceptions**"); (iv) the reimbursement of the Second Lien Backstop Parties for all reasonable and documented out-of-pocket fees, costs and expenses (including the fees and expenses of counsel) incurred in connection with the Second Lien Exit Facility whether or not the Closing Date occurs or any Second Lien Exit Facility Documents are executed and delivered or any extensions of credit are made under the Second Lien Facility (the foregoing reimbursement obligations, the "**Expense Reimbursement**"), to be paid by Holdings or the Credit Bid Purchaser; *provided* that the Company shall be liable for the Expense Reimbursement in the event, and solely in the event, of the termination of the commitments of the Backstop Parties under the Backstop

Commitment Letter (other than a termination as a result of the occurrence of the Closing Date), *provided, further* that the Company shall have no liability for the Expense Reimbursement if the Credit Bid Purchase Agreement is terminated due to the occurrence of any Specified Exception; and (v) the obligations of the Company, NewCo, Holdings and Credit Bid Purchaser, as set forth in section 5 of the Backstop Commitment Letter, to indemnify the Backstop Parties under certain circumstances (the "**Indemnification Obligations**"); *provided* that the Indemnification Obligations of the Company (but not any other parties) shall terminate upon the earlier to occur of the Closing Date and the termination of the Credit Bid Purchase Agreement due to the occurrence of any Specified Exception (clauses (iii)–(v), collectively, the "**Commitment Protections**").

On March 16, 2021, the Debtors filed the *Emergency Motion of Debtors for Order (I) Authorizing Entry into Backstop Commitment Letter, (II) Approving Obligations Thereunder, and (III) Granting Related Relief* [Docket No. 1023] (the "**Second Lien Backstop Motion**"), seeking entry of an order approving, among other things, their entry into the Second Lien Backstop Commitment Letter and approval of the Commitment Protections provided for therein. The Debtors have requested a hearing to be held on the Second Lien Backstop Motion on the date of the Disclosure Statement hearing.

### K. *Motion to Assume Sublease*

In connection with the Apache Definitive Documents, Apache and FWE agreed to certain modifications of that certain Sublease Agreement, dated as of September 30, 2013 between Apache, as sublessor, and FWE, as sublessee, pertaining to certain office space in Houston, Texas (the "**Sublease Agreement**"), as set forth in that certain Fourth Amendment to Sublease Agreement (the "**Sublease Amendment**"), which is attached to the Implementation Agreement as **Exhibit 17**. Pursuant to the Sublease Amendment, FWE will pay a substantially reduced rental rate to Apache. Additionally, the Sublease Amendment contains favorable termination rights for FWE.

On February 10, 2021, the Debtors filed the *Emergency Motion of Debtors for Entry of Order (I) Approving Debtors' Entry into Sublease Amendment and (II) Authorizing Debtors' Assumption of Sublease Agreement* [Docket No. 869], seeking entry of an order (i) approving the Debtors' entry into the Sublease Amendment and (ii) authorizing the Debtors' assumption of the Sublease Agreement. On February 22, 2021, the Bankruptcy Court entered the *Order (I) Approving Debtors' Entry Into Sublease Amendment and (II) Authorizing Debtors' Assumption of Sublease Agreement* [Docket No. 898].

### L. *Vendor Program*

The Debtors and their advisors have been managing relations with the Debtors' vendors through the Debtors' vendor program by completing 153 trade agreements resolving approximately $136.7 million of prepetition claims and continuing to work towards completing an additional 11 trade agreements representing an additional $5.6 million of prepetition claims.

### M. *Lien Analysis*

Before and following the Petition Date, the Debtors' advisors conducted an independent analysis of the quality and amount of the mortgages filed in association with the Debtors' three

tranches of secured funded debt. A combination of the Company's books and records, its filings with BOEM and other mortgage documents were reviewed to determine (i) the technical validity of all filed mortgages to assure that individual mortgage forms satisfied relevant technical legal requirements (the "**Technical Validity Analysis**") and (ii) the lien coverage ratio, or the amount of mortgaged oil and gas asset lease amounts, as well as the amount of any unencumbered properties (the "**Lien Coverage Analysis**"). Additionally, the Company's trial balance, inventory records, and investments in subsidiaries were reviewed to determine the net book value of any potentially unencumbered non-oil and gas assets.

The Technical Validity Analysis included a comprehensive search of BOEM filings and other mortgage documents in Texas, Louisiana, Alabama, and Mississippi. In connection with FWE's exit from its previous chapter 11 filing, in 2018, Weil manually reviewed each of the mortgage documents to determine whether (i) the document is legible, (ii) the mortgagor name is correct, (iii) the mortgagee name is correct, (iv) the trustee name is correct, (v) party signatures are present, (vi) the document is notarized, and (vii) the document is properly recorded (stamped with book/liber/volume number, page number, date, and time). In addition, Weil manually reviewed each of the mortgage documents to determine the following: (i) within each secured loan tranche, relative to the base form for that tranche, the language of the grant, the language of the security agreement, enforcement provisions, the description of debt, whether the mortgage has a valid "catchall/all assets in county" provision, and (ii) documented discrepancies between tranches of debt.[22]

Moreover, the Lien Coverage Analysis was performed using the Company's Mid-year 2020 Oneline Reserve Report and initial mortgage analysis (the "**MY'20 Report**"). The coverage ratio of mortgaged oil and gas asset leases to total reserve asset lease amounts (PV-9), based on the MY'20 Report, are as follows for each of the secured debt tranches:

| Lien Coverage by Secured Debt (Proved Reserves) | |
|---|---|
| **Loan** | **Total Lien Coverage[23]** |
| First Lien First Out | 95.5% |
| First Lien Term Loan | 95.5% |
| Second Lien Term Loan | 95.5% |

| Lien Coverage by Secured Debt (Proved + Probable)[24] | |
|---|---|
| **Loan** | **Total Lien Coverage[25]** |

---

[22] Certain mortgages were filed after Weil's review following the 2018 Restructuring to fix discrepancies between the tranches of debt.

[23] Defined as the ratio of mortgaged oil and gas reserve asset amount to total oil and gas reserve asset amount.

[24] Capital expenditures required for probable reserves would be a function of the development plan for those reserves.

[25] Defined as the ratio of mortgaged oil and gas reserve asset amount to total oil and gas reserve asset amount.

| First Lien First Out | 94.5% |
|---|---|
| First Lien Term Loan | 94.5% |
| Second Lien Term Loan | 94.5% |

For each of the secured debt tranches, the Debtors determined that their prepetition secured lenders had valid, perfected liens in over 95.5% of the Debtors' proved reserves.

### N. _Independent Investigation_

Jim LaChance was appointed to the Board on July 8, 2020. Mr. LaChance was selected by the Board for his strong background serving as an independent director and his extensive business and restructuring experience. Since his appointment, Mr. LaChance has actively participated as a member of the Board with management and the Company's advisors on the Restructuring. This includes approval of entry into the RSA and the commencement of the Chapter 11 Cases.

In addition, in his capacity as an independent director of FWE Parent, Mr. LaChance oversaw an investigation into certain claims and estate causes of action that are proposed to be released pursuant to the Plan (the "**Independent Investigation**"). The Independent Investigation also included a review of certain non-de minimis pledges of collateral and transfers of interests made by the Company within the 90-day period leading up to the Petition Date in connection with its entry into forbearance and amendment agreements, dated May 7, 2020, with the required Prepetition FLFO Lenders, Prepetition FLTL Lenders, and Prepetition SLTL Lenders.

Weil, as counsel to the Company, assisted Mr. LaChance in evaluating the colorability of those certain potential claims and estate causes of action. The Independent Investigation took place over the course of several months and included extensive factual and legal analysis. In connection with the Independent Investigation, Weil conducted five separate interviews of three different individual members of management or the Board, and reviewed approximately 700 documents comprising several thousand pages.

Based upon the results of the Independent Investigation, Mr. LaChance concluded and therefore recommended to the Board that it is in the best interests of the Company and its stakeholders to pursue the Plan and grant the releases provided for in the Plan. Mr. LaChance's determination was based upon, among other things, no valuable colorable claims having been identified against the officers, directors or shareholders in the Independent Investigation and the significant value provided by the Consenting Creditors in pursuing the Plan which would allow the Company to (i) reorganize as a more streamlined, cost-effective going-concern business, (ii) save over 1,000 jobs, and (iii) facilitate the safe, responsible, and accelerated decommissioning of properties, pipelines, and platforms in the Gulf of Mexico.

### O. _Adversary Complaint Against Atlantic Maritime Services, LLC_

After two lawsuits (the "**Lawsuits**") were filed post-petition on November 13, 2020 against certain of the Debtors' co-working interest owners in the United States District Court for the Eastern District of Louisiana, the Debtors commenced an adversary proceeding styled _Adversary Case No. 20-03476 Fieldwood Energy LLC, et al. v. Atlantic Maritime Services, LLC_ (the

"**Atlantic Proceeding**"), seeking entry of an order extending the automatic stay to enjoin Atlantic Maritime Services, LLC ("**Atlantic**") from prosecuting the lawsuits and obtained a preliminary injunction temporarily enjoining Atlantic from prosecuting the Lawsuits against the Debtors' co-working interest owners. On November 25, 2020, following a hearing on the Debtors' motion for preliminary injunction, the Bankruptcy Court held that filing the Lawsuits violated the automatic stay and that continued prosecution of the Lawsuits would result in further violations of the automatic stay. Accordingly, the Bankruptcy Court entered an order granting a temporary preliminary injunction enjoining Atlantic from prosecuting the Lawsuits against the Debtors' co-working interest owners [Atlantic Proceeding, Docket No. 10] (the "**Stay Extension Order**").

On December 8, 2020, the Bankruptcy Court entered the *Stipulation and Order Extending the Automatic Stay to Certain of Debtors' Co-Working Interest Owners*, which extended the Stay Extension Order through and including the earliest to occur of (i) the effective date of any confirmed chapter 11 plan, (ii) sale of the properties subject to Atlantic's alleged liens giving rise to the Lawsuits (as defined in the Stay Extension Order), and (iii) through and including 11:59 p.m. (prevailing Central Time) on April 15, 2021.

## P. *Regulatory Matters*

The offshore oil and gas industry is heavily regulated by the Department of the Interior pursuant to the Outer Continental Shelf Lands Act[26] ("**OCSLA**") and OCSLA's implementing regulations found primarily at 30 CFR 250 *et seq.* (OCSLA and the implementing regulations the "**Regulations**") and also by other agencies such as the Environmental Protection Agency and the United States Coast Guard under other federal statutes. For the Debtors' properties in Louisiana and Texas, those states have their own detailed regulations, which apply to leases on the respective lands and waters of the states.

The primary regulatory enforcement mechanism utilized by the Department of Interior through BSEE is conducting scheduled and unscheduled inspections of offshore facilities and operations to ensure that facilities and operations are in compliance with the Regulations. In the event BSEE inspectors discover that conditions of FWE's offshore structures or operations violate the Regulations, BSEE may issue an INC (i.e., an Incident of Non-Compliance) which often includes an order to remediate non-complying conditions or operations. At BSEE's discretion and based on the severity of the non-compliance, BSEE may also impose civil penalties for the INC and further impose civil penalties for each day the non-compliance with the Regulations continues.[27] Typically, the total amount of BSEE civil penalties paid by the offshore oil and gas industry (i.e., for the entire Gulf of Mexico) is approximately $1-2 million per year.[28] As a part of its restructuring process and with the aim to resolve as much liability to the government as possible in the restructuring process, FWE and the Department of Interior have commenced discussions to resolve all outstanding civil penalty liability. FWE expects to resolve the civil penalty liability in

---

[26] 43 U.S.C. §§1331 *et seq.*

[27] 30 CFR 250.1400 *et seq.* Currently, the maximum civil penalty is $44,675 per day. See https://www.bsee.gov/what-we-do/safety-enforcement-division/civil-penalties

[28] *See e.g.*, 2020 civil penalties totaling $1.3 million: https://www.bsee.gov/sites/bsee.gov/files/fiscal-year-2020-cp-report.pdf

line with historical trends, although the discussions are ongoing and the outcome of the discussions is difficult to predict with precision.

In addition, since 2016, FWE has responded to requests from the U.S. Attorney's Offices for the Eastern and Western Districts of Louisiana in connection with the investigation of certain civil and criminal matters. Two employees of FWE were indicted in the Eastern District of Louisiana on January 15, 2021 for violations of the Clean Water Act, 33 U.S.C. §§ 1319(c)(1)(A), 1319(c)(2)(A), 3121(b)(3), 1321(b)(5) and OCSLA, 43 U.S.C. §§ 1350(c)(2), 1350(c)(3). One employee was indicted in relation to a negligent and knowing discharge, failure to report the discharge at Main Pass 310 in 2015 and falsely representing company records to BSEE. A second employee was indicted for a negligent discharge at Grand Isle 43 in January 2018 and with rendering safety systems inoperable. FWE has not been charged, is cooperating with the authorities and will continue discussions with the government as appropriate.

On February 10, 2021, in a resolution of the investigations of the U.S. Attorney's Office for the Eastern District of Louisiana (the "**USAO**"), including those relating to Main Pass 310 and Grand Isle 43, FWE entered into a Non-Prosecution Agreement with the USAO in respect of certain civil and criminal violations alleged by the USAO without any criminal plea or indictment against FWE or its officers or directors. The NPA requires FWE to undertake certain obligations, including cooperating with the USAO and other federal agencies, admitting to findings of fact that its employees and third-party contractors committed certain criminal violations, and undertaking certain corrective and remedial actions, including the payment of a $2 million fine, payable in four equal installments over a two year period. Should FWE remain in compliance with its obligations under the NPA, then the USAO has agreed to not prosecute FWE or any of its officers or directors during the term of the NPA or thereafter for any alleged violations of federal civil and criminal laws related to conduct described in the NPA or any other conduct for which FWE has been under investigation by the USAO as of the effective date of the NPA. The NPA is to remain in effect until the later of (i) two years from the date the Bankruptcy Court approves the $2 million fine and (ii) until the complete payment of the fine.

On February 18, 2021, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving Non-Prosecution Agreement with the United States Attorney's Office for the Eastern District of Louisiana and (II) Granting Related Relief* [Docket No. 893], seeking entry of an order (i) approving the Debtors' entry into the NPA and performance of the obligations thereunder and (ii) granting related relief. On March 15, 2021, the Bankruptcy Court entered the *Order (I) Approving Non-Prosecution Agreement with the United States Attorney's Office for the Eastern District of Louisiana and (II) Granting Related Relief* [Docket No. 1004].

The NPA applies only to the United States Attorney's Office for the Eastern District of Louisiana and does not bind any other federal, state, or local prosecuting, administrative, or regulatory agencies (although the NPA does resolve all civil penalty exposure arising out of the incidents subject to the investigation).

### Q. *Emergency Motion to Compel BP to Perform Under Executory Contracts*

The Company is a co-working interest owner and operator of a well in the Gulf of Mexico that is part of the Galapagos field ("**Genovesa**"). Genovesa was drilled in June-July 2019. Genovesa connects to a host platform called Na Kika, which is partially owned by BP Production

& Exploration Inc. ("**BP**"), via an undersea loop system ("**LSPS**"), which is jointly owned by the Company, BP, and others, and operated by BP.  In April 2020, FWE first learned that there was an anomaly in the LSPS, which was later determined to be a small leak.  FWE did not cause the anomaly in the LSPS, something with which BP agrees.  Remediating the leak through a short-term single flowline project ("**SFLP**"), as opposed to a longer-term loop system restoration project (which is still necessary), is the necessary step to bringing Genovesa online and initiating production for this well.

Production on the lease on which Genovesa is located ceased in April 2020, meaning that, under the applicable regulations, the lease would expire one year later unless production is restored or other lease saving activities occur or BSEE authorizes a suspension of production ("**SOP**").  On January 20, 2021, the U.S. Department of the Interior released Order 3395, which limits consideration of lease extensions, among other things, to political appointees.  It is, therefore, uncertain whether an SOP would be granted.

Accordingly, on January 27, 2021, the Company filed an *Emergency Motion to Compel BP Production & Exploration Inc. to Perform Pre-Petition Contracts* [Docket No. 792], asking the Court to order BP to perform its obligations under the operative agreements by requiring BP to either complete the short-term SFLP itself or allow the Company to do so in time to get Genovesa online by April 2021.  The Court held a contested evidentiary hearing on February 2, 2021, at which it orally ruled that, among other things, BP had been "behaving in a remarkably poor way," "intentionally delayed," acted in "bad faith," "in breach," and "needs to stop acting with excuses." The Court ordered BP to perform the necessary activities to bring Genovesa online by April 5, 2021, or, in the alternative, gave BP the option to elect to turn over operatorship of the short-term SFLP to FWE and to support FWE as needed to bring Genovesa online by April 5, 2021.  BP elected the second option, and the Court entered an order to this effect on February 3, 2021 at Docket No. 845.  Since the date of the order, BP and FWE have worked cooperatively on the SFLP project and, subject to good weather and timely permitting, continue to be on pace to meet the target date for production.

## VI.
## RESTRUCTURING TRANSACTIONS AND PLAN IMPLEMENTATION

Pursuant to the Plan, the Debtors are seeking approval of, among other things, (i) entry into and consummation of the Credit Bid Transaction (subject to the terms of the Credit Bid Purchase Agreement), (ii) entry into and consummation of the Apache Transactions pursuant to Bankruptcy Rule 9019 and the Apache Definitive Documents, including the Plan of Merger, (iii) the continued operation and decommissioning of the FWE III Properties, and (iv) the abandonment of the Abandoned Properties.

### A. *Approval of Credit Bid Transaction*

As discussed above, the Company conducted a robust sale and marketing process for the Company's Deepwater Assets from June 30, 2020 through September 2, 2020 and, at the conclusion of such process, the Debtors determined that none of the bids they received was actionable.

Concurrently with that process, the Debtors negotiated with the Consenting FLTL Lenders the terms of the Credit Bid Transaction, which provides that Credit Bid Purchaser will acquire the Credit Bid Acquired Interests in exchange for aggregate consideration of approximately $1.03 billion consisting of (i) a credit bid of the Allowed FLTL Claims (up to the FLTL Claims Allowed Amount), (ii) cash in the amount of up to $105 million,[29] (iii) the GUC Warrants, (iv) the SLTL Warrants, and (v) assumption of certain liabilities set forth in the Credit Bid Purchase Agreement, including the assumption of the Allowed FLFO Claims remaining following distribution of the FLFO Distribution Amount. Accordingly, the Debtors have determined that the Credit Bid Transaction is currently the highest and otherwise best available transaction in light of, among other factors, the fact that the Credit Bid Purchase Agreement and Plan collectively provide for a going-concern transaction that maximizes the long-term value of the Debtors' business, provides for the continued employment of over 1,000 employees and contractors, and maximizes the consideration available for distribution to the Debtors' creditors under the Plan. As such, the Debtors submit that the Credit Bid Transaction is in the best interests of the Debtors and their estates.

## B. _Approval of Apache Transactions_

Pursuant to the Apache Term Sheet, the Company, the Consenting Creditors, and Apache agreed to, among other things, negotiate mutually agreeable Apache Definitive Documents no later than 45 days after the Petition Date, which deadline the parties mutually agreed to extend to January 1, 2021. In addition, the RSA provides that it shall be a DIP Commitment Parties Termination Event (as defined in the RSA) if the Company shall not have complied with the deadline requiring the finalization of the Apache Definitive Documents by no later than 75 days after the Petition Date, which deadline the parties mutually agreed to extend to January 1, 2021.

Following months of extensive negotiations, on January 1, 2021, the parties finalized the Apache Definitive Documents and certain of the Debtors, Apache, and certain of its affiliates entered into the Implementation Agreement, an agreement whereby parties thereto agreed to execute and deliver the Apache Definitive Documents on or before the Effective Date of the Plan.

The Apache Definitive Documents include, among other things, the Plan of Merger, which provides, among other things, that as of the Effective Date:

- FWE I will be formed, all of the FWE I Assets will be allocated to, possessed by, and vested in FWE I, pursuant to the terms of the Plan of Merger, and all of the FWE I Obligations will be allocated to and will vest in, and will constitute liabilities and obligations of, FWE I; and

- FWE will maintain its separate existence and continue as a surviving entity as FWE III, all of the assets of FWE other than the Credit Bid Acquired Interests, the FWE I Assets, and the Abandoned Properties, will be allocated to, possessed by, and vested in FWE III, pursuant to the terms of the Plan of Merger, and all of the liabilities and obligations of FWE remaining other than the Credit Bid Assumed

---

[29] The Credit Bid Purchase Agreement caps the total cash consideration to be paid by Credit Bid Purchaser for the Credit Bid Acquired Interests at an amount equal to (i) the proceeds of the up to $185 million Second Lien Exit Facility, plus (ii) the proceeds of the approximately $40 million Equity Rights Offerings, minus (iii) $120 million.

Liabilities and the FWE I Obligations will be allocated to and will vest in, and will constitute liabilities and obligations of, FWE III.

Other Apache Definitive Documents include (i) the Sublease Amendment described above in Section V.J, pursuant to which FWE will pay a substantially reduced rental rate to Apache, as sublessor, and which contains favorable termination rights, (ii) the TSA between FWE I and Credit Bid Purchaser, and (iii) a Farmout Agreement between Credit Bid Purchaser and FWE I (the "**Farmout Agreement**"). To facilitate the transition process, pursuant to the TSA, the Credit Bid Purchaser will provide operational, technical, and administrative services to FWE I to operate the FWE I Assets during the period following the Effective Date. The Farmout Agreement provides, among other things, that Credit Bid Purchaser will have the right for two years to present capital projects to FWE I relating to the Legacy Apache Properties, which will give FWE I the option to participate, in its sole discretion, under the terms mutually agreed and set forth in the Farmout Agreement.

In addition, section 10.7 of the Plan provides for mutual releases by (among other parties) the Apache PSA Parties, the Debtors, and the Consenting Creditors, provided, however, that no party will be released to the extent such release would impair the Decommissioning Security or the Apache PSA Parties' ability to draw on the Decommissioning Security, in any respect.

The Plan is being proposed as a motion to approve, among other things, the Apache Transactions pursuant to Bankruptcy Rule 9019 and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

The Apache Transactions provide considerable benefits to the Debtors' estates and other key stakeholders, including, among other things, (i) limiting the Debtors' exposure to the decommissioning liabilities related to the Legacy Apache Properties, (ii) advancing discussions with other parties in interest regarding a comprehensive restructuring, including the Consenting Creditors, BOEM and BSEE, and other predecessors in interest, (iii) reducing the rent charged to FWE pursuant to the Sublease Amendment, and (iv) substantially accelerating the decommissioning work performed on multiple wells, pipelines, platforms, and other facilities in the Gulf of Mexico.

### C. *Approval of Abandonment of Abandoned Properties*

In the Debtors' business judgment, the Abandoned Properties are burdensome to the Debtors' estates. As discussed above, since before the Petition Date, the Debtors have been in active discussions with BOEM and BSEE regarding the development of the Plan and proposed treatment of the Debtors' properties, including the Debtors' intention to abandon certain properties. Moreover, as detailed above, Debtors have also been coordinating with the Predecessors and CIOs on the safe and orderly operational transfer of the Abandoned Properties.

# VII.
## TRANSFER RESTRICTIONS AND
## <u>CONSEQUENCES UNDER FEDERAL SECURITIES LAWS</u>

The offer, issuance and distribution of the New Equity Interests (other than the Backstop Commitment Premium Equity Interests, the New Money Warrants, or any New Equity Interests issued upon exercise of the New Money Warrants or under the Management Incentive Plan), the Subscription Rights, the SLTL Warrants, and the GUC Warrants to holders of Allowed FLTL Claims and General Unsecured Claims under <u>Article IV</u> of the Plan, and the New Equity Interests issued upon exercise of the Subscription Rights, the SLTL Warrants, or the GUC Warrants, shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or actions by any Person, from registration under the Securities Act, and all rules and regulations promulgated thereunder, and any other applicable securities laws, to the fullest extent permitted by section 1145 of the Bankruptcy Code.

The issuance and sale of the Second Lien Backstop Commitment Premium Equity Interests to be issued pursuant to the Second Lien Backstop Commitment Letter, the FLTL ERO Backstop Commitment Premium, the SLTL ERO Backstop Commitment Premium, and the New Money Warrants (including any New Equity Interests issued upon exercise of the New Money Warrants) to be issued pursuant to the New Money Warrant Agreement is being made in reliance on the exemption from registration set forth in section 4(a)(2) of the Securities Act and/or Regulation D thereunder.

### A. <u>*Section 1145 of the Bankruptcy Code and Subscription Transfers*</u>

The above described securities to be issued pursuant to section 1145 of the Bankruptcy Code (the "**1145 Securities**") may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such 1145 Securities, as that term is defined in section 1145(b) of the Bankruptcy Code. In addition, such section 1145 Securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

Section 1145 of the Bankruptcy Code generally exempts from registration under the Securities Act the offer or sale under a chapter 11 plan of a security of the debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under a plan, if such securities are offered or sold in exchange for a claim against, or an interest in, the debtor or such affiliate, or principally in such exchange and partly for cash. Section 1145 of the Bankruptcy Code also exempts from registration the offer of a security through any right to subscribe sold in the manner provided in the prior sentence, and the sale of a security upon the exercise of such right. In reliance upon this exemption, the 1145 Securities will be exempt from the registration requirements of the Securities Act, and state and local securities laws. These securities may be resold without registration under the Securities Act or other federal or state securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code. In addition, such 1145 Securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

Section 1145(b) of the Bankruptcy Code defines "underwriter" for purposes of the Securities Act as one who, except with respect to ordinary trading transactions, (i) purchases a claim with a view to distribution of any security to be received in exchange for the claim, (ii) offers to sell securities issued under a plan for the holders of such securities, (iii) offers to buy securities issued under a plan from persons receiving such securities, if the offer to buy is made with a view to distribution or (iv) is an issuer, as used in section 2(a)(11) of the Securities Act, with respect to such securities, which includes control persons of the issuer.

"Control," as defined in Rule 405 of the Securities Act, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise. The legislative history of Section 1145 of the Bankruptcy Code suggests that a creditor who owns ten percent (10%) or more of a class of voting securities of a reorganized debtor may be presumed to be a "controlling person" and, therefore, an underwriter.

Notwithstanding the foregoing, control person underwriters may be able to sell securities without registration pursuant to the resale limitations of Rule 144 of the Securities Act ("**Rule 144**") which, in effect, permit the resale of securities received by such underwriters pursuant to a chapter 11 plan, subject to applicable volume limitations, notice and manner of sale requirements, and certain other conditions. Parties who believe they may be statutory underwriters as defined in section 1145 of the Bankruptcy Code are advised to consult with their own legal advisors as to the availability of the exemption provided by Rule 144.

### B. _Section 4(a)(2) of the Securities Act and Subscription Transfers_

With respect to the above described securities issued in reliance on the exemption from registration set forth in section 4(a)(2) of the Securities Act and/or Regulation D thereunder (the "**Private Placement Securities**"), such securities will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act, such as under certain conditions, the resale provisions of Rule 144.

Rule 144 provides a limited safe harbor for the public resale of restricted securities if certain conditions are met. These conditions vary depending on whether the holder of the restricted securities is an "affiliate" of the issuer. Rule 144 defines an affiliate of the issuer as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer."

None of the Debtors, NewCo and its subsidiaries, including the Credit Bid Purchaser, or any other Person shall be required to provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Equity Interests, the New Money Warrants, the SLTL Warrants, or the GUC Warrants, under applicable securities laws. DTC and any transfer agent (as applicable) shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Equity Interests, the New Money Warrants, the SLTL Warrants, or the GUC Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services (to the extent applicable).

Notwithstanding anything to the contrary in the Plan, no Person (including DTC and any transfer agent) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including whether the New Equity Interests, the New Money Warrants (including any New Equity Interests issued upon exercise of the New Money Warrants), the SLTL Warrants, or the GUC Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

* * * * *

*Legends*.  To the extent certificated or issued by way of direct registration on the records of the issuer's transfer agent, certificates evidencing the New Equity Interests held by holders of 10% or more of the outstanding New Equity Interests, or who are otherwise underwriters as defined in section 1145(b) of the Bankruptcy Code, and all Private Placement Securities, will bear a legend substantially in the form below:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE WERE ORIGINALLY ISSUED ON THE EFFECTIVE DATE, HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "**ACT**"), OR ANY OTHER APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN AVAILABLE EXEMPTION FROM REGISTRATION THEREUNDER.

The Debtors and NewCo or its subsidiaries, including the Credit Bid Purchaser, as applicable, reserve the right to reasonably require certification, legal opinions or other evidence of compliance with Rule 144 as a condition to the removal of such legend or to any resale of any such securities. The Debtors and NewCo or its subsidiaries, including the Credit Bid Purchaser, as applicable, also reserve the right to stop the transfer of any such securities if such transfer is not in compliance with Rule 144, pursuant to an effective registration statement or pursuant to another available exemption from the registration requirements of applicable securities laws.

In any case, recipients of securities issued under the Plan are advised to consult with their own legal advisors as to the availability of any such exemption from registration under state law in any given instance and as to any applicable requirements or conditions to such availability.

BECAUSE OF THE COMPLEX, SUBJECTIVE NATURE OF THE QUESTION OF WHETHER A PARTICULAR PERSON MAY BE AN UNDERWRITER OR AN AFFILIATE AND THE HIGHLY FACT-SPECIFIC NATURE OF THE AVAILABILITY OF EXEMPTIONS FROM REGISTRATION UNDER THE SECURITIES ACT, NONE OF THE DEBTORS MAKE ANY REPRESENTATION CONCERNING THE ABILITY OF ANY PERSON TO DISPOSE OF THE SECURITIES TO BE ISSUED UNDER OR OTHERWISE ACQUIRED PURSUANT TO THE PLAN.  THE DEBTORS RECOMMEND THAT POTENTIAL RECIPIENTS OF THE SECURITIES TO BE ISSUED UNDER OR OTHERWISE ACQUIRED PURSUANT TO THE PLAN CONSULT THEIR OWN COUNSEL CONCERNING WHETHER THEY MAY FREELY TRADE SUCH SECURITIES AND THE CIRCUMSTANCES UNDER WHICH THEY MAY RESELL SUCH SECURITIES.

## VIII.
## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion is a summary of certain U.S. federal income tax consequences of the implementation of the Plan to the Debtors and to certain U.S. Holders (as defined below) of Claims that will receive cash or other property under the Plan. The following summary does not address the U.S. federal income tax consequences to holders of Claims who are unimpaired, deemed to reject the Plan or otherwise entitled to payment in full in cash under the Plan. In addition, this summary does not address the consequences to holders of Allowed FLFO Claims, as we understand that they have engaged outside counsel to advise them as to the federal income tax consequences of the Plan to them.

The discussion of U.S. federal income tax consequences below is based on the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), U.S. Treasury Regulations ("**Treasury Regulations**"), judicial authorities, published positions of the Internal Revenue Service ("**IRS**"), and other applicable authorities, all as in effect on the date of this Disclosure Statement and all of which are subject to change (including pursuant to any potential future legislation which may be enacted in response to the COVID-19 pandemic) or differing interpretations (possibly with retroactive effect). The U.S. federal income tax consequences of the contemplated transactions are complex and subject to significant uncertainties. The Debtors have not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the contemplated transactions, and the discussion below is not binding upon the IRS or the courts. Accordingly, there is no assurance that the IRS would not take a contrary position as to the federal income tax consequences described herein.

This summary does not address foreign, state, local, gift, or estate tax consequences of the Plan, nor does it purport to address all aspects of U.S. federal income taxation that may be relevant to a holder in light of its individual circumstances or to a holder that may be subject to special tax rules (such as persons who are related to the Debtors within the meaning of the Tax Code, foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, real estate investment trusts, regulated investment companies, tax-exempt organizations, trusts, governmental authorities or agencies, dealers and traders in securities, retirement plans, individual retirement and other tax-deferred accounts, holders that are, or hold Claims through, S corporations, partnerships or other pass-through entities for U.S. federal income tax purposes, persons whose functional currency is not the U.S. dollar, dealers in foreign currency, persons who hold Claims as part of a straddle, hedge, conversion transaction or other integrated investment, persons using a mark-to-market method of accounting, holders of Claims who are themselves in bankruptcy, persons subject to the alternative minimum tax or the "Medicare" tax on net investment income and accrual method taxpayers that report income on an "applicable financial statement"). In addition, this discussion does not address U.S. federal taxes other than income taxes, nor does it address the Foreign Account Tax Compliance Act.

The following discussion below assumes that the Credit Bid Transaction contemplated by the Plan (and the 363 Credit Bid Transaction, if applicable) will be a fully taxable transaction for U.S. federal income tax purposes. However, the Plan allows for alternative structures that may include transactions that are different from those described in the anticipated structure below. Any deviations from the anticipated structure could materially change the U.S. federal income tax consequences of the Plan to the Debtors, holders of Claims and holders of Interests described

herein. It is intended that, and this discussion assumes, that each component transaction of the anticipated structure will be fully taxable for U.S. federal income tax purposes. If, contrary to this assumption, any component transaction of the anticipated structure is not fully taxable for U.S. federal income tax purposes, the tax consequences of any such transactions could be materially different than as described herein. Each U.S. Holder should consult its own tax advisor.

Additionally, this discussion assumes that (i) the various debt and other arrangements to which any of the Debtors is a party will be respected for U.S. federal income tax purposes in accordance with their form; (ii) except where otherwise indicated, the Claims and non-cash consideration received are held as "capital assets" (generally, property held for investment) within the meaning of Section 1221 of the Tax Code; and (iii) each Class of Claims that votes on the Plan is an Accepting Class.

**THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON YOUR INDIVIDUAL CIRCUMSTANCES. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE U.S. FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

### A. *Consequences to the Debtors*

For U.S. federal income tax purposes, each of the Debtors is (i) a member of an affiliated group of corporations of which Fieldwood Energy Inc. is the common parent and which files a single consolidated U.S. federal income tax return (the "**Tax Group**"), or (ii) disregarded as separate from its owner for U.S. federal income tax purposes whose business activities and operations are reflected on the consolidated U.S. federal income tax returns of the Tax Group. The Tax Group estimates that as of December 31, 2020, the Debtors will have approximately $394 million of U.S. federal net operating loss ("**NOL**") carryforwards and over $190 million in estimated consolidated federal interest expense carryforwards under Section 163(j) of the Tax Code. None of the Debtors' NOLs are subject to limitation under Section 382 of the Tax Code due to a prior ownership change. The amount of any such NOLs and other tax attributes, including any deductions for payments of Claims under the Plan, remain subject to audit and potential adjustment by the IRS.

### 1. Cancellation of Debt and Reduction of Tax Attributes

In general, the Tax Code provides that a debtor must recognize cancellation of debt ("**COD**") income upon the elimination or reduction of debt for insufficient consideration. The amount of COD income generally is equal to the amount by which the adjusted issue price of cancelled debt exceeds the sum of the amount of cash and the fair market value of any other property given in exchange therefor. Certain statutory or judicial exceptions may apply to limit the amount of COD incurred for U.S. federal income tax purposes. One such exception to such income recognition is provided for any COD arising by reason of the discharge of the debtor's indebtedness in a bankruptcy case or to the extent of the debtor's insolvency immediately before the cancellation of the debt. In such case, the Tax Code generally requires the debtor to reduce certain of its tax attributes—such as current year NOLs and NOL carryforwards, tax credits, capital loss carryforwards, and tax basis in assets—by the amount of any such excluded COD income.

Although not free from doubt, it is expected that carryover of disallowed interest expense would not be a tax attribute subject to such reduction. If advantageous, the debtor can elect to reduce the basis of depreciable property before any reduction in its NOL carryforwards or other tax attributes. Also, where the Debtor joins in the filing of a consolidated U.S. federal income tax return, applicable Treasury Regulations require, in certain circumstances, that the tax attributes of the consolidated subsidiaries of the debtor and other members of the group also be reduced.

The Debtors expect to incur a substantial amount of COD as a result of the implementation of the Plan with a corresponding reduction in its tax attributes. The amount of such COD and resulting tax attribute reduction will depend primarily on the fair market value of the assets that are the subject of the Credit Bid Transaction (or 363 Credit Bid Transaction) and, in turn the New Equity Interests, Subscription Rights, SLTL Warrants, and GUC Warrants. In general, any reduction in tax attributes under the COD rules does not occur until the end of the tax year, after such attributes have been applied to determine the tax for the year or, in the case of asset basis reduction, the first day of the taxable year following the tax year in which the COD occurs. Accordingly, the Debtors do not expect such reduction to have a material impact on their ability to utilize their existing consolidated NOLs and other tax attributes against any gain recognized in the Credit Bid Transaction (or 363 Credit Bid Transaction).

### 2. Limitation of NOL Carryforwards and Other Tax Attributes

Under the Tax Code, any NOLs and certain other tax attributes of a corporation (collectively, "**Pre-Change Losses**") may be subject to an annual limitation if the corporation undergoes an "ownership change" within the meaning of Section 382 of the Tax Code. These limitations apply in addition to, and not in lieu of, the attribute reduction that may result from the COD arising in connection with the Plan. As discussed above, due in part to the resulting attribute reduction from the incurrence of COD, the Debtors may not have significant tax attributes remaining following the implementation of the Plan to which Section 382 of the Tax Code would apply. Nevertheless, the following provides a brief description of the operation of Section 382 of the Tax Code in the event there are any Pre-Change Losses to which Section 382 of the Code could apply.

Under Section 382 of the Tax Code, if a corporation (or consolidated group) undergoes an "ownership change" and the corporation does not qualify for (or elects out of) the special bankruptcy exception in Section 382(l)(5) of the Tax Code discussed below, the amount of its Pre-Change Losses that may be utilized to offset future taxable income or tax liability is subject to an annual limitation.

In general, the amount of the annual limitation to which a corporation in bankruptcy that undergoes an ownership change will be subject is equal to the product of (i) the fair market value of the stock of the corporation immediately after the ownership change (with certain adjustments) multiplied by (ii) the "long term tax exempt rate" in effect for the month in which the ownership change occurs (e.g., approximately 1.6% for ownership changes occurring in March 2021).

This annual limitation potentially may be increased in the event the corporation (or consolidated group) has an overall "built-in" gain in its assets at the time of the ownership change. Any portion of the annual limitation that is not used in a given year may be carried forward, thereby adding to the annual limitation for the subsequent taxable year. Under Section 382(l)(5) of the

Tax Code, an exception to the foregoing annual limitation rules generally applies where qualified creditors of a debtor corporation receive, in respect of their claims, at least 50% of the vote and value of the stock of the reorganized debtor (or a controlling corporation if also in bankruptcy) pursuant to a confirmed chapter 11 plan. The Debtors do not expect this exception to be of any material benefit, even if otherwise applicable.

As indicated above, the Debtors may not have significant (if any) tax attributes remaining to which Section 382 of the Tax Code would apply after the reduction in tax attributes under the COD rules, whether or not the annual limitation rules apply.

**3.      Sale of Certain Assets**

Pursuant to the Plan, the Debtors will sell certain assets in the Credit Bid Transaction (or the 363 Credit Bid Transaction, if applicable) and abandon certain assets. The discussion herein assumes that such assets will be disposed of in the Credit Bid Transaction or abandonment and that the Credit Bid Transaction or the abandonment, as applicable, will be treated as a taxable transaction. As a result, for U.S. federal income tax purposes the Debtors are expected to recognize income, gain, loss, or deduction in the Credit Bid Transaction or upon abandonment, as applicable. The Credit Bid Purchaser would obtain a new cost basis in the assets acquired based on the fair market value of such assets on the Effective Date, but would not succeed to any tax attributes of the Debtors (such as NOLs, tax credits or tax basis in assets).

The Debtors expect that the Debtors' current year deductions, NOL carryforwards, and other tax attributes generally should be available to offset some or all of the tax gains or income that might be recognized. Depending on the value of the transferred assets, the timing of when such sales or transfers occur, and the availability of and any limitations on the Debtors' tax attributes for applicable federal (as well as state and local) income tax purposes, the Debtors may incur certain income tax liabilities relating to such transfers. This discussion assumes that asset sales described in this paragraph will be fully taxable for U.S. federal income tax purposes.

If, contrary to that assumption, the Credit Bid Transaction (or the 363 Credit Bid Transaction, if applicable) is not fully taxable for U.S. federal income tax purposes, the tax consequences of any such transactions to the Debtors (and holders of certain Claims) could be materially different than that described herein. Each U.S. Holder should consult its own tax advisor.

**4.      Potential Transfer of Assets to a Liquidating Trust**

Pursuant to the Plan, the Plan Administrator may, anytime on or after the Effective Date, transfer certain of Debtors' remaining assets to a Liquidating Trust (as defined below) on behalf of all or a portion of the respective claimants, holders of Existing Equity Interests, and/or other stakeholders, if the Plan Administrator determines that it is in the best interests of the Debtors and respective stakeholders. The transfer of assets by the Plan Administrator to a Liquidating Trust will be treated as a sale of the assets at fair market value, which may result in the recognition of gain or loss by the Debtors, depending in part on the value of such assets on the date of such transfer to the liquidating trust relative to the Debtors' tax basis in such assets. *See* Section VII.C, "Tax Treatment of a Liquidating Trust and Holders of Beneficial Interests" below for discussion.

### B. *Consequences to Holders of Certain Claims*

The following discussion applied to U.S. Holders of Allowed FLTL Claims, Allowed SLTL Claims, Allowed Unsecured Trade Clams, and Allowed General Unsecured Claims. For purposes of this discussion, a "U.S. Holder" is a beneficial owner of Allowed Claims or Existing Equity Interests that is: (1) an individual citizen or resident of the United States for U.S. federal income tax purposes; (2) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof, or the District of Columbia; (3) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (4) a trust (A) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more United States persons have authority to control all substantial decisions of the trust, or (B) that has a valid election in effect under applicable Treasury Regulations to be treated as a United States person.

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a holder of a Claim, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner (or other beneficial owner) and the entity. Partners (or other beneficial owners) of partnerships (or other pass-through entities) that are holders of Claims should consult their respective tax advisors regarding the U.S. federal income tax consequences of the Plan.

### 1. Taxable Exchange – Structure of Credit Bid Transaction

This discussion assumes that, pursuant to the Credit Bid Transaction, the Debtors will receive all or a portion of the New Equity Interests, Subscription Rights, SLTL Warrants, GUC Warrants, and cash as consideration for the sale of the Credit Bid Acquired Interests in a taxable transaction for U.S. federal income tax purposes, and that the consideration received will then be distributed to holders of Claims in accordance with the Plan.

However, this is not the only manner in which the Credit Bid Transaction could be structured. For example, certain holders of Allowed FLTL Claims may instead transfer, in whole or in part, their Allowed Claims to the Credit Bid Purchaser in exchange for New Equity Interests and FLTL Subscription Rights, whereupon such Credit Bid Purchaser will then use such Allowed Claims together with the SLTL Subscription Rights, SLTL Warrants, GUC Warrants and cash (and any remaining New Equity Interests and FLTL Subscription Rights) to acquire the Credit Bid Acquired Interests, similarly in a taxable transaction for U.S. federal income tax purposes. The Debtors would then distribute the consideration so received in accordance with the Plan, including with respect to Allowed Claims that were not part of the consideration in the Credit Bid Transaction, also in a taxable transaction for U.S. federal income tax purposes. Accordingly, all holders of Allowed Claims should consult their respective tax advisors regarding the U.S. federal income tax consequences of the Plan to them.

In addition, a single share of reorganized FWE Parent common stock representing all of the outstanding equity of reorganized FWE Parent (the "**Single Share**") and, in respect of which, any Residual Distributable Value will be distributable to holders of Allowed General Unsecured Claims. Accordingly, for U.S. federal income tax purposes, the holders of Allowed General

Unsecured Claims should be treated as receiving a direct ownership interest in the Single Share in addition to receiving the GUC Warrants.

Accordingly, the following discussion assumes that, pursuant to the Plan, the Debtors will distribute:

(i) the New Equity Interests and FLTL Subscription Rights to holders of Allowed FLTL Claims in satisfaction and discharge of any of their Allowed Claims that are not transferred to the Credit Bid Purchaser as described above,

(ii) SLTL Warrants and SLTL Subscription Rights to holders of Allowed SLTL Claims in satisfaction and discharge of their Allowed Claims,

(iii) cash to holders of Allowed Unsecured Trade Claims in satisfaction and discharge of any of their Allowed Claims, and

(iv) GUC Warrants and beneficial interests in the Single Share to holders of Allowed General Unsecured Claims in satisfaction and discharge of their Allowed Claims.

A U.S. Holder of an Allowed FLTL Claim, Allowed SLTL Claim, Allowed Unsecured Trade Claim, or Allowed General Unsecured Claim generally will recognize gain or loss in an amount equal to the difference, if any, between (i) the sum of the fair market value of any non-cash consideration and the amount of any cash received (other than to the extent received in respect of a Claim for accrued but unpaid interest and possibly accrued OID) and (ii) the U.S. Holder's adjusted tax basis in the Allowed Claim exchanged therefor (other than any tax basis attributable to accrued but unpaid interest and possibly accrued OID). *See* Section VII.B.3, "Character of Gain or Loss," below. The U.S. Holder will have ordinary interest income to the extent of any consideration allocable to accrued but unpaid interest or accrued OID not previously included in income. *See* Section VII.B.2, "Distributions in Discharge of Accrued Interest or OID," below.

In the event of the subsequent disallowance of any Disputed Unsecured Trade Claim or Disputed General Unsecured Claim, it is possible that a U.S. holder of a previously Allowed Claim in such Class may receive additional distributions in respect of its Claim as Disputed Claims are resolved, except to the extent of any portion of such distribution treated as an interest income under the imputed interest provisions of the Tax Code. As a result, it is possible that recognition of any loss realized by such U.S. Holder with respect to its Allowed Claim may be deferred until all Disputed Claims within such Class have been Allowed or Disallowed. Alternatively, it is possible that a U.S. Holder of a previously Allowed Claim will have additional gain. The discussion herein assumes that the installment method does not apply, either because the exchange is not eligible or because the U.S. Holder elects out of such treatment.

A U.S. Holder's tax basis in any New Equity Interests, Subscription Rights, SLTL Warrants, GUC Warrants and in any interest in the Single Share received will equal the fair market value of such interests at the time of receipt, and the U.S. Holder's holding period with respect thereto generally will begin on the day following the Effective Date (or, with respect to the GUC Warrants, the day following receipt thereof).

## 2. Distributions in Discharge of Accrued OID or Interest

In general, to the extent that any consideration received pursuant to the Plan by a U.S. Holder of an Allowed Claim is received in satisfaction of interest accrued or OID accrued, in each case during its holding period, such amount will be taxable to the U.S. Holder as interest income (if not previously included in the U.S. Holder's gross income). Conversely, a U.S. Holder may be entitled to recognize a loss to the extent any accrued interest or amortized OID was previously included in its gross income and is not paid in full. However, the IRS has privately ruled that a holder of a "security" of a corporate issuer, in an otherwise tax-free exchange, could not claim a current deduction with respect to any unpaid OID. Accordingly, it is also unclear whether, by analogy, a U.S. Holder of an Allowed Claim that does not constitute a "security" would be required to recognize a capital loss, rather than an ordinary loss, with respect to previously included OID that is not paid in full.

Section 6.12 of the Plan provides that the aggregate consideration to be distributed to U.S. Holders of Allowed Claims in each Class will be allocated first to the principal amount of such Allowed Claims, with any excess allocated to unpaid interest that accrued on these Claims, if any. There is no assurance that the IRS will respect such allocation for U.S. federal income tax purposes. Holders are urged to consult their tax advisors regarding the allocation of consideration received under the Plan, as well as the deductibility of accrued but unpaid interest (including OID) and the character of any loss claimed with respect to accrued but unpaid interest (including OID) previously included in income for U.S. federal income tax purposes.

## 3. Character of Gain or Loss

Where gain or loss is recognized by a U.S. Holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the Claim was acquired at a market discount, and whether and to what extent the holder previously claimed a bad debt deduction.

A U.S. Holder that purchased its Claims from a prior holder at a "market discount" (relative to the principal amount of the Claims at the time of acquisition) may be subject to the market discount rules of the Tax Code. In general, a debt instrument is considered to have been acquired with "market discount" if the U.S. Holder's adjusted tax basis in the debt instrument is less than (i) its stated principal amount or (ii) in the case of a debt instrument issued with OID, its adjusted issue price, in each case, by at least a statutorily defined *de minimis* amount. Under these rules, any gain recognized on the exchange of Claims (other than in respect of a Claim for accrued but unpaid interest) generally will be treated as ordinary income to the extent of the market discount accrued (on a straight line basis or, at the election of the holder, on a constant yield basis) during the U.S. Holder's period of ownership, unless the holder elected to include the market discount in income as it accrued. If a U.S. Holder of a Claim did not elect to include market discount in income as it accrued and, thus, under the market discount rules, was required to defer all or a portion of any deductions for interest on debt incurred or maintained to purchase or carry its Claim, such deferred amounts would become deductible at the time of the receipt of cash and other consideration in satisfaction of such Claims.

### 4. Disposition of New Equity Interests

The U.S. federal income tax treatment of the New Equity Interests depends on, among others, the U.S. federal income tax classification of NewCo and the Credit Bid Purchaser and the terms and structure of the transaction in which a U.S. Holder acquires such Interests. In general, unless a nonrecognition provision applies to a future disposition, U.S. Holders will recognize capital gain or loss upon the sale or exchange of the New Equity Interests in an amount equal to the difference between (i) the holder's adjusted tax basis in the New Equity Interests held and (ii) the sum of the cash and the fair market value of any property received from such disposition. However, if NewCo and the Credit Bid Purchaser are classified as a partnership or other passthrough entity for U.S. federal income tax purposes, all or a portion of such gain may be taxable as ordinary income. Any such capital gain or loss generally should be long-term capital gain or loss if the U.S. Holder's holding period for its New Equity Interests is more than one year at that time. A reduced tax rate on long-term capital gain may apply to non-corporate U.S. Holders. The deductibility of capital loss is subject to significant limitations. All holders are urged to consult their tax advisors regarding the tax treatment of the New Equity Interests.

### 5. Exercise and Disposition of the SLTL Warrants and GUC Warrants

A U.S. holder of an SLTL Warrant or GUC Warrant generally will not recognize gain or loss upon the exercise of such warrant. A U.S. holder's tax basis in New Equity Interests received upon exercise of an SLTL Warrant or GUC Warrant will be equal to the sum of the holder's tax basis in the SLTL Warrant or GUC Warrant, as applicable, and the exercise price. The holder will commence a new holding period with respect to the New Equity Interests received.

If the terms of the SLTL Warrant or GUC Warrant provide for any adjustment to the number of shares of New Equity Interests for which the SLTL Warrant or GUC Warrant may be exercised or to the exercise price of the SLTL Warrant or GUC Warrant, such adjustment may, under certain circumstances, result in constructive distributions that could be taxable to the holder of the SLTL Warrant or GUC Warrant. Conversely, the absence of an appropriate adjustment may result in a constructive distribution that could be taxable to the U.S. holders of the New Equity Interests.

Upon the lapse or disposition of an SLTL Warrant or GUC Warrant, the U.S. holder generally would recognize gain or loss equal to the difference between the amount received (zero in the case of a lapse) and its tax basis in the warrant. In general, such gain or loss would be a capital gain or loss, long-term or short-term, depending on whether the requisite holding period was satisfied.

### 6. Disposition of Interests in the Single Share

In general, unless a nonrecognition provision applies to a future disposition, U.S. Holders of an interest in the Single Share will generally recognize capital gain or loss upon the sale or exchange of their interest in the Single Share received in satisfaction of their Claims in an amount equal to the difference between (i) the holder's adjusted tax basis in its interest in the Single Share held and (ii) the sum of the cash and the fair market value of any property received from such disposition. Any such capital gain or loss generally should be long-term capital gain or loss if the U.S. Holder's holding period for its interest in the Single Share is more than one year at that time.

A reduced tax rate on long-term capital gain may apply to non-corporate U.S. Holders. The deductibility of capital loss is subject to significant limitations.

However, any gain recognized by a U.S. Holder upon a disposition of its interest in the Single Share received in exchange for its Claims (or any stock or property received for such interest in the Single Share in a later tax-free exchange) generally will be treated as ordinary income for U.S. federal income tax purposes to the extent of (i) any ordinary loss deductions previously claimed as a result of the write-down of the Claim, decreased by any income (other than interest income) recognized by the U.S. Holder upon exchange of the Claim, and (ii) with respect to a cash-basis U.S. Holder and in addition to clause (i) above, any amounts which would have been included in its gross income if the holder's Claim had been satisfied in full but which was not included by reason of the cash method of accounting.

## 7. Tax Treatment of Subscription Rights

The characterization of the Subscription Rights and their subsequent exercise for U.S. federal income tax purposes as the exercise of options to acquire New Equity Interests is uncertain given that the Subscription Rights must be exercised prior to the Effective Date, and the receipt and exercise of the Subscription Rights pursuant to the Plan could be viewed as an integrated transaction pursuant to which part of the underlying New Equity Interests are treated as acquired directly in satisfaction of a holder's Allowed FLTL Claims or Allowed SLTL Claims and part treated as acquired for cash. Unless otherwise indicated, the discussion herein assumes that the Subscription Rights are respected as options to acquire New Equity Interests (including the discussion above regarding the calculation of gain or loss).

Regardless of the characterization of the Subscription Rights, a holder of Subscription Rights generally would not recognize any gain or loss upon the exercise of such Subscription Rights. A holder's aggregate tax basis in the New Equity Interests received upon exercise of a Subscription Right should be equal to the sum of (i) the amount paid upon exercise of the Subscription Rights and (ii) the holder's tax basis in the Subscription Rights.

A holder's holding period in the New Equity Interests received upon exercise of a Subscription Right generally should commence the day following the exercise of the Subscription Right.

It is uncertain whether a holder that receives but does not exercise a Subscription Right should be treated as receiving anything of additional value in respect of its Allowed FLTL Claim or Allowed SLTL Claim, as applicable. If the Subscription Rights are respected for U.S. federal income tax purposes as options to acquire New Equity Interests, and a holder is treated as having received a Subscription Right of value (despite its subsequent lapse), such that it obtains a tax basis in the Subscription Right, upon such lapse of the Subscription Right the holder generally would recognize a loss to the extent of the holder's tax basis in the Subscription Right. In general, such loss would be a capital loss, long-term or short-term, depending upon whether the requisite holding period was satisfied.

## C. *Tax Treatment of a Liquidating Trust and Holders of Beneficial Interests*

### 1. Classification of Liquidating Trust

The Plan Administrator may determine, in its discretion and from time to time, that in order to carry out and implement the provisions of the Plan certain assets should be transferred to a liquidating trust for the benefit of one or more classes of stakeholders. In such event, it is intended that the liquidating trust will be structured to qualify as a "liquidating trust" for U.S. federal income tax purposes (a "Liquidating Trust"), and the following discussion so assumes.

In general, a Liquidating Trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as a "grantor trust" (*i.e.*, a pass-through entity). The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. Any Liquidating Trust will be structured with the intention of complying with such general criteria. Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, all parties to the Liquidating Trust (including, without limitation, the Debtors, stakeholders receiving interests in the Liquidating Trust, and the trustee of the Liquidating Trust) will be required to treat the transfer of the underlying assets to the Liquidating Trust as (1) a transfer of such assets (subject to any obligations relating to those assets) directly to the stakeholders receiving interests in the Liquidating Trust (other than to the extent any of the assets are allocable to Disputed Claims), followed by (2) the transfer of such assets by such stakeholders to the Liquidating Trust in exchange for interests in the Liquidating Trust. Accordingly, except in the event of contrary definitive guidance, stakeholders receiving interests in the Liquidating Trust would be treated for U.S. federal income tax purposes as the grantors and owners of their respective shares of the underlying assets of the Liquidating Trust (other than such assets as are allocable to Disputed Claims).

Although this discussion assumes that any Liquidating Trust will be treated as a "liquidating trust" for U.S. federal income tax purposes, no ruling will be requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS will not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to successfully challenge such classification, the U.S. federal income tax consequences to the Liquidating Trust and the U.S. Holders receiving interests in the Liquidating Trust could vary from those discussed herein.

### 2. General Tax Reporting by Liquidating Trust and its Beneficiaries

For all U.S. federal income tax purposes, all parties to the Liquidating Trust (including, without limitation, the Debtors, stakeholders receiving interests in the Liquidating Trust, and the trustee of the Liquidating Trust) must treat the Liquidating Trust as a grantor trust of which the holders of beneficial interests in the Liquidating Trust (as determined for U.S. federal income tax purposes) are the owners and grantors, and such holders as the direct owners of an undivided interest in the underlying assets of the Liquidating Trust (other than any assets allocable to Disputed Claims), consistent with their economic interests therein. The trustee of the Liquidating Trust will file tax returns for the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a). The trustee of the Liquidating Trust also will annually send to each holder of a beneficial interest in the Liquidating Trust a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S.

federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

All taxable income and loss of the Liquidating Trust will be allocated among, and treated as directly earned and incurred by, holders of beneficial interests in the Liquidating Trust with respect to such holder's undivided interest in the underlying assets of the Liquidating Trust (and not as income or loss with respect to its prior Claims), with the possible exception of any taxable income and loss allocable to any assets allocable to, or retained on account of, Disputed Claims. The character of any income and the character and ability to use any loss will depend on the particular situation of the holder of Claims receiving interests in the liquidating trust.

As soon as reasonably practicable after the transfer of the assets to the Liquidating Trust, the trustee of the Liquidating Trust will make a good faith valuation of such assets. All parties to the Liquidating Trust (including, without limitation, the Debtors, holders of Claims receiving interests in the liquidating trust, and the trustee of the liquidating trust) must report consistently with such valuation for all U.S. federal income tax purposes. The valuation will be made available, from time to time, as relevant for tax reporting purposes.

The U.S. federal income tax obligations of a U.S. Holder with respect to its beneficial interests in the Liquidating Trust are not dependent on the Liquidating Trust distributing any cash or other proceeds, subject to any portion(s) of the Liquidating Trust allocable to Disputed Claims. Thus, a U.S. Holder of Allowed Claims receiving interests in the Liquidating Trust may incur a U.S. federal income tax liability with respect to its allocable share of the Liquidating Trust's income even if the Liquidating Trust does not make a concurrent distribution to the U.S. Holder. In general, other than in respect of cash retained on account of Disputed Claims, a distribution of cash by the Liquidating Trust will not be separately taxable to a beneficial owner of the Liquidating Trust since the beneficial owner is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the cash was earned or received by the Liquidating Trust). U.S. Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of cash originally retained by the Liquidating Trust on account of Disputed Claims.

The trustee of the Liquidating Trust will comply with all applicable governmental withholding requirements. If any beneficiaries of the Liquidating Trust are not U.S. persons, the trustee of the Liquidating Trust may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is subject to a lower rate under applicable income tax treaty). As indicated above, the foregoing discussion of the U.S. federal income tax consequences of the Plan does not generally address the consequences to non-U.S. Holders; accordingly, such holders should consult their tax advisors with respect to the U.S. federal income tax consequences of the Plan, including owning an interest in the Liquidating Trust.

### D.  *Information Reporting and Back-Up Withholding*

All distributions to holders of Allowed Claims under the Plan are subject to any applicable tax withholding. Under U.S. federal income tax law, interest, dividends, and other reportable

payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 24%). Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number, (b) furnishes an incorrect taxpayer identification number, (c) fails to properly report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions. Holders of Allowed Claims are urged to consult their tax advisors regarding the Treasury Regulations governing backup withholding and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations.

In addition, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the holder's tax returns.

THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

## IX.
## CERTAIN RISK FACTORS TO BE CONSIDERED

Before voting to accept or reject the Plan, holders of Claims should read and carefully consider the risk factors set forth below, in addition to the information set forth in the Disclosure Statement together with any attachments, exhibits, or documents incorporated by reference hereto. The factors below should not be regarded as the only risks associated with the Plan or its implementation.

### A. *Certain Bankruptcy Law Considerations*

### 1. Risk of Termination of RSA

The RSA contains certain provisions that give the parties the ability to terminate the RSA under various conditions. As noted above, termination of the RSA could result in loss of support for the Plan by important creditor constituencies. Any loss of support could adversely affect the Debtors' ability to confirm and consummate the Plan and could result in protracted Chapter 11

Cases, which could significantly and detrimentally impact the Company's relationships with regulators, vendors, suppliers, employees, and customers. If the RSA is terminated, each vote or any consent given by any of the Consenting FLTL Lenders, the Consenting SLTL Lenders and Apache before such termination will be deemed null and void *ab initio*.

### 2. Risk of Non-Confirmation of the Plan

Although the Debtors believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate re-solicitation of votes. Further, a number of parties, primarily certain Predecessors and sureties, have asserted that the Plan will not satisfy all requirements for confirmation, including assertions that the Debtors cannot abandon the Abandoned Properties as proposed and the Debtors cannot satisfy all administrative expense claims in full. The Debtors disagree with such assertions.

Moreover, the Debtors can make no assurances that they will receive the requisite votes for acceptance to confirm the Plan. Even if all Voting Classes vote in favor of the Plan or the requirements for "cramdown" are met with respect to any Class that rejected the Plan, the Bankruptcy Court could decline to confirm the Plan if it finds that any of the statutory requirements for confirmation are not met. If the Plan is not confirmed, it is unclear what distributions holders of Claims ultimately would receive with respect to their Claims in a subsequent chapter 11 plan.

### 3. Risk of Non-Consensual Confirmation and Conversion into Chapter 7 Cases

If any impaired class of claims or equity interests does not accept or is deemed not to accept a plan, a bankruptcy court may nevertheless confirm such plan at the proponent's request if at least one impaired class has voted to accept the plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. If any Class votes to reject the Plan, then these requirements must be satisfied with respect to such rejecting Classes. The Debtors believe that the Plan satisfies these requirements.

If no plan can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interest of holders of Claims, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code. *See* Section C hereof, as well as the Liquidation Analysis attached hereto as **Exhibit L** (the "**Liquidation Analysis**"), for a discussion of the effects that a chapter 7 liquidation would have on the recoveries of holders of Claims and Interests.

### 4. Risk of Non-Occurrence of the Effective Date

Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date and that there is not a material risk that the Debtors will not be able to obtain all necessary governmental approvals (including any regulatory approval from BOEM and BSEE, and, if applicable, antitrust approval), there can be no assurance as to the timing of the Effective Date.

Certain transactions contemplated under the Plan may require a review under the Hart-Scott-Rodino Antitrust Improvements Act. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived as set forth in Article IX of the Plan, then the Confirmation Order may be vacated, in which event no distributions would be made under the Plan, none of the transactions set forth in Article V of the Plan shall have been consummated, the Debtors and all holders of Claims or Interests would be restored to the status quo as of the day immediately preceding the Confirmation Date, and the Debtors' obligations with respect to Claims and Interests would remain unchanged.

### 5. Risks Related to Possible Objections to the Plan

There is a risk that certain parties could oppose and object to either the entirety of the Plan or specific provisions of the Plan. Although the Debtors believe that the Plan complies with all relevant provisions of the Bankruptcy Code and other applicable law, there can be no guarantee that a party in interest will not file an objection to the Plan or that the Bankruptcy Court will not sustain such an objection. As of the date hereof, the Debtors have received multiple objections to the Plan. The objections assert, among other things, that the Debtors cannot abandon certain estate property. *See, e.g.* objection filed by XTO Offshore, Inc., HHE Energy Company, and XH LLC [Docket No. 759]. While the Debtors believe that they will overcome any objections challenging the Debtors' ability to abandon certain properties, including XTO's objection, the Debtors cannot predict with certainty how such objections will be resolved.

### 6. Parties in Interest May Object to Plan's Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of the Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Interests each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims or Interests, as applicable, in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 7. Conditions to Credit Bid Transaction May Not Be Satisfied

The closing of the Credit Bid Transaction in connection with consummation of the Plan remains contingent on a number of conditions set forth in the Credit Bid Purchase Agreement. There is a risk that one or more of these conditions may not be met, thus preventing consummation of the Credit Bid Transaction.

### 8. Releases, Injunctions, and Exculpations Provisions May Not Be Approved

Article X of the Plan provides for certain releases, injunctions, and exculpations, for Claims and Causes of Action that may otherwise be asserted against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, the Released Parties, or Apache, as applicable. The releases, injunctions, and exculpations provided in the Plan are subject to objection by parties in interest and may not be approved. If the releases and exculpations are not approved, certain parties may

not be considered Releasing Parties, Released Parties, or Exculpated Parties, and certain Released Parties or Exculpated Parties may withdraw their support for the Plan.

### B. *Additional Factors Affecting the Value of NewCo and its Subsidiaries*

**1.    Projections and Other Forward-Looking Statements Are Not Assured, and Actual Results May Vary**

Certain of the information contained herein or in a supplement to this Disclosure Statement is, by nature, forward-looking and contains estimates and assumptions, which might ultimately prove to be incorrect, and projections, which may be materially different from actual future experiences. Many of the assumptions underlying the projections are subject to significant uncertainties that are beyond the control of the Credit Bid Purchaser, including the timing, confirmation, and consummation of the Plan, customer demand for the Credit Bid Purchaser's oil and gas or services, inflation, and other unanticipated market and economic conditions. There are uncertainties associated with any projections and estimates, and they should not be considered assurances. Some assumptions may not materialize, and unanticipated events and circumstances may affect the actual results. Projections are inherently subject to substantial and numerous uncertainties and to a wide variety of significant business, economic, and competitive risks, and the assumptions underlying the projections may be inaccurate in material respects. In addition, unanticipated events and circumstances occurring after the approval of the Disclosure Statement by the Bankruptcy Court, including any natural disasters, terrorist attacks, or health epidemics, may affect the actual financial results achieved. Such results may vary significantly from the forecasts and such variations may be material.

**2.    Risks Associated with the Debtors' Business and Industry**

The risks associated with the Debtors' business and industry include, but are not limited to, the following:

- risk and uncertainties relating to the effects of disruption from the Chapter 11 Cases making it more difficult to maintain business and operational relationships, to retain key executives and to maintain various licenses and approvals necessary for NewCo and its subsidiaries (including the Credit Bid Purchaser) and FWE I to conduct their businesses;

- risk and uncertainties relating to the ability to complete definitive documentation in connection with any financing and the amount, terms and conditions of any such financing;

- risk and uncertainties relating to the Debtors' ability to obtain requisite support for the Plan from various stakeholders; the Debtors' ability to confirm and consummate the Plan;

- risk and uncertainties relating to NewCo's and its subsidiaries' (including the Credit Bid Purchaser), FWE I's, and FWE III's ability to satisfy all of their obligations under the Plan;

- risk and uncertainties relating to events outside of the Debtors' control, including an epidemic or outbreak of an infectious disease, such as the novel coronavirus (COVID-19), and the potential effects on operations and/or on domestic and international demand for crude oil and natural gas, delays, supply chain disruptions, travel restrictions, and other events resulting therefrom that may impact the oil and gas industry;

- social unrest and political instability, particularly in major oil and natural gas producing regions outside the United States, such as the Middle East, and armed conflict or terrorist attacks, whether or not in oil or natural gas producing regions;

- the volatility and potential for sustained low oil and natural gas prices;

- the supply and demand for oil and natural gas and potential risks relating to agreements and negotiations among members of the Organization of the Petroleum Exporting Countries;

- technological advances affecting energy consumption;

- the development and exploitation of alternative fuels and unconventional hydrocarbon production, including shale;

- changes in commodity prices and basis differentials for oil and natural gas;

- the ability to meet production volume targets;

- the uncertainty of estimating proved reserves and unproved resources;

- the ability to develop proved undeveloped reserves;

- the future level of operating and capital costs;

- the ability to obtain necessary governmental approvals for proposed exploration and production projects and to successfully construct and operate such projects;

- actions by credit ratings agencies, including potential downgrades;

- credit and performance risk of lenders, trading counterparties, customers, vendors, suppliers and third party operators;

- general economic and weather conditions in geographic regions or markets served, or where operations are located, including the risk of a global recession and negative impact on demand for oil and/or natural gas;

- the uncertainties associated with governmental regulation, including any potential changes in federal and state tax laws and regulations; and

- competition.

69

### C. *Factors Relating to New Equity Interests to Be Issued under Plan*

**1. Market for Equity of NewCo**

There is currently no market for the New Equity Interests of NewCo, and there can be no assurance as to the development or liquidity of any market for any such New Equity Interests.

NewCo is under no obligation to list the New Equity Interests on any national securities exchange. Therefore, there can be no assurance that any of the foregoing New Equity Interests will be tradable or liquid at any time after the Effective Date. If a trading market does not develop or is not maintained, holders of the foregoing securities may experience difficulty in reselling such securities or may be unable to sell them at all. Even if such a market were to exist, such New Equity Interests could trade at prices higher or lower than the estimated value set forth in the Disclosure Statement depending upon many factors including prevailing interest rates, markets for similar securities, industry conditions, and the performance of, and investor expectations for NewCo. Accordingly, holders of these securities may bear certain risks associated with holding securities for an indefinite period of time.

**2. Potential Dilution**

The ownership percentage represented by the New Equity Interests of NewCo distributed on the Effective Date under the Plan, will be subject to dilution from the Second Lien Backstop Commitment Premium Equity Interests, the New Equity Interests issued upon exercise of the Subscription Rights and the New Equity Interests issued upon the exercise of the New Money Warrants, the SLTL Warrants, or the GUC Warrants, New Equity Interests issued pursuant to the Management Incentive Plan Management Incentive Program, any other shares that may be issued in connection with the Plan or post-emergence, and the conversion of any options, warrants, convertible securities, exercisable securities, or other securities that may be issued post-emergence.

**3. Significant Holders**

Certain holders of Prepetition Claims are expected to acquire a significant ownership interest in NewCo pursuant to the Plan. Such holders, if their decisions are aligned, may be in a position to control the outcome of all actions requiring stockholder approval, including the election of directors, without the approval of other stockholders. This concentration of ownership could also facilitate or hinder a negotiated change of control of NewCo and, consequently, have an impact upon the value of the New Equity Interests of NewCo.

**4. New Equity Interests Subordinated to NewCo's Indebtedness**

In any subsequent liquidation, dissolution, or winding up of NewCo, the New Equity Interests would rank below all debt claims against NewCo. As a result, holders of the New Equity Interests will not be entitled to receive any payment or other distribution of assets upon the liquidation, dissolution, or winding up of NewCo until after all NewCo's obligations to their debt holders have been satisfied.

### 5. Valuation of NewCo Not Intended to Represent Trading Value of New Equity Interests of NewCo

The valuation of NewCo is not intended to represent the trading value of equity in public or private markets and is subject to additional uncertainties and contingencies, all of which are difficult to predict. Actual market prices of such New Equity Interests at issuance will depend upon, among other things: (i) prevailing interest rates; (ii) conditions in the financial markets; (iii) the anticipated initial securities holdings of prepetition creditors, some of whom may prefer to liquidate their investment rather than hold it on a long-term basis; and (iv) other factors that generally influence the prices of the New Equity Interests. The actual market price of the New Equity Interests is likely to be volatile. Many factors, including factors unrelated to the Credit Bid Purchaser's actual operating performance and other factors not possible to predict, could cause the market price of equity to rise and fall. Accordingly, the value, stated herein and in the Plan, of the securities to be issued does not necessarily reflect, and should not be construed as reflecting, values that will be attained for the New Equity Interests in the public or private markets.

### 6. No Intention to Pay Dividends

NewCo may not pay any dividends on the New Equity Interests and may instead retain any future cash flows for debt reduction and to support its operations. As a result, the success of an investment in the New Equity Interests may depend entirely upon any future appreciation in the value of the New Equity Interests. There is, however, no guarantee that the New Equity Interests will appreciate in value or even maintain their initial value.

### D. *Factors Relating to Second Lien Backstop Commitment Letter*

### 1. Bankruptcy Court Might Not Approve Second Lien Backstop Commitment Letter

The Bankruptcy Court's approval of the Second Lien Backstop Commitment Letter is crucial to consummating the restructuring contemplated by the Plan. Failure to obtain the Bankruptcy Court's approval of the Second Lien Backstop Commitment Letter could prevent the Debtors from consummating the Plan and the transactions contemplated thereby.

### E. *Risks Related to Equity Rights Offerings and ERO Backstop Agreements*

### 1. Bankruptcy Court Might Not Approve FLTL Equity Rights Offering Procedures or SLTL Equity Rights Offering Procedures

The Bankruptcy Court's approval of the FLTL Equity Rights Offering Procedures and SLTL Equity Rights Offering Procedures is crucial to consummating the restructuring contemplated by the Plan. Failure to obtain the Bankruptcy Court's approval of the FLTL Equity Rights Offering Procedures or the SLTL Equity Rights Offering Procedures could prevent the Debtors from consummating the Plan and the transactions contemplated thereby.

### 2. Debtors May Not Secure ERO Backstop Agreements

Although the Debtors expect to secure a commitment to fully backstop the $40 million Equity Rights Offerings and obtain Bankruptcy Court approval of the ERO Backstop Agreements,

the Debtors have not yet finalized the terms of the ERO Backstop Agreements and cannot guarantee that such agreement commitment will be secured and approved by the Bankruptcy Court. Failure to secure such commitment and obtain Bankruptcy Court approval of the ERO Backstop Agreements could prevent the Debtors from consummating the Plan and the transactions contemplated thereby.

## F. *Risks Related to Recoveries for Holders of General Unsecured Claims Under the Plan*

### 1. Allowed General Unsecured Claims Could be More than Projected

The estimate of Allowed General Unsecured Claims and recoveries for Holders of Allowed General Unsecured Claims set forth in the Disclosure Statement are based on various assumptions. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual amounts of Allowed General Unsecured Claims may significantly vary from the estimated amounts contained in the Disclosure Statement. Such difference may materially and adversely affect, among other things, the recoveries to Holders of Allowed General Unsecured Claims under the Plan.

### 2. Residual Distributable Value of the Single Share of Post-Effective Date FWE Parent

Although the Debtors will endeavor to value the residual distributable value of the Single Share of the Post-Effective Date FWE Parent held for the benefit of the holders of Allowed General Unsecured Claims (which will be included as a supplement to this Disclosure Statement), there can be no certainty that such estimated value will materialize into any distributions to holders of Allowed General Unsecured Claims.

The residual distributable value of the Single Share of the Post-Effective Date FWE Parent will necessarily be affected by, among other things: (i) recoveries generated in connection with the operation of the remaining assets of the Post-Effective Date Debtors and FWE I; (ii) the outcome of objections to Claims; and (iii) the cost and expenses of such actions and generally administering the Post-Effective Date Debtors and FWE I.

## G. *Additional Factors*

### 1. Debtors Could Withdraw Plan

The Plan may be revoked or withdrawn before the Confirmation Date by the Debtors.

### 2. Debtors Have No Duty to Update

The statements contained in the Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of the Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtors have no duty to update the Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

3. **No Representations Outside the Disclosure Statement Are Authorized**

No representations concerning or related to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in the Disclosure Statement.

Any representations or inducements made to secure your vote for acceptance or rejection of the Plan that are other than those contained in, or included with, the Disclosure Statement should not be relied upon in making the decision to vote to accept or reject the Plan.

4. **No Legal or Tax Advice Is Provided by the Disclosure Statement**

The contents of the Disclosure Statement should not be construed as legal, business, or tax advice. Each holder of a Claim or Interest should consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim or Interest.

The Disclosure Statement is not legal advice to you. The Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

5. **No Admission Made**

Nothing contained herein or in the Plan will constitute an admission of, or will be deemed evidence of, the tax or other legal effects of the Plan on the Debtors or holders of Claims or Interests.

6. **Certain Tax Consequences**

For a discussion of certain tax considerations to the Debtors and certain holders of Claims in connection with the implementation of the Plan, see Article VIII thereof.

## X.
## VOTING PROCEDURES AND REQUIREMENTS

Before voting to accept or reject the Plan, each holder of a claim or interest in a Voting Class as of the Record Date (an "**Eligible Holder**") should carefully review the Plan attached hereto as **Exhibit A**. All descriptions of the Plan set forth in the Disclosure Statement are subject to the terms and conditions of the Plan.

### A. *Voting Deadline*

All Eligible Holders have been sent a Ballot together with the Disclosure Statement. Such holders should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot that accompanies the Disclosure Statement to cast your vote.

The Debtors have engaged Prime Clerk LLC as their Voting Agent to assist in the transmission of voting materials and in the tabulation of votes with respect to the Plan. **FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE VOTING**

AGENT ON OR BEFORE THE VOTING DEADLINE OF 4:00 P.M. (PREVAILING CENTRAL TIME) ON APRIL 26, 2021, UNLESS EXTENDED BY THE DEBTORS.

IF A BALLOT IS DAMAGED OR LOST, YOU MAY CONTACT THE VOTING AGENT AT THE NUMBER SET FORTH BELOW TO RECEIVE A REPLACEMENT BALLOT. ANY BALLOT THAT IS EXECUTED AND RETURNED BUT WHICH DOES NOT INDICATE A VOTE FOR ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.

IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, YOU MAY CONTACT THE VOTING AGENT AT:

**Prime Clerk LLC**
**Telephone: (855) 631-5346 (toll free from U.S. or Canada)**
**or +1 (917) 460-0913 (international)**
**E-mail: fieldwoodballots@primeclerk.com (with "Fieldwood" in the subject line)**

Additional copies of the Disclosure Statement are available upon request made to the Voting Agent, at the telephone numbers or e-mail address set forth immediately above.

### B. *Voting Procedures*

The Debtors are providing copies of the Disclosure Statement (including all exhibits and appendices), related materials, and a Ballot (collectively, a "**Solicitation Package**") to record holders in the Voting Classes.

Eligible Holders in the Voting Classes should provide all of the information requested by the Ballot, and should (a) complete and return all Ballots received in the enclosed, self-addressed, postage-paid envelope provided with each such Ballot to the Voting Agent or (b) submit a Ballot electronically via the E-Ballot voting platform on Prime Clerk's website by visiting https://cases.primeclerk.com/FieldwoodEnergy, clicking on the "Submit E-Ballot" link, and following the instructions set forth on the website.

HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.

### C. *Parties Entitled to Vote*

Under the Bankruptcy Code, only holders of claims or interests in "impaired" classes are entitled to vote on a plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless: (1) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof; or (2) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

If, however, the holder of an impaired claim or interest will not receive or retain any distribution under the plan on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan, and, accordingly, holders of such claims and interests do not

74

actually vote on the plan. If a claim or interest is not impaired by the plan, the Bankruptcy Code deems the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests are not entitled to vote on the plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

The Bankruptcy Code defines "acceptance" of a plan by a class of: (1) Claims as acceptance by creditors in that class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims that cast ballots for acceptance or rejection of the plan; and (2) Interests as acceptance by interest holders in that class that hold at least two-thirds (2/3) in amount of the Interests that cast ballots for acceptance or rejection of the plan.

The Claims in the following classes are impaired under the Plan and entitled to vote to accept or reject the Plan:

      Class 1 — Other Secured Claims
      Class 3 — FLFO Claims
      Class 4 — FLTL Claims
      Class 5 — SLTL Claims
      Class 6A —Unsecured Trade Claims
      Class 6B — General Unsecured Claims

An Eligible Holder should vote on the Plan by completing a Ballot in accordance with the instructions therein and as set forth above. Trade Creditors may elect to have their Claims treated as Unsecured Trade Claims by indicating such election on the Ballot.

All Ballots must be signed by the Eligible Holder, or any person who has obtained a properly completed Ballot proxy from the Eligible Holder by the Record Date. Unless otherwise ordered by the Bankruptcy Court, Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will not be counted. The Debtors, in their sole discretion, may request that the Voting Agent attempt to contact such voters to cure any such defects in the Ballots. Any Ballot marked to both accept and reject the Plan will not be counted. If you return more than one Ballot voting different claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

The Ballots provided to Eligible Holders will reflect the principal amount of such Eligible Holder's Claim; however, when tabulating votes, the Voting Agent may adjust the amount of such Eligible Holder's Claim by multiplying the principal amount by a factor that reflects all amounts accrued between the Record Date and the Petition Date including interest.

Under the Bankruptcy Code, for purposes of determining whether the requisite votes for acceptance have been received, only Eligible Holders who actually vote will be counted. The failure of a holder to deliver a duly executed Ballot to the Voting Agent will be deemed to

constitute an abstention by such holder with respect to voting on the Plan and such abstentions will not be counted as votes for or against the Plan.

Except as provided below, unless the Ballot is timely submitted to the Voting Agent before the Voting Deadline together with any other documents required by such Ballot, the Debtors may, in their sole discretion, reject such Ballot as invalid, and therefore decline to utilize it in connection with seeking confirmation of the Plan.

1. **Fiduciaries and Other Representatives**

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or another, acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested, must submit proper evidence satisfactory to the Debtors of authority to so act. Authorized signatories should submit the separate Ballot of each Eligible Holder for whom they are voting.

2. **Agreements Upon Furnishing Ballots**

The delivery of an accepting Ballot pursuant to one of the procedures set forth above will constitute the agreement of the creditor with respect to such Ballot to accept: (a) all of the terms of, and conditions to, the Solicitation; and (b) the terms of the Plan including the injunction, releases, and exculpations set forth in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 therein. All parties in interest retain their right to object to confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

3. **Change of Vote**

Any party who has previously submitted to the Voting Agent before the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Voting Agent before the Voting Deadline a subsequent, properly completed Ballot voting for acceptance or rejection of the Plan.

D. _**Waivers of Defects, Irregularities, etc.**_

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots will be determined by the Voting Agent or the Debtors, as applicable, in their sole discretion, which determination will be final and binding. The Debtors reserve the right to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful. The Debtors further reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot. The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determines. Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have

been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

### E. Further Information, Additional Copies

If you have any questions or require further information about the voting procedures for voting your claims or about the packet of material you received, or if you wish to obtain an additional copy of the Plan, the Disclosure Statement, or any exhibits to such documents, please contact the Voting Agent.

## XI.
## CONFIRMATION OF PLAN

### A. Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a confirmation hearing upon appropriate notice to all required parties. In a motion filed contemporaneously with the filing of this Disclosure Statement, the Debtors have requested that the Bankruptcy Court schedule the Confirmation Hearing. Notice of the Confirmation Hearing will be provided to all known creditors and equity holders or their representatives. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the continuation date made at the Confirmation Hearing, at any subsequent continued Confirmation Hearing, or pursuant to a notice filed on the docket for the Chapter 11 Cases.

### B. Objections to Confirmation

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan. Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules and the Bankruptcy Local Rules, must set forth the name of the objector, the nature and amount of the Claims held or asserted by the objector against the Debtors' estates or properties, the basis for the objection and the specific grounds therefore, and must be filed with the Bankruptcy Court, together with proof of service thereof. The following parties may be served at the below addresses.

**Debtors** at
Fieldwood Energy LLC
2000 W. Sam Houston Parkway, S. Suite 1200
Houston, Texas 77042
Attn:   Michael Dane
          Thomas R. Lamme

**Counsel to Debtors** at
Weil, Gotshal & Manges LLP
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Attn:   Alfredo R. Pérez (Alfredo.Perez@weil.com)
          Clifford Carlson (Clifford.Carlson@weil.com)

– and –

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attn:   Matthew S. Barr (Matt.Barr@weil.com)
        Jessica Liou (Jessica.Liou@weil.com)

**Counsel to the Ad Hoc Group of Secured Lenders** at
Haynes and Boone, LLP
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Attn:   Charles A. Beckham Jr. (charles.beckham@haynesboone.com)
        Martha Wyrick (martha.wyrick@haynesboone.com)

– and –

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Attn:   Damian S. Schaiable (damian.schiable@davispolk.com)
        Natasha Tsiouris (natasha.tsiouris@davispolk.com)
        Josh Sturm (joshua.sturm@davispolk.com)

**Counsel to the Creditors' Committee** at

Pachulski Stang Ziehl & Jones LLP
440 Louisiana Street, Suite 900
Houston, Texas 77002
Attn:    Michael D. Warner (mwarner@pszjlaw.com)
        Benjamin L. Wallen (bwallen@pszjlaw.com)

– and –

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038
Attn:   Kristopher M. Hansen (khansen@stroock.com)
        Frank A. Merola (fmerola@stroock.com)
        Jonathan D. Canfield (jcanfield@stroock.com)
        Sherry J. Millman (smillman@stroock.com)

**Office of the U.S. Trustee** at
Office of the U.S. Trustee for Region 7
515 Rusk Street, Suite 3516
Houston, Texas 77002

Attn:   Hector Duran (Hector.Duran@usdoj.gov)
        Stephen Statham (Stephen.Statham@usdoj.gov)

> **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

### C. *Requirements for Confirmation of Plan*

The Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation are that the Plan is (i) accepted by all impaired Classes of Claims and Interests entitled to vote or, if rejected or deemed rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class; (ii) in the "best interests" of the holders of Claims and Interests impaired under the Plan; and (iii) feasible.

### 1. Acceptance of Plan

Under the Bankruptcy Code, a Class accepts a chapter 11 plan if (i) holders of two-thirds (2/3) in amount and (ii) with respect to holders of Claims, more than a majority in number of the allowed claims in such class (other than those designated under section 1126(e) of the Bankruptcy Code) vote to accept the Plan.  Holders of Claims that fail to vote are not counted in determining the thresholds for acceptance of the Plan.

If any impaired Class of Claims does not accept the Plan (or is deemed to reject the Plan), the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each impaired Class of Claims that has not accepted the Plan (or is deemed to reject the Plan), the Plan "does not discriminate unfairly" and is "fair and equitable" under the so-called "cram down" provisions set forth in section 1129(b) of the Bankruptcy Code.  The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under the Plan. A chapter 11 plan does not discriminate unfairly, within the meaning of the Bankruptcy Code, if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class of claims or interests receives more than it legally is entitled to receive for its claims or interests. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair."  The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured; claims versus interests) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class.  As to the dissenting class, the test sets different standards that must be satisfied for the Plan to be confirmed, depending on the type of claims or interests in such class.  The following sets forth the "fair and equitable" test that must be satisfied as to each type of class for a plan to be confirmed if such class rejects the Plan:

- **Secured Creditors**.  Each holder of an impaired secured claim either (a) retains its liens on the property, to the extent of the allowed amount of its secured claim, and receives deferred cash payments having a value, as of the effective date of the plan, of at least the allowed amount of such secured claim, (b) has the right to credit bid the amount of its claim if its property is sold and retains its lien on the proceeds of the sale, or (c) receives the "indubitable equivalent" of its allowed secured claim.

- **Unsecured Creditors**. Either (a) each holder of an impaired unsecured claim receives or retains under the plan, property of a value, as of the effective date of the plan, equal to the amount of its allowed claim or (b) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

- **Interests**. Either (a) each equity interest holder will receive or retain under the plan property of a value equal to the greater of (i) the fixed liquidation preference or redemption price, if any, of such equity interest and (ii) the value of the equity interest or (b) the holders of interests that are junior to the interests of the dissenting class will not receive or retain any property under the plan.

The Debtors believe the Plan satisfies the "fair and equitable" requirement with respect to any rejecting Class.

IF ALL OTHER CONFIRMATION REQUIREMENTS ARE SATISFIED AT THE CONFIRMATION HEARING, THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO RULE THAT THE PLAN MAY BE CONFIRMED ON THE GROUND THAT THE SECTION 1129(b) REQUIREMENTS HAVE BEEN SATISFIED.

### 2. Best Interests Test

As noted above, with respect to each impaired class of claims and equity interests, confirmation of a plan requires that each such holder either: (a) accept the plan; or (b) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the value such holder would receive or retain if the debtors were liquidated under chapter 7 of the Bankruptcy Code. This requirement is referred to as the "best interests test."

This test requires a bankruptcy court to determine what the holders of allowed claims and allowed equity interests in each impaired class would receive from a liquidation of the debtor's assets and properties in the context of a liquidation under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the debtor's assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the plan.

The Debtors believe that under the Plan all holders of impaired Claims and Interests will receive property with a value not less than the value such holder would receive in a liquidation under chapter 7 of the Bankruptcy Code. The Debtors' belief is based primarily on: (a) consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to holders of impaired Claims and Interests; and (b) the Liquidation Analysis attached hereto as **Exhibit L.**

The Debtors believe that any liquidation analysis is speculative, as it is necessarily premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Debtors. The Liquidation Analysis is solely for the purpose of disclosing to holders of Claims and Interests the effects of a hypothetical chapter 7 liquidation of the Debtors, subject to the assumptions set forth therein.

There can be no assurance as to values that would actually be realized in a chapter 7 liquidation nor can there be any assurance that a bankruptcy court will accept the Debtors' conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

### 3. Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtors have analyzed the abilities of each of FWE I, FWE III, and NewCo and its subsidiaries, including the Credit Bid Purchaser, to meet their respective obligations under the Plan.

### (a) **FWE I**

The Debtors believe that FWE I will have sufficient funds and resources to meet, or otherwise satisfy, its obligations under the Plan going forward. As discussed above, the Debtors will capitalize FWE I on the Effective Date with $50 million minus the accrual of post-petition decommissioning spend by the Debtors on the Legacy Apache Properties, which the Debtors project shall be approximately $25 million. Additional funds will be available post-Effective Date through cash flows generated from operations of the Legacy Apache Properties, which the Debtors project will produce approximately 25,000 barrels of oil equivalent per day, and through loans of up to $400 million to be provided by Apache in accordance with the terms and conditions of the Standby Credit Facility Documents to be used by FWE I to perform P&A Obligations. Additionally, under the Decommissioning Agreement, separate security has previously been provided to Apache to secure P&A Obligations associated with the Apache Legacy Properties, including approximately $238 million in funds in Trust A and approximately $498 million in letters of credit and surety bonds (payable in accordance with their terms and conditions). As set detailed in **Exhibit M**, Houlihan Lokey estimated the enterprise value of FWE I to be approximately negative $220 million to positive $170 million, with a mid-point of negative $30 million.

Based on the Debtors' estimate of approximately $965 million to $1.16 billion in total FWE I Obligations, including all P&A Obligations associated with the Legacy Apache Properties, and the funds and resources described above, the Debtors believe that the Plan provides the ability for FWE I to meet, or otherwise satisfy, its obligations under the Plan.

### (b) **FWE III**

The Debtors further believe that FWE III will have sufficient funds to meet its obligations under the Plan. FWE III will be capitalized with approximately $27 million of capital through a combination of approximately (i) $5-15 million of cash on hand and (ii) $12-22 million in future cash commitments from the Credit Bid Purchaser, which the Debtors believe will provide the Plan Administrator with adequate funding to implement the Plan, operate the FWE III Assets, and satisfy the FWE III Obligations, including the P&A Obligations associated with the FWE III Assets and wind down costs. Moreover, an additional $12 million in outstanding security provided by surety bonds will be available to backstop any of the FWE III Obligations (in accordance with the terms and conditions of such bonds). In addition, the Plan Administrator will engage the

services of Credit Bid Purchaser to leverage its staff's extensive experience managing P&A and decommissioning work to efficiently and safely complete FWE III's P&A obligations.

Therefore, based on Houlihan Lokey's estimated asset value of FWE III of approximately negative $28 million, as detailed in **Exhibit M**, the Debtors believe that FWE III is sufficiently capitalized to satisfy all of its obligations.

(c)     **Credit Bid Purchaser**

The Debtors believe that the Credit Bid Purchaser will have sufficient funds to meet its obligations under the Plan, including those obligations related to the Credit Bid Acquired Interests. The Debtors submit that the Credit Bid Purchaser can provide adequate assurance of future performance under the assumed executory contracts and unexpired leases. If the Plan is confirmed, the Credit Bid Purchaser will acquire specified Deepwater Assets and Shelf Assets with a significantly de-levered balance sheet and reduction in annual debt service obligations. Based on the Debtors' projected cash on hand on the Effective Date, the Debtors estimate that Credit Bid Purchaser will have up to $304 million in funded debt, composed of approximately $119 million from the First Lien Exit Facility and up to $185 million from the Second Lien Exit Facility. In addition, the Credit Bid Purchaser is anticipated to raise $40 million through the Equity Rights Offerings on the Effective Date. Of the estimated up to $225 million of new money that the Credit Bid Purchaser is anticipated to raise, $120 million will be used to capitalize the Credit Bid Purchaser's balance sheet, and the remainder will be used to fund the cash portion of the Credit Bid Consideration.

The Debtors have also prepared the consolidated financial projections for the Credit Bid Purchaser (the "**Financial Projections**") for the fiscal years 2021 through 2025 (the "**Projection Period**"). The Financial Projections, and the assumptions on which they are based, are attached hereto as **Exhibit N**.

Accordingly, the Debtors believe that the Plan is not likely to be followed by liquidation or the need for further reorganization.

The Debtors do not, as a matter of course, publish their business plans or strategies, projections or anticipated financial position. Accordingly, the Debtors do not anticipate that they will, and disclaim any obligation to, furnish updated business plans or Financial Projections to parties in interest after the Confirmation Date. In connection with the planning and development of the Plan, the Financial Projections were prepared by the Debtors, with the assistance of their professionals, to present the anticipated impact of the Plan. The Financial Projections assume that the Plan will be implemented in accordance with its stated terms. The Financial Projections are based on forecasts of key economic variables and may be significantly impacted by, among other factors, oil and natural gas prices, expectations regarding future commodity prices, the level of activity of oil and natural gas exploration, development, and production domestically and internationally, demand for drilling services, competition and supply of competing rigs, changes in the political environment of the countries in which the Debtors operate, regulatory changes, and a variety of other factors. Consequently, the estimates and assumptions underlying the Financial Projections are inherently uncertain and are subject to material business, economic, and other uncertainties. Therefore, such Financial Projections, estimates, and assumptions are not

necessarily indicative of current values or future performance, which may be significantly less or more favorable than set forth herein.

The Financial Projections should be read in conjunction with the assumptions, qualifications, and explanations set forth in the Disclosure Statement, the Plan, and the Plan Supplement, in their entirety, and the historical consolidated financial statements (including the notes and schedules thereto).

### 4. Valuation

The Debtors and Houlihan believe that the valuation of Credit Bid Purchaser implied by the Credit Bid Transaction is currently the best measure of fair market value for the assets and associated liabilities included in the Credit Bid Transaction given, among other reasons, (i) the robust M&A Process conducted by Houlihan and (ii) the terms of the Credit Bid Transaction are the result of good faith, arm's length, and comprehensive negotiations between the Debtors and the Consenting FLTL Lenders and their respective financial and legal advisors based on in-depth due diligence and a determination of the value maximizing development, production and operation of the assets included in the Credit Bid Transaction. Notwithstanding the foregoing, Houlihan has prepared a valuation analysis of NewCo, which is attached hereto as **Exhibit M**.

**XII.**
**ALTERNATIVES TO CONFIRMATION**
**AND CONSUMMATION OF PLAN**

The Debtors have evaluated several alternatives to the Plan. After studying these alternatives, the Debtors have concluded that the Plan is the best alternative and will maximize recoveries to parties in interest, assuming confirmation and consummation of the Plan. If the Plan is not confirmed and consummated, the alternatives to the Plan are: (A) the preparation and presentation of an alternative reorganization; (B) a sale of some or all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code; or (C) a liquidation under chapter 7 of the Bankruptcy Code.

### A. *Alternative Plan of Reorganization*

If the Plan is not confirmed, the Debtors (or if the Debtors' exclusive period in which to file a plan of reorganization has expired, any other party in interest) could attempt to formulate a different plan. Such a plan might involve either: (a) a reorganization and continuation of the Debtors' business or (b) an orderly liquidation of their assets. The Debtors, however, believe that the Plan, as described herein, enables their creditors to realize the most value under the circumstances.

### B. *Sale under Section 363 of the Bankruptcy Code*

Upon the Toggle Event, the Debtors intend to seek from the Bankruptcy Court, after notice and hearing, authorization to sell their assets to the Credit Bid Purchaser pursuant to section 363 of the Bankruptcy Code. Upon analysis and consideration of this alternative, the Debtors do not believe that a standalone sale of their assets pursuant to section 363 of the Bankruptcy Code would yield a higher recovery for the holders of Claims and Interests under the Plan.

### C. *Liquidation Under Chapter 7 of Bankruptcy Code*

If no plan can be confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to their creditors in accordance with the priorities established by the Bankruptcy Code. The effect that a chapter 7 liquidation would have on the recovery of holders of Allowed Claims and Interests is set forth in the Liquidation Analysis attached hereto as **Exhibit L.**

The Debtors believe that liquidation under chapter 7 would result in smaller distributions to creditors than those provided for in the Plan because of, among other things, the delay resulting from the conversion of the Chapter 11 Cases, the additional administrative expenses associated with the appointment of a trustee and the trustee's retention of professionals who would be required to become familiar with the many legal and factual issues in the Chapter 11 Cases, and the loss in value attributable to an expeditious liquidation of the Debtors' assets as required by chapter 7.

### XIII.
### CONCLUSION AND RECOMMENDATION

The Debtors believe the Plan is in the best interests of all stakeholders and urge the holders of Claims in Classes 1, 3, 4, 5, 6A, and 6B to vote in favor thereof.

*[Remainder of Page Intentionally Left Blank]*

Dated: March 24, 2021
Houston, Texas

Respectfully submitted,

**FIELDWOOD ENERGY LLC**

By: Fieldwood Energy Inc., its managing member

By: _____
Name:  Thomas R. Lamme
Title:   Senior Vice President and General Counsel

**FIELDWOOD ENERGY INC.**

By: _____
Name:  Thomas R. Lamme
Title:   Senior Vice President and General Counsel

**FIELDWOOD ENERGY OFFSHORE LLC**

By: _____
Name:  Thomas R. Lamme
Title:   Vice President

**FIELDWOOD ONSHORE LLC**

By: _____
Name:  Thomas R. Lamme
Title:   Vice President

**FIELDWOOD SD OFFSHORE LLC**

By: _____
Name:  Thomas R. Lamme
Title:   Vice President

*[Signature Page to Disclosure Statement for Third Amended Joint*
*Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated*
*Debtors]*

**FIELDWOOD OFFSHORE LLC**

By: Fieldwood Energy LLC, its managing member

By: Fieldwood Energy Inc., its managing member

By: _____

Name: Thomas R. Lamme
Title: Senior Vice President and General Counsel

**DYNAMIC OFFSHORE RESOURCES NS, LLC**

By: _____

Name: Thomas R. Lamme
Title: Vice President

**FW GOM PIPELINE, INC.**

By: _____

Name: Thomas R. Lamme
Title: Vice President

**GOM SHELF LLC**

By: Fieldwood Energy LLC, its managing member

By: Fieldwood Energy Inc., it managing member

By: _____

Name: Thomas R. Lamme
Title: Senior Vice President and General Counsel

**BANDON OIL AND GAS GP, LLC**

By: _____

Name: Thomas R. Lamme
Title: Vice President

**BANDON OIL AND GAS, LP**

By: Bandon Oil and Gas, LLC, its general partner

By: *Thomas R. Lamme*
Name: Thomas R. Lamme
Title: Vice President

**FIELDWOOD ENERGY SP LLC**

By: *Thomas R. Lamme*
Name: Thomas R. Lamme
Title: Vice President

**GALVESTON BAY PIPELINE LLC**

By: Fieldwood Onshore LLC, its managing member

By: *Thomas R. Lamme*
Name: Thomas R. Lamme
Title: Vice President

**GALVESTON BAY PROCESSING LLC**

By: Fieldwood Onshore LLC, its managing member

By: *Thomas R. Lamme*
Name: Thomas R. Lamme
Title: Vice President

*[Signature Page to Disclosure Statement for Third Amended Joint
Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated
Debtors]*

**<u>Exhibit A</u>**
**Plan**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

**THIRD AMENDED JOINT CHAPTER 11 PLAN OF**
**<u>FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS</u>**

**WEIL, GOTSHAL & MANGES LLP**
Alfredo R. Pérez
Clifford W. Carlson
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

**WEIL, GOTSHAL & MANGES LLP**
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors*
*and Debtors in Possession*

Dated: March 24, 2021
      Houston, Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

## Table of Contents

**ARTICLE I.  DEFINITIONS AND INTERPRETATION.** .................................................... 1

    1.1   Definitions. ................................................................................................................... 1
    1.2   Interpretation; Application of Definitions; Rules of Construction. ............................ 27
    1.3   Reference to Monetary Figures. ................................................................................. 27
    1.4   Controlling Document. ............................................................................................... 28
    1.5   Certain Consent Rights ............................................................................................... 28

**ARTICLE II.  ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS.** ................................................................................ 28

    2.1   Treatment of Administrative Expense Claims. ........................................................... 28
    2.2   Treatment of Fee Claims. ........................................................................................... 29
    2.3   Treatment of DIP Claims. .......................................................................................... 30
    2.4   Payment of Fees and Expenses Under DIP Order. .................................................... 30
    2.5   Treatment of Priority Tax Claims. ............................................................................. 30
    2.6   Restructuring Expenses. ............................................................................................. 31
    2.7   Postpetition Hedge Claims. ........................................................................................ 31

**ARTICLE III.  CLASSIFICATION OF CLAIMS AND INTERESTS.** ................................. 32

    3.1   Classification in General. ........................................................................................... 32
    3.2   Formation of Debtor Groups for Convenience Only. ................................................ 32
    3.3   Summary of Classification of Claims and Interests. ................................................. 32
    3.4   Special Provision Governing Unimpaired Claims. .................................................... 33
    3.5   Separate Classification of Other Secured Claims. ..................................................... 33
    3.6   Elimination of Vacant Classes. .................................................................................. 33
    3.7   Voting Classes; Presumed Acceptance by Non-Voting Classes. .............................. 33
    3.8   Voting; Presumptions; Solicitation. ........................................................................... 33
    3.9   Cramdown. ................................................................................................................. 34
    3.10  No Waiver. ................................................................................................................. 34

**ARTICLE IV.  TREATMENT OF CLAIMS AND INTERESTS** ........................................... 34

    4.1   Class 1: Other Secured Claims. ................................................................................. 34
    4.2   Class 2:  Priority Non-Tax Claims. ............................................................................ 34
    4.3   Class 3:  FLFO Claims. .............................................................................................. 35
    4.4   Class 4:  FLTL Claims. .............................................................................................. 35
    4.5   Class 5A:  Unsecured Trade Claims. ......................................................................... 36
    4.6   Class 5B:  General Unsecured Claims. ...................................................................... 36
    4.7   Class 6:  Intercompany Claims. ................................................................................. 37
    4.8   Class 7:  Subordinated Securities Claims. ................................................................. 37
    4.9   Class 8:  Intercompany Interests. .............................................................................. 37
    4.10  Class 9:  Existing Equity Interests. ........................................................................... 37
    4.11  Treatment of Vacant Classes. .................................................................................... 38

**ARTICLE V.  MEANS FOR IMPLEMENTATION** ................................................................ 38

    5.1   Plan Settlement; Compromise and Settlement of Claims, Interests, and Controversies. .......... 38
    5.2   Credit Bid Transaction; Confirmation Outside Date. ................................................ 38
    5.3   Equity Rights Offering. .............................................................................................. 41
    5.4   New Equity Interests. ................................................................................................. 41
    5.5   NewCo Organizational Documents ............................................................................ 42

5.6    New Money Warrants and GUC Warrants .............................................................. 42
5.7    Plan of Merger ..................................................................................................... 42
5.8    Single Share ......................................................................................................... 43
5.9    Plan Administrator ............................................................................................... 43
5.10   Plan Funding. ....................................................................................................... 46
5.11   The Exit Facilities ................................................................................................ 46
5.12   Apache Definitive Documents. ............................................................................. 47
5.13   Abandonment of Certain Properties ..................................................................... 48
5.14   Establishment of Claims Reserve. ........................................................................ 48
5.15   Plan Administrator Expense Reserve. ................................................................... 48
5.16   Continued Corporate Existence; Effectuating Documents; Further Transactions.... 49
5.17   Corporate Action. ................................................................................................. 50
5.18   Cancellation of Existing Securities and Agreements. ............................................ 50
5.19   Cancellation of Certain Existing Security Interests. .............................................. 51
5.20   Intercompany Interests; Corporate Reorganization. .............................................. 52
5.21   Restructuring Transactions. .................................................................................. 52
5.22   Liquidating Trust. ................................................................................................. 52
5.23   Securities Exemptions. ......................................................................................... 53
5.24   Closing of Chapter 11 Cases. ............................................................................... 54

ARTICLE VI.   DISTRIBUTIONS. ...................................................................................... 54

6.1    Distributions Generally. ....................................................................................... 54
6.2    No Postpetition Interest on Claims. ...................................................................... 55
6.3    Date of Distributions. ........................................................................................... 55
6.4    Distribution Record Date. ..................................................................................... 55
6.5    Distributions after Effective Date ........................................................................ 55
6.6    Delivery of Distributions. ..................................................................................... 55
6.7    Unclaimed Property. ............................................................................................. 56
6.8    Satisfaction of Claims. ......................................................................................... 56
6.9    Manner of Payment under Plan. ............................................................................ 56
6.10   De Minimis Cash Distributions. ........................................................................... 56
6.11   No Distribution in Excess of Amount of Allowed Claim. ...................................... 57
6.12   Allocation of Distributions Between Principal and Interest. ................................... 57
6.13   Setoffs and Recoupments. ..................................................................................... 57
6.14   Withholding and Reporting Requirements. ............................................................ 57
6.15   Claims Paid by Third Parties. ............................................................................... 58
6.16   Claims Payable by Third Parties. .......................................................................... 58

ARTICLE VII.   PROCEDURES FOR DISPUTED CLAIMS. ............................................ 59

7.1    Allowance of Claims. ........................................................................................... 59
7.2    Claims Objections. ............................................................................................... 59
7.3    Estimation of Claims. ........................................................................................... 59
7.4    Adjustment to Claims Register Without Objection. ............................................... 60
7.5    Time to File Objections to Claims. ....................................................................... 60
7.6    Disallowance of Claims. ....................................................................................... 60
7.7    Amendments to Claims. ........................................................................................ 60
7.8    No Distributions Pending Allowance. ................................................................... 60
7.9    Distributions After Allowance .............................................................................. 60
7.10   Claims Resolution Procedures Cumulative. ........................................................... 61

**ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ................................... 61

8.1    General Treatment. ................................................................................................................. 61
8.2    Determination of Cure Amounts and Deemed Consent. .......................................................... 62
8.3    Rejection Damages Claims. ..................................................................................................... 63
8.4    Survival of the Debtors' Indemnification Obligations. ............................................................ 64
8.5    Insurance Policies. ................................................................................................................... 64
8.6    Modifications, Amendments, Supplements, Restatements, or Other Agreements. ................... 64
8.7    Reservation of Rights. ............................................................................................................. 65

**ARTICLE IX. CONDITIONS PRECEDENT TO OCCURRENCE OF EFFECTIVE DATE.** ........ 65

9.1    Conditions Precedent to Effective Date.................................................................................... 65
9.2    Waiver of Conditions Precedent. .............................................................................................. 67
9.3    Effect of Failure of a Condition. ............................................................................................... 68

**ARTICLE X. EFFECT OF CONFIRMATION.** ................................................................................... 68

10.1    Binding Effect. ....................................................................................................................... 68
10.2    Vesting of Assets...................................................................................................................... 68
10.3    Discharge of Claims Against and Interests in Debtors............................................................. 68
10.4    Pre-Confirmation Injunctions and Stays. ................................................................................. 69
10.5    Injunction Against Interference With Plan. .............................................................................. 69
10.6    Plan Injunction. ...................................................................................................................... 70
10.7    Releases. ................................................................................................................................. 70
10.8    Exculpation. ........................................................................................................................... 74
10.9    Injunction Related to Releases and Exculpation. ..................................................................... 75
10.10    Subordinated Securities Claims. ............................................................................................ 76
10.11    Retention of Causes of Action and Reservation of Rights....................................................... 76
10.12    Ipso Facto and Similar Provisions Ineffective. ...................................................................... 76
10.13    Indemnification and Reimbursement Obligations................................................................... 76

**ARTICLE XI. RETENTION OF JURISDICTION.** ........................................................................... 77

11.1    Retention of Jurisdiction. ....................................................................................................... 77

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ........................................................................... 79

12.1    Payment of Statutory Fees. .................................................................................................... 79
12.2    Exemption from Certain Transfer Taxes. ............................................................................... 79
12.3    Request for Expedited Determination of Taxes. ..................................................................... 80
12.4    Dates of Actions to Implement Plan. ...................................................................................... 80
12.5    Amendments. ......................................................................................................................... 80
12.6    Revocation or Withdrawal of Plan. ......................................................................................... 80
12.7    Severability. ........................................................................................................................... 81
12.8    Governing Law. ...................................................................................................................... 81
12.9    Immediate Binding Effect. ...................................................................................................... 81
12.10    Successors and Assigns. ........................................................................................................ 81
12.11    Entire Agreement. ................................................................................................................. 82
12.12    Computing Time. .................................................................................................................. 82
12.13    Exhibits to Plan. ................................................................................................................... 82
12.14    Notices. ................................................................................................................................ 82
12.15    Reservation of Rights............................................................................................................ 83
12.16    Dissolution of Creditors' Committee. ................................................................................... 84

Each of Fieldwood Energy LLC; Fieldwood Energy Inc.; Dynamic Offshore Resources NS, LLC; Fieldwood Energy Offshore LLC; Fieldwood Onshore LLC; Fieldwood SD Offshore LLC; Fieldwood Offshore LLC; FW GOM Pipeline, Inc.; GOM Shelf LLC; Bandon Oil and Gas GP, LLC; Bandon Oil and Gas, LP; Fieldwood Energy SP LLC; Galveston Bay Pipeline LLC; and Galveston Bay Processing LLC (each, a "*Debtor*" and collectively, the "*Debtors*") proposes the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Section 1.1 below.

## ARTICLE I.  DEFINITIONS AND INTERPRETATION.

### 1.1  *Definitions*.

The following terms shall have the respective meanings specified below:

*363 Credit Bid Transaction* means the sale of the Credit Bid Acquired Interests to the Credit Bid Purchaser pursuant to section 363 of the Bankruptcy Code on substantially the same terms as provided in the Credit Bid Purchase Agreement in accordance with Section 5.2(c) of this Plan.

*Abandoned Properties* means the Debtors' rights to and interests in executory contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements listed on the Schedule of Abandoned Properties (as amended, supplemented, or otherwise modified from time to time).

*Accepting Class* means a class of Claims or Interests that votes to accept this Plan in accordance with section 1126 of the Bankruptcy Code.

*Ad Hoc Group of Secured Lenders* means the ad hoc group of holders of Prepetition FLTL Loans and Prepetition SLTL Loans that is represented by the Ad Hoc Group of Secured Lenders Advisors.

*Ad Hoc Group of Secured Lenders Advisors* means Davis Polk & Wardwell LLP, Haynes and Boone LLP, Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan, LLC, Rothschild & Co US Inc. and Intrepid Financial Partners, LLC and any local or foreign advisors.

*Ad Hoc Group of Prepetition SLTL Lenders* means that certain ad hoc group of holders of Prepetition SLTL Loans that is represented by the Ad Hoc Group of Prepetition SLTL Advisors.

*Ad Hoc Group of Prepetition SLTL Lenders Advisors* means only Kasowitz Benson Torres LLP.

**Additional Predecessor Agreement** means any consensual agreement that the Debtors may enter into prior to the Confirmation Date with any entity or entities in the chain of title, co-working interest owner(s), or other related party for any of the Abandoned Properties.

**Additional Predecessor Agreement Documents** means any agreements or documents contemplated by and necessary to the consummation of an Additional Predecessor Agreement.

**Administrative Expense Claim** means any Claim constituting a cost or expense of administration incurred during the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code (other than DIP Claims and Postpetition Hedge Claims), including (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises), and (b) Fee Claims.

**Allowed** means, with respect to any Claim against or Interest in a Debtor, (a) (i) that is timely filed by the bar dates established in the Chapter 11 Cases, or (ii) as to which there exists no requirement for the holder of a Claim to file such Claim under the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (b) (i) that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and (ii) for which no contrary proof of claim has been timely filed, or (c) allowed under the Plan or by a Final Order (including the DIP Order). With respect to any Claim described in clause (a) above, such Claim will be considered allowed only if, and to the extent that, (A) no objection to the allowance of such Claim has been asserted, or may be asserted, on or before the time period set forth in the Plan, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, (B) an objection to such Claim is asserted and such Claim is subsequently allowed pursuant to a Final Order, (C) such Claim is settled pursuant to an order of the Bankruptcy Court, or (D) such Claim is allowed pursuant to the Plan or any agreements related thereto and such allowance is approved and authorized by the Bankruptcy Court; *provided*, *however*, that notwithstanding the foregoing, the Post-Effective Date Debtors shall retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise unimpaired pursuant to the Plan. If a Claim is Allowed only in part, any provisions hereunder with respect to Allowed Claims are applicable solely to the Allowed portion of such Claim. Notwithstanding the foregoing, unless expressly waived herein, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.

**Amended Organizational Documents** means the certificates of incorporation, certificates of formation, bylaws, limited liability company agreements, stockholders agreement, and the operating agreements or other similar organizational or formation documents, as applicable, of the Post-Effective Date Debtors.

**Apache** means Apache Corporation.

2

**Apache Definitive Documents** has the meaning set forth in the Apache Implementation Agreement.

**Apache Fees and Expenses** has the meaning set forth in the Apache Implementation Agreement.

**Apache Implementation Agreement** means that certain Implementation Agreement, dated January 1, 2021, by and among Debtor Fieldwood Energy LLC and Debtor GOM Shelf LLC, on the one hand, and the Apache PSA Parties on the other hand, as may be amended, restated, or otherwise modified pursuant to the terms thereof; *provided* that such amendment, restatement, or other modification is reasonably acceptable to the Debtors, the Apache PSA Parties, the Required DIP Lenders and Requisite FLTL Lenders.

**Apache Implementation Costs** has the meaning ascribed to "Implementation Costs" in the Apache Implementation Agreement.

**Apache PSA Parties** means, collectively, Apache, Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC.

**Apache Term Sheet** has the meaning set forth in the Restructuring Support Agreement.

**Asset** means all of the rights, title, and interests of a Debtor in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

**Assumption Dispute** means an unresolved objection regarding assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including objections based on the appropriate Cure Amount or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code).

**Avoidance Actions** means all claims and causes of action that may be commenced by or on behalf of the Debtors pursuant to sections 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code or similar nonbankruptcy law, including similar or related state or federal statute and common law.

**Backstop Commitment Premium Equity Interests** means the Second Lien Backstop Commitment Premium Equity Interests, the FLTL ERO Backstop Commitment Premium Equity Interests, and the SLTL ERO Backstop Commitment Premium Equity Interests.

**Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time, as applicable to these Chapter 11 Cases.

**Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code or the Bankruptcy Court

is determined not to have authority to enter a Final Order on an issue, the District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

**Business Day** means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are authorized or required by law or executive order to close.

**Cash** means legal tender of the United States of America.

**Cause of Action** means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code (including claims and causes of action arising under section 544, 545, 547, 548, 549, 550, and 551 of the Bankruptcy Code), (d) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any state law fraudulent transfer or preferential transfer claim.

**Chapter 11 Case(s)** means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

**Claim** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any Debtor.

**Claims Reserve** means one or more segregated accounts not subject to the Liens of the Prepetition Agents or DIP Agent, which shall be established on or immediately before the Effective Date and funded on the Effective Date with Cash to pay (or reserve for payment of) any (i) Allowed Administrative Expense Claims, (ii) Allowed Priority Tax Claims, (iii) Allowed Priority Non-Tax Claims, (iv) Allowed Other Secured Claims, (v) Allowed Unsecured Trade Claims, and (vi) Cure Amounts; *provided*, *however*, that all Cash remaining in the Claims Reserve after payment of all relevant Allowed Claims and Cure Amounts in accordance with the terms of this Plan shall constitute Residual Distributable Value; *provided further* that the funding

of the Claims Reserve shall be consistent with the terms of the Second Lien Backstop Commitment Letter.

*Claims Reserve Amount* means the aggregate amount of Cash, as determined by the Debtors with (i) the consent of the Required DIP Lenders and Requisite FLTL Lenders and (ii) the reasonable consent of the Creditors' Committee solely with respect to the amount of the Claims Reserve on account of Allowed Unsecured Trade Claims, necessary to satisfy all (a) Allowed Administrative Expense Claims, (b) Allowed Priority Tax Claims, (c) Allowed Priority Non-Tax Claims, (d) Allowed Other Secured Claims, (e) Allowed Unsecured Trade Claims, and (f) Cure Amounts, which aggregate amount shall be funded into the Claims Reserve on the Effective Date.

*Class* means any group of Claims or Interests classified under the Plan pursuant to section 1122 and 1123(a)(1) of the Bankruptcy Code.

*Collateral* means any Asset of an Estate that is subject to a Lien securing the payment or performance of a Claim, which Lien is not invalid, is properly perfected as of the Petition Date, and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law.

*Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

*Confirmation Hearing* means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

*Confirmation Order* means the order of the Bankruptcy Court, in form and substance acceptable to the Debtors, the Required DIP Lenders, the Requisite FLTL Lenders, the Prepetition FLFO Administrative Agent, and the Creditors' Committee, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

*Confirmation Outside Date* means May 10, 2021 or such later date as may be mutually agreed between the Debtors, the Required DIP Lenders, and the Requisite FLTL Lenders.

*Consenting Creditors* means the Prepetition FLTL Lenders, together with their respective successors and permitted assigns, and the Prepetition SLTL Lenders, together with their respective successors and permitted assigns, that are party to, or have executed a joinder to, the Restructuring Support Agreement.

*Credit Bid Acquired Interests* has the meaning ascribed to "Acquired Interests" set forth in the Credit Bid Purchase Agreement.

*Credit Bid Assumed Liabilities* has the meaning ascribed to "Assumed Liabilities" set forth in the Credit Bid Purchase Agreement.

**Credit Bid Consent Rights** means any right of consent, notice, and other similar rights, if any, that are applicable to the sale of the Credit Bid Acquired Interests in connection with the Credit Bid Purchase Agreement.

**Credit Bid Permitted Encumbrances** has the meaning ascribed to "Permitted Encumbrances" set forth in the Credit Bid Purchase Agreement.

**Credit Bid Purchase Agreement** means that certain Purchase and Sale Agreement, by and between Fieldwood Energy LLC, the other seller parties, and the Credit Bid Purchaser and NewCo, together with any and all related agreements, annexes, exhibits and schedules in connection therewith, as amended, supplemented or otherwise modified from time to time, which shall be in form and substance acceptable to the Debtors, the Requisite FLTL Lenders, and the Required DIP Lenders; *provided* that any modifications to the Credit Bid Purchase Agreement from the version attached to the draft of the Disclosure Statement at Docket No. 1022 shall require the consent of the Prepetition FLFO Administrative Agent (not to be unreasonably withheld with respect to the following clauses (b) and (e)) to the extent that such modification (a) individually or in the aggregate, results in a reduction of 10% or more of the total PV-10 of total 2P reserves comprising the assets acquired by the Credit Bid Purchaser (which shall be calculated by reference to the FWE YE2020 Internal Reserve Report (as of 5.1.21)), (b) results in any contract rights constituting material assets not being acquired by the Credit Bid Purchaser, (c) individually or in the aggregate, results in an increase by $40.0 million or more (which, for the avoidance of doubt, in the case of plugging and abandonment liabilities, shall be calculated on a present value basis) in liabilities assumed by the Credit Bid Purchaser, (d) relates to any change in treatment of the Prepetition FLFO Credit Agreement or First Lien Exit Facility, or (e) provide for any differences from the draft of the Disclosure Statement at Docket No. 1022 that are materially adverse to the interests of the First Lien Exit Facility Agent and the First Lien Exit Facility Lenders.

**Credit Bid Purchaser** means [●], a newly formed special purpose bidding entity, as purchaser of certain of the Debtors' assets pursuant to and in accordance with the Credit Bid Purchase Agreement.

**Credit Bid Preferential Purchase Rights** has the meaning ascribed to "Preferential Right" set forth in the Credit Bid Purchase Agreement.

**Credit Bid Transaction** means the sale of the Credit Bid Acquired Interests to the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement.

**Credit Bid Transaction Closing** means "Closing" as defined in the Credit Bid Purchase Agreement.

**Creditors' Committee** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code as it may be reconstituted from time to time.

**Cure Amount** means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease

and (b) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**Cure Notice** means the notice of proposed Cure Amount to be paid in connection with an executory contract or unexpired lease of the Debtors that may be assumed or assumed and assigned under the Plan pursuant to section 365 of the Bankruptcy Code, which shall include (a) procedures for objecting to proposed assumptions or assumptions and assignments of executory contracts and unexpired leases, (b) any Cure Amount to be paid in connection therewith, and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

**D&O Policy** means any insurance policy, including tail insurance policies, for directors', members', trustees', and officers' liability providing coverage to the Debtors and in effect or purchased as of the Petition Date.

**Debtor(s)** has the meaning set forth in the introductory paragraph of the Plan.

**Debtor in Possession** means, with respect to a Debtor, that Debtor in its capacity as a debtor in possession pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

**Decommissioning Agreement** means that Decommissioning Agreement, dated as of September 30, 2013, by and among the Apache PSA Parties, Fieldwood Energy LLC, and the other parties thereto.

**Decommissioning Security** has the meaning set forth in the Apache Implementation Agreement.

**Definitive Documents** has the meaning set forth in the Restructuring Support Agreement.

**DIP Agent** means Cantor Fitzgerald Securities, solely in its capacity as administrative agent and collateral agent under the DIP Facility Credit Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the DIP Facility Credit Agreement.

**DIP Claim** means any Claim held by the DIP Lenders or the DIP Agent arising under or relating to the DIP Facility Credit Agreement or the DIP Order, including any and all fees, interests, and accrued but unpaid interest and fees arising under the DIP Facility Credit Agreement.

**DIP Documents** has the meaning set forth in the DIP Order.

**DIP Facility** means the postpetition senior secured debtor-in-possession term loan credit facility approved by the DIP Order.

**DIP Facility Credit Agreement** means the credit agreement governing the terms of the DIP Facility, dated as of August 24, 2020, by and among Fieldwood Energy LLC, as borrower, FWE Parent, as holdings, the DIP Agent, and the DIP Lenders, with any amendments,

restatements, amendments and restatements, modifications or supplements thereto as permitted by the DIP Order.

**DIP Lenders** means the lenders from time to time party to the DIP Facility Credit Agreement.

**DIP Order** means the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Docket No. 346], authorizing the Debtors to enter into the DIP Facility Credit Agreement and access the DIP Facility, as may be amended, supplemented or modified from time to time.

**Disclosure Statement** means the disclosure statement in support of the Plan, in form and substance (i) acceptable to the Debtors, the Required DIP Lenders, the Requisite FLTL Lenders, (ii) reasonably acceptable to the Creditors' Committee solely for matters relating to the treatment of holders of General Unsecured Claims or Unsecured Trade Claims, and (iii) reasonably acceptable to the Prepetition FLFO Administrative Agent, which is prepared and distributed in accordance with sections 1125, 1126(b), or 1145 of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018, or other applicable law, and all exhibits, schedules, supplements, modifications, amendments, annexes, and attachments to such disclosure statement.

**Disputed** means, with respect to a Claim, (a) any Claim, which Claim is disputed under this Plan (including pursuant to section 7.1 of this Plan) or otherwise or as to which the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed; (c) any Claim that is listed in the Schedules, if any are filed, as unliquidated, contingent, disputed or undetermined, and as to which no request for payment or proof of claim has been filed; or (d) any Claim that is otherwise disputed by any of the Debtors or the Post-Effective Date Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order. To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim.

**Distribution Date** means the date or dates, including the Initial Distribution Date, as determined by the Plan Administrator in accordance with the terms of this Plan, on which the Plan Administrator makes a Distribution to holders of Allowed Claims.

**Distribution Record Date** means, except as otherwise provided in the Plan, the date that is two business days before the Effective Date or such other date as is designated by the Debtors with the consent of the Requisite FLTL Lenders and the Required DIP Lenders.

**Divisive Merger** means a divisive merger pursuant to Sections 10.001, 10.002, 10.008 and 10.302 of the Texas Business Organizations Code.

**Effective Date** means the date which is the first Business Day on which (a) all conditions to the effectiveness of the Plan set forth in Section 9.1 of the Plan have been satisfied or waived in accordance with the terms of the Plan, and (b) no stay of the Confirmation Order is in effect.

**Entity** means an "entity," as defined in section 101(15) of the Bankruptcy Code.

**Equity Rights Offerings** means, collectively, the FLTL Equity Rights Offering and the SLTL Equity Rights Offering.

**ERO Backstop Agreements** means, collectively, the FLTL ERO Backstop Agreement and the SLTL ERO Backstop Agreement.

**ERO Backstop Parties** means, collectively, the FLTL ERO Backstop Parties and the SLTL ERO Backstop Parties.

**Estate(s)** means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

**Exculpated Parties** means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (l) the Exit Facility Agents, (m) the Exit Facility Lenders, (n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (q) with respect to each of the foregoing Persons in clauses (a) through (p) each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

**Existing Equity Interests** means shares of common stock of FWE Parent that existed immediately before the Effective Date.

**Exit Facilities** means the First Lien Exit Facility and the Second Lien Exit Facility.

9

**Exit Facility Agents** means the First Lien Exit Facility Agent and the Second Lien Exit Facility Agent.

**Exit Facility Documents** means the First Lien Exit Facility Documents and the Second Lien Exit Facility Documents.

**Exit Facility Lenders** means the First Lien Exit Facility Lenders and the Second Lien Exit Facility Lenders.

**Fee Claim** means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by Professional Persons retained by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

**Fieldwood U.A. Interests** has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

**Final Order** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has: (a) not been reversed, stayed, modified or amended, as to which the time to appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration or rehearing has been timely filed; or (b) as to which any appeal, petition for certiorari or motion for reargument, reconsideration or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration or rehearing was sought; *provided*, *however*, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in such other court of competent jurisdiction) may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

**First Lien Exit Facility** means the facility under the First Lien Exit Facility Credit Agreement.

**First Lien Exit Facility Agent** means the administrative agent under the First Lien Exit Facility Credit Agreement.

**First Lien Exit Facility Commitment Letter** means that certain commitment letter, in form and substance acceptable to the Required DIP Lenders, the Requisite FLTL Lenders, the Debtors, the Prepetition FLFO Administrative Agent, and the First Lien Exit Facility Agent, to be entered into by and among Fieldwood Energy LLC and the First Lien Exit Facility Agent, as may be amended, supplemented, or modified from time to time, pursuant and subject to the terms thereof, pursuant to which, among other things, GS Bank (as defined therein) agreed to act as the sole arranger, administrative agent and collateral agent in connection with the First Lien Exit Facility and to commit to provide First Lien Exit Facility in accordance with the terms and conditions set forth therein.

**First Lien Exit Facility Credit Agreement** means that certain credit agreement to be entered by the Credit Bid Purchaser, the First Lien Exit Facility Agent and the First Lien Exit Facility Lenders on the Effective Date that shall govern the First Lien Exit Facility which shall reflect and contain terms, conditions, representations, warranties, and covenants consistent with the First Lien Exit Facility Term Sheet and otherwise be in form and substance acceptable to the Prepetition FLFO Administrative Agent, the First Lien Exit Facility Agent, the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders.

**First Lien Exit Facility Documents** means, collectively, the First Lien Exit Facility Credit Agreement, and any and all other agreements, documents, and instruments delivered or to be entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, the terms of which documents shall be in form and substance acceptable to the Prepetition FLFO Administrative Agent, the First Lien Exit Facility Agent, the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders.

**First Lien Exit Facility Lenders** means the lenders party to the First Lien Exit Facility Credit Agreement.

**First Lien Exit Facility Term Sheet** means a term sheet attached to the First Lien Exit Facility Commitment Letter and to be attached to the Disclosure Statement, as may be amended, supplemented or modified from time to time with the consent of the Prepetition FLFO Administrative Agent, the First Lien Exit Facility Agent, the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders.

**FLFO Claims** means all Claims arising from or based upon the Prepetition FLFO Credit Agreement.

**FLFO Claims Allowed Amount** means the aggregate principal amount of $138,599,082.31 plus any accrued and unpaid interest (accruing at the default rate to the extent provided under the Prepetition FLFO Credit Agreement), fees, costs, and other expenses arising under, and payable pursuant to, the Prepetition FLFO Credit Agreement on or before the Effective Date, which shall not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination, counterclaims, cross claims, defenses, disallowance, impairments, or any other challenges under applicable law or regulation by any Entity. Notwithstanding the foregoing, on the Effective Date any amount accrued pursuant to Section 2.08(b) of the Prepetition FLFO Credit Agreement and any amounts accrued in respect of Yield Maintenance Premium or any Prepayment Fee (each as defined in the Prepetition FLFO Credit Agreement), if any, shall be deemed discharged, released, and waived by all holders of Allowed FLFO Claims and the FLFO Claims Allowed Amount shall not be increased on account of such amounts as a result of such discharge, release, and waiver.

**FLFO Distribution Amount** means Cash in the amount of the FLFO Claims Allowed Amount *less* the initial aggregate principal amount of the First Lien Exit Facility, as set forth in the First Lien Exit Facility Commitment Letter.

**FLTL Claims** means all Claims, other than Claims subject to subordination in accordance with section 510(b) of the Bankruptcy Code, arising from or based upon the Prepetition FLTL Credit Agreement.

**FLTL Claims Allowed Amount** means $1,142,688,815.28 in principal plus any accrued but unpaid interest or fees due under the Prepetition FLTL Credit Agreement as of the Petition Date.

**FLTL Deficiency Claim** means any FLTL Claim or portion thereof that is not Secured, if any.

**FLTL Equity Rights Offering** means that certain rights offering pursuant to which each holder of Allowed FLTL Claims is entitled to receive FLTL Subscription Rights to acquire New Equity Interests in the aggregate amount of the FLTL Equity Rights Offering Amount in accordance with the FLTL Equity Rights Offering Procedures, the terms and conditions of which shall be (i) acceptable to the Debtors, Required DIP Lenders, and Requisite FLTL Lenders, (ii) reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent, and (iii) reasonably acceptable to the Requisite SLTL Lenders solely to the extent that it directly and adversely impacts the holders of Allowed SLTL Claims.

**FLTL Equity Rights Offering Amount** means $20,000,000.

**FLTL Equity Rights Offering Procedures** means the procedures for the implementation of the FLTL Equity Rights Offering to be approved by the Bankruptcy Court.

**FLTL ERO Backstop Agreement** means that certain [Equity Backstop Commitment Agreement], in form and substance (i) acceptable to the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders and (ii) reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent, to be entered into by and among Fieldwood Energy LLC, NewCo, and the FLTL ERO Backstop Parties, as may be amended, supplemented, or modified from time to time, pursuant to which the FLTL ERO Backstop Parties agreed to, among other things, backstop the FLTL Equity Rights Offering with the terms and conditions set forth therein.

[**FLTL ERO Backstop Commitment Percentage** has the meaning set forth in the FLTL ERO Backstop Agreement.]

[**FLTL ERO Backstop Commitment Premium** means a premium equal to 8% of the FLTL Equity Rights Offering Amount payable to the FLTL ERO Backstop Parties with the FLTL ERO Backstop Commitment Premium Equity Interests in accordance with the terms set forth in the FLTL ERO Backstop Agreement.]

[**FLTL ERO Backstop Commitment Premium Equity Interests** means an amount of New Equity Interests equal to the value of the FLTL ERO Backstop Commitment Premium as further set forth in the FLTL ERO Backstop Agreement; *provided that* such New Equity Interests shall be issued at a 30% discount to the equity value of NewCo on the Effective Date.

**FLTL ERO Backstop Parties** means those parties that agree to backstop the FLTL Equity Rights Offering pursuant to the FLTL ERO Backstop Agreement, each in its respective capacity as such.

**FLTL Subscription Rights** means the subscription right to acquire New Equity Interests with an aggregate value equal to the FLTL Rights Offering Amount offered in accordance with the FLTL Equity Rights Offering Procedures; *provided, however*, that such New Equity Interests shall be issued at a 30% discount to the equity value of NewCo on the Effective Date.

[**FLTL Unsubscribed Shares** has the meaning set forth in the FLTL ERO Backstop Agreement].

**FWE I** means an entity formed on the Effective Date by Divisive Merger under the name Fieldwood Energy I LLC pursuant to the Plan of Merger.

**FWE I LLC Agreement** means the limited liability company agreement of FWE I, which shall be in substantially the form attached to the Apache Implementation Agreement.

**FWE I Assets** has the meaning set forth in the Plan of Merger.

**FWE I Obligations** has the meaning set forth in the Plan of Merger.

**FWE I Sole Manager** has the meaning ascribed to the term "Sole Manager" in the FWE I LLC Agreement, and shall include the sole manager appointed to FWE I upon the Effective Date and any successor thereto.

**FWE III** means the surviving entity under the name Fieldwood Energy III LLC following the Divisive Merger pursuant to the Plan of Merger.

**FWE III LLC Agreement** means the limited liability company agreement of FWE III, a form of which shall be included in the Plan Supplement.

**FWE III Assets** has the meaning set forth in the Plan of Merger.

**FWE III Obligations** has the meaning set forth in the Plan of Merger.

**FWE Assets** means, collectively, the FWE I Assets and FWE III Assets.

**FWE Parent** means Debtor Fieldwood Energy Inc.

**General Unsecured Claim** means any Claim against a Debtor, other than a DIP Claim, Postpetition Hedge Claim, Administrative Expense Claim (including a Fee Claim), FLFO Claim, FLTL Claim, SLTL Claim, Other Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, Unsecured Trade Claim, Subordinated Securities Claim, or Intercompany Claim that is not entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.

For the avoidance of doubt, General Unsecured Claims shall not include FLTL Deficiency Claims or SLTL Deficiency Claims.

*GUC Warrant Agreement* means a warrant agreement to be entered into by and among NewCo and the warrant agent named therein that shall govern the terms of the GUC Warrants, the form of which shall be acceptable to the Debtors, Required DIP Lenders, Requisite FLTL Lenders, the Requisite SLTL Lenders and the Creditors' Committee and which shall contain provisions as favorable as the provisions in the SLTL Tranche 1 Warrant Agreement or SLTL Tranche 2 Warrant Agreement.

*GUC Warrants* means 8-year warrants for 3.5% of the New Equity Interests (calculated on a fully diluted basis giving effect to the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of this Plan, the New Equity Interests issuable upon the exercise of the Subscription Rights, the Backstop Commitment Premium Equity Interests, and the New Equity Interests issuable upon the exercise of the New Money Warrants and SLTL Tranche 1 Warrants, but excluding the effect of any New Equity Interests issuable in connection with the Management Incentive Plan), with a strike price set at an equity value equal to $1,321,000,000, the terms of which shall be set forth in the GUC Warrant Agreement; *provided*, that if the SLTL Tranche 2 Warrants are exercised, the GUC Warrants shall be subject to adjustment or true-up as necessary to retain such percentage after giving effect to the exercise of the SLTL Tranche 2 Warrants.

*Governmental Unit* has the meaning set forth in section 101(27) of the Bankruptcy Code.

*Impaired* means, with respect to a Claim, Interest, or a Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

*Indemnification Obligation* means any existing or future obligation of any Debtor to indemnify current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date.

*Initial Distribution* means the first Distribution that the Plan Administrator makes to holders of Allowed Claims.

*Initial Distribution Date* means the date on which the Plan Administrator shall make the Initial Distribution, which shall not be less than five Business Days after the Effective Date.

*Intercompany Claim* means any Claim against a Debtor held by another Debtor.

*Intercompany Interest* means an Interest in a Debtor other than any Existing Equity Interest.

**Interest** means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in any Debtor (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in such Debtor), whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

**Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**Management Incentive Plan** means the post-Effective Date management incentive plan of NewCo which shall provide for [up to] 10% of New Equity Interests on a fully diluted basis or other equity or similar interests in NewCo to be reserved for directors, managers, officers, and employees of NewCo or a subsidiary of NewCo (including the Credit Bid Purchaser) to be distributed on terms to be determined by the board of directors of NewCo.

**New Equity Interests** means the equity interests of NewCo to be issued (i) on the Effective Date (including the Backstop Commitment Premium Equity Interests and upon the exercise of the Subscription Rights), (ii) upon exercise of the New Money Warrants, the SLTL Warrants, or the GUC Warrants, (iii) under the Management Incentive Plan, or (iv) on or after the Effective Date as otherwise permitted pursuant to the NewCo Organizational Documents.

**New Intercreditor Agreement** means that certain Intercreditor Agreement, to be dated as of the Effective Date, by and among the First Lien Exit Facility Agent and the Second Lien Exit Facility Agent and the Credit Bid Purchaser, the form of which shall be contained in the Plan Supplement, acceptable to the Prepetition FLFO Administrative Agent, the First Lien Exit Facility Agent, the Requisite FLFO Lenders, the Debtors, the Required DIP Lenders, and the Requisite FLTL Lenders**.**

**NewCo** means [•], which is the direct or indirect owner of 100% of the equity interests of the Credit Bid Purchaser.

**NewCo Entities** means, collectively, NewCo and each of its direct and indirect subsidiaries.

**NewCo Organizational Documents** means the form of certificate of formation, limited liability company agreement, agreement of limited partnership, articles of incorporation, bylaws, trust agreements, or such other applicable formation documents of the NewCo and any of its subsidiaries, including any shareholders' or stockholders' agreement, which shall be (i) acceptable to the Debtors, the Requisite FLTL Lenders, and the Required DIP Lenders and (ii) (a) if NewCo or any of its subsidiaries are to be formed in a jurisdiction outside of the United States, reasonably acceptable to the Prepetition FLFO Administrative Agent or (b) if NewCo or any of its subsidiaries are to be formed in a jurisdiction within the United States, reasonably acceptable to the Prepetition FLFO Administrative Agent solely to the extent that it directly and adversely impacts the holders of Allowed FLFO Claims or First Lien Exit Facility Lenders.

**New Money Consideration** means, in the aggregate, the amount of Cash provided to the Debtors by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement.

**New Money Investment** means the investment of up to $85 million in Cash into Credit Bid Purchaser by the New Money Second Lien Exit Facility Lenders in connection with, and upon consummation of, the Second Lien Exit Facility, subject to the terms of the Second Lien Backstop Commitment Letter.

**New Money Second Lien Exit Facility Lenders** means the lenders party to the Second Lien Exit Facility Credit Agreement participating in the New Money Investment.

**New Money Warrant Agreement** means a warrant agreement to be entered into by and among NewCo and the warrant agent named therein that shall govern the terms of the New Money Warrants, the form of which shall be acceptable to the Debtors, Required DIP Lenders and Requisite FLTL Lenders.

**New Money Warrants** means 7-year warrants for up to 24% of the New Equity Interests (calculated on a fully diluted basis giving effect to the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of this Plan, the Backstop Commitment Premium Equity Interests, and the New Equity Interests issuable upon the exercise of the Subscription Rights, but excluding the effect of any New Equity Interests issuable upon exercise of the SLTL Warrants and GUC Warrants and any New Equity Interest issuable pursuant to the Management Incentive Plan), with a strike price of $0.01, the terms of which shall be set forth in the New Money Warrant Agreement and which shall be issued and allocated in a manner consistent with the Second Lien Backstop Commitment Letter.

**Other Secured Claim** means any Secured Claim against a Debtor other than a Priority Tax Claim, FLFO Claim, FLTL Claim, and SLTL Claim.

**Person** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other Entity.

**Petition Date** means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

**Plan** means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as may be amended, supplemented or modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

**Plan Administrator** means a person or entity selected by the Creditors' Committee, subject to the consent of the Debtors, Required DIP Lenders, and Requisite FLTL Lenders, with such consent not to be unreasonably withheld, that is charged with overseeing the tasks outlined in Section 5.9 of this Plan, or any successor thereto. The identity of the Plan Administrator shall be disclosed to the Bankruptcy Court before the Confirmation Hearing.

**Plan Administrator Agreement** means an agreement setting forth the economic arrangement and terms pursuant to which the Plan Administrator will perform its duties under this Plan.

**Plan Administrator Expense Reserve** means a segregated account not subject to the Liens of the Prepetition Agents or DIP Agent established by the Plan Administrator in accordance with Section 5.15 of this Plan.

**Plan Administrator Expense Reserve Amount** means Cash in an amount equal to $8,000,000 to be funded into the Plan Administrator Expense Reserve on the Effective Date.

**Plan Distribution** means any initial or periodic payment or transfer of consideration to holders of Allowed Claims made under the Plan.

**Plan of Merger** means that certain Agreement and Plan of Merger, which shall be in substantially the form attached to the Apache Implementation Agreement.

**Plan of Merger Consent Rights** means any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of assets in connection with the Plan of Merger.

**Plan of Merger Preferential Purchase Rights** means any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, and similar right the operation of which is triggered by the vesting of the FWE Assets in connection with the Plan of Merger.

**Plan Settlement** means the settlement of certain Claims and controversies pursuant to Section 5.1 of the Plan.

**Plan Supplement** means a supplement or supplements to the Plan containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, which shall include: (a) the Amended Organizational Documents (if any), (b) information regarding the sole manager and independent director to be appointed at FWE I to the extent known and determined and other information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, (c) a schedule of retained Causes of Action, (d) the Schedule of Assumed Contracts, (e) the Plan Administrator Agreement; (f) the Credit Bid Purchase Agreement; (g) the NewCo Organizational Documents; (h) the Apache Definitive Documents; (i) the First Lien Exit Facility Agreement; (j) the Second Lien Exit Facility Agreement; (k) the New Intercreditor Agreement; (l) the New Money Warrant Agreements; (m) the GUC Warrant Agreement; and (n) any Additional Predecessor Agreement; *provided*, *however*, that the Debtors shall have the right to amend documents contained in, and exhibits thereto, the Plan Supplement in accordance with the terms of this Plan and the Restructuring Support Agreement (including the consent rights set forth therein).

**Postpetition Hedging Agreements** has the meaning set forth in that certain *Emergency Order (I) Authorizing Debtors to (A) Enter Into and Perform Under New Postpetition Hedging Agreements and (B) Grant Related Liens and Superiority Claims, (II) Modifying Automatic Stay, and (III) Granting Related Relief* entered on August 24, 2020 (ECF No. 242).

**Postpetition Hedge Claim** means a Claim arising pursuant to any Postpetition Hedging Agreement.

**Post-Effective Date Debtors** means the Debtors, as reorganized as of the Effective Date in accordance with this Plan, including FWE III. For the avoidance of doubt, the Post-Effective Date Debtors does not include NewCo or its subsidiaries (including the Credit Bid Purchaser), or FWE I.

**Post-Effective Date FWE Parent** means FWE Parent, as reorganized on the Effective Date in accordance with this Plan.

**Prepetition Agents** means, collectively, the Prepetition FLFO Administrative Agent, the Prepetition FLFO Collateral Agent, the Prepetition FLTL Administrative Agent, and the Prepetition SLTL Agent.

**Prepetition FLFO Administrative Agent** means Goldman Sachs Bank USA, solely in its capacity as administrative agent under the Prepetition FLFO Credit Agreement.

**Prepetition FLFO Advisors** means Vinson & Elkins, LLP, Shipman & Goodwin LLP (in its capacity as counsel to the Prepetition FLFO Collateral Agent), Opportune LLP, and any local or foreign advisors.

**Prepetition FLFO Collateral Agent** means Cantor Fitzgerald Securities, solely in its capacity as collateral agent under the Prepetition FLFO Credit Agreement.

**Prepetition FLFO Credit Agreement** means that certain *Second Amended and Restated Credit Agreement- First Out*, dated as of June 28, 2019, by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the Prepetition FLFO Administrative Agent, the Prepetition FLFO Collateral Agent, and the Prepetition FLFO Lenders, and the other parties thereto, as in effect immediately before the Effective Date.

**Prepetition FLFO Lenders** means the Lenders (as defined in the Prepetition FLFO Credit Agreement) holding Prepetition FLFO Loans immediately before the Effective Date.

**Prepetition FLFO Loans** means the Loans (under and as defined in the Prepetition FLFO Credit Agreement) outstanding immediately before the Effective Date.

**Prepetition FLFO Secured Parties** means, collectively, the Prepetition FLFO Administrative Agent, the Prepetition FLFO Lenders, and the other Secured Parties (as defined in the Prepetition FLFO Credit Agreement) under the Prepetition FLFO Credit Agreement.

**Prepetition FLTL Administrative Agent** means Cantor Fitzgerald Securities, solely in its capacity as administrative agent and collateral agent under the Prepetition FLTL Credit Agreement.

**Prepetition FLTL Credit Agreement** means that certain *Amended and Restated First Lien Term Loan Agreement*, dated as of April 11, 2018, by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the Prepetition FLTL Administrative Agent, and the Prepetition FLTL Lenders, and the other parties thereto, as in effect immediately before the Effective Date.

**Prepetition FLTL Lenders** means the Lenders (as defined in the Prepetition FLTL Credit Agreement) holding Prepetition FLTL Loans immediately before the Effective Date.

**Prepetition FLTL Loans** means the Loans (under and as defined in the Prepetition FLTL Credit Agreement) outstanding immediately before the Effective Date.

**Prepetition SLTL Administrative Agent** means Cortland Capital Market Services LLC, solely in its capacity as administrative agent and collateral agent under the Prepetition SLTL Credit Agreement.

**Prepetition SLTL Credit Agreement** means that certain *Amended and Restated Second Lien Term Loan Agreement*, dated as of April 11, 2018, by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the Prepetition SLTL Administrative Agent, and the Prepetition SLTL Lenders, and the other parties thereto, as in effect immediately before the Effective Date.

**Prepetition SLTL Lenders** means the Lenders (as defined in the Prepetition SLTL Credit Agreement) holding Prepetition SLTL Loans immediately before the Effective Date.

**Prepetition SLTL Loans** means the Loans (under and as defined in the Prepetition SLTL Credit Agreement) outstanding immediately before the Effective Date.

**Principal FLFO Amount** has the meaning set forth in Section 4.3.

**Priority Non-Tax Claim** means any Claim other than an Administrative Expense Claim, or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

**Priority Tax Claim** means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**Pro Rata Share** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Interests in that Class.

**Professional Person(s)** means any Person retained by order of the Bankruptcy Court in connection with these Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

**Professional Fee Escrow** means an escrow account established and funded pursuant to section 2.2 of the Plan.

**Professional Fee Escrow Amount** means the aggregate unpaid Fee Claims through the Effective Date as estimated in accordance with section 2.2 of the Plan.

**Released Parties** means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (k) the Exit Facility Agents, (l) the Exit Facility Lenders, (m) the Second Lien Backstop Parties, (n) the ERO Backstop Parties, (o) the Apache PSA Parties, and (p) with respect to each of the foregoing Persons in clauses (a) through (o), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

**Releasing Parties** means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**Required DIP Lenders** has the meaning set forth in the Restructuring Support Agreement.

**Requisite FLFO Lenders** means, as of the date of determination, Prepetition FLFO Lenders holding at least a majority of the outstanding Prepetition FLFO Loans (inclusive of validly executed but unsettled trades) held by the Prepetition FLFO Lenders as of such date.

**Requisite FLTL Lenders** has the meaning set forth in the Restructuring Support Agreement.

**Requisite SLTL Lenders** has the meaning set forth in the Restructuring Support Agreement.

**Residual Distributable Value** means any distributable value of the Single Share of Post-Effective Date FWE Parent held by the Plan Administrator (a) after satisfaction of Allowed Administrative Expense Claims, Allowed Other Secured Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, all Cure Amounts and (b) after satisfaction of all

fees, expenses, costs and other amounts pursuant to the Plan and incurred by the Post-Effective Date Debtors in connection with post-Effective Date operations and wind-down.

**Restructuring** means the restructuring of the Debtors, the principal terms of which are set forth in this Plan and the Plan Supplement.

**Restructuring Expenses** means the reasonable and documented fees and expenses incurred by (i) the Ad Hoc Group of Secured Lenders, (ii) the Prepetition FLFO Secured Parties, and (iii) the Ad Hoc Group of Prepetition SLTL Lenders in connection with the Chapter 11 Cases, including the fees and expenses of the Ad Hoc Group of Secured Lenders Advisors, the Prepetition FLFO Advisors, and Ad Hoc Group of Prepetition SLTL Lenders Advisors, in each case payable in accordance with the terms of any applicable agreements, engagement letters or fee letters executed with such parties or pursuant to the terms of the DIP Order and without the requirement for the filing of retention applications, fee applications, or any other application in the Chapter 11 Cases, which shall not be subject to any offset, defense, counterclaim, reduction, or creditor credit and, to the extent incurred prior to the Effective Date, shall be Allowed as Administrative Expense Claims upon incurrence; *provided*, *however*, Restructuring Expenses of the Ad Hoc Group of Prepetition SLTL Lenders shall be limited to and consist solely of the reasonable fees and expenses incurred by the Ad Hoc Group of Prepetition SLTL Lenders Advisors in their capacity as counsel to the Ad Hoc Group of Prepetition SLTL Lenders, and solely to the extent such fees and expenses have been incurred in support of the Restructuring Transactions and so long as the Ad Hoc Group of Prepetition SLTL Lenders are parties to the Restructuring Support Agreement.

**Restructuring Support Agreement** means that certain *Restructuring Support Agreement*, dated as of August 4, 2020, by and among Debtor Fieldwood Energy LLC, certain of its affiliates specified therein, the Consenting Creditors, and Apache, as the same may be amended, restated, or otherwise modified in accordance with its terms.

**Restructuring Transactions** means one or more transactions pursuant to section 1123(a)(5) of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Credit Bid Transaction, including (a) the consummation of the transactions provided for under or contemplated by the Plan and any mergers, divisive mergers, amalgamations, consolidations, arrangements, continuances, transfers, conversions, sales, dispositions, or other corporate transactions necessary or appropriate to implement the Plan, (b) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan or the Credit Bid Transaction and that satisfy the requirements of applicable law, (c) the Equity Rights Offerings, (d) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan, and (d) all other actions that the Debtors, the Post-Effective Date Debtors or NewCo (or any of its subsidiaries, including the Credit Bid Purchaser), as applicable, determine are necessary or appropriate and consistent with the Plan or the Credit Bid Transaction. For the avoidance of doubt, Restructuring Transactions includes the Credit Bid Transaction and the Divisive Merger effectuated pursuant to the Plan of Merger.

**Schedule of Abandoned Properties** means a schedule (as may be amended, modified, or supplemented from time to time) of the Debtors' rights to and interests in executory contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements to be abandoned pursuant to Section 5.14 of this Plan, a copy of which shall be filed with the Disclosure Statement and included in the Plan Supplement.

**Schedule of Assumed Contracts** means the schedule of executory contracts and unexpired leases to be assumed by the Debtors pursuant to this Plan, if any, as the same may be amended, modified, or supplemented from time to time.

**Schedule of FWE I Oil & Gas Lease Interests** means a schedule (as may be amended, modified, or supplemented from time to time) of the Debtors' interests in the oil and gas leases that shall constitute FWE I Assets, a copy of which shall be filed with the Disclosure Statement and included in the Plan Supplement.

**Schedule of FWE III Oil & Gas Lease Interests** means a schedule (as may be amended, modified, or supplemented from time to time) of the Debtors' interests in the oil and gas leases that shall constitute FWE III Assets, a copy of which shall be filed with the Disclosure Statement and included in the Plan Supplement.

**Schedule of Purchased Oil & Gas Lease Interests** means a schedule (as may be amended, modified, or supplemented from time to time) of the Debtors' interests in the oil and gas leases that will be acquired by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement, a copy of which shall be filed with the Disclosure Statement and included in the Plan Supplement.

**Schedules** means any schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

**Second Lien Backstop Commitment Letter** means that certain backstop commitment letter, in form and substance (i) acceptable to the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders and (ii) reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent, to be entered into by and among Fieldwood Energy LLC, the Credit Bid Purchaser and the Backstop Parties, as may be amended, supplemented, or modified from time to time, pursuant to the terms thereof and consistent with the Restructuring Support Agreement, pursuant to which the Backstop Parties agreed to, among other things, backstop the Second Lien Exit Facility in accordance with the terms and conditions set forth therein.

**Second Lien Backstop Commitment Premium** means a premium equal to 8% of the maximum principal amount of the Second Lien Exit Facility (*i.e.* $185,000,000) payable to the Backstop Parties with the Second Lien Backstop Commitment Premium Equity Interests in accordance with the terms set forth in the Second Lien Backstop Commitment Letter.

**Second Lien Backstop Commitment Premium Equity Interests** means an amount of New Equity Interests equal to the value of the Second Lien Backstop Commitment Premium as further set forth in the Second Lien Backstop Commitment Letter; *provided that* such New

Equity Interests shall be issued at a 30% discount to the equity value of NewCo on the Effective Date.

**Second Lien Backstop Party** has the meaning set forth in the Second Lien Backstop Commitment Letter.

**Second Lien Exit Facility** means the facility under the Second Lien Exit Facility Credit Agreement.

**Second Lien Exit Facility Agent** means the administrative agent under the Second Lien Exit Facility Credit Agreement.

**Second Lien Exit Facility Credit Agreement** means that certain credit agreement to be entered by the Credit Bid Purchaser, the Second Lien Exit Facility Agent and the Second Lien Exit Facility Lenders on the Effective Date that shall govern the Second Lien Exit Facility, which shall reflect and contain terms, conditions, representations, warranties, and covenants consistent with the Second Lien Exit Facility Term Sheet and otherwise be in form and substance (i) acceptable to the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders and (ii) reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent.

**Second Lien Exit Facility Documents** means, collectively, the Second Lien Exit Facility Credit Agreement, and any and all other agreements, documents, and instruments delivered or to be entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, the terms of which documents shall be (i) acceptable to the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders and (ii) reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent.

**Second Lien Exit Facility Lenders** means the lenders party to the Second Lien Exit Facility Credit Agreement.

**Second Lien Exit Facility Term Sheet** means the term sheet filed with the Disclosure Statement, as may be amended from time to time with (i) the consent of the Required DIP Lenders and Requisite FLTL Lenders and (ii) the reasonable consent of the Prepetition FLFO Administrative Agent and First Lien Exit Facility Agent.

**Secured** means, when referring to a Claim: (a) secured by a Lien on property of a Debtor's Estate, the amount of which is equal to or less than the value of such property as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

**Security** means any "security" as such term is defined in section 101(49) of the Bankruptcy Code.

**SLTL Claims** means all Claims, other than Claims subject to subordination in accordance with section 510(b) of the Bankruptcy Code, arising from or based upon the Prepetition SLTL Credit Agreement.

**SLTL Claims Allowed Amount** means $517,500,000.00 in principal, plus any accrued but unpaid interest or fees due under the Prepetition SLTL Credit Agreement as of the Petition Date.

**SLTL Deficiency Claim** means any SLTL Claim or portion thereof that is not Secured, if any.

**SLTL Equity Rights Offering** means that certain rights offering pursuant to which each holder of Allowed SLTL Claims is entitled to receive SLTL Subscription Rights to acquire New Equity Interests in the aggregate amount of the SLTL Equity Rights Offering Amount in accordance with the SLTL Equity Rights Offering Procedures, the terms and conditions of which shall be reasonably acceptable to the Debtors, Required DIP Lenders, Requisite FLTL Lenders, Requisite SLTL Lenders, the Prepetition FLFO Administrative Agent, and the First Lien Exit Facility Agent.

**SLTL Equity Rights Offering Amount** means $20,000,000.

**SLTL Equity Rights Offering Procedures** means the procedures for the implementation of the SLTL Equity Rights Offering to be approved by the Bankruptcy Court.

**SLTL ERO Backstop Agreement** means that certain [Equity Backstop Commitment Agreement], in form and substance reasonably acceptable to the Debtors, the Required DIP Lenders, the Requisite FLTL Lenders, the Requisite SLTL Lenders, the Prepetition FLFO Administrative Agent, and the First Lien Exit Facility Agent, to be entered into by and among Fieldwood Energy LLC, NewCo, and the SLTL ERO Backstop Parties, as may be amended, supplemented, or modified from time to time, pursuant to which the SLTL ERO Backstop Parties agreed to, among other things, backstop the SLTL Equity Rights Offering with the terms and conditions set forth therein[; *provided that*, the form of the [Equity Backstop Commitment Agreement] attached hereto as <u>Exhibit [•]</u> shall be deemed acceptable to the Debtors, the Required DIP Lenders, Requisite FLTL Lenders and Requisite SLTL Lenders [and reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent].]

[**SLTL ERO Backstop Commitment Percentage** has the meaning set forth in the SLTL ERO Backstop Agreement.]

[**SLTL ERO Backstop Commitment Premium** means a premium equal to 8% of the SLTL Equity Rights Offering Amount payable to the SLTL ERO Backstop Parties with the SLTL ERO Backstop Commitment Premium Equity Interests in accordance with the terms set forth in the SLTL ERO Backstop Agreement.]

[**SLTL ERO Backstop Commitment Premium Equity Interests** means an amount of New Equity Interests equal to the value of the SLTL ERO Backstop Commitment Premium as

further set forth in the SLTL ERO Backstop Agreement; *provided that* such New Equity Interests shall be issued at a 30% discount to the equity value of NewCo on the Effective Date.

**SLTL ERO Backstop Parties** means those parties that agree to backstop the SLTL Equity Rights Offering pursuant to the SLTL ERO Backstop Agreement, each in its respective capacity as such.

**SLTL Subscription Rights** means the subscription right to acquire New Equity Interests with an aggregate value equal to the SLTL Rights Offering Amount offered in accordance with the SLTL Equity Rights Offering Procedures; *provided, however*, that such New Equity Interests shall be issued at a 30% discount to the equity value of NewCo on the Effective Date.

**SLTL Tranche 1 Warrant Agreement** means a warrant agreement to be entered into by and among NewCo and the warrant agent named therein that shall govern the terms of the SLTL Tranche 1 Warrants, the form of which shall be acceptable to the Debtors, Required DIP Lenders, Requisite FLTL Lenders, the Creditors' Committee, and the Requisite SLTL Lenders.

**SLTL Tranche 1 Warrants** means 8-year warrants for 25% of the New Equity Interests (calculated on a fully diluted basis giving effect to the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of this Plan, the New Equity Interests issuable upon the exercise of the Subscription Rights, the Backstop Commitment Premium Equity Interests, and the New Equity Interests issuable upon the exercise of the New Money Warrants and GUC Warrants, but excluding the effect of any New Equity Interests issuable upon exercise of the SLTL Tranche 2 Warrants and any New Equity Interests issuable in connection with the Management Incentive Plan), with a strike price set at an equity value equal to $1,321,000,000, the terms of which shall be set forth in the SLTL Tranche 1 Warrant Agreement.

**SLTL Tranche 2 Warrant Agreement** means a warrant agreement to be entered into by and among NewCo and the warrant agent named therein that shall govern the terms of the SLTL Tranche 2 Warrants, the form of which shall be acceptable to the Debtors, Required DIP Lenders, Requisite FLTL Lenders, the Creditors' Committee, and the Requisite SLTL Lenders.

**SLTL Tranche 2 Warrants** means 8-year warrants for 32.50% of the New Equity Interests (calculated on a fully diluted basis giving effect to the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of this Plan, the New Equity Interests issuable upon the exercise of the Subscription Rights, the Backstop Commitment Premium Equity Interests, and the New Equity Interests issuable upon the exercise of the New Money Warrants, the SLTL Tranche 1 Warrants, and the GUC Warrants (excluding any adjustment or true-up of the GUC Warrants as described in the definition thereof), but excluding the effect of any New Equity Interests issuable in connection with the Management Incentive Plan), with a strike price set at an equity value equal to $1,585,200,000, the terms of which shall be set forth in the SLTL Tranche 2 Warrant Agreement.

[*SLTL Unsubscribed Shares* has the meaning set forth in the SLTL ERO Backstop Agreement].

*SLTL Warrants* means, collectively, the SLTL Tranche 1 Warrants and the SLTL Tranche 2 Warrants.

*Specified Administrative Expense Claims* means Administrative Expense Claims other than (a) Administrative Expense Claims that are to be assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement; (b) Cure Amounts; and (c) Fee Claims, Restructuring Expenses, any fees and expenses payable pursuant to sections 2.3 and 2.4 of this Plan, any fees and expenses payable or reimbursable by the Debtors or Post-Effective Date Debtors pursuant to the Second Lien Backstop Commitment Letter, Credit Bid Purchase Agreement, or First Lien Exit Facility Commitment Letter (including termination fees, if any), Apache Fees and Expenses and Apache Implementation Costs, and Statutory Fees.

*Standby Loan Agreement* has the meaning set forth in the Apache Implementation Agreement.

*Standby Credit Facility Documents* has the meaning set forth in the Apache Implementation Agreement.

*Statutory Fees* means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

*Subordinated Securities Claim* means a Claim that is subject to subordination in accordance with sections 510(b) of the Bankruptcy Code or otherwise.

*Subscription Rights* means, collectively, the FLTL Subscription Rights and SLTL Subscription Rights.

*Tax Code* means the Internal Revenue Code of 1986, as amended from time to time.

*Toggle Amount* means $35,000,000 or such higher amount as may be mutually agreed between the Debtors, the Required DIP Lenders, and the Requisite FLTL Lenders.

*Toggle Date* has the meaning set forth in Section 5.2(c).

*Toggle Motion* has the meaning set forth in Section 5.2(c)(i).

*Trade Agreement* means a trade agreement entered into or to be entered into between the Debtors, [a NewCo Entity], and a Trade Creditor that will be provided by the Debtors to each Trade Creditor and that provides for, among other things, waiver of any and all liens against the Debtors, their assets and any co-owned assets, or any other affiliated person or entity (including any co-working interest owner of the Debtors), or any such person's or entity's respective assets or property (real or personal), regardless of the statute or other legal authority upon which the lien is asserted, held or asserted by the Trade Creditor relating to the Unsecured Trade Claim, and an agreement by such Trade Creditor to continue to provide post-Effective

Date trade terms that are no less favorable than the terms provided to the Debtors prior to the Petition Date

**Trade Creditor** means a third-party provider of goods or services to the Debtors that holds an Unsecured Trade Claim against the Debtors arising from the provision of such goods and services.

**Unimpaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124(2) of the Bankruptcy Code.

**Unsecured Trade Claim** means any unsecured claim (or secured claim that becomes unsecured by agreement, settlement, or order of the Bankruptcy Court) of a Trade Creditor that is held by a Trade Creditor that has elected such claim to be treated as an Unsecured Trade Claim under this Plan and enters into or agrees to enter into a Trade Agreement; *provided*, *however*, that in no event shall any claim against the Debtors that arises in connection with a joint interest billing arrangement constitute an Unsecured Trade Claim.

**U.S. Trustee** means the United States Trustee for Region 7.

**Voting Deadline** means April 26, 2021 at 4:00 p.m. (Prevailing Central Time), or such date and time as may set by the Bankruptcy Court.

### 1.2 _Interpretation; Application of Definitions; Rules of Construction._

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in or exhibit to the Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in the Plan," "of the Plan," "to the Plan," and "under the Plan," respectively. The words "includes" and "including" are not limiting. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (d) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### 1.3 _Reference to Monetary Figures._

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

### 1.4 *Controlling Document.*

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document. In the event of an inconsistency between the Plan and the First Lien Exit Facility Commitment Letter, the First Lien Exit Facility Commitment Letter shall control. In the event of an inconsistency between the Plan and the Second Lien Backstop Commitment Letter, the Second Lien Backstop Commitment Letter shall control. The provisions of the Plan, the First Lien Exit Facility Commitment Letter, the Second Lien Backstop Commitment Letter, and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided*, that if there is determined to be any inconsistency between (a) any provision of the Plan, the First Lien Exit Facility Commitment Letter, and any provision of the Confirmation Order that cannot be so reconciled, or (b) any provision of the Plan, the Second Lien Backstop Commitment Letter, and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern.

### 1.5 *Certain Consent Rights*

Notwithstanding anything herein to the contrary, and without limiting the Debtors' fiduciary duties, any and all consent rights of any party set forth in the Restructuring Support Agreement with respect to the form and substance of this Plan, the Plan Supplement, any supplement to the Disclosure Statement, any other Definitive Documents and any agreements or documents referenced in this Plan or the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference and fully enforceable as if stated in full herein until such time as the Restructuring Support Agreement is terminated in accordance with its terms.

### ARTICLE II.    ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS.

### 2.1 *Treatment of Administrative Expense Claims.*

On (or as soon thereafter as is reasonably practicable) the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date each Administrative Expense Claim becomes an Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim) shall receive in full and final satisfaction of such Claim, either (x) Cash in an amount equal to the Allowed amount of such Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code or (y) such other treatment as to which the Debtors, the Post-Effective Date Debtors, or NewCo and its subsidiaries (including the Credit Bid Purchaser), as applicable, and the holder of such Allowed Administrative Expense Claim will have agreed upon in writing; *provided*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Post-Effective Date Debtors, as applicable, in the ordinary course of

business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities; *provided, further*, that any Allowed Administrative Expense Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

## 2.2 *Treatment of Fee Claims.*

(a) <u>Final Fee Applications</u>. All final requests for the allowance and payment of Fee Claims shall be filed no later than 45 days after the Effective Date unless such date is extended by order of the Bankruptcy Court.

(b) <u>Professional Fee Escrow Amount</u>. All Professional Persons shall estimate in good faith their unpaid Fee Claims before and as of the Effective Date and shall deliver such estimate to the Debtors at least three (3) calendar days before the Effective Date; *provided*, *however*, that such estimate shall not limit or be deemed to limit the amount of the fees and expenses that are the subject of the Professional Person's final request for payment of Fee Claims. If a Professional Person does not provide such estimate, the Debtors and Post-Effective Date Debtors may estimate the unbilled fees and expenses of such Professional Person; *provided*, *however*, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses incurred by, or payable to, such Professional Person. The total amount so estimated as of the Effective Date shall comprise the Professional Fee Escrow Amount.

(c) <u>Professional Fee Escrow</u>. If the Professional Fee Escrow Amount is greater than zero, then as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors will establish and fund the Professional Fee Escrow with cash equal to the Professional Fee Escrow Amount and no Liens, Claims, or interests will encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including funds held in the Professional Fee Escrow) will (i) not be and will not be deemed to be property of the Debtors or the Post-Effective Date Debtors and (ii) will be held in trust for the Professional Persons; *provided*, *however*, that funds remaining in the Professional Fee Escrow after all Allowed Fee Claims have been irrevocably paid in full will revert to the Post-Effective Date Debtors. Allowed Fee Claims will be paid in cash to such Professional Persons from funds held in the Professional Fee Escrow as soon as reasonably practicable after such Claims are Allowed by an order of the Bankruptcy Court; *provided*, *however*, that the Debtors' obligations with respect to Fee Claims will not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.

If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed Fee Claims and any other Allowed amounts owed to Professional Persons, the deficiency will be promptly funded to the Professional Fee Escrow from the Debtors' estates and/or by Post-Effective Date Debtors without any further action or order of the Bankruptcy Court.

(d)     Post-Effective Date Fees and Expenses.  On and after the Effective Date, the Debtors and the Post-Effective Date Debtors, as applicable, will pay in cash in the ordinary course of business and without any further action or order of the Bankruptcy Court, the reasonable legal, professional, or other fees and expenses that are (i) related to implementation of the Plan and (ii) incurred by the Debtors or Post-Effective Date Debtors, as applicable, on and after the Effective Date.

On the Effective Date, any requirement that Professional Persons comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services provided after such date shall terminate, and the Debtors or Post-Effective Date Debtors may employ and pay any post-Effective Date fees and expenses of any Professional Person without any further notice to or action, order, or approval of the Bankruptcy Court.

### 2.3     *Treatment of DIP Claims.*

As of the Effective Date, the DIP Claims shall be Allowed in the full amount outstanding under the DIP Credit Agreement, including principal, interest, fees, costs, other charges, and expenses provided for thereunder.  In full and final satisfaction, settlement, release, and discharge of each Allowed DIP Claim, on the Effective Date, each holder of such Allowed DIP Claim shall receive either (a) payment in full in Cash or (b) such other treatment as to which the Debtors or the Post-Effective Date Debtors, as applicable, and the holder of such Allowed DIP Claims will have agreed upon in writing.  On the Effective Date, all Liens granted to secure the Allowed DIP Claims shall be terminated and of no further force and effect.

### 2.4     *Payment of Fees and Expenses Under DIP Order.*

On the later of (a) the Effective Date and (b) the date on which such fees, expenses, or disbursements would be required to be paid under the terms of the DIP Order, the Debtors or the Post-Effective Date Debtors (as applicable) shall pay all fees, expenses, and disbursements of the DIP Agent and DIP Lenders, in each case that have accrued and are unpaid as of the Effective Date and are required to be paid under or pursuant to the DIP Order. After the Effective Date, the Post-Effective Date Debtors shall continue to reimburse the DIP Agent and the DIP Lenders for the reasonable fees and expenses (including reasonable and documented legal fees and expenses) incurred by the DIP Agent and the DIP Lenders after the Effective Date in accordance with the terms of the DIP Documents.  The Post-Effective Date Debtors shall pay all of the amounts that may become payable to the DIP Agent or any of the DIP Lenders in accordance with the terms of the DIP Documents and the DIP Order.

### 2.5     *Treatment of Priority Tax Claims.*

On the Effective Date or as soon thereafter as is reasonably practicable (but in no event later than 30 days after the Effective Date), each holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction of such Claim, either (a) Cash in an amount equal to the Allowed amount of such Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code or (b) or such other treatment as to which the Debtors, the Post-Effective Date Debtors or NewCo and its subsidiaries (including the Credit Bid Purchaser) as applicable, and the holder of such Allowed Priority Tax Claim will have agreed upon in

writing; *provided*, that Allowed Priority Tax Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Post-Effective Date Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities; *provided, further*, that any Allowed Priority Tax Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

### 2.6 *Restructuring Expenses.*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Post-Effective Date Debtors, as applicable, shall pay in full in Cash (to the extent not previously paid during the course of the Chapter 11 Cases) all outstanding Restructuring Expenses billed through the Effective Date, in accordance with the terms of the applicable orders, engagement letters, or other applicable contractual arrangements. All parties entitled to payment pursuant to this Section 2.6 shall estimate their accrued Restructuring Expenses before and as of the Effective Date and shall deliver such estimates to the Debtors at least three Business Days before the Effective Date; *provided,* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such parties. On the Effective Date, final invoices for all Restructuring Expenses incurred before and as of the Effective Date shall be submitted to the Debtors. In addition, the Debtors and the Post-Effective Date Debtors (as applicable) shall continue to pay post-Effective Date, when due and payable in the ordinary course, Restructuring Expenses related to implementation, consummation and defense of the Plan.

### 2.7 *Postpetition Hedge Claims.*

On (or as soon thereafter as is reasonably practicable) the later of (a) the Effective Date and (b) the first Business Day on which the Allowed Postpetition Hedge Claim becomes due and owing in accordance with the terms of and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities, each holder of an Allowed Postpetition Hedge Claim shall receive in full and final satisfaction of such Claim, either (x) Cash in an amount equal to the Allowed amount of such Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code or (y) such other treatment as to which the Debtors, the Post-Effective Date Debtors, or NewCo and its subsidiaries (including the Credit Bid Purchaser), as applicable, and the holder of such Allowed Postpetition Hedge Claim will have agreed upon in writing; *provided*, that any Allowed Postpetition Hedge Claim assumed by the Credit Bid Purchaser in accordance with the foregoing clause (y) pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties. Nothing herein shall modify any of the contractual rights under a Postpetition Hedging Agreement of a holder of an Allowed Postpetition Hedge Claim in their capacity as a holder of an Allowed Postpetition Hedge Claim.

## ARTICLE III.        CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1    _Classification in General._

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; _provided_, _however_, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled before the Effective Date.

### 3.2    _Formation of Debtor Groups for Convenience Only._

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and making Plan Distributions in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any Assets; and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

### 3.3    _Summary of Classification of Claims and Interests._

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are:   (a) Impaired and Unimpaired under the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.  The classification of Claims and Interests set forth herein shall apply separately to each Debtor.

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|-------|---------------------------|------------|------------------|
| Class 1 | Other Secured Claims | Impaired | Yes |
| Class 2 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| Class 3 | FLFO Claims | Impaired | Yes |
| Class 4 | FLTL Claims | Impaired | Yes |
| Class 5 | SLTL Claims | Impaired | Yes |
| Class 6A | Unsecured Trade Claims | Impaired | Yes |
| Class 6B | General Unsecured Claims | Impaired | Yes |
| Class 7 | Intercompany Claims | Unimpaired | No (Presumed to accept) |
| Class 8 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |
| Class 9 | Intercompany Interests | Unimpaired | No (Presumed to accept) |
| Class 10 | Existing Equity Interests | Impaired | No (Deemed to reject) |

### 3.4 *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Debtors or the Post-Effective Date Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.5 *Separate Classification of Other Secured Claims.*

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within the Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject the Plan and receiving Plan Distributions.

### 3.6 *Elimination of Vacant Classes.*

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes that votes on the Plan shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

### 3.7 *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

With respect to each Debtor, if a Class contained Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims in such Class.

### 3.8 *Voting; Presumptions; Solicitation.*

(a)    **Acceptance by Certain Impaired Classes**.  Only holders of Allowed Claims in Classes 1, 3, 4, 5, 6A, and 6B are entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

(b)    **Presumed Acceptance by Unimpaired Classes**.  Holders of Claims and Interests in Classes 2, 7 and 9 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject the Plan.

(c)    **Deemed Rejection by Certain Impaired Classes**.  Holders of Claims in Class 8 and Class 10 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject the Plan.

### 3.9 *Cramdown.*

If any Class is deemed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (a) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code. If a controversy arises as to whether any Claims or Interests, or any class of Claims or Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### 3.10 *No Waiver.*

Nothing contained in the Plan shall be construed to waive a Debtor's or other Person's right to object on any basis to any Disputed Claim.

## ARTICLE IV.    TREATMENT OF CLAIMS AND INTERESTS.

### 4.1 *Class 1: Other Secured Claims.*

(a) **Treatment**: Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Post-Effective Date Debtors, such holder shall receive either (i) payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter, (ii) such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired, or (iii) any other treatment consistent with the provisions of section 1129 of the Bankruptcy Code, including by providing such holder with the "indubitable equivalent" of their Allowed Other Secured Claim (which, for the avoidance of doubt, may be in the form of a multi-year promissory note or other financial instrument); *provided,* that any Allowed Other Secured Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

(b) **Impairment and Voting**: Allowed Other Secured Claims are Impaired. Holders of Allowed Other Secured Claims are entitled to vote on the Plan.

### 4.2 *Class 2:  Priority Non-Tax Claims.*

(a) **Treatment**: Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall, at the option of the Debtors or the Post-Effective Date Debtors (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in

each case, or as soon as reasonably practicable thereafter; *provided,* that any Allowed Priority Non-Tax Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

(b)     **Impairment and Voting**:   Allowed Priority Non-Tax Claims are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Priority Non-Tax Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders shall not be solicited with respect to such Allowed Priority Non-Tax Claims.

### 4.3     *Class 3:  FLFO Claims.*

(a)     **Treatment**:  Except to the extent that a holder of an Allowed FLFO Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of such Allowed FLFO Claim, (a) each holder of an Allowed FLFO Claim shall receive its Pro Rata Share of the FLFO Distribution Amount and (b) all remaining Allowed FLFO Claims shall be assumed by the NewCo Entities as modified to the extent set forth in the First Lien Exit Facility Documents.  The Liens securing the FLFO Claims that attach to the Credit Bid Acquired Interests shall be retained and deemed assigned to the First Lien Exit Facility Agent upon the Effective Date to secure the obligations under the First Lien Exit Facility.

(b)     **Impairment and Voting**:  FLFO Claims are Impaired.  Holders of Allowed FLFO Claims are entitled to vote on the Plan.

(c)     **Allowance**:  The FLFO Claims shall be deemed Allowed on the Effective Date in the FLFO Claims Allowed Amount.

### 4.4     *Class 4:  FLTL Claims.*

(a)     **Treatment:** Except to the extent that a holder of an Allowed FLTL Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed FLTL Claim and in consideration for the Credit Bid Transaction, each holder of an Allowed FLTL Claim shall receive its Pro Rata Share of:

(i)     100% of the New Equity Interests, subject to dilution by (w) the Backstop Commitment Equity Premium Interests, (x) the New Equity Interests issued upon exercise of the Subscription Rights, (y) any New Equity Interests issued upon the exercise of the New Money Warrants, SLTL Warrants, or the GUC Warrants, and (z) any New Equity Interests issued pursuant to the Management Incentive Plan; and

(ii)     the FLTL Subscription Rights.

(b)     **Impairment and Voting**:  FLTL Claims are Impaired.  Holders of Allowed FLTL Claims are entitled to vote on the Plan.

(c)     **Allowance**: The FLTL Claims shall be deemed Allowed on the Effective Date in the aggregate amount of the FLTL Claims Allowed Amount.

### 4.5     *Class 5: SLTL Claims.*

(d)     **Treatment:** Except to the extent that a holder of an Allowed SLTL Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed SLTL Claim, each holder of an Allowed SLTL Claim shall receive its Pro Rata Share of:

> (iii)     the SLTL Warrants; and

> (iv)     the SLTL Subscription Rights.

(e)     **Impairment and Voting**:  SLTL Claims are Impaired.   Holders of Allowed SLTL Claims are entitled to vote on the Plan.

(f)     **Allowance**: The SLTL Claims shall be deemed Allowed on the Effective Date in the aggregate amount of the SLTL Claims Allowed Amount.

### 4.6     *Class 6A:  Unsecured Trade Claims.*

(a)     **Treatment:** Except to the extent that a holder of an Allowed Unsecured Trade Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed Unsecured Trade Claim, each holder of an Allowed Unsecured Trade Claim that has executed a Trade Agreement shall receive:

> (i)     if 14% of the aggregate amount of all Allowed Unsecured Trade Claims is less than or equal to $8,000,000, Cash in an amount equal to 14% of the Allowed amount of such holder's Allowed Unsecured Trade Claim; or

> (ii)     if 14% of the aggregate amount of Allowed Unsecured Trade Claims is greater than $8,000,000, its Pro Rata share of $8,000,000.

(b)     **Impairment and Voting**: Unsecured Trade Claims are Impaired.  Holders of Unsecured Trade Claims are entitled to vote on the Plan.

### 4.7     *Class 6B: General Unsecured Claims.*

(c)     **Treatment:** Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on or after the Effective Date, in full and final satisfaction of and in exchange for such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive, up to the full amount of such holder's Allowed General Unsecured Claim, its Pro Rata Share of:

> (i)     the GUC Warrants; and

        (ii)      any Residual Distributable Value.

    (b)    **Impairment and Voting**: General Unsecured Claims are Impaired. Holders of General Unsecured Claims are entitled to vote on the Plan.

### 4.8   *Class 7: Intercompany Claims.*

    (a)    **Treatment**: On or after the Effective Date, all Intercompany Claims shall be adjusted, reinstated, or discharged in the Debtors' or Post-Effective Date Debtors' discretion.

    (b)    **Impairment and Voting**: All Allowed Intercompany Claims are deemed Unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Intercompany Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders shall not be solicited with respect to such Allowed Intercompany Claims.

### 4.9   *Class 8: Subordinated Securities Claims.*

    (a)    **Treatment**: All Subordinated Securities Claims, if any, shall be discharged, cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Allowed Subordinated Securities Claims will not receive any distribution on account of such Allowed Subordinated Securities Claims.

    (b)    **Impairment and Voting**: Allowed Subordinated Securities Claims are Impaired. In accordance with section 1126(g) of the Bankruptcy Code, holders of Subordinated Securities Claims are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders shall not be solicited with respect to Subordinated Securities Claims.

### 4.10   *Class 9: Intercompany Interests.*

    (a)    **Treatment**: On the Effective Date, all Intercompany Interests, in the Debtors' or the Post-Effective Date Debtors' discretion, shall be adjusted, reinstated, cancelled, or discharged in the Debtors' or Post-Effective Date Debtors' discretion.

    (b)    **Impairment and Voting:** Intercompany Interests are Unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Intercompany Interests are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders shall not be solicited with respect to such Allowed Intercompany Interests.

### 4.11   *Class 10: Existing Equity Interests.*

    (a)    **Treatment**: On the Effective Date, all Existing Equity Interests shall be canceled, released, and extinguished, and will be of no further force or effect.

    (b)    **Impairment and Voting**: Allowed Existing Equity Interests are Impaired. Holders of Existing Equity Interests are not entitled to vote on the Plan.

### 4.12 *Treatment of Vacant Classes.*

Any Claim or Interest in a Class that is considered vacant under Section 3.6 of the Plan shall receive no Plan Distribution.

## ARTICLE V.    MEANS FOR IMPLEMENTATION.

### 5.1 *Plan Settlement; Compromise and Settlement of Claims, Interests, and Controversies.*

Subject to approval by the Bankruptcy Court in connection with confirmation of the Plan, the provisions of the Plan and other documents entered into in connection with the Plan constitute a good faith compromise and settlement among the Debtors, the Consenting Creditors and the Creditors' Committee of claims, Causes of Action and controversies among such parties, including all potential claims, Causes of Action and controversies related to the Challenge Period (as defined in the DIP Order) and any Challenge under the DIP Order, and are in consideration of the value provided to the Estates by the Consenting Creditors, including the value being provided to holders of Unsecured Trade Claims and General Unsecured Claims pursuant to Sections 4.6 and 4.7 hereof. The Plan shall be deemed a motion to approve the Plan Settlement and the good faith compromise and settlement of all of the claims, Causes of Action and controversies described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlement, as well as a finding by the Bankruptcy Court that the Plan Settlement is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  For the avoidance of doubt, nothing in this Plan or the Disclosure Statement shall require the Creditors' Committee to take or refrain from taking any action that it determines in good faith would be inconsistent with its fiduciary duties under applicable law. Notwithstanding the foregoing, the Creditors' Committee acknowledges that its entry into the Plan Settlement and its support for this Plan is consistent with its fiduciary duties.

Further, pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Allowed Claims, Allowed Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Allowed Claims and Allowed Interests, and is fair, equitable, and reasonable.

### 5.2 *Credit Bid Transaction; Confirmation Outside Date.*

(a)    If the Confirmation Date occurs on or before the Confirmation Outside Date or the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders do not otherwise

elect to pursue a 363 Credit Bid Transaction pursuant to Section 5.2(c) of the Plan, then, on the Effective Date, pursuant to sections 363, 1123, 1141(b) and 1141(c) of the Bankruptcy Code, in accordance with the Credit Bid Purchase Agreement, subject to the satisfaction or waiver of all applicable closing conditions under the Credit Bid Purchase Agreement, (i) all Credit Bid Acquired Interests shall be transferred to, and the Credit Bid Acquired Interests owned by the Debtors shall vest free and clear of all Liens[2] (other than (i) any and all Liens securing the FLFO Claim or the obligations under the First Lien Exit Facility or (ii) Credit Bid Permitted Encumbrances except in the case of Fieldwood U.A. Interests, which shall vest free and clear of all Liens other than Liens described in clause (i) above to the extent contemplated by the First Lien Exit Facility Documents), Claims, charges, Interests, or other encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights, and (ii) all Credit Bid Assumed Liabilities shall be assumed by the Credit Bid Purchaser.

(b)     In the event that the transaction pursuant to Section 5.2(a) of the Plan is consummated and in the event of any conflict whatsoever between the terms of the Plan and the Credit Bid Purchase Agreement with respect to the Credit Bid Transaction, the terms of the Credit Bid Purchase Agreement shall control, and the Plan shall be deemed to incorporate in their entirety the terms, provisions, and conditions of the Credit Bid Purchase Agreement.

(c)     (x) If the Confirmation Date does not occur before the Confirmation Outside Date or (y) if the estimated amount of Allowed Specified Administrative Expense Claims to be satisfied under the Plan on or after the Effective Date is projected at any time prior to the Confirmation Date to exceed the Toggle Amount (the next Business Day after the occurrence of (x) or (y), the ("**Toggle Date**"), then, with the consent of the Required DIP Lenders and Requisite FLTL Lenders, the Debtors shall:

(i)     within 7 days of the Toggle Date, file a motion (the "**Toggle Motion**"), in form and substance acceptable to the Debtors, the Required DIP Lenders and Requisite FLTL Lenders, seeking entry of an order of the Bankruptcy Court approving a credit bid sale transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders) pursuant to section 363 of the Bankruptcy Code on substantially the same terms as provided in the Credit Bid Purchase Agreement (which terms shall be acceptable to the Debtors, the Requisite FLTL Lenders, and Required DIP Lenders), free and clear of all Liens (other than (i) any and all Liens securing the FLFO Claim or the First Lien Exit Facility or (ii) Credit Bid Permitted Encumbrances except in the case of Fieldwood U.A. Interests, which shall vest free and clear of all Liens other than Liens described in clause (i) above to the extent contemplated by the First Lien Exit Facility Documents), Claims, charges, Interests, or other encumbrances, the Credit Bid Consent Rights and the

---

[2] Provided that the Retained Properties (as defined in the Apache Implementation Agreement) shall be transferred in accordance with the Decommissioning Agreement.

Credit Bid Preferential Purchase Rights that are applicable to the Credit Bid Acquired Interests;

(ii)      within 15 days of the Toggle Date and subject to the reasonable consent of Apache, the Requisite FLTL Lenders, the Required DIP Lenders and the Debtors, amend the Apache Definitive Documents as reasonably required to effectuate the 363 Credit Bid Transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders); provided that no such actions shall require the Apache PSA Parties to alter the economics of the Apache Definitive Documents without the Apache PSA Parties' express written consent; and

(iii)    within 35 days of the Toggle Date, obtain entry of an order of the Bankruptcy Court approving the 363 Credit Bid Transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders).

(d)      Notwithstanding anything herein to the contrary, upon the occurrence of the Toggle Date, if the transactions under the Toggle Motion (i) (a) individually or in the aggregate, results in a reduction of 10% or more of the total PV-10 of total 2P reserves comprising the assets acquired by the Credit Bid Purchaser (which shall be calculated by reference to the FWE YE2020 Internal Reserve Report (as of 5.1.21)), (b) results in any contract rights constituting material assets not being acquired by the Credit Bid Purchaser, (c) individually or in the aggregate, results in an increase by $40.0 million or more (which, for the avoidance of doubt, in the case of plugging and abandonment liabilities, shall be calculated on a present value basis) in liabilities assumed by the Credit Bid Purchaser, (d) relates to any change in treatment or recovery of the Prepetition FLFO Credit Agreement or First Lien Exit Facility, or (e) provide for any differences from the transaction under this Plan that are materially adverse to the interests of the First Lien Exit Facility Agent and the First Lien Exit Facility Lenders, and (ii) are not (a) reasonably acceptable to the Prepetition FLFO Agent with respect to the foregoing clause (i)(b) or (e), or (ii) acceptable to the Prepetition FLFO Agent with respect to the foregoing clause (i)(a),(c), or (d), then all rights of the Prepetition FLFO Secured Parties set forth in the Prepetition FLFO Credit Agreement and related documents to object to the Toggle Motion on any grounds are expressly preserved, and all of the Prepetition FLFO Secured Parties' claims, rights, and remedies are reserved for all purposes, including the right to obtain treatment and transaction structure different than as set forth in the Toggle Motion.

(e)      Notwithstanding anything in the Credit Bid Purchase Agreement or any agreement entered into pursuant to Section 5.2(c) of the Plan to the contrary, the Credit Bid Purchaser shall not be liable for any liability or obligation on account of any Claim or Interest that is compromised, settled, released or discharged pursuant to this Plan.

### 5.3    *Equity Rights Offerings*.

(a)    On the Effective Date, the Debtors shall consummate the Equity Rights Offerings.

(b)    [FLTL Equity Rights Offering. The FLTL Equity Rights Offering shall be fully backstopped by the FLTL ERO Backstop Parties in accordance with and subject to the terms and conditions of the FLTL ERO Backstop Agreement. The right to participate in the FLTL Equity Rights Offering may not be sold, transferred, or assigned, except in the circumstances described in the FLTL ERO Backstop Agreement. In accordance with the FLTL ERO Backstop Agreement and subject to the terms and conditions thereof, each of the FLTL ERO Backstop Parties, among other things, has agreed, severally but not jointly, to purchase, on or prior to the Effective Date, its respective [FLTL ERO Backstop Commitment Percentage] of the [FLTL Unsubscribed Shares]. In exchange for providing the backstop commitment for the Equity Rights Offering, the FLTL ERO Backstop Parties shall receive, among other things, the FLTL ERO Backstop Commitment Premium Equity Interests payable in accordance with the terms of the FLTL ERO Backstop Agreement.]

(c)    [SLTL Equity Rights Offering. The SLTL Equity Rights Offering shall be fully backstopped by the SLTL ERO Backstop Parties in accordance with and subject to the terms and conditions of the SLTL ERO Backstop Agreement. The right to participate in the SLTL Equity Rights Offering may not be sold, transferred, or assigned, except in the circumstances described in the SLTL ERO Backstop Agreement. In accordance with the SLTL ERO Backstop Agreement and subject to the terms and conditions thereof, each of the SLTL ERO Backstop Parties, among other things, has agreed, severally but not jointly, to purchase, on or prior to the Effective Date, its respective [SLTL ERO Backstop Commitment Percentage] of the [SLTL Unsubscribed Shares]. In exchange for providing the backstop commitment for the SLTL Equity Rights Offering, the SLTL ERO Backstop Parties shall receive, among other things, the SLTL ERO Backstop Commitment Premium Equity Interests payable in accordance with the terms of the SLTL ERO Backstop Agreement.]

### 5.4    *New Equity Interests.*

(a)    On the Effective Date, NewCo is authorized to issue or cause to be issued and shall, issue the New Equity Interests for eventual distribution in accordance with the terms of this Plan without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person. The New Equity Interests shall be issued and distributed free and clear of all Liens, Claims, and other Interests. All of the New Equity Interests issued pursuant to the Plan shall be duly authorized and validly issued.

(b)    On the Effective Date, NewCo and all holders of the New Equity Interests then outstanding shall be deemed to be parties to the NewCo Organizational Documents, where applicable, substantially in the form, or consistent with the term sheets, contained in the Plan Supplement, without the need for execution by any such holder. The NewCo Organizational Documents shall be binding on NewCo and its subsidiaries (including the Credit Bid Purchaser) and all parties receiving, and all holders of, New Equity Interests.

**5.5**     *NewCo Organizational Documents*

The NewCo Organizational Documents will be in form and substance acceptable to the Debtors, Requisite FLTL Lenders, and the Required DIP Lenders. After the Effective Date, the NewCo Organizational Documents may be amended or restated as permitted by such documents and the laws of their respective states, provinces, or countries of incorporation or organization.

**5.6**     *New Money Warrants, SLTL Warrants and GUC Warrants*

On or after the Effective Date, NewCo is authorized to issue or cause to be issued and shall, as provided for in this Plan, issue (i) the New Money Warrants for distribution to the New Money Second Lien Exit Facility Lenders, the SLTL Warrants to the holders of Allowed SLTL Claims, and the GUC Warrants to the holders of Allowed General Unsecured Claims, in each case in accordance with the terms of the Plan and Confirmation Order without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person and (ii) upon exercise of the New Money Warrants, New Equity Interests issuable upon exercise of the New Money Warrants. The New Money Warrants, the SLTL Warrants, and GUC Warrants shall be issued and distributed free and clear of all Liens, Claims, and other Interests. All of the New Money Warrants, the SLTL Warrants, and GUC Warrants issued pursuant to the Plan, including as contemplated by the Credit Bid Transaction and the Second Lien Exit Facility Term Sheet, and all New Equity Interests issued upon exercise of the New Money Warrants, the SLTL Warrants, and the GUC Warrants shall be duly authorized and validly issued.

**5.7**     *Plan of Merger*

(a)     On the Effective Date, but after the consummation of the transactions contemplated by the Credit Bid Purchase Agreement, Fieldwood Energy LLC shall adopt the Plan of Merger and, in accordance with the terms thereof and solely to the extent therein, upon the effective time of the Divisional Merger as provided for in the Plan of Merger, the (i) FWE Assets will be allocated to and vest in FWE I and FWE III pursuant to the terms of the Plan of Merger, in each case, free and clear of all Plan of Merger Consent Rights and Plan of Merger Preferential Purchase Rights; and (ii) the FWE I Obligations shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE I and the FWE III Obligations shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE III. Immediately after the effective time of the Divisive Merger as provided in the Plan of Merger, the only assets, properties and rights of, and the only liabilities and obligations of, (i) FWE I will be the FWE I Assets and FWE I Obligations and (ii) FWE III will be the FWE III Assets and FWE III Obligations.

(b)     All of the membership interests of FWE I and FWE III shall be owned by Post-Effective Date FWE Parent.

(c)     Notwithstanding anything to the contrary in the Plan of Merger, any claim or interest that is satisfied, compromised, settled, released or discharged pursuant to the Plan shall not constitute an FWE I Obligation or FWE III Obligation.

### 5.8 *Single Share*

(a)    On the Effective Date, one share of Post-Effective Date FWE Parent common stock (the "**Single Share**") shall be issued to the Plan Administrator to hold in trust as custodian for the benefit of the holders of Allowed General Unsecured Claims and the Single Share shall be recorded on the books and records maintained by the Plan Administrator.

(b)    On the date that FWE Parent's Chapter 11 Case is closed in accordance with Section 5.25 of this Plan, the Single Share issued on the Effective Date pursuant to the Plan shall be deemed cancelled and of no further force and effect, provided that such cancellation does not adversely impact the Debtors' Estates.

### 5.9 *Plan Administrator*

(a)    *Appointment*.  The Plan Administrator's retention shall commence on the Effective Date and shall continue until: (i) the Bankruptcy Court has entered an order or orders closing each of the Chapter 11 Cases; (ii) the Bankruptcy Court enters an order removing the Plan Administrator for cause; or (iii) the Plan Administrator voluntarily resigns, upon notice filed with the Bankruptcy Court, and a successor Plan Administrator is appointed in accordance with this Plan.

(b)    *Authority*.  Subject to Section 5.9(c) of this Plan, the Plan Administrator shall have all the rights, powers, authority, and duties on behalf of each of the Debtors and Post-Effective Date Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)    subject to Section 7 of the Plan, except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process in accordance with the terms of this Plan, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(ii)    make Distributions to holders of Allowed Claims and Interests in accordance with this Plan, including distributions from the Claims Reserve, Professional Fee Escrow and Plan Administrator Expense Reserve;

(iii)    exercise its reasonable business judgment to direct and control the Debtors or Post-Effective Date Debtors under this Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv)    prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator as described herein;

 (v)  engage in the ownership, operation, plugging and abandonment, and decommissioning of the FWE III Assets, including the FWE III Oil & Gas Lease Interests;

 (vi)  abandon any property determined by the Plan Administrator to be of *de minimis* value or burdensome to the Estates;

 (vii)  other than any Causes of Action released by the Debtors pursuant to this Plan or otherwise, prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors and their Estates;

 (viii)  retain, employ, terminate, or replace professionals to assist or represent it in performing its duties under this Plan;

 (ix)  pay all fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors, including any Restructuring Expenses, from the Plan Administrator Expense Reserve or otherwise;

 (x)  comply with, and cause the Debtors and Post-Effective Date Debtors to comply with, the Debtors' or Post-Effective Date Debtors' continuing obligations under the Credit Bid Purchase Agreement;

 (xi)  maintain the books and records and accounts of the Debtors and Post-Effective Date Debtors;

 (xii)  establish and maintain bank accounts in the name of the Post-Effective Date Debtors;

 (xiii)  incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

 (xiv)  following the Effective Date, pay any fees and expenses in Cash in accordance with Section 2.4 of this Plan;

 (xv)  administer each Debtor's and Post-Effective Date Debtors' tax obligations, including (i) filing tax returns and paying tax obligations and (ii) representing the interest and account of each Debtor, each Debtor's estate, or each Post-Effective Date Debtor before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xvi)     prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors or Post-Effective Date Debtor that are required hereunder, by any Governmental Unit or applicable law;

(xvii)    pay statutory fees in accordance with Section 12.1 of this Plan;

(xviii)   perform other duties and functions that are consistent with the implementation of the Plan or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of this Plan; and

(xix)     close the Chapter 11 Cases pursuant to Section 5.25 of this Plan.

(c)     *Board of Directors and Officers*.

(i)      The officers and directors of the Debtors existing before the Effective Date shall be relieved of any and all duties with the respect to the Debtors as of the Effective Date.

(ii)     Upon the Effective Date, the Plan Administrator shall serve as the sole officer, director, or manager of each Post-Effective Date Debtor. The Plan Administrator may also elect such additional managers(s) and officer(s) of each Post-Effective Date Debtor as the Plan Administrator deems necessary to implement this Plan and the actions contemplated herein. The Plan Administrator shall also have the power to act by written consent to remove any officer or manager of any Post-Effective Date Debtor at any time with or without cause.

(d)     *Post-Effective Date Operations*. After the Effective Date, pursuant to this Plan, the Plan Administrator shall operate the Post-Effective Date Debtors without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

(e)     *Post-Effective Date Expenses*. On and after the Effective Date, all costs, expenses and obligations incurred by the Plan Administrator in administering this Plan, the Post-Effective Date Debtors, or in any manner connected, incidental, or related thereto, in effecting distributions from the Post-Effective Date Debtors thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid from the Plan Administrator Expense Reserve.

(f)     *Indemnification*. Each of the Estates and the Post-Effective Date Debtors shall indemnify and hold harmless the Plan Administrator solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's gross negligence or willful misconduct.

(g)     *Cooperation*. The Debtors, the Post-Effective Date Debtors, the Plan Administrator, the FWE I Sole Manager, and NewCo and its subsidiaries (including the Credit

Bid Purchaser) and their respective professionals, as appropriate, shall cooperate with each other in relation to their respective activities and obligations in respect of this Plan, including objecting to, settling or otherwise reconciling claims as provided herein, and by providing reasonable, good-faith access to personnel, systems, and books and records and their respective personnel and consulting with each other to avoid duplication of effort; *provided*, *however*, that the Debtors, the Post-Effective Date Debtors, the Plan Administrator, the FWE I Sole Manager, and NewCo and its subsidiaries (including the Credit Bid Purchaser) and including its advisors, if any) shall enter into a confidentiality agreement before sharing of any such documents and/or information to the extent deemed reasonably necessary by the Post-Effective Date Debtors, the Credit Bid Purchaser, or Plan Administrator, as applicable.

### 5.10   *Plan Funding.*

Plan Distributions of Cash shall be funded from, among other things, the Debtors' Cash on hand (including the proceeds of the DIP Facility), the New Money Consideration, and the proceeds of the Equity Rights Offerings.

### 5.11   *The Exit Facilities*

(a)      On the Effective Date, the Credit Bid Purchaser shall execute and deliver the Exit Facility Documents and such documents shall become effective in accordance with their terms.  On and after the Effective Date, the Exit Facility Documents shall constitute legal, valid, and binding obligations of the Credit Bid Purchaser and be enforceable in accordance with their respective terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan or the Confirmation Order, and the Credit Bid Purchaser shall be authorized to incur the loans under the Exit Facilities and use the proceeds of such loans, in each case, in accordance with the terms of this Plan and the Exit Facility Documents without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person.  The terms and conditions of the Exit Facility Documents shall bind the Credit Bid Purchaser and each other Entity that enters into the Exit Facility Documents.

(b)      Confirmation shall be deemed approval of the Exit Facility Documents (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or Post-Effective Date Debtors, as applicable, in connection therewith), the First Lien Exit Facility Commitment Letter (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees paid in connection therewith (including any payments under the First Lien Exit Facility Commitment Letter)), and the Second Lien Backstop Commitment Letter (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees paid in connection therewith (including the Second Lien Backstop Commitment Premium and any other payments under the Backstop Agreement)), and, to the extent not approved by the Bankruptcy Court previously, the Credit Bid Purchaser will be authorized to, without further notice to the Bankruptcy Court, (i) execute and deliver those documents necessary or appropriate to obtain the Exit Facilities, including the Exit

Facility Documents, each as applicable, and incur and pay any fees and expenses in connection therewith, and (ii) make any act or take any action under applicable law, regulation, order or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Credit Bid Purchaser may deem to be necessary to enter into the Exit Facility Documents.

(c) On the Effective Date, all of the claims, liens, and security interests to be granted in accordance with the terms of the Exit Facility Documents (i) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (ii) shall be deemed automatically attached and perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Facility Documents with the priorities established in respect thereof under applicable non-bankruptcy law and the New Intercreditor Agreement, and (iii) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code, this Plan, the Confirmation Order or applicable non-bankruptcy law. To the extent provided in the Exit Facility Documents, the Exit Facility Agents are authorized, but not required, to file with the appropriate authorities mortgages, financing statements and other documents, and to take any other action in order to evidence, validate, and perfect such liens or security interests.

(d) On the Effective Date, the Credit Bid Purchaser, the First Lien Exit Facility Agent and the Second Lien Exit Facility Agent shall enter into the New Intercreditor Agreement substantially in the form contained in the Plan Supplement.

### 5.12 *Apache Definitive Documents.*

(a) On the Effective Date following the consummation of the Plan of Merger and the Effective Time (as defined in the Plan of Merger), FWE I shall be authorized to execute, deliver, and enter into the Apache Definitive Documents, including the Standby Credit Facility Documents, without further (i) notice to or order or other approval of the Bankruptcy Court, (ii) act or omission under applicable law, regulation, order, or rule, (iii) vote, consent, authorization, or approval of any Person, or (iv) action by the holders of Claims or Interests. The Standby Loan Agreement shall constitute a legal, valid, binding and authorized obligation of FWE I, enforceable in accordance with its terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan or the Confirmation Order. The financial accommodations to be extended pursuant to the Standby Loan Agreement (and other definitive documentation related thereto) are reasonable and are being extended, and shall be deemed to have been extended, in good faith and for legitimate business purposes.

(b) FWE I Sole Manager

(i) Upon the Effective Date, the FWE I Sole Manager shall be appointed. Upon the Effective Date, the new governance structure of FWE I will be set forth in the FWE I LLC Agreement.

(ii)     On and after the Effective Date, the FWE I Sole Manager and Plan Administrator shall mutually cooperate to establish any procedures and protocols as they deem necessary to carry out their respective duties; *provided*, *however*, that any such procedures and protocols shall be consistent with the terms of this Plan and the Sole Manager Agreement (as defined in the Apache Implementation Agreement).

(iii)    FWE I shall indemnify and hold harmless the FWE I Sole Manager solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the FWE I Sole Manager's gross negligence or willful misconduct.

### 5.13    *Abandonment of Certain Properties*

Immediately upon the occurrence of the Effective Date, the Debtors' rights to and interests in executory contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements listed on the Schedule of Abandoned Properties are abandoned pursuant to the Plan without further notice to or order of the Bankruptcy Court pursuant to Sections 105(a) and 554(a) of the Bankruptcy Code and/or deemed rejected pursuant to Section 365 of the Bankruptcy Code, as applicable.  The Abandoned Properties shall not be allocated to nor vest in the Post-Effective Date Debtors or NewCo and its subsidiaries, including the Credit Bid Purchaser.  Except as otherwise provided in this Plan or the Confirmation Order, the Debtors, their Estates, and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Properties. Nothing in this Plan or the Confirmation Order shall be construed as barring, waiving, or limiting the United States' rights to assert a claim against the Debtors, the Post-Effective Date Debtors or any co-lessees or predecessors in interest with respect to the Abandoned Properties for any decommissioning obligations for the Abandoned Properties.

### 5.14    *Establishment of Claims Reserve.*

On the Effective Date, the Debtors shall, with the consent of the Requisite FLTL Lenders and the DIP Lenders, establish and fund the Claims Reserve by depositing Cash, in the amount of the Claims Reserve Amount into the Claims Reserve.  The Claims Reserve shall be used to pay Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims (to the extent such Claims do not receive other treatment), Allowed Unsecured Trade Claims, and Cure Amounts in accordance with the terms of this Plan.  Any amounts remaining in the Claims Reserve after satisfaction of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims, Allowed Unsecured Trade Claims, and Cure Amounts shall constitute Residual Distributable Value.

### 5.15    *Plan Administrator Expense Reserve.*

On or before the Effective Date, the Plan Administrator shall establish the Plan Administrator Expense Reserve.  On the Effective Date, the Plan Administrator shall deposit

Cash in the Plan Administrator Expense Reserve Amount into the Plan Administrator Expense Reserve. The Plan Administrator Expense Reserve shall be used by the Plan Administrator solely to satisfy the expenses of the Plan Administrator and the Post-Effective Date Debtors as set forth in this Plan. Any amount remaining in the Plan Administrator Expense Reserve after the dissolution of all the Post-Effective Date Debtors shall constitute Residual Distributable Value. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for the purposes of carrying out its duties under this Plan.

### 5.16 *Continued Corporate Existence; Effectuating Documents; Further Transactions.*

(a) Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as Post-Effective Date Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the Amended Organizational Documents.

(b) On or after the Effective Date (in any case, following the consummation of the Credit Bid Transaction), but subsequent to the consummation of the transactions contemplated by the Credit Bid Purchase Agreement if the Credit Bid Transaction occurs, without prejudice to the rights of any party to a contract or other agreement with any Post-Effective Date Debtor, each Post-Effective Date Debtor may, in the sole discretion of the Plan Administrator, take such action as permitted by applicable law, the applicable Amended Organizational Documents or other applicable corporate governance documents, the Apache Definitive Documents, any Additional Predecessor Agreement Documents, as such Post-Effective Date Debtor may determine is reasonable and appropriate, including, causing: (i) the consummation of a Divisional Merger as contemplated by the Plan of Merger, (ii) the taking of any action contemplated by any Additional Predecessor Agreement Documents and the consummation thereof (including the formation of a new entity or consummation of a divisional merger), (iii) a Post-Effective Date Debtor to be merged into another Post-Effective Date Debtor or an affiliate of a Post-Effective Date Debtor; (iv) a Post-Effective Date Debtor to be dissolved; (v) the legal name of a Post-Effective Date Debtor to be changed; (vi) a Post-Effective Date Debtor to convert its form of entity; or (vii) the closure of a Post-Effective Date Debtor's Chapter 11 Case on the Effective Date or any time thereafter, and such action and documents are deemed to require no further action or approval (other than any requisite filings required under the applicable state, provincial and federal or foreign law).

(c) On the Effective Date or as soon thereafter as is reasonably practicable (in any case, following the consummation of the Credit Bid Transaction), but subsequent to the consummation of the transactions contemplated by the Credit Bid Purchase Agreement if the Credit Bid Transaction occurs, the Post-Effective Date Debtors, acting through the Plan Administrator, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, including, (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and the Plan Supplement and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or

delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate organizational documents governing the Post-Effective Date Debtors, including the Post-Effective Date Debtors' respective Amended Organizational Documents, and any amendments or restatements thereto, or any documents governing any Post-Effective Date Debtor's reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law and, as necessary, other constituent documents, including, without limitation, the organizational documents governing non-Debtor subsidiaries, as permitted by the laws of their respective states of incorporation; (iv) the Restructuring Transactions; and (v) all other actions that the applicable entities determine to be necessary or appropriate, including, making filings or recordings that may be required by applicable law.

## 5.17 *Corporate Action.*

(a)     Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects, including (i) entry into or execution of the Credit Bid Purchase Agreement and consummation of the transactions contemplated therein, (ii) the assumption or assumption and assignment of executory contracts and unexpired leases as provided herein, (iii) the appointment of the Plan Administrator and the FWE I Sole Manager, (iv) the entry into or execution of the Apache Definitive Documents and all documentation relating thereto, including the Plan of Merger and Standby Credit Facility Documents, (v) the entry into or execution of any Additional Predecessor Agreement Documents and all documentation relating thereto, including any plan of merger, divisional merger, or the creation of a new entity, (vi) entry into or execution of the Exit Facility Documents (and any other documentation related thereto, including the New Intercreditor Agreement), (vii) any other Restructuring Transaction, and (viii) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof. All matters provided for in this Plan involving the corporate or limited liability company structure of the Debtors or the Post-Effective Date Debtors, and any corporate or limited liability company action required by the Debtors or the Post-Effective Date Debtors in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Post-Effective Date Debtors.

(b)     On or before (as applicable) the Effective Date, the appropriate directors, officers, and managers of the Debtors, the Plan Administrator, or the FWE I Sole Manager, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan). The authorizations and approvals contemplated by this Section 5.17 shall be effective notwithstanding any requirements under nonbankruptcy law.

## 5.18 *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to and allowing holders of Claims to receive a distribution under this Plan, and except as otherwise set forth in the Plan, or in the Plan Supplement or any related agreement, instrument, or document, on the Effective Date, all

agreements, instruments, notes, certificates, indentures, mortgages, security documents, reimbursement obligations, and other instruments or documents evidencing or creating any prepetition Claim or Interest (collectively, the "**Cancelled Agreements**") (except that the following shall not be Cancelled Agreements: (i) the agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other instruments or documents governing, relating to and/or evidencing certain Intercompany Interests not modified by the Plan and any rights of any holder in respect thereof and (ii) the Decommissioning Agreement, and any and all bonds and letters of credit constituting Decommissioning Security) shall be deemed cancelled and of no force or effect and the Debtors shall not have any continuing obligations thereunder; *provided*, *however*, that each of the Cancelled Agreements shall continue in effect solely for the purposes of, (x) allowing holders of Claims or Interests to receive distributions under the Plan on account of such Claims or Interests and (y) allowing and preserving the rights of the Prepetition FLFO Administrative Agent, the Prepetition FLFO Collateral Agent, the Prepetition FLTL Administrative Agent, the Prepetition SLTL Administrative Agent, and the DIP Agent, as applicable, to (1) make distributions on account of such Claims or Interests; (2) maintain, enforce, and exercise their respective liens, including any charging liens, as applicable, under the terms of the applicable agreements, or any related or ancillary document, instrument, agreement, or principle of law, against any money or property distributed or allocable on account of such Claims, as applicable; (3) seek compensation and reimbursement for any reasonable and documented fees and expenses incurred in connection with the implementation of the Plan required to be paid pursuant to the applicable agreement; (4) maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, or contribution, or any other claim or entitlement that the Prepetition FLFO Administrative Agent, the Prepetition FLFO Collateral Agent, the Prepetition FLTL Administrative Agent, the Prepetition SLTL Administrative Agent, and the DIP Agent may have under this Plan, the applicable credit agreements, collateral agreements, or pledge agreements; and (5) appear and raise issues in these Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court after the Effective Date on matters relating to this Plan or the applicable credit agreements; *provided*, *further*, that the Prepetition FLFO Administrative Agent, the Prepetition FLFO Collateral Agent, the Prepetition FLTL Administrative Agent, the Prepetition SLTL Administrative Agent, and the DIP Agent may take such further action to implement the terms of the Plan, including the Restructuring Transactions, as agreed to with the Debtors or the Post-Effective Date Debtors, as applicable to the extent not inconsistent with the Confirmation Order or this Plan.

### 5.19 *Cancellation of Certain Existing Security Interests.*

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or the Post-Effective Date Debtors, as applicable, any Collateral or other property of a Debtor held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

Except, for the avoidance of doubt, with respect to any mortgages, deeds of trust, Liens, pledges, and any other security interests of the Prepetition FLFO Administrative Agent or the Exit Facility Agents, after the Effective Date and in accordance with the terms of the

Confirmation Order, the Debtors or the Post-Effective Date Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to any Claim or Interest, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Prepetition Agents, including, without limitation, UCC-3 termination statements and mortgage release documentation.

### 5.20    *Intercompany Interests; Corporate Reorganization.*

To the extent reinstated under the Plan, on the Effective Date, the Intercompany Interests (a) shall be reinstated for the ultimate benefit of the holders of Claims and Interests as set forth in the Plan (b) without the need for any further corporate action or approval of any board of directors, board of managers, managers, management, or stockholders of any Debtor or Post-Effective Date Debtor, as applicable, the certificates and all other documents representing the Intercompany Interests shall be deemed to be in full force and effect.

### 5.21    *Restructuring Transactions.*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or the Post-Effective Date Debtors, acting through the Plan Administrator, or the FWE I Sole Manager, as applicable, may take all actions consistent with the Plan and the Confirmation Order, as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan.

### 5.22    *Liquidating Trust.*

In the event the Plan Administrator determines, in its discretion, that to carry out and implement the provisions of this Plan certain assets should be transferred to a liquidating trust for the benefit of one or more classes of Claims, (1) the terms of the liquidating trust shall be set forth in a liquidating trust agreement, (2) the liquidating trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code of which the holders of Claims who become the liquidating trust beneficiaries (as determined for U.S. federal income tax purposes) are the owners and grantors, consistent with the terms of the Plan, (3) the sole purpose of the liquidating trust shall be the liquidation and distribution of the assets transferred to the liquidating trust in accordance with Treasury Regulations section 301.7701-4(d), including the resolution of Claims, with no objective to continue or engage in the conduct of a trade or business, (4) all parties (including the Debtors, holders of Claims, and the trustee of the liquidating trust) shall report consistently with such treatment (including the deemed receipt of the underlying assets, subject to applicable liabilities and obligations, by the holders of Allowed Claims, as applicable, followed by the deemed transfer of such assets to the liquidating trust), (5) all parties shall report consistently with the valuation of the assets transferred to the liquidating trust as determined by the trustee of the liquidating trust (or its designee), (6) the trustee of the liquidating trust shall be responsible for filing returns for the trust as a grantor trust pursuant to

Treasury Regulations section 1.671-4(a), and (7) the trustee of the liquidating trust shall annually send to each holder of an interest in the liquidating trust a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes. Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the trustee of the liquidating trust of a private letter ruling if the trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the trustee), the trustee of the liquidating trust may timely elect to (y) treat any portion of the liquidating trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations section 1.468B-9 (and make any appropriate elections) and (z) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, (i) all parties (including the Debtors, holders of Claims, and the trustee of the liquidating trust) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing, and (ii) any tax imposed on the liquidating trust with respect to assets allocable to Disputed Claims (including any earnings thereon and any gain recognized upon the actual or deemed disposition of such assets) will be payable out of such assets and, in the event of insufficient Cash to pay any such taxes, the trustee of the liquidating trust may sell all or part of such assets to pay the taxes. The trustee of the liquidating trust may request an expedited determination of taxes of the liquidating trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the liquidating trust for all taxable periods through the dissolution of the liquidating trust.

### 5.23 *Securities Exemptions.*

(a)     The offer, issuance, and distribution of the New Equity Interests (other than the Backstop Commitment Premium Equity Interests, the New Money Warrants, or any New Equity Interests issued upon exercise of the New Money Warrants or under the Management Incentive Plan), the Subscription Rights, the SLTL Warrants, and the GUC Warrants to holders of Allowed FLTL Claims, Allowed SLTL Claims, and General Unsecured Claims, as applicable, under Article IV of this Plan, and the New Equity Interests issued upon exercise of the Subscription Rights, the SLTL Warrants, or the GUC Warrants, shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or actions by any Person, from registration under the Securities Act, and all rules and regulations promulgated thereunder, and any other applicable securities laws, to the fullest extent permitted by section 1145 of the Bankruptcy Code. The New Equity Interests, the Subscription Rights, the SLTL Warrants, and GUC Warrants issued pursuant to section 1145(a) of the Bankruptcy Code may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such Securities, as that term is defined in section 1145(b) of the Bankruptcy Code. In addition, such section 1145 exempt Securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

(b)     The issuance and sale of the Backstop Commitment Premium Equity Interests, and the New Money Warrants (including any New Equity Interests issued upon exercise of the New Money Warrants) under this Plan shall be exempt from registration under the Securities Act or any other applicable securities laws to the fullest extent permitted by

section 4(a)(2) of the Securities Act and/or Regulation D thereunder. The Backstop Commitment Premium Equity Interests, and the New Money Warrants (including any New Equity Interests issued upon exercise of the New Money Warrants) issued in reliance on the exemption from registration set forth in section 4(a)(2) of the Securities Act and/or Regulation D thereunder, will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act, such as, under certain conditions, the resale provisions of Rule 144 of the Securities Act.

(c)     None of the Debtors, NewCo and its subsidiaries (including the Credit Bid Purchaser), or any other Person shall be required to provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Equity Interests (including any New Equity Interests issued upon exercise of the Subscription Rights, the New Money Warrants, the SLTL Warrants or the GUC Warrants), the Subscription Rights, the New Money Warrants, the SLTL Warrants, or the GUC Warrants, under applicable securities laws. DTC and any transfer agent (as applicable) shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Equity Interests (including any New Equity Interests issued upon exercise of the Subscription Rights, the New Money Warrants, the SLTL Warrants or the GUC Warrants), the Subscription Rights, the New Money Warrants, the SLTL Warrants, or the GUC Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services (to the extent applicable).

(d)     Notwithstanding anything to the contrary in this Plan, no Person (including DTC and any transfer agent) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including whether the New Equity Interests (including any New Equity Interests issued upon exercise of the Subscription Rights, the New Money Warrants, the SLTL Warrants or the GUC Warrants), the Subscription Rights, the New Money Warrants, the SLTL Warrants, or the GUC Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

### 5.24    *Closing of Chapter 11 Cases.*

After the Effective Date, the Plan Administrator shall be authorized, but not directed, to submit an order to Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes and issues a final decree for each of the Chapter 11 Cases.

## ARTICLE VI.     DISTRIBUTIONS.

### 6.1    *Distributions Generally.*

The Plan Administrator shall make all Distributions to the appropriate holders of Allowed Claims in accordance with the terms of this Plan.

### 6.2 *No Postpetition Interest on Claims.*

Except with respect to the FLFO Claims of the Prepetition FLFO Secured Parties or as otherwise specifically provided for in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

### 6.3 *Date of Distributions.*

Except as otherwise provided in this Plan, the Plan Administrator shall make Plan Distributions to holders of Allowed Claims after (a) funding of the Professional Fee Escrow and (b) satisfaction in full or establishment of reserves sufficient to pay claims in the Claims Reserve, as soon as reasonably practicable after the Effective Date and thereafter, the Plan Administrator shall from time to time determine the subsequent Distribution Dates.

### 6.4 *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of holders of Claims in each Class as maintained by the Debtors or their agents, shall be deemed closed, and there shall be no further changes in the record holders of any Claims after the Distribution Record Date. Neither the Debtors nor the Plan Administrator shall have any obligation to recognize any transfer of a Claim occurring after the close of business on the Distribution Record Date. In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the Plan Administrator shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

### 6.5 *Distributions after Effective Date*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 6.6 *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, the Plan Administrator shall make all Distributions to any holder of an Allowed Claim as and when required by this Plan at (a) the address of such holder on the books and records of the Debtors or their agents or (b) at the address in any written notice of address change delivered to the Debtors or the Plan Administrator, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001. In the event that any Distribution to any holder is returned as undeliverable, no Distribution or payment to such holder shall be made unless and until the Plan Administrator has been notified of the then-current address of such holder, at which time or as soon thereafter as reasonably practicable such Distribution shall be made to such holder without interest.

### 6.7    *Unclaimed Property.*

One year from the later of: (a) the Effective Date and (b) the date that is ten (10) Business Days after the date a Claim is first Allowed, all distributions that remain payable on account of such Claim shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Post-Effective Date Debtors or their successors and assigns, and all claims of any other Person (including the holder of a Claim in the same Class) to such distribution shall be discharged and forever barred.  The Post-Effective Date Debtors and the Plan Administrator shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

For the avoidance of doubt, a distribution shall be deemed unclaimed if a holder has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Post-Effective Date Debtors or the Plan Administrator of an intent to accept a particular distribution; (c) responded to the Debtors', the Post-Effective Date Debtors', or the Plan Administrator's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

### 6.8    *Satisfaction of Claims.*

Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

### 6.9    *Manner of Payment under Plan.*

Except as specifically provided herein, at the option of the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 6.10    *De Minimis Cash Distributions.*

The Plan Administrator shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash in an amount less than one-hundred dollars ($100); *provided*, *however*, that if any Plan Distribution is not made pursuant to this Section 6.10, such Distribution shall be added to any subsequent Plan Distribution to be made on behalf of the holder's Allowed Claim.  The Plan Administrator shall not be required to make any final Plan Distributions of Cash in an amount less than fifty dollars ($50) to any holder of an Allowed Claim.  If the amount of any final Plan Distributions to holders of Allowed Claims would be fifty dollars ($50) or less, then no further Plan Distribution shall be made by the Plan Administrator and any surplus Cash shall be donated and distributed to a Tax Code § 501(c)(3) tax-exempt organization selected by the Plan Administrator.

### 6.11    *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary in this Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

### 6.12    *Allocation of Distributions Between Principal and Interest.*

Except with respect to the FLFO Claims of the Prepetition FLFO Secured Parties or as otherwise required by law, consideration received in respect of an Allowed Claim is allocable first to the principal amount of the Claim (as determined for U.S. federal income tax purposes) and then, to the extent of any excess, to the remainder of the Claim, including any Claim for accrued but unpaid interest.

### 6.13    *Setoffs and Recoupments.*

Each Post-Effective Date Debtor, or such entity's designee as instructed by such Post-Effective Date Debtor or the Plan Administrator, may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim, and the distributions to be made pursuant to the Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action that a Post-Effective Date Debtor or its successors may hold against the holder of such Allowed Claim after the Effective Date to the extent such setoff or recoupment is either (a) agreed in amount among the relevant Post-Effective Date Debtor(s), and holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Post-Effective Date Debtor or its successor of any claims, rights, or Causes of Action that a Post-Effective Date Debtor or its successor or assign may possess against such holder.

### 6.14    *Withholding and Reporting Requirements.*

(a)    *Withholding Rights*.  In connection with this Plan, any party issuing any instrument or making any Plan Distribution described in this Plan shall comply with all applicable tax withholding and reporting requirements imposed by any Governmental Unit, and all Plan Distributions pursuant to this Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a Plan Distribution pursuant to this Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, income, withholding, and other taxes, on account of such Plan Distribution.  Any party issuing any instrument or making any Plan Distribution pursuant to this Plan has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  Notwithstanding any provision in the Plan to the contrary, any party issuing any instrument or making any Plan Distribution pursuant to this Plan shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to

facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.

(b) *Forms*. Any party entitled to receive any property as an issuance or Plan Distribution under this Plan shall, upon reasonable request, deliver to the Plan Administrator or such other Person designated by the Plan Administrator (which entity shall subsequently deliver to the Plan Administrator or such other Person any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a non-U.S. Person) Form W-8, unless such Person is exempt under the Tax Code and so notifies the Plan Administrator or such other Person. If such request is made by the Plan Administrator or such other Person designated by the Plan Administrator and the holder fails to comply before the date that is 210 days after the request is made, the amount of such Plan Distribution shall irrevocably revert to the Debtors and any Claim in respect of such Plan Distribution shall be discharged and forever barred from assertion against any Debtor and its respective property.

## 6.15 *Claims Paid by Third Parties.*

The Plan Administrator shall reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Post-Effective Date Debtors. If a holder of a Claim receives a Distribution from the Debtors or the Post-Effective Date Debtors on account of such Claim and also receives payment from a third party on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the Plan Distribution to the Debtors or the Post-Effective Date Debtors, to the extent the holder's total recovery on account of such Claim from the third party and under this Plan exceeds the total Allowed amount of such Claim as of the date of any such Plan Distribution under this Plan. The failure of such holder to timely repay or return such Distribution shall result in the holder owing the Post-Effective Date Debtors interest on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

## 6.16 *Claims Payable by Third Parties.*

No Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the insurance policies to which the Debtors' are a beneficiary until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy; *provided*, *however*, that this Section 6.16 shall not restrict Plan Distributions on an Allowed Claim that is Allowed in an amount that does not exceed an applicable self-insured retention or deductible amount under one or more such insurance policies. To the extent that one or more of the insurers agrees to satisfy a Claim in whole or in part, then immediately upon such insurers' satisfaction, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims register by the Plan Administrator without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VII.        PROCEDURES FOR DISPUTED CLAIMS.

### 7.1        *Allowance of Claims.*

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), Allowing such Claim. On and after the Effective Date, each of the Debtors or the Post-Effective Date Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately before the Effective Date.

### 7.2        *Claims Objections.*

Except insofar as a Claim is Allowed under the Plan, the Debtors or the Post-Effective Date Debtors (acting through the Plan Administrator), as applicable, shall be entitled to object to Claims. Except as otherwise expressly provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Post-Effective Date Debtors and the Plan Administrator shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Debtors' claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### 7.3        *Estimation of Claims.*

Before or after the Effective Date, the Debtors, the Post-Effective Date Debtors, and the Plan Administrator may at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any Disputed, contingent, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation of the amount of such Claim, the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.

### 7.4    *Adjustment to Claims Register Without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or the Post-Effective Date Debtors (at the direction of the Plan Administrator) upon stipulation between the parties in interest without a Claims objection having to be filed and without any further notice or action, order, or approval of the Bankruptcy Court.

### 7.5    *Time to File Objections to Claims.*

Any objections to a Claim shall be filed on or before the date that is the later of (a) 180 days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, upon a motion by the Post-Effective Date Debtors, as such deadline may be extended from time to time.

### 7.6    *Disallowance of Claims.*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Post-Effective Date Debtors.

### 7.7    *Amendments to Claims.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court, and the Post-Effective Date Debtors.

### 7.8    *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

### 7.9    *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date on which the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Plan Administrator shall provide to the holder of such Allowed Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required by the Bankruptcy Code.

### 7.10    *Claims Resolution Procedures Cumulative.*

All of the Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved in accordance with the Plan or any mechanism approved by the Bankruptcy Court.

## ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1    *General Treatment.*

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in Sections 8.4 or 8.5 of the Plan; or (v) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement, which Schedule of Assumed Contracts will identify executory contracts or unexpired leases for assumption and assignment to the Credit Bid Purchaser in accordance with the Credit Bid Purchase Agreement. To the extent the Decommissioning Agreement is an executory contract, it will be assumed and become the obligation of FWE I under the Plan of Merger.

(b)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Credit Bid Purchaser or Post-Effective Date Debtors, as applicable, have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Credit Bid Purchaser or Post-Effective Date Debtors, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(c)    To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

(d)    Subject to the terms of the Credit Bid Purchase Agreement, the Debtors reserve the right, on or before 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the Confirmation Hearing, or such other time as may be agreed in writing between

the Debtors and the applicable counterparty, to amend the Schedule of Assumed Contracts to add or remove any executory contract or unexpired lease; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the rescheduled or continued Confirmation Hearing, and this provision shall apply in the case of any and all subsequent adjournments and continuances of the Confirmation Hearing; *provided*, *further* that, subject to the terms of the Credit Bid Purchase Agreement, the Debtors may amend the Schedule of Assumed Contracts to add or delete any executory contracts or unexpired leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court.

### 8.2 *Determination of Cure Amounts and Deemed Consent.*

(a) Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date in accordance with the terms of the Credit Bid Purchase Agreement or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

(b) The Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Contracts. At least ten (10) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign to the Credit Bid Purchaser in accordance with the terms of the Credit Bid Purchase Agreement the contract or lease in connection with this Plan or the Credit Bid Purchase Agreement and, where applicable, setting forth the proposed Cure Amount (if any). **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.** Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Post-Effective Date Debtor, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Post-Effective Date Debtor, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section 8.2(b), shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance

of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)     If there is an Assumption Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court before such assumption being effective; provided, that, subject to the terms of the Credit Bid Purchase Agreement, the Debtors or Post-Effective Date Debtors, as applicable, may settle any Assumption Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)     To the extent an Assumption Dispute relates solely to the Cure Amount, subject to the terms of the Credit Bid Purchase Agreement, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease before the resolution of the Assumption Dispute; *provided*, that the Post-Effective Date Debtors or Credit Bid Purchaser, as applicable shall be responsible to pay the determined amount to be Allowed by the Bankruptcy Court or otherwise agreed to by such non-Debtor party.  The Debtors or Post-Effective Date Debtors, as applicable, subject to the terms of the Credit Bid Purchase Agreement, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(e)     Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease.  Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Person, upon the assumption of such executory contract or unexpired leases.

### 8.3     *Rejection Damages Claims.*

**In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 6B (General Unsecured Claims).  A proof of such Claim must be filed with the Bankruptcy Court and served upon counsel for the Debtors, Post-Effective Date Debtor, or the Plan Administrator, as applicable, by the later of (i) thirty (30) days after the filing and service of the notice of the occurrence of the Effective Date; and (ii) thirty (30) days after entry of an Order rejecting such contract or lease if such contract or lease is the subject of a pending Assumption Dispute.**

### 8.4 *Survival of the Debtors' Indemnification Obligations.*

Notwithstanding anything in the Plan (including Section 10.3 of the Plan), any Indemnification Obligation to indemnify current and former officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, members, managers, agents, or employees based upon any act or omission for or on behalf of the Debtors shall (a) remain in full force and effect, (b) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order, (c) not be limited, reduced or terminated after the Effective Date, and (d) survive unimpaired and unaffected irrespective of whether such Indemnification Obligation is owed for an act or event occurring before, on or after the Petition Date, *provided*, that the Post-Effective Date Debtors shall not indemnify officers, directors, members, or managers, as applicable, of the Debtors for any claims or Causes of Action that are not indemnified by such Indemnification Obligation. All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Post-Effective Date Debtors. Any claim based on the Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.

### 8.5 *Insurance Policies.*

(a) All insurance policies to which any Debtor is a party as of the Effective Date, including any D&O Policy, shall be deemed to be and treated as executory contracts and shall be assumed by and vest in the applicable Debtors or the Post-Effective Date Debtors and shall continue in full force and effect thereafter in accordance with their respective terms. Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in any D&O Policy.

(b) In addition, after the Effective Date, the Post-Effective Date Debtors or Plan Administrator shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date, and any current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such D&O Policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date to the extent set forth in such policies.

### 8.6 *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instruments, or other document is listed in any notices of assumed contracts.

### 8.7    *Reservation of Rights.*

(a)     Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.

(b)     Except as explicitly provided in the Plan, nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors or the Post-Effective Date Debtors under any executory or non-executory contract or unexpired or expired lease.

(c)     Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Post-Effective Date Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease.

(a)     If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under the Plan, the Debtors or the Post-Effective Date Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE IX.     CONDITIONS PRECEDENT TO OCCURRENCE OF EFFECTIVE DATE.

### 9.1    *Conditions Precedent to Effective Date.*

The Effective Date shall not occur unless all of the following conditions precedent have been satisfied or waived in accordance with the Plan:

(a)     the Plan Supplement has been filed;

(b)     the Bankruptcy Court shall have entered the Confirmation Order, which order shall be a Final Order;

(c)     the Definitive Documents shall be (i) consistent with the Restructuring Support Agreement and otherwise acceptable to the parties thereto consistent with their respective consent and approval rights as set forth in the Restructuring Support Agreement [and (ii) acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent solely to the extent provided and consistent with their consent and approval rights as set forth in this Plan;

(d)     the Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect;

65

(e)    all conditions precedent to the effectiveness of the Apache Definitive Documents shall have been satisfied or waived by the party having the right to waive the same;

(f)    the Debtors shall have implemented the Restructuring Transactions and all other transactions contemplated by the Plan and the Restructuring Support Agreement in a manner consistent in all respects with the Plan and Restructuring Support Agreement;

(g)    the Amended Organizational Documents shall become effective and in full force and effect as of the Effective Date;

(h)    the NewCo Organizational Documents shall become effective and in full force and effect as of the Effective Date;

(i)    the conditions precedent to the effectiveness of the First Lien Exit Facility Commitment Letter shall have been satisfied or duly waived in writing;

(j)    the conditions precedent to the effectiveness of the Second Lien Backstop Commitment Letter shall have been satisfied or duly waived in writing;

(k)    the conditions precedent to the effectiveness of the FLTL ERO Backstop Agreement shall have been satisfied or duly waived in writing;

(l)    the conditions precedent to the effectiveness of the SLTL ERO Backstop Agreement shall have been satisfied or duly waived in writing

(m)    the conditions precedent to the effectiveness of the First Lien Exit Facility (as determined in the First Lien Exit Facility Documents and the First Lien Exit Facility Commitment Letter) shall have been satisfied or duly waived in writing and the First Lien Exit Facility Lenders and the First Lien Exit Facility shall have closed substantially simultaneously with the effectiveness of the Plan;

(n)    the conditions precedent to the effectiveness of the Second Lien Exit Facility (as determined in the Second Lien Exit Facility Documents and the Second Lien Backstop Commitment Letter) shall have been satisfied or duly waived in writing and the Second Lien Exit Facility Lenders and the Second Lien Exit Facility shall have closed substantially simultaneously with the effectiveness of the Plan;

(o)    the New Intercreditor Agreement shall have been executed and delivered by each of the parties thereto;

(p)    the Equity Rights Offerings shall have been consummated;

(q)    the conditions precedent to the effectiveness of the Credit Bid Purchase Agreement shall have been satisfied or duly waived in writing in accordance with the terms of the Credit Bid Purchase Agreement and the Credit Bid Transaction Closing shall have occurred or will occur simultaneously with the effectiveness of the Plan, including, without limitation, payment of the New Money Consideration by Buyers to Sellers at Closing pursuant to the terms thereof;

(r)     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents (other than any such authorization, consent, regulatory approval, ruling, or document that is customarily obtained or completed after assignment, conveyance or vesting of an applicable Asset) that, after giving effect to the entry of the Confirmation Order, are necessary to implement and effectuate the Plan, including Bankruptcy Court approval, and each of the other transactions contemplated by the Restructuring, and such authorizations, consents, regulatory approvals, rulings, or documents shall not be subject to unfulfilled conditions and shall be in full force and effect, and all applicable regulatory waiting periods shall have expired;

(s)     no event of default under the DIP Documents shall have occurred or be continuing and an acceleration of the obligations or termination of the DIP Lenders' commitments under the DIP Documents shall not have occurred; and

(t)     all Restructuring Expenses shall have been indefeasibly paid in full in accordance with Section 2.6.

## 9.2     *Waiver of Conditions Precedent.*

(a)     With the prior written consent of the Required DIP Lenders, the Requisite FLTL Lenders, the conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan may be waived, in whole or in part, by the Debtors, without leave of or order of the Bankruptcy Court; *provided that*, a waiver of the conditions precedent to the occurrence of the Effective Date set forth in Sections 9.1(c), (d), (e), and (f) of the Plan shall also require the prior written consent of the Apache PSA Parties; *provided*, *further*, that a waiver of any of the conditions precedent to the occurrence of the Effective Date in Section 9.1 above shall also require the prior written (i) consent of the Prepetition FLFO Administrative Agent and the Exit First Lien Agent for all conditions precedent other than Section 9.1(d),(r), and (s) and (ii) reasonable consent for the conditions precedent in Section 9.1(r) and (s); *provided*, *further*, that a waiver of the conditions precedent to the occurrence of the Effective Date set forth in Sections 9.1(l), (p) and (t) shall also require the prior written consent of the Requisite SLTL Lenders. If any such condition precedent is waived pursuant to this section and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied, the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine, and the occurrence of the Effective Date shall foreclose any ability to challenge the Plan in any court.  If the Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur.

(b)     Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred before the taking of any other such action.

(c)     The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 9.3 *Effect of Failure of a Condition.*

If the conditions listed in Section 9.1 of the Plan are not satisfied or waived in accordance with Section 9.2 of the Plan on or before the Effective Date, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtors, (b) prejudice in any manner the rights of any Person, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Consenting Creditors, or any other Person.

## ARTICLE X.  EFFECT OF CONFIRMATION.

### 10.1 *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan shall bind every holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is Impaired under the Plan and whether such holder has accepted the Plan.

### 10.2 *Vesting of Assets.*

Except as otherwise provided in the Plan, the Confirmation Order, or any Plan Supplement, on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets of the Estates, including all claims, rights, and Causes of Action and any property acquired by the Debtors or the Post-Effective Date Debtors during the Chapter 11 Cases or under or in connection with the Plan shall vest in each respective Post-Effective Date Debtor free and clear of all Claims, Liens, charges, other encumbrances, and interests (other than any and all Liens securing the FLFO Claims or the obligations under the First Lien Exit Facility). Subject to the terms of the Plan, on and after the Effective Date, the Post-Effective Date Debtors and Plan Administrator may operate their businesses and may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Expense Claims) and Causes of Action without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Post-Effective Date Debtors may pay the charges that they incur on or after the Confirmation Date for Professional Persons' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

### 10.3 *Discharge of Claims Against and Interests in Debtors.*

Upon the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, the distributions, rights and treatment to be made under the Plan, shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on

Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, any obligations incurred in connection with or related to bonds and letters of credit (and any related agreements) issued before the Petition Date on behalf of the Debtors, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a proof of claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

Each holder (as well as any trustee or agent on behalf of such holder) of a Claim or Interest, and any affiliate of such holder, shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose before the Effective Date. Except as otherwise provided in the Plan, upon the Effective Date, all such holders of Claims and Interests and their affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor or any Post-Effective Date Debtor

### 10.4 *Pre-Confirmation Injunctions and Stays.*

Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court, all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the date of entry of the Confirmation Order, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.5 *Injunction Against Interference With Plan.*

Except as otherwise provided in the Plan or in the Confirmation Order, upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

**10.6** *Plan Injunction.*

(a)    Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)    By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**10.7** *Releases.*

(a)    **RELEASES BY THE DEBTORS. AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED**

**PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

71

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b)     RELEASES BY HOLDERS OF CLAIMS AND INTERESTS. AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT THE RELEASING PARTIES OR THEIR

ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

(c) *Release of Liens*. Except as otherwise specifically provided in the Plan (including all Liens securing the FLFO Claims or the First Lien Exit Facility) or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors. For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Secured Parties, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

## 10.8 *Exculpation.*

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND

CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

### 10.9 *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

### 10.10 *Subordinated Securities Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments thereof under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 510(a), 510(b), or 510(c) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 10.11 *Retention of Causes of Action and Reservation of Rights.*

(a) Except as otherwise provided in the DIP Order or Plan, including Sections 10.5, 10.6, 10.7, 10.8 and 10.9, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law. The Post-Effective Date Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

(b) Notwithstanding Section 10.11(a), on the Effective Date, the Post-Effective Date Debtors shall be deemed to have released all preference actions pursuant to section 547 of the Bankruptcy Code against the holders of Unsecured Trade Claims and General Unsecured Claims (in each case, solely in their capacity as holders of Unsecured Trade Claims and General Unsecured Claims, as applicable).

### 10.12 *Ipso Facto and Similar Provisions Ineffective.*

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any entity based on any of the following: (a) the insolvency or financial condition of a Debtor; (b) the commencement of the Chapter 11 Cases; (c) the confirmation or consummation of the Plan, including any change of control that shall occur as a result of such consummation; or (d) the Restructuring.

### 10.13 *Indemnification and Reimbursement Obligations.*

For purposes of the Plan, (a) Indemnification Obligations to current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity before, on or subsequent to the Petition Date shall be assumed by the Post-Effective Date Debtors and (b) Indemnification Obligations of the Debtors arising from services as current and former directors, officers, members, managers, agents or employees of any of the

Debtors who served in such capacity during the period from and after the Petition Date shall be Administrative Expense Claims. In addition, after the Effective Date, the Post-Effective Date Debtors shall not terminate or otherwise reduce the coverage under any current and former directors', officers', members', managers', agents' or employees' insurance policies (including any "tail policy") in effect as of the Petition Date, and all current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date to the extent set forth in such policies.

## ARTICLE XI.  RETENTION OF JURISDICTION.

### 11.1 *Retention of Jurisdiction.*

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)  to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and any disputes over Cure Amounts resulting therefrom;

(b)  to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the entry of the Confirmation Order;

(c)  to hear and resolve any disputes arising from or related to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)  to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan and the Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(e)  to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(f)  to enter, implement, or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)  to issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person

or other Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)        to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)        to hear and determine all Fee Claims;

(j)        to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(k)        to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing or related to any of the foregoing;

(l)        to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release, exculpation, or injunction provisions set forth in the Plan, following the occurrence of the Effective Date;

(m)        to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)        to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)        to hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(p)        to resolve any disputes concerning whether a Person or entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose for determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(q)        to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

(r)        to recover all Assets of the Debtors and property of the Estates, wherever located;

(s)   to hear and determine matters related to the DIP Facility and the DIP Order; and

(t)   to enter a final decree closing each of the Chapter 11 Cases.

Notwithstanding anything in this Article XI to the contrary, as of the Effective Date, the Exit Facility Documents and any other documents related thereto, including the New Intercreditor Agreement, shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.   MISCELLANEOUS PROVISIONS.

### 12.1   *Payment of Statutory Fees*

On the Effective Date and thereafter as may be required, the Debtors or the Post-Effective Date Debtors, as applicable, shall pay all Statutory Fees that are due and payable, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case.  The obligations under this Section 12.1 shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

### 12.2   *Exemption from Certain Transfer Taxes.*

Pursuant to and to the fullest extent permitted by section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust or other security interest, (c) all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under the Plan, (d) any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, (e) the grant of collateral under the Standby Loan Agreement and (f) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, or in furtherance of, or in connection with, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, parish, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

**12.3** _**Request for Expedited Determination of Taxes.**_

The Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

**12.4** _**Dates of Actions to Implement Plan.**_

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**12.5** _**Amendments.**_

(a) <u>Plan Modifications</u>. Subject to (i) the consent rights set forth in the Restructuring Support Agreement, (ii) the reasonable consent of the Creditors' Committee solely to the extent that it adversely impacts the holders of General Unsecured Claims or Unsecured Trade Claims and (iii) the reasonable consent of the Prepetition FLFO Administrative Agent, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors, with (i) the consent of the Required DIP Lenders, and the Requisite FLTL Lenders, (ii) the reasonable consent of the Creditors' Committee solely to the extent that it adversely impacts the holders of General Unsecured Claims or Unsecured Trade Claims, and (iii) the reasonable consent of the Prepetition FLFO Administrative Agent, may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented. The Debtors, subject to (i) the consent of the Required DIP Lenders and the Requisite FLTL Lenders and (ii) the applicable consent rights of the Prepetition FLFO Administrative Agent, shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement in accordance with the terms of the Plan and the Restructuring Support Agreement or the First Lien Exit Facility Commitment Letter, as applicable, through the Effective Date.

(b) <u>Certain Technical Amendments</u>. Before the Effective Date, the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement, may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court.

**12.6** _**Revocation or Withdrawal of Plan.**_

The Debtors reserve the right to revoke or withdraw the Plan before the Effective Date as to any or all of the Debtors. If, with respect to a Debtor, the Plan has been revoked or withdrawn before the Effective Date, or if confirmation or the occurrence of the Effective Date

as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person; (ii) prejudice in any manner the rights of such Debtor or any other Person; or (iii) constitute an admission of any sort by any Debtor or any other Person.

## 12.7 *Severability.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation by the Bankruptcy Court, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with this section, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Post-Effective Date Debtors (as the case may be) and (c) nonseverable and mutually dependent.

## 12.8 *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that a Plan Supplement document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Texas, without giving effect to the principles of conflicts of laws thereof.

## 12.9 *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Post-Effective Date Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns.

## 12.10 *Successors and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each such Person.

### 12.11   *Entire Agreement.*

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 12.12   *Computing Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.13   *Exhibits to Plan.*

All exhibits, schedules, supplements, and appendices to the Plan (including any other documents to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date) are incorporated into and are a part of the Plan as if set forth in full in the Plan.

### 12.14   *Notices.*

All notices, requests, and demands hereunder shall be in writing (including by facsimile or email transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)      If to the Debtors:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway, S. Suite 1200
Houston, Texas 77042
Attention:  Michael Dane and Thomas R. Lamme

– and –

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Attn:  Matthew S. Barr, Esq., Alfredo R. Pérez, Esq., and Jessica Liou, Esq.
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for the Debtors*

(b)      If to the DIP Lenders or FLTL Lenders:

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue
New York, NY 10017
Attn: Damian Schaible, Esq. and Natasha Tsiouris, Esq.
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

(c)      If to the Post-Effective Date Debtors:

[Plan Administrator]
[Plan Administrator Address]

– and –

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Attn: Matthew S. Barr, Esq., Alfredo R. Pérez, Esq., and Jessica Liou, Esq.
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Post-Effective Date Debtors*

A notice is deemed to be given and received (a) if sent by first-class mail, personal delivery, or courier, on the date of delivery if it is a Business Day and the delivery was made before 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (b) if sent by electronic mail, when the sender receives an email from the recipient acknowledging receipt; *provided* that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this Section. Any party may change its address for service from time to time by providing a notice in accordance with the foregoing. Any element of a party's address that is not specifically changed in a notice will be assumed not to be changed.

After the occurrence of the Effective Date, the Post-Effective Date Debtors and Plan Administrator have authority to send a notice to entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; *provided*, that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary. After the occurrence of the Effective Date, the Post-Effective Date Debtors are authorized to limit the list of entities receiving documents pursuant to Bankruptcy Rule 2002 to the U.S. Trustee and those entities that have filed such renewed requests.

### 12.15  *Reservation of Rights.*

Except as otherwise provided herein, the Plan shall be of no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the filing of the Plan, any statement or provision of the Plan, or the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of (a) the Debtors

with respect to any Claims or Interests before the Effective Date or (b) any holder of a Claim or Interest or other entity before the Effective Date.

### 12.16 *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases, provided that following the Effective Date, the Creditors' Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) Claims and/or applications, and any relief related thereto, for compensation by Professional Persons retained in the Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) any appeals of the Confirmation Order or other appeals to which the Creditors' Committee is a party.

[*Remainder of Page Intentionally Left Blank*]

Dated: March 24, 2021
       Houston, Texas

Respectfully submitted,

**FIELDWOOD ENERGY LLC**

By: Fieldwood Energy Inc., its managing member

By: _____
Name: Thomas R. Lamme
Title: Senior Vice President and General Counsel

**FIELDWOOD ENERGY INC.**

By: _____
Name: Thomas R. Lamme
Title: Senior Vice President and General Counsel

**FIELDWOOD ENERGY OFFSHORE LLC**

By: _____
Name: Thomas R. Lamme
Title: Vice President

**FIELDWOOD ONSHORE LLC**

By: _____
Name: Thomas R. Lamme
Title: Vice President

**FIELDWOOD SD OFFSHORE LLC**

By: _____
Name: Thomas R. Lamme
Title: Vice President

**FIELDWOOD OFFSHORE LLC**

By: Fieldwood Energy LLC, its managing member

By: Fieldwood Energy Inc., its managing member

By: _____

Name:  Thomas R. Lamme
Title:    Senior Vice President and General Counsel

**DYNAMIC OFFSHORE RESOURCES NS, LLC**

By: _____

Name:  Thomas R. Lamme
Title:    Vice President

**FW GOM PIPELINE, INC.**

By: _____

Name:  Thomas R. Lamme
Title:    Vice President

**GOM SHELF LLC**

By: Fieldwood Energy LLC, its managing member

By: Fieldwood Energy Inc., it managing member

By: _____

Name:  Thomas R. Lamme
Title:    Senior Vice President and General Counsel

**BANDON OIL AND GAS GP, LLC**

By: _____

Name:  Thomas R. Lamme
Title:    Vice President

*[Signature Page to Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors]*

**BANDON OIL AND GAS, LP**

By: Bandon Oil and Gas, LLC, its general partner

By: _Thomas R. Lamme_
Name:   Thomas R. Lamme
Title:   Vice President

**FIELDWOOD ENERGY SP LLC**

By: _Thomas R. Lamme_
Name:   Thomas R. Lamme
Title:   Vice President

**GALVESTON BAY PIPELINE LLC**

By: Fieldwood Onshore LLC, its managing member

By: _Thomas R. Lamme_
Name:   Thomas R. Lamme
Title:   Vice President

**GALVESTON BAY PROCESSING LLC**

By: Fieldwood Onshore LLC, its managing member

By: _Thomas R. Lamme_
Name:   Thomas R. Lamme
Title:   Vice President

[*Signature Page to Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors*]

**Exhibit B**
**Leases, Rights of Way and Rights of Use and Easement Related to**
**Purchased Oil & Gas Lease Interests**

# Purchased Oil & Gas Lease Interests[1]

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|-------------------|----------|-----|--------------|---------|
| AT 023 | G35015 | Federal | RT | 8/1/2013 | 5,760 | Murphy E&P USA | 8% | PRIMARY | |
| BS 25 | G31442 | Federal | RT | 2/1/2008 | 2,079 | Tana Exp | 25% | UNIT | |
| BS 25 | SL19718 | SL-LA | WI | 7/9/2008 | 154 | Tana Exp | 25% | Active | |
| BS 45 | SL15683 | SL-LA | WI A | 4/14/1997 | – | Southern Oil of Louisiana | 38% | UNIT | [2] |
| BS 52 | SL17675 | SL-LA | WI A | 12/16/2002 | – | Southern Oil of Louisiana | 38% | UNIT | [3] |
| BS 52 | SL17860 | SL-LA | WI | 8/18/2003 | – | Southern Oil of Louisiana | 15% | UNIT | |
| EC 345 | G15156 | Federal | ORRI | 8/1/1995 | 2,500 | Talos ERT | 1% | PROD (production ceased 4/28/20) | |
| EW 1009 | G34878 | Federal | RT | 8/1/2013 | 5,760 | Fieldwood En | 50% | UNIT | |
| EW 1010 | G34879 | Federal | RT | 8/1/2013 | 5,760 | Fieldwood En | 50% | UNIT | |
| EW 1011 | G34880 | Federal | RT | 8/1/2013 | 1,500 | Fieldwood En | 50% | UNIT | |
| EW 789 | G35805 | Federal | ORRI | 7/1/2016 | 5,760 | Walter O&G | 1% | UNIT | |
| EW 790 | G33140 | Federal | OP 1 | 7/1/2009 | 5,753 | Fieldwood En | 100% | UNIT | |
| EW 790 | G33140 | Federal | OP 2 | 7/1/2009 | 5,753 | Fieldwood En | 100% | UNIT | |
| EW 790 | G33140 | Federal | ORRI | 7/1/2009 | 5,753 | Walter O&G | 1% | UNIT | |
| EW 790 | G33140 | Federal | ORRI | 7/1/2009 | 5,753 | Walter O&G | 1% | UNIT | |
| EW 828 | G35806 | Federal | RT | 6/1/2016 | 3,731 | Fieldwood En Off | 100% | PRIMARY | |
| EW 834 | G27982 | Federal | ORRI | 7/1/2006 | 5,760 | Walter O&G | 1% | UNIT | |
| EW 835 | G33707 | Federal | ORRI | 5/1/2010 | 364 | Walter O&G | 1% | UNIT | |
| GC 039 B | G36476 | Federal | RT | 9/1/2013 | 450 | Fieldwood En | 50% | PRIMARY | |

[1] The Debtors and the Consenting FLTL Lenders reserve the right to amend, modify, or supplement this schedule subject to any consent rights under the Restructuring Support Agreement.

[1] Represents leases in which the Credit Bid Purchaser is to acquire all of the Debtors' right, title and interest in such lease (less and except the right, title and interest acquired by FWE from Apache and/or held by GOM Shelf); as to all remaining leases on this schedule (except those referenced in footnotes [5]-[7] below), the Credit Bid Purchaser is to obtain all of the Debtors' right, title and interest in such leases.

[2] This lease has different ownership in 4 different portions, and a Seller (Fieldwood Offshore) has a working interest (37.5%) in only one of these 4 portions.

[3] This lease has different ownership in 3 different portions, and a Seller (Fieldwood Offshore) has a working interest (37.5%) in only one of these 3 portions.

[4] Fieldwood Energy Offshore has two ORRIs: a 1.225% ORRI from assignment filed with BOEM 2/09/2015 and another 3.43% (or 49% of 7%) ORRI that is granted each year. However, as to the SS 005 ST01 well, its combined ORRI is only 3.92% until 5.8 million barrels of oil equivalent from this well.

[5] The Credit Bid Purchaser to acquire record title solely as to the W/2 and SE/4 of the block. The record title and the Debtors' operating rights solely as to the NE/4 of the block are to be abandoned.

[6] FWE I is to acquire solely the operating rights as to the NE/4 of this block; the Credit Bid Purchaser is to obtain the Debtors' overriding royalty interest in this lease; and the Debtors' remaining interests in this lease are to be abandoned.

[7] Represents leases where the Credit Bid Purchaser is to acquire solely the Debtors' overriding royalty interests; the Debtors' remaining interests in these leases are to be abandoned.

Key:    RT = Record Title; OP = Operating Rights; ORRI = Overriding Royalty Interest; CONT = Contractual; OPRTS = Operating Rights; WI = Working Interest

WEIL:\97879239\3\45327.0005

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|---|---|---|---|---|---|---|---|---|---|
| GC 040 | G34536 | Federal | RT | 11/1/2012 | 5,760 | Fieldwood En | 50% | UNIT | |
| GC 041 | G34537 | Federal | RT | 10/1/2012 | 1,783 | Fieldwood En | 50% | UNIT | |
| GC 064 | G34539 | Federal | RT | 8/1/2012 | 5,760 | Fieldwood En Off | 49% | PROD | |
| GC 065 | G05889 | Federal | OP | 7/1/1983 | 5,760 | Fieldwood En Off | 49% | UNIT | |
| GC 108 | G14668 | Federal | OP | 7/1/1994 | 5,760 | Fieldwood En Off | 49% | UNIT | |
| GC 109 | G05900 | Federal | OP | 7/1/1983 | 5,760 | Fieldwood En Off | 49% | UNIT | |
| GC 153 | G36814 | Federal | RT | 11/1/2019 | 5,760 | Fieldwood En | 100% | PRIMARY | |
| GC 198 | G36021 | Federal | RT | 6/1/2017 | 5,760 | Fieldwood En Off | 100% | PRIMARY | |
| GC 200 | G12209 | Federal | OP | 5/1/1990 | 5,760 | Fieldwood En Off | 53% | UNIT | |
| GC 200 | G12209 | Federal | RT | 5/1/1990 | 5,760 | Fieldwood En Off | 100% | UNIT | |
| GC 201 | G12210 | Federal | ORRI | 5/1/1990 | 5,760 | LLOG Exp Off | 5% | UNIT | |
| GC 201 | G12210 | Federal | RT | 5/1/1990 | 5,760 | Fieldwood En Off | 100% | UNIT | [5] |
| GC 238 | G26302 | Federal | ORRI | 7/1/2004 | 5,760 | Talos ERT | 3% | PROD | |
| GC 238 | G26302 | Federal | OP | 7/1/2004 | 5,760 | BHP Billiton Pet GOM | 40% | PROD | |
| GC 243 | G20051 | Federal | ORRI | 7/1/1998 | 5,760 | Walter O&G | 5% | PROD | [4] |
| GC 244 | G11043 | Federal | RT | 5/1/1989 | 5,760 | Fieldwood En Offshore | 100% | UNIT | |
| GC 282 | G16727 | Federal | OP | 9/1/1996 | 5,760 | BHP Billiton Pet GOM | 25% | PROD | |
| GC 282 | G16727 | Federal | ORRI | 9/1/1996 | 5,760 | Talos ERT | 2% | PROD | |
| GC 39 A | G34966 | Federal | RT | 9/1/2013 | 540 | Fieldwood En | 50% | UNIT | |
| GC 39 A | G34966 | Federal | OP | 9/1/2013 | 540 | Fieldwood En | 50% | UNIT | |
| GC 679 | G21811 | Federal | OP 2 | 7/1/2000 | 5,760 | Fieldwood En | 43% | PROD | |
| GC 679 | G21811 | Federal | RT | 7/1/2000 | 5,760 | Fieldwood En | 38% | PROD | |
| GC 768 | G21817 | Federal | OP 1 | 6/1/2000 | 5,760 | Anadarko Pet | 50% | PROD | |
| GC 768 | G21817 | Federal | OP 2 | 6/1/2000 | 5,760 | Fieldwood En | 43% | PROD | |
| GC 768 | G21817 | Federal | RT | 6/1/2000 | 5,760 | Fieldwood En | 100% | PROD | |
| GI 110 | G13943 | Federal | RT | 8/1/1993 | 5,000 | Fieldwood En | 50% | UNIT | [1] |
| GI 116 | G13944 | Federal | RT | 7/1/1993 | 5,000 | Fieldwood En | 50% | UNIT | [1] |
| GI 116 | G13944 | Federal | OP | 7/1/1993 | 5,000 | Fieldwood En | 50% | UNIT | [1] |
| S/2 GI 32 | 00174 | Federal | RT | 7/17/1948 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| S/2 GI 32 | 00174 | Federal | OP 1 | 7/17/1948 | 2,500 | BP E&P | 25% | UNIT | [1] |
| S/2 GI 32 | 00174 | Federal | OP 2 | 7/17/1948 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| E/2 GI 39 | 00126 | Federal | RT | 4/21/1947 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| E/2 GI 39 | 00126 | Federal | OP 1 | 4/21/1947 | 2,500 | BP E&P | 25% | UNIT | [1] |
| E/2 GI 39 | 00126 | Federal | OP 2 | 4/21/1947 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| W/2 GI 39 | 00127 | Federal | RT | 4/21/1947 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| W/2 GI 39 | 00127 | Federal | OP 1 | 4/21/1947 | 2,500 | BP E&P | 25% | UNIT | [1] |
| W/2 GI 39 | 00127 | Federal | OP 2 | 4/21/1947 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| E/2 GI 40 | 00128 | Federal | RT | 4/21/1947 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| GI 40 | 00128 | Federal | OP 1 | 4/21/1947 | 5,000 | BP E&P | 25% | UNIT | [1] |
| GI 40 | 00128 | Federal | OP 2 | 4/21/1947 | 5,000 | GOM Shelf | 25% | UNIT | [1] |

2

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|-------------------|----------|-----|--------------|---------|
| E/2 GI 41 | 00129 | Federal | RT | 4/21/1947 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| E/2 GI 41 | 00129 | Federal | OP 1 | 4/21/1947 | 2,500 | BP E&P | 25% | UNIT | [1] |
| E/2 GI 41 | 00129 | Federal | OP 2 | 4/21/1947 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| W/2 GI 41 | 00130 | Federal | OP 1 | 4/21/1947 | 2,500 | BP E&P | 25% | UNIT | [1] |
| W/2 GI 41 | 00130 | Federal | OP 2 | 4/21/1947 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| W/2 GI 41 | 00130 | Federal | RT | 4/21/1947 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| GI 42 | 00131 | Federal | RT | 4/21/1947 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| GI 42 | 00131 | Federal | OP 1 | 4/21/1947 | 5,000 | BP E&P | 25% | UNIT | [1] |
| GI 42 | 00131 | Federal | OP 2 | 4/21/1947 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| GI 43 | 00175 | Federal | RT | 7/17/1948 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| GI 43 | 00175 | Federal | OP 1 | 7/17/1948 | 5,000 | BP E&P | 25% | UNIT | [1] |
| GI 43 | 00175 | Federal | OP 2 | 7/17/1948 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| N/2 GI 44 | 00176 | Federal | RT | 7/17/1948 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| N/2 GI 44 | 00176 | Federal | OP 1 | 7/17/1948 | 2,500 | BP E&P | 25% | UNIT | [1] |
| N/2 GI 44 | 00176 | Federal | OP 2 | 7/17/1948 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| GI 46 | 00132 | Federal | RT | 4/21/1947 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| GI 46 | 00132 | Federal | OP 1 | 4/21/1947 | 5,000 | BP E&P | 25% | UNIT | [1] |
| GI 46 | 00132 | Federal | OP 2 | 4/21/1947 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| GI 47 | 00133 | Federal | RT | 4/21/1947 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| GI 47 | 00133 | Federal | OP 1 | 4/21/1947 | 5,000 | BP E&P | 25% | UNIT | [1] |
| GI 47 | 00133 | Federal | OP 2 | 4/21/1947 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| GI 48 | 00134 | Federal | RT | 4/21/1947 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| GI 48 | 00134 | Federal | OP 1 | 4/21/1947 | 5,000 | BP E&P | 25% | UNIT | [1] |
| GI 48 | 00134 | Federal | OP 2 | 4/21/1947 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| N/2 GI 52 | 00177 | Federal | RT | 7/17/1948 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| N/2 GI 52 | 00177 | Federal | OP 2 | 7/17/1948 | 2,500 | BP E&P | 25% | UNIT | [1] |
| HI 176 | G27509 | Federal | ORRI | 1/1/2006 | 5,760 | Castex Off | 3% | PROD | |
| MC 110 | G18192 | Federal | RT | 8/1/1997 | 5,760 | Talos | 8% | PROD | [1] |
| MC 110 | G18192 | Federal | OP | 8/1/1997 | 5,760 | Talos | 8% | PROD | [1] |
| MC 118 | G35963 | Federal | RT | 8/1/2017 | 5,760 | Chevron USA | 5% | PRIMARY | |
| MC 119 | G36537 | Federal | RT | 7/1/2019 | 5,760 | Chevron USA | 5% | PRIMARY | |
| MC 162 | G36880 | Federal | RT | 8/1/2020 | 5,760 | Chevron USA | 5% | PRIMARY | |
| MC 163 | G36538 | Federal | RT | 7/1/2019 | 5,760 | Chevron USA | 5% | PRIMARY | |
| MC 171 | G34428 | Federal | RT | 12/1/2012 | 5,760 | Fieldwood En | 100% | PRIMARY | |
| MC 172 | G34429 | Federal | RT | 12/1/2012 | 5,760 | Fieldwood En | 100% | PRIMARY | |
| MC 206 | G36540 | Federal | RT | 7/1/2019 | 5,760 | Chevron USA | 5% | PRIMARY | |
| MC 297 | G34434 | Federal | RT | 11/1/2012 | 5,760 | Fieldwood En | 70% | PRIMARY | |
| MC 380 | G36544 | Federal | RT | 7/1/2019 | 5,760 | Fieldwood En | 100% | PRIMARY | |
| MC 424 | G36545 | Federal | RT | 7/1/2019 | 5,760 | Fieldwood En | 100% | PRIMARY | |
| MC 435 | G36772 | Federal | RT | 11/1/2019 | 5,760 | Fieldwood En | 100% | PRIMARY | |

WEIL:\97879239\3\45327.0005

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|-------------------|----------|-----|--------------|---------|
| MC 436 | G36773 | Federal | RT | 11/1/2019 | 5,760 | Fieldwood En | 100% | PRIMARY | |
| MC 474 | G35825 | Federal | RT | 7/1/2016 | 5,760 | BP E&P | 24% | PRIMARY | |
| MC 474 | G35825 | Federal | OP | 7/1/2016 | 5,760 | BP E&P | 13% | PRIMARY | |
| MC 518 | G35828 | Federal | RT | 7/1/2016 | 5,760 | BP E&P | 24% | PRIMARY | |
| MC 518 | G35828 | Federal | OP | 7/1/2016 | 5,760 | BP E&P | 13% | PRIMARY | |
| MC 519 | G27278 | Federal | RT | 7/1/2005 | 5,760 | BP E&P | 65% | PROD | |
| MC 519 | G27278 | Federal | OP 2 | 7/1/2005 | 5,760 | Fieldwood En | 49% | PROD | |
| MC 519 | G27278 | Federal | OP 3 | 7/1/2005 | 5,760 | Fieldwood En | 49% | PROD | |
| MC 519 | G27278 | Federal | OP 4 | 7/1/2005 | 5,760 | BP E&P | 26% | PROD | |
| MC 519 | G27278 | Federal | OP 5 | 7/1/2005 | 5,760 | BP E&P | 26% | PROD | |
| MC 519 | G27278 | Federal | OP 6 | 7/1/2005 | 5,760 | BP E&P | 26% | PROD | |
| MC 562 | G19966 | Federal | RT | 7/1/1998 | 5,760 | BP E&P | 13% | PROD | |
| MC 562 | G19966 | Federal | OP 2 | 7/1/1998 | 5,760 | BP E&P | 13% | PROD | |
| MC 562 | G19966 | Federal | OP 3 | 7/1/1998 | 5,760 | BP E&P | 13% | PROD | |
| MC 563 | G21176 | Federal | OP 2 | 7/1/1999 | 5,760 | Fieldwood En | 23% | PROD | |
| MC 563 | G21176 | Federal | ORRI | 3/17/1999 | 5,760 | Kosmos En GOM Op | 0% | PROD | |
| MC 691 | G36400 | Federal | RT | 12/1/2018 | 5,760 | Fieldwood En | 50% | PRIMARY | |
| MC 697 | G28021 | Federal | RT | 4/1/2006 | 540 | Fieldwood En | 54% | UNIT | |
| MC 698 | G28022 | Federal | RT | 7/1/2006 | 5,760 | Fieldwood En | 54% | UNIT | |
| MC 742 | G32343 | Federal | RT B | 9/1/2008 | 1,440 | Fieldwood En | 54% | UNIT | |
| MC 742 | G32343 | Federal | RT A | 9/1/2008 | 4,320 | Fieldwood En | 100% | UNIT | |
| MC 743 | G36401 | Federal | RT | 11/1/2018 | 5,760 | Chevron USA | 25% | PRIMARY | |
| MC 782 | G33757 | Federal | RT | 7/1/2010 | 5,760 | Fieldwood En | 45% | PROD | |
| MC 789 | G36557 | Federal | RT | 7/1/2019 | 5,760 | Fieldwood En | 100% | PRIMARY | |
| MC 793 | G33177 | Federal | ORRI | 7/1/2009 | 5,760 | Walter O&G | 1% | UNIT | |
| MC 904 | G36566 | Federal | RT | 7/1/2019 | 5,760 | Fieldwood En | 59% | PRIMARY | |
| MC 905 | G36405 | Federal | RT | 11/1/2018 | 5,760 | Fieldwood En | 59% | PRIMARY | |
| MC 948 | G28030 | Federal | RT | 7/1/2006 | 5,760 | Fieldwood En | 59% | UNIT | |
| MC 949 | G32363 | Federal | RT | 7/1/2008 | 5,760 | Fieldwood En | 59% | UNIT | |
| MC 992 | G24133 | Federal | RT A | 7/1/2002 | 5,760 | Fieldwood En | 53% | UNIT | |
| MC 992 | G24133 | Federal | RT B | 7/1/2002 | 5,760 | Fieldwood En | 59% | UNIT | |
| MC 993 | G24134 | Federal | RT A | 7/1/2002 | 5,760 | Fieldwood En | 45% | UNIT | |
| MC 993 | G24134 | Federal | RT B | 7/1/2002 | 5,760 | Fieldwood En | 59% | UNIT | |
| SM 149 | G02592 | Federal | RT | 5/1/1974 | 2,500 | Fieldwood En | 50% | PROD | [1] |
| SM 149 | G02592 | Federal | OP | 5/1/1974 | 2,500 | Fieldwood En | 50% | PROD | [1] |
| SM 149 | G02592 | Federal | ORRI | 5/1/1974 | 2,500 | Fieldwood En | 4% | PROD | [1] |
| SM 40 | G13607 | Federal | RT | 8/1/1992 | 5,000 | Fieldwood En Off | 100% | TERMIN | |
| SM 41 | G01192 | Federal | OP 1 | 6/1/1962 | 5,000 | Fieldwood En Off | 100% | PROD | [1] |
| SM 48 | 00786 | Federal | ORRI | 2/24/1960 | 5,000 | Fieldwood En | 3% | PROD (production ceased 8/16/20) | [1] |

WEIL:\97879239\3\45327.0005

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|---|---|---|---|---|---|---|---|---|---|
| SP 61 | G01609 | Federal | ORRI | 7/1/1967 | 5,000 | Fieldwood En | 19% | UNIT | [6] |
| SS 301 | G10794 | Federal | RT | 5/1/1989 | 5,000 | Fieldwood En Off | 65% | SOP extension request pending | [1] |
| SS 301 | G10794 | Federal | OP 1 | 5/1/1989 | 5,000 | Fieldwood En Off | 100% | SOP extension request pending | [1] |
| SS 79 | G15277 | Federal | RT | 8/1/1995 | 5,000 | Fieldwood En Off | 33% | PROD | |
| SS 79 | G15277 | Federal | OP 1 | 8/1/1995 | 5,000 | Fieldwood En Off | 51% | PROD | |
| ST 287 | G24987 | Federal | RT | 5/1/2003 | 5,000 | Fieldwood En | 100% | PROD | |
| ST 287 | G24987 | Federal | OP 1 | 5/1/2003 | 5,000 | Fieldwood En | 100% | PROD | |
| ST 287 | G24987 | Federal | OP 2 | 5/1/2003 | 5,000 | Fieldwood En | 50% | PROD | |
| ST 308 | G21685 | Federal | RT | 6/1/2000 | 5,000 | Fieldwood En | 100% | PROD | |
| ST 308 | G21685 | Federal | OP 1 | 6/1/2000 | 5,000 | Fieldwood En | 100% | PROD | |
| ST 308 | G21685 | Federal | OP 2 | 6/1/2000 | 5,000 | Fieldwood En | 50% | PROD | |
| ST 53 | G04000 | Federal | RT | 3/1/1979 | 5,000 | Fieldwood En | 50% | PROD | [1] |
| ST 53 | G04000 | Federal | OP 1 | 3/1/1979 | 5,000 | Fieldwood En | 50% | PROD | [1] |
| ST 53 | G04000 | Federal | OP 2 | 3/1/1979 | 5,000 | Fieldwood En | 50% | PROD | [1] |
| ST 67 | 00020 | Federal | CONT | 4/25/1947 | 5,000 | Fieldwood En | 20% | UNIT | [1] |
| VR 229 | G27070 | Federal | RT A | 5/1/2005 | 1,250 | Fieldwood En Off | 50% | PROD | |
| VR 229 | G27070 | Federal | RT B | 5/1/2005 | 3,750 | Fieldwood En Off | 50% | PROD | |
| VR 362 | G10687 | Federal | RT | 6/1/1989 | 5,000 | Fieldwood En Off | 100% | UNIT (production ceased 8/22/20) | |
| VR 362 | G10687 | Federal | OP | 6/1/1989 | 5,000 | Fieldwood En Off | 83% | UNIT (production ceased 8/22/20) | |
| VR 363 | G09522 | Federal | RT | 5/1/1988 | 5,000 | Fieldwood En | 100% | UNIT (production ceased 8/22/20) | |
| VR 363 | G09522 | Federal | OP 1 | 5/1/1988 | 5,000 | Fieldwood En Off | 100% | UNIT (production ceased 8/22/20) | |
| VR 363 | G09522 | Federal | OP 2 | 5/1/1988 | 5,000 | Fieldwood En | 100% | UNIT (production ceased 8/22/20) | |
| VR 363 | G09522 | Federal | OP 3 | 5/1/1988 | 5,000 | Fieldwood En | 50% | UNIT (production ceased 8/22/20) | |
| VR 371 | G09524 | Federal | RT | 7/1/1988 | 5,000 | Fieldwood En Off | 100% | PROD | |
| VR 371 | G09524 | Federal | OP | 7/1/1988 | 5,000 | Fieldwood En Off | 83% | PROD | |
| VR 78 | G04421 | Federal | RT | 11/1/1980 | 5,000 | Fieldwood En | 100% | PROD | |
| VR 78 | G04421 | Federal | OP | 11/1/1980 | 5,000 | Fieldwood En | 81% | PROD | |
| WD 57, WD 79, WD 80 | G01449 | Federal | ORRI | 5/1/1966 | 3,125 | Fieldwood En Off | 3% | UNIT | [7] |
| S/2 WD 67 | 00179 | Federal | RT | 7/17/1948 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| S/2 WD 67 | 00179 | Federal | OP 1 | 7/17/1948 | 2,500 | BP E&P | 25% | UNIT | [1] |
| S/2 WD 67 | 00179 | Federal | OP 2 | 7/17/1948 | 2,500 | GOM Shelf | 25% | UNIT | [1] |
| S/2 WD 68 | 00180 | Federal | RT | 7/17/1948 | 1,833 | GOM Shelf | 25% | UNIT | [1] |
| S/2 WD 68 | 00180 | Federal | OP 1 | 7/17/1948 | 1,833 | BP E&P | 25% | UNIT | [1] |

5

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|---|---|---|---|---|---|---|---|---|---|
| S/2 WD 68 | 00180 | Federal | OP 2 | 7/17/1948 | 1,833 | GOM Shelf | 25% | UNIT | [1] |
| WD 69 | 00181 | Federal | RT | 7/17/1948 | 3,665 | GOM Shelf | 25% | UNIT | [1] |
| WD 69 | 00181 | Federal | OP 1 | 7/17/1948 | 3,665 | BP E&P | 25% | UNIT | [1] |
| WD 69 | 00181 | Federal | OP 2 | 7/17/1948 | 3,665 | GOM Shelf | 25% | UNIT | [1] |
| WD 70 | 00182 | Federal | RT | 7/17/1948 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| WD 70 | 00182 | Federal | OP 1 | 7/17/1948 | 5,000 | BP E&P | 25% | UNIT | [1] |
| WD 70 | 00182 | Federal | OP 2 | 7/17/1948 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| WD 71 | 00838 | Federal | RT | 4/1/1960 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| WD 71 | 00838 | Federal | OP 1 | 4/1/1960 | 5,000 | BP E&P | 25% | UNIT | [1] |
| WD 71 | 00838 | Federal | OP 2 | 4/1/1960 | 5,000 | GOM Shelf | 25% | UNIT | [1] |
| WD 79, WD 80 | G01874 | Federal | ORRI | 12/1/1968 | 3,438 | Fieldwood En Off | 3% | UNIT | [7] |
| WD 80 | G01989 | Federal | ORRI | 8/1/1970 | 1,875 | Fieldwood En Off | 3% | UNIT | [7] |
| WD 80 | G02136 | Federal | ORRI | 1/1/1972 | 938 | Fieldwood En Off | 3% | UNIT | [7] |
| WD 94 | 00839 | Federal | RT | 5/1/1960 | 5,000 | GOM Shelf | 25% | PROD | [1] |
| WD 94 | 00839 | Federal | OP 1 | 5/1/1960 | 5,000 | GOM Shelf | 25% | PROD | [1] |
| WD 95 | G01497 | Federal | RT | 12/1/1966 | 5,000 | GOM Shelf | 25% | PROD | [1] |
| WD 95 | G01497 | Federal | OP 1 | 12/1/1966 | 5,000 | GOM Shelf | 25% | PROD | [1] |
| WD 95 | G01497 | Federal | OP 2 | 12/1/1966 | 5,000 | GOM Shelf | 25% | PROD | [1] |
| WD 96 | G01498 | Federal | RT | 12/1/1966 | 3,665 | GOM Shelf | 25% | PROD | [1] |
| WD 96 | G01498 | Federal | OP 1 | 12/1/1966 | 3,665 | BP E&P | 25% | PROD | [1] |
| WD 96 | G01498 | Federal | OP 2 | 12/1/1966 | 3,665 | GOM Shelf | 25% | PROD | [1] |
| - | 5749 | SL-TX | WI | - | - | Fieldwood SD Offshore | 100% | UNIT | |
| - | 5797 | SL-TX | WI | - | - | Fieldwood SD Offshore | 100% | TERMIN | |
| - | 23017 | SL-MS | ORRI | | | Tellus Operating Group LLC | 1% | UNIT | |
| - | 24318 | SL-TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 106158 | SL-TX | WI | - | - | Fieldwood Energy Offshore LLC | 100% | TERMIN | |
| - | 106159 | SL-TX | WI | - | - | Fieldwood Energy Offshore LLC | 100% | TERMIN | |
| - | 114921 | SL-TX | WI | - | - | Fieldwood Energy Offshore LLC | 100% | TERMIN | |
| - | 170650 | SL-MS | ORRI | | | Whiting Oil & Gas | 1% | UNIT | |
| - | 172915 | SL-TX | WI | - | - | Fieldwood SD Offshore | 100% | ACTIVE | |
| - | 172916 | SL-TX | WI | - | - | Fieldwood SD Offshore | 100% | ACTIVE | |
| - | 178537 | SL-TX | WI | - | - | Fieldwood | 100% | TERMINATED | |
| - | 183756 | SL-TX | WI | - | - | Fieldwood | 100% | TERMINATED | |
| - | 185633 | SL-TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 186891 | SL-TX | WI | - | - | Fieldwood Onshore | 100% | ACTIVE | |
| - | 191681 | SL-TX | WI | - | - | Fieldwood SD Offshore | 100% | ACTIVE | |
| - | 207398 | SL-TX | WI | - | - | Fieldwood | 90% | ACTIVE | |
| - | 227360 | SL-TX | WI | - | - | Fieldwood Onshore | 74% | ACTIVE | |
| - | 230140 | SL-MS | ORRI | | | Black Jack Oil Co Inc | 1% | UNIT | |

WEIL:\97879239\3\45327.0005

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|-------------------|----------|-----|--------------|---------|
| - | 230150 | SL-MS | ORRI | | | Wilcox Energy Co | 1% | UNIT | |
| - | 231240 | SL-MS | ORRI | | | Wilcox Energy Co | 1% | UNIT | |
| - | 234082 | SL-TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 255675 | SL-TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 5752 | SL - TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 140960 | SL - TX | WI | - | - | Fieldwood SD Offshore | 100% | TERMINATED | |
| - | 165888 | SL - TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 186892 | SL - TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 176012 | SL - TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 179673 | SL - TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 188919 | SL - TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 188921 | SL - TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 269151 | SL - TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |

7

## Credit Bid Purchaser ROW

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20200 | Fieldwood Energy, LLC | GC | 39 | K2 SUTA | GC | 40 | K1 SUTA | 5 | UBEH | Active | G29427 | G34966 | |
| 20202 | Fieldwood Energy, LLC | GC | 40 | K1 PLET | ST | 308 | A | 8 | BLKO | Proposed | G29427 | G34966 | |
| 20203 | Fieldwood Energy, LLC | GC | 40 | K1 PLET | ST | 308 | Start Up Flange | 12 | CSNG | Proposed | G29427 | G34966 | |
| 8255 | Fieldwood Energy Offshore LLC | GC | 65 | A | GC | 19 | A | 12 | OIL | Out of Service | G09349 | G05889 | |
| 11260 | Fieldwood Energy Offshore LLC | GC | 65 | A | GC | 19 | A | 16 | OIL | Out of Service | G17685 | G05889 | |
| 20195 | Fieldwood Energy Offshore LLC | GC | 65 | A | GC | 200 | SUTA | 3 | UMB | Proposed | G29424 | G12209 | |
| 20221 | Fieldwood Energy Offshore LLC | GC | 156 | Mid-Line PLET A-1 | GC | 156 | Md-Line PLET A-2 | 8 | BLKO | Proposed | G29417 | G12209 | |
| 20197 | Fieldwood Energy Offshore LLC | GC | 156 | PLET 2 | GC | 156 | A-2 PLET | 8 | BLKO | Out of Service | G28820 | G12209 | |
| 20155 | Fieldwood Energy Offshore LLC | GC | 156 | Mid-Lne PLET A-2 | GC | 65 | A | 8 | BLKO | Out of Service | G29417 | G12209 | |
| 20183 | Fieldwood Energy Offshore LLC | GC | 200 | SUTA | GC | 244 | TROIKA SUTA | 5 | UMB | Proposed | G29420 | G11043 | |
| 11393 | Fieldwood Energy, LLC | GC | 200 | SS Manifold | GC | 65 | A | 10 | BLKO | Out of Service | G17737 | G12210 | |
| 11394 | Fieldwood Energy, LLC | GC | 200 | SSMANIFO | GC | 65 | A | 24 | CSNG | Out of Service | G17737 | G12210 | |
| 11395 | Fieldwood Energy, LLC | GC | 200 | SSMANIFO | GC | 65 | A | 5 | UMB | Out of Service | G17737 | G12210 | |
| 11396 | Fieldwood Energy, LLC | GC | 200 | SSMANIFO | GC | 65 | A | 10 | BLKG | Out of Service | G17738 | G12210 | |
| 11397 | Fieldwood Energy, LLC | GC | 200 | SSMANIFO | GC | 65 | A | 24 | CSNG | Out of Service | G17738 | G12210 | |
| 11410 | Fieldwood Energy, LLC | GC | 200 | SSMANIFO | GC | 65 | A | 5 | UMB | Out of Service | G17738 | G12210 | |
| 11959 | Fieldwood Energy Offshore LLC | GC | 200 | SSMANIFO | GC | 65 | A | 2 | UMB | Out of Service | G17737 | G12210 | |
| 12141 | Fieldwood Energy Offshore LLC | GC | 200 | SSMANIFO | GC | 65 | A | 5 | UMB | Out of Service | G17738 | G12210 | |

[1] FWE I is to obtain 75% of the Debtors' interests in Segment 9084, 50% of the Debtors' interest in Segments 4647 and 5890 and 79.666% of the Debtors' interest in Segment 17265, and the Credit Bid Purchaser is to obtain the Debtors' remaining interests in those four pipeline segments.

WEIL:\97879239\3\45327.0005

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20196 | Fieldwood Energy Offshore LLC | GC | 200 | PLET-1 | GC | 156 | PLET-2 | 8 | BLKO | Proposed | G29425 | G12210 | |
| 20222 | Fieldwood Energy Offshore LLC | GC | 244 | PLEM A | GC | 156 | Mid-Line PLET A-1 | 8 | BLKO | Proposed | G28809 | G11043 | |
| 9084 | GOM Shelf, LLC | GI | 43 | AS | GI | 19 | F/S | 10 | OIL | Active | G12304 | 00175 | [1] |
| 19097 | Fieldwood Energy, LLC | MC | 698 | RGL PLET 1 | MC | 736 | A Thunderhawk | 8 | BLKO | Out of Service | G29295 | G28022 | |
| 19149 | Fieldwood Energy, LLC | MC | 698 | RGL PLET 1 | MC | 736 | A Thunderhawk | 8 | BLKO | Out of Service | G29295 | G28022 | |
| 19296 | Fieldwood Energy, LLC | MC | 698 | RGL PLET 1 | MC | 736 | A Thunderhawk | 12 | CSNG | Out of Service | G29294 | G28022 | |
| 19364 | Fieldwood Energy, LLC | MC | 698 | RGL PLET 1 | MC | 736 | A | 12 | CSNG | Out of Service | G29295 | G28022 | |
| 19362 | Fieldwood Energy, LLC | MC | 724 | Gulfstar 1 Spar | MC | 948 | UTA1 | 8 | UMB | Out of Service | G29287 | G28030 | |
| 19334 | Fieldwood Energy, LLC | MC | 736 | A Thunderhawk | MC | 692 | SUTA | 5 | UMBH | Out of Service | G29299 | G28022 | |
| 19283 | Fieldwood Energy, LLC | MC | 736 | A Thunderhawk | MC | 698 | BBD SUTA | 6 | UMB | Out of Service | G29295 | G28022 | |
| 19297 | Fieldwood Energy, LLC | MC | 736 | A Thunderhawk | MC | 692 | North Plet | 1 | LIFT | Out of Service | G29299 | G28022 | |
| 19282 | Fieldwood Energy, LLC | MC | 736 | A Thunderhawk | MC | 782 | Dan 1 STUA 1 | 6 | UBEH | Out of Service | G29294 | G33757 | |
| 19154 | Fieldwood Energy, LLC | MC | 948 | PLET NPL3 HUB | MC | 724 | Gulfstar 1 SPAR | 8 | BLKO | Out of Service | G28736 | G28030 | |
| 19155 | Fieldwood Energy, LLC | MC | 948 | PLET SPL2 HUB | MC | 724 | Gulfstar 1 SPAR | 8 | BLKO | Out of Service | G29287 | G28030 | |
| 19365 | Fieldwood Energy, LLC | MC | 948 | PLET NPL3 HUB | MC | 767 | ILS NPL1 | 12 | CSNG | Out of Service | G28736 | G28030 | |
| 19374 | Fieldwood Energy, LLC | MC | 948 | PLET NPL3 HUB | MC | 948 | PLET SPL2 HUB | 8 | BLKO | Out of Service | G28736 | G28030 | |
| 19432 | Fieldwood Energy, LLC | MC | 948 | PLET SPL2 | MC | 768 | ILS SPL1 | 12 | CSNG | Out of Service | G29287 | G28030 | |
| 14292 | Fieldwood Energy, LLC | SM | 40 | JA | SM | 40 | 10"SSTI | 6 | OIL | Out of | G28816 | G13607 | |

9

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Service | | | |
| 14293 | Fieldwood Energy, LLC | SM | 40 | B | SM | 40 | JA | 6 | BLKO | Out of Service | G28817 | G13607 | |
| 14294 | Fieldwood Energy, LLC | SM | 40 | B | SM | 40 | JA | 6 | BLKO | Out of Service | G28818 | G13607 | |
| 14295 | Fieldwood Energy, LLC | SM | 40 | JA | SM | 40 | B | 2 | LIFT | Out of Service | G28819 | G13607 | |
| 4647 | Fieldwood Energy, LLC | SM | 149 | 6"SSTI | SM | 132 | B | 6 | BLKO | Out of Service | G03432 | G02592 | [1] |
| 13736 | Fieldwood Energy, LLC | SS | 79 | #2 | SS | 80 | A | 4 | BLKO | Out of Service | G23712 | G15277 | |
| 13737 | Fieldwood Energy, LLC | SS | 79 | #2 | SS | 80 | A | 4 | BLKO | Out of Service | G23713 | G15277 | |
| 8204 | Fieldwood Energy Offshore LLC | SS | 80 | A | EI | 125 | 30 SSTI | 6 | G/C | Out of Service | G09330 | G15277 | |
| 11050 | Fieldwood Energy Offshore LLC | SS | 301 | A | SS | 300 | B | 8 | BLKO | Out of Service | G16055 | G10794 | |
| 5890 | Fieldwood Energy, LLC | ST | 53 | A | ST | 52 | A | 6 | OIL | Out of Service | G09319 | G04000 | [1] |
| 17265 | Fieldwood Energy, LLC | ST | 68 | Caisson No. 1 | ST | 53 | A | 6 | BLKO | Out of Service | G28385 | G04000 | [1] |
| 20278 | Fieldwood Energy, LLC | ST | 308 | A | GC | 39 | K2 SUTA | 5 | UBEH | Proposed | G29427 | G34966 | |
| 10675 | Bandon Oil and Gas, LP | VR | 371 | A | VR | 350 | 08 SSTI | 6 | OIL | Out of Service | G15047 | G09524 | |

WEIL:\97879239\3\45327.0005

## Credit Bid Purchaser RUE

| Area | Bloc No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets | Note[1] |
|------|----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|---------|
| MC | 736 | A (Thunder Hawk) | 2045 | G30354 | G28022 | Fieldwood Energy LLC | 07/03/18 | MC 698 001, MC 734 SS002, SS004, SS005, SS006, MC 782 001 & 002 | |
| SM | 40 | B | 1266 | G30342 | G13607 | Fieldwood Energy Offshore LLC | 06/21/18 | SM 41 B2, B3, B4, B6 & SM 40 B5 | |
| SM | 40 | JA | 27017 | G30352 | G13607 | Fieldwood Energy Offsh | | SM 41 B PF and wells | |
| SS | 80 | A | 23548 | G30201 | G15277 | Fieldwood Energy Offshore LLC | 02/07/13 | SS 79 A002 | |
| ST | 68 | CAISS. #1 | 24108 | G30267 | 00020 | Fieldwood Energy LLC | 03/09/18 | ST 67 #6 | [1] |

---

[1] RUE services leases included on both the Credit Bid Purchaser and FWE I schedules. RUE only assignable to one entity and are assigned to entity with operatorship. Expenditures will be shared based on serviced lease ownership.

WEIL:\97879239\3\45327.0005

**Exhibit C**
**Leases, Rights of Way and Rights of Use and Easement Related to**
**FWE I Oil & Gas Lease Interests**

## Leases Related to FWE I Oil & Gas Lease Interests[1]

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| BA 491 | G06069 | Federal | RT | 10/1/1983 | 5,760 | Fieldwood En | 100.0% | TERMIN | |
| BA A105 | G01757 | Federal | RT | 7/1/1968 | 5,760 | Fieldwood En | 12.5% | PROD | [4] |
| BA A-105 | G01757 | Federal | RT A | 7/1/1968 | 5,760 | Fieldwood En | 12.5% | PROD | [4] |
| BA A133 | G02665 | Federal | OP | 7/1/1974 | 5,760 | GOM Shelf | 12.5% | PROD | [1], [4] |
| BA A-133 | G02665 | Federal | RT | 7/1/1974 | 5,760 | GOM Shelf | 25.0% | PROD | [1], [4] |
| BA A19 | G33399 | Federal | RT | 1/1/2010 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| BA A47 | G03940 | Federal | RT | 3/1/1979 | 5,760 | Fieldwood En | 33.3% | TERMIN | |
| BA A47 | G03940 | Federal | OP | 3/1/1979 | 5,760 | Fieldwood En | 100.0% | TERMIN | |
| BA A69 | G32733 | Federal | RT | 11/1/2008 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| BS 39 | G33683 | Federal | RT | 7/1/2010 | 1,237 | Petsec En | 18.8% | RELINQ | |
| BS 41 | G21142 | Federal | OP 2 | 5/1/1999 | 4,995 | Fieldwood En Off | 13.1% | TERMIN | [3] |
| BS 41 | G21142 | Federal | Contractual | 5/1/1999 | 4,995 | Fieldwood En Off | TBD | TERMIN | [3] |
| BS 42 | G33684 | Federal | RT | 7/1/2010 | 4,552 | Apache Shelf Exp | 37.5% | RELINQ | |
| CA 42 | G32267 | Federal | OP 1 | 7/1/2008 | 5,000 | Fieldwood En | 50.0% | RELINQ | |
| CA 43 | G32268 | Federal | OP 1 | 7/1/2008 | 5,000 | Fieldwood En | 50.0% | PROD | |
| CS 71 | SL06618 | SL-LA | ORRI | - | - | - | 5.2% | - | |
| CS 71 | SL12503 | SL-LA | ORRI | - | - | - | 0.6% | TERMIN | |
| DD 253 | G10426 | Federal | RT | 6/1/1990 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| DD 297 | G10427 | Federal | RT | 6/1/1990 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| EB 128 | G34034 | Federal | RT | 4/1/2012 | 165 | Apache Shelf Exp | 100.0% | RELINQ | |
| EB 172 | G34035 | Federal | RT | 4/1/2012 | 5,760 | Apache Shelf Exp | 100.0% | RELINQ | |

[1]The Debtors reserve the right to amend, modify, or supplement this schedule in accordance with the terms of the Plan and subject to any consent rights under the Restructuring Support Agreement.

[1] Represents leases owned by GOM Shelf LLC.

[2] Represents leases in which FWE I is to acquire solely the right, title and interest acquired by FWE from Apache; the Credit Bid Purchaser will acquire the Debtors' remaining right, title and interest in such leases. As to all remaining leases on this schedule (except the leases referenced in footnotes [3]-[5] below), FWE I is to obtain all of FWE's right, title and interest in such leases.

[3] Represents leases in which FWE I is to acquire solely the right, title and interest acquired by FWE from Apache. FWE III will acquire the Debtors' remaining right, title and interest in such leases.

[4] Represents leases in which FWE I is to acquire solely the right, title and interest acquired by FWE from Apache. The Debtors' remaining right, title and interest in such leases are to be abandoned.

[5] FWE I is to acquire solely the operating rights as to the NE/4 of this block; the Credit Bid Purchaser is to obtain the Debtors' overriding royalty interest in this lease; and the Debtors' remaining interests in the lease are to be abandoned.

Key:   RT = Record Title; OP = Operating Rights; ORRI = Overriding Royalty Interest; CONT = Contractual; OPRTS = Operating Rights; WI = Working Interest

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| EC 12 | G34220 | Federal | RT | 8/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 14 | G13572 | Federal | RT | 7/1/1992 | 2,544 | Fieldwood En | 100.0% | TERMIN | |
| EC 171 | G34228 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 172 | G17858 | Federal | RT | 7/1/1997 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| EC 178 | G34229 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 179 | G34230 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 185 | G34796 | Federal | RT | 6/1/2013 | 5,000 | Fieldwood En | 100.0% | RELINQ | |
| EC 2 | SL16473 | SL-LA | WI | 7/13/1999 | 148 | Apache | 89.1% | RELINQ | |
| EC 2 | SL16475 | SL-LA | WI | 7/19/1999 | 135 | Apache | 89.1% | ACTIVE | |
| EC 2 | SL18121 | SL-LA | WI | 5/12/2004 | 220 | Fieldwood | 50.0% | ACTIVE | |
| EC 222 | G02037 | Federal | OP 1 | 2/1/1971 | 5,000 | Talos | 17.9% | TERMIN | |
| EC 222 | G02037 | Federal | OP 2 | 2/1/1971 | 5,000 | Talos | 17.9% | TERMIN | |
| EC 229 | G34232 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 230 | G34233 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 24 | G04098 | Federal | RT | 10/1/1979 | 5,000 | Apex O&G | 18.0% | TERMIN | |
| EC 24 | G04098 | Federal | OP 2 | 10/1/1979 | 5,000 | Apex O&G | 31.3% | TERMIN | |
| EC 24 | G04098 | Federal | OP 3 | 10/1/1979 | 5,000 | Apex O&G | 30.3% | TERMIN | |
| EC 242 | G34234 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 243 | G34235 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 261 | G00971 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| EC 263 | G33072 | Federal | RT | 6/1/2009 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR | |
| EC 264 | G01880 | Federal | RT | 3/1/1969 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| EC 265 | G00972 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 50.0% | RELINQ | |
| EC 270 | G02045 | Federal | RT | 1/1/1971 | 2,500 | Apache | 70.0% | TERMIN | |
| EC 278 | G00974 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| EC 292 | G34237 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 293 | G34238 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 294 | G34239 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 310 | G34240 | Federal | RT | 11/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EC 328 | G10638 | Federal | RT | 5/1/1989 | 5,000 | Arena Off | 100.0% | PROD | |
| EC 33 | G01972 | Federal | OP | 9/1/1970 | 1,250 | Merit En | 15.6% | TERMIN | |
| EC 335 | G02439 | Federal | OP | 8/1/1973 | 5,000 | Energy XXI GOM | 14.0% | TERMIN | |
| EC 338 | G02063 | Federal | RT | 2/1/1971 | 5,000 | Anadarko US Off | 15.7% | PROD | |
| EC 37 | G25933 | Federal | RT | 5/1/2004 | 2,608 | Probe Res US | 100.0% | TERMIN | |
| EC 370 | G33073 | Federal | RT | 6/1/2009 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR | |
| EC 71 | G13576 | Federal | RT | 9/1/1992 | 5,000 | EC Off Prop | 100.0% | SOP | |
| EC 9/14 | G01440 | Federal | RT | 4/1/1966 | 3,152 | Fieldwood En | 100.0% | PROD | |
| EC 9/14 | G01440 | Federal | OP 1 | 4/1/1966 | 3,152 | Fieldwood En | 100.0% | PROD | |
| EI 10 | G23851 | Federal | RT | 7/1/2002 | 2,303 | Contango Op | 50.0% | PROD | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| EI 10 | G23851 | Federal | OP 2 | 7/1/2002 | 2,303 | Contango Op | 50.0% | PROD | |
| EI 105 | 00797 | Federal | RT | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| EI 106 | G17966 | Federal | RT A | 7/1/1997 | 5,000 | Apache | 50.0% | TERMIN | |
| EI 106 | G17966 | Federal | RT B | 7/1/1997 | 5,000 | Apache | 100.0% | TERMIN | |
| EI 107 | G15241 | Federal | RT | 9/1/1995 | 5,000 | Apache | 75.0% | TERMIN | |
| EI 108 | G03811 | Federal | OP 1 | 6/1/1978 | 5,000 | Fieldwood En | 60.0% | TERMIN | |
| EI 108 | G03811 | Federal | RT A | 6/1/1978 | 5,000 | Fieldwood En | 60.0% | TERMIN | |
| EI 108 | G03811 | Federal | RT B | 6/1/1978 | 5,000 | Fieldwood En | 71.3% | TERMIN | |
| EI 116 | G34292 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR | |
| EI 117 | G34293 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EI 118 | G15242 | Federal | RT A | 7/1/1995 | 5,000 | Black Elk En Off Op | 25.0% | TERMIN | |
| EI 118 | G15242 | Federal | RT B | 7/1/1995 | 5,000 | Fieldwood En | 75.0% | TERMIN | |
| EI 119 | 00049 | Federal | RT A | 8/28/1945 | 5,000 | Fieldwood En | 50.0% | PROD | |
| EI 119 | 00049 | Federal | RT B | 8/28/1945 | 5,000 | Fieldwood En | 100.0% | PROD | |
| EI 120 | 00050 | Federal | RT | 8/28/1945 | 5,000 | Fieldwood En | 100.0% | PROD | |
| EI 125 | 00051 | Federal | RT | 8/28/1945 | 5,000 | Fieldwood En | 100.0% | OPERNS | |
| EI 126 | 00052 | Federal | RT | 8/28/1945 | 5,000 | Fieldwood En | 100.0% | PROD | |
| EI 126 | 00052 | Federal | OP | 8/28/1945 | 5,000 | Fieldwood En | 75.0% | PROD | |
| EI 128 | G34294 | Federal | RT | 10/1/2012 | 3,427 | Apache Shelf Exp | 100.0% | RELINQ | |
| EI 131 | G33625 | Federal | RT | 6/1/2010 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EI 132 | G33626 | Federal | RT | 6/1/2010 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EI 135 | G34296 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EI 136 | G03152 | Federal | RT | 7/1/1975 | 5,000 | Fieldwood En | 100.0% | PROD | |
| EI 156 | G16353 | Federal | OP | 6/1/1996 | 5,000 | Black Elk En Off Op | 50.0% | TERMIN | |
| EI 158 | G01220 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 100.0% | PROD | |
| EI 173 | G13622 | Federal | RT | 7/1/1992 | 5,000 | Fieldwood En | 100.0% | PROD | |
| EI 174 | G03782 | Federal | RT | 6/1/1978 | 5,000 | Arena Off | 100.0% | PROD | |
| EI 174 | G03782 | Federal | OP | 6/1/1978 | 5,000 | Arena Off | 30.0% | PROD | |
| EI 175 | 00438 | Federal | OP 1 | 12/1/1954 | 5,000 | Fieldwood En | 75.0% | PROD | [4] |
| EI 187 | G10736 | Federal | RT | 7/1/1989 | 5,000 | Fieldwood En | 100.0% | PROD | |
| EI 188 | 00443 | Federal | RT | 1/1/1955 | 5,000 | Apache | 100.0% | TERMIN | |
| EI 189 | 00423 | Federal | RT | 12/1/1954 | 3,750 | Fieldwood En | 100.0% | PROD | |
| EI 196 | 00802 | Federal | RT | 5/1/1960 | 3,516 | Fieldwood En | 50.0% | RELINQ | |
| EI 196 | 00802 | Federal | OP | 5/1/1960 | 3,516 | Fieldwood En | 100.0% | RELINQ | |
| EI 196 | G13821 | Federal | OP 2 | 5/1/1960 | 1,484 | Arena Off | 100.0% | RELINQ | |
| EI 196 | G13821 | Federal | OP 4 | 5/1/1960 | 1,484 | Arena Off | 100.0% | RELINQ | |
| EI 20 | G34286 | Federal | RT | 10/1/2012 | 3,582 | Castex Off | 50.0% | RELINQ | |
| EI 207 | G34301 | Federal | RT | 8/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EI 208 | 00577 | Federal | OP | 9/1/1955 | 2,500 | ANKOR En | 100.0% | PROD | |

3

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| EI 211 | G05502 | Federal | RT B | 7/1/1983 | 5,000 | Fieldwood En | 66.7% | UNIT | |
| EI 211 | G05502 | Federal | OP | 7/1/1983 | 5,000 | Chevron USA | 66.7% | UNIT | |
| EI 212 | G05503 | Federal | RT B | 7/1/1983 | 5,000 | Fieldwood En | 66.7% | UNIT | |
| EI 212 | G05503 | Federal | OP | 7/1/1983 | 5,000 | Chevron USA | 66.7% | UNIT | |
| EI 216 | G34303 | Federal | RT | 8/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| EI 217 | G00978 | Federal | RT | 5/1/1962 | 5,000 | Arena Off | 25.0% | RELINQ | |
| EI 224 | G05504 | Federal | ORRI | 7/1/1983 | 5,000 | Castex Off | 10.0% | PROD | |
| EI 224 | G05504 | Federal | RT | 7/1/1983 | 5,000 | Castex Off | 100.0% | PROD | |
| EI 227 | 00809 | Federal | RT | 5/1/1960 | 5,000 | Arena Off | 50.0% | RELINQ | |
| EI 227 | G36745 | Federal | ORRI | 11/1/2019 | 5,000 | Arena Off | 6.25% | PRIMRY | |
| EI 227 | G36745 | Federal | ORRI | 11/1/2019 | 5,000 | Arena Off | 4.17% | PRIMRY | |
| EI 246 | 00810 | Federal | OP 1 | 5/1/1960 | 5,000 | Fieldwood En | 25.0% | UNIT | |
| EI 246 | 00810 | Federal | OP 2 | 5/1/1960 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| EI 246 | 00810 | Federal | RT | 5/1/1960 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| EI 246 | 00810 | Federal | ORRI | 5/1/1960 | 5,000 | Sanare En Part | 6.3% | UNIT | |
| EI 255 | G01958 | Federal | RT | 1/1/1970 | 2,500 | Cox Op | 2.0% | PROD | |
| EI 255 | G01958 | Federal | OP 3 | 1/1/1970 | 2,500 | Cox Op | 77.2% | PROD | |
| EI 255 | G01958 | Federal | OP 4 | 1/1/1970 | 2,500 | Cox Op | 38.6% | PROD | |
| EI 266 | 00811 | Federal | OP 1 | 5/1/1960 | 5,000 | Fieldwood En | 25.0% | UNIT | |
| EI 266 | 00811 | Federal | OP 2 | 5/1/1960 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| EI 266 | 00811 | Federal | RT | 5/1/1960 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| EI 267 | 00812 | Federal | OP | 5/1/1960 | 5,000 | Fieldwood En | 25.0% | UNIT | |
| EI 267 | 00812 | Federal | OP 2 | 5/1/1960 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| EI 267 | 00812 | Federal | RT | 5/1/1960 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| EI 269 | 00813 | Federal | OP 1 | 5/1/1960 | 5,000 | Fieldwood En | 25.0% | UNIT | |
| EI 269 | 00813 | Federal | OP 2 | 5/1/1960 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| EI 269 | 00813 | Federal | RT | 5/1/1960 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| EI 280 | G23876 | Federal | RT | 5/1/2002 | 5,000 | Energy XXI GOM | 18.8% | TERMIN | |
| EI 281 | G09591 | Federal | RT | 5/1/1988 | 5,000 | Bennu O&G | 90.5% | TERMIN | |
| EI 281 | G09591 | Federal | OP 1 | 5/1/1988 | 5,000 | Bennu O&G | 45.3% | TERMIN | |
| EI 281 | G09591 | Federal | OP 2 | 5/1/1988 | 5,000 | Bennu O&G | 45.3% | TERMIN | |
| EI 281 | G09591 | Federal | OP 3 | 5/1/1988 | 5,000 | Bennu O&G | 45.3% | TERMIN | |
| EI 282 | G09592 | Federal | RT | 6/1/1988 | 5,000 | Apache | 75.0% | TERMIN | |
| EI 282 | G09592 | Federal | OP 1 | 6/1/1988 | 5,000 | Apache | 75.0% | TERMIN | |
| EI 282 | G09592 | Federal | OP 2 | 6/1/1988 | 5,000 | Apache | 75.0% | TERMIN | |
| EI 29 | G34287 | Federal | RT | 12/1/2012 | 5,000 | Apache Shelf Exp | 50.0% | RELINQ | |
| EI 307 | G02110 | Federal | OP | 2/1/1971 | 2,500 | Fieldwood En Off | 25.0% | TERMIN | [4] |
| EI 312 | G22679 | Federal | RT | 6/1/2001 | 5,000 | Fieldwood En | 100.0% | TERMIN | [4] |
| EI 312 | G22679 | Federal | ORRI | 6/1/2001 | 5,000 | Fieldwood En | 8.3% | TERMIN | [4] |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| EI 313 | G02608 | Federal | RT | 5/1/1974 | 5,000 | Arena Off | 50.0% | TERMIN | |
| EI 313 | G02608 | Federal | OP 1 | 5/1/1974 | 5,000 | Arena Off | 50.0% | TERMIN | |
| EI 313 | G02608 | Federal | OP 2 | 5/1/1974 | 5,000 | Arena Off | 50.0% | TERMIN | |
| EI 315 | G02112 | Federal | RT | 8/1/1974 | 2,500 | Fieldwood En | 50.0% | TERMIN | |
| EI 315 | G02112 | Federal | OP | 8/1/1974 | 2,500 | Fieldwood En | 50.0% | TERMIN | |
| EI 315 | G24912 | Federal | RT | 5/1/2003 | 2,500 | Fieldwood En | 100.0% | PROD | |
| EI 316 | G05040 | Federal | RT | 4/1/1982 | 5,000 | Fieldwood En | 100.0% | PROD | |
| EI 329 | G02912 | Federal | RT | 12/1/1974 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| EI 330 | G02115 | Federal | Contractual | 1/1/1971 | 5,000 | Fieldwood En | 63.0% | UNIT | [4] |
| EI 330 | G02115 | Federal | OP 7 | 1/1/1971 | 5,000 | Fieldwood En | 47.0% | UNIT | [4] |
| EI 330 | G02115 | Federal | OP 6 | 1/1/1971 | 5,000 | Fieldwood En | 47.0% | UNIT | [4] |
| EI 330 | G02115 | Federal | OP 5 | 1/1/1971 | 5,000 | Fieldwood En | 47.0% | UNIT | [4] |
| EI 330 | G02115 | Federal | OP 4 | 1/1/1971 | 5,000 | Fieldwood En | 47.0% | UNIT | [4] |
| EI 330 | G02115 | Federal | OP 3 | 1/1/1971 | 5,000 | Fieldwood En | 47.0% | UNIT | [4] |
| EI 330 | G02115 | Federal | OP 2 | 1/1/1971 | 5,000 | Fieldwood En | 47.0% | UNIT | [4] |
| EI 330 | G02115 | Federal | RT | 1/1/1971 | 5,000 | Fieldwood En | 42.0% | UNIT | [4] |
| EI 330 | G02115 | Federal | RT | 1/1/1971 | 5,000 | Fieldwood En | 23.0% | UNIT | [1], [4] |
| EI 330 | G02115 | Federal | OP 7 | 1/1/1971 | 5,000 | Fieldwood En | 23.0% | UNIT | [1], [4] |
| EI 330 | G02115 | Federal | OP 6 | 1/1/1971 | 5,000 | Fieldwood En | 23.0% | UNIT | [1], [4] |
| EI 330 | G02115 | Federal | OP 5 | 1/1/1971 | 5,000 | Fieldwood En | 23.0% | UNIT | [1], [4] |
| EI 330 | G02115 | Federal | OP 4 | 1/1/1971 | 5,000 | Fieldwood En | 23.0% | UNIT | [1], [4] |
| EI 330 | G02115 | Federal | OP 3 | 1/1/1971 | 5,000 | Fieldwood En | 23.0% | UNIT | [1], [4] |
| EI 330 | G02115 | Federal | OP 2 | 1/1/1971 | 5,000 | Fieldwood En | 23.0% | UNIT | [1], [4] |
| EI 333 | G02317 | Federal | RT | 2/1/1973 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| EI 334 | G15263 | Federal | RT | 7/1/1995 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| EI 337 | G03332 | Federal | RT | 3/1/1976 | 5,000 | Fieldwood En | 100.0% | UNIT | |
| EI 337 | G03332 | Federal | OP 4 | 3/1/1976 | 5,000 | Fieldwood En | 98.0% | UNIT | |
| EI 337 | G03332 | Federal | OP 1 | 3/1/1976 | 5,000 | Fieldwood En | 100.0% | UNIT | |
| EI 337 | G03332 | Federal | OP 3 | 3/1/1976 | 5,000 | Fieldwood En | 100.0% | UNIT | |
| EI 337 | G03332 | Federal | ORRI | 3/1/1976 | | Fieldwood En | 0.1% | UNIT | |
| EI 342 | G02319 | Federal | RT A | 2/1/1973 | 5,000 | Fieldwood En | 50.0% | TERMIN | [4] |
| EI 342 | G02319 | Federal | RT B | 2/1/1973 | 5,000 | Fieldwood En | 75.0% | TERMIN | [4] |
| EI 342 | G02319 | Federal | OP 1 | 2/1/1973 | 5,000 | Fieldwood En | 75.0% | TERMIN | [4] |
| EI 342 | G02319 | Federal | OP 2 | 2/1/1973 | 5,000 | Fieldwood En | 61.8% | TERMIN | [4] |
| EI 345 | G21647 | Federal | RT | 7/1/2000 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| EI 346 | G14482 | Federal | RT | 6/1/1994 | 5,000 | Arena Off | 100.0% | PROD | |
| EI 353 | G03783 | Federal | OP | 6/1/1978 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| EI 354 | G10752 | Federal | RT | 5/1/1989 | 5,000 | Fieldwood En | 100.0% | PROD | |
| EI 354 | G10752 | Federal | OP | 5/1/1989 | 5,000 | Fieldwood En | 67.0% | PROD | |

5

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| EI 361 | G02324 | Federal | RT | 2/1/1973 | 5,000 | Cox Op | 12.4% | PROD | |
| EI 53 | 00479 | Federal | OP 1 | 12/1/1954 | 5,000 | EnVen En Vent | 66.7% | PROD | [4] |
| EI 53 | 00479 | Federal | OP | 12/1/1954 | 5,000 | EnVen En Vent | 100.0% | PROD | [4] |
| EI 57 | G02601 | Federal | OP 2 | 5/1/1974 | 5,000 | Talos | 31.7% | TERMIN | |
| EI 57 | G02601 | Federal | OP 4 | 5/1/1974 | 5,000 | ANKOR En | 15.8% | TERMIN | |
| EI 88 | G10721 | Federal | OP | 7/1/1989 | 5,000 | Fieldwood En | 75.0% | TERMIN | |
| EI 89 | 00044 | Federal | OP | 8/28/1945 | 5,000 | Fieldwood En | 75.0% | TERMIN | |
| EI 89 | 00044 | Federal | OP 2 | 8/28/1945 | 5,000 | Fieldwood En | 75.0% | TERMIN | |
| EI 90 | 00229 | Federal | OP | 11/19/1948 | 1,250 | Fieldwood En | 75.0% | TERMIN | |
| EI 93 | 00228 | Federal | OP | 11/19/1948 | 2,500 | Fieldwood En | 75.0% | TERMIN | |
| EI 94 | G05488 | Federal | OP | 7/1/1983 | 5,000 | Fieldwood En | 75.0% | TERMIN | |
| EI 95 | 00046 | Federal | OP | 8/28/1945 | 5,000 | Fieldwood En | 75.0% | TERMIN | |
| EW 525 | G33704 | Federal | RT | 7/1/2010 | 2,420 | Apache Shelf Exp | 46.9% | RELINQ | |
| EW 526 | G33134 | Federal | RT | 6/1/2009 | 3,517 | Apache Shelf Exp | 100.0% | EXPIR | |
| EW 781 | G33137 | Federal | RT | 6/1/2009 | 309 | Apache Shelf Exp | 100.0% | EXPIR | |
| EW 782 | G31470 | Federal | RT | 12/1/2007 | 1,093 | Fieldwood En | 100.0% | PROD | [4] |
| EW 789 | G33139 | Federal | RT | 7/1/2009 | 5,760 | Apache Shelf Exp | 100.0% | RELINQ | |
| EW 826 | G05800 | Federal | RT | 7/1/1983 | 5,760 | BP E&P | 100.0% | PROD | |
| EW 905 | G34415 | Federal | RT | 8/1/2012 | 1,007 | Apache Shelf Exp | 100.0% | RELINQ | |
| EW 906 | G33708 | Federal | RT | 6/1/2010 | 1,084 | Apache Shelf Exp | 100.0% | RELINQ | |
| EW 949 | G34877 | Federal | RT | 8/1/2013 | 5,760 | Apache Shelf Exp | 100.0% | RELINQ | |
| EW 950 | G33709 | Federal | RT | 6/1/2010 | 5,760 | Apache Shelf Exp | 100.0% | RELINQ | |
| FM 411 | G08361 | Federal | RT | 8/1/1986 | 5,760 | Chevron USA | 24.3% | EXPIR | |
| FM 412 | G08362 | Federal | RT | 8/1/1986 | 5,760 | Chevron USA | 16.0% | EXPIR | |
| FM 455 | G08363 | Federal | RT | 8/1/1986 | 5,760 | Chevron USA | 24.2% | EXPIR | |
| FM 456 | G08364 | Federal | RT | 8/1/1986 | 5,760 | Chevron USA | 24.3% | EXPIR | |
| FM 499 | G08365 | Federal | RT | 8/1/1986 | 5,760 | Chevron USA | 24.3% | EXPIR | |
| FM 500 | G08366 | Federal | RT | 8/1/1986 | 5,760 | Chevron USA | 16.0% | EXPIR | |
| FM 543 | G08367 | Federal | RT | 8/1/1986 | 5,760 | Chevron USA | 24.3% | EXPIR | |
| FM 587 | G08368 | Federal | RT | 8/1/1986 | 5,760 | Chevron USA | 24.3% | EXPIR | |
| GA 151 | G15740 | Federal | RT | 11/1/1995 | 4,804 | Fieldwood En | 33.3% | TERMIN | [4] |
| GA 180 | G03228 | Federal | RT | 9/1/1975 | 5,760 | Fieldwood En | 100.0% | UNIT | |
| GA 192 | G03229 | Federal | CONT | 9/1/1975 | 5,760 | Arena Off | 90.0% | UNIT | |
| GA 210 | G25524 | Federal | OP 1 | 12/1/2003 | 5,760 | Fieldwood En | 83.3% | PROD | [4] |
| GA 210 | G25524 | Federal | OP 3 | 12/1/2003 | 5,760 | Fieldwood En | 66.7% | PROD | [4] |
| GA 210 | G25524 | Federal | RT | 12/1/2003 | 5,760 | Fieldwood En | 66.7% | PROD | [4] |
| GA 210 | G25524 | Federal | OP | 12/1/2003 | 5,760 | Fieldwood En | 83.3% | PROD | [4] |
| GA 343 | G06105 | Federal | RT | 10/1/1983 | 5,760 | Black Elk En Off Op | 12.5% | TERMIN | |
| GA 343 | G06105 | Federal | OP | 10/1/1983 | 5,760 | Black Elk En Off Op | 37.5% | TERMIN | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| GB 85 | G34515 | Federal | RT | 8/1/2012 | 4,450 | Apache Shelf Exp | 100.0% | RELINQ | |
| GI 104 | G33671 | Federal | RT | 7/1/2010 | 5,000 | Apache Shelf Exp | 46.9% | RELINQ | |
| GI 110 | G13943 | Federal | RT | 8/1/1993 | 5,000 | Fieldwood En | 50.0% | UNIT | [2] |
| GI 116 | G13944 | Federal | RT | 7/1/1993 | 5,000 | Fieldwood En | 50.0% | UNIT | [2] |
| GI 116 | G13944 | Federal | OP | 7/1/1993 | 5,000 | Fieldwood En | 25.0% | UNIT | [2] |
| GI 117 | G32232 | Federal | RT | 8/1/2008 | 4,540 | Apache | 100.0% | EXPIR | |
| GI 32 | 00174 | Federal | RT | 7/17/1948 | 2,500 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 32 | 00174 | Federal | OP 1 | 7/17/1948 | 2,500 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 32 | 00174 | Federal | OP 2 | 7/17/1948 | 2,500 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 32 | G01580 | Federal | RT | 7/1/1967 | 2,500 | BP Am Prod | 75.0% | TERMIN | [1] |
| GI 32 | G01580 | Federal | OP | 7/1/1967 | 2,500 | BP Am Prod | 37.5% | TERMIN | [1] |
| GI 33 | G04002 | Federal | RT | 3/1/1979 | 5,000 | Fieldwood En | 100.0% | RELINQ | |
| GI 39 | 00126 | Federal | RT | 4/21/1947 | 2,500 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 39 | 00126 | Federal | OP 1 | 4/21/1947 | 2,500 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 39 | 00126 | Federal | OP 2 | 4/21/1947 | 2,500 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 39 | 00127 | Federal | RT | 4/21/1947 | 2,500 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 39 | 00127 | Federal | OP 1 | 4/21/1947 | 2,500 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 39 | 00127 | Federal | OP 2 | 4/21/1947 | 2,500 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 40 | 00128 | Federal | RT | 4/21/1947 | 5,000 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 40 | 00128 | Federal | OP 1 | 4/21/1947 | 5,000 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 40 | 00128 | Federal | OP 2 | 4/21/1947 | 5,000 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 41 | 00129 | Federal | RT | 4/21/1947 | 2,500 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 41 | 00129 | Federal | OP 1 | 4/21/1947 | 2,500 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 41 | 00129 | Federal | OP 2 | 4/21/1947 | 2,500 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 41 | 00130 | Federal | RT | 4/21/1947 | 2,500 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 41 | 00130 | Federal | OP 1 | 4/21/1947 | 2,500 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 41 | 00130 | Federal | OP 2 | 4/21/1947 | 2,500 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 42 | 00131 | Federal | RT | 4/21/1947 | 5,000 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 42 | 00131 | Federal | OP 1 | 4/21/1947 | 5,000 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 42 | 00131 | Federal | OP 2 | 4/21/1947 | 5,000 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 43 | 00175 | Federal | RT | 7/17/1948 | 5,000 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 43 | 00175 | Federal | OP 1 | 7/17/1948 | 5,000 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 43 | 00175 | Federal | OP 2 | 7/17/1948 | 5,000 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 44 | 00176 | Federal | RT | 7/17/1948 | 2,500 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 44 | 00176 | Federal | OP 1 | 7/17/1948 | 2,500 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 44 | 00176 | Federal | OP 2 | 7/17/1948 | 2,500 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 46 | 00132 | Federal | RT | 4/21/1947 | 5,000 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 46 | 00132 | Federal | OP 1 | 4/21/1947 | 5,000 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 46 | 00132 | Federal | OP 2 | 4/21/1947 | 5,000 | GOM Shelf | 37.5% | UNIT | [1], [2] |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| GI 47 | 00133 | Federal | RT | 4/21/1947 | 5,000 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 47 | 00133 | Federal | OP 1 | 4/21/1947 | 5,000 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 47 | 00133 | Federal | OP 2 | 4/21/1947 | 5,000 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 48 | 00134 | Federal | RT | 4/21/1947 | 5,000 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 48 | 00134 | Federal | OP 1 | 4/21/1947 | 5,000 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 48 | 00134 | Federal | OP 2 | 4/21/1947 | 5,000 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| GI 52 | 00177 | Federal | RT | 7/17/1948 | 2,500 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| GI 52 | 00177 | Federal | OP 1 | 7/17/1948 | 2,500 | GOM Shelf | 100.0% | UNIT | [1], [2] |
| GI 52 | 00177 | Federal | OP 2 | 7/17/1948 | 2,500 | BP E&P | 18.8% | UNIT | [1], [2] |
| GI 54 | G27173 | Federal | RT | 7/1/2005 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| GI 76 | G02161 | Federal | RT | 10/1/1972 | 5,000 | Fieldwood En | 95.8% | RELINQ | |
| GI 90 | G04003 | Federal | RT | 3/1/1979 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| GI 90 | G04003 | Federal | OP 1 | 3/1/1979 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| GI 90 | G04003 | Federal | OP 2 | 3/1/1979 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| GI 90 | G04003 | Federal | OP 4 | 3/1/1979 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| GI 90 | G04003 | Federal | OP 5 | 3/1/1979 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| GI 90 | G04003 | Federal | OP 6 | 3/1/1979 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| GI 93 | G02628 | Federal | RT | 5/1/1974 | 5,000 | BP E&P | 100.0% | TERMIN | |
| GI 93 | G02628 | Federal | OP | 5/1/1974 | 5,000 | BP E&P | 100.0% | TERMIN | |
| GI 94 | G02163 | Federal | RT | 11/1/1972 | 4,540 | Fieldwood En | 100.0% | RELINQ | |
| GI 94 | G02163 | Federal | OP | 11/1/1972 | 4,540 | Fieldwood En | 100.0% | RELINQ | |
| GI 98 | G34354 | Federal | RT | 8/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| HI 110 | G02353 | Federal | RT | 8/1/1973 | 5,760 | W & T Off | 20.0% | TERMIN | [1] |
| HI 111 | G02354 | Federal | RT | 8/1/1973 | 5,760 | W & T Off | 20.0% | TERMIN | [1] |
| HI 114 | G32747 | Federal | RT | 12/1/2008 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| HI 116 | G06156 | Federal | RT | 10/1/1983 | 5,760 | Fieldwood En | 100.0% | TERMIN | |
| HI 129 | G01848 | Federal | RT | 6/1/1968 | 5,760 | Fieldwood En | 90.0% | PROD | |
| HI 129 | G01848 | Federal | ORRI | 6/1/1968 | | Fieldwood En | 10.4% | PROD | |
| HI 132 | G32748 | Federal | RT | 12/1/2008 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| HI 140 | 00518 | Federal | OP | 1/1/1955 | 5,760 | Black Elk En Off Op | 50.0% | TERMIN | |
| HI 163 | G22236 | Federal | RT | 12/1/2000 | 5,760 | Fieldwood En | 70.0% | TERMIN | |
| HI 176 | G06164 | Federal | OPRTS Cont | 10/1/1983 | 5,760 | Apache | 49.5% | TERMIN | |
| HI 179 | G03236 | Federal | RT | 9/1/1975 | 5,760 | Cox Op | 100.0% | UNIT | |
| HI 193 | G03237 | Federal | CONT | 9/1/1975 | 5,760 | Arena Off | 90.0% | UNIT | |
| HI 194 | G06166 | Federal | RT | 10/1/1983 | 5,760 | Apache | 100.0% | TERMIN | |
| HI 194 | G06166 | Federal | OP | 10/1/1983 | 5,760 | Apache | 45.0% | TERMIN | |
| HI 201 | G23199 | Federal | OP | 12/1/2001 | 5,760 | Apache Shelf | 37.6% | TERMIN | |
| HI 206 | G20660 | Federal | RT | 1/1/1999 | 5,760 | Fieldwood En | 100.0% | PROD | |
| HI 45 | G12564 | Federal | RT | 10/1/1990 | 4,367 | Fieldwood En | 16.7% | TERMIN | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| HI 45 | G12564 | Federal | OP 1 | 10/1/1990 | 4,367 | Fieldwood En | 15.0% | TERMIN | |
| HI 45 | G12564 | Federal | OP 2 | 10/1/1990 | 4,367 | Fieldwood En | 33.3% | TERMIN | |
| HI 52 | 00508 | Federal | RT | 1/1/1955 | 1,440 | SandRidge En Off | 75.0% | TERMIN | |
| HI 52 | 00509 | Federal | RT | 1/1/1955 | 1,440 | Apache | 75.0% | TERMIN | |
| HI 52 | 00511 | Federal | RT | 1/1/1955 | 1,440 | Apache | 75.0% | TERMIN | |
| HI 53 | 00513 | Federal | RT | 1/1/1955 | 180 | Phoenix Exp | 75.0% | TERMIN | |
| HI 53 | 00740 | Federal | RT | 4/1/1960 | 1,440 | Apache | 75.0% | TERMIN | |
| HI A-133 | G32760 | Federal | RT | 11/1/2008 | 5,760 | Apache | 100.0% | EXPIR | |
| HI A-145 | G32761 | Federal | RT | 11/1/2008 | 5,760 | Apache | 100.0% | EXPIR | |
| HI A-146 | G32762 | Federal | RT | 11/1/2008 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| HI A-148 | G32763 | Federal | RT | 11/1/2008 | 5,760 | Apache | 100.0% | EXPIR | |
| HI A-160 | G32764 | Federal | RT | 11/1/2008 | 5,760 | Apache | 100.0% | EXPIR | |
| HI A-171 | G30679 | Federal | RT | 12/1/2006 | 5,760 | Walter O&G | 33.3% | TERMIN | |
| HI A-326 | G32777 | Federal | RT | 11/1/2008 | 5,760 | Apache | 100.0% | EXPIR | |
| HI A-334 | G02423 | Federal | RT | 8/1/1973 | 5,760 | Fieldwood En | 38.9% | TERMIN | |
| HI A-341 | G25605 | Federal | RT | 12/1/2003 | 5,760 | Fieldwood En | 60.0% | PROD | [4] |
| HI A-350 | G02428 | Federal | RT | 8/1/1973 | 4,345 | Apache | 100.0% | RELINQ | |
| HI A360 | G34677 | Federal | RT | 3/1/2013 | 5,760 | Apache Shelf Exp | 100.0% | RELINQ | |
| HI A361 | G34678 | Federal | RT | 3/1/2013 | 5,760 | Fieldwood En | 100.0% | RELINQ | |
| HI A363 | G33413 | Federal | RT | 10/1/2009 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| HI A-365 | G02750 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood En | 53.1% | PROD | [4] |
| HI A-376 | G02754 | Federal | OP 1 | 7/1/1974 | 5,760 | Fieldwood En | 100.0% | PROD | [4] |
| HI A-376 | G02754 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood En | 44.4% | PROD | [4] |
| HI A-376 | G02754 | Federal | ORRI | 7/1/1974 | | Fieldwood En | 1.2% | PROD | [4] |
| HI A-376 | G02754 | Federal | ORRI | 7/1/1974 | | Fieldwood En | 6.0% | PROD | [4] |
| HI A-382 | G02757 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood En | 72.4% | PROD | [4] |
| HI A406 | G32767 | Federal | RT | 11/1/2008 | 5,760 | Apache | 100.0% | EXPIR | |
| HI A430 | G33412 | Federal | RT | 10/1/2009 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| HI A442 | G11383 | Federal | OP | 11/1/1989 | 5,760 | Northstar Off Grp | 22.7% | TERMIN | |
| HI A454 | G32769 | Federal | RT | 11/1/2008 | 5,760 | Apache | 100.0% | EXPIR | |
| HI A457 | G32770 | Federal | RT | 11/1/2008 | 5,760 | Apache | 100.0% | EXPIR | |
| HI A-474 | G02366 | Federal | RT | 8/1/1973 | 5,760 | McMoRan O&G | 10.0% | TERMIN | |
| HI A-475 | G02367 | Federal | CONT | 8/1/1973 | 5,760 | McMoRan O&G | 10.0% | TERMIN | [4] |
| HI A-489 | G02372 | Federal | RT | 8/1/1973 | 5,760 | McMoRan O&G | 8.5% | TERMIN | [4] |
| HI A537 | G02698 | Federal | CONT | 5/29/1974 | | McMoRan O&G | | TERMIN | |
| HI A545 | G17199 | Federal | OP | 1/1/1997 | 5,760 | Fieldwood En | 60.0% | TERMIN | |
| HI A-572 | G02392 | Federal | RT | 8/1/1973 | 5,760 | Apache | 72.4% | TERMIN | [4] |
| HI A-573 | G02393 | Federal | RT | 8/1/1973 | 5,760 | Fieldwood En | 72.4% | PROD | [4] |
| HI A-581 | G18959 | Federal | CONT | 8/27/1997 | | Cox Op | 24.7% | TERMIN | [4] |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|--------|
| HI A582 | G02719 | Federal | RT | 7/1/1974 | 5,760 | Cox Op | 24.7% | PROD | [4] |
| HI A-582 | G02719 | Federal | OP 1 | 7/1/1974 | 5,760 | Cox Op | 15.5% | PROD | [4] |
| HI A-595 | G02721 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood En | 72.4% | PROD | [4] |
| HI A-596 | G02722 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood En | 72.4% | PROD | [4] |
| MC 108 | G09777 | Federal | RT | 7/1/1988 | 5,760 | BP E&P | 75.2% | PROD | |
| MC 108 | G09777 | Federal | OP | 7/1/1988 | 5,760 | BP E&P | 75.2% | PROD | |
| MC 110 | G18192 | Federal | RT | 8/1/1997 | 5,760 | Fieldwood En | 50.0% | PROD | [2] |
| MC 110 | G18192 | Federal | OP | 8/1/1997 | 5,760 | Fieldwood En | 25.0% | PROD | [2] |
| MC 110 | G18192 | Federal | ORRI | 8/1/1997 | | Fieldwood En | 3.9% | PROD | [2] |
| MC 21 | G28351 | Federal | ORRI | 7/1/1995 | 4,445 | ANKOR En | 3.0% | PROD | |
| MC 311 | G02968 | Federal | RT | 12/1/1974 | 5,760 | Fieldwood En | 100.0% | PROD | |
| MC 65 | G21742 | Federal | RT | 6/1/2000 | 5,760 | ANKOR En | 100.0% | PROD | |
| MC 65 | G21742 | Federal | ORRI | 6/1/2000 | | ANKOR En | 13.0% | PROD | |
| MI 486 | MF88560 | SL - TX | WI | 10/5/1982 | 1,440 | Fieldwood | 100.0% | EXPIRED | |
| MI 487 | MF-88562 | SL - TX | WI | 10/5/1982 | 1,305 | Fieldwood | 100.0% | SI | |
| MI 518 | G05169 | Federal | RT | 1/1/1983 | 5,675 | Fieldwood En | 100.0% | TERMIN | |
| MI 518 | MF80522 | SL - TX | WI | 10/2/1979 | 85 | Fieldwood | 100.0% | EXPIRED | |
| MI 519 | MF-79413 | SL - TX | WI | 2/6/1979 | 739 | Fieldwood | 100.0% | SI | |
| MI 622 | G05000 | Federal | RT | 4/1/1982 | 5,760 | Fieldwood En | 81.0% | TERMIN | |
| MI 622 | G05000 | Federal | OP | 4/1/1982 | 5,760 | BP E&P | 37.5% | TERMIN | |
| MI 623 | G03088 | Federal | RT | 4/1/1975 | 5,760 | Fieldwood En | 81.0% | TERMIN | |
| MI 623 | G03088 | Federal | OP | 4/1/1975 | 5,760 | BP E&P | 37.5% | TERMIN | |
| MI 635 | G06043 | Federal | RT | 10/1/1983 | 5,760 | Fieldwood En | 81.0% | TERMIN | |
| MI 635 | G06043 | Federal | OP | 10/1/1983 | 5,760 | BP E&P | 37.5% | TERMIN | |
| MI 636 | G34670 | Federal | RT | 4/1/2013 | 5,760 | Apache Shelf Exp | 100.0% | RELINQ | |
| MI 652 | G34022 | Federal | RT | 2/1/2012 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| MI 681 | G04703 | Federal | RT | 9/1/1981 | 5,760 | Fieldwood En | 100.0% | TERMIN | |
| MI 685 | G04548 | Federal | RT | 1/1/1981 | 5,760 | EOG Res | 50.0% | TERMIN | |
| MI 685 | G04548 | Federal | OP | 1/1/1981 | 5,760 | EOG Res | 2.5% | TERMIN | |
| MI 703 | G03733 | Federal | RT | 6/1/1978 | 5,760 | Fieldwood En | 100.0% | TERMIN | |
| MI 703 | G03733 | Federal | OP 1 | 6/1/1978 | 5,760 | Fieldwood En | 100.0% | TERMIN | |
| MI 703 | G03733 | Federal | OP 2 | 6/1/1978 | 5,760 | Fieldwood En | 100.0% | TERMIN | |
| MI 772 | MF93351 | SL - TX | WI | 2/7/1989 | 704 | Fieldwood | 100.0% | TERMINATED | |
| MO 820 | G34403 | Federal | RT | 8/1/2012 | 3,347 | Apache Shelf Exp | 100.0% | RELINQ | |
| MO 821 | G05058 | Federal | RT | 4/1/1982 | 4,028 | Fieldwood En | 100.0% | TERMIN | |
| MO 821 | STATE OF ALABAMA 627 | SL - AL | WI | 8/14/1984 | 2,511 | Fieldwood | 100.0% | TERMINATED | |
| MO 826 | G26176 | Federal | RT | 7/1/2004 | 1,430 | Fieldwood En | 75.0% | PROD | |
| MO 871 | G32272 | Federal | RT | 8/1/2008 | 5,760 | Apache | 100.0% | EXPIR | |
| MO 913 | G33131 | Federal | RT | 6/1/2009 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|---|---|---|---|---|---|---|---|---|---|
| MO 914 | G33132 | Federal | RT | 6/1/2009 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR | |
| MP 120 | G03197 | Federal | ORRI | 5/28/1975 | | Arena Off | 2.0% | PROD | |
| MP 120 | G03197 | Federal | ORRI | 7/1/1975 | | Arena Off | 2.0% | PROD | |
| MP 134 | G34375 | Federal | RT | 10/1/2012 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 135 | G34376 | Federal | RT | 10/1/2012 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 136 | G34377 | Federal | RT | 10/1/2012 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 137 | G34378 | Federal | RT | 10/1/2012 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 140 | G02193 | Federal | RT | 10/1/1972 | 4,995 | Fieldwood En | 65.0% | PROD | |
| MP 143 | G34380 | Federal | RT | 10/1/2012 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 146 | G34860 | Federal | RT | 7/1/2013 | 4,561 | Apache Shelf Exp | 75.0% | RELINQ | |
| MP 147 | G34861 | Federal | RT | 7/1/2013 | 4,561 | Apache Shelf Exp | 75.0% | RELINQ | |
| MP 148 | G34381 | Federal | RT | 11/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 149 | G34382 | Federal | RT | 11/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 150 | G34862 | Federal | RT | 7/1/2013 | 5,000 | Apache Shelf Exp | 75.0% | RELINQ | |
| MP 152 | G01966 | Federal | RT | 1/1/1970 | 4,978 | Fieldwood En | 50.0% | UNIT | |
| MP 152 | G01966 | Federal | OP | 1/1/1970 | 4,978 | Fieldwood En | 75.0% | UNIT | |
| MP 153 | G01967 | Federal | RT | 1/1/1970 | 5,000 | Fieldwood En | 50.0% | UNIT | |
| MP 153 | G01967 | Federal | OP | 1/1/1970 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| MP 166 | G26152 | Federal | RT | 7/1/2004 | 4,995 | Fieldwood En | 100.0% | TERMIN | |
| MP 175 | G08753 | Federal | OP | 8/1/1987 | 4,995 | Tana Exp | 21.2% | TERMIN | |
| MP 255 | G07825 | Federal | RT | 8/1/1985 | 4,995 | Fieldwood En | 52.4% | TERMIN | |
| MP 259 | G07827 | Federal | RT | 9/1/1985 | 4,995 | Fieldwood En | 56.9% | TERMIN | |
| MP 260 | G07828 | Federal | RT | 9/1/1985 | 4,995 | Fieldwood En | 56.9% | TERMIN | |
| MP 270 | G22812 | Federal | ORRI | 7/1/2001 | 4,995 | Castex Off | 1.0% | UNIT | |
| MP 271 | G34388 | Federal | RT | 10/1/2012 | 4,995 | Apache Shelf Exp | 100.0% | EXPIR | |
| MP 272 | G34865 | Federal | RT | 7/1/2013 | 4,995 | Apache Shelf Exp | 75.0% | RELINQ | |
| MP 273 | G33690 | Federal | RT | 7/1/2010 | 4,995 | Castex Off | 37.5% | UNIT | |
| MP 274 | G33691 | Federal | RT | 7/1/2010 | 4,995 | Castex Off | 37.5% | EXPIR | |
| MP 275 | G15395 | Federal | RT | 9/1/1995 | 4,995 | Fieldwood En | 100.0% | PROD | |
| MP 275 | G15395 | Federal | ORRI | 9/1/1995 | | Fieldwood En | 8.3% | PROD | |
| MP 281 | G10910 | Federal | RT | 7/1/1989 | 4,995 | EnVen En Vent | 50.0% | PROD | |
| MP 281 | G10910 | Federal | OP | 7/1/1989 | 4,995 | EnVen En Vent | 30.0% | PROD | |
| MP 281 | G10910 | Federal | ORRI | 7/1/1989 | | EnVen En Vent | 3.1% | PROD | |
| MP 289 | G01666 | Federal | RT | 7/1/1967 | 4,561 | Fieldwood En | 100.0% | PROD | |
| MP 290 | G01667 | Federal | RT | 7/1/1967 | 4,561 | Apache | 100.0% | TERMIN | |
| MP 290 | G34866 | Federal | RT | 7/1/2013 | 4,561 | Apache Shelf Exp | 75.0% | RELINQ | |
| MP 291 | G34391 | Federal | RT | 11/1/2012 | 4,561 | Apache Shelf Exp | 100.0% | EXPIR | |
| MP 292 | G34392 | Federal | RT | 11/1/2012 | 4,561 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 293 | G34393 | Federal | RT | 11/1/2012 | 4,561 | Apache Shelf Exp | 100.0% | EXPIR | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| MP 294 | G34394 | Federal | RT | 11/1/2012 | 4,561 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 295 | G32263 | Federal | CONT | 8/1/2008 | 4,561 | Fieldwood En | 37.5% | TERMIN | |
| MP 296 | G01673 | Federal | RT | 6/1/1967 | 4,561 | GOM Shelf | 50.0% | UNIT | [1] |
| MP 296 | G01673 | Federal | OP | 6/1/1967 | 4,561 | GOM Shelf | 25.0% | UNIT | |
| MP 297 | G34395 | Federal | RT | 11/1/2012 | 4,561 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 300 | G01317 | Federal | OP | 6/1/1962 | 4,561 | Cantium | 10.4% | UNIT | |
| MP 301 | G04486 | Federal | OP 1 | 11/1/1980 | 5,000 | Walter O&G | 10.4% | TERMIN | |
| MP 301 | G04486 | Federal | OP 2 | 11/1/1980 | 5,000 | Walter O&G | 6.3% | TERMIN | |
| MP 301 | G04486 | Federal | OP 3 | 11/1/1980 | 5,000 | Walter O&G | 10.4% | TERMIN | |
| MP 301 | G04486 | Federal | RT | 11/1/1980 | 5,000 | Walter O&G | 10.4% | TERMIN | |
| MP 302 | G32264 | Federal | RT | 7/1/2008 | 5,000 | GOM Shelf | 100.0% | PROD | |
| MP 303 | G04253 | Federal | OP 1 | 12/1/1979 | 5,000 | Fieldwood En | 25.0% | UNIT | |
| MP 303 | G04253 | Federal | RT | 12/1/1979 | 5,000 | Fieldwood En | 100.0% | UNIT | |
| MP 304 | G03339 | Federal | OP | 4/1/1976 | 5,000 | ConocoPhillips | 100.0% | UNIT | |
| MP 305 | G34396 | Federal | RT | 12/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| MP 308 | G32265 | Federal | RT | 8/1/2008 | 5,000 | Fieldwood En | 100.0% | PROD | |
| MP 309 | G08760 | Federal | RT | 6/1/1987 | 5,000 | Fieldwood En | 100.0% | PROD | |
| MP 310 | G04126 | Federal | RT | 10/1/1974 | 5,000 | Fieldwood En | 100.0% | UNIT | |
| MP 311 | G02213 | Federal | RT | 11/1/1972 | 5,000 | GOM Shelf | 50.0% | PROD | [1] |
| MP 311 | G02213 | Federal | OP | 11/1/1972 | 5,000 | GOM Shelf | 25.0% | PROD | |
| MP 312 | G16520 | Federal | RT | 7/1/1996 | 5,000 | Fieldwood En | 100.0% | PROD | |
| MP 314 | G33693 | Federal | OP | 7/1/2010 | 5,000 | Apache Shelf Exp | 80.0% | EXPIR | |
| MP 315 | G08467 | Federal | RT | 7/1/1986 | 5,000 | Fieldwood En | 100.0% | PROD | |
| MP 315 | G08467 | Federal | OP 3 | 7/1/1986 | 5,000 | Fieldwood En | 100.0% | PROD | |
| MP 315 | G08467 | Federal | OP 1 | 7/1/1986 | 5,000 | Fieldwood En | 80.0% | PROD | |
| MP 5 | SL13890 | SL-LA | WI | | 26 | Apache | 50.0% | TERMIN | |
| MP 59 | G03194 | Federal | OP | 7/1/1975 | 1,406 | Cantium | 37.5% | UNIT | |
| MP 59 | G08461 | Federal | OP | 7/1/1986 | 2,340 | Cantium | 37.5% | UNIT | |
| MP 6 | SL03771 | SL-LA | WI | 4/26/1961 | 1,067 | Apache | 50.0% | TERMIN | |
| MP 6 | SL13580 | SL-LA | WI | | 287 | Apache | 50.0% | TERMIN | |
| MP 6 | SL13891 | SL-LA | WI | | 270 | Apache | 50.0% | TERMIN | |
| MP 64 | G04909 | Federal | ORRI | 12/1/1981 | 4,988 | Sanare En Part | 4.2% | UNIT | |
| MP 7 | SL03773 | SL-LA | WI | 4/26/1961 | – | Apache | 50.0% | TERMIN | |
| MP 7 | SL13892 | SL-LA | WI | | 44 | Apache | 50.0% | TERMIN | |
| MP 74 | G34857 | Federal | RT | 8/1/2013 | 1,733 | Apache Shelf Exp | 75.0% | RELINQ | |
| MP 77 | G04481 | Federal | RT | 11/1/1980 | 4,655 | Fieldwood En Off | 26.2% | RELINQ | [4] |
| MP 77/78 | G04481 | Federal | OP | 11/1/1980 | 4,655 | Fieldwood En Off | 23.5% | RELINQ | [4] |
| MP 91 | G14576 | Federal | RT | 5/1/1994 | 1,017 | Apache | 100.0% | TERMIN | |
| MU 883 | MF98761 | SL - TX | WI | | | Apache | 100.0% | TERMIN | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| MU A-111 | G03068 | Federal | RT | 4/1/1975 | 5,760 | Apache | 100.0% | TERMIN | |
| MU A133 | G33392 | Federal | RT | 10/1/2009 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR | |
| MU A134 | G32724 | Federal | RT | 11/1/2008 | 5,760 | Apache | 100.0% | EXPIR | |
| MU A85 | G03061 | Federal | RT | 4/1/1975 | 5,760 | EnVen En Vent | 53.3% | PROD | |
| PE 881 | G06390 | Federal | OP | 2/1/1984 | 5,760 | ConocoPhillips | 18.8% | TERMIN | |
| PL 1 | G04234 | Federal | RT | 1/1/1980 | 1,568 | Fieldwood En | 100.0% | TERMIN | |
| PL 10 | G02925 | Federal | RT | 12/1/1974 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| PL 11 | 00071 | Federal | RT | 9/12/1946 | 5,000 | Fieldwood En | 100.0% | RELINQ | |
| PL 13 | G03171 | Federal | RT | 7/1/1975 | 5,000 | ANKOR En | 12.5% | TERMIN | |
| PL 13 | G03171 | Federal | OP 1 | 7/1/1975 | 391 | ANKOR En | 12.5% | TERMIN | |
| PL 13 | G03171 | Federal | OP 2 | 7/1/1975 | 3,906 | ANKOR En | 12.5% | TERMIN | |
| PL 13 | G03171 | Federal | OP 3 | 7/1/1975 | 703 | ANKOR En | 4.4% | TERMIN | |
| PL 13 | G03171 | Federal | OP 5 | 7/1/1975 | 391 | ANKOR En | 12.5% | TERMIN | |
| PL 25 | G14535 | Federal | RT | 7/1/1994 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| PL 5 | G12027 | Federal | RT | 6/1/1990 | 5,000 | Talos En Off | 100.0% | RELINQ | |
| PL 6 | G09651 | Federal | RT | 5/1/1988 | 5,000 | Walter O&G | 100.0% | RELINQ | |
| PL 6 | G09651 | Federal | OP 1 | 5/1/1988 | 5,000 | Walter O&G | 35.0% | RELINQ | |
| PL 6 | G09651 | Federal | OP 2 | 5/1/1988 | 5,000 | Walter O&G | 65.0% | RELINQ | |
| PL 8 | G03587 | Federal | RT | 8/1/1977 | 5,000 | ANKOR En | 12.5% | TERMIN | |
| PL 9 | G02924 | Federal | RT | 12/1/1974 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| PL 9 | G02924 | Federal | OP | 12/1/1974 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| PN 883 | MF100410 | SL - TX | WI | 10/6/1998 | 720 | Fieldwood | 35.0% | ACTIVE | |
| PN 883 | MF100411 | SL - TX | WI | 10/6/1998 | 720 | Fieldwood | 35.0% | ACTIVE | |
| PN 883 | MF100412 | SL - TX | WI | 10/6/1998 | 720 | Fieldwood | 35.0% | ACTIVE | |
| PN 883 | MF101898 | SL - TX | WI | 10/6/1998 | | Apache | 35.0% | TERMIN | |
| PN 883 | MF96146 | SL - TX | WI | 10/4/1994 | 720 | Fieldwood | 35.0% | ACTIVE | |
| PN 883 | MF96147 | SL - TX | WI | 10/4/1994 | 720 | Fieldwood | 35.0% | ACTIVE | |
| PN 883L | SL96146 | SL - TX | WI | 10/4/1994 | 720 | Fieldwood | 35.0% | ACTIVE | |
| PN 899L | MF100413 | SL - TX | WI | 10/6/1998 | 375 | Fieldwood | 35.0% | ACTIVE | |
| PN 899L | MF100414 | SL - TX | WI | 10/6/1998 | 360 | Fieldwood | 35.0% | ACTIVE | |
| PN 969 | G05953 | Federal | RT | 10/1/1983 | 5,760 | Peregrine O&G II | 8.3% | TERMIN | |
| PN 976 | G05954 | Federal | RT | 10/1/1983 | 5,760 | Peregrine O&G II | 8.3% | TERMIN | |
| SA 10 | G03958 | Federal | RT | 3/1/1979 | 3,144 | Fieldwood En | 92.3% | TERMIN | |
| SA 10 | G03958 | Federal | OP | 3/1/1979 | 3,144 | Fieldwood En | 20.0% | TERMIN | |
| SA 13 | G03959 | Federal | OP | 3/1/1979 | 5,000 | Renaissance Off | 50.0% | TERMIN | |
| SM 10 | G01181 | Federal | RT | 4/1/1962 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| SM 105 | G17938 | Federal | RT | 8/1/1997 | 5,000 | Fieldwood En | 100.0% | PROD | |
| SM 106 | G02279 | Federal | RT | 2/1/1973 | 2,500 | Fieldwood En | 100.0% | TERMIN | |
| SM 106 | G03776 | Federal | RT | 6/1/1978 | 2,500 | Fieldwood En | 100.0% | PROD | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| SM 108 | 00792 | Federal | RT | 5/1/1960 | 5,000 | Talos En Off | 25.0% | PROD | [1] |
| SM 108 | 00792 | Federal | OP | 5/1/1960 | 5,000 | Talos En Off | 12.5% | PROD | |
| SM 11 | G01182 | Federal | RT | 3/1/1962 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| SM 127 | G02883 | Federal | RT | 12/1/1974 | 2,784 | Fieldwood En | 66.7% | PROD | |
| SM 127 | G02883 | Federal | OP 2 | 12/1/1974 | 2,784 | Fieldwood En | 33.3% | PROD | |
| SM 127 | G02883 | Federal | RT | 12/1/1974 | 2,784 | Fieldwood En | 17.3% | PROD | [1] |
| SM 127 | G02883 | Federal | OP 2 | 12/1/1974 | 2,784 | Fieldwood En | 8.7% | PROD | [1] |
| SM 128 | G02587 | Federal | RT | 5/1/1974 | 5,000 | Fieldwood En | 66.7% | PROD | |
| SM 128 | G02587 | Federal | RT | 5/1/1974 | 5,000 | Fieldwood En | 17.3% | PROD | [1] |
| SM 132 | G02282 | Federal | RT | 2/1/1973 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| SM 135 | G19776 | Federal | RT | 5/1/1998 | 3,293 | Fieldwood En | 50.0% | TERMIN | [4] |
| SM 136 | G02588 | Federal | RT | 5/1/1974 | 2,500 | Fieldwood En | 50.0% | TERMIN | [4] |
| SM 137 | G02589 | Federal | RT | 5/1/1974 | 5,000 | Fieldwood En | 50.0% | TERMIN | [4] |
| SM 141 | G02885 | Federal | OP 2 | 12/1/1974 | 5,000 | Fieldwood En | 66.7% | TERMIN | |
| SM 141 | G02885 | Federal | RT | 12/1/1974 | 5,000 | Fieldwood En | 77.6% | TERMIN | |
| SM 141 | G02885 | Federal | OP 2 | 12/1/1974 | 5,000 | Fieldwood En | 17.3% | TERMIN | [1] |
| SM 149 | G02592 | Federal | RT | 5/1/1974 | 2,500 | Fieldwood En | 50.0% | PROD | [2] |
| SM 149 | G02592 | Federal | OP | 5/1/1974 | 2,500 | Fieldwood En | 25.0% | PROD | [2] |
| SM 150 | G16325 | Federal | RT | 6/1/1996 | 3,329 | Fieldwood En | 50.0% | RELINQ | [4] |
| SM 161 | G04809 | Federal | RT | 9/1/1981 | 5,000 | Fieldwood En | 100.0% | PROD | |
| SM 171 | G34273 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR | |
| SM 172 | G34274 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| SM 177 | G34275 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| SM 178 | G34276 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR | |
| SM 18 | G08680 | Federal | RT | 6/1/1987 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| SM 18 | G08680 | Federal | OP | 6/1/1987 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| SM 188 | G34277 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| SM 189 | G34278 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| SM 193 | G34279 | Federal | RT | 9/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| SM 195 | G21108 | Federal | ORRI | 6/1/1999 | | Tarpon O&D | 4.0% | TERMIN | |
| SM 236 | G4437 | Federal | ORRI | 11/1/1980 | | Cox Op | 4.4% | UNIT | |
| SM 241 | 00310 | Federal | RT | 2/7/1936 | 114,601 | Cox Op | 60.0% | UNIT | |
| SM 241 | 00310 | Federal | OP | 2/7/1936 | 114,601 | Cox Op | 60.0% | UNIT | |
| SM 241 | 00310 | Federal | Unit | 2/7/1936 | 114,601 | Cox Op | 16.0% | UNIT | |
| SM 268 | G02310 | Federal | CONT | 12/19/1972 | | Apache | 69.9% | TERMIN | [4] |
| SM 268 | G34284 | Federal | RT | 8/1/2012 | 3,237 | Apache Shelf Exp | 100.0% | EXPIR | [4] |
| SM 269 | G02311 | Federal | RT | 1/1/1973 | 5,000 | Fieldwood En | 72.8% | PROD | [4] |
| SM 280 | G14456 | Federal | OP 1 | 6/1/1994 | 5,000 | Fieldwood En | 50.0% | PROD | [4] |
| SM 280 | G14456 | Federal | OP 3 | 6/1/1994 | 5,000 | Fieldwood En | 50.0% | PROD | [4] |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|---|---|---|---|---|---|---|---|---|---|
| SM 280 | G14456 | Federal | RT | 6/1/1994 | 5,000 | Fieldwood En | 50.0% | PROD | [4] |
| SM 281 | G02600 | Federal | RT | 4/1/1974 | 3,214 | Fieldwood En | 68.1% | PROD | [4] |
| SM 34 | G13897 | Federal | OP | 5/1/1993 | 5,000 | Black Elk En Off Op | 50.0% | TERMIN | |
| SM 41 | G01192 | Federal | OP 2 | 6/1/1962 | 5,000 | Sanare En Part | 25.0% | PROD | [2] |
| SM 41 | G01192 | Federal | OP 3 | 6/1/1962 | 5,000 | Sanare; Fieldwd En Off | 50.0% | PROD | [2] |
| SM 44 | G23840 | Federal | RT | 5/1/2002 | 5,000 | SandRidge En Off | 100.0% | TERMIN | |
| SM 48 | 00786 | Federal | RT | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | [2] |
| SM 48 | 00786 | Federal | OP | 5/1/1960 | 5,000 | Fieldwood En | 50.0% | PROD | [2] |
| SM 58 | G01194 | Federal | RT | 5/1/1962 | 5,000 | ANKOR En | 100.0% | PROD | |
| SM 66 | G01198 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 50.0% | TERMIN | [4] |
| SM 7 | G33610 | Federal | RT | 7/1/2010 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| SM 76 | G01208 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| SM 93 | G21618 | Federal | RT | 5/1/2000 | 5,000 | Talos ERT | 12.5% | PROD | |
| SM 97 | G32159 | Federal | RT | 8/1/2008 | 5,000 | Apache | 100.0% | EXPIR | |
| SP 61 | G01609 | Federal | OP | 7/1/1967 | 5,000 | Fieldwood En | 100.0% | UNIT | [5] |
| SP 62 | G01294 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 100.0% | PROD | |
| SP 63 | G34365 | Federal | RT | 8/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR | |
| SP 64 | G01901 | Federal | RT | 1/1/1969 | 5,000 | Fieldwood En | 50.0% | UNIT | |
| SP 64 | G01901 | Federal | OP | 1/1/1969 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| SP 65 | G01610 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 50.0% | UNIT | |
| SP 65 | G01610 | Federal | OP | 7/1/1967 | 5,000 | Fieldwood En | 75.0% | UNIT | |
| SP 66 | G1611 | Federal | ORRI | 6/1/1967 | | Fieldwood En | 8.3% | UNIT | [4] |
| SP 68 | G34366 | Federal | RT | 8/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| SP 69 | G34367 | Federal | RT | 8/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| SP 70 | G01614 | Federal | RT | 6/1/1967 | 5,000 | Fieldwood En | 100.0% | PROD | |
| SP 75 | G05051 | Federal | OP 2 | 4/1/1982 | 5,000 | GOM Shelf | 28.8% | TERMIN | |
| SP 75 | G05051 | Federal | RT | 4/1/1982 | 5,000 | GOM Shelf | 71.2% | TERMIN | [1] |
| SP 75 | G05051 | Federal | OP 2 | 4/1/1982 | 5,000 | GOM Shelf | 71.2% | TERMIN | [1] |
| SP 83 | G05052 | Federal | ORRI | 4/1/1982 | 5,000 | Arena Off | 0.7% | RELINQ | |
| SP 87 | G07799 | Federal | RT | 9/1/1985 | 3,540 | Fieldwood En | 33.3% | TERMIN | |
| SP 87 | G07799 | Federal | RT | 9/1/1985 | 3,540 | Fieldwood En | 33.3% | TERMIN | [1] |
| SP 88 | G10894 | Federal | RT | 6/1/1989 | 3,540 | Apache | 100.0% | RELINQ | |
| SP 89 | G01618 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 50.0% | PROD | |
| SP 96 | G31431 | Federal | RT | 3/1/2008 | 5,000 | Stone En | 50.0% | RELINQ | |
| SS 105 | G09614 | Federal | RT | 8/1/1988 | 5,000 | Bennu O&G | 100.0% | PROD | |
| SS 105 | G09614 | Federal | OP 2 | 8/1/1988 | 5,000 | Bennu O&G | 100.0% | PROD | |
| SS 105 | G09614 | Federal | OP 3 | 8/1/1988 | 5,000 | Bennu O&G | 100.0% | PROD | |
| SS 126 | G12940 | Federal | RT | 5/1/1991 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| SS 126 | G12940 | Federal | OP | 5/1/1991 | 5,000 | Fieldwood En | 100.0% | TERMIN | |

15

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| SS 129 | G12941 | Federal | RT | 5/1/1991 | 5,000 | Fieldwood En | 100.0% | PROD | |
| SS 129 | G12941 | Federal | ORRI | 5/1/1991 | | Fieldwood En | 3.3% | PROD | |
| SS 130 | 00453 | Federal | ORRI | 1/1/1955 | 5,000 | W&T Off | 3.0% | TERMIN | |
| SS 145 | G34831 | Federal | CONT | 9/1/2014 | 5,000 | Hoactzin Part | 25.0% | TERMIN | |
| SS 150 | 00419 | Federal | ORRI | 11/1/1954 | 5,000 | Ridgelake En | 5.0% | PROD | |
| SS 151 | G15282 | Federal | RT | 7/1/1995 | 5,000 | EnVen En Vent | 100.0% | PROD | |
| SS 153 | G18011 | Federal | RT | 7/1/1997 | 5,000 | Fieldwood En | 33.3% | TERMIN | |
| SS 154 | 00420 | Federal | ORRI | 11/1/1954 | | Ridgelake En | 8.0% | PROD | |
| SS 159 | G11984 | Federal | OP | 7/1/1990 | 5,000 | Hoactzin Part | 15.5% | TERMIN | |
| SS 169 | 00820 | Federal | RT | 4/1/1960 | 5,000 | Fieldwood En | 66.7% | PROD | [4] |
| SS 175 | G05550 | Federal | RT | 7/1/1983 | 5,000 | Chevron USA | 66.7% | UNIT | |
| SS 176 | G33646 | Federal | RT | 7/1/2010 | 5,000 | Fieldwood En | 40.0% | PROD | |
| SS 178 | G05551 | Federal | RT | 7/1/1983 | 5,000 | Fieldwood En | 100.0% | PROD | |
| SS 182 | G03998 | Federal | RT | 3/1/1979 | 2,500 | Fieldwood En | 100.0% | PROD | |
| SS 188 | G05203 | Federal | CONT | 1/1/1983 | 5,027 | Fieldwood En | 100.0% | TERMIN | |
| SS 189 | G04232 | Federal | OP 5 | 12/1/1979 | 5,000 | Fieldwood En | 99.0% | PROD | [4] |
| SS 189 | G04232 | Federal | RT | 12/1/1979 | 5,000 | Fieldwood En | 99.0% | PROD | [4] |
| SS 189 | G4232 | Federal | ORRI | 12/1/1979 | | Fieldwood En | 8.0% | PROD | [4] |
| SS 190 | G10775 | Federal | RT | 4/1/1989 | 5,000 | Fieldwood En | 60.0% | TERMIN | |
| SS 190 | G10775 | Federal | OP | 4/1/1989 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| SS 193 | G13917 | Federal | RT | 5/1/1993 | 5,000 | Fieldwood En | 100.0% | PROD | |
| SS 194 | G15288 | Federal | RT | 7/1/1995 | 5,000 | Fieldwood En | 100.0% | PROD | |
| SS 198 | 00593 | Federal | RT | 9/1/1955 | 2,969 | Renaissance Off | 50.0% | PROD | [1] |
| SS 198 | G12355 | Federal | OP | 9/1/1955 | 2,031 | Renaissance Off | 25.0% | PROD | |
| SS 199 | 00594 | Federal | RT | 9/1/1955 | 3,516 | Talos En Off | 50.0% | PROD | |
| SS 199 | G12358 | Federal | OP | 9/1/1955 | 1,484 | Renaissance Off | 50.0% | PROD | |
| SS 204 | G01520 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 55.2% | PROD | [4] |
| SS 206 | G01522 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 60.0% | UNIT | [4] |
| SS 207 | G01523 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 72.2% | UNIT | [4] |
| SS 207 | G01523 | Federal | OP | 7/1/1967 | 5,000 | Fieldwood En | 47.6% | UNIT | [4] |
| SS 210 | G05204 | Federal | CONT | 1/1/1983 | 5,000 | Fieldwood En | 100.0% | RELINQ | |
| SS 216 | G01524 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 80.0% | PROD | [4] |
| SS 243 | G10780 | Federal | RT | 7/1/1989 | 5,000 | Fieldwood En | 50.0% | PROD | |
| SS 243 | G10780 | Federal | ORRI | 7/1/1989 | | Fieldwood En | 4.2% | PROD | |
| SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | 5,000 | Fieldwood En Off | 5.3% | UNIT | [4] |
| SS 249 | G1030 | Federal | ORRI | 6/1/1962 | | Fieldwood En Off | 0.2% | UNIT | [4] |
| SS 258 | G05560 | Federal | RT | 7/1/1983 | 5,000 | Castex Off | 100.0% | TERMIN | |
| SS 258 | G05560 | Federal | OP | 7/1/1983 | 5,000 | Castex Off | 7.4% | TERMIN | |
| SS 259 | G05044 | Federal | RT | 4/1/1982 | 5,141 | Fieldwood En | 100.0% | TERMIN | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| SS 259 | G05044 | Federal | OP | 4/1/1982 | 5,141 | Fieldwood En | 7.4% | TERMIN | |
| SS 271 | G01038 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En Off | 20.0% | UNIT | [4] |
| SS 274 | G01039 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 100.0% | PROD | |
| SS 276 | G10785 | Federal | RT | 5/1/1989 | 5,000 | Monforte | 66.7% | TERMIN | |
| SS 277 | G09627 | Federal | RT | 5/1/1988 | 5,000 | Fieldwood En | 1.0% | SOP | |
| SS 277 | G09627 | Federal | OP | 5/1/1988 | 5,000 | Fieldwood En | 100.0% | SOP | |
| SS 278 | G32206 | Federal | RT | 8/1/2008 | 5,000 | Apache | 100.0% | EXPIR | |
| SS 291 | G02923 | Federal | OP | 12/1/1974 | 3,750 | Fieldwood En | 67.9% | OPERNS | [4] |
| SS 30 | 00333 | Federal | RT | 9/12/1946 | 5,000 | W & T Off | 37.5% | UNIT | |
| SS 301 | G10794 | Federal | ORRI | 5/1/1989 | | Fieldwood En | 1.5% | SOP | [2] |
| SS 31 | 00334 | Federal | RT | 9/12/1946 | 5,000 | W & T Off | 37.5% | UNIT | |
| SS 314 | G26074 | Federal | OP 4 | 5/1/2004 | 5,000 | Fieldwood En | 37.5% | PROD | |
| SS 314 | G26074 | Federal | RT | 5/1/2004 | 5,000 | Fieldwood En | 75.0% | PROD | |
| SS 314 | G26074 | Federal | ORRI | 5/1/2004 | | Fieldwood En | 4.5% | PROD | |
| SS 32 | 00335 | Federal | RT | 9/12/1946 | 5,000 | W & T Off | 37.5% | UNIT | |
| SS 33 | 00336 | Federal | CONT | 9/12/1946 | 5,000 | W&T Off | 28.9% | UNIT | |
| SS 33 | 00336 | Federal | ORRI | 9/12/1946 | 5,000 | W&T Off | 0.8% | UNIT | |
| SS 354 | G15312 | Federal | RT | 7/1/1995 | 5,000 | Fieldwood En | 100.0% | PROD | |
| SS 355 | G33650 | Federal | RT | 6/1/2010 | 5,323 | Apache Shelf Exp | 100.0% | RELINQ | |
| SS 58 | G07746 | Federal | ORRI | 7/1/1985 | 5,000 | Talos Third Cst | 10.5% | PROD | |
| SS 68 | G02917 | Federal | RT | 12/1/1974 | 5,000 | Fieldwood En | 100.0% | RELINQ | |
| SS 87 | G12349 | Federal | ORRI | 9/12/1946 | 1,953 | Sanare En Part | 1.0% | UNIT | |
| SS 91 | G02919 | Federal | RT | 12/1/1974 | 5,000 | Fieldwood En | 87.5% | PROD | |
| SS 91 | G02919 | Federal | OP 2 | 12/1/1974 | 5,000 | Fieldwood En | 87.5% | PROD | |
| SS 91 | G02919 | Federal | OP 2 | 12/1/1974 | 5,000 | Fieldwood En | 12.5% | PROD | [1] |
| SS 91 | G02919 | Federal | RT | 12/1/1974 | 5,000 | Fieldwood En | 12.5% | PROD | [1] |
| ST 146 | G33110 | Federal | RT | 7/1/2009 | 3,772 | Apache Shelf Exp | 100.0% | EXPIR | |
| ST 148 | G01960 | Federal | RT | 2/1/1970 | 2,500 | Arena Off | 15.6% | PROD | |
| ST 148 | G01960 | Federal | OP | 2/1/1970 | 2,500 | Arena Off | 15.6% | PROD | |
| ST 161 | G01248 | Federal | OP | 6/1/1962 | 5,000 | Arena Off | 25.0% | PROD | |
| ST 166 | G01252 | Federal | OP | 6/1/1962 | 5,000 | Apache | 100.0% | TERMIN | |
| ST 173 | G04001 | Federal | RT | 3/1/1979 | 5,000 | Apache | 100.0% | TERMIN | |
| ST 179 | G12020 | Federal | RT | 6/1/1990 | 5,000 | Fieldwood En Off | 50.0% | TERMIN | |
| ST 179 | G12020 | Federal | OP | 6/1/1990 | 5,000 | Fieldwood En Off | 68.8% | TERMIN | |
| ST 190 | G01261 | Federal | RT | 6/1/1962 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN | |
| ST 190 | G01261 | Federal | OP | 6/1/1962 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN | |
| ST 194 | G05610 | Federal | RT | 7/1/1983 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| ST 203 | G01269 | Federal | OP 1 | 6/1/1962 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN | |
| ST 203 | G01269 | Federal | OP 2 | 6/1/1962 | 5,000 | Black Elk En Off Op | 20.0% | TERMIN | |

17

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|---|---|---|---|---|---|---|---|---|---|
| ST 203 | G01269 | Federal | RT | 6/1/1962 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN | |
| ST 205 | G05612 | Federal | RT | 7/1/1983 | 5,000 | Fieldwood En | 50.0% | PROD | |
| ST 205 | G05612 | Federal | OP 3 | 7/1/1983 | 5,000 | Fieldwood En | 75.0% | PROD | |
| ST 205 | G05612 | Federal | OP 4 | 7/1/1983 | 5,000 | Fieldwood En | 100.0% | PROD | |
| ST 205 | G05612 | Federal | OP 7 | 7/1/1983 | 5,000 | Fieldwood En | 50.0% | PROD | |
| ST 205 | G05612 | Federal | OP 6 | 7/1/1983 | 5,000 | Fieldwood En | 75.0% | PROD | |
| ST 205 | G05612 | Federal | OP 5 | 7/1/1983 | 5,000 | Fieldwood En | 50.0% | PROD | |
| ST 205 | G05612 | Federal | ORRI | 7/1/1983 | 5,000 | Fieldwood En | 2.0% | PROD | |
| ST 206 | G05613 | Federal | RT | 7/1/1983 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| ST 228 | G32217 | Federal | RT | 8/1/2008 | 5,000 | Eni US Op | 40.0% | EXPIR | |
| ST 229 | G13938 | Federal | OP | 7/1/1993 | 2,148 | W & T Off | 33.3% | PROD | |
| ST 244 | G34341 | Federal | RT | 10/1/2012 | 4,572 | Apache Shelf Exp | 100.0% | RELINQ | |
| ST 26 | G01361 | Federal | RT | 5/1/1964 | 625 | Cox Op | 50.0% | UNIT | |
| ST 26 | G01870 | Federal | RT | 11/1/1968 | 1,875 | Cox Op | 50.0% | UNIT | |
| ST 26 | G02620 | Federal | RT | 5/1/1974 | 2,500 | Cox Op | 50.0% | UNIT | |
| ST 276 | G07780 | Federal | RT | 8/1/1985 | 5,000 | Eni US Op | 100.0% | UNIT | |
| ST 276 | G07780 | Federal | OP | 8/1/1985 | 5,000 | Eni US Op | 100.0% | UNIT | |
| ST 290 | G16454 | Federal | RT | 4/24/1996 | 5,000 | Apache | 100.0% | TERMIN | |
| ST 291 | G16455 | Federal | RT | 9/1/1996 | 5,000 | Fieldwood En | 100.0% | PROD | |
| ST 291 | G16455 | Federal | OP | 9/1/1996 | 5,000 | Fieldwood En | 100.0% | PROD | |
| ST 295 | G05646 | Federal | RT | 7/1/1983 | 5,000 | Fieldwood En | 100.0% | UNIT | |
| ST 296 | G12981 | Federal | RT | 5/1/1991 | 5,000 | Fieldwood En | 100.0% | UNIT | |
| ST 296 | G12981 | Federal | OP | 5/1/1991 | 5,000 | Fieldwood En | 100.0% | UNIT | |
| ST 311 | G31418 | Federal | RT | 3/1/2008 | 5,000 | Walter O&G | 45.0% | PROD | |
| ST 316 | G22762 | Federal | RT | 6/1/2001 | 4,435 | W & T Off | 20.0% | PROD | [4] |
| ST 320 | G24990 | Federal | RT | 5/1/2003 | 5,000 | W & T Off | 11.3% | PROD | |
| ST 47 | G33652 | Federal | RT | 7/1/2010 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| ST 49 | G24956 | Federal | RT | 6/1/2003 | 5,000 | Fieldwood En | 100.0% | PROD | |
| ST 49 | G24956 | Federal | OP | 6/1/2003 | 5,000 | Fieldwood En | 100.0% | PROD | |
| ST 50 | G34331 | Federal | RT | 8/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| ST 53 | G04000 | Federal | RT | 3/1/1979 | 5,000 | Fieldwood En | 50.0% | PROD | [2] |
| ST 53 | G04000 | Federal | OP 1 | 3/1/1979 | 5,000 | Fieldwood En | 50.0% | PROD | [2] |
| ST 53 | G04000 | Federal | OP 2 | 3/1/1979 | 5,000 | Fieldwood En | 25.0% | PROD | [2] |
| ST 59 | G31404 | Federal | RT | 2/1/2008 | 5,000 | LLOG Exp Off | 25.0% | RELINQ | |
| ST 64 | G33106 | Federal | RT | 7/1/2009 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR | |
| ST 67 | 00020 | Federal | CONT | 4/25/1947 | | Fieldwood En | 79.7% | UNIT | [2] |
| SX 17 | G04143 | Federal | RT | 10/1/1979 | 2,042 | Apache | 92.3% | RELINQ | |
| SX 17 | G04143 | Federal | OP | 10/1/1979 | 2,042 | Apache | 20.0% | RELINQ | |
| VK 118 | G33697 | Federal | RT | 5/1/2010 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| VK 203 | G07890 | Federal | RT | 7/1/1985 | 5,760 | Talos ERT | 33.3% | TERMIN | |
| VK 203 | G07890 | Federal | OP | 7/1/1985 | 5,760 | Talos ERT | 33.3% | TERMIN | |
| VK 204 | G04921 | Federal | RT | 12/1/1981 | 5,760 | Talos ERT | 33.3% | TERMIN | |
| VK 204 | G04921 | Federal | OP | 12/1/1981 | 5,760 | Talos ERT | 33.3% | TERMIN | |
| VK 251 | G10930 | Federal | OP | 7/1/1989 | 5,760 | Fieldwood En Off | 7.5% | UNIT | [3] |
| VK 340 | G10933 | Federal | OP | 7/1/1989 | 5,760 | Fieldwood En Off | 7.5% | UNIT | [3] |
| VK 384 | G16541 | Federal | OP | 6/1/1996 | 5,760 | Chevron USA | 20.0% | TERMIN | |
| VK 692/693 | G07898 | Federal | RT | 9/1/1985 | 4,773 | Fieldwood En | 56.9% | TERMIN | |
| VK 694 | G13055 | Federal | RT | 7/1/1991 | 3,214 | Fieldwood En | 53.1% | TERMIN | |
| VK 694 | G13055 | Federal | OP | 7/1/1991 | 3,214 | Fieldwood En | 92.1% | TERMIN | |
| VK 698 | G07901 | Federal | RT | 8/1/1985 | 4,996 | Fieldwood En | 52.4% | TERMIN | |
| VK 736 | G13987 | Federal | RT | 7/1/1993 | 4,742 | Fieldwood En | 100.0% | TERMIN | |
| VK 780 | G06884 | Federal | RT | 6/1/1984 | 5,760 | Fieldwood En | 100.0% | TERMIN | |
| VK 824 | G15436 | Federal | RT | 9/1/1995 | 5,760 | Apache | 100.0% | RELINQ | |
| VK 856 | G34872 | Federal | RT | 7/1/2013 | 877 | Apache Shelf Exp | 75.0% | RELINQ | |
| VK 899 | G34408 | Federal | RT | 8/1/2012 | 1,553 | Apache Shelf Exp | 100.0% | EXPIR | |
| VR 115 | G33593 | Federal | RT | 6/1/2010 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| VR 128 | G33594 | Federal | RT | 6/1/2010 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| VR 131 | 00775 | Federal | OP | 5/1/1960 | 4,923 | Talos En Off | 72.5% | TERMIN | |
| VR 146 | G33084 | Federal | RT | 7/1/2009 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR | |
| VR 156 | G34251 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| VR 160 | G34252 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| VR 161 | G34253 | Federal | RT | 10/1/2012 | 4,868 | Apache Shelf Exp | 100.0% | RELINQ | |
| VR 252 | G05431 | Federal | ORRI | 7/1/1983 | 4,454 | Castex Off | 2.0% | PROD | |
| VR 253 | G17912 | Federal | ORRI | 7/1/1997 | 5,000 | Castex Off | 0.6% | PROD | |
| VR 26 | 00297 | Federal | OP 1 | 11/26/1946 | 4,646 | Apache Shelf | 100.0% | TERMIN | |
| VR 26 | 00297 | Federal | OP 2 | 11/26/1946 | 4,646 | Apache Shelf | 25.0% | TERMIN | |
| VR 26 | 00297 | Federal | RT | 11/26/1946 | 4,646 | Apache Shelf | 50.0% | TERMIN | |
| VR 261 | G03328 | Federal | RT | 4/1/1976 | 5,429 | Fieldwood En | 75.0% | TERMIN | [4] |
| VR 261 | G03328 | Federal | OP 2 | 4/1/1976 | 5,429 | Fieldwood En | 37.5% | TERMIN | [4] |
| VR 261 | G03328 | Federal | ORRI | 4/1/1976 | | Fieldwood En | 6.3% | TERMIN | [4] |
| VR 262 | G34257 | Federal | RT | 10/1/2012 | 5,485 | Fieldwood En | 75.0% | RELINQ | [4] |
| VR 265 | G01955 | Federal | RT | 1/1/1970 | 5,000 | Fieldwood En | 100.0% | SOP | |
| VR 27 | G01329 | Federal | OP 2 | 12/1/1962 | 1,902 | Apache Shelf | 100.0% | TERMIN | |
| VR 27 | G01329 | Federal | OP 1 | 12/1/1962 | 1,902 | Apache Shelf | 25.0% | TERMIN | |
| VR 27 | G01329 | Federal | RT | 12/1/1962 | 1,902 | Apache Shelf | 50.0% | TERMIN | |
| VR 271 | G04800 | Federal | OP | 9/1/1981 | 4,418 | Castex Off | 12.5% | PROD | |
| VR 326 | G21096 | Federal | RT | 6/1/1999 | 5,000 | Fieldwood En | 70.3% | TERMIN | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| VR 332 | G09514 | Federal | CONT | 3/30/1988 | | Fieldwood En | 50.0% | PROD | [3] |
| VR 34 | G01356 | Federal | OP 1 | 6/1/1964 | 625 | Apache Shelf | 100.0% | TERMIN | |
| VR 34 | G01356 | Federal | OP 2 | 6/1/1964 | 625 | Apache Shelf | 75.0% | TERMIN | |
| VR 34 | G01356 | Federal | RT | 6/1/1964 | 625 | Apache Shelf | 100.0% | TERMIN | |
| VR 35 | 00548 | Federal | OP 1 | 9/1/1955 | 2,500 | Apache Shelf | 100.0% | TERMIN | |
| VR 35 | 00548 | Federal | OP 2 | 9/1/1955 | 2,500 | Apache Shelf | 75.0% | TERMIN | |
| VR 35 | 00548 | Federal | RT | 9/1/1955 | 2,500 | Apache Shelf | 100.0% | TERMIN | |
| VR 35 | 00549 | Federal | OP 1 | 9/1/1955 | 2,500 | Apache Shelf | 100.0% | TERMIN | |
| VR 35 | 00549 | Federal | OP 2 | 9/1/1955 | 2,500 | Apache Shelf | 75.0% | TERMIN | |
| VR 35 | 00549 | Federal | RT | 9/1/1955 | 2,500 | Apache Shelf | 100.0% | TERMIN | |
| VR 356 | G17921 | Federal | ORRI | 8/1/1997 | 4,093 | EnVen En Vent | 2.6% | PROD | |
| VR 36 | G01357 | Federal | OP 2 | 6/1/1964 | 625 | Apache Shelf | 75.0% | TERMIN | |
| VR 36 | G01357 | Federal | OP 1 | 6/1/1964 | 625 | Apache Shelf | 100.0% | TERMIN | |
| VR 36 | G01357 | Federal | RT | 6/1/1964 | 625 | Apache Shelf | 100.0% | TERMIN | |
| VR 369 | G02274 | Federal | OP 4 | 2/1/1973 | 5,000 | Renaissance Off | 23.2% | UNIT | |
| VR 369 | G02274 | Federal | OP 3 | 2/1/1973 | 5,000 | Renaissance Off | 23.2% | UNIT | |
| VR 369 | G02274 | Federal | RT | 2/1/1973 | 5,000 | Renaissance Off | 23.2% | UNIT | |
| VR 369 | G02274 | Federal | Unit | 2/1/1973 | 5,000 | Renaissance Off | 23.2% | UNIT | |
| VR 374 | G32153 | Federal | RT | 8/1/2008 | 5,000 | Apache | 100.0% | EXPIR | |
| VR 380 | G02580 | Federal | RT | 5/1/1974 | 5,000 | Fieldwood En | 100.0% | PROD | |
| VR 381 | G16314 | Federal | RT | 9/1/1996 | 5,000 | Apache Shelf | 100.0% | TERMIN | |
| VR 381 | G16314 | Federal | OP | 9/1/1996 | 5,000 | Apache Shelf | 80.0% | TERMIN | |
| VR 386 | G02278 | Federal | RT A | 2/1/1973 | 5,000 | Marathon Oil | 30.2% | UNIT | |
| VR 386 | G02278 | Federal | RT B | 2/1/1973 | 5,000 | Marathon Oil | 29.0% | UNIT | |
| VR 408 | G15212 | Federal | RT | 7/1/1995 | 5,000 | Fieldwood En | 12.5% | PROD | |
| VR 408 | G15212 | Federal | OP | 7/1/1995 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WC 102 | 00247 | Federal | RT | 9/9/1946 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| WC 110 | 00081 | Federal | RT | 6/10/1947 | 5,000 | BP E&P | 100.0% | PROD | |
| WC 110 | 00081 | Federal | OP | 6/10/1947 | 5,000 | BP E&P | 37.5% | PROD | |
| WC 111 | 00082 | Federal | RT | 6/10/1947 | 1,250 | BP E&P | 100.0% | PROD | |
| WC 111 | 00082 | Federal | OP | 6/10/1947 | 1,250 | BP E&P | 37.5% | PROD | |
| WC 111 | G33046 | Federal | RT | 8/1/2009 | 3,750 | Eni US Op | 25.0% | EXPIR | |
| WC 130 | G12761 | Federal | RT | 5/1/1991 | 5,000 | Eni US Op | 25.0% | EXPIR | |
| WC 144 | G01953 | Federal | RT | 2/1/1970 | 5,000 | Fieldwood En | 62.5% | TERMIN | |
| WC 155 | G32114 | Federal | RT | 8/1/2008 | 5,000 | Apache | 100.0% | EXPIR | |
| WC 163 | G05299 | Federal | RT A | 7/1/1983 | 5,000 | Fieldwood En | 61.0% | TERMIN | |
| WC 163 | G05299 | Federal | RT B | 7/1/1983 | 5,000 | Fieldwood En | 56.2% | TERMIN | |
| WC 165 | 00758 | Federal | RT | 4/1/1960 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| WC 172 | G01998 | Federal | OP 1 | 2/1/1971 | 5,000 | Apache Shelf | 22.5% | TERMIN | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|---|---|---|---|---|---|---|---|---|---|
| WC 172 | G01998 | Federal | OP 2 | 2/1/1971 | 5,000 | Apache Shelf | 22.5% | TERMIN | |
| WC 172 | G01998 | Federal | OP 3 | 2/1/1971 | 5,000 | Apache Shelf | 22.5% | TERMIN | |
| WC 172 | G01998 | Federal | OP 4 | 2/1/1971 | 5,000 | Apache Shelf | 22.5% | TERMIN | |
| WC 172 | G01998 | Federal | OP 10 | 2/1/1971 | 5,000 | Apache Shelf | 25.0% | TERMIN | |
| WC 172 | G01998 | Federal | OP 11 | 2/1/1971 | 5,000 | Apache Shelf | 25.0% | TERMIN | |
| WC 172 | G01998 | Federal | OP 12 | 2/1/1971 | 5,000 | Apache Shelf | 25.0% | TERMIN | |
| WC 181 | G33558 | Federal | RT | 6/1/2010 | 2,500 | Apache Shelf Exp | 100.0% | RELINQ | |
| WC 196 | G05292 | Federal | RT | 7/1/1983 | 5,000 | Union Oil CA | 8.3% | TERMIN | |
| WC 20 | 00680 | Federal | OP | 8/1/1959 | 1,873 | Sanare En Part | 50.0% | PROD | |
| WC 210 | G34216 | Federal | RT | 10/1/2012 | 5,000 | Apache | 100.0% | RELINQ | |
| WC 225 | G00900 | Federal | OP 1 | 4/1/1962 | 5,000 | Tarpon O&D | 26.7% | TERMIN | |
| WC 269 | G13563 | Federal | OP | 8/1/1992 | 5,000 | Sanare En Part | 33.8% | TERMIN | |
| WC 290 | G04818 | Federal | OP 1 | 9/1/1981 | 5,000 | Fieldwood En Off | 10.4% | TERMIN | [3] |
| WC 290 | G04818 | Federal | RT | 9/1/1981 | 5,000 | Fieldwood En Off | 16.7% | TERMIN | [3] |
| WC 291 | G04397 | Federal | RT | 11/1/1980 | 5,000 | Apache | 100.0% | TERMIN | |
| WC 291 | G04397 | Federal | OP | 11/1/1980 | 5,000 | Apache | 60.0% | TERMIN | |
| WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | 5,000 | Fieldwood En | 20.6% | PROD | [4] |
| WC 300 | G15078 | Federal | RT | 7/1/1995 | 5,000 | SandRidge En Off | 14.0% | TERMIN | |
| WC 300 | G15078 | Federal | OP | 7/1/1995 | 5,000 | SandRidge En Off | 24.4% | TERMIN | |
| WC 310 | G17789 | Federal | RT | 8/1/1997 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| WC 310 | G17789 | Federal | OP | 8/1/1997 | 5,000 | Fieldwood En | 73.7% | TERMIN | |
| WC 33 | G15050 | Federal | RT | 7/1/1995 | 2,891 | Fieldwood En | 100.0% | PROD | |
| WC 34 | G03251 | Federal | RT | 9/1/1975 | 4,506 | Apache | 100.0% | TERMIN | |
| WC 35 | G02819 | Federal | RT | 12/1/1974 | 4,688 | Apache | 100.0% | TERMIN | |
| WC 35 | G02819 | Federal | OP | 12/1/1974 | 4,688 | Apache | 100.0% | TERMIN | |
| WC 35, WC 66 | G01860 | Federal | OP 2 | 1/1/1969 | 1,563 | BP E&P | 100.0% | PROD | |
| WC 35/66 | G01860 | Federal | RT | 1/1/1969 | 1,563 | BP E&P | 100.0% | PROD | |
| WC 401 | G07619 | Federal | RT | 7/1/1985 | 5,000 | ConocoPhillips | 33.3% | TERMIN | |
| WC 576 | G33061 | Federal | RT | 6/1/2009 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR | |
| WC 624 | G33064 | Federal | RT | 6/1/2009 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR | |
| WC 65 | G02825 | Federal | OP 4 | 12/1/1974 | 5,000 | BP E&P | 81.3% | PROD | [4] |
| WC 65 | G02825 | Federal | RT | 12/1/1974 | 5,000 | BP E&P | 100.0% | PROD | [4] |
| WC 65 | G02825 | Federal | OP | 12/1/1974 | 5,000 | BP E&P | 100.0% | PROD | [4] |
| WC 650 | G34217 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| WC 656 | G34218 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| WC 657 | G34219 | Federal | RT | 10/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| WC 66 | G02826 | Federal | OP 2 | 12/1/1974 | 3,750 | Fieldwood En | 75.0% | PROD | [4] |
| WC 66 | G02826 | Federal | OP | 12/1/1974 | 3,750 | Fieldwood En | 100.0% | PROD | [4] |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| WC 67 | G03256 | Federal | OP 1 | 9/1/1975 | 5,000 | Apache | 100.0% | TERMIN | [4] |
| WC 67 | G03256 | Federal | OP 2 | 9/1/1975 | 5,000 | Apache | 66.6% | TERMIN | [4] |
| WC 68 | 00526 | Federal | RT | 9/1/1955 | 2,500 | BP Am Prod | 100.0% | TERMIN | |
| WC 71 | 00244 | Federal | RT | 9/9/1946 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| WC 72 | G23735 | Federal | RT | 7/1/2002 | 5,000 | Fieldwood En Off | 25.0% | PROD | |
| WC 73 | G23736 | Federal | OP | 7/1/2002 | 5,000 | Castex Off | 25.0% | PROD | |
| WC 99 | G34213 | Federal | RT | 8/1/2012 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ | |
| WD 103 | 00840 | Federal | RT | 5/1/1960 | 3,984 | Fieldwood En | 100.0% | PROD | |
| WD 103 | G12360 | Federal | OP 1 | 5/1/1960 | 1,016 | Fieldwood En | 81.3% | PROD | [4] |
| WD 104 | 00841 | Federal | RT | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 104 | 00841 | Federal | OP 1 | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 104 | 00841 | Federal | OP 2 | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 104 | 00841 | Federal | OP 3 | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 104 | 00841 | Federal | OP 5 | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 105 | 00842 | Federal | RT | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 105 | 00842 | Federal | OP 3 | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 105 | 00842 | Federal | OP 4 | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 105 | 00842 | Federal | OP 5 | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 105 | 00842 | Federal | OP 6 | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 121 | G19843 | Federal | OP 1 | 8/1/1998 | 5,000 | Fieldwood En | 84.0% | PROD | [4] |
| WD 122 | G13645 | Federal | OP 1 | 8/1/1992 | 5,000 | Fieldwood En | 84.0% | PROD | [4] |
| WD 122 | G13645 | Federal | OP 2 | 8/1/1992 | 5,000 | Fieldwood En | 84.0% | PROD | [4] |
| WD 122 | G13645 | Federal | RT | 8/1/1992 | 5,000 | Fieldwood En | 100.0% | PROD | [4] |
| WD 128 | G10883 | Federal | RT | 6/1/1989 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| WD 133 | G01106 | Federal | RT | 5/1/1962 | 5,000 | Arena Off | 100.0% | PROD | |
| WD 133 | G01106 | Federal | ORRI | 5/1/1962 | | Arena Off | 1.0% | PROD | |
| WD 133 | G01106 | Federal | ORRI | 5/1/1962 | | Arena Off | 7.2% | PROD | |
| WD 34 | G03414 | Federal | RT | 1/1/1977 | 2,500 | Fieldwood En | 76.7% | TERMIN | |
| WD 34 | G03414 | Federal | OP | 1/1/1977 | 2,500 | Fieldwood En | 46.7% | TERMIN | |
| WD 38 | G22772 | Federal | RT | 5/1/2001 | 1,796 | Apache | 87.5% | TERMIN | |
| WD 38 | G22772 | Federal | OP | 5/1/2001 | 1,796 | Apache | 43.8% | TERMIN | |
| WD 41 | G01073 | Federal | RT | 3/1/1962 | 5,000 | Apache | 100.0% | TERMIN | |
| WD 41 | G01073 | Federal | OP | 3/1/1962 | 5,000 | Apache | 50.0% | TERMIN | |
| WD 42 | G16470 | Federal | RT | 9/1/1996 | 5,000 | Fieldwood En | 100.0% | TERMIN | |
| WD 42 | G16470 | Federal | OP | 9/1/1996 | 5,000 | Fieldwood En | 50.0% | TERMIN | |
| WD 53 | 17935 | SL-LA | WI | 10/13/2003 | – | Whitney Oil | 33.3% | TERMIN | |
| WD 67 | 00179 | Federal | RT | 7/17/1948 | 2,500 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| WD 67 | 00179 | Federal | OP 1 | 7/17/1948 | 2,500 | BP E&P | 18.8% | UNIT | [1], [2] |
| WD 67 | 00179 | Federal | OP 2 | 7/17/1948 | 2,500 | GOM Shelf | 37.5% | UNIT | [1], [2] |

22

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|--------------|----------|-----|--------------|---------|
| WD 68 | 00180 | Federal | RT | 7/17/1948 | 1,833 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| WD 68 | 00180 | Federal | OP 1 | 7/17/1948 | 1,833 | BP E&P | 18.8% | UNIT | [1], [2] |
| WD 68 | 00180 | Federal | OP 2 | 7/17/1948 | 1,833 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| WD 69 | 00181 | Federal | RT | 7/17/1948 | 3,665 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| WD 69 | 00181 | Federal | OP 1 | 7/17/1948 | 3,665 | BP E&P | 18.8% | UNIT | [1], [2] |
| WD 69 | 00181 | Federal | OP 2 | 7/17/1948 | 3,665 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| WD 70 | 00182 | Federal | RT | 7/17/1948 | 5,000 | GOM Shelf | 75.0% | UNIT | [1], [2] |
| WD 70 | 00182 | Federal | OP 1 | 7/17/1948 | 5,000 | BP E&P | 18.8% | UNIT | [1], [2] |
| WD 70 | 00182 | Federal | OP 2 | 7/17/1948 | 5,000 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| WD 71 | 00838 | Federal | RT | 4/1/1960 | 5,000 | BP E&P | 75.0% | UNIT | [1], [2] |
| WD 71 | 00838 | Federal | OP 1 | 4/1/1960 | 5,000 | BP E&P | 18.8% | UNIT | [1], [2] |
| WD 71 | 00838 | Federal | OP 2 | 4/1/1960 | 5,000 | GOM Shelf | 37.5% | UNIT | [1], [2] |
| WD 75 | G01085 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 100.0% | PROD | |
| WD 90 | G01089 | Federal | OP 3 | 6/1/1962 | 5,000 | Fieldwood En | 81.3% | PROD | [4] |
| WD 90 | G01089 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 100.0% | PROD | [4] |
| WD 94 | 00839 | Federal | RT | 5/1/1960 | 5,000 | GOM Shelf | 75.0% | PROD | [1], [2] |
| WD 94 | 00839 | Federal | OP 1 | 5/1/1960 | 5,000 | GOM Shelf | 37.5% | PROD | [1], [2] |
| WD 94 | 00839 | Federal | OP 2 | 5/1/1960 | 5,000 | GOM Shelf | 75.0% | PROD | [1], [2] |
| WD 95 | G01497 | Federal | RT | 12/1/1966 | 5,000 | GOM Shelf | 75.0% | PROD | [1], [2] |
| WD 95 | G01497 | Federal | OP 1 | 12/1/1966 | 5,000 | GOM Shelf | 37.5% | PROD | [1], [2] |
| WD 95 | G01497 | Federal | OP 2 | 12/1/1966 | 5,000 | GOM Shelf | 75.0% | PROD | [1], [2] |
| WD 96 | G01498 | Federal | RT | 12/1/1966 | 3,665 | GOM Shelf | 75.0% | PROD | [1], [2] |
| WD 96 | G01498 | Federal | OP 2 | 12/1/1966 | 3,665 | GOM Shelf | 37.5% | PROD | [1], [2] |

# FWE I ROW

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15213 | Fieldwood Energy, LLC | BS | 41 | B | BS | 42 | 24" SSTI | 10 | G/C | Partial Abandon | G25383 | G21142 | |
| 17938 | Fieldwood Energy, LLC | CA | 43 | A | VK | 247 | 24"SSTI | 6 | GAS | Active | G29431 | G32268 | |
| 3519 | Fieldwood Energy, LLC | EC | 14 | CF | EC | 9 | F/S | 4 | COND | Out of Service | G13721 | G01440 | |
| 13104 | Fieldwood Energy, LLC | EC | 2 | F/S | EC | 2 | 6" SSTI | 4 | GAS | Permitted for Abandonment | G22383 | G15050 | |
| 17801 | Fieldwood Energy, LLC | EC | 14 | CF | WC | 69 | 30 SSTI | 12 | GAS | Permitted for Abandonment | G28556 | G01440 | |
| 44 | Fieldwood Energy, LLC | EI | 175 | C | EI | 176 | 12" SSTI | 8 | OIL | Out of Service | G13445 | 00438 | [3] |
| 1128 | Fieldwood Energy, LLC | EI | 330 | flanged end | EI | 306 | 14-inch SSTI | 14 | OIL | Active | G02139A | G02115 | [3] |
| 6818 | Fieldwood Energy, LLC | EI | 337 | A | EI | 330 | B | 6 | GAS | Out of Service | G05932 | G03332 | |
| 6819 | Fieldwood Energy, LLC | EI | 337 | A | EI | 330 | 14 SSTI | 6 | OIL | Out of Service | G05931 | G03332 | |
| 6852 | Fieldwood Energy, LLC | EI | 315 | A | EI | 330 | 14 SSTI | 6 | OIL | Out of Service | G13447 | G02112 | |
| 7290 | Fieldwood Energy, LLC | EI | 316 | A | EI | 330 | 14 SSTI | 8 | OIL | Active | G07537 | G05040 | |
| 7347 | Fieldwood Energy, LLC | EI | 316 | A | EI | 330 | 8" SSTI | 6 | GAS | Active | G07555 | G05040 | |
| 7914 | Fieldwood Energy, LLC | EI | 212 | A | SS | 152 | 24 SSTI | 6 | GAS | Out of Service | G08530 | G05503 | |
| 7915 | Fieldwood Energy, LLC | EI | 212 | A | EI | 213 | 12 SSTI | 6 | OIL | Out of Service | G08531 | G05503 | |

[1]  Lease carries $0 liability.
[2]  FWE I is to obtain 75% of the Debtors' interests in Segment 9084, 50% of the Debtors' interest in Segments 4647 and 5890 and 79.666% of the Debtors' interest in Segment 17265, and the Credit Bid Purchaser is to obtain the Debtors' remaining interests in those four pipeline segments.
[3]  Represents each ROW in which FWE I is to acquire solely as to the same 8/8ths undivided interest that FWE I is to acquire in the related lease referenced above for such ROW; the Debtors' remaining interests in such ROW are to be abandoned.

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE¹ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7943 | Fieldwood Energy, LLC | EI | 342 | C | EI | 327 | 08 SSTI | 4 | OIL | Out of Service | G08541 | G02319 | [3] |
| 9211 | Fieldwood Energy, LLC | EI | 53 | B | EI | 64 | 22 SSTI | 6 | G/C | Partial Abandon | G12373 | 00479 | [3] |
| 9376 | Fieldwood Energy, LLC | EI | 142 | A | EI | 141 | 10 SSTI | 4 | OIL | Out of Service | G12734 | 00052 | |
| 11923 | Fieldwood Energy, LLC | EI | 53 | C | EI | 64 | 22 SSTI | 10 | G/C | Out of Service | G20539 | 00479 | |
| 14073 | Fieldwood Energy, LLC | EI | 188 | JE | EI | 188 | 06 SSTI | 4 | BLKG | Out of Service | G29056 | 00443 | |
| 14479 | Fieldwood Energy, LLC | EI | 158 | C | EI | 176 | 12"SSTI | 6 | OIL | Out of Service | G13702 | G01220 | |
| 15906 | Fieldwood Energy, LLC | EI | 173 | G | EI | 175 | C | 4 | BLKO | Out of Service | G28239 | G13622 | |
| 16225 | Fieldwood Energy, LLC | EI | 354 | D | EI | 337 | A | 4 | OIL | Out of Service | G28598 | G10752 | |
| 16226 | Fieldwood Energy, LLC | EI | 354 | D | EI | 337 | A | 4 | GAS | Out of Service | G28599 | G10752 | |
| 16243 | Fieldwood Energy, LLC | EI | 189 | B | EI | 188 | A | 4 | GAS | Out of Service | G29057 | 00423 | |
| 18493 | Fieldwood Energy, LLC | EI | 342 | C | EI | 343 | SSTI | 6 | GAS | Out of Service | G29108 | G02319 | [3] |
| 19960 | Fieldwood Energy LLC | EI | 342 | C | EI | 342 | Blind Flange | 6 | OIL | Out of Service | G29471 | G02319 | [3] |
| - | Fieldwood Energy, LLC | EI | 187 | 2 | EI | 187 | 2 | | | Active | G30283 | G10736 | |
| 8487 | Fieldwood Energy, LLC | EW | 826 | A | ST | 300 | 12 SSTI | 12 | OIL | Out of Service | G10110 | G05800 | |
| 15298 | Fieldwood Energy, LLC | GA | 210 | B | GA | 239 | 12 SSTI | 8 | G/C | Active | G26931 | G25524 | [3] |
| 7866 | Fieldwood Energy, LLC | GI | 33 | A | GI | 22 | L | 8 | GAS | Permitted for Abandonment Approved | G08514 | G04002 | |
| 9084 | GOM Shelf, LLC | GI | 43 | AS | GI | 19 | F/S | 10 | OIL | Active | G12304 | 00175 | [2] |
| 17673 | Fieldwood Energy, LLC | GI | 54 | #2 | GI | 47 | L | 4 | BLKO | Permitted for Abandonment Approved | G28528 | G27173 | |
| 5470 | Fieldwood Energy, LLC | HI | A356 | Valve | HI | A343 | HIOS | 12 | GAS | Out of Service | G04050 | G02754 | |

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6504 | Fieldwood Energy, LLC | HI | A595 | D | HI | 573 | B | 8 | OIL | Out of Service | G28525 | G02721 | |
| 6669 | Fieldwood Energy, LLC | HI | A 376 | A | HI | A 356 | 12 SSTI | 10 | GAS | Out of Service | G05238 | G02754 | [3] |
| 6669 | Fieldwood Energy LLC | HI | A 376 | Platform A | HI | A 356 | 12 SSTI W/PSN 10882 | 10 | GAS | Out of Service | G05238 | G02754 | [3] |
| 10882 | Fieldwood Energy, LLC | HI | A356 | 10SST | HI | A356 | 12SSTI | 12 | GAS | Out of Service | G04051 | G02754 | [3] |
| 11841 | Fieldwood Energy, LLC | HI | A 545 | JA | HI | A 547 | B | 6 | BLKG | Permitted for Abandonment | G20510 | G17199 | |
| 14650 | Fieldwood Energy, LLC | HI | 201 | #1 | HI | 199 | A | 6 | BLKG | Partial Abandon | G25397 | G23199 | |
| 15401 | Fieldwood Energy, LLC | HI | A 341 | B | HI | A 340 | 30" SSTI | 812 | G/C | Active | G26938 | G25605 | [3] |
| 15581 | Fieldwood Energy, LLC | HI | 120 | A | HI | 128 | SSTI | 6 | G/C | Out of Service | G26968 | G24730 | |
| 16077 | Fieldwood Energy, LLC | HI | 130 | #2 | HI | 165 | 8-inch SSTI | 8 | BLGH | Partial Abandon | G28284 | G25579 | [1] |
| 18789 | Fieldwood Energy LLC | HI | 116 | Platform A | HI | 71 | 16-inch SSTI | 16 | G/C | PABN | G28649 | G06156 | |
| 9032 | Fieldwood Energy, LLC | MC | 311 | A | MC | 312 | 8 SSTI | 8 | OIL | Active | G11747 | G02968 | |
| 3472 | Fieldwood Energy, LLC | MP | 140 | B | MP | 56 | F/S | 18 | BLKG | Out of Service | G13511 | G02193 | |
| 5917 | GOM Shelf, LLC | MP | 311 | A | MP | 313 | 12 SSTI | 8 | OIL | Out of Service | G13466 | G02213 | |
| 7143 | Fieldwood Energy, LLC | MP | 310 | A | MP | 297 | 12 SSTI | 6 | OIL | Out of Service | G07100 | G04126 | |
| 13100 | Fieldwood Energy, LLC | MP | 259 | A | VK | 739 | #01 | 5 | UMB | Out of Service | G22377 | G07827 | |
| 15818 | Fieldwood Energy Offshore LLC | MP | 77 | A | MP | 151 | 18"SSTI | 8 | GAS | Out of Service | G28221 | G04481 | |
| 5408 | Fieldwood Energy, LLC | PL | 10 | B | PL | 13 | 20 SSTI | 8 | OIL | Out of Service | G09317 | G02925 | |
| 16044 | Fieldwood Energy, LLC | PL | 9 | #10 | PL | 10 | B | 6 | BLKG | Out of Service | G28276 | G02924 | |
| 4008 | Fieldwood Energy, LLC | SM | 268 | A | SS | 28 | A | 12 | OIL | Out of Service | G02816 | G34284 | |

26

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4647 | Fieldwood Energy, LLC | SM | 149 | 6"SSTI | SM | 132 | B | 6 | BLKO | Out of Service | G03432 | G02592 | [2] |
| 5427 | Fieldwood Energy, LLC | SM | 281 | E | SM | 268 | A | 12 | SPLY | Out of Service | G02817 | G02600 | |
| 5429 | Fieldwood Energy, LLC | SM | 281 | C | SM | 281 | 12 SSTI | 10 | SPLY | Out of Service | G02817 | G02600 | |
| 6512 | Fieldwood Energy, LLC | SM | 281 | C | SM | 268 | D | 10 | BLKO | Out of Service | G29131 | G02600 | |
| 6513 | Fieldwood Energy, LLC | SM | 268 | D | SM | 268 | A | 10 | BLKO | Out of Service | G29132 | G02310 | |
| 10977 | Fieldwood Energy, LLC | SM | 268 | A | SM | 280 | #03 | 3 | BLKG | Active | G28756 | G14456 | |
| 11046 | Fieldwood Energy, LLC | SM | 11 | Well No.34 | SM | 10 | A | 6 | BLKG | Out of Service | G28813 | G01182 | |
| 11047 | Fieldwood Energy, LLC | SM | 10 | A | SM | 11 | 34 | 3 | LIFT | Out of Service | G28812 | G01181 | |
| 11986 | Fieldwood Energy, LLC | SM | 39 | A | SM | 33 | 30 SSTI | 8 | GAS | Out of Service | G20565 | G16320 | |
| 11987 | Fieldwood Energy, LLC | SM | 39 | A | SM | 40 | 10 SSTI | 6 | OIL | Out of Service | G20566 | G16320 | |
| 13642 | Fieldwood Energy, LLC | SM | 280 | H | SM | 268 | A | 10 | BLKG | Permitted for Abandonment | G28758 | G14456 | [3] |
| 17499 | Fieldwood Energy, LLC | SM | 269 | B | SM | 268 | A | 10 | GAS | Active | G28484 | G02311 | |
| 18057 | Fieldwood Energy, LLC | SM | 11 | No.58 Caisson | SM | 10 | A | 4 | BLKG | Out of Service | G28815 | G01182 | |
| 18510 | Fieldwood Energy, LLC | SM | 10 | A | SM | 287 | SSTI | 6 | GAS | Out of Service | G29113 | G01181 | |
| 18563 | Fieldwood Energy, LLC | SM | 48 | E | SM | 39 | A | 6 | G/C | Out of Service | G29128 | 00786 | |
| 18583 | Fieldwood Energy, LLC | SM | 10 | A | SM | 11 | SSTI | 4 | OIL | Out of Service | G28814 | G01181 | |
| 18802 | Fieldwood Energy, LLC | SM | 39 | A | SM | 48 | E | 3 | LIFT | Out of Service | G29182 | G16320 | |
| 4716 | Fieldwood Energy, LLC | SP | 70 | C | SP | 60 | B | 8 | GAS | Active | G03436 | G01614 | |
| 15064 | FW GOM Pipeline, Inc. | SP | 49 | A | SP | 27 | F/S Boundary | 10 | G/O | Active | G07561 | G05051 | |
| 15598 | Fieldwood Energy, LLC | SP | 70 | C | SP | 60 | E | 6 | OIL | Out of Service | G26860 | G01614 | |

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15626 | Fieldwood Energy, LLC | SP | 65 | A | SP | 62 | 18 SSTI | 8 | OIL | Out of Service | G01686A | G01610 | |
| 1137 | Fieldwood Energy, LLC | SS | 207 | A Platform | SS | 204 | A | 4 | GAS | Out of Service | G13489 | G01523 | [3] |
| 1138 | Fieldwood Energy, LLC | SS | 204 | A | SS | 207 | A | 6 | G/O | Out of Service | G13491 | G01520 | [3] |
| 1147 | Fieldwood Energy, LLC | SS | 207 | A | SS | 208 | F-Pump | 12 | OIL | Out of Service | G13492 | G01523 | [3] |
| 6432 | Fieldwood Energy, LLC | SS | 182 | A | SS | 169 | 18 SSTI | 6 | OIL | Active | G09321 | G03998 | |
| 6538 | Fieldwood Energy, LLC | SS | 91 | A | PL | 11 | 08 SSTI | 6 | OIL | Out of Service | G05146 | G02919 | |
| 6748 | Fieldwood Energy, LLC | SS | 169 | C Platform | SS | 169 | 18-inch SSTI | 6 | OIL | Out of Service | G09322 | 00820 | [3] |
| 7650 | Fieldwood Energy, LLC | SS | 178 | A | SS | 169 | 18 SSTI | 6 | OIL | Out of Service | G08054 | G05551 | |
| 10406 | Fieldwood Energy, LLC | SS | 274 | A | EI | 259 | A | 8 | OIL | Active | G14731 | G01039 | |
| 10780 | Fieldwood Energy, LLC | SS | 193 | A | SS | 183 | 18 SSTI | 6 | OIL | Active | G15683 | G13917 | |
| 10781 | Fieldwood Energy, LLC | SS | 193 | A | SS | 183 | 10 SSTI | 6 | GAS | Active | G15684 | G13917 | |
| 11137 | Fieldwood Energy, LLC | SS | 129 | A | SS | 122 | 18 SSTI | 6 | OIL | Out of Service | G16084 | G12941 | |
| 11145 | Fieldwood Energy, LLC | SS | 129 | A | SS | 149 | 6 SSTI | 6 | G/C | Out of Service | G16087 | G12941 | |
| 11480 | Fieldwood Energy, LLC | SS | 105 | A | EI | 165 | 30 SSTI | 10 | GAS | Out of Service | G18801 | G09614 | |
| 11544 | Fieldwood Energy, LLC | SS | 126 | B | SS | 105 | A | 6 | BLKG | Out of Service | G18820 | G12940 | |
| 12778 | Fieldwood Energy, LLC | SS | 189 | A | SS | 185 | 26"SSTI | 8 | G/C | Out of Service | G22139 | G04232 | [3] |
| 15530 | Fieldwood Energy, LLC | SS | 183 | Flange | SS | 169 | Flange | 10 | GAS | Out of Service | G01460 | G13917 | |
| 16036 | Fieldwood Energy, LLC | SS | 190 | Capped End | SS | 207 | A | 4 | BLKO | Permitted for Abandonment | G14734 | G10775 | |
| 18837 | Fieldwood Energy, LLC | SS | 176 | C | EI | 212 | A | 6 | BLKG | Out of Service | G29190 | G33646 | |
| 20050 | Fieldwood Energy, LLC | SS | 168 | SSTI | SS | 168 | SSTI | 6 | | Proposed | G28788 | 00820 | [3] |

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5890 | Fieldwood Energy, LLC | ST | 53 | A | ST | 52 | A | 6 | OIL | Out of Service | G09319 | G04000 | [2] |
| 7802 | Fieldwood Energy, LLC | ST | 295 | A | ST | 296 | SS 8487 | 8 | OIL | Active | G08385 | G05646 | |
| 8676 | Fieldwood Energy, LLC | ST | 206 | A | ST | 175 | T-22 | 16 | G/C | Out of Service | G11146 | G05613 | |
| 9313 | Fieldwood Energy, LLC | ST | 295 | A | ST | 295 | 24 SSTI | 8 | GAS | Active | G12709 | G05646 | |
| 13462 | Fieldwood Energy, LLC | ST | 205 | G | ST | 206 | A | 8 | BLKG | Out of Service | G028821 | G05612 | |
| 13462 | Fieldwood Energy LLC | ST | 205 | G | ST | 206 | A | 8 | BLKG | Out of Service | G29451 | G05612 | |
| 17265 | Fieldwood Energy, LLC | ST | 68 | Caisson No. 1 | ST | 53 | A | 6 | BLKO | Out of Service | G28385 | G04000 | [2] |
| 17898 | Fieldwood Energy, LLC | ST | 49 | Platform A | ST | 35 | 6-inch SSTI | 4 | OIL | Out of Service | G28577 | G24956 | |
| 19776 | Fieldwood Energy, LLC | ST | 295 | 24" SSTI | ST | 292 | A | 24 | GAS | Active | G29376 | G05646 | |
| 13098 | Fieldwood Energy, LLC | VK | 694 | #04 | MP | 259 | A | 4 | BLKG | Out of Service | G22376 | G13055 | |
| 13099 | Fieldwood Energy, LLC | VK | 739 | SS #3 | MP | 259 | A | 4 | BLKG | Out of Service | G22377 | G07827 | |
| 13720 | Fieldwood Energy Offshore LLC | VK | 340 | 8-inch SSTI | VK | 251 | Platform A | 8 | BLGH | Active | G28703 | G10933 | [3] |
| 13721 | Fieldwood Energy, LLC | VK | 251 | A | VK | 340 | A | 3 | AIR | Active | G28704 | G10930 | |
| 14876 | Fieldwood Energy, LLC | VK | 251 | A | MP | 154 | A | 4 | H2O | Active | G22465 | G10930 | |
| 6113 | Fieldwood Energy, LLC | VR | 380 | A | VR | 397 | 24 SSTI | 12 | GAS | Out of Service | G04645 | G02580 | |
| 12502 | Fieldwood Energy, LLC | VR | 326 | A Platform | VR | 321 | 22-inch SSTI | 6 | G/C | Out of Service | G21523 | G21096 | |
| 17090 | Fieldwood Energy, LLC | VR | 261 | A | VR | 265 | A | 8 | BLKO | Out of Service | G28347 | G03328 | [3] |
| 18502 | Fieldwood Energy, LLC | VR | 380 | A | VR | 398 | 16" SSTI | 6 | OIL | Out of Service | G02919 | G02580 | |
| 18502 | Fieldwood Energy LLC | VR | 380 | Platform A | VR | 398 | 16-inch SSTI | 6 | OIL | Out of Service | G29109 | G02580 | |
| 2698 | Fieldwood Energy, LLC | WC | 102 | flange | WC | 102 | G | 8 | GAS | Out of Service | G02124D | 00247 | |

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3763 | Fieldwood Energy, LLC | WC | 102 | #02 | WC | 102 | 08 SSTI | 8 | GAS | Out of Service | G02124D | 00247 | |
| 3986 | Fieldwood Energy, LLC | WC | 66 | A | WC | 31 | F/S | 10 | G/O | Active | G03345 | G01860 | |
| 5343 | Fieldwood Energy, LLC | WC | 34 | D | WC | 35 | 10 SSTI | 8 | G/O | Out of Service | G28659 | G01860 | |
| 8621 | Bandon Oil and Gas, LP | WC | 290 | A | WC | 289 | A | 6 | BLKG | Out of Service | G10532 | G04818 | |
| 9504 | Fieldwood Energy, LLC | WC | 71 | 12 SSTI | WC | 71 | 12 SSTI | 12 | GAS | Out of Service | G04346 | 00244 | |
| 14251 | Fieldwood Energy Offshore LLC | WC | 72 | #1 | WC | 65 | JA | 4 | BLKG | Out of Service | G25275 | G23735 | [3] |
| 15210 | Fieldwood Energy, LLC | WC | 295 | 2 | HI | 120 | A-PROCESS | 6 | BLKG | Out of Service | G26886 | G24730 | |
| 15952 | Fieldwood Energy, LLC | WC | 33 | O | WC | 34 | D | 4 | G/O | Out of Service | G28657 | G15050 | |
| 20483 | Fieldwood Energy Offshore LLC | WC | 295 | Flanged End | WC | 293 | 16-inch SSTI | 12 | G/C | PABN | G10085 | G01848 | |
| 23036 | Fieldwood Energy LLC | WC | 289 | A-PROCESS | WC | 289 | A-PROCESS | | | Expired | G14262 | G04818 | |
| 7919 | Fieldwood Energy, LLC | WD | 105 | E | WD | 104 | D | 6 | GAS | Out of Service | G08533 | 00842 | |
| 15960 | Fieldwood Energy, LLC | WD | 90 | A | WD | 73 | SSTI | 4 | OIL | Out of Service | G28260 | G01089 | [3] |
| 16088 | Fieldwood Energy, LLC | WD | 122 | A | WD | 105 | E | 6 | GAS | Out of Service | G28289 | G13645 | [3] |
| 16089 | Fieldwood Energy, LLC | WD | 122 | A | WD | 105 | E | 3 | OIL | Out of Service | G28290 | G13645 | [3] |

## FWE I RUE

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets | Note[1] |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|---------|
| EI | 188 | JE | 26052 | G30268 | G10736 | Fieldwood Energy LLC | 04/18/14 | EI 187 JC001, JD001, JD002, 002 & JE002 | |
| HI | 120 | A-PROCESS | 10450 | G30270 | G01848 | Fieldwood Energy LLC | 08/06/14 | WC 295 A001 & A002 | |
| SM | 132 | B | 21982 | G30329 | G02588 | Fieldwood Energy LLC | 05/06/19 | SM 136 C007, SM 149 C001, C002 & C004 | [1] |
| SM | 10 | A | 20706 | G30365 | G01181 | Fieldwood Energy LLC | | | |
| SM | 268 | A | 21739 | G30282 | G14456 | Fieldwood Energy LLC | 06/15/18 | SM 257 001, SM 269 B017, B019, F001, SM 280 G001, G002, H001, B, F, SM 280 G, H, I, SM 281 C010, C014, C015, C020, C023, C024, C025, C026, C028, E005, E011, I001, I003, C & E | [2] |
| SM | 268 | A-PRD | 21739 | G30282 | G14456 | Fieldwood Energy LLC | 06/15/18 | Production from SM 268 A RUE | [2] |
| ST | 206 | A | 23851 | G30291 | G05612 | Fieldwood Energy LLC | 12/11/15 | ST 205 G001 & G003 | |

[1] RUE services a lease to be co-owned by FWE I and the Credit Bid Purchaser (for SM 149) plus a lease going just to FWE I. RUE only assignable to one entity and are assigned to entity with operatorship.  Expenditures will be shared based on serviced lease ownership.

[2] RUE services leases included on both FWE I and Abandoned Properties schedules. RUE only assignable to one entity and are assigned to entity with operatorship.  Expenditures will be shared based on serviced lease ownership.

**Exhibit D**
**Leases, Rights of Way and Rights of Use and Easement Related to**
**FWE III Oil & Gas Lease Interests**

## Leases Related to FWE III Oil & Gas Lease Interests[1]

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|-------------------|----------|-----|--------------|---------|
| BS 41 | G21142 | Federal | OP 2 | 5/1/1999 | 4,995 | Fieldwood En Off | 10.0% | TERMIN | [1] |
| BS 41 | G21142 | Federal | Contractual | 5/1/1999 | 4,995 | Fieldwood En Off | 25.0% | TERMIN | [1] |
| EC 257 | G21580 | Federal | OP 1 | 7/1/2000 | 5,000 | Fieldwood En Off | 100.0% | TERMIN | |
| GA 241 | G01772 | Federal | OP 1 | 7/1/1968 | 1,440 | Fieldwood En Off | 100.0% | TERMIN | |
| GA 241 | G01773 | Federal | RT | 7/1/1968 | 1,440 | Fieldwood En Off | 100.0% | TERMIN | |
| GA 255 | G01777 | Federal | RT | 7/1/1968 | 5,760 | Fieldwood En Off | 100.0% | TERMIN | |
| GI 83 | G03793 | Federal | RT | 6/1/1978 | 5,000 | Fieldwood En Off | 100.0% | TERMIN | |
| HI A-446 | G02359 | Federal | RT | 8/1/1973 | 5,760 | Bandon O&G | 100.0% | TERMIN | |
| HI A-447 | G02360 | Federal | RT | 8/1/1973 | 5,760 | Bandon O&G | 100.0% | TERMIN | |
| MP 154 | G10902 | Federal | RT | 7/1/1989 | 4,995 | Fieldwood En Off | 100.0% | TERMIN | |
| MP 112 | G09707 | Federal | RT | 6/1/1988 | 4,995 | Fieldwood En Off | 100.0% | RELINQ | |
| SM 39 | G16320 | Federal | RT | 7/1/1996 | 5,000 | Fieldwood En Off | 50.0% | PROD | |
| ST 242 | G23933 | Federal | RT | 6/1/2002 | 5,000 | Fieldwood En Off | 60.0% | TERMIN | |
| VR 314 | G05438 | Federal | OP 2 | 7/1/1983 | 5,000 | Fieldwood En Off | 50.0% | PROD | |
| VR 315 | G04215 | Federal | OP 1 | 1/1/1980 | 5,000 | Dynamic Off Res | 50.0% | TERMIN | |
| VR 332 | G09514 | Federal | OP 1 | 7/1/1988 | 5,000 | Fieldwood En | 67.0% | PROD | [1] |
| VR 332 | G09514 | Federal | RT | 7/1/1988 | 5,000 | Fieldwood En | 100.0% | PROD | [1] |
| VR 333 | G14417 | Federal | RT | 7/1/1994 | 4,201 | Fieldwood En Off | 67.0% | TERMIN | |
| VK 113 | G16535 | Federal | RT | 6/1/1996 | 5,760 | Fieldwood En Off | 100.0% | TERMIN | |

[1] The Debtors reserve the right to amend, modify, or supplement this schedule in accordance with the terms of the Plan and subject to any consent rights under the Restructuring Support Agreement.

[1] Represents leases in which Fieldwood III is to acquire all of the Debtors' right, title and interest in such lease (less and except the right, title and interest acquired by FWE from Apache); as to all remaining leases on this schedule, FWE III is to obtain all of the Debtors' right, title and interest in such leases.

Key:   RT = Record Title; OP = Operating Rights; ORRI = Overriding Royalty Interest; CONT = Contractual; OPRTS = Operating Rights; WI = Working Interest

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|-------------------|----------|-----|--------------|---------|
| VK 251 | G10930 | Federal | OP 1 | 7/1/1989 | 5,760 | Fieldwood En Off | 100.0% | UNIT | [1] |
| VK 340 | G10933 | Federal | OP 1 | 7/1/1989 | 5,760 | Fieldwood En Off | 100.0% | UNIT | [1] |
| WC 100 | G22510 | Federal | RT | 7/1/2001 | 5,000 | Fieldwood En Off | 100.0% | RELINQ | |
| WC 290 | G04818 | Federal | OP 1 | 9/1/1981 | 5,000 | Fieldwood En Off | 50.0% | TERMIN | [1] |

WEIL:\97879238\2\45327.0005

# FWE III ROW

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15213 | Fieldwood Energy, LLC | BS | 41 | B | BS | 42 | 24" SSTI | 10 | G/C | Partial Abandon | G25383 | G21142 |
| 5911 | Bandon Oil and Gas, LP | GI | 83 | A | GI | 82 | 16 SSTI | 6 | GAS | Permitted for Abandonment | G04355 | G03793 |
| 9006 | Fieldwood Energy, LLC | MP | 112 | #02 | MP | 117 | 08 SSTI | 6 | BLKG | Permitted for Abandonment Approved | G11738 | G09707 |
| 15220 | Fieldwood Energy Offshore LLC | ST | 242 | A | SS | 283 | 24 SSTI | 8 | G/C | Permitted for Abandonment | G26891 | G23933 |
| 19427 | Fieldwood Energy, LLC | VK | 113 | A | CA | 43 | A | 4 | BLKG | Out of Service | G29321 | G16535 |
| 13721 | Fieldwood Energy, LLC | VK | 251 | A | VK | 340 | A | 3 | AIR | Active | G28704 | G10930 |
| 14876 | Fieldwood Energy, LLC | VK | 251 | A | MP | 154 | A | 4 | H2O | Active | G22465 | G10930 |
| 13720 | Fieldwood Energy Offshore LLC | VK | 340 | 8-inch SSTI | VK | 251 | Platform A | 8 | BLGH | Active | G28703 | G10933 |
| 7298 | Dynamic Industries, Inc | VR | 315 | A | VR | 331 | 06 SSTI | 6 | OIL | Out of Service | G07545 | G04215 |
| 10736 | Dynamic Industries, Inc | VR | 332 | A | VR | 315 | A | 8 | BLKG | Out of Service | G15672 | G09514 |
| 10737 | Dynamic Industries, Inc | VR | 332 | A | VR | 315 | A | 6 | LIFT | Out of Service | G15673 | G09514 |
| 14210 | Fieldwood Energy Offshore LLC | WC | 100 | A | WC | 102 | 30" SSTI | 8 | G/C | Permitted for Abandonment Approved | G24699 | G22510 |
| 13864 | Fieldwood Energy, LLC | WC | 100 | A | WC | 102 | 30 SSTI | 8 | G/C | Permitted for Abandonment Approved | G24253 | G22510 |
| 8621 | Bandon Oil and | WC | 290 | A | WC | 289 | A | 6 | BLKG | Out of Service | G10532 | G04818 |

WEIL:\97879238\2\45327.0005

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Gas, LP | | | | | | | | | | | |

4

WEIL:\97879238\2\45327.0005

## FWE III RUE

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets | Note[1] |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|---------|
| GA | 255 | A | 10050 | G30195 | G01777 | Fieldwood Energy Offshore LLC | 06/12/13 | GA 241 A005 & B004 | |
| MP | 154 | A | 24171 | G30337 | G10902 | Fieldwood Energy Offshore LLC | 02/03/17 | MP 154 A001 & A002 | |
| VR | 315 | A | 22981 | G30213 | G04215 | Fieldwood Energy Offshore LLC | 11/26/13 | VR 332 A001, A002, A005 & A006 | |
| VR | 315 | A-AUX | 22981 | G30213 | G04215 | Fieldwood Energy Offshore LLC | 11/26/13 | Production from VR 315 A RUE | |
| WC | 289 | A-PROCESS | 23036 | G14262 | G04818 | Fieldwood Energy LLC | 12/03/93 | ROW accessory PF WC 289 A | [1] |

---

[1] RUE services lease included on both FWE I and FWE III schedules. RUE only assignable to one entity and are assigned to entity with operatorship. Expenditures will be shared based on serviced lease ownership.

WEIL:\97879238\2\45327.0005

**Exhibit E**
**Leases, Rights of Way and Rights of Use and Easement Related to**
**Abandoned Properties**

## Leases Related to Abandoned Properties[1]

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|-------------------|----------|-----|--------------|---------|
| BA A-102 | G01754 | Federal | RT | 6/1/1968 | 5,760 | Fieldwood En | 100.0% | TERMIN | |
| BA A-105 | G01757 | Federal | RT A | 7/1/1968 | 5,760 | Fieldwood En | 87.5% | PROD | [1] |
| BA A-105 | G01757 | Federal | RT B | 7/1/1968 | 5,760 | Fieldwood En | 100.0% | PROD | [1] |
| BA A-133 | G02665 | Federal | RT | 7/1/1974 | 5,760 | GOM Shelf | 25.0% | PROD | [1] |
| EB 158 | G02645 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood SD Off | 66.0% | PROD | |
| EB 159 | G02646 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood SD Off | 66.0% | PROD | |
| EB 160 | G02647 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood SD Off | 100.0% | PROD | |
| EB 161 | G02648 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood SD Off | 100.0% | PROD | |
| EB 165 | G06280 | Federal | RT | 10/1/1983 | 5,760 | Fieldwood SD Off | 100.0% | UNIT | |
| EB 209 | G07397 | Federal | RT | 9/1/1984 | 5,760 | Fieldwood SD Off | 100.0% | UNIT | |
| EC 330 | G03540 | Federal | OP 1 | 8/1/1977 | 5,000 | Fieldwood En Off | 50.0% | TERMIN | |
| EC 331 | G08658 | Federal | OP 1 | 8/1/1987 | 5,000 | Fieldwood En Off | 92.8% | TERMIN | |
| EC 331 | G08658 | Federal | OP 2 | 8/1/1987 | 5,000 | Fieldwood En Off | 92.8% | TERMIN | |
| EC 332 | G09478 | Federal | RT | 5/1/1988 | 5,000 | Fieldwood En Off | 88.0% | TERMIN | |
| EC 332 | G09478 | Federal | OP 1 | 5/1/1988 | 5,000 | Fieldwood En Off | 88.0% | TERMIN | |
| EC 349 | G14385 | Federal | OP 1 | 5/1/1994 | 5,000 | W & T Off | 25.0% | PROD | |
| EC 350 | G15157 | Federal | OP 1 | 9/1/1995 | 5,000 | W & T Off | 25.0% | TERMIN | |
| EC 356 | G13592 | Federal | RT | 9/1/1992 | 5,000 | W & T Off | 25.0% | RELINQ | |
| EC 371 | G02267 | Federal | CONT | 2/1/1973 | 5,000 | Talos ERT | 25.0% | TERMIN | |
| EI 100 | 796 | Federal | Contractual | 5/1/1960 | 5,000 | Fieldwood En | 100.0% | PROD | |
| EI 175 | 438 | Federal | OP 1 | 12/1/1954 | 5,000 | Fieldwood En | 25.0% | PROD | [1] |
| EI 307 | G02110 | Federal | RT | 2/1/1971 | 2,500 | Fieldwood En | 25.0% | TERMIN | [1] |
| EI 311 | G27918 | Federal | RT | 7/1/2006 | 5,000 | Dynamic Off Res | 60.0% | TERMIN | |

[1] The Debtors reserve the right to amend, modify, or supplement this schedule in accordance with the terms of the Plan and subject to any consent rights under the Restructuring Support Agreement.

[1] Represents leases in which all of the Debtors' right, title and interest in such leases are to be abandoned (less and except the right, title and interest acquired by FWE from Apache); as to all remaining leases on this schedule (other than those leases referenced in footnotes [2]-[4] below), all of the Debtors' right, title and interest in such leases are to be abandoned. For each lease on this schedule, see the BOEM's Serial Register Page to identify the Debtors' interests; this schedule identifies each separate interest of the Debtors that carries any assets or liabilities, but does not necessarily identify each separate interest of the Debtors in each such lease.

[2] Fieldwood Energy Offshore's record title solely as to the NE/4 of the block and its interest in the operating rights are to be abandoned; its remaining record title and its overriding royalty interests are to be acquired by the Credit Bid Purchaser.

[3] FWE I is to acquire solely the operating rights as to the NE/4 of this block; the Credit Bid Purchaser is to obtain the Debtors' overriding royalty interest in this lease; and the Debtors' remaining interests in the lease are to be abandoned.

[4] Represents leases where the Credit Bid Purchaser is to acquire solely the Debtors' overriding royalty interests; the Debtors' remaining interests in these leases are to be abandoned.

Key:   RT = Record Title; OP = Operating Rights; ORRI = Overriding Royalty Interest; CONT = Contractual; OPRTS = Operating Rights; WI = Working Interest

WEIL:\97879237\2\45327.0005

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|-------------------|----------|-----|--------------|---------|
| EI 312 | G22679 | Federal | OP 1 | 6/1/2001 | 5,000 | Fieldwood En | 60.0% | TERMIN | [1] |
| EI 32 | 00196 | Federal | OP 1 | 11/26/1946 | 5,000 | Cox Op | 23.7% | PROD | |
| EI 330 | G02115 | Federal | Contractual | 1/1/1971 | 5,000 | Fieldwood En | 17.0% | UNIT | [1] |
| EI 342 | G02319 | Federal | RT A | 2/1/1973 | 5,000 | Fieldwood En | 50.0% | TERMIN | [1] |
| EI 53 | 00479 | Federal | OP 1 | 12/1/1954 | 5,000 | Fieldwood En | 11.1% | PROD | [1] |
| EI 63 | 00425 | Federal | RT | 12/1/1954 | 5,000 | Fieldwood En Off | 100.0% | TERMIN | |
| EW 782 | G05793 | Federal | CONT | 7/1/1983 | 1,093 | Fieldwood En | 100.0% | TERMIN | [1] |
| GA 151 | G15740 | Federal | RT | 11/1/1995 | 4,804 | Fieldwood En | 33.0% | TERMIN | [1] |
| GA 210 | G25524 | Federal | OP 1 | 12/1/2003 | 5,760 | Fieldwood En | 16.7% | PROD | [1] |
| GA 210 | G25524 | Federal | OP 3 | 12/1/2003 | 5,760 | Fieldwood En | 33.0% | PROD | [1] |
| GA A-155 | G30654 | Federal | RT | 10/1/2006 | 5,760 | Peregrine O&G | 10.8% | TERMIN | |
| GC 157 | G24154 | Federal | RT | 6/1/2002 | 5,760 | LLOG Exp Off | 15.0% | TERMIN | |
| GC 201 | G12210 | Federal | OP | 5/1/1990 | 5,760 | LLOG Exp Off | 15.0% | UNIT | |
| GC 201 | G12210 | Federal | RT | 5/1/1990 | 5,760 | Fieldwood En Off; LLOG Exp Off | 100.0% | UNIT | [2] |
| GC 245 | G05916 | Federal | CONT | 7/1/1983 | 5,760 | Fieldwood En Off | 100.0% | TERMIN | |
| GC 64 | G07005 | Federal | CONT | 6/1/1984 | 5,760 | Fieldwood En Off | 49.0% | RELINQ | |
| HI A-341 | G25605 | Federal | RT | 12/1/2003 | 5,760 | Fieldwood En | 40.0% | PROD | [1] |
| HI A-365 | G02750 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood En | 49.6% | PROD | [1] |
| HI A-376 | G02754 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood En | 55.4% | PROD | [1] |
| HI A-382 | G02757 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood En | 27.6% | PROD | [1] |
| HI A-474 | G02366 | Federal | RT | 8/1/1973 | 5,760 | McMoRan O&G | 12.0% | TERMIN | [1] |
| HI A-475 | G02367 | Federal | CONT | 8/1/1973 | 5,760 | McMoRan O&G | 12.0% | TERMIN | [1] |
| HI A-489 | G02372 | Federal | RT | 8/1/1973 | 5,760 | McMoRan O&G | 12.0% | TERMIN | [1] |
| HI A-531 | G02696 | Federal | OP 1 | 7/1/1974 | 5,760 | Fieldwood En | 75.0% | TERMIN | |
| HI A-550 | G04081 | Federal | RT | 10/1/1979 | 5,760 | Fieldwood En Off | 100.0% | PROD | |
| HI A-550 | G04081 | Federal | OP 1 | 10/1/1979 | 5,760 | Fieldwood En Off | 100.0% | PROD | |
| HI A-550 | G04081 | Federal | OP 2 | 10/1/1979 | 5,760 | Fieldwood En Off | 100.0% | PROD | |
| HI A-563 | G02388 | Federal | OP 1 | 8/1/1973 | 5,760 | Cox Op | 2.0% | PROD | |
| HI A-564 | G02389 | Federal | OP 1 | 8/1/1973 | 5,760 | Cox Op | 2.0% | TERMIN | |
| HI A-572 | G02392 | Federal | RT | 8/1/1973 | 5,760 | Fieldwood En | 24.1% | PROD | [1] |
| HI A-573 | G02393 | Federal | RT | 8/1/1973 | 5,760 | Fieldwood En | 27.6% | PROD | [1] |
| HI A-581 | G18959 | Federal | RT | 12/1/1997 | 5,760 | Cox Op | 2.0% | TERMIN | [1] |
| HI A-582 | G02719 | Federal | OP 1 | 7/1/1974 | 5,760 | Cox Op | 2.3% | PROD | [1] |
| HI A-595 | G02721 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood En | 27.6% | PROD | [1] |
| HI A-596 | G02722 | Federal | RT | 7/1/1974 | 5,760 | Fieldwood En | 27.6% | PROD | [1] |
| MO 861 | G05062 | Federal | RT | 4/1/1982 | 5,198 | Providence Res GOM 2 | 100.0% | TERMIN | |

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|-------------------|----------|-----|-------------|---------|
| MO 861 | G05062 | Federal | OP 1 | 4/1/1982 | 5,198 | Providence Res GOM 2 | 50.0% | TERMIN | |
| MP 101 | G22792 | Federal | RT | 7/1/2001 | 4,995 | Fieldwood En Off | 77.5% | TERMIN | |
| MP 109 | G22794 | Federal | OP 1 | 5/1/2001 | 4,995 | W & T Off | 33.3% | TERMIN | |
| MP 109 | G22794 | Federal | OP 2 | 5/1/2001 | 4,995 | W & T Off | 33.3% | TERMIN | |
| MP 77 | G04481 | Federal | RT | 11/1/1980 | 4,655 | Fieldwood En Off | 73.8% | RELINQ | [1] |
| PL 13 | G03171 | Federal | OP 3 | 7/1/1975 | 5,000 | ANKOR En | 2.0% | TERMIN | |
| SM 102 | G24872 | Federal | RT | 5/1/2003 | 3,113 | Fieldwood En Off | 100.0% | PROD | |
| SM 132 | G02282 | Federal | RT | 2/1/1973 | 5,000 | Fieldwood En | 50.0% | TERMIN | [1] |
| SM 135 | G19776 | Federal | RT | 5/1/1998 | 3,293 | Fieldwood En | 50.0% | TERMIN | [1] |
| SM 136 | G02588 | Federal | RT | 5/1/1974 | 2,500 | Fieldwood En | 50.0% | TERMIN | [1] |
| SM 137 | G02589 | Federal | RT | 5/1/1974 | 5,000 | Fieldwood En | 50.0% | TERMIN | [1] |
| SM 139 | G21106 | Federal | OP 1 | 7/1/1999 | 5,000 | Fieldwood En Off | 100.0% | TERMIN | |
| SM 142 | G01216 | Federal | RT | 6/1/1962 | 2,761 | Fieldwood En Off | 86.1% | TERMIN | |
| SM 142 | G01216 | Federal | OP 1 | 6/1/1962 | 2,761 | Fieldwood En Off | 86.1% | TERMIN | |
| SM 143 | G01217 | Federal | CONT | 5/1/1962 | 2,738 | Fieldwood En Off | 16.0% | TERMIN | |
| SM 146 | G09546 | Federal | RT | 7/1/1988 | 5,000 | Dynamic Off Res | 100.0% | TERMIN | |
| SM 147 | G06693 | Federal | RT | 7/1/1984 | 5,000 | Fieldwood En Off | 100.0% | TERMIN | |
| SM 150 | G16325 | Federal | RT | 6/1/1996 | 3,329 | Fieldwood En | 50.0% | RELINQ | [1] |
| SM 268 | G02310 | Federal | RT | 1/1/1973 | 3,237 | Fieldwood En | 30.1% | TERMIN | [1] |
| SM 269 | G02311 | Federal | RT | 1/1/1973 | 5,000 | Fieldwood En | 17.7% | PROD | [1] |
| SM 269 | G02311 | Federal | RT | 1/1/1973 | 5,000 | Fieldwood En | 9.1% | PROD | [1] |
| SM 269 | G02311 | Federal | RT | 1/1/1973 | 5,000 | Fieldwood En | 0.4% | PROD | [1] |
| SM 280 | G14456 | Federal | OP 1 | 6/1/1994 | 5,000 | Fieldwood En | 50.0% | PROD | [1] |
| SM 280 | G14456 | Federal | OP 3 | 6/1/1994 | 5,000 | Fieldwood En | 50.0% | PROD | [1] |
| SM 281 | G02600 | Federal | RT | 4/1/1974 | 3,214 | Fieldwood En | 31.9% | PROD | [1] |
| SM 66 | G01198 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En | 50.0% | TERMIN | [1] |
| SM 87 | G24870 | Federal | RT | 5/1/2003 | 3,077 | Castex Off | 100.0% | PROD | |
| SP 17 | G02938 | Federal | RT | 11/1/1974 | 962 | Fieldwood En Off | 100.0% | UNIT | |
| SP 37 | 00697 | Federal | OP 1 | 10/1/1959 | 2,500 | Whitney O&G | 44.0% | PROD | |
| SP 6 | G03337 | Federal | RT | 4/1/1976 | 318 | Fieldwood En Off | 100.0% | UNIT | |
| SP 6 | G03337 | Federal | OP | 4/1/1976 | 318 | Fieldwood En Off | 100.0% | UNIT | |
| SP 59 | G02942 | Federal | RT | 11/1/1974 | 1,657 | Fieldwood En Off | 100.0% | UNIT | |
| SP 59 | G02943 | Federal | RT | 11/1/1974 | 907 | Fieldwood En Off | 100.0% | UNIT | |
| SP 59, SP 60 | G01608 | Federal | RT | 7/1/1967 | 3,510 | Fieldwood En Off | 100.0% | UNIT | |
| SP 60 | G02137 | Federal | RT | 11/1/1974 | 1,762 | Fieldwood En Off | 100.0% | UNIT | |
| SP 61 | G01609 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 100.0% | UNIT | [3] |
| SP 61 | G01609 | Federal | OP 1 | 7/1/1967 | 5,000 | Fieldwood En | 100.0% | UNIT | [3] |

3

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|---|---|---|---|---|---|---|---|---|---|
| SP 66 | G01611 | Federal | RT | 6/1/1967 | 4,310 | Fieldwood En Off | 100.0% | UNIT | [1] |
| SP 67 | G01612 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En Off | 100.0% | UNIT | |
| SS 149 | 00434 | Federal | OP 1 | 1/1/1955 | 5,000 | W & T Off | 3.0% | TERMIN | |
| SS 149 | 00434 | Federal | OP 2 | 1/1/1955 | 5,000 | W & T Off | 3.0% | TERMIN | |
| SS 149 | 00434 | Federal | OP 1 | 1/1/1955 | 5,000 | W&T Off | 3.0% | TERMIN | |
| SS 149 | 00434 | Federal | OP 2 | 1/1/1955 | 5,000 | W&T Off | 3.0% | TERMIN | |
| SS 169 | 00820 | Federal | RT | 4/1/1961 | 5,000 | Fieldwood En | 33.3% | PROD | [1] |
| SS 177 | 00590 | Federal | RT | 9/1/1955 | 5,000 | W & T En | 25.0% | PROD | |
| SS 189 | G04232 | Federal | OP 5 | 12/1/1979 | 5,000 | Fieldwood En | 1.0% | PROD | [1] |
| SS 204 | G01520 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 20.9% | PROD | [1] |
| SS 204 | G01520 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 0.2% | PROD | [1] |
| SS 206 | G01522 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 40.0% | UNIT | [1] |
| SS 207 | G01523 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 27.5% | UNIT | [1] |
| SS 207 | G01523 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 0.3% | UNIT | [1] |
| SS 207 | G01523 | Federal | OP | 7/1/1967 | 5,000 | Fieldwood En | 0.3% | UNIT | [1] |
| SS 214 | 00828 | Federal | RT | 5/1/1960 | 5,000 | W & T Off | 35.5% | PROD | |
| SS 214 | 00828 | Federal | OP 1 | 5/1/1960 | 5,000 | W & T Off | 13.5% | PROD | |
| SS 216 | G01524 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 19.7% | PROD | [1] |
| SS 216 | G01524 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En | 0.3% | PROD | [1] |
| SS 232 | G15293 | Federal | RT | 9/1/1995 | 5,000 | W & T Off | 33.8% | TERMIN | |
| SS 233 | G01528 | Federal | RT | 7/1/1967 | 5,000 | W & T Off | 33.8% | PROD | |
| SS 238 | G03169 | Federal | RT | 7/1/1975 | 5,000 | W & T Off | 34.5% | PROD | |
| SS 238 | G03169 | Federal | OP 2 | 7/1/1975 | 5,000 | Peregrine O&G II | 34.5% | PROD | |
| SS 246 | G01027 | Federal | OP 11 | 6/1/1962 | 5,000 | Fieldwood En Off | 80.7% | TERMIN | |
| SS 246 | G01027 | Federal | OP 13 | 6/1/1962 | 5,000 | Fieldwood En Off | 76.8% | TERMIN | |
| SS 247 | G01028 | Federal | RT B | 6/1/1962 | 5,000 | Fieldwood En Off | 89.2% | UNIT | |
| SS 247 | G01028 | Federal | RT C | 6/1/1962 | 5,000 | Fieldwood En Off | 77.3% | UNIT | |
| SS 248 | G01029 | Federal | RT B | 6/1/1962 | 5,000 | Fieldwood En Off | 77.3% | UNIT | |
| SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | 5,000 | Fieldwood En Off | 79.7% | UNIT | [1] |
| SS 249 | G01030 | Federal | OP 2 | 6/1/1962 | 5,000 | Fieldwood En Off | 68.8% | UNIT | [1] |
| SS 252 | G01529 | Federal | RT | 7/1/1967 | 5,000 | Fieldwood En Off | 100.0% | PROD | |
| SS 252 | G01529 | Federal | OP 1 | 7/1/1967 | 5,000 | Fieldwood En Off | 100.0% | PROD | |
| SS 252 | G01529 | Federal | OP 2 | 7/1/1967 | 5,000 | Fieldwood En Off | 31.9% | PROD | |
| SS 253 | G01031 | Federal | RT | 6/1/1962 | 5,000 | Fieldwood En Off | 100.0% | PROD | |
| SS 253 | G01031 | Federal | OP 1 | 6/1/1962 | 5,000 | Fieldwood En Off | 100.0% | PROD | |
| SS 253 | G01031 | Federal | OP 2 | 6/1/1962 | 5,000 | Fieldwood En Off | 100.0% | PROD | |
| SS 253 | G01031 | Federal | OP 4 | 6/1/1962 | 5,000 | Fieldwood En Off | 100.0% | PROD | |
| SS 253 | G01031 | Federal | OP 5 | 6/1/1962 | 5,000 | Fieldwood En Off | 100.0% | PROD | |
| SS 270 | G01037 | Federal | RT | 3/13/1962 | 5,000 | Fieldwood En Off | 89.2% | UNIT | |

4

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|-------|-------|------|--------|-------------|-------------------|----------|-----|--------------|---------|
| SS 271 | G01038 | Federal | RT | 3/13/1962 | 5,000 | Fieldwood En Off | 72.3% | UNIT | [1] |
| SS 271 | G01038 | Federal | OP | 3/13/1962 | 5,000 | Fieldwood En Off | 72.3% | UNIT | [1] |
| SS 291 | G02923 | Federal | RT B | 12/1/1974 | 3,750 | Fieldwood En | 15.4% | OPERNS | [1] |
| SS 300 | G07760 | Federal | RT | 8/1/1985 | 5,000 | W & T Off | 24.3% | PROD | |
| SS 315 | G09631 | Federal | RT | 6/1/1988 | 5,000 | W & T Off | 25.0% | PROD | |
| ST 169 | G01253 | Federal | RT | 6/1/1962 | 4,708 | Beryl O&G | 100.0% | TERMIN | |
| ST 195 | G03593 | Federal | RT | 8/1/1977 | 5,000 | Fieldwood En Off | 100.0% | TERMIN | |
| ST 315 | G23946 | Federal | RT | 7/1/2002 | 4,458 | W & T Off | 50.0% | PROD | |
| ST 316 | G22762 | Federal | RT | 6/1/2001 | 4,435 | W & T Off | 40.0% | PROD | [1] |
| VK 824 | G15436 | Federal | CONT | 9/1/1995 | 5,760 | Fieldwood En | 6.1% | RELINQ | |
| VK 826 | G06888 | Federal | RT | 6/1/1984 | 5760 | Fieldwood En | 100.0% | TERMIN | |
| VK 917 | G15441 | Federal | OP | 7/1/1995 | 5760 | Fieldwood En | 85.0% | PROD | |
| VK 962 | G15445 | Federal | OP 1 | 7/1/1995 | 5760 | Fieldwood En | 85.0% | TERMIN | |
| VR 196 | G19760 | Federal | OP 1 | 8/1/1998 | 5,000 | Fieldwood En Off | 63.1% | TERMIN | |
| VR 207 | G19761 | Federal | OP 1 | 8/1/1998 | 5,000 | Fieldwood En Off | 46.4% | RELINQ | |
| VR 261 | G03328 | Federal | RT | 4/1/1976 | 5,429 | Fieldwood En | 25.0% | TERMIN | [1] |
| VR 261 | G03328 | Federal | OP 1 | 4/1/1976 | 5,429 | Fieldwood En | 25.0% | TERMIN | [1] |
| VR 262 | G34257 | Federal | RT | 10/1/2012 | 5,485 | Fieldwood En | 25.0% | RELINQ | [1] |
| VR 272 | G23829 | Federal | RT | 6/1/2002 | 4,381 | Fieldwood En Off | 100.0% | PROD | |
| VR 273 | G14412 | Federal | OP 3 | 5/1/1994 | 5,000 | Fieldwood En Off | 100.0% | TERMIN | |
| VR 279 | G11881 | Federal | OP 1 | 5/1/1990 | 5,000 | Talos En Off | 50.0% | TERMIN | |
| VR 313 | G01172 | Federal | OP 1 | 6/1/1962 | 5,000 | Fieldwood En Off | 100.0% | TERMIN | |
| VR 313 | G01172 | Federal | OP 2 | 6/1/1962 | 5,000 | Fieldwood En Off | 100.0% | TERMIN | |
| VR 408 | G15212 | Federal | CONT | 7/1/1995 | 5,000 | Fieldwood En | 33.2% | PROD | |
| WC 171 | G01997 | Federal | RT | 1/1/1971 | 5,000 | XTO | 33.5% | TERMIN | |
| WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | 5,000 | Fieldwood En Off | 13.8% | PROD | [1] |
| WC 485 | G02220 | Federal | RT | 2/1/1973 | 5,000 | Fieldwood En Off | 100.0% | UNIT | |
| WC 498 | G03520 | Federal | RT | 8/1/1977 | 5,000 | Cox Op | 3.7% | PROD | |
| WC 507 | G02549 | Federal | RT | 4/1/1974 | 2,500 | Fieldwood En Off | 100.0% | UNIT | |
| WC 507 | G02549 | Federal | OP 1 | 4/1/1974 | 2,500 | Fieldwood En Off | 50.0% | UNIT | |
| WC 507 | G10594 | Federal | RT | 6/1/1989 | 2,500 | Fieldwood En Off | 100.0% | UNIT | |
| WC 65 | G02825 | Federal | OP 4 | 12/1/1974 | 5,000 | Fieldwood En | 18.8% | PROD | [1] |
| WC 66 | G02826 | Federal | OP 2 | 12/1/1974 | 3,750 | Fieldwood En | 25.0% | PROD | [1] |
| WC 67 | G03256 | Federal | CONT | 9/1/1975 | 5,000 | Fieldwood En | 17.5% | TERMIN | [1] |
| WC 72 | G23735 | Federal | RT | 7/1/2002 | 5,000 | Fieldwood En Off | 75.0% | PROD | |
| WC 96 | G23740 | Federal | OP 1 | 5/1/2002 | 5,000 | Talos | 25.0% | UNIT | |
| WD 103 | G12360 | Federal | OP 1 | 5/1/1960 | 1,016 | Fieldwood En | 18.8% | PROD | [1] |
| WD 121 | G19843 | Federal | OP 1 | 8/1/1998 | 5,000 | Fieldwood En | 16.0% | PROD | [1] |
| WD 122 | G13645 | Federal | OP 1 | 8/1/1992 | 5,000 | Fieldwood En | 16.0% | PROD | [1] |

5

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|---|---|---|---|---|---|---|---|---|---|
| WD 122 | G13645 | Federal | OP 2 | 8/1/1992 | 5,000 | Fieldwood En | 16.0% | PROD | [1] |
| WD 27 | G04473 | Federal | RT B | 11/1/1980 | 5,000 | Cox Op | 13.8% | PROD | |
| WD 57, WD 79, WD 80 | G01449 | Federal | RT | 5/1/1966 | 3,125 | Fieldwood En Off | 100.0% | UNIT | [4] |
| WD 63 | G19839 | Federal | OP 1 | 6/1/1998 | 5,000 | Peregrine O&G | 12.5% | RELINQ | |
| WD 64 | G25008 | Federal | RT | 5/1/2003 | 5,000 | Peregrine O&G | 5.9% | TERMIN | |
| WD 73 | G01083 | Federal | OP 2 | 6/1/1962 | 5,000 | Cox Op | 5.9% | UNIT | |
| WD 74 | G01084 | Federal | OP 1 | 6/1/1962 | 5,000 | Cox Op | 5.9% | UNIT | |
| WD 79, WD 80 | G01874 | Federal | RT | 12/1/1968 | 3,438 | Fieldwood En Off | 100.0% | UNIT | [4] |
| WD 80 | G01989 | Federal | RT | 8/1/1970 | 1,875 | Fieldwood En Off | 100.0% | UNIT | [4] |
| WD 80 | G02136 | Federal | RT | 1/1/1972 | 938 | Fieldwood En Off | 100.0% | UNIT | [4] |
| WD 85 | G04895 | Federal | RT | 12/1/1981 | 2,630 | Fieldwood En Off | 100.0% | TERMIN | |
| WD 85 | G04895 | Federal | OP 1 | 12/1/1981 | 2,630 | Fieldwood En Off | 100.0% | TERMIN | |
| WD 86 | G02934 | Federal | RT | 12/1/1974 | 2,500 | SPN Res | 100.0% | TERMIN | |
| WD 86 | G04243 | Federal | RT | 1/1/1980 | 2,500 | Fieldwood En Off | 100.0% | TERMIN | |
| WD 86 | G04243 | Federal | OP 1 | 1/1/1980 | 2,500 | Fieldwood En Off | 100.0% | TERMIN | |
| WD 86 | G04243 | Federal | OP 2 | 1/1/1980 | 2,500 | Fieldwood En Off | 100.0% | TERMIN | |
| WD 86 | G04243 | Federal | OP 3 | 1/1/1980 | 2,500 | Fieldwood En Off | 100.0% | TERMIN | |
| WD 90 | G01089 | Federal | OP 3 | 6/1/1962 | 5,000 | Fieldwood En | 18.8% | PROD | [1] |
| SP 42 | SL03011 | SL- LA | WI | - | - | - | 100.0% | SOP | |
| - | 14519 | SL - TX | WI | - | - | - | 50.0% | UNIT | |
| - | 14520 | SL - TX | WI | - | - | - | 50.0% | UNIT | |
| - | 14914 | SL - TX | WI | - | - | - | 65.6% | UNIT | |
| SP 42 | SL16869 | SL- LA | WI | - | - | - | 100.0% | PROD | |
| BS 45 | SL19051 | SL- LA | ORRI | 8/9/2006 | | Southern Oil of Louisiana | 0.2% | UNIT | |
| BS 53 | SL3770 | SL- LA | WI | | | | 50.0% | RELEASED | |
| - | SL17072 | SL- LA | WI | - | - | - | 37.8% | ACTIVE | |
| - | SL18287 | SL- LA | WI | - | - | - | 44.2% | - | |
| - | SL19266 | SL- LA | WI | - | - | - | 17.3% | ACTIVE | |
| - | 42450 | SL- LA | WI | - | - | Fieldwood Onshore | 62.5% | TERMINATED | |
| - | 490100 | SL- LA | WI | - | - | SandRidge Exploration & Production | 100.0% | SCOPING | |
| - | JMB Partnership | Onshore | | 2/6/2019 | | | 100.0% | - | |
| - | JMB | Onshore | | 2/25/2018 | | | 100.0% | - | |

6

| Block | Lease | Type | Rights | Date Le Eff | Le Cur Acres (Ac) | Operator | WI | Lease Status | Note[2] |
|---|---|---|---|---|---|---|---|---|---|
| | Partnership | | | | | | | | |
| - | Richardson A Caffery et al | Onshore | | 2/1/2016 | | | 100.0% | - | |
| - | Caroline Baker Trust No 1 | Onshore | | 1/22/2016 | | | 100.0% | - | |
| - | 111650 | SL-TX | | | | Osprey Petroleum Co, Inc | 7% | ACTIVE | |
| - | 115727 | SL-TX | | | | Osprey Petroleum Co, Inc | 100% | ACTIVE | |
| - | 114988 | SL-TX | | | | Osprey Petroleum Co, Inc | 100% | ACTIVE | |
| - | 19334 | SL-TX | WI | - | - | Elliott Oil & Gas Operating | 75% | INJECTION | |
| - | 136449 | SL-TX | WI | - | - | TR Offshore, LLC | 7% | ACTIVE | |
| - | 09061 | SL-TX | WI | - | - | Landon Browning | 33% | TERMINATED | |
| - | 168986 | SL-TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |
| - | 189098 | SL-TX | WI | - | - | Fieldwood Onshore | 100% | TERMIN | |
| - | 206882 | SL-TX | WI | - | - | Fieldwood Onshore | 100% | TERMINATED | |

7

## Abandoned Properties ROW

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7912 | Fieldwood Energy, LLC | EB | 160 | A | HI | A582 | SSTI | 12 | GAS | Out of Service | G08528 | G02647 | |
| 7923 | Fieldwood Energy, LLC | EB | 165 | A | HI | A 582 | 30 SSTI | 12 | GAS | Active | G08536 | G06280 | |
| 10301 | Bandon Oil and Gas, LP | EC | 332 | A | EC | 330 | 08 SSTI | 6 | OIL | Out of Service | G14699 | G09478 | |
| 44 | Fieldwood Energy, LLC | EI | 175 | C | EI | 176 | 12" SSTI | 8 | OIL | Out of Service | G13445 | 00438 | |
| 1128 | Fieldwood Energy, LLC | EI | 330 | flanged end | EI | 306 | 14-inch SSTI | 14 | OIL | Out of Service | G02139A | G02115 | |
| 7943 | Fieldwood Energy, LLC | EI | 342 | C | EI | 327 | 08 SSTI | 4 | OIL | Out of Service | G08541 | G02319 | |
| 18493 | Fieldwood Energy, LLC | EI | 342 | C | EI | 343 | SSTI | 6 | GAS | Out of Service | G29108 | G02319 | |
| 19960 | Fieldwood Energy LLC | EI | 342 | C | EI | 342 | Blind Flange | 6 | OIL | Out of Service | G29471 | G02319 | |
| 11923 | Fieldwood Energy, LLC | EI | 53 | C | EI | 64 | 22 SSTI | 10 | G/C | Out of Service | G20539 | 00479 | |
| 9211 | Fieldwood Energy, LLC | EI | 53 | B | EI | 64 | 22 SSTI | 6 | G/C | Partial Abandon | G12373 | 00479 | |
| 15298 | Fieldwood Energy, LLC | GA | 210 | B | GA | 239 | 12 SSTI | 8 | G/C | Active | G26931 | G25524 | |
| 16077 | Fieldwood Energy, LLC | HI | 130 | #2 | HI | 165 | 8-inch SSTI | 8 | BLGH | Partial Abandon | G28284 | G25579 | [1] |
| 15401 | Fieldwood Energy, LLC | HI | A 341 | B | HI | A 340 | 30" SSTI | 812 | G/C | Active | G26938 | G25605 | |
| 6669 | Fieldwood Energy, LLC | HI | A 376 | A | HI | A 356 | 12 SSTI | 10 | GAS | Out of Service | G05238 | G02754 | |
| 6669 | Fieldwood Energy LLC | HI | A 376 | Platform A | HI | A 356 | 12 SSTI W/PSN 10882 | 10 | GAS | Out of Service | G05238 | G02754 | |
| 7684 | Fieldwood Energy, LLC | HI | A 550 | A | HI | A 568 | 20 SSTI | 10 | GAS | Out of Service | G08276 | G04081 | |
| 6340 | Fieldwood Energy, LLC | HI | A 568 | Subsea Valve | HI | A 539 | 20 SSTI | 20 | G/C | Out of Service | G04974 | G04081 | |
| 5470 | Fieldwood | HI | A356 | Valve | HI | A343 | HIOS | 12 | GAS | Out of | G04050 | G02754 | |

[1] Lease carries $0 liability.

WEIL:\97879237\2\45327.0005

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Energy, LLC | | | | | | | | | Service | | | |
| 10882 | Fieldwood Energy, LLC | HI | A356 | 10SST | HI | A356 | 12SSTI | 12 | GAS | Out of Service | G04051 | G02754 | |
| 6504 | Fieldwood Energy, LLC | HI | A595 | D | HI | 573 | B | 8 | OIL | Out of Service | G28525 | G02721 | |
| 14304 | Fieldwood Energy, LLC | MP | 101 | SSTI Manifold | MP | 102 | Plat A | 8 | BLKG | Partial Abandon | G24687 | G22792 | |
| 15810 | Fieldwood Energy Offshore LLC | MP | 29 | Well No. 1 | MP | 118 | Platform A | 6 | BLKG | Out of Service | G28216 | G27196 | [1] |
| 15818 | Fieldwood Energy Offshore LLC | MP | 77 | A | MP | 151 | 18"SSTI | 8 | GAS | Out of Service | G28221 | G04481 | |
| 4733 | Fieldwood Energy Offshore LLC | SM | 142 | A | SM | 127 | 24 SSTI | 10 | G/C | Out of Service | G03441 | G01216 | |
| 15106 | Fieldwood Energy Offshore LLC | SM | 146 | B | SM | 147 | A | 6 | BLKG | Out of Service | G26837 | G09546 | |
| 15107 | Fieldwood Energy, LLC | SM | 146 | B | SM | 147 | A | 4 | BLKG | Out of Service | G26838 | G09546 | |
| 15108 | Fieldwood Energy, LLC | SM | 147 | A | SM | 146 | B | 2 | LIFT | Out of Service | G26839 | G09546 | |
| 19363 | Fieldwood Energy Offshore LLC | SM | 147 | A | SM | 130 | 12 SSTI | 6 | BLKO | Out of Service | G14093 | G06693 | |
| 19363 | Fieldwood Energy Offshore LLC | SM | 147 | A | SM | 130 | 12 SSTI | 6 | BLKO | Out of Service | G29316 | G06693 | |
| 10977 | Fieldwood Energy, LLC | SM | 268 | A | SM | 280 | #03 | 3 | BLKG | Out of Service | G28756 | G14456 | |
| 17499 | Fieldwood Energy, LLC | SM | 269 | B | SM | 268 | A | 10 | GAS | Out of Service | G28484 | G02311 | |
| 13642 | Fieldwood Energy, LLC | SM | 280 | H | SM | 268 | A | 10 | BLKG | Permitted for Abandonment | G28758 | G14456 | |
| 5427 | Fieldwood Energy, LLC | SM | 281 | E | SM | 268 | A | 12 | SPLY | Out of Service | G02817 | G02600 | |
| 5429 | Fieldwood Energy, LLC | SM | 281 | C | SM | 281 | 12 SSTI | 10 | SPLY | Out of Service | G02817 | G02600 | |

WEIL:\97879237\2\45327.0005

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6512 | Fieldwood Energy, LLC | SM | 281 | C | SM | 268 | D | 10 | BLKO | Out of Service | G29131 | G02600 | |
| 10268 | Fieldwood Energy SP LLC | SP | 60 | A | SP | 6 | F/S | 10 | OIL | Out of Service | G14679 | G02137 | |
| 20050 | Fieldwood Energy, LLC | SS | 168 | SSTI | SS | 168 | SSTI | 6 | | Proposed | G28788 | 00820 | |
| 6748 | Fieldwood Energy, LLC | SS | 169 | C Platform | SS | 169 | 18-inch SSTI | 6 | OIL | Out of Service | G09322 | 00820 | |
| 12778 | Fieldwood Energy, LLC | SS | 189 | A | SS | 185 | 26"SSTI | 8 | G/C | Out of Service | G22139 | G04232 | |
| 1138 | Fieldwood Energy, LLC | SS | 204 | A | SS | 207 | A | 6 | G/O | Out of Service | G13491 | G01520 | |
| 1137 | Fieldwood Energy, LLC | SS | 207 | A Platform | SS | 204 | A | 4 | GAS | Out of Service | G13489 | G01523 | |
| 1147 | Fieldwood Energy, LLC | SS | 207 | A | SS | 208 | F-Pump | 12 | OIL | Out of Service | G13492 | G01523 | |
| 17775 | Fieldwood Energy, LLC | SS | 253 | C | SS | 208 | F-Pump | 4 | OIL | Out of Service | G01691C | G01031 | |
| 18094 | Bandon Oil and Gas, LP | ST | 195 | B | ST | 196 | SSTI | 6 | G/C | Permitted for Abandonment Approved | G29005 | G03593 | |
| 11107 | Bandon Oil and Gas, LP | ST | 196 | 06-inch SSTI | SS | 208 | F | 6 | OIL | Permitted for Abandonment Approved | G05120 | G03593 | |
| 13720 | Fieldwood Energy, LLC | VK | 340 | 8"SSTI | VK | 251 | A | 8 | BLGH | Active | G28221 | G04481 | |
| 13193 | Bandon Oil and Gas, LP | VR | 196 | A | VR | 206 | 12 SSTI | 8 | G/C | Out of Service | G22418 | G19760 | |
| 18591 | Fieldwood Energy, LLC | VR | 196 | A | VR | 215 | A | 4 | BLKO | Out of Service | G29137 | G19760 | |
| 18588 | Fieldwood Energy, LLC | VR | 215 | A | VR | 196 | A | 4 | GAS | Active | G29136 | G19760 | |
| 17090 | Fieldwood Energy, LLC | VR | 261 | A | VR | 265 | A | 8 | BLKO | Out of Service | G28347 | G03328 | |
| 14609 | Fieldwood Energy, LLC | VR | 272 | "A" | VR | 250 | 8" SSTI | 4 | OIL | Out of Service | G25384 | G23829 | |
| 14277 | Fieldwood Energy, LLC | VR | 272 | A | SM | 116 | 20" SSTI | 10 | G/C | Out of Service | G25288 | G23829 | |
| 5440 | Fieldwood | VR | 313 | B | VR | 313 | 20 SSTI | 10 | GAS | Out of | G04044 | G01172 | |

10

WEIL:\97879237\2\45327.0005

| SEGMENT NUMBER | COMPANY NAME | ORG AREA | ORG BLOCK | ORG NAME | REC AREA | REC BLOCK | REC NAME | SIZE | PRODUCT | STATUS | ROW NUMBER | FW LEASE | NOTE[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Energy Offshore LLC | | | | | | | | | Service | | | |
| 15136 | Fieldwood Energy, LLC | VR | 313 | B | VR | 313 | 6" SSTI | 6 | OIL | Out of Service | G03879 | G01172 | |
| 4289 | Fieldwood Energy Offshore LLC | WC | 485 | A | WC | 509 | GP | 12 | GAS | Out of Service | G02122E | G02220 | |
| 14251 | Fieldwood Energy Offshore LLC | WC | 72 | #1 | WC | 65 | JA | 4 | BLKG | Out of Service | G25275 | G23735 | |
| 16088 | Fieldwood Energy, LLC | WD | 122 | A | WD | 105 | E | 6 | GAS | Out of Service | G28289 | G13645 | |
| 16089 | Fieldwood Energy, LLC | WD | 122 | A | WD | 105 | E | 3 | OIL | Out of Service | G28290 | G13645 | |
| 15960 | Fieldwood Energy, LLC | WD | 90 | A | WD | 73 | SSTI | 4 | OIL | Out of Service | G28260 | G01089 | |
| 18649 | Fieldwood Energy, LLC | VK | 826 | A | VK | 962 | UTA | 4 | UBEH | Out of Service | G29151 | G15441 | |
| 18904 | Fieldwood Energy, LLC | VK | 826 | A | VK | 917 | SUTA | 1 | UMB | Out of Service | G29151 | G15441 | |
| 18648 | Fieldwood Energy, LLC | VK | 962 | PLET | VK | 826 | A-Nep Spar | 6 | SERV | Active | G29151 | G15441 | |
| 14906 | Fieldwood Energy, LLC | VK | 962 | SSW #1 | VK | 826 | A Nep Spar | 6 | BLKO | Out of Service | G25481 | G15441 | |
| 14907 | Fieldwood Energy, LLC | VK | 962 | SSW#1 | VK | 826 | A | 10 | CSNG | Out of Service | G25481 | G15441 | |

WEIL:\97879237\2\45327.0005

## Abandoned Properties RUE

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|
| EI | 63 | A | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | EI 63 002,003, EI 62 and 005, 006, 008, 009, 010 and 011 |
| EI | 63 | B | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | Production from EI 63 A |
| EI | 63 | C-QTR | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | Production from EI 63 A |
| SM | 146 | B | 1663 | G30248 | G09546 | Fieldwood Energy Offshore LLC | 08/21/13 | SM 139 B001 & B002 |
| SM | 147 | A | 23389 | G30200 | G06693 | Fieldwood Energy Offshore LLC | 09/12/13 | SM 139 B001, B002 & B002D |
| WD | 86 | A | 22593 | G30173 | G04243 | Fieldwood Energy Offshore LLC | 06/20/13 | WD 86 B001, B002 & B005 |
| VK | 826 | A-Neptune Spar | 24235 | G30353 | G15441 | Fieldwood Energy LLC | 07/03/18 | VK 917 SS001 & VK 962 SS001 |

WEIL:\97879237\2\45327.0005

**Exhibit F**
**Plan Release Provisions**

**Definitions:**

   *Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (l) the Exit Facility Agents, (m) the Exit Facility Lenders, (n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (q) with respect to each of the foregoing Persons in clauses (a) through (p) each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

   *Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (k) the Exit Facility Agents, (l) the Exit Facility Lenders, (m) the Second Lien Backstop Parties, (n) the ERO Backstop Parties, (o) the Apache PSA Parties, and (p) with respect to each of the foregoing Persons in clauses (a) through (o), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

**Releasing Parties** means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**Provisions:**

### 10.6 *Plan Injunction.*

(a)     Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

### 10.7 *Releases.*

(a) **RELEASES BY THE DEBTORS. AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE**

DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "__DEBTOR RELEASES__"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b)     __RELEASES BY HOLDERS OF CLAIMS AND INTERESTS__. AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENT, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF

THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT THE RELEASING PARTIES OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENT, THE DECOMMISSIONING AGREEMENTS OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD,

VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

(c)     *Release of Liens*.  Except as otherwise specifically provided in the Plan (including all Liens securing the FLFO Claims or the First Lien Exit Facility) or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Secured Parties, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

10.8    *Exculpation.*

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY

COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENT, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

### 10.9    *INJUNCTION RELATED TO RELEASES AND EXCULPATION.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released

pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Exhibit G**
**Credit Bid Purchase Agreement**

# PURCHASE AND SALE AGREEMENT

## AMONG

## FIELDWOOD ENERGY LLC

## AND

## ITS AFFILIATES SIGNATORY HERETO

## AS SELLERS

## AND

## [_____]

## AS BUYER

## DATED

## [_____] [____], 2021

[DISCLAIMER: This is a proposed form purchase agreement only, and not an offer that can be accepted. Until the authorized representatives of the Sellers and Buyer agree to and execute a definitive agreement, neither the Sellers nor Buyer has any obligation (legal or otherwise) to conclude a transaction. Unless included in a definitive agreement, communications (written or oral) shall not create any obligations whatsoever on the Sellers or Buyer and no person, including any recipient of this proposed form, may rely on them as the basis for taking or foregoing any action or opportunity or for incurring any costs. Further, this proposed form purchase agreement may be amended and/or modified in its entirety to provide for the 363 Credit Bid Transaction in the circumstances contemplated by, and subject to any consents required by, Section 5.2(c) of the Plan.]

**TABLE OF CONTENTS**

**Page**

**ARTICLE I**       PURCHASE AND SALE ..............................................................................2
    1.1    Purchase and Sale ............................................................................................2
    1.2    Acquired Interests; Assets ...............................................................................2
    1.3    Excluded Assets ...............................................................................................8
    1.4    Effective Time ................................................................................................10
    1.5    Certain Sellers ...............................................................................................10

**ARTICLE II**      CONSIDERATION ...............................................................................10
    2.1    Consideration .................................................................................................10
    2.2    Allocation of Adjusted Consideration ...........................................................11
    2.3    Consents to Assign .........................................................................................12
    2.4    Governmental Approvals ...............................................................................14
    2.5    Preferential Rights .........................................................................................15
    2.6    [Reserved.] .....................................................................................................17
    2.7    Withholding ....................................................................................................17
    2.8    Assets Sold "As Is, Where Is" ......................................................................17
    2.9    Presence of Wastes, NORM, Hazardous Substances and Asbestos .................18

**ARTICLE III**     DUE DILIGENCE .................................................................................19
    3.1    Due Diligence .................................................................................................19

**ARTICLE IV**      SELLERS' REPRESENTATIONS .......................................................20
    4.1    Organization/Qualification ............................................................................20
    4.2    Power and Authority .......................................................................................20
    4.3    Non-Contravention .........................................................................................20
    4.4    Authorization and Enforceability ...................................................................20
    4.5    Liability for Brokers' Fees .............................................................................21
    4.6    Litigation .........................................................................................................21
    4.7    Governmental Approvals ...............................................................................21
    4.8    Preferential Rights; Applicable Consents ......................................................21
    4.9    Taxes ..............................................................................................................22
    4.10   Well Status ......................................................................................................23
    4.11   Compliance with Laws; Permits ....................................................................23
    4.12   Environmental Matters ...................................................................................23
    4.13   Payments ........................................................................................................24
    4.14   Material Contracts ..........................................................................................24
    4.15   Imbalances; Prepayments ...............................................................................26
    4.16   AFEs; Cash Calls ...........................................................................................26
    4.17   Labor and Employment Matters .....................................................................27
    4.18   Employee Benefits ..........................................................................................28
    4.19   Non-Consent Operations ................................................................................29
    4.20   Suspense Funds ...............................................................................................29
    4.21   Payout Balances .............................................................................................29
    4.22   Title to Acquired Interests ..............................................................................29
    4.23   Insurance ........................................................................................................30
    4.24   Related Party Transactions .............................................................................30
    4.25   Intellectual Property .......................................................................................30

i

# TABLE OF CONTENTS

**(continued)**

| | | |
|---|---|---|
| 4.26 | Undue Influence | 32 |
| 4.27 | No Undisclosed Material Liabilities | 32 |
| 4.28 | Absence of Certain Changes | 33 |
| 4.29 | Equipment and Fixed Assets | 33 |
| 4.30 | Operatorship | 33 |
| 4.31 | Joint Venture | 33 |
| 4.32 | Plan of Merger | 35 |
| 4.33 | Exhibit X-1 | 35 |
| **ARTICLE V** | **BUYERS' REPRESENTATIONS** | 35 |
| 5.1 | Organization; Standing; Capitalization | 35 |
| 5.2 | Power | 36 |
| 5.3 | Non-Contravention | 37 |
| 5.4 | Authorization and Enforceability | 37 |
| 5.5 | Liability for Brokers' Fees | 37 |
| 5.6 | Litigation | 37 |
| 5.7 | Governmental and Third Person Consents | 37 |
| 5.8 | Financial Capability | 38 |
| 5.9 | Qualification | 38 |
| 5.10 | Bankruptcy | 38 |
| 5.11 | Investor Status; Investigation | 38 |
| 5.12 | No Other Representations | 39 |
| **ARTICLE VI** | **COVENANTS AND AGREEMENTS** | 39 |
| 6.1 | Covenants and Agreements of the Sellers | 39 |
| 6.2 | Casualty Event | 43 |
| 6.3 | Press Releases | 43 |
| 6.4 | Solicitation; Other Offers | 43 |
| 6.5 | Regulatory Matters; Cooperation | 44 |
| 6.6 | Bankruptcy Court Matters | 45 |
| 6.7 | Assumption and Assignment of Contracts | 47 |
| 6.8 | Employee Matters | 49 |
| 6.9 | [Reserved] | 52 |
| 6.10 | Certain Agreements | 52 |
| 6.11 | Transfer Orders; Letters in Lieu | 52 |
| 6.12 | Taxes | 52 |
| 6.13 | Commercially Reasonable Efforts | 53 |
| 6.14 | Insurance Policies | 53 |
| 6.15 | Novation of Hedges | 54 |
| 6.16 | Qualification | 54 |
| 6.17 | Settlements with Governmental Authorities | 54 |
| 6.18 | Operator Forms | 54 |
| 6.19 | [Reserved] | 54 |
| 6.20 | Bonds and Insurance | 54 |

# TABLE OF CONTENTS

**(continued)**

| | | |
|---|---|---|
| 6.21 | [New Equity Interests | 55 |
| 6.22 | Employment Agreements | 55 |

**ARTICLE VII** CONDITIONS PRECEDENT TO CLOSING .................. 55
| | | |
|---|---|---|
| 7.1 | Conditions Precedent of the Parties | 55 |
| 7.2 | Sellers' Conditions Precedent | 56 |
| 7.3 | Buyers' Conditions Precedent | 56 |

**ARTICLE VIII** RIGHT OF TERMINATION AND ABANDONMENT ......... 58
| | | |
|---|---|---|
| 8.1 | Termination | 58 |
| 8.2 | Remedies | 61 |
| 8.3 | Specific Performance | 61 |

**ARTICLE IX** CLOSING ................................................ 61
| | | |
|---|---|---|
| 9.1 | Date of Closing | 61 |
| 9.2 | Closing Obligations | 61 |

**ARTICLE X** POST-CLOSING OBLIGATIONS AND COVENANTS ......... 62
| | | |
|---|---|---|
| 10.1 | Field Data and Records | 62 |
| 10.2 | Suspense Funds; Prepaid JOA Funds | 62 |
| 10.3 | Post-Closing Asset Reconciliation | 63 |
| 10.4 | Assignments; Operatorship | 64 |
| 10.5 | Confidentiality | 65 |
| 10.6 | Seller Marks License | 66 |
| 10.7 | Power of Attorney | 66 |
| 10.8 | No Successor Liability | 66 |
| 10.9 | Access to Records | 66 |
| 10.10 | Payment of Assumed Liabilities | 67 |
| 10.11 | Payment of Retained Liabilities | 67 |
| 10.12 | Accounts Receivables | 67 |
| 10.13 | Directors' and Officers' Indemnification | 69 |
| 10.14 | Rights of Use | 71 |
| 10.15 | Post-Closing Agreements | 71 |
| 10.16 | Effective Date Payments | 71 |

**ARTICLE XI** ASSUMPTION AND RETENTION OF LIABILITIES ........ 71
| | | |
|---|---|---|
| 11.1 | Buyer's Assumption of Liabilities | 71 |
| 11.2 | Sellers' Retention of Liabilities | 73 |
| 11.3 | Reservation as to Third Persons | 75 |

**ARTICLE XII** MISCELLANEOUS ...................................... 75
| | | |
|---|---|---|
| 12.1 | Expenses | 75 |
| 12.2 | Notices | 75 |
| 12.3 | Amendments | 76 |

# TABLE OF CONTENTS

## (continued)

| | | |
|---|---|---|
| 12.4 | Waiver | 76 |
| 12.5 | No Third-Party Beneficiaries | 76 |
| 12.6 | Assignment | 77 |
| 12.7 | Counterparts | 77 |
| 12.8 | Governing Law; Jurisdiction; Venue; Jury Trial | 77 |
| 12.9 | Entire Agreement | 78 |
| 12.10 | Binding Effect | 78 |
| 12.11 | Time of the Essence | 78 |
| 12.12 | No Partnership; No Fiduciary Duty | 78 |
| 12.13 | Obligations of the Sellers | 78 |
| 12.14 | No Recourse | 78 |
| 12.15 | Disclosure Schedules | 79 |
| 12.16 | Other Contract Interpretation | 79 |
| **ARTICLE XIII** | **SURVIVAL AND INDEMNIFICATION** | 80 |
| 13.1 | Survival; Limited Recourse Against Sellers | 80 |
| 13.2 | Indemnification by Buyer | 82 |
| 13.3 | Indemnification Procedures | 82 |
| Annex I | Definitions | |

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

# EXHIBIT LIST[1]

| Exhibit | Title |
|---|---|
| EXHIBIT A | Leases |
| EXHIBIT B | Easements |
| EXHIBIT C | Scheduled Wells |
| EXHIBIT D | Platforms and Facilities |
| EXHIBIT D-1 | Inventory |
| EXHIBIT E | Permits |
| EXHIBIT F | Seismic Data |
| EXHIBIT G | Form of Assignment, Bill of Sale and Conveyance for Co-Owned Assets |
| EXHIBIT H | Form of Assignment, Bill of Sale and Conveyance for Other Assets |
| EXHIBIT I | Form of Assignment and Assumption Agreement |
| EXHIBIT J | Form of Assignment of Leases and Subleases |
| EXHIBIT K | Form of Office Assets Conveyance |
| EXHIBIT L | [Reserved] |
| EXHIBIT M | [Reserved] |
| EXHIBIT N | [Reserved] |
| EXHIBIT O | [Reserved] |
| EXHIBIT P | Form of Transition Services Agreement |
| EXHIBIT Q | Form of SEMS Bridging Agreement |
| EXHIBIT R | Form of ST 308 Performance Bond |
| EXHIBIT S | Form of Release Document |
| EXHIBIT T | Form of Farmout Agreement |
| EXHIBIT U | [Reserved] |
| EXHIBIT V | [Reserved] |
| EXHIBIT W | Form of Funding Agreement |
| EXHIBIT X | Working Capital |
| EXHIBIT X-1 | Working Capital Estimate |
| EXHIBIT Y | Specified Oil and Gas Interests |

---

[1] Note to Draft: Exhibits are subject to ongoing review and comment by Buyer and are subject to change in all respects.

v

| Exhibit | Title |
|---------|-------|
| EXHIBIT Z | Specified P&A Equipment |

## SCHEDULE LIST

| Schedule | Title |
|----------|-------|
| Schedule 1.2 | Applicable Shared Asset Interests |
| Schedule 1.3(d) | Scheduled Exclusions |
| Schedule 4.6 | Litigation |
| Schedule 4.7 | Governmental Approvals |
| Schedule 4.8(a) | Preferential Rights |
| Schedule 4.8(b) | Applicable Consents |
| Schedule 4.9 | Taxes |
| Schedule 4.9(p) | Entity Classifications |
| Schedule 4.12 | Environmental Matters |
| Schedule 4.13 | Payments |
| Schedule 4.14 | Material Contracts |
| Schedule 4.14(c) | Leases and Easements |
| Schedule 4.15 | Imbalances |
| Schedule 4.16(a) | AFEs |
| Schedule 4.16(b) | Cash Calls |
| Schedule 4.18 | Employee Benefits |
| Schedule 4.19 | Non-Consent Operations |
| Schedule 4.20 | Suspense Funds |
| Schedule 4.21 | Payout Balances |
| Schedule 4.22 | Title Matters |
| Schedule 4.22(d) | Owned Real Property |
| Schedule 4.23 | Insurance |
| Schedule 4.24 | Related Party Transactions |
| Schedule 4.25(a) | Owned Intellectual Property |
| Schedule 4.27 | Material Liabilities |
| Schedule 4.28(b) | Absence of Certain Changes |

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

| Schedule | Title |
|---|---|
| Schedule 4.31(c) | Equity Interests of Fieldwood Mexico and Subsidiaries |
| Schedule 4.31(d) | Fieldwood U.A. Interests |
| Schedule 4.31(f) | Fieldwood U.A. Liabilities |
| Schedule 5.1(c) | Buyer Grandparent Equity Interests |
| Schedule 5.7 | Buyer Governmental and Third Person Consents |
| Schedule 5.9 | Lease Bonds, Area-Wide Bonds, Surety Bonds and Insurance Policies |
| Schedule 6.1(a) | Sellers' Required Operations |
| Schedule 6.1(b) | Sellers' Disallowed Operations |
| Schedule 6.7(g) | Required Assigned 365 Contracts |
| Schedule 6.22 | Seller Employees |
| Schedule 7.3(i) | Required Novations |
| Schedule 7.3(l) | Required Governmental Approvals |
| Schedule 10.13(a) | Existing D&O Indemnification Terms |
| Schedule 10.13(e) | D&O Indemnified Parties |
| Schedule 10.14 | Right of Use Easements (RUEs) |

[End of Table of Contents]

# PURCHASE AND SALE AGREEMENT[2]

This Purchase and Sale Agreement (this "***Agreement***") is made as of [_____] [____], 2021 (the "***Execution Date***") by and among (a) Fieldwood Energy LLC, a Delaware limited liability company ("***Fieldwood***"), Fieldwood Energy Inc., a Delaware corporation, Dynamic Offshore Resources NS, LLC, a Texas limited liability company, Fieldwood Energy Offshore LLC, a Delaware limited liability company, Fieldwood Onshore LLC, a Delaware limited liability company, Fieldwood SD Offshore LLC, a Delaware limited liability company, Fieldwood Offshore LLC, a Delaware limited liability company, Bandon Oil and Gas GP, LLC, a Delaware limited liability company, Bandon Oil and Gas, LP, a Delaware limited partnership, Fieldwood Energy SP LLC, a Louisiana limited liability company, Galveston Bay Pipeline LLC, a Delaware limited liability company, and Galveston Bay Processing LLC, a Delaware limited liability company, (b) subject to Section 1.5, FW GOM Pipeline, Inc., a Delaware corporation ("***FW GOM Pipeline***"), and GOM Shelf LLC, a Delaware limited liability company ("***GOM Shelf***" and each of the other entities specified in clauses (a) and (b), a "***Seller***" and collectively the "***Sellers***"), and (c) [_____], a [Delaware limited liability company] ("***Buyer***"), and [_____], [a Delaware limited liability company and a wholly-owned subsidiary of Buyer] ("***Buyer 2***"). The Sellers, Buyer and Buyer 2 may be referred to individually as a "***Party***" or collectively as the "***Parties***." Capitalized terms used in this Agreement have the meanings referenced in **Annex I** to this Agreement.

## RECITALS

A.     The Sellers desire to sell, and Buyer desires to purchase, all of the Acquired Interests on the terms and subject to the conditions set forth below.

B.     On August 3, 2020 and August 4, 2020, the Sellers (collectively, the "***Debtors***") filed voluntary petitions (the "***Bankruptcy Cases***") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended from time to time, the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***").

C.     [Buyer has provided to the Sellers at or prior to the execution of this Agreement a copy of a fully executed and effective direction letter (the "***Direction Letter***") causing to be delivered at Closing such portion of the **[Obligations]** (as defined in the Credit Agreement) as is necessary to allow for payment of the Credit Bid and Release.][3]

D.     Pursuant to the Plan, and as consideration for the transactions contemplated by the Direction Letter, each holder of Allowed FLTL Secured Claims (as defined in the Plan) will receive its pro rata portion (as determined pursuant to the Plan and the Confirmation Order) of (a) on the Effective Date, the Credit Bid and Release New Equity Interests and (b) if and when issuable

---

[2] Note to Draft: Subject to review by Administrative Agent.

[3] Note to Draft: Subject to review by Administrative Agent.

1

pursuant to the Plan, Confirmation Order, or any other order entered by the Bankruptcy Court, the Credit Bid and Release Rights.

E.     Upon the terms and subject to the conditions set forth herein, the Parties intend to effectuate the transactions contemplated by this Agreement through a sale of the Acquired Interests pursuant to Sections 105, 363, 365, 1123(a)(5)(D), 1129, 1141 and 1146 of the Bankruptcy Code, and Rules 4001, 6004, 6006 and 3020 of the Federal Rules of Bankruptcy Procedure of the Bankruptcy Code (as amended from time to time, the "***Bankruptcy Rules***").

F.     The execution and delivery of this Agreement and the Sellers' ability to consummate the transactions contemplated by this Agreement are subject to, among other things, the Bankruptcy Court's entry of the Confirmation Order.

**AGREEMENT**

In consideration of the recitals above, the provisions below and other good and valuable cause and consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer, Buyer 2 and the Sellers agree as follows:

**ARTICLE I**
**PURCHASE AND SALE**

1.1     <u>Purchase and Sale</u>.     Subject to the provisions hereof and the entry of the Confirmation Order, Buyer agrees to purchase and accept from the Sellers and the Sellers agree to sell, assign, convey, transfer and deliver, or cause to be sold, assigned conveyed, transferred and delivered to Buyer at the Closing, the Acquired Interests free and clear of any and all Encumbrances (other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances)); *provided* that Buyer and Buyer 2 may determine in their sole discretion that certain Fieldwood U.A. Interests and certain JV Interests may be acquired by Buyer 2 instead of by Buyer, in which case all references hereto to Buyer with respect to such Fieldwood U.A. Interests or JV Interests shall be understood to be to Buyer 2 instead of Buyer.

1.2     <u>Acquired Interests; Assets</u>.     As used herein, the term "***Acquired Interests***" refers to (x) all of each Seller's right, title and interest in, to, under or derived from the Co-Owned Assets excluding the FWE I Assets and the GOM Shelf Oil and Gas Properties other than the Applicable Shared Asset Interests (which Applicable Shared Asset Interests shall be "Co-Owned Assets") and (y) all of each Seller's right, title and interest in, to, under or derived from the Other Assets. As used herein, the term "***Assets***" means the Co-Owned Assets and Other Assets, wherever located, real, personal or mixed, tangible or intangible, known or unknown, as the same shall exist as of the Closing. As used herein, the term "***Co-Owned Assets***" means the following (*provided*, that (subject to the following provisos) Buyer may, from time to time prior to the Designation Deadline, subject to obtaining the Sellers' prior written consent (in the Sellers' sole discretion (it being understood that Buyer shall not add to or remove from the "Co-Owned Assets" any FWE I Asset or GOM Shelf Oil and Gas Properties provided that the foregoing shall not prevent the addition or removal of Applicable Shared Asset Interests as appropriate (which may be added or removed with the Sellers' prior written consent))), add any assets to or remove any assets from the "Co-Owned

2

Assets" (and, in the event an asset is added or removed, to the extent applicable, add, modify or remove any related Liabilities to or from the "Assumed Liabilities") and any affected Exhibit or Schedule (including **Schedule 1.3(d)**) will be updated accordingly, and if Buyer removes any asset from the "Co-Owned Assets" Buyer shall indemnify the Sellers with respect to any Liability incurred by the Sellers as a result of the removal by Buyer of any Co-Owned Asset and the retention by the Sellers of such "Co-Owned Asset"; *provided, further,* that (notwithstanding anything to the contrary in this Section 1.2), Buyer may not remove any assets from the "Co-Owned Assets" after the Designation Deadline):

(a)    the oil and gas leases (and other agreements) described in **Part 1** of **Exhibit A**, but excluding the FWE I Assets and the GOM Shelf Oil and Gas Properties (collectively, the "***Co-Owned Leases***"), including all Working Interests, Net Revenue Interests, royalty interests, overriding royalty interests, production payments, net profits interests, carried interests, reversionary interests (including rights under non-consent provisions), possibilities of reverter, conversion rights and options, fee mineral interests and other interests of every kind and character in, to, under or derived from any Co-Owned Lease or any land subject to, covered by or included within any Co-Owned Lease (except that, solely as to each of lease OCS-00786 covering South Marsh Island 48 and lease OCS-G 1609 covering South Pass 61, the interests in such lease to be conveyed hereunder are solely the overriding royalty interests held by the Sellers in such lease);

(b)    (i) each Unit that includes any of the lands covered by or subject to any Co-Owned Lease (each, a "***Co-Owned Subject Unit***"), (ii) each pooling, unitization or communitization declaration, designation, agreement or order creating or modifying any Co-Owned Subject Unit (each, a "***Co-Owned Subject Unit Agreement***") and (iii) the oil and gas leases and lands subject to, covered by or included within each Co-Owned Subject Unit;

(c)    all servitudes, rights of way, easements, surface leases, subsurface agreements and similar rights and agreements related to or held for use in connection with (in each case, whether or not located on) any land subject to or covered by any Co-Owned Lease or Co-Owned Subject Unit (collectively, the "***Co-Owned Easements***"), including those described in **Part 1** of **Exhibit B**;

(d)    all wells (whether producing, not producing, shut-in, temporarily abandoned, injection, disposal or otherwise) owned or operated in connection with any of the Co-Owned Leases or Co-Owned Subject Units, whether or not such well is located on any land subject to or covered by any Co-Owned Lease or Co-Owned Subject Unit (collectively, the "***Co-Owned Wells***"), including those described in **Part 1** of **Exhibit C** (such wells, the "***Co-Owned Scheduled Wells***");

(e)    all equipment, machinery, structures, fixtures, inventory, vehicles, rolling stock, improvements and other movable property related to, used or held for use in connection with or held as inventory in connection with (in each case, whether or not located on) any Co-Owned Lease, Co-Owned Subject Unit, Co-Owned Easement, lands covered by or subject to any Co-Owned Lease, Co-Owned Subject Unit or Co-Owned Easement or Co-Owned Well (including well equipment; casing; rods; tanks and tank batteries; boilers; tubing; pumps; pumping units and engines; Christmas trees; production facilities; dehydration units and facilities; heater-treaters; compressors; testing and sampling equipment; sulfur recovery units and facilities; valves; gauges;

3

supervisory control and data acquisition (SCADA) systems, equipment and related software; meters and other measurement equipment; flow lines; pipelines; gathering systems; processing systems or facilities; umbilicals; caissons; water systems (whether for source water, treatment, disposal, injection or otherwise); the platforms and facilities listed in **Part 1** of <u>**Exhibit D**</u>; and all additions and accessions to, substitutions for and replacements of any of the foregoing, together with all attachments, components, parts, equipment, supplies, pipes, tools, casing, tubing, tubulars, fittings and accessories in connection with any of the foregoing), including the foregoing listed in **Part 1** of <u>**Exhibit D-1**</u> (collectively, the "***Co-Owned Inventory***");

(f)     (i) all oil, gas, minerals, condensate, distillate, natural gasoline, natural gas liquids, plant products and other liquid or gaseous hydrocarbons and all other substances produced with any of the foregoing hydrocarbons (collectively, "***Hydrocarbons***") (A) that are produced on, or the right to explore for which, or an interest in which, is granted pursuant to, any Co-Owned Lease, Co-Owned Subject Unit or Co-Owned Subject Unit Agreement or (B) that are located in any Co-Owned Inventory; and (ii) all proceeds from the sale of any such Hydrocarbons;

(g)     all Permits (and pending applications therefor) that pertain or relate in any way to any of the Co-Owned Field Assets, including the Permits listed in **Part 1** of <u>**Exhibit E**</u>, to the extent assignable by the Sellers to Buyer or Buyer 2, and subject to <u>Section 6.7</u>, all Co-Owned Assigned Contracts;

(h)     all rights (including intangible and inchoate rights), Claims, rights of set-off, rights under warranties and indemnities made by prior owners, manufacturers, vendors and Third Persons or accruing under applicable statutes of limitation or prescription, insofar only as the foregoing relate or are attributable to any of the other Co-Owned Assets or to any Assumed Liabilities, including any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the Co-Owned Assets;

(i)     to the extent transferable by the Sellers to Buyer at Closing without payment of a fee or other penalty to any Third Party pursuant to any Contract (unless Buyer has, prior to the Closing, separately agreed in writing to pay such fee or penalty), all seismic data (conventional, three dimensional or otherwise; whether owned or licensed; and including original field tapes) (including all such data relating to those licenses and agreements listed in **Part 1** of <u>**Exhibit F**</u>), log cores, geological, reserve engineering and other scientific and technical information, samples, tests, reports, maps and data that relate to any of the Co-Owned Field Assets or any land on which any Co-Owned Field Asset is located (collectively, the "***Co-Owned Field Data***");

(j)     all files, records (including reservoir, production, operation, contract, land and title records; drawings, maps, plats and surveys; abstracts of title, title insurance policies, title opinions and title curative; lease, prospect, contract, division order, marketing, correspondence, operations, environmental, production, processing, accounting, Property-Related Tax, Production Tax, Transfer Tax, regulatory compliance, facility and well records and files; supplier lists and files; customer lists and files; and reports to any Governmental Authority), databases, data and other information (in each case, whether in written or electronic format) that relate to any of the other Co-Owned Assets (collectively, the "***Co-Owned Records***");

(k)     [reserved];

4

(l)    all raw materials, work-in-process, finished goods, supplies and other inventories related to, used or held for use in connection with (in each case, whether or not located on) any Co-Owned Lease, Co-Owned Subject Unit, Co-Owned Easement or Co-Owned Well;

(m)    all goodwill associated with any Co-Owned Asset; and

(n)    all credits or other rights to prepaid expenses, deposits, advances, prepayments, excess or unearned premiums, costs, and other refunds attributable to any Co-Owned Assets (excluding Excluded Prepaid JOA Funds).

As used herein, the term "***Other Assets***" means the assets described in clauses (o) through (qq) below; *provided*, that, from time to time prior to the Designation Deadline, Buyer may, in its sole discretion (subject to the following provisos), (x) add any assets to the "Other Assets" or (y) remove any Other Assets from the "Other Assets" (other than (1) to add any Co-Owned Assets to, or to remove any Co-Owned Assets from, the Other Assets or (2) the assets or items set forth in clauses (z), (dd), (ff), (hh), (nn) or (oo) of this <u>Section 1.2</u>), and, in the event an asset is added or removed, to the extent applicable, add, modify or remove any related Liabilities to or from the "Assumed Liabilities" (and any affected Exhibit or Schedule (including **<u>Schedule 1.3(d)</u>**) will be updated accordingly); *provided*, *however*, that Buyer may not add or remove any FWE I Asset or GOM Shelf Oil and Gas Property; *provided, further,* that (notwithstanding anything to the contrary in this <u>Section 1.2</u>), Buyer may not remove any assets from the "Other Assets" after the Designation Deadline; and, *provided*, *further*, that Buyer may not (i) remove any assets from the "Other Assets" unless Buyer has agreed in writing to indemnify Sellers with respect to any Liability incurred by any Seller as a result of the retention by Sellers of such "Other Asset" or (ii) add any assets to the Other Assets if such addition would require a Governmental Approval (except for those which are obtained post Closing) that would reasonably be expected to materially delay the Closing); *provided, further* that Buyer may remove any such asset if Buyer increases the Cash Portion to include the amount of such Liability.

(o)    the oil and gas leases (and other agreements) described in **Part 2** of **<u>Exhibit A</u>** (collectively, the "***Other Leases***"), including all Working Interests, Net Revenue Interests, royalty interests, overriding royalty interests, production payments, net profits interests, carried interests, reversionary interests (including rights under non-consent provisions), possibilities of reverter, conversion rights and options, fee mineral interests and other interests of every kind and character in, to, under or derived from any Other Lease or any land subject to, covered by or included within any Other Lease (except that, (x) solely as to lease OCS-G 12210 covering Green Canyon 201, the interests in such lease to be conveyed hereunder exclude any record title or operating rights in the NE1/4 of Block 201, Green Canyon, (y) solely as to lease OCS-G 10794 covering Ship Shoal 301, Fieldwood's overriding royalty interest in such lease is not to be conveyed hereunder; and (z) solely as to each of OCS-G 1449 covering portions of West Delta 57, 79 and 80, OCS-G 1874 covering portions of West Delta 79 and 80 and OCS-G 1989 and OCS-G 2136 covering portions of West Delta 80, the interests in such lease to be conveyed hereunder are solely the overriding royalty interests held by the Sellers in such lease);

(p)    (i) each Unit that includes any land covered by or subject to any Other Lease (each, a "***Other Subject Unit***"), (ii) each pooling, unitization or communitization declaration, designation, agreement or order creating or modifying any Other Subject Unit (each, a "***Other***

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

***Subject Unit Agreement***") and (iii) the oil and gas leases and lands subject to, covered by or included within each Other Subject Unit;

(q)     all servitudes, rights of way, easements, surface leases, subsurface agreements and similar rights and agreements located on (or related to or held for use in connection with (in each case, whether or not located on)) any land subject to or covered by any Other Lease or Other Subject Unit (collectively, the "***Other Easements***"), including those described in **Part 2** of **Exhibit B**;

(r)     all wells (whether producing, not producing, shut-in, temporarily abandoned, injection, disposal or otherwise) owned or operated in connection with any Other Lease or Other Subject Unit, whether or not such well is located on any land subject to or covered by any Other Lease or Other Subject Unit (collectively, the "***Other Wells***"), including those described in **Part 2** of **Exhibit C** (such wells, the "***Other Scheduled Wells***");

(s)     all equipment, machinery, structures, fixtures, inventory, vehicles, rolling stock, improvements and other movable property related to, used or held for use in connection with or held as inventory in connection with (in each case, whether or not located on) any Other Lease, Other Subject Unit, Other Easement, lands covered by or subject to any Other Lease, Other Subject Unit or Other Easement or Other Well (including well equipment; casing; rods; tanks and tank batteries; boilers; tubing; pumps; pumping units and engines; Christmas trees; production facilities; dehydration units and facilities; heater-treaters; compressors; testing and sampling equipment; sulfur recovery units and facilities; valves; gauges; supervisory control and data acquisition (SCADA) systems, equipment and related software; meters and other measurement equipment; flow lines; pipelines; gathering systems; processing systems or facilities; umbilicals; caissons; water systems (whether for source water, treatment, disposal, injection or otherwise); the platforms and facilities listed in **Part 2** of **Exhibit D**; and all additions and accessions to, substitutions for and replacements of any of the foregoing, together with all attachments, components, parts, equipment, supplies, pipes, tools, casing, tubing, tubulars, fittings and accessories in connection with any of the foregoing), including the foregoing listed in **Part 2** of **Exhibit D-1** (collectively, the "***Other Inventory***");

(t)     (i) all Hydrocarbons (A) that are produced on, or the right to explore for which, or an interest in which, is granted pursuant to, any Other Lease, Other Subject Unit or Other Subject Unit Agreement or (B) that are located in any Other Inventory; and (ii) all proceeds from the sale of any such Hydrocarbons;

(u)     all Permits (and pending applications therefor) that pertain or relate in any way to any of the Other Field Assets, including the Permits listed in **Part 2** of **Exhibit E**, to the extent assignable by the Sellers to Buyer or Buyer 2;

(v)     all rights (including intangible and inchoate rights), Claims, rights of set-off, rights under warranties and indemnities made by prior owners, manufacturers, vendors and Third Persons or accruing under applicable statutes of limitation or prescription, insofar only as the foregoing relate or are attributable to any of the Other Assets, including any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the Other Assets;

6

(w)        to the extent transferable by the Sellers to Buyer at Closing without payment of a fee or other penalty to any Third Party pursuant to any Contract (unless Buyer has, prior to the Closing, separately agreed in writing to pay such fee or penalty), (i) all seismic data (conventional, three dimensional or otherwise; whether owned or licensed; and including original field tapes) (including all such data relating to those licenses and agreements listed in **Part 2** of **Exhibit F**), log cores, geological, reserve engineering and other scientific and technical information, samples, tests, reports, maps and data that relate to any of the Other Field Assets or any land on which any Other Field Asset is located and (ii) copies of all proprietary seismic data (conventional, three dimensional or otherwise), log cores, geological, reserve engineering and other scientific and technical information, samples, tests, reports, maps and data that relate to any of the FWE I Oil and Gas Properties or any land on which any FWE I Oil and Gas Property is located (collectively, the "***Other Field Data***");

(x)        all files, records (including reservoir, production, operation, contract, land and title records; drawings, maps, plats and surveys; abstracts of title, title insurance policies, title opinions and title curative; lease, prospect, contract, division order, marketing, correspondence, operations, environmental, production, processing, accounting, Property-Related Tax, Production Tax, Transfer Tax, regulatory compliance, facility and well records and files; supplier lists and files; customer lists and files; and reports to any Governmental Authority), databases, data and other information (in each case, whether in written or electronic format) that relate to any of the Other Assets (collectively, the "***Other Records***");

(y)        subject to Section 6.7, all of the Other Assigned Contracts;

(z)        all Working Capital Assets;

(aa)        all of the Sellers' rights, title and interest as borrowers under the Prepetition FLFO Credit Agreement (as defined in the Plan) as modified to the extent set forth in the First Lien Exit Facility Documents (as defined in the Plan);

(bb)        all raw materials, work-in-process, finished goods, supplies and other inventories located on (or related to, used or held for use in connection with (in each case, whether or not located on)) any Other Lease, Other Subject Unit, Other Easement or Other Well;

(cc)        all goodwill associated with the Other Assets;

(dd)        the Office Sublease, the Lafayette Lease Agreement, the Warehouse Lease and the Lubrizol Sublease and, in each case, the premises demised thereunder, all fixtures and appurtenances thereto, and all furniture and other personal (movable) property located therein (collectively, the "***Office Assets***");

(ee)        all credits or other rights to prepaid expenses, deposits, advances, prepayments, excess or unearned premiums, costs, and other refunds attributable to the Other Assets;

(ff)        all (i) Suspense Funds and Undisbursed Revenue related to the Acquired Interests and (ii) Prepaid JOA Funds;

(gg)     all futures, options, swaps and other derivatives with respect to the sale of Hydrocarbons described in clauses (f) or (t) of this Section 1.2 and novated to Buyer pursuant to Section 6.15 (the "***Hedges***");

(hh)     all assets relating to the Assumed Employee Plans (to the extent funded);

(ii)     all of the Sellers' economic analyses and pricing forecasts relating to any of the Assets;

(jj)     all Transferred Intellectual Property;

(kk)     all Seller IT Assets;

(ll)     all Tax refunds other than those described in Section 1.3(f);

(mm)     all collateral securing any bond provided for any of the Assets;

(nn)     all memberships (*lidmaatschap*), including all membership rights (*lidmaatschapsrechten*) of Fieldwood U.A. held by any Seller (the "***Fieldwood U.A. Interests***") and all shares in the capital of Fieldwood Mexico and any of its Subsidiaries (Fieldwood Mexico and its Subsidiaries, collectively, the "***Mexico JV***") held by any Seller (the "***JV Interests***"), and all rights, interests and title in and to such Seller's equity ownership of, and all present and future rights of such Seller as an equity holder of, Fieldwood U.A. or the Mexico JV, as applicable, both actual and contingent, including all distributions of profits, dividends, distribution of reserves, repayments of capital, liquidation or dissolution proceeds and all other distributions, payments and repayments in respect of such equity ownership and any right to receive the same, and all other rights in respect of such equity ownership under or pursuant to the organizational documents of and any equity holders' agreement in respect of Fieldwood U.A. or the Mexico JV, as applicable;

(oo)     the Specified P&A Equipment;

(pp)     all proceeds recovered under the Tail Policy, but only with respect to reimbursement of D&O Indemnified Liabilities actually paid by Buyer pursuant to Section 10.12; and

(qq)     all rights, claims, demands and causes of action of the Sellers relating to the Acquired Interests or the Assumed Liabilities; *provided* that this clause (qq) shall not apply with respect to or in connection with Taxes or Tax refunds.

1.3     Excluded Assets.  The Assets and Acquired Interests do not include, and there is hereby expressly excepted and excluded therefrom and reserved to the Sellers, all assets and properties of each Seller and its Affiliates that are not described or otherwise identified as Acquired Interests in Section 1.2, including the following assets and properties (the "***Excluded Assets***"):

(a)     all corporate, financial, legal (other than title opinions) and tax records of the Sellers, but excluding Records;

(b)     other than (i) the Fieldwood U.A. Interests and the shares of capital stock or equity interests of any Person held, directly or indirectly, by Fieldwood U.A. and (ii) the JV Interests and the shares of capital stock or equity interests of any Person held, directly or indirectly, by Fieldwood Mexico and its Subsidiaries, any shares of capital stock or other equity interest held by the Sellers in any other Person;

(c)     all BOEM operator numbers;

(d)     all of the Sellers' right, title and interest in and to those interests, rights, properties and assets more particularly described on **Schedule 1.3(d)** as such Schedule may be amended in accordance with Section 2.6;

(e)     all of the Sellers' right, title and interest in, to and under any of the FWE I Assets, other than any Applicable Shared Asset Interests added to the Co-Owned Assets or Other Assets by Buyer pursuant to the terms of Section 1.2;

(f)     all Tax refunds attributable to the Retained Liabilities;

(g)     all Excluded Contracts;

(h)     all assets of any Employee Plan that are not Assumed Employee Plans;

(i)     all Intellectual Property owned or purported to be owned by any Seller (other than Transferred Intellectual Property);

(j)     all insurance policies held by the Sellers;

(k)     all rights, claims, demands and causes of action of the Sellers under this Agreement;

(l)     all cash held in accounts of the Sellers, other than (i) Suspense Funds, (ii) Undisbursed Revenue and (iii) Prepaid JOA Funds;

(m)     any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the FWE I Assets;

(n)     the Specified Excluded Receivables;

(o)     all Avoidance Actions;

(p)     as to each of lease OCS-G 1449 covering portions of West Delta 57, 79 and 80, OCS-G 1874 covering portions of West Delta 79 and 80, OCS-G 1989 and OCS-G 2136 covering portions of West Delta 80, OCS-00786 covering South Marsh Island 48 and lease OCS-G 1609 covering South Pass 61, any interest other than any overriding royalty interests held by the Sellers in such lease;

9

(q)     solely as to lease OCS-G 12210 covering Green Canyon 201 any record title or operating rights (for the avoidance of doubt, not including any overriding royalty interests) in the NE1/4 of Block 201, Green Canyon; and

(r)     solely as to lease OCS-G 10794 covering Ship Shoal 301, Fieldwood's overriding royalty interest in such lease.

1.4     <u>Effective Time</u>.  The purchase and sale of the Acquired Interests shall be effective as of 7:00 am (Central Prevailing Time) on the Closing Date (the "***Effective Time***").

1.5     <u>Certain Sellers</u>.  The Parties agree that each of FW GOM Pipeline and GOM Shelf have executed this Agreement as Sellers solely for the purpose of selling, assigning, conveying, transferring and delivering to Buyer any Acquired Interests held by such entities as of the Closing pursuant to this <u>Article I</u> and the applicable Transfer Documents, and without limiting the applicability of covenants and representations to the closing conditions set forth in <u>Article VII</u> neither FW GOM Pipeline nor GOM Shelf makes, or shall have any obligation or liability with respect to, any other covenant or representation of the Sellers made under this Agreement or any certificate delivered pursuant hereto.  For the avoidance of doubt, neither FW GOM Pipeline or GOM Shelf shall be required or obligated to sell, assign, convey, transfer or deliver to Buyer or Buyer 2 any of the GOM Shelf Oil and Gas Properties.  Notwithstanding anything to the contrary, Fieldwood Energy I, GOM Shelf, and their Subsidiaries shall have no liability under this Agreement or any Ancillary Document (including, without limitation, for breach, misrepresentation, fraud, breach of warranty, or otherwise) or relating to the sale or purchase of the Acquired Interests, the operation or business of the Acquired Interests, or any other transactions contemplated by this Agreement or any Ancillary Document, except for any breach (i) by Fieldwood Energy I of its obligations pursuant to Section 3(b)(i) of the Plan of Merger (as contemplated by <u>Section 10.12(e)</u>) or (ii) by FW GOM Pipeline or GOM Shelf of its obligations pursuant to <u>Sections 9.2</u>, <u>10.2</u>, <u>10.3</u>, <u>10.4</u>, <u>10.5</u>, <u>10.6</u>, <u>10.7</u>, <u>10.9</u> and, in respect of its interest in an asset which is also in part a Co-Owned Asset, <u>10.11</u>.

## ARTICLE II
## CONSIDERATION

2.1     <u>Consideration</u>.

(a)     The aggregate consideration to be paid by Buyer and Buyer 2 to the Sellers with respect to the sale to Buyer and Buyer 2 of the Acquired Interests shall consist of the following (collectively, the "***Consideration***")[4]: (1) a credit bid and equivalent release of the Sellers and any guarantors (and their respective successors and assigns) from a portion of the Claims arising under the Credit Agreement, in an aggregate amount up to the FLTL Claims Allowed Amount (as defined in the Plan) (the "***Credit Bid and Release***"), (2) the Cash Portion, (3) the GUC Warrants (as such

---

[4] <u>Note to Draft</u>: Aggregate Consideration to be at least $1.03 billion, subject to adjustments with consent of the Debtors, the Required DIP Lenders and the Requisite FLTL Lenders (each as defined in the Plan).

term is defined in the Plan) and (4) Buyer's assumption of the Assumed Liabilities (including, for the avoidance of doubt, the Liabilities set forth in Section 11.1(o))[5].

(b)     Prior to the Closing, the Sellers and Buyer shall in good faith endeavor to agree upon the Closing Cash Amount, the Effective Date Cash Obligations and the Effective Date Cash Obligations Amount in accordance with the definitions thereof.

(c)     The Parties hereby agree that, for U.S. federal income tax purposes, the assumption by Buyer of the remaining Allowed FLFO Claims (as such term is defined in the Plan) pursuant to Section 11.1(o) hereof shall be treated as if: (i) Buyer issues a debt instrument to the Sellers ("**Buyer Obligation**") with terms that are identical (with the exception of the obligor) to the terms of the Buyer Parent Debt (defined below) as additional consideration for the Acquired Interests, (ii) the Sellers deliver the Buyer Obligation to holders of Allowed FLFO Claims (as such term is defined in the Plan) (together with the FLFO Distribution Amount (as such term is defined in the Plan)) in satisfaction of their Allowed FLFO Claims (as such term is defined in the Plan), in a transaction that constitutes a "significant modification" within the meaning of Treasury Regulations Section 1.1001-3, and (iii) Buyer Parent issues the First Lien Exit Facility (as such term is defined in the Plan) (the "**Buyer Parent Debt**") to holders of Allowed FLFO Claims (as such term is defined in the Plan) in substitution of the Buyer Obligation, thereby assuming Buyer's obligation with respect to the Buyer Obligation. The parties further agree that (i) the issue price, within the meaning of Section 1273 of the Code, of the Buyer Obligation is equal to the issue price of the Buyer Parent Debt and (ii) the Sellers shall take into account for U.S. federal income tax purposes any cancellation of debt consequences under the Code, resulting from or in connection with (including as a result of the application of Treasury Regulations Section 1.1274-5, if applicable) or arising from the transactions described in this paragraph.

2.2     Allocation of Adjusted Consideration.  The Parties acknowledge and agree that the Credit Bid and Release and the Cash Portion (and the Assumed Liabilities, taking into account Section 2.1(c), and other relevant items, to the extent properly taken into account under the federal income Tax principles as consideration for the Acquired Interests) shall be allocated among the Acquired Interests in accordance with Section 1060 of the Code and the Treasury Regulations thereunder (and any similar provision of state, local or non-U.S. Law, as appropriate). Buyer shall, as promptly as practicable after the Closing Date, but in no case later than one hundred twenty (120) days following the Closing Date, prepare and deliver to the Sellers a proposed allocation as described in the preceding sentence (the "***Initial Allocation***"). The Parties, for a period of no more than ninety (90) days, shall cooperate in good faith to resolve any disagreements the Sellers may have with the Initial Allocation and agree on a final allocation (the "***Final Allocation***"). The Parties agree to file all Tax Returns (including the filing of IRS Form 8594 with their U.S. federal income Tax Return for the taxable year that includes the date of the Closing) consistent with the Final Allocation unless otherwise required by applicable Law.

---

[5] Note to Draft: Sellers to be third party beneficiaries of the Direction Letter, with the right to specifically enforce the Credit Bid and Release.

2.3     Consents to Assign.

(a)     The Sellers shall, within five (5) Business Days after the Execution Date (to the extent not sent prior to the Execution Date), send to the holder of each Applicable Consent with respect to each Lease and any Assigned Contract that is not a 365 Contract (for which notices regarding 365 Contracts are addressed in Section 6.7) a notice seeking such holder's consent to the transactions contemplated hereby or as otherwise sufficient to permit the assignment of such Lease or Assigned Contract to Buyer or Buyer 2, as applicable, pursuant to this Agreement upon entry of the Confirmation Order.  Upon request of Buyer, the Sellers shall promptly provide a reasonable update to Buyer regarding the status of requests for consents made pursuant to this Section 2.3(a).

(b)     If the Sellers fail to obtain an Applicable Consent prior to Closing and (i) with respect to any Lease or Assigned Contract that is not a 365 Contract, (A) the failure to obtain such Applicable Consent would under the express terms thereof cause the assignment of the Acquired Interest affected thereby to Buyer or Buyer 2, as applicable, to be void or voidable, (B) the failure to obtain such Applicable Consent would under the express terms thereof permit the termination of such Lease or Assigned Contract under the express terms thereof upon the purported assignment of such Lease or Assigned Contract to Buyer or Buyer 2, as applicable, pursuant to this Agreement, or (C) the failure to obtain such Applicable Consent would under the express terms thereof permit a party to such Lease or Assigned Contract to impose a financial or other penalty on any Seller, Buyer or Buyer 2 or (ii) with respect to any Lease or Assigned Contract, a party holding such Applicable Consent right has objected to the assignment of the affected Acquired Interest in accordance with the terms of the relevant Applicable Consent right (each Consent as to which clause (i) or (ii) is applicable, a "*Required Consent*"), then, unless the Bankruptcy Court has entered an order approving (or in the case of clause (ii), such objection is resolved to permit) the sale and assignment of the affected Acquired Interest to Buyer or Buyer 2, as applicable, pursuant to this Agreement without obtaining such Required Consent (and without Buyer or Buyer 2 being subject to the consequences set forth in clauses (i)(A) through (i)(C) of the definition of Required Consent as a result of not obtaining such Required Consent), the Acquired Interests (or portions thereof) affected by such un-obtained Required Consent shall be excluded from the Acquired Interests to be assigned to Buyer or Buyer 2 at Closing (and shall be considered Excluded Assets hereunder)  (a "*Delayed Asset*").  In the event that any such Required Consent with respect to any such Delayed Asset (or portion thereof) is obtained during the Post-Closing Consent Period (or if during the Post-Closing Consent Period the Bankruptcy Court enters an order providing that (x) such Required Consent is not required to consummate the sale and assignment of the Delayed Asset to Buyer or Buyer 2, as applicable, pursuant to this Agreement or (y) the Delayed Asset may be sold and assigned to Buyer or Buyer 2, as applicable, pursuant to this Agreement free and clear (as applicable to the sale and assignment of the Delayed Asset to Buyer or Buyer 2, as applicable, pursuant to this Agreement) of such Required Consent) (in each case of clauses (x) and (y) without Buyer or Buyer 2 being subject to the consequences set forth in clauses (i)(A) through (i)(C) of the definition of Required Consent as a result of not obtaining such Required Consent) then, (1) the Sellers shall so notify Buyer, and (2) on or prior to the tenth (10th) Business Day after the date such Required Consent is obtained or such order referred to above is entered, the Sellers shall assign such Delayed Asset (or portions thereof) that were so excluded as a result of such previously un-obtained Required Consent to Buyer or Buyer 2, as applicable, pursuant to an instrument in substantially the same form as the Assignment, Bill of

Sale and Conveyance, or the JV Assignment Agreement (in the case where the Delayed Asset is a Fieldwood U.A. Interest or a JV Interest) (and such Delayed Asset (or portions thereof) shall no longer be considered Excluded Assets hereunder) and Buyer shall assume all Assumed Liabilities with respect thereto.  Notwithstanding anything to the contrary in this Agreement, without limiting any of the rights of Buyer hereunder, including those set forth in <u>Section 7.3</u>, (A) Buyer in its sole discretion may elect for the Sellers not to sell, transfer, convey, assign or deliver such Delayed Assets that is an Other Asset to Buyer, and (B) from and after the Closing, Buyer and the Sellers shall reasonably cooperate in a reasonable arrangement to provide Buyer or Buyer 2, as applicable, with all of the benefits of, or under, each such Delayed Asset, including enforcement (at Buyer's cost) for the benefit of Buyer or Buyer 2, if applicable, of any and all rights of the Sellers against any party with respect to such Delayed Asset arising out of the breach or cancellation with respect to such Delayed Asset by such party; *provided*, *further*, that (i) to the extent that any such arrangement has been made to provide Buyer or Buyer 2, as applicable, with the benefits of, under or with respect to, a Delayed Asset, from and after the Closing, Buyer shall be responsible for, and shall promptly pay and perform all payment and other obligations under such Delayed Asset for the period during which Buyer or Buyer 2, as applicable, is receiving the benefits under the applicable Delayed Asset to the same extent as if such Delayed Asset had been assigned or transferred at the Closing, and (ii) the Sellers shall (or, as to any Delayed Asset that is an Other Asset, at Buyer's request the Sellers shall) sell, transfer, convey, assign and deliver such Delayed Asset to Buyer or Buyer 2, as applicable, promptly after receipt of such Required Consent or the entry of such order referred to above with respect to such Delayed Asset; *provided* that Buyer shall so request such sale, transfer, conveyance, assignment and deliverance promptly after such receipt, unless (1) the retention of such Delayed Asset by the applicable Seller would not result in such Seller retaining an incremental Liability as compared to if such Seller had transferred such Delayed Asset to Buyer (unless Buyer provides an amount in cash to the Sellers equal to the amount of such Liabilities and/or indemnification to the Sellers for any such Liabilities) or (2) the Sellers and Buyer mutually agree not to make such sale, transfer, conveyance, assignment and deliverance of such Delayed Asset; *provided further* that from and after the date that is six (6) months after the Closing, Buyer shall have no obligation to make any such request and may elect for the Sellers to retain such Delayed Asset, in which case such Delayed Asset shall be an Excluded Asset for all purposes under this Agreement and the arrangements described in <u>clause (B)(i)</u> shall terminate.

(c)     If the Sellers fail to obtain a Consent prior to Closing and such Consent (i) is not a Required Consent or (ii) is a Required Consent and prior to Closing the Bankruptcy Court enters an order providing that the affected Acquired Interests may be sold and assigned to Buyer or Buyer 2, as applicable, pursuant to this Agreement free and clear (as applicable to the sale and assignment of the affected Acquired Interests to Buyer pursuant to this Agreement) of such Required Consent (without Buyer or Buyer 2, as applicable, being subject to the consequences set forth in <u>clauses (i)(A)</u> through <u>(i)(C)</u> of the definition of Required Consent as a result of not obtaining such Required Consent), then, in the case of each of <u>clauses (i)</u> and <u>(ii)</u>, the Acquired Interests (or portions thereof) subject to such un-obtained Consent shall nevertheless be assigned by the Sellers to Buyer at Closing as part of the Acquired Interests and Buyer shall be deemed to have assumed any and all Liabilities for the failure to obtain any such Consent as part of the Assumed Liabilities hereunder and Buyer shall have no claim against the Sellers from any Liability for the failure to obtain such Consent.

13

(d)     Prior to Closing and until the 365th day after Closing (the "***Post-Closing Consent Period***"), with respect to any un-obtained Required Consents with respect to which the Bankruptcy Court shall not have entered an order providing that the affected Acquired Interests may be sold and assigned to Buyer or Buyer 2, as applicable, pursuant to this Agreement free and clear (as applicable to the sale and assignment of the affected Acquired Interests to Buyer or Buyer 2, as applicable, pursuant to this Agreement) of such Required Consent (without Buyer or Buyer 2, as applicable, being subject to the consequences set forth in clauses (i)(A) through (i)(C) of the definition of Required Consent as a result of not obtaining such Required Consent), the Sellers shall use their commercially reasonable efforts to obtain such Required Consents, except that such obligation of the Sellers to use their commercially reasonable efforts to obtain Required Consents shall not apply in respect of any Delayed Asset with respect to which Buyer has made the election in accordance with the final sentence of Section 2.3(b).  If Buyer so requests, the Sellers shall be required to make any payments or provide other consideration in order to obtain any such Required Consent (provided that Buyer shall reimburse Sellers for any such payment made after the Closing); *provided, however,* that without the consent of Buyer, the Sellers shall not be required to incur any Liability, pay any money or provide any other consideration in order to obtain any such Consent (other than any Liability or obligation to pay money or provide consideration that has been expressly assumed by Buyer). Buyer shall use its commercially reasonable efforts (without any obligation to incur any Liability, pay money or provide any other consideration) to assist and cooperate with the Sellers in furtherance of the Sellers' efforts pursuant to this Section 2.3(d).

(e)     The Sellers shall be deemed to have obtained all Consents required in respect of the assumption and/or assignment of any Lease or Assigned Contract if (i) the Sellers have properly served under the Bankruptcy Code notice of assumption and/or assignment on the counterparty to such Lease or Assigned Contract, (ii) any objections to assumption and/or assignment of such Lease or Assigned Contracts filed by such counterparty have been withdrawn or overruled (including pursuant to the Confirmation Order or other order of the Bankruptcy Court), and (iii) pursuant to the Confirmation Order or other order of the Bankruptcy Court, the Sellers are authorized to assume and/or assign such Lease or Assigned Contract to Buyer free and clear of such Consents, in each case without Buyer or Buyer 2, as applicable, being subject to the consequences forth in clauses (i)(A) through (i)(C) of the definition of Required Consent as a result of not obtaining such Required Consent.

2.4     Governmental Approvals.     The Sellers and Buyer shall use commercially reasonable efforts to obtain the approval of, or waiver from, each Governmental Authority required, after giving effect to the entry of the Confirmation Order, to permit the assignment of the Acquired Interests to Buyer or Buyer 2, as applicable, pursuant to this Agreement, in accordance with Sections 6.5(b) and (c).  If Buyer so requests, the Sellers shall be required to make any payments or provide any other consideration in order to obtain any Governmental Approval (provided that Buyer shall reimburse Sellers for any such payment made after the Closing); *provided*, *however*, that without the consent of Buyer, the Sellers shall not be required to incur any Liability, pay any money or provide any other consideration in order to obtain any such Governmental Approval (other than any Liability or obligation to pay money or provide consideration that has been expressly assumed by Buyer). If, as of the Closing, any Governmental Approval, other than any Governmental Approval that is required or permitted to be made or obtained after the Closing (and, if permitted, customarily made or obtained after the Closing)

14

(each, an "***Applicable Governmental Approval***"), has not been obtained and, notwithstanding the entry of the Confirmation Order, the failure to have obtained such Applicable Governmental Approval restricts the Sellers' ability to transfer any Acquired Interest to Buyer or Buyer 2, as applicable, at Closing, then, notwithstanding anything to the contrary herein, (x) (A) without limiting any of the rights of Buyer hereunder, including those set forth in <u>Section 7.3</u>, Buyer in its sole discretion may elect for the Sellers not to sell, transfer, convey, assign or deliver such Acquired Interests (which shall be treated as Delayed Assets, *mutatis mutandis*) and (B) from and after the Closing, (i) the Sellers and Buyer shall reasonably cooperate in a reasonable arrangement (to the extent legally permissible) to provide Buyer or Buyer 2, as applicable, with all of the benefits of, or under, such Delayed Asset, including (at Buyer's cost) enforcement for the benefit of Buyer or Buyer 2, as applicable, of any and all rights of the Sellers against any party with respect to such Delayed Asset arising out of the breach or cancellation with respect to such Delayed Asset by such party; *provided*, that to the extent that any such arrangement has been made to provide Buyer or Buyer 2, as applicable, with the benefits of, under or with respect to, a Delayed Asset, from and after the Closing, Buyer shall be responsible for, and shall promptly pay and perform all payment and other obligations under such Delayed Asset for the period during which Buyer or Buyer 2, as applicable, is receiving the benefits under the applicable Delayed Asset to the same extent as if such Delayed Asset had been assigned or transferred at the Closing, (ii) the Sellers and Buyer shall reasonably cooperate with Buyer to obtain such Applicable Governmental Approval, and (iii) subject to the immediately following proviso, the Sellers shall promptly after receipt of the Applicable Governmental Approval with respect to such Delayed Asset, sell, transfer, convey, assign and deliver such Delayed Asset to Buyer or Buyer 2, as applicable, and Buyer or Buyer 2, as applicable, shall accept such conveyance; *provided* that, with respect to any such Delayed Asset that is an Other Asset, Buyer in its sole discretion (subject to the immediately following proviso) may elect for the Sellers not to sell, transfer, convey, assign or deliver such Delayed Asset to Buyer after receipt of the Applicable Governmental Approval; *provided* however that Buyer shall so request such sale, transfer, conveyance, assignment and deliverance promptly after receipt of the Applicable Governmental Approval, unless (1) the retention of such Delayed Asset by the applicable Seller would not result in such Seller retaining any incremental Liabilities as compared to if such Seller had transferred such Delayed Asset to Buyer (unless Buyer provides an amount in cash to the Sellers equal to the amount of such Liabilities and/or indemnification to the Sellers for any such Liabilities) or (2) the Sellers and Buyer mutually agree not to make such sale, transfer, conveyance, assignment and deliverance of such Delayed Asset; *provided further* that from and after the date that is six (6) months after the Closing, Buyer shall have no obligation to make any such request and may elect for the Sellers to retain such Delayed Asset, in which case such Delayed Asset shall be an Excluded Asset for all purposes under this Agreement and the arrangements described under <u>clause (B)(i)</u> shall terminate.

2.5    <u>Preferential Rights</u>.

(a)    The Sellers shall, within five (5) Business Days after the Execution Date (to the extent not sent prior to the Execution Date), send to the holder of each Preferential Right with respect to any Acquired Interest a notice setting forth the information required to satisfy such notice provision for such Preferential Right and requesting a waiver thereof or as otherwise sufficient to permit the assignment of such Acquired Interest to Buyer or Buyer 2, as applicable, pursuant to this Agreement upon entry of the Confirmation Order free and clear of such Preferential Right if such Preferential Right is not validly waived or exercised prior to Closing.

The Sellers and Buyer shall agree in good faith on the holders to whom the notices in the preceding sentence shall be sent. Upon request of Buyer, the Sellers shall promptly provide a reasonable update to Buyer regarding requests for waivers of Preferential Rights made pursuant to this <u>Section 2.5(a)</u>.

(b)     If a bona fide Preferential Right with respect to any Acquired Interest is validly exercised prior to the Closing, such Acquired Interest and the related Contracts (solely to the extent related to such Acquired Interest) shall be excluded from the Acquired Interests conveyed to Buyer or Buyer 2, as applicable, at the Closing, the affected Acquired Interest will be deemed to be an Excluded Asset, and the Sellers shall pay over to Buyer all proceeds received for the affected Acquired Interest and related Contracts (or portion thereof) from the Person exercising such Preferential Right.

(c)     If prior to Closing (i) any Acquired Interest is burdened by a Preferential Right that has not been validly exercised or waived as of the Closing, regardless of whether the time period for the exercise of such right has expired or (ii) any Person asserts that it is the beneficiary of a Preferential Right with respect to any Acquired Interest and objects to the sale of such Acquired Interest to Buyer pursuant to this Agreement and such objection is not resolved so as to permit the sale and assignment of such Acquired Interest free and clear of such Preferential Right (as applicable to the sale and assignment to Buyer or Buyer 2, as applicable, pursuant to this Agreement) to Buyer or Buyer 2, as applicable (by Final Order of the Bankruptcy Court or otherwise to Buyer's reasonable satisfaction), then, without limiting any of the rights of Buyer hereunder, including those set forth in <u>Section 7.3</u>, (A) at Buyer's option, such Acquired Interest shall be excluded from the Acquired Interests and treated as a Delayed Asset (*mutatis mutandis*), and (B) from and after the Closing, if Buyer so elects, (i) the Sellers and Buyer shall reasonably cooperate to provide a reasonable arrangement (to the extent legally permissible) to provide Buyer or Buyer 2, as applicable, with all of the benefits of, or under, such Delayed Asset, including (at Buyer's cost) enforcement for the benefit of Buyer or Buyer 2, as applicable, of any and all rights of the Sellers against any party with respect to such Delayed Asset arising out of the breach or cancellation with respect to such Delayed Asset by such party; *provided*, that to the extent that any such arrangement has been made to provide Buyer or Buyer 2, as applicable, with the benefits of, under or with respect to, a Delayed Asset, from and after the Closing, Buyer shall be responsible for, and shall promptly pay and perform all payment and other obligations under such Delayed Asset for the period during which Buyer or Buyer 2, as applicable, is receiving the benefits under the applicable Delayed Asset to the same extent as if such Delayed Asset had been assigned or transferred at the Closing, (ii) the Sellers and Buyer shall reasonably cooperate with Buyer to obtain the waiver of the Preferential Right with respect to such Delayed Asset, and (iii) if such asserted Preferential Right is not validly exercised prior to its expiration or waiver, or if the dispute regarding the Preferential Right affecting such Delayed Asset is resolved by Final Order of the Bankruptcy Court or otherwise to Buyer's reasonable satisfaction, such Delayed Asset, subject to the immediately following proviso, shall be promptly conveyed to Buyer or Buyer 2, as applicable; *provided* that, with respect to any such Delayed Asset that is an Other Asset, Buyer in its sole discretion (subject to the immediately following proviso) may elect for the Sellers not to sell, transfer, convey, assign or deliver such Delayed Asset to Buyer after the occurrence of the events in the preceding clause (iii); *provided* that Buyer shall so elect, unless (x) the retention of such Delayed Asset by the applicable Seller would not result in such Seller retaining any incremental Liability as compared to if such Seller had transferred such Delayed Asset to Buyer (unless Buyer

16

provides an amount in cash to the Sellers equal to the amount of such Liabilities and/or indemnification to the Sellers for any such Liabilities) or (y) the Sellers and Buyer mutually agree for Buyer not to so elect; *provided further* that from and after the date that is six (6) months after the Closing, Buyer shall have no obligation to make any such election and may elect for the Sellers to retain such Delayed Asset, in which case such Delayed Asset shall be an Excluded Asset for all purposes under this Agreement and the arrangements described in clause (B)(i) shall terminate. If, for any reason, such Preferential Right is validly exercised by the holder thereof after the Closing and prior to an election by Buyer for the Sellers to retain such Delayed Asset pursuant to the second proviso in the preceding sentence, the Sellers shall pay over to Buyer all proceeds paid for the affected Acquired Interest by the holder of the relevant Preferential Right.

2.6     [Reserved.]

2.7     Withholding.  Buyer and its Affiliates shall be entitled to deduct and withhold, from any amounts payable under this Agreement, amounts required to be deducted and withheld under the Code or any other applicable Law.  To the extent any amount is so withheld and paid to the appropriate Governmental Authority pursuant to applicable Law, such withheld amounts shall be treated for all purposes of the Agreement as having been paid to the Person in respect of which such deduction or withholding was made.

2.8     Assets Sold "As Is, Where Is".

(a)     BUYER ACKNOWLEDGES AND AGREES THAT THE ACQUIRED INTERESTS SOLD PURSUANT TO THIS AGREEMENT ARE SOLD, CONVEYED, TRANSFERRED AND ASSIGNED ON AN "AS IS, WHERE IS" BASIS "*WITH ALL FAULTS*" AND THAT, EXCEPT AS SET FORTH IN ARTICLE IV OF THIS AGREEMENT AND THE CERTIFICATES DELIVERED BY THE SELLERS AT CLOSING (BUT SUBJECT TO THE TERMINATION OF REPRESENTATIONS AND WARRANTIES AT CLOSING PURSUANT TO SECTION 13.1), THE SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES, TERMS, CONDITIONS, UNDERSTANDINGS OR COLLATERAL AGREEMENTS OF ANY NATURE OR KIND, EXPRESS OR IMPLIED, BY STATUTE OR OTHERWISE, CONCERNING THE ACQUIRED INTERESTS OR THE CONDITION, DESCRIPTION, QUALITY, USEFULNESS, QUANTITY OR ANY OTHER THING AFFECTING OR RELATING TO THE ACQUIRED INTERESTS, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WHICH WARRANTIES ARE ALSO HEREBY EXPRESSLY DISCLAIMED. BUYER FURTHER ACKNOWLEDGES THAT THE SELLERS HAVE MADE NO AGREEMENT OR PROMISE TO REPAIR OR IMPROVE ANY OF THE ACQUIRED INTERESTS BEING SOLD TO BUYER, AND THAT BUYER TAKES ALL SUCH ACQUIRED INTERESTS IN THE CONDITION EXISTING ON THE CLOSING DATE (SUBJECT TO SATISFACTION OR WAIVER OF THE CONDITIONS SET FORTH IN ARTICLE VII) "AS IS, WHERE IS" AND "*WITH ALL FAULTS*" AND WITHOUT WARRANTY OF TITLE.  NOTHING HEREIN SHALL LIMIT BUYER'S REMEDIES IN THE EVENT OF FRAUD (AS DEFINED IN ANNEX I), EXCEPT THAT BUYER SHALL HAVE NO REMEDY IN THE EVENT OF FRAUD WITH RESPECT TO FIELDWOOD ENERGY I, FW GOM PIPELINE, GOM SHELF OR ANY OF THEIR RESPECTIVE SUBSIDIARIES.

17

(b) EXCEPT AS AND TO THE EXTENT EXPRESSLY SET FORTH IN ARTICLE IV OF THIS AGREEMENT OR THE CERTIFICATES DELIVERED BY THE SELLERS AT CLOSING (BUT SUBJECT TO THE TERMINATION OF REPRESENTATIONS AND WARRANTIES AT CLOSING PURSUANT TO SECTION 13.1), AND WITHOUT LIMITING THE GENERALITY OF SECTION 2.8(a), THE SELLERS EXPRESSLY DISCLAIM ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, AS TO (i) TITLE TO ANY OF THE ACQUIRED INTERESTS, (ii) THE CONTENTS, CHARACTER OR NATURE OF ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT, OR ANY ENGINEERING, GEOLOGICAL OR SEISMIC DATA OR INTERPRETATION, RELATING TO THE ACQUIRED INTERESTS, (iii) THE QUANTITY, QUALITY OR RECOVERABILITY OF HYDROCARBONS IN OR FROM THE ACQUIRED INTERESTS, (iv) ANY ESTIMATES OF THE VALUE OF THE ACQUIRED INTERESTS OR FUTURE REVENUES GENERATED BY THE ACQUIRED INTERESTS, (v) THE PRODUCTION OF HYDROCARBONS FROM THE ACQUIRED INTERESTS, (vi) THE CONDITION, QUALITY, SUITABILITY OR MARKETABILITY OF THE ACQUIRED INTERESTS, INCLUDING THE MARKETABILITY OF ANY HYDROCARBONS, (vii) THE AVAILABILITY OF GATHERING OR TRANSPORTATION FOR HYDROCARBONS FROM THE ACQUIRED INTERESTS, (viii) THE CONTENT, CHARACTER OR NATURE OF ANY INFORMATION MEMORANDUM, REPORTS, BROCHURES, CHARTS OR STATEMENTS PREPARED BY OR ON BEHALF OF THE SELLERS OR THIRD PARTIES WITH RESPECT TO THE ACQUIRED INTERESTS, AND (ix) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE TO BUYER OR ANY AFFILIATE OF BUYER, OR ITS OR THEIR EMPLOYEES, AGENTS, CONSULTANTS, REPRESENTATIVES OR ADVISORS IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY DISCUSSION OR PRESENTATION RELATING THERETO. ANY AND ALL SUCH DATA, INFORMATION AND OTHER MATERIALS FURNISHED BY OR ON BEHALF OF THE SELLERS IS PROVIDED TO BUYER AS A CONVENIENCE, AND ANY RELIANCE ON OR USE OF THE SAME SHALL BE AT BUYER'S SOLE RISK.

2.9 <u>Presence of Wastes, NORM, Hazardous Substances and Asbestos</u>. BUYER ACKNOWLEDGES THAT THE ACQUIRED INTERESTS HAVE BEEN USED TO EXPLORE FOR, DEVELOP AND PRODUCE HYDROCARBONS, AND THAT SPILLS OF WASTES, CRUDE OIL, PRODUCED WATER, HAZARDOUS SUBSTANCES AND OTHER MATERIALS MAY HAVE OCCURRED THEREON OR THEREFROM. ADDITIONALLY, THE ACQUIRED INTERESTS, INCLUDING PRODUCTION EQUIPMENT, MAY CONTAIN ASBESTOS, HAZARDOUS SUBSTANCES OR NORM. NORM MAY AFFIX OR ATTACH ITSELF TO THE INSIDE OF WELLS, MATERIALS AND EQUIPMENT AS SCALE OR IN OTHER FORMS, AND NORM-CONTAINING MATERIAL MAY HAVE BEEN BURIED OR OTHERWISE DISPOSED OF ON THE ACQUIRED INTERESTS. SPECIAL PROCEDURES MAY BE REQUIRED FOR REMEDIATION, REMOVING, TRANSPORTING AND DISPOSING OF ASBESTOS, NORM, HAZARDOUS SUBSTANCES AND OTHER MATERIALS FROM THE ACQUIRED INTERESTS.

## ARTICLE III
## DUE DILIGENCE

3.1   <u>Due Diligence</u>.

(a)   From and after the date hereof until the Closing Date, the Sellers shall (i) afford to Buyer and its Representatives (at Buyer's cost) during normal business hours (A) upon the reasonable request of Buyer, reasonable access to and entry upon any specified Field Asset (subject to (1) execution of the Sellers' customary boarding agreement, (2) the terms, conditions and restrictions of agreements that are related to access to such Field Assets and to which any Seller is a party and (3) the consent of any third party operator, as applicable), including execution of agreements required by any third party with respect to access to such Field Assets for the purposes of performing onsite tests, inspections, examinations, investigations, studies and assessments of the Field Assets (including non-invasive environmental assessments of the Field Assets and, subject to the consent of the Sellers (such consent not to be unreasonably withheld, conditioned or delayed) invasive environmental assessments of the Field Assets; *provided*, that prior to conducting any invasive environmental assessments, Buyer and Sellers will cooperate in good faith to enter into a written agreement with respect to the parameters and scope of, allocation of liability with respect to, and rights to information (including samples) arising from, such assessments); and (B) at the offices of each of the Sellers, (1) reasonable access to the Sellers' title records, Leases, Easements, Contracts, environmental and legal materials, books, records, statements and operating data, information relating to the Field Assets (including all land and title records, surveys, abstracts of title, title insurance policies, title opinions, title curative and all lease, contract, division order, marketing, acquisition, correspondence, operations, environmental, insurance, production, accounting, regulatory, Property-Related Tax, Production Tax, Transfer Tax and well records and files) and any other information or documents that are in the possession or control of the Sellers and relate in any way to any Acquired Interests and (2) to the extent permitted in accordance with applicable licensing agreements, the opportunity to review the Field Data, and (ii) instruct the Sellers' representatives to reasonably cooperate with Buyer and its Representatives in their investigation of the Acquired Interests.  Notwithstanding anything in this <u>Section 3.1(a)</u> to the contrary, (x) all such information shall be held in confidence by Buyer in accordance with the terms of <u>Section 10.5</u>, and (y) in no event shall the Sellers be obligated to provide (A) access or information in violation of applicable Law, (B) any information the disclosure of which would cause the loss of any legal privilege available to any Seller relating to such information or would cause any Seller to breach a confidentiality obligation to which it is bound; *provided* that the applicable Seller shall use commercially reasonable efforts to provide such information and documents in a manner that does not violate such Law or result in such loss of privilege or breach of obligation, or (C) copies of bids, letters of intent, expressions of interest or other proposals received from other Persons in connection with the transactions contemplated by this Agreement or information and analyses relating to such communications.  For the avoidance of doubt, Buyer and its Representatives shall not be permitted to conduct any invasive environmental investigations without the Sellers' express written consent, which may be withheld by the Sellers in their sole discretion.

(b)   No investigation by Buyer or other information received by Buyer shall operate as a waiver or otherwise affect any representation, warranty or agreement given or made by any Seller hereunder.

19

## ARTICLE IV
## SELLERS' REPRESENTATIONS

Each Seller represents and warrants to Buyer and Buyer 2, subject to the Disclosure Schedules (subject to Section 12.15), as follows:

4.1    Organization/Qualification.  Each Seller is an entity duly formed, validly existing and in good standing under the Laws of the jurisdiction of its organization.  Each Seller is qualified to do business and is in good standing under the Laws of each jurisdiction where such qualification is necessary, except for those jurisdictions where failure to be so qualified would not, individually or in the aggregate, prevent, materially delay or materially impede the performance by such Seller of its obligations under this Agreement or its consummation of the transactions contemplated by this Agreement.  Each Seller has all requisite power and authority required to own and operate its properties (including the Acquired Interests) and to carry on its business as now conducted.

4.2    Power and Authority.  Subject to entry of the Confirmation Order and such other authorization as may be required by the Bankruptcy Court, each Seller has the requisite power and authority to execute and deliver this Agreement and the other Ancillary Documents to which it is (or, upon its execution and delivery, will be) a party and perform its obligations under this Agreement and such other Ancillary Documents.

4.3    Non-Contravention.  Each Seller's execution, delivery and performance of this Agreement and each Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party and each Seller's performance of the transactions contemplated herein and therein will not (a) conflict with or result in a breach of any provisions of the organizational documents of such Seller, Fieldwood U.A. or, to the Sellers' Knowledge, the Mexico JV or (b) subject to (w) the entry of the Disclosure Statement Order and the Confirmation Order, (x) obtaining or making the Applicable Consents set forth on **Schedule 4.8(b)** in accordance with Section 2.3, (y) obtaining or making the Governmental Approvals set forth on **Schedule 4.7** and (z) obtaining waivers for the Preferential Rights set forth on **Schedule 4.8(a)** (in the case of each of the preceding clauses (x) and (z), after giving effect to the Confirmation Order), result in (i) a breach of or default under, or give rise to any right of termination, revocation, cancellation or acceleration under, any Permit, Lease, Subject Unit Agreement, Easement, Assigned Contract, credit agreement (excluding the Credit Agreement), note, bond, mortgage, indenture, license or other agreement, document or instrument to which any Seller is a party or by which any Seller or any of the Acquired Interests may be bound, or otherwise result in a loss of any benefit relating to the Acquired Interests, (ii) the creation or imposition of any Encumbrance upon any Acquired Interest other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances), or (iii) violate any applicable Law, except, in the case of the preceding clauses (i) and (ii), as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect.

4.4    Authorization and Enforceability.  Subject to entry of the Disclosure Statement Order and the Confirmation Order, each Seller has full capacity, power and authority to enter into and perform this Agreement, each Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party and the transactions contemplated herein and therein.  The execution, delivery and performance by each Seller of this Agreement and each Ancillary

20

Document to which such Seller is (or, upon its execution and delivery, will be) a party have been duly and validly authorized and approved by all necessary company action on the part of such Seller. Subject to entry of the Disclosure Statement Order and the Confirmation Order, this Agreement and each Ancillary Document to which each Seller is (or, upon its execution and delivery, will be) a party are, or upon their execution and delivery will be, the valid and binding obligations of such Seller and enforceable against such Seller in accordance with their respective terms, subject to the effects of bankruptcy, insolvency, reorganization, moratorium and similar Laws as well as to principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

4.5　　Liability for Brokers' Fees. Other than Houlihan Lokey Capital, Inc., there is no investment banker, broker, finder or other intermediary which has been retained by or is authorized to act on behalf of any Seller who might be entitled to any fee, commission or expenses in connection with the transactions contemplated by this Agreement or any of the Ancillary Documents.

4.6　　Litigation. Other than the Bankruptcy Cases or as specified on **Schedule 4.6**, no Claim (or any basis thereof) by any Governmental Authority or other Person (including expropriation or forfeiture proceedings) nor any legal, administrative or arbitration proceeding (or any basis thereof) is pending or, to the Sellers' Knowledge, threatened against any Acquired Interest or against any Seller relating to any Acquired Interest which, individually or in the aggregate, if determined or resolved adversely in accordance with the plaintiff's demands, (x) to the extent the representation is to the existence of any basis of any Claim or any legal, administrative or arbitration proceeding, would reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect and (y) otherwise, would reasonably be expected to be material to the Acquired Interests, individually or taken as a whole, or which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

4.7　　Governmental Approvals. Except as set forth on **Schedule 4.7**, no Governmental Approval (other than the Disclosure Statement Order and the Confirmation Order) is required to authorize, or is otherwise required in connection with, (a) any Seller's valid execution and delivery by such Seller of this Agreement or any Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party, (b) any Seller's performance of its obligations hereunder or thereunder or (c) the consummation of the transactions contemplated by this Agreement or any of the Ancillary Documents.

4.8　　Preferential Rights; Applicable Consents.

(a)　　Except as set forth on **Schedule 4.8(a)**, none of the Acquired Interests is subject to a Preferential Right.

(b)　　Except as set forth on **Schedule 4.8(b)**, none of the Acquired Interests is subject to an Applicable Consent.

The inclusion of any Acquired Interest on **Schedule 4.8** shall not be construed as an admission by Buyer or Sellers that any preferential purchase right or similar right or Consent in any agreement

21

relating to such Acquired Interest (or any express exception thereto contained in such agreement) is (or is not) applicable to the transactions contemplated hereby.

4.9    Taxes.  Except as would not result, individually or in the aggregate, in a Material Adverse Effect and except as otherwise set forth on **Schedule 4.9**, (a) all Tax Returns required to be filed with respect to the Acquired Interests or any Hydrocarbon production therefrom (including Property-Related Taxes and Production Taxes) or by Fieldwood U.A. have been timely filed, and all such Tax Returns are true, complete and correct; (b) the Sellers have adequately accrued in accordance with GAAP, established adequate reserves for the payment of, and will timely pay, all Taxes which arise from or with respect to the Acquired Interests or any Hydrocarbon production therefrom or allocable thereto incurred in or attributable to all Pre-Closing Tax Periods (other than Taxes described in the preceding clause (a)); (c) all Taxes due and owing by the Sellers with respect to the Acquired Interests or any Hydrocarbon production therefrom (including with respect to Property-Related Taxes and Production Taxes) or by Fieldwood U.A. (whether or not shown on any Tax Return) have been paid, and no extension of time within which to file any such Tax Return is in effect; (d) there are no Encumbrances on any Acquired Interest; (e) no audits, investigations, examinations, audits, litigation, Claims or other proceedings are pending, or to the Sellers' Knowledge threatened in writing, against any Seller relating to the payment of Taxes (including Property-Related Taxes and Production Taxes) with respect to any Acquired Interests or with respect to Taxes for which Fieldwood U.A. may be liable; (f) there are no currently proposed or pending adjustments by any Governmental Authority in connection with any Tax Returns of any Seller pertaining to the Acquired Interests or of Fieldwood U.A.; (g) no waiver or extension of any statute of limitations has been granted or requested as to any Tax matter relating to any Acquired Interests or with respect to any Taxes for which Fieldwood U.A. may be liable, in each case, that is still in effect; (h) Fieldwood U.A. will not be required to include any item of income in, or exclude any item of deduction from, taxable income in any taxable period (or portion thereof) after Closing, as a result of any change in method of accounting, closing agreement, installment sale or receipt of any prepaid amount outside of the ordinary course of business, in each case, made or entered into prior to Closing; (i) no Governmental Authority responsible for the administration or imposition of Taxes in any jurisdiction in which a Seller or any of its Affiliates (in respect of the Acquired Interests) or Fieldwood U.A. has not filed a Tax Return has asserted in writing that such Seller, any of its Affiliates, or Fieldwood U.A., as the case may be, is subject to Tax or required to file a Tax Return in that jurisdiction; (j) Fieldwood U.A. has withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor, creditor, customer, shareholder or other third party; (k) Fieldwood U.A. has not been a member of any Company Group; (l) none of the Sellers or Fieldwood U.A. has engaged in a "*listed transaction*" within the meaning of Treasury Regulations Section 1.6011-4(b); (m) the Acquired Interests are not subject to, for federal income tax purposes, a partnership between any Seller and any other Person for which a partnership income tax return is required to be filed under Subchapter K of Chapter 1 of Subtitle A of the Code (other than a partnership for which an election to be excluded from such provisions is in effect pursuant to the provisions of Section 761 of the Code and the regulations thereunder); (n) Fieldwood U.A. is not, and does not own (directly or indirectly) stock or a warrant in, a corporation that is (or was at any time during the course of such ownership) a passive foreign investment company, as defined in Section 1297 of the Code; (o) Fieldwood U.A. is not a party to or bound by any Tax Sharing Agreement; and (p) **Schedule 4.9(p)** lists (A) the entity classification of Fieldwood U.A., Fieldwood Mexico and any Subsidiary thereof for U.S. federal income Tax purposes, as of the date hereof and as of the

Closing Date, and (B) each entity classification election and change in entity classification that has been made under Treasury Regulations Section 301.7701-3 with respect to Fieldwood U.A., Fieldwood Mexico and any Subsidiary thereof for U.S. federal income Tax purposes.

4.10    Well Status.  Except as set forth on **Exhibit C**, (a) the Sellers are the operators of that portion of the Lease(s) covering all Scheduled Wells; (b)  all Wells that are not currently producing Hydrocarbons in paying quantities have been plugged, abandoned and decommissioned, and all related salvage, site clearance and surface restoration and decommissioning operations have been completed, in accordance with all applicable Laws in all material respects; (c) no Scheduled Well has been permanently, or is currently temporarily, plugged and abandoned; and (d) there is no Well in respect of which any Seller or any of its Affiliates has received an order from any Governmental Authority requiring that such Well be plugged and abandoned (or re-plugged), other than a Well for which such plugging and abandonment (or re-plugging) requirements have been completely satisfied.  All Wells that have not been plugged, abandoned and decommissioned are listed on **Exhibit C**.

4.11    Compliance with Laws; Permits.  Except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect, (a) each Seller, and to the Sellers' Knowledge each Third Person operator of any Lease (or portion thereof), Subject Unit or Easement, is in compliance, and since January 1, 2018 has at all times complied, with all applicable Laws and all Permits necessary or required in each case in connection with the ownership and, with respect to each Acquired Interest operated by a Seller, operation of the Acquired Interests, including the Leases, Subject Units, Easements and Wells and the production, marketing and disposition of Hydrocarbons therefrom; and (b) with respect to each Acquired Interest, the Sellers and, to the Sellers' Knowledge, each Third Person operator of such Acquired Interest, if applicable, has all Permits necessary or required in connection with the ownership and operation of such Acquired Interest, and all such Permits are in full force and effect.  Since January 1, 2018, no Seller has received written notice from any Governmental Authority that any applicable Law or Permit has been violated or not complied with by any Seller.  With respect to Suspense Funds, each Seller is in compliance with applicable Laws in all material respects.  Except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect, Fieldwood U.A. and the Mexico JV are in compliance with applicable Laws.  Other than the Bankruptcy Cases, there is no judgment, decree, injunction, rule or order of any arbitrator or Governmental Authority outstanding against any Seller, Fieldwood U.A. or the Mexico JV that has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  All Permits held by the Sellers that relate to the Assets are valid and in full force and effect and no Seller is in default under or in violation of any such Permit, except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect.

4.12    Environmental Matters.  Except as could not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect or as set forth on **Schedule 4.12**, (a) each Seller, and to the Sellers' Knowledge each Third Person operator of any Acquired Interest, if applicable, has all Permits required under Environmental Laws in connection with the ownership and operation of the Acquired Interests, including the Field Assets, the production, marketing and disposition of Hydrocarbons therefrom and the ownership and use of the Office Assets and all such Permits are in full force and effect; (b) no Seller has received, and to the Sellers' Knowledge no Third Person operator has received, any written notice of violation, assessment or incident of non-

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

compliance or other communication that alleges any actual or potential non-compliance with or Liability under any Environmental Law or Permit required under Environmental Laws in connection with ownership or operations of the Acquired Interests, including the Field Assets and Office Assets; (c) no investigation, proceedings or other Claims resulting from any Environmental Law or Permit required under Environmental Laws is pending, or to the Sellers' Knowledge threatened in writing, against any Asset, (d) the Assets are in compliance in all respects with all applicable Environmental Laws, and (e) there has been no Release under or from any Asset or, to the Sellers' Knowledge, at any asset or property formerly owned, leased or operated by, or otherwise arising from the operations of any Seller or any of its Affiliates or predecessors, in violation of, or in a manner reasonably expected to give rise to Liability under, Environmental Laws or any Permit required under Environmental Laws. The Sellers have made available to Buyer, in written or electronic format, all environmental site assessments, studies and analyses in the possession or control of any Seller addressing potentially material Losses, Claims or obligations pertaining to Environmental Contaminants or Environmental Law in relation to the Acquired Interests.

4.13    Payments.  Except (x) as set forth on **Schedule 4.13** and (y) for the Suspense Funds listed on **Schedule 4.20**, each Seller has timely (a) paid all Lease Burdens due in respect of Hydrocarbons produced from or allocable to any Acquired Interests payable by the Sellers, (b) reported to applicable Governmental Authorities, to the extent required by applicable Law, Hydrocarbons produced from or allocable to any Lease, Subject Unit or Well required to be reported by the Sellers, and (c) paid all amounts owing by such Seller under any Easement or with respect to any Office Asset, except, in the case of this clause (c), as would not be reasonably expected to result, individually or in the aggregate, in a Material Adverse Effect.  No Seller has received written notice of any Claim that has not been resolved claiming that such Seller's disbursement of Lease Burdens or reporting of Hydrocarbon production with respect to the Acquired Interests is inaccurate, other than Claims relating to disbursements or reporting that are not, in the aggregate, material to the Acquired Interests taken as a whole.

4.14    Material Contracts.

(a)    Prior to the Execution Date, the Sellers made available to Buyer accurate and complete copies of all Material Contracts.  Except as set forth on **Schedule 4.14**, no Seller has delegated or otherwise transferred to any third party any of its material rights or obligations with respect to any Assigned Contract.  Except as set forth on **Schedule 4.14**, no Seller is a party to or bound by any of the following Contracts (other than any Contract that is an Excluded Asset or Retained Liability) (each, a "***Material Contract***"):

(i)    any Contract (excluding any purchase orders entered into in the ordinary course of business) relating to or used in connection with any Acquired Interest that could reasonably be expected to provide for either (A) annual payments by, or revenues to, the Sellers of $5,000,000 or more or (B) aggregate payments by, or revenues to, the Sellers of $10,000,000 or more;

(ii)    any Subject Unit Agreement;

(iii)    any Hydrocarbon purchase and sale, exchange, marketing, compression, fractionation, drilling, completion, gathering, transportation, processing, production handling, refining, treatment, storage, handling, chemicals, construction or similar Contract, in each case, that is not terminable by the Sellers without penalty on thirty (30) days' or less notice;

(iv)    any Contract to acquire, sell, lease, develop or otherwise dispose of or encumber any interest in any of the Acquired Interests after the Closing Date (other than sales of Hydrocarbons in the ordinary course of business);

(v)    any Contract with any individual person acting as an independent contractor or consultant which includes payment for services to such person in excess of $500,000 annually;

(vi)    any Contract relating to or used in connection with any Acquired Interests that limits the freedom of any Seller to engage in any line of business or in any area or to compete with any Person or which would so limit the freedom of Buyer or any of its Affiliates after the Closing Date, including any noncompetition agreement, area of mutual interest or other agreement;

(vii)    any Contract providing for any call upon, option to purchase, or similar rights with respect to the Acquired Interests or to the production therefrom or the processing thereof, or that is a dedication of production;

(viii)    any Contract relating to or used in connection with any Acquired Interest that constitutes an operating agreement, exploration agreement, joint development agreement, farmin agreement, plugging and abandonment agreement, balancing agreement, platform use agreement, farmout agreement, partnership agreement, participation agreement, joint venture agreement, or similar Contract;

(ix)    any Contract relating to or used in connection with any Acquired Interest involving any resolution or settlement or any actual or threatened Claim which imposes material continuing obligations on any Seller will not have been fully performed prior to the Closing Date;

(x)    any Contract relating to or used in connection with any Acquired Interest that requires the posting of a security deposit, letter of credit, performance bond or surety;

(xi)    any Contract relating to or used in connection with any Acquired Interest that is a seismic, engineering, geological or other geophysical acquisition agreement or license;

(xii)    any Contract pursuant to which a Seller (A) grants to a third party any license, right to use or covenant not to sue under any Owned Intellectual Property or (B) is granted by a third party any license, right to use or covenant not to sue under any Intellectual Property (excluding from clause (B), (x) licenses for commercial off-the-shelf software that are generally available on non-discriminatory pricing terms which have an

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

aggregate annual cost of $50,000 or less and (y) the licenses and agreements listed on **Exhibit F**);

(xiii)   any lease or sublease for any personal property included in the Acquired Interests providing for annual rentals of $250,000 or more;

(xiv)   any lease or sublease of real property; and

(xv)   any Contract by which any Seller is obligated by virtue of a take or pay payment, advance payment, production payment or other similar payment or commitment, to deliver Hydrocarbons, or proceeds from the sale thereof, attributable to the Sellers' aggregate interest in the Assets at some future time without receiving payment therefor at or after the time of delivery.

(b)   Each Material Contract is in full force and effect and a valid and binding obligation of the Seller(s) party thereto and, to the Sellers' Knowledge, the other parties thereto, in accordance with its terms and conditions, except as such validity and enforceability may be limited by (i) bankruptcy, insolvency, or other similar Laws affecting the enforcement of creditors' rights generally, (ii) equitable principles of general applicability (whether considered in a proceeding at law or in equity), and (iii) the obligation to pay Cure Costs.  No event has occurred which, with the passage of time or the giving of notice, or both, would constitute a default under or a violation of any Material Contract or would cause the acceleration of any right or obligation of any Seller or, to the Sellers' Knowledge, any other party thereto or the creation of an Encumbrance upon any Acquired Interest, except for such events that would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  No Seller nor, to the Sellers' Knowledge, any other party to any Material Contract has given written notice of any action to terminate, cancel, rescind, repudiate or procure a judicial reformation of any such Material Contract or any provision thereof.

(c)   Prior to the Execution Date, the Sellers made available to Buyer accurate and complete copies of all Leases and Easements. Except as set forth on **Schedule 4.14(c)**, no Seller is a party to or bound by any Lease or Easement (other than any Lease or Easement that is an Excluded Asset or Retained Liability).

4.15   Imbalances; Prepayments.   Except as set forth on **Schedule 4.15**, as of the Execution Date, (x) no Seller has a Claim constituting an Acquired Interest and (y) no Seller is subject to any Liability constituting an Assumed Liability, with respect to any Imbalance.

4.16   AFEs; Cash Calls.   Except as set forth on **Schedule 4.16(a)**, no authorities for expenditure or other commitments to make capital expenditures relating to any Acquired Interest for which the Sellers' liability is in excess of $200,000 is outstanding.  Except as set forth on **Schedule 4.16(b)**, no cash calls or payments due from any Seller under the terms of the Assigned Contracts or otherwise relating to the Acquired Interests are past due by more than thirty (30) days (excluding amounts being disputed in good faith).

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

4.17    <u>Labor and Employment Matters</u>.

(a)    The Sellers have provided Buyer's legal and financial advisors, on a confidential basis and for professional eyes only, with a true and complete list of the following information for all employees of the Sellers and of each of their Affiliates (such employees from time to time, and whether or not listed, the "***Seller Employees***"), including name, title, hire date, location, whether full- or part-time, whether active or on leave (and, if on leave, the nature of the leave and the expected return date), whether exempt from the Fair Labor Standards Act of 1938, annual salary or wage rate, most recent annual bonus received, and current annual bonus opportunity (such list, the "***Employee List***"), which list may not be shared with any debt or equity holders of Buyer.  In addition, the Sellers have provided Buyer with the Employee List, but excluding each Seller Employee's name and title, which can be shared with Buyer's debt and equity holders, the DIP Lenders (as such term is defined in the Plan) and the FLTL Lenders (as such term is defined in the Plan).

(b)    The Sellers and each of their Affiliates are, and for the last three (3) years, have been, in compliance in all material respects with applicable Laws relating to labor and employment, including those relating to worker classification, labor management relations, wages and hours (including classification of independent contractors and exempt and non-exempt employees), overtime, collective bargaining, unemployment, workers' compensation, equal employment opportunity, discrimination, civil rights, affirmative action, work authorization, immigration, safety and health, continuation coverage under group health plans, information privacy and security and payment of withholding of taxes and social security.

(c)    For the last three (3) years, (i), no allegations of sexual harassment or other sexual misconduct have been made against any current or former employee or independent contractor of the Sellers or any of their Affiliates who has three or more direct reports, (ii) there are and have been no actions pending or, to the Sellers' Knowledge, threatened in writing related to any allegations of sexual harassment or other sexual misconduct by any current or former employee or independent contractor of the Sellers or any of their Affiliates who has three or more direct reports, and (iii) neither the Sellers nor any of their Affiliates have entered into any settlement agreements related to allegations of sexual harassment or other sexual misconduct by any current or former employee or independent contractor of the Sellers or any of their Affiliates.

(d)    There are no collective bargaining agreements to which any Seller or any Affiliate of any Seller is a party relating to any Seller Employee and, to the Sellers' Knowledge, threatened.  No application for certification of a collective bargaining agent involving any Seller and any Seller Employee is pending.  With respect to the Seller Employees, there are no (i) strikes, slowdowns, picketing or work stoppage by any Seller Employee pending or, to the Sellers' Knowledge, threatened or (ii) except as would not reasonably be expected to result in a material Liability, unfair labor practice charges or other employment or labor complaints pending or, to the Sellers' Knowledge, threatened in writing against any Seller or any of their Affiliates before the National Labor Relations Board or any other Governmental Authority or any current union representation questions involving any current or former employees or independent contractors of any Seller or any of their Affiliates.

4.18    Employee Benefits.

(a)    **Schedule 4.18** sets forth a true and complete list of each material (i) deferred compensation plan, (ii) incentive compensation plan, (iii) equity compensation plan, (iv) "*welfare*" plan, fund or program (within the meaning of Section 3(1) of ERISA), (v) "*pension*" plan, fund or program (within the meaning of Section 3(2) of ERISA), (vi) "*employee benefit plan*" (within the meaning of Section 3(3) of ERISA), (vii) employment (other than offer letters entered into in the ordinary course of business that do not provide for severance, transaction or retention bonuses or any guaranteed payments), termination, severance or "*change in control*" agreement and (viii) other employee benefit plan, fund, program, agreement or arrangement, in each case, that is sponsored, maintained or contributed to or required to be contributed to by any Seller or by any trade or business, whether or not incorporated, that together with any Seller would be deemed a "*single employer*" within the meaning of Section 4001(b) of ERISA (an "*ERISA Affiliate*"), or to which any Seller or any ERISA Affiliate is party, for the benefit of any Seller Employee (each an "*Employee Plan*").  Each Employee Plan that Buyer or one of its Affiliates shall assume as of the Closing will be so noted on **Schedule 4.18** (each an "*Assumed Employee Plan*").

(b)    None of the Sellers nor any of their Affiliates or ERISA Affiliates (nor any predecessor of any such entity) sponsors, maintains, administers or contributes to (or has any obligation to contribute to), or has in the past six (6) years sponsored, maintained, administered or contributed to (or had any obligation to contribute to), or has or is reasonably expected to have any direct or indirect Liability with respect to, any plan subject to Title IV of ERISA, including any "*multiemployer plan*" (as defined in Section 3(37) of ERISA or any plan described in Section 413 of the Code).  No Assumed Employee Plan is a multiple employer welfare arrangement (within the meaning of Section 3(40) of ERISA).

(c)    Each Assumed Employee Plan that is intended to be qualified under Section 401(a) of the Code has received a favorable determination letter or opinion, is entitled to rely on an opinion letter from the IRS or has applied to the IRS for such a letter within the applicable remedial amendment period or such period has not expired and, to the Sellers' Knowledge, no circumstances exist that would reasonably be expected to result in the loss of such qualification.

(d)    No Assumed Employee Plan provides for any post-employment or post-retirement medical, dental, disability, hospitalization, life or similar benefits (whether insured or self-insured) to any current or former employee of the Sellers (other than coverage mandated by applicable Law, including COBRA).

(e)    Each Employee Plan has been maintained, funded and administered in compliance with its terms and all applicable Law, including ERISA and the Code, except where the failure to be so operated would not reasonably be expected to result in a material Liability. There is no action, suit, investigation, audit, proceeding or claim (other than routine claims for benefits) pending against or, to the Sellers' Knowledge, threatened against or involving any Employee Plan before any court or arbitrator or any Governmental Authority, including the IRS, the Department of Labor or the Pension Benefit Guaranty Corporation, that would reasonably be expected to result in a material Liability.

(f)      Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby (either alone or together with any other event) will (i) entitle any current or former employee or independent contractor to any material payment or benefit, including any bonus, retention, severance, retirement or job security payment or benefit, (ii) accelerate the time of payment or vesting or trigger any payment or funding (through a grantor trust or otherwise) of compensation or benefits under, or increase the amount payable or trigger any other obligation under, any Employee Plan with respect to any current or former employee or independent contractor or (iii) result in the payment of any amount that would subject any current or former employee or independent contractor to excise taxes under Section 4999 of the Code.

4.19    <u>Non-Consent Operations</u>.  Except as set forth on **<u>Schedule 4.19</u>**, no operations are being conducted or have been conducted on any Field Assets with respect to which any Seller has elected, or been deemed, to be a non-consenting party under the applicable operating agreement and with respect to which all of such Seller's rights have not yet reverted to it.

4.20    <u>Suspense Funds</u>.  **<u>Schedule 4.20</u>** sets forth the amount of all Suspense Funds as of the date set forth therein.

4.21    <u>Payout Balances</u>.  To the Sellers' Knowledge, **<u>Schedule 4.21</u>** contains a list of the estimated status of any "***payout***" balance (on a gross Working Interest basis for all Working Interest owners affected thereby), as of the date set forth on such Schedule, for each Well, Lease or Subject Unit that is subject to a reversion or other adjustment at some level of cost recovery or payout.

4.22    <u>Title to Acquired Interests</u>.

(a)      The Sellers: (i) with respect to each Lease listed on **<u>Exhibit A</u>**, hold pursuant to such Lease a valid interest in all or a portion of the oil and gas interests leased pursuant to such Lease, (ii) with respect to each Easement listed on **<u>Exhibit B</u>**, have a valid easement or other limited property interest in such Easement and (iii) with respect to each Well listed on **<u>Exhibit C</u>**, hold pursuant to one or more of the Leases a valid interest in all or a portion of the oil and gas produced from such Well, in each case, free and clear of any Encumbrances (other than (x) Permitted Encumbrances and (y) as would not be material to such Acquired Interest).  For the avoidance of doubt, the Sellers do not make any representations or warranties pursuant to the preceding sentence with respect to holding any specific net revenue interest or working interest in any of the Wells or Leases.  Except for the Encumbrances described on **<u>Schedule 4.22</u>**, the Sellers have good and valid title to all Acquired Interests other than the Wells, Leases, Easements and Subject Units, and are the record and beneficial owners of the Fieldwood U.A. Interests and the JV Interests, in each case free and clear of any Encumbrances and any other limitation or restriction (including any restriction on the right to vote, sell or otherwise dispose of the Fieldwood U.A. Interests or the JV Interests), other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances), in each case except as would not be material to such Acquired Interest.

(b)      No Affiliate of Fieldwood that is not a Seller owns any asset, property or right that is an Acquired Interest or would have been an Acquired Interest if such Affiliate had been a Seller hereunder.

29

(c)     The Acquired Interests constitute all of the property and assets used or held for use in the business of the Sellers as it relates to the ownership and operation of the Leases and are adequate to conduct the business of the Sellers as it relates to the ownership and operation of the Leases as currently conducted.

(d)     Except as set forth on **Schedule 4.22(d)**, no Seller or any of its Affiliates owns any real property.

4.23    Insurance.  **Schedule 4.23** sets forth a true and complete list of all policies of insurance held by or maintained by the Sellers or any of their Affiliates related to any Acquired Interests or the Seller Employees, including the type of policy, the limits of the coverage and any deductible or self-retention limit with respect thereto.  Such policies of insurance are in full force and effect.  Except as set forth on **Schedule 4.23**, no Seller has received, since January 1, 2020, any written notice from any insurer under any insurance policy applicable to the Acquired Interests or the Seller Employees disclaiming or limiting coverage with respect to any particular material claim or such policy in general or canceling or amending any such policy.  All premiums payable under all such insurance policies have been timely paid and each Seller has otherwise complied in all material respects with the terms and conditions of all such insurance policies.  To the Knowledge of the Sellers, no termination of, material non-ordinary course premium increase with respect to, or material alteration of coverage under, any of such policies or bonds has been threatened.

4.24    Related Party Transactions.  Except as set forth on **Schedule 4.24**, (a) there are no Assigned Contracts by and between any Seller and (i) any Affiliates of, or holder of five percent (5%) or more of the equity of, any Seller, (ii) any director or officer of any Seller or of any Person referenced in clause (i), or (iii) any "*associate*" or "*immediate family*" member (as such terms are respectively defined in Rule 12b-2 and Rule 16a-1 of the Securities Exchange Act of 1934) of any Person referenced in clause (i) or (ii) (the Persons referenced in clauses (i), (ii) and (iii) collectively, the "*Seller Related Parties*") and (b) no Seller has otherwise entered into any transactions or other arrangements with any Seller Related Parties that will be binding on Buyer or the Acquired Interests after the Closing Date.

4.25    Intellectual Property.

(a)     **Schedule 4.25(a)** contains a true and complete list of each of the issuances, registrations and applications for issuance or registration included in the Owned Intellectual Property, specifying as to each such item, as applicable, (i) the owner of such item, (ii) each jurisdiction in which such item is issued or registered or in which any application for issuance or registration has been filed, (iii) the respective issuance, registration and/or application number of such item and (iv) the date of application and issuance or registration of such item.

(b)     The Sellers are the sole and exclusive owners of all Owned Intellectual Property, in each case free and clear of any Encumbrance (except Permitted Encumbrances).  The Sellers own or have a valid and enforceable license or other right to use all Transferred Intellectual Property, and the Transferred Intellectual Property is all of the Intellectual Property (except Trademarks) necessary for the conduct of, or used or held for use in, the business of the Sellers as it relates to the Acquired Interests as currently conducted.

(c)     There exist no restrictions on the Sellers' disclosure, use, license or transfer of the Owned Intellectual Property, and the consummation of the transactions contemplated by this Agreement will not alter, encumber, impair or extinguish any Owned Intellectual Property or the Sellers' rights under any material Licensed Intellectual Property or impair the right of the Sellers to develop, use, sell, license or otherwise dispose of, or to bring any action for the infringement, misappropriation or other violation of, any Owned Intellectual Property.

(d)     The Sellers have not infringed, misappropriated or otherwise violated any Intellectual Property of any Person.  There is no Claim pending or threatened in writing, in each case, against any Seller (i) challenging or seeking to deny or restrict, the rights of any Seller in any of the Transferred Intellectual Property, (ii) alleging that any Transferred Intellectual Property is invalid or unenforceable, (iii) alleging that the use of any of the Transferred Intellectual Property or any services provided, processes used or products manufactured, used, imported or sold by any Seller, misappropriate, infringe or otherwise violate any Intellectual Property of any Person or (iv) otherwise alleging that any Seller has infringed, misappropriated or otherwise violated any Intellectual Property of any Person.

(e)     The Sellers have taken commercially reasonable steps to maintain, enforce and protect the Owned Intellectual Property.  None of the issuances or registrations included in the Owned Intellectual Property has been adjudged invalid or unenforceable in whole or part, all issuances and registrations included in the Owned Intellectual Property are valid, enforceable, in full force and effect and subsisting, and all registration, maintenance and renewal fees applicable to such issuances and registrations that are currently due have been paid and all documents and certificates related to such items and required to be filed with the relevant Governmental Authority for the purposes of maintaining such items have been filed with the relevant Governmental Authority.

(f)     To the Sellers' Knowledge, no Person has infringed, misappropriated or otherwise violated any material Owned Intellectual Property.  The Sellers have taken commercially reasonable steps in accordance with normal industry practice to maintain the confidentiality of all material Owned Intellectual Property the value of which to any of the Sellers is contingent upon maintaining the confidentiality thereof and no such material Owned Intellectual Property has been disclosed other than to employees, representatives, agents or partners of the Sellers or any other Persons, in each case, who are bound by written and enforceable confidentiality agreements.

(g)     The Sellers have appropriate procedures in place designed to provide that all material Intellectual Property conceived or developed by employees performing their duties for any Seller, and by Third Persons performing research and development for any Seller, have been assigned to such Seller, as applicable.  To the extent that any material Owned Intellectual Property has been developed or created by any Third Persons (including any current or former employee) for any Seller, such Seller has a written agreement with such Third Persons with respect thereto, which provides that such Seller either (i) has obtained ownership of and is the sole and exclusive owner of or (ii) has obtained a valid right to exploit, sufficient for the conduct of its business as it relates to the Acquired Interests, as currently conducted, such material Owned Intellectual Property.

(h)     The Seller IT Assets operate and perform in a manner that permits each Seller to conduct its business as it relates to the Acquired Interests as currently conducted, and the Sellers have taken commercially reasonable actions, consistent with current industry standards, to protect the integrity and security of the Seller IT Assets (and the confidentiality and security of all information and transactions stored or contained therein or transmitted thereby) against unauthorized use, access, interruption, modification or corruption, including the implementation of commercially reasonable (i) data backup, (ii) disaster avoidance and recovery procedures, (iii) business continuity procedures and (iv) encryption and other security protocol technology.  There has been no unauthorized use, access, interruption, modification or corruption of any Seller IT Assets that had a material adverse impact on the Sellers.

(i)     The Sellers have at all times materially complied with all applicable Laws, policies, procedures and contractual and all other obligations governing the collection, use, storage, processing, disclosure, protection, or security of Personal Information collected, used, stored, transferred or processed by or on behalf of any Seller (collectively, the "***Data Obligations***").  There has been no material loss, theft, security breach or unauthorized or unlawful disclosure or acquisition of any such Personal Information. No Claim has been asserted or, to the Sellers' Knowledge, threatened in writing, in each case, against any Seller alleging a violation of any Data Obligation.  For purposes of this <u>Section 4.25(b)</u>, "***Personal Information***" means, in addition to any definition for any similar term (e.g., "personal data" or "personally identifiable information") provided by applicable Law, all information that identifies or can reasonably be used to identify an individual person.

4.26     <u>Undue Influence</u>.  In the past five (5) years, in connection with the ownership or operation of the business of the Sellers as it relates to the Acquired Interests, neither any Seller nor, to the Sellers' Knowledge, any director, officer, agent, employee or Affiliate, in each case, of any Seller, has taken any action, directly or indirectly, with respect to the business of the Sellers as it relates to the Acquired Interests that would result in a material violation of the Foreign Corrupt Practices Act of 1977 and the rules and regulations thereunder (the "***FCPA***") or any anti-corruption or anti-bribery laws, export control laws or sanctions issued or promulgated by any Governmental Authority.  In the past five (5) years, each Seller, and, to the Sellers' Knowledge, their respective Affiliates, have conducted the business of the Sellers as it relates to the Acquired Interests in compliance with the FCPA and all anti-corruption and anti-bribery laws, export control laws and sanctions issued or promulgated by any Governmental Authority in all material respects.

4.27     <u>No Undisclosed Material Liabilities</u>.  Except as set forth on **<u>Schedule 4.27</u>**, there are no Liabilities of or relating to the business of the Sellers as it relates to the ownership or operation of the Acquired Interests that would constitute Assumed Liabilities (without taking into account any modifications requested by Sellers to the Co-Owned Assets, Other Assets or Assumed Liabilities after the Execution Date) that would be required by GAAP to be disclosed on financial statements of the Sellers as of the Execution Date, other than Liabilities (a) reflected or disclosed in the consolidated balance sheet of the Sellers for the fiscal quarter ended September 30, 2020 ("***Balance Sheet Date***"), (b) incurred in the ordinary course of business since the Balance Sheet Date (excluding any breaches of Law or any Lease, Easement or Contract), (c) disclosed in any materials filed with the Bankruptcy Court prior to the Execution Date in connection with the Bankruptcy Cases, (d) set forth on the Disclosure Schedules or (e) that are not material, individually or in the aggregate, to the Acquired Interests.

4.28    Absence of Certain Changes.

(a)    Since the Balance Sheet date through the Execution Date, (i) except as authorized by the Bankruptcy Court prior to the date hereof, including as expressly contemplated by any orders entered in the Bankruptcy Cases from and after the Petition Date through the date hereof, the Acquired Interests have been owned and operated in the ordinary course of business in all material respects and (ii) except as disclosed on the Financial Statements, there has not been a Material Adverse Effect.

(b)    From January 1, 2020 through the Execution Date, except as set forth on **Schedule 4.28(b)**, or as expressly contemplated by any orders entered in the Bankruptcy Cases from and after the Petition Date, the Sellers have not:  (A) purchased or otherwise acquired any material properties or assets (tangible or intangible) that constitute Acquired Interests or sold, leased, licensed, transferred, abandoned or otherwise disposed of any material assets that would otherwise have constituted Acquired Interests, except for (x) purchases of materials, and sales of Hydrocarbons and surplus inventory, in each case, in the ordinary course of business and (y) purchases or sales not contemplated by the preceding clause (x) that involved consideration of less than $5,000,000 individually, and $10,000,000 in the aggregate, (B) removed any material Inventory or other Acquired Interests from any of the properties or facilities that will transfer to Buyer as a result of the transactions contemplated hereby, other than in the ordinary course of business or (C) suffered any damage or destruction to or loss of any Acquired Interest whether or not covered by insurance where the value of such damage, destruction or loss (measured by cost to the Sellers of repairing or replacing the applicable Acquired Interest) was greater than $1,000,000.

4.29    Equipment and Fixed Assets.  Except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect, all Inventory is in good operating condition and state of repair for the purposes for which they are used by the Sellers in the operation of its business, normal wear and tear excepted.

4.30    Operatorship.  The Sellers have not received written notice of any vote to have the Sellers removed as the named operator of any of the Field Assets for which any Seller is currently designated as the operator and for which such vote is pending as of the Execution Date.  From September 30, 2013 through the Execution Date, no Seller has been removed as the named operator of any material Field Asset.

4.31    Joint Venture.

(a)    Fieldwood U.A. is an entity duly formed and validly existing under the Laws of the Netherlands.  To the Sellers' Knowledge, (i) Fieldwood Mexico is an entity duly formed and validly existing under the Laws of the Netherlands and (ii) each of the Subsidiaries of Fieldwood Mexico is an entity duly formed and validly existing under the Laws of its jurisdiction of incorporation.  Fieldwood U.A. is, and, to the Sellers' Knowledge, the Mexico JV is qualified to do business and is in good standing under the Laws of each jurisdiction where such qualification is necessary, except for those jurisdictions where failure to be so qualified would not, individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect.  Fieldwood U.A.

33

has, and, to the Sellers' Knowledge, the Mexico JV has all requisite power and authority required to own and operate their properties and to carry on their business as now conducted.

(b)     Prior to the date hereof, the Sellers have made available to Buyer all organizational documents and equity holder, stockholder, operating, membership, voting and other similar agreements of or relating to Fieldwood U.A. and, to the Sellers' Knowledge, the Mexico JV (the "***Organizational Documents***").  None of any Seller or, to the Sellers' Knowledge, any other Person, is in material breach of any Organizational Document.  Other than the Organizational Documents, there are no agreements to which any Seller is a party with respect to the voting of any JV Interests or Fieldwood U.A. Interests or which restrict the transfer of any JV Interests or Fieldwood U.A. Interests.

(c)     To the Sellers' Knowledge, Fieldwood Mexico has the following Subsidiaries, each of which are incorporated in Mexico: (1) Fieldwood Energy de Mexico, S. de R.L. de C.V.; (2) Fieldwood Energy E&P Mexico, S. de R.L. de C.V.; and (3) Fieldwood Energy Services de Mexico, S. de R.L. de C.V.  To the Sellers' Knowledge, as of the Execution Date, the equity interests of: (i) Fieldwood Mexico consists of (A) class A shares, (B) class B shares and (C) class D shares, (ii) Fieldwood Energy de Mexico, S. de R.L. de C.V. consists of two (2) equity interests (*partes sociales*), (iii) Fieldwood Energy E&P Mexico, S. de R.L. de C.V. consists of two (2) equity interests (*partes sociales*) and (iv) Fieldwood Energy Services de Mexico, S. de R.L. de C.V. consists of two (2) equity interests (*partes sociales*) (the equity interests of the Mexico JV collectively, the "***JV Shares***").  The equity interests of Fieldwood Mexico and each of its Subsidiaries that are held by the Sellers are listed on **Schedule 4.31(c)**.  To the Sellers' Knowledge, (x) the equity interests of Fieldwood Mexico, and (y) the issued and outstanding JV Shares are held of record by the Persons listed on **Schedule 4.31(c)**.

(d)     The outstanding equity interests of Fieldwood U.A., as of the Execution Date, consist of the Fieldwood U.A. Interests, and are held of record by the Persons listed on **Schedule 4.31(d)**.

(e)     All of the issued and outstanding Fieldwood U.A. Interests and, to the Sellers' Knowledge, JV Interests have been duly authorized and validly issued, and are fully paid and nonassessable and were not issued in violation of any rights of first refusal, preemptive rights or similar rights.  Except as set forth on **Schedule 4.31(c)** and **Schedule 4.31(d)**, (i) all of the outstanding securities or other similar ownership interests of any class or type of or in Fieldwood U.A. are held by Fieldwood Offshore LLC and Fieldwood, (ii) there are no outstanding securities or other similar ownership interests of any class or type of or in Fieldwood U.A. or, to the Sellers' Knowledge, the Mexico J.V. and (iii) there are no outstanding options, warrants, calls, purchase rights, subscription rights, exchange rights or other rights, convertible exercisable or exchangeable securities, "***phantom***" equity rights, stock appreciation rights, equity-based performance units, or similar agreements, commitments or undertakings of any kind pursuant to which Fieldwood U.A. or, to the Sellers' Knowledge, the Mexico JV is or may become obligated to (i) issue, deliver, transfer, sell or otherwise dispose of, or pay an amount relating to, any securities or other similar ownership interests of the Mexico JV or Fieldwood U.A., or any securities convertible into or exercisable or exchangeable for any securities or other ownership interests of the Mexico JV or Fieldwood U.A., or (ii) redeem, purchase or otherwise acquire any outstanding securities of the Mexico JV or Fieldwood U.A.

34

(f)     Fieldwood U.A. has no employees.  Fieldwood U.A. has (i) no assets other than the JV Interests held by Fieldwood U.A. and (ii) except as set forth on **Schedule 4.31(f)**, no non *de minimis* Liabilities other than those Liabilities incident to the ownership of the JV Interests held by Fieldwood U.A. (but not any Liabilities with respect to any breach of Law or Contract with respect to the ownership of such JV Interests).

4.32     <u>Plan of Merger</u>.  The FWE I Oil and Gas Properties (excluding the assets listed on Exhibit I-K of the Plan of Merger) include solely "Legacy Apache Properties" (as such term is defined in the Apache Term Sheet (as such term is defined in the Restructuring Support Agreement)) and no other asset.  As of the Execution Date, there is no asset listed on Exhibit I-K of the Plan of Merger that is related to, used or held for use in connection with or held as inventory in connection with, any Lease, Easement or Well listed on **Exhibit A**, **Exhibit B** or **Exhibit C**.

4.33     <u>Exhibit X-1</u>.  **Exhibit X-1** sets forth an estimate of estimated Working Capital Assets (excluding clause (b) of the definition thereof) and Working Capital Liabilities (excluding clause (b) of the definition thereof) assuming an Effective Time occurring on June 30, 2021, which was prepared at the direction of the Sellers.  To the Sellers' Knowledge, when prepared in February 2021, the information in **Exhibit X-1** reflected a reasonable estimate of Working Capital Assets (excluding clause (b) of the definition thereof) and Working Capital Liabilities (excluding clause (b) of the definition thereof) assuming an Effective Time occurring on June 30, 2021, subject to (a) the assumptions described therein and (b) omission of liabilities for accrued payroll. To the Sellers' Knowledge, (x) the Fieldwood Energy I Closing Accounts Receivable do not include or exclude assets that would have resulted in a material deviation of the net amount of the Working Capital Assets described in **Exhibit X-1** if such assets had been estimated and reflected in **Exhibit X-1** when prepared and (y) the Fieldwood Energy I Closing Accounts Payable do not include or exclude liabilities that would have resulted in a material deviation of the net amount of the Working Capital Liabilities described in **Exhibit X-1** if such liabilities had been estimated and reflected in **Exhibit X-1** when prepared (assuming that all, or substantially all, pre-petition payables are excluded from the calculation of Fieldwood Energy I Closing Accounts Payable as obligations satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order, including by being paid as Cure Costs), in the case of each of <u>clause (x)</u> and <u>clause (y)</u>, after taking into account duplication between the accounts described in **Exhibit X-1** and in the definitions of Working Capital Assets and Working Capital Liabilities, on the one hand, and Fieldwood Energy I Closing Accounts Receivable and Fieldwood Energy I Closing Accounts Payable, on the other hand.

## ARTICLE V
## BUYERS' REPRESENTATIONS

Each of Buyer and Buyer 2 represents and warrants to the Sellers, subject to the Disclosure Schedules (subject to <u>Section 12.15</u>), as follows:

5.1     <u>Organization; Standing; Capitalization</u>.

(a)     Each of Buyer and Buyer 2 is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware.  Each of Buyer and

Buyer 2 has all requisite power and authority and all governmental licenses, authorizations, permits, consents and approvals required to carry on its business as now conducted.

(b)     At the Closing, (i) all of the issued and outstanding **[membership interests]** of Buyer are held by [_____], a [_____] ("***Buyer Intermediate***"), (ii) all of the issued and outstanding **[membership interests]** of Buyer 2 are held by Buyer, (iii) all of the issued and outstanding **[membership interests]** of Buyer Intermediate are held by [_____], a [_____] ("***Buyer Parent***") and (iv) all of the issued and outstanding [membership interests] of Buyer Parent are held by [_____], a [_____] ("***Buyer Grandparent***").[6]

(c)     At the Closing, except as set forth on **Schedule 5.1(c)**, the authorized and issued equity interests of Buyer Grandparent (the "***Buyer Grandparent Equity Interests***") shall consist solely of the New Equity Interests, GUC Warrants and the New Warrants, in each case, issued pursuant to, and in accordance with, the Plan.  At the Closing, all of the issued and outstanding Buyer Grandparent Equity Interests, and all of the membership interests of Buyer Parent, Buyer, Buyer 2 and Buyer Intermediate, will have been duly authorized and validly issued, and will be fully paid and nonassessable and not issued in violation of any rights of first refusal, preemptive rights or similar rights.  As of the Closing Date, except as set forth in Section 5.1(b) and the first sentence of this Section 5.1(c), there are no issued and outstanding (i) securities or other similar ownership interests of any class or type of or in Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent or (ii) options, warrants, calls, purchase rights, subscription rights, exchange rights or other rights, convertible exercisable or exchangeable securities, "***phantom***" equity rights, stock appreciation rights, equity-based performance units, or similar agreements, commitments or undertakings of any kind pursuant to which Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent is or may become obligated to (A) issue, deliver, transfer, sell or otherwise dispose of, or pay an amount relating to, any securities or other similar ownership interests of Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent or any securities convertible into or exercisable or exchangeable for any securities or other ownership interests of Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent, or (B) redeem, purchase or otherwise acquire any outstanding securities of Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent.[7]

(d)     As of immediately following the Closing, the only Liabilities of Buyer, Buyer 2, Buyer Intermediate and Buyer Parent will be: (x) liabilities under the Exit Facilities (as defined in the Plan), (y) in the case of Buyer and Buyer 2, the Assumed Liabilities and (z) Liabilities incurred in connection with this Agreement or any of the Ancillary Documents or any of the transactions contemplated hereunder or thereunder (including with respect to any surety bonds).

5.2     Power.  Each of Buyer and Buyer 2 has the requisite power and authority to execute and deliver this Agreement and the Ancillary Documents to which it is a party and perform its obligations under this Agreement and such Ancillary Documents.

---

[6] Note to Draft:  To be confirmed.

[7] Note to Draft:  To be confirmed.

36

5.3     Non-Contravention.   Buyer's execution, delivery and performance of this Agreement and each Ancillary Document to which Buyer is (or, upon its execution and delivery, will be) a party and the performance of the transactions contemplated herein and therein will not (a) conflict with or result in a breach of any provisions of the organizational documents of Buyer or (b) assuming compliance with matters referred to in Section 5.7, violate any material Law applicable to Buyer.  Buyer 2's execution, delivery and performance of this Agreement and each Ancillary Document to which Buyer 2 is (or, upon its execution and delivery, will be) a party and the performance of the transactions contemplated herein and therein will not (x) conflict with or result in a breach of any provisions of the organizational documents of Buyer 2 or (y) assuming compliance with matters referred to in Section 5.7, violate any material Law applicable to Buyer 2.

5.4     Authorization and Enforceability.   Each of Buyer and Buyer 2 has full capacity, power and authority to enter into and perform this Agreement, each Ancillary Document to which Buyer and Buyer 2, as applicable, is (or, upon its execution and delivery, will be) a party and the transactions contemplated herein and therein.  The execution, delivery and performance by each of Buyer and Buyer 2 of this Agreement and each Ancillary Document to which Buyer and Buyer 2, as applicable, is (or, upon its execution and delivery, will be) a party have been duly and validly authorized and approved by all necessary organizational action of Buyer and Buyer 2, as applicable.  This Agreement and each Ancillary Document to which Buyer and Buyer 2 is (or, upon its execution and delivery will be) a party are, or upon their execution and delivery will be, the valid and binding obligations of Buyer and Buyer 2, as applicable, and enforceable against Buyer and Buyer 2, as applicable, in accordance with their respective terms, subject to the effects of bankruptcy, insolvency, reorganization, moratorium and similar Laws as well as to principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

5.5     Liability for Brokers' Fees.   Other than Rothschild & Co. US Inc. and Intrepid Partners, LLC, there is no investment banker, broker, finder or other intermediary which has been retained by or is authorized to act on behalf of Buyer or Buyer 2 who might be entitled to any fee, commission or expenses in connection with the transactions contemplated by this Agreement or any of the Ancillary Documents.

5.6     Litigation.   Neither any Claim by any Governmental Authority or other Person nor any legal, administrative or arbitration proceeding is pending or, to Buyer's Knowledge, threatened against Buyer or Buyer 2 which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

5.7     Governmental and Third Person Consents.  Except as set forth on **Schedule 5.7** no Governmental Approval is required to authorize, or is otherwise required in connection with, (a) Buyer's or Buyer 2's valid execution and delivery of this Agreement or any Ancillary Document to which Buyer or Buyer 2 is (or, upon its execution and delivery, will be) a party, (b) Buyer's or Buyer 2's performance of their respective obligations hereunder or thereunder or (c) the consummation of the transactions contemplated by this Agreement and the Ancillary Documents.

5.8 <u>Financial Capability</u>. At or prior to the Closing, Buyer has provided to the Sellers a true and complete copy of the [Direction Letter.][8]

5.9 <u>Qualification</u>. At the Closing, Buyer will have met the BOEM Qualifications.

5.10 <u>Bankruptcy</u>. There are no bankruptcy, reorganization, receivership or arrangement proceedings pending against or to Buyer's Knowledge, threatened against Buyer or Buyer 2.

5.11 <u>Investor Status; Investigation</u>.

(a) To the extent any Acquired Interests constitute securities, the Acquired Interests are being acquired by Buyer and Buyer 2 for investment purposes only, for Buyer's and Buyer 2's own account and not with a view to, or for resale in connection with, any distribution thereof in violation of the 1933 Act.

(b) Each of Buyer and Buyer 2 acknowledges that, to the extent any Acquired Interests constitute securities, the sale of the Acquired Interests has not been registered under the 1933 Act or any state or foreign securities laws and that the Acquired Interests, to the extent constituting securities, may not be sold, transferred, offered for sale, pledged, hypothecated or otherwise disposed of unless such transfer, sale, assignment, pledge, hypothecation or other disposition is pursuant to the terms of an effective registration statement under the 1933 Act and registered under any applicable state or foreign securities laws or pursuant to an exemption from registration under the 1933 Act and any applicable state or foreign securities laws.

(c) Each of Buyer and Buyer 2 has such expertise, knowledge and sophistication in financial and business matters generally that it is capable of evaluating, and has evaluated, the merits and economic risks of its investment in the Acquired Interests. Each of Buyer and Buyer 2 is knowledgeable of the oil and gas business and of the usual and customary practices of oil and gas producers, including those in the areas where the Acquired Interests are located. Further, each of Buyer and Buyer 2 is capable of making such investigation, inspection, review and evaluation of the Acquired Interests as a prudent purchaser would deem appropriate under the circumstances including with respect to all matters relating to the Acquired Interests, their value, operation and suitability.

(d) Each of Buyer and Buyer 2 has had the opportunity to examine all aspects of the Acquired Interests that Buyer and Buyer 2 have deemed relevant and has had access to all information requested by Buyer or Buyer 2 with respect to the Acquired Interests in order to enter into this Agreement. In connection with the transactions contemplated hereby, each of Buyer and Buyer 2 has had the opportunity to ask such questions of, and has received sufficient answers from, the representatives of the Sellers and obtain such additional information about the Acquired Interests as each of Buyer and Buyer 2 deems necessary to enter into this Agreement.

(e) Each of Buyer and Buyer 2 confirms, acknowledges and agrees that Buyer and Buyer 2, as applicable, is relying entirely upon the representations and warranties of the Sellers in this Agreement, any certificates delivered hereunder and any Ancillary Document, as well as

---

[8] <u>Note to Draft</u>: Subject to Agent feedback (i.e., whether 1 letter or 2 letters).

Buyer's and Buyer 2's own investigations and inspections of the books, records and assets of the Sellers, including the Acquired Interests, prior to the execution of this Agreement in entering into this Agreement and proceeding with the transactions on the terms as set forth herein. Each of Buyer and Buyer 2 acknowledges and agrees that, other than the express representations and warranties of the Sellers set forth in Article IV, in the certificates delivered by the Sellers at Closing, or any Ancillary Document, any description of the Sellers, their businesses, operations and assets (including the Acquired Interests) in this Agreement, the Disclosure Schedules or any Ancillary Document is for the sole purpose of identification only and no representation, warranty or condition is or will be given by the Sellers in respect of the accuracy of any description. In deciding to enter into this Agreement, and to consummate the transactions contemplated hereby, other than the express representations and warranties of the Sellers set forth in Article IV, any certificates delivered hereunder and any Ancillary Document, each of Buyer and Buyer 2 has relied solely upon its own knowledge, investigation, judgment and analysis and not on any other disclosure or representation made by the Sellers or the Sellers' representatives. Nothing herein shall limit Buyer's or Buyer 2's remedies in the event of Fraud, except that Buyer and Buyer 2 shall have no remedy in the event of Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries.

5.12    No Other Representations.  No Seller nor any other Person (on behalf of any Seller or otherwise) has made or is making any representation or warranty whatsoever, express or implied, at law or in equity, with respect to the Sellers, the Acquired Interests, this Agreement or the transactions contemplated by this Agreement other than the representations and warranties expressly set forth in Article IV (as modified by the Disclosure Schedules), the certificates delivered hereunder or any Ancillary Document, and neither Buyer nor Buyer 2 is relying on and has not relied on any representation or warranty other than those representations or warranties set forth in Article IV (as modified by the Disclosure Schedules), the certificates delivered hereunder or any Ancillary Document and any reliance by Buyer or Buyer 2 on any representation or warranty other than those representations and warranties set forth in Article IV (as modified by the Disclosure Schedules), the certificates delivered hereunder or any Ancillary Document is hereby expressly disclaimed.  Nothing herein shall limit Buyer's or Buyer 2's remedies in the event of Fraud, except that Buyer and Buyer 2 shall have no remedy in the event of Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries.

### ARTICLE VI
### COVENANTS AND AGREEMENTS

6.1    Covenants and Agreements of the Sellers.  The Sellers covenant and agree that, during the Interim Period (or, if earlier, until termination of this Agreement), except (u) as otherwise expressly required under this Agreement or any Ancillary Document, (v) as required by any applicable Law or Governmental Authority (including the Bankruptcy Code, the Bankruptcy Court and any actions required to be taken (or not taken) by the Sellers in order to comply with any orders of the Bankruptcy Court), (w) to the extent related solely to Excluded Assets and/or Retained Liabilities, (x) for renewal of insurance coverage in the ordinary course of business, (y) for emergency operations to address any emergency that threatens human life, safety or the environment; *provided* that the Sellers will provide notice to Buyer of any such emergency operation prior to taking such action if practicable and, otherwise, as soon as reasonably practicable

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

thereafter or (z) otherwise with Buyer's prior written consent (not to be unreasonably withheld, conditioned or delayed):

(a)     except as set forth on **Schedule 6.1(a)**, each Seller shall and shall cause its Affiliates to:

(i)     carry on the business of the Sellers as it relates to the Acquired Interests in the ordinary course of business consistent with past practice and use commercially reasonable efforts to maintain, preserve and protect the Acquired Interests in the condition in which they exist on the Execution Date, except for ordinary wear and tear and except for replacements, modifications or maintenance in the ordinary course of business consistent with past practice;

(ii)     maintain and operate as a reasonably prudent operator in the ordinary course of business the Field Assets operated by the Sellers as of the Execution Date and maintain the Office Assets as a reasonably prudent lessee and owner;

(iii)     use commercially reasonable efforts to maintain their relationships with, and preserve for the business of the Sellers as it relates to the Acquired Interests, and preserve the goodwill of, their key suppliers and customers; *provided*, *however*, that (x) this clause (iii) will not restrict the Sellers from taking any action deemed necessary, prudent or advisable in the business judgment of the Sellers in connection with the Bankruptcy Cases, including with respect to any claim of any suppliers or customers of the Sellers that is subject to the Bankruptcy Cases, and (y) prior to taking any action (other than such action required by the Plan or an order of the Bankruptcy Court) outside the ordinary course of business that the Sellers reasonably believe will adversely affect their relationships with their key suppliers and customers, the Sellers will consult with Buyer prior to taking any such action;

(iv)     pay or cause to be paid, when due, all Taxes, Lease Burdens and development and operating expenses and other payments, in each case consistent with past practice, except (A) royalties held in suspense in good faith and (B) expenses or royalties being contested in good faith;

(v)     maintain its books, accounts and records consistent with past practice;

(vi)     pay all post-petition trade payables and use commercially reasonable efforts to collect accounts receivable, as they related to the Acquired Interests after the Petition Date, in each case in the ordinary course of business consistent with past practice but, in the case of post-petition trade payables, in no event later than the due date thereof, unless being disputed in good faith (but, for the avoidance of doubt, subject to applicable orders of the Bankruptcy Court);

(vii)     provide Buyer (promptly but in no event later than three (3) Business Days after the Sellers' receipt thereof) with copies of any written notice received from any Third Person with respect to (A) any proposed operations on any Field Asset or

(B) any Claim relating to any Acquired Interests (in the case of each of <u>clauses (A)</u> and <u>(B)</u>, where the Sellers' Liability (or potential Liability) is in excess of $1,000,000);

(viii)    provide Buyer with copies of any material correspondence received from any Governmental Authority with respect to any Acquired Interests as soon as reasonably practicable, but in no event later than two (2) Business Days after the Sellers' receipt thereof; and

(ix)    within ten (10) Business Days following the execution of this Agreement, deliver to Buyer a true and complete list of the names, titles, hire date, location, whether full- or part-time, whether active or on leave (and, if on leave, the nature of the leave and the expected return date), whether exempt from the Fair Labor Standards Act of 1938, annual salary or wage rate, most recent annual bonus received, current annual bonus opportunity for all Seller Employees, which list shall be updated not less than ten (10) Business Days prior to the Closing to reflect the hiring, resignation or termination of any Seller Employee; and

(b)    except as set forth on **<u>Schedule 6.1(b)</u>**, each Seller shall not and shall cause its Affiliates not to:

(i)    modify in any material respect its now existing credit, collection or payment policies, procedures or practices as they relate to the Acquired Interests, including accelerating collections of receivables or failing to pay or delaying payment of payables in a manner inconsistent with its now existing practices;

(ii)    remove any Acquired Interest from any real property or other location of the Sellers' business such that such Acquired Interest is no longer located within any property of the Sellers' business that is an Acquired Interest, except for sales of inventory in the ordinary course of business;

(iii)    subject to, and without limiting, the Sellers' rights pursuant to <u>Section 6.4</u>, transfer, convey, sell, abandon or otherwise dispose of any material Acquired Interests (other than sales of Hydrocarbons in the ordinary course of business consistent with past practice) or any interest in any of the Leases;

(iv)    create any Encumbrance on any Acquired Interests other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances) or Encumbrances that will be released prior to Closing (including if released pursuant to the Confirmation Order);

(v)    commence, propose, commit or agree to participate in any single operation with respect to any Field Asset with an anticipated cost in excess of $1,000,000;

(vi)    amend, modify, renew or terminate any Material Contract or enter into any Contract that would be an Material Contract if it existed on the date hereof if such Material Contract would be an Assigned Contract;

41

(vii)     (A) hire any officers or other senior executive employees or terminate any such officer or employee (other than for "cause"); or (B) except in the ordinary course of business consistent with past practice, hire any other employees or terminate any such other employee (other than for "cause");

(viii)     (A) increase the annual rate of base salary or any target bonus opportunity of any Seller Employee, except in the ordinary course of business consistent with past practice and not in excess of 3% for any Seller Employee; (B) pay any bonus, benefit, or other direct or indirect incentive compensation (other than any such payments authorized pursuant to any first or second day orders in the Bankruptcy Cases); (C) award any equity or equity-based compensation awards (whether phantom or equity) with respect to the equity of any Seller or any of its Affiliates; (D) modify, amend or terminate any Employee Plan; (E) enter into or modify any employment, compensation, severance, non-competition, or similar Contract (or amend any such Contract) to which any Seller or any of its Affiliates is a party; or (F) adopt any new severance pay, termination pay, deferred compensation, bonus, or other employee benefit plan, agreement, program, practice, arrangement or policy with respect to Seller Employees that would be an Employee Plan if it existed on the date hereof (including any employment agreement, severance agreement, change in control agreement, or transaction or retention bonus agreements), except, in the case of each of clauses (A) through (F), (1) to the extent set forth in any order of the Bankruptcy Court or as required by applicable Law; or (2) to the extent required pursuant to the terms of any Employee Plan, as in effect on the date hereof;

(ix)     relinquish its position as operator to any Person other than Buyer or Buyer 2 with respect to any Acquired Interest operated by the Sellers;

(x)     waive, release, settle or compromise any material Claim or proceeding relating to any Acquired Interest;

(xi)     subject to, and without limiting, the Sellers' rights pursuant to Section 6.4, enter into any merger or divisive merger, or liquidate or dissolve;

(xii)     sell, lease, license (except for non-exclusive licenses granted in the ordinary course of business) or otherwise transfer or dispose of, abandon or permit to lapse, fail to take any action necessary to maintain, enforce or protect, or create or incur any Encumbrance (other than Permitted Encumbrances) on, any material Owned Intellectual Property;

(xiii)     cause or allow any of its current directors and officers liability, property or casualty insurance policies that apply to any of the Acquired Interests or that apply to the business of the Sellers as it relates to the Acquired Interests to be canceled or terminated or any of the coverage thereunder to lapse unless, simultaneously with such termination, cancellation or lapse, replacement policies providing coverage equal to or greater than the coverage under the canceled, terminated or lapsed policies are in full force and effect;

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

(xiv)   make, change or revoke any material Tax election in respect of the Acquired Interests, settle or otherwise compromise any claim relating to Taxes of Fieldwood U.A. or with respect to the Acquired Interests, enter into any closing agreement or similar agreement relating to Taxes of Fieldwood U.A. or the Acquired Interests, surrender any right to claim a Tax refund, offset or other reduction in Tax Liability of Fieldwood U.A. or with respect to the Acquired Interests, or request any ruling or similar guidance with respect to Taxes of Fieldwood U.A. or with respect to the Acquired Interests; or

(xv)   enter into any Contract or other commitment to take, or authorize the taking of or resolve to take, any actions prohibited by this Section 6.1(b).

6.2   Casualty Event.  The Sellers shall give Buyer prompt written notice of any Casualty Event that occurs with respect to any Acquired Interest during the Interim Period, together with a description of the applicable insurance coverage and an estimate of the Sellers' exposure with respect to such Casualty Event.  If the damaged or taken Acquired Interest is not repaired or replaced on or before the Closing Date, the Sellers shall provide to Buyer an assignment of all of the Sellers' right, title and interest in and to all insurance proceeds and recoveries from Third Persons payable, in each case with respect to the Acquired Interest damaged or taken as the result of such Casualty Event.

6.3   Press Releases.  Except as required in the Bankruptcy Cases or by applicable Law (a) each Party shall consult with the other before issuing any press release or otherwise making any public statement with respect to the transactions contemplated by this Agreement and (b) no Party shall issue any press release or make any such public statement before obtaining the other Party's prior written approval, which shall not be unreasonably withheld, conditioned or delayed. To the extent such release or public statement is required by Law, the Party intending to make such release or public statement (i) shall give the other Party the opportunity (within reasonable time before any applicable deadline) to review and comment upon such release or public statement and (ii) shall consider in good faith all reasonable comments thereto received sufficiently in advance of any applicable deadline.

6.4   Solicitation; Other Offers.

(a)   Each of Buyer and Buyer 2 acknowledges and agrees that from and after the Execution Date through entry of the Confirmation Order, the Sellers may take any action (including entering into any agreement or letter-of-intent with respect thereto) to cause, promote, assist with or enter into an Alternative Transaction.

(b)   Without limiting the foregoing, the Sellers may, directly or indirectly through its Representatives, (i) engage in discussions and negotiations regarding an Alternative Transaction with any one or more Third Persons as potential bidders (each, an "*Alternative Bidder*") in connection with the solicitation of one or more proposals relating to an Alternative Transaction and (ii) furnish to any Alternative Bidder who has signed a confidentiality agreement and has made a request therefor any public or non-public information relating to the Sellers and afford to any such Alternative Bidder access to any properties, Acquired Interests, books or records of the Sellers or the business of the Sellers; *provided* that the Sellers shall not actively solicit

proposals relating to an Alternative Transaction unless the failure to do so would be contrary to or inconsistent with applicable fiduciary duties.

6.5     Regulatory Matters; Cooperation.

(a)     The Sellers, on one hand, and Buyer, on the other hand, shall cooperate, and reasonably determine upon the advice of counsel within fifteen (15) Business Days of the Execution Date, other than the notifications required to be filed under the HSR Act, any notifications, filings, consents, clearances, waivers, waiting periods and approvals, if any, required under any applicable Antitrust Law in connection with the transactions contemplated by this Agreement (including by any persons that will hold, directly or indirectly, any equity interest in Buyer as of or immediately after the Closing) (the "***Foreign Antitrust Approvals***"). Subject to Section 6.5(c), as soon as reasonably practicable (and, in any event, within ten (10) Business Days, or a later date as agreed by the Parties) after the Execution Date, the Sellers, on the one hand, and Buyer, on the other hand, shall each prepare and file, or cause to be prepared and filed, any notifications required to be filed under the HSR Act with the United States Federal Trade Commission, the Antitrust Division of the United States Department of Justice and any Foreign Antitrust Approvals, and request early termination of the waiting periods applicable to such notifications. Subject to Section 6.5(c), Buyer, on the one hand, and the Sellers, on the other hand, shall promptly respond to any requests for additional information or documentary materials in connection with such filings and shall take all commercially reasonable actions necessary to cause the waiting periods applicable to such notifications to terminate or expire at the earliest practicable date after the date of filing. The Sellers shall be responsible for payment of the applicable filing fee under the HSR Act or Foreign Antitrust Approvals, and each Party shall be responsible for any other payment of its own respective costs and expenses incurred by such Party (including attorneys' fees and other legal fees and expenses) associated with the preparation of its portion of any antitrust filings.

(b)     Subject to the provisions of Section 6.5(c) and Section 6.7, including the limitations set forth therein, the Sellers, on the one hand, and Buyer, on the other hand, shall use reasonable best efforts to obtain, at the earliest practicable date, all necessary Governmental Approvals and all necessary registrations, declarations and filings (including registrations, declarations and filings with Governmental Authorities and any change in control requirements relating to any consent decrees, decisions, judgments, settlements, consent orders, stipulations, decrees or similar orders relating to the Acquired Interests, if any), in each case for the consummation of the transactions contemplated by this Agreement and the Ancillary Documents, and use its reasonable best efforts to avoid any Claim by any Governmental Authority relating to the transactions contemplated by this Agreement and the Ancillary Documents. Subject to the provisions of Section 6.5(c) and Section 6.7, including the limitations set forth therein, in addition to such actions, the Sellers, on the one hand, and Buyer, on the other hand, shall use reasonable best efforts to (i) take all acts necessary in connection with meeting with any Governmental Authority regarding the transferring of the Permits included in the Acquired Interests and (ii) execute and deliver any additional instruments reasonably necessary to consummate the transactions contemplated hereby and to fully carry out the purposes of this Agreement.

(c)     The Sellers, on the one hand, and Buyer, on the other hand, (i) to the extent permissible, shall promptly inform each other of any material communication from any

44

Governmental Authority concerning this Agreement, the transactions contemplated hereby, and any filing, notification or request for approval by any Governmental Authority and (ii) to the extent permissible, shall permit the other to review in advance any proposed written or material oral communication or information submitted to any such Governmental Authority in response thereto. In addition, none of the Parties shall agree to participate in any meeting with any Governmental Authority in respect of any filings, investigation or other inquiry with respect to this Agreement or the transactions contemplated hereby, unless, to the extent permissible, such Party consults with the other Parties in advance and, to the extent permitted by any such Governmental Authority, gives the other Party the opportunity to attend and participate thereat, in each case to the maximum extent reasonably practicable. Subject to restrictions under any Law, each of Buyer, on the one hand, and the Sellers, on the other hand, shall furnish the other with copies of all correspondence, filings and communications (and memoranda setting forth the substance thereof) between it and its Affiliates and their respective Representatives on the one hand, and the Governmental Authority or members of its staff on the other hand, with respect to this Agreement, the transactions contemplated hereby (excluding documents and communications which are subject to preexisting confidentiality agreements or to the attorney-client privilege or work product doctrine or which refer to valuation of the Acquired Interests) or any such filing, notification or request for approval. Each Party shall also furnish the other Party with such necessary information and assistance as such other Party and its Affiliates may reasonably request in connection with their preparation of necessary filings, registration or submissions of information to the Governmental Authority in connection with this Agreement, the transactions contemplated hereby and any such filing, notification or request for approval. Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall require Buyer or the Sellers, or any of their respective Affiliates to (and none of any Seller or any of its Affiliates shall, without the prior written consent of Buyer), in performing their respective obligations under this <u>Section 6.5</u>, (i) enter into any settlement, undertaking, consent decree, stipulation or agreement with any Governmental Authority in connection with the transactions contemplated hereby, (ii) divest or otherwise hold separate (including by establishing a trust or otherwise), or take any other action (or otherwise agree to do any of the foregoing) with respect to the Acquired Interests or any assets or business of Buyer or any of its Affiliates or (iii) defend any Claim relating to the transactions contemplated by this Agreement or any Ancillary Document, except, in the case of each of <u>clauses (i)</u> through <u>(iii)</u>, actions expressly contemplated to be taken by the Sellers in accordance with the Plan.

(d)     Notwithstanding anything to the contrary contained in this Agreement, Buyer shall, on behalf of the Parties, control and lead all communications and strategy relating to the Antitrust Laws (*provided* that the Sellers are not constrained from complying with applicable Law), *provided*, further, that the Parties shall consult and cooperate with one another, and consider in good faith the views of one another, regarding the form and content of any analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of either Party in connection with proceedings under or relating to any Antitrust Law prior to their submission.

6.6    <u>Bankruptcy Court Matters</u>.

(a)     <u>Qualified Bids</u>.  Subject to the terms of the Disclosure Statement Order, if one or more Qualified Bid(s) (as such term is defined in the Disclosure Statement Order) is

received by the Sellers on or before the Bid Deadline (as such term is defined in the Disclosure Statement Order), no later than three (3) Business Days after the Bid Deadline (as such term is defined in the Disclosure Statement Order), the Sellers shall file with the Bankruptcy Court a notice of receipt of such Qualified Bid(s) (as such term is defined in the Disclosure Statement Order) and the Sellers' proposed procedures for selecting the highest or otherwise best bid, including, but not limited to, any procedures for submitting revised bids and/or holding an auction to the extent the Sellers determine holding an auction will maximize value to the Sellers' estate.[9]

(b)    Confirmation Order.   The Sellers and Buyer shall use commercially reasonable efforts to obtain entry by the Bankruptcy Court of a Confirmation Order by no later than May 10, 2021.  The Confirmation Order shall be in form and substance acceptable to the Sellers and Buyer.  The Sellers acknowledge and agree, and the Confirmation Order shall provide that, on the Closing Date and concurrently with the Closing, all then existing or thereafter arising Liabilities and Encumbrances of, against or created by the Sellers or their bankruptcy estates, shall be fully released from and with respect to the Acquired Interests, which shall be transferred to Buyer free and clear of all Encumbrances (other than Permitted Encumbrances (except for the Fieldwood U.A. Interests and the JV Interests, which shall not have any Permitted Encumbrances)) and Retained Liabilities and Buyer shall at Closing be required to assume the Assumed Liabilities as set forth hereunder.  The Sellers and Buyer covenant and agree that if the Confirmation Order is entered, they will pursue the transactions contemplated by the Confirmation Order and in this Agreement.  The Sellers shall use commercially reasonable efforts to cause the Confirmation Order to provide either that (a) the Sellers have complied with the requirements of any applicable Law relating to bulk sales and transfer or (b) compliance with applicable Law relating to bulk sales and transfers is not necessary or appropriate under the circumstances.  Buyer agrees that it will take commercially reasonable efforts to take such actions as are reasonably requested by the Sellers to assist in obtaining entry of the Confirmation Order.

(c)    Reasonable Efforts.  The Sellers shall use commercially reasonable efforts to (i) obtain entry of the Disclosure Statement Order, (ii) promptly commence solicitation on the Plan upon entry of the Disclosure Statement Order, and (iii) (A) facilitate the solicitation, confirmation and consummation of the Plan and the transactions contemplated hereby, (B) obtain entry of the Confirmation Order and (C) consummate the Plan.

(d)    Bankruptcy Filings.

(i)    During the Interim Period, the Sellers shall deliver to Buyer copies of all pleadings, motions, notices, statements, schedules, applications, reports and other papers that relate, in whole or in part, to this Agreement and the transactions contemplated hereby at least two (2) Business Days prior to the date when the Sellers intend to file any such pleading or other document (*provided,* that if delivery of such motions, orders or materials (other than the Plan, the disclosure statement, a disclosure statement order, the Confirmation Order or adequate protection order) at least two (2) Business Days in advance is not reasonably practicable, such motion, order or material shall be delivered as soon as reasonably practicable prior to filing) for Buyer's prior review and comment, and the

---

[9] Note to Draft: Under discussion with the Debtors.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

Sellers shall consult in good faith with Buyer regarding the form and substance of such filings to the extent they are related to the Acquired Interests, any Assumed Liabilities or the transactions contemplated hereby, including any of Buyer's rights or obligations hereunder. The Parties shall use commercially reasonable efforts to consult and cooperate regarding (i) any such pleadings, motions, notices, statements, schedules, applications, reports or other papers, (ii) any discovery taken in connection with seeking entry of the Confirmation Order (including any depositions) and (iii) any hearings relating to the Confirmation Order, including the submission of any evidence, including witness testimony, in connection with such hearing. The Sellers agree to diligently prosecute the entry of the Confirmation Order as provided herein. During the Interim Period (subject to Section 6.4), the Sellers shall not take any action that is intended to (or is reasonably likely to), or fail to take any action the intent (or reasonably likely result) of which failure to act is to, result in the reversal, voiding, modification or staying of the Confirmation Order, or this Agreement.

(ii)     In the event the entry of the Disclosure Statement Order, the Confirmation Order, or any other order reasonably necessary in connection with the transactions contemplated by this Agreement is appealed, the Sellers shall use commercially reasonable efforts to defend such appeal.

(e)     Cooperation with Plan Administrator. In accordance with the terms of the Plan, the Parties agree that they shall use commercially reasonable efforts to cooperate with the Plan Administrator (as defined in the Plan) and each other, in relation to the Parties' respective activities and obligations under the Plan, including by providing reasonable, good-faith access to personnel, systems, and books and records and their respective personnel and consulting with each other to avoid duplication of effort.

6.7     Assumption and Assignment of Contracts.

(a)     No later than twenty eight (28) days prior to the Designation Deadline, the Sellers shall provide to Buyer a list of all 365 Contracts and the Sellers' good faith estimate of Cure Costs associated with each such 365 Contract (the "*365 Schedule*"). The Sellers may amend or supplement the 365 Schedule from time to time to add or remove any 365 Contract inadvertently included or excluded from such 365 Schedule or to amend, based on the Sellers' good faith calculation of the Cure Costs, any proposed Cure Costs set forth in such 365 Schedule and shall provide Buyer written notice thereof. No later than fourteen (14) days prior to the Designation Deadline, Buyer shall designate in writing which 365 Contracts from the 365 Schedule Buyer desires to be assumed by the Sellers and assigned to Buyer (collectively, and as further modified by Buyer pursuant to the provisions of this Section 6.7, the "*Assigned 365 Contracts*" and Buyer's designated list of Assigned 365 Contracts, the "*Assigned 365 Contracts List*").

(b)     Promptly following the receipt of Buyer's initial designation of the Assigned 365 Contracts pursuant to Section 6.7(a) (to the extent not previously filed) and by no later than the Designation Deadline, the Sellers shall file the Assigned 365 Contracts List with the Bankruptcy Court and deliver a written notice of the proposed assignments of the Assigned 365 Contracts and the proposed Cure Costs for each Assigned 365 Contract (consistent with the Sellers' good faith estimates set forth on the 365 Schedule) to all non-debtor parties of the

47

Assigned 365 Contracts, which notice shall notify each non-debtor party to such Assigned 365 Contract of (i) the proposed Cure Cost for such Assigned 365 Contract and (ii) an objection deadline for such non-debtor party to object to the proposed assumption and assignment and proposed Cure Cost.

(c)     Notwithstanding anything herein to the contrary, Buyer may, from time to time, in its sole discretion revise the Assigned 365 Contracts List at any time prior to 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the Confirmation Hearing (or such other time as agreed in writing between the Sellers and the applicable counterparty to a 365 Contract) (the "***Designation Deadline***") by (x) subtracting therefrom any Assigned 365 Contract, and any 365 Contract so removed shall no longer be considered Assigned 365 Contracts for purposes of this Agreement or (y) adding thereto any 365 Contract, and any 365 Contract so added will be an Assigned 365 Contract for the purposes of this Agreement; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the rescheduled or continued Confirmation Hearing, and this provision shall apply in the case of any and all subsequent adjournments and continuances of the Confirmation Hearing.  The Sellers shall promptly file on the docket in the Bankruptcy Cases and serve on the affected non-Debtor counterparty(ies) a notice of any actions taken by Buyer pursuant to the preceding sentence pursuant to and in accordance with the Disclosure Statement Order.  Subject to the preceding sentences, all 365 Contracts of the Sellers that are listed on the 365 Schedule and which Buyer does not designate in writing for assumption and assignment shall not be considered Assigned 365 Contracts or Acquired Interests and shall automatically be deemed "***Excluded Contracts***;" *provided, however,* that Buyer may not exclude from the Assigned 365 Contracts any 365 Contract that is set forth on **Schedule 6.7(g)**.

(d)     Each of each Seller and Buyer, as applicable, shall use commercially reasonable efforts to assign or cause to be assigned, the Assigned 365 Contracts to Buyer, including, if necessary, taking all actions required by the Bankruptcy Court to obtain a Final Order containing a finding that the proposed assumption and assignment of the Assigned 365 Contract to Buyer satisfies all applicable requirements of Section 365 of the Bankruptcy Code.  If the Sellers are successful in effecting such assumption as of or before the Closing, such Lease, Easement or Contract shall become an Assigned 365 Contract and transferred and conveyed to Buyer.

(e)     On the Closing Date, immediately following payment by Buyer of the Cash Portion, the Sellers shall pay all undisputed Cure Costs with respect to the Assigned 365 Contracts.

(f)     Buyer shall provide adequate assurance of future performance of all of the Assigned 365 Contracts so that all Assigned 365 Contracts can be assumed by the Sellers and assigned to Buyer at the Closing in accordance with the provisions of Section 365 of the Bankruptcy Code and this Agreement, and Buyer acknowledges that such cooperation may require Buyer to provide reasonably necessary information regarding Buyer and its Subsidiaries, as well as a commitment of performance by Buyer and/or its Subsidiaries with respect to the Assigned 365 Contracts from and after the Closing to demonstrate adequate assurance of the performance of the Assigned 365 Contracts, and the Sellers' obligation to assume and assign such Assigned 365 Contracts is subject to Buyer providing such adequate assurance of future performance.

(g)     Notwithstanding anything in this Agreement to the contrary, including Section 6.7(c) above, the Contracts set forth on **Schedule 6.7(g)** shall at all times constitute Assigned 365 Contracts and shall be assigned to Buyer at the Closing.[10]

(h)     Notwithstanding anything to the contrary in this Agreement, no Seller (i) shall agree to, settle or compromise any dispute with respect to, the amount of Cure Costs in respect of any Assigned 365 Contract without the prior written approval of Buyer in its sole discretion or (ii) shall, without the prior written consent of Buyer in its sole discretion, reject or move to reject (A) any 365 Contracts prior to the Designation Deadline or (B) any Assigned 365 Contract (whether before or after the Designation Deadline).

(i)     Notwithstanding anything in this Section 6.7 to the contrary, Buyer may not, except with the prior written consent of the Sellers, designate any 365 Contract as an Assigned 365 Contract to the extent that such 365 Contract is identified on Exhibit I-F of the Plan of Merger (except to the extent constituting Applicable Shared Asset Interests).

6.8     Employee Matters.

(a)     Offers and Terms of Employment.  All Seller Employees (including those on leave of absence or disability) identified by the Sellers on the updated list provided pursuant to Section 6.1(a)(vii) shall be offered employment by Buyer or its Affiliate no later than five (5) days prior to the Closing Date, in each case, such employment to be effective as of the Closing Date; *provided*, *however*, that neither Buyer nor any of its Affiliates shall be required to make an offer of employment to any Section 6.8 Employee unless Buyer and Seller mutually agree that Buyer shall offer employment to such Section 6.8 Employee.  Each offer of employment made by Buyer or its Affiliates to a Seller Employee, as applicable, shall be effective as of the Closing Date and shall contain terms and conditions of employment substantially comparable in the aggregate to the terms and conditions of employment provided by the Sellers immediately prior to the Closing Date with respect to such Seller Employee, *provided* each such offer shall include (i) at least the same level of base salary or wage rate (based on pre-COVID-19 salary or wage rate without regard to any reduction), (ii) for substantially all such Seller Employees, at least the same annual cash incentive compensation opportunity and (iii) substantially similar employee benefits.  For purposes of this Agreement, any individual who becomes employed by Buyer in accordance with this Section 6.8 is referred to as a "***Transferred Employee***."

(b)     Liabilities.  Effective as of the Closing, (i) Buyer shall, or shall cause an Affiliate of Buyer to, assume or retain, as the case may be, any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the employment or services, or termination of employment services, of any Transferred Employee, accrued and unpaid bonuses, accrued and unused vacation, sick days and paid time off and any workers' compensation claims against any Seller or its Affiliates, irrespective of when such claims are made (and Buyer shall or shall cause an Affiliate of Buyer to pay the applicable Transferred Employees the unpaid portion of any Transferred Employee's accrued annual bonus for the calendar year in which the Closing occurs

---

[10] Note to Draft: Schedule 6.7(g) to include the McCarroll agreements and, subject to Buyer's review of Schedule 6.7(g), any agreements related to the Co-Owned Assets that are required to be conveyed in connection with the assignment of the Co-Owned Assets.

at the time such bonuses are paid to such Transferred Employees in the ordinary course consistent with past practice) and (ii) the Sellers shall, or shall cause their Affiliates to assign to Buyer, and Buyer shall, or shall cause an Affiliate of Buyer, to assume, (A) sponsorship of the Fieldwood Energy Health & Welfare Benefit Plan, including any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the operation of the Fieldwood Energy Health & Welfare Benefit Plan, and Buyer shall be, or shall cause an Affiliate to be, responsible for all claims whenever incurred under the Fieldwood Energy Health & Welfare Benefit Plan, including any claims incurred prior to the Closing but not yet reported and any claims reported prior to Closing but which have not yet been processed, (B) sponsorship of the Fieldwood Energy LLC 401(k) Plan, including any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the operation of the Fieldwood Energy LLC 401(k) Plan, and (C) each other Assumed Employee Plan, including any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the operation of each Assumed Employee Plan; *provided* that except as otherwise set forth in Section 6.8(c), in no event shall Buyer or any of its Affiliates assume any Liabilities relating to bonuses, severance or workers' compensation claims for any current or former employee of any Seller or any of its Affiliates other than a Transferred Employee and all such Liabilities shall be Retained Liabilities.

(c)    Severance.  With respect to any Seller Employee who Sellers and Buyer mutually agree shall not be offered employment by Buyer and who shall not become a Transferred Employee, Sellers shall provide severance payments (subject to executing a general employment release in favor of Sellers and Buyer) in such amount as mutually determined by Sellers and Buyer, which amount shall in no event exceed two (2) months of base salary ("**Employee Severance**"). Employee Severance shall be paid by Sellers to each such Seller Employee in the ordinary course through the Closing.  Buyer shall, and shall cause its Affiliates to, be liable for and provide to each such Seller Employee any portion of the unpaid Employee Severance that otherwise becomes due and payable following the Closing.

(d)    Credit for Service.  Buyer shall, and shall cause its Affiliates to, credit Transferred Employees for service earned on and prior to the Closing Date with the Sellers and their Affiliates or predecessors to the extent that such service would be credited pursuant to the applicable Employee Plan, in addition to service earned with Buyer and its Affiliates on or after the Closing Date to the extent that service is relevant for purposes of eligibility, vesting, paid-leave entitlement or the calculation of benefits under any employee benefit plan, program or arrangement of Buyer or any of its Affiliates for the benefit of the Transferred Employees on or after the Closing Date, but not for the purposes of benefit accrual under any defined benefit pension plan; *provided*, *however*, that nothing herein shall result in a duplication of benefits with respect to the Transferred Employees.

(e)    Pre-existing Conditions; Coordination.  Buyer shall, and shall cause its Affiliates to, waive any pre-existing condition or actively at work limitations, evidence of insurability and waiting periods for the Transferred Employees and their eligible spouses and dependents under any employee benefit plan, program or arrangement of Buyer or any of its Affiliates for the benefit of the Transferred Employees on or after the Closing Date.  Buyer shall, and shall cause its Affiliates to credit for purposes of determining and satisfying annual deductibles, co-insurance, co-pays, out-of-pocket limits and other applicable limits under the comparable health plans and arrangements offered to Transferred Employees, deductibles, co-

50

insurance, co-pays and out-of-pocket expenses paid by Transferred Employees and their respective spouses and dependents under the Sellers or any of their respective Affiliates' health plans in the calendar year in which the Closing Date occurs.

(f)     Accrued Vacation.  Buyer or its Affiliates shall provide each Transferred Employee with credit for the same number of vacation, sick days and personal days such Transferred Employee has accrued but not used in the calendar year in which the Closing Date occurs; *provided*, that to the extent required by applicable Law, such amount shall be paid by Buyer or its Affiliates to the applicable Transferred Employee in cash.  In the event that a Transferred Employee is unable to use such carried over vacation and sick days within the calendar year in which the Closing Date occurs, Buyer or its Affiliates shall allow such Transferred Employee to carry over such vacation and sick days to be used in the subsequent calendar year solely to the extent that such Transferred Employee would have had the same right to carry over such vacation and sick days pursuant to the policies of the Seller or its Subsidiaries as of the date hereof.

(g)     COBRA.  On the Closing Date, the Sellers and their Affiliates shall cease to provide health and welfare coverage to each Seller Employee and his or her covered dependents and beneficiaries, and Buyer or its Affiliate shall commence providing such coverage to Transferred Employees and his or her covered dependents and beneficiaries.  Buyer and its "buying group" (as defined in Treasury Regulation Section 54.4980B-9, Q&A-2(c)) shall be solely responsible for providing continuation coverage under COBRA to those individuals who are or become M&A qualified beneficiaries (as defined in Treasury Regulation Section 54.490B-9, Q&A-4(a)) with respect to the transactions contemplated by this Agreement. Buyer and its Affiliates shall provide coverage required by COBRA to Transferred Employees and their eligible dependents or beneficiaries under group health plans maintained by Buyer or an Affiliate of Buyer with respect to qualifying events occurring on and after the Closing Date.

(h)     Tax Reporting.  Buyer shall adopt the "*alternate procedure*" for preparing and filing IRS Forms W-2 (Wage and Tax Statements), as described in Revenue Procedure 2004-53.  Under this procedure, Buyer as the successor employer shall provide Forms W-2 to Transferred Employees reflecting all wages paid and Taxes withheld with respect to such Transferred Employees for the calendar year in which the Closing Date occurs. The Sellers as the predecessor employer shall have no employment tax reporting responsibilities for the Transferred Employees following the Closing Date.  Buyer shall also adopt the "*alternate procedure*" of Revenue Procedure 2004-53 for purposes of IRS Forms W-4 (Employee's Withholding Allowance Certificate) and W-5 (Earned Income Credit Advance Payment Certificate).

(i)     No Third Party Beneficiaries.  Without limiting the generality of Section 12.5, no provision of this Section 6.8 shall (i) be treated as an amendment of, or undertaking to amend, any benefit plan, (ii) obligate Buyer or the Sellers to retain the employment of any particular employee or (iii) confer any rights or benefits on any Third Person beneficiary or create any Third Person beneficiary or other rights in any current or former employee, independent contractor or other service provider (including any beneficiary or dependent thereof) of any Seller in respect of continued employment (or resumed employment) with either Buyer or any of, its Affiliates and no provision of this Section 6.8 shall create any rights in any such Persons in respect of any benefits that may be provided, directly or indirectly, under any Employee Plan or any plan or arrangement that may be established by Buyer or any of its Affiliates, including as to the level

or duration of compensation or benefits. No provision of this Agreement shall constitute a limitation on rights to amend, modify or terminate after the Closing Date any such plans or arrangements of the Sellers, Buyer or any of their respective Affiliates.

6.9     [Reserved].

6.10     Certain Agreements.  The Sellers will obtain assignment of, or replacement agreements with respect to, the Specified Section 6.10 Contract(s) prior to or at the Closing (with any replacement agreement being on substantially the same terms as the Specified Section 6.10 Contract(s) being replaced); *provided* that Buyer understands and agrees that this Section 6.10 will not require Sellers to enter into any settlement, undertaking or agreement, undertake any obligation, or pay any consideration, in each case, with or to any third party, other than, to the extent required to be paid prior to the Closing, if so requested by Buyer, Sellers paying in cash any such consideration requested by such third party.

6.11     Transfer Orders; Letters in Lieu.  Prior to the Closing, the Sellers shall deliver to Buyer completed transfer orders or letters in lieu thereof, directing all purchasers of production to make payment to Buyer of proceeds attributable to Hydrocarbons constituting Acquired Interests effective as of the Closing.

6.12     Taxes.

(a)     To the extent not exempt under the Confirmation Order or Section 1146 of the Bankruptcy Code, Buyer shall assume responsibility for, and shall bear and pay, all Transfer Taxes (if any) incurred or imposed with respect to the conveyance of the Acquired Interests to Buyer; *provided* that if any such Transfer Taxes are due prior to the Closing the Sellers shall assume responsibility for, and shall bear and pay such Transfer Taxes.  The Party required by applicable Law to file Tax Returns with respect to Transfer Taxes shall prepare and file such Tax Returns or other documents and the non-preparing Party shall cooperate therewith.

(b)     The Sellers shall timely file or cause to be timely filed when due all Tax Returns that are required to be filed by or with respect to Fieldwood U.A. on or prior to the Closing Date and all Tax Returns that are required to be filed by the Sellers under applicable Law with respect to the Acquired Interests (including any Tax Returns reporting any Property-Related Taxes and Production Taxes) and, in each case, all such Tax Returns shall be prepared and filed in a manner consistent with past practice.  In each case, the Sellers shall remit or cause to be remitted any Taxes shown as due on such Tax Returns.  Buyer shall timely file or cause to be timely filed when due (taking into account all extensions properly obtained) all other Tax Returns that are required to be filed by or with respect to Fieldwood U.A. and the Acquired Interests after the Closing Date and shall pay any Taxes shown as due on such Tax Returns.  The Sellers shall reimburse Buyer for (A) Retained Taxes which are remitted in respect of any Tax Return to be filed by Buyer pursuant to this Section 6.12 or (B) Retained Taxes in respect of any Tax Return to be filed by the Sellers under this Section 6.12(b) which have not been paid by the Sellers and for which a taxing authority seeks payment from Buyer, in each case, up to the amount reserved for such Retained Taxes in determining the Effective Date Cash Obligations Amount, no later than ten (10) days after Buyer's written request therefor.

(c)    For purposes of this Agreement, in the case of a Straddle Period, (x) all Property-Related Taxes and any exemptions, allowances and deductions with respect to such Taxes shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period based on the number of days of such Straddle Period included in the Pre-Closing Tax Period and the number of days of such Straddle Period included in the Post-Closing Tax Period, (y) all Production Taxes shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period based upon the period during which the applicable production occurred, and (z) all other Taxes shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period as if such taxable period ended as of the end of the day on the final day of the Pre-Closing Tax Period.

(d)    Property-Related Taxes and Production Taxes shall be timely paid, and all applicable filings, reports and returns shall be filed as provided by applicable Law.

(e)    All Tax Sharing Agreements between the Sellers and any Affiliates of the Sellers, on the one hand, and Fieldwood U.A., Fieldwood Mexico or any Subsidiary thereof, on the other hand, will terminate as to Fieldwood U.A., Fieldwood Mexico and any Subsidiary thereof prior to the Closing Date and Fieldwood U.A., Fieldwood Mexico and such Subsidiary will not have any liability thereunder on or after the Closing Date.

(f)    Each Seller, on the one hand, and Buyer, on the other hand, will provide each other with such cooperation and information as either of them reasonably may request of the other in filing any Tax Return, claiming any refund of Taxes, determining a Liability for Taxes or a right to a refund of Taxes, or conducting any audit or other proceeding in respect of Taxes. Such cooperation and information shall include providing copies of relevant Tax Returns or portions thereof, together with accompanying schedules, related work papers and documents relating to rulings and other determinations by Governmental Authorities. Any information obtained under this Section 6.12 shall be kept confidential except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refund or in conducting any audit or other proceeding.

6.13    Commercially Reasonable Efforts.    Subject to the terms and conditions of this Agreement, and subject to the Bankruptcy Code and any orders of the Bankruptcy Court, and without limiting any other provision of this Agreement (including Section 6.5(c)), Buyer and the Sellers each agree to use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable to cause the conditions precedent to Closing set forth in Article VII to be satisfied and to consummate the transactions; *provided* that the Parties understand and agree that the commercially reasonable efforts of any Party shall not be deemed to include, except as expressly set forth in this Agreement, entering into any settlement, undertaking, consent decree, stipulation or agreement with any Governmental Authority in connection with the transactions contemplated hereby; *provided*, *further* that this Section 6.13 shall not (a) limit or affect the obligation of any Party to perform any of its other obligations and covenants expressly set forth in this Agreement or (b) require any Party to incur any obligations or pay any fees or amounts to third parties not otherwise required under this Agreement or the Plan.

6.14    Insurance Policies.    Effective at or prior to Closing, the Sellers shall cause Buyer to be named as an 'additional insured' with respect to each insurance policy held by the Sellers which provides coverage with respect to any of the Acquired Interests (excluding, for the

avoidance of doubt, any director and officer insurance policies). The Sellers shall maintain such insurance policies in full force and effect until the expiration of their terms, and shall cooperate in good faith with Buyer in connection with any claim made by Buyer under any such policy. The Sellers shall not have any obligation to renew any such insurance policies following the expiration of their terms, and from and after such expiration, Buyer will be solely responsible for maintaining such insurance as Buyer deems reasonable with respect to the Acquired Interests.

6.15    Novation of Hedges. Buyer shall use commercially reasonable efforts to cause the Hedges to be novated to Buyer at Closing, and the Sellers shall reasonably cooperate with Buyer in connection with such novation; *provided* that (a) to the extent that the total volume of production hedged as of the Closing with respect to the Hedges exceeds 45,000 Boepd, Buyer may elect to (but is not required pursuant to this Section 6.15 to) use commercially reasonable efforts to novate such excess (or any portion thereof) to Buyer at Closing; (b) Buyer shall be solely responsible for any credit support or other requirements in connection with such novation; and (c) the Sellers shall not be required to pay any consideration or undertake any obligation in connection with such novation.

6.16    Qualification. Prior to the Closing, Sellers (and their respective officers and employees) will provide commercially reasonable assistance to Buyer with respect to Buyer obtaining such qualifications as are necessary to own and, where applicable, to assume operatorship of, the Acquired Interests in all jurisdictions where the Acquired Interests are located.

6.17    Settlements with Governmental Authorities. From the date hereof until the Closing, none of any Seller nor any of its Affiliates shall make or enter into any material non-ordinary course stipulation, settlement or other agreement with any Governmental Authority (each, a "***Governmental Settlement Agreement***") that is not in form and substance acceptable to Buyer. The Sellers shall pay all amounts due and payable under any Governmental Settlement Agreement executed by any Seller or any of its Affiliates prior to the Closing.

6.18    Operator Forms. By no later than ten (10) days after the Execution Date, the Sellers shall have sent all applicable Third Persons all designation of operator forms (Form BOEM – 1123) designating Buyer as operator (along with all corresponding OSFR forms) with respect to each Lease or portion thereof as to which any Seller is the designated operator as of the date hereof, and Sellers shall use reasonable best efforts to obtain such executed forms from such Third Persons prior to the Closing.

6.19    [Reserved].

6.20    Bonds and Insurance. To the extent required by applicable state and federal Governmental Authorities (and subject to compliance by the Sellers with their respective covenants under this Agreement) in connection with the transactions contemplated by this Agreement, as of the Closing or promptly thereafter (and in any case within ten (10) Business Days of the Closing) Buyer and/or Buyer 2, as applicable, will have the lease bonds, area-wide bonds and surety bonds or insurance policies set forth on **Schedule 6.20**, in each case to the extent required by and in accordance with the requirements of such Governmental Authorities.

6.21    [New Equity Interests.  Buyer shall, or shall cause (a) the Credit Bid and Release New Equity Interests and the Equity Rights Offering New Equity Interests (if and when authorized pursuant to an order of the Bankruptcy Court) to be received by the holders of Allowed FLTL Secured Claims (as defined in the Plan) on the Effective Date in accordance with the Plan and (b) the Credit Bid and Release Rights  (if and when authorized pursuant to an order of the Bankruptcy Court) to be received by the holders of Allowed FLTL Secured Claims (as defined in the Plan) in accordance with the Plan.][11]

6.22    Employment Agreements.  Buyer shall, in good faith, negotiate the terms of an employment agreement (each, an "***Employment Agreement***") with each of the Seller Employees identified on Schedule 6.22 from and after the date hereof.  If terms of an Employment Agreement are mutually agreed between Buyer and a Seller Employee prior to Closing, then at (or immediately following) the Closing Buyer shall enter into an Employment Agreement with each such Seller Employee.

## ARTICLE VII
## CONDITIONS PRECEDENT TO CLOSING

7.1    Conditions Precedent of the Parties.  The obligations of the Sellers, Buyer and Buyer 2 to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of each of the following conditions:

(a)    no applicable Law shall prohibit the transactions contemplated hereby or the consummation of the Closing and no suit, action or proceeding shall be pending or threatened before any court or arbitration tribunal seeking to enjoin, restrain, prohibit or declare illegal the transactions contemplated by this Agreement;

(b)    no injunction, order, decree or judgment that restrains, enjoins or prohibits the transactions contemplated in this Agreement shall be in effect;

(c)    any applicable waiting period under the HSR Act relating to the transactions contemplated hereby shall have expired or been terminated;

(d)    the Bankruptcy Court shall have entered the Disclosure Statement Order and the Confirmation Order and each such order shall be a Final Order;

(e)    each of the conditions precedent to the Effective Date shall have been satisfied (or shall become effective concurrent with the Closing Date hereunder) or waived in accordance therewith; and

(f)    (i) the Credit Bid and Release New Equity Interests and the Equity Rights Offering New Equity Interests (if and when authorized pursuant to an order of the Bankruptcy Court) shall have been, or will be on the Effective Date, received by the holders of Allowed FLTL Secured Claims (as defined in the Plan) in accordance with the Plan and (ii) the Credit Bid and

---

[11] Note to Draft: Subject to review of Equity Rights Offering procedures/obligations of Buyer to issue equity upon exercise of Credit Bid and Release Rights.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

Release Rights (if and when authorized pursuant to an order of the Bankruptcy Court) shall have been received by the holders of Allowed FLTL Secured Claims (as defined in the Plan) in accordance with the Plan.

7.2     Sellers' Conditions Precedent.  The obligation of the Sellers to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of each of the following conditions:

(a)     the representations and warranties of Buyer and Buyer 2 set forth in this Agreement shall be true and correct, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct as of such earlier date), except for those failures to be true and correct that, individually or in the aggregate, would not adversely affect in any material respect the ability of Buyer and Buyer 2 to consummate the transactions contemplated by this Agreement;

(b)     Each of Buyer and Buyer 2 shall have performed and fulfilled in all material respects each covenant, agreement and condition required by this Agreement to be performed or fulfilled by Buyer or Buyer 2, as applicable, at or before the Closing;

(c)     the Effective Date Cash Obligations Amount shall have been agreed in amounts acceptable to Sellers acting in good faith; and

(d)     Each of Buyer and Buyer 2 shall have executed and delivered all documents required to be executed and delivered by Buyer or Buyer 2, as applicable, as set forth in Section 9.2.

The foregoing conditions of this Section 7.2 are for the sole benefit of the Sellers and may be waived by the Sellers, in whole or in part, at any time and from time to time in the sole discretion of the Sellers.  The failure by the Sellers at any time to exercise any of their rights hereunder shall not be deemed a waiver of any such right and each such right shall be deemed an ongoing right which may be asserted at any time and from time to time.

7.3     Buyers' Conditions Precedent.  The obligation of Buyer and Buyer 2 to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of each of the following conditions:

(a)     (i) each of the Fundamental Representations of each Seller shall be true and correct in all respects, except for de minimis inaccuracies, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct as of such earlier date), (ii) the representations and warranties of each Seller set forth in each of Section 4.22(a), Section 4.32 and Section 4.33 shall (disregarding any qualifications or exceptions set forth therein relating to Material Adverse Effect or "materiality" or any similar qualification or standard) be true and correct in all material respects, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct in all material respects as of such earlier date), and (iii) all other representations and warranties of each Seller set forth in Article IV

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

of this Agreement shall (disregarding any qualifications or exceptions set forth therein relating to Material Adverse Effect or "materiality" or any similar qualification or standard) be true and correct, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct as of such earlier date) except in the case of this clause (iii), for those failures to be true and correct that would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

(b)     each Seller shall have performed and fulfilled in all material respects each covenant, agreement and condition required by this Agreement to be performed or fulfilled by such Seller at or before the Closing;

(c)     each Seller shall have executed and delivered all documents required to be executed and delivered by such Seller as set forth in Section 9.2;

(d)     no Default or Event of Default (each as defined in the DIP Credit Agreement) under the DIP Credit Agreement shall have occurred and be continuing;

(e)     the Restructuring Support Agreement shall not have been terminated with respect to any party thereto;

(f)     the conditions precedent under the Backstop Commitment Letter shall have been satisfied or waived;

(g)     the Plan confirmed by the Confirmation Order shall be in substantially the same form and substance as the plan filed by the Debtors on [•], at Docket No. [•] in the Bankruptcy Court, as may be amended, modified or supplemented from time to time in accordance with the Restructuring Support Agreement or as otherwise consented to by or on behalf of Buyer;

(h)     at least five (5) Business Days prior to the Closing Date, the Bankruptcy Court shall have approved and authorized the assumption and assignment of each material Assigned 365 Contract pursuant to Section 365 of the Bankruptcy Code through entry of an order that shall have become a Final Order and all such material Assigned 365 Contracts shall have been duly assigned to Buyer at or prior to the Closing;

(i)     all Assigned 365 Contracts that require novation and are set forth on **Schedule 7.3(i)** will have been novated to Buyer;

(j)     the estimated amount of Allowed Specified Administrative Expense Claims at any time are projected by the Sellers not to exceed the Toggle Amount (as defined in the Plan), or, upon the occurrence of the Toggle Date, such other amount as determined by the Majority Backstop Parties (as defined in the Backstop Commitment Letter) in their sole and absolute discretion;

(k)     the aggregate Allocated Values of all Acquired Interests treated as Delayed Assets pursuant to Section 2.3(b), Section 2.4 and Section 2.5, together with the aggregate Allocated Values of all Acquired Interests with respect to which a bona fide Preferential Right is validly exercised prior to the Closing, shall not be greater than $100,000,000;

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

(l)      all Governmental Approvals set forth on **Schedule 7.3(l)** shall have been obtained and delivered to Buyer and such Governmental Approvals shall be in full force and effect;

(m)      since the Execution Date, no Material Adverse Effect (or any result, event, occurrence, change, circumstance, consequence or development that, individually or in the aggregate, would reasonably be expected to result in a Material Adverse Effect) shall have occurred;

(n)      any agreements between Buyer and the Plan Administrator shall be reasonably acceptable to Buyer;

(o)      Buyer shall have obtained all qualifications required to assume operatorship of the Leases operated by a Seller as of immediately prior to the Closing in all jurisdictions where such Leases are located, all of which qualifications shall be in full force and effect;

(p)      the Sellers shall have delivered to Buyer a fully executed copy of the Fourth Amendment to Office Sublease;

(q)      the Effective Date Cash Obligations Amount shall have been agreed in amounts acceptable to Buyer acting in good faith; and

(r)      the Sellers shall have delivered to Buyer a duly executed letter agreement, or the Bankruptcy Court shall have entered an order which shall have become a Final Order, in each case in a form reasonably acceptable to Buyer, providing that Buyer is not a "successor" or "assign" of Sellers under the NPA.

The foregoing conditions of this <u>Section 7.3</u> are for the sole benefit of Buyer and Buyer 2 and may be waived by Buyer or Buyer 2, as applicable, in whole or in part, at any time and from time to time in the sole discretion of Buyer and Buyer 2. The failure by Buyer or Buyer 2 at any time to exercise any of its rights hereunder shall not be deemed a waiver of any such right and each such right shall be deemed an ongoing right which may be asserted at any time and from time to time.

## ARTICLE VIII
## RIGHT OF TERMINATION AND ABANDONMENT

8.1    <u>Termination</u>. This Agreement may be terminated by written notice at any time before the Closing:

(a)      by mutual written consent of the Sellers and Buyer;

(b)      by the Sellers, on one hand, or by Buyer, on the other hand:

(i)      if the Closing shall not have been consummated on or before June 30, 2021 (as such date may be extended by mutual written agreement of the Parties, the "***End Date***"); *provided* that the right to terminate this Agreement pursuant to this <u>Section 8.1(b)(i)</u> shall not be available to any Party (A) who is then in material breach of any of its material agreements, covenants, representations or warranties contained herein or (B)

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

whose breach of any provision of this Agreement is the proximate cause of the failure of the Closing to be consummated before the End Date;

(ii)     if there shall be any applicable Law that makes consummation of the transactions contemplated by this Agreement illegal or otherwise prohibited or if consummation of such transactions would violate any Final Order of any Governmental Authority having competent jurisdiction;

(iii)    for any reason, Buyer is unable, pursuant to Section 363(k) or Section 1123(a) of the Bankruptcy Code, to credit bid in payment of all or any portion of the Consideration as set forth in Section 2.1 (other than the Assumed Liabilities);

(iv)    the Bankruptcy Court shall have entered an order dismissing, or converting into cases under Chapter 7 of the Bankruptcy Code, any of the cases commenced by the Sellers under Chapter 11 of the Bankruptcy Code and comprising part of the Bankruptcy Cases; or

(v)     any of the Sellers shall have entered into any agreement with respect to any Alternative Transaction (consistent with the fiduciary duties of the officers and directors of the Sellers) or if the Bankruptcy Court shall have approved any such Alternative Transaction;

(c)     by Buyer if:

(i)     the Sellers shall have breached any of their representations and warranties, or shall have failed to perform or comply with any of their covenants and agreements contained in this Agreement and such breach or failure to perform or comply (A) would result in the Sellers being unable to satisfy a condition set forth in Section 7.3 and (B) is not cured within ten (10) Business Days after Buyer notifies the Sellers of such breach or failure to perform or comply in writing; *provided*, that Buyer shall not have a right of termination pursuant to this Section 8.1(c)(i) if Buyer is then in material breach of any of its material agreements, covenants, representations or warranties contained herein;

(ii)    any of the Sellers, without the prior consent of Buyer, enter into a definitive agreement with respect to the sale of any material Acquired Interests (excluding sales of Hydrocarbons in the ordinary course of business) or any interest in any of the Leases;

(iii)   the Confirmation Order shall not have been entered by the Confirmation Outside Date;

(iv)    the Restructuring Support Agreement shall have been terminated with respect to any party thereto; *provided*, that the right to terminate this Agreement pursuant to this Section 8.1(c)(iv) shall not be available to Buyer if any Consenting Creditor's breach of any provision of the Restructuring Support Agreement is the proximate cause of the termination of the Restructuring Support Agreement;

59

(v)     any Event of Default (as defined in the DIP Facility Credit Agreement) under the DIP Facility Credit Agreement shall have occurred and be continuing;

(vi)     the Equity Rights Offering is not consummated;

(vii)     the Disclosure Statement Order or the Confirmation Order shall have been stayed, vacated, reversed or materially modified or amended by the Bankruptcy Court or another court of competent jurisdiction at any time without the prior written consent of Buyer; or

(viii)     any Seller seeks to have the Bankruptcy Court enter an order dismissing, or converting into cases under Chapter 7 of the Bankruptcy Code, any of the cases commenced by the Sellers under Chapter 11 of the Bankruptcy Code and comprising part of the Bankruptcy Cases, or if a trustee in the Bankruptcy Cases or a responsible officer or an examiner with enlarged powers is appointed (other than a fee examiner) relating to the operation of the Sellers' businesses pursuant to Section 1104 of the Bankruptcy Code, or such an order of dismissal, conversion or appointment is entered; and

(d)     by the Sellers if:

(i)     Buyer or Buyer 2 shall have breached any of its representations and warranties, or shall have failed to perform or comply with any of its covenants and agreements contained in this Agreement and such breach or failure to perform or comply (A) would result in Buyer or Buyer 2, as applicable, being unable to satisfy a condition set forth in Section 7.2 and (B) is not be cured within ten (10) Business Days after the Sellers notify Buyer of such breach or failure to perform or comply in writing; *provided*, that the Sellers shall not have a right of termination pursuant to this Section 8.1(d)(i) if any Seller is then in material breach of any of its material agreements, covenants, representations or warranties contained herein;

(ii)     the Backstop Commitment Letter is terminated and Buyer has not, within thirty (30) days following the termination of the Backstop Commitment Letter, entered into a definitive written agreement with respect to committed financing or other arrangement in an amount at least equal to that provided by the Backstop Commitment Letter (as of the date hereof) and otherwise in form and substance reasonably acceptable to Sellers; or

(iii)     the Equity Rights Offering is not consummated and Buyer has not, within thirty (30) days following the failure of the Equity Rights Offering to be consummated, entered into a definitive written agreement with respect to committed financing or other arrangement in an amount at least equal to the amount that would have been provided by the Equity Rights Offering and otherwise in form and substance reasonably acceptable to Sellers.

Each termination trigger set forth in this Section 8.1, pursuant to which this Agreement may be terminated shall be considered separate and distinct from each other such termination trigger. If more than one of the termination triggers set forth in this Section 8.1 are applicable, the applicable

Party shall have the right to choose the termination trigger pursuant to which this Agreement is to be terminated.  Any Party desiring to terminate this Agreement pursuant to this <u>Section 8.1</u> shall give written notice of such termination to the other Party.

8.2   <u>Remedies</u>.  In the event of termination of this Agreement by Buyer or the Sellers pursuant to this <u>Article VIII</u>, this Agreement shall become null and void and have no effect and all rights and obligations of the Parties under this Agreement shall terminate without any Liability of any Party to any other Party except the provisions of this <u>Section 8.2</u>, <u>Section 12.1</u>, <u>Section 12.8</u> and **<u>Annex I</u>** (and, to the extent applicable to the interpretation or enforcement of such provisions, <u>Article XII</u>) shall expressly survive the termination of this Agreement.

8.3   <u>Specific Performance</u>.  The Parties agree that irreparable damage for which monetary damages, even if available, would not be an adequate remedy would occur in the event any provisions of this Agreement were not performed in accordance with the terms hereof (including failing to take such actions as are required hereunder in order to consummate the transactions contemplated hereby) or were otherwise breached and that the Parties shall be entitled to injunctive relief, specific performance and other equitable relief to prevent breaches (or threatened breaches) of this Agreement and to enforce specifically the performance of the provisions hereof.  Any Party seeking an injunction to prevent breaches of this Agreement and to enforce specifically the provisions of this Agreement shall not be required to provide any bond or other security in connection with any such order or injunction.  The rights set forth in this <u>Section 8.3</u> shall, subject to <u>Section 8.2</u>, be in addition to any other rights which a Party may have at law or in equity pursuant to this Agreement.

**ARTICLE IX**
**CLOSING**

9.1   <u>Date of Closing</u>.  Subject to satisfaction (or waiver by the required Party) of the conditions to Closing set forth in <u>Article VII</u> (other than those conditions that by their nature cannot be satisfied until the time of Closing, but subject to the satisfaction (or waiver by the requisite Party) of those conditions), the Closing shall occur on the Effective Date (the "***Closing Date***").  Notwithstanding the foregoing, the parties hereto may agree in writing to such other date or time for Closing to take place and such other date or time shall be the "***Closing Date***" as such term is defined herein.  The Closing shall take place through electronic means of communication on the Closing Date.

9.2   <u>Closing Obligations</u>.  At Closing, the Parties (as applicable) shall take, or cause to be taken, the following actions, each being a condition precedent to the others and each being deemed to have occurred simultaneously with the others:

(a)   The Sellers and Buyer shall deliver to one another duly executed counterpart signature pages to each Transfer Document to which they are a party, in sufficient numbers of duly executed and acknowledged original counterparts to facilitate, to the extent appropriate, recording in all relevant jurisdictions;

(b)   The Sellers shall deliver to Buyer the JV Assignment Agreements duly executed by the applicable Sellers;

61

(c)     Buyer and Buyer 2 shall deliver a duly executed counterpart to the Release Document;

(d)     The Sellers shall deliver to Buyer a certificate, dated and effective as of the Closing Date, executed by an authorized officer of each Seller, certifying to Buyer that, on the Closing Date, the conditions set forth in Section 7.3(a) and Section 7.3(b) have been satisfied;

(e)     Buyer shall deliver to the Sellers a certificate, dated and effective as of the Closing Date, executed by an authorized officer of each of Buyer and Buyer 2, certifying to the Sellers that, on the Closing Date, the conditions set forth in Section 7.2(a) and Section 7.2(b) have been satisfied;

(f)     Each Seller shall deliver to Buyer a statement that satisfies the requirements of Treas. Reg. §1.1445-2(b)(2), certifying that such Seller is not a foreign person within the meaning of Section 1445(f)(3) or Section 1446(f)(2) of the Code;

(g)     Fieldwood and Buyer shall deliver to one another duly executed signature pages to the Funding Agreement;

(h)     Buyer shall deliver by wire transfer of immediately available funds an amount in cash equal to the Cash Portion, to one or more accounts designated by the Sellers (which shall be designated by the Sellers at least two (2) days prior to Closing);

(i)     Sellers shall pay the Cure Costs out of the Closing Cash Amount and/or the Cash Portion in accordance with an order of the Bankruptcy Court; and

(j)     Buyer shall deliver to Fieldwood the GUC Warrants for distribution by Fieldwood pursuant to the Plan.

## ARTICLE X
## POST-CLOSING OBLIGATIONS AND COVENANTS

10.1     Field Data and Records.  Within ten (10) Business Days after the Closing, pursuant to Buyer's reasonable instructions, the Sellers shall deliver to Buyer any Field Data or Records that are not maintained in the Office Assets.  Buyer shall be entitled to all original Field Data and Records.  Within ten (10) Business Days after the Closing, the Sellers may make and retain, at the Sellers' expense, copies of any Field Data and Records (except to the extent prohibited by Contract where Buyer obtains the originals thereof).

10.2     Suspense Funds; Prepaid JOA Funds.

(a)     To the extent that as of Closing, any Seller holds Suspense Funds or Undisbursed Revenue relating to the Acquired Interests (excluding Prepaid JOA Funds) the Sellers shall deliver to Buyer at Closing such Suspense Funds and Undisbursed Revenue and an accounting of such Suspense Funds and Undisbursed Revenue and Buyer shall from and after such time be responsible for the application of such Suspense Funds and Undisbursed Revenue under the applicable operating or other agreement governing the application of such Suspense Funds and Undisbursed Revenue.  The Sellers shall remain liable, and shall be solely responsible, for (i) the

62

disbursement of all funds owed to Persons (including any Suspense Funds) that are not paid or disbursed to Buyer at Closing and (ii) all Liabilities with respect to any misapplication of any Suspense Funds (or any escheat or other Laws related thereto) as to any period of time at or before the Closing Date; such Liabilities and responsibilities shall be considered Retained Liabilities.

(b)     To the extent that as of Closing, any Seller holds funds received by the Sellers (in their capacity as operator of any Acquired Interests) on account of working interest owners in the Acquired Interests as prepayments for items under operating or other agreements ("**Prepaid JOA Funds**"), the Sellers shall deliver to Buyer at Closing such Prepaid JOA Funds and an accounting of each of such prepayments and Buyer shall from and after Closing be responsible for the application of such Prepaid JOA Funds under the applicable operating or other agreement pursuant to which such Prepaid JOA Funds were collected.  The Sellers shall remain liable, and shall be solely responsible, for (i) the disbursement of all funds owed to Persons (including any Prepaid JOA Funds) that are not paid or disbursed to Buyer at Closing and (ii) all Liabilities with respect to any misapplication of Prepaid JOA Funds (or any escheat or other Laws related thereto) as to any period of time at or before the Closing Date; such Liabilities and responsibilities shall be considered Retained Liabilities.

10.3    Post-Closing Asset Reconciliation.

(a)     After the Closing Date, Buyer and the Sellers shall execute and deliver, or shall cause to be executed and delivered, from time to time such further instruments of conveyance and transfer, and shall take such other actions as Buyer or the Sellers may reasonably request, to convey and deliver the Acquired Interests to Buyer, to perfect Buyer's title thereto and to accomplish the orderly transfer of the Acquired Interests to Buyer.

(b)     In the event that at any time, or from time to time following the Closing Date, any (i) Acquired Interest is found to have been retained by the Sellers or any of their Affiliates (each a "**Non-Transferred Asset**"), then the Sellers shall transfer, or shall cause such Affiliate to transfer, with any necessary prior consent from any Third Person or Governmental Authority, such Non-Transferred Asset to Buyer as soon as practicable, or an Affiliate thereof as designated by Buyer, and to forward or remit to Buyer, or an Affiliate thereof as designated by Buyer, any payments actually received by the Sellers on account of any such Non-Transferred Asset from the Closing until the time such Non-Transferred Asset is transferred to Buyer; *provided*, that Buyer shall pay to the Sellers the amount of any expenses or payables actually paid by the Sellers on account of any such Non-Transferred Asset from the Closing until the time such Non-Transferred Asset is transferred to Buyer (which may be netted by the Sellers against amounts received on account of such Non-Transferred Asset).  Prior to any such transfer, the Sellers shall hold such Non-Transferred Asset in trust for Buyer.

(c)     In the event of a transfer pursuant to clause (b) of this Section 10.3, Buyer or an Affiliate thereof and the Sellers or an Affiliate thereof shall execute and deliver, or cause to be executed and delivered, to the other Party as soon as practicable any conveyances, notices, assumptions, releases and acquittances and such other instruments, and shall take such further actions, as may be necessary or appropriate to fully and effectively transfer, assign and convey unto Buyer or an Affiliate thereof, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Buyer or an Affiliate thereof, and to otherwise

63

make effective the transactions contemplated hereby, and to confirm Buyer's (or its Affiliate's) title to or interest in and to such Non-Transferred Asset, and to put Buyer or its Affiliate in actual possession and operating control thereof.

(d)     For the avoidance of doubt, this Section 10.3 does not apply to any Delayed Assets retained by a Seller at the Closing.

10.4    Assignments; Operatorship.

(a)     Other than with respect to Governmental Approvals (which are addressed by Section 2.4), the Sellers will prepare and execute, and Buyer will execute, at or before the Closing, all documentation necessary to convey to Buyer the Acquired Interests granted by a Governmental Authority (except any such documentation that is customarily completed post-Closing) in the form as prescribed by the applicable Governmental Authority and otherwise reasonably acceptable to Buyer and the Sellers.

(b)     At the Closing, each Seller shall, as applicable, deliver to Buyer a resignation as operator of (and, as applicable, designated applicant under OSFR for) all Field Assets as to which such Seller served as operator (or, as applicable, designated applicant under OSFR) immediately before the Closing Date.  With respect to those Field Assets as to which a Seller controls the selection of the successor operator (or, as applicable, the designated applicant under OSFR), such Seller shall at the Closing deliver to Buyer (and any pertinent Third Person) a written notification designating Buyer as the successor operator of (or, as applicable, the successor designated applicable under OSFR for) such Field Assets effective as of the Closing Date.  With respect to any Field Assets as to which the Sellers do not control the selection of the successor operator (or, as applicable, the designated applicant under OSFR), the Sellers will cast their votes at or before Closing, and will use commercially reasonable efforts to obtain before, or promptly following, Closing the votes of the other owners of Working Interests in such Field Assets, in each case in favor of the designation of Buyer as successor operator of (and, as applicable, the designated applicant under OSFR for) such Field Assets effective as of the Closing Date.  Within five (5) days after the later of the Closing Date or the date on which Buyer is named successor operator under the terms of the applicable Contract, the Sellers and Buyer shall make all necessary filings, including any BOEM designation of operator forms and designated applicant OSFR form designations, and take all other actions necessary to cause the resignation of the applicable Sellers as operator of (and, as applicable, the designated applicant under OSFR for), and the designation of Buyer as the successor operator of (and, as applicable, the designated applicant under OSFR for), such Field Assets to be recognized and, if required, approved by all relevant Governmental Authorities.  In each case, the Sellers shall use commercially reasonable efforts to assist Buyer in assuming the timely operation and management of the Field Assets.  Each of the Sellers' covenants in this Section 10.4(b) is subject to the accuracy at Closing of Buyer's representations in Section 5.9.  Each of Buyer's covenants in this Section 10.4(b) is subject to Buyer's receipt from the Sellers and Third Persons of all such required designations and forms.  For the avoidance of doubt, "Field Assets" does not include any Lease, Subject Unit, Easement or Well with respect to which no right, title or interest is included in the Acquired Interests.

(c)     With respect to each Field Asset operated by the Sellers as of the Closing, the Sellers, with the continued assistance of Buyer, shall use commercially reasonable efforts to

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

cause each joint owner, record title interest owner and applicable operating rights interest owner in such Field Asset to execute and deliver such instruments, forms and filings (including any BOEM designation of operator forms and designated applicant OSFR form designations and any instruments, forms and filings required by BSEE) that are necessary to designate and appoint under all applicable Laws, Leases, Easements and Contracts, Buyer as operator of (and, as applicable, the designated applicant under OSFR for) such Field Asset as promptly as practicable following the Closing.

(d)       Each Party agrees that the execution and delivery of the instruments, forms and filings (including any BOEM designation of operator forms and OSFR form designation and any instruments, forms and filings required by BSEE) that are necessary to designate and appoint under all applicable Law, Leases, Easements and Contracts Buyer as operator (and, as applicable, the designated applicant under OSFR for) of the Field Assets will be made prior to the execution and delivery of the instruments, forms and filings (including any BOEM designation of operator forms and designated applicant OSFR form designations and any instruments, forms and filings required by BSEE) that may be required in connection with the implementation of the Divisive Merger.

10.5    Confidentiality.  Following the Closing, the Sellers agree not to, and to cause their respective Affiliates and Representatives not to, use or disclose any confidential or non-public information concerning the Acquired Interests or the business affairs of Buyer and its Affiliates, including as it relates to the Acquired Interests, or the Assumed Liabilities ("**Confidential Information**") except disclosure of Confidential Information that (a) is lawfully obtained after Closing from a source that, to the Knowledge of the Sellers, was not under an obligation of confidentiality to Buyer with respect to such information, (b) is disclosed or becomes available to the public without any breach by the Sellers of the terms of this Section 10.5, (c) is or may be necessary to wind down any of the Sellers' bankruptcy estates, or in connection with the enforcement of the rights of, or the defense of any Claim against or involving, any Seller provided that, in each case, the Confidential Information is afforded confidential treatment, (d) to the extent it relates to any Excluded Assets or (e) is or may be necessary in connection with the Bankruptcy Cases provided that the Confidential Information is afforded confidential treatment. Notwithstanding the foregoing, a Seller may disclose Confidential Information if such Seller believes (after consultation with counsel) it is legally required to make such disclosure in order to comply with Laws or legal, judicial or administrative process (including in connection with the Bankruptcy Cases).  If a Seller or any of its Representatives becomes required (including by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar process) or it becomes necessary in connection with the Bankruptcy Cases to disclose any of the Confidential Information, such Seller or Representative shall use reasonable efforts to provide Buyer with prompt notice, to the extent allowed by Law, of such requirement, and, to the extent reasonably practicable, cooperate with Buyer to obtain a protective order or similar remedy to cause such information not to be disclosed, including interposing all available objections thereto, such as objections based on settlement privilege; *provided*, that, in the event that such protective order or other similar remedy is not obtained, such Seller shall, or shall cause such Representative to, furnish only that portion of such information that has been legally compelled, and shall, or shall cause its Representative (as applicable) to, exercise its commercially reasonable efforts, at Buyer's expense, to obtain assurance that confidential treatment will be accorded such disclosed information.

65

10.6 <u>Seller Marks License</u>. Each Seller hereby grants to Buyer and its Affiliates a limited, non-exclusive, royalty-free, worldwide license, effective as of the Closing Date and terminating one (1) year thereafter, to use the Seller Marks solely (a) in connection with the Acquired Interests in the same manner, and with the same standards of quality, as used by the Sellers immediately prior to Closing or (b) as necessary to wind down the use of, and transition away from the use of, the Seller Marks. Buyer and its Affiliates shall use their respective commercially reasonable efforts to wind down the use of, and transition away from the use of, the Seller Marks reasonably promptly after the Closing Date.

10.7 <u>Power of Attorney</u>. Each Seller hereby constitutes and appoints, effective as of the Closing Date, Buyer and its successors and assigns as the true and lawful attorney of such Seller with full power of substitution in the name of Buyer, or in the name of such Seller but for the benefit of Buyer, (a) to collect for the account of Buyer any items of Acquired Interests and (b) to institute and prosecute all proceedings which Buyer may in its sole discretion deem proper in order to assert or enforce any right, title or interest in, to or under the Acquired Interests, and to defend or compromise any and all actions, suits or proceedings in respect of the Acquired Interests. Buyer shall be entitled to retain for its own account any amounts collected pursuant to the foregoing powers, including any amounts payable as interest in respect thereof.

10.8 <u>No Successor Liability</u>. The Parties intend that, upon the Closing, Buyer shall not be deemed to: (a) be the successor of, or related person, successor in interest or successor employer (as described under any applicable Law) to, any Seller or any of its Affiliates, predecessors, successors or assigns, including, with respect to any Employee Plans, other than the Assumed Employee Plans to the extent set forth in <u>Section 6.8</u>; (b) have, de facto or otherwise merged into any Seller or any of its Affiliates, predecessors, successors or assigns; (c) be a mere continuation or substantial continuation of any Seller or any of its Affiliates, predecessors, successors or assigns or the enterprise(s) of any Seller or any of its Affiliates, predecessors, successors or assigns; or (d) other than as expressly set forth in this Agreement, be liable for any acts or omissions of any Seller or any of its Affiliates, predecessors, successors or assigns in the current or former conduct of the business of the Sellers relating to the Acquired Interests or arising under or related to the Acquired Interests. Without limiting the generality of the foregoing, and except as otherwise expressly provided in this Agreement, the Parties intend that Buyer shall not be liable for any Encumbrances (except Permitted Encumbrances (except for the Fieldwood U.A. Interests and the JV Interests, which shall not have any Permitted Encumbrances)) against any Seller or any of its Affiliates, predecessors, successors or assigns, and Buyer shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date, or whether fixed or contingent, whether now existing or hereafter arising, with respect to the Acquired Interests or any Liabilities of the Sellers arising prior to or after the Closing Date other than the Assumed Liabilities and Permitted Encumbrances (except for the Fieldwood U.A. interests and the JV Interests, which shall not have any Permitted Encumbrances). The Parties agree that the provisions substantially in the form of this <u>Section 10.8</u> shall be reflected in the Confirmation Order.

10.9 <u>Access to Records</u>.

(a) On and after the Closing Date, each Seller will, and will cause its Affiliates, successors and assigns and Representatives to, afford promptly to Buyer and its agents reasonable access to its books of account, financial and other records (including accountant's work papers),

information, employees and auditors to the extent necessary or useful for Buyer in connection with any audit, investigation, dispute or litigation or any other reasonable business purpose relating to the Acquired Interests or the Assumed Liabilities; *provided* that any such access by Buyer shall not unreasonably interfere with the conduct of the business of such Seller.

(b)     Buyer agrees that, following the Closing, and subject to applicable Law and any confidentiality restrictions to third parties, and except as may be necessary to protect any applicable legal privilege, it shall (and shall cause its Subsidiaries to) give to the Sellers and their Representatives reasonable access during normal business hours to the Records pertaining to any and all periods prior to and including the Closing Date, to the extent useful or necessary for the Sellers in connection with any audit, investigation, dispute or litigation relating to the Seller's prior ownership of the Acquired Interests or the Assumed Liabilities, as the Sellers and their Representatives may reasonably request; *provided* that any such access by the Sellers shall not unreasonably interfere with the conduct of business of Buyer.

10.10   Payment of Assumed Liabilities.  If, from and after the Closing Date, any Seller or their respective Affiliates receives an invoice from a third party for payment of amounts that constitute Assumed Liabilities, such Seller may deliver such invoice to Buyer for payment and Buyer shall pay such invoice promptly and in any event within thirty (30) days of Buyer's receipt of such invoice from such Seller; *provided*, that for the avoidance of doubt, that if any such invoice covers amounts that are not Assumed Liabilities, as well as amounts that are Assumed Liabilities, Buyer shall only be required by this Section 10.10 to pay that portion of the amounts invoiced that constitute Assumed Liabilities.

10.11   Payment of Retained Liabilities.  If, from and after the Closing Date, Buyer or its Affiliates receives an invoice from a third party for payment of amounts that constitute Retained Liabilities, Buyer may deliver such invoice to the Sellers for payment and the Sellers shall pay such invoice promptly and in any event within thirty (30) days of the Sellers' receipt of such invoice from Buyer; *provided*, that (a) for the avoidance of doubt, that if any such invoice covers amounts that are not Retained Liabilities, as well as amounts that are Retained Liabilities, the Sellers shall only be required by this Section 10.11 to pay that portion of the amounts invoiced that constitute Retained Liabilities, (b) Sellers will not be required to pay any such Retained Liability to the extent such Retained Liability has been satisfied, compromised, settled, released or discharged pursuant to the Plan and the Confirmation Order or is otherwise subject to a different specified treatment pursuant to the Plan and (c) this Section 10.11 will not limit Sellers' right to exercise or pursue any counterclaim, right to setoff or other defense of Sellers with respect to such Retained Liability.

10.12   Accounts Receivables.

(a)     On the Closing Date, Fieldwood shall deliver to Buyer a statement setting forth the names of the obligor and the amount of each Closing Accounts Receivable (or amounts as known as of the Closing) (as such statement may be modified or supplemented from time to time within ninety (90) days after the Closing Date by written notice of Fieldwood to Buyer, the "***Closing Accounts Receivables Statement***").

67

(b)     From and after the Closing until the date that is 365 days following the Closing (the "**AR Collections Period**"), if Buyer so requests, Fieldwood shall collect the Closing Accounts Receivable for the benefit of Buyer and Fieldwood shall use the same level of efforts in the collection of the Closing Accounts Receivable that Fieldwood uses in the collection of its own accounts receivables; *provided* that (i) Fieldwood may settle any Closing Accounts Receivable by setoff (each such setoff, an "**Accounts Receivable Setoff**") of any amounts owed by the obligor thereunder against any amount that Fieldwood or any of its Subsidiaries owes to such obligor, to the extent (A) such Accounts Receivable Setoff is permitted under applicable Law and (B) Fieldwood delivers to Buyer (as set forth in Section 10.12(c)) an amount in cash equal to the amount of such Closing Accounts Receivable actually collected by such Accounts Receivable Setoff, (ii) Fieldwood must obtain the prior written consent of Buyer to settle (whether in cash or by way of an Accounts Receivable Setoff) any Closing Accounts Receivable for an amount less than the applicable amount set forth on the Closing Accounts Receivables Statement, (iii) without limiting Fieldwood's other obligations in this Agreement neither Fieldwood nor any of its Subsidiaries shall be required to incur any out-of-pocket expenses or admit or consent to any liability or obligation in connection with the collection of any Closing Accounts Receivable and (iv) Fieldwood shall not have any obligation to commence any litigation or other legal proceeding in connection with the collection of any Closing Accounts Receivable. Each Party acknowledges that Fieldwood is making efforts to collect the Closing Accounts Receivable hereunder solely pursuant to a contractual relationship on an arm's length basis and that the Parties do not intend that Fieldwood act or be responsible as a fiduciary to Buyer, any holders of Claims or any other Person, and expressly disclaim any such fiduciary relationship, whether between or among Buyer, on the one hand, and Fieldwood or any Seller, on the other hand. Buyer acknowledges that Fieldwood's obligations pursuant to this Section 10.12 (including Fieldwood Energy I's obligations under Section 10.12(e)) will be undertaken by Buyer pursuant to and in accordance with the TSA. Fieldwood shall be liable to Buyer (as set forth in Section 10.12(c)) for any Closing Accounts Receivable actually collected by Fieldwood (including as set off by Accounts Receivable Setoff) pursuant to this Section 10.12, and shall indemnify Buyer on a dollar-for-dollar basis for any Closing Accounts Receivable that are actually collected by Fieldwood (including as set off by Accounts Receivable Setoff) but not paid to Buyer pursuant to Section 10.12(c). In the case of an Accounts Receivable Setoff, the date of such Accounts Receivable Setoff shall be the earlier of (i) the date notice of such Accounts Receivable Setoff is delivered to Buyer pursuant to this Section 10.12(b) and (ii) the date such Accounts Receivable Setoff is reflected on the books of Fieldwood or any of its Subsidiaries.

(c)     Prior to the tenth (10th) calendar day following the end of each calendar month occurring after the Closing Date and through the month in which the end of the AR Collections Period occurs, Fieldwood shall promptly deliver the amount of any and all cash collected in respect of Closing Accounts Receivables and the amount of any and all Accounts Receivable Setoffs (collectively, the "**Accounts Receivable Collections**") to Buyer, together with a statement setting forth the aggregate amount of all the Accounts Receivable Collections.

(d)     On the date that is fifteen (15) calendar days after the end of the month in which the AR Collections Period ends, Fieldwood shall (i) deliver to Buyer a statement setting forth (A) the names of the obligor and amount of each Closing Accounts Receivable that remains uncollected, whether by cash or setoff (collectively, the "**Remaining Accounts**"); and (B) the aggregate amount of all of the Remaining Accounts receivables; and (ii) from and after the AR

68

Collections Period, Fieldwood shall have no further obligation under this <u>Section 10.12</u> to make efforts to collect the Remaining Accounts; *provided*, *however*, for the avoidance of doubt, if Buyer so requests, Fieldwood or its Subsidiaries may elect to collect any of the Remaining Accounts after the expiration of the AR Collections Period, and if Fieldwood so elects, Fieldwood shall pay such amounts over to Buyer, and Fieldwood shall be liable to Buyer for, and shall indemnify Buyer on a dollar-for-dollar basis for, any Remaining Accounts actually collected by Fieldwood pursuant to this <u>Section 10.12</u>.

(e)     Each of the Sellers and Buyer acknowledges and agrees that in connection with, and from and after, the consummation of the Divisive Merger, Fieldwood's obligations and liabilities (including indemnification obligations) under this <u>Section 10.12</u> will vest in and be allocated to Fieldwood Energy I (in the case of Closing Accounts Receivable attributable to the FWE I Assets) or Fieldwood Energy III (in the case of Closing Accounts Receivable other than those attributable to the FWE I Assets).

10.13   <u>Directors' and Officers' Indemnification.</u>

(a)     Buyer shall indemnify, defend and hold harmless (i) each individual Person who is, as of the Closing Date, a director, officer or manager of any Seller, excluding in each case each such Person who is an Excluded Party (as such term is defined in the Plan), and (ii) Matt McCarroll with respect to his service, prior to the Closing Date, as a director, officer or manager (as applicable) of the Sellers (the "***D&O Indemnified Parties***"), against any and all Losses (including, for the avoidance of doubt, reasonable attorneys' fees, costs and other out-of-pocket expenses) arising out of or relating to any threatened or actual Claim based in whole or in part on, or arising out of or relating in whole or in part to, the fact that such individual Person is or was a director, officer or manager of one or more of the Sellers whether based upon, arising out of or relating to any act or omission actually or allegedly committed or attempted at or prior to the Closing Date and whether asserted or claimed prior to, or at or after, the Closing Date, including all Claims based in whole or in part on, or arising in whole or in part out of, or relating to this Agreement or the transactions contemplated hereby, in each case to the full extent a Seller would be permitted under applicable Law to indemnify its own directors, officers or managers (including payment of expenses in advance of the final disposition of any such action or proceeding to each D&O Indemnified Party), but only to the extent that such Losses would be indemnifiable by the Sellers pursuant to the terms of (x) the organizational documents of the Sellers or (y) any indemnification agreement between one or more Sellers, on the one hand, and the D&O Indemnified Party(ies) seeking indemnification from Buyer pursuant to this <u>Section 10.13(a)</u>, on the other hand, set forth on **<u>Schedule 10.13(a)</u>**, in each case, as such organizational documents or agreements existed on the Petition Date (the "***Existing D&O Indemnification Terms***"); *provided*, *however*, that Buyer's obligation to indemnify and hold harmless the D&O Indemnified Parties pursuant to this <u>Section 10.13(a)</u> with respect to Losses associated with any Claim shall be reduced by the amount of any recovery actually received by the applicable D&O Indemnified Party(ies) under the Tail Policy with respect to such Claim (the "***D&O Indemnified Liabilities***").  A D&O Indemnified Party shall not be entitled to make a claim against Buyer for indemnification pursuant to this <u>Section 10.13(a)</u> with respect to an underlying Claim unless and until such D&O Indemnified Party has made a claim against the Tail Policy with respect to such Claim and received a determination of coverage available under the Tail Policy with respect thereto.

69

(b)    Buyer acknowledges that certain D&O Indemnified Parties may have rights to indemnification, advancement of expenses and/or insurance provided by the Sellers, but excluding, for purposes of the definition of "Indemnitors", the Tail Policy and the insurance providers with respect thereto (collectively, the "**Indemnitors**").  Buyer hereby agrees that as between Buyer and Sellers (i) the Tail Policy and the insurance providers with respect thereto are the indemnitors of first resort with respect to indemnity obligations to the D&O Indemnified Parties, (ii) Buyer's indemnity obligations to the D&O Indemnified Parties apply only once coverage under the Tail Policy has been exhausted upon either payment of the Tail Policy's limits of liability or a determination by the insurance providers thereof that coverage is unavailable with respect to a particular Loss, (iii) the Indemnitors' indemnity obligations to the D&O Indemnified Parties are secondary to Buyer's indemnity obligations to the D&O Indemnified Parties, (iv) Buyer shall be required to advance the full amount of expenses incurred by any D&O Indemnified Party and shall be liable for the full amount of all expenses, judgments, penalties, fines and amounts paid in settlement to the extent legally permitted and as required by the terms of this Agreement, without regard to any rights the D&O Indemnified Party may have against the Indemnitors, but only to the extent that such expenses would be advanced, and such expenses, judgments, penalties, fines and amounts paid in settlement would be payable, in each case pursuant to the Existing D&O Indemnification Terms and (v) Buyer irrevocably waives, relinquishes and releases the Indemnitors from any and all claims against the Indemnitors for contribution, subrogation or any other recovery of any kind in respect thereof in respect of the matters set forth in this Section 10.13(b).  Buyer further agrees that no advancement or payment by an Indemnitor on behalf of a D&O Indemnified Party with respect to any claim for which a D&O Indemnified Party has sought indemnification from Buyer shall affect the foregoing and the applicable Indemnitor shall have a right of contribution and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of the D&O Indemnified Party against Buyer.  Buyer and the D&O Indemnified Parties agree that the Indemnitors are express third party beneficiaries of the terms of this Section 10.13.

(c)    Without limiting Section 10.13(a), in the event a Claim is brought against any D&O Indemnified Party (whether arising before or after the Closing Date), nothing in this Section 10.13 shall limit the D&O Indemnified Party's(ies') right, to the extent provided pursuant to the Existing D&O Indemnification Terms, to retain counsel satisfactory to him or her (and Buyer shall (to the extent such coverage would be available pursuant to the Existing D&O Indemnification Terms) pay the fees and expenses of such counsel (to the extent such fees and expenses constitute D&O Indemnified Liabilities) for the D&O Indemnified Party promptly as statements therefor are received), *provided* that, to the extent the D&O Indemnified Party(ies) would retain control of any such defense pursuant to the Existing D&O Indemnification Terms, the D&O Indemnified Party(ies) shall retain control of any such defense.

(d)    In the event that Buyer or any of its successors or assigns (i) consolidates with or merges into any other Person and is not the continuing or surviving corporation or entity of such consolidation or merger; or (ii) sells, transfers or conveys to any Person or Persons acting in concert all or substantially all of its properties and assets, or ownership of a majority of equity representing the right to control the management of Buyer, then, and in each such case, Buyer shall cause proper provision to be made so that the successors and assigns of Buyer shall assume all of the obligations of Buyer set forth in this Section 10.13.

(e)      Each manager that is included in the D&O Indemnified Parties is identified on **Schedule 10.13(e)**.

10.14   Rights of Use.[12]  The Parties recognize that, under current BSEE policy, BSEE will recognize only a single entity as the holder of a right of use and easement (each, a "***RUE***").  The Parties agree that RUE No. OCS-G 30329 covering the South Marsh Island 132 Platform B (Complex ID 21982) shall be held by Fieldwood Energy I (upon completion of the anticipated Divisive Merger) on behalf of both itself and Buyer; the Parties agree that, as a contractual matter between themselves, Fieldwood Energy I and Buyer shall each own a one-half interest in such platform and shall each be responsible for one half of the costs and obligations (for operating, decommissioning and otherwise) relating to such platform.   The Sellers and Buyer will use commercially reasonable efforts to obtain, to the extent required by BSEE, replacement Right of Use Agreements with respect to each Right of Use Agreement listed on **Schedule 10.14** at, or as promptly as practicable following, the Closing.  The rights of the Sellers and Buyer to use, and the obligations with respect to, any RUE listed in **Part 1** of **Schedule 10.14** shall be governed by the terms of the joint operation agreements from the Lease(s) associated with such RUE.

10.15   Post-Closing Agreements.   On the date of the consummation of the transactions contemplated by the Divisive Merger, each Seller shall, and shall cause its applicable Affiliates to, and Buyer shall, deliver counterparts to the TSA, the SEMS Bridging Agreement, the ST 308 Performance Bond, the Farmout Agreement, and each of the Joint Operating Agreement Amendments.

10.16   Effective Date Payments.   On the Effective Date, the Sellers will pay, or cause to be paid, each of the Effective Date Cash Obligations that is to be paid on the Effective Date pursuant to the Plan to the applicable payees thereof.

## ARTICLE XI
## ASSUMPTION AND RETENTION OF LIABILITIES

11.1   Buyer's Assumption of Liabilities.   Subject to the terms of this Agreement, if the Closing occurs, Buyer shall be deemed to have assumed (and shall pay, perform and discharge) the following Liabilities of the Sellers, as of the Closing (collectively, the "***Assumed Liabilities***"):

(a)      all Liabilities to the extent arising out of the Leases and the Assigned Contracts that are Acquired Interests, but, as to such Leases and such Assigned Contracts that constitute Other Assets, only to the extent that such Liabilities arise after the Closing;

(b)      all Liabilities to the extent arising out of the ownership, operation, use or environmental condition of the Acquired Interests (other than the Leases and Assigned Contracts), but, as to the Other Assets that are Acquired Interests, only to the extent that the acts, omissions, events or conditions giving rise thereto first arise, occur or come into existence after the Closing;

---

[12] Note to Draft: Section 10.14 is under discussion between the Parties.  Any change to this Section 10.14 will require the consent of Apache.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

(c)      all Liabilities to assess, remediate, remove, transport or dispose as required under Environmental Law any Environmental Contaminants present as of the Closing at the Acquired Interests;

(d)      all Liabilities (whether arising before, at or after the Closing) to the extent arising out of the plugging, abandonment and decommissioning of, and all related salvage, site clearance and surface restoration activities for, any Field Assets that are Acquired Interests to the extent required under applicable Law or the terms of the applicable Leases, but, as to such Field Assets that constitute Other Assets, excluding any monetary fines and penalties to the extent that such monetary fines and penalties arise from or relate to facts or conditions existing or occurring at or before the Closing;

(e)      all Liabilities to the extent arising out of any Imbalances attributable to the Acquired Interests;

(f)      all Liabilities to the extent arising out of any Suspense Funds delivered to Buyer at the Closing but excluding Liabilities with respect to misapplication of any Suspense Funds (or any escheat or other Laws related thereto) before the Closing;

(g)      all Liabilities to the extent arising out of any Prepaid JOA Funds or Undisbursed Revenue, in each case, that is delivered to Buyer at the Closing but excluding Liabilities with respect to misapplication of Prepaid JOA Funds or Undisbursed Revenue (or any escheat or other Laws related thereto) before the Closing;

(h)      all Liabilities assumed by Buyer pursuant to Section 6.8;

(i)      all Liabilities for Taxes attributable to the Acquired Interests other than the Retained Taxes;

(j)      all Liabilities relating to (i) any Seller Employee who becomes a Transferred Employee, that arise at, before or after the Closing, in each case unless such claim is (A) discharged under the Plan or (B) covered by insurance and (ii) any Employee Severance that becomes due and payable following the Closing;

(k)      all indemnities of Buyer under Section 1.2, Section 2.3, Section 2.4 and Section 2.5;

(l)      all Working Capital Liabilities;

(m)      the D&O Indemnified Liabilities;

(n)      all Liabilities arising out of or relating to any affirmative defenses of third parties with respect to any Claim or cause of action assigned to Buyer pursuant to Section 1.2(h), Section 1.2(v) and Section 1.2(qq) to the extent that if treated as Retained Liabilities such defenses would not constitute general unsecured claims of the Sellers; and

72

(o)     the Allowed FLFO Claims (as defined in the Plan) remaining following distribution of the FLFO Distribution Amount (as defined in the Plan) pursuant to the Plan (as modified to the extent set forth in the First Lien Exit Facility Documents (as defined in the Plan)).

Notwithstanding anything to the contrary herein, Assumed Liabilities shall not include any surety bond premiums, indemnity obligations or other obligations on account of surety bonds that were obtained by the Sellers.

11.2    Sellers' Retention of Liabilities.  Notwithstanding anything to the contrary set forth in this Agreement or in any other document or instrument entered into in connection with this Agreement, the Parties expressly acknowledge and agree that Buyer is assuming only the Assumed Liabilities and is not assuming any other Liability of any Seller.  All other Liabilities of each Seller or any of its Affiliates (or any predecessor of any Seller or any of its Affiliates or any prior owner of all or part of their businesses and assets) shall be retained by and remain Liabilities of such Seller and its Affiliates (all such Liabilities not being assumed being herein referred to as the "***Retained Liabilities***") including the following:

(a)     all Liabilities arising out of the Leases and the Assigned Contracts except those Liabilities set forth in Section 11.1(a);

(b)     all Liabilities arising out of the plugging, abandonment and decommissioning of, and all related salvage, site clearance and surface restoration activities for, any assets, properties or leases, except those Liabilities set forth in Section 11.1(d);

(c)     all Liabilities relating to the presence of Environmental Contaminants, except those Liabilities set forth in Section 11.1(c);

(d)     [reserved];

(e)     all current liabilities of the Sellers and their Subsidiaries, including all expenses and accounts, notes and other payables (other than the Working Capital Liabilities);

(f)     all Liabilities arising out of the ownership, operation, use or environmental condition of the Acquired Interests (other than Leases and Assigned Contracts) prior to or as of the Closing, except those liabilities set forth in Section 11.1(b);

(g)     all indebtedness, whether or not encumbering all or any portion of the Acquired Interests (other than the Working Capital Liabilities);

(h)     all Liabilities arising out of any Suspense Funds, Undisbursed Revenue and Prepaid JOA Funds (except for those Liabilities described in Sections 11.1(f) and Section 11.1(g));

(i)     [reserved];

(j)     all Liabilities arising out of or relating to the Decommissioning Agreement and Apache PSA;

(k)       all Liabilities related to, resulting from or otherwise arising out of or relating to any Excluded Assets (other than the Working Capital Liabilities);

(l)       all Liabilities arising out of or relating to any Seller's breach of this Agreement;

(m)       all Liabilities for (a) Taxes of the Sellers or Taxes relating to the Acquired Interests (other than Fieldwood U.A. Interests) or the Assumed Liabilities with respect to any Pre-Closing Tax Period (including Property-Related Taxes and Production Taxes that are allocated to the Pre-Closing Tax Period pursuant to Section 6.12), (b) Taxes imposed on Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof, or for which Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof may otherwise be liable, with respect to any Pre-Closing Tax Period; (c) Taxes imposed on Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof, or for which Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof may otherwise be liable, as a result of having been a member of any Company Group; and (d) Transfer Taxes solely to the extent such Transfer Taxes are the responsibility of the Sellers pursuant to Section 6.12 (the "***Retained Taxes***");

(n)       all Liabilities for non-compliance by the Sellers or Buyer (or any of their respective Affiliates) with any bulk sales, bulk transfer or similar Law;

(o)       all Liabilities relating to any current or former independent contractor of any Seller or any of its Affiliates or any Seller Employee or other current or former employee of any Seller or any of its Affiliates who does not become a Transferred Employee, that arise at, before or after the Closing (except for those Liabilities assumed by Buyer pursuant to Section 6.8(c));

(p)       all Liabilities arising out of or relating to any Claim with respect to facts and circumstances existing prior to the Closing, including Liabilities for any fines or penalties relating thereto, except (i) as provided in Section 11.1(b) through Section 11.1(h) and (ii) any affirmative defenses of third parties with respect to any Claim or cause of action assigned to Buyer pursuant to Section 1.2(h), Section 1.2(v) and Section 1.2(qq) except to the extent that if treated as Retained Liabilities such defenses would constitute general unsecured claims of the Sellers;

(q)       all Liabilities relating to an Employee Plan that is not an Assumed Employee Plan;

(r)       Liabilities satisfied, compromised, settled, released or discharged pursuant to the Plan and the Confirmation Order; and

(s)       all Effective Date Cash Obligations.

Notwithstanding anything contained in this Section 11.2 or elsewhere in this Agreement or any Ancillary Document, Assumed Liabilities shall include all Fieldwood Energy I Closing Accounts Payable.

11.3   <u>Reservation as to Third Persons</u>.  Nothing herein is intended to limit or otherwise waive any recourse Buyer or the Sellers may have against any Third Person for any Liabilities that may be incurred with respect to the Acquired Interests.

## ARTICLE XII
## MISCELLANEOUS

12.1   <u>Expenses</u>.  Except as otherwise specifically provided herein or in any order of the Bankruptcy Court, all fees, costs and expenses (including engineering, land, title, legal, accounting, consulting and other professional fees, costs and expenses) incurred by Buyer, Buyer 2 or the Sellers in negotiating this Agreement, the Ancillary Documents or in consummating the transactions contemplated herein or therein shall be paid by the Party incurring the same whether or not the Closing shall have occurred.  Buyer shall be solely responsible and pay for all recording fees related to the transfer of the Acquired Interests; *provided* that if any such recording fees are required to be paid prior to the Closing the Sellers shall pay such recording fees when due.

12.2   <u>Notices</u>.   All notices and communications required or permitted to be given hereunder (each, a "***Notice***") shall be in writing and shall be delivered personally, or sent by certified U.S. mail, postage prepaid with return receipt requested, bonded overnight courier, by facsimile or email transmission (provided any such facsimile or email transmission is confirmed either orally or by written confirmation), addressed to the appropriate Party at the address for such Party shown below:

| If to Buyer or Buyer 2: | If to the Sellers: |
|---|---|
| [__] | c/o Fieldwood Energy LLC |
| | 2000 W. Sam Houston Pkwy. S., Suite 1200 |
| | Houston, Texas  77042 |
| | Attention:  Mike Dane |
| | Thomas R. Lamme |
| | Jon Graham |
| | Email:     MDane@fwellc.com |
| | TLamme@fwellc.com |
| | JGraham@fwellc.com |
| | |
| with a copy (which will not constitute notice) to: | with a copy (which will not constitute notice) to: |
| Davis Polk & Wardwell LLP | Weil, Gotshal & Manges LLP |
| 450 Lexington Avenue | 200 Crescent Court, Suite 300 |
| New York, New York 10017 | Dallas, Texas  75201 |
| Attention:  Damian Schaible | Attention:  Rodney L. Moore |
| Natasha Tsiouris | Samuel C. Peca |
| Cheryl Chan | Matt Barr |
| Email:     damian.schaible@davispolk.com | Alfredo R. Perez |

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

If to Buyer or Buyer 2:

      natasha.tsiouris@davispolk.com
      cheryl.chan@davispolk.com

If to the Sellers:

            Jessica Liou

Email:    rodney.moore@weil.com
          samuel.peca@weil.com
          matt.barr@weil.com
          alfredo.perez@weil.com
          jessica.liou@weil.com

Any Notice given in accordance herewith shall be deemed to have been given and received upon: (a) if by personal delivery, then upon receipt (except, if a Notice is received at or after 5:00 p.m. Central Time or on a day that is not a Business Day, it shall be deemed received on the next Business Day), (b) if sent by U.S. certified mail, postage prepaid, return receipt requested, then the date shown as received on the return notice, (c) if sent by facsimile or email transmission, the date such facsimile or email transmission is confirmed either orally or by written confirmation, or (d) if by bonded overnight courier, the date shown on the notice of delivery. Any Party may change the address, facsimile number or email address to which Notices are to be addressed by giving written notice to the other Party in the manner provided in this <u>Section 12.2</u>.

12.3   <u>Amendments</u>. Except as set forth in <u>Section 1.2</u>, <u>Section 2.1</u>, <u>Section 2.3(b)</u>, <u>Section 2.4</u>, <u>Section 2.6</u> and <u>Section 6.7</u>, this Agreement, including all Exhibits and Schedules hereto, may be amended or modified only by an agreement in writing executed by all of the Parties.

12.4   <u>Waiver</u>. No Party shall be deemed to have waived or discharged any claim arising out of this Agreement, or any power, right, privilege, remedy or condition under this Agreement, unless the waiver or discharge of such claim, power, right, privilege, remedy or condition is expressly set forth in a written instrument duly executed and delivered by the Party against whom the waiver or discharge is sought to be enforced. A waiver or discharge made on one occasion or a partial waiver or discharge of any power, right, privilege, remedy or condition shall not preclude any other or further exercise or enforcement of such power, right, privilege or remedy or requirement to satisfy such condition. Except as expressly provided otherwise in this Agreement, the rights of each Party under this Agreement shall be cumulative, and the exercise or partial exercise of any such right shall not preclude the exercise of any other right.

12.5   <u>No Third-Party Beneficiaries</u>. Nothing in this Agreement entitles any Person other than Buyer, Buyer 2 and the Sellers, including Fieldwood Energy I and GOM Shelf and their Subsidiaries, to any claims, remedy or right of any kind; *provided, however,* (a) the D&O Indemnified Parties are intended to be, and shall be, third party beneficiaries of <u>Section 10.12</u>, (b) the Non-Recourse Parties are intended to be, and shall be, third party beneficiaries of <u>Section 12.14</u> and (c) the Seller Indemnified Parties are intended to be, and shall be, third party beneficiaries of the rights of Seller Indemnified Parties specified in <u>Article XIII</u>. From and after the establishment of the Liquidating Trust, the Liquidating Trustee shall be a third party beneficiary of the Sellers' rights under this Agreement.

12.6     Assignment.

(a)     Subject to Section 12.6(b), neither this Agreement nor any rights, interests or obligations hereunder shall be assigned by any Party by operation of Law or otherwise without the other Party's express written consent (which may be granted or withheld in the sole discretion of such other Party); *provided, however,* that Buyer and Buyer 2 shall be permitted, upon notice to the Sellers, to assign all or part of its respective rights or obligations hereunder (including obligations related to the Assumed Liabilities) to any wholly-owned Subsidiary of NewCo (as defined in the Plan) and the Sellers may assign their respective rights and obligations under this Agreement to any liquidating trust or other similar representative of the Sellers created or appointed pursuant to a Bankruptcy Court order.  Notwithstanding the foregoing, no assignment of any rights hereunder shall relieve the assigning Party of any obligations or responsibilities hereunder.

(b)     If a Liquidating Trust is established, from and after the formation of the Liquidating Trust, subject to the terms of the Confirmation Order, all rights and obligations of the Sellers under this Agreement shall accrue to and be for the benefit of and shall be exercisable by the Liquidating Trust, as provided by any order of the Bankruptcy Court and the Liquidating Trustee shall be entitled to exercise all of the rights of the Sellers under this Agreement.

12.7     Counterparts.  This Agreement and any amendment hereto may be executed by Buyer, Buyer 2 and the Sellers in any number of counterparts, each of which shall be deemed an original instrument, but all of which together shall constitute but one and the same agreement. Notwithstanding anything to the contrary in Section 12.2, delivery of an executed counterpart of a signature page to this Agreement or any amendment hereto by telecopier, facsimile or email attachment that contains a portable document format (.pdf) file of an executed signature shall be effective as delivery of a manually executed counterpart of this Agreement or such amendment, as applicable.

12.8     Governing Law; Jurisdiction; Venue; Jury Trial.

(a)     Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this Agreement or the negotiation, execution, termination, performance or non-performance of this Agreement, or any Ancillary Document (unless such Ancillary Document provides for the application of the laws of another jurisdiction) shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of New York applicable hereto.

(b)     Without limitation of any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and

venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Claim; *provided*, *however*, that, if the Bankruptcy Cases have been closed pursuant to Section 350(a) of the Bankruptcy Code (or in the event that the Bankruptcy Court determines that it does not have jurisdiction), all Claims arising out of or relating to this Agreement shall be heard and determined in a New York state court or a federal court sitting in the Borough of Manhattan, New York, New York, and the Parties hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in any such Claim and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Claim.  The Parties consent to service of process by mail (in accordance with Section 12.2) or any other manner permitted by Law.

(c) THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY CLAIM OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE NEGOTIATION, EXECUTION, TERMINATION, PERFORMANCE OR NON-PERFORMANCE OF THIS AGREEMENT, OR ANY ANCILLARY DOCUMENT (UNLESS SUCH ANCILLARY DOCUMENT PROVIDES OTHERWISE).

12.9    Entire Agreement.  This Agreement (including the Exhibits, Schedules and Disclosure Schedules), the Ancillary Documents and the Plan constitute the entire agreement between the Parties with respect to the subject matter hereof and supersede all negotiations, prior discussions and prior agreements and understandings relating to such subject matter.  In the event of any conflict between this Agreement, any Ancillary Document and the Plan, this Agreement will control.

12.10   Binding Effect.  This Agreement shall be binding in all respects against (a) the Sellers and all of their successors and permitted assigns (including, for the avoidance of doubt, any trustee, examiner or other fiduciary appointed in the Bankruptcy Case) and (b) Buyer, Buyer 2 and all of their respective successors and permitted assigns.

12.11   Time of the Essence.  Time is of the essence for this Agreement.

12.12   No Partnership; No Fiduciary Duty.  This Agreement shall not create and it is not the purpose or intention of the Parties to create any partnership, mining partnership, joint venture, general partnership or other partnership relationship and none shall be inferred.  Nothing in this Agreement shall be construed to establish a fiduciary relationship between the Parties for any purpose.

12.13   Obligations of the Sellers.  The Liabilities, obligations, representations, warranties and covenants of the Sellers in this Agreement and in the Ancillary Documents are solidary (as that term is used under Louisiana law) and joint and solidary (as that phrase is used under Texas law).  Fieldwood shall cause each other Seller to comply with such Seller's obligations under this Agreement, including with respect to the transfer and assignment of the Acquired Interests and Assumed Liabilities and the obligations in Section 6.1.

12.14   No Recourse.  Notwithstanding anything that may be expressed or implied in this Agreement or any Ancillary Document, each Party, on behalf of itself and its Affiliates and their respective representatives, covenants, agrees and acknowledges that no Person other than the

Parties (and their respective successors or assignees, as applicable) has any obligation hereunder and that, neither any Party, their respective Affiliates or their respective representatives, shall have any right of recovery under this Agreement or any Ancillary Document against, and no personal liability under this Agreement or any Ancillary Document shall attach to, any Party's former, current or future debt or equity financing sources, equity holders, controlling Persons, directors, officers, employees, general or limited partners, members, managers, Affiliates or agents, or any former, current or future equity holder, controlling Person, director, officer, employee, general or limited partner, member, manager, Affiliate or agent of any of the foregoing (collectively, each of the foregoing but not including the Parties, a "**Non-Recourse Party**"), whether by or through attempted piercing of the corporate, limited partnership or limited liability company veil, by or through a claim by or on behalf of any Party against any Non-Recourse Party, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any applicable Law, whether in contract, tort or otherwise. Without limiting the foregoing, no past, present or future director, officer, employee, incorporator, member, partner, stockholder, Affiliate, agent, attorney or representative of the Sellers or any of their Affiliates shall have any liability for any obligations or liabilities of the Sellers under this Agreement of or for any Claim based on, in respect of, or by reason of, the transactions contemplated hereby.

12.15   Disclosure Schedules.  All references to Schedules in Article IV and Article V of this Agreement are referred to in this Section 12.15 as "**Disclosure Schedules**".  The information in the Disclosure Schedules constitutes exceptions, qualifications and/or supplements to particular representations or warranties of the Sellers, Buyer and Buyer 2 as set forth in this Agreement.  The Disclosure Schedules shall not be construed as indicating that any disclosed information is required to be disclosed, and no disclosure shall be construed as an admission that such information is material to, outside the ordinary course of business of, or required to be disclosed by, the Sellers, Buyer or Buyer 2 or constitutes, individually or in the aggregate, a Material Adverse Effect.  Capitalized terms used in the Schedules that are not defined therein and are defined in this Agreement shall have the meanings given to them in this Agreement.  The captions contained in the Schedules are for the convenience of reference only, and shall not be deemed to modify or influence the interpretation of the information contained in the Disclosure Schedules or this Agreement.  The statements in each Schedule of the Disclosure Schedules qualify and relate to the corresponding provisions in the Sections of this Agreement to which they expressly refer and to each other Section in Article IV or Article V of this Agreement to which the applicability of a statement or disclosure in a particular Schedule of the Disclosure Schedules is readily apparent on its face.

12.16   Other Contract Interpretation.

(a)   Headings.  The headings of the Exhibits, Schedules, Articles, Sections, and subsections of this Agreement are for guidance and convenience of reference only and shall not limit or otherwise affect any provision of this Agreement.  All references in this Agreement to any "Section," "Article," "Annex," "Exhibit," or "**Schedule**" are to the corresponding Section, Article, Annex, Exhibit or Schedule of this Agreement unless otherwise specified (subject to Section 12.15).

(b)   Severability.  If any provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of Law or public policy, it shall not affect the validity or

enforceability of the other provisions here and all other provisions of this Agreement shall nevertheless remain in full force and effect. Upon such determination that any provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby fulfilled to the greatest extent possible.

(c)    <u>Agreement Not to Be Construed Against Drafter</u>. The Parties have participated jointly in negotiating and drafting this Agreement. In the event that an ambiguity or a question of intent or interpretation arises, both this Agreement and the Ancillary Documents will be construed as if drafted jointly by the Parties. No presumption or burden of proof will arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement or any Ancillary Document.

(d)    <u>Miscellaneous Interpretation</u>. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a day other than a Business Day, the period in question shall end on the next succeeding Business Day. Whenever the words "include," "***includes***" or "***including***" are used in this Agreement, they will be deemed to be followed by the words "***without limitation***" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following. Unless the context otherwise requires, (1) "***or***" is disjunctive but not exclusive, (2) words in the singular include the plural and vice versa, (3) the words "herein," "hereof," "hereby," "***hereunder***" and words of similar nature refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited, (4) the use in this Agreement of a pronoun in reference to a Party or Person includes the masculine, feminine or neuter, as the context may require, (5) reference to any Person includes the successors and permitted assigns of that Person, (6) any reference in this Agreement to "$" means United States dollars, (7) and reference in this Agreement to "***days***" (but not "***Business Days***") means to calendar days, (8) reference to any law in this Agreement means such law as amended, modified, codified, reenacted, supplemented or superseded in whole or in part, and in effect from time to time together with any rules or regulations promulgated thereunder, (9) any reference in this Agreement to "***related to***", "***relating to***" or a similar phrase, in each case, in respect of the business of the Sellers, the Acquired Interests, or any other matter means, unless the context otherwise requires, "***related in whole or in part to***", "***relating in whole or in part to***" or a similar construction in the case of a similar phrase, as applicable, and (10) any reference in this Agreement to "***transactions contemplated by this Agreement***" or words of similar import includes the transactions contemplated by the other Ancillary Documents except as the context may otherwise require. The Annex, Schedules and Exhibits attached to this Agreement are deemed to be part of this Agreement and included in any reference to this Agreement. If the deadline for performance falls on a day that is not a Business Day, then the actual deadline for performance will be the next succeeding day that is a Business Day.

## ARTICLE XIII
## SURVIVAL AND INDEMNIFICATION

13.1    <u>Survival; Limited Recourse Against Sellers</u>.

(a)    The representations and warranties of the Sellers, Buyer and Buyer 2 contained herein and in any certificate or other writing delivered by the Sellers pursuant hereto, including any representation or warranty that may be deemed to be made pursuant to <u>Section 1.1</u> with respect to the Acquired Interests being acquired by Buyer or Buyer 2 free and clear of any and all Encumbrances (other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances)), shall terminate upon and not survive the Closing and there shall be no liability (whether arising in contract, tort or otherwise, or whether at law or in equity, and regardless of the legal theory under which any entitlement, remedy or recourse may be sought or imposed (including all rights afforded by any statute which limits the effects of a release) with respect to unknown claims)) thereafter in respect thereof.  Nothing herein shall limit Buyer's or Buyer 2's remedies in the event of Fraud, except that Buyer and Buyer 2 shall have no remedy in the event of Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries.  Each of the covenants of the Sellers, Buyer and Buyer 2 contained in this Agreement shall terminate upon the Closing except to the extent that performance under such covenant is to take place after Closing, in which case such covenant shall survive the Closing until the earlier of (i) performance of such covenant in accordance with this Agreement or (ii) the expiration of applicable statute of limitations with respect to any claim for any failure to perform such covenant (for clarity, any covenant that may be deemed to be made pursuant to <u>Section 1.1</u> with respect to the Acquired Interests being acquired by Buyer or Buyer 2 free and clear of any and all Encumbrances (other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances) shall terminate upon Closing)).  The intended effect of termination of representations, warranties, covenants and agreements is to bar, from and after the date of termination, any claim or cause of action based on (x) the alleged inaccuracy of such representation or breach of such warranty or (y) an alleged breach or failure to fulfill such covenant or agreement; *provided* that if a written notice of any claim with respect to any covenant to be performed after Closing is given prior to the expiration of such covenant then such covenant shall survive until, but only for purposes of, the resolution of such claim by final, non-appealable judgment or settlement.

(b)    Neither Buyer nor Buyer 2 shall have any recourse against any Person who is not a party to this Agreement (excluding any successor or assign of any Seller), including any Affiliate of any Seller or any lender or creditor of any Seller from and after Closing for any Losses relating to the Acquired Interests or this Agreement (including with respect to title and environmental matters) or the Sellers' breach of any representations and warranties, covenants or other provision of this Agreement.  In addition, each of Buyer and Buyer 2 agree to the terms, conditions and limitations set forth in <u>Section 1.5</u>.

(c)    No Seller shall have any recourse against any Person who is not a party to this Agreement (excluding any successor or assign of Buyer or Buyer 2), including any Affiliate of Buyer or Buyer 2 or any lender or creditor of Buyer or Buyer 2 from and after Closing for any Losses relating to the Acquired Interests or this Agreement (including with respect to title and environmental matters) or Buyer or Buyer 2's breach of any representations and warranties, covenants or other provision of this Agreement.

(d)    For the avoidance of doubt, nothing in this Agreement shall prohibit the Sellers from ceasing operations or winding up their respective affairs following the Closing.

13.2　　Indemnification by Buyer.　From and after Closing, Buyer hereby agrees to indemnify and hold each Seller, Fieldwood Energy I, GOM Shelf, and each of their successors, their Affiliates and all of their respective officers, managers, directors, employees, equity owners and agents (collectively, the "**Seller Indemnified Parties**") harmless from and against any and all Liabilities (including reasonable attorneys' fees and costs incurred in connection therewith) based upon, attributable to or resulting from:

(a)　　the Fieldwood Energy I Closing Accounts Payable; and

(b)　　all Assumed Liabilities to the extent associated with the Co-Owned Assets that are Acquired Interests.

13.3　　Indemnification Procedures.

(a)　　In the event that any proceedings shall be instituted or that any claim or demand shall be asserted by any Indemnified Party in respect of which indemnity may be sought under this Agreement (an "**Indemnification Claim**"), the Indemnified Party shall reasonably and promptly cause written notice of the assertion of any Indemnification Claim of which it has knowledge which is covered by such indemnity to be provided to the Indemnifying Party.  Such notice shall set forth in reasonable detail such Indemnification Claim and the basis for indemnification.  The failure to so notify the Indemnifying Party shall not relieve the Indemnifying Party of its obligation hereunder, except to the extent such failure shall have actually prejudiced the Indemnifying Party.  The Indemnifying Party shall have the right, at its sole option and expense, to be represented by counsel of its choice, and to appoint lead counsel for and control, defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder.  If the Indemnifying Party elects to appoint lead counsel for and control, defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder, it shall within thirty (30) days of receipt of the Indemnification Claim notify the Indemnified Party of its intent to do so.  If the Indemnifying Party elects not to appoint lead counsel for and control, defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder, the Indemnified Party may control, defend against, negotiate, settle or otherwise deal with such Indemnification Claim.  If the Indemnifying Party shall assume the control of the defense of any Indemnification Claim, the Indemnified Party may participate, at his or its own expense, in the defense of such Indemnification Claim; *provided*, *however*, that such Indemnified Party shall be entitled to participate in any such defense with separate counsel at the expense of the Indemnifying Party if (i) so requested by the Indemnifying Party to participate or (ii) in the reasonable opinion of counsel to the Indemnified Party a conflict or potential conflict exists between the Indemnified Party and the Indemnifying Party that would make such separate representation advisable; and *provided*, *further*, that the Indemnifying Party shall not be required to pay for more than one (1) such counsel for all Indemnified Parties in connection with any Indemnification Claim.  The Parties agree to cooperate fully with each other in connection with the defense, negotiation or settlement of any such Indemnification Claim.  Notwithstanding anything in this Section 13.3 to the contrary, if the Indemnifying Party shall assume the control of the defense of any Indemnification Claim, the Indemnifying Party shall not, without the written consent of the Indemnified Party (which shall not be unreasonably withheld, conditioned or delayed), settle or compromise any Indemnification Claim or consent to entry of any judgment

82

unless the claimant provides to the Indemnified Party an unqualified release from all liability in respect of the Indemnification Claim. If the Indemnifying Party makes any payment on any Indemnification Claim, the Indemnifying Party shall be subrogated, to the extent of such payment, to all rights and remedies of the Indemnified Party to any insurance benefits or other claims of the Indemnified Party with respect to such Indemnification Claim.

(b)     After any final decision, judgment or award shall have been rendered by a Governmental Authority of competent jurisdiction and the expiration of the time in which to appeal therefrom, or a settlement shall have been consummated, or the Indemnified Party and the Indemnifying Party shall have arrived at a mutually binding agreement with respect to an Indemnification Claim hereunder, the Indemnified Party shall forward to the Indemnifying Party notice of any sums due and owing by the Indemnifying Party pursuant to this Agreement with respect to such matter. In the case of an Indemnification Claim that does not involve a third-party claim, if the Indemnifying Party does not notify the Indemnified Party within thirty (30) days following the receipt of a notice with respect to any such claim that the Indemnifying Party disputes its indemnity obligation to the Indemnified Party for any Losses with respect to such claim, such Losses shall be conclusively deemed a liability of the Indemnifying Party and the Indemnifying Party shall promptly pay to the Indemnified Party any and all Losses arising out of such claim. If the Indemnifying Party has timely disputed its indemnity obligation for any Losses with respect to such claim, the parties shall proceed in good faith to negotiate a resolution of such dispute and, if not resolved through negotiations, such dispute shall be resolved by litigation in an appropriate court of jurisdiction determined pursuant to <u>Section 12.8</u>.

(c)     The amount of any Losses payable by the Indemnifying Party shall be net of any (i) amounts recovered or recoverable by the Indemnified Party under applicable insurance policies or from any other Person alleged to be responsible therefor, and (ii) Tax benefit actually realized by the Indemnified Party arising from the incurrence or payment of any such Losses in the taxable year such Loss was incurred. If the Indemnified Party receives any amounts under applicable insurance policies, or from any other Person alleged to be responsible for any Losses, subsequent to an indemnification payment by the Indemnifying Party, then such Indemnified Party shall promptly reimburse the Indemnifying Party for any payment made or expense incurred by such Indemnifying Party in connection with providing such indemnification payment up to the amount received by the Indemnified Party, net of any expenses incurred by such Indemnified Party in collecting such amount.

(d)     The Indemnifying Party shall not be liable for any (i) consequential damages (but, for the avoidance of doubt, without limiting liability for direct damages), (ii) punitive damages or (iii) Losses for lost profits.

(e)     Each Indemnified Party must mitigate in accordance with applicable Law any loss for which such Indemnified Party seeks indemnification under this Agreement. If such Indemnified Party mitigates its loss after the Indemnifying Party has paid the Indemnified Party under any indemnification provision of this Agreement in respect of that loss, the Indemnified Party must notify the Indemnifying Party and pay to the Indemnifying Party the extent of the value of the benefit to the Indemnified Party of that mitigation (less the Indemnified Party's reasonable costs of mitigation) within two (2) Business Days after the benefit is received.

(f)     Each Indemnified Party shall use reasonable efforts to collect any amounts available under insurance coverage, or from any other Person alleged to be responsible, for any Losses payable under an indemnity in this Agreement.

(g)     Express Negligence.  THE INDEMNIFICATION, RELEASE, ASSUMED LIABILITIES, RETAINED LIABILITIES, WAIVER AND LIMITATION OF LIABILITY PROVISIONS PROVIDED FOR IN THIS AGREEMENT SHALL BE APPLICABLE WHETHER OR NOT THE LIABILITIES, LOSSES, COSTS, EXPENSES AND DAMAGES IN QUESTION AROSE OR RESULTED SOLELY OR IN PART FROM THE SOLE, ACTIVE, PASSIVE, CONCURRENT OR COMPARATIVE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OR VIOLATION OF LAW OF OR BY ANY INDEMNIFIED PARTY.

(h)     Tax Treatment of Indemnity Payments.  The Sellers, Buyer and Buyer 2 agree to treat any indemnity payment made pursuant to this Agreement as an adjustment to the Consideration for federal, state, local and foreign income tax purposes.  Any indemnity payment under this Agreement shall be treated as an adjustment to the value of the asset upon which the underlying Indemnification Claim was based, unless a final determination (within the meaning of Section 1313 of the Code) with respect to the Indemnified Party or any of its Affiliates causes any such payment not to be treated as an adjustment to the value of the asset for United States federal income tax purposes.

(i)     Sole and Exclusive Remedy.  Except for any post-Closing payment expressly contemplated by this Agreement or any claim for a breach of a Party's covenants hereunder (to the extent not limited by Section 13.1(a)) or for Fraud (but not Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries), the remedies provided in this Article XIII and in Section 8.3 shall be the sole and exclusive legal and equitable remedies of the Parties, from and after the Closing, with respect to this Agreement and the transactions contemplated hereby, and no Person will have any other entitlement, remedy or recourse, whether in contract, tort or otherwise, or whether at law or in equity, and regardless of the legal theory under which such entitlement, remedy or recourse may be sought or imposed (including all rights afforded by any statute which limits the effects of a release with respect to unknown claims), it being agreed that all of such other remedies, entitlements and recourse are expressly waived and released by the Parties to the fullest extent permitted by law.

[*Signature page follows*.]

WEIL:\97751377\56\45327.0007
WEIL:\97751377\59\45327.0007

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution Date.

**SELLERS:**

Fieldwood Energy Inc.

By: _____
Name:
Title:

Fieldwood Energy LLC

By: _____
Name:
Title:

Dynamic Offshore Resources NS, LLC

By: _____
Name:
Title:

Fieldwood Energy Offshore LLC

By: _____
Name:
Title:

Fieldwood Onshore LLC

By: _____
Name:
Title:

Fieldwood SD Offshore LLC

By: _____
Name:
Title:

Fieldwood Offshore LLC

By: _____
Name:
Title:

FW GOM Pipeline, Inc.

By: _____
Name:
Title:

GOM Shelf LLC

By: _____
Name:
Title:

Bandon Oil and Gas GP, LLC

By: _____
Name:
Title:

Bandon Oil and Gas, LP

By: _____
Name:
Title:

Fieldwood Energy SP LLC

By: _____
Name:
Title:

Galveston Bay Pipeline LLC

By: _____
Name:
Title:

Galveston Bay Processing LLC

By: _____
Name:
Title:

**BUYER:**

[_____]

By: _____
Name:
Title:

**BUYER 2:**

[_____]

By: _____
Name:
Title:

## Annex I

## Definitions

The following terms and expressions shall have the following meanings:

"***1933 Act***" means the Securities Act of 1933, as amended, and the rules and regulations as promulgated thereunder.

"***365 Contracts***" means all Applicable Contracts and other executory contracts and unexpired leases to which a Seller is a party that relate to the Acquired Interests, in each case that may be assumed by one or more Sellers pursuant to Section 365 of the Bankruptcy Code.

"***365 Schedule***" is defined in Section 6.7(a).

"***Accounts Receivable Collections***" is defined in Section 10.12(c).

"***Accounts Receivable Setoff***" is defined in Section 10.12(b).

"***Acquired Interests***" is defined in Section 1.2.

"***Affiliate***" means, with respect to a Person, any other Person that, as of the relevant time for which the determination of affiliation is made, directly or indirectly controls, is controlled by, or is under common control with, such Person. For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, contract, voting trust, membership in management or in the group appointing or electing management or otherwise through formal or informal arrangements or business relationships.

"***Agent***" is defined in the recitals.

"***Agreement***" is defined in the preamble and includes all annexes, schedules and exhibits hereto, as well as all supplements, amendments and restatements hereof.

"***Allocated Value***" means the value allocated to the applicable Acquired Interest, if any, as agreed in good faith by Buyer and the Sellers.

"***Allowed Priority Tax Claim***" has the meaning set forth in the Plan.

"***Allowed Specified Administrative Expense Claims***" has the meaning set forth in the Plan.

"***Alternative Bidder***" is defined in Section 6.4(b).

"***Alternative Transaction***" means (a) any sale, transfer or other disposition of all or a material portion of the Acquired Interests or (b) any series of sales, transfers or other dispositions of any portion of the Acquired Interests that, when taken collectively, constitutes a disposition of all or a material portion of the Acquired Interests, in each case, to any Person or Persons other than Buyer.

"**_Ancillary Documents_**" means each Assignment, Bill of Sale and Conveyance, the Assignment and Assumption Agreement, the Office Assets Conveyance, the TSA, the Farmout Agreement, the ST 308 Performance Bond, the SEMS Bridging Agreement, the Assignment of Leases and Subleases, the Joint Operating Agreement Amendments, the JV Assignment Agreement, the Funding Agreement, the Release Document and any other agreement, document, instrument or certificate entered into or delivered pursuant to this Agreement.

"**_Antitrust Law_**" means, collectively, the HSR Act, Title 15 of the United States Code §§ 1 7 (the Sherman Act), Title 15 of the United States Code §§ 12-27 and Title 29 of the United States Code §§ 52-53, (the Clayton Act), the Federal Trade Commission Act (15 U.S.C. §§ 41, et seq.) and the rules and regulations promulgated thereunder and any other Laws that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade or lessening of competition through merger or acquisition.

"**_Apache PSA_**" means that certain Purchase and Sale Agreement, dated as of July 18, 2013, by and among Apache Corporation, Apache Deepwater LLC, Apache Shelf, Inc., Apache Shelf Exploration LLC, GOM Shelf and Fieldwood, as amended from time to time, and the transaction documents executed in connection therewith.

"**_Applicable Consent_**" means any consent, waiver or approval that is required to be obtained from, or any notice that is required to be given to, any Third Person as a result of the assignment of the Acquired Interests by the Sellers to Buyer as contemplated by this Agreement (each, a "**_Consent_**") that (a) relates to an Assigned Contract, which consent, waiver or approval would be required for such Assigned Contract to be assumed and assigned to Buyer, after giving effect to Sections 365(c)(1) and 365(f)(1) of the Bankruptcy Code or (b) that relates to any Acquired Interest other than an Assigned Contract, other than, in each case, (i) for Preferential Rights and (ii) any Governmental Approvals.

"**_Applicable Contracts_**" means (a) all Contracts (_provided_ that, for clarity, any "Operating Agreement" or "Joint Operating Agreement" identified on the 365 Schedule shall be deemed a Contract for purposes of this definition) to which a Seller is a party or is bound to the extent covering, attributable to or relating to any of the Acquired Interests or to which any of the Acquired Interests is subject or bound, including, without limitation, operating agreements, crude oil, condensate and natural gas purchase and sale agreements, gathering agreements, transportation agreements, marketing, disposal or injection agreements, farmout and farmin agreements, unitization, pooling and communitization agreements, exploration agreements, development agreements, area of mutual interest agreements, exchange and processing contracts and agreements, partnership and joint venture agreements, confidentiality agreements and any other similar contracts, agreements and instruments, and all amendments thereto, and (b) all Easements.

"**_Applicable Governmental Approval_**" is defined in Section 2.4.

"**_Applicable Shared Asset Interests_**" means, with respect to each asset described on Schedule 1.2, the portion of the Sellers' right, title, and interest in each such asset that corresponds to the portion of the Sellers' right, title and interest in the Co-Owned Leases, the Co-Owned Subject Units and the Co-Owned Wells (collectively, the "Co-Owned Oil and Gas Properties"), as applicable, conveyed to Buyer under this Agreement.

"*AR Collections Period*" is defined in <u>Section 10.12(b)</u>.

"*Assets*" is defined in <u>Section 1.2</u>.

"*Assigned 365 Contracts*" is defined in <u>Section 6.7(a)</u>.

"*Assigned 365 Contracts List*" is defined in <u>Section 6.7(a)</u>.

"*Assigned Contracts*" means (a) the Assigned 365 Contracts and (b) all Applicable Contracts that are not 365 Contracts (other than Excluded Assets), and any and all amendments, ratifications or extensions of the foregoing.

"*Assignment and Assumption Agreement*" means that Assignment and Assumption Agreement to be entered into at Closing by the parties thereto, in the form attached as **Exhibit I** hereto.

"*Assignment, Bill of Sale and Conveyance*" means that Bill of Sale, Assignment and Assumption Agreement to be entered into at Closing by the parties thereto in the form attached as **Exhibit G** hereto for the Co-Owned Assets and in the form attached as **Exhibit H** hereto for the Other Assets.

"*Assignment of Leases and Subleases*" means each Assignment and Assumption of Leases and Subleases to be entered into at Closing by the parties thereto for the Office Sublease, the Lafayette Lease Agreement, the Warehouse Lease and the Lubrizol Sublease, in the form attached as **Exhibit J** hereto.

"*Assumed Employee Plan*" is defined in <u>Section 4.18(a)</u>.

"*Assumed Liabilities*" is defined in <u>Section 11.1</u>.

"*Avoidance Action*" means any avoidance, preference, recovery, claim, right or cause of action of any Seller arising under Chapter 5 of the Bankruptcy Code or under any analogous state or federal bankruptcy or non-bankruptcy laws.

"*Backstop Commitment Letter*" has the meaning set forth in the Plan.

"*Balance Sheet Date*" is defined in <u>Section 4.27</u>.

"*Bankruptcy Cases*" is defined in the recitals.

"*Bankruptcy Code*" is defined in the recitals.

"*Bankruptcy Court*" is defined in the recitals.

"*Bankruptcy Rules*" is defined in the recitals.

"*BOEM*" means the Bureau of Ocean Energy Management or any successor agency thereto.

"**BOEM Qualifications**" means the Person has received a GOM qualification number from BOEM, and is able to bid on, own and hold a lease on the Outer Continental Shelf, Gulf of Mexico region.

"**BSEE**" means the Bureau of Safety and Environmental Enforcement or any successor agency thereto.

"**Business Day**" means any day other than a Saturday, a Sunday or any other day on which banking institutions in, New York, New York or Houston, Texas, are required or authorized by Law or executive order to be closed.

"**Buyer**" is defined in the preamble.

"**Buyer 2**" is defined in the preamble.

"**Buyer Grandparent**" is defined in Section 5.11(b).

"**Buyer Grandparent Equity Interests**" is defined in Section 5.1(c).

"**Buyer Intermediate**" is defined in Section 5.1(b).

"**Buyer Obligation**" is defined in Section 2.1(c).

"**Buyer Parent**" is defined in Section 5.1(b).

"**Buyer Parent Debt**" is defined in Section 2.1(c).

"**Cash Portion**" means an amount in cash (which amount shall not exceed the proceeds of the Second Lien Exit Facility (as defined in the Plan) plus the proceeds of the Equity Rights Offering (as defined in the Plan) less $100,000,000), equal to (a) the Effective Date Cash Obligations Amount, less (b) the Closing Cash Amount.

"**Casualty Event**" means (a) any fire, explosion, accident, earthquake, act of the public enemy, act of God or other similar event or occurrence that results in damage to or the destruction of any Acquired Interest and (b) any taking, or threatened taking, of any Acquired Interest by condemnation or under the right of eminent domain.

"**CERCLA**" is defined in the definition of Environmental Contaminants.

"**Claims**" means any and all claims, demands, Encumbrances, notices of non-compliance or violation, notices of Liability or potential Liability, investigations, incidents of non-compliance (INCs), actions (whether judicial, administrative or arbitrational), causes of action, suits, proceedings and controversies.

"**Closing**" means the consummation of the transactions contemplated in this Agreement.

"**Closing Accounts Receivable**" means all current assets of the Sellers as of the Effective Time that are included in the Working Capital Assets, other than such current assets attributable to the Acquired Interests.

"**Closing Accounts Receivables Statement**" is defined in <u>Section 10.12(a)</u>.

"**Closing Cash Amount**" means the amount of cash in accounts of the Sellers as of immediately prior to the Effective Time, excluding all restricted cash (restricted cash includes, for the avoidance of doubt, all Suspense Funds, Excluded Suspense Funds, Prepaid JOA Funds, Excluded Prepaid JOA Funds, Undisbursed Revenue and Excluded Undisbursed Revenue), as determined in good faith by the Sellers and Buyer in accordance with GAAP.

"**Closing Date**" is defined in <u>Section 9.1</u>.

"**COBRA**" means Section 4980B of the Code and Sections 601 through 608 of ERISA.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company Group**" means any group of entities filing Tax Returns on an affiliated, combined, consolidated, unitary or similar basis for Tax purposes that, at any time on or before the Closing Date, includes or has included Fieldwood U.A. or Fieldwood Mexico or any of their respective Subsidiaries.

"**Confidential Information**" is defined in <u>Section 10.5</u>.

"**Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means an order of the Bankruptcy Court in form and substance, including with respect to (i) all findings of fact and conclusions of law and (ii) the matters described in <u>Section 2.3</u> through <u>Section 2.5</u>, acceptable to Fieldwood and the Buyer, confirming the Plan and, without limitation to the generality of the foregoing, such Confirmation Order shall provide that the transfer of the Acquired Interests to Buyer shall be, pursuant to, inter alia, Sections 105, 363, 365, 1123(a)(5)(b), 1129, 1141 and 1146 of the Bankruptcy Code, free and clear of any and all Encumbrances (other than Permitted Encumbrances (except for the Fieldwood U.A. Interests and the JV Interests, which shall not have any Permitted Encumbrances)) and Retained Liabilities, which Confirmation Order shall be subject to the consent rights set forth in the Restructuring Support Agreement.

"**Confirmation Outside Date**" has the meaning set forth in the Plan.

"**Consent**" is defined in the definition of Applicable Consent.

"**Consenting Creditors**" has the meaning set forth in the Plan.

"**Consideration**" is defined in <u>Section 2.1(a)</u>.

"**Contracts**" means any agreement, license, lease, sublease, sublicense, contract, promise, obligation, sale or purchase order, service order, indenture, note, bond, loan, mortgage, deed of trust, instrument, commitment or undertaking, including any exhibits, annexes, appendices or attachments thereto, and any amendments, modifications, supplements, extension or renewals thereto, but excluding, however (a) any Lease, easement (including the Easements), right-of-way

or other instrument, in each case, creating any oil and gas mineral interest or other real property interests and (b) any Permit.

"***Conveyed***" means conveyed, assigned, or sold pursuant to the Apache PSA, regardless of whether such conveyance, assignment, or bill of sale was recorded in the appropriate records of, or approved or recognized by, any applicable Governmental Authority.

"***Co-Owned Assets***" is defined in Section 1.2.

"***Co-Owned Assigned Contracts***" means the Assigned Contracts relating to any Co-Owned Lease, Co-Owned Subject Unit, Co-Owned Easement or Co-Owned Inventory.

"***Co-Owned Easements***" is defined in Section 1.2(c).

"***Co-Owned Field Assets***" means the Co-Owned Leases, Co-Owned Subject Units, Co-Owned Easements, Co-Owned Wells and Co-Owned Inventory.

"***Co-Owned Field Data***" is defined in Section 1.2(i).

"***Co-Owned Inventory***" is defined in Section 1.2(e).

"***Co-Owned Leases***" is defined in Section 1.2(a).

"***Co-Owned Records***" is defined in Section 1.2(j).

"***Co-Owned Scheduled Wells***" is defined in Section 1.2(d).

"***Co-Owned Subject Unit***" is defined in Section 1.2(b).

"***Co-Owned Subject Unit Agreement***" is defined in Section 1.2(b).

"***Co-Owned Wells***" is defined in Section 1.2(d).

"***Credit Agreement***" means that certain *Amended and Restated First Lien Credit Agreement*, dated as of April 11, 2018, by and among Fieldwood, as borrower, Fieldwood Energy Inc., as holdings, Cantor Fitzgerald Securities, as the administrative agent and collateral agent, the lenders party thereto, and the other parties thereto, as amended, restated, amended and restated, supplemented, or otherwise modified.

"***Credit Bid and Release***" is defined in Section 2.1(a)(1).

"***Credit Bid and Release New Equity Interests***" means the New Equity Interests being distributed to the holders of Allowed FLTL Secured Claims (as defined in the Plan) pursuant to the Plan.

"***Credit Bid and Release Rights***" means the Subscription Right (as defined in the Plan).

"***Cure Costs***" means, with respect to any given 365 Contract, all monetary liabilities, including pre-petition monetary liabilities, of the Sellers that must be paid or otherwise satisfied

to cure all of the Sellers' monetary defaults under such 365 Contract pursuant to Section 365 of the Bankruptcy Code in order for such 365 Contract to be assumed and assigned to Buyer (if applicable) as provided hereunder, as such amounts are determined by the Bankruptcy Court or approved pursuant to the assignment and assumption procedures provided for in the Plan, Confirmation Order, or herein.

"***D&O Indemnified Liabilities***" is defined in <u>Section 10.13(a)</u>.

"***D&O Indemnified Parties***" is defined in <u>Section 10.13(a)</u>.

"***Data Obligations***" is defined in <u>Section 4.25(i)</u>.

"***Debtors***" is defined in the recitals.

"***Decommissioning***" has the meaning ascribed to such term in the Decommissioning Agreement.

"***Decommissioning Agreement***" means that Decommissioning Agreement, dated as of September 30, 2013, by and among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood and GOM Shelf, as amended.

"***Delayed Asset***" is defined in <u>Section 2.3(b)</u>.

"***Designation Deadline***" is defined in <u>Section 6.7(c)</u>.

"***DIP Facility Credit Agreement***" means that certain *Senior Secured Debtor-in-Possession Term Loan Credit Agreement*, dated as of August 24, 2020, by and among Fieldwood, as borrower, Fieldwood Energy Inc., as holdings, Cantor Fitzgerald Securities, as the administrative agent and collateral agent, the lenders party thereto, and the other parties thereto, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

"***Direction Letter***" is defined in the recitals.

"***Disclosure Schedules***" is defined in <u>Section 12.15</u>.

"***Disclosure Statement***" means the Disclosure Statement For Joint Chapter 11 Plan Of Fieldwood Energy LLC And Its Affiliated Debtors, as may be amended, modified, or supplemented from time to time in form and substance acceptable to the Debtors, the Required DIP Lenders, and the Requisite FLTL Lenders.

"***Disclosure Statement Order***" means an order of the Bankruptcy Court approving the Disclosure Statement.

"***Divisive Merger***" has the meaning set forth in the Plan.

"***Divisive Merger Effective Time***" means the effective time of the Divisive Merger.

"***Easements***" means the Co-Owned Easements and Other Easements.

"*Effective Date*" means the "*Effective Date*" of the Plan.

"*Effective Date Cash Obligations*" means the Sellers' obligations under the Confirmation Order, the Plan, the Plan of Merger and the transactions contemplated thereby and this Agreement, including, without limitation, collectively: (i) the DIP Claims (as defined in the Plan) and related fees and expenses as provided in Section 2.4 of the Plan, (ii) the FLFO Distribution Amount (as defined in the Plan), (iii) the Professional Fee Escrow Amount (as defined in the Plan), (iv) the Restructuring Expenses (as defined in the Plan), (v) any Allowed Postpetition Hedge Claims, (vi) any Cure Amounts (as defined in the Plan), (vii) any Allowed Administrative Expense Claims (as defined in the Plan) not otherwise included in the other subsections of this definition, (viii) any Allowed Priority Tax Claims (as defined in the Plan), (ix) any Allowed Priority Non-Tax Claims (as defined in the Plan), (x) any Allowed Other Secured Claims (as defined in the Plan), (xi) the Plan Administrator Expense Reserve Amount (as defined in the Plan), (xii) the FWE I Cash Amount (as defined in the Plan of Merger), (xiii) an amount for the initial capitalization of Fieldwood Energy III as determined by the Sellers and the Majority Backstop Parties (as defined in the Backstop Commitment Letter), (xiv) any cash distributions to holders of Allowed Unsecured Trade Claims (as defined in the Plan), (xv) any other amounts as agreed between the Sellers and the Required DIP Lenders (as defined in the Plan) and the Requisite FLTL Lenders (as defined in the Plan), (xvi) amounts due or to become due after the Closing pursuant to any Governmental Settlement Agreement and (xvii) the amounts of any Claims asserted prior to the Closing with respect to facts and circumstances existing prior to the Closing (except to the extent such amounts constitute general unsecured claims of the Sellers), including, but not limited to, Claims for personal injury or damage to third party property (but with respect to such Claims that are covered by insurance policies, including for the avoidance of doubt, such Claims for personal injury or damage to third party property, only to the extent of the applicable deductible or retention amount under the applicable insurance policies covering such Claims) and fines and penalties related thereto (except to the extent such Claims or related Liabilities (x) constitute Assumed Liabilities or (y) are satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order), in each case of clauses (i) through (xvii) solely to the extent not paid by the Sellers prior to Closing.

"*Effective Date Cash Obligations Amount*" means the amount of cash necessary to satisfy the Effective Date Cash Obligations, as determined in good faith by the Sellers and Buyer.

"*Effective Time*" is defined in Section 1.4.

"*Employee List*" is defined in Section 4.17(a).

"*Employee Plan*" is defined in Section 4.18(a).

"*Employee Severance*" is defined in Section 6.8(c).

"*Employment Agreements*" is defined in Section 6.22.

"*Encumbrance*" means any encumbrance, license, right of first refusal, mortgage, deed of trust, pledge, security interest, lien, privilege, charge of any kind (including any agreement to grant any of the foregoing), adverse claim of any kind, capital lease, conditional sale or title retention

agreement, lease or sublease in the nature thereof or the filing of or agreement to give any financing statement under the Uniform Commercial Code of any jurisdiction.

"***End Date***" is defined in Section 8.1(b)(i).

"***Environmental Contaminants***" means "hazardous substances" and "pollutants or contaminants" as those terms are defined in Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act ("***CERCLA***"), petroleum, including any fraction thereof, any "natural gas, natural liquids, liquefied natural gas, or synthetic gas usable for fuel" as those terms are used in Section 101 of CERCLA, any "solid or hazardous waste" as those terms are defined or used in the Resource Conservation and Recovery Act and any industrial or oil and gas wastes regulated by applicable rules of any relevant Governmental Authority. The term also includes NORM concentrated, disposed of, released from or present on any Field Assets or resulting from or in association with Hydrocarbon activities on any Field Assets.

"***Environmental Law***" means all applicable Laws (including the CERCLA, the Resource Conservation and Recovery Act, the Oil Pollution Act of 1990 and such other applicable Laws relating to the Release, management or disposal of Environmental Contaminants including oilfield waste, in each case as amended from time to time) relating to the protection of the environment or protection of human health (to the extent relating to exposure to Environmental Contaminants).

"***Equity Rights Offering***" has the meaning set forth in the Plan.

"***Equity Rights Offering New Equity Interests***" means the New Equity Interests issuable upon exercise of the Credit Bid and Release Rights in accordance with the Plan.

"***ERISA***" means the Employee Retirement Income Security Act of 1974, as amended.

"***ERISA Affiliate***" is defined in Section 4.18(a).

"***Excluded Assets***" is defined in Section 1.3.

"***Excluded Contracts***" is defined in Section 6.7(c).

"***Excluded Prepaid JOA Funds***" means any funds received by the Sellers (in their capacity as operator of any Excluded Assets) on account of working interest owners in Excluded Assets as prepayments for items under operating or other agreements.

"***Excluded Suspense Funds***" means those proceeds of production and associated penalties and interest in respect of any Excluded Assets or any Hydrocarbons produced from or attributable to any Excluded Assets that belong to one or more Third Persons and are being held in suspense by any Seller or any Affiliate thereof.

"***Excluded Undisbursed Revenue***" means those proceeds of production and associated penalties and interest in respect of any Excluded Assets or any Hydrocarbons produced from or attributable to any Excluded Assets that belong to one or more Third Persons and have been received by, and at the Closing are being held by, the Sellers on account of such Third Persons for disbursement to such Third Persons after the Closing.

"***Execution Date***" is defined in the preamble.

"***Existing D&O Indemnification Terms***" is defined in <u>Section 10.13(a)</u>.

"***Farmout Agreement***" means that Farmout Agreement by and among Fieldwood Energy I, GOM Shelf and Buyer, in the form attached hereto as **Exhibit T**.

"***FCPA***" is defined in <u>Section 4.26</u>.

"***Field Assets***" means the Leases, Subject Units, Easements, Wells and Inventory.

"***Field Data***" means the Co-Owned Field Data and Other Field Data.

"***Fieldwood***" is defined in the preamble.

"***Fieldwood Energy I***" means a Texas limited liability company to be formed pursuant to the Plan of Merger under the name Fieldwood Energy I LLC (or such other name as may be substituted therefor in the final, as filed version of the Plan of Merger).

"***Fieldwood Energy I Closing Accounts Payable***" means, whether classified on the books and records of the Sellers as an account payable or otherwise, expenses of the Sellers incurred by any Seller as of the Effective Time but not yet paid as of the Effective Time and attributable to the FWE I Oil and Gas Properties and the GOM Shelf Oil and Gas Properties, including, without limitation:

(a)    payables arising from the exploration of and production and sale of oil and gas from the FWE I Oil and Gas Properties and the GOM Shelf Oil and Gas Properties;

(b)    payables to third parties on account of third party working interest owners to the extent that there is a corresponding joint interest billing receivable included in the Fieldwood Energy I Closing Accounts Receivable;

(c)    obligations for Royalties in respect of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties payable on account of Hydrocarbons produced from the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties and sold prior to and unpaid as of the Effective Time (*provided* that if a Royalty reporting, miscalculation, or underpayment claim is asserted after the Effective Time with respect to any Royalty paid prior to the Effective Time such claim or obligation shall not be deemed a Fieldwood Energy I Closing Accounts Payable except to the extent any such reporting, miscalculation, or underpayment claim (i) totals more than $1,000,000, (ii) arises out of the willful misconduct of the person or persons performing such reporting, calculations, or payments as determined by a final, non-appealable judgment of a court or other tribunal having jurisdiction) and (iii) is asserted within three (3) years of the Closing Date;

(d)    the GOM Shelf and FW GOM Pipeline Payables;

*provided*, that, Fieldwood Energy I Closing Accounts Payable shall exclude:

(i)     obligations for FWE I Suspense Funds, Excluded Suspense Funds and Excluded Prepaid JOA Funds;

(ii)     Interim Unpaid P&A Expenses;

(iii)     obligations to pay Royalties on Hydrocarbons produced from FWE I Oil and Gas Properties or GOM Shelf Oil and Gas Properties and sold from and after the Effective Date;

(iv)     payables to third parties on account of third party working interest owners other than those described in <u>clause (b)</u> above;

(v)     any Royalty reporting, miscalculation, or underpayment claim in respect of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties payable on account of Hydrocarbons produced from the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties except as described in <u>clause (c)</u> above;

(vi)     any fines or penalties levied or imposed by governmental authorities prior to the Effective Time with respect to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties;

(vii)     P&A Obligations and Decommissioning expenses; and

(viii)     obligations satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order.

"***Fieldwood Energy I Closing Accounts Receivable***" means all accounts, notes and other receivables of the Sellers attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties as of the Effective Time, including all accounts, notes and other receivables attributable to the sale of oil or gas produced and sold from the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties prior to or as of the Effective Time and joint interest billing receivables for expenses paid by the Sellers as of the Effective Time or for which a payable is included in the Fieldwood Energy I Closing Accounts Payable; *provided* "Fieldwood Energy I Closing Accounts Receivable" shall exclude the Specified Excluded Receivables.

"***Fieldwood Energy III***" means Fieldwood Energy III LLC, a Texas limited liability company.

"***Fieldwood Mexico***" means Fieldwood Mexico B.V., a Dutch private company.

"***Fieldwood U.A.***" means Fieldwood Coöperatief U.A.

"***Fieldwood U.A. Interests***" is defined in <u>Section 1.2(nn)</u>.

"***Final Allocation***" is defined in <u>Section 2.2</u>.

"***Final Order***" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has: (a) not been reversed,

stayed, modified or amended, as to which the time to appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration or rehearing has been timely filed; or (b) as to which any appeal, petition for certiorari or motion for reargument, reconsideration or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration or rehearing was sought; *provided*, *however*, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in such other court of competent jurisdiction) may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

"*Financial Statements*" means (a) the consolidated quarterly financial statements (unaudited) of Sellers for the fiscal quarter ended September 30, 2020 and the elapsed portion of the fiscal year then ended and (b) the consolidated annual financial statements of Sellers for the year ended December 31, 2019.

"*Foreign Antitrust Approvals*" is defined in Section 6.5(a).

"*Fourth Amendment to Office Sublease*" is defined in the definition of Office Sublease.

"*Fraud*" means common law fraud and requires (a) a false representation with respect to a representation or warranty made by Sellers in Article IV or any certificate delivered by Sellers hereunder, (b) knowledge or belief that the representation was false when made, (c) with intent to induce, and (d) justifiable reliance upon the representation (it being acknowledged that each of Buyer and Buyer 2 has relied on each of the representations in Article IV and the certificates delivered hereunder).

"*Fundamental Representations*" means the representations and warranties set forth in Section 4.1, Section 4.2, Section 4.3(a), Section 4.4, Section 4.5, Section 4.31(a) and Section 4.31(f).

"*Funding Agreement*" means a Funding Agreement by and between Buyer and Fieldwood, in the form attached hereto as **Exhibit W**.

"*FW GOM Pipeline*" is defined in the preamble.

"*FWE I Assets*" has the meaning set forth in Part A of Schedule I to the Plan of Merger as of the date hereof as reflected in the Plan of Merger as it exists on the date hereof but excluding the Specified Oil and Gas Interests and the Specified P&A Equipment.

"*FWE I Obligations*" has the meaning set forth in Part B of Schedule I to the Plan of Merger.

"*FWE I Oil and Gas Properties*" has the meaning set forth in Part A of Schedule I to the Plan of Merger as of the date hereof as reflected in the Plan of Merger as it exists on the date hereof but excluding the Specified Oil and Gas Interests.

"**FWE I Suspense Funds**" means all funds held in suspense (i) by Fieldwood to the extent attributable to any of the FWE I Assets and (ii) by GOM Shelf, and any interest accrued in escrow accounts for such suspended funds.

"**GAAP**" means generally accepted accounting principles in the United States of America, consistently applied.

"**GOM Shelf**" is defined in the preamble.

"**GOM Shelf and FW GOM Pipeline Payables**" means the payables of GOM Shelf and FW GOM Pipeline as of the Effective Time (as determined consistent with the definition of Fieldwood Energy I Closing Accounts Payable).

"**GOM Shelf Oil and Gas Properties**" has the meaning set forth in the Plan of Merger as of the date hereof as reflected in the Plan of Merger as it exists on the date hereof but excluding the Specified Oil and Gas Interests.

"**Governmental Approval**" means any authorization, consent, approval, exemption, franchise, permit or license of, or filing with, or notice or any other action by, any relevant Governmental Authority.

"**Governmental Authority**" means any transnational, domestic or foreign governmental or quasi-governmental federal, state, provincial, county, city, regulatory or administrative authority or other political subdivision or any officer, department, bureau, agency, commission, court or other statutory or regulatory body or instrumentality thereof.

"**Governmental Settlement Agreement**" is defined in Section 6.17.

"**GUC Warrants**" has the meaning set forth in the Plan.

"**Hedges**" is defined in Section 1.2(gg).

"**HSR Act**" means the Hart-Scot-Rodino Antitrust Improvements Act of 1976, and the rules and regulations promulgated thereunder.

"**Hydrocarbons**" is defined in Section 1.2(f).

"**Imbalance**" means (a) any imbalance between (i) the quantity of Hydrocarbons produced from any well and allocated to a Person from time to time and (ii) the share of such production to which such Person is actually entitled by virtue of its ownership interest in such well or in the lease or unit under which such well is produced and (b) any imbalance between (i) the quantity of Hydrocarbons produced from any oil and gas asset and actually delivered from a Third Person pipeline and allocated to a Person from time to time and (ii) the share of such Hydrocarbons to which such Person is actually entitled to receive from such Third Person pipeline.

"**Implementation Agreement**" means that certain Apache Term Sheet Implementation Agreement dated January 1, 2021, by and between Fieldwood, GOM Shelf, Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC.

"***Indemnification Claim***" is defined in Section 13.3(a).

"***Indemnified Party***" means a Party entitled to indemnification under this Agreement, whether on behalf of itself or, with respect to the Sellers, any of the Seller Indemnified Parties.

"***Indemnifying Party***" means a Party from whom indemnification is sought under this Agreement by an Indemnified Party.

"***Indemnitors***" is defined in Section 10.13(b).

"***Initial Allocation***" is defined in Section 2.2.

"***Intellectual Property***" means any and all intellectual property rights or industrial property rights throughout the world, including all (a) national and multinational statutory invention registrations, patents and patent applications of any type issued or applied for in any jurisdiction, including all provisionals, divisions, continuations, continuations-in-part, reissues, extensions, re-examinations and the equivalents of any of the foregoing in any jurisdiction, and all inventions disclosed in each such registration, patent or patent application, (b) trademarks, service marks, trade dress, logos, brand names, certification marks, domain names, trade names, corporate names and other indications of origin, whether or not registered, in any jurisdiction, and all registrations and applications for registration of the foregoing in any jurisdiction, and all goodwill associated with the foregoing (collectively, "***Trademarks***"), (c) copyrights (whether or not registered) and registrations and applications for registration thereof in any jurisdiction, including all derivative works, moral rights, renewals, extensions, reversions or restorations associated with such copyrights, regardless of the medium of fixation or means of expression, (d) trade secrets, information, data, specifications, processes, methods, know-how, formulae, techniques, schematics, drawings, blueprints, utility models, designs, technology, software, inventions, discoveries, ideas and improvements, including manufacturing information and processes, engineering and other manuals and drawings, standard operating procedures, flow diagrams, technical information, research records and similar data and information, (e) database rights, industrial designs and industrial property rights and (f) the right to assert, claim or sue and collect damages for the past, present or future infringement, misappropriation or other violation of any of the foregoing.

"***Interim Period***" means the period from the Execution Date through and including the Closing Date.

"***Interim Unpaid P&A Expenses***" means all incurred but unpaid expenses incurred by Fieldwood for Plugging and Abandonment costs and expenses on the FWE I Oil and Gas Properties between the filing on August 3, 2020, of the Bankruptcy Cases and the Divisive Merger Effective Time to the extent not paid as of the Divisive Merger Effective Time.

"***Inventory***" means the Co-Owned Inventory and Other Inventory.

"***IRS***" means the Internal Revenue Service of the United States.

"***Joint Operating Agreement Amendment***" means the amendments to jointly owned properties operating agreements with respect to those Co-Owned Leases (or portion thereof) that

are not subject to any Assigned Contract that is a joint operating agreement or unit operating agreement with one or more Third Persons, in each case that is in form and substance acceptable to Buyer.

"*JV Assignment Agreement*" means the Assignment Agreements (or equivalent) and related instruments to be entered into at Closing by the parties thereto with respect to the transfer of the Fieldwood U.A. Interests and the JV Interests pursuant to this Agreement, in each case that is in form and substance acceptable to Buyer.

"*JV Interests*" is defined in Section 1.2(nn).

"*JV Shares*" is defined in Section 4.31(c).

"*Knowledge*" means (a) with respect to Buyer and Buyer 2, the actual knowledge of any executive officer of Buyer or Buyer 2, as applicable, and (b) with respect to the Sellers, the actual knowledge of Thomas Lamme, Mike Dane, William Swingle, Patrick Eiland and John Seeger.

"*Lafayette Lease Agreement*" means that certain Lease Agreement dated as of April 5, 2017, between Fieldwood and Ronnie White Custom Homes, L.L.C.

"*Law*" means all laws, constitutions, treaties, statutes, ordinances, rules, regulations, codes, orders, judgments, decrees, orders, writs, injunctions and decisions of any Governmental Authority, or having the effect of law in any applicable jurisdiction, including all principles of common law.

"*Lease Burdens*" means all royalties, overriding royalties, production payments, carried interests, net profits interests, reversionary interests and similar contractual burdens upon, payable out of or measured by Hydrocarbons produced from or allocated to a Lease; and all rentals, shut-in royalties, minimum royalties and bonus payments under a Lease.

"*Leases*" means the Co-Owned Leases and Other Leases.

"*Liability*" means any debt, Loss, obligation, duty, commitment, demand, responsibility, suit, judgment, undertaking, royalty, deficiency or obligation (including those arising out of any action, such as any settlement or compromise thereof or judgment or award therein), Claim or Encumbrance of any kind or nature whatsoever whether known or unknown, disclosed or undisclosed, expressed or implied, primary or secondary, direct or indirect, matured or unmatured, determined or indeterminable, disputed or undisputed, secured or unsecured, joint or several, asserted or unasserted, fixed, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, whether due or to become due, whether in contract, tort or otherwise, and whether or not required to be accrued on the financial statements of any entity or individual, including those arising under any Law, or imposed by any Governmental Authority or arbitrator of any kind.

"*Licensed Intellectual Property*" means any and all Intellectual Property (a) owned by a Third Person and licensed or sublicensed to a Seller or for which a Seller has obtained a covenant not to be sued, in each case, under an Assigned Contract and (b) related to the ownership or operation of the Acquired Interests.

"*Liquidating Trust*" means a liquidating or similar trust as may be established with respect to Sellers' estates in conjunction with the Bankruptcy Cases.

"*Liquidating Trustee*" means the trustees or other representative of the Liquidating Trust.

"*Losses*" and "*Loss*" means any and all losses, judgments, damages, liabilities, injuries, costs, interest, taxes, settlements, penalties and fines or expenses (including any incidental, indirect or consequential damages, losses, liabilities or expenses, and any lost profits or diminution in value). As used herein, the term "Losses" includes reasonable attorneys' fees and other costs and expenses of any Party entitled to defense or indemnity hereunder incident to (a) the investigation and defense of any Claim that results in litigation or the settlement of any Claim or (b) the enforcement of such defense or indemnity rights under this Agreement.

"*Lubrizol Sublease*" means that certain Sublease, dated December 22, 2018, by and between The Lubrizol Corporation, as sublandlord, and Fieldwood Energy LLC, as subtenant, for Suite 320 in the building known as One Briarlake Plaza and located at 2000 W. Sam Houston Parkway South, Houston, Texas, and that certain Consent to Sublease, effective as of January 29, 2019.

"*Material Adverse Effect*" means a result, event, occurrence, change, circumstance, development or consequence that, individually or in the aggregate, would reasonably be expected to (a) materially and adversely affect the value, condition (financial or otherwise) or results of operations of the Acquired Interests taken as a whole or (b) materially and adversely affect the ability of the Sellers to perform their obligations under this Agreement or the documents executed in connection herewith or consummate the transactions contemplated herein and therein; *provided*, that, with respect to clause (a) only, any result, event, occurrence, change, circumstance, development or consequence to the extent resulting from any of the following matters shall not be taken into account in determining whether a Material Adverse Effect has occurred: (i) changes in financial or securities markets generally; (ii) changes in general economic or political conditions in the United States or worldwide; (iii) changes in conditions or developments generally applicable to the oil and gas industry in the area where the Acquired Interests are located, including, but not limited to, changes in the market price of oil and natural gas; (iv) actions taken after the date of this Agreement as required by this Agreement or with the written consent of Buyer; (v) the commencement or pendency of the Bankruptcy Cases and any adverse effects resulting therefrom, (vi) entering into this Agreement or the announcement of the transactions contemplated hereby (provided, that this clause (vi) shall not be excluded with respect to the representations and warranties and related conditions contained in this Agreement that address the consequences of the execution, announcement or performance of this Agreement or the consummation of the transactions contemplated hereby); (vii) acts of God, including hurricanes, storms or other naturally occurring events; (viii) acts or failures to act of Governmental Authorities, except as a result of any action or inaction by or on behalf of the Sellers; **[(ix) matters expressly disclosed on any Exhibit or Annex to this Agreement or in the Disclosure Schedules]**; (x) any epidemic, pandemic or disease outbreak (including the COVID-19 virus) or hostilities, terrorist activities or war or any similar disorder and, in each case, governmental actions related thereto; (xi) matters that are cured or no longer exist by the earlier of Closing and the termination of this Agreement; (xii) any change in laws or in GAAP and any interpretations thereof from and after the Execution Date; (xiii) any reclassification or recalculation of reserves in the ordinary course of business; (xiv)

natural declines in well performance; (xv) the departure of officers or directors of the Sellers after the Execution Date; (xvi) any objections in the Bankruptcy Court to (A) this Agreement and the other Ancillary Documents and the transactions contemplated hereby and thereby, (B) the reorganization of any Seller and any related plan of reorganization or disclosure statement or (C) the Plan of Merger or transactions contemplated thereby; and (xvii) any order of the Bankruptcy Court (except any such order that would preclude or prohibit the Sellers from consummating the transactions contemplated by this Agreement) or any actions or omissions of the Sellers in compliance therewith; *provided*, that, with respect to clauses (i) through (iii), (vii), (viii), (x) and (xii) any such result, event, occurrence, change, circumstance, development or consequence shall not be disregarded to the extent that it has had a disproportionate effect on the Acquired Interests relative to similar oil and gas assets in the Gulf of Mexico held by other participants in the industries in which the Acquired Interests are operated.

"***Material Contract***" is defined in Section 4.14(a).

"***Mexico JV***" is defined in Section 1.2(nn).

"***Net Revenue Interest***" means, with respect to each Lease and Scheduled Well, the interest in and to all Hydrocarbons produced and saved from or attributable to such Lease or Scheduled Well, after giving effect to all valid Lease Burdens, carried interests, reversionary interests and other similar interests constituting burdens upon, measured by or payable out of Hydrocarbons produced and saved from or attributable to such Lease or Scheduled Well.

"***New Equity Interests***" has the meaning set forth in the Plan.

"***New Warrants***" has the meaning set forth in the Plan.

"***Non-Recourse Party***" is defined in Section 12.14.

"***Non-Transferred Asset***" is defined in Section 10.3(b).

"***NORM***" means naturally occurring radioactive material.

"***Notice***" is defined in Section 12.2.

"***NPA***" means that certain Non-Prosecution Agreement dated as of February 9, 2021, entered into between Fieldwood and the United States Attorney's Office for the Eastern District of Louisiana.

"***Office Assets***" is defined in Section 1.2(dd).

"***Office Assets Conveyance***" means that Bill of Sale, Assignment and Assumption Agreement to be entered into at the Closing by the parties thereto, in the form attached as **Exhibit K** hereto.

"***Office Sublease***" means that certain Sublease Agreement, dated as of September 30, 2013, between Apache Corporation, as sublessor, and Fieldwood, as sublessee, for space in the building known as One BriarLake Plaza located at 2000 West Sam Houston Parkway South, Houston,

Texas, as amended by (i) First Amendment to Sublease Agreement, dated as of January 2, 2014, (ii) Second Amendment to Sublease Agreement, dated as of September 7, 2017, (iii) Third Amendment to Sublease Agreement, dated as of May 28, 2018, and (iv) Fourth Amendment to Sublease, dated as of _____ ___, 2020 (the "***Fourth Amendment to Office Sublease***").

"***Organizational Documents***" is defined in Section 4.31(b).

"***OSFR***" means Oil Spill Financial Responsibility.

"***Other Assets***" is defined in Section 1.2(n).

"***Other Assigned Contracts***" means all Assigned Contracts other than the Co-Owned Assigned Contracts.

"***Other Easements***" is defined in Section 1.2(q).

"***Other Field Assets***" means the Other Leases, Other Subject Units, Other Easements, Other Wells and Other Inventory.

"***Other Field Data***" is defined in Section 1.2(w).

"***Other Inventory***" is defined in Section 1.2(s).

"***Other Leases***" is defined in Section 1.2(o).

"***Other Records***" is defined in Section 1.2(x).

"***Other Scheduled Wells***" is defined in Section 1.2(r).

"***Other Subject Unit***" is defined in Section 1.2(p).

"***Other Subject Unit Agreement***" is defined in Section 1.2(p).

"***Other Wells***" is defined in Section 1.2(r).

"***Owned Intellectual Property***" means any and all Intellectual Property (except for Trademarks) (a) owned or purported to be owned by any Seller and (b) related to the ownership or operation of the Acquired Interests.

"***P&A Obligations***" means any and all obligations, liabilities, damages, losses, and claims arising out of or attributable to the payment or performance of all Plugging and Abandonment.

"***Parties***" and "***Party***" are defined in the preamble.

"***Permit***" means any permit, license, authorization, certificate, registration, franchise, exemptions, waiver, consent, approval or other similar rights or privileges granted by any Governmental Authority.

"*Permitted Encumbrances*" means:

(a)     easements, restrictive covenants, servitudes, permits, surface leases and other rights with respect to surface operations, and rights-of-way on, over or in respect of any of the Acquired Interests that, singularly or in the aggregate, do not prevent or materially interfere with the ownership, value or operation of the affected Acquired Interests and which are of a nature that would be reasonably acceptable to a prudent owner or operator of oil and gas properties;

(b)     all applicable Laws and all rights reserved to or vested in any Governmental Authority: (1) to control or regulate the Assets in any manner, (2) by the terms of any right, power, franchise, grant, license or Permit issued by any Governmental Authority, or by any provision of applicable Law, to terminate such right, power, franchise, grant, license or permit or to purchase, condemn, expropriate or recapture or to designate a purchaser of any Asset; (3) to use such Asset in a manner which does not materially impair the use of such property for the purposes for which it is currently owned and operated; or (4) to enforce any obligations or duties affecting the Assets to any Governmental Authority with respect to any franchise, grant, license or permit, excluding in each case of clauses (1) through (4) any such rights or Laws resulting from any breach, default, violation or non-compliance with any Law or Permit;

(c)     the terms, conditions, restrictions, exceptions, reservations, limitations and other matters (including dedications thereof) contained in (1) the Leases, (2) the Assigned Contracts, (3) the Preferential Rights disclosed on **Schedule 4.8(a)**, and (4) the Easements, but excluding in each case of clauses (1) through (4) any such terms, conditions, restrictions, reservations, exceptions, limitations or other matters resulting from any breach, violation, default or non-compliance;

(d)     Encumbrances for Taxes or assessments not yet due and payable or, if due and payable, those Taxes or assessments that are being contested in good faith by proceedings diligently conducted in the normal course of business and for which adequate reserves have been established in accordance with applicable accounting principles;

(e)     mechanic's, materialmen's, carrier's, supplier's, vendor's, repairer's or other similar statutory Encumbrances arising in the ordinary course of business securing obligations that are (i) not yet delinquent or (ii) satisfied, settled, released or discharged pursuant to the Plan and Confirmation Order;

(f)     utility easements, restrictive covenants, zoning, entitlement, building, subdivision and other similar restrictions that, singularly or in the aggregate, do not prevent or materially interfere with the ownership, value or operation of the affected Acquired Interests and which are of a nature that would be reasonably acceptable to a prudent owner or operator of offshore oil and gas properties;

(g)     Encumbrances created by Buyer, Buyer 2 or any of their respective successors or assigns;

(h)     any lessor's, operator's, working interest owner's or other inchoate or undetermined Encumbrance or charge (whether statutory or contractual) constituting or securing the payment of Lease Burdens or of expenses which were or will be incurred in the ordinary course

of business and incidental to the maintenance, development, production or operation of any Acquired Interest, to the extent the same are satisfied, settled, released or discharged pursuant to the Plan and Confirmation Order;

(i)      Lease Burdens, division orders, carried interests, rights to recoupment, unitization, pooling, proration and spacing designations, orders and agreements, reversionary interests, rights to take in kind, and any other similar Encumbrance;

(j)      any charge, equitable interest, privilege, lien, mortgage, deed of trust, production payment, option, pledge, collateral assignment, security interest, right of first refusal, restriction, encroachment, defect, or other arrangement substantially equivalent thereto, or other defect or irregularity of any kind, in each case, that will be permanently and fully extinguished with respect to the Acquired Interests pursuant to the Confirmation Order;

(k)      all Governmental Approvals in connection with the conveyance of the Acquired Interests, if the same are permitted to be received after Closing and are customarily sought and received after Closing;

(l)      such other defects or irregularities of title or encumbrances as Buyer or Buyer 2 may expressly waive in writing;

(m)      any maintenance of uniform interest provision in a joint or unit operating agreement if waived by the party or parties having the right to enforce such provision;

(n)      any Encumbrance affecting the Assets that is permanently and fully discharged by the Sellers at or prior to the Closing;

(o)      non-exclusive licenses of, to or under any Intellectual Property granted in the ordinary course of business;

(p)      rights of a common owner of any interest in rights-of-way, Permits or easements (including Easements) held by the Sellers and such common owner as tenants in common or through common ownership that, singularly or in the aggregate, do not prevent or materially interfere with the ownership, value or operation of the affected Acquired Interests;

(q)      any matters set forth on **Exhibit A** or **Exhibit C**, all litigation and claims set forth on **Schedule 4.6**, and all Imbalances set forth on **Schedule 4.15**; and

(r)      all depth restrictions or limitations applicable to any Acquired Interests to the extent set forth on **Exhibit A** or **Exhibit C**.

"***Person***" means any individual, corporation, limited liability company, partnership, trust, joint stock company, joint venture, association, unincorporated organization, Governmental Authority or any other form of entity.

"***Personal Information***" is defined in Section 4.25(i).

"***Petition Date***" means August 3, 2020.

"**Plan**" means the joint plan filed by the Debtors under chapter 11 of the Bankruptcy Code implementing the restructuring transactions, including the transaction contemplated in this Agreement, which plan shall be in substantially the same form and substance as the plan filed by the Debtors on January 1, 2021, at Docket No. 722 in the Bankruptcy Court, as may be amended, modified or supplemented by the Plan Supplement or otherwise from time to time in accordance with the Restructuring Support Agreement.

"**Plan of Merger**" means the form of Agreement and Plan of Merger of Fieldwood into Fieldwood Energy I and Fieldwood Energy III which is attached as Exhibit 5 to the Implementation Agreement.

"**Plan Supplement**" has the meaning set forth in the Plan.

"**Plugging and Abandonment**" and its derivatives mean all plugging, replugging, abandonment, re-plugging and re-abandonment, equipment removal, disposal, or restoration associated with the properties and assets included in or burdened by the FWE I Assets, including all plugging and abandonment, removal, dismantling, decommissioning, surface and subsurface restoration, site clearance, and disposal of the FWE I Oil and Gas Properties, well cellars, fixtures, platforms, caissons, flowlines, pipelines, structures, and personal property of whatever kind located on or under, related to, or associated with operations and activities conducted by whomever with respect to each of the FWE I Oil and Gas Properties, the flushing, pickling, burial, removal, and capping of all associated flowlines, field transmission and gathering lines, pit closures, the restoration of the surface, site clearance, any disposal of related waste materials and Environmental Contaminants and obligations to obtain plugging exceptions for any of the FWE I Oil and Gas Properties, with a current plugging exception, all in accordance with all applicable Laws, the terms and conditions of each of the FWE I Oil and Gas Properties, or similar leasehold interests, beneficial interests, easements and the FWE I Oil and Gas Properties.

"**Post-Closing Consent Period**" is defined in Section 2.3(d).

"**Post-Closing Tax Period**" means any taxable period beginning after the Closing Date and, with respect to a Straddle Period, the portion of such Straddle Period beginning after the Closing Date.

"**Pre-Closing Tax Period**" means any taxable period ending on or before the Closing Date and, with respect to a Straddle Period, the portion of such Straddle Period ending on and including the Closing Date.

"**Preferential Right**" means any preferential right to purchase, right of first refusal, right of first offer or similar right that is applicable to the Acquired Interests or the Assigned Contracts and the operation of which is triggered by the transactions contemplated in this Agreement.

"**Prepaid JOA Funds**" is defined in Section 10.2(b).

"**Production Taxes**" means any and all severance, production, gathering, Btu or gas, transportation, gross receipts, utility, excise and other similar taxes (other than Property-Related Taxes, Transfer Taxes and taxes based on or measured by income or gross or net worth) relating

to the production, gathering or transportation of Hydrocarbons, or increases therein, and any interest or penalties thereon.

"***Property-Related Taxes***" means any and all ad valorem, property, generation, conversion, privilege, consumption, lease, transaction and other taxes, franchise fees, governmental charges or fees, licenses, fees, permits and assessments, or increases therein, and any interest or penalties thereon.

"***Records***" means the Co-Owned Records and Other Records.

"***Release***" means any release, disposal, spilling, leaking, pouring, emission, emptying, discharge, injection, escape, transmission, leaching or dumping, or any threatened release, of any Environmental Contaminants from, or related in any way to the use, ownership or operation of, the Acquired Interests.

"***Release Document***" means a Credit Bid and Release Agreement in the form attached hereto as **Exhibit S**.

"***Remaining Accounts***" is defined in <u>Section 10.12(d)</u>.

"***Representatives***" means, with respect to a Person, the directors, managers, shareholders, members, partners, officers, employees, consultants, advisors, agents or other representatives, including legal counsel, accountants, investment bankers and financial advisors of (i) such Person, (ii) such Person's Affiliates, (iii) the successors and assigns of such Person and (iv) the successors and assigns of such Person's Affiliates.

"***Required Consent***" is defined in <u>Section 2.3(b)</u>.

"***Restructuring Support Agreement***" means that certain *Restructuring Support Agreement*, dated as of August 4, 2020, by and among Fieldwood, certain of its affiliates specified therein, the Consenting Creditors, and Apache Corporation, as the same may be amended, restated, or otherwise modified in accordance with its terms.

"***Retained Liabilities***" is defined in <u>Section 11.2</u>.

"***Royalties***" means all minimum royalties, shut-in payments, royalties, overriding royalties, reversionary interests, net profits interests, production payments, carried interests, non-participating royalty interests, reversionary interests, and other royalty burdens and other interests payable out of production of Hydrocarbons from or allocated to the FWE I Oil and Gas Properties, the GOM Shelf Oil and Gas Properties, or the proceeds thereof to third parties.

"***RUE***" is defined in <u>Section 10.14</u>.

"***Section 6.8 Employee***" means each of those employees of Sellers specified on **[insert reference to email of counsel]**.

"***Scheduled Wells***" means the Co-Owned Scheduled Wells and Other Scheduled Wells.

"***Seller***" and "***Sellers***" is defined in the preamble.

"***Seller Employees***" is defined in <u>Section 4.17(a)</u>.

"***Seller Indemnified Parties***" is defined in <u>Section 13.2</u>.

"***Seller IT Assets***" means any and all computers, networks, systems, printers, software, firmware, middleware, servers, workstations, routers, hubs, switches, data communications lines, and all other information technology equipment, and all associated documentation, owned or purported to be owned by any Seller.

"***Seller Marks***" mean Trademarks owned by any Seller, including "Fieldwood," and any variations thereof.

"***Seller Related Parties***" is defined in <u>Section 4.24</u>.

"***SEMS Bridging Agreement***" means that Bridging Agreement by and among Buyer, Fieldwood Energy I and GOM Shelf, in the form attached hereto as **Exhibit Q**.

"***Specified Excluded Receivables***" means each of the following:

(a)     all deposits with third parties, escrow accounts, guarantees, letters of credit, treasury securities and insurance policies, in each case to the extent relating to the FWE I Assets and surety bonds, all OSFR coverage (whether consisting of one or more insurance policies) and other forms of credit assurances or credit support provided by a third party for the benefit of the Sellers, in each case to the extent for financial assurance for the obligations and liabilities arising out of or related to the FWE I Assets, the GOM Shelf Oil and Gas Properties or GOM Shelf, including the P&A Obligations arising out of or related to the FWE I Assets or the GOM Shelf Oil and Gas Properties, including those items listed on **Exhibit U**;

(b)     instruments and general intangibles (as such terms are defined in the Uniform Commercial Code of the applicable jurisdictions in which the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties to which such assets relate are located) and other economic benefits in each case attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties (excluding any accounts, notes or other receivables attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties or of GOM Shelf); *provided*, that nothing in this <u>clause (b)</u> shall be interpreted to limit the scope of Fieldwood Energy I Closing Accounts Receivable;

(c)     claims of indemnity, contribution, or reimbursement of the Sellers or of GOM Shelf, in each case, relating to the FWE I Obligations or obligations of GOM Shelf;

(d)     receivables of the Sellers for imbalances attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties;

(e)     rights to insurance proceeds or other claims of recovery, indemnity, contribution, or reimbursement of the Sellers attributable to the FWE I Assets or the GOM Shelf

Oil and Gas Properties due to casualty or other damage or destruction of or to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties;

(f)　　cash in the amount of advance payments on account of third party working interest owners in the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, to the extent such cash amounts are associated with FWE I Obligations; and

(g)　　rights to receive and collect cash and advance payments, in each case pursuant to cash calls associated with the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties to the extent such cash and advance payments are associated with FWE I Obligations.

"*Specified Oil and Gas Interests*" means the assets listed on **Exhibit Y**.

"*Specified P&A Equipment*" means the equipment listed on **Exhibit Z**.

"*Specified Section 6.10 Contract(s)*" means those certain contracts and/or agreements specified on **[insert reference to email of counsel]**.

"*ST 308 Performance Bond*" means that ST 308 Performance Bond to be entered into by and among Buyer, Apache Corporation and the surety named therein, a form of which is attached as **Exhibit R** hereto.

"*Straddle Period*" means any taxable period beginning on or prior to the Closing Date and ending after the Closing Date.

"*Subject Unit Agreement*" means the Co-Owned Subject Unit Agreements and Other Subject Unit Agreements.

"*Subject Units*" means the Co-Owned Subject Units and Other Subject Units.

"*Subsidiary*" means, with respect to any Person, any entity of which such first Person (either alone or through or together with any other Person pursuant to any contract) (a) owns, directly or indirectly, securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other governing body of such corporation, partnership, limited liability company, joint venture or other entity or other persons performing similar functions or (b) acts as the managing member or general partner of such other Person that is a partnership, limited liability company, joint venture or other entity.

"*Suspense Funds*" means those proceeds of production and associated penalties and interest in respect of any Field Assets or any Hydrocarbons produced from or attributable to any Field Assets that belong to one or more Third Persons and are being held in suspense by any Seller or any Affiliate thereof.

"*Tail Policy*" means the directors and officers insurance policies of the Sellers, including that certain policy issued by Sompo International (Endurance American Insurance Company), Policy Number BLP300011112000, and each additional layer of directors and officers insurance held by the Sellers.

"***Tax***" means (i) all U.S. federal, state, local or non-U.S. taxes, including all income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, environmental, customs duties, capital stock, ad valorem, value added, inventory, franchise, profits, withholding, windfall profit, social security, surcharge, impost, unemployment, disability, health, real property, personal property, mortgage, production, sales, use, occupancy, transfer, registration, alternative or add-on minimum, estimated or other similar tax of any kind whatsoever or any assessment, duty, levy, fee or charge of any kind in the nature of (or similar to) taxes imposed by any Governmental Authority, and including any interest, penalty, or addition thereto, (ii) any liability for the payment of any amounts of the type described in <u>clause (i)</u> as a result of any obligation to indemnify or otherwise assume or succeed to the liability of any other person, including as a transferee or successor, whether imposed by Law or Contract and (iii) in the case of Fieldwood U.A. and Fieldwood Mexico or any of their respective Subsidiaries, any liability for the payment of amounts determined by reference to amounts described in <u>clauses (i)</u> and <u>(ii)</u> as a result of being or having been a member of any Company Group (including, in each case, for any Tax purposes or by operation of Law), as a result of any obligation under any agreement or arrangement (including any Tax Sharing Agreement), as a result of being a transferee or successor, or by Contract.

"***Tax Return***" means any return, claim for refund, declaration, disclosure, election, report, statement, information return or other similar document (including any related or supporting information, amendments, schedule or supplements of any of the foregoing) filed or required to be filed with any Governmental Authority with respect to Taxes.

"***Tax Sharing Agreement***" means any agreement or arrangement, including any Tax sharing, allocation, indemnification, reimbursement, receivables or similar agreement entered into prior to the Closing binding Fieldwood U.A. or Fieldwood Mexico or any of their respective Subsidiaries that provides for the allocation, apportionment, sharing or assignment of any Tax liability or Tax benefit, or the transfer or assignment of income, revenues, receipts, or gains for the purpose of determining any Person's Tax liability (other than any customary commercial contract entered into in the ordinary course of business the principal subject matter of which is not Taxes).

"***Third Person***" means any Person other than the Sellers, Buyer or Buyer 2.

"***Toggle Date***" has the meaning set forth in the Plan.

"***Trademarks***" is defined in the definition of Intellectual Property.

"***Transfer Documents***" means each Assignment, Bill of Sale and Conveyance, the Assignment and Assumption Agreement, the Office Assets Conveyance, the Assignment of Leases and Subleases and each JV Assignment Agreement.

"***Transfer Taxes***" means any sales, use, goods and services, value added, stock, stamp, document, filing, recording, registration and similar tax or charge (including any interest or penalties thereon and the cost of preparing any Tax Returns with respect thereto).

"***Transferred Employee***" is defined in <u>Section 6.8(a)</u>.

"***Transferred Intellectual Property***" means the Owned Intellectual Property and Licensed Intellectual Property.

"***Trust Agreement***" means that certain Trust Agreement dated September 30, 2013 by and among Fieldwood and GOM Shelf, as Settlors and Primary Beneficiaries, and Apache Corporation, Apache Shelf, Inc., Apache Deep Water LLC and Apache Shelf Exploration LLC, as Secondary Beneficiaries, as amended.

"***TSA***" means that Transition Services Agreement to be entered into by Buyer, Fieldwood Energy I and GOM Shelf in the form attached as **Exhibit P** hereto.

"***Undisbursed Revenue***" means those proceeds of production and associated penalties and interest in respect of any Field Assets or any Hydrocarbons produced from or attributable to any Field Assets that belong to one or more Third Persons and have been received by, and at the Closing are being held by, the Sellers on account of such Third Persons for disbursement to such Third Persons after the Closing.

"***Unit***" means a unit for the production and operation of a Hydrocarbon well created by the pooling, unitization or communitization, whether voluntary or governmental, of any or all portions of any Leases and the lands covered thereby with other oil and gas leases or lands.

"***Warehouse Lease***" means that certain Lease dated as of November 15, 2019, by and between Cheyenne Services, LLC, as lessor, and Fieldwood Energy LLC, as lessee, for leased premises located at 108 Galbert Rd., Lafayette, LA, as amended by (i) First Amendment to Lease, executed April 26, 2020 and (ii) Second Amendment to Lease, executed November 10, 2020.

"***Wells***" means the Co-Owned Wells and Other Wells.

"***Working Capital Assets***" means, without duplication, (a) the current assets of the Sellers as of immediately prior to the Effective Time; *provided* that this <u>clause (a)</u> shall include only the types of current assets set forth as line items under the header "Current Assets" on **Exhibit X**, excluding the Specified Excluded Receivables, and (b) the Fieldwood Energy I Closing Accounts Receivable. For the avoidance of doubt, Working Capital Assets shall not include any cash, including Suspense Funds, Undisbursed Revenue and Prepaid JOA Funds.

"***Working Capital Liabilities***" means, without duplication, (a) the current liabilities of the Sellers as of immediately prior to the Effective Time; *provided* that this <u>clause (a)</u> shall include only the types of current liabilities set forth as line items under the header "Current Liabilities" on **Exhibit X**, excluding any prepetition accounts, Interim Unpaid P&A Expenses, obligations for FWE I Suspense Funds, Excluded Suspense Funds or Excluded Prepaid JOA Funds, P&A Obligations and Decommissioning expenses or any obligations satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order, and (b) the Fieldwood Energy I Closing Accounts Payable; *provided, further*, that in no event shall Working Capital Liabilities include Effective Date Cash Obligations.

"***Working Interest***" means, with respect to each Lease and Scheduled Well, the interest that represents the ownership of the oil and gas leasehold estate created by such Lease or Scheduled

Well and that is burdened with the obligation to bear and pay costs of operations on or in respect of such Lease or Scheduled Well.

[End of Annex I]

*Draft 3/15/2021*

**EXHIBITS AND SCHEDULES**

**to the**

**PURCHASE AND SALE AGREEMENT**

**AMONG**

**FIELDWOOD ENERGY LLC**

**AND**

**ITS AFFILIATES SIGNATORY HERETO**

**AS SELLERS**

**AND**

**[_____]**

**AS BUYER**

**AND**

**[_____]**

**AS BUYER 2**

**DATED**

**[_____] [___], 2021**

## EXHIBIT LIST

| Exhibit | Title |
|---|---|
| EXHIBIT A | Leases |
| EXHIBIT B | Easements |
| EXHIBIT C | Scheduled Wells |
| EXHIBIT D | Platforms and Facilities |
| EXHIBIT D-1 | Inventory |
| EXHIBIT E | Permits |
| EXHIBIT F | Seismic Data |
| EXHIBIT G | Form of Assignment, Bill of Sale and Conveyance for Co-Owned Assets |
| EXHIBIT H | Form of Assignment, Bill of Sale and Conveyance for Other Assets |
| EXHIBIT I | Form of Assignment and Assumption Agreement |
| EXHIBIT J | Form of Assignment of Leases and Subleases |
| EXHIBIT K | Form of Office Assets Conveyance |
| EXHIBIT L | [Reserved] |
| EXHIBIT M | [Reserved] |
| EXHIBIT N | [Reserved] |
| EXHIBIT O | [Reserved] |
| EXHIBIT P | Form of Transition Services Agreement |
| EXHIBIT Q | Form of SEMS Bridging Agreement |
| EXHIBIT R | Form of ST 308 Performance Bond |
| EXHIBIT S | Form of Release Document |
| EXHIBIT T | Form of Farmout Agreement |
| EXHIBIT U | [Reserved] |
| EXHIBIT V | [Reserved] |
| EXHIBIT W | Form of Funding Agreement |
| EXHIBIT X | Working Capital |
| EXHIBIT X-1 | Working Capital Estimate |
| EXHIBIT Y | Specified Oil and Gas Interests |

EXHIBIT Z                        Specified P&A Equipment


**<u>SCHEDULE LIST</u>**

| <u>**Schedule**</u> | <u>**Title**</u> |
|---|---|
| Schedule 1.2 | Applicable Shared Asset Interests |
| Schedule 1.3(d) | Scheduled Exclusions |
| Schedule 4.6 | Litigation |
| Schedule 4.7 | Governmental Approvals |
| Schedule 4.8(a) | Preferential Rights |
| Schedule 4.8(b) | Applicable Consents |
| Schedule 4.9 | Taxes |
| Schedule 4.9(p) | Entity Classifications |
| Schedule 4.12 | Environmental Matters |
| Schedule 4.13 | Payments |
| Schedule 4.14 | Material Contracts |
| Schedule 4.14(c) | Leases and Easements |
| Schedule 4.15 | Imbalances |
| Schedule 4.16(a) | AFEs |
| Schedule 4.16(b) | Cash Calls |
| Schedule 4.18 | Employee Benefits |
| Schedule 4.19 | Non-Consent Operations |
| Schedule 4.20 | Suspense Funds |
| Schedule 4.21 | Payout Balances |
| Schedule 4.22 | Title Matters |
| Schedule 4.22(d) | Owned Real Property |
| Schedule 4.23 | Insurance |
| Schedule 4.24 | Related Party Transactions |
| Schedule 4.25(a) | Owned Intellectual Property |
| Schedule 4.27 | Material Liabilities |
| Schedule 4.28(b) | Absence of Certain Changes |

| Schedule | Title |
|----------|-------|
| Schedule 4.31(c) | Equity Interests of Fieldwood Mexico and Subsidiaries |
| Schedule 4.31(d) | Fieldwood U.A. Interests |
| Schedule 4.31(f) | Fieldwood U.A. Liabilities |
| Schedule 5.1(c) | Buyer Grandparent Equity Interests |
| Schedule 5.7 | Buyer Governmental and Third Person Consents |
| Schedule 5.9 | Lease Bonds, Area-Wide Bonds, Surety Bonds and Insurance Policies |
| Schedule 6.1(a) | Sellers' Required Operations |
| Schedule 6.1(b) | Sellers' Disallowed Operations |
| Schedule 6.7(g) | Required Assigned 365 Contracts |
| Schedule 6.22 | Seller Employees |
| Schedule 7.3(i) | Required Novations |
| Schedule 7.3(l) | Required Governmental Approvals |
| Schedule 10.13(a) | Existing D&O Indemnification Terms |
| Schedule 10.13(e) | D&O Indemnified Parties |
| Schedule 10.14 | Right of Use Easements (RUEs) |

[End of List of Exhibits and Schedules]

# Exhibit A
## Leases[1]

## Part 1. Co-Owned Leases

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease[2] | Lease Status |
|-------|-------|-------|------|--------|----------|----------------------|--------------|
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 32 (S/2) | OCS-00174 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in S/2 of Block 32, Grand Isle Area, from 12,756' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in S/2 of Block 32, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 39 (E/2) | OCS-00126 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in W/2 of Block 39, Grand Isle Area, from 12,256' TVDSS to 18,000' TVDSS | |
| | | | | | BP E&P | 25% operating rights in W/2 of Block 39, Grand Isle Area, from 18,000' feet TVDS to 99,999' TVDS | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 39 (W/2) | OCS-00127 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in W/2 of Block 39, Grand Isle Area, from 12,256' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in W/2 of Block 39, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 40 | OCS-00128 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 40, Grand Isle Area, from 12,469' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 40, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |

---

[1] The references in this Exhibit A to Field, Seller, Operator, Interest in Lease and Lease Status are not intended to limit in any way the scope of any Assigned Interests or who is a Seller with respect to any Lease.

[2] Unless otherwise indicated on this exhibit, no operating rights for any OCS lease that is listed in either table of this exhibit as to which a Seller is listed as having a record title interest have been severed from the record title for such lease.

WEIL:\97869848\10\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease[2] | Lease Status |
|---|---|---|---|---|---|---|---|
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 41 (E/2) | OCS-00129 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in E/2 of Block 41, Grand Isle Area, from 14,123' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in E/2 of Block 41, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 41 (W/2) | OCS-00130 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in W/2 of Block 41, Grand Isle Area, from 14,123' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in W/2 of Block 41, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 42 | OCS-00131 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 42, Grand Isle Area, from 12,504' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 42, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 43 | OCS-00175 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 43, Grand Isle Area, from 12,830' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 43, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 44 (N/2) | OCS-00176 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in N/2 of Block 44, Grand Isle Area, from 13,102' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in N/2 of Block 44, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |

WEIL:\97869848\10\45327.0007

| Field | Block | Lease | Type | Seller | Operator | | Interest in Lease[2] | Lease Status |
|-------|-------|-------|------|--------|----------|---|----------------------|--------------|
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 46 | OCS-00132 | Federal | FEO | GOM Shelf | | 25% record title | UNIT |
| | | | | | GOM Shelf | | 25% operating rights in all of Block 46, Grand Isle Area, from 12,792' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | | 25% operating rights in all of Block 46, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 47 | OCS-00133 | Federal | FEO | GOM Shelf | | 25% record title | UNIT |
| | | | | | GOM Shelf | | 25% operating rights in all of Block 47, Grand Isle Area, from 15,742' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | | 25% operating rights in all of Block 47, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 48 | OCS-00134 | Federal | FEO | GOM Shelf | | 25% record title | UNIT |
| | | | | | GOM Shelf | | 25% operating rights in all of Block 48, Grand Isle Area, from 16,812' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | | 25% operating rights in all of Block 48, Grand Isle Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | GI 52 (N/2) | OCS-00177 | Federal | FEO | GOM Shelf | | 25% record title | UNIT |
| | | | | | BP E&P | | 25% operating rights in N/2 of Block 52, Grand Isle Area, as to all depths below 17,651 feet TVDSS down to 99,999 feet TVDSS | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 67 (S/2) | OCS-00179 | Federal | FEO | GOM Shelf | | 25% record title | UNIT |
| | | | | | GOM Shelf | | 25% operating rights in S/2 of Block 67, West Delta Area, from 11,650' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | | 25% operating rights in S/2 of Block 67, West Delta Area, as to depths below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 68 (S/2) | OCS-00180 | Federal | FEO | GOM Shelf | | 25% record title | UNIT |
| | | | | | GOM Shelf | | 25% operating rights in S/2 of Block 68, West Delta Area, from 13,225' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | | 25% operating rights in S/2 of Block 68, West Delta Area, as to depths below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | |

Exhibit A – Page 3

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease[2] | Lease Status |
|---|---|---|---|---|---|---|---|
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 69 | OCS-00181 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 69, West Delta Area, from 13,102' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 69, West Delta Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 70 | OCS-00182 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 70, West Delta Area, from 13,182' TVDSS to 18,000' subsea (TVDS) | |
| | | | | | BP E&P | 25% operating rights in all of Block 70, West Delta Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 71 | OCS-00838 | Federal | FEO | GOM Shelf | 25% record title | UNIT |
| | | | | | GOM Shelf | 25% operating rights in all of Block 71, West Delta Area, from 13,357' TVDSS to 18,000' SSTVD | |
| | | | | | BP E&P | 25% operating rights in all of Block 71, West Delta Area, as to depths below 18,000 feet subsea (TVDS) to 99,999 feet subsea (TVDS) | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 94 | OCS-00839 | Federal | FEO | GOM Shelf | 25% record title | PROD |
| | | | | | | 25% operating rights in all of Block 94, West Delta Area, from 13,159' SSTVD to 99,999' SSTVD | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 95 | OCS-G 01497 | Federal | FEO | GOM Shelf | 25% record title | PROD |
| | | | | | | 25% operating rights in the S1/2SE1/4; S1/2N1/2SE1/4; SE1/4SW1/4; S1/2SW1/4SW1/4 of Block 95, West Delta Area, from the surface of the earth down to and including 7,369 feet subsea | |
| | | | | | | 25% operating rights in N1/2; N1/2N1/2SE1/4; N1/2SW1/4; N1/2SW1/4SW1/4 of Block 95, West Delta Area, from 13,601' SSTVD to 99,999' SSTVD | |
| Grand Isle 43 (GI32-52/ WD67-71, 94-96) | WD 96 | OCS-G 01498 | Federal | FEO | GOM Shelf | 25% record title | PROD |
| | | | | | GOM Shelf | 25% operating rights in all of Block 96, West Delta Area, from 13,399' TVDSS to 18,000' SSTVD | |
| | | | | | BP E&P | 25% operating rights in all of Block 96, West Delta Area, from 18,000' TVDSS to 99,999' TVDSS | |
| Grand Isle 110/116 | GI 110 | OCS-G 13943 | Federal | FEO | Fieldwood | 50% record title | UNIT |

WEIL:\97869848\10\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease[2] | Lease Status |
|---|---|---|---|---|---|---|---|
| Grand Isle 110/116 | GI 116 | OCS-G 13944 | Federal | FEO | Fieldwood | 50% record title | UNIT |
| | | | | | | 50% operating rights as to depths from 19,402' SSTVD to 99,999' SSTVD | |
| Mississippi Canyon 109 | MC 110 | OCS-G 18192 | Federal | FEO | Fieldwood | 8.33334% record title | PROD |
| | | | | | | 8.33334% operating rights in all of Block 110, Mississippi Canyon, from 6,688' TVDSS to 99,999' TVDSS | |
| South Marsh Is. 39 | SM 48 | OCS-00786 | Federal | Fieldwood | Fieldwood | 3.0% ORRI as to production from the OCS 786 E002 ST1 well (API No. 17-707-20028-01), OCS 786 E003 ST1 BP1 well (API No. 17-707-20033-02), OCS 786 E004 ST1 well (API No. 17-707-20040-01) and OCS 786 E007 well (API No. 17-707-40923-00)[3] | PROD |
| South Marsh Is. 40/41/44 | SM 41 | OCS-G 01192 | Federal | FEO | FEO (in part) and Sanare Energy Partners, LLC (in part) | 100.0% operating rights in E1/2 of Block 41, South Marsh Island Area, from the surface of the earth down to 11,500' TVD | PROD |
| South Marsh Is. 136/137/149/150 | SM 149 | OCS-G 02592 | Federal | FEO | Fieldwood | 50% record title | PROD |
| | | | | | | 4.2% ORRI as to production from the South Marsh Island 149 #D001 well (API 177084094401) | |
| | | | | | | 50% operating rights in all of Block 149, South Marsh Island Area, South Addition, from 7,386' SSTVD to 99,999' SSTVD | |
| South Pass 60 | SP 61 | OCS-G 01609 | Federal | FEO | Fieldwood | 18.8% ORRI[4] | UNIT |
| South Timbalier 53/67/68 | ST 53 | OCS-G 04000 | Federal | FEO | Fieldwood | 50% record title | PROD |
| | | | | | | 50% operating rights in all of Block 53, South Timbalier Area, from the surface to 6,782' SSTVD | |
| | | | | | | 50% operating rights in all of Block 53, South Timbalier Area, from 6,782' SSTVD to 99,999' SSTVD. | |
| South Timbalier 53/67/68 | ST 67 | OCS-00020 | Federal | Dynamic Offshore Resources NS | Fieldwood | 20.334% contractual working interest in all of Block 67, South Timbalier Area | UNIT |

[3] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.
[4] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.

Exhibit A – Page 5

## Part 2.  Other Leases

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| Breton Sound 25 | BS 25 (portion) | 19718 | SL- LA | FEO | -- | 25% working interest | Active |
| | | | | | | recorded in Plaquemines Parish, Louisiana at COB 1190, Page 672, File No. 2008-00005015 | |
| Breton Sound 25 | BS 25 (portion) | OCS-G 31442 | Federal | FEO | Tana Exploration | 25% record title | UNIT |
| Breton Sound 52/53 Fed / SL La | BS 45 (portion) | 15683 | SL- LA | FEO | – | 37.5% working interest in that portion of the lease within the boundary of the UV B RA VUA from the depths between 10,596' MD and 10,822' MD in the electric log for the Century – SL 17675 #1 well | Active |
| | | | | | | recorded in Plaquemines Parish, Louisiana at COB 908, Page 425, Entry No. 80 | |
| Breton Sound 52/53 Fed / SL La | BS 52 (portion) | 17675 | SL- LA | FEO | – | 37.5% working interest insofar and only insofar as said lease covers depths between 10,596' measured depth and 10,822' measured depth in the electric log for the Century-UV B RA VUA; SL 17675 #1 well | Active |
| | | | | | | recorded in Plaquemines Parish, Louisiana at COB 1038, Page 318, File No. 03000546 | |
| Breton Sound 52/53 Fed / SL La | BS 52 (portion) | 17860 | SL- LA | FEO | – | 15% working interest from the base of the UV3 B1 Sand and below within the confines of the VUC 387.59 acres | Active |
| | | | | | | recorded in Plaquemines Parish, Louisiana at COB 1055, Page 632, File No. 03007020 | |
| East Cameron 345 | EC 345 | OCS-G 15156 | Federal | FEO | Talos ERT LLC | 0.8% ORRI | PROD |
| Green Canyon 64/65/108/109/243 | GC 243 | OCS-G 20051 | Federal | FEO | Hess (in part) and Walter (in part) | 4.655% ORRI insofar as the lease covers (i) the NW1/4SW/4 and S/2S/2 of Block 243, Green Canyon, from the surface to a total vertical depth of 20,500' subsea and (ii) the N1/2, NE1/4SW1/4 and N1/2SE1/4 of Block 243, Green Canyon, from the surface to a total vertical depth of 24,000' subsea (other than for the well specified below) | PROD |
| | | | | | | 3.92% ORRI in the Green Canyon 243 SS 005 ST01 BP00 (API #608114045701), increasing to 4.655% upon the production of 5.8 million barrels of oil equivalent from this well | |
| High Island 176 | HI 176 | OCS-G 27509 | Federal | FEO | Castex Offshore | 2.5% ORRI | PROD |
| Onshore/ State | - | 23017 | SL-MS | FW SD | Tellus Operating | 0.5% ORRI | |

WEIL:\97869848\10\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| Lease | | | | | Group LLC | | |
| | | | | | | recorded in Wayne County, Mississippi | |
| Onshore/ State Lease | - | 170650 | SL-MS | FW SD | Whiting Oil & Gas | 0.7% ORRI | |
| | | | | | | recorded in Jasper County, Mississippi | |
| Onshore/ State Lease | - | 230140 | SL-MS | FW SD | Black Jack Oil Co | 0.5% ORRI | |
| | | | | | | recorded in Franklin County, Mississippi | |
| Onshore/ State Lease | - | 230150 | SL-MS | FW SD | Wilcox Energy Co | 0.5% ORRI | |
| | | | | | | recorded in Franklin County, Mississippi | |
| Onshore/ State Lease | - | 231240 | SL-MS | FW SD | Wilcox Energy Co | 0.5% ORRI | |
| | | | | | | recorded in Franklin County, Mississippi | |
| Ship Shoal 79/80 | SS 79 | OCS-G 15277 | Federal | FEO | ANKOR Energy (in part) and FEO (in part) | 33% record title | PROD |
| | | | | | | 51% operating rights in all of Block 79, Ship Shoal Area, from the surface to one hundred feet below the stratigraphic equivalent of 11,318' true vertical depth as seen in the electric log for the electric log dated March 7, 2001 for the OCS-G 15277 Well No. 2 | |
| Ship Shoal 301[5] | SS 301 | OCS-G 10794 | Federal | FEO | FEO | 65% record title | SOP thru 1/31/2021 |
| | | | | | | 100% operating rights in all of Block 301, Ship Shoal Area, from the surface down to and including a depth of 13,000' total vertical depth | |
| Vermilion 78 | VR 78 | OCS-G 04421 | Federal | Fieldwood | Fieldwood | 37.5% record title | PROD |
| | | | | FEO | | 62.5% record title | |
| | | | | Fieldwood | | 18.75% operating rights in all of Block 78, Vermilion Area, from 11,953' TVDSS to 99,999' TVDSS | |
| | | | | FEO | | 62.5% operating rights in all of Block 78, Vermilion Area, from 11,953' TVDSS to 99,999' TVDSS | |
| Vermilion 229 | VR 229 | OCS-G 27070 | Federal | FEO | FEO | 50.0% record title as to E1/2; E1/2W1/2 of Block 229, Vermilion Area | PROD |
| | | | | | Tana Exploration | 50.0% record title as to W1/2W1/2 of Block 229, Vermilion Area | |
| Vermilion 362/371 | VR 362 | OCS-G 10687 | Federal | Fieldwood | FEO | 33.33333% record title | UNIT |
| | | | | Bandon | | 66.66667% record title | |

[5] Fieldwood's overriding royalty interest in this lease is not being conveyed hereunder.

WEIL:\97869848\10\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| | | | | Fieldwood | | 16.66667% operating rights in all of Block 362, Vermilion Area, South Addition, from 11,535' TVDSS to 99,999' TVDSS | |
| | | | | Bandon | | 66.66667% operating rights in all of Block 362, Vermilion Area, South Addition, from 11,535' TVDSS to 99,999' TVDSS | |
| Vermilion 362/371 | VR 363 | OCS-G 09522 | Federal | Fieldwood | (see below) | 100% record title | UNIT |
| | | | | Fieldwood | FEO | 33.33333% operating rights in the SE/4 of Block 363, Vermilion Area, South Addition | |
| | | | | Bandon | | 66.66667% operating rights in the SE/4 of Block 363, Vermilion Area, South Addition | |
| | | | | Fieldwood | Fieldwood | 100% operating rights in the N1/2; SW1/4 of Block 363, Vermilion Area, South Addition, from the surface to 10,180' SSTVD | |
| | | | | Fieldwood | Fieldwood | 50% operating rights in the N1/2; SW1/4 of Block 363, Vermilion Area, South Addition, from 10,180' SSTVD to 99,999' SSTVD | |
| Vermilion 362/371 | VR 371 | OCS-G 09524 | Federal | Fieldwood | FEO | 33.33333% record title | UNIT |
| | | | | Bandon | | 66.66667% record title | |
| | | | | Fieldwood | | 16.66667% operating rights in all of Block 371, Vermilion Area, South Addition, from 11,820' SSTVS to 99,999' SSTVD | |
| | | | | Bandon | | 66.66667% operating rights in all of Block 371, Vermilion Area, South Addition, from 11,820' SSTVS to 99,999' SSTVD | |
| West Delta 79/80 | WD 57, WD 79, WD 80 | OCS-G 01449 | Federal | Fieldwood | FEO | 2.5% ORRI[6] | UNIT |
| West Delta 79/80 | WD 79, WD 80 | OCS-G 01874 | Federal | Fieldwood | FEO | 2.5% ORRI[7] | UNIT |
| West Delta 79/80 | WD 80 | OCS-G 01989 | Federal | Fieldwood | FEO | 2.5% ORRI[8] | UNIT |

[6] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.
[7] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.
[8] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.

WEIL:\97869848\10\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| West Delta 79/80 | WD 80 | OCS-G 02136 | Federal | Fieldwood | FEO | 2.5% ORRI[9] | UNIT |
| - | - | 5749 | SL- TX | Fieldwood SD Offshore | Fieldwood SD Offshore | 100.0% working interest (lease recorded in Chambers County, Texas) | UNIT |
| - | | 5797 | SL-TX | Fieldwood SD Offshore | Fieldwood SD Offshore | 100.0% working interest (lease recorded in Chambers County, Texas) | TERMIN |
| - | | 24318 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | TERMIN |
| High Island 30/31 L (SL TX) | - | 106158 | SL-TX | FEO | FEO | 100% working interest (lease recorded in Jefferson County, Texas) | TERMIN |
| High Island 30/31 L (SL TX) | - | 106159 | SL-TX | FEO | FEO | 100% working interest (lease recorded in Jefferson County, Texas) | TERMIN |
| High Island 30/31 L (SL TX) | - | 114921 | SL-TX | FEO | FEO | 100% working interest (lease recorded in Jefferson County, Texas) | TERMIN |
| - | | 172915 | SL-TX | Fieldwood SD Offshore | Fieldwood SD Offshore | 100.0% working interest (lease recorded in Chambers County, Texas) | ACTIVE |
| - | | 172916 | SL-TX | Fieldwood SD Offshore | Fieldwood SD Offshore | 100.0% working interest (lease recorded in Chambers County, Texas) | ACTIVE |
| - | | 178537 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | TERMIN |
| - | | 183756 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | TERMIN |
| - | | 185633 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | TERMIN |
| - | | 186891 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | ACTIVE |
| - | | 191681 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | ACTIVE |
| - | | 207398 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | ACTIVE |
| - | | 227360 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | ACTIVE |
| - | | 234082 | SL-TX | Fieldwood | Fieldwood Onshore | 100% working interest (lease recorded in Galveston | TERMIN |

[9] No interest—other than Sellers' interests in all overriding royalty interests—are being conveyed hereunder in this lease.

WEIL:\97869848\10\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| | | | | Onshore | | County, Texas) | |
| - | | 255675 | SL-TX | Fieldwood Onshore | Fieldwood Onshore | 100% working interest (lease recorded in Galveston County, Texas) | TERMIN |
| Annapolis Valley | MC 380 | OCS-G 36544 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Annapolis Valley | MC 424 | OCS-G 36545 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Bartolome | MC 563 | OCS-G 21176 | Federal | Fieldwood | Fieldwood | 23.25% operating rights in all of Block 563, Mississippi Canyon, as to depths from below 19,000' down to 99,999' TVDSS | PROD |
| | | | | FEO | Kosmos Energy GOM Operations | 0.465% ORRI insofar as the lease covers all of Block 563, Mississippi Canyon, limited to depths from the surface to 19,000' TVDSS | |
| Boris | GC 282 | OCS-G 16727 | Federal | Fieldwood | BHP Billiton Petroleum (GOM) | 25% operating rights in all of Block 282, Green Canyon, from 16,700' TVD to 99,999' TVD | PROD |
| | | | | FEO | Energy Resource Technology GOM | 1.75% ORRI insofar as the lease pertains to depths from 0 to 16,999' TVD | |
| Deep Blue | GC 679 | OCS-G 21811 | Federal | Fieldwood | | 37.5% record title | PROD |
| | | | | | Anadarko Petroleum Corporation | 0% operating rights in E1/2 of Block 679, Green Canyon Area, limited in depth from the surface down to the stratigraphic equivalent of 16,048' TVD (17,315' MD) as seen in the Kerr-McGee OCS-G 21811 No. 1 (ST#1) well | |
| | | | | | Eni US Operating Co. Inc. | 0% operating rights in W1/2 of Block 679, Green Canyon Area, limited in depth from the surface down to 16,048' TVD | |
| | | | | | Fieldwood | 43.125% operating rights in all of Block 679, Green Canyon, below 16,048' TVD to 99,999' TVD | |
| Emory Peak | MC 743 | OCS-G 36401 | Federal | Fieldwood | Chevron USA | 25% record title | PRIMARY |

Exhibit A – Page 10

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|-------|-------|-------|------|--------|----------|-------------------|--------------|
| Ewing Bank 834 (Coelacanth) | EW 789 | OCS-G 35805 | Federal | Fieldwood | Walter O&G | 1.3% ORRI insofar as the lease cover the SE/4 of Block 789, Ewing Bank, from the surface to 26,000' SSTVD | UNIT |
| Ewing Bank 834 (Coelacanth) | EW 790 | OCS-G 33140 | Federal | Fieldwood | Fieldwood | 100.0% operating rights in SW1/4SW1/4; S1/2SE1/4SW1/4; S1/2SW1/4SE1/4 and NW1/4SE1/4SW1/4 of Block 790, Ewing Bank, limited to depths from below 26,000' TVDSS to 99,999' TVDSS | UNIT |
| | | | | | | 100.0% operating rights in N1/2; N1/2S1/2; SE1/4SE1/4; N1/2SW1/4SE1/4 and N1/4SE1/5SW1/4 of Block 790, Ewing Bank, from the surface to 99,999' TVDSS | |
| | | | | | | 1.3% ORRI insofar as the lease covers SW1/4SW1/4; S1/2SE1/4SW1/4; S1/2SW1/4SE1/4; NW1/4SE1/4SW1/4 of Block 790, Ewing Bank, from surface down to and including 26,000' TVDSS | |
| Ewing Bank 834 (Coelacanth) | EW 834 | OCS-G 27982 | Federal | Fieldwood | Walter O&G | 1.3% ORRI insofar as the lease covers NE1/4, NW1/4NW1/4, N/2SE1/4NE1/4 and NE/4NE/4 of Block 834, Ewing Bank, from the surface down to 26,000' TVDSS | UNIT |
| Ewing Bank 834 (Coelacanth) | EW 835 | OCS-G 33707 | Federal | Fieldwood | Walter O&G | 1.3% ORRI insofar as the lease covers the North 7800' of Block 835, Ewing Bank, from the surface down to 26,000' TVDSS | UNIT |
| Ewing Bank 834 (Coelacanth) | MC 793 | OCS-G 33177 | Federal | Fieldwood | Walter O&G | 1.3% ORRI insofar as the lease covers the W1/2W1/2NW1/4 of Block 793, Mississippi Canyon, from the surface down to 26,000' TVDSS | UNIT |
| Fandango | MC 297 | OCS-G 34434 | Federal | Fieldwood | Fieldwood | 70% record title | PRIMARY |

Exhibit A – Page 11

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|-------|-------|-------|------|--------|----------|-------------------|--------------|
| Galapagos | MC 519 | OCS-G 27278 | Federal | Fieldwood | BP E&P (in part) and Fieldwood (in part) | 65.0% record title | PROD |
| | | | | | | 49% operating rights in SW1/4 of Block 519, Mississippi Canyon, from the surface down to and including 99,999' TVDSS | |
| | | | | | | 49% operating rights in S1/2NW1/4 of Block 519, Mississippi Canyon, from the surface down to and including 14,000' | |
| | | | | | | 25.75% operating rights in S1/2; S1/2SE1/4NE1/4 of Block 519, Mississippi Canyon, from depths below 19,300' TVDSS down to and including 99,999' TVDSS | |
| | | | | | | 25.75% operating rights in S1/2NW1/4 of Block 519, Mississippi Canyon, from depths below 14,000' TVDSS down to and including 99,999' TVDSS | |
| | | | | | | 25.75% operating rights in N1/2NW1/4; N1/2NE1/4; SW1/4NE1/4 and N1/2SE1/4NE1/4 of Block 519, Mississippi Canyon, from the surface down to and including 99,999' TVDSS | |
| Green Canyon 39/40 (Katmai) | EW 1009 | OCS-G 34878 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 39/40 (Katmai) | EW 1010 | OCS-G 34879 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 39/40 (Katmai) | EW 1011 | OCS-G 34880 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 39/40 (Katmai) | GC 39 A | OCS-G 34966 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 39/40 (Katmai) | GC 39 B | OCS-G 36476 | Federal | Fieldwood | Fieldwood | 50% record title | PRIMARY |
| Green Canyon 39/40 (Katmai) | GC 040 | OCS-G 34536 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 39/40 (Katmai) | GC 041 | OCS-G 34537 | Federal | Fieldwood | Fieldwood | 50% record title | UNIT |
| Green Canyon 64/65/108/109/243 | GC 064 | OCS-G 34539 | Federal | FEO | FEO | 49% record title | PROD |
| Green Canyon 64/65/108/109/243 | GC 065 | OCS-G 05889 | Federal | FEO | FEO | 49% operating rights in all of Block 65, Green Canyon, from the surface of the earth down to and including the depth of 99,999 feet | UNIT |

Exhibit A – Page 12

WEIL:\97869848\10\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| Green Canyon 64/65/108/109/243 | GC 108 | OCS-G 14668 | Federal | FEO | FEO | 49% operating rights in all of Block 108, Green Canyon, from the surface of the earth down to and including the depth of 99,999 feet | UNIT |
| Green Canyon 64/65/108/109/243 | GC 109 | OCS-G 05900 | Federal | FEO | FEO | 49% operating rights in all of Block 109, Green Canyon, from the surface of the earth down to and including the depth of 99,999 feet | UNIT |
| Green Canyon 200 (Troika & Orlov) | GC 200 | OCS-G 12209 | Federal | FEO | FEO | 100% record title | UNIT |
| | | | | | | 53.33333% operating rights in NW1/4SE1/4; SE1/4NE1/4; E1/2SE1/4NW1/4; S1/3NE1/4NW1/4; W1.2E1/2SE1/4; NE1/4SW1/SE1/4; SW1/4NW1/4NE1/4 of Block 200, Green Canyon, as to all depths from surface to 17,518' TVDSS | |
| Green Canyon 200 (Troika)[10] | GC 201 | OCS-G 12210 | Federal | FEO | FOE | 100% record title as to the W/2 and SE/4 of Block 201, Green Canyon | UNIT |
| | | | | | LLOG Exploration | 4.87999% ORRI insofar as the lease covers the NE1/4 of Block 157, Green Canyon, from the surface to 17,000' subsea TVD | |
| Green Canyon 200 (Troika) | GC 244 | OCS-G 11043 | Federal | FEO | FOE (in part) and Deepwater Abandonment Alternatives, Inc. (in part) | 100% record title | UNIT |
| | | | | | | 0% operating rights as to all of Block 244, Green Canyon, as to those depths from 16,000 feet true vertical depth subsea down to 24,000 feet true vertical depth subsea | |
| Gunflint | MC 904 | OCS-G 36566 | Federal | Fieldwood | Fieldwood | 58.9363% record title | PRIMARY |
| Gunflint | MC 905 | OCS-G 36405 | Federal | Fieldwood | Fieldwood | 58.9363% record title | PRIMARY |
| Hagerman | MC 789 | OCS-G 36557 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Isabela N (Miocene) | MC 474 | OCS-G 35825 | Federal | Fieldwood | BP E&P | 24.33333% record title | PRIMARY |
| | | | | | | 12.5% operating rights in all of Block 474, Mississippi Canyon, from depths below 20,000' TVDSS down to and including 99,9999' TVDSS | |

---

[10] As to this Other Lease, no interest in the operating rights or record title as to the NE1/4 of Block 201, Green Canyon, is being conveyed hereunder.

WEIL:\97869848\10\45327.0007

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|-------|-------|-------|------|--------|----------|-------------------|--------------|
| Isabela N (Miocene) | MC 518 | OCS-G 35828 | Federal | Fieldwood | BP E&P | 24.33333% record title<br>12.5% operating rights in all of Block 518, Mississippi Canyon, from depths below 19,500' TVDSS down to and including 99,9999' TVDSS | PRIMARY |
| King Cake | AT 023 | OCS-G 35015 | Federal | Fieldwood | Murphy E&P USA | 7.75% record title | PRIMARY |
| Little Burn | GC 238 | OCS-G 26302 | Federal | Fieldwood | BHP Billiton Petroleum (GOM) | 40% operating rights in all of Block 238, Green Canyon, from 16,700' TVD to 99,999' TVD | PROD |
| | | | | FEO | Talos ERT LLC | 2.8% ORRI insofar as the lease pertains to depths from 0 to 16,999' TVD | |
| Mississippi Canyon 562 (Isabela) | MC 562 | OCS-G 19966 | Federal | Fieldwood | BP E&P | 12.5% record title<br>0% operating rights in N/2 of Block 562, Mississippi Canyon, from the surface to 19,500' TVDSS<br>12.5% operating rights in N/2 of Block 562, Mississippi Canyon, from depths below 19,500' TVDSS down to and including 99,999' TVDSS<br>12.5% operating rights in S/2 of Block 562, Mississippi Canyon, from depths below 20,000' TVDSS down to and including 99,999' TVDSS | PROD |
| Mississippi Canyon 698 (Big Bend) | MC 697 A | OCS-G 28021 | Federal | Fieldwood | Fieldwood | 54% record title | UNIT |
| Mississippi Canyon 698 (Big Bend) | MC 698 | OCS-G 28022 | Federal | Fieldwood | Fieldwood | 54% record title | UNIT |
| Mississippi Canyon 698 (Big Bend) | MC 742 | OCS-G 32343 | Federal | Fieldwood | Fieldwood | 100% record title in NE1/4; S1/2 of Block 742, Mississippi Canyon<br>54% record title in NW1/4 of Block 742, Mississippi Canyon | UNIT |
| Mississippi Canyon 782 (Dantzler) | MC 782 | OCS-G 33757 | Federal | Fieldwood | Fieldwood | 45% record title | PROD |
| Mississippi Canyon 948/949/992/993 (Gunflint) | MC 948 | OCS-G 28030 | Federal | Fieldwood | Fieldwood | 58.9363% record title | UNIT |
| Mississippi Canyon 948/949/992/993 (Gunflint) | MC 949 | OCS-G 32363 | Federal | Fieldwood | Fieldwood | 58.9363% record title | UNIT |
| Mississippi Canyon 948/949/992/993 (Gunflint) | MC 992 | OCS-G 24133 | Federal | Fieldwood | Fieldwood | 58.9363% record title in N1/2 of Block 992, Mississippi Canyon<br>52.94% record title in S1/2 of Block 992, Mississippi Canyon | UNIT |

Exhibit A – Page 14

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| Mississippi Canyon 948/949/992/993 (Gunflint) | MC 993 | OCS-G 24134 | Federal | Fieldwood | Fieldwood | 58.9363% record title in N1/2 of Block 993, Mississippi Canyon | UNIT |
| | | | | | | 45% record title in S1/2 of Block 993, Mississippi Canyon | |
| Mt. Driskill | MC 691 | OCS-G 36400 | Federal | Fieldwood | Fieldwood | 50% record title | PRIMARY |
| Murrayfield | MC 118 | OCS-G 35963 | Federal | Fieldwood | Chevron USA | 5.45% record title | PRIMARY |
| Murrayfield | MC 119 | OCS-G 36537 | Federal | Fieldwood | Chevron USA | 5.45% record title | PRIMARY |
| Murrayfield | MC 162 | OCS-G 36880 | Federal | Fieldwood | Chevron USA | 5.45% record title | PRIMARY |
| Murrayfield | MC 163 | OCS-G 36538 | Federal | Fieldwood | Chevron USA | 5.45% record title | PRIMARY |
| Murrayfield | MC 206 | OCS-G 36540 | Federal | Fieldwood | Chevron USA | 5.45% record title | PRIMARY |
| Scaramanga | MC 171 | OCS-G 34428 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Scaramanga | MC 172 | OCS-G 34429 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Schooner | MC 435 | OCS-G 36772 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Schooner | MC 436 | OCS-G 36773 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| South Marsh Is. 40/41/44 | SM 40 | OCS-G 13607 | Federal | FEO | FEO | 100% record title | TERMIN |
| South Timbalier 308 / Ewing Bank 873 | ST 287 | OCS-G 24987 | Federal | Fieldwood | Fieldwood | 100% record title | PROD |
| | | | | | | 100% operating rights in all of Block 287, South Timbalier Area, South Addition, from the surface to 13,852' SSTVD | |
| | | | | | | 50% operating rights in all of Block 287, South Timbalier Area, South Addition, from 13,852' SSTVD to 99,999' SSTVD | |
| South Timbalier 308 / Ewing Bank 873 | ST 308 | OCS-G 21685 | Federal | Fieldwood | Fieldwood | 100% record title | PROD |
| | | | | | | 100% operating rights in all of Block 308, South Timbalier Area, South Addition, from the surface to 18,571' SSTVD | |
| | | | | | | 50% operating rights in all of Block 308, South Timbalier Area, South Addition, from 18,571' SSTVD to 99,999' SSTVD | |
| Steamboat | GC 153 | OCS-G 36814 | Federal | Fieldwood | Fieldwood | 100% record title | PRIMARY |
| Talon | GC 198 | OCS-G 36021 | Federal | FEO | FEO | 100% record title | PRIMARY |
| Tarantula | EW 828 | OCS-G 35806 | Federal | FEO | FEO | 100% record title | PRIMARY |

Exhibit A – Page 15

| Field | Block | Lease | Type | Seller | Operator | Interest in Lease | Lease Status |
|---|---|---|---|---|---|---|---|
| Ticonderoga | GC 768 | OCS-G 21817 | Federal | Fieldwood | (see below) | 100% record title | PROD |
| | | | | | Anadarko | 50% operating rights in all of Block 768, Green Canyon, from the surface to the stratigraphic equivalent of 13,370' subsea TVD in the OCS-G 21817 #1 Well | |
| | | | | | Fieldwood | 43.125% operating rights in all of Block 768, Green Canyon, below the stratigraphic equivalent of 13,370' subsea TVD in the OCS-G 21817 #1 Well down to a depth of 40,000' subsea TVD | |
| Umbrella Point | - | 5752 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| Umbrella Point | - | 140960 | SL - TX | Fieldwood SD Offshore | Fieldwood SD Offshore | 100% record title | TERMIN |
| WILDCAT - ACOM O.H. ESTATE | - | 165888 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 186892 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 176012 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 179673 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 188919 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 188921 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |
| EAGLE BAY | - | 269151 | SL - TX | Fieldwood Onshore | Fieldwood Onshore | 100% record title | TERMIN |

[End of Exhibit A]

WEIL:\97869848\10\45327.0007

# Exhibit B
## Easements

## Part 1.  Co-Owned Easements

| ROW Number | Seller | Segment Number | Originating Area | Originating Block | Originating Name | Receiving Area | Receiving Block | Receiving Name | Size (inch) | Product | Status | Associated Lease | Undivided interest to be assigned to Buyer |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G03432 | Fieldwood | 4647 | SM | 149 | 6"SSTI | SM | 132 | B | 6 | BLKO | Active | G02592 | 50% |
| G09319 | Fieldwood | 5890 | ST | 53 | A | ST | 52 | A | 6 | OIL | Active | G04000 | 50% |
| G12304 | GOM Shelf | 9084 | GI | 43 | AS | GI | 19 | F/S | 10 | OIL | Active | 00175 | 25% |
| G28385 | Fieldwood | 17265 | ST | 68 | Caisson No. 1 | ST | 53 | A | 6 | BLKO | Active | G04000 | 20.334% |

### RUEs related to Co-Owned Leases

| RUE Number | Area | Block No. | Structure | Complex ID No. | FW Lease | Operator | Approval Date | Associated Assets | Party to hold RUE on behalf of Buyer and Fieldwood Energy I | Undivided interest for which Buyer is to be responsible |
|---|---|---|---|---|---|---|---|---|---|---|
| G30267 | ST | 68 | CAISS. #1 | 24108 | 00020 | Fieldwood | 03/09/18 | ST 67 #6 | Buyer | 20.334% |
| [G30329 | SM | 132 | B | 21982 | G02592 G02588 | Fieldwood | 5/06/19 | SM 136 C 007, SM 149 C001, C002 & C004 | Fieldwood Energy I | 50%][11] |

---

[11] Treatment of RUE G30329 and associated platform (SOUTH MARSH ISLAND 132 P/F B) is under discussion between the Parties.

WEIL:\97869848\10\45327.0007

## Part 2.  Other Easements

| ROW Number | Seller | Segment Number | Originating Area | Originating Block | Originating Name | Receiving Area | Receiving Block | Receiving Name | Size (inch) | Product | Status | Associated Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G09330 | FEO | 8204 | SS | 80 | A | EI | 125 | 30 SSTI | 6 | G/C | Active | G15277 |
| G15047 | Bandon | 10675 | VR | 371 | A | VR | 350 | 08 SSTI | 6 | OIL | Active | G09524 |
| G16055 | FEO | 11050 | SS | 301 | A | SS | 300 | B | 8 | BLKO | Active | G10794 |
| G23712 | Fieldwood | 13736 | SS | 79 | #2 | SS | 80 | A | 4 | BLKO | Active | G15277 |
| G23713 | Fieldwood | 13737 | SS | 79 | #2 | SS | 80 | A | 4 | BLKO | Active | G15277 |
| G28816 | Fieldwood | 14292 | SM | 40 | JA | SM | 40 | 10"SSTI | 6 | OIL | Active | G13607 |
| G28817 | Fieldwood | 14293 | SM | 40 | B | SM | 40 | JA | 6 | BLKO | Active | G13607 |
| G28818 | Fieldwood | 14294 | SM | 40 | B | SM | 40 | JA | 6 | BLKO | Active | G13607 |
| G28819 | Fieldwood | 14295 | SM | 40 | JA | SM | 40 | B | 2 | LIFT | Active | G13607 |
| G09349 | FEO | 8255 | GC | 65 | A | GC | 19 | A | 12 | OIL | Active | G05889 |
| G17737 | FEO | 11393 | GC | 200 | SS Manifold | GC | 65 | A | 10 | BLKO | Active | G12210 |
| | | 11394 | GC | 200 | SSMANIFO | GC | 65 | A | 24 | CSNG | Active | G12210 |
| | | 11395 | GC | 200 | SSMANIFO | GC | 65 | A | 5 | UMB | Active | G12210 |
| | | 11959 | GC | 200 | SSMANIFO | GC | 65 | A | 2 | UMB | Active | G12210 |
| G17738 | FEO | 11396 | GC | 200 | SSMANIFO | GC | 65 | A | 10 | BLKG | Active | G12210 |
| | | 11397 | GC | 200 | SSMANIFO | GC | 65 | A | 24 | CSNG | Active | G12210 |
| | | 11410 | GC | 200 | SSMANIFO | GC | 65 | A | 5 | UMB | Active | G12210 |
| | | 12141 | GC | 200 | SSMANIFO | GC | 65 | A | 5 | UMB | Proposed | G12210 |
| G17685 | FEO | 11260 | GC | 65 | A | GC | 19 | A | 16 | OIL | Active | G05889 |
| G28736 | Fieldwood | 19154 | MC | 948 | PLET NPL3 HUB | MC | 724 | Gulfstar 1 SPAR | 8 | BLKO | Active | G28030 |
| | | 19365 | MC | 948 | PLET NPL3 HUB | MC | 767 | ILS NPL1 | 12 | CSNG | Active | G28030 |
| | | 19374 | MC | 948 | PLET NPL3 HUB | MC | 948 | PLET SPL2 HUB | 8 | BLKO | Active | G28030 |
| G28809 | FEO | 20222 | GC | 244 | PLEM A | GC | 156 | Mid-Line PLET A-1 | 8 | BLKO | Proposed | G11043 |
| G28820 | FEO | 20197 | GC | 156 | PLET 2 | GC | 156 | A-2 PLET | 8 | BLKO | Active | G12209 |

WEIL:\97869848\10\45327.0007

| ROW Number | Seller | Segment Number | Originating Area | Originating Block | Originating Name | Receiving Area | Receiving Block | Receiving Name | Size (inch) | Product | Status | Associated Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G29287 | FEO | 19155 | MC | 948 | PLET SPL2 HUB | MC | 724 | Gulfstar 1 SPAR | 8 | BLKO | Active | G28030 |
| | | 19362 | MC | 724 | Gulfstar 1 Spar | MC | 948 | UTA1 | 8 | UMB | Active | G28030 |
| | | 19432 | MC | 948 | PLET SPL2 | MC | 768 | ILS SPL1 | 12 | CSNG | Active | G28030 |
| G29294 | Fieldwood | 19282 | MC | 736 | A Thunderhawk | MC | 782 | Dan 1 STUA 1 | 6 | UBEH | Active | G33757 |
| | | 19296 | MC | 698 | RGL PLET 1 | MC | 736 | A Thunderhawk | 12 | CSNG | Active | G28022 |
| G29295 | Fieldwood | 19097 | MC | 698 | RGL PLET 1 | MC | 736 | A Thunderhawk | 8 | BLKO | Active | G28022 |
| | | 19149 | MC | 698 | RGL PLET 1 | MC | 736 | A Thunderhawk | 8 | BLKO | Active | G28022 |
| | | 19283 | MC | 736 | A Thunderhawk | MC | 698 | BBD SUTA | 6 | UMB | Active | G28022 |
| | | 19364 | MC | 698 | RGL PLET 1 | MC | 736 | A | 12 | CSNG | Active | G28022 |
| G29299 | Fieldwood | 19297 | MC | 736 | A Thunderhawk | MC | 692 | North Plet | 1 | LIFT | Active | G28022 |
| | | 19334 | MC | 736 | A Thunderhawk | MC | 692 | SUTA | 5 | UMBH | Active | G28022 |
| G29417 | FEO | 20221 | GC | 156 | Mid-Line PLET A-1 | GC | 156 | Md-Line PLET A-2 | 8 | BLKO | Active | G12209 |
| | | 20155 | GC | 156 | Mid-Line PLET A-2 | GC | 65 | A | 8 | BLKO | Proposed | G12209 |
| G29420 | FEO | 20183 | GC | 200 | SUTA | GC | 244 | TROIKA SUTA | 5 | UMB | Proposed | G11043 |
| G29424 | FEO | 20195 | GC | 65 | A | GC | 200 | SUTA | 3 | UMB | Proposed | G12209 |
| G29425 | FEO | 20196 | GC | 200 | PLET-1 | GC | 156 | PLET-2 | 8 | BLKO | Proposed | G12210 |
| G29427 | FEO | 20202 | GC | 40 | K1 PLET | ST | 308 | A | 8 | BLKO | Proposed | G34966 |
| | | 20203 | GC | 40 | K1 PLET | ST | 308 | Start Up Flange | 12 | CSNG | Proposed | G34966 |
| | | 20278 | ST | 308 | A | GC | 39 | K2 SUTA | 5 | UBEH | Proposed | G34966 |
| G29427 | Fieldwood | 20200 | GC | 39 | K2 SUTA | GC | 40 | K1 SUTA | 5 | UBEH | Active | G34966 |

Exhibit B – Page 3

## RUEs related to Other Leases

| RUE Number | Area | Block No. | Structure | Complex ID No. | FW Lease | Operator | Approval Date | Associated Assets |
|---|---|---|---|---|---|---|---|---|
| G30201 | SS | 80 | A | 23548 | G15277 | FEO | 02/07/13 | SS 79 A002 |
| G30342 | SM | 40 | B | 1266 | G13607 | FEO | 06/21/18 | SM 41 B2, B3, B4, B6 & SM 40 B5 |
| G30352 | SM | 40 | JA | 27017 | G13607 | FEO | | SM 41 B PF and wells |
| G30354 | MC | 736 | A (Thunder Hawk) | 2045 | G28022 | Fieldwood | 07/03/18 | MC 698 001, MC 734 SS002, SS004, SS005, SS006, MC 782 001 & 002 |

[End of Exhibit B]

WEIL:\97869848\10\45327.0007

# Exhibit C
## Scheduled Wells

## Part 1.  Co-Owned Wells

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 032 #U012 ST1 | GI032U1201 | 00174 | 177192014502 |
| GRAND ISLE 039 #P002 ST2 | GI039P0202 | 00127 | 177174097802 |
| GRAND ISLE 040 #E007D | GI040E07D0 | 00128 | 177170077500 |
| GRAND ISLE 040 #E009 | GI040E0900 | 00128 | 177170078700 |
| GRAND ISLE 040 #G001 | GI040G0100 | 00128 | 177170070400 |
| GRAND ISLE 040 #G002 | GI040G0200 | 00128 | 177170076200 |
| GRAND ISLE 040 #G006 | GI040G0600 | 00133 | 177174012600 |
| GRAND ISLE 040 #G010 | GI040G1000 | 00128 | 177174037200 |
| GRAND ISLE 040 #G011 | GI040G1100 | 00128 | 177174037300 |
| GRAND ISLE 040 #M001 | GI040M0100 | 00128 | 177174037000 |
| GRAND ISLE 040 #M002D | GI040M02D0 | 00128 | 177174038600 |
| GRAND ISLE 040 #M003 | GI040M0300 | 00128 | 177174043600 |
| GRAND ISLE 040 #O005 | GI040O0500 | 00128 | 177174097100 |
| GRAND ISLE 041 #D002 | GI041D0200 | 00129 | 177170075300 |
| GRAND ISLE 041 #D003 | GI041D0300 | 00129 | 177170076700 |
| GRAND ISLE 041 #D004 | GI041D0400 | 00130 | 177170080500 |
| GRAND ISLE 041 #D007 | GI041D0700 | 00129 | 177172000000 |
| GRAND ISLE 041 #D008 ST | GI041D0801 | 00130 | 177172000801 |
| GRAND ISLE 041 #D009 | GI041D0900 | 00129 | 177172001500 |
| GRAND ISLE 041 #D010ST | GI041D1000 | 00129 | 177174017801 |
| GRAND ISLE 041 #D011E | GI041D1100 | 00129 | 177174018400 |
| GRAND ISLE 041 #E001 ST1 | GI041E0101 | 00130 | 177170069401 |
| GRAND ISLE 041 #E002 ST1 | GI041E0201 | 00130 | 177170074701 |
| GRAND ISLE 041 #E003D | GI041E03D0 | 00130 | 177170075000 |
| GRAND ISLE 041 #E004 ST1 | GI041E0401 | 00130 | 177170075201 |
| GRAND ISLE 041 #E005 | GI041E0500 | 00129 | 177170075400 |
| GRAND ISLE 041 #E006D | GI041E06D0 | 00130 | 177170077300 |
| GRAND ISLE 041 #E008 | GI041E0800 | 00130 | 177170079800 |
| GRAND ISLE 041 #E010 | GI041E1001 | 00130 | 177172000301 |
| GRAND ISLE 041 #E012D | GI041E12D0 | 00130 | 177174011500 |
| GRAND ISLE 041 #E013 | GI041E1300 | 00130 | 177174012900 |
| GRAND ISLE 041 #F003 ST1 | GI041F0301 | 00129 | 177174006401 |
| GRAND ISLE 041 #F005 ST2 | GI041F0502 | 00129 | 177174017302 |
| GRAND ISLE 041 #G007 | GI041G0700 | 00130 | 177174022400 |
| GRAND ISLE 041 #G008 | GI041G0800 | 00130 | 177174026400 |

Exhibit C – Page 1

WEIL:\97869848\10\45327.0007

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 041 #H001 | GI041H0100 | 00130 | 177174020300 |
| GRAND ISLE 041 #H002 | GI041H0200 | 00129 | 177174028100 |
| GRAND ISLE 041 #H003 ST | GI041H0301 | 00130 | 177174028601 |
| GRAND ISLE 041 #H004 | GI041H0400 | 00130 | 177174038000 |
| GRAND ISLE 041 #H005 | GI041H0500 | 00129 | 177174038100 |
| GRAND ISLE 041 #H006 ST1 | GI041H0601 | 00129 | 177174098301 |
| GRAND ISLE 041 #H007 | GI041H0700 | 00130 | 177174098400 |
| GRAND ISLE 042 #C001 | GI042C0100 | 00131 | 177170067000 |
| GRAND ISLE 042 #C002 | GI042C0200 | 00131 | 177170072100 |
| GRAND ISLE 042 #F001 | GI042F0100 | 00131 | 177174005100 |
| GRAND ISLE 042 #F002 | GI042F0200 | 00131 | 177174006000 |
| GRAND ISLE 042 #F004 | GI042F0400 | 00131 | 177174007100 |
| GRAND ISLE 046 #001 ST1 | GI04600101 | 00132 | 177174042801 |
| GRAND ISLE 046 #G009 ST1 | GI046G0901 | 00132 | 177174026101 |
| GRAND ISLE 047 #E006 | GI047E0600 | 00133 | 177170078100 |
| GRAND ISLE 047 #E008 | GI047E0800 | 00133 | 177170079500 |
| GRAND ISLE 047 #E017 | GI047E1700 | 00133 | 177174039900 |
| GRAND ISLE 047 #G004 ST | GI047G0401 | 00133 | 177170079601 |
| GRAND ISLE 047 #G005 ST | GI047G0501 | 00133 | 177170080301 |
| GRAND ISLE 047 #G012 | GI047G1200 | 00133 | 177174037500 |
| GRAND ISLE 047 #L001 | GI047L0100 | 00133 | 177174012800 |
| GRAND ISLE 047 #L002 ST | GI047L0201 | 00133 | 177174015901 |
| GRAND ISLE 047 #L003 | GI047L0300 | 00133 | 177174020500 |
| GRAND ISLE 047 #L004 | GI047L0400 | 00133 | 177174017000 |
| GRAND ISLE 047 #L005 | GI047L0500 | 00133 | 177174017900 |
| GRAND ISLE 047 #L006D | GI047L0600 | 00133 | 177174036300 |
| GRAND ISLE 047 #L007 ST | GI047L0701 | 00177 | 177174039101 |
| GRAND ISLE 047 #L009 ST1 | GI047L0901 | 00133 | 177174039201 |
| GRAND ISLE 047 #L011 ST2 | GI047L1102 | 00133 | 177174039602 |
| GRAND ISLE 047 #O001 BP2 | GI047O01D3 | 00133 | 177174096102 |
| GRAND ISLE 047 #O002 | GI047002D1 | 00133 | 177174096600 |
| GRAND ISLE 047 #O004 | GI047O0400 | 00133 | 177174096900 |
| GRAND ISLE 047 #O006 | GI047O0600 | 00133 | 177174097200 |
| GRAND ISLE 047 #O007 ST1 | GI047O0701 | 00133 | 177174097301 |
| GRAND ISLE 047 #O008 | GI047O0800 | 00133 | 177174097600 |
| GRAND ISLE 047 #O009 | GI047O09D1 | 00133 | 177174097700 |
| GRAND ISLE 048 #E001 | GI048E0100 | 00134 | 177170045400 |
| GRAND ISLE 048 #E014 | GI048E1400 | 00134 | 177172003900 |
| GRAND ISLE 048 #E018 ST | GI048E1801 | 00134 | 177174043501 |
| GRAND ISLE 048 #J002 ST1 | GI048J0201 | 00134 | 177174003201 |

Exhibit C – Page 2

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 048 #J003 ST | GI048J0302 | 00134 | 177174004502 |
| GRAND ISLE 048 #J004 ST2 | GI048J0403 | 00134 | 177174004803 |
| GRAND ISLE 048 #J005 ST | GI048J0501 | 00134 | 177174011601 |
| GRAND ISLE 048 #J006 | GI048J0600 | 00134 | 177174012000 |
| GRAND ISLE 048 #J007 | GI048J0700 | 00134 | 177174012200 |
| GRAND ISLE 048 #J008 | GI048J0800 | 00134 | 177174016900 |
| GRAND ISLE 048 #J009 | GI048J0900 | 00134 | 177174044200 |
| GRAND ISLE 048 #J010 ST | GI048J1001 | 00134 | 177174044401 |
| GRAND ISLE 048 #P001 FKA #14 | GI048P0100 | 00134 | 177174015300 |
| GRAND ISLE 110 #A002 | GI110A0200 | G13943 | 177184008900 |
| GRAND ISLE 110 #A005 BP2 | GI110A0502 | G13943 | 177184010402 |
| GRAND ISLE 116 #A001 | GI116A0100 | G13944 | 177184008700 |
| GRAND ISLE 116 #A003 | GI116A0300 | G13944 | 177184009200 |
| GRAND ISLE 116 #A004 | GI116A0401 | G13944 | 177184009501 |
| GRAND ISLE 116 #A006 | GI116A0601 | G13944 | 177184010601 |
| GRAND ISLE 116 #A007 | GI116A0700 | G13944 | 177184011100 |
| MISSISSIPPI CANYON 110 #001 | MC1100100 | G18192 | 608174060500 |
| MISSISSIPPI CANYON 110 #A009 | MC110A0900 | G18192 | 608174042501 |
| MISSISSIPPI CANYON 110 #A011ST | MC110A1101 | G18192 | 608174042801 |
| MISSISSIPPI CANYON 110 #A031 | MC110A3100 | G18192 | 608174087900 |
| SOUTH MARSH IS 048 #E002 | SM048E0201 | 00786 | 177072002801 |
| SOUTH MARSH IS 048 #E003 ST1BP | SM048E0302 | 00786 | 177072003302 |
| SOUTH MARSH IS 048 #E004 | SM048E0401 | 00786 | 177072004001 |
| SOUTH MARSH IS 048 #E007 | SM048E07 | 00786 | 177074092300 |
| SOUTH MARSH IS 149 #C001 ST1 | SM149C0101 | G02592 | 177084088901 |
| SOUTH MARSH IS 149 #C002 | SM149C0200 | G02592 | 177084089100 |
| SOUTH MARSH IS 149 #C004 | SM149C0400 | G02592 | 177084090300 |
| SOUTH MARSH IS 149 #C005 | SM149C0500 | G02592 | 177084090400 |
| SOUTH MARSH IS 149 #D001 | SM149D0101 | G02592 | 177084094401 |
| SOUTH PASS 061 #D004 ST2 | SP061D0402 | G01609 | 177234006302 |
| SOUTH PASS 061 #D023 | SP061D2300 | G01609 | 177234008200 |
| SOUTH PASS 061 #D024 ST1 | SP061D2401 | G01609 | 177234007701 |
| SOUTH PASS 061 #D025 | SP061D2500 | G01609 | 177234008300 |
| SOUTH PASS 061 #D026 | SP061D2600 | G01609 | 177234008400 |
| SOUTH PASS 061 #D033 ST2 | SP061D3302 | G01609 | 177234008702 |
| SOUTH PASS 061 #D035 ST2 | SP061D3502 | G01609 | 177234009102 |
| SOUTH PASS 061 #D036 ST1 | SP061D3601 | G01609 | 177234009201 |
| SOUTH PASS 061 #D039 ST1 | SP061D3901 | G01609 | 177234009801 |
| SOUTH PASS 061 #D040 ST2 | SP061D4002 | G01609 | 177234009502 |
| SOUTH PASS 061 #D043 ST2 | SP061D4302 | G01609 | 177234009602 |

Exhibit C – Page 3

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH TIMBALIER 053 #004 | ST05300401 | G04000 | 177154043101 |
| SOUTH TIMBALIER 053 #006 | ST05300601 | G04000 | 177154083500 |
| SOUTH TIMBALIER 053 #A001 | ST053A0101 | G04000 | 177154034402 |
| SOUTH TIMBALIER 053 #A002 | ST053A0201 | G04000 | 177154037601 |
| SOUTH TIMBALIER 053 #A003 | ST053A0301 | G04000 | 177154038401 |
| SOUTH TIMBALIER 053 #A004 | ST053A0400 | G04000 | 177154038500 |
| SOUTH TIMBALIER 053 #A006 | ST053A0601 | G04000 | 177154039201 |
| SOUTH TIMBALIER 053 #A007 | ST053A0700 | G04000 | 177154040400 |
| SOUTH TIMBALIER 053 #A008 | ST053A0800 | G04000 | 177154040500 |
| SOUTH TIMBALIER 053 #A009 | ST053A0900 | G04000 | 177154041500 |
| SOUTH TIMBALIER 053 #A010 | ST053A1001 | G04000 | 177154043501 |
| SOUTH TIMBALIER 053 #A011 | ST053A1100 | G04000 | 177154042400 |
| SOUTH TIMBALIER 053 #A012 | ST053A1201 | G04000 | 177154042301 |
| SOUTH TIMBALIER 053 #A013 | ST053A1300 | G04000 | 177154044000 |
| SOUTH TIMBALIER 053 #A014 | ST053A1400 | G04000 | 177154042900 |
| SOUTH TIMBALIER 053 #A015 | ST053A1501 | G04000 | 177154076901 |
| SOUTH TIMBALIER 053 #A016 | ST053A1601 | G04000 | 177154043601 |
| SOUTH TIMBALIER 053 #A017 | ST053A1701 | G04000 | 177154061101 |
| SOUTH TIMBALIER 053 #A018 | ST053A1801 | G04000 | 177154061201 |
| SOUTH TIMBALIER 053 #A019 | ST053A1900 | G04000 | 177154077200 |
| SOUTH TIMBALIER 053 #A020 | ST053A2001 | G04000 | 177154077101 |
| SOUTH TIMBALIER 053 #A021 | ST053A2100 | G04000 | 177154111000 |
| SOUTH TIMBALIER 053 #C001 | ST053C0100 | G04000 | 177154067200 |
| SOUTH TIMBALIER 053 #C002 | ST053C0200 | G04000 | 177154107300 |
| SOUTH TIMBALIER 053 #I001 | ST053I0100 | G04000 | 177154031200 |
| SOUTH TIMBALIER 067 #006 | ST06700602 | 00020 | 177154078404 |
| WEST DELTA 068 #U001 | WD068U0100 | 00180 | 177190136200 |
| WEST DELTA 068 #U004 | WD068U0400 | 00180 | 177192007000 |
| WEST DELTA 068 #U005 ST2 | WD068U0502 | 00180 | 177192007502 |
| WEST DELTA 068 #U006 | WD068U0600 | 00180 | 177192008600 |
| WEST DELTA 068 #U009 | WD068U0900 | 00180 | 177192011401 |
| WEST DELTA 068 #U011 | WD068U11 | 00180 | 177192013603 |
| WEST DELTA 068 #U013 ST2 | WD068U1302 | 00180 | 177194065102 |
| WEST DELTA 068 #U014 | WD068U1400 | 00180 | 177194065300 |
| WEST DELTA 069 #D007 ST2 | WD069D0702 | 00181 | 177190063802 |
| WEST DELTA 070 #D001D | WD070D0100 | 00182 | 177190063300 |
| WEST DELTA 070 #D005 | WD070D0500 | 00182 | 177190063600 |
| WEST DELTA 070 #D008 | WD070D0800 | 00182 | 177190063900 |
| WEST DELTA 070 #D009 | WD070D0900 | 00182 | 177190064000 |
| WEST DELTA 070 #D010 | WD070D1000 | 00182 | 177190066700 |

Exhibit C – Page 4

WEIL:\97869848\10\45327.0007

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 070 #D011 | WD070D1100 | 00182 | 177194036800 |
| WEST DELTA 070 #D012 | WD070D1200 | 00182 | 177194037200 |
| WEST DELTA 070 #D013 | WD070D1300 | 00182 | 177194057000 |
| WEST DELTA 070 #D014 | WD070D1400 | 00182 | 177194057200 |
| WEST DELTA 070 #E001 ST1 | WD070E0101 | 00182 | 177190108201 |
| WEST DELTA 070 #E002 | WD070E0200 | 00182 | 177190067800 |
| WEST DELTA 070 #E003 | WD070E0300 | 00182 | 177190066500 |
| WEST DELTA 070 #FF001 | WD070FF100 | 00182 | 177194084200 |
| WEST DELTA 070 #FF002 | WD070FF200 | 00182 | 177194084300 |
| WEST DELTA 070 #FF003 | WD070FF300 | 00182 | 177194084400 |
| WEST DELTA 070 #I003 ST1 | WD070I0301 | 00182 | 177190091301 |
| WEST DELTA 070 #I004 | WD070I0400 | 00182 | 177190091500 |
| WEST DELTA 070 #I005 ST1 | WD070I0501 | 00182 | 177190095001 |
| WEST DELTA 070 #I006 ST | WD070I0601 | 00182 | 177190095101 |
| WEST DELTA 070 #I008 ST1 | WD070I0801 | 00182 | 177190102101 |
| WEST DELTA 070 #I010 ST1 | WD070I1001 | 00182 | 177190105701 |
| WEST DELTA 070 #I012 STBP2 | WD070I1202 | 00182 | 177194010702 |
| WEST DELTA 070 #I013 | WD070I1300 | 00182 | 177194038400 |
| WEST DELTA 070 #I014 | WD070I1400 | 00182 | 177194061100 |
| WEST DELTA 070 #I015 | WD070I1500 | 00182 | 177194061300 |
| WEST DELTA 070 #I016 ST | WD070I1601 | 00182 | 177194064201 |
| WEST DELTA 070 #I017 | WD070I1700 | 00182 | 177194064600 |
| WEST DELTA 070 #L003 | WD070L0300 | 00182 | 177190113800 |
| WEST DELTA 070 #L004 | WD070L0400 | 00182 | 177190115100 |
| WEST DELTA 070 #L005 | WD070L0500 | 00182 | 177190115500 |
| WEST DELTA 070 #L006 | WD070L0600 | 00182 | 177190115000 |
| WEST DELTA 070 #L010 | WD070L1000 | 00182 | 177190119500 |
| WEST DELTA 070 #L011 | WD070L1100 | 00182 | 177190121400 |
| WEST DELTA 071 #E006 | WD071E0600 | 00838 | 177190073200 |
| WEST DELTA 071 #E007 ST1 | WD071E0701 | 00838 | 177190095601 |
| WEST DELTA 071 #E009 ST1 | WD071E0901 | 00838 | 177190091701 |
| WEST DELTA 071 #E010 | WD071E1000 | 00838 | 177190095700 |
| WEST DELTA 071 #O003 | WD071O0300 | 00838 | 177190121500 |
| WEST DELTA 071 #O005 | WD071O0501 | 00838 | 177190125001 |
| WEST DELTA 071 #O006 | WD071O0601 | 00838 | 177190127101 |
| WEST DELTA 071 #O007 | WD071O0702 | 00838 | 177190129602 |
| WEST DELTA 071 #O009 | WD071O0900 | 00838 | 177190133600 |
| WEST DELTA 071 #O010 | WD071O1000 | 00838 | 177194002500 |
| WEST DELTA 071 #O013 | WD071O1303 | 00838 | 177192001102 |
| WEST DELTA 079 #A019 | WD079A19 | G01449 | 177192006800 |

Exhibit C – Page 5

WEIL:\97869848\10\45327.0007

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 079 #A021 | WD079A21 | G01449 | 177192012700 |
| WEST DELTA 079 #C017 | WD079C17 | G01874 | 177192013800 |
| WEST DELTA 079 #C025 | WD079C25 | G01874 | 177194008701 |
| WEST DELTA 079 #C032 | WD079C32 | G01874 | 177194019400 |
| WEST DELTA 079 #C033 | WD079C33 | G01874 | 177192009101 |
| WEST DELTA 079 #D020 | WD079D20 | G01449 | 177192023101 |
| WEST DELTA 079 #D023 | WD079D23 | G01449 | 177194006600 |
| WEST DELTA 079 #D024 | WD079D24 | G01449 | 177194007300 |
| WEST DELTA 079 #D031 | WD079D31 | G01449 | 177194037800 |
| WEST DELTA 079 #D035 | WD079D35 | G01449 | 177194046200 |
| WEST DELTA 079 #D036 | WD079D36 | G01449 | 177194047400 |
| WEST DELTA 079 #F002 | WD079F02 | G01449 | 177194038300 |
| WEST DELTA 080 #A010 | WD080A10 | G01874 | 177190136300 |
| WEST DELTA 080 #A016 | WD080A16 | G01874 | 177192004600 |
| WEST DELTA 080 #B016 | WD080B16 | G01874 | 177192018200 |
| WEST DELTA 080 #D019 | WD080D19 | G01449 | 177192021703 |
| WEST DELTA 080 #D029 | WD080D29 | G01874 | 177194036501 |
| WEST DELTA 080 #D032 | WD080D32 | G01449 | 177194038500 |
| WEST DELTA 080 #D034 | WD080D34 | G01874 | 177192019501 |
| WEST DELTA 079 #A019 | WD079A19 | G01449 | 177192006800 |
| WEST DELTA 094 #V001 | WD094V0100 | 00839 | 177192005700 |
| WEST DELTA 094 #V002 | WD094V0200 | 00839 | 177192011600 |
| WEST DELTA 094 #V003 | WD094V0300 | 00839 | 177192014900 |
| WEST DELTA 094 #V004 | WD094V0400 | 00839 | 177192015500 |
| WEST DELTA 094 #V014 | WD094V1400 | 00839 | 177194039000 |
| WEST DELTA 094 #V015 | WD094V1500 | 00839 | 177194064000 |
| WEST DELTA 094 #V016 | WD094V1602 | 00839 | 177194063902 |
| WEST DELTA 095 #S005 ST1BP1 | WD095S0502 | G01497 | 177190126202 |
| WEST DELTA 095 #S006 | WD095S0600 | G01497 | 177190135400 |
| WEST DELTA 095 #S008 | WD095S0800 | G01497 | 177190127700 |
| WEST DELTA 095 #S010 ST1 | WD095S1001 | G01497 | 177192000101 |
| WEST DELTA 095 #S012 ST | WD095S1201 | G01497 | 177192002301 |
| WEST DELTA 095 #X001 ST | WD095X0101 | G01497 | 177194002901 |
| WEST DELTA 095 #X003 | WD095X0300 | G01497 | 177194003200 |
| WEST DELTA 095 #X007 ST1 | WD095X0701 | G01497 | 177194003701 |
| WEST DELTA 095 #X011 | WD095X1100 | G01497 | 177194055700 |
| WEST DELTA 095 #X012D | WD095X12D0 | G01497 | 177194055900 |
| WEST DELTA 096 #S002 ST1BP1 | WD096S0202 | G01498 | 177190123402 |
| WEST DELTA 096 #S007 ST1 | WD096S0701 | G01498 | 177190132901 |
| WEST DELTA 096 #X004 ST1 | WD096X0401 | G01498 | 177194003301 |

Exhibit C – Page 6

WEIL:\97869848\10\45327.0007

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 096 #X006 ST2 | WD096X0602 | G01498 | 177194003502 |
| WEST DELTA 096 #X009 | WD096X0900 | G01498 | 177194004000 |

## Part 2. **Other Wells**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| BLOWFISH GU AKA ST TR 329 #2 | BLOWFISH2 | ST-TX 227360 | 421673142600 |
| BRETON SOUND 025 #A001 | BS02501 | G31442 | 177264005300 |
| BRETON SOUND 052 #002 SL17860 | SL1786002 | ST-LA 17860 | 17726205670000 |
| BRETON SOUND 053 #001 SL17675 | SL1767501 | ST-LA 17675 | 177262055100 |
| BRETON SOUND 053 #003 SL15683 | SL1568303 | ST-LA 15683 | 177262053100 |
| BRETON SOUND 53 #UV 3-8 RA VUA | SL1905101 | ST-LA 19051 | 177262058300 |
| EAGLE BAY GU AKA ST TR 329 1 | EAGLEBAYGU | ST-TX 186891 | #N/A |
| EAST CAMERON 345 #A001 (ORRI) | EC345A01 | G15156 | 177044100800 |
| EWING BANKS 789 #A006 (ORRI) | EW789A06 | G35805 | 608104015500 |
| EWING BANKS 789 #A007 (ORRI) | EW789A07 | G35805 | 608104015401 |
| EWING BANKS 790 A-2 (ORRI) | EW790A02 | G33140 | 608104015100 |
| EWING BANKS 790 A-3 (ORRI) | EW790A03 | G33140 | 608104015300 |
| EWING BANKS 790 #A009 (ORRI) | EW790A09 | G33140 | 608104015700 |
| EWING BANKS 834 A-1 (ORRI) | EW834A01 | G27982 | 608105010300 |
| GREEN CANYON 40 #1 | GC04001 | G34536 | 608114062300 |
| GREEN CANYON 064 #A026 | GC064A26 | G34539 | 608114063101 |
| GREEN CANYON 065 #A004 | GC065A04 | G05889 | 608114011600 |
| GREEN CANYON 065 #A006 | GC065A06 | G05889 | 608114014800 |
| GREEN CANYON 065 #A008 | GC065A08 | G05889 | 608114015800 |
| GREEN CANYON 065 #A009 | GC065A09 | G05889 | 608114017000 |
| GREEN CANYON 065 #A020 | GC065A20 | G05889 | 608114059902 |
| GREEN CANYON 065 #A023 | GC065A23 | G05889 | 608114064200 |
| GREEN CANYON 065 #A024 | GC065A24 | G05889 | 608114061900 |
| GREEN CANYON 065 #A038 | GC065A38 | G05889 | 608114015501 |
| GREEN CANYON 065 #A043 | GC065A43 | G05889 | 608114017100 |
| GREEN CANYON 065 #A044 | GC065A44 | G05889 | 608114017701 |
| GREEN CANYON 065 #A059 | GC065A59 | G05889 | 608114015900 |
| GREEN CANYON 065 #A060 | GC065A60 | G05889 | 608114015300 |
| GREEN CANYON 108 #A017 | GC108A17 | G14668 | 608114045202 |
| GREEN CANYON 108 #A021 | GC108A21 | G14668 | 608114060701 |
| GREEN CANYON 109 #A001 | GC109A01 | G05900 | 608114010000 |
| GREEN CANYON 109 #A002 | GC109A02 | G05900 | 608114010600 |
| GREEN CANYON 109 #A003 | GC109A03 | G05900 | 608114011200 |
| GREEN CANYON 109 #A005 | GC109A05 | G05900 | 608114012100 |

Exhibit C – Page 7

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GREEN CANYON 109 #A010 | GC109A10 | G05900 | 608114017300 |
| GREEN CANYON 109 #A011 | GC109A11 | G05900 | 608114017800 |
| GREEN CANYON 109 #A015 | GC109A15 | G05900 | 608114039502 |
| GREEN CANYON 109 #A018 | GC109A18 | G05900 | 608114047603 |
| GREEN CANYON 109 #A031 | GC109A31 | G05900 | 608114011900 |
| GREEN CANYON 109 #A032 | GC109A32 | G05900 | 608114012303 |
| GREEN CANYON 109 #A033 | GC109A33 | G05900 | 608114012401 |
| GREEN CANYON 109 #A034 | GC109A34 | G05900 | 608114014401 |
| GREEN CANYON 109 #A035 | GC109A35 | G05900 | 608114014700 |
| GREEN CANYON 109 #A036 | GC109A36 | G05900 | 608114015000 |
| GREEN CANYON 109 #A037 | GC109A37 | G05900 | 608114015200 |
| GREEN CANYON 109 #A039 | GC109A39 | G05900 | 608114016000 |
| GREEN CANYON 109 #A041 | GC109A41 | G05900 | 608114016500 |
| GREEN CANYON 109 #A042 | GC109A42 | G05900 | 608114016701 |
| GREEN CANYON 200 # TA 1 TROIKA | GC200TA01 | G12209 | 608114021600 |
| GREEN CANYON 200 # TA 2 TROIKA | GC200TA02 | G12209 | 608114021702 |
| GREEN CANYON 200 #T A 3 TROIKA | GC200TA03 | G12209 | 608114021800 |
| GREEN CANYON 200 TA3 ST1 TROIKA | GC200TA03S | G12209 | 608114021801 |
| GREEN CANYON 200 # TA 4 TROIKA | GC200TA04 | G12209 | 608114021901 |
| GREEN CANYON 200 # TA 5 TROIKA | GC200TA05 | G12209 | 608114020501 |
| GREEN CANYON 200 # TA 9 ORLOV | GC200TA09 | G12209 | 608114071603 |
| GREEN CANYON 201 # TA 6 TROIKA | GC201TA06 | G12210 | 608114027501 |
| GREEN CANYON 201 #002 ST1 (ORRI) | GC201002 | G12210 | 608114037101 |
| GREEN CANYON 201 #001 ST3 (ORRI) | GC20101ST3 | G12210 | 608114043803 |
| GREEN CANYON 238 SS01 (ORRI) | GC238SS01 | G26302 | 608114044304 |
| GREEN CANYON 243 #SS001 (ORRI) | GC243SS01 | G20051 | 608114027608 |
| GREEN CANYON 243 #SS002 (ORRI) | GC243SS02 | G20051 | 608114034000 |
| GREEN CANYON 243 #SS004 (ORRI) | GC243SS04 | G20051 | 608114041600 |
| GREEN CANYON 243 #SS005 (ORRI) | GC243SS05 | G20051 | 608114045701 |
| GREEN CANYON 244 # T001 | GC244001 | G11043 | 608114019700 |
| GREEN CANYON 282 #1ST3 (ORRI) | GC2820103 | G16727 | 608114030804 |
| GREEN CANYON 282 #2ST1 (ORRI) | GC2820201 | G16727 | 608114033701 |
| GREEN CANYON 282 #SS003 (ORRI) | GC282SS003 | G16727 | 608114070701 |
| GREEN CANYON 768 SS02 | GC768SS02 | G21817 | 608114044700 |
| GREEN CANYON 768 SS03 | GC768SS03 | G21817 | 608114050200 |
| GREEN CANYON 768 SS04 | GC768SS04 | G21817 | 608114060900 |
| GREEN CANYON 768 SS01 ST4 | GC768SS104 | G21817 | 608114041705 |
| HIGH ISLAND 031 #L001 SL106158 | SL10615801 | ST-TX 106158 | 427083037900 |
| HIGH ISLAND 031 #L001 SL106159 | SL10615901 | ST-TX 106159 | 427083037800 |
| HIGH ISLAND 031 #L001 SL114921 | SL11492101 | ST-TX 114921 | UNKNOWN |

Exhibit C – Page 8

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND 176 # 2 (ORRI) | HI176002 | G27509 | 427084063900 |
| LAKE COMO UNIT (ORRI) | LAKECOMO | SL-MS 170650 | UNKNOWN |
| MILEY 1-43 (ORRI) | MILEY143 | 17009 | UNKNOWN |
| MISSISSIPPI CANYON 519 #1 BP1 | MC5190101 | G27278 | 608174116201 |
| MISSISSIPPI CANYON 519 #2 BP1 | MC5190201 | G27278 | 608174118401 |
| MISSISSIPPI CANYON 519 #3 | MC51903 | G27278 | 608174141100 |
| MISSISSIPPI CANYON 563 SS01(ORRI) | MC563SS01 | G21176 | 608174130000 |
| MISSISSIPPI CANYON 698 #1 | MC69801 | G28022 | 608174123300 |
| MISSISSIPPI CANYON 782 #1 | MC78201 | G33757 | 608174126600 |
| MISSISSIPPI CANYON 782 #2 | MC78202 | G33757 | 608174128200 |
| MISSISSIPPI CANYON 793 A-4 (ORRI) | MC793A04 | G33177 | 608104015200 |
| MISSISSIPPI CANYON 793 A-8 (ORRI) | MC793A08 | G33177 | 608104015900 |
| MISSISSIPPI CANYON 948 #2 ST2 | MC94802 | G28030 | 608174114902 |
| MISSISSIPPI CANYON 948 #3 | MC94803 | G28030 | 608174118801 |
| MISSISSIPPI CANYON 948 #4 | MC94804 | G28030 | 608174129900 |
| MISSISSIPPI CANYON 992 #1 | MC99201 | G24133 | 608174125200 |
| RF FEDERAL 1 (ORRI) | RFFEDERAL1 | ST-MS 230150 | 230372096200 |
| RF FEDERAL 2 (ORRI) | RFFEDERAL2 | ST-MS 231240 | 2303720983 |
| SAN LEON GAS UNIT 1-ST2 | SANLEONG2 | ST-TX 185633 | 421673134500 |
| SAN LEON GAS UNIT A 2 | SANLEONGA2 | ST-TX 234082 | UNKNOWN |
| SAN LEON GAS UNIT B-1 | SANLEONGB1 | ST-TX 255675 | 421673145400 |
| SAN LEON UNIT SWD 1 | SANLEONU1 | ST-TX 24318 | 421673131900 |
| SOUTH MARSH IS 040 #B001 | SM040B01 | G13607 | 177074083600 |
| SOUTH MARSH IS 040 #B005 (D01) | SM040B05 | G13607 | 177074085700 |
| SOUTH MARSH IS 040 #B007 (D01) | SM040B07 | G13607 | 177074089800 |
| SOUTH MARSH IS 040 #JA001 | SM040J01 | G13607 | 177074063602 |
| SOUTH MARSH IS 040 #JA002 | SM040J02 | G13607 | 177074069100 |
| SOUTH MARSH IS 041 #016 | SM04116 | G01192 | 177074091800 |
| SOUTH MARSH IS 041 #B002 | SM041B02 | G01192 | 177074084901 |
| SOUTH MARSH IS 041 #B003 | SM041B03 | G01192 | 177074085300 |
| SOUTH MARSH IS 041 #B004 | SM041B04 | G01192 | 177074085400 |
| SOUTH MARSH IS 041 #B006 | SM041B06 | G01192 | 177074087600 |
| SHIP SHOAL 079 #A002 | SS079A02 | G15277 | 177114134300 |
| SHIP SHOAL 301 #A001 | SS301A0100 | G10794 | 177124044301 |
| SHIP SHOAL 301 #A002 | SS301A02 | G10794 | 177124053200 |
| SHIP SHOAL 301 #A004 | SS301A0400 | G10794 | 177124063100 |
| SHIP SHOAL 301 #A005 | SS301A0500 | G10794 | 177124068500 |
| SOUTH TIMBALIER 287 #A008 ST2 | ST287A0802 | G24987 | 177164034802 |
| SOUTH TIMBALIER 308 #A001 | ST308A0100 | G21685 | 177164028000 |
| SOUTH TIMBALIER 308 #A002 ST1 | ST308A0101 | G21685 | 177164028701 |

Exhibit C – Page 9

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH TIMBALIER 308 #A003 | ST308A0300 | G21685 | 177164030600 |
| SOUTH TIMBALIER 308 #A004 | ST308A0400 | G21685 | 177164030900 |
| SOUTH TIMBALIER 308 #A005 ST1 | ST308A0501 | G21685 | 177164032901 |
| SOUTH TIMBALIER 308 #A006 BP1 | ST308A0601 | G21685 | 177164033301 |
| SOUTH TIMBALIER 308 #A007 BP1 | ST308A0701 | G21685 | 177164033804 |
| STATE TRACT 086 R1L | STTR86R1L | ST-TX 172916 | 420713213700 |
| STATE TRACT 086 R1U | STTR86R1U | ST-TX 172915 | 420713213700 |
| STATE TRACT 087-10 U (F-12 SD) | STTR8710U | ST-TX 5797 | 420713194600 |
| STATE TRACT 087-11 U (F-8 SD) | STTR8711U | ST-TX 5797 | 42071319761 |
| STATE TRACT 087-12 | STTR8712 | TX Onshore | 420713216700 |
| STATE TRACT 087-8 (F-5 SD) | STTR8708 | TX Onshore | 4207102787 |
| STATE TRACT 088-12B (F-5 SD) | STTR8812B | TX Onshore | 420713029900 |
| STATE TRACT 088-5B-L (F-5 SD) | STTR8805B | ST-TX 5749 | 420710276702 |
| STATE TRACT 088-7B-L (F-8 SD) | STTR8807BL | TX Onshore | 420710276602 |
| STATE TRACT 088-7B-U (F-5 SD) | STTR8807BU | TX Onshore | 420710276601 |
| STATE TRACT 330 2R | STTR3302R | ST-TX 234082 | 421673132400 |
| STATE TRACT 330-01 | STTR33001 | ST-TX 24318 | 421673131400 |
| STATE TRACT 331-05 | STTR33105 | ST-TX 178537 | 4216731320 |
| STATE TRACT 331-06 | STTR33106 | ST-TX 183756 | 4216731342 |
| STATE TRACT 331-08 | STTR33108 | ST-TX 207398 | 421673140500 |
| STATE TRACT 331-09 | STTR33109 | ST-TX 191681 | 4216731304 |
| SUE FULLER #2 | SUEFUL2 | 13911 | 42734663 |
| VAUGHEY 1 | VAUGHEY1 | ST-TX 230140 | 230372095400 |
| VERMILION 078 #A001 | VR078A0100 | G04421 | 177054077800 |
| VERMILION 078 #A002 ST2 | VR078A0202 | G04421 | 177054047903 |
| VERMILION 078 #A003 ST2 | VR078A0302 | G04421 | 177054102402 |
| VERMILION 229 #A001 | VR229A01 | G27070 | 177054127100 |
| VERMILION 362 #005 | VR36205 | G10687 | 177064073900 |
| VERMILION 362 #A003 | VR362A0300 | G10687 | 177064070400 |
| VERMILION 362 #A007 | VR362A07 | G10687 | 177064089501 |
| VERMILION 362 #B001 | VR362B0100 | G10687 | 177064072800 |
| VERMILION 362 #B002 | VR362B0200 | G10687 | 177064073600 |
| VERMILION 362 #B005 | VR362B0500 | G10687 | 177064087901 |
| VERMILION 363 #B003 | VR363B0301 | G09522 | 177064074101 |
| VERMILION 371 #A001 | VR371A0100 | G09524 | 177064068100 |
| VERMILION 371 #A002 | VR371A0200 | G09524 | 177064068800 |
| VERMILION 371 #A004 | VR371A0400 | G09524 | 177064070800 |
| VERMILION 371 #A005 | VR371A0500 | G09524 | 177064072500 |
| VERMILION 371 #A006 | VR371A0600 | G09524 | 177064089101 |
| VERMILION 371 #B004 | VR371B0400 | G09524 | 177064074801 |

Exhibit C – Page 10

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST YELLOW CREEK UNIT (ORRI) | WYELLOWCRE | SL-MS 23017 | UNKNOWN |

[There are no depth restrictions or limitations applicable to any Acquired Interests set forth in this Exhibit.]

[End of Exhibit C]

Exhibit C – Page 11

WEIL:\97869848\10\45327.0007

# Exhibit D
## Platforms and Facilities

## Part 1. Co-Owned Platforms and Facilities

### Platforms

| Asset Name | FWE Acct. Code | Complex ID | Lease Number | Area/Block | WI |
|---|---|---|---|---|---|
| GRAND ISLE 039 P/F-Q | GI39QPLT | 24255 | 00127 | GI039 | 25.0% |
| GRAND ISLE 040 P/F-G | GI40GPLT | 20043 | 00128 | GI040 | 25.0% |
| GRAND ISLE 040 P/F-M | GI40MPLT | 24214 | 00128 | GI040 | 25.0% |
| GRAND ISLE 041 P/F-D | GI041PFD | 20020 | 00129 | GI041 | 25.0% |
| GRAND ISLE 041 P/F-B | GI41BPLT | 20575 | 00129 | GI041 | 25.0% |
| GRAND ISLE 041 P/F-E | GI41EPLT | 20032 | 00130 | GI041 | 25.0% |
| GRAND ISLE 041 P/F-H | GI41HPLT | 23557 | 00130 | GI041 | 25.0% |
| GRAND ISLE 041 P/F-I | GI41ICAS | 766 | 00132 | GI041 | 25.0% |
| GRAND ISLE 042 P/F-C | GI42CPLT | 20018 | 00131 | GI042 | 25.0% |
| GRAND ISLE 042 P/F-F | GI42FPLT | 21859 | 00131 | GI042 | 25.0% |
| GRAND ISLE 043 P/F-AC-CMP | GI043PFAC | 20021 | 00175 | GI043 | 25.0% |
| GRAND ISLE 043 P/F-AP-QRT | GI43APPLT | 20221 | 00175 | GI043 | 25.0% |
| GRAND ISLE 043 P/F-AQ-QRT | GI43AQPLT | 20021 | 00175 | GI043 | 25.0% |
| GRAND ISLE 043 P/F-AR-RSR | GI43ARPLT | 20021 | 00175 | GI043 | 25.0% |
| GRAND ISLE 043 P/F-AS-SEP | GI43ASPLT | 20021 | 00175 | GI043 | 25.0% |
| GRAND ISLE 047 P/F-A | GI47APLT | 20046 | 00133 | GI047 | 25.0% |
| GRAND ISLE 047 P/F-AP | GI47APPLT | 20046 | 00133 | GI047 | 25.0% |
| GRAND ISLE 047 P/F-AQ-QTRS | GI47AQPLT | 20046 | 00133 | GI047 | 25.0% |
| GRAND ISLE 047 P/F-AX (BRACE) | GI47AXPLT | 20046 | 00133 | GI047 | 25.0% |
| GRAND ISLE 047 P/F-L | GI47LPLT | 22847 | 00133 | GI047 | 25.0% |
| GRAND ISLE 047 P/F-O | GI47OPLT | 2006 | 00133 | GI047 | 25.0% |
| GRAND ISLE 048 P/F-E | GI48EPLT | 20194 | 00134 | GI048 | 25.0% |
| GRAND ISLE 048 P/F-J | GI48JPLT | 20673 | 00134 | GI048 | 25.0% |
| GRAND ISLE 048 P/F-P | GI48PPLT | 22891 | 00134 | GI048 | 25.0% |
| GRAND ISLE 116 P/F-A | GI116APLT | 686 | G13944 | GI116 | 50.0% |
| SOUTH MARSH IS 149 P/F-C | SM149CPLT | 1027 | G02592 | SM149 | 50.0% |
| SOUTH TIMBALIER 053 P/F-4 | ST053PF4 | 22768 | G04000 | ST053 | 50.0% |
| SOUTH TIMBALIER 053 P/F-6 | ST053PF6 | 24184 | G04000 | ST053 | 50.0% |
| SOUTH TIMBALIER 053 P/F-A | ST053PFA | 22421 | G04000 | ST053 | 50.0% |
| SOUTH TIMBALIER 053 P/F-A-AUX | ST053PFAAX | 22421 | G04000 | ST053 | 50.0% |
| SOUTH TIMBALIER 053 P/F-C (5) | ST053PFC5 | 23534 | G04000 | ST053 | 50.0% |
| SOUTH TIMBALIER 053 P/F-I | ST053PFI | 22512 | G04000 | ST053 | 50.0% |
| WEST DELTA 068 P/F-U | WD68UPLT | 29935 | 00180 | WD068 | 25.0% |
| WEST DELTA 070 P/F-D | WD070PFD | 20015 | 00182 | WD070 | 25.0% |
| WEST DELTA 070 P/F-I | WD070PFI | 21805 | 00182 | WD070 | 25.0% |
| WEST DELTA 070 P/F-L | WD070PFL | 21805 | 00182 | WD070 | 25.0% |
| WEST DELTA 070 P/F-FF | WD070PFFF | 2035 | 00182 | WD070 | 25.0% |
| WEST DELTA 071 P/F-E | WD71EPLT | 20047 | 00838 | WD071 | 25.0% |
| WEST DELTA 071 P/F-O | WD071OPLT | 20510 | 00838 | WD071 | 25.0% |
| WEST DELTA 094 P/F-V | WD094PFV | 20036 | 00839 | WD094 | 25.0% |

WEIL:\97869848\10\45327.0007

| Asset Name | FWE Acct. Code | Complex ID | Lease Number | Area/Block | WI |
|---|---|---|---|---|---|
| WEST DELTA 095 P/F-S | WD095PFS | 21270 | G01497 | WD095 | 25.0% |
| WEST DELTA 095 P/F-X | WD095PFX | 21270 | G01497 | WD095 | 25.0% |
| **Asset Name** | **FWE Acct. Code** | **Complex ID** | **RUE Number** | **Area/Block** | **WI** |
| [SOUTH MARSH ISLAND 132 P/F B | | 21982 | G30329 | SM 132 | 50%] |
| SOUTH TIMBALIER 68 CAISS. #1 | ST681CAS | 24108 | G30267 | ST 68 | 20.334% |

## Facilities

| Name | State | Parish | Seller | Legal Description | Associated Assets |
|---|---|---|---|---|---|
| GRAND ISLE TANK BAT | Louisiana | Jefferson | FEO | PART OF ORIG LOT 8 SEC 32 T21S R25E CONTAINS 0.5286 ACRES as further described in COB 1054/Pg 851, COB 2913/Pg 442, COB 3036/Pg 728, COB 3046/Pg 80, COB 3082/Pg 294, COB 3171/Pg 69 and COB 3171/Pg 70 of the conveyance records of Jefferson Parish, Louisiana | the Co-Owned Leases in the Grand Isle unit and in the Grand Isle/West Delta unit |

## Part 2. Other Platforms and Facilities

### Platforms

| Asset Name | FWE Acct. Code | Complex ID | Lease Number | Area/Block | WI |
|---|---|---|---|---|---|
| BRETON SOUND 025 P/F-A | BS025CAS | 2532 | G31442 | BS025 | 25.0% |
| BRETON SOUND 052 P/F-A | BS052PFA | | SL-LA 17860 | BS052 | 50.0% |
| BRETON SOUND 053 P/F-CF | BS053PFCF | | Onshore | BS053 | 50.0% |
| GREEN CANYON 065 P/F-A | GC065PFA | 23552 | G05889 | GC065 | 49.0% |
| HIGH ISLAND 030 P/F-L | HI030PFL | | SL-TX 11408 | HI030 | 100.0% |
| SHIP SHOAL 079 P/F-A | SS79PFA | 913 | G15277 | SS079 | 100.0% |
| SHIP SHOAL 301 P/F-A | SS301PFA | 32027 | G10794 | SS301 | 100.0% |
| SOUTH TIMBALIER 308 P/F-A | ST308APLT | 1500 | G21685 | ST308 | 100.0% |
| VERMILION 078 P/F-A | VR78APLT | 23674 | G04421 | VR078 | 100.0% |
| VERMILION 229 P/F-A | VR229PFA | 2261 | G27070 | VR229 | 50.0% |
| VERMILION 362 P/F-B | VR362PFB | 27064 | G10687 | VR362 | 100.0% |
| VERMILION 371 P/F-A | VR371PFA | 27021 | G09524 | VR371 | 100.0% |
| **Asset Name** | **FWE Acct. Code** | **Complex ID** | **RUE Number** | **Area/Block** | **WI** |
| SOUTH MARSH ISLAND 40 P/F B | SM040PSB | 1266 | G13607 | SM 40 | 100% |
| SOUTH MARSH ISLAND 40 P/F JA | SM040PFJA | 27017 | G13607 | SM 40 | 100% |
| SHIP SHOAL 80 P/F A | SS080PFA | 23548 | G30201 | SM 40 | 100% |

## **Facilities**

| Name | State | County/Parish | Seller | Legal Description | Associated Assets |
|------|-------|---------------|--------|-------------------|-------------------|
| FIELDWOOD NORTH CARENCRO | Louisiana | Lafayette | Fieldwood | TR 2A-1 SEC 71 T8S R4E (2.508 AC)(236.95X461) PART TR 2A SEC 71 T8S R4E (20X647.77X203.61X31.81X236.08X461), all as further described in that Act of Cash Sale recorded at File No. 2013-42702 of the conveyance records of Lafayette Parish, Louisiana | Warehouse for P&A |
| EAGLE POINT | Texas | Galveston | Fieldwood Onshore | | |
| SAN LEON PROD FACILITY | Texas | Galveston | Fieldwood Onshore | Blocks 138/139 out of the San Leon Townsite & Subdivision out of the Amos Edwards Survey A-10 | ST-TX 24318 ST-TX 185633 ST-TX 234082 ST-TX 255675 |

[End of Exhibit D]

**Exhibit D-1**
**Inventory**

[Attached]

WEIL:\97869848\10\45327.0007

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 54401 | | WH/B42/S1 | LINER: PWR CYL | | EA | | 1 | 3,975.83 | 100.0% | 3,975.83 |
| North Warehouse | Fieldwood | 54402 | | WH/B42/FLR | PSTN/ROD ASSY: 10-1/2", GMWA, | | EA | | 1 | 15,303.69 | 100.0% | 15,303.69 |
| North Warehouse | Fieldwood | 54403 | | WH/B42/FLR | PSTN/ROD ASSY: 28", GMWA, ROD | | EA | | 1 | 21,498.05 | 100.0% | 21,498.05 |
| North Warehouse | Fieldwood | 54406 | | WH/B42/S1 | PSTN: 18", PISTON, GMVC 1ST STGE | | EA | | 1 | 19,676.18 | 100.0% | 19,676.18 |
| North Warehouse | Fieldwood | 54407 | | B3/B3/S2 | LINER: 2ND STGE CYL | | EA | | 1 | 2,542.05 | 100.0% | 2,542.05 |
| North Warehouse | Fieldwood | 54408 | | WH/B41/S2 | LINER: GMVC 1ST STGE | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 54409 | | WH/B37/FL | HD: 2ND STGE CRNKEND | | EA | | 1 | 4,372.48 | 100.0% | 4,372.48 |
| North Warehouse | Fieldwood | 54411 | | WH/SE Wall/FLR | CRNKSHFT: GMVA/GMVC-12 | | EA | | 1 | 82,650.64 | 100.0% | 82,650.64 |
| North Warehouse | Fieldwood | 54412 | | WH/SE Wall/FLR | CRNKSHFT: GMVA/GMVC-12 | | EA | | 2 | 81,082.47 | 100.0% | 81,082.47 |
| North Warehouse | Fieldwood | 54419 | | B3/B3/S2 | PMP: GMVA LUBE OIL | | EA | | 1 | 5,829.98 | 100.0% | 5,829.98 |
| North Warehouse | Fieldwood | 54420 | | WH/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 6,095.65 | 100.0% | 6,095.65 |
| North Warehouse | Fieldwood | 54421 | | WH/B41/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 6,095.65 | 100.0% | 6,095.65 |
| North Warehouse | Fieldwood | 54422 | | WH/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 7,703.92 | 100.0% | 7,703.92 |
| North Warehouse | Fieldwood | 54445 | | B3/B3/S2 | GEAR: GMVC BLOWER DRV | | EA | | 1 | 3,352.24 | 100.0% | 3,352.24 |
| North Warehouse | Fieldwood | 54447 | | WH/B42/FLR | PSTN/ROD ASSY: 18", 1ST STGE | | EA | | 1 | 14,956.39 | 100.0% | 14,956.39 |
| North Warehouse | Fieldwood | 54448 | | WH/B42/S1 | LINER: 18", 1ST STGE COMPRSSR | | EA | | 1 | 1,967.62 | 100.0% | 1,967.62 |
| North Warehouse | Fieldwood | 54449 | | WH/B42/S1 | LINER: 15", 2ND STGE COMPRSSR | | EA | | 1 | 1,785.43 | 100.0% | 1,785.43 |
| North Warehouse | Fieldwood | 54450 | | WH/B41/S2 | LINER: 9-3/4", 3RD STGE COMPRSSR | | EA | | 1 | 1,909.90 | 100.0% | 1,909.90 |
| North Warehouse | Fieldwood | 54452 | | B3/B1/S1 | GEAR: GMV3-FB, PARTCO BLOWER W/HUB | | EA | | 1 | 16,032.44 | 100.0% | 16,032.44 |
| North Warehouse | Fieldwood | 54456 | | WH/B42/FLR | PSTN/ROD ASSY: 9-3/4", 3RD STGE | | EA | | 1 | 2,399.73 | 100.0% | 2,399.73 |
| North Warehouse | Fieldwood | 54457 | | WH/B43/S1 | PSTN/ROD ASSY: 9-5/8", GMWA, | | EA | | 1 | 16,032.44 | 100.0% | 16,032.44 |
| North Warehouse | Fieldwood | 54458 | | WH/B43/FLR | PSTN/ROD ASSY: 17-1/4", GMVA-8 1ST S TGE | | EA | | 1 | 18,636.17 | 100.0% | 18,636.17 |
| North Warehouse | Fieldwood | 54460 | | B3/B2/FLR | ROD: ALL GMV PWR PISTON | | EA | | 2 | 1,821.87 | 100.0% | 1,821.87 |
| North Warehouse | Fieldwood | 54468 | | B3/B2/S3 | PMP: GMVA H2O W/GSKTS | | EA | | 1 | 13,481.83 | 100.0% | 13,481.83 |
| North Warehouse | Fieldwood | 54469 | | WH/B41/FLR | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 13,051.81 | 100.0% | 13,051.81 |
| North Warehouse | Fieldwood | 54480 | | WH/B43/FLR | PSTN/ ROD ASSY: 16-1/4", 2ND STGE, | | EA | | 1 | 18,408.45 | 100.0% | 18,408.45 |
| North Warehouse | Fieldwood | 54481 | | Bay3/N Wall/FLR | PSTN/ROD ASSY: GMWE PWR,FITS GMWE-12 | | EA | | 1 | 3,223.36 | 100.0% | 3,223.36 |
| North Warehouse | Fieldwood | 54486 | | WH/B43/FLR | PSTN/ROD ASSY: GMWA | | EA | | 1 | 21,945.24 | 100.0% | 21,945.24 |
| North Warehouse | Fieldwood | 56001 | | WH/B41/S1 | BEARING: TLA COMPRSSR RD, BEARING | | EA | | 5 | 725.83 | 100.0% | 725.83 |
| North Warehouse | Fieldwood | 56002 | | WH/B41/S1 | BEARING: TLA MAIN | | EA | | 7 | 635.76 | 100.0% | 635.76 |

1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 56633 | | B3/B5BS3 | KT: RPR CYL, TLA PWR | | EA | | 5 | 725.10 | 100.0% | 725.10 |
| North Warehouse | Fieldwood | 56644 | | B3/B4/S2 | SPRCKT: TLA CRNKSHFT | | EA | | 1 | 6,085.04 | 100.0% | 6,085.04 |
| North Warehouse | Fieldwood | 56645 | | B3/B4/S3 | SPRCKT: TLA | | EA | | 1 | 3,377.74 | 100.0% | 3,377.74 |
| North Warehouse | Fieldwood | 56646 | | B3/B3/S2 | SPRCKT: HYD PUMP & DRV | | EA | | 1 | 2,135.23 | 100.0% | 2,135.23 |
| North Warehouse | Fieldwood | 56648 | | WH/B41/S1 | LINE: CYL, TLA 2ND STG | | EA | | 1 | 7,817.91 | 100.0% | 7,817.91 |
| North Warehouse | Fieldwood | 56653 | | WH/B43/S2,TOP IN BACK | PSTN: TLA 2ND STGE | | EA | | 1 | 20,689.57 | 100.0% | 20,689.57 |
| North Warehouse | Fieldwood | 56654 | | WH/B44/S1 | PSTN: TLA 1ST STGE | | EA | | 1 | 22,170.79 | 100.0% | 22,170.79 |
| North Warehouse | Fieldwood | 56657 | | B3/B4/FLR | PMP: SHFT, TLA IDLER | | EA | | 1 | 1,136.85 | 100.0% | 1,136.85 |
| North Warehouse | Fieldwood | 56658 | | B3/B4/S3 | PMP: SHFT, TLA DRIVE | | EA | | 1 | 3,188.27 | 100.0% | 3,188.27 |
| North Warehouse | Fieldwood | 56659 | | B3/B4/S3 | PMP: SHFT, TLA WATER PUMP | | EA | | 1 | 1,789.07 | 100.0% | 1,789.07 |
| North Warehouse | Fieldwood | 56663 | | WH/B41/S2 | SHOE: TLA TPE XHD SLIPPER | | EA | | 1 | 2,514.18 | 100.0% | 2,514.18 |
| North Warehouse | Fieldwood | 56695 | | B3/B4/FLR | NUT: TLA CONNECTING ROD | | EA | | 4 | 397.17 | 100.0% | 397.17 |
| North Warehouse | Fieldwood | 56744 | | B3/B4/FLR | GEAR: TLA BULL TIMING CNTRL | | EA | | 1 | 1,898.39 | 100.0% | 1,898.39 |
| North Warehouse | Fieldwood | 56746 | | B3/B4/S3 | GEAR: TLA OIL PUMP | | EA | | 2 | 3,800.42 | 100.0% | 3,800.42 |
| North Warehouse | Fieldwood | 56771 | | B3/B4/FLR | LABYRINTH: TLA TURBINE | | EA | | 1 | 1,745.35 | 100.0% | 1,745.35 |
| North Warehouse | Fieldwood | 56772 | | B3/B4/FLR | LABYRINTH: TLA | | EA | | 2 | 626.73 | 100.0% | 626.73 |
| North Warehouse | Fieldwood | 56779 | | B3/B4/FLR | CARRIER: TLA BULL GEAR | | EA | | 3 | 1,286.24 | 100.0% | 1,286.24 |
| North Warehouse | Fieldwood | 56780 | | B3/B4/FLR | CARRIER: TLA IDLER GEAR | | EA | | 3 | 1,187.86 | 100.0% | 1,187.86 |
| North Warehouse | Fieldwood | 56782 | | B3/B4/FLR | LINKAGE: TLA LWR/CNTRL | | EA | | 2 | 1,435.63 | 100.0% | 1,435.63 |
| North Warehouse | Fieldwood | 56788 | | B3/B4/FLR | SHFT COMPRSSR: TLA TIMER DR | | EA | | 2 | 739.68 | 100.0% | 739.68 |
| North Warehouse | Fieldwood | 56799 | | B3/B4/S3 | VLV: TLA FUEL | | EA | | 6 | 2,288.27 | 100.0% | 2,288.27 |
| North Warehouse | Fieldwood | 56800 | | B3/B5/S3 | SPRCKT: TLA CRNKSHFT | | EA | | 1 | 6,512.01 | 100.0% | 6,512.01 |
| North Warehouse | Fieldwood | 56802 | | WH/B44/S2 | PSTN/ROD ASSY: TLA MATL NO DRAW TYP E | | EA | | 1 | 9,300.03 | 100.0% | 9,300.03 |
| North Warehouse | Fieldwood | 56806 | | B3/B6/S1 | ROD: TLA W/LCKNG STDDS & PN SZ W/RD CAP | | EA | | 1 | 24,799.27 | 100.0% | 24,799.27 |
| North Warehouse | Fieldwood | 56808 | | B3/B3/S2 | WHEEL: TLA TRBN | | EA | | 1 | 23,760.81 | 100.0% | 23,760.81 |
| North Warehouse | Fieldwood | 56809 | | WH/B30/S1 | SCRN ASSY: TLA DWG | | EA | | 1 | 3,917.02 | 100.0% | 3,917.02 |
| North Warehouse | Fieldwood | 56810 | | B3/B4/S3 | JT: EXPNSN, TLA | | EA | | 2 | 1,435.63 | 100.0% | 1,435.63 |
| North Warehouse | Fieldwood | 56811 | | B3/B1/S2 | JT: EXPNSN, TLA EXHAUST | | EA | | 1 | 980.17 | 100.0% | 980.17 |
| North Warehouse | Fieldwood | 56815 | | B3/B10/S2 | INTCLR ASSY: TLA SCAV AIR | | EA | | 6 | 4,339.69 | 100.0% | 4,339.69 |
| North Warehouse | Fieldwood | 56816 | | B3/B4/FLR | NUT: TLA ROD ALL STGS | | EA | | 1 | 1,012.96 | 100.0% | 1,012.96 |
| North Warehouse | Fieldwood | 56817 | | B3/B4/S3 | RING: TLA TURB NZZLE | | EA | | 2 | 8,435.25 | 100.0% | 8,435.25 |
| North Warehouse | Fieldwood | 58585 | | WH/SE Wall/FLR | CRNKSHFT | | EA | | 1 | 15,303.69 | 100.0% | 15,303.69 |
| North Warehouse | Fieldwood | 59286 | | WH/B43/S1 | PSTN/ROD ASSY: 9-3/4", GMV, W/ 3" ROD | | EA | | 1 | 12,227.14 | 100.0% | 12,227.14 |
| North Warehouse | Fieldwood | 71926 | | Bay3/N Wall/FLR | STDDS: STEP, CYL. W/ NUTS 4 SUCT | | EA | | 24 | 72.87 | 100.0% | 72.87 |
| North Warehouse | Fieldwood | 71936 | | B2/B1/S2 | CYL: HYD, I/BRD, UNRPRD | | EA | | 1 | 1,020.25 | 100.0% | 1,020.25 |
| North Warehouse | Fieldwood | 71937 | | B2/B1/S2 | CYL, HYD, I/BRD, UNRPRD | | EA | | 1 | 1,020.25 | 100.0% | 1,020.25 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 71939 | | B2/B4/IS | CYL: COMPRSSR, 8", W/ ALL HD STDDS & NTS | | EA | | 1 | 6,558.73 | 100.0% | 6,558.73 |
| North Warehouse | Fieldwood | 71948 | | B2/B5/S1 | VLV CHR: UNRPR'D | | EA | | 8 | 153.04 | 100.0% | 153.04 |
| North Warehouse | Fieldwood | 71952 | | B2/B1/S2 | CYL: CMPRSSR, 8", W/ IB HEAD & P. GL ND | | EA | | 1 | 3,497.99 | 100.0% | 3,497.99 |
| North Warehouse | Fieldwood | 71955 | | B2/B4/S1 | PSTN: COMP, C.I., W/2 STEEL DONUTS | | EA | | 1 | 1,311.75 | 100.0% | 1,311.75 |
| North Warehouse | Fieldwood | 71971 | | B2/B1/S2 | PSTN/ ROD ASSY: X 2", NO RINGS, TUNGSTEN | | EA | | 1 | 1,289.88 | 100.0% | 1,289.88 |
| North Warehouse | Fieldwood | 71975 | | B2/B1/S2 | CRSSHD: GUIDE, WBF-74, BORE | | EA | | 1 | 3,279.36 | 100.0% | 3,279.36 |
| North Warehouse | Fieldwood | 71977 | | B2/B1/S2 | DIST PC: WBF-74, NEW OEM 14" CYL | | EA | | 1 | 2,040.49 | 100.0% | 2,040.49 |
| North Warehouse | Fieldwood | 71980 | | WH/B29/S1 | FAN ASSY: 7 BLADE 132" DIA AIR-X-CHANGER | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 71983 | | WH/B29/S1 | FAN BLDES: FIBERGLASS 62" L X 11-1/1 4" W | | EA | | 6 | 364.37 | 100.0% | 364.37 |
| North Warehouse | Fieldwood | 72001 | | WH/B8/S2 | PMP ASSY: LUBE, MVS, W/ ATMOS IND. & | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 72002 | | WH/B8/S2 | PMP ASSY: LUBE, MVS, W/ ATMOS IND. & | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 72013 | | WH/B8/FLR | HD: CYL, PWR, RECOND | | EA | | 2 | 1,311.75 | 100.0% | 1,311.75 |
| North Warehouse | Fieldwood | 72025 | | WH/B38/S1 | MANIFOLD: INTAKE | | EA | | 2 | 728.75 | 100.0% | 728.75 |
| North Warehouse | Fieldwood | 72027 | | WH/B36/S1 | MANIFOLD: EXHST, P9390, SECTIONS | | EA | | 3 | 655.87 | 100.0% | 655.87 |
| North Warehouse | Fieldwood | 72037 | | WH/B6/S2 | ROD: CONN, P9390, US'D | | EA | | 16 | 510.12 | 100.0% | 510.12 |
| North Warehouse | Fieldwood | 81982 | | B3/B2/FLR | ROD: ARTIC'LD, GMVC | | EA | | 1 | 1,366.40 | 100.0% | 1,366.40 |
| North Warehouse | Fieldwood | 81984 | | B3/B4/S3 | SPRCKT: TLA SGL SPLIT | | EA | | 1 | 6,635.24 | 100.0% | 6,635.24 |
| North Warehouse | Fieldwood | 81985 | | B3/B4/FLR | SPRCKT: TLA IDLER W/PUMP | | EA | | 1 | 1,923.89 | 100.0% | 1,923.89 |
| North Warehouse | Fieldwood | 81987 | | WH/B41/S2 | SHOE: GMVC XHD | | EA | | 1 | 1,689.76 | 100.0% | 1,689.76 |
| North Warehouse | Fieldwood | 89087 | | WH/B43/S1 | PSTN/ROD ASSY: SZ 28" US'D C7120-3A 3172 | | EA | | 1 | 9,838.09 | 100.0% | 9,838.09 |
| North Warehouse | Fieldwood | 96073 | | WH/B8/S2 | PMP,HYD: 5.2gpm | | EA | | 1 | 9,793.64 | 100.0% | 9,793.64 |
| North Warehouse | Fieldwood | 96074 | | WH/B8/S2 | PMP,HYD: 1.9gpm | | EA | | 1 | 9,793.64 | 100.0% | 9,793.64 |
| North Warehouse | Fieldwood | 112605 | | B3/B8/FLR | KT: RPR VRA | | EA | | 3 | 852.63 | 100.0% | 852.63 |
| North Warehouse | Fieldwood | 112606 | | B3/B10/S1 | VLV | | EA | | 3 | 1,093.12 | 100.0% | 1,093.12 |
| North Warehouse | Fieldwood | 112608 | | B3/B10/S1 | VLV | | EA | | 6 | 655.87 | 100.0% | 655.87 |
| North Warehouse | Fieldwood | 197167 | | WH/B25/S2 | TRBCHRGR: VTC254 BBC W/MNTNG GSKT | | EA | | 1 | 33,066.91 | 100.0% | 33,066.91 |
| North Warehouse | Fieldwood | 200368 | | WH/B30/FLR | ROTOR ASSY, DEEPWELL PUMP | | EA | | 1 | 7,651.85 | 100.0% | 7,651.85 |
| North Warehouse | Fieldwood | 200371 | | B2/B10/FLR | CYL: WRTHGTN SIZE 9-1/4" | | EA | | 1 | 10,931.21 | 100.0% | 10,931.21 |
| North Warehouse | Fieldwood | 200372 | | B2/B11/FLR | CYL: WRTHGTN, SIZE 7" | | EA | | 1 | 8,744.97 | 100.0% | 8,744.97 |
| North Warehouse | Fieldwood | 200379 | | B2/B11/FLR | CYL: WRTHGTN SIZE 7.007 | | EA | | 1 | 9,838.09 | 100.0% | 9,838.09 |
| North Warehouse | Fieldwood | 200380 | | WH/B5/S2 | IMPELLER: TURBINE | | EA | | 1 | 16,560.78 | 100.0% | 16,560.78 |
| North Warehouse | Fieldwood | 200381 | | WH/B5/S2 | IMPELLER: 'C30' B STG, SOLAR | | EA | | 1 | 17,289.53 | 100.0% | 17,289.53 |
| North Warehouse | Fieldwood | 200387 | | WH/B11/S1 | COMPR: AIR | | EA | | 1 | 6,194.35 | 100.0% | 6,194.35 |
| North Warehouse | Fieldwood | 200390 | | WH/B27/S2 | GEAR: BX TYPE, 206HS, RAT 1.262-1 | | EA | | 1 | 29,149.89 | 100.0% | 29,149.89 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 200400 | | WH/B5/S2 | BEARING ASSY: C30 SLR GC DMPR SUCT | | EA | | 1 | 21,060.80 | 100.0% | 21,060.80 |
| North Warehouse | Fieldwood | 200401 | | WH/B5/S2 | BEARING ASSY: C30 DIS SLR GC TILT PAD | | EA | | 1 | 18,346.21 | 100.0% | 18,346.21 |
| North Warehouse | Fieldwood | 200414 | | B2/B7/S1 | CYL: 6, WRTHGTN COMPRSSR | | EA | | 1 | 8,744.97 | 100.0% | 8,744.97 |
| North Warehouse | Fieldwood | 200421 | | B2/B9/FLR | CYL: 15", COMPRSSR, NO STDDS F/VLV CAPS | | EA | | 1 | 14,574.95 | 100.0% | 14,574.95 |
| North Warehouse | Fieldwood | 200422 | | B2/B5/S1 | CYL: 9", COMPRSSR #10674-E I/R -RDS | | EA | | 1 | 10,931.21 | 100.0% | 10,931.21 |
| North Warehouse | Fieldwood | 200423 | | B2/B11/S1 | CYL: 11-1/4", COMPRSSR W/ 11.287 BORE | | EA | | 1 | 13,117.45 | 100.0% | 13,117.45 |
| North Warehouse | Fieldwood | 200424 | | B2/B5/S2 | CYL: 5", COMPRSSR I/R-RDS | | EA | | 1 | 9,327.97 | 100.0% | 9,327.97 |
| North Warehouse | Fieldwood | 200426 | | WH/B20/S1 | TURBINE | | EA | | 1 | 3,643.74 | 100.0% | 3,643.74 |
| North Warehouse | Fieldwood | 202849 | | YD/R4 | HEAT EXCHNGR | | EA | | 1 | 22,226.79 | 100.0% | 22,226.79 |
| North Warehouse | Fieldwood | 202850 | | WH/B38/FLR | PMP: CMSD 4X6X10.5 | | EA | | 1 | 65,000.00 | 100.0% | 65,000.00 |
| North Warehouse | Fieldwood | 202854 | | Bay 6 | COMPR: PKG | | EA | | 1 | 22,117.48 | 100.0% | 22,117.48 |
| North Warehouse | Fieldwood | 202876 | | YD/R4 | ENG: NG 399 | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 227188 | | B3/B6/S1 | CYL: CPR GMWA-9-1A PWR CYLINDERS | | EA | | 1 | 7,651.85 | 100.0% | 7,651.85 |
| North Warehouse | Fieldwood | 228011 | | Bay 2 | PSTN/ROD ASSY: 29-1/2", CPR F/ V250 COM | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 228012 | | B2/B2/S1 | PSTN ROD: I/R RDS 2.125 IN CRBDE CTD | | EA | | 1 | 2,379.02 | 100.0% | 2,379.02 |
| North Warehouse | Fieldwood | 229324 | | WH/B44/S1 | PSTN/ROD ASSY: TLA COMPRSSR | | EA | | 1 | 4,733.25 | 100.0% | 4,733.25 |
| North Warehouse | Fieldwood | 233282 | | Linear Controls | ENG:NG,235hp,1200rpm | | EA | | 1 | 26,909.80 | 100.0% | 26,909.80 |
| North Warehouse | Fieldwood | 233305 | | B1/Floor | ENG:DIESEL,318hp,8,210 0rpm | | EA | | 1 | 13,481.83 | 100.0% | 13,481.83 |
| North Warehouse | Fieldwood | 233453 | | Yard/Row 3 | GEN:DIESEL,30kW,208/48 0V,AC,1800rpm, 3ph | | EA | | 1 | 9,291.53 | 100.0% | 9,291.53 |
| North Warehouse | Fieldwood | 241167 | | B2/B6/FLR | CYL: 28", VRA CLRK COMPRSSR | | EA | | 1 | 3,079.21 | 100.0% | 3,079.21 |
| North Warehouse | Fieldwood | 241168 | | B2/B7/FLR | CYL: 17", VRA CLRK COMPRSSR | | EA | | 1 | 2,309.41 | 100.0% | 2,309.41 |
| North Warehouse | Fieldwood | 241169 | | B2/B2/FLR | CYL: 9, VRA CLRK COMPRSSR | | EA | | 1 | 1,539.61 | 100.0% | 1,539.61 |
| North Warehouse | Fieldwood | 241173 | | WH/B44/FL | PSTN/ROD ASSY: VRA CLRK COMPRSSR | | EA | | 1 | 1,539.61 | 100.0% | 1,539.61 |
| North Warehouse | Fieldwood | 241179 | | WH/B1/Floor | HD: VRA CLRK O/BRD UNLDR | | EA | | 1 | 3,849.02 | 100.0% | 3,849.02 |
| North Warehouse | Fieldwood | 241181 | | B10K/B36/S1 | VLV CHR: VRA CLRK VLV CHRS F/13" | | EA | | 12 | 173.21 | 100.0% | 173.21 |
| North Warehouse | Fieldwood | 241182 | | B3/B10,11,12/FLR | PSTN: VRA CLRK PWR | | EA | | 6 | 2,169.33 | 100.0% | 2,169.33 |
| North Warehouse | Fieldwood | 241185 | | B3/B9/S1 | ROD: VRA CLRK ART CONN | | EA | | 1 | 11,708.19 | 100.0% | 11,708.19 |
| North Warehouse | Fieldwood | 241189 | | B3/B10/S3 | PIN: WRIST, VRA CLRK PWR PISTON | | EA | | 4 | 1,255.26 | 100.0% | 1,255.26 |
| North Warehouse | Fieldwood | 241191 | | B3/B8/S1 | TENSIONER: VRA CLRK CHAIN | | EA | | 2 | 1,196.78 | 100.0% | 1,196.78 |
| North Warehouse | Fieldwood | 241202 | | B3/B2/S2 | GVRNR: GMVC-12 | | EA | | 1 | 8,409.66 | 100.0% | 8,409.66 |
| North Warehouse | Fieldwood | 241203 | | B3/B1/FLR | JUMPER: H2O, GMVC-12 HD TO CYL | | EA | | 12 | 148.50 | 100.0% | 148.50 |
| North Warehouse | Fieldwood | 241205 | | B3/B3/S2 | JUMPER: H2O, GMVC-12 CYL TO RAIL | | EA | | 6 | 111.47 | 100.0% | 111.47 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 241216 | | B3/B3/S3 | EXHST: ELBOW, GMVC-12, GMVA-34-2C | | EA | | 4 | 857.27 | 100.0% | 857.27 |
| North Warehouse | Fieldwood | 251608 | | B2/Yard | ENG | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 252667 | | B2/B5/S2 | CYL: 6", WHT SUPR COMPRSSR CMPLT | | EA | | 1 | 4,862.67 | 100.0% | 4,862.67 |
| North Warehouse | Fieldwood | 323171 | | WH/B41/S1 | PSTN: RING FOR 23.00" PISTON | | EA | | 2 | 238.14 | 100.0% | 238.14 |
| North Warehouse | Fieldwood | 323172 | | WH/B41/S1 | PSTN: RING FOR 16.50" PISTON | | EA | | 2 | 223.27 | 100.0% | 223.27 |
| North Warehouse | Fieldwood | 323173 | | WH/B41/S1 | PSTN: RING FOR 10.50" PISTON | | EA | | 3 | 139.85 | 100.0% | 139.85 |
| North Warehouse | Fieldwood | 326861 | | WH/B41/FLR | PSTN: 10.50", PART #579-062-001 | | EA | | 1 | 6,451.03 | 100.0% | 6,451.03 |
| North Warehouse | Fieldwood | 326862 | | WH/B44/FLR | PSTN: ROD FOR 10.50", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 326863 | | WH/B44/FLR | PSTN: ROD FOR 23.00", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 326864 | | WH/B44/FLR | PSTN: ROD FOR 16.50", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 328243 | | WH/B41/FLR | PSTN: 16.50", PART #579-082-201 | | EA | | 1 | 18,426.94 | 100.0% | 18,426.94 |
| North Warehouse | Fieldwood | 329558 | | Linear Controls | ENG:NG,423hp,12,7in,H20,900rpm | | EA | | 1 | 84,000.00 | 100.0% | 84,000.00 |
| North Warehouse | Fieldwood | 333387 | | WH/B41/FLR | PSTN: 23.00", PART #579-303-201 | | EA | | 1 | 33,442.43 | 100.0% | 33,442.43 |
| North Warehouse | Fieldwood | 348619 | | B1/B1/S1 | MTR,ELEC:TEFC,3600rpm,150hp,445LP | | EA | | 1 | 7,220.06 | 100.0% | 7,220.06 |
| North Warehouse | Fieldwood | 370132 | | Linear Controls | ENG:NG,85-220hp,1905in3,6,7IN | | EA | | 1 | 60,750.95 | 100.0% | 60,750.95 |
| North Warehouse | Fieldwood | 500133 | | Fluid Crane | SUMP TANK,4'WX10'LX4'H,ATMOS,EXT,16" PFLA | | EA | | 1 | 26,250.00 | 100.0% | 26,250.00 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P7010 | TECHHOLD  PKR,7,32-35,3.880 | SHELL TROIKA GC 200 TA-3 | EA | | 1 | 5,135.00 | 100.0% | 5,135.00 |
| LAF-Southpark | Halliburton | ZCUSSH101398678 | | C019 | COMB CPLG,3 1/2-12 UN-2B X 3 1/2 API-NU | SHELL TROIKA GC 200 | EA | | 1 | 826.00 | 100.0% | 826.00 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | C585 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | SHELL TROIKA GC 200 | EA | | 1 | 914.85 | 100.0% | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | C585 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | SHELL TROIKA GC 200 | EA | | 1 | 914.85 | 100.0% | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | C500 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | SHELL TROIKA GC 200 | EA | | 1 | 914.85 | 100.0% | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101603543 | | C010 | SUB,BOT,MGP,5 1/2-10 UNS-2A X 5 1/4-10 | SHELL TROIKA GC 200 | EA | | 1 | 917.92 | 100.0% | 917.92 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P048 | TECHHOLD  PKR,7,32-35,3.880 | SHELL TROIKA GC 200 | EA | | 1 | 4,022.68 | 100.0% | 4,022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | C585 | TECHHOLD  PKR,7,32-35,3.880 | SHELL TROIKA GC 200 | EA | | 1 | 4,022.68 | 100.0% | 4,022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | C585 | TECHHOLD  PKR,7,32-35,3.880 | SHELL TROIKA GC 200 | EA | | 1 | 4,022.68 | 100.0% | 4,022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P7010 | TECHHOLD  PKR,7,32-35,3.880 | SHELL TROIKA GC 200 | EA | | 1 | 4,022.68 | 100.0% | 4,022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101652773 | | C5006 | LN,2.750,S13CR,3 1/2-9.2 VARST1,B-P | SHELL TROIKA GC 200 | EA | | 1 | 728.83 | 100.0% | 728.83 |
| LAF-Southpark | Halliburton | ZCUSSH101858738 | | C5011 | PKR,7,32-35,4 1/2-4 AC-2G-LH  .SCB | SHELL TROIKA GC 200 | EA | | 1 | 6,494.54 | 100.0% | 6,494.54 |
| LAF-Southpark | Halliburton | ZCUSSH101939766 | | C585 | LOC,NO-GO,4-13.20 VARST1 X 3 1/2-12 UN-2 | SHELL TROIKA GC 200 | EA | | 1 | 793.54 | 100.0% | 793.54 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LAF-Southpark | Halliburton | ZCUSSH101939766 | | C585 | LOC,NO-GO,4-13.20 VARST1 X 3 1/2-12 UN-2 | SHELL TROIKA GC 200 | EA | | 1 | 793.54 | 100.0% | 793.54 |
| LAF-Southpark | Halliburton | ZCUSSH100008579 | | C028 | GID,TUBE,WD,5 3/8-10 UNS,7.32-38 X 4.00 | SHELL TROIKA GC 200 | EA | | 1 | 493.00 | 100.0% | 493.00 |
| LAF-Southpark | Halliburton | ZCUSSH101252847 | | C002 | MDRL,NWD,4 1/2-12 UN-2A X 4 1/2 API-LC,7 | SHELL TROIKA GC 200 | EA | | 1 | 889.00 | 100.0% | 889.00 |
| LAF-Southpark | Halliburton | ZCUSSH101290361 | | C027 | MULE SHOE GID,3 1/2-12 UN BOX | SHELL TROIKA GC 200 | EA | | 1 | 268.00 | 100.0% | 268.00 |
| LAF-Southpark | Halliburton | ZCUSSH101346768 | | C358 | CLO SLV ASSY,MPT,5 1/4-10 UNS X 5-18 | SHELL TROIKA GC 200 | EA | | 1 | 2,643.00 | 100.0% | 2,643.00 |
| LAF-Southpark | Halliburton | ZCUSSH101346768 | | P11 | CLO SLV ASSY,MPT,5 1/4-10 UNS X 5-18 | SHELL TROIKA GC 200 | EA | | 1 | 2,643.00 | 100.0% | 2,643.00 |
| LAF-Southpark | Halliburton | ZCUSSH101555004 | | C358 | REDCG ADPTR,2 1/4 OTIS-ST X 2 3/8-4.60 | SHELL TROIKA GC 200 | EA | | 1 | 415.00 | 100.0% | 415.00 |
| LAF-Southpark | Halliburton | ZCUSSH101555004 | | C358 | REDCG ADPTR,2 1/4 OTIS-ST X 2 3/8-4.60 | SHELL TROIKA GC 200 | EA | | 1 | 415.00 | 100.0% | 415.00 |
| LAF-Southpark | Halliburton | ZCUSSH101555547 | | C046 | SEAL ASSY,2.650 X 2 1/4 OTIS-ST | SHELL TROIKA GC 200 | EA | | 16 | 468.79 | 100.0% | 468.79 |
| LAF-Southpark | Halliburton | ZCUSSH101575482 | | C358 | REDCG ADPTR,2 3/8-4.60 TSH 511 X 2 1/4 | SHELL TROIKA GC 200 | EA | | 1 | 461.00 | 100.0% | 461.00 |
| LAF-Southpark | Halliburton | ZCUSSH101575482 | | C358 | REDCG ADPTR,2 3/8-4.60 TSH 511 X 2 1/4 | SHELL TROIKA GC 200 | EA | | 1 | 461.00 | 100.0% | 461.00 |
| LAF-Southpark | Halliburton | ZCUSSH323456 | | C5002 | SEAL UNIT EXT,3 1/2-12 UN,B-P,3.88 | SHELL TROIKA GC 200 | EA | | 1 | 813.00 | 100.0% | 813.00 |
| LAF-Southpark | Halliburton | ZCUSSH101944453 | | C5006 | COL SHFT TL,BS1,2.770,41XX LAS | SHELL TROIKA GC 200 | EA | | 4 | 1,532.00 | 100.0% | 1,532.00 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | P11 | TRV JT,3 1/2-9.20 VARST1 B-P | SHELL TROIKA GC 200 | EA | | 1 | 148.00 | 100.0% | 148.00 |
| LAF-Southpark | Halliburton | ZCUSSH102127370 | | C7012 | FLDLOSS DVC,FS2-L,5.470,2.770,.SCB | SHELL TROIKA GC 200 | EA | | 1 | 16,617.00 | 100.0% | 16,617.00 |
| LAF-Southpark | Halliburton | ZCUSSH102132850 | | C5006 | SEAL ASSY,3.880 X 3 1/2-12 UN,MLD AFLAS | SHELL TROIKA GC 200 | EA | | 5 | 595.00 | 100.0% | 595.00 |
| LAF-Southpark | Halliburton | ZCUSSH102138028 | | C5006 | PERF COL LOCTR,4.000 X 2 7/8 API-EU | SHELL TROIKA GC 200 | EA | | 1 | 2,758.00 | 100.0% | 2,758.00 |
| LAF-Southpark | Halliburton | ZCUSSH102138040 | | C5006 | MULESHOE GDE,3 1/4-8 UN-2B,BOX,WITH BAF | SHELL TROIKA GC 200 | EA | | 1 | 374.23 | 100.0% | 374.23 |
| LAF-Southpark | Halliburton | ZCUSSH102154734 | | C5006 | SHR JT ASSY,3 1/2-9.20 VARST1,B-P | SHELL TROIKA GC 200 | EA | | 3 | 162.00 | 100.0% | 162.00 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | B5-R1-RW4 | TRV JT,3 1/2-9.20 VARST1 B-P | SHELL TROIKA GC 200 | EA | | 1 | 162.00 | 100.0% | 162.00 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | B5-R2-RW4 | TRV JT,3 1/2-9.20 VARST1 B-P | SHELL TROIKA GC 200 | EA | | 1 | 162.00 | 100.0% | 162.00 |
| LAF-Southpark | Halliburton | ZCUSSH102127370 | | C7011 | FLDLOSS DVC,FS2-L,5.470,2.770,.SCB | SHELL TROIKA GC 200 | EA | | 1 | 16,617.00 | 100.0% | 16,617.00 |
| LAF-Southpark | Halliburton | ZCUSSH102134650 | | C5006 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | SHELL TROIKA GC 200 | EA | | 2 | 876.98 | 100.0% | 876.98 |
| GE - Broussard | GE - Broussard | H10004-2 | | | SCREW,CAP,HEX COLLAR, 2.000- 8 X 9.000 LG,UN-2A, LOW TEMPERATURE SERVICE | SHELL TROIKA GC 200 | EA | | 24 | 697.00 | 100.0% | 697.00 |
| OES - Broussard | Offshore Energy Services | GP5241-1 | | HW-R4-L1-A06 | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-110Y VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5241-2 | | HW-R4-L1-A06 | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-110Y VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5235-6 | | HW-R1-L2-A02 | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5233-1 | | HW-R1-L1-A17 | CROSSOVER (5.5" 16.87# STL BOX / 3.5" 9.20# VARST-1 PIN AF913-110Y 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5233-2 | | HW-R1-L1-A17 | CROSSOVER (5.5" 16.87# STL BOX / 3.5" 9.20# VARST-1 PIN AF913-110Y 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5239-2 | | HW-R4-L1-A06 | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5239-3 | | HW-R4-L1-A06 | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5239-4 | | HW-R4-L1-A06 | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5240-1 | | HW-R4-L1-A06 | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5240-2 | | HW-R4-L1-A06 | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5036-1 | | HW-R3-L1-A15 | CROSSOVER (3.5" 9.20# 13CRS110Y VARST-1 BOX/ 3.5" 9.20# TSH 511 BOX 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5036-2 | | HW-R3-L1-A15 | CROSSOVER (3.5" 9.20# 13CRS110Y VARST-1 BOX/ 3.5" 9.20# TSH 511 BOX 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5037-1 | | HW-R3-L1-A15 | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5037-2 | | HW-R3-L1-A15 | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 500.00 | 100.0% | 500.00 |
| OES - Broussard | Offshore Energy Services | GP5035-1 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5035-2 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-3 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-4 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-5 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-6 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-7 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-8 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5035-9 | | HW-R1-L5-A04 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5019-1 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5019-2 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5019-3 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5019-4 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5030-3 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5030-4 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5030-5 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5030-6 | | HW-R3-L5-A10 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-1 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5040-2 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-3 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-4 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-5 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-6 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5040-7 | | HW-R2-L1-A13 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5042-1 | | HW-R1-L3-A18 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 10FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5048-1 | | HW-R2-L6-A06 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5047-1 | | HW-R2-L6-A02 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 14FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5038-1 | | HW-R3-L1-A15 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 2FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5039-1 | | HW-R4-L1-A21 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5039-2 | | HW-R4-L1-A21 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5039-3 | | HW-R4-L1-A21 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5045-1 | | HW-R2-L1-A13 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5043-1 | | HW-R1-L3-A18 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 8FT) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 45.00 | 100.0% | 45.00 |
| OES - Broussard | Offshore Energy Services | GP5063-1 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-2 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5063-3 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-4 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-5 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-6 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-7 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5063-8 | | HW-R4-L7-A17 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-1 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-10 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-2 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-3 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-4 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-5 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-6 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-7 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5060-8 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5060-9 | | HW-R2-L2-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5266-1 | | HW-R3-L5-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| OES - Broussard | Offshore Energy Services | GP5266-2 | | HW-R3-L5-A05 | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | SHELL TROIKA GC 200 | EA | | 1 | 82.00 | 100.0% | 82.00 |
| Schiever | Weatherford | 541R070SLI2Q12A002 | | (13) OUTSIDE 14      (7) OUTSIDE 16 | SUB, CENTRALIZER ROT 7 541R Q125 VAM SLIJ-II 32.0 9.75 OD | SHELL TROIKA GC 200 | EA | | 20 | 635.00 | 100.0% | 635.00 |
| Schiever | Weatherford | M212W70SLI2Q12A002 | | OUTSIDE 6 | SHOE, GUIDE 7 M212W CONC CMPST Q125 VAM SLIJ-II 32.0 | SHELL TROIKA GC 200 | EA | | 2 | 471.18 | 100.0% | 471.18 |
| Schiever | Weatherford | M45AP70SLI2Q12A002 | | OUTSIDE 6 | COLLAR, FLOAT 7 M49AP Q125 NR VAM SLIJ-II 32.0 2-4 | SHELL TROIKA GC 200 | EA | | 2 | 1,092.48 | 100.0% | 1,092.48 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 61 | 1-48" X 15' X 230 WP L.P. Horizontal Separator (No Skid) | ? | EA | | 1 | 4,850.00 | 100.0% | 4,850.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 64 | 24" X 10' Vertical H.P. Separator w/Skid | Eugene Island Block#266-B | EA | | 1 | 1,770.00 | 100.0% | 1,770.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 65 | 12" X 6' Vertical LP Fuel Gas Scrubber (No Skid) | ? | EA | | 1 | 1,235.00 | 100.0% | 1,235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 66 | 12" X 6' Vertical LP Fuel Gas Scrubber w/Skid | South Marsh Island 11-N | EA | | 1 | 1,235.00 | 100.0% | 1,235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 70 | 1-120 Degree Boat Landing with 48" Plate Doublers | South Marsh Island 11 | EA | | 1 | 820.00 | 100.0% | 820.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 73 | 24" X 10' Vertical H.P. Separator w/Skid | ? | EA | | 1 | 1,625.00 | 100.0% | 1,625.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 74 | 30" X 10' Vertical LP Test Separator w/Skid | ? | EA | | 1 | 1,895.00 | 100.0% | 1,895.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 77 | 16" X 8' Vertical LP Separator (No Skid) | South Marsh Island 10 | EA | | 1 | 1,455.00 | 100.0% | 1,455.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 90 | 1-48" X 10' X 275 WP L.P. Horizontal Scrubber Vessel NO SKID | South Marsh island Block# 48 E | EA | | 1 | 4,120.00 | 100.0% | 4,120.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 96 | 1-Glycol Reboiler with Stack & Stihl Column | High Island Block# 467 A | EA | | 1 | 8,145.00 | 100.0% | 8,145.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 100 | 48" X 10' X 275# W.P. Horizontal Water Skimmer with Skid | N/A | EA | | 1 | 4,175.00 | 100.0% | 4,175.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 101 | 42" X 15' X 1440# W.P. Horizontal 3-Phase Separator "No Skid" | N/A | EA | | 1 | 3,895.00 | 100.0% | 3,895.00 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 102 | 42" X 12' 6" X 125# W.P. Horizontal Skimmer with Skid | N/A | EA | | 1 | 3,215.00 | 100.0% | 3,215.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 103 | 20" X 7' 6" X 275 W.P. Vertical Separator with Skid | N/A | EA | | 1 | 1,210.00 | 100.0% | 1,210.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 104 | 30" X 10' X 1480 W.P. Horizontal Separator with Skid | N/A | EA | | 1 | 2,150.00 | 100.0% | 2,150.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 105 | One Dual Meter Run Skid with Pig Traps | N/A | EA | | 1 | 1,385.00 | 100.0% | 1,385.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 106 | 30" X 6' X 150# W.P. Vertical Scrubber Vessel with Skid | N/A | EA | | 1 | 1,665.00 | 100.0% | 1,665.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. KK | 30" X 4' X 250 WP Vertical Scrubber Vessel w/Skid | From Offshore Specialty Fabricators in Houma | EA | | 1 | 1,570.00 | 100.0% | 1,570.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. CCC | Line Heater/Reboiler Package 8' W X 22' 6"L X 10' 1" T | Eugene Island Block# 212 "A" | EA | | 1 | 12,275.00 | 100.0% | 12,275.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. DDD | 3-Vapor Recovery Stands | Eugene Island Block# 212 "A" | EA | | 1 | 235.00 | 100.0% | 235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. EEE | 1-Heater Stack, 1-Still Column, and Misc Pipe and Hardware for Line Heater/Reboiler | Eugene Island Block# 212 "A" | EA | | 1 | 355.00 | 100.0% | 355.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 107 | 1-Pallet of Used Spool Piping | West Cameron Block# 165 "A" | EA | | 1 | 295.00 | 100.0% | 295.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 108 | 1-Stairway with Handrails, 1-Caged Access Ladder, & 2-Small Deck Extension/Work Platofrms | Green Canyon Block# 65 "A" | EA | | 1 | 225.00 | 100.0% | 225.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 109 | 1-Filter Separator with Skid (5' X 12' X 8' Tall) Est. 10,000# | High Island Block# A376 B | EA | | 1 | 1,155.00 | 100.0% | 1,155.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 110 | 1-Float Cell with Skid (7' X 12' X 9' Tall) Est. 10,000# | High Island Block# A376 B | EA | | 1 | 1,490.00 | 100.0% | 1,490.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 111 | Two (2) Plate Heat Exchanger Skids | High Island Block# A595 "CF" | EA | | 1 | 475.00 | 100.0% | 475.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 112 | 1-Piggy-Back Water Skimmer & Float Cell Package (Newly Fabricated) | Main Pass Block# 140-A | EA | | 1 | 5,025.00 | 100.0% | 5,025.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 113 | 1-Verticle Water Skimmer Vessel with Skid (60" X 12" X 15,000#) (MBM-1800) | Vermilion Block# 60-A | EA | | 1 | 3,375.00 | 100.0% | 3,375.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 114 | 1-Verticle Floatation Unit (4M Spinsep) with Skid (ABM-1908) (10,150#) (Monosep Corporation-Serial# MCO-2076) | West Cameron Block# 68-A | EA | | 1 | 655.00 | 100.0% | 655.00 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 115 | 1-Verticle Test Separator with Skid (MBD-4501) (36 X 10 Foot X 17,000#) (2,000 WP @ 100 deg, MFG 1982) | West Cameron Block# 68-A | EA | | 1 | 865.00 | 100.0% | 865.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 116 | 1-Horizontal 3-Phase H.P. Production Separator with Skid (MBD-4502) (60" X 15') (1440 @ 100 Deg-Yr Built 1982) | West Cameron Block# 68-A | EA | | 1 | 1,435.00 | 100.0% | 1,435.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 117 | 1-Vertical Vent Scrubber Package with Skid (MBF-2401) (30" X 10' X 22,000#) | West Cameron Block# 68-A | EA | | 1 | 1,775.00 | 100.0% | 1,775.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 118 | 1-Horizontal 2-Phase Vent Scrubber Vessel W/Skid (48" X 10' X 150# @ 100 Deg) Built 1987 | East cameron Block# 320-A | EA | | 1 | 3,545.00 | 100.0% | 3,545.00 |
| Viking - Henderson | Viking Fabricators, LLC | | | | Handrails | | EA | | 179 | 315.00 | 100.0% | 315.00 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 10 FT. LONG LADDER CAGES | | EA | | 1 | 763.87 | 100.0% | 763.87 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 12'-6" LONG LADDER CAGES | | EA | | 84 | 1,291.85 | 100.0% | 1,291.85 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 10 FT. LONG LADDERS | | EA | | 81 | 622.75 | 100.0% | 622.75 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 20 FT. LONG LADDERS | | EA | | 107 | 1,236.43 | 100.0% | 1,236.43 |
| Linear - Lafayette | Linear Controls | 2124118-01 | 11233630-1 | ATS - OUTDOOR | ASSY, TREE CAP, BP TROIKA | | EA | 7,155 | 1 | 5,545.13 | 100.0% | 5,545.13 |
| Linear - Lafayette | Linear Controls | 2124617-01 | 2659561170 | ATS - OUTDOOR | ASSY, RIG TEST SKID, SUBSEA TREE, | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124117-07 | 400257303-01 | ATS - OUTDOOR | CONV. ASSY, SUBSEA TREE, 4" X 2"-10M, | | EA | 80,000 | 1 | 62,000.00 | 100.0% | 62,000.00 |
| Linear - Lafayette | Linear Controls | 2273013-01 | 110598733-1(RR1) | ATS - OUTDOOR | ASSEMBLY, 5" X 2"-10M SPOOLTREE. | | EA | 66,000 | 1 | 51,150.00 | 100.0% | 51,150.00 |
| Linear - Lafayette | Linear Controls | 2124123-01 | 96101817050 | ATS - OUTDOOR | ASSY, TREE CAP SHIPPING SKID | | EA | 1,850 | 1 | 1,433.75 | 100.0% | 1,433.75 |
| Linear - Lafayette | Linear Controls | 2124145-01 | 45256012-5 | ATS - OUTDOOR | ASSY, HUB, 4" WELL TERMINATION, | | EA | 1,400 | 1 | 1,085.00 | 100.0% | 1,085.00 |
| Linear - Lafayette | Linear Controls | 2141833-01 | 11227730-01 | ATS - OUTDOOR | ASSY, TREE TRANSPORTATION SKID, BP | | EA | 5,800 | 1 | 4,495.00 | 100.0% | 4,495.00 |
| Linear - Lafayette | Linear Controls | 2124836-01 | 11171617-1 | ATS - OUTDOOR | TEST STUMP BODY, TREE FAT SKID, | | EA | 6,200 | 1 | 4,805.00 | 100.0% | 4,805.00 |
| Linear - Lafayette | Linear Controls | 2124641-01 | 11384318-1 | ATS - OUTDOOR | ASSY, COMPLETION GUIDE BASE, STM-15 | | EA | 20,500 | 1 | 15,887.50 | 100.0% | 15,887.50 |
| Linear - Lafayette | Linear Controls | 2098861-02 | 11197244-1 | ATS - OUTDOOR | ASSY, MCPAC CONNECTION TOOL, SHELL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2098861-02 | 11199037-1 | ATS - OUTDOOR | ASSY, MCPAC CONNECTION TOOL, SHELL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124119-01 | 964534560 | ATS - OUTDOOR | ASSY, TREE RUNNING TOOL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124129-01 | 265340930 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER RUNNING TOOL | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124128-01 | 11286013-17 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER, STM-15, | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 2124135-01 | 2659561200 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER HANDLING / TEST | | EA | 300 | 1 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2124135-01 | 2659561190 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER HANDLING / TEST | | EA | 300 | 1 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2018904-01 | 265956120(RR2) | TOOLSKID - OUTDOOR | ASSY, LEAD IMPRESSION TOOL | | EA | 900 | 1 | 697.50 | 100.0% | 697.50 |
| Linear - Lafayette | Linear Controls | 2124129-01 | 266013010 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER RUNNING TOOL | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124139-01 | 11186901-01 | TOOLSKID - OUTDOOR | ASSY, DUMMY TBG HGR, STM-15, 4.06" | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |
| Linear - Lafayette | Linear Controls | 2055294-12 | 110357224-01 | CPB 077 - INDOOR | ASSEMBLY, TUBING HANGER, 5 IN NOM. | | EA | 2,500 | 1 | 1,937.50 | 100.0% | 1,937.50 |
| Linear - Lafayette | Linear Controls | 2748033-01 | 45353783-01-01 | CPB 077 - INDOOR | WIRELINE PLUG, 5.25" DIA, METAL AND | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2749898-01 | 4500436775-2-1 | CPB 077 - INDOOR | 5.250" WIRELINE PLUG 'HH' TRIM WITH | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2055296-02-01 | 110407008-1 | CPB 078 - INDOOR | ASSEMBLY, INTERNAL TREE CAP, 10K WP | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 60007268 | 96953428110 | SF-YARD - OUTDOOR | TROIKA TOOL SHED | | EA | | 1 | 15,000.00 | 100.0% | 15,000.00 |
| Linear - Lafayette | Linear Controls | 2124147-04 | 111802674 | TRI 168 - INDOOR | ASSY, CLAMP, W/ SEAL PLATE, 10" | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-05 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-06 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-05 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11363037-01 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-04 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124159-01 | 45284821-04 | TRI 171 - INDOOR | BODY, HUB, 10" FLOWLINE TEST STAND | | EA | 250 | 1 | 193.75 | 100.0% | 193.75 |
| Linear - Lafayette | Linear Controls | 2124159-01 | 45284821-01 | TRI 171 - INDOOR | BODY, HUB, 10" FLOWLINE TEST STAND | | EA | 250 | 1 | 193.75 | 100.0% | 193.75 |
| Linear - Lafayette | Linear Controls | 041700-47 | 4503010723-1-1 | TRI 171 - INDOOR | GASKET, AX - 18-3/4" 10/15M 316 SS | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 96111219520 | TRI 172 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 96111219570 | TRI 172 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2141279-01 | 4502534448-01-01 | TRI 172 - INDOOR | CLAMP, 10" FLOWLINE/ PIGGING LOOP/ | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-02-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-01-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-03-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2142930-01 | 4501742451-1-2 | TRI 174 - INDOOR | ACCESS STAND, G2 TUBING HANGER RUNNING | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |

14

**Exhibit D-1**

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 2124581-01 | 11410124-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-02 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-02 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-03 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-04 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-01 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-03 | 4502533058-01-01 | TRI 174 - INDOOR | SEAL PLATE, 10" FLOWLINE JUMPER | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11251434-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124586-01 | 450605865-1 | TRI 175 - INDOOR | END PLATE, MANDREL RETAINER, | | EA | 500 | 1 | 387.50 | 100.0% | 387.50 |
| Linear - Lafayette | Linear Controls | 2124584-01 | 450605849-1-1 | TRI 175 - INDOOR | MANDREL, RETAINER SLEEVE, | | EA | 400 | 1 | 310.00 | 100.0% | 310.00 |
| Linear - Lafayette | Linear Controls | 2124535-01 | NS201604020729021 | TRI 175 - INDOOR | ANNULUS LOOP, 2.875 O.D. X 2.125 | | EA | 300 | 4 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2124624-01 | 450604006-1 | TRI 175 - INDOOR | BODY, 4" PRODUCTION STAB, | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124585-01 | 450605858-1 | TRI 175 - INDOOR | RETAINER PLATE, MASTER VALVE BLOCK | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2156742-01 | 11328834-01 | TRI 175 - INDOOR | SUB-ASSY, BOP SPANNER JOINT, 7.625" | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2156773-02 | 11322641-01 | TRI 175 - INDOOR | UPPER ADAPTER, BOP SPANNER JOINT, | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 400297648 | TRI 176 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 11213146-1 | TRI 176 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 041700-09-01 | 400133273 | TRI 178 - INDOOR | AX GASKET, 11"-5M/10M#, ST/STL WITH | | EA | 30 | 1 | 23.25 | 100.0% | 23.25 |
| Linear - Lafayette | Linear Controls | 041700-09-01 | 400133274 | TRI 178 - INDOOR | AX GASKET, 11"-5M/10M#, ST/STL WITH | | EA | 30 | 1 | 23.25 | 100.0% | 23.25 |
| Linear - Lafayette | Linear Controls | 2098477-01 | 175670-1 | TRI 178 - INDOOR | AX-VX GASKET | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2098477-01 | 175670-2 | TRI 178 - INDOOR | AX-VX GASKET | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-8 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-6 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-3 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-11 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-3 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-2 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45438628-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |

Exhibit D-1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-4 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 501040-1 | 961276244180 | TRI 178 - INDOOR | 6" Gasket Sealing Ring | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-04 | 45424496-2 | TRI 178 - INDOOR | GASKET W/ O-RING, 10"-15M SEAL | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-01 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-4 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-06 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434274-02 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-04 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-03 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-04 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124134-01 | 2659561110 | TRI 180 - INDOOR | ASSY, TUBING HANGER ADJUSTMENT STAN | | EA | 600 | 1 | 465.00 | 100.0% | 465.00 |
| Linear - Lafayette | Linear Controls | 2099720-02 | 26-1567 | TRI FLOOR - INDOOR | ASSY, TREE CAP RUNNING TOOL, BP | | EA | 5,000 | 1 | 3,875.00 | 100.0% | 3,875.00 |
| Linear - Lafayette | Linear Controls | 60031311 | 9523237807360 | TRI SHED - INDOOR | Troika Dummy Control Pod | | EA | 3,000 | 1 | 2,325.00 | 100.0% | 2,325.00 |
| Linear - Lafayette | Linear Controls | 60031470 | 9523237807390 | TRI SHED - INDOOR | SHELL DUMMY CONTROL POD SHIPPING SKID | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |
| Linear - Lafayette | Linear Controls | 2123000-01 | 9624280360 | TRI-SHELL - OUTDOOR | HANDLING TOOL ASSY, TREE CAP & TREE | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2123000-01 | 2657807220 | TRI-SHELL - OUTDOOR | HANDLING TOOL ASSY, TREE CAP & TREE | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2123738-01 | 9624280370 | TRI-SHELL - OUTDOOR | LIFT SUB, 1.50" NOM SHACKLE X | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2099099-03 | 11196376-1 | TRI-SHELL - OUTDOOR | ASSY, TEST HUB, 10" FLOWLINE / | | EA | 350 | 1 | 271.25 | 100.0% | 271.25 |
| Linear - Lafayette | Linear Controls | 2099099-03 | 11210778-1 | TRI-SHELL - OUTDOOR | ASSY, TEST HUB, 10" FLOWLINE / | | EA | 350 | 1 | 271.25 | 100.0% | 271.25 |
| Linear - Lafayette | Linear Controls | 2035504-02 | 961276650350 | TRI-SHELL - OUTDOOR | ASSY, DEBRIS CAP, 18-3/8" OD MCPAC | | EA | 100 | 1 | 77.50 | 100.0% | 77.50 |
| Linear - Lafayette | Linear Controls | 2035519-01 | 1276650650 | TRI-SHELL - OUTDOOR | ASSY, ROV RETRIEVABLE DEBRIS/TEST | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2035519-01 | 1276650660 | TRI-SHELL - OUTDOOR | ASSY, ROV RETRIEVABLE DEBRIS/TEST | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2156132-01 | 9523237807220 | TRI-SHELL - OUTDOOR | ASSY, COMBINATION (TREE/TREE CAP) | | EA | 500 | 1 | 387.50 | 100.0% | 387.50 |
| Linear - Lafayette | Linear Controls | 2156145-01 | 11324065-01 | TRI-SHELL - OUTDOOR | ASSY, 3-1/16-15M MONOBORE TUBING | | EA | 8,500 | 1 | 6,587.50 | 100.0% | 6,587.50 |
| Linear - Lafayette | Linear Controls | 2124137-01 | 9523237807330 | TRI-SHELL - OUTDOOR | ASSY, TOOL STORAGE & SHIPPING SKID | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124137-01 | 9523237807340 | TRI-SHELL - OUTDOOR | ASSY, TOOL STORAGE & SHIPPING SKID | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124118-01 | 11278658-1 | TRI-SHELL - OUTDOOR | ASSY, TREE CAP, BP TROIKA | | EA | 8,000 | 1 | 6,200.00 | 100.0% | 6,200.00 |
| Linear - Lafayette | Linear Controls | | Serial.# WPI317 | | Waukesha Engine  L7042 GSI | | EA | | 1 | 82,625.00 | 100.0% | 82,625.00 |

**Exhibit D-1**

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | | Serial.# 48799 | | Waukesha Engine  L3711 | | EA | | 1 | 51,250.00 | 100.0% | 51,250.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 1029776 | | Waukesha Engine  F1905 | | EA | | 1 | 43,765.00 | 100.0% | 43,765.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 218794 | | Waukesha Engine  F1905 | | EA | | 1 | 43,765.00 | 100.0% | 43,765.00 |
| Linear - Lafayette | Linear Controls | | Serial.#396632 | | Waukesha Engine  F1197 | | EA | | 1 | 24,315.00 | 100.0% | 24,315.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 362530 | | Waukesha Engine  F1197 | | EA | | 1 | 24,315.00 | 100.0% | 24,315.00 |
| Whitco - Broussard | Whitco Supply | 357501 | | | 1" x 3' x 20' Galvanized Grating | | EA | | 106 | 395.00 | 100.0% | 395.00 |
| Whitco - Broussard | Whitco Supply | 333963 | | | 1-1/2" x 3' x 20' Galvanized Grating | | EA | | - | 598.00 | 100.0% | 598.00 |
| Express - Fourchon | Express Supply & Steel | | | | 1" x 3-1/16" x 36" x 20' Serrated Galvanized Domestic Grating | | EA | | 10 | 400.65 | 100.0% | 400.65 |
| Express - Fourchon | Express Supply & Steel | | | | 1-1/2" x 3-1/16" x 36" x 20' Serrated Galvanized Domestic Grating | | EA | | 35 | 555.67 | 100.0% | 555.67 |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 04536.B | | MW-R18-FL | Torque Tool with Calibration Set | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 04558.A | | BW-R4-2 | Assy, Choke insert, CC405R, CV=300 | | | EA | | | 1 | | 35854.02 | 35854.02 | | |
| Deepwater Warehouse | Fieldwood | 04564.B | | MW-R2-FL | Assy, Internal Tree Cap, 10M | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 45523.37 | 0 | | |
| Deepwater Warehouse | Fieldwood | 04627.B | | DWW-YARD-C-VAN CPIU 0301122ZG1 | PLUG, ELECTRICAL;TYP:EFL-SPARE 9-WAY,SPCL FEAT:LEAD 275 FT | | | EA | | | 0 | | 5378.1 | 0 | | |
| Deepwater Warehouse | Fieldwood | 04630.A | | BW-R3-3 | TOOL, TYPE: CVC OVER-RIDE, MFG: CAMERON, PN: 2166761-02 REV 01, APPLI: FOR CAMERON VERTICAL CONNECTION (CVC) SYSTEM | | | EA | | | 1 | | 143.41 | 143.41 | | |
| Deepwater Warehouse | Fieldwood | 04631.C | | MR-5-E | TOOL, SETTING;MFR:CAMERON,PN:2166877-03,TYP MANUAL LOCKOUT | | | EA | | | 0 | | 35.855 | 0 | | |
| Deepwater Warehouse | Fieldwood | 04651.A | | DWW-YARD-C-VAN HLXU 616220-6 | Assy, 6", 10K CVC Connector, 6.625 OD | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 142590 | 285180 | | |
| Deepwater Warehouse | Fieldwood | 04651.A | | DWW-YARD-C-VAN HLXU 616220-6 | Assy, 6", 10K CVC Connector, 6.625 OD | 137897 | VK 917/962 PRE FEED WORK | EA | | | 0 | | 126000 | 0 | | |
| Deepwater Warehouse | Fieldwood | 04651.A | | DWW-YARD-C-VAN HLXU 616220-6 | Assy, 6", 10K CVC Connector, 6.625 OD | | | EA | | | 0 | | 134850.33 | 0 | | |
| Deepwater Warehouse | Fieldwood | 04651.B | | DWW-YARD-C-VAN HLXU 616220-6 | Assy, 6", 10K CVC Connector, 6.625 OD | | | EA | | | 0 | | 121174.8 | 0 | | |
| Deepwater Warehouse | Fieldwood | 04651.B | | BW-AREA 1 | Assy, 6", 10K CVC Connector, 6.625 OD | | | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 04652.A | | BW-R9-FL | HUB, TYPE: ASSEMBLY, MFG: CAMERON, PN: 2166393-62, APPLICATION: FOR F22 AND RECEIVER STRUCTURE | | | EA | | | 2 | | 62806.32 | 125612.64 | | |
| Deepwater Warehouse | Fieldwood | 04760.A | | MR-3-E | GASKET, RING JOINT;CODE:5-AA,MATL:SS,NOM SZ:6IN,CL:10000PSI,STD:PSL 2-4,MFR:CAMERON,PN:2035804-07 | | | EA | | | 1 | | 4201.68 | 4201.68 | | |
| Deepwater Warehouse | Fieldwood | 04778.A | | DWW-YARD - FRONT | CAP;MFR:VETCO GRAY,PN:H28B500-1,TYP CORROSION,SZ 18.750 IN,CONN TYP LEAF SPRING RETENTION FOR H-4 WELLHEAD,MATL:ALUMINUM,COMPRISING TWO RUNNING/LIFT PINS, W/HORIZONTAL ROV STAB,APPLI:WELLHEAD ABANDONMENT | 202673 | MC 948 4 GUNFLINT TA | EA | | | 1 | | 19200 | 19200 | | |
| Deepwater Warehouse | Fieldwood | 08427.A | | DWW-YARD C-VAN HLXU 1339199 | SHACKLE,BOLT TYPE ANCHOR,17.000 TON SAFE WORKING LOAD,1.375 DIA,GALVINIZED,CROSBY,G2130,1019631 | | | EA | | | 0 | | 376.4670588 | 0 | | |
| Deepwater Warehouse | Fieldwood | 08919.A | | MW-10-2 | GASKET, RING JOINT;CODE:VX-2,MATL:SS,MATL GR:316,CL:10000PSI,COMPRISING:HYCAR INSERTS,APPLI:WELLHEAD (SZE: 18-3/4 IN),MFR:VETCO GRAY,PN:11127-1,EQ MODEL:MS-700 | AFE FW193004 | TROIKA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 08919.A | | MW-AREA 6 | GASKET, RING JOINT;CODE:VX-2,MATL:SS,MATL GR:316,CL:10000PSI,COMPRISING:HYCAR INSERTS,APPLI:WELLHEAD (SZE: 18-3/4 IN),MFR:VETCO GRAY,PN:11127-1,EQ MODEL:MS-700 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 0 | | 4352 | 0 | | |
| Deepwater Warehouse | Fieldwood | 08919.A | | MW-AREA 6 | GASKET, RING JOINT;CODE:VX-2,MATL:SS,MATL GR:316,CL:10000PSI,COMPRISING:HYCAR INSERTS,APPLI:WELLHEAD (SZE: 18-3/4 IN),MFR:VETCO GRAY,PN:11127-1,EQ MODEL:MS-700 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 4352 | 0 | | |
| Deepwater Warehouse | Fieldwood | 08920.A | | MW-AREA 6 | GASKET, RING JOINT;CODE:VX-2/VT-2,MATL:SS,MATL GR:316,CL:15000PSI,APPLI:WELLHEAD (SZE: 18-3/4 IN),MFR:VETCO GRAY,PN:H10931-2,EQ MODEL:MS-700 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 7995.95 | 0 | | |
| Deepwater Warehouse | Fieldwood | 08920.A | | MW-AREA 6 | GASKET, RING JOINT;CODE:VX-2/VT-2,MATL:SS,MATL GR:316,CL:15000PSI,APPLI:WELLHEAD (SZE: 18-3/4 IN),MFR:VETCO GRAY,PN:H10931-2,EQ MODEL:MS-700 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 0 | | 7995.95 | 0 | | |
| Deepwater Warehouse | Fieldwood | 12161.A | | MW-R10-FL | CAP;TYP:INTERNAL PRESSURE,APPLN:SUBSEA INTERNAL WELLHEAD TREE,MFR:CAMERON,PN:2180719-09 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 30000 | 30000 | | |
| Deepwater Warehouse | Fieldwood | 13246.A | | PUP JOINT RACK-FLOOR | COUPLING, OCTG;NOM SZ:4-1/2IN,WT:12.60lb/ft,MATL GR:13CR80,TOP CONN TYP:VAM TOP | | | EA | | | 1 | | 433.08 | 433.08 | | |
| Deepwater Warehouse | Fieldwood | 13286.A | | PR-R1-2 | KIT;COMPRISING:SPLICE (SIZE: 3/4 IN),MFR: SCHLUMBERGER,MN:EDMC-R,REF:90043-000-00001 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 0 | | 12500 | 0 | | |
| Deepwater Warehouse | Fieldwood | 13286.A | | PR-R1-2 | KIT;COMPRISING:SPLICE (SIZE: 3/4 IN),MFR: SCHLUMBERGER,MN:EDMC-R,REF:90043-000-00001 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 12500 | 0 | | |
| Deepwater Warehouse | Fieldwood | 13449.A | | MR-3-C | Blind Plug, Compensating: For the 10K hangers. Alloy 718 Compensating Blind Piston Top Assembly, 2 x 1.6 cu.in. Expansion Chambers; Material Number,PS025-21 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 6 | | 23533 | 141198 | | |
| Deepwater Warehouse | Fieldwood | 13798.A | | OS-R1-S3 | CARD, ELECTRONIC;TYP:1-CHANNEL SUBSEA INTERFACE,FUNC:DOWN HOLE PRESSURE AND TEMPERATURE GAUGE (4),TEMP RNGE:20 TO 3F HEXADECIMAL,MFR: SCHLUMBERGER,MFR:WELLWATCHER,BRAND:UNKNOWN,EQ MODEL:SERIES ESLIC | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 11500 | 11500 | | |
| Deepwater Warehouse | Fieldwood | 13798.A | | OS-R1-S3 | CARD, ELECTRONIC;TYP:1-CHANNEL SUBSEA INTERFACE,FUNC:DOWN HOLE PRESSURE AND TEMPERATURE GAUGE (4),TEMP RNGE:20 TO 3F HEXADECIMAL,MFR: SCHLUMBERGER,MFR:WELLWATCHER,BRAND:UNKNOWN,EQ MODEL:SERIES ESLIC | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 11500 | 11500 | | |
| Deepwater Warehouse | Fieldwood | 13799.A | | PR-R1-2 | CONNECTOR, ELECTRICAL,CONDCTR SZ:16-18AWG,MFR:EXPRO,PN:DHCE-AS1-BQ-015-001-HN,MFR:TRONIC,BRAND:UNKNOWN | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 6962.5 | 0 | | |
| Deepwater Warehouse | Fieldwood | 14397.A | | DWW-YARD | CONTROL LINE,SINGLE,0.375 X 0.049,INCOLOY 825,ENCAPULATED IN SANTOPRENE JACKET,MID-SOUTH CONTROL LINE,FILLED & FLUSHED TO NAS CLASS 6 STANDARDS W/TRANSAQUA HT | | | FT | | | 0 | | 3.738570732 | 0 | | |
| Deepwater Warehouse | Fieldwood | 14541.A | | DWW-YARD C-VAN HJCU-1481372 | FLOAT COLLAR,16.000 IN,96.00 LBS/FT, HCQ125 TSH 511 | | | EA | | | 2 | | 17883.2275 | 35766.455 | | |
| Deepwater Warehouse | Fieldwood | 14543.A | | DWW-YARD C-VAN 402189-0 | GUIDE SHOE, 17.875 P110 TSH 521 | | | EA | | | 1 | | 12739.3 | 12739.3 | | |
| Deepwater Warehouse | Fieldwood | 14862.A | | MR-1-D | ADAPTOR, TUBE TO PIPE;TYP:HANGER CONNECTOR,TUBE OD:1/4IN,PIPE SZ:0.5625IN,PIPE CONN:MTM,MFR:PETRO TECHNOLOGIES,PN:120M421 REV N | | | EA | | | 0 | | 1417.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 15036.A | | BW-AREA 3 | CENTRALIZER, CASING;TYP:SPRING,CASNG NOM SZ:22IN,CONN TYPE:STRAIGHT LATCH ON,BOW TYP:LAP WELDED,SPCL FEAT:BOW OD: 29-5/8 IN,MFR:WEATHERFORD,PN:1105722/571157,MN:SERIES 57R | 203389 | MC 339 SILVERGATE DRL | EA | | | 27 | | 195 | 5265 | | |
| Deepwater Warehouse | Fieldwood | 15036.A | | BW-AREA 3 | CENTRALIZER, CASING;TYP:SPRING,CASNG NOM SZ:22IN,CONN TYPE:STRAIGHT LATCH ON,BOW TYP:LAP WELDED,SPCL FEAT:BOW OD: 29-5/8 IN,MFR:WEATHERFORD,PN:1105722/571157,MN:SERIES 57R | 201560 | GC 40 02 Katmai 2 | EA | | | 6 | | 195 | 1170 | | |
| Deepwater Warehouse | Fieldwood | 17709.A | | MR-GENERAL | PLUG,WIRELINE, F/CAMERON 5.250 IN TUBING HANGER, CAMERON PN:2749898-01 | | | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 52100 | 52100 | | |
| Deepwater Warehouse | Fieldwood | 17946.A | | DWW-YARD C-VAN HJCU 1339199 | SS Wellhead, SEAL ASSEMBLY, 22" X 16" BIG BORE II, W/SIGHT SET METAL TO METAL SEAL, RATED 6,500 PSI, H2S SERVICE DRIL QUIP PN 2-401134-02 | | | EA | | | 0 | | 23000.35 | 0 | | |
| Deepwater Warehouse | Fieldwood | 18082.A | | DWW-YARD C-VAN HJCU 1339199 | FLANGE;TYP:WELD ON,MATL:SS,SPCL FEAT:ALLOWS INSTALLATION OF SLOPE INDICATOR, MOUNTING BRACKET, PER NOBLE QP Q504.01,APPLI:WELLHEAD (SIZE: 36 IN),MFR:DRIL-QUIP,PN:2-401350-03 | | | EA | | | 0 | | 2179.220417 | 0 | | |
| Deepwater Warehouse | Fieldwood | 18082.A | | DWW-YARD C-VAN HJCU 1339199 | FLANGE;TYP:WELD ON,MATL:SS,SPCL FEAT:ALLOWS INSTALLATION OF SLOPE INDICATOR, MOUNTING BRACKET, PER NOBLE QP Q504.01,APPLI:WELLHEAD (SIZE: 36 IN),MFR:DRIL-QUIP,PN:2-401350-03 | 203389 | MC 339 SILVERGATE DRL | EA | | | 0 | | 3275.9 | 0 | | |

1

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 18082.A | | DWW-YARD C-VAN HJCU 1339199 | FLANGE,TYP:WELD ON,MATL:SS,SPCL FEAT-ALLOWS INSTALLATION OF SLOPE INDICATOR, MOUNTING BRACKET, PER NOBLE QP QS04.01,APPLI:WELLHEAD (SIZE: 36 IN),MFR:DRIL-QUIP,PN:2-401350-03 | 144040 | MC 948 A GUNFLINT D&E | EA | | | 0 | | 3255 | 0 | |
| Deepwater Warehouse | Fieldwood | 18082.A | | DWW-YARD C-VAN HJCU 1339199 | FLANGE,TYP:WELD ON,MATL:SS,SPCL FEAT-ALLOWS INSTALLATION OF SLOPE INDICATOR, MOUNTING BRACKET, PER NOBLE QP QS04.01,APPLI:WELLHEAD (SIZE: 36 IN),MFR:DRIL-QUIP,PN:2-401350-03 | 201560 | GC 40 02 Katmai 2 | EA | | | 0 | | 3329.76 | 0 | |
| Deepwater Warehouse | Fieldwood | 18083.A | | BW-RS-FL | VALVE, BALL,OPRTD:ROV HANDLE,CONN 1 SZ:4IN,CONN 1 TYPE:NPT,CLS:1000PSI,SPCL FEATRS:PIPE NIPPLE, HAMMER UNION, 0-600 PSI PRESSURE GAUGE, EVERY (4) VALVES,APPLI:SS WELLHEAD,MFR:DRIL-QUIP,PN:2-904265-02 | | | EA | | | 1 | | 2053.607214 | 2053.607214 | |
| Deepwater Warehouse | Fieldwood | 18083.A | | DWW-YARD C-VAN HJCU 1339199 | VALVE, BALL,OPRTD:ROV HANDLE,CONN 1 SZ:4IN,CONN 1 TYPE:NPT,CLS:1000PSI,SPCL FEATRS:PIPE NIPPLE, HAMMER UNION, 0-600 PSI PRESSURE GAUGE, EVERY (4) VALVES,APPLI:SS WELLHEAD,MFR:DRIL-QUIP,PN:2-904265-02 | | | EA | | | 0 | | 2053.607214 | 0 | |
| Deepwater Warehouse | Fieldwood | 18083.A | | DWW-YARD C-VAN CCLU667229-9 | VALVE, BALL,OPRTD:ROV HANDLE,CONN 1 SZ:4IN,CONN 1 TYPE:NPT,CLS:1000PSI,SPCL FEATRS:PIPE NIPPLE, HAMMER UNION, 0-600 PSI PRESSURE GAUGE, EVERY (4) VALVES,APPLI:SS WELLHEAD,MFR:DRIL-QUIP,PN:2-904265-02 | | | EA | | | 0 | | 2053.607214 | 0 | |
| Deepwater Warehouse | Fieldwood | 18087.A | | DWW-YARD C-VAN HJCU 1339199 | SWEDGE,CROSSOVER,22" X 1.000" W.T. BWP DOWN BY 22.130" X .750" W.T. BWP UP, DRIL QUIP PN:2-404391-07, PER NOBLE QP QS04.01 | | | EA | | | 0 | | 5075.488889 | 0 | |
| Deepwater Warehouse | Fieldwood | 18089.A | | DWW-YARD C-VAN HJCU 1339199 | SS Wellhead, SEAL ASSEMBLY,22" X 18" BIG BORE II, SS10/SS15, WEIGHT SET RESILIENT SEAL, RATED 5,000 PSI., DRIL QUIP PN:1-408455-05,MONO API 17D,PER NOBLE QP QS04.01 | | | EA | | | 0 | | 37060.07286 | 0 | |
| Deepwater Warehouse | Fieldwood | 18097.A | | DWW-YARD C-VAN HJCU 1339199 | SS Wellhead, SEAL ASSEMBLY, 18-3/4 SS15, 15M PSI, DUAL WEIGHT SET METAL TO METAL SEALS, FOR HANGERS 13-3/8 AND SMALLER, INCLUDES OUTER LOCK RING, H2S SERVICE, DRILQUIP PN 2-404254-05,PER NOBLE QP QS04.01 | | | EA | | | 0 | | 24382.81 | 0 | |
| Deepwater Warehouse | Fieldwood | 18802.A | | BW-AREA-3 | CASING, OCTG,NOM SZ 22 IN,WT 224.28 lb/ft,WALL THK 1 IN,MATL GR X80,CONN TYPE S90M,MT,LG 60 ft | | | FT | | | 7.78 | | 250.0515732 | 1945.401239 | |
| Deepwater Warehouse | Fieldwood | 19122.A | | DWW-YARD C-VAN HJCU 1339199 | SS Wellhead, SEAL ASSEMBLY, 16" TYPE SS10/SS15, F/ 16" SUPPLEMENTAL HANGER, W/70 DURO HYDROGENATED NITRILE F/ELASTOMERIC SEALING ELEMENT, H2S SERVICE, DRIL QUIP PN:2-407542-07 | | | EA | | | 0 | | 23000.35333 | 0 | |
| Deepwater Warehouse | Fieldwood | 19397.A | | MR-1-A | DISK, INTERNAL PRESSURE RUPTURE(IPRD), RATED 5500 PSIG @ 150°F 3000 PSIG MIN BACK PRESSURE | | MC 948 A GUNFLINT D&E | EA | | | 2 | | 4589.79 | 9179.58 | |
| Deepwater Warehouse | Fieldwood | 19706.C | | DWW-YARD C-VAN HLXU 616220-6 | CAP, PIPE,SZ:6IN,OPER PRESS:1000DPSI,MFR:CAMERON,PN:2181629-14 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | 25000 | 25000 | |
| Deepwater Warehouse | Fieldwood | 19706.C | | MW-R14-FL | CAP, PIPE,SZ:6IN,OPER PRESS:1000DPSI,MFR:CAMERON,PN:2181629-14 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 25000 | 25000 | |
| Deepwater Warehouse | Fieldwood | 19706.C | | DWW-YARD C-VAN CPIU 0301120 | CAP, PIPE,SZ:6IN,OPER PRESS:1000DPSI,MFR:CAMERON,PN:2181629-14 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 25000 | 25000 | |
| Deepwater Warehouse | Fieldwood | 19706.C | | MW-R14-FL | CAP, PIPE,SZ:6IN,OPER PRESS:1000DPSI,MFR:CAMERON,PN:2181629-14 | AFE FW193004 | TROIKA | EA | | | 1 | | 15446.17 | 15446.17 | |
| Deepwater Warehouse | Fieldwood | 20177.A | | DWW-YARD | PUP JOINT, CASING,NOM SZ:16IN,WT 96.00lb/ft,MATL GR:Q125,TOP CONN TYP:TSH 511,LG:20ft | | | EA | | | 1 | | 4251.9 | 4251.9 | |
| Deepwater Warehouse | Fieldwood | 20182.A | | DWW-YARD C-VAN HJCU-1481372 | GUIDE SHOE, 11.875, 71.80, HCQ125, TSH 523, WEATHERFORD MOD.549, W/L.B. BOW SPRING SUB, 12.250 RESTICTION INTO 14.500 OPEN HOLE , PN:S4900LQH5230H124002 | | | EA | | | 1 | | 6460.89 | 6460.89 | |
| Deepwater Warehouse | Fieldwood | 20183.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT, 11.875, 71.80, HCQ125, TSH 523, WEATHERFORD MOD L47A, DV, L.B. AUTO FILL, W/ 3.500 DROP BALL, PN: L47A0LQH5230H120718 | | | EA | | | 1 | | 14321.53 | 14321.53 | |
| Deepwater Warehouse | Fieldwood | 21764.A | | PUP JOINT RACK-FLOOR | Sub, XO 3-1/2" 9.2# VFJL 8x x 3-1/2" 9.3# SC-BT5-8 Pn 1.18' Lg, 12.5Ksi 13HCr, SUPERIOR ENERGY SERVICES PN: 413.35332C | | | EA | | | 3 | | 1812.416667 | 5437.25 | |
| Deepwater Warehouse | Fieldwood | 23938.A | | MR-3-D | WIRE,MFR:CAMERON,PN:2748111-01,TYP LOCKING,APPLI SSR (SIZE: 5.25 IN | | | EA | | | 2 | | 51.845 | 103.69 | |
| Deepwater Warehouse | Fieldwood | 23962.A | | MR-5-D | O RING,INDUS STD:AS568-465,ID:17.955IN,PN:702645-46-52 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | 181.06 | 181.06 | |
| Deepwater Warehouse | Fieldwood | 23962.A | | DWW-YARD C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | O RING,INDUS STD:AS568-465,ID:17.955IN,PN:702645-46-52 | 139991 | KATMAI/DRLOV/GE NOVESA | EA | | | 1 | | 181.06 | 181.06 | |
| Deepwater Warehouse | Fieldwood | 23962.A | | TRAINING ROOM 1 | O RING,INDUS STD:AS568-465,ID:17.955IN,PN:702645-46-52 | AFE FW580018 | KATMAI/DRLOV/GE NOVESA | EA | | | 6 | | 181.06 | 1086.36 | |
| Deepwater Warehouse | Fieldwood | 23972.A | | MR-5-D | Shear pin, actuator ring (P/N: 2156904-01) | | | EA | | | 4 | | 48.325 | 193.3 | |
| Deepwater Warehouse | Fieldwood | 24601.A | | MW-AREA 5 | SAVER SUB, BLANK PIPE, 5.500, 20.00, 13Cr110, SLHT (2 FT) | | | EA | | | 1 | | 3065.94 | 3065.94 | |
| Deepwater Warehouse | Fieldwood | 24602.A | | PUP JOINT RACK-FLOOR | SUB, X-OVER, 3.500, 9.30, SC-BT5B BOX, X 3.500, 9.20, VFJL PIN,12.5Ksi 13HCr,(1.15 FT) SUPERIOR ENERGY SERVICES PN: 413.35331C | | | EA | | | 2 | | 1626.485 | 3252.97 | |
| Deepwater Warehouse | Fieldwood | 24602.A | | PUP JOINT RACK-FLOOR | SUB, X-OVER, 3.500, 9.30, SC-BT5B BOX, X 3.500, 9.20, VFJL PIN,12.5Ksi 13HCr,(1.15 FT) SUPERIOR ENERGY SERVICES PN: 413.35331C | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 6 | | 2497.5 | 14985 | |
| Deepwater Warehouse | Fieldwood | 26133.B | | MR-GENERAL | POWER UNIT, ELECTRICAL, SUBSEA, MCS EQUIPMENT ASSEMBLY, AKER, PN: B814-000748-78 | 140054 | VK 917 POWER UMBILICAL | EA | | | 0 | | 18573 | 0 | |
| Deepwater Warehouse | Fieldwood | 26537.A | | MW-AREA 6 | PUP JOINT, TUBING,NOM SZ:3-1/2IN,WT:9.30lb/ft,MATL GR:13CR110,CONN TYPE:BT5-8,TOP CONN TYP:BT5-8 BOX,BOT CONN TYP:BT5-8 PIN,LG:6ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 5198 | 10396 | |
| Deepwater Warehouse | Fieldwood | 26538.A | | PUP JOINT RACK-TIER 5 | PUP JOINT, TUBING,NOM SZ:3-1/2IN,WT:9.30lb/ft,MATL GR:13CR110,CONN TYPE:BT5-8,TOP CONN TYP:BT5-8 BOX,BOT CONN TYP:BT5-8 PIN,LG:8ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6618.25 | 6618.25 | |
| Deepwater Warehouse | Fieldwood | 27308.A | | MR-1-D | UNION,CONN SZ:1/2IN,MFR:PETRO VALVE,PN:120M611 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 2781.8 | 0 | |
| Deepwater Warehouse | Fieldwood | 27308.A | | MR-1-D | UNION,CONN SZ:1/2IN,MFR:PETRO VALVE,PN:120M611 | | | EA | | | 0 | | 1994.775 | 0 | |
| Deepwater Warehouse | Fieldwood | 27308.A | | MR-1-D | UNION,CONN SZ:1/2IN,MFR:PETRO VALVE,PN:120M611 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 0 | | 2781.8 | 0 | |
| Deepwater Warehouse | Fieldwood | 27309.A | | MR-2-C | UNION, QUICK CONNECT, REDUNDANT, 0.375 IN TUBE, PETRO TECHNOLOGIES, PN: 120Mö31, REV C | | | EA | | | 0 | | 1708.51 | 0 | |
| Deepwater Warehouse | Fieldwood | 27312.A | | MR-2-C | UNION, QUICK CONNECT, REDUNDANT, 0.375 IN TUBE, PETRO TECHNOLOGIES, PN: 120M931, REV C | | | EA | | | 0 | | 344.855 | 0 | |
| Deepwater Warehouse | Fieldwood | 27313.A | | MR-2-C | UNION, QUICK CONNECT, REDUNDANT, 0.250 IN TUBE, PETRO TECHNOLOGIES, PN: 120M931, REV C | | | EA | | | 0 | | 302.4642857 | 0 | |
| Deepwater Warehouse | Fieldwood | 27315.A | | MR-1-C | UNION, TUBE,TYP:QUICK CONNECT,CONN 1 SZ:1/4IN,MFR:PETRO TECHNOLOGIES,PN:130M201, REV H | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 1879.73 | 0 | |
| Deepwater Warehouse | Fieldwood | 27315.A | | MR-2-C | UNION, TUBE,TYP:QUICK CONNECT,CONN 1 SZ:1/4IN,MFR:PETRO TECHNOLOGIES,PN:130M201, REV H | | | EA | | | 0 | | 1224.165 | 0 | |
| Deepwater Warehouse | Fieldwood | 27316.A | | MR-1-D | POTH CONNECTOR, 0.375 IN, PETRO TECHNOLOGIES, PN: 130M591, REV D | | | EA | | | 0 | | 637.615 | 0 | |
| Deepwater Warehouse | Fieldwood | 27317.A | | MR-2-C | PLUG, TEST,TYP:ASSEMBLY,CONN SZ:3/8IN,CONN TYPE:MNPT X TUBE,MFR:PETRO TECHNOLOGIES,PN:130M681 REV E | | | EA | | | 0 | | 917.0166667 | 0 | |
| Deepwater Warehouse | Fieldwood | 27319.A | | MR-2-C | POTH CONNECTOR, 0.500 IN, PETRO TECHNOLOGIES, PN: 130M891, REV B | | | EA | | | 0 | | 701.75 | 0 | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 27325.A | | MR-2-C | ELBOW, PIPE TO TUBE;DEG:90,NOM PIPE SZ:3/8IN,PIPE CONN:NPT,TUBE OD:3/8IN,MFR:PETRO TECHNOLOGIES,PN: 150M261 REV A | | | EA | | | 0 | | 1335.123333 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27326.A | | MR-2-C | VALVE, CHECK;VLV SZ:3/8IN,DSGN RTNG:4200PSI,SPCL FEATRS:WITH BURST DISK,MFR:PETRO TECHNOLOGIES,PN:150M421 | | | EA | | | 0 | | 3297.45 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27489.A | | VERTICAL RACK | VALVE, SUBSURFACE SAFETY;MFR:SCHLUMBERGER,PN:100395464,TYP SURFACE CONTROLLED,TUBING SZ 4-1/2 IN,WT 12.60 lb/ft,PRFILE 3.688 RPT,OD 7.437 IN,CONN TYPE VAM TOP PIN X PIN,WRKNG PRESS 10000 PSI,MN:TRC-II-10 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 470000 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27491.A | | CR TIER 3 | NIPPLE,MFR:SCHLUMBERGER,PN:101368046,TYP DUAL CHECK CHEMICAL INJECTION,CONN SZ 4-1/2 IN,CONN TYPE BT5-6 BOX X PIN,MATL CS,MATL GR S13 CR 110 KSI,APPLI W/ 0.500 IN. PTI TESTABLE CONNECTOR, ½ IN CHECK VALVE AND 6000 PSI PRESSURE BURST DISC | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 2 | | 56720 | 113440 | | |
| Deepwater Warehouse | Fieldwood | 27493.A | | SMALL PARTS ROOM | GAUGE;TYP:TRIPLE,COMPRISING:TUBE/ANNULAR/SNORKEL, CABLE HEAD, EDMCR,MFR:SCHLUMBERGER,PN:100364655,MN:NPQG-EL,T-3 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 168900 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27494.A | | DWW-YARD | CABLE, ELECTRICAL;TYP:TUBING ENCAPSULATED,ARMR:INCOLOY 825,WALL THK:0.035IN,MFR:SCHLUMBERGER,PN:P486039 | 142981 | MC 782 2 DANTZLER COMPLETION | FT | | | 12500 | | 6.85 | 85625 | | |
| Deepwater Warehouse | Fieldwood | 27494.A | | DWW-YARD | CABLE, ELECTRICAL;TYP:TUBING ENCAPSULATED,ARMR:INCOLOY 825,WALL THK:0.035IN,MFR:SCHLUMBERGER,PN:P486039 | 139991 | MC 698 1 BIG BEND FEED COMPLT | FT | | | 12500 | | 6.85 | 85625 | | |
| Deepwater Warehouse | Fieldwood | 27496.A | | DWW-YARD | CONTROL LINE, HYDRAULIC, SINGLE, 0.500 IN X 0.065 IN WT, INCOLOY 825 MATERIAL, WELDED, ENCAPSULATED, TRANSAQUA FILLED, METAL DRUM, NOBLE QCP, SCHLUMBERGER, PN: 4D10000000000-4_MSC | 142980 | MC 782 1 DANTZLER COMPLETION | FT | | | 0 | | 12.568795 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27498.A | | DWW-YARD | CONTROL LINE, HYDRAULIC, TRIPLE, FLATPACK, (3) 0.250 IN X 0.065 IN WT, INCOLOY 825 MATERIAL, WELDED, ENCAPSULATED, TRANSAQUA FILLED, METAL DRUM, NOBLE QCP, SCHLUMBERGER, PN: 2C12C12C1000-4_MSC | 142980 | MC 782 1 DANTZLER COMPLETION | FT | | | 0 | | 12.68605226 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27560.A | | SMALL PARTS ROOM | GAUGE;TYP:TRIPLE,COMPRISING:TUBE/ANNULAR/SNORKEL, CABLE HEAD EDMC-R,MFR:SCHLUMBERGER,PN:100675006,MN:NPQG-EL, T-3 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 186500 | 0 | | |
| Deepwater Warehouse | Fieldwood | 27614.A | | CAN RACK FLOOR | MANDREL, SOLID GAUGE, 4.500, 13CR80, 15.50, BTS-6 PIN X PIN, FOR NHQG-ED DUAL GAUGE SCHLUMBERGER, PN: 101284871 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 51550 | 51550 | | |
| Deepwater Warehouse | Fieldwood | 27615.A | | SMALL PARTS ROOM | DUAL GAUGE ASSEMBLY, NPQG-ED,TUB/TUB, CABLE HEAD, EDMCR, SLB QCP SCHLUMBERGER, PN: 100482238 | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 0 | | 112600 | 0 | | |
| Deepwater Warehouse | Fieldwood | 28038.A | | PUP JOINT RACK-FLOOR | NIPPLE, LANDING;MFR:HALLIBURTON,PN:101831453,TYP RPT,CONN TYPE YLD BTS-8, BOX X PIN,ID 2.813 IN,OD 3-1/2 IN,MATL GR 13CR110,WT 9.30 lb/ft | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 3 | | 3587 | 10761 | | |
| Deepwater Warehouse | Fieldwood | 28241.A | | PUP JOINT RACK-FLOOR | PUP JOINT, CASING;NOM SZ:5-1/2IN,WT:20.00lb/ft,MATL GR:13CR-110,CLASS:MINIMUM YIELD STRENGTH: 11KSI,TOP CONN TYP:SLHT BOX,BOT CONN TYP:SLHT PIN,LG:2ft,APPLI:SET OF SPACEOUT PUPS,MFR:SUPERIOR ENERGY SERVICES,PN:TB-5.50-20.0-F-E-02 | | | EA | | | 2 | | 2344.48 | 4688.96 | | |
| Deepwater Warehouse | Fieldwood | 28364.A | | DWW-YARD C-VAN 429796-0 | CENTRALIZER SUB, 13.625, 88.20, Q125, TSH 523, TYPE R3600 BST-33B, (12) BOW SPRINGS W/ 20.125 OVER BOW, BLACKHAWK, PN: 0101468 | | | EA | | | 15 | | 8636.374667 | 129545.62 | | |
| Deepwater Warehouse | Fieldwood | 28367.A | | DWW-YARD C-VAN CCLU 667229 9 | COLLAR, STOP;TYP:LATCH ON,CASNG OD:28IN,SPCL FEAT:STSCR,MFR:WEATHERFORD,PN:6020028 / 582373 | 203389 | MC 339 SILVERGATE DRL | EA | | | 4 | | 175 | 700 | | |
| Deepwater Warehouse | Fieldwood | 28371.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT;TYP:NON ROTATING,CASNG OD:17-7/8IN,CASNG WT:93.50lb/ft,MATL GR:P110,CONN TYPE:TSH 521,MFR:WEATHERFORD,PN:L47A05QH521PG0A002 / 2052579,MN:L47A | | | EA | | | 1 | | 17553.52944 | 17553.52944 | | |
| Deepwater Warehouse | Fieldwood | 28375.A | | DWW-YARD C-VAN HJCU-1481372 | CENTRALIZER SUB GUIDE SHOE, 11.875, 15.620 OD, 71.80, Q125, TSH 523, WEATHERFORD, MOD 549, PN: 54900LQH523Q12A001 / 2075929 | | | EA | | | 1 | | 6454.486667 | 6454.486667 | | |
| Deepwater Warehouse | Fieldwood | 28376.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT;TYP:NON ROTATING,CASNG OD:11-7/8IN,CASNG WT:71.80lb/ft,MATL GR:Q125,CONN TYPE:TSH 523,MFR:WEATHERFORD,PN:L47A0LQH523Q12A001/2052599,MN:L47A | | | EA | | | 1 | | 14321.54 | 14321.54 | | |
| Deepwater Warehouse | Fieldwood | 28378.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT, 9.875, 62.80, Q125, TSH 523, NR (NON-ROTANING), W/DOUBLE LARGE BORE  FLOW-ACTIVATED ALUMINIUM FLAPPRE VALVE, W/AFU TUBE & 3.500 IN BALL, WEATHERFORD, MOD L47AO, PN: L47A0QH523Q12A002 | | | EA | | | 1 | | 11155.26 | 11155.26 | | |
| Deepwater Warehouse | Fieldwood | 28381.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT,CASNG OD:13-5/8IN,CASNG WT:88.20lb/ft,MATL GR:TN125HC,CONN TYPE:TSH 523,MFR: WEATHERFORD | | | EA | | | 1 | | 12081.36 | 12081.36 | | |
| Deepwater Warehouse | Fieldwood | 28481.A | | OS-R1-S3 | CONNECTOR, TEST, DRY MATE, MINIATURE, TRONIC QCP, PN: DHCE-T1S-AC-01P-000-00 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 2 | | 4500 | 9000 | | |
| Deepwater Warehouse | Fieldwood | 28483.A | | DWW-YARD | CONTROL LINE, SINGLE, LINE, 0.375, 0.065 WT, INCOLOY 825, WELDED, TRANSAQUA FILLED, METAL DRUM, NOBLE QCP, SCHLUMBERGER, PN: 3D1000000000-4_MSC | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 0 | | 10.25 | 0 | | |
| Deepwater Warehouse | Fieldwood | 28581.A | | DWW-YARD C-VAN HJCU-1481372 | GUIDE SHOE, 7.750, 46.10, Q125, HYDL 523, WEATHERFORD MOD M212R,PN:1217209 | 140521 | GC 40 1 KATMAI DEEPENING DRL | EA | | | 1 | | 4932 | 4932 | | |
| Deepwater Warehouse | Fieldwood | 28582.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT, 7.750, 46.10, Q125 NR, HYDL 523, 2-4 BPM, WEATHERFORD MOD M47A, PN: 1264171 | 140521 | GC 40 1 KATMAI DEEPENING DRL | EA | | | 1 | | 11395 | 11395 | | |
| Deepwater Warehouse | Fieldwood | 28622.A | | PUP JOINT RACK-FLOOR | SUB, X-OVER 4.812 IN - 85A BOX X 4.500 IN, 12.750, BT5-8, PIN, 0.59 FT LG, 9KSI, 13HCR, SUPERIOR ENERGY SERVICES PN: 413.48183C | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 1905 | 3810 | | |
| Deepwater Warehouse | Fieldwood | 28623.A | | PUP JOINT RACK-FLOOR | SUB, DBL PIN W/ 4.500 IN, 12.75, BTS-8 BOX X 5.500 IN, 20, SLHT, PIN X 3.500 IN, 9.3, BTS-8, PIN PKSI 13HCR, SUPERIOR ENERGY SERVICES PN: 413.45551C | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 3097.795 | 6195.59 | | |
| Deepwater Warehouse | Fieldwood | 28695.A | | MW-AREA 6 | ASSEMBLY;TYP:INTERNAL TREE CAP,SPCL FEAT:10M, WITH 4.767 SSR PREP, MEC SEALS, ANDANTI-ROTATION KEY (SPRING ACTUATED), TEMP V, MATERIAL: CLASS EE-NL, CONNECTION TYPE: PLS-3, SIZE: 18-3/4 IN,MFR:CAMERON,PN:2182093-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 28695.B | | MW-R15-FL | ASSEMBLY;TYP:INTERNAL TREE CAP,SPCL FEAT:10M, WITH 4.767 SSR PREP, MEC SEALS, ANDANTI-ROTATION KEY (SPRING ACTUATED), TEMP V, MATERIAL: CLASS EE-NL, CONNECTION TYPE: PLS-3, SIZE: 18-3/4 IN,MFR:CAMERON,PN:2182093-04 | | | EA | | | 0 | | 49420 | 0 | | |
| Deepwater Warehouse | Fieldwood | 28696.A | | MR-GENERAL | TUBING HANGER, LOWER PLUG, 4.375 IN, HH, INCONEL 718, INCONEL 925 EXPANDER MANDREL, TITANIUM METAL SEAL, CAMERON, PN: 2731385-01 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 40530 | 0 | | |
| Deepwater Warehouse | Fieldwood | 28696.B | | DWW-YARD C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | TUBING HANGER, LOWER PLUG, 4.375 IN, HH, INCONEL 718, INCONEL 925 EXPANDER MANDREL, TITANIUM METAL SEAL, CAMERON, PN: 2731385-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | EA | | | 1 | | 55988.59 | 55988.59 | | |
| Deepwater Warehouse | Fieldwood | 28697.A | | MR-GENERAL | TREE CAP PLUG, INTERNAL, 4.767 IN, HH, INCONEL 718, INCONEL 925 EXPANDER MANDREL, TITANIUM METAL SEAL, CAMERON, PN: 2731384-01 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 20000 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 28734.A | | MW-R14-3 | PROTECTOR,TUBING CLAMP,VIT TYPE,DUAL CHANNELS,LT CHANNEL(LEFT TO RT)(1)0.433 IN X 0.433 IN,(1) 0.433 IN X 0.990 IN,RT CHANNEL(LEFT TO RT)(1)0.410 IN X 0.790 IN,(2)0.660 IN,(ASTM-A-1011) PROTECTOR 47.2 IN,CANNON,PN: 6000-47-81/67 RPOCSVIT | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 13 | | 520.97 | 6772.61 | | |
| Deepwater Warehouse | Fieldwood | 28735.A | | MW-R14-3 | SLEEVE, INSULATOR, POLYURETHANE TYPE FOR 6000-47-81/67 RPOCSVIT PROTECTOR, CANNON, PN: 72036 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 12 | | 642.2 | 7706.4 | | |
| Deepwater Warehouse | Fieldwood | 29149.A | | MR-1-C | TUBE, 9/16-IN MTM X 0.250 W/ FLUSH FITTING, PETRO TECHNOLOGIES, PN: 120M421 REV R | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 0 | | 2313.63 | 0 | | |
| Deepwater Warehouse | Fieldwood | 29149.A | | MR-1-C | TUBE, 9/16-IN MTM X 0.250 W/ FLUSH FITTING, PETRO TECHNOLOGIES, PN: 120M421 REV R | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 2313.63 | 0 | | |
| Deepwater Warehouse | Fieldwood | 29150.A | | MR-1-C | TUBE, 9/16-IN MTM X 0.500 W/ FLUSH FITTING, PETRO TECHNOLOGIES, PN: 130M091 REV M | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 2741.724082 | 0 | | |
| Deepwater Warehouse | Fieldwood | 29251.A | | MW-R14-3 | CLAMP PROTECTOR, TUBING, OVER COUPLING, ABOVE SAFETY VALVE,W/DUAL CHAN,(L TO R) (L) 0.433 X 0.433 ENCAP.TEC,0.433 X 0.990 ENCAP.BUNDLE, (R) 0.410 X 0.790,0.660 ENCAP LINE,25.2 LENGTH,LCS,CANNON SERVICES, PN: 4500-A-81/67RPOC, DRW: 498, 499 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 6 | | 122.0020766 | 732.0124594 | | |
| Deepwater Warehouse | Fieldwood | 29253.A | | BW-R5-3 | CLAMP PROTECTOR, TUBING, OVER COUPLING, ABOVE SAFETY VALVE, W/DUAL CHAN, (L TO R) (L) 0.433 X 0.433 ENC.TEC,0.433 X 0.990 ENC.BUNDLE, (R) 0.410 X 0.790,0.660 ENCAP LINE,25.2 LENGTH,LCS,CANNON SERVICES, PN: 6000-A-81/67RPOC DRW:NOB-503,504 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 5 | | 134.1 | 670.5 | | |
| Deepwater Warehouse | Fieldwood | 29254.A | | BW-R5-3 | CLAMP, TUBING, MID JOINT, ABOVE SAFETY VALVE, W/DUAL CHAN, (L TO R) (L) 0.433 X 0.433 ENCAP.TEC,0.433 X 0.990 ENCAP BUNDLE, (R) 0.410 X 0.790,0.660 ENCAP LINE,25.2 LENGTH,LCS,CANNON SERVICES, PN: 5500-A-81/67RPOC, DRW: NOB-505, 506 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 2 | | 67.15 | 134.3 | | |
| Deepwater Warehouse | Fieldwood | 30007.A | | OS-R1-S3 | CONNECTOR, TEST, DRY MATE, MINIATURE, TRONIC QCP, PN: DHCE-T16-AC-015-000-00 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 1 | | 6250 | 6250 | | |
| Deepwater Warehouse | Fieldwood | 30008.A | | OS-R1-S3 | CONNECTOR, TEST, TRONIC QCP, PN: DHCE-T23-AA-015-000-00 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 1 | | 8250 | 8250 | | |
| Deepwater Warehouse | Fieldwood | 31062.A | | CAN RACK FLOOR | MANDREL, SOLID GAUGE, 4.500, 13CR, 15.5 PPF, 95 KSI, BTS-6 PIN X PIN, FOR NHQG-ED, DUAL GAUGE, SCHLUMBERGER, PN: 101284871 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 51550 | 51550 | | |
| Deepwater Warehouse | Fieldwood | 31225.A | | DWW-YARD | VALVE,TYP:FORMATION ISOLATION,CONN 1 SZ:7.813IN,CONN 2 SZ:3.7IN,OD:9-5/8IN,MATL GR:13CR,MFR:SCHLUMBERGER,PN:100535565,MN:FIV-II-9X | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | 365000 | 365000 | | |
| Deepwater Warehouse | Fieldwood | 32774.A | | BW-AREA 3 | CROSSOVER, CASING;TOP CONN SZ:10-3/4IN,TOP CONN WT:73.20lb/ft,TOP CONN TYP:HC, MAC II, BOX,BOT CONN SZ:10-1/8IN,BOT CONN WT:79.22lb/ft,BOT CONN TYP:SLSF, PIN,MATL GR:TN-125/HCQ-125,LG:5ft | 138970 | MC 782 1 DANTZLER D&E | EA | | | 1 | | 15837 | 15837 | | |
| Deepwater Warehouse | Fieldwood | 32818.A | | CR TIER 1 | BLAST JOINT, S/C, 3.500 IN, 9.30, 3.859 OD, 13CR110, BTS-8, (20 FT.) | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 8149 | 16298 | | |
| Deepwater Warehouse | Fieldwood | 32821.A | | DWW-YARD | JOINT;SPCL FEAT:SIZE: 3-1/2 IN, WEIGHT: 9.20 LB, MATERIAL GRADE: 13CR110, CONNECTION TYPE: VAM FJL | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 3835 | 3835 | | |
| Deepwater Warehouse | Fieldwood | 32822.A | | PUP JOINT RACK-FLOOR | CASING X-OVER, SUB, 4.500 IN, 15.50, 13CR95, BTS-6 BOX X 3.500 IN, 9.30, BTS-8 PIN X 14.000-IN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 1320 | 1320 | | |
| Deepwater Warehouse | Fieldwood | 32822.A | | PUP JOINT RACK-FLOOR | CASING X-OVER, SUB, 4.500 IN, 15.50, 13CR95, BTS-6 BOX X 3.500 IN, 9.30, BTS-8 PIN X 14.000-IN | | | EA | | | 1 | | 859.65 | 859.65 | | |
| Deepwater Warehouse | Fieldwood | 33269.A | | PUP JOINT RACK- TIER 1 | CROSSOVER, CASING;TYP:SUB,TOP CONN SZ:5-1/2IN,TOP CONN WT:29.70lb/ft,TOP CONN TYP:VAM ACE PIN,BOT CONN SZ:5-1/2IN,BOT CONN WT:23.00lb/ft,BOT CONN TYP:BTS-6 PIN,MATL GR:13CR110,LG:4ft | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | 7015 | 7015 | | |
| Deepwater Warehouse | Fieldwood | 33270.A | | PUP JOINT RACK TIER 4 | JOINT;TYP:COMBO, UPPER,SPCL FEAT:SIZE: 5-1/2 IN, WEIGHT: 23 LB, MATERIAL GRADE: 13CR95, CONNECTION: BTS-6, LENGTH: 12 FT (6 FT PROFILED BOX) | | | EA | | | 1 | | 8197.87 | 8197.87 | | |
| Deepwater Warehouse | Fieldwood | 33270.A | | PUP JOINT RACK- TIER 5 | JOINT;TYP:COMBO, UPPER,SPCL FEAT:SIZE: 5-1/2 IN, WEIGHT: 23 LB, MATERIAL GRADE: 13CR95, CONNECTION: BTS-6, LENGTH: 12 FT (6 FT PROFILED BOX) | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | 12588 | 12588 | | |
| Deepwater Warehouse | Fieldwood | 33271.A | | PUP JOINT RACK TIER 4 | JOINT;TYP:COMBO, LOWER,SPCL FEAT:SIZE: 5-1/2 IN, WEIGHT: 23 LB,FT, MATERIAL GRADE: 13CR95, CONNECTION: BTS-6, LENGTH: 12 FT (6 FT PROFILED PIN) | | | EA | | | 1 | | 8197.87 | 8197.87 | | |
| Deepwater Warehouse | Fieldwood | 33282.A | | BW-R5-3 | SLEEVE, INSULATOR, POLYURETHANE TYPE, 20 LBS, CANNON SERVICES, PN: 72051, DRW: NOB-476, FOR 7.000 IN X 5.50 IN VIT | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 1 | | 592.15 | 7105.8 | | |
| Deepwater Warehouse | Fieldwood | 33294.A | | DWW YARD C-VAN 433422-0 | CENRALIZER SUB, 9.875 IN, 62.80 PPF, Q125 HC, TSH 523, BST-25, MODEL: R3600, BLACKHAWK, PN: 0101504-A | | | EA | | | 0 | | 7120.2708 | 0 | | |
| Deepwater Warehouse | Fieldwood | 33294.A | | DWW-YARD C-VAN 4661048-400T--This C-Van Scrapped and sold to Louisiana Scrap 03/19/19 | CENRALIZER SUB, 9.875 IN, 62.80 PPF, Q125 HC, TSH 523, BST-25, MODEL: R3600, BLACKHAWK, PN: 0101504-A | | | EA | | | 0 | | 7120.2708 | 0 | | |
| Deepwater Warehouse | Fieldwood | 33413.A | | DWW-YARD | JOINT;TYP:PRODUCTION TUBING,SPCL FEAT:SIZE: 3-1/2 IN, WEIGHT: 9.2 LB,FT, HYPER, MATERIAL GRADE: 13CR110, CONNECTION TYPE: VAM FJL, TUNGSTEN CARBIDE COATED | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 3 | | 7633.333333 | 22900 | | |
| Deepwater Warehouse | Fieldwood | 33926.A | | DWW-YARD C-VAN HJCU-1481172 | GUIDE SHOE, CENTRALIZER, 9.875 IN, 62.80#, HCQ-125, 549R HYD 523, 365 (0.171) BOWS, 13.500 IN OD, CONCENTRIC CEMENT NOSE W/6.03 IN ID AND 0.375 IN ALUM BAR, DRIFT 8.500/OD 10.625, WEATHERFORD, PN: 549RDQH523Q12A001 | | | EA | | | 1 | | 7450.466667 | 7450.466667 | | |
| Deepwater Warehouse | Fieldwood | 34130.A | | PR-R1-2 | CONNECTOR, PLUG, DRY MATE, (TEC TO HANGER), TRONIC QCP, PN: DHCE-AS1-BQ-015-ALL-HN | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 12550 | 0 | | |
| Deepwater Warehouse | Fieldwood | 34130.A | | PR-R1-2 | CONNECTOR, PLUG, DRY MATE, (TEC TO HANGER), TRONIC QCP, PN: DHCE-AS1-BQ-015-ALL-HN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 18610 | 0 | | |
| Deepwater Warehouse | Fieldwood | 34449.A | | BW-AREA 2 | CLAMP, TUBING,MID JOINT,W/STANDOFF,(LEFT TO RIGHT)11MMX11MM ENCAP TEC,0.660IN OD ENCAP CI LINE(LOWER),0.535 IN OD ENCAP CI LINE(UPPER),25.2IN LENGTH,LOW CARBON STEEL,CANNON SERVICES,PN:6090-8-68PG1-53KT,DRAW NOB5358,536B | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 2 | | 1005.25 | 2010.5 | | |
| Deepwater Warehouse | Fieldwood | 34553.A | | BW-AREA 3 | SUB, RUPTURE DISC, 16.000 IN, 97.00, Q-125, HYDRIL 511, PIN X BOX X 4 FT W/ 2 PORTS 180 DEGREES APART AND EPRD DISKS INSERTED, RATED AT 1600 PSIG AT 150 DEGREES FARENHEIT W/ 7000 PSIG BACK PRESSURE | 201560 | GC 40 O2 Katmai 2 | EA | | | 1 | | 33978.07 | 33978.07 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 35044.A | | MR-1-A | DISK, TYPE: RUPTURE, EXTERNAL, MFG: FISK, PN: A9034-7, 1600 PSIG AT 150 DEG F W/7000 PSID MINIMUM BACK PRESSURE, APPLI: FOR HUNTING EQUIPMENT | | | EA | | | 2 | | 5268.85 | 10537.7 | | |
| Deepwater Warehouse | Fieldwood | 35048.A | | DWW-YARD | JOINT,SPCL FEAT:NOMINAL SIZE: 5-1/2 IN, WEIGHT: 23 LB, MATERIAL GRADE: 13CR95, CONNECTION TYPE: VAM, FIL, WITH PRODUCTION TUBING (LG: 30 FT) | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 4 | | 4396.5 | 17586 | | |
| Deepwater Warehouse | Fieldwood | 35536.A | | DWW YARD C_VAN 429796-0 | ASSEMBLY, CENTRALIZER, SUB, 13.625 IN, R3600, BST-25, (14) BOW SPRING, 18.625 IN OVER BOW, TEANRISHYDRIL WEDGE 523, DOPELESS, 88.20 PPF, API Q125, BLACKHAWK, PN: 0101468 | | | EA | | | 8 | | 8889.644444 | 71117.15556 | | |
| Deepwater Warehouse | Fieldwood | 35536.A | | DWW YARD C-VAN 433422-0 | ASSEMBLY, CENTRALIZER, SUB, 13.625 IN, R3600, BST-25, (14) BOW SPRING, 18.625 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 88.20 PPF, API Q125, BLACKHAWK, PN: 0101468 | | | EA | | | 1 | | 8889.644444 | 8889.644444 | | |
| Deepwater Warehouse | Fieldwood | 35537.A | | BW-AREA 3 | CENTRALIZER, SUB, 11.875 IN, R3600, BST-25B, (12) BOW SPRING, 16.750 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 71.80 PPF, API Q125, BLACKHAWK, PN: 0101781 | 144040 | MC 948 4 GUNFLINT D&E | EA | | | 2 | | 12624.78494 | 25249.56988 | | |
| Deepwater Warehouse | Fieldwood | 35537.A | | BW-AREA 3 | CENTRALIZER, SUB, 11.875 IN, R3600, BST-25B, (12) BOW SPRING, 16.750 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 71.80 PPF, API Q125, BLACKHAWK, PN: 0101781 | | | EA | | | 5 | | 7948.575556 | 39742.87778 | | |
| Deepwater Warehouse | Fieldwood | 35537.A | | BW-AREA 3 | CENTRALIZER, SUB, 11.875 IN, R3600, BST-25B, (12) BOW SPRING, 16.750 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 71.80 PPF, API Q125, BLACKHAWK, PN: 0101781 | 203389 | MC 339 SILVERGATE DRL | EA | | | 2 | | 12205.20556 | 24410.41111 | | |
| Deepwater Warehouse | Fieldwood | 35538.A | | DWW YARD C-VAN 402189-0 | CENTRALIZER, SUB, 9.875 IN, R3600, BST-25, (8) BOW SPRING, 14.875 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 62.80 PPF, API Q125, BLACKHAWK, PN: 0101780 | | | EA | | | 7 | | 5767.368571 | 40371.58 | | |
| Deepwater Warehouse | Fieldwood | 35538.A | | DWW YARD C-VAN 402189-0 | CENTRALIZER, SUB, 9.875 IN, R3600, BST-25, (8) BOW SPRING, 14.875 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 62.80 PPF, API Q125, BLACKHAWK, PN: 0101780 | 203389 | MC 339 SILVERGATE DRL | EA | | | 4 | | 8855.92 | 35423.68 | | |
| Deepwater Warehouse | Fieldwood | 35538.A | | DWW YARD C-VAN 402189-0 | CENTRALIZER, SUB, 9.875 IN, R3600, BST-25, (8) BOW SPRING, 14.875 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 62.80 PPF, API Q125, BLACKHAWK, PN: 0101780 | 142843 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 8855.92 | 17711.84 | | |
| Deepwater Warehouse | Fieldwood | 35538.A | | DWW-YARD C-VAN 045905 | CENTRALIZER, SUB, 9.875 IN, R3600, BST-25, (8) BOW SPRING, 14.875 IN OVER BOW, TENARISHYDRIL WEDGE 523, DOPELESS, 62.80 PPF, API Q125, BLACKHAWK, PN: 0101780 | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 8855.92 | 17711.84 | | |
| Deepwater Warehouse | Fieldwood | 35650.A | | MR-5-D | RING,TYP:EXPANDING NO-GO,ID:5-1/4IN,APPLN:SSR WIRELINE ISOLATION SLEEVE,MFR:CAMERON,PN:2748112-01 | | | EA | | | 1 | | 1782.95 | 1782.95 | | |
| Deepwater Warehouse | Fieldwood | 36234.A | | PUP JOINT RACK-FLOOR | PLUG, BULL,NOM SZ:3-1/2IN,CONN TYPE:VAM FJL BOX,WT:9.20lb/ft,MATL GR:13HCR,SPCL FEAT:OD: 3-1/2 IN, MINIMUM YIELD STRENGTH: 15 KSI,MFR:SUPERIOR ENERGY SERVICES,PN:413.55349C | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 2 | | 1242.5 | 2485 | | |
| Deepwater Warehouse | Fieldwood | 36235.A | | PUP JOINT RACK-FLOOR | PLUG, BULL,NOM SZ:5-1/2IN,CONN TYPE:SLHT BOX,WT:20.00lb/ft,MATL GR:13HCR,SPCL FEAT:OD: 6.062 IN, MINIMUM YIELD STRENGTH: 15 KSI,MFR:SUPERIOR ENERGY SERVICES,PN:413.55019C | 139991 | MC 698 1 BIG BEND FEED COMPLT | EA | | | 2 | | 1670 | 3340 | | |
| Deepwater Warehouse | Fieldwood | 38048.A | | DWW-YARD | PUP JOINT, 10.125 IN, 79.22#, HCQ-125, HUNTING, SLSF, PIN X BOX, (18 FT) | | | EA | | | 1 | | 3930.47 | 3930.47 | | |
| Deepwater Warehouse | Fieldwood | 38624.A | | DWW-YARD C-VAN HJCU-1339199 | EYE, LIFTING, 50 TON, STANDARD DUTY, FOR 17 TON SHACKLE, DRIL-QUIP, PN: 2-304782-02 | | | EA | | | 0 | | 421.4841667 | 0 | | |
| Deepwater Warehouse | Fieldwood | 38698.A | | DWW-YARD C-VAN HJCU-1481372 | CENTRALIZER, SUB, 14.000 IN, G5, S49, Q125, HYDRIL 523, 113.0, 19.50 OD, WEATHERFORD, PN: 2245955 | | | EA | | | 1 | | 7199.51 | 7199.51 | | |
| Deepwater Warehouse | Fieldwood | 40232.A | | PR-R1-2 | KIT, RE-DRESS, FOR TRONIC DRY-MATE PLUG CONNECTOR, TEC TO HANGER, TRONIC QCP, SCHLUMBERGER, PN: BNX-TC6A-555 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 0 | | 11892 | 0 | | |
| Deepwater Warehouse | Fieldwood | 40269.A | | MR-1-C | CROSSOVER, FITTING, 0.375 IN PTI MALE X 0.500 IN PTI FEMALE, (2) VITON O-RINGS, 0.500 IN VITON PLUS ASSY, 0.500 IN FRONT/REAR FERRULE, 0.500 IN PTCM NIPPLE,PETRO TECHNOLOGIES, PN: 1704371 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 2748.04 | 0 | | |
| Deepwater Warehouse | Fieldwood | 40555.A | | MR-5-F | WHIP, TEST, ELECTRICAL, 7-WAY FLYING RECEPTACLE, SOCKETS, PINS, W/ PIGTAILS, MFR: TELEDYNE, PN:1110542, SUP:AKER, MN: 10121123 | | | EA | | | 4 | | 3526 | 14104 | | |
| Deepwater Warehouse | Fieldwood | 40565.A | | MR-2-C | CAP, PROTECTION, UNIVERSAL, W/ HANDLE, ROV FLYING, MFR: TELEDYNE, PN: 1110544, SUP: AKER, MN: 10055384 | | | EA | | | 0 | | 1626 | 0 | | |
| Deepwater Warehouse | Fieldwood | 40572.A | | MW-R14-1 | PLATE, TESTING/FLUSHING REMOVABLE, 12-WAY FOR OUTBOARD MULTI-QUICK CONNECTION P/N 1011125 | AFE FW193004 | TROIKA | EA | | | 1 | | 31828 | 31828 | | |
| Deepwater Warehouse | Fieldwood | 40692.A | | VERTICAL RACK | VALVE, SAFETY, SUBSURFACE, 5.500 IN, 26.0#, 3.562 RPT, VAM TOP HC PIN X PIN, API 14A/ISO 10432 CLASS 2, 15000 PSI, VITON ORINGS, MF TEFLON SEAT, MP3SN SPRING, 300 DEG F MAX WORKING TEMP, SCHLUMBERGER | 143752 | MC 948 4 GUNFLINT COMPLETION | EA | | | 0 | | 743000 | 0 | | |
| Deepwater Warehouse | Fieldwood | 40906.A | | BW-AREA 3 | PUP JOINT, CASING,NOM SZ:9-3/8IN,WT:39.00lb/ft,MATL GR:HCQ-125,TOP CONN TYP:HYDRIL 513 PIN,BOT CONN TYP:HYDRIL 513 BOX,LG:5ft | 140829 | GC 40 1 KATMAI D&E | EA | | | 1 | | 3316.55 | 3316.55 | | |
| Deepwater Warehouse | Fieldwood | 41084.A | | BW-RS-3 | CLAMP,TUBING,MID JOINT,W/STANDOFF,BLOW THE SCSSV W/DUAL CHAN,(L TO R)0.433X0.433 ENCAP TEC,0.433X0.990 ENCAP BUNDLE,(R)0.660 ENCAP LINE,25.2 IN GUARD LENGTH,LCS,8.79IN CALC COMB RUN OD,CANNON,PN: 5125-A-81/67RP DCG2.17XT | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 2 | | 1675 | 3350 | | |
| Deepwater Warehouse | Fieldwood | 41085.A | | BW-RS-3 | CLAMP, PROTECTOR, SPLICE, TUBING,0.433X0.433 ENCAP TEC,0.433X0.990ENCAP BUNDLE,ASTM-1-1011,40.2IN CLAMP LENGTH,CANNON, PN: 4500-40-81/12/81 | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 5 | | 1005.25 | 5026.25 | | |
| Deepwater Warehouse | Fieldwood | 41086.A | | BW-RS-3 | CLAMP,PROTECTOR,SPLICE,TUBING, 0.433X0.433 ENCAP TEC,0.433X0.990 ENCAP BUNDLE,ASTM-A-1011,40.2IN CLAMP LENGTH,CANNON, PN: 6000-40/C-81-12-81/67RPOC | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 3 | | 1115.3 | 3345.9 | | |
| Deepwater Warehouse | Fieldwood | 41391.A | | MR-1-A | SEAL, METAL, MSBMS-II-UO BODY, F/5-15K HANGER, INCONEL 625, SILVER PLATED, 4.686 OD X 3.913 ID, 0.450 LG, F/HALLIBURTON CROWN PLUG, PN: P1000011680 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 2364 | 2364 | | |
| Deepwater Warehouse | Fieldwood | 41393.A | | MR-2-E | SEAL, METAL, SBMS-II BODY, F/18 0.750-15K HANGER, INCONEL 718, SILVER PLATED, 16.734/16.739 OD X 15.701/15.706 ID, UPPER GALLEY SEAL F/EXHT TUBING HANGER, FMC, PN: P207484 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 14836 | 44508 | | |
| Deepwater Warehouse | Fieldwood | 42096.B | | MW-AREA 1 | ASSEMBLY, JUNCTION PLATE, IWOCS, 12-WAY REMS/12L, UO, AKER, PN: BB11-000728-15 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 62637 | 62637 | | |
| Deepwater Warehouse | Fieldwood | 42096.C | | MW-AREA 1 | ASSEMBLY, JUNCTION PLATE, IWOCS, 12-WAY REMS/12L, UO, AKER, PN: BB11-000728-15 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 62637 | 62637 | | |
| Deepwater Warehouse | Fieldwood | 42097.A | | MW-R17-3 | ASSEMBLY, JUNCTION PLATE, FIXED, 12-WAY, FLUSHING, UO, AKER, PN: BB11-000728-03 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 52032 | 52032 | | |
| Deepwater Warehouse | Fieldwood | 43377.A | | DWW YARD C-VAN HJKU 616220-6 | ASSEMBLY, PROD. TUBING HANGER, 4.690 IN - 10M, W/ 5.000 IN SIDE OUTLET, 4.375 IN,SSR WIRELINE, PLS-3, 5.500 X 26.000 VAM TOPBOX CONNECTION, (7) CONTROL LINES, SINGLE PIN ELEC, CAMERON | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 696270.8 | 0 | | |
| Deepwater Warehouse | Fieldwood | 43387.A | | DWW-YARD | ELECTRIC CONTROL LINE, GAUGE TEC, 0.049 WT, INC 825, ENCAPSULATED, SLB QCP, SCHLUMBERGER, PN: P486119 | 142980 | MC 782 1 DANTZLER COMPLETION | FT | | | 12500 | | 7.95 | 99375 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 43663.A | | MW-AREA 3 | HANGER, LINER, EXPANDABLE, VERSAFLEX, QUICK-LOCK, 11.875 IN, 71.8#, HCQ-125, HYD 523 X 14.000 IN, 113#, HCQ-125, HYD 523, HALLIBURTON, PN: 101918791 | 201560 | GC 40 02 Katmai 2 | EA | | | 1 | | 133000 | 133000 | | |
| Deepwater Warehouse | Fieldwood | 43882.A | | PUP JOINT RACK-TIER 1 | SUB, CROSSOVER, 5.500 IN, 26#, HYPER 13CR110, VAM TOP PIN X 6.000 IN, 30.90#, VAM TOP, KP PIN X 4 FT | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 1 | | 5526 | 5526 | | |
| Deepwater Warehouse | Fieldwood | 43920.A | | PUP JOINT RACK-TIER 1 | PUP JOINT, CROSSOVER, 5.500 IN, 23#, HYPER 13CR110, BTS-6, BOX X 6.000 IN, 30.90#, VAM TOP, KP PIN X 4 FT | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 1 | | 5021 | 5021 | | |
| Deepwater Warehouse | Fieldwood | 43929.A | | PUP JOINT RACK-TIER 5 | COUPLING, FLOW, 4.500 IN, 13.50#, HYPER 13CR110, BTS-8, BOX X 4.500 IN, 15.50#, BTS-6, PIN, CROSSOVER X 8 FT | 142980 | MC 782 1 DANTZLER COMPLETION | EA | | | 1 | | 6680 | 6680 | | |
| Deepwater Warehouse | Fieldwood | 44154.A | 1481372 | DWW-YARD C-VAN HJCU | CENTRALIZER SUB, ROT, 7.750 IN, 541#, Q125HYDRIL 523, 46.10, 11.25 OD, WEATHERFORD, PN: 1217216 | 140521 | GC 40 1 KATMAI DEEPENING DRL | EA | | | 2 | | 7232 | 14464 | | |
| Deepwater Warehouse | Fieldwood | 44727.B | | DWW-YARD | REEL, FLYING LEAD, HYDRAULIC, DEPLOYMENT AND INSTALLATION, CARBON STEEL, COATED, W/ 4 WAY LIFTING SLING, STACKABLE, OCEANEERING, PN: 119075-034951 REV AB | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 3 | | 36607.5 | 109822.5 | | |
| Deepwater Warehouse | Fieldwood | 44727.B | | DWW-YARD | REEL, FLYING LEAD, HYDRAULIC, DEPLOYMENT AND INSTALLATION, CARBON STEEL, COATED, W/ 4 WAY LIFTING SLING, STACKABLE, OCEANEERING, PN: 119075-034951 REV AB | 128021 | MC 519 DESIGN | EA | | | 0 | | 36607.5 | 0 | | |
| Deepwater Warehouse | Fieldwood | 44734.B | | DWW-YARD | FLYING LEAD,HYDRAULIC,M1 REMOVABLE PLATE,EACH END W/ 13 EA: 0.500 IN R5 FEMALE COUPLERS, 0.500 IN SUPER DUPLEX TUBE STUBS,15K PSI,CS COATED TERMINATION ASSY,9 SEGMENT VERTEBRATE BEND RESTRICTOR,TUBE SECURING ARMOR POT, 200 FT,OCEANEERING | 128021 | MC 519 DESIGN | EA | | | 1 | | 124653.75 | 124653.75 | | |
| Deepwater Warehouse | Fieldwood | 44737.A | | MW-R3-1 | FLYING LEAD, ELECTRICAL, ROV, 200 FT, INCLUDES:7-WAY CABLE END PLUG(PINS) W/45 DEG INTEGRAL TERMINATION TITANIUM CP PN:1025114, 200 FT 4-WAY FLUID FILLED HOSE ASSY 14 AWG,7-WAY RECEPTACLE(SOCKETS) PN:1025089,ODI,PN:1050822 | 128021 | MC 519 DESIGN | EA | | | 1 | | 13746 | 13746 | | |
| Deepwater Warehouse | Fieldwood | 44749.B | | DWW YARD C-VAN HLXU 616220 | ASSEMBLY, PRESSURE CAP, 8.000 IN, 15000 PSI, FLOWLINE HUB, 6.392 IN SEAL BORE, W/ 9/16 IN AUTOCLAVE PORT, PMT W/ 6 ANODES, (PLUG W/ 2 O-RINGS), CAMERON, PN: 2181509-06 | 128021 | MC 519 DESIGN | EA | | | 1 | | 67041 | 67041 | | |
| Deepwater Warehouse | Fieldwood | 45223.E | | DWW-YARD | SUPERIOR ENGINE, 1,600 HP, F/COMPRESSOR, OM: 240BG, SN: 33268 | | | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 45240.A | | DWW YARD C-VAN CPIU 030112-0 | ASSY, FLOODING CAP, 8.000 IN, 10K, CVL HUB, PN: 2165232-05 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 127425 | 127425 | | |
| Deepwater Warehouse | Fieldwood | 45241.A | | DWW YARD C-VAN HLXU 616220-6 | ASSY, DEBRIS CAP, 6 IN, W/ PMT INTERFACE, PN: 2236048-04 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 3 | | 9756 | 29268 | | |
| Deepwater Warehouse | Fieldwood | 45250.A | | MW-R17-FL | FUNNEL, MFG: CLAMPON, PN: 924-16822-002, TYPE: DEEPWATER FUNNEL & CLAMP, APPLI: FOR ACOUSTIC SAND, SPEC: AKS PN: 8815-000450-46 REV 1 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 9664 | 0 | | |
| Deepwater Warehouse | Fieldwood | 45252.A | | BW-R3-2 | ASSY, BORE PROTECTOR, 9.407 DIA, BORE NOM, PN: 2141626-10 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 90485 | 90485 | | |
| Deepwater Warehouse | Fieldwood | 45253.A | | MR-GENERAL | SET, SCM TEST, 9600 BAUD, W/SOFTWARE, PN: 6000000649 | 143096 | | EA | | | 0 | | 112934.32 | 0 | | |
| Deepwater Warehouse | Fieldwood | 45254.A | | MW-R3-3 | EFL, 4-WAY, EDU-TREE, 600 FT, PN: 6000000659 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 50934 | 50934 | | |
| Deepwater Warehouse | Fieldwood | 45255.A | | MW-R17-1 | PLATE, MQC, OB, MARINE GROWTH COVER, 12-W, PN: 6000001101 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 110390.3 | 220780.6 | | |
| Deepwater Warehouse | Fieldwood | 45259.A | | MR-3-O | COVER, ODI ELECTRICAL, DUMMY POD, PN: 6000001111 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 151110 | 302220 | | |
| Deepwater Warehouse | Fieldwood | 45265.C | | MW-R16-1 | ASSY, MQC PLATE, IWOCS, REM, 12-WAY/LINE F/ ST-12, AKER, PN: 10058761 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 25272.5 | 0 | | |
| Deepwater Warehouse | Fieldwood | 45276.A | | MW-AREA 5 | ASSY, PRE-FAT PRODUCTION, G2 TUBING HANGER, F/ ST-13 | 143096 | | EA | | | 0 | | 5466.49 | 0 | | |
| Deepwater Warehouse | Fieldwood | 45311.B | | DWW-YARD | FLYING LEAD, THERMO-PLASTIC HYDRAULIC (TPHFL), HDU, 8-WAY, W/ADDED FLOATATION MODULE, 275 FT | | | EA | | | 1 | | 186608.96 | 186608.96 | | |
| Deepwater Warehouse | Fieldwood | 45500.A | | DWW-YARD | TUBING, PRODUCTION, 3.500 IN, 9.3#, 13CR95, BTS-8 | 139991 | MC 698 1 BIG BEND FEED COMPLT | FT | | | 126 | | 36.5 | 4599 | | |
| Deepwater Warehouse | Fieldwood | 45502.A | | BW-R6-FL | SLEEVE, LOCK DOWN, (LDS), CONFIRMATION TOOL, 27.000 IN DIA, ANODIZED ALUMINUM TOP PLATE, PLATE BOLTED TO DELRIN LEGS CONNECTED TO A DELRIN BOTTOM PLATE, FITS WELLHEAD AT 8.77IN, W/PELICAN SHIPPING BOX, FUGRO | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 10400 | 20800 | | |
| Deepwater Warehouse | Fieldwood | 45586.B | | MR-GENERAL | KIT, VALVE, 3-WAY, INCLUDES SPEC SHEET, OMM AND MOB DOC, OCEANEERING FORGING, STRESS JOINT, RTI ENERGY SYSTEMS, DOCUMENT NUMBER: GUN-SS-SSF-RIS-SOW-0001 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 5887.5 | 11775 | | |
| Deepwater Warehouse | Fieldwood | 45667.A | | DWW-YARD | PUP JT, 7.750 IN, 46.10#, HCQ125, TSH, 523 8XP @ 23 (25 FT) | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 431151 | 431151 | | |
| Deepwater Warehouse | Fieldwood | 45989.A | | DWW-YARD | PUP JT, 7.750 IN, 46.10#, HCQ125, TSH, 523 8XP @ 23 (25 FT) | 140521 | GC 40 1 KATMAI DEEPENING DRL | EA | | | 1 | | 6220 | 6220 | | |
| Deepwater Warehouse | Fieldwood | 46449.A | | DWW-YARD C-VAN TTNU9761014SG1 (CLIMATE CONTROLLED) | MODULE, SUBSEA CONTROL, FOR GALAPAGOS, CAMERON, PN: 223053-61 | 131068 | MC 519 FABRICATION | EA | | | 0 | | 928557 | 0 | | |
| Deepwater Warehouse | Fieldwood | 46461.A | | DWW-YARD-C-VAN 429796 | CAP, PRESSURE, FEMALE, FITTED W/A 2-WAY 0.500IN BALL VALVE AND 0.500 FT HOT STAB, API 17D, TYPE A, MODEL: UH-575-550, UNITECH, PN: 31915 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 102794.75 | 102794.75 | | |
| Deepwater Warehouse | Fieldwood | 46464.A | | MR-S-C | KIT, SEAL, MODEL: UH-575/550, UNITECH, PN: 25491 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 6 | | 7362.5 | 44175 | | |
| Deepwater Warehouse | Fieldwood | 46465.A | | DWW-YARD C-VAN DNVU-2051995 | KIT, TOOL, MODEL: UH-575/550, UNITECH, PN: 25492 | 142679 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 9500 | 9500 | | |
| Deepwater Warehouse | Fieldwood | 46465.A | | MR-S-C | KIT, TOOL, MODEL: UH-575/550, UNITECH, PN: 25492 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 2 | | 12112.5 | 24225 | | |
| Deepwater Warehouse | Fieldwood | 46465.A | | MR-S-C | KIT, TOOL, MODEL: UH-575/550, UNITECH, PN: 25492 | 139057 | | EA | | | 1 | | 12112.5 | 12112.5 | | |
| Deepwater Warehouse | Fieldwood | 46466.A | | MR-1-F | CAP, PROTECTION, FOR FEMALE CONNECTOR UH-575/550, UNITECH, PN: 27387 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 2 | | 8692.5 | 17385 | | |
| Deepwater Warehouse | Fieldwood | 46467.A | | MR-1-F | PLUG, PROTECTION, FOR MALE CONNECTOR UH-575/550, UNITECH, PN: 27388 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 2 | | 8312.5 | 16625 | | |
| Deepwater Warehouse | Fieldwood | 46468.A | | DWW-YARD C-VAN DNVU-2051995 | CASE, PELICAN, FOR STORAGE OF FEMALE CONNECTOR 32392, UNITECH, PN: 32660 | 142679 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 2500 | 5000 | | |
| Deepwater Warehouse | Fieldwood | 46586.A | | DWW-YARD-C-VAN CCLU 667229 | INSER,CHOKE,RETRIEVABLE,ADJUSTABLE,HRV P35-15K,GALAPAGOS SPARE,CV 94 FLOW TRIM SCB TUNGSTEN CARBID,W/STAINLESS CARRIERS,VERTICAL CLAMP ACCESS 180 DEG,W/API 17D CLASS 5 DRIVE INTERFACE,FOR MATER FLO VALVE,MASTER FLO,PN:42005-016-02 | 128021 | MC 519 DESIGN | EA | | | 1 | | 151025 | 151025 | | |
| Deepwater Warehouse | Fieldwood | 46638.A | | DWW-YARD | STEEL TUBE FLYING LEAD (STFL), 7 LINE, 12 WAY AKER X 14 WAY OIE M1, 60M, (1+1 SPARE), AKER SOLUTIONS, PN: 10233216 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 127242 | 127242 | | |
| Deepwater Warehouse | Fieldwood | 46641.A | | DWW-YARD | STEEL TUBE FLYING LEAD (STFL), 9 LINE, 12 WAY AKER X 14 WAY OIE M1, 60 M (1+1 SPARE), AKER SOLUTIONS, PN: 10233217 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 135732 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 46643.A | | DWW-YARD C-VAN CPIU 0301122261 | SAND DETECTOR, ACOUSTIC, CLAMP-ON X 6 WAY ODI MALE, 60M, AKER SOLUTIONS, NEW PN: 10243498,OLD PN:10233219 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 107180 | 0 | | |
| Deepwater Warehouse | Fieldwood | 46645.A | | MW-RS-2 | ELECTRICAL FLYING LEAD, ODI 90 DEG, 8 WAY MALE X 8 WAY FEMALE, 60M (1+1 SPARE), PN: B815-000778-20 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 32766 | 32766 | | |
| Deepwater Warehouse | Fieldwood | 46646.A | | DWW-YARD C-VAN 433422 0 | ELECTRICAL FLYING LEAD, ODI 90 DEG, 4 WAY MALE X 4 WAY FEMALE, 60M (15+2 SPARE), PN: B815-000776-20 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 34215 | 68430 | | |
| Deepwater Warehouse | Fieldwood | 46660.B | | DWW-YARD C-VAN 2051995 000695-37 | CONNECTOR, TEST, 8 WAY, ODI FEMALE, W/PIGTAIL, AKER SOLUTIONS, PN: B815-000695-37 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 1661.25 | 0 | | |
| Deepwater Warehouse | Fieldwood | 46673.A | | BW-AREA 3 | LIFT SUB, 6.625 IN OD, 5-135, W/4.500 IN IF PIN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 14277 | 28554 | | |
| Deepwater Warehouse | Fieldwood | 46764.B | | MW-R15-2 | ASSEMBLY, FLUSHER, DUAL PATH, LF/LF CONFIGURATION, ROV RETRIEVABLE DOCKING CANISTER, 10000 PSI RATED WORKING PRESSURE, SKOFLO, PN: 21188-3 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 22842.75 | 22842.75 | | |
| Deepwater Warehouse | Fieldwood | 46996.A | | MR-3-C | FITTING, 0.750 IN MTM X 0.375 IN TUBE W/FLUSH FITTING, PETRO TECHNOLOGIES, PN: 120M841 REV G | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 0 | | 3576.4 | 0 | | |
| Deepwater Warehouse | Fieldwood | 46997.A | | MR-3-C | FITTING, 0.750 IN MTM X 0.250 IN TUBE W/FLUSH FITTING, PETRO TECHNOLOGIES, PN: 130M751 REV G | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 0 | | 3236.5 | 0 | | |
| Deepwater Warehouse | Fieldwood | 46998.A | | MR-3-C | FITTING, 0.750 IN MTM X 0.500 IN POTHI SHORT W/FLUSH FITTING, PETRO TECHNOLOGIES, PN: 160M141 REV B | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 0 | | 4996.12 | 0 | | |
| Deepwater Warehouse | Fieldwood | 47020.A | | DWW-YARD | TUBING, 4.500 IN, 17.00#, 0380 IN, VM110-13CRSS, DRIFT 3.615 IN VAM TOP, R3 | | MC 948 4 GUNFLINT COMPLETION/L | FT | | | 81.33 | | 81.33 | 6614.5689 | | |
| Deepwater Warehouse | Fieldwood | 47025.A | | DWW-YARD | PUP, JT, 4.500 IN, 17.00#, 0.380 IN, VM110-13CRSS, DRIFT 3.615 IN VAM TOP, 10 FT | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 3 | | 3150.84 | 9452.52 | | |
| Deepwater Warehouse | Fieldwood | 47059.A | | DWW-YARD C-VAN HJCU 1339199 | ASSEMBLY, SEAL, EMERGENCY, FOR 18.750 SS-15 SYSTEM, H2S, DRIL-QUIP, PN: 2-402060-02 | | | EA | | | 0 | | 23516.36 | 0 | | |
| Deepwater Warehouse | Fieldwood | 47342.A | | PUP JOINT RACK-TIER 5 | FLO TOOL, 4.500 IN, 15.50#, 13CR110, BTS-6, LOWER BCSD X 13 FT (SQUARE SHOULDER W/GROOVE) | 126136 | MC 519 2 DRL/EVAL/P&LA | EA | | | 1 | | 8594 | 8594 | | |
| Deepwater Warehouse | Fieldwood | 47350.A | | PUP JOINT RACK-FLOOR | CROSSOVER, SUB, 4.500 IN, 12.60#, 13CR95, VAM TOP BOX X 5.500 IN, 23#, BTS-6 PIN X 14.000 IN | 126137 | MC 519 2 BP 01 | EA | | | 1 | | 950 | 950 | | |
| Deepwater Warehouse | Fieldwood | 47353.B | | PUP JOINT RACK-FLOOR | CROSSOVER, SUB, 4.500 IN, 15.50#, HYPER 13CR110, BTS-6 BOX X 5.500 IN, 17#, VAM TOP PIN X 2 FT | 126137 | MC 519 2 BP 01 | EA | | | 1 | | 3595.5 | 3595.5 | | |
| Deepwater Warehouse | Fieldwood | 47358.B | | PUP JOINT RACK-FLOOR | NIPPLE, 3.500 IN, 9.30#, 13CR110, BCS, (2.813 IN P.B.) (THREADED 3.500 IN 9.20# VAM F/L BOX/PIN) | 126137 | MC 519 2 BP 01 | EA | | | 1 | | 4435.5 | 4435.5 | | |
| Deepwater Warehouse | Fieldwood | 47383.A | | PUP JOINT RACK-FLOOR | PUP JT, 6.000IN, 30.38#, 13CR115, VAM TOP KP PIN X PIN X 2FT | | | EA | | | 1 | | 2778.34 | 2778.34 | | |
| Deepwater Warehouse | Fieldwood | 47393.A | | PUP JOINT RACK-TIER 2 | PUP JT, 4.500IN, 15.50#, HYPER 13CR110, BTS-6 S/C X 4 FT (SQUARE SHOULDER) | | | EA | | | 1 | | 327.25 | 327.25 | | |
| Deepwater Warehouse | Fieldwood | 47401.A | | PUP JOINT RACK-FLOOR | RABBIT, DRIFT, 3.720IN OD, PVC X 14.000 IN | | | EA | | | 1 | | 88.49 | 88.49 | | |
| Deepwater Warehouse | Fieldwood | 47403.A | | PUP JOINT RACK-FLOOR | RABBIT, DRIFT, 4.500IN, 15.50#, BTS-6, PV5 X 14.000 IN (3.701IN OD) | | | EA | | | 1 | | 107.56 | 107.56 | | |
| Deepwater Warehouse | Fieldwood | 47405.B | | PUP JOINT RACK-TIER 5 | FLO TOOL, 4.500IN, 15.50#, HYPER 13CR110, VAM TOP BOX X 4.500IN, 15.50#, BTS-6, S/C PIN (SQUARE SHOULDER), LOWER CROSSOVER BCSD X 14 FT | 126137 | MC 519 2 BP 01 | EA | | | 1 | | 6962.25 | 6962.25 | | |
| Deepwater Warehouse | Fieldwood | 47416.B | | PUP JOINT RACK-TIER 5 | FLO TOOL, 4.500IN, 15.50#, HYPER 13CR110, BTS-6, S/C BOX (SQUARE SHOULDER) X 4.500IN, 15.10#, VAM TOP BOX, UPPER, BCSD X 14 FT | 127684 | VK 917 1 ST2 COMPLETE | EA | | | 1 | | 6962.25 | 6962.25 | | |
| Deepwater Warehouse | Fieldwood | 47417.A | | C-VAN C2-3409 | FLYING LEAD, ELECTRICAL, 12-WAY, 350 FT, ODI, PN: 1065206 | 128021 | MC 519 DESIGN | EA | | | 0 | | 15366 | 0 | | |
| Deepwater Warehouse | Fieldwood | 50068.A | | MR-GENERAL | CAP,TYP:CORROSION, DIVERLESS,STAB,MALE,HYDRAULIC ASSY USE W/MANIFOLD VGI,MFR:GE OIL & GAS,PN:H50458-3 | | | EA | | | 2 | | 9524.01 | 19048.02 | | |
| Deepwater Warehouse | Fieldwood | 50241.A | | DWW-YARD C-VAN DNVU-2051995 | CAP;TYP:PRESSURE,CONN TYP:FEMALE,SPCL FEATRS:WITH BALL VALVE 3/8 INCH; HI FLOW HOT STAB,MFR:UNITECH,PN:29219 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 85750 | 171500 | | |
| Deepwater Warehouse | Fieldwood | 50241.B | | MW-R17-1 | CAP;TYP:PRESSURE,CONN TYP:FEMALE,SPCL FEATRS:WITH BALL VALVE 3/8 INCH; HI FLOW HOT STAB,MFR:UNITECH,PN:29219 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 64312.5 | 64312.5 | | |
| Deepwater Warehouse | Fieldwood | 50243.A | | DWW-YARD C-VAN DNVU-2051995 | CAP; TYPE: PROTECTIVE CONNECTOR, CONNECTION TYPE: FEMALE; MFR: UNITECH, PN: 26687 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 3000 | 6000 | | |
| Deepwater Warehouse | Fieldwood | 50245.A | | DWW-YARD C-VAN DNVU-2051995 | KIT, SEAL;TYP:UH-550,MFR:UNITECH,PN:26414 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 10 | | 1500 | 15000 | | |
| Deepwater Warehouse | Fieldwood | 50246.A | | DWW-YARD C-VAN DNVU-2051995 | COVER,MFR:UNITECH,PN:9274,TYP MARINE GROWTH,SZ 6 IN | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 1700 | 3400 | | |
| Deepwater Warehouse | Fieldwood | 50358.B | | BW-AREA 2 | ASSEMBLY;TYP:TERMINATION HEAD,SPCL FEATRS:2 LINE, M1 REMOVABLE PLATE, M1 90 DEG TERMINATION STRUCTURE,MFR:OIE,PN:432505-ITEM 31,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 37653.75 | 37653.75 | | |
| Deepwater Warehouse | Fieldwood | 50359.A | | BW-AREA 2 | ASSEMBLY;TYP:TERMINATION HEAD,SPCL FEATRS:M1 REMOVABLE PLATE, M1 90 DEG TERMINATION STRUCTURE,MFR:OIE,PN:432505-ITEM 32,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 3 | | 68651 | 205953 | | |
| Deepwater Warehouse | Fieldwood | 50360.A | | MW-R16-1 | JUNCTION PLATE, SUBSEA;:FIXED,LN QTY:10 LINE,:14 WAY,:15 KPSI,SPCL FEATS:M1 FIXED,MFR:OIE,PN:428783-ITEM 26,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 26392 | 0 | | |
| Deepwater Warehouse | Fieldwood | 50360.B | | MW-R15-1 | JUNCTION PLATE, SUBSEA;:FIXED,LN QTY:10 LINE,:14 WAY,:15 KPSI,SPCL FEATS:M1 FIXED 10 X 1/2 HUNTING RS MALE NVP COUPLER,MFR:OIE,PN:428783-ITEM 26,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 19794 | 0 | | |
| Deepwater Warehouse | Fieldwood | 50365.B | | MW-R15-2 | JUNCTION PLATE, SUBSEA;:COMPENSATED, LTCP,:15 KPSI,SPCL FEATRS:M1 REMOVABLE 14 X 0.5 HUNTING RS FEMALE PRVC COUPLER,MFR:OIE,PN:428796-ITEM 28.1,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 27297.75 | 27297.75 | | |
| Deepwater Warehouse | Fieldwood | 50365.B | | MW-R15-FL | JUNCTION PLATE, SUBSEA;:COMPENSATED, LTCP,:15 KPSI,SPCL FEATS:M1 REMOVABLE 14 X 0.5 HUNTING RS FEMALE PRVC COUPLER,MFR:OIE,PN:428796-ITEM 28.1,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 27297.75 | 27297.75 | | |
| Deepwater Warehouse | Fieldwood | 50365.B | | MW-R15-FL | JUNCTION PLATE, SUBSEA;:COMPENSATED, LTCP,:15 KPSI,SPCL FEATS:M1 REMOVABLE 14 X 0.5 HUNTING RS FEMALE PRVC COUPLER,MFR:OIE,PN:428796-ITEM 28.1,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 27505.5 | 27505.5 | | |
| Deepwater Warehouse | Fieldwood | 50365.B | | MW-R17-3 | JUNCTION PLATE, SUBSEA;:COMPENSATED, LTCP,:15 KPSI,SPCL FEATS:M1 REMOVABLE 14 X 0.5 HUNTING RS FEMALE PRVC COUPLER,MFR:OIE,PN:428796-ITEM 28.1,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 37500 | 75000 | | |
| Deepwater Warehouse | Fieldwood | 50366.B | | DWW-YARD C-VAN DNVU-2051995 | JUNCTION PLATE, SUBSEA;:FIXED,LN QTY:14,SPCL FEATS:STPC, 14 X 1/2 HUNTING RS MALE DUMY COUPLER,MFR:OIE,PN:0291912-ITEM 26,MFR:OIE,MN:M1,MFR:OIE,QUOTE:2013-46936A | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 15682.5 | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 50371.A | | DWW-YARD | FRAME;TYP:CARTRIDGE DEPLOYMENT,MATL:CS,SPCL FEATRS:TOPSIDE PRIME COATED,APPLI:SFL,MFR:OIE,PN:042878A-ITEM 37,MFR:OIE,QUOTE:2013-46936A | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 45427 | 0 | | |
| Deepwater Warehouse | Fieldwood | 50371.A | | DWW-YARD | FRAME;TYP:CARTRIDGE DEPLOYMENT,MATL:CS,SPCL FEATRS:TOPSIDE PRIME COATED,APPLI:SFL,MFR:OIE,PN:042878A-ITEM 37,MFR:OIE,QUOTE:2013-46936A | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 5 | | 62896 | 314480 | | |
| Deepwater Warehouse | Fieldwood | 50388.B | | DWW-YARD/MW-R15-1 | PLATE;TYP:TEST AND FLUSHING, FIXED, 14 WAY,SPCL FEATRS:M1 FIXED T/F W/STAND,MFR:OIE,PN:429315-ITEM 34 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 29632.5 | 59265 | | |
| Deepwater Warehouse | Fieldwood | 50392.A | | OS-R3-FL | VALVE, CONTROL;VLV SZ:1IN,CL:150,TRIM:3/8 IN, S17400 DH1150,ACTTR STYL:FAIL CLOSED, SIZE 69,SPCL FEATRS:OPERATING SIGNAL 0-35 PSIG,STYL:GLOBE,MFR:DYNAFLO,PN:DF269-1CG6-6AF-38S,MFR:DYNAFLO,SERIES/VERSION:DF269 | | NEPTUNE | EA | | | 2 | | 1589.455 | 3178.91 | | |
| Deepwater Warehouse | Fieldwood | 50393.A | | OS-R3-FL | VALVE, CONTROL;VLV SZ:2IN,CL:300,TRIM:3/8 IN, S17400 DH1150,ACTTR STYL:FAIL CLOSED, SIZE 69,SPCL FEATRS:OPERATING SIGNAL 0-35 PSIG,STYL:GLOBE,MFR:DYNAFLO,PN:DF269-2GC6-6BF-38S,MFR:DYNAFLO,SERIES/VERSION:DF269 | | NEPTUNE | EA | | | 1 | | 1870.53 | 1870.53 | | |
| Deepwater Warehouse | Fieldwood | 50516.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:HYDRAULIC TUBE,APPLI:FOR PERMA-SERIES PACKER,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 48 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4243.7 | 4243.7 | | |
| Deepwater Warehouse | Fieldwood | 50516.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:HYDRAULIC TUBE,APPLI:FOR PERMA-SERIES PACKER,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 48 | 143752 | MC 948 6 GUNFLINT COMPLETION/L | EA | | | 1 | | 4243.7 | 4243.7 | | |
| Deepwater Warehouse | Fieldwood | 50517.A | | DWW-YARD | COLUMN;TYP:COL IN LINE,DIM:5.5 IN-23.00 VAM TOP,MATL:S13CR110,SPCL FEATRS:6 IN, B-P, 6800 SNAP DOWN 25,500 SNAP UP,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 39 | | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 9336.9 | 9336.9 | | |
| Deepwater Warehouse | Fieldwood | 50518.A | | VERTICAL RACK | ASSEMBLY;TYP:FLUID CONTROL DEVICE,DIM:7-5/8 IN, 42.8,MATL:S13CR110 AB-HDL,SPCL FEATRS:BOX X PIN, 14190 PSI BURST, 13930 PSI COLLAPSE,SPEC:TWIN FLOW EXTENSO,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM29 | | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 31460.96 | 31460.96 | | |
| Deepwater Warehouse | Fieldwood | 50519.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:SELF ALIGNING,CONN SZ:3 1/2-10.2,CONN TYP:VAM TOP BOX,MATL:SUPER 13CR/110KSI,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 11 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 13012.97 | 13012.97 | | |
| Deepwater Warehouse | Fieldwood | 50520.A | | DWW-YARD | SLEEVE;TYP:CIRCULATION / PRODUCTION,MATL:13CR110,PRESS RTNG:10,000 PSI,SPEC:3-1/2 IN, 9.3, BTS-8 BOX X PIN,STD:RO SLIMLINE DURASLEEVE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 33 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 23691.76 | 23691.76 | | |
| Deepwater Warehouse | Fieldwood | 50521.A | | DWW-YARD | LOCATOR, DRILLING;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 35,TYP NO-GO,CONN SZ 3 1/2 IN,CONN TYP BTS-8 X 3 1/2-10.2 VAM TOP BOX X PIN,MATL:13CR/110,WT 9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 8924.85 | 8924.85 | | |
| Deepwater Warehouse | Fieldwood | 50522.A | | DWW-YARD | SUB;TYP:SHEAR,CASNG WT:23,MATL GR:13CR110,CONN SZ:5-1/2 IN,CONN TYP:VAM TOP BOX X PIN,SPCL FEATRS:ATLAS O-RINGS, 81,000 LB SHEAR,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 27 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 26081.99 | 52163.98 | | |
| Deepwater Warehouse | Fieldwood | 50523.A | | DWW-YARD | COUPLING, OCTG;TYP:COLLET INDICATOR,NOM SZ:7 5/8IN,WT:42.8 AB-HDL,CONN STYL: BOX X PIN, 45 DEG ANGLE,PRESS RTNG:14190 PSI BURST, 13930 PSI COLLAPSE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 24 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 11846.75 | 23693.5 | | |
| Deepwater Warehouse | Fieldwood | 50524.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:SELF ALIGNING,CONN SZ:5 1/2 IN, 23,CONN TYP:VAM TOP BOX,MATL:13CR/110,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 16 | 143752 | MC 948 6 GUNFLINT COMPLETION/L | EA | | | 1 | | 14451.48 | 14451.48 | | |
| Deepwater Warehouse | Fieldwood | 50524.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:SELF ALIGNING,CONN SZ:5 1/2 IN, 23,CONN TYP:VAM TOP BOX,MATL:13CR/110,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 16 | 143752 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 14451.48 | 14451.48 | | |
| Deepwater Warehouse | Fieldwood | 50526.A | | DWW-YARD | EXTENSION;TYP:SEAL,DIM:5.5 IN, 23, VAM TOP BOX X PIN,MATL:S13CR110,MFR:HALLIBURTON,PN:GUN-PM-NE-PRO-RFP-0014-ITEM 14 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 4 | | 7858.72 | 31434.88 | | |
| Deepwater Warehouse | Fieldwood | 50526.A | | DWW-YARD | EXTENSION;TYP:SEAL,DIM:5.5 IN, 23, VAM TOP BOX X PIN,MATL:S13CR110,MFR:HALLIBURTON,PN:GUN-PM-NE-PRO-RFP-0014-ITEM 14 | 143752 | MC 948 6 GUNFLINT COMPLETION/L | EA | | | 6 | | 7858.72 | 47152.32 | | |
| Deepwater Warehouse | Fieldwood | 50526.A | | PUP JOINT RACK-FLOOR | EXTENSION;TYP:SEAL,DIM:5.5 IN, 23, VAM TOP BOX X PIN,MATL:S13CR110,MFR:HALLIBURTON,PN:GUN-PM-NE-PRO-RFP-0014-ITEM 14 | 143752 | MC 948 6 GUNFLINT COMPLETION/L | EA | | | 2 | | 7858.72 | 15717.44 | | |
| Deepwater Warehouse | Fieldwood | 50526.A | | PUP JOINT RACK-FLOOR | EXTENSION;TYP:SEAL,DIM:5.5 IN, 23, VAM TOP BOX X PIN,MATL:S13CR110,MFR:HALLIBURTON,PN:GUN-PM-NE-PRO-RFP-0014-ITEM 14 SUB;TYP:BOTTOM,PRESS RTNG:10,000 PSI BURST,9700 COLLAPSE,MATL GR:S13CR110,CONN TYP:7-15/16-6 STUB ACME PIN X 7-3/4-8 AC | 143752 | MC 948 6 GUNFLINT COMPLETION/L | EA | | | 2 | | 7858.72 | 15717.44 | | |
| Deepwater Warehouse | Fieldwood | 50527.A | | VERTICAL RACK | BOX,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 20 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 5916.83 | 11833.66 | | |
| Deepwater Warehouse | Fieldwood | 50528.A | | MW-AREA 5 | EXTENSION;TYP:SEAL BORE,DIM:4 1/2-8 UNS BOX X PIN,MATL:SUPER C110,SPEC:12730 PSI BURST, 11280 PSI COLLAPSE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 18 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 10673.3 | 21346.6 | | |
| Deepwater Warehouse | Fieldwood | 50529.A | | DWW-YARD | GUIDE, MULE SHOE,CONN SZ:1 1/2-10.2,CONN TYP:VAM TOP BOX,MATL:13CR/110KSI,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 37 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 1734.33 | 1734.33 | | |
| Deepwater Warehouse | Fieldwood | 50530.A | | DWW-YARD | LOCATOR, DRILLING;TYP:PFZ,CONN SZ:4 1/2IN,CONN TYP:TSH 511 X 5 1/2 IN 23 VAM TOP,MATL:13CR/110,WT:15.1,PRESS RTNG:14340 COLLAPSE PSI,SPCL FEATRS:6 7/8-4 VERSA-LTH LH 72.000 SHEAR,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 12 | 143752 | MC 948 6 GUNFLINT COMPLETION/L | EA | | | 1 | | 17335.05 | 17335.05 | | |
| Deepwater Warehouse | Fieldwood | 50531.A | | VERTICAL RACK | EXTENSION;TYP:UPPER GRAVEL PACK,DIM:7 3/4-8 AC PIN X PIN,MATL:S13CR110,SPEC:20510 PSI BURST, 11220 PSI COLLAPSE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 21 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 19753.21 | 39506.42 | | |
| Deepwater Warehouse | Fieldwood | 50532.A | | DWW-YARD | GUIDE, MULE SHOE;TYP:SELF ALIGNING,CONN SZ:5 1/2 IN, 20,CONN TYP:VAM TOP BOX,MATL:13CR80 KSI,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 45 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 12675.06 | 12675.06 | | |
| Deepwater Warehouse | Fieldwood | 50533.A | | PUP JOINT RACK-FLOOR | SUB, LIFT;TYP:UPPER HALF, LSOI,MFR:HALLIBURTON,PN:102138717 | 143752 | MC 948 6 GUNFLINT COMPLETION/L | EA | | | 1 | | 13517 | 13517 | | |
| Deepwater Warehouse | Fieldwood | 50533.A | | PUP JOINT RACK-FLOOR | SUB, LIFT;TYP:UPPER HALF, LSOI,MFR:HALLIBURTON,PN:102138717 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 13516.69 | 27033.38 | | |
| Deepwater Warehouse | Fieldwood | 50534.A | | DWW-YARD | LOCATOR, DRILLING;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 38,TYP:PNZ,CONN SZ:5 1/2 IN,CONN TYP SLHT X 5 1/2 IN 23# VAM TOP BXP,ID 3.88 NOM,MATL 13CR/110,WT 23,SPCL FEATRS 14.370 BURST, 14.260 COLLAPSE | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 10329.53 | 10329.53 | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 50536.A | | DWW-YARD | EXTENSION;TYP:MIDDLE GRAVEL PACK,DIM:7 5/8 IN, 42.8,MATL:S13CR110 AB-HDL, BOX X PIN,SPEC:14190 PSI BURST, 13930 PSI COLLAPSE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 23 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 31460.96 | 62921.92 | | |
| Deepwater Warehouse | Fieldwood | 50537.A | | MW-AREA 5 | EXTENSION;TYP:LOWER GRAVEL PACK,DIM:7-5/8 IN, 42.8,BOX X PIN,MATL:S13CR110 AB-HDL,SPEC:14190 PSI BURST 13930 PSI COLLAPSE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 25 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 22497.65 | 22497.65 | | |
| Deepwater Warehouse | Fieldwood | 50537.A | | DWW-YARD | EXTENSION;TYP:LOWER GRAVEL PACK,DIM:7-5/8 IN, 42.8,BOX X PIN,MATL:S13CR110 AB-HDL,SPEC:14190 PSI BURST 13930 PSI COLLAPSE,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 25 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 22497.65 | 22497.65 | | |
| Deepwater Warehouse | Fieldwood | 50538.A | | DWW-YARD | LOCATOR, DRILLING;TYP:TOP SNAP COLLET SEAL ASSEMBLY,CONN SZ:5 1/2 IN,CONN TYP:SLHT TOP BOX X 5 1/2,20 VAM TOP PIN,MATL:13CR/80KSI,WT:23,SPCL FEATRS:COLLET VALUE 16000 LBS UP/6500 LBS DOWN,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 41 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 13817.41 | 13817.41 | | |
| Deepwater Warehouse | Fieldwood | 50540.A | | MW-AREA 5 | NIPPLE, LANDING;TYP:RECEIVER,TUBE OD:NA,TUBE ID:NA,CONN SZ:4 5/16 X STUB ACME-LH BOX X 4 1/2 15.1 VAM INSIDE PIN,CONN TYP:NA,ID:NA,OD:NA,MATL:13CR/110KSI,MATL SPEC:NA,MATL GR:NA,PRESS RTNG:NA | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 13403.42 | 13403.42 | | |
| Deepwater Warehouse | Fieldwood | 50541.A | | DWW-YARD | ASSEMBLY;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 36,TYP:ATP SEAL UNIT,DIM 3 1/2 IN,10.2, VAM TOP BOX X PIN,MATL 13CR110,SPCL FEATRS 1.67 FT MAKE UP LENGTH PER SEAL UNIT (5 EA.),SPEC 15000 PSI (SEALS) | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 5 | | 8496 | 42480 | | |
| Deepwater Warehouse | Fieldwood | 50542.A | | DWW-YARD | ASSEMBLY;TYP:ATR SEAL UNIT,SZ:5 1/2IN,DIM:23, VAM TOP BOX X PIN,MATL:13CR110,SPCL FEATRS:14,370 BURST,14260 CLPS AT450 DEG F,SPEC:MANDREL,STD:1.67 FT LENGTH PER SEAL UNIT 3.88 HONED ID,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 13 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 3 | | 9858.51 | 29575.53 | | |
| Deepwater Warehouse | Fieldwood | 50543.A | | DWW-YARD | ASSEMBLY;TYP:ATR SEAL UNIT,SZ:5 1/2IN,DIM:23, VAM TOP BOX X PIN,MATL:13CR110,SPCL FEATRS:14,370 BURST,14260 COLLAPSE AT 450 DEG F TEMP RATING,STD:1.67 FT LENGTH PER SEAL UNIT,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 15 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 4 | | 9858.51 | 39434.04 | | |
| Deepwater Warehouse | Fieldwood | 50543.A | | DWW-YARD | ASSEMBLY;TYP:ATR SEAL UNIT,SZ:5 1/2IN,DIM:23, VAM TOP BOX X PIN,MATL:13CR110,SPCL FEATRS:14,370 BURST,14260 COLLAPSE AT 450 DEG F TEMP RATING,STD:1.67 FT LENGTH PER SEAL UNIT,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 15 | 143751 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 11 | | 9858.51 | 108443.61 | | |
| Deepwater Warehouse | Fieldwood | 50544.A | | PUP JOINT RACK-TIER 3 | SUB, LIFT;TYP:LOWER HALF, LSOI,MFR:HALLIBURTON,PN:101901103 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 6869.87 | 13739.74 | | |
| Deepwater Warehouse | Fieldwood | 50544.A | | PUP JOINT RACK-TIER 3 | SUB, LIFT;TYP:LOWER HALF, LSOI,MFR:HALLIBURTON,PN:101901103 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 6870 | 6870 | | |
| Deepwater Warehouse | Fieldwood | 50545.A | | MW-AREA 5 | VALVE;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 26,CONN 1 SZ 7-5/8 IN,CONN 1 TYP VAM TOP BOX X PIN,DSGN RTNG FLUID LOSS,MATL INCOLOY 925,WT 42.8,PRESS RTNG 12,000 PSI(FRAC COLLAPSE),SPCL FEATRS 18+/-3 CYCLES TO OPEN,MFR:HALLIBURTON, | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 392913.94 | 392913.94 | | |
| Deepwater Warehouse | Fieldwood | 50547.A | | DWW-YARD | ASSEMBLY;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRITEM 10,TYP ATP SEAL UNT,SZ 3.5-10.2 IN,MATL 13CR110,COMPRISING VAM TOP BOX X PIN, 1.67 FT. MAKE UP LENGTH PER SEAL UNIT (6 EA.),SPCL FEATRS 15000 PSI,APPLI FS ASSEMBLY,SPEC MANDREL | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 6 | | 2301.18 | 13807.08 | | |
| Deepwater Warehouse | Fieldwood | 50549.A | | PUP JOINT RACK-TIER 4 | VALVE;CONN 1 TYP:7-5/8 IN,42.8,AB HDL BOX X 5-1/2 IN,23,VAM TOP PIN,DSGN RTNG:FLUID LOSS,MATL GR:13CR110,WT:23,SFTGDS FLUROEL O-RINGS,PRESS RTNG:13,900 PSI,SPCL FEATRS:SEAL BORE 3.88 IN,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 50 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 46740 | 93480 | | |
| Deepwater Warehouse | Fieldwood | 50550.A | | MW-AREA-6 | PACKER, DRILL;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 46,TYP PERMA-SERIES,STYL NA,ID NA,OD NA,CONN 1 SZ 9 5/8,PRESS RTNG 7,380 PSI WITH SEAL UNIT,WT 40-53.5,MATL 13CR/80 KSI,SPCL FEATRS TOP SNAP HEAD X 7 IN-8 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 33816.52 | 67633.04 | | |
| Deepwater Warehouse | Fieldwood | 50551.A | | DWW-YARD | ASSEMBLY;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 42,TYP AFLAS SEAL UNIT,SZ 5.5 IN,MATL 13CR80,COMPRISING 20 VAM TOP BOX X PIN, SC 80,SPCL FEATRS 9,080 PSI BRST,8,640 PSI CLPS,SPEC 80 KSI MANDREL | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 6153.71 | 12307.42 | | |
| Deepwater Warehouse | Fieldwood | 50552.A | | VERTICAL RACK | SLEEVE;TYP:CLOSING,MATL:S13CR110,PRESS RTNG:13930 PSI,SEAL MATL:FLUOREL O-RINGS,SPCL FEATRS:MCS,SPEC:7-5/8 8 AC BOX X 7-5/8 IN,42.8,AB-HDL PIN,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 22 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 42425.3 | 84850.6 | | |
| Deepwater Warehouse | Fieldwood | 50553.A | | MW-AREA-6 | GUIDE, SHOE;TYP:EXTENDED GUIDE,NOM SZ:7 IN-8 UNS PININ,MATL:13CR80,APPLI:FOR HALLIBURTON TOP SNAP SUMP PACKER ASSEMBLY,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 47 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 6350.57 | 12701.14 | | |
| Deepwater Warehouse | Fieldwood | 50554.A | | DWW-YARD | SUB;TYP:MAKEUP,PRESS RTNG:14,190 BURST,13,930 PSI COLLAPSE,MATL GR:13CR110,SPCL FEATRS:MUS, 7 5/8-42.8 AB-HD, X 5-1/2 IN, 23, VAM TOP BOX X PIN,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 28 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 37949 | 75898 | | |
| Deepwater Warehouse | Fieldwood | 50558.A | | MW-AREA 5 | ASSEMBLY;TYP:TWIN FLOW,SZ:7-5/8 IN, 42.8, AB-HDL PIN X PIN,DIM:4 1/2 IN, 8-UNS BOX X 3 1/2 IN 9.3,BTS-8 PIN,MATL GR:S13CR110,SPCL FEATRS:AFLAS ELASTO,2.750 IN X LN,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 30 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 93543.77 | 93543.77 | | |
| Deepwater Warehouse | Fieldwood | 50560.A | | PUP JOINT RACK-TIER 1 | ASSEMBLY;TYP:SHIFTER, FS2,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 49,MFR:HALLIBURTON,SERIES/VERSION:F2S | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 12297.67 | 12297.67 | | |
| Deepwater Warehouse | Fieldwood | 50560.A | | PUP JOINT RACK-TIER 1 | ASSEMBLY;TYP:SHIFTER, FS2,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 49,MFR:HALLIBURTON,SERIES/VERSION:F2S | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 12297.67 | 24595.34 | | |
| Deepwater Warehouse | Fieldwood | 50561.A | | PUP JOINT RACK-FLOOR | ASSEMBLY;TYP:SHIFTER, ISS,MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 51,MFR:HALLIBURTON,SERIES/VERSION:ISS | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 14939 | 29878 | | |
| Deepwater Warehouse | Fieldwood | 50626.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3129,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN OD,DIM RANGE 3,SLHT,MATL ALLOY 20,MATL GR 23 LB/FT,HP2 13CR-110,SPCL FEATRS W/CENTRALIZERS INSTALLED F 9.875 IN OD,65.10 LB/FT,CENTRALIZER OD 8.250 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 3 | | 21430 | 64290 | | |
| Deepwater Warehouse | Fieldwood | 50626.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3129,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN OD,DIM RANGE 3,SLHT,MATL ALLOY 20,MATL GR 23 LB/FT,HP2 13CR-110,SPCL FEATRS W/CENTRALIZERS INSTALLED F 9.875 IN OD,65.10 LB/FT,CENTRALIZER OD 8.250 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 3 | | 21430 | 64290 | | |
| Deepwater Warehouse | Fieldwood | 50627.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3130,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN,DIM 19.50 FT IT,CL 23,MATL ALLOY 20,MATL GR HP2 13CR-110,SPCL FEATRS W/CENTRALIZERS INSTALLED | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 11215 | 11215 | | |

9

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 50627.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3130,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN,DIM 19.50 FT JT,CL 23,MATL ALLOY 20,MATL GR HP2 13CR-110,SPCL FEATRS W/CENTRALIZERS INSTALLED | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 11215 | 11215 | | |
| Deepwater Warehouse | Fieldwood | 50628.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3131,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN,DIM 10.25 FT JT,CL 23,MATL ALLOY 20,SPCL FEATRS W/CENTRALIZERS INSTALLED,BRAND:DELTA SCREENS,BRAND:DELTA ELITE | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 5720 | 5720 | | |
| Deepwater Warehouse | Fieldwood | 50628.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:SCREEN 3131,TYP 175 MICRON PREMIUM SCREENS,SZ 5 1/2 IN,DIM 10.25 FT JT,CL 23,MATL ALLOY 20,SPCL FEATRS W/CENTRALIZERS INSTALLED,BRAND:DELTA SCREENS,BRAND:DELTA ELITE | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 5720 | 5720 | | |
| Deepwater Warehouse | Fieldwood | 50631.A | | DWW-YARD | ASSEMBLY;MFR:DELTA SCREENS,PN:BLANK 3132,TYP CASING,SZ 5 1/2 IN,DIM 39 FT JT,CL 23,MATL GR HP2 13CR-110,SPCL FEATRS W/SS WELD-ON CENTRALIZERS F/8.25 OD,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 5 | | 9262 | 46310 | | |
| Deepwater Warehouse | Fieldwood | 50632.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ 5 1/2IN,WT:23.00,MATL GR:HP2 13CR-110,TOP CONN TYP:SLHT BOX X PIN,LG:4ft,MFR:DELTA SCREENS,PN:PUP JOINT 3136,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 2470 | 4940 | | |
| Deepwater Warehouse | Fieldwood | 50633.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ 5 1/2IN,WT:23.00,MATL GR:HP2 13CR-110,TOP CONN TYP:SLHT BOX X PIN,LG:6ft,MFR:DELTA SCREENS,PN:PUP JOINT 3135,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 2830 | 5660 | | |
| Deepwater Warehouse | Fieldwood | 50634.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ 5 1/2IN,WT:23.00,MATL GR:HP2 13CR-110,TOP CONN TYP:SLHT BOX X PIN,LG:8ft,MFR:DELTA SCREENS,PN:PUP JOINT 3134,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 3225 | 6450 | | |
| Deepwater Warehouse | Fieldwood | 50635.A | | DWW-YARD | PUP JOINT, CASING;MFR:DELTA SCREENS,PN:PUP JOINT 3133,NOM SZ 5 1/2 IN,WT 23.00,MATL GR HP2 13CR-110,TOP CONN TYP SLHT BOX X PIN,LG 10 FT,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 3620 | 3620 | | |
| Deepwater Warehouse | Fieldwood | 50635.A | | DWW-YARD | PUP JOINT, CASING;MFR:DELTA SCREENS,PN:PUP JOINT 3133,NOM SZ 5 1/2 IN,WT 23.00,MATL GR HP2 13CR-110,TOP CONN TYP SLHT BOX X PIN,LG 10 FT,MFR:DELTA SCREENS,QUOTE:DS1301148 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 3620 | 7240 | | |
| Deepwater Warehouse | Fieldwood | 50934.A | | DWW-YARD | CROSSOVER;MATL GR:NA,TYP:CASING,BOT CONN TYP:VAM F/L PIN S,BOT CONN SZ:6-5/8 IN, 32,TOP CONN TYP:VAM TOP BOX,TOP CONN SZ:4-1/2 IN, 17,MATL:13CR110 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 9044.75 | 9044.75 | | |
| Deepwater Warehouse | Fieldwood | 50935.A | | DWW-YARD | CROSSOVER;MATL GR:110,TYP:NA,BOT CONN TYP:VAM TOP PIN,BOT CONN SZ:3-1/2IN,TOP CONN TYP:HYDRYL 511 BOX,TOP CONN SZ:3-1/2IN,MATL:13CR | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 5485.5 | 5485.5 | | |
| Deepwater Warehouse | Fieldwood | 50936.A | | DWW-YARD | JOINT;TYP:CASING,DIM:6-5/8IN,WT:32kg,LG:40ft,MATL:SUPER 13CR,MATL GR:110,CONN 1 SZ:6-5/8IN,CONN 1 TYP:BOX VAM F/L,CONN 2 SZ:6-5/8IN,CONN 2 TYP:PIN VAM F/L,SPCL FEATRS:N/A | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 24748 | 49496 | | |
| Deepwater Warehouse | Fieldwood | 50937.A | | DWW-YARD | TUBING, OCTG;NOM SZ:4-1/2IN,OD:NA,WT:15.1,MATL GR:13CR110,PROCESS:TSH 511,CONN TYP:BOX X PIN,LG:40ft,SPCL FEATRS:NA | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 16474.9 | 32949.8 | | |
| Deepwater Warehouse | Fieldwood | 50939.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ:4-1/52IN,WT:15.1,MATL:13CR,MATL GR:110,PROCESS:TSH511,TOP CONN TYP:BOX,BOT CONN TYP:PIN,LG:8ft | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 7834.38 | 7834.38 | | |
| Deepwater Warehouse | Fieldwood | 50939.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ:4-1/52IN,WT:15.1,MATL:13CR,MATL GR:110,PROCESS:TSH511,TOP CONN TYP:BOX,BOT CONN TYP:PIN,LG:8ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 7834.38 | 7834.38 | | |
| Deepwater Warehouse | Fieldwood | 50941.A | | DWW-YARD | TUBING, OCTG;NOM SZ:3-1/2IN,OD:NA,WT:9.3,MATL GR:13CR110,PROCESS:BTS-8,CONN TYP:BOX X PIN,LG:30ft,SPCL FEATRS:NA | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 6 | | 2012.5 | 12075 | | |
| Deepwater Warehouse | Fieldwood | 50942.A | | PUP JOINT RACK-FLOOR | PUP JOINT, CASING;NOM SZ:3-1/2IN,WT:9.3,MATL:13CR,MATL GR:110,PROCESS:BTS-8,TOP CONN TYP:BOX,BOT CONN TYP:PIN,LG:12IN | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 1986.05 | 3972.1 | | |
| Deepwater Warehouse | Fieldwood | 50943.A | | MW-AREA 5 | PUP JOINT, CASING;NOM SZ:3-1/2IN,WT:9.3,MATL:13CR,MATL GR:110,PROCESS:BTS-8,TOP CONN TYP:BOX,BOT CONN TYP:PIN,LG:2ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 2725.5 | 2725.5 | | |
| Deepwater Warehouse | Fieldwood | 50944.A | | MW-AREA 6 | JOINT, BLAST;NOM SZ:3-1/2IN,CONN TYP:BOX X PIN,LG:4ft,MATL:13CR110,PROCESS:BTS-8,WT:9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 4151.5 | 8303 | | |
| Deepwater Warehouse | Fieldwood | 50945.A | | MW-AREA 6 | JOINT, BLAST;NOM SZ:3-1/2IN,CONN TYP:BOX X PIN,LG:6ft,MATL:13CR110,PROCESS:BTS-8,WT:9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 5715.5 | 11431 | | |
| Deepwater Warehouse | Fieldwood | 50946.A | | MW-AREA 6 | JOINT, BLAST;NOM SZ:3-1/2IN,CONN TYP:BOX X PIN,LG:8ft,MATL:13CR110,PROCESS:BTS-8,WT:9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 7233.5 | 14467 | | |
| Deepwater Warehouse | Fieldwood | 50947.A | | (1) MW-AREA 6/(1) DWW-YARD | JOINT, BLAST;NOM SZ:3-1/2IN,CONN TYP:BOX X PIN,LG:10ft,MATL:13CR110,PROCESS:BTS-8,WT:9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 8038.5 | 16077 | | |
| Deepwater Warehouse | Fieldwood | 50948.A | | DWW-YARD | COUPLING, OCTG;TYP:NA,NOM SZ:5-1/2IN,WT:20,ID:NA,OD:NA,LG:NA,MATL:13CR,MATL GR:80,PROCESS:NA,TOP CONN TYP:VAM TOP BOX, SC 80,TOP CONN SZ:5-1/2IN,BOT CONN TYP:VAM TOP PIN, SC 80,BOT CONN SZ:5-1/2IN,SURF TRTMNT:NA,PRESS RTNG:NA | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4255 | 4255 | | |
| Deepwater Warehouse | Fieldwood | 50949.A | | DWW-YARD | PUP JOINT, CASING;NOM SZ:5-1/2IN,WT:20,MATL:13CR,MATL GR:80,PROCESS:NA,TOP CONN TYP:VAM TOP BOX, SC 80,BOT CONN TYP:VAM TOP PIN, SC 80,LG:NA | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 7101.25 | 7101.25 | | |
| Deepwater Warehouse | Fieldwood | 50954.A | | OS-R3-S3 | PLATE;TYP:THRUST,APPLI:BEARING FOR 240B SUPERIOR ENGINE,MFR:SINOR,PN:650-906-001 | | NEPTUNE | EA | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 51057.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, CASING;NOM SZ:4.5IN,WT:15.1kg,MATL:CR 13,MATL GR:110,PROCESS:NA,TOP CONN TYP:BOX TSH 511,BOT CONN TYP:PIN TSH511,LG:6ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6067.4 | 6067.4 | | |
| Deepwater Warehouse | Fieldwood | 51057.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING;NOM SZ:4.5IN,WT:15.1kg,MATL:CR 13,MATL GR:110,PROCESS:NA,TOP CONN TYP:BOX TSH 511,BOT CONN TYP:PIN TSH511,LG:6ft | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 6067.4 | 12134.8 | | |
| Deepwater Warehouse | Fieldwood | 51058.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, CASING;NOM SZ:4.5IN,WT:15.1kg,MATL:CR 13,MATL GR:110,PROCESS:NA,TOP CONN TYP:BOX TSH 511,BOT CONN TYP:PIN TSH 511,LG:4ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6067.4 | 6067.4 | | |
| Deepwater Warehouse | Fieldwood | 51058.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING;NOM SZ:4.5IN,WT:15.1kg,MATL:CR 13,MATL GR:110,PROCESS:NA,TOP CONN TYP:BOX TSH 511,BOT CONN TYP:PIN TSH 511,LG:4ft | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 2 | | 6067.4 | 12134.8 | | |
| Deepwater Warehouse | Fieldwood | 51083.A | | PUP JOINT RACK-FLOOR | NIPPLE;TYP:RPT,CONN SZ:3.313, 4.5IN,CONN TYP:VAM TOP,MATL:13CR110,MATL GR:NA,PROCESS:N/A,WT:17 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 5704.85 | 5704.85 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 51084.A | | MW-AREA 6 | JOINT, BLAST;NOM SZ 3 1/2 IN(N,CONN TYP:NA,LG:20ft,MATL:13CR/110 BTS-8,PROCESS:NA,WT:9.3 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 5 | | 17589.25 | 87946.25 | | |
| Deepwater Warehouse | Fieldwood | 51105.A | | MR-4-D | KIT, SEAL;TYP:RESILIENT,APPLI:SSR PLUG S-1/4 IN 2748033-01,MFR:CAMERON,PN:2142583-01 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 0 | | 3543 | 0 | | |
| Deepwater Warehouse | Fieldwood | 51105.B | | N/A | KIT, SEAL;TYP:RESILIENT,APPLI:SSR PLUG S-1/4 IN 2748033-01,MFR:CAMERON,PN:2142583-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | EA | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 51442.A | | DWW YARD C-VAN 401592-1 | CENTRALIZER, CASING;TYP:SUB,OD:9-7/8IN,MATL:ALLOY API Q125,CONN TYP:TSH 523 BOX X TSH 523 PIN DOPELESS,BOW TYP:(8)BOW SPRING-14-7/8 OVER BOW,SPEC:62.80,MFR:BLACKHAWK,PN:0102961-QP0003 A,MFR:BLACKHAWK,MN:R3600, BST-25 | | | EA | | | 0 | | 6023.888 | 0 | | |
| Deepwater Warehouse | Fieldwood | 51442.A | | DWW YARD C-VAN 433422-0 | CENTRALIZER, CASING;TYP:SUB,OD:9-7/8IN,MATL:ALLOY API Q125,CONN TYP:TSH 523 BOX X TSH 523 PIN DOPELESS,BOW TYP:(8)BOW SPRING-14-7/8 OVER BOW,SPEC:62.80,MFR:BLACKHAWK,PN:0102961-QP0003 A,MFR:BLACKHAWK,MN:R3600, BST-25 | | | EA | | | 0 | | 6023.888 | 0 | | |
| Deepwater Warehouse | Fieldwood | 52233.A | | DWW-YARD | CABLE, UMBILICAL, SUBSEA;MFR:TECHNIP,PN:TAM-SW-NEM-SBF-CON-0001-BB,TYP:FLEXIBLE FLYING LEAD,CONDCTR SZ 2 IN,LG 100 M,SPEC SERVICE BB, WITH BIN RESTRICTOR | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 377629 | 377629 | | |
| Deepwater Warehouse | Fieldwood | 52307.A | | OS-GENERAL | SEAL;MFR:FMC TECHNOLOGIES,PN:P1000045117,TYP PRODUCTION | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 11559.24 | 11559.24 | | |
| Deepwater Warehouse | Fieldwood | 52307.A | | OS-GENERAL | SEAL;MFR:FMC TECHNOLOGIES,PN:P1000045117,TYP PRODUCTION | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 11559.24 | 11559.24 | | |
| Deepwater Warehouse | Fieldwood | 52342.A | | DWW-YARD | DISC, RUPTURE;MFR:FIKE,PN:A10116-1,BRAND:FIKE,BRAND:FIKE,MFR:FIKE,QUOTE:121964 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 6869 | 6869 | | |
| Deepwater Warehouse | Fieldwood | 53821.A | | DWW-YARD | JOINT;MFR:OIL STATES,PN:P016916,DIM 8 IN,SPCL FEATRS INCLUDES HOLD COLLAR - PO 16762,MFR:OIL STATES,TYPE:SCR FLEX | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 1739009 | 1739009 | | |
| Deepwater Warehouse | Fieldwood | 53822.A | | DWW-YARD | FRAME;MFR:OIL STATES,PN:SP1X-23-264,TYP SHIPPING,DIM 834 L X 78 W X 82.7 H,MATL:ASTM A36 PLATE,ASTM A500 GR B RECTANGULAR TUBING,SPEC 32,190 LBS FRAME ONLY,MFR:OIL STATES,NOBLE RFQ:SP1X-23-264 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 186723 | 186723 | | |
| Deepwater Warehouse | Fieldwood | 53843.A | | DWW-YARD | SCREEN;MFR:DELTA SCREENS,PN:BLANK 3213 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4816 | 4816 | | |
| Deepwater Warehouse | Fieldwood | 56040.A | | DWW-YARD | SUB;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 99,TYP CROSSOVER,CASING WT 15.1,DIM 3-1/2 IN,MATL GR 13CR/110,CONN SZ 4-1/2 IN,CONN TYP BXP,SPCL FEATRS TSH 511 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 8802 | 8802 | | |
| Deepwater Warehouse | Fieldwood | 56042.A | | MW-AREA 5 | COUPLING;TYP N/A,CONN 1 SZ 7-5/8 IN,DIM 7-5/8 IN,MATL 110K,MATL GR 513CR,MATL SPEC 42.8,SPCL FEATRS PRESSURE RATING CALC: BURST 14190 PSI, COLLAPSE 13930 PSI,SPEC AB-HDL | | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6090.37 | 6090.37 | | |
| Deepwater Warehouse | Fieldwood | 56042.A | | PUP JOINT RACK-FLOOR | COUPLING;TYP N/A,CONN 1 SZ 7-5/8 IN,DIM 7-5/8 IN,MATL 110K,MATL GR 513CR,MATL SPEC 42.8,SPCL FEATRS PRESSURE RATING CALC: BURST 14190 PSI, COLLAPSE 13930 PSI,SPEC AB-HDL | | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 6090.37 | 6090.37 | | |
| Deepwater Warehouse | Fieldwood | 56043.A | | DWW-YARD | COUPLING;TYP N/A,CONN 1 SZ N/A,CONN 1 TYP VAM TOP,DIM 3-1/2 IN,MATL 13CR,MATL GR 110,SPEC 10.2 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 3502.9 | 3502.9 | | |
| Deepwater Warehouse | Fieldwood | 56045.A | | DWW-YARD | PUP JOINT, TUBING;TYP N/A,NOM SZ 3-1/2 IN,WT 10.2,MATL GR 13CR,PROCESS 110,CONN TYP VAM TOP,TOP CONN TYP BXP,BOT CONN TYP BXP,LG 3-1/2 IN | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4703.5 | 4703.5 | | |
| Deepwater Warehouse | Fieldwood | 56048.A | | DWW-YARD | COUPLING;TYP N/A,CONN 1 SZ N/A,CONN 1 TYP VAM TOP,CONN 2 TYP VAM TOP,DIM 5-1/2 IN,MATL 110,MATL GR 13CR,SPEC 23 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 3 | | 4370 | 13110 | | |
| Deepwater Warehouse | Fieldwood | 56050.A | | DWW-YARD | PUP JOINT, CASING;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014-ITEM 88,TYP N/A,NOM SZ 5-1/2 IN,WT 23,MATL 110,MATL GR 13CR,TOP CONN TYP VAM TOP,BOT CONN TYP BXP,LG 8 ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 7998.25 | 15996.5 | | |
| Deepwater Warehouse | Fieldwood | 56368.A | | DWW-YARD | CASING, OCTG;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014 - 50,NOM SZ 6-5/8 IN,WT 32 lb,MATL GR SUPER 13 CR 110,CONN TYP VAM F/J, BXP,LG 15 ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 11529 | 11529 | | |
| Deepwater Warehouse | Fieldwood | 56369.A | | MR-1-A | SEAL, ASSEMBLY;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014 - 51,TYP LSOTJ ASSEMBLY,MATL 513CR110,NOM SZ 6-5/8 IN,CONN TYP VAM F.6, BOX X 4-1/2 IN 15.1 LB TSH 511 PIN,WT 32 lb,SPEC 60 FT OF CONTINUOUS SEALING STROKE, ATR SEAL UNITS | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 458032.4 | 458032.4 | | |
| Deepwater Warehouse | Fieldwood | 56370.A | | MR-1-A | SEAL, ASSEMBLY;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014 - 52,TYP MOLDED AFLAS, STRADDLE,MATL 513CR/110,NOM SZ 6 IN,CONN TYP VAM TOP SC 80 5-1/2 IN,WT 20 lb | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 145653.13 | 145653.13 | | |
| Deepwater Warehouse | Fieldwood | 56373.A | | DWW-YARD | PUP JOINT, TUBING;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014 - 54,NOM SZ 3-1/2 IN,WT 10.2 lb,MATL GR SUPER CHROME 110 TSH-511,LG 4 ft | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 3921.5 | 3921.5 | | |
| Deepwater Warehouse | Fieldwood | 56375.A | | DWW-YARD | PUP JOINT, TUBING;MFR:HALLIBURTON,PN:GUN-PM-NEI-PRO-RFP-0014 - 57,NOM SZ 3-1/2 IN,WT 10.2 lb,MATL GR SUPER CHROME 110 TSH-511,TOP CONN TYP BXP,LG CUT TO LENGTH | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 4473.5 | 4473.5 | | |
| Deepwater Warehouse | Fieldwood | 56484.A | | OS-R1-S3 | SEAL;MFR:FMC TECHNOLOGIES,PN:P2000025846,TYP S,SPCL FEATRS B TYPE EXTERNAL,APPLI ISOLATION SLEEVE | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 4 | | 857.84 | 3431.36 | | |
| Deepwater Warehouse | Fieldwood | 56485.A | | MR-S-D | TOOL;MFR:FMC TECHNOLOGIES,PN:P1000064452,TYP THRT HYDRAULIC STAB INSTALLATION | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 2373.89 | 2373.89 | | |
| Deepwater Warehouse | Fieldwood | 57031.A | | OS-R1-S3 | SLEEVE;MFR:FMC TECHNOLOGIES,PN:P1000113891,TYP S-SEAL; ISOLATION (UPPER) | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 940.5 | 940.5 | | |
| Deepwater Warehouse | Fieldwood | 57211.A | | OS-R1-S3 | THERMOSTAT;MFR:EATON,PN:4709A93G03,TYP ENCLOSURE SPACE HEATER CONTROL | | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 580 | 580 | | |
| Deepwater Warehouse | Fieldwood | 57212.A | | OS-R1-S3 | SHUNT;MFR:EATON,PN:5NT3P04K,TYP TRIP,VOLT 120 V,APPLI FOR | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 200 | 200 | | |
| Deepwater Warehouse | Fieldwood | 57214.A | | OS-R1-S3 | BLOCK, TERMINAL;MFR:EATON,PN:34-4038-1,TYP LATCHING PULL-APART, STD | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 480 | 960 | | |
| Deepwater Warehouse | Fieldwood | 57215.A | | OS-R1-S3 | HEATER, SPACE;MFR:EATON,PN:4709A92GS2,WATT 150 W | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 469 | 469 | | |
| Deepwater Warehouse | Fieldwood | 57216.A | | MR-GENERAL | KIT;MFR:EATON,PN:4719A91G10,TYP TOUCH UP PAINT,COMPRISING AEROSOL CANS,QTY 3,SPEC ANSI-61 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 150 | 150 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 57217.A | | MR-GENERAL | KIT,MFR:EATON,PN:15SW1745PAYCAN,TYP TOUCH UP PAINT,COMPRISING AEROSOL CANS GLOSS WHITE,QTY 3 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 150 | 150 | | |
| Deepwater Warehouse | Fieldwood | 57218.A | | OS-R1-S3 | RELAY, CONTROL;MFR:EATON,PN:D7PR2A | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 20 | 40 | | |
| Deepwater Warehouse | Fieldwood | 57219.A | | OS-R1-S3 | RELAY, CONTROL;MFR:EATON,PN:D7PAA | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 20 | 40 | | |
| Deepwater Warehouse | Fieldwood | 57220.A | | OS-R1-S3 | FUSE,MFR:EATON,PN:FNQR-1,SPEC BOX OF 10 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 3 | | 50 | 150 | | |
| Deepwater Warehouse | Fieldwood | 57222.A | | OS-R1-S3 | LENS, INDICATING LIGHT;MFR:EATON,PN:10250TC1N,CLR RED | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 3 | | 9 | 27 | | |
| Deepwater Warehouse | Fieldwood | 57223.A | | OS-R1-S3 | LENS, INDICATING LIGHT;MFR:EATON,PN:10250TC2N,CLR GREEN | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 3 | | 9 | 27 | | |
| Deepwater Warehouse | Fieldwood | 57224.A | | OS-R1-S3 | TRANSFORMER, POWER;MFR:EATON,PN:C0150E4GFB,VOLT 1500 VA | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 339 | 678 | | |
| Deepwater Warehouse | Fieldwood | 57225.A | | OS-R1-S3 | PROTECTOR, OVERLOAD;MFR:EATON,PN:HMCPE-MOD-G54,TYP HMCPE MOTOR CIRCUIT,AMP 7 A | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 1990 | 1990 | | |
| Deepwater Warehouse | Fieldwood | 57226.A | | OS-R1-S3 | PROTECTOR, OVERLOAD;MFR:EATON,PN:HMCPE-MOD-G61,TYP HMCPE MOTOR CIRCUIT,AMP 15 A | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 1990 | 1990 | | |
| Deepwater Warehouse | Fieldwood | 57227.A | | OS-R1-S3 | PROTECTOR, OVERLOAD;MFR:EATON,PN:HMCPE-MOD-G56,TYP HMCPE MOTOR CIRCUIT,AMP 30 A | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 1990 | 1990 | | |
| Deepwater Warehouse | Fieldwood | 57228.A | | OS-R1-S3 | ALARM,MFR:EATON,PN:AUXLARM,PN,TYP BELL SW,APPLI FDR BKR | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 180 | 180 | | |
| Deepwater Warehouse | Fieldwood | 57229.A | | OS-R1-S3 | STARTER, ELECTRIC MOTOR;MFR:EATON,PN:N101DS2K3A,TYP SIZE 2 ITEM SERIES,COIL VOLT 120 VAC | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 1152 | 1152 | | |
| Deepwater Warehouse | Fieldwood | 57229.A | | OS-R1-S3 | STARTER, ELECTRIC MOTOR;MFR:EATON,PN:N101DS2K3A,TYP SIZE 2 ITEM SERIES,COIL VOLT 120 VAC | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 1152 | 1152 | | |
| Deepwater Warehouse | Fieldwood | 57230.A | | OS-R1-S3 | STARTER, ELECTRIC MOTOR;MFR:EATON,PN:N101CS1A3A,TYP SIZE 1 ITEM SERIES,COIL VOLT 120 VAC | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 2 | | 621 | 1242 | | |
| Deepwater Warehouse | Fieldwood | 57231.A | | OS-R1-S3 | LIGHT, INDICATING,MFR:EATON,PN:10250T181N,TYP XFMR,VOLT 6-120 VAC | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 3 | | 9 | 27 | | |
| Deepwater Warehouse | Fieldwood | 57231.A | | OS-R1-S3 | LIGHT, INDICATING,MFR:EATON,PN:10250T181N,TYP XFMR,VOLT 6-120 VAC | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 3 | | 9 | 27 | | |
| Deepwater Warehouse | Fieldwood | 57232.A | | OS-GENERAL | DRIVE,MFR:EATON,PN:SVX0401-4A1N1,TYP VFD SPARE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 9141 | 9141 | | |
| Deepwater Warehouse | Fieldwood | 57307.A | | DWW-YARD-C-VAN 402189 0 | INSERT,MFR:FMC TECHNOLOGIES,PN:P1000136103,TYP TEST STUMP ADAPTER | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 45376 | 45376 | | |
| Deepwater Warehouse | Fieldwood | 57309.A | | DWW-YARD | SKID;MFR:FMC TECHNOLOGIES,PN:42104-031,TYP CHOKE INSERT SHIPPING,APPLI GUNFLINT CITB-138, CIXB-292, CIXB-300,SPEC W/HRV-1131 CHOKE, ROT-5167 ACTUATOR | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 0 | | 228290 | 0 | | |
| Deepwater Warehouse | Fieldwood | 57684.A | | DWW-YARD | PUP JOINT, TUBING;TYP NA,NOM SZ 5-1/2 IN,WT 23 lb,MATL GR 13CR115Y,PROCESS FABRICATION,CONN TYP VAM TOP,TOP CONN TYP PIN,BOT CONN TYP PIN,LG 8 ft | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 4841.2 | 4841.2 | | |
| Deepwater Warehouse | Fieldwood | 57730.A | | DWW-YARD-C-VAN 433422 0 | TOOL, DOWN HOLE;MFR:OCEANEERING,PN:BMC000471 - 01,TYP MANUAL WELLHEAD CLEANING,MFR:OCEANEERING,QUOTE:BMC000471 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 0 | | 7950 | 0 | | |
| Deepwater Warehouse | Fieldwood | 57924.A | | OS-R1-S3 | POWER SUPPLY;MFR:PHOENIX CONTACT,PN:2866776,MFR:PHOENIX CONTACT,PN:QUINT-PS/1AC/24DC/20,TYP BULK,O/P VOLT 24 VDC,O/P CURRENT 20 A | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 505 | 505 | | |
| Deepwater Warehouse | Fieldwood | 57969.A | | MR-1-D | DISC, RUPTURE;TYP SPARE EXTERNAL,DIA 16 IN,OPRTG PRESS 1800 PSIG AT 150 DEG C,MATL EPRD,BST PRESS 7000 PSI,SEAT ANGL 90 DEG | | | EA | | | 4 | | 1193.115 | 4772.46 | | |
| Deepwater Warehouse | Fieldwood | 57970.A | | MR-1-D | DISC, RUPTURE;TYP SPARE,DIA 16 IN,OPRTG PRESS 7500 PSIG,MATL IPRD,BST PRESS 5250 OSIG AT 200 DEG F,SEAT ANGL 90 DEG | | | EA | | | 2 | | 2094.13 | 4188.26 | | |
| Deepwater Warehouse | Fieldwood | 58181.A | | MW R100-1 | SUB;MFR:NOV,PN:S04082/005,TYP TOP SUB CASING PATCH,CASNG SZ 13-5/8 IN,OD 16-3/4 IN,CASNG WT 88.2,PRESS RTNG 15000 PSI,MATL GR 4340,CONN SZ HYD S23,CONN TYP BOX | 144040 | MC 948 4 GUNFLINT D&E | EA | | | 1 | | 21838.95 | 21838.95 | | |
| Deepwater Warehouse | Fieldwood | 58182.A | | MW R11-FL | SUB;MFR:LOGAN,PN:AT1009-15-000,TYP TOP SUB FOR CASING PATCH,CASNG SZ 14 IN,OD 17-3/8 IN,CASNG WT 113,MATL GR 4140,CONN SZ HYD S23,CONN TYP BOX | 144040 | MC 948 4 GUNFLINT D&E | EA | | | 2 | | 28727 | 57454 | | |
| Deepwater Warehouse | Fieldwood | 58185.A | | MW R8-3 | GASKET;MFR:B.O.P. PRODUCTS,PN:SUBX18A3,TYP A - RING,NOM SZ 18-3/4 IN,PRESS RTNG 10K-15K PSI,MATL SS,STYL WP | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 3995 | 7990 | | |
| Deepwater Warehouse | Fieldwood | 58419.A | | BW-AREA 3 | SLEEVE;MFR:TRENDSETTER ENG.,PN:A1004424,TYP BRIDGING,DIM ID 9-1/2 X LG 18-3/4 IN,MATL F22 80 KSI,PRESS RTNG 15000 PSI | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 372600 | 372600 | | |
| Deepwater Warehouse | Fieldwood | 58423.A | | MW-R11-FL | PROTECTOR;MFR:TRENDSETTER ENG.,PN:A1004325,TYP H4 DEBRIS CAB,DIM 27 IN,MATL N/A | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 8800 | 8800 | | |
| Deepwater Warehouse | Fieldwood | 58424.A | | MW R7-3 | SLEEVE;MFR:TRENDSETTER ENG.,PN:A1004541,TYP BRIDGING,DIM N/A,MATL N/A,SPCL FEATRS SURFACE INSTALL TOOL,APPLI SLEEVE HANDLING | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 12700 | 12700 | | |
| Deepwater Warehouse | Fieldwood | 58621.A | | MR-1-D | MANDREL, ASSEMBLY;MFR:PETRO TECHNOLOGIES,PN:160M221,TYP WYE BLOCK,DIM SQ 1/2 X THK 3/8 IN,STD REV A | | | EA | | | 0 | | 3995.13 | 0 | | |
| Deepwater Warehouse | Fieldwood | 59023.A | | PUP JOINT RACK-FLOOR | PUP JOINT, CASING;NOM SZ 3-1/2 IN,WT 9.2 lb,MATL 13CR110,MATL GR N/A,PROCESS N/A,TOP CONN TYP VAM FJL,BOT CONN TYP VAM FJL,LG 2 ft | | | EA | | | 1 | | 917.5 | 917.5 | | |
| Deepwater Warehouse | Fieldwood | 59027.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, CASING;NOM SZ 3-1/2 IN,WT 9.2 lb,MATL 13CR110,MATL GR N/A,PROCESS N/A,TOP CONN TYP VAM FJL,BOT CONN TYP VAM FJL,LG 10 ft | | | EA | | | 1 | | 2469.73 | 2469.73 | | |
| Deepwater Warehouse | Fieldwood | 59028.A | | PUP JOINT RACK-TIER 2 | PUP JOINT, CASING;NOM SZ 3.5 IN,WT 9.3 lb/ft,MATL N/A,MATL GR 13CR110,PROCESS N/A,TOP CONN TYP BTS-8 S/C,BOT CONN TYP BTS-8 S/C,LG 6 ft | | | EA | | | 2 | | 1662.95 | 3325.9 | | |
| Deepwater Warehouse | Fieldwood | 59033.A | | PUP JOINT RACK-TIER 2 | COUPLING, FLOW;NOM SZ 3.5 IN,WT 9.3 lb/ft,MATL GR 13CR110,CONN TYP BTS-8 S/C,CONN SZ 3.5 IN,LG 6 ft,MATL N/A,MATL SPEC HYPER 13CR110 | | | EA | | | 1 | | 1848.94 | 1848.94 | | |
| Deepwater Warehouse | Fieldwood | 59035.A | | PUP JOINT RACK-TIER 1 | COUPLING, FLOW;NOM SZ 3.5 IN,WT 9.3 lb/ft,MATL GR 13CR95,CONN TYP BTS-8 S/C,CONN SZ 3.5 IN,LG 6 ft,MATL N/A,MATL SPEC 13CR95 | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 2571 | 5142 | | |
| Deepwater Warehouse | Fieldwood | 59036.A | | DWW-YARD | TUBING;ID 3 IN,OD 3.5 IN,MATL 13CR95,LG 94 ft,TYP PRODUCTION | 142981 | MC 782 2 DANTZLER COMPLETION | FT | | | 94 | | 36.5 | 3431 | | |
| Deepwater Warehouse | Fieldwood | 59113.A | | DWW-YARD-C-VAN 429796 | FLANGE;MFR:OIL STATES,PN:P017360,DIM 7-1/16 IN,CONN STYL RTJ SWIVEL,OPRTG PRESS 10000 PSI,MFR DWG:WELDMENT DRAWING OIL STATES,MFR:OIL STATES,QUOTE:BBD-SS-SSF-EGT-DWG-0015 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 19460 | 38920 | | |
| Deepwater Warehouse | Fieldwood | 59115.A | | DWW-YARD | COLLAR;MFR:OIL STATES,PN:P017190,TYP ANTI-ROTATION | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 68411 | 136822 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 59341.A | | BW-RS-1 | SOCKET, SOCKET WRENCH SET;MFR:OIL STATES,PN:IW12340C,TYP T-HANDLE W/ SOCKET,MATL STEEL,SPCL FEATRS FABRICATED - SOCKET W/ 1.625-IN SQT,MFR DWG HANDLE SOCKET OIL STATES, MFR:OIL STATES,QUOTE:SP1K-23-279 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 4500.98 | 4500.98 | |
| Deepwater Warehouse | Fieldwood | 59467.A | | MR-3-E | GASKET, RING JOINT;MFR:CAMERON,PN:2274164-01,CROSS SEC SHAPE SPHERICAL,MATL 316 SS,MATL GR STAINLESS STEEL,NOM SZ 6 IN,SURF FNSH SILVER PLATED | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 6 | | 2710.75 | 16264.5 | |
| Deepwater Warehouse | Fieldwood | 59467.B | | N/A | GASKET, RING JOINT;MFR:CAMERON,PN:2274164-01,CROSS SEC SHAPE SPHERICAL,MATL 316 SS,MATL GR STAINLESS STEEL,NOM SZ 6 IN,SURF FNSH SILVER PLATED | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | EA | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 59545.A | | BW-AREA 3 | ASSEMBLY;TYP RUPTURE DISC,SZ 22 IN IN,MATL WELDED STEEL,MATL GR X-80,COMPRISING RUPTURE DISC SUB 22 X 1.250 IN 27?#, H900M/MT PIN X H90M/MT W/2 PORTS 180 DEG APART, RATED 5500 PSIG AT 150 DEG F W/2000 PSIG MIN BACK PRESSURE(8 FT) | 144040 | MC 948 4 GUNFLINT D&E | EA | | | 1 | | 87750.24 | 87750.24 | |
| Deepwater Warehouse | Fieldwood | 59576.A | | DWW YARD C-VAN HLXU 616220-6 | CAP;MFR:CAMERON,PN:2181509-06,TYP FLOWLINE HUB,SZ 8 IN,CONN TYP AUTOCLAVE PORT 9/16 IN,COMPRISING PLUG; SEAL ID 6.393 IN; (2) O RINGS,SPCL FEATRS PRESSURE 15000 PSI | 123828 | MC 519 1 LONG LEAD ITEMS | EA | | | 1 | | 88354.9 | 88354.9 | |
| Deepwater Warehouse | Fieldwood | 59578.A | | MR-4-E | PLUG;MFR:CAMERON,PN:0303-43 REV A,TYP LOOPED | 127682 | VK 917 1 ST2 DRILL | EA | | | 1 | | 1500 | 1500 | |
| Deepwater Warehouse | Fieldwood | 59637.A | | MW-R8-2 | SUB;MFR:WORKSTRING,PN:CTMS7 PIN | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 2 | | 7200 | 14400 | |
| Deepwater Warehouse | Fieldwood | 59637.A | | DWW-YARD-C-VAN 402189 0 | SUB;MFR:WORKSTRING,PN:CTMS7 PIN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 7833 | 7833 | |
| Deepwater Warehouse | Fieldwood | 59656.A | | OS-GENERAL | SENSOR;MFR:RSI GLOBAL,PN:RSI / TREE SENSOR TEST SET,DIM SQ 21 X HT 22 IN,CABL LG 20 ft,SPCL FEATRS ELECTRICAL SCHEMATIC INCLUDED; 334A LOOP CALIBRATOR W/CIRCULAR CONNECTOR INSTALLED,MFR:RSI GLOBAL,QUOTE:NP0615770 | 203563 | Rio Grande Spares | EA | | | 1 | | 5953 | 5953 | |
| Deepwater Warehouse | Fieldwood | 59926.A | | MW-AREA 4 | FRAME;MFR:CAMERON,PN:222652-26 REV 02,TYP SCM SHIPPING | 123828 | MC 519 1 LONG LEAD ITEMS | EA | | | 0 | | 5595 | 0 | |
| Deepwater Warehouse | Fieldwood | 59727.A | | DWW-YARD | STAND;MFR:CAMERON,PN:223997-70,TYP SCM TEST | 123828 | MC 519 1 LONG LEAD ITEMS | EA | | | 0 | | 1500 | 0 | |
| Deepwater Warehouse | Fieldwood | 59733.A | | MW-R11-1 | VALVE, FLUSH;MFR:SKOFLO,PN:SSVGEZFS1500DA | AFE FW193006 | GENOVESA | EA | | | 1 | | 31980 | 31980 | |
| Deepwater Warehouse | Fieldwood | 59937.A | | MR-1-E | HOT STAB, ROV;MFR:OCEANEERING,PN:A05320-M,TYP DUAL PORT,PRESS RTNG 10000 PSI | | | EA | | | 1 | | 1218.27 | 1218.27 | |
| Deepwater Warehouse | Fieldwood | 59938.B | | MW-AREA 2 | LONG TERM COVER ASSEMBLY, J-PLATE, 8 LINES. MFR: AKER SOLUTIONS, PN: 10057795 | | | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 59741.A | | BW-AREA 3 | MODULE, COMMUNICATION;MFR:CAMERON,PN:223262-46,TYP SCM DUMMY TEST POD | 123828 | MC 519 1 LONG LEAD ITEMS | EA | | | 0 | | 75000 | 0 | |
| Deepwater Warehouse | Fieldwood | 59859.A | | MW-R8-3 | PACKER;MFR:HALLIBURTON,PN:212009599-2HAA | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 111545.6 | 111545.6 | |
| Deepwater Warehouse | Fieldwood | 60575.A | | DWW-YARD | SCREEN;MFR:SUPERIOR ENERGY SERVICES,PN:DF-450-250H-151FE-R2,TYP DYNAFLO DB,WT 15.1,LG 30 FT,MATL 13CR-110,SPCL FEATRS 200M,SPEC 316L | 127684 | VK 917 1 ST2 COMPLETE | EA | | | 3 | | 22790 | 68370 | |
| Deepwater Warehouse | Fieldwood | 60576.A | | DWW-YARD | SCREEN;MFR:SUPERIOR ENERGY SERVICES,PN:DF-450-250H-151FE-R3,TYP DYNAFLO DB,WT 15.1,LG 40 FT,CL SLHT,MATL 13CR-110,SPCL FEATRS 200M,SPEC 316L | 127684 | VK 917 1 ST2 COMPLETE | EA | | | 1 | | 22790 | 22790 | |
| Deepwater Warehouse | Fieldwood | 61117.A | | MR-GENERAL | MODULE;MFR:AKER,PN:8815-000726-60,TYP DUAL BRIDGE,O/P SM,APPLI COMPUTER,BRAND:CONTROLNET,BRAND UNKNOWN | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 6532.65 | 0 | |
| Deepwater Warehouse | Fieldwood | 61118.A | | MR-GENERAL | POWER SUPPLY;MFR:AKER,PN:8815-000782-48,PN:1756-PA72,I/P VOLT 85-265 VAC,POWER RTG 25 W,DIM 140 X 112 X 145 mm,APPLI COMPUTER,STD CSA, UL,BRAND:CONTROLLOGIX,BRAND:UNKNOWN | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 3110.78 | 0 | |
| Deepwater Warehouse | Fieldwood | 61120.A | | MR-GENERAL | MODULE;MFR:AKER,PN:8815-000782-50,PN:1756-IB32,32 POINT INPUT/OUTPUT,VOLT 10-31 V,COMPUTER,STD CSA, UL | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 1399.85 | 0 | |
| Deepwater Warehouse | Fieldwood | 61121.A | | MR-GENERAL | MODULE;MFR:AKER,PN:8815-000782-51,PN:1756-OB32,TYP 32 POINT INPUT/OUTPUT,VOLT 10-31 V,APPLI COMPUTER,STD CSA, UL | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 2022.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 61122.A | | MR-GENERAL | MODULE;MFR:AKER,PN:8815-000782-52,PN:1756-IF8,TYP 8-CHANNEL ANALOG INPUT,VOLT 0-10 V,APPLI COMPUTER | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 3421.86 | 0 | |
| Deepwater Warehouse | Fieldwood | 61123.A | | MR-GENERAL | PANEL, CONTROL;MFR:AKER,PN:10190723,TYP ONLINE CONTROL AND CONNECTION, MCS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 20220.1 | 0 | |
| Deepwater Warehouse | Fieldwood | 61124.A | | MR-GENERAL | SWITCH, NETWORK;MFR:AKER,PN:10160966,MFR:CISCO,PN:IE 3010,TYP ETHERNET,DIM WD 17.5 X HT 1.8 X DP 14 IN,LAYER 3, 1XAC PSU | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 12443.14 | 0 | |
| Deepwater Warehouse | Fieldwood | 61125.A | | MR-GENERAL | SERVER, AUTOMATIC DATA PROCESSING;MFR:AKER,PN:10074121,TYP PORT,DIM WD 6.60 X LG 16.80 X DP 1.60 IN,PWR SUPPLY 100-250 VAC, 50/60 HZ,STD CSA, UL,MN:DIGI TS16 MEI | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 6221.57 | 0 | |
| Deepwater Warehouse | Fieldwood | 61137.A | | MR-5-C | MODULE;MFR:AKER,PN:8814-060480-12,TYP ICON TOPSIDE EXTENDED MODEM,MN:1200 SERIES | 203563 | Rio Grande Spares | EA | | | 0 | | 3910 | 0 | |
| Deepwater Warehouse | Fieldwood | 61143.A | | MR-GENERAL | RACK, ELECTRONIC;MFR:AKER,PN:10187605,VOLT 120/208/240 V,WATT 600-1200 VA / 2.5 KVA | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 55510.21 | 0 | |
| Deepwater Warehouse | Fieldwood | 61144.A | | MR-GENERAL | RACK, ELECTRONIC;MFR:AKER,PN:10236194,VOLT 120/208/240 V,WATT 300-600 VA / 2.5 KVA | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 52671.54 | 0 | |
| Deepwater Warehouse | Fieldwood | 61145.A | | MR-5-B | UNIT;MFR:AKER,PN:10246629,TYP AUXILIARY CONNECTION | 203563 | Rio Grande Spares | EA | | | 0 | | 20527.53 | 0 | |
| Deepwater Warehouse | Fieldwood | 61148.A | | MR-5-C | FILTER;MFR:AKER,PN:10254893MFR: RITTAL,TYP OUTLET,WD 323 mm,LG 323 mm,SPCL FEATRS COLOR: RAL 7035 | 203563 | Rio Grande Spares | EA | | | 0 | | 1955 | 0 | |
| Deepwater Warehouse | Fieldwood | 61149.A | | MR-GENERAL | KEYBOARD;MFR:AKER,PN:10186368,APPLI MONITOR | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 4666.17 | 0 | |
| Deepwater Warehouse | Fieldwood | 61209.A | | OS-R1-S3 | KIT, VALVE REPAIR;MFR:CORNERSTONE,PN:413-430S449CC,COMPRISING 17-4PH SS BALL AND SEAT GASKETS, RTFE/ELGILOY STEM SEAL, LT JW VITON LIP SEALS AND O-RINGS,APPLI 430 SERIES BALL VALVE PEEK SEAT | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 2 | | 3710 | 7420 | |
| Deepwater Warehouse | Fieldwood | 61210.A | | OS-R1-S2 | VALVE, BALL;MFR:PRECISION TECH,PN:BV2-230KBF12MFR: ACECO,TYP COMPACT TRUNNION,CONN 1 SZ 2 IN,CL 10K | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 2785.71 | 2785.71 | |
| Deepwater Warehouse | Fieldwood | 61211.A | | OS-R1-S2/1 OF 2 OS-R1-FL/ 2 OF 2 | VALVE, CHECK;MFR:PRECISION TECH,PN:CV-662KCA12MFR: ACECO,TYP COMPACT SWING,VLV SZ 10 IN,CL 10K | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 9642.85 | 9642.85 | |
| Deepwater Warehouse | Fieldwood | 61212.A | | OS-R1-S2 | VALVE, CHECK;MFR:PRECISION TECH,PN:CV-635KCA12MFR: ACECO,TYP COMPACT SWING,VLV SZ 6 IN,CL 10K | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2142.86 | 2142.86 | |
| Deepwater Warehouse | Fieldwood | 61213.A | | OS-R1-S2 | VALVE, CHECK;MFR:PRECISION TECH,PN:CV-630KCA12MFR: ACECO,TYP COMPACT SWING,VLV SZ 2 IN,CL 10K | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 876.92 | 876.92 | |
| Deepwater Warehouse | Fieldwood | 61214.A | | OS-R1-S2 | VALVE, BALL;MFR:PRECISION TECH,PN:BV2-431KHA12MFR: ACECO,TYP COMPACT DOUBLE,CONN 1 SZ 2 IN,CL 10K | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 5571.43 | 5571.43 | |
| Deepwater Warehouse | Fieldwood | 61215.A | | OS-R1-S2 | VALVE;MFR:PRECISION TECH,PN:BVT-830KTA12MFR: ACECO,TYP COMPACT THROTTLE,CONN 1 SZ 2 IN,CL 10K | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 2442.86 | 2442.86 | |

13

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 61216.A | | OS-R1-S2 | KIT, VALVE REPAIR;MFR:CORNERSTONE,PN:413-AA8814,COMPRISING PEEK SEAT, 17-4PH SS BALL AND SEAT CARRIERS, RTFE/ELGILOY STEM SEAL, TFE LIP SEALS AND FACE SEALS, FLUOROSILICONE O-RINGS;APPLI:430 SERIES BALL VALVE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 4249.9 | 4249.9 | |
| Deepwater Warehouse | Fieldwood | 61217.A | | OS-R1-S2 | KIT, VALVE REPAIR;MFR:CORNERSTONE,PN:413-AA8815,COMPRISING PEEK SEAT, 17-4PH SS THROTTLE BALL AND SEAT CARRIERS, RTFE/ELGILOY STEM SEAL, TFE LIP SEALS AND FACE SEALS, FLUOROSILICONE O-RINGS,APPLI:430 SERIES BALL VALVE | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 6100 | 6100 | |
| Deepwater Warehouse | Fieldwood | 61218.A | | OS-R1-S2 | KIT, VALVE REPAIR;MFR:CORNERSTONE,PN:413-433544ÇCC,COMPRISING PEEK SEAT, 17-4PH SS BALL AND SEAT CARRIERS, RTFE/ELGILOY STEM SEAL, LT JW VITON LIP SEALS AND O-RINGS,APPLI:433 SERIES BALL VALVE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 8025 | 8025 | |
| Deepwater Warehouse | Fieldwood | 61219.A | | OS-R1-S2 | KIT, VALVE REPAIR;MFR:CORNERSTONE,PN:414-454424C,COMPRISING 17-4PH SS SEAT, NITRONIC 60 DISC, 17-4PH SS SHAFT,APPLI:454 SERIES CHECK VALVE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 4700 | 4700 | |
| Deepwater Warehouse | Fieldwood | 61220.A | | OS-R1-S2 | KIT;MFR:CORNERSTONE,PN:SOD20703.004,TYP COMPACT SOFT GOODS REPAIR,SZ 10 IN,COMPRISING 17-4 H1075 AND CF PEEK SEAT AND INSERTS, VITON/PTFE/GRAPHOIL SEALS | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 18531.96 | 18531.96 | |
| Deepwater Warehouse | Fieldwood | 61221.A | | OS-GENERAL | VALVE, BALL;MFR:PRECISION TECH,PN:BV2-262KBF12MFR: ACECO,TYP COMPACT TRUNNION,CONN 1 SZ 10 IN,CL 10K | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 15857.14 | 15857.14 | |
| Deepwater Warehouse | Fieldwood | 61222.A | | OS-GENERAL | VALVE, BALL;MFR:PRECISION TECH,PN:BV2-261KBF12MFR: ACECO,TYP COMPACT TRUNNION,CONN 1 SZ 8 IN,CL 10K | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 9857.14 | 9857.14 | |
| Deepwater Warehouse | Fieldwood | 61223.A | | OS-R1-S2 | VALVE, BALL;MFR:PRECISION TECH,PN:BV2-235KBF12MFR: ACECO,TYP COMPACT TRUNNION,CONN 1 SZ 6 IN,CL 10K | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 4585.71 | 4585.71 | |
| Deepwater Warehouse | Fieldwood | 61241.A | | DWW-YARD | CASING, OCTG;NOM SZ 7 IN,WT 32.00 lb/ft,MATL GR 13CR110M,PROCESS NA,CONN TYP VAM TOP,LG R1,DRIFT DIA 6 IN | | | FT | | | 20 | | 43.135 | 862.7 | |
| Deepwater Warehouse | Fieldwood | 61366.A | | DWW-YARD-C-VAN 401592 1 | VALVE, RELIEF;MFR:NOV,PN:PSV-1030,VLV SZ 4 X 6 IN,CONN TYP RTJ X RF,PRESS RANGE CL 900 X CL 300,OPRTD PILOT,ORFC SZ 2.853 IN,STD API | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 40301.25 | 40301.25 | |
| Deepwater Warehouse | Fieldwood | 61981.A | | DWW-YARD | PIPE;TYP LINE,NOM SZ NA,SCH NA,WALL THK 1.150 IN,MATL NA,MATL GR X65,PROCESS SEAMLESS,END CONN NA,LG 40 ft,COATG EXT BARE,STD API 5L,NOM PIPE SZ 8.625 IN | | MC 698 BIG BEND LONG LEADS | FT | | | 200 | | 116.48 | 23296 | |
| Deepwater Warehouse | Fieldwood | 61988.A | | MR-2-A | DISC, RUPTURE;MFR:FIKE,PN:A9311-G,TYP SPARE INTERNAL RUPTURE DISC,OPRTG PRESS RATED 5900 PSI,BST PRESS MINIMUM 4570 PSI,OP TEMP 150 | | | EA | | | 4 | | 1565.455 | 6261.82 | |
| Deepwater Warehouse | Fieldwood | 61989.A | | DWW-YARD | FRAME;MFR:AQUEOUS,PN:SCH-1100,DIM 6 X 1.5 X 2 ft,MATL CARBON STEEL,SPCL FEATRS DIVE STAGE GUIDE WEIGHT, 700-875 LBS | 141898 | VK 826 Neptune Extension | EA | | | 1 | | 3500 | 3500 | |
| Deepwater Warehouse | Fieldwood | 61992.A | | DWW-YARD | FRAME;MFR:GLOBAL DIVERS&MARINE,PN:61136,DIM 20 X 8 X 4 ft,MATL CARBON STEEL,SPCL FEATRS DIVING LARS SKID, 6000 LB SWL | | | EA | | | 1 | | 5366.51 | 5366.51 | |
| Deepwater Warehouse | Fieldwood | 61995.A | | DWW-YARD | FRAME;MFR:GLOBAL DIVERS&MARINE,PN:TGS-03,DIM 9 X 2.6 FT X 6 IN,MATL CARBON STEEL,SPCL FEATRS WET BELL TUGGER SKID, 5000 LB SWL | | | EA | | | 1 | | 1013.94 | 1013.94 | |
| Deepwater Warehouse | Fieldwood | 62365.A | | MW-R10-FL | VALVE, BALL;MFR:CORTEC,PN:BN114-1742001-30KC-0000-31LU88,TYP ASSEMBLY, COMPACT TRUNNION,CONN 1 SZ 7-1/16 IN,CONN 2 SZ 6-3/8 IN,CL 10000 PSI,TRIM SS 17-4PH-TC,SFTGDS VITON (EDR),SPCL FEATRS BONNET, RETAINER (XYLAN COATED),STD BS,MN 6AV1 | 203563 | Rio Grande Spares | EA | | | 1 | | 55680 | 55680 | |
| Deepwater Warehouse | Fieldwood | 62365.A | | MW-R10-FL | VALVE, BALL;MFR:CORTEC,PN:BN114-1742001-30KC-0000-31LU88,TYP ASSEMBLY, COMPACT TRUNNION,CONN 1 SZ 7-1/16 IN,CONN 2 SZ 6-3/8 IN,CL 10000 PSI,TRIM SS 17-4PH-TC,SFTGDS VITON (EDR),SPCL FEATRS BONNET, RETAINER (XYLAN COATED),STD BS,MN 6AV1 | 203563 | Rio Grande Spares | EA | | | 1 | | 55680 | 55680 | |
| Deepwater Warehouse | Fieldwood | 62367.A | | MW-R10-FL | VALVE, BALL;MFR:CORTEC,PN:BN114-160-6802-76KC-0000-320CC,TYP ASSEMBLY,CONN 1 SZ 1-13/16 IN,CL 10000 PSI,BDY MATL DUPLEX SS,MATL GR F51,TRIM 17-4-TC /17-4 NIT,SFTGDS EOL 985,ACTTR STYI, ION PLATED BONNET,STD BS,MN 6AV1 | 203563 | Rio Grande Spares | EA | | | 1 | | 23425 | 23425 | |
| Deepwater Warehouse | Fieldwood | 62368.A | | MW-R12-FL | VALVE, BALL;MFR:CORTEC,PN:BN182-1741901-30X-0000-31PU88,TYP ASSEMBLY, COMPACT , TRUNNION,CONN 1 SZ 7-1/16 IN,CONN 2 SZ 6-3/8 IN,CL 10000 PSI,BDY MATL 4130AS,TRIM STEM: 17-4PH,BALL: 17-PH, PEEK,SFTGDS VITON EDR,STD BS, API | 203563 | Rio Grande Spares | EA | | | 1 | | 58325 | 58325 | |
| Deepwater Warehouse | Fieldwood | 62369.A | | MW-R10-FL | SCREW, CAP;MFR:CORTEC,PN:BN575-F225200-07TC-1,HEAD FLAT,DIA 1-3/8 IN,THD UNC 8 TPI,LG 6-1/2 IN,MATL GR B7,SURF TRTMNT PTFE COATED PER SM.07,SPCL FEATRS REV A,APPLI VALVES ON LINES 1 AND 3 | 203563 | Rio Grande Spares | EA | | | 12 | | 75 | 900 | |
| Deepwater Warehouse | Fieldwood | 62370.A | | MW-R10-FL | SEAL;MFR:CORTEC,PN:BN580-161670-6900-1,TYP CLOSED CELL FOAM EXTRA, WEATHER,STD VALVES ON LINES 1 AND 3,REF:EC SZ-16 | 203563 | Rio Grande Spares | EA | | | 6 | | 14 | 84 | |
| Deepwater Warehouse | Fieldwood | 62371.A | | MW-R10-FL | SCREW, CAP;MFR:CORTEC,PN:BN575-F142400-27TC-1,HEAD FLAT,DIA 7/8 IN,THD UNC 9 TPI,LG 3 IN,MATL GR B7,SURF TRTMNT PTFE COATED PER SM.27,SPCL FEATRS REV A,APPLI VALVE ON LINE 2 | 203563 | Rio Grande Spares | EA | | | 6 | | 18 | 108 | |
| Deepwater Warehouse | Fieldwood | 62372.A | | MW-R10-FL | SEAL;MFR:CORTEC,PN:BN580-601073-6900-1,TYP CLOSED CELL FOAM EXTRA, WEATHER,APPLI VALVE ON LINE 2,REF:EC SZ-73 | 203563 | Rio Grande Spares | EA | | | 3 | | 4 | 12 | |
| Deepwater Warehouse | Fieldwood | 62453.A | | DWW-YARD-C-VAN 402189 0 | BLADDER, ACCUMULATOR;MFR:PROSERV,PN:070716,VOL CPCTY 5 gal,OPRTG PRESS 5000 PSI,SPEC 1-7/8UNF, BVI GAS | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 3570 | 0 | |
| Deepwater Warehouse | Fieldwood | 62453.A | | DWW-YARD-C-VAN 402189 0 | BLADDER, ACCUMULATOR;MFR:PROSERV,PN:070716,VOL CPCTY 5 gal,OPRTG PRESS 5000 PSI,SPEC 1-7/8UNF, BVI GAS | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 3570 | 0 | |
| Deepwater Warehouse | Fieldwood | 62535.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:2INFBA02MFR: MOMA,SZ 2 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1895.19 | 1895.19 | |
| Deepwater Warehouse | Fieldwood | 62536.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:4INEHA32-KMFR: MOMA,SZ 4 IN,CL 900,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 2513.08 | 2513.08 | |
| Deepwater Warehouse | Fieldwood | 62537.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INABF01MFR: MOMA,SZ 6 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 5303.95 | 5303.95 | |
| Deepwater Warehouse | Fieldwood | 62538.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INEHA32-KMFR: MOMA,SZ 6 IN,CL 900,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 4641.93 | 4641.93 | |
| Deepwater Warehouse | Fieldwood | 62539.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:8INBBA31MFR: MOMA,SZ 8 IN,CL 300,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 5303.95 | 10607.9 | |
| Deepwater Warehouse | Fieldwood | 62540.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:8INEHA32-KMFR: MOMA,SZ 8 IN,CL 900,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 4974.23 | 4974.23 | |
| Deepwater Warehouse | Fieldwood | 62541.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:2INABF71MFR: MOMA,SZ 2 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1233.18 | 1233.18 | |
| Deepwater Warehouse | Fieldwood | 62542.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INABA71MFR: MOMA,SZ 6 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 5303.94 | 5303.94 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 62543.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:2INABF01MFR: MOMA,SZ 2 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATING BALL VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 737.32 | 737.32 | |
| Deepwater Warehouse | Fieldwood | 62544.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INABA01MFR: MOMA,SZ 6 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 3647.6 | 3647.6 | |
| Deepwater Warehouse | Fieldwood | 62545.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:2INFBF12-LTMFR: MOMA,SZ 2 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION BALL VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 996.93 | 996.93 | |
| Deepwater Warehouse | Fieldwood | 62546.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:3INFHF02MFR: MOMA,SZ 3 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 1043.66 | 2087.32 | |
| Deepwater Warehouse | Fieldwood | 62547.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:2INFMA00MFR: MOMA,SZ 2 X 1/2 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI MONO-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 3 | | 2390.19 | 7170.57 | |
| Deepwater Warehouse | Fieldwood | 62548.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:2INKMA16MFR: MOMA,SZ 2 X 1/2 IN,CL 10000 PSI,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI MONO-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 3063.465 | 6126.93 | |
| Deepwater Warehouse | Fieldwood | 62549.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:3INABF71-LTMFR: MOMA,SZ 3 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATING BALL VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1090.4 | 1090.4 | |
| Deepwater Warehouse | Fieldwood | 62550.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:3INFBA02MFR: MOMA,SZ 3 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION BALL VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1233.18 | 1233.18 | |
| Deepwater Warehouse | Fieldwood | 62551.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:3INFHA02MFR: MOMA,SZ 3 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1043.66 | 1043.66 | |
| Deepwater Warehouse | Fieldwood | 62552.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INFHA02MFR: MOMA,SZ 6 IN,CL 1500,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 5919.23 | 5919.23 | |
| Deepwater Warehouse | Fieldwood | 62553.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:8INABA01MFR: MOMA,SZ 8 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 4640.725 | 9281.45 | |
| Deepwater Warehouse | Fieldwood | 62554.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:3INFCW02MFR: IFC,SZ 3 IN,CL 150,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 202.7 | 202.7 | |
| Deepwater Warehouse | Fieldwood | 62555.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INACW01MFR: IFC,SZ 6 IN,CL 150,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 507.44 | 507.44 | |
| Deepwater Warehouse | Fieldwood | 62556.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INBCW31MFR: IFC,SZ 6 IN,CL 300,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 676.26 | 676.26 | |
| Deepwater Warehouse | Fieldwood | 62557.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:4INECW32MFR: IFC,SZ 4 IN,CL 900,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 313.38 | 313.38 | |
| Deepwater Warehouse | Fieldwood | 62558.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INECW32MFR: IFC,SZ 6 IN,CL 900,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 676.26 | 676.26 | |
| Deepwater Warehouse | Fieldwood | 62559.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INECW32MFR: IFC,SZ 8 IN,CL 900,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1312.44 | 1312.44 | |
| Deepwater Warehouse | Fieldwood | 62560.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INACW71MFR: IFC,SZ 6 IN,CL 150,COMPRISING SPRING, HINGE PIN, STOP PIN, WASHER,APPLI DUAL PLATE CHECK VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 676.26 | 676.26 | |
| Deepwater Warehouse | Fieldwood | 62561.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:4INAFY83MFR: IFC,SZ 4 IN,CL 150,COMPRISING SEAT, PACKING, O-RING,APPLI CONCENTRIC BUTTERFLY VALVE COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 93.44 | 93.44 | |
| Deepwater Warehouse | Fieldwood | 62562.A | | DWW-YARD-C-VAN 401592 1 | KIT, VALVE REPAIR;MFR:ACADIAN,PN:2INABA83MFR: SHIPHAM,VLV SZ 2 IN,OPRTG PRESS CL 150,COMPRISING SLEEVE SEAL, SEATS, THRUST WASHER, GLAND PACKING,APPLI BALL VALVE | 203563 | Rio Grande Spares | EA | | | 1 | | 744.63 | 744.63 | |
| Deepwater Warehouse | Fieldwood | 62563.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:1DINEBF02MFR: MOMA,SZ 10 IN,CL 900,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 7338.39 | 14676.78 | |
| Deepwater Warehouse | Fieldwood | 62564.A | | DWW-YARD-C-VAN 401592 1 | KIT, VALVE REPAIR;MFR:ACADIAN,PN:6INAGA01MFR: WEIR,VLV SZ 6 IN,OPRTG PRESS CL 150,COMPRISING BODY SPIRAL WOUND GASKET (SS316+GRAPHITE), PACKING IN GRAFOIL,APPLI GATE VALVE | 203563 | Rio Grande Spares | EA | | | 1 | | 213.38 | 213.38 | |
| Deepwater Warehouse | Fieldwood | 62565.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:6INBBA31MFR: MOMA,SZ 6 IN,CL 300,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 3127.13 | 6254.26 | |
| Deepwater Warehouse | Fieldwood | 62566.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:2INBBA01MFR: MOMA,SZ 2 IN,CL 300,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1233.18 | 1233.18 | |
| Deepwater Warehouse | Fieldwood | 62567.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:3INABF71MFR: MOMA,SZ 3 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 2 | | 1328.42 | 2656.84 | |
| Deepwater Warehouse | Fieldwood | 62568.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:3INDHF10MFR: MOMA,SZ 3 IN,CL 600,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI TRUNNION-DBB COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 1090.4 | 1090.4 | |
| Deepwater Warehouse | Fieldwood | 62569.A | | DWW-YARD-C-VAN 401592 1 | KIT;MFR:ACADIAN,PN:4INABF01MFR: MOMA,SZ 4 IN,CL 150,COMPRISING O-RING/LIP SEAL, GRAPHITE, SPRING AND FRITEX,APPLI FLOATER COMMISSIONING | 203563 | Rio Grande Spares | EA | | | 1 | | 2915.48 | 2915.48 | |
| Deepwater Warehouse | Fieldwood | 62585.A | | DWW-YARD C-VAN 429796-0 | CENTRALIZER, SUB;MFR:WEATHERFORD,PN:54100SQHS21PG0A003,CASNG SZ 17-7/8 IN,WT 93.50 lb/ft,MATL GR P110,CONN TYP TENARISHYDRIL WEDGE 521,SPCL FEATRS (12) 465 BOWS 23.750 OD, EXTRA LENGTH ON PIN | 203389 | MC 339 SILVERGATE DRL | EA | | | 2 | | 19076 | 38152 | |
| Deepwater Warehouse | Fieldwood | 62613.A | | PUP JOINT RACK-TIER 1 | CROSSOVER, CASING;MFR:BENOIT,PN:17026,TOP CONN SZ 4-1/2 IN,TOP CONN WT 12.60 lb/ft,TOP CONN TYP VAM TOP BOX,BOT CONN SZ 5-1/2 IN,BOT CONN WT 17 lb/ft,BOT CONN TYP VAM TOP PIN,MATL GR 13CR80,LG 3 ft | | | EA | | | 1 | | 2551.3 | 2551.3 | |
| Deepwater Warehouse | Fieldwood | 62614.A | | PUP JOINT RACK-FLOOR | CROSSOVER, CASING;MFR:BENOIT,PN:16135,TOP CONN SZ 4-1/2 IN,TOP CONN WT 15.50 lb/ft,TOP CONN TYP BT5-6 PIN,BOT CONN SZ 6 IN,BOT CONN WT 30.90 lb/ft,BOT CONN TYP VAM TOP XP BOX,MATL GR HYPER 13CR110,PROCESS N/A,LG 2 ft | | | EA | | | 1 | | 2350.2 | 2350.2 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 62615.A | | PUP JOINT RACK-FLOOR | CROSSOVER, CASING;MFR:BENOIT,PN:17664,TOP CONN SZ 5-1/2 IN,TOP CONN WT 23 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 4-1/2 IN,BOT CONN WT 12.60 lb/ft,BOT CONN TYP VAM TOP BOX,MATL GR 13CR95,PROCESS N/A,LG 14 IN | | | EA | | | 1 | | 2063.19 | 2063.19 | | |
| Deepwater Warehouse | Fieldwood | 62650.B | | DWW-YARD | CAP;MFR:VECTOR,PN:PCA0B066-1,TYP TEMPORARY PRESSURE | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 102509.25 | 102509.25 | | |
| Deepwater Warehouse | Fieldwood | 62650.B | | DWW-YARD C-VAN TRDU 7275771 | CAP;MFR:VECTOR,PN:PCA0B066-1,TYP TEMPORARY PRESSURE | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 5 | | 102509.25 | 512546.25 | | |
| Deepwater Warehouse | Fieldwood | 62650.B | | DWW-YARD C-VAN TRDU 7275771 | CAP;MFR:VECTOR,PN:PCA0B066-1,TYP TEMPORARY PRESSURE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 102509.25 | 102509.25 | | |
| Deepwater Warehouse | Fieldwood | 62652.A | | PUP JOINT RACK-FLOOR | CROSSOVER, TUBING;MFR:BENOIT,PN:15939,TOP CONN SZ 3-1/2 IN,WT 9.30 lb/ft,TOP CONN TYP BTS-8 BOX,BOT CONN SZ 3-1/2 IN,BOT CONN WT 9.20 lb/ft,BOT CONN TYP VAM FJL PIN,MATL GR HYPER 13CR110,LG 14 IN | | | EA | | | 4 | | 620.2875 | 2481.15 | | |
| Deepwater Warehouse | Fieldwood | 62653.A | | PUP JOINT RACK-FLOOR | CROSSOVER, CASING;MFR:BENOIT,PN:16301,TOP CONN SZ 5-1/2 IN,TOP CONN WT 23 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 4-1/2 IN,BOT CONN WT 15.50 lb/ft,BOT CONN TYP BTS-6 PIN,MATL GR 13CR95,LG 2 ft | | | EA | | | 1 | | 1276.7 | 1276.7 | | |
| Deepwater Warehouse | Fieldwood | 62757.A | | PUP JOINT RACK-TIER 2 | CROSSOVER, CASING;MFR:BENOIT,PN:17374,TOP CONN SZ 5-1/2 IN,TOP CONN WT 23 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 6 IN,BOT CONN WT 30.90 lb/ft,BOT CONN TYP VAM TOP KP PIN,MATL GR 13CR95,LG 4 ft | | | EA | | | 1 | | 3709.37 | 3709.37 | | |
| Deepwater Warehouse | Fieldwood | 62758.A | | PUP JOINT RACK-FLOOR | CROSSOVER, CASING;MFR:BENOIT,PN:7441,TOP CONN SZ 5-1/2 IN,TOP CONN WT 29.70 lb/ft,TOP CONN TYP VAM ACE PIN,BOT CONN SZ 4-1/2 IN,BOT CONN WT 12.75 lb/ft,BOT CONN TYP BTS-6 PIN,MATL GR 13CR85,LG 2 ft | | | EA | | | 1 | | 1494.07 | 1494.07 | | |
| Deepwater Warehouse | Fieldwood | 62834.A | | PUP JOINT RACK-TIER 5 | CASING, OCTG;MFR:BENOIT,PN:16551,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR110,CONN TYP BTS-6 LOWER BCSD FLO TOOL,LG 14 ft | | | FT | | | 14 | | 404.3557142 | 5660.979999 | | |
| Deepwater Warehouse | Fieldwood | 62835.A | | PUP JOINT RACK-TIER 4 | CASING, OCTG;MFR:BENOIT,PN:17250,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR95,CONN TYP BTS-6 PIN / (BLANK) BCSD FLO-TOOL,LG 12 FT 4-1/2 IN,SPCL FEATRS PUP JOINT (LENGTH: 12 FT) | | | FT | | | 12 | | 525.1099999 | 6301.319999 | | |
| Deepwater Warehouse | Fieldwood | 62836.A | | PUP JOINT RACK-TIER 2 | CASING, OCTG;MFR:BENOIT,PN:17251,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR95,CONN TYP BTS-6 PIN / (BLANK) BCSD UPPER FLO-TOOL,LG 6 FT 4-1/2 IN,SPCL FEATRS PUP JOINT (LENGTH: 6 FT) | | | FT | | | 6 | | 398.5583333 | 2391.35 | | |
| Deepwater Warehouse | Fieldwood | 62900.A | | PUP JOINT RACK-TIER 1 | PUP JOINT, CASING;MFR:BENOIT,PN:18079,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR95,TOP CONN TYP BTS-6,BOT CONN TYP BTS-6,LG 6 ft,SPCL FEATRS WITH SQUARE SHOULDER | | | EA | | | 1 | | 2548.51 | 2548.51 | | |
| Deepwater Warehouse | Fieldwood | 62902.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, CASING;MFR:BENOIT,PN:17539,NOM SZ 5-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR95,TOP CONN TYP VAM FJL,BOT CONN TYP VAM FJL,LG 8 ft | | | EA | | | 2 | | 1758.08 | 3516.16 | | |
| Deepwater Warehouse | Fieldwood | 62922.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING;MFR:BENOIT,PN:17024,NOM SZ 5-1/2 IN,WT 20 lb/ft,MATL GR 13CR80,TOP CONN TYP VAM TOP T & C,BOT CONN TYP VAM TOP T & C,LG 8 ft | | | EA | | | 1 | | 1400.08 | 1400.08 | | |
| Deepwater Warehouse | Fieldwood | 62923.A | | PUP JOINT RACK-TIER 2 | PUP JOINT, CASING;MFR:BENOIT,PN:17023,NOM SZ 5-1/2 IN,WT 20 lb/ft,MATL GR 13CR80,TOP CONN TYP VAM TOP T & C,BOT CONN TYP VAM TOP T & C,LG 4 ft | | | EA | | | 2 | | 1109.975 | 2219.95 | | |
| Deepwater Warehouse | Fieldwood | 62924.A | | PUP JOINT RACK-TIER 2 | PUP JOINT, CASING;MFR:BENOIT,PN:17376,NOM SZ 6 IN,WT 30.90 lb/ft,MATL GR HYPER 13CR110,TOP CONN TYP VAM TOP KP PIN,BOT CONN TYP VAM TOP KP PIN,LG 6 ft | | | EA | | | 1 | | 3446.315 | 3446.315 | | |
| Deepwater Warehouse | Fieldwood | 62924.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, CASING;MFR:BENOIT,PN:17376,NOM SZ 6 IN,WT 30.90 lb/ft,MATL GR HYPER 13CR110,TOP CONN TYP VAM TOP KP PIN,BOT CONN TYP VAM TOP KP PIN,LG 6 ft | | | EA | | | 1 | | 3446.315 | 3446.315 | | |
| Deepwater Warehouse | Fieldwood | 62925.A | | CR TIER 2 | MANDREL, ASSEMBLY;MFR:BENOIT,PN:15524,TYP GAUGE,DIM LG 20 ft,SPCL FEATRS SIZE: 3-1/2 IN, WEIGHT: 9.30 LB/FT, MATERIAL GRADE: 13CR85, (8 FT PUP JOINT ON TOP AND 6 FT PUP JOINT ON BOTTOM) | | | EA | | | 1 | | 2693 | 2693 | | |
| Deepwater Warehouse | Fieldwood | 62954.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING;MFR:BENOIT,PN:16302,NOM SZ 6 IN,WT 30.90 lb/ft,MATL GR HYPER 13CR110,TOP CONN TYP VAM TOP KP T & C,BOT CONN TYP VAM TOP KP T & C,LG 10 ft | | | EA | | | 1 | | 4546.85 | 4546.85 | | |
| Deepwater Warehouse | Fieldwood | 62967.A | | | CASING, OCTG;MFR:BENOIT,PN:16550,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR110,CONN TYP BTS-6 S/C UPPER BCSD FLO-TOOL,LG 14 ft | | | FT | | | 14 | | 263.7721428 | 3692.81 | | |
| Deepwater Warehouse | Fieldwood | 62968.A | | PUP JOINT RACK-TIER 5 | CASING, OCTG;MFR:BENOIT,PN:14884,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR HYPER 13CR110,CONN TYP BTS-6 S/C UPPER BCSD FLO-TOOL,LG 14 ft | | | FT | | | 14 | | 407.8099999 | 5709.339999 | | |
| Deepwater Warehouse | Fieldwood | 62976.A | | PUP JOINT RACK-TIER 3 | PUP JOINT, TUBING;MFR:BENOIT,PN:13912,NOM SZ 3-1/2 IN,WT 9.30 lb/ft,MATL GR 13CR95,TOP CONN TYP BTS-8,BOT CONN TYP BTS-8,LG 8 ft | | | EA | | | 1 | | 945.66 | 945.66 | | |
| Deepwater Warehouse | Fieldwood | 62992.A | | PUP JOINT RACK-TIER 5 | PUP JOINT, CASING;MFR:BENOIT,PN:15051,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR110,TOP CONN TYP BTS-6 S/C SQUARE SHOULDER,BOT CONN TYP BTS-6 S/C SQUARE SHOULDER,LG 10 ft | | | EA | | | 1 | | 2692.19 | 2692.19 | | |
| Deepwater Warehouse | Fieldwood | 63035.A | | PUP JOINT RACK-FLOOR | PUP JOINT, CASING;MFR:BENOIT,PN:16136,NOM SZ 6 IN,WT 30.90 lb/ft,MATL GR HYPER 13CR110,TOP CONN TYP VAM TOP KP BOX,BOT CONN TYP VAM TOP KP BOX,LG 14 IN | | | EA | | | 2 | | 2032.995 | 4065.99 | | |
| Deepwater Warehouse | Fieldwood | 63047.A | | PUP JOINT RACK-TIER 1 | CROSSOVER, CASING;MFR:BENOIT,PN:16299,TYP FLOW COUPLING,TOP CONN SZ 4-1/2 IN,TOP CONN WT 15.50 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 4-1/2 IN,BOT CONN WT 15.10 lb/ft,BOT CONN TYP VAM TOP BOX,MATL GR 13CR95,LG 4 ft | | | EA | | | 1 | | 610.93 | 610.93 | | |
| Deepwater Warehouse | Fieldwood | 63049.A | | PUP JOINT RACK-TIER 3 | CROSSOVER, CASING;MFR:BENOIT,PN:18084,TYP FLOW COUPLING,TOP CONN SZ 4-1/2 IN,TOP CONN WT 15.50 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 4-1/2 IN,BOT CONN WT 13.50 lb/ft,BOT CONN TYP BTS-8 PIN,MATL GR HYPER 13CR110,LG 8 ft | | | EA | | | 2 | | 4413.74 | 8827.48 | | |
| Deepwater Warehouse | Fieldwood | 63050.A | | PUP JOINT RACK-TIER 3 | CROSSOVER, CASING;MFR:BENOIT,PN:18086,TYP FLOW COUPLING,TOP CONN SZ 4-1/2 IN,TOP CONN WT 15.50 lb/ft,TOP CONN TYP BTS-6 BOX,BOT CONN SZ 4-1/2 IN,BOT CONN WT 13.50 lb/ft,BOT CONN TYP BTS-8 PIN,MATL GR HYPER 13CR110,LG 8 ft | | | EA | | | 1 | | 4281.65 | 4281.65 | | |
| Deepwater Warehouse | Fieldwood | 63277.A | | PUP JOINT RACK-FLOOR | CASING, OCTG;MFR:BENOIT,PN:18578,TYP LIFT NUBBIN,NOM SZ 5-1/2 IN,WT 23.0 lb/ft,MATL GR P-110,CONN TYP BTS-6 BOX,LG 12 IN | | | FT | | | 1 | | 523.38 | 523.38 | | |
| Deepwater Warehouse | Fieldwood | 63281.A | | PR-R1-3 | CABLE ASSEMBLY;MFR:AKER,PN:10255944,TYP NULL-MODEM,LG 25 ft,SPEC CONNECTOR TYPE: FEMALE DB9 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 54.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 63282.A | | PR-R1-3 | CABLE ASSEMBLY;MFR:AKER,PN:10241290,SPEC 4W ROV RCPT - 12W CANNON PLUG | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 6894.72 | 0 | | |
| Deepwater Warehouse | Fieldwood | 63283.A | | PR-R1-3 | CABLE ASSEMBLY;MFR:AKER,PN:10241291,SPEC 6W ROV PLUG - 8W CANNON RCPT | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 6809.04 | 0 | | |
| Deepwater Warehouse | Fieldwood | 63284.A | | PR-R1-3 | CABLE ASSEMBLY;MFR:AKER,PN:10222348,LG 10 ft,SPEC CONNECTOR TYPE: DB9 M-M | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 70.83 | 0 | | |
| Deepwater Warehouse | Fieldwood | 63285.A | | PR-R1-3 | CABLE ASSEMBLY;MFR:AKER,PN:8815-000710-43,TYP EXTENSION,SPEC CONNECTOR TYPE: MALE DB9 | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 97.5 | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 63285.A | | SMALL PARTS ROOM FLOOR | CABLE ASSEMBLY,MFR:AKER,PN:BB15-000710-43,TYP EXTENSION,SPEC CONNECTOR TYPE: MALE DB9 | 203563 | Rio Grande Spares | EA | | | 0 | | 48.75 | 0 | |
| Deepwater Warehouse | Fieldwood | 63286.A | | PR-R1-3 | CONVERTER,MFR:AKER,PN:BB15-000465-02,TYP INTERFACE,WATT 600,SPEC CONNECTOR TYPE: DB9 FEMALE,XN:RS232/RS485 | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 428.5 | 0 | |
| Deepwater Warehouse | Fieldwood | 63287.A | | PR-R1-3 | CABLE ASSEMBLY,MFR:AKER,PN:10222024,SPEC BWAY CANNON PLUG-CANNON RCPT | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 4260 | 0 | |
| Deepwater Warehouse | Fieldwood | 63288.A | | PR-R1-3 | CABLE ASSEMBLY,MFR:AKER,PN:10240031,LG 25 ft,SPEC 12W CANNON PLUG-12W CANNON RCPT | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 4292.5 | 0 | |
| Deepwater Warehouse | Fieldwood | 63289.A | | PR-R1-3 | CABLE ASSEMBLY,MFR:AKER,PN:10241279,SPEC BW ROV RCPT - 12W CANNON PLUG | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 0 | | 7956.48 | 0 | |
| Deepwater Warehouse | Fieldwood | 63290.A | | PR-R1-3 | CABLE ASSEMBLY,MFR:AKER,PN:10222161,SPEC 4 WAY ROV PLUG-CANNON RCPT | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 8165.08 | 0 | |
| Deepwater Warehouse | Fieldwood | 63291.A | | PR-R1-3 | CABLE ASSEMBLY,MFR:AKER,PN:10241616,LG 6 ft,SPEC BW CANNON 5 TO 12W CANNON PLUG | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 2547.5 | 0 | |
| Deepwater Warehouse | Fieldwood | 63349.A | | PUP JOINT RACK-TIER 4 | PUP JOINT, CASING;MFR:BENOIT,PN:15053,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR110,TOP CONN TYP BTS-6 S/C LOWER COMBO,BOT CONN TYP BTS-6 S/C LOWER COMBO,LG 12 ft,SPCL FEATRS W/SQUARE SHOULDER | | | EA | | | 1 | | 3754.88 | 3754.88 | |
| Deepwater Warehouse | Fieldwood | 63373.A | | PUP JOINT RACK-FLOOR | NIPPLE, LANDING;MFR:BENOIT,PN:13914,TUBE OD 3-1/2 IN,CONN SZ 2-3/4 IN,CONN TYP BTS-8,MATL GR 13CR110,WT 9.30 lb/ft,BRAND:,BRAND:BCS | | | EA | | | 1 | | 3480.12 | 3480.12 | |
| Deepwater Warehouse | Fieldwood | 63374.A | | PUP JOINT RACK-FLOOR | NIPPLE, LANDING;MFR:BENOIT,PN:13913,TUBE OD 3-1/2 IN,CONN SZ 2-3/4 IN,CONN TYP BTS-8,MATL GR 13CR85,WT 9.30 lb/ft,BRAND:,BRAND:BCS | | | EA | | | 1 | | 3012.9 | 3012.9 | |
| Deepwater Warehouse | Fieldwood | 63552.A | | MW-R17-3 | VALVE, CONTROL;MFR:FISHER,PN:LV-1160B,TYP GLOBE,VLV SZ 1 IN,CONN TYP FLANGED RF,CL 150,BDY MATL CS ASME SA352 GR LCC,SPCL FEATRS BOLTED BONNET, MATERIAL: FMS20B101 (NACE MR0103-MR0175/ISO 15156), LCC PER FMS20B75 GROUP 1M (NACE MR0175-2002) | 203563 | Rio Grande Spares | EA | | | 0 | | 5760 | 0 | |
| Deepwater Warehouse | Fieldwood | 63553.A | | MW-R17-3 | VALVE, CONTROL;MFR:FISHER,PN:LV-1170B,TYP GLOBE,VLV SZ 1 IN,CONN TYP FLANGED RF,CL 150,BDY MATL CS ASME SA352 GR LCC,SPCL FEATRS BOLTED BONNET, MATERIAL: FMS20B101 (NACE MR0103-MR0175/ISO 15156), PATTERN KHA-LCC FMS20B101,MN D4 | 203563 | Rio Grande Spares | EA | | | 0 | | 6250 | 0 | |
| Deepwater Warehouse | Fieldwood | 63554.A | | MW-R17-3 | VALVE, CONTROL;MFR:FISHER,PN:LV-1210D,TYP GLOBE,VLV SZ 1 IN,CONN TYP FLANGED RT,CL 1500,BDY MATL STEEL GR LCC,TRIM S17400 SS H1150, STEM: S20910 SS W S17400 SS DBL H1150 PLUG,SPCL FEATRS STANDARD BONNET, MATERIAL: FMS20B101,MN D4 DVC6200 | 203563 | Rio Grande Spares | EA | | | 0 | | 6537 | 0 | |
| Deepwater Warehouse | Fieldwood | 65073.A | | DWW-YARD C-VAN 609785 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0101457-QP0003A,CASING SZ 7.750 IN,WT 46.10 lb/ft,MATL GR API Q125,CONN TYP TSH S23,SPCL FEATRS W/ (8) BOW SPRING, 12.875 IN OVER BOW, MINIMUM YIELD STRENGTH: 135000 PSI,MN:R3600, BST-25 | 203389 | MC 339 SILVERGATE DRL | EA | | | 0 | | 6727 | 0 | |
| Deepwater Warehouse | Fieldwood | 65073.A | | DWW-YARD C-VAN MOTU 045 9057 45G1 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0101457-QP0003A,CASING SZ 7.750 IN,WT 46.10 lb/ft,MATL GR API Q125,CONN TYP TSH S23,SPCL FEATRS W/ (8) BOW SPRING, 12.875 IN OVER BOW, MINIMUM YIELD STRENGTH: 135000 PSI,MN:R3600, BST-25 | 201560 | GC 40 02 Katmai 2 | EA | | | 11 | | 6263.33 | 68896.63 | |
| Deepwater Warehouse | Fieldwood | 65110.A | | DWW-YARD-C-VAN HJCU 133919 9 | VALVE, BALL;MFR:GALPERTI,PN:6'EHA32-4,TYP DOUBLE BLOCK AND BLEED,OPRTD GEAR WITH LOCKING DEVICE,CONN 1 SZ 6 IN,CONN 1 TYP FNPT,CONN 2 TYP FLANGED RT,CL 900,BDY MATL SS,MATL GR F51,FACE TO FACE LG 36 IN,TEMP RNGE -50 TO 300 DEG F,BRAND:, | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 17501 | 17501 | |
| Deepwater Warehouse | Fieldwood | 65111.A | | DWW-YARD-C-VAN HJCU 133919 9 | VALVE, BALL;MFR:GALPERTI,PN:EHA32-4,TYP DOUBLE BLOCK AND BLEED,OPRTD GEAR WITH LOCKING DEVICE,CONN 1 SZ 8 IN,CONN 1 TYP FNPT,CONN 2 TYP FLANGED RT,CL 900,BDY MATL SS,MATL GR F51,FACE TO FACE LG 45.3 IN,TEMP RNGE -50 TO 300 DEG F,BRAND:, | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 29829 | 29829 | |
| Deepwater Warehouse | Fieldwood | 65122.A | | DWW-YARD C-VAN HJCU-1481372 | CENTRALIZER, SUB;MFR:WEATHERFORD,PN:549WNKLQH523G12A002 2497737,CASING SZ 11-7/8 IN,WT 71.8 lb/ft,OD 15.62 IN,MATL GR G-125,CONN TYP TENARISHYDRIL S23,SPCL FEATRS WITH GUIDE SHOE | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 10695 | 21390 | |
| Deepwater Warehouse | Fieldwood | 65125.A | | DWW-YARD C-VAN 402189-0 | CENTRALIZER, SUB;MFR:WEATHERFORD,PN:549WNKMJQH523G12A002 2497730,CASING SZ 9-7/8 IN,WT 62.8 lb/ft,OD 13-1/2 IN,MATL GR G-125,CONN TYP TENARISHYDRIL S23,SPCL FEATRS WITH GUIDE SHOE | 203389 | MC 339 SILVERGATE DRL | EA | | | 1 | | 8527 | 8527 | |
| Deepwater Warehouse | Fieldwood | 65126.A | | DWW-YARD C-VAN 402189-0 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L4SANLQH523G12A001 2497481,CASNG OD 9-7/8 IN,CASNG WT 62.8 lb/ft,MATL GR Q125,CONN TYP TENARISHYDRIL S23 | 203389 | MC 339 SILVERGATE DRL | EA | | | 1 | | 16343 | 16343 | |
| Deepwater Warehouse | Fieldwood | 65127.A | | DWW-YARD C-VAN 402189-0 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L4SAXLQH523G12A002 2497478,CASNG OD 9-7/8 IN,CASNG WT 62.8 lb/ft,MATL GR Q125,CONN TYP TENARISHYDRIL S23 | 203389 | MC 339 SILVERGATE DRL | EA | | | 1 | | 16952 | 16952 | |
| Deepwater Warehouse | Fieldwood | 65129.A | | CR TIER 1 | PUP JOINT, CASING;MFR:BENOIT,PN:15048,NOM SZ 4-1/2 IN,WT 15.50 lb/ft,MATL GR 13CR110,TOP CONN TYP BTS-6,BOT CONN TYP BTS-6,LG 12 ft,SPCL FEATRS WITH SQUARE SHOULDER | | | EA | | | 4 | | 3175.7425 | 12702.97 | |
| Deepwater Warehouse | Fieldwood | 65140.A | | DWW-YARD-C-VAN HJCU 133919 9 | VALVE, BALL;MFR:GALPERTI,PN:4''EHA32-K,TYP 4 INCH,OPRTD GEAR WITH LOCKING DEVICE,CONN 1 TYP RTJ FLANGE WITH A193-B8M BOLTS,CONN 2 TYP FLANGE WITH A194-B8M BOLTS,PORT TYP FNPT,BDY MATL A182-F51,TRIM A182-F51,STYL DOUBLE BLOCK AND BLEED | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 11185 | 11185 | |
| Deepwater Warehouse | Fieldwood | 65651.A | | BW-AREA 3 | SUB;MFR:WORKSTRING,PN:SXO-534,TYP WEEP HOLE,ID 4-1/4 IN,OD 7 IN,LG 48 SH/SH IN,CONN TYP CTMS7 BOX X CTMS7 PIN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 1 | | 5200 | 5200 | |
| Deepwater Warehouse | Fieldwood | 65823.A | | MW-R10-1 | ASSEMBLY;MFR:SKOFLO,PN:21188-3,TYP FLUSHER,COMPRISING DUAL PATH, LF/LF CONFIGURATION, ROV RETRIEVABLE DOCKING CANISTER, WORKING PRESSURE: 15000 PSI | 126099 | MC 519 2 LONG LEAD CONST | EA | | | 0 | | 32619 | 0 | |
| Deepwater Warehouse | Fieldwood | 63863.A | | OS-R1-S2 | SEAL, RING;MFR:GRAYLOC,PN:H90174-29-1 | 203563 | Rio Grande Spares | EA | | | 2 | | 645 | 1290 | |
| Deepwater Warehouse | Fieldwood | 63865.A | | OS-R1-S2 | SEAL;MFR:GRAYLOC,PN:H90075-172,TYP PLATE | 203563 | Rio Grande Spares | EA | | | 2 | | 651 | 1302 | |
| Deepwater Warehouse | Fieldwood | 65916.A | | BW-AREA 3 | SUB;MFR:HUNTING ENERGY SERVICES,PN:NA,TYP BURST DISK,CASNG SZ 22 IN,CASNG WT 224 lb/ft,PRESS RTNG 7500 PSI AT 200 DEG F W/5250 PSI MIN BACK PRESS,SPCL FEATRS 1 IN W X80 590M/MT P X 8 APRS SUB, 8 FT OAL, 2 PORTS 180 DEG APART | 201560 | GC 40 02 Katmai 2 | EA | | | 1 | | 32273.02 | 32273.02 | |
| Deepwater Warehouse | Fieldwood | 65924.A | | MR-2-A | DISC, RUPTURE,MFR:FIKE,PN:NA,TYP INTERNAL,SPCL FEATRS 7500 PSI AT 200 DEG F W/5250 PSI MIN BACK PRESSURE | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 3334.23 | 6668.46 | |
| Deepwater Warehouse | Fieldwood | 65925.A | | MR-2-A | DISC, RUPTURE,MFR:FIKE,PN:NA,TYP EXTERNAL,SPCL FEATRS 2000 PSI AT 260 DEG F W/6920 PSI MIN BACK PRESSURE | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 3334.23 | 6668.46 | |
| Deepwater Warehouse | Fieldwood | 65953.A | | DWW YARD C-VAN 433422-0 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0104927-QP0003 A,CASNG SZ 17.875 IN,WT 93.50 lb/ft,MATL GR API P110,CONN TYP TENARISHYDRIL WEDGE 521,SPCL FEATRS W/ (18) BOW SPRING, 25 IN OVER BOW,MN:R3600, BST-36T | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 17425.71 | 34851.42 | |
| Deepwater Warehouse | Fieldwood | 65953.A | | DWW-YARD-C-VAN 045905 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0104927-QP0003 A,CASNG SZ 17.875 IN,WT 93.50 lb/ft,MATL GR API P110,CONN TYP TENARISHYDRIL WEDGE 521,SPCL FEATRS W/ (18) BOW SPRING, 25 IN OVER BOW,MN:R3600, BST-36T | 201560 | GC 40 02 Katmai 2 | EA | | | 3 | | 17425.71 | 52277.13 | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 65955.A | | BW-AREA 3 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0101433-QP0003 A,CASNG SZ 11.875 IN,WT 71.80 lb/ft,MATL GR API Q125,CONN TYP TENARISHYDRIL WEDGE 523,SPCL FEATRS W/ (12) BOW SPRING, 16.750 IN OVER BOW,MN:R3600, BST-258 | 201560 | GC 40 02 Katmai 2 | EA | | | 6 | | 8540 | 51240 | | |
| Deepwater Warehouse | Fieldwood | 65955.A | | DWW-YARD C-VAN 968233-Scrapped and sold to Louisiana Scrap-03/19/19 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0101433-QP0003 A,CASNG SZ 11.875 IN,WT 71.80 lb/ft,MATL GR API Q125,CONN TYP TENARISHYDRIL WEDGE 523,SPCL FEATRS W/ (12) BOW SPRING, 16.750 IN OVER BOW,MN:R3600, BST-258 | 201560 | GC 40 02 Katmai 2 | EA | | | 0 | | 8540 | 0 | | |
| Deepwater Warehouse | Fieldwood | 65956.A | | DWW-YARD C-VAN HJCU-1481372 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0108364,TYP R3600,CASNG SZ 10.125 IN,WT 79.22 LB/FT,MATL GR API Q125,CONN TYP VAM SLIJ-II,SPCL FEATRS W/ MINIMUM YIELD STRENGTH: 135000, 16.625 IN OVER BOW,MN:R3600, BST-338 | 201560 | GC 40 02 Katmai 2 | EA | | | 6 | | 7282.86 | 43697.16 | | |
| Deepwater Warehouse | Fieldwood | 66085.A | | BW-R6-2 | METER, FLOW;MFR:SMITH METER,PN:FE-8016,TYP POSITIVE DISPLACEMENT,DSGN:RTNG CL 150,SZ 4 IN,CONN TYP FLANGED RF,MN:F4-53 | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 28703.26 | 28703.26 | | |
| Deepwater Warehouse | Fieldwood | 66204.A | | BW-AREA 3 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L49ANLQHS23012A001,CASNG OD 11-7/8 IN,CASNG WT 71.8#,MATL GR Q125,CONN TYP HYD-523,MFR:WEATHERFORD,MN:L49AN | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 14817 | 29634 | | |
| Deepwater Warehouse | Fieldwood | 66206.A | | BW-AREA 3 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L49AXCSU12813A001,TYP SINGLE LARGE BORE FLOW ACTIVATED ALUMINUM FLAPPER VALVE,CASNG OD 11-7/8 IN,CASNG WT 71.8 lb/ft,MATL GR Q125,CONN TYP HYD 523 | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 15072 | 30144 | | |
| Deepwater Warehouse | Fieldwood | 66211.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L49ANXCSU12813A001,TYP SINGLE LARGE BORE FLOW ACTIVATED ALUMINUM FLAPPER VALVE,CASNG OD 10-1/8 IN,CASNG WT 79.22 lb/ft,MATL GR Q125,CONN TYP SLIJ-II | 201560 | GC 40 02 Katmai 2 | EA | | | 2 | | 10476 | 20952 | | |
| Deepwater Warehouse | Fieldwood | 66212.A | | BW-AREA 3 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L49ANXCSU12813A001,TYP SINGLE LARGE BORE FLOW ACTIVATED ALUMINUM FLAPPER VALVE,CASNG OD 10-1/8 IN,CASNG WT 79.22 lb/ft,MATL GR Q125,CONN TYP SLIJ-II | 201560 | GC 40 02 Katmai 2 | EA | | | 1 | | 10730 | 10730 | | |
| Deepwater Warehouse | Fieldwood | 66212.A | | DWW-YARD C-VAN HJCU-1481372 | COLLAR, FLOAT;MFR:WEATHERFORD,PN:L49ANXCSU12813A001,TYP SINGLE LARGE BORE FLOW ACTIVATED ALUMINUM FLAPPER VALVE,CASNG OD 10-1/8 IN,CASNG WT 79.22 lb/ft,MATL GR Q125,CONN TYP SLIJ-II | 201560 | GC 40 02 Katmai 2 | EA | | | 1 | | 10730 | 10730 | | |
| Deepwater Warehouse | Fieldwood | 66227.A | | PR-R2-1 | KIT;MFR:FMC TECHNOLOGIES,PN:P2000054824,TYP WIRELINE PLUG REDRESS,CL 15000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 28554.33 | 0 | | |
| Deepwater Warehouse | Fieldwood | 66228.A | | PR-R1-1 | KIT;MFR:FMC TECHNOLOGIES,PN:P2000054317,TYP WIRELINE PLUG REDRESS,CL 15000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 34590.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 66955.A | | DWW-YARD-C-VAN CCLU 667229 | CENTRALIZER,MFR:HALLIBURTON,PN:102528668,TYP UROS,ID 7-3/4 IN,HOLE SZ 9-1/2 IN | 203389 | MC 339 SILVERGATE DRL | EA | | | 48 | | 260.02 | 12480.96 | | |
| Deepwater Warehouse | Fieldwood | 66956.A | | DWW-YARD-C-VAN CCLU 667229 | COLLAR, STOP;MFR:HALLIBURTON,PN:102607903,TYP ARC SLIM, SLIP ON, ACE RATCHET,DIM 7-3/4 IN | 203389 | MC 339 SILVERGATE DRL | EA | | | 96 | | 594.72 | 57093.12 | | |
| Deepwater Warehouse | Fieldwood | 66962.A | | MR-4-C | SCREW, SET;MFR:FMC TECHNOLOGIES,PN:OP-79-0532,HD STYL HEX SOCKET DRIVE,NOM THD DIA 0.375 IN,THD 16UNC-2A/3A,THD LG 0.75 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 99.03 | 0 | | |
| Deepwater Warehouse | Fieldwood | 66963.A | | MR-4-C | SCREW, SET;MFR:FMC TECHNOLOGIES,PN:P143307,HD STYL HEX SOCKET DRIVE,NOM THD DIA 0.375 IN,THD 16UNC-2A/3A,THD LG 0.88 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 99.36 | 0 | | |
| Deepwater Warehouse | Fieldwood | 66964.A | | MR-4-C | SCREW, SET;MFR:FMC TECHNOLOGIES,PN:P143497,HD STYL HEX SOCKET DRIVE,NOM THD DIA 0.375 IN,THD 16UNC-2A/3A,THD LG 0.8 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 66.26 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67273.A | | DWW-YARD-C-VAN HJCU 133919 | POSITIONER, VALVE;MFR:CORTEC,PN:9468NBY2812200MFR: WESTLOCK,TYP NON INDUCTIVE ROTARY,CONN SZ 3/4 IN,CONN TYP FNPT,SPCL FEATRS SWITCHBOX,STD BM2-Y | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 3 | | 865 | 2595 | | |
| Deepwater Warehouse | Fieldwood | 67274.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, SEAL;MFR:CORTEC,PN:SDV-01308,PN:SDV-0140B,TYP SPARE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2235 | 2235 | | |
| Deepwater Warehouse | Fieldwood | 67275.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, SEAL;MFR:CORTEC,PN:SDV-9060A,PN:SDV-9060B,TYP SPARE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2235 | 2235 | | |
| Deepwater Warehouse | Fieldwood | 67279.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, VALVE REPAIR;MFR:CORTEC,PN:BN114-1708700-3000-0000-31PU88,TYP MAJOR | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 5895 | 5895 | | |
| Deepwater Warehouse | Fieldwood | 67280.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, VALVE REPAIR;MFR:CORTEC,PN:BN182-1645703-3000-0000-31PU88,TYP MAJOR | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2897 | 2897 | | |
| Deepwater Warehouse | Fieldwood | 67281.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, VALVE REPAIR;MFR:CORTEC,PN:BN182-1702200-3000-0000-31PU88,TYP MAJOR | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 5794 | 5794 | | |
| Deepwater Warehouse | Fieldwood | 67282.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, SEAL;MFR:CORTEC,PN:SDV-0130,PN:SDV-0140,PN:SDV-0140A,PN:SDV-01300,PN:SDV-0130A,TYP SPARE | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 2 | | 870 | 1740 | | |
| Deepwater Warehouse | Fieldwood | 67440.A | | DWW-YARD-C-VAN 401592 1 | MOTOR;MFR:SUNSOURCE,PN:ADPM5.4X25K5.5K,TYP MOTOR,SPEC 5,500 PSI, 5.40 GPM, 25 HP460V/60HZ/3PH, 1800 RPM, 120V/60HZ/1PH HEATERS, CSA & UL CERT | 203563 | Rio Grande Spares | EA | | | 1 | | 22390 | 22390 | | |
| Deepwater Warehouse | Fieldwood | 67443.A | | BW-AREA 2 | SEPARATOR;MFR:SULZER,PN:9011171,TYP GIRZ CYCLONE INLET DEVICE,MN:M80-1010/1020,ALL BOLTING AND NITRILE GASKETS, NOZZLE (DIA 12 X LG 62 IN), DUPLEX 22015 INCLUDING MALLACHEVRON V30 MIST ELIMINATOR MOTION BAFFLE (OD: 84 IN, MATERIAL: SS 316L) | 139351 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 38900 | 38900 | | |
| Deepwater Warehouse | Fieldwood | 67444.A | | MR-5-D | SEAL, RING;MFR:GRAYLOC,PN:50533N,THK 14 mm,MATL AS AISI 4140,CLR GREEN,SPCL FEATRS MATERIAL: PTFE, CTD | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 63 | 63 | | |
| Deepwater Warehouse | Fieldwood | 67444.A | | MR-GENERAL | SEAL, RING;MFR:GRAYLOC,PN:50533N,THK 14 mm,MATL AS AISI 4140,CLR GREEN,SPCL FEATRS MATERIAL: PTFE, CTD | 203563 | Rio Grande Spares | EA | | | 2 | | 63 | 126 | | |
| Deepwater Warehouse | Fieldwood | 67445.A | | MR-GENERAL | SEAL, RING;MFR:GRAYLOC,PN:H91993-1 | 203563 | Rio Grande Spares | EA | | | 4 | | 1890 | 7560 | | |
| Deepwater Warehouse | Fieldwood | 67452.A | | DWW-YARD-C-VAN 968233-Scrapped and sold to Louisiana Scrap-03/19/19 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0108636-QP0003 A,CASNG SZ 7 IN,WT 35 PPF,MATL AS,MATL GR P-110,BOW SZ 13.625 IN,CONN TYP HYD 523,SPCL FEATRS TENARISHYDRIL WEDGE 523; OVER BOW: BTS-338 (6) FLANGE,MFR:CORTEC,PN:BN365-1625504-3000-1,TYP BUILD,DIM 6-9/16 | 203389 | MC 339 SILVERGATE DRL | EA | | | 0 | | 6287.14 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67455.A | | BW-R3-3 | IN,MATL AS 4130,ORPTG PRESS 10000 PSI,SPCL FEATRS HP AUTOCLAVE | 203563 | Rio Grande Spares | EA | | | 2 | | 3055 | 6110 | | |
| Deepwater Warehouse | Fieldwood | 67500.A | | MW-R3-1 | FLYING LEAD;MFR:AKER,PN:8B15-000778-25,ELECTRICAL,325 ft,8-WAY | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 19983 | 19983 | | |
| Deepwater Warehouse | Fieldwood | 67501.A | | DWW-YARD-C-VAN 433422 0 | FLYING LEAD;MFR:AKER,PN:8B15-000776-25,ELECTRICAL,325 ft,4-WAY | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 18593 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67502.A | | MW-R5-2 | FLYING LEAD;MFR:AKER,PN:8B15-000778-25,ELECTRICAL,30 ft,4-WAY | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 9153 | 9153 | | |
| Deepwater Warehouse | Fieldwood | 67503.A | | DWW-YARD | FLYING LEAD;MFR:AKER,PN:10221577,LG 100 m,STEEL,B-LINE, OIE, M1 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 111939 | 111939 | | |
| Deepwater Warehouse | Fieldwood | 67504.A | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:10218351,100 m,STEEL,4-LINE, OIE M1 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 105739 | 105739 | | |
| Deepwater Warehouse | Fieldwood | 67505.A | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:10219046,2-LINE,STEEL,OIE M1 TO OIE M1 | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 122159 | 122159 | | |
| Deepwater Warehouse | Fieldwood | 67505.A | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:10219046,2-LINE,STEEL,OIE M1 TO OIE M1 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 54953 | 54953 | | |
| Deepwater Warehouse | Fieldwood | 67509.B | | DWW-YARD-C-VAN DNVU-2051995 | CAP;MFR:ODI,PN:10205537,TYP ELECTRICAL CONNECTOR SHORTING,CONN TYP 4-PIN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 15 | | 4830.75 | 72461.25 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 67512.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-853,OD 10 IN,SPEC THUNDER HAWK TOPSIDE,SIZE: 3 FT-1 IN X 1 FT-9.25 IN X 3 FT-10.5 IN, 3 FLANGE, WEIGHT: 1.372 LBS, WITH 90 DEG AND 45 DEG, WOL | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 7275 | 7275 | | |
| Deepwater Warehouse | Fieldwood | 67513.B | | MW-R15-3 | JUNCTION PLATE, SUBSEA;MFR:OCEANEERING,PN:428798,TYP M1 REMOVABLE J PLATE, HYDRAULIC,MN:IWOCS, 12-WAY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 37500 | 37500 | | |
| Deepwater Warehouse | Fieldwood | 67513.B | | MW-R16-3 | JUNCTION PLATE, SUBSEA;MFR:OCEANEERING,PN:428798,TYP M1 REMOVABLE J PLATE, HYDRAULIC,MN:IWOCS, 12-WAY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 37500 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67513.B | | MW-R15-2 | JUNCTION PLATE, SUBSEA;MFR:OCEANEERING,PN:428798,TYP M1 REMOVABLE J PLATE, HYDRAULIC,MN:IWOCS, 12-WAY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 37500 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67514.B | | MW-R17-2 | PLATE;MFR:OCEANEERING,PN:0428795,TYP M1 REMOVABLE TEST AND FLUSHING | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 33620.25 | 33620.25 | | |
| Deepwater Warehouse | Fieldwood | 67515.B | | MR-GENERAL | JUMPER;MFR:OCEANEERING,PN:0428785,TYP TEST OPTICAL,WITH PIGTAIL | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 19062 | 38124 | | |
| Deepwater Warehouse | Fieldwood | 67517.A | | MR-GENERAL | JUMPER;MFR:OCEANEERING,PN:428786,TYP TEST OPTICAL RECEPTACLE,MFR_SERIES/VERSION 8FOSM,MN:HYDRALIGHT,TOP ASSEMBLY, WITH PIGTAIL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 24036 | 48072 | | |
| Deepwater Warehouse | Fieldwood | 67518.B | | MW-R16-FL | CAP;MFR:OCEANEERING,PN:423685,SPCL FEATRS WITH INTENSIFIERS ASSEMBLY, M1 LONG TERM PROTECTIVE COVER, INTENSIFERS AUX PLATE;MFR:OCEANEERING,TYP: LOGIC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 155468.25 | 155468.25 | | |
| Deepwater Warehouse | Fieldwood | 67519.B | | MW-R15-FL | PLATE;MFR:OCEANEERING,PN:429318,TYP M2 FIXED T AND F,SPCL FEATRS 27-WAY, 27-LINE ASSEMBLY | 204563 | Dantzler Chemical Injection | EA | | | 1 | | 41788.5 | 41788.5 | | |
| Deepwater Warehouse | Fieldwood | 67520.B | | DWW-FRONT YARD | CONNECTOR;MFR:VECTOR,PN:101278-00MFR: FREUDENBERG,DIM 8 IN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 177555 | 177555 | | |
| Deepwater Warehouse | Fieldwood | 67520.B | | DWW-FRONT YARD | CONNECTOR;MFR:VECTOR,PN:101278-00MFR: FREUDENBERG,DIM 8 IN | 203563 | Rio Grande Spares | EA | | | 1 | | 171028.6 | 171028.6 | | |
| Deepwater Warehouse | Fieldwood | 67521.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-854,OD 8 IN,OD 10 IN,LG 7 FT-2 IN,SPEC THUNDER HAWK TOPSIDE,W/4-O-LET, TEE (SIZE: 8 X 4 X 10 IN), ECC RED 10X8 AND 8 FLANGE, WEIGHT: 2.112 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 8985 | 8985 | | |
| Deepwater Warehouse | Fieldwood | 67523.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-854,OD 10 IN,LG 12 FT-5-7/8 IN,SPEC THUNDER HAWK TOPSIDE,W/2 FLANGE, WEIGHT: 1.804 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 6315 | 6315 | | |
| Deepwater Warehouse | Fieldwood | 67528.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-856,OD 8 IN,SPEC THUNDER HAWK TOPSIDE,SIZE: 1 FT-6-11/16 IN X 2 FT-9-9/16 IN, W/2-90 DEG, 2 FLANGE, WEIGHT: 708 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 5925 | 5925 | | |
| Deepwater Warehouse | Fieldwood | 67530.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-857,ID 4 IN,OD 8 IN,SPEC THUNDER HAWK TOPSIDE,W/6-90 DEG, TEE AND 3-FLANGE, WEIGHT: 844 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 4087.5 | 4087.5 | | |
| Deepwater Warehouse | Fieldwood | 67531.B | | DWW-YARD | SPOOL;MFR:ACADIAN,PN:PC-861,OD 8 IN,LG 6 FT-11-1/2 IN,SPEC THUNDER HAWK TOPSIDE,W/O-LET, 3 FLANGE, WEIGHT: 864 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 6082.5 | 6082.5 | | |
| Deepwater Warehouse | Fieldwood | 67532.B | | BW-R6-2 | SPOOL;MFR:ACADIAN,PN:PC-858,ID 4 IN,LG 2 FT-1-5/16 IN,SPEC THUNDER HAWK TOPSIDE,W/2 FLANGE, WEIGHT: 150 LBS | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2325 | 2325 | | |
| Deepwater Warehouse | Fieldwood | 67535.A | | MW-R15-2 | PLATE;MFR:OCEANEERING,PN:0429317,TYP M2 REMOVABLE TEST AND FLUSHING,SPCL FEATRS 27 WAY, 27 LINE ASSEMBLY | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 59735 | 119470 | | |
| Deepwater Warehouse | Fieldwood | 67536.A | | DWW YARD C-VAN HLXU 616220-6 | VALVE, BALL;MFR:EDGEN MURRAY,PN:EBF02,OPRTD 2 HANDLE,CONN 1 SZ 10 IN,CONN 1 TYP RTJ ENDS,CL 900 lb,PORT TYP FULL,BDY MATL CS,TRIM ENP,SPCL FEATRS TRUNNION MOUNTED,MATL SPEC ASTM A105N,MFR:KF VALVE,MN:XJ-700 | 203563 | Rio Grande Spares | EA | | | 1 | | 14488 | 14488 | | |
| Deepwater Warehouse | Fieldwood | 67537.A | | SMALL PARTS ROOM FLOOR | CONNECTOR, COMMUNICATION;MFR:AKER,PN:10180143,CNCTR TYP RJ45 TO DB-9 MODEM ADAPTER | 203563 | Rio Grande Spares | EA | | | 0 | | 7.81 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67538.A | | SMALL PARTS ROOM FLOOR | CABLE ASSEMBLY;MFR:AKER,PN:10155419,TERM TYP DB37, MALE TO FEMALE,LG 5 ft | 203563 | Rio Grande Spares | EA | | | 0 | | 59.91 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67539.A | | SMALL PARTS ROOM FLOOR | CABLE ASSEMBLY;MFR:AKER,PN:10155480,TERM TYP DB37, MALE TO FEMALE MAT,LG 10 ft | 203563 | Rio Grande Spares | EA | | | 0 | | 72.81 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67543.A | | MW-R16-1 | PLATE;MFR:OCEANEERING,PN:0428795,TYP M1 REMOVABLE TEST AND FLUSHING,SPCL FEATRS 14-WAY, 14 LINE ASSEMBLY | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 44827 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67544.A | | MW-R16-1 | PLATE;MFR:OCEANEERING,PN:0428794,TYP M1 FIXED TEST AND FLUSHING,SPCL FEATRS 14-WAY, 14-LINE ASSEMBLY | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 3 | | 34780 | 104340 | | |
| Deepwater Warehouse | Fieldwood | 67544.A | | MW-16-2 | PLATE;MFR:OCEANEERING,PN:0440488,TYP M1 FIXED TEST AND FLUSHING,SPCL FEATRS 14-WAY, 14-LINE ASSEMBLY | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 34780 | 34780 | | |
| Deepwater Warehouse | Fieldwood | 67548.B | | MW-R16-1 | PLATE;MFR:OCEANEERING,PN:0428794,TYP M1 FIXED TEST AND FLUSHING,SPCL FEATRS 14-WAY, 14-LINE ASSEMBLY | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 26085 | 26085 | | |
| Deepwater Warehouse | Fieldwood | 67545.A | | MW-R17-3 | LOGIC CAP;MFR:OCEANEERING,PN:428777,TYP M1,SPCL FEATRS 14-WAY 14-LINE COVER;MFR:OCEANEERING,PN:0428790,TYP 4 WAY ELECTRICAL LTHC | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 45427 | 45427 | | |
| Deepwater Warehouse | Fieldwood | 67546.A | | MW-R16-1 | ODI/NAUTILUS ELECTRICAL LONG TERM PROTECTIVE,SPCL FEATRS RECEPTACLE COMPENSATED W/LOOPS 1-3 AND 2-4 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 3 | | 4202 | 12606 | | |
| Deepwater Warehouse | Fieldwood | 67547.A | | MR-3-D | FLYING LEAD;MFR:OCEANEERING,PN:0434791,4 WAY ROV ELECTRICAL,WITH CIRCUIT LOOPS 1-3 AND 2-4 TITANIUM | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 3 | | 3778 | 11334 | | |
| Deepwater Warehouse | Fieldwood | 67548.A | | MW-10-FL | O RING;MFR:CORTEC,PN:BN685-369-90-490D-1,PN:DASH 369,MATL PC BUNA,OD 8 3/8 IN,ID 8 IN,WD 3/16 IN,SHOR HRDNSS DURO 90,CLR BLACK,TEMP RNGE -15 TO 400 DEG F,SPCL FEATRS PER SM 49 | 203563 | Rio Grande Spares | EA | | | 3 | | 8.125 | 24.375 | | |
| Deepwater Warehouse | Fieldwood | 67549.A | | MW-10-FL | SEAL, OIL;MFR:CORTEC,PN:BN580-1612700-9083-1,TYP LIP,ID 6-3/8 IN,OD 8 IN,SPCL FEATRS FACE; 10K,REF:LD063710 | 203563 | Rio Grande Spares | EA | | | 2 | | 174 | 348 | | |
| Deepwater Warehouse | Fieldwood | 67550.A | | BW-R3-3 | SCREW, CAP;MFR:CORTEC,PN:BN575-F225200-27MX-1,HEAD FLAT,DIA 1-3/8 IN,THD UNC 8 TPI,LG 6-1/2 IN,SURF TRTMNT XYLAN COATED,SPCL FEATRS LB7 | 203563 | Rio Grande Spares | EA | | | 32 | | 142 | 4544 | | |
| Deepwater Warehouse | Fieldwood | 67558.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:10219329,TYP ENTHERNET PATCH,LG 10 FT,MFR:AKER,MN:CAT6/TIA568B | 203563 | Rio Grande Spares | EA | | | 0 | | 18.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67559.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:10219510,TYP ENTHERNET PATCH,LG 15 FT,MFR:AKER,MN:CAT6/TIA568B | 203563 | Rio Grande Spares | EA | | | 0 | | 21.25 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67560.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:10076045,TYP SERIAL PORTSERVER | 203563 | Rio Grande Spares | EA | | | 0 | | 48.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67561.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:10177068,TYP USB,LG 6 ft,TERM TYP A MALE TO A MALE | 203563 | Rio Grande Spares | EA | | | 0 | | 7.81 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67563.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:BB15-000782-54,MN:1492-AJD5 TO B CABLE ASS | 203563 | Rio Grande Spares | EA | | | 0 | | 386.7 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67564.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:BB15-000782-55,SPEC 1492-CABLE02SZ,205M CABLE,MN:1492-CABLE02SZ | 203563 | Rio Grande Spares | EA | | | 0 | | 369.25 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67565.A | | SMALL PARTS ROOM FLOOR | CABLE ASSEMBLY;MFR:AKER,PN:BB14-000634-41,TYP MODEM SIGNAL CABLE;MFR:AKER,PN:10164394,SPEC BNC M TO M, | 203563 | Rio Grande Spares | EA | | | 0 | | 507.5 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67567.A | | SMALL PARTS ROOM FLOOR | 750OHMS,MFR:AKER,MN:RG59B/U | 203563 | Rio Grande Spares | EA | | | 0 | | 25.19 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67568.A | | SMALL PARTS ROOM FLOOR | CONVERTER;MFR:AKER,PN:10144574,TYP ETHERNET AND OPTICAL,MN:RGD | 203563 | Rio Grande Spares | EA | | | 0 | | 243.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67569.A | | SMALL PARTS ROOM FLOOR | CABLE;MFR:AKER,PN:10077781,TYP SERVSWITCH,LG 10 FT CABLE;MFR:AKER,PN:10219329,TYP ENTHERNET PATCH,LG 10 | 203563 | Rio Grande Spares | EA | | | 0 | | 26.25 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67570.A | | SMALL PARTS ROOM FLOOR | FT,MFR:AKER,MN:CAT6/TIA568B | 203563 | Rio Grande Spares | EA | | | 0 | | 18.75 | 0 | | |
| Deepwater Warehouse | Fieldwood | 67571.A | | MW-R16-2 | FLYING LEAD;MFR:OCEANEERING,PN:0436750,SUBSEA UMBILICAL TERMINATION ASSEMBLY,STEEL,REMOVABLE M1 SFL PARKING STAB | 143096 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 44141 | 44141 | | |
| Deepwater Warehouse | Fieldwood | 67591.A | | BW-AREA 1 | ASSEMBLY;TYP TREE FORGING BODY,MATL N/A,COMPRISING P1000109121, P1000109116, P1000130507, P1000109111 | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 1200000 | 1200000 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 67599.A | | DWW-YARD-C-VAN CCLU 6672299 | RISER,MFR:OIL STATES,PN:PD16909,TYP STEEL CATENARY,SPCL FEATRS FLEXJOINT MOCK-UP,APPLI THUNDER HAWK SCR | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 99403 | 99403 | |
| Deepwater Warehouse | Fieldwood | 67662.A | | BW-R2-3 | KIT, REPAIR,MFR:CORTEC,PN:BN445-180S600-5390-17CA-17CA-3,TYP MAJOR,COMPRISING NA,SZ NA,APPLI NA | 203563 | Rio Grande Spares | EA | | | 2 | | 19822 | 39644 | |
| Deepwater Warehouse | Fieldwood | 67835.B | | DWW-YARD-C-VAN DNVU-2051995 | PLUG, ELECTRICAL,MFR:ODI,PN:10192706,TYP EFL TEST,POLES 8-PIN,SPCL FEATRS CONNECTION: FEMALE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 1661.25 | 3322.5 | |
| Deepwater Warehouse | Fieldwood | 67836.B | | DWW-YARD-C-VAN DNVU-2051995 | PLUG, ELECTRICAL,MFR:ODI,PN:B815-000680-80,TYP EFL TEST,POLES 4-PIN,SPCL FEATRS CONNECTION: MALE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 906.75 | 906.75 | |
| Deepwater Warehouse | Fieldwood | 67837.B | | MW-R15-2 | PLATE,MFR:AKER,PN:10219137,TYP 4-WAY FIXED FLUSHING | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 10818.75 | 10818.75 | |
| Deepwater Warehouse | Fieldwood | 67838.A | | DWW-YARD | BEARING,MFR:RTI ENERGY SERVICES,PN:129310,BRAND:ORKOT,BRAND UNKNOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 4 | | 2196.45 | 8785.8 | |
| Deepwater Warehouse | Fieldwood | 67841.B | | DWW-YARD-C-VAN DNVU-2051995 | CONNECTOR, ELECTRICAL,MFR:ODI,PN:B815-000680-78,TYP TEST,CONN TYP MALE,SPCL FEATRS PIN CONFIGURATION: 4-PIN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 8 | | 1467 | 11736 | |
| Deepwater Warehouse | Fieldwood | 67842.B | | DWW-YARD-C-VAN DNVU-2051995 | CONNECTOR, ELECTRICAL,MFR:ODI,PN:B815-000686-35,TYP TEST,CONN TYP MALE,SPCL FEATRS PIN CONFIGURATION: 8-PIN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 4 | | 2199 | 8796 | |
| Deepwater Warehouse | Fieldwood | 67843.B | | MW-AREA 1 | CONNECTOR, ELECTRICAL,MFR:ODI,PN:10081132,TYP FEMALE,SPCL FEATRS PIN CONFIGURATION: 4-PIN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 1661.25 | 3322.5 | |
| Deepwater Warehouse | Fieldwood | 67844.B | | MR-5-B | PLUG, ELECTRICAL,MFR:ODI,PN:B815-000680-76,TYP EFL TEST,POLES 4-PIN,SPCL FEATRS CONNECTION: FEMALE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 4 | | 1598.25 | 6393 | |
| Deepwater Warehouse | Fieldwood | 67845.B | | DWW-YARD-C-VAN DNVU-2051995 | PLUG, ELECTRICAL,MFR:ODI,PN:B815-000686-43,TYP EFL TEST,POLES 8-PIN,SPCL FEATRS CONNECTION: MALE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 2 | | 1730.25 | 3460.5 | |
| Deepwater Warehouse | Fieldwood | 67913.A | | MW-AREA 4 | OUTBOARD FLUTE, 14 WAY. MFR: OCEANEERING, PN: 0428798 | | GUNFLINT | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 67846.B | | DWW-YARD-C-VAN DNVU-2051995 | PLUG, ELECTRICAL,MFR:ODI,PN:B815-695-22-REN,TYP EFL TEST,POLES 6-PIN,SPCL FEATRS CONNECTION: FEMALE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 1371.75 | 1371.75 | |
| Deepwater Warehouse | Fieldwood | 68035.A | | DWW-YARD-C-VAN 60978S | CENTRALIZER, SUB,MFR:HALLIBURTON,PN:0500-06125,TYP SLIDER,CASING SZ 5 IN,WT 5.7 lb,ID 5.12 IN,OD 6-1/2 IN,LG 12.4 IN,HOLE SZ 6-1/2 IN,STD SZ | 201560 | GC 40 02 Katmai 2 | EA | | | 45 | | 100.44 | 4519.8 | |
| Deepwater Warehouse | Fieldwood | 68051.B | | BW-AREA 3 | COLLAR,MFR:RTI ENERGY SERVICES,PN:129990,TYP SPACE,DIM 2 ft,S/N:200013441-001 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 16875 | 16875 | |
| Deepwater Warehouse | Fieldwood | 68057.B | | BW-AREA 3 | COLLAR,MFR:RTI ENERGY SERVICES,PN:129389,TYP SPACE,DIM 2 ft,S/N:200013640-001 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 13800 | 13800 | |
| Deepwater Warehouse | Fieldwood | 68058.B | | DWW-YARD-C-VAN 401592 1 | TOOL,MFR:TRENDSETTER ENG.,PN:TEI-100796-00,TYP DRAWDOWN,SPCL FEATRS TEI,S/N:966-9013 ,S/N:966-9014 | 203563 | Rio Grande Spares | EA | | | 2 | | 19125 | 38250 | |
| Deepwater Warehouse | Fieldwood | 68059.B | | DWW-YARD-C-VAN 2051995 | CONNECTOR, ELECTRICAL;MFR:AKER,PN:B815-000680-81,TYP ODI TEST | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 974.25 | 0 | |
| Deepwater Warehouse | Fieldwood | 68060.B | | MW-R16-FL | PLATE;MFR:AKER,PN:G02-4518-13-33074,SPCL FEATRS WITH BEND (45 DEGREE), 3GR HUB,BRAND:GRAYLOC,BRAND:UNKNOWN,MN:UH550 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 3 | | 48530.25 | 145590.75 | |
| Deepwater Warehouse | Fieldwood | 68061.B | | MW-R16-FL | PLATE;MFR:AKER,PN:G02-4518-13-33071,TYP TEST,MN:UH550 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 39448.5 | 39448.5 | |
| Deepwater Warehouse | Fieldwood | 68064.A | | MW-R5-2/MW-R5-3 | FLYING LEAD,MFR:AKER,PN:10243498,ELECTRICAL,LG 325 ft,APD | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 94485 | 188970 | |
| Deepwater Warehouse | Fieldwood | 68107.A | | MW-R10-2 | RCPTCL,MFR:SKOFLO,PN:100257,TYP DUAL CORE | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 30240 | 30240 | |
| Deepwater Warehouse | Fieldwood | 68253.A | | DWW-YARD | RING,TYP CENTRALIZER,ID 15 IN,OD 20.505 IN,WD N/A,DIM OAL 8 IN,MATL CS ASTM A707 L5,MATL GR 65KSI SMYS,DSGN RTNG 330 lb | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 2975 | 2975 | |
| Deepwater Warehouse | Fieldwood | 68254.A | | DWW-YARD | CONE, BEARING,TYP CENTRALIZER,ID ID 17 X OD 23 X LG 18 IN,WD N/A,MATL CS ASTM A707 L5 GR 65KSI SMYS,SPEC WEIGHT: 451 LBS | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 4638.75 | 9277.5 | |
| Deepwater Warehouse | Fieldwood | 68255.A | | DWW-YARD | SLEEVE,TYP CENTRALIZER,DIM ID 21.75 X OD 23 X LG 18 IN,MATL CS ASTM A707 L5 GR 65KSI SMYS,CPCTY 213 lb,APPLI N/A | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 77388 | 77388 | |
| Deepwater Warehouse | Fieldwood | 68304.B | | DWW-YARD-C-VAN DNVU-2051995 | TOOL,MFR: FREUDENBERG,TYP CLEANING,STYL CONTINGENCY WINDOW HUB,CLR BLACK,SPCL FEATRS OPERATOR: ROV MANIPULATOR OPERATED, WITH ORANGE HANDLE,APPLI OPTIMA SUBSEA CONNECTOR ASSEMBLY (SIZE: 8 IN),BRAND:VECTOR,BRAND:UNKNOWN | 203563 | Rio Grande Spares | EA | | | 2 | | 11332.8 | 22665.6 | |
| Deepwater Warehouse | Fieldwood | 68305.B | | DWW-YARD-C-VAN DNVU-2051995 | TOOL,MFR: FREUDENBERG,TYP SEAL CHANGEOUT,SPCL FEATRS OPERATOR: ROV HYDRAULICALLY OPERATED,APPLI OPTIMA SUBSEA CONNECTOR ASSEMBLY (SIZE: 8 IN),BRAND:VECTOR,BRAND:UNKNOWN | 203563 | Rio Grande Spares | EA | | | 2 | | 13599.33 | 27198.66 | |
| Deepwater Warehouse | Fieldwood | 68307.B | | MR-2-D | SEAL, RING;MFR: FREUDENBERG,TYP N/A,ID N/A,OD N/A,THK N/A,MATL SILVER COATED,APPLI OPTIMA SUBSEA CONNECTOR ASSEMBLY (SIZE: 8 IN),BRAND:VECTOR,BRAND:UNKNOWN | 203563 | Rio Grande Spares | EA | | | 11 | | 5496 | 60456 | |
| Deepwater Warehouse | Fieldwood | 68308.B | | MW-R16-FL | CAP;MFR:AKER,PN:G02-4518-13-33073,TYP COMPENSATED PRESSURE,BRAND:UNITECH,BRAND:UNKNOWN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 43738.5 | 43738.5 | |
| Deepwater Warehouse | Fieldwood | 68375.A | | MW-R17-3 | FLANGE,TYP PIPE, BLIND,DIM NA,CONN SZ NA,CONN TYP NA,MATL STAINLESS STEAL,MATL GR NA,OPRTG PRESS ANSI 900 LBS,STYL SPECTACLE,SPEC 8 IN OD, RTJ | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 2712 | 2712 | |
| Deepwater Warehouse | Fieldwood | 68444.B | | DWW-YARD-C-VAN CPIU 0301122G1 | FLYING LEAD,MFR:AKER,PN:10243958,6-WAY / 4-WAY ELECTRICAL,LG 325 ft | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 24366 | 0 | |
| Deepwater Warehouse | Fieldwood | 68445.B | | MW-R8-2 | FLYING LEAD,MFR:AKER,PN:10242630,6-WAY / 4-WAY ELECTRICAL,LG 200 ft | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 24366 | 0 | |
| Deepwater Warehouse | Fieldwood | 68523.A | | DWW-YARD-C-VAN HJCU 133919 | KIT, VALVE REPAIR,MFR:CORTEC,PN:BN445-1775200-1M90-17CA-17CA-3,SZ V2 1-13/16 IN,OPRTG PRESS 10000 PSI,MATL ELASTOMER,COMPRISING LIP SEALS, WEATHER SEALS, BALL AND SEAT SET | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 4109 | 4109 | |
| Deepwater Warehouse | Fieldwood | 68558.A | | BW-AREA 2 | SWAGE, CASING,NOM SZ 22 IN,WALL THK 1.25 IN,TOP CONN WT 277.04 lb,TOP CONN SZ 22 IN,TOP CONN TYP H90DM/MT PIN,BOT CONN WT N/A,BOT CONN SZ N/A,BOT CONN TYP 1502 WECO,MATL STEEL,MATL GR X80,LG N/A | 201560 | GC 40 02 Katmai 2 | EA | | | 1 | | 2080.81 | 2080.81 | |
| Deepwater Warehouse | Fieldwood | 68559.A | | DWW-YARD-C-VAN 401592 1 | PUMP,MFR:PROSERV,PN:ADPM2X15X10K,TYP MOTOR,SPEC 10,000 PSI, 2.00 GPM, 15HP 460V/60HZ/3PH, 1800 RPM, 120V/60HZ/1PH HEATERS, CSA AND UL CERT | 203563 | Rio Grande Spares | EA | | | 0 | | 20508 | 0 | |
| Deepwater Warehouse | Fieldwood | 68561.A | | DWW-YARD-C-VAN 401592 1 | PUMP,MFR:PROSERV,PN:ADPM10X2X75H,TYP MOTOR,SPEC 75 PSI, 10.00 GPM, 2 HP 460V/60HZ/3PH, 3600 RPM, 120V/60HZ/1PH HEATERS, SIX-STAGE GOULD PUMP, CSA AND UL CERT | 203563 | Rio Grande Spares | EA | | | 0 | | 4125 | 0 | |
| Deepwater Warehouse | Fieldwood | 68566.B | | DWW-YARD-C-VAN 2051995 | CONNECTOR, ELECTRICAL;MFR:ODI,PN:B815000686-67,SPEC ELECTRICAL CONNECTOR FEMALE LONG TERM COVER; 4-PIN | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 6 | | 3936.75 | 23620.5 | |
| Deepwater Warehouse | Fieldwood | 68584.E | | DWW-YARD-C-VAN 401592 1 | TESTER,TYP SERIMAX,SZ NA,CONTNR TYP CRATE W/ WELDS FROM INSPECTION, 8.625" OD X 1.344 WT,APPLI TESTING USE ONLY GUNFLINT, TENARIS LINE PIPE, SERIMAX TEST WELDS,BRAND:TENARIS,BRAND:SERIMAX | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 68685.A | | MR-2-E | BODY;MFR:FMC,PN:P1000026071,TYP SEAL,DUMMY TEST EQUIPMENT, USED | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 11150 | 11150 | |
| Deepwater Warehouse | Fieldwood | 68686.A | | MR-2-A | SEAL;MFR:FMC,PN:P161582,TYP S,OD 12.879/12.801 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 658.21 | 1316.42 | |
| Deepwater Warehouse | Fieldwood | 68687.A | | MR-2-A | SEAL;MFR:FMC,PN:P1000098349,TYP S,OD 12.487/12.413 IN,THK 0.33 IN | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 2 | | 1178 | 2356 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 68688.A | | MR-2-F | SEAL;MFR:FMC,PN:DP-18-6253,MATL:METAL,SPCL FEATRS SBMS-11 BODY, F/SIZE: 4-1/2 IN, PRESSURE: 10 K H,SPEC OBSOLETE AND REPLACED BY P1000151418, ME | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 9087 | 27261 | | |
| Deepwater Warehouse | Fieldwood | 68689.A | | MR-3-F | SEAL;MFR:FMC,PN:P1000009840,MATL:METAL,SPCL FEATRS BODY DESIGN: SBMS-II,APPLI S-15K | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 12116 | 36348 | | |
| Deepwater Warehouse | Fieldwood | 68690.A | | MR-2-A | SEAL;MFR:FMC,PN:P182168,TYP S,OD 14.794/14.706 IN,THK 0.3 IN,LG 0.516 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 902 | 902 | | |
| Deepwater Warehouse | Fieldwood | 68691.A | | MR-2-A | SEAL;MFR:FMC,PN:P1000009589,TYP S, B,OD 16.755/16.655 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 1085 | 2170 | | |
| Deepwater Warehouse | Fieldwood | 68692.A | | MR-GENERAL | TRANSFORMER;MFR:FMC,PN:215127MFR: HAMMOND,TYP DRY,PH QTY 1,REF:B800701845 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 5527.88 | 5527.88 | | |
| Deepwater Warehouse | Fieldwood | 68694.A | | MR-2-A | SEAL;MFR:FMC,PN:P1000009444,TYP S, B | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 926 | 926 | | |
| Deepwater Warehouse | Fieldwood | 68696.B | | MW-R6-1 | FUNNEL;MFR:AKER,PN:4500624158-20-002,TYP GUIDE ASSEMBLY,DIM OD 8 IN,APPLI PIG DETECTOR,REF:10217747, REF:10223677 | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 4671 | 4671 | | |
| Deepwater Warehouse | Fieldwood | 68698.A | | DWW-YARD-C-VAN 401592 1 | KIT, VALVE REPAIR;MFR:WHITCO,PN:4INBBF31,VLV SZ 4 IN,OPRTG PRESS CL 300,APPLI BALL VALVE | 203563 | Rio Grande Spares | EA | | | 1 | | 3647.6 | 3647.6 | | |
| Deepwater Warehouse | Fieldwood | 68699.A | | MR-GENERAL | KIT;MFR:FMC,PN:P1000054316,TYP REDRESS,APPLI SSP WELLHEAD PLUG (SIZE: 4.673 IN),SPEC OEM SPARE PART, 15K, SUPPLIED BY HALLIBU | | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 16460.3 | 0 | | |
| Deepwater Warehouse | Fieldwood | 68700.A | | MR-2-F | BODY;MFR:FMC,PN:P1000026073,TYP SEAL,DUMMY TEST EQUIPMENT, USED | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 11721 | 11721 | | |
| Deepwater Warehouse | Fieldwood | 68701.A | | MR-2-F | BODY;MFR:FMC,PN:P1000026074,TYP SEAL,DUMMY TEST EQUIPMENT, USED | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 11191 | 11191 | | |
| Deepwater Warehouse | Fieldwood | 68913.B | | DWW-YARD | STAND;TYP N/A,MATL JUMPER,SPCL FEATRS FABRICATION,APPLI METEROLOGY | 203563 | Rio Grande Spares | EA | | | 2 | | 156000 | 312000 | | |
| Deepwater Warehouse | Fieldwood | 68946.A | | DWW-YARD-C-VAN CCLU 667229 9 | KIT;MFR:FMC TECHNOLOGIES,PN:P1000069312,TYP COMMISSIONING,CL 15000 PSI,APPLI ENHANCED HORIZONTAL SUBSEA TREE (EHXT) TUBING HANGER | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 2 | | 16460.3 | 32920.6 | | |
| Deepwater Warehouse | Fieldwood | 68949.A | | MR-GENERAL | KIT;MFR:FMC TECHNOLOGIES,PN:P1000002656,TYP HORIZONTAL,APPLI ELECTRICAL FEEDTHROUGH SYSTEM | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 29817.78 | 29817.78 | | |
| Deepwater Warehouse | Fieldwood | 68966.A | | MR-5-D | VALVE, RELIEF;MFR:PARKER,PN:9MP78F-MPRA-15000-SS,VLV SZ 9/16 X 9/16 IN,CONN TYP TUBE,SET PRESS 10000 PSIG,BDY MATL SS | 203563 | Rio Grande Spares | EA | | | 1 | | 1321 | 1321 | | |
| Deepwater Warehouse | Fieldwood | 68967.A | | BW-R12-2 | HEATER, WATER, ELECTRIC;MFR:RHEEM,PN:PROE30 S2 RH95 B,TYP SHORT,VOL CPCTY 30 gal,VOLT 240,WATT 4500 W | | NEPTUNE | EA | | | 1 | | 527.685 | 527.685 | | |
| Deepwater Warehouse | Fieldwood | 68991.B | | BW-AREA 2 | CYLINDER, COMPRESSED GAS;MFR:CAMERON,PN:639CH,GAS TYP NATURAL GAS,DIA 12.5 IN,OUTLT CONN TYP FLANGE,APPLI COMPRESSOR | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 68992.B | | BW-R7-1 | PISTON;MFR:CAMERON,PN:2QDN-T04A-0000,TYP GAS,DIM 12.5 IN,APPLI COMPRESSOR FOR WH64 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 68993.B | | BW-NEP-AREA | CAMSHAFT;MFR:CAMERON,PN:650-503-000,TYP FRONT,APPLI FOR 2408 WS ENGINE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 68994.C | | BW-NEP-AREA | CAMSHAFT;MFR:CAMERON,PN:650-505-000,TYP REAR,APPLI FOR 2408 WS ENGINE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 68995.C | | BW-R11-FL | CONNECTING ROD;MFR:CAMERON,PN:651-802-001,TYP ENGINE,APPLI FOR 2408 WS ENGINE | | NEPTUNE | EA | | | 6 | | 0.01 | 0.06 | | |
| Deepwater Warehouse | Fieldwood | 68996.B | | BW-R8-FL | CONNECTING ROD;MFR:CAMERON,PN:620-001-001,TYP COMPRESSOR,APPLI FOR WH64 SW COMPRESSOR FRAME | | NEPTUNE | EA | | | 3 | | 0.01 | 0.03 | | |
| Deepwater Warehouse | Fieldwood | 68997.C | | BW-R7-1 | ROD, PONY;MFR:CAMERON,PN:2625-021-003,TYP GAS,APPLI FOR COMPRESSOR SW WH64 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 68998.B | | BW-NEP-AREA | SHAFT;MFR:CAMERON,PN:620-090-001,TYP CRANK,APPLI FOR WS COMPRESSOR WH64,MFR:CAMERON,MN:WH64 | | NEPTUNE | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 68999.B | | BW-R10-2 | HEAD, CYLINDER;MFR:CAMERON,PN:650-183-005,TYP ENGINE,APPLI FOR WS 2408 ENGINE | | NEPTUNE | EA | | | 4 | | 0.01 | 0.04 | | |
| Deepwater Warehouse | Fieldwood | 69001.B | | BW-R8-2 | TURBOCHARGER;MFR:CAMERON,PN:663-313-002,TYP FOURCED AIR,APPLI FOR WS 2408 ENGINE,MFR:CAMERON,MN:RR-181/14 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69001.C | | BW-NEP-AREA | TURBOCHARGER;MFR:CAMERON,PN:663-313-002,TYP FOURCED AIR,APPLI FOR WS 2408 ENGINE,MFR:CAMERON,MN:RR-181/14 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69002.A | | MW-R6-1 | ASSEMBLY;MFR:CAMERON,PN:2247143-2SMOD,COMPRISING HOT STAB, GAUGE (PRESSURE: 10,000 PSI),APPLI PANEL, ROV | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 19414.71 | 19414.71 | | |
| Deepwater Warehouse | Fieldwood | 69010.B | | BW-AREA 2 | COOLER;MFR:CAMERON,PN:655-545-000,TYP ENTER,APPLI FOR WS 2408 ENGINE | | NEPTUNE | EA | | | 4 | | 0.01 | 0.04 | | |
| Deepwater Warehouse | Fieldwood | 69013.B | | OS-R3-S1 | GASKET SET;MFR:CATERPILLAR,PN:293-3421,TYP CYLINDER HEAD,APPLI FOR CATERPILLAR ENGINE | | NEPTUNE | EA | | | 5 | | 0.01 | 0.05 | | |
| Deepwater Warehouse | Fieldwood | 69016.B | | BW-R8-1 | SPACER;MFR:SEATRAX,PN:TL9013,TYP CRANE PIN,APPLI FOR BOOM HEEL CRANE BUSHING;MFR:SEATRAX,PN:TL9003,TYP CRANE PIN,APPLI FOR BOOM HEEL CRANE | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69017.B | | BW-R8-1 | PIN;MFR:SEATRAX,PN:TA104-2,TYP CRANE HEEL,DIA 5.5 IN,LG 13 IN | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69018.B | | BW-R8-1 | MTR, ELEC;MFR:TOSHIBA,PN:B0056FLF2AMH04,TYP S HP,APPLI FOR RPM-1165,MFR:TOSHIBA,MN:IKHF8K1180 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69019.B | | BW-R10-1 | MTR, ELEC;MFR:BALDOR,PN:CM7014-1,TYP 1 HP,RPM 1750,PH 3,MFR:BALDOR,MN:BY8970B7 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69020.B | | BW-R10-1 | MTR, ELEC;MFR:EMERSON,PN:HSE30,TYP 5 HP,RPM 955/1165,PH 3,MFR:EMERSON,MN:T413A | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69021.B | | BW-R10-1 | MTR, ELEC;MFR:BALDOR,PN:ECP3665T-4,TYP 5 HP,RPM 1750,PH 3,VOLT 460,HZ 60 ELBOW;MFR:CAMERON,PN:653-407-006,TYP EXHAUST,CONN TYP FLANGE,SZ 8 IN,MATL CAST IRON,DEG 90 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69024.C | | BW-R12-2 | MTR, ELEC;MFR:EMERSON,PN:H40E2E,RPM 1775,PH 3PH,VOLT 230/460 V,FR 324 T,HZ 60,ENCL TOTALLY ENCLOSED,SHFT DIA 2.125 IN,POLES 4,AMP 92/46 A,SPCL FEATRS POWER: 40 HP,MN:R068 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69026.B | | BW-R11-1 | MTR, ELEC;MFR:BALDOR,PN:VLCP3665T,RPM 1725,PH 3PH,VOLT 208-230/460 V,FR 184LP,HZ 60,ENCL TEFC,ROT REVERSIBLE,AMP 14.9-13.8/6.9 A,SPCL FEATRS POWER: 5 HP | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69031.B | | BW-R7-1 | HEAD, CYLINDER;MFR:CATERPILLAR,PN:10R-8886,DIM WD 14.5 X LG 39.5 X HT 11.25 IN,APPLI ENGINE,MN:00SM04Y12P68,EQ MODEL:C7 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69035.C | | BW-NEP-AREA | SKID;MFR:PROSERV,PN:PHC-1G-10-AGT-62,SPCL FEATRS PNEUMATIC AND HYDRAULIC,APPLI NITROGEN BOOSTER PUMP | 203563 | Rio Grande Spares | EA | | | 0 | | 21259 | 0 | | |
| Deepwater Warehouse | Fieldwood | 69038.B | | BW-R6-1 | VALVE;MFR:VALFORGE,PN:ABF01,CONN 1 SZ 4 IN,CONN 1 TYP RAISED FACE,CL 150 lb | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 2 | | 4781.25 | 9562.5 | | |
| Deepwater Warehouse | Fieldwood | 69113.B | | BW-NEP-AREA | CROSSHEAD;MFR:CAMERON,PN:620-261-001,TYP RECIPROCATING,APPLI COMPRESSOR,EQ MODEL:WH64 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69113.C | | BW-NEP-AREA | CROSSHEAD;MFR:CAMERON,PN:620-262-001,TYP RECIPROCATING,APPLI COMPRESSOR,EQ MODEL:WH64 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 69114.B | | DWW-YARD | SPOOL;TYP FLOW METER DUMMY,ID 4 IN,OD N/A,LG 28.75 IN,MATL CS,SPEC PRESSURE: 1500 PSI, CONNECTION: RTJ, FABRICATION | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 0 | | 34206.25 | 0 | | |
| Deepwater Warehouse | Fieldwood | 69115.B | | BW-NEP-AREA | PIN;MFR:CAMERON,PN:620-006-001,TYP CROSSHEAD,APPLI COMPRESSOR,EQ MODEL:WH64 | | NEPTUNE | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 69116.B | | BW-R8-FL | BEARING;MFR:CAMERON,PN:625-235-001,TYP SLIPPERS, CROSSHEAD,APPLI COMPRESSOR,EQ MODEL:WH64 | | NEPTUNE | EA | | | 18 | | 0.01 | 0.18 | | |
| Deepwater Warehouse | Fieldwood | 69119.B | | BW-R8-FL | PUMP;MFR:CAMERON,PN:620-033-002,TYP OIL,APPLI WH64 COMPRESSOR | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69120.B | | BW-NEP-AREA | COOLER;MFR:CAMERON,PN:653-902-001,TYP OIL,APPLI COMPRESSOR,EQ MODEL:WH64 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69121.C | | BW-R7-2 | COVER;MFR:CAMERON,PN:652-803-000,TYP CAM ACCESS,APPLI PACKAGE,EQ MODEL:240B WS | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69123.B | | BW-R10-3 | EVAPORATOR, AIR CONDITIONER;MFR:BAYOU BOEUF ELECTRIC,PN:CAHA24D3 CONDENSER;MFR:BAYOU BOEUF ELECTRIC,PN:S1CA80000D00,TYP AIR CONDITIONER | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69125.B | | BW-R10-3 | GUIDE;MFR:CAMERON,PN:650-469-000,TYP BUSHING, LIFTER,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 69126.C | | BW-R7-2 | SHEAVE, ASSEMBLY;MFR:SOLAR,PN:458402,TYP FAN,APPLI FOR SOLAR BOOSTER COMPRESSOR COOLER;MFR:SOLAR,MN:1156B006 | | NEPTUNE | EA | | | 11 | | 0.01 | 0.11 | | |
| Deepwater Warehouse | Fieldwood | 69127.B | | BW-R7-2 | TRAY, CABLE;MFR:ENDURO,PN:EHL6-24-9-10,MFR:ENDURO,MN:ENDURO CLASS 20 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69128.B | | DWW-YARD | GEAR;MFR:CAMERON,PN:652-306-000 REV-ARG,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 3 | | 0.01 | 0.03 | | |
| Deepwater Warehouse | Fieldwood | 69131.B | | BW-R7-2 | JUMPER;MFR:CAMERON,PN:554-627-000,TYP WATER,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69132.C | | BW-R7-2 | PLATE;MFR:CAMERON,PN:8600-631,TYP SEAL, GUIDE, PUSH ROD,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 4 | | 0.01 | 0.04 | | |
| Deepwater Warehouse | Fieldwood | 69133.C | | BW-R7-2 | MANIFOLD;MFR:CAMERON,PN:853-401-001,TYP EXHAUST,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 26 | | 0.01 | 0.26 | | |
| Deepwater Warehouse | Fieldwood | 69134.C | | DWW-YARD | BEARING;MFR:CAMERON,PN:620-198-001,TYP MAIN,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69135.B | | OS-R3-S2 | BEARING;MFR:CAMERON,PN:904-568-001,TYP MAIN,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 5 | | 0.01 | 0.05 | | |
| Deepwater Warehouse | Fieldwood | 69136.A | | OS-R3-S3 | BEARING;MFR:CAMERON,PN:904-568-001,TYP MAIN,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 69136.B | | OS-R3-S2 | BEARING;MFR:CAMERON,PN:651-931-000,TYP ROD | | NEPTUNE | EA | | | 5 | | 0.01 | 0.05 | | |
| Deepwater Warehouse | Fieldwood | 69137.A | | OS-R3-S2 | BEARING;MFR:CAMERON,PN:651-931-000,TYP ROD | | NEPTUNE | EA | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 69137.B | | OS-R3-S2 | BEARING;MFR:CAMERON,PN:650-773-000,TYP MAIN,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 12 | | 0.01 | 0.12 | | |
| Deepwater Warehouse | Fieldwood | 69140.B | | OS-R3-S3 | LIGHT;MFR:PAULUHN,PN:1159AYELGRDO2,TYP HELIPORT,SPEC SEALED,MN:D&T 1/2-2 | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69144.B | | OS-R3-S1 | LIGHT;MFR:PAULUHN,PN:1159ABLUGRDO2,TYP HELIPORT,SPEC SEALED,MN:D&T 1/2 - 2 | | NEPTUNE | EA | | | 6 | | 0.01 | 0.06 | | |
| Deepwater Warehouse | Fieldwood | 69145.B | | OS-R3-S1 | PUMP, CENTRIFUGAL;MFR:DURCO,PN:P8E-780B,TYP COOLING MEDIA,STD MARK III | | NEPTUNE | EA | | | 3 | | 0.01 | 0.03 | | |
| Deepwater Warehouse | Fieldwood | 69147.B | | BW-R7-FL | ACTUATOR;MFR:ROTORK,PN:RN 119968-1,TRVL LG 713 mm,OPRTR AIR,APPLI WASTE HEAT BUTTERFLY VALVE,MN:CP/S-045-200/DA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69148.B | | BW-R12-2 | ASSEMBLY;TYP VALVE, ROCKER ARM,MATL NA,COMPRISING PN:650-429-000, PN:650-480-000,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69151.C | | BW-R7-2 | MTR, ELEC;MFR:MARATHON,PN:TGS,TYP 5 HP | | NEPTUNE | EA | | | 8 | | 0.01 | 0.08 | | |
| Deepwater Warehouse | Fieldwood | 69153.B | | BW-R10-1 | MTR, ELEC;MFR:TECO-WESTINGHOUSE,PN:W241904B001-002,TYP 7.5 HP,MFR:TECO-WESTINGHOUSE,MN:MAX-E1 | | NEPTUNE | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 69154.B | | BW-R10-1 | ROD;MFR:CAMERON,PN:NA,TYP PUSH RODS,DIM NA,MATL NA,APPLI 240B WS ENGINE;MFR:CAMERON,TYP:VALVE | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69160.C | | BW-R7-2 | REDUCER;TYP FLANGED, BELL,MATL NA,CONN 1 SZ NA,CONN 1 SZ NA,CONN 2 SZ NA,CONN 2 TYP NA,SPEC EXHAUST BELL REDUCER,STD NA,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 16 | | 0.01 | 0.16 | | |
| Deepwater Warehouse | Fieldwood | 69161.C | | BW-NEP-AREA | RAIL;TYP MAIN, FUEL,MATL NA,DIA NA,WO NA,LG NAIN,THK NA,PRFILE NA,APPLI MAIN FUEL RAIL,SPEC 240B WS ENGINE,STD NA | | NEPTUNE | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 69162.C | | DWW-YARD | RAIL;TYP PILOT, FUEL,MATL NA,DIA NA,WO NA,LG NA,THK NA,PRFILE NA,APPLI 240B WS ENGINE,SPEC MAIN FUEL RAIL,STD NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69163.C | | DWW-YARD | MTR, ELEC;MFR:SIEMENS,PN:RGZEVILSD,TYP 20 HP | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69165.B | | BW-R11-1 | PANEL;TYP ENCLOSURE,WD NA,LG NA,HT NA,MATL NA,APPLI SOLAR GENERATOR ENCLOSURE,SPEC SOLAR ENCLOSER PANEL,STD NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69166.B | | BW-NEP-AREA | FRAME;TYP ENGINE REMOVAL,DIM NA,MATL NA,SHAPE NA,STYL NA,MNTG FCLTY NA,SPCL FEATRS NA,APPLI SOLAR BOOSTER COMPRESSOR ENGINE,SPEC SOLAR ENGINE EXCHANGE FRAMES,STD NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69167.B | | MW-AREA 6 | HOIST;TYP ENGINE REMOVAL,STYL NA,LIFTG CAPACITY NA,SPEC NA,STD NA,FNSH NA,SPCL FEATRS SOLAR HOIST,APPLI SOLAR BOOSTER COMPRESSOR ENGINE RADIATOR;TYP CRANE ENGINE,DIM NA,CORE QTY NA,MATL NA,APPLI SEATRAX | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69168.B | | BW-R10-3 | CRANE,SPEC SEATRAX CRAIN RADIATOR,STD NA | | NEPTUNE | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 69170.B | | BW-R11-2 | SENSOR;MFR:FISHER,PN:FSB4S,MFR:FISHER,MN:3311 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69173.B | | OS-R3-S1 | BRAKE;TYP BAND,TRQ NA,APPLI SEATRAX BOOM WINCH,SPEC SEATRAX BRAKE BAND FOR WINCH,STD NA | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69174.B | | BW-R8-1 | ACTUATOR;TYP BRAKE,VOLT NA,AMP NA,WATT NA,OPRTG PRESS NA,TRVL LG NA,OPRTR NA,SPCL FEATRS NA,APPLI SEATRAX MAIN OR AUX WINCH,SPEC SEATRAX HYDRAULIC BRAKE ACTURTOR CYLINDER,STD NA | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69175.B | | BW-R8-1 | HOUSING;MFR:DEL RIO INC.,PN:5B617V150WE,TYP FILTER, HP,SPEC 10,000 PSI | | NEPTUNE | EA | | | 9 | | 0.01 | 0.09 | | |
| Deepwater Warehouse | Fieldwood | 69177.B | | OS-R3-FL | HOUSING;MFR:DEL RIO INC.,PN:P879BF10WEV,TYP FILTER, HP,SPEC 10-ABS, 10,000 PSI | | NEPTUNE | EA | | | 5 | | 0.01 | 0.05 | | |
| Deepwater Warehouse | Fieldwood | 69179.B | | OS-R2-S1 | HOUSING;MFR:DEL RIO INC.,PN:8S86V10WE,TYP FILTER, HP,SPEC 10-ABS 6,000 PSI,MFR:DEL RIO INC.,MN:233-10WEV | | NEPTUNE | EA | | | 11 | | 0.01 | 0.11 | | |
| Deepwater Warehouse | Fieldwood | 69180.B | | OS-R2-S1 | DAMPER, VIBRATION;MFR:FLOWGUARD,PN:FG40B63/01-S,MFR:FLOWGUARD,MN:1B8B8A | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69181.B | | OS-R2-S1 | VALVE;TYP R47,CONN 1 SZ IN,CONN 1 TYP NA,CL 2500,DSGN RTNG NA,OPRTD NA,MATL NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69183.B | | BW-AREA 1 | VALVE;MFR:FISHER,PN:129B41001,TYP PNEUMATIC CONTROL,CONN 1 SZ 2 IN,CL 900,SPCL FEATRS W/ ACTUATOR | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69184.B | | BW-R10-FL | VALVE, BALL;MFR:WKM,PN:010423B-001,CONN 1 SZ 10 IN,CONN 2 SZ 8 IN,CL 150 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69185.B | | MW-R12-2 | TRAY, CABLE;DIM NA,TYP 1 CRATE,MATL NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69189.B | | BW-R12-3 | BLOWER;TYP MOON POOL, GAS EXTRACTION,AIR FLW CPCTY NA,AMP NA,DIA NA,VOLT NA,WATT NA,RPM NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69190.C | | BW-R7-1 | | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 69191.B | | BW-NEP-AREA | ROPE, WIRE,DIA 3/8 IN,LG NA,CONSTR NA,CLASSIF NA,MATL SS,LAY NA,SURF TRTMNT GALVANIZED | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69192.B | | BW-R10-FL | MTR, ELEC,MFR:BALDOR,PN:NA,TYP 75HP,FR 365T5C | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69195.B | | BW-R11-3 | VALVE;TYP 6 IN,CONN 1 SZ NA,CONN 1 TYP NA,CL 600,DSGN RTNG NA,OPRTD NA,MATL NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69196.B | | BW-NEP-AREA | VALVE, BUTTERFLY;VLV SZ NA,DSGN RTNG NA,CONN SZ NA,CONN TYP NA,OPRTD NA,TYP NA,TRIM NA,BDY MATL NA,MATL GR NA,SPEC WASTE HEAT BUTTERFLY VALVES | | NEPTUNE | | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69197.B | | DWW-YARD | ATTACHMENT;TYP NA,MATL NA,STD NA,APPLI SUB-SEA WELL ATTACHMENT | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69198.B | | BW-AREA 2 | CLAMP;TYP NA,DIM NA,MATL NA,MATL GR NA,APPLI RETROCLAMPS WITH LEADS | | NEPTUNE | EA | | | 18 | | 0.01 | 0.18 | | |
| Deepwater Warehouse | Fieldwood | 69199.B | | BW-NEP-AREA | KIT;TYP NA,COMPRISING NA,APPLI SCRUBBER UPGRADE KIT | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69200.C | | BW-R11-1 | PUMP;TYP FLARE,FLW RATE NA,INLT SZ NA,OUTLT SZ NA,RPM NA,SPEC SO311 BOX;TYP NA,WD NA,LG NA,DP NA,MATL NA,SPEC FIRE HOSE REELS,APPLI FIRE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69202.B | | BW-R10-1 | HOSE STORAGE BOX | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69203.B | | BW-NEP-AREA | PANEL, CONTROL;MFR:TULSA HEATERS,PN:TUAF-UMB-16,SPEC MECHANICAL SPOOL W/ CONTROL PANEL | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69204.B | | BW-R8-3 | FLANGE, LIFTING;TYP 12 BOLT,NOM SZ NA,CONN SZ NA,CONN TYP NA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69205.B | | BW-R7-FL | CHAIN;TYP NA,NOM ROLLR OD NA,WD NA,MATL NA,APPLI NA,SPEC AND BINDERS | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69206.C | | BW-R10-FL | GEAR;MFR:CAMERON,PN:NA,TYP IDLER, TIMING | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 69207.B | | BW-R9-1 | COVER;MFR:CAMERON,PN:NA,TYP VALVE,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 69208.B | | BW-R9-1 | BOLT;MFR:CAMERON,PN:NA,APPLI FOR VALVE COVER, 240B WS ENGINE | | NEPTUNE | EA | | | 114 | | 0.010166667 | 1.159 | | |
| Deepwater Warehouse | Fieldwood | 69209.B | | BW-NEP-AREA | ROLLER;MFR:CAMERON,PN:NA,TYP LIFTER,APPLI 240B WS ENGINE | | NEPTUNE | EA | | | 13 | | 0.01 | 0.13 | | |
| Deepwater Warehouse | Fieldwood | 69853.A | | DWW-YARD | PIPE;TYP LINE,NOM SZ N/A,OD 8.625 IN,SCH FLOWLINE SCR,WALL THK 1.250 IN,MATL N/A,MATL GR N/A,END CONN N/A,LG 40 FT,COATG EXT BARE,APPLI EXTRA SCR 70 KSI | 141585 | MC 698 BIG BEND LONG LEADS | FT | | | 80 | | 95 | 7600 | | |
| Deepwater Warehouse | Fieldwood | 69856.A | | DWW-YARD | PIPE;TYP LINE,NOM SZ N/A,OD 6.625 IN,SCH N/A,WALL THK .864 IN,MATL N/A,MATL GR X70,END CONN PLAIN END,LG 40 FT,COATG EXT R-3 FBE COATED | 141585 | MC 698 BIG BEND LONG LEADS | FT | | | 17 | | 68.59 | 1166.03 | | |
| Deepwater Warehouse | Fieldwood | 69859.A | | DWW-YARD-C-VAN 045905 | CENTRALIZER, SUB;MFR:BLACKHAWK,PN:0109342-QP0003,CASNG SZ 9.375 IN,WT 39 lb/ft,MATL GR Q125,CONN TYP TSH-513,SPCL FEATRS W/13S000 MIN YIELD BST (338) 8 BOWS 15.87 OVER BOW,MFR:BLACKHAWK,MN:R3600 | 201560 | GC 40 02 Katmai 2 | EA | | | 34 | | 8200 | 278800 | | |
| Deepwater Warehouse | Fieldwood | 69966.A | | MW-R19-FL | VALVE;MFR:WHITCO,PN:SDV-10400,CONN 1 SZ 6 IN,CONN 1 TYP RF,CL 300,SPCL FEATRS W/ ACTUATOR,SPEC 6" BALL VALVE, 300#, RF FLANGE ENDS, 316SS BODY AND FLANGES DEVLON SEATS AND HNBR SEALS WITH ROTORK ACTUATOR, 316MOUNTING PLATE | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 17343 | 17343 | | |
| Deepwater Warehouse | Fieldwood | 69967.C | | MW-R19-FL | VALVE, BALL;MFR:WHITCO,PN:SDV-10400 BALL VALVE,CONN 1 SZ 6 IN,CONN 1 TYP RF FLANGE,CL 300,BDY MATL SS,MATL GR 316,SFTGDS SEAT: DEVLON; SEAL: HNBR | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 8671.5 | 8671.5 | | |
| Deepwater Warehouse | Fieldwood | 70045.A | | BW-R5-FL | COLLAR, STOP;MFR:HALLIBURTON,PN:63453/6MFR: CENTEK,TYP HEAVY DUTY,CASNG OD 5 IN,SPCL FEATRS W/ SGL BEV | 201560 | GC 40 02 Katmai 2 | EA | | | 90 | | 36.5 | 3285 | | |
| Deepwater Warehouse | Fieldwood | 70131.A | | LINEAR CONTROLS, LA | SIEMENS MOTOR: S/N: 0770680-010-1. 1250 HP 882 RPM, 4160 VT, WP11 Frame 6811 Siemens - Thunderhawk, Yard Loc: H219, climate controlled facility | | THUNDERHAWK | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70146.A | | LINEAR CONTROLS, LA | SIEMENS MOTOR: S/N: 1LE24214CC112AA3. 75 HP, 1200 RPM, 460 VT, TEFC, Frame 444T - Thunderhawk, Yard Loc: H222, climate controlled facility | | THUNDERHAWK | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70147.A | | LINEAR CONTROLS, LA | MARATHON MOTOR: S/N: WAA037677. 125 HP, 1800 RPM, 460 VR, TEFC, Grame 445T - Thunderhawk, Yard Loc: H223, climate controlled facility | | THUNDERHAWK | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70148.A | | LINEAR CONTROLS, LA | BALDOR MOTOR: S/N: A1106292137. 200 HP, 1800 RPM, 460 Volt, TEFC, Grame 447T5D - Thunderhawk, Yard Loc: H224, climate controlled facility | | THUNDERHAWK | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70149.A | | LINEAR CONTROLS, LA | Siemens MOTOR: S/N: G12T1269NPI7. 250 HP, 1800 RPM, TEFC Frame B449T, Thunderhawk, climate controlled facility | | THUNDERHAWK | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70207.B | | MW-AREA 5 | PUMP ASSEMBLY;TYP 5 STAGE HYDROFLO,SZ N/A,SPEC W/50HP, 460V SEI MOTOR, 175 FT NO 4 SENSOR CABLE SPLICED TO PT100 MOTOR SENSOR, FLOW INDUCER SLEEVE MOUNTED OVER MOTOR | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70209.A | | MW-AREA 5 | MTR, ELEC;MFR:BALDOR,PN:09H404X129G1,HP 15,RPM 1765,PH 3,VOLT 460,HZ 60 | | THUNDERHAWK | EA | | | 4 | | 0.01 | 0.04 | | |
| Deepwater Warehouse | Fieldwood | 70209.A | | MW-R20-2 | MTR, ELEC;MFR:BALDOR,PN:09H404X129G1,HP 15,RPM 1765,PH 3,VOLT 460,HZ 60 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70235.A | | MW-R18-1 | VALVE, BALL;MFR:VELAN,PN:816.34,TYP N/A,CONN 1 SZ 4 X 3 X 4 IN,CONN 1 TYP FLANGED,CL 150-300,MATL GR F316L,REF:549 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70236.A | | MR-4-E | SWITCH, SELECTOR;MFR:AKER,PN:10263807,CNTCT ARNGEMNT 1NO-1NC,POS QTY 2,OPRTD KEY | 203563 | Rio Grande Spares | EA | | | 0 | | 78.2 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70237.A | | MR-3-B | POWER SUPPLY;MFR:AKER,PN:B815-000312-06,I/P VOLT 90-240 V,MN:SEM105 | 203563 | Rio Grande Spares | EA | | | 0 | | 3910.1 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70238.A | | MR-5-C | MODULE;MFR:AKER,PN:B814-06004-01,TYP ASSEMBLY,APPLI MODEM; SWITCH | 203563 | Rio Grande Spares | EA | | | 0 | | 4378 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70239.A | | MR-4-E | FILTER, AIR;MFR:AKER,PN:10264029,APPLI UPS INVERTER | 203563 | Rio Grande Spares | EA | | | 0 | | 977.5 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70240.A | | DWW-YARD-C-VAN 433422 0 | FLYING LEAD;MFR:OCEANEERING,PN:428781,ELECTRICAL (4 WAY),LG 120 m | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 18244 | 36488 | | |
| Deepwater Warehouse | Fieldwood | 70241.A | | MW-R5-3 | FLYING LEAD;MFR:OCEANEERING,PN:428782,OPTICAL,LG 100 m | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 85079 | 85079 | | |
| Deepwater Warehouse | Fieldwood | 70243.A | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:428779,14 WAY, 11 LINE,LG 100 m,STEEL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 249560 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70244.A | | DWW-YARD | FLYING LEAD;MFR:OCEANEERING,PN:428778,14 WAY, 14 LINE,LG 125 m,STEEL | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 249560 | 249560 | | |
| Deepwater Warehouse | Fieldwood | 70247.A | | MW-R5-3 | FLYING LEAD;MFR:OCEANEERING,PN:46154,ASSEMBLY,ACOUSTIC SAND DETECTOR | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 49819 | 49819 | | |
| Deepwater Warehouse | Fieldwood | 70248.B | | MW-AREA 5 | PUMP, SUBMERSIBLE;TYP JOCKEY,OUTLT PRESS N/A,DISPLCMNT N/A,TOT HD N/A,RPM 3600,OUTLT SZ N/A,OUTLT CONN TYP N/A,WD 8 IN,MATL N/A,SPEC FREQUENCY: 60 HZ, CURRENT: 65 A, VOLTAGE: 460 V, POLE QTY: 2P | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70277.A | | MW-AREA 5 | TRANSMITTER, RADAR;MFR:ROSEMOUNT,PN:5302FA1P1NA4E00903CXESM1Q4S4,TYP GUIDED WAVE,O/P 4-20 mA,CONN TYP NPT,CONN SZ 1/2-14 IN | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70278.A | | BW-AREA 2 | ELEMENT, HEATER;MFR:GAUMER PROCESS,PN:1F1510F36N91XM4ERRTD,TYP N/A,VOLT 460,WATT 180,TEMP RNGE 200 DEG C,SPEC 3PH, 1447B/2100 KP AND PSI,APPLI BUYBACK PREHEATER,EQ MODEL:HBG-4040 FG | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |

| Facility | Facility Owner | Item Number | Serial Number | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 70280.A | | MW-AREA 5 | TRANSFORMER;MFR:CUTLER HAMMER,PN:V48M28T49CUEE,TYP DRY TYPE DISTIBUTION,I/P VOLT 480 V,PH QTY 3,O/P VOLT 208/120 V,HZ 60,TEMP RTNG 150 DEG C,INCL TYP NEMA 1,CL,SPCL FEATRS CLASS 220 INSULATION | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70282.A | | MW-R18-1 | PUMP;TYP WASH DOWN,FLW RATE N/A,INLT SZ N/A,OUTLT SZ N/A,OPRTG PRESS 250 PSI,RPM N/A,SPCL FEATRS TEMPERATURE: 100 DEG F,MIN:1X1.5 X 1LF OP/A 94MFR:FLOWSERVE,MN:MK3 LO-FLO | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70283.A | | MW-R20-2 | MTR, ELEC;TYP N/A,HP 30,RPM 1700,PH 3,VOLT 460,FR 286TC,HZ 60,SF 1.15,ENCL N/A,INSUL CLASS N/A,AMP 36 | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 70284.A | | MW-R20-1 | PUMP;MFR:FLOWSERVE,PN:PBA-6410-20-30,TYP COOLING,OPRTG PRESS 250 PSI,SPCL FEATRS TEMPERATURE: 100 DEG F,MFR:FLOWSERVE,MN:MK3-STD | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70285.A | | MW-R20-1 | NOZZLE;TYP SUPER SONIC FLOW,CONN SZ 2-1/2 IN,CONN SZ 2-1/2 IN,CONN TYP NPT,FLW RATE N/A,MATL N/A,MATL GR N/A,APPLI:VENTURI FLANGE FLANGE;TYP VENTURI,DIM 4-1/16,CONN SZ N/A IN,MATL N/A,MATL GR BX15S | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70286.A | | BW-RS-1 | CRA,OPRTG PRESS 10,SPEC 4130,STD API | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70401.A | | BW-R12-1 | HEATER, WATER, ELECTRIC;MFR:RHEEM,PN:PROE28 S2 HR95,VOL CPCTY 28 gal,VOLT 240,AMP 18.8,WATT 4500 | | NEPTUNE | EA | | | 1 | | 468.055 | 468.055 | | |
| Deepwater Warehouse | Fieldwood | 70522.B | | MW-R12-FL | ASSEMBLY;MFR:CAMERON,PN:278639-01,TYP TEST STUMP,SPCL FEATRS W/ PLUG INSTALLED | 141829 | MC 948 2 ST02 GUNFLINT D&E | EA | | | 1 | | 84664.5 | 84664.5 | | |
| Deepwater Warehouse | Fieldwood | 70523.A | | MW-R20-3 | HUB;TYP ELECTRICAL MOTOR,STYL N/A,SZ N/A,MATL N/A,ENCL N/A,APPLI ARIEL VRU COMPRESSOR,SPEC W/ BOLT AND FLEX PLATE,EQ MODEL:JGC:D | | | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70525.A | | MW-R20-FL | VALVE, CONTROL;TYP N/A,VLV SZ N/A,CONN TYP FLARE,CL N/A,DSGN RTNG NA,BDY MATL SS,FLW RATE N/A,APPLI INLET SEP B,STYL N/A | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70526.A | | DWW-YARD | RACK;TYP N/A,MATL N/A,DIM N/A,APPLI MOTOR SHIPPING FRAME; SALT WATER LIFT PUMP | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70527.A | | BW-RS-1 | VALVE, BALL;TYP N/A,OPRTD GEAR,CONN 1 SZ 6 IN,CL N/A,BDY MATL COPPER,MATL GR N/A | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70528.A | | DWW-YARD | RACK;TYP BOAT STORAGE,MATL WOOD,DIM N/A | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 70529.A | | BW-R2-2 | VALVE, RELIEF;VLV SZ 3 IN,CONN TYP N/A,PRESS RANGE 1991-2262 PSI,SET PRESS N/A,OPRTD N/A,BDY MATL N/A,MATL GR N/A,MATL SPEC F51,TRIM SEAT: DEVLON,SFTGDS VITON,SPCL FEATRS CLASS 500 | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 70530.A | | MW-R18-FL | VALVE, RELIEF;TYP BLOWDOWN,VLV SZ 3 IN,CONN TYP N/A,SET PRESS N/A,OPRTD N/A,BDY MATL N/A,MATL GR N/A,APPLI GLYCOL SYSTEM | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 70531.A | | BW-R2-1 | PLATE, ASSEMBLY;MFR:ALFA LAVAL,PN:30110-69628,MATL TITANIUM,DIM THK 0.7 MM,APPLI HEAT EXCHANGER,SPEC W/ NBR GLUED GASKET,REF:M158 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70533.A | | MW-R20-2 | MTR, ELEC;TYP N/A,HP 1.5,RPM 1740,PH 3,VOLT 460,FR 145TC,HZ 60,SF N/A,ENCL TEFC,INSUL CLASS N/A,AMP N/A | | THUNDERHAWK | EA | | | 4 | | 0.01 | 0.04 | | |
| Deepwater Warehouse | Fieldwood | 70533.A | | MW-R20-3 | MTR, ELEC;TYP N/A,HP 1.5,RPM 1740,PH 3,VOLT 460,FR 145TC,HZ 60,SF N/A,ENCL TEFC,INSUL CLASS N/A,AMP N/A | | THUNDERHAWK | EA | | | 5 | | 0.01 | 0.05 | | |
| Deepwater Warehouse | Fieldwood | 70669.A | | BW-AREA 2 | GLASS, SIGHT;MFR:K-TEK,PN:0803-7454-16,TYP BRIDLE,APPLI B SEPARATOR;MFR:K-TEK,MN:KM265/S66/D9F1F1D9/WJ215/WJ715/M2P/D/SS | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70670.A | | MW-R18-2 | KIT;TYP N/A,COMPRISING 48 IN MOURING BUOY FRAME ACCESSORIES, 30 IN BUOY, ANCHOR, 60 M WIRE ROPE AND HARDWARE,PCKG QTY 7,SPCL FEATRS W/ ACCESSORIES, MODEM BATTERY BOTTLE 3X,APPLI 75 KHZ ADCP BATTERY UNIT | | THUNDERHAWK | EA | | | 7 | | 0.01 | 0.07 | | |
| Deepwater Warehouse | Fieldwood | 70672.A | | MW-AREA 6 | KIT;TYP HARDWARE,COMPRISING FLASHING TERM BOX, DRY GAS, TGD AND TANDEM SEAL ASSEMBLIES,FLANGES, COVER PLATES AND BRACKETS,APPLI FLEX PIPE SECTIONS; GENERATOR / ENGINE REMOVAL | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70673.A | | MW-R20-1 | VALVE, BALL;TYP N/A,CONN 1 SZ 3/4 IN,CONN 1 TYP THREADED,CL 3000,BDY MATL CS2,MATL GR CS2 | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 70674.A | | MW-R20-1 | VALVE, BALL;TYP N/A,CONN 1 SZ 2 IN,CONN 1 TYP RTJ,CL 1500,BDY MATL CS,MATL GR WCB | | THUNDERHAWK | EA | | | 7 | | 0.01 | 0.07 | | |
| Deepwater Warehouse | Fieldwood | 70675.A | | MW-R20-1 | VALVE, BALL;TYP N/A,CONN 1 SZ 2 IN,CONN 1 TYP RF,CL 1500,BDY MATL N/A,MATL GR CS2 | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 70676.A | | MW-R20-1 | VALVE, BALL;TYP MONOFLANGE,CONN 1 SZ 2 IN,CONN 1 TYP RTJ,CL 1500,BDY MATL CS,MATL GR LF2 | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 70677.A | | MW-R20-1 | VALVE, BALL;TYP N/A,CONN 1 SZ 3 IN,CONN 1 TYP RF,CL 1500,BDY MATL CS,MATL GR LCC | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70678.A | | MW-R20-1 | VALVE, BALL;TYP N/A,CONN 1 SZ 3/4 IN,CONN 1 TYP N/A,CL 6000,BDY MATL N/A,MATL GR N/A | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 70679.A | | BW-RS-1 | FLANGE, ADAPTOR;BASE MATL X15S,APPLI N/A,CONN TYP XXHD,CONN SZ 4-1/16 IN,DSGN RTNG N/A | | THUNDERHAWK | EA | | | 3 | | 0.01 | 0.03 | | |
| Deepwater Warehouse | Fieldwood | 70800.A | | DWW-YARD-C-VAN 402189 0 | CROSSOVER, CASING;TOP CONN SZ 9.875 IN,TOP CONN WT 62.80 lb/ft,TOP CONN TYP TSH-523,BOT CONN SZ 5 IN,BOT CONN WT 18 lb/ft,BOT CONN TYP BLANK,MATL GR 414S-110K,PROCESS N/A,LG N/A | AFE FW183040 | KATMAI | EA | | | 5110 | | | 10220 | | |
| Deepwater Warehouse | Fieldwood | 71173.A | | MW-R20-1 | FLANGE, SPECIAL PURPOSE;TYP CONCENTRIC,DIM 3 IN,STYL WELD ON FLANGE,BLT HOLE QTY N/A,PCD N/A,MATL N/A,MATL GR N/A,SPEC WIRELOC PN# H3WL2S | | THUNDERHAWK | EA | | | 4 | | 0.01 | 0.04 | | |
| Deepwater Warehouse | Fieldwood | 71124.C | | DWW-YARD | CAP;MFR:TRENDSETTER,PN:A1001622,TYP LONG TERM PRESSURE,DIM DIA NO 10 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 151100 | 302200 | | |
| Deepwater Warehouse | Fieldwood | 71125.C | | DWW-YARD | STAND;MFR:TRENDSETTER,PN:A1004S473,TYP JUMPER FABRICATION,SPCL FEATRS COMMERCIAL SIZE: SHORT, NO 10 TEST HUBS | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 186200 | 372400 | | |
| Deepwater Warehouse | Fieldwood | 71235.C | | DWW YARD C-VAN HUXU 616220-6 | CAP;MFR:TRENDSETTER,PN:A1001620,TYP SHORT TERM PRESSURE,DIM DIA NO 6 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 51000 | 102000 | | |
| Deepwater Warehouse | Fieldwood | 71243.C | | DWW-YARD | TOOL;MFR:TRENDSETTER,PN:A1003797,TYP CLASS 6/7 TORQUE, SKID,SPCL FEATRS SOFTLAND/DRAWDOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 148047.57 | 148047.57 | | |
| Deepwater Warehouse | Fieldwood | 71245.C | | DWW-YARD | STAND;MFR: TRENDSETTER,PN:A1004704 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 172450 | 344900 | | |
| Deepwater Warehouse | Fieldwood | 71312.A | | DWW-YARD | KIT;MFR:TRENDSETTER ENG.,PN:KIT CONSISTS OF PART NUMBERS A1002599,A1002512,A1002606,TYP TOOL,COMPRISING 6/046 GASKET REPLACEMENT TOOL KIT | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 100500 | 201000 | | |
| Deepwater Warehouse | Fieldwood | 71313.A | | DWW-YARD | KIT;MFR:TRENDSETTER ENG.,PN:PART NUMBERS CONSISTING OF A1002599,A1002977,A1002093,TYP TOOL, GASKET,SPEC 10/063 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 105595 | 211190 | | |
| Deepwater Warehouse | Fieldwood | 71398.A | | BW-R8-FL | LINER;MFR:SUPERIOR,PN:651-014-0100,APPLI ENGINE CYLINDER | | NEPTUNE | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71400.A | | OS-R3-S3 | RING, PISTON;MFR:SUPERIOR,PN:651-763-000,APPLI ENGINE,SPEC SET | | NEPTUNE | EA | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71401.A | | OS-R3-S1 | PUMP;MFR:CATERPILLAR,PN 137-1339,TYP WATER,EQ MODEL:3412 | | NEPTUNE | EA | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71402.A | | OS-R3-S1 | PUMP;MFR:CATERPILLAR,PN:7N6128,TYP FUEL TRANSFER,APPLI ENGINE,EQ MODEL:3412 | | NEPTUNE | EA | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 71403.A | | OS-R3-S2 | BEARING ASSEMBLY;MFR:SUPERIOR,PN:650-909-006,TYP UPPER, LOWER,SPCL FEATRS QTY: 2 | | NEPTUNE | EA | | | 11 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 71404.A | | OS-R3-S2 | BEARING ASSEMBLY,MFR:SUPERIOR,PN:650-908-000,TYP UPPER, LOWER,SPCL FEATRS QTY: 2 | | NEPTUNE | EA | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 71407.A | | OS-R3-S3 | BEARING ASSEMBLY,MFR:SUPERIOR,PN:650-909-001,TYP UPPER, LOWER,SPCL FEATRS QTY: 2 | | NEPTUNE | EA | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 71567.A | | BW-RS-3 | VALVE, CONTROL,MFR:EDGEN MURRAY,PN:204824-7,VLV SZ 3 IN,CONN TYP RF,OPRTG PRESS 20 PSIG,BDY MATL CS ASTM A216 GR WCC,TRIM CAGE: SS ASTM A351 CF8M/316, SHAFT: ENP SS ASTM A564 630 (1075), ECCENTRIC PLUG: SS 316 | 203563 | Rio Grande Spares | EA | | | 1 | | 9116 | 9116 | |
| Deepwater Warehouse | Fieldwood | 71568.A | | MW-R16-3 | VALVE, CONTROL,MFR:EDGEN MURRAY,PN:204823-1,TYP BUTTERFLY, 150 RF FISHER-CVN,1052-8560,VLV SZ 6 IN,CONN TYP RF,DSGN RTNG CL 150,BDY MATL CS | 203563 | Rio Grande Spares | EA | | | 0 | | 11523 | 0 | |
| Deepwater Warehouse | Fieldwood | 71569.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204879-4MFR: ANDERSON GREENWOOD,VLV SZ 1 X 2 IN,SET PRESS 260 PSIG,REF:102 JBS-E-15 -OR-J | 203563 | Rio Grande Spares | EA | | | 0 | | 6692 | 0 | |
| Deepwater Warehouse | Fieldwood | 71571.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204879-8MFR: AGCO,VLV SZ 1 X 2 IN,CONN TYP RF,SPCL FEATRS DESIGN RATING: CL 150,REF:1E2JOS-E315 | 203563 | Rio Grande Spares | EA | | | 0 | | 3830 | 0 | |
| Deepwater Warehouse | Fieldwood | 71572.A | | DWW-YARD-C-VAN CPU 03011222G1 | LEAD, ELECTRICAL,MFR:OCEANEERING,PN:445521,TYP FLYING LEAD (EFL),TERM TYP 12 WAY,LEAD OVRL LG 180 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 23466 | 0 | |
| Deepwater Warehouse | Fieldwood | 71589.A | | BW-R7-3 | ASSEMBLY,MFR:SUPERIOR,PN:1050,SZ 10.5 IN,COMPRISING ROD, PISTON,APPLI COMPRESSOR | | NEPTUNE | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 71592.A | | BW-R8-1 | ASSEMBLY,MFR:SUPERIOR,PN:1250,SZ 12.5 IN,COMPRISING ROD, PISTON,APPLI COMPRESSOR | | NEPTUNE | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 71815.A | | MR-3-F | 7 WAY TEST CONNECTOR , 1 TYP MALE CONNECTOR. MFR: ODI, PN: 1037413 | | | EA | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 71837.B | | DWW-YARD | ASSEMBLY,MFR:GRAND OLE SHIPYARD INC.,PN:465856977,TYP TURBINE EXTRACTION SUPPORT | | NEPTUNE | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 71839.A | | OS-R2-FL | KIT,MFR:SOLAR TURBINES,PN:FT10611-102,TYP TOOL | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 72252.A | | LINEAR CONTROLS, LA | ARIEL CYLINDER AND 2 PALLET PARTS | | THUNDERHAWK | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 72253.A | | BW-AREA 2 | CRATE WITH REBUILT CRANKSHAFT, SLEEVE BEARINGS AND THRUST PLATE | | THUNDERHAWK | EA | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 72421.C | | DWW-YARD | FLYING LEAD,MFR:OCEANEERING,PN:0433751,14 WAY, 11 LINE,LG 100 m,STEEL | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 0 | | 148918.5 | 0 | |
| Deepwater Warehouse | Fieldwood | 72491.A | | MW-R20-FL | VALVE, BALL,MFR:AKER,PN:6" 8BA31MFR: MOMA,CONN 1 SZ 6 IN,CONN 1 TYP RF,CL 300,S/N:012-15001001 | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 38479 | 38479 | |
| Deepwater Warehouse | Fieldwood | 72492.A | | MW-R19-1 | VALVE, BALL,MFR:AKER,PN:6" ABA71MFR: MOMA,CONN 1 SZ 6 IN,CONN 1 TYP RF,CL 150,S/N:27QUA-15022601 & 27QUA-15022602 | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 2 | | 25459.85 | 50919.7 | |
| Deepwater Warehouse | Fieldwood | 72493.A | | MW-R19-FL | VALVE, BALL,MFR:AKER,PN:8" 8BA31MFR: MOMA,CONN 1 SZ 8 IN,CONN 1 TYP RF,CL 300,S/N:27QUA-15022501 | 139351 | MC 698 BIG BEND EXECUTE AFE | EA | | | 1 | | 55370.2 | 55370.2 | |
| Deepwater Warehouse | Fieldwood | 72495.A | | BW-R6-2 | BODY,MFR:OIL STATES,PN:PO16769,TYP FORGING,DIM 8 IN,S/N:14468 ,W/ FLANGE FORGING (8 IN PROD SCR, SN: 9080-1, 9080-1, 9080-1),TEST COUPON FORGING/ROUGH MACHINING (8 IN PRODUCTION, SN: 003) | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 305035.48 | 305035.48 | |
| Deepwater Warehouse | Fieldwood | 72496.A | | MR-3-F | SIMULATOR,MFR:AKER,PN:10189751,APPLI ACOUSTIC PIG DETECTOR,S/N:SIM-13-11-12126 | 203563 | Rio Grande Spares | EA | | | 0 | | 9284 | 0 | |
| Deepwater Warehouse | Fieldwood | 72497.A | | MR-3-F | SIMULATOR,MFR:AKER,PN:10189475,APPLI ACOUSTIC SAND DETECTOR,S/N:SIM-13-11-12127 | 203563 | Rio Grande Spares | EA | | | 0 | | 9284 | 0 | |
| Deepwater Warehouse | Fieldwood | 72498.A | | MR-3-F | SIMULATOR,MFR:AKER,PN:10233298MFR: ROXAR,SPCL FEATRS DIGITAL PSI/TEMP,S/N:22560-02.01 | 203563 | Rio Grande Spares | EA | | | 0 | | 4318 | 0 | |
| Deepwater Warehouse | Fieldwood | 72499.A | | BW-AREA-2 | PUMP,MFR:MILTON ROY,PN:532H238/C52,FLW RATE 129 GAL/HR,INLET CONN TYP NPT,OUTLT CONN TYP NPT,OPRTG PRESS 3450 PSI | 203563 | Rio Grande Spares | EA | | | 1 | | 94000 | 94000 | |
| Deepwater Warehouse | Fieldwood | 72637.A | | MW R16-3 | CLAMP,TYP FLEXIBLE JUMPER HEAD,DIM N/A,MATL N/A,MATL GR N/A,APPLI 1 SET CONSISTS OF 2 PIECES / WITH ANODES,SPEC SWL 5.4 T | 203925 | Big Bend Riser Gas Lift Swap | EA | | | 2 | | 23690 | 47380 | |
| Deepwater Warehouse | Fieldwood | 72639.A | | BW-AREA 2 | PUMP, DIAPHRAGM,MFR:MILTON ROY,PN:MCM091-BLPGCFEAMP5T33C,OPRTG PRESS 15 GPH AT 10000 PSI,SPEC 3/4 IN NP CONNECTIONS, 115V XP ELECTRONIC ACTUATORS, DOUBLE BALL CHECKS, RUPTURE DETECTION W/GAUGE,STD 301SS DIAPHRAGMS,MFR:; | 203563 | Rio Grande Spares | EA | | | 1 | | 150000 | 150000 | |
| Deepwater Warehouse | Fieldwood | 72926.A | | MW-AREA 6 | ASSEMBLY,MFR:CAMERON,PN:2207813-31,TYP INSERT RETRIEVABLE,COMPRISING PLUG, SPECIAL GROOVED CAGE,SPCL FEATRS EQUAL 100 PCT CV TRIM, 7 IN NOSE ON INSERT,APPLI SUBSEA CONTROL CHOKE 10K,EQ MODEL:CC40SR | 203563 | Rio Grande Spares | EA | | | 0 | | 87145 | 0 | |
| Deepwater Warehouse | Fieldwood | 72986.C | | DWW FRONT YARD | ASSEMBLY,MFR:TRENDSETTER,PN:TE--101277-00MFR: FREUDENBERG,TYP LOWER,COMPRISING (2) HUBS/PLET, (2) PLETS/WELL, (2) WELL | 142306 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 2 | | 33710.32 | 67420.64 | |
| Deepwater Warehouse | Fieldwood | 73016.A | | DWW-YARD | ASSEMBLY,MFR:MURPHY,PN:61192,TYP 4 PART SPREADER BAR W/SLINGS,DIM 82 LONG X 52 WIDTH IN,SPEC MAX LIFTING CAPACITY 8 TONS | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 73029.B | | MW-R15-2 | ASSEMBLY,MFR:OCEANEERING,PN:0429337-MODMFR: OIE,TYP (27) WAY CAP,COMPRISING 27 X 1/2 HUNTING RS FEMALE VP COUPLER, ROV PANEL, (2) TWO 3-WAY BALL VALVE, 17H DUAL PORT HOT STAB RECEPTACLE,SPCL FEATRS YIELD: 10 KSI,APPLI M2 REMOVABLE PLATE | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 74161.31 | 74161.31 | |
| Deepwater Warehouse | Fieldwood | 73035.A | | MW-R20-FL | VALVE, CONTROL,MFR:MASONEILAN,PN:FVP110,VLV SZ 3",APPLI POSITIONER | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 73375.A | | MR-4-D | RING, BACK-UP,MFR:BAKER HUGHES,PN:H056226100,TYP V.ID 2.366 IN,OD 2.74-2.75 IN,SPCL FEATRS LENGTH: 0.188 IN, INTER COMPANY PURCHASES MUST HAVE BATCH OR APPROVED CERTIFICATIONS W/SHIPMENTS REGULATED TRACEABLE C1 CRITICAL TO | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 216.8 | 216.8 | |
| Deepwater Warehouse | Fieldwood | 73378.A | | MR-5-D | RING, BACK-UP,MFR:BAKER HUGHES,PN:H0A0161400,ID 1.662 IN,OD 1.826 IN,THK 0.48 IN,SPCL FEATRS LENGTH: 0.78 IN, W/SCARF 45-DEG CONCAVE CRITICAL BATCH MANAGED,MIN BPS-F202/PE30,MN SERIES 100 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 87.2 | 87.2 | |
| Deepwater Warehouse | Fieldwood | 73999.A | | BW-AREA 2 | PLATE,MFR:ALFA LAVAL,PN:30110-69630,MATL SS,THK 0.5-0.6 mm,SPCL FEATRS W/ (287) TI PLATES, 0.5 MM NBRP CLIP-AD GASKETS,APPLI HEAT EXCHANGER,MN MX25-MFD | | THUNDERHAWK | EA | | | 3 | | 0.01 | 0.03 | |
| Deepwater Warehouse | Fieldwood | 74001.A | | BW-RS-1 | FLANGE,TYP BLIND,DIM DIA 6 IN,CONN SZ N/A,CL 2500,MATL N/A,MATL GR N/A | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 74002.A | | BW-RS-1 | FLANGE,TYP BLIND,DIM DIA 8 IN,CONN SZ N/A,MATL N/A,MATL GR N/A,MN SERIES 1500 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 74003.A | | BW-RS-1 | FLANGE,TYP BLIND,DIM DIA 8 IN,CONN SZ N/A,MATL N/A,MATL GR N/A,MN SERIES 150 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 74004.A | | MW-R19-1 | CENTRALIZER,TYP COLUMN PIPE,CASNG SZ N/A,ID N/A,OD N/A,LG N/A,MATL N/A,HOLE SZ N/A,CONN TYP N/A | | THUNDERHAWK | EA | | | 4 | | 0.01 | 0.04 | |
| Deepwater Warehouse | Fieldwood | 74006.A | | BW-AREA 1 | PLATE,MFR:ALFA LAVAL,PN:30110-69626,SPCL FEATRS W/ (163) TI PLATES, 0.7 MM NBRP GLUED ON GASKETS,APPLI HEAT EXCHANGER,MN MX25-BFD | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 74100.C | | BW-R11-FL | PUMP, INJECTION,MFR:CHECKPOINT PUMPS,PN:P8412HCNQ3,TYP ASSEMBLY, DOUBLE ACTING,INLT SZ 3/4 IN,SPCL FEATRS MATERIAL: SS 31 XWL, CYLINDER, CER PLUG (MATERIAL: TFE/PEEK/FN),MFR:CHECKPOINT PUMPS,MN:8400 COMPUTER,MFR:AKER,PN:B815-000731-05MFR: PANASONIC,TYP | | NEPTUNE | EA | | | 2 | | 0.01 | 0.02 | |
| Deepwater Warehouse | Fieldwood | 74124.B | | MR-GENERAL | LAPTOP,BRAND:TOUGHBOOK,BRAND:UNKNOWN | | | EA | | | 0 | | 5792.315 | 0 | |

25

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 74178.A | | DWW-YARD-C-VAN 133919 9 | MTR, ELEC,MFR:EDGEN MURRAY,PN:MTR-30-18-TE-2B6TC-841-BP,HP 30,RPM 1800,VOLT 120,SPCL FEATRS C FACE HORIZONTAL, SPACE HEATERS IN ACCORDANCE WITH BALDOR/BP,MFR:RELIANCE,MN:841XL,TAG:PBA-6205,PBA-6206,PBA-6207 | 203563 | Rio Grande Spares | EA | | | 1 | | 5300 | 5300 | | |
| Deepwater Warehouse | Fieldwood | 74179.A | | DWW-YARD-C-VAN 133919 9 | MTR, ELEC,MFR:EDGEN MURRAY,PN:MTR-15-18-TE-254TC-841-BPMFR: BALDOR,HP 15,RPM 1800,VOLT 120,FR 254TC,SPCL FEATRS C-FACE HORIZONTAL, SPACE HEATERS, IN ACCORDANCE WITH BALDOR/BP,MFR:RELIANCE,MN:841XL,TAG:PBA-6441 THRU PBA-6249 | 203563 | Rio Grande Spares | EA | | | 1 | | 4200 | 4200 | | |
| Deepwater Warehouse | Fieldwood | 74189.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:3K4JLT-J8S-E1S-J/SPL,VLV SZ 3 X 4 IN,SET PRESS 245 PSIG,TAG:PSV-4070A AND PSV-4080A | 203563 | Rio Grande Spares | EA | | | 0 | | 10550 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74190.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204879-1MFR: SWAGELOK,TYP MAIN SAFETY,VLV SZ 6 X 8 IN,PRESS RANGE CL 150,SET PRESS 100 PSI,OPRTD PILOT,SPCL FEATRS PILOT WETTED INTERNALS DUPLEX,MFR:EDGEN MURRAY,MN:44305868/51,REF:443 | 203563 | Rio Grande Spares | EA | | | 0 | | 18297 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74191.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204879-5,VLV SZ 1 X 2 IN,CONN TYP RTJ X RF,PRESS RANGE CL 300/1500,SET PRESS 2100 PSIG,MFR:EDGEN MURRAY,MN:85316012/51,TAG:PSV-1210A | 203563 | Rio Grande Spares | EA | | | 0 | | 9425 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74192.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:201822-1MFR: SWAGELOK,TYP MAIN SAFETY,VLV SZ 8 X 10 IN,PRESS RANGE CL 150,SET PRESS 250 PSIG,OPRTD PILOT,SPCL FEATRS PILOT WETTED INTERNALS DUPLEX FITTINGS, DUPLEX TUBING,MFR:EDGEN MURRAY,MN:44305T810/SPL | 203563 | Rio Grande Spares | EA | | | 0 | | 91380 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74193.A | | BW-R5-FL | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204879-2,VLV SZ 6 X 8 IN,SET PRESS 50 PSIG,MFR:EDGEN MURRAY,MN:6QB8S-E15,TAG:PSV-2020 | 203563 | Rio Grande Spares | EA | | | 1 | | 25825 | 25825 | | |
| Deepwater Warehouse | Fieldwood | 74194.A | | MW-R16-2 | VALVE, CONTROL,MFR:EDGEN MURRAY,PN:204824-1MFR: MASONEILAN,TYP ANGLE RECIPROCATING MODIFIED LINEAR TRIM,VLV SZ 3 IN,CONN TYP RTJ,CL 900,DSGN RTNG 21-45 PSIG,OPRTG PRESS 55 PSIG,BDY MATL STEEL | 203563 | Rio Grande Spares | EA | | | 0 | | 25840 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74195.A | | MW-R16-2 | VALVE, CONTROL,MFR:EDGEN MURRAY,PN:204824-3MFR: MASONEILAN,TYP ANGLE GLOBE,VLV SZ 4 IN,CONN TYP RTJ,CL 900,DSGN RTNG 3-15 PSIG,BDY MATL STEEL ASTM A216,STYL BOLTED BONNET | 203563 | Rio Grande Spares | EA | | | 0 | | 33252 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74195.A | | MW-R17-2 | VALVE, CONTROL,MFR:EDGEN MURRAY,PN:204824-3MFR: MASONEILAN,TYP ANGLE GLOBE,VLV SZ 4 IN,CONN TYP RTJ,CL 900,DSGN RTNG 3-15 PSIG,BDY MATL STEEL ASTM A216,STYL BOLTED BONNET | 203563 | Rio Grande Spares | EA | | | 0 | | 33252 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74256.B | | BW-NEP-AREA | COOLER,MFR:ITT STANDARD,PN:SN514206048009,TYP OIL,APPLI GLYCOL HEAT EXCHANGER | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 74267.A | | BW-R5-1 | VALVE, BALL,PN:NA,CONN 1 SZ 3 IN,CONN 1 TYP RTJ,CL 2500,BDY MATL CS,MATL GR N/A | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 74268.A | | BW-R5-1 | ELBOW, PIPE,PN:NA,DEG 90,RADIUS LONG,NOM SZ 4 IN,CONN TYP BW,SCH 160,MATL CS,MATL GR A234 WPB | | THUNDERHAWK | EA | | | 2 | | 0.01 | 0.02 | | |
| Deepwater Warehouse | Fieldwood | 74271.B | | MW-AREA 4 | UNIT; TYPE: PETU-PORTABLE ELECTRIC TEST; MFR: CAMERON, PN: 223184-38; MFR DRG: SK-066184-25 CAMERON | 131068 | MC 519 FABRICATION | EA | | | 0 | | 54199.13 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74288.B | | BW-R3-FL | GENERATOR,MFR:SOLAR TURBINES,PN:NEP0001,TYP CART | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | | |
| Deepwater Warehouse | Fieldwood | 74292.B | | DWW-YARD | PLATFORM,MFR:GRAND ISLE SHIPYARD INC.,PN:3X20X150,TYP METAL GRATING, GALVANIZED,DIM 3 FT WIDE X 20 FT LONG, X 1-1/2 IN THICKNESS,MATL STEEL SUB,MFR:NOV,PN:30184443-CTM57,TYP SAVER, TDX-1250, SHOULDER TO SHOULDER,ID 4.00 IN,OD 10.00 IN,MATL CS,LG 7.35 IN,CONN TYP NC77 STRESS | | | EA | | | 5 | | 0.01 | 0.05 | | |
| Deepwater Warehouse | Fieldwood | 74362.A | | DWW-YARD-C-VAN 402189 0 | RELIEF PIN X CTM-57 PIN | 142981 | MC 782 2 DANTZLER COMPLETION | EA | | | 2 | | 7029.9 | 14059.8 | | |
| Deepwater Warehouse | Fieldwood | 74397.B | | MR-GENERAL | PIG, PIPE,MFR:KNAPP POLY PIG,PN:GUNFLINT SPCL,TYP ULTRASEAL LITE CRISS-CROSS,DIM 6.75 IN | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 637.5 | 637.5 | | |
| Deepwater Warehouse | Fieldwood | 74398.B | | MR-GENERAL | PIG, PIPE,MFR:KNAPP POLY PIG,PN:GUNFLINT SPCL V2,TYP ULTRASEAL LITE BR,DIM 6.75 IN | 139057 | MC 948 GUNFLINT DEVELOPMENT | EA | | | 1 | | 918.75 | 918.75 | | |
| Deepwater Warehouse | Fieldwood | 74438.A | | MW-R17-1 | VALVE, RELIEF,MFR:EDGEN MURRAY,PN:204879-7,CONN SZ 1 IN 1500LB RTJ X 2 IN 300LB RF,SET PRESS 2100 PSIG,BDY MATL CS,SPEC TAG: PSV-1010,MFR:EDGEN MURRAY,MN:85316012/5 | 203563 | Rio Grande Spares | EA | | | 0 | | 9425 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74442.A | | MW-R17-2 | VALVE, BUTTERFLY,MFR:EDGEN MURRAY,PN:204824-6,VLV SZ 8 IN,DSGN RTNG 150,CONN TYP FULL LUG/THRU HOLE RF,OPRTD ACTUATOR/POSITIONER AIR TO OPEN, FAIL CLOSE, 100 PSIG AIR SUPPLY,TRIM ROTARY/HARD FACED SEAT, ECCENTRIC PLUG,BDY MATL STEEL | 203563 | Rio Grande Spares | EA | | | 0 | | 9460 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74486.A | | MW-R17-3 | VALVE, CONTROL,MFR:EDGEN MURRAY,PN:204824-8,TYP GLOBE RECIPROCATING MULTI STAGE 4 PLUG RATED CV-1,VLV SZ 1 IN,CONN TYP RTJ,CL 1500,OPRTG PRESS 38-45 PSIG BENCH SET, AIR TO OPEN, FAIL CLOSE, 50 PSIG AIR SUPPLY,BDY MATL STEEL, A216 | 203563 | Rio Grande Spares | EA | | | 0 | | 20477 | 0 | | |
| Deepwater Warehouse | Fieldwood | 74547.A | | BW-R5-3 | VALVE, CONTROL,MFR:MASONEILAN,PN:35-35212,TYP GLOBE ROTARY,VLV SZ 6 IN,CONN TYP RF FLANGE,CL 150,BDY MATL A216 WCC,TRIM LINEAR, RATED CV 500,OPRTN MTHD FIELDBUS INPUT, AIR TO OPEN, FAIL CLOSE,SPCL FEATRS TAG LV-1040B | 203563 | Rio Grande Spares | EA | | | 1 | | 14675 | 14675 | | |
| Deepwater Warehouse | Fieldwood | 74673.A | | MR-GENERAL | ADAPTOR,MFR:GRAYLOC,PN:H90123-482,CONN 1 TYP 1502 FEMALE,LG 5.25 IN,DIM DIA 1.61 IN,MATL AISI 4140,SPCL FEATRS 2 GR14 2 WECO, 100X,APPLI 15000 PSI MAX SERVICE | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 2385 | 2385 | | |
| Deepwater Warehouse | Fieldwood | 74674.A | | MR-GENERAL | CLAMP,MFR:GRAYLOC,PN:A90148-5WB,TYP (2) PIECE,DIM LG 5.25 IN,SPCL FEATRS THREAD: 3/4-10 UNC, W/ (4) BOLTING, STUD (ASME SA193 B7/2) NUT (ASTM A194 2H), SPH FACE | 142679 | MC 782 DANTZLER DEVELOPMENT | EA | | | 1 | | 202 | 202 | | |
| Deepwater Warehouse | Fieldwood | 74792.B | | MR-3-B | GASKET;MFR:CAMERON,PN:2035804-08,TYP ASSEMBLY,NOM SZ 6 IN,PRESS RTNG 10000 PSI, MN:SERIES 5-AX | | | EA | | | 3 | | 2907.75 | 8723.25 | | |
| Deepwater Warehouse | Fieldwood | 74921.B | | BW-AREA 2 | PUMP,MFR:BORNEMANN PUMPS INC.,PN:W6.5ZK-37,TYP WET OIL,FLW RATE 171.6 GAL/MIN,RPM 1700 | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | | |
| Deepwater Warehouse | Fieldwood | 75139.C | | DWW-YARD | FLYING LEAD,MFR:OCEANEERING,PN:0205858,HYDRAULIC, 7 LINE,275 FEET | 127682 | VK 917 1 ST2 DRILL | EA | | | 1 | | 20000 | 20000 | | |
| Deepwater Warehouse | Fieldwood | 75140.C | | DWW-YARD | FLYING LEAD,MFR:OCEANEERING,PN:0205859,HYDRAULIC, 11 LINE,150 FEET | 127682 | VK 917 1 ST2 DRILL | EA | | | 1 | | 20000 | 20000 | | |
| Deepwater Warehouse | Fieldwood | 75149.A | | MW-R15-3 | JUNCTION PLATE, SUBSEA,MFR:OCEANEERING,PN:423604,TYP 14 WAY FIXED,SPCL FEATS PO: GUN-SS-NEI-PRO-POR-0003 / 6.11, SPEC: 5-110113-001,APPL GUNFLINT SURPLUS | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 34780 | 34780 | | |
| Deepwater Warehouse | Fieldwood | 75150.A | | MR-GENERAL | KIT;MFR:AKER,PN:10236989,TYP ELECTROSTATIC DISCHARGE SIMULATOR,SPCL FEATRS PO: BBD-SSNEI-PRO-POR-0011, SPEC: 5-317793-1, B-12639275,APPLI BIGBEND SURPLUS | 140528 | Rio Grande Spares | EA | | | 0 | | 35000 | 0 | | |
| Deepwater Warehouse | Fieldwood | 75151.A | | MR-GENERAL | CONTROL,MFR:AKER,PN:BB13-060176-18,TYP ICON TOPSIDE 1200 DUAL CHANNEL ELECTRIC,SPCL FEATRS SPEC: 5-1401/B/M5201, B-12045660, PO: BBD-SSNEI-PRO-POR-0011,APPLI BIGBEND/DANZLER SURPLUS | 203563 | Rio Grande Spares | EA | | | 0 | | 3000 | 0 | | |
| Deepwater Warehouse | Fieldwood | 75152.A | | MR-GENERAL | CONTROL,MFR:SCHLUMBERGER,PN:BB15-KM1245-02,TYP ICON SEM,SPCL FEATRS PO: BBD-SSNEI-PRO-POR-0011, SPEC: 5-434, B-12758927,APPLI ESLICDHPT SUBSEA, BIGBEND/DANZLER SURPLUS | 203563 | Rio Grande Spares | EA | | | 0 | | 14000 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 75153.A | | MR-4-D | GAUGE;MFR:SCHLUMBERGER,PN:10195207,TYP DOWNHOLE PRESSURE TEMPERATURE,APPLI:ESLIC, BIGBEND/GOM SURPLUS,SPEC PO: BBD-SSNEI-PRO-POR-0011, SPEC: S-857, B-11762839 | 203563 | Rio Grande Spares | EA | | | 1 | | 14000 | 14000 | |
| Deepwater Warehouse | Fieldwood | 75328.A | | BW-AREA 1 | TOOL;MFR:SOLAR TURBINES,PN:3A461/2,APPLI ENGINE LIFT | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 75328.B | | BW-AREA 1 | TOOL;MFR:SOLAR TURBINES,PN:3A461/2,APPLI ENGINE LIFT | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 75330.A | | MW-AREA 6 | KIT;MFR:SOLAR TURBINES,PN:3A461,APPLI COMPRESSOR ENGINE REMOVAL | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 75413.A | | MW-R16-3 | VALVE, RELIEF;MFR: ANDERSON GREENWOOD,VLV SZ 3 X 4 IN,CONN TYP RTJ X RF,PRESS RANGE 300/900 lb,SET PRESS 2025 PSIG,OPRTD N/A,BDY MATL N/A,MATL GR N/A,MFR:ANDERSON GREENWOOD,MN:853148345PL,MN:PSV-1010 | 203563 | Rio Grande Spares | EA | | | 0 | | 36013 | 0 | |
| Deepwater Warehouse | Fieldwood | 75414.A | | MW-R16-3 | VALVE, RELIEF;MFR:ANDERSON GREENWOOD,PN:204879-10,VLV SZ 4 X 6 IN,CONN TYP RTJ X RF,PRESS RANGE 300/900 lb,SET PRESS 2025 PSIG,OPRTD PILOT,BDY MATL DUPLEX SS,MATL GR 4A,MATL SPEC A5MR6.5,CLF,TYP 2.853 IN,STD API,MN:PSV-1030 | 203563 | Rio Grande Spares | EA | | | 0 | | 33874 | 0 | |
| Deepwater Warehouse | Fieldwood | 75637.A | | MW-R8-2 | O RING;MFR:BAKER HUGHES,PN:HWW8130V45,INDUS STD 130,MATL FKM (95), VITON (45),APPLI C1 CRITICAL TO HSE CRITICAL BATCH,STD AS 569,REF:B201 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 22 | 22 | |
| Deepwater Warehouse | Fieldwood | 75638.A | | MR-S-D | O RING;MFR:BAKER HUGHES,PN:HWW8214V45,INDUS STD 214,MATL FKM (95), VITON (45),APPLI C1 CRITICAL TO HSE CRITICAL BATCH,STD AS 569,REF:B201 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 15.24 | 15.24 | |
| Deepwater Warehouse | Fieldwood | 75639.A | | MW-R8-2 | PACKING, PREFORMED;MFR:BAKER HUGHES,PN:H0S6226200,ID 2.362 IN,OD 2.763 IN,SPCL FEATRS CRITICAL BATCH MANAGED, W/0.188 IN LG C1 CRITICAL TO HSE, SIZE: 2.75 IN,APPLI: PACKING UNIT SUB-ASSEMBLY,BRAND:CHEVRON,BRAND:UNKNOWN,REF:BPS-F101/790 | 143751 | MC 948 2 GUNFLINT COMPLETION/L | EA | | | 1 | | 74.2 | 74.2 | |
| Deepwater Warehouse | Fieldwood | 76004.B | | MW-R16-FL | COVER;MFR:OCEANEERING,PN:0440030,TYP LONG TERM PROTECTIVE,SPCL FEATRS W/ LOOP AUX PLATE, M1 TYPE | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 0 | | 49296 | 0 | |
| Deepwater Warehouse | Fieldwood | 76263.B | | BW-R7-3 | PUMP,SUBMERSIBLE;MFR:S&N PUMPS,PN:9504,APPLI SEA WATER LIFT,MFR:S&N PUMPS,MN:KM400-2MFR:S&N PUMPS,MN:NU911-2/75 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76349.B | | OS-GENERAL | SERVER, AUTOMATIC DATA PROCESSING;MFR:DELL,PN:7596361 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76351.B | | OS-GENERAL | SERVER, AUTOMATIC DATA PROCESSING;MFR:DELL,PN:8596361 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76393.B | | BW-NEP-AREA | PUMP ASSEMBLY;MFR:BAKER HUGHES,PN:SES257H211,APPLI PIPELINE PUMPS,STD THRUST CHAMBER | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76396.B | | OS-R2-S2 | COMPUTER;MFR:SCHNEIDER ELECTRIC,PN:3715-O15110015006,TYP FLAT PANEL INDUSTRIAL,MFR.,SERIES/VERSION:3700,MN:371ST | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76398.B | | OS-R2-S2 | COMPUTER;MFR:SCHNEIDER ELECTRIC,PN:471S-1010310230030,TYP FLAT PANEL INDUSTRIAL,MFR.,SERIES/VERSION:4700,MN:471ST | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76539.B | | DWW-YARD | TRAY, CABLE;MFR:ENDURO,PN:EH16-18-09-20,DIM WD 18 IN X LG 20 FT,MN:ENDURO CLASS 20 | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 76551.A | | MW-R17-1 | VALVE, RELIEF;MFR:ANDERSON GREENWOOD,PN:46305-34/51/5PL,TYP PILOT OPERATED,VLV SZ 4 IN,SPEC 204879-9,MFR.,SERIES/VERSION:463,TAG:PSV-1300 PIPE, PVC;PN:1015,NOM PIPE SZ DESGNTN 10 IN,80,LG 15 ft,SPCL FEATS ORIGINALLY A 20 FT JOINT, BELIEVED TO BE SPEARS PVC PIPE PART NUMBER 1828 | 203563 | Rio Grande Spares | EA | | | 0 | | 10063 | 0 | |
| Deepwater Warehouse | Fieldwood | 76741.B | | DWW-YARD | CAP;MFR:OCEANEERING,PN:0429335,TYP 26 LINE LOGIC, (27) WAY,CONN TYP FEMALE,APPLI M2 REMOVABLE PLATE EQUIPED WITH 26 X 0.5 HUNTING RS,SPCL FEATRS VP COUPLER, PRESSURE: 10000 PSI | | | EA | | | 1 | | 58431 | 58431 | |
| Deepwater Warehouse | Fieldwood | 77341.B | | MW-R15-FL | CAP;MFR:OCEANEERING,PN:0429336,TYP 22 LINE LOGIC, (27) WAY,CONN TYP FEMALE,APPLI M2 REMOVABLE PLATE EQUIPED WITH 22 X 0.5 HUNTING RS,SPCL FEATRS VP COUPLER, PRESSURE: 10000 PSI | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 58431 | 58431 | |
| Deepwater Warehouse | Fieldwood | 77342.B | | MW-R15-FL | PUMP;MFR:DURCO,PN:2K3X1.5-13RV,TYP CENTRIFUGAL,INLT SZ 3 IN,OUTLT SZ 1.5 IN,APPLI HP FLARE SCRUBBER,MFR.,SERIES/VERSION:MK 3 STD | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 77415.B | | BW-AREA 2 | STUD ASSEMBLY;MFR:FASTENAL,PN:15826.75,DIA 1-5/8 IN,THD NC,LG 26-1/4 IN,STUD MATL CS,MATL GR A193,CL B7,NUT QTY 2,NUT TYP HEX HEAD,NUT GR 2H,NUT MATL CS,APPLI FOR BLEED RING ON FASTNAL 6040 PUMP | | THUNDERHAWK | EA | | | 8 | | 0.01 | 0.08 | |
| Deepwater Warehouse | Fieldwood | 77616.B | | MR-GENERAL | ASSEMBLY;MFR:OCEANEERING,PN:990541313,TYP ANODE CLAMP,SPCL FEATRS W/ 3/8 IN DIA X 6 FT WIRE ROPE,OCEANEERING,REF:DWG. NO. 990541276 | 143752 | MC 948 4 GUNFLINT COMPLETION/L | EA | | | 1 | | 4500 | 4500 | |
| Deepwater Warehouse | Fieldwood | 77955.A | | MW-AREA 4 | PLATE, ASSEMBLY;MFR:AKER,PN:1005S501,TYP OB, TEST / FLUSH 4-WAY CROSSHEAD;MFR:CAMERON,PN:620-021-001,TYP GUIDE, WS,APPLI WH 64 COMPRESSOR | 143096 | MC 782 DANTZLER DEVELOPMENT LL | EA | | | 1 | | 36612 | 36612 | |
| Deepwater Warehouse | Fieldwood | 78188.B | | DWW-YARD | | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 78194.C | | MW-R18-2 | ASSEMBLY;MFR:SOLAR TURBINES,PN:219477-103,TYP OUTER EXHAUST CONE | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 78227.A | | MW-AREA 3 | PUMP ASSEMBLY;MFR: BORNEMANN PUMPS INC.,MFR: RELIANCE,TYP N/A,SZ N/A,SPEC W/ MOTOR (50 HP, 1800 RPM, 841XL, TEFC, 3/60/460, 326971),MN:W6.5ZK-37 EXECUTION 16,TAG:PBA-6065, PBA-6060 | 203563 | Rio Grande Spares | EA | | | 1 | | 64575 | 64575 | |
| Deepwater Warehouse | Fieldwood | 78304.B | | BW-AREA 1 | PUMP ASSEMBLY;MFR:PEERLESS,PN:10LB-2,TYP 2 STAGE,SPEC BALLAST, MATERIAL: CAST BRONZE, 1ST STAGE 7.4 IN, 2ND STAGE | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 78305.B | | DWW-YARD | SKID;MFR:DOLPHIN SERVICES LLC,PN:JN12483,SPCL FEATRS TABLE,APPLI GENERATOR CHANGE OUTE | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 78391.B | | MW-R18-1 | TOOL KIT;MFR:SOLAR TURBINES,PN:FT20060-100,TYP LIFT,APPLI FOR GEARBOX C40-T60 | | THUNDERHAWK | EA | | | 0 | | 0.01 | 0 | |
| Deepwater Warehouse | Fieldwood | 78486.B | | DWW-YARD | PIPE,NOM SZ 4 IN,OD 4.5 IN,SCH 80,WALL THK 0.337 IN,WT 14.98 lb/ft,MATL CS,MATL GR ASTM A106,GR B,PROCESS SEAMLESS,END CONN PEB,LG SRL | | NEPTUNE | FT | | | 38 | | 0.01 | 0.38 | |
| Deepwater Warehouse | Fieldwood | 78487.B | | DWW-YARD | PIPE,NOM SZ 3 IN,OD 3.5 IN,SCH 80,WALL THK 0.300 IN,WT 10.25 lb/ft,MATL CS,MATL GR ASTM A106,GR B,PROCESS SEAMLESS,END CONN PEB,LG SRL | | NEPTUNE | FT | | | 22 | | 0.01 | 0.22 | |
| Deepwater Warehouse | Fieldwood | 78510.B | | MW-R16-3 | ASSEMBLY;MFR:AKER,PN:10217716,COMPRISING (12 WAY), (12) LINE) FIXED JUNCTION PLATE, INBOARD TEST AND FLUSHING | 141585 | MC 698 BIG BEND LONG LEADS | EA | | | 1 | | 14969.81 | 14969.81 | |
| Deepwater Warehouse | Fieldwood | 78522.B | | DWW-YARD | ANGLE, STRUCTURAL;WD 3 X 3 IN,MATL THCK 1/4 IN,WT 4.9 LB.FT,LG 20 FT,MATL MS ASTM A36,PROCESS HOT ROLLED,SURF TRTMNT HOT DIPPED GALVANIZED | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 79835.A | | BW-NEP-AREA | PUMP;MFR:PUMP WORKS,PN:330-00112-1000,DIM 6 IN,INLT SZ 1 IN,OUTLT SZ 1.5 IN,MFR:PUMP WORKS,MN:PWA | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 80019.B | | BW-R2-FL | PUMP;MFR:MILTON ROY,PN:PN6G(115)R40H131/BI.CS.VV2,TYP METHANOL,FLW RATE 129 GAL/HR,OPRTG PRESS 1900 PSI | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 80022.B | | BW-AREA 2 | PUMP;MFR:MILTON ROY,PN:PF146(175)S(AA)32H23BDX/BI.CS.VV2,TYP METHANOL,FLW RATE 128 GAL/HR,OPRTG PRESS 3451 PSI | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 80026.B | | BW-R3-FL | MTR, ELEC,MFR:RELIANCE,PN:7407345-001,TYP P,HP 30,RPM 1765,VOLT 460,FR 286TC,HZ 60,AMP 36.1 | | THUNDERHAWK | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 81034.A | | BW-AREA 1 | DUCT,MFR:SOLAR TURBINES,PN:1091389-101,TYP EXPANSION KIT,DIM 36 INCH | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 81057.A | | BW-NEP-AREA | BATTERY;MFR:GNB,PN:3-100G31,TYP VRLA STACKABLE,VOLT 6,CURRENT CPCTY 1900 NOM AH CAP (100HR),DIM 8.59 IN W X 40.25 IN LG X 26.38 IN H,APPLI PHOTOVOLTAIC,BRAND:ABSOLYTE GP,MFR:GNB,MN:M87012100130144ALV | | NEPTUNE | EA | | | 1 | | 0.01 | 0.01 | |
| Deepwater Warehouse | Fieldwood | 82828.A | | | CLAMP;TYP TUBING PROTECTOR,SZ 6.675 IN,DIM LG 25.25 IN,OD 9.11 IN,MATL LOW CS,MATL SPEC ASTM A1011,SPCL FEATRS W/ DUAL CHANNELS AND BEVELED ENDS,APPLI OVER THE COUPLING, (1) LEFT CHANNEL (OD: 1.525 IN), (1) LEFT TO RIGHT UMBILICAL CHANNEL | | GUNFLINT #4 STIMULATION | | | | 160 | | 149.7 | 23952 | |
| Deepwater Warehouse | Fieldwood | | | N/A | 1-Blue Connex Box with Subsea Parts and Accessories-BENNU, ID 000686-3A | 206595 | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 07248.A | | MW-10-2 | GASKET, RING JOINT;CODE:VX-2,MATL:SS,MATL GR:316,CL:15000PSI,APPLI:WELLHEAD (SIZE: 18-3/4IN),MFR:VETCO GRAY,PN:111053-1,EQ MODEL:MS-700 | AFE FW193004 | TROIKA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 57731.A | | MW-10-2 | GASKET,MFR:VETCO GRAY,PN:H10993-2,TYP VGX-2,PRESS RTNG 15000 PSI,DIM 18.75 | AFE FW193007 | TROIKA | | | | 3 | | 4683 | 14049 | |
| Deepwater Warehouse | Fieldwood | 56483.A | | N/A | Seal: FMC Technologies, Pn 73-694-037, MATL Metal | | | | | | 0 | | 6322.07 | 0 | |
| Deepwater Warehouse | Fieldwood | 56480.A | | N/A | Seal, MFR: FMC Technologies, PN: P1000062046, MATL Metal | | | | | | 0 | | 14454.29 | 0 | |
| Deepwater Warehouse | Fieldwood | 50706.A | | MW - AREA 3 | ASSEMBLY, TYP: TUBING HANGER, SZ: 5 1/2 IN, 29.70 VAM TOP, CL: HH MATL GR: ASTMA182-F6NM,COMPRISING:(1) DHPT, (3) CID, (3) DLP, (2) SV,SPCL FEATRS: 15,000 PSI W/O CROWN PLUGS, MFR: FMC TECHNOLOGIES, PN:P1000041325) | AFE FW205014 | GUNFLINT | | | | 1 | | 573670 | 573670 | |
| Deepwater Warehouse | Fieldwood | 50705.A | | DWW-YARD-C-VAN CPIU 0301122251 | CAP,TREE;TYP:XOV MATL:UHMW (E50114),MATL GR: HH TRIM, PRESS RTNG:15,000 PSI,APPLI:INCL; 3RD TEST BARRIER TO ANNULUS VIA HOT STAB, ANTI-BACKOFF TO LOCK MANDREL OF THE TUBING HANGER, SPEC:3S-250 DEG F TEMP RNG, MFR: FMC TECHNOLOGIES, PN: P181226 | | | | | | 201405 | | 0 | 201405 | |
| Deepwater Warehouse | Fieldwood | | | N/A | Spare FMC Crown Plug Redress Kit | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | | Crown Plug | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 50704.A | | DWW-YARD-C-VAN CPIU 0301122251 | Assembly; TYP: Upper & Lower Crown Plugs, SZ-41 IN, MATL:HH TRIM, MATL GR-9CR Alloy 718,SPCL FEATRS:15k PSI; APPLI: F/Tubing HANGER, SPEC: SBMS, MFR: FMC TECHNOLOGIES, PN: P180150 | | | | | | 1 | | 146027 | 146027 | |
| Deepwater Warehouse | Fieldwood | 46459.A | | MW-R11-3 | RECEPTACLE, MALE, FIXED, 2.000 IN 1/16IN, API 6A FLANGE, MODEL: UH-575-550, UNITECH, PN: 32391 | | | | | | 1 | | 82317.5 | 82317.5 | |
| Deepwater Warehouse | Fieldwood | 46462.A | | MW-R15-1 | CONNECTOR, MALE, TEST, W/9/16 AEMP, MODEL: UH-575-550, UNITECH, PN: 32623 | | | | | | 2 | | 73957.5 | 147915 | |
| Deepwater Warehouse | Fieldwood | 46460.A | | MW-R12-3 | CONNECTOR, FEMALE, FITTED W/A GRAYLOC HUB & BRACING, MODEL: UH-575-550, UNITECH, PN: 32392 | | | | | | 2 | | 132263.75 | 264527.5 | |
| Deepwater Warehouse | Fieldwood | 46466.A | | MW-R12-3 | CAP, PROTECTION, FOR FEMALE CONNECTOR UH-575/550, UNITECH, PN: 27387 | | | | | | 2 | | 8692.5 | 17385 | |
| Deepwater Warehouse | Fieldwood | 52339.A | | BW-AREA 3 | Pup Joint, Tubing: MFR: Vallourec, PN: 4' Pup Joint, NOM SZ 5 1/2' Inc, WT 29.70, MATL GR:JFE HP-2 13 CRM-115, CONN TYP VAM HC, TOP CONN TYP PIN, Bot CONN TYP PIN, LG 4FT | AFE FW205014 | GUNFLINT | | | | 1 | | 2289.9 | 2289.9 | |
| Deepwater Warehouse | Fieldwood | 50737.A | | BW-AREA 3 | Pup Joint, Casing: TYP: JFE, NOM SZ 5 1/2, WT 29.70, MATL: ALLOY, MATL GR: 13 CR 115, Process; VAM Top HC Coupling, TOP CONN TYP: Box, BOT CONN TYP PIN, LF,4 FT, SPCL FEATRS: HP-2 | AFE FW205014 | GUNFLINT | | | | 1 | | 3747.845 | 3747.845 | |
| Deepwater Warehouse | Fieldwood | 84412.A | | MR-4-E | FITTING; MFR; PETRO TECHNOLOGIES, PN: 150M871 REV C,TYP SUBSEA, RUN SZ 9/16 IN MTM X 1/2 IN POTHI | 206595 | GUNFLINT #4 STIMULATION | | | | 6 | | 5314.68 | 31888.08 | |
| Deepwater Warehouse | Fieldwood | 27496.A | | DWW-YARD | CONTROL LINE, HYDRULIC, SINGLE, 0.500 IN X 0.065 WT, INCOLOY 825 MATERIAL, WELDED, ENCAPSLATED, TRANSAQUA FILLED, METAL DRUM, NOBLE QCP, SCHLUMBERGER, PN: 4010000000000-4_MSC | 206595 | GUNFLINT #4 STIMULATION | | | | 7000 | | 12.568795 | 87981.565 | |
| Deepwater Warehouse | Fieldwood | 62304.A | | DWW-YARD | TUBE; MFR. BAKER HUGHES, PN: H30796-13, TYP DUAL CHEMICAL INJECTION LINE FLAT PACK, OD 1/2 IN, MATL ALLOY, MATL GR 825 | 206595 | GUNFLINT #4 STIMULATION | | | | 7000 | | 15.29 | 107030 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | 4-Chiksan 3" 6000 Pup Joint (Male x Female):1-Chiksan 6000 Tee Joints (Male x Male x Female):1-Chiksan 3" 6000 Tee Joint (Female xFemale x Male) 0-3" 150 Check Valve with Chiksan 3' 6000 Male x Female | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | 1-4" 150 Check Valve with Chiksan 4" 6000 Male x Female: 1-6" 150 Blind Flange: 1-6" 150 Blind Flange with 1/2 NPT Inlet; 20-Chiksan Pipe Joints (various sizes): 7-4" x 20' (4700) UHMWP Chemical Hoses: 4-4"90's: 1-4" Camel: 1-3" Camel: 12-2" Wire Rope Slings: 1-BOX (Loose NUTS, BOLTS & GASKETS) | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | BW-RS-2 | Spool Tubing | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | BW-R4-1 | Spool Wire | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-AREA 3 | Pallet-Rack On Pallet (Must Be Stored In Upright Position) | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-AREA 6 | Tubing Hanger Emergency Recovery Tool ASSY: SN 111432828-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | Tubing Hanger, STM-15, 4 1/16" x 2-1/16" NOM 10000PSI WP Special w/5 1/2 17# Reg Fox K Thd; w/2X SCSSV, 2X CI, 1X TH Controlled Landing, 1X Test Between Seals, 1XEXAL Elec Pen, PSI. 3, Matl CL5 'FF' 3S-250 Deg F/ SN: 11457446-1 | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R8-FL | TUBING HANGERS, P/N 2124128-01 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-FL | TUBING HANGER HANDLING TEST TOOLS, P/N 2124135-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R8-1 | TUBING HANGER HANDLING TEST TOOLS, P/N 2124135-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TUBING HANGER RUNNING TOOL, P/N 2124129-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | INTERVENTION CAP, P/N 2124118-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-FL | DUMMY HANGER, P/N 2124139-01, S/N 11186901-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | Lead Impression Tool, P/N 2124133-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TRT Test Cap, P/N 2124620-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TRT Test Cap Test Skid, P/N 2124121-01 | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | Tool Skid B x 8 x 7, P/N 2124137-01 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | 1-Box OD Spares 4 x 4 x 4 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MW-AREA 6 | Tree Cap Running Tool ASSY; P/N 2099720-02, SN: 26-1567 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | BW-R9-1 | BORE PROTECTOR, P/N 2141626-10, S/N 111207432-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Orings THRT Control Line Stabs-P/N K81632-216; MFR. OneSubsea | | | | | | 23 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Back Up Ring for THRT Control Line Stabs-P/N NO 3008-216, MFR. OneSubsea | | | | | | 21 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Seal 1 3/8" OD-P/N 142895-55-01-03, MFR. OneSubsea | | | | | | 14 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Seal 5 1/2" OD-P/N 20-120919195-1, MFR. OneSubsea | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Oring-P/N 702645-45-31, MFR. OneSubsea | | | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Backup Ring-2 1/8 1037 OD-P/N NO 3008-230, MFR. OneSubsea | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Backup Ring-4 7/8" OD P/N NO 3008-249, MFR. OneSubsea | | | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | MR-GENERAL | Couplers for Gunflint 15K Manifold-P/N 0437828, MFR. OneSubsea | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | | | N/A | 4-J Lock Tools | | | | | | 0 | | 1,000.00 each | 0 | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Guide Funnel Components; P/N 2330216-01; S/N 0335-01 | | | | | | 1 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA DUMMY POD; P/N 60031331; S/N 9S23237B07360 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Tubing Hanger; P/N 2156145-01; S/N 11324065-01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Tooling; P/N 2124159-01 X2; S/N 45284821-1/S/N 45284821-4 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Tooling REd Paint on Components w/NCR Stamps:TROIKA Spool Piece; P/N 2124584-01-B01; S/N 45605849-1-1: | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | N/A | G2 Tubing Hanger W/Upper and Lower SSR Plugs; P/N 2055294-12; S/N 110357224-01 | | | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | Tubing Hanger Running Tool; Tubing Hanger Running Tool Handleing Test Tool, Tubing Hanger; THRT-Cameron Rental 26-M-0128, P/N 21456145-01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Adapter; P/N 100072958;S/N SST-33827 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Seal ASSY's-Three (3) Pallets:MacPac Clamps; P/N 2099099-3 X2; S/N 1119637k-1 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | N/A | TROIKA Clamp; Shell ID# 24464:TROIKA Tooling; P/N 1000061862;S/N S124-00-1: Slings; P/N 1000022786; S/N 366059-1-1: Seal Assy P/N 169220,S/N 2012-10-0589N | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | DMC Tooling P/N; P147721; S/N 2082810-01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | Seal Assy P/N 143264; S/N 2013-05-1451H | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | TROIKA Tooling P/N 1000052576 x4; TROIKA Tooling P/N 1000052576 x4 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | HGR P/N 1000061862; S/N 2013-11-943H | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SEAL P/N 1000090225; S/N 82164-3 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SEAL P/N 1000086840; S/N 2008-02-1056H | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SEAL P/N 168737: S/N 84190-1 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | N/A | TROIKA Oil Cooler-Asset # H! 573-A G1: 1-18.75 Gasket (To be Crated for Shipping) P/N 041700-47-01:1-Sea Chest P/N 104120-0000 | | | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | 1- Test Stand P/N 0428793 | | | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28933 | | TROIKA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28934 | | TROIKA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28799 | | TROIKA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28800 | | TROIKA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28801 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-3 | 1/4" National Coupler Welded Assembly P/N 743-28925 | | TROIKA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-2 | Semi Subsea Elec Module P/N BAA-43101 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | 0.16 L Diaphragm Accumulator P/N 436-29107 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | Suttle Valve Assembly P/N 742-21493 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | Pilot Filter Assembly P/N 115-28944 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | Filter Assembly (High Pressure) P/N 125-28880 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | Filter Assembly (Low Pressure) P/N 125-28882 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | Anchorage Block P/N 402-28627 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | 10 L Accumulator P/N 436-28711 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | 2.5L Accumulator P/N 436-29710 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | N/A | Master Control Station (MCS) 0-200MZ Pentium Motherboard P/N 720-30154; 0-SCSI Card 1540 P/N 720-30155; O-PLC Little Star P/N 905-28845 | | TROIKA | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-3 | ACC, BLDR, 3KPSI, 11 Gallon P/N 822787 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | BW-AREA 1 | SCM (POD) P/N BAA-43000 | | TROIKA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SCM Running Tool P/N BAA-72000 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SCM Running Tool Shipping Frame P/N BAA-71100 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW-YARD | SCM Shipping Frame P/N BAA-71000 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | SCM Handling Tool P/N 782-21860 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R6-2 | Choke Blanking Cap (SN-C2) P/N A109941-65 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-2 | Choke Insert P/N MVO151V2P2 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | 3 Way 2 Position Piloted Operated Directional Control Valve P/N 834337 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | MW-R7-1 | 8-Way EFL 230 FT P/N BAA-41000 | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | BW-R8-2 | Handling Sub P/N 2123000-01; S/N 2657807220/ 9S2-3045685-9C | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | N/A | 1-Washing Machine "New" No Asset # for Neptune Spar VK B26-A | | | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | N/A | 5-VX-2 Gasket 18.750 Stainless Steel. 15 KSI MWP; Item # 111053-1/HTS Code 8484.10.0000: 05/15/19 3-Shipped to One Subsea Morgan City, LA to Chuck Williams for FW 193004 | | | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | N/A | 5-Molded Nitrile VX Gasket, Stainless Steel, 18.750-10000 PSI MSP; Item # 111227-1/HTS Code 8484.10.0000: 05/15/19 3-Shipped to One Subsea Morgan City, LA to Chuck Williams for FW 193004 | | | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82830.A | | MR-R10-2 | Skoflo CMV 100278-L200-L201-R-ODI-0D-H dual core LF/LF MOD Bus -ODI-ROV S/N 4231 10,000 PSIG | | TA-3 | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82831.A | | MW-R10-1 | Skoflo CMV 100278-L200-L201-R-ODI-0D-H dual core LF/LF MOD Bus -ODI-ROV S/N 4232 10,000 PSIG | | TA-2 | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree cap Test Stand : 13x11x5 Wt. 5,000 Lbs. | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Debris Cap: 2x2x1 Wt 200 Lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Shipping Skid: 16x11x16 Wt 6,000 Lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Shipping Skid: 16x11x16 Wt. 6,000 Lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Test Skid: 14x10x3 Wt. 10,000 lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Running tool test Skid: 10x10x3: Wt 7,000 Lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | MacPac Jumper Structure: 11x9x7 6,000 Lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | MacPac Jumper Structure: 11x9x7 6,000 Lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | MacPac Hub on Spool: 6x2x2 Wt. 1,000 Lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | MacPac Spool with Clamp: 4x2x2 Wt 2,000 lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Cap Running tool with Guide funnel: 13x3x4 Wt 1500 Lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Cap Top Plate: 4x4x1 Wt 1,000 lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Cap Skirt: 4x4x4 Wt 2,000 lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tree Cap: 4x4x5 Wt 5,000 lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Interventon Tree Cap: 4x4x7 Wt 5,500lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Tubing Hanger Stand: 2x2x1 200Lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Emergency Tree connector unlocking tool: 19x9x9 Wt. 12,000 lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | | | DWW YARD - SE CORNER | Debris Cap with Hotstab: 2x2x4 Wt. 800Lbs | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82832.A | | OS-R2-S3 | PI003922 | | | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82833.A | | OS-R2-S3 | PI003924 | | | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82834.A | | OS-R2-S3 | PI14340 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82835.A | | OS-R2-S3 | Trendsetter Eng. P/N 6400-04-10-55 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82836.A | | OS-R2-S3 | Lonestar PI004141 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82837.A | | OS-R2-S3 | Lonestar PI005846 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82838.A | | OS-R2-S3 | Cameron S-Ax Gasket, P/N 2165231-06 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82839.A | | OS-R2-S3 | O-RING, SIZE AS 568-360, 5.850 ID X .210 W BSD. MFR: ONESUBSEA, PN: 702647-36-01 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82839.A | | DWW-YARD-C-VAN TTN(49776101456)1 (CLIMATE CONTROLLED) | O-RING, SIZE AS 568-360, 5.850 ID X .210 W BSD. MFR: ONESUBSEA, PN: 702647-36-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 82841.A | | OS-R2-S3 | Parker P/N N0300 B-360 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82842.A | | OS-R2-S3 | Trendsetter Eng. PI005715 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82843.A | | OS-R2-S3 | Grayloc Seal Ring P/N S1284N | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82844.A | | OS-R2-S3 | VANCO, S-AX GASKET P/N 2274164-04 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82845.A | | OS-R2-S3 | Sealco P/N P1014341 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82846.A | | OS-R2-S3 | Sealco P/N P1014342 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82847.A | | OS-R2-S3 | Sealco P/N P1014463 | | | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82848.A | | OS-R2-S3 | Sealco P/N P1014464 | | | | | | 14 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82849.A | | OS-R2-S3 | Trendsetter Eng. P/N TEI-08030411-00 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82850.A | | OS-R2-S3 | Oceaneering P/N 3300470-H | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82851.A | | OS-R2-S3 | Oceaneering P/N A05320-M | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82852.A | | OS-R2-S2 | Downhole instrumentation Wet-Mate receptacle connector fitted with single way pin insert, P/N - BNX-EB02888100O021, DHCE-B28-B8-01P-00D-121 | AFE FW181011 | | | | | 1 | | 12075.69 | 12075.69 | | |
| Deepwater Warehouse | Fieldwood | 82853.A | | MW-R12-1 | 100' EFL 6 way ODI ROV CE plug with 4-way ODI ROV CE receptacle with sockets P/N 00-71352 S/N 2019-1342-3-1 | AFE FW193004 | TROIKA | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82854.A | | MW-AREA 2 | WELLHEAD CLEANING TOOL P/N 990071718 | AFE FW192008 | | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82855.A | | DWW-YARD | Troka Tree Cap P/N 2124118-01 | AFE FW192009 | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82856.A | | OS-R2-S2 | Downhole Instrumentation dry-mate plug connector with single way socket insert (crimp termination) to suit 18/16AWG downhole cable. P/N - BNX-EA051BQ1000121, DHCE-A51-BQ.015-0D1-121 | AFE FW181011 | | | | | 2 | | 8960.35 | 17920.7 | | |
| Deepwater Warehouse | Fieldwood | 82857.A | | OS-R2-S2 | Miniature dry mate downhole receptacle, P/N - BNX-TC6A-512-HN, TC6A-512-HN ASSY, TREE HANDLING TOOL & ROV T-HANDLE, MFR. P/N - 2301786-02, S/N - 11190781-01 | AFE FW181011 | | | | | 1 | | 8912.06 | 8912.06 | | |
| Deepwater Warehouse | Fieldwood | 82858.B | | BW-AREA 3 | TREE HANDLING TOOL & ROV T-HANDLE, MFR. P/N - 2301786-02, S/N - 11190781-01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82859.B | | MW-AREA-6 | TREE REMOVAL TOOL, P/N 2124131-01, S/N 111432828-0 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82860.A | | MW-R13-1/MW-AREA 4 | DUCT DIFFUSER EXHAUST; MFR. SOLAR TURBINE, PN: 113508-304 | | BULLWINKLE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82861.A | | MW-R13-1 | DC LUBE OIL PUMP; VORE-VENT 3500 RPM, MFR. BUFFALO PUMPS, PN: 190971-100, | | BULLWINKLE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82862.A | | MW-R13-1 | DC LUBE OIL MOTOR; 120V, 3500 RPM, SP HTR 30W, MFR. GE KINAMATIC DC MOTOR, TYPE CD2110APY, MODEL 5BY5S4ZD800A805 | | BULLWINKLE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82864.A | | MR-3-F | 7 WAY MALE TEST CONNECTORS | AFE FW193007 | TROIKA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82865.A | | OS-R1-S1 | UNIV ROV CE PROTECTIVE CAP P/N 0374955 | | TROIKA | | | | 26 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82866.A | | OS-R1-S1 | 7 way ROV retrievable shorting plug P/N 0343821 | | TROIKA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82867.A | | OS-R1-S1 | 7 way electrical test plug P/N 0428788 | | TROIKA | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82868.A | | OS-R1-S1 | Polyefin tubing spool P/N 0467370 | | TROIKA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82869.A | | BW-NEP-AREA | PUMP; 6X8X11 MPV 3 STAGE LACT CHARGE PUMP, MFR. AFTON | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82870.A | | BW-NEP-AREA | RADIATOR; MTR. CATAPILLAR, P/N - 8N-4880 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82871.A | | MW-AREA 1 | LEAD, ELECTRICAL,MFR: AKER,PN:1004873 9,TYP FLYING LEAD (EFL),TERM TYP 6 WAY PLUG X 4 WAY RECEPT,LEAD OVRL LG 26' | | | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82872.A | | BW-AREA-3 | HANGOFF (20) STUDS AND (40) NUTS P/N WS-POS1191 STUD 1.875 BUN X 350MM BL | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82873.A | | BW-AREA-3 | (48) STUDS 1.125 BUN X 11 BL. P/N WS-POS1907 / (96) HEX NUTS 1.125 BUN BL P/N WS-P24968 / (4) SBK16B SEAL RING INC625 P/N WS-P10070 / (4) VENT VALVES 0.250 - 18NPT RV05-575 P/N WS-P00646 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82874.A | | BW-AREA-3 | (12) HEX NUTS M42 BL P/N WS-P3011B / (12) STUDS M42 X 255MM BL | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82875.A | | BW-AREA-3 | (1) JAP PENETRANT AEROSOL P/N WST010012 / (1) JAD DEVELOPER AEROSOL P/N WS-T010011 / (2) JAC 2 AEROSOL P/N WS-T010010 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82876.A | | BW-AREA-3 | (1) B1666B HANG-OFF ASSEMBLY P/N WS-POS1633 / (1) B1666B HANG-OFF ISOLATION KIT | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82877.A | | BW-AREA-3 | (1) 2MTRS B1666B-01 SHIELD SAMPLE / 6 FOIL BAGS OF WELDING RODS PA12 NATURAL (20MTRS PER BAG) P/N WS-P22176 / (3) CANUSA TAPE 4" P/N T04640 / (3) TAPE CLEAR STRAPPING 100MM X 3M P/N WS-T05745 / (2) MTRS CORROUTE P/N WS-P00686 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82878.A | | BW-AREA-3 | (20) STUDS 1.875-BUN X 350MM BL P/N WS-POS1991 / (40) HEAVY HEX NUTS 1.875-BUN BL P/N WS-P25181 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82879.A | | BW-AREA-3 | (4) BRACELET ANODE 2/9AKS/FS B1666B P/N WS-POS1733 / (48) ANODE FASTENER SET M12X1.75X150MM P/N WS-P19399 / (6) CONTINUITY CABLE 0.6L N0000152O114 P/N WS-P29209 / (18) CONTINUITY CABLE 0.6ML N0000152-115 P/N WS-P17460 / (6) CAPSCREWS SHOD.750 -16UNF-2A 8.25L UN P/N WS-P0S0535 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82880.A | | BW-AREA-3 | (1) 4.5" DYNAMIC PR STOPPER CLAMP AND INSTALLATION EQUIPMENT. | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82881.A | | BW-AREA-3 | (1) TETHER CLAMP ASSEMBLY P/N D15005-01-057 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82882.A | | BW-AREA-3 | (1) PULL-IN INSTALLATION JIG 113.03CM X 113.03CM X 220.03CM P/N D15005-02-050 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82883.A | | BW-AREA-3 | (1) FUNNEL ASSEMBLY 192.72 CM X 130.33CM X 122.87CM P/N D15005-01-004 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82884.A | | BW-AREA-3 | (22) DUIRGUARD HALVES P/N WS-P0S1886 / (55) 625 INCONEL BANDING AND BUCKLES P/N P0S3299 / (55) 625 INCONEL BANDING AND BUCKLES P/N WS-P0S3300 / (1) MANUAL INSTALLATION TOOL P/N WS-P30164 / (1) PNEUMATIC INSTALLATION TOOL P/N WS-P30084 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82885.A | | BW-AREA-3 | (1) SHAFT ASSEMBLY 107.31CMOD X 135.57L P/N D15005-01-005 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82886.A | | BW-AREA-3 | (1) US-UMBILICAL | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82887.A | | BW-AREA-3 | (1) SHAFT ADAPTER SPOOL ASSEMBLY P/N D15005-01-006 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82888.A | | BW-AREA-3 | HOSE, EATON SYNFLEX 33CP 08 COLLAPSE PROOF 1/2" ID 5000 PSI WP 150475 02330 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82889.A | | BW-AREA-3 | (8) TURN BUCKLES | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82890.A | | BW-AREA-3 | (1) FUNNEL FASTENERS | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82891.A | | BW-AREA-3 | (1) CRATE ASSORTED NUTS AND BOLTS | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82892.A | | VERTICAL RACK | SLEEVE,PN:HUNT-1615,TYP HOLD OPEN,MATL HT 4140,SPCL FEATRS HUNTING 3.615 IN NO-GO OD FOR 3.562 IN RPT PROFILE, 131 IN BELOW NO-GO W/ 110 MIN YIELD RUNNING TOOL AND TOP SUB, SLEEVE BARREL: 1026 DOM | 206595 | GUNFLINT #4 STIMULATION | | | | 0 | | 6250 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82893.A | | BW-AREA-3 | (1) CRATE ASSORATED NUTS AND BOLTS | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82894.A | | MW-R8-1 | EFL 12P TO 12S 40M, CONNECTOR HOUSING MATERIAL: INCONEL. MFR: ONESUBSEA, PN: 2197088-51-18 | AFE FW193007 | TROIKA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82894.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | EFL 12P TO 12S 40M, CONNECTOR HOUSING MATERIAL: INCONEL. MFR: ONESUBSEA, PN: 2197088-51-18 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82895.A | | MW-R8-1 | EL ROV PARK 12S W/INSERT P/N 2197088-13-62 | AFE FW193007 | TROIKA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82895.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | EL ROV PARK 12S W/INSERT P/N 2197088-13-62 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82897.A | | MW-R8-1 | EL ROV PARK 4/7/12P W/O INSERT P/N 2197088-05-57 | AFE FW193007 | TROIKA | | | | 2 | | 0 | 0 | | |

30

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 82897.A | | DWW-YARD C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | EL ROV PARK 4/7/12P W/O INSERT P/N 2197088-05-57 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82898.B | | MW-R11-1 | SKOFLO CHEMICAL INJECTION METERING VALVE (CIMV), 4-WAY MALE STAB PLATE ELECTRICAL CONNECTOR, DUAL CORE, LOW FLOW/ LOW FLOW, 15K PSI S/N 4689 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82899.B | | MW-R11-1 | SKOFLO CHEMICAL INJECTION METERING VALVE (CIMV), 4-WAY MALE STAB PLATE ELECTRICAL CONNECTOR, DUAL CORE, LOW FLOW/ LOW FLOW, 15K PSI S/N 4721 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82900.A | | MW-AREA 3 | VALVE, SUBSURFACE SAFETY,MFR.SCHLUMBERGER,PN:100400601,TYP SURFACE CONTROLLED,TUBING SZ 3-1/2 IN,WT 12.7 lb/ft, PRFILE 2.562 RPT,OD 5.708 IN,CONN TYPE VAM TOP BOX X PIN,WRKNG PRESS 15,000 PSI,MN: PINNACLE-15 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82901.A | | MW-R10-1 | SKOFLO CHEMICAL INJECTION METERING VALVE (CIMV), 4-WAY MALE BULKHEAD ELECTRICAL CONNECTOR, DUAL CORE, LOW FLOW/ LOW FLOW, 10K PSI S/N 1512 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82901.A | | MW-AREA 1 | SKOFLO CHEMICAL INJECTION METERING VALVE (CIMV), 4-WAY MALE BULKHEAD ELECTRICAL CONNECTOR, DUAL CORE, LOW FLOW/ LOW FLOW, 10K PSI S/N 1517 | AFE FW193006 | GENOVESA | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82902.A | | MW-R14-1 | MANIFOLD PRESSURE CAP, MFR. SEAHORSE ENERGY, INC., P/N 190001017 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82903.A | | MW-R14-1 | MCPAC CLAMP SPACER | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82904.A | | MW-R11-FL | RCPTCL,MFR.SKOFLO,PN:100230,TYP DUAL CORE | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82905.A | | BW-NEP-AREA | TABLE LIFT; MOBILE HEAVY DUTY SCISSOR 40" X 20", MFR: GLOBAL INDUSTRIAL, MN: WR3988933, 2200 LB. CAPACITY | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82906.A | | MW-R14-1 | M1 LONG TERM PROTECTIVE COVER 14-WAY, 14-PRVC ASSEMBLY P/N 0442364 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82907.A | | MW-R13-3 | ELECTRICAL FLYING LEAD, ODI 90 DEG, 7 WAY MALE X 4 WAY FEMALE, 60M  PN: P/N 00-71349-01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82908.A | | MW-R13-2 | MACPAC CLAMP, MFR. SEAHORSE ENERGY, INC, P/N: S-190001317  S/N: SSN-190002075 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82909.A | | MW-R13-2 | MACPAC DEBRIS CAP P/N 2035504-02 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82910.A | | MW-R12-2 | CROSBY M652 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82911.A | | MW-AREA 6 | MACPAC TOOL P/N 2098861-02 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82912.A | | MW-R17-2 | MQC PLATE ASSY. 12-WAY TEST P/N 10062543 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82913.A | | MW-R8-3 | TOP MARINE GROWTH COVER PLATE P/N A08216 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82914.A | | MW-R8-3 | M1 FIXED PLATE COVER BODY P/N 0296994 | AFE FW193006 | GENOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82915.A | | OS-R3-S2 | PRESSURE INTENSIFIER, MFR. BIFOLD MARSHALSEA, P/N: P173-01751-02-09-11-SS-NIT-0420 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82916.A | | BW-NEP-AREA | NEPTUNE AC REPAIR KIT | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82917.A | | MW-AREA 5 | EXPANSION JOINT (OUTSIDE); EXHAUST, MFR. SOLAR TURBINE, 701/702 | | BULLWINKLE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82918.A | | MW-AREA 5 | BUTTERFLY VALVE; EXHAUST, MFR. SHAN-ROO, INC., MODEL NO. 2220-6, SIZE: 36", 701/702 WHRU | | BULLWINKLE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82919.A | | MR-4-B | 7W ROV FXD TEST PLUG W/PGT, MFR. TELEDYNE, PN: 1001606 | AFE FW193007 | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82920.A | | MR-5-B | 7W ROV BUKHD TEST RCPT W/3M PGTS, MFR. TELEDYNE, PN: 1001611 | AFE FW193007 | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82921.A | | OS-R1-S1 | COVER,MFR. TELEDYNE ODI, TYP 4 WAY ELECTRICAL LTPC ODI/NAUTILUS ELECTRICAL LONG TERM PROTECTIVE,SPCL FEATRS RECEPTACLE COMPENSATED W/LOOPS 1-2 AND 3-4 | | TROIKA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82922.A | | MR-3-F | 7 WAY,MFR. TELEDYNE ODI,  ROV RETRIEVABLE SHORTING PLUG PINS, LOOPED 1-2, 4-5 | AFE FW193007 | TROIKA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82923.A | | MW-R2-2 | FLYING LEAD, MFR. OCEANEERING, PN: 197940-05021B5, ELECTRICAL, LG 61 m,  7-WAY PLUG, 90 DEG. W/ 7-WAY RECEPT., 90 DEG. | AFE FW193007 | TROIKA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82924.A | | MW-R16-2 | M1 REMOVABLE T&F PLATE, 14-WAY, 14-LINE, MFR. OCEANEERING, P/N: 0440489 | AFE FW193006 | GENOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82925.A | | MW-R16-2 | M1 REMOVABLE T&F PLATE, 14-WAY, 14-LINE, MFR. OCEANEERING, P/N: 0502187 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82926.A | | MR-2-C | 8" PRODUCTION GASKET, TEX 7-625. MFR: TRENDSETTER, PN: A1007618 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82926.B | | MR-2-C | 8" PRODUCTION GASKET, TEX 7-625. MFR: TRENDSETTER, PN: A1007618 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82927.A | | BW-NEP-AREA | HEATER, WATER, ELECTRIC;MFR:RHEEM,PN: 82SV30-2 ,TYP SHORT,VOL CPCTY 30 gal, VOLT 240,WATT 4500 W | | NEPTUNE | | | | 1 | | 696.79 | 696.79 | | |
| Deepwater Warehouse | Fieldwood | 82928.A | | N/A | GENERIC ASSY ADD SINGLE W/ HARNESS 35m, ELECTRICAL INTERFACE: FIXED WIRING HARNESS WITH FLYING ROV CONNECTOR, 12-WAY MALE, HOSE LENGTH: 35m, MFR. ONESUBSEA, P/N 223367-78 | | | | | | 0 | | 41702 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82928.A | | DWW-YARD C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | GENERIC ASSY ADD SINGLE W/ HARNESS 35m, ELECTRICAL INTERFACE: FIXED WIRING HARNESS WITH FLYING ROV CONNECTOR, 12-WAY MALE, HOSE LENGTH: 35m, MFR. ONESUBSEA, P/N 223367-78 | | | | | | 2 | | 41702 | 83404 | | |
| Deepwater Warehouse | Fieldwood | 82930.B | | BW-R2-3 | PUMP ASSEMBLY; METHANOL, EAGLE MODEL V200, 2 X 1.5-10 SS. SN: V1532035 PUMP, TRIM 6.7, MOTOR: MFR. SIEMENS TYPE XP100, PN: 1MB2121AA213N63 SN: 3005775094-11, 10 HP, 3515 RPM, 575V | | BULLWINKLE | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82931.B | | DWW-YARD | FRAME; UTA RECOVERY, MFR. OCEANEERING, DWG NO. 801069512 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82932.B | | DWW-YARD | TREE RUNNING TOOL, P/N 2124119-01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82933.B | | DWW-YARD | TREE CAP SHIPPING SKID, ASSY, P/N: 2124123-01 SN: 96716759220 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82934.B | | DWW-YARD | TREE CAP ASSY, BP TROIKA; P/N 2124118-01 SN: 11203640-01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82935.B | | CR TIER 1 | SLEEVE; HOLD OPEN, 3.720 O.D. on NO GO COLLAR, 3.650 BASE O.D., LENGTH 124 IN. MFR. SCHLUMBERGER, PN: 10332045, SN: 478973-001 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82936.B | | MW-R5-FL | CROSSOVER SPOOL ADAPTOR, MFR. CAMERON, PN: A314567 SN: CSD-3804743-1 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82937.A | | MW-R13-FL/MW-R13-3 | G2 Tubing Hanger Sin 10K with W/S inside outlet 5.250 inelmar wireline line plug prep S/N 111371753-1 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82938.A | | MW-AREA 6 | Internal Tree Cap 10M with 4.767 SSR G2Spool Tree System S/N 11076301-1 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82939.A | | MW-AREA 6 | Production Tubbing Hanger 4in 10K 4.38 in SSR S/N 11075743-1 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82940.A | | MW-AREA 6 | Solar Turbine Expansion Joint S/N | | BULLWINKLE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82942.A | | MW-R6-1 | Subsea SLAB gate valve 2 1/16 API 10000, MFR. ATV | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82943.A | | MW-R6-2 | 6" X 6" Cushion elbow ( FFI-FGSPL-00908) | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82944.A | | MW-R5-2 | 5" Weld test ring 12' long A694F65 (FFI-FGSPL-00910) | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82945.A | | MW-R5-2 | 6" Weld test ring 12' long A694F65 (FFI-FGSPL-00909) | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82946.A | | MW-R6-2 | 6" X 8" Reducer | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82947.A | | MW-AREA 5 | TC2 Gen 2 LTPC Connector, Bore Access 15 KSI PSI-3G S/N TSN902627 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82948.A | | MW-AREA 5 | TC2 Inboard Hub W/2" 10K API flang 8X-152 FF rim S/N TSN902630 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82949.A | | MW-AREA 5 | TC7/5  inboard assembly S/N TSN902704 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82950.A | | MW-AREA 5 | TC7/5 inboard assembly S/N TSN902705 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82951.A | | MW-AREA 5 | TEK-5 short term pressure cap assembly S/N TSN902900 and TSN902901 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82952.A | | MW-AREA 6 | TC7/5 connector assembly 6" nom F65 PUP 15K EE S/N TSN902741 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82953.A | | MW-AREA 6 | TC7/5 connector assembly 6" nom F65 PUP 15K EE S/N TSN902743 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82954.A | | MW-AREA 5 | Manual gate valve 5 1/8" 10K W/Pups S/N VN10385 | | | | | | 1 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 82955.A | | MW-AREA 7 | Manual gate valve S 1/8" 10K W/Pups S/N VN10386 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82956.A | | MW-AREA 5 | (3) Gasket assembly TEX-5 Inconel 625, Silver coated S/N TSN902780,TSN902781, TSN902782. (1) Gasket assembly TEX-7 Nickel Alloy, Silver coated S/N TSN902451 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82957.A | | MW-AREA 5 | (1) Gaskets assembly TEX-2 nickel alloy 625 (Silver Coated) S/N TSN902285, TSN902286, TSN902353 (6) BX-156 Gaskets 7 1/16, (1) Weld neck flange 7 1/16, (32) Studs | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82958.A | | DWW-YARD C-VAN CPHJ 0301120 | ASSEMBLY; FLOODING CAP, 8"-10K FLOWLINE HUB, 7.077 SEAL BORE, W/ 2X O-RINGS PLUG, 2" N8 X 1.5" PORT, 10K BALL VALVE; (QP-000803-08-11) MFR. CAMERON, P/N2235684-03, S/N110746028-1 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82959.A | | MW-AREA 5 | Weld test ring ATV valve S/N 83406 and 83407 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82960.A | | MW-AREA 1 | ASSEMBLY, 8"-15K CVC CONNECTOR, 6.47 ID GASKET, 8.625 OD X 1.312 WALL (6.00 ID), W/ ALIGNMENT BLOCK, 3/8" AUTOCLAVE PORT; (F22 BODY W/ INCONEL 625 INLAID GASKET PREP, 30" LG 4130 CUSTOMER SUPPLIED PIPE); (QP-000162-02-60); (SP-005098-01); T/C U; M/C AA, BB, DD, EE; PSL-3; WOP 12, 500 PSI, MFR. CAMERON, P/N 2181526-12-02, S/N 112254875-01 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82961.B | | MW-RS-1 | TOOL; SCRUBBER, PN: 190001313, S/N: 19001432, MFR. SEAHORSE ENERGY | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82962.A | | MW-R11-1 | CHEMICAL INJECTION METERING VALVE (CIMV), DUAL CORE, LOW FLOW, 15K PSI. MFR: SKOFLO, SN: 4668 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82963.A | | MW-AREA 7 | TC7/S inboard assembly LG PuP, 15K EE S/N TSN902702, TSN902703 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82964.A | | MW-AREA 6 | SLAB Gate Valve 15KSI Hyd. act, Pipe Pups, EE Trim S/N  VN10396 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82965.A | | MW-AREA 7 | TEX-5 short term pressure cap assembly S/N TSN902912 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82966.A | | MW-AREA 7 | SLAB Gate Valve 15KSI Manual act, Pipe Pups, EE Trim S/N  VN9997 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82967.A | | MW-AREA 7 | ( 1 ) Weld neck flange 5 1/8" 15K API 6A BX-169, EE tri ( 6 ) gasket  BX-169 S 1/8" H/N 343 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82968.A | | MW-AREA 7 | ( 3 ) Gasket Assembly TEX-5 Inconel 625 Silver Coated S/N TSN902769, TSN902770, TSN902772 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82969.A | | DWW-YARD | HATCH COVER FRAMES | | BULLWINKLE | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82970.A | | BW-AREA-3 | (1) CRATE ASSORTED NUTS AND BOLTS | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82971.A | | MR-S-E | ROV TEST CONNECTOR, EL. FEMALE, FIXED, 7-WAY W/ 5M CABLE, RATED 2500V, MATERIAL: PVC, ONLY FOR SURFACE USE, VENDOR: TELEDYNE ODI, VENDOR PN: 1047681 (CTD-1839-01-7-S) MFR. ONESUBSEA, PN: 2197088-10-77 | | | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82972.A | | MR-GENERAL | ROV TEST CONNECTOR, MALE, 7-WAY W/ 5M CABLE, RATED 2500V, MATERIAL: PVC, ONLY FOR SURFACE USE, VENDOR: TELEDYNE ODI, VENDOR PN: 1047684 (CTD-1840-01-7-S) MFR. ONESUBSEA, PN: 2197088-17-72 | | | | | | 5 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82973.A | | MW-R17-1 | M1 REMOVABLE LONG TERM COVER 14 WAY, 3X 1 IN RS PRVC & 11X 1/2 IN RS PRVC ASSEMBLY, MFR: OCEANEERING, PN: 223520-73 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82974.A | | MW-R15-1 | M1 REMOVABLE T&F PLATE 14 WAY, 11X 1/2 IN RS AND 3X 1 IN RS LINES MAD DOG 2 ASSEMBLY, MFR: OCEANEERING, PN: 0485058 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82975.A | | MW-R17-1 | M1 FIXED T&F PLATE 14 WAY, 14X 1/2 IN RS LINES ASSEMBLY, MFR: OCEANEERING, PN: 0502186 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82976.A | | MW-R17-1 | M1 FIXED T&F PLATE 10 WAY, 6X 1/2 IN RS AND 4X 1 IN RS LINES ASSEMBLY, MFR: OCEANEERING, PN: 0502188 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82977.A | | MW-R17-1 | M1 LONG TERM COVER 10 WAY 6X 1/2 IN RS PRVC, 4X 1 IN RS PRVC 15KSI ASSEMBLY, MFR: OCEANEERING, PN: 223510-24 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82978.A | | CR-TIER 3 | FIXED SPREADER BAR 20,000 LB., MFR: SOUTHWEST WIRE ROPE, PN: SB-0010-0080 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82979.A | | MW-R11-3 | ELECTRICAL FLYING LEAD, 12 WAY PLUG X 12 WAY RECP (175 FT. LENGTH), MFR: TTL SUBSEA, PN: 00-71621-01 | | | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82980.A | | MW-R16-3 | M1 REMOVABLE LONG TERM COVER 13 WAY IN RS PRVC ASSEMBLY, MFR: OCEANEERING, PN: 0503228 REV. A | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82981.A | | MW-AREA 6 | G3 TUBING HANGER CONVERSION ASSEMBLY, 4 INNOM BORE, 5 1/8 IN SIDE OUTLET, 10K, 4.375 IN WIRELINE PLUG PREP, 5 1/2 IN VAM ACE 29.7 LB/FT CONNECTION, 8 DOWNHOLE LINES, MFR: ONESUBSEA, PN: 2180717-48 | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82982.A | | MW-R2-1 | ELECTRICAL FLYING LEAD, 9 WAY ODI ROV PLUG X 9 WAY ODI ROV RECEPTACLE, 275', MFR: OIE, PN: 0206246 | | | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82983.A | | MW-R2-1 | (KIT WITH 4 ITEMS) ITEM 1: DUAL REDUNDANT SSI PRESSURE/TEMPERATURE TRANSMITTER, MODBUS (RS 485), 0-10KSI, -40° TO 260°F, 1.5" PROBE, 2-1/16" BX FLANGE, 8 WAY SEACON MS5 FCR DRY-MATE CONNECTION (FULL SCALE FAT, INCLUDING 10 POINT HYDROSTATIC FUNCTIONAL TEST, TEMPERATURE VERIFICATION). ITEM 2: 1012992, 6 WAY ODI ROV CE PLUG (PINS) WITH OMNITEC. ITEM 3: 8168-103 KIT, 8 WAY SEACON MMSK CCP, PBOF 1/2 ID. ITEM 4: MKII BACKSHELL/ADAPTER. | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82984.A | | MW-R13-FL | AKER 12 WAY (NEW STYLE) REMOVABLE JUNCTION PLATE BRACKET WITH QTY 1 - 17H DUAL PORT HOT STAB RECEPTACLE (15KSI) AND QTY 2 - 1/2" ROV PADDLE VALVES (10KSI) (WITH TUBING AND INSTALLATION HARDWARE) | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82985.A | | MW-AREA 6 | HEAT EXCHANGER TUBE BUNDLE | | BULLWINKLE | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82985.C | | MW-AREA 6 | HEAT EXCHANGER TUBE BUNDLE (HBG 101) | | BULLWINKLE | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82987.A | | MW-AREA 1 | WIRELINE PLUG ASSEMBLY, UPPER, 4.767" NOM, 10K, NICKEL ALLOY 718 (UNS N07718) (NON-LOAD BEARING), RETAINING CAP AND FISH NECK, MAIN BODY AND KEYS, NICKEL ALLOY 925 (UNS N09925) EXPANDER MANDREL, PRIMARY TITANIUM METAL SEAL, SECONDARY O-RING, H2S SERVICE, WITHOUT EXTENSION SLEEVE, API 6A 20TH ED, API 17D 2ND ED, T/C U, M/C HH, PSL3 (NOV ELMAR REF L-9911018124). MFR: ONESUBSEA, PN: 2731384-02-01 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82988.A | | MR-GENERAL | WIRELINE PLUG, 4.375" DIA. WITH SPECIAL REQUIREMENTS TO INCLUDE INCONEL 718 BODY AND CHEMRAZ O-RING 17-4 PH RETAINING CAP, INCONEL 925 EXPANDER MANDREL, TITANIUM SEAL W/ NOBLE COATING, ELASTOMER/POLYMERIC SEALS, W/ EROSION TARGET AND WIPER, USES SPARE PARTS LIST 2166241-01. MFR: ONESUBSEA, PN: 2748428-01 | | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82989.A | | MW-R8-3 | SEAL ASSY, METAL SEAL W/ ELASTOMER BACKUP, 18 3/4", MATL CLASS DD-NL, PSL-3, TEMP CLASS U, ALTERNATE TEMP RANGE 35-300F, API 17D, SUBSEA WELLHEAD SYSTEM. MFR: ONESUBSEA, PN: 2018116-01 | | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82990.A | | MW-R8-3 | EMERGENCY SEAL ASSY, METAL SEAL W/ ELASTOMER BACKUP, 18 3/4", MATL CLASS DD-NL, PSL-3, TEMP RATING 0-350F, SUBSEA WELLHEAD SYSTEM, API 17D, 1ST ED ONLY. MFR: ONESUBSEA, PN: 2018117-01 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 82991.A | | MW-AREA 1 | ASSY, TUBING HANGER RUNNING TOOL, 4 1/16" X 2 1/16", NOM 10K PSI, WPW/2X SCS5V, 2X CI, 1X TH CONTROLLED LANDING, 1X TEST BETWEEN SEALS, 1X ELEC PEN, PSL 3, MATL CLASS EE, API 17D, TEMP 35-250F. MFR: ONESUBSEA, PN: 2124129-01 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 82992.A | | MW-AREA 1 | ASSY, THRT HANDLING/TEST TOOL, 4.06" X 2.06" 10000 PSI. MFR: ONESUBSEA, PN: 2124132-01 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82993.A | | MW-AREA 1 | COMBINED BOP WEIGHT SET TEST AND BORE PROTECTOR RETRIEVAL TOOL. MFR: ONESUBSEA, PN: 2142424-06 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82994.A | | MW-AREA 5 | ASSEMBLY, 7 1/16, 15K, TYPE FLS-R MANUAL SUBSEA GV, WITH TRANSITION PUPS AND ACCUMULATOR. MFR: ONESUBSEA, PN: 2230777-06-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82995.A | | MW-AREA 5 | SLING, 3" X 20', 1 LEG. MFR: MORGAN CITY RENTALS, PN ON TAG: V-77T C-601 B-1537/HOU-057234-002 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82996.A | | MR-2-C | LOOPING CAP, TELEDYNE ODI, 7 WAY. MFR: ONESUBSEA, PN: 2197088-28-44 REV 3 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82997.A | | MW-AREA 1 | DEBRIS CAP WITH ROV HANDLE (YELLOW IN COLOR). MFR: SUBSEA7/NEW INDUSTRIES | AFE FW183040 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82998.A | | MW-AREA 1 | 8" SUBSEA PLR (PIGGING-LANCHER-RECEIVER), PIG RETAINER 5K T/S 8" SCH XXS PIPE W/ 30 DIA. PIN & 1/4D ENGAGEMENT. MFR: SUBSEA7/NEW INDUSTRIES, PN: 230-1521-01 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 82999.A | | MW-AREA 1 | 2" MOFFATT DUEL ENTRY HOT STAB WITH 1502 THREADED FEMALE CONNECTION, OS MALE STAB, 2", SUPER DUPLEX, FIG. 1502 FEMALE INTEGRAL, DRAWING # MSP-2DC411H-01, 2" 15K SS/DS MALE STAB BODY C/W FIG 1502 FEMALE SUB. MFR: SUBSEA7/ONESUBSEA | AFE FW183040 | KATMAI | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83000.A | | MW-AREA 1 | 2" MOFFATT DUEL ENTRY BLIND STAB WITH 1502 THREADED FEMALE CONNECTION, 2" NB 15K DS BLIND STAB BODY, DRAWING # MSP-2DBX11H-01. MFR: SUBSEA7/ONESUBSEA, PN: MSP 0459-B | AFE FW183040 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83001.A | | MW-AREA 1 | CHECK VALVE ASSEMBLIES WITH 1502 WING NUT MALE CONNECTION, DRAWING # TC1099-440001902S-B01-0002, BIS CHECK VALVE # 20056-P049. MFR: SUBSEA7/ONESUBSEA | AFE FW183040 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83002.A | | MR-S-D | SEAL KIT FOR MOFFATT STABS. MFR: SUBSEA7/ONESUBSEA | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83003.A | | BW-AREA 2 | CITV SIMULATOR. MFR: SKOFLO, PN: CM-015000-91 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83004.A | | MW-R17-FL | M1 REMOVABLE FLUSHING PLATE WITH HOTSTAB ASSEMBLY. MFR: OCEANEERING, PN: 0508203 REV A | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83005.A | | MR-4-B | FEMALE DUMMY COUPLERS, 1/2" RS-8 | AFE FW183040 | KATMAI | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83006.A | | MR-S-B | MALE POPPETED TEST COUPLERS, 1/2" RS-8 | AFE FW183040 | KATMAI | | | | 14 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83007.A | | MR-S-B | FEMALE POPPETED COUPLERS W/ TUBE STUB, 1/2" UO-8 | AFE FW183040 | KATMAI | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83008.A | | MW-R11-2 | VBR (VERTEBRAE BEND RESTRICTORS) ASSEMBLY SET. MFR: WHITEFIELD PLASTICS | AFE FW183040 | KATMAI | | | | 35 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83009.A | | MW-AREA 4 | M1 REMOVABLE LOGIC CAP 14 WAY 7X 1/2 IN RS, 3X 1 IN RS LINES ASSEMBLY. MFR: OCEANEERING, PN: 0508202 REV A | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83010.A | | MR-1-A | HOT STAB. MFR: OCEANEERING, PN: A06401-G | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83011.A | | MR-1-A | HOT STAB. MFR: SEANIC, PN: HS165-1100619 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83012.A | | MR-1-E | NITRILE O-RING, 70 DURO. MFR: BUNA-N, PN: 318 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83013.A | | MR-1-A | HOT STAB. MFR: UNKNOWN, PN: 10306 (ETCHED INTO PARTS) | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83014.A | | MR-GENERAL | GASKET RETAINER F/ FLOWLINE AX GASKETS, OBSOLETE AND REPLACED BY P1000162986. MFR: FMC INDUSTRIES, PN: 18-259-020 | | | | | | 7 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83015.A | | MR-GENERAL | FITTING, GREASE, NIPPLE STRAIGHT 1/4 IN NPTF MALE, SUPPLIED BY ALEMITE, PN: 1627-B, TRIVALENT ZINC PLATED. MFR: FMC INDUSTRIES, PN: 48-120-004 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83016.A | | MR-S-E | ROV HOT STAB, TYPE A, SHORT TERM LIVE (INTERVENTION AND COMMISSIONING), NITRONIC, DUAL PORT, 15KSI (1035 BAR) MAX WP, T BAR HANDLE, 3/8 MP PORTS AT 45 DEG, SUPPLIED BY OCEANEERING 0036241-01 REV. C, OBSOLETE AND REPLACED WITH P1000178823. MFR: FMC INDUSTRIES, PN: P1000038613 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83017.A | | MR-GENERAL | FITTING, AIR QUICK CONNECT, CROWSFOOT, 3-WAY TRIPLE END COUPLER, MALLEABLE IRON, PLATED, OEM SPARE PART. MFR: FMC INDUSTRIES, PN: P1000008374 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83018.A | | MR-GENERAL | RUBBER WASHER, STANDARD CROWSFOOT COUPLER/COUPLING, BAG OF 50, OEM SPARE PART. MFR: FMC INDUSTRIES, PN: 1000010263 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83019.A | | MR-GENERAL | M1 MARINE GROWTH COVER 10 WAY 6X 1/2" PLASTIC DUMMY, 4X 1" PLASTIC DUMMY. MFR: OCEANEERING, PN: 0413628 | AFE FW193007 | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83020.A | | MR-4-E | TREE RUNNING TOOL, PRODUCTION SEAL STAB, 4X 2-10K F/4 OD, ASSY, MENSA X OVER ADAPTER TOP, CAMERON/TROIKA TRT BTM. MFR: FMC INDUSTRIES, PN: P1000014614 | | | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83021.A | | MR-FL | UWD SLOPE INDICATOR BRACKET, F/ BOLT ON SLOPE INDICATOR WITH ADJUSTMENT SCREWS, OBSOLETE AND REPLACED BY P2000060501 PHASE OUT. MFR: FMC INDUSTRIES, PN: P1000065171 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83022.A | | MW-AREA 6 | PUMP AIR OPERATED, NITROGEN GAS BOOSTER, DOUBLE ACTING, DOUBLE AIR HEAD; 25 TO 1 RATIO, 25 KSIG MAX OUTPUT, 6000 PSIG MAX INPUT, 250 PSIG MIN GAS INLET, 90-150 PSIG AIR DRIVE PRESS, 95 SCFM MAX AIRFLOW, 2.4 CU INCH STROKE SC HYDRAULIC ENGINEERING - GBD-D75. MFR: FMC INDUSTRIES, PN: P1000068557 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83023.A | | MR-GENERAL | FITTING, HYDRAULIC, CAP BODY 3/8 IN JIC FEM 20K, SUPPLIED BY AUTOCLAVE, PN: 20JC6, 316SS. MFR: FMC INDUSTRIES, PN: P1000075352 | | | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83024.A | | MR-GENERAL | CAP SCREW, HEX SOCKET DRIVE, .375-16 UNRC-2A/3A X 3.00 LG, A 320 GR L7M, EXP LOW STR, API 20E BSL2, PTFE. MFR: FMC INDUSTRIES, PN: P1000091781 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83025.A | | MR-4-E | TREE RUNNING TOOL, ANNULUS SEAL STAB, 4X 2-10K F/2 OD, ASSY, MENSA X OVER ADAPTER TOP, CAMERON/TROIKA TRT BTM. MFR: FMC INDUSTRIES, PN: P1000014615 | | | | | | 7 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83026.A | | MR-GENERAL | S SEAL OD TYPE 2.827 OD X .158 CS X .270. MFR: FMC INDUSTRIES, PN: P101811 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83027.A | | MR-4-D | 4" DRIFT, 3.910 OD X 12" LONG. MFR: FMC INDUSTRIES, PN: P114747 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83028.A | | MR-4-D | 2" DRIFT, 1.850 OD X 12" LONG. MFR: FMC INDUSTRIES, PN: P114748 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83029.A | | MR-4-D | METAL SEAL, SBMS BODY, F/13 5/8-10K SPEEDLOC CLAMP, INCONEL 718, SILVER PLATED, 2.595 OD X 2.071 ID, 3.620 LG WITH S SEAL GROOVES, 15K PSI MAX. MFR: FMC INDUSTRIES, PN: P125494-0007 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83030.A | | MR-4-E | METAL SEAL, SBMS ASSY, F/13 5/8-10K SPEEDLOC CLAMP, INCONEL 718, SILVER PLATED, 5.680 OD X 5.140 ID, 5.40 LG WITH 2 S SEALS. MFR: FMC INDUSTRIES, PN: P125495-0007 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83031.A | | MR-4-D | METAL SEAL, SBMS ASSY, F/13 5/8-10K SPEEDLOC CLAMP, INCONEL 718, SILVER PLATED, 2.595 OD X 2.071 ID, 3.620 LG, WITH 2 S SEALS. MFR: FMC INDUSTRIES, PN: P125497-0007 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83032.A | | MR-GENERAL | NON-METALLIC SEAL, POLYPAK ASSY, TYPE B STYLE, 0.375 CS X 0.625 LG X 36.000 ID, ES0105 GEOLAST MATL F/ JACKET, ES0106 NBR MATL F/O-SPRING. MFR: FMC INDUSTRIES, PN: P129198-0003 | | | | | | 1 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83033.A | | MR-GENERAL | GREASE FITTING, 1/8" N.P.T., 90 DEGREE. MFR: FMC INDUSTRIES, PN: P133318-0014 | | | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83034.A | | MR-S-F | SLOPE INDICATOR, 2 DEGREE 13.78 DIA. MFR: FMC INDUSTRIES, PN: P134576-0000 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83035.A | | MR-GENERAL | HYDRAULIC FITTINGS, ADAPTER, STRAIGHT 9/16 MP (13/16-16THD) MALE X 3/8MP (9/16-18THD) MALE, 20, 000WP. MFG: PARKER (PN: Y5YS-6-9C). MFR: FMC INDUSTRIES, PN: P145788 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83036.A | | MR-GENERAL | S-SEAL, OD TYPE, 3.205/3.145 OD X 0.234 CS X .375 LG, ES0189 90A DURO LOW TEMP HNBR MATL, W/316 SS SPRINGS, 0.6 DIA COIL. MFR: FMC INDUSTRIES, PN: SP-48-14527 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83037.A | | MR-3-D | O-RING, HIGH TMP HNBR. MFR: ONESUBSEA, PN: KB163 2-216 | | | | | | 23 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83038.A | | MR-3-D | O-RING, NITRILE, 1 1/8 X 1 3/8 X 1/8. MFR: ONESUBSEA, PN: N0300 8-216 | | | | | | 21 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83039.A | | MR-3-D | O-RING, NITRILE, 2 1/2 X 2 3/4. MFR: ONESUBSEA, PN: N0300 8-230 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83040.A | | MR-3-D | O-RING, S68-453 N1059-90 PX NBR. MFR: ONESUBSEA, PN: 702645-45-31 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83041.A | | MR-3-D | O-RING, NITRILE, 4 7/8 X 5 1/8 X 1/8. MFR: ONESUBSEA, PN: N0300 8-249 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83042.A | | MR-3-D | O-RING, PEROX NITRILE, 13/16 X 1 X 3/32. MFR: ONESUBSEA, PN: 702645-11-71 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83042.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | O-RING, PEROX NITRILE, 13/16 X 1 X 3/32. MFR: ONESUBSEA, PN: 702645-11-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83042.A | | TRAINING ROOM 1 | O-RING, PEROX NITRILE, 13/16 X 1 X 3/32. MFR: ONESUBSEA, PN: 702645-11-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83043.A | | MR-3-D | SEAL TYPE S, 1-3/8" OD. MFR: ONESUBSEA, PN: 142895-55-01-03 | | | | | | 13 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83044.A | | MR-3-D | S SEAL NOM S-1/2. MFR: ONESUBSEA, PN: 142895-18-01-03 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83045.A | | MR-1-C | O-RING, SIZE AS-568-427 4.725 ID X .275 W 90D/MS-1078 NITRILE PKG AND QUAL/COT 702645. MFR: ONESUBSEA, PN: 702645-42-71 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83046.A | | MR-1-C | O-RING, SIZE AS-568-458 14.475 ID X .275 W 90D/MS-1078 NITRILE PKG AND QUAL/CIW 702645. MFR: ONESUBSEA, PN: 702645-45-81 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83046.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-458 14.475 ID X .275 W 90D/MS-1078 NITRILE PKG AND QUAL/CIW 702645. MFR: ONESUBSEA, PN: 702645-45-81 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83047.A | | MR-1-C | DOWEL PIN, .436/.432 OD X 1.750 LG, TYPE "V", LAS (REF. ASTM A193, B7). MFR: ONESUBSEA, PN: 021812-94 | | | | | | 18 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83048.A | | MR-1-C | SCREW, SOC HD CAP .375-16 X .750 STL/A193 GR B7/ANSI B18.3ZN PL/X-4024-4. MFR: ONESUBSEA, PN: 2716050 | | | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83049.A | | MR-1-C | SPRING, CPRSN .063 X .480 OD X 1.250 SST. MFR: ONESUBSEA, PN: 712406 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83050.A | | MR-1-C | SEAL RING, 3.00 ID X 4.00 OD X .750 LG, POLYPAK SEAL MOLYTHANE, TYPE BMFG PN: 461550003000-750B. MFR: ONESUBSEA, PN: 274957A-01 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83051.A | | MR-1-C | SPRING, COMPRESSION, .360 OD X .045 X .500 CL & GR ENDS, SST, RATE 65 LB/IN. MFR: ONESUBSEA, PN: 2748122-01 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83051.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | SPRING, COMPRESSION, .360 OD X .045 X .500 CL & GR ENDS, SST, RATE 65 LB/IN. MFR: ONESUBSEA, PN: 2748122-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83052.A | | MR-1-C | O-RING, SIZE AS-568-427 4.725 ID X .275 W 90D/MS-1004 NITRILE PKG AND QUAL/CIW 702640. MFR:ONESUBSEA, PN: 702640-42-71 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83053.A | | MR-1-C | SHEAR PIN SLEEVE, ACUTATOR RING, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2156903-01 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83053.A | | TRAINING ROOM 1 | SHEAR PIN SLEEVE, ACUTATOR RING, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2156903-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83054.A | | MR-1-C | SHEAR PIN, ACTUATOR RING, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2156904-01 | | | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83055.A | | MR-1-C | SCREW, SOC HD CAP .375-16 X 1.750 SST 316/A193 ANSI B18.3. MFR: ONESUBSEA, PN: 702505-06-00-16 | | | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83056.A | | MR-1-C | GROOVED PIN, TYPE A .375 D X 1.00 BRASS ANSI B5.209,050 LBS DOUBLE SHEAR VALUE (MIN). MFR: ONESUBSEA, PN: 711364 | | | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83057.A | | MR-1-C | SCREW, SHOULDER, .75 OD, SPECIAL. MFR: ONESUBSEA, PN: 2124841-01 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83058.A | | MR-1-C | PIPE PLUG, HEX HEAD, 1/4" - 18 NPT, XYLAN COATED. MFR: ONESUBSEA, PN: 278183-01 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83059.A | | MR-1-C | O-RING, SIZE AS-568-521 16.450 ID X .210 W 90D/MS-1078 NITRILE PKG AND QUAL/CC 702645. MFR:ONESUBSEA, PN: 702645-52-11 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83060.A | | MR-1-C | RETAINER RING, SPLIT, 2.285 ID X .128 DIA, ALIGNMENT PIN. MFR: ONESUBSEA, PN: 2099585-01 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83061.A | | MR-1-C | SCREW, SOC FLAT HD .375-16 X .750 SST B18.3. MFR: ONESUBSEA, PN: 702580-06-00-12 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83062.A | | MR-1-C | SEAL RING, 18 5/8-15M SPECIAL FOR PETROBRAS. MFR: ONESUBSEA, PN: 605894-12 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83062.A | | TRAINING ROOM 1 | SEAL RING, 18 5/8-15M SPECIAL FOR PETROBRAS. MFR: ONESUBSEA, PN: 605894-12 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83063.A | | MR-1-C | METAL END CAP SEAL, 16.283 NOM. BORE, 25% NOM SQUEEZE, CAMLAST AND STAINLESS STEEL, API 6A 19TH ED, TEMP RATING: 35-275 DEG F, MATL CLASS: HH-15.0 (BASED ON R&D PN: 599514-04-05-01). MFR: ONESUBSEA, PN: 2289964-08 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83063.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 16.283 NOM. BORE, 25% NOM SQUEEZE, CAMLAST AND STAINLESS STEEL, API 6A 19TH ED, TEMP RATING: 35-275 DEG F, MATL CLASS: HH-15.0 (BASED ON R&D PN: 599514-04-05-01). MFR: ONESUBSEA, PN: 2289964-08 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83064.A | | MR-GENERAL | M1 MARINE GROWTH COVER 14 WAY, 14 X 1/2 RS. MFR: OCEANEERING, PN: 0321318 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83065.A | | MR-GENERAL | S-SEAL, OD TYPE, ES0189 HNBR MATL. MFR: FMC INDUSTRIES, PN: 48-500-146 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83066.A | | MR-S-E | HOT STAB, WP+HS, 10K PSI. MFR: OCEANEERING, PN: A0628D-F | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83067.A | | MR-GENERAL | S SEAL, OD TYPE, 2.827 OD X .158 CS X .270. MFR: FMC INDUSTRIES, PN: P101811 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83068.A | | MR-GENERAL | S SEAL, OD TYPE, 6.205/6.129 OD X 0.234 CS X .375 LG, ES0159 85A DURO HIGH TEMP HNBR (NORSOK COMPLIANT) MATL, W/ 316 SS SPRINGS, .06 DIA COIL, USE SAME MOLD AS PN DP-48-1389. MFR: FMC INDUSTRIES, PN: P107332-0007 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83069.A | | MR-GENERAL | S SEAL, OD TYPE, 5.215/5.185 OD X 0.234 CS X .375 LG, ES0159 85A DURO HIGH TEMP HNBR (NORSOK COMPLIANT) MATL, W/ 316 SS SPRINGS, .06 DIA COIL. MFR: FMC INDUSTRIES, PN: P107335-0007 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83070.A | | MR-GENERAL | S SEAL, OD TYPE, 2.889/2.898 OD X 0.234 CS X .375 LG, ES0159 85A DURO HIGH TEMP HNBR (NORSOK COMPLIANT) MATL, W/ 316 SS SPRINGS, .06 DIA COIL, USE SAME MOLD AS PN 48-500-035. MFR: FMC INDUSTRIES, PN: P178205 | | | | | | 4 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83071.A | | MR-GENERAL | S SEAL, OD TYPE, 3.205/3.145 OD X 0.234 CS X .375 LG, ES0189 90A DURO LOW HNBR MATL, W/ 316 SS SPRINGS, .06 COIL. MFR: FMC INDUSTRIES, PN: SP-48-14527 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83072.A | | MW-R3-2 | ACOUSTIC SAND DETECTOR WITH ODI CABLE, 6 WAY. MFR: CLAMPON, PN: 921-2120-003 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83073.A | | MW-R3-2 | CLAMP AND FUNNEL ASSEMBLY (WITH 4 HEX SCREWS/8 HEX NUTS). MFR: CLAMPON, 924-14122-001 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83074.A | | MR-1-C | O-RING NITRILE 90A, 3/4 X 1 X 1/8. MFR: CAMERON, PN: 702640-21-01 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83075.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-16 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83076.A | | MR-1-C | O-RING NITRILE 90A, 11 1/2 X 11 3/4. MFR: CAMERON, PN: 702645-27-71 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83076.A | | TRAINING ROOM 1 | O-RING NITRILE 90A, 11 1/2 X 11 3/4. MFR: CAMERON, PN: 702645-27-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83078.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-49 | | | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83079.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-22 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83080.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-31 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83081.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-51 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83082.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-02-30 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83083.A | | MR-1-C | ALLOY SOCKET HEAD CAP SCREW, 5/16-18 X 5/8. MFR: CAMERON, PN: 702503-04-00-05 | | | | | | 30 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83084.A | | MR-1-C | FACE SEAL AND SEAL RING INSERT ASSEMBLY. MFR: CAMERON, PN: 140146-03-01-03 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83085.A | | MR-1-C | FACE SEAL AND SEAL RING INSERT ASSEMBLY. MFR: CAMERON, PN: 140146-03-01-03 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83086.A | | MR-1-C | SINGLE LIP OIL SEAL - SOLID, 1.125" SHAFT, 1.561" OD, 0.256" WIDTH, CRW1 DESIGN. MFR: CHICAGO RAWHIDE, PN: 701156 | | | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83087.A | | MR-1-C | O RING, SIZE AS-568-333 2.475 ID X 210 W 90D /MS-1078 NITRILE. MFR: CAMERON, PN: 702645-33-31 OBSOLETE | | | | | | 13 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83088.A | | MR-1-C | BORE SEAL O-RINGS. MFR: SEAHORSE ENERGY, PN: S-190001496-NC | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83089.A | | MR-1-C | BACK UP NITRILE 90A. MFR: CAMERON, PN: 042000-03-80 | | | | | | 14 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83090.A | | MR-1-C | HEX SOCKET SET SCREW. MFR: CAMERON, PN: 2748045-01 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83090.A | | TRAINING ROOM 1 | HEX SOCKET SET SCREW. MFR: CAMERON, PN: 2748045-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 32 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83091.A | | MR-1-C | HEX HEAD CAP SCREW GR. 5 PLAIN. MFR: CAMERON, PN: 702500-04-00-14 | | | | | | 30 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83092.A | | MR-1-C | O RING NITRILE 90A, 2 5/8 X 2 7/8 X 1. MFR: CAMERON, PN: 702645-23-11 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83093.A | | MR-1-C | LOCKDOWN CHECK ASSEMBLY. PN: 2142055-01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83094.A | | MR-3-C | LTPC, 7 WAY, RECEPTACLE (SOCKET), TITANIUM. MFR: TELEDYNE, PN: 10125671 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83095.A | | MR-5-C | LTPC, 4 WAY DUMMY ROV COVER. MFR: TELEDYNE, PN: 10163041 | AFE FW193006 | GENOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83096.A | | MW-AREA 6 | ASSEMBLY, INTERNAL TREE CAP, 10K WP WITH MEC SEAL, 5.75 SSR PLUG PREP AND EXTENSION SLEEVE, G2 SPOOLTREE SYSTEM, MATERIAL CLASS EE-NL, PSL 3, TEMP CLASS O TO 350 DEG F. MFR: CAMERON, PN: 2055296-02-01, SN: 110407008 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83097.A | | MR-5-C | TEST PLUG, ROV FLYING TYPE, 7 WAY. MFR: TELEDYNE, PN: 10121121 | AFE FW193006 | GENOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83098.A | | MR-3-C | TEST CONNECTOR, 7 WAY PLUG LOOPED. MFR: TELEDYNE, PN: 10322678 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83099.A | | MR-3-C | TEST CONNECTOR, 7 WAY RECEPTACLE LOOPED. MFR: TELEDYNE, PN: 10322677 | AFE FW193006 | GENOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83100.A | | MW-R14-2 | PRESSURE CAP JACKING TOOL. MFR: OCEANEERING, PN: 990701111 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83101.A | | MW-R14-2 | D/A HOLL-O-CYLINDER, RRH 1003, 100 TON, D44 19000, 700 BAR, 10000 PSI. MFR: ENERPAC, PN: 990701100 | AFE FW193006 | GENOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83102.B | | DWW-YARD-C-VAN HJCU148137 2 | ASSEMBLY, PRESSURE CAP, 8"-15K CVC, 6.392 SEAL BORE, LIFTING FRAME WITH PMT RECEPTACLE, 1.38 THICK PADEYES AND (8) ANODES, ROV PANEL (S & O), 3/8"-15K AUTOCLAVE BALL VALVE, 3/8" 10K/15K SINGLE PORT HOT STAB RECEPTACLE AND 3/8"-20K AUTOCLAVE ADAPTERS, INCONEL 625 TUBING; PSL-3; DNV 2.7-3 COMPLIANT; WOP 15,000 PSI; TEST PRESSURE 22,500 PSI. MFR: ONESUBSEA, PN: 2395693-03 | AFE FW193006 | GENOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83103.A | | MR-1-E | DYE SPEC GREEN TRACER STICKS. MFR: JMN SPECIALTIES, PN: (BATCH) 181117 | AFE FW193007 | TROIKA | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83104.A | | DWW-YARD-C-VAN HJCU148137 2 | TEX 5 SHORT TERM PRESSURE CAP, 15000 PSI, 40°F-120°F. MFR: TRENDSETTER, PN: A1014720 | AFE FW193006 | GENOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83105.A | | MR-4-C | TEX 5 RING PRODUCTION GASKETS. MFR: TRENDSETTER, PN: A1006521 | AFE FW193006 | GENOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83105.B | | MR-2-D | TEX 5 RING PRODUCTION GASKETS. MFR: TRENDSETTER, PN: A1006521 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83106.A | | MR-3-C | 12 WAY FEMALE. MFR: TELEDYNE, PN: 1062177-550 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83107.A | | MW-AREA 1 | OII 90 DEGREE SFL TERMINATION FRAME, "COBRA HEAD". MFR: OCEANEERING, PN: 0432505 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83108.A | | MW-AREA 2 | RS-8 MALE COUPLERS. MFR: HUNTING ENERGY SERVICES, PN: RS-8-A-96-PK | AFE FW193006 | GENOVESA | | | | 11 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83109.A | | MW-AREA 2 | RS-8 FEMALE COUPLERS. MFR: HUNTING ENERGY SERVICES, PN: RS-8-B-100-PK-PK2-C510 | AFE FW193006 | GENOVESA | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83110.A | | MW-AREA 2 | MONO COUPLER TEST FIXTURE, 5000 PSI. MFR: TRENDSETTER, PN: A1014948 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83111.A | | MW-AREA 2 | MONO COUPLER CROWS FEET TORQUE ADAPTER. MFR: TRENDSETTER, PN: M1014981 | AFE FW193006 | GENOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83112.A | | MW-AREA 2 | BUTT-WELD ADAPTERS, 2507 SUPER DUPLEX. MFR: OCEAN EDGE, PN: FWE-1828-203 | AFE FW193006 | GENOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83113.A | | MW-AREA 2 | 39" STICK, 3/8" OD X .065" WT, 2507 SUPER DUPLEX TUBING - HT#: SS4168; LOT#: 0002006052 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83114.A | | MW-AREA 4 | M1 REMOVEABLE OB JUNCTION PLATE 14 WAY, M1 FIXED IB JUNCTION PLATE 14 WAY, INTERMEDIATE LOGIC CAP WELDMENT FRAME, 10K PSI (SPARE). MFR: OCEAN EDGE, PN: 1828-102 (INCOMPLETE) | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83114.A | | MW-AREA 4 | M1 REMOVEABLE OB JUNCTION PLATE 14 WAY, M1 FIXED IB JUNCTION PLATE 14 WAY, INTERMEDIATE LOGIC CAP WELDMENT FRAME, 10K PSI (SPARE). MFR: OCEAN EDGE, PN: 1828-102 (COMPLETE) | AFE FW193006 | GENOVESA | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83115.A | | DWW-YARD | TRANSPORTATION FRAME FOR PW VX SS TYPE F2. MFR: ONESUBSEA | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83116.A | | OS-R2-S2 | ASSY, 8"-15K S-AX GASKET, W/ 2 DOVETAIL O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: CAMERON, PN: 2181646-08 | AFE FW193006 | GENOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83116.A | | OS-R2-S2 | ASSY, 8"-15K S-AX GASKET, W/ 2 DOVETAIL O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: CAMERON, PN: 2181646-08 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83116.B | | OS-R2-S2 | ASSY, 8"-15K S-AX GASKET, W/ 2 DOVETAIL O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: CAMERON, PN: 2181646-08 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83117.A | | OS-R1-S1 | TEST BODY, 8"-15K S-AX TEST GASKET (6.417 ID), W/ 2X DOVETAIL O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: CAMERON, PN: 2274165-05 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83117.B | | OS-R1-S1 | TEST BODY, 8"-15K S-AX TEST GASKET (6.417 ID), W/ 2X DOVETAIL O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: CAMERON, PN: 2274165-05 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83118.A | | MW-R11-FL | RIGGING, 2 SHACKLES AND 1 MASTER LINK. MFR: CROSBY | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83119.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | 2" PRODUCTION GASKET, 15K, SMALL BORE CONNECTOR, -50-300 DEG. MFR: VANCO, PN: 2398316-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83119.A | | TRAINING ROOM 1 | 2" PRODUCTION GASKET, 15K, SMALL BORE CONNECTOR, -50-300 DEG. MFR: VANCO, PN: 2398316-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83120.A | | MR-1-E | 3" GASKET FOR API 6BX FLANGES. MFR: WOLAR, PN: BX 154 | AFE FW193006 | GENOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83121.A | | MR-2-E | 6" GREEN TEST GASKET, PTFE COATED, AISI 4140, STEEL. MFR: GRAYLOC, PN: 62 | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83122.A | | MR-1-E | BX 156 (IRON) GASKET. MFR: KLINGER | AFE FW193006 | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83123.A | | MR-2-B | KLINGER SENTRY IK 7 1/16", 15K (INCLUDES SLEEVES, WASHERS, BLIND PLUG), MATL: 316SS/THERMICA. MFR: KLINGER, PN: SERIS-193221019 | AFE FW183040 | KATMAI | | | | 0 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83124.A | | MW-R14-2 | PLATE MOUNTING, MATL: A572 GR. 50, EPOXY PAINTED YELLOW. MFR: OCEANEERING, PN: 0503308 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83125.A | | MW-R14-2 | HOLD BACK CLAMP (DEEPSEA TECHNOLOGIES). MFR: OCEANEERING, PN: 197940-CLAMP | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83126.A | | MW-R14-2 | LIFTING TOOL, GA AND LOM, PLATE BOTTOM AND TOP BOTH API 2H GRADE 50, BAR SUPPORT 1 1/4" BUN, 650MM LG, PLATE MOUNT. MFR: OCEANEERING, PN: 0503007 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83127.A | | MW-R6-2 | TOPSIDE TERMINATION ASSEMBLY, BOM ITEM 200. MFR: AKER SOLUTIONS, PN: 10317190 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83128.A | | MW-R9-2 | TOPSIDE TERMINATION GA AND LOM. MFR: OCEANEERING, PN: 0499240 | AFE FW193007 | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83129.A | | MW-AREA 1 | SFL PARKING POSTS ASSEMBLY. MFR: OCEANEERING, PN: 0440492 | AFE FW193006 | GENOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83130.A | | MW-AREA 2 | STUDS & NUTS, (459) 1 3/8" X 10" | | BULLWINKLE | | | | 459 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83131.A | | MW-AREA 2 | STUDS & NUTS, (140) 1 3/8" X 9" | | BULLWINKLE | | | | 140 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83132.A | | MW-AREA 2 | STUDS & NUTS, (118) 1" X 6.75" | | BULLWINKLE | | | | 118 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83133.A | | MW-AREA 2 | STUDS & NUTS, (288) 7/8" X 5.75" | | BULLWINKLE | | | | 288 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83134.A | | MR-1-B | TEX 5 RING TEST GASKET. MFR: TRENDSETTER, PN: A1006521 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83135.A | | MW-AREA 2 | STUDS & NUTS, (16) 1 1/2" X 10 3/8" | | BULLWINKLE | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83135.B | | MR-2-O | TEX 5 RING TEST GASKET. MFR: TRENDSETTER, PN: A1006521 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83136.A | | OS-R3-S2 | SPANNER WRENCH, BUMUS-41397. MFR: OCEANEERING, PN: 0506953-1 | | | | | | | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83137.A | | OS-R3-S2 | HOT STAB. MFR: OCEANEERING, PN: A05320-H | | | | | | | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83138.A | | OS-R3-S2 | HOT STAB. MFR: OCEANEERING, PN: A06282 | | | | | | | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83139.A | | OS-R3-S2 | HOT STAB. MFR: OCEANEERING, PN: A05320-G | | | | | | | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83140.A | | MR-4-O | 1 5/8"-8X10 A 320 L7M, ALL THREAD STUD, ZINC PLATED. MFR: AKER, PN: 10326674 | | | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83141.A | | MR-4-O | WASHER, FLAT, 1 1/2" ID, CS FLZN. MFR: AKER, PN: 10078196 | | | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83142.A | | MR-4-O | WASHER, LOCK, INTERNAL TOOTHED, 1 1/2" ID. MFR: AKER, PN: 10031049 | | | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83143.A | | MR-4-O | 1 1/2-8 A194 2H NUTS, DOMESTIC, ZINC PLATED. MFR: AKER, PN: 1021500 | | | | | | 20 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83144.A | | MR-4-O | WASHER, INTERNAL TOOTH LOCK, TYPE A, 7/8". MFR: AKER, PN: 10048234 | | | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83145.A | | MR-4-O | 3/4"-10 X 1 A320 L7M HUY HEX BOLT, ZINC PLATED, DOMESTIC. MFR: AKER, PN: 10323751 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83146.A | | MR-4-O | SHCS, 1/2" - 13UNRC X 2.5", L7M, ELZN. MFR: AKER, PN: 10323753 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83147.A | | MR-4-O | 1/4" - 20 X 1/2 PAN HEAD PHILLIPS MACHINE SCREWS, ZINC PLATED, DOMESTIC. MFR: AKER, PN: 10016851 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83148.A | | MR-4-O | NUT, HEX, 1/2" - 13 UNC. MFR: AKER, PN: 10190004 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83149.A | | MR-4-O | NUT, HEX, HEAVY, 7/8" - 9 UNC. MFR: AKER, PN: 10120510 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83150.A | | MR-4-O | 7/8" - 9 X 5 A320 L7M HUY HEX BOLT, ZINC PLATED, DOMESTIC. MFR: AKER, PN: 10323752 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83151.A | | MW-AREA 6 | BOLT, 1/2-13 UNC X 4" HXHD. 316. MFR: ABCO SUBSEA, PN: 5002.68 | | | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83152.A | | MW-AREA 6 | NUT, 1/2-13 UNC NYLOCK, 316. MFR: ABCO SUBSEA, PN: 5000.89 | | | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83153.A | | MW-AREA 6 | WASHER, 1/2 MS-819 (1 3/8 OD X 11 THK), 316. MFR: ABCO SUBSEA, PN: 5002.80 | | | | | | 18 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83154.A | | MR-GENERAL | VBR (VERTEBRAE BEND RESTRICTORS). MFR: WHITEFIELD PLASTICS, PN: 7187234VBRHD | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83155.A | | MW-AREA 6 | M7 VBR FLANGE, 5.96" ID X 22" PL, PU 85-D YELLOW. MFR: ABCO SUBSEA, PN: 0502297 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83156.A | | MW-AREA 6 | M7 VBR SEGMENT 6" ID, 412" LBR, 3.5 DEG. RA, PU 85D YELLOW. MFR: ABCO SUBSEA, PN: 0502298 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83157.A | | MW-AREA 6 | M7 VBR CAP, 6" ID, PU 85D YELLOW. MFR: ABCO SUBSEA, PN: 0502299 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83158.A | | MR-GENERAL | OEM HYDRAULIC COUPLER ASSY, SPECIALTY. MFR: HUNTING ENERGY SERVICES, PN: P207411 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83159.A | | MR-GENERAL | SEAL, METAL C-RING, INCONEL 71, 33.07MM OD X 2.39MM. MFR: FMC TECHNOLOGIES, PN: P206958 | AFE FW205014 | GUNFLINT | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83160.A | | MR-GENERAL | METAL SEAL, MSBMS-II-UD BODY, F/ 5-15K HANGER, INCONEL 625, SILVER PLATED, 4.686 OD X 3.913 ID, 0.450 LG, F/ HALLIBURTON CROWN PLUG. MFR: FMC TECHNOLOGIES, PN: P1000011680 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83161.A | | MR-GENERAL | METAL SEAL, MSBMS-II-UD BODY, F/ 5-15K HANGER, INCONEL 625, SILVER PLATED, 4.988 OD X 4.217 ID, 0.450 LG, F/ HALLIBURTON CROWN PLUG. MFR: FMC TECHNOLOGIES, PN: P1000011678 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83162.A | | MR-GENERAL | S-SEAL, OD TYPE, NON STD GEOMETRY, 1.506/1.494 OD X 0.140 CS X 0.185 LG, W/ 316 SS SPRINGS, .06 DIA COIL, USE SAME MOLD AS 48-500-232. MFR: FMC TECHNOLOGIES, PN: DP-48-4279 | AFE FW205014 | GUNFLINT | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83163.A | | MR-GENERAL | S-SEAL, ID TYPE, 13.707/13.653 OD X 0.300 CS X 0.516 LG, E50159 90A DURO HIGH TEMP HNBR (NORSOK COMPLIANT) MATL, W/ COAXIAL COMPOSITE & ELGILOY SPRINGS, .09 & .06 DIA COILS, USE SAME MOLD AS, P/N P106191-0003. MFR: FMC TECHNOLOGIES, PN: P182166 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83164.A | | MR-GENERAL | S-SEAL, B TYPE EXTERNAL, NON STD GEOMETRY, 15.155/15.065 OD X 0.330 CS X 0.531 LG, W/ COAXIAL COMPOSITE & ELGILOY SPRINGS, .09 & .06 DIA COILS. MFR: FMC TECHNOLOGIES, PN: P100000944 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83165.A | | MR-GENERAL | S-SEAL, OD TYPE, 14.794 / 14.706 OD X 0.500 CS X .555 LG, E50159 85A DURO HIGH TEMP HNBR (NORSOK COMPLIANT) MATL, W/ COAXIAL COMPOSITE & ELGILOY SPRINGS, .09 DIA COIL. MFR: FMC TECHNOLOGIES, PN: P182168 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83166.A | | MR-5-D | TEX-2 625 PRODUCTION GASKET. MFR:TRENDSETTER, PN: TSN90228S | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83166.B | | MR-5-D | TEX-2 625 PRODUCTION GASKET. MFR:TRENDSETTER, PN: TSN90228S | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83167.A | | MR-5-D | TEST GASKET, INCONEL-718, PTFE COATING, M21700. MFR: DESTEC ENGINEERING, PN: H08D 21698 | | | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83168.A | | MR-GENERAL | 1" X 10' RATCHET TIE DOWN SET (PACK OF 4), 1500 LB. MAX, 500 LB. WLL. MFR: ERICKSON, PN: 31352 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83169.A | | MW-AREA 4 | GUIDE AND LOCKING FUNNEL., UH-575/550, MALE, 15K. MFR: UNITECH, PN: 27324/D | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83170.A | | MW-AREA 4 | ANTI ROTATION FORK, UH-550, ROV OPERATED. MFR: UNITECH, PN: 8142/E | | | | | | 1 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83171.A | | MW-AREA 6 | MQC 12/12 FEMALE TERMINATOR BRAVO. MFR: UNITECH, PN: G04-3988-05-21255 #01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83172.A | | MW-AREA 6 | UH-550, F - 7.500 2" CONNECTOR, FEMALE PART. MFR: UNITECH, PN: G02-7011-8090/#31/0900 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83173.A | | MW-AREA 6 | MQC 12/10 MALE INCL. UH-107 WITH 3/8" NPTF. MFR: UNITECH, PN: G04-3953-05-21522-04 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83174.A | | MW-AREA 6 | MQC 12/10 MALE INCL. UH-107 WITH 3/8" NPTF. MFR: UNITECH, PN: G04-3953-05-21522-03 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83175.A | | MR-3-B | RETAINER, GASKET SEAL. MFR: VANCO, PN: 2124583-01 REV. B01 | | | | | | 13 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83176.A | | MW-AREA 4 | UH-575 FEMALE WITH 2" SCH XXS PIPE - 15000 PSI. MFR: UNITECH, PN: G02-1187-09-25379-A #01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83177.A | | MW-AREA 4 | FLUSHING MQC, INBOARD, 4 WAY, 1-1. MFR: AKER, PN: 1015348 REV 01/01 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83178.A | | MW-AREA 4 | J-PLATE ASSY, LTC, B-L. MFR: AKER, PN: 10017646 REV 02 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83179.A | | OS-R3-S2 | M/D LINER DEBRIS CAP 18 3/8", MATL: 65300 - POLYETHYLENE. MFR: PRECISION FLUOROCARBON INC., PN: 2035503-02 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83180.A | | MW-AREA 1 | 18-3/4" VX RING GASKET, 316 SS. MFR: X-CEL AMP, PN: 111227-1. | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83181.A | | BW-NEP-AREA | ICE MAKER (MODEL KDT0400A-161) AND ICE STORAGE BIN (MODEL K400). MFR: MANITOWOC FOODSERVICE, INC. | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83182.A | | MR-GENERAL | FIRE EXTINGUISHER BOX, FOR NEPTUNE, VK 826 | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83183.A | | OS-GENERAL | STRUCTURAL FRP TANK. MFR: PENTAIR, PN: CH30646-02010101-30 | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83184.A | | OS-GENERAL | STRUCTURAL FRP TANK. MFR UNKNOWN. | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83185.A | | OS-GENERAL | NAV-AID FRESNEL LENS FOR MAX LUMINA MARINE SIGNAL LANTERN, 300 MM. MFR: TIDELAND, PN: ML-300 | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83185.B | | OS-GENERAL | NAV-AID FRESNEL LENS FOR MAX LUMINA MARINE SIGNAL LANTERN, 300 MM. MFR: TIDELAND, PN: ML-300 | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83186.A | | BW-NEP-AREA | METHANOL PUMP MOTOR, 20V 120W. MFR: MARATHON, PN: 284TTGN40769BB L | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83187.A | | BW-NEP-AREA | STEEL ENGINE PULLER | | NEPTUNE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83188.A | | MW-AREA 1 | GASKET, 10"-15M, SEAL PLATE, MCPAC. MFR: VANCO, PN: 2124579-02 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83189.A | | MR-1-E | ST RG RETAINER/BUSHING ASSY. MFR: FISHER, PN: 25A6683X072 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83190.A | | OS-R3-S2 | GENERAL SERVICE GAUGE, 0-5000 PSI, 316 SST TUBE AND SOCKET. MFR: MARSH, PN: 097975 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83191.B | | OS-R3-S2 | XMAS TREE GAUGE, 0-5000  PSI, AISI 316 TUBE AND SOCKET. MFR: ASHCROFT | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83192.A | | MW-AREA 5 | UH-550 MALE TEST 2" STAB CONNECTOR RECEPTACLE. MFR: UNITECH, PN: G02-3956-05-21440-02 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83193.A | | MW-AREA 5 | MQC 2 MALE TERMINATOR ALPHA GENERAL ARRANGEMENT AND INTERFACE. MFR: UNITECH, PN: 21747 | | | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83194.A | | OS-GENERAL | ISOLATION NEEDLE VALVE (TREE MOUNTED), 10K WP, 3/4 TURN, 0.359 BORE, 4 BOLT BX151 CONNECTION, MATL CLASS "FF", TEMP RATING -20 TO 140 DEG F, API6A & 17D, PSL-3, NACE MR-01-75, ASME VIII/DIV2, OLIVER. MFR: ONESUBSEA, PN: 2205741-04 | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83195.A | | MW-R9-3 | OUTER JACKET REPAIR KIT (TAPE, WELDER, ROD, SANDING ROLL, FILE, HEAT GUN, SCRAPER, CUTTER). MFR: OCEANEERING, PN: VARIOUS | | TROIKA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83196.A | | MW-AREA 3 | 3.75" BLANK EXTENSION, 12' LONG. MFR: HUNTING ENERGY SERVICES | | | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83197.A | | BW-AREA 1 | M1 REMOVABLE LOGIC CROSSOVER PLATE, 14 WAY, 3 LINES. MFR: OCEANEERING, PN: 0508204 | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83198.A | DWW-YARD-C-VAN PBU4095260 MFR:INNOVEX, PN: RT1-302-9901-0324-0016 | | CENTRAMAX CENTRALIZER SUB, RT1, 11.875", 71.8#, 140KSI MYS, THS13, | | ORLOV | | | | 14 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83198.A | DWW-YARD-C-VAN HJCU148137 | | CENTRAMAX CENTRALIZER SUB, RT1, 11.875", 71.8#, 140KSI MYS, THS13, MFR:INNOVEX, PN: RT1-302-9901-0324-0016 | | ORLOV | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83198.A | DWW-YARD-C-VAN MOTU 045905745G1 | | CENTRAMAX CENTRALIZER SUB, RT1, 11.875", 71.8#, 140KSI MYS, THS13, MFR:INNOVEX, PN: RT1-302-9901-0324-0016 | | ORLOV | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83199.A | DWW-YARD-C-VAN PBU4095260 | | CENTRAMAX CENTRALIZER SUB, PT1, 18.00" 117#, VAM HD-L Q125HP. MFR: INNOVEX, PN: PT1-457-5803-0504-0009 | | GENOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83199.A | DWW-YARD-C-VAN 4334224ZG1 | | CENTRAMAX CENTRALIZER SUB, PT1, 18.00" 117#, VAM HD-L Q125HP. MFR: INNOVEX, PN: PT1-457-5803-0504-0009 | | GENOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83200.A | | MW-AREA 4 | GUIDE SHOE, 7 3/4" TSH 523, NON-DOPELESS, 46.1# Q125/140Y F1009. MFR: BLACKHAWK, PN: 0114055 A | | GENOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83201.A | | MW-AREA 4 | STOP COLLAR, 22" LO HD DBL, ST5C R C5. MFR: LEGACY, PN: 6026022 | | KATMAI | | | | 117 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83202.A | | MW-AREA 4 | CENTRALIZER, BOW SPRING 22 STR LO LPWLD 85R 31.62 OD CS. MFR: LEGACY, PN: 1108522 | | KATMAI | | | | 18 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83203.A | | MW-AREA 4 | 7 3/4" 46.1# FLOAT COLLAR, THS23 DL ATRB. MFR: INNOVEX, PN: 735-197-9901-0326 | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83204.A | | MW-AREA 4 | 7 3/4" 46.1# FLOAT COLLAR, THS23 DL AFRB TBRD Q12. MFR: INNOVEX, PN: 735-197-0901-0344-ATAB | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83205.A | | MW-AREA 4 | 7 3/4" 46.1# REAMER SHOE. MFR: INNOVEX, PN: 704-197-0901-0326-210 | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83206.A | | BW-AREA 3 | 10 3/4" TSH WEDGE , MAC II CROSSOVER, DOPELESS, 85.3-97.1#. MFR: TENARIS, PN: K&B-011811-050 | | | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83207.A | | TRAINING ROOM 1 | SEAL BODY, TYPE K-SEAL F/ 17.500 DIA BORE. MFR: ONESUBSEA, PN: 2091059-03-01 | AFE FWS80018 | KATMAI/ORLOV/GE | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83208.A | | OS-R1-S2 | ROC RAMPING GAUGE SIMULATOR, SUPPLY VOLTAGE 36-48V, GAUGE CURRENT 6-108MA, RS232 SERIAL CONNECTOR. MFR: WELL DYNAMICS (HALLIBURTON), PN: 9650-6052 | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83209.A | | OS-R1-S2 | SUBSEA CHEMICAL INJECTION METERING VALVE SIMULATOR, 100-240 VAC, 50/60 H2, 24VDC. MFR: SKOFLO, PN: 100322-L200-CAN-FL | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83210.A | | OS-R1-S2 | PERSONAL COMPUTER FOR FLOWMETER GAUGE SIMULATION SYSTEM. MFR: PANASONIC TOUGHBOOK, PN: CF-54FX12BVM | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83211.A | | MW-AREA 4 | CVC CONNECTOR, USED FOR PIG RECEIVER LAUNCHER (PRL) CONNECTION. MFR: ONESUBSEA, PN: 5026970BH1-02 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83212.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | GENERIC EL ROV LTC 4/7/12 UCOVERS 4/7/12-WAY BULKHEAD ROV RECEPTACLE WITH PADDLE HANDLES. MFR: TELEDYNE, PN: 2185425-04-09 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83213.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | GENERIC EL ROV LOOP, 12 PIN, MALE. MFR: TELEDYNE, PN: 2197088-41-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83214.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | GENERIC EL ROV PARK, 4/7/12P W/O INS, MATL: TITANIUM. MFR: TELEDYNE, PN: 2197088-37-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83215.A | | DWW-YARD-C-VAN TTNU9776101456G1 (CLIMATE CONTROLLED) | OSS BARROW, STAB PLATE DUMMY, 12 WAY ELECTRICAL FEMALE. MFR: ONESUBSEA, PN: 223521-42-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83216.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O-RING FOR 4.375 SSR W/ 1 ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2749294-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83216.A | | TRAINING ROOM 1 | O-RING FOR 4.375 SSR W/ 1 ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2749294-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83217.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | MECHANICAL SPARES, 4.375 SS WIRELINE ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2166284-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83217.A | | TRAINING ROOM 1 | MECHANICAL SPARES, 4.375 SS WIRELINE ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2166284-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83218.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | SPRING, OD: 0.720", WIRE: 0.112", LENGTH: 1.5", SPRING RATE: 158.5 LB/IN, MATL: 302 SS. MFR: ONESUBSEA, PN: 2748415-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83218.A | | TRAINING ROOM 1 | SPRING, OD: 0.720", WIRE: 0.112", LENGTH: 1.5", SPRING RATE: 158.5 LB/IN, MATL: 302 SS. MFR: ONESUBSEA, PN: 2748415-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83219.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | METAL SEAL RING, 4.375", SSR WL PLUG. MFR: ONESUBSEA, PN: 2748650-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83219.A | | TRAINING ROOM 1 | METAL SEAL RING, 4.375", SSR WL PLUG. MFR: ONESUBSEA, PN: 2748650-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83220.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | SPRING, CPRSM, .125 X .970 OD X 3.5 SST, ENDS GROUND, 44.2 LB/IN RATE, 11.4 ACTIVE COILS, 13.4 TOTAL COILS. MFR: ONESUBSEA, PN: 2748264-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83221.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | SPARES, 8"-15K S-AX PRODUCTION GASKET (KIT). MFR: ONESUBSEA, PN: 2500896-03 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83222.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | SPARES, 8"-15K CVC OUTBOARD CONNECTORS (KIT). MFR: ONESUBSEA, PN: 2500896-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83223.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 124, 1.268 ID X 1.440 OD NITRILE, PARBAK 8-SERIES. MFR: ONESUBSEA, PN: 042000-01-24 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 48 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83223.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 124, 1.268 ID X 1.440 OD NITRILE, PARBAK 8-SERIES. MFR: ONESUBSEA, PN: 042000-01-24 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 98 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83224.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | SPACER, PEEK LIP SEAL, HYDRAULIC STAB, G2, SPOOL TREE SYSTEM. MFR: ONESUBSEA, PN: 2142381-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83225.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-125, 1.299 ID X 103W, MATL: GREEN TWEED, CHEMRAZ, OR DU PONT - KALREZ 4079. MFR: ONESUBSEA, PN: 2731180-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83225.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-125, 1.299 ID X 103W, MATL: GREEN TWEED, CHEMRAZ, OR DU PONT - KALREZ 4079. MFR: ONESUBSEA, PN: 2731180-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83226.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 125, VIRGIN PEEK MATERIAL, SCARF CUT. MFR: ONESUBSEA, PN: 2749304-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83226.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 125, VIRGIN PEEK MATERIAL, SCARF CUT. MFR: ONESUBSEA, PN: 2749304-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83228.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 454, 12.524 ID X 12.996 OD NITRILE, PARBAK 8 SERIES. MFR: ONESUBSEA, PN: 042000-04-54 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83228.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 454, 12.524 ID X 12.996 OD NITRILE, PARBAK 8 SERIES. MFR: ONESUBSEA, PN: 042000-04-54 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83229.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 208, VIRGIN PEEK MATERIAL, SCARF CUT. MFR: ONESUBSEA, PN: 2748250-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 120 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83229.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 208, VIRGIN PEEK MATERIAL, SCARF CUT. MFR: ONESUBSEA, PN: 2748250-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 214 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83230.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O RING, SIZE AS-568-115, .674 ID X .103W 90D/MS-1078, NITRILEPKG AND QUAL. MFR: ONESUBSEA, PN: 702645-11-51 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83230.A | | TRAINING ROOM 1 | O RING, SIZE AS-568-115, .674 ID X .103W 90D/MS-1078, NITRILEPKG AND QUAL. MFR: ONESUBSEA, PN: 702645-11-51 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 89 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83231.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O RING, 348, CHEMRAZ 526, GREEN TWEED. MFR: ONESUBSEA, PN: 2748686-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83231.A | | TRAINING ROOM 1 | O RING, 348, CHEMRAZ 526, GREEN TWEED. MFR: ONESUBSEA, PN: 2748686-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83232.A | | TRAINING ROOM 1 | BACK UP RING, 115, .702 INCH ID X .874 INCH OD, DUROMETER 90, NITRILE, PARBAK 8-SERIES. MFR: ONESUBSEA, PN: 042000-01-15 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 94 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83233.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | SPACER RING, PEEK LIP SEAL, HYDRSTAB, G2 SPOOLTREE SYSTEM. MFR: ONESUBSEA, PN: 2142790-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 48 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83233.A | | TRAINING ROOM 1 | SPACER RING, PEEK LIP SEAL, HYDRSTAB, G2 SPOOLTREE SYSTEM. MFR: ONESUBSEA, PN: 2142790-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 77 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83234.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | KEY, RECTRACTABLE ORIENTATION, INTERNAL TREE CAP, SPOOLTREE SYSTEM, 10K, AISI 4130 LAS, FLUROPOLYMER, API 6A 20TH ED, API 17D 2ND ED. MFR: ONESUBSEA, PN: 2155928-01-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83234.A | | TRAINING ROOM 1 | KEY, RECTRACTABLE ORIENTATION, INTERNAL TREE CAP, SPOOLTREE SYSTEM, 10K, AISI 4130 LAS, FLUROPOLYMER, API 6A 20TH ED, API 17D 2ND ED. MFR: ONESUBSEA, PN: 2155928-01-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83235.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | LIP SEAL, AXIAL FOR .852 DIA BOREX .666 DIA ROD, PEEK W/ ELGILOYSPRING. MFR: ONESUBSEA, PN: 2748243-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 72 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83235.A | | TRAINING ROOM 1 | LIP SEAL, AXIAL FOR .852 DIA BOREX .666 DIA ROD, PEEK W/ ELGILOYSPRING. MFR: ONESUBSEA, PN: 2748243-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 124 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83236.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | O RING, SIZE AS-568-120, .987 ID X .103 W 85D, MS-001068 CAMLAST ™ PKG AND QUAL/CAMERON | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83237.A | | DWW-YARD-C-VAN TTNU9776101456I1 (CLIMATE CONTROLLED) | VEE PACKING RING, 4.375" WL PLUG. MFR: ONESUBSEA, PN: 2748806-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83237.A | | TRAINING ROOM 1 | VEE PACKING RING, 4.375" WL PLUG. MFR: ONESUBSEA, PN: 2748806-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 20 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83238.A | | TRAINING ROOM 1 | SHEAR PIN, 616/ 614 DIA X 1.0 LGHALF KNURL BRASS #464. MFR: ONESUBSEA, PN: 263134-17 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83239.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 381, 12.028 ID X 12.394 OD NITRILE PARBAK B-SERIES. MFR: ONESUBSEA, PN: 042000-03-81 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83239.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 381, 12.028 ID X 12.394 OD NITRILE PARBAK B-SERIES. MFR: ONESUBSEA, PN: 042000-03-81 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83240.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | O RING, SIZE AS-568-381, 11.975 ID X .210 W 90D / MS-1078, NITRILEPKG AND QUAL/CIW 702645. MFR: ONESUBSEA, PN: 702645-38-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 18 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83240.A | | TRAINING ROOM 1 | O RING, SIZE AS-568-381, 11.975 ID X .210 W 90D / MS-1078, NITRILEPKG AND QUAL/CIW 702645. MFR: ONESUBSEA, PN: 702645-38-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 14 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83241.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | O RING, SIZE AS-568-208, .609 ID X .139 W, 850/MS-001131, DUROCAM PKG AND QUAL/CAMERON 702647. MFR: ONESUBSEA, PN: 702647-20-85 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 102 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83241.A | | TRAINING ROOM 1 | O RING, SIZE AS-568-208, .609 ID X .139 W, 850/MS-001131, DUROCAM PKG AND QUAL/CAMERON 702647. MFR: ONESUBSEA, PN: 702647-20-85 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 116 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83242.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 353. 5.028 ID X 5.394 OD NITRILE PARBAK B SERIES. MFR: ONESUBSEA, PN: 042000-03-53 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83243.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | PLUG, AFO, LEE CO, .375-24, MP3SNNACE, MR0175. MFR: ONESUBSEA, PN: 2826603-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83244.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | O RING, SPECIAL, 12.14 ID X 12.56 OD X 0.228 HT, HNBR RUBBER, 95 DURO, N4007-95. MFR: ONESUBSEA, PN: 2788002-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83244.A | | TRAINING ROOM 1 | O RING, SPECIAL, 12.14 ID X 12.56 OD X 0.228 HT, HNBR RUBBER, 95 DURO, N4007-95. MFR: ONESUBSEA, PN: 2788002-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83245.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 360 INNER DIAMETER, 5.903 INCH, OUTER DIAMETER, 6.269 INCH, NITRILE, PARBAK B SERIES. MFR: ONESUBSEA, PN: 042000-03-60 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83246.A | | MR-2-B | SEAL BODY, TYPE K SEAL, F/12.675 DIA BORE. MFR: ONESUBSEA, PN: 2091059-05-01 | | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83246.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | SEAL BODY, TYPE K SEAL, F/12.675 DIA BORE. MFR: ONESUBSEA, PN: 2091059-05-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83247.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | GENERIC EFL 12P TO 12S TP 60M, CONNECTOR HOUSING MTL: TITANIUM, MFR: ONESUBSEA, PN: 2197088-51-22 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83247.B | | MW-AREA 2 | GENERIC EFL 12P TO 12S TP 60M, CONNECTOR HOUSING MTL: TITANIUM, MFR: ONESUBSEA, PN: 2197088-51-22 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83248.A | | MW-AREA 6 | ASSEMBLY, TREE DEBRIS CAP, G2/G3 SPOOL TREE SYSTEM, WITH H4 VETCO MANDREL PROFILE TOP. MFR: ONESUBSEA, PN: 2181899-14 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83249.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | ASSEMBLY, 8"-15K S-AX TEST GASKET (6.417 ID), W/ 2X DOVETAIL, O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: ONESUBSEA, PN: 2274164-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83249.B | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | ASSEMBLY, 8"-15K S-AX TEST GASKET (6.417 ID), W/ 2X DOVETAIL, O-RING GROOVES, SPHERICAL SEALING SURFACE. MFR: ONESUBSEA, PN: 2274164-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83250.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | REPLACEMENT SEAL KIT, G3 SPOOLTREE SYSTEM. MFR: ONESUBSEA, PN: 2341915-01-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83251.A | | MR-4-C | SPARES, 8"-15K CVC PRESSURE CAP (ELASTOMERIC SEAL). MFR: ONESUBSEA, PN: 2500896-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83252.A | | MR-2-B | SPARES, 8"-15K CVC MTM PRESSURE CAP. MFR: ONESUBSEA, PN: 2500896-06 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83252.A | | TRAINING ROOM 1 | SPARES, 8"-15K CVC MTM PRESSURE CAP. MFR: ONESUBSEA, PN: 2500896-06 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83253.A | | MW-AREA 6 | MQC, PLATE, OB, TEST/FLUSH, 12 WAY, A45. MFR: ONESUBSEA, PN: CM-018106-14 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83254.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | SPECIAL GASKET, CIW, AX/VX, SYMMETRICAL DESIGN TO FIT 18 3/4" 10K VETCO (VX), HOUSING CONNECTION, 316SS, WITH O-RING GROOVES, SILVER PLATED. MFR: ONESUBSEA, PN: 2235142-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83255.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | (KIT) - SPARES, ROUTINE, RECEIVED GOOD REPAIR INTERNAL TREE CAP WITH K-SEAL, 15K, SPOOL TREE SYSTEM. MFR: ONESUBSEA, PN: 223532-29 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83256.A | | MW-AREA 6 | MARINE GROWTH COVER, 1 1/3 WAY FOR PARKING PLATES. MFR: ONESUBSEA, PN: 223532-29 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83257.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | SPECIAL GASKET, CIW, SPHERICAL, AX/VX, SYMMETRIC DESIGN TO FIT 18 3/4" 10K VETCO VX HOUSING CONNECTION, 316SS, NO RESILIENT RINGS, SILVER PLATED. MFR: ONESUBSEA, PN: 2235142-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83258.A | | MW-AREA 6 | FWEKAT - INTENSIFIER FREE STAB PLATE, 6/0 WON TREE. MFR: ONESUBSEA, PN: 223520-67 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83259.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | GENERIC T&F PLATE FOR FREE PLATE, 1 1/3 WAY. MFR: ONESUBSEA, PN: 223518-69 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83260.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | GENERIC ASSY FFT, 15K W/HARNESS 6MM, 12 WAY PIN. MFR: ONESUBSEA, PN: 223367-79 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83261.A | | MW-AREA 6 | ASSEMBLY, FOR FAT, INTERNAL TREE CAP, G3 SPOOLTREE SYSTEM, 10K, MEC SEAL WITHOUT K-SEAL, 4.767 IN ELMAR WIRELINE PLUG PREP, EXTENSION SLEEVE, SPRINGLOADED KEY AND DEBRIS SLOTS. MFR: ONESUBSEA, PN: 2180719-32 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83262.A | | MW-AREA 6 | GENERIC, T&F PLATE FOR FIXED PLATE, 20/0 WAY. MFR: ONESUBSEA, 223520-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83263.A | | MR-2-B | SEAL, METAL END CAP SEAL, 17.832" NOM SEAL BORE. MFR: ONESUBSEA, PN: 647438-15-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83263.A | | TRAINING ROOM 1 | SEAL, METAL END CAP SEAL, 17.832" NOM SEAL BORE. MFR: ONESUBSEA, PN: 647438-15-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83264.A | | DWW-YARD-C-VAN TTNU9776101451 (CLIMATE CONTROLLED) | METAL END CAP SEAL, 13.188/13.191 SEAL BORE WITH OD BUMP AND SQUARE END CAPS. MFR: ONESUBSEA, PN: 2026350-07-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83265.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | M1 FIXED JUNCTION PLATE. 14 WAY, 11 X 1/2 IN RS-NV TO M9, 3 X 1 IN RS-NV TO M9, ASSEMBLY. MFR: OCEANEERING, PN: 166370-001 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83266.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | REMOVABLE IWOCS, TH, 14 WAY, 9 X 1/2 IN RS, 3 X 1 RS LINES, ASSEMBLY. MFR: OCEANEERING, PN: 0510989 SN: 165617-001 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83266.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | REMOVABLE IWOCS, TH, 14 WAY, 9 X 1/2 IN RS, 3 X 1 RS LINES, ASSEMBLY. MFR: OCEANEERING, PN: 0510989 SN: 165618-001 | AFE FW183040 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83267.A | | MW-AREA 4 | INBOARD PLATE, 14 WAY. MFR: OCEANEERING, PN: 0428794 REV A | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83268.A | | MW-AREA 4 | BEND RESTRICTOR. MFR: OCEANEERING, NO PN. | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83269.A | | MR-1-C | FEMALE COUPLER. MFR: OCEANEERING, PN: 0428079 | AFE FW205014 | GUNFLINT | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83270.B | | MR-1-C | FEMALE COUPLER. MFR: OCEANEERING, PN: 0437828 | AFE FW205014 | GUNFLINT | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83271.A | | MW-AREA 4 | REMEDIATION PANEL FOR M1 PLATE. MFR: OCEANEERING, PN: NONE. | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83272.A | | MW-AREA 6 | BACKUP HANGER ASSEMBLY. MFR: OES, PN: 2301984-07-01, SN: S00026436-1 (3' X 17' PALLET) | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83272.A | | MW-AREA 5 | BACKUP HANGER ASSEMBLY. MFR: OES, PN: 2301984-07-01, SN: 121452425-1 (3' X 10' PALLET) | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83273.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | CC-SEAL, .888 OD X .640 ID X .124 CS. MFR: ONESUBSEA, PN: 2248632-02 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 382 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83274.A | | MR-1-B | SPLIT LOAD RING, FOR 4.883" NOM RLH-2. MFR: ONESUBSEA, PN: 2216807-12 | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83275.A | | MR-1-B | UPPER LOAD RING, 5.25 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216807-34 | | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83276.A | | MR-GENERAL | CPI COUPLER, MALE 1/2, RS, STD. MFR: AKER SOLUTIONS, PN: 10329147 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83277.A | | MR-GENERAL | CPI RS -B FEMALE TEST COUPLER. MFR: AKER SOLUTIONS, PN: 10330273 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83278.A | | MR-GENERAL | CPI 1/2" MALE RS COUPLER WITH FITTINGS. MFR: AKER SOLUTIONS, PN: 10264287 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83279.A | | MW-AREA 4 | 13 TON CRANE, 4 PIECES. MFR: CORE LIFTING, PN: 27687 | | GC-65 | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83280.A | | DWW-YARD | 3 1/2" X 20' SLING, 102 TONS, VERTICAL. SN: HOU-058482-002 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83281.A | | DWW-YARD | 3 1/2" X 20' SLING, 102 TONS, VERTICAL. SN: HOU-058482-001 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83282.A | | DWW-YARD | 3" X 20' SLING, 77 TONS, VERTICAL. PN: 710619L, SN: HOU-05723-001 | AFE FW205014 | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83283.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 023, 1.080 ID. MFR: ONESUBSEA, PN: 042000-00-23 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83283.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 023, 1.080 ID. MFR: ONESUBSEA, PN: 042000-00-23 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83285.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | BACK UP RING, 1.020 +/- .004 ID. MFR: ONESUBSEA, PN: 2748250-38 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 72 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83286.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | B-PORT BACK UP RING, SIZE 318, 1.013 ID. MFR: ONESUBSEA, PN: 042000-03-18 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 20 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83287.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | B-PORT BACK UP RING, SIZE 323, 1.316 ID. MFR: ONESUBSEA, PN: 042000-03-23 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 20 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83288.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-323, 1.287 ID. MFR: ONESUBSEA, PN: 702645-32-31 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83288.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-323, 1.287 ID. MFR: ONESUBSEA, PN: 702645-32-31 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83289.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | B-PORT SEAL, O-RING, SIZE AS-568-318, .975 ID. MFR: ONESUBSEA, PN: 702645-31-81 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83290.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-013, .426 ID. MFR: ONESUBSEA, PN: 702647-01-31 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83291.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | SHEAR SCREW FOR SSR PROTECTION. MFR: ONESUBSEA, PN: 2748059-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83291.A | | TRAINING ROOM 1 | SHEAR SCREW FOR SSR PROTECTION. MFR: ONESUBSEA, PN: 2748059-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83292.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 206, .518 ID. MFR: ONESUBSEA, PN: 2748250-10 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 312 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83293.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | O RING, SIZE AS 568-023, 1.051 ID. MFR: ONESUBSEA, PN: 702645-02-31 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83293.A | | TRAINING ROOM 1 | O RING, SIZE AS 568-023, 1.051 ID. MFR: ONESUBSEA, PN: 702645-02-31 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83294.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | SOCKET SET SCREW FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748047-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83295.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | COMPRESSION SPRING FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748049-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83295.A | | TRAINING ROOM 1 | COMPRESSION SPRING FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748049-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83296.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | LOCKING INSERT FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748048-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83296.A | | TRAINING ROOM 1 | LOCKING INSERT FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748048-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83297.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | BULLET FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748044-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83297.A | | TRAINING ROOM 1 | BULLET FOR SSR W/L PLUG. MFR: ONESUBSEA, PN: 2748044-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83298.A | | DWW-YARD-C-VAN TTN\U97761014SG1 (CLIMATE CONTROLLED) | BUTTON HD CREW. MFR: ONESUBSEA, PN: 2359600-01 | AFE FW580018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83299.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | STAB SUB, CONTROL LINE, THRT. MFR: ONESUBSEA, PN: 2229924-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83300.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | TENSILE SCREW, UPPER, MECHANICAL. MFR: ONESUBSEA, PN: 262393-06 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83301.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SHEAR PIN, DIA .434 X 2.30 LG. MFR: ONESUBSEA, PN: 2155653-03 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83301.A | | TRAINING ROOM 1 | SHEAR PIN, DIA .434 X 2.30 LG. MFR: ONESUBSEA, PN: 2155653-03 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83302.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | ASSEMBLY, SEAL SLEEVE, 15K THRT. MFR: ONESUBSEA, PN: 2340873-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83303.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SCR 12 PT CAP, .625-11 X 1.250 87 ZN PL. MFR: ONESUBSEA, PN: 702585-14-00-12 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83304.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SHEAR PIN, G2 BORE PROTECTOR, NAVAL. MFR: ONESUBSEA, PN: 2155653-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83305.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | GRUB SCREW, UPPER WIRELINE PLUG. MFR: ONESUBSEA, PN: 2359600-32 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83306.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | VEE PACKING RING FOR SSR HVP0-090. MFR: ONESUBSEA, PN: 2748052-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83307.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | LOCKING WIRE, WIRELINE, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2359600-30 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83308.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | S SEAL, FOR USE IN 8.125" +/-.002 BORE. MFR: ONESUBSEA, PN: 2731494-03-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83309.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | O-RING, WIRELINE PLUG. MFR: ONESUBSEA, PN: 2749897-08 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83310.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | RING, SCARF CUT, PEEK. MFR: ONESUBSEA, PN: 2329622-03 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 36 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83310.A | | TRAINING ROOM 1 | RING, SCARF CUT, PEEK. MFR: ONESUBSEA, PN: 2329622-03 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83311.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SCREW. MFR: ONESUBSEA, PN: 263134-18 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83311.A | | TRAINING ROOM 1 | SCREW. MFR: ONESUBSEA, PN: 263134-18 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 48 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83312.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | O-RING. MFR: ONESUBSEA, PN: 041259-12-01-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83313.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-07. MFR: ONESUBSEA, PN: 702647-00-71 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83314.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SUB ASSEMBLY CONTROL RECEPTACLE. MFR: ONESUBSEA, PN: 2141634-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83315.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | POLYPAK, TYPE "B" SEAL. MFR: ONESUBSEA, PN: 2731344-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83316.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | MACHINED S SEAL, 8.125" BORE, WITH GROOVE. MFR: ONESUBSEA, PN: 2788005-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 14 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83316.A | | TRAINING ROOM 1 | MACHINED S SEAL, 8.125" BORE, WITH GROOVE. MFR: ONESUBSEA, PN: 2788005-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83317.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SEAL RING, 10.000 ID X 1.750 OD X .375. MFR: ONESUBSEA, PN: 2731381-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83318.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-451, 10.975 ID. MFR: ONESUBSEA, PN: 702647-45-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 15 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83318.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-451, 10.975 ID. MFR: ONESUBSEA, PN: 702647-45-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83319.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SEAL RING, 16.25 ID X 17.00 OD X .375. MFR: ONESUBSEA, PN: 2731382-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83319.A | | TRAINING ROOM 1 | SEAL RING, 16.25 ID X 17.00 OD X .375. MFR: ONESUBSEA, PN: 2731382-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83320.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SEAL RING, 10.000 ID X 10.750 OD X .75. MFR: ONESUBSEA, PN: 2731381-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83321.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | SEAL RING, 12.139 ID X 12.889 OD X .375. MFR: ONESUBSEA, PN: 2731383-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83322.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-37-21 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83323.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | O-RING, .275 W X 15.955 ID X. MFR: ONESUBSEA, PN: 702647-46-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83324.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | BACK UP RING, 11.426 +/- .006 ID X .221. MFR: ONESUBSEA, PN: 2748250-19 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 30 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83325.A | | DWW-YARD-C-VAN TTNU9776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-383, 13.975 ID. MFR: ONESUBSEA, PN: 702645-38-31 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83325.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-383, 13.975 ID. MFR: ONESUBSEA, PN: 702645-38-31 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83326.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-369, 7.975 ID. MFR: ONESUBSEA, PN: 702645-36-95 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83327.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | SOCKET SHOULDER SCREW. MFR: ONESUBSEA, PN: 2302607-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83328.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | VEE PKG RING, GREEN TWEED. MFR: ONESUBSEA, PN: 2748051-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 18 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83329.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | S SEAL. FOR USE IN 8.125" +/- .002 BORE. MFR: ONESUBSEA, PN: 2731494-03-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83330.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | O-RING V1238-95 VITON O RING, SIZE 2-161. MFR: ONESUBSEA, PN: 2788847-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83331.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | SEAL RING, 11.50 ID X 12.25 OD. MFR: ONESUBSEA, PN: 2708129 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83332.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-087. MFR: ONESUBSEA, PN: 702647-00-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 11 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83333.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | O-RING, SIZE 1 X 1 3/16. MFR: ONESUBSEA, PN: 702645-12-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 25 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83334.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | PLUG ADAPTER RING FIR 5.750" UPPER WL. MFR: ONESUBSEA, PN: 2736043-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83335.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | COUPLER SEAL KITS. MFR: ONESUBSEA. | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83336.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | SEAL KIT. MFR: ONESUBSEA, PN: 2500869-13 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83337.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | KEY, TBG HGR RUNNING TOOL, G2 SPOOL. MFR: ONESUBSEA, PN: 2141681-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83338.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | SPLIT RING, CC SEAL, 15L CONTROL LINE STAB. MFR: ONESUBSEA, PN: 2247889-02 | | GUNFLINT | | | | 32 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83338.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | SPLIT RING, CC SEAL, 15L CONTROL LINE STAB. MFR: ONESUBSEA, PN: 2247889-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 32 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83339.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | STOP RING, CC SEAL, 15K CONTROL LINE STAB. MFR: ONESUBSEA, PN: 2253158-02 | | GUNFLINT | | | | 64 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83340.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | RETAINER NUT, SHEAR PIN, ACTUATOR RING, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2141470-02 | | GUNFLINT | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83340.A | | TRAINING ROOM 1 | RETAINER NUT, SHEAR PIN, ACTUATOR RING, ISOLATION SLEEVE. MFR: ONESUBSEA, PN: 2141470-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 10 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83341.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-451, 10.975 ID X .275 W 90D/MS-1078. MFR: ONESUBSEA, PN: 702645-45-11 | | GUNFLINT | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83341.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-451, 10.975 ID X .275 W 90D/MS-1078. MFR: ONESUBSEA, PN: 702645-45-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83341.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-451, 10.975 ID X .275 W 90D/MS-1078. MFR: ONESUBSEA, PN: 702645-45-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83342.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | O-RING, SPARE FOR WIRELINE TOOLS. MFR: ONESUBSEA, PN: 2359600-10 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83343.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | O-RING, SPARE FOR WIRELINE TOOLS. MFR: ONESUBSEA, PN: 2359600-14 | | GUNFLINT | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83343.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | O-RING, SPARE FOR WIRELINE TOOLS. MFR: ONESUBSEA, PN: 2359600-14 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83344.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | RETAINER RING, CC SEAL, 15K CONTROL LINE STAB. MFR: ONESUBSEA, PN: 2247895-02 | | GUNFLINT | | | | 32 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83344.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | RETAINER RING, CC SEAL, 15K CONTROL LINE STAB. MFR: ONESUBSEA, PN: 2247895-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 32 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83345.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | SEAL, METAL END CAP, 17.030 IN SEAL BORE, DUAL ELASTOMER, 15K WP. MFR: ONESUBSEA, PN: 2289651-09 | | GUNFLINT | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83346.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | SEAL, METAL END CAP ,13.190 IN SEAL BORE, DUAL. MFR: ONESUBSEA, PN: 2289651-05 | | GUNFLINT | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83346.A | | TRAINING ROOM 1 | SEAL, METAL END CAP ,13.190 IN SEAL BORE, DUAL. MFR: ONESUBSEA, PN: 2289651-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83347.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | SUPPORT PLATE, SEAL GASKET W/ HYD TBG PREP, CLAMP/SEAL PLATE ASSY. MFR: ONESUBSEA, PN: 2099256-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83348.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | SUPPORT PLATE, SEAL GASKET, W/O HYD TUBING PREP, CLAMP/SEAL PLATE ASSY. MFR: ONESUBSEA, PN: 2099256-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83349.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | ASSY, WIRELINE PLUG, 5.75 IN NOM, 15K WP, RLH (5.284 IN SEAL BORE) PRIMARY METAL SEAL, SLS (5.319 IN SEAL BORE) SECONDARY PTFE BACKUP SEAL, TEMP CLASS. MFR: ONESUBSEA, PN: 2394981-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83350.A | | DWW-YARD-C-VAN TTN\J9776101456\1 (CLIMATE CONTROLLED) | SEAL BODY. MFR: ONESUBSEA, PN: 2091059-06-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83350.A | | TRAINING ROOM 1 | SEAL BODY. MFR: ONESUBSEA, PN: 2091059-06-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83351.A | | DWW-YARD | GC-65 A-FRAME 001, 40K LBS. 16 PIECES. | | BULLWINKLE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83352.A | | MW-AREA 1 | SDV-1019 PARTS IN CRATE. | | BULLWINKLE | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83353.A | | DWW-YARD | SFL 40M, 11 LINES, 11/3-9/3 WAY MAIN SUTA TO PXT K2. MFR: ONESUBSEA, PN: 223475-78-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83354.C | | MW-AREA 3 | FIRE PUMP, 250 HP @ 1760 RPM, 6/5 RATIO RATIO. MFR: RANDOLPH, SN: R1S08123. 2 PIECES. | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83355.A | | DWW-YARD | FIBERGLASS PIPING (FOR FIRE PUMP). | | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83356.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | GASKET, RING, 18 3/4 VETCO TYPE VX-2, 15K PSI MWP, 316 SS. MFR: ONESUBSEA, PN: 2731061-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83357.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | METAL END CAP SEAL, 13.25 NOM SEAL. MFR: ONESUBSEA, PN: 64743B-14-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83357.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 13.25 NOM SEAL. MFR: ONESUBSEA, PN: 64743B-14-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83358.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | TENSILE PEN FOR MECHANICAL INTERNAL TREECAP RUNNING TOOL. MFR: ONESUBSEA, PN: 262393-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83358.A | | TRAINING ROOM 1 | TENSILE PEN FOR MECHANICAL INTERNAL TREECAP RUNNING TOOL. MFR: ONESUBSEA, PN: 262393-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83359.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | GASKET , 4"-15M, SEAL PLATE, MCPAC. MFR: ONESUBSEA, PN: 2124579-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83360.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | ASSY, SHEAR PIN CARTRIDGE, DUAL PLUG TUBING HANGER, SPOOLTREE SYSTEM. MFR: ONESUBSEA, PN: 2141663-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83360.A | | TRAINING ROOM 1 | ASSY, SHEAR PIN CARTRIDGE, DUAL PLUG TUBING HANGER, SPOOLTREE SYSTEM. MFR: ONESUBSEA, PN: 2141663-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 22 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83361.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | SPECIAL EFL 7P TO 7S TSP 50MM SPECIAL WIRING, TITANIUM CONNECTOR HOUSING, V-NOTCH HANDLE, FLYING ROV 7 WAY PINS CONNECTOR AND SOCKETS. MFR: ONESUBSEA, PN: 2197088-45-90 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83362.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-120, .987 ID. MFR: ONESUBSEA, PN: 702647-12-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 105 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83362.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-120, .987 ID. MFR: ONESUBSEA, PN: 702647-12-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 21 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83363.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | HAT RING, 5.25 SLS SEAL, WIRELINE PLUG. MFR: ONESUBSEA, PN: 2221969-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83364.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | 5.25 SLS SEAL, WIRELINE PLUG. MFR: ONESUBSEA, PN: 2221968-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83365.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | ASSY, SHEAR PIN CARTRIDGE. MFR: ONESUBSEA, PN: 2141663-01. | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83365.A | | TRAINING ROOM 1 | ASSY, SHEAR PIN CARTRIDGE. MFR: ONESUBSEA, PN: 2141663-01. | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 23 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83366.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | SPECIAL SET SCREW, FOR SSR 6.700". MFR: ONESUBSEA, PN: 2748951-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83366.A | | TRAINING ROOM 1 | SPECIAL SET SCREW, FOR SSR 6.700". MFR: ONESUBSEA, PN: 2748951-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83367.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | GRUB SCREW, 8/32 X 1/4" SS A4 GR 80. MFR: ONESUBSEA, PN: 2359600-40 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83367.A | | TRAINING ROOM 1 | GRUB SCREW, 8/32 X 1/4" SS A4 GR 80. MFR: ONESUBSEA, PN: 2359600-40 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83368.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | BACK UP RING, ID 1.268 INCH +/- 0.012. MFR: ONESUBSEA, PN: 2748250-64 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 48 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83369.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | PLUG WIPER, 5.320 HT 15K, H2S, HH. MFR: ONESUBSEA, PN: 2359600-37 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83369.A | | TRAINING ROOM 1 | PLUG WIPER, 5.320 HT 15K, H2S, HH. MFR: ONESUBSEA, PN: 2359600-37 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83370.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-124, 1.237 ID. MFR: ONESUBSEA, PN: 702645-12-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83370.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-124, 1.237 ID. MFR: ONESUBSEA, PN: 702645-12-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 92 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83371.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-206, .484 ID X .139. MFR: ONESUBSEA, PN: 702645-20-61 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83371.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-206, .484 ID X .139. MFR: ONESUBSEA, PN: 702645-20-61 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83372.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | BACK UP RING, ID 1.268 INCH +/- INCH. MFR: ONESUBSEA, PN: 2748250-64 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 48 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83373.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | O-RING, .275 W X 17.455 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-46-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83373.A | | TRAINING ROOM 1 | O-RING, .275 W X 17.455 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-46-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83374.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-449, 9.975 ID. MFR: ONESUBSEA, PN: 702645-44-91 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83375.A | | DWW-YARD-C-VAN TTNU977610145G1 (CLIMATE CONTROLLED) | BACK UP RING, 9.524 X 9.996. MFR: ONESUBSEA, PN: 042000-04-48 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83376.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | O-RING, .139 W X 00.96 ID 90D NITRILE. MFR: ONESUBSEA, PN: 702645-21-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 24 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83376.A | | TRAINING ROOM 1 | O-RING, .139 W X 00.96 ID 90D NITRILE. MFR: ONESUBSEA, PN: 702645-21-11 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 84 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83377.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | BACK UP RING, SIZE 351 4.778 ID. MFR: ONESUBSEA, PN: 042000-03-51 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83378.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-433, 5.475 ID. MFR: ONESUBSEA, PN: 702645-43-31 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83379.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | O-RING, .139 X 01.734 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-22-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83379.A | | TRAINING ROOM 1 | O-RING, .139 X 01.734 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-22-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83380.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | SEAL RING, 4.250 ID X 4.75 OD X .25. MFR: ONESUBSEA, PN: 2725008-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83381.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-238 3.484 ID. MFR: ONESUBSEA, PN: 702645-23-81 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83381.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-238 3.484 ID. MFR: ONESUBSEA, PN: 702645-23-81 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83382.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-433 5.475 ID. MFR: ONESUBSEA, PN: 702645-43-31 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83383.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | O-RING, .275 W X 13.975 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-45-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83383.A | | TRAINING ROOM 1 | O-RING, .275 W X 13.975 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-45-71 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83384.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | SLS SEAL ASSEMBLY. MFR: ONESUBSEA, PN: 2230493-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83385.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-368 7.725 ID. MFR: ONESUBSEA, PN: 702645-36-85 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83385.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-368 7.725 ID. MFR: ONESUBSEA, PN: 702645-36-85 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83386.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | MECHANICAL SPARES, 4.375 SSR PLUG. MFR: ONESUBSEA, PN: 2166241-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83386.A | | TRAINING ROOM 1 | MECHANICAL SPARES, 4.375 SSR PLUG. MFR: ONESUBSEA, PN: 2166241-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83387.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | SUB ASSEMBLY, SHEAR PIN CARTRIDGE. MFR: ONESUBSEA, PN: 2141663-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83388.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | PLUG, PIPE 1/4" SST 18-8 YS2008-00010501. MFR: ONESUBSEA, PN: 002504-09 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83388.A | | TRAINING ROOM 1 | PLUG, PIPE 1/4" SST 18-8 YS2008-00010501. MFR: ONESUBSEA, PN: 002504-09 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83389.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | CENTRE RING, F/ 7" ML-2 METAL LIP SEAL. MFR: ONESUBSEA, PN: 2259715-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83390.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-459, 14.975 ID. MFR: ONESUBSEA, PN: 702645-45-91 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83391.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | O-RING, SIZE AS-568-462, 16.455 ID. MFR: ONESUBSEA, PN: 702645-46-21 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83391.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-462, 16.455 ID. MFR: ONESUBSEA, PN: 702645-46-21 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83392.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | BACK UP RING, 5.75 SLS SEAL. MFR: ONESUBSEA, PN: 2213451-06 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83393.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | BACK UP RING, 5.25 SLS SEAL. MFR: ONESUBSEA, PN: 2213451-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83394.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | SEAL SPACER RING, 5.25 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216808-19 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83395.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | SPACER RING, 5.25 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216808-18 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83396.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | SEAL SPACER RING, 5.25 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216808-20 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83397.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | UPPER RETAINER RING, 5.25 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216806-18 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83398.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | RETAINER RING, FOR 5.284" NOM RLH 2-SEAL. MFR: ONESUBSEA, PN: 2216806-10 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83399.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | STOP RING, FOR 5.319" NOM WP SEAL .250". MFR: ONESUBSEA, PN: 2216808-10 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83400.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | SPACER RING, 5.75 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216808-21 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83401.A | | DWW-YARD-C-VAN TTN0776101456S1 (CLIMATE CONTROLLED) | SPLIT LOAD RING, FOR 5.284" NOM RLH-2. MFR: ONESUBSEA, PN: 2216807-13 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83402.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | UPPER LOAD RING, 5.75 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216807-35 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83403.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | SEAL SPACER RING, 5.75 SLS SEAL, WIRELINE. MFR: ONESUBSEA, PN: 2216808-22 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83404.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | UPPER RETAINER RING, 5.75 WIRELINE PLUG. MFR: ONESUBSEA, PN: 2216806-19 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83405.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | O-RING, SIZE AS-568-459 14.975 ID. MFR: ONESUBSEA, PN: 702645-45-91 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83406.A | | | METAL SEAL FOR 5.75" SSR. MFR: ONESUBSEA, PN: 2748056-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83407.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | INSTALLATION TOOL, WP & RLH-2 SEALS. MFR: ONESUBSEA, PN: 2230554-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83408.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | PINEAPPLE TOOL ASSEMBLY. MFR: ONESUBSEA, PN: 0307929 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83409.B | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | BLACK PELICAN CASE CONTAINING HOSES, FITTINGS, AND VALVES (SOME USED) | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83410.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | INSTALLATION TOOL, WP & RLH-2 SEALS. MFR: ONESUBSEA, PN: 2230555-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83411.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | PACKING O-RING. MFR: ONESUBSEA, PN: 2748750-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83411.A | | TRAINING ROOM 1 | PACKING O-RING. MFR: ONESUBSEA, PN: 2748750-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83412.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | PLUG MTM SEAL 4.375 10K H2S. MFR: ONESUBSEA, PN: 4511114880 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83413.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | O-RING. MFR: ONESUBSEA, PN: HVPO-103 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83414.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | KIT, DHG PLUG. MFR: TELEDYNE, PN: 2250977-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83415.A | | DWW-YARD-C-VAN TTNU9776101458G1 (CLIMATE CONTROLED) | KIT, DHG PLUG. MFR: TELEDYNE, PN: 2250977-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83416.A | | TRAINING ROOM 1 | O-RING, .210 W X 16.955 ID 90D NITRILE. MFR: ONESUBSEA, PN: 702645-38-61 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83417.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 17.832 NOM BORE. MFR: CAMERON, PN: 2289964-04 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83418.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 17.656 NOM BORE. MFR: CAMERON, PN: 2289964-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 44 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83419.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 14.250 NOM BORE. MFR: CAMERON, PN: 2289964-05-05 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83420.A | | TRAINING ROOM 1 | METAL END CAP SEAL. MFR: CAMERON, PN: 684664-37 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83421.A | | TRAINING ROOM 1 | METAL END CAP SEAL. MFR: CAMERON, PN: 605894-29 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83422.A | | TRAINING ROOM 1 | SEAL REDRESS KIT, TUBING HANGER, 15K (INCLUDES BOX WITH 17 ITEMS, 2 SEAL BODIES, AND 3 METAL END CAP SEALS). 6 ITEMS TOTAL. MFR: ONESUBSEA, PN: 2244562-15 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83423.A | | TRAINING ROOM 1 | SEAL RING, 10.000 ID X 10.750 OD. MFR: ONESUBSEA, PN: 709770 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83424.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 14.490 NOM. BORE. MFR: CAMERON, PN: 2289964-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83425.A | | TRAINING ROOM 1 | MOLD DETAIL, METAL END CAP SEAL WITH OD. MFR: CAMERON, PN: 2243660-02 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83426.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 17.656". MFR: CAMERON, PN: 647438-16-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 7 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83427.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 14.490". MFR: CAMERON, PN: 647438-17-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83428.A | | TRAINING ROOM 1 | SEAL. MFR: ONESUBSEA, PN: 714148 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83429.A | | TRAINING ROOM 1 | SEAL. MFR: ONESUBSEA, PN: 714129 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83430.A | | TRAINING ROOM 1 | METAL END CAP SEAL, 14.250". MFR: CAMERON, PN: 647438-18-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83431.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-37-21 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83432.A | | TRAINING ROOM 1 | SCREW. MFR: ONESUBSEA, PN: 713040 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83433.A | | TRAINING ROOM 1 | SCREW. MFR: ONESUBSEA, PN: 262393-03 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83434.A | | TRAINING ROOM 1 | O-RING .275 W X 15.475 ID, 90D NITRILE. MFR: ONESUBSEA, PN: 702645-46-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83435.A | | TRAINING ROOM 1 | ASSEMBLY, CONTROL RECEPTACLE, 15K. MFR: ONESUBSEA, PN: 2141634-13 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83436.A | | TRAINING ROOM 1 | O-RING, .275W X 07.725 ID 90D NITRILE. MFR: ONESUBSEA, PN: 702645-44-41 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83437.A | | TRAINING ROOM 1 | O-RING FOR 4.375" DIA PLUG EROSION. MFR: ONESUBSEA, PN: 2748751-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83438.A | | TRAINING ROOM 1 | VEE PACKING RING F/ 4.767" DIA PLUG. MFR: ONESUBSEA, PN: 2748215-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 25 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83439.A | | TRAINING ROOM 1 | VEE PACKING RING, 4.375", 10K ONLY. MFR: ONESUBSEA, PN: 2748807-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 22 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83440.A | | TRAINING ROOM 1 | SILVER COATED METAL SEAL RING. MFR: ONESUBSEA, PN: 2748206-01 | AFE FWS80018 | KATMAI/ORLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83441.A | | TRAINING ROOM 1 | BACK UP RING, PTFE, 9921006753. MFR: ONESUBSEA, PN: 2359600-15 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83442.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 451 11.024 ID. MFR: ONESUBSEA, PN: 041327-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83443.A | | TRAINING ROOM 1 | VEE PACKING RING F/ 4.767" DIA PLUG. MFR: ONESUBSEA, PN: 2748214-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83444.A | | TRAINING ROOM 1 | WIPER RING, WIRELINE PLUG, 5.25 IN NOM. MFR: ONESUBSEA, PN: 2359600-45 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83445.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 70264S-44-61 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83446.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-351, 4.725 ID. MFR: ONESUBSEA, PN: 70264S-35-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83447.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-161, 5.487 ID. MFR: ONESUBSEA, PN: 70264S-16-11 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83448.A | | TRAINING ROOM 1 | BACK UP RING, ID 0.702 INCH +/- 0.009. MFR: ONESUBSEA, PN: 2748250-63 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 96 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83449.A | | TRAINING ROOM 1 | BUMPER, INSERT CAGE, 7" BORE F/ 15K. MFR: ONESUBSEA, PN: 2029641-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83450.A | | TRAINING ROOM 1 | BEARING RING, CCSR, 7.38 OD. MFR: ONESUBSEA, PN: 2053058-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83451.A | | TRAINING ROOM 1 | O-RING, 8 1/2" OD X 1/2 CROSS. MFR: ONESUBSEA, PN: 018493-45 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83452.A | | TRAINING ROOM 1 | TENSILE SCREW, ITC MECHANICAL RUNNING TOOL. MFR: ONESUBSEA, PN: 2166948-04 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83453.A | | TRAINING ROOM 1 | BACK UP RING, SIZE 206, .518 ID. MFR: ONESUBSEA, PN: 042000-02-06 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 24 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83454.A | | TRAINING ROOM 1 | COMBO TOOL. MFR: ONESUBSEA, PN: 2330489-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 16 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83455.A | | TRAINING ROOM 1 | O-RING, SIZE 462 16.455 ID X .275 W. MFR: ONESUBSEA, PN: 70264T-46-21 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 5 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83456.A | | TRAINING ROOM 1 | SHEAR PIN, G2 BORE PROTECTOR, NAVAL BRASS. MFR: ONESUBSEA, PN: 2155653-02 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 24 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83457.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-463 16.955 ID. MFR: ONESUBSEA, PN: 70264S-46-31 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83458.A | | TRAINING ROOM 1 | O-RING, NITRILE 90A, 13 1/2 X 14 X 1/4". MFR: ONESUBSEA, PN: 70264S-45-61 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83459.A | | TRAINING ROOM 1 | SHEAR PIN, G2 BORE PROTECTOR, TEFLON. MFR: ONESUBSEA, PN: 2155653-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83460.A | | TRAINING ROOM 1 | THREADED RETAINER, SHEAR PIN ASSEMBLY. MFR: ONESUBSEA, PN: 2026808-04 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 18 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83461.A | | TRAINING ROOM 1 | TAB, G2 BORE PROTECTOR. MFR: ONESUBSEA, PN: 2155677-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 18 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83462.A | | TRAINING ROOM 1 | O-RING, 16.504 ID X .236 CS. MFR: ONESUBSEA, PN: 042000-04-62 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83463.A | | TRAINING ROOM 1 | SHEAR PIN, 18-3/4 NOM HYD TUBING HANGER. MFR: ONESUBSEA, PN: 199362-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83464.A | | TRAINING ROOM 1 | PINS. MFR: ONESUBSEA, PN: W0105412-002 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83465.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 70264S-42-61 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83466.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-3534, .975 ID. MFR: ONESUBSEA, PN: 70264T-35-31 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83467.A | | TRAINING ROOM 1 | KEY, SLEEVE, CVC COLLET CONNECTOR. MFR: ONESUBSEA, PN: 2156304-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83468.A | | TRAINING ROOM 1 | SPARES. MFR: ONESUBSEA, PN: 2400888-02-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83469.A | | TRAINING ROOM 1 | SCREW, 12 PT CAP .250-20UNC X .875, ASTM A193 GR B7 ZINC PLATED / SAE J58. MFR: ONESUBSEA, PN: 70258S-02-00-07 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83470.A | | TRAINING ROOM 1 | O RING, SIZE AS-568-208 .609 ID X .139 W 90D /MS-1078 NITRILE PKG AND QUAL /CIW 70264S. MFR: ONESUBSEA, PN: 70264S-20-81 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 5 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83471.A | | TRAINING ROOM 1 | MALE SEAL RETAINER, CLAMP CONNECTOR / SEAL PLATE ASSY. MFR: ONESUBSEA, PN: 2123142-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 9 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83472.A | | TRAINING ROOM 1 | FEMALE SEAL RETAINER, CLAMP CONNECTOR / SEAL PLATE ASSY. MFR: ONESUBSEA, PN: 2123141-01 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 9 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83473.A | | DWW-YARD | SFL1 FLUSH/PARK - 15' L X 10' W X 8' H; 10,500 LBS EACH INTERMEDIATE JUNCTION PLATE, 14 WAY W/ JUNCTION PLATE FIXED M1 14 POSITION, 14 WAY X .5 RS MALE NVP COUPLERS & JUNCTION PLATE REMOVABLE, 14 POSITION, 14 WAY, .5 RS FEMALE VP COUPLERS, 7 X.5 RS NVP COUPLERS. | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83474.A | | DWW-YARD | SFL2 FLUSH/PARK - 15' L X 10' W X 8' H; 10,500 LBS EACH INTERMEDIATE JUNCTION PLATE, 14 WAY W/ JUNCTION PLATE FIXED M1 14 POSITION, 14 WAY X .5 RS MALE NVP COUPLERS & JUNCTION PLATE REMOVABLE, 14 POSITION, 14 WAY, .5 RS FEMALE VP COUPLERS, 7 X.5 RS NVP COUPLERS. | | | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83475.A | | MW-AREA 2 | VERTICAL MULTISTAGE CENTRIFUGAL PUMP, 60 HZ, 3444 RPM, 15 HP WITH BALDOR RELIANCE SUPER E MOTOR (15 HP, 3520 RPM, 230/460 VOLTS, SPEC. 09G935D602G1). MFR: GRUNDFOS, PN: CR32-3A-G-A-E-HQQE-NX2 | LOE | ST 308/TARANTULA | | | | 0 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83476.A | | MR-GENERAL | REAR/FRONT SEAL TOOLING IN BLACK PELICAN CASE. MFR: CATERPILLAR, PN: 3512 | | WD 70D | | | | 1 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83477.A | | TRAINING ROOM 1 | O-RING, SIZE AS-568-117, .799 ID. MFR: ONESUBSEA, PN: 70264T-11-75 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 75 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83478.A | | TRAINING ROOM 1 | BACK-UP NITRILE 90A, 14 X 14 1/2. MFR: ONESUBSEA, PN: 042000-04-57 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83479.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 70264S-21-41 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83480.A | | TRAINING ROOM 1 | SCR 0.250-20 X 0.500 SST CUP PT SET. MFR: ONESUBSEA, PN: 702515-17-20-08 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83481.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 042000-04-55 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | |
| Deepwater Warehouse | Fieldwood | 83482.A | | TRAINING ROOM 1 | BLIND SEAL CARRIER. MFR: ONESUBSEA, PN: 2124421-04 | AFE FWS80018 | KATMAI/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deepwater Warehouse | Fieldwood | 83483.A | | TRAINING ROOM 1 | SEAL CAP VERT PLUG HYDRAULIC STAB. MFR: ONESUBSEA, PN: 2142681-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83484.A | | TRAINING ROOM 1 | RUBBER/SPRING SEAL, EXTERNAL. MFR: ONESUBSEA, PN: 2788005-02-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83485.A | | TRAINING ROOM 1 | G2 G3 HYD DTAB SPACER. MFR: ONESUBSEA, PN: 2142381-02 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 38 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83486.A | | TRAINING ROOM 1 | SLIDE PIN, .893-1.002. MFR: ONESUBSEA, PN: 2142376-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83487.A | | TRAINING ROOM 1 | HYDR SEAL CARRIER BLIND PLUG. MFR: ONESUBSEA, PN: 2704208 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83488.A | | TRAINING ROOM 1 | HYDR VERTICAL PLUG. MFR: ONESUBSEA, PN: 2156280-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83489.A | | TRAINING ROOM 1 | HYDR O-RING, SIZE AS-568-455, 12.975 ID. MFR: ONESUBSEA, PN: 702647-45-51 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 5 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83490.A | | TRAINING ROOM 1 | O-RING, .275W X 12.475 ID W85D/MS-1068. MFR: ONESUBSEA, PN: 702647-45-41 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83491.A | | TRAINING ROOM 1 | ISOLATION SLEEVE O-RING, S.25. MFR: ONESUBSEA, PN: 2748113-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83492.A | | TRAINING ROOM 1 | SCR 0.250-20 X 0.625 SST CUP PT SET. MFR: ONESUBSEA, PN: 702515-17-20-10 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83493.A | | TRAINING ROOM 1 | VEE PACKING RING, S.25. MFR: ONESUBSEA, PN: 2736039-03 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83494.A | | TRAINING ROOM 1 | SSE SEAL. MFR: ONESUBSEA, PN: 2748983-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 12 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83495.A | | TRAINING ROOM 1 | STANDARD SPHERICAL GASKET, DMG 7125. MFR: ONESUBSEA, PN: 2398316-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83496.A | | TRAINING ROOM 1 | SEAL KIT. MFR: NATIONAL COUPLER, PN: TO-4-B-28-SK | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 19 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83497.A | | TRAINING ROOM 1 | NAT. COUPLER SEAL KIT. MFR: ONESUBSEA, PN: 2737462-02 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 30 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83498.A | | TRAINING ROOM 1 | O-RING KIT. MFR: ONESUBSEA, PN: 042000-03-67 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83499.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-45-51 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83500.A | | TRAINING ROOM 1 | PACKING, VARIPAK T99. MFR: ONESUBSEA, PN: 140232-12-51-03 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83501.A | | MW-AREA 1 | PALLETIZED SECTION OF TEST PIPE WITH INSULATION | AFE FW203021 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83502.A | | MW-AREA 1 | PALLETIZED SECTION OF TEST PIPE UNCOATED | AFE FW203021 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83503.A | | MW-AREA 1 | CVC ID COLLET PLUG, PN: COM-000003109 | AFE FW203021 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83504.A | | MW-AREA 1 | GRIPPER FLANGE SEAL ASSEMBLY, PN: COM-000003108 | AFE FW203021 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83505.A | | MW-AREA 1 | HYDRAULIC FITTINGS, PN: 500032-12 | AFE FW203021 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83506.A | | MW-AREA 1 | HYDRAULIC FITTINGS, PN: 540416-16 | AFE FW203021 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83507.A | | MW-AREA 1 | HYDRAULIC FITTINGS, PN: 540632-16 | AFE FW203021 | KATMAI | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83508.A | | MW-AREA 1 | SPARES (QTY: 6 - 75 VITON - SIZE 446, QTY: 4 - WAVE SPRING, QTY: 7 - 241N90, QTY: 8 - 75 VITON - SIZE 427, QTY: 8 - 70A BUNA-N - SIZE 269) | AFE FW203021 | KATMAI | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83509.A | | MW-AREA 1 | 5" X 1/2" STEM ALUM. EXP. PLUG. | AFE FW203021 | KATMAI | | | | 9 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83510.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 718044 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 103 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83511.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 2707402-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 30 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83512.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 042000-00-18 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83513.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 042000-02-77 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 6 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83514.A | | TRAINING ROOM 1 | O-RING, -378, 209 COMPOUND. MFR: ONESUBSEA, PN: 2749478-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83515.A | | TRAINING ROOM 1 | O-RING, 3/4 X 1 X 1/8. MFR: ONESUBSEA, PN: 702645-21-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 3 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83516.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 41008-0062-32 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 25 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83517.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 631680-02 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 8 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83518.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-38-01 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83519.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-36-32 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 16 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83520.A | | TRAINING ROOM 1 | PAK RING TEFLON. MFR: ONESUBSEA, PN: 631486-06 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 2 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83521.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702640-44-11 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83522.A | | TRAINING ROOM 1 | S SEAL. 6 1/4" NOM. MFR: ONESUBSEA, PN: 041259-17-01-13 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 13 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83523.A | | TRAINING ROOM 1 | S SEAL RING, 6" NOM OD. MFR: ONESUBSEA, PN: 142895-12-05-23 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 20 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83524.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-01-11 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 1 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83525.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702645-21-61 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 4 | | 0 | 0 | | |
| Deepwater Warehouse | Fieldwood | 83526.A | | TRAINING ROOM 1 | O-RING. MFR: ONESUBSEA, PN: 702640-35-41 | AFE FWS80018 | KATMAU/DRLOV/GE NOVESA | | | | 7 | | 0 | 0 | | |
| Aker - Mobile | Aker Solutions | 10239579 | 298203-2 | A712 Rack A Sec 7 | ASSY,IPC,DUAL PSU,DUAL DIO32 W/ SMAC56 | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10236989 | 317793-1 | A712 Rack A Sec 7 | KIT, ESD SIMULATOR | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10258430 | 4500776661-10-2 | A712 Rack A Sec 7 | CASE, TRANSPORT, 1630 | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10135325 | | A712 | SEAL KIT, NCC, RS-8-B-PK2-CS10-MS-SK | | | EA | | | 20 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10135325 | | A712 | SEAL KIT, NCC, RS-8-B-PK2-CS10-MS-SK | | | EA | | | 48 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10135325 | | A712 | SEAL KIT, NCC, RS-8-B-PK2-CS10-MS-SK | | | EA | | | 36 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10135325 | | A712 | SEAL KIT, NCC, RS-8-B-PK2-CS10-MS-SK | | | EA | | | 60 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10135326 | | A712 | TOOL KIT, RS CPLR, NCC, RS-8-TK-3 | | | EA | | | 2 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000663-02 | 281788-2 | A718 Rack A Sec 7 | COUPLER,HYD,MALE, 250,10KPSI,1/2 FNPT A | | Non-project specific | EA | | | 1 | | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|----------|---------------|-------------|-----------|----------|------------------|----------------|--------------|-----|-----------|-----------|-------------|--------|--------------|-------------|-----|-----------|
| Aker - Mobile | Aker Solutions | B813-060176-18 | 1401/B/M5201 | A718 Rack A Sec 7 | ICON TOPSIDE 1200 DUAL CHANNEL ELECTRICA | | FIELDWOOD – DANTZLER | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299::1 | A718 Rack A Sec 7 | Coupling,1/2",J/O,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299::2 | A718 Rack A Sec 7 | Coupling,1/2",J/O,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299::3 | A718 Rack A Sec 7 | Coupling,1/2",J/O,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299::4 | A718 Rack A Sec 7 | Coupling,1/2",J/O,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299::5 | A718 Rack A Sec 7 | Coupling,1/2",J/O,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299::6 | A718 Rack A Sec 7 | Coupling,1/2",J/O,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299::7 | A718 Rack A Sec 7 | Coupling,1/2",J/O,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10063176 | 310299::8 | A718 Rack A Sec 7 | Coupling,1/2",J/O,Male,15KSI, 9/16 M/P | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10194964 | 1034146-34 | A718 Rack A Sec 7 | TEST CONNECTOR, DIVER MATE CE PLUG | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10194964 | 1034146-35 | A718 Rack A Sec 7 | TEST CONNECTOR, DIVER MATE CE PLUG | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10189751 | SIM-13-11-12126 | A718 Rack A Sec 7 | SIMULATOR, ACOUSTIC PIG DETECTOR | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10198475 | SIM-13-11-12127 | A718 Rack A Sec 7 | SIMULATOR, ACOUSTIC SAND DETECTOR | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B814-060480-12 | 2058-SN-030 | A718 Rack A Sec 7 | ICON TOPSIDE EXTENDED 1200 MODEM MODULE | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000680-81 | 1016399-42 | A718 Rack A Sec 7 | CONN-ELECT, ROV MATEABLE, RECEPT, 4 | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000680-81 | 1016399-43 | A718 Rack A Sec 7 | CONN-ELECT, ROV MATEABLE, RECEPT, 4 | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10144574 | FNS19060RNZ | A718 Rack A Sec 7 | CONVERTOR, ETHERNET & OPTICAL, RGD | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10186368 | 15041809 | A718 Rack A Sec 7 | COMPUTER PART, 1U KEYBORD/FLIPTOP MONITO | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-060312-06 | 1111503985/BF | A718 Rack A Sec 7 | POWER SUPPLY TYPE SEM10S, MAINS 90-240V | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10246629 | 6099 | A718 Rack A Sec 7 | AUXILIARY CONNECTION UNIT (ACU) | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B814-060049-01 | TSCL2106-SN-001 | A718 Rack A Sec 7 | MODEM SWITCH MODULE ASSY | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10241616 | 333070001 | A718 Rack A Sec 7 | CABLE ASSY,8W CANNON S TO 12W CONN P, 6' | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10240031 | 333069001 | A718 Rack A Sec 7 | CABLE ASSY,12W CANNON P-12W CANNON R,25' | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10241291 | 1092062-2 | A718 Rack A Sec 7 | CABLE ASSY, 6W ROV PLUG - 8W CANNON RCPT | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10241290 | 1092061-2 | A718 Rack A Sec 7 | CABLE ASSY,4W ROV RCPT - 12W CANNON PLUG | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10222161 | 1079132-6 | A718 Rack A Sec 7 | CABLE ASSY, 4 WAY ROV PLUG - CANNON CONN | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10222024 | 1079130-8 | A718 Rack A Sec 7 | CABLE ASSY,8WAY CANNON PLUG-CANNON RCPT | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10241279 | 1092060-2 | A718 Rack A Sec 7 | CABLE ASSY,8W ROV RCPT - 12W CANNON PLUG | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000163-64 | 294477::11 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000163-64 | 294477::18 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000163-64 | 294477::40 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000163-64 | 294477::28 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000163-64 | 294477::6 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000163-64 | 294477::25 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000163-64 | 294477::32 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-000163-64 | 294477::30 | A718 Rack A Sec 7 | COUPLER PART, HYDR,GUIDE,0.250OR .500 FA | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10232780 | 312376-1 | AWN1 Awning 1 | ASSY, SCM TEST STAND, NOBLE | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B811-000182-14 | 4500643069-10-1 | F001 Floor Area Sec1 | SHIPPING FRAME ASSY, CONTROL MODULE | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B811-000182-14 | 69038/03-001 | F004 Floor Area Sec4 | SHIPPING FRAME ASSY, CONTROL MODULE | | FIELDWOOD – SWORDFISH | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10257558 | 218637-1 | F004 Floor Area Sec4 | SCM ASSY, 22 HYDR, 4 ELEC, 4 ROV CONNS | | FIELDWOOD - DANTZLER | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B814-000735-65 | SN000156 | F006 Floor Area Sec6 | CSL ASSY,MCS,TWO CABINET,NOBLE,ENERGY | | FIELDWOOD - LORIEN | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10325709 | 19-10-3308-OM | F007 Floor Area Sec7 | ACOSTIC SAND DETECTOR FUNNEL, 5.56" OD | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10239579 | 306108-1 | G206 Rack G Sec 2 | ASSY,IPC,DUAL PSU,DUAL DIO32 W/ SMAC56 | | FIELDWOOD – BIGBEND | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10258430 | 4500861523-10-001 | G206 Rack G Sec 2 | CASE, TRANSPORT, 1630 | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | 10258430 | 4233351-1 | G206 Rack G Sec 2 | CASE, TRANSPORT, 1630 | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B815-061245-04 | 10357810 | J003 Rack J Sec 00 | BAKER HUGHES PQ HARVEST DHPT SUBSEA I/F | | Non-project specific | EA | | | 1 | | 0 | | | |
| Aker - Mobile | Aker Solutions | B811-000216-49 | 69397/03-001 | J103 Rack J Sec 1 | TEST EQPT ASSY,TEST SET WINDOWS BASED,SE | | FIELDWOOD – SWORDFISH | EA | | | 1 | | 0 | | | |

48

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aker - Mobile | Aker Solutions | 10056594 | 138753-1 | J103 Rack J Sec 1 | TEST EQUIP ASSY, TEST SET,9600 BAUD RATE | | Non-project specific | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB15-000731-05 | 1HTYA13472 | J103 Rack J Sec 1 | COMPUTER,LAPTOP,PANASONICTOUGHBOOK | | FIELDWOOD – RATON | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB14-000748-78 | 001956-0020A | J103 Rack J Sec 1 | MCS EQUIP ASSY,SUBSEA ELECT POWER UNIT,3 | | FIELDWOOD – SWORDFISH | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB14-000748-78 | 002271-0001A | J103 Rack J Sec 1 | MCS EQUIP ASSY,SUBSEA ELECT POWER UNIT,3 | | Non-project specific | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | 10187605 | 300189-1 | J103 Rack J Sec 1 | RACK, SEPA 120/208/240, 600-1200, 2.5KVA | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB15-000695-37 | 1007794-22 | J103 Rack J Sec 1 | CONN,ELECT,FLYING TEST RCPT, 8-WAY,W | | FIELDWOOD – DANTZLER | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | 10236194 | 301468-1 | J103 Rack J Sec 1 | RACK, SEPA, 120/208/240, 300-600, 2.5KVA | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | 10233298 | 22560-02.001 | J103 Rack J Sec 1 | SIMULATOR, DIGITAL PRESS/TEMP, ROXAR | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | 10190723 | 8142 | J303 J303 | ONLINE CONTROL & CONNECTION PANEL, MCS | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | 10232704 | 310899-1 | J501 J501 | TEST EQUIP ASSY, PETU, 1200 BAUD 2 of 2 | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | 10232781 | 313393-1 | K031 Rack K Sec 2 | ASSY, DUMMY SCM TEST & FLUSH PLATE | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | 10238674 | 143604-1 | K032 Rack K Sec 2 | SUBSEA CONTROL MODULE-MARATHON OZONA | | FIELDWOOD – DANTZLER | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB11-000117-70 | 74482/04-001 | K033 Rack K Sec 2 | POD ASY ELEC/HYD MARINERSWORDFISH | | FIELDWOOD – SWORDFISH | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB11-000117-70 | 69035/03-001 | K034 Rack K Sec 2 | POD ASY ELEC/HYD MARINERSWORDFISH | | FIELDWOOD – SWORDFISH | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB11-000117-89 | 76956/05-001 | K035 Rack K Sec 2 | SCM ASSY,ELEC/HYDR,(21) SOLENOID VLVS,(6 | | FIELDWOOD – LORIEN | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | 10034781 | 4009455/07-001 | K036 Rack K Sec 2 | SCM ASSY, 21 HYDR, 5 ELEC, 4 ROV CONNS | | FIELDWOOD – DANTZLER | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB15-000731-05 | 9CX5A61484 | MQ01 Mobile Rack QRT | COMPUTER,LAPTOP,PANASONICTOUGHBOOK | | Non-project specific | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB15-000782-48 | 4S00516448-0030 | NTFD Not Found | COMPUTER PART,1756-PA72 CONTROL LOGIX P/ | | Non-project specific | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB15-000782-52 | 4S00744743-0010 | NTFD Not Found | COMPUTER PART,1756-IF8,ANLG INPUT 8 CH | | Non-project specific | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | 10284242 | 4S00589952-0020 | NTFD Not Found | PORTSERVER, DIGI TS16 MEI INTERNATIONAL | | Non-project specific | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB15-000731-77 | S0005939-002 | RCVD Received | COMPUTER,SYSTEI, RACKMOUNT IPC,MCS | | FIELDWOOD – LORIEN | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB15-000731-05 | 1KTYA41555 | TB03 Test Bay 03 | COMPUTER,LAPTOP,PANASONICTOUGHBOOK | | FIELDWOOD - RATON | EA | | | 1 | | | 0 | | |
| Aker - Mobile | Aker Solutions | BB11-000182-14 | 4S00643069-10-2 | YD1G Yard 1 Sec G | SHIPPING FRAME ASSY, CONTROL MODULE | | FIELDWOOD – BIGBEND | EA | | | 1 | | | 0 | | |
| Archer - Houston | Archer | 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 | USSC-13-0751 | | 7 5/8" CFLEX SS - 145 ksi 94SX, assembled with pup joints | | | EA | | | | | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 18137-G | | Rack No. D014 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 27,972.48 | 7 | 291.38 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 19139-G | | Rack No. D009 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 THREAD | | | EA | NEW | 3,805.45 | 1 | 40.70 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 19421-H | | Rack No. D014 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 20,666.88 | 5 | 215.28 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 23294-E | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | USED | 4,030.08 | 1 | 41.98 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 23294-E | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | USED | 4,121.28 | 1 | 42.93 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 23312-E | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | USED | 4,120.32 | 1 | 42.92 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 25037-H | | Rack No. A02 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 19,645.92 | 7 | 273.62 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 25037-H | | Rack No. A06 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 14,214.25 | 5 | 197.97 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 25037-I | | Rack No. G16 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,903.59 | 1 | 40.44 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 25037-I | | Rack No. G16 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 5,554.45 | 2 | 77.36 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 25166-C | | Rack No. CROA (C) | 17 7/8" TENARIS P-110 PUP JOINTS, 93.50#, HYD 521 THREAD | | | EA | NEW | 3,740.00 | 2 | 40.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 25166-C | | Rack No. CROA (C) | 17 7/8" TENARIS P-110 PUP JOINTS, 93.50#, HYD 521 THREAD | | | EA | NEW | 1,870.00 | 1 | 20.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 25526 | | Rack No. K05 (C) | 13 5/8" TAMSA Q-125 HC X-OVER, 88.20#, HYD 523 DPLS PIN THREAD | | | EA | NEW | 1,852.20 | 1 | 21.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 25782-B | | Rack No. B07 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 3,993.60 | 1 | 41.60 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 25782-C | | Rack No. G04 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 27,802.56 | 7 | 289.61 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 27796-E | | Rack No. G04 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 4,199.04 | 1 | 43.74 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 27922-E | | Rack No. A07 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, HYD 523 DPLS THREAD | | | EA | NEW | 5,976.63 | 2 | 83.24 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 27922-E | | Rack No. A07 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, HYD 523 DPLS THREAD | | | EA | NEW | 20,620.96 | 7 | 287.20 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 27923-H | | Rack No. D25 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 5,115.06 | 2 | 81.45 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 27923-I | | Rack No. G16 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,527.07 | 1 | 40.24 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 28360-O | | Rack No. BLDG (C) | 9 7/8" TENARIS TN110CR135 CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 100,417.20 | 39 | 1,599.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29030-B | | Rack No. G04 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | USED | 8,457.60 | 2 | 88.10 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29102-C | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 28,067.52 | 7 | 292.37 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29102-C | | Rack No. G04 (C) | 16" U STEEL Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 4,107.84 | 1 | 42.79 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29308 | | Rack No. H05 (C) | 17 7/8" TENARIS P-110 CASING, 93.50#, HYD 521 THREAD | | | EA | NEW | 289,634.95 | 73 | 3,097.70 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29344-D | | Rack No. ACRE (C) | 10 3/4" TENARIS TN-125 HC PUP JOINTS, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 0.00 | 2 | 0.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29345-C | | Rack No. N00 (C) | 14" TENARIS TN-125 HC PUP JOINTS, 114.00#, TSH 523 DPLS THREAD | | | EA | NEW | 2,280.00 | 1 | 20.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29346 | | Rack No. J47 (C) | 13 5/8" UNKNOWN MFG TN-125 HC PUP JOINTS, 88.20#, TSH 523 DPLS THREAD | | | EA | NEW | 7,056.00 | 4 | 80.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29768-B | | Rack No. D47 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 3,001.20 | 1 | 41.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29768-B | | Rack No. ACRE (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 3,059.76 | 1 | 41.80 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29768-C | | Rack No. C38 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 84,014.57 | 27 | 1,147.74 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29815-E | | Rack No. A08 (C) | 10 3/4" TENARIS TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 43,249.49 | 14 | 590.84 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29815-E | | Rack No. B808 (C) | 10 3/4" TENARIS TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 34,264.20 | 11 | 468.09 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29816-C | | Rack No. D25 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,385.14 | 1 | 37.98 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29816-E | | Rack No. F08 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 19,788.91 | 8 | 315.11 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 29816-F | | Rack No. G16 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,477.46 | 1 | 39.45 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 30096-C | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 16,572.48 | 4 | 172.63 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 30096-C | | Rack No. G04 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 173,958.72 | 42 | 1,812.07 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 30096-D | | Rack No. N19 (C) | 16" TENARIS Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 28,842.24 | 7 | 300.44 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31235-E | | Rack No. N08 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 258,966.95 | 66 | 2,769.70 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31235-F | | Rack No. N08 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 35,088.68 | 9 | 375.28 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31235-F | | Rack No. N08 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 7,954.98 | 2 | 85.08 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31492-B | | Rack No. C23 (C) | 17 7/8" TENARIS P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 27,114.07 | 7 | 289.99 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31492-B | | Rack No. C23 (C) | 17 7/8" TENARIS P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 91,215.80 | 24 | 975.57 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31640-B | | Rack No. ACRE (C) | 10 3/4" TENARIS TN-125 HC PUP JOINTS, 73.20#, MAC II THREAD | | | EA | NEW | 0.00 | 1 | 0.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31654-C | | Rack No. C25 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 3,121.25 | 1 | 42.64 | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Arctic Pipe - Houston | Arctic Pipe | 31654-C | | Rack No. C15 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II DPLS THREAD | | | EA | NEW | 3,126.37 | 1 | 42.71 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31660-B | | Rack No. G16 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,815.32 | 1 | 44.83 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31666-8 | | Rack No. G16 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II THREAD | | | EA | USED | 12,488.65 | 4 | 170.61 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31721-B | | Rack No. A08 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,281.09 | 1 | 31.77 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31721-B | | Rack No. A08 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 9,494.11 | 3 | 132.23 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31721-B | | Rack No. A08 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 23,336.44 | 8 | 325.02 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31729-B | | Rack No. 838 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 47,700.37 | 19 | 759.56 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31729-C | | Rack No. F08 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 5,157.14 | 2 | 82.12 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31788-C | | Rack No. N19 (C) | 16" DALMINE Q-125 IC CASING, 96.00#, TSH 513 DPLS THREAD | | | EA | NEW | 19,802.88 | 5 | 206.28 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31788-C | | Rack No. N19 (C) | 16" DALMINE Q-125 IC CASING, 96.00#, TSH 513 DPLS THREAD | | | EA | NEW | 464,681.28 | 117 | 4,840.43 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31967-B | | Rack No. M21 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 11,918.45 | 3 | 127.47 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31967-B | | Rack No. M21 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 DPLS THREAD | | | EA | NEW | 296,149.10 | 76 | 3,167.37 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31969-B | | Rack No. N08 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, TSH 521 DPLS THREAD | | | EA | NEW | 4,259.86 | 1 | 45.56 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 31970-B | | Rack No. N08 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, TSH 521 DPLS THREAD | | | EA | NEW | 4,104.65 | 1 | 43.90 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32027 | | Rack No. J03 (C) | 13 5/8" TAMSA TN-125 HC CASING, 88.20#, HYD 523 THREAD | | | EA | NEW | 71,636.04 | 19 | 812.20 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32463-8 | | Rack No. G16 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 11,151.26 | 4 | 155.31 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32463-8 | | Rack No. G16 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 2,895.69 | 1 | 40.33 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32779-B | | Rack No. N19 (C) | 16" DALMINE Q-125 IC CASING, 96.00#, TSH 513 DPLS THREAD | | | EA | NEW | 3,688.32 | 1 | 38.42 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32781-B | | Rack No. C23 (C) | 10 3/4" TAMSA TN-125 HC CASING, 73.20#, MAC II THREAD | | | EA | NEW | 3,087.58 | 1 | 42.18 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 32887 | | Rack No. B20 (C) | 10 3/4" UNKNOWN MFG 41.45 M X-OVER, 79.20#, TSH 563 PIN THREAD | | | EA | NEW | 245.52 | 1 | 3.10 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33395-B | | Rack No. CC06 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 89,016.96 | 20 | 927.26 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33456-C | | Rack No. CC06 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 22,329.60 | 5 | 232.60 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33457-B | | Rack No. CC06 (C) | 16" DALMINE Q-125 CASING, 96.00#, HYD 511 THREAD | | | EA | NEW | 4,120.32 | 1 | 42.92 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33468-B | | Rack No. G16 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,805.23 | 1 | 39.07 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33469-B | | Rack No. G16 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 21,109.20 | 7 | 294.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33469-B | | Rack No. G16 (C) | 11 7/8" TAMSA TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 13,644.87 | 4 | 190.04 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33519-D | | Rack No. H19 (C) | 14" TAMSA Q-125 ICY PUP JOINTS, 116.00#, TSH 523 THREAD | | | EA | USED | 0.00 | 1 | 0.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33521-B | | Rack No. M21 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | NEW | 2,453.60 | 1 | 39.07 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33533-B | | Rack No. M21 (C) | 9 7/8" TAMSA TN-125 HC CASING, 62.80#, TSH 523 DPLS THREAD | | | EA | USED | 19,441.00 | 8 | 309.57 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33553-B | | Rack No. BLDG (C) | 16" U STEEL Q-125 HC X-OVER, 96.00#. THREAD | | | EA | NEW | 2,310.72 | 6 | 24.07 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33554-B | | Rack No. BLDG (C) | 16" U STEEL Q-125 HC X-OVER, 96.00#. THREAD | | | EA | NEW | 2,404.80 | 6 | 25.05 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33556-C | | Rack No. D24 (C) | 7 3/4" TAMSA Q-125 IC CASING, 46.10#, TSH 523 THREAD | | | EA | NEW | 2,138.58 | 1 | 46.39 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33558-B | | Rack No. JC5E (C) | 10 3/4" UNKNOWN MFG TN-125 HC PUP JOINTS, 73.20#, MAC II DPLS THREAD | | | EA | USED | 0.00 | 1 | 0.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33564 | | Rack No. D15 (C) | 16" DALMINE Q-125 CASING, 96.00#, TSH 511 THREAD | | | EA | USED | 4,168.32 | 1 | 43.42 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33934 | | Rack No. F13 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, TSH 521 DPLS THREAD | | | EA | NEW | 42,585.51 | 11 | 455.46 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33935 | | Rack No. F12 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 THREAD | | | EA | NEW | 4,314.09 | 1 | 46.14 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33936 | | Rack No. F12 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 THREAD | | | EA | NEW | 3,833.50 | 1 | 41.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33937 | | Rack No. F12 (C) | 17 7/8" DALMINE P-110 CASING, 93.50#, HYD 521 THREAD | | | EA | NEW | 3,833.50 | 1 | 41.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33952 | | Rack No. DD13 (C) | 16" DALMINE Q-125 CASING, 96.00#, TSH 511 THREAD | | | EA | NEW | 49,555.20 | 12 | 516.20 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33953 | | Rack No. DD10 (C) | 16" DALMINE Q-125 CASING, 96.00#, TSH 511 THREAD | | | EA | NEW | 18,432.00 | 4 | 192.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33954 | | Rack No. DD13 (C) | 16" DALMINE Q-125 CASING, 96.00#, TSH 511 THREAD | | | EA | NEW | 4,880.64 | 1 | 50.84 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33955 | | Rack No. DD13 (C) | 16" DALMINE Q-125 CASING, 96.00#, TSH 511 THREAD | | | EA | NEW | 4,497.60 | 1 | 46.85 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33974-E | | Rack No. H19 (C) | 14" TAMSA Q-125 ICY PUP JOINTS, 116.00#, TSH 523 THREAD | | | EA | NEW | 1,740.00 | 1 | 15.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33974-EE | | Rack No. H19 (C) | 14" TAMSA Q-125 ICY PUP JOINTS, 116.00#, TSH 523 DPLS PIN THREAD | | | EA | NEW | 0.00 | 1 | 0.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33977 | | Rack No. BLDG (C) | 16" 4330.130 X-OVER, 96.00#, TSH 511 PIN THREAD | | | EA | USED | 288.00 | 1 | 3.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 33978 | | Rack No. BLDG (C) | 17 7/8" 41.45 M X-OVER, 93.50#, TSH 511 PIN THREAD | | | EA | NEW | 280.50 | 1 | 3.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34053-B | | Rack No. F07 (C) | 14" TAMSA TN-125 HC CASING, 113.00#, TSH 523 DPLS THREAD | | | EA | USED | 47,212.53 | 10 | 417.81 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34053-B | | Rack No. F07 (C) | 14" TAMSA TN-125 HC CASING, 113.00#, TSH 523 DPLS THREAD | | | EA | USED | 19,043.89 | 4 | 168.53 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34086 | | Rack No. B05 (C) | 10 1/8" JFE JFE12ST CASING, 79.22#, SLUI THREAD | | | EA | NEW | 351,970.50 | 108 | 4,442.95 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34091 | | Rack No. B05 (C) | 10 1/8" JFE JFE12ST CASING, 79.22#, SLUI THREAD | | | EA | USED | 6,618.83 | 2 | 83.55 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34092-B | | Rack No. CROA (C) | 11 7/8" TENARIS Q-125 HC PUP JOINTS, 71.80#, HYD 523 THREAD | | | EA | NEW | 718.00 | 1 | 10.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34093-8 | | Rack No. CROA (C) | 11 7/8" TENARIS Q-125 HC PUP JOINTS, 71.80#, HYD 523 DPLS PIN THREAD | | | EA | NEW | 718.00 | 1 | 10.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34094-B | | Rack No. CROA (C) | 11 7/8" TENARIS Q-125 HC PUP JOINTS, 71.80#, HYD 523 DPLS BOX THREAD | | | EA | NEW | 718.00 | 1 | 10.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34100 | | Rack No. A06 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 25,716.61 | 9 | 358.17 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34101 | | Rack No. ACRE (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, HYD 523 DPLS PIN THREAD | | | EA | USED | 1,493.44 | 1 | 20.80 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34102 | | Rack No. ACRE (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#. THREAD | | | EA | USED | 1,062.64 | 1 | 14.80 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34103 | | Rack No. G07 (C) | 10 1/8" JFE JFE12ST CASING, 79.22#, SLUI THREAD | | | EA | NEW | 48,720.30 | 15 | 615.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34105 | | Rack No. A06 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | NEW | 23,056.42 | 8 | 321.12 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34149 | | Rack No. BLDG (C) | 10 1/8" UNKNOWN MFG 4330.130 X-OVER, 79.22#, SLUII PIN THREAD | | | EA | NEW | 213.89 | 1 | 2.70 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34150-B | | Rack No. BLDG (C) | 14" UNKNOWN MFG 4330.130 X-OVER, 113.00#, TSH 523 PIN THREAD | | | EA | USED | 349.17 | 1 | 3.09 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34151 | | Rack No. BLDG (C) | 7 3/4" UNKNOWN MFG 4330.130 X-OVER, 46.10#, TSH 523 PIN THREAD | | | EA | NEW | 124.01 | 1 | 2.69 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34152 | | Rack No. BLDG (C) | 11 7/8" UNKNOWN MFG 4141-.130 X-OVER, 71.80#, TSH 523 PIN THREAD | | | EA | NEW | 203.19 | 1 | 2.83 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34181 | | Rack No. E12 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 2,866.97 | 1 | 39.93 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34181 | | Rack No. E12 (C) | 11 7/8" TENARIS TN-125 HC CASING, 71.80#, TSH 523 DPLS THREAD | | | EA | USED | 17,373.45 | 6 | 241.97 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34182 | | Rack No. F12 (C) | 10 1/8" JFE JFE12ST CASING, 79.22#, SLUII THREAD | | | EA | USED | 12,913.65 | 4 | 163.01 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 34926 | | Rack No. A07 (C) | 14" TAMSA Q-125 HP X-OVER, 113.00#, HYD 523 THREAD | | | EA | NEW | 2,481.48 | 1 | 21.96 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36073-C | | Rack No. D006 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | NEW | 4,429.60 | 1 | 39.20 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36073-C | | Rack No. D006 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | NEW | 39,126.25 | 9 | 346.25 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-B | | Rack No. D08 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 17,946.66 | 4 | 158.82 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-B | | Rack No. D009 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 15,400.77 | 4 | 136.29 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-C | | Rack No. D06 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 8,890.84 | 2 | 78.68 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-C | | Rack No. D007 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 102,338.45 | 23 | 905.65 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-C | | Rack No. G08 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 364,709.76 | 82 | 3,227.52 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36256-C | | Rack No. G06 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 547,064.64 | 123 | 4,841.28 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36274-C | | Rack No. D34 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 4,551.64 | 1 | 40.28 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36274-C | | Rack No. D34 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 121,289.68 | 27 | 1,073.36 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36292-C | | Rack No. D007 (C) | 14 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 523 THREAD | | | EA | USED | 132,205.20 | 28 | 1,139.70 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36293-C | | Rack No. D007 (C) | 14" TENARIS Q-125 ICY CASING, 116.00#, TSH 523 THREAD | | | EA | USED | 23,560.76 | 5 | 203.11 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 36464-C | | Rack No. D007 (C) | 14" TENARIS TN-125 HC CASING, 113.00#, TSH 523 THREAD | | | EA | USED | 13,571.30 | 3 | 120.10 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. ACRE (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 705,159.00 | 126 | 5,166.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. B26 (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 324,804.48 | 58 | 2,379.52 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. B29 (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 362,750.12 | 63 | 2,657.51 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. B38 (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 78,351.00 | 14 | 574.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. B39 (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 16,789.50 | 3 | 123.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 39628 | | Rack No. L13 (C) | 16 1/4" TENARIS Q-125 ICY CASING, 136.50#, TSH 613 DPLS THREAD | | | EA | NEW | 392,795.13 | 70 | 2,877.62 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 40029 | | Rack No. ACRE (C) | 10 1/8" JFE UHP-15CR-125 CASING, 79.30#, PLAIN END THREAD | | | EA | NEW | 64,819.82 | 20 | 817.40 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44001 | | Rack No. H17 (A) | LINE PIPE 8 5/8" 1.316" 105# UKN GRADE VALLOUREC (BARE) 40 FT AVG | | | EA | | 200,000.00 | 20 | 0.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44002 | | Rack No. H17 (A) | LINE PIPE 6" X 1.04" 62.10# PLAIN END TENARIS (BARE) | | | EA | | 13,000.00 | 13 | 0.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44003 | | Rack No. H17 (A) | LINE PIPE 8.625" X 1.201" 95# UKN GRADE (BARE) | | | EA | | 11,000.00 | 11 | 0.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44004 | | Rack No. H17 (A) | LINE PIPE 8.625" X 1.201" 95# UKN GRADE (COATED) | | | EA | | 6,000.00 | 6 | 0.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44111 | | Rack No. H17 (A) | LINE PIPE 10.75" X 0.625" 68.1# UKN GRADE PE TENARIS (BARE) | | | EA | | 5,000.00 | 5 | 0.00 | | 0 | | |
| Arctic Pipe - Houston | Arctic Pipe | 44111-B | | Rack No. H17 (A) | LINE PIPE 10.75" X 0.625" 68.1# UKN GRADE PE TENARIS (COATED) | | | EA | | 4,000.00 | 4 | 0.00 | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | W/% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker Hughes - Broussard | Baker Hughes | Wet Mate Box B | | South wall | E SubSea Connector, Wet mate equipment pelican case. Included test plugs, THRT back up tools, spare parts. | | TA3 | EA | Used | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | PGA-30-003_C | | E-3 | E TEC, TEC 0.250_OD 28WT_INC 1C E_115 110C | | TA-3 | EA | Used | | 20443 | | 4.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | Wet Mate Box A | | South wall | E SubSea Connector, Wet mate equipment pelican case. Included rebuild kits primary male back up female and male. | | TA3 | EA | Used | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | Wet Mate Box C | | South wall | E SubSea Connector, Primary Install Box - Wet Mate Equipment, Male to be installed into Tubing Hanger Gold Pins (Part of MWC) PMP-0178 qty 3 Male Wetmate Connector (MWC)PGA-50-056 Qty 1 SN 11890392 (Primary, used for SIT. Needs to be rebuilt.) MWC Rebuild KitsPFIK | | TA3 | EA | Used | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | PFRK-24-6870 | | Locker 7 | E Fitting, FRK Inc 825 0.25" O Gauge CH_S T/T | | TA3 | EA | | | 3 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0J0290300 | | Locker 7 | E Fitting, SEAL CARRIER 1.368 IN OD 0.258 IN ID 2.904 IN LG BMS-S308 17-4 PH 100 MYS 29-33 HRC CRITICAL DRW: J02-903-00.1 | | TA3 | EA | | | 3 | | 1298 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10413131 | | Locker 7 | E Fitting, CHAMFERED SEAL 95 DURO FKM (VITON) 1.225 IN OD .939 IN ID .177 IN LG CRITICAL BATCH MANAGED F/ WELL FLUID: CALCIUM BROMIDE F/ TEMPERATURE: 166 DEG F F/ STATIC APPLICATION | | TA3 | EA | | | 22 | | 90.12 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10413129 | | Locker 7 | E Fitting, BACK-UP RING 200 SERIES 1.180/1.183 IN OD .960/.963 IN ID 0.078 IN LG BPS-F202 (PE35) BACK-UP RINGS W/SCARF 45 DEG CONCAVE CRITICAL BATCH MANAGED .048 IN THICKNESS VIRGIN PEEK DRW: 274-262-01.21 | | TA3 | EA | | | 22 | | 19.81 | | | |
| Baker Hughes - Broussard | Baker Hughes | HWWB123V40 | | Locker 7 | E Fitting, O-RING 123 BPS-B201 (V40) VITON 90 DURO | | TA3 | EA | | | 22 | | 8.15 | | | |
| Baker Hughes - Broussard | Baker Hughes | Wet Mate Special Tools | | Locker 7 | E SubSea Connector, Wet mate equipment yellow tool box. Included special install tools. | | TA3 | EA | Used | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | HWWB023V40 | | Locker 7 | E Fitting, 023 O-RING BPS-B201 (V40) O-RING | | TA3 | EA | | | 22 | | 5.08 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10316238 | | Locker 7 | E Fitting, Fitting 1/4" INC825 Swagelock Nut, INC825-402-1 | | TA3 | EA | | | 30 | | 44.56 | | | |
| Baker Hughes - Broussard | Baker Hughes | HWWB213V40 | | Locker 7 | E Accessory, 213 O-RING BPS-B201Q (V40) O-RING | | TA3 | EA | | | 22 | | 8.98 | | | |
| Baker Hughes - Broussard | Baker Hughes | PMA-6828 | | Locker 7 | E Fitting, Swagelok 1/4" Inc 825 Ferrule Set Front Ferrule 825-403-1 Back Ferrule 825-404-1 Front & Rear, PN Inc 825-400-SET | | TA3 | EA | | | 30 | | 51.24 | | | |
| Baker Hughes - Broussard | Baker Hughes | PGA-33-09436_C | | CON 6 | CI Control Line, Tube 1/4" x 0.065" WT INC825, Encap | | MC 353 #1 | EA | | | 1500 | | 7.89 | | | |
| Baker Hughes - Broussard | Baker Hughes | PGA-34-09434_C | | D-5 | CI Control Line, Dual FPC Santoprene 2 x 1/4 Tube Incoloy | | MC 353 #1 | EA | | | 13300 | | 7.89 | | | |
| Baker Hughes - Broussard | Baker Hughes | H30705002SRNB1 | | 1-13-B | E Gauge, DHPT Gauge, Triple SurSENS 175HP Gauge for IWS: tbg/ann/ remote (shroud), 30,000 psia, 200C, Accuracy: .02%, Resolution: .0001 psi, temp res: .0001F, ext testable connection | | EA | New | | 1 | | 112500 | | | | |
| Baker Hughes - Broussard | Baker Hughes | H30833000SRNB1 | | 1-15-BL | CI Special Tool, Y-Block, 1/2" Control line, f/5.5" 29.7#, Alloy 718, Ext Testable Jam Nut fittings, Alloy 718, one 1/2" top, two 1/2" down, four bypass slots, 15K Rated | | Green SS #2 ST2 | EA | New | | 1 | | 29680 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940423RNB1 | | 1-23-AL | Protector, Cannon - 4500-A-06 | | Blue SS #4 | EA | New | | 4 | | 79.81 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940425RNB1 | | 1-23-AL | Protector - Stand-off, Cannon - 5500-A-06N11.3G1.16 | | Blue SS #4 | EA | New | | 1 | | 1740 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940427RNB1 | | 1-23-AL | Protector - Stand-off, Cannon - 6248-B-72RG1.57-XT | | Blue SS #4 | EA | New | | 1 | | 931.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940424RNB1 | | 1-23-AL | Protector - Stand-off, Cannon - 4500-A-06N9.6G1.66 | | Blue SS #4 | EA | New | | 1 | | 1740 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940418RNB1-MOD | | 1-23-AL | Protector - Stand-off, Cannon - 6248-A-72R/06OCG1.57-XT-MOD | | Blue SS #4 | EA | New | | 1 | | 1862.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940419RNB1 | | 1-23-AL | Protector, Cannon - 5500-A-72R/77DC | | Blue SS #4 | EA | New | | 22 | | 121.69 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940427RNB1-MOD | | 1-23-AL | Protector - Stand-off, Cannon - 6248-B-72RG1.57-XT-MOD | | Blue SS #4 | EA | New | | 1 | | 931.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940422RNB1 | | 1-23-AL | Protector - Mid Joint, Cannon - 5500-C-72R/77DC | | Blue SS #4 | EA | New | | 3 | | 60.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940440RNB1 | | 1-23-AL | Protector - Mid Joint, Cannon - 4500-C-06 | | Blue SS #4 | EA | New | | 3 | | 39.88 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940445RNB1 | | 1-23-AL | Protector - Splice, Cannon - 4500-30-06 | | Blue SS #4 | EA | New | | 2 | | 589 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940447RNB1 | | 1-23-AL | Protector - Splice, Cannon - 5500-30-72R | | Blue SS #4 | EA | New | | 2 | | 589 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940446RNB1 | | 1-23-AL | Protector - Splice, Cannon - 5500-40-72R/77DC | | Blue SS #4 | EA | New | | 2 | | 1106 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940426RNB1 | | 1-23-AR | Protector, Cannon - 5500-A-72R | | Blue SS #4 | EA | New | | 76 | | 87.31 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940428RNB1 | | 1-6-A | Protector, Cannon - 4500-A-81 | | Green SS #2 ST2 | EA | New | | 4 | | 79.81 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940448RNB1-MOD | | 1-6-A | Protector - Stand-off, Cannon - 6248-B-61RG1.57-XT-MOD | | Green SS #2 ST2 | EA | New | | 1 | | 931.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940432RNB1 | | 1-6-A | Protector - Stand-off, Cannon - 5500-A-81N11.3G1.16 | | Green SS #2 ST2 | EA | New | | 1 | | 1740 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940433RNB1 | | 1-6-A | Protector - Stand-off, Cannon - 4500-A-81N9.6G1.66 | | Green SS #2 ST2 | EA | New | | 1 | | 1740 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940421RNB1 | | 1-6-A | Protector, Cannon - 5500-55-72R/77DC | | Blue SS #4 | EA | New | | 2 | | 1105 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940448RNB1 | | 1-6-A | Protector - Stand-off, Cannon - 6248-B-61RG1.57-XT | | Green SS #2 ST2 | EA | New | | 1 | | 931.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940417RNB1 | | 1-6-A | Protector - Mid Joint, Cannon - 4500-C-81 | | Green SS #2 ST2 | EA | New | | 3 | | 42.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940435RNB1 | | 1-6-A | Protector - Splice, Cannon - 4500-30-81 | | Green SS #2 ST2 | EA | New | | 2 | | 589 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940434RNB1 | | 1-6-A | Protector - Mid Joint, Cannon - 5500-C-61R/77DC | | Green SS #2 ST2 | EA | New | | 1 | | 64.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940430RNB1 | | 1-6-A | Protector - X-Over, Cannon - 5500/7063-40-61R/77DCX0 | | Green SS #2 ST2 | EA | New | | 1 | | 1106 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940438RNB1 | | 1-6-A | Protector - VIT, Cannon - 72058 - VIT Sleeve | | Green SS #2 ST2 | EA | New | | 5 | | 2860 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940437RNB1 | | 1-6-A | Protector - VIT, Cannon - 72057 - VIT Sleeve | | Green SS #2 ST2 | EA | New | | 14 | | 2594 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940429RNB1 | | 1-6-A | Protector - VIT, Cannon - 7063-50-61R_77DCSVIT | | Green SS #2 ST2 | EA | New | | 13 | | 756.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940444RNB1 | | 1-6-A | Protector - X-Over, Cannon - 7063_5500-40-61R_77DCX0 | | Green SS #2 ST2 | EA | New | | 1 | | 1106.25 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940436RNB1 | | 1-6-A | Protector - Splice, Cannon - 5500-40-61R/77DC | | Green SS #2 ST2 | EA | New | | 2 | | 1106 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940439RNB1 | | 1-6-A | Protector - Splice, Cannon - 5500-30-61R | | Green SS #2 ST2 | EA | New | | 2 | | 589 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940442RNB1 | | 1-6-A | Protector, Cannon - 5500-A-61R_77DC | | Green SS #2 ST2 | EA | New | | 19 | | 121.69 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940441RNB1 | | 1-6-A | Protector, Cannon - 5500-55-61R_77DC | | Green SS #2 ST2 | EA | New | | 2 | | 1105 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940441RNB1-MOD | | 1-6-A | Protector - Stand-off, Cannon - 6248-A-61R/06DCG1.57-XT-MOD | | Green SS #2 ST2 | EA | New | | 1 | | 1872.5 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307940431RNB1 | | 1-6-A | Protector, Cannon - 5500-A-61R | | Green SS #2 ST2 | EA | New | | 56 | | 91.69 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB11564300RT | | 1-6-BR | SurSet - Run / Pull Tool, 2.750 IN X 2.812 MODEL D PROBE | | Green SS #2 ST2 | EA | | | 1 | | 1228 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB11564300RT | | 1-6-BR | SurSet - Run / Pull Tool, 2.750 IN X 2.812 MODEL D PROBE | | Green SS #2 ST2 | EA | | | 1 | | 1228 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB09660014NGNE | | 1-6-BR | SurSet - Lock / Plug, 3.312 EQUALIZING CHECK VALVE AOFT-2 BMS-S210 13 CR 80 MYS 22 HRC MAX BCS-A404 QPQ OR PLASMA NITRIDING 10,000 WP ABOVE BPS-CS01 (KV65) 65D VTN CVN 3.385 IN OD 1.250 IN DIA OF BALL 3.312 AF PROFILE CO2 & H2S SERVICE BPS-CS01 (KV65) PACKING UNIT CRITICAL | | Green SS #2 ST2 | EA | | | 1 | | 14957 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB09660014NGNE | | 1-6-BR | SurSet - Lock / Plug, 3.312 EQUALIZING CHECK VALVE AOFT-2 BMS-S210 13 CR 80 MYS 22 HRC MAX BCS-A404 QPQ OR PLASMA NITRIDING 10,000 WP ABOVE BPS-CS01 (KV65) 65D VTN CVN 3.385 IN OD 1.250 IN DIA OF BALL 3.312 AF PROFILE CO2 & H2S SERVICE BPS-CS01 (KV65) PACKING UNIT CRITICAL | | Green SS #2 ST2 | EA | | | 1 | | 14957 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB11550701RT | | 1-6-BR | SurSet - Run / Pull Tool, 2.750 IN 2.812 IN WIRELINE RUNNING TOOL A | | Green SS #2 ST2 | EA | | | 1 | | 6272 | | | |
| Baker Hughes - Broussard | Baker Hughes | HB11550701RT | | 1-6-BR | SurSet - Run / Pull Tool, 2.750 IN 2.812 IN WIRELINE RUNNING TOOL A | | Green SS #2 ST2 | EA | | | 1 | | 6272 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10485888 | | 1-6-BR | , DISTRICT MADE UPPER BODY BMS-A098 41XX OR P110 STEEL 110 MYS STD 4.500 IN 12.75 LB/FT EU 8RD BOX UP 6.250 IN STUB ACME PIN DOWN LEFT HAND THREAD DOWN 7.550 IN OD 18.000 IN LG | | Blue Well | EA | | | 1 | | 2350 | | | |
| Baker Hughes - Broussard | Baker Hughes | H307980033RNB1 | | D-15 | E TEC, 1/4" x .049" TEC INC 825 FEP Filler | | Green SS #2 ST2 | EA | New | | 21344 | | 4.3 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308190058RNB1 | | D-17 | CI Control Line, Dual 3/8" x .065" Enhanced Properties Flatpack MYS 70 KSI | | Green SS #2 ST2 | EA | New | | 21494 | | 8.36 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308190059RNB1 | | E-15 | Control Line - IWS, Triple 1/4" x .049" Enhanced Properties Flatpack MYS 65KSI | | Green SS #2 ST2 | EA | New | | 18764 | | 6.53 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308190060RNB1 | | F-6 | CI Control Line, Dual 1/4" x .049" Enhanced Properties Flatpack MYS 65KSI | | Green SS #2 ST2 | EA | New | | 6994 | | 4.36 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474034 | | Locker 7 | E Fitting, TEC splice Installation kit w/C-276 | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474034 | | Locker 7 | E Fitting, TEC splice Installation kit w/C-276 | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker Hughes - Broussard | Baker Hughes | HDA1569420RNB1 | | Locker 7 | CI Splice, 1/2" Splice, Hydraulic, testable, Ni Alloy 718, for 1/2" Upper CIV control lines, 20K rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2920 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569420RNB1 | | Locker 7 | CI Splice, 1/2" Splice, Hydraulic, testable, Ni Alloy 718, for 1/2" Upper CIV control lines, 20K rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2920 | | | |
| Baker Hughes - Broussard | Baker Hughes | H30797000TRNB1 | | Locker 7 | E Splice, TEC Splice Kit, f / 1/4" line, .75" OD, 30K psi rated, NACE, MP35N | | Green SS #2 ST2 | EA | New | | 1 | | 6145 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308230018RNB1 | | Locker 7 | CI Valve, SureTreat CIV 15K/20K, Inj Block valve, 3/8" CL, JamNut x 9/16" AEMP w/Anti-vibe, Dual checks, Alloy 718 | | Green SS #2 ST2 | EA | New | | 1 | | 19840 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308230018RNB1 | | Locker 7 | CI Valve, SureTreat CIV 15K/20K, Inj Block valve, 3/8" CL, JamNut x 9/16" AEMP w/Anti-vibe, Dual checks, Alloy 718 | | Green SS #2 ST2 | EA | New | | 1 | | 19840 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569419RNB1 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,_ f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H30797000TRNB1 | | Locker 7 | E Splice, TEC Splice Kit, f / 1/4" line, .75" OD, 30K psi rated, NACE, MP35N | | Blue SS #4 | EA | New | | 1 | | 6145 | | | |
| Baker Hughes - Broussard | Baker Hughes | H30797000TRNB1 | | Locker 7 | E Splice, TEC Splice Kit, f / 1/4" line, .75" OD, 30K psi rated, NACE, MP35N | | Green SS #2 ST2 | EA | New | | 1 | | 6145 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308230017RNB1 | | Locker 7 | CI Valve, SureTreat CIV 15K, Inj Block valve, 1/2" CL, JamNut x 9/16" AEMP w/Anti-vibe, Dual checks, Alloy 718 | | Green SS #2 ST2 | EA | New | | 1 | | 19840 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569419RNB1 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,_ f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569418RNB1 | | Locker 7 | CI Splice, 3/8" Splice, Hydraulic, testable, Ni Alloy 718, for 3/8" Lwr CIVs control lines, 20K psi rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2650 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308310014RNB1 | | Locker 7 | CI Accessory, 11.5k Parting Piston | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308310014RNB1 | | Locker 7 | CI Accessory, 11.5k Parting Piston | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308310014RNB1 | | Locker 7 | CI Accessory, 11.5k Parting Piston | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10465505 | | Locker 7 | E Fitting, Redress Kit, SureSENS 175 Triple Gauge, Autoclave connection | | Green SS #2 ST2 | EA | New | | 1 | | 448 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569419RNB1 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,_ f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10465503 | | Locker 7 | E Fitting, Installation Kit, SureSENS 175HP Dual Gauge, Autoclave conn. | | Blue SS #4 | EA | New | | 1 | | 1080 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569419RNB1 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,_ f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308230017RNB1 | | Locker 7 | CI Valve, SureTreat CIV 15K, Inj Block valve, 1/2" CL, JamNut x 9/16" AEMP w/Anti-vibe, Dual checks, Alloy 718 | | Green SS #2 ST2 | EA | New | | 1 | | 19840 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569419RNB1 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,_ f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569420RNB1 | | Locker 7 | CI Splice, 1/2" Splice, Hydraulic, testable, Ni Alloy 718, for 1/2" Upper CIV control lines, 20K rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2920 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569419RNB1 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,_ f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569419RNB1 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,_ f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A0160900 | | Locker 7 | , 1.230 IN BACK-UP RING 1.232 IN OD 1.013 IN ID .227 IN LG BPS-F202 (PE30) BACK-UP RINGS W/SCARF CUSTOM CRITICAL BATCH MANAGED F/DOVE-TAIL O-RING GROOVES C1 CRITICAL TO HSE | | Green Well | EA | | | 1 | | 92.8 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569420RNB1 | | Locker 7 | CI Splice, 1/2" Splice, Hydraulic, testable, Ni Alloy 718, for 1/2" Upper CIV control lines, 20K rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2920 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569418RNB1 | | Locker 7 | CI Splice, 3/8" Splice, Hydraulic, testable, Ni Alloy 718, for 3/8" Lwr CIVs control lines, 20K psi rated (JAMNUT) | | Blue SS #4 | EA | New | | 1 | | 2650 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569418RNB1 | | Locker 7 | CI Splice, 3/8" Splice, Hydraulic, testable, Ni Alloy 718, for 3/8" Lwr CIVs control lines, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2650 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569418RNB1 | | Locker 7 | CI Splice, 3/8" Splice, Hydraulic, testable, Ni Alloy 718, for 3/8" Lwr CIVs control lines, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2650 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569419RNB1 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,_ f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H308310014RNB1 | | Locker 7 | CI Accessory, 11.5k Parting Piston | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | HDA1569419RNB1 | | Locker 7 | CI Splice, 1/4" Splice, Hydraulic, testable, Ni Alloy 718,_ f HCM lines @ splice sub and SCSSV + BU, 20K psi rated (JAMNUT) | | Green SS #2 ST2 | EA | New | | 1 | | 2285 | | | |
| Baker Hughes - Broussard | Baker Hughes | H0A0160900 | | Locker 7 | , 1.230 IN BACK-UP RING 1.232 IN OD 1.013 IN ID .227 IN LG BPS-F202 (PE30) BACK-UP RINGS W/SCARF CUSTOM CRITICAL BATCH MANAGED F/DOVE-TAIL O-RING GROOVES C1 CRITICAL TO HSE | | Green Well | EA | | | 7 | | 649.6 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474035 | | Locker 7 | E Fitting, TEC splice redress kit w/C-276 | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474035 | | Locker 7 | E Fitting, TEC splice redress kit w/C-276 | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474035 | | Locker 7 | E Fitting, TEC splice redress kit w/C-276 | | Green SS #2 ST2 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474035 | | Locker 7 | E Fitting, TEC splice redress kit w/C-276 | | Blue SS #4 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474035 | | Locker 7 | E Fitting, TEC splice redress kit w/C-276 | | Blue SS #4 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10474034 | | Locker 7 | E Fitting, TEC splice Installation kit w/C-276 | | Blue SS #4 | EA | New | | 1 | | 0 | | | |
| Baker Hughes - Broussard | Baker Hughes | 10485883 | | South wall | CI Accessory, Teflon Sleeve for 1/2" Control Line | | Green SS #2 ST2 | EA | New | | 300 | | 16.44 | | | |
| Baker Hughes - Houma | Baker Hughes | 266730541 | | | LANDING COLLAR TYPE II W/BAFFLE 5.500 IN 20.00 LB/FT ATLAS BRADFORD ST-L BOX UP 5.500 IN 20.00 LB/FT ATLAS BRADFORD ST-L PIN DOWN 5.545 IN OD 4.688 IN ID 2.365 PSI SHEAR 1.500 IN DIA OF BALL 125 KSI MYS (API SCT) | | EUGENE ISLAND 354 A-6 | EA | | | 1 | | 5628.75 | | | |
| Baker Hughes - Houma | Baker Hughes | 299894585ST1 | | | CROSSOVER BUSHING 10.125 IN 79.22 LB/FT SEAL LOCK SF BOX UP 9.875 IN 62.80 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 10.259 IN OD 8.531 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 11401 | | | |
| Baker Hughes - Houma | Baker Hughes | 299894045ST1 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 10.125 IN 79.22 LB/FT SEAL LOCK SF PIN DOWN Q125 CR-MO TBLR 125 MYS 10.140 IN OD 8.530 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 12304 | | | |
| Baker Hughes - Houma | Baker Hughes | 299894639ST1 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 10.125 IN 79.22 LB/FT SEAL LOCK SF PIN DOWN Q125 CR-MO TBLR 125 MYS 10.962 IN OD 8.530 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 15884 | | | |
| Baker Hughes - Houma | Baker Hughes | 299894023ST1 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 9.875 IN 62.80 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 10.952 IN OD 8.541 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 12798 | | | |
| Baker Hughes - Houma | Baker Hughes | 296450161ST1 | | | LINER PACKER W/HRD-E PROFILE AND HOLD DOWN 9.875 IN 67.50 LB/FT VAM SLIJ II BOX DOWN 13.375 IN 61.0-72.0 LB/FT CSG 11.750 IN EXT OD 10.188 IN EXT ID 20.00 FT EXT LG C-110 TYPE PРR EXT 12.000 IN OD 8.535 IN ID (MUST DRIFT 8.500) 5% SHEAR SCREWS 8.535 IN P | | NOBLE BUY OUT | EA | | | 1 | | 229733.1 | | | |
| Baker Hughes - Houma | Baker Hughes | 299921816ST1 | | | SPACER NIPPLE 9.875 IN 67.50 LB/FT VAM SLIJ II PIN UP 9.875 IN 67.50 LB/FT VAM SLIJ II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 9.974 IN OD 8.444 IN ID 10.00 FT LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 19604.7 | | | |
| Baker Hughes - Houma | Baker Hughes | 297550997ST1 | | | SEAL ASSEMBLY BULLET 9.875 IN VAM SLIJ II BOX UP 20.00 FT EXT LG 10.188 IN SEAL OD .177 CROSS SECTION SEALS BULLET SEAL 13,500 PSI SEAL RATING 4 SEALS 11.750 IN OD 8.549 IN ID ROUND NOSE GUIDE C-110 | | NOBLE BUY OUT | EA | | | 1 | | 160685.1 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker Hughes - Houma | Baker Hughes | 2964501615T1 | | | LINER PACKER W/HRD-E PROFILE AND HOLD DOWN 9.875 IN 67.50 LB/FT VAM SLII II BOX DOWN 13.375 IN 61.0-72.0 LB/FT CSG 11.750 IN EXT OD 10.188 IN EXT ID 20.00 FT EXT LG C-110 TYPE PBR EXT 12.000 IN OD 8.535 IN ID (MUST DRIFT 8.500) 5% SHEAR SCREWS 8.535 IN P | | NOBLE BUY OUT | EA | | | 1 | | | 229733.1 | | |
| Baker Hughes - Houma | Baker Hughes | 2999218165T1 | | | SPACER NIPPLE 9.875 IN 67.50 LB/FT VAM SLII II PIN UP 9.875 IN 67.50 LB/FT VAM SLII II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30.974 IN OD 8.444 IN ID 10.00 FT LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 19604.7 | | |
| Baker Hughes - Houma | Baker Hughes | 2999017115T1 | | | COLLAR 9.875 IN 67.50 LB/FT VAM SLII II BOX UP 9.875 IN 67.50 LB/FT VAM SLII II BOX DOWN C110 CR-MO TBLR 110-125 KSI 30 10.200 IN OD 8.549 IN ID 18.000 IN LG | | NOBLE BUY OUT | EA | | | 1 | | | 10052.1 | | |
| Baker Hughes - Houma | Baker Hughes | 2941600255T1 | | | LINER HANGER CONTROL SET FLEXIV HYDRAULIC ASSEMBLY NON-ROT 9.875 IN 67.50 LB/FT VAM SLII II PIN UP 9.875 IN 67.50 LB/FT VAM SLII II PIN DOWN 13.375 IN 54.5-72.0 LB/FT CSG 12.050 IN OD 8.549 IN ID 1,087-1,471 PSI SHEAR 15.00 FT LG KIT MOUNTED ON TOP C-11 | | NOBLE BUY OUT | EA | | | 1 | | | 216195.3 | | |
| Baker Hughes - Houma | Baker Hughes | 270090752 | | | PUP JOINTS 9.875 IN 67.50 LB/FT VAM SLII II BOX UP 9.875 IN 67.50 LB/FT VAM SLII II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.191 IN OD 8.546 IN ID 8.00 FT LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 17861.4 | | |
| Baker Hughes - Houma | Baker Hughes | 2998949605T1 | | | CROSSOVER BUSHING 9.875 IN 67.50 LB/FT VAM SLII II BOX UP 9.875 IN 65.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.191 IN OD 8.499 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 16222.5 | | |
| Baker Hughes - Houma | Baker Hughes | 2998949615T1 | | | CROSSOVER BUSHING 9.875 IN 67.50 LB/FT VAM SLII II BOX UP 9.875 IN 65.30 LB/FT VAM SLII II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.191 IN OD 8.499 IN ID 18.000 IN LG | | NOBLE BUY OUT | EA | | | 1 | | | 16602.3 | | |
| Baker Hughes - Houma | Baker Hughes | 1017600375T1 | | | FLOAT COLLAR SV W/ORIFICE 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN 10.360 IN OD 8.530 IN ID | | NOBLE BUY OUT | EA | | | 1 | | | 18790.2 | | |
| Baker Hughes - Houma | Baker Hughes | 1017600375T1 | | | FLOAT COLLAR SV W/ORIFICE 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN 10.360 IN OD 8.530 IN ID | | NOBLE BUY OUT | EA | | | 1 | | | 18790.2 | | |
| Baker Hughes - Houma | Baker Hughes | 2998949635T1 | | | CROSSOVER BUSHING 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 9.875 IN 67.50 LB/FT VAM SLII II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.360 IN OD 8.525 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 18188.1 | | |
| Baker Hughes - Houma | Baker Hughes | 2975509975T1 | | | SEAL ASSEMBLY BULLET 9.875 IN VAM SLII II BOX UP 20.00 FT EXT LG 10.188 IN SEAL OD .177 CROSS SECTION SEALS BULLET SEAL 13,500 PSI SEAL RATING 4 SEALS 11.750 IN OD 8.549 IN ID ROUND NOSE GUIDE C-110 | | NOBLE BUY OUT | EA | | | 1 | | | 160685.1 | | |
| Baker Hughes - Houma | Baker Hughes | 2998551975T1 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 9.875 IN 65.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 10.962 IN OD 8.531 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 12798 | | |
| Baker Hughes - Houma | Baker Hughes | 2999020205T1 | | | COLLAR 9.875 IN 65.10 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 9.875 IN 62.80 LB/FT VAM TOP BOX DOWN Q125 CR-MO TBLR 125 MYS 10.962 IN OD 8.815 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 7907.4 | | |
| Baker Hughes - Houma | Baker Hughes | 275210381RT | | | TIEBACK MILL 4.500 IN NC-50 (4-1/2 IF) BOX UP 5.000 IN XT-50 W/ACCESSORY BEVEL PIN DOWN 10.125 IN OD 3.000 IN ID 48.000 IN LG 10.188 IN EXT ID 110 KSI MYS BCS-A401 ZINC OR MANGANESE PHOSPHATE | | NOBLE BUY OUT | EA | | | 1 | | | 19207 | | |
| Baker Hughes - Houma | Baker Hughes | 275210381RT | | | TIEBACK MILL 4.500 IN NC-50 (4-1/2 IF) BOX UP 5.000 IN XT-50 W/ACCESSORY BEVEL PIN DOWN 10.125 IN OD 3.000 IN ID 48.000 IN LG 10.188 IN EXT ID 110 KSI MYS BCS-A401 ZINC OR MANGANESE PHOSPHATE | | NOBLE BUY OUT | EA | | | 1 | | | 19207 | | |
| Baker Hughes - Houma | Baker Hughes | 07885471N | | | 9.188 IN ROUND NOSE GUIDE CR-MO STEEL 125 MYS ZINC OR MANGANESE PHOSPHATE 10.125 IN OD 8.635 IN ID 2.00 FT LG W/9.188 OD MOD STUB ACME THD F/10.188 OD SEAL ASSEMBLY | | NOBLE BUY OUT | EA | | | 1 | | | 12225 | | |
| Baker Hughes - Houma | Baker Hughes | 2998941205T1 | | | CROSSOVER BUSHING 7.625 IN 33.70 LB/FT VAM TOP HT BOX UP 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 8.350 IN OD 6.535 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 9819 | | |
| Baker Hughes - Houma | Baker Hughes | 2998853095T1 | | | CROSSOVER BUSHING 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 4.500 IN NO WEIGHT NC50 PIN DOWN P110 GEN PURPOSE TBLR 110 MYS 7.967 IN OD 3.735 IN ID 24.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 8355 | | |
| Baker Hughes - Houma | Baker Hughes | 2998853095T1 | | | CROSSOVER BUSHING 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 4.500 IN NO WEIGHT NC50 PIN DOWN P110 GEN PURPOSE TBLR 110 MYS 7.967 IN OD 3.735 IN ID 24.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 8355 | | |
| Baker Hughes - Houma | Baker Hughes | 2998940285T1 | | | CROSSOVER BUSHING 5.000 IN 18.00 LB/FT VAM TOP HT BOX UP 5.000 IN 18.00 LB/FT TENARISHYDRIL WEDGE 513 PIN DOWN Q125 CR-MO TBLR 125 MYS 5.622 IN OD 4.194 IN ID 18.00 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 11671.5 | | |
| Baker Hughes - Houma | Baker Hughes | 266730311 | | | LANDING COLLAR TYPE II W/BAFFLE 5.000 IN 18.00 LB/FT TENARISHYDRIL WEDGE 513 BOX UP 5.000 IN 18.00 LB/FT TENARISHYDRIL WEDGE 513 PIN DOWN 5.055 IN OD 4.184 IN ID 3,100 PSI SHEAR 1.500 IN DIA OF BALL 110 KSI MYS | | NOBLE BUY OUT | EA | | | 1 | | | 9132 | | |
| Baker Hughes - Houma | Baker Hughes | 2998853015T1 | | | CROSSOVER BUSHING 7.625 IN 33.70 LB/FT VAM TOP HT BOX UP 7.000 IN 35.00 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 8.361 IN OD 5.903 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 11269.5 | | |
| Baker Hughes - Houma | Baker Hughes | 2998853015T1 | | | CROSSOVER BUSHING 7.625 IN 33.70 LB/FT VAM TOP HT BOX UP 7.000 IN 35.00 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 8.361 IN OD 5.903 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 11269.5 | | |
| Baker Hughes - Houma | Baker Hughes | 299893328 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 9.875 IN 62.80 LB/FT VAM SLII II PIN DOWN Q125 CR-MO TBLR 125 MYS 10.952 IN OD 8.559 IN ID 18.000 IN LG | | NOBLE BUY OUT | EA | | | 1 | | | 11593.5 | | |
| Baker Hughes - Houma | Baker Hughes | 299895535 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 10.175 IN 81.00 LB/FT VAM SLII II PIN DOWN Q125 CR-MO TBLR 125 MYS 10.963 IN OD 8.551 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 11635.5 | | |
| Baker Hughes - Houma | Baker Hughes | 2998940235T1 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 9.875 IN 62.80 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 10.952 IN OD 8.541 IN ID 18.00 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | | 11798.25 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker Hughes - Houma | Baker Hughes | 298893328 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 9.875 IN 62.80 LB/FT VAM SLIJ II PIN DOWN Q125 CR-MO TBLR 125 MYS 10.952 IN OD 8.559 IN ID 18.000 IN LG | | NOBLE BUY OUT | EA | | | 1 | | 11593.5 | | |
| Baker Hughes - Houma | Baker Hughes | 298895335 | | | CROSSOVER BUSHING 9.875 IN 62.80 LB/FT VAM TOP BOX UP 10.175 IN 81.00 LB/FT VAM SLIJ II PIN DOWN Q125 CR-MO TBLR 125 MYS 10.963 IN OD 8.551 IN ID 18.000 IN LG | | NOBLE BUY OUT | EA | | | 1 | | 11635.5 | | |
| Baker Hughes - Houma | Baker Hughes | 298894120ST1 | | | CROSSOVER BUSHING 7.625 IN 33.70 LB/FT VAM TOP HT BOX UP 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN Q125 CR-MO TBLR 125 MYS 8.350 IN OD 6.535 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 9819 | | |
| Baker Hughes - Houma | Baker Hughes | 274120357 | | | LANDING COLLAR LFC TYPE I 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN 6.525 IN ID (MUST DRIFT 6.500) 125 KSI MYS (API SCT) | | NOBLE BUY OUT | EA | | | 1 | | 17821.5 | | |
| Baker Hughes - Houma | Baker Hughes | 274120357 | | | LANDING COLLAR LFC TYPE I 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 7.750 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN 7.957 IN 46.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN 6.525 IN ID (MUST DRIFT 6.500) 125 KSI MYS (API SCT) | | NOBLE BUY OUT | EA | | | 1 | | 17821.5 | | |
| Baker Hughes - Houma | Baker Hughes | 298894960ST1 | | | CROSSOVER BUSHING 9.875 IN 67.50 LB/FT VAM SLIJ II BOX UP 9.875 IN 65.10 LB/FT TENARISHYDRIL WEDGE 523 PIN DOWN C110 CR-MO TBLR 110-125 KSI 30.15 IN OD 8.499 IN ID 18.000 IN LG API SCT | | NOBLE BUY OUT | EA | | | 1 | | 16222.5 | | |
| Baker Hughes - Houma | Baker Hughes | 298894963 | | | CROSSOVER BUSHING 10.125 IN 79.29 LB/FT TENARISHYDRIL WEDGE 523 BOX UP 9.875 IN 67.50 LB/FT VAM SLIJ II PIN DOWN C110 CR-MO TBLR 110-125 KSI 30 10.360 IN OD 8.525 IN ID 18.000 IN LG API SCT | | KATMAI | EA | | | 1 | | 12306 | | |
| Baker Hughes - Houma | Baker Hughes | 10555030 | | | 10.125 IN ROUND NOSE GUIDE - CEMENT FILL CR-MO STEEL 125 MYS ZINC OR MANGANESE PHOSPHATE 10.125 IN OD 8.635 IN ID 2.00 FT LG W/9.188 OD MOD STUB ACME THD F/10.188 OD SEAL ASSEMBLY | | KATMAI | EA | | | 1 | | 4714.2 | | |
| Benoit - Houma | Benoit | 20240 | | Inside | 4 1/2" 15.50# 13CR-110 Smart Assembly X 91' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20205 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion C.I.M. / Safety Valve Assembly X 50' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20029 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion C.I.M. / Safety Valve Assembly X 50' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20390 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion Casing Assembly X 48' (40' T&C Casing On Top, 2' Sub In Mid., 6' T&C PJ On Btm.) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 9811 | | Inside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Lower BCSD Flo-Tool X 15' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 9814 | | Inside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Lower Pin / Pin BCSD Flo-Tool X 15' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 9813 | | Inside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Lower Pin / Pin BCSD Flo-Tool X 15' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 9815 | | Inside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Upper BCSD Flo-Tool X 15' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 9816 | | Inside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Upper BCSD Flo-Tool X 15' | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 12186 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 Blast Joint X 12' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 8295 | | Outside | 2 3/8" 4.70# 13CR-85 BTS-8 Blast Joint X 20' | | | EA | U | | 5 | | 0 | | |
| Benoit - Houma | Benoit | 17693 | | Outside | 2 7/8" 6.50# 13CR-95 BTS-8 Blast Joint X 20' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 17103 | | Inside | 2 3/8" 4.70# 13CR-110 BTS-8 Box Bull Plug X 08" | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 9817 | | Outside | 4 1/2" 15.10# Hyper 13CR-110 Vam Ace Chemical Injection Mandrel Assembly X 39' | | | EA | U | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20097 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion Chemical Injection Mandrel Assembly X 25' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 20391 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion Chemical Injection Mandrel X 20' | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14355 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Lower Combo Joint X 12' (IPC TK-800) | | | EA | A | | 3 | | 0 | | |
| Benoit - Houma | Benoit | 14354 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Upper Combo Joint X 12' (IPC TK-800) | | | EA | A | | 3 | | 0 | | |
| Benoit - Houma | Benoit | 10683 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Lower Combo-Joint X 12' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 10682 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Upper Combo-Joint X 12' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 9759 | | Inside | 2 3/8" L-80 EUE Brd Mod Tubing Coupling (IPC TK-7) | | | EA | B | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 9746 | | Inside | 2 3/8" L-80 EUE Brd Mod Tubing Coupling (IPC TK-7) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14356 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Box / 2 7/8" 6.50# BTS-8 Pin Crossover Sub X 12" (IPC TK-800) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18964 | | Inside | 3 1/2" 9.30# L-80 BTS-8 Pin / 3 1/2" 9.30# UEU Brd Pin X-Over Sub X 14" (IPC TK-70) | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 14348 | | Inside | 2 3/8" 4.70# L-80 BTS-8 Pin / Pin Pup Joint X 06' (IPC TK-800) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14349 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 02' (IPC TK-800) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14350 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 04' (IPC TK-800) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14351 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 06' (IPC TK-800) | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 14352 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 08' (IPC TK-800) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14481 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 08' (IPC TK-800) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14353 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 10' (IPC TK-800) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14482 | | Inside | 2 3/8" 4.70# L-80 BTS-8 PR Pup Joint X 10' (IPC TK-800) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 17599 | | Inside | 2 3/8" 4.70# L-80 EUE  Brd Pin / Pin Pup Joint X 04' ( IPC TK-800 ) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14418 | | Inside | 2 3/8" 4.70# L-80 EUE Brd Mod T&C Pup Joint X 02' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14419 | | Inside | 2 3/8" 4.70# L-80 EUE Brd Mod T&C Pup Joint X 04' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 13200 | | Inside | 2 3/8" 4.70# L-80 EUE Brd Mod T&C Pup Joint X 06' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 14420 | | Inside | 2 3/8" 4.70# L-80 EUE Brd Mod T&C Pup Joint X 10' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 11864 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 02' (IPC TK-7) | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 6758 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 04' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 5988 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 06' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 12038 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 08' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 6343 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 08' (IPC TK-7) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 7598 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 08' (IPC-TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 6345 | | Inside | 2 7/8" 6.50# L-80 BTS-8 PR Pup Joint X 10' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 8827 | | Inside | 3 1/2" 9.30# L-80 BTS-8 Pin / Pin Pup Joint X 06' (IPC TK-7) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 4721 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 02' (IPC TK-7) | | | EA | A | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 4746 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 04' (IPC TK-7) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 4747 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 06' (IPC TK-7) | | | EA | B | | 2 | | 0 | | |
| Benoit - Houma | Benoit | 8828 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 08' (IPC TK-7) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 4748 | | Inside | 3 1/2" 9.30# L-80 BTS-8 PR Pup Joint X 10' (IPC TK-7) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18968 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 02' (IPC TK-70) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18967 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 02' (IPC TK-70) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18961 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 04' (IPC TK-70) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18969 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 04' (IPC TK-70) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18965 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 06' (IPC TK-70) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18962 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 06' (IPC TK-70) | | | EA | B | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18963 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 10' (IPC TK-70) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 18966 | | Inside | 3 1/2" 9.30# L-80 EUE Brd Mod. T&C Pup Joint X 10' (IPC TK-70) | | | EA | A | | 1 | | 0 | | |
| Benoit - Houma | Benoit | 13190 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K Box / Pin Lower Combo-Joint X 12' | | | EA | A | | 1 | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benoit - Houma | Benoit | 13189 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K Cplg. Box / Box Upper Combo-Joint X 12' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16446 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Lower Combo-Joint X 12' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 18847 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Upper Combo Joint X 12' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15402 | | Inside | 2 7/8" 7.70# 13CR-95 Vam Ace Lower Combo Joint Assembly X 12' | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15392 | | Inside | 2 7/8" 7.70# 13CR-95 Vam Ace Upper Combo Joint Assembly X 12' | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 7338 | | Inside | 3 1/2" 9.30# Hyper 13CR-110 BTS-8 Lower Combo-Joint X 12' | | | EA | B | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 7226 | | Inside | 3 1/2" 9.30# Hyper 13CR-110 BTS-8 Upper Combo-Joint X 12' | | | EA | B | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 20355 | | Inside | 4 1/2" 18.90# 13CR-110 HYP 2 JFE Lion Pin / 4 1/2" 17# Vam Top Pin X-Over Pup Joint X 10' | | | EA | A | | 4 | | | 0 | | |
| Benoit - Houma | Benoit | 20064 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Pin / Vam Ace Pin X-Over Pup Joint X 5' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16324 | | Inside | 2 3/8" 4.43# 13CR-85 Echo F-4 Box / 2 3/8" 4.70# BTS-8 S/C Pin Crossover Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16323 | | Inside | 2 3/8" 4.60# 13CR-85 NU 10rd (special OD) Box / 2 3/8" 4.43# Echo F-4 Pin Crossover Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19681 | | Inside | 2 3/8" 4.70# 13CR-110 BTS-8 Box / 2 3/8" 4.70# NU 10rd Pin X-Over Locator Sub X 18" (w/ 3.150" O.D.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 7925 | | Inside | 2 7/8" 7.90# 13CR-95 BTS-6 Box / 2 3/8" 4.70# BTS-8 Pin X-Over Sub | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15565 | | Inside | 2 7/8" 6.16# Hyper 13CR-110 STL Box / 2 7/8" 7.66# HDL Pin X-over Subs X 12" | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 14955 | | Inside | 2 7/8" 6.40# 13CR-85 Fox-K Box / 2 7/8" 6.50# BTS-8 Pin X-Over Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 2917 | | Inside | 2 7/8" 6.40# L-80 NU 10rd Pin X 2 3/8" EUE Box X-over Sub | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 2918 | | Inside | 2 7/8" 6.40# L-80 NU 10rd Pin X 2 3/8" EUE Box X-over Sub | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19026 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Box / 2 3/8" 4.70# BTS-8 Pin X-Over Sub X 14" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 11933 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Pin / 2 3/8" 4.70# BTS-8 Box Crossover Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17346 | | Inside | 2 7/8" 6.50# P-110 BTS-8 Box / 4 1/2" NU Pin Crossover Sub X 14" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19682 | | Inside | 2 7/8" 6.50# P-110 NU 10rd Box / 2 3/8" 4.70# BTS-8 Pin X-Over Sub X 14" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15564 | | Inside | 2 7/8" 7.66# 13CR-110 HDL Box / 2 7/8" 6.16# STL Pin X-over Sub X 12" | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 2915 | | Inside | 2 7/8" L-80 NU 10rd Box X 2 3/8" NU 10rd Box X-over Sub | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 2916 | | Inside | 2 7/8" L-80 NU 10rd Box X 2 3/8" NU 10rd Box X-over Sub | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17689 | | Inside | 2 7/8"6.50# 13CR-95 BTS-8 Box / 3 1/2" 9.30# EUE 8rd Pin Crossover Sub X 14" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14440 | | Inside | 3 1/2" 12.95# 13CR-95 BTS-6 Box / 3 1/2" 9.30# BTS-8 Pin X-Over Sub X 14" | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16481 | | Inside | 3 1/2" 12.95# 13CR-95 RTS-6 Box / 3 1/2" 10.20# JFE Bear Pin X-Over Sub X 2' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15942 | | Inside | 3 1/2" 9.20# 13CR-85 JFE Bear Box / 3 1/2" 9.30# BTS-8 Pin Crossover Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 11711 | | Inside | 3 1/2" 9.20# 13CR-85 Vam Ace Box / 2 7/8" 6.50# BTS-8 Pin Crossover Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17690 | | Inside | 3 1/2" 9.30# 13CR-95 EUE 8rd Box / 2 7/8" 6.50# BTS-8 Pin Crossover Sub X 14" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 11073 | | Inside | 3 1/2" 9.30# Hyper 13CR110 BTS-8 Box / 2 7/8" 6.50# BTS-8 Box Crossover Sub x 14" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17344 | | Inside | 4 1/2" 15.10# 13CR-110 SLHT Box / 5 1/2" 23# SHLT Pin Crossover Sub X 14" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19683 | | Inside | 4" 11.60# 13CR-85 NU 8rd Box / 2 3/8" 4.70# BTS-8 Pin X-Over Sub X 14" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17345 | | Inside | 5 1/2" 23# 13CR-110 SLHT Box / 4 1/2" 15.10# SLHT Pin Crossover Sub X 14" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20231 | | Inside | 5 1/2" 29.70# 13CR-95 JFE Lion Box / 5 1/2" 23# JFE Lion Pin X-Over Sub X 36" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14201 | | Outside | 2 3/8" 4.70# L-80 BTS-8 Gas Lift Madrel Assembly X 18' (6' P/J's top & btm) (superior gbk mandrels) | | | EA | U | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 12345 | | Outside | 2 7/8" 6.50# 13CR85 BTS-8 Gas Lift Mandrel Assembly X 19' (6' Pup Joint Top & Bottom)(Superior mandrels) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20098 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion Gauge Mandrl Assembly X 15' (2- 4' Pup Joints On Btm) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14357 | | Inside | 2 3/8" 4.70# 9CR-80 BTS-8 PR BCS Nipple (1.875" P.B.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 2920 | | Inside | 2 3/8" 4.70# 9CR-80 BTS-8 SWN Nipple | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 2919 | | Inside | 2 3/8" 4.70# 9CR-80 BTS-8 SWS Nipple | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14960 | | Inside | 2 7/8" 6.16# 13CR-85 Echo F-4 BCS Nipple (2.313" P.B.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13615 | | Inside | 2 7/8" 6.40# 13CR-85 Fox-K Coupling Box / Pin BCS Nipple ( 2.313"PB ) | | | EA | B | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 16272 | | Inside | 2 7/8" 6.50# 9CR-80 BCSN EUE 8RD Pin / Pin Nipple (2.313" P.B. / 2.205" No-Go) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17816 | | Inside | 2 7/8" 6.50# 9CR-80 EUE 8rd Pin / Pin BCS Landing Nipple (2.313" P.B.) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15777 | | Inside | 3 1/2" 10.20# 718 Inconel Vam Top Pin / Pin BCH Nipple (2.750" P.B.) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19841 | | Outside | 2 3/8" 4.70# L-80 BTS-8 BCN Nipple Assembly X 31' (1.875" P.B.) ( Plug In Place) ( 12' UCI on Top + 12' LCI + 6' Perforated PJ On Btm.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13966 | | Inside | 2 3/8" 4.70# L-80 BTS-8 BCSN Nipple Assembly X 13' w/ WLEG (1.875" P.B. / 1.791" No-Go) (6' P/J Top / Bottom) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13591 | | Inside | 2 3/8" 4.70# L-80 EUE 8rd Nipple Assembly X 13' w/ WLEG (1.875" P.B.) (9CR-80 Nipple) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19835 | | Outside | 2 7/8" 6.50 13CR-85 BTS-8 BCS Nipple Assembly X 25' (12' C/J Top & Btm.) | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 13192 | | Outside | 2 7/8" 6.40# 13CR-95 Fox-K BCS Nipple Assembly X 25' (2.313" P.B.)(fox / bts-8 c/j's top & bottom) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13061 | | Outside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 BCS Nipple Assembly X 29' (14' C/J's top & bottom) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14789 | | Outside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 BCS Nipple Assembly X 25" (2.313"P.B.) W/ 12' c/j's top & btm. | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19844 | | Inside | 2 7/8" 6.50# L-80 BTS-8 BCN Nipple Assembly X 14' (2.313" P.B.) (6' PJ Top & Btm./ 12' Mule Shoe on Btm.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15476 | | Outside | 2 7/8" 7.70# 13CR-95 Vam Ace Nipple Assembly X 25' (2.188" P.B. PetroQuip nipple) 6' P/J's & 6' F/C torqued together top & btm | | | EA | U | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 13467 | | Outside | 2 7/8" 7.90# Hyper 13CR-110 BTS-6 BC-R Nipple Assembly X 25' (2.188 PB) (w/ 12' C/J Top & Btm.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20031 | | Outside | 4 1/2" 15.20# 13CR-110 JFE Lion HES RPT Nipple Assembly X 30' (3.125" P.B.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15336 | | Inside | 3 1/2" 12.95# Hyper 13CR-110 BTS-6 Perforated Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14460 | | Inside | 3 1/2" 9.30# 13CR-95 BTS-8 Pup Joint X 06' (1/2" Holes, 6" Centers, 90 Degree Phase) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 10234 | | Inside | PRR Plug (2.313" PB) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 2910 | | Inside | PRR Plug (2.313" PB) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19760 | | Inside | 2 3/8 4.70# 13CR-85 BTS-8 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 11156 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 11157 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 11158 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16321 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16322 | | Inside | 2 3/8" 4.43# 13CR85 Echo F4 Pup Joint X 10' | | | EA | A | | 1 | | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benoit - Houma | Benoit | 13508 | | Inside | 2 3/8" 4.60# 13CR-85 STL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13509 | | Inside | 2 3/8" 4.60# 13CR-85 STL Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16097 | | Inside | 2 3/8" 4.60# 13CR-95 STL Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14708 | | Inside | 2 3/8" 4.00# Hyper 13CR-110 STL Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14709 | | Inside | 2 3/8" 4.60# Hyper 13CR-110 STL Pup Joint X 10' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12200 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12127 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 04' | | | EA | A | | 5 | | | 0 | | |
| Benoit - Houma | Benoit | 12562 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12128 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12129 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12130 | | Inside | 2 3/8" 4.60# P-110 STL Pup Joint X 10' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 17437 | | Inside | 2 3/8" 4.70# 13CR-95 BTS-8 Pup Joint X 02' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16161 | | Inside | 2 3/8" 4.70# 13CR-95 BTS-8 Pup Joint X 08' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12126 | | Inside | 2 3/8" 4.70#-L-80 BTS-8 Pup Joint X 06' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19940 | | Inside | 2 3/8" 4.70# P-110 BTS-8 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 18481 | | Inside | 2 7/8" 6.50# P-110 BTS-8 Pup Joint X 02' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14959 | | Inside | 2 7/8" 6.16# 13CR-85 Echo F-4 Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13159 | | Inside | 2 7/8" 6.16# 13CR-95 Echo F-4 Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13160 | | Inside | 2 7/8" 6.16# 13CR-95 Echo-F-4 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13161 | | Inside | 2 7/8" 6.16# 13CR-95 Echo F-4 Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13162 | | Inside | 2 7/8" 6.16# 13CR-95 Echo-F-4 Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13163 | | Inside | 2 7/8" 6.16# 13CR-95 Echo-F-4 Pup Joint X 10' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12063 | | Inside | 2 7/8" 6.40# 13CR-85 Fox-K T&C Pup Joint X 02' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12088 | | Inside | 2 7/8" 6.40# 13CR-85 Fox-K T&C Pup Joint X 10' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13150 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K Pin / Pin Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13151 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K T&C Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13152 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K T&C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13154 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K T&C Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13155 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K T&C Pup Joint X 10' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20273 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 02' | | | EA | A | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 20269 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20264 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 02' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20265 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 04' | | | EA | A | | 6 | | | 0 | | |
| Benoit - Houma | Benoit | 20270 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20274 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20271 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 06' | | | EA | A | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 20275 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 06' | | | EA | A | | 4 | | | 0 | | |
| Benoit - Houma | Benoit | 20266 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 06' | | | EA | A | | 4 | | | 0 | | |
| Benoit - Houma | Benoit | 20276 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 08' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20267 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 08' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20272 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 10' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20277 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Pup Joint X 10' | | | EA | A | | 4 | | | 0 | | |
| Benoit - Houma | Benoit | 15022 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Pup Joint X 06' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17988 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Pup Joint X 02' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17716 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Pup Joint X 02' | | | EA | B | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 17976 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Pup Joint X 04' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17717 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Pup Joint X 06' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17686 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Pup Joint X 08' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 6199 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 7351 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20279 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20268 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 Pup Joint X 08' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 19842 | | Inside | 2 7/8" 6.50#-L-80 BTS-8 Pup Joint X 02' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19843 | | Inside | 2 7/8" 6.50#-L-80 BTS-8 Pup Joint X 04' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17265 | | Inside | 2 7/8" 6.50#-L-80 BTS-8 Pup Joint X 06' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17821 | | Inside | 2 7/8" 6.50#-L-80 BTS-8 Pup Joint X 08' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 6323 | | Inside | 2 7/8" 6.50#-L-80 BTS-8 Pup Joint X 10' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 9239 | | Inside | 2 7/8" 6.50#-L-80 BTS-8 Pup Joint X 12' | | | EA | B | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 16710 | | Inside | 2 7/8" 6.50#-L-80 BTS-8 Pup Joint X 15' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 18482 | | Inside | 2 7/8" 6.50# P-110 BTS-8 Pup Joint X 04' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 18483 | | Inside | 2 7/8" 6.50# P-110 BTS-8 Pup Joint X 10' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16627 | | Inside | 2 7/8" 7.66# 13CR-110 AB-HDL Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16628 | | Inside | 2 7/8" 7.66# 13CR-110 AB-HDL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13273 | | Inside | 2 7/8" 7.66# 13CR-95 Echo F-4 Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13849 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 Echo F-4 Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16461 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 02' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15557 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15558 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 06' | | | EA | A | | 4 | | | 0 | | |
| Benoit - Houma | Benoit | 15559 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 08' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 15561 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 10' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15560 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 10' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15164 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 HDL Pup Joint X 2' 6" | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 15338 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 02' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15339 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15340 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 06' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 15341 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 06' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15342 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15343 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 08' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13872 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 10' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 15337 | | Inside | 2 7/8" 7.66# Hyper 13CR-110 STL Pup Joint X 2' 6" | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 13396 | | Inside | 2 7/8" 7.70# 13CR-95 Fox-K T&C Pup Joint X 06' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15404 | | Inside | 2 7/8" 7.70# 13CR-95 Vam Ace Pin / Pin Pup Joint X 06' | | | EA | U | | 12 | | | 0 | | |
| Benoit - Houma | Benoit | 15403 | | Inside | 2 7/8" 7.70# 13CR-95 Vam Ace T&C Pup Joint X 06' | | | EA | U | | 12 | | | 0 | | |
| Benoit - Houma | Benoit | 11343 | | Inside | 2 7/8" 7.90# Hyper 13CR110 BTS-6 Pup Joint X 04' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 2923 | | Inside | 2 7/8" 7.90#-L-80 BTS-6 Pup Joint X 02' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 2911 | | Inside | 2 7/8" 7.90#-L-80 BTS-6 Pup Joint X 04' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16474 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear Pin / Pin Pup Joint X 04' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16475 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear Pin / Pin Pup Joint X 06' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16476 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear T&C Pup Joint X 02' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16477 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear T&C Pup Joint X 08' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benoit - Houma | Benoit | 16479 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear T&C Pup Joint X 10' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15880 | | Inside | 3 1/2" 10.20# G3-125 Vam Top T&C Pup Joint X 02' | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15881 | | Inside | 3 1/2" 10.20# G3-125 Vam Top T&C Pup Joint X 06' | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15882 | | Inside | 3 1/2" 10.20# G3-125 Vam Top T&C Pup Joint X 08' | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15883 | | Inside | 3 1/2" 10.20# G3-125 Vam Top T&C Pup Joint X 10' | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 6195 | | Inside | 3 1/2" 12.95# 13CR-95 BTS-6 Pup Joint X 08' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16480 | | Inside | 3 1/2" 12.95# 13CR-95 RTS-6 Pin / Pin Pup Joint X 06' (Not supplied by Benoit) | | | EA | U | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 11742 | | Inside | 3 1/2" 12.95# Hyper 13CR-110 BTS-6 Pup Joint X 05' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12377 | | Inside | 3 1/2" 9.20# 13CR-85 JFE-Bear Pin / Pin Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15023 | | Inside | 3 1/2" 9.30# 13CR-85 BTS-8 Pup Joint X 10' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 7345 | | Inside | 3 1/2" 9.30# Hyper 13CR-110 BTS-8 Pup Joint X 10' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 11072 | | Inside | 3 1/2" 9.30# Hyper13CR110 BTS-8 Pin / Pin Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20084 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion Pin / Pin Pup Joint X 04' | | | EA | A | | 4 | | | 0 | | |
| Benoit - Houma | Benoit | 20085 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion Pin / Pin Pup Joint X 10' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20093 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion T&C Pup Joint X 04' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20094 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion T&C Pup Joint X 06' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20095 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion T&C Pup Joint X 08' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20096 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion T&C Pup Joint X 10' | | | EA | B | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20092 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion T&C Pup Joint X 2' 6" | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20062 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion Pin/Pin Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20019 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20200 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20020 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20021 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 06' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20022 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 08' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20023 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 10' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20199 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion T&C Pup Joint X 2'6" | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20228 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Pin /Pin Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20229 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Pin /Pin Pup Joint X 04' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20230 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Pin /Pin Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20087 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Pin / Pin Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20024 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20202 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 04' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20089 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 04' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20203 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20090 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 06' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20027 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20204 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 08' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20091 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 08' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20028 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 10' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 20088 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 2' 6" | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20201 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion T&C Pup Joint X 2'6" | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 3149 | | Inside | 2 7/8" 7.90# L-80 BTS-6 Box / WLEG | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13354 | | Inside | 2 7/8" 6.50# 9CR-80 BTS-8 S/C 8CH Combo Nipple (2.188" P.B.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12009 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16560 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 S/C Pup Joint X 08' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 6741 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 S/C Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19730 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 7347 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 S/C Pup Joint X 04' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 15024 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 S/C Pup Joint X 06' | | | EA | A | | 3 | | | 0 | | |
| Benoit - Houma | Benoit | 15001 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 S/C Pup Joint X 14' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 17714 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 S/C Pup Joint X 04' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15556 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 S/C Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 18683 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 S/C Pup Joint X 02' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 18684 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 S/C Pup Joint X 04' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 18685 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 S/C Pup Joint X 06' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 18686 | | Inside | 2 7/8" 6.50# Hyper 13CR-110 BTS-8 S/C Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 6441 | | Inside | 2 7/8" 6.50# L-80 BTS-8 S/C Pup Joint X 02' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 7315 | | Inside | 2 7/8" 6.50# L-80 BTS-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 7316 | | Inside | 2 7/8" 6.50# L-80 BTS-8 S/C Pup Joint X 06' | | | EA | A | | 4 | | | 0 | | |
| Benoit - Houma | Benoit | 12259 | | Inside | 2 7/8" 6.50# P-110 BTS-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 12260 | | Inside | 2 7/8" 6.50# P-110 BTS-8 S/C Pup Joint X 08' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 14674 | | Inside | 2 7/8" 6.50#13CR-85 BTS-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 10795 | | Inside | 2 7/8" 7.90# 13CR-95 BTS-6 S/C Pup Joint X 02' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 10800 | | Inside | 2 7/8" 7.90# 13CR-95 BTS-6 S/C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 10756 | | Inside | 3 1/2" 9.30# 13CR-85 BTS-8 S/C Pup Joint X 04' | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 13791 | | Outside | 2 7/8" 6.50# 13CR-85 BTS-8 S/C Tubing X 31' | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 18663 | | Outside | 2 7/8" 6.50# L-80 BTS-8 S/C Production Tubing X 31' | | | EA | B | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 19489 | | Inside | 2 7/8" 6.50# L-80 BTS-8 S/C Production Tubing X 31' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16632 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 S/C Box / Pin Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 8047 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 S/C Box / Pin Tubing Sub X 12" | | | EA | A | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 12258 | | Inside | 2 7/8" 6.50# P-110 BTS-8 S/C Box / Pin Sub X 12" | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16870 | | Inside | 2.313" Flo-Thru Selective, Two-way Shifting Tool, w/perforated Top Sub and full flow btm. Sub | | | EA | | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 18255 | | Inside | 3 1/2" 9.30# 13CR-110 BTS-8 Standard Sliding Sleeve (3.950"O.D. X 2.813"P.B.) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16433 | | Inside | 2 3/8" 4.70# 13CR-95 BTS-8 Selective Sliding Sleeve Assembly X 08' (1.875"P.B. 2.770" O.D. BSSD BTS-8 Selective) w/ 4' P/J on Top | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 19837 | | Inside | Spool of Control Line | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 16120 | | Inside | 2 3/8" 4.70# BTS-8 PVC Drift X 01' (1.901" O.D.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 8765 | | Inside | 2 3/8" 4.70# BTS-8 PVC Drift X 01' (1.901" O.D.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 10720 | | Inside | 3 1/2" 12.95# BTS-6 Teflon Drift (2.625" O.D.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 8697 | | Inside | 3 1/2" 9.30# BTS-8 PVC Drift (2.867" O.D.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 8650 | | Inside | 3 1/2" 9.30# BTS-8 PVC Drift X 01' (2.867" O.D.) | | | EA | A | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20280 | | Inside | 5 1/2" 23# P-110 JFE Lion Test Cap w/ 9/16" HP Autoclave (Soft Seal O-Ring ) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20281 | | Inside | 5 1/2" 23# P-110 JFE Lion Test Plug w/ 9/16" HP Autoclave (Soft Seal O-Ring ) | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 9314 | | Outside | 2 3/8" 4.60# 13CR-85 STL Tubing 31' | | | EA | U | | 2 | | | 0 | | |
| Benoit - Houma | Benoit | 15397 | | Outside | 2 3/8" 4.60# 13CR-95 STL Production Tubing X 31' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 15131 | | Outside | 2 3/8" 4.70# 13CR-95 BTS-8 Production Tubing X 31' | | | EA | B | | 1 | | | 0 | | |
| Benoit - Houma | Benoit | 20278 | | Inside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Production Tubing X 30' | | | EA | A | | 16 | | | 0 | | |

57

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benoit - Houma | Benoit | 20263 | | Outside | 2 7/8" 6.40# Hyper 13CR-110 Vam FJL Tubing X 30' | | | EA | A | | 10 | | 0 | | | |
| Benoit - Houma | Benoit | 18894 | | Outside | 2 7/8" 6.50# 13CR-85 BTS-8 Production Tubing X 31' | | | EA | B | | 3 | | 0 | | | |
| Benoit - Houma | Benoit | 13112 | | Outside | 2 7/8" 6.50# 13CR-95 BTS-8 Production Tubing X 31' | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 15555 | | Outside | 2 7/8" 7.66# Hyper 13CR-110 HDL Production Tubing X 31' | | | EA | A | | 8 | | 0 | | | |
| Benoit - Houma | Benoit | 16462 | | Outside | 2 7/8" 7.66# Hyper 13CR-110 HDL Tubing X 31' | | | EA | B | | 5 | | 0 | | | |
| Benoit - Houma | Benoit | 15399 | | Outside | 2 7/8" 7.66# Hyper 13CR-110 STL Production Tubing X 31' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 13871 | | Outside | 2 7/8" 7.66# Hyper 13CR-110 STL Production Tubing X 31' | | | EA | U | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 20512 | | Outside | 3 1/2" 9.30# 13CR-110 BTS-8 Tubing X 31' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 16478 | | Inside | 3 1/2" 10.20# 13CR-95 JFE Bear Couplings (Not supplied by Benoit) | | | EA | U | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 15884 | | Inside | 3 1/2" 10.20# G3-125 Vam Top Coupling | | | EA | U | | 3 | | 0 | | | |
| Benoit - Houma | Benoit | 20083 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion Coupling | | | EA | A | | 4 | | 0 | | | |
| Benoit - Houma | Benoit | 20061 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 1 JFE Lion Tubing Coupling | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 20082 | | Inside | 4 1/2" 15.20# 13CR-110 HYP 2 JFE Lion Coupling | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 19993 | | Inside | 4 1/2" 15.20# Hyper 13CR-110 JFE Lion Coupling | | | EA | A | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 20063 | | Inside | 5 1/2" 23# 13CR-95 JFE Lion Tubing Coupling | | | EA | A | | 5 | | 0 | | | |
| Benoit - Houma | Benoit | 20086 | | Inside | 5 1/2" 23.# 13CR-95 JFE Lion Coupling | | | EA | A | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 11155 | | Inside | 2 3/8" 4.43# 13CR8S Echo F4 Box / Pin Sub X 12" | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 15984 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 Box / Pin Tubing Sub X 06" | | | EA | A | | 3 | | 0 | | | |
| Benoit - Houma | Benoit | 15986 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 Box / Pin Tubing Sub X 12" | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 11316 | | Inside | 2 3/8" 4.70# 13CR-85 BTS-8 Box / Pin Tubing Sub X 12" | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 14688 | | Inside | 2 3/8" 4.70# 13CR-95 BTS-8 Box / Pin Sub X 06" | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 12125 | | Inside | 2 3/8" 4.70#-L-80 BTS-8 Box / Pin Sub X 12" | | | EA | A | | 2 | | 0 | | | |
| Benoit - Houma | Benoit | 9172 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Box / Pin Sub X 06" | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 8514 | | Inside | 2 7/8" 6.50# 13CR-85 BTS-8 Pin / Pin Tubing Sub X 12" | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 10707 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Box / Pin Sub X 06" | | | EA | A | | 3 | | 0 | | | |
| Benoit - Houma | Benoit | 10116 | | Inside | 2 7/8" 6.50# 13CR-95 BTS-8 Box / Pin Sub X 12" | | | EA | A | | 3 | | 0 | | | |
| Benoit - Houma | Benoit | 12255 | | Inside | 2 7/8" 6.50#-L-80 BTS-8 Box / Pin Tubing Sub X 12" | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 16162 | | Inside | 2 7/8" 7.90# 13CR-95 BTS-6 Box / WLEG | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 11365 | | Inside | 2 3/8" 4.70# Hyper 13CR110 BTS-8 Pin / 2 7/8" 6.50# 13CR8S BTS-8 Box Crossover Assembly X 13' (6' P/) Top & Bottom) | | | EA | U | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 20030 | | Outside | 5 1/2" 23# 13CR-95 JFE Lion Box / 4 1/2" 15.20# JFE Lion Pin X-Over Assembly X 12' (10' Pup On Btm.) | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 13191 | | Inside | 2 7/8" 6.40# 13CR-95 Fox-K Cplg. Box / 2 7/8" 6.50# BTS-8 Pin Upper X-Over Combo-Joint X12' | | | EA | A | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 15259 | | Inside | 3 1/2" 12.70# Hyper 13CR-110 Vam Top Box / 3 1/2" 12.95# BTS-6 Pin Lower X-Over BCSD Flo-Tool X 14' (8' proif BTS-6 PIN)damage Box and tong marks | | | EA | B | | 1 | | 0 | | | |
| Benoit - Houma | Benoit | 15258 | | Inside | 3 1/2" 12.95# Hyper 13CR-110 BTS-6 Box / 3 1/2" 12.70# Vam Top Box Upper X-Over BCSD Flo-Tool X 14' (8' proif BTS-6 Box) | | | EA | B | | 1 | | 0 | | | |
| Core - Mobile | Core Labs | 0440486 | | Core Base Yard (Mobile, AL) | STFL w/ multiquick connect removable stab plate M1 14 position 10 way 5x.05 female mvp couplers, 5x.5 female PRVC couplers | | | EA | | | 1 | | 0 | | | |
| Core - Mobile | Core Labs | #R1301 | | Core Base Yard (Mobile, AL) | 35' Reel Dynamic Flexible flowline - 5,600 ft. | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-401845-02 | 00139733-11 | ELD Rack: A83 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE | VIETNAM | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-405573-03 | 00222625-01 | ELD Rack: NYD CC-6 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 22" O.D. X 1.250" WALL B.W.P. UP AND DOWN. PROFILE MIN. I.D.18.375". 22.030" MAX O.D. STD. SERVICE. XXXX * 22" X 16" SUPPLEMENTAL ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 22" X 1.000" X-80, 60 FT JOINT WITH S-90M/MT BOX X PIN CONNECTORS FROM FRANKS CASING * 22" X 16" SUPPLEMENTAL ADAPTER: P/N 2-405573-03, CP10946-20, ITEM 27 | MC 698 #1 | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404635-03 | 00242025-01 | ELD Rack: NYD YR #4 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER: 16" 97 LB/FT, HYDRIL 511 PIN DOWN PREP. FOR WEIGHT SET SEAL ASSEMBLY, 6,500 PSI RATED. MIN. I.D. 14.549". MAT'L CLASS: AA, PSL-3. XXXX * 16" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 16" 96 LB/FT Q-125 HYDRIL 511 BOX X PIN, 20 FT. LONG * 16" CASING HANGER: CP11153-01, P/N 2-404635-03, ITEM 18 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411873-08 | 00253012-01 | ELD Rack: A85 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED, WITH EXTERNAL LOCK RING, H2S SERVICE, NOBLE QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-405573-03 | 00243387-01 | ELD Rack: NYD CC-6 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 22" O.D. X 1.250" WALL B.W.P. UP AND DOWN. PROFILE MIN. I.D.18.375". 22.030" MAX O.D. STD. SERVICE. XXXX * 22" X 16" SUPPLEMENTAL ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 22" O.D. X 1.250" WALL, API 5L GRADE X-80, DSAW, 41 FT LONG, WITH H-90M/MT BOX X PIN | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-403134-02 | 00242026-01 | ELD Rack: A85 | 22" X 16" SUPPLEMENTAL ADAPTER: P/N 2-405573-03, CP11364-10, ITEM 55 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED, H2S SERVICE | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404635-03 | 00190946-01 | ELD Rack: F219 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER: 16" 97 LB/FT, HYDRIL 511 PIN DOWN PREP. FOR WEIGHT SET SEAL ASSEMBLY, 6,500 PSI RATED. MIN. I.D. 14.549". MAT'L CLASS: AA, PSL-3 | KIT# 5 | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-305269-02 | 00200701-01 | HEMP Rack: LINER R36C | SHIPPING CENTRALIZER, 13-5/8" CASING AND 6-5/8" DRILL PIPE | GI 116,A-7 | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-305315-02 | 00201338-01 | HEMP Rack: LINER R36E | 13-5/8" X 16" LS-15 TIEBACK SEAL NIPPLE MAJOR REDRESS KIT, INCLUDES V-PACKING, SPACER RINGS AND SNAP RINGS | GI 116,A-7 | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-304687-05 | 00203557-01 | HEMP Rack: LINER LH FLOOR | "OBS" 13-5/8" LS-15 LANDING COLLAR: WITH 4.21" SEAL DIAMETER, 13-5/8" 88.2 LB./FT. G8 CDE (G8 TUBULARS CASING DRILLING ENHANCED) BOX X PIN, WITH CEMENTED REDUCED ALUMINUM INSERT, 125K YIELD MATERIAL BODY | GI 116,A-7 | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-403663-02 | 00262483-01 | ELD Rack: F197 | 18-3/4" X 14-1/2" WEAR SLEEVE, BIG BORE SYSTEM, "1" TYPE | GC 200 | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-403663-02 | 00262484-01 | ELD Rack: F197 | 18-3/4" X 14-1/2" WEAR SLEEVE, BIG BORE SYSTEM, "1" TYPE | MC 519 #3 | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-403665-02 | 00262485-01 | ELD Rack: F190 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | MC 519 #3 | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-403665-02 | 00262486-01 | ELD Rack: F202 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | MC 519 #3 | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-403666-02 | 00262487-01 | ELD Rack: F202 | 18-3/4" STABILIZER SUB FOR BIG BORE WEAR SLEEVES. 7-5/8" API REG. BOX UP X PIN DOWN. | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-403666-02 | 00262488-01 | ELD Rack: F208 | 18-3/4" STABILIZER SUB FOR BIG BORE WEAR SLEEVES. 7-5/8" API REG. BOX UP X PIN DOWN. | GC 200 | | EA | | | 1 | | 0 | | | |

58

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-405222-02 | 00262489-01 | ELD Rack: SVC F09G | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA. | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405222-02 | 00262490-01 | ELD Rack: D06G | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA. | | GC 200 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403961-02 | 00262491-01 | ELD Rack: F222 | 18-3/4" X 13-3/8" ADAPTER SLEEVE: TYPE SS-15, RUN WITH 6-5/8" TOOL JOINT BIT SUB AND 13-3/8" WEAR BUSHING, "J" LUG STYLE, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS | | GC 200 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403961-02 | 00262492-01 | ELD Rack: F221 | 18-3/4" X 13-3/8" ADAPTER SLEEVE: TYPE SS-15, RUN WITH 6-5/8" TOOL JOINT BIT SUB AND 13-3/8" WEAR BUSHING, "J" LUG STYLE, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403697-05 | 00258501-01 | ELD Rack: NYD A-12 | 22" X 18" BIG BORE II POSITIVE STOP CASING HANGER: MIN. I.D. 16.553", 18" 94 LB./FT. HYDRIL S21 PIN THREAD DOWN, PREP. FOR WEIGHT SET RESILIENT SEAL ASSEMBLY, 5,000 PSI RATED, PSL-3, STANDARD SERVICE.. XXXX * 18" CASING HANGER LOWER ID CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 17-7/8" 93.5 LB/FT P110 HYDRIL S21 BOX X PIN, 20 FT. LONG * 18" CASING HANGER: CP11970-09, P/N 2-403697-05, ITEMS 144 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403134-02 | 00109398-15 | ELD Rack: A84 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED, H2S SERVICE | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403134-02 | 00109398-16 | ELD Rack: A85 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED, H2S SERVICE | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403357-14 | 00240267-01 | ELD Rack: NYD A-12 | 18.75" X 13.62" CASING HANGER, TYPE SS-15, 13-5/8" VAM TOP (88.2 LB/FT) BOX DOWN, API 17D, V, AA, PSL-3, RATED FOR HIGH TEMPERATURE/HIGH LOAD, 12.375 MIN. I.D., FOR USE WITH BIG BORE II WELLHEAD ASSEMBLY, NOBLE QUALITY PLAN QS04.01 XXXX * 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: NOBLE CUSTOMER SUPPLIED 13-5/8" 88.2 LB/FT VAM TOP PIN X 14" 114# HYD BLUE PIN APPROX. 10 FT. * 14" CASING HANGER: P/N 2-403357-14, CP11970-16 | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411137-02 | 00258492-01 | ELD Rack: NYD CC-6 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 XXXX * 28" CASING HANGER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 28" O.D. X .750" WALL, X-56, 40 FT. LONG, WITH PLAIN END X 5-600/MT PIN * 28" CASING HANGER: P/N 2-413137-02, CP12179-04, ITEM 13 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-305854-02 | 00231477-02 | HEMP Rack: LINER CANT 2C | 11-7/8" LS-15 QUIK-DRIL LANDING COLLAR, CEMENT FILLED WITH MODIFIED ID PROFILE AND REDUCED ALUMINUM INSERT TO ACCEPT LINER WIPER PLUG WITH 4.21" SEAL DIAMETER, 11-7/8" 71.8 LB./FT. HYDRIL 523 BOX X PIN, HCQ-125, STANDARD SERVICE | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-304130-21 | 00232484-01 | HEMP Rack: LINER FLOOR | LS-15 PUMP DOWN PLUG: 2.34" DIAMETER SEAL NOSE WITH 5.5" X 4.5" X 5.5" DIAMETER WIPERS, 17.06" LONG. FOR LARGE RUNNING TOOL, COMPATIBLE WITH REDUCED ALUMINUM 9-7/8" THRU 13-5/8" LINER WIPER PLUGS (2-304685D, 2-304795 AND 2-304797) AND 9-7/8" DUAL LINER WIPER PLUG (2-304229), NOTE ONE SPACER EACH IS PLACED BETWEEN WIPERS | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 917363-24 | N/A | HEMP Rack: LINER K4C | 2.75" DIAMETER CHROME BALL | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-304228-07 | 00234525-01 | HEMP Rack: LINER R36D | 9-7/8" LS-15 LANDING COLLAR: FOR 9-5/8", 9-3/4", OR 9-7/8" DUAL LINER WIPER PLUG, LOWER SEAL BORE I.D. 4.210", UPPER SEAL BORE I.D. 6.790", BODY I.D. 8.525". 9-7/8" 62 LB./FT. HYDRIL 513 BOX X PIN, Q-125, STANDARD SERVICE | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-304229-03 | 00233379-01 | HEMP Rack: LINER PUMP CAGE | 9-5/8"/9-7/8" LS-15 DUAL LINER WIPER PLUG: FOR 9-5/8" 36-61 LB./FT., 9-3/4" 59.2 LB./FT., OR 9-7/8" 62.8-65.1 CASING, WITH SECONDARY RELEASE MECHANISM FOR LEAD AND FOLLOW PLUGS. USE WITH 2.130" O.D. LEAD AND 2.340" O.D. FOLLOW PUMP DOWN PLUG SEAL SUBS. | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-304228-07 | 00234530-01 | HEMP Rack: FLOOR | 9-7/8" LS-15 LANDING COLLAR: FOR 9-5/8", 9-3/4", OR 9-7/8" DUAL LINER WIPER PLUG, LOWER SEAL BORE I.D. 4.210", UPPER SEAL BORE I.D. 6.790", BODY I.D. 8.525". 9-7/8" 62 LB./FT. HYDRIL 513 BOX X PIN, Q-125, STANDARD SERVICE | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404635-10 | 00253010-01 | ELD Rack: NYD YR #3 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER, TYPE SS-10/15, 16" HYDRIL S13 (109 LB/FT) PIN DOWN, V, AA, PSL-3, MIN. I.D., 14.549", FOR USE WITH BIG BORE II WELLHEAD SYSTEM, FOR WEIGHT SET SEAL ASSEMBLY, NOBLE QUALITY PLAN QS04.01 XXXX * 16" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 16" 109 LB/FT, P-110 IC, HYDRIL S13 BOX X PIN, 20 FT. LONG * 16" CASING HANGER: CP12439-02, P/N 2-404635-10, ITEMS 77 | | MC 479 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404635-01 | 00238983-01 | ELD Rack: F185 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER: TYPE SS-10/15, 16" BLANK PIN DOWN. PREP. FOR WEIGHT SET SEAL ASSEMBLY. 6,500 PSI RATED. MIN. I.D. 14.549", TEMP V, MAT'L AA, PSL-3 | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-305736-02 | 00235699-01 | HEMP Rack: LINER | REDRESS KIT, FOR 7" X 9-7/8" TIEBACK SEAL NIPPLE (P/N 2-305735-02), MODEL LS15, WITH 8.00 OD HNBR V-PKNG. INCLUDES SPACER RINGS AND RETAINER RINGS. | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401845-02 | 00258512-01 | ELD Rack: A84 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-402060-02 | 00239704-01 | ELD Rack: A81 | 18-3/4" EMERGENCY SEAL ASSEMBLY, TYPE SS-15 SYSTEM, H2S SERVICE, INCLUDES OUTER LOCK RING. | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-402060-02 | 00236967-03 | ELD Rack: A81 | 18-3/4" EMERGENCY SEAL ASSEMBLY, TYPE SS-15 SYSTEM, H2S SERVICE, INCLUDES OUTER LOCK RING. | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413140-02 | 00240513-01 | ELD Rack: F188 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER. 16" 97 LB/FT, HYDRIL S11 PIN DOWN PREP. FOR WEIGHT SET SEAL ASSEMBLY. 6,500 PSI RATED. MIN. I.D. 14.549". MAT'L CLASS: AA, PSL-3. NOBLE QUALITY PLAN QS04.01 | | GOM STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408785-03 | 00236564-01 | ELD Rack: A84 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED, H2S SERVICE NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 917363-24 | N/A | HEMP Rack: LINER K4C | 2.75" DIAMETER CHROME BALL | | MP 295 #1 | EA | | | 1 | | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dril quip - Houston | Dril quip | 2-404191-12 | 00260141-01 | ELD Rack: NYD CC-6 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 XXXX * 22" X 18" BIG BORE II CASING HANGER ADAPTER JOINT FABRICATION: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.000" WALL, API SL GRADE X-80, D.S.A.W., RANGE III WITH 590M/MT BOX X PIN * 22" SUPPLEMENTAL ADAPTER: P/N 2-404191-12, CP12555-60, FROM ITEM 27 * TRANSITION SWEDGE: P/N 2-404391-07, CP12555-63, FROM ITEM 28 | | GC 40-2 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-406862-03 | 00258494-01 | ELD Rack: NYD CC-6 | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.25" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING XXXX * 18-3/4" HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API SL GRADE X-80, D.S.A.W, WITH H-90DM/MT PIN BY PLAIN END BEVEL * 18-3/4" WELLHEAD HOUSING: P/N 2-406862-03, CP12564-01, ITEM 91 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-405573-04 | 00225597-01 | ELD Rack: L88 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER 22" O.D. X 1.250" WALL B.W.P. UP AND DOWN. PROFILE MIN. I.D.18.375". 22.030" MAX O.D. STD. SERVICE. NOBLE QUALITY PLAN QS04.01 | | GOM STOCK | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-304331-12 | 00242625-01 | HEMP Rack: LINER FLOOR | LS-15 PUMP DOWN PLUG: 2.130" DIAMETER, FOR 5.50" DIA. X 4.50" DIA. X 5.50" DIA. X 17.50" LONG, FOR LARGE RUNNING TOOL, COMPATIBLE WITH LEAD LINER WIPER PLUG FOR 9-7/8" DUAL LINER WIPER PLUG SYSTEM | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-305735-02 | 00240258-01 | HEMP Rack: LINER CANT 2C | 7" X 9-7/8" TIEBACK-SEAL-NIPPLE, MODEL LS15, FOR 15 FT. LONG SEAL BORE. 7.00" 42.7LBS./FT. VAM SLIJ-II BOX UP WITH 8.25" OD LOCATOR COLLAR X HALF MULE SHOE DOWN. SEALS INSIDE 8.000" I.D. PBR, 4 SETS HNBR V-PKG, S.730 MIN. ID, Q-125 SERVICE | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-415025-03 | 00253615-01 | ELD Rack: NYD CC-6 | 22" X 16" ADAPTER HOUSING, 22" X 1.250" WALL BUTTWELD PREP DOWN X 22" X 1.250" WALL BUTTWELD PREP UP, V, AA, PSL-3, WITH 18.375" MIN. I.D. FO 16" "NO-GO" STYLE SUPPLEMENTAL HANGER (WEIGHT SET), MONOGRAM PER API 17D, BIG BORE II, WITH O.D. LOCK RING PROFILE, NOBLE QUALITY PLAN QS04.01 XXXX * 22" X 16" BIG BORE II CASING HANGER ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 22" O.D. X 1.250" WALL, API SL GRADE X-80, D.S.A.W, RANGE III, WITH H-90DM/MT BOX * 22" SUPPLEMENTAL ADAPTER: P/N 2-415025-03, CP12575-03, ITEM 73 | | MC 479 #1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-901022-04 | N/A | ELD Rack: F216 | GASKET, "VX-2" W/HYCAR SEAL RING, 18-3/4"-10,000 PSI WP, 316 SS, VETCO P/N 111227-1 | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-901022-04 | N/A | ELD Rack: F216 | GASKET, "VX-2" W/HYCAR SEAL RING, 18-3/4"-10,000 PSI WP, 316 SS, VETCO P/N 111227-1 | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-304441-03 | 00163826-01 | HEMP Rack: LINER PUMP CAGE | LS-15 LINER WIPER PLUG: 11-3/4" 54-83 LB./FT, 11-7/8" 71.8 LB./FT WITH EMERGENCY RELEASE SET AT 4,000 PSI, HSN MATERIAL. | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 917363-24 | N/A | HEMP Rack: LINER K4C | 2.75" DIAMETER CHROME BALL | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-304330-21 | 00243184-01 | HEMP Rack: LINER K1C | LS-15 PUMP DOWN PLUG: 2.34" DIAMETER SEAL NOSE WITH 5.5" X 4.5" X 5.5" DIAMETER WIPERS, 17.06" LONG, FOR LARGE RUNNING TOOL, COMPATIBLE WITH REDUCED ALUMINUM 9-7/8" THRU 13-5/8" LINER WIPER PLUGS (2-304685D, 2-304795 AND 2-304797) AND 9-7/8" DUAL LINER WIPER PLUG (2-304229), NOTE ONE SPACER EACH IS PLACED BETWEEN WIPERS | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-404254-05 | 00262496-01 | ELD Rack: A80 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | GC 200 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-304998-04 | 00243829-01 | HEMP Rack: LINER CANT 2C | LINER HANGER PACKER, 11-7/8" 71.8# X 13-5/8" 68#-72# OR 13-5/8" 88.2# OR 14" 115#, MODEL LS15, 11-7/8" 71.8# HYDRIL S23 BOX DOWN, W/15 FT. TBR, Q-125 SERVICE HIGH PRESSURE, BODY IS 135 KSI AND CONE IS 150 KSI YIELD, MAXIMUM CASING I.D. TO SET HANGER 12.570" | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-404172-09 | 00258483-01 | ELD Rack: RISER N-13 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 XXXX * 36" WELLHEAD HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, QTY 1, 36" O.D. X 2.000" WALL API 5L GRADE X-70M, D.S.A.W., 60 FT LONG, WITH HC-100D/MT PIN X PLAIN END * 36" WELLHEAD HOUSING: CP12635-01, P/N 2-404172-09, ITEM 80 * 36" X 28" ADAPTER WITH ANNULUS OUTLET PORTS: CP12682-04, P/N 2-413195-02, ITEM 81 * 50 TON LIFT EYES: QTY. 2, CP 13122-01, P/N 2-304782-02, ITEM 82 * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: QTY. 1: CP12723-03, P/N 2-413828-02, ITEM 83 * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: QTY. 1: CP12723-11, P/N 2-411654-02 , ITEM 84 * WELD ON FLANGE FOR SLOPE INDICATOR BRACKET: QTY. 2, CP12433-01 & CP12433-02, P/N 2-401350-02, ITEMS 85 & 86 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-402060-02 | 00245291-09 | ELD Rack: A79 | 18-3/4" EMERGENCY SEAL ASSEMBLY, TYPE SS-15 SYSTEM, H2S SERVICE, INCLUDES OUTER LOCK RING. | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-402060-02 | 00245291-10 | ELD Rack: A80 | 18-3/4" EMERGENCY SEAL ASSEMBLY, TYPE SS-15 SYSTEM, H2S SERVICE, INCLUDES OUTER LOCK RING. | | GC 200 | EA | | | 1 | | | 0 | | |
| Dril quip - Houston | Dril quip | 2-305593-03 | 00244075-01 | HEMP Rack: LINER CANT 2C | 9.63" X 11.75" LS-15 LINER HANGER PACKER WITH LS-15 SEAL, C-RING SLIP, 15 FT. 135,000 YIELD TIE-BACK RECEPTACLE, AND WITH HOLD DOWN SLIP. COMPATIBLE WITH 9-5/8" 53.5 LB/FT OR 9-7/8" 62.8 LB/FT X 11-3/4" 60-65 LB/FT OR 11-7/8" 71.8 LB/FT, MIN. I.D. 8.553". 9-7/8" 62.8 LB/FT HYDRIL S23 BOX DOWN, Q-125, STANDARD SERVICE. XXXX * 9-7/8" X 11-7/8" LINER HANGER MAKE-UP CONSISTS OF: * 9-7/8" X 11-7/8" LINER HANGER: ITEM 1 | | MP 295 #1 | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Driliquip - Houston | Driliquip | 2-305220-07 | 00235308-01 | HEMP Rack: LINER | 7" LS-15 LANDING COLLAR: FOR 7" DUAL PLUG, LOWER SEAL BORE I.D. 3.010", UPPER SEAL BORE I.D. 5.210" MIN., WITH 7" 42.7 LB./FT. VAM SLIJ-II BOX X PIN, Q-125 SERVICE, | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-408455-05 | 00253008-01 | ELD Rack: A87 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-413137-02 | 00260138-01 | ELD Rack: RISER S-14 | 36" X 28" POSITIVE STOP CASING HANGER: 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01. XXXX * 36" X 28" POSITIVE STOP CASING HANGER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 28" O.D. X .750" WALL, X-60, RANGE 3, WITH PLAIN END X S-60D/MT PIN * PIPE: CUSTOMER SUPPLIED, 28" O.D. X .750" WALL, X-56, RANGE 3, PEB X PEB * 28" CASING HANGER: P/N 2-413137-02, CP12684-02, ITEM 21 | | GC 40-2 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-413137-02 | 00246228-04 | ELD Rack: RISER N-13 | 36" X 28" POSITIVE STOP CASING HANGER: 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01. XXXX * 36" X 28" POSITIVE STOP CASING HANGER FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 28" O.D. X .750" WALL, X-60, RANGE III, PEB X PEB * PIPE: CUSTOMER SUPPLIED, 28" O.D. X .750" WALL, X-60, RANGE III, PEB X S-60D/MT PIN * 28" CASING HANGER: P/N 2-413137-02, CP12684-04, ITEMS 16. | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-306141-02 | 00243399-01 | HEMP Rack: LINER PUMP CAGE | 11-3/4" LS-15 LANDING COLLAR, REDUCED ALUMINUM INSERT TO ACCEPT LINER WIPER PLUG WITH 4.21" SEAL DIAMETER, 11-3/4" 65# VAM SLIJ-II BOX X PIN, P-110, STANDARD SERVICE | | MP 295 #1 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-901022-02 | N/A | ELD Rack: F189 | 18-3/4" VX-2/VT-2 RING GASKET: 15,000 PSI W.P., STAINLESS STEEL | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-901022-02 | N/A | ELD Rack: F189 | 18-3/4" VX-2/VT-2 RING GASKET: 15,000 PSI W.P., STAINLESS STEEL | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-901022-02 | N/A | ELD Rack: F189 | 18-3/4" VX-2/VT-2 RING GASKET: 15,000 PSI W.P., STAINLESS STEEL | | NICARAGUA - PS1 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-414840-02 | N/A | ELD Rack: F49 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-414840-02 | N/A | ELD Rack: F49 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-414840-02 | N/A | ELD Rack: F49 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: SVC | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-414840-02 | N/A | ELD Rack: F49 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: SVC | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: SVC | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: SVC | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-904265-02 | N/A | ELD Rack: SVC | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-413828-02 | 00258485-01 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-411654-02 | 00258486-01 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 PART OF CP12723-11 MUDSTICK P/N 2-408899-02, S/N 0023893-10 IN LOC=OOSG. | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-404191-12 | 00248243-01 | ELD Rack: NYD CC-6 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 XXXX * 22" X 18" BIG BORE II CASING HANGER ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.000" WALL, API 5L GRADE X-80, D.S.A.W., RANGE III WITH 590M/MT BOX X PIN * 22" SUPPLEMENTAL ADAPTER: P/N 2-404191-12, CP12739-01, ITEM 21 * TRANSITION SWEDGE: P/N 2-404391-07, CP12627-03, ITEM 22. | | GC 200 | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-404391-07 | 00246503-02 | ELD Rack: A05G | CROSSOVER SWEDGE: WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Driliquip - Houston | Driliquip | 2-404191-12 | 00249299-02 | ELD Rack: RISER N-21 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 XXXX * 22" X 18" BIG BORE II CASING HANGER ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.000" WALL, API 5L GRADE X-80, D.S.A.W., RANGE III WITH 590M/MT BOX X PIN, * 22" SUPPLEMENTAL ADAPTER: P/N 2-404191-12, CP12793-02, ITEM 24, * TRANSITION SWEDGE: P/N 2-404391-07, CP12756-01, ITEM 25. | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-410497-04 | 00253014-01 | ELD Rack: NYD A-12 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, 14" HYDRIL S23 (115 LB./FT.) BOX DOWN, 12.375" MIN. I.D., API 17D, V, AA, PSL-3, RATED FOR HIGH TEMPERATURE/HIGH LOAD, NOBLE QUALITY PLAN QP-QS04.01 XXXX * 18-3/4" X 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 14" O.D.,113#, TN-110SS, HYDRIL S23 PIN X PIN, 20 FT. LONG * 18-3/4" X 14" CASING HANGER: P/N 2-410497-04, CP12795-02, ITEMS 142 | | MC 479 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00249305-01 | ELD Rack: F201 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00249305-02 | ELD Rack: F201 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00248266-01 | ELD Rack: F210 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00246754-01 | ELD Rack: F210 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00260525-01 | ELD Rack: NYD CC-6 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D. 18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 XXXX * 22" X 16" BIG BORE II CASING HANGER ADAPTER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 22" O.D. X 1.250" WALL, API 5L GRADE X-80, D.S.A.W, RANGE III, WITH H-90DM/MT PIN BY H-90M/MT BOX * 22" SUPPLEMENTAL ADAPTER: P/N 2-413198-02, CP12828-04, FROM ITEM 97 | | GC 40-2 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00270978-02 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00260131-01 | ELD Rack: RISER N-18 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 XXXX * 36" WELLHEAD HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, QTY 1, 36" O.D. X 2.000" WALL API 5L GRADE X-70M, D.S.A.W., RANGE III, WITH HC-100D/MT PIN X PLAIN END * PIPE: CUSTOMER SUPPLIED, QTY 1, 36" O.D. X 2.000" WALL API 5L GRADE X-70M, D.S.A.W., RANGE III, PEB X PEB * 36" WELLHEAD HOUSING: CP12861-02, P/N 2-404172-09, ITEM 10 * 36" X 28" ADAPTER WITH ANNULUS OUTLET PORTS: CP12683-01, P/N 2-413195-02, ITEM 11 * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: QTY. 1: CP13218-02, P/N 2-413828-02, ITEM 12 * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: QTY. 1: CP13326-02, P/N 2-411654-02 , ITEM 13 * ADAPTER SUB: QTY. 1, CP13147-02, P/N 2-408274-03 | | GC 40-2 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-04 | 00258509-01 | ELD Rack: NYD YR #5 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, 14" HYDRIL S23 (115 LB./FT.) BOX DOWN, 12.375" MIN. I.D., API 17D, V, AA, PSL-3, RATED FOR HIGH TEMPERATURE/HIGH LOAD, NOBLE QUALITY PLAN QP-QS04.01 XXXX * 18-3/4" X 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 14" O.D., 113# TN125HC, HYDRIL S23 PIN X PIN, 20 FT LONG * 14" CASING HANGER:, P/N 2-410497-04, CP12918-02, ITEM 71 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00272883-01 | ELD Rack: RISER N-10 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 XXXX * 36" X 28" POSITIVE STOP CASING HANGER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 28" O.D. X .750" WALL, X-60, APPROX. 40 FT. LONG, PEB X PEB, * 28" CASING HANGER: P/N 2-413137-02, CP12941-01, ITEMS 15. | | GC 200 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-22 | 00258505-01 | ELD Rack: NYD YR #5 | 22" X 16" BIG BORE II POSITIVE CASING HANGER, 0-10,000 PSI, TYPE SS-10/15, (94.50 - 97 LB./FT.), HYDRIL 511 PIN DOWN, V, AA, PSL-3, WITH 14.590" MIN. I.D., FOR USE WITH WEIGHT SET SEAL ASSEMBLY, NOBLE QUALITY PLAN QS04.01 XXXX * 16" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 16" 96 LB/FT, Q-125, HYDRIL 511 BOX X PIN, 20 FT. LONG * 16" CASING HANGER: CP12959-01, P/N 2-407284-22 | | MC 339 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00257373-01 | ELD Rack: A81 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00273221-01 | ELD Rack: A80 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00273221-02 | ELD Rack: A80 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 917254-29 | N/A | ELD Rack: A05G | 17 TON SHACKLE ANCHOR BOLT TYPE, 1-1/2" NOM. FED SPEC RR-C-271D, TYPE IVA, GRADE A, CLASS 3, SPECIAL, CROSBY P/N 1019631 G-2130 TO MEET GOM CERTIFIED SLING & RIGGING PROCEDURE QTY. (32) LEFT TO USE. | | | EA | | | 32 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00274092-02 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 917146-181 | N/A | ELD Rack: F185 | HEX HEAD BOLTS, 3/4" - 10 UNRC X 2-1/2" LONG NEW. QTY (24) LEFT TO USE. | | | EA | | | 40 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-02 | 00273205-04 | ELD Rack: F191 | WELD ON FLANGE FOR 36"/38" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-02 | 00273205-06 | ELD Rack: F191 | WELD ON FLANGE FOR 36"/38" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-02 | 00273205-08 | ELD Rack: F191 | WELD ON FLANGE FOR 36"/38" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-06 | 00262335-05 | ELD Rack: NYD YR #2 | 22" X 18" BIG BORE II POSITIVE STOP CASING HANGER: MIN. I.D. 16.600". 18", 117#, VAM HDL PIN DOWN. PREP. FOR WEIGHT SET RESILIENT SEAL ASSEMBLY. 5,000 PSI RATED. PSL-3, STD. SERVICE. XXXX * 18" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 18", 117 LB/FT, Q125-HP, VAM HDL BOX X PIN, 20 FT. LONG, * 22" X 18" CASING HANGER:, P/N 2-413138-06, CP13056-02 , ITEMS 27. | | MC 519 #3 | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-06 | 00275293-03 | ELD Rack: NYD YR #3 | 22" X 18" BIG BORE II POSITIVE STOP CASING HANGER: MIN. I.D. 16.600". 18", 117#, VAM HDL PIN DOWN. PREP. FOR WEIGHT SET RESILIENT SEAL ASSEMBLY. 5,000 PSI RATED. PSL-3, STD. SERVICE. XXXX * 18" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 18", 117 LB/FT, Q125-HP, VAM HDL BOX X PIN, 20 FT. LONG, * 22" X 18" CASING HANGER:, P/N 2-413138-06, CP13056-03, ITEMS. | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00260987-01 | ELD Rack: SVC F06G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP QS04.01 XXXX * 18-3/4" HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API SL GRADE X-80, D.S.A.W, RANGE III WITH H-90DM/MT PIN BY PLAIN END BEVEL * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API SL GRADE X-80, D.S.A.W, RANGE III, PE8 X PE8 * 18-3/4" WELLHEAD HOUSING: P/N 2-406862-07, CP13113-02, ITEM 25 | | GC 40-2 | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-304782-02 | IN CP FILE | ELD Rack: J2 | LIFTING EYE, (50 TON), STANDARD DUTY, FOR 17 TON SHACKLE QTY. (36) LEFT TO USE. | | | EA | | | 36 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408274-03 | 00248854-02 | ELD Rack: L52 | SUPPLEMENTAL ADAPTER, TYPE SS-15, 36" X 2.000" WALL BUTTWELD PREP. DOWN X 36" X 2.000" WALL BUTTWELD PREP. UP, FOR MOUNTING SLOPE INDICATOR BRACKETS AND ANODES | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408274-03 | 00247448-04 | ELD Rack: L51 | SUPPLEMENTAL ADAPTER, TYPE SS-15, 36" X 2.000" WALL BUTTWELD PREP. DOWN X 36" X 2.000" WALL BUTTWELD PREP. UP, FOR MOUNTING SLOPE INDICATOR BRACKETS AND ANODES | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408274-03 | 00247448-05 | ELD Rack: L51 | SUPPLEMENTAL ADAPTER, TYPE SS-15, 36" X 2.000" WALL BUTTWELD PREP. DOWN X 36" X 2.000" WALL BUTTWELD PREP. UP, FOR MOUNTING SLOPE INDICATOR BRACKETS AND ANODES | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 000276738-01 | ELD Rack: A83 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 000276738-01 | ELD Rack: A83 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00260133-01 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN QS04.01 | | GC 40-2 | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-04 | 00260537-01 | ELD Rack: NYD A-12 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, 14" HYDRIL S23 (15S LB./FT.) BOX DOWN, 12.375" MIN. I.D., API 17D, V, AA, PSL-3, RATED FOR HIGH TEMPERATURE/HIGH LOAD, NOBLE QUALITY PLAN QP-QS04.01 XXXX * 18-3/4" X 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 14" O.D., 116# Q125ICY, HYDRIL S23 PIN X PIN, 20 FT. LONG * 18-3/4" X 14" CASING HANGER:, P/N 2-410497-04, CP13237-01, ITEMS 117 | | GC 40-2 | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00258507-01 | ELD Rack: A85 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | MC 339 #1 | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00281043-02 | ELD Rack: F209 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00281043-03 | ELD Rack: F209 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00260134-01 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN QS04.01 PART OF CP13326-02 INCLUDES A MUDSTICK P/N 2-408899-02,S/N 00249215-03 RETURNED UNUSED ON 4/10/19 IN LOC=OO1G. | | GC 40-2 | EA | | | 1 | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-413198-02 | 00271250-01 | ELD Rack: B13G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D. 18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-407284-22 | 00260532-01 | ELD Rack: NYD YR #5 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER, 0-10,000 PSI, TYPE SS-10/15, (94.50 - 97 LB./FT.), HYDRIL 511 PIN DOWN, V, AA, PSL-3, WITH 14.590" MIN. I.D., FOR USE WITH WEIGHT SET SEAL ASSEMBLY, NOBLE QUALITY PLAN QS04.01 XXXX * XXXX * 16" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 16" 96 LB/FT, Q125, HYDRIL 511 BOX X PIN, 20 FT. LONG * 16" CASING HANGER: CP13360-02, P/N 2-407284-22, ITEMS 115 | | GC 40-2 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-410497-04 | 00284131-01 | ELD Rack: F199 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, 14" HYDRIL 523 (115 LB./FT.) BOX DOWN, 12.375" MIN. I.D., API 17D, V, AA, PSL-3, RATED FOR HIGH TEMPERATURE/HIGH LOAD, NOBLE QUALITY PLAN QP-QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-415620-02 | 00257058-01 | ELD Rack: F193 | 18-3/4" X 9-5/8" WEAR BUSHING, TYPE SS-15, 9.555" MIN. I.D., NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-415620-02 | 00257059-01 | ELD Rack: F193 | 18-3/4" X 9-5/8" WEAR BUSHING, TYPE SS-15, 9.555" MIN. I.D., NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00288143-01 | ELD Rack: F215 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00288143-02 | ELD Rack: F215 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | BBII WELLHEAD SYSTEMS | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413742-04 | 00257370-01 | ELD Rack: NYD YR #2 | 18-3/4" X 10-3/4" BIG BORE II HANGER, TYPE SS-15, FOR H2S, WITH 10-3/4" TENARIS HYDRIL WEDGE 563 (73.20 #/FT) BOX DOWN, WITH 9.927" MIN. I.D., WITH INCONEL 625 OVERLAY IN TUBING HANGER, SEAL AREA ASSEMBLY, WITH HIGH TEMP/HIGH LOAD GROOVES, NOBLE QUALITY PLAN QS04.01 XXXX * 18-3/4" X 10-3/4" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 10-3/4" O.D., 74.0#, HCQ-125 TN-125, HYDRIL 563 PIN X HYD 563 DOPELESS PIN, 20 FT. LONG, * 18-3/4" X 10-3/4" CASING HANGER:, P/N 2-413742-04, CP13807-02 , ITEMS 37. | | MC 519 #3 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413742-03 | 00288009-02 | ELD Rack: NYD YR #5 | 18-3/4" X 10-3/4" CASING HANGER, TYPE SS-15, FOR H2S, WITH 10-3/4" TENARIS HYDRIL WEDGE 563 (79.20 #/FT) BOX DOWN, WITH 9.927" MIN. I.D., WITH INCONEL 625 OVERLAY IN TUBING HANGER, SEAL AREA ASSEMBLY, WITH HIGH TEMP/HIGH LOAD GROOVES, NOBLE QUALITY PLAN QS04.01 XXXX * 18-3/4" X 10-3/4" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 10-3/4" O.D., 79.22#, C-110, HYDRIL 563 PIN X HYD 563 DOPELESS PIN, 20 FT. LONG, * 18-3/4" X 10-3/4" CASING HANGER:, P/N 2-413742-03, CP13880-02 & ITEMS 37 | | MC 948 #4 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00260535-01 | ELD Rack: A84 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS). H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | GC 40-2 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-414283-02 | 00258681-01 | ELD Rack: F219 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V, DD. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN QS04.01 | | GC 200 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-401350-02 | 00276743-02 | ELD Rack: F191 | WELD ON FLANGE FOR 36"/38" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-401350-02 | 00283739-01 | ELD Rack: F191 | WELD ON FLANGE FOR 36"/38" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-408595-15 | 00298288-02 | ELD Rack: NYD YR #2 | 18-3/4" X 10-3/4" CASING HANGER, 10.75" 85.30# JFELION DR ASM BOX DOWN, 18.615" MAX OD X 9.160" MIN ID, V, DD, PSL-3, F/H2S, RATED F/HIGH TEMP./HIGH LOAD XXXX * 10-3/4" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 10-3/4", 85.30 LB/FT, Q125-ICY, JFELION DR ASM PIN X MAC II PIN, 20 FT. LONG * 10-3/4" CASING HANGER:, P/N 2-408595-15, CP14218-02 ITEMS 2. | | GC 40-1 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00290613-02 | ELD Rack: RISER S-14 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 XXXX * 36" WELLHEAD HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 36" O.D. X 2.000" WALL API 5L GRADE X-70, D.S.A.W., PEB X PEB, APPROX. 40 FT. LONG * PIPE: CUSTOMER SUPPLIED, 36" O.D. X 2.000" WALL API 5L GRADE X-70, D.S.A.W., PEB X HC-1000/MT PIN, APPROX. 40 FT. LONG * 36" WELLHEAD HOUSING: CP14274-02, P/N 2-404172-09, ITEM 1, * 36" X 28" ADAPTER WITH ANNULUS OUTLET PORTS: CP14394-01, P/N 2-413195-02, ITEM 2, * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: CP14274-06, P/N 2-413828-02, ITEM 3, * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: CP14274-51, P/N 2-411654-02 , ITEM 4, * WELD ON FLANGE FOR SLOPE MOUNTING BRACKET: QTY. 2, CP12634-05 & CP12634-06, P/N 2-401350-02, ITEMS 5 & 6. | | MC 519 #3 | EA | | | 1 | | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-404172-09 | 00290613-03 | ELD Rack: RISER N-5 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL.  MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D.  PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 XXXX * 36" WELLHEAD HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 36" O.D. X 2.000" WALL API 5L GRADE X-70, D.S.A.W., PEB X PEB, APPROX. 40 FT. LONG, * PIPE: CUSTOMER SUPPLIED, 36" O.D. X 2.000" WALL API 5L GRADE X-70, D.S.A.W., PEB X HC-1000/MT PIN, APPROX. 40 FT. LONG, * 36" WELLHEAD HOUSING: CP14274-03, P/N 2-404172-09, ITEM 8, * 36" X 28" ADAPTER WITH ANNULUS OUTLET PORTS: CP14394-02, P/N 2-413195-02, ITEM 9, * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: CP14274-07, P/N 2-413828-02, ITEM 10, * SLOPE INDICATOR MOUNTING BRACKET TO BE INSTALLED: CP14274-52, P/N 2-411654-02 , ITEM 11, * WELD ON FLANGE FOR SLOPE MOUNTING BRACKET: QTY. 2, CP12727-01 & CP12727-02, P/N 2-401350-02, ITEMS 12 & 13. |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00290920-02 | ELD Rack: SVC E08G | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN QS04.01 | MC 519 #3 |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00290920-04 | ELD Rack: HEAVY FAB | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN QS04.01 |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | MC 519 #3 |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | MC 519 #3 |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | MC 519 #3 |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | MC 519 #3 |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | MC 519 #3 |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-414840-02 | N/A | ELD Rack: F56 | 4" BALL VALVE ASSEMBLY WITH 4" BALL VALVE, 4" NIPPLE AND COUPLING | MC 519 #3 |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F224 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F224 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F224 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F224 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F203 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J59 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F203 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F196 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00298868-02 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN QS04.01 |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00298868-03 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN QS04.01 |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00298868-01 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN QS04.01 |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00298305-03 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | GC 40-2 |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00298305-02 | ELD Rack: A83 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 |  |  | EA |  |  | 1 |  |  | 0 |  |  |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00298305-01 | ELD Rack: A85 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 |  |  | EA |  |  | 1 |  |  | 0 |  |  |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-411654-02 | 00299798-02 | ELD Rack: NYD B8-9 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/1S, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN QS04.01 | | MC 519 #3 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00299798-03 | ELD Rack: HEAVY FAB | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/1S, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00299826-01 | ELD Rack: L75 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00299826-02 | ELD Rack: L77 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00299826-03 | ELD Rack: F185 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00298248-01 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00298248-05 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-900423-13 | PO# 7366251 | ELD Rack: F207 | FULL COUPLING, 4" NPT FEMALE X 4" NPT FEMALE QTY (24) LEFT TO USE. | | | EA | | | 60 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00283683-01 | ELD Rack: L83 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D 18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00283683-02 | ELD Rack: F51 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D 18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00283683-03 | ELD Rack: L82 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D 18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00290118-01 | ELD Rack: RISER N-20 | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP QS04.01 XXXX * 18-3/4" HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API 5L GRADE X-80, D.S.A.W., APPROX. 40 FT. LONG, PER X PER, * 18-3/4" WELLHEAD HOUSING: P/N 2-406862-07, CP14419-01, ITEMS 19. | | GC 200 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-415343-04 | 00302847-02 | ELD Rack: SVC D15G | 18-3/4" X 10-3/4" CASING HANGER W/10-3/4" VAM SLJI-II (65.7 LBS./FT.) BOX DOWN, 18.615" MAX OD X 9.555" MIN ID, V, DD, PSL-3, F/H2S, RATED F/HIGH TEMP/HIGH LOAD XXXX * 10-3/4" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 10-3/4", 65.7 LB/FT, Q125-HC, VAM SLJI-II PIN X PIN, 20 FT. LONG, * 10-3/4" CASING HANGER:, P/N 2-415343-04, CP14502-02 , ITEMS 38. | | GC 200 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00290613-01 | ELD Rack: B15G | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00301779-01 | ELD Rack: NYD CC-9 16 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F196 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J30 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F203 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: F203 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J44 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J44 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J44 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J44 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J30 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J59 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J30 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J30 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J2 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J2 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J2 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J16 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J9 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J9 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE.  (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00303231-01 | ELD Rack: L86 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00283683-04 | ELD Rack: L73 | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD MOLY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | |
| Drilquip - Houston | Drilquip | 917146-181 | N/A | ELD Rack: F207 | HEX HEAD BOLTS, 3/4" - 10 UNRC X 2-1/2" LONG | | | EA | | | 16 | | | 0 | |

67

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-415343-06 | 00304950-01 | ELD Rack: F191 | 18-3/4" X 10-3/4" CASING HANGER, 11-1/2" TENARIS TSH WEDGE 623 DOPELESS (98.20 LB/FT) BOX DOWN X , V, DD, PSL-3, RATED F/HIGH TEMP/HIGH LOAD, F/H2S | | CUSTOMER PROPERTY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-415343-06 | 00304950-02 | ELD Rack: F204 | 18-3/4" X 10-3/4" CASING HANGER, 11-1/2" TENARIS TSH WEDGE 623 DOPELESS (98.20 LB/FT) BOX DOWN X , V, DD, PSL-3, RATED F/HIGH TEMP/HIGH LOAD, F/H2S | | CUSTOMER PROPERTY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00304837-01 | ELD Rack: L71 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00304837-02 | ELD Rack: L71 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00304257-01 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00304257-02 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00304257-03 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00304257-04 | ELD Rack: A05G | CROSSOVER SWEDGE:  WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304566-01 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304566-02 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304566-03 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304566-04 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304808-01 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304808-02 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304808-03 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00304808-04 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411137-02 | 00304834-01 | ELD Rack: L69 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411137-02 | 00304834-02 | ELD Rack: L70 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411137-02 | 00304834-03 | ELD Rack: L75 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411137-02 | 00304834-04 | ELD Rack: L70 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00305662-03 | ELD Rack: NYD CC-9 16 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | DW GOM INVENTORY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00305662-01 | ELD Rack: NYD CC-9 15 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | DW GOM INVENTORY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00305662-02 | ELD Rack: NYD CC-9 15 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | DW GOM INVENTORY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-415343-06 | 00306737-01 | ELD Rack: F191 | 18-3/4" X 10-3/4" CASING HANGER, 11-1/2" TENARIS TSH WEDGE 623 DOPELESS (98.20 LB/FT) BOX DOWN X , V, DD, PSL-3, RATED F/HIGH TEMP/HIGH LOAD, F/H2S | | CUSTOMER PROPERTY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-415343-06 | 00306737-02 | ELD Rack: F191 | 18-3/4" X 10-3/4" CASING HANGER, 11-1/2" TENARIS TSH WEDGE 623 DOPELESS (98.20 LB/FT) BOX DOWN X , V, DD, PSL-3, RATED F/HIGH TEMP/HIGH LOAD, F/H2S | | CUSTOMER PROPERTY | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-01 | ELD Rack: I-3 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-02 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-03 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-04 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-05 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-06 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-07 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-401350-03 | 00302338-08 | ELD Rack: F191 | WELD ON FLANGE FOR 36" WELLHEAD TO ALLOW INSTALLATION OF MOUNTING BRACKET PER NOBLE QP Q504.01 | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J16 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J37 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J9 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J16 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J16 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J9 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J38 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J39 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: F217 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J59 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J59 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J46 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J46 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J46 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J51 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Driluip - Houston | Driluip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: K100 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J46 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-904265-02 | N/A | ELD Rack: J31 | 4" ROV BALL VALVE: 1,000 PSI, WITH PIPE NIPPLE, HAMMER UNION, AND ROV FRIENDLY HANDLE. (ONE (1) 0-600 PSI PRESSURE GAUGE SUPPLIED WITH EVERY FOUR (4) VALVES) | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00307177-01 | ELD Rack: B15G | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00299769-01 | ELD Rack: J92 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00299769-02 | ELD Rack: L79 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00285469-02 | ELD Rack: J92 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00301981-02 | ELD Rack: RISER N-16 | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 XXXX * 18-3/4" HOUSING JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API 5L GRADE X-80, D.S.A.W., RANGE III, PE8 X PE8 * PIPE: CUSTOMER SUPPLIED, 22" O.D. X 1.250" WALL, API 5L GRADE X-80, D.S.A.W., RANGE III, PE8 X H-90DM/MT * 18-3/4" WELLHEAD HOUSING: P/N 2-406862-07, CP14901-06. | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00301981-03 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00307379-01 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00305121-03 | ELD Rack: NYD CC-9 8 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00305121-01 | ELD Rack: NYD CC-9 15 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00305121-02 | ELD Rack: NYD CC-9 15 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00307579-01 | ELD Rack: B15G 4 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00307579-02 | ELD Rack: B15G 4 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00307667-01 | ELD Rack: NYD CC-9 18 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00307667-03 | ELD Rack: NYD CC-9 18 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-413828-02 | 00307667-02 | ELD Rack: NYD CC-9 20 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413828-02 | 00307667-04 | ELD Rack: NYD CC-9 20 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/10/10C, WITH 0-2 DEGREE BULLSEYE. FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, WITH 3-3/4 TON LIFTING SHACKLES. NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00303913-02 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00303913-01 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408641-04 | 00308005-01 | ELD Rack: F208 | 18-3/4" X 13-3/8" BUSHING SLEEVE, TYPE SS-15, FOR H2S, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.25" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, RATED FOR HIGH TEMP./HIGH LOAD, NOBLE QUALITY PLAN Q504.01 | GC 200 | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00305770-01 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00305770-02 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL. 27" O.D. MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411654-02 | 00307717-02 | ELD Rack: NYD DD-9 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-10/15, WITH 0-2 DEGREE BULLSEYE, FOR USE ON 38", 36" OR 30" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE. WITH MUDSTICK INDICATOR ROD, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00302846-04 | ELD Rack: L42 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00308594-03 | ELD Rack: F206 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00308594-02 | ELD Rack: F193 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413138-03 | 00308594-01 | ELD Rack: F193 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00299440-01 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00299440-03 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00302846-01 | ELD Rack: L14 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413195-02 | 00302846-02 | ELD Rack: L21 | 36" X 28" SUPPLEMENTAL ADAPTER, 36" O.D. X 2.000" WALL BUTTWELD PREP. UP X 36" O.D. X 2.000" WALL BUTTWELD PREP. DOWN, WITH TWELVE (12) 4" FLOW-BY PORTS AND INTERNAL POSITIVE STOP PROFILE FOR 28" SCAB HANGER, MIN. I.D. 30.240", OAL APPROX. 28" PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00309096-01 | ELD Rack: F218 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00309084-01 | ELD Rack: A79 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | MC 519 #3 | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408632-05 | 00309499-01 | ELD Rack: F205 | 18-3/4" BIG BORE WEAR SLEEVE, TYPE SS-15, TO BE RUN WITH 14.50"/14.75" DIA. WEAR SLEEVE RUNNING AND RETRIEVING BIT SUBS, UPPER PROFILE WILL WORK WITH SPECIAL B.O.P. TEST TOOL ADAPTER, "J" LUG STYLE, NOBLE QUALITY PLAN Q504.01 | MC 519 #3 | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408632-05 | 00309499-03 | ELD Rack: F197 | 18-3/4" BIG BORE WEAR SLEEVE, TYPE SS-15, TO BE RUN WITH 14.50"/14.75" DIA. WEAR SLEEVE RUNNING AND RETRIEVING BIT SUBS, UPPER PROFILE WILL WORK WITH SPECIAL B.O.P. TEST TOOL ADAPTER, "J" LUG STYLE, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408632-05 | 00309499-02 | ELD Rack: E204 | 18-3/4" BIG BORE WEAR SLEEVE, TYPE SS-15, TO BE RUN WITH 14.50"/14.75" DIA. WEAR SLEEVE RUNNING AND RETRIEVING BIT SUBS, UPPER PROFILE WILL WORK WITH SPECIAL B.O.P. TEST TOOL ADAPTER, "J" LUG STYLE, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |

Exhibit D-I (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-408063-08 | 00309552-01 | ELD Rack: F201 | 18-3/4" X 13-3/8" ADAPTER SLEEVE, TYPE SS-15, TO BE RUN WITH 6-5/8" TOOL JOINT SELECTIVE RETRIEVAL SUB AND 13-3/8" WEAR BUSHING, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS, "J" LUG STYLE, NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00302105-03 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00302105-02 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00302105-04 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408641-04 | 00310224-01 | ELD Rack: F187 | 18-3/4" X 13-3/8" BUSHING SLEEVE, TYPE SS-15, FOR H2S, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.25" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, RATED FOR HIGH TEMP./HIGH LOAD, NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405222-03 | 00303431-01 | ELD Rack: D06G | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA, NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405222-03 | 00303431-02 | ELD Rack: F211 | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405222-03 | 00303431-03 | ELD Rack: F211 | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405222-03 | 00303431-04 | ELD Rack: F211 | 18-3/4" SELECTABLE BORE PROTECTOR J-TYPE RUNNING AND RETRIEVING TOOL, TYPE SS-15, 6-5/8" API F.H. BOX UP WITH BORE BACK RELIEF BY PIN WITH RELIEF GROOVE, 9.980" MAX. O.D., EXTENDED WEAR AREA, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00310309-01 | ELD Rack: B1SG 2 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404172-09 | 00310309-02 | ELD Rack: B1SG 2 | 36" WELLHEAD HOUSING RIGID LOCKDOWN/ANNULUS SHUT-OFF, TYPE SS-15: 36" O.D. X 2.000" WALL B.W.P. I.D. PREP. FOR CAM ACTUATED RUNNING TOOL. HYDRATE DIVERSION SEAL. MIN. I.D. 30.617". MATERIAL CLASS AA, TEMP. V, PSL-3, API-17D. PROFILE FOR OVERPULL SPLIT RING. PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00310048-01 | ELD Rack: F200 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00310048-02 | ELD Rack: F205 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00310048-03 | ELD Rack: F200 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00310376-01 | ELD Rack: L1 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-413137-02 | 00310376-02 | ELD Rack: L2 | 36" X 28" POSITIVE STOP CASING HANGER, 28" O.D. X .750" WALL BUTTWELD PREP., MAX. O.D. 30.510", MIN. I.D. 26.50", WITHOUT FLOWBY, WITH SPLIT LOCKDOWN RING, LIP SEAL AND O-RING, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-03 | 00310480-03 | ELD Rack: F214 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, HIGH PRESSURE/HIGH TEMPERATURE, UPPER I.D. PREP. FOR CAM ACTUATED RUNNING TOOL, O.D. PREP. FOR WEIGHT SET METAL-TO-METAL SEAL ASSEMBLY, 14" BLANK BOX, MATERIAL CLASS: AA, TEMP. RATING: V, PSL-3 NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-09 | 00310480-04 | ELD Rack: F199 | 18-3/4" X 14" CASING HANGER, 14" HYDRIL S23 (115 LBS/FT) BOX DOWN X 12.375" MIN ID X , API 17D, V, AA, PSL-3, RATED F/HIGH TEMPERATURE/HIGH LOAD, SPECIAL, F/FIELDWOOD KATMAI | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-09 | 00310644-02 | ELD Rack: NYD YR #2 | 18-3/4" X 14" CASING HANGER, 14" HYDRIL S23 (115 LBS/FT) BOX DOWN X 12.375" MIN ID X , API 17D, V, AA, PSL-3, RATED F/HIGH TEMPERATURE/HIGH LOAD, SPECIAL, F/FIELDWOOD KATMAI XXXX * 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 14", 115 LB/FT, Q125-ICY, 20 FT. LONG, 14" 115# HYD S23 PIN X 13-5/8" 88.2 LB/FT VAM SLIJ II PIN. * 14" CASING HANGER, P/N 2-410497-09, CP1SS12-01, ITEMS 32. | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-09 | 00310644-03 | ELD Rack: F199 | 18-3/4" X 14" CASING HANGER, 14" HYDRIL S23 (115 LBS/FT) BOX DOWN X 12.375" MIN ID X , API 17D, V, AA, PSL-3, RATED F/HIGH TEMPERATURE/HIGH LOAD, SPECIAL, F/FIELDWOOD KATMAI | | | EA | | | 1 | | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-410497-03 | 00310644-04 | ELD Rack: F213 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, HIGH PRESSURE/HIGH TEMPERATURE, UPPER I.D. PREP. FOR CAM ACTUATED RUNNING TOOL, O.D. PREP. FOR WEIGHT SET METAL-TO-METAL SEAL ASSEMBLY, 14" BLANK BOX, MATERIAL CLASS: AA, TEMP. RATING: V, PSL-3 NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-03 | 00310644-01 | ELD Rack: F213 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, HIGH PRESSURE/HIGH TEMPERATURE, UPPER I.D. PREP. FOR CAM ACTUATED RUNNING TOOL, O.D. PREP. FOR WEIGHT SET METAL-TO-METAL SEAL ASSEMBLY, 14" BLANK BOX, MATERIAL CLASS: AA, TEMP. RATING: V, PSL-3 NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411138-03 | 00310573-01 | ELD Rack: F199 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408632-05 | 00310618-01 | ELD Rack: F218 | 18-3/4" BIG BORE WEAR SLEEVE, TYPE SS-15, TO BE RUN WITH 14.50"/14.75" DIA. WEAR SLEEVE RUNNING AND RETRIEVING BIT SUBS, UPPER PROFILE WILL WORK WITH SPECIAL B.O.P. TEST TOOL ADAPTER, "J" LUG STYLE, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408641-04 | 00310754-01 | ELD Rack: F187 | 18-3/4" X 13-3/8" BUSHING SLEEVE, TYPE SS-15, FOR H2S, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.25" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, RATED FOR HIGH TEMP./HIGH LOAD, NOBLE QUALITY PLAN QS04.01 | GC 40-1 | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408063-08 | 00310622-01 | ELD Rack: F206 | 18-3/4" X 13-3/8" ADAPTER SLEEVE, TYPE SS-15, TO BE RUN WITH 6-5/8" TOOL JOINT SELECTIVE RETRIEVAL SUB AND 13-3/8" WEAR BUSHING, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS, "J" LUG STYLE, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408063-08 | 00310622-02 | ELD Rack: F206 | 18-3/4" X 13-3/8" ADAPTER SLEEVE, TYPE SS-15, TO BE RUN WITH 6-5/8" TOOL JOINT SELECTIVE RETRIEVAL SUB AND 13-3/8" WEAR BUSHING, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS, "J" LUG STYLE, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310874-03 | ELD Rack: K53 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310874-02 | ELD Rack: K53 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310874-01 | ELD Rack: L86 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310819-01 | ELD Rack: K67 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310819-02 | ELD Rack: K67 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404191-12 | 00310819-03 | ELD Rack: F204 | 22" X 18" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER, 22" O.D. X 1.000" WALL BUTTWELD PREP. UP X 22.13" O.D. X .750" WALL BUTTWELD PREP. DOWN, MIN. I.D. 18.250", STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411138-03 | 00310814-02 | ELD Rack: F192 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411138-03 | 00310814-03 | ELD Rack: F213 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411138-03 | 00310814-04 | ELD Rack: F213 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-411138-03 | 00310814-01 | ELD Rack: F192 | 22" X 18" SUPPLEMENTAL CASING HANGER, TYPE SS-15, 18" BLANK PIN DOWN, PSL-3, WITH BIG BORE II, MONOGRAM PER API 17D, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00310833-01 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL, 27" O.D.  MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00310833-03 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL, 27" O.D.  MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-406862-07 | 00310833-04 | ELD Rack: E03G | 18-3/4" RIGID LOCKDOWN BIG BORE II WELLHEAD HOUSING, TYPE SS-15, UPPER PREP. FOR CAM ACTUATED RUNNING TOOL, 27" O.D.  MANDREL WELLHEAD PROFILE COMPATABLE WITH HD-H4 CONNECTOR, WITH INCONEL "VX/VT" GASKET PREP. UP, 22" O.D. X 1.250" WALL B.W.P., 18.510" MIN ID, API 17D, V, DD, PSL-3, H2S SERVICE. SOLID BENDING REACTION RING, EXTRA LOCK-DOWN GROOVES, OVERPULL SPLIT RING PER NOBLE QP QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00311226-01 | ELD Rack: A83 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00311226-03 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-408455-05 | 00311226-04 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408524-05 | 00303429-01 | ELD Rack: F190 | 18-3/4" STABILIZER SUB, TYPE SS-15, 7-5/8" API REG. DOWN X 7-5/8" API REG, BOX UP, TO BE RUN WITH 14.50"/14.75" 2-408632-05 WEAR SLEEVE AND 2-408525-06 BIT SUB, NOBLE QUALITY PLAN Q504.01 | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408524-05 | 00303429-02 | ELD Rack: F208 | 18-3/4" STABILIZER SUB, TYPE SS-15, 7-5/8" API REG. DOWN X 7-5/8" API REG, BOX UP, TO BE RUN WITH 14.50"/14.75" 2-408632-05 WEAR SLEEVE AND 2-408525-06 BIT SUB, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408524-05 | 00303429-03 | ELD Rack: F208 | 18-3/4" STABILIZER SUB, TYPE SS-15, 7-5/8" API REG. DOWN X 7-5/8" API REG, BOX UP, TO BE RUN WITH 14.50"/14.75" 2-408632-05 WEAR SLEEVE AND 2-408525-06 BIT SUB, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00311715-01 | ELD Rack: A80 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00311715-03 | ELD Rack: A79 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | MC 519 #3 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408063-08 | 00312053-01 | ELD Rack: F185 | 18-3/4" X 13-3/8" ADAPTER SLEEVE, TYPE SS-15, TO BE RUN WITH 6-5/8" TOOL JOINT SELECTIVE RETRIEVAL SUB AND 13-3/8" WEAR BUSHING, FOR USE WITH BIG BORE OR STANDARD BORE WELLHEAD SYSTEMS, "J" LUG STYLE, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00312112-02 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00312112-03 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00312112-04 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-408455-05 | 00312112-01 | ELD Rack: A81 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312260-01 | ELD Rack: F194 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312260-02 | ELD Rack: F194 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312402-01 | ELD Rack: F183 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312402-02 | ELD Rack: F183 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-09 | 00312456-01 | ELD Rack: NYD YR #3 | 18-3/4" X 14" CASING HANGER, 14" HYDRIL 523 (115 LBS/FT) BOX DOWN X 12.375" MIN ID X , API 17D, V, AA, PSL-3, RATED F/HIGH TEMPERATURE/HIGH LOAD, SPECIAL, F/FIELDWOOD KATMAI XXXX * 14" CASING HANGER JOINT BUCK-UP CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 14", 115 LB/FT, Q125-ICY, 20 FT. LONG, 14" 115# HYD 523 PIN X 13-5/8" 88.2 LB/FT VAM SLII II PIN, * 14" CASING HANGER:, P/N 2-410497-09, CP15334-03, ITEMS 33. | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-410497-03 | 00312508-01 | ELD Rack: F184 | 18-3/4" X 14" BIG BORE II CASING HANGER: TYPE SS-15, HIGH PRESSURE/HIGH TEMPERATURE, UPPER I.D. PREP. FOR CAM ACTUATED RUNNING TOOL, O.D. PREP. FOR WEIGHT SET METAL-TO-METAL SEAL ASSEMBLY, 14" BLANK BOX, MATERIAL CLASS: AA, TEMP. RATING: V, PSL-3 NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00312161-03 | ELD Rack: A84 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312568-01 | ELD Rack: F220 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312568-02 | ELD Rack: F186 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-407284-18 | 00312568-03 | ELD Rack: F220 | 22" X 16" POSITIVE STOP CASING HANGER: TYPE SS-10/15, 10,000 PSI, 16" BLANK PIN DOWN, 14.590" MIN. I.D., V, AA, PSL-3, FOR USE WITH 16" OR 16.125" NOMINAL O.D. CASING, FOR USE WITH BIG BORE II WELLHEAD SYSTEM, RATED FOR 1.5-MILLION LBS. OF CASING AND 10,000 PSI PER NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00312626-01 | ELD Rack: A05G | CROSSOVER SWEDGE: WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-409052-02 | IN CP FILE | ELD Rack: F207 | 4" NIPPLE PIPE FOR ANNULUS VENTING VALVE ASSEMBLY, 4" NPT MALE CONNECTION ONE END, "J" SLOT INTERFACE ONE END | | | EA | | | 10 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00313001-01 | ELD Rack: A84 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-408455-05 | 00313180-02 | ELD Rack: A83 | 22" X 18" BIG BORE II SEAL ASSEMBLY: TYPE SS-10/15/20, WEIGHT SET RESILIENT SEAL, PSL-2, STANDARD SERVICE, RATED 5,000 PSI, NOBLE QUALITY PLAN, QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413573-02 | 00313356-01 | ELD Rack: F204 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, MIN. 9.262" I.D. TEMP. V, MAT'L CLASS DD. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, NOBLE QUALITY PLAN QS04.01 | | GC 40-1 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404391-07 | 00313801-02 | ELD Rack: F203 | CROSSOVER SWEDGE: WITH 22" X 1.000" WALL BUTTWELD PREP DOWN X 22.13" X .750" WALL BUTTWELD PREP UP, NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-413198-02 | 00309922-01 | ELD Rack: B14G | 22" X 16" BIG BORE II SUPPLEMENTAL CASING HANGER ADAPTER: 10,000 PSI, WITH 22" O.D. X 1.250" WALL BUTTWELD PREP. UP AND DOWN. SYSTEM RATED FOR 1.5 MILLION LBS. OF 16" CASING AND 10,000 PSI, WITH WELD MOLD INLAY ON LOAD PROFILE, MIN. I.D.18.375", 22.186" MAX O.D., AA, PSL-3, STANDARD SERVICE PER NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00315155-01 | ELD Rack: A83 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00315155-02 | ELD Rack: A83 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00316049-01 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS). H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00315506-01 | ELD Rack: A82 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00315506-02 | ELD Rack: A82 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS) . H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00317848-01 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS). H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00317848-02 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS). H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00317848-03 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS). H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00317848-04 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS). H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00317848-05 | ELD Rack: A79 | 22" X 16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS). H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-411888-07 | 00317848-06 | ELD Rack: A79 | 22"-16" BIG BORE II SEAL ASSEMBLY: WEIGHT SET METAL-TO-METAL, 10,000 PSI RATED, (10,000 PSI RATED WITH REDUCED CASING WEIGHT REQUIREMENTS). H2S SERVICE. NOBLE QUALITY PLAN QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00319512-01 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00319512-02 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00319512-03 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00319512-04 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00319512-05 | ELD Rack: A82 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-409052-02 | IN CP FILE | ELD Rack: F221 | 4" NIPPLE PIPE FOR ANNULUS VENTING VALVE ASSEMBLY, 4" NPT MALE CONNECTION ONE END, "J" SLOT INTERFACE ONE END QTY (14) LEFT TO USE. | | | EA | | | 26 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00320231-01 | ELD Rack: A85 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00320231-02 | ELD Rack: A85 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00320231-03 | ELD Rack: A85 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP QS04.01 | | | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-414283-02 | 00321346-01 | ELD Rack: F205 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V. DD. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN QS04.01 | | MC 519 #3 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-408468-02 | 00299282-01 | ELD Rack: E03G | 18-3/4" BIG BORE II WELLHEAD HOUSING, 15,000 PSI, TYPE SS-15, 22" X 1.500" BUTTWELD PREP DOWN X HD-H4 PROFILE W/INCONEL VX-VT GSKT PREP UP, V, DD, PSL-3, F/H2S, W/DVER-PULL SPLIT RING,RIGID LOCK-DOWN, & HYDRATE DIVERSION SEAL, SPECIAL, WITHOUT FLOWBY, W/EXTRA LOCK-DOWN GROOVES | | KATMAIF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 2-408468-02 | 00299282-02 | ELD Rack: E03G | 18-3/4" BIG BORE II WELLHEAD HOUSING, 15,000 PSI, TYPE SS-15, 22" X 1.500" BUTTWELD PREP DOWN X HD-H4 PROFILE W/INCONEL VX-VT GSKT PREP UP, V, DD, PSL-3, F/H2S, W/DVER-PULL SPLIT RING,RIGID LOCK-DOWN, & HYDRATE DIVERSION SEAL, SPECIAL, WITHOUT FLOWBY, W/EXTRA LOCK-DOWN GROOVES | | KATMAIF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | 0 | | | |
| Drilquip - Houston | Drilquip | 240559-02 | 00306162-01 | ELD Rack: F128 | ANTI-ROTATION/CAM REACTION PLATE ASSEMBLY FOR 30" QUIK-JAY "8-IV". | | MEXICO | EA | | | 1 | | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Drilquip - Houston | Drilquip | 2-414283-02 | 00323757-01 | ELD Rack: F192 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V. DO. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN Q504.01 | | CUSTOMER PROPERTY | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414283-02 | 00323757-02 | ELD Rack: F192 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V. DO. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN Q504.01 | | CUSTOMER PROPERTY | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414283-02 | 00325456-01 | ELD Rack: F184 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V. DO. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN Q504.01 | | CUSTOMER PROPERTY | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-414283-02 | 00325658-01 | ELD Rack: F214 | 18-3/4" X 10-3/4" GEN II CASING HANGER LOCK-DOWN SLEEVE, 15,000 PSI, TYPE SS-15, V. DO. PSL-3, FOR H2S, 2000 KIP RATED LOCK-DOWN CAPACITY, INCONEL CLADDED TREE SEAL INTERFACE, HIGH TEMPERATURE/HIGH LOAD SHOULDER, 9.555" I.D., NOBLE QUALITY PLAN Q504.01 | | CUSTOMER PROPERTY | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404254-05 | 00327858-01 | ELD Rack: A80 | 18-3/4" SEAL ASSEMBLY: TYPE SS-15, 15,000 PSI FOR ALL HANGERS 13-3/8" AND SMALLER, WEIGHT SET DUAL METAL-TO-METAL SEALS, INCLUDES OUTER LOCK RING, H2S SERVICE PER NOBLE QP Q504.01 | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-416531-02 | 00325810-01 | ELD Rack: B13G | 22" X 16" BIG BORE II-H SUPPLEMENTAL CASING HANGER ADAPTER: TYPE SS-20/SS-15, 10,000 PSI, 22" O.D. X 1.500" WALL BUTTWELD PREP. DOWN BY 22" O.D. X 1.500" WALL BUTTWELD PREP. UP, MIN. I.D. 18.375", AA, PSL-3, TEMPERATURE 30°-300° F., FOR 16" BIG BORE II-H "NO-GO" STYLE SUPPLEMENTAL HANGER, WEIGHT SET, WITH PREP. FOR SELECTABLE WEAR BUSHING, RATED FOR 2-MILLION LBS. OF CASING, WITH FOUR (4) SHOULDER LOCK-RING PROFILE. NOBLE QUALITY PLAN Q504.01 | | KATMAAF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-416531-02 | 00325810-02 | ELD Rack: B13G | 22" X 16" BIG BORE II-H SUPPLEMENTAL CASING HANGER ADAPTER: TYPE SS-20/SS-15, 10,000 PSI, 22" O.D. X 1.500" WALL BUTTWELD PREP. DOWN BY 22" O.D. X 1.500" WALL BUTTWELD PREP. UP, MIN. I.D. 18.375", AA, PSL-3, TEMPERATURE 30°-300° F., FOR 16" BIG BORE II-H "NO-GO" STYLE SUPPLEMENTAL HANGER, WEIGHT SET, WITH PREP. FOR SELECTABLE WEAR BUSHING, RATED FOR 2-MILLION LBS. OF CASING, WITH FOUR (4) SHOULDER LOCK-RING PROFILE. NOBLE QUALITY PLAN Q504.01 | | KATMAAF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-412617-13 | 00328407-01 | ELD Rack: A80 | 16" BIG BORE II-H SEAL ASSEMBLY: GEN. III, 5,000-10,000 PSI, TYPE SS-20/SS-15, API 6A, AA, PSL-3, TEMPERATURE 35°-300° F., FOR 16" BB II-H SUPPLEMENTAL CASING HANGER, BB STYLE, WEIGHT SET METAL TO METAL SEAL, RATED FOR 1.2 MM LBS. LOCK-DOWN. NOBLE QUALITY PLAN Q504.01 | | KATMAAF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-412617-13 | 00328407-02 | ELD Rack: A80 | 16" BIG BORE II-H SEAL ASSEMBLY: GEN. III, 5,000-10,000 PSI, TYPE SS-20/SS-15, API 6A, AA, PSL-3, TEMPERATURE 35°-300° F., FOR 16" BB II-H SUPPLEMENTAL CASING HANGER, BB STYLE, WEIGHT SET METAL TO METAL SEAL, RATED FOR 1.2 MM LBS. LOCK-DOWN. NOBLE QUALITY PLAN Q504.01 | | KATMAAF, GC 40F 3, OSC-G-34536 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403665-02 | 00293489-03 | ELD Rack: F195 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403665-02 | 00293489-04 | ELD Rack: F195 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403665-02 | 00293489-01 | ELD Rack: F198 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403665-02 | 00293489-02 | ELD Rack: F198 | 18-3/4" X 14-1/2" WEAR SLEEVE BIT SUB. 7-5/8" API REG. BOX UP X PIN DOWN. | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403666-02 | 00333696-01 | ELD Rack: F198 | 18-3/4" STABILIZER SUB FOR BIG BORE WEAR SLEEVES. 7-5/8" API REG. BOX UP X PIN DOWN. | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404122-02 | 00339241-02 | ELD Rack: F223 | 18-3/4" X 13-3/8" SELECTABLE WEAR BUSHING/SLEEVE: TYPE SS-15, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.395" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, UPPER PROFILE FOR B.O.P. TEST TOOL ADAPTER, BIG BORE AND STANDARD BORE WELLHEAD SYSTEMS. RATED FOR HIGH TEMPERATURE/HIGH LOAD. H2S SERVICE | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404122-02 | 00339241-03 | ELD Rack: F216 | 18-3/4" X 13-3/8" SELECTABLE WEAR BUSHING/SLEEVE: TYPE SS-15, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.395" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, UPPER PROFILE FOR B.O.P. TEST TOOL ADAPTER, BIG BORE AND STANDARD BORE WELLHEAD SYSTEMS. RATED FOR HIGH TEMPERATURE/HIGH LOAD. H2S SERVICE | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-404122-02 | 00339241-01 | ELD Rack: F223 | 18-3/4" X 13-3/8" SELECTABLE WEAR BUSHING/SLEEVE: TYPE SS-15, TO BE RUN WITH MULTIPLE RUNNING AND RETRIEVING SUBS (12.395" DIA.), BIT RUNNABLE SELECTIVE RETRIEVAL, UPPER PROFILE FOR B.O.P. TEST TOOL ADAPTER, BIG BORE AND STANDARD BORE WELLHEAD SYSTEMS. RATED FOR HIGH TEMPERATURE/HIGH LOAD. H2S SERVICE | | STOCK | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403134-02 | 00227560-01 | ELD Rack: A84 | 22" X 16" BIG BORE II SEAL ASSEMBLY, WEIGHT SET METAL-TO-METAL, 6,500 PSI RATED, H2S SERVICE | | | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403133-02 | 1G935-01 | ELD Rack: NYD C-6 | 22" X 16" BIG BORE II POSITIVE STOP CASING HANGER: TYPE SS-10/15, 6,500 PSI, 16" 97 LB./FT. HYDRIL 511 PIN DOWN, PREP. FOR WEIGHT SET SEAL ASSEMBLY, MIN. I.D. 14.800", V, MATERIAL CLASS: AA, PSL-3 XXXX * 16" HANGER JOINT FABRICATION CONSISTS OF: * PIPE: CUSTOMER SUPPLIED 16", 97#, P-110, WITH HYDRIL 511 BOX X HYDRIL 511 PIN, APPROX. 20 FT.LONG * 16" SUPPLEMENTAL HANGER: P/N 2-403133-02,CP8979-01, ITEM 14.1 | | GC 866 #1 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-403132-02 | 00178688-01 | ELD Rack: A84 | 18" SEAL ASSEMBLY, TYPE SS-10/15/20, API 6A, V, AA, PSL-2, FOR USE WITH 18" SUPPLEMENTAL HANGER, FOR USE WITH BIG BORE II / BIG BORE II-H WELLHEAD SYSTEM | | KC 292 #2 | EA | | | 1 | | | 0 | | |
| Drilquip - Houston | Drilquip | 2-405105-02 | 00175605-01 | ELD Rack: NYD CC 9 17 | SLOPE INDICATOR MOUNTING BRACKET, TYPE SS-15/SS-10, W/ 0-2 DEGREE BULLSEYE, F/USE ON 38" OR 36" CONDUCTOR PIPE, WITHOUT WELD-ON FLANGE, EXTRA LONG WITH ROV GUIDE HANDLES. | | MC 252 #1 | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109998 | | OSS DOCK C-PORT 2 BLD 27 | 18" VAM HDL 117# G.S. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109994 | | OSS DOCK C-PORT 2 BLD 27 | 18" VAM HDL 117# Q125 F.C. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 112032 | | 1 PLUG SET SHIPPED TO DRIL-QUIP THE OTHER SHIPPED TO DOCK WITH CEMENT HEAD | 18" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 106438 | | OSS DOCK C-PORT 2 BLD 27 | 13.625" VAM SLIII 88.2# Q125 F.C. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111637 | | OSS DOCK C-PORT 2 BLD 27 | 13.625" VAM SLIII 88.2# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 113525 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLIII 62.8# Q125 F.C. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109067 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLIII 62.8# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 114099 | | OSS DOCK C-PORT 2 BLD 27 | 7.75" FLOAT COLLAR TSH WEGDE 523 DOPELESS 46.10 PPF Q125 INNOVEX | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 114055 | | OSS DOCK C-PORT 2 BLD 27 | 7.75" TSHS23 DOPELESS 46.14 Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Houma | Franks International | 115250 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" TSH S23 62.8# Q125 LANDING COLLAR | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 114099 | | OSS DOCK C-PORT 2 BLD 27 | 7.75" FLOAT COLLAR TSH WEGDE 523 DOPELESS 46.10 PPF Q125 INNOVEX | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 114055 | | OSS DOCK C-PORT 2 BLD 27 | 7.75" TSH523 DOPFLESS 46.1# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 114884 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLIJ-II 65.3# Q125 GUIDE SHOE | | ORLOV TA-9 | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 115250 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" TSH S23 62.8# Q125 LANDING COLLAR | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 106438 | | | 13.625" VAM SLIJ-II 88.2# Q125 FLOAT COLLAR | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111637 | | | 13.625" VAM SLIJ-II 88.2# Q125 GUIDE SHOE | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 114883 | | | 9.875" VAM SLIJ-II 65.3# Q125 FLOAT COLLAR | | ORLOV TA-9 | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 110611 | | | 14" SLSF 11S.53# Q125 CENTRALIZER SUB | | ICHALKIL 4 | EA | | | 15 | | | 0 | | |
| Franks - Houma | Franks International | 113525 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLIJII 62.8# Q125 F.C. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109994 | | | 18" VAM HDL 117# Q125 F.C | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 106438 | | | 13.625" VAM SLIJ-II 88.2# Q125 F.C. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 107304 | | | 11.875" TSH 513 71.8# Q125 F.C. | | ORLOV | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 112582 | | | 18" VAM HDL 117# Q125 FLOAT COLLAR | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 107304 | | | 11.875" TSH513 71.8# FLOAT COLLAR | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109904 | | | 14" TSH523 116# Q125 FLOAT COLLAR | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 115425 | | | 11.875" TSH513 71.8# Q125 FLOAT COLLAR | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 115422 | | | 10.125" TSH513 79.29# Q125 FLOAT COLLAR | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 114883 | | | 9.875" VAM SLIJII 65.3# Q125 F.C. | | ORLOV TA-9 | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 115366 | | | 16.264" TSH623 DOPLESS 122.5# Q125 FLOAT COLLAR | | ICHALKIL 4 | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 116632 | | | 13.625" TSH S21 88.2# Q125 F.C. | | ICHALKIL 4 | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 113594 | | | 16" TSH521 109# P110 F.C. | | ICHALKIL 4 | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 111140 | | | 14" TSH513 113# Q125 F.C. | | ICHALKIL 4 | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 116159 | | | 9.875" TSH523 62.8# Q125 F.C. | | ICHALKIL 4 | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 115709 | | | 9.875" TSH523 62.8# Q140 ORIFICE F.C. | | ICHALKL 4 | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 114099 | | | 7.75" 46.1# Q125 (135 MYS) WEDGE 523 (INNOVEX 73S-AB "DVBR") | | KATMAI #2 ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 114883 | | | 9.875" VAM SLIJII 65.3# Q125 FLOAT COLLAR | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 106438 | | | 13.625" VAM SLIJ-II 88.2# Q125 FLOAT COLLAR | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 114884 | | | 9.875" VAM SLIJI 65.3# Q125 GUIDE SHOE | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109067 | | OSS DOCK C-PORT 2 BLD 27 | 9.875" VAM SLIJII 62.8# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111637 | | | 13.625" VAM SLIJ-II 88.2# Q125 GUIDE SHOE | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111637 | | OSS DOCK C-PORT 2 BLD 27 | 13.625" VAM SLIJII 88.2# Q125 G.S. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109998 | | | 18" VAM HDL 117# G.S. | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 115423 | | | 10.125" TSH513 79.29# Q125 GUIDE SHOE | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 114184 | | | 14" TSH513 113# Q125 C.E.G.S. | | ICHALKIL 4 | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 114884 | | | 9.875" VAM SLIJII 65.3# Q125 C.E.G.S. | | ORLOV TA-9 | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109068 | | | 11.875" TSH 513 71.8# Q125 C.E.-G.S. | | ORLOV | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 112583 | | | 18" VAM HDL 117# Q125 GUIDE SHOE | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 110530 | | shipped to the OSS dock | 7.75" TSH523 46.1# Q125 GUIDE SHOE | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 115424 | | | 11.875" TSH513 71.8# Q125 GUIDE SHOE | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 109905 | | | 14" TSH523 116# Q125 GUIDE SHOE | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 109068 | | | 11.875" TSH513 71.8# GUIDE SHOE | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111904 | | PLUG SET WAS STABED IN LINNER THEN REMOVED | 10.75" X 9.635" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111208 | | | 9.625" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109030 | | | 7.625" DUAL WIPER PLUG | | ORLOV | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 113133 | | | 9.625" DUAL WIPER PLUG MOD III | | NA | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 111904 | | | 10.75" 9.625" DUAL WIPER PLUG MOD II | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD II | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 113133 | | | 9.625" DUAL WIPER PLUG MOD III | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 113238 | | | 10.75" OD X 9.625" SINGLE WIPER PLUG | | TA9-ST01 | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD III | | ICHALKIL 4 | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111904 | | | 10.75" X 9.635" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 112032 | | TO DOCK WITH CEMENT HEAD | 18" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111804 | | | 11.875" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111208 | | | 9.625" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD II | | ORLOV | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 109030 | | | 7.625" DUAL WIPER PLUG | | ORLOV | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 112809 | | | 11.75" X 9.625" DUAL WIPER PLUG MOD III | | NA | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 111208 | | | 9.625" DUAL WIPER PLUG MOD II | | KATMAI-1 | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111904 | | | 10.75" 9.625" DUAL WIPER PLUG MOD II | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD II | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 111804 | | | 11.875" DUAL WIPER PLUG MOD II | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 111208 | | | 9.625" DUAL WIPER PLUG MOD II | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 111601 | | | 13.375" DUAL WIPER PLUG MOD II | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 112809 | | | 11.75" X 9.625" DUAL WIPER PLUG MOD III | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 113133 | | | 9.625" DUAL WIPER PLUG MOD III | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 112032 | | | 18" DUAL WIPER PLUG MOD II | | GENOVESA | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 113133 | | | 9.875" DUAL WIPER PLUG MOD III | | ORLOV TA-9 | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 113238 | | | 10.75" OD X 9.625" SINGLE WIPER PLUG | | ORLOV TA9-ST01 | EA | | | 1 | | | 0 | | |
| Franks - Houma | Franks International | 115505 | | | 10.125" TSH S23 79.29# Q125 L.C. | | KATMAI-1 | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 114542 | | | 9.875" VAM SLIJII 62.8# L80 L.C. | | ORLOV | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 115505 | | | 10.125"TSH523 79.29# Q125 LANDING COLLAR | | KATMAI-2ST | EA | | | 2 | | | 0 | | |
| Franks - Houma | Franks International | 115427 | | | 9.875" VAM SLIJII 65.3# L.C. | | GENOVESA | EA | | | 2 | | | 0 | | |
| Franks - Lafayette | Franks International | 127543 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 2/75931 | | Katmai East Noble | EA | | | 1 | 61.78 | | 0 | | |
| Franks - Lafayette | Franks International | 127544 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 1/75931 | | Katmai East Noble | EA | | | 1 | 61.91 | | 0 | | |
| Franks - Lafayette | Franks International | 127546 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 9/75931 | | Katmai East Noble | EA | | | 1 | 61.76 | | 0 | | |
| Franks - Lafayette | Franks International | 127547 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 4/75931 | | Katmai East Noble | EA | | | 1 | 61.84 | | 0 | | |
| Franks - Lafayette | Franks International | 127548 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 6/75931 | | Katmai East Noble | EA | | | 1 | 61.74 | | 0 | | |
| Franks - Lafayette | Franks International | 127549 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 5/75931 | | Katmai East Noble | EA | | | 1 | 61.72 | | 0 | | |
| Franks - Lafayette | Franks International | 127550 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 7/75931 | | Katmai East Noble | EA | | | 1 | 61.74 | | 0 | | |
| Franks - Lafayette | Franks International | 127551 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 8/75931 | | Katmai East Noble | EA | | | 1 | 61.75 | | 0 | | |
| Franks - Lafayette | Franks International | 127552 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 9/75931 | | Katmai East Noble | EA | | | 1 | 61.86 | | 0 | | |
| Franks - Lafayette | Franks International | 127553 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 14/75931 | | Katmai East Noble | EA | | | 1 | 61.78 | | 0 | | |
| Franks - Lafayette | Franks International | 127554 | | NA | 22 INCH 1.5 LB X80 DLQ,B/P, 13/75931 | | Katmai East Noble | EA | | | 1 | 61.79 | | 0 | | |
| Franks - Lafayette | Franks International | 127555 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 12/75931 | | Katmai East Noble | EA | | | 1 | 61.83 | | 0 | | |
| Franks - Lafayette | Franks International | 127556 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 11/75931 | | Katmai East Noble | EA | | | 1 | 61.76 | | 0 | | |
| Franks - Lafayette | Franks International | 127557 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 10/75931 | | Katmai East Noble | EA | | | 1 | 61.88 | | 0 | | |
| Franks - Lafayette | Franks International | 128094 | | Rack No. QRR1L2 | 22 INCH 1.5 LB X80 DLQ,P/PE, 15/75931 | | Katmai East Noble | EA | | | 1 | 81.3 | | 0 | | |
| Franks - Lafayette | Franks International | 128095 | | Rack No. QRR1L2 | 22 INCH 1.5 LB X80 DLQ,P/PE, 16/75931 | | Katmai East Noble | EA | | | 1 | 81.2 | | 0 | | |
| Franks - Lafayette | Franks International | 128036 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 5/75933 | | Katmai East Noble | EA | | | 1 | 61.72 | | 0 | | |
| Franks - Lafayette | Franks International | 128037 | | Rack No. 8PRBL1 | 22 INCH 1.5 LB X80 DLQ,B/P, 6/75933 | | Katmai East Noble | EA | | | 1 | 61.83 | | 0 | | |

77

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 128038 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 9/75933 | | Katmai East Noble | EA | | | 1 | 61.73 | 0 | | | |
| Franks - Lafayette | Franks International | 128039 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 8/75933 | | Katmai East Noble | EA | | | 1 | 61.82 | 0 | | | |
| Franks - Lafayette | Franks International | 128040 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 3/75933 | | Katmai East Noble | EA | | | 1 | 61.74 | 0 | | | |
| Franks - Lafayette | Franks International | 128041 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 4/75933 | | Katmai East Noble | EA | | | 1 | 61.84 | 0 | | | |
| Franks - Lafayette | Franks International | 128042 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 1/75933 | | Katmai East Noble | EA | | | 1 | 61.68 | 0 | | | |
| Franks - Lafayette | Franks International | 128043 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 2/75933 | | Katmai East Noble | EA | | | 1 | 61.84 | 0 | | | |
| Franks - Lafayette | Franks International | 128044 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 7/75933 | | Katmai East Noble | EA | | | 1 | 61.81 | 0 | | | |
| Franks - Lafayette | Franks International | 128045 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 14/75933 | | Katmai East Noble | EA | | | 1 | 61.71 | 0 | | | |
| Franks - Lafayette | Franks International | 128046 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 13/75933 | | Katmai East Noble | EA | | | 1 | 61.76 | 0 | | | |
| Franks - Lafayette | Franks International | 128047 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 12/75933 | | Katmai East Noble | EA | | | 1 | 61.86 | 0 | | | |
| Franks - Lafayette | Franks International | 128048 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 11/75933 | | Katmai East Noble | EA | | | 1 | 61.72 | 0 | | | |
| Franks - Lafayette | Franks International | 128049 | | Rack No. BPRBL1 | 22 INCH 1.5 LB X80 DLCL/B/P, 10/75933 | | Katmai East Noble | EA | | | 1 | 61.72 | 0 | | | |
| Franks - Lafayette | Franks International | 129447 | | Rack No. QR13 | 36 INCH 1.5 LB X65 DLCL/X/O, 3/76563 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.34 | 0 | | | |
| Franks - Lafayette | Franks International | 137388 | | Rack No. QRPRODL7 | 36 INCH 1.5 LB X65 PLAIN, | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 12.13 | 0 | | | |
| Franks - Lafayette | Franks International | 112711 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLCL/B/P, 21/74736 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 81.97 | 0 | | | |
| Franks - Lafayette | Franks International | 81565 | | Rack No. BPR7L4 | 22 INCH 1 LB X80 DLCL/B/P,X/O, 5/71719 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.74 | 0 | | | |
| Franks - Lafayette | Franks International | 137653 | | Rack No. QRFENCELINE | 36 INCH 1.5 LB X65 PLAIN, | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 12.15 | 0 | | | |
| Franks - Lafayette | Franks International | 130507 | | Rack No. QRNL1 | 22 INCH 1 LB X80 DLCL/B/P,S, 4a/76883 | | GENOVESA | EA | | | 1 | 42.95 | 0 | | | |
| Franks - Lafayette | Franks International | 130536 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLCL/B/P, 114/76883 | | GENOVESA | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 129462 | | Rack No. QRR2L3 | 36 INCH 1.5 LB X65 DLCL/B/8V, 1/76881 | | GENOVESA | EA | | | 1 | 41.19 | 0 | | | |
| Franks - Lafayette | Franks International | 133758 | | Rack No. QRR2L3 | 36 INCH 2 LB X70 DLCL/B/P,X/O, 4/76881 | | GENOVESA | EA | | | 1 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 86165 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLCL/B/P, 4/73210 | | GENOVESA | EA | | | 1 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 132382 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLCL B/P, 8/76927 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 132386 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLCL/B/P, 7/76927 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 132394 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLCL B/8V, 9/76927 | | ORLOV II | EA | | | 1 | 40.81 | 0 | | | |
| Franks - Lafayette | Franks International | 132408 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLCL B/P, 6/76927 | | ORLOV II | EA | | | 1 | 41.92 | 0 | | | |
| Franks - Lafayette | Franks International | 132409 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLCL B/P, 5/76927 | | ORLOV II | EA | | | 1 | 41.9 | 0 | | | |
| Franks - Lafayette | Franks International | 133751 | | Rack No. QRPRODL1 | 36 INCH 2 LB X70 PLAIN, | | ORLOV II | EA | | | 1 | 39.95 | 0 | | | |
| Franks - Lafayette | Franks International | 133752 | | Rack No. QRPRODL1 | 36 INCH 2 LB X70 PLAIN, | | ORLOV II | EA | | | 1 | 39.93 | 0 | | | |
| Franks - Lafayette | Franks International | 133753 | | Rack No. QRPRODL2 | 36 INCH 2 LB X70 DLCL/P/PE, 2/76927 | | ORLOV II | EA | | | 1 | 41.05 | 0 | | | |
| Franks - Lafayette | Franks International | 133754 | | Rack No. QRPRODL2 | 36 INCH 2 LB X70 DLCL/P/PE, 1/76927 | | ORLOV II | EA | | | 1 | 41.09 | 0 | | | |
| Franks - Lafayette | Franks International | 133755 | | Rack No. QRPRODL2 | 36 INCH 2 LB X70 DLCL/B/P,X/O, 4/76927 | | ORLOV II | EA | | | 1 | 42.07 | 0 | | | |
| Franks - Lafayette | Franks International | 133756 | | Rack No. QRPRODL2 | 36 INCH 2 LB X70 DLCL/B/P,X/O, 3/76927 | | ORLOV II | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 135208 | | Rack No. QRM5L | 28 INCH 0.75 LB X60 PLAIN, | | ORLOV II | EA | | | 1 | 40.1 | 0 | | | |
| Franks - Lafayette | Franks International | 135309 | | Rack No. QRM5L | 28 INCH 0.75 LB X60 PLAIN, | | ORLOV II | EA | | | 1 | 40.04 | 0 | | | |
| Franks - Lafayette | Franks International | 135389 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 17/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135390 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 7/76928 | | ORLOV II | EA | | | 1 | 41.98 | 0 | | | |
| Franks - Lafayette | Franks International | 135391 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 10/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135392 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 11/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135393 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 12/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135394 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 22/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135395 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 23/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135396 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 14/76928 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135457 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 26/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135458 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 21/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135459 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 18/76928 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135460 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 24/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135461 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 25/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135462 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 16/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135463 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 29/76928 | | ORLOV II | EA | | | 1 | 41.89 | 0 | | | |
| Franks - Lafayette | Franks International | 135464 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 19/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135465 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 20/76928 | | ORLOV II | EA | | | 1 | 41.06 | 0 | | | |
| Franks - Lafayette | Franks International | 135466 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 32/76928 | | ORLOV II | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 135467 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 35/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135468 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 27/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135469 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 37/76928 | | ORLOV II | EA | | | 1 | 41.92 | 0 | | | |
| Franks - Lafayette | Franks International | 135470 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 31/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135471 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 33/76928 | | ORLOV II | EA | | | 1 | 41.88 | 0 | | | |
| Franks - Lafayette | Franks International | 135472 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 41/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135473 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 30/76928 | | ORLOV II | EA | | | 1 | 41.87 | 0 | | | |
| Franks - Lafayette | Franks International | 135474 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 28/76928 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 135475 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 47/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135476 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 39/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135477 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 34/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135478 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 38/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135506 | | NA | 28 INCH 0.75 LB X60 DLCL/P/PE, 63/76928 | | ORLOV II | EA | | | 1 | 41 | 0 | | | |
| Franks - Lafayette | Franks International | 135523 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 8/76928 | | ORLOV II | EA | | | 1 | 41.98 | 0 | | | |
| Franks - Lafayette | Franks International | 135524 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 46/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135525 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 44/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135526 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 45/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135527 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 43/76928 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135528 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 36/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135529 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 49/76928 | | ORLOV II | EA | | | 1 | 41.89 | 0 | | | |
| Franks - Lafayette | Franks International | 135530 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 42/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135531 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 40/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 135532 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 53/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135533 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 50/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135534 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 52/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135535 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 48/76928 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135536 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 56/76928 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135537 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 51/76928 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135538 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 54/76928 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135539 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 55/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135541 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 58/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135542 | | NA | 28 INCH 0.75 LB X60 DLCL/P/PE, 59/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135544 | | NA | 28 INCH 0.75 LB X60 DLCL/P/PE, 62/76928 | | ORLOV II | EA | | | 1 | 41 | 0 | | | |
| Franks - Lafayette | Franks International | 135561 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 57/76928 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 135562 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 3/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 135562 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLCL B/P, 15/76928 | | ORLOV II | EA | | | 1 | 41.98 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 135563 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 6/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 135564 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 2/76928 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135565 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 1/76928 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135566 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 13/76928 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 135567 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 4/76928 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135568 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 5/76928 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135569 | | Rack No. QRR7R4 | 28 INCH 0.75 LB X60 DLQ,B/P, 9/76928 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 130150 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 82/76929 | | ORLOV II | EA | | | 1 | 41.43 | 0 | | |
| Franks - Lafayette | Franks International | 130153 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 90/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130157 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 89/76929 | | ORLOV II | EA | | | 1 | 41.43 | 0 | | |
| Franks - Lafayette | Franks International | 130158 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 85/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130159 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 86/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130161 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 88/76929 | | ORLOV II | EA | | | 1 | 41.43 | 0 | | |
| Franks - Lafayette | Franks International | 130162 | | Rack No. QR3RL5 | 22 INCH 1 LB X80 DLQ,B/P,X/O, 117/76929 | | ORLOV II | EA | | | 1 | 41.57 | 0 | | |
| Franks - Lafayette | Franks International | 130163 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 84/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |
| Franks - Lafayette | Franks International | 130165 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 87/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130226 | | Rack No. QR | 22 INCH 1 LB X80 DLQ,B/P, 81/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130227 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 80/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130229 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 96/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 130230 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 94/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 130231 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 98/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 130232 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 83/76929 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | |
| Franks - Lafayette | Franks International | 130234 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 92/76929 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | |
| Franks - Lafayette | Franks International | 130235 | | Rack No. QRNL2 | 22 INCH 1 LB X80 DLQ,B/P, 113/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130236 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 93/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |
| Franks - Lafayette | Franks International | 130283 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 91/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130284 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 78/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130285 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 79/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130346 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 69/76929 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | |
| Franks - Lafayette | Franks International | 130347 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 39/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130348 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 35/76929 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | |
| Franks - Lafayette | Franks International | 130349 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 45/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130350 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 46/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130351 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 38/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130352 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 34/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |
| Franks - Lafayette | Franks International | 130353 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 51/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130354 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 52/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 130355 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 37/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130356 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 33/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130357 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 43/76929 | | ORLOV II | EA | | | 1 | 41.42 | 0 | | |
| Franks - Lafayette | Franks International | 130358 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 44/76929 | | ORLOV II | EA | | | 1 | 41.43 | 0 | | |
| Franks - Lafayette | Franks International | 130359 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 55/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 130360 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 56/76929 | | ORLOV II | EA | | | 1 | 41.42 | 0 | | |
| Franks - Lafayette | Franks International | 130361 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 49/76929 | | ORLOV II | EA | | | 1 | 41.43 | 0 | | |
| Franks - Lafayette | Franks International | 130367 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 50/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130368 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 61/76929 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | |
| Franks - Lafayette | Franks International | 130369 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 62/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130370 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 53/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130371 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 54/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130372 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 57/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130373 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 58/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130374 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 59/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130375 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 60/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130376 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 77/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |
| Franks - Lafayette | Franks International | 130377 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 75/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130378 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 63/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130379 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 64/76929 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | |
| Franks - Lafayette | Franks International | 130380 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 76/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |
| Franks - Lafayette | Franks International | 130381 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 74/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130382 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 67/76929 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | |
| Franks - Lafayette | Franks International | 130383 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 68/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130384 | | Rack No. QRPM3DOR2L1 | 22 INCH 1 LB X80 DLQ,B/P, 114/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |
| Franks - Lafayette | Franks International | 130385 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 73/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130386 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 65/76929 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | |
| Franks - Lafayette | Franks International | 130387 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 66/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130388 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 95/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130389 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 72/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130390 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 70/76929 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | |
| Franks - Lafayette | Franks International | 130391 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 71/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 130392 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 97/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130472 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 41/76929 | | ORLOV II | EA | | | 1 | 41.4 | 0 | | |
| Franks - Lafayette | Franks International | 130473 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 47/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130474 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 36/76929 | | ORLOV II | EA | | | 1 | 41.43 | 0 | | |
| Franks - Lafayette | Franks International | 130475 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 40/76929 | | ORLOV II | EA | | | 1 | 41.4 | 0 | | |
| Franks - Lafayette | Franks International | 130476 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 42/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130477 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 48/76929 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | |
| Franks - Lafayette | Franks International | 130478 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 21/76929 | | ORLOV II | EA | | | 1 | 41.39 | 0 | | |
| Franks - Lafayette | Franks International | 130479 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 30/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130480 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 23/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130481 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 29/76929 | | ORLOV II | EA | | | 1 | 41.42 | 0 | | |
| Franks - Lafayette | Franks International | 130482 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 26/76929 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | |
| Franks - Lafayette | Franks International | 130483 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 14/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 130484 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 28/76929 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | |
| Franks - Lafayette | Franks International | 130485 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 9/76929 | | ORLOV II | EA | | | 1 | 41.42 | 0 | | |
| Franks - Lafayette | Franks International | 130486 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 16/76929 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | |
| Franks - Lafayette | Franks International | 130487 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 13/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130488 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 17/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |
| Franks - Lafayette | Franks International | 130489 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 10/76929 | | ORLOV II | EA | | | 1 | 41.41 | 0 | | |
| Franks - Lafayette | Franks International | 130490 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 12/76929 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | |
| Franks - Lafayette | Franks International | 130491 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 24/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130492 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 B/P DIB, 27/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 130493 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 7/76929 | | ORLOV II | EA | | | 1 | 41.42 | 0 | | |
| Franks - Lafayette | Franks International | 130494 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 23/76929 | | ORLOV II | EA | | | 1 | 41.41 | 0 | | |
| Franks - Lafayette | Franks International | 130495 | | Rack No. QRL5L2 | 22 INCH 1 LB X80 DLQ,B/P, 32/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |

79

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 130496 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 20/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |
| Franks - Lafayette | Franks International | 130499 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 4/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 130502 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 18/76929 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | |
| Franks - Lafayette | Franks International | 130504 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 19/76929 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | |
| Franks - Lafayette | Franks International | 130505 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 3/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 130506 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 15/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130509 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 17/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130510 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 13/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130511 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 8/76929 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 130512 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 1/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |
| Franks - Lafayette | Franks International | 130514 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 5/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130515 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 6/76929 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 130516 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 7/76929 | | ORLOV II | EA | | | 1 | 41.44 | 0 | | |
| Franks - Lafayette | Franks International | 130541 | | Rack No. QRR4L4 | 22 INCH 1 LB X80 DLQ,B/P, 2/76929 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 48572 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 101/76929 | | ORLOV II | EA | | | 1 | 41.83 | 0 | | |
| Franks - Lafayette | Franks International | 48574 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 103/76929 | | ORLOV II | EA | | | 1 | 41.88 | 0 | | |
| Franks - Lafayette | Franks International | 48612 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 104/76929 | | ORLOV II | EA | | | 1 | 41.79 | 0 | | |
| Franks - Lafayette | Franks International | 48613 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 102/76929 | | ORLOV II | EA | | | 1 | 41.79 | 0 | | |
| Franks - Lafayette | Franks International | 48615 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 107/76929 | | ORLOV II | EA | | | 1 | 41.46 | 0 | | |
| Franks - Lafayette | Franks International | 48621 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 99/76929 | | ORLOV II | EA | | | 1 | 41.81 | 0 | | |
| Franks - Lafayette | Franks International | 48622 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 110/76929 | | ORLOV II | EA | | | 1 | 41.75 | 0 | | |
| Franks - Lafayette | Franks International | 48631 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 108/76929 | | ORLOV II | EA | | | 1 | 41.88 | 0 | | |
| Franks - Lafayette | Franks International | 48634 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 109/76929 | | ORLOV II | EA | | | 1 | 41.82 | 0 | | |
| Franks - Lafayette | Franks International | 49635 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 105/76929 | | ORLOV II | EA | | | 1 | 41.86 | 0 | | |
| Franks - Lafayette | Franks International | 50179 | | Rack No. QRNL2 | 22 INCH 1.25 LB X80 DLQ,P/PE, 112/76929 | | ORLOV II | EA | | | 1 | 41.02 | 0 | | |
| Franks - Lafayette | Franks International | 50183 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 106/76929 | | ORLOV II | EA | | | 1 | 41.86 | 0 | | |
| Franks - Lafayette | Franks International | 50185 | | Rack No. QR3RL5 | 22 INCH 1.25 LB X80 DLQ,B/P, 100/76929 | | ORLOV II | EA | | | 1 | 41.79 | 0 | | |
| Franks - Lafayette | Franks International | 82761 | | Rack No. QRNL2 | 22 INCH 1.25 LB X80 DLQ,P/PE, 111/76929 | | ORLOV II | EA | | | 1 | 39.69 | 0 | | |
| Franks - Lafayette | Franks International | 115834 | | Rack No. QRR1R1 | 36 INCH 2 LB X80 DLQ,B/P, 5/75976 | | ORLOV II | EA | | | 1 | 42.16 | 0 | | |
| Franks - Lafayette | Franks International | 132380 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/P, 3/76939 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 132385 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/BV, 4/76939 | | ORLOV II | EA | | | 1 | 40.9 | 0 | | |
| Franks - Lafayette | Franks International | 132390 | | Rack No. QRPRODL2 | 36 INCH 1.5 LB X65 DLQ,B/P, 2/76939 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 135211 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 48/76940 | | ORLOV II | EA | | | 1 | 41.93 | 0 | | |
| Franks - Lafayette | Franks International | 135214 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 47/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 135359 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 12/76940 | | ORLOV II | EA | | | 1 | 41.98 | 0 | | |
| Franks - Lafayette | Franks International | 135360 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 7/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 135361 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 25/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135362 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 11/76940 | | ORLOV II | EA | | | 1 | 41.01 | 0 | | |
| Franks - Lafayette | Franks International | 135363 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 29/76940 | | ORLOV II | EA | | | 1 | 40.26 | 0 | | |
| Franks - Lafayette | Franks International | 135364 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 24/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 135365 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 30/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135366 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 15/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 135367 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 31/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135368 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 35/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135369 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 13/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 135370 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 14/76940 | | ORLOV II | EA | | | 1 | 41.98 | 0 | | |
| Franks - Lafayette | Franks International | 135371 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 46/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 135372 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 16/76940 | | ORLOV II | EA | | | 1 | 41.93 | 0 | | |
| Franks - Lafayette | Franks International | 135373 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 34/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135374 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 44/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135375 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 45/76940 | | ORLOV II | EA | | | 1 | 41.92 | 0 | | |
| Franks - Lafayette | Franks International | 135376 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 33/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 135377 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 37/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 135378 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 20/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 135379 | | Rack No. QRR3L5 | 28 INCH 0.75 LB X60 DLQ,B/P, 18/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 135380 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 41/76940 | | ORLOV II | EA | | | 1 | 41.93 | 0 | | |
| Franks - Lafayette | Franks International | 135381 | | Rack No. QRR3L5 | 28 INCH 0.75 LB X60 DLQ,B/P, 19/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 135382 | | Rack No. QRR3L5 | 28 INCH 0.75 LB X60 DLQ,B/P, 17/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 135383 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 38/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 135384 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 39/76940 | | ORLOV II | EA | | | 1 | 41.93 | 0 | | |
| Franks - Lafayette | Franks International | 135385 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 43/76940 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 135386 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 40/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135387 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 36/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 135388 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 42/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 135494 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 8/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135495 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 27/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135496 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 32/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135497 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 9/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135498 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 28/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135499 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 10/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135500 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 26/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135501 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 6/76940 | | ORLOV II | EA | | | 1 | 41.94 | 0 | | |
| Franks - Lafayette | Franks International | 135502 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 5/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135503 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 22/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 135504 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 4/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135505 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 21/76940 | | ORLOV II | EA | | | 1 | 41.01 | 0 | | |
| Franks - Lafayette | Franks International | 135508 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 23/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135540 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 3/76940 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 135543 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 2/76940 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 135546 | | NA | 28 INCH 0.75 LB X60 DLQ,B/P, 1/76940 | | ORLOV II | EA | | | 1 | 41.97 | 0 | | |
| Franks - Lafayette | Franks International | 138955 | | Rack No. QR13 | 28 INCH 0.75 LB X60 DLQ,B/P, 77/70915 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 138956 | | Rack No. QR13 | 28 INCH 0.75 LB X60 DLQ,B/P, 63/70915 | | ORLOV II | EA | | | 1 | 41.95 | 0 | | |
| Franks - Lafayette | Franks International | 138957 | | Rack No. QR13 | 28 INCH 0.75 LB X60 DLQ,B/P, 40/70915 | | ORLOV II | EA | | | 1 | 41.99 | 0 | | |
| Franks - Lafayette | Franks International | 138958 | | Rack No. QR13 | 28 INCH 0.75 LB X60 DLQ,B/P, 43/70915 | | ORLOV II | EA | | | 1 | 41.98 | 0 | | |
| Franks - Lafayette | Franks International | 88725 | | Rack No. BPL7R5 | 28 INCH 0.75 LB X60 DLQ,B/P, 19/70785 | | ORLOV II | EA | | | 1 | 42.02 | 0 | | |
| Franks - Lafayette | Franks International | 88729 | | Rack No. BPL7R5 | 28 INCH 0.75 LB X60 DLQ,B/P, 25/70785 | | ORLOV II | EA | | | 1 | 41.96 | 0 | | |
| Franks - Lafayette | Franks International | 124226 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 99/75976 | | ORLOV II | EA | | | 1 | 41.45 | 0 | | |
| Franks - Lafayette | Franks International | 124227 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 260/75976 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | |
| Franks - Lafayette | Franks International | 124230 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 105/75976 | | ORLOV II | EA | | | 1 | 41.49 | 0 | | |
| Franks - Lafayette | Franks International | 124231 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 98/75976 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | |
| Franks - Lafayette | Franks International | 124233 | | Rack No. BPL6L3 | 22 INCH 1 LB x80 DLQ,B/P, 97/75976 | | ORLOV II | EA | | | 1 | 41.48 | 0 | | |
| Franks - Lafayette | Franks International | 124234 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 113/75976 | | ORLOV II | EA | | | 1 | 41.51 | 0 | | |
| Franks - Lafayette | Franks International | 124235 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 267/75976 | | ORLOV II | EA | | | 1 | 41.47 | 0 | | |
| Franks - Lafayette | Franks International | 124237 | | NA | 22 INCH 1 LB x80 DLQ,B/P, 109/75976 | | ORLOV II | EA | | | 1 | 41.5 | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 124238 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 263/75976 | | ORLOV II | EA | | | 1 | 41.51 | | 0 | | |
| Franks - Lafayette | Franks International | 124241 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 120/75976 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | | |
| Franks - Lafayette | Franks International | 124242 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 101/75976 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | | |
| Franks - Lafayette | Franks International | 124243 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 110/75976 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 124262 | | Rack No. BPL7L4 | 22 INCH 1 LB X80 DLQ,B/P, 115/75976 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 124263 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 102/75976 | | ORLOV II | EA | | | 1 | 41.51 | | 0 | | |
| Franks - Lafayette | Franks International | 124267 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 266/75976 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 124269 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 265/75976 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | | |
| Franks - Lafayette | Franks International | 124278 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 264/75976 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 124279 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 104/75976 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 124281 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 108/75976 | | ORLOV II | EA | | | 1 | 41.52 | | 0 | | |
| Franks - Lafayette | Franks International | 124284 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 96/75976 | | ORLOV II | EA | | | 1 | 41.38 | | 0 | | |
| Franks - Lafayette | Franks International | 124285 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 95/75976 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 124286 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 101/75976 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 124310 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 112/75976 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 124312 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 118/75976 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | | |
| Franks - Lafayette | Franks International | 124313 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 119/75976 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | | |
| Franks - Lafayette | Franks International | 124318 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 114/75976 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 125166 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 128/75976 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 125172 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 122/75976 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 125173 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 123/75976 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 125190 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 144/75976 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 125191 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 143/75976 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | | |
| Franks - Lafayette | Franks International | 125200 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 155/75976 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | | |
| Franks - Lafayette | Franks International | 125201 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 154/75976 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 125204 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 159/75976 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 125205 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 158/75976 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 125213 | | Rack No. BPL7L2 | 22 INCH 1 LB X80 DLQ,B/P, 162/75976 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 125219 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 139/75976 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 125221 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 137/75976 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 125222 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 136/75976 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | | |
| Franks - Lafayette | Franks International | 125249 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 145/75976 | | ORLOV II | EA | | | 1 | 41.51 | | 0 | | |
| Franks - Lafayette | Franks International | 125250 | | NA | 22 INCH 1 LB X80 DLQ,B/P, 146/75976 | | ORLOV II | EA | | | 1 | 41.51 | | 0 | | |
| Franks - Lafayette | Franks International | 130092 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 22/76941 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 130093 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 15/76941 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | | |
| Franks - Lafayette | Franks International | 130094 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 24/76941 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 130095 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 9/76941 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | | |
| Franks - Lafayette | Franks International | 130096 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 34/76941 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 130097 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 27/76941 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | | |
| Franks - Lafayette | Franks International | 130098 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 28/76941 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | | |
| Franks - Lafayette | Franks International | 130099 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 19/76941 | | ORLOV II | EA | | | 1 | 41.51 | | 0 | | |
| Franks - Lafayette | Franks International | 130100 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 39/76941 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | | |
| Franks - Lafayette | Franks International | 130101 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 40/76941 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | | |
| Franks - Lafayette | Franks International | 130102 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 25/76941 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | | |
| Franks - Lafayette | Franks International | 130103 | | Rack No. QRLSL2 | 22 INCH 1 LB X80 DLQ,B/P, 26/76941 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | | |
| Franks - Lafayette | Franks International | 130104 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 38/76941 | | ORLOV II | EA | | | 1 | 41.41 | | 0 | | |
| Franks - Lafayette | Franks International | 130105 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 31/76941 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | | |
| Franks - Lafayette | Franks International | 130106 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 32/76941 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | | |
| Franks - Lafayette | Franks International | 130107 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 17/76941 | | ORLOV II | EA | | | 1 | 41.41 | | 0 | | |
| Franks - Lafayette | Franks International | 130108 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 44/76941 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 130109 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 29/76941 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | | |
| Franks - Lafayette | Franks International | 130110 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 30/76941 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | | |
| Franks - Lafayette | Franks International | 130111 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 23/76941 | | ORLOV II | EA | | | 1 | 41.5 | | 0 | | |
| Franks - Lafayette | Franks International | 130112 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 42/76941 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | | |
| Franks - Lafayette | Franks International | 130113 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 35/76941 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | | |
| Franks - Lafayette | Franks International | 130114 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 36/76941 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 130115 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 23/76941 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | | |
| Franks - Lafayette | Franks International | 130117 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 47/76941 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | | |
| Franks - Lafayette | Franks International | 130118 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 33/76941 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | | |
| Franks - Lafayette | Franks International | 130121 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 46/76941 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | | |
| Franks - Lafayette | Franks International | 130125 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 45/76941 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | | |
| Franks - Lafayette | Franks International | 130126 | | Rack No. QRSBL | 22 INCH 1 LB X80 R/P,CPA, 37/76941 | | ORLOV II | EA | | | 1 | 41.49 | | 0 | | |
| Franks - Lafayette | Franks International | 130129 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 48/76941 | | ORLOV II | EA | | | 1 | 39.42 | | 0 | | |
| Franks - Lafayette | Franks International | 130130 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 43/76941 | | ORLOV II | EA | | | 1 | 39.6 | | 0 | | |
| Franks - Lafayette | Franks International | 130142 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 11/76941 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | | |
| Franks - Lafayette | Franks International | 130143 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 13/76941 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | | |
| Franks - Lafayette | Franks International | 130144 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 10/76941 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | | |
| Franks - Lafayette | Franks International | 130145 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 18/76941 | | ORLOV II | EA | | | 1 | 41.44 | | 0 | | |
| Franks - Lafayette | Franks International | 130146 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 16/76941 | | ORLOV II | EA | | | 1 | 41.42 | | 0 | | |
| Franks - Lafayette | Franks International | 130147 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 12/76941 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 130148 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 14/76941 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | | |
| Franks - Lafayette | Franks International | 130149 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 20/76941 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | | |
| Franks - Lafayette | Franks International | 130151 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 2/76941 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | | |
| Franks - Lafayette | Franks International | 130152 | | Rack No. QR13 | 22 INCH 1 LB X80 DLQ,B/P,X/O, 1/76941 | | ORLOV II | EA | | | 1 | 41.6 | | 0 | | |
| Franks - Lafayette | Franks International | 130154 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 4/76941 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | | |
| Franks - Lafayette | Franks International | 130155 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 3/76941 | | ORLOV II | EA | | | 1 | 41.47 | | 0 | | |
| Franks - Lafayette | Franks International | 130156 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 5/76941 | | ORLOV II | EA | | | 1 | 41.46 | | 0 | | |
| Franks - Lafayette | Franks International | 130160 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 6/76941 | | ORLOV II | EA | | | 1 | 41.42 | | 0 | | |
| Franks - Lafayette | Franks International | 130164 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 7/76941 | | ORLOV II | EA | | | 1 | 41.6 | | 0 | | |
| Franks - Lafayette | Franks International | 130228 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 8/76941 | | ORLOV II | EA | | | 1 | 41.48 | | 0 | | |
| Franks - Lafayette | Franks International | 130559 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 49/76941 | | ORLOV II | EA | | | 1 | 41.35 | | 0 | | |
| Franks - Lafayette | Franks International | 130560 | | Rack No. QRSBL | 22 INCH 1 LB X80 DLQ,B/P, 41/76941 | | ORLOV II | EA | | | 1 | 41.45 | | 0 | | |
| Franks - Lafayette | Franks International | 62753 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 95/76941 | | ORLOV II | EA | | | 1 | 41.87 | | 0 | | |
| Franks - Lafayette | Franks International | 62759 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 92/76941 | | ORLOV II | EA | | | 1 | 41.77 | | 0 | | |
| Franks - Lafayette | Franks International | 62761 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 94/76941 | | ORLOV II | EA | | | 1 | 41.86 | | 0 | | |
| Franks - Lafayette | Franks International | 62762 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 93/76941 | | ORLOV II | EA | | | 1 | 41.91 | | 0 | | |
| Franks - Lafayette | Franks International | 62765 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 97/76941 | | ORLOV II | EA | | | 1 | 41.91 | | 0 | | |
| Franks - Lafayette | Franks International | 62766 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 101/76941 | | ORLOV II | EA | | | 1 | 41.91 | | 0 | | |
| Franks - Lafayette | Franks International | 62768 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 96/76941 | | ORLOV II | EA | | | 1 | 41.89 | | 0 | | |
| Franks - Lafayette | Franks International | 62769 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 76941 | | ORLOV II | EA | | | 1 | 41.89 | | 0 | | |
| Franks - Lafayette | Franks International | 62851 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 100/76941 | | ORLOV II | EA | | | 1 | 41.85 | | 0 | | |
| Franks - Lafayette | Franks International | 62863 | | Rack No. QRR3L5 | 22 INCH 1.25 LB X80 DLQ,B/P, 98/76941 | | ORLOV II | EA | | | 1 | 41.89 | | 0 | | |
| Franks - Lafayette | Franks International | 103217 | | Rack No. BPR8R2 | 22 INCH 1 LB X80 DLQ,B/P, | | ORLOV II | EA | | | 1 | 21.3 | | 0 | | |
| Franks - Lafayette | Franks International | 105564 | | Rack No. BPR6L4 | 22 INCH 1 LB X80 DLQ,B/P, 2/74164 | | NOBLE | EA | | | 1 | 7.98 | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 109324 | | Rack No. BPR7L4 | 22 INCH 1.25 LB X80 DLQ,B/P, 15/74732 | | NOBLE | EA | | | 1 | 21.74 | 0 | | | |
| Franks - Lafayette | Franks International | 111396 | | Rack No. BPR7L4 | 22 INCH 1 LB X80 DLQ,B/P, 4/74727 | | NOBLE | EA | | | 1 | 28.35 | 0 | | | |
| Franks - Lafayette | Franks International | 111399 | | Rack No. BPR7L4 | 22 INCH 1 LB X80 DLQ,B/P, 2/74727 | | NOBLE | EA | | | 1 | 28.32 | 0 | | | |
| Franks - Lafayette | Franks International | 112330 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLQ,B/P, 15/74736 | | NOBLE | EA | | | 1 | 81.15 | 0 | | | |
| Franks - Lafayette | Franks International | 112336 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLQ,B/P, 20/74736 | | NOBLE | EA | | | 1 | 81.85 | 0 | | | |
| Franks - Lafayette | Franks International | 112709 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLQ,B/P, 9/74736 | | NOBLE | EA | | | 1 | 81.85 | 0 | | | |
| Franks - Lafayette | Franks International | 112710 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLQ,B/P, 23/74736 | | NOBLE | EA | | | 1 | 81.92 | 0 | | | |
| Franks - Lafayette | Franks International | 112712 | | Rack No. QRR1L2 | 22 INCH 1.25 LB X80 DLQ,B/P, 22/74736 | | NOBLE | EA | | | 1 | 81.85 | 0 | | | |
| Franks - Lafayette | Franks International | 115996 | | Rack No. BPR7L4 | 22 INCH 1 LB X80 DLQ,B/P, 7/21609 | | NOBLE | EA | | | 1 | 31.34 | 0 | | | |
| Franks - Lafayette | Franks International | 116784 | | PYM | 36 INCH 2 LB X70 DLQ,B, | | NOBLE | EA | | | 1 | 4.5 | 0 | | | |
| Franks - Lafayette | Franks International | 123875 | | NA | 22 INCH 1.25 LB X80 DLQ,B/PE, | | NOBLE | EA | | | 1 | 40.89 | 0 | | | |
| Franks - Lafayette | Franks International | 136805 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 13/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.06 | 0 | | | |
| Franks - Lafayette | Franks International | 136806 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 16/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 136807 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 7/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.06 | 0 | | | |
| Franks - Lafayette | Franks International | 136808 | | NA | 26 INCH 1 LB X5256 DDS,B/TCE, 11/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 14.44 | 0 | | | |
| Franks - Lafayette | Franks International | 136809 | | NA | 26 INCH 1 LB X5256 DDS,B/FS, 18/76560 | | SOUTH MARSH ISLAND 105#A-21 ST | EA | | | 1 | 23.75 | 0 | | | |
| Franks - Lafayette | Franks International | 136810 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 8/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137230 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 17/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137231 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 15/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137232 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 14/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137233 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 5/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137234 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 4/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137235 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 9/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.08 | 0 | | | |
| Franks - Lafayette | Franks International | 137239 | | Rack No. QRR5L4 | 26 INCH 1 LB X5256 DDS,B/P, 12/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.1 | 0 | | | |
| Franks - Lafayette | Franks International | 137240 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 10/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.08 | 0 | | | |
| Franks - Lafayette | Franks International | 137241 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 6/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 40.08 | 0 | | | |
| Franks - Lafayette | Franks International | 137242 | | Rack No. QTCE2L1 | 26 INCH 1 LB X5256 DDS,B/TCE,COT, 1/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 12.48 | 0 | | | |
| Franks - Lafayette | Franks International | 137243 | | Rack No. QRR1R1 | 26 INCH 1 LB X5256 DDS,P/TCE, 11/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 25.65 | 0 | | | |
| Franks - Lafayette | Franks International | 137244 | | Rack No. QRL3L1 | 26 INCH 1 LB X5256 TCE/TCE,COT, 1/76560 | | #A-21 ST - SOUTH MARSH | EA | | | 1 | 14.16 | 0 | | | |
| Franks - Lafayette | Franks International | 137384 | | Rack No. QRR2L1 | 26 INCH 1 LB X5256 DDS,B/P, 12/76561 | | SOUTH MARSH ISLAND#A-21 ST # 105 | EA | | | 1 | 40.09 | 0 | | | |
| Franks - Lafayette | Franks International | 137392 | | Rack No. QRR5L4 | 26 INCH 1 LB X5256 DDS,B/P, 3/76561 | | SHIP SHOAL 169 #G-3 | EA | | | 1 | 40.1 | 0 | | | |
| Franks - Lafayette | Franks International | 137393 | | Rack No. QRR5L4 | 26 INCH 1 LB X5256 DDS,B/P, 8/76561 | | SHIP SHOAL 169 #G-3 | EA | | | 1 | 40.1 | 0 | | | |
| Franks - Lafayette | Franks International | 137394 | | Rack No. QRR5L4 | 26 INCH 1 LB X5256 DDS,B/P,COT, 6/76561 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 40.1 | 0 | | | |
| Franks - Lafayette | Franks International | 137938 | | Rack No. BPL11R1 | 22 INCH 1 LB X80 DLQ,B/P,X/O, 1/72603 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.65 | 0 | | | |
| Franks - Lafayette | Franks International | 138065 | | Rack No. BPL10L1 | 36 INCH 1.5 LB X65 DLQ,B/P, 26/70264 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 138459 | | Rack No. BPL10L1 | 28 INCH 0.75 LB X60 DLQ,B/P, 2/76746 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 43.58 | 0 | | | |
| Franks - Lafayette | Franks International | 138928 | | Rack No. BPR14L1 | 22 INCH 1 LB X80 DLQ,B/P, 28/73725 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 61.46 | 0 | | | |
| Franks - Lafayette | Franks International | 138947 | | Rack No. BPL11R1 | 22 INCH 1 LB X80 DLQ,B/P,BURST X DLQ,B/P, 10/76595 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 49.56 | 0 | | | |
| Franks - Lafayette | Franks International | 140972 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 20/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 140973 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 27/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.78 | 0 | | | |
| Franks - Lafayette | Franks International | 140974 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 41/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 140975 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 45/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 140976 | | Rack No. BPL9L4 | 22 INCH 1 LB X80 DLQ,B/P, 60/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.66 | 0 | | | |
| Franks - Lafayette | Franks International | 140977 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 53/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 140978 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 13/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.05 | 0 | | | |
| Franks - Lafayette | Franks International | 140979 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 37/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.07 | 0 | | | |
| Franks - Lafayette | Franks International | 140980 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 40/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.15 | 0 | | | |
| Franks - Lafayette | Franks International | 140981 | | Rack No. BPL9L4 | 22 INCH 1 LB X80 DLQ,B/P, 23/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 140982 | | Rack No. BPL9L4 | 22 INCH 1 LB X80 DLQ,B/P, 7/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 140983 | | Rack No. BPL9L4 | 22 INCH 1 LB X80 DLQ,B/P, 81/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 140984 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 15/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.12 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 140985 | | Rack No. BPL11R4 | 22 INCH 1 LB X80 DLQ,B/P, 21/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 140986 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 70/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.96 | 0 | | | |
| Franks - Lafayette | Franks International | 140987 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 44/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.38 | 0 | | | |
| Franks - Lafayette | Franks International | 140988 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 14/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.02 | 0 | | | |
| Franks - Lafayette | Franks International | 140989 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 12/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.04 | 0 | | | |
| Franks - Lafayette | Franks International | 140990 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 74/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.08 | 0 | | | |
| Franks - Lafayette | Franks International | 140991 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 63/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 140992 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 61/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 140993 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 19/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.37 | 0 | | | |
| Franks - Lafayette | Franks International | 140994 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 20/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.06 | 0 | | | |
| Franks - Lafayette | Franks International | 140995 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 51/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 140996 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 68/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.36 | 0 | | | |
| Franks - Lafayette | Franks International | 140997 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 24/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141002 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 92/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 141003 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 116/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.43 | 0 | | | |
| Franks - Lafayette | Franks International | 141004 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 73/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141005 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 130/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 141006 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 21/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.59 | 0 | | | |
| Franks - Lafayette | Franks International | 141007 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 18/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.08 | 0 | | | |
| Franks - Lafayette | Franks International | 141008 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 14/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141009 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 25/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141010 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 4/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.05 | 0 | | | |
| Franks - Lafayette | Franks International | 141011 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 78/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.34 | 0 | | | |
| Franks - Lafayette | Franks International | 141012 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 87/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.16 | 0 | | | |
| Franks - Lafayette | Franks International | 141013 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 6/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141014 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 33/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141015 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 11/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.16 | 0 | | | |
| Franks - Lafayette | Franks International | 141016 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 9/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 141017 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 27/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141018 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 32/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141019 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 94/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.46 | 0 | | | |
| Franks - Lafayette | Franks International | 141020 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 28/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141021 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 30/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141022 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 31/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.44 | 0 | | | |
| Franks - Lafayette | Franks International | 141023 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 90/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 44.89 | 0 | | | |
| Franks - Lafayette | Franks International | 141024 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 12/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141025 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 93/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141026 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 95/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 141027 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 96/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141028 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 35/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141029 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 18/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.87 | 0 | | | |
| Franks - Lafayette | Franks International | 141030 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 47/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.07 | 0 | | | |
| Franks - Lafayette | Franks International | 141031 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 10/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141032 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 114/76883 | | MC519 #3 - Genovesa | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141033 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 46/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.42 | 0 | | | |
| Franks - Lafayette | Franks International | 141034 | | Rack No. BPR5L3 | 22 INCH 1 LB X80 DLQ,B/P, 57/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.08 | 0 | | | |
| Franks - Lafayette | Franks International | 141035 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 56/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 141036 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 86/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141037 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 37/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 141038 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 39/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141039 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 39/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141040 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 47/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.42 | 0 | | | |
| Franks - Lafayette | Franks International | 141041 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 42/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 141042 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 24/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141043 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 79/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 141044 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 54/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141045 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 46/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.72 | 0 | | | |
| Franks - Lafayette | Franks International | 141046 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 82/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141047 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 2/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141048 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 43/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.6 | 0 | | | |
| Franks - Lafayette | Franks International | 141049 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 16/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141050 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 22/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141051 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 26/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141052 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 19/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.07 | 0 | | | |
| Franks - Lafayette | Franks International | 141053 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 29/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.38 | 0 | | | |
| Franks - Lafayette | Franks International | 141054 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 3/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.06 | 0 | | | |
| Franks - Lafayette | Franks International | 141055 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 50/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141056 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 8/76883 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141057 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 8/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.07 | 0 | | | |
| Franks - Lafayette | Franks International | 141058 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 48/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141059 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 55/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.64 | 0 | | | |
| Franks - Lafayette | Franks International | 141060 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 76/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.41 | 0 | | | |
| Franks - Lafayette | Franks International | 141061 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 64/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141062 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 65/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141063 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 36/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.72 | 0 | | | |
| Franks - Lafayette | Franks International | 141064 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 62/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.41 | 0 | | | |
| Franks - Lafayette | Franks International | 141065 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 8/76883 | | MC519 #3 - Genovesa | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 141066 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 69/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141067 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 72/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141068 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 66/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141069 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 5/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141070 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 34/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.24 | 0 | | | |
| Franks - Lafayette | Franks International | 141071 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 75/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.14 | 0 | | | |
| Franks - Lafayette | Franks International | 141072 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 17/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 141073 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 38/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141074 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 85/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141075 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 79/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.08 | 0 | | | |
| Franks - Lafayette | Franks International | 141076 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 58/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 141077 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 42/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141078 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 48/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141079 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 25/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.15 | 0 | | | |
| Franks - Lafayette | Franks International | 141080 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 77/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141081 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 3/76595 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.11 | 0 | | | |
| Franks - Lafayette | Franks International | 141082 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 83/76610 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.09 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 141083 | | Rack No. BPL10L2 | 22 INCH 1 LB X80 DLQ,B/P, 40/76883 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.51 | 0 | | | |
| Franks - Lafayette | Franks International | 141084 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 80/76883 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 141085 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 67/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.15 | 0 | | | |
| Franks - Lafayette | Franks International | 141086 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 71/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.12 | 0 | | | |
| Franks - Lafayette | Franks International | 141087 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 52/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.05 | 0 | | | |
| Franks - Lafayette | Franks International | 141088 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 49/76610 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.13 | 0 | | | |
| Franks - Lafayette | Franks International | 141089 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 87/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.49 | 0 | | | |
| Franks - Lafayette | Franks International | 141090 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 93/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.42 | 0 | | | |
| Franks - Lafayette | Franks International | 141091 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 24/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 141122 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 83/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 141123 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 92/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141124 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 28/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 141125 | | Rack No. BPR7L2 | 22 INCH 1 LB X80 DLQ,B/P, 90/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141126 | | Rack No. QRR8L3 | 22 INCH 1 LB X80 DLQ,B/P, 152/75976 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141127 | | Rack No. QRR8L3 | 22 INCH 1 LB X80 DLQ,B/P, 20/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 141129 | | Rack No. QRR8L3 | 22 INCH 1 LB X80 DLQ,FS, 1/76748 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 43.52 | 0 | | | |
| Franks - Lafayette | Franks International | 141130 | | Rack No. QRR8L3 | 22 INCH 1 LB X80 DLQ,B/P, 124/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.45 | 0 | | | |
| Franks - Lafayette | Franks International | 141131 | | Rack No. QRR8L3 | 22 INCH 1 LB X80 DLQ,B/P, 38/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.48 | 0 | | | |
| Franks - Lafayette | Franks International | 141230 | | Rack No. BPL12R1 | 36 INCH 1.5 LB X65 DLQ,B/P, 2/76608 | | MCS19 #3 - Genovesa | EA | | | 1 | 42.45 | 0 | | | |
| Franks - Lafayette | Franks International | 141233 | | Rack No. BPL12R1 | 36 INCH 1.5 LB X65 DLQ,B/P, 5/76608 | | MCS19 #3 - Genovesa | EA | | | 1 | 42.18 | 0 | | | |
| Franks - Lafayette | Franks International | 141234 | | Rack No. BPL12R1 | 36 INCH 1.5 LB X65 DLQ,B/P, 3/76608 | | MCS19 #3 - Genovesa | EA | | | 1 | 42.18 | 0 | | | |
| Franks - Lafayette | Franks International | 141235 | | Rack No. BPL12R1 | 36 INCH 1.5 LB X65 DLQ,B/P, 11/76881 | | MCS19 #3 - Genovesa | EA | | | 1 | 40.95 | 0 | | | |
| Franks - Lafayette | Franks International | 141236 | | Rack No. BPL12R1 | 36 INCH 1.5 LB X65 DLQ,B/P, 2/75995 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.89 | 0 | | | |
| Franks - Lafayette | Franks International | 141237 | | Rack No. BPR5L3 | 22 INCH 1.25 LB X80 DLQ,B/P, 8/76813 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.72 | 0 | | | |
| Franks - Lafayette | Franks International | 141238 | | Rack No. BPR5L3 | 22 INCH 1.25 LB X80 DLQ,B/P, 49/76883 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.72 | 0 | | | |
| Franks - Lafayette | Franks International | 141239 | | Rack No. BPR5L3 | 22 INCH 1.25 LB X80 DLQ,B/P, 49/76883 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.65 | 0 | | | |
| Franks - Lafayette | Franks International | 141240 | | Rack No. BPR5L3 | 22 INCH 1.25 LB X80 DLQ,B/P, 3/76813 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.7 | 0 | | | |
| Franks - Lafayette | Franks International | 141241 | | Rack No. BPR5L3 | 22 INCH 1.25 LB X80 DLQ,B/P, 5/76813 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.7 | 0 | | | |
| Franks - Lafayette | Franks International | 141392 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 41/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141393 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 4/73211 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 141394 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 3/73211 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.9 | 0 | | | |
| Franks - Lafayette | Franks International | 141395 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 13/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.02 | 0 | | | |
| Franks - Lafayette | Franks International | 141396 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 21/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141397 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 33/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 141398 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 51/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141399 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 28/73212 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.99 | 0 | | | |
| Franks - Lafayette | Franks International | 141400 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 24/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141401 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 3/73211 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 141402 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 40/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141403 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 29/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 42.1 | 0 | | | |
| Franks - Lafayette | Franks International | 141404 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 37/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141405 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 13/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141406 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 31/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 141407 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 53/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141408 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 16/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141409 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 8/70915 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141410 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 20/73213 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.98 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 141411 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 8/73213 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.97 | 0 | | | |
| Franks - Lafayette | Franks International | 141412 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 48/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141413 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 10/73212 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.96 | 0 | | | |
| Franks - Lafayette | Franks International | 141414 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 49/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141415 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 26/70462 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141416 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 26/73212 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141417 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 78/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141418 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 1/73211 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 141419 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 15/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141420 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 12/73157 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.99 | 0 | | | |
| Franks - Lafayette | Franks International | 141421 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 76/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141422 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 81/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141423 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 34/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141424 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 44/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141425 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 31/70462 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141426 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 76/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141427 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 9/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141428 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 41/73213 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141429 | | Rack No. BPR7R2 | 28 INCH 0.75 LB X60 DLQ,B/P, 56/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141430 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 30/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141431 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 12/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141432 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 8/73212 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 141433 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 39/73213 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141434 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 39/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141435 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 69/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141436 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 33/70462 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141437 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 61/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141438 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 47/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141439 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 30/73212 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141441 | | Rack No. BPR9L3 | 28 INCH 0.75 LB X60 DLQ,B/P, 60/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141442 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 46/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141443 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 20/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141444 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 70/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141445 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 79/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141446 | | Rack No. BPLSR4 | 28 INCH 0.75 LB X60 DLQ,B/P, 74/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141447 | | Rack No. BPLSR4 | 28 INCH 0.75 LB X60 DLQ,B/P, 11/70915 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.94 | 0 | | | |
| Franks - Lafayette | Franks International | 141448 | | Rack No. BPLSR4 | 28 INCH 0.75 LB X60 DLQ,B/P, 11/73213 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.02 | 0 | | | |
| Franks - Lafayette | Franks International | 141450 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 26/73213 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 42.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141452 | | Rack No. BPRSL3 | 22 INCH 1.25 LB X80 DLQ,B/P, 4/76813 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.67 | 0 | | | |
| Franks - Lafayette | Franks International | 141453 | | Rack No. BPRSL3 | 22 INCH 1.25 LB X80 DLQ,B/P, 9/76813 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.74 | 0 | | | |
| Franks - Lafayette | Franks International | 141454 | | Rack No. BPRSL3 | 22 INCH 1.25 LB X80 DLQ,B/P, 10/76813 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.76 | 0 | | | |
| Franks - Lafayette | Franks International | 141455 | | Rack No. BPRSL3 | 22 INCH 1.25 LB X80 DLQ,B/P, 6/76813 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 41.71 | 0 | | | |
| Franks - Lafayette | Franks International | 141548 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,P/FS, 1/76596 | | GREEN CANYON 200 TA-09 (DRLOV) | EA | | | 1 | 43.6 | 0 | | | |
| Franks - Lafayette | Franks International | 141549 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 35/76795 | | MC519 #3 - Genovesa | EA | | | 1 | 41.47 | 0 | | | |
| Franks - Lafayette | Franks International | 141550 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 31/76795 | | MC519 #3 - Genovesa | EA | | | 1 | 41.92 | 0 | | | |
| Franks - Lafayette | Franks International | 141551 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 30/76795 | | MC519 #3 - Genovesa | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 141552 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 23/76795 | | MC519 #3 - Genovesa | EA | | | 1 | 40.13 | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Franks - Lafayette | Franks International | 141553 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 26/76795 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 141554 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 3/76795 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 141555 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 28/76795 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.93 | 0 | | | |
| Franks - Lafayette | Franks International | 141556 | | Rack No. BPR9L2 | 28 INCH 0.75 LB X60 DLQ,B/P, 29/76795 | | MCS19 #3 - Genovesa | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 141616 | | Rack No. BPR5L3 | 22 INCH 1 LB X80 DLQ,B/P, 112/76926 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.01 | 0 | | | |
| Franks - Lafayette | Franks International | 141619 | | Rack No. BPR5L3 | 22 INCH 1 LB X80 DLQ,B/P, 78/76926 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 40.96 | 0 | | | |
| Franks - Lafayette | Franks International | 141622 | | Rack No. BPR5L3 | 22 INCH 1 LB X80 DLQ,B/P, 111/76926 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 40.9 | 0 | | | |
| Franks - Lafayette | Franks International | 141625 | | Rack No. BPR5L3 | 22 INCH 1 LB X80 DLQ,B/P, 123/76926 | | GREEN CANYON 200 TA-09 (ORLOV) | EA | | | 1 | 41.5 | 0 | | | |
| Franks - Lafayette | Franks International | 65379 | | Rack No. BPL7L5 | 22 INCH 1 LB X80 DLQ,B/FS, | | | EA | | | 1 | 43.06 | 0 | | | |
| Franks - Lafayette | Franks International | 81955 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ,B/P, 14/74218 | | | EA | | | 1 | 21.88 | 0 | | | |
| Franks - Lafayette | Franks International | 83028 | | Rack No. BPR7L4 | 36 INCH 1.5 LB X65 DLQ,B/BV, | | | EA | | | 1 | 50.55 | 0 | | | |
| Franks - Lafayette | Franks International | 84690 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ,B/P, 1/69354 | | | EA | | | 1 | 42.03 | 0 | | | |
| Franks - Lafayette | Franks International | 84693 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ,B/P, 4/69354 | | | EA | | | 1 | 42.03 | 0 | | | |
| Franks - Lafayette | Franks International | 84694 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ,B/P, 5/69354 | | | EA | | | 1 | 42.04 | 0 | | | |
| Franks - Lafayette | Franks International | 84696 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ,B/P, 7/69354 | | | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 84881 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ,B/P, 12/69354 | | | EA | | | 1 | 42.04 | 0 | | | |
| Franks - Lafayette | Franks International | 84893 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ,B/P, 24/69354 | | | EA | | | 1 | 42.03 | 0 | | | |
| Franks - Lafayette | Franks International | 84900 | | Rack No. BPL7L5 | 28 INCH 0.752 LB X56 DLQ,B/FS, 39/69354 | | | EA | | | 1 | 43.57 | 0 | | | |
| Franks - Lafayette | Franks International | 86362 | | Rack No. BPR7L4 | 36 INCH 1.5 LB X65 DLQ,B/P, 14/70264 | | Noble | EA | | | 1 | 42.09 | 0 | | | |
| Franks - Lafayette | Franks International | 86410 | | Rack No. BPR7L4 | 36 INCH 1.5 LB X65 DLQ,B/P, 24/70264 | | Noble | EA | | | 1 | 41.91 | 0 | | | |
| Franks - Lafayette | Franks International | 87226 | | Rack No. BPR7L4 | 36 INCH 2 LB X70 DLQ,B/P, 1/70264 | | Noble | EA | | | 1 | 42.43 | 0 | | | |
| Franks - Lafayette | Franks International | 87233 | | Rack No. BPR7L4 | 36 INCH 2 LB X70 DLQ,B/P, 5/70264 | | Noble | EA | | | 1 | 42.32 | 0 | | | |
| Franks - Lafayette | Franks International | 91366 | | Rack No. BPR7L4 | 22 INCH 1 LB X80 DLQ,B/P, 7/72609 | | Noble | EA | | | 1 | 31.4 | 0 | | | |
| Franks - Lafayette | Franks International | 93573 | | Rack No. BPL7L5 | 28 INCH 0.75 LB X5660 DLQ,B/BV,I.IF, 19/70466 | | Noble | EA | | | 1 | 41.95 | 0 | | | |
| Franks - Lafayette | Franks International | 93574 | | Rack No. BPL7L5 | 28 INCH 0.75 LB X5660 DLQ,B/P, 31/70460 | | | EA | | | 4 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 93576 | | Rack No. BPL7L5 | 28 INCH 0.75 LB X5660 DLQ,B/P, 2/70466 | | | EA | | | 4 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 93578 | | Rack No. BPL7L5 | 28 INCH 0.75 LB X5660 DLQ,B/P, 7/70466 | | | EA | | | 4 | 42 | 0 | | | |
| Franks - Lafayette | Franks International | 95141 | | Rack No. BPR8R2 | 22 INCH 1 LB X80 DLQ,B/P, | | | EA | | | 1 | 21.4 | 0 | | | |
| Franks - New Iberia | Franks International | 87377 | | Rack No. N49 | 22 INCH 1.25 LB X80 PLAIN, | | ORLOV II | EA | | | 1 | 40.11 | 0 | | | |
| Franks - New Iberia | Franks International | 87378 | | Rack No. N49 | 22 INCH 1.25 LB X80 PLAIN, | | ORLOV II | EA | | | 1 | 40.07 | 0 | | | |
| Hornbeck - Fourchon | Hornbeck Energy Services | 70024.A | | | PLATFORM; PN:SW160121-01,TYP AERIAL LIFT | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 279145 | | | |
| Linear - Lafayette | Linear Controls | 70131.A | | Yard Loc: H219, climate controlled facility | SIEMENS MOTOR: S/N: 0770680-010-1. 1250 HP 882 RPM, 4160 VT, WP11 Frame 6811 Siemens | | Thunderhawk | EA | | | 1 | | 0 | | | |
| Linear - Lafayette | Linear Controls | 70146.A | | Yard Loc: H222, climate controlled facility | SIEMENS MOTOR: S/N: 1LE2414CC112AA3. 75 HP, 1200 RPM, 460 VT, TEFC, Frame 444T | | Thunderhawk | EA | | | 1 | | 0 | | | |
| Linear - Lafayette | Linear Controls | 70147.A | | Yard Loc: H223, climate controlled facility | MARATHON MOTOR: S/N: WAA037677. 125 HP, 1800 RPM, 460 VR, TEFC, Grame 445T | | Thunderhawk | EA | | | 1 | | 0 | | | |
| Linear - Lafayette | Linear Controls | 70149.A | | Yard Loc: H225, climate controlled facility | SIEMENS MOTOR: S/N: G12T1269NPI7. 250 HP, 1800 RPM, TEFC  Frame B449T | | Thunderhawk | EA | | | 1 | | 0 | | | |
| NOV - Amelia | NOV | 7805505-01 | | Rack No. AR30. | 4 1/2" 15.50# HP1-13CR110 JFE SEAMLESS TUBING, BTS-6 THREAD | FW192008 | GC 200 TA-2 S/T | EA | UNKNOWN | | 15 | 593.35 | 0 | | | |
| NOV - Amelia | NOV | 7805505-02 | | Rack No. AR30. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS TUBING, BTS-6 THREAD | FW192008 | GC 200 TA-2 S/T | EA | UNKNOWN | | 23 | 910.04 | 0 | | | |
| NOV - Amelia | NOV | 7800124-01 | | Rack No. MURPHY. | 5 1/2" 29.70# HP213CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 40 | 1709.4 | 0 | | | |
| NOV - Amelia | NOV | 7800124-05 | | Rack No. EQ22. | 5 1/2" 29.70# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | USED | | 1 | 27 | 0 | | | |
| NOV - Amelia | NOV | 7800124-01 | | Rack No. MURPHY. | 5 1/2" 29.70# HP213CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 5 | 213.05 | 0 | | | |
| NOV - Amelia | NOV | 7800124-06 | | Rack No. 2-336. | 5 1/2" 29.70# HP2-13CR110 JFE SEAMLESS PUP JOINTS, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | USED | | 1 | 18.1 | 0 | | | |
| NOV - Amelia | NOV | 7800124-03 | | Rack No. MURPHY. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 3 | 129.8 | 0 | | | |
| NOV - Amelia | NOV | 7800124-01 | | Rack No. MURPHY. | 5 1/2" 29.70# HP213CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 3 | 126 | 0 | | | |
| NOV - Amelia | NOV | 7800124-02 | | Rack No. MURPHY. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 45 | 1926.05 | 0 | | | |
| NOV - Amelia | NOV | 7800124-03 | | Rack No. MURPHY. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 1 | 42.75 | 0 | | | |
| NOV - Amelia | NOV | 7800124-03 | | Rack No. MURPHY. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 2 | 84.85 | 0 | | | |
| NOV - Amelia | NOV | 7800124-07 | | Rack No. 2-336. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS PUP JOINTS, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 1 | 8.55 | 0 | | | |
| NOV - Amelia | NOV | 7800124-07 | | Rack No. 2-336. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS PUP JOINTS, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 2 | 13.25 | 0 | | | |
| NOV - Amelia | NOV | 7800124-07 | | Rack No. 2-336. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS PUP JOINTS, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 2 | 5.2 | 0 | | | |
| NOV - Amelia | NOV | 7800124-08 | | Rack No. N-SPRAY-1. | 4 1/2" 15.10# HP2-13CR110 JFE SEAMLESS PUP JOINTS, JFE LION CR THREAD | FW202002 | GC 40 #1 | EA | NEW | | 1 | 4.3 | 0 | | | |
| NOV - Amelia | NOV | 7800124-02 | | Rack No. MURPHY. | 4 1/2" 18.90# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 2 | 85.15 | 0 | | | |
| NOV - Amelia | NOV | 7800124-02 | | Rack No. MURPHY. | 4 1/2" 18.90# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 41 | 1724.85 | 0 | | | |
| NOV - Amelia | NOV | 7800124-02 | | Rack No. MURPHY. | 4 1/2" 18.90# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 2 | 84.7 | 0 | | | |
| NOV - Amelia | NOV | 7800124-02 | | Rack No. MURPHY. | 4 1/2" 18.90# HP213CR110 JFE SEAMLESS TUBING, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 3 | 128.6 | 0 | | | |
| NOV - Amelia | NOV | 7800124-07 | | Rack No. 2-336. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS PUP JOINTS, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 1 | 15.55 | 0 | | | |
| NOV - Amelia | NOV | 7800124-07 | | Rack No. 2-336. | 5 1/2" 26.00# HP213CR110 JFE SEAMLESS PUP JOINTS, JFE LION THREAD | FW202002 | GC 40 #1 | EA | NEW | | 1 | 4.5 | 0 | | | |
| NOV - Amelia | NOV | 7800101-01 | | Rack No. KD29. | 5 1/2" 26.00# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 OCSG 34536 | EA | USED | | 90 | 3836.7 | 0 | | | |
| NOV - Amelia | NOV | 7800101-01 | | Rack No. KD29. | 5 1/2" 26.00# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 OCSG 34536 | EA | USED | | 21 | 899.55 | 0 | | | |
| NOV - Amelia | NOV | 7800101-01 | | Rack No. KD29. | 5 1/2" 26.00# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 OCSG 34536 | EA | USED | | 1 | 42.4 | 0 | | | |
| NOV - Amelia | NOV | 7800101-01 | | Rack No. KD29. | 5 1/2" 26.00# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 OCSG 34536 | EA | USED | | 142 | 6052.6 | 0 | | | |
| NOV - Amelia | NOV | 7800101-02 | | Rack No. KD29. | 5 1/2" 29.70# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 OCSG 34536 | EA | USED | | 2 | 84.6 | 0 | | | |
| NOV - Amelia | NOV | 7800101-01 | | Rack No. KD29. | 5 1/2" 26.00# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 OCSG 34536 | EA | USED | | 27 | 1148.8 | 0 | | | |
| NOV - Amelia | NOV | 7800101-02 | | Rack No. KD29. | 5 1/2" 29.70# HP2-13CR110 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202002 | GC 40 #1 OCSG 34536 | EA | USED | | 4 | 169.25 | 0 | | | |
| NOV - Amelia | NOV | 7796246-01 | | Rack No. WKRR02. | 4 1/2" 17.00# VM-110 13CR95 VALLOUREC SEAMLESS TUBING, VAM TOP HC THREAD | FW202001 | GC 40 #1 KATMAI | EA | NEW | | 4 | 171 | 0 | | | |
| NOV - Amelia | NOV | 7785930-01 | | Rack No. D001. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW202001 | MC 519 #3 OCSG 27278 | EA | UNKNOWN | | 40 | 1760 | 0 | | | |
| NOV - Amelia | NOV | 7771179-01 | | Rack No. E033. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW202001 | MISS CANYON S19 #3 OCSG 12209 | EA | NEW | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7767125-02 | | Rack No. WRAP1. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192015 | GC 200 TA9-ST01-BP01 | EA | NEW | | 12 | 519.3 | 0 | | | |
| NOV - Amelia | NOV | 7767125-02 | | Rack No. EL06. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192015 | GC 200 TA9-ST01-BP01 | EA | NEW | | 1 | 38.3 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7767125-01 | | Rack No. WRAP1. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192015 | GC 200 TA9-ST01-BP01 | EA | NEW | | 89 | 3858.85 | 0 | | | |
| NOV - Amelia | NOV | 7762379-01 | | Rack No. LONGTR. | 4 1/2" 15.20# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192012 | GC 200 / OCSG 12209 TA-2 ST02 | EA | UNKNOWN | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7762379-02 | | Rack No. I3-WK10. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192012 | GC 200 / OCSG 12209 TA-2 ST02 | EA | NEW | | 9 | 387.15 | 0 | | | |
| NOV - Amelia | NOV | 7762379-02 | | Rack No. CUST1. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192012 | GC 200 / OCSG 12209 TA-2 ST02 | EA | NEW | | 1 | 43.55 | 0 | | | |
| NOV - Amelia | NOV | 7759774-01 | | Rack No. I3-WK10. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192012 | GC 200 TROIKA TA2 ST02 OCSG 12209 | EA | NEW | | 44 | 1904.7982 | 0 | | | |
| NOV - Amelia | NOV | 7759774-02 | | Rack No. CUST1. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192012 | GC 200 TROIKA TA2 ST02 OCSG 12209 | EA | NEW | | 1 | 41.65 | 0 | | | |
| NOV - Amelia | NOV | 7759774-02 | | Rack No. I3-WK10. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192012 | GC 200 TROIKA TA2 ST02 OCSG 12209 | EA | NEW | | 10 | 429.9 | 0 | | | |
| NOV - Amelia | NOV | 7759771-01 | | Rack No. AR33. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192013 | GC 200 TROIKA TA3 ST01 OCSG 12209 | EA | NEW | | 1 | 43.1602 | 0 | | | |
| NOV - Amelia | NOV | 7759771-02 | | Rack No. CP02. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192013 | GC 200 TROIKA TA3 ST01 OCSG 12209 | EA | NEW | | 11 | 472.75 | 0 | | | |
| NOV - Amelia | NOV | 7759771-01 | | Rack No. AR33. | 5 1/2" 23.00# 13CR95 JFE SEAMLESS CASING, JFE LION CR THREAD | FW192013 | GC 200 TROIKA TA3 ST01 OCSG 12209 | EA | NEW | | 22 | 949.5383 | 0 | | | |
| NOV - Amelia | NOV | 7759771-03 | | Rack No. CUST1. | 4 1/2" 15.10# 13CR95 JFE SEAMLESS TUBING, JFE LION CR THREAD | FW192013 | GC 200 TROIKA TA3 ST01 OCSG 12209 | EA | USED | | 1 | 43.3 | 0 | | | |
| NOV - Amelia | NOV | 7754749-01 | | Rack No. K057. | 7 3/4" 46.10# TN-125-HCY TENARIS-TAMSA SEAMLESS CASING, TSH WEDGE 523 THREAD | FW191502 | G.C. 40 #21 5/7 OCSG 34536 (KATMAI) | EA | NEW | | 18 | 830.99 | 0 | | | |
| NOV - Amelia | NOV | 7753002-01 | | Rack No. 2-438. | 7 3/4" 46.10# TN-125-HCY TENARIS-TAMSA SEAMLESS CASING, TSH WEDGE 523 THREAD | FW191102 | GC 200 TA3 OCSG 12209 | EA | NEW | | 11 | 491.8 | 0 | | | |
| NOV - Amelia | NOV | 7753002-02 | | Rack No. 2-438. | 7 3/4" 46.10# Q-125 TENARIS-TAMSA SEAMLESS CASING, TSH WEDGE 523 THREAD | FW191027 | GC 200 TA3 OCSG 12209 | EA | NEW | | 2 | 82.05 | 0 | | | |
| NOV - Amelia | NOV | 7752420-01 | | Rack No. WKRK02. | 5 1/2" 26.00# VM-110 13CR55 VALLOUREC SEAMLESS CASING, VAM TOP HC THREAD | FW191515 | GC 40 #1 (KATMAI #1) OCSG 34536 | EA | NEW | | 1 | 43 | 0 | | | |
| NOV - Amelia | NOV | 7749432-01 | | Rack No. C248. | 11 7/8" 71.80# HCQ-125 U S STEEL SEAMLESS CASING, TSH 513 THREAD | FW191023 | GC 200 #TA-9ST OCSG 12209 | EA | NEW | | 72 | 3160.9 | 0 | | | |
| NOV - Amelia | NOV | 7749426-01 | | Rack No. E2Z1. | 11 7/8" 71.80# HCQ-125 U S STEEL SEAMLESS CASING, TSH 513 THREAD | FW191019 | MC 519 #3 OCSG 27278 | EA | NEW | | 68 | 2986.1 | 0 | | | |
| NOV - Amelia | NOV | 7745836-07 | | Rack No. CD50. | 10 3/4" 65.70# Q-125 HC   SEAMLESS PUP JOINTS, SLIII THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 1 | 5 | 0 | | | |
| NOV - Amelia | NOV | 7745836-07 | | Rack No. CD50. | 10 3/4" 65.70# Q-125 HC   SEAMLESS PUP JOINTS, SLIII THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 1 | 15.2 | 0 | | | |
| NOV - Amelia | NOV | 7745836-07 | | Rack No. CD50. | 10 3/4" 65.70# Q-125 HC   SEAMLESS PUP JOINTS, SLIII THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 2 | 19.55 | 0 | | | |
| NOV - Amelia | NOV | 7745836-12 | | Rack No. CD50. | 10 3/4" 65.70# Q-125 HC V&M TCA SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | USED | | 2 | 87.1 | 0 | | | |
| NOV - Amelia | NOV | 7745836-12 | | Rack No. CD50. | 10 3/4" 65.70# Q-125 HC V&M TCA SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | USED | | 1 | 44.95 | 0 | | | |
| NOV - Amelia | NOV | 7745836-06 | | Rack No. CD50. | 10 3/4" 65.70# Q-125 HC V&M TCA SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 11 | 480.93 | 0 | | | |
| NOV - Amelia | NOV | 7745836-10 | | Rack No. CD50. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 4 | 155.62 | 0 | | | |
| NOV - Amelia | NOV | 7745836-11 | | Rack No. CD50. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | USED | | 2 | 81.81 | 0 | | | |
| NOV - Amelia | NOV | 7745836-09 | | Rack No. CD50. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 27 | 1063.34 | 0 | | | |
| NOV - Amelia | NOV | 7745836-02 | | Rack No. CD48. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 17 | 696.84 | 0 | | | |
| NOV - Amelia | NOV | 7745836-08 | | Rack No. CD50. | OTHER,   THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | USED | | 1 | 4.2 | 0 | | | |
| NOV - Amelia | NOV | 7745836-03 | | Rack No. CD48. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 3 | 123.26 | 0 | | | |
| NOV - Amelia | NOV | 7745836-04 | | Rack No. CD48. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 1 | 43.29 | 0 | | | |
| NOV - Amelia | NOV | 7745836-05 | | Rack No. CD48. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 1 | 43.3 | 0 | | | |
| NOV - Amelia | NOV | 7745836-01 | | Rack No. CD48. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | FW191023 | GC 200 TA9 5/7 OCSG 12209 | EA | NEW | | 28 | 1269.16 | 0 | | | |
| NOV - Amelia | NOV | 7742256-02 | | Rack No. 2-439. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 ST01 OCSG 12209 | EA | NEW | | 3 | 129.4 | 0 | | | |
| NOV - Amelia | NOV | 7742256-01 | | Rack No. 2-439. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 ST01 OCSG 12209 | EA | NEW | | 10 | 441.3 | 0 | | | |
| NOV - Amelia | NOV | 7742256-03 | | Rack No. 2-439. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 ST01 OCSG 12209 | EA | NEW | | 4 | 175.2 | 0 | | | |
| NOV - Amelia | NOV | 7742256-04 | | Rack No. 2-439. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191023 | GC 200 TA9 ST01 OCSG 12209 | EA | USED | | 2 | 88.05 | 0 | | | |
| NOV - Amelia | NOV | 7741619-01 | | Rack No. CEFPUP. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS PUP JOINTS, TSH S23 THREAD | FW191023 | G.C. 200 TA3 OCSG 12209 | EA | NEW | | 1 | 10.12 | 0 | | | |
| NOV - Amelia | NOV | 7738697-01 | | Rack No. AR34. | 6" X 4 1/2" 30.38# 15.50# (45.88#) HP113CR115(O) HP113CR115(I) JFE SEAMLESS VIT, VAM DRS NA THREAD | FW192008 | GREEN CANYON 200 TA-2 / TA-3 | EA | USED | | 58 | 2300.3 | 0 | | | |
| NOV - Amelia | NOV | 7736792-01 | | Rack No. CCF. | 9 7/8" 62.80# Q-125 TENARIS SEAMLESS CASING, TSH W523 DPLS THREAD | FW191018 | GC 200 #TA-9 OCSG 12209 | EA | NEW | | 1 | 37.45 | 0 | | | |
| NOV - Amelia | NOV | 7734993-02 | | Rack No. CCF. | 10 3/4" 73.20# TN-125-HC TENARIS SEAMLESS PUP JOINTS, MAC II THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | NEW | | 2 | 30 | 0 | | | |
| NOV - Amelia | NOV | 7734993-01 | | Rack No. 2-438. | 10 3/4" 73.20# TN-125-HC TENARIS SEAMLESS CASING, MAC II THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | NEW | | 9 | 383.2 | 0 | | | |
| NOV - Amelia | NOV | 7734993-05 | | Rack No. CCF. | 10 3/4" 73.20# TN-125-HC TENARIS SEAMLESS PUP JOINTS, MAC II THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | NEW | | 1 | 10.2 | 0 | | | |
| NOV - Amelia | NOV | 7734993-03 | | Rack No. 2-439. | OTHER,   THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | USED | | 2 | 80.85 | 0 | | | |
| NOV - Amelia | NOV | 7734993-07 | | Rack No. CCF. | OTHER,   THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | USED | | 1 | 5.15 | 0 | | | |
| NOV - Amelia | NOV | 7734993-01 | | Rack No. 2-438. | 10 3/4" 73.20# TN-125-HC TENARIS SEAMLESS CASING, MAC II THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | NEW | | 13 | 510.05 | 0 | | | |
| NOV - Amelia | NOV | 7734993-04 | | Rack No. 2-438. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191517 | MC 519 #3 OCSG 27278 | EA | NEW | | 24 | 1051.5 | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7734993-06 | | Rack No. CCF. | 10 3/4" 73.20# TN-125-HC TENARIS SEAMLESS PUP JOINTS, MAC II THREAD | FW191517 | MC S19 #3 OCSG 27278 | EA | NEW | | 2 | 9.8 | 0 | | | |
| NOV - Amelia | NOV | 7734993-09 | | Rack No. 2-313. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIII THREAD | FW191517 | MC S19 #3 OCSG 27278 | EA | USED | | 15 | 659.7 | 0 | | | |
| NOV - Amelia | NOV | 7734808-01 | | Rack No. C248. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, VAM SLII II THREAD | FW191023 | GREEN CANYON 200 TA9 S/T OCSG 12209 | EA | NEW | | 1 | 36.7 | 0 | | | |
| NOV - Amelia | NOV | 7732821-01 | | Rack No. 2-438. | 13 5/8" 88.20# Q-125 HC V&M SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | NEW | | 4 | 162.95 | 0 | | | |
| NOV - Amelia | NOV | 7732821-03 | | Rack No. R010. | 13 5/8" 88.20# SM-125TT SUMITOMO SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | NEW | | 10 | 399.25 | 0 | | | |
| NOV - Amelia | NOV | 7732821-02 | | Rack No. 2-3308. | 13 5/8" 88.20# Q-125 HC U S STEEL SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | NEW | | 3 | 128.4 | 0 | | | |
| NOV - Amelia | NOV | 7732821-06 | | Rack No. 2-313. | 13 5/8" 88.20# Q-125 HC U S STEEL SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7732821-05 | | Rack No. R010. | 13 5/8" 88.20# SM-125S NSSMC SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | NEW | | 9 | 361.35 | 0 | | | |
| NOV - Amelia | NOV | 7732821-04 | | Rack No. 2-340. | 13 5/8" 88.20# Q-125 HC VMG SEAMLESS CASING, SLIII THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | NEW | | 1 | 44.5 | 0 | | | |
| NOV - Amelia | NOV | 7732821-08 | | Rack No. 2-3308. | 13 5/8" 88.20# SM-125S NSSMC SEAMLESS CASING, HDL THREAD | FW191019 | M.C S19 #3 OCSG: 27278 | EA | USED | | 2 | 88 | 0 | | | |
| NOV - Amelia | NOV | 7731874-01 | | Rack No. I3-302. | 18" 117.00# Q-125-HP USS SEAMLESS CASING, HDL THREAD | FW191019 | M.C S19 ROWAN RESOLUTE | EA | NEW | | 10 | 406.55 | 0 | | | |
| NOV - Amelia | NOV | 7731874-02 | | Rack No. I3-302. | 18" 117.00# Q-125-HP USS SEAMLESS CASING, HDL THREAD | FW191019 | M.C S19 ROWAN RESOLUTE | EA | NEW | | 4 | 170.2 | 0 | | | |
| NOV - Amelia | NOV | 7729854-01 | | Rack No. C218. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW194024 | EW 826-A-18 | EA | NEW | | 54 | 1701.8 | 0 | | | |
| NOV - Amelia | NOV | 7729854-03 | | Rack No. C218. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW194024 | EW 826-A-18 | EA | NEW | | 1 | 31.75 | 0 | | | |
| NOV - Amelia | NOV | 7729854-01 | | Rack No. C152. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW194024 | EW 826-A-18 | EA | NEW | | 1 | 31.8 | 0 | | | |
| NOV - Amelia | NOV | 7729854-02 | | Rack No. C152. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW194024 | EW 826-A-18 | EA | USED | | 4 | 125.95 | 0 | | | |
| NOV - Amelia | NOV | 7727342-03 | | Rack No. CCF. | 10 3/4" 85.30# Q125 ICY TENARIS SEAMLESS PUP JOINTS, MAC II THREAD | FW191515 | GC 40 / OCSG 34536 | EA | NEW | | 2 | 10.7 | 0 | | | |
| NOV - Amelia | NOV | 7727342-03 | | Rack No. CCF. | 10 3/4" 85.30# Q125 ICY TENARIS SEAMLESS PUP JOINTS, MAC II THREAD | FW191515 | GC 40 / OCSG 34536 | EA | NEW | | 1 | 10.4 | 0 | | | |
| NOV - Amelia | NOV | 7727342-04 | | Rack No. CCF. | OTHER,    THREAD | FW191515 | GC 40 / OCSG 34536 | EA | USED | | 1 | 5.15 | 0 | | | |
| NOV - Amelia | NOV | 7727342-01 | | Rack No. 2-110. | 10 3/4" 85.30# Q125 ICY TENARIS SEAMLESS CASING, MAC II THREAD | FW191515 | GC 40 / OCSG 34536 | EA | NEW | | 8 | 352.8444 | 0 | | | |
| NOV - Amelia | NOV | 7727342-01 | | Rack No. 2-213. | 10 3/4" 85.30# Q125 ICY TENARIS SEAMLESS CASING, MAC II THREAD | FW191515 | GC 40 / OCSG 34536 | EA | NEW | | 10 | 441.06 | 0 | | | |
| NOV - Amelia | NOV | 7727342-02 | | Rack No. 2-110. | 10 1/8" 79.29# Q125 ICY TENARIS SEAMLESS CASING, TSH WEDGE 523 THREAD | FW191515 | GC 40 / OCSG 34536 | EA | NEW | | 16 | 712 | 0 | | | |
| NOV - Amelia | NOV | 7725195-01 | | Rack No. C081. | OTHER,    THREAD | FW191018 | GREEN CANYON 200 TA9 | EA | USED | | 2 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7722897-02 | | Rack No. H002. | 7 3/4" 46.10# Q-125 ICY TENARIS SEAMLESS CASING, TSH 523 THREAD | FW191021 | GC 200 TA-2 | EA | NEW | | 5 | 224.5 | 0 | | | |
| NOV - Amelia | NOV | 7717849-01 | | Rack No. E010. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW191018 | GC 200 TA-9 BP01 | EA | NEW | | 40 | 1598.6445 | 0 | | | |
| NOV - Amelia | NOV | 7717849-01 | | Rack No. E010. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW191018 | GC 200 TA-9 BP01 | EA | NEW | | 1 | 39.8 | 0 | | | |
| NOV - Amelia | NOV | 7717849-06 | | Rack No. EG23. | 9 7/8" 62.80# Q-125 HC TENARIS SEAMLESS CASING, SLIII THREAD | FW191018 | GC 200 TA-9 BP01 | EA | NEW | | 3 | 135.45 | 0 | | | |
| NOV - Amelia | NOV | 7717849-02 | | Rack No. E010. | 9 7/8" 62.80# TN-125-HC TENARIS SEAMLESS CASING, TSH WEDGE 523 THREAD | FW191018 | GC 200 TA-9 BP01 | EA | NEW | | 13 | 587.95 | 0 | | | |
| NOV - Amelia | NOV | 7717849-07 | | Rack No. EG23. | OTHER,    THREAD | FW191018 | GC 200 TA-9 BP01 | EA | USED | | 2 | 87.6 | 0 | | | |
| NOV - Amelia | NOV | 7715996-01 | | Rack No. SITEGUARD. | 2 7/8" 6.50# 13CR8S    SEAMLESS PUP JOINTS, BT5-8 THREAD | FW185098 | EB 159 A-17 | EA | USED | | 1 | 10 | 0 | | | |
| NOV - Amelia | NOV | 7715996-01 | | Rack No. SITEGUARD. | 2 7/8" 6.50# 13CR8S    SEAMLESS PUP JOINTS, BT5-8 THREAD | FW185098 | EB 159 A-17 | EA | USED | | 1 | 6 | 0 | | | |
| NOV - Amelia | NOV | 7714562-01 | | Rack No. 2-104. | 18" 116.09# Q125 HP U S STEEL SEAMLESS CASING, HDL THREAD | FW181011 | ORLOV LONG LEAD OCSG 12209 | EA | NEW | | 28 | 1092.6 | 0 | | | |
| NOV - Amelia | NOV | 7714562-01 | | Rack No. AR1. | 18" 116.09# Q125 HP U S STEEL SEAMLESS CASING, HDL THREAD | FW181011 | ORLOV LONG LEAD OCSG 12209 | EA | NEW | | 1 | 39.15 | 0 | | | |
| NOV - Amelia | NOV | 7714562-01 | | Rack No. I3-302. | 18" 116.09# Q125 HP U S STEEL SEAMLESS CASING, HDL THREAD | FW181011 | ORLOV LONG LEAD OCSG 12209 | EA | NEW | | 62 | 2419.22 | 0 | | | |
| NOV - Amelia | NOV | 7714562-01 | | Rack No. I3SPURS. | 18" 116.09# Q125 HP U S STEEL SEAMLESS CASING, HDL THREAD | FW181011 | ORLOV LONG LEAD OCSG 12209 | EA | NEW | | 56 | 2185.05 | 0 | | | |
| NOV - Amelia | NOV | 7714562-01 | | Rack No. I3-301. | 18" 116.09# Q125 HP U S STEEL SEAMLESS CASING, HDL THREAD | FW181011 | ORLOV LONG LEAD OCSG 12209 | EA | NEW | | 84 | 3277.65 | 0 | | | |
| NOV - Amelia | NOV | 7713962-01 | | Rack No. A037. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184070 | EB-158 A-12 | EA | NEW | | 68 | 2158.45 | 0 | | | |
| NOV - Amelia | NOV | 7713824-01 | | Rack No. C245. | 13 5/8" 88.20# Q-125 VMG SEAMLESS CASING, SLIII THREAD | FW191018 | GC 200 TA-9 OCSG 12209 | EA | NEW | | 42 | 1789.7 | 0 | | | |
| NOV - Amelia | NOV | 7710150-01 | | Rack No. K057. | 9 7/8" 64.10# Q-125 VALLOUREC STAR SEAMLESS CASING, SLIII THREAD | FW181011 | GREEN CANYON 200 TA-9 OCSG 12209 | EA | NEW | | 61 | 2391.5 | 0 | | | |
| NOV - Amelia | NOV | 7708123-03 | | Rack No. A037. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184022 | GI 47 E-17 | EA | NEW | | 2 | 62.8 | 0 | | | |
| NOV - Amelia | NOV | 7708123-01 | | Rack No. A037. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184022 | GI 47 E-17 | EA | NEW | | 1 | 31.7 | 0 | | | |
| NOV - Amelia | NOV | 7708123-02 | | Rack No. A004. | OTHER,    THREAD | FW184022 | GI 47 E-17 | EA | USED | | 1 | 30 | 0 | | | |
| NOV - Amelia | NOV | 7708123-04 | | Rack No. A037. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184022 | GI 47 E-17 | EA | USED | | 1 | 31.7 | 0 | | | |
| NOV - Amelia | NOV | 7707781-02 | | Rack No. A037. | 2 7/8" 6.50# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184061 | ENTERPRISE 264 SS 169 OCSG: 00820 | EA | USED | | 5 | 157.25 | 0 | | | |
| NOV - Amelia | NOV | 7707229-01 | | Rack No. K051. | 14" 112.89# Q125-IC TENARIS-TAMSA SEAMLESS CASING, TSH 523 THREAD | FW191001 | GREEN CANYON 40 #2 S/T OCSG 34536 | EA | NEW | | 29 | 1218.4 | 0 | | | |
| NOV - Amelia | NOV | 7707228-01 | | Rack No. K053. | 14" 115.53# Q125 ICY TENARIS-TAMSA SEAMLESS CASING, TSH 553 THREAD | FW191001 | GREEN CANYON 40 #2 ST OCSG 34536 | EA | NEW | | 35 | 1395.2 | 0 | | | |
| NOV - Amelia | NOV | 7705545-01 | | Rack No. B048. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW181011 | GREEN CANYON 200 TA-09 (ORLOV) | EA | NEW | | 2 | 83.16 | 0 | | | |
| NOV - Amelia | NOV | 7705545-01 | | Rack No. B048. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW181011 | GREEN CANYON 200 TA-09 (ORLOV) | EA | NEW | | 3 | 125.2 | 0 | | | |
| NOV - Amelia | NOV | 7705545-01 | | Rack No. B035. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW181011 | GREEN CANYON 200 TA-09 (ORLOV) | EA | NEW | | 12 | 498.9857 | 0 | | | |
| NOV - Amelia | NOV | 7705545-01 | | Rack No. B035. | 7 3/4" 46.10# Q-125 TENARIS SEAMLESS CASING, TSH 523 DPLS THREAD | FW181011 | GREEN CANYON 200 TA-09 (ORLOV) | EA | NEW | | 6 | 250.4 | 0 | | | |
| NOV - Amelia | NOV | 7704862-02 | | Rack No. C152. | 2 3/8" 4.70# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184036 | EB 160 A16 | EA | USED | | 6 | 190.95 | 0 | | | |
| NOV - Amelia | NOV | 7704862-01 | | Rack No. C152. | 2 3/8" 4.70# 13CR8S JFE SEAMLESS TUBING, BT5-8 THREAD | FW184036 | EB 160 A16 | EA | NEW | | 5 | 158.5 | 0 | | | |
| NOV - Amelia | NOV | 7703746-03 | | Rack No. EM05. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS PUP JOINTS, API BRD LONG THREAD | FW191500 | SMI 105 A21 ST#1 OCSG 17938 | EA | NEW | | 1 | 22.98 | 0 | | | |
| NOV - Amelia | NOV | 7703746-03 | | Rack No. EM05. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS PUP JOINTS, API BRD LONG THREAD | FW191500 | SMI 105 A21 ST#1 OCSG 17938 | EA | NEW | | 1 | 22.97 | 0 | | | |
| NOV - Amelia | NOV | 7703746-02 | | Rack No. EM05. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, API BRD LONG THREAD | FW191500 | SMI 105 A21 ST#1 OCSG 17938 | EA | NEW | | 21 | 975.55 | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7703736-01 | | Rack No. E060. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW191500 | SMI 105 #A-21 ST#1 OCSG 17938 | EA | NEW | | 16 | 738.65 | 0 | | | |
| NOV - Amelia | NOV | 7703736-02 | | Rack No. E060. | 7" 26.00# HCP-110 V&M SEAMLESS CASING, API 8RD LONG THREAD | FW191500 | SMI 105 #A-21 ST#1 OCSG 17938 | EA | NEW | | 22 | 990.6 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H062. | 7 5/8" 29.70# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 46 | 2114.1007 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H002. | 7 5/8" 29.70# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 11 | 506.77 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H002. | 7 5/8" 29.70# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 5 | 230.7 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H002. | 7 5/8" 29.70# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 47 | 2165.43 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H002. | 7 5/8" 29.04# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 88 | 4051.36 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H002. | 7 5/8" 29.04# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 29 | 1337.9979 | 0 | | | |
| NOV - Amelia | NOV | 7703511-01 | | Rack No. H062. | 7 5/8" 29.04# P-110 EC VSTAR SEAMLESS CASING, SLIJII THREAD | FW181013 | SS 169 G-3 | EA | NEW | | 47 | 2179.1498 | 0 | | | |
| NOV - Amelia | NOV | 7699979-01 | | Rack No. 2-323. | 10 3/4" 45.50# L-80 TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 5 | 217.15 | 0 | | | |
| NOV - Amelia | NOV | 7699979-02 | | Rack No. 2-203. | 10 3/4" 45.50# L-80 TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7699979-01 | | Rack No. 2-323. | 10 3/4" 45.50# L-80 TAMSA SEAMLESS CASING, DUTCHMAN THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 1 | 43.7 | 0 | | | |
| NOV - Amelia | NOV | 7699979-03 | | Rack No. 2-203. | 10 3/4" 45.50# L-80 TAMSA SEAMLESS CASING, DUTCHMAN THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7699979-04 | | Rack No. 2-213. | 10 3/4" 45.50# L-80 TAMSA SEAMLESS CASING, DUTCHMAN THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | USED | | 2 | 88 | 0 | | | |
| NOV - Amelia | NOV | 7699448-01 | | Rack No. H021. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 70 | 2918.65 | 0 | | | |
| NOV - Amelia | NOV | 7699448-01 | | Rack No. 2-067. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 190 | 7924.9 | 0 | | | |
| NOV - Amelia | NOV | 7699445-01 | | Rack No. 2-201. | 10 3/4" 59.45# HCQ-125 VSTAR SEAMLESS CASING, SLIJII THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 180 | 8283.6 | 0 | | | |
| NOV - Amelia | NOV | 7699445-01 | | Rack No. 2-312. | 10 3/4" 59.45# HCQ-125 VSTAR SEAMLESS CASING, SLIJII THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 250 | 11505.0092 | 0 | | | |
| NOV - Amelia | NOV | 7699445-01 | | Rack No. K016. | 10 3/4" 59.45# HCQ-125 VSTAR SEAMLESS CASING, SLIJII THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 62 | 2855.29 | 0 | | | |
| NOV - Amelia | NOV | 7699439-01 | | Rack No. E006. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIJII THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 258 | 11223 | 0 | | | |
| NOV - Amelia | NOV | 7699439-01 | | Rack No. EO27. | 9 7/8" 64.10# Q-125 VALLOUREC SEAMLESS CASING, SLIJII THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 225 | 9787.5 | 0 | | | |
| NOV - Amelia | NOV | 7699431-01 | | Rack No. X004. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 26 | 1085.5 | 0 | | | |
| NOV - Amelia | NOV | 7699431-01 | | Rack No. E086. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 9 | 371.15 | 0 | | | |
| NOV - Amelia | NOV | 7699431-01 | | Rack No. E086. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 115 | 4801.25 | 0 | | | |
| NOV - Amelia | NOV | 7699424-01 | | Rack No. 2-310. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 170 | 7083.9 | 0 | | | |
| NOV - Amelia | NOV | 7699424-01 | | Rack No. K050. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, SLSF THREAD | FW181011 | G.C. 200 TA-9 (ORLOV) | EA | NEW | | 25 | 1042.2 | 0 | | | |
| NOV - Amelia | NOV | 7698957-01 | | Rack No. 2-323. | 16" 65.00# H-40 TMK ERW CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 1 | 34.4 | 0 | | | |
| NOV - Amelia | NOV | 7698957-01 | | Rack No. 2-323. | 16" 65.00# H-40 TMK ERW CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 1 | 35.8 | 0 | | | |
| NOV - Amelia | NOV | 7698957-02 | | Rack No. 2-323. | 16" 65.00# H-40 TENARIS SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 9 | 383.85 | 0 | | | |
| NOV - Amelia | NOV | 7698957-03 | | Rack No. 2-208. | 16" 65.00# H-40 USS SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | USED | | 1 | 22.2 | 0 | | | |
| NOV - Amelia | NOV | 7698957-02 | | Rack No. 2-323. | 16" 65.00# H-40 TENARIS SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 1 | 42.25 | 0 | | | |
| NOV - Amelia | NOV | 7698957-04 | | Rack No. 2-203. | 16" 65.00# H-40 TENARIS SEAMLESS CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7698957-01 | | Rack No. 2-323. | 16" 65.00# H-40 TMK ERW CASING, BUTTRESS THREAD | FW181013 | SHIP SHOAL 169 G-3 | EA | NEW | | 1 | 35 | 0 | | | |
| NOV - Amelia | NOV | 7695156-04 | | Rack No. 2-323. | 18 5/8" 87.50# J-55 MANNESMANN SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A21 ST#1 | EA | NEW | | 1 | 40.8 | 0 | | | |
| NOV - Amelia | NOV | 7695156-06 | | Rack No. 2-323. | 18 5/8" 87.50# J-55 MANNESMANN SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW191000 | SM 105 A21 ST#1 | EA | NEW | | 1 | 23.5 | 0 | | | |
| NOV - Amelia | NOV | 7695156-02 | | Rack No. 2-323. | 18 5/8" 87.50# J-55 NSSMC SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A21 ST#1 | EA | NEW | | 1 | 43.6 | 0 | | | |
| NOV - Amelia | NOV | 7695156-03 | | Rack No. 2-323. | 18 5/8" 87.50# J-55 MANNESMANN SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A21 ST#1 | EA | NEW | | 1 | 45.8 | 0 | | | |
| NOV - Amelia | NOV | 7695156-05 | | Rack No. 2-323. | 18 5/8" 87.50# J-55 MANNESMANN SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A21 ST#1 | EA | NEW | | 1 | 44.35 | 0 | | | |
| NOV - Amelia | NOV | 7694544-01 | | Rack No. EO07. | 13 3/8" 68.00# HCL80 ARCELOR MITTAL SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A S1 | EA | NEW | | 3 | 122.55 | 0 | | | |
| NOV - Amelia | NOV | 7694544-01 | | Rack No. EO07. | 13 3/8" 68.00# HCL80 ARCELOR MITTAL SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A S1 | EA | NEW | | 3 | 120.65 | 0 | | | |
| NOV - Amelia | NOV | 7694544-03 | | Rack No. EO07. | 13 3/8" 68.00# HCL80 ARCELOR MITTAL SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A S1 | EA | NEW | | 1 | 42.65 | 0 | | | |
| NOV - Amelia | NOV | 7694544-02 | | Rack No. EO07. | 13 3/8" 68.00# HCL80 ARCELOR MITTAL SEAMLESS CASING, BUTTRESS THREAD | FW191000 | SM 105 A S1 | EA | NEW | | 1 | 42.75 | 0 | | | |
| NOV - Amelia | NOV | 7694041-02 | | Rack No. HUBCIT. | OTHER, THREAD | FW185004 | MP 296 B15 | EA | USED | | 1 | 18.05 | 0 | | | |
| NOV - Amelia | NOV | 7694041-02 | | Rack No. HUBCIT. | OTHER, THREAD | FW185004 | MP 296 B15 | EA | USED | | 1 | 22.25 | 0 | | | |
| NOV - Amelia | NOV | 7690497-02 | | Rack No. E069. | 2 7/8" 6.50# 13CR95 JFE SEAMLESS TUBING, BTS-8 THREAD | FW184054 | ENTERPRISE 264 SM 280 H | EA | USED | | 5 | 157.5 | 0 | | | |
| NOV - Amelia | NOV | 7677657-01 | | Rack No. H052. | 11 7/8" 71.80# HCQ-125 U S STEEL SEAMLESS CASING, TSH S13 THREAD | FW181011 | GREEN CANYON 200 TA-9 OCSG 12209 | EA | NEW | | 26 | 1124.573 | 0 | | | |
| NOV - Amelia | NOV | 7677657-03 | | Rack No. I3-140. | 11 7/8" 70.26# Q125 XHP U S STEEL SEAMLESS CASING, TSH S13 THREAD | FW181011 | GREEN CANYON 200 TA-9 OCSG 12209 | EA | NEW | | 85 | 3633.5029 | 0 | | | |
| NOV - Amelia | NOV | 7677657-02 | | Rack No. B057. | 11 7/8" 71.80# HCQ-125 V&M SEAMLESS CASING, TSH S13 THREAD | FW181011 | GREEN CANYON 200 TA-9 OCSG 12209 | EA | NEW | | 2 | 91.45 | 0 | | | |
| NOV - Amelia | NOV | 7669939-03 | | Rack No. I2-ACC. | 18 5/8" 87.50# J-55 MANNESMANN SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW191000 | SOUTH MARSH ISLAND 105 #A-21 ST OCSG 17938 | EA | NEW | | 1 | 23.6 | 0 | | | |
| NOV - Amelia | NOV | 7669904-02 | | Rack No. E060. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW191500 | SOUTH MARSH ISLAND 105 #A-21 ST OCSG 17938 | EA | NEW | | 1 | 47.4 | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7669904-01 | | Rack No. E060. | 7" 26.00# P-110 IC V&M SEAMLESS CASING, API BRD LONG THREAD | FW191500 | SOUTH MARSH ISLAND 105 #A-21 ST OCSG 17938 | EA | NEW | | 2 | 89.7 | 0 | | | |
| NOV - Amelia | NOV | 7665514-02 | | Rack No. E069. | 2 7/8" 6.50# 13CR85 JFE SEAMLESS TUBING, BTS-8 THREAD | FW182003 | SMI-127 B-17 | EA | USED | | 4 | 125.4 | 0 | | | |
| NOV - Amelia | NOV | 7664873-02 | | Rack No. E069. | 2 7/8" 6.50# 13CR95 JFE SEAMLESS TUBING, BTS-8 THREAD | FW181009 | ST 67 #6 | EA | USED | | 3 | 95.5 | 0 | | | |
| NOV - Amelia | NOV | 7659991-01 | | Rack No. C247. | 5 1/2" 20.00# P-110 IC SEAMLESS CASING, TSH 625 THREAD | FW181008 | SM 127 B17 | EA | USED | | 11 | 511.35 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| NOV - Amelia | NOV | 7659986-01 | | Rack No. B020. | 5" 18.00# P-110 CY TENARIS-TAMSA SEAMLESS CASING, TSH WEDGE 625 THREAD | FW181009 | ST 67 #6 | EA | USED | | 20 | 918.55 | 0 | | | |
| NOV - Amelia | NOV | 7658785-01 | | Rack No. B501. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | NEW | | 1 | 43.45 | 0 | | | |
| NOV - Amelia | NOV | 7658785-05 | | Rack No. C247. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | USED | | 2 | 88 | 0 | | | |
| NOV - Amelia | NOV | 7658785-03 | | Rack No. C247. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | USED | | 1 | 26.2 | 0 | | | |
| NOV - Amelia | NOV | 7658785-02 | | Rack No. C247. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | USED | | 1 | 39.8 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| NOV - Amelia | NOV | 7658785-04 | | Rack No. 2-336. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS PUP JOINTS, TSH S13 THREAD | FW181502 | SM 127 B17 | EA | NEW | | 1 | 10.3 | 0 | | | |
| NOV - Amelia | NOV | 7658785-01 | | Rack No. C247. | 7 5/8" 29.70# P-110 IC TENARIS-TAMSA SEAMLESS CASING, TSH 513 THREAD | FW181502 | SM 127 B17 | EA | NEW | | 48 | 2089.05 | 0 | | | |
| NOV - Amelia | NOV | 7653460-03 | | Rack No. H021. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181009 | ST 67 #6 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7653460-01 | | Rack No. H021. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181009 | ST 67 #6 | EA | NEW | | 3 | 128.75 | 0 | | | |
| NOV - Amelia | NOV | 7653460-02 | | Rack No. H021. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181009 | ST 67 #6 | EA | UNKNOWN | | 2 | 88 | 0 | | | |
| NOV - Amelia | NOV | 7653460-01 | | Rack No. B501. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181009 | ST 67 #6 | EA | NEW | | 1 | 42.45 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| NOV - Amelia | NOV | 7652285-01 | | Rack No. B501. | 10 3/4" 45.50# P-110 IC TENARIS-TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181002 | SM 127 B17 ENSCO 87 | EA | NEW | | 3 | 118.2 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| NOV - Amelia | NOV | 7652285-03 | | Rack No. EQ19. | 10 3/4" 45.50# P-110 IC TENARIS-TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181002 | SM 127 B17 ENSCO 87 | EA | USED | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7652285-01 | | Rack No. EO-O7. | 10 3/4" 45.50# P-110 IC TENARIS-TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW181002 | SM 127 B17 ENSCO 87 | EA | NEW | | 11 | 441.05 | 0 | | | |
| NOV - Amelia | NOV | 7652285-04 | | Rack No. 2-336. | 10 3/4" 45.50# P-110 IC TENARIS-TAMSA SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW181002 | SM 127 B17 ENSCO 87 | EA | USED | | 1 | 20 | 0 | | | |
| NOV - Amelia | NOV | 7652285-02 | | Rack No. 2-336. | 10 3/4" 45.50# P-110 IC TENARIS-TAMSA SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW181002 | SM 127 B17 ENSCO 87 | EA | NEW | | 1 | 19.6 | 0 | | | |
| NOV - Amelia | NOV | 7650597-02 | | Rack No. 2-336. | 16" 65.00# H-40 TMK IPSCO ERW PUP JOINTS, BUTTRESS THREAD | FW181002 | SM 127 B17 | EA | USED | | 1 | 22.3 | 0 | | | |
| NOV - Amelia | NOV | 7650597-03 | | Rack No. B501. | 16" 65.00# H-40 TMK IPSCO ERW CASING, BUTTRESS THREAD | FW181002 | SM 127 B17 | EA | USED | | 1 | 33.2 | 0 | | | |
| NOV - Amelia | NOV | 7650597-01 | | Rack No. B501. | 16" 65.00# H-40 TMK IPSCO ERW CASING, BUTTRESS THREAD | FW181002 | SM 127 B17 | EA | NEW | | 1 | 34.75 | 0 | | | |
| NOV - Amelia | NOV | 7644614-02 | | Rack No. C152. | 2 7/8" 6.50# 13CR85 JFE SEAMLESS TUBING, BTS-8 THREAD | FW184011 | SOUTH MARSH ISLAND 149 C4 | EA | USED | | 6 | 190.65 | 0 | | | |
| NOV - Amelia | NOV | 7639389-03 | | Rack No. C218. | 2 7/8" 6.50# 13CR95 JFE SEAMLESS TUBING, BTS-8 THREAD | FW184021 | WO 70 FF | EA | USED | | 5 | 158.6 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| NOV - Amelia | NOV | 7634429-02 | | Rack No. B020. | 7" 32.00# P-110 HC TAMSA SEAMLESS CASING, TSH S23 THREAD | FW 181503 | SOUTH TIMBALIER 67 #6 ST3 | EA | NEW | | 13 | 604.9 | 0 | | | |
| NOV - Amelia | NOV | 7634429-01 | | Rack No. B020. | 7" 32.00# P-110 HC SIDERCA SEAMLESS CASING, TSH S23 THREAD | FW 181503 | SOUTH TIMBALIER 67 #6 ST3 | EA | NEW | | 11 | 501.3 | 0 | | | |
| NOV - Amelia | NOV | 7633847-02 | | Rack No. E069. | 2 7/8" 6.50# JFE-13CR-95 JFE SEAMLESS TUBING, BTS-8 THREAD | FW184024 | MAIN PASS 153B | EA | USED | | 3 | 95.05 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| NOV - Amelia | NOV | 7629202-01 | | Rack No. C233. | 7 5/8" 29.70# HCP-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181502 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 2 | 87.85 | 0 | | | |
| NOV - Amelia | NOV | 7629202-02 | | Rack No. C233. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181502 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 4 | 186.4 | 0 | | | |
| NOV - Amelia | NOV | 7629202-01 | | Rack No. C233. | 7 5/8" 29.70# HCP-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181502 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 1 | 47.75 | 0 | | | |
| NOV - Amelia | NOV | 7629202-01 | | Rack No. C233. | 7 5/8" 29.70# HCP-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181502 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 2 | 95.05 | 0 | | | |
| NOV - Amelia | NOV | 7629202-02 | | Rack No. C233. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181502 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 1 | 46.2 | 0 | | | |
| NOV - Amelia | NOV | 7625047-11 | | Rack No. H020. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, TSH S23 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 6 | 277.5 | 0 | | | |
| NOV - Amelia | NOV | 7625047-09 | | Rack No. H052. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 10 | 429.5476 | 0 | | | |
| NOV - Amelia | NOV | 7625047-09 | | Rack No. H052. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 1 | 43 | 0 | | | |
| NOV - Amelia | NOV | 7625047-09 | | Rack No. H052. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 19 | 811.2 | 0 | | | |
| NOV - Amelia | NOV | 7625047-09 | | Rack No. BN01. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 2 | 85.4 | 0 | | | |
| NOV - Amelia | NOV | 7625047-09 | | Rack No. B021. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 1 | 42.8 | 0 | | | |
| NOV - Amelia | NOV | 7625047-11 | | Rack No. H020. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, TSH S23 THREAD | FW181503 | ST 67 #6 ST3 | EA | NEW | | 2 | 93.5 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| NOV - Amelia | NOV | 7625043-05 | | Rack No. EQ09. | 16" 65.00# H-40 TENARIS ERW CASING, BUTTRESS THREAD | FW 181002 | SOUTH MARSH ISLAND 127 #B-17 ST1 | EA | NEW | | 5 | 212.9 | 0 | | | |
| NOV - Amelia | NOV | 7589458-01 | | Rack No. MIT06. | 10 1/8" 79.22# JFE-125T JFE SEAMLESS CASING, SLIII THREAD | 201560 | KATMAI 2 | EA | NEW | | 84 | 3799.25 | 0 | | | |
| NOV - Amelia | NOV | 7589458-02 | | Rack No. MIT06. | 10 1/8" 79.22# JFE-125T JFE SEAMLESS CASING, SLIII THREAD | 201560 | KATMAI 2 | EA | NEW | | 2 | 91.2 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| NOV - Amelia | NOV | 7589458-03 | | Rack No. SH04. | 11 7/8" 71.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | 201560 | KATMAI 2 | EA | NEW | | 5 | 223.75 | 0 | | | |
| NOV - Amelia | NOV | 7589458-03 | | Rack No. SH04. | 11 7/8" 71.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | 201560 | KATMAI 2 | EA | NEW | | 42 | 1918.95 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| NOV - Amelia | NOV | 7589458-03 | | Rack No. SH04. | 11 7/8" 71.80# TN-125-HC TENARIS SEAMLESS CASING, TSH S23 DPLS THREAD | 201560 | KATMAI 2 | EA | NEW | | 1 | 48.8 | 0 | | | |
| NOV - Amelia | NOV | 7576903-01 | | Rack No. C152. | 2 7/8" 6.50# L-80 TSC SEAMLESS TUBING, BTS-8PR THREAD | FW177024 | EB 160 A-23 | EA | NEW | | 1 | 31.25 | 0 | | | |
| NOV - Amelia | NOV | 7555431-01 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TAMSA SEAMLESS CASING, API BRD LONG THREAD | | EW 873 A-20 ST LOBSTER RIG | EA | NEW | | 5 | 230.7 | 0 | | | |
| NOV - Amelia | NOV | 7526643-01 | | Rack No. A037. | 2 7/8" 6.50# 13CR85 JFE SEAMLESS TUBING, BTS-8 THREAD | FW162000 | VR 78 A2 | EA | NEW | | 26 | 824.8 | 0 | | | |
| NOV - Amelia | NOV | 7526643-02 | | Rack No. C062. | 2 7/8" 6.50# 13CR85 JFE SEAMLESS TUBING, BTS-8 THREAD | FW162000 | VR 78 A2 | EA | USED | | 5 | 158.6 | 0 | | | |
| NOV - Amelia | NOV | 7520329-01 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M STAR SEAMLESS CASING, VAM TOP HT THREAD | FW161500 | VR 78 A2 | EA | NEW | | 6 | 276.1 | 0 | | | |
| NOV - Amelia | NOV | 7520329-01 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M STAR SEAMLESS CASING, VAM TOP HT THREAD | FW161500 | VR 78 A2 | EA | NEW | | 1 | 46.1 | 0 | | | |
| | | | | | | | | | | | | | | | | |
| NOV - Amelia | NOV | 7506413-03 | | Rack No. MIT06. | 7 1/16" 40.40# HP2-13CR115 JFE SEAMLESS CASING, PLAIN END THREAD | | GUNFLINT COMPLETION 143751 | EA | NEW | | 12 | 528 | 0 | | | |
| NOV - Amelia | NOV | 7506413-04 | | Rack No. SH04. | 5 1/2" 29.70# HP213CR115 JFE SEAMLESS CASING, PLAIN END UPSET THREAD | | GUNFLINT COMPLETION 143751 | EA | NEW | | 6 | 264 | 0 | | | |
| NOV - Amelia | NOV | 7506413-02 | | Rack No. SH04. | 6.626" 57.39# HP2-13CR115 JFE SEAMLESS CPLG STOCK, PLAIN END THREAD | | GUNFLINT COMPLETION 143751 | EA | NEW | | 1 | 5 | 0 | | | |
| NOV - Amelia | NOV | 7506413-01 | | Rack No. SH04. | 6.504" 1.0" VM-110 13CR5S GERMANY SEAMLESS CPLG STOCK, PLAIN END THREAD | | GUNFLINT COMPLETION 143751 | EA | NEW | | 8 | 144 | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7487102-01 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW155042 | MP 140 A SWD #1/WORKOVER BAYOU TECHE | EA | NEW | | 3 | 120.5 | 0 | | | |
| NOV - Amelia | NOV | 7487102-02 | | Rack No. C111. | 3 1/2" 9.30# L-80 1% CR TMK SEAMLESS TUBING, API 8RD EUE THREAD | FW155042 | MP 140 A SWD #1/WORKOVER BAYOU TECHE | EA | NEW | | 6 | 192.05 | 0 | | | |
| NOV - Amelia | NOV | 7487102-01 | | Rack No. C255. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW155042 | MP 140 A SWD #1/WORKOVER BAYOU TECHE | EA | NEW | | 4 | 163.45 | 0 | | | |
| NOV - Amelia | NOV | 7487099-01 | | Rack No. C111. | 3 1/2" 9.30# L-80 1% CR TMK SEAMLESS TUBING, API 8RD EUE THREAD | FW155043 | MP 140 A SWD #2 OCSG GPLD | EA | NEW | | 5 | 160.2 | 0 | | | |
| NOV - Amelia | NOV | 7484107-01 | | Rack No. CEPPUP. | OTHER,    THREAD | FW155042 | MP 140 #1 GBRS | EA | USED | | 1 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7469717-01 | | Rack No. C152. | 2 7/8" 6.50# 13CR85 JFE SEAMLESS TUBING, BTS-8 THREAD | GO164000 | W.D. 70 E #1 ST | EA | NEW | | 28 | 889.35 | 0 | | | |
| NOV - Amelia | NOV | 7464248-04 | | Rack No. C255. | 5 1/2" 23.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | EI 354 A #6 ST1 BP1 | EA | NEW | | 1 | 47.3 | 0 | | | |
| NOV - Amelia | NOV | 7464248-03 | | Rack No. C255. | 5 1/2" 20.00# HCP-110 V&M SEAMLESS PUP JOINTS, STL THREAD | FW164003 | EI 354 A #6 ST1 BP1 | EA | NEW | | 1 | 19.65 | 0 | | | |
| NOV - Amelia | NOV | 7460139-01 | | Rack No. 2-109. | 11 7/8" 70.26# VM-125-HC VALLOUREC SEAMLESS CASING, PLAIN END THREAD | | INVENTORY | EA | NEW | | 121 | 5396.2 | 0 | | | |
| NOV - Amelia | NOV | 7458724-02 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 1 | 35.65 | 0 | | | |
| NOV - Amelia | NOV | 7458724-01 | | Rack No. E033. | 5 1/2" 20.00# HCP-110 U S STEEL SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 3 | 134.25 | 0 | | | |
| NOV - Amelia | NOV | 7458724-02 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 2 | 76.4 | 0 | | | |
| NOV - Amelia | NOV | 7458724-03 | | Rack No. E033. | 5 1/2" 20.00# P-110 V&M STAR SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 1 | 46.1 | 0 | | | |
| NOV - Amelia | NOV | 7458724-01 | | Rack No. E033. | 5 1/2" 20.00# HCP-110 U S STEEL SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 8 | 361.8 | 0 | | | |
| NOV - Amelia | NOV | 7458724-05 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 4 | 171.85 | 0 | | | |
| NOV - Amelia | NOV | 7458724-05 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 9 | 408.8 | 0 | | | |
| NOV - Amelia | NOV | 7458724-02 | | Rack No. E033. | 5 1/2" 20.00# P-110 EC V&M SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 11 | 429.55 | 0 | | | |
| NOV - Amelia | NOV | 7458724-01 | | Rack No. E033. | 5 1/2" 20.00# HCP-110 U S STEEL SEAMLESS CASING, STL THREAD | FW164003 | E.I. 354 A6 ST#1 OCSG 10752 | EA | NEW | | 1 | 45.6 | 0 | | | |
| NOV - Amelia | NOV | 7458405-01 | | Rack No. I3-166. | 10 3/4" 72.40# Q-125 U S STEEL SEAMLESS CASING, PLAIN END THREAD | | | EA | NEW | | 153 | 6048.1 | 0 | | | |
| NOV - Amelia | NOV | 7444262-03 | | Rack No. C023. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, DUTCHMAN/CUT-OFF PIN THREAD | FW154025 | E.I. 316 A #11 | EA | USED | | 1 | 27.4 | 0 | | | |
| NOV - Amelia | NOV | 7444262-01 | | Rack No. E079. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW154025 | E.I. 316 A #11 | EA | NEW | | 1 | 46.95 | 0 | | | |
| NOV - Amelia | NOV | 7444262-04 | | Rack No. C024. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING,    THREAD | FW154025 | E.I. 316 A #11 | EA | USED | | 1 | 19.1 | 0 | | | |
| NOV - Amelia | NOV | 7439076-01 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW154025 | EUGENE ISL. 316 A11 OCSG 5040 | EA | NEW | | 2 | 92.3 | 0 | | | |
| NOV - Amelia | NOV | 7439076-01 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW154025 | EUGENE ISL. 316 A11 OCSG 5040 | EA | NEW | | 24 | 1121.1 | 0 | | | |
| NOV - Amelia | NOV | 7439076-01 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW154025 | EUGENE ISL. 316 A11 OCSG 5040 | EA | NEW | | 22 | 1020.65 | 0 | | | |
| NOV - Amelia | NOV | 7437245-01 | | Rack No. O006. | 7 5/8" 33.70# P-110 RY VALLOUREC SEAMLESS CASING, TSH S23 THREAD | FW154025 | E.I. 316 #A-11 OCSG-5040 | EA | UNKNOWN | | 1 | 34.1 | 0 | | | |
| NOV - Amelia | NOV | 7437245-02 | | Rack No. C051. | OTHER,    THREAD | FW154025 | E.I. 316 #A-11 OCSG-5040 | EA | USED | | 1 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7434675-01 | | Rack No. I3-142. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISL. 316 A11 OCSG 5040 | EA | NEW | | 1 | 45.25 | 0 | | | |
| NOV - Amelia | NOV | 7434675-01 | | Rack No. E028. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISL. 316 A11 OCSG 5040 | EA | NEW | | 79 | 3639.75 | 0 | | | |
| NOV - Amelia | NOV | 7430303-03 | | Rack No. E060. | 7 5/8" 33.70# HCP-110  SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 9 | 417.05 | 0 | | | |
| NOV - Amelia | NOV | 7430303-03 | | Rack No. E060. | 7 5/8" 33.70# HCP-110  SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 9 | 416.3 | 0 | | | |
| NOV - Amelia | NOV | 7430303-01 | | Rack No. E060. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 16 | 657.25 | 0 | | | |
| NOV - Amelia | NOV | 7430303-01 | | Rack No. E060. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 25 | 1104.95 | 0 | | | |
| NOV - Amelia | NOV | 7430303-02 | | Rack No. E060. | 7 5/8" 33.70# HCP-110 TENARIS-TAMSA SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 12 | 552.5 | 0 | | | |
| NOV - Amelia | NOV | 7430303-04 | | Rack No. E060. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | FW154025 | EUGENE ISLAND 316 A-11 OCSG 5040 | EA | NEW | | 8 | 353.25 | 0 | | | |
| NOV - Amelia | NOV | 7426924-08 | | Rack No. E017. | 4 1/2" 17.00# VM-110 13CRSS  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 1 | 10 | 0 | | | |
| NOV - Amelia | NOV | 7426924-03 | | Rack No. WKRR02. | 7 1/16" X 5 1/2" 40.40# 29.70# (70.10#) HP213CR115(0) HP213CR115(I) SEAMLESS VIT, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 8 | 291.12 | 0 | | | |
| NOV - Amelia | NOV | 7426924-09 | | Rack No. SH05. | 5 1/2" 26.00# VM-110 13CRSS VALLOUREC  COUPLINGS,  THREAD | 203302 | MC 948 #2 | EA | NEW | | 2 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7426924-11 | | Rack No. WKRR02. | 5 1/2" 26.00# VM-110 13CRSS VALLOUREC SEAMLESS CASING, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | USED | | 4 | 181.5 | 0 | | | |
| NOV - Amelia | NOV | 7426924-07 | | Rack No. SH05. | 5 1/2" 26.00# VM-110 13CRSS  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 3 | 12 | 0 | | | |
| NOV - Amelia | NOV | 7426924-07 | | Rack No. SH05. | 5 1/2" 26.00# VM-110 13CRSS  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 4 | 8 | 0 | | | |
| NOV - Amelia | NOV | 7426924-07 | | Rack No. SH02. | 5 1/2" 26.00# VM-110 13CRSS  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 14 | 56 | 0 | | | |
| NOV - Amelia | NOV | 7426924-10 | | Rack No. SH04. | 5 1/2" 26.00# 13CRS11D  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 1 | 20 | 0 | | | |
| NOV - Amelia | NOV | 7426924-02 | | Rack No. WKRR02. | 5 1/2" 26.00# VM-110 13CRSS VALLOUREC SEAMLESS CASING, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 40 | 1806.3 | 0 | | | |
| NOV - Amelia | NOV | 7426924-09 | | Rack No. SH05. | 5 1/2" 26.00# VM-110 13CRSS VALLOUREC  COUPLINGS,  THREAD | 203302 | MC 948 #2 | EA | NEW | | 30 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7426924-08 | | Rack No. E017. | 4 1/2" 17.00# VM-110 13CRSS  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 1 | 4 | 0 | | | |
| NOV - Amelia | NOV | 7426924-04 | | Rack No. SH04. | 5 1/2" 29.70# 13CR115  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 1 | 15 | 0 | | | |
| NOV - Amelia | NOV | 7426924-04 | | Rack No. SH04. | 5 1/2" 29.70# 13CR115  SEAMLESS PUP JOINTS, VAM TOP HC THREAD | 203302 | MC 948 #2 | EA | NEW | | 1 | 20 | 0 | | | |
| NOV - Amelia | NOV | 7415765-01 | | Rack No. A049. | 2 7/8" 7.90# 13CR110 JFE SEAMLESS TUBING, BTS-6 THREAD | FW155061 | EI 136 JA-4 BP1 | EA | NEW | | 10 | 315.05 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7410843-04 | | Rack No. H005. | 7 5/8" 38.08# HCQ-125 EVRAZ SEAMLESS CASING, SLIJII THREAD | FW151506 | E.I. 136 JA #2 | EA | USED | | 1 | 43.55 | 0 | | | |
| NOV - Amelia | NOV | 7410843-02 | | Rack No. H005. | 7 5/8" 38.08# Q-125 U S STEEL SEAMLESS CASING, SLF THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 1 | 43.6 | 0 | | | |
| NOV - Amelia | NOV | 7410843-05 | | Rack No. H005. | 7 5/8" 38.08# Q-125 U S STEEL SEAMLESS CASING, SLF THREAD | FW151506 | E.I. 136 JA #2 | EA | USED | | 2 | 88.5 | 0 | | | |
| NOV - Amelia | NOV | 7410843-01 | | Rack No. H005. | 7 5/8" 38.08# HCQ-125 EVRAZ SEAMLESS CASING, SLIJII THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 2 | 81.65 | 0 | | | |
| NOV - Amelia | NOV | 7410843-02 | | Rack No. H005. | 7 5/8" 38.08# Q-125 U S STEEL SEAMLESS CASING, SLF THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 10 | 438.55 | 0 | | | |
| NOV - Amelia | NOV | 7410843-01 | | Rack No. H005. | 7 5/8" 38.08# HCQ-125 EVRAZ SEAMLESS CASING, SLIJII THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 1 | 43.7 | 0 | | | |
| NOV - Amelia | NOV | 7410843-01 | | Rack No. H005. | 7 5/8" 38.08# HCQ-125 EVRAZ SEAMLESS CASING, CUT OFF PIN THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 13 | 559.25 | 0 | | | |
| NOV - Amelia | NOV | 7410843-03 | | Rack No. H005. | OTHER,  THREAD | FW151506 | E.I. 136 JA #2 | EA | USED | | 1 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7410843-01 | | Rack No. H005. | 7 5/8" 38.08# HCQ-125 EVRAZ SEAMLESS CASING, SLIJII THREAD | FW151506 | E.I. 136 JA #2 | EA | NEW | | 2 | 84.65 | 0 | | | |
| NOV - Amelia | NOV | 7409904-01 | | Rack No. C134. | 3 1/2" 12.95# HP1-13CR110 JFE SEAMLESS TUBING, BTS-6 THREAD | FW152006 | E.I 136 JA #2 | EA | NEW | | 44 | 1394.95 | 0 | | | |
| | | | | | | | EI 136 #JA-2 ST1 | | | | | | | | | |
| NOV - Amelia | NOV | 7397639-01 | | Rack No. 2-105. | 7" 42.59# Q-125-1 V&M STAR SEAMLESS CASING, SLIJII THREAD | FW151506 | OCSG 3152 | EA | NEW | | 11 | 484.85 | 0 | | | |
| NOV - Amelia | NOV | 7395742-03 | | Rack No. H005. | 7 5/8" 38.08# Q-125 U S STEEL SEAMLESS CASING, SLF THREAD | FW151506 | EI 136 JA #2 | EA | USED | | 1 | 39 | 0 | | | |
| NOV - Amelia | NOV | 7395742-04 | | Rack No. H005. | 7 5/8" 38.08# Q-125 U S STEEL SEAMLESS CASING, SLF THREAD | FW151506 | EI 136 JA #2 | EA | USED | | 1 | 28 | 0 | | | |
| NOV - Amelia | NOV | 7391991-01 | | Rack No. C233. | 7" 37.29# Q-125 V&M SEAMLESS CASING, STL THREAD | FW151506 | E.I.136 JA #2 | EA | NEW | | 6 | 252.55 | 0 | | | |
| NOV - Amelia | NOV | 7391991-03 | | Rack No. MOC1A. | 9 5/8" 53.50# P-110 EC V&M SEAMLESS CASING, CUT OFF PIN THREAD | FW151506 | E.I.136 JA #2 | EA | USED | | 1 | 46.05 | 0 | | | |
| NOV - Amelia | NOV | 7391991-02 | | Rack No. EP18. | 9 5/8" 53.50# P-110 EC V&M SEAMLESS CASING, CUT OFF PIN THREAD | FW151506 | E.I.136 JA #2 | EA | USED | | 1 | 49.6 | 0 | | | |
| NOV - Amelia | NOV | 7391991-01 | | Rack No. C233. | 7" 37.29# Q-125 V&M SEAMLESS CASING, STL THREAD | FW151506 | E.I.136 JA #2 | EA | NEW | | 44 | 1923.75 | 0 | | | |
| | | | | | 5 1/2" 26.00# VM-110 13CR55 VALLOUREC SEAMLESS CASING, VAM TOP HC | | GUNFLINT 948-4 | | | | | | | | | |
| NOV - Amelia | NOV | 7390965-01 | | Rack No. B020. | THREAD | 143752 | GUNFLINT 948-4 | EA | UNKNOWN | | 2 | 90.45 | 0 | | | |
| NOV - Amelia | NOV | 7384927-03 | | Rack No. E060. | OTHER,  THREAD | FW151006 | EI 136 JA #2 | EA | USED | | 1 | 0 | 0 | | | |
| NOV - Amelia | NOV | 7384927-01 | | Rack No. E079. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, SLX THREAD | FW151006 | EI 136 JA #2 | EA | NEW | | 1 | 45.65 | 0 | | | |
| NOV - Amelia | NOV | 7384927-01 | | Rack No. E079. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, SLX THREAD | FW151006 | EI 136 JA #2 | EA | NEW | | 1 | 44.75 | 0 | | | |
| NOV - Amelia | NOV | 7384927-01 | | Rack No. E060. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, SLX THREAD | FW151006 | EI 136 JA #2 | EA | NEW | | 6 | 262.75 | 0 | | | |
| NOV - Amelia | NOV | 7384927-02 | | Rack No. E077. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS PUP JOINTS, SLX THREAD | FW151006 | EI 136 JA #2 | EA | NEW | | 1 | 22.15 | 0 | | | |
| NOV - Amelia | NOV | 7384927-01 | | Rack No. E060. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, SLX THREAD | FW151006 | EI 136 JA #2 | EA | NEW | | 2 | 87.25 | 0 | | | |
| | | | | | 5 1/2" 26.00# VM-110 13CR55 VALLOUREC SEAMLESS CASING, VAM TOP HC | | GUNFLINT MC 948 | | | | | | | | | |
| NOV - Amelia | NOV | 7384484-01 | | Rack No. WKRK02. | THREAD | 143752 | #4 OCSG 28030 | EA | NEW | | 46 | 1984.82 | 0 | | | |
| NOV - Amelia | NOV | 7375553-01 | | Rack No. E045. | 13 3/8" 68.00# NT80LHE NSSMC ERW CASING, BUTTRESS THREAD | FW151006 | EI 136 JA # 2 | EA | NEW | | 2 | 87.3 | 0 | | | |
| NOV - Amelia | NOV | 7375553-03 | | Rack No. H004. | 13 3/8" 68.00# NT-80HE TENARIS SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW151006 | EI 136 JA # 2 | EA | NEW | | 2 | 47.6 | 0 | | | |
| NOV - Amelia | NOV | 7375553-03 | | Rack No. H004. | 13 3/8" 68.00# NT-80HE TENARIS SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW151006 | EI 136 JA # 2 | EA | NEW | | 1 | 20.25 | 0 | | | |
| NOV - Amelia | NOV | 7375553-03 | | Rack No. H004. | 13 3/8" 68.00# NT-80HE TENARIS SEAMLESS PUP JOINTS, BUTTRESS THREAD | FW151006 | EI 136 JA # 2 | EA | NEW | | 1 | 20.3 | 0 | | | |
| NOV - Amelia | NOV | 7375553-02 | | Rack No. EP18. | 13 3/8" 68.00# NT80LHE TENARIS SEAMLESS CASING, DUTCHMAN/CUT-OFF PIN THREAD | FW151006 | EI 136 JA # 2 | EA | USED | | 1 | 44.5 | 0 | | | |
| NOV - Amelia | NOV | 7375553-04 | | Rack No. EP17. | 13 3/8" 68.00# NT80LHE TENARIS SEAMLESS CASING, CUT OFF PIN THREAD | FW151006 | EI 136 JA # 2 | EA | USED | | 1 | 18 | 0 | | | |
| NOV - Amelia | NOV | 7375553-02 | | Rack No. EQ17. | 13 3/8" 68.00# NT80LHE NSSMC ERW CASING, DUTCHMAN/CUT-OFF PIN THREAD | FW151006 | EI 136 JA # 2 | EA | USED | | 1 | 44.5 | 0 | | | |
| NOV - Amelia | NOV | 7373478-04 | | Rack No. EP18. | 18 5/8" 87.50# J-55 NIPPON SEAMLESS CASING, BUTTRESS THREAD | FW151006 | EI 136 JA #2 | EA | USED | | 1 | 24 | 0 | | | |
| NOV - Amelia | NOV | 7373478-03 | | Rack No. EP17. | 18 5/8" 87.50# J-55 NIPPON SEAMLESS CASING, DUTCHMAN THREAD | FW151006 | EI 136 JA #2 | EA | USED | | 2 | 75 | 0 | | | |
| | | | | | | | INVENTORY CODE: | | | | | | | | | |
| NOV - Amelia | NOV | 7363520-01 | | Rack No. C037. | 5 1/2" 17# P-110 TENARIS SEAMLESS CASING, TSH 511 THREAD | | 8000.156 | EA | NEW | | 97 | 4578.35 | 0 | | | |
| | | | | | | | INVENTORY | | | | | | | | | |
| NOV - Amelia | NOV | 7361437-03 | | Rack No. I3-142. | 7 5/8" 33.70# HCP-110 U S STEEL SEAMLESS CASING, API 8RD LONG THREAD | | 8000.156 | EA | NEW | | 5 | 231.35 | 0 | | | |
| | | | | | | | INVENTORY | | | | | | | | | |
| NOV - Amelia | NOV | 7361437-02 | | Rack No. I3-142. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | | 8000.156 | EA | NEW | | 9 | 414.65 | 0 | | | |
| | | | | | | | INVENTORY | | | | | | | | | |
| NOV - Amelia | NOV | 7361437-01 | | Rack No. I3-142. | 7 5/8" 33.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | | 8000.156 | EA | NEW | | 109 | 5033.9544 | 0 | | | |
| | | | | | | | E.I. 136 #JA-2 ST1 | | | | | | | | | |
| NOV - Amelia | NOV | 7351051-02 | | Rack No. C140. | OTHER,  THREAD | FW151506 | OCSG 3152 | EA | USED | | 2 | 0 | 0 | | | |
| | | | | | | | E.I. 136 #JA-2 ST1 | | | | | | | | | |
| NOV - Amelia | NOV | 7351051-01 | | Rack No. C161. | OTHER,  THREAD | FW151506 | OCSG 3152 | EA | USED | | 1 | 0 | 0 | | | |
| | | | | | | | E.I. 136 #JA-2 ST1 | | | | | | | | | |
| NOV - Amelia | NOV | 7351051-01 | | Rack No. C161. | OTHER,  THREAD | FW151506 | OCSG 3152 | EA | USED | | 1 | 0 | 0 | | | |
| | | | | | | | CHERRY ISLAND | | | | | | | | | |
| NOV - Amelia | NOV | 7350949-01 | | Rack No. MIT02. | 5 1/2" 29.70# HP2-13CR11S JFE SEAMLESS CASING, PLAIN END UPSET THREAD | | VESSEL | EA | NEW | | 12 | 430.747 | 0 | | | |
| NOV - Amelia | NOV | 7350628-01 | | Rack No. I3-142. | 7" 29.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 1 | 47 | 0 | | | |
| NOV - Amelia | NOV | 7350628-01 | | Rack No. I3-142. | 7" 29.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 1 | 42.6 | 0 | | | |
| NOV - Amelia | NOV | 7350628-01 | | Rack No. I3-142. | 7" 29.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 10 | 451.5 | 0 | | | |
| NOV - Amelia | NOV | 7350628-01 | | Rack No. I3-142. | 7" 29.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 4 | 170.905 | 0 | | | |
| NOV - Amelia | NOV | 7350628-01 | | Rack No. I3-142. | 7" 29.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E7 | EA | NEW | | 2 | 90.85 | 0 | | | |
| | | | | | | | MC 782 DANTZLER | | | | | | | | | |
| NOV - Amelia | NOV | 7347176-04 | | Rack No. B020. | 4 1/2" 15.50# HP1-13CR110 JFE SEAMLESS TUBING, BTS-6 THREAD | 142980 | #1 XT-SET | EA | USED | | 2 | 78.05 | 0 | | | |
| NOV - Amelia | NOV | 7341206-02 | | Rack No. EQ08. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, API 8RD LONG THREAD | FW141015 | SMI 48 E-7 | EA | NEW | | 1 | 46.7 | 0 | | | |
| | | | | | | | MAIN PASS 153 B | | | | | | | | | |
| NOV - Amelia | NOV | 7340778-02 | | Rack No. I2TP-07. | 7" 29.00# P-110 TENARIS SEAMLESS PUP JOINTS, API 8RD LONG THREAD | FW152001 | #10 ST3, ENSCO 87 | EA | NEW | | 1 | 21.25 | 0 | | | |
| | | | | | | | MAIN PASS 153 B | | | | | | | | | |
| NOV - Amelia | NOV | 7340778-04 | | Rack No. I2TP-07. | 7" 29.00# TENARIS SEAMLESS PUP JOINTS, API 8RD LONG THREAD | FW152001 | #10 ST3, ENSCO 87 | EA | NEW | | 1 | 20.75 | 0 | | | |
| | | | | | | | MAIN PASS 153 B | | | | | | | | | |
| NOV - Amelia | NOV | 7340778-01 | | Rack No. H053. | 7" 29.00# P-110 U S STEEL SEAMLESS CASING, API 8RD LONG THREAD | FW152001 | #10 ST3, ENSCO 87 | EA | NEW | | 7 | 314.2 | 0 | | | |
| | | | | | | | EUGENE ISLAND 136 | | | | | | | | | |
| | | | | | | | #JA-2 ST1  OCS-G | | | | | | | | | |
| NOV - Amelia | NOV | 7339262-01 | | Rack No. 2-105. | 7" 42.59# Q-125-1 V&M STAR SEAMLESS CASING, SLIJII THREAD | FW151506 | 3156 | EA | NEW | | 294 | 12960.35 | 0 | | | |
| | | | | | | | EUGENE ISLAND 136 | | | | | | | | | |
| | | | | | | | #JA-2 ST1  OCS-G | | | | | | | | | |
| NOV - Amelia | NOV | 7339262-02 | | Rack No. 2-105. | 7" 42.59# Q-125-1 V&M STAR SEAMLESS CASING, SLIJII THREAD | FW151506 | 3156 | EA | NEW | | 1 | 45.1 | 0 | | | |
| | | | | | | | EUGENE ISLAND 136 | | | | | | | | | |
| | | | | | | | #JA-2 ST1  OCS-G | | | | | | | | | |
| NOV - Amelia | NOV | 7339262-01 | | Rack No. 2-105. | 7" 42.59# Q-125-1 V&M STAR SEAMLESS CASING, SLIJII THREAD | FW151506 | 3156 | EA | NEW | | 56 | 2468.3045 | 0 | | | |
| | | | | | | | EUGENE ISLAND 136 | | | | | | | | | |
| | | | | | | | #JA-2 ST1  OCS-G | | | | | | | | | |
| NOV - Amelia | NOV | 7339262-01 | | Rack No. 2-105. | 7" 42.59# Q-125-1 V&M STAR SEAMLESS CASING, SLIJII THREAD | FW151506 | 3156 | EA | NEW | | 1 | 43.75 | 0 | | | |
| | | | | | | | EUGENE ISLAND 136 | | | | | | | | | |
| | | | | | | | #JA-2 ST1  OCS-G | | | | | | | | | |
| NOV - Amelia | NOV | 7339239-01 | | Rack No. EN04. | 7" 41.00# V-150 U S STEEL SEAMLESS CASING, STL THREAD | FW151506 | 3156 | EA | NEW | | 56 | 2620.9 | 0 | | | |
| | | | | | | | EUGENE ISLAND 136 | | | | | | | | | |
| | | | | | | | #JA-2 ST1  OSC-G | | | | | | | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | 3156 | EA | NEW | | 5 | 222.2 | 0 | | | |
| | | | | | | | EUGENE ISLAND 136 | | | | | | | | | |
| | | | | | | | #JA-2 ST1  OSC-G | | | | | | | | | |
| NOV - Amelia | NOV | 7339201-03 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | FW151006 | 3156 | EA | NEW | | 1 | 44.65 | 0 | | | |
| | | | | | | | EUGENE ISLAND 136 | | | | | | | | | |
| | | | | | | | #JA-2 ST1  OSC-G | | | | | | | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | 3156 | EA | NEW | | 6 | 272 | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7339201-05 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 V&M STAR SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 44.8 | 0 | | | |
| NOV - Amelia | NOV | 7339201-04 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 SIDERCA SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 41.75 | 0 | | | |
| NOV - Amelia | NOV | 7339201-05 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 V&M STAR SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 3 | 131.35 | 0 | | | |
| NOV - Amelia | NOV | 7339201-02 | | Rack No. EP19. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS PUP JOINTS, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 23 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 4 | 182.7 | 0 | | | |
| NOV - Amelia | NOV | 7339201-03 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 4 | 176.65 | 0 | | | |
| NOV - Amelia | NOV | 7339201-04 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 SIDERCA SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 2 | 92.45 | 0 | | | |
| NOV - Amelia | NOV | 7339201-04 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 SIDERCA SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 45.8 | 0 | | | |
| NOV - Amelia | NOV | 7339201-01 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 4 | 176.75 | 0 | | | |
| NOV - Amelia | NOV | 7339201-03 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 6 | 263.45 | 0 | | | |
| NOV - Amelia | NOV | 7339201-01 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 11 | 497.2 | 0 | | | |
| NOV - Amelia | NOV | 7339201-01 | | Rack No. EP25. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 5 | 227.8 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 28 | 1255.4 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 6 | 275.45 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 46 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 1 | 45.3 | 0 | | | |
| NOV - Amelia | NOV | 7339201-06 | | Rack No. EP25. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, SLX THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OSC-G 3156 | EA | NEW | | 3 | 135.95 | 0 | | | |
| NOV - Amelia | NOV | 7339176-02 | | Rack No. EQ08. | 9 5/8" 53.30# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW151006 | EUGENE ISLAND 136 #IA-2 ST1 OCS-G 3156 | EA | NEW | | 3 | 137.25 | 0 | | | |
| NOV - Amelia | NOV | 7337780-01 | | Rack No. MIT02. | 7 1/16" 40.40# HP2-13CR115 JFE SEAMLESS CASING, PLAIN END THREAD | | VESSEL: "GLORIOUS HOPE" | EA | NEW | | 1 | 35.95 | 0 | | | |
| NOV - Amelia | NOV | 7337780-01 | | Rack No. MIT02. | 7 1/16" 40.40# HP2-13CR115 JFE SEAMLESS CASING, PLAIN END THREAD | | VESSEL: "GLORIOUS HOPE" | EA | NEW | | 2 | 71.7674 | 0 | | | |
| NOV - Amelia | NOV | 7336043-01 | | Rack No. H062. | 9 5/8" 47.00# P-110 EC V&M SEAMLESS CASING, API 8RD LONG THREAD | FW151001 | MP 153 B-10 ST3 | EA | NEW | | 13 | 564.1 | 0 | | | |
| NOV - Amelia | NOV | 7334105-01 | | Rack No. H051. | 9 5/8" 53.50# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | SR141007 | GC 65 A-23 | EA | NEW | | 20 | 946.2 | 0 | | | |
| NOV - Amelia | NOV | 7332033-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141515 | SMI 48 E-7 OCSG 00786 | EA | NEW | | 14 | 654.74 | 0 | | | |
| NOV - Amelia | NOV | 7332033-02 | | Rack No. C255. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141515 | SMI 48 E-7 OCSG 00786 | EA | NEW | | 1 | 46.78 | 0 | | | |
| NOV - Amelia | NOV | 7332033-02 | | Rack No. C255. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141515 | SMI 48 E-7 OCSG 00786 | EA | NEW | | 4 | 184.15 | 0 | | | |
| NOV - Amelia | NOV | 7332033-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141515 | SMI 48 E-7 OCSG 00786 | EA | NEW | | 1 | 45.82 | 0 | | | |
| NOV - Amelia | NOV | 7332033-03 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141515 | SMI 48 E-7 OCSG 00786 | EA | NEW | | 4 | 181.48 | 0 | | | |
| NOV - Amelia | NOV | 7330358-03 | | Rack No. E045. | 11 3/4" 65.00# Q-125 HC LONE STAR ERW CASING, HYD S23 THREAD | SR141005 | GC 65 A-23 OCSG 5589 | EA | NEW | | 5 | 200.5 | 0 | | | |
| NOV - Amelia | NOV | 7330358-01 | | Rack No. BP-15. | 11 3/4" 65.00# Q-125 IC TENARIS SEAMLESS CASING, HYD S23 THREAD | SR141005 | GC 65 A-23 OCSG 5589 | EA | NEW | | 5 | 203.4 | 0 | | | |
| NOV - Amelia | NOV | 7330358-01 | | Rack No. E045. | 11 3/4" 65.00# Q-125 IC TENARIS SEAMLESS CASING, HYD S23 THREAD | SR141005 | GC 65 A-23 OCSG 5589 | EA | NEW | | 13 | 528.8472 | 0 | | | |
| NOV - Amelia | NOV | 7330358-02 | | Rack No. E045. | 11 3/4" 65.00# Q-125 HC U S STEEL SEAMLESS CASING, HYD S23 THREAD | SR141005 | GC 65 A-23 OCSG 5589 | EA | NEW | | 4 | 152.25 | 0 | | | |
| NOV - Amelia | NOV | 7326931-01 | | Rack No. B067. | 9 5/8" 53.50# P110 EC V&M SEAMLESS CASING, TSH S13 THREAD | FW141509 | GREEN CANYON 65 # A-23 OCS-G 5889 H&P 206 | EA | NEW | | 259 | 11294.5 | 0 | | | |
| NOV - Amelia | NOV | 7324824-01 | | Rack No. EQ08. | 13 3/8" 72.00# HCQ-125 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | SR141005 | GC 65 A-23 OCSG 5889 | EA | NEW | | 2 | 85.35 | 0 | | | |
| NOV - Amelia | NOV | 7324824-01 | | Rack No. EQ08. | 13 3/8" 72.00# HCQ-125 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | SR141005 | GC 65 A-23 OCSG 5889 | EA | NEW | | 1 | 43.35 | 0 | | | |
| NOV - Amelia | NOV | 7324824-01 | | Rack No. EO-07. | 13 3/8" 72.00# HCQ-125 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | SR141005 | GC 65 A-23 OCSG 5889 | EA | NEW | | 6 | 246.25 | 0 | | | |
| NOV - Amelia | NOV | 7322732-01 | | Rack No. 2-208. | 18 5/8" 99.50# J-55 TATA STEEL ERW CASING, BUTTRESS THREAD | SR141007 | GC 65 A-23 | EA | NEW | | 8 | 337.15 | 0 | | | |
| NOV - Amelia | NOV | 7322732-02 | | Rack No. 2-336. | 18 5/8" 99.50# J-55 TATA STEEL ERW PUP JOINTS, BUTTRESS THREAD | SR141007 | GC 65 A-23 | EA | NEW | | 1 | 21 | 0 | | | |
| NOV - Amelia | NOV | 7322732-02 | | Rack No. 2-336. | 18 5/8" 99.50# J-55 TATA STEEL ERW PUP JOINTS, BUTTRESS THREAD | SR141007 | GC 65 A-23 | EA | NEW | | 1 | 21.4 | 0 | | | |
| NOV - Amelia | NOV | 7321277-02 | | Rack No. E040. | 9 5/8" 53.50# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW141505 | GREEN CANYON 65 A-23 OCSG 5889 | EA | NEW | | 9 | 419 | 0 | | | |
| NOV - Amelia | NOV | 7321277-02 | | Rack No. E040. | 9 5/8" 53.50# P-110 IC TENARIS SEAMLESS CASING, TSH S13 THREAD | FW141505 | GREEN CANYON 65 A-23 OCSG 5889 | EA | NEW | | 9 | 410.85 | 0 | | | |

94

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7321277-01 | | Rack No. H062. | 9 5/8" 53.50# P-110 IC TAMSA SEAMLESS CASING, TSH 513 THREAD | FW141505 | GREEN CANYON 65 A-23 OCSG S889 | EA | NEW | | 65 | 3046.44 | 0 | | | |
| NOV - Amelia | NOV | 7316334-05 | | Rack No. WKRK07. | 9 7/8" 62.80# HCQ-125 SEAMLESS PUP JOINTS, HYD 513 THREAD | SA-12-0003 | MAIN PASS 295 # 1 OCS-G 32263 | EA | NEW | | 1 | 3 | 0 | | | |
| NOV - Amelia | NOV | 7316334-07 | | Rack No. WKRK07. | 11 3/4" 65.00# Q-125 IC SEAMLESS PUP JOINTS, HYD 513 THREAD | SA-12-0003 | MAIN PASS 295 # 1 OCS-G 32263 | EA | NEW | | 1 | 3 | 0 | | | |
| NOV - Amelia | NOV | 7316334-02 | | Rack No. WKRK07. | 9 7/8" 62.80# HCQ-125 SEAMLESS PUP JOINTS, HYD 513 THREAD | SA-12-0003 | MAIN PASS 295 # 1 OCS-G 32263 | EA | NEW | | 1 | 10 | 0 | | | |
| NOV - Amelia | NOV | 7316334-03 | | Rack No. WKRK07. | 9 7/8" 62.80# HCQ-125 SEAMLESS PUP JOINTS, HYD 513 THREAD | SA-12-0003 | MAIN PASS 295 # 1 OCS-G 32263 | EA | NEW | | 1 | 3 | 0 | | | |
| NOV - Amelia | NOV | 7315599-01 | | Rack No. EP22. | 11 3/4" 65.00# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | W141005 OCS-G S88 | GREEN CANYON 65 # A-23 | EA | NEW | | 13 | 558.55 | 0 | | | |
| NOV - Amelia | NOV | 7315599-01 | | Rack No. EP22. | 11 3/4" 65.00# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | W141005 OCS-G S88 | GREEN CANYON 65 # A-23 | EA | NEW | | 1 | 42.75 | 0 | | | |
| NOV - Amelia | NOV | 7315599-01 | | Rack No. EP22. | 11 3/4" 65.00# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | W141005 OCS-G S88 | GREEN CANYON 65 # A-23 | EA | NEW | | 1 | 44.65 | 0 | | | |
| NOV - Amelia | NOV | 7315599-01 | | Rack No. EP22. | 11 3/4" 65.00# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | W141005 OCS-G S88 | GREEN CANYON 65 # A-23 | EA | NEW | | 1 | 42.8 | 0 | | | |
| NOV - Amelia | NOV | 7315599-02 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | W141005 OCS-G S88 | GREEN CANYON 65 # A-23 | EA | NEW | | 1 | 42 | 0 | | | |
| NOV - Amelia | NOV | 7312660-01 | | Rack No. B005. | 4 1/2" 13.50# TMK-TMK SEAMLESS CASING, ULTRA SF THREAD | FW141009 | E126 A-5 ST-1 | EA | NEW | | 16 | 676.75 | 0 | | | |
| NOV - Amelia | NOV | 7312632-02 | | Rack No. EQ09. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141017 | SS 274 C22 ST2 | EA | NEW | | 1 | 46 | 0 | | | |
| NOV - Amelia | NOV | 7305798-02 | | Rack No. 2-442. | 9 5/8" 53.50# P-110 IC TAMSA SEAMLESS PUP JOINTS, TSH 513 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 1 | 22.95 | 0 | | | |
| NOV - Amelia | NOV | 7305798-06 | | Rack No. B061. | 9 5/8" 53.50# P-110 IC V&M SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 7 | 314.8 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. B061. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 24 | 1062.1 | 0 | | | |
| NOV - Amelia | NOV | 7305798-03 | | Rack No. B061. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 2 | 92.8 | 0 | | | |
| NOV - Amelia | NOV | 7305798-01 | | Rack No. B061. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 4 | 187.7 | 0 | | | |
| NOV - Amelia | NOV | 7305798-01 | | Rack No. B061. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 16 | 741.0824 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. EP22. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 37 | 1656.35 | 0 | | | |
| NOV - Amelia | NOV | 7305798-03 | | Rack No. EP22. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 7 | 329.9 | 0 | | | |
| NOV - Amelia | NOV | 7305798-04 | | Rack No. EP22. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 1 | 44.35 | 0 | | | |
| NOV - Amelia | NOV | 7305798-01 | | Rack No. EP22. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 1 | 47.25 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. EP22. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 8 | 365.55 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. EP22. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 1 | 46.3 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. EP22. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 4 | 183 | 0 | | | |
| NOV - Amelia | NOV | 7305798-05 | | Rack No. EP22. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 9 | 411.05 | 0 | | | |
| NOV - Amelia | NOV | 7305798-01 | | Rack No. EP22. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 2 | 93.45 | 0 | | | |
| NOV - Amelia | NOV | 7305798-04 | | Rack No. B061. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | FW141505 | GREEN CANYON 65 # A-23 OCS-G S889 | EA | NEW | | 3 | 133.55 | 0 | | | |
| NOV - Amelia | NOV | 7303373-02 | | Rack No. H062. | 9 7/8" 61.80# Q125-IC TAMSA SEAMLESS CASING, TSH 513 THREAD | SR141003 | GC 64 A26 | EA | UNKNOWN | | 1 | 44 | 0 | | | |
| NOV - Amelia | NOV | 7303373-01 | | Rack No. H062. | 9 7/8" 61.80# Q125-IC TAMSA SEAMLESS CASING, TSH 513 THREAD | SR141003 | GC 64 A26 | EA | UNKNOWN | | 16 | 704 | 0 | | | |
| NOV - Amelia | NOV | 7302417-01 | | Rack No. B005. | 7" 32.00# HCP-110 JESCO SEAMLESS CASING, API BRD LONG THREAD | FW141509 | E126 A-5 ST-1 | EA | NEW | | 9 | 386.55 | 0 | | | |
| NOV - Amelia | NOV | 7302417-01 | | Rack No. B005. | 7" 32.00# HCP-110 JESCO SEAMLESS CASING, API BRD LONG THREAD | FW141509 | E126 A-5 ST-1 | EA | NEW | | 28 | 1161.25 | 0 | | | |
| NOV - Amelia | NOV | 7302417-02 | | Rack No. B020. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW141509 | E126 A-5 ST-1 | EA | NEW | | 1 | 47.4 | 0 | | | |
| NOV - Amelia | NOV | 7299505-01 | | Rack No. EP12. | 13 3/8" 72.00# P-110 IC TAMSA SEAMLESS CASING, BUTTRESS THREAD | FW141017 | SS 274 C22 ST2 OCSG 1039 | EA | NEW | | 7 | 329.1543 | 0 | | | |
| NOV - Amelia | NOV | 7288937-02 | | Rack No. EM05. | 10 3/4" 45.50# J-SS TENARIS ERW PUP JOINTS, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 21.5 | 0 | | | |
| NOV - Amelia | NOV | 7288937-01 | | Rack No. EQ09. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 46.35 | 0 | | | |
| NOV - Amelia | NOV | 7288937-01 | | Rack No. EQ09. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 43.1 | 0 | | | |
| NOV - Amelia | NOV | 7288937-02 | | Rack No. EM05. | 10 3/4" 45.50# J-SS TENARIS ERW PUP JOINTS, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 2 | 43.25 | 0 | | | |
| NOV - Amelia | NOV | 7288937-01 | | Rack No. EQ09. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 2 | 81.75 | 0 | | | |
| NOV - Amelia | NOV | 7288937-02 | | Rack No. EM05. | 10 3/4" 45.50# J-SS TENARIS ERW PUP JOINTS, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 2 | 42.8 | 0 | | | |
| NOV - Amelia | NOV | 7288937-01 | | Rack No. B024. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 3 | 130.1 | 0 | | | |
| NOV - Amelia | NOV | 7288937-01 | | Rack No. B024. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 40.1 | 0 | | | |
| NOV - Amelia | NOV | 7288937-02 | | Rack No. EM05. | 10 3/4" 45.50# J-SS TENARIS ERW CASING, BUTTRESS THREAD | FW1410016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 21.6 | 0 | | | |
| NOV - Amelia | NOV | 7288869-05 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 4 | 188.5 | 0 | | | |
| NOV - Amelia | NOV | 7288869-03 | | Rack No. H005. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 45.35 | 0 | | | |
| NOV - Amelia | NOV | 7288869-03 | | Rack No. H005. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 45.1 | 0 | | | |
| NOV - Amelia | NOV | 7288869-01 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TAMSA SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 14 | 636.35 | 0 | | | |
| NOV - Amelia | NOV | 7288869-04 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TAMSA SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 2 | 91.8 | 0 | | | |
| NOV - Amelia | NOV | 7288869-03 | | Rack No. H005. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 47.4 | 0 | | | |
| NOV - Amelia | NOV | 7288869-04 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TAMSA SEAMLESS CASING, API BRD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 27 | 1242.49 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 7288869-05 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 4 | 188.4 | | 0 | | |
| NOV - Amelia | NOV | 7288869-05 | | Rack No. H005. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 7 | 332.25 | | 0 | | |
| NOV - Amelia | NOV | 7288869-01 | | Rack No. H005. | 7 5/8" 29.70# HCP-110 TAMSA SEAMLESS CASING, API 8RD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 5 | 229.05 | | 0 | | |
| NOV - Amelia | NOV | 7288869-02 | | Rack No. H005. | 7 5/8" 29.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 1 | 44.55 | | 0 | | |
| NOV - Amelia | NOV | 7288816-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY CODE: 8000 156 | EA | NEW | | 64 | 2987.24 | | 0 | | |
| NOV - Amelia | NOV | 7288816-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY CODE: 8000 156 | EA | NEW | | 129 | 6023.01 | | 0 | | |
| NOV - Amelia | NOV | 7288570-01 | | Rack No. C255. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW1415016 | S.M.I. 48 E-8 OCSG 786 | EA | NEW | | 25 | 1166.75 | | 0 | | |
| NOV - Amelia | NOV | 7287935-01 | | Rack No. B005. | 7" 38.00# HCQ-125-1 TCA SEAMLESS CASING, STL THREAD | 3500.2 | | EA | NEW | | 43 | 1881.7 | | 0 | | |
| NOV - Amelia | NOV | 7282304-02 | | Rack No. C255. | 7 5/8" 29.70# HCP-110 TENARIS SEAMLESS CASING, TSH 513 THREAD | GO141504 | M.P. 311 #B-12 ST OCSG:2213 | EA | NEW | | 25 | 1134.7 | | 0 | | |
| NOV - Amelia | NOV | 7282304-01 | | Rack No. C255. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | GO141504 | M.P. 311 #B-12 ST OCSG:2213 | EA | NEW | | 40 | 1848.4017 | | 0 | | |
| NOV - Amelia | NOV | 7280531-01 | | Rack No. B024. | 10 3/4" 45.50# J-55 TENARIS ERW CASING, BUTTRESS THREAD | GO141004 | MP 311 B12 | EA | NEW | | 1 | 38.65 | | 0 | | |
| NOV - Amelia | NOV | 7280531-01 | | Rack No. B024. | 10 3/4" 45.50# J-55 TENARIS ERW CASING, BUTTRESS THREAD | GO141004 | MP 311 B12 | EA | NEW | | 1 | 38.85 | | 0 | | |
| NOV - Amelia | NOV | 7280393-01 | | Rack No. E060. | 9 5/8" 53.50# HCQ-125 U-S STEEL SEAMLESS CASING, BUTTRESS THREAD | FW141009 | EI 126 A-5 ST-1 | EA | NEW | | 14 | 642.9 | | 0 | | |
| NOV - Amelia | NOV | 7280393-01 | | Rack No. EQ09. | 9 5/8" 53.50# HCQ-125 U-S STEEL SEAMLESS CASING, BUTTRESS THREAD | FW141009 | EI 126 A-5 ST-1 | EA | NEW | | 1 | 47.25 | | 0 | | |
| NOV - Amelia | NOV | 7277189-01 | | Rack No. B057. | 11 7/8" 71.80# Q-125 IC TENARIS SEAMLESS CASING, TSH 523 THREAD | SR141003 | GC 64 A26 | EA | NEW | | 21 | 954.85 | | 0 | | |
| NOV - Amelia | NOV | 7276946-01 | | Rack No. E079. | 7" 26.00# P-110 EC V&M SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 1 | 44.15 | | 0 | | |
| NOV - Amelia | NOV | 7276946-01 | | Rack No. E079. | 7" 26.00# P-110 EC V&M SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 2 | 89.1 | | 0 | | |
| NOV - Amelia | NOV | 7276946-01 | | Rack No. E079. | 7" 26.00# P-110 EC V&M SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 5 | 221.25 | | 0 | | |
| NOV - Amelia | NOV | 7276946-03 | | Rack No. E077. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 2 | 83.7 | | 0 | | |
| NOV - Amelia | NOV | 7276946-02 | | Rack No. EP22. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 6 | 280.02 | | 0 | | |
| NOV - Amelia | NOV | 7276946-05 | | Rack No. E079. | 7" 26.00# HCP-110 V&M SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 1 | 45.3 | | 0 | | |
| NOV - Amelia | NOV | 7276946-02 | | Rack No. EP22. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 11 | 513.3639 | | 0 | | |
| NOV - Amelia | NOV | 7276946-03 | | Rack No. EP22. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 4 | 166.85 | | 0 | | |
| NOV - Amelia | NOV | 7276946-04 | | Rack No. EP22. | 7" 26.00# HCP-110 V&M SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 1 | 45.45 | | 0 | | |
| NOV - Amelia | NOV | 7276946-05 | | Rack No. EP22. | 7" 26.00# HCP-110 V&M SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 2 | 91.45 | | 0 | | |
| NOV - Amelia | NOV | 7276946-02 | | Rack No. EP22. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 1 | 46.67 | | 0 | | |
| NOV - Amelia | NOV | 7276946-03 | | Rack No. E077. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 3 | 124.55 | | 0 | | |
| NOV - Amelia | NOV | 7276946-02 | | Rack No. E077. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | SR141500 | SS 252 C-9 ST1 | EA | NEW | | 2 | 94.65 | | 0 | | |
| NOV - Amelia | NOV | 7272382-04 | | Rack No. EP22. | 7" 26.00# P-110 IC V&M SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY | EA | NEW | | 2 | 89.1 | | 0 | | |
| NOV - Amelia | NOV | 7272382-01 | | Rack No. H053. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY | EA | NEW | | 1 | 46.9 | | 0 | | |
| NOV - Amelia | NOV | 7272382-01 | | Rack No. H053. | 7" 26.00# P-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY | EA | NEW | | 3 | 141 | | 0 | | |
| NOV - Amelia | NOV | 7272382-02 | | Rack No. EP22. | 7" 26.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY | EA | NEW | | 3 | 139.95 | | 0 | | |
| NOV - Amelia | NOV | 7272382-03 | | Rack No. EP22. | 7" 26.00# P-110 IC V&M STAR SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY | EA | NEW | | 1 | 41.85 | | 0 | | |
| NOV - Amelia | NOV | 7272382-02 | | Rack No. EP22. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY | EA | NEW | | 6 | 249.6 | | 0 | | |
| NOV - Amelia | NOV | 7261939-01 | | Rack No. E028. | 7 5/8" 29.70# P-110 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | GO-14-1001-DH | MP 311 A-13 ST-2 MAIN PASS 311 A13 | EA | NEW | | 3 | 138.7269 | | 0 | | |
| NOV - Amelia | NOV | 7244543-05 | | Rack No. E033. | 5 1/2" 20.00# HCP-110 U-S STEEL SEAMLESS CASING, STL THREAD | TBA | S/T | EA | NEW | | 1 | 45.4 | | 0 | | |
| NOV - Amelia | NOV | 3679539-02 | | Rack No. 2-336. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS PUP JOINTS, API 8RD LONG THREAD | FW141502 | EI-187 #2 | EA | NEW | | 1 | 23.15 | | 0 | | |
| NOV - Amelia | NOV | 3679539-02 | | Rack No. 2-336. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS PUP JOINTS, API 8RD LONG THREAD | FW141502 | EI-187 #2 | EA | NEW | | 1 | 23.15 | | 0 | | |
| NOV - Amelia | NOV | 3675138-01 | | Rack No. E028. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141004 | S.S.193 A6 ST#5 OCSG:13917 | EA | NEW | | 3 | 138.25 | | 0 | | |
| NOV - Amelia | NOV | 3675138-02 | | Rack No. E028. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141004 | S.S.193 A6 ST#5 OCSG:13917 | EA | NEW | | 21 | 991.6 | | 0 | | |
| NOV - Amelia | NOV | 3673667-02 | | Rack No. B021. | 7" 32.00# HCP-110 TENARIS-ALGOMA SEAMLESS CASING, API 8RD LONG THREAD | FW141511 | E. CAMERON 172 #2 OCSG 1785B | EA | NEW | | 10 | 473.1 | | 0 | | |
| NOV - Amelia | NOV | 3673667-01 | | Rack No. B021. | 7" 32.00# HCP-110 TENARIS SEAMLESS CASING, API 8RD LONG THREAD | FW141511 | E. CAMERON 172 #2 OCSG 1785B | EA | NEW | | 16 | 752.05 | | 0 | | |
| NOV - Amelia | NOV | 3669409-01 | | Rack No. B024. | 10 3/4" 45.50# HCN-80 TPCO SEAMLESS CASING, BUTTRESS THREAD | SA-14-0006-DH | MP 153 B-3 OCSG:1967 | EA | NEW | | 9 | 402.55 | | 0 | | |
| NOV - Amelia | NOV | 3669409-01 | | Rack No. EP16. | 10 3/4" 45.50# HCN-80 TPCO SEAMLESS CASING, BUTTRESS THREAD | SA-14-0006-DH | MP 153 B-3 OCSG:1967 | EA | NEW | | 1 | 46.5 | | 0 | | |
| NOV - Amelia | NOV | 3669409-01 | | Rack No. B024. | 10 3/4" 45.50# HCN-80 TPCO SEAMLESS CASING, BUTTRESS THREAD | SA-14-0006-DH | MP 153 B-3 OCSG:1967 | EA | NEW | | 4 | 179.3 | | 0 | | |
| NOV - Amelia | NOV | 3669375-01 | | Rack No. MIT02. | 6" X 4 1/2" 30.38# 15.50# (45.88#) HP113CR115(O) HP113CR115(I) JFE SEAMLESS VIT, VAM DRS NA THREAD | | DANTZLER WELLS | EA | USED | | 1 | 39.6 | | 0 | | |
| NOV - Amelia | NOV | 3652486-02 | | Rack No. B040. | 5" 18.00# P-110 EC V&M SEAMLESS CASING, TSH 513 THREAD | SG-13-0001-CC | MP 302 B-19 | EA | NEW | | 5 | 226.1 | | 0 | | |
| NOV - Amelia | NOV | 3651026-02 | | Rack No. E044. | 13 3/8" 72.00# HCP-110 TENARIS SEAMLESS CASING, BUTTRESS THREAD | FW141002 | EI 187 #2 OCSG 10736 | EA | NEW | | 1 | 42.65 | | 0 | | |
| NOV - Amelia | NOV | 3651026-01 | | Rack No. E044. | 13 3/8" 72.00# HCP-110 U-S STEEL SEAMLESS CASING, BUTTRESS THREAD | FW141002 | EI 187 #2 OCSG 10736 | EA | NEW | | 1 | 38.1 | | 0 | | |
| NOV - Amelia | NOV | 3648959-05 | | Rack No. E016. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-13-0031-DC | HIGH ISL. A596 D-6 S/T | EA | NEW | | 2 | 96.7 | | 0 | | |
| NOV - Amelia | NOV | 3648959-06 | | Rack No. E016. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-13-0031-DC | HIGH ISL. A596 D-6 S/T | EA | NEW | | 1 | 51 | | 0 | | |
| NOV - Amelia | NOV | 3648959-05 | | Rack No. E016. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-13-0031-DC | HIGH ISL. A596 D-6 S/T | EA | NEW | | 6 | 292.35 | | 0 | | |
| NOV - Amelia | NOV | 3648959-07 | | Rack No. E016. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-13-0031-DC | HIGH ISL. A596 D-6 S/T | EA | NEW | | 1 | 48.6 | | 0 | | |
| NOV - Amelia | NOV | 3648959-12 | | Rack No. EP19. | 9 5/8" 53.50# HCP-110 TAMSA SEAMLESS PUP JOINTS, TSH 513 THREAD | SA-13-0031-DC | HIGH ISL. A596 D-6 S/T | EA | NEW | | 1 | 23.1 | | 0 | | |
| NOV - Amelia | NOV | 3648910-02 | | Rack No. WKRK02. | 5 1/2" 23.00# 13 CR-95 JFE SEAMLESS CASING, BT5-6 THREAD | | GC 40 #1 | EA | USED | | 1 | 39.75 | | 0 | | |
| NOV - Amelia | NOV | 3648910-02 | | Rack No. WKRK02. | 5 1/2" 23.00# 13 CR-95 JFE SEAMLESS CASING, BT5-6 THREAD | | GC 40 #1 | EA | NEW | | 1 | 39.8 | | 0 | | |
| NOV - Amelia | NOV | 3643733-01 | | Rack No. WKRK02. | OTHER, THREAD | 142412 | BIG BEND M.C. 698 #1 | EA | USED | | 1 | 0 | | 0 | | |
| NOV - Amelia | NOV | 3643733-01 | | Rack No. WKRK02. | OTHER, THREAD | 142412 | BIG BEND M.C. 698 #1 | EA | NEW | | 10 | 0 | | 0 | | |
| NOV - Amelia | NOV | 3643733-03 | | Rack No. E017. | 5 1/2" 23.00# 13 CR-95 JFE SEAMLESS CASING, BT5-6 THREAD | 142412 | BIG BEND M.C. 698 #1 | EA | NEW | | 8 | 316.45 | | 0 | | |
| NOV - Amelia | NOV | 3643149-01 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U-S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG:2722 | EA | NEW | | 15 | 620.45 | | 0 | | |
| NOV - Amelia | NOV | 3643149-01 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U-S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG:2722 | EA | NEW | | 1 | 40.3 | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 3643149-02 | | Rack No. EP17. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS PUP JOINTS, HYD S13 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG:2722 | EA | NEW | | 1 | 5.3 | 0 | | |
| NOV - Amelia | NOV | 3643149-03 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 JFE SEAMLESS CASING, HYD S13 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG:2722 | EA | NEW | | 1 | 42.9 | 0 | | |
| NOV - Amelia | NOV | 3643149-01 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD S13 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG:2722 | EA | NEW | | 2 | 81.65 | 0 | | |
| NOV - Amelia | NOV | 3643149-02 | | Rack No. EP17. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS PUP JOINTS, HYD S13 THREAD | SA-13-0031-DH | HI A595 D-6 ST-2 OCSG:2722 | EA | NEW | | 1 | 10.3 | 0 | | |
| NOV - Amelia | NOV | 3641841-01 | | Rack No. EP18. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | SG-13-0001-DH | MP 302 B-19 | EA | NEW | | 1 | 46 | 0 | | |
| NOV - Amelia | NOV | 3641817-01 | | Rack No. EP16. | 9 5/8" 53.30# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 1 | 46.1 | 0 | | |
| NOV - Amelia | NOV | 3641146-01 | | Rack No. EP16. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, API BRD LONG THREAD | SA-13-0045-DH | VR 262 A-6 ST-1 | EA | NEW | | 1 | 46.95 | 0 | | |
| NOV - Amelia | NOV | 3634794-01 | | Rack No. 8061. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 9 | 407.65 | 0 | | |
| NOV - Amelia | NOV | 3634794-03 | | Rack No. 8501-B. | 13 3/8" 68.00# J-55 HYUNDAI ERW PUP JOINTS, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 2 | 43.25 | 0 | | |
| NOV - Amelia | NOV | 3634794-01 | | Rack No. 8501. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 2 | 88.9 | 0 | | |
| NOV - Amelia | NOV | 3634794-01 | | Rack No. 8501. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 1 | 45.5 | 0 | | |
| NOV - Amelia | NOV | 3632545-01 | | Rack No. 8069-B. | 20" 106.50# J-55 MANNESMANN SEAMLESS CASING, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 | EA | NEW | | 1 | 43.2 | 0 | | |
| NOV - Amelia | NOV | 3632196-01 | | Rack No. 8069-B. | 20" 106.50# J-55 SALZGITTER  ERW CASING, BUTTRESS THREAD | SA-14-0001-DH | MP 295 #3 OCSG:32263 | EA | NEW | | 3 | 130.3 | 0 | | |
| NOV - Amelia | NOV | 3631381-01 | | Rack No. E028. | 7" 29.00# HCP-110 TPCO SEAMLESS CASING, API BRD LONG THREAD | SA-14-0002-DC | M.P. 153 #B-10 ST3 OCSG:1966 | EA | NEW | | 24 | 994.8 | 0 | | |
| NOV - Amelia | NOV | 3631381-03 | | Rack No. 2-442. | 7" 29.00# P-110 U S STEEL SEAMLESS PUP JOINTS, API BRD LONG THREAD | SA-14-0002-DC | M.P. 153 #B-10 ST3 OCSG:1966 | EA | NEW | | 1 | 23.07 | 0 | | |
| NOV - Amelia | NOV | 3631311-01 | | Rack No. 8057. | 11 7/8" 71.80# Q-125 IC TAMSA SEAMLESS CASING, TSH S23 THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST2 | EA | NEW | | 18 | 822.3794 | 0 | | |
| NOV - Amelia | NOV | 3631280-02 | | Rack No. 8501. | 16" 94.81# Q-125 IC TENARIS SEAMLESS CASING, TSH S23 THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST2 | EA | NEW | | 6 | 254.65 | 0 | | |
| NOV - Amelia | NOV | 3631280-01 | | Rack No. 8501. | 16" 94.81# HCQ-125 U S STEEL SEAMLESS CASING, TSH S23 THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST2 | EA | NEW | | 1 | 36.35 | 0 | | |
| NOV - Amelia | NOV | 3631280-01 | | Rack No. 8501. | 16" 94.81# HCQ-125 U S STEEL SEAMLESS CASING, TSH S23 THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST2 | EA | NEW | | 4 | 164.1 | 0 | | |
| NOV - Amelia | NOV | 3631274-01 | | Rack No. 8501. | 16" 97.00# HCN-80 V&M SEAMLESS CASING, BUTTRESS THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST#2 | EA | NEW | | 1 | 41.95 | 0 | | |
| NOV - Amelia | NOV | 3631274-01 | | Rack No. 8501. | 16" 97.00# HCN-80 V&M SEAMLESS CASING, BUTTRESS THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST#2 | EA | NEW | | 2 | 90.85 | 0 | | |
| NOV - Amelia | NOV | 3631274-01 | | Rack No. 8501. | 16" 97.00# HCN-80 V&M SEAMLESS CASING, BUTTRESS THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST#2 | EA | NEW | | 1 | 44.5 | 0 | | |
| NOV - Amelia | NOV | 3631274-02 | | Rack No. 8501. | 16" 97.00# HCN-80 U S STEEL SEAMLESS CASING, BUTTRESS THREAD | SA-13-0003-DH | HIGH ISLAND A596 D9 ST#2 | EA | NEW | | 1 | 38.75 | 0 | | |
| NOV - Amelia | NOV | 3627781-01 | | Rack No. E045. | 13 3/8" 72.00# HCP-110 U S STEEL SEAMLESS CASING, SLX THREAD | SA-13-0031DH | HI A595 D-6 | EA | NEW | | 2 | 81.55 | 0 | | |
| NOV - Amelia | NOV | 3627781-01 | | Rack No. 8501. | 13 3/8" 72.00# HCP-110 U S STEEL SEAMLESS CASING, SLX THREAD | SA-13-0031DH | HI A595 D-6 | EA | NEW | | 1 | 40.8 | 0 | | |
| NOV - Amelia | NOV | 3627781-01 | | Rack No. BP-15. | 13 3/8" 72.00# HCP-110 U S STEEL SEAMLESS CASING, SLX THREAD | SA-13-0031DH | HI A595 D-6 | EA | NEW | | 10 | 407.75 | 0 | | |
| NOV - Amelia | NOV | 3627781-01 | | Rack No. 8501. | 13 3/8" 72.00# HCP-110 U S STEEL SEAMLESS CASING, SLX THREAD | SA-13-0031DH | HI A595 D-6 | EA | NEW | | 6 | 255.1 | 0 | | |
| NOV - Amelia | NOV | 3620413-04 | | Rack No. EP17. | 7" 29.00# P-110 U S STEEL SEAMLESS PUP JOINTS, API BRD LONG THREAD | SA-14-0002-DC | MAIN PASS 153 #B-10 ST#3 OCSG 1966 | EA | NEW | | 1 | 23 | 0 | | |
| NOV - Amelia | NOV | 3620015-01 | | Rack No. EP12. | 16" 97.00# Q125 HP U S STEEL SEAMLESS CASING, BUTTRESS THREAD | SA-13-0031-DH | HI A596 #D-6 | EA | NEW | | 22 | 908.5 | 0 | | |
| NOV - Amelia | NOV | 3619168-03 | | Rack No. 2-442. | 7" 29.00# HCP-110 TENARIS SEAMLESS PUP JOINTS, API BRD LONG THREAD | SA-14-0002-DC | MAIN PASS 153 B-10 ST#3 OCSG 1966 | EA | NEW | | 1 | 21.8 | 0 | | |
| NOV - Amelia | NOV | 3616810-01 | | Rack No. 8040. | 4 1/2" 18.97# Q-125 HCE VOEST ALP SEAMLESS CASING, SLJII THREAD | SA-13-0024-DH | EI 136 JA-4 | EA | NEW | | 8 | 324.3 | 0 | | |
| NOV - Amelia | NOV | 3615844-01 | | Rack No. EP12. | 13 3/8" 72.00# HCP-110 V&M SEAMLESS CASING, HYD S13 THREAD | SA-13-0040-DH | WC 210 #1 | EA | NEW | | 6 | 252.1 | 0 | | |
| NOV - Amelia | NOV | 3615844-01 | | Rack No. E077. | 13 3/8" 72.00# HCP-110 V&M SEAMLESS CASING, HYD S13 THREAD | SA-13-0040-DH | WC 210 #1 | EA | NEW | | 5 | 209.55 | 0 | | |
| NOV - Amelia | NOV | 3615843-01 | | Rack No. H053. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API BRD LONG THREAD | SA-13-0044-DH | EI 330 D-8 ST-2 | EA | NEW | | 2 | 83.6 | 0 | | |
| NOV - Amelia | NOV | 3614854-02 | | Rack No. H053. | 7" 26.00# P-110 IC V&M SEAMLESS CASING, API BRD LONG THREAD | SA-13-0044-DH | EI 330 D-8 ST-2 | EA | NEW | | 6 | 270.05 | 0 | | |
| NOV - Amelia | NOV | 3614854-03 | | Rack No. H053. | 7" 26.00# HCP-110 VOEST ALP SEAMLESS CASING, API BRD LONG THREAD | SA-13-0044-DH | EI 330 D-8 ST-2 | EA | NEW | | 2 | 83.8 | 0 | | |
| NOV - Amelia | NOV | 3614854-04 | | Rack No. H053. | 7" 26.00# HCP-110 SUMITOMO SEAMLESS CASING, API BRD LONG THREAD | SA-13-0044-DH | EI 330 D-8 ST-2 | EA | NEW | | 1 | 40 | 0 | | |
| NOV - Amelia | NOV | 3614854-02 | | Rack No. H053. | 7" 26.00# P-110 IC V&M SEAMLESS CASING, API BRD LONG THREAD | SA-13-0044-DH | EI 330 D-8 ST-2 | EA | NEW | | 26 | 1165.7226 | 0 | | |
| NOV - Amelia | NOV | 3614751-01 | | Rack No. B069-B. | 20" 169.00# X-56 JFE ERW CASING, BUTTRESS THREAD | SA-13-0031-DH | HI 596 D-6 OCSG:2722 | EA | NEW | | 10 | 444.85 | 0 | | |
| NOV - Amelia | NOV | 3612120-02 | | Rack No. EP2S. | 11 7/8" 71.80# Q-125 IC TENARIS SEAMLESS CASING, TSH S23 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 2 | 91.9 | 0 | | |
| NOV - Amelia | NOV | 3612120-01 | | Rack No. MOC1. | 11 7/8" 71.80# Q-125 IC TAMSA SEAMLESS CASING, TSH S23 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 3 | 137.3 | 0 | | |
| NOV - Amelia | NOV | 3612120-01 | | Rack No. MOC1. | 11 7/8" 71.80# Q-125 IC TAMSA SEAMLESS CASING, TSH S23 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 10 | 457.85 | 0 | | |
| NOV - Amelia | NOV | 3612120-01 | | Rack No. MOC1. | 11 7/8" 71.80# Q-125 IC TAMSA SEAMLESS CASING, TSH S23 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 17 | 777.3 | 0 | | |
| NOV - Amelia | NOV | 3612106-01 | | Rack No. EQ09. | 9 7/8" 61.80# Q-125 IC TAMSA SEAMLESS CASING, TSH S13 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 2 | 93.95 | 0 | | |
| NOV - Amelia | NOV | 3612106-01 | | Rack No. EQ08. | 9 7/8" 61.80# Q-125 IC TAMSA SEAMLESS CASING, TSH S13 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 1 | 47.5 | 0 | | |
| NOV - Amelia | NOV | 3612106-01 | | Rack No. EQ08. | 9 7/8" 61.80# Q-125 IC TAMSA SEAMLESS CASING, TSH S13 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 6 | 281.85 | 0 | | |
| NOV - Amelia | NOV | 3612047-01 | | Rack No. EP2S. | 9 7/8" 62.80# P-110 TAMSA SEAMLESS CASING, HYD S13 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 1 | 46.45 | 0 | | |
| NOV - Amelia | NOV | 3612039-01 | | Rack No. EP17. | 9 7/8" 62.80# Q-125 TAMSA SEAMLESS CASING, HYD S23 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 1 | 45.3333 | 0 | | |
| NOV - Amelia | NOV | 3612039-01 | | Rack No. EP18. | 9 7/8" 62.80# Q-125 TAMSA SEAMLESS CASING, HYD S23 THREAD | SA-12-0003-DH | MAIN PASS 295 #1 OCSG 32263 | EA | NEW | | 2 | 90.67 | 0 | | |
| NOV - Amelia | NOV | 3610913-01 | | Rack No. EP16. | 13 3/8" 70.67# P-110 U S STEEL SEAMLESS CASING, SLX THREAD | PENDING | VERMILLION 262 A-6 ST1 OCSG 34257 | EA | NEW | | 2 | 83 | 0 | | |
| NOV - Amelia | NOV | 3610913-01 | | Rack No. EP16. | 13 3/8" 70.67# P-110 U S STEEL SEAMLESS CASING, SLX THREAD | PENDING | VERMILLION 262 A-6 ST1 OCSG 34257 | EA | NEW | | 3 | 119.75 | 0 | | |
| NOV - Amelia | NOV | 3610856-02 | | Rack No. EP16. | 13 3/8" 72.00# HCP-110 TAMSA SEAMLESS CASING, BUTTRESS THREAD | PENDING | VERMILLION 262 A6 ST1 OCSG 34257 | EA | NEW | | 1 | 45.9 | 0 | | |
| NOV - Amelia | NOV | 3610856-01 | | Rack No. EP16. | 13 3/8" 72.00# HCP-110 V&M SEAMLESS CASING, HYD S13 THREAD | PENDING | VERMILLION 262 A6 ST1 OCSG 34257 | EA | NEW | | 3 | 125.3 | 0 | | |
| NOV - Amelia | NOV | 3610856-01 | | Rack No. EP16. | 13 3/8" 72.00# HCP-110 V&M SEAMLESS CASING, HYD S13 THREAD | PENDING | VERMILLION 262 A6 ST1 OCSG 34257 | EA | NEW | | 1 | 44.5 | 0 | | |
| NOV - Amelia | NOV | 3610188-01 | | Rack No. EP22. | 7" 42.70# Q-125 IC V&M SEAMLESS CASING, SLJII THREAD | SA-12-0003-DC | MP 295 #1 OCSG: 32263 | EA | NEW | | 1 | 38.9 | 0 | | |
| NOV - Amelia | NOV | 3603237-01 | | Rack No. H053. | 7" 26.00# P-110 IC V&M SEAMLESS CASING, API BRD LONG THREAD | SA-13-0043-DC | EI 125 #R-1 OCSG: S1 | EA | NEW | | 2 | 90.2 | 0 | | |
| NOV - Amelia | NOV | 3601342-01 | | Rack No. C159. | 4 1/2" 15.50# L-80 JFE SEAMLESS TUBING, BTS-6PR THREAD | SA-13-4203 | GIBBSTOWN SWD #1 | EA | NEW | | 12 | 379.4 | 0 | | |
| NOV - Amelia | NOV | 3594307-01 | | Rack No. EP22. | 7" 32.00# HCP-110 VOEST ALP SEAMLESS CASING, API BRD LONG THREAD | SA-13-0002-CC | HI A596 D-2 ST-1 | EA | NEW | | 9 | 362.1 | 0 | | |

97

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 3594287-01 | | Rack No. EP18. | 9 5/8" 53.50# P-110 EC V&M SEAMLESS CASING, SLX THREAD | SA-13-0002-CC | HI A596 D-2 ST-1 | EA | NEW | | 1 | 44.7 | 0 | | | |
| NOV - Amelia | NOV | 3594279-02 | | Rack No. 2-442. | 13 3/8" 68.00# J-55 TENARIS ERW PUP JOINTS, BUTTRESS THREAD | SA-13-3477-DH | EI 330 D-8 ST | EA | NEW | | 2 | 41.85 | 0 | | | |
| NOV - Amelia | NOV | 3594279-01 | | Rack No. B061. | 13 3/8" 68.00# J-55 NEXTEEL ERW CASING, BUTTRESS THREAD | SA-13-3477-DH | EI 330 D-8 ST | EA | NEW | | 6 | 271.95 | 0 | | | |
| NOV - Amelia | NOV | 3580472-03 | | Rack No. I3-303. | 10 3/4" 45.50# J-55 TENARIS ERW CASING, BUTTRESS THREAD | SA-13-0026-DH | SS 91 #H2 | EA | NEW | | 1 | 45.5 | 0 | | | |
| NOV - Amelia | NOV | 3580472-02 | | Rack No. I3-303. | 10 3/4" 45.50# J-55 TENARIS ERW CASING, BUTTRESS THREAD | SA-13-0026-DH | SS 91 #H2 | EA | NEW | | 1 | 45 | 0 | | | |
| NOV - Amelia | NOV | 3580447-03 | | Rack No. C002. | 13 3/8" 68.00# J-55 TENARIS ERW CASING, BUTTRESS THREAD | SA-13-0038-DH | EI 330 D-1 ST1 OCSG: 2115 EI 330 D-1 ST1 | EA | NEW | | 1 | 43 | 0 | | | |
| NOV - Amelia | NOV | 3580447-04 | | Rack No. C002. | 13 3/8" 68.00# J-55 TENARIS ERW CASING, BUTTRESS THREAD | SA-13-0038-DH | OCSG: 2115 | EA | NEW | | 1 | 42.12 | 0 | | | |
| NOV - Amelia | NOV | 3580432-02 | | Rack No. B024. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | | INVENTORY | EA | NEW | | 2 | 90.38 | 0 | | | |
| NOV - Amelia | NOV | 3580082-01 | | Rack No. C242. | 7" 41.00# V-150 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0024-DH | EI 136 JA-4 | EA | NEW | | 1 | 47.35 | 0 | | | |
| NOV - Amelia | NOV | 3578347-03 | | Rack No. I2TP-07. | 13 3/8" 68.00# HCQ-125 TENARIS SEAMLESS PUP JOINTS, BUTTRESS THREAD | SG-13-0011-DH | GI 32 #U-12 ST-1 | EA | NEW | | 1 | 23.85 | 0 | | | |
| NOV - Amelia | NOV | 3576854-01 | | Rack No. EM05. | 9 5/8" 53.50# HCQ-125 V&M SEAMLESS CASING, STL THREAD | SA-13-0024-DH | EI 136 #JA-4 | EA | NEW | | 16 | 733.15 | 0 | | | |
| NOV - Amelia | NOV | 3575043-02 | | Rack No. 2-442. | 7" 26.00# HCP-110 TPCO SEAMLESS PUP JOINTS, API 8RD LONG THREAD | | APACHE INVENTORY #3500S | EA | NEW | | 1 | 23 | 0 | | | |
| NOV - Amelia | NOV | 3574231-01 | | Rack No. EM05. | 9 5/8" 53.50# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A 596 D-2 ST1 | EA | NEW | | 6 | 272.4 | 0 | | | |
| NOV - Amelia | NOV | 3574231-03 | | Rack No. EP18. | 9 5/8" 53.50# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A 596 D-2 ST1 | EA | NEW | | 1 | 46.2 | 0 | | | |
| NOV - Amelia | NOV | 3574231-05 | | Rack No. EP18. | 9 5/8" 53.50# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A 596 D-2 ST1 | EA | NEW | | 1 | 45.4 | 0 | | | |
| NOV - Amelia | NOV | 3574231-02 | | Rack No. EP18. | 9 5/8" 53.50# HCQ-125 VMS SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A 596 D-2 ST1 | EA | NEW | | 1 | 43.85 | 0 | | | |
| NOV - Amelia | NOV | 3574231-01 | | Rack No. EP18. | 9 5/8" 53.50# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A 596 D-2 ST1 | EA | NEW | | 1 | 38.8 | 0 | | | |
| NOV - Amelia | NOV | 3570002-01 | | Rack No. EQ09. | 11 7/8" 71.80# Q-125 IC TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-12-003-DH | MP 295 #1 | EA | NEW | | 1 | 46.15 | 0 | | | |
| NOV - Amelia | NOV | 3563792-01 | | Rack No. E045. | 11 3/4" 69.48# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0002-DH | HI A-596 D-2 ST1 | EA | NEW | | 13 | 549.5 | 0 | | | |
| NOV - Amelia | NOV | 3560733-01 | | Rack No. B028. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY | EA | NEW | | 36 | 1574.4927 | 0 | | | |
| NOV - Amelia | NOV | 3560733-01 | | Rack No. B028. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | | INVENTORY | EA | NEW | | 19 | 832.63 | 0 | | | |
| NOV - Amelia | NOV | 3554493-01 | | Rack No. EP17. | 13 5/8" 88.20# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | SA-12-0003-DH | MP 295 #1 | EA | NEW | | 4 | 178.85 | 0 | | | |
| NOV - Amelia | NOV | 3554493-01 | | Rack No. EP17. | 13 5/8" 88.20# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | SA-12-0003-DH | MP 295 #1 | EA | NEW | | 1 | 45.3 | 0 | | | |
| NOV - Amelia | NOV | 3554493-01 | | Rack No. EP17. | 13 5/8" 88.20# HCQ-125 V&M SEAMLESS CASING, SLX THREAD | SA-12-0003-DH | MP 295 #1 | EA | NEW | | 2 | 87.4 | 0 | | | |
| NOV - Amelia | NOV | 3552709-01 | | Rack No. BP-15. | 11 3/4" 69.48# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | 0002-DH / PO# 45000 | | EA | NEW | | 12 | 505.9 | 0 | | | |
| NOV - Amelia | NOV | 3549135-01 | | Rack No. B070. | 7" 32.00# P-110 IC TENARIS SEAMLESS CASING, API 8RD LONG THREAD | SA-13-0028-DC | SMI 48 E-4 ST-1 HIGH ISL. A-596 D-2 | EA | NEW | | 15 | 692.3 | 0 | | | |
| NOV - Amelia | NOV | 3548409-01 | | Rack No. E040. | 9 5/8" 53.50# HCQ-125 V&M STAR SEAMLESS CASING, STL THREAD | SA-13-0002-DH | S/T | EA | NEW | | 21 | 902.2 | 0 | | | |
| NOV - Amelia | NOV | 3546740-01 | | Rack No. EP25. | 13 3/8" 68.00# NT-80 SEAMLESS CASING, GB BUTTRESS THREAD | SA-12-3357 | HI 596 D-2 | EA | NEW | | 1 | 42.5 | 0 | | | |
| NOV - Amelia | NOV | 3539819-01 | | Rack No. EP12. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | SA-13-0017-DH | EI 330 D-5 ST-1 | EA | NEW | | 3 | 132.24 | 0 | | | |
| NOV - Amelia | NOV | 3539819-01 | | Rack No. EP12. | 13 3/8" 68.00# J-55 HYUNDAI ERW CASING, BUTTRESS THREAD | SA-13-0017-DH | EI 330 D-5 ST-1 | EA | NEW | | 1 | 43 | 0 | | | |
| NOV - Amelia | NOV | 3536855-03 | | Rack No. B050. | 5" 18.00# HCP-110 TMK SEAMLESS CASING, STL THREAD | SA-13-0033-CC | EI 125 A-3 | EA | NEW | | 1 | 41.45 | 0 | | | |
| NOV - Amelia | NOV | 3536855-01 | | Rack No. B050. | 5" 18.00# HCP-110 BENTELER SEAMLESS CASING, STL THREAD | SA-13-0033-CC | EI 125 A-3 | EA | NEW | | 4 | 167.4 | 0 | | | |
| NOV - Amelia | NOV | 3532107-01 | | Rack No. EP16. | 16" 94.81# Q-125 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | M.P. 295 #1 | EA | NEW | | 1 | 43.5 | 0 | | | |
| NOV - Amelia | NOV | 3532107-01 | | Rack No. EP17. | 16" 94.81# Q-125 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | M.P. 295 #1 | EA | NEW | | 1 | 43.32 | 0 | | | |
| NOV - Amelia | NOV | 3532107-01 | | Rack No. EP16. | 16" 94.81# Q-125 IC TENARIS SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | M.P. 295 #1 | EA | NEW | | 4 | 173.28 | 0 | | | |
| NOV - Amelia | NOV | 3532107-02 | | Rack No. EP17. | 16" 94.81# HCQ-125 U S STEEL SEAMLESS CASING, TSH 513 THREAD | SA-12-0003-DH | M.P. 295 #1 | EA | NEW | | 3 | 123.6 | 0 | | | |
| NOV - Amelia | NOV | 3524708-01 | | Rack No. EM05. | 9 5/8" 52.90# HCQ-125 U S STEEL SEAMLESS CASING, STL THREAD | SA-13-0024-DH | EUGENE ISL. 136 JA-4 | EA | NEW | | 20 | 881.9565 | 0 | | | |
| NOV - Amelia | NOV | 3523871-08 | | Rack No. D012. | OTHER, THREAD | 5959 | WC 130 #2 | EA | UNKNOWN | | 1 | | 0 | | | |
| NOV - Amelia | NOV | 3523871-09 | | Rack No. D012. | OTHER, THREAD | 5959 | WC 130 #2 | EA | UNKNOWN | | 1 | | 0 | | | |
| NOV - Amelia | NOV | 3522528-03 | | Rack No. 2-442. | 7 5/8" 29.70# HCP-110 TPCO SEAMLESS PUP JOINTS, API 8RD LONG THREAD | SA-13-0008-DC | WD 90 #F-8 | EA | NEW | | 1 | 22.36 | 0 | | | |
| NOV - Amelia | NOV | 3522355-03 | | Rack No. EN08. | 5" 18.00# HCP-110 TMK SEAMLESS PUP JOINTS, STL THREAD | SA-13-0033-DC | EUGENE ISL. 125 #A-2 S/T | EA | NEW | | 1 | 21 | 0 | | | |
| NOV - Amelia | NOV | 3522335-02 | | Rack No. B050. | 5" 18.00# P-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-13-0033-DC | EUGENE ISL. 125 #A-3 S/T | EA | NEW | | 3 | 141.3 | 0 | | | |
| NOV - Amelia | NOV | 3522335-01 | | Rack No. B050. | 5" 18.00# P-110 ALGOMA SEAMLESS CASING, HYD 513 THREAD | SA-13-0033-DC | EUGENE ISL. 125 #A-3 S/T | EA | NEW | | 3 | 130.5 | 0 | | | |
| NOV - Amelia | NOV | 3522335-01 | | Rack No. B063. | 5" 18.00# P-110 ALGOMA SEAMLESS CASING, HYD 513 THREAD | SA-13-0033-DC | EUGENE ISL. 125 #A-3 S/T | EA | NEW | | 12 | 522 | 0 | | | |
| NOV - Amelia | NOV | 3522335-03 | | Rack No. B050. | 5" 18.00# P-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | SA-13-0033-DC | S/T | EA | NEW | | 1 | 45.5 | 0 | | | |
| NOV - Amelia | NOV | 3521926-01 | | Rack No. I3-WK01. | 9 5/8" 53.50# HCQ-125 V&M SEAMLESS CASING, STL THREAD | SA-13-0024-DH | EI 136 #JA-4 | EA | NEW | | 1 | 48.34 | 0 | | | |
| NOV - Amelia | NOV | 3520312-02 | | Rack No. I3-303. | 10 3/4" 45.50# J-55 CORINTH ERW CASING, BUTTRESS THREAD | SA-13-0006-DH | E.I. 126 #A-6 | EA | NEW | | 1 | 42.1 | 0 | | | |
| NOV - Amelia | NOV | 3519531-02 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-13-0031-DH | HIGH ISL. A-596 D-6 S/T | EA | NEW | | 1 | 43 | 0 | | | |
| NOV - Amelia | NOV | 3519531-03 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-13-0031-DH | HIGH ISL. A-596 D-6 S/T | EA | NEW | | 1 | 42.5 | 0 | | | |
| NOV - Amelia | NOV | 3519531-05 | | Rack No. EP22. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-13-0031-DH | HIGH ISL. A-596 D-6 S/T | EA | NEW | | 3 | 122.85 | 0 | | | |
| NOV - Amelia | NOV | 3519428-01 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | HIGH ISLAND A-596 #D-6 S/T | EA | NEW | | 1 | 46.2 | 0 | | | |
| NOV - Amelia | NOV | 3519428-01 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | HIGH ISLAND A-596 #D-6 S/T | EA | NEW | | 1 | 45.65 | 0 | | | |
| NOV - Amelia | NOV | 3519428-03 | | Rack No. EQ10. | 9 5/8" 53.50# HCP-110 U S STEEL SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | HIGH ISLAND A-596 #D-6 S/T | EA | NEW | | 1 | 47.15 | 0 | | | |
| NOV - Amelia | NOV | 3519428-03 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 U S STEEL SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | HIGH ISLAND A-596 #D-6 S/T | EA | NEW | | 2 | 91.7333 | 0 | | | |
| NOV - Amelia | NOV | 3519428-04 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | HIGH ISLAND A-596 #D-6 S/T | EA | NEW | | 4 | 179 | 0 | | | |
| NOV - Amelia | NOV | 3519428-01 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | HIGH ISLAND A-596 #D-6 S/T | EA | NEW | | 3 | 133.2 | 0 | | | |
| NOV - Amelia | NOV | 3519428-01 | | Rack No. EQ10. | 9 5/8" 53.50# P-110 EC V&M STAR SEAMLESS CASING, HYD S23 THREAD | SA-13-0031-DC | HIGH ISLAND A-596 #D-6 S/T | EA | NEW | | 35 | 1577.7083 | 0 | | | |
| NOV - Amelia | NOV | 3519428-02 | | Rack No. EQ10. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, TSH 523 THREAD | SA-13-0031-DC | #D-6 S/T | EA | NEW | | 2 | 87.95 | 0 | | | |
| NOV - Amelia | NOV | 3508865-01 | | Rack No. EP12. | 20" 94.00# J-55 NIPPON ERW CASING, BUTTRESS THREAD | SA-13-0024-DH | EI 136 J-4 | EA | NEW | | 3 | 131.15 | 0 | | | |
| NOV - Amelia | NOV | 3506358-03 | | Rack No. 2-442. | 13 3/8" 68.00# J-55 TENARIS ERW PUP JOINTS, BUTTRESS THREAD | SA-13-0020-DH | EI 330 D-3 ST2 OCSG: 2115 | EA | NEW | | 1 | 21.645 | 0 | | | |
| NOV - Amelia | NOV | 3501929-04 | | Rack No. 2-442. | 7 5/8" 29.70# HCP-110 SEAMLESS PUP JOINTS, API 8RD LONG THREAD | SA-13-0008-DH | W. DELTA 90 #F-8 OCSG 1089 | EA | NEW | | 1 | 22.3 | 0 | | | |
| NOV - Amelia | NOV | 3498770-01 | | Rack No. B063. | 9 5/8" 53.50# HCQ-125 V&M SEAMLESS CASING, SLJII THREAD | SA-13-0004-DH | VR 78 A-3 ST-2 | EA | NEW | | 6 | 281.4 | 0 | | | |
| NOV - Amelia | NOV | 3493053-03 | | Rack No. 2-336. | 13 3/8" 68.00# J-55 NEXTEEL ERW PUP JOINTS, BUTTRESS THREAD | SG-12-0054-DH | GI 32 GG #2 ST 1 | EA | NEW | | 1 | 21.7 | 0 | | | |
| NOV - Amelia | NOV | 3464088-01 | | Rack No. EQ19. | 20" 94.00# J-55 NIPPON ERW CASING, BUTTRESS THREAD | PENDING | EUGENE ISL. 136 JA-4 | EA | NEW | | 4 | 176.79 | 0 | | | |
| NOV - Amelia | NOV | 3450383-01 | | Rack No. B021. | 9 5/8" 53.50# HCQ-125 V&M SEAMLESS CASING, API 8RD LONG THREAD | SA-12-0036-DH | G.I. 54 #A-1 ST1 BP1 E.I. 120 #19 ST 2 | EA | NEW | | 16 | 726.9 | 0 | | | |
| NOV - Amelia | NOV | 3442458-01 | | Rack No. H053. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | SA-12-0029-DC | OCSG-00050 | EA | NEW | | 18 | 797.6 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV - Amelia | NOV | 3442458-01 | | Rack No. HD53. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | SA-12-0029-DC | E.I. 120 #19 ST 2 OCSG-00050 | EA | NEW | | 2 | 83.5 | 0 | | | |
| NOV - Amelia | NOV | 3426020-01 | | Rack No. E031. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | SA-12-0046-DC | SHIP SHOAL 193 A7 ST2 | EA | NEW | | 26 | 1156.1333 | 0 | | | |
| NOV - Amelia | NOV | 3426020-01 | | Rack No. E031. | 7 5/8" 33.70# HCP-110 TPCO SEAMLESS CASING, API 8RD LONG THREAD | SA-12-0046-DC | SHIP SHOAL 193 A7 ST2 | EA | NEW | | 56 | 2490 | 0 | | | |
| NOV - Amelia | NOV | 3384042-01 | | Rack No. EP17. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS CASING, SLX THREAD | SA-12-0008-DH | E.I. 118 BM1 ST1 OCSG-15242 | EA | NEW | | 1 | 38.45 | 0 | | | |
| NOV - Amelia | NOV | 3384042-01 | | Rack No. EP17. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS CASING, SLX THREAD | SA-12-0008-DH | E.I. 118 BM1 ST1 OCSG-15242 | EA | NEW | | 1 | 45.45 | 0 | | | |
| NOV - Amelia | NOV | 3368529-01 | | Rack No. EQ09. | 10 3/4" 60.70# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | SA-11-0010-DH | MOBILE BAY 830 #2 | EA | NEW | | 1 | 41.85 | 0 | | | |
| NOV - Amelia | NOV | 3368529-01 | | Rack No. EQ09. | 10 3/4" 60.70# JFE-110T JFE SEAMLESS CASING, HYD 513 THREAD | SA-11-0010-DH | MOBILE BAY 830 #2 | EA | NEW | | 4 | 168.6 | 0 | | | |
| NOV - Amelia | NOV | 3364720-02 | | Rack No. B028. | 4 1/2" 15.00# HCP-110 VOEST ALP SEAMLESS TUBING, ULTRA SF THREAD | SA-11-0042-DC | S.S. 189 A#10 OCSG-04232 | EA | NEW | | 17 | 710 | 0 | | | |
| NOV - Amelia | NOV | 3364720-08 | | Rack No. C242. | 7" 38.00# HCQ-125 TCA SEAMLESS CASING, VAM TOP THREAD | SA-11-0042-DC | S.S. 189 A#10 OCSG-04232 | EA | NEW | | 4 | 161.95 | 0 | | | |
| NOV - Amelia | NOV | 3364720-01 | | Rack No. C242. | 7" 38.00# P-110 TCA SEAMLESS CASING, VAM TOP THREAD | SA-11-0042-DC | S.S. 189 A#10 OCSG-04232 | EA | NEW | | 8 | 360.9 | 0 | | | |
| NOV - Amelia | NOV | 3362473-03 | | Rack No. EQ09. | 9 5/8" 53.50# HCP-110 TENARIS SEAMLESS CASING, HYD 513 THREAD | SA-12-0002-DH | M.P. 8 #1 SL# 20549 GI 116 #A-7 OCSG- | EA | NEW | | 1 | 46.65 | 0 | | | |
| NOV - Amelia | NOV | 3346038-01 | | Rack No. B024. | 5 1/2" 26.00# Q-125 V&M STAR SEAMLESS CASING, SLIJII THREAD | SA-11-0001-DC | 13944 | EA | NEW | | 18 | 820.9 | 0 | | | |
| NOV - Amelia | NOV | 3345139-01 | | Rack No. B501. | 13 5/8" 88.20# JFE-125T JFE SEAMLESS CASING, GB CDE BUTTRESS THREAD | SA-11-0010-DH | MOBILE BAY 830 #2 | EA | NEW | | 1 | 42.5 | 0 | | | |
| NOV - Amelia | NOV | 3345139-01 | | Rack No. B501. | 13 5/8" 88.20# JFE-125T JFE SEAMLESS CASING, GB CDE BUTTRESS THREAD | SA-11-0010-DH | MOBILE BAY 830 #2 | EA | NEW | | 1 | 43.15 | 0 | | | |
| NOV - Amelia | NOV | 3338902-01 | | Rack No. B040. | 7" 32.00# Q-125 TCA SEAMLESS CASING, TC-II THREAD | SA-11-0067-DC | M.P. 59 I-2 | EA | NEW | | 6 | 259.25 | 0 | | | |
| NOV - Amelia | NOV | 3325749-01 | | Rack No. MOC1. | 11 7/8" 71.80# HCQ-125 U S STEEL ERW CASING, BUTTRESS THREAD | SA-11-0042-DH | S.S. 189 A-10 OCSG-04232 | EA | NEW | | 1 | 42.95 | 0 | | | |
| NOV - Amelia | NOV | 3325749-01 | | Rack No. E060. | 11 7/8" 71.80# HCQ-125 U S STEEL ERW CASING, BUTTRESS THREAD | SA-11-0042-DH | S.S. 189 A-10 OCSG-04232 | EA | NEW | | 20 | 853.305 | 0 | | | |
| NOV - Amelia | NOV | 3325081-01 | | Rack No. EQ09. | 9 5/8" 52.85# HCQ-125 TENARIS-TAMSA SEAMLESS CASING, SLX THREAD | SA-11-0044-DH | W.C. 110 #10 ST | EA | NEW | | 2 | 92.45 | 0 | | | |
| NOV - Amelia | NOV | 3322300-01 | | Rack No. E060. | 11 7/8" 71.80# HCQ-125 TENARIS SEAMLESS CASING, SLX THREAD | SA-11-0067-DH | W.C. 110 #10 ST1 | EA | NEW | | 10 | 427.95 | 0 | | | |
| NOV - Amelia | NOV | 3316773-01 | | Rack No. EQ08. | 11 3/4" 65.00# HCP-110 U S STEEL SEAMLESS CASING, HYD 513 THREAD | SA-11-0044-DH | 106 | EA | NEW | | 1 | 40.45 | 0 | | | |
| NOV - Amelia | NOV | 3314254-01 | | Rack No. B061B. | 20" 94.00# J-55 NIPPON ERW CASING, BUTTRESS THREAD | SA-11-0067-DH | MP 59 I-2 | EA | NEW | | 4 | 178.5 | 0 | | | |
| NOV - Amelia | NOV | 3258554-01 | | Rack No. EP12. | 20" 94.00# J-55 V&M ERW CASING, BUTTRESS THREAD | SA-11-0043-DH | OCSG 8467 #2 | EA | NEW | | 8 | 379.1 | 0 | | | |
| NOV - Amelia | NOV | 3258554-02 | | Rack No. 2-336. | 20" 94.00# K-55 U S STEEL SEAMLESS PUP JOINTS, BUTTRESS THREAD | SA-11-0043-DH | OCSG 8467 #2 | EA | NEW | | 1 | 21.4 | 0 | | | |
| NOV - Amelia | NOV | 3258554-02 | | Rack No. 2-336. | 20" 94.00# K-55 U S STEEL SEAMLESS PUP JOINTS, BUTTRESS THREAD | SA-11-0043-DH | OCSG 8467 #2 | EA | NEW | | 1 | 20.85 | 0 | | | |
| NOV - Amelia | NOV | 3240441-02 | | Rack No. EQ08A. | 20" 94.00# J-55 TIPO ERW PUP JOINTS, BUTTRESS THREAD | SA-11-0043-DH | MAIN PASS 315 #1 | EA | NEW | | 2 | 39.85 | 0 | | | |
| NOV - Amelia | NOV | 3236135-02 | | Rack No. EQ19. | 20" 133.00# X-56 HUSTELL ERW CASING, GB BUTTRESS THREAD | SA-11-0009-DH | W.D. 128 #D-12 OCSG: 10893 | EA | NEW | | 2 | 87.5 | 0 | | | |
| NOV - Amelia | NOV | 3236135-01 | | Rack No. EQ19. | 20" 133.00# X-56 HUSTELL ERW CASING, BUTTRESS THREAD | SA-11-0009-DH | W.D. 128 #D-12 OCSG: 10893 | EA | NEW | | 11 | 478.85 | 0 | | | |
| NOV - Amelia | NOV | 3212533-01 | | Rack No. HD53. | 7" 29.00# P-110 EC SEAMLESS CASING, HYD 523 THREAD | GO-10-0014-DH | SP 88 D-8 ST1 BP1 OCSG:10894 | EA | NEW | | 32 | 1379.95 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-06 | | Rack No. 20-0508. | 13 5/8" 88.20# VM-125 HC VMB SEAMLESS CASING, SLIJI1 THREAD | FW191019 | MISSISSIPPI CANYON 519 #3 | EA | NEW | | 7 | 280.92 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-03 | | Rack No. 20-0627. | 13 5/8" 88.20# Q-125 HC U S STEEL SEAMLESS CASING, SLIJI1 THREAD | FW191019 | MISSISSIPPI CANYON 519 #3 | EA | NEW | | 23 | 960.21 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-04 | | Rack No. 02-0511. | 13 5/8" 88.20# HC V&M TCA SEAMLESS CASING, SLIJI1 THREAD | FW191019 | MISSISSIPPI CANYON 519 #3 | EA | NEW | | 18 | 743.48 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-05 | | Rack No. 20-0530. | 13 5/8" 88.20# SM-125TT SUMITOMO SEAMLESS CASING, SLIJI1 THREAD | FW191019 | MISSISSIPPI CANYON 519 #3 | EA | NEW | | 21 | 819.19 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-02 | | Rack No. 20-0508. | 13 5/8" 88.20# Q-125-HP U S STEEL SEAMLESS CASING, SLIJI1 THREAD | FW191019 | MISSISSIPPI CANYON 519 #3 | EA | NEW | | 7 | 306.76 | 0 | | | |
| NOV - Sheldon North | NOV | 7754361-01 | | Rack No. 20-0414. | 13 5/8" 88.20# Q-125 VMG SEAMLESS CASING, SLIJI1 THREAD | FW191019 | MISSISSIPPI CANYON 519 #3 | EA | NEW | | 48 | 2085.33 | 0 | | | |
| NOV - Sheldon North | NOV | 7722987-01 | | Rack No. 06-0704. | 14" 116# Q-125ICY TENARIS TM SEAMLESS CASING, TSH 523 THREAD | AFE 191001 | GREEN CANYON 40 #2 | EA | NEW | | 31 | 1277.4807 | 0 | | | |
| NOV - Sheldon North | NOV | 7722987-01 | | Rack No. 06-0701. | 14" 116# Q-125ICY TENARIS TM SEAMLESS CASING, TSH 523 THREAD | AFE 191001 | GREEN CANYON 40 #2 | EA | NEW | | 117 | 4823.6721 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-06 | | Rack No. 20-0724. | 13 5/8" 88.20# Q125 HP USS SEAMLESS CASING, SLIJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 10 | 440 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-07 | | Rack No. 20-0726. | 13 5/8" 88.20# Q-125 HC USS SEAMLESS CASING, SLIJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 9 | 396 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-05 | | Rack No. 20-0726. | 13 5/8" 88.20# VM-125-HC VMB SEAMLESS CASING, SLIJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 3 | 132 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-04 | | Rack No. 20-0723. | 13 5/8" 88.20# Q-125 HC VALLOUREC & MANNESMANN SEAMLESS CASING, SLIJI THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 2 | 88 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-03 | | Rack No. 20-0719. | 13 5/8" 88.20# Q-125 HC TCA SEAMLESS CASING, SLIJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 33 | 1452 | 0 | | | |
| NOV - Sheldon North | NOV | 7708192-02 | | Rack No. 20-0730. | 13 5/8" 88.20# SM-125S NSSMC SEAMLESS CASING, SLIJII THREAD | | BILL KO SUPPLY PO 10718 | EA | NEW | | 37 | 1467.1474 | 0 | | | |
| NOV - Sheldon North | NOV | 7686925-01 | | Rack No. 20-0346. | 14" 116# Q-125ICY TENARIS TM SEAMLESS CASING, TSH 523 THREAD | 34536 | 14" Green Canyon 40 #2 ST | EA | NEW | | 5 | 206.4833 | 0 | | | |
| NOV - Sheldon North | NOV | 7678145-01 | | Rack No. 20-0553. | 18" 117.00# Q125 HP USS SEAMLESS CASING, HXL THREAD | FW181011 | GREEN CANYON 200 #TA-9 | EA | NEW | | 27 | 1071.4384 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE145-1 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 10.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 4FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE145-2 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 10.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 4FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE146-1 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 10.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 2FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE146-2 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 10.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 2FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE144-1 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 9.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 4FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE144-2 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 9.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 4FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 4 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE147-1 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 9.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 2FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE147-2 | | Rack No. HW-R10-L2-A09 | BLAST JOINT (3.5" 9.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 2FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 2 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-1 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-2 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-3 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-4 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-5 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE123-6 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE125-1 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 10FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE125-2 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 10FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE126-1 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 9.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE126-2 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 9.30# 13CR110 HYPER 2 BTS-8 BOX/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | | |
| OES - Houma | Offshore Energy Services | FE127-1 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BTS-8 BOX/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Houma | Offshore Energy Services | FE127-2 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 10.30# HYPER 2 13CR110 BT5-B BOX/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-1 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-2 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-3 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-4 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-5 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-6 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-7 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-8 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-9 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-10 | | Rack No. HW-R10-L2-A08 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-11 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-12 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-13 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE122-14 | | Rack No. HW-R10-L4-A09 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 20FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE128-1 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE128-2 | | Rack No. HW-R10-L6-A01 | BLAST JOINT (3.5" 9.30# HYPER 2 13CR110 BT5-B BOX/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE5241-1 | | Rack No. HW-R10-L2-A07 | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-11DY VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | | TROKIA TA-3 | EA | NEW | | 1 | 2 | 0 | | |
| OES - Houma | Offshore Energy Services | FE5241-2 | | Rack No. HW-R10-L2-A07 | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-11DY VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | | TROKIA TA-3 | EA | NEW | | 1 | 2 | 0 | | |
| OES - Houma | Offshore Energy Services | FE170-1 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE170-2 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE170-3 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE170-4 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE170-5 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE170-6 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE170-7 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP CPLG/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE171-1 | | Rack No. RACK #4 | RANGE 3 JOINT (4.5" 17# 13CR5110 VAM TOP PIN/PIN) | | KATMAI #1 & 2 | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE142-1 | | Rack No. HW-R10-L6-A07 | PUP JOINT (5.5" 23# 13CR95Y JFE LION PIN/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE155-1 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 23# 13CR95 JFE LION ) (3RD CRATE) | | KATMAI #1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE148-1 | | Rack No. HW-R10-L2-A10 | CROSSOVER PUP (5.5" 26# HYPER 2 13CR110 JFE LION SD49 BOX X 5.5" 26# VAM TOP HC PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE148-2 | | Rack No. HW-R10-L2-A10 | CROSSOVER PUP (5.5" 26# HYPER 2 13CR110 JFE LION SD49 BOX X 5.5" 26# VAM TOP HC PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 0 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE149-1 | | Rack No. HW-R10-L2-A10 | CROSSOVER PUP (5.5" 26# HYPER 2 13CR110 VAM TOP HC BOX X 5.5" 26# JFE LION SD49 PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE150-1 | | Rack No. HW-R10-L2-A10 | CROSSOVER (5.5" 26# 13-5-2-110 JFE LION BOX X 5" 23.20# VAM TOP HC PIN 2FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 2 | 0 | | |
| OES - Houma | Offshore Energy Services | FE151-1 | | Rack No. HW-R10-L2-A10 | CROSSOVER ASSY (5.5" 26# 13CR5110 VAM TOP HC BOX X 4.5" 18.90# JFE LION SD35 PIN 2FT XO X 4.5" 18.90# 13CR5110 JFE LION CPLG X 4.5" 18.90# HYPER 13CR110 JFE LION SD35 PIN/PIN 4FT PUP) | | KATMAI #1 & 2 | EA | NEW | | 1 | 7 | 0 | | |
| OES - Houma | Offshore Energy Services | FE158-1 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 26# HP2 13CR110 JFE LION SD49) | | KATMAI #1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE114-1 | | Rack No. HW-R10-L6-A08 | CROSSOVER ASSEMBLY (5.5" 29.70# HP2 13CR115 VAM TOP HC CPLG/PIN 8FT PUP X 5.5" 29.70# 13-5-2-110 VAM TOP BOX X 5.5" 26# VAM TOP HC PIN 2FT XOVER X 5.5" 26# 13CR5110 VAM TOP HC CPLG/PIN 6FT X 5.5" 26# 13CR5110 VAM TOP HC CPLG/PIN 4FT) | | GUNFLINT | EA | NEW | | 1 | 22 | 0 | | |
| OES - Houma | Offshore Energy Services | FE168-1 | | Rack No. HW-R10-L5-A10 | DECOMPLETION CROSSOVER ASSY (5.5" 29.70# HYPER 2 13CR110 VAM TOP HC BOX X 5.5" 26# JFE LION PIN 4FT X 5.5" 26# HP2 13CR110 JFE LION SD49 CPLG X 5.5" 26# 13CR110 JFE LION PIN/PIN 2FT X 5.5" 26# 13CR110 JFE LION CPLG/PIN 2FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | |
| OES - Houma | Offshore Energy Services | FE169-1 | | Rack No. HW-R10-L5-A10 | DECOMPLETION CROSSOVER ASSY (5.5" 29.70# HP2 13CR115 JFE LION CPLG/PIN 10FT PUP X 5.5" 29.70# HP2 13CR110 JFE LION BOX X 5.5" 29.70# VAM TOP HC PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 16 | 0 | | |
| OES - Houma | Offshore Energy Services | FE157-1 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 29.70# HP2 13CR110 JFE LION) | | KATMAI #1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE157-2 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 29.70# HP2 13CR110 JFE LION) | | KATMAI #1 & 2 | EA | NEW | | 0 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE134-1 | | Rack No. HW-R10-L6-A03 | PUP JOINT (5.5" 26# 13CR5110 JFE LION CPLG/PIN 15FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 15 | 0 | | |
| OES - Houma | Offshore Energy Services | FE135-1 | | Rack No. HW-R10-L6-A04 | PUP JOINT (5.5" 26# 13CR5110 JFE LION PIN/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | |
| OES - Houma | Offshore Energy Services | FE135-2 | | Rack No. HW-R10-L6-A04 | PUP JOINT (5.5" 26# 13CR5110 JFE LION PIN/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | |
| OES - Houma | Offshore Energy Services | FE143-1 | | Rack No. HW-R10-L6-A07 | PUP JOINT (5.5" 26# 13CR5110 JFE LION CPLG/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE181-1 | | Rack No. ASSEMBLY SHOP | PUP JOINT (5.5" 26# 13CR5110 JFE LION PIN/PIN 10FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | |
| OES - Houma | Offshore Energy Services | FE136-1 | | Rack No. HW-R10-L6-A04 | PUP JOINT (5.5" 29.70# HYPER 2 13CR110 JFE LION CPLG/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | |
| OES - Houma | Offshore Energy Services | FE136-2 | | Rack No. HW-R10-L6-A04 | PUP JOINT (5.5" 29.70# HYPER 2 13CR110 JFE LION CPLG/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | |
| OES - Houma | Offshore Energy Services | FE179-1 | | Rack No. HW-R10-L1-A01 | SPECIAL OD PUP JOINT (5.5" 29.70# HP2 13CR110 VAM TOP HC CPLG/CPLG 7FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 7 | 0 | | |
| OES - Houma | Offshore Energy Services | FE152-1 | | Rack No. HW-R9-L1-A09 | TIMED PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC CPLG/PIN 4FT) (TIMED 180) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE152-2 | | Rack No. HW-R9-L1-A09 | TIMED PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC CPLG/PIN 4FT) (TIMED 135) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE152-3 | | Rack No. HW-R9-L1-A09 | TIMED PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC CPLG/PIN 4FT) (TIMED 90) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE152-4 | | Rack No. HW-R9-L1-A09 | TIMED PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC CPLG/PIN 4FT) (TIMED 225) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE153-1 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE153-2 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE153-3 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE153-4 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE153-5 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE153-6 | | Rack No. HW-R9-L1-A09 | PUP JOINT (5.5" 29.70# HYPER 2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE160-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE160-2 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE160-3 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE160-4 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC PIN/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE161-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC CPLG/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE161-2 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC CPLG/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE162-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC CPLG/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE162-2 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# HP2 13CR115 VAM TOP HC CPLG/PIN 6FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE163-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# 13CR115 HP2 VAM TOP HC CPLG/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | |
| OES - Houma | Offshore Energy Services | FE163-2 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# 13CR115 HP2 VAM TOP HC CPLG/PIN 8FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 8 | 0 | | |
| OES - Houma | Offshore Energy Services | FE164-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# 13CR115 HP2 VAM TOP HC CPLG/PIN 10FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | |
| OES - Houma | Offshore Energy Services | FE164-2 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29.70# 13CR115 HP2 VAM TOP HC CPLG/PIN 10FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 10 | 0 | | |
| OES - Houma | Offshore Energy Services | FE165-1 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29# 13CR115 HP2 VAM TOP HC CPLG/PIN 2FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 2 | 0 | | |
| OES - Houma | Offshore Energy Services | FE165-2 | | Rack No. HW-R10-L3-A10 | PUP JOINT (5.5" 29# 13CR115 HP2 VAM TOP HC CPLG/PIN 2FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 2 | 0 | | |
| OES - Houma | Offshore Energy Services | FE180-1 | | Rack No. HW-R10-L1-A01 | PUP JOINT (5.5" 29.70# 13CR115 JFE LION CPLG/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Houma | Offshore Energy Services | FE154-1 | | Rack No. HW-R10-L6-A10 | REJECTED COUPLINGS (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE154-2 | | Rack No. HW-R10-L6-A10 | REJECTED COUPLINGS (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE154-3 | | Rack No. HW-R10-L6-A10 | REJECTED COUPLINGS (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE154-4 | | Rack No. HW-R10-L6-A10 | REJECTED COUPLINGS (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE154-5 | | Rack No. HW-R10-L6-A10 | REJECTED COUPLINGS (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE156-1 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE156-2 | | Rack No. HW-R10-L6-A10 | COUPLING (5.5" 29.70# 13CR115 HP2 VAM TOP HC) (3RD CRATE) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE140-1 | | Rack No. HW-R10-L6-A07 | HALLIBURTON PUP JOINT (5" 23.20# 13CR5110 VAM TOP HC PIN/PIN 6FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-12 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-14 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-16 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-23 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-21 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-4 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-3 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-25 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-19 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-15 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-2 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-9 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-22 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-8 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES031-17 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 HYPT-2 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE235-1 | | Rack No. HW-R10-L2-A05 | COUPLING (3 1/2" 9.20# 13CR110 VARST-1) (LEVEL C) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES235-6 | | Rack No. HW-R10-L2-A05 | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES235-5 | | Rack No. HW-R10-L2-A05 | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES235-3 | | Rack No. HW-R10-L2-A05 | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES235-4 | | Rack No. HW-R10-L2-A05 | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | | TROKIA TA-3 | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-1 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-2 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-3 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-4 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 0 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-5 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-6 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-7 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-8 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-9 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-10 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-11 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-12 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-13 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-14 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-15 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-16 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-17 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-18 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-19 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-20 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE159-21 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 18.90# HP2 13CR110 JFE LION) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-2 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-3 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-4 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-5 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-6 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-7 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-8 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-9 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-10 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-11 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-12 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-13 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-14 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-15 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-16 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-17 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-18 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-19 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-20 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-21 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-22 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-23 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-24 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-25 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-26 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-27 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-28 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-29 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-30 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-31 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-32 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-33 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-34 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-35 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-36 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-37 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-38 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-39 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE112-40 | | Rack No. HW-FLOOR 2 | COUPLING (5 1/2" 26# VM13CR5110 VAM TOP HC) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-1 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 2 | 1 | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-2 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-3 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-4 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-5 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-6 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Houma | Offshore Energy Services | FE113-7 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-8 | | Rack No. HW-R10-L6-A10 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-9 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-10 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-11 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-12 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-13 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE113-14 | | Rack No. HW-R10-L2-A13 | COUPLING (4.5" 17.00# 13CR110 VAM TOP) | | GUNFLINT | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5036-1 | | Rack No. HW-R10-L2-A01 | CROSSOVER (3 1/2" 9.20# SUP13CR110KSI VARST-1 BOX X 3 1/2" 9.20# TSH-511 PIN 2 FT) (C-LEVEL) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5036-2 | | Rack No. HW-R10-L2-A01 | CROSSOVER (3 1/2" 9.20# 13CR5110Y VARST-1 BOX X 3 1/2" 9.20# TSH-511 BOX 2FT) (C LEVEL) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5233-1 | | Rack No. HW-R10-L2-A01 | CROSSOVER (5 1/2" 16.87# AF913-110Y STL BOX X 3.5" 9.20# VARST-1 PIN 2FT) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5037-1 | | Rack No. HW-R10-L2-A01 | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5037-2 | | Rack No. HW-R10-L2-A01 | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | | TROXIA TA-3 | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE110-1 | | Rack No. HW-R9-L6-A14 | FLOW COUPLING (4.5"17.00# VM13CR5110 VAM TOP BOX/PIN 8FT) | | GUNFLINT | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE110-2 | | Rack No. HW-R9-L6-A14 | FLOW COUPLING (4.5" 17.00# VM13CR5110 VAM TOP BOX/PIN 8FT) | | GUNFLINT | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE110-3 | | Rack No. HW-R9-L6-A14 | FLOW COUPLING (4.5" 17.00# VM13CR5110 VAM TOP BOX/PIN 8FT) | | GUNFLINT | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE110-4 | | Rack No. HW-R9-L6-A14 | FLOW COUPLING (4.5" 17.00# VM13CR5110 VAM TOP BOX/PIN 8FT) | | GUNFLINT | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE105-1 | | Rack No. HW-R10-L4-A01 | FLOW COUPLING ASSEMBLY (5 1/2" 26# VM13CR5110 VAM TOP HC BOX/PIN 8FT FLOW CPLG X 5 1/2" 26# VM13CR5110 VAM TOP HC CPLG/CPLG 6FT PUP JT X 5 1/2" 26# VM13CR5110 VAM TOP PIN/PIN 4FT PUP JT) | | GUNFLINT | EA | NEW | | 1 | 18 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE107-1 | | Rack No. HW-R10-L5-A01 | C.I.M ASSEMBLY (5 1/2" 26# VM13CR5110 VAM TOP HC CPLG/CPLG 14FT PUP JT X BOT CHEMICAL INJECTION MANDREL 5 1/2" 26# 13CR110 VAM TOP PIN/PIN (PN: H30B2500S8RN80) (S/N: 13743775) X 5 1/2" 26# VM13CR5110 VAM TOP HC CPLG/CPLG 14FT PUP JT X 5 1/2" 26# VM13CR5110 VAM TOP HC PIN/PIN 6FT PUP JT) | | GUNFLINT | EA | NEW | | 1 | 40 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE103-1 | | Rack No. HW-R10-L5-A01 | C.I.M ASSEMBLY (5 1/2" 26# 13-5-2-110 VAM TOP HC BOX/PIN 8FT FLOW CPLG X BOT CHEMICAL INJECTION MANDREL 5 1/2" 26# 13CR110 VAM TOP HC CPLG/CPLG (SN: 13743776) H30B2500S8RN8I) X 5 1/2" 26# VM13CR5110 VAM TOP HC PIN/PIN CPLG 10FT PUP JT) | | GUNFLINT | EA | NEW | | 1 | 24 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE102-1 | | Rack No. HW-R10-L4-A01 | HALLIBURTON RPT LANDING NIPPLE 3.437 ASSEMBLY (4 1/2" 17# VM13CR5110 VAM TOP CPLG/PIN 8FT PUP JT X 4 1/2" 17# VM13CR5110 VAM TOP BOX/PIN 10FT FLOW CPLG X HES NIPPLE 4 1/2" 17# 13CR5110 VAM TOP BOX/PIN (SN: 408150-1) X 4 1/2" 17# VM13CR5110 VAM TOP BOX/PIN 10FT FLOW CPLG) | | GUNFLINT | EA | NEW | | 1 | 30 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE115-1 | | Rack No. HW-R10-L1-A14 | BAKER PREMIER PACKER (4 1/2" 17.00# 13CRM110 CPLG/PIN VAM TOP 10FT) (1084890-02) | | STOCK | EA | NEW | | 1 | 10 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-3 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-4 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-5 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE173-6 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 4FT) | | KATMAI #1 & 2 | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE174-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 6FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE174-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 6FT) | | KATMAI # 1 & 2 | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE175-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 2FT) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE175-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 2FT) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE176-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH511 BOX/PIN 8FT) | | | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE176-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH511 BOX/PIN 8FT) | | | EA | NEW | | 1 | 8 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE177-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 10FT) | | | EA | NEW | | 1 | 10 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE177-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 10FT) | | | EA | NEW | | 1 | 10 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE178-1 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 15FT) | | | EA | NEW | | 1 | 15 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE178-2 | | Rack No. RACK #4 | PUP JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN 15FT) | | | EA | NEW | | 1 | 15 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5019-1 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 20 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5019-2 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 20 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5019-3 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 20 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5019-4 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 20 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-1 | | Rack No. HW-FLOOR 2 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-2 | | Rack No. HW-FLOOR 2 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-3 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-4 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-5 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 CPLG/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5030-6 | | Rack No. HW-R10-L2-A03 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 CPLG/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-2 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-3 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-4 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-5 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-6 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-7 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-8 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5035-9 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-2 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-3 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-4 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-5 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-6 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5040-7 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5238-1 | | Rack No. HW-R10-L3-A04 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5238-2 | | Rack No. HW-R10-L2-A04 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5239-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 CPLG/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5239-2 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5239-3 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5239-4 | | Rack No. HW-R10-L2-A07 | PUP JOINT (3.5" 9.20# 13CR5110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5266-1 | | Rack No. RACK #6 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5266-2 | | Rack No. RACK #6 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | | 0 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Houma | Offshore Energy Services | FES038-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 2FT) (C-LEVEL) | | | EA | NEW | | 1 | 2 | 0 | | |
| OES - Houma | Offshore Energy Services | FES039-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FES039-2 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FES039-3 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FES042-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 10FT) (C-LEVEL) | | | EA | NEW | | 1 | 10 | 0 | | |
| OES - Houma | Offshore Energy Services | FES043-1 | | Rack No. HW-R10-L3-A01 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 8FT) (C-LEVEL) | | | EA | NEW | | 1 | 8 | 0 | | |
| OES - Houma | Offshore Energy Services | FES045-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FES047-1 | | Rack No. HW-R10-L5-A07 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 14FT) (C-LEVEL) | | | EA | NEW | | 1 | 14 | 0 | | |
| OES - Houma | Offshore Energy Services | FES048-1 | | Rack No. HW-R10-L3-A01 | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | | EA | NEW | | 1 | 12 | 0 | | |
| OES - Houma | Offshore Energy Services | FE109-1 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE109-2 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE109-3 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE109-4 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE109-5 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE109-6 | | Rack No. HW-R9-L5-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE109-7 | | Rack No. HW-R9-L6-A12 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE108-1 | | Rack No. HW-R9-L6-A09 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 14FT) | | | EA | NEW | | 1 | 14 | 0 | | |
| OES - Houma | Offshore Energy Services | FE108-2 | | Rack No. HW-R9-L6-A09 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 14FT) | | | EA | NEW | | 1 | 14 | 0 | | |
| OES - Houma | Offshore Energy Services | FE108-3 | | Rack No. HW-R9-L6-A09 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 14FT) | | | EA | NEW | | 1 | 14 | 0 | | |
| OES - Houma | Offshore Energy Services | FE108-4 | | Rack No. HW-R9-L6-A09 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 14FT) | | | EA | NEW | | 1 | 14 | 0 | | |
| OES - Houma | Offshore Energy Services | FE108-5 | | Rack No. HW-R9-L6-A09 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP CPLG/PIN 14FT) | | | EA | NEW | | 1 | 14 | 0 | | |
| OES - Houma | Offshore Energy Services | FE117-1 | | Rack No. HW-R9-L1-A06 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 2FT) | | | EA | NEW | | 1 | 2 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-1 | | Rack No. HW-R9-L1-A11 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-2 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-3 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-4 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-5 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-6 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-7 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-8 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-9 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-10 | | Rack No. HW-R9-L6-A14 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE118-2 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4 1/2" 17.00# VM13CR5110 VAM TOP 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE124-1 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 15FT) | | | EA | NEW | | 1 | 15 | 0 | | |
| OES - Houma | Offshore Energy Services | FE129-1 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 10FT) | | | EA | NEW | | 1 | 10 | 0 | | |
| OES - Houma | Offshore Energy Services | FE129-2 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 10FT) | | | EA | NEW | | 1 | 10 | 0 | | |
| OES - Houma | Offshore Energy Services | FE130-1 | | Rack No. HW-R10-L2-A15 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 8FT) | | | EA | NEW | | 1 | 8 | 0 | | |
| OES - Houma | Offshore Energy Services | FE130-2 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 8FT) | | | EA | NEW | | 1 | 8 | 0 | | |
| OES - Houma | Offshore Energy Services | FE131-1 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 10FT) | | | EA | NEW | | 1 | 10 | 0 | | |
| OES - Houma | Offshore Energy Services | FE131-2 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 10FT) | | | EA | NEW | | 1 | 10 | 0 | | |
| OES - Houma | Offshore Energy Services | FE132-1 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE132-2 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE133-1 | | Rack No. HW-R10-L2-A13 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE137-1 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 2FT) | | | EA | NEW | | 1 | 2 | 0 | | |
| OES - Houma | Offshore Energy Services | FE137-2 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 2FT) | | | EA | NEW | | 1 | 2 | 0 | | |
| OES - Houma | Offshore Energy Services | FE138-1 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE138-2 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION CPLG/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE139-1 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE139-2 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE139-3 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE139-4 | | Rack No. HW-R10-L2-A08 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE141-1 | | Rack No. HW-R10-L6-A07 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE141-2 | | Rack No. HW-R10-L6-A07 | PUP JOINT (4.5" 18.90# HYPER 2 13CR110 JFE LION PIN/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE166-1 | | Rack No. HW-R9-L5-A12 | PUP JOINT (4.5" 18.90# 13CR5110 VAM TOP 9FT CPLG/PIN) (NOTE: CPLG IS 17#) | | | EA | NEW | | 1 | 9 | 0 | | |
| OES - Houma | Offshore Energy Services | FE167-1 | | Rack No. HW-R10-L6-A04 | PUP JOINT (4.5" 18.90# 13CR5110 JFE LION PIN/PIN 20FT) | | | EA | NEW | | 1 | 20 | 0 | | |
| OES - Houma | Offshore Energy Services | FE119-1 | | Rack No. HW-R9-L1-A06 | PUP JOINT (5 1/2" 26# VM13CR5110 VAM TOP CPLG/PIN 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE111-1 | | Rack No. HW-R9-L6-A14 | PUP JOINT (5.1/2" 26# VM13CR5110 VAM TOP CPLG/PIN 6FT) | | | EA | NEW | | 1 | 6 | 0 | | |
| OES - Houma | Offshore Energy Services | FE120-1 | | Rack No. HW-R9-L1-A11 | PUP JOINT (5.1/2" 29.70# 13CR115 HYPTP2 VAM TOP HC 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE121-1 | | Rack No. HW-FLOOR 2 | PUP JOINT (5.1/2" 29.70# 13CR115 VAM TOP HC 4FT) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FES240-1 | | Rack No. HW-R10-L2-A07 | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FES240-2 | | Rack No. HW-R10-L2-A07 | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | | | EA | NEW | | 1 | 4 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-1 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-2 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-3 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-4 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-5 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-6 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-7 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-8 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-9 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-10 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-11 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-12 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-13 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-14 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-15 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-16 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-17 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FE172-18 | | Rack No. RACK #4 | RANGE 3 JOINT (3.5" 10.20# HP2 13CR110 TSH 511 BOX/PIN) | | | EA | NEW | | 1 | 40 | 0 | | |
| OES - Houma | Offshore Energy Services | FES060-1 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | |
| OES - Houma | Offshore Energy Services | FES060-2 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | |
| OES - Houma | Offshore Energy Services | FES060-3 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | |
| OES - Houma | Offshore Energy Services | FES060-4 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | |
| OES - Houma | Offshore Energy Services | FES060-5 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | |
| OES - Houma | Offshore Energy Services | FES060-6 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | |
| OES - Houma | Offshore Energy Services | FES060-7 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | |
| OES - Houma | Offshore Energy Services | FES060-8 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | |
| OES - Houma | Offshore Energy Services | FES060-9 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | |
| OES - Houma | Offshore Energy Services | FES060-10 | | Rack No. HW-R10-L2-A07 | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 30 | 0 | | |
| OES - Houma | Offshore Energy Services | FES063-1 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES063-2 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES063-3 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | 0 | | |
| OES - Houma | Offshore Energy Services | FES063-4 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Houma | Offshore Energy Services | FE5063-5 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110V MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5063-6 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110V MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5063-7 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110V MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE5063-8 | | Rack No. HW-R10-L2-A06 | RANGE 2 JOINT (3.5" 9.20# 13CR110V MOD TSH 511 BOX/PIN) (C-LEVEL) | | | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE106-1 | | Rack No. HW-R10-L3-A01 | RANGE JOINT (5 1/2" 29.70# 13CR115 HYPTYP2 VAM TOP HC CPLG/PIN 40FT) | | | EA | NEW | | 1 | 40 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE106-2 | | Rack No. HW-R10-L3-A01 | RANGE JOINT (5 1/2" 29.70# 13CR115 HYPTYP2 VAM TOP HC CPLG/PIN 40FT) | | | EA | NEW | | 1 | 40 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE101-1 | | Rack No. HW-R7-L2-A01 | BAKER IWS ASSEMBLY (4.5" 17# 13CR5110 VAM TOP CPLG/CPLG BAKER GAUGE MANDREL (1369426S) X 4.5" 17# 13CR5110 VAM TOP PIN/PIN UPPER SLIDING SLEEVE (1110285-02) X 4.5" 17# 13CR5110 VAM TOP TIMED CPLG X 4.5" 17# 13CR5110 VAM TOP PINXPIN LOWER SLIDING SLEEVE (1110296-02) X 4.5" 17# 13CR5110 VAM TOP BOX BAKER QUICK CONNECT (1088638-01) | | | EA | NEW | | 1 | 0 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE116-1 | | Rack No. HW-FLOOR 2 | SPLICE SUB (4 1/2" 17.00# VM13CR5110 VAM TOP) | | | EA | NEW | | 1 | 2 | | 0 | | |
| OES - Houma | Offshore Energy Services | FE104-1 | | Rack No. HW-R10-L6-A04 | PUP JOINT (5 1/2" 26# VM13CR5110 VAM TOP HC CPLG/PIN 8FT) | | | EA | NEW | | 1 | 24 | | 0 | | |
| Oil States - Houston | Oil States Energy Services | 12117 | 121824-03, 121824-01 | | BIN 600 GLC S/N 121824-03, 121824-01 | | | EA | NEW | | 1 | | | 0 | | |
| Oil States - Houston | Oil States Energy Services | 15170 | 170143-01 | | 2" 900 LRF, S/N 170143-01 | | | EA | NEW | | 1 | | | 0 | | |
| Oil States - Houston | Oil States Energy Services | 12117 | 121824-03 & 121824-01 | | BIN 600 GLC S/N 121824-03, 121824-01 | | | EA | NEW | | 1 | | | 0 | | |
| Oil States - Houston | Oil States Energy Services | 80025.01 | 80025.01-0003-01 | | GA00001436 / 24"-900 ANSI HYDROTAP ASSY W/VALVE | | | EA | NEW | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2035504-02 | 9612766503S0 | | ASSY, DEBRIS CAP, 18-3/8" OD MCPAC | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2035804-07 | 4503046069-04-16 | | ASSY, 6"-10K 5-AX GASKET, W/ TWO DOVE | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2124118-01 | 11233630-1 | | ASSY, TREE CAP, BP TROIKA | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2124123-01 | 9610181705Q | | ASSY, TREE CAP SHIPPING SKID | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2124620-01 | 1118667S-01 | | ASSY, TEST CAP, TREE RUNNING TOOL | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2155653-01 | NS620018807601100Q | | SHEAR PIN, G2 BORE PROTECTOR,TEFLON | | | EA | A-NU | | 6 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2156132-01 | 9523237807220 | | ASSY, COMBINATION (TREE/TREE CAP) | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2166241-03 | NS6200210363190000 | | MECHANICAL SPARES, 4.375 SSR PLUG | | | EA | A-NU | | 4 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2181629-14 | 11114755H-01 | | ASSEMBLY, PRESSURE CAP, 6"-10K FLOWLINE | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2185425-14-08 | 1023229-39 | | GENERIC EL ROV LOOP 75 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2185425-14-08 | 1023229-42 | | GENERIC EL ROV LOOP 75 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2197017-01-03 | 478 | | Surface Modem, +-15V Version, PSK | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2197017-01-03 | 503 | | Surface Modem, +-15V Version, PSK | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2197088-13-62 | 1054974-629 | | GENERIC EL ROV PARK 125 W/ INSERT | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2197088-17-72 | 1047684-S0 | | ROV Test Conn., EL male, fixed 7-way | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2197088-17-72 | 1047684-S1 | | ROV Test Conn., EL male, fixed 7-way | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2197091-47 | NS620021319700200Q | | TRANSFORMER, 120V IN, 690V OUT / 3000VA | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2197091-47 | NS620021515503800Q | | TRANSFORMER, 120V IN, 690V OUT / 3000VA | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2197095-47 | 740 | | PCB, SOP DIPLEXER, SURFACE | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2197095-47 | 775 | | PCB, SOP DIPLEXER, SURFACE | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2216807-12 | NS620021702700100Q | | SPLIT LOAD RING, FOR 4.883" NOM RLH-2 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2216807-34 | NS620021702700200Q | | UPPER LOAD RING, 5.25 WIRELINE PLUG | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 222255-01-32 | 4511625379-50-19 | | DUMMY WEIGHT (DIU REPLACEMENT) | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223026-73 | 121419730-01 | | FWEKAT - SPCU 690VAC | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223026-73-00-98 | 121418629-01 | | FWEKAT - SPCU INST & COMM SPARES | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223026-73-00-98 | 121458904-01 | | FWEKAT - SPCU INST & COMM SPARES | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223055-11 | 121384751-01 | | FWEKAT - SCM MC - XT W/ ACCU | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223055-21 | 121396625-01 | | FWEKAT - DIU | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223055-21 | 121458050-01 | | FWEKAT - DIU | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223055-21 | 121396627-01 | | FWEKAT - DIU | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223135-56 | 121404465-01 | | PETU-AC-SOP-DSL-ODI | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223208-93-01 | 121391157-02 | | IC CABLE FOR POWER 1200V DC TYPE 2 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223208-93-01 | 121391157-01 | | IC CABLE FOR POWER 1200V DC TYPE 2 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223210-21 | 4502118130-1 | | SCM/ SAM TRANSPORT FRAME | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223262-46 | 112896839-01 | | DUMMY SCM DOUBLE STMC 15-02-C & 15-03-C) | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223303-78 | 1 | | Ex J.-Box 690VAC, NEC, 3 Quads, 35mm² | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223383-18 | 121366058-01 | | SOM - (4HE) - 3A - 2x ETHERNET | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223383-18 | 121478192-03 | | SOM - (4HE) - 3A - 2x ETHERNET | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223388-89 | 121366178-01 | | MCS SERVER PC 2U | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223388-89 | 121485344-01 | | MCS SERVER PC 2U | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223388-92 | 121414591-01 | | Microbox IPC 427D | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223388-98 | 9A4CB21948 | | (LAPTOP CF-31 / RUGGEDIZED) | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223389-12 | 9DTCC26341 | | LAPTOP PANASONIC TOUGHBOOK, CF-54 | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223389-12 | 9DTCC26304 | | LAPTOP PANASONIC TOUGHBOOK, CF-54 | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223473-17-03 | 121391147-01 | | INTERCONNECTION CABLE - PETU | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223473-17-03 | 121391147-02 | | INTERCONNECTION CABLE - PETU | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223518-69 | 158437-001 | | GENERIC. T&F PLATE FOR FREE PLATE, 11/3W | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223520-62 | 0158389-001 | | GENERIC. T&F PLATE FOR FREE PLATE, 20/D- | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223520-68 | 0159618-001 | | FWEKAT - LOGIC FREE STAB PLATE 20/D-WAY | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 223997-70 | 4502094761-1 | | INSPECTION FRAME ASSEMBLY FOR SCM | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2244635-11 | 121530442-1 | | ASSEMBLY FOR OFFSHORE, INTERNAL TREE CAP | | | EA | C-UR | | 1 | | 1 | 0 | | |
| One Subsea - Berwick | One Subsea | 2248632-02 | NS620021702700300Q | | CC-SEAL, .888 OD X .640 ID X .124" C.S. | | | EA | A-NU | | 192 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2293251-05 | 121370534-01 | | ASSY, INSERT, F/CC405R SUBSEA CONTROL | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2361282-06 | NS620021319700900Q | | ANALOG INPUT, AI 8XU/I/RTD/TC ST, 16 BIT | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2361282-06 | NS620021515502200Q | | ANALOG INPUT, AI 8XU/I/RTD/TC ST, 16 BIT | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2361282-12 | NS620021319701000Q | | SIMATIC S7-1500, DIGITAL INPUT MODULE, | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2361282-12 | NS620021515502400Q | | SIMATIC S7-1500, DIGITAL INPUT MODULE, | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2394980-02 | 4511292813-10-2 | | ASSY, WIRELINE PLUG, 15K WP, | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2394980-02 | 4511992677-120-1 | | ASSY, WIRELINE PLUG, 15K WP, | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2394980-02 | 4511992677-110-1 | | ASSY, WIRELINE PLUG, 15K WP, | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2394981-02 | 4511992677-90-1 | | ASSY, WIRELINE PLUG, 5.75IN NOM, 15K WP, | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2394981-02 | 1209508217-01 | | ASSY, WIRELINE PLUG, 5.75IN NOM, 15K WP, | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2394981-02 | 4511220618-20-01 | | ASSY, WIRELINE PLUG, 5.75IN NOM, 15K WP, | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2396182-02-02 | NS620021903900100Q | | SPARES, PERIODIC 1,RECEIVED GOODS REPAIR | | | EA | A-NU | | 3 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2400888-02-01 | NS620021896600100Q | | SPARES, ROUTINE, RECEIVED GOODS REPAIR | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2400889-02-01 | NS620020772800100Q | | SPARES, ROUTINE, RECEIVED GOODS REPAIR | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2604283-01-01 | 121509895-1 | | ASSY, PRODUCTION SPOOLTREE, EFAT, 5-1/8 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2605338-01 | 121397669-01 | | CONVERSION ASSY, G3 SPOOLTREE, WITH EFAT | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 263093-01 | 4504320796-01-01 | | UPPER MANDREL, WEIGHT SET TEST TOOL | | | EA | B-RP | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2711520-86 | NS620021319701100Q | | SIMATIC S7-1500, CPU 1515-2 PN | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2711520-86 | NS620021515504200Q | | SIMATIC S7-1500, CPU 1515-2 PN | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2731061-04 | 11511-X01384-06 | | GASKET, RING, 18-3/4 VETCO TYPE ' VX-2' | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2731384-01 | 4501291492-3-1 | | 4.767" Tubing Hanger Upper Plug 'HH' Iri | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2731384-02-01 | 4504261958-01-1 | | ASSY, WIRELINE PLUG, UPPER, 4.767 IN. | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2731385-01 | 4504093961-2-1 | | OBSOLETED & SUPERSEDED BY 2731385-01-01 | | | EA | C-UR | | 1 | | | 0 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| One Subsea - Berwick | One Subsea | 2748033-01 | 45353783-01-01 | | WIRELINE PLUG, 5.25" DIA, METAL AND | | | EA | C-UR | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2748158-01 | NS62002106980010000 | | SPECIAL, BUTTON HD HEX SOC SCREW | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2762726-05 | NS62002131970050000 | | DISCONT. (LIGHT, UNIVERSAL, 18 W, 230 V) | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2762726-05 | NS62002151550320000 | | DISCONT. (LIGHT, UNIVERSAL, 18 W, 230 V) | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2788005-01 | NS62002188940010000 | | MACHINED 'S' SEAL, 8.125" BORE, W/ GROOV | | | EA | A-NU | | 18 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2826264-02 | NS62002131970120000 | | DIGITAL OUTPUT, DQ 16x 230V AC/2A ST | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 2826264-02 | NS62002151550230000 | | DIGITAL OUTPUT, DQ 16x 230V AC/2A ST | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619044-01-08-09 | NS62002006100020000 | | SPARE FILTER MAT, 289 x 289 x 17 mm | | | EA | A-NU | | 2 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619082-01-62 | NS62002131970060000 | | AC CURRENT TRANSMITTER, CT500 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619082-01-62 | NS62002151550310000 | | AC CURRENT TRANSMITTER, CT500 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619082-01-64 | NS62002131970130000 | | AC VOLTAGE TRANSMITTER, VT500 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619082-01-64 | NS62002151550300000 | | AC VOLTAGE TRANSMITTER, VT500 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619088-10-11-03 | NS62002131970140000 | | SOCKET, RAIL MOUNTABLE, 125 V AC, USA | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619088-10-11-03 | NS62002151550340000 | | SOCKET, RAIL MOUNTABLE, 125 V AC, USA | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619089-12-17 | NS62002131970150000 | | SPEED CONTROL, +20°C / +55°C, 230 V | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619089-12-17 | NS62002151550330000 | | SPEED CONTROL, +20°C / +55°C, 230 V | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619089-28-10 | NS62002131970160000 | | SWITCH, FLUSH MOUNTING, 63 A, 37 KW | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619089-28-10 | NS62002151550410000 | | SWITCH, FLUSH MOUNTING, 63 A, 37 KW | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619091-01-50-10 | NS62002131970170000 | | POWER SUPPLY UNIT, TRIO, 24 V DC, 10 A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619091-01-50-10 | NS62002151550350000 | | POWER SUPPLY UNIT, TRIO, 24 V DC, 10 A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619091-02-49 | NS62002131970180000 | | COIL, INDUCTANCE, 30 MH, MAX 4A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619091-02-49 | NS62002151550400000 | | COIL, INDUCTANCE, 30 MH, MAX 4A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-01-41-06 | NS62002130410010000 | | CIRCUIT BREAKER, C, 6 A, 2 NO | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-01-41-10 | NS62002130410020000 | | CIRCUIT BREAKER, C, 10 A, 2 NO | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-01-41-50 | NS62002130410030000 | | CIRCUIT BREAKER, C, 50 A, 2 NO | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-01-45-16 | NS62002130410040000 | | CIRCUIT BREAKER, C, 16 A, 2 NO, UL | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-05-04 | NS62002130410050000 | | AUX. SWITCH FOR CIRCUIT BREAKER | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-05-04 | NS62002151550200000 | | AUX. SWITCH FOR CIRCUIT BREAKER | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-14-14-02 | NS62002130410060000 | | FUSE GLASS-TUBE | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-14-16-02 | NS62002130410070000 | | FUSE, GLASS, TUBE 1A MIDDLE | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619092-22-01 | NS62002020610010000 | | FUSE, 22 x 58, gL8, 400 V DC, 63 A | | | EA | A-NU | | 4 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619093-08-03 | NS62002131990010000 | | TEMPERATURE SENSOR, PT100 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619093-08-03 | NS62002151550290000 | | TEMPERATURE SENSOR, PT100 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-02-22 | NS62002131990020000 | | POWER SUPPLY, S7-1500, 24 V, 1.3 A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-02-22 | NS62002151550430000 | | POWER SUPPLY, S7-1500, 24 V, 1.3 A | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-34-01 | NS62002131990030000 | | AUTO-CONFIGURATION ADAPTER, ACA 21-USB | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-34-01 | NS62002151550260000 | | AUTO-CONFIGURATION ADAPTER, ACA 21-USB | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-42-03 | NS62002131990040000 | | FAST ETHERNET SWITCH, MANAGED, 16 PORTS | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-42-03 | NS62002151550270000 | | FAST ETHERNET SWITCH, MANAGED, 16 PORTS | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-63-01 | NS62002131990050000 | | IND. FIREWALL/SECURITY-ROUTER, EAGLEOne | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-11-63-01 | NS62002151550250000 | | IND. FIREWALL/SECURITY-ROUTER, EAGLEOne | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-63-25 | NS62002131990060000 | | 17" FHD RACKMOUNT DISPLAY PANEL, RP-F617 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-63-25 | NS62002151550180000 | | 17" FHD RACKMOUNT DISPLAY PANEL, RP-F617 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-67-28 | NS62002131990070000 | | Server, LANTIME M600/MRS, 100-240 VAC | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-67-28 | NS62002151550190000 | | Server, LANTIME M600/MRS, 100-240 VAC | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-69-02 | NS62002131990080000 | | IEC CONNECTOR, PX058B, 240 V AC | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-69-02 | NS62002151550210000 | | IEC CONNECTOR, PX058B, 240 V AC | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-70-11 | NS62002131990090000 | | KEYBOARD, TKS-088C-TOUCH-SCHUBL-PS/2-US | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-70-11 | NS62002151550170000 | | KEYBOARD, TKS-088C-TOUCH-SCHUBL-PS/2-US | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619095-77-04 | NS62002126480010000 | | GRAPHIC CARD, MATROX C680-E4GBF, 4 GB | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619097-31 | NS62002131990100000 | | REDUD. MODULE QUINT-ORING/24DC/2X10/1X20 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619097-31 | NS62002151550360000 | | REDUD. MODULE QUINT-ORING/24DC/2X10/1X20 | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619098-17 | NS62002131990110000 | | CAPACITOR, FILM, 1000V AC, 2400V DC, 1µF | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 619098-17 | NS62002151550390000 | | CAPACITOR, FILM, 1000V AC, 2400V DC, 1µF | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 702647-30-61 | NS62002188930010000 | | O RING, SIZE AS-568-206 .484 ID X | | | EA | A-NU | | 78 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 77004494 | NS62002131990120000 | | ROOF MOUNTED CABINET EXHAUST FAN | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 77004494 | NS62002151550280000 | | ROOF MOUNTED CABINET EXHAUST FAN | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 77006739 | NS62002131990130000 | | KVM OVER IP SWITCH, DKX3-108, 8-PORT | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 77006739 | NS62002151550370000 | | KVM OVER IP SWITCH, DKX3-108, 8-PORT | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | 7K-9034872 | NS62002131990140000 | | S7-1X00 FLASH MEMORY CARD, 12 MB | | | EA | A-NU | | 1 | | | 0 | | |
| One Subsea - Berwick | One Subsea | CM-018106-15 | 123658-1 | | MQC, PLATE ASSY, IWOCS, REM 12 WAY/ LINE | | | EA | C-UR | | 1 | | | 0 | | |
| Proserve - Houston | Proserve | 71606.A | | | SIMULATOR,MFR:PROSERV,PN:1191-05,TYP:GENERATION 3 GAUGE,EQ MODEL:PTG750 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 10000 | | |
| Proserve - Houston | Proserve | 71612.A | | | FRAME,MFR:PROSERV,PN:065419,TYP:SHIPPING,APPLI:SUBSEA CONTROL MODULE; NOBLE GUNFLINT | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 20000 | | |
| Proserve - Houston | Proserve | 71574.A | | | COMPUTER,MFR: HP,TYP:MONITOR,RTNG N/A,DISPLAY ELITE LCD,SPEC SIZE: 23 IN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 399.3 | | |
| Proserve - Houston | Proserve | 71573.A | | | CABLE,MFR: GISMA,TYP OCH SEM TEST,CONDCTR DIA N/A,CONDCTR QTY N/A,VOLT N/A,TERM TYP (61) PIN,SPEC:W/ PIG TAILS, CONNECTION TYPE: MALE | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 2500 | | |
| Proserve - Houston | Proserve | 71575.A | | | CONNECTOR;MFR: TEST-TRONIC,TYP TEST,DIM N/A,CONN 1 TYP FEMALE,MATL N/A,MATL GR N/A,SPEC TERMINAL TYPE: (12) PIN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 2000 | | |
| Proserve - Houston | Proserve | 71604.A | | | SIMULATOR,MFR:PROSERV,PN:033794MFR: SKOFLO | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 7500 | | |
| Proserve - Houston | Proserve | 71610.A | | | CONNECTOR;MFR:PROSERV,PN:094788,TYP TEST,APPLI UPC TOP ASSEMBLY,EQ MODEL:HYDRALIGHT BFOSM | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | | 36167 | | |
| Proserve - Houston | Proserve | 71617.A | | | VALVE, RELIEF,MFR:PROSERV,PN:008701,PRESS RANGE 2.5-25000 PSI,SPCL FEATRS POWER: 1/4 HP | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 6 | | | 411.38 | | |
| Proserve - Houston | Proserve | 71614.A | | | KIT;MFR:PROSERV,PN:094966,TYP PRECHARGE,COMPRISING NITROGEN BOOSTER, 13500 PSI, MANUAL CHARGING PRESSURE SELECTOR, AIR PILOT SHUTDOWN SWITCHES, CARBON STEEL OPEN SKID ON ROLL DOLLY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 10000 | | |
| Proserve - Houston | Proserve | 71615.A | | | KIT;MFR:PROSERV,PN:098953,TYP PRECHARGE,COMPRISING NITROGEN BOOSTER, 4500 PSI MANUAL CHARGING PRESSURE SELECTOR, AIR PILOT SHUTDOWN SWITCHES, CARBON STEEL OPEN SKID ON ROLL DOLLY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 10000 | | |
| Proserve - Houston | Proserve | 71616.A | | | PUMP;MFR:PROSERV,PN:077835,STG QTY 6,FLW RATE 5 GAL/MIN,INLT SZ 1-1/4 IN,INLET CONN TYP RF FLANGE,OUTLT SZ 1-1/4 IN,OUTLT CONN TYP RF FLANGE,OPRTG PRESS 70 PSI,DRVR MOTOR | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | | 5642 | | |
| Proserve - Houston | Proserve | 72271.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:ABB-MCB037-000,TYP MINI,AMP 10,POLES 2P,SPCL FEATRS TRIP CHARACTERISTICS: C | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | | 44.08 | | |
| Proserve - Houston | Proserve | 72296.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:ABB-RCB001-000,TYP RESIDUAL CURRENT,AMP 6,POLES 2P,SPCL FEATRS TRIP CHARACTERISTICS: C, 1P+ N | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | | 141.98 | | |
| Proserve - Houston | Proserve | 72307.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:044827,TYP MINI,AMP 16,POLES 2P,SPCL FEATRS TRIP CHARACTERISTICS: D | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | | 52.04 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Proserve - Houston | Proserve | 72317.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:ABB-MCB026-000,TYP MINI,AMP 4,POLES 2P,SPCL FEATRS TRIP CHARACTERISTICS: C | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 47.64 | | | |
| Proserve - Houston | Proserve | 72328.A | | | CONTACT, AUXILIARY,MFR:PROSERV,PN:ABB-ACD06-000MFR: ABB,CNTCT ARRGEMNT 1NO-1NC,SPEC SIDE MOUNT,APPLI 5200 MINI CIRCUIT BREAKER | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 25.96 | | | |
| Proserve - Houston | Proserve | 72333.A | | | FUSE, CARTRIDGE,MFR:PROSERV,PN:MIS-ELE290-000,AMP 1,MATL GLASS,DIM DIA 5 X LG 20 mm,SPEC T LBC,TYP ANTI SURGE,PCKG QTY 10 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 1.3 | | | |
| Proserve - Houston | Proserve | 72275.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:ABB-MCB038-000,TYP MINI,AMP 1,POLES 2P,SPCL FEATRS TRIP CHARACTERISTICS: C | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 51.2 | | | |
| Proserve - Houston | Proserve | 72285.A | | | BREAKER, CIRCUIT,MFR:PROSERV,PN:ABB-MCB022-000,TYP MINI,AMP 2,VOLT 400,POLES 2P,WD 35 mm,LG 88 mm,SPCL FEATRS G:250 KG, DP: 69 MM, ENCLOSURE: IP20, TRIP CHARACTERISTICS: C | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 54.34 | | | |
| Proserve - Houston | Proserve | 71613.A | | | UNIT,MFR:PROSERV,PN:065405,TYP ELECTRICAL POWER,SPCL FEATRS QTY: 5/BOX | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 49231 | | | |
| Proserve - Houston | Proserve | 62440.A | | | VALVE, BALL,MFR:PROSERV,PN:070578,CONN 1 SZ 1/2 IN,CONN 1 TYP FNPT,CL 10000 PSI,STYL 2-WAY | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 49.7 | | | |
| Proserve - Houston | Proserve | 72305.A | | | VALVE, RELIEF,MFR:PROSERV,PN:082577,CONN SZ 1/2 IN,CONN TYP FNPT,PRESS RANGE 10000 PSI,MN:RLSON | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 620.12 | | | |
| Proserve - Houston | Proserve | 72306.A | | | VALVE, RELIEF,MFR:PROSERV,PN:P000255,CONN SZ 3/8 X 3/8 IN,CONN TYP MP X FNPT,PRESS RANGE 20000 PSI,SET PRESS 16.5K PSI,BDY MATL SS,MATL GR 316,SFTGDS SEAL: BUNA N,SPCL FEATRS ADJUSTABLE (INTERNAL),MN:RL37 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 411.38 | | | |
| Proserve - Houston | Proserve | 72308.A | | | GAUGE, PRESSURE,MFR:PROSERV,PN:082557,PRESS RANGE 10000 PSI,DIAL SZ 2.5 IN,CONN SZ 1/4 IN,CONN TYP MNPT,CONN LCTN LOWER BACK,MNTG FCLTY PANEL,CASE MATL SS 316,FILLED GLYCERINE,SPCL FEATRS BUILT-IN SNUBBER, BLOWOUT BACK | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 166.02 | | | |
| Proserve - Houston | Proserve | 72309.A | | | GAUGE, PRESSURE,MFR:PROSERV,PN:082562,PRESS RANGE 10000 PSI,DIAL SZ 4 IN,CONN SZ 1/4 IN,CONN TYP MALE NPT,CONN LCTN LOWER BACK,MNTG FCLTY PANEL,CASE MATL SS 316,FILLED GLYCERINE,SPCL FEATRS BUILT-IN SNUBBER, BLOWOUT BACK | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 271.76 | | | |
| Proserve - Houston | Proserve | 72310.A | | | GAUGE, PRESSURE,MFR:PROSERV,PN:082564,PRESS RANGE 30000 PSI,DIAL SZ 4 IN,CONN SZ 1/4 IN,CONN TYP FEMALE HP,CONN LCTN LOWER BACK,MNTG FCLTY PANEL,CASE MATL SS 316,FILLED GLYCERINE,SPCL FEATRS BLOWOUT BACK | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 424.08 | | | |
| Proserve - Houston | Proserve | 72311.A | | | TRANSMITTER, PRESSURE,MFR:PROSERV,PN:081604,RANGE 330-10000 PSI,O/P 4-20 mA,CONN SZ 1/4 IN,CONN TYP FEMALE NPT,DIAPH MATL SS 316,ELEC CONN 1/2 IN MALE NPT,SPCL FEATRS FM APPROVAL EXP | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 3290.36 | | | |
| Proserve - Houston | Proserve | 72312.A | | | TRANSMITTER, PRESSURE,MFR:PROSERV,PN:ROS-PT142-000,RANGE 660-20000 PSI,O/P 4-20 mA,CONN SZ 1/4 IN,CONN TYP FEMALE NPT,DIAPH MATL SS 316,ELEC CONN 1/2 IN MALE NPT,SPCL FEATRS EXP | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 4057.44 | | | |
| Proserve - Houston | Proserve | 72313.A | | | VALVE, BALL,MFR:PROSERV,PN:081862,OPRTD LOCKING HANDLE,CONN 1 SZ 1 IN,CONN 1 TYP FEMALE NPT,BDY MATL SS,MATL GR 316,STYL 2 WAY,SFTGDS SEAL: PTFE,SPCL FEATRS PRESSURE: 6000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 1220 | | | |
| Proserve - Houston | Proserve | 72314.A | | | VALVE, BALL,MFR:PROSERV,PN:P000263,CONN 1 SZ 3/8 IN,CONN 1 TYP FEMALE MP,BDY MATL SS,MATL GR 316,STYL 2 WAY,SFTGDS SEAL: BUNA,SPCL FEATRS PRESSURE: 20000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 953.82 | | | |
| Proserve - Houston | Proserve | 72315.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:076589,CONN 1 SZ 1/4 IN,CONN 1 TYP FEMALE NPT,DSGN RTNG 10000 PSI,MATL SS,MATL GR 316,SFTGDS SEAL: PTFE | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 175 | | | |
| Proserve - Houston | Proserve | 72316.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:081602,CONN 1 SZ 1/4 IN,CONN 1 TYP FEMALE NPT,DSGN RTNG 10000 PSI,MATL SS,MATL GR 316,SFTGDS SEAL: PTFE,SPCL FEATRS PANEL MOUNT | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 358 | | | |
| Proserve - Houston | Proserve | 72318.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:P003027,CONN 1 SZ 1/4 IN,CONN 1 TYP FEMALE MP,DSGN RTNG 20000 PSI,MATL SS,MATL GR 316,SFTGDS SEAL: TEFLON,SPCL FEATRS V STEM | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 241.26 | | | |
| Proserve - Houston | Proserve | 72319.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:NV0504F02M5V1OK,TYP DOUBLE BLOCK AND BLEED,CONN 1 SZ 1/4,CONN 1 TYP FEMALE MP,DSGN RTNG 10000 PSI,MATL SS,MATL GR 316,SFTGDS VITON ELASTOMER | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 248 | | | |
| Proserve - Houston | Proserve | 72320.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:082374,TYP DOUBLE BLOCK AND BLEED, BALL,CONN 1 SZ 1/2 IN,CONN 1 TYP FEMALE NPT,CONN 2 SZ 1/4 IN,CONN 2 TYP FEMALE NPT VENT,DSGN RTNG 10000 PSI,MATL SS,MATL GR 316,SFTGDS SEAL: VITON | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 239.64 | | | |
| Proserve - Houston | Proserve | 72321.A | | | VALVE, NEEDLE,MFR:PROSERV,PN:082443,TYP DOUBLE BLOCK AND BLEED,CONN 1 SZ 1/4 IN,CONN 1 TYP FEMALE MP,CONN 2 SZ 1/4 IN,CONN 2 TYP FEMALE NPT (VENT),DSGN RTNG 15000 PSI,MATL SS,MATL GR 316,SFTGDS VITON ELASTOMER | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 438.66 | | | |
| Proserve - Houston | Proserve | 72322.A | | | VALVE, BALL,MFR:PROSERV,PN:P003028,CONN 1 SZ 1/4 IN,CONN 1 TYP FEMALE MP,BDY MATL SS,MATL GR 316,STYL 2 WAY,SFTGDS SEAL: VITON,SPCL FEATRS PRESSURE: 20000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 654.68 | | | |
| Proserve - Houston | Proserve | 72323.A | | | FILTER, ELEMENT,MFR:PROSERV,PN:090650,PN:080236,FLTRNG RETN 3 MIC,FLTRNG MATL SS 316,SEAL MATL VITON,DIM 60 mm,PRESS RTNG 6500 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 232 | | | |
| Proserve - Houston | Proserve | 72324.A | | | FILTER, ELEMENT,MFR:PROSERV,PN:090654,PN:080816,FLTRNG RETN 10 MIC,FLTRNG MATL SS 316,SEAL MATL VITON,DIM 34 mm,PRESS RTNG 6500 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 245.1 | | | |
| Proserve - Houston | Proserve | 72325.A | | | FILTER, ELEMENT,MFR:PROSERV,PN:090655,PN:080833,FLTRNG RETN 10 MIC,FLTRNG MATL SS 316,SEAL MATL VITON,DIM 60 mm,PRESS RTNG 15000 PSI | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 416.1 | | | |
| Proserve - Houston | Proserve | 72326.A | | | KIT, REPAIR,MFR:PROSERV,PN:107553,PN:077832,APPLI BLADDER ACCUMULATOR (PRESSURE: 5000 PSI),REF:15 USG | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 860 | | | |
| Proserve - Houston | Proserve | 72327.A | | | FUSE,MFR:PROSERV,PN:075350,CL CC,AMP 1/8,VOLT 600 VDC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 23.9 | | | |
| Proserve - Houston | Proserve | 72329.A | | | FUSE,MFR:PROSERV,PN:075404,CL CC,AMP 1,VOLT 600 VDC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 18.68 | | | |
| Proserve - Houston | Proserve | 72330.A | | | FUSE,MFR:PROSERV,PN:060331,CL CC,AMP 2,VOLT 600 VDC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 458.16 | | | |
| Proserve - Houston | Proserve | 72332.A | | | FUSE,MFR:PROSERV,PN:075806,CL CC,AMP 1/2,VOLT 600 VDC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 5.7 | | | |
| Proserve - Houston | Proserve | 72331.A | | | FUSE,MFR:PROSERV,PN:078613,CL CC,AMP 10,VOLT 600 VDC | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 19.72 | | | |
| Proserve - Houston | Proserve | 71601.A | | | PLATE,MFR:PROSERV,PN:079441,APPLI WELDMENT; SCMMB DEBRIS COVER | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 2500 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Proserve - Houston | Proserve | 72302.A | | | COMPUTER, PERSONAL;MFR:PROSERV,PN:090600,TYP WORKSTATION,DATA STRG CPCTY RAM 4 GB,HRD DRV 1 TB,OPTIONAL EXTRAS WIN 7 PROF,MFR:HP,MN:Z230 TOWER,REF:1S | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 297.66 | | |
| Proserve - Houston | Proserve | 72304.A | | | MONITOR, VIDEO;MFR:PROSERV,PN:090602MFR: HP,SZ 23 IN,SPEC DISPLAY TYPE: LED ELITE | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 311.91 | | |
| Proserve - Houston | Proserve | 72645.A | | | CARD, ELECTRONIC;MFR:PROSERV,PN:090601,TYP GRAPHICS,APPLI 2 GB,MN:HP NVIDIA NVS 510 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 159.43 | | |
| Proserve - Houston | Proserve | 72272.A | | | DIODE;MFR:PROSERV,PN:ALB-TEDID-000,TYP FORWARD BIAS TERMINAL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 11.7 | | |
| Proserve - Houston | Proserve | 72273.A | | | SWITCH, NETWORK;MFR:PROSERV,PN:060330,PORT QTY (2) COPPER, (1) FIBER,MN:ETAP | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 392.22 | | |
| Proserve - Houston | Proserve | 72274.A | | | SWITCH, NETWORK;MFR:PROSERV,PN:ROU-HUBBX-000,TYP ETHERNET, UNMANAGED,PORT QTY 8,VOLT 9.6-32 VDC,DIM WD 40 X HT 114 X DP 79 mm,SPCL FEATRS ENCLOSURE: IP30, 10/100TX, 177G | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 207.06 | | |
| Proserve - Houston | Proserve | 72276.A | | | TRANSMITTER, TEMPERATURE;MFR:PROSERV,PN:PRE-TMP001-000,TYP 2 WIRE, ROOM,RANGE 0-70 DEG C,O/P 4-20 mA,SUPPLY 8-35 VDC,SPCL FEATRS 95G, ENCLOSURE: IP30, DIMENSIONS: WD 121 X HT 70 X DP 25 MM | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 298.94 | | |
| Proserve - Houston | Proserve | 72277.A | | | RELAY;MFR:PROSERV,PN:044871,COIL VOLT 24 VDC,CNTCT ARNGEMNT 1CO,SPEC POLE QTY: 2P, POLARITY, FREE WHEELING DIODE, LED, MANUAL OVERRIDE, USE WITH BASE REL-RB004-000 (VPN S-12) | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 19.26 | | |
| Proserve - Houston | Proserve | 72278.A | | | BASE, RELAY;MFR:PROSERV,PN:044865,EQ MODEL:SERIES C12 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 | | 8.26 | | |
| Proserve - Houston | Proserve | 72279.A | | | FILTER;MFR:PROSERV,PN:RIT-PL004-010,TYP ASSEMBLY,APPLI BASE PLINTH (800 MM) | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 41.06 | | |
| Proserve - Houston | Proserve | 72280.A | | | FAN, ELECTRIC;MFR:PROSERV,PN:069274MFR: RITTAL,AIR FLW CPCTY 800 m3/h,VOLT 115,WATT 170/225,AMP 1.5/2.2,HZ 50/60,MNTG FCLTY ROOF,SPCL FEATRS TEMPERATURE: 10-50 DEG C, WD 550 X HT 125 X DP 370 MM,APPLI TS TYPE CABINETS | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 532.34 | | |
| Proserve - Houston | Proserve | 72281.A | | | THERMOSTAT;MFR:PROSERV,PN:RIT-EL0318-000MFR: SK,TYP INTERNAL ENCLOSURE,TEMP RNGE 5-60 DEG C,VOLT 230/115/60/48/24 VAC, 60/48/24 VDC,SPCL FEATRS 105G, WD 71 X HT 71 X DP 33.5 MM | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 36.52 | | |
| Proserve - Houston | Proserve | 72282.A | | | LIGHT;MFR:PROSERV,PN:MIS-ELE330-000,TYP UNIVERSAL,SPEC MOUNTING: PANEL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 236.88 | | |
| Proserve - Houston | Proserve | 72283.A | | | POWER SUPPLY;MFR:PROSERV,PN:RSC-EL0005-000,TYP SWITCH MODE,I/P VOLT 230 VAC,O/P VOLT 24-28 VDC,POWER RTG 360,DIM WD 80 X LG 125 X DP 125 mm,MNTG FCLTY DIN RAIL,SPEC 1.1 KG, REMOTE ON/OFF AND DC OK OPTIONS | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 371.26 | | |
| Proserve - Houston | Proserve | 72284.A | | | BLOCK, TERMINAL;MFR:PROSERV,PN:WDM-TB053-000,TYP DOUBLE HIGH, FEED THROUGH,CLR BEIGE,MN:WDK2.5 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 5 | | 6.16 | | |
| Proserve - Houston | Proserve | 72286.A | | | BLOCK, TERMINAL;MFR:PROSERV,PN:WDM-TE006-000,MN:WOU4 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 216 | | |
| Proserve - Houston | Proserve | 72287.A | | | MODULE;MFR:PROSERV,PN:ALB-CM013-000MFR: CONTROLLOGIX,TYP REDUNDANCY,SPCL FEATRS 0.29 KG, 1 SLOT WIDTH | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 2931.16 | | |
| Proserve - Houston | Proserve | 72288.A | | | CABLE;MFR:PROSERV,PN:ALB-CM014-000MFR: CONTROLLOGIX,TYP REDUNDACY,LG 1 m,SPEC USE WITH 1756-RM REDUNDANCY MODULES | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 98.02 | | |
| Proserve - Houston | Proserve | 72289.A | | | CARD, ELECTRONIC;MFR:PROSERV,PN:PC40-30134-00,TYP ETHERNET,APPLI PLC,MN:EN2T | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 5116.6 | | |
| Proserve - Houston | Proserve | 72290.A | | | MODULE;MFR:PROSERV,PN:ALB-EI121-000,TYP DUAL ETHERNET PROCESSOR;MFR:PROSERV,PN:ALB-EI127-000,MEMORY 8 MB,SPCL FEATRS COMMUNICATIONS X1 USB, 0.25KG, 1 SLOT WIDTH,MFR:CONTROLLOGIX,MN:5573 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 6635.36 | | |
| Proserve - Houston | Proserve | 72292.A | | | POWER SUPPLY;MFR:PROSERV,PN:ALB-PO006-000MFR: CONTROLLOGIX,I/P VOLT 120/230 VAC,O/P VOLT 5-24 VDC,O/P CURRENT 2.8-10 A,POWER RTG 75 W | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 538.98 | | |
| Proserve - Houston | Proserve | 72293.A | | | CONVERTER, SIGNAL;MFR:PROSERV,PN:AMP-IS003-000MFR: DIGI ONE,TYP IAP ETHERNET/SERIAL,I/P 9-30 VDC,O/P 0.5 A,SPEC 64G, WD 23 X LG 120 X DP 101 mm | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 734.52 | | |
| Proserve - Houston | Proserve | 72294.A | | | MODULE, COMMUNICATION;MFR:PROSERV,PN:ALB-EI094-000,TYP (32) WAY DLI,I/P 24 VDC,SPCL FEATRS WD 94 X HT 94 X DP 69 MM,APPLI TB32/TB325 TERMINAL BASE,BRAND:FLEXLOGIX,BRAND:UNKNOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 291.42 | | |
| Proserve - Houston | Proserve | 72295.A | | | MODULE, COMMUNICATION;MFR:PROSERV,PN:ALB-EI095-000,TYP (32) WAY DO,I/P 24 VDC,SPCL FEATRS WD 94 X HT 94 X DP 69 MM,APPLI TB32/TB325 TERMINAL BASE,BRAND:FLEXLOGIX,BRAND:UNKNOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 328.76 | | |
| Proserve - Houston | Proserve | 72297.A | | | MODULE, COMMUNICATION;MFR:PROSERV,PN:ALB-EI096-000,TYP (8) WAY AI,I/P 24 VDC,APPLI TB2/TB3/TB35/TB37/TB3T5 TERMINAL BASE,BRAND:FLEXLOGIX,BRAND:UNKNOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 569.6 | | |
| Proserve - Houston | Proserve | 72298.A | | | MODULE;MFR:PROSERV,PN:ALB-EI122-000,ETHERNET/IP,24 VDC,SPCL FEATRS QTY: 8,ADAPTOR,BRAND:FLEXLOGIX,BRAND:UNKNOWN | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 408.24 | | |
| Proserve - Houston | Proserve | 72299.A | | | 21.5" TOUCHSCREEN, MONITOR PANEL MOUNT. FPM-7211W-P3AE, PROSERV AX PN :055044 | | | EA | | | 1 | | 0 | | |
| Proserve - Houston | Proserve | 72300.A | | | COMPUTER, PERSONAL;MFR:PROSERV,PN:079233,MEMORY 8 GB,PROCSR CHIP TYP INTEL XEON,OPTIONAL EXTRAS 1U, RACK MOUNT, WINDOWS SERVER 2012, POWER: 250 W, ,1600MHZ,500GB SATA 3.5-IN 7.2K RPM HARD DRIVE,2 X NIC RJ45 ETHERNET PORTS,REF:E3-1270 V3 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 4505.26 | | |
| Proserve - Houston | Proserve | 72301.A | | | KEYBOARD;MFR:PROSERV,PN:RSC-K8002-000,TYP MICRO,CLR IVORY,WD 292,LG 1.5 m,CNCTR TYP USB,SPEC HT 30 X DP 161 MM, TRACK BALL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 122.1 | | |
| Proserve - Houston | Proserve | 72334.A | | | CONTACT, AUXILIARY;MFR:PROSERV,PN:054592,CNTCT ARNGEMNT 1NO,SPEC BOTTOM FITTED, ON/OFF SIGNAL,APPLI S200 MINI CIRCUIT BREAKER | | MC 948 GUNFLINT LONG LEAD | EA | | | 3 | | 30.52 | | |
| Proserve - Houston | Proserve | 71605.A | | | ASSEMBLY,P004544 MFR:PROSERV,PN:065417,TYP DUMMY SCMMB FLUSHING PLATE,COMPRISING HOSE AND FITTINGS, SHIPPING FRAME AND RUNNING TOOL | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 132308 | | |
| Proserve - Houston | Proserve | 71602.A | | | STATION;MFR:PROSERV,PN:075687,TYP TEST MASTER CONTROL,SPCL FEATRS 1EPU, 1TCPU, SINGLE PLC, W/ TEST LAPTOP,APPLI GUNFLINT | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 2 / One at Fieldwood Office | | 101685 | | |
| Proserve - Houston | Proserve | 71611.A | | | HUB;MFR:PROSERV,PN:045367,TYP OPEN COMMUNICATION MODULE;MFR:PROSERV,PN:065403,TYP SUBSEA CONTROL,SPCL FEATRS 26 FUNCTION,APPLI NOBLE GUNFLINT,REF:SCM-002 | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 593725 | | |
| Proserve - Houston | Proserve | 71599.A | | | STAND;MFR:PROSERV,PN:065416,TYP TEST,SPCL FEATRS 26 FUNCTION, YIELD STRENGTH: 15/5 KSI,APPLI SUBSEA CONTROL MODULE | 140528 | MC 948 GUNFLINT LONG LEAD | EA | | | 1 | | 728462 | | |
| Proserve - Houston | Proserve | 71600.A | | | | | | EA | | | 1 | | 121538 | | |
| Superior - Houston | Superior Energy Services | TLS-002928-10 | CS 2654 | Storage | | | EW 826 A19 | EA | | | 1 | | 795 | | |
| Superior - Houston | Superior Energy Services | TLD-002360-35 | CS 2645 | Storage | | | GC 200 TA9 | EA | | | 1 | | 3494.4 | | |
| Superior - Houston | Superior Energy Services | TLD-002385-6 | CS 2638 | Storage | | | GC 200 TA3 | EA | | | 1 | | 3494.4 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Superior - Houston | Superior Energy Services | TLD-002385-8 | CS 2639 | Storage | | | GC 200 TA3 | EA | | | 1 | | 3812.9 | | | |
| Superior - Houston | Superior Energy Services | TLD-002385-7 | CS 2640 | Storage | | | GC 200 TA3 | EA | | | 1 | | 3812.9 | | | |
| Superior - Houston | Superior Energy Services | TLD-002385-13 | CS 2641 | Storage | | | GC 200 TA3 | EA | | | 1 | | 3812.9 | | | |
| Superior - Houston | Superior Energy Services | TLD-002385-14 | CS 2642 | Storage | | | GC 200 TA3 | EA | | | 1 | | 4131.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002360-32 | CS 2643 | Storage | | | GC 200 TA9 | EA | | | 1 | | 3494.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002360-33 | CS 2644 | Storage | | | GC 200 TA9 | EA | | | 1 | | 4131.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002360-36 | CS 2646 | Storage | | | GC 200 TA9 | EA | | | 1 | | 4131.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002360-41 | CS 2600 | Storage | | | GC 200 TA9 | EA | | | 1 | | 9618.7 | | | |
| Superior - Houston | Superior Energy Services | TLD-002360-42 | CS 2601 | Storage | | | GC 200 TA9 | EA | | | 1 | | 9618.7 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-9 | CS 2620 | Storage | | | EW 826 A19 | EA | | | 1 | | 6685 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-8 | CS 2619 | Storage | | | EW 826 A19 | EA | | | 1 | | 9890 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-7 | CS 2618 | Storage | | | EW 826 A19 | EA | | | 1 | | 9890 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-6 | CS 2617 | Storage | | | EW 826 A19 | EA | | | 1 | | 1640 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-5 | CS 2616 | Storage | | | EW 826 A19 | EA | | | 1 | | 3695 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-4 | CS 2615 | Storage | | | EW 826 A19 | EA | | | 1 | | 9890 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-3 | CS 2614 | Storage | | | EW 826 A19 | EA | | | 1 | | 1640 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-2 | CS 2613 | Storage | | | EW 826 A19 | EA | | | 1 | | 1640 | | | |
| Superior - Houston | Superior Energy Services | TLS-002928-1 | CS 2612 | Storage | | | EW 826 A19 | EA | | | 1 | | 1640 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-18 | CS 2611 | Storage | | | GC 200 TA2 | EA | | | 1 | | 20183.8 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-17 | CS 2610 | Storage | | | GC 200 TA2 | EA | | | 1 | | 20183.8 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-16 | CS 2609 | Storage | | | GC 200 TA2 | EA | | | 1 | | 20183.8 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-15 | CS 2608 | Storage | | | GC 200 TA2 | EA | | | 1 | | 20183.8 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-14 | CS 2607 | Storage | | | GC 200 TA2 | EA | | | 1 | | 6770.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-9 | CS 2606 | Storage | | | GC 200 TA2 | EA | | | 1 | | 20183.8 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-5 | CS 2605 | Storage | | | GC 200 TA2 | EA | | | 1 | | 6770.4 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-21 | CS 2604 | Storage | | | GC 200 TA2 | EA | | | 1 | | 5359.9 | | | |
| Superior - Houston | Superior Energy Services | TLD-002356-20 | CS 2603 | Storage | | | GC 200 TA2 | EA | | | 1 | | 5359.9 | | | |
| Superior - Houston | Superior Energy Services | TLD-002385-10 | CS 2602 | Storage | | | GC 200 TA3 | EA | | | 1 | | 10637.9 | | | |
| Superior - Houston | Superior Energy Services | WO00688365 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688370 | | Staging | | | GC 200 TA2 | EA | | | 2 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00685576 | | Storage | | | GC 200 TA9 | EA | | | 1 | | 291584.5 | | | |
| Superior - Houston | Superior Energy Services | 31099117-01 | | Storage | | | GC 200 TA9 | EA | | | 1 | | 4550 | | | |
| Superior - Houston | Superior Energy Services | 31102498-01 | | Storage | | | GC 200 TA9 | EA | | | 1 | | 4550 | | | |
| Superior - Houston | Superior Energy Services | WO00685573 | | Storage | | | GC 200 TA9 | EA | | | 1 | | 32714.5 | | | |
| Superior - Houston | Superior Energy Services | 31090933-01 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 4550 | | | |
| Superior - Houston | Superior Energy Services | 31098933-02 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 4550 | | | |
| Superior - Houston | Superior Energy Services | WO00688366 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688371 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688367 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688368 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688372 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00688373 | | Staging | | | GC 200 TA2 | EA | | | 1 | | 2303 | | | |
| Superior - Houston | Superior Energy Services | WO00685511 | | Storage | | | GC 200 TA2 | EA | | | 1 | | 291854.5 | | | |
| Superior - Houston | Superior Energy Services | WO00685512 | | Storage | | | GC 200 TA2 | EA | | | 1 | | 291854.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002234-65 | CS 1509 | Storage | | | GC 109 A32 | EA | | | 1 | | 6579 | | | |
| Superior - Houston | Superior Energy Services | TLS-002234-64 | CS 1861 | Storage | | | GC 109 A32 | EA | | | 1 | | 2297.55 | | | |
| Superior - Houston | Superior Energy Services | TLS-002234-63 | CS 1511 | Storage | | | GC 109 A32 | EA | | | 1 | | 4594.25 | | | |
| Superior - Houston | Superior Energy Services | TLS-002234-56 | CS 1507 | Storage | | | GC 109 A32 | EA | | | 1 | | 6579 | | | |
| Superior - Houston | Superior Energy Services | TLS-002234-55 | CS 1508 | Storage | | | GC 109 A32 | EA | | | 1 | | 6579 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-15 | CS 1538 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-14 | CS 1537 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-12 | CS 1536 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-11 | CS 1540 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-10 | CS 1541 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-8 | CS 1539 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-7 | CS 1535 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-6 | CS 1542 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002102-5 | CS 1543 | Storage | | | EI 125 R1 | EA | | | 1 | | 2327.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-001891-21 | CS 1615 | Storage | | | SP 62 D1 | EA | | | 1 | | 6090 | | | |
| Superior - Houston | Superior Energy Services | TLS-001891-20 | CS 949 | Storage | | | SP 62 D1 | EA | | | 1 | | 13960 | | | |
| Superior - Houston | Superior Energy Services | 700151-01 | CS 317 | Storage | | | SS 258 J88 | EA | | | 1 | | 11112 | | | |
| Superior - Houston | Superior Energy Services | 700151-03 | CS 316 | Storage | | | SS 258 J88 | EA | | | 1 | | 11112 | | | |
| Superior - Houston | Superior Energy Services | 700151-02 | CS 315 | Storage | | | SS 258 J88 | EA | | | 1 | | 11112 | | | |
| Superior - Houston | Superior Energy Services | 700151-04 | CS 314 | Storage | | | SS 258 J88 | EA | | | 1 | | 11112 | | | |
| Superior - Houston | Superior Energy Services | 700097-19 | CS 111 | Storage | | | GC 65 41 | EA | | | 1 | | 5004 | | | |
| Superior - Houston | Superior Energy Services | 700097-02 | CS 110 | Storage | | | GC 65 41 | EA | | | 1 | | 5004 | | | |
| Superior - Houston | Superior Energy Services | 700097-01 | CS 109 | Storage | | | GC 65 41 | EA | | | 1 | | 5004 | | | |
| Superior - Houston | Superior Energy Services | 700097-05 | CS 100 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-04 | CS 99 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-03 | CS 98 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-07 | CS 106 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-06 | CS 105 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-09 | CS 108 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-08 | CS 107 | Storage | | | GC 65 A41 | EA | | | 1 | | 720 | | | |
| Superior - Houston | Superior Energy Services | 700097-13 | CS 104 | Storage | | | GC 65 A41 | EA | | | 1 | | 702 | | | |
| Superior - Houston | Superior Energy Services | 700097-12 | CS 103 | Storage | | | GC 65 A41 | EA | | | 1 | | 702 | | | |
| Superior - Houston | Superior Energy Services | 700097-11 | CS 102 | Storage | | | GC 65 A41 | EA | | | 1 | | 702 | | | |
| Superior - Houston | Superior Energy Services | 700097-10 | CS 101 | Storage | | | GC 65 A41 | EA | | | 1 | | 702 | | | |
| Superior - Houston | Superior Energy Services | 700097-17 | CS 97 | Storage | | | GC 65 A41 | EA | | | 1 | | 540 | | | |
| Superior - Houston | Superior Energy Services | 700097-16 | CS 96 | Storage | | | GC 65 A41 | EA | | | 1 | | 540 | | | |
| Superior - Houston | Superior Energy Services | 700097-15 | CS 94 | Storage | | | GC 65 A41 | EA | | | 1 | | 540 | | | |
| Superior - Houston | Superior Energy Services | 700097-14 | CS 95 | Storage | | | GC 65 A41 | EA | | | 1 | | 540 | | | |
| Superior - Houston | Superior Energy Services | 700086-01 | CS 2068 | Storage | | | GC 65 A60 | EA | | | 1 | | 10237.5 | | | |
| Superior - Houston | Superior Energy Services | 700086-2 | CS 1086 | Storage | | | GC 65 A60 | EA | | | 1 | | 9652.5 | | | |
| Superior - Houston | Superior Energy Services | TLS-002872-6 | CS 2483 | Storage | | | SM 280 H1 | EA | | | 1 | | 3834 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687151 | | Storage | | | | EA | A | | 1 | | 4257 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687139 | | Assembly | | | | EA | B | | 2 | | 3753 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683833 (p) | | Storage | | | | EA | | | 2 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | 31099758-01 | | Staging | | | | EA | | | 1 | | 5470.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00686995 | | Staging | | | | EA | | | 3 | | 4378.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00686998 | | Staging | | | | EA | | | 3 | | 4378.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683517-01 | | Staging | | | | EA | | | 1 | | 4595.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683872 | | Staging | | | | EA | | | 1 | | 6051.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683871 | | Staging | | | | EA | | | 1 | | 124778.5 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Superior - Lafayette | Superior Energy Services | WO00684280 | | Staging | | | | EA | | | 1 | | | 13919.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00690219 | | Staging | | | | EA | | | 1 | | | 18683 | | |
| Superior - Lafayette | Superior Energy Services | WO00684437 | | Staging | | | | EA | | | 1 | | | 1543.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00683862 | | Staging | | | | EA | | | 1 | | | 4378.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00683878 | | Staging | | | | EA | | | 1 | | | 61530 | | |
| Superior - Lafayette | Superior Energy Services | WO00690218 | | Staging | | | | EA | | | 1 | | | 18683 | | |
| Superior - Lafayette | Superior Energy Services | WO00690781 | | Staging | | | | EA | B | | 1 | | | 5652.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00690780 | | Staging | | | | EA | B | | 1 | | | 13195 | | |
| Superior - Lafayette | Superior Energy Services | WO000779 | | Staging | | | | EA | E | | 1 | | | 225697.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00690778 | | Staging | | | | EA | A | | 1 | | | 6457.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00690777 | | Staging | | | | EA | F | | 1 | | | 3500 | | |
| Superior - Lafayette | Superior Energy Services | WO00693130 | | Staging | | | | EA | A | | 1 | | | 22554 | | |
| Superior - Lafayette | Superior Energy Services | 31102812 | | Staging | | | | EA | E | | 8 | | | 2450 | | |
| Superior - Lafayette | Superior Energy Services | WO00693128 | | Staging | | | | EA | A | | 1 | | | 647500 | | |
| Superior - Lafayette | Superior Energy Services | WO00688271 (p) | | Storage | | | | EA | | | 15 | | | 1786 | | |
| Superior - Lafayette | Superior Energy Services | 31100712-01 | | Staging | | | | EA | B | | 1 | | | 3009 | | |
| Superior - Lafayette | Superior Energy Services | WO00687141 | | Staging | | | | EA | A | | 5 | | | 3543 | | |
| Superior - Lafayette | Superior Energy Services | 31100714-02 | | Staging | | | | EA | C | | 1 | | | 1701 | | |
| Superior - Lafayette | Superior Energy Services | WO00687138 | | Staging | | | | EA | B | | 1 | | | 3855 | | |
| Superior - Lafayette | Superior Energy Services | WO00687677-01 | | Staging | | | | EA | B | | 1 | | | 10548 | | |
| Superior - Lafayette | Superior Energy Services | WO00687156 | | Staging | | | | EA | A | | 1 | | | 2919 | | |
| Superior - Lafayette | Superior Energy Services | WO00687676-02 | | Staging | | | | EA | B | | 1 | | | 14046 | | |
| Superior - Lafayette | Superior Energy Services | WO00687154 | | Staging | | | | EA | B | | 1 | | | 2124 | | |
| Superior - Lafayette | Superior Energy Services | WO00687675-02 | | Staging | | | | EA | M | | 1 | | | 4545 | | |
| Superior - Lafayette | Superior Energy Services | WO00688066 | | Staging | | | | EA | A | | 1 | | | 5175 | | |
| Superior - Lafayette | Superior Energy Services | 31101741-02 | | Staging | | | | EA | A | | 1 | | | 7461 | | |
| Superior - Lafayette | Superior Energy Services | WO00687153 | | Staging | | | | EA | A | | 1 | | | 10120 | | |
| Superior - Lafayette | Superior Energy Services | 31101733-01 | | Staging | | | | EA | A | | 1 | | | 5196 | | |
| Superior - Lafayette | Superior Energy Services | WO00687119 | | Staging | | | | EA | F | | 6 | | | 1786 | | |
| Superior - Lafayette | Superior Energy Services | WO00687133 | | Staging | | | | EA | A | | 1 | | | 17100 | | |
| Superior - Lafayette | Superior Energy Services | WO00687132 | | Staging | | | | EA | A | | 1 | | | 17100 | | |
| Superior - Lafayette | Superior Energy Services | 31100712-02 | | Staging | | | | EA | A | | 1 | | | 3009 | | |
| Superior - Lafayette | Superior Energy Services | WO00687131 | | Staging | | | | EA | A | | 5 | | | 3543 | | |
| Superior - Lafayette | Superior Energy Services | 31100714-01 | | Staging | | | | EA | C | | 1 | | | 1701 | | |
| Superior - Lafayette | Superior Energy Services | WO00687128 | | Staging | | | | EA | B | | 1 | | | 3855 | | |
| Superior - Lafayette | Superior Energy Services | WO00687126 | | Staging | | | | EA | B | | 4 | | | 3855 | | |
| Superior - Lafayette | Superior Energy Services | WO00687124 | | Staging | | | | EA | B | | 1 | | | 3855 | | |
| Superior - Lafayette | Superior Energy Services | WO00687125 | | Staging | | | | EA | H | | 1 | | | 9270 | | |
| Superior - Lafayette | Superior Energy Services | WO00687677-02 | | Staging | | | | EA | B | | 1 | | | 10548 | | |
| Superior - Lafayette | Superior Energy Services | WO00687150 | | Staging | | | | EA | A | | 1 | | | 2919 | | |
| Superior - Lafayette | Superior Energy Services | WO00687676-01 | | Staging | | | | EA | B | | 1 | | | 14046 | | |
| Superior - Lafayette | Superior Energy Services | WO00687149 | | Staging | | | | EA | B | | 1 | | | 2124 | | |
| Superior - Lafayette | Superior Energy Services | WO00687675-01 | | Staging | | | | EA | M | | 1 | | | 4545 | | |
| Superior - Lafayette | Superior Energy Services | WO00688062 | | Staging | | | | EA | A | | 1 | | | 5175 | | |
| Superior - Lafayette | Superior Energy Services | 31101741 | | Staging | | | | EA | A | | 1 | | | 7461 | | |
| Superior - Lafayette | Superior Energy Services | WO00687148 | | Staging | | | | EA | A | | 1 | | | 10120 | | |
| Superior - Lafayette | Superior Energy Services | 31100725-01 | | Staging | | | | EA | A | | 1 | | | 4490.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00690721 | | Staging | | | | EA | E | | 3 | | | 3080 | | |
| Superior - Lafayette | Superior Energy Services | 31098789-11 | | Staging | | | | EA | P | | 1 | | | 1067.5 | | |
| Superior - Lafayette | Superior Energy Services | 31101195-04 | | Staging | | | | EA | C | | 1 | | | 5568.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00690720 | | Staging | | | | EA | D | | 1 | | | 10815 | | |
| Superior - Lafayette | Superior Energy Services | WO00690719 | | Staging | | | | EA | G | | 1 | | | 3920 | | |
| Superior - Lafayette | Superior Energy Services | WO00690718 | | Staging | | | | EA | J | | 1 | | | 6877.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00688070 | | Staging | | | | EA | A | | 1 | | | 4368 | | |
| Superior - Lafayette | Superior Energy Services | 31101741-01 | | Staging | | | | EA | A | | 1 | | | 7293 | | |
| Superior - Lafayette | Superior Energy Services | 31100764-02 | | Staging | | | | EA | A | | 1 | | | 3078 | | |
| Superior - Lafayette | Superior Energy Services | WO00687091 | | Staging | | | | EA | B | | 1 | | | 2958 | | |
| Superior - Lafayette | Superior Energy Services | WO00688068 | | Staging | | | | EA | A | | 1 | | | 5205 | | |
| Superior - Lafayette | Superior Energy Services | 31100721-01 | | Staging | | | | EA | C | | 1 | | | 4773 | | |
| Superior - Lafayette | Superior Energy Services | WO00687090 | | Staging | | | | EA | D | | 1 | | | 9720 | | |
| Superior - Lafayette | Superior Energy Services | WO00687089 | | Staging | | | | EA | G | | 14 | | | 3360 | | |
| Superior - Lafayette | Superior Energy Services | 31100766-02 | | Staging | | | | EA | C | | 1 | | | 1035 | | |
| Superior - Lafayette | Superior Energy Services | WO00688072 | | Staging | | | | EA | B | | 1 | | | 46764 | | |
| Superior - Lafayette | Superior Energy Services | WO00687088 | | Staging | | | | EA | D | | 1 | | | 47871 | | |
| Superior - Lafayette | Superior Energy Services | WO00687087 | | Staging | | | | EA | B | | 1 | | | 13950 | | |
| Superior - Lafayette | Superior Energy Services | WO00687086 | | Staging | | | | EA | B | | 1 | | | 8853 | | |
| Superior - Lafayette | Superior Energy Services | WO00673496-01 | | Staging | | | | EA | E | | 1 | | | 5916 | | |
| Superior - Lafayette | Superior Energy Services | WO00687085 | | Staging | | | | EA | B | | 1 | | | 25599 | | |
| Superior - Lafayette | Superior Energy Services | WO00687084 | | Staging | | | | EA | B | | 1 | | | 5130 | | |
| Superior - Lafayette | Superior Energy Services | WO00687083 | | Staging | | | | EA | B | | 1 | | | 127228.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00687082 | | Staging | | | | EA | B | | 1 | | | 17325 | | |
| Superior - Lafayette | Superior Energy Services | WO00687081 | | Storage | | | | EA | A | | 1 | | | 14433 | | |
| Superior - Lafayette | Superior Energy Services | WO00687080 | | Staging | | | | EA | A | | 1 | | | 13287 | | |
| Superior - Lafayette | Superior Energy Services | 31100761-02 | | Staging | | | | EA | C | | 1 | | | 4773 | | |
| Superior - Lafayette | Superior Energy Services | 31098789-17 | | Staging | | | | EA | P | | 1 | | | 915 | | |
| Superior - Lafayette | Superior Energy Services | 31102937-01 | | Staging | | | | EA | A | | 1 | | | 3849 | | |
| Superior - Lafayette | Superior Energy Services | WO00687079 | | Staging | | | | EA | E | | 3 | | | 2640 | | |
| Superior - Lafayette | Superior Energy Services | WO00687078 | | Staging | | | | EA | D | | 1 | | | 9270 | | |
| Superior - Lafayette | Superior Energy Services | WO00687077 | | Staging | | | | EA | G | | 3 | | | 3360 | | |
| Superior - Lafayette | Superior Energy Services | WO00688069 | | Staging | | | | EA | A | | 1 | | | 4368 | | |
| Superior - Lafayette | Superior Energy Services | 31101741-02 | | Staging | | | | EA | A | | 1 | | | 7293 | | |
| Superior - Lafayette | Superior Energy Services | 31100764-01 | | Staging | | | | EA | A | | 1 | | | 3078 | | |
| Superior - Lafayette | Superior Energy Services | WO00687094 | | Staging | | | | EA | B | | 4 | | | 2958 | | |
| Superior - Lafayette | Superior Energy Services | WO00688067 | | Staging | | | | EA | A | | 1 | | | 5205 | | |
| Superior - Lafayette | Superior Energy Services | 31100761-01 | | Staging | | | | EA | C | | 1 | | | 4773 | | |
| Superior - Lafayette | Superior Energy Services | WO00687093 | | Staging | | | | EA | D | | 1 | | | 9270 | | |
| Superior - Lafayette | Superior Energy Services | WO00688071 | | Staging | | | | EA | B | | 1 | | | 46764 | | |
| Superior - Lafayette | Superior Energy Services | WO00687092 | | Staging | | | | EA | G | | 14 | | | 3360 | | |
| Superior - Lafayette | Superior Energy Services | 31100766-01 | | Staging | | | | EA | 1 | | 1 | | | 1035 | | |
| Superior - Lafayette | Superior Energy Services | 31101149-01 | | Staging | | | | EA | | | 1 | | | 8508.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00688253 | | Staging | | | | EA | | | 1 | | | 29865.5 | | |
| Superior - Lafayette | Superior Energy Services | WO00684413-01 | | Staging | | | | EA | | | 1 | | | 6902 | | |
| Superior - Lafayette | Superior Energy Services | 31101349-01 | | Staging | | | | EA | | | 1 | | | 5561.5 | | |
| Superior - Lafayette | Superior Energy Services | 31101349-02 | | Staging | | | | EA | | | 1 | | | 5561.5 | | |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Superior - Lafayette | Superior Energy Services | WO00688800 | | Staging | | | | EA | | | 5 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | 31101104-02 | | Staging | | | | EA | | | 1 | | 4018 | | | |
| Superior - Lafayette | Superior Energy Services | 31101104-03 | | Staging | | | | EA | | | 1 | | 4018 | | | |
| Superior - Lafayette | Superior Energy Services | 31101104-01 | | Staging | | | | EA | | | 1 | | 4018 | | | |
| Superior - Lafayette | Superior Energy Services | 31100699-01 | | Staging | | | | EA | | | 1 | | 2905 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688259 | | Staging | | | | EA | | | 1 | | 2401 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688269 | | Staging | | | | EA | | | 1 | | 12477.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00681355-01 | | Staging | | | | EA | | | 1 | | 34660.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688268 | | Staging | | | | EA | | | 1 | | 4161.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688267 | | Staging | | | | EA | | | 1 | | 2625 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688266 | | Staging | | | | EA | | | 4 | | 4658.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688265 | | Staging | | | | EA | | | 1 | | 1876 | | | |
| Superior - Lafayette | Superior Energy Services | 31068949-MA498-7 | | Staging | | | | EA | | | 1 | | 8767.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688264 | | Staging | | | | EA | | | 1 | | 4595.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688260 | | Staging | | | | EA | | | 3 | | 3920 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688263 | | Staging | | | | EA | | | 1 | | 10815 | | | |
| Superior - Lafayette | Superior Energy Services | 31098789-13 | | Staging | | | | EA | | | 1 | | 5568.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31098789-13 | | Staging | | | | EA | | | 1 | | 1067.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31098789-04 | | Staging | | | | EA | | | 1 | | 1067.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688262 | | Staging | | | | EA | | | 6 | | 3080 | | | |
| Superior - Lafayette | Superior Energy Services | 31100725-02 | | Staging | | | | EA | | | 1 | | 4490.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31100725-03 | | Staging | | | | EA | | | 1 | | 4490.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688261 | | Staging | | | | EA | | | 1 | | 15501.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688258 | | Staging | | | | EA | | | 1 | | 16488.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688608 | | Staging | | | | EA | | | 1 | | 14651 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688607 | | Staging | | | | EA | | | 1 | | 14651 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688606 | | Staging | | | | EA | | | 1 | | 13828.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688605 | | Staging | | | | EA | | | 1 | | 13828.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688257 | | Staging | | | | EA | | | 1 | | 32123 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688256 | | Staging | | | | EA | | | 1 | | 37261 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688255 | | Staging | | | | EA | | | 1 | | 16387 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688254 | | Staging | | | | EA | | | 1 | | 29865.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688252 | | Staging | | | | EA | | | 1 | | 10328.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31099394-01 | | Staging | | | | EA | | | 1 | | 6902 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688251 | | Staging | | | | EA | | | 1 | | 10328.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688250 | | Staging | | | | EA | | | 1 | | 16275 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688249 | | Staging | | | | EA | | | 1 | | 16275 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688248 | | Staging | | | | EA | | | 1 | | 55849.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688247 | | Staging | | | | EA | | | 1 | | 55849.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00688246 | | Staging | | | | EA | | | 1 | | 55849.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31065836-13 | | Staging | | | | EA | | | 1 | | 1067.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687005 | | Staging | | | | EA | | | 1 | | 2401 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687001 | | Staging | | | | EA | | | 3 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | 31100215-03 | | Staging | | | | EA | | | 1 | | 8508.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31100215-02 | | Staging | | | | EA | | | 1 | | 8508.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31099396-01 | | Staging | | | | EA | | | 1 | | 5568.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687004 | | Staging | | | | EA | | | 1 | | 10815 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687003 | | Staging | | | | EA | | | 3 | | 3920 | | | |
| Superior - Lafayette | Superior Energy Services | WO00686997 | | Staging | | | | EA | | | 1 | | 2401 | | | |
| Superior - Lafayette | Superior Energy Services | WO00686996 | | Staging | | | | EA | | | 3 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | 31100215-01 | | Staging | | | | EA | | | 1 | | 8508.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31098272-02 | | Staging | | | | EA | | | 1 | | 5887 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683073 | | Staging | | | | EA | | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683075 | | Staging | | | | EA | | | 10 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683074 | | Staging | | | | EA | | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683067 | | Staging | | | | EA | | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683066 | | Staging | | | | EA | | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683068 | | Staging | | | | EA | | | 6 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683037 | | Staging | | | | EA | | | 1 | | 5848.5 | | | |
| Superior - Lafayette | Superior Energy Services | 611827-19 | | Staging | | | | EA | | | 1 | | 3307.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683064 | | Staging | | | | EA | | | 1 | | 14315 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683035 | | Staging | | | | EA | | | 1 | | 55849.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683034 | | Staging | | | | EA | | | 1 | | 16275 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683033 | | Staging | | | | EA | | | 1 | | 32406.5 | | | |
| Superior - Lafayette | Superior Energy Services | 673496-05 | | Staging | | | | EA | | | 1 | | 6902 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683031 | | Staging | | | | EA | | | 1 | | 29865.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683032 | | Staging | | | | EA | | | 1 | | 5985 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683030 | | Staging | | | | EA | | | 1 | | 124401.2 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683029 | | Staging | | | | EA | | | 1 | | 20212.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683027 | | Staging | | | | EA | | | 1 | | 15501.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683500-01 | | Staging | | | | EA | | | 1 | | 4490.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683025 | | Staging | | | | EA | | | 3 | | 3080 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683022 | | Staging | | | | EA | | | 1 | | 4595.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683517-02 | | Staging | | | | EA | | | 1 | | 4595.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683021 | | Staging | | | | EA | | | 1 | | 6877.5 | | | |
| Superior - Lafayette | Superior Energy Services | TLD-002362-3 | | Storage | | | | EA | | | 1 | | 6585 | | | |
| Superior - Lafayette | Superior Energy Services | TLD-002362-2 | | Storage | | | | EA | | | 1 | | 4135 | | | |
| Superior - Lafayette | Superior Energy Services | TLD-002362-1 | | Storage | | | | EA | | | 1 | | 4135 | | | |
| Superior - Lafayette | Superior Energy Services | 31099788-02 | | Staging | | | | EA | | | 1 | | 4689 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684293 | | Storage | | | | EA | | | 1 | | 6877.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690407 | | Storage | | | | EA | | | 1 | | 16014 | | | |
| Superior - Lafayette | Superior Energy Services | WO00690110 | | Storage | | | | EA | | | 1 | | 1323 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683904 | | Storage | | | | EA | | | 1 | | 10328.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683059 | | Assembly | | | | EA | | | 1 | | 5985 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683868 | | Storage | | | | EA | | | 1 | | 19950 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683888 | | Storage | | | | EA | | | 1 | | 19950 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684438 | | Storage | | | | EA | | | 1 | | 1543.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683852 | | Storage | | | | EA | | | 1 | | 6051.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683851 | | Storage | | | | EA | | | 1 | | 124778.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684270 | | Storage | | | | EA | | | 1 | | 13919.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684269 | | Storage | | | | EA | | | 1 | | 77199.5 | | | |
| Superior - Lafayette | Superior Energy Services | 31099274-05 | | Storage | | | | EA | | | 1 | | 4144 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683850 | | Storage | | | | EA | | | 4 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683849 | | Storage | | | | EA | | | 1 | | 6877.5 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Superior - Lafayette | Superior Energy Services | WO00687045 | | Storage | | | | EA | | | 1 | | 12040 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683848 | | Storage | | | | EA | | | 14 | | 4095 | | | |
| Superior - Lafayette | Superior Energy Services | WO00687044 | | Storage | | | | EA | | | 1 | | 10835 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683847 | | Storage | | | | EA | | | 1 | | 67392.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683846 | | Storage | | | | EA | | | 1 | | 16387 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683845 | | Storage | | | | EA | | | 1 | | 37261 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684275 | | Storage | | | | EA | | | 1 | | 32123 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683844 | | Storage | | | | EA | | | 1 | | 6051.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683843 | | Storage | | | | EA | | | 1 | | 124778.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684723 | | Storage | | | | EA | | | 1 | | 77199.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00684272 | | Storage | | | | EA | | | 1 | | 13919.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683842 | | Storage | | | | EA | | | 1 | | 19950 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683834 | | Storage | | | | EA | | | 1 | | 10835 | | | |
| Superior - Lafayette | Superior Energy Services | 31099274-02 | | Storage | | | | EA | | | 1 | | 4144 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683831 | | Storage | | | | EA | | | 1 | | 6877.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683832 | | Storage | | | | EA | | | 14 | | 4095 | | | |
| Superior - Lafayette | Superior Energy Services | 31099228-02 | | Storage | | | | EA | | | 1 | | 5708.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683903 | | Storage | | | | EA | | | 1 | | 33575.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683902 | | Storage | | | | EA | | | 1 | | 2460.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683901 | | Storage | | | | EA | | | 1 | | 14315 | | | |
| Superior - Lafayette | Superior Energy Services | 31099228-01 | | Storage | | | | EA | | | 1 | | 5708.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683900 | | Storage | | | | EA | | | 1 | | 33575.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683899 | | Storage | | | | EA | | | 1 | | 2460.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683898 | | Storage | | | | EA | | | 1 | | 14315 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683914 | | Storage | | | | EA | | | 1 | | 127228.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683913 | | Storage | | | | EA | | | 1 | | 20212.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00686388 | | Storage | | | | EA | | | 1 | | 8767.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683897 | | Storage | | | | EA | | | 1 | | 1876 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683109 | | Staging | | | | EA | | | 1 | | 13387.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683100 | | Staging | | | | EA | | | 1 | | 13387.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683108 | | Staging | | | | EA | | | 1 | | 6037.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683099 | | Staging | | | | EA | | | 1 | | 6037.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683271-02 | | Staging | | | | EA | | | 1 | | 34660.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683107 | | Staging | | | | EA | | | 1 | | 4161.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683104 | | Staging | | | | EA | | | 1 | | 5848.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683101 | | Staging | | | | EA | | | 4 | | 4658.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683271-01 | | Staging | | | | EA | | | 1 | | 34660.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683098 | | Staging | | | | EA | | | 1 | | 4161.5 | | | |
| Superior - Lafayette | Superior Energy Services | 683554-01 | | Staging | | | | EA | | | 1 | | 16387 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683097 | | Staging | | | | EA | | | 1 | | 4081 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683096 | | Staging | | | | EA | | | 1 | | 55849.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683095 | | Staging | | | | EA | | | 1 | | 14315 | | | |
| Superior - Lafayette | Superior Energy Services | 683514-03 | | Staging | | | | EA | | | 1 | | 3307.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683094 | | Staging | | | | EA | | | 1 | | 5848.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683093 | | Staging | | | | EA | | | 4 | | 1786 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683092 | | Staging | | | | EA | | | 4 | | 4658.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683056 | | Staging | | | | EA | | | 1 | | 16488.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683049 | | Staging | | | | EA | | | 1 | | 4595.5 | | | |
| Superior - Lafayette | Superior Energy Services | 3106894B-M4498-2 | | Staging | | | | EA | | | 1 | | 8767.5 | | | |
| Superior - Lafayette | Superior Energy Services | WO00683020 | | Staging | | | | EA | | | 1 | | 1876 | | | |
| Superior - Lafayette | Superior Energy Services | TLS-002872-8 | | Assembly | | | | EA | | | 1 | | 6972 | | | |
| Superior - Lafayette | Superior Energy Services | TLS-002872-7 | | Assembly | | | | EA | | | 1 | | 12285 | | | |
| Technip - Broussard | Technip FMC | JO 66490-02 | JO 66490-02 | RMA203008 | INSTRUMENT FLANGE BODY, 3 1/16 15K DRILL | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | PFI-056577 | PFI-056577 | 203111 TRNSFR FR FMC HOU | CM-1, 13 3/8 TIEBACK ADAPTER ASSY, 13 5/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 2009-07-133T | 2009-07-133T | 203064 | TUBING HEAD ASSY, TCM-ET 9 3/4 HPE BTM P | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | RMC100984-L | RMC100984-L | 203027 | TERMINATING FLANGE ASSY, 1-18K BX-SPCL P | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | RMC99784-L | RMC99784-L | 203008 | TERMINATING FLANGE ASSY, 1-18K BX-SPCL P | | | EA | | | 1 | | 3900 | | | |
| Technip - Broussard | Technip FMC | 2009-07-15T | 2009-07-15T | | 1 13/16"-15K, Manual GV Assy | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 2005-07-801H | 2005-07-801H | 203008 | GV ASSY SURFACE, M150 VLT, FE 3 1/16-15K | | | EA | | | 1 | | 9750 | | | |
| Technip - Broussard | Technip FMC | 2006-06-62T | 2006-06-62T | 203027 | GV ASSY SURFACE, M150 VLT, FE 3 1/16-15K | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 2006-06-61T | 2006-06-61T | 203027 | GV ASSY SURFACE, M150 VLT, FE 3 1/16-15K | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | FF25554-01 | FF25554-01 | 203008 | BLIND FLANGE, 3 1/16-15K FLG, FF, PSL 2, | | | EA | | | 1 | | 560 | | | |
| Technip - Broussard | Technip FMC | 300024518 | 300024518 | 203008 | TREE CAP ADAPTER, B-11-AO, ASSY, 3 1/16- | | | EA | | | 1 | | 4980 | | | |
| Technip - Broussard | Technip FMC | 12506-01 | 12506-01 | 203027 | TREE CAP ADAPTER, B-11-AO, ASSY, 3 1/16- | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | WO#34626-01 | WO#34626-01 | 203027 | CROSS ASSY, C-600 (STDD), 3 1/16 15K API | | | EA | | | 1 | | 8994.32 | | | |
| Technip - Broussard | Technip FMC | HT-5524-1 | HT-5524-1 | 203008 | CROSS ASSY, C-600 (STDD), 3 1/16 15K API | | | EA | | | 1 | | 3166 | | | |
| Technip - Broussard | Technip FMC | 62661-13 | 62661-13 | 203110 TRNSFR FR FMC HOU | MQC 12 LONG TERM PROTECTION CAP W/OUT RO | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | HO32321-02 | HO32321-02 | RMA203281 | TREE CAP ASSY, HES STYLE, SPCL, 7-1/16 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | HO32334-02 | HO32334-02 | RMA203281 | 17D VALVE ASSY, CM-1 PRODUCTION TREE, 2X | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | RB261196 | RB261196 | 203110 TRNSFR FR FMC HOU | CM-1, 9 5/8 TIEBACK ADAPTER ASSY, 9 5/8 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 98-1117H | 98-1117H | RMA203281 | GV ASSY, S/S, M130, FE, ACTD, 3 1/16 10K | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | LAF6711 | LAF6711 | RMA203281 | OBS-CM-1, TUBING HEAD ASSY, SUPER PART, | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 98-1209-H | 98-1209-H | RMA203281 | ANNULUS WING VALVE BLOCK ASSY, SUBSEA M1 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | HO32390-01 | HO32390-01 | RMA203281 | OBS-CM-1, TUBING HANGER ASSY, 9.295/9.28 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | HO32433-02 | HO32433-02 | RMA203281 | OBS-CM-1, 13 5/8-5K CLAMP HUB (MOD) TOP | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | MWS84993-01 | MWS84993-01 | RMA203281 | BLIND FLANGE, 1-12.5K FLG, HH, PSL 3, P- | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | MWS84993-09 | MWS84993-09 | RMA203281 | BLIND FLANGE, 1-12.5K FLG, HH, PSL 3, P- | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | HD21732-02 | HD21732-02 | 203059 | TEE ASSEMBLY, T-608, 3 1/16-10000 X 2 9/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | WO-21575-01 | WO-21575-01 | RMA203128 | TEE ASSEMBLY, T-608, 3 1/16-10000 X 2 9/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 1054891-2 | 1054891-2 | 203110 TRNSFR FR FMC HOU | HOSE AND CONNECTOR ASSY, 1 X 1 LEGS, F/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 1054892-2 | 1054892-2 | 203110 TRNSFR FR FMC HOU | HOSE AND CONNECTOR ASSY, 1 X 2 LEGS, F/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 1054890-2 | | 203110 TRNSFR FR FMC HOU | SENSOR ASSY, 4-20 MA, W/ PRESSURE TRANSD | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 1054889-2 | 1054889-2 | 203110 TRNSFR FR FMC HOU | SENSOR ASSY, 4-20 MA, W/ PT/TT AND 4-WAY | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 2008-10-09165 | 2008-10-09165 | 203110 TRNSFR FR FMC HOU | CM-1, COMPOSITE TREE SUPER ASSY, 10K WP, | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 2009-03-77T | 2009-03-77T | 203110 TRNSFR FR FMC HOU | CM-1, TUBING HEAD ASSY, 13 5/8-5K SL-II | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | AM1252-01 | AM1252-01 | 203110 TRNSFR FR FMC HOU | CM-1, TUBING HANGER ASSY, 3 1/2 (9.3 LB/ | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | AD22144-01 | AD22144-01 | 203110 TRNSFR FR FMC HOU | CROSSOVER JOINT, 20 API BC THD PIN TOP X | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | PFI061348 | PFI061348 | 203008 | TUBING HANGER ASSY, TC-1A-EMS, 11 FLG, 1 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | 030373-01-01 | 030373-01-01 | 203027 | TUBING HANGER ASSY, TC-1A-EMS, 11 FLG, 3 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | DO710001-08 | DO710001-08 | 203110 TRNSFR FR FMC HOU | SD-1, BUTTWELD SUB, 30, 26.385 MIN ID, D | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | AD-21319-01 | AD-21319-01 | RMA203237 | ADAPTER BODY, A-4-M, 11-15K STDD BTM X 3 | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | PFI058777 | PFI058777 | 203111 TRNSFR FR FMC HOU | CROSSOVER JOINT, 9 5/8 (47.00 LB/FT) BC | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | PFI058778 | PFI058778 | 203110 TRNSFR FR FMC HOU | CROSSOVER JOINT, 9 5/8 (47.00 LB/FT) BC | | | EA | | | 1 | | 0 | | | |
| Technip - Broussard | Technip FMC | PFI057990 | PFI057990 | 203111 TRNSFR FR FMC HOU | CROSSOVER JOINT, 13 3/8 (68.00 LB/FT) BC | | | EA | | | 1 | | 0 | | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Technip - Broussard | Technip FMC | PF1057991 | PF1057991 | 203110 TRNSFR FR FMC HOU | CROSSOVER JOINT, 13 3/8 (68.00 LB/FT) BC | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | HN-27639-SB | HN-27639-SB | 203110 TRNSFR FR FMC HOU | X-MAS TREE, HYDRAULIC CONTROLS KIT, F/ T | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 2006-06-183T | 2006-06-183T | 203027 | GV ASSY SURFACE, M150, FE 3 1/16-15K, RE | | | EA | | | 1 | | | 18556.69 | | |
| Technip - Broussard | Technip FMC | 2006-06-250T | 2006-06-250T | 203027 | GV ASSY SURFACE, M150, FE 3 1/16-15K, RE | | | EA | | | 1 | | | 18556.69 | | |
| Technip - Broussard | Technip FMC | 2005-09-32T | 2005-09-32T | 203008 | GV ASSY SURFACE, M150, FE 3 1/16-15K, RE | | | EA | | | 1 | | | 6210 | | |
| Technip - Broussard | Technip FMC | PFI044523 | PFI044523 | 203027 | INSTRUMENT FLANGE BODY, 3 1/16 15K DRILL | | | EA | | | 1 | | | 2185.39 | | |
| Technip - Broussard | Technip FMC | PFI044524 | PFI044524 | 203027 | INSTRUMENT FLANGE BODY, 3 1/16 15K DRILL | | | EA | | | 1 | | | 2185.39 | | |
| Technip - Broussard | Technip FMC | PFI038246-001 | PFI038246-001 | 203008 | INSTRUMENT FLANGE BODY, 3 1/16 15K DRILL | | | EA | | | 1 | | | 778 | | |
| Technip - Broussard | Technip FMC | PFI038246-003 | PFI038246-003 | 203008 | INSTRUMENT FLANGE BODY, 3 1/16 15K DRILL | | | EA | | | 1 | | | 778 | | |
| Technip - Broussard | Technip FMC | 2006-06-72T | 2006-06-72T | 203027 | LOWER MASTER BLOCK VALVE, ASSY, S1, 3 1/ | | | EA | | | 1 | | | 65461.23 | | |
| Technip - Broussard | Technip FMC | 2005-09-189T | 2005-09-189T | 203008 | LOWER MASTER BLOCK VALVE, ASSY, S1, 3 1/ | | | EA | | | 1 | | | 23700 | | |
| Technip - Broussard | Technip FMC | HN-P3576 | HN-P3576 | 203008 | TUBING HANGER ASSY, TC-1A-EMS, 11 FLG, 3 | | | EA | | | 1 | | | 18960 | | |
| Technip - Broussard | Technip FMC | LAF6589 | LAF6589 | RMA203122 | TUBING HEAD TCM 11" 10K FLG BTM X 7-1/16 | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6590 | LAF6590 | RMA203122 | TUBING HEAD OCT 7-1/16" 10K X 3-1/16" | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6596 | LAF6596 | RMA203122 | TREE CAP BODY 3" 10K | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | GA3186/1501/7/1 | GA3186/1501/7/1 | RMA203281 | PACSON VALVE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6712 | LAF6712 | RMA203281 | PACSON VALVE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | GA3186/1501/1/6 | GA3186/1501/1/6 | RMA203281 | PACSON VALVE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | GA3186/1501/1/10 | GA3186/1501/1/10 | RMA203281 | PACSON VALVE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 771965-1 | 771965-1 | RMA203122 | GATE VALVE ASSY 3-1/16" 10K WKM M2 MANUA | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 13530-4 | 13530-4 | RMA203122 | GATE VALVE ASSY 3-1/16 10K W/AXELSON ACT | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 429123 | 429123 | RMA203122 | GATE VALVE ASSY 3-1/16 10K MANUAL WKM M2 | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 5005180-5 | 5005180-5 | RMA203122 | GATE VALVE ASSY 2-9/16" 10K MANUAL VETCO | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 480655-1 | 480655-1 | RMA203122 | GATE VALVE ASSY 2-9/16 10K MANUAL M1 WKM | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6739 | LAF6739 | RMA203122 | GATE VALVE ASSY 1-13/16" 10K MANUAL WKM | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6738 | LAF6738 | RMA203122 | GATE VALVE ASSY 1-13/16" 10K MANUAL OTIS | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6595 | LAF6595 | RMA203122 | DOUBLE STDD ADAPTER 2-9/16" 10K X | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6592 | LAF6592 | RMA203122 | DOUBLE STDD ADAPTER 2-9/16 10K X | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | CC191267/1 | CC191267/1 | 203018 | CHOKE ASSY: POS. 3 1/16 15K FLG INLET X | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6496 | LAF6496 | 203059 | CHOKE ASSY: ADJ.2 9/16 10K FLG INLET/ FL | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | AO-0041 | AO-0041 | 203027 | CHOKE ASSY,ADJ.3 1/15K FLG.INLET X FLG.O | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6593 | LAF6593 | RMA203122 | CHOKE ASSY POS 1-13/16" 10K x FLG INLET | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 95-02137H | 95-02137H | 155851 | OBSOLETE & NOT REPLACED - 14D GV ASSY FE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 95-11193-H | 95-11193-H | RMA203128 | OBSOLETE & NOT REPLACED - 14D GV ASSY FE | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 98-01139H | 98-01139H | 155851 | *** OBSOLETE AND REPLACED BY P168609 *** | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 97-03106-H | 97-03106-H | RMA203128 | *** OBSOLETE AND REPLACED BY P168609 *** | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 95-03140H | 95-03140H | 155851 | GV ASSY MOD130 3-1/16 FB | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 97-02113-H | 97-02113-H | RMA203128 | GV ASSY MOD130 3-1/16 FB | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 97-02114-H | 97-02114-H | RMA203128 | GV ASSY MOD130 3-1/16 FB | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | LAF6495 | LAF6495 | 155851 | GV ASSY SURFACE, M130, FE 2 9/16-10K, PR | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 97-02123-H | 97-02123-H | RMA203128 | GV ASSY SURFACE, M130, FE 2 9/16-10K, PR | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 2007-08-106H | 2007-08-106H | 203111 TRNSFR FR FMC HOU | MQC6 INBOARD ASSEMBLY MINI (3)PSI, NA, 1Q | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | RMC101750-A-01 | RMC101750-A-01 | 203111 TRNSFR FR FMC HOU | SD-1, TIEBACK SUB, ASSY, 9 5/8, 9 5/8 BC | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | HO45569 | M6893-02 | 203110 TRNSFR FR FMC HOU | SD-1, TIEBACK SUB, ASSY, 9 5/8, 9 5/8 BC | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | RMC-101750-A02 | RMC101750-A-02 | 203110 TRNSFR FR FMC HOU | SD-1, ASSEMBLY, TIEBACK SUB, 7", W/7" AP | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | RMC103989-02 | RMC103989-02 | 203111 TRNSFR FR FMC HOU | SD-1, CASING HANGER, ASSY, 9 5/8 X 7, 7 | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | RMC103989-01 | RMC103989-01 | 203110 TRNSFR FR FMC HOU | SD-1, CASING HANGER, ASSY, 9 5/8 X 7, 7 | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 2006-09-104-2 | HN-200609104-2 | 203111 TRNSFR FR FMC HOU | SD-1, CASING HANGER, ASSY, 13 3/8 X 9 5/ | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | 2006-09-096-7 | 2006-09-096-7 | 203111 TRNSFR FR FMC HOU | SD-1, CASING HANGER, ASSY, 20 X 13 3/8, | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | HE0612015-3MT | HE0612015-3MT | 203111 TRNSFR FR FMC HOU | SD-1, CASING HANGER, ASSY, 30 X 20, 20 B | | | EA | | | 1 | | | 0 | | |
| Technip - Broussard | Technip FMC | HO29400 | HO29400 | RMA203128 | ADPTR ASSY, A-4-M, 11 10K STD'D BTM X 3 | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633156CP | 13A00100 | HD A0BC | S25-SV FLOAT COLLAR S 21.44 P-110 EC (125X5) ULTRA-FJ BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633156CP | 13A00110 | HD A0BC | S25-SV FLOAT COLLAR S 21.44 P-110 EC (125X5) ULTRA-FJ BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633157CP | 13A00111 | HD A1ZD | S26-DV NON-AUTOFILL SETSHOE S21.44 P-110 EC (125X5) ULTRA-FJ BOX X AL BLADED NOSE W/SIDE PORTS (1-PC) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633157CP | 13A00112 | HD A1ZD | S26-DV NON-AUTOFILL SETSHOE S21.44 P-110 EC (125X5) ULTRA-FJ BOX X AL BLADED NOSE W/SIDE PORTS (1-PC) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-108383CP | 08E02274 | HD A26C | RP SPLINE SUB X-PAK S-1/2 17#P-110 ULTRA-FJ 8XP W/5.875 OD | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119720CP | 13A00100 | HD A26C | RP SPLINE SUB X-PAK S 21.4# P-110 EC (125X5) ULTRA-FJ BOX X PIN F/UPR-C & W/5.500 OD | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633154CP | 13A00097 | HD A26C | X-PAK LNR HGR S 21.4# P-110 EC (125X5) ULT-FJ PIN X 7 42.7# *COLLET #110515* (F/14" STROKE TL) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633154CP | 13A00098 | HD A26C | X-PAK LNR HGR S 21.4# P-110 EC (125X5) ULT-FJ PIN X 7 42.7# *COLLET #110515* (F/14" STROKE TL) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-634038CP | 14F04050 | HD A26C | DPOB W/GREASE PORT S-1/2 17# P-110 ULTRA-FJ BOX X 20# 5TL PIN F/2.594 OD POL NPL | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119720CP | 13A00099 | HD A26D | RP SPLINE SUB X-PAK S 21.4# P-110 EC (125X5) ULTRA-FJ BOX X PIN F/UPR-C & W/5.500 OD | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119721CP | 13A00101 | HD A26D | EXT NPL S 21.4# P-110 EC (125X5) ULTRA-FJ BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119721CP | 13A00102 | HD A26D | EXT NPL S 21.4# P-110 EC (125X5) ULTRA-FJ BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119721CP | 13A00103 | HD A26D | EXT NPL S 21.4# P-110 EC (125X5) ULTRA-FJ BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119721CP | 13A00104 | HD A26D | EXT NPL S 21.4# P-110 EC (125X5) ULTRA-FJ BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633155CP | 13A00105 | HD A26D | DRILLABLE PO BUSH S 21.4# P-110 EC ULTRA-FJ BOX X PIN W/O-RG INSERT & F/2.594 OD POL NPL | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-633155CP | 13A00106 | HD A26D | DRILLABLE PO BUSH S 21.4# P-110 EC ULTRA-FJ BOX X PIN W/O-RG INSERT & F/2.594 OD POL NPL | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-521937CP | 14F04053 | HD A30C | 226-DV NON-AUTO FILL SETSHOE S-1/2 20# P-110 5TL BOX X CEMENT NOSE | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-528641CP | 14F04051 | HD A30C | PDC O-L LANDING COLLAR S-1/2 20# P-110 5TL BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-634039CP | 14F04052 | HD A30C | 225-SV FLOAT COLLAR S-1/2 20#P-110 5TL BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-528646CP | 13A00107 | HD A31B | PDC O-L LANDING COLLAR S 21.4# P-110 EC (125X5) ULTRA-FJ BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-528646CP | 13A00108 | HD A31B | PDC O-L LANDING COLLAR S 21.4# P-110 EC (125X5) ULTRA-FJ BOX X PIN | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-108577CP | 13C01637 | HDX A27B | TIE BACK EXPANDER X-PAK LH S-1/2 17# X 7-5/8 29.7# W/5.500 ID X 48" LG RECPT | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-108384CP | 13H03696 | HDX A35E | EXT NPL S-1/2 17# P-110 ULTRA-FJ BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119650CP | 13A00014 | HDX A35E | EXT NPL S-1/2 20# P-110 5TL BOX X PIN X 48" LG | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119718CP | 13A00095 | HDX A35E | TIE-BACK EXPANDER X-PAK LH S 15-23.2# X 7 42.7# W/4.875 ID X 48" RECPT (F/14" STROKE TL) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-119718CP | 13A00096 | HDX A35E | TIE-BACK EXPANDER X-PAK LH S 15-23.2# X 7 42.7# W/4.875 ID X 48" RECPT (F/14" STROKE TL) | | | EA | | | 1 | | | 0 | | |
| TIW - Houston | TIW Corporation | 3-630211CP | 08E02273 | HDX A35E | X-PAK LNR HGR S-1/2 17# P-110 ULTRA-FJ PIN X 7-5/8 29.7# * COLLET #097434 * | | | EA | | | 1 | | | 0 | | |
| Ward Leonard - Houma | Ward Leonard | | | | GENERATOR, 4800KW KATO WITH 2 JUNCTION BOXES, SN-43589-01, 4160 VOLTAGE, 1800 RPM | | | EA | | | 1 | | | 262037.44 | | |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | WI% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ward Leonard - Houma | Ward Leonard | | | | GENERATOR; 1000KW MARATHON WITH JUNCTION BOXES PARTS, SN-WA-6002753-0616 | | | EA | | | 1 | | 0.01 | | | |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P7010 | TECHHOLD PKR,7,32-35,3.880 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 5135 | 1 | 5135 |
| LAF-Southpark | Halliburton | ZCUSSH101398678 | | C019 | COMB CPLG,3 1/2 UN-2B X 3 1/2 API-NU | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 826 | 1 | 826 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | CS85 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 914.85 | 1 | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | CS85 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 914.85 | 1 | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101522287 | | CS00 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 914.85 | 1 | 914.85 |
| LAF-Southpark | Halliburton | ZCUSSH101603543 | | C010 | SUB,BOT,MGP,5 1/2-10 UNS-2A X 5 1/4-10 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 917.92 | 1 | 917.92 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P048 | TECHHOLD PKR,7,32-35,3.880 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 4022.68 | 1 | 4022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | CS85 | TECHHOLD PKR,7,32-35,3.880 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 4022.68 | 1 | 4022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | CS85 | TECHHOLD PKR,7,32-35,3.880 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 4022.68 | 1 | 4022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101603791 | | P7010 | TECHHOLD PKR,7,32-35,3.880 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 4022.68 | 1 | 4022.68 |
| LAF-Southpark | Halliburton | ZCUSSH101652773 | | CS006 | LN,2.750,513CR,3 1/2-9.2 VARST1,B-P | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 728.83 | 1 | 728.83 |
| LAF-Southpark | Halliburton | ZCUSSH101858738 | | CS011 | PKR,7,32-35,4 1/2-4 AC-2G-LH .SCB | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 6494.54 | 1 | 6494.54 |
| LAF-Southpark | Halliburton | ZCUSSH101939766 | | CS85 | LOC,NO-GO,4-13.20 VARST1 X 3 1/2-12 UN-2 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 793.54 | 1 | 793.54 |
| LAF-Southpark | Halliburton | ZCUSSH101939766 | | CS85 | LOC,NO-GO,4-13.20 VARST1 X 3 1/2-12 UN-2 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 793.54 | 1 | 793.54 |
| LAF-Southpark | Halliburton | ZCUSSH100008579 | | C028 | GID,TUBE,WD,5 3/8-10 UNS,7,32-38 X 4.00 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 493 | 1 | 493 |
| LAF-Southpark | Halliburton | ZCUSSH101252847 | | C002 | MDRL,NWD,4 1/2-12 UN-2A X 4 1/2 API-LC,7 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 889 | 1 | 889 |
| LAF-Southpark | Halliburton | ZCUSSH101290361 | | C027 | MULE SHOE GID,3 1/2-12 UN BOX | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 268 | 1 | 268 |
| LAF-Southpark | Halliburton | ZCUSSH101346768 | | C358 | CLO SLV ASSY,MPT,5 1/4-10 UNS X 5-18 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 2643 | 1 | 2643 |
| LAF-Southpark | Halliburton | ZCUSSH101346768 | | P11 | CLO SLV ASSY,MPT,5 1/4-10 UNS X 5-18 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 2643 | 1 | 2643 |
| LAF-Southpark | Halliburton | ZCUSSH101555004 | | C358 | REDCG ADPTR,2 1/4 OTIS-ST X 2 3/8-4.60 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 415 | 1 | 415 |
| LAF-Southpark | Halliburton | ZCUSSH101555004 | | C358 | REDCG ADPTR,2 1/4 OTIS-ST X 2 3/8-4.60 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 415 | 1 | 415 |
| LAF-Southpark | Halliburton | ZCUSSH101555547 | | C046 | SEAL ASSY,2.650 X 2 1/4 OTIS-ST | | SHELL TROIKA GC 200 TA 3 | EA | | | 16 | | | 468.79 | 1 | 468.79 |
| LAF-Southpark | Halliburton | ZCUSSH101575482 | | C358 | REDCG ADPTR,2 3/8-4.60 TSH 511 X 2 1/4 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 461 | 1 | 461 |
| LAF-Southpark | Halliburton | ZCUSSH101575482 | | C358 | REDCG ADPTR,2 3/8-4.60 TSH 511 X 2 1/4 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 461 | 1 | 461 |
| LAF-Southpark | Halliburton | ZCUSSH323456 | | CS002 | SEAL UNIT EXT,3 1/2-12 UN,B-P,3.88 | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 813 | 1 | 813 |
| LAF-Southpark | Halliburton | ZCUSSH101944453 | | CS006 | COL SHFT TL,8S1,2.770,41XX LAS | | SHELL TROIKA GC 200 TA 3 | EA | | | 4 | | | 1532 | 1 | 1532 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | P11 | TRV JT,3 1/2-9.20 VARST1 B-P | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 148 | 1 | 148 |
| LAF-Southpark | Halliburton | ZCUSSH102127370 | | C7012 | FLDLOSS DVC,FS2-L,5,470,2.770,.SCB | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 16617 | 1 | 16617 |
| LAF-Southpark | Halliburton | ZCUSSH102132850 | | CS006 | SEAL ASSY,3.880 X 3 1/2-12 UN,MLD AFLAS | | SHELL TROIKA GC 200 TA 3 | EA | | | 5 | | | 595 | 1 | 595 |
| LAF-Southpark | Halliburton | ZCUSSH102138028 | | CS006 | PERF COL LOCTR,4.000 X 2 7/8 API-EU | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 2758 | 1 | 2758 |
| LAF-Southpark | Halliburton | ZCUSSH102138040 | | CS006 | MULESHOE GDE,3 1/4-8 UN-2B,BOX,WITH BAF | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 374.23 | 1 | 374.23 |
| LAF-Southpark | Halliburton | ZCUSSH102154734 | | CS006 | SHR JT ASSY,3 1/2-9.20 VARST1,B-P | | SHELL TROIKA GC 200 TA 3 | EA | | | 3 | | | 162 | 1 | 162 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | BS-R1-RW4 | TRV JT,3 1/2-9.20 VARST1 B-P | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 162 | 1 | 162 |
| LAF-Southpark | Halliburton | ZCUSSH102004784 | | BS-R2-RW4 | TRV JT,3 1/2-9.20 VARST1 B-P | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 162 | 1 | 162 |
| LAF-Southpark | Halliburton | ZCUSSH102127370 | | C7011 | FLDLOSS DVC,FS2-L,5,470,2.770,.SCB | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 16617 | 1 | 16617 |
| LAF-Southpark | Halliburton | ZCUSSH102134650 | | CS006 | LOC,NO-GO,3 1/2-9.20 VARST1 X 3 1/2-12 | | SHELL TROIKA GC 200 TA 3 | EA | | | 2 | | | 876.98 | 1 | 876.98 |
| GE - Broussard | GE - Broussard | H10004-2 | | | SCREW,CAP,HEX COLLAR, 2.000- 8 X 9.000 LG,UN-2A, LOW TEMPERATURE SERVICE | | SHELL TROIKA GC 200 TA 3 | EA | | | 24 | | | 697 | 1 | 697 |
| OES - Broussard | Offshore Energy Services | GPS241-1 | | | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-110Y VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GPS241-2 | | | 3-WAY SHOOT AROUND(3.5" 9.20# AF913-110Y VARST-1 BOX / 5.5" 16.87# STL PIN / 3.5" 9.20# VARST-1 BOX 2FT) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GPS235-6 | | | COUPLING (3.5" 9.20# 13CRM110 VARST-1) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GPS233-1 | | | CROSSOVER (5.5" 16.87# STL BOX / 3.5" 9.20# VARST-1 PIN AF913-110Y 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GPS233-2 | | | CROSSOVER (5.5" 16.87# STL BOX / 3.5" 9.20# VARST-1 PIN AF913-110Y 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GPS239-2 | | | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GPS239-3 | | | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GPS239-4 | | | PUP JOINT (3.5" 9.20# 13CRS110 VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GPS240-1 | | | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |

Exhibit D-1 (continued)

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GP5240-2 | | | PUP JOINT (5.5" 17# 13CR110Y HYPTP1 FOX K PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5036-1 | | | CROSSOVER (3.5" 9.20# 13CR5110Y VARST-1 BOX/ 3.5" 9.20# TSH 511 BOX 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GP5036-2 | | | CROSSOVER (3.5" 9.20# 13CR5110Y VARST-1 BOX/ 3.5" 9.20# TSH 511 BOX 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GP5037-1 | | | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GP5037-2 | | | CROSSOVER (5" 14.87# STL PIN AF913-110Y X 3.5" 9.20# VARST-1 PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 500 | 1 | 500 |
| OES - Broussard | Offshore Energy Services | GP5035-1 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-2 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-3 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-4 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-5 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-6 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-7 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-8 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5035-9 | | | PUP JOINT (3.5" 9.20# 13CRM110 VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5019-1 | | | PUP JOINT (3.5" 9.20# 13CR110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5019-2 | | | PUP JOINT (3.5" 9.20# 13CR110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5019-3 | | | PUP JOINT (3.5" 9.20# 13CR110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5019-4 | | | PUP JOINT (3.5" 9.20# 13CR110Y VARST-1 20FT PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5030-3 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5030-4 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5030-5 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5030-6 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-1 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-2 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-3 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-4 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-5 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-6 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5040-7 | | | PUP JOINT (3.5" 9.20# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5042-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 10FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5048-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 12FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5047-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 14FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5038-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 2FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5039-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5039-2 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5039-3 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 4FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5045-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 6FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5043-1 | | | PUP JOINT (4.5" 15.10# 13CRM110Y VARST-1 PIN/PIN 8FT) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 45 | 1 | 45 |
| OES - Broussard | Offshore Energy Services | GP5063-1 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-2 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-3 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-4 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-5 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-6 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-7 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5063-8 | | | RANGE 2 JOINT (3.5" 9.20# 13CR110Y MOD TSH 511 BOX/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GP5060-1 | | | RANGE 2 JOINT (3.5" 9.20# 13CR5110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Number | Project Name | UOM | Condition | Wt. (lbs) | On Hand Qty | Length | Average Cost | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OES - Broussard | Offshore Energy Services | GPS060-10 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-2 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-3 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-4 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-5 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-6 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-7 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-8 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS060-9 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS266-1 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| OES - Broussard | Offshore Energy Services | GPS266-2 | | | RANGE 2 JOINT (3.5" 9.20# 13CRS110Y VARST-1 PIN/PIN) (C-LEVEL) | | SHELL TROIKA GC 200 TA 3 | EA | | | 1 | | | 82 | 1 | 82 |
| Schiever | Weatherford | S41R070SLI2Q12A002 | | | SUB, CENTRALIZER ROT 7 541R Q125 VAM SLU-II 32.0 9.75 OD | | SHELL TROIKA GC 200 TA 3 | EA | | | 20 | | | 635 | 1 | 635 |
| Schiever | Weatherford | M212W70SLI2Q12A002 | | | SHOE, GUIDE 7 M212W CONC CMPST Q125 VAM SLU-II 32.0 | | SHELL TROIKA GC 200 TA 3 | EA | | | 2 | | | 471.18 | 1 | 471.18 |
| Schiever | Weatherford | M4SAP70SLI2Q12A002 | | | COLLAR, FLOAT 7 M49AP Q125 NR VAM SLU-II 32.0 2-4 | | SHELL TROIKA GC 200 TA 3 | EA | | | 2 | | | 1092.48 | 1 | 1092.48 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | | 1-Stairway with Handrails, 1-Caged Access Ladder, & 2-Small Deck Extension/Work Platofrms | | Green Canyon Block# 65 "A" | EA | | | 1 | | | 225 | 1 | 225 |

# Exhibit E
## Permits

## Part 1.  Co-Owned Permits

| Block | Lease | Permit |
|-------|-------|--------|
| GI 32 | 00174 | No active/pending permits at this time |
| GI 39 | 00126 | No active/pending permits at this time |
| GI 39 | 00127 | No active/pending permits at this time |
| GI 40 | 00128 | APM Well No. M001 - Recomp to PI E1 |
| GI 41 | 00129 | Segment 17191 - Pipeline Repair; In Review |
| GI 41 | 00130 | No active/pending permits at this time |
| GI 42 | 00131 | No active/pending permits at this time |
| GI 43 | 00175 | No active/pending permits at this time |
| GI 44 | 00176 | No active/pending permits at this time |
| GI 46 | 00132 | No active/pending permits at this time |
| GI 47 | 00133 | No active/pending permits at this time |
| GI 48 | 00134 | No active/pending permits at this time |
| GI 52 | 00177 | No active/pending permits at this time |
| GI 110 | G13943 | No active/pending permits at this time |
| GI 116 | G13944 | No active/pending permits at this time |
| MC 110 | G18192 | No active/pending permits at this time |
| SM 41 | G01192 | No active/pending permits at this time |
| SM 48 | 00786 | No active/pending permits at this time |
| SM 149 | G02592 | C001 (APM for CT Cleanout/Modify Perfs) |
| SP 60 | G01609 | No active/pending permits at this time |
| ST 53 | G04000 | No active/pending permits at this time |
| ST 67 | 00020 | No active/pending permits at this time |
| WD 67 | 00179 | No active/pending permits at this time |
| WD 68 | 00180 | No active/pending permits at this time |

WEIL:\97869848\10\45327.0007

| Block | Lease | Permit |
|-------|-------|--------|
| WD 69 | 00181 | No active/pending permits at this time |
| WD 70 | 00182 | APMs for Well Nos. WD70 I002, I007 & L005 - Conductor Repairs<br>Well No. I014 - Install Lower PB Valve<br>Well No. O004 - TTRC to JR Sand |
| WD 71 | 00838 | APMs for PA Well Nos. E006 & E009<br>WD71 Well Nos. O002 & O007- Conductor Repairs<br>WD71 Well No. O008 - APM for PA |
| WD 94 | 00839 | No active/pending permits at this time |
| WD 95 | G01497 | No active/pending permits at this time |
| WD 96 | G01498 | No active/pending permits at this time |

## Part 2. **Other Permits**

| Block | Lease | Permits |
|-------|-------|---------|
| AT 023 | G35015 | No active/pending permits at this time |
| BS 025 | G31442 | No active/pending permits at this time |
| EC 345 | G15156 | No active/pending permits at this time |
| EW 789 | G35805 | No active/pending permits at this time |
| EW 790 | G33140 | No active/pending permits at this time |
| EW 828 | G35806 | No active/pending permits at this time |
| EW 834 | G27982 | No active/pending permits at this time |
| EW 835 | G33707 | No active/pending permits at this time |
| EW 1009 | G34878 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| EW 1010 | G34879 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| EW 1011 | G34880 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| GC 39 A | G34966 | Approved Revised EP Control No.R-6837 to drill/complete well B |
| GC 39 B | G36476 | No active/pending permits at this time |
| GC 040 | G34536 | Revised DWOP in-review w/BSEE; approved Revised EP Control No.R-6837 to drill/complete wells C, F, I, J |

WEIL:\97869848\10\45327.0007

| Block | Lease | Permits |
|-------|-------|---------|
| GC 041 | G34537 | Nothing pending for any Seller |
| GC 064 | G34539 | No permits are pending |
| GC 065 | G05889 | GC65 A - Proposed Helideck Repair Plan in review.<br>GC65 A037 - Casing Departure Request; pending |
| GC 108 | G14668 | No active/pending permits at this time |
| GC 109 | G05900 | No active/pending permits at this time |
| GC 153 | G36814 | No active/pending permits at this time |
| GC 198 | G36021 | No active/pending permits at this time |
| GC 200 | G12209 | Supplemental EP Control No.S-7931 approved to drill TA010, TA012, TA014, TA016, TA017, TA018 |
| GC 201 | G12210 | No active/pending permits at this time |
| GC 238 | G26302 | No active/pending permits at this time |
| GC 243 | G20051 | No active/pending permits at this time |
| GC 244 | G11043 | No active/pending permits at this time |
| GC 282 | G16727 | No active/pending permits at this time |
| GC 679 | G21811 | No active/pending permits at this time |
| GC 768 | G21817 | No active/pending permits at this time |
| HI 176 | G27509 | APM to PA Well No.'s 002 & 003 |
| MC 118 | G35963 | No active/pending permits at this time |
| MC 119 | G36537 | No active/pending permits at this time |
| MC 162 | G36880 | No active/pending permits at this time |
| MC 163 | G36538 | No active/pending permits at this time |
| MC 171 | G34428 | No active/pending permits at this time |
| MC 172 | G34429 | No active/pending permits at this time |
| MC 206 | G36540 | No active/pending permits at this time |
| MC 297 | G34434 | No active/pending permits at this time |
| MC 380 | G36544 | No active/pending permits at this time |
| MC 424 | G36545 | No active/pending permits at this time |
| MC 435 | G36772 | No active/pending permits at this time |
| MC 436 | G36773 | No active/pending permits at this time |

Exhibit E – Page 3

| Block | Lease | Permits |
|-------|-------|---------|
| MC 474 | G35825 | MC519 #2 - Casing Departure Request; pending |
| MC 518 | G35828 | No active/pending permits at this time |
| MC 519 | G27278 | Preparing RDOCD to capture new flowline installation |
| MC 562 | G19966 | No active/pending permits at this time |
| MC 563 | G21176 | No active/pending permits at this time |
| MC 691 | G36400 | No active/pending permits at this time |
| MC 697 | G28021 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| MC 698 | G28022 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| MC 742 | G32343 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| MC 743 | G36401 | No active/pending permits at this time |
| MC 782 | G33757 | Active departure for #002 well for cycling zones (will continue to be renewed every 4 months) |
| MC 789 | G36557 | No active/pending permits at this time |
| MC 793 | G33177 | No active/pending permits at this time |
| MC 904 | G36566 | No active/pending permits at this time |
| MC 905 | G36405 | No active/pending permits at this time |
| MC 948 | G28030 | Approved SDOCD Control No. S-8000 for #001 well (SHL in MC948/BHL in MC992) to sidetrack & produce well + install 2 LT pipelines |
| MC 949 | G32363 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| MC 992 | G24133 | Approved SDOCD Control No. S-8000 for #001 well (SHL in MC948/BHL in MC992) to sidetrack & produce well + install 2 LT pipelines |
| MC 993 | G24134 | Nothing filed under FW yet (previous Noble submittals need to be re-permitted under FW when operations determined) |
| SM 040 | G13607 | No active/pending permits at this time |
| SS 079 | G15277 | No active/pending permits at this time |
| SS 301 | G10794 | SOP Approved with contingency that the A004 recompletion will need to begin by January 31, 2021 Segment  11050 - Temp Cessation; In Review |
| ST 287 | G24987 | No active/pending permits at this time |
| ST 308 | G21685 | ST308 A002 - Casing Departure Request; pending |
| VR 078 | G04421 | No active/pending permits at this time |
| VR 229 | G27070 | No active/pending permits at this time |

Exhibit E – Page 4

| Block | Lease | Permits |
|---|---|---|
| VR 362 | G10687 | APM for VR362 A003 - Conductor Repair |
| VR 363 | G09522 | No active/pending permits at this time |
| VR 371 | G09524 | RPM for VR 371 A001 (TA)<br>Segment 10675 - Temp Cessation; In Review |
| WD 57, WD 79, WD 80 | G01449 | No active/pending permits at this time |
| WD 79, WD 80 | G01874 | No active/pending permits at this time |
| WD 80 | G01989 | No active/pending permits at this time |
| WD 80 | G02136 | No active/pending permits at this time |

| Onshore Lease | Permits |
|---|---|
| SL-LA 15683 | No active/pending permits at this time |
| SL-LA 17675 | No active/pending permits at this time |
| SL-LA 17860 | No active/pending permits at this time |
| SL-LS 19051 | No active/pending permits at this time |
| SL-LA 19718 | No active/pending permits at this time |
| SL-MS 23017 | No active/pending permits at this time |
| SL-MS 170650 | No active/pending permits at this time |
| SL-MS 230140 | No active/pending permits at this time |
| SL-MS 230150 | No active/pending permits at this time |
| SL-MS 231240 | No active/pending permits at this time |
| SL-TX 5749 | No active/pending permits at this time |
| SL-TX 5797 | No active/pending permits at this time |
| SL-TX 24318 | No active/pending permits at this time |
| SL-TX 106158 | No active/pending permits at this time |
| SL-TX 106159 | No active/pending permits at this time |
| SL-TX 114921 | No active/pending permits at this time |
| SL-TX 172915 | No active/pending permits at this time |

Exhibit E – Page 5

| Onshore Lease | Permits |
|---|---|
| SL-TX 172916 | No active/pending permits at this time |
| SL-TX 178537 | No active/pending permits at this time |
| SL-TX 183756 | No active/pending permits at this time |
| SL-TX 185633 | No active/pending permits at this time |
| SL-TX 186891 | No active/pending permits at this time |
| SL-TX 191681 | No active/pending permits at this time |
| SL-TX 207398 | No active/pending permits at this time |
| SL-TX 227360 | No active/pending permits at this time |
| SL-TX 234082 | No active/pending permits at this time |
| SL-TX 255675 | No active/pending permits at this time |

[End of Exhibit E]

**Exhibit H**
**First Lien Exit Facility Commitment Letter**

*Execution Version*

**GOLDMAN SACHS BANK USA**
**2001 Ross Avenue, Suite 2800**
**Dallas, Texas 75201**

**PRIVATE AND CONFIDENTIAL**

March 24, 2021

Fieldwood Energy LLC
2000 W. Sam Houston Pkwy. S.,
Suite 1200
Houston, TX 77042
Attention: Mike Dane, Chief Financial Officer

Commitment Letter

Ladies and Gentlemen:

Fieldwood Energy LLC, a Delaware limited liability company ("**you**" or the "**Company**"), has informed Goldman Sachs Bank USA ("**we**", "**us**" or "**GS Bank**" and, together with its affiliates, "**Goldman Sachs**") that the Borrower (as defined in **Annex B**), intends to establish the credit facility having the terms set forth in **Annex B** consisting of $118,599,082.31 under a senior secured first lien term loan facility (the "**First Lien Exit Facility**") in connection with the emergence of the Company from proceedings (the "**Chapter 11 Cases**") pending under 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), in order to implement the Transactions (as defined below). The proceeds of the First Lien Exit Facility are expected to be used in accordance with and as provided in the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors*, a copy of which is attached hereto as **Annex C** (including any exhibits and schedules thereto and as further amended, supplemented, or otherwise modified with our consent (not to be unreasonably withheld), the "**Plan**") on the Closing Date (as defined in **Annex B**).

"**Transactions**" means, collectively, the Restructuring Transactions (as defined in the Plan), including, without limitation, the initial borrowings and other extensions of credit made (or deemed made) under the First Lien Exit Facility on the Plan Effective Date and the payment of fees and expenses in connection therewith.

We are pleased to confirm the arrangements under which (i) GS Bank is exclusively authorized by Company and the Borrower to act as sole arranger, administrative agent and collateral agent in connection with the First Lien Exit Facility, and (ii) GS Bank commits to provide the full $118,599,082.31 principal amount of the First Lien Exit Facility, in each case on the terms and subject to the conditions set forth in this letter and in the attached **Annexes A** and **B** hereto (collectively, the "**Commitment Letter**"; capitalized terms used but not defined herein shall have the meanings given to them in the attached **Annex A** or **B**, as applicable). You hereby appoint GS Bank to act in each such role. Certain fees for our services related to the First Lien Exit Facility are set forth in a separate fee letter (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Fee Letter**"), entered into by the Company and GS Bank on the date hereof.

Further, in connection with the Transactions, GS Bank agrees that from the Execution Date to the earlier of (i) the Termination Date or (ii) the occurrence of any of the events listed on **Annex D** attached hereto, it shall (a) support and not object to or support any other person or entity in objecting to or otherwise opposing the Plan, (b) timely vote or cause to be voted the Allowed FLFO Claims in favor of the Plan by delivering or causing to be delivered duly executed and completed ballot or ballots to accept such Plan, and (c) not change or withdraw (or cause or direct to be changed or withdrawn) any such vote in favor of the Plan.

US 7767694v.17

#94351931v2

Our commitments are subject to the following conditions (a) the accuracy and completeness in all material respects (but without duplication of materiality) of all representations that the Company, the Borrower and their respective subsidiaries made to GS Bank in the First Lien Exit Facility Documents (as defined in the Plan) and the Company's compliance in all material respects with the terms of this Commitment Letter and the Fee Letter; and (b) the satisfaction of all conditions precedent set forth in the First Lien Exit Facility Documents described in **Annex B** under the Section entitled "Conditions Precedent".

The terms of this Commitment Letter are intended as an outline of certain of the material terms of the First Lien Exit Facility, but do not include all of the terms, covenants, representations, warranties, default clauses and other provisions that will be contained in the First Lien Exit Facility Documents. The First Lien Exit Facility Documents shall include, in addition, provisions that are customary or typical for financings of this type.

GS Bank reserves the right to syndicate the First Lien Exit Facility to the First Lien Term Lenders. The Company agrees to cooperate with GS Bank in connection with and promptly respond to requests of GS Bank with respect to the preparation of an information package regarding the business, operations and financial projections of the Company, the Borrower and their respective subsidiaries including, without limitation, the delivery of all information relating to the transactions contemplated hereunder prepared by or on behalf of the Company or the Borrower deemed reasonably necessary by GS Bank to complete the syndication of the First Lien Exit Facility, the presentation of an information package acceptable in format and content to GS Bank in meetings and other communications with prospective First Lien Term Lenders in connection with the syndication of the First Lien Exit Facility (including, without limitation, direct contact between senior management and representatives of the Company and the Borrower with prospective First Lien Term Lenders and participation of such persons in meetings), the preparation and delivery to GS Bank of any and all other information deemed reasonably necessary by GS Bank to complete the syndication of the First Lien Exit Facility. The Company shall be solely responsible for the contents of any such information package and presentation and acknowledges that GS Bank will be using and relying upon the information contained in such information package and presentation without independent verification thereof. The Company agrees that information regarding the First Lien Exit Facility and information provided by the Company or its representatives to us in connection with the First Lien Exit Facility (including, without limitation, the Information and Projections (each as hereinafter defined), draft and execution versions of the First Lien Exit Facility Documents), may be disseminated to potential First Lien Term Lenders and other persons through one or more internet sites (including an IntraLinks, SyndTrak or other electronic workspace (the "**Platform**") created for purposes of syndicating the First Lien Exit Facility or otherwise, in accordance with GS Bank's standard syndication practices (including hard copy and via electronic transmissions). Without limiting the foregoing, the Company authorizes the use of its logo in connection with any such dissemination. The Company acknowledges that neither GS Bank nor any of its affiliates will be responsible or liable to the Company or any other person or entity for damages arising from the use by others of the information or other materials obtained on the Platform, except to the extent that such damages have been found by a final, non-appealable judgment of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of GS Bank or its affiliates.

At the request of GS Bank, the Company agrees to prepare a version of the information package and presentation that does not contain material non-public information concerning the Company, the Borrower, their affiliates or its or their securities. In addition, the Company agrees that, unless specifically labeled "**Private – Contains Non-Public Information**," no information, documentation or other data disseminated to prospective First Lien Term Lenders in connection with the syndication of the First Lien Exit Facility, whether through an internet site (including, without limitation, the Platform), electronically, in presentations at lender meetings or otherwise, will contain any material non-public information concerning the Company, the Borrower, their affiliates or its or their securities.

In addition, the Company represents and covenants that (a) all written information, other than Projections (defined below) or information of a general economic or industry-specific nature, which has been

2

or is hereafter provided directly or indirectly by the Company, the Borrower or any of their respective representatives to GS Bank or the First Lien Term Lenders in connection with the transactions contemplated hereunder (the "**Information**"), when taken as a whole, is and will be complete and correct in all material respects and does not and will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein not misleading (after giving effect to all supplements and updates thereto from time to time) and (b) all financial projections concerning the Company, the Borrower and their affiliates that have been or will be made available to GS Bank or the First Lien Term Lenders by the Company or any of its representatives (the "**Projections**") have been and will be prepared in good faith based upon assumptions that are believed by the preparer thereof to be reasonable at the time made; provided that it is understood and agreed that (i) the projections are not to be viewed as facts, (ii) the Projections are subject to significant uncertainties and contingencies, many of which are beyond the control of your or the Borrower, (iii) no assurance can be given that any particular Projections will be realized and (iv) actual results during the period of periods covered by any such Projections may differ significantly from the projected results and such differences may be material. You agree that if at any time prior to the initial funding of the First Lien Exit Facility, any of the representations in the preceding sentence would be incorrect in any material respect if the Information and Projections were being furnished, and such representations were being made, at such time, then you will promptly supplement, or cause to be supplemented, the Information and Projections so that such representations will be correct in all material respects under those circumstances. Notwithstanding anything to the contrary, neither you nor the Borrower will be required to provide any information to the extent that the provision thereof would violate any attorney client privilege, law, rule or regulation or any obligation of confidentiality binding on you, the Borrower or your respective subsidiaries, or waive any attorney client privilege that may be asserted by you or the Borrower or your respective subsidiaries; provided, that you agree, to the extent practicable and not prohibited by applicable law, rule or regulation, to promptly notify us that information is being withheld pursuant to this sentence.

By executing this Commitment Letter, you agree to reimburse GS Bank from time to time on demand for all reasonable and documented out-of-pocket fees and expenses (including, but not limited to, the reasonable fees, disbursements and other charges of all legal counsel to GS Bank (limited to one primary counsel to GS Bank and, if reasonably necessary, of one local counsel in each relevant jurisdiction and one additional regulatory or other specialist counsel for each relevant area of expertise (in each case, which may be a single firm for multiple jurisdictions)) and examiners, search fees, due diligence expenses, transportation expenses, and appraisal, environmental, audit, and consultant costs and expenses) incurred in connection with the First Lien Exit Facility, a syndication thereof, the preparation of the definitive documentation therefor and the other transactions contemplated hereby, regardless of whether any of the transactions contemplated hereby are consummated.

In addition, in connection with arrangements such as this, it is GS Bank's policy to receive indemnification. You agree to the provisions with respect to indemnity and other matters set forth in **Annex A**, which is incorporated by reference into this Commitment Letter.

GS Bank hereby notifies you that pursuant to the requirements of the USA PATRIOT Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Act**") and the requirements of 31 C.F.R. § 1010.230 (the "**Beneficial Ownership Regulation**"), GS Bank and each First Lien Term Lender is required to obtain, verify and record information that identifies each borrower and guarantor under the First Lien Exit Facility, which information includes the name and address and other information of each such person or entity that will allow GS Bank and each First Lien Term Lender to identify each such person or entity in accordance with the Act and the Beneficial Ownership Regulation. This notice is given in accordance with the requirements of the Act and the Beneficial Ownership Regulation and is effective for GS Bank and each First Lien Term Lender.

Please note that this Commitment Letter and the Fee Letter and any written or oral advice provided by us in connection with this arrangement (a) are exclusively for the information of the board of directors (or equivalent governing body, person or entity) and the senior management of the Company and the Borrower and (b) may not be disclosed to any third party or circulated or referred to publicly without our prior written

3

consent except, after providing written notice to GS Bank, pursuant to a subpoena or order issued by a court of competent jurisdiction or by a judicial, administrative or legislative body or committee; provided, however, that we hereby consent to disclosure of (w) this Commitment Letter, the Fee Letter and such advice to the officers, directors, agents and advisors (including counsel) of the Company and the Borrower who are directly involved in the consideration of the First Lien Exit Facility to the extent such persons are advised to hold the same in confidence, (x) this Commitment Letter and the Fee Letter as required by the Bankruptcy Court, other applicable law or compulsory legal process (in which case you agree to inform us promptly thereof) or pursuant to the order of any court or administrative agency or in any legal, administrative or judicial proceeding where disclosure is required by law, rule or regulations (in which case, to the extent practicable and not prohibited by applicable law you shall notify us promptly thereof prior to such disclosure), (y) the aggregate fee amounts contained in the Fee Letter (but not the Fee Letter or other terms thereof) as part of Projections, pro forma information or a generic disclosure of aggregate sources and uses related to fee amounts related to the Transaction to the extent customary and (z) this Commitment Letter, the Fee Letter and the contents hereof and thereof to the extent necessary in connection with the exercise of any remedy or enforcement of any rights hereunder or thereunder or in connection with any defense to any claim of Goldman Sachs or any Indemnified Person hereunder or thereunder.

Goldman Sachs shall, until the earlier of (i) two (2) years from the date hereof or (ii) the execution of definitive documentation for the First Lien Exit Facility, treat confidentially all information received by them from the Company, the Borrower or their respective representatives in connection with this Commitment Letter, the Term Sheet or the First Lien Exit Facility contemplated hereby or thereby (the "**Confidential Information**"); provided that, upon execution and delivery of the definitive documentation for the First Lien Exit Facility, the applicable provisions of such definitive documentation shall govern the confidentiality matters described in this paragraph. Nothing herein shall prevent Goldman Sachs from disclosing any such Confidential Information: (a) pursuant to the order of any court or administrative agency or in any legal, administrative or judicial proceeding where disclosure is requested or required by law, rule or regulations (in which case, to the extent practicable and not prohibited by applicable law and other than with respect to any audit or examination conducted by bank accountants, any governmental bank, financial, accounting or similar authority exercising routing examinations or regulatory authority, Goldman Sachs shall notify you promptly thereof prior to such disclosure), (b) upon the request or demand of any regulatory authority (including any self-regulatory authority) having jurisdiction over Goldman Sachs or its affiliates (in which case, to the extent practicable and not prohibited by applicable law and other than with respect to any audit or examination conducted by bank accountants, any governmental bank, financial, accounting or similar authority exercising routing examinations or regulatory authority, Goldman Sachs shall notify you promptly thereof prior to such disclosure), (c) solely in connection with this Commitment Letter, the Term Sheet and the First Lien Exit Facility contemplated hereby and thereby, to its affiliates and the officers, directors, employees, directors, officers, legal counsel, advisors, partners, consultants, insurers, and agents of Goldman Sachs or its affiliates (to the extent such persons receive Confidential Information by or on behalf of Goldman Sachs) (collectively, "**Representatives**") on a need-to-know basis who are informed of the confidential nature of such information and are or have been advised of their obligation to keep information of this type confidential, (d) to any potential lender or co-investor or swap counterparty and, in each case, their respective Representatives (to the extent such Representatives receive Confidential Information by or on behalf of such person) who is informed of the confidential nature of such information and are or have been advised of their obligation to keep information of this type confidential, (e) to sources of financing and rating agencies who are informed of the confidential nature of such information and are or have been advised of their obligation to keep information of this type confidential, (f) for purposes of establishing a "due diligence" defense or in connection with exercising any remedy or enforcing Goldman Sachs' rights with respect to this Commitment Letter or (g) as expressly permitted by the Company and/or the Borrower. Confidential Information shall not include information to the extent that such information (w) becomes publicly available other than by reason of a breach of the confidentiality obligations set forth in this paragraph, (x) becomes available to Goldman Sachs or its Representatives from a source other than the Company or the Borrower or on its behalf and not knowingly in violation of any confidentiality agreement or obligation owed to the Company or the Borrower, (y) is independently developed by Goldman Sachs or its Representatives without reference to any confidential

information, or (z) was or is in the possession of Goldman Sachs or its Representatives prior to disclosure hereunder. Notwithstanding anything to the contrary set forth in the foregoing, in no event shall Goldman Sachs be required to return any materials constituting Confidential Information provided to or on behalf of the Company or the Borrower or any of their respective subsidiaries.

As you know, our affiliate, Goldman, Sachs & Co. ("**GS & Co**"), is a full service securities firm engaged, either directly or through its affiliates in various activities, including securities trading, investment management, financing and brokerage activities and financial planning and benefits counseling for both companies and individuals. In the ordinary course of these activities, GS & Co or its affiliates may actively trade the debt and equity securities (or related derivative securities) of the Company and other companies which may be the subject of the arrangements contemplated by this letter, including any of their respective affiliates, for their own account and for the accounts of their customers and may at any time hold long and short positions in such securities. GS & Co or its affiliates may also co-invest with, make direct investments in, and invest or co-invest client monies in or with funds or other investment vehicles managed by other parties, and such funds or other investment vehicles may trade or make investments in securities or other debt obligations of the Company or other companies which may be the subject of the arrangements contemplated by this letter and any of their respective affiliates.

Goldman Sachs may have economic interests that conflict with those of the Company and/or the Borrower. You agree that Goldman Sachs will act under this letter as an independent contractor and that nothing in this Commitment Letter or the Fee Letter or otherwise will be deemed to create an advisory, fiduciary or agency relationship or fiduciary or other implied duty between Goldman Sachs, on the one hand, and the Company and/or the Borrower, their respective stockholders or their respective affiliates, on the other. You acknowledge and agree that (a) the transactions contemplated by this Commitment Letter and the Fee Letter are arm's-length commercial transactions between Goldman Sachs, on the one hand, and the Company and the Borrower, on the other, (b) in connection therewith and with the process leading to such transaction Goldman Sachs is acting solely as a principal and not the agent or fiduciary of the Company, the Borrower, their respective management, stockholders, creditors or any other person, (c) Goldman Sachs has not assumed an advisory or fiduciary responsibility in favor of the Company or the Borrower with respect to the transactions contemplated hereby or the process leading thereto (irrespective of whether Goldman Sachs or any of its affiliates has advised or is currently advising the Company on other matters) or any other obligation to the Company or the Borrower except the obligations expressly set forth in this Commitment Letter and the Fee Letter and (d) the Company has consulted its own legal and financial advisors to the extent it deemed appropriate. The Company further acknowledges and agrees that it is responsible for making its own independent judgment with respect to such transactions and the process leading thereto. The Company agrees that it will not claim that Goldman Sachs has rendered advisory services of any nature or respect, or owes a fiduciary or similar duty to the Company, in connection with such transaction or the process leading thereto. In addition, GS Bank may employ the services of its affiliates in providing certain services hereunder and may exchange with such affiliates information concerning the Company, the Borrower and other companies that may be the subject of this arrangement, and such affiliates shall be entitled to the benefits afforded to GS Bank hereunder.

The provisions of the immediately preceding seven paragraphs shall remain in full force and effect regardless of whether any definitive documentation for the First Lien Exit Facility shall be executed and delivered, and notwithstanding the termination of this Commitment Letter or any commitment or undertaking hereunder.

This Commitment Letter may not be assigned by the Company without GS Bank's prior written consent (and any purported assignment without such consent shall be null and void), is intended to be solely for the benefit of the parties hereto and is not intended to confer any benefits upon, or create any rights in favor of, any person other than the parties hereto; provided that, this Commitment Letter shall be assigned to the Borrower on the Plan Effective Date in connection with the consummation of the Transactions (and the Borrower shall assume all obligations of the Company hereunder and under the Fee Letter on the Plan

Effective Date (and upon the effectiveness of such assignment and assumption, the Company shall have no further obligations under this Commitment Letter and each reference to "you" or the "Company" contained herein shall be deemed a reference to the Borrower). GS Bank may assign its commitments hereunder, in whole or in part (including, for example, our commitment to provide the First Lien Exit Facility), to (a) any of its affiliates, (b) any fund, investor, entity or account that is managed, sponsored or advised by Goldman Sachs, (c) any First Lien Term Lender or (d) any limited partner or investor in any of the foregoing persons or entities described in **clauses (a)** through **(c)** (any such person, an "**Eligible Assignee**"), and upon such assignment, GS Bank shall be released from the portion of its commitment hereunder that has been assigned. Neither this Commitment Letter nor the Fee Letter may be amended or any term or provision hereof or thereof waived or modified except by an instrument in writing signed by each of the parties hereto or thereto, and any term or provision hereof or thereof may be amended or waived only by a written agreement executed and delivered by all parties hereto.

Our commitment hereunder shall terminate upon the first to occur of (a) the conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, (b) a trustee or examiner with expanded powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code shall have been appointed in the Chapter 11 Cases, (c) there having been any occurrence, development or change after the date hereof, that has had or could be reasonably expected to have a material adverse effect on the business, assets, operations, properties or financial condition of the Borrower or the Company or their respective subsidiaries (taken as a whole) or on the value of, or ability to take a security interest in, a material portion of the Collateral (_provided_ that, for the avoidance of doubt, any change, development or occurrence, arising individually or in the aggregate, from events that could reasonably be expected to result from the pendency of the Chapter 11 Cases shall not constitute a material adverse effect); (d) (i) the Company having failed to file a motion with the Bankruptcy Court seeking approval of this Commitment Letter and the Fee Letter (the "**Commitment Letter Motion**") no later than two days following the Execution Date (or such later date as GS Bank shall agree in its sole discretion), which motion shall be in form and substance satisfactory to us and (ii) the Bankruptcy Court having not entered an order approving the Company's entry into this Commitment Letter and the Fee Letter and related relief no later than 15 days following the Execution Date (or, if delayed solely by reason of action of the Bankruptcy Court despite the Company's best efforts to have such order by the date that is 15 days following the Execution Date, 30 days following the Execution Date) (or in any case, such later date as GS Bank shall agree in its sole discretion), which shall be in form and substance satisfactory to us and (e) the earlier of (i) the Outside Expiration Time (as defined in the Second Lien Backstop Commitment Letter (which is as defined in the Plan) and (ii) July 31, 2021, in either case, unless such date is extended by us in writing (including by email) in our discretion or the closing of the First Lien Exit Facility, on the terms and subject to the conditions contained herein, shall have been consummated on or before such date (the "**Termination Date**").

Notwithstanding anything in this Commitment Letter or the Fee Letter, in the event of an Opt-In Election (as defined below), a Benchmark Replacement (determined in accordance with the definition thereof) will replace LIBOR for all purposes under the Commitment Letter, the Fee Letter and any other First Lien Exit Facility Document, as of the date of the Opt-in Election, with such modifications as we determine, to cause the Benchmark Replacement to be the economic equivalent of LIBOR. After an Opt-In Election, the First Lien Exit Facility Documents will be negotiated in good faith by the Company and the First Lien Exit Facility Agent to give effect to the agency and administrative requirements of the First Lien Exit Facility Agent to administer the designated Benchmark Replacement (including implementation of any Benchmark Replacement Conforming Changes (as defined in the ARRC Approach)), which are intended to achieve equivalent economics as described in the Commitment Letter and the Fee Letter.

As used herein:

"**Benchmark Replacement**" as defined in the Alternative Reference Rates Committee's "**hardwired**" approach as issued on June 30, 2020 (with any modifications thereto issued after the date of execution of the Commitment Letter determined by Goldman Sachs in consultation with the Company, "**ARRC**

**Approach**"), with (i) the Floor (as defined in the ARRC Approach) therein being the economic equivalent of the "**LIBOR Floor**" as set forth in the Commitment Letter and (ii) the "**Available Tenor**" and "**Corresponding Tenor**" being determined by the First Lien Exit Facility Agent.

"**Opt-in Election**" means the occurrence of: (i) a notification by the First Lien Exit Facility Agent to the Company that U.S. dollar-denominated syndicated credit facilities are being executed at such time utilizing a Benchmark Replacement to replace LIBOR (as determined by the First Lien Exit Facility Agent in good faith), (ii) the mutual election of the First Lien Exit Facility Agent and the Company (such consent not to be unreasonably withheld or delayed) to declare that an Opt-in Election has occurred or (iii) at any time after June 30, 2021, the election of the First Lien Exit Facility Agent to declare that an Opt-in Election has occurred.

In addition, please note that Goldman Sachs does not provide accounting, tax or legal advice. Notwithstanding anything herein to the contrary, the Company (and each employee, representative or other agent of the Company) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of this potential transaction and all materials of any kind (including opinions or other tax analyses) that are provided to the Company relating to such tax treatment and tax structure. However, any information relating to the tax treatment or tax structure shall remain subject to the confidentiality provisions hereof (and the foregoing sentence shall not apply) to the extent reasonably necessary to enable the parties hereto, their respective affiliates, and their respective affiliates' directors and employees to comply with applicable securities laws. For this purpose, "**tax treatment**" means U.S. federal or state income tax treatment, and "**tax structure**" is limited to any facts relevant to the U.S. federal income tax treatment of the transactions contemplated by this Commitment Letter but does not include information relating to the identity of the parties hereto or any of their respective affiliates.

This Commitment Letter may be executed in any number of counterparts, each of which when executed shall be an original, and all of which, when taken together, shall constitute one agreement. Delivery of an executed counterpart of a signature page of this Commitment Letter and the Fee Letter by facsimile or other electronic transmission shall be effective as delivery of a manually executed counterpart hereof. Any party delivering an executed counterpart of this Commitment Letter or the Fee Letter via facsimile or other electronic transmission shall, at our request, also deliver to us or our counsel a manually executed original, but the failure to do so does not affect the validity, enforceability or binding effect of this Commitment Letter or the Fee Letter.

**THIS COMMITMENT LETTER AND THE FEE LETTER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.** Each of the parties hereto agrees that any suit or proceeding arising in respect to this arrangement or any matter referred to in this Commitment Letter or the Fee Letter will be tried exclusively in the Bankruptcy Court or, if the Chapter 11 Cases have been closed pursuant to Section 350(a) of the Bankruptcy Code (or in the event that the Bankruptcy Court determines that it does not have jurisdiction), in the U.S. District Court for the Southern District of New York or, if that court does not have subject matter jurisdiction, in any state court located in the City of New York and each of the parties hereto agrees to submit to the jurisdiction of, and to venue in, such courts. **ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING ARISING IN CONNECTION WITH OR AS A RESULT OF EITHER OUR COMMITMENT OR ANY MATTER REFERRED TO IN THIS COMMITMENT LETTER OR THE FEE LETTER IS HEREBY WAIVED BY EACH OF THE PARTIES HERETO.** The provisions of this paragraph shall remain in full force and effect regardless of whether any definitive documentation for the First Lien Exit Facility shall be executed and delivered, and notwithstanding the termination of this Commitment Letter or any commitment or undertaking hereunder.

Notwithstanding anything to the contrary in this Commitment Letter, the obligations of each of the parties hereto under this Commitment Letter (including our commitments hereunder, the obligations to indemnify the Indemnified Parties and reimburse GS Bank for its fees and expenses in accordance with the

7

terms hereof) shall be subject to the approval of the Bankruptcy Court and such obligations shall not be enforceable until such Bankruptcy Court approval has been obtained.

**THIS COMMITMENT LETTER AND THE FEE LETTER REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE SPECIFIC MATTERS HEREOF, SET FORTH THE ENTIRE UNDERSTANDING OF THE PARTIES HERETO, SUPERSEDE ANY PRIOR AGREEMENTS AMONG THE PARTIES HERETO WITH RESPECT TO THE FIRST LIEN EXIT FACILITY AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Please confirm that the foregoing is in accordance with your understanding by signing and returning to GS Bank the enclosed copy of this Commitment Letter, together, if not previously executed and delivered, with the Fee Letter, on or before the close of business on March 24, 2021 whereupon this Commitment Letter and the Fee Letter shall become (subject to the third to final paragraph of this Commitment Letter) binding agreements between us (such date of execution, the "**Execution Date**"). If not signed and returned as described in the preceding sentence by such date, this offer will terminate on such date. We look forward to working with you on this assignment.

*[Remainder of page intentionally left Blank]*

8

Very truly yours,

**GOLDMAN SACHS BANK USA**

By: _____
Name:   Justin Betzen
Title:    Authorized Signatory

ACCEPTED AS OF THE DATE ABOVE:

**FIELDWOOD ENERGY LLC**

By: _____
Name:  Michael T. Dane
Title:  Senior Vice President and Chief Financial Officer

## Annex A

In the event that Goldman Sachs, any of its affiliates, officers, partners, directors or equivalents, agents, employees and controlling persons or any Eligible Assignee, as the case may be, of Goldman Sachs (each, an "**Indemnified Person**"), becomes involved in any capacity in any action, proceeding or investigation brought by or against any person or entity, including any of your affiliates, shareholders, partners, members, or other equity holders, in connection with or as a result of either this arrangement or any matter referred to in this Commitment Letter or the Fee Letter (together, the "**Letters**"), you agree to periodically reimburse such Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith (but limited, in the case of legal fees and expenses, to one counsel to such Indemnified Persons taken as a whole and, solely in the case of a conflict of interest, one additional counsel to all affected Indemnified Persons, taken as a whole (and, if reasonably necessary, of one local counsel in each relevant jurisdiction and one additional regulatory or other specialist counsel for each relevant area of expertise (in each case, which may be a single firm for multiple jurisdictions) to all such persons, taken as a whole and, solely in the case of any such conflict of interest, one additional local counsel (which may be a single firm for multiple jurisdictions) to all affected Indemnified Persons, taken as a whole, in each such relevant jurisdiction (limited, in the case of legal counsel, to one counsel to such Indemnified Persons, taken as a whole, and, if reasonably necessary, of one local counsel in each relevant jurisdiction and one additional regulatory or other specialist counsel for each relevant area of expertise (in each case, which may be a single firm for multiple jurisdictions)). You also will indemnify and hold each Indemnified Person harmless against any and all losses, claims, damages, penalties, expenses or liabilities to any person or entity arising in connection with or as a result of either this arrangement or any matter referred to in the Letters, whether brought by you, your affiliates or any third party **and without regard to the exclusive or contributory negligence of any Indemnified Person**, except to the extent that such have been found by a final, non-appealable judgment of a court of competent jurisdiction that any such loss, claim, damage, penalty, expense or liability results from the gross negligence or willful misconduct of such Indemnified Person in performing the services that are the subject of the Letters. If for any reason the foregoing indemnification is unavailable to any Indemnified Person or is insufficient to hold it harmless, then you shall contribute to the amount paid or payable by such Indemnified Person as a result of such loss, claim, damage, penalty, expense or liability in such proportion as is appropriate to reflect the relative economic interests of you and your affiliates and equity holders on the one hand and such Indemnified Person on the other hand in the matters contemplated by the Letters as well as the relative fault of you, your affiliates and equity holders, and such Indemnified Person with respect to such loss, claim, damage, penalty, expense or liability and any other relevant equitable considerations. Your reimbursement, indemnity and contribution obligations under this paragraph shall be in addition to any liability that you may otherwise have, shall extend upon the same terms and conditions to any affiliate of any Indemnified Person and the partners, directors, agents, employees and controlling persons or entities (if any), as the case may be, of such Indemnified Person and any such affiliate, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of you, any Indemnified Person, any such affiliate and any such person. You also agree that neither any Indemnified Person nor any of its affiliates, partners, directors, agents, employees or controlling persons shall have any liability **based on its or their exclusive or contributory negligence or otherwise** to you or any person or entity asserting claims on behalf of or in right of you or any other person or entity in connection with or as a result of either this arrangement or any matter referred to in the Letters, except to the extent that any losses, claims, damages, penalties, liabilities or expenses incurred by you have been found by a final, non-appealable judgment of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of such Indemnified Person in performing the services that are the subject of the Letters; provided, however, that in no event shall such Indemnified Person or such other parties have any liability for any indirect, consequential or punitive damages in connection with or as a result of such Indemnified Person's or such other parties' activities related to the Letters. **Any right to trial by jury with respect to any action or proceeding arising in connection with or as a result of either this arrangement or any matter referred to in the Letters is hereby waived by the parties hereto. You agree that any suit or proceeding arising in respect to this arrangement or any matter referred to in the**

Annex A-1

Letters will be tried exclusively in the U.S. District Court for the Southern District of New York or, if that court does not have subject matter jurisdiction, in any state court located in the City of New York and you agree to submit to the jurisdiction of, and to venue in, such courts. The provisions of this **Annex A** shall survive any termination or completion of the arrangement provided by the Letters, and this Commitment Letter shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of laws.

Annex A-2

<u>Annex B</u>

<u>Term Sheet</u>

SUBJECT TO FRE 408 & STATE ANALOGUES
HIGHLY CONFIDENTIAL

**ANNEX B**

$118,599,082.31 SENIOR SECURED FIRST LIEN TERM LOAN FACILITY
"FIRST LIEN EXIT FACILITY TERM SHEET"

SUMMARY OF PRINCIPAL TERMS AND CONDITIONS[1]

| | |
|---|---|
| **BORROWER:** | A newly formed Delaware limited liability company ("***Holdings***" in its capacity as borrower, the "***Borrower***"), wholly-owned, directly, by NewCo (as defined below). Holdings will form and be the direct owner of 100% of the equity interests in a Delaware limited liability company ("***Intermediate***"), which will form and be the direct owner of 100% of the equity interests in a Delaware limited liability company that will be the "Credit Bid Purchaser" as referenced in the Plan (the "***Credit Bid Purchaser***"). |
| **AGENT:** | Goldman Sachs Bank USA ("***Goldman***") or one or more of its affiliates that is a "United States person" for U.S. federal income tax purposes will act as sole administrative agent and collateral agent (collectively, in such capacities, the "***First Lien Exit Facility Agent***"). |
| **LENDERS:** | The Prepetition FLFO Lenders (collectively, the "***First Lien Term Lenders***") and their successors and permitted assigns from time to time party to the First Lien Exit Facility Credit Agreement and, at the option of Goldman, one or more other financial institutions selected by Goldman and reasonably acceptable to the Borrower. |
| **FIRST LIEN EXIT FACILITY:** | A senior secured first lien term loan facility (the "***First Lien Exit Facility***" and the loans under such First Lien Exit Facility, the "***First Lien Term Loans***") that shall become effective upon satisfaction or waiver of the conditions precedent set forth in the First Lien Exit Facility Documents on the effective date of the Plan (the "***Plan Effective Date***") in an aggregate principal amount of $118,599,082.31. |
| | The First Lien Term Loans shall be deemed funded on the Closing Date (as defined below) via (i) the assumption by the Credit Bid Purchaser of an equivalent principal amount of debt owing to the Prepetition FLFO Lenders and (ii) immediately thereafter, the assignment of such debt to Borrower by Credit Bid Purchaser, in each case, in accordance with the Plan. The First Lien Exit Facility shall be secured (i) on a *pari passu* basis with any Secured Cash Management Obligations and Secured Hedging Obligations (each as defined below) and (ii) on a senior basis to the Second Lien Exit Facility. |
| **PURPOSE:** | The proceeds of the First Lien Term Loans will be used by the Borrower, on the Plan Effective Date in accordance with and as provided in the Plan. |

---

[1] All capitalized terms used but not defined herein have the meanings given to them in the Plan (as defined in the Commitment Letter to which this ***Annex B*** is attached) or in the Commitment Letter, as context may require.

**AVAILABILITY:** The full amount of the First Lien Exit Facility will be deemed to be drawn in a single drawing on the Closing Date; amounts borrowed thereunder that are repaid or prepaid may not be reborrowed.

**AMORTIZATION:** The principal amounts of the First Lien Term Loans shall be repaid:

(i) on December 31, 2021, in an amount necessary to ensure that the aggregate principal amount of the First Lien Exit Facility outstanding on December 31, 2021 (after giving effect to such amortization payment) does not exceed $100,000,000; plus

(ii) commencing with the fiscal quarter in which the Closing Date occurs, in quarterly installments on the last business day of such fiscal quarter in an amount equal to $3,750,000, plus

(iii) commencing with the fiscal quarter in which the first anniversary of the Closing Date occurs, in quarterly installments on the last business day of such fiscal quarter (the last business day of the first such fiscal quarter, the "*Variable Amortization Trigger Date*") in an amount equal to the lesser of (x) the Variable Amortization Percentage (as defined below) of Consolidated Excess Cash (as defined below) and (y) the amount necessary to cause the aggregate principal amount of the First Lien Term Loans outstanding under the First Lien Exit Facility to be equal to $75.0 million after giving effect thereto.

"*Consolidated Excess Cash*" shall mean, as of the end of any fiscal quarter, the amount that (x) the average daily balance of unrestricted cash and cash equivalents of the Borrower and Subsidiary Guarantors over the last fiscal month of such fiscal quarter exceeds (y) $130.0 million.

"*Variable Amortization Percentage*" shall mean, as of any date of determination, 15.0%; provided, that, from and after the earlier of (i) the time the Genovesa well has come online and (ii) September 30, 2021, the Variable Amortization Percentage shall be 25.0%; provided, further, that, in the event, as of any date of determination, (a) the aggregate principal amount of First Lien Term Loans outstanding under the First Lien Exit Facility shall be less than $75.0 million and (b) the total gross First Lien Leverage Ratio (to be defined in a manner to be agreed) of the Borrower and Subsidiary Guarantors as of the last day of the most recently ended fiscal quarter for which financial statements have been delivered to the First Lien Exit Facility Agent shall be less than 0.5:1.00, the Variable Amortization Percentage shall be 0.0%.

In addition to the foregoing, all amounts outstanding under the First Lien Exit Facility shall be paid in full on the First Lien Term Loan Maturity Date (as defined below).

**INTEREST RATES:** Interest rates under the First Lien Exit Facility will be calculated, at the option of the Borrower, at Adjusted LIBOR (to be defined in a manner to be agreed, but in any event subject to a 1.00% floor) plus the Applicable Margin (as defined below) or ABR (to be defined in a manner to be agreed, but in any event subject to a 2.00% floor) plus the Applicable Margin;

2

provided that if any event of default shall have occurred and be continuing, at the election of the Required Lenders (as defined below) and upon delivery of prior written notice to the First Lien Exit Facility Agent by the Required Lenders, all outstanding First Lien Term Loans bearing interest at Adjusted LIBOR shall be automatically converted to borrowings at ABR upon the end of the then-current interest period for such borrowing at Adjusted LIBOR.

"*Applicable Margin*" is (i) in the case of Adjusted LIBOR loans, 6.00% per annum (or, at any time both (x) the aggregate principal amount of First Lien Term Loans outstanding under the First Lien Exit Facility shall be less than $100.0 million and (y) the Asset Coverage Ratio (as defined below) shall be greater than or equal to 3.00:1.00 (the foregoing (x) and (y), the "*pricing conditions*"), 5.00% per annum) and (ii) in the case of ABR loans, 5.00% per annum (or, at any time the pricing conditions are satisfied, 4.00% per annum).

Interest will be paid quarterly in arrears for loans bearing interest based upon ABR; in arrears on the last day of the applicable interest periods (which will be one, two, three or six months, at the option of the Borrower) for loans bearing interest based upon Adjusted LIBOR (and at the end of every three months, in the case of interest periods longer than three months); and in arrears upon each mandatory and voluntary prepayment on the principal amount prepaid.

The First Lien Exit Facility Credit Agreement shall contain replacement mechanics for LIBOR that are acceptable to the First Lien Exit Facility Agent in its sole discretion.

Upon the occurrence of (i) any event of default (other than any Specified Events of Default as defined below) and delivery of prior written notice to the First Lien Exit Facility Agent by the Required Lenders or (ii) any event of default due to non-payment or any bankruptcy or insolvency (collectively the defaults in clause (ii), the "*Specified Events of Default*"), an additional 2.00% per annum will be charged on outstanding amounts commencing on the date the relevant event of default occurred. Amounts accruing in accordance with the foregoing sentence shall be payable upon demand.

FEES:                          Administrative Agency fee as set forth in the Fee Letter.

FINAL MATURITY:                The First Lien Exit Facility will mature on the date that is four years after the Closing Date (the "*First Lien Term Loan Maturity Date*"). The outstanding principal amount of loans under the First Lien Exit Facility and all accrued and unpaid interest thereon shall be due and payable in full on the First Lien Term Loan Maturity Date.

GUARANTEES:                    All obligations of (i) the Borrower under the First Lien Exit Facility and (ii) the Borrower and Subsidiary Guarantors (as defined below) in respect of (a) certain cash management and treasury services arrangements (the obligations in respect thereof, "*Secured Cash Management Obligations*") with counterparties reasonably acceptable to the First Lien Exit Facility Agent in its sole discretion (it being agreed that (x) the providers of cash

3

management and treasury services set forth on Part A of *Exhibit A* hereto and (y) the First Lien Term Lenders and/or affiliates of the First Lien Term Lenders, in each case, are reasonably acceptable to the First Lien Exit Facility Agent) and (b) certain hedging arrangements (the obligations in respect thereof, the "*Secured Hedging Obligations*") with counterparties reasonably acceptable to the First Lien Exit Facility Agent in its sole discretion (it being agreed that (x) the hedge counterparties set forth on Part B of *Exhibit A* hereto and (y) the First Lien Term Lenders and/or affiliates of First Lien Term Lenders, in each case, are reasonably acceptable to the First Lien Exit Facility Agent) (such acceptable hedge counterparties, the "*Approved Counterparties*"), will be jointly and severally unconditionally guaranteed (the "*Guarantees*") by the direct parent company of the Borrower ("*NewCo*"), and each domestic subsidiary of the Borrower (including, for the avoidance of doubt, Credit Bid Purchaser but excluding any Qualified Receivables Subsidiary (to be defined)), (the "*Subsidiary Guarantors*" and, together with NewCo, the "*Guarantors*"; the Guarantors and the Borrower collectively, the "*Loan Parties*") (and with respect to obligations of Loan Parties other than the Borrower, the Borrower).

**SECURITY:**

The obligations of the Borrower under the First Lien Exit Facility and the Guarantees will be secured by perfected first-priority security interests in (i) (x) 100% of the equity interests in the Borrower and (y) the equity interests in each Subsidiary Guarantor and Fieldwood Cooperatief U.A. (the "*Closing Date Unrestricted Subsidiary*") in each case, that are held by the Loan Parties, (ii) (x) on the Closing Date, all of the oil and gas properties (and related assets) owned by the Loan Parties on the Closing Date and (y) thereafter, oil and gas properties owned by the Loan Parties representing at least 95% of the PV-10 of the Loan Parties' total proved reserves (and related assets owned by the Loan Parties) and (iii) all other assets of the Loan Parties, including all personal property assets, but in the case of this clause (iii), excluding certain "excluded assets" to be agreed (and to require, for the avoidance of doubt, control agreements with respect to deposit accounts, securities accounts and commodities accounts of the Loan Parties (subject to usual and customary exceptions)), in each case, whether owned on the Closing Date or thereafter acquired (collectively, the "*Collateral*").

**UNRESTRICTED SUBSIDIARIES:**

The only unrestricted subsidiary permitted to be designated as such under the First Lien Exit Facility shall be the Closing Date Unrestricted Subsidiary. The Closing Date Unrestricted Subsidiary will not be subject to the representations and warranties, covenants, events of default or other provisions of the First Lien Exit Facility Documents, and the results of operations, indebtedness and cash of unrestricted subsidiaries will not be taken into account for purposes of calculating any financial metric contained in the First Lien Exit Facility Documents except to the extent of distributions in the form of cash or cash equivalents received by a Loan Party therefrom. The Closing Date Unrestricted Subsidiary must become a restricted subsidiary and Guarantor at any time it is a restricted subsidiary or Guarantor under the Second Lien Exit Facility or any other material indebtedness of the Loan Parties.

4

**VOLUNTARY PREPAYMENTS:**

Prepayments of borrowings under the First Lien Exit Facility will be permitted at any time without premium or penalty, in minimum amounts and subject to notice provisions to be agreed.

**MANDATORY PREPAYMENTS:**

In addition to amortization (as described above), the First Lien Exit Facility Documents will contain the following mandatory prepayments:

(i) in amounts necessary to eliminate any non-compliance with the Minimum Asset Coverage Ratio (which payments (x) shall cure any event of default arising from a breach of such covenant and (y) solely to the extent the aggregate unrestricted cash and cash equivalents of the Borrower and Subsidiary Guarantors as of the date of such payment on a pro forma basis (after giving effect to such payment) exceed $100.0 million, shall be permitted to be made using internally generated cash, it being understood that if the payment is made using equity proceeds, it shall be subject to the limitations on equity cures described below),

(ii) with 100% of the proceeds of hedge unwinds, assets sales (including for the avoidance of doubt, sales of assets (or equity interests in entities owning assets) associated with the Borrower and its subsidiaries' operations and/or investments in Mexico and including any indirect sales proceeds received by any Loan Party in connection with any such sale whether received as a distribution or otherwise, all of the foregoing, "*Mexico Liquidity Events*") (it being understood and agreed that the Closing Date Unrestricted Subsidiary shall distribute any such proceeds received by it to a Loan Party), condemnation events and casualty insurance and extraordinary receipts; provided that (x) with respect to any fiscal year, no such prepayment shall be required during such fiscal year to the extent that (1) with respect to hedge unwinds, the aggregate amount of net cash proceeds received in respect of all such hedge unwinds during such fiscal year does not exceed $5.0 million, (2) with respect to PDP, PDNP and related infrastructure assets (other than sales of assets related to Mexico Liquidity Events, 100% of the net cash proceeds of which shall be required to be prepaid as set forth below), the aggregate amount of net cash proceeds received in respect of all such asset sales and events during such fiscal year does not exceed $15.0 million, (3) with respect to sales of other assets not referred to in the foregoing clause (2) and excluding Mexico Liquidity Events, the aggregate amount of net cash proceeds received in respect of all such asset sales during the term of the First Lien Exit Facility does not exceed $50.0 million, and (4) with respect to proceeds of condemnation events and casualty insurance and extraordinary receipts, the aggregate amount of net cash proceeds received in respect of all such events during such fiscal year does not exceed $10.0 million, (y) with respect to proceeds received in excess of the applicable threshold referenced in the foregoing sub-clause (x), at the Borrower's option and so long as no event of default shall have occurred and be continuing, following the receipt of proceeds from any of the foregoing in this clause (ii) (A) other than from hedge unwinds, Mexico Liquidity Events, and, to the extent set forth in sub-clause (B) below, condemnation events or casualty insurance events, the Borrower may reinvest up to 50% of such net cash proceeds within 365 days of receipt thereof in acquiring additional oil and gas properties (which in the case of proceeds of sales of assets constituting PDP, PDNP and related

5

infrastructure assets shall be reinvested in additional oil and gas properties constituting PDP and/or capital expenditures on existing oil and gas properties solely to the extent constituting PDP, PDNP, or PDBP (unless otherwise agreed to by the First Lien Exit Facility Agent its sole discretion)) and (B) with respect to any condemnation event or casualty insurance event, the Borrower may reinvest up to 100% of such proceeds within 365 days of receipt thereof in replacement and/or repair of the property subject to such condemnation event or casualty insurance event (provided that the proceeds so reinvested shall not exceed the amount necessary to replace and/or repair such property and the remainder shall be prepaid) and (z) such prepayment shall be made within 3 business days of receipt of such net cash proceeds,

(iii) with 100% of the proceeds of non-permitted debt, and

(iv) with proceeds of equity issuances (without duplication with respect to equity cures and subject to exceptions for equity issued in connection with permitted acquisitions, other permitted investments, and capital expenditures to be agreed and only so long as no event of default has occurred and is continuing immediately prior to or after giving effect to such equity issuances).

|  |  |
|---|---|
| **REPRESENTATIONS AND WARRANTIES:** | The First Lien Exit Facility Documents will contain usual and customary representations and warranties for financings of this type, subject to thresholds and materiality qualifiers to be agreed, including, without limitation: valid existence; power and authority; foreign qualifications; binding obligation; compliance with law; no conflict; governmental authorization; enforceability; absence of litigation and other adverse proceedings; material contracts; no default or event of default; ERISA compliance; margin regulations; title to properties; taxes; financial condition (including as to projections and no material adverse change); environmental matters; investment company and other regulated entities; solvency of the Loan Parties on a consolidated basis; labor relations; intellectual property; insurance matters; subsidiaries; jurisdiction of organization; location of chief executive office; deposit and other accounts; status of First Lien Exit Facility as senior debt; hedge agreements; marketing of production; gas imbalances; take or pay arrangements; accuracy of information provided; and compliance with sanctions, OFAC, anti-money laundering, PATRIOT Act and other anti-terrorism laws and anti-corruption laws. |
| **CONDITIONS PRECEDENT:** | The closing of the First Lien Exit Facility will be subject to the satisfaction (or waiver by the First Lien Term Lenders) of the following conditions precedent (the date on which such conditions are satisfied or waived and the funding under the First Lien Exit Facility occurs, the "***Closing Date***"): |

(i) the execution and delivery by each of the Loan Parties of the First Lien Exit Facility Documents (including all security agreements, control agreements, mortgages and other collateral documents necessary or advisable to create and perfect security interests in the Collateral (subject to appropriate post-closing periods to be agreed; provided that, all mortgages and UCC-1 financing statements shall be executed and/or delivered on the Closing Date), corporate records and documents from public officials, officers' certificates and the New Intercreditor Agreement in respect of

6

indebtedness evidenced by the Second Lien Exit Facility) in each case satisfactory to the First Lien Exit Facility Agent (in its sole discretion);

(ii) the delivery of other customary closing documents (including, among other things, customary legal opinions, lien searches and evidence of insurance and endorsements (subject to post-closing periods to be agreed) in each case, in form and substance satisfactory to the First Lien Exit Facility Agent;

(iii) the simultaneous closing and funding of the Second Lien Term Facility Credit Agreement, which funding shall be in a minimum aggregate principal amount not less than $140.0 million and not more than $185.0 million;

(iv) NewCo and its subsidiaries shall have no obligations in respect of, nor any liens or other encumbrances on their assets or equity interests securing, in each case, indebtedness for borrowed money other than in respect of the First Lien Exit Facility and the Second Lien Exit Facility (including, for the avoidance of doubt, indebtedness arising under the existing Prepetition FLTL Loans that is not assumed by the Borrower on the Plan Effective Date and the Prepetition SLTL Loans);

(v) the Restructuring Transactions shall have been, or shall substantially simultaneously be, consummated and effective in accordance with the Plan, the Plan Supplement and the Plan of Merger, as applicable and the Plan Effective Date shall have occurred;

(vi) the transactions contemplated by the Credit Bid Purchase Agreement shall be consummated, in all material respects, in accordance with the terms of the Credit Bid Purchase Agreement in the version attached to the draft of the Disclosure Statement at Docket No. 1022 (including all annexes, schedules and exhibits thereto, the "***Approved Credit Bid Purchase Agreement***"); provided that any amendments, modifications and waivers to the Approved Credit Bid Purchase Agreement, and consents granted thereunder, in each case, that (a) individually or in the aggregate, result in a reduction of 10% or more of the total PV-10 of total 2P reserves comprising the assets acquired by the Credit Bid Purchaser (which shall be calculated by reference to the FWE YE2020 Internal Reserve Report (as of 5.1.21)), (b) results in any contract rights constituting material assets not being acquired by the Credit Bid Purchaser, (c) individually or in the aggregate, results in an increase by $40.0 million or more (which, for the avoidance of doubt, in the case of plugging and abandonment liabilities, shall be calculated on a present value basis) in liabilities assumed by the Credit Bid Purchaser, (d) provide for any change in treatment of the Prepetition FLFO Credit Agreement or First Lien Exit Facility, or (e) provide for any differences from the Approved Credit Bid Purchase Agreement that are materially adverse to the interests of the First Lien Exit Facility Agent and the First Lien Exit Facility Lenders, in their capacity as such, in each case, shall require the consent of the First Lien Exit Facility Agent (which, in the case of clauses (b) and (e) above, shall not to be unreasonably withheld);

(vii) all material contracts binding on the Loan Parties as of the Plan Effective Date, including all agreements between NewCo and any of its

7

subsidiaries and FWE I or FWE III or any of their respective affiliates to be entered into on the Plan Effective Date (including, without limitation, any transition services agreements, joint development agreements and net profits interests agreements) shall be in form and substance reasonably acceptable to the First Lien Exit Facility Agent;

(viii) the fees and expenses of the First Lien Exit Facility Agent and the First Lien Term Lenders (including the reimbursement of the reasonable and documented fees and expenses of legal counsel) shall have been paid or shall be paid substantially concurrently with the funding of the First Lien Exit Facility;

(ix) delivery of a Reserve Report (as defined below) evaluating the Credit Bid Acquired Interests constituting proved reserves of the Loan Parties with a recent "as of" date, in form and substance acceptable to the First Lien Exit Facility Agent;

(x) the aggregate unrestricted cash and cash equivalents of the Borrower and Subsidiary Guarantors as of the Closing Date on a pro forma basis (including after payment of Restructuring Expenses) shall not be less than $100.0 million plus additional cash reserves, if any, to be agreed;

(xi) compliance on a pro forma basis with the Total Net Leverage Ratio (as defined below) and the Minimum Asset Coverage Ratio (as defined below);

(xii) the First Lien Exit Facility Agent shall have received, at least three business days prior to the Closing Date, all documentation and other information required by bank regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including, without limitation, the PATRIOT Act and under the beneficial ownership regulation (including a beneficial ownership certification), that has been requested in writing by the First Lien Exit Facility Agent at least 10 days prior to the Closing Date;

(xiii) evidence satisfactory to the First Lien Exit Facility Agent in the form of a solvency certificate from the Borrower that, as of the Closing Date, after giving effect to the Transactions, including, without limitation, the incurrence of indebtedness under the First Lien Exit Facility and the Second Lien Exit Facility, the Loan Parties, on a consolidated basis, are solvent;

(xiv) all representations and warranties true and correct in all material respects (or, if qualified by materiality, in all respects);

(xv) no default or event of default;

(xvi) since the date of the Execution Date (as defined in the Credit Bid Purchase Agreement), no Material Adverse Effect (as defined in the Credit Bid Purchase Agreement) (or any result, event, occurrence, change, circumstance, consequence or development that, individually or in the aggregate would reasonably be expected to result in a Material Adverse Effect) shall have occurred;

8

(xvii) the First Lien Exit Facility Agent shall be reasonably satisfied with the status of title of the Credit Bid Acquired Interests;

(xviii) the First Lien Exit Facility Agent shall have received, in form and substance reasonably satisfactory to it, all other reports, financial statements, budgets, projections, audits or certifications as it may reasonably request within a reasonable period in advance of the Closing Date; and

(xix) the Disclosure Statement shall be in form and substance reasonably acceptable to the First Lien Exit Facility Agent and the Plan and Confirmation Order shall be in form and substance acceptable to the First Lien Exit Facility Agent (it being understood that the Plan in the form attached as **Annex C** to the Commitment Letter is acceptable to the First Lien Exit Facility Agent, as modified with the consent of the First Lien Exit Facility Agent (not to be unreasonably withheld).

|  |  |
|---|---|
| **AFFIRMATIVE COVENANTS:** | The First Lien Exit Facility Documents will contain usual and customary affirmative covenants for financings of this type, subject to thresholds, exceptions and materiality qualifiers to be agreed, including without limitation, delivery of unaudited financial statements for each fiscal quarter in each fiscal year within 45 days after fiscal quarter end, delivery of audited annual financial statements within 105 days after fiscal year end (which shall be accompanied by a certification of an independent certified public accounting firm of recognized national standing, whose opinion shall not be qualified with a scope of audit or "going concern" or like qualification or exception (other than with respect to, or resulting from, the occurrence of an upcoming maturity date of indebtedness within one year of the date of such opinion)), budgets delivered within 60 days after fiscal year end, compliance certificates delivered concurrently with financial statements other than unaudited fourth quarter financial statements (including reasonably detailed calculations of the Asset Coverage Ratio, First Lien Leverage Ratio and Total Net Leverage Ratio), commodity swap agreement certificates and calculations, change in corporate information of the Loan Parties, notice of debt incurrence, asset sale/hedge unwind notice, notices of entry into regulatory agreements and settlements and other material regulatory correspondence, notice opening of deposit accounts, production reports (if requested), lists of purchasers (if requested), certifications of calculations of excess cash, after acquired collateral and guarantees, maintenance of existence, payment of taxes and claims, maintenance of properties and insurance, books and records, inspections, quarterly lender meetings, environmental, further assurances, control agreements, ERISA, compliance with laws, compliance with and policies regarding sanctions, anti-terrorism, anti-corruption and anti-money laundering matters, use of proceeds, compliance with contractual obligations, delivery of reserve reports in compliance with the Reserve Report Requirements below and related reserve report certificates (which shall set forth compliance with the Asset Coverage Ratio financial covenant), semi-annual mortgage updates, delivery of title information reasonably satisfactory to the First Lien Exit Facility Agent (if reasonably requested), and a minimum hedging covenant requiring that on or prior to the date that is 45 days post-closing (i) the Borrower and Subsidiary Guarantors shall have entered into hedging contracts with |

#94351932v2

Approved Counterparties on terms reasonably satisfactory to the First Lien Exit Facility Agent covering at least (a) 50% of then-current reasonably anticipated 2P PDP volumes, for each month during the first 12 months following the date of determination 45 days after the Closing Date (the "***Initial Measurement Period***") and (b) 25% of the then-current reasonably anticipated 2P PDP volumes for each month during the six months immediately following the Initial Measurement Period and (ii) thereafter, the Borrower and Subsidiary Guarantors will maintain, as tested on a semi-annual basis on June 30 and December 31 of each year, hedging contracts with Approved Counterparties on terms reasonably satisfactory to the First Lien Exit Facility Agent covering at least (a) 50% of the reasonably anticipated 2P PDP volumes for each month on a rolling basis for the 12 months following the date of determination and (b) 25% of the reasonably anticipated 2P PDP volumes for each month on a rolling basis for months 13-18 following the date of determination; <u>provided</u> that reasonably anticipated 2P PDP volumes shall be as set forth in the most recently delivered Reserve Report and all such hedging contracts shall be at market prices at the time entered into; <u>provided</u>, <u>further</u>, that, notwithstanding anything to the contrary set forth above, if the Genovesa and/or Troika TA-3 well has come online on or prior to the date that is 45 days after the Closing Date, the volumes associated with such well, as applicable, shall be treated as PDP.

|  |  |
|---|---|
| **RESERVE REPORT REQUIREMENTS:** | The Borrower must deliver, on a quarterly basis as of the last day of each fiscal quarter and (i) for the first three fiscal quarters, on or prior to the date on which the compliance certificate relating to such quarter is required to be delivered and (ii) for the fourth fiscal quarter, on or prior to the date that is 90 days after fiscal quarter end, to the First Lien Exit Facility Agent a reserve report in form and substance reasonably satisfactory to the First Lien Exit Facility Agent of the Loan Parties' proved oil and gas properties (each, a "***Reserve Report***") prepared and certified by the Borrower's internal petroleum engineers; provided that at least one Reserve Report per fiscal year shall be prepared or audited by an independent third party reserve engineer (if audited, covering a minimum percentage to be agreed of the value of the Loan Parties' proved oil and gas properties (the "***Minimum Percentage***")) reasonably acceptable to the First Lien Exit Facility Agent. In addition, upon the request of the First Lien Exit Facility Agent in its sole discretion, the Borrower shall deliver to the First Lien Exit Facility Agent a third-party audit of the most recently delivered Reserve Report which is reasonably acceptable to the First Lien Exit Facility Agent and covers the Minimum Percentage (i) once upon request during any calendar year if no event of default has occurred and is continuing under any of the First Lien Exit Facility Documents or (ii) at any time so requested if an event of default has occurred and is continuing under any of the First Lien Exit Facility Documents. |
| **NEGATIVE COVENANTS:** | The First Lien Exit Facility Documents will contain usual and customary negative covenants for the Borrower and its restricted subsidiaries, including, without limitation, limitations on liens, debt, fundamental changes, dispositions, restricted payments, investments, prepayments of junior indebtedness, amendments to organizational documents and material contracts in a manner materially adverse to any Loan Party or the First Lien |

10

Term Lenders, changes in nature of business, no foreign subsidiaries (other than the Closing Date Unrestricted Subsidiary and its subsidiaries), changes in fiscal year, burdensome agreements, transactions with affiliates, gas imbalances, take or pay arrangements, marketing of production and deposit accounts and to include a passive holding company covenant for NewCo, subject to thresholds, exceptions and materiality qualifiers to be agreed, but to include the following:

(i) with respect to limitations on indebtedness, baskets permitting (a) the Second Lien Exit Facility and any permitted refinancing thereof, (b) purchase money or capital lease indebtedness in an amount not to exceed $10.0 million at any time outstanding, (c) indebtedness incurred in connection with the financing of new equipment in order to reduce near-term capital expenditures associated with deepwater projects not to exceed $80.0 million, provided that such indebtedness is (x) not recourse to any Loan Party and (y) on terms acceptable to the First Lien Exit Facility Agent in its sole discretion, (d) indebtedness incurred by a Qualified Receivables Subsidiary in a Qualified Receivables Financing (to be defined, but to include customary limitations, terms and conditions to be agreed) that is not recourse to any Loan Party (which shall not constitute "indebtedness" for any calculation under the First Lien Exit Facility Documents), (e) letters of credit with a face amount not in excess of $50.0 million and (f) general unsecured debt not to exceed $10.0 million at any time outstanding;

(ii) with respect to limitations on liens, baskets permitting (a) liens on debt permitted to be incurred as described in clauses (i)(a), (i)(b) (limited to the assets subject to such indebtedness), (i)(c) (limited to liens on the new equipment so financed), (i)(d), and (i)(e) (limited to liens on cash collateral) above, and (b) liens securing debt (other than debt for borrowed money) not to exceed $10.0 million;

(iii) with respect to limitations on dispositions, a basket permitting (a) dispositions of the Loan Parties' investment in Mexico, (b) dispositions of assets constituting PDP, PDNP and related infrastructure assets in an amount not to exceed $30.0 million during the term of the First Lien Exit Facility, (c) transfer of accounts receivable and related assets in connection with a Qualified Receivables Financing, (d) transfers of assets among Loan Parties and (e) dispositions of other assets in an amount not to exceed $100.0 million during the term of the First Lien Exit Facility, so long as, in each case, (x) 85% of the consideration therefor is in the form of cash and cash equivalents, (y) no event of default shall have occurred and be continuing and (z) the notice and mandatory prepayment provisions are complied with;

(iv) with respect to limitations on distributions, a basket permitting (a) tax distributions, (b) payment of other customary corporate and overhead items and (c) distributions of receivables in connection with a Qualified Receivables Financing;

(v) with respect to limitations on investments, baskets permitting (a) investments in joint ventures, so long as no event of default shall exist or result therefrom and the aggregate amount of such investments shall not

11

exceed $5.0 million in any fiscal year, (b) acquisitions of additional oil and gas properties, (c) investments in the Borrower and Subsidiary Guarantors, (d) so long as no event of default shall exist or result therefrom, investments in the Closing Date Unrestricted Subsidiary and its subsidiaries to fund capital calls required pursuant to the organizational documents of Fieldwood Mexico B.V., which investments shall not exceed, in any fiscal year, the sum of (1) an amount equal to G&A reimbursements received in cash by the Loan Parties from the Closing Date Unrestricted Subsidiary during such fiscal year and (2) $5.0 million (provided that the amount pursuant to this clause (2) shall be $10.0 million for the fiscal year ending December 31, 2021), (e) investments in or by a Qualified Receivables Subsidiary or other investments, in each case, in connection with a Qualified Receivables Financing and (f) other investments and acquisitions in an amount not to exceed $20.0 million in the aggregate at any time outstanding; and

(vi) with respect to limitations on prepayments of junior indebtedness, a basket for a prepayment of indebtedness outstanding under the Second Lien Exit Facility Credit Agreement once in respect of each fiscal quarter, commencing upon the Variable Amortization Trigger Date, in an amount not to exceed 25% of the amount of Consolidated Excess Cash as of the last day of such fiscal quarter so long as (a) the aggregate principal amount of First Lien Term Loans outstanding under the First Lien Exit Facility shall be less than $80.0 million, (b) after giving effect to such payment, the pro forma First Lien Leverage Ratio of the Borrower and Subsidiary Guarantors shall be less than 0.5:1.00, (c) any such prepayments of indebtedness outstanding under the Second Lien Exit Facility Credit Agreement shall be subject to and accompanied by a dollar-for-dollar prepayment of First Lien Term Loans, (d) no event of default has occurred and is continuing immediately prior to or after giving effect to such prepayment of indebtedness and (e) such prepayment of indebtedness is made within 5 business days following the end of such fiscal quarter.

The First Lien Exit Facility Documents shall also include limitations on commodity swap arrangements, including that:

(i) they are limited to a maximum duration of 60 months;

(ii) shall cover notional volumes of not more than, at the time such swap agreement is entered into, for each calendar month 85% of reasonably anticipated production from proved developed producing reserves of crude oil, natural gas and natural gas liquids (calculated separately), as set forth in the most recently delivered Reserve Report; provided that, if, after the end of any calendar quarter, commencing with the first calendar quarter ending after the Closing Date, the Borrower determines that the aggregate weighted average of the notional volumes of all swap agreements in respect of commodities for such calendar quarter (other than basis differential swaps on volumes already hedged pursuant to other swap agreements) exceeded 100% of actual production of hydrocarbons in such calendar quarter, then the Borrower (i) shall promptly notify the First Lien Exit Facility Agent of such determination and (ii) shall, within 45 days of such determination, terminate (only to the extent such terminations are permitted pursuant to the asset sale and hedge unwind negative covenant), create off-setting positions,

12

or otherwise unwind or monetize (only to the extent such unwinds or monetizations are permitted pursuant to the asset sale and hedge unwind covenant) existing swap agreements such that, at such time, future hedging volumes will not exceed 100% of reasonably anticipated projected production for the then-current and any succeeding calendar quarters; and

(iii) all purchased put options or price floors for hydrocarbons shall be excluded for purposes of the foregoing volume limitations on commodity swap arrangements.

**FINANCIAL COVENANTS:** Financial covenants shall consist of the following to be tested quarterly as of the last day of each fiscal quarter:

(i) a Maximum Ratio of Total Net Debt (as defined below) to EBITDA (as defined below) of 2.25:1.00 (the "***Total Net Leverage Ratio***"); and

(ii) a minimum asset coverage ratio of at least 2.25:1.00 (the "***Minimum Asset Coverage Ratio***") (with "***Asset Coverage Ratio***" to be defined in a manner to be agreed, but in any event to be the ratio of (a) total 2P Producing PV-10 of the Loan Parties plus solely through and including the last day of the fiscal quarter ending September 30, 2021, the PV-15 attributable to the Genovesa and Troika TA-3 wells (which thereafter shall only be included to the extent comprising 2P Producing wells), in each case as set forth in the most recently delivered Reserve Report, plus the present value (positive or negative) of the mark-to-market commodity hedge positions at the time of the most recently delivered Reserve Report discounted at 10% per annum, less the present value of the estimated plugging and abandonment costs of the Borrower and Subsidiary Guarantors' wells and any related assets at such time, discounted at 10% per annum (provided such estimated costs and timing assumptions shall be consistent with historical practices and otherwise reasonably acceptable to the First Lien Exit Facility Agent) plus any PDNP or PDBP which is capable of producing without incurring any additional capital as well as any PDNP previously included as PDP reserves and anticipated to be returned to PDP within (1) two months of the delivery of the reserve report so long as any capital required to return to production is incorporated in the PV-10 values and (2) within three to ten months of the delivery of the reserve report so long as (A) any capital required to return to production is incorporated in the PV-10 values and (B) the total amount of this clause (a) that is attributable to such reserves described in this sub-clause (2) does not exceed more than 10% of such total amount (calculated prior to giving effect to the additions of reserves described in this sub-clause (2)); provided that appropriate deductions shall be made for severance and ad valorem taxes, and for operating, gathering, transportation, marketing costs and other costs required for the production and sale of such oil and gas properties to (b) the outstanding balance of the First Lien Term Loans as of such last day of such fiscal quarter net of Consolidated Excess Cash; provided that for purposes of calculating total 2P Producing PV-10 (and the PV-15 attributable to the Genovesa and Troika TA-3 wells, if and when applicable) the price deck and mark-to-market hedge valuation shall utilize the average NYMEX strip calculated during the 30 calendar days preceding the "as of" date of the most recently delivered Reserve Report (held flat after year 5 at

13

the average 5th year prices) and including basis differentials determined by the Borrower in a manner consistent with historical and customary industry practices, such differentials being subject to the approval of the First Lien Exit Facility Agent).

As used herein, "**_Total Net Debt_**" means (a) the sum of (without duplication) all debt consisting of Capitalized Lease Obligations (to be defined), all reimbursement obligations (whether contingent or otherwise) in respect of letters of credit (other than to the extent fully cash collateralized or to the extent in respect of undrawn letters of credit with an aggregate face amount not in excess of $25.0 million), debt for borrowed money and debt evidenced by notes, loan agreements, debentures, indentures or similar instruments, disqualified capital stock, accounts payable and liabilities in respect of obligations to pay the deferred purchase price of any assets or services (to the extent greater than 60 days past due, unless disputed in good faith), and any of the foregoing debt of other persons in the amount secured by a lien on the assets of the Borrower or any Subsidiary Guarantor or in the amount guaranteed by the Borrower or any Subsidiary Guarantor, in each case, of the Borrower or any Subsidiary Guarantor on such date (other than intercompany indebtedness) and, to the extent appearing on the balance sheet of the Borrower, determined on a consolidated basis in accordance with GAAP (provided that (x) the amount of any Capitalized Lease Obligations or any such debt issued at a discount to its face value shall be determined in accordance with GAAP and (y) permitted indebtedness incurred in connection with a the financing of new equipment in order to reduce near-term capital expenditures associated with deepwater projects shall be excluded from the definition of Total Net Debt) less (b) the amount that (i) all unrestricted cash on hand of the Borrower and Subsidiary Guarantors (to the extent held in deposit accounts subject to control agreements with the First Lien Exit Facility Agent as secured party) exceeds (ii) $50,000,000.

As used herein, "**_EBITDA_**" means, of the Borrower and the Subsidiary Guarantors, for any period, the sum of Consolidated Net Income (to be defined, but which shall, in any event, (x) include adjustments for gains and/or losses with respect to hedge unwinds over the applicable period covered by such unwound hedges and (y) include proceeds of any payments from BP related to the Isabela transaction) for such period plus the following expenses or charges to the extent deducted from consolidated net income in such period: interest, income taxes, depreciation, depletion, amortization, exploration expenses, actual costs and expenses of the Loan Parties incurred in connection with the Restructuring Transactions, other noncash charges, and losses from asset dispositions (other than Hydrocarbons produced in the ordinary course of business and other than hedge unwinds), minus (x) all gains from asset dispositions (other than Hydrocarbons produced in the ordinary course of business and other than hedge unwinds), (y) all general and administrative expenses during such period to the extent such expenses were not deducted from consolidated net income in such period (e.g. capitalized general and administrative expenses) and (z) all noncash income, in each case to the extent added to consolidated net income in such period; provided, however, that for the purposes of calculating EBITDA for any period of four consecutive fiscal quarters

14

(each, a "**Reference Period**"), if during such Reference Period the Loan Parties shall have made a material disposition or material acquisition (with materiality thresholds to be agreed in the definitive documentation), EBITDA for such Reference Period shall be calculated after giving pro forma effect thereto as if such disposition or acquisition by the Loan Parties occurred on the first day of such Reference Period with such pro forma adjustments being determined in good faith by a financial officer of the Borrower and reasonably acceptable to the First Lien Exit Facility Agent. EBITDA for the first three fiscal quarters following the Closing Date will be annualized on a building basis (i.e. first full quarter multiplied by four, first two fiscal quarters multiplied by 2 and first three fiscal quarters multiplied by 4/3).

The First Lien Exit Facility Documents will permit equity cures not more than two times (non-consecutively) per four fiscal quarter period and not more than three times over the life of the First Lien Exit Facility, provided that the proceeds of such equity cure are used to repay First Lien Term Loans in order for the Borrower to be in compliance with the applicable financial covenant.

**EVENTS OF DEFAULT:** The First Lien Exit Facility Documents shall contain usual and customary events of default (with customary thresholds and grace periods) for financings of this type, including without limitation: nonpayment of principal, interest, fees or other amounts when due (with a 3 business day grace period for interest, fees and other non-principal amounts); failure to perform affirmative covenants (with exceptions and grace periods to be agreed), negative covenants and the Financial Covenants (and the affirmative covenants to provide notice of default or maintain the Borrower's corporate existence); any representation or warranty incorrect in any material respect when made or deemed made; cross-default to the Second Lien Exit Facility and other indebtedness having an aggregate principal amount in excess of $10.0 million; bankruptcy or insolvency proceedings of any Loan Party (with a 60-day grace period for involuntary events); final non-appealable monetary judgments to the extent not covered by indemnities or insurance in an amount in excess of $10.0 million; ERISA events, subject to material adverse effect; invalidity of any guarantee or the First Lien Exit Facility Agent's lien under the security documents; and change of control.

**SECOND LIEN INTERCREDITOR AGREEMENT:** Usual and customary including:

(i) 180 day standstill;

(ii) identical (subject to conforming changes) collateral and security instruments (to be based on first lien security documents);

(iii) automatic release of second liens upon release of same collateral by First Lien Exit Facility Agent (to the extent such collateral was permitted to be sold under the Second Lien Exit Facility documentation); and

(iv) second lien holders prohibited from contesting or proposing a DIP financing (subject to a DIP cap to be agreed) without consent of First Lien Exit Facility Agent except that (a) they may propose a DIP financing that would repay the First Lien Exit Facility in full in cash and (b) they may

15

propose a DIP financing that is junior in priority to the First Lien Exit Facility in the event that the First Lien Term Lenders have declined to propose a DIP financing or failed to timely propose a DIP financing (such timing to be agreed in the intercreditor agreement).

**VOTING:**

Amendments, waivers and other modifications to the First Lien Exit Facility Documents shall require the consent of First Lien Term Lenders holding more than 50.0% of First Lien Term Loans (the "***Required Lenders***"); provided, however, that in the event that at any time there are two or more unaffiliated First Lien Term Lenders, the consent of at least two First Lien Term Lenders shall be required for Required Lenders.

Certain amendments, waivers and other modifications shall require the consent of all First Lien Term Lenders, including, without limitation, reduction to the interest rate, extension of maturity, extension or waiver of scheduled repayments, reduction of principal, increasing a commitment, alteration of the pro rata application of repayments, amending or waiving voting or funding conditions, the First Lien Exit Facility Agent's indemnification, releasing substantially all Collateral or Guarantors, subordinating the obligations under the First Lien Exit Facility or the liens on the Collateral (in each case, subject to customary exceptions) and consenting to the assignment or transfer of the Borrower's obligations under the First Lien Exit Facility Documents (except in connection with a transaction expressly permitted or not prohibited thereby).

**TAXES, RESERVE REQUIREMENTS AND INDEMNITIES:**

All payments are to be made free and clear of any taxes, subject to usual and customary exceptions.

The Loan Parties will indemnify the First Lien Term Lenders against all increased costs of capital resulting from reserve requirements or otherwise imposed, in each case subject to customary increased costs, capital adequacy and similar provisions to the extent not taken into account in the calculation of ABR or Adjusted LIBOR.

**ASSIGNMENTS:**

Customary and appropriate provisions relating to assignments and participations by the First Lien Term Lenders; provided that the Borrower shall have the right to consent to any assignment by a First Lien Term Lender (such consent not to be unreasonably withheld, conditioned, or delayed) unless (a) an event of default has occurred and is continuing or (b) such assignment is to another First Lien Term Lender, an affiliate of any First Lien Term Lender or an "approved fund".

**INDEMNIFICATION; EXPENSES:**

Customary and appropriate provisions relating to indemnity, expense reimbursement and related matters in a form reasonably satisfactory to the First Lien Exit Facility Agent, with standards consistent with those set forth on ***Annex A*** to the Commitment Letter to which this ***Annex B*** is attached.

**CHOICE OF LAW; JURISDICTION:**

The First Lien Exit Facility Documents will be governed by and construed in accordance with the laws of the State of New York. The Loan Parties will submit to the non-exclusive jurisdiction and venue of the federal and state courts of the State of New York and shall waive any right to trial by jury.

**COUNSEL TO THE FIRST LIEN EXIT FACILITY**

Vinson & Elkins LLP

16

**AGENT:**

17

**EXHIBIT A**

<u>Part A: Approved Cash Management and Treasury Services Providers</u>

Capital One, National Association and its affiliates

<u>Part B: Approved Hedge Counterparties</u>

J. Aron & Company LLC and its affiliates
Morgan Stanley Capital Group Inc. and its affiliates
Shell Trading Risk Management, LLC and its affiliates
Macquarie Bank Limited and its affiliates
BP Energy Company and its affiliates

Annex C

Plan

SUBJECT TO FRE 408
CONFIDENTIAL

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

## THIRD AMENDED JOINT CHAPTER 11 PLAN OF
## FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**
Alfredo R. Pérez
Clifford W. Carlson
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

**WEIL, GOTSHAL & MANGES LLP**
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors*
*and Debtors in Possession*

Dated: March 24, 2021
        Houston, Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

## Table of Contents

ARTICLE I.    DEFINITIONS AND INTERPRETATION. ...................................................................1

    1.1    Definitions. ..................................................................................................................1
    1.2    Interpretation; Application of Definitions; Rules of Construction. ...........................27
    1.3    Reference to Monetary Figures. ................................................................................27
    1.4    Controlling Document. ..............................................................................................28
    1.5    Certain Consent Rights .............................................................................................28

ARTICLE II.  ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, DIP CLAIMS, AND
PRIORITY TAX CLAIMS. ....................................................................................................28

    2.1    Treatment of Administrative Expense Claims............................................................28
    2.2    Treatment of Fee Claims. ..........................................................................................29
    2.3    Treatment of DIP Claims. ..........................................................................................30
    2.4    Payment of Fees and Expenses Under DIP Order. ....................................................30
    2.5    Treatment of Priority Tax Claims. .............................................................................30
    2.6    Restructuring Expenses. ............................................................................................31
    2.7    Postpetition Hedge Claims. .......................................................................................31

ARTICLE III.  CLASSIFICATION OF CLAIMS AND INTERESTS. ....................................32

    3.1    Classification in General. ..........................................................................................32
    3.2    Formation of Debtor Groups for Convenience Only. ................................................32
    3.3    Summary of Classification of Claims and Interests. .................................................32
    3.4    Special Provision Governing Unimpaired Claims. ...................................................33
    3.5    Separate Classification of Other Secured Claims. ....................................................33
    3.6    Elimination of Vacant Classes. .................................................................................33
    3.7    Voting Classes; Presumed Acceptance by Non-Voting Classes. ..............................33
    3.8    Voting; Presumptions; Solicitation. ..........................................................................33
    3.9    Cramdown. .................................................................................................................34
    3.10  No Waiver. .................................................................................................................34

ARTICLE IV.  TREATMENT OF CLAIMS AND INTERESTS. .............................................34

    4.1    Class 1: Other Secured Claims. .................................................................................34
    4.2    Class 2:  Priority Non-Tax Claims. ...........................................................................34
    4.3    Class 3:  FLFO Claims. .............................................................................................35
    4.4    Class 4:  FLTL Claims. ..............................................................................................35
    4.5    Class 5A:  Unsecured Trade Claims. .........................................................................36
    4.6    Class 5B: General Unsecured Claims. .......................................................................36
    4.7    Class 6: Intercompany Claims. ..................................................................................37
    4.8    Class 7:  Subordinated Securities Claims. .................................................................37
    4.9    Class 8: Intercompany Interests. ...............................................................................37
    4.10  Class 9:  Existing Equity Interests. ...........................................................................37
    4.11  Treatment of Vacant Classes. ....................................................................................38

ARTICLE V.  MEANS FOR IMPLEMENTATION.................................................................38

    5.1    Plan Settlement; Compromise and Settlement of Claims, Interests, and Controversies. ..........38
    5.2    Credit Bid Transaction; Confirmation Outside Date. ................................................38
    5.3    Equity Rights Offering. .............................................................................................41
    5.4    New Equity Interests. ................................................................................................41
    5.5    NewCo Organizational Documents ...........................................................................42

5.6     New Money Warrants and GUC Warrants ................................................................. 42
5.7     Plan of Merger ......................................................................................................... 42
5.8     Single Share ............................................................................................................. 43
5.9     Plan Administrator .................................................................................................... 43
5.10    Plan Funding. ........................................................................................................... 46
5.11    The Exit Facilities .................................................................................................... 46
5.12    Apache Definitive Documents. ................................................................................ 47
5.13    Abandonment of Certain Properties ........................................................................ 48
5.14    Establishment of Claims Reserve. ........................................................................... 48
5.15    Plan Administrator Expense Reserve. ...................................................................... 48
5.16    Continued Corporate Existence; Effectuating Documents; Further Transactions.... 49
5.17    Corporate Action. ..................................................................................................... 50
5.18    Cancellation of Existing Securities and Agreements. .............................................. 50
5.19    Cancellation of Certain Existing Security Interests. ................................................ 51
5.20    Intercompany Interests; Corporate Reorganization. ................................................ 52
5.21    Restructuring Transactions. ...................................................................................... 52
5.22    Liquidating Trust. ..................................................................................................... 52
5.23    Securities Exemptions. ............................................................................................. 53
5.24    Closing of Chapter 11 Cases. ................................................................................... 54

ARTICLE VI.  DISTRIBUTIONS. ........................................................................................... 54

6.1     Distributions Generally............................................................................................. 54
6.2     No Postpetition Interest on Claims. ......................................................................... 55
6.3     Date of Distributions. ............................................................................................... 55
6.4     Distribution Record Date. ......................................................................................... 55
6.5     Distributions after Effective Date ............................................................................ 55
6.6     Delivery of Distributions. ......................................................................................... 55
6.7     Unclaimed Property. ................................................................................................. 56
6.8     Satisfaction of Claims. .............................................................................................. 56
6.9     Manner of Payment under Plan. ............................................................................... 56
6.10    De Minimis Cash Distributions. ............................................................................... 56
6.11    No Distribution in Excess of Amount of Allowed Claim. ........................................ 57
6.12    Allocation of Distributions Between Principal and Interest. .................................... 57
6.13    Setoffs and Recoupments. ........................................................................................ 57
6.14    Withholding and Reporting Requirements. .............................................................. 57
6.15    Claims Paid by Third Parties. ................................................................................... 58
6.16    Claims Payable by Third Parties. ............................................................................. 58

ARTICLE VII.  PROCEDURES FOR DISPUTED CLAIMS. ................................................. 59

7.1     Allowance of Claims. ............................................................................................... 59
7.2     Claims Objections. .................................................................................................... 59
7.3     Estimation of Claims. ............................................................................................... 59
7.4     Adjustment to Claims Register Without Objection. ................................................. 60
7.5     Time to File Objections to Claims. ........................................................................... 60
7.6     Disallowance of Claims. ........................................................................................... 60
7.7     Amendments to Claims. ............................................................................................ 60
7.8     No Distributions Pending Allowance. ...................................................................... 60
7.9     Distributions After Allowance .................................................................................. 60
7.10    Claims Resolution Procedures Cumulative. ............................................................. 61

**ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**................................ 61

8.1 General Treatment. ....................................................................................................... 61
8.2 Determination of Cure Amounts and Deemed Consent. .............................................. 62
8.3 Rejection Damages Claims. .......................................................................................... 63
8.4 Survival of the Debtors' Indemnification Obligations. ................................................ 64
8.5 Insurance Policies. ........................................................................................................ 64
8.6 Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...... 64
8.7 Reservation of Rights. ................................................................................................... 65

**ARTICLE IX. CONDITIONS PRECEDENT TO OCCURRENCE OF EFFECTIVE DATE.** ........ 65

9.1 Conditions Precedent to Effective Date. ...................................................................... 65
9.2 Waiver of Conditions Precedent. .................................................................................. 67
9.3 Effect of Failure of a Condition. .................................................................................. 68

**ARTICLE X. EFFECT OF CONFIRMATION.** ..................................................................... 68

10.1 Binding Effect. .............................................................................................................. 68
10.2 Vesting of Assets. ......................................................................................................... 68
10.3 Discharge of Claims Against and Interests in Debtors. ............................................... 68
10.4 Pre-Confirmation Injunctions and Stays. ..................................................................... 69
10.5 Injunction Against Interference With Plan. .................................................................. 69
10.6 Plan Injunction. ............................................................................................................ 70
10.7 Releases. ........................................................................................................................ 70
10.8 Exculpation. .................................................................................................................. 74
10.9 Injunction Related to Releases and Exculpation. ......................................................... 75
10.10 Subordinated Securities Claims. .................................................................................. 76
10.11 Retention of Causes of Action and Reservation of Rights. .......................................... 76
10.12 Ipso Facto and Similar Provisions Ineffective. ........................................................... 76
10.13 Indemnification and Reimbursement Obligations. ....................................................... 76

**ARTICLE XI. RETENTION OF JURISDICTION.** ............................................................... 77

11.1 Retention of Jurisdiction. ............................................................................................. 77

**ARTICLE XII. MISCELLANEOUS PROVISIONS.** ............................................................. 79

12.1 Payment of Statutory Fees. ........................................................................................... 79
12.2 Exemption from Certain Transfer Taxes. ..................................................................... 79
12.3 Request for Expedited Determination of Taxes. .......................................................... 80
12.4 Dates of Actions to Implement Plan. ............................................................................ 80
12.5 Amendments. ................................................................................................................ 80
12.6 Revocation or Withdrawal of Plan. .............................................................................. 80
12.7 Severability. .................................................................................................................. 81
12.8 Governing Law. ............................................................................................................ 81
12.9 Immediate Binding Effect. ............................................................................................ 81
12.10 Successors and Assigns. ............................................................................................... 81
12.11 Entire Agreement. ......................................................................................................... 82
12.12 Computing Time. .......................................................................................................... 82
12.13 Exhibits to Plan. ........................................................................................................... 82
12.14 Notices. ......................................................................................................................... 82
12.15 Reservation of Rights. .................................................................................................. 83
12.16 Dissolution of Creditors' Committee. .......................................................................... 84

Each of Fieldwood Energy LLC; Fieldwood Energy Inc.; Dynamic Offshore Resources NS, LLC; Fieldwood Energy Offshore LLC; Fieldwood Onshore LLC; Fieldwood SD Offshore LLC; Fieldwood Offshore LLC; FW GOM Pipeline, Inc.; GOM Shelf LLC; Bandon Oil and Gas GP, LLC; Bandon Oil and Gas, LP; Fieldwood Energy SP LLC; Galveston Bay Pipeline LLC; and Galveston Bay Processing LLC (each, a "*Debtor*" and collectively, the "*Debtors*") proposes the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Section 1.1 below.

# ARTICLE I.         DEFINITIONS AND INTERPRETATION.

### 1.1    *Definitions*.

The following terms shall have the respective meanings specified below:

*363 Credit Bid Transaction* means the sale of the Credit Bid Acquired Interests to the Credit Bid Purchaser pursuant to section 363 of the Bankruptcy Code on substantially the same terms as provided in the Credit Bid Purchase Agreement in accordance with Section 5.2(c) of this Plan.

*Abandoned Properties* means the Debtors' rights to and interests in executory contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements listed on the Schedule of Abandoned Properties (as amended, supplemented, or otherwise modified from time to time).

*Accepting Class* means a class of Claims or Interests that votes to accept this Plan in accordance with section 1126 of the Bankruptcy Code.

*Ad Hoc Group of Secured Lenders* means the ad hoc group of holders of Prepetition FLTL Loans and Prepetition SLTL Loans that is represented by the Ad Hoc Group of Secured Lenders Advisors.

*Ad Hoc Group of Secured Lenders Advisors* means Davis Polk & Wardwell LLP, Haynes and Boone LLP, Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan, LLC, Rothschild & Co US Inc. and Intrepid Financial Partners, LLC and any local or foreign advisors.

*Ad Hoc Group of Prepetition SLTL Lenders* means that certain ad hoc group of holders of Prepetition SLTL Loans that is represented by the Ad Hoc Group of Prepetition SLTL Advisors.

*Ad Hoc Group of Prepetition SLTL Lenders Advisors* means only Kasowitz Benson Torres LLP.

**Additional Predecessor Agreement** means any consensual agreement that the Debtors may enter into prior to the Confirmation Date with any entity or entities in the chain of title, co-working interest owner(s), or other related party for any of the Abandoned Properties.

**Additional Predecessor Agreement Documents** means any agreements or documents contemplated by and necessary to the consummation of an Additional Predecessor Agreement.

**Administrative Expense Claim** means any Claim constituting a cost or expense of administration incurred during the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code (other than DIP Claims and Postpetition Hedge Claims), including (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises), and (b) Fee Claims.

**Allowed** means, with respect to any Claim against or Interest in a Debtor, (a) (i) that is timely filed by the bar dates established in the Chapter 11 Cases, or (ii) as to which there exists no requirement for the holder of a Claim to file such Claim under the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (b) (i) that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and (ii) for which no contrary proof of claim has been timely filed, or (c) allowed under the Plan or by a Final Order (including the DIP Order). With respect to any Claim described in clause (a) above, such Claim will be considered allowed only if, and to the extent that, (A) no objection to the allowance of such Claim has been asserted, or may be asserted, on or before the time period set forth in the Plan, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, (B) an objection to such Claim is asserted and such Claim is subsequently allowed pursuant to a Final Order, (C) such Claim is settled pursuant to an order of the Bankruptcy Court, or (D) such Claim is allowed pursuant to the Plan or any agreements related thereto and such allowance is approved and authorized by the Bankruptcy Court; *provided*, *however*, that notwithstanding the foregoing, the Post-Effective Date Debtors shall retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise unimpaired pursuant to the Plan. If a Claim is Allowed only in part, any provisions hereunder with respect to Allowed Claims are applicable solely to the Allowed portion of such Claim. Notwithstanding the foregoing, unless expressly waived herein, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.

**Amended Organizational Documents** means the certificates of incorporation, certificates of formation, bylaws, limited liability company agreements, stockholders agreement, and the operating agreements or other similar organizational or formation documents, as applicable, of the Post-Effective Date Debtors.

**Apache** means Apache Corporation.

**Apache Definitive Documents** has the meaning set forth in the Apache Implementation Agreement.

**Apache Fees and Expenses** has the meaning set forth in the Apache Implementation Agreement.

**Apache Implementation Agreement** means that certain Implementation Agreement, dated January 1, 2021, by and among Debtor Fieldwood Energy LLC and Debtor GOM Shelf LLC, on the one hand, and the Apache PSA Parties on the other hand, as may be amended, restated, or otherwise modified pursuant to the terms thereof; *provided* that such amendment, restatement, or other modification is reasonably acceptable to the Debtors, the Apache PSA Parties, the Required DIP Lenders and Requisite FLTL Lenders.

**Apache Implementation Costs** has the meaning ascribed to "Implementation Costs" in the Apache Implementation Agreement.

**Apache PSA Parties** means, collectively, Apache, Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC.

**Apache Term Sheet** has the meaning set forth in the Restructuring Support Agreement.

**Asset** means all of the rights, title, and interests of a Debtor in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

**Assumption Dispute** means an unresolved objection regarding assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including objections based on the appropriate Cure Amount or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code).

**Avoidance Actions** means all claims and causes of action that may be commenced by or on behalf of the Debtors pursuant to sections 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code or similar nonbankruptcy law, including similar or related state or federal statute and common law.

**Backstop Commitment Premium Equity Interests** means the Second Lien Backstop Commitment Premium Equity Interests, the FLTL ERO Backstop Commitment Premium Equity Interests, and the SLTL ERO Backstop Commitment Premium Equity Interests.

**Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time, as applicable to these Chapter 11 Cases.

**Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code or the Bankruptcy Court

is determined not to have authority to enter a Final Order on an issue, the District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

**Business Day** means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are authorized or required by law or executive order to close.

**Cash** means legal tender of the United States of America.

**Cause of Action** means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code (including claims and causes of action arising under section 544, 545, 547, 548, 549, 550, and 551 of the Bankruptcy Code), (d) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any state law fraudulent transfer or preferential transfer claim.

**Chapter 11 Case(s)** means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

**Claim** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any Debtor.

**Claims Reserve** means one or more segregated accounts not subject to the Liens of the Prepetition Agents or DIP Agent, which shall be established on or immediately before the Effective Date and funded on the Effective Date with Cash to pay (or reserve for payment of) any (i) Allowed Administrative Expense Claims, (ii) Allowed Priority Tax Claims, (iii) Allowed Priority Non-Tax Claims, (iv) Allowed Other Secured Claims, (v) Allowed Unsecured Trade Claims, and (vi) Cure Amounts; *provided*, *however*, that all Cash remaining in the Claims Reserve after payment of all relevant Allowed Claims and Cure Amounts in accordance with the terms of this Plan shall constitute Residual Distributable Value; *provided further* that the funding

4

of the Claims Reserve shall be consistent with the terms of the Second Lien Backstop Commitment Letter.

*Claims Reserve Amount* means the aggregate amount of Cash, as determined by the Debtors with (i) the consent of the Required DIP Lenders and Requisite FLTL Lenders and (ii) the reasonable consent of the Creditors' Committee solely with respect to the amount of the Claims Reserve on account of Allowed Unsecured Trade Claims, necessary to satisfy all (a) Allowed Administrative Expense Claims, (b) Allowed Priority Tax Claims, (c) Allowed Priority Non-Tax Claims, (d) Allowed Other Secured Claims, (e) Allowed Unsecured Trade Claims, and (f) Cure Amounts, which aggregate amount shall be funded into the Claims Reserve on the Effective Date.

*Class* means any group of Claims or Interests classified under the Plan pursuant to section 1122 and 1123(a)(1) of the Bankruptcy Code.

*Collateral* means any Asset of an Estate that is subject to a Lien securing the payment or performance of a Claim, which Lien is not invalid, is properly perfected as of the Petition Date, and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law.

*Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

*Confirmation Hearing* means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

*Confirmation Order* means the order of the Bankruptcy Court, in form and substance acceptable to the Debtors, the Required DIP Lenders, the Requisite FLTL Lenders, the Prepetition FLFO Administrative Agent, and the Creditors' Committee, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

*Confirmation Outside Date* means May 10, 2021 or such later date as may be mutually agreed between the Debtors, the Required DIP Lenders, and the Requisite FLTL Lenders.

*Consenting Creditors* means the Prepetition FLTL Lenders, together with their respective successors and permitted assigns, and the Prepetition SLTL Lenders, together with their respective successors and permitted assigns, that are party to, or have executed a joinder to, the Restructuring Support Agreement.

*Credit Bid Acquired Interests* has the meaning ascribed to "Acquired Interests" set forth in the Credit Bid Purchase Agreement.

*Credit Bid Assumed Liabilities* has the meaning ascribed to "Assumed Liabilities" set forth in the Credit Bid Purchase Agreement.

**Credit Bid Consent Rights** means any right of consent, notice, and other similar rights, if any, that are applicable to the sale of the Credit Bid Acquired Interests in connection with the Credit Bid Purchase Agreement.

**Credit Bid Permitted Encumbrances** has the meaning ascribed to "Permitted Encumbrances" set forth in the Credit Bid Purchase Agreement.

**Credit Bid Purchase Agreement** means that certain Purchase and Sale Agreement, by and between Fieldwood Energy LLC, the other seller parties, and the Credit Bid Purchaser and NewCo, together with any and all related agreements, annexes, exhibits and schedules in connection therewith, as amended, supplemented or otherwise modified from time to time, which shall be in form and substance acceptable to the Debtors, the Requisite FLTL Lenders, and the Required DIP Lenders; *provided* that any modifications to the Credit Bid Purchase Agreement from the version attached to the draft of the Disclosure Statement at Docket No. 1022 shall require the consent of the Prepetition FLFO Administrative Agent (not to be unreasonably withheld with respect to the following clauses (b) and (e)) to the extent that such modification (a) individually or in the aggregate, results in a reduction of 10% or more of the total PV-10 of total 2P reserves comprising the assets acquired by the Credit Bid Purchaser (which shall be calculated by reference to the FWE YE2020 Internal Reserve Report (as of 5.1.21)), (b) results in any contract rights constituting material assets not being acquired by the Credit Bid Purchaser, (c) individually or in the aggregate, results in an increase by $40.0 million or more (which, for the avoidance of doubt, in the case of plugging and abandonment liabilities, shall be calculated on a present value basis) in liabilities assumed by the Credit Bid Purchaser, (d) relates to any change in treatment of the Prepetition FLFO Credit Agreement or First Lien Exit Facility, or (e) provide for any differences from the the draft of the Disclosure Statement at Docket No. 1022 that are materially adverse to the interests of the First Lien Exit Facility Agent and the First Lien Exit Facility Lenders.

**Credit Bid Purchaser** means [●], a newly formed special purpose bidding entity, as purchaser of certain of the Debtors' assets pursuant to and in accordance with the Credit Bid Purchase Agreement.

**Credit Bid Preferential Purchase Rights** has the meaning ascribed to "Preferential Right" set forth in the Credit Bid Purchase Agreement.

**Credit Bid Transaction** means the sale of the Credit Bid Acquired Interests to the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement.

**Credit Bid Transaction Closing** means "Closing" as defined in the Credit Bid Purchase Agreement.

**Creditors' Committee** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code as it may be reconstituted from time to time.

**Cure Amount** means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease

and (b) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**Cure Notice** means the notice of proposed Cure Amount to be paid in connection with an executory contract or unexpired lease of the Debtors that may be assumed or assumed and assigned under the Plan pursuant to section 365 of the Bankruptcy Code, which shall include (a) procedures for objecting to proposed assumptions or assumptions and assignments of executory contracts and unexpired leases, (b) any Cure Amount to be paid in connection therewith, and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

**D&O Policy** means any insurance policy, including tail insurance policies, for directors', members', trustees', and officers' liability providing coverage to the Debtors and in effect or purchased as of the Petition Date.

**Debtor(s)** has the meaning set forth in the introductory paragraph of the Plan.

**Debtor in Possession** means, with respect to a Debtor, that Debtor in its capacity as a debtor in possession pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

**Decommissioning Agreement** means that Decommissioning Agreement, dated as of September 30, 2013, by and among the Apache PSA Parties, Fieldwood Energy LLC, and the other parties thereto.

**Decommissioning Security** has the meaning set forth in the Apache Implementation Agreement.

**Definitive Documents** has the meaning set forth in the Restructuring Support Agreement.

**DIP Agent** means Cantor Fitzgerald Securities, solely in its capacity as administrative agent and collateral agent under the DIP Facility Credit Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the DIP Facility Credit Agreement.

**DIP Claim** means any Claim held by the DIP Lenders or the DIP Agent arising under or relating to the DIP Facility Credit Agreement or the DIP Order, including any and all fees, interests, and accrued but unpaid interest and fees arising under the DIP Facility Credit Agreement.

**DIP Documents** has the meaning set forth in the DIP Order.

**DIP Facility** means the postpetition senior secured debtor-in-possession term loan credit facility approved by the DIP Order.

**DIP Facility Credit Agreement** means the credit agreement governing the terms of the DIP Facility, dated as of August 24, 2020, by and among Fieldwood Energy LLC, as borrower, FWE Parent, as holdings, the DIP Agent, and the DIP Lenders, with any amendments,

restatements, amendments and restatements, modifications or supplements thereto as permitted by the DIP Order.

> **DIP Lenders** means the lenders from time to time party to the DIP Facility Credit Agreement.

> **DIP Order** means the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Docket No. 346], authorizing the Debtors to enter into the DIP Facility Credit Agreement and access the DIP Facility, as may be amended, supplemented or modified from time to time.

> **Disclosure Statement** means the disclosure statement in support of the Plan, in form and substance (i) acceptable to the Debtors, the Required DIP Lenders, the Requisite FLTL Lenders, (ii) reasonably acceptable to the Creditors' Committee solely for matters relating to the treatment of holders of General Unsecured Claims or Unsecured Trade Claims, and (iii) reasonably acceptable to the Prepetition FLFO Administrative Agent, which is prepared and distributed in accordance with sections 1125, 1126(b), or 1145 of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018, or other applicable law, and all exhibits, schedules, supplements, modifications, amendments, annexes, and attachments to such disclosure statement.

> **Disputed** means, with respect to a Claim, (a) any Claim, which Claim is disputed under this Plan (including pursuant to section 7.1 of this Plan) or otherwise or as to which the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed; (c) any Claim that is listed in the Schedules, if any are filed, as unliquidated, contingent, disputed or undetermined, and as to which no request for payment or proof of claim has been filed; or (d) any Claim that is otherwise disputed by any of the Debtors or the Post-Effective Date Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order. To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim.

> **Distribution Date** means the date or dates, including the Initial Distribution Date, as determined by the Plan Administrator in accordance with the terms of this Plan, on which the Plan Administrator makes a Distribution to holders of Allowed Claims.

> **Distribution Record Date** means, except as otherwise provided in the Plan, the date that is two business days before the Effective Date or such other date as is designated by the Debtors with the consent of the Requisite FLTL Lenders and the Required DIP Lenders.

> **Divisive Merger** means a divisive merger pursuant to Sections 10.001, 10.002, 10.008 and 10.302 of the Texas Business Organizations Code.

**Effective Date** means the date which is the first Business Day on which (a) all conditions to the effectiveness of the Plan set forth in Section 9.1 of the Plan have been satisfied or waived in accordance with the terms of the Plan, and (b) no stay of the Confirmation Order is in effect.

**Entity** means an "entity," as defined in section 101(15) of the Bankruptcy Code.

**Equity Rights Offerings** means, collectively, the FLTL Equity Rights Offering and the SLTL Equity Rights Offering.

**ERO Backstop Agreements** means, collectively, the FLTL ERO Backstop Agreement and the SLTL ERO Backstop Agreement.

**ERO Backstop Parties** means, collectively, the FLTL ERO Backstop Parties and the SLTL ERO Backstop Parties.

**Estate(s)** means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

**Exculpated Parties** means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (l) the Exit Facility Agents, (m) the Exit Facility Lenders, (n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (q) with respect to each of the foregoing Persons in clauses (a) through (p) each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

**Existing Equity Interests** means shares of common stock of FWE Parent that existed immediately before the Effective Date.

**Exit Facilities** means the First Lien Exit Facility and the Second Lien Exit Facility.

9

**Exit Facility Agents** means the First Lien Exit Facility Agent and the Second Lien Exit Facility Agent.

**Exit Facility Documents** means the First Lien Exit Facility Documents and the Second Lien Exit Facility Documents.

**Exit Facility Lenders** means the First Lien Exit Facility Lenders and the Second Lien Exit Facility Lenders.

**Fee Claim** means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by Professional Persons retained by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

**Fieldwood U.A. Interests** has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

**Final Order** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has: (a) not been reversed, stayed, modified or amended, as to which the time to appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration or rehearing has been timely filed; or (b) as to which any appeal, petition for certiorari or motion for reargument, reconsideration or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration or rehearing was sought; *provided*, *however*, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in such other court of competent jurisdiction) may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

**First Lien Exit Facility** means the facility under the First Lien Exit Facility Credit Agreement.

**First Lien Exit Facility Agent** means the administrative agent under the First Lien Exit Facility Credit Agreement.

**First Lien Exit Facility Commitment Letter** means that certain commitment letter, in form and substance acceptable to the Required DIP Lenders, the Requisite FLTL Lenders, the Debtors, the Prepetition FLFO Administrative Agent, and the First Lien Exit Facility Agent, to be entered into by and among Fieldwood Energy LLC and the First Lien Exit Facility Agent, as may be amended, supplemented, or modified from time to time, pursuant and subject to the terms thereof, pursuant to which, among other things, GS Bank (as defined therein) agreed to act as the sole arranger, administrative agent and collateral agent in connection with the First Lien Exit Facility and to commit to provide First Lien Exit Facility in accordance with the terms and conditions set forth therein.

10

**First Lien Exit Facility Credit Agreement** means that certain credit agreement to be entered by the Credit Bid Purchaser, the First Lien Exit Facility Agent and the First Lien Exit Facility Lenders on the Effective Date that shall govern the First Lien Exit Facility which shall reflect and contain terms, conditions, representations, warranties, and covenants consistent with the First Lien Exit Facility Term Sheet and otherwise be in form and substance acceptable to the Prepetition FLFO Administrative Agent, the First Lien Exit Facility Agent, the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders.

**First Lien Exit Facility Documents** means, collectively, the First Lien Exit Facility Credit Agreement, and any and all other agreements, documents, and instruments delivered or to be entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, the terms of which documents shall be in form and substance acceptable to the Prepetition FLFO Administrative Agent, the First Lien Exit Facility Agent, the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders.

**First Lien Exit Facility Lenders** means the lenders party to the First Lien Exit Facility Credit Agreement.

**First Lien Exit Facility Term Sheet** means a term sheet attached to the First Lien Exit Facility Commitment Letter and to be attached to the Disclosure Statement, as may be amended, supplemented or modified from time to time with the consent of the Prepetition FLFO Administrative Agent, the First Lien Exit Facility Agent, the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders.

**FLFO Claims** means all Claims arising from or based upon the Prepetition FLFO Credit Agreement.

**FLFO Claims Allowed Amount** means the aggregate principal amount of $138,599,082.31 plus any accrued and unpaid interest (accruing at the default rate to the extent provided under the Prepetition FLFO Credit Agreement), fees, costs, and other expenses arising under, and payable pursuant to, the Prepetition FLFO Credit Agreement on or before the Effective Date, which shall not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination, counterclaims, cross claims, defenses, disallowance, impairments, or any other challenges under applicable law or regulation by any Entity. Notwithstanding the foregoing, on the Effective Date any amount accrued pursuant to Section 2.08(b) of the Prepetition FLFO Credit Agreement and any amounts accrued in respect of Yield Maintenance Premium or any Prepayment Fee (each as defined in the Prepetition FLFO Credit Agreement), if any, shall be deemed discharged, released, and waived by all holders of Allowed FLFO Claims and the FLFO Claims Allowed Amount shall not be increased on account of such amounts as a result of such discharge, release, and waiver.

**FLFO Distribution Amount** means Cash in the amount of the FLFO Claims Allowed Amount *less* the initial aggregate principal amount of the First Lien Exit Facility, as set forth in the First Lien Exit Facility Commitment Letter.

*FLTL Claims* means all Claims, other than Claims subject to subordination in accordance with section 510(b) of the Bankruptcy Code, arising from or based upon the Prepetition FLTL Credit Agreement.

*FLTL Claims Allowed Amount* means $1,142,688,815.28 in principal plus any accrued but unpaid interest or fees due under the Prepetition FLTL Credit Agreement as of the Petition Date.

*FLTL Deficiency Claim* means any FLTL Claim or portion thereof that is not Secured, if any.

*FLTL Equity Rights Offering* means that certain rights offering pursuant to which each holder of Allowed FLTL Claims is entitled to receive FLTL Subscription Rights to acquire New Equity Interests in the aggregate amount of the FLTL Equity Rights Offering Amount in accordance with the FLTL Equity Rights Offering Procedures, the terms and conditions of which shall be (i) acceptable to the Debtors, Required DIP Lenders, and Requisite FLTL Lenders, (ii) reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent, and (iii) reasonably acceptable to the Requisite SLTL Lenders solely to the extent that it directly and adversely impacts the holders of Allowed SLTL Claims.

*FLTL Equity Rights Offering Amount* means $20,000,000.

*FLTL Equity Rights Offering Procedures* means the procedures for the implementation of the FLTL Equity Rights Offering to be approved by the Bankruptcy Court.

*FLTL ERO Backstop Agreement* means that certain [Equity Backstop Commitment Agreement], in form and substance (i) acceptable to the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders and (ii) reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent, to be entered into by and among Fieldwood Energy LLC, NewCo, and the FLTL ERO Backstop Parties, as may be amended, supplemented, or modified from time to time, pursuant to which the FLTL ERO Backstop Parties agreed to, among other things, backstop the FLTL Equity Rights Offering with the terms and conditions set forth therein.

[*FLTL ERO Backstop Commitment Percentage* has the meaning set forth in the FLTL ERO Backstop Agreement.]

[*FLTL ERO Backstop Commitment Premium* means a premium equal to 8% of the FLTL Equity Rights Offering Amount payable to the FLTL ERO Backstop Parties with the FLTL ERO Backstop Commitment Premium Equity Interests in accordance with the terms set forth in the FLTL ERO Backstop Agreement.]

[*FLTL ERO Backstop Commitment Premium Equity Interests* means an amount of New Equity Interests equal to the value of the FLTL ERO Backstop Commitment Premium as further set forth in the FLTL ERO Backstop Agreement; *provided that* such New Equity Interests shall be issued at a 30% discount to the equity value of NewCo on the Effective Date.

**FLTL ERO Backstop Parties** means those parties that agree to backstop the FLTL Equity Rights Offering pursuant to the FLTL ERO Backstop Agreement, each in its respective capacity as such.

**FLTL Subscription Rights** means the subscription right to acquire New Equity Interests with an aggregate value equal to the FLTL Rights Offering Amount offered in accordance with the FLTL Equity Rights Offering Procedures; *provided, however*, that such New Equity Interests shall be issued at a 30% discount to the equity value of NewCo on the Effective Date.

[**FLTL Unsubscribed Shares** has the meaning set forth in the FLTL ERO Backstop Agreement].

**FWE I** means an entity formed on the Effective Date by Divisive Merger under the name Fieldwood Energy I LLC pursuant to the Plan of Merger.

**FWE I LLC Agreement** means the limited liability company agreement of FWE I, which shall be in substantially the form attached to the Apache Implementation Agreement.

**FWE I Assets** has the meaning set forth in the Plan of Merger.

**FWE I Obligations** has the meaning set forth in the Plan of Merger.

**FWE I Sole Manager** has the meaning ascribed to the term "Sole Manager" in the FWE I LLC Agreement, and shall include the sole manager appointed to FWE I upon the Effective Date and any successor thereto.

**FWE III** means the surviving entity under the name Fieldwood Energy III LLC following the Divisive Merger pursuant to the Plan of Merger.

**FWE III LLC Agreement** means the limited liability company agreement of FWE III, a form of which shall be included in the Plan Supplement.

**FWE III Assets** has the meaning set forth in the Plan of Merger.

**FWE III Obligations** has the meaning set forth in the Plan of Merger.

**FWE Assets** means, collectively, the FWE I Assets and FWE III Assets.

**FWE Parent** means Debtor Fieldwood Energy Inc.

**General Unsecured Claim** means any Claim against a Debtor, other than a DIP Claim, Postpetition Hedge Claim, Administrative Expense Claim (including a Fee Claim), FLFO Claim, FLTL Claim, SLTL Claim, Other Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, Unsecured Trade Claim, Subordinated Securities Claim, or Intercompany Claim that is not entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.

For the avoidance of doubt, General Unsecured Claims shall not include FLTL Deficiency Claims or SLTL Deficiency Claims.

*GUC Warrant Agreement* means a warrant agreement to be entered into by and among NewCo and the warrant agent named therein that shall govern the terms of the GUC Warrants, the form of which shall be acceptable to the Debtors, Required DIP Lenders, Requisite FLTL Lenders, the Requisite SLTL Lenders and the Creditors' Committee and which shall contain provisions as favorable as the provisions in the SLTL Tranche 1 Warrant Agreement or SLTL Tranche 2 Warrant Agreement.

*GUC Warrants* means 8-year warrants for 3.5% of the New Equity Interests (calculated on a fully diluted basis giving effect to the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of this Plan, the New Equity Interests issuable upon the exercise of the Subscription Rights, the Backstop Commitment Premium Equity Interests, and the New Equity Interests issuable upon the exercise of the New Money Warrants and SLTL Tranche 1 Warrants, but excluding the effect of any New Equity Interests issuable in connection with the Management Incentive Plan), with a strike price set at an equity value equal to $1,321,000,000, the terms of which shall be set forth in the GUC Warrant Agreement; *provided*, that if the SLTL Tranche 2 Warrants are exercised, the GUC Warrants shall be subject to adjustment or true-up as necessary to retain such percentage after giving effect to the exercise of the SLTL Tranche 2 Warrants.

*Governmental Unit* has the meaning set forth in section 101(27) of the Bankruptcy Code.

*Impaired* means, with respect to a Claim, Interest, or a Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

*Indemnification Obligation* means any existing or future obligation of any Debtor to indemnify current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date.

*Initial Distribution* means the first Distribution that the Plan Administrator makes to holders of Allowed Claims.

*Initial Distribution Date* means the date on which the Plan Administrator shall make the Initial Distribution, which shall not be less than five Business Days after the Effective Date.

*Intercompany Claim* means any Claim against a Debtor held by another Debtor.

*Intercompany Interest* means an Interest in a Debtor other than any Existing Equity Interest.

**Interest** means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in any Debtor (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in such Debtor), whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

**Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**Management Incentive Plan** means the post-Effective Date management incentive plan of NewCo which shall provide for [up to] 10% of New Equity Interests on a fully diluted basis or other equity or similar interests in NewCo to be reserved for directors, managers, officers, and employees of NewCo or a subsidiary of NewCo (including the Credit Bid Purchaser) to be distributed on terms to be determined by the board of directors of NewCo.

**New Equity Interests** means the equity interests of NewCo to be issued (i) on the Effective Date (including the Backstop Commitment Premium Equity Interests and upon the exercise of the Subscription Rights), (ii) upon exercise of the New Money Warrants, the SLTL Warrants, or the GUC Warrants, (iii) under the Management Incentive Plan, or (iv) on or after the Effective Date as otherwise permitted pursuant to the NewCo Organizational Documents.

**New Intercreditor Agreement** means that certain Intercreditor Agreement, to be dated as of the Effective Date, by and among the First Lien Exit Facility Agent and the Second Lien Exit Facility Agent and the Credit Bid Purchaser, the form of which shall be contained in the Plan Supplement, acceptable to the Prepetition FLFO Administrative Agent, the First Lien Exit Facility Agent, the Requisite FLFO Lenders, the Debtors, the Required DIP Lenders, and the Requisite FLTL Lenders.

**NewCo** means [•], which is the direct or indirect owner of 100% of the equity interests of the Credit Bid Purchaser.

**NewCo Entities** means, collectively, NewCo and each of its direct and indirect subsidiaries.

**NewCo Organizational Documents** means the form of certificate of formation, limited liability company agreement, agreement of limited partnership, articles of incorporation, bylaws, trust agreements, or such other applicable formation documents of the NewCo and any of its subsidiaries, including any shareholders' or stockholders' agreement, which shall be (i) acceptable to the Debtors, the Requisite FLTL Lenders, and the Required DIP Lenders and (ii) (a) if NewCo or any of its subsidiaries are to be formed in a jurisdiction outside of the United States, reasonably acceptable to the Prepetition FLFO Administrative Agent or (b) if NewCo or any of its subsidiaries are to be formed in a jurisdiction within the United States, reasonably acceptable to the Prepetition FLFO Administrative Agent solely to the extent that it directly and adversely impacts the holders of Allowed FLFO Claims or First Lien Exit Facility Lenders.

**New Money Consideration** means, in the aggregate, the amount of Cash provided to the Debtors by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement.

*New Money Investment* means the investment of up to $85 million in Cash into Credit Bid Purchaser by the New Money Second Lien Exit Facility Lenders in connection with, and upon consummation of, the Second Lien Exit Facility, subject to the terms of the Second Lien Backstop Commitment Letter.

*New Money Second Lien Exit Facility Lenders* means the lenders party to the Second Lien Exit Facility Credit Agreement participating in the New Money Investment.

*New Money Warrant Agreement* means a warrant agreement to be entered into by and among NewCo and the warrant agent named therein that shall govern the terms of the New Money Warrants, the form of which shall be acceptable to the Debtors, Required DIP Lenders and Requisite FLTL Lenders.

*New Money Warrants* means 7-year warrants for up to 24% of the New Equity Interests (calculated on a fully diluted basis giving effect to the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of this Plan, the Backstop Commitment Premium Equity Interests, and the New Equity Interests issuable upon the exercise of the Subscription Rights, but excluding the effect of any New Equity Interests issuable upon exercise of the SLTL Warrants and GUC Warrants and any New Equity Interest issuable pursuant to the Management Incentive Plan), with a strike price of $0.01, the terms of which shall be set forth in the New Money Warrant Agreement and which shall be issued and allocated in a manner consistent with the Second Lien Backstop Commitment Letter.

*Other Secured Claim* means any Secured Claim against a Debtor other than a Priority Tax Claim, FLFO Claim, FLTL Claim, and SLTL Claim.

*Person* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other Entity.

*Petition Date* means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

*Plan* means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as may be amended, supplemented or modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

*Plan Administrator* means a person or entity selected by the Creditors' Committee, subject to the consent of the Debtors, Required DIP Lenders, and Requisite FLTL Lenders, with such consent not to be unreasonably withheld, that is charged with overseeing the tasks outlined in Section 5.9 of this Plan, or any successor thereto. The identity of the Plan Administrator shall be disclosed to the Bankruptcy Court before the Confirmation Hearing.

*Plan Administrator Agreement* means an agreement setting forth the economic arrangement and terms pursuant to which the Plan Administrator will perform its duties under this Plan.

**Plan Administrator Expense Reserve** means a segregated account not subject to the Liens of the Prepetition Agents or DIP Agent established by the Plan Administrator in accordance with Section 5.15 of this Plan.

**Plan Administrator Expense Reserve Amount** means Cash in an amount equal to $8,000,000 to be funded into the Plan Administrator Expense Reserve on the Effective Date.

**Plan Distribution** means any initial or periodic payment or transfer of consideration to holders of Allowed Claims made under the Plan.

**Plan of Merger** means that certain Agreement and Plan of Merger, which shall be in substantially the form attached to the Apache Implementation Agreement.

**Plan of Merger Consent Rights** means any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of assets in connection with the Plan of Merger.

**Plan of Merger Preferential Purchase Rights** means any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, and similar right the operation of which is triggered by the vesting of the FWE Assets in connection with the Plan of Merger.

**Plan Settlement** means the settlement of certain Claims and controversies pursuant to Section 5.1 of the Plan.

**Plan Supplement** means a supplement or supplements to the Plan containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, which shall include: (a) the Amended Organizational Documents (if any), (b) information regarding the sole manager and independent director to be appointed at FWE I to the extent known and determined and other information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, (c) a schedule of retained Causes of Action, (d) the Schedule of Assumed Contracts, (e) the Plan Administrator Agreement; (f) the Credit Bid Purchase Agreement; (g) the NewCo Organizational Documents; (h) the Apache Definitive Documents; (i) the First Lien Exit Facility Agreement; (j) the Second Lien Exit Facility Agreement; (k) the New Intercreditor Agreement; (l) the New Money Warrant Agreements; (m) the GUC Warrant Agreement; and (n) any Additional Predecessor Agreement; *provided*, *however*, that the Debtors shall have the right to amend documents contained in, and exhibits thereto, the Plan Supplement in accordance with the terms of this Plan and the Restructuring Support Agreement (including the consent rights set forth therein).

**Postpetition Hedging Agreements** has the meaning set forth in that certain *Emergency Order (I) Authorizing Debtors to (A) Enter Into and Perform Under New Postpetition Hedging Agreements and (B) Grant Related Liens and Superiority Claims, (II) Modifying Automatic Stay, and (III) Granting Related Relief* entered on August 24, 2020 (ECF No. 242).

**Postpetition Hedge Claim** means a Claim arising pursuant to any Postpetition Hedging Agreement.

**Post-Effective Date Debtors** means the Debtors, as reorganized as of the Effective Date in accordance with this Plan, including FWE III. For the avoidance of doubt, the Post-Effective Date Debtors does not include NewCo or its subsidiaries (including the Credit Bid Purchaser), or FWE I.

**Post-Effective Date FWE Parent** means FWE Parent, as reorganized on the Effective Date in accordance with this Plan.

**Prepetition Agents** means, collectively, the Prepetition FLFO Administrative Agent, the Prepetition FLFO Collateral Agent, the Prepetition FLTL Administrative Agent, and the Prepetition SLTL Agent.

**Prepetition FLFO Administrative Agent** means Goldman Sachs Bank USA, solely in its capacity as administrative agent under the Prepetition FLFO Credit Agreement.

**Prepetition FLFO Advisors** means Vinson & Elkins, LLP, Shipman & Goodwin LLP (in its capacity as counsel to the Prepetition FLFO Collateral Agent), Opportune LLP, and any local or foreign advisors.

**Prepetition FLFO Collateral Agent** means Cantor Fitzgerald Securities, solely in its capacity as collateral agent under the Prepetition FLFO Credit Agreement.

**Prepetition FLFO Credit Agreement** means that certain *Second Amended and Restated Credit Agreement- First Out*, dated as of June 28, 2019, by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the Prepetition FLFO Administrative Agent, the Prepetition FLFO Collateral Agent, and the Prepetition FLFO Lenders, and the other parties thereto, as in effect immediately before the Effective Date.

**Prepetition FLFO Lenders** means the Lenders (as defined in the Prepetition FLFO Credit Agreement) holding Prepetition FLFO Loans immediately before the Effective Date.

**Prepetition FLFO Loans** means the Loans (under and as defined in the Prepetition FLFO Credit Agreement) outstanding immediately before the Effective Date.

**Prepetition FLFO Secured Parties** means, collectively, the Prepetition FLFO Administrative Agent, the Prepetition FLFO Lenders, and the other Secured Parties (as defined in the Prepetition FLFO Credit Agreement) under the Prepetition FLFO Credit Agreement.

**Prepetition FLTL Administrative Agent** means Cantor Fitzgerald Securities, solely in its capacity as administrative agent and collateral agent under the Prepetition FLTL Credit Agreement.

**Prepetition FLTL Credit Agreement** means that certain *Amended and Restated First Lien Term Loan Agreement*, dated as of April 11, 2018, by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the Prepetition FLTL Administrative Agent, and the Prepetition FLTL Lenders, and the other parties thereto, as in effect immediately before the Effective Date.

**Prepetition FLTL Lenders** means the Lenders (as defined in the Prepetition FLTL Credit Agreement) holding Prepetition FLTL Loans immediately before the Effective Date.

**Prepetition FLTL Loans** means the Loans (under and as defined in the Prepetition FLTL Credit Agreement) outstanding immediately before the Effective Date.

**Prepetition SLTL Administrative Agent** means Cortland Capital Market Services LLC, solely in its capacity as administrative agent and collateral agent under the Prepetition SLTL Credit Agreement.

**Prepetition SLTL Credit Agreement** means that certain *Amended and Restated Second Lien Term Loan Agreement*, dated as of April 11, 2018, by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the Prepetition SLTL Administrative Agent, and the Prepetition SLTL Lenders, and the other parties thereto, as in effect immediately before the Effective Date.

**Prepetition SLTL Lenders** means the Lenders (as defined in the Prepetition SLTL Credit Agreement) holding Prepetition SLTL Loans immediately before the Effective Date.

**Prepetition SLTL Loans** means the Loans (under and as defined in the Prepetition SLTL Credit Agreement) outstanding immediately before the Effective Date.

**Principal FLFO Amount** has the meaning set forth in Section 4.3.

**Priority Non-Tax Claim** means any Claim other than an Administrative Expense Claim, or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

**Priority Tax Claim** means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**Pro Rata Share** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Interests in that Class.

**Professional Person(s)** means any Person retained by order of the Bankruptcy Court in connection with these Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

**Professional Fee Escrow** means an escrow account established and funded pursuant to section 2.2 of the Plan.

**Professional Fee Escrow Amount** means the aggregate unpaid Fee Claims through the Effective Date as estimated in accordance with section 2.2 of the Plan.

19

**Released Parties** means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (k) the Exit Facility Agents, (l) the Exit Facility Lenders, (m) the Second Lien Backstop Parties, (n) the ERO Backstop Parties, (o) the Apache PSA Parties, and (p) with respect to each of the foregoing Persons in clauses (a) through (o), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

**Releasing Parties** means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**Required DIP Lenders** has the meaning set forth in the Restructuring Support Agreement.

**Requisite FLFO Lenders** means, as of the date of determination, Prepetition FLFO Lenders holding at least a majority of the outstanding Prepetition FLFO Loans (inclusive of validly executed but unsettled trades) held by the Prepetition FLFO Lenders as of such date.

**Requisite FLTL Lenders** has the meaning set forth in the Restructuring Support Agreement.

**Requisite SLTL Lenders** has the meaning set forth in the Restructuring Support Agreement.

**Residual Distributable Value** means any distributable value of the Single Share of Post-Effective Date FWE Parent held by the Plan Administrator (a) after satisfaction of Allowed Administrative Expense Claims, Allowed Other Secured Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, all Cure Amounts and (b) after satisfaction of all

fees, expenses, costs and other amounts pursuant to the Plan and incurred by the Post-Effective Date Debtors in connection with post-Effective Date operations and wind-down.

*Restructuring* means the restructuring of the Debtors, the principal terms of which are set forth in this Plan and the Plan Supplement.

*Restructuring Expenses* means the reasonable and documented fees and expenses incurred by (i) the Ad Hoc Group of Secured Lenders, (ii) the Prepetition FLFO Secured Parties, and (iii) the Ad Hoc Group of Prepetition SLTL Lenders in connection with the Chapter 11 Cases, including the fees and expenses of the Ad Hoc Group of Secured Lenders Advisors, the Prepetition FLFO Advisors, and Ad Hoc Group of Prepetition SLTL Lenders Advisors, in each case payable in accordance with the terms of any applicable agreements, engagement letters or fee letters executed with such parties or pursuant to the terms of the DIP Order and without the requirement for the filing of retention applications, fee applications, or any other application in the Chapter 11 Cases, which shall not be subject to any offset, defense, counterclaim, reduction, or creditor credit and, to the extent incurred prior to the Effective Date, shall be Allowed as Administrative Expense Claims upon incurrence; *provided*, *however*, Restructuring Expenses of the Ad Hoc Group of Prepetition SLTL Lenders shall be limited to and consist solely of the reasonable fees and expenses incurred by the Ad Hoc Group of Prepetition SLTL Lenders Advisors in their capacity as counsel to the Ad Hoc Group of Prepetition SLTL Lenders.

*Restructuring Support Agreement* means that certain *Restructuring Support Agreement*, dated as of August 4, 2020, by and among Debtor Fieldwood Energy LLC, certain of its affiliates specified therein, the Consenting Creditors, and Apache, as the same may be amended, restated, or otherwise modified in accordance with its terms.

*Restructuring Transactions* means one or more transactions pursuant to section 1123(a)(5) of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Credit Bid Transaction, including (a) the consummation of the transactions provided for under or contemplated by the Plan and any mergers, divisive mergers, amalgamations, consolidations, arrangements, continuances, transfers, conversions, sales, dispositions, or other corporate transactions necessary or appropriate to implement the Plan, (b) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan or the Credit Bid Transaction and that satisfy the requirements of applicable law, (c) the Equity Rights Offerings, (d) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan, and (d) all other actions that the Debtors, the Post-Effective Date Debtors or NewCo (or any of its subsidiaries, including the Credit Bid Purchaser), as applicable, determine are necessary or appropriate and consistent with the Plan or the Credit Bid Transaction. For the avoidance of doubt, Restructuring Transactions includes the Credit Bid Transaction and the Divisive Merger effectuated pursuant to the Plan of Merger.

*Schedule of Abandoned Properties* means a schedule (as may be amended, modified, or supplemented from time to time) of the Debtors' rights to and interests in executory

contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements to be abandoned pursuant to Section 5.14 of this Plan, a copy of which shall be filed with the Disclosure Statement and included in the Plan Supplement.

**Schedule of Assumed Contracts** means the schedule of executory contracts and unexpired leases to be assumed by the Debtors pursuant to this Plan, if any, as the same may be amended, modified, or supplemented from time to time.

**Schedule of FWE I Oil & Gas Lease Interests** means a schedule (as may be amended, modified, or supplemented from time to time) of the Debtors' interests in the oil and gas leases that shall constitute FWE I Assets, a copy of which shall be filed with the Disclosure Statement and included in the Plan Supplement.

**Schedule of FWE III Oil & Gas Lease Interests** means a schedule (as may be amended, modified, or supplemented from time to time) of the Debtors' interests in the oil and gas leases that shall constitute FWE III Assets, a copy of which shall be filed with the Disclosure Statement and included in the Plan Supplement.

**Schedule of Purchased Oil & Gas Lease Interests** means a schedule (as may be amended, modified, or supplemented from time to time) of the Debtors' interests in the oil and gas leases that will be acquired by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement, a copy of which shall be filed with the Disclosure Statement and included in the Plan Supplement.

**Schedules** means any schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

**Second Lien Backstop Commitment Letter** means that certain backstop commitment letter, in form and substance (i) acceptable to the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders and (ii) reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent, to be entered into by and among Fieldwood Energy LLC, the Credit Bid Purchaser and the Backstop Parties, as may be amended, supplemented, or modified from time to time, pursuant to the terms thereof and consistent with the Restructuring Support Agreement, pursuant to which the Backstop Parties agreed to, among other things, backstop the Second Lien Exit Facility in accordance with the terms and conditions set forth therein.

**Second Lien Backstop Commitment Premium** means a premium equal to 8% of the maximum principal amount of the Second Lien Exit Facility (*i.e.* $185,000,000) payable to the Backstop Parties with the Second Lien Backstop Commitment Premium Equity Interests in accordance with the terms set forth in the Second Lien Backstop Commitment Letter.

**Second Lien Backstop Commitment Premium Equity Interests** means an amount of New Equity Interests equal to the value of the Second Lien Backstop Commitment Premium as further set forth in the Second Lien Backstop Commitment Letter; *provided that* such New Equity Interests shall be issued at a 30% discount to the equity value of NewCo on the Effective Date.

**Second Lien Backstop Party** has the meaning set forth in the Second Lien Backstop Commitment Letter.

**Second Lien Exit Facility** means the facility under the Second Lien Exit Facility Credit Agreement.

**Second Lien Exit Facility Agent** means the administrative agent under the Second Lien Exit Facility Credit Agreement.

**Second Lien Exit Facility Credit Agreement** means that certain credit agreement to be entered by the Credit Bid Purchaser, the Second Lien Exit Facility Agent and the Second Lien Exit Facility Lenders on the Effective Date that shall govern the Second Lien Exit Facility, which shall reflect and contain terms, conditions, representations, warranties, and covenants consistent with the Second Lien Exit Facility Term Sheet and otherwise be in form and substance (i) acceptable to the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders and (ii) reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent.

**Second Lien Exit Facility Documents** means, collectively, the Second Lien Exit Facility Credit Agreement, and any and all other agreements, documents, and instruments delivered or to be entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, the terms of which documents shall be (i) acceptable to the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders and (ii) reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent.

**Second Lien Exit Facility Lenders** means the lenders party to the Second Lien Exit Facility Credit Agreement.

**Second Lien Exit Facility Term Sheet** means the term sheet filed with the Disclosure Statement, as may be amended from time to time with (i) the consent of the Required DIP Lenders and Requisite FLTL Lenders and (ii) the reasonable consent of the Prepetition FLFO Administrative Agent and First Lien Exit Facility Agent.

**Secured** means, when referring to a Claim: (a) secured by a Lien on property of a Debtor's Estate, the amount of which is equal to or less than the value of such property as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

**Security** means any "security" as such term is defined in section 101(49) of the Bankruptcy Code.

**SLTL Claims** means all Claims, other than Claims subject to subordination in accordance with section 510(b) of the Bankruptcy Code, arising from or based upon the Prepetition SLTL Credit Agreement.

**SLTL Claims Allowed Amount** means $517,500,000.00 in principal, plus any accrued but unpaid interest or fees due under the Prepetition SLTL Credit Agreement as of the Petition Date.

**SLTL Deficiency Claim** means any SLTL Claim or portion thereof that is not Secured, if any.

**SLTL Equity Rights Offering** means that certain rights offering pursuant to which each holder of Allowed SLTL Claims is entitled to receive SLTL Subscription Rights to acquire New Equity Interests in the aggregate amount of the SLTL Equity Rights Offering Amount in accordance with the SLTL Equity Rights Offering Procedures, the terms and conditions of which shall be reasonably acceptable to the Debtors, Required DIP Lenders, Requisite FLTL Lenders, Requisite SLTL Lenders, the Prepetition FLFO Administrative Agent, and the First Lien Exit Facility Agent.

**SLTL Equity Rights Offering Amount** means $20,000,000.

**SLTL Equity Rights Offering Procedures** means the procedures for the implementation of the SLTL Equity Rights Offering to be approved by the Bankruptcy Court.

**SLTL ERO Backstop Agreement** means that certain [Equity Backstop Commitment Agreement], in form and substance reasonably acceptable to the Debtors, the Required DIP Lenders, the Requisite FLTL Lenders, the Requisite SLTL Lenders, the Prepetition FLFO Administrative Agent, and the First Lien Exit Facility Agent, to be entered into by and among Fieldwood Energy LLC, NewCo, and the SLTL ERO Backstop Parties, as may be amended, supplemented, or modified from time to time, pursuant to which the SLTL ERO Backstop Parties agreed to, among other things, backstop the SLTL Equity Rights Offering with the terms and conditions set forth therein[; *provided that*, the form of the [Equity Backstop Commitment Agreement] attached hereto as <u>Exhibit</u> [•] shall be deemed acceptable to the Debtors, the Required DIP Lenders, Requisite FLTL Lenders and Requisite SLTL Lenders [and reasonably acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent].]

[**SLTL ERO Backstop Commitment Percentage** has the meaning set forth in the SLTL ERO Backstop Agreement.]

[**SLTL ERO Backstop Commitment Premium** means a premium equal to 8% of the SLTL Equity Rights Offering Amount payable to the SLTL ERO Backstop Parties with the SLTL ERO Backstop Commitment Premium Equity Interests in accordance with the terms set forth in the SLTL ERO Backstop Agreement.]

[**SLTL ERO Backstop Commitment Premium Equity Interests** means an amount of New Equity Interests equal to the value of the SLTL ERO Backstop Commitment Premium as further set forth in the SLTL ERO Backstop Agreement; *provided that* such New Equity Interests shall be issued at a 30% discount to the equity value of NewCo on the Effective Date.

**SLTL ERO Backstop Parties** means those parties that agree to backstop the SLTL Equity Rights Offering pursuant to the SLTL ERO Backstop Agreement, each in its respective capacity as such.

**SLTL Subscription Rights** means the subscription right to acquire New Equity Interests with an aggregate value equal to the SLTL Rights Offering Amount offered in accordance with the SLTL Equity Rights Offering Procedures; *provided, however*, that such New Equity Interests shall be issued at a 30% discount to the equity value of NewCo on the Effective Date.

**SLTL Tranche 1 Warrant Agreement** means a warrant agreement to be entered into by and among NewCo and the warrant agent named therein that shall govern the terms of the SLTL Tranche 1 Warrants, the form of which shall be acceptable to the Debtors, Required DIP Lenders, Requisite FLTL Lenders, the Creditors' Committee, and the Requisite SLTL Lenders.

**SLTL Tranche 1 Warrants** means 8-year warrants for 25% of the New Equity Interests (calculated on a fully diluted basis giving effect to the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of this Plan, the New Equity Interests issuable upon the exercise of the Subscription Rights, the Backstop Commitment Premium Equity Interests, and the New Equity Interests issuable upon the exercise of the New Money Warrants and GUC Warrants, but excluding the effect of any New Equity Interests issuable upon exercise of the SLTL Tranche 2 Warrants and any New Equity Interests issuable in connection with the Management Incentive Plan), with a strike price set at an equity value equal to $1,321,000,000, the terms of which shall be set forth in the SLTL Tranche 1 Warrant Agreement.

**SLTL Tranche 2 Warrant Agreement** means a warrant agreement to be entered into by and among NewCo and the warrant agent named therein that shall govern the terms of the SLTL Tranche 2 Warrants, the form of which shall be acceptable to the Debtors, Required DIP Lenders, Requisite FLTL Lenders, the Creditors' Committee, and the Requisite SLTL Lenders.

**SLTL Tranche 2 Warrants** means 8-year warrants for 32.50% of the New Equity Interests (calculated on a fully diluted basis giving effect to the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of this Plan, the New Equity Interests issuable upon the exercise of the Subscription Rights, the Backstop Commitment Premium Equity Interests, and the New Equity Interests issuable upon the exercise of the New Money Warrants, the SLTL Tranche 1 Warrants, and the GUC Warrants (excluding any adjustment or true-up of the GUC Warrants as described in the definition thereof), but excluding the effect of any New Equity Interests issuable in connection with the Management Incentive Plan), with a strike price set at an equity value equal to $1,585,200,000, the terms of which shall be set forth in the SLTL Tranche 2 Warrant Agreement.

[**SLTL Unsubscribed Shares** has the meaning set forth in the SLTL ERO Backstop Agreement].

*SLTL Warrants* means, collectively, the SLTL Tranche 1 Warrants and the SLTL Tranche 2 Warrants.

*Specified Administrative Expense Claims* means Administrative Expense Claims other than (a) Administrative Expense Claims that are to be assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement; (b) Cure Amounts; and (c) Fee Claims, Restructuring Expenses, any fees and expenses payable pursuant to sections 2.3 and 2.4 of this Plan, any fees and expenses payable or reimbursable by the Debtors or Post-Effective Date Debtors pursuant to the Second Lien Backstop Commitment Letter, Credit Bid Purchase Agreement, or First Lien Exit Facility Commitment Letter (including termination fees, if any), Apache Fees and Expenses and Apache Implementation Costs, and Statutory Fees.

*Standby Loan Agreement* has the meaning set forth in the Apache Implementation Agreement.

*Standby Credit Facility Documents* has the meaning set forth in the Apache Implementation Agreement.

*Statutory Fees* means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

*Subordinated Securities Claim* means a Claim that is subject to subordination in accordance with sections 510(b) of the Bankruptcy Code or otherwise.

*Subscription Rights* means, collectively, the FLTL Subscription Rights and SLTL Subscription Rights.

*Tax Code* means the Internal Revenue Code of 1986, as amended from time to time.

*Toggle Amount* means $35,000,000 or such higher amount as may be mutually agreed between the Debtors, the Required DIP Lenders, and the Requisite FLTL Lenders.

*Toggle Date* has the meaning set forth in Section 5.2(c).

*Toggle Motion* has the meaning set forth in Section 5.2(c)(i).

*Trade Agreement* means a trade agreement entered into or to be entered into between the Debtors, [a NewCo Entity], and a Trade Creditor that will be provided by the Debtors to each Trade Creditor and that provides for, among other things, waiver of any and all liens against the Debtors, their assets and any co-owned assets, or any other affiliated person or entity (including any co-working interest owner of the Debtors), or any such person's or entity's respective assets or property (real or personal), regardless of the statute or other legal authority upon which the lien is asserted, held or asserted by the Trade Creditor relating to the Unsecured Trade Claim, and an agreement by such Trade Creditor to continue to provide post-Effective Date trade terms that are no less favorable than the terms provided to the Debtors prior to the Petition Date

> **Trade Creditor** means a third-party provider of goods or services to the Debtors that holds an Unsecured Trade Claim against the Debtors arising from the provision of such goods and services.

> **Unimpaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124(2) of the Bankruptcy Code.

> **Unsecured Trade Claim** means any unsecured claim (or secured claim that becomes unsecured by agreement, settlement, or order of the Bankruptcy Court) of a Trade Creditor that is held by a Trade Creditor that has elected such claim to be treated as an Unsecured Trade Claim under this Plan and enters into or agrees to enter into a Trade Agreement; *provided*, *however*, that in no event shall any claim against the Debtors that arises in connection with a joint interest billing arrangement constitute an Unsecured Trade Claim.

> **U.S. Trustee** means the United States Trustee for Region 7.

> **Voting Deadline** means April 26, 2021 at 4:00 p.m. (Prevailing Central Time), or such date and time as may set by the Bankruptcy Court.

### 1.2 *Interpretation; Application of Definitions; Rules of Construction.*

> Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in or exhibit to the Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in the Plan," "of the Plan," "to the Plan," and "under the Plan," respectively. The words "includes" and "including" are not limiting. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (d) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### 1.3 *Reference to Monetary Figures.*

> All references in the Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

### 1.4 *Controlling Document.*

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document. In the event of an inconsistency between the Plan and the First Lien Exit Facility Commitment Letter, the First Lien Exit Facility Commitment Letter shall control. In the event of an inconsistency between the Plan and the Second Lien Backstop Commitment Letter, the Second Lien Backstop Commitment Letter shall control. The provisions of the Plan, the First Lien Exit Facility Commitment Letter, the Second Lien Backstop Commitment Letter, and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided*, that if there is determined to be any inconsistency between (a) any provision of the Plan, the First Lien Exit Facility Commitment Letter, and any provision of the Confirmation Order that cannot be so reconciled, or (b) any provision of the Plan, the Second Lien Backstop Commitment Letter, and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern.

### 1.5 *Certain Consent Rights*

Notwithstanding anything herein to the contrary, and without limiting the Debtors' fiduciary duties, any and all consent rights of any party set forth in the Restructuring Support Agreement with respect to the form and substance of this Plan, the Plan Supplement, any supplement to the Disclosure Statement, any other Definitive Documents and any agreements or documents referenced in this Plan or the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference and fully enforceable as if stated in full herein until such time as the Restructuring Support Agreement is terminated in accordance with its terms.

### ARTICLE II.    ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS.

### 2.1 *Treatment of Administrative Expense Claims.*

On (or as soon thereafter as is reasonably practicable) the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date each Administrative Expense Claim becomes an Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim) shall receive in full and final satisfaction of such Claim, either (x) Cash in an amount equal to the Allowed amount of such Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code or (y) such other treatment as to which the Debtors, the Post-Effective Date Debtors, or NewCo and its subsidiaries (including the Credit Bid Purchaser), as applicable, and the holder of such Allowed Administrative Expense Claim will have agreed upon in writing; *provided*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Post-Effective Date Debtors, as applicable, in the ordinary course of

business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities; *provided, further*, that any Allowed Administrative Expense Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

### 2.2 *Treatment of Fee Claims.*

(a)    <u>Final Fee Applications</u>.  All final requests for the allowance and payment of Fee Claims shall be filed no later than 45 days after the Effective Date unless such date is extended by order of the Bankruptcy Court.

(b)    <u>Professional Fee Escrow Amount</u>.  All Professional Persons shall estimate in good faith their unpaid Fee Claims before and as of the Effective Date and shall deliver such estimate to the Debtors at least three (3) calendar days before the Effective Date; *provided*, *however*, that such estimate shall not limit or be deemed to limit the amount of the fees and expenses that are the subject of the Professional Person's final request for payment of Fee Claims. If a Professional Person does not provide such estimate, the Debtors and Post-Effective Date Debtors may estimate the unbilled fees and expenses of such Professional Person; *provided*, *however*, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses incurred by, or payable to, such Professional Person.  The total amount so estimated as of the Effective Date shall comprise the Professional Fee Escrow Amount.

(c)    <u>Professional Fee Escrow</u>.  If the Professional Fee Escrow Amount is greater than zero, then as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors will establish and fund the Professional Fee Escrow with cash equal to the Professional Fee Escrow Amount and no Liens, Claims, or interests will encumber the Professional Fee Escrow in any way.  The Professional Fee Escrow (including funds held in the Professional Fee Escrow) will (i) not be and will not be deemed to be property of the Debtors or the Post-Effective Date Debtors and (ii) will be held in trust for the Professional Persons; *provided*, *however*, that funds remaining in the Professional Fee Escrow after all Allowed Fee Claims have been irrevocably paid in full will revert to the Post-Effective Date Debtors.  Allowed Fee Claims will be paid in cash to such Professional Persons from funds held in the Professional Fee Escrow as soon as reasonably practicable after such Claims are Allowed by an order of the Bankruptcy Court; *provided*, *however*, that the Debtors' obligations with respect to Fee Claims will not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.

If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed Fee Claims and any other Allowed amounts owed to Professional Persons, the deficiency will be promptly funded to the Professional Fee Escrow from the Debtors' estates and/or by Post-Effective Date Debtors without any further action or order of the Bankruptcy Court.

(d)     <u>Post-Effective Date Fees and Expenses</u>. On and after the Effective Date, the Debtors and the Post-Effective Date Debtors, as applicable, will pay in cash in the ordinary course of business and without any further action or order of the Bankruptcy Court, the reasonable legal, professional, or other fees and expenses that are (i) related to implementation of the Plan and (ii) incurred by the Debtors or Post-Effective Date Debtors, as applicable, on and after the Effective Date.

On the Effective Date, any requirement that Professional Persons comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services provided after such date shall terminate, and the Debtors or Post-Effective Date Debtors may employ and pay any post-Effective Date fees and expenses of any Professional Person without any further notice to or action, order, or approval of the Bankruptcy Court.

### 2.3     *Treatment of DIP Claims.*

As of the Effective Date, the DIP Claims shall be Allowed in the full amount outstanding under the DIP Credit Agreement, including principal, interest, fees, costs, other charges, and expenses provided for thereunder. In full and final satisfaction, settlement, release, and discharge of each Allowed DIP Claim, on the Effective Date, each holder of such Allowed DIP Claim shall receive either (a) payment in full in Cash or (b) such other treatment as to which the Debtors or the Post-Effective Date Debtors, as applicable, and the holder of such Allowed DIP Claims will have agreed upon in writing. On the Effective Date, all Liens granted to secure the Allowed DIP Claims shall be terminated and of no further force and effect.

### 2.4     *Payment of Fees and Expenses Under DIP Order.*

On the later of (a) the Effective Date and (b) the date on which such fees, expenses, or disbursements would be required to be paid under the terms of the DIP Order, the Debtors or the Post-Effective Date Debtors (as applicable) shall pay all fees, expenses, and disbursements of the DIP Agent and DIP Lenders, in each case that have accrued and are unpaid as of the Effective Date and are required to be paid under or pursuant to the DIP Order. After the Effective Date, the Post-Effective Date Debtors shall continue to reimburse the DIP Agent and the DIP Lenders for the reasonable fees and expenses (including reasonable and documented legal fees and expenses) incurred by the DIP Agent and the DIP Lenders after the Effective Date in accordance with the terms of the DIP Documents. The Post-Effective Date Debtors shall pay all of the amounts that may become payable to the DIP Agent or any of the DIP Lenders in accordance with the terms of the DIP Documents and the DIP Order.

### 2.5     *Treatment of Priority Tax Claims.*

On the Effective Date or as soon thereafter as is reasonably practicable (but in no event later than 30 days after the Effective Date), each holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction of such Claim, either (a) Cash in an amount equal to the Allowed amount of such Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code or (b) or such other treatment as to which the Debtors, the Post-Effective Date Debtors or NewCo and its subsidiaries (including the Credit Bid Purchaser) as applicable, and the holder of such Allowed Priority Tax Claim will have agreed upon in

writing; *provided*, that Allowed Priority Tax Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Post-Effective Date Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities; *provided, further*, that any Allowed Priority Tax Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

### 2.6 *Restructuring Expenses.*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Post-Effective Date Debtors, as applicable, shall pay in full in Cash (to the extent not previously paid during the course of the Chapter 11 Cases) all outstanding Restructuring Expenses billed through the Effective Date, in accordance with the terms of the applicable orders, engagement letters, or other applicable contractual arrangements. All parties entitled to payment pursuant to this Section 2.6 shall estimate their accrued Restructuring Expenses before and as of the Effective Date and shall deliver such estimates to the Debtors at least three Business Days before the Effective Date; *provided,* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such parties. On the Effective Date, final invoices for all Restructuring Expenses incurred before and as of the Effective Date shall be submitted to the Debtors. In addition, the Debtors and the Post-Effective Date Debtors (as applicable) shall continue to pay post-Effective Date, when due and payable in the ordinary course, Restructuring Expenses related to implementation, consummation and defense of the Plan.

### 2.7 *Postpetition Hedge Claims.*

On (or as soon thereafter as is reasonably practicable) the later of (a) the Effective Date and (b) the first Business Day on which the Allowed Postpetition Hedge Claim becomes due and owing in accordance with the terms of and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities, each holder of an Allowed Postpetition Hedge Claim shall receive in full and final satisfaction of such Claim, either (x) Cash in an amount equal to the Allowed amount of such Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code or (y) such other treatment as to which the Debtors, the Post-Effective Date Debtors, or NewCo and its subsidiaries (including the Credit Bid Purchaser), as applicable, and the holder of such Allowed Postpetition Hedge Claim will have agreed upon in writing; *provided*, that any Allowed Postpetition Hedge Claim assumed by the Credit Bid Purchaser in accordance with the foregoing clause (y) pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties. Nothing herein shall modify any of the contractual rights under a Postpetition Hedging Agreement of a holder of an Allowed Postpetition Hedge Claim in their capacity as a holder of an Allowed Postpetition Hedge Claim.

# ARTICLE III.        CLASSIFICATION OF CLAIMS AND INTERESTS.

## 3.1     *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, *however*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled before the Effective Date.

## 3.2     *Formation of Debtor Groups for Convenience Only.*

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and making Plan Distributions in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any Assets; and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

## 3.3     *Summary of Classification of Claims and Interests.*

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are:  (a) Impaired and Unimpaired under the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.  The classification of Claims and Interests set forth herein shall apply separately to each Debtor.

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|-------|---------------------------|------------|------------------|
| Class 1 | Other Secured Claims | Impaired | Yes |
| Class 2 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| Class 3 | FLFO Claims | Impaired | Yes |
| Class 4 | FLTL Claims | Impaired | Yes |
| Class 5 | SLTL Claims | Impaired | Yes |
| Class 6A | Unsecured Trade Claims | Impaired | Yes |
| Class 6B | General Unsecured Claims | Impaired | Yes |
| Class 7 | Intercompany Claims | Unimpaired | No (Presumed to accept) |
| Class 8 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |
| Class 9 | Intercompany Interests | Unimpaired | No (Presumed to accept) |
| Class 10 | Existing Equity Interests | Impaired | No (Deemed to reject) |

### 3.4 *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Debtors or the Post-Effective Date Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.5 *Separate Classification of Other Secured Claims.*

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within the Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject the Plan and receiving Plan Distributions.

### 3.6 *Elimination of Vacant Classes.*

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes that votes on the Plan shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

### 3.7 *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

With respect to each Debtor, if a Class contained Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims in such Class.

### 3.8 *Voting; Presumptions; Solicitation.*

(a)     **Acceptance by Certain Impaired Classes**.  Only holders of Allowed Claims in Classes 1, 3, 4, 5, 6A, and 6B are entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

(b)     **Presumed Acceptance by Unimpaired Classes**.  Holders of Claims and Interests in Classes 2, 7 and 9 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject the Plan.

(c)     **Deemed Rejection by Certain Impaired Classes**.  Holders of Claims in Class 8 and Class 10 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject the Plan.

### 3.9 *Cramdown.*

If any Class is deemed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (a) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code. If a controversy arises as to whether any Claims or Interests, or any class of Claims or Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### 3.10 *No Waiver.*

Nothing contained in the Plan shall be construed to waive a Debtor's or other Person's right to object on any basis to any Disputed Claim.

## ARTICLE IV.        TREATMENT OF CLAIMS AND INTERESTS.

### 4.1 *Class 1: Other Secured Claims.*

(a)    **Treatment**:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Post-Effective Date Debtors, such holder shall receive either (i) payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter, (ii) such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired, or (iii) any other treatment consistent with the provisions of section 1129 of the Bankruptcy Code, including by providing such holder with the "indubitable equivalent" of their Allowed Other Secured Claim (which, for the avoidance of doubt, may be in the form of a multi-year promissory note or other financial instrument); *provided,* that any Allowed Other Secured Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

(b)    **Impairment and Voting**:  Allowed Other Secured Claims are Impaired. Holders of Allowed Other Secured Claims are entitled to vote on the Plan.

### 4.2 *Class 2:  Priority Non-Tax Claims.*

(a)    **Treatment**:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall, at the option of the Debtors or the Post-Effective Date Debtors (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in

each case, or as soon as reasonably practicable thereafter; *provided,* that any Allowed Priority Non-Tax Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

(b)     **Impairment and Voting**:   Allowed Priority Non-Tax Claims are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Priority Non-Tax Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders shall not be solicited with respect to such Allowed Priority Non-Tax Claims.

### 4.3     *Class 3:  FLFO Claims.*

(a)     **Treatment**:  Except to the extent that a holder of an Allowed FLFO Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of such Allowed FLFO Claim, (a) each holder of an Allowed FLFO Claim shall receive its Pro Rata Share of the FLFO Distribution Amount and (b) all remaining Allowed FLFO Claims shall be assumed by the NewCo Entities as modified to the extent set forth in the First Lien Exit Facility Documents.  The Liens securing the FLFO Claims that attach to the Credit Bid Acquired Interests shall be retained and deemed assigned to the First Lien Exit Facility Agent upon the Effective Date to secure the obligations under the First Lien Exit Facility.

(b)     **Impairment and Voting**:  FLFO Claims are Impaired.  Holders of Allowed FLFO Claims are entitled to vote on the Plan.

(c)     **Allowance**:  The FLFO Claims shall be deemed Allowed on the Effective Date in the FLFO Claims Allowed Amount.

### 4.4     *Class 4:  FLTL Claims.*

(a)     **Treatment:** Except to the extent that a holder of an Allowed FLTL Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed FLTL Claim and in consideration for the Credit Bid Transaction, each holder of an Allowed FLTL Claim shall receive its Pro Rata Share of:

(i)     100% of the New Equity Interests, subject to dilution by (w) the Backstop Commitment Equity Premium Interests, (x) the New Equity Interests issued upon exercise of the Subscription Rights, (y) any New Equity Interests issued upon the exercise of the New Money Warrants, SLTL Warrants, or the GUC Warrants, and (z) any New Equity Interests issued pursuant to the Management Incentive Plan; and

(ii)     the FLTL Subscription Rights.

(b)     **Impairment and Voting**:  FLTL Claims are Impaired.  Holders of Allowed FLTL Claims are entitled to vote on the Plan.

(c)    **Allowance**: The FLTL Claims shall be deemed Allowed on the Effective Date in the aggregate amount of the FLTL Claims Allowed Amount.

### 4.5    *Class 5:  SLTL Claims.*

(d)    **Treatment:** Except to the extent that a holder of an Allowed SLTL Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed SLTL Claim, each holder of an Allowed SLTL Claim shall receive its Pro Rata Share of:

(iii)    the SLTL Warrants; and

(iv)    the SLTL Subscription Rights.

(e)    **Impairment and Voting**:  SLTL Claims are Impaired.  Holders of Allowed SLTL Claims are entitled to vote on the Plan.

(f)    **Allowance**: The SLTL Claims shall be deemed Allowed on the Effective Date in the aggregate amount of the SLTL Claims Allowed Amount.

### 4.6    *Class 6A:  Unsecured Trade Claims.*

(a)    **Treatment:** Except to the extent that a holder of an Allowed Unsecured Trade Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed Unsecured Trade Claim, each holder of an Allowed Unsecured Trade Claim that has executed a Trade Agreement shall receive:

(i)    if 14% of the aggregate amount of all Allowed Unsecured Trade Claims is less than or equal to $8,000,000, Cash in an amount equal to 14% of the Allowed amount of such holder's Allowed Unsecured Trade Claim; or

(ii)    if 14% of the aggregate amount of Allowed Unsecured Trade Claims is greater than $8,000,000, its Pro Rata share of $8,000,000.

(b)    **Impairment and Voting**: Unsecured Trade Claims are Impaired.  Holders of Unsecured Trade Claims are entitled to vote on the Plan.

### 4.7    *Class 6B: General Unsecured Claims.*

(c)    **Treatment:** Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on or after the Effective Date, in full and final satisfaction of and in exchange for such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive, up to the full amount of such holder's Allowed General Unsecured Claim, its Pro Rata Share of:

(i)    the GUC Warrants; and

      (ii)      any Residual Distributable Value.

     (b)     **Impairment and Voting**: General Unsecured Claims are Impaired. Holders of General Unsecured Claims are entitled to vote on the Plan.

### 4.8    *Class 7: Intercompany Claims.*

     (a)     **Treatment**: On or after the Effective Date, all Intercompany Claims shall be adjusted, reinstated, or discharged in the Debtors' or Post-Effective Date Debtors' discretion.

     (b)     **Impairment and Voting**: All Allowed Intercompany Claims are deemed Unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Intercompany Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders shall not be solicited with respect to such Allowed Intercompany Claims.

### 4.9    *Class 8: Subordinated Securities Claims.*

     (a)     **Treatment**: All Subordinated Securities Claims, if any, shall be discharged, cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Allowed Subordinated Securities Claims will not receive any distribution on account of such Allowed Subordinated Securities Claims.

     (b)     **Impairment and Voting**: Allowed Subordinated Securities Claims are Impaired. In accordance with section 1126(g) of the Bankruptcy Code, holders of Subordinated Securities Claims are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders shall not be solicited with respect to Subordinated Securities Claims.

### 4.10    *Class 9: Intercompany Interests.*

     (a)     **Treatment**: On the Effective Date, all Intercompany Interests, in the Debtors' or the Post-Effective Date Debtors' discretion, shall be adjusted, reinstated, cancelled, or discharged in the Debtors' or Post-Effective Date Debtors' discretion.

     (b)     **Impairment and Voting:** Intercompany Interests are Unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Intercompany Interests are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders shall not be solicited with respect to such Allowed Intercompany Interests.

### 4.11    *Class 10: Existing Equity Interests.*

     (a)     **Treatment**: On the Effective Date, all Existing Equity Interests shall be canceled, released, and extinguished, and will be of no further force or effect.

     (b)     **Impairment and Voting**: Allowed Existing Equity Interests are Impaired. Holders of Existing Equity Interests are not entitled to vote on the Plan.

### 4.12   *Treatment of Vacant Classes.*

Any Claim or Interest in a Class that is considered vacant under Section 3.6 of the Plan shall receive no Plan Distribution.


## ARTICLE V.       MEANS FOR IMPLEMENTATION.

### 5.1   *Plan Settlement; Compromise and Settlement of Claims, Interests, and Controversies.*

Subject to approval by the Bankruptcy Court in connection with confirmation of the Plan, the provisions of the Plan and other documents entered into in connection with the Plan constitute a good faith compromise and settlement among the Debtors, the Consenting Creditors and the Creditors' Committee of claims, Causes of Action and controversies among such parties, including all potential claims, Causes of Action and controversies related to the Challenge Period (as defined in the DIP Order) and any Challenge under the DIP Order, and are in consideration of the value provided to the Estates by the Consenting Creditors, including the value being provided to holders of Unsecured Trade Claims and General Unsecured Claims pursuant to Sections 4.6 and 4.7 hereof. The Plan shall be deemed a motion to approve the Plan Settlement and the good faith compromise and settlement of all of the claims, Causes of Action and controversies described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlement, as well as a finding by the Bankruptcy Court that the Plan Settlement is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  For the avoidance of doubt, nothing in this Plan or the Disclosure Statement shall require the Creditors' Committee to take or refrain from taking any action that it determines in good faith would be inconsistent with its fiduciary duties under applicable law. Notwithstanding the foregoing, the Creditors' Committee acknowledges that its entry into the Plan Settlement and its support for this Plan is consistent with its fiduciary duties.

Further, pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Allowed Claims, Allowed Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Allowed Claims and Allowed Interests, and is fair, equitable, and reasonable.

### 5.2   *Credit Bid Transaction; Confirmation Outside Date.*

(a)       If the Confirmation Date occurs on or before the Confirmation Outside Date or the Debtors, the Required DIP Lenders, and Requisite FLTL Lenders do not otherwise

elect to pursue a 363 Credit Bid Transaction pursuant to Section 5.2(c) of the Plan, then, on the Effective Date, pursuant to sections 363, 1123, 1141(b) and 1141(c) of the Bankruptcy Code, in accordance with the Credit Bid Purchase Agreement, subject to the satisfaction or waiver of all applicable closing conditions under the Credit Bid Purchase Agreement, (i) all Credit Bid Acquired Interests shall be transferred to, and the Credit Bid Acquired Interests owned by the Debtors shall vest free and clear of all Liens[2] (other than (i) any and all Liens securing the FLFO Claim or the obligations under the First Lien Exit Facility or (ii) Credit Bid Permitted Encumbrances except in the case of Fieldwood U.A. Interests, which shall vest free and clear of all Liens other than Liens described in clause (i) above to the extent contemplated by the First Lien Exit Facility Documents), Claims, charges, Interests, or other encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights, and (ii) all Credit Bid Assumed Liabilities shall be assumed by the Credit Bid Purchaser.

(b)        In the event that the transaction pursuant to Section 5.2(a) of the Plan is consummated and in the event of any conflict whatsoever between the terms of the Plan and the Credit Bid Purchase Agreement with respect to the Credit Bid Transaction, the terms of the Credit Bid Purchase Agreement shall control, and the Plan shall be deemed to incorporate in their entirety the terms, provisions, and conditions of the Credit Bid Purchase Agreement.

(c)        (x) If the Confirmation Date does not occur before the Confirmation Outside Date or (y) if the estimated amount of Allowed Specified Administrative Expense Claims to be satisfied under the Plan on or after the Effective Date is projected at any time prior to the Confirmation Date to exceed the Toggle Amount (the next Business Day after the occurrence of (x) or (y), the ("**Toggle Date**"), then, with the consent of the Required DIP Lenders and Requisite FLTL Lenders, the Debtors shall:

(i)        within 7 days of the Toggle Date, file a motion (the "**Toggle Motion**"), in form and substance acceptable to the Debtors, the Required DIP Lenders and Requisite FLTL Lenders, seeking entry of an order of the Bankruptcy Court approving a credit bid sale transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders) pursuant to section 363 of the Bankruptcy Code on substantially the same terms as provided in the Credit Bid Purchase Agreement (which terms shall be acceptable to the Debtors, the Requisite FLTL Lenders, and Required DIP Lenders), free and clear of all Liens (other than (i) any and all Liens securing the FLFO Claim or the First Lien Exit Facility or (ii) Credit Bid Permitted Encumbrances except in the case of Fieldwood U.A. Interests, which shall vest free and clear of all Liens other than Liens described in clause (i) above to the extent contemplated by the First Lien Exit Facility Documents), Claims, charges, Interests, or other encumbrances, the Credit Bid Consent Rights and the

---

[2] Provided that the Retained Properties (as defined in the Apache Implementation Agreement) shall be transferred in accordance with the Decommissioning Agreement.

Credit Bid Preferential Purchase Rights that are applicable to the Credit Bid Acquired Interests;

(ii)     within 15 days of the Toggle Date and subject to the reasonable consent of Apache, the Requisite FLTL Lenders, the Required DIP Lenders and the Debtors, amend the Apache Definitive Documents as reasonably required to effectuate the 363 Credit Bid Transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders); provided that no such actions shall require the Apache PSA Parties to alter the economics of the Apache Definitive Documents without the Apache PSA Parties' express written consent; and

(iii)    within 35 days of the Toggle Date, obtain entry of an order of the Bankruptcy Court approving the 363 Credit Bid Transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders).

(d)     Notwithstanding anything herein to the contrary, upon the occurrence of the Toggle Date, if the transactions under the Toggle Motion (i) (a) individually or in the aggregate, results in a reduction of 10% or more of the total PV-10 of total 2P reserves comprising the assets acquired by the Credit Bid Purchaser (which shall be calculated by reference to the FWE YE2020 Internal Reserve Report (as of 5.1.21)), (b) results in any contract rights constituting material assets not being acquired by the Credit Bid Purchaser, (c) individually or in the aggregate, results in an increase by $40.0 million or more (which, for the avoidance of doubt, in the case of plugging and abandonment liabilities, shall be calculated on a present value basis) in liabilities assumed by the Credit Bid Purchaser, (d) relates to any change in treatment or recovery of the Prepetition FLFO Credit Agreement or First Lien Exit Facility, or (e) provide for any differences from the transaction under this Plan that are materially adverse to the interests of the First Lien Exit Facility Agent and the First Lien Exit Facility Lenders, and (ii) are not (a) reasonably acceptable to the Prepetition FLFO Agent with respect to the foregoing clause (i)(b) or (e), or (ii) acceptable to the Prepetition FLFO Agent with respect to the foregoing clause (i)(a),(c), or (d), then all rights of the Prepetition FLFO Secured Parties set forth in the Prepetition FLFO Credit Agreement and related documents to object to the Toggle Motion on any grounds are expressly preserved, and all of the Prepetition FLFO Secured Parties' claims, rights, and remedies are reserved for all purposes, including the right to obtain treatment and transaction structure different than as set forth in the Toggle Motion.

(e)     Notwithstanding anything in the Credit Bid Purchase Agreement or any agreement entered into pursuant to Section 5.2(c) of the Plan to the contrary, the Credit Bid Purchaser shall not be liable for any liability or obligation on account of any Claim or Interest that is compromised, settled, released or discharged pursuant to this Plan.

### 5.3 *Equity Rights Offerings.*

(a) On the Effective Date, the Debtors shall consummate the Equity Rights Offerings.

(b) [FLTL Equity Rights Offering. The FLTL Equity Rights Offering shall be fully backstopped by the FLTL ERO Backstop Parties in accordance with and subject to the terms and conditions of the FLTL ERO Backstop Agreement. The right to participate in the FLTL Equity Rights Offering may not be sold, transferred, or assigned, except in the circumstances described in the FLTL ERO Backstop Agreement. In accordance with the FLTL ERO Backstop Agreement and subject to the terms and conditions thereof, each of the FLTL ERO Backstop Parties, among other things, has agreed, severally but not jointly, to purchase, on or prior to the Effective Date, its respective [FLTL ERO Backstop Commitment Percentage] of the [FLTL Unsubscribed Shares]. In exchange for providing the backstop commitment for the Equity Rights Offering, the FLTL ERO Backstop Parties shall receive, among other things, the FLTL ERO Backstop Commitment Premium Equity Interests payable in accordance with the terms of the FLTL ERO Backstop Agreement.]

(c) [SLTL Equity Rights Offering. The SLTL Equity Rights Offering shall be fully backstopped by the SLTL ERO Backstop Parties in accordance with and subject to the terms and conditions of the SLTL ERO Backstop Agreement. The right to participate in the SLTL Equity Rights Offering may not be sold, transferred, or assigned, except in the circumstances described in the SLTL ERO Backstop Agreement. In accordance with the SLTL ERO Backstop Agreement and subject to the terms and conditions thereof, each of the SLTL ERO Backstop Parties, among other things, has agreed, severally but not jointly, to purchase, on or prior to the Effective Date, its respective [SLTL ERO Backstop Commitment Percentage] of the [SLTL Unsubscribed Shares]. In exchange for providing the backstop commitment for the SLTL Equity Rights Offering, the SLTL ERO Backstop Parties shall receive, among other things, the SLTL ERO Backstop Commitment Premium Equity Interests payable in accordance with the terms of the SLTL ERO Backstop Agreement.]

### 5.4 *New Equity Interests.*

(a) On the Effective Date, NewCo is authorized to issue or cause to be issued and shall, issue the New Equity Interests for eventual distribution in accordance with the terms of this Plan without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person. The New Equity Interests shall be issued and distributed free and clear of all Liens, Claims, and other Interests. All of the New Equity Interests issued pursuant to the Plan shall be duly authorized and validly issued.

(b) On the Effective Date, NewCo and all holders of the New Equity Interests then outstanding shall be deemed to be parties to the NewCo Organizational Documents, where applicable, substantially in the form, or consistent with the term sheets, contained in the Plan Supplement, without the need for execution by any such holder. The NewCo Organizational Documents shall be binding on NewCo and its subsidiaries (including the Credit Bid Purchaser) and all parties receiving, and all holders of, New Equity Interests.

### 5.5     *NewCo Organizational Documents*

The NewCo Organizational Documents will be in form and substance acceptable to the Debtors, Requisite FLTL Lenders, and the Required DIP Lenders. After the Effective Date, the NewCo Organizational Documents may be amended or restated as permitted by such documents and the laws of their respective states, provinces, or countries of incorporation or organization.

### 5.6     *New Money Warrants, SLTL Warrants and GUC Warrants*

On or after the Effective Date, NewCo is authorized to issue or cause to be issued and shall, as provided for in this Plan, issue (i) the New Money Warrants for distribution to the New Money Second Lien Exit Facility Lenders, the SLTL Warrants to the holders of Allowed SLTL Claims, and the GUC Warrants to the holders of Allowed General Unsecured Claims, in each case in accordance with the terms of the Plan and Confirmation Order without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person and (ii) upon exercise of the New Money Warrants, New Equity Interests issuable upon exercise of the New Money Warrants.  The New Money Warrants, the SLTL Warrants, and GUC Warrants shall be issued and distributed free and clear of all Liens, Claims, and other Interests.  All of the New Money Warrants, the SLTL Warrants, and GUC Warrants issued pursuant to the Plan, including as contemplated by the Credit Bid Transaction and the Second Lien Exit Facility Term Sheet, and all New Equity Interests issued upon exercise of the New Money Warrants, the SLTL Warrants, and the GUC Warrants shall be duly authorized and validly issued.

### 5.7     *Plan of Merger*

(a)     On the Effective Date, but after the consummation of the transactions contemplated by the Credit Bid Purchase Agreement, Fieldwood Energy LLC shall adopt the Plan of Merger and, in accordance with the terms thereof and solely to the extent therein, upon the effective time of the Divisional Merger as provided for in the Plan of Merger, the (i) FWE Assets will be allocated to and vest in FWE I and FWE III pursuant to the terms of the Plan of Merger, in each case, free and clear of all Plan of Merger Consent Rights and Plan of Merger Preferential Purchase Rights; and (ii)  the FWE I Obligations shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE I and the FWE III Obligations shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE III. Immediately after the effective time of the Divisive Merger as provided in the Plan of Merger, the only assets, properties and rights of, and the only liabilities and obligations of, (i) FWE I will be the FWE I Assets and FWE I Obligations and (ii) FWE III will be the FWE III Assets and FWE III Obligations.

(b)     All of the membership interests of FWE I and FWE III shall be owned by Post-Effective Date FWE Parent.

(c)     Notwithstanding anything to the contrary in the Plan of Merger, any claim or interest that is satisfied, compromised, settled, released or discharged pursuant to the Plan shall not constitute an FWE I Obligation or FWE III Obligation.

### 5.8 *Single Share*

(a)     On the Effective Date, one share of Post-Effective Date FWE Parent common stock (the "**Single Share**") shall be issued to the Plan Administrator to hold in trust as custodian for the benefit of the holders of Allowed General Unsecured Claims and the Single Share shall be recorded on the books and records maintained by the Plan Administrator.

(b)     On the date that FWE Parent's Chapter 11 Case is closed in accordance with Section 5.25 of this Plan, the Single Share issued on the Effective Date pursuant to the Plan shall be deemed cancelled and of no further force and effect, provided that such cancellation does not adversely impact the Debtors' Estates.

### 5.9 *Plan Administrator*

(a)     *Appointment*.  The Plan Administrator's retention shall commence on the Effective Date and shall continue until: (i) the Bankruptcy Court has entered an order or orders closing each of the Chapter 11 Cases; (ii) the Bankruptcy Court enters an order removing the Plan Administrator for cause; or (iii) the Plan Administrator voluntarily resigns, upon notice filed with the Bankruptcy Court, and a successor Plan Administrator is appointed in accordance with this Plan.

(b)     *Authority*.  Subject to Section 5.9(c) of this Plan, the Plan Administrator shall have all the rights, powers, authority, and duties on behalf of each of the Debtors and Post-Effective Date Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)      subject to Section 7 of the Plan, except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process in accordance with the terms of this Plan, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(ii)     make Distributions to holders of Allowed Claims and Interests in accordance with this Plan, including distributions from the Claims Reserve, Professional Fee Escrow and Plan Administrator Expense Reserve;

(iii)    exercise its reasonable business judgment to direct and control the Debtors or Post-Effective Date Debtors under this Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv)     prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator as described herein;

(v)        engage in the ownership, operation, plugging and abandonment, and decommissioning of the FWE III Assets, including the FWE III Oil & Gas Lease Interests;

(vi)       abandon any property determined by the Plan Administrator to be of *de minimis* value or burdensome to the Estates;

(vii)      other than any Causes of Action released by the Debtors pursuant to this Plan or otherwise, prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors and their Estates;

(viii)     retain, employ, terminate, or replace professionals to assist or represent it in performing its duties under this Plan;

(ix)       pay all fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors, including any Restructuring Expenses, from the Plan Administrator Expense Reserve or otherwise;

(x)        comply with, and cause the Debtors and Post-Effective Date Debtors to comply with, the Debtors' or Post-Effective Date Debtors' continuing obligations under the Credit Bid Purchase Agreement;

(xi)       maintain the books and records and accounts of the Debtors and Post-Effective Date Debtors;

(xii)      establish and maintain bank accounts in the name of the Post-Effective Date Debtors;

(xiii)     incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(xiv)     following the Effective Date, pay any fees and expenses in Cash in accordance with Section 2.4 of this Plan;

(xv)      administer each Debtor's and Post-Effective Date Debtors' tax obligations, including (i) filing tax returns and paying tax obligations and (ii) representing the interest and account of each Debtor, each Debtor's estate, or each Post-Effective Date Debtor before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xvi)        prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors or Post-Effective Date Debtor that are required hereunder, by any Governmental Unit or applicable law;

(xvii)       pay statutory fees in accordance with Section 12.1 of this Plan;

(xviii)      perform other duties and functions that are consistent with the implementation of the Plan or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of this Plan; and

(xix)       close the Chapter 11 Cases pursuant to Section 5.25 of this Plan.

(c)     *Board of Directors and Officers*.

(i)        The officers and directors of the Debtors existing before the Effective Date shall be relieved of any and all duties with the respect to the Debtors as of the Effective Date.

(ii)       Upon the Effective Date, the Plan Administrator shall serve as the sole officer, director, or manager of each Post-Effective Date Debtor. The Plan Administrator may also elect such additional managers(s) and officer(s) of each Post-Effective Date Debtor as the Plan Administrator deems necessary to implement this Plan and the actions contemplated herein. The Plan Administrator shall also have the power to act by written consent to remove any officer or manager of any Post-Effective Date Debtor at any time with or without cause.

(d)     *Post-Effective Date Operations*. After the Effective Date, pursuant to this Plan, the Plan Administrator shall operate the Post-Effective Date Debtors without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

(e)     *Post-Effective Date Expenses*. On and after the Effective Date, all costs, expenses and obligations incurred by the Plan Administrator in administering this Plan, the Post-Effective Date Debtors, or in any manner connected, incidental, or related thereto, in effecting distributions from the Post-Effective Date Debtors thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid from the Plan Administrator Expense Reserve.

(f)     *Indemnification*. Each of the Estates and the Post-Effective Date Debtors shall indemnify and hold harmless the Plan Administrator solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's gross negligence or willful misconduct.

(g)     *Cooperation*. The Debtors, the Post-Effective Date Debtors, the Plan Administrator, the FWE I Sole Manager, and NewCo and its subsidiaries (including the Credit

Bid Purchaser) and their respective professionals, as appropriate, shall cooperate with each other in relation to their respective activities and obligations in respect of this Plan, including objecting to, settling or otherwise reconciling claims as provided herein, and by providing reasonable, good-faith access to personnel, systems, and books and records and their respective personnel and consulting with each other to avoid duplication of effort; *provided*, *however*, that the Debtors, the Post-Effective Date Debtors, the Plan Administrator, the FWE I Sole Manager, and NewCo and its subsidiaries (including the Credit Bid Purchaser) and including its advisors, if any) shall enter into a confidentiality agreement before sharing of any such documents and/or information to the extent deemed reasonably necessary by the Post-Effective Date Debtors, the Credit Bid Purchaser, or Plan Administrator, as applicable.

### 5.10    *Plan Funding.*

Plan Distributions of Cash shall be funded from, among other things, the Debtors' Cash on hand (including the proceeds of the DIP Facility), the New Money Consideration, and the proceeds of the Equity Rights Offerings.

### 5.11    *The Exit Facilities*

(a)    On the Effective Date, the Credit Bid Purchaser shall execute and deliver the Exit Facility Documents and such documents shall become effective in accordance with their terms. On and after the Effective Date, the Exit Facility Documents shall constitute legal, valid, and binding obligations of the Credit Bid Purchaser and be enforceable in accordance with their respective terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan or the Confirmation Order, and the Credit Bid Purchaser shall be authorized to incur the loans under the Exit Facilities and use the proceeds of such loans, in each case, in accordance with the terms of this Plan and the Exit Facility Documents without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person. The terms and conditions of the Exit Facility Documents shall bind the Credit Bid Purchaser and each other Entity that enters into the Exit Facility Documents.

(b)    Confirmation shall be deemed approval of the Exit Facility Documents (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or Post-Effective Date Debtors, as applicable, in connection therewith), the First Lien Exit Facility Commitment Letter (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees paid in connection therewith (including any payments under the First Lien Exit Facility Commitment Letter)), and the Second Lien Backstop Commitment Letter (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees paid in connection therewith (including the Second Lien Backstop Commitment Premium and any other payments under the Backstop Agreement)), and, to the extent not approved by the Bankruptcy Court previously, the Credit Bid Purchaser will be authorized to, without further notice to the Bankruptcy Court, (i) execute and deliver those documents necessary or appropriate to obtain the Exit Facilities, including the Exit

Facility Documents, each as applicable, and incur and pay any fees and expenses in connection therewith, and (ii) make any act or take any action under applicable law, regulation, order or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Credit Bid Purchaser may deem to be necessary to enter into the Exit Facility Documents.

(c) On the Effective Date, all of the claims, liens, and security interests to be granted in accordance with the terms of the Exit Facility Documents (i) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (ii) shall be deemed automatically attached and perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Facility Documents with the priorities established in respect thereof under applicable non-bankruptcy law and the New Intercreditor Agreement, and (iii) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code, this Plan, the Confirmation Order or applicable non-bankruptcy law. To the extent provided in the Exit Facility Documents, the Exit Facility Agents are authorized, but not required, to file with the appropriate authorities mortgages, financing statements and other documents, and to take any other action in order to evidence, validate, and perfect such liens or security interests.

(d) On the Effective Date, the Credit Bid Purchaser, the First Lien Exit Facility Agent and the Second Lien Exit Facility Agent shall enter into the New Intercreditor Agreement substantially in the form contained in the Plan Supplement.

### 5.12 *Apache Definitive Documents.*

(a) On the Effective Date following the consummation of the Plan of Merger and the Effective Time (as defined in the Plan of Merger), FWE I shall be authorized to execute, deliver, and enter into the Apache Definitive Documents, including the Standby Credit Facility Documents, without further (i) notice to or order or other approval of the Bankruptcy Court, (ii) act or omission under applicable law, regulation, order, or rule, (iii) vote, consent, authorization, or approval of any Person, or (iv) action by the holders of Claims or Interests. The Standby Loan Agreement shall constitute a legal, valid, binding and authorized obligation of FWE I, enforceable in accordance with its terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan or the Confirmation Order. The financial accommodations to be extended pursuant to the Standby Loan Agreement (and other definitive documentation related thereto) are reasonable and are being extended, and shall be deemed to have been extended, in good faith and for legitimate business purposes.

(b) FWE I Sole Manager

(i) Upon the Effective Date, the FWE I Sole Manager shall be appointed. Upon the Effective Date, the new governance structure of FWE I will be set forth in the FWE I LLC Agreement.

  (ii)  On and after the Effective Date, the FWE I Sole Manager and Plan Administrator shall mutually cooperate to establish any procedures and protocols as they deem necessary to carry out their respective duties; *provided*, *however*, that any such procedures and protocols shall be consistent with the terms of this Plan and the Sole Manager Agreement (as defined in the Apache Implementation Agreement).

  (iii)  FWE I shall indemnify and hold harmless the FWE I Sole Manager solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the FWE I Sole Manager's gross negligence or willful misconduct.

### 5.13   *Abandonment of Certain Properties*

  Immediately upon the occurrence of the Effective Date, the Debtors' rights to and interests in executory contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements listed on the Schedule of Abandoned Properties are abandoned pursuant to the Plan without further notice to or order of the Bankruptcy Court pursuant to Sections 105(a) and 554(a) of the Bankruptcy Code and/or deemed rejected pursuant to Section 365 of the Bankruptcy Code, as applicable. The Abandoned Properties shall not be allocated to nor vest in the Post-Effective Date Debtors or NewCo and its subsidiaries, including the Credit Bid Purchaser. Except as otherwise provided in this Plan or the Confirmation Order, the Debtors, their Estates, and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Properties. Nothing in this Plan or the Confirmation Order shall be construed as barring, waiving, or limiting the United States' rights to assert a claim against the Debtors, the Post-Effective Date Debtors or any co-lessees or predecessors in interest with respect to the Abandoned Properties for any decommissioning obligations for the Abandoned Properties.

### 5.14   *Establishment of Claims Reserve.*

  On the Effective Date, the Debtors shall, with the consent of the Requisite FLTL Lenders and the DIP Lenders, establish and fund the Claims Reserve by depositing Cash, in the amount of the Claims Reserve Amount into the Claims Reserve. The Claims Reserve shall be used to pay Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims (to the extent such Claims do not receive other treatment), Allowed Unsecured Trade Claims, and Cure Amounts in accordance with the terms of this Plan. Any amounts remaining in the Claims Reserve after satisfaction of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims, Allowed Unsecured Trade Claims, and Cure Amounts shall constitute Residual Distributable Value.

### 5.15   *Plan Administrator Expense Reserve.*

  On or before the Effective Date, the Plan Administrator shall establish the Plan Administrator Expense Reserve. On the Effective Date, the Plan Administrator shall deposit

Cash in the Plan Administrator Expense Reserve Amount into the Plan Administrator Expense Reserve. The Plan Administrator Expense Reserve shall be used by the Plan Administrator solely to satisfy the expenses of the Plan Administrator and the Post-Effective Date Debtors as set forth in this Plan. Any amount remaining in the Plan Administrator Expense Reserve after the dissolution of all the Post-Effective Date Debtors shall constitute Residual Distributable Value. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for the purposes of carrying out its duties under this Plan.

### 5.16 *Continued Corporate Existence; Effectuating Documents; Further Transactions.*

(a) Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as Post-Effective Date Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the Amended Organizational Documents.

(b) On or after the Effective Date (in any case, following the consummation of the Credit Bid Transaction), but subsequent to the consummation of the transactions contemplated by the Credit Bid Purchase Agreement if the Credit Bid Transaction occurs, without prejudice to the rights of any party to a contract or other agreement with any Post-Effective Date Debtor, each Post-Effective Date Debtor may, in the sole discretion of the Plan Administrator, take such action as permitted by applicable law, the applicable Amended Organizational Documents or other applicable corporate governance documents, the Apache Definitive Documents, any Additional Predecessor Agreement Documents, as such Post-Effective Date Debtor may determine is reasonable and appropriate, including, causing: (i) the consummation of a Divisional Merger as contemplated by the Plan of Merger, (ii) the taking of any action contemplated by any Additional Predecessor Agreement Documents and the consummation thereof (including the formation of a new entity or consummation of a divisional merger), (iii) a Post-Effective Date Debtor to be merged into another Post-Effective Date Debtor or an affiliate of a Post-Effective Date Debtor; (iv) a Post-Effective Date Debtor to be dissolved; (v) the legal name of a Post-Effective Date Debtor to be changed; (vi) a Post-Effective Date Debtor to convert its form of entity; or (vii) the closure of a Post-Effective Date Debtor's Chapter 11 Case on the Effective Date or any time thereafter, and such action and documents are deemed to require no further action or approval (other than any requisite filings required under the applicable state, provincial and federal or foreign law).

(c) On the Effective Date or as soon thereafter as is reasonably practicable (in any case, following the consummation of the Credit Bid Transaction), but subsequent to the consummation of the transactions contemplated by the Credit Bid Purchase Agreement if the Credit Bid Transaction occurs, the Post-Effective Date Debtors, acting through the Plan Administrator, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, including, (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and the Plan Supplement and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or

delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate organizational documents governing the Post-Effective Date Debtors, including the Post-Effective Date Debtors' respective Amended Organizational Documents, and any amendments or restatements thereto, or any documents governing any Post-Effective Date Debtor's reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law and, as necessary, other constituent documents, including, without limitation, the organizational documents governing non-Debtor subsidiaries, as permitted by the laws of their respective states of incorporation; (iv) the Restructuring Transactions; and (v) all other actions that the applicable entities determine to be necessary or appropriate, including, making filings or recordings that may be required by applicable law.

### 5.17    *Corporate Action.*

(a)     Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects, including (i) entry into or execution of the Credit Bid Purchase Agreement and consummation of the transactions contemplated therein, (ii) the assumption or assumption and assignment of executory contracts and unexpired leases as provided herein, (iii) the appointment of the Plan Administrator and the FWE I Sole Manager, (iv) the entry into or execution of the Apache Definitive Documents and all documentation relating thereto, including the Plan of Merger and Standby Credit Facility Documents, (v) the entry into or execution of any Additional Predecessor Agreement Documents and all documentation relating thereto, including any plan of merger, divisional merger, or the creation of a new entity, (vi) entry into or execution of the Exit Facility Documents (and any other documentation related thereto, including the New Intercreditor Agreement), (vii) any other Restructuring Transaction, and (viii) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof.  All matters provided for in this Plan involving the corporate or limited liability company structure of the Debtors or the Post-Effective Date Debtors, and any corporate or limited liability company action required by the Debtors or the Post-Effective Date Debtors in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Post-Effective Date Debtors.

(b)     On or before (as applicable) the Effective Date, the appropriate directors, officers, and managers of the Debtors, the Plan Administrator, or the FWE I Sole Manager, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan).  The authorizations and approvals contemplated by this Section 5.17 shall be effective notwithstanding any requirements under nonbankruptcy law.

### 5.18    *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to and allowing holders of Claims to receive a distribution under this Plan, and except as otherwise set forth in the Plan, or in the Plan Supplement or any related agreement, instrument, or document, on the Effective Date, all

agreements, instruments, notes, certificates, indentures, mortgages, security documents, reimbursement obligations, and other instruments or documents evidencing or creating any prepetition Claim or Interest (collectively, the "**Cancelled Agreements**") (except that the following shall not be Cancelled Agreements: (i) the agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other instruments or documents governing, relating to and/or evidencing certain Intercompany Interests not modified by the Plan and any rights of any holder in respect thereof and (ii) the Decommissioning Agreement, and any and all bonds and letters of credit constituting Decommissioning Security) shall be deemed cancelled and of no force or effect and the Debtors shall not have any continuing obligations thereunder; *provided*, *however*, that each of the Cancelled Agreements shall continue in effect solely for the purposes of, (x) allowing holders of Claims or Interests to receive distributions under the Plan on account of such Claims or Interests and (y) allowing and preserving the rights of the Prepetition FLFO Administrative Agent, the Prepetition FLFO Collateral Agent, the Prepetition FLTL Administrative Agent, the Prepetition SLTL Administrative Agent, and the DIP Agent, as applicable, to (1) make distributions on account of such Claims or Interests; (2) maintain, enforce, and exercise their respective liens, including any charging liens, as applicable, under the terms of the applicable agreements, or any related or ancillary document, instrument, agreement, or principle of law, against any money or property distributed or allocable on account of such Claims, as applicable; (3) seek compensation and reimbursement for any reasonable and documented fees and expenses incurred in connection with the implementation of the Plan required to be paid pursuant to the applicable agreement; (4) maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, or contribution, or any other claim or entitlement that the Prepetition FLFO Administrative Agent, the Prepetition FLFO Collateral Agent, the Prepetition FLTL Administrative Agent, the Prepetition SLTL Administrative Agent, and the DIP Agent may have under this Plan, the applicable credit agreements, collateral agreements, or pledge agreements; and (5) appear and raise issues in these Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court after the Effective Date on matters relating to this Plan or the applicable credit agreements; *provided*, *further*, that the Prepetition FLFO Administrative Agent, the Prepetition FLFO Collateral Agent, the Prepetition FLTL Administrative Agent, the Prepetition SLTL Administrative Agent, and the DIP Agent may take such further action to implement the terms of the Plan, including the Restructuring Transactions, as agreed to with the Debtors or the Post-Effective Date Debtors, as applicable to the extent not inconsistent with the Confirmation Order or this Plan.

### 5.19 *Cancellation of Certain Existing Security Interests.*

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or the Post-Effective Date Debtors, as applicable, any Collateral or other property of a Debtor held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

Except, for the avoidance of doubt, with respect to any mortgages, deeds of trust, Liens, pledges, and any other security interests of the Prepetition FLFO Administrative Agent or the Exit Facility Agents, after the Effective Date and in accordance with the terms of the

Confirmation Order, the Debtors or the Post-Effective Date Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to any Claim or Interest, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Prepetition Agents, including, without limitation, UCC-3 termination statements and mortgage release documentation.

### 5.20  *Intercompany Interests; Corporate Reorganization.*

To the extent reinstated under the Plan, on the Effective Date, the Intercompany Interests (a) shall be reinstated for the ultimate benefit of the holders of Claims and Interests as set forth in the Plan (b) without the need for any further corporate action or approval of any board of directors, board of managers, managers, management, or stockholders of any Debtor or Post-Effective Date Debtor, as applicable, the certificates and all other documents representing the Intercompany Interests shall be deemed to be in full force and effect.

### 5.21  *Restructuring Transactions.*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or the Post-Effective Date Debtors, acting through the Plan Administrator, or the FWE I Sole Manager, as applicable, may take all actions consistent with the Plan and the Confirmation Order, as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan.

### 5.22  *Liquidating Trust.*

In the event the Plan Administrator determines, in its discretion, that to carry out and implement the provisions of this Plan certain assets should be transferred to a liquidating trust for the benefit of one or more classes of Claims, (1) the terms of the liquidating trust shall be set forth in a liquidating trust agreement, (2) the liquidating trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code of which the holders of Claims who become the liquidating trust beneficiaries (as determined for U.S. federal income tax purposes) are the owners and grantors, consistent with the terms of the Plan, (3) the sole purpose of the liquidating trust shall be the liquidation and distribution of the assets transferred to the liquidating trust in accordance with Treasury Regulations section 301.7701-4(d), including the resolution of Claims, with no objective to continue or engage in the conduct of a trade or business, (4) all parties (including the Debtors, holders of Claims, and the trustee of the liquidating trust) shall report consistently with such treatment (including the deemed receipt of the underlying assets, subject to applicable liabilities and obligations, by the holders of Allowed Claims, as applicable, followed by the deemed transfer of such assets to the liquidating trust), (5) all parties shall report consistently with the valuation of the assets transferred to the liquidating trust as determined by the trustee of the liquidating trust (or its designee), (6) the trustee of the liquidating trust shall be responsible for filing returns for the trust as a grantor trust pursuant to

Treasury Regulations section 1.671-4(a), and (7) the trustee of the liquidating trust shall annually send to each holder of an interest in the liquidating trust a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes. Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the trustee of the liquidating trust of a private letter ruling if the trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the trustee), the trustee of the liquidating trust may timely elect to (y) treat any portion of the liquidating trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations section 1.468B-9 (and make any appropriate elections) and (z) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, (i) all parties (including the Debtors, holders of Claims, and the trustee of the liquidating trust) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing, and (ii) any tax imposed on the liquidating trust with respect to assets allocable to Disputed Claims (including any earnings thereon and any gain recognized upon the actual or deemed disposition of such assets) will be payable out of such assets and, in the event of insufficient Cash to pay any such taxes, the trustee of the liquidating trust may sell all or part of such assets to pay the taxes. The trustee of the liquidating trust may request an expedited determination of taxes of the liquidating trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the liquidating trust for all taxable periods through the dissolution of the liquidating trust.

### 5.23 *Securities Exemptions.*

(a)     The offer, issuance, and distribution of the New Equity Interests (other than the Backstop Commitment Premium Equity Interests, the New Money Warrants, or any New Equity Interests issued upon exercise of the New Money Warrants or under the Management Incentive Plan), the Subscription Rights, the SLTL Warrants, and the GUC Warrants to holders of Allowed FLTL Claims, Allowed SLTL Claims, and General Unsecured Claims, as applicable, under Article IV of this Plan, and the New Equity Interests issued upon exercise of the Subscription Rights, the SLTL Warrants, or the GUC Warrants, shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or actions by any Person, from registration under the Securities Act, and all rules and regulations promulgated thereunder, and any other applicable securities laws, to the fullest extent permitted by section 1145 of the Bankruptcy Code. The New Equity Interests, the Subscription Rights, the SLTL Warrants, and GUC Warrants issued pursuant to section 1145(a) of the Bankruptcy Code may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such Securities, as that term is defined in section 1145(b) of the Bankruptcy Code. In addition, such section 1145 exempt Securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

(b)     The issuance and sale of the Backstop Commitment Premium Equity Interests, and the New Money Warrants (including any New Equity Interests issued upon exercise of the New Money Warrants) under this Plan shall be exempt from registration under the Securities Act or any other applicable securities laws to the fullest extent permitted by

section 4(a)(2) of the Securities Act and/or Regulation D thereunder. The Backstop Commitment Premium Equity Interests, and the New Money Warrants (including any New Equity Interests issued upon exercise of the New Money Warrants) issued in reliance on the exemption from registration set forth in section 4(a)(2) of the Securities Act and/or Regulation D thereunder, will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act, such as, under certain conditions, the resale provisions of Rule 144 of the Securities Act.

(c)       None of the Debtors, NewCo and its subsidiaries (including the Credit Bid Purchaser), or any other Person shall be required to provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Equity Interests (including any New Equity Interests issued upon exercise of the Subscription Rights, the New Money Warrants, the SLTL Warrants or the GUC Warrants), the Subscription Rights, the New Money Warrants, the SLTL Warrants, or the GUC Warrants, under applicable securities laws. DTC and any transfer agent (as applicable) shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Equity Interests (including any New Equity Interests issued upon exercise of the Subscription Rights, the New Money Warrants, the SLTL Warrants or the GUC Warrants), the Subscription Rights, the New Money Warrants, the SLTL Warrants, or the GUC Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services (to the extent applicable).

(d)       Notwithstanding anything to the contrary in this Plan, no Person (including DTC and any transfer agent) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including whether the New Equity Interests (including any New Equity Interests issued upon exercise of the Subscription Rights, the New Money Warrants, the SLTL Warrants or the GUC Warrants), the Subscription Rights, the New Money Warrants,  the SLTL Warrants, or the GUC Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

### 5.24       *Closing of Chapter 11 Cases.*

After the Effective Date, the Plan Administrator shall be authorized, but not directed, to submit an order to Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes and issues a final decree for each of the Chapter 11 Cases.

## ARTICLE VI.       DISTRIBUTIONS.

### 6.1       *Distributions Generally.*

The Plan Administrator shall make all Distributions to the appropriate holders of Allowed Claims in accordance with the terms of this Plan.

### 6.2 *No Postpetition Interest on Claims.*

Except with respect to the FLFO Claims of the Prepetition FLFO Secured Parties or as otherwise specifically provided for in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

### 6.3 *Date of Distributions.*

Except as otherwise provided in this Plan, the Plan Administrator shall make Plan Distributions to holders of Allowed Claims after (a) funding of the Professional Fee Escrow and (b) satisfaction in full or establishment of reserves sufficient to pay claims in the Claims Reserve, as soon as reasonably practicable after the Effective Date and thereafter, the Plan Administrator shall from time to time determine the subsequent Distribution Dates.

### 6.4 *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of holders of Claims in each Class as maintained by the Debtors or their agents, shall be deemed closed, and there shall be no further changes in the record holders of any Claims after the Distribution Record Date. Neither the Debtors nor the Plan Administrator shall have any obligation to recognize any transfer of a Claim occurring after the close of business on the Distribution Record Date. In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the Plan Administrator shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

### 6.5 *Distributions after Effective Date*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 6.6 *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, the Plan Administrator shall make all Distributions to any holder of an Allowed Claim as and when required by this Plan at (a) the address of such holder on the books and records of the Debtors or their agents or (b) at the address in any written notice of address change delivered to the Debtors or the Plan Administrator, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001. In the event that any Distribution to any holder is returned as undeliverable, no Distribution or payment to such holder shall be made unless and until the Plan Administrator has been notified of the then-current address of such holder, at which time or as soon thereafter as reasonably practicable such Distribution shall be made to such holder without interest.

### 6.7 _Unclaimed Property._

One year from the later of: (a) the Effective Date and (b) the date that is ten (10) Business Days after the date a Claim is first Allowed, all distributions that remain payable on account of such Claim shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Post-Effective Date Debtors or their successors or assigns, and all claims of any other Person (including the holder of a Claim in the same Class) to such distribution shall be discharged and forever barred. The Post-Effective Date Debtors and the Plan Administrator shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

For the avoidance of doubt, a distribution shall be deemed unclaimed if a holder has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Post-Effective Date Debtors or the Plan Administrator of an intent to accept a particular distribution; (c) responded to the Debtors', the Post-Effective Date Debtors', or the Plan Administrator's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

### 6.8 _Satisfaction of Claims._

Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

### 6.9 _Manner of Payment under Plan._

Except as specifically provided herein, at the option of the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 6.10 _De Minimis Cash Distributions._

The Plan Administrator shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash in an amount less than one-hundred dollars ($100); _provided_, _however_, that if any Plan Distribution is not made pursuant to this Section 6.10, such Distribution shall be added to any subsequent Plan Distribution to be made on behalf of the holder's Allowed Claim. The Plan Administrator shall not be required to make any final Plan Distributions of Cash in an amount less than fifty dollars ($50) to any holder of an Allowed Claim. If the amount of any final Plan Distributions to holders of Allowed Claims would be fifty dollars ($50) or less, then no further Plan Distribution shall be made by the Plan Administrator and any surplus Cash shall be donated and distributed to a Tax Code § 501(c)(3) tax-exempt organization selected by the Plan Administrator.

### 6.11  *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary in this Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

### 6.12  *Allocation of Distributions Between Principal and Interest.*

Except with respect to the FLFO Claims of the Prepetition FLFO Secured Parties or as otherwise required by law, consideration received in respect of an Allowed Claim is allocable first to the principal amount of the Claim (as determined for U.S. federal income tax purposes) and then, to the extent of any excess, to the remainder of the Claim, including any Claim for accrued but unpaid interest.

### 6.13  *Setoffs and Recoupments.*

Each Post-Effective Date Debtor, or such entity's designee as instructed by such Post-Effective Date Debtor or the Plan Administrator, may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim, and the distributions to be made pursuant to the Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action that a Post-Effective Date Debtor or its successors may hold against the holder of such Allowed Claim after the Effective Date to the extent such setoff or recoupment is either (a) agreed in amount among the relevant Post-Effective Date Debtor(s), and holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Post-Effective Date Debtor or its successor of any claims, rights, or Causes of Action that a Post-Effective Date Debtor or its successor or assign may possess against such holder.

### 6.14  *Withholding and Reporting Requirements.*

(a)  *Withholding Rights*.  In connection with this Plan, any party issuing any instrument or making any Plan Distribution described in this Plan shall comply with all applicable tax withholding and reporting requirements imposed by any Governmental Unit, and all Plan Distributions pursuant to this Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a Plan Distribution pursuant to this Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, income, withholding, and other taxes, on account of such Plan Distribution.  Any party issuing any instrument or making any Plan Distribution pursuant to this Plan has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  Notwithstanding any provision in the Plan to the contrary, any party issuing any instrument or making any Plan Distribution pursuant to this Plan shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to

facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.

(b)     *Forms*. Any party entitled to receive any property as an issuance or Plan Distribution under this Plan shall, upon reasonable request, deliver to the Plan Administrator or such other Person designated by the Plan Administrator (which entity shall subsequently deliver to the Plan Administrator or such other Person any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a non-U.S. Person) Form W-8, unless such Person is exempt under the Tax Code and so notifies the Plan Administrator or such other Person.  If such request is made by the Plan Administrator or such other Person designated by the Plan Administrator and the holder fails to comply before the date that is 210 days after the request is made, the amount of such Plan Distribution shall irrevocably revert to the Debtors and any Claim in respect of such Plan Distribution shall be discharged and forever barred from assertion against any Debtor and its respective property.

### 6.15     *Claims Paid by Third Parties.*

The Plan Administrator shall reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Post-Effective Date Debtors.  If a holder of a Claim receives a Distribution from the Debtors or the Post-Effective Date Debtors on account of such Claim and also receives payment from a third party on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the Plan Distribution to the Debtors or the Post-Effective Date Debtors, to the extent the holder's total recovery on account of such Claim from the third party and under this Plan exceeds the total Allowed amount of such Claim as of the date of any such Plan Distribution under this Plan.  The failure of such holder to timely repay or return such Distribution shall result in the holder owing the Post-Effective Date Debtors interest on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

### 6.16     *Claims Payable by Third Parties.*

No Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the insurance policies to which the Debtors' are a beneficiary until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy; *provided*, *however*, that this Section 6.16 shall not restrict Plan Distributions on an Allowed Claim that is Allowed in an amount that does not exceed an applicable self-insured retention or deductible amount under one or more such insurance policies.  To the extent that one or more of the insurers agrees to satisfy a Claim in whole or in part, then immediately upon such insurers' satisfaction, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims register by the Plan Administrator without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

# ARTICLE VII. PROCEDURES FOR DISPUTED CLAIMS.

## 7.1 *Allowance of Claims.*

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), Allowing such Claim. On and after the Effective Date, each of the Debtors or the Post-Effective Date Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately before the Effective Date.

## 7.2 *Claims Objections.*

Except insofar as a Claim is Allowed under the Plan, the Debtors or the Post-Effective Date Debtors (acting through the Plan Administrator), as applicable, shall be entitled to object to Claims.  Except as otherwise expressly provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Post-Effective Date Debtors and the Plan Administrator shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Debtors' claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

## 7.3 *Estimation of Claims.*

Before or after the Effective Date, the Debtors, the Post-Effective Date Debtors, and the Plan Administrator may at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Disputed, contingent, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation of the amount of such Claim, the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.

### 7.4 *Adjustment to Claims Register Without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or the Post-Effective Date Debtors (at the direction of the Plan Administrator) upon stipulation between the parties in interest without a Claims objection having to be filed and without any further notice or action, order, or approval of the Bankruptcy Court.

### 7.5 *Time to File Objections to Claims.*

Any objections to a Claim shall be filed on or before the date that is the later of (a) 180 days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, upon a motion by the Post-Effective Date Debtors, as such deadline may be extended from time to time.

### 7.6 *Disallowance of Claims.*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Post-Effective Date Debtors.

### 7.7 *Amendments to Claims.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court, and the Post-Effective Date Debtors.

### 7.8 *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

### 7.9 *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date on which the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Plan Administrator shall provide to the holder of such Allowed Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required by the Bankruptcy Code.

### 7.10    *Claims Resolution Procedures Cumulative.*

All of the Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved in accordance with the Plan or any mechanism approved by the Bankruptcy Court.

## ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1    *General Treatment.*

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in Sections 8.4 or 8.5 of the Plan; or (v) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement, which Schedule of Assumed Contracts will identify executory contracts or unexpired leases for assumption and assignment to the Credit Bid Purchaser in accordance with the Credit Bid Purchase Agreement.  To the extent the Decommissioning Agreement is an executory contract, it will be assumed and become the obligation of FWE I under the Plan of Merger.

(b)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Credit Bid Purchaser or Post-Effective Date Debtors, as applicable, have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Credit Bid Purchaser or Post-Effective Date Debtors, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(c)    To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

(d)    Subject to the terms of the Credit Bid Purchase Agreement, the Debtors reserve the right, on or before 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the Confirmation Hearing, or such other time as may be agreed in writing between

the Debtors and the applicable counterparty, to amend the Schedule of Assumed Contracts to add or remove any executory contract or unexpired lease; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the rescheduled or continued Confirmation Hearing, and this provision shall apply in the case of any and all subsequent adjournments and continuances of the Confirmation Hearing; *provided*, *further* that, subject to the terms of the Credit Bid Purchase Agreement, the Debtors may amend the Schedule of Assumed Contracts to add or delete any executory contracts or unexpired leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court.

### 8.2 *Determination of Cure Amounts and Deemed Consent.*

(a)     Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date in accordance with the terms of the Credit Bid Purchase Agreement or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

(b)     The Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Contracts.  At least ten (10) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign to the Credit Bid Purchaser in accordance with the terms of the Credit Bid Purchase Agreement the contract or lease in connection with this Plan or the Credit Bid Purchase Agreement and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.**  Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Post-Effective Date Debtor, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Post-Effective Date Debtor, as applicable.  Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this <u>Section 8.2(b)</u>, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance

of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)     If there is an Assumption Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court before such assumption being effective; provided, that, subject to the terms of the Credit Bid Purchase Agreement, the Debtors or Post-Effective Date Debtors, as applicable, may settle any Assumption Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)     To the extent an Assumption Dispute relates solely to the Cure Amount, subject to the terms of the Credit Bid Purchase Agreement, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease before the resolution of the Assumption Dispute; *provided*, that the Post-Effective Date Debtors or Credit Bid Purchaser, as applicable shall be responsible to pay the determined amount to be Allowed by the Bankruptcy Court or otherwise agreed to by such non-Debtor party.  The Debtors or Post-Effective Date Debtors, as applicable, subject to the terms of the Credit Bid Purchase Agreement, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(e)     Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease.  Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Person, upon the assumption of such executory contract or unexpired leases.

### 8.3     *Rejection Damages Claims.*

**In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 6B (General Unsecured Claims).  A proof of such Claim must be filed with the Bankruptcy Court and served upon counsel for the Debtors, Post-Effective Date Debtor, or the Plan Administrator, as applicable, by the later of (i) thirty (30) days after the filing and service of the notice of the occurrence of the Effective Date; and (ii) thirty (30) days after entry of an Order rejecting such contract or lease if such contract or lease is the subject of a pending Assumption Dispute.**

**8.4**     *Survival of the Debtors' Indemnification Obligations.*

Notwithstanding anything in the Plan (including Section 10.3 of the Plan), any Indemnification Obligation to indemnify current and former officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, members, managers, agents, or employees based upon any act or omission for or on behalf of the Debtors shall (a) remain in full force and effect, (b) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order, (c) not be limited, reduced or terminated after the Effective Date, and (d) survive unimpaired and unaffected irrespective of whether such Indemnification Obligation is owed for an act or event occurring before, on or after the Petition Date, *provided*, that the Post-Effective Date Debtors shall not indemnify officers, directors, members, or managers, as applicable, of the Debtors for any claims or Causes of Action that are not indemnified by such Indemnification Obligation.  All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Post-Effective Date Debtors.  Any claim based on the Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.

**8.5**     *Insurance Policies.*

(a)     All insurance policies to which any Debtor is a party as of the Effective Date, including any D&O Policy, shall be deemed to be and treated as executory contracts and shall be assumed by and vest in the applicable Debtors or the Post-Effective Date Debtors and shall continue in full force and effect thereafter in accordance with their respective terms. Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in any D&O Policy.

(b)     In addition, after the Effective Date, the Post-Effective Date Debtors or Plan Administrator shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date, and any current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such D&O Policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date to the extent set forth in such policies.

**8.6**     *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instruments, or other document is listed in any notices of assumed contracts.

### 8.7   *Reservation of Rights.*

(a)      Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Post-Effective Date Debtors or their respective affiliates has any liability thereunder.

(b)      Except as explicitly provided in the Plan, nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors or the Post-Effective Date Debtors under any executory or non-executory contract or unexpired or expired lease.

(c)      Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Post-Effective Date Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease.

(a)      If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under the Plan, the Debtors or the Post-Effective Date Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE IX.          CONDITIONS PRECEDENT TO OCCURRENCE OF EFFECTIVE DATE.

### 9.1   *Conditions Precedent to Effective Date.*

The Effective Date shall not occur unless all of the following conditions precedent have been satisfied or waived in accordance with the Plan:

(a)      the Plan Supplement has been filed;

(b)      the Bankruptcy Court shall have entered the Confirmation Order, which order shall be a Final Order;

(c)      the Definitive Documents shall be (i) consistent with the Restructuring Support Agreement and otherwise acceptable to the parties thereto consistent with their respective consent and approval rights as set forth in the Restructuring Support Agreement [and (ii) acceptable to the Prepetition FLFO Administrative Agent and the First Lien Exit Facility Agent solely to the extent provided and consistent with their consent and approval rights as set forth in this Plan;

(d)      the Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect;

(e)     all conditions precedent to the effectiveness of the Apache Definitive Documents shall have been satisfied or waived by the party having the right to waive the same;

(f)     the Debtors shall have implemented the Restructuring Transactions and all other transactions contemplated by the Plan and the Restructuring Support Agreement in a manner consistent in all respects with the Plan and Restructuring Support Agreement;

(g)     the Amended Organizational Documents shall become effective and in full force and effect as of the Effective Date;

(h)     the NewCo Organizational Documents shall become effective and in full force and effect as of the Effective Date;

(i)     the conditions precedent to the effectiveness of the First Lien Exit Facility Commitment Letter shall have been satisfied or duly waived in writing;

(j)     the conditions precedent to the effectiveness of the Second Lien Backstop Commitment Letter shall have been satisfied or duly waived in writing;

(k)     the conditions precedent to the effectiveness of the FLTL ERO Backstop Agreement shall have been satisfied or duly waived in writing;

(l)     the conditions precedent to the effectiveness of the SLTL ERO Backstop Agreement shall have been satisfied or duly waived in writing

(m)     the conditions precedent to the effectiveness of the First Lien Exit Facility (as determined in the First Lien Exit Facility Documents and the First Lien Exit Facility Commitment Letter) shall have been satisfied or duly waived in writing and the First Lien Exit Facility Lenders and the First Lien Exit Facility shall have closed substantially simultaneously with the effectiveness of the Plan;

(n)     the conditions precedent to the effectiveness of the Second Lien Exit Facility (as determined in the Second Lien Exit Facility Documents and the Second Lien Backstop Commitment Letter) shall have been satisfied or duly waived in writing and the Second Lien Exit Facility Lenders and the Second Lien Exit Facility shall have closed substantially simultaneously with the effectiveness of the Plan;

(o)     the New Intercreditor Agreement shall have been executed and delivered by each of the parties thereto;

(p)     the Equity Rights Offerings shall have been consummated;

(q)     the conditions precedent to the effectiveness of the Credit Bid Purchase Agreement shall have been satisfied or duly waived in writing in accordance with the terms of the Credit Bid Purchase Agreement and the Credit Bid Transaction Closing shall have occurred or will occur simultaneously with the effectiveness of the Plan, including, without limitation, payment of the New Money Consideration by Buyers to Sellers at Closing pursuant to the terms thereof;

(r)     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents (other than any such authorization, consent, regulatory approval, ruling, or document that is customarily obtained or completed after assignment, conveyance or vesting of an applicable Asset) that, after giving effect to the entry of the Confirmation Order, are necessary to implement and effectuate the Plan, including Bankruptcy Court approval, and each of the other transactions contemplated by the Restructuring, and such authorizations, consents, regulatory approvals, rulings, or documents shall not be subject to unfulfilled conditions and shall be in full force and effect, and all applicable regulatory waiting periods shall have expired;

(s)     no event of default under the DIP Documents shall have occurred or be continuing and an acceleration of the obligations or termination of the DIP Lenders' commitments under the DIP Documents shall not have occurred; and

(t)     all Restructuring Expenses shall have been indefeasibly paid in full in accordance with Section 2.6.

## 9.2 *Waiver of Conditions Precedent.*

(a)     With the prior written consent of the Required DIP Lenders, the Requisite FLTL Lenders, the conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan may be waived, in whole or in part, by the Debtors, without leave of or order of the Bankruptcy Court; *provided that*, a waiver of the conditions precedent to the occurrence of the Effective Date set forth in Sections 9.1(c), (d), (e), and (f) of the Plan shall also require the prior written consent of the Apache PSA Parties; *provided*, *further*, that a waiver of any of the conditions precedent to the occurrence of the Effective Date in Section 9.1 above shall also require the prior written (i) consent of the Prepetition FLFO Administrative Agent and the Exit First Lien Agent for all conditions precedent other than Section 9.1(d),(r), and (s) and (ii) reasonable consent for the conditions precedent in Section 9.1(r) and (s); *provided*, *further*, that a waiver of the conditions precedent to the occurrence of the Effective Date set forth in Sections 9.1(l), (p) and (t) shall also require the prior written consent of the Requisite SLTL Lenders. If any such condition precedent is waived pursuant to this section and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied, the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine, and the occurrence of the Effective Date shall foreclose any ability to challenge the Plan in any court. If the Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur.

(b)     Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred before the taking of any other such action.

(c)     The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 9.3 *Effect of Failure of a Condition.*

If the conditions listed in Section 9.1 of the Plan are not satisfied or waived in accordance with Section 9.2 of the Plan on or before the Effective Date, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtors, (b) prejudice in any manner the rights of any Person, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Consenting Creditors, or any other Person.

## ARTICLE X.      EFFECT OF CONFIRMATION.

### 10.1 *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan shall bind every holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is Impaired under the Plan and whether such holder has accepted the Plan.

### 10.2 *Vesting of Assets.*

Except as otherwise provided in the Plan, the Confirmation Order, or any Plan Supplement, on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets of the Estates, including all claims, rights, and Causes of Action and any property acquired by the Debtors or the Post-Effective Date Debtors during the Chapter 11 Cases or under or in connection with the Plan shall vest in each respective Post-Effective Date Debtor free and clear of all Claims, Liens, charges, other encumbrances, and interests (other than any and all Liens securing the FLFO Claims or the obligations under the First Lien Exit Facility). Subject to the terms of the Plan, on and after the Effective Date, the Post-Effective Date Debtors and Plan Administrator may operate their businesses and may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Expense Claims) and Causes of Action without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Post-Effective Date Debtors may pay the charges that they incur on or after the Confirmation Date for Professional Persons' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

### 10.3 *Discharge of Claims Against and Interests in Debtors.*

Upon the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, the distributions, rights and treatment to be made under the Plan, shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on

Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, any obligations incurred in connection with or related to bonds and letters of credit (and any related agreements) issued before the Petition Date on behalf of the Debtors, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a proof of claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

Each holder (as well as any trustee or agent on behalf of such holder) of a Claim or Interest, and any affiliate of such holder, shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose before the Effective Date. Except as otherwise provided in the Plan, upon the Effective Date, all such holders of Claims and Interests and their affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor or any Post-Effective Date Debtor

### 10.4 *Pre-Confirmation Injunctions and Stays.*

Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court, all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the date of entry of the Confirmation Order, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.5 *Injunction Against Interference With Plan.*

Except as otherwise provided in the Plan or in the Confirmation Order, upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

**10.6** *Plan Injunction.*

(a)     Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**10.7** *Releases.*

(a)     **RELEASES BY THE DEBTORS.  AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED**

PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b) **RELEASES BY HOLDERS OF CLAIMS AND INTERESTS**. AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT THE RELEASING PARTIES OR THEIR

ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT.  FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

(c)     *Release of Liens*.  Except as otherwise specifically provided in the Plan (including all Liens securing the FLFO Claims or the First Lien Exit Facility) or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Secured Parties, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

10.8    *Exculpation.*

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND

CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

### 10.9 *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

### 10.10    *Subordinated Securities Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments thereof under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 510(a), 510(b), or 510(c) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 10.11    *Retention of Causes of Action and Reservation of Rights.*

(a)    Except as otherwise provided in the DIP Order or Plan, including Sections 10.5, 10.6, 10.7, 10.8 and 10.9, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law.  The Post-Effective Date Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

(b)    Notwithstanding Section 10.11(a), on the Effective Date, the Post-Effective Date Debtors shall be deemed to have released all preference actions pursuant to section 547 of the Bankruptcy Code against the holders of Unsecured Trade Claims and General Unsecured Claims (in each case, solely in their capacity as holders of Unsecured Trade Claims and General Unsecured Claims, as applicable).

### 10.12    *Ipso Facto and Similar Provisions Ineffective.*

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any entity based on any of the following: (a) the insolvency or financial condition of a Debtor; (b) the commencement of the Chapter 11 Cases; (c) the confirmation or consummation of the Plan, including any change of control that shall occur as a result of such consummation; or (d) the Restructuring.

### 10.13    *Indemnification and Reimbursement Obligations.*

For purposes of the Plan, (a) Indemnification Obligations to current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity before, on or subsequent to the Petition Date shall be assumed by the Post-Effective Date Debtors and (b) Indemnification Obligations of the Debtors arising from services as current and former directors, officers, members, managers, agents or employees of any of the

Debtors who served in such capacity during the period from and after the Petition Date shall be Administrative Expense Claims. In addition, after the Effective Date, the Post-Effective Date Debtors shall not terminate or otherwise reduce the coverage under any current and former directors', officers', members', managers', agents' or employees' insurance policies (including any "tail policy") in effect as of the Petition Date, and all current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date to the extent set forth in such policies.

## ARTICLE XI.      RETENTION OF JURISDICTION.

### 11.1    *Retention of Jurisdiction.*

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and any disputes over Cure Amounts resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the entry of the Confirmation Order;

(c)    to hear and resolve any disputes arising from or related to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)    to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan and the Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(e)    to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(f)    to enter, implement, or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    to issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person

or other Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)      to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)      to hear and determine all Fee Claims;

(j)      to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(k)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing or related to any of the foregoing;

(l)      to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release, exculpation, or injunction provisions set forth in the Plan, following the occurrence of the Effective Date;

(m)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)      to hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(p)      to resolve any disputes concerning whether a Person or entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose for determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(q)      to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

(r)      to recover all Assets of the Debtors and property of the Estates, wherever located;

(s)     to hear and determine matters related to the DIP Facility and the DIP Order; and

(t)     to enter a final decree closing each of the Chapter 11 Cases.

Notwithstanding anything in this Article XI to the contrary, as of the Effective Date, the Exit Facility Documents and any other documents related thereto, including the New Intercreditor Agreement, shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.


# ARTICLE XII.     MISCELLANEOUS PROVISIONS.

### 12.1     *Payment of Statutory Fees*

On the Effective Date and thereafter as may be required, the Debtors or the Post-Effective Date Debtors, as applicable, shall pay all Statutory Fees that are due and payable, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case. The obligations under this Section 12.1 shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

### 12.2     *Exemption from Certain Transfer Taxes.*

Pursuant to and to the fullest extent permitted by section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust or other security interest, (c) all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under the Plan, (d) any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, (e) the grant of collateral under the Standby Loan Agreement and (f) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, parish, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

### 12.3    *Request for Expedited Determination of Taxes.*

The Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

### 12.4    *Dates of Actions to Implement Plan.*

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### 12.5    *Amendments.*

(a)    <u>Plan Modifications</u>.  Subject to (i) the consent rights set forth in the Restructuring Support Agreement, (ii) the reasonable consent of the Creditors' Committee solely to the extent that it adversely impacts the holders of General Unsecured Claims or Unsecured Trade Claims and (iii) the reasonable consent of the Prepetition FLFO Administrative Agent, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors, with (i) the consent of the Required DIP Lenders, and the Requisite FLTL Lenders, (ii) the reasonable consent of the Creditors' Committee solely to the extent that it adversely impacts the holders of General Unsecured Claims or Unsecured Trade Claims, and (iii) the reasonable consent of the Prepetition FLFO Administrative Agent, may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.  The Debtors, subject to (i) the consent of the Required DIP Lenders and the Requisite FLTL Lenders and (ii) the applicable consent rights of the Prepetition FLFO Administrative Agent, shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement in accordance with the terms of the Plan and the Restructuring Support Agreement or the First Lien Exit Facility Commitment Letter, as applicable, through the Effective Date.

(b)    <u>Certain Technical Amendments</u>.  Before the Effective Date, the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement, may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court.

### 12.6    *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Effective Date as to any or all of the Debtors.  If, with respect to a Debtor, the Plan has been revoked or withdrawn before the Effective Date, or if confirmation or the occurrence of the Effective Date

as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person; (ii) prejudice in any manner the rights of such Debtor or any other Person; or (iii) constitute an admission of any sort by any Debtor or any other Person.

### 12.7 *Severability.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation by the Bankruptcy Court, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with this section, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Post-Effective Date Debtors (as the case may be) and (c) nonseverable and mutually dependent.

### 12.8 *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that a Plan Supplement document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Texas, without giving effect to the principles of conflicts of laws thereof.

### 12.9 *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Post-Effective Date Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns.

### 12.10 *Successors and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each such Person.

### 12.11   *Entire Agreement.*

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 12.12   *Computing Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.13   *Exhibits to Plan.*

All exhibits, schedules, supplements, and appendices to the Plan (including any other documents to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date) are incorporated into and are a part of the Plan as if set forth in full in the Plan.

### 12.14   *Notices.*

All notices, requests, and demands hereunder shall be in writing (including by facsimile or email transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)      If to the Debtors:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway, S. Suite 1200
Houston, Texas 77042
Attention:  Michael Dane and Thomas R. Lamme

– and –

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Attn:  Matthew S. Barr, Esq., Alfredo R. Pérez, Esq., and Jessica Liou, Esq.
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for the Debtors*

(b)      If to the DIP Lenders or FLTL Lenders:

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue
New York, NY 10017
Attn: Damian Schaible, Esq. and Natasha Tsiouris, Esq.
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

(c)      If to the Post-Effective Date Debtors:

[Plan Administrator]
[Plan Administrator Address]

– and –

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Attn:  Matthew S. Barr, Esq., Alfredo R. Pérez, Esq., and Jessica Liou, Esq.
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Post-Effective Date Debtors*

A notice is deemed to be given and received (a) if sent by first-class mail, personal delivery, or courier, on the date of delivery if it is a Business Day and the delivery was made before 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (b) if sent by electronic mail, when the sender receives an email from the recipient acknowledging receipt; *provided* that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this Section.  Any party may change its address for service from time to time by providing a notice in accordance with the foregoing.  Any element of a party's address that is not specifically changed in a notice will be assumed not to be changed.

After the occurrence of the Effective Date, the Post-Effective Date Debtors and Plan Administrator have authority to send a notice to entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; *provided*, that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary.  After the occurrence of the Effective Date, the Post-Effective Date Debtors are authorized to limit the list of entities receiving documents pursuant to Bankruptcy Rule 2002 to the U.S. Trustee and those entities that have filed such renewed requests.

### 12.15   *Reservation of Rights.*

Except as otherwise provided herein, the Plan shall be of no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision of the Plan, or the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of (a) the Debtors

83

with respect to any Claims or Interests before the Effective Date or (b) any holder of a Claim or Interest or other entity before the Effective Date.

### 12.16 *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases, provided that following the Effective Date, the Creditors' Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) Claims and/or applications, and any relief related thereto, for compensation by Professional Persons retained in the Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) any appeals of the Confirmation Order or other appeals to which the Creditors' Committee is a party.

[*Remainder of Page Intentionally Left Blank*]

Annex D

Additional Termination Events[1]

Any of the following shall occur (unless otherwise consented to in writing by GS Bank):

      (a)     the failure of the Debtors to file the Plan before the hearing to consider approval of the Disclosure Statement;

      (b)     the Plan is withdrawn, amended, or otherwise modified so as to be inconsistent with the consent rights in this Commitment Letter, the First Lien Exit Facility Term Sheet, or the Plan;

      (c)     any of the Debtors files, announces, or commits in writing to any party (i) its intention not to support the Plan or pursue the Restructuring Transactions or (ii) its intention to support an alternative restructuring proposal or sale which would, without the consent of GS Bank (which, in the case of clauses (b) and (e) below, shall not to be unreasonably withheld) (a) individually or in the aggregate, result in a reduction of 10% or more of the total PV-10 of total 2P reserves comprising the assets acquired by the Credit Bid Purchaser (which shall be calculated by reference to the FWE YE2020 Internal Reserve Report (as of 5.1.21)), (b) result in any contract rights constituting material assets not being acquired by the Credit Bid Purchaser, (c) individually or in the aggregate, result in an increase by $40.0 million or more (which, for the avoidance of doubt, in the case of plugging and abandonment liabilities, shall be calculated on a present value basis) in liabilities assumed by the Credit Bid Purchaser, (d) provide for any change in treatment of the Prepetition FLFO Credit Agreement or First Lien Exit Facility, or (e) provide for any differences from the Approved Credit Bid Purchase Agreement that are materially adverse to the interests of the First Lien Exit Facility Agent and the First Lien Exit Facility Lenders, in each case of sub-clauses (a) thru (e) above, relative to as contemplated under the Plan and/or the Approved Credit Bid Purchase Agreement, as applicable;

      (d)     (i) any of the Debtors (A) file any motion seeking to avoid, disallow, subordinate, or recharacterize all or any portion of the FLFO Claims or any lien or interest related thereto or (B) shall have directly or indirectly supported any application, adversary proceeding, motion, or cause of action referred to in the immediately preceding clause (A) filed by a third party, or consents to the standing of any such third party to bring such application, adversary proceeding, motion, or cause of action; or (ii) the Bankruptcy Court enters an order or judgment avoiding, disallowing, subordinating, or recharacterizing all or any portion of the FLFO Claims or any lien or interest related thereto;

      (e)     the Bankruptcy Court enters an order denying confirmation of the Plan and such order remains in effect for 10 days after the entry of such order;

      (f)     the Plan Effective Date does not occur on or before 11:59 p.m. (prevailing Eastern Time) on the earlier of (i) the Outside Expiration Time (as defined in the Second Lien Backstop Commitment Letter (which is as defined in the Plan) and (ii) July 31, 2021;

---

[1] All capitalized terms used but not defined herein have the meanings given to them in the Plan (as defined in the Commitment Letter to which this **Annex D** is attached) or in the Commitment Letter, as context may require.

(g)      the acceleration of the loans or the termination of the commitments under the DIP Facility or the termination or expiration of the Debtors' authority to use Cash Collateral (as defined in the DIP Order) that has not been waived or timely cured in accordance therewith;

(h)      the Bankruptcy Court enters an order modifying or terminating the Debtors' exclusive right to file and/or solicit acceptances of a plan of reorganization;

(i)      the breach by the Company of its obligations to provide any fee, indemnity, or expense reimbursement under this Commitment Letter, or any purported assignment of this Commitment Letter other than as permitted by this Commitment Letter;

(j)      the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling or order that enjoins the consummation of any portion of the Restructuring Transactions;

(k)      the Bankruptcy Court grants relief terminating, annulling, or modifying the automatic stay (as set forth in Section 362 of the Bankruptcy Code) with regard to any assets of the Company that individually or in the aggregate result in a reduction of 10% or more of the total PV-10 of total proved reserves that would otherwise comprise assets that are being transferred to NewCo and its Subsidiaries under the Plan (which shall be calculated by reference to the FWE YE2020 Internal Reserve Report (as of 5.1.21)) without the prior written consent of GS Bank;

(l)      the entry of an order by the Bankruptcy Court, or the filing of a motion or application by the Debtors seeking an order (without the prior written consent of GS Bank), (i) dismissing one or more of the Chapter 11 Cases, or (ii) seeking to avoid its obligations under or reject this Commitment Letter; or

(m)      any of the following documents or the commitments thereunder have terminated or expired:  (i) the Restructuring Support Agreement, (ii) the Second Lien Backstop Commitment Letter, or (iii) the ERO Backstop Agreement.

**Exhibit I**
**Second Lien Exit Facility Term Sheet**

**UP TO $185.0 MILLION SENIOR SECURED SECOND LIEN TERM LOAN FACILITY**
**"SECOND LIEN EXIT FACILITY TERM SHEET"**

**SUMMARY OF PRINCIPAL TERMS AND CONDITIONS[1]**

*Set forth below is a summary of certain principal terms for the Second Lien Exit Facility (as defined below). This summary of terms is for indicative purposes only and does not purport to summarize all of the terms of the definitive documentation for the Second Lien Exit Facility. These terms are subject to change based upon ongoing discussions and final negotiation of definitive documentation.*

| | |
|---|---|
| **BORROWER:** | Credit Bid Purchaser (the "***Borrower***"), a newly formed special purpose bidding entity, which will be the purchaser of certain of the Debtors' assets. |
| **AGENT:** | An institution to be mutually agreed will act as sole administrative agent and collateral agent (collectively, in such capacities, the "***Second Lien Exit Facility Agent***", and as used in this ***Exhibit I***, the "***Administrative Agent***"). |
| **LENDERS:** | Each of the Backstop Commitment Parties and certain DIP Lenders (or, in each case, any of their affiliated or related funds) that elect to provide a commitment in respect of the Second Lien Exit Facility (collectively, the "***Second Lien Term Lenders***"). On the Closing Date (as defined below), the Second Lien Term Loans may be funded, in full or in part, by a seasoning institution. |
| **SECOND LIEN EXIT FACILITY:** | A senior secured second lien term loan facility (the "***Second Lien Exit Facility***") that shall become effective on the effective date of the Plan (the "***Plan Effective Date***") in an amount of up to $185.0 million comprised of: |

(a)   $100.0 million of second lien term loans (the "***DIP Replacement Second Lien Loans***"); and

(b)   additional second lien term loans (the "***New Money Second Lien Loans***" and, together with the DIP Replacement Second Lien Loans, the "***Second Lien Term Loans***") in an amount equal to the lesser of (i) $85.0 million and (ii) the amount necessary to provide the Borrower with no less than $100.0 million of cash on hand on the Effective Date, after giving effect to all transactions to occur on the Effective Date (calculated pursuant to a process and at a time to be mutually agreed).

The Second Lien Term Loans shall be funded in cash on the Closing Date; *provided* that any Second Lien Term Lender that is a DIP Lender

---

[1] All capitalized terms used but not defined herein have the meanings given to them in the Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors (the "***Plan***") and the Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors (the "***Disclosure Statement***") to which this Second Lien Exit Facility Term Sheet is attached and the other exhibits attached to such Disclosure Statement. In the event any such capitalized term is subject to multiple and differing definitions, the appropriate meaning thereof for purposes of this ***Exhibit I*** shall be determined by reference to the context in which it is used.

may elect to fund its Second Lien Term Loans on the Closing Date on a cashless basis by converting the outstanding principal amount of any of its DIP Loans into Second Lien Term Loans. The Second Lien Exit Facility shall be secured on a junior basis to the First Lien Exit Facility and any permitted hedging obligations.

**INCREMENTAL SECOND LIEN TERM FACILITIES:**    The Second Lien Exit Facility Credit Agreement will permit incremental indebtedness in a manner acceptable to the Second Lien Term Lenders, and, in any event, will permit the Borrower, on up to two occasions, to incur separate classes of additional term loans or increases in existing term loans (the "***Incremental Second Lien Term Loans***"), in each case, in an aggregate principal amount not less than $25.0 million and, in the case of all incremental term debt incurred pursuant to this "Incremental Second Lien Term Facilities" section, in an aggregate principal amount not to exceed $50.0 million (each, an "***Incremental Second Lien Term Facility***"), so long as, at the time the Borrower seeks commitments in respect of an Incremental Second Lien Term Facility, either (i) the aggregate cash and cash equivalents of the Borrower and its subsidiaries are less than $80.0 million as of such date (or, in the good faith determination of the board of directors of the Borrower, are anticipated to be less than $80.0 million as of the proposed date of incurrence of such Incremental Second Lien Term Facility) or (ii) the board of directors of the Borrower, in its good faith judgment, determines that the incurrence of such Incremental Second Lien Term Facility is in the best interest of the Borrower and its subsidiaries. Incremental Second Lien Term Loans shall be subject to terms and conditions usual and customary for financings of this type to be agreed, including, without limitation, a "most favored nation" provision pursuant to which, if the all-in yield of any Incremental Second Lien Term Loans exceeds the all-in yield of the initial Second Lien Term Loans by more than 50 bps, the interest rate of initial the Second Lien Term Loans shall be automatically increased by a percentage that would cause such all-in yield differential not to exceed 50 bps. No Second Lien Term Lender will have an obligation to make any Incremental Second Lien Term Loan.

**PURPOSE:**    The proceeds of the Second Lien Term Loans will be used by the Borrower on the Plan Effective Date (the "***Closing Date***") in accordance with and as provided in the Plan and, after the Closing Date, to finance the working capital needs and other general corporate purposes of the Borrower and its subsidiaries.

**AVAILABILITY:**    The full amount of the Second Lien Exit Facility must be drawn in a single drawing on the Closing Date; amounts borrowed thereunder that are repaid or prepaid may not be reborrowed.

**AMORTIZATION:**    None.

All amounts outstanding under the Second Lien Exit Facility shall be paid in full on the Second Lien Term Loan Maturity Date (as defined below).

| **INTEREST RATES AND FEES:** | Interest rates under the Second Lien Exit Facility will be calculated, at the option of the Borrower, at Adjusted LIBOR (subject to a 1.00% floor) <u>plus</u> the Applicable Margin (as defined below) or ABR (subject to a 2.00% floor) <u>plus</u> the Applicable Margin. |
|---|---|

Additionally, on each interest payment date, at any time that the aggregate cash and cash equivalents of the Borrower and its subsidiaries is less than $75.0 million as at the end of the most recently ended fiscal quarter, the Borrower may elect, in its sole discretion, to pay a portion of the accrued interest payable on the Second Lien Term Loans in kind (the "***PIK Election***") by adding an amount equal to 5.00% per annum to the outstanding principal amount of the Second Lien Term Loans on such interest payment date.

"***Applicable Margin***" is (i) in the case of Adjusted LIBOR loans, 8.00% per annum (or, at any time that the Borrower shall have made a PIK Election, 4.75% per annum) and (ii) in the case of ABR loans, 7.00% per annum (or, at any time that the Borrower shall have made a PIK Election, 3.75% per annum).

The Borrower shall pay an upfront fee (the "***Upfront Fee***") equal to 2.00% of the funded amount of the Second Lien Exit Facility on the Closing Date to the Second Lien Exit Facility Agent for the ratable account of each Second Lien Term Lender. Other than with respect to DIP Loans which are converted into Second Lien Term Loans (with respect to which the Upfront Fee shall be paid in cash), the Upfront Fee shall be paid in the form of original issue discount by deducting such Upfront Fee from the proceeds of the Second Lien Exit Facility on the Closing Date.

| **FINAL MATURITY:** | The Second Lien Exit Facility will mature on the date that is five years after the Closing Date (the "***Second Lien Term Loan Maturity Date***"). |
|---|---|
| **GUARANTEES:** | All obligations of the Borrower under the Second Lien Exit Facility will be jointly and severally unconditionally guaranteed on a second lien secured basis (the "***Second Lien Guarantees***") by the same guarantors that guarantee the First Lien Exit Facility (it being understood that the subsidiary guarantee requirements under the Second Lien Exit Facility will be consistent with the subsidiary guarantee requirements under the First Lien Exit Facility). |
| **SECURITY:** | The obligations of the Borrower under the Second Lien Exit Facility and the Second Lien Guarantees will be secured by a perfected second lien security interest in the same collateral that secures the First Lien Exit Facility (it being understood that the collateral requirements under the Second Lien Exit Facility will be consistent with the collateral requirements under the First Lien Exit Facility). |
| **VOLUNTARY** | Prepayments of borrowings under the Second Lien Exit Facility will be |

**PREPAYMENTS:** permitted at any time without premium or penalty.

**REPRESENTATIONS AND WARRANTIES:** The Second Lien Exit Facility Documents will contain representations and warranties acceptable to the Second Lien Term Lenders and substantially consistent with the corresponding provisions set forth in the First Lien Exit Facility Documents.

**CONDITIONS PRECEDENT:** The closing of the Second Lien Exit Facility will be subject to conditions precedent acceptable to the Second Lien Term Lenders and usual and customary for financings of this type and otherwise as set forth in the Backstop Commitment Letter and, with respect to documentary conditions, acceptable to the Second Lien Term Lenders and substantially consistent with the corresponding documentary conditions set forth in the First Lien Exit Facility Documents with appropriate modifications to reflect the second lien status of the Second Lien Exit Facility.

**AFFIRMATIVE COVENANTS:** The Second Lien Exit Facility Documents will contain affirmative covenants acceptable to the Second Lien Term Lenders and substantially consistent with the corresponding provisions set forth in the First Lien Exit Facility Documents, with appropriate modifications to reflect the second lien status of the Second Lien Exit Facility.

**NEGATIVE COVENANTS:** The negative covenants shall be acceptable to the Second Lien Term Lenders and substantially consistent with the corresponding provisions set forth in the First Lien Exit Facility Documents, with (a) appropriate modifications to reflect the second lien status of the Second Lien Exit Facility, and (b) monetary baskets and thresholds set at an additional cushion to be agreed against the applicable basket or threshold in the First Lien Exit Facility Documents.

**FINANCIAL COVENANT:** None.

**EVENTS OF DEFAULT:** The Second Lien Exit Facility Documents will contain events of default acceptable to the Second Lien Term Lenders and substantially consistent with the corresponding provisions set forth in the First Lien Exit Facility Documents, with (a) appropriate modifications to reflect the second lien status of the Second Lien Exit Facility and (b) cross-acceleration (instead of cross-default) and cross-payment event of default at maturity to the First Lien Exit Facility.

**<u>Exhibit J</u>**
**Apache Term Sheet Implementation Agreement**

## Apache Term Sheet Implementation Agreement

This IMPLEMENTATION AGREEMENT (the "**Agreement**") is made and entered into as of January 1, 2021, by and among (a) Fieldwood Energy LLC, a Delaware limited liability company ("**FWE**"), and GOM Shelf LLC, a Delaware limited liability company (collectively, the "**Fieldwood PSA Parties**") and (b) Apache Corporation ("**Apache**"), Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC (collectively, the "**Apache PSA Parties**") (each, a "**Party**" and collectively, the "**Parties**") to implement the transactions contemplated by or related to the term sheet attached hereto as **Exhibit A** (the "**Apache Term Sheet**").

## RECITALS

WHEREAS, on July 31, 2020, the Parties executed a letter agreement whereby each of the Parties agreed (i) to work to implement the terms of the Apache Term Sheet in accordance therewith and (ii) to execute and support a restructuring support agreement with certain consent rights for Apache and consistent in all respects with the terms of the Apache Term Sheet;

WHEREAS, commencing on August 3, 2020 (the "**Petition Date**"), FWE and certain of its affiliates each filed with the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") a voluntary case under chapter 11 of title 11 of the United States Code;

WHEREAS, Apache asserts that it holds prepetition audit claims against FWE related to (a) the 2013 audit of WC 72 for 2011-12 for the remaining amount of $10,222.37 which amount was included on the April 2016 JIB relating to ENI's debit pay, (b) credits from Noble Energy to Apache for VK 917 and 962 as shown on the August 2018 JIB in the amount of $11,413.53, and (c) joint venture expenditure audits #17.2.12 relating to East Breaks 158/159 for 2017, #19.2.11 relating to the Main Pass 302 #B19 Well for 2019, #19.2.12 relating to East Breaks 158/159 for 2019, and #19.2.22 relating to Viosca Knoll 917/961/962 (Swordfish) for 2019 in the aggregate net amount of $115,969 (collectively, the "**Apache Audit Claims**"); Apache, as a beneficiary of

The Fieldwood Decommissioning Trust A ("**Trust A**") created pursuant to that certain Trust Agreement, dated September 30, 2013, by and among the Fieldwood PSA Parties, as Settlors and Primary Beneficiaries, and the Apache PSA Parties and Apache Shelf Exploration LLC, as Secondary Beneficiaries, as amended, and pursuant to an audit conducted on behalf of Trust A relating to the Fourth and Fifth Amendments to the Decommissioning Agreement, asserts that it holds prepetition claims against FWE relating to funds allegedly improperly withdrawn from Trust A in the aggregate amount of approximately $5,000,000 (the "**Apache Trust A Claims**"); and Apache asserts that it holds claims against FWE related to FWE's obligations under the Decommissioning Agreement (the "**Decommissioning Claims**" and, together with the Apache Audit Claims, the Apache Trust A Claims, and any other prepetition claim Apache may assert, the "**Apache Claims**");

WHEREAS, the Bankruptcy Court has established a general bar date of 5:00 p.m. (Central Time) on November 25, 2020 (the "**General Bar Date**") for filing proofs of claim against the Fieldwood PSA Parties; the Parties hereto entered into that certain stipulation, dated as of November 24, 2020, thereby agreeing to extend the General Bar Date as to the Apache Claims in contemplation of the resolution of the Apache Claims as set forth in the RSA (as defined below), the Apache Term Sheet, and the Apache Definitive Documents (as defined below);

WHEREAS, that certain *Restructuring Support Agreement*, dated as of August 4, 2020 (the "**RSA**"), was entered into by and among (i) the Company[1] (including the Fieldwood PSA Parties); (ii) the Consenting FLTL Lenders; (iii) the Consenting SLTL Lenders (together with the Consenting FLTL Lenders, the "**Consenting Creditors**"); and (iv) Apache (collectively, the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the RSA, unless indicated otherwise.

"**RSA Parties**"), pursuant to which the RSA Parties agreed to support a financial restructuring of the Company as provided therein;

WHEREAS, the Company and the Consenting Creditors have agreed that certain interests in certain non-Legacy Apache Properties and the properties included in the fields listed on Schedule A to the Apache Term Sheet as "Ownership and Operatorship" (the "**Retained Properties**") (such non-Legacy Apache Properties and the Retained Properties, collectively, the "**Credit Bid Acquired Interests**") will be sold and conveyed to, and certain liabilities and obligations of the Debtors will be assumed by and will constitute liabilities and obligations of (such liabilities and obligations, collectively, the "**Credit Bid Assumed Liabilities**"), an entity to be formed for purposes of consummating the transactions under the Credit Bid Purchase Agreement ("**Credit Bid Purchaser**"), pursuant to a purchase and sale agreement (the "**Credit Bid Purchase Agreement**");

WHEREAS, pursuant to the RSA, the Company agreed to, among other things: (i) negotiate in good faith the definitive documents implementing the transactions contemplated by or relating to the Apache Term Sheet (the "**Apache Definitive Documents**"); (ii) use commercially reasonable efforts to execute and deliver the Apache Definitive Documents; and (iii) use commercially reasonable efforts to consummate the transactions contemplated under the Apache Definitive Documents;

WHEREAS, pursuant to the RSA, Apache agreed to, among other things: (i) support and take all actions necessary or reasonably requested by the Company to facilitate the finalization of the Apache Definitive Documents; and (ii) support and take all actions necessary or reasonably requested by the Company to facilitate the transactions contemplated under the Apache Definitive Documents;

WHEREAS, pursuant to the RSA, the Apache Definitive Documents shall be in a form reasonably acceptable to the Company, Apache, the Requisite DIP Commitment Parties, and the Requisite FLTL Lenders;

WHEREAS, pursuant to the Apache Term Sheet, Apache acknowledged and agreed that the Apache Definitive Documents shall be subject to the approval of holders of consent rights as set forth in the RSA, which approval shall not be unreasonably withheld, it being understood that good faith negotiations with respect to matters not addressed in the Apache Term Sheet or the Restructuring Term Sheet shall not be considered unreasonably withholding approval;

WHEREAS, the Apache Term Sheet provides that the parties thereto agree to negotiate mutually agreeable Apache Definitive Documents no later than 45 days after the Petition Date, which deadline the Parties have mutually agreed to extend to January 1, 2021;

WHEREAS, the RSA provides that it shall be a DIP Commitment Parties Termination Event if the Company shall not have complied with the deadline requiring the finalization of the Apache Definitive Documents by no later than 75 days after the Petition Date, which deadline has been extended to January 1, 2021;

WHEREAS, pursuant to that certain *Senior Secured Debtor-In-Possession Term Loan Credit Agreement*, dated as of August 24, 2020, among Fieldwood Energy Inc., Fieldwood Energy LLC, the Several Lenders, from time to time, and Cantor Fitzgerald Securities, the Apache Definitive Documents shall be finalized no later than 75 days after the Petition Date, which deadline has been extended to January 1, 2021;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1.    **Apache Definitive Documents**.  The documents below comprise the Apache Definitive Documents as contemplated in the RSA and the Apache Term Sheet:

a.    *Conversion of FWE into a Texas Limited Liability Company.*

      (i)    *Certificate of Conversion (DE) (FWE).*  Annexed hereto as **Exhibit 1**.

      (ii)    *Certificate of Conversion (TX) (FWE).*  Annexed hereto as **Exhibit 2**.

      (iii)    *Plan of Conversion (TX) (FWE).*  Annexed hereto as **Exhibit 3**.

      (iv)    *Certificate of Formation (TX) (FWE).*  Annexed hereto as **Exhibit 4**.

b.    *Divisional Merger Documents.*

      (i)    *Agreement and Plan of Merger (TX) (FWE)* (the "**Plan of Merger**"). Annexed hereto as **Exhibit 5**.

      (ii)    *Certificate of Merger (TX) (FWE).*  Annexed hereto as **Exhibit 5A**.

      (iii)    *Certificate of Formation (TX) (Fieldwood Energy I LLC).*  Annexed hereto as **Exhibit 5B**.

c.    *Fieldwood Energy I LLC Agreement.*  Annexed hereto as **Exhibit 6**.

d.    *ST 308 Bond Form.*  Annexed hereto as **Exhibit 7**.

e.    *Standby Credit Facility Documents* (collectively, the "**Standby Credit Facility Documents**").

      (i)    *Standby Loan Agreement.*  Annexed hereto as **Exhibit 8**.

      (ii)    *Security Agreement.*  Annexed hereto as **Exhibit 9**.

      (iii)    *Guarantee (Fieldwood Energy I LLC).*  Annexed hereto as **Exhibit 10**.

      (iv)    *Guarantee (GOM Shelf LLC).*  Annexed hereto as **Exhibit 11**.

      (v)    *Form of Mortgages.*  Annexed hereto as **Exhibit 12**.

f.    *Form of Amendment to Unit Operating Agreement*.  Annexed hereto as **Exhibit 13**, the form of which shall be modified in a manner consistent with the Apache Term Sheet and this Agreement to amend each operating agreement with respect to the properties included in the fields listed on Schedule A to the Apache Term Sheet as solely "Operatorship" for which Credit Bid Purchaser shall become operator, which amendments shall be subject to the same consent rights of the Required DIP Lenders and Requisite FLTL Lenders as for the Apache Definitive Documents, and the Parties shall enter into such amendments prior to the closing of the transactions contemplated by the Credit Bid Purchase Agreement.

g.    *Farmout Agreement*.  Annexed hereto as **Exhibit 14**.

h.    *Transition Services Agreement*.  Annexed hereto as **Exhibit 15**.

i.    *SEMS Bridging Agreement*.  Annexed hereto as **Exhibit 16**.

j.    *Amended BriarLake Sublease*.  Annexed hereto as **Exhibit 17**.

k.    *Certification of Rights*.  Annexed hereto as **Exhibit 18**.

2.    **Execution of Apache Definitive Documents**; **Good Faith Cooperation.** Each Party agrees, and Apache expressly acknowledges, that the Company and the Apache PSA Parties have satisfied the requirements under the Apache Term Sheet and the RSA to negotiate mutually agreeable Apache Definitive Documents by the relevant deadlines set forth therein. Subject to and in accordance with the terms of the RSA and Apache Term Sheet, each of the Parties shall negotiate any exhibits, amendments, modifications or supplements to the Apache Definitive Documents in good faith and agree to exercise commercially reasonable efforts with respect to the negotiation, pursuit, approval, execution, delivery, implementation, and consummation of the Apache Definitive Documents.  The Parties may, by mutual agreement, amend, modify, or supplement the forms of the Apache Definitive Documents attached hereto or negotiate to add

additional documents to the list of Apache Definitive Documents, consistent with the terms and conditions herein, in the RSA, and in the Apache Term Sheet, and subject to the consent rights of the Parties in the RSA and the Apache Term Sheet, as necessary or desirable to effectuate the Apache Term Sheet and a chapter 11 plan of reorganization that incorporates the transactions contemplated in the Apache Definitive Documents (the "**Plan**").  Subject to the immediately preceding sentence, the Parties shall execute and deliver the Apache Definitive Documents on or before the effective date of the Plan (the "**Effective Date**").  Each Party agrees to use commercially reasonable efforts to execute and deliver the instruments, forms and filings (including any BOEM designation of operator forms and designated applicant Oil Spill Financial Responsibility ("**OSFR**") form designations and any instruments, forms and filings required by BSEE) that are necessary to designate and appoint under all applicable laws and contracts the Credit Bid Purchaser as operator (and, as applicable, the designated applicant under OSFR for) the Credit Bid Acquired Interests as promptly as practicable following the closing of the Credit Bid Purchase Agreement, and in any case, prior to the execution and delivery of the instruments, forms and filings (including any BOEM designation of operator forms and designated applicant OSFR form designations and any instruments, forms and filings required by BSEE) that may be required in connection with the implementation of the Divisive Merger (as defined below).

3. **FWE I Exhibits to the Plan of Merger**.  Exhibits I-A(i) through I-K(iii) to Schedule I to the Plan of Merger (collectively, the "**FWE I Exhibits**") set forth a list of Legacy Apache Properties, which FWE I Exhibits the Apache PSA Parties and the Fieldwood PSA Parties hereto respectively acknowledge are subject to the ongoing review and consent rights of the Consenting Creditors under the RSA (which consent has not yet been provided), and the Apache

PSA Parties and Fieldwood PSA Parties agree that the FWE I Exhibits are subject to modification based on such review to be consistent with the Apache Term Sheet.

4. **Plan and Confirmation Order**.  As provided in the RSA, provisions in the Plan and Confirmation Order that directly affect the structure of FWE I outlined in the Apache Term Sheet or the economic treatment of Apache remain subject to Apache's review and must be in form and substance reasonably acceptable to Apache, and the Plan and Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Requisite DIP Commitment Parties, and the Requisite FLTL Lenders at all times.  To facilitate the implementation of the Apache Term Sheet and the Apache Definitive Documents pursuant to the Plan as contemplated in the RSA and the Apache Term Sheet, the Parties agree that subject to the negotiation of mutually agreeable definitive language, any order of the Bankruptcy Court confirming the Plan (the "**Confirmation Order**") shall provide for the following:

(i)	FWE shall pay up to $4 million of reasonable and documented fees and expenses of Apache related to the formation of Fieldwood Energy I LLC ("**FWE I**") and FWE's restructuring, including the negotiation and preparation of the Apache Definitive Documents (collectively, the "**Apache Fees and Expenses**"); provided that amounts paid to Apache on account of the Apache Fees and Expenses shall not be subject to disgorgement unless the transactions contemplated in the Apache Definitive Documents fail to close as a result of Apache's breach of the RSA.

(ii)	The Prepetition FLFO Lenders, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall release (and/or cause the applicable administrative agent or collateral agent to release) all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part

A of Schedule I to the Plan of Merger) and the Consenting Creditors shall release the Apache PSA Parties from any and all causes of action and claims of any kind related to the Legacy Apache Properties arising prior to the date of the Apache Term Sheet Implementation Agreement.

(iii) FWE's assets to be allocated to, possessed by, assumed by, and vested in FWE I and Fieldwood Energy III LLC ("**FWE III**"), respectively, pursuant to the transactions contemplated by and in accordance with the Plan of Merger (the "**Divisive Merger**"), including contracts, leases, oil and gas leases and assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), shall be (a) free and clear of (i) any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of the assets in connection with the Divisive Merger (such rights, the "**Consent Rights**") and (ii) all preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the vesting of the assets in connection with the Divisive Merger (such rights, the "**Preferential Purchase Rights**"), but (b) subject to and burdened by (x) the liabilities and obligations allocated to and vested in, respectively, FWE I or FWE III, as specified in the Plan of Merger, pursuant to the Divisive Merger (collectively, "**Allocated Obligations**") and (y) Permitted Post-Closing Liens (as defined in the Schedule of Defined Terms for Required Confirmation Order Provisions, attached hereto as **Exhibit B**).

(iv) Entities (as defined under section 101(15) of the Bankruptcy Code) or Parties that fail to timely file an objection are (a) forever barred from objecting to the allocation and vesting of the assets in connection with the Divisive Merger free and clear of all Consent Rights and Preferential Purchase Rights, and from asserting any alleged Consent Rights or Preferential Purchase Rights with respect to the Divisive Merger, and (b) deemed to consent to

and approve the allocation and vesting of the assets free and clear of all Consent Rights and Preferential Purchase Rights, regardless of whether such consent must be in writing pursuant to the terms of any agreement.

          (v)      Subject to the Implementation Costs Cap (as defined below), FWE III shall, and shall cause its debtor affiliates in the above-captioned chapter 11 cases to, on the Effective Date, provide for the payment of any and all documentary, filing, recording, stamp, and registration fees, costs, taxes, and expenses (including all reasonable and documented attorneys' fees and regulatory consultant fees) incurred or imposed after the Effective Time (as defined in the Plan of Merger) in connection with the filing of record by or on behalf of FWE I or GOM Shelf LLC of any instrument or instruments with the appropriate records office of any county, parish, state, federal, or other governmental unit (including BOEM) that may be required in connection with the implementation of the Divisive Merger or that either FWE I or GOM Shelf LLC determines in its respective sole discretion to be necessary or appropriate to reflect in the appropriate records of any governmental unit that as a result of the Divisive Merger (a) ownership of the FWE I Assets have been allocated to and are vested in FWE I (and to the extent appropriate to reflect ownership of the GOM Shelf Properties (as defined in the Plan of Merger) in GOM Shelf LLC), and (b) the Allocated Obligations have been allocated to and vested in, and constitute liabilities and obligations of, FWE I and FWE III, respectively (collectively, the "**Implementation Costs**"). For the avoidance of doubt, the documentary, filing, recording, stamp, and registration fees of FWE I or GOM Shelf LLC, shall include such costs and expenses required to file or to cause to be filed of record in the records office, as determined by Apache to be appropriate, of any county, parish, state, federal, or other governmental unit (including BOEM) of the mortgages, security interests and similar security documentation as is contemplated by the Standby Loan Agreement and the

Standby Credit Facility Documents to secure the obligations of FWE I and GOM Shelf LLC thereunder. Any Implementation Costs that exceed the Implementation Costs Cap shall be the sole responsibility of and paid for by FWE I.

(vi)    On the Effective Date, the Decommissioning Agreement shall be assumed by the Fieldwood PSA Parties. The Apache PSA Parties shall consent to such assumption and, upon such assumption, waive any claim for cure or compensation relating to any default that may exist under the Decommissioning Agreement at the time of assumption.

(vii)    Except for the rights and remedies to enforce (a) the Decommissioning Agreement against GOM Shelf LLC and FWE I following the Divisive Merger (which agreement shall be allocated to FWE I and GOM Shelf LLC under the Divisive Merger), (b) the Plan, (c) the Confirmation Order, and (d) the obligations contemplated by the Apache Definitive Documents, the Apache PSA Parties shall be deemed Releasing Parties (as defined in the Plan) under the Plan and waive and release any and all pre-Effective Date claims of any kind (including, without limitation, the Apache Audit Claims, the Apache Trust A Claims and any claims that could qualify as administrative expense claims) against the Debtors, their estates and any other Released Party (as defined in the Plan), in all circumstances only to the extent such claims accrued on or prior to the Effective Date and only to the extent such releases do not impair the Decommissioning Security, or Apache's ability to draw on the Decommissioning Security in any respect. For the avoidance of doubt, any and all claims the Apache PSA Parties may have against FWE I related to the Decommissioning Agreement arising post-Effective Date and any security obtained, provided, or pledged in connection with the Decommissioning Agreement (the "**Decommissioning Security**") will be preserved.

(viii)   Except for the rights and remedies to enforce (a) the Decommissioning Agreement against the Apache PSA Parties following the Divisive Merger, (b) the Plan, (c) the Confirmation Order, and (d) the obligations contemplated by the Apache Definitive Documents, the Debtors shall waive and release any and all pre-Effective Date claims of any kind against the Apache PSA Parties, in all circumstances only to the extent such claims accrued on or prior to the Effective Date.  For the avoidance of doubt, any and all claims FWE I may have against the Apache PSA Parties related to the Decommissioning Agreement arising post-Effective Date and the Decommissioning Security will be preserved.

(ix)   With respect to all bonds and letters of credit constituting Decommissioning Security, all claims for premiums, fees, reimbursement, indemnification, or any other claims, fixed, contingent, liquidated, unliquidated, or otherwise against the Debtors held by the companies issuing the bonds or letters of credit, shall neither be allocated to nor become the obligations of FWE I under the Plan of Merger.  Notwithstanding the foregoing, all rights of the Apache PSA Parties with respect to such bonds and letters of credit shall be preserved as against such bonding companies and letter of credit issuers in all respects.  The Debtors shall not terminate any bonds issued on behalf of the Debtors relating to the Legacy Apache Properties under which any federal, state or local governmental entity is an obligee.

(x)   With respect to the agreements and memberships relating, in whole or in part, to well containment/control, clean-up of spills, or other pollution, or the gathering of data relating to certifications required to be made to a governmental unit with respect to the FWE I Assets (as defined in the Plan of Merger) or GOM Shelf Oil and Gas Properties (as defined in the Plan of Merger), to the extent any such agreements or memberships are also needed in respect to any Credit Bid Acquired Interests or FWE III Assets (as defined in the Plan of Merger) that are set

forth on **Exhibit 23** hereto, then on or before the Effective Date, FWE shall obtain new agreements and membership for such use with respect to the Credit Bid Acquired Interests or FWE III Assets. With respect to any Excluded Contracts (as defined in the Plan of Merger), FWE shall, on or before the Effective Date, prepare and negotiate replacement agreements with the counterparties to such Excluded Contracts upon substantially the same terms as such Excluded Contracts which may be executed by FWE I immediately following the Effective Date.

(xi)     The Fieldwood PSA Parties and the Apache PSA Parties may, by mutual agreement, amend and modify, without the consent of the Consenting Creditors, the forms of the agreements governing the terms of employment of the Independent Director (as defined in the Apache Term Sheet) of FWE I and of the "sole manager" (as that term is used in the Apache Term Sheet) of FWE I (the "**Sole Manager**"), and the form of the agreement with the "service provider" (as that term is used in the Apache Term Sheet) of FWE I (the "**Contract Services Provider**") to be included in the bid package for the Contract Services Provider (collectively, such forms of agreement comprise the "**Fieldwood I Administrative Documents**").

(xii)     The Bankruptcy Court (i) approves the Apache Definitive Documents and all transactions contemplated by the Apache Term Sheet Implementation Agreement, including the Plan of Merger and Standby Credit Facility Documents, and all actions to be taken, undertakings to be made, and obligations to be incurred by FWE I contemplated thereby; and (ii) following the consummation of the Plan of Merger, authorizes FWE I, without further notice to or action, order, or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into, deliver, and fully perform its obligations under the Apache Definitive Documents, including without limitation, the Standby Credit Facility Documents.  Upon entry of the Confirmation Order, FWE I or the Sole Manager, as applicable,

shall be authorized and empowered, without further approval of the Bankruptcy Court or any other party, to take such actions and perform such acts as may be necessary, convenient, desirable, or appropriate to execute and deliver the Apache Definitive Documents in accordance with the Plan and to execute and deliver all documents relating thereto and to perform all of their obligations thereunder. On the Effective Date, the Apache Definitive Documents shall constitute legal, valid, binding, and authorized obligations of FWE I, enforceable in accordance with their terms, and such obligations of FWE I shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination by FWE I or the Post-Effective Date Debtors (as defined in the Plan) under applicable law, the Plan, or the Confirmation Order. On the Effective Date, all liens granted pursuant to, or in connection with, the Apache Definitive Documents shall be deemed granted by FWE I and/or GOM Shelf LLC, in each case, pursuant to the Apache Definitive Documents. On the Effective Date, all liens granted pursuant to, or in connection with Apache Definitive Documents, as applicable, (i) shall be valid, binding, perfected, enforceable liens and security interests in the property described in the applicable Apache Definitive Documents granted by FWE I and/or GOM Shelf LLC pursuant to the Apache Definitive Documents, as applicable, with the priorities established in respect thereof under applicable non-bankruptcy law and the Apache Definitive Documents, including, but not limited to, the Mortgages, Security Agreement or Standby Loan Agreement and (ii) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination by FWE I and/or GOM Shelf LLC under applicable law, the Plan, or the Confirmation Order. For the avoidance of doubt, the liens granted to Apache pursuant to the Recharacterization Mortgages (as such term is defined in the Decommissioning Agreement, as amended from time to time, and as supplemented by the Recharacterization Mortgages) upon any recharacterization of the Trust A

or Trust A-1 NPIs (as such terms are defined in the Decommissioning Agreement, as amended from time to time, and as supplemented by the Recharacterization Mortgages) shall be senior in all respects to any other liens.

5. **Implementation Costs Cap**. No later than twenty-one (21) days after the effective date of this Agreement (as such date may be extended upon mutual written consent by the Parties including via email), the Parties shall mutually agree in good faith on the estimated amount of Implementation Costs to be funded by the Debtors (such amount, the "**Implementation Costs Cap**"). In the event the Parties are unable to reach a mutual agreement as to the Implementation Costs Cap, the determination shall be submitted to and determined by the law firm of Geiger Laborde & Laperouse, LLC (the "**Referee**"). If the Referee shall be responsible for determining the Implementation Costs Cap, each Party will be required to submit its respective estimate regarding the Implementation Costs Cap to the Referee. The Referee will then conduct its own investigation and issue its decision regarding the Implementation Costs Cap, where such amount shall not be (i) higher than the highest estimate submitted by a Party, or (ii) lower than the lowest estimate submitted by a Party. The Referee's decision shall be considered final and binding. Moreover, the Parties will each pay half of the total costs relating to the Referee's determination of the Implementation Costs Cap. The Apache PSA Parties' portion of such costs shall not be considered Apache Fees and Expenses.

6. **Fieldwood I Administrative Documents**. The documents below comprise the Fieldwood I Administrative Documents:

(i) *Sole Manager Agreement.* Annexed hereto as **Exhibit 19**.

(ii) *Independent Director Agreement.* Annexed hereto as **Exhibit 20**.

(iii)    *Form of Contract Services Agreement*, to be included in the bid package for the Contract Services Provider.  Annexed hereto as **Exhibit 21**.

(a)    Any waivers, amendments, or modifications made to the Fieldwood I Administrative Documents or any provisions contained therein shall be made by mutual agreement between the Fieldwood PSA Parties and the Apache PSA Parties without the consent of the Consenting Lenders.

7.    **Termination of Agreement and Tolling of General Bar Date.**

(a)    This Agreement shall terminate upon the earlier to occur of (i) the termination of the RSA and (ii) the termination of Apache as a party to the RSA.  Upon termination of this Agreement, each Party shall be immediately released from its obligations, commitments, undertakings and agreements under or related to this Agreement; provided that in no event shall any such termination relieve a Party from liability for its breach or non-performance of its obligations hereunder prior to the date of such termination.

(b)    Notwithstanding the General Bar Date, the Parties agree that Apache shall not file a proof of claim against the Debtors on account of the Apache Claims until after the earliest to occur of the following (the date of the earliest to occur of the following, the "**Apache POC Filing Date**"): (i) the date that this Agreement is terminated, (ii) the date that FWE, without Apache's express, written consent, files a plan of reorganization materially inconsistent with the RSA, the Apache Term Sheet, or the Apache Definitive Documents, (iii) the date that FWE's chapter 11 case is converted to a case under chapter 7, and (iv) January 15, 2021 if the RSA has not been amended to modify or remove the requirement that Apache timely vote its Claims and Interests to accept the Plan contemplated by the RSA.  Following the occurrence of the Apache POC Initial Filing Date, at any time within the period of thirty (30) days after the Apache POC

Initial Filing Date, Apache shall have the right to file a proof of claim or proofs of claim against the Debtors on account of the Apache Claims. The terms of this paragraph 7(b) shall survive the termination of this Agreement.

8.    **363 Credit Bid Transaction.**  In the event the credit bid sale transaction to Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders) is pursued pursuant to section 363 of the Bankruptcy Code as contemplated in the Plan (the "**363 Credit Bid Transaction**"), the Apache PSA Parties agree, consistent with their obligations under the RSA, to support and take reasonable actions to facilitate the 363 Credit Bid Transaction, and cooperate in good faith with Debtors, the Required DIP Lenders and Requisite FLTL Lenders to facilitate the 363 Credit Bid Transaction, including, without limitation, by making any amendments to the Apache Definitive Documents; provided that no such actions shall require the Apache PSA Parties to alter the economics of the Apache Definitive Documents without the Apache PSA Parties' express written consent.

9.    **Credit Bid Purchase Agreement Terms**.[2]

(a)    The terms of the Credit Bid Purchase Agreement (or an alternative purchase and sale agreement conveying the Credit Bid Acquired Interests to a buyer) that relate to (i) the scope of Credit Bid Assumed Liabilities (including payables with respect to the Legacy Apache

---

[2] The Consenting Creditors agreed under the Apache Term Sheet that "any outstanding accounts receivable and accounts payable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of reorganization shall be retained by [Credit Bid Purchaser]."  However, for the avoidance of doubt, any language in Paragraph 9 or Exhibit 22 of this Agreement that differs from, supplements, modifies or is otherwise inconsistent with the foregoing language in the Apache Term Sheet (including, without limitation, any language that relates to items that are not accounts payable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of reorganization being retained by Credit Bid Purchaser or any language that relates to items that are accounts receivable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of reorganization not being retained by Credit Bid Purchaser) has not been agreed to by the Consenting Creditors, and the Consenting Creditors reserve all rights with respect to any such difference, supplement, modification or inconsistency.

Properties and the Retained Properties) to be assumed by the buyer thereunder and any indemnities with respect thereto and (ii) the scope of receivables with respect to the Legacy Apache Properties to be assigned to the buyer and the obligations that may be imposed on FWE I with respect to the collection of such receivables ((i) and (ii), collectively, the "**Specified Credit Bid Terms**")  shall be in form and substance acceptable to Apache and the Debtors.

(b)     The Parties agree that the terms as set forth on **Exhibit 22** that relate to the Specified Credit Bid Terms are acceptable to Apache and the Debtors to address the Specified Credit Bid Terms in the Credit Bid Purchase Agreement (or an alternative purchase and sale agreement conveying the Credit Bid Acquired Interests to a buyer), and any terms contained in the Credit Bid Purchase Agreement (or an alternative purchase and sale agreement conveying the Credit Bid Acquired Interests to a buyer) that relate to the Specified Credit Bid Terms, other than as set forth on Exhibit 22, must be in form and substance acceptable to Apache and the Debtors.

10.     **Transfer of Retained Properties**.  Notwithstanding anything to the contrary herein, any Retained Properties transferred to Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders) in a credit bid sale transaction shall be conveyed in accordance with the Decommissioning Agreement.  Any amounts payable to Trust A on account of such transfer shall be the obligation of FWE I.  Apache agrees to work with FWE and the Trust A trustee to obtain the required releases from Trust A and conveyances of such interest to Credit Bid Purchaser in connection with this transfer.

11.     **Effectiveness; Counterparts.**  This Agreement shall become effective and binding upon each Party upon the execution and delivery by such Party of an executed signature page hereto and shall become effective and binding on all Parties on the date when all Parties have executed and delivered a signature page hereto.  This Agreement may be executed in several

counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement. Execution copies of this Agreement may be delivered by electronic mail, or otherwise, which shall be deemed to be an original for the purposes of this paragraph.

12. **Governing Law; Jurisdiction; Waiver of Jury Trial.** To the maximum extent permitted by applicable law, this Agreement is governed by and is to be construed in accordance with the internal laws of the State of Texas, without giving effect to any principles of conflicts of law thereunder that would result in the application of the laws of any other jurisdiction. Each Party irrevocably agrees that any legal action, suit, or proceeding arising out of or relating to this Agreement brought by any party or its successors or assigns shall be brought and determined in the Bankruptcy Court and each Party hereby irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court, and if the Bankruptcy Court does not have (or abstains from) jurisdiction, Courts of the State of Texas and of the United States District Court of the Southern District of Texas, and any appellate court from any thereof, for itself and with respect to its property, generally and unconditionally, with regard to any such proceeding arising out of or relating to this Agreement. Each Party further agrees that notice as provided herein shall constitute sufficient service of process and the Parties further waive any argument that such service is insufficient. Each Party hereby irrevocably and unconditionally waives, and agrees not to assert, by way of motion or as a defense, counterclaim or otherwise, in any proceeding arising out of or relating to this Agreement, (a) any claim that it is not personally subject to the jurisdiction of the Bankruptcy Court as described herein for any reason, (b) that it or its property is exempt or immune from jurisdiction of such court or from any legal process commenced in such court (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment,

execution of judgment, or otherwise) and (c) that (1) the proceeding in such court is brought in an inconvenient forum, (2) the venue of such proceeding is improper, or (3) this Agreement, or the subject matter hereof, may not be enforced in or by such court. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF RELATING TO THIS AGREEMENT. EACH PARTY CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.

13. **Notices.** All notices hereunder shall be deemed given if in writing and delivered, if contemporaneously sent by electronic mail, courier or by registered or certified mail (return receipt requested) to the following addresses:

(1) If to the Fieldwood PSA Parties, to:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway S., Suite 1200
Houston, Texas 77042
Attention: Thomas R. Lamme

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention: Matt Barr, Esq. (matt.barr@weil.com)
Alfredo Peréz, Esq. (alfredo.perez@weil.com)
Jessica Liou, Esq. (jessica.liou@weil.com)

(2)     If to the Apache PSA Parties, to:

Apache Corporation
2000 Post Oak Boulevard, Suite 100
Houston, Texas 77056-4400
Attention:   Anthony Lannie and Brett Cupit

With a copy to:

Hunton Andrews Kurth LLP
600 Travis Street
Suite 4200
Houston, Texas 77002
Attention: Robin Russell, Esq. (RRussell@andrewskurth.com)
             Catherine Diktaban, Esq. (CDiktaban@hunton.com)

14.    **Amendments.**  Neither this Agreement nor any provision hereof may be waived, amended, or modified except pursuant to an agreement or agreements in writing entered into by the Fieldwood PSA Parties and the Apache PSA Parties.

*[Signature Pages to Follow]*

**IN WITNESS WHEREOF**, the undersigned Parties have executed this Implementation Agreement as of the date first written above.

FIELDWOOD ENERGY LLC,
a Delaware limited liability company

By: _Thomas R. Lamme_

Name: _Thomas R. Lamme_

Title: _Senior Vice President and General Counsel_

GOM SHELF LLC,
a Delaware limited liability company

By: _Thomas R. Lamme_

Name: _Thomas R. Lamme_

Title: _Vice President_

APACHE CORPORATION

By: _____

Name: Ben C. Rodgers
Title:  Senior Vice President, Treasurer and
        Marketing & Midstream

APACHE SHELF, INC.

By: _____

Name: Ben C. Rodgers
Title:  Senior Vice President and Treasurer

APACHE DEEPWATER LLC

By: _____

Name: Ben C. Rodgers
Title:  Senior Vice President and Treasurer

[Apache PSA Parties Signature Page to Apache Term Sheet Implementation Agreement]

APACHE SHELF EXPLORATION LLC

By: _____

Name: Stephen J. Riney
Title: Executive Vice President and
       Chief Financial Officer

# Exhibit A

## The "Apache Term Sheet"

# FIELDWOOD ENERGY

Thomas R. Lamme
Senior Vice President and General Counsel
Direct: 713-969-1107
Email: TLamme@fwellc.com

**VIA EMAIL**

July 31, 2020

P. Anthony Lannie
Executive Vice President and General Counsel
Apache Corporation
2000 Post Oak Boulevard, Suite 100
Houston, Texas 77056-4400

Re:     *Legacy Apache Properties Term Sheet*

Dear Mr. Lannie:

Attached as <u>Exhibit A</u> is the agreed upon term sheet dated July 31, 2020, by and between Fieldwood Energy LLC and certain of its affiliates (collectively, the "**Fieldwood PSA Parties**") and Apache Corporation and certain of its affiliates (collectively, the "**Apache PSA Parties**" and, together with the Fieldwood PSA Parties, the "**Parties**") supporting the restructuring of the portion of the Fieldwood PSA Parties' business relating to certain assets described therein as the "Legacy Apache Properties" (the "**Legacy Apache Properties Term Sheet**").

By executing this letter agreement, each of the undersigned Parties agrees (i) to work to implement the terms of the Legacy Apache Properties Term Sheet in accordance therewith and (ii) (upon Fieldwood's payment of the retainers to Apache's attorneys and advisors in the amounts submitted to Fieldwood's outside counsel and subject to review and reasonable satisfaction with the restructuring term sheet to be attached to the restructuring support agreement) to execute and support a restructuring support agreement in a final form reasonably acceptable to Apache and consistent in all respects with  the terms of the Legacy Apache Properties Term Sheet.

The Parties may execute and deliver this letter agreement by electronic reproduction and in multiple counterparts, each of which shall constitute an original and all of which shall be one and the same document.  This letter agreement shall be governed by the laws of the State of Texas without regard to any choice of law principles.

Regards,

*Thomas R. Lamme*

Thomas R. Lamme

Enclosure

cc:  Michael T. Dane
     Senior Vice President and Chief Financial Officer

IN WITNESS WHEREOF, the undersigned Parties have executed this letter agreement as of the date first written above.

**FIELDWOOD ENERGY LLC**

By: _Thomas R. Lamme_

Name: Thomas R. Lamme

Title: Senior Vice President and General Counsel

**GOM SHELF LLC**

By: _Thomas R. Lamme_

Name: Thomas R. Lamme

Title: Vice President

**APACHE CORPORATION**

Name: P. Anthony Lannie
Title: Executive Vice President and General Counsel

**APACHE SHELF, INC.**

Name: P. Anthony Lannie
Title: Executive Vice President and General Counsel

**APACHE DEEP WATER LLC**

Name: P. Anthony Lannie
Title: Executive Vice President and General Counsel

# Exhibit A

## Term Sheet for Fieldwood Energy LLC Restructuring

### Summary of Principal Terms

| | |
|---|---|
| **Entity Owning Legacy Apache Properties Post-Confirmation** | All oil and gas assets conveyed by Apache Corporation ("Apache") and certain of its affiliates (collectively, the "Apache PSA Parties") in favor of Fieldwood Energy LLC ("Fieldwood" or "debtor") and certain of its affiliates (collectively, the "Fieldwood PSA Parties") pursuant to that Purchase and Sale Agreement dated as of July 18, 2013 between the Apache PSA Parties and the Fieldwood PSA Parties (as amended, "PSA"), plus all leases, wells, fixtures, equipment, permits, ONRR royalty and other deposits, decommissioning bonds with third parties relating to previously sold assets, decommissioning bonds posted by Fieldwood on Legacy Apache Properties, inventory, facilities, easements, pipelines, and related property associated therewith, less and except any such assets sold, assigned, decommissioned, or otherwise disposed of by Fieldwood to third parties or otherwise prior to the date of this Term Sheet or as contemplated in this Term Sheet, and not including the Retained Properties (defined below) (collectively, the "Legacy Apache Properties") shall be owned post-confirmation by a Reorganized Fieldwood unless a different entity is created in accordance with the section entitled "Assumption of Obligations" below (this portion of the business of the Reorganized Fieldwood being referred to hereinafter as "Fieldwood I"). Any outstanding accounts receivable and accounts payable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of reorganization shall be retained by Fieldwood II (defined below), and any accounts receivable and accounts payable accruing after the effective date of Fieldwood's plan of reorganization shall accrue to the benefit or obligation of Fieldwood I. Fieldwood I will retain BOEM Operator numbers and Qualification cards for Fieldwood and Fieldwood's affiliate GOM Shelf LLC.<br><br>Fieldwood I shall (i) have no assets or liabilities upon confirmation other than the Legacy Apache Properties and operational liabilities, including plugging and abandonment and decommissioning liabilities relating to the Legacy Apache Properties and certain assets described under "Additional Initial Funding Sources" and "Assumption of Obligations" below, (ii) be a bankruptcy remote business entity with a governance structure which is consistent with the business goals of the parties outlined herein (which includes an independent director or manager whose vote is needed to approve major decisions such as bankruptcy, receivership, liquidation, mergers, and consolidations, and removal and appointment (after the initial appointment) of the sole manager and service provider described below (the "Independent Director")), (iii) not be a reporting entity for SEC purposes, (iv) as of the confirmation date, not create a variable interest entity that Apache is required to consolidate, and (v) is structured in a tax efficient manner within the constraints of the criteria set forth in items (i) through (iv) above. To the extent it will accomplish the goals of the parties outlined herein and is otherwise allowed by applicable law, Fieldwood I and the holder of Fieldwood's other assets not sold during the pendency of the Chapter 11 cases ("Fieldwood II") may be created by a divisional merger of Fieldwood under applicable state law upon the confirmation of Fieldwood's plan of reorganization. |

| | |
|---|---|
| **Management of Fieldwood I** | Fieldwood I will not have employees other than a sole manager. Apache and debtor shall each provide the other with a list of three candidates with a minimum of five (5) years of relevant experience in the energy sector. If one or more names appear on both lists, then the debtor will select the initial sole manager of Fieldwood I from those common name(s). If there are no common names, then each shall have the right to strike two names from the other party's list and the bankruptcy judge shall select the sole manager from the two remaining names (one from each list). In the event the sole manager must be removed (which shall require Apache's consent) and/or replaced or resigns or otherwise no longer serves, then the foregoing procedure will be repeated (except that the Independent Director will replace the bankruptcy court and Fieldwood I will replace the debtor for that purpose). |

The initial Independent Director shall be appointed by the debtor and shall be a natural person who is not and, for the prior five years has not been, a director, officer, employee, trade creditor, or shareholder (or spouse, parent, sibling, or child of the foregoing) of Fieldwood, any affiliate of Fieldwood, or any lender to Fieldwood (a "Qualified Person"), and shall be an individual provided by Citadel SPV, Global Securitization Services, LLC, Corporation Service Company, CT Corporation, Lord Securities Corporation, Wilmington Trust Company, or, if none of those companies is then providing professional independent managers, another nationally-recognized company selected by Fieldwood with Apache's consent (the "Approved List") and approved by the bankruptcy court. The Independent Director may not be removed, except with Apache's consent. If the Independent Director is removed, resigns, or otherwise ceases to serve, then Fieldwood I shall select another Independent Director who is a Qualified Person from the Approved List.

The limited liability agreement will specify that the sole manager will have the right to control the business and operations of Fieldwood I at all times prior to the completion of the decommissioning of the Legacy Apache Properties owned by Fieldwood I, subject to compliance with the following covenants which can only be waived with Apache's consent:

1. Fieldwood I shall not have any business or operations other than operating the Legacy Apache Properties and decommissioning them;
2. Fieldwood I shall not purchase, sell, or farm-in any asset;
3. Except in compliance with item 4 immediately below, Fieldwood I shall not farm-out any asset;
4. If anyone makes an unsolicited proposal to farm in to any of the Legacy Apache Properties on fair market terms and conditions (including fair market rates of return), then Fieldwood I shall be obligated to market such farm-in opportunity and accept the highest and best offer for such farm-in opportunity as long as the transaction is accretive to Fieldwood I cashflow;
5. Fieldwood I shall not incur indebtedness for borrowed money other than under the Standby Facility (defined below);
6. Fieldwood I shall not use its free cash flow (after operating expenses) for any purposes other than fulfilling is obligations to Apache under the

#93441325v24
WEIL:\97575248\2\45327.0005

|  | Decommissioning Agreement (defined below) and the Standby Facility (defined below) until those obligations have been satisfied in full; <br> 7. Fieldwood I shall not amend its bylaws, limited liability agreement, or other organizational documents, and any effort to do so shall be ineffective for any purpose; <br> 8. Fieldwood I shall not engage in any activity or take any action outside the ordinary course of business; and <br> 9. Fieldwood I shall not dissolve, liquidate, or merge or consolidate with any other entity. |
|---|---|
| **Employee Matters** | Fieldwood shall provide Apache with a list of certain employees involved in the operation and management of the Legacy Apache Properties no later than one month after finalizing definitive documentation for the transactions reflected in this Term Sheet and shall make such employees available on a mutually agreed timeline to be interviewed by Apache for potential employment by Apache following the consummation of the Fieldwood I transaction. Apache shall have no obligation to hire any such employees. <br><br> Fieldwood is willing to consider assigning all or a portion of its existing decommissioning business, including separate P&A equipment and spreads, to Apache in connection with mutually agreeable resolution of Fieldwood I terms and based on Fieldwood II's residual business post-restructuring. Consummation of the transaction outlined herein shall not be conditioned on Apache's potential acquisition of such decommissioning business. |
| **Operations and Decommissioning Activities** | Fieldwood I shall hire an independent third-party service provider to perform all operations and decommissioning on behalf of Fieldwood I. The work to be performed by the independent service provider shall be bid out to not less than three (3) qualified candidate service providers, each with a minimum of five (5) years of relevant experience. The qualified bidder who bids the lowest price and best terms, in view of relevant experience, shall be selected as the initial service provider. To facilitate the transition process prior to selection of such service provider, upon the effectiveness of the plan of reorganization, Fieldwood I will enter into a transition services agreement with Fieldwood II to provide operational services for Fieldwood I and the initial service provider. Such transition services agreement may be terminated by Fieldwood I at any time. In the event the service provider must be removed (which may be done by the sole manager, but only with Apache's consent) and/or replaced or otherwise no longer serves, then the sole manager shall again bid out the work in accordance with the procedures outlined hereinabove. No later than 45 days after the Chapter 11 filing date (the "Petition Date"), Fieldwood may select with Apache's consent, which consent may be withheld by Apache in its sole discretion, certain properties (the "Retained Properties") for which Fieldwood II or its successors shall retain operatorship or ownership and operatorship.[1] Properties set forth on <u>Schedule A</u>, attached hereto, constitute the agreed-upon Retained Properties as of the date of this Term Sheet. With regard to ST 308 (identified as a Retained Property on <u>Schedule A</u>), |

---

[1] Properties comprise fields, onshore and offshore facilities, inventory, shore bases, and other assets in which Fieldwood has acquired an incremental working interest separate from the Apache acquisition or have an operational relationship to other Fieldwood properties and which will be operated by or owned and operated by the Fieldwood II or the Fieldwood deepwater business.

3

| | Fieldwood's interest in such property will be transferred to, or allocated through the divisional merger, and owned and operated by the party who owns the deepwater Katmai project upon effectiveness of Fieldwood's plan of reorganization, and the owner of such property shall provide Fieldwood I with a surety bond in a form acceptable to Fieldwood I securing the decommissioning obligations for the ST 308 lease and associated ROW(s) in the amount of $13.2 million. With regard to VR 78 and VR 362/371 (each identified as a Retained Property on <u>Schedule A</u>), Fieldwood's interest in such properties will remain with Fieldwood II and be owned and operated by Fieldwood II, and Fieldwood II shall assume the decommissioning obligations with respect to those properties. With regard to the four properties listed on <u>Schedule A</u> as "Operatorship" in which ownership will be retained by Fieldwood I, a joint operating agreement reasonably satisfactory to Apache will be put in place (or amended) which provides that Fieldwood I as non-operator will have the right to opt in or out of participation in any future capital spending or project related to a work-over or recompletion of an existing well on the property or the drilling of a new well on the property (a "New Project"). If Fieldwood I elects not to participate in accordance with the applicable joint operating agreement, Fieldwood II as Operator may fund (and, if so, it will indemnify Fieldwood I against costs and liabilities associated with) such New Project as an exclusive (sole risk) operation giving Fieldwood II sole right and obligation to any and all risk, costs, liabilities, downside, and upside from such New Project. Fieldwood I shall retain all of its rights and obligations relating to the property other than those rights and obligations created by the New Project. Services provided by Fieldwood II under such JOA will be billed to Fieldwood I at Fieldwood II's actual costs without any actual or allocated overhead or additional G&A charges.<br><br>Services provided by Apache or its third-party contractors to Fieldwood I will be billed to Fieldwood I at Apache's cost and according to typical industry practices under a joint operating agreement. |
|---|---|
| **Right to Fund Capital Expenditures** | Apache will have the right, but not the obligation, to fund any future capital expenditures related to projects forecast to increase production or cash flow on the Legacy Apache Properties ("Approved CapEx") upon terms and conditions mutually agreed between Apache and Fieldwood I.<br><br>At confirmation, to the extent it is formed or the equivalent entity exists, Fieldwood II and Fieldwood I will enter into a Joint Development Agreement ("JDA") whereby Fieldwood II has the right for two years to present capital projects to Fieldwood I relating to Legacy Apache Properties, which will give Fieldwood I, in Fieldwood I's sole discretion, the option to participate or decline participation under terms mutually agreed and set forth in the JDA. Also, if Fieldwood I intends to decommission a property that was producing at the time Fieldwood I was created, upon notice, Fieldwood II will have the option for a period of time to be agreed on by the parties to request to take over (in the form of participation or conveyance to Fieldwood II) such property in accordance with terms set forth in the JDA. Such request may be accepted or rejected by Fieldwood I in its sole discretion. |

#93441325v24
WEIL:\97575248\2\45327.0005

| Initial Capitalization | Fieldwood shall deposit into Fieldwood I an amount equal to $50 million minus the actual post-petition decommissioning spend by Fieldwood on the Legacy Apache Properties. |
|---|---|
| Additional Initial Funding Sources | In addition to Fieldwood's contribution above, Fieldwood I will be capitalized and funded as follows:<br><br>1) Any and all funds in Trust A shall be made available as described under "Assumption of Obligations" below and<br><br>2) Cash flow from the Legacy Apache Properties shall be reinvested and used for decommissioning activities, to fund Approved CapEx, and to repay amounts outstanding, if any, under the Standby Facility. |
| Assumption of Obligations | Fieldwood I shall continue to be responsible for all of Fieldwood's obligations under the Decommissioning Agreement dated as of September 30, 2013 among the Apache PSA Parties and the Fieldwood PSA Parties (as amended, the "Decommissioning Agreement") and the PSA, including all related contracts, and all contracts relating to insurance, surety bonds, letters of credit, and other decommissioning security assets and all other obligations relating to the Legacy Apache Properties (except to the extent reimbursement or indemnification obligations with respect to the surety bonds and letters of credit are discharged through the bankruptcy), but shall not be responsible for any other obligations of Fieldwood related to its other assets. However, if Fieldwood I is created in a manner other than a divisional merger and is not a residual entity from Fieldwood, Fieldwood I shall assume the same obligations described in the immediately preceding sentence, and Fieldwood and Apache will agree on a structure to complete the formation transaction consistent with the intent of this Term Sheet; provided that all necessary consents can be obtained in order to preserve all material rights of Apache under the material contracts described above, including the letters of credit and bonds issued to Apache in support of the Decommissioning Agreement. If the plan of reorganization confirmed by the bankruptcy court and the definitive documents contemplated herein are consistent with the terms herein unless otherwise agreed and grant Apache all the rights and protections provided for in this Term Sheet unless otherwise agreed, then Apache will waive any claims against the debtor based on any alleged prepetition breach of the Decommissioning Agreement or any related agreement and shall release any and all claims against the debtors and all other released parties under Fieldwood's plan of reorganization (and such releases shall be mutual with Apache benefiting as a released party under the plan) but only to the extent such releases do not impair the Decommissioning Security, or Apache's ability to draw on the Decommissioning Security, in any respect.<br><br>If (i) Fieldwood I defaults on its decommissioning obligations under the Decommissioning Agreement, (ii) any governmental authority or any other Person or entity seeks to cause Apache or its Affiliates to conduct decommissioning that is required in accordance with applicable Law or contract, and (iii) Apache conducts the decommissioning, it shall be done in a manner that entitles Apache to draw on cash in Trust A, the letters of credit, and the bonds currently outstanding, totaling approximately $736 million (the "Decommissioning Security") in reimbursement of such advances. Apache shall |

| | |
|---|---|
| | be entitled to draw at any time prior to completion of decommissioning of the Legacy Apache Properties should certain letters of credit or bonds of the Decommissioning Security not be renewed in a manner consistent in all respects with the existing terms of such letters of credit or bonds, and, if drawn in such manner, such funds shall be contributed to Trust A. Fieldwood I shall take any action reasonably requested by Apache to entitle Apache to draw on the Decommissioning Security as contemplated in this Term Sheet and shall not take any position in any proceeding or otherwise inconsistent with Apache's ability to draw on the Decommissioning Security. |
| **Standby Facility** | After the Decommissioning Security has been exhausted or is not available to pay or reimburse Apache for decommissioning, Fieldwood I will have the right to borrow from Apache the funds required to perform decommissioning on the Legacy Apache Properties via a line of credit (the "Standby Facility"). The Standby Facility shall have a first lien on all the assets of Fieldwood I. Cash advanced shall earn interest at 400 basis points (4% per annum) over the interest rate of Apache's then most recently issued bonds. All principal and interest will be paid in cash from the first available free cash flow of Fieldwood I following each loan. Additional customary terms and conditions TBD. The first lien shall also secure Fieldwood I's obligations to Apache under the Decommissioning Agreement. The Standby Facility shall mature at completion of all decommissioning activities. |
| **Beneficiaries of the Fieldwood I** | Fieldwood has the right to designate who shall receive ownership interests entitling the holder to any assets remaining in Fieldwood I after decommissioning is complete and the Standby Facility is repaid. Such interests may be distributed by Fieldwood (consistent with the rules of priority and as may be negotiated under the plan) upon confirmation of Fieldwood's plan of reorganization or as otherwise agreed thereafter but shall thereafter be non-transferable on the books and records of Fieldwood I, it being the goal of all parties that Fieldwood I will not be a reporting entity for SEC purposes and such ownership interests in Fieldwood I shall not be registered or traded on any exchange. Apache understands and agrees that the restructuring transactions currently contemplated by the RSA (defined below) do not provide for the DIP Lenders or the pre-petition FLTL Lenders becoming beneficial owners of Fieldwood I. |
| **Fieldwood's Plan of Reorganization** | Apache will support a Fieldwood Chapter 11 plan of reorganization which provides for the Fieldwood I structure outlined herein and will execute a restructuring support agreement ("RSA") consistent with the terms herein evidencing same. The RSA shall provide that Apache shall have consent rights over all definitive documents related to the Fieldwood I structure outlined herein, and over the portions of the plan of reorganization and the confirmation order that provide for and approve the Fieldwood I structure outlined herein. The RSA shall contain customary termination rights. |
| **Post-Petition Decommissioning Activity** | The DIP Budget shall provide Fieldwood with reasonable funds to accomplish the following during the pendency of the Chapter 11 cases, as it pertains to the Legacy Apache Properties: |

#93441325v24
WEIL:\97575248\2\45327.0005

|  |  |
|---|---|
|  | 1) Maintain and operate the properties as a reasonably prudent operator in the ordinary course of business, |
|  | 2) Maintain all of the assets in their current condition, subject to the Post-Petition Decommissioning Budget (defined below), and insurance upon such assets in amounts and kinds comparable to pre-petition coverage, and |
|  | 3) Perform decommissioning activities consistent with the Decommissioning Agreement in accordance with a budget agreed to in advance between Fieldwood and Apache (the "Post-Petition Decommissioning Budget"), the total amount of which budget shall not be greater than $50 million during the pendency of the case, assuming an emergence by March 31, 2021. In the event of emergence later than March 31, 2021, Fieldwood and Apache shall (i) work in good faith to agree upon an extended Post-Petition Decommissioning Budget and (ii) in such event, if (a) Fieldwood has insufficient operating income from the Legacy Apache Properties to perform any required decommissioning within respect to any Legacy Apache Property, after mutually agreed upon capital expenditures, and (b) any governmental authority or any other Person or entity causes Apache or its Affiliates to conduct decommissioning that is required in accordance with applicable Law or contract, then Apache will conduct or cause to be conducted such decommissioning in accordance with the terms of the Decommissioning Agreement. |
| **Expense Reimbursement** | Fieldwood will pay up to $4,000,000 of reasonable and documented fees and expenses of Apache related to the formation of Fieldwood I and Fieldwood's restructuring; provided that such fees and expenses shall only be payable so long as Apache is a party to the RSA. |
| **Other Matters** | Briarlake office sublease to be renegotiated (i) to reflect current market rates for remainder of sublease term; and (ii) to reflect reduced square-footage consistent with the scale and business functions of Fieldwood II or its successors as a result of the Chapter 11 plan of reorganization).<br><br>Fieldwood and Apache shall negotiate mutually agreeable definitive documentation for the transactions reflected in this Term Sheet within 45 days of the Petition Date. Additionally, Apache acknowledges and agrees that the definitive documentation implementing the transactions contemplated under this Term Sheet shall be subject to grant of holders of consent rights as set forth in the RSA, including certain DIP and FLTL Lenders consent rights, which approval shall not be unreasonably withheld, it being understood that good faith negotiations with respect to matters not addressed in this Term Sheet shall not be considered unreasonably withholding approval. |
| **Effectiveness** | The transactions contemplated by this Term Sheet, and as set forth in definitive documentation, shall (i) require that the Decommissioning Agreement and related agreements will not be rejected by the debtor during the Chapter 11 case, and such obligations shall be allocated to, and remain the obligations of, Fieldwood I upon |

7

|  | the consummation of the plan and the divisional merger contemplated herein, (ii) preserve all Apache's rights with respect to Trust A, the net profits interests, and the letters of credit and bonds issued to Apache under the Decommissioning Agreement, and (iii) become effective on the consummation of Fieldwood's plan of reorganization. |
|---|---|

8

## Schedule A: Retained Properties

| Field | Classification |
|---|---|
| ST 308 | Ownership and Operatorship |
| GI 110/116 | Operatorship |
| GI 43 | Operatorship |
| ST 53/67/68 | Operatorship |
| MC 109 | Operatorship |
| VR 78 | Ownership and Operatorship |
| VR 362/371 | Ownership and Operatorship |

**<u>Exhibit 1</u>**

**Certificate of Conversion (DE) (FWE)**

# STATE OF DELAWARE
## CERTIFICATE OF CONVERSION
## FROM A DELAWARE LIMITED LIABILITY COMPANY
## TO A NON-DELAWARE ENTITY
## PURSUANT TO SECTION 18-216 OF
## THE LIMITED LIABILITY COMPANY ACT

1.) The name of the Limited Liability Company is _____
Fieldwood Energy LLC _____.

   (If changed, the name under which it's certificate of formation was originally
   filed: _____ )

2.) The date of filing of its original certificate of formation with the Secretary of
State is 11/5/2012 _____.

3.) The jurisdiction in which the business form, to which the limited liability company
shall be converted, is organized, formed or created is Texas _____.

4.) The conversion has been approved in accordance with this section;

5.) The limited liability company may be served with process in the State of Delaware in
any action, suit or proceeding for enforcement of any obligation of the limited liability
company arising while it was a limited liability company of the State of Delaware, and
that it irrevocably appoints the Secretary of State as its agent to accept service of process
in any such action, suit or proceeding.

6.) The address to which a copy of the process shall be mailed to by the Secretary of State
is

CAPITOL CORPORATE SERVICES, INC.
206 E. 9TH STREET, SUITE 1300 AUSTIN, TX 78701

In Witness Whereof, the undersigned have executed this Certificate of Conversion on this
_____ day of _____, A.D. _____.

By: _____
                 Authorized Person

Name: _____
                 Print or Type

**Exhibit 2**

**Certificate of Conversion (TX) (FWE)**

**STATE OF TEXAS**
**CERTIFICATE OF CONVERSION**
**OF A**
**DELAWARE LIMITED LIABILITY COMPANY**
**TO A**
**TEXAS LIMITED LIABILITY COMPANY**

This Certificate of Conversion (this "Certificate"), dated as of [●], 2021, has been duly executed and is being filed by Fieldwood Energy LLC, a Delaware limited liability company, to convert to Fieldwood Energy LLC, a Texas limited liability company under Section 10.102 of the Texas Business Organizations Code (the "TBOC").

1.  The name of the converting entity is Fieldwood Energy LLC, a Delaware limited liability company (the "Converting Entity").

2.  The jurisdiction of formation of the Converting Entity is the State of Delaware and the date of formation of the Converting Entity is November 5, 2012.

3.  The Converting Entity is converting from a limited liability company formed under the laws of the State of Delaware to a Texas limited liability company formed under the laws of the State of Texas. The name of the Texas limited liability company is "Fieldwood Energy LLC" (the "Company").

4.  The file number issued to the Converting Entity by the Secretary of State is 0801715506.

5.  The plan of conversion (the "Plan") as required under Section 10.103 of the TBOC is attached hereto as Exhibit A.

6.  The Certificate of Formation of the Company is attached to the Certificate of Conversion as Exhibit A to the Plan.

7.  The Plan has been approved as required by the laws of the jurisdiction of formation and the governing documents of the Converting Entity.

8.  The Company will be responsible for the payment of any required franchise taxes of the Converting Entity.

9.  This document shall become effective upon its acceptance and filing by the Secretary of State of the State of Texas.

IN WITNESS WHEREOF, the undersigned has executed this Certificate as of the date first above written.

FIELDWOOD ENERGY LLC

By: _____
     Name: [●]
     Title:  [●]

## Exhibit A

**Plan of Conversion**

See attached.

**Exhibit 3**

**Plan of Conversion (TX) (FWE)**

# PLAN OF CONVERSION
## OF
### Fieldwood Energy LLC
### (a Delaware limited liability company)
## INTO
### Fieldwood Energy LLC
### (a Texas limited liability company)

Adopted on [●], 2021

Pursuant to the provisions of Section 18-216 of the Delaware Limited Liability Company Act and Section 10.103 of the Texas Business Organizations Code, Fieldwood Energy LLC, a Delaware limited liability company ("Fieldwood"), hereby adopts the following Plan of Conversion:

1. The name of the converting entity is "Fieldwood Energy LLC", a Delaware limited liability company, and the name of the converted entity is "Fieldwood Energy LLC", a Texas limited liability company (the "Company").

2. Fieldwood is continuing its existence in the organizational form of a Texas limited liability company.

3. The Company is to be a limited liability company under the laws of the State of Texas.

4. 100% of the membership interests of Fieldwood outstanding immediately prior to the conversion shall by virtue of the conversion and without any action on the part of the holders thereof, automatically be converted into 100% of the issued and outstanding membership interests of the Company.

5. The conversion shall become effective upon (a) the filing and acceptance of a Certificate of Conversion with the Secretary of State of the State of Texas and (b) the filing and acceptance of a Certificate of Conversion with the Secretary of State of the State of Delaware.

6. The Company will be responsible for the payment of all fees and franchise taxes and will be obligated to pay such fees and taxes if they are not timely paid.

7. Attached as Exhibit A to this Plan of Conversion is the Texas Certificate of Formation of the Company.

8. The Plan of Conversion has been approved as required by the laws of the Corporation's jurisdiction of formation and governing document.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned has executed this Plan of Conversion as of the date first written above.

**FIELDWOOD ENERGY LLC**

By: _____
Name:    [●]
Title:    [●]

# EXHIBIT A

## CERTIFICATE OF FORMATION

*See attached.*

**Exhibit 4**

**Certificate of Formation (TX) (FWE)**

**Form 205**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $300**



This space reserved for office use.

### Certificate of Formation
### Limited Liability Company

## Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

FIELDWOOD ENERGY LLC
_____
The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

## Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete either A or B and complete C.)

☒ A. The initial registered agent is an organization (cannot be entity named above) by the name of:

CAPITOL CORPORATE SERVICES, INC.
_____
**OR**
☐ B. The initial registered agent is an individual resident of the state whose name is set forth below:

_____
_First Name_              _M.I._        _Last Name_                    _Suffix_

C. The business address of the registered agent and the registered office address is:

206 E. 9TH STREET, SUITE 1300          AUSTIN                      TX      78701
_Street Address_                        _City_                    _State_  _Zip Code_

## Article 3—Governing Authority
(Select and complete either A or B and provide the name and address of each governing person.)

☐ A. The limited liability company will have managers. The name and address of each initial manager are set forth below.

☒ B. The limited liability company will not have managers. The company will be governed by its members, and the name and address of each initial member are set forth below.

| GOVERNING PERSON 1 |
|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) |
| **IF INDIVIDUAL** |
| |
| _First Name_          _M.I._          _Last Name_                              _Suffix_ |
| **OR** |
| **IF ORGANIZATION** |
| |
| FIELDWOOD ENERGY INC. |
| _Organization Name_ |
| **ADDRESS** |

| 2000 W. SAM HOUSTON PKWY S., SUITE 1200 | HOUSTON | TX | USA | 77042-3623 |
|---|---|---|---|---|
| _Street or Mailing Address_ | _City_ | _State_ | _Country_ | _Zip Code_ |

Form 205                                        4

| GOVERNING PERSON 2 |
|---|

**NAME** (Enter the name of either an individual or an organization, but not both.)

    **IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|

**OR**

    **IF ORGANIZATION**

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|

| GOVERNING PERSON 3 |
|---|

**NAME** (Enter the name of either an individual or an organization, but not both.)

    **IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|

**OR**

    **IF ORGANIZATION**

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

### Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

The entity is formed under a plan of conversion. The name of the converting entity is Fieldwood Energy LLC. The address of the converting entity is 2000 W. Sam Houston Pkwy. S., Suite 1200, Houston, Texas 77042. The converting entity was formed on 11/5/2012 under the laws of the State of Delaware, USA. The converting entity was previously a Delaware limited liability company. The converting entity is registered as a foreign entity under the Texas Secretary of State file number 0801715506.

## Organizer

The name and address of the organizer:

_____
*Name*


_____
*Street or Mailing Address*                    *City*                    *State*    *Zip Code*

### Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☒ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

the filing of the certificate of conversion of Fieldwood Energy LLC with the Secretary of State of Texas .

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date: _____


_____
Signature of organizer


_____
Printed or typed name of organizer

**Exhibit 5**

**Agreement and Plan of Merger (TX) (FWE)**

# AGREEMENT AND PLAN OF MERGER
## OF
## FIELDWOOD ENERGY LLC
## INTO
## FIELDWOOD ENERGY I LLC
## AND
## FIELDWOOD ENERGY III LLC

This AGREEMENT AND PLAN OF MERGER, dated as of [●], 2021 (this "Plan of Merger"), is adopted by Fieldwood Energy LLC, a Texas limited liability company ("FWE").

WHEREAS, commencing August 3, 2020, FWE and certain other affiliates of FWE (each, a "Debtor" and collectively, the "Debtors") filed voluntary petitions with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") initiating their respective cases pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") styled *In re Fieldwood Energy LLC, et al.*, jointly administered under Case No. 20-33948 (MI) (each case of a Debtor, a "Case" and collectively, the "Chapter 11 Cases");

WHEREAS, in connection with the Chapter 11 Cases, the Debtors filed the [*Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* at Docket No. [●]] (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Plan of Reorganization"), which was confirmed by order of the Bankruptcy Court entered on [●], 2021 at Docket No. [●] (as may be amended, modified, and supplemented, the "Confirmation Order");

[WHEREAS, in accordance with the Plan of Reorganization and Confirmation Order, pursuant to the Credit Bid Purchase Agreement certain assets and properties of the Debtors (defined in the Plan of Reorganization as the "Credit Bid Acquired Interests") were sold and conveyed to, and certain liabilities and obligations of Debtors (defined in the Plan of Reorganization as the "Credit Bid Assumed Liabilities") were assumed by, FWE II prior to the Effective Time (the "Credit Bid Transaction");]

WHEREAS, pursuant to the Plan of Reorganization, and as authorized by the Confirmation Order, FWE converted from a Delaware limited liability company to a Texas limited liability company on [●], 2021;

WHEREAS, pursuant to the Plan of Reorganization, and as authorized by the Confirmation Order, FWE is to effect a divisional merger as set forth in this Plan of Merger (the "Merger"), pursuant to which, among other things:

a) FWE shall maintain its separate existence and continue as a surviving entity under the name "Fieldwood Energy III LLC" (as such entity exists from and after the Effective Time, "FWE III");

b) a new Texas limited liability company shall be formed under the name "Fieldwood Energy I LLC" ("FWE I");

    c)   all of the FWE I Assets (as defined below) shall be allocated to, possessed by, and vested in FWE I, and all of the FWE I Obligations (as defined below) shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE I;

    d)   all of the assets of FWE (other than the FWE I Assets and the Credit Bid Acquired Assets) shall be allocated to, possessed by, and vested in FWE III; and

    e)   all of the liabilities and obligations of FWE (other than the FWE I Obligations and the Credit Bid Assumed Liabilities) shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE III; and

WHEREAS, this Plan of Merger has been authorized by the Confirmation Order, which provides such approval of the transactions contemplated hereby as required for purposes of Sections 10.001, 10.002, and 10.302 of the Texas Business Organizations Code (the "TBOC"), and, in accordance with Section 10.008 of TBOC, the Merger shall be consummated without any transfer or assignment having occurred.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, and for the purpose of prescribing the terms and conditions of the Merger, the mode of carrying it into effect, the manner and basis of allocating ownership interests of each of the resulting entities and such other details and provisions of the Merger as are deemed necessary or desirable, FWE has agreed and covenanted, and does hereby agree and covenant, as follows:

1.     Subject to the provisions of this Plan of Merger, FWE shall cause the Merger to be consummated by filing a certificate of merger with the Secretary of State of the State of Texas in such form as is required by, and executed in accordance with, the relevant provisions of the TBOC, in substantially the form attached as Exhibit A (the "Certificate of Merger"), together with a certificate of formation of FWE I in substantially the form attached as Exhibit B. The Certificate of Merger shall provide that the Merger shall be effective on the date the Certificate of Merger is accepted and filed with the Secretary of State of the State of Texas (the "Effective Time").

2.     At the Effective Time:

    (a)   FWE shall be divisionally merged in accordance with the TBOC with (i) FWE I being formed as a Texas limited liability company separate from FWE III and continuing as a surviving business entity of the Merger as to the FWE I Assets and the FWE I Obligations in accordance with the TBOC under the name "Fieldwood Energy I LLC" and (ii) FWE continuing as a surviving business entity of the Merger as to all assets and liabilities of FWE (other than the FWE I Assets, the FWE I Obligations, the Credit Bid Acquired Assets, and the Credit Bid Assumed Liabilities) in accordance with the TBOC under the name "Fieldwood Energy III LLC." The Merger will have the effect set forth below and in Section 10.008 of the TBOC.

    (b)   There shall be no change (through conversion, exchange, or otherwise) to the membership interests of FWE, which membership interest in FWE III will continue to be owned by Fieldwood Energy Inc. as of immediately following the Effective Time.

WEIL:\97614386\42\45327.0007

(c)     All of the membership interests of FWE I shall be owned by Fieldwood Energy Inc. as of immediately following the Effective Time

(d)     All of the rights, assets, and properties of FWE described in <u>Part A</u> of <u>Schedule I</u> attached hereto (the "<u>FWE I Assets</u>") shall be allocated to, possessed by, and vested in FWE I without reversion or impairment, without further act or deed, and without transfer or assignment having occurred.

(e)     All of the liabilities and obligations of FWE described in <u>Part B</u> of <u>Schedule I</u> attached hereto (the "<u>FWE I Obligations</u>") shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE I. For the avoidance of doubt, the FWE I Obligations exclude all Credit Bid Assumed Liabilities (including all Closing Date Payables and all FWE II Retained Properties Payables).

(f)     All of the rights, assets, and properties of FWE other than the FWE I Assets and the Credit Bid Acquired Assets (collectively, the "<u>FWE III Assets</u>"), including (i) those rights, assets, and properties of FWE described in <u>Part A</u> of <u>Schedule II</u> attached hereto (collectively, the "<u>Wind Down Assets</u>") and (ii) those rights, assets, and properties described in <u>Part A</u> of <u>Schedule III</u> (collectively, the "<u>Predecessor Assets</u>"), shall be allocated to, possessed by, and vested in FWE III without reversion or impairment, without further act or deed, and without transfer or assignment having occurred.

(g)     All of the liabilities and obligations of FWE other than the FWE I Obligations and the Credit Bid Assumed Liabilities (collectively, the "<u>FWE III Obligations</u>"), including (i) all liabilities and obligations to the extent relating to the Wind Down Assets and all liabilities and obligations described in <u>Part B</u> of <u>Schedule II</u> attached hereto (collectively, the "<u>Wind Down Obligations</u>"), (ii) all of the liabilities and obligations of FWE retained by FWE upon consummation of the Credit Bid Transaction, as well as (except as provided in <u>Section 3(b)(i)</u>) obligations of FWE under the Credit Bid Purchase Agreement, and (iii) all liabilities and obligations relating to the Predecessor Assets and all liabilities and obligations described in <u>Part B</u> of <u>Schedule III</u> attached hereto (collectively, the "<u>Predecessor Obligations</u>"), shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE III.

3.     <u>Post-Merger Covenants</u>.

(a)     Each of FWE I and FWE III shall, at any time and from time to time from and after the Effective Time as and when requested by FWE I or FWE III, or by their respective successors or assigns, execute and deliver, or cause to be executed and delivered in its name by its authorized officers, all such conveyances, transfers, deeds, or other instruments as FWE I or FWE III, as applicable, or such successors or assigns, may reasonably deem necessary in order to evidence (i) the allocation to and vesting in FWE I of the FWE I Assets, and the allocation to and vesting in FWE I of, and the liability and obligation of FWE I for, the FWE I Obligations as a result of the Merger and (ii) the allocation to and vesting in FWE III of the FWE III Assets, and the allocation to and vesting in FWE III of, and the liability and obligation of FWE III for, the FWE III Obligations as a result of the Merger.  Without limiting the foregoing, FWE III shall take such actions as necessary to effect a transfer from **[insert applicable bank account]** to an account

designated in writing by FWE I of (i) the FWE I Cash Amount, (ii) the FWE I Suspense Funds, and (iii) the Prepaid JIB Cash Amount.

(b)    From and after the Effective Time (i) FWE I shall, and shall cause the FWE I Subsidiaries controlled by FWE I to, perform the obligations of FWE under Section [●][1] of the Credit Bid Purchase Agreement with respect to Closing Accounts Receivable to the extent attributable to FWE I Assets or any assets held by such FWE I Subsidiaries as of the Effective Time (provided FWE I shall have no obligation to incur any cost or expense in performing such obligations) and (ii) FWE III shall, and shall cause its subsidiaries to, perform the obligations of FWE under Section [●] of the Credit Bid Purchase Agreement with respect to Closing Accounts Receivable to the extent attributable to FWE III Assets or any assets held by subsidiaries of FWE III as of the Effective Time.

4.    As a result of the consummation of the Merger in accordance with this Plan of Merger, FWE I shall only be allocated, shall only possess, and shall only be vested in and receive the FWE I Assets, and shall only be allocated and vested in, shall only possess, and shall only be subject to the FWE I Obligations, and FWE I shall have no rights or obligations relating to any of the FWE III Assets or the FWE III Obligations, except as may be expressly set forth in Section 6 or a separate agreement, which is entered into at or after the Effective Time, between FWE I and FWE III with respect to such other Assets or Obligations; and FWE I shall not be deemed to be a predecessor in interest to any of the FWE III Assets or the FWE III Obligations.

5.    As a result of the consummation of the Merger in accordance with this Plan of Merger, FWE III shall only be allocated, shall only possess, and shall only be vested in and receive the FWE III Assets and shall only be allocated and vested in, shall only possess, and shall only be subject to the FWE III Obligations, and FWE III shall have no rights or obligations relating to any of the FWE I Assets or the FWE I Obligations, except as may be expressly set forth in Section 6 or in a separate agreement, which is entered into at or after the Effective Time, between FWE III and FWE I with respect to such other Assets or Obligations; and FWE III shall not be deemed to be a predecessor in interest to any of the FWE I Assets or the FWE I Obligations.

6.    If immediately prior to the Effective Time, FWE owned an interest or right in assets (other than Predecessor Oil and Gas Properties or Wind Down Oil and Gas Properties) which FWE did not acquire under or pursuant to the Apache PSA and which[2], immediately prior to the Effective Time, was used in connection with or held for use in connection both with (a) FWE I Oil and Gas Properties or FWE I Rights of Way, on the one hand, and any of (b)(i) Wind Down Oil and Gas Properties or Wind Down Rights of Way or (ii) Predecessor Oil and Gas Properties or Predecessor Rights of Way, on the other hand (individually, a "Fieldwood Joint Use Property" and, collectively, the "Fieldwood Joint Use Properties"), then FWE I shall own such Fieldwood Joint Use Property as an FWE I Asset and such Fieldwood Joint Use Property shall not be a Wind

---

[1] **Note to Draft**:  This is to reference the provision of the Credit Bid Purchase Agreement providing for collection of Closing Accounts Receivable post sale to FWE II.

[2] **Note to Draft**:  FWE confirming there are no Legacy Apache Assets that are also used for any other interests/assets. To the extent any Legacy Apache Assets are also used for any other interests/assets, such assets will be identified and will either be added to the assets governed by Section 6 or FWE I and FWE III will enter into a letter agreement regarding the joint use of such assets consistent with Section 6 or as otherwise agreed to by FWE I and FWE III.

Down Asset or a FWE III Asset or owned by FWE III; provided, however, that FWE III shall have, and FWE I shall provide FWE III with, access, use, and economic benefit with respect to such Fieldwood Joint Use Property to the extent, and only to the extent, such Fieldwood Joint Use Property was used or held for use in connection with the applicable Wind Down Oil and Gas Properties, Wind Down Rights of Way, Predecessor Oil and Gas Properties, or Predecessor Rights of Way immediately prior to the Effective Time; provided, further, that any obligation or liability incurred by FWE I to the extent arising from, related to, or connected with such access, use, or economic benefit by or on behalf of FWE III, (1) shall not constitute an FWE I Obligation, (2) shall be FWE III Obligations and the obligations and liabilities of FWE III, and (3) FWE III shall indemnify and hold harmless FWE I and the FWE Subsidiaries from and against all such obligations and liabilities allocated to FWE III pursuant to this <u>Section 6</u>.

7.    <u>Certain Definitions</u>. As used herein and in the Schedules and Exhibits attached hereto, (i) the terms set forth below have the meanings ascribed to such terms below and (ii) the terms defined in the Schedules and Exhibits attached hereto have the meanings ascribed to such terms in such Schedules and Exhibits.

(a)    "<u>Apache</u>" means Apache Corporation, a Delaware corporation.

(b)    "<u>Apache PSA</u>" means that certain Purchase and Sale Agreement, dated as of July 18, 2013, by and among Apache, Apache Deepwater LLC, Apache Shelf, Inc., Apache Shelf Exploration LLC, GOM Shelf, and FWE, as amended from time to time, and the transaction documents executed in connection therewith.

(c)    "<u>Asset</u>" means any individual asset, property, right, or interest in any of the FWE I Assets or the FWE III Assets; "<u>Assets</u>" means, collectively, the FWE I Assets and the FWE III Assets.

(d)    "<u>Bankruptcy Code</u>" has the meaning ascribed to such term in the recitals hereto.

(e)    "<u>Bankruptcy Court</u>" has the meaning ascribed to such term in the recitals hereto.

(f)    "<u>Case</u>" has the meaning ascribed to such term in the recitals hereto.

(g)    "<u>Casualty</u>" means an event in which any portion of the Assets is damaged or destroyed or otherwise impaired by fire, explosion, tornado, hurricane, earthquake, earth movement, flood, water damage, or other similar casualty or is taken in condemnation or under right of eminent domain.

(h)    "<u>Certificate of Merger</u>" has the meaning ascribed to such term in <u>Section 1</u> hereto.

(i)    "<u>Chapter 11 Cases</u>" has the meaning ascribed to such term in the recitals hereto.

(j) "<u>Closing Accounts Receivable</u>" has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

(k) "<u>Closing Date Payable</u>" has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

(l) "<u>Confirmation Order</u>" has the meaning ascribed to such term in the recitals hereto.

(m) "<u>Contract</u>" means any contract, lease, license, purchase order, sales order, indenture, note, bond, loan, instrument, obligation, promise, grant, or other agreement, arrangement, understanding or commitment, whether or not in written form, that is binding upon a Person or its property.

(n) "<u>Conveyed</u>" means conveyed, assigned, or sold pursuant to the Apache PSA, regardless of whether such conveyance, assignment, or bill of sale was recorded in the appropriate records of, or approved or recognized by, the applicable Governmental Authority.

(o) "<u>Credit Bid Acquired Interests</u>" has the meaning ascribed to such term in the recitals hereto.

(p) "<u>Credit Bid Assumed Liabilities</u>" has the meaning ascribed to such term in the recitals hereto.

(q) "<u>Credit Bid Purchase Agreement</u>" means the Purchase and Sale Agreement, **[dated [●], [●], by and among FWE, [FWE Affiliates] and FWE II]**.

(r) "<u>Credit Bid Transaction</u>" has the meaning ascribed to such term in the recitals hereto.

(s) "<u>Debtor</u>" and "<u>Debtors</u>" has the meaning ascribed to such term in the recitals hereto.

(t) "<u>Decommissioning</u>" has the meaning ascribed to such term in the Decommissioning Agreement.

(u) "<u>Decommissioning Agreement</u>" has the meaning ascribed to such term <u>clause (xix)</u> in <u>Part A</u> of <u>Schedule I</u> attached hereto.

(v) "<u>Effective Time</u>" has the meaning ascribed to such term in <u>Section 1</u> hereto.

(w) "<u>Environmental Laws</u>" means, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. ("<u>CERCLA</u>"); the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq.; the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.; the Clean Air Act, 42 U.S.C. § 7401 et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. § 5101 et seq.; the Toxic Substances Control Act, 15 U.S.C. §§ 2601 through 2629; the Oil Pollution Act, 33 U.S.C. § 2701 et seq.; the Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11001 et seq.; the Endangered Species Act, 16 U.S.C.

WEIL:\97614386\42\45327.0007

§ 1531 et seq.; and the Safe Drinking Water Act, 42 U.S.C. §§ 300f through 300j, in each case as amended in effect as of the Effective Time, and all similar laws in effect as of the Effective Time of any Governmental Authority having jurisdiction over the property in question addressing pollution, protection of the environment, biological resources, Hazardous Substances, or P&A Obligations.

(x)     "Environmental Liabilities" means any and all damages, remediation, obligations, liabilities, environmental response costs, costs to cure, cost to investigate or monitor, restoration costs, costs of remediation or removal, settlements, penalties, fines, and attorneys' and consultants fees and expenses arising out of or related to any violations or non-compliance with any Environmental Laws, including any contribution obligation under CERCLA or any other Environmental Law or matters incurred or imposed pursuant to any claim or cause of action by a Governmental Authority or other Person, attributable to any environmental liabilities, any Release of Hazardous Substances, or any other environmental condition with respect to the ownership or operation of the Assets, including conditions of Facilities not in compliance with Laws promulgated by the Bureau of Ocean Energy Management ("BOEM"), the Bureau of Safety and Environmental Enforcement ("BSEE"), or the United States Coast Guard.

(y)     "Facilities" means the FWE I Facilities, the Wind Down Facilities, or the Predecessor Facilities, as applicable.

(z)     "Fieldwood Joint Use Property" has the meaning ascribed to such term in Section 6 hereto.

(aa)     "FWE" has the meaning ascribed to such term in the recitals hereto.

(bb)     "FWE I" has the meaning ascribed to such term in the recitals hereto.

(cc)     "FWE I Assets" has the meaning ascribed to such term in Section 2(d) hereto.

(dd)     "FWE I Cash Amount" has the meaning ascribed to such term in clause (xxiii) of Part A of Schedule I hereto.

(ee)     "FWE I Contracts" has the meaning ascribed to such term in clause (x) in Part A of Schedule I attached hereto.

(ff)     "FWE I Facilities" has the meaning ascribed to such term in clause (iii) in Part A of Schedule I attached hereto.

(gg)     "FWE I Lands" has the meaning ascribed to such term in clause (i) in Part A of Schedule I attached hereto.

(hh)     "FWE I Leases" has the meaning ascribed to such term in clause (i) in Part A of Schedule I attached hereto.

(ii)     "FWE I Permits" has the meaning ascribed to such term in clause (vi) in Part A of Schedule I attached hereto.

WEIL:\97614386\42\45327.0007

(jj)    "FWE I Obligations" has the meaning ascribed to such term in <u>Section 2(e)</u> hereto.

(kk)    "FWE I Rights of Way" has the meaning ascribed to such term in <u>clause (v)</u> in <u>Part A</u> of <u>Schedule I</u> attached hereto.

(ll)    "FWE I Subsidiaries" means GOM Shelf and the other entities listed on <u>Exhibit I-I</u>.

(mm)    "FWE I Units" has the meaning ascribed to such term in <u>clause (i)</u> in <u>Part A</u> of <u>Schedule I</u> attached hereto.

(nn)    "FWE I Wells" has the meaning ascribed to such term in <u>clause (ii)</u> in <u>Part A</u> of <u>Schedule I</u> attached hereto.

(oo)    "FWE II" means **[insert Buyer under the Credit Bid Purchase Agreement]**.

(pp)    "FWE II Retained Properties" has the meaning ascribed to such term in <u>Part A</u> of <u>Schedule I</u> attached hereto.

(qq)    "FWE II Retained Properties Payables" has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

(rr)    "FWE III" has the meaning ascribed to such term in the recitals hereto.

(ss)    "FWE III Assets" has the meaning ascribed to such term in <u>Section 2(f)</u> hereto.

(tt)    "FWE III Obligations" has the meaning ascribed to such term in <u>Section 2(g)</u> hereto.

(uu)    "GOM Shelf" means GOM Shelf LLC, a Delaware limited liability company.

(vv)    "GOM Shelf Oil and Gas Properties" means the ownership interests held by GOM Shelf immediately prior to the closing of the transactions under the Apache PSA in (i) the oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in Hydrocarbons in place and mineral interests or servitudes of every nature in, on, under, and that may be produced from or attributable to any of the lands covered by such leases, subleases, interests, and rights, whether legal or equitable, vested or contingent, and regardless of whether the same are expired or terminated, including those described on <u>Exhibit I-A</u> attached hereto that are identified as GOM Shelf Leases thereon (collectively, the "<u>GOM Shelf Leases</u>"), (ii) all pooled, communitized, or unitized acreage that includes all or part of any GOM Shelf Leases (the "<u>GOM Shelf Units</u>"), (iii) all tenements, hereditaments, and appurtenances belonging to the GOM Shelf Leases and the GOM Shelf Units (collectively with the GOM Shelf Leases and GOM Shelf Units, the "<u>GOM Shelf</u>

Lands"), and (iv) any and all Hydrocarbon, water, CO2, injection wells or other wells completed on, drilled from, or otherwise located, in whole or in part, on, under, or within the GOM Shelf Lands, in each case whether producing, non-producing, shut in, or permanently or temporarily Plugged and Abandoned, including the wells set forth on Exhibit I-B attached hereto that are identified as GOM Shelf Wells thereon and all wellbores spudded prior to the Effective Time located on the GOM Shelf Lands (the "GOM Shelf Wells"); for the avoidance of doubt, (x) the GOM Shelf Oil and Gas Properties shall not include any of the FWE II Retained Properties, (y) the GOM Shelf Lands shall include only the ownership interests therein held by GOM Shelf immediately prior to the closing of the transactions under the Apache PSA and the descriptions in Exhibit I-A shall reference only such ownership interests, and (z) the GOM Shelf Wells shall include only the ownership interests therein held by GOM Shelf immediately prior to the closing of the transactions under the Apache PSA and the descriptions in Exhibit I-B shall reference only such ownership interests.

(ww) "GOM Shelf Properties" means those assets or properties owned by GOM Shelf.

(xx) "Governmental Authority" means any federal, state, municipal, tribal, local, or similar governmental authority, regulatory, or administrative agency, court, or arbitral body, or any subdivision of any of the foregoing.

(yy) "Hazardous Substances" means any pollutant, contaminant, dangerous or toxic substance, hazardous or extremely hazardous substance or chemical, or otherwise hazardous material or waste defined as "hazardous waste", "hazardous substance" or "hazardous material" under applicable Environmental Laws, including chemicals, pollutants, contaminants, wastes, or toxic substances that are classified as hazardous, toxic, radioactive, or otherwise are regulated by, or form the basis for Liability under, any applicable Environmental Law, including hazardous substances under CERCLA.

(zz) "Hydrocarbons" means oil and gas and other hydrocarbons produced or processed in association therewith (regardless of whether such item is in liquid or gaseous form), or any combination thereof, and any minerals (whether in liquid or gaseous form) produced in association therewith, including all crude oil, gas, casinghead gas, condensate, natural gas liquids, and other gaseous or liquid hydrocarbons (including ethane, propane, iso-butane, nor-butane, gasoline, and scrubber liquids) of any type and chemical composition.

(aaa) "Imbalance" means any over-production, under-production, over-delivery, under-delivery, or similar imbalance of Hydrocarbons produced from or allocated to the FWE I Assets or the FWE III Assets, as applicable, regardless of whether such over-production, under-production, over-delivery, under-delivery, or similar imbalance arises at the wellhead, pipeline, gathering system, transportation system, processing plant, or other location, including any imbalances under gas balancing or similar agreements, imbalances under processing agreements, and imbalances under gathering or transportation agreements.

9

(bbb)  "Implementation Cost Cap" shall be an amount equal to $[●].[3]

(ccc)  "Interim Unpaid P&A Expenses" has the meaning ascribed to such term in clause (ix) in Part B of Schedule I attached hereto.

(ddd)  "JIB Advance AR" has the meaning ascribed to such term in clause (xvi) in Part A of Schedule I attached hereto.

(eee)  "Laws" means all laws (including common law), statutes, rules, regulations, ordinances, orders, decrees, requirements, judgments, and codes of Governmental Authorities.

(fff)  "Merger" has the meaning ascribed to such term in the recitals hereto.

(ggg)  "Obligation" means any individual liability or obligation in any of the FWE I Obligations or the FWE III Obligations; "Obligations" means, collectively, the FWE I Obligations and the FWE III Obligations.

(hhh)  "P&A Obligations" means any and all obligations, liabilities, damages, losses, and claims arising out of or attributable to the payment or performance of all Plugging and Abandonment.

(iii)  "Person" means any individual, corporation, partnership, limited liability company, trust, estate, Governmental Authority, or any other entity.

(jjj)  "Plan Effective Date" means the date on which the [Plan of Reorganization/Confirmation Order becomes effective].

(kkk)  "Plan of Merger" has the meaning ascribed to such term in the recitals hereto.

(lll)  "Plan of Reorganization" has the meaning ascribed to such term in the recitals hereto.

(mmm)  "Plugging and Abandonment" and "Plug and Abandon" and its derivatives mean all plugging, replugging, abandonment, re-plugging and re-abandonment, equipment removal, disposal, or restoration associated with the properties and assets included in or burdened by the FWE I Assets or the FWE III Assets, as applicable, including all plugging and abandonment, removal, dismantling, decommissioning, surface and subsurface restoration, site clearance, and disposal of the FWE I Wells, the Wind Down Wells, or the Predecessor Wells, as applicable, or the FWE I Facilities, the Wind Down Facilities, and the Predecessor Facilities, as applicable, well cellars, fixtures, platforms, caissons, flowlines, pipelines, structures, and personal property of whatever kind located on or under, related to, or associated with operations and activities conducted by whomever with respect to each of the FWE I Assets and the FWE III Assets, as applicable, the flushing, pickling, burial, removal, and capping of all associated flowlines, field

---

[3] Note to Draft:  Implementation Costs Cap amount to be inserted once determined in accordance with Section 4 of the Apache Term Sheet Implementation Agreement.

transmission and gathering lines, pit closures, the restoration of the surface, site clearance, any disposal of related waste materials and Hazardous Substances and obligations to obtain plugging exceptions for any of the FWE I Wells, the Wind Down Wells, and the Predecessor Wells, as applicable, with a current plugging exception, all in accordance with all applicable Laws, the terms and conditions of each of the FWE I Leases, the Wind Down Leases, and the Predecessor Leases, as applicable, or similar leasehold interests, beneficial interests, easements and the FWE I Leases, the Wind Down Leases, and the Predecessor Leases, as applicable.

(nnn)  "Predecessor Assets" has the meaning ascribed to such term in Section 2(f) hereto.

(ooo)  "Predecessor Contracts" has the meaning ascribed to such term in clause (x) in Part A of Schedule III attached hereto.

(ppp)  "Predecessor Facilities" has the meaning ascribed to such term in clause (iii) in Part A of Schedule III attached hereto.

(qqq)  "Predecessor Lands" has the meaning ascribed to such term in clause (i) in Part A of Schedule III attached hereto.

(rrr)  "Predecessor Leases" has the meaning ascribed to such term in clause (i) in Part A of Schedule III attached hereto.

(sss)  "Predecessor Obligations" has the meaning ascribed to such term in Section 2(g) hereto.

(ttt)  "Predecessor Oil and Gas Properties" has the meaning ascribed to such term in clause (ii) in Part A of Schedule III attached hereto.

(uuu)  "Predecessor Permits" has the meaning ascribed to such term in clause (vi) in Part A of Schedule III attached hereto.

(vvv)  "Predecessor Rights of Way" has the meaning ascribed to such term in clause (v) in Part A of Schedule III attached hereto.

(www) "Predecessor Suspense Funds" has the meaning ascribed to such term in clause (xvii) in Part A of Schedule III attached hereto.

(xxx)  "Predecessor Units" has the meaning ascribed to such term in clause (i) in Part A of Schedule III attached hereto.

(yyy)  "Predecessor Wells" has the meaning ascribed to such term in clause (ii) in Part A of Schedule III attached hereto.

(zzz)  "Prepaid JIB Cash Amount" has the meaning ascribed to such term in clause (xvi) in Part A of Schedule I attached hereto.

WEIL:\97614386\42\45327.0007

(aaaa) "Proprietary Seismic Data" means any and all proprietary Seismic Data owned (but not licensed) by FWE related to the FWE I Assets and/or the FWE III Assets.

(bbbb) "Records" means all books, records, files, data, information, drawings, maps, corporate, financial, tax, and legal data and records to the extent (and only to the extent) related to the FWE I Assets, the FWE I Obligations, the FWE III Assets, and/or the FWE III Obligations, as applicable, including electronic copies of all computer records where available, contract files, lease files, well logs, division order files, title opinions and other title information (including abstracts, evidences of rental payments, maps, surveys, and data sheets), hazard data and surveys, production records, SEMS Documentation and Procedures, Proprietary Seismic Data, engineering files, and environmental records.

(cccc) "Release" means any discharge, emission, spilling, leaking, pumping, pouring, injecting, dumping, burying, leaching, migrating, abandoning, or disposing into or through the environment of any Hazardous Substance, including the abandonment or discarding of barrels, containers, and other closed receptacles containing any Hazardous Substance.

(dddd) "Royalties" means all rentals, minimum royalties, shut in payments, royalties, overriding royalties, reversionary interests, net profits interests, production payments, carried interests, non-participating royalty interests, reversionary interests, and other royalty burdens and other interests payable out of production of Hydrocarbons from or allocated to the FWE I Oil and Gas Properties, the GOM Shelf Oil and Gas Properties, the Wind Down Oil and Gas Properties, or the Predecessor Oil and Gas Properties, as applicable, or the proceeds thereof to third parties.

(eeee) "Seismic Data" means any and all seismic, geological, geochemical, and geophysical data (including core and fluid samples and other engineering, geological, and/or geophysical studies (including seismic data, studies, and information)), all licensed or proprietary or confidential geologic, seismic, geophysical, and interpretative data, records, and analyses, including any and all interpretations, derivative data, and other work products of any of the foregoing, and other similar information and records, in each case relating to the Assets or the regional area surrounding the Assets.

(ffff) "SEMS Documentation and Procedures" means all documents and procedures in place by FWE to comply with BSEE's Safety and Environmental Management System (SEMS) 30 CFR 250 Subpart S with respect to the FWE I Assets and/or the FWE III Assets.

(gggg) "Standby Facility" means a secured line of credit to be provided by Apache to FWE I and GOM Shelf to fund the ongoing Plugging and Abandonment of the Legacy Apache Properties (as such term is defined in the FWE I LLC Agreement) and the GOM Shelf Properties, which shall become available to advance funds to FWE I and for use in accordance with the Standby Credit Facility Documents. The Standby Facility shall be secured by a first-priority lien on all the assets of FWE I (including all of the equity interests of GOM Shelf) and on all the GOM Shelf Properties, provided that such lien shall also secure the obligations of FWE I to Apache under the Decommissioning Agreement.

(hhhh) "Standby Credit Facility Documents" means the Standby Loan Agreement, to be entered into promptly after the Effective Time, by and between FWE I and GOM Shelf, as borrowers, and Apache, as lender, and all of the other agreements, documents, and instruments related thereto governing or setting forth terms and conditions of the Standby Facility or of the loans/borrowings made thereunder.

(iiii) "Suspense Funds" means any and all funds held in suspense by FWE at the Effective Time, and any interest accrued in escrow accounts for such suspended funds.

(jjjj) "TBOC" has the meaning ascribed to such term in the recitals hereto.

(kkkk) "Wind Down Assets" has the meaning ascribed to such term in Section 2(f) hereto.

(llll) "Wind Down Contracts" has the meaning ascribed to such term in clause (x) in Part A of Schedule II attached hereto.

(mmmm) "Wind Down Facilities" has the meaning ascribed to such term in clause (iii) in Part A of Schedule II attached hereto.

(nnnn) "Wind Down Lands" has the meaning ascribed to such term in clause (i) in Part A of Schedule II attached hereto.

(oooo) "Wind Down Leases" has the meaning ascribed to such term in clause (i) in Part A of Schedule II attached hereto.

(pppp) "Wind Down Obligations" has the meaning ascribed to such term in Section 2(g) hereto.

(qqqq) "Wind Down Oil and Gas Properties" has the meaning ascribed to such term in clause (ii) in Part A of Schedule II attached hereto.

(rrrr) "Wind Down Permits" has the meaning ascribed to such term in clause (vi) in Part A of Schedule II attached hereto.

(ssss) "Wind Down Rights of Way" has the meaning ascribed to such term in clause (v) in Part A of Schedule II attached hereto.

(tttt) "Wind Down Suspense Funds" has the meaning ascribed to such term in clause (xvii) in Part A of Schedule II attached hereto.

(uuuu) "Wind Down Units" has the meaning ascribed to such term in clause (i) in Part A of Schedule II attached hereto.

(vvvv) "Wind Down Wells" has the meaning ascribed to such term in clause (ii) in Part A of Schedule II attached hereto.

8.     <u>Choice of Law</u>.  This Plan of Merger shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Texas and without regard to any borrowing statute that would result in the application of the statutes of limitations or repose of any other jurisdiction.  In furtherance of the foregoing, the laws of the State of Texas will control even if under such jurisdiction's choice of law or conflict of law analysis, the substantive or procedural law of some other jurisdiction would ordinarily or necessarily apply.

9.     <u>FWE III Obligation to Pay Recording Expenses</u>. Subject to the Implementation Costs Cap, FWE III shall, and shall cause its debtor affiliates in the Chapter 11 Cases to, on the Plan Effective Date, provide for the payment of any and all documentary, filing, recording, stamp, and registration fees, costs, taxes, and expenses (including all reasonable and documented attorneys' fees and regulatory consultant fees) incurred or imposed after the Effective Time in connection with the filing of record by or on behalf of FWE I or GOM Shelf of any instrument or instruments with the appropriate records office of any county, parish, state, federal, or other governmental unit (including BOEM) that may be required in connection with the implementation of the Merger or that either FWE I or GOM Shelf determines in its respective sole discretion to be necessary or appropriate to reflect in the appropriate records of any governmental unit that as a result of the Merger (a) ownership of the FWE I Assets have been allocated to and are vested in FWE I (and to the extent appropriate to reflect ownership of the GOM Shelf Properties in  GOM Shelf), and (b) the liabilities and obligations to be allocated to and vested in, respectively, FWE I or FWE III pursuant to the Merger have been allocated to and vested in, and constitute liabilities and obligations of, FWE I and FWE III, respectively (collectively, the "<u>Implementation Costs</u>"). For the avoidance of doubt, the documentary, filing, recording, stamp, and registration fees of FWE I or GOM Shelf shall include such costs and expenses required to file or to cause to be filed of record in the records office, as determined by Apache to be appropriate, of any county, parish, state, federal, or other governmental unit (including BOEM) of the mortgages, security interests, and similar security documentation as is contemplated by the Standby Facility and the Standby Facility Documents to secure the obligations of FWE I and GOM Shelf thereunder.  Any Implementation Costs that exceed the Implementation Costs Cap shall be the sole responsibility of and paid for by FWE I.

10.     <u>Interpretation</u>. The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof.  As used herein, the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation" and will not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.  Words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Plan of Merger as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.  All Exhibits and Schedules annexed hereto or referred to in this Plan of Merger are hereby incorporated in and made a part of this Plan of Merger as if set forth in full in this Plan of Merger, and definitions therein shall apply herein.  Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein will be defined as set forth in this Plan of Merger, and vice-versa.  A reference to any legislation or to any provision of any legislation shall include any modification or re-enactment thereof, any legislative provision substituted therefor, and all regulations and statutory instruments issued thereunder or pursuant thereto.

WEIL:\97614386\42\45327.0007

11.    <u>Rejected Contracts</u>.    Any Contract rejected pursuant to Section 365 of the Bankruptcy Code in the Chapter 11 Cases shall be deemed to be excluded and removed from any Exhibit or Schedule attached hereto, and any such Contract shall not be allocated to any of FWE I or FWE III, and any liabilities or obligations of such Contract shall be treated in accordance with the Plan of Reorganization and Confirmation Order or otherwise satisfied, compromised, settled, released, or discharged pursuant to the Plan of Reorganization and Confirmation Order.

\* \* \* \* \* \*

IN WITNESS WHEREOF, the undersigned has duly executed this Plan of Merger as of the date first written above.

**FIELDWOOD ENERGY LLC**,
a Texas limited liability company

By: _____
Name:
Title:

**Exhibit A**

**Certificate of Merger**

[see attached]

**<u>Exhibit B</u>**

**Certificate of Formation – FWE I**

[see attached]

**Schedule I** [4]

**FWE I Assets and FWE I Obligations**

Part A:

"FWE I Assets" means all of FWE's right, title, and interest in, to, or under the following, less and except any FWE II Retained Properties:

(i)     the ownership interests Conveyed[5] to FWE pursuant to the Apache PSA in the oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in or to Hydrocarbons in place and mineral interests or servitudes of every nature, in, on, under, and that may be produced from or attributable to any of the lands covered by such leases, subleases, interests, and rights, whether legal or equitable, vested or contingent, and regardless of whether the same are expired or terminated, including those described on Exhibit I-A attached hereto that are identified as FWE I Leases thereon (collectively, the "FWE I Leases"), together with all pooled, communitized, or unitized acreage that includes all or part of any of the FWE I Leases (the "FWE I Units"), and all tenements, hereditaments, and appurtenances belonging to the FWE I Leases and the FWE I Units (collectively with the FWE I Leases and FWE I Units, the "FWE I Lands"); for the avoidance of doubt, the FWE I Lands shall only include the ownership interests therein Conveyed to FWE pursuant to the Apache PSA and the descriptions in Exhibit I-A shall only reference such ownership interests;

(ii)     the ownership interests Conveyed to FWE pursuant to the Apache PSA in any and all Hydrocarbon, water, $CO_2$, injection, disposal wells or other wells completed on, drilled from, or otherwise located, in whole or in part,[6] on, under, or within the FWE I Lands, in each case whether producing, non-producing, shut in, or temporarily or permanently Plugged and Abandoned, including the wells set forth on Exhibit I-B attached hereto that are identified as FWE I Wells thereon and all wellbores spudded prior to the Effective Time located on the FWE I Lands (the "FWE I Wells" and, together with the FWE I Leases and the FWE I Units, but excluding the FWE II Retained Properties, the "FWE I Oil and Gas Properties"); for the avoidance of doubt, the FWE I Wells shall only include the ownership interests therein Conveyed to FWE pursuant

---

[4] **Note to Draft**: In the event an asset not included on the schedules hereto is identified after the parties have agreed to the final form of this Plan of Merger, but prior to the Effective Time, subject to the agreement of the parties, the applicable schedule shall be updated to include and provide for the allocation of such asset.

[5] **Note to Draft**: Any additional interests in the FWE I Assets acquired by FWE other than under the Apache PSA ("Add-On Interests") are to be identified by FWE and if, upon being identified, Apache agrees to the inclusion of such interest in the FWE I Assets Schedule I will be modified to include such interests and if Apache does not agree then such interests will be allocated to and vested in FWE III to the extent held by FWE as of the Effective Time.

[6] **Note to Draft**: FWE to confirm whether there are any wells that are not Legacy Apache Properties that would otherwise fall within this description, and, if so, expressly exclude those wells and allocate them to FWE III.

to the Apache PSA and the descriptions in <u>Exhibit I-B</u> shall only reference such ownership interests;

(iii)    all platforms and facilities, including all associated processing systems, buildings, compressors, meters, tanks, machinery, tools, personal property, equipment (including spars, trees, PLETs, jumpers, flowlines, risers, umbilicals, control assemblies, and production handling equipment), pipelines, gathering lines, water lines, tank batteries, pipeline capacity, other water gathering, transportation, or disposal infrastructure and equipment, frac tanks, ponds, metering facilities, interconnections, and other inventory, boats, vehicles, fixtures, improvements, and other property (whether real, immovable, personal, movable, mixed or otherwise) that (a) are located on or appurtenant to any of the FWE I Leases, the FWE I Lands, the FWE I Rights of Way, the FWE I Wells, or the GOM Shelf Oil and Gas Properties, (b) are used or held for use in whole or in part in connection with any of the FWE I Wells or the GOM Shelf Wells and the operation of any of the FWE I Leases, or the GOM Shelf Leases (whether located on or appurtenant to any of the FWE I Leases, the FWE I Lands, the FWE I Rights of Way, the FWE I Wells, the GOM Shelf Leases, the GOM Shelf Lands, the GOM Shelf Wells, or stored at a different location (onshore or offshore)), or (c) were acquired by FWE pursuant to the Apache PSA, but in such event only as to the interests so acquired by FWE under and pursuant to such Apache PSA, and such flowlines, pipelines, gathering lines, and/or pipeline capacity that either (1) are used or held for use in whole or in part in connection with any of the FWE I Leases, the FWE I Wells or the FWE I Units operations or the production, transportation, or processing of Hydrocarbons produced from any of the FWE I Oil and Gas Properties, or (2) were acquired by FWE pursuant to the Apache PSA, but in such event only as to the interests so acquired by FWE under and pursuant to such Apache PSA, including all platforms identified on <u>Exhibit I-C(i)</u> attached hereto and all facilities identified on <u>Exhibit I-C(ii)</u> attached hereto (the "<u>FWE I Facilities</u>");

(iv)    the Proprietary Seismic Data and licensed Seismic Data relating, in whole or in part, to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties;[7]

(v)    all surface fee interests, easements, right-of-use easements, licenses, servitudes, rights-of-way, surface leases, authorizations, permits,  and other rights to use the surface or seabed appurtenant to, and held for use in whole or in part in connection with, the ownership or operation of any or all of the GOM Shelf Oil and Gas Properties or any or all of the properties, rights, titles, and interests described in clauses (i) through (iii) and (vi) of this <u>Schedule I</u>, <u>Part A</u>, but only to the extent such either (i) are used or held for use exclusively in connection with the ownership or operation of such properties, rights, titles, and interests, or (ii) were acquired by FWE pursuant to the Apache PSA, but in such event only as to the interests so acquired by FWE under and pursuant to such Apache PSA, including the property described on <u>Exhibit I-D(i)</u> attached hereto and <u>Exhibit I-D(ii)</u> attached hereto (the "<u>FWE I Rights of Way</u>");

(vi)    all environmental and other governmental (whether federal, state, or local) permits (including all plans filed with or approved by applicable Government Authorities), licenses, orders, authorizations, franchises, and related instruments or rights to the extent relating in whole or in part to the ownership, operation, or use of any or all of the GOM Shelf Oil and Gas Properties

---

[7] **Note to Draft**:  No proprietary seismic (remains under review).

or any or all of the properties, rights, titles, and interests described in clauses (i) through (iii), (v) and (viii) of this Schedule I, Part A (the "FWE I Permits");[8]

(vii)    Service Agreement, dated April 1, 2015, applicable to Firm Transportation Service under FT-2 Rate Schedule by and between Discovery Gas Transmission LLC as Transporter and Fieldwood Energy LLC as Shipper;

(viii)    all Hydrocarbons in, on, under, or that may be produced from or attributable to the FWE I Leases, the FWE I Units, or the FWE I Wells, including all oil, condensate, and scrubber liquids inventories and ethane, propane, iso-butane, nor-butane, and gasoline inventories of FWE from the FWE I Oil and Gas Properties in storage or constituting linefill and Imbalances;

(ix)    the FCC licenses associated with the call signs listed on Exhibit I-E attached hereto;[9]

(x)    all contracts, agreements, leases, licenses, commitments, sales and purchase orders, and other instruments that relate, in whole or in part, to the ownership or operation of any or all of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties (and including any insurance contract if such insurance contract provides coverage for any incident that occurs on any FWE I Asset(s) or the GOM Shelf Oil and Gas Properties at, before, or after the Effective Time, but excluding all derivative or hedge agreements (including any ISDAs) or rights thereunder) or any other properties, rights, titles, and interests described in the clauses of this Schedule I, Part A, including operating agreements, unitization, pooling, and communitization agreements, declarations and orders, area of mutual interest agreements, exploration agreements, joint venture agreements, farmin and farmout agreements, exchange agreements, purchase and sale agreements, and other contracts relating to the FWE I Assets (but expressly excluding any such agreements pursuant to which FWE acquired interests in or to any other FWE I Assets in addition to the rights, title, and interests acquired by FWE under the Apache PSA), transportation agreements, agreements for the sale and purchase of Hydrocarbons, processing agreements, and service agreements (together with the agreements referenced in clause (xxii) below), including the contracts listed on Exhibit I-F attached hereto (the "FWE I Contracts");

(xi)    originals of the Records that relate, in whole or in part, to any one or more of the FWE I Assets, the FWE I Obligations, or the GOM Shelf Oil and Gas Properties (whether or not such Records also relate to any one or more of the FWE III Obligations or the FWE III Assets);

(xii)    inventory, equipment, machinery, tools, and other personal property, to the extent located on the FWE I Facilities or, if located elsewhere, used or held for use, in whole or part, in connection with the FWE I Oil and Gas Properties, the FWE I Facilities, or the GOM Shelf Oil and Gas Properties, or charged to the joint account pursuant to the applicable FWE I Contracts, including those items listed on Exhibit I-G attached hereto;

---

[8] **Note to Draft**:  To be determined if there are Permits used for the FWE I Assets and also FWE III such that FWE III will need to obtain its own permits.

[9] **Note to Draft**:  To include licenses for GOM Shelf if not held by GOM Shelf directly.  FWE confirming there are only 5 licenses relating to all of the FWE I and GOM Shelf properties.

(xiii)  FWE-owned SCADA equipment and all automation systems, including meters and related telemetry, licensed radio frequencies, and associated communications infrastructure including towers, antennas, data links, and network circuits used or held for use, in whole or in part, in connection with the FWE I Oil and Gas Properties, the FWE I Facilities, or the GOM Shelf Oil and Gas Properties, or for the production of Hydrocarbons therefrom;

(xiv)  all deposits with third parties, escrow accounts, guarantees, letters of credit, treasury securities, insurance policies relating, in whole or in part, to the FWE I Assets, surety bonds, all Oil Spill Financial Responsibility coverage (whether consisting of one or more insurance policies) and other forms of credit assurances or credit support provided by a third party for the benefit of FWE for financial assurance for the obligations and liabilities arising out of or related to the FWE I Assets, the GOM Shelf Oil and Gas Properties, or GOM Shelf, including the Plugging and Abandonment Obligations arising out of or related to the FWE I Assets or the GOM Shelf Oil and Gas Properties, including those items listed on Exhibit I-H attached hereto;

(xv)  all agreements and memberships relating, in whole or in part, to well containment/control, clean-up of spills, or other pollution, or the gathering of data relating to certifications required to be made to Governmental Authorities with respect to the FWE I Assets or GOM Shelf Oil and Gas Properties;[10]

(xvi)  all (i) accounts receivable as of the Effective Time associated with the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties other than the Closing Accounts Receivable, (ii) instruments and general intangibles (as such terms are defined in the Uniform Commercial Code of the applicable jurisdictions in which the FWE I Oil and Gas Properties or GOM Shelf Oil and Gas Properties to which such assets relate are located) and other economic benefits in each case attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties (excluding only the Closing Accounts Receivable); *provided*, that, for the avoidance of doubt, nothing in the preceding clauses (i) or (ii) shall be interpreted to limit the scope of "Closing Accounts Receivable" as that term is defined in the Credit Bid Purchase Agreement, (iii) claims of indemnity, contribution, or reimbursement of FWE or of GOM Shelf, in each case, relating to the FWE I Obligations or obligations of GOM Shelf, (iv) Imbalances receivables of FWE or of GOM Shelf, in each case, attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, (v) rights to insurance proceeds or other claims of recovery, indemnity, contribution, or reimbursement of FWE attributable to the FWE I Assets or the GOM Shelf Oil and Gas Properties due to casualty or other damage or destruction of or to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, (vi) cash in the amount of advance payments on account of third party working interest owners in the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties ("Prepaid JIB Cash Amount"), to the extent such Prepaid JIB Cash Amount is associated with FWE I Obligations, and (vii) rights to receive and collect cash and advance payments pursuant to cash calls associated with the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties ("JIB Advance AR"), to the extent such JIB Advance AR is associated with FWE I Obligations;

---

[10] **Note to Draft**:  There are not any memberships that are specific to the FWE I Assets; may need new agreements. Under further review.

(xvii) all Suspense Funds (i) of FWE to the extent attributable to any of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, and (ii) of GOM Shelf (collectively, "FWE I Suspense Funds");

(xviii) all equity interests set forth on Exhibit I-I ("FWE I Subsidiaries");

(xix) the Decommissioning Agreement, dated as of September 30, 2013, by and among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, FWE and GOM Shelf LLC, as amended by (i) the First Amendment thereto, dated as of September 30, 2013, (ii) the Second Amendment thereto, dated as of September 30, 2013, (iii) the Third Amendment thereto, dated effective as of April 25, 2017, (iv) the Fourth Amendment thereto dated effective as of September 1, 2017, as amended by that certain Letter Agreement, dated January 3, 2018, and (v) the Fifth Amendment thereto, dated effective as of April 11, 2018 (the "Decommissioning Agreement");

(xx) the Apache PSA and the transaction documents entered into in connection with the consummation of the transactions contemplated thereby, including the Joint Exploration Agreement (as defined in the Apache PSA), the Master Facilities Use, Access, Production Handling and Transportation Agreement (as defined in the Apache PSA), and the Fully Paid Up Turnkey Removal Contract (as defined in the Apache PSA);

(xxi) all rights [**to the BOEM qualification held by FWE immediately prior to the Effective Time and its BOEM operator number (GOM #3295), and**][11] all area-wide operator bonds, supplemental bonds, or other securities, or any authorization or permission from, the BOEM, BSEE, or any other Governmental Authority, held by FWE (a) in whole or in part for any FWE I Assets (which, for the avoidance of doubt, include all rights of FWE in any area-wide bonds)[12] or (b) with respect to GOM Shelf, in whole or in part for any of the GOM Shelf Oil and Gas Properties;

(xxii) beneficial ownership of The Trust established by that certain Fieldwood Decommissioning Trust A Trust Agreement dated September 30, 2013;

(xxiii) cash in an amount (the "FWE I Cash Amount") equal to $50.0 million minus the sum of (a) the actual cash expenditures paid by FWE for Plugging and Abandonment costs and expenses on the FWE I Assets between the filing on August 3, 2020 of the Chapter 11 Cases and the Effective Time and (b) the actual cash payments made by FWE between January 4, 2021 and the Effective Time to the individual engaged as the sole manager of FWE I;

(xxiv) the Fieldwood Joint Use Properties as specified in Section 6 of the Plan of Merger; and

---

[11] **Note to Draft**: Now that FWE I is no longer the surviving entity under the divisive merger, to confirm whether BOEM qualification will be permitted to "vest" in FWE I or whether FWE I will be required to obtain its own qualification separate from FWE's qualification (which will inure to FWE III instead).

[12] **Note to Draft**: to confirm if area-wide bonds will be permitted to be split between FWE I and FWE III per the divisive merger. If not and FWE I gets such bonds, then FWE III may need to post its own separate area-wide bonds. Who will pay for such?

(xxv) the specific interests in and to the wells, pipelines, platforms, and facilities set forth on Exhibit I-K which were acquired or assumed by FWE as a result of co-owner actions under applicable joint or unit operating agreements or as a result of a recalculation determined in accordance with the terms of a FWE I Contract, and such interests will be deemed to be included in the FWE I Leases, FWE I Units, FWE I Lands , FWE I Wells , FWE I Facilities , and FWE I Rights-of-Way, as applicable.[13]

For the avoidance of doubt, the FWE I Assets do not include any of the leases, rights of way, or other assets specified in Exhibit I-J[14] attached hereto (such assets, collectively, the "FWE II Retained Properties"), which FWE II Retained Properties were conveyed to FWE II pursuant to the Credit Bid Purchase Agreement, and the FWE I Obligations shall not include any obligations attributable to such FWE II Retained Properties.

Part B:

"FWE I Obligations" means (A) all of the obligations and liabilities (contractual or otherwise) of FWE, without duplication, of any kind, character, or description (whether known or unknown, accrued, absolute, contingent, or otherwise) relating to, arising out of, or with respect to any of the FWE I Assets, the GOM Shelf Oil and Gas Properties, or FWE I's ownership interest in GOM Shelf, including obligations and liabilities of FWE:  (i) relating to the furnishing of makeup gas according to the terms of applicable gas sales, gathering, or transportation FWE I Contracts and all obligations with respect to Imbalances arising out of, related to, or attributable to FWE I's ownership interests in any of the FWE I Oil and Gas Properties or in GOM Shelf; (ii) with respect to Royalties arising out of, related to, or attributable to any of the FWE I Oil and Gas Properties, FWE I Suspense Funds, and Prepaid JIB Cash Amounts, including any reporting and/or mis-reporting, and payment and/or mis-payment of such Royalties, FWE I Suspense Funds, or Prepaid JIB Cash Amounts; (iii) constituting or related to Environmental Liabilities arising out of, related to, or attributable to any of the FWE I Assets; (iv) applicable to or imposed on the lessee, owner, operator, holder, responsible party, payor or designated applicant under or with respect to any of the FWE I Assets or GOM Shelf Oil and Gas Properties; (v) constituting or relating to any and all P&A Obligations related to FWE I's or GOM Shelf's, as the case may be, ownership interests in, or operation of,  any of the FWE I Assets or GOM Shelf Oil and Gas Properties; (vi) relating to the FWE I Suspense Funds; (vii) relating to the Decommissioning Agreement and the Decommissioning obligations thereunder; (viii) relating to the Apache PSA or any of the agreements entered into in connection with the consummation of the transactions contemplated

---

[13] **Note to Draft**:  If the parties agree to include Add-On Interests in the FWE I Assets, Exhibit I-K will be added to specifically identify the interests agreed upon to be included.  If the parties do not agree to include Add-On Interests in the FWE I Assets, item (xxv) will be deleted.

[14] **Note to Draft**:  Exhibit I-J should list as FWE II Retained Properties the properties included in the fields which are identified to be owned and operated by FWE II on Schedule A to the Term Sheet dated July 31, 2020.  **[NTD: per HAK**, FWE to confirm these properties consist of only the following properties: Oil and Gas Lease bearing Serial No. OCS-G 21685 covering South Timbalier 308, Oil and Gas Lease bearing Serial No. OCS-G24987 covering South Timbalier 287, Oil and Gas Lease bearing Serial No. OCS-G10687 covering Vermilion 287, Oil and Gas Lease bearing Serial No. OCS-G09522 covering Vermilion 363, Oil and Gas Lease bearing Serial No. OCS-G09524 covering Vermilion 371, Oil and Gas Lease bearing Serial No. OCS-G04421 covering Vermilion 78, Right of Way bearing Serial No. OCS-G29427 for Pipeline Segment No. 20278 pertaining to South Timbalier 308, and Right of Way bearing Serial No. OCS-G15047 for Pipeline Segment No. 10675 pertaining to Vermilion 371].

thereby, including the Joint Exploration Agreement (as defined in the Apache PSA), the Master Facilities Use, Access, Production Handling and Transportation Agreement (as defined in the Apache PSA), and the Fully Paid Up Turnkey Removal Contract (as defined in the Apache PSA); and (ix) expenses incurred by FWE for Plugging and Abandonment costs and expenses on the FWE I Assets between the filing on August 3, 2020, of the Chapter 11 Cases and the Effective Time to the extent not paid as of the Effective Time (such incurred but unpaid expenses, the "Interim Unpaid P&A Expenses"); and (B) the obligations of FWE I under Section 3(b)(i) of the Plan of Merger; provided, however, that, subject to the foregoing clause (B), the FWE I Obligations do not include (1) any of the FWE III Obligations, (2) any of the Credit Bid Assumed Liabilities, (3) obligations for personal injury or damage to property arising from the ownership or operation of any property that is not included in the FWE I Assets or GOM Shelf Oil and Gas Properties, and (4) any claims, liabilities, or obligations satisfied, compromised, settled, released, or discharged pursuant to the Plan of Reorganization and Confirmation Order.

Schedule I – FWE Wind Down
WEIL:\97614386\42\45327.0007

**Schedule II**[15]

**Wind Down Assets and Wind Down Obligations**

Part A:

"Wind Down Assets" means all of FWE's right, title, and interest in, to, or under the following, subject to Section 6 of the Plan of Merger:

(i)     the oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in and to Hydrocarbons in place and mineral interests or servitudes of every nature, in, on, under, and that may be produced from or attributable to any of the lands covered by the leases, subleases, interests, and rights described on Exhibit II-A attached hereto, whether legal or equitable, vested or contingent, and regardless of whether the same are expired or terminated (collectively, the "Wind Down Leases"), together with all pooled, communitized, or unitized acreage that includes all or part of any of the Wind Down Leases (the "Wind Down Units"), and all tenements, hereditaments, and appurtenances belonging to the Wind Down Leases and the Wind Down Units (collectively with the Wind Down Leases and Wind Down Units, the "Wind Down Lands");

(ii)    any and all Hydrocarbon, water, CO2, injection, disposal  wells or other wells located on, under, or within the Wind Down Lands described on Exhibit II-B attached hereto, in each case whether producing, non-producing, shut-ins, or temporarily or permanently Plugged and Abandoned, including the wells set forth on Exhibit II-B attached hereto and all wellbores spudded prior to the Effective Time located on the Wind Down Lands (the "Wind Down Wells" and, together with the Wind Down Leases and Wind Down Units, the "Wind Down Oil and Gas Properties");

(iii)    all platforms and facilities, including all associated processing systems, buildings, compressors, meters, tanks, machinery, tools, personal property, equipment (including spars, trees, PLETs, jumpers, flowlines, risers, umbilicals, control assemblies, and production handling equipment), pipelines, gathering lines, water lines, tank batteries, pipeline capacity, other water gathering, transportation, or disposal infrastructure and equipment, frac tanks, ponds, metering facilities, interconnections, and other inventory, boats, vehicles, fixtures, improvements, and other property (whether real, immovable, personal, movable, and mixed or otherwise) that is located on or appurtenant to any of the Wind Down Leases, the Wind Down Lands, the Wind Down Rights of Way, or the Wind Down Wells or used or held for use exclusively in connection with any of the Wind Down Wells and the operation of any of the Wind Down Leases (whether located on or appurtenant to any of the Wind Down Leases, the Wind Down Lands, the Wind Down Rights of Way, or the Wind Down Wells, or stored at a different location (onshore or offshore)), and such flowlines, pipelines, gathering lines, and/or pipeline capacity that are used or held for use exclusively in connection with any of the Wind Down Leases, the Wind Down

---

[15] **Note to Draft**:  In the event an asset not included on the schedules hereto is identified after the parties have agreed to the final form of this Plan of Merger, but prior to the Effective Time, subject to the agreement of the parties, the applicable schedule shall be updated to include and provide for the allocation of such asset.

Wells, or the Wind Down Units operations or the production, transportation, or processing of Hydrocarbons produced from any of the Wind Down Oil and Gas Properties, including all platforms identified on Exhibit II-C(i) attached hereto and all facilities identified on Exhibit II-C(ii) attached hereto, but excluding any FWE I Facilities (the "Wind Down Facilities");

(iv)    Proprietary Seismic Data and licensed Seismic Data relating exclusively to the Wind Down Oil and Gas Properties;

(v)    all surface fee interests, easements, right-of-use easements, licenses, servitudes, rights-of-way, surface leases, authorizations, permits, and other rights to use the surface or seabed appurtenant to, and used or held for use exclusively in connection with, the ownership or operation of any or all of the properties, rights, titles, and interests described in clauses (i) through (iii) and (vi) of this Schedule II, Part A, including the property described on Exhibit II-D(i) attached hereto and Exhibit II-D(ii) attached hereto (the "Wind Down Rights of Way");

(vi)    all environmental and other governmental (whether federal, state, or local) permits (including all plans filed with or approval by applicable Governmental Authorities), licenses, orders, authorizations, franchises, and related instruments or rights relating exclusively to the ownership, operation, or use of the properties, rights, titles, and interests described in clauses (i) through (iii), (v) and (viii) of this Schedule II, Part A (the "Wind Down Permits");

(vii)    all transportation agreements described on Exhibit II-F attached hereto;[16]

(viii)    all Hydrocarbons in, on, under, or that may be produced from or attributable to the Wind Down Leases, the Wind Down Units, or the Wind Down Wells, including all oil, condensate, and scrubber liquids inventories and ethane, propane, iso-butane, nor-butane, and gasoline inventories of FWE from the Wind Down Oil and Gas Properties in storage or constituting linefill and Imbalances;

(ix)    the FCC licenses associated with the call signs listed on Exhibit II-E attached hereto;

(x)    all contracts, agreements, leases, licenses, commitments, sales and purchase orders, and other instruments that relate exclusively to the ownership or operation of any or all of the Wind Down Oil and Gas Properties  or any other properties, rights, titles, and interests described in the clauses of this Schedule II, Part A, including operating agreements, unitization, pooling, and communitization agreements, declarations and orders, area of mutual interest agreements, exploration agreements, joint venture agreements, farmin and farmout agreements, exchange agreements, purchase and sale agreements, and other contracts in which FWE acquired interests in any other Wind Down Assets, transportation agreements, agreements for the sale and purchase of Hydrocarbons, processing agreements, and service agreements, including the contracts listed on Exhibit II-F attached hereto (the "Wind Down Contracts");

---

[16] **Note to Draft**: To be determined if any FERC regulated transportation agreements need FERC waivers.

Schedule II – FWE Wind Down
WEIL:\97614386\42\45327.0007

(xi)    originals of the Records that relate solely to the Wind Down Assets or the Wind Down Obligations, or both, and copies of the Records that constitute FWE I Assets or Predecessor Assets and also relate to either or both of the Wind Down Assets or the Wind Down Obligations;

(xii)    inventory, equipment, machinery, tools, and other personal property, to the extent located on the Wind Down Facilities or, if located elsewhere, used or held for use exclusively in connection with the Wind Down Oil and Gas Properties or the Wind Down Facilities or charged to the joint account pursuant to the applicable Wind Down Contracts, including those items listed on Exhibit II-G attached hereto;

(xiii)    FWE-owned SCADA equipment and all automation systems, including meters and related telemetry, licensed radio frequencies, and associated communications infrastructure including towers, antennas, data links, and network circuits used or held for use exclusively in connection with the Wind Down Oil and Gas Properties and the Wind Down Facilities or for the production of Hydrocarbons therefrom;

(xiv)    all cash (subject to the obligation of FWE to deliver the FWE I Cash Amount, the FWE I Suspense Funds, and the Prepaid JIB Cash Amount to FWE I), and all third party deposits, escrow accounts, guarantees, letters of credit, treasury securities, surety bonds, and other forms of credit assurances or credit support provided by a third party for the benefit of FWE for financial assurance for the obligations and liabilities arising out of or related to any other  Wind Down Assets (but not also in part any FWE I Assets), including the Plugging and Abandonment Obligations arising out of or related to any other Wind Down Assets (but not also in part any FWE I Assets);

(xv)    all agreements and memberships relating exclusively to well containment/control, clean-up of spills, or other pollution, or the gathering of data relating to certifications required to be made to Governmental Authorities with respect to the Wind Down Assets; and

(xvi)    all (i) accounts receivable attributable to the Wind Down Oil and Gas Properties with respect to any period of time, (ii)  rights to any payout or recovery for any Casualty occurring on or at any Wind Down Asset, whether occurring prior to, on or after Plan Effective Date, (iii) instruments and general intangibles (as such terms are defined in the Uniform Commercial Code of the applicable jurisdictions in which the Wind Down Oil and Gas Properties to which such assets relate are located), and other economic benefits attributable to the Wind Down Oil and Gas Properties, (iv) claims of indemnity, contribution, or reimbursement relating to the Wind Down Obligations and (v) Imbalances receivables of FWE attributable to the Wind Down Oil and Gas Properties;

(xvii)    all Suspense Funds of FWE to the extent attributable to any of the Wind Down Oil and Gas Properties (the "Wind Down Suspense Funds"); and

(xviii)    all rights to any supplemental bonds or other securities (excluding area-wide bonds) held by, or any authorization or permission from, the BOEM, BSEE, or any other Governmental Authority with respect to FWE exclusively for other Wind Down Assets.

Part B:

"<u>Wind Down Obligations</u>" means: all of the obligations and liabilities (contractual or otherwise) of FWE of any kind, character or description (whether known or unknown, accrued, absolute, contingent, or otherwise) relating to, arising out of, or with respect to any of the Wind Down Assets, including obligations and liabilities of FWE: (i)(a) relating to the furnishing of makeup gas according to the terms of applicable gas sales, gathering, or transportation Wind Down Contracts and all obligations with respect to Imbalances attributable to the FWE III's ownership interests in any of the Wind Down Oil and Gas Properties; (b) with respect to Royalties arising out of, related to, or attributable to any of the Wind Down Oil and Gas Properties and Wind Down Suspense Funds, including any reporting and/or mis-reporting, and payment and/or mis-payment of such Royalties or the Wind Down Suspense Funds; (c) constituting or related to Environmental Liabilities arising out of, related to, or attributable to any of the Wind Down Assets; (d) applicable to or imposed on the lessee, owner, operator, holder, responsible party, payor or designated applicant under or with respect to any of the Wind Down Assets, or as required by applicable Laws; and (e) constituting or relating to any and all P&A Obligations related to the FWE III's ownership interests in, or operation of, any of the Wind Down Assets; and (ii) the liabilities and obligations of the FWE III specified in <u>Section 6</u> of the Plan of Merger to the extent attributable to use of the Joint Use Properties with respect to the Wind Down Assets; provided, however, that the Wind Down Obligations do not include any claims, liabilities or obligations satisfied, compromised, settled, released or discharged pursuant to the Plan of Reorganization and Confirmation Order.

**Schedule III**[17]

**Predecessor Assets and Predecessor Obligations**

Part A:

"Predecessor Assets" means all of FWE's right, title, and interest in, to, or under the following, subject to Section 6 of the Plan of Merger:[18]

(i)        the oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in or to Hydrocarbons in place and mineral interests or servitudes of every nature, in, on, under, and that may be produced from or attributable to any of the lands covered by the leases, subleases, interests, and rights described on Exhibit III-A attached hereto, whether legal or equitable, vested or contingent, and regardless of whether the same are expired or terminated (collectively, the "Predecessor Leases"), together with all pooled, communitized, or unitized acreage that includes all or part of any of the Predecessor Leases (the "Predecessor Units"), and all tenements, hereditaments, and appurtenances belonging to the Predecessor Leases and the Predecessor Units (collectively with the Predecessor Leases and Predecessor Units, the "Predecessor Lands");

(ii)        any and all Hydrocarbon, water, CO2, injection, disposal wells or other wells located on, under, or within the Predecessor Lands described on Exhibit III-B attached hereto, in each case whether producing, non-producing, shut-in, or temporarily or permanently Plugged and Abandoned, including the wells set forth on Exhibit III-B attached hereto and all wellbores spudded prior to the Effective Time located on the Predecessor Lands (the "Predecessor Wells" and, together with the Predecessor Leases and the Predecessor Units, the "Predecessor Oil and Gas Properties");

(iii)        all platforms and facilities, including all associated processing systems, buildings, compressors, meters, tanks, machinery, tools, personal property, equipment (including spars, trees, PLETs, jumpers, flowlines, risers, umbilicals, control assemblies, and production handling equipment), pipelines, gathering lines, water lines, tank batteries, pipeline capacity, other water gathering, transportation, or disposal infrastructure and equipment, frac tanks, ponds, metering facilities, interconnections, and other inventory, boats, vehicles, fixtures, improvements, and other property (whether real, immovable, personal, movable, mixed, or otherwise) that is located on or appurtenant to any of the Predecessor Leases, the Predecessor Lands, the Predecessor Rights of Way, or the Predecessor Wells or used or held for use exclusively in connection with the any of Predecessor Wells and the operation of any of the Predecessor Leases (whether located on or appurtenant to any of the Predecessor Leases, the Predecessor Lands, Predecessor Rights of Way,

---

[17] **Note to Draft**:  In the event an asset not included on the schedules hereto is identified after the parties have agreed to the final form of this Plan of Merger, but prior to the Effective Time, subject to the agreement of the parties, the applicable schedule shall be updated to include and provide for the allocation of such asset.

[18] **Note to Draft**:  To be determined if any Predecessor Assets constitute assets in which FWE I will also own an interest and, as to such assets, modify Schedule III as necessary to cover only the applicable interest in such assets to be allocated to and vest in FWE III as Predecessor Assets.

or the Predecessor Wells, or stored at a different location (onshore or offshore)), and such flowlines, pipelines, gathering lines, and/or pipeline capacity that are used or held for use exclusively in connection with any of the Predecessor Leases, the Predecessor Wells or the Predecessor Units operations or the production, transportation, or processing of Hydrocarbons produced from any of the Predecessor Oil and Gas Properties, including all platforms identified on Exhibit III-C(i) attached hereto and all facilities identified on Exhibit III-C(ii) attached hereto, but excluding any FWE I Facilities (the "Predecessor Facilities");

(iv)     Proprietary Seismic Data and licensed Seismic Data relating exclusively to the Predecessor Oil and Gas Properties;

(v)     all surface fee interests, easements, right-of-use easements, licenses, servitudes, rights-of-way, surface leases and other rights to use the surface or seabed appurtenant to, and used or held for use exclusively in connection with, the ownership or operation of any or all of the properties, rights, titles, and interests described in clauses (i) through (iii) and (vi) of this Schedule III, Part A, including the property described on Exhibit III-D(i) attached hereto and Exhibit III-D(ii) attached hereto (the "Predecessor Rights of Way");

(vi)     all environmental and other governmental (whether federal, state, or local) permits (including all plans filed with or approval by applicable Governmental Authorities), licenses, orders, authorizations, franchises, and related instruments or rights relating exclusively to the ownership, operation, or use of the properties, rights, titles, and interests described in clauses (i) through (iii), (v) and (viii) of this Schedule III, Part A (the "Predecessor Permits");

(vii)     all transportation agreements described on Exhibit III-F attached hereto;[19]

(viii)     all Hydrocarbons in, on, under, or that may be produced from or attributable to the Predecessor Leases, the Predecessor Units, or the Predecessor Wells, including all oil, condensate, and scrubber liquids inventories and ethane, propane, iso-butane, nor-butane, and gasoline inventories of FWE from the Predecessor Oil and Gas Properties in storage or constituting linefill and Imbalances;

(ix)     the FCC licenses associated with the call signs listed on Exhibit III-E attached hereto;

(x)     all contracts, agreements, leases, licenses, commitments, sales and purchase orders, and other instruments that relate exclusively to the ownership or operation of any or all of the Predecessor Oil and Gas Properties or any other properties, rights, titles, and interests described in this Schedule III, Part A, including operating agreements, unitization, pooling, and communitization agreements, declarations and orders, area of mutual interest agreements, exploration agreements, joint venture agreements, farmin and farmout agreements, exchange agreements, purchase and sale agreements, and other contracts in which FWE acquired interests in any Predecessor Assets, transportation agreements, agreements for the sale and purchase of

---

[19] **Note to Draft**: To be determined if any FERC regulated transportation agreements need FERC waivers.

Hydrocarbons, processing agreements, and service agreements, including the contracts listed on Exhibit III-F attached hereto (the "Predecessor Contracts");

(xi)     originals of the Records that relate (i) solely to the Predecessor Assets or the Predecessor Obligations, or both, or (ii) to the Predecessor Assets or the Predecessor Obligations, or both, and also to the Wind Down Assets or Wind Down Obligations, or both, and copies of the Records that constitute FWE I Assets and also relate to either or both of the Predecessor Assets or the Predecessor Obligations;

(xii)     inventory, equipment, machinery, tools, and other personal property, to the extent located on the Predecessor Facilities or, if located elsewhere, used or held for use exclusively in connection with the Predecessor Oil and Gas Properties or the Predecessor Facilities or charged to the joint account pursuant to the applicable Predecessor Contracts, including those items listed on Exhibit III-G attached thereto;

(xiii)    FWE-owned SCADA equipment and all automation systems, including meters and related telemetry, licensed radio frequencies, and associated communications infrastructure including towers, antennas, data links, and network circuits used or held for use exclusively in connection with the Predecessor Oil and Gas Properties and the Predecessor Facilities or for the production of Hydrocarbons therefrom;

(xiv)     all cash (subject to the obligation of FWE to deliver the FWE I Cash Amount, the FWE I Suspense Funds, and the Prepaid JIB Cash Amount to FWE I), and all third party deposits, escrow accounts, guarantees, letters of credit, treasury securities, surety bonds, and other forms of credit assurances or credit support provided by a third party for the benefit of FWE for financial assurance exclusively for the obligations and liabilities arising out of or related to any other Predecessor Assets (but not also in part any FWE I Assets), including the Plugging and Abandonment Obligations arising out of or related to any other Predecessor Assets (but not also in part any FWE I Assets), including those items listed on Exhibit III-H attached hereto;

(xv)     all agreements and memberships relating solely to well containment/control, clean-up of spills, or other pollution, or the gathering of data relating to certifications required to be made to Governmental Authorities with respect to the Predecessor Assets; and

(xvi)     all (i) accounts receivable attributable to the Predecessor Oil and Gas Properties with respect to any period of time, (ii) rights to any payout or recovery for any Casualty occurring on or at any Predecessor Asset, whether occurring prior to, on or after the Plan Effective Date, (iii) instruments and general intangibles (as such terms are defined in the Uniform Commercial Code of the applicable jurisdictions in which the Predecessor Oil and Gas Properties to which such assets relate are located), and other economic benefits attributable to the Predecessor Oil and Gas Properties, (iv) claims of indemnity, contribution, or reimbursement relating to the Predecessor Obligations and (v) Imbalances receivables of FWE attributable to the Predecessor Oil and Gas Properties;

(xvii)    all Suspense Funds of FWE to the extent attributable to the Predecessor Oil and Gas Properties (the "Predecessor Suspense Funds");

(xviii)  all rights to any supplemental bonds or other securities (excluding area-wide bonds) held by, or any authorization or permission from, the BOEM, BSEE, or any other Governmental Authority with respect to FWE exclusively for other Predecessor Assets; and

(xix)  all other assets and rights of FWE other than FWE I Assets and Wind Down Assets.

Notwithstanding the foregoing, the Predecessor Assets shall include all assets and rights of FWE not expressly included in the FWE I Assets or the Wind Down Assets, but shall exclude any assets expressly allocated to FWE I pursuant to the Plan of Merger.

Part B:

"Predecessor Obligations" means:  all of the obligations and liabilities (contractual or otherwise) of FWE of any kind, character or description (whether know or unknown, accrued, absolute, contingent, or otherwise) relating to, arising out of, or with respect to any of the Predecessor Assets, including (i) obligations and liabilities of FWE:  (a) relating to the furnishing of makeup gas according to the terms of applicable gas sales, gathering, or transportation Predecessor Contracts and all obligations with respect to Imbalances attributable to FWE III's ownership interests in any of the Predecessor Oil and Gas Properties; (b) with respect to Royalties arising out of, related to, or attributable to any of the Predecessor Oil and Gas Properties and the Predecessor Suspense Funds, including any reporting and/or mis-reporting, and payment and/or mis-payment of such Royalties or the Predecessor Suspense Funds; (c) constituting or related to Environmental Liabilities arising out of, related to, or attributable to any of the Predecessor Assets; (d) applicable to or imposed on the lessee, owner, operator, holder, responsible party, payor or designated applicant under or with respect to any of the Predecessor Assets, or as required by applicable Laws; (e) constituting or relating to any and all P&A Obligations related to FWE III's ownership interests in, or operation of,  any of the Predecessor Assets; and (f) any and all liabilities and obligations of FWE not expressly included in the FWE I Obligations or the Wind Down Obligations; and (ii) the obligations and liabilities of FWE III specified in Section 6 of the Plan of Merger to the extent attributable to use of the Joint Use Properties with respect to the Predecessor Assets; provided, however, that the Predecessor Obligations do not include any claims, liabilities or obligations satisfied, compromised, settled, released or discharged pursuant to the Plan of Reorganization and Confirmation Order.

**Schedule of Exhibits**[20]

Exhibit A:                  Certificate of Merger

Exhibit B:                  Certificate of Formation – FWE I

Exhibit I-A(i):             FWE I Leases

Exhibit I-A(ii):            FWE I Deep Rights

Exhibit I-B:                FWE I Wells

Exhibit I-C(i)              FWE I Platforms

Exhibit I-C(ii)             FWE I Facilities

Exhibit I-D(i)              FWE I Rights of Way Acquired Pursuant to Apache PSA

Exhibit I-D(ii)             FWE I RUEs

Exhibit I-E                 FWE I FCC Licenses

Exhibit I-F                 FWE I Contracts

Exhibit I-G                 FWE I Inventory

Exhibit I-H                 FWE I Deposits/Escrows/Credit Support

Exhibit I-I                 Subsidiaries and Equity Interests

Exhibit I-J                 FWE II Retained Properties

Exhibit I-K(i)              Incremental Interests – Leases

Exhibit I-K(ii)             Incremental Interests – Wells

Exhibit I-K(iii)            Incremental Interests – Platforms and Facilities

Exhibit II-A:               Wind Down Leases[21]

---

[20] **Note to Draft**:  **FWE I Exhibits to the Plan of Merger**. Exhibits I-A(i) through I-K(iii) to Schedule 1 to the Plan of Merger (collectively, the "FWE I Exhibits") set forth a list of Legacy Apache Properties, which FWE I Exhibits the Apache PSA Parties and the Fieldwood PSA Parties hereto respectively acknowledge are subject to the ongoing review and consent rights of the Consenting Creditors under the RSA (which consent has not yet been provided), and the Apache PSA Parties and Fieldwood PSA Parties agree that the FWE I Exhibits are subject to modification based on such review to be consistent with the Apache Term Sheet.

[21] **Note to Draft**:  Exhibits II-A – II-G to be attached to Executed Plan of Merger.

| | |
|---|---|
| Exhibit II-B: | Wind Down Wells |
| Exhibit II-C(i) | Wind Down Platforms |
| Exhibit II-C(ii) | Wind Down Facilities |
| Exhibit II-D(i) | Wind Down Rights of Way |
| Exhibit II-D(ii) | Wind Down RUEs |
| Exhibit II-E | Wind Down FCC Licenses |
| Exhibit II-F | Wind Down Contracts |
| Exhibit II-G | Wind Down Inventory |
| Exhibit III-A: | Predecessor Leases[22] |
| Exhibit III-B: | Predecessor Wells |
| Exhibit III-C(i) | Predecessor Platforms |
| Exhibit III-C(ii) | Predecessor Facilities |
| Exhibit III-D(i) | Predecessor Rights of Way |
| Exhibit III-D(ii) | Predecessor RUEs |
| Exhibit III-E | Predecessor FCC Licenses |
| Exhibit III-F | Predecessor Contracts |
| Exhibit III-G | Predecessor Inventory |
| Exhibit III-H | Predecessor Deposits/Escrows/Credit Support |

[End of Schedule of Exhibits]

---

[22] **Note to Draft**: Exhibits III-A – III-H to be attached to Executed Plan of Merger

WEIL:\97614386\42\45327.0007

Exhibit I-A(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| LOUISIANA NON-OPERATED | -- | 12503 | SL-LA | ORRI | -- | -- | -- | -- | 0.6% | TERMIN |
| LOUISIANA NON-OPERATED | -- | 06618 | SL-LA | ORRI | -- | -- | -- | -- | 5.2% | TERMIN |
| BRAZOS 491 | BA 491 | G06069 | Federal | RT | 10/1/1983 | | 5,760 | Fieldwood En | 100.0% | TERMIN |
| BRAZOS A-102/A-105 | BA 105 | G01757 | Federal | RT | 7/1/1968 | | 5,760 | Fieldwood En | 12.5% | PROD |
| BRAZOS A-102/A-105 | BA A-105 | G01757 | Federal | RT A | 7/1/1968 | | 5,760 | Fieldwood En | 12.5% | PROD |
| BRAZOS A-133 | BA A133 | G02665 | Federal | OP | 7/1/1974 | | 5,760 | GOM Shelf | 12.5% | PROD |
| BRAZOS A-133 | BA A-133 | G02665 | Federal | RT | 7/1/1974 | | 5,760 | GOM Shelf | 25.0% | PROD |
| $0 Liability | BA A19 | G33399 | Federal | RT | 1/1/2010 | 12/31/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | BA A47 | G33940 | Federal | RT | 3/1/1979 | 9/21/2014 | 5,760 | Apache Shelf | 33.3% | TERMIN |
| $0 Liability | BA A47 | G03940 | Federal | OP | 3/1/1979 | 9/21/2014 | 5,760 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | BA A69 | G32733 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | BS 39 | G33683 | Federal | RT | 7/1/2001 | 5/20/2015 | 1,237 | Petsec En | 18.8% | REUNQ |
| BRETON SOUND 41 | BS 41 | G21142 | Federal | OP 2 | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | 13.1% | TERMIN |
| BRETON SOUND 41 | BS 41 | G21142 | Federal | Contractual | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | TBD | TERMIN |
| BRETON SOUND 41 | BS 42 | G33684 | Federal | RT | 7/1/2010 | 5/13/2015 | 4,552 | Apache Shelf Exp | 37.5% | REUNQ |
| CHANDELEUR 42/43 | CA 42 | G32267 | Federal | OP 1 | 7/1/2008 | 6/21/2019 | 5,000 | Fieldwood En | 50.0% | REUNQ |
| CHANDELEUR 42/43 | CA 43 | G32268 | Federal | OP 1 | 7/1/2008 | | 5,000 | Fieldwood En | 50.0% | PROD |
| $0 Liability | DD 253 | G10426 | Federal | RT | 6/1/1990 | 9/8/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | DD 297 | G10427 | Federal | RT | 6/1/1990 | 9/8/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EB 128 | G34034 | Federal | RT | 4/1/2012 | 3/15/2016 | 165 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EB 172 | G34035 | Federal | RT | 4/1/2012 | 3/15/2016 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 12 | G34220 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Fieldwood En | 100.0% | REUNQ |
| EAST CAMERON 9/14 | EC 14 | G13572 | Federal | RT | 7/1/1992 | 5/16/2005 | 2,544 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | EC 171 | G34228 | Federal | RT | 9/1/2012 | 4/17/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 172 | G17858 | Federal | RT | 6/1/1996 | 12/2/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | EC 178 | G34229 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 179 | G34230 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 185 | G34796 | Federal | RT | 6/1/2013 | 5/25/2017 | 5,000 | Fieldwood En | 100.0% | REUNQ |
| EAST CAMERON 2 - (SL LA) | EC 2 | 18121 | SL-LA | WI | 5/12/2004 | 1/0/1900 | 220 | Fieldwood | 50.0% | ACTIVE |
| EAST CAMERON 2 - (SL LA) | EC 2 | 16473 | SL-LA | WI | 7/13/1999 | 7/15/2015 | 148 | Apache | 89.1% | ACTIVE |
| EAST CAMERON 2 - (SL LA) | EC 2 | 16475 | SL-LA | WI | 7/19/1999 | | 134.75 | Apache | 89.1% | ACTIVE |
| $0 Liability | EC 222 | G02037 | Federal | OP 1 | 2/1/1971 | 11/24/2015 | 5,000 | Talos | 17.9% | TERMIN |
| $0 Liability | EC 222 | G02037 | Federal | OP 2 | 2/1/1971 | 11/24/2015 | 5,000 | Talos | 17.9% | TERMIN |
| $0 Liability | EC 229 | G34232 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 230 | G34233 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 24 | G04098 | Federal | RT | 10/1/1979 | 2/12/2014 | 5,000 | Apex O&G | 18.0% | TERMIN |
| $0 Liability | EC 24 | G04098 | Federal | OP 2 | 10/1/1979 | 2/12/2014 | 5,000 | Apex O&G | 31.3% | TERMIN |
| $0 Liability | EC 24 | G04098 | Federal | OP 3 | 10/1/1979 | 2/12/2014 | 5,000 | Apex O&G | 30.3% | TERMIN |
| $0 Liability | EC 242 | G34234 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 243 | G34235 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 261 | G00971 | Federal | RT | 6/1/1962 | 1/14/2016 | 5,000 | Fieldwood En | 100.0% | REUNQ |
| $0 Liability | EC 263 | G33077 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EC 264 | G01880 | Federal | RT | 3/1/1969 | 7/11/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EAST CAMERON 265 / 278 | EC 265 | G00972 | Federal | RT | 6/1/1962 | 1/30/2019 | 5,000 | Fieldwood En | 50.0% | REUNQ |
| EAST CAMERON 265 / 278 | EC 270 | G02045 | Federal | RT | 1/1/1971 | 6/7/2013 | 2,500 | Apache | 70.0% | TERMIN |
| $0 Liability | EC 278 | G00974 | Federal | RT | 6/1/1962 | 10/3/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | EC 292 | G34237 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 293 | G34238 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 294 | G34239 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 310 | G34240 | Federal | RT | 1/1/2012 | 10/4/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 328 | G10638 | Federal | RT | 5/1/1989 | | 5,000 | Arena Off | 100.0% | PROD |
| *No FW lease ownership | EC 33 | G00972 | Federal | OP | 9/1/1970 | 2/15/2016 | 1,250 | Merit En | 15.6% | TERMIN |
| *No FW asset ownership | EC 335 | G02439 | Federal | OP | 8/1/1973 | 6/6/2015 | 5,000 | Energy XXI GOM | 14.0% | TERMIN |
| EAST CAMERON 338 | EC 338 | G02063 | Federal | RT | 2/1/1971 | | 5,000 | Anadarko US Off | 15.7% | PROD |
| EAST CAMERON 37 | EC 37 | G25933 | Federal | RT | 5/1/2004 | 9/27/2014 | 2,608 | Probe Res US | 100.0% | TERMIN |
| $0 Liability | EC 370 | G33073 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| *No FW asset ownership | EC 71 | G15376 | Federal | RT | 9/1/1992 | | 5,000 | EC Off Prop | 100.0% | PROD |
| EAST CAMERON 14 | EC 9/14 | G01440 | Federal | RT | 4/1/1966 | | 3,152 | Fieldwood En | 100.0% | PROD |
| EAST CAMERON 9/14 | EC 9/14 | G01440 | Federal | OP 1 | 4/1/1966 | | 3,152 | Fieldwood En | 100.0% | PROD |
| EUGENE ISLAND 010 | EI 10 | G23851 | Federal | RT | 7/1/2002 | | 2,303 | Contango Op | 50.0% | PROD |
| EUGENE ISLAND 010 | EI 10 | G23851 | Federal | OP 2 | 7/1/2002 | | 2,303 | Contango Op | 50.0% | PROD |
| $0 Liability | EI 105 | 00797 | Federal | RT | 5/1/1960 | 12/9/2013 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE ISLAND 105/106 | EI 106 | G17966 | Federal | RT A | 7/1/1997 | 8/4/2013 | 5,000 | Apache | 75.0% | TERMIN |
| EUGENE ISLAND 105/106 | EI 106 | G17966 | Federal | RT B | 7/1/1997 | 8/4/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | EI 107 | G15241 | Federal | RT | 9/1/1995 | 9/1/2013 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 108 | G03811 | Federal | OP 1 | 6/1/1978 | 11/22/2015 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| $0 Liability | EI 108 | G03811 | Federal | RT A | 6/1/1978 | 11/22/2015 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| $0 Liability | EI 108 | G03811 | Federal | RT B | 6/1/1978 | 11/22/2015 | 5,000 | Fieldwood En | 71.3% | TERMIN |
| $0 Liability | EI 116 | G34292 | Federal | RT | 8/1/2012 | 8/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EI 117 | G34293 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 118 | G15242 | Federal | RT A | 7/1/1995 | 12/17/2015 | 5,000 | Black Elk En Off Op | 25.0% | TERMIN |
| $0 Liability | EI 118 | G15242 | Federal | RT B | 7/1/1995 | 12/17/2015 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE IS. 119/120/125/126 | EI 119 | 00049 | Federal | RT A | 8/28/1945 | | 5,000 | Fieldwood En | 50.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 119 | 00049 | Federal | RT B | 8/28/1945 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 120 | 00050 | Federal | RT | 8/28/1945 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 125 | 00051 | Federal | RT A | 8/28/1945 | -- | 5,000 | Fieldwood En | 100.0% | OPERNS |
| EUGENE IS. 119/120/125/126 | EI 125 | 00052 | Federal | RT B | 8/28/1945 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 126 | 00052 | Federal | OP | 8/28/1945 | | 5,000 | Fieldwood En | 75.0% | PROD |
| $0 Liability | EI 128 | G34294 | Federal | RT | 10/1/2012 | 9/16/2016 | 3,427 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 131 | G33625 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 132 | G33626 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 135 | G34296 | Federal | RT | 10/1/2012 | 8/26/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| EUGENE IS. 136/158 | EI 136 | G03152 | Federal | RT | 7/1/1975 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | EI 156 | G16353 | Federal | OP | 6/1/1996 | 8/24/2014 | 5,000 | Black Elk En Off Op | 100.0% | TERMIN |
| EUGENE IS. 136/158 | EI 158 | G01220 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 173/174/175 | EI 173 | G13622 | Federal | RT | 7/1/1978 | | 5,000 | Arena Off | 30.0% | PROD |
| EUGENE IS. 173/174/175 | EI 174 | G03782 | Federal | RT | 6/1/1978 | | 5,000 | Arena Off | 100.0% | PROD |
| EUGENE IS. 173/174/175 | EI 174 | G03782 | Federal | OP | 6/1/1978 | | 5,000 | Arena Off | 30.0% | PROD |
| EUGENE IS. 173/174/175 | EI 175 | 00438 | Federal | OP 1 | 12/1/1954 | | 5,000 | Fieldwood En | 75.0% | PROD |
| EUGENE IS. 187/189 | EI 187 | G10736 | Federal | RT | 7/1/1989 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | EI 188 | 00443 | Federal | RT | 1/1/1955 | 4/30/2010 | 5,000 | Apache | 100.0% | TERMIN |
| EUGENE ISLAND 188 | EI 189 | 00423 | Federal | RT | 12/1/1954 | | 3,750 | Fieldwood En | 100.0% | PROD |
| $0 Liability | EI 196 | 00802 | Federal | RT | 5/1/1960 | 3/25/2019 | 3,516 | Fieldwood En | 50.0% | REUNQ |
| $0 Liability | EI 196 | 00802 | Federal | OP | 5/1/1960 | 3/25/2019 | 3,516 | Fieldwood En | 100.0% | REUNQ |
| $0 Liability | EI 196 | G13821 | Federal | OP 2 | 5/1/1960 | 3/22/2019 | 1,484 | Arena Off | 100.0% | REUNQ |
| $0 Liability | EI 196 | G13821 | Federal | OP 4 | 5/1/1960 | 3/22/2019 | 1,484 | Arena Off | 100.0% | REUNQ |
| $0 Liability | EI 20 | G34286 | Federal | RT | 10/1/2012 | 8/19/2016 | 3,582 | Castex Off | 50.0% | REUNQ |
| $0 Liability | EI 207 | G34301 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| *No FW asset ownership | EI 208 | 00577 | Federal | OP | 9/1/1955 | | 2,500 | ANKOR En | 100.0% | PROD |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 211 | G05502 | Federal | RT B | 7/1/1983 | | 5,000 | Fieldwood En | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 211 | G05502 | Federal | OP | 7/1/1983 | | 5,000 | Chevron USA | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 212 | G05503 | Federal | RT B | 7/1/1983 | | 5,000 | Fieldwood En | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 212 | G05503 | Federal | OP | 7/1/1983 | | 5,000 | Chevron USA | 66.7% | UNIT |
| $0 Liability | EI 216 | G34303 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| EUGENE ISLAND 196/217/227 | EI 217 | G00978 | Federal | RT | 5/1/1962 | 3/22/2019 | 5,000 | Arena Off | 25.0% | REUNQ |
| EUGENE IS. 266 | EI 224 | G05504 | Federal | ORRI | 5/1/1983 | | 5,000 | Castex Off | 100.0% | PROD |
| EUGENE IS. 266 | EI 224 | G05504 | Federal | RT | 5/1/1983 | | 5,000 | Castex Off | 100.0% | PROD |
| EUGENE ISLAND 196/217/227 | EI 227 | 00809 | Federal | RT | 5/1/1960 | 3/25/2019 | 5,000 | Arena Off | 50.0% | REUNQ |
| EUGENE ISLAND 196/217/227 | EI 227 | G36745 | Federal | ORRI | 11/1/2019 | | 5,000 | Arena Off | 6.25% | PRIMRY |
| EUGENE ISLAND 196/217/227 | EI 227 | G36745 | Federal | ORRI | 11/1/2019 | | 5,000 | Arena Off | 4.17% | PRIMRY |
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |

Case 20-03948 Document 1137-2 Filed in TXSB on 03/24/21 Page 779 of 1029
Case 20-33948 Document 1137-2 Filed in TXSB on 03/24/21 Page 79 of 329
Exhibit I-A(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | ORRI | 5/1/1960 | -- | 5,000 | Sanare En Part | 6.3% | UNIT |
| EUGENE ISLAND 255 | EI 255 | G01958 | Federal | RT | 1/1/1970 | | 2,500 | Cox Op | 2.0% | PROD |
| EUGENE ISLAND 255 | EI 255 | G01958 | Federal | OP 3 | 1/1/1970 | | 2,500 | Cox Op | 77.2% | PROD |
| EUGENE ISLAND 255 | EI 255 | G01958 | Federal | OP 4 | 1/1/1970 | | 2,500 | Cox Op | 38.6% | PROD |
| $0 Liability | EI 266 | 00811 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |
| $0 Liability | EI 266 | 00811 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 266 | 00811 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 267 | 00812 | Federal | OP | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 267 | 00812 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 267 | 00812 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 269 | 00813 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |
| $0 Liability | EI 269 | 00813 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 269 | 00813 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 280 | G23876 | Federal | RT | 5/1/2002 | 1/19/2014 | 5,000 | Energy XXI GOM | 18.8% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | RT | 5/1/1988 | 7/5/2016 | 5,000 | Bennu D&G | 90.5% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | OP 1 | 5/1/1988 | 7/5/2016 | 5,000 | Bennu D&G | 45.3% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | OP 2 | 5/1/1988 | 7/5/2016 | 5,000 | Bennu D&G | 45.3% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | OP 3 | 5/1/1988 | 7/5/2016 | 5,000 | Bennu D&G | 45.3% | TERMIN |
| $0 Liability | EI 282 | G09592 | Federal | RT | 6/1/1988 | 7/5/2016 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 282 | G09592 | Federal | OP 1 | 6/1/1988 | 7/5/2016 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 282 | G09592 | Federal | OP 2 | 6/1/1988 | 7/5/2016 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 29 | G34287 | Federal | RT | 12/1/2012 | 11/22/2016 | 5,000 | Apache Shelf Exp | 50.0% | REUNQ |
| EUGENE IS. 307 | EI 307 | G02110 | Federal | OP | 2/1/1971 | 11/4/2019 | 2,500 | Fieldwood En Off | 25.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 312 | G22679 | Federal | RT | 6/1/2001 | 8/7/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 312 | G22679 | Federal | ORRI | 6/1/2001 | 8/7/2020 | 5,000 | Fieldwood En | 8.3% | TERMIN |
| $0 Liability | EI 313 | G02608 | Federal | RT | 5/1/1974 | 6/23/2016 | 5,000 | Arena Off | 50.0% | TERMIN |
| $0 Liability | EI 313 | G02608 | Federal | OP 1 | 5/1/1974 | 6/23/2016 | 5,000 | Arena Off | 50.0% | TERMIN |
| $0 Liability | EI 313 | G02608 | Federal | OP 2 | 5/1/1974 | 6/23/2016 | 5,000 | Arena Off | 50.0% | TERMIN |
| EUGENE IS. 315/316/329 | EI 315 | G02112 | Federal | RT | 8/1/1974 | | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 315/316/329 | EI 315 | G02112 | Federal | OP | 8/1/1974 | | 2,500 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 315/316/329 | EI 315 | G24912 | Federal | RT | 5/1/2003 | | 2,500 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 315/316/329 | EI 316 | G05040 | Federal | RT | 4/1/1982 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 315/316/329 | EI 329 | G02912 | Federal | RT | 12/1/1974 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | Contractual | 1/1/1971 | | 5,000 | Fieldwood En | 63.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 7 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 6 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 5 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 4 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 3 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 2 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | RT | 1/1/1971 | | 5,000 | Fieldwood En | 42.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 7 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 6 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 5 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 4 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 3 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 2 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 333/334 | EI 333 | G02317 | Federal | RT | 2/1/1973 | 8/29/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 333/334 | EI 334 | G12563 | Federal | RT | 7/1/1995 | 8/29/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | RT | 3/1/1976 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| EUGENE IS. 337 | EI 337 | G3332 | Federal | ORRI | 3/1/1976 | | | Fieldwood En | 0.1% | UNIT |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | OP 1 | 3/1/1976 | | 5,000 | Fieldwood En | 98.0% | UNIT |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | OP 1 | 3/1/1976 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | OP 3 | 3/1/1976 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | RT A | 2/1/1973 | | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | RT B | 2/1/1973 | | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | OP 1 | 2/1/1973 | | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | OP 2 | 2/1/1973 | | 5,000 | Fieldwood En | 61.8% | TERMIN |
| EUGENE IS. 345/346 | EI 345 | G21647 | Federal | RT | 7/1/2000 | 8/21/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 345/346 | EI 346 | G14482 | Federal | RT | 6/1/1994 | | 5,000 | Arena Off | 100.0% | PROD |
| EUGENE IS. 353/354 | EI 353 | G03783 | Federal | OP | 6/1/1978 | 8/26/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 337 | EI 354 | G10752 | Federal | RT | 5/1/1989 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 337 | EI 354 | G10752 | Federal | OP | 5/1/1989 | | 5,000 | Fieldwood En | 67.0% | PROD |
| EUGENE IS. 353/354 | EI 361 | G02324 | Federal | RT | 2/1/1973 | | 5,000 | Cox Op | 12.4% | PROD |
| EUGENE IS. 53 | EI 53 | 00479 | Federal | OP 1 | 12/1/1954 | | 5,000 | EnVen En Vent | 66.7% | PROD |
| EUGENE IS. 53 | EI 53 | 00479 | Federal | OP | 12/1/1954 | | 5,000 | EnVen En Vent | 100.0% | PROD |
| EUGENE ISLAND 57/58 | EI 57 | G02601 | Federal | OP 2 | 5/1/1974 | 3/27/2020 | 5,000 | Talos | 31.7% | TERMIN |
| EUGENE ISLAND 57/58 | EI 57 | G02601 | Federal | OP 4 | 5/1/1974 | 3/27/2020 | 5,000 | ANKOR En | 15.8% | TERMIN |
| $0 Liability | EI 88 | G10721 | Federal | OP | 7/1/1989 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE ISLAND 88/89/90/93/94/95 | EI 89 | 00044 | Federal | OP | 8/28/1945 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE ISLAND 88/89/90/93/94/95 | EI 89 | 00044 | Federal | OP 2 | 8/28/1945 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| *No FW asset ownership | EI 90 | 00229 | Federal | OP | 11/19/1948 | 2/22/2016 | 1,250 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EI 93 | 00228 | Federal | OP | 11/19/1948 | 2/22/2016 | 2,500 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EI 94 | G05488 | Federal | OP | 7/1/1983 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EI 95 | 00046 | Federal | OP | 8/28/1945 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EW 525 | G33704 | Federal | RT | 7/1/2010 | 6/19/2015 | 4,249 | Apache Shelf Exp | 46.9% | REUNQ |
| $0 Liability | EW 526 | G33134 | Federal | RT | 6/1/2009 | 5/31/2014 | 3,517 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EW 781 | G33137 | Federal | RT | 6/1/2009 | 5/31/2014 | 309 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EW 782 | G31470 | Federal | RT | 12/1/2007 | | 1,093 | Fieldwood En | 100.0% | EXPIR |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | EW 789 | G33139 | Federal | RT | 7/1/2009 | 4/30/2015 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | EW 826 | G05800 | Federal | RT | 7/1/1983 | | 5,760 | BP E&P | 100.0% | PROD |
| $0 Liability | EW 905 | G34415 | Federal | RT | 8/1/2012 | 7/7/2016 | 1,007 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EW 906 | G33708 | Federal | RT | 6/1/2010 | 4/7/2016 | 1,084 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EW 949 | G34877 | Federal | RT | 8/1/2013 | 7/7/2016 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EW 950 | G33709 | Federal | RT | 6/1/2010 | 4/7/2016 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | FM 411 | G08361 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 412 | G08362 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 16.0% | EXPIR |
| $0 Liability | FM 455 | G08363 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 456 | G08364 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 499 | G08365 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 500 | G08366 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 16.0% | EXPIR |
| $0 Liability | FM 543 | G08367 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 587 | G08368 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| GALVESTON 151 | GA 151 | G15740 | Federal | RT | 11/1/1995 | 4/12/2016 | 4,804 | Fieldwood En | 33.3% | TERMIN |
| HIGH IS. 179 / GA 180 | GA 180 | G20228 | Federal | RT | 9/1/1975 | | 5,760 | Fieldwood En | 100.0% | UNIT |
| HIGH ISLAND 179 | GA 192 | G03229 | Federal | CONT | 9/1/1975 | | 5,760 | Arena Off | 90.0% | UNIT |
| GALVESTON 210 | GA 210 | G25524 | Federal | RT | 12/1/2003 | | 5,760 | Fieldwood En | 83.3% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 3 | 12/1/2003 | | 5,760 | Fieldwood En | 66.7% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | RT | 12/1/2003 | | 5,760 | Fieldwood En | 66.7% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP | 12/1/2003 | | 5,760 | Fieldwood En | 83.3% | PROD |
| $0 Liability | GA 343 | G06105 | Federal | RT | 10/1/1983 | 1/19/2014 | 5,760 | Black Elk En Off Op | 12.5% | TERMIN |
| $0 Liability | GA 343 | G06105 | Federal | OP | 10/1/1983 | 1/19/2014 | 5,760 | Black Elk En Off Op | 37.5% | TERMIN |
| $0 Liability | GB 85 | G34515 | Federal | RT | 8/1/2012 | 7/7/2016 | 4,450 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | GI 104 | G33671 | Federal | RT | 7/1/2010 | 6/19/2015 | 5,000 | Apache Shelf Exp | 46.9% | REUNQ |
| GRAND ISLE 110/116 | GI 110 | G13943 | Federal | RT | 8/1/1993 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| GRAND ISLE 110/116 | GI 116 | G13944 | Federal | RT | 8/1/1993 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| $0 Liability | GI 117 | G32232 | Federal | RT | 8/1/2008 | 7/31/2013 | 4,540 | Apache | 100.0% | EXPIR |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 32 | 00174 | Federal | RT | 7/17/1948 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 32 | 00174 | Federal | OP 2 | 7/17/1948 | | 2,500 | GOM Shelf | 37.5% | UNIT |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| $0 Liability | GI 32 | G01580 | Federal | RT | 7/1/1967 | 3/15/2016 | 4,500 | BP Am Prod | 75.0% | TERMIN |
| $0 Liability | GI 32 | G01580 | Federal | OP | 7/1/1967 | 3/15/2016 | 2,500 | BP Am Prod | 37.5% | TERMIN |
| $0 Liability | GI 33 | G04002 | Federal | RT | 3/1/1979 | 2/24/2017 | 5,000 | Fieldwood En | 100.0% | RELINQ |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00127 | Federal | RT | 4/21/1947 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00127 | Federal | OP 2 | 4/21/1947 | | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00126 | Federal | RT | 4/21/1947 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00126 | Federal | OP 2 | 4/21/1947 | | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 40 | 00128 | Federal | RT | 4/21/1947 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 40 | 00128 | Federal | OP 2 | 4/21/1947 | | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00129 | Federal | RT | 4/21/1947 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00129 | Federal | OP 2 | 4/21/1947 | | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00130 | Federal | RT | 4/21/1947 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00130 | Federal | OP 2 | 4/21/1947 | | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00131 | Federal | RT | 4/21/1947 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 42 | 00131 | Federal | OP 2 | 4/21/1947 | | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 43 | 00175 | Federal | RT | 7/17/1948 | -- | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 43 | 00175 | Federal | OP 2 | 7/17/1948 | -- | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 44 | 00176 | Federal | RT | 7/17/1948 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 44 | 00176 | Federal | OP 2 | 7/17/1948 | | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 46 | 00132 | Federal | RT | 4/21/1947 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 46 | 00132 | Federal | OP 2 | 4/21/1947 | | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 47 | 00133 | Federal | RT | 4/21/1947 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 47 | 00133 | Federal | OP 2 | 4/21/1947 | | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 48 | 00134 | Federal | RT | 4/21/1947 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 48 | 00134 | Federal | OP 2 | 4/21/1947 | | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 51 | 00177 | Federal | OP 1 | 7/17/1948 | | 2,500 | GOM Shelf | 50.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 52 | 00177 | Federal | OP 1 | 7/17/1948 | | 2,500 | GOM Shelf | 50.0% | UNIT |
| $0 Liability | GI 94 | G27173 | Federal | RT | 7/1/2005 | 2/12/2017 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| GRAND ISLE 76 | GI 96 | G02161 | Federal | RT | 10/1/1972 | 9/18/2019 | 5,000 | Fieldwood En | 95.8% | RELINQ |
| $0 Liability | GI 90 | G04003 | Federal | RT | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 1 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 2 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 4 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 5 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 6 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 93 | G02628 | Federal | RT | 5/1/1974 | 12/4/2014 | 5,000 | BP E&P | 100.0% | TERMIN |
| $0 Liability | GI 93 | G02628 | Federal | OP | 5/1/1974 | 12/4/2014 | 5,000 | BP E&P | 100.0% | TERMIN |
| GRAND ISLE 90/94 | GI 94 | G02163 | Federal | RT | 11/1/1972 | 7/27/2017 | 4,540 | Fieldwood En | 100.0% | RELINQ |
| GRAND ISLE 90/94 | GI 94 | G02163 | Federal | OP | 11/1/1972 | 7/27/2017 | 4,540 | Fieldwood En | 100.0% | RELINQ |
| $0 Liability | GI 98 | G34354 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| HIGH IS. 110/111 | HI 110 | G02353 | Federal | RT | 8/1/1973 | 5/31/2019 | 5,760 | W & T Off | 20.0% | TERMIN |
| HIGH IS. 110/111 | HI 110 | G02353 | Federal | RT | 8/1/1973 | 4/30/2019 | 5,760 | W & T Off | 20.0% | TERMIN |
| $0 Liability | HI 114 | G32747 | Federal | RT | 12/1/2008 | 11/30/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | HI 116 | G06156 | Federal | RT | 10/1/1983 | 2/25/2015 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| HIGH IS. 129 | HI 129 | G01848 | Federal | RT | 6/1/1968 | | 5,760 | Fieldwood En | 90.0% | PROD |
| HIGH IS. 129 | HI 129 | G01848 | Federal | ORRI | 6/1/1968 | | 5,760 | Fieldwood En | 10.4% | PROD |
| $0 Liability | HI 132 | G32748 | Federal | RT | 12/1/2008 | 11/30/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | HI 140 | 00518 | Federal | OP | 1/1/1955 | 2/10/2015 | 5,760 | Black Elk En Off Op | 50.0% | TERMIN |
| $0 Liability | HI 163 | G22236 | Federal | RT | 12/1/2000 | 5/31/2015 | 5,760 | Fieldwood En | 70.0% | TERMIN |
| HIGH ISLAND 176 | HI 176 | G06164 | Federal | OPRTS Cont | 10/1/1983 | 1/2/2002 | 5,760 | Apache | 49.5% | TERMIN |
| HIGH IS. 179 / GA 180 | HI 179 | G06166 | Federal | RT | 9/1/1975 | | 5,760 | Cox Op | 100.0% | UNIT |
| HIGH ISLAND 179 | HI 193 | G02337 | Federal | CONT | 9/1/1975 | | 5,760 | Arena Off | 90.0% | UNIT |
| $0 Liability | HI 194 | G06166 | Federal | RT | 10/1/1983 | 7/21/2013 | 5,760 | Apache | 100.0% | TERMIN |
| $0 Liability | HI 194 | G06166 | Federal | OP | 10/1/1983 | 7/21/2013 | 5,760 | Apache | 45.0% | TERMIN |
| $0 Liability | HI 201 | G23199 | Federal | OP | 12/1/2001 | 10/5/2014 | 5,760 | Apache Shelf | 37.6% | TERMIN |
| HIGH IS. 206 | HI 206 | G20660 | Federal | RT | 1/1/1999 | | 5,760 | Fieldwood En | 100.0% | PROD |
| HIGH ISLAND 45 | HI 45 | G12564 | Federal | RT | 10/1/1990 | 3/8/2015 | 4,367 | Fieldwood En | 16.7% | TERMIN |
| HIGH ISLAND 45 | HI 45 | G12564 | Federal | OP 1 | 10/1/1990 | 3/8/2015 | 4,367 | Fieldwood En | 15.0% | TERMIN |
| HIGH ISLAND 45 | HI 45 | G12564 | Federal | OP 2 | 10/1/1990 | 3/8/2015 | 4,367 | Fieldwood En | 33.3% | TERMIN |
| $0 Liability | HI 52 | 00508 | Federal | RT | 1/1/1955 | 9/24/2013 | 1,440 | Sandridge En Off | 75.0% | TERMIN |
| $0 Liability | HI 52 | 00509 | Federal | RT | 1/1/1955 | 9/24/2013 | 1,440 | Apache | 75.0% | TERMIN |
| $0 Liability | HI 52 | 00511 | Federal | RT | 1/1/1955 | 9/24/2013 | 1,440 | Apache | 75.0% | TERMIN |
| $0 Liability | HI 53 | 00513 | Federal | RT | 1/1/1955 | 9/24/2013 | 180 | Phoenix Exp | 75.0% | TERMIN |
| $0 Liability | HI 53 | 00740 | Federal | RT | 4/1/1960 | 9/24/2013 | 1,440 | Apache | 75.0% | TERMIN |
| $0 Liability | HI-133 | G32760 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-141 | G32761 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-146 | G32762 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | HI A-148 | G32763 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-160 | G32764 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-171 | G30679 | Federal | RT | 12/1/2006 | 8/9/2014 | 5,760 | Walter O&G | 33.3% | TERMIN |
| HIGH IS. A-334 | HI A-334 | G02423 | Federal | RT | 8/1/1973 | 2/27/2014 | 5,760 | Fieldwood En | 38.9% | TERMIN |
| HIGH IS. A-341 | HI A-341 | G25605 | Federal | RT | 12/1/2003 | | 5,760 | Fieldwood En | 60.0% | PROD |
| $0 Liability | HI A-350 | G02428 | Federal | RT | 8/1/1973 | 7/24/2013 | 4,345 | Apache | 100.0% | RELINQ |
| $0 Liability | HI A-360 | G34677 | Federal | RT | 3/1/2013 | 2/18/2016 | 5,760 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | HI A-361 | G34678 | Federal | RT | 3/1/2013 | 2/24/2017 | 5,760 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | HI A-363 | G33413 | Federal | RT | 10/1/2009 | 9/30/2014 | 5,760 | Apache Shelf Exp | 100.0% | TERMIN |
| HIGH IS. A-365/A-376 | HI A-365 | G02750 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 53.1% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G02750 | Federal | OP 1 | 7/1/1974 | | 5,760 | Fieldwood En | 100.0% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G02754 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 44.4% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G2754 | Federal | ORRI | 7/1/1974 | | | Fieldwood En | 1.2% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G2754 | Federal | ORRI | 7/1/1974 | | | Fieldwood En | 6.0% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-382 | G02757 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 72.4% | PROD |
| $0 Liability | HI A-406 | G32767 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-442 | G33412 | Federal | RT | 10/1/2009 | 9/30/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| HIGH ISLAND A-442 | HI A-442 | G11383 | Federal | OP | 11/1/1989 | 3/27/2017 | 5,760 | Northstar Off Grp | 22.7% | TERMIN |
| $0 Liability | HI A-454 | G32769 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-457 | G32770 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| HIGH IS. A-474 | HI A-474 | G02366 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 10.0% | TERMIN |
| HIGH ISLAND A-474/489 | HI A-475 | G02367 | Federal | CONT | 8/1/1973 | 12/25/1999 | 5,760 | McMoRan O&G | 10.0% | TERMIN |
| HIGH IS. A-474 | HI A-489 | G02372 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 8.5% | TERMIN |
| Ex N | HI A537 | G02698 | Federal | CONT | 5/29/1974 | 11/2/2016 | | McMoRan O&G | | TERMIN |
| HIGH IS. A-545 | HI A545 | G11399 | Federal | OP | 1/1/1997 | 4/30/2015 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-572 | G02392 | Federal | RT | 8/1/1973 | 5/18/2006 | 5,760 | Apache | 72.4% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-573 | G02393 | Federal | RT | 8/1/1973 | | 5,760 | Fieldwood En | 72.4% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-581 | G18959 | Federal | CONT | 8/27/1997 | 7/1/2005 | 5,760 | Cox Op | 24.7% | TERMIN |
| HIGH IS. A-563 (563/564/581/582) | HI A-582 | G02719 | Federal | RT | 7/1/1974 | | 5,760 | Cox Op | 24.7% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-582 | G02719 | Federal | OP 1 | 7/1/1974 | | 5,760 | Cox Op | 15.5% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-595 | G02721 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 72.4% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-596 | G02722 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 72.4% | PROD |
| MISSISSIPPI CANYON 109 | MC 108 | G09777 | Federal | RT | 7/1/1988 | | 5,760 | BP E&P | 75.2% | PROD |
| MISSISSIPPI CANYON 109 | MC 109 | G09777 | Federal | RT | 7/1/1988 | | 5,760 | BP E&P | 75.2% | PROD |
| MISSISSIPPI CANYON 109 | MC 110 | G18192 | Federal | RT | 8/1/1997 | | 5,760 | Fieldwood En | 50.0% | PROD |
| MISSISSIPPI CANYON 109 | MC 110 | G18192 | Federal | ORRI | 8/1/1997 | | 5,760 | Fieldwood En | 3.9% | PROD |
| MISSISSIPPI CANYON 21/65 | MC 21 | G28351 | Federal | RT | 7/1/1995 | | 4,445 | ANKOR En | 3.0% | PROD |
| MISSISSIPPI CANYON 311 | MC 311 | G02968 | Federal | RT | 12/1/1974 | | 5,760 | Fieldwood En | 100.0% | PROD |
| MISSISSIPPI CANYON 21/65 | MC 65 | G21742 | Federal | RT | 6/1/2000 | | 5,760 | ANKOR En | 100.0% | PROD |
| MISSISSIPPI CANYON 21/65 | MC 65 | G21742 | Federal | ORRI | 6/1/2000 | | 5,760 | ANKOR En | 13.0% | PROD |
| MATAGORDA ISLAND 519 FED / SL TX | MI 486 | MF88560 | SL - TX | WI | 10/5/1982 | 9/1/2019 | 1,440 | Fieldwood | 100.0% | EXPIRED |
| MATAGORDA ISLAND 519 FED / SL TX | MI 487 | MF-88562 | SL - TX | WI | 10/5/1982 | | 1,305 | Fieldwood | 100.0% | SI |
| MATAGORDA ISLAND 519 FED / SL TX | MI 518 | G05169 | Federal | RT | 1/1/1983 | 9/30/2019 | 5,675 | Fieldwood En | 100.0% | TERMIN |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MATAGORDA ISLAND 519 FED / SL TX | MI 518 | MF80522 | SL - TX | WI | 10/2/1979 | 9/1/2019 | 85 | Fieldwood | 100.0% | EXPIRED |
| MATAGORDA ISLAND 519 FED / SL TX | MI 519 | MF-79413 | SL - TX | WI | 2/6/1979 | | 739 | Fieldwood | 100.0% | SI |
| MATAGORDA IS. 622/623/635/636 | MI 622 | G05000 | Federal | RT | 4/1/1982 | 8/23/2018 | 5,760 | Fieldwood En | 81.0% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 622 | G05000 | Federal | OP | 4/1/1982 | 8/23/2018 | 5,760 | BP E&P | 37.5% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 623 | G03088 | Federal | RT | 4/1/1975 | 8/23/2018 | 5,760 | Fieldwood En | 81.0% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 623 | G03088 | Federal | OP | 4/1/1975 | 8/23/2018 | 5,760 | BP E&P | 37.5% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 635 | G06043 | Federal | RT | 10/1/1983 | 8/23/2018 | 5,760 | Fieldwood En | 81.0% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 635 | G06043 | Federal | OP | 10/1/1983 | 8/23/2018 | 5,760 | BP E&P | 37.5% | TERMIN |
| $0 Liability | MI 636 | G34670 | Federal | RT | 4/1/2013 | 3/25/2016 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | MI 652 | G34022 | Federal | RT | 2/1/2012 | 1/31/2017 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | MI 681 | G04703 | Federal | RT | 9/1/1981 | 2/25/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MI 685 | G04548 | Federal | RT | 1/1/1981 | 12/22/2014 | 5,760 | EOG Res | 50.0% | TERMIN |
| $0 Liability | MI 685 | G04548 | Federal | OP | 1/1/1981 | 12/22/2014 | 5,760 | EOG Res | 2.5% | TERMIN |
| $0 Liability | MI 703 | G03733 | Federal | RT | 6/1/1978 | 2/26/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MI 703 | G03733 | Federal | OP 1 | 6/1/1978 | 2/26/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MI 703 | G03733 | Federal | OP 2 | 6/1/1978 | 2/26/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| | MI 772 | MF93351 | SL - TX | WI | 2/7/1989 | 1/1/2017 | 704 | Fieldwood | 100.0% | TERMINATED |
| $0 Liability | MO 820 | G34403 | Federal | RT | 8/1/2012 | 7/7/2016 | 4,028 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | MO 821 | G05058 | Federal | RT | 4/1/1982 | 9/19/2014 | 4,028 | Fieldwood En | 100.0% | TERMIN |
| | MO 823 | STATE OF ALABAMA 627 | SL - AL | WI | 8/4/1984 | 1/1/2019 | 2,511 | Fieldwood | 100.0% | TERMINATED |
| MOBILE BAY 826 | MO 826 | G26176 | Federal | RT | 7/1/2004 | | 1,430 | Fieldwood En | 75.0% | PROD |
| $0 Liability | MO 871 | G32272 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,760 | Apache | 75.0% | EXPIR |
| $0 Liability | MO 913 | G33131 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR |
| $0 Liability | MO 914 | G33132 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR |
| | MP 120 | G3197 | Federal | ORRI | 7/1/1975 | | | Arena Off | 2.0% | PROD |
| | MP 120 | G03197 | Federal | RR | 5/28/1975 | | | Arena Off | 2.0% | PROD |
| $0 Liability | MP 134 | G34375 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | MP 135 | G34376 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | MP 136 | G34377 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | MP 137 | G34378 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | REUNQ |
| MAIN PASS 140 | MP 140 | G02193 | Federal | RT | 10/1/1972 | | 4,995 | Fieldwood En | 65.0% | PROD |
| $0 Liability | MP 143 | G34380 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | MP 146 | G34860 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,561 | Apache Shelf Exp | 75.0% | REUNQ |
| $0 Liability | MP 147 | G34861 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,561 | Apache Shelf Exp | 75.0% | REUNQ |
| $0 Liability | MP 148 | G34381 | Federal | RT | 11/1/2012 | 10/4/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | MP 149 | G34382 | Federal | RT | 7/1/2013 | 6/21/2017 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | MP 150 | G34862 | Federal | RT | 7/1/2013 | 6/21/2017 | 5,000 | Apache Shelf Exp | 75.0% | REUNQ |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 152 | G01966 | Federal | RT | 1/1/1970 | | 4,978 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 152 | G01966 | Federal | OP | 1/1/1970 | | 4,978 | Fieldwood En | 75.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 153 | G01967 | Federal | RT | 1/1/1970 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 153 | G01967 | Federal | OP | 1/1/1970 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | MP 166 | G26152 | Federal | OP | 8/1/1987 | 11/3/2014 | 4,995 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MP 175 | G08753 | Federal | RT | 8/1/1987 | 9/1/2013 | 4,995 | Tana Exp | 21.2% | TERMIN |
| $0 Liability | MP 255 | G07825 | Federal | RT | 8/1/1985 | 3/9/2014 | 4,995 | Fieldwood En | 52.4% | TERMIN |
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | MP 259 | G07828 | Federal | RT | 9/1/1985 | 7/11/2020 | 4,995 | Fieldwood En | 56.9% | TERMIN |
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | MP 260 | G07828 | Federal | RT | 9/1/1985 | 7/11/2020 | 4,995 | Fieldwood En | 56.9% | TERMIN |
| MAIN PASS 270 | MP 270 | G22812 | Federal | ORRI | 7/1/2001 | | 4,995 | Castex Off | 1.0% | UNIT |
| $0 Liability | MP 271 | G34388 | Federal | RT | 10/1/2012 | 9/30/2017 | 4,995 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | MP 272 | G34865 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,995 | Apache Shelf Exp | 75.0% | REUNQ |
| *No FW lease ownership | MP 273 | G36090 | Federal | RT | 7/1/2010 | | 4,995 | Castex Off | 37.5% | UNIT |
| $0 Liability | MP 274 | G33691 | Federal | RT | 7/1/2010 | 6/30/2015 | 4,995 | Castex Off | 37.5% | UNIT |
| MAIN PASS 270/275/289/290 | MP 275 | G13395 | Federal | RT | 9/1/1995 | | 4,995 | Fieldwood En | 100.0% | PROD |
| *No FW asset ownership | MP 275 | G13395 | Federal | ORRI | 9/1/1995 | | 4,995 | Fieldwood En | 8.3% | PROD |
| *No FW asset ownership | MP 281 | G10910 | Federal | RT | 7/1/1989 | | 4,995 | EnVen En Vent | 50.0% | PROD |
| *No FW asset ownership | MP 281 | G10910 | Federal | OP | 7/1/1989 | | 4,995 | EnVen En Vent | 30.0% | PROD |
| | MP 281 | G10910 | Federal | ORRI | 7/1/1989 | | 4,995 | EnVen En Vent | 3.1% | PROD |
| MAIN PASS 270/275/289/290 | MP 289 | G01666 | Federal | RT | 7/1/1963 | | 4,561 | Fieldwood En | 100.0% | PROD |
| $0 Liability | MP 290 | G34866 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,561 | Apache Shelf Exp | 75.0% | REUNQ |
| MAIN PASS 275/289/290 | MP 290 | G01667 | Federal | RT | 7/1/1967 | 11/22/2012 | 4,561 | Apache | 100.0% | TERMIN |
| $0 Liability | MP 291 | G34391 | Federal | RT | 11/1/2012 | 10/31/2017 | 4,561 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | MP 292 | G34392 | Federal | RT | 11/1/2012 | 10/4/2016 | 4,561 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | MP 293 | G34393 | Federal | RT | 11/1/2012 | 10/31/2017 | 4,561 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | MP 294 | G34394 | Federal | RT | 11/1/2012 | 10/4/2016 | 4,561 | Apache Shelf Exp | 100.0% | REUNQ |
| MAIN PASS 295 | MP 295 | G32263 | Federal | CONT | 8/1/2008 | 7/31/2015 | 4,561 | Fieldwood En | 37.5% | TERMIN |
| MAIN PASS 296/303/304 | MP 296 | G01673 | Federal | RT | 6/1/1967 | | 4,561 | GOM Shelf | 50.0% | UNIT |
| MAIN PASS 296/303/304 | MP 296 | G01673 | Federal | OP | 6/1/1967 | | 4,561 | GOM Shelf | 25.0% | UNIT |
| $0 Liability | MP 297 | G34395 | Federal | RT | 11/1/2012 | 10/4/2016 | 4,561 | Apache Shelf Exp | 100.0% | REUNQ |
| MAIN PASS 300/301 | MP 300 | G01317 | Federal | RT | 6/1/1962 | | 4,561 | Cantium | 10.4% | UNIT |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | OP 1 | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 10.4% | TERMIN |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | OP 2 | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 6.3% | TERMIN |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | OP 3 | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 10.4% | TERMIN |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | RT | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 10.4% | TERMIN |
| MAIN PASS 311/312 | MP 302 | G32264 | Federal | RT | 7/1/2008 | | 5,000 | GOM Shelf | 50.0% | PROD |
| MAIN PASS 296/303/304 | MP 303 | G04253 | Federal | OP 1 | 12/1/1979 | | 5,000 | Fieldwood En | 25.0% | UNIT |
| MAIN PASS 296/303/304 | MP 303 | G04253 | Federal | RT | 12/1/1979 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| MAIN PASS 308/309/310 | MP 304 | G03339 | Federal | OP | 4/1/1976 | | 5,000 | ConocoPhillips | 100.0% | UNIT |
| $0 Liability | MP 305 | G34396 | Federal | RT | 12/1/2012 | 11/22/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| MAIN PASS 308/309/310 | MP 308 | G32265 | Federal | RT | 8/1/2008 | | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 308/309/310 | MP 309 | G08760 | Federal | RT | 6/1/1987 | | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 308/309/310 | MP 310 | G04126 | Federal | RT | 10/1/1979 | | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 311/312 | MP 311 | G02213 | Federal | RT | 11/1/1972 | | 5,000 | GOM Shelf | 50.0% | PROD |
| MAIN PASS 311/312 | MP 311 | G02213 | Federal | OP | 11/1/1972 | | 5,000 | GOM Shelf | 25.0% | PROD |
| MAIN PASS 311/312 | MP 312 | G16520 | Federal | RT | 7/1/1996 | | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 311/312 | MP 314 | G33693 | Federal | OP | 7/1/2010 | 6/30/2015 | 5,000 | Apache Shelf Exp | 80.0% | EXPIR |
| MAIN PASS 308/309/310 | MP 315 | G08467 | Federal | RT | 7/1/1986 | | 5,000 | Fieldwood En | 80.0% | PROD |
| MAIN PASS 308/309/310 | MP 315 | G08467 | Federal | OP 3 | 7/1/1986 | | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 308/309/310 | MP 315 | G08467 | Federal | OP | 7/1/1986 | | 5,000 | Fieldwood En | 80.0% | PROD |
| | MP 5 | SL13890 | SL - LA | WI | | | 26 | Apache | 50.0% | TERMIN |
| MAIN PASS 59 | MP 59 | G03194 | Federal | OP | 7/1/1975 | | 1,406 | Cantium | 37.5% | TERMIN |
| MAIN PASS 59 | MP 59 | G08461 | Federal | OP | 7/1/1986 | | 2,340 | Cantium | 37.5% | UNIT |
| | MP 6 | SL03771 | SL - LA | WI | 4/26/1961 | 6/28/2012 | 1,067 | Apache | 50.0% | TERMIN |
| | MP 6 | SL13580 | SL - LA | WI | | | 287 | Apache | 50.0% | TERMIN |
| | MP 6 | SL13891 | SL - LA | WI | | | 270 | Apache | 50.0% | TERMIN |
| MAIN PASS 64 | MP 64 | G04909 | Federal | ORRI | 12/1/1981 | | 4,988 | Sanare En Part | 4.2% | UNIT |
| | MP 7 | SL03773 | SL - LA | WI | 4/26/1961 | 6/28/2012 | | Apache | 50.0% | TERMIN |
| | MP 7 | SL13892 | SL - LA | WI | | | 44 | Apache | 50.0% | TERMIN |
| $0 Liability | MP 74 | G34857 | Federal | RT | 8/1/2013 | 7/7/2016 | 1,733 | Apache Shelf Exp | 75.0% | REUNQ |
| MAIN PASS 77 | MP 77 | G04481 | Federal | RT | 11/1/1980 | | 4,655 | Fieldwood En Off | 26.2% | REUNQ |
| MAIN PASS 77 | MP 77/78 | G04481 | Federal | OP | 11/1/1980 | | 4,655 | Fieldwood En Off | 23.5% | REUNQ |
| MAIN PASS 6/7 FED / SL LA | MP 91 | G14576 | Federal | RT | 5/1/1994 | 3/18/2008 | 1,017 | Apache | 100.0% | TERMIN |
| | MU 883 | MF98761 | SL - TX | WI | | 10/1/2012 | | Apache | | TERMIN |
| MUSTANG ISLAND A-111 | MU A-111 | G03068 | Federal | RT | 4/1/1975 | 1/12/2013 | 5,760 | Apache | 100.0% | TERMIN |
| $0 Liability | MU A133 | G33392 | Federal | RT | 10/1/2009 | 9/30/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| MUSTANG ISLAND A-85 | MU A134 | G32724 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| MUSTANG ISLAND A-85 | MU A85 | G03061 | Federal | RT | 4/1/1975 | | 5,760 | EnVen En Vent | 53.3% | PROD |
| $0 Liability | PE 881 | G06390 | Federal | OP | 2/1/1984 | 10/17/2013 | 5,760 | ConocoPhillips | 18.8% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 1 | G04234 | Federal | RT | 2/1/1980 | 7/10/2020 | 1,568 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 10 | G02925 | Federal | RT | 12/1/1974 | 7/26/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 11 | 00071 | Federal | RT | 9/12/1946 | 9/8/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | RT | 7/1/1975 | 5/23/2018 | 5,000 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 1 | 7/1/1975 | 5/23/2018 | 391 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 2 | 7/1/1975 | 5/23/2018 | 3,906 | ANKOR En | 12.5% | TERMIN |

Exhibit I-A(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 3 | 7/1/1975 | 5/23/2018 | 703 | ANKOR En | 4.4% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 5 | 7/1/1975 | 5/23/2018 | 391 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 25 | PL 25 | G14535 | Federal | RT | 7/1/1994 | 7/30/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| *No FW asset ownership | PL 5 | G12027 | Federal | RT | 6/1/1990 | 5/13/2019 | 5,000 | Talos En Off | 100.0% | TERMIN |
| $0 Liability | PL 6 | G09651 | Federal | RT | 5/1/1988 | 7/12/2017 | 5,000 | Walter O&G | 100.0% | REUNQ |
| $0 Liability | PL 6 | G09651 | Federal | OP 1 | 5/1/1988 | 7/12/2017 | 5,000 | Walter O&G | 35.0% | REUNQ |
| $0 Liability | PL 6 | G09651 | Federal | OP 2 | 5/1/1988 | 7/12/2017 | 5,000 | Walter O&G | 65.0% | REUNQ |
| $0 Liability | PL 8 | G03587 | Federal | RT | 8/1/1977 | 6/19/2018 | 5,000 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 9 | G02924 | Federal | RT | 12/1/1974 | 7/26/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 9 | G02924 | Federal | OP | 12/1/1974 | 7/26/2020 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| | PN 883 | MF100410 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 883 | MF100411 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 883 | MF100412 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 883 | MF101898 | SL - TX | WI | 10/6/1998 | | | Apache | 35.0% | ACTIVE |
| | PN 883 | MF96146 | SL - TX | WI | 10/4/1994 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 883 | MF96147 | SL - TX | WI | 10/4/1994 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 883 | SL96146 | SL - TX | WI | 10/4/1994 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
| | PN 899L | MF100413 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 375 | Fieldwood | 35.0% | ACTIVE |
| | PN 899L | MF100414 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 360 | Fieldwood | 35.0% | ACTIVE |
| NORTH PADRE ISLAND 969 | PN 969 | G05953 | Federal | RT | 10/1/1983 | 6/30/2015 | 5,760 | Peregrine O&G Il | 8.3% | TERMIN |
| NORTH PADRE ISLAND 969 | PN 976 | G05954 | Federal | RT | 10/1/1983 | 6/30/2015 | 5,760 | Peregrine O&G Il | 8.3% | TERMIN |
| $0 Liability | SA 10 | G03958 | Federal | RT | 3/1/1979 | 12/29/2017 | 3,144 | Fieldwood En | 92.3% | TERMIN |
| $0 Liability | SA 10 | G03958 | Federal | OP | 3/1/1979 | 12/29/2017 | 3,144 | Fieldwood En | 20.0% | TERMIN |
| *No FW asset ownership | SA 13 | G03959 | Federal | OP | 3/1/1979 | 1/16/2020 | 5,000 | Renaissance Off | 50.0% | TERMIN |
| SOUTH MARSH IS. 10/18 | SM 10 | G03181 | Federal | RT | 4/1/1962 | 1/6/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 105/106 | SM 105 | G17938 | Federal | RT | 5/1/1988 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH MARSH IS. 105/106 | SM 106 | G03176 | Federal | RT | 2/1/1973 | 11/19/2015 | 2,500 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 105/106 | SM 106 | G03776 | Federal | RT | 6/1/1978 | | 2,500 | Fieldwood En | 100.0% | PROD |
| SOUTH MARSH ISLAND 107/108 | SM 108 | 00792 | Federal | RT | 5/1/1962 | | 5,000 | Talos En Off | 25.0% | PROD |
| SOUTH MARSH ISLAND 107/108 | SM 108 | 00792 | Federal | OP | 5/1/1962 | – | 5,000 | Talos En Off | 12.5% | PROD |
| SOUTH MARSH IS. 10/18 | SM 11 | G01182 | Federal | RT | 3/1/1962 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | RT | 12/1/1974 | | 2,784 | Fieldwood En | 66.7% | PROD |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | OP 2 | 12/1/1974 | | 2,784 | Fieldwood En | 33.3% | PROD |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | RT | 12/1/1974 | | 2,784 | Fieldwood En | 17.3% | PROD |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | OP 2 | 12/1/1974 | | 2,784 | Fieldwood En | 8.7% | PROD |
| SOUTH MARSH IS. 127/128 | SM 128 | G02587 | Federal | RT | 5/1/1974 | | 5,000 | Fieldwood En | 66.7% | PROD |
| SOUTH MARSH IS. 127/128 | SM 128 | G02587 | Federal | RT | 5/1/1974 | | 5,000 | Fieldwood En | 17.3% | PROD |
| SOUTH MARSH IS. 132 | SM 132 | G02282 | Federal | RT | 2/1/1973 | 4/1/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 136 | G19776 | Federal | RT | 5/1/1998 | 2/18/2012 | 3,293 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 136 | G02588 | Federal | RT | 5/1/1974 | 8/4/2019 | 2,500 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 137 | G02589 | Federal | RT | 5/1/1974 | 6/30/2015 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH ISLAND 141 | SM 141 | G02885 | Federal | OP 2 | 12/1/1974 | 4/1/2016 | 5,000 | Fieldwood En | 66.7% | TERMIN |
| SOUTH MARSH ISLAND 141 | SM 141 | G02885 | Federal | RT | 12/1/1974 | 4/1/2016 | 5,000 | Fieldwood En | 77.6% | TERMIN |
| SOUTH MARSH ISLAND 141 | SM 141 | G02885 | Federal | OP 2 | 12/1/1974 | 4/1/2016 | 5,000 | Fieldwood En | 17.3% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 149 | G02592 | Federal | RT | 5/1/1974 | | 2,500 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 150 | SM 150 | G16325 | Federal | RT | 6/1/1996 | 5/22/2018 | 3,329 | Fieldwood En | 50.0% | REUNQ |
| SOUTH MARSH ISLAND 161 | SM 161 | G04809 | Federal | RT | 9/1/1981 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | SM 171 | G34273 | Federal | RT | 9/1/2012 | 8/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | SM 172 | G34274 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SM 177 | G34275 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SM 178 | G34276 | Federal | RT | 9/1/2012 | 8/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH MARSH IS. 10/18 | SM 18 | G08680 | Federal | RT | 6/1/1987 | 11/3/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 10/18 | SM 18 | G08680 | Federal | OP | 6/1/1987 | 11/3/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | SM 188 | G34277 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SM 189 | G34278 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SM 193 | G34279 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SM 195 | G21108 | Federal | ORRI | 11/1/1980 | 12/27/2015 | | Tarpon O&D | 4.0% | TERMIN |
| | SM 236 | G4437 | Federal | ORRI | 11/1/1980 | | | Cox Op | 4.4% | UNIT |
| SOUTH MARSH IS. 241 | SM 241 | 00310 | Federal | RT | 2/7/1936 | | 114,601 | Cox Op | 60.0% | UNIT |
| SOUTH MARSH IS. 241 | SM 241 | 00310 | Federal | OP | 2/7/1936 | – | 114,601 | Cox Op | 60.0% | UNIT |
| SOUTH MARSH IS. 241 | SM 241 | 00310 | Federal | Unit | 2/7/1936 | – | 114,601 | Cox Op | 16.0% | UNIT |
| Ex N | SM 268 | G02310 | Federal | CONT | 12/19/1972 | 9/7/2009 | | Apache | 69.9% | TERMIN |
| $0 Liability | SM 268 | G34284 | Federal | RT | 8/1/2012 | 7/31/2017 | 3,237 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | RT | 5/1/1994 | | 5,000 | Fieldwood En | 72.8% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 1 | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 3 | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | RT | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 281 | G02600 | Federal | RT | 4/1/1974 | | 3,214 | Fieldwood En | 68.1% | PROD |
| $0 Liability | SM 33 | G13897 | Federal | OP | 5/1/1993 | 8/24/2014 | 5,000 | Black Elk En Off Op | 50.0% | TERMIN |
| $0 Liability | SM 44 | G23840 | Federal | RT | 5/1/2002 | 3/25/2014 | 5,000 | SandRidge En Off | 50.0% | TERMIN |
| SOUTH MARSH IS. 39 | SM 48 | 00786 | Federal | RT | 5/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH MARSH ISLAND 58 | SM 58 | G01194 | Federal | RT | 5/1/1967 | | 5,000 | ANKOR En | 100.0% | PROD |
| SOUTH MARSH IS. 66 | SM 66 | G01198 | Federal | RT | 6/1/1962 | 9/25/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | SM 7 | G33610 | Federal | RT | 7/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| SOUTH MARSH IS. 76 | SM 76 | G01208 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 93 | SM 93 | G21618 | Federal | RT | 5/1/2000 | | 5,000 | Talos ERT | 12.5% | PROD |
| $0 Liability | SM 97 | G32159 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Apache | 100.0% | EXPIR |
| SOUTH PASS 60 | SP 61 | G01609 | Federal | OP | 7/1/1967 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH PASS 60 | SP 62 | G01294 | Federal | RT | 6/1/1967 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| $0 Liability | SP 63 | G34365 | Federal | RT | 8/1/2012 | 7/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 64 | G01901 | Federal | RT | 1/1/1969 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 64 | G01901 | Federal | OP | 1/1/1969 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 65 | G01610 | Federal | RT | 1/1/1969 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 65 | G01610 | Federal | OP | 7/1/1967 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 66 | G1611 | Federal | ORRI | 6/1/1967 | | 5,000 | Fieldwood En | 8.3% | UNIT |
| $0 Liability | SP 68 | G34366 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | SP 69 | G34367 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| SOUTH PASS 61/70 | SP 70 | G01614 | Federal | RT | 6/1/1967 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH PASS 75 | SP 75 | G05051 | Federal | OP 2 | 4/1/1982 | 1/23/2016 | 5,000 | GOM Shelf | 28.8% | TERMIN |
| SOUTH PASS 75 | SP 75 | G05051 | Federal | RT | 4/1/1982 | 1/23/2016 | 5,000 | GOM Shelf | 71.2% | TERMIN |
| SOUTH PASS 75 | SP 75 | G05051 | Federal | OP 2 | 4/1/1982 | 1/23/2016 | 5,000 | GOM Shelf | 71.2% | TERMIN |
| SOUTH PASS 83 | SP 83 | G05052 | Federal | ORRI | 4/1/1982 | 2/27/2020 | 5,000 | Arena Off | 0.7% | TERMIN |
| SOUTH PASS 87/89 / WEST DELTA 128 | SP 87 | G07799 | Federal | RT | 9/1/1985 | 8/2/2020 | 3,540 | Fieldwood En | 33.3% | TERMIN |
| SOUTH PASS 87/89 / WEST DELTA 128 | SP 87 | G07799 | Federal | RT | 9/1/1985 | 8/2/2020 | 3,540 | Fieldwood En | 33.3% | TERMIN |
| SOUTH PASS 87/89 / WD 128 | SP 88 | G10894 | Federal | RT | 6/1/1989 | 5/2/2012 | 3,540 | Apache | 100.0% | TERMIN |
| SOUTH PASS 87/89 / WEST DELTA 128 | SP 89 | G01618 | Federal | RT | 9/1/1985 | | 5,000 | Fieldwood En | 50.0% | PROD |
| $0 Liability | SP 96 | G31431 | Federal | RT | 3/1/2008 | 2/21/2014 | 5,000 | Stone En | 50.0% | REUNQ |
| SHIP SHOAL 105/126/129 | SS 105 | G09614 | Federal | RT | 8/1/1988 | | 5,000 | Bennu O&G | 100.0% | PROD |
| SHIP SHOAL 105/126/129 | SS 105 | G09614 | Federal | OP 2 | 8/1/1988 | | 5,000 | Bennu O&G | 100.0% | PROD |
| SHIP SHOAL 105/126/129 | SS 105 | G09614 | Federal | OP 3 | 8/1/1988 | | 5,000 | Bennu O&G | 100.0% | PROD |
| SHIP SHOAL 105/126/129 | SS 126 | G12940 | Federal | RT | 5/1/1991 | 2/16/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 105/126/129 | SS 126 | G12940 | Federal | OP | 5/1/1991 | 2/16/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 105/126/129 | SS 129 | G12941 | Federal | RT | 5/1/1991 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 105/126/129 | SS 129 | G12941 | Federal | ORRI | 5/1/1991 | | 5,000 | Fieldwood En | 3.3% | PROD |
| SHIP SHOAL 130 | SS 130 | 00453 | Federal | CONT | 5/1/1991 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 145 | SS 145 | G34831 | Federal | CONT | 9/1/2013 | 10/31/2019 | 5,000 | Hoactzin Part | 25.0% | TERMIN |
| SHIP SHOAL 150 | SS 150 | G0419 | Federal | ORRI | 11/1/1954 | | 5,000 | Ridgelake En | 5.0% | PROD |
| SHIP SHOAL 151 | SS 151 | G15282 | Federal | RT | 7/1/1997 | 7/5/2016 | 5,000 | EnVen En Vent | 100.0% | PROD |
| $0 Liability | SS 153 | G18011 | Federal | RT | 7/1/1997 | 7/5/2016 | 5,000 | Fieldwood En | 33.3% | TERMIN |
| SHIP SHOAL 159 | SS 154 | 00420 | Federal | ORRI | 11/1/1954 | | 5,000 | Ridgelake En | 8.0% | PROD |
| SHIP SHOAL 159 | SS 159 | G11984 | Federal | OP | 7/1/1990 | 10/31/2019 | 5,000 | Hoactzin Part | 15.5% | TERMIN |
| SHIP SHOAL 169/182/193/194 | SS 169 | 00820 | Federal | RT | 4/1/1960 | | 5,000 | Fieldwood En | 66.7% | PROD |

Exhibit I–A(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | SS 175 | G05550 | Federal | RT | 7/1/1983 | | 5,000 | Chevron USA | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | SS 176 | G38646 | Federal | RT | 7/1/2010 | | 5,000 | Fieldwood En | 7.4% | PROD |
| SHIP SHOAL 178 | SS 178 | G05551 | Federal | RT | 7/1/1983 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 169/182/193/194 | SS 182 | G03998 | Federal | RT | 3/1/1979 | | 2,500 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 189 | SS 188 | G05203 | Federal | CONT | 1/1/1983 | 12/30/1991 | 5,027 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 189 | SS 189 | G04232 | Federal | OP 5 | 12/1/1979 | | 5,000 | Fieldwood En | 99.0% | PROD |
| SHIP SHOAL 189 | SS 189 | G04232 | Federal | RT | 12/1/1979 | | 5,000 | Fieldwood En | 99.0% | PROD |
| SHIP SHOAL 189 | SS 189 | G4232 | Federal | ORRI | 12/1/1979 | | | Fieldwood En | 8.0% | PROD |
| SHIP SHOAL 190/206/207/216 | SS 190 | G10775 | Federal | RT | 4/1/1989 | 8/10/2019 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| SHIP SHOAL 190/206/207/216 | SS 190 | G10775 | Federal | OP | 4/1/1989 | 8/10/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 169/182/193/194 | SS 193 | G13917 | Federal | RT | 5/1/1993 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 169/182/193/194 | SS 194 | G15288 | Federal | RT | 7/1/1995 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 198/199 | SS 198 | 00593 | Federal | RT | 9/1/1955 | | 2,969 | Renaissance Off | 50.0% | PROD |
| SHIP SHOAL 198/199 | SS 198 | G12355 | Federal | OP | 9/1/1955 | | 2,031 | Renaissance Off | 25.0% | PROD |
| $0 Liability | SS 199 | 00594 | Federal | RT | 9/1/1955 | | 3,516 | Talos En Off | 50.0% | PROD |
| SHIP SHOAL 198/199 | SS 199 | G12358 | Federal | OP | 9/1/1955 | | 1,484 | Renaissance Off | 50.0% | PROD |
| SHIP SHOAL 204 | SS 204 | G01520 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 55.2% | PROD |
| SHIP SHOAL 190/206/216 | SS 206 | G01522 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 60.0% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 72.2% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | OP | 7/1/1967 | | 5,000 | Fieldwood En | 47.6% | UNIT |
| SHIP SHOAL 189 | SS 210 | G05204 | Federal | CONT | 1/1/1983 | 12/26/1990 | 5,000 | Fieldwood En | 100.0% | RELINQ |
| SHIP SHOAL 190/206/216 | SS 216 | G01524 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 80.0% | PROD |
| SHIP SHOAL 243 | SS 243 | G10780 | Federal | RT | 7/1/1989 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 243 | SS 243 | G10780 | Federal | ORRI | 7/1/1989 | | | Fieldwood En | 4.2% | PROD |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En Off | 5.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G1030 | Federal | ORRI | 6/1/1962 | | | Fieldwood En Off | 0.2% | UNIT |
| $0 Liability | SS 258 | G05560 | Federal | RT | 7/1/1983 | 4/1/2016 | 5,000 | Castex Off | 100.0% | TERMIN |
| $0 Liability | SS 258 | G05560 | Federal | OP | 7/1/1983 | 4/1/2016 | 5,000 | Castex Off | 7.4% | TERMIN |
| SHIP SHOAL 258/259 | SS 259 | G05044 | Federal | RT | 4/1/1982 | 3/1/2018 | 5,141 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 258/259 | SS 259 | G05044 | Federal | OP | 4/1/1982 | 3/1/2018 | 5,141 | Fieldwood En | 7.4% | TERMIN |
| SHIP SHOAL 274 | SS 271 | G01038 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En Off | 20.0% | UNIT |
| SHIP SHOAL 274 | SS 274 | G01039 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 274 | SS 276 | G10785 | Federal | RT | 5/1/1989 | 10/31/2007 | 5,000 | Monforte | 66.7% | TERMIN |
| SHIP SHOAL 274 | SS 277 | G09627 | Federal | RT | 5/1/1988 | | 5,000 | Fieldwood En | 1.0% | SOP |
| SHIP SHOAL 274 | SS 277 | G09627 | Federal | OP | 5/1/1988 | | 5,000 | Fieldwood En | 100.0% | SOP |
| $0 Liability | SS 278 | G32206 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Apache | 100.0% | EXPIR |
| SHIP SHOAL 300/314/315 | SS 291 | G02923 | Federal | OP | 12/1/1974 | | 3,750 | Fieldwood En | 67.9% | OPENS |
| SHIP SHOAL 30/31/32/33 | SS 30 | 00333 | Federal | RT | 9/12/1946 | | 5,000 | W & T Off | 37.5% | UNIT |
| | SS 301 | G10794 | Federal | ORRI | 5/1/1989 | | | Fieldwood En | 1.5% | SOP |
| SHIP SHOAL 30/31/32/33 | SS 31 | 00334 | Federal | RT | 9/12/1946 | | 5,000 | W & T Off | 37.5% | UNIT |
| SHIP SHOAL 300/314/315 | SS 314 | G26074 | Federal | OP 4 | 5/1/2004 | | 5,000 | Fieldwood En | 37.5% | PROD |
| SHIP SHOAL 300/314/315 | SS 314 | G26074 | Federal | RT | 5/1/2004 | | 5,000 | Fieldwood En | 75.0% | PROD |
| SHIP SHOAL 300/314/315 | SS 314 | G26074 | Federal | ORRI | 5/1/2004 | | | Fieldwood En | 4.5% | PROD |
| SHIP SHOAL 30/31/32/33 | SS 32 | 00335 | Federal | RT | 9/12/1946 | | 5,000 | W & T Off | 37.5% | UNIT |
| SHIP SHOAL 30/31/32/33 | SS 33 | 00336 | Federal | CONT | 9/12/1946 | – | 5,000 | W&T Off | 28.9% | UNIT |
| SHIP SHOAL 30/31/32/33 | SS 33 | 00336 | Federal | ORRI | 9/12/1946 | – | | W&T Off | 0.8% | UNIT |
| SHIP SHOAL 354 | SS 354 | G15312 | Federal | RT | 7/1/1995 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | SS 355 | G33650 | Federal | RT | 6/1/2010 | 4/7/2016 | 5,323 | Apache Shelf Exp | 100.0% | PROD |
| SHIP SHOAL 58 | SS 58 | G07746 | Federal | ORRI | 7/1/1985 | | 5,000 | Talos Third Cst | 10.5% | PROD |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | SS 68 | G02917 | Federal | RT | 12/1/1974 | 11/15/2019 | 5,000 | Fieldwood En | 100.0% | RELINQ |
| SHIP SHOAL 87 | SS 87 | G12349 | Federal | ORRI | 9/12/1946 | | 1,953 | Sanare En Part | 1.0% | UNIT |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | RT | 12/1/1974 | | 5,000 | Fieldwood En | 87.5% | PROD |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | OP 2 | 12/1/1974 | | 5,000 | Fieldwood En | 87.5% | PROD |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | OP 2 | 12/1/1974 | | 5,000 | Fieldwood En | 12.5% | PROD |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | RT | 12/1/1974 | | 5,000 | Fieldwood En | 12.5% | PROD |
| $0 Liability | ST 146 | G33110 | Federal | RT | 7/1/2009 | 6/30/2014 | 3,772 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH TIMBALIER 148 | ST 148 | G01960 | Federal | RT | 2/1/1970 | | 2,500 | Arena Off | 15.6% | PROD |
| SOUTH TIMBALIER 148 | ST 148 | G01960 | Federal | OP | 2/1/1970 | | 2,500 | Arena Off | 15.6% | PROD |
| SOUTH TIMBALIER 176 | ST 161 | G01248 | Federal | OP | 6/1/1962 | | 5,000 | Arena Off | 25.0% | PROD |
| $0 Liability | ST 166 | G01252 | Federal | OP | 6/1/1962 | 8/27/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | ST 173 | G04001 | Federal | RT | 3/1/1979 | 8/27/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | ST 179 | G12020 | Federal | RT | 6/1/1990 | 8/27/2015 | 5,000 | Fieldwood En Off | 50.0% | TERMIN |
| $0 Liability | ST 179 | G12020 | Federal | OP | 6/1/1990 | 8/27/2015 | 5,000 | Fieldwood En Off | 68.8% | TERMIN |
| $0 Liability | ST 190 | G01261 | Federal | RT | 6/1/1962 | 9/27/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| $0 Liability | ST 190 | G01261 | Federal | OP | 6/1/1962 | 9/27/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| $0 Liability | ST 194 | G05610 | Federal | RT | 7/1/1983 | 1/5/2015 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | ST 203 | G01269 | Federal | OP 1 | 6/1/1962 | 5/25/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| $0 Liability | ST 203 | G01269 | Federal | OP 2 | 6/1/1962 | 5/25/2014 | 5,000 | Black Elk En Off Op | 20.0% | TERMIN |
| $0 Liability | ST 203 | G01269 | Federal | RT | 6/1/1962 | 5/25/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | RT | 7/1/1983 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 3 | 7/1/1983 | | 5,000 | Fieldwood En | 75.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 4 | 7/1/1983 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 7 | 7/1/1983 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 6 | 7/1/1983 | | 5,000 | Fieldwood En | 75.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 5 | 7/1/1983 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 206 | G05613 | Federal | RT | 7/1/1983 | 1/31/2015 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | ST 228 | G32217 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Eni US Op | 40.0% | EXPIR |
| SOUTH TIMBALIER 229 | ST 229 | G13938 | Federal | OP | 7/1/1993 | | 2,148 | W & T Off | 33.3% | PROD |
| $0 Liability | ST 244 | G34341 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,572 | Apache Shelf Exp | 100.0% | RELINQ |
| *No FW lease ownership | ST 26 | G01361 | Federal | RT | 5/1/1964 | | 625 | Cox Op | 50.0% | UNIT |
| *No FW lease ownership | ST 26 | G01870 | Federal | RT | 11/1/1968 | | 1,875 | Cox Op | 50.0% | UNIT |
| *No FW lease ownership | ST 26 | G02620 | Federal | RT | 5/1/1974 | | 2,500 | Cox Op | 50.0% | UNIT |
| SOUTH TIMBALIER 276/295/296 | ST 276 | G07780 | Federal | RT | 8/1/1985 | | 5,000 | Eni US Op | 100.0% | UNIT |
| SOUTH TIMBALIER 276/295/296 | ST 276 | G07780 | Federal | OP | 8/1/1985 | | 5,000 | Eni US Op | 100.0% | UNIT |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | ST 290 | G16454 | Federal | RT | 4/24/1996 | 1/5/2010 | 5,000 | Apache | 100.0% | PROD |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | ST 291 | G16455 | Federal | RT | 9/1/1996 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 276/295/296 | ST 291 | G16455 | Federal | OP | 9/1/1996 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | ST 295 | G05646 | Federal | RT | 7/1/1991 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 276/295/296 | ST 296 | G12981 | Federal | RT | 5/1/1991 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 276/295/296 | ST 296 | G12981 | Federal | OP | 5/1/1991 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 311 | ST 311 | G31418 | Federal | RT | 3/1/2008 | | 5,000 | Walter O&G | 45.0% | PROD |
| SOUTH TIMBALIER 316 | ST 316 | G22762 | Federal | RT | 6/1/2001 | | 4,435 | W & T Off | 20.0% | PROD |
| SOUTH TIMBALIER 311 | ST 320 | G24990 | Federal | RT | 6/1/2003 | | 5,000 | W & T Off | 11.3% | PROD |
| $0 Liability | ST 47 | G33652 | Federal | RT | 7/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| SOUTH TIMBALIER 49 | ST 49 | G24956 | Federal | RT | 6/1/2003 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 49 | ST 49 | G24956 | Federal | OP | 6/1/2003 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | ST 50 | G34331 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | PROD |
| SOUTH TIMBALIER 53/67/68 | ST 53 | G04000 | Federal | RT | 3/1/1979 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 53/67/68 | ST 53 | G04000 | Federal | OP 1 | 3/1/1979 | | 5,000 | Fieldwood En | 50.0% | PROD |
| $0 Liability | ST 59 | G31404 | Federal | RT | 2/1/2008 | 1/17/2014 | 5,000 | LLOG Exp Off | 25.0% | TERMIN |
| $0 Liability | ST 64 | G33106 | Federal | RT | 7/1/2009 | 6/30/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH TIMBALIER 53/67/68 | ST 67 | 00020 | Federal | CONT | 4/25/1947 | | | Fieldwood En | 79.7% | UNIT |
| SABINE PASS 10 | SX 17 | G04143 | Federal | OP | 10/1/1979 | 9/30/2013 | 2,042 | Apache | 92.3% | RELINQ |
| SABINE PASS 10 | SX 17 | G04143 | Federal | RT | 10/1/1979 | 9/30/2013 | 2,042 | Apache | 20.0% | RELINQ |
| $0 Liability | VK 118 | G33697 | Federal | RT | 5/1/2010 | 4/30/2015 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR |
| VIOSCA KNOLL 203/204 | VK 203 | G07890 | Federal | RT | 7/1/1985 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 203/204 | VK 203 | G07890 | Federal | OP | 7/1/1985 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 203/204 | VK 204 | G04921 | Federal | RT | 12/1/1981 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 203/204 | VK 204 | G04921 | Federal | OP | 12/1/1981 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 251/340/384 | VK 251 | G10930 | Federal | RT | 7/1/1989 | | 5,760 | Fieldwood En Off | 7.5% | UNIT |
| VIOSCA KNOLL 251/340/384 | VK 340 | G10933 | Federal | OP | 7/1/1989 | | 5,760 | Fieldwood En Off | 7.5% | UNIT |
| $0 Liability | VK 384 | G16541 | Federal | OP | 6/1/1996 | 2/8/2014 | 5,760 | Chevron USA | 20.0% | TERMIN |

Exhibit I-A(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | VK 692/693 | G07898 | Federal | RT | 9/1/1985 | 7/11/2020 | 4,773 | Fieldwood En | 56.9% | TERMIN |
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | VK 694 | G13055 | Federal | RT | 7/1/1991 | 7/11/2020 | 3,214 | Fieldwood En | 53.1% | TERMIN |
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | VK 694 | G13055 | Federal | OP | 7/1/1991 | 7/11/2020 | 3,214 | Fieldwood En | 92.1% | TERMIN |
| $0 Liability | VK 698 | G07901 | Federal | RT | 8/1/1985 | 2/20/2014 | 4,996 | Fieldwood En | 52.4% | TERMIN |
| $0 Liability | VK 736 | G13987 | Federal | RT | 7/1/1993 | 12/12/2013 | 4,742 | Fieldwood En | 100.0% | TERMIN |
| VIOSCA KNOLL 780 | VK 780 | G06884 | Federal | RT | 6/1/1984 | 12/12/2013 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| VIOSCA KNOLL 780 | VK 824 | G15436 | Federal | RT | 9/1/1995 | 8/20/2013 | 5,760 | Apache | 100.0% | REUNQ |
| $0 Liability | VK 856 | G34872 | Federal | RT | 7/1/2013 | 6/21/2017 | 877 | Apache Shelf Exp | 75.0% | REUNQ |
| $0 Liability | VK 899 | G34408 | Federal | RT | 8/1/2012 | 7/31/2017 | 1,553 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | VR 115 | G33593 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | VR 128 | G33594 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| *No FW lease ownership | VR 131 | 00775 | Federal | OP | 9/1/1981 | 7/20/2020 | 4,923 | Talos En Off | 72.5% | TERMIN |
| $0 Liability | VR 146 | G33084 | Federal | RT | 7/1/2009 | 6/30/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | VR 156 | G34251 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | VR 160 | G34252 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | VR 161 | G34253 | Federal | RT | 10/1/2012 | 7/24/2015 | 4,868 | Apache Shelf Exp | 100.0% | REUNQ |
| VERMILION 252 | VR 252 | G05431 | Federal | ORRI | 7/1/1983 | | 4,454 | Castex Off | 2.0% | PROD |
| VERMILION 253 | VR 253 | G17912 | Federal | ORRI | 7/1/1997 | | 5,000 | Castex Off | 0.6% | PROD |
| $0 Liability | VR 26 | 00297 | Federal | OP 1 | 11/26/1946 | 9/12/2013 | 4,646 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 26 | 00297 | Federal | OP 2 | 11/26/1946 | 9/12/2013 | 4,646 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | VR 26 | 00297 | Federal | RT | 11/26/1946 | 9/12/2013 | 4,646 | Apache Shelf | 50.0% | TERMIN |
| VERMILION 261/262 | VR 261 | G03328 | Federal | RT | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 75.0% | TERMIN |
| VERMILION 261/262 | VR 261 | G03328 | Federal | OP 2 | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 37.5% | TERMIN |
| VERMILION 261/262 | VR 261 | G03328 | Federal | ORRI | 4/1/1976 | | 5,429 | Fieldwood En | 6.3% | TERMIN |
| VERMILION 261/262 | VR 262 | G34257 | Federal | RT | 10/1/2012 | 7/7/2017 | 5,485 | Fieldwood En | 75.0% | REUNQ |
| VERMILION 265 | VR 265 | G01955 | Federal | RT | 1/1/1970 | | 5,000 | Fieldwood En | 100.0% | SOP |
| $0 Liability | VR 27 | G01329 | Federal | OP 2 | 12/1/1962 | 6/16/2013 | 1,902 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 27 | G01329 | Federal | OP 1 | 12/1/1962 | 6/16/2013 | 1,902 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | VR 27 | G01329 | Federal | RT | 12/1/1962 | 6/16/2013 | 1,902 | Apache Shelf | 50.0% | TERMIN |
| VERMILION 271/272 / SMI 87/102 | VR 271 | G04800 | Federal | OP | 9/1/1981 | | 4,418 | Castex Off | 12.5% | PROD |
| VERMILION 326 | VR 326 | G21096 | Federal | RT | 6/1/1999 | 8/21/2020 | 5,000 | Fieldwood En | 70.3% | TERMIN |
| | VR 332 | G09514 | Federal | CONT | 3/30/1988 | | | Fieldwood En | 50.0% | PROD |
| $0 Liability | VR 34 | G01356 | Federal | OP 1 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 34 | G01356 | Federal | OP 2 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 34 | G01356 | Federal | RT | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00548 | Federal | OP 1 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00548 | Federal | OP 2 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 35 | 00549 | Federal | OP 1 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00549 | Federal | OP 2 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 35 | 00548 | Federal | RT | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| VERMILION 356 | VR 356 | G17921 | Federal | ORRI | 8/1/1997 | | 4,093 | EnVen En Vent | 2.6% | PROD |
| $0 Liability | VR 36 | G01357 | Federal | OP 2 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 36 | G01357 | Federal | OP 1 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 36 | G01357 | Federal | RT | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| Other (TBD) | VR 369 | G02274 | Federal | OP 4 | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| Other (TBD) | VR 369 | G02274 | Federal | OP 3 | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| Other (TBD) | VR 369 | G02274 | Federal | RT | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| Other (TBD) | VR 369 | G02274 | Federal | Unit | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| $0 Liability | VR 374 | G32153 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Apache | 100.0% | EXPIR |
| VERMILION 380/381 | VR 380 | G02580 | Federal | RT | 5/1/1974 | | 5,000 | Fieldwood En | 100.0% | PROD |
| VERMILION 380/381 | VR 381 | G16314 | Federal | RT | 9/1/1996 | 10/27/2015 | 5,000 | Apache Shelf | 100.0% | TERMIN |
| VERMILION 380/381 | VR 381 | G16314 | Federal | OP | 9/1/1996 | 10/27/2015 | 5,000 | Apache Shelf | 80.0% | TERMIN |
| $0 Liability | VR 386 | G02278 | Federal | RT A | 2/1/1973 | | 5,000 | Marathon Oil | 30.2% | UNIT |
| $0 Liability | VR 386 | G02278 | Federal | RT B | 2/1/1973 | | 5,000 | Marathon Oil | 29.0% | UNIT |
| VERMILION 408 | VR 408 | G15212 | Federal | RT | 7/1/1995 | | 5,000 | Fieldwood En | 12.5% | PROD |
| VERMILION 408 | VR 408 | G15212 | Federal | OP | 7/1/1995 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST CAMERON 71/72/102 | WC 102 | 00247 | Federal | RT | 9/9/1946 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| WEST CAMERON 110 | WC 110 | 00081 | Federal | RT | 6/10/1947 | | 5,000 | BP E&P | 100.0% | PROD |
| WEST CAMERON 110 | WC 110 | 00081 | Federal | OP | 6/10/1947 | | 5,000 | BP E&P | 37.5% | PROD |
| WEST CAMERON 110/111 | WC 111 | 00082 | Federal | RT | 6/10/1947 | | 1,250 | BP E&P | 100.0% | PROD |
| WEST CAMERON 110/111 | WC 111 | 00082 | Federal | OP | 6/10/1947 | | 1,250 | BP E&P | 37.5% | PROD |
| $0 Liability | WC 111 | G33046 | Federal | RT | 8/1/2009 | 7/31/2014 | 3,750 | Eni US Op | 25.0% | EXPIR |
| $0 Liability | WC 130 | G12761 | Federal | RT | 5/1/1991 | 4/1/2015 | 5,000 | Eni US Op | 25.0% | TERMIN |
| $0 Liability | WC 144 | G01953 | Federal | RT | 2/1/1970 | 4/1/2016 | 5,000 | Fieldwood En | 62.5% | TERMIN |
| $0 Liability | WC 155 | G32114 | Federal | RT | 8/1/2008 | 7/31/2015 | 5,000 | Apache | 100.0% | EXPIR |
| WEST CAMERON 163 | WC 163 | G05299 | Federal | RT A | 7/1/1983 | 12/1/2015 | 5,000 | Fieldwood En | 61.0% | TERMIN |
| WEST CAMERON 163 | WC 163 | G05299 | Federal | RT B | 7/1/1983 | 12/1/2015 | 5,000 | Fieldwood En | 56.2% | TERMIN |
| $0 Liability | WC 165 | 00758 | Federal | RT | 4/1/1960 | 12/30/2017 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 1 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 2 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 3 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 4 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 10 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 11 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 12 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | WC 181 | G33558 | Federal | RT | 6/1/2010 | 4/30/2015 | 2,500 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | WC 196 | G05292 | Federal | RT | 7/1/1983 | 8/27/2015 | 5,000 | Union Oil CA | 8.3% | TERMIN |
| *No FW asset ownership | WC 20 | 00680 | Federal | OP | 8/1/1959 | | 1,873 | Sanare En Part | 50.0% | PROD |
| $0 Liability | WC 210 | G34216 | Federal | RT | 10/1/2012 | 3/3/2014 | 5,000 | Apache | 100.0% | REUNQ |
| $0 Liability | WC 225 | G00900 | Federal | OP 1 | 4/1/1962 | 3/14/2018 | 5,000 | Tarpon O&D | 26.7% | TERMIN |
| WEST CAMERON 269 | WC 269 | G13563 | Federal | OP | 8/1/1992 | 8/11/2020 | 5,000 | Sanare En Part | 33.8% | TERMIN |
| WEST CAMERON 289/290/294 | WC 290 | G04818 | Federal | OP 1 | 9/1/1981 | 7/21/2020 | 5,000 | Fieldwood En Off | 10.4% | TERMIN |
| WEST CAMERON 289/290/294 | WC 290 | G04818 | Federal | RT | 9/1/1981 | 7/21/2020 | 5,000 | Fieldwood En Off | 16.7% | TERMIN |
| $0 Liability | WC 291 | G04397 | Federal | RT | 11/1/1980 | 7/16/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | WC 291 | G04397 | Federal | OP | 11/1/1980 | 7/16/2013 | 5,000 | Apache | 60.0% | TERMIN |
| WEST CAMERON 295 | WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | | 5,000 | Fieldwood En | 20.6% | PROD |
| $0 Liability | WC 300 | G15078 | Federal | RT | 7/1/1995 | 12/21/2013 | 5,000 | SandRidge En Off | 14.0% | TERMIN |
| $0 Liability | WC 300 | G15078 | Federal | OP | 7/1/1995 | 12/21/2013 | 5,000 | SandRidge En Off | 24.4% | TERMIN |
| WEST CAMERON 310 | WC 310 | G17789 | Federal | RT | 8/1/1997 | 6/3/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| WEST CAMERON 310 | WC 310 | G17789 | Federal | OP | 8/1/1997 | 6/3/2016 | 5,000 | Fieldwood En | 73.7% | TERMIN |
| WEST CAMERON 33 | WC 33 | G16050 | Federal | RT | 7/1/1995 | | 2,891 | Fieldwood En | 100.0% | PROD |
| WEST CAMERON 35/65/66 | WC 34 | G03251 | Federal | RT | 9/1/1975 | 6/1/2012 | 4,506 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 35 | G02819 | Federal | RT | 12/1/1974 | 11/3/2013 | 4,688 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 35 | G02819 | Federal | OP | 12/1/1974 | 11/3/2013 | 4,688 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 35, WC 6 | G01860 | Federal | OP 2 | 1/1/1969 | | 1,563 | BP E&P | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 35/66 | G01860 | Federal | RT | 1/1/1969 | | 1,563 | BP E&P | 100.0% | TERMIN |
| $0 Liability | WC 401 | G07619 | Federal | RT | 7/1/1985 | 9/27/2015 | 5,000 | ConocoPhillips | 33.3% | TERMIN |
| $0 Liability | WC 576 | G33061 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | WC 624 | G33064 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | OP 4 | 12/1/1974 | | 5,000 | BP E&P | 81.3% | PROD |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | RT | 12/1/1974 | | 5,000 | BP E&P | 100.0% | PROD |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | OP | 12/1/1974 | | 5,000 | BP E&P | 100.0% | PROD |
| $0 Liability | WC 650 | G34217 | Federal | RT | 10/1/2012 | 9/19/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | WC 656 | G34218 | Federal | RT | 10/1/2012 | 9/19/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | WC 657 | G34219 | Federal | RT | 10/1/2012 | 9/19/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| WEST CAMERON 35/65/66 | WC 66 | G02826 | Federal | OP 2 | 12/1/1974 | | 3,750 | Fieldwood En | 75.0% | PROD |
| WEST CAMERON 35/65/66 | WC 66 | G02826 | Federal | RT | 12/1/1974 | | 3,750 | Fieldwood En | 100.0% | PROD |
| WEST CAMERON 35/65/66 | WC 67 | G03256 | Federal | OP 1 | 9/1/1975 | 2/8/2008 | 5,000 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 67 | G03256 | Federal | OP 2 | 9/1/1975 | 2/8/2008 | 5,000 | Apache | 66.6% | TERMIN |
| $0 Liability | WC 68 | 00526 | Federal | RT | 9/1/1955 | 9/3/2014 | 5,000 | BP Am Prod | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 71 | 00244 | Federal | RT | 9/9/1946 | 12/19/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| WEST CAMERON 71/72/102 | WC 72 | G23735 | Federal | RT | 7/1/2002 | | 5,000 | Fieldwood En Off | 25.00% | PROD |
| *No FW asset ownership | WC 73 | G23736 | Federal | OP | 7/1/2002 | | 5,000 | Castex Off | 25.00% | PROD |
| $0 Liability | WC 99 | G34213 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| WEST DELTA 90/103 | WD 103 | 00840 | Federal | RT | 5/1/1960 | | 3,984 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 90/103 | WD 103 | G12360 | Federal | OP 1 | 5/1/1960 | | 1,016 | Fieldwood En | 81.3% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 3 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 5 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 3 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 4 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 5 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 6 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 121/122 | WD 121 | G19843 | Federal | RT | 8/1/1998 | | 5,000 | Fieldwood En | 84.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 1 | 8/1/1998 | | 5,000 | Fieldwood En | 84.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 2 | 8/1/1992 | | 5,000 | Fieldwood En | 84.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | RT | 8/1/1992 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH PASS 87/89 / WEST DELTA 128 | WD 128 | G10883 | Federal | RT | 6/1/1989 | 8/2/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| WEST DELTA 133 | WD 133 | G1106 | Federal | ORRI | 5/1/1962 | | | Arena Off | 1.0% | PROD |
| WEST DELTA 133 | WD 133 | G1106 | Federal | ORRI | 5/1/1962 | | | Arena Off | 7.2% | PROD |
| WEST DELTA 133 | WD 133 | G1106 | Federal | RT | 5/1/1962 | | 5,000 | Arena Off | 100.0% | PROD |
| $0 Liability | WD 34 | G03414 | Federal | RT | 1/1/1977 | 3/20/2017 | 2,500 | Fieldwood En | 76.7% | TERMIN |
| $0 Liability | WD 34 | G03414 | Federal | OP | 1/1/1977 | 3/20/2017 | 2,500 | Fieldwood En | 46.7% | TERMIN |
| $0 Liability | WD 38 | G22772 | Federal | RT | 5/1/2001 | 9/13/2013 | 1,796 | Apache | 87.5% | TERMIN |
| $0 Liability | WD 38 | G22772 | Federal | OP | 5/1/2013 | 9/13/2013 | 1,796 | Apache | 43.8% | TERMIN |
| $0 Liability | WD 41 | G01073 | Federal | RT | 3/1/1962 | 10/25/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | WD 41 | G01073 | Federal | OP | 3/1/1962 | 10/25/2013 | 5,000 | Apache | 50.0% | TERMIN |
| $0 Liability | WD 42 | G16470 | Federal | RT | 9/1/1996 | 1/26/2014 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | WD 42 | G16470 | Federal | OP | 9/1/1996 | 1/26/2014 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| | WD 53 | 17935 | SL- LA | WI | 10/13/2003 | 1/27/2012 | -- | Whitney Oil | 33.3% | TERMIN |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 67 | 00179 | Federal | RT | 7/17/1948 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 67 | 00179 | Federal | OP 2 | 7/17/1948 | | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 68 | 00180 | Federal | RT | 7/17/1948 | | 1,833 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 68 | 00180 | Federal | OP 2 | 7/17/1948 | | 1,833 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 69 | 00181 | Federal | RT | 7/17/1948 | | 3,665 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 69 | 00181 | Federal | OP 2 | 7/17/1948 | | 3,665 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 70 | 00182 | Federal | RT | 7/17/1948 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 70 | 00182 | Federal | OP 2 | 7/17/1948 | | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 71 | 00838 | Federal | RT | 4/1/1960 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 71 | 00838 | Federal | OP 2 | 4/1/1960 | | 5,000 | GOM Shelf | 37.5% | UNIT |
| WEST DELTA 75/90 | WD 75 | G0108S | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 90/103 | WD 90 | G01089 | Federal | OP 3 | 6/1/1962 | | 5,000 | Fieldwood En | 81.3% | PROD |
| WEST DELTA 90/103 | WD 90 | G01089 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 94 | 00839 | Federal | RT | 5/1/1960 | | 5,000 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 94 | 00839 | Federal | OP 2 | 5/1/1960 | | 5,000 | GOM Shelf | 37.5% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 95 | G01497 | Federal | RT | 12/1/1966 | | 5,000 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 95 | G01497 | Federal | OP 1 | 12/1/1966 | | 5,000 | GOM Shelf | 37.5% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 96 | G01498 | Federal | RT | 12/1/1966 | | 3,665 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 96 | G01498 | Federal | OP 2 | 12/1/1966 | | 3,665 | GOM Shelf | 37.5% | PROD |

Exhibit I-A(ii)

| Lease / ROW / RUE | Status | Area | Block | Depths | Area / Aliquot | Leasehold | WI |
|---|---|---|---|---|---|---|---|
| G06069 | TERMIN | Brazos Area | 491 | 6891 to 99999 | All | Operating Rights | 50.00000% |
| G01757 | PROD | Brazos Area | A010S | 14090 to 99999 | NE/4;S/2 | Operating Rights | 6.75000% |
| G02665 | PROD | Brazos Area | A-133 | Below 13,840' MD | SE/4 | Operating Rights | 12.50000% |
| G13576 | SOP | East Cameron | 71 | 14,645' to 99,999' | N/2N/2, N/2S/2N/2, S/2SW/4NW/4, SW/4SE/4NW/4, W/2SW/4, W/2E/2SW/4, SE/4SE/4SW/4 and S/2S/2SE/4 | Operating Rights | 50.00000% |
| G13576 | SOP | East Cameron | 71 | 10,400' to 99,999' | N/2SE/4, N/2S/2SE/4, S/2S/2NE/4, SE/4SE/4NW/4, E/2NE/4NW/4, NE/4SE/4NW/4 | Operating Rights | 100.00000% |
| G02063 | PROD | East Cameron | 338 | 7,244' TVDSS to 99,999' | All | Operating Rights | 7.83469% |
| G01440 | PROD | East Cameron | 9 & 14 | 15199 to 99999 | SE/4;E/2SW/4 | Operating Rights | 50.00000% |
| 49 | PROD | Eugene Island | 119 | 15,410' TVDSS to 99,999' | NW/4 | Operating Rights | 25.00000% |
| 49 | PROD | Eugene Island | 119 | 15,410' TVDSS to 99,999' | SW/4; E/2 | Operating Rights | 25.00000% |
| 50 | PROD | Eugene Island | 120 | 14,136' to 99,999 | All | Operating Rights | 50.00000% |
| 51 | OPERNS | Eugene Island | 125 | 13,334' to 99,999 | All | Operating Rights | 50.00000% |
| 52 | PROD | Eugene Island | 126 | 9,400 to 99,999 | SE/4NE/4;NE/4SE/4 | Operating Rights | 100.00000% |
| 52 | PROD | Eugene Island | 126 | 12,056 to 99,999 | All | Operating Rights | 50.00000% |
| G03152 | PROD | Eugene Island | 136 | 19,135' to 99,999 | All | Operating Rights | 50.00000% |
| G01220 | PROD | Eugene Island | 158 | 17,588 to 99,999 | All | Operating Rights | 50.00000% |
| G13622 | PROD | Eugene Island | 172 | 14,097' to 99,999 | All | Operating Rights | 50.00000% |
| G03782 | PROD | Eugene Island | 174 | from the stratigraphic equivalent of 100' below a true vertical depth of 10,960' as encountered in the Newfield Exploration Company OCSG 3782 Well No. A10 to 99,999' TVDSS | SW/4 | Operating Rights | 100.00000% |
| G03782 | PROD | Eugene Island | 174 | 12,431' TVDSS to 99,999' | N/2;SE/5 | Operating Rights | 50.00000% |
| 438 | PROD | Eugene Island | 175 | 13,032 to 99,999 | All | Operating Rights | 37.50000% |
| G10736 | PROD | Eugene Island | 187 | 17,170' to 99,999 | All | Operating Rights | 50.00000% |
| 423 | PROD | Eugene Island | 189 | 13,638' to 99,999 | W/2;W/2E/2 | Operating Rights | 50.00000% |
| G05502 | UNIT | Eugene Island | 211 | surface to 99,999' | SE/4SE/4; E/2SW/4SE/4 | Operating Rights | 66.66667% |
| G05504 | PROD | Eugene Island | 224 | 18,000' to 99,999' | All | Operating Rights | 15.00000% |
| G22679 | TERMIN | Eugene Island | 312 | 9,000' TVD to 99,999' TVDSS | E/2NW/4;W/2NE/4 | Operating Rights | 50.00000% |
| G22679 | TERMIN | Eugene Island | 312 | 9,015' TVDSS to 99,999' TVDSS | W/2NW/4;E/2NE/4;S/3 | Operating Rights | 50.00000% |
| G02112 | UNIT | Eugene Island | 315 | 25,000' SS TVD down to 99,999' | S/2 | Operating Rights | 25.00000% |
| G24912 | PROD | Eugene Island | 315 | 8,000' subsea to 99,999' | N/2 | Operating Rights | 50.00000% |
| G05040 | PROD | Eugene Island | 316 | 7,739' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G02912 | PROD | Eugene Island | 329 | from 7,871' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G02115 | UNIT | Eugene Island | 330 | 8,329' TVDSS to 99,999' | SW/4, SW/4NW/4, S/2NW/4NW/4, NW/4NW/4NW/4, S/2SE/4NW/4, NW/4SE/4NW/4, SW/4SE/4, S/2NW/4SE/4, NW/4NW/4SE/4, S/2SE/4SE/4 and NW/4NW/4SE/4 | Operating Rights | 21.00000% |
| G02115 | UNIT | Eugene Island | 330 | 8,329' TVDSS to 99,999' | SW/4, SW/4NW/4, S/2NW/4NW/4, NW/4NW/4NW/4, S/2SE/4NW/4, NW/4SE/4NW/4, SW/4SE/4, S/2NW/4SE/4, NW/4NW/4SE/4, S/2SE/4SE/4 and NW/4SE/4SE/4 | Operating Rights | 11.51246% |
| G02317 | TERMIN | Eugene Island | 333 | 12,629' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G15263 | TERMIN | Eugene Island | 334 | 12,629' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G03332 | UNIT | Eugene Island | 337 | 7,026' TVD to 99,999' TVDSS | NE/4NE/4NE/4 | Operating Rights | 98.00000% |
| G03332 | UNIT | Eugene Island | 337 | 6,020' TVDSS to 99,999' TVDSS | SW/4SE/4SE/4; S/2SW/4NW/4 | Operating Rights | 100.00000% |
| G03332 | UNIT | Eugene Island | 337 | 12,455' TVDSS to 99,999' | SE/4SW/4, W/2SE/4, and SW/4NE/4 | Operating Rights | 50.00000% |
| G14482 | PROD | Eugene Island | 346 | 13,469' TVDSS to 99,999' TVDSS | N/2NW/4, SE/4NW/4, NE/4SW/4NW/4, E/2SW/4, E/2SW/4SW/4 and SE/4 | Operating Rights | 50.00000% |
| G14482 | PROD | Eugene Island | 346 | 7,511' TVD to 99,999' TVDSS | NE/4 | Operating Rights | 100.00000% |
| G14482 | PROD | Eugene Island | 346 | from the stratigraphic equivalent of 12,890' TVD, being the total depth drilled in the Eugene Island Area, South Addition, Block 346, OCSG 14482, B1 Well plus 100 feet being 12,990' TVD to 99,999' TVDSS | W/2SW/4NW/4, SE/4SW/4NW/4, NW/4SW/4, and W/2SW/4SW/4 | Operating Rights | 100.00000% |
| G10752 | PROD | Eugene Island | 354 | 9,669' TVDSS to 99,999' | S/2, S/2N/2 and NE/4NE/4 | Operating Rights | 50.00000% |
| G02324 | PROD | Eugene Island | 361 | 5,220' TVDSS to 99,999' TVDSS | All | Operating Rights | 6.17647% |
| G31470 | PROD | Ewing Bank | 782 | 12,960' TVDSS to 99,999 | All | Operating Rights | 50.00000% |
| G03228 | UNIT | Galveston | 180 | 8,900' to 99,999 | All | Operating Rights | 50.00000% |
| G25524 | PROD | Galveston | 210 | 100' below the stratigraphic equivalent of 10,200' TD to 99,999' TVDSS | N/2NE/4 | Operating Rights | 33.34000% |
| G25524 | PROD | Galveston | 210 | 9,636' to 99,999 | S/2NE/4, NW/4 and S/2 | Operating Rights | 33.34000% |
| 174 | UNIT | Grand Isle | 32 | depths below 18,000' subsea (TVDS) to 99,999' subsea (TVDS). | S/2 | Operating Rights | 18.75000% |
| 126 | UNIT | Grand Isle | 39 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS | E/2 | Operating Rights | 18.75000% |
| 127 | UNIT | Grand Isle | 39 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS | W/2 | Operating Rights | 18.75000% |
| 128 | UNIT | Grand Isle | 40 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 129 | UNIT | Grand Isle | 41 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS | E/2 | Operating Rights | 18.75000% |
| 130 | UNIT | Grand Isle | 41 | 18,000' subsea (TVDS) to 99,999' subsea (TVDS | W/2 | Operating Rights | 18.75000% |
| 131 | UNIT | Grand Isle | 42 | below 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 175 | UNIT | Grand Isle | 43 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 176 | UNIT | Grand Isle | 44 | 18,000' subsea (TVDS) to 99,999' | N/2 | Operating Rights | 18.75000% |
| 132 | UNIT | Grand Isle | 46 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 133 | UNIT | Grand Isle | 47 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 134 | UNIT | Grand Isle | 48 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 177 | UNIT | Grand Isle | 52 | depths below 17,651' TVDSS down to 99,999' TVDSS | N/2 | Operating Rights | 18.75000% |
| G13944 | UNIT | Grand Isle | 116 | 19,402' TVDSS to 99,999' | All | Operating Rights | 18.75000% |
| G01848 | PROD | High Island | 129 | 15,418' TVDSS to 99,999' | W/2NW/4, SE/4NW/4, W/2NE/4NW/4;S/2 | Operating Rights | 45.00000% |
| G03236 | UNIT | High Island | 179 | 9,839' TVDSS to 99,999' | W/2NW/4;S/2 | Operating Rights | 50.00000% |
| G03236 | UNIT | High Island | 179 | 10,036' TVDSS to 99,999' | E/2N/2;E/2W/2N/2 | Operating Rights | 50.00000% |
| G20660 | PROD | High Island | 206 | 12,145' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G25605 | PROD | High Island | A0341 | 8,847' TVDSS to 99,999' | All | Operating Rights | 30.00000% |
| G02750 | PROD | High Island | A036S | 5,659' TVDSS to 99,999' | All | Operating Rights | 26.54255% |
| G02754 | PROD | High Island | A0376 | 11,850' TVDSS to 99,999' | N/2, SW/4, W/2SE/4, SE/4SE/4, W/2NE/4SE/4 and SE/4NE/4SE/4 | Operating Rights | 22.28723% |
| G02757 | PROD | High Island | A0382 | 11,025' TVDSS to 99,999' | All | Operating Rights | 36.20529% |
| G02721 | PROD | High Island | A0595 | 10,827' TVDSS to 99,999' | All | Operating Rights | 36.20510% |
| G02722 | PROD | High Island | A0596 | 13,264' TVDSS to 99,999' | All | Operating Rights | 36.20510% |
| G02393 | PROD | High Island | A0573 | 7,795' to 99,999' | | Operating Rights | 36.20510% |
| G04481 | RELINQ | Main Pass | 77 | depths below the stratigraphic equivalent of 13,040' measured depth on the Schlumberger IFS/Sonic wireline log (RUN 4) dated 7/12/81 for the Chevron U.S.A. Inc. State of La. Lease 8693 Well No. 4 (API # 1772520242), Main Pass Block 77 field down to 99,999' | | Operating Rights | 11.76468% |
| G02193 | PROD | Main Pass | 140 | 8,959' TVDSS to 99,999' | | Operating Rights | 32.50000% |
| G07827 | TERMIN | Main Pass | 259 | 11,636' TVDSS to 99,999' TVDSS | | Operating Rights | 28.45078% |
| G07828 | TERMIN | Main Pass | 260 | from 12,072' TVDSS to 99,999' TVDSS | | Operating Rights | 28.45078% |
| G15395 | PROD | Main Pass | 275 | 11,278' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G10666 | PROD | Main Pass | 289 | 9,077' TVDSS to 99,999' TVDSS | N/2, SW/4 and W/2W/2SE/4 | Operating Rights | 50.00000% |
| G01673 | UNIT | Main Pass | 296 | below 9,500' TVDSS down to 99,999' TVDSS | | Operating Rights | 16.66667% |
| G04253 | UNIT | Main Pass | 303 | 6,060' TVDSS to 99,999' | N/2 and N/2S/2 | Operating Rights | 93.10100% |

Exhibit I-A(ii)

| Lease / ROW / RUE | Status | Area | Block | Depths | Area / Aliquot | Leasehold | WI |
|---|---|---|---|---|---|---|---|
| G32265 | PROD | Main Pass | 308 | from 6,284' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G08760 | PROD | Main Pass | 309 | 6,510' TVDSS to 99,999' | | Operating Rights | 50.00000% |
| G04126 | UNIT | Main Pass | 310 | 6,944' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G02213 | PROD | Main Pass | 311 | below 12,000' TVDSS down to 99,999' TVDSS | | Operating Rights | 16.66666% |
| G16520 | PROD | Main Pass | 312 | 10,989' TVDSS to 99,999' | | Operating Rights | 50.00000% |
| G08467 | PROD | Main Pass | 315 | from the stratigraphic equivalent of the deepest depth found production (7,830' MD/TVD) in the Apache Corporation OCS-G 8467 No 2 Well plus 100' to 99,999' | W/2NW/4 and W/2E/2NW/4 | Operating Rights | 100.00000% |
| G08467 | PROD | Main Pass | 315 | from 7,760' TVDSS to 99,999' TVDSS | S/2, NE/4 and E/2E/2NW/4 | Operating Rights | 50.00000% |
| G01966 | UNIT | Main Pass | 152 | from the stratigraphic equivalent of 10,700' Measured Depth as seen in the OCSG 1967 #3 Well down to a depth of 50,000' | | Operating Rights | 37.50000% |
| G01967 | UNIT | Main Pass | 153 | 10,700' MD down to a depth of 50,000' TVD | | Operating Rights | 37.50000% |
| MF88562 | Shut-In | Matagorda Is | 487 | below the base of the MF Sand | SW/4 | Leasehold | 50.00000% |
| MF88560 | Shut-In | Matagorda Is | 487 | 4 below the base of the MF Sand | SE/4 | Leasehold | 50.00000% |
| MF80522 | Shut-In | Matagorda Is | 518 | below the base of the 15600 Sand | NW/4 | Leasehold | 50.00000% |
| MF79413 | Shut-In | Matagorda Is | 519 | below the base of the 16950 Sand | NE/4 | Leasehold | 50.00000% |
| G09777 | PROD | Mississippi Canyon | 108 | below 20,000' true vertical depth subsea down to 99,999' | All | Operating Rights | 37.59399% |
| G18192 | PROD | Mississippi Canyon | 110 | 6,688' TVDSS to 99,999' | | Operating Rights | 25.00000% |
| G02968 | PROD | Mississippi Canyon | 311 | 11,860' TVDSS to 99,999' | | Operating Rights | 50.00000% |
| G26176 | PROD | Mobile | 826 | 21,730' TVDSS to 99,999' | | Operating Rights | 37.50000% |
| 333 | UNIT | Ship Shoal | 30 | 17,478' TVDSS to 99,999' TVDSS | All | Operating Rights | 18.75000% |
| G02919 | PROD | Ship Shoal | 91 | 11,148' TVDSS to 99,999' TVDSS | | Operating Rights | 6.25000% |
| G02919 | PROD | Ship Shoal | 91 | 11,148' TVDSS to 99,999' TVDSS | All | Operating Rights | 28.12500% |
| G12941 | PROD | Ship Shoal | 129 | 17,446' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G15282 | PROD | Ship Shoal | 151 | from the stratigraphic equivalent of 12,612' MD as seen in the Zilkha OCS-G 15282 Well No. 1 (said depth being 100' below the total depth drilled and logged in the Zilkha OCS-G 15282 Well No. 1, down to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| 820 | PROD | Ship Shoal | 169 | 10,658' TVDSS to 99,999' TVDSS | All | Operating Rights | 33.33000% |
| G05550 | UNIT | Ship Shoal | 175 | surface to 99,999' TVD | S/2SW/4NW/4; NW/4SW/4 | Operating Rights | 66.66667% |
| G33646 | PROD | Ship Shoal | 176 | 12,274' TVDSS to 99,999' TVDSS | All | Operating Rights | 20.00000% |
| G05551 | PROD | Ship Shoal | 178 | 10,031' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G03998 | PROD | Ship Shoal | 182 | 11,825' TVDSS to 99,999' TVDSS | W/2 | Operating Rights | 50.00000% |
| G04232 | PROD | Ship Shoal | 189 | 19,077' TVDSS to 99,999' TVDSS | W/2, SE/4, N/2N/2NE/4 and SW/4NW/4NE/4 | Operating Rights | 49.47915% |
| G04232 | PROD | Ship Shoal | 189 | 19,000' TVD to 99,999' TVDSS | S/2NE/4, SE/4NW/4NE/4 and S/2NE/4NE/4 | Operating Rights | 49.47915% |
| G13917 | PROD | Ship Shoal | 193 | 12,901' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G15288 | PROD | Ship Shoal | 194 | 13,619' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G12355 | PROD | Ship Shoal | 198 | 12,072' TVDSS to 99,999' TVDSS | NW/4, W/2W/2NE/4, N/2NE/4SW/4, NW/4SW/4SW/4 | Operating Rights | 25.00000% |
| 593 | PROD | Ship Shoal | 198 | 12,072' TVDSS to 99,999' | E/2NE/4; E/2W/2NE/4; S/2NE/4SW/4; S/2SW/4; SE/4 | Operating Rights | 25.00000% |
| 594 | PROD | Ship Shoal | 199 | 10,440' TVDSS to 99,999' TVDSS | W/2, W/2W/2NE/4, W/2NW/4SE/4, SE/4NW/4SE/4, SW/4SE/4, S/2SE/4SE/4 | Operating Rights | 25.00000% |
| G01520 | PROD | Ship Shoal | 204 | 12,791' TVDSS to 99,999' TVDSS | All | Operating Rights | 27.58165% |
| G01522 | UNIT | Ship Shoal | 206 | 12,355' TVDSS to 99,999' TVDSS | All | Operating Rights | 30.00000% |
| G01523 | UNIT | Ship Shoal | 207 | below 15,000' down to 99,999' TVD | All | Operating Rights | 23.95873% |
| G01524 | PROD | Ship Shoal | 216 | 14,088' TVDSS to 99,999' TVDSS | All | Operating Rights | 27.77814% |
| G10780 | PROD | Ship Shoal | 243 | from 15,858' TVDSS to 99,999' TVDSS | E/2 | Operating Rights | 25.00000% |
| G10780 | PROD | Ship Shoal | 243 | 20,000' TVDSS to 99,999' TVDSS | W/2 | Operating Rights | 25.00000% |
| G01038 | UNIT | Ship Shoal | 271 | 7,810' TVDSS to 99,999' TVDSS | All | Operating Rights | 10.00000% |
| G01039 | PROD | Ship Shoal | 274 | 8,525' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G26074 | PROD | Ship Shoal | 314 | 10,750' TVDSS to 99,999' TVDSS | W/2W/2 | Operating Rights | 37.50000% |
| G26074 | PROD | Ship Shoal | 314 | 10,950' TVDSS to 99,999' TVDSS | E/2W/2 and E/2 | Operating Rights | 37.50000% |
| G15312 | PROD | Ship Shoal | 354 | 14,853' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| 334 | UNIT | Ship Shoal | 31 | 15,320' to 99,999' | | Operating Rights | 18.75000% |
| 335 | UNIT | Ship Shoal | 32 | 11,315' to 99,999' | | Operating Rights | 18.75000% |
| G09627 | SOP | Ship Shoal | 277 | 10,000' TVD down to a depth of 50,000' TVD subsea | All | Operating Rights | 50.00000% |
| G01182 | TERMIN | South Marsh Is | 11 | 13,007' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G01194 | PROD | South Marsh Is | 58 | 13,639' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G17938 | PROD | South Marsh Is | 105 | 9,220' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G03776 | PROD | South Marsh Is | 106 | 9,368' TVDSS to 99,999' TVDSS | S/2 | Operating Rights | 50.00000% |
| G02883 | PROD | South Marsh Is | 127 | all depths below 18,000' (TVDSS) down to 99,999' (TVDSS | | Operating Rights | 8.67331% |
| G02587 | PROD | South Marsh Is | 128 | from 9,016' TVDSS to 99,999' TVDSS | | Operating Rights | 8.67331% |
| G02587 | PROD | South Marsh Is | 128 | from 9,016' TVDSS to 99,999' TVDSS | | Operating Rights | 33.33334% |
| G02592 | PROD | South Marsh Is | 149 | 7,386' TVDSS to 99,999' TVDSS | All | Operating Rights | 25.00000% |
| G04809 | PROD | South Marsh Is | 161 | 10,576' TVDSS to 99,999' TVDSS | W/2 and W/2E/2 | Operating Rights | 50.00000% |
| G04809 | PROD | South Marsh Is | 161 | from the stratigraphic equivalent of the true vertical depth of 9,782.5' (being the true vertical depth drilled in the OCS-G 4809 #14 Well plus 100 feet) to 99,999' SSTVD | E/2E/2 | Operating Rights | 100.00000% |
| G02311 | PROD | South Marsh Is | 269 | 11,719' TVDSS to 99,999' TVDSS | All | Operating Rights | 36.41794% |
| G14456 | PROD | South Marsh Is | 280 | 14,115' TVDSS to 99,999' TVDSS | W/2, NE/4 and E/2E/2SE/4 | Operating Rights | 25.00000% |
| G14456 | PROD | South Marsh Is | 280 | from 100' below the stratigraphic equivalent of that certain zone encountered between the interval of 13,814' and 13,920' TVD on the electric log from the Norcen Explorer, Inc. OCS-G 14456 Well No. 3 to 99,999' TVDSS | W/2SE/4 and W/2E/2SE/4 | Operating Rights | 50.00000% |
| G02600 | PROD | South Marsh Is | 281 | 16,062' TVDSS to 99,999' TVDSS | All | Operating Rights | 34.06318% |
| G21618 | PROD | South Marsh Is | 93 | 13,299' to 99,999' | | Operating Rights | 6.25000% |
| 792 | PROD | South Marsh Is | 108 | all depths below 14,000' TVD | | Operating Rights | 16.66667% |
| G01192 | PROD | South Marsh Is | 41 | 15,000' TVD down to a depth of 50,000' TVD | W/2 | Operating Rights | 25.00000% |
| G01192 | PROD | South Marsh Is | 41 | 11,500' TVD down to a depth of 50,000' TVD | E/2 | Operating Rights | 50.00000% |
| 786 | PROD | South Marsh Is | 48 | 13,000' TVD down to a depth of 50,000' Subsea | All | Operating Rights | 50.00000% |
| G01294 | PROD | South Pass | 62 | 18,247' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G01614 | PROD | South Pass | 70 | 8,480' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G07799 | TERMIN | South Pass | 87 | 18,001' TVDSS to 99,999' TVDSS | | Operating Rights | 16.68000% |
| G07799 | TERMIN | South Pass | 87 | 18,001' TVDSS to 99,999' TVDSS | | Operating Rights | 16.67000% |
| G01618 | PROD | South Pass | 89 | 16,802' TVDSS to 99,999' TVDSS | | Operating Rights | 25.00000% |
| G01901 | UNIT | South Pass | 64 | from 10,700' Measured Depth down to a depth of 50,000' TVD subsea | | Operating Rights | 37.50000% |
| G01610 | UNIT | South Pass | 65 | from 10,700' Measured Depth down to a depth of 50,000' TVD subsea | All | Operating Rights | 37.50000% |
| G04234 | TERMIN | South Pelto | 1 | 12,460' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G02924 | TERMIN | South Pelto | 9 | 100' below the stratigraphic equivalent of 17,337' TVD as seen in the Newfield Exploration Company OCS-G 02924 Well No. 10 (API No. 177134025300) to 99,999' TVDSS | NE/4 | Operating Rights | 50.00000% |
| G02924 | TERMIN | South Pelto | 9 | 16,992' TVDSS to 99,999' TVDSS | S/2; NW/4 | Operating Rights | 50.00000% |
| G02925 | TERMIN | South Pelto | 10 | 13,261' TVDSS to 99,999' TVDSS | | Operating Rights | – |
| 71 | RELINQ | South Pelto | 11 | 11,705' TVDSS to 99,999' TVDSS | | Operating Rights | – |

Exhibit I-A(ii)

| Lease / ROW / RUE | Status | Area | Block | Depths | Area / Aliquot | Leasehold | WI |
|---|---|---|---|---|---|---|---|
| G24956 | PROD | South Timbalier | 49 | 18,800' TVD to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G04000 | PROD | South Timbalier | 53 | 6,782' TVDSS to 99,999' TVDSS | All | Operating Rights | 25.00000% |
| G01960 | PROD | South Timbalier | 148 | 17,777' TVDSS to 99,999' TVDSS | NE/4, N/2NE/4SE/4, SE/4NE/4SE/4 and NE/4SE/4SE/4 | Operating Rights | 7.77500% |
| G05612 | PROD | South Timbalier | 205 | 18,640' TVDSS to 99,999' TVDSS | SE/4SW/4 | Operating Rights | 25.00000% |
| G16455 | PROD | South Timbalier | 291 | 9,669' TVDSS to 99,999' TVDSS | N/2 and SE/4 | Operating Rights | 50.00000% |
| G16455 | PROD | South Timbalier | 291 | 7,461' TVDSS to 99,999' TVDSS | SW/4 | Operating Rights | 100.00000% |
| G05646 | UNIT | South Timbalier | 295 | 14,293' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G31418 | UNIT | South Timbalier | 311 | 12,251' TVD to 99,999' | All | Operating Rights | 22.50000% |
| G22762 | PROD | South Timbalier | 316 | 12,520' TVDSS to 99,999' TVDSS | All | Operating Rights | 10.00000% |
| G03328 | TERMIN | Vermilion | 261 | 9,241' TVD as identified in the Stone Energy Corporation's OCS-G 3328 Well No A-3 ST to 99,999' TVDSS | S/2S/2NE/4 and N/2NE/4SE/4 | Operating Rights | 37.50000% |
| G03328 | TERMIN | Vermilion | 261 | 9,304' TVDSS to 99,999' TVDSS | W/2, N/2NE/4, N/2S/2NE/4, W/2SE/4, SE/4SE/4 and S/2NE/4SE/4 | Operating Rights | 37.50000% |
| G01955 | SOP | Vermilion | 265 | 10,465' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G21096 | TERMIN | Vermilion | 326 | 8,447' TVDSS to 99,999' TVDSS | All | Operating Rights | 35.15742% |
| G02274 | UNIT | Vermilion | 369 | below 10,000' down to 99,999' | NW/4, W/2E/2, NE/4NE/4 | Operating Rights | 11.58535% |
| G02580 | PROD | Vermilion | 380 | 10,245' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G02278 | UNIT | Vermilion | 386 | 5,175' TVDSS to 99,999' TVDSS | NW/4NE/4NE/4, S/2NE/4NE/4, E/2NW/4NE/4, NW/4SE/4NE/4 and N/2SW/4NE/4 | Operating Rights | 15.08620% |
| G02278 | UNIT | Vermilion | 386 | 5,175' TVDSS to 99,999' TVDSS | S/2, SW/4NW/4, S/2S/2NE/4, W/2NW/4NE/4, NE/4SE/4NE/4 and NE/4NE/4NE/4 | Operating Rights | 14.48210% |
| G04800 | PROD | Vermilion | 271 | 6,103' TVD down to a depth of 50,000' TVD subsea | All | Operating Rights | 6.25000% |
| G15212 | PROD | Vermilion | 408 | below 9,000' TVD | All | Operating Rights | 50.00000% |
| G10930 | UNIT | Viosca Knoll | 251 | all depths below the stratigraphic equivalent of the subsea depth of 15,083 to and including 99,999' as encountered in Samedan Oil Corporation's OCS-G 13982 #1 well located in Viosca Knoll Block 252 | All | Operating Rights | 3.75000% |
| G10933 | UNIT | Viosca Knoll | 340 | depths below the stratigraphic equivalent of the subsea depth of 15,083 to and including 99,999' as encountered in Samedan Oil Corporation's OCS-G 13982 #1 well located in Viosca Knoll Block 252 | All | Operating Rights | 3.75000% |
| G07898 | TERMIN | Viosca Knoll | 693 | 11,636' TVDSS to 99,999' TVDSS | All | Operating Rights | 28.45078% |
| G13055 | TERMIN | Viosca Knoll | 694 | 10,774' TVDSS to 99,999' TVDSS | W/2, NE/4 and N/2SE/4 | Operating Rights | 26.53745% |
| G13055 | TERMIN | Viosca Knoll | 694 | 11,714' TVDSS to 99,999' TVDSS | S/2SE/4 | Operating Rights | 26.53745% |
| G15050 | PROD | West Cameron | 33 | 15,055' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G02825 | PROD | West Cameron | 65 | all depths below the stratigraphic equivalent of the vertical depth of 13,679' as seen in the OCS-G 02825 Well No. 4, down to a vertical depth of 99,999' | E/2E/2SW/4; W/2W/2SE/4; and E/2SW/4SE/5 | Operating Rights | 100.00000% |
| G02825 | PROD | West Cameron | 65 | depths below 100' below the stratigraphic equivalent of the base of the IT Sand as present in The Continental Oil Company's West Cameron Block 66 B-14 Well at a measured depth of 9,580 feet on the ISF-Sonic Log down to 99,999 feet TVDSS | NE/4 | Operating Rights | 81.25000% |
| G23735 | PROD | West Cameron | 72 | 15,126' TVDSS to 99,999' TVDSS | All | Operating Rights | 12.50000% |
| 247 | TERMIN | West Cameron | 102 | 14,150' TVD to 99,999' TVDSS | N/2SW/4NW/4, NW/4SE/4NW/4 | Operating Rights | 100.00000% |
| 81 | PROD | West Cameron | 110 | all depths below 15,000' (TVDSS) down to 99,999' (TVDSS) | All | Operating Rights | 18.75000% |
| 82 | PROD | West Cameron | 111 | below 15,000' (TVDSS) down to 99,999' (TVDSS) | SE/4 | Operating Rights | 18.75000% |
| G04818 | TERMIN | West Cameron | 290 | 13,500' TVD to 50,000' TVD | All | Operating Rights | 8.33334% |
| 680 | PROD | West Cameron | 20 | 13,500' TVD to 50,000' TVD | All | Operating Rights | 25.00000% |
| G02826 | PROD | West Cameron | 66 | 13,590' to 99,999' | W1/2; N1/2SE1/4 | Operating Rights | 37.50000% |
| G02826 | PROD | West Cameron | 66 | 9,216' to 99,999' | S1/2SE1/4 | Operating Rights | 75.00000% |
| 179 | UNIT | West Delta | 67 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | S/2 | Operating Rights | 18.75000% |
| 180 | UNIT | West Delta | 68 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | S/2 | Operating Rights | 18.75000% |
| 181 | UNIT | West Delta | 69 | 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | All | Operating Rights | 18.75000% |
| 182 | UNIT | West Delta | 70 | 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | All | Operating Rights | 18.75000% |
| 838 | UNIT | West Delta | 71 | depths below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | All | Operating Rights | 18.75000% |
| G01085 | PROD | West Delta | 75 | 17,844' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G01089 | PROD | West Delta | 90 | 13,199' TVDSS to 99,999' TVDSS | N/2 and N/2S/2 | Operating Rights | 50.00000% |
| G01089 | PROD | West Delta | 90 | 13,199' TVDSS to 99,999' TVDSS | S/2S/2 | Operating Rights | 40.62500% |
| 839 | PROD | West Delta | 94 | 13,159' TVDSS to 99,999; TVDSS | All | Operating Rights | 37.50000% |
| G01497 | PROD | West Delta | 95 | 13,601' TVDSS to 99,999' TVDSS | N/2, N/2N/2SE/4, N/2SE/4 and N/2SW/4SW/4 | Operating Rights | 37.50000% |
| G12360 | PROD | West Delta | 103 | 13,279' TVDSS to 99,999' TVDSS | NW/4NW/4, NE/4NW/4, N/2SW/4NW/4, N/2NW/4NE/4, S/2S/2NW/4NE/4, N/2N/2NE/4NE/4 | Operating Rights | 40.62500% |
| 840 | PROD | West Delta | 103 | 13,279' TVDSS to 99,999' TVDSS | S/2, S/2NE/4, SE/4NW/4, S/2SW/4NW/4, S/2NE/4NE/4, S/2N/2NE/4NE/4, S/2S/2NW/4NE/4 and S/2N/2SW/4NW/4 | Operating Rights | 50.00000% |
| 841 | PROD | West Delta | 104 | 11,970' TVDSS to 99,999' TVDSS | NW4, N2NE4, SW4NE4 and N2SE4NE4 | Operating Rights | 50.00000% |
| 842 | PROD | West Delta | 105 | 12,149' TVDSS to 99,999' TVDSS | N2S2N2 | Operating Rights | 50.00000% |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| BRAZOS 491 #004 | BA49100400 | G06069 | 427044034300 |
| BRAZOS 491 #005 | BA49100500 | G06069 | 427044035700 |
| BRAZOS 491 #A001 | BA491A0100 | G06069 | 427044018200 |
| BRAZOS 491 #A002 | BA491A0200 | G06069 | 427044018300 |
| BRAZOS 491 #A003 | BA491A0300 | G06069 | 427044032900 |
| BRAZOS A-105 #B001 | BAA105B010 | G01757 | 427054012200 |
| BRAZOS A-105 #B002 | BAA105B020 | G01757 | 427054012600 |
| BRAZOS A-105 #B003 | BAA105B030 | G01757 | 427054012800 |
| BRAZOS A-105 #B004 | BAA105B040 | G01757 | 427054013000 |
| BRAZOS A-105 #B005 | BAA105B050 | G01757 | 427054013300 |
| BRAZOS A-133 #A001 | BAA133A010 | G02665 | 427054002400 |
| BRAZOS A-133 #A002 | BAA133A020 | G02665 | 427054003300 |
| BRAZOS A-133 #A003 | BAA133A030 | G02665 | 427054003500 |
| BRAZOS A-133 #A004 ST1 | BAA133A041 | G02665 | 427054004301 |
| BRAZOS A-133 #A005 ST1 | BAA133A051 | G02665 | 427054004001 |
| BRAZOS A-133 #A006 | BAA133A060 | G02665 | 427054004500 |
| BRAZOS A-133 #A007 | BAA133A070 | G02665 | 427054004800 |
| BRAZOS A-133 #A008 | BAA133A080 | G02665 | 427054005200 |
| BRAZOS A-133 #A009 | BAA133A090 | G02665 | 427054005400 |
| BRAZOS A-133 #A010 | BAA133A100 | G02665 | 427054013100 |
| BRAZOS A-133 #C001 | BAA133C010 | G02665 | 427054007800 |
| BRAZOS A-133 #C002 | BAA133C020 | G02665 | 427054008200 |
| BRAZOS A-133 #C003 | BAA133C030 | G02665 | 427054010700 |
| BRAZOS A-133 #C004 | BAA133C040 | G02665 | 427054013500 |
| BRAZOS A-133 #D001 ST1 | BAA133D011 | G02665 | 427054009201 |
| BRAZOS A-133 #D003 | BAA133D030 | G02665 | 427054012700 |
| CHANDELEUR 042 #A002 | CA042A0200 | G32267 | 177294001500 |
| CHANDELEUR 043 #A001 | CA043A0100 | G32268 | 177294001400 |
| CHANDELEUR 043 #A003 | CA043A0300 | G32268 | 177294001600 |
| EAST CAMERON 002 #001 SL 18121 | SL18121010 | 18121 | 177032013600 |
| EAST CAMERON 002 #001AL 16475 | SL16475010 | 16475 | 177032012000 |
| EAST CAMERON 002 #002AL 16475 | SL16475020 | 16475 | 177032012200 |
| EAST CAMERON 002 #003 SL16475 | SL16475030 | 16475 | 177032012300 |
| EAST CAMERON 002 #004AL 16475 | SL16475040 | 16475 | 177032012400 |
| EAST CAMERON 002 #005AL 16475 | SL16475050 | 16475 | 177032012500 |
| EAST CAMERON 009 #B009 | EC009B0900 | G01440 | 177032004300 |
| EAST CAMERON 014 #012 | EC01401200 | G01440 | 177034060600 |
| EAST CAMERON 014 #013 | EC01401300 | G01440 | 177034101300 |
| EAST CAMERON 014 #B006 | EC014B0600 | G01440 | 177032003700 |
| EAST CAMERON 014 #B007 | EC014B0700 | G01440 | 177032004000 |
| EAST CAMERON 014 #B008 | EC014B0800 | G01440 | 177032004200 |
| EAST CAMERON 014 #B010 ST1 | EC014B1001 | G01440 | 177032004601 |
| EAST CAMERON 014 #B011 | EC014B1100 | G01440 | 177034006900 |
| EAST CAMERON 014 #B013 | EC014B13 | G13572 | 177034094700 |
| EAST CAMERON 014 #CF001 | EC014CF010 | G01440 | 177030032800 |
| EAST CAMERON 014 #CF002 | EC014CF020 | G13572 | 177034068600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST CAMERON 037 #A002 | EC037A0200 | G25933 | 177034101700 |
| EAST CAMERON 265 #D001 | EC265D0100 | G00972 | 177044105100 |
| EAST CAMERON 265 #D002 | EC265D0200 | G00972 | 177044106200 |
| EAST CAMERON 265 #D003 | EC265D0300 | G00972 | 177044106300 |
| EAST CAMERON 265 #D004 | EC265D0400 | G00972 | 177044106400 |
| EAST CAMERON 265 #D005 | EC265D0500 | G00972 | 177044106500 |
| EAST CAMERON 278 #B009 | EC278B0900 | G00974 | 177044071700 |
| EAST CAMERON 278 #C001 | EC278C0100 | G00974 | 177044058500 |
| EAST CAMERON 278 #C002 | EC278C0204 | G00974 | 177044070000 |
| EAST CAMERON 278 #C003 | EC278C0300 | G00974 | 177044071800 |
| EAST CAMERON 278 #C004 ST2 | EC278C0401 | G00974 | 177044072101 |
| EAST CAMERON 278 #C005 | EC278C0500 | G00974 | 177044069700 |
| EAST CAMERON 278 #C006 | EC278C0600 | G00974 | 177044071400 |
| EAST CAMERON 278 #C007 | EC278C0700 | G00974 | 177044094800 |
| EAST CAMERON 278 #C008 | EC278C0800 | G00974 | 177044109800 |
| EAST CAMERON 278 #C009 | EC278C0900 | G00974 | 177044109901 |
| EAST CAMERON 338 #A002 | EC338A0200 | G02063 | 177044024700 |
| EAST CAMERON 338 #A003 | EC338A0300 | G02063 | 177044025000 |
| EAST CAMERON 338 #A011 | EC338A1100 | G02063 | 177044028800 |
| EAST CAMERON 338 #A015 | EC338A1500 | G02063 | 177044032000 |
| EAST CAMERON 338 #A016 | EC338A1601 | G02063 | 177044034601 |
| EAST CAMERON 338 #A022 | EC338A2200 | G02063 | 177044025101 |
| EUGENE IS 053 #008D | EI053008D0 | 00479 | 177094086200 |
| EUGENE IS 053 #009 | EI05300900 | 00479 | 177094094000 |
| EUGENE IS 053 #010 ST1 | EI05301001 | 00479 | 177094113001 |
| EUGENE IS 053 #012 ST1 | EI05301201 | 00479 | 177094115301 |
| EUGENE IS 053 #015 BP1 | EI05301501 | 00479 | 177094127601 |
| EUGENE IS 053 #B001D | EI053B01D0 | 00479 | 177094085900 |
| EUGENE IS 053 #C001 | EI053C0101 | 00479 | 177094121101 |
| EUGENE IS 053 #C002 | EI053C0200 | 00479 | 177094122600 |
| EUGENE IS 053 #G001 ST1 | EI053G01D2 | 00479 | 177094144201 |
| EUGENE IS 119 #030 ST1 | EI11903001 | 00049 | 177094079801 |
| EUGENE IS 119 #033 ST2 | EI11903302 | 00049 | 177094117002 |
| EUGENE IS 119 #034 | EI11903400 | 00049 | 177094118700 |
| EUGENE IS 119 #035 ST1 | EI11903501 | 00049 | 177094120301 |
| EUGENE IS 119 #037 ST1 | EI11903701 | 00049 | 177094129001 |
| EUGENE IS 119 #F001D | EI119F01D0 | 00049 | 177090026700 |
| EUGENE IS 119 #F002 ST1 | EI119F0201 | 00049 | 177090026801 |
| EUGENE IS 119 #F003 | EI119F0300 | 00049 | 177090026900 |
| EUGENE IS 119 #F005 ST1 | EI119F0501 | 00049 | 177090027101 |
| EUGENE IS 119 #F006 | EI119F0600 | 00049 | 177090027200 |
| EUGENE IS 119 #F007 | EI119F0700 | 00049 | 177094137900 |
| EUGENE IS 119 #F008 ST1 | EI119F0801 | 00049 | 177094138401 |
| EUGENE IS 119 #K001 | EI119K0100 | 00049 | 177090028900 |
| EUGENE IS 119 #K002 | EI119K0200 | 00049 | 177090029000 |
| EUGENE IS 119 #K003 | EI119K0300 | 00049 | 177090029100 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 119 #K004 | EI119K0400 | 00049 | 177090029200 |
| EUGENE IS 119 #K005 | EI119K0500 | 00049 | 177090029300 |
| EUGENE IS 119 #K006 | EI119K0600 | 00049 | 177090029400 |
| EUGENE IS 119 #K007 | EI119K0700 | 00049 | 177090029500 |
| EUGENE IS 119 #M004 | EI119M0400 | 00049 | 177090029900 |
| EUGENE IS 119 #M007 | EI119M0700 | 00049 | 177092009000 |
| EUGENE IS 120 #009 ST1 | EI12000901 | 00050 | 177094026101 |
| EUGENE IS 120 #011 | EI12001100 | 00050 | 177094078000 |
| EUGENE IS 120 #012 ST1 | EI12001201 | 00050 | 177094113901 |
| EUGENE IS 120 #013 | EI12001300 | 00050 | 177094114100 |
| EUGENE IS 120 #014 | EI12001400 | 00050 | 177094115200 |
| EUGENE IS 120 #015 ST2 | EI12001502 | 00050 | 177094116702 |
| EUGENE IS 120 #017 | EI12001700 | 00050 | 177094121700 |
| EUGENE IS 120 #019 ST2 | EI12001902 | 00050 | 177094126102 |
| EUGENE IS 120 #020 | EI12002000 | 00050 | 177094138300 |
| EUGENE IS 120 #I008 | EI120I0800 | 00050 | 177094137000 |
| EUGENE IS 125 #002B ST2 | EI125002B2 | 00051 | 177090022902 |
| EUGENE IS 125 #A003 ST1 | EI125A0301 | 00051 | 177090022601 |
| EUGENE IS 125 #R001 | EI125R0100 | 00051 | 177094080201 |
| EUGENE IS 125 #R002 | EI125R0201 | 00051 | 177094141301 |
| EUGENE IS 126 #012 | EI12601201 | 00052 | 177094131501 |
| EUGENE IS 126 #031 ST2 | EI12603102 | 00052 | 177094086702 |
| EUGENE IS 126 #A002 | EI126A0200 | 00052 | 177090022500 |
| EUGENE IS 126 #A004D | EI126A04D0 | 00052 | 177090022700 |
| EUGENE IS 126 #A005 | EI126A0501 | 00052 | 177094092903 |
| EUGENE IS 126 #A006 | EI126A0600 | 00052 | 177094151000 |
| EUGENE IS 136 #001 | EI13600100 | G03152 | 177094115700 |
| EUGENE IS 136 #JA001 | EI136JA100 | G03152 | 177094028300 |
| EUGENE IS 136 #JA002 | EI136JA200 | G03152 | 177094117501 |
| EUGENE IS 136 #JA003 BP1 | EI136JA301 | G03152 | 177094140601 |
| EUGENE IS 136 #JA004 | EI136JA400 | G03152 | 177094151101 |
| EUGENE IS 158 #014B | EI158014B0 | G01220 | 177090094300 |
| EUGENE IS 158 #016 | EI15801600 | G01220 | 177092000402 |
| EUGENE IS 158 #017A | EI158017A0 | G01220 | 177092000900 |
| EUGENE IS 158 #027 ST1 | EI15802701 | G01220 | 177092006501 |
| EUGENE IS 158 #028 ST1BP1 | EI15802802 | G01220 | 177092009702 |
| EUGENE IS 158 #029 | EI15802900 | G01220 | 177092008200 |
| EUGENE IS 158 #032 | EI15803200 | G01220 | 177094111400 |
| EUGENE IS 158 #034 | EI15803400 | G01220 | 177094147600 |
| EUGENE IS 158 #B003A | EI158B03A2 | G01220 | 177090066202 |
| EUGENE IS 158 #B004B | EI158B04B0 | G01220 | 177090063700 |
| EUGENE IS 158 #B005E | EI158B05E0 | G01220 | 177090070400 |
| EUGENE IS 158 #B007 | EI158B0703 | G01220 | 177090094803 |
| EUGENE IS 158 #B008 | EI158B0800 | G01220 | 177092001500 |
| EUGENE IS 158 #B010F | EI158B1100 | G01220 | 177092001800 |
| EUGENE IS 158 #B011 ST2 | EI158B1102 | G01220 | 177094104902 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 158 #B012 | EI158B1200 | G01220 | 177094105000 |
| EUGENE IS 158 #B013 | EI158B1302 | G01220 | 177094143502 |
| EUGENE IS 158 #C001 | EI158C0100 | G01220 | 177092014700 |
| EUGENE IS 158 #C002 | EI158C0200 | G01220 | 177092015200 |
| EUGENE IS 158 #C003C | EI158C03C0 | G01220 | 177092015300 |
| EUGENE IS 158 #C005A | EI158C05A0 | G01220 | 177094002200 |
| EUGENE IS 158 #C006 | EI158C0600 | G01220 | 177094001900 |
| EUGENE IS 158 #C007F | EI158C07F0 | G01220 | 177094004700 |
| EUGENE IS 158 #C008C | EI158C08C0 | G01220 | 177094005100 |
| EUGENE IS 158 #C009 | EI158C0900 | G01220 | 177094005700 |
| EUGENE IS 158 #C010B | EI158C10B0 | G01220 | 177094006000 |
| EUGENE IS 158 #C011A | EI158C11A0 | G01220 | 177094006300 |
| EUGENE IS 158 #C012D | EI158C12D0 | G01220 | 177094007100 |
| EUGENE IS 158 #C013D | EI158C13D0 | G01220 | 177094008000 |
| EUGENE IS 158 #C014 | EI158C1400 | G01220 | 177094008100 |
| EUGENE IS 158 #JB008 | EI158JB801 | G01220 | 177090091401 |
| EUGENE IS 158 #JB009 | EI158JB900 | G01220 | 177090090200 |
| EUGENE IS 158 #JB013 | EI158JB130 | G01220 | 177090094102 |
| EUGENE IS 158 #JB019 | EI158JB190 | G01220 | 177092002101 |
| EUGENE IS 158 #JB022 | EI158JB220 | G01220 | 177092003300 |
| EUGENE IS 158 #JB024 | EI158JB240 | G01220 | 177092003900 |
| EUGENE IS 158 #JB030 (D04) | EI158JB300 | G01220 | 177094100300 |
| EUGENE IS 158 #JB033 | EI158JB330 | G01220 | 177094111100 |
| EUGENE IS 173 #G002 | EI173G0200 | G13622 | 177094074701 |
| EUGENE IS 174 #A010 | EI174A1000 | G03782 | 177094101100 |
| EUGENE IS 174 #G001 ST1 | EI174G0101 | G03782 | 177094065601 |
| EUGENE IS 174 #G003 ST2 | EI174G0302 | G03782 | 177094084402 |
| EUGENE IS 174 #G004 ST1 | EI174G0402 | G03782 | 177094116502 |
| EUGENE IS 175 #D006 ST1 | EI175D0601 | 00438 | 177094003301 |
| EUGENE IS 175 #D008 | EI175D0800 | 00438 | 177094003900 |
| EUGENE IS 175 #D009 ST1 | EI175D0901 | 00438 | 177094005401 |
| EUGENE IS 175 #D012 ST | EI175D1201 | 00438 | 177094010601 |
| EUGENE IS 175 #D021 ST3 | EI175D2103 | 00438 | 177092012603 |
| EUGENE IS 175 #F001 ST1 | EI175F0101 | 00438 | 177094035401 |
| EUGENE IS 175 #F002 ST1 | EI175F0201 | 00438 | 177094039601 |
| EUGENE IS 175 #F003 ST | EI175F0302 | 00438 | 177094039702 |
| EUGENE IS 175 #F004 ST | EI175F0401 | 00438 | 177094041001 |
| EUGENE IS 175 #F005 | EI175F0500 | 00438 | 177094042900 |
| EUGENE IS 175 #F007 | EI175F0700 | 00438 | 177094048900 |
| EUGENE IS 175 #F009 | EI175F0901 | 00438 | 177094087601 |
| EUGENE IS 175 #H001 | EI175H0100 | 00438 | 177094104700 |
| EUGENE IS 175 #H002 | EI175H0200 | 00438 | 177094106700 |
| EUGENE IS 175 #H003 | EI175H0300 | 00438 | 177094110800 |
| EUGENE IS 175 #H004 | EI175H0400 | 00438 | 177094110900 |
| EUGENE IS 175 #H005 ST1BP1 | EI175H0502 | 00438 | 177094112002 |
| EUGENE IS 175 #I002 | EI175I0201 | 00438 | 177094107101 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 175 #I003 | EI175I0300 | 00438 | 177094107200 |
| EUGENE IS 175 #I004 | EI175I0400 | 00438 | 177094109200 |
| EUGENE IS 175 #I005 | EI175I0500 | 00438 | 177094109300 |
| EUGENE IS 175 #J001 ST1 | EI175J0101 | 00438 | 177094122301 |
| EUGENE IS 175 #J002 ST1 | EI175J0201 | 00438 | 177094123201 |
| EUGENE IS 175 #J003 ST1 | EI175J0301 | 00438 | 177094123501 |
| EUGENE IS 175 #J004 | EI175J0400 | 00438 | 177094128300 |
| EUGENE IS 187 #002 | EI18700200 | G10736 | 177094151601 |
| EUGENE IS 187 #JC001 | EI187JC101 | G10736 | 177094091101 |
| EUGENE IS 187 #JD001 | EI187JD201 | G10736 | 177094092801 |
| EUGENE IS 187 #JD002 | EI187JD200 | G10736 | 177094131900 |
| EUGENE IS 187 #JE002 | EI187JE020 | G10736 | 177094109700 |
| EUGENE IS 188 #JE001 | EI188JE100 | 00443 | 177094096500 |
| EUGENE IS 189 #020 | EI18902000 | 00423 | 177094099500 |
| EUGENE IS 189 #B001 | EI189B0100 | 00423 | 177090062500 |
| EUGENE IS 189 #B003 ST1 | EI189B0300 | 00423 | 177090062601 |
| EUGENE IS 189 #B014 | EI189B1400 | 00423 | 177090075200 |
| EUGENE IS 189 #B016B | EI189B16B3 | 00423 | 177090075103 |
| EUGENE IS 189 #B020 | EI189B2001 | 00423 | 177090079001 |
| EUGENE IS 189 #B025 | EI189B2501 | 00423 | 177090078501 |
| EUGENE IS 189 #B027 | EI189B2701 | 00423 | 177094059001 |
| EUGENE IS 211 #A003 | EI211A0300 | G05502 | 177094071500 |
| EUGENE IS 211 #A005 | EI211A0500 | G05502 | 177094083400 |
| EUGENE IS 211 #A006 | EI211A0600 | G05502 | 177094083601 |
| EUGENE IS 212 #A001 BP1 | EI212A0100 | G05503 | 177094063200 |
| EUGENE IS 212 #A002 | EI212A0200 | G05503 | 177094070700 |
| EUGENE IS 212 #A007 | EI212A0700 | G05503 | 177094097400 |
| EUGENE IS 224 #A001 | EI224A0101 | G05504 | 177094074001 |
| EUGENE IS 224 #A002 | EI224A0201 | G05504 | 177094082501 |
| EUGENE IS 224 #A003 | EI224A0300 | G05504 | 177094083200 |
| EUGENE IS 224 #A004 | EI224A0400 | G05504 | 177094089100 |
| EUGENE IS 224 #A005 | EI224A0503 | G05504 | 177094089403 |
| EUGENE IS 224 #A006 | EI224A0600 | G05504 | 177094103600 |
| EUGENE IS 224 #A007 | EI224A0700 | G05504 | 177094106800 |
| EUGENE IS 224 #A008 | EI224A0800 | G05504 | 177094111600 |
| EUGENE IS 224 #A009 | EI224A0900 | G05504 | 177094121900 |
| EUGENE IS 224 #A010 | EI224A1000 | G05504 | 177094135200 |
| EUGENE IS 224 #C001 | EI224C01 | G05504 | 177094112501 |
| EUGENE IS 224 #G002 (ORRI) | EI224G02 | G05504 | 177094150801 |
| EUGENE IS 224 #SS006 (ORRI) | EI224SS06 | G05504 | 177094149000 |
| EUGENE IS 312 #D001 | EI312D0100 | G22679 | 177104160900 |
| EUGENE IS 312 #D002 | EI312D0200 | G22679 | 177104161900 |
| EUGENE IS 315 #A001 ST1 | EI315A0101 | G02112 | 177104099001 |
| EUGENE IS 315 #A003 | EI315A0300 | G02112 | 177104099500 |
| EUGENE IS 315 #A005 | EI315A0500 | G02112 | 177104099800 |
| EUGENE IS 315 #A006 | EI315A0600 | G02112 | 177104101700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 315 #A007 ST1 | EI315A0701 | G02112 | 177104103001 |
| EUGENE IS 315 #A010 | EI315A1000 | G02112 | 177104103700 |
| EUGENE IS 315 #A012 | EI315A1200 | G02112 | 177104104000 |
| EUGENE IS 315 #A016 | EI315A1600 | G02112 | 177104127000 |
| EUGENE IS 315 #A017 | EI315A1700 | G02112 | 177104152000 |
| EUGENE IS 315 #C001 (TANA) | EI315C0100 | G24912 | 177104160800 |
| EUGENE IS 315 #C002 (TANA) | EI315C0200 | G24912 | 177104162300 |
| EUGENE IS 316 #A001 | EI316A0101 | G05040 | 177104100701 |
| EUGENE IS 316 #A002 ST1 | EI316A0200 | G05040 | 177104106400 |
| EUGENE IS 316 #A003 ST3 | EI316A0302 | G05040 | 177104111302 |
| EUGENE IS 316 #A005 ST5 | EI316A0505 | G05040 | 177104112905 |
| EUGENE IS 316 #A007 | EI316A0700 | G05040 | 177104117000 |
| EUGENE IS 316 #A008 | EI316A0800 | G05040 | 177104117300 |
| EUGENE IS 316 #A010 | EI316A1000 | G05040 | 177104118300 |
| EUGENE IS 316 #A011 | EI316A1100 | G05040 | 177104137500 |
| EUGENE IS 316 #A012 | EI316A1200 | G05040 | 177104138400 |
| EUGENE IS 316 #A013 ST1 (S01) | EI316A13S1 | G05040 | 177104107601 |
| EUGENE IS 329 #A002 | EI329A0200 | G02912 | 177104099101 |
| EUGENE IS 329 #A004 | EI329A0400 | G02912 | 177104099400 |
| EUGENE IS 329 #A008 | EI329A0800 | G02912 | 177104103500 |
| EUGENE IS 329 #A011 | EI329A1100 | G02912 | 177104103800 |
| EUGENE IS 329 #A014 | EI329A1400 | G02912 | 177104106800 |
| EUGENE IS 329 #A015 | EI329A1500 | G02912 | 177104108001 |
| EUGENE IS 329 #A018 | EI329A1800 | G02912 | 177104151700 |
| EUGENE IS 330 #B001 | EI330B0101 | G02115 | 177104004301 |
| EUGENE IS 330 #B003 ST1 | EI330B0301 | G02115 | 177104008001 |
| EUGENE IS 330 #B004 ST1 | EI330B0401 | G02115 | 177104008701 |
| EUGENE IS 330 #B005 ST2 | EI330B0502 | G02115 | 177104009502 |
| EUGENE IS 330 #B006 ST3 | EI330B0603 | G02115 | 177104010503 |
| EUGENE IS 330 #B007 ST1 | EI330B0701 | G02115 | 177104011601 |
| EUGENE IS 330 #B008 ST1 LF | EI330B0801 | G02115 | 177104013001 |
| EUGENE IS 330 #B009 ST1 | EI330B0901 | G02115 | 177104016301 |
| EUGENE IS 330 #B010 ST1 | EI330B1001 | G02115 | 177104017101 |
| EUGENE IS 330 #B011 | EI330B1100 | G02115 | 177104025200 |
| EUGENE IS 330 #B012 ST1 | EI330B1201 | G02115 | 177104021001 |
| EUGENE IS 330 #B014 ST1 | EI330B1401 | G02115 | 177104027401 |
| EUGENE IS 330 #B015 ST1 | EI330B1501 | G02115 | 177104028601 |
| EUGENE IS 330 #B016 ST1 | EI330B1601 | G02115 | 177104030201 |
| EUGENE IS 330 #B018 | EI330B1800 | G02115 | 177104031200 |
| EUGENE IS 330 #D001 | EI330D0100 | G02115 | 177104105600 |
| EUGENE IS 330 #D002 | EI330D0200 | G02115 | 177104116900 |
| EUGENE IS 330 #D003 ST2 | EI330D0302 | G02115 | 177104117802 |
| EUGENE IS 330 #D004 | EI330D0400 | G02115 | 177104118400 |
| EUGENE IS 330 #D005 ST1 | EI330D0502 | G02115 | 177104118702 |
| EUGENE IS 330 #D006 ST | EI330D0602 | G02115 | 177104119102 |
| EUGENE IS 330 #D008 ST1 | EI330D0801 | G02115 | 177104119602 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 330 #D009 ST1 | EI330D0901 | G02115 | 177104138201 |
| EUGENE IS 330 #D011 | EI330D1100 | G02115 | 177104138700 |
| EUGENE IS 330 #D012 ST1 | EI330D1201 | G02115 | 177104138801 |
| EUGENE IS 330 #D013 | EI330D1301 | G02115 | 177104164301 |
| EUGENE IS 330 #D014 | EI330D1401 | G02115 | 177104164401 |
| EUGENE IS 330 #D015 | EI330D1500 | G02115 | 177104164500 |
| EUGENE IS 330 #D016 | EI330D1602 | G02115 | 177104164702 |
| EUGENE IS 330 #D017 | EI330D1700 | G02115 | 177104164800 |
| EUGENE IS 330 #D018 | EI330D1801 | G02115 | 177104165101 |
| EUGENE IS 330 #D019 | EI330D1900 | G02115 | 177104165200 |
| EUGENE IS 330 #D020 | EI330D2000 | G02115 | 177104165300 |
| EUGENE IS 333 #B012 | EI333B1200 | G02317 | 177104145204 |
| EUGENE IS 334 #B013 ST1 | EI334B1301 | G15263 | 177104152201 |
| EUGENE IS 334 #D001 BP1 | EI334D0100 | G15263 | 177104159300 |
| EUGENE IS 334 #D003 BP1 | EI334D0301 | G15263 | 177104161401 |
| EUGENE IS 337 #A001 ST2 | EI337A0102 | G03332 | 177104054002 |
| EUGENE IS 337 #A003 ST1 | EI337A0301 | G03332 | 177104101101 |
| EUGENE IS 337 #A005 ST1 | EI337A0501 | G03332 | 177104102201 |
| EUGENE IS 337 #A007 | EI337A0700 | G03332 | 177104104600 |
| EUGENE IS 337 #A008 ST2 | EI337A0802 | G03332 | 177104104902 |
| EUGENE IS 337 #A010 | EI337A1000 | G03332 | 177104161000 |
| EUGENE IS 337 #A011 | EI337A1103 | G03332 | 177104163803 |
| EUGENE IS 342 #004 | EI34200400 | G02319 | 177104113000 |
| EUGENE IS 342 #C002 ST1 | EI342C0201 | G02319 | 177104110601 |
| EUGENE IS 342 #C003 | EI342C0300 | G02319 | 177104114000 |
| EUGENE IS 342 #C004 | EI342C0401 | G02319 | 177104120101 |
| EUGENE IS 342 #C005 | EI342C0502 | G02319 | 177104120202 |
| EUGENE IS 342 #C006 | EI342C0600 | G02319 | 177104120300 |
| EUGENE IS 342 #C007 | EI342C0700 | G02319 | 177104120800 |
| EUGENE IS 342 #C008 | EI342C0800 | G02319 | 177104121000 |
| EUGENE IS 342 #C009 | EI342C0900 | G02319 | 177104121300 |
| EUGENE IS 342 #C010 | EI342C1000 | G02319 | 177104121500 |
| EUGENE IS 342 #C011 | EI342C1100 | G02319 | 177104122000 |
| EUGENE IS 342 #C012 | EI342C1200 | G02319 | 177104122200 |
| EUGENE IS 342 #C013 | EI342C1300 | G02319 | 177104122700 |
| EUGENE IS 342 #C014 | EI342C1400 | G02319 | 177104135800 |
| EUGENE IS 342 #C015 | EI342C1501 | G02319 | 177104162101 |
| EUGENE IS 342 #C016 | EI342C1601 | G02319 | 177104162201 |
| EUGENE IS 342 #C017 BP1 | EI342C1701 | G02319 | 177104162501 |
| EUGENE IS 345 #A004 | EI345A0401 | G21647 | 177104159201 |
| EUGENE IS 346 #004 | EI34600400 | G14482 | 177104150500 |
| EUGENE IS 346 #005 | EI34600500 | G14482 | 177104151900 |
| EUGENE IS 346 #A001 | EI346A0100 | G14482 | 177104149101 |
| EUGENE IS 346 #A002 ST3 | EI346A0203 | G14482 | 177104149603 |
| EUGENE IS 346 #A003 | EI346A0300 | G14482 | 177104155100 |
| EUGENE IS 346 #B001 (ORRI) | EI346B0100 | G14482 | 177104161700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 346 #B003 (ORRI) | EI346B0300 | G14482 | 177104162800 |
| EUGENE IS 353 #D017 ST2 | EI353D1702 | G03783 | 177104143402 |
| EUGENE IS 353(354) #D3 ST | EI353D0300 | G03783 | 177104138501 |
| EUGENE IS 354 #A006 | EI354A0602 | G10752 | 177104104302 |
| EUGENE IS 354 #D001 | EI354D0101 | G10752 | 177104142101 |
| EUGENE IS 354 #D002 | EI354D0200 | G10752 | 177104138100 |
| EUGENE IS 354 #D004 | EI354D0400 | G10752 | 177104142900 |
| EUGENE IS 354 #D005 | EI354D0500 | G10752 | 177104142800 |
| EUGENE IS 354 #D006 | EI354D0600 | G10752 | 177104143500 |
| EUGENE IS 354 #D008 | EI354D0800 | G10752 | 177104144000 |
| EUGENE IS 354 #D009 ST4 | EI354D0904 | G10752 | 177104145604 |
| EUGENE IS 354 #D010 | EI354D1000 | G10752 | 177104144700 |
| EUGENE IS 354 #D011 | EI354D1100 | G10752 | 177104144900 |
| EUGENE IS 354 #D012 | EI354D1200 | G10752 | 177104146400 |
| EUGENE IS 354 #D014 ST1 | EI354D1401 | G02324 | 177104147201 |
| EUGENE IS 354 #D015 | EI354D1500 | G10752 | 177104147700 |
| EUGENE IS 354 #D016 ST1 | EI354D1601 | G10752 | 177104147901 |
| EUGENE IS 361 #A001 | EI361A0100 | G02324 | 177104095200 |
| EUGENE IS 361 #A002 | EI361A0200 | G02324 | 177104095600 |
| EUGENE IS 361 #A006 | EI361A0600 | G02324 | 1771040979 |
| EUGENE IS 361 #A007 | EI361A0700 | G02324 | 177104098500 |
| EUGENE IS 361 #A008 | EI361A0800 | G02324 | 1771040992 |
| EUGENE IS 361 #A010 | EI361A1000 | G02324 | 1771041012 |
| EUGENE IS 361 #A011 | EI361A1102 | G02324 | 177104103402 |
| EUGENE IS 361 #A013 | EI361A1300 | G02324 | 177104104400 |
| EUGENE IS 361 #A014 | EI361A1400 | G02324 | 177104104700 |
| EUGENE IS 361 #A015 | EI361A1500 | G02324 | 177104105300 |
| EUGENE IS 361 #A016 | EI361A1600 | G02324 | 1771041057 |
| EUGENE IS 361 #A017 | EI361A1700 | G02324 | 177104105800 |
| EUGENE IS 361 #A018 | EI361A1800 | G02324 | 177104106600 |
| EUGENE IS 361 #A019 | EI361A1900 | G02324 | 177104107500 |
| EUGENE IS 361 #A020 | EI361A2000 | G02324 | 1771041079 |
| EUGENE IS 361 #A021 | EI361A2101 | G02324 | 177104108101 |
| EUGENE IS 361 #A022 | EI361A2200 | G02324 | 177104144600 |
| EUGENE IS 361 #A023 | EI361A2300 | G02324 | 1771041454 |
| EUGENE IS 361 #A024 | EI361A2400 | G02324 | 177104157900 |
| EUGENE IS 361 #C003 | EI361C0300 | G02324 | 177104112401 |
| EUGENE IS 361 #C012 | EI361C1202 | G02324 | 177104118002 |
| EUGENE IS 361 #C015 | EI361C1500 | G02324 | 177104119500 |
| EUGENE IS 361 #C016 | EI361C1600 | G02324 | 177104119800 |
| EUGENE IS 361 #D001 | EI361D0102 | G02324 | 177104111102 |
| EUGENE IS 361 #D004 | EI361D0400 | G02324 | 1771041135 |
| EUGENE IS 361 #D010 | EI361D1000 | G02324 | 1771041171 |
| EUGENE IS 361 #D014 | EI361D1400 | G02324 | 1771041193 |
| EUGENE IS 361 #D015 | EI361D1501 | G02324 | 177104134601 |
| EUGENE IS 361 #D017 | EI361D1701 | G02324 | 177104152401 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EWING BANK 782 #A011 ST1 EW826 | EW782A1101 | G31470 | 608105002901 |
| EWING BANK 782 #A022 (EW826) | EW782A2200 | G31470 | 608104014400 |
| EWING BANK 782 #A026 | EW782A2600 | G31470 | 608104015003 |
| EWING BANK 826 #A001 | EW826A0100 | G05800 | 608105000100 |
| EWING BANK 826 #A002 ST2 | EW826A0202 | G05800 | 608105000202 |
| EWING BANK 826 #A003 ST2 | EW826A0302 | G05800 | 608105000402 |
| EWING BANK 826 #A004 | EW826A0400 | G05800 | 608105000500 |
| EWING BANK 826 #A005 ST3 | EW826A0503 | G05800 | 608105001303 |
| EWING BANK 826 #A006 | EW826A0600 | G05800 | 608105001200 |
| EWING BANK 826 #A007 | EW826A0700 | G05800 | 608105002000 |
| EWING BANK 826 #A008 | EW826A0800 | G05800 | 608105001400 |
| EWING BANK 826 #A009 | EW826A0900 | G05800 | 608105002800 |
| EWING BANK 826 #A010 | EW826A1000 | G05800 | 608105001700 |
| EWING BANK 826 #A013 | EW826A1300 | G05800 | 608105003000 |
| EWING BANK 826 #A015 | EW826A1501 | G05800 | 608105003501 |
| EWING BANK 826 #A016 | EW826A1600 | G05800 | 608105002100 |
| EWING BANK 826 #A017 | EW826A1700 | G05800 | 608104013600 |
| EWING BANK 826 #A018 | EW826A1800 | G05800 | 608104013700 |
| EWING BANK 826 #A019 BP1 | EW826A1901 | G05800 | 608104013801 |
| EWING BANK 826 #A020 | EW826A2000 | G05800 | 608104014000 |
| EWING BANK 826 #A021 BP3 | EW826A2103 | G05800 | 608104014103 |
| EWING BANK 826 #A024 ST1 | EW826A2401 | G05800 | 608104014801 |
| GALVESTON 151 #005 | GA15100500 | G15740 | 427064044200 |
| GALVESTON 180 #A002 | GA180A0200 | G03228 | 427084005600 |
| GALVESTON 180 #A004 ST1 | GA180A0401 | G03228 | 427084005801 |
| GALVESTON 180 #A007B | GA180A7B0 | G03228 | 427084005900 |
| GALVESTON 180 #A017 | GA180A1700 | G03228 | 427084007600 |
| GALVESTON 192 #A014C | GA192A14C1 | G03229 | 427084006701 |
| GALVESTON 210 #001 | GA21000100 | G25524 | 427064044300 |
| GALVESTON 210 #002 | GA21000200 | G25524 | 427064044800 |
| GRAND ISLE 032 #U012 ST1 | GI032U1201 | 00174 | 177192014502 |
| GRAND ISLE 039 #P002 ST2 | GI039P0202 | 00127 | 177174097802 |
| GRAND ISLE 039 #Q001 ST3 | GI039Q0103 | 00127 | 177174037903 |
| GRAND ISLE 040 #E007D | GI040E07D0 | 00128 | 177170077500 |
| GRAND ISLE 040 #E009 | GI040E0900 | 00128 | 177170078700 |
| GRAND ISLE 040 #G001 | GI040G0100 | 00128 | 177170070400 |
| GRAND ISLE 040 #G002 | GI040G0200 | 00128 | 177170076200 |
| GRAND ISLE 040 #G006 | GI040G0600 | 00133 | 177174012600 |
| GRAND ISLE 040 #G010 | GI040G1000 | 00128 | 177174037200 |
| GRAND ISLE 040 #G011 | GI040G1100 | 00128 | 177174037300 |
| GRAND ISLE 040 #G013 | GI040G1300 | 00128 | 177174098600 |
| GRAND ISLE 040 #M001 | GI040M0100 | 00128 | 177174037000 |
| GRAND ISLE 040 #M002D | GI040M02D0 | 00128 | 177174038600 |
| GRAND ISLE 040 #M003 | GI040M0300 | 00128 | 177174043600 |
| GRAND ISLE 040 #O005 | GI040O0500 | 00128 | 177174097100 |
| GRAND ISLE 041 #D002 | GI041D0200 | 00129 | 177170075300 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 041 #D003 | GI041D0300 | 00129 | 177170076700 |
| GRAND ISLE 041 #D004 | GI041D0400 | 00130 | 177170080500 |
| GRAND ISLE 041 #D007 | GI041D0700 | 00129 | 177172000000 |
| GRAND ISLE 041 #D008 ST | GI041D0801 | 00130 | 177172000801 |
| GRAND ISLE 041 #D009 | GI041D0900 | 00129 | 177172001500 |
| GRAND ISLE 041 #D010ST | GI041D1000 | 00129 | 177174017801 |
| GRAND ISLE 041 #D011E | GI041D1100 | 00129 | 177174018400 |
| GRAND ISLE 041 #E001 ST1 | GI041E0101 | 00130 | 177170069401 |
| GRAND ISLE 041 #E002 ST1 | GI041E0201 | 00130 | 177170074701 |
| GRAND ISLE 041 #E003D | GI041E03D0 | 00130 | 177170075000 |
| GRAND ISLE 041 #E004 ST1 | GI041E0401 | 00130 | 177170075201 |
| GRAND ISLE 041 #E005 | GI041E0500 | 00129 | 177170075400 |
| GRAND ISLE 041 #E006D | GI041E06D0 | 00130 | 177170077300 |
| GRAND ISLE 041 #E008 | GI041E0800 | 00130 | 177170079800 |
| GRAND ISLE 041 #E010 | GI041E1001 | 00130 | 177172000301 |
| GRAND ISLE 041 #E012D | GI041E12D0 | 00130 | 177174011500 |
| GRAND ISLE 041 #E013 | GI041E1300 | 00130 | 177174012900 |
| GRAND ISLE 041 #F003 ST1 | GI041F0301 | 00129 | 177174006401 |
| GRAND ISLE 041 #F005 ST2 | GI041F0502 | 00129 | 177174017302 |
| GRAND ISLE 041 #G007 | GI041G0700 | 00130 | 177174022400 |
| GRAND ISLE 041 #G008 | GI041G0800 | 00130 | 177174026400 |
| GRAND ISLE 041 #H001 | GI041H0100 | 00130 | 177174020300 |
| GRAND ISLE 041 #H002 | GI041H0200 | 00129 | 177174028100 |
| GRAND ISLE 041 #H003 ST | GI041H0301 | 00130 | 177174028601 |
| GRAND ISLE 041 #H004 | GI041H0400 | 00130 | 177174038000 |
| GRAND ISLE 041 #H005 | GI041H0500 | 00129 | 177174038100 |
| GRAND ISLE 041 #H006 ST1 | GI041H0601 | 00129 | 177174098301 |
| GRAND ISLE 041 #H007 | GI041H0700 | 00130 | 177174098400 |
| GRAND ISLE 042 #C001 | GI042C0100 | 00131 | 177170067000 |
| GRAND ISLE 042 #C002 | GI042C0200 | 00131 | 177170072100 |
| GRAND ISLE 042 #F001 | GI042F0100 | 00131 | 177174005100 |
| GRAND ISLE 042 #F002 | GI042F0200 | 00131 | 177174006000 |
| GRAND ISLE 042 #F004 | GI042F0400 | 00131 | 177174007100 |
| GRAND ISLE 046 #001 ST1 | GI04600101 | 00132 | 177174042801 |
| GRAND ISLE 046 #G009 ST1 | GI046G0901 | 00132 | 177174026101 |
| GRAND ISLE 047 #E006 | GI047E0600 | 00133 | 177170078100 |
| GRAND ISLE 047 #E008 | GI047E0800 | 00133 | 177170079500 |
| GRAND ISLE 047 #E017 | GI047E1700 | 00133 | 177174039900 |
| GRAND ISLE 047 #G004 ST | GI047G0401 | 00133 | 177170079601 |
| GRAND ISLE 047 #G005 ST | GI047G0501 | 00133 | 177170080301 |
| GRAND ISLE 047 #G012 | GI047G1200 | 00133 | 177174037500 |
| GRAND ISLE 047 #L001 | GI047L0100 | 00133 | 177174012800 |
| GRAND ISLE 047 #L002 ST | GI047L0201 | 00133 | 177174015901 |
| GRAND ISLE 047 #L003 | GI047L0300 | 00133 | 177174020500 |
| GRAND ISLE 047 #L004 | GI047L0400 | 00133 | 177174017000 |
| GRAND ISLE 047 #L005 | GI047L0500 | 00133 | 177174017900 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 047 #L006D | GI047L0600 | 00133 | 177174036300 |
| GRAND ISLE 047 #L007 ST | GI047L0701 | 00177 | 177174039101 |
| GRAND ISLE 047 #L009 ST1 | GI047L0901 | 00133 | 177174039201 |
| GRAND ISLE 047 #L011 ST2 | GI047L1102 | 00133 | 177174039602 |
| GRAND ISLE 047 #O001 BP2 | GI047O01D3 | 00133 | 177174096102 |
| GRAND ISLE 047 #O002 | GI047O02D1 | 00133 | 177174096600 |
| GRAND ISLE 047 #O003 | GI04700300 | 00133 | 177174096700 |
| GRAND ISLE 047 #O004 | GI047O0400 | 00133 | 177174096900 |
| GRAND ISLE 047 #O006 | GI047O0600 | 00133 | 177174097200 |
| GRAND ISLE 047 #O007 ST1 | GI047O0701 | 00133 | 177174097301 |
| GRAND ISLE 047 #O008 | GI047O0800 | 00133 | 177174097600 |
| GRAND ISLE 047 #O009 | GI047O09D1 | 00133 | 177174097700 |
| GRAND ISLE 048 #E001 | GI048E0100 | 00134 | 177170045400 |
| GRAND ISLE 048 #E014 | GI048E1400 | 00134 | 177172003900 |
| GRAND ISLE 048 #E018 ST | GI048E1801 | 00134 | 177174043501 |
| GRAND ISLE 048 #J002 ST1 | GI048J0201 | 00134 | 177174003201 |
| GRAND ISLE 048 #J003 ST | GI048J0302 | 00134 | 177174004502 |
| GRAND ISLE 048 #J004 ST2 | GI048J0403 | 00134 | 177174004803 |
| GRAND ISLE 048 #J005 ST | GI048J0501 | 00134 | 177174011601 |
| GRAND ISLE 048 #J006 | GI048J0600 | 00134 | 177174012000 |
| GRAND ISLE 048 #J007 | GI048J0700 | 00134 | 177174012200 |
| GRAND ISLE 048 #J008 | GI048J0800 | 00134 | 177174016900 |
| GRAND ISLE 048 #J009 | GI048J0900 | 00134 | 177174044200 |
| GRAND ISLE 048 #J010 ST | GI048J1001 | 00134 | 177174044401 |
| GRAND ISLE 048 #P001 FKA #14 | GI048P0100 | 00134 | 177174015300 |
| GRAND ISLE 052 #L008 ST | GI052L0801 | 00177 | 177174019501 |
| GRAND ISLE 052 #L010 | GI052L1001 | 00177 | 177174043901 |
| GRAND ISLE 052 #L012 | GI052L1200 | 00177 | 177174044604 |
| GRAND ISLE 076 #A001 | GI076A0100 | G02161 | 177174004600 |
| GRAND ISLE 076 #A002 | GI076A0200 | G02161 | 177174004700 |
| GRAND ISLE 076 #A003 | GI076A0300 | G02161 | 177174004900 |
| GRAND ISLE 076 #A005 | GI076A0500 | G02161 | 177174005200 |
| GRAND ISLE 076 #A006 | GI076A0601 | G02161 | 177174005001 |
| GRAND ISLE 076 #A008 | GI076A0800 | G02161 | 177174005400 |
| GRAND ISLE 076 #A009 | GI076A0900 | G02161 | 177174005500 |
| GRAND ISLE 076 #A010 | GI076A1001 | G02161 | 177174005301 |
| GRAND ISLE 076 #A011 | GI076A1100 | G02161 | 177174005600 |
| GRAND ISLE 076 #A013 | GI076A1300 | G02161 | 177174005800 |
| GRAND ISLE 076 #A014 | GI076A1400 | G02161 | 177174006100 |
| GRAND ISLE 076 #A015 | GI076A1500 | G02161 | 177174005900 |
| GRAND ISLE 076 #A018 | GI076A1800 | G02161 | 177174006500 |
| GRAND ISLE 076 #A022 | GI076A2200 | G02161 | 177174006601 |
| GRAND ISLE 076 #A023 ST1 | GI076A2301 | G02161 | 177174044101 |
| GRAND ISLE 076 #A024 ST1BP1 | GI076A2401 | G02161 | 177174095502 |
| GRAND ISLE 110 #A002 | GI110A0200 | G13943 | 177184008900 |
| GRAND ISLE 110 #A005 BP2 | GI110A0502 | G13943 | 177184010402 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 116 #A001 | GI116A0100 | G13944 | 177184008700 |
| GRAND ISLE 116 #A003 | GI116A0300 | G13944 | 177184009200 |
| GRAND ISLE 116 #A004 | GI116A0401 | G13944 | 177184009501 |
| GRAND ISLE 116 #A006 | GI116A0601 | G13944 | 177184010601 |
| GRAND ISLE 116 #A007 | GI116A0700 | G13944 | 177184011100 |
| HIGH ISLAND 110 #A001 | HI110A0100 | G02353 | 427084001700 |
| HIGH ISLAND 110 #A002 | HI110A0200 | G02353 | 427084002300 |
| HIGH ISLAND 110 #A004 | HI110A0400 | G02353 | 427084003300 |
| HIGH ISLAND 110 #A005 | HI110A0500 | G02353 | 427084003500 |
| HIGH ISLAND 110 #A006 | HI110A0600 | G02353 | 427084003700 |
| HIGH ISLAND 110 #A008 | HI110A0800 | G02353 | 427084004900 |
| HIGH ISLAND 110 #A009 | HI110A0900 | G02353 | 427084039400 |
| HIGH ISLAND 110 #B002 | HI110B0200 | G02353 | 427084004300 |
| HIGH ISLAND 110 #B004 | HI110B0400 | G02353 | 427084006100 |
| HIGH ISLAND 110 #B009 | HI110B0900 | G02353 | 427084035000 |
| HIGH ISLAND 110 #B010 | HI110B1000 | G02353 | 427084039600 |
| HIGH ISLAND 111 #003 | HI11100300 | G02354 | 427084046200 |
| HIGH ISLAND 111 #A003 | HI111A0300 | G02354 | 427084002600 |
| HIGH ISLAND 111 #A010 | HI111A1000 | G02354 | 427084040101 |
| HIGH ISLAND 116 #A001 | HI116A0100 | G06156 | 427084016400 |
| HIGH ISLAND 116 #A002D | HI116A02D0 | G06156 | 427084017600 |
| HIGH ISLAND 116 #A003 | HI116A0300 | G06156 | 427084018300 |
| HIGH ISLAND 129 #005 | HI129005 | G01848 | 427104000700 |
| HIGH ISLAND 129 #006 | HI12900600 | G01848 | 427104000800 |
| HIGH ISLAND 129 #013 | HI12901300 | G01848 | 427104009600 |
| HIGH ISLAND 129 #017 | HI12901702 | G01848 | 427104015302 |
| HIGH ISLAND 129 #018 (HELIS) | HI12901800 | G01848 | 427104014500 |
| HIGH ISLAND 176 #002 | HI17600200 | G06164 | 427084030200 |
| HIGH ISLAND 176 #003 | HI17603 | G06164 | 427084031300 |
| HIGH ISLAND 179 #A001 | HI179A0100 | G03236 | 427084005500 |
| HIGH ISLAND 179 #A003 | HI179A0300 | G03236 | 427084005700 |
| HIGH ISLAND 179 #A006 ST2 | HI179A0602 | G03236 | 427084006002 |
| HIGH ISLAND 179 #A008B | HI179A08B0 | G03236 | 427084006200 |
| HIGH ISLAND 179 #A009 | HI179A0900 | G03236 | 427084006300 |
| HIGH ISLAND 179 #A010 | HI179A1000 | G03236 | 427084006400 |
| HIGH ISLAND 179 #A016 | HI179A1600 | G03236 | 427084007300 |
| HIGH ISLAND 179 #A018E | HI179A18E0 | G03236 | 427084008000 |
| HIGH ISLAND 179 #A019 | HI179A1900 | G03236 | 427084007800 |
| HIGH ISLAND 193 #A015 | HI193A1500 | G03237 | 427084006801 |
| HIGH ISLAND 206 #B001 ST1 | HI206B0101 | G20660 | 427084056501 |
| HIGH ISLAND 206 #B002 ST1 | HI206B0201 | G20660 | 427084059201 |
| HIGH ISLAND 206 #B003 ST1 | HI206B0301 | G20660 | 427084063501 |
| HIGH ISLAND A-341 #B001 | HIA341B010 | G25605 | 427114085900 |
| HIGH ISLAND A-341 #B002 | HIA341B020 | G25605 | 427114087101 |
| HIGH ISLAND A-365 #A001 | HIA365A010 | G02750 | 427114052200 |
| HIGH ISLAND A-365 #A004 | HIA365A040 | G02750 | 427114053700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-365 #A006 | HIA365A060 | G02750 | 427114053100 |
| HIGH ISLAND A-365 #A007 | HIA365A070 | G02750 | 427114054100 |
| HIGH ISLAND A-365 #A008 | HIA365A080 | G02750 | 427114054800 |
| HIGH ISLAND A-365 #A010 | HIA365A100 | G02750 | 427114055200 |
| HIGH ISLAND A-365 #A012 | HIA365A120 | G02750 | 427114055600 |
| HIGH ISLAND A-365 #A013 ST1 | HIA365A131 | G02750 | 427114055801 |
| HIGH ISLAND A-365 #A016 | HIA365A160 | G02750 | 427114056700 |
| HIGH ISLAND A-365 #A020 | HIA365A200 | G02750 | 427114057500 |
| HIGH ISLAND A-365 #A021 | HIA365A210 | G02750 | 427114057600 |
| HIGH ISLAND A-365 #A024 | HIA365A240 | G02750 | 427114066300 |
| HIGH ISLAND A-365 #A025 | HIA365A250 | G02750 | 427114066500 |
| HIGH ISLAND A-376 #A002 ST1 | HIA376A021 | G02754 | 427114052601 |
| HIGH ISLAND A-376 #A003 | HIA376A030 | G02754 | 427114052700 |
| HIGH ISLAND A-376 #A005 | HIA376A050 | G02754 | 427114053500 |
| HIGH ISLAND A-376 #A009 | HIA376A090 | G02754 | 427114054400 |
| HIGH ISLAND A-376 #A011 | HIA376A110 | G02754 | 427114055000 |
| HIGH ISLAND A-376 #A014 ST2 | HIA376A142 | G02754 | 427114056002 |
| HIGH ISLAND A-376 #A015 | HIA376A150 | G02754 | 427114056200 |
| HIGH ISLAND A-376 #A017 | HIA376A170 | G02754 | 427114057200 |
| HIGH ISLAND A-376 #A018 | HIA376A180 | G02754 | 427114057300 |
| HIGH ISLAND A-376 #A019 | HIA376A190 | G02754 | 427114057400 |
| HIGH ISLAND A-376 #A022 | HIA376A220 | G02754 | 427114057700 |
| HIGH ISLAND A-376 #B001 | HIA376B010 | G02754 | 427114068700 |
| HIGH ISLAND A-376 #B002 | HIA376B020 | G02754 | 427114068900 |
| HIGH ISLAND A-376 #B003 | HIA376B031 | G02754 | 427114078701 |
| HIGH ISLAND A-376 #B004 | HIA376B041 | G02754 | 427114079001 |
| HIGH ISLAND A-376 #B005 | HIA376B050 | G02754 | 427114079600 |
| HIGH ISLAND A-376 #C001 | HIA376C010 | G02754 | 427114088900 |
| HIGH ISLAND A-376 #C002 | HIA376C020 | G02754 | 427114089600 |
| HIGH ISLAND A-376 #C003 | HIA376C030 | G02754 | 427114089500 |
| HIGH ISLAND A-376 #C004 | HIA376C040 | G02754 | 427114089400 |
| HIGH ISLAND A-382 #A009 | HIA382A090 | G02757 | 427094018600 |
| HIGH ISLAND A-382 #B013 | HIA382B130 | G02757 | 427094025500 |
| HIGH ISLAND A-382 #F001 ST1 | HIA382F011 | G02757 | 427114059401 |
| HIGH ISLAND A-382 #F002 | HIA382F020 | G02757 | 427114059800 |
| HIGH ISLAND A-382 #F003 | HIA382F031 | G02757 | 427114059901 |
| HIGH ISLAND A-382 #F004 | HIA382F040 | G02757 | 427114060600 |
| HIGH ISLAND A-382 #F005 | HIA382F050 | G02757 | 427114060900 |
| HIGH ISLAND A-382 #F006 | HIA382F061 | G02757 | 427114061001 |
| HIGH ISLAND A-382 #F008 | HIA382F080 | G02757 | 427114061700 |
| HIGH ISLAND A-382 #F010 ST5 | HIA382F105 | G02757 | 427114062605 |
| HIGH ISLAND A-382 #F011 | HIA382F110 | G02757 | 427114063100 |
| HIGH ISLAND A-382 #F012 | HIA382F121 | G02757 | 427114063601 |
| HIGH ISLAND A-382 #F013 | HIA382F130 | G02757 | 427114063800 |
| HIGH ISLAND A-382 #F014 | HIA382F140 | G02757 | 427114063900 |
| HIGH ISLAND A-382 #F015 | HIA382F151 | G02757 | 427114064701 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-382 #F017 | HIA382F171 | G02757 | 427114066701 |
| HIGH ISLAND A-382 #F019 | HIA382F190 | G02757 | 427114067100 |
| HIGH ISLAND A-382 #F020 | HIA382F200 | G02757 | 427114067500 |
| HIGH ISLAND A-382 #F021 | HIA382F211 | G02757 | 427114067801 |
| HIGH ISLAND A-442 #A001 (ORRI) | HIA442A010 | G11383 | 427094096101 |
| HIGH ISLAND A-442 #A003 (ORRI) | HIA442A03 | G11383 | 427094098101 |
| HIGH ISLAND A-442 #A004 (ORRI) | HIA442A040 | G11383 | 427094099000 |
| HIGH ISLAND A-442 #B001 (ORRI) | HIA442B01 | G11383 | 427094108900 |
| HIGH ISLAND A-474 #A001 | HIA474A010 | G02366 | 427094017100 |
| HIGH ISLAND A-474 #A002 | HIA474A020 | G02366 | 427094017200 |
| HIGH ISLAND A-474 #A003 | HIA474A030 | G02366 | 427094019900 |
| HIGH ISLAND A-474 #A004 | HIA474A040 | G02366 | 427094022800 |
| HIGH ISLAND A-474 #A005 | HIA474A050 | G02366 | 427094023500 |
| HIGH ISLAND A-474 #A006 | HIA474A060 | G02366 | 427094024300 |
| HIGH ISLAND A-474 #A007 | HIA474A070 | G02366 | 427094027702 |
| HIGH ISLAND A-474 #A008 | HIA474A080 | G02366 | 427094026100 |
| HIGH ISLAND A-474 #A010 | HIA474A100 | G02366 | 427094029400 |
| HIGH ISLAND A-474 #A011 | HIA474A110 | G02366 | 427094030000 |
| HIGH ISLAND A-474 #A012 | HIA474A120 | G02366 | 427094030801 |
| HIGH ISLAND A-474 #A013 | HIA474A130 | G02366 | 427094036104 |
| HIGH ISLAND A-474 #A014 | HIA474A140 | G02366 | 427094035000 |
| HIGH ISLAND A-474 #A017 | HIA474A170 | G02366 | 427094032500 |
| HIGH ISLAND A-474 #A020 | HIA474A200 | G02366 | 427094038500 |
| HIGH ISLAND A-474 #A021 | HIA474A210 | G02366 | 427094040700 |
| HIGH ISLAND A-474 #B023 | HIA474B230 | G02366 | 427094037200 |
| HIGH ISLAND A-475 #A016 | HIA475A16 | G02367 | 427094035500 |
| HIGH ISLAND A-475 #A018 | HIA475A18 | G02367 | 427094033100 |
| HIGH ISLAND A-489 #A009 | HIA489A090 | G02372 | 427094028500 |
| HIGH ISLAND A-489 #A015 | HIA489A150 | G02372 | 427094037000 |
| HIGH ISLAND A-489 #B002 | HIA489B020 | G02372 | 427094021000 |
| HIGH ISLAND A-489 #B003 | HIA489B030 | G02372 | 427094020901 |
| HIGH ISLAND A-489 #B005 ST | HIA489B050 | G02372 | 427094024601 |
| HIGH ISLAND A-489 #B007 | HIA489B070 | G02372 | 427094027601 |
| HIGH ISLAND A-489 #B009 | HIA489B090 | G02372 | 427094026500 |
| HIGH ISLAND A-489 #B010 | HIA489B100 | G02372 | 427094028800 |
| HIGH ISLAND A-489 #B012 | HIA489B120 | G02372 | 427094031400 |
| HIGH ISLAND A-489 #B013 | HIA489B130 | G02372 | 427094028600 |
| HIGH ISLAND A-489 #B014 | HIA489B140 | G02372 | 427094029700 |
| HIGH ISLAND A-489 #B015 | HIA489B150 | G02372 | 427094030400 |
| HIGH ISLAND A-489 #B016 | HIA489B160 | G02372 | 427094029800 |
| HIGH ISLAND A-489 #B017 | HIA489B170 | G02372 | 427094023802 |
| HIGH ISLAND A-489 #B020 | HIA489B200 | G02372 | 427094028101 |
| HIGH ISLAND A-489 #B021 | HIA489B210 | G02372 | 427094026202 |
| HIGH ISLAND A-489 #B022 | HIA489B220 | G02372 | 427094036000 |
| HIGH ISLAND A-489 #B024 | HIA489B240 | G02372 | 427094035400 |
| HIGH ISLAND A-489 #B025 | HIA489B250 | G02372 | 427094041400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-489 #B026 | HIA489B260 | G02372 | 427094043100 |
| HIGH ISLAND A-489 #B027 | HIA489B270 | G02372 | 427094042501 |
| HIGH ISLAND A-489 #B028 | HIA489B280 | G02372 | 427094054500 |
| HIGH ISLAND A-489 #B029 | HIA489B290 | G02372 | 427094111100 |
| HIGH ISLAND A-545 #JA001 | HIA545JA01 | G17199 | 427094104000 |
| HIGH ISLAND A-545 #JA002 | HIA545JA02 | G17199 | 427094112401 |
| HIGH ISLAND A-545 #JA003 | HIA545JA03 | G17199 | 427094113700 |
| HIGH ISLAND A-572 #A003 ST1 | HIA572A031 | G02392 | 427094012901 |
| HIGH ISLAND A-572(573)A014 | HIA572A140 | G02392 | 427094034100 |
| HIGH ISLAND A-573 #006 | HIA5730060 | G02393 | 427094053700 |
| HIGH ISLAND A-573 #A001 ST2 | HIA573A012 | G02393 | 427094007102 |
| HIGH ISLAND A-573 #A002 ST3 | HIA573A023 | G02393 | 427094013803 |
| HIGH ISLAND A-573 #A004 | HIA573A040 | G02393 | 427094015000 |
| HIGH ISLAND A-573 #A005 ST1 | HIA573A051 | G02393 | 427094015501 |
| HIGH ISLAND A-573 #A008 | HIA573A080 | G02393 | 427094018000 |
| HIGH ISLAND A-573 #A010 | HIA573A100 | G02393 | 427094020500 |
| HIGH ISLAND A-573 #A015 | HIA573A150 | G02393 | 427094034200 |
| HIGH ISLAND A-573 #A016 | HIA573A160 | G02393 | 427094034300 |
| HIGH ISLAND A-573 #A017 | HIA573A170 | G02393 | 427094036500 |
| HIGH ISLAND A-573 #A019 ST1 | HIA573A191 | G02393 | 427094038001 |
| HIGH ISLAND A-573 #B001 | HIA573B010 | G02393 | 427094012800 |
| HIGH ISLAND A-573 #B002 | HIA573B020 | G02393 | 427094014100 |
| HIGH ISLAND A-573 #B005 | HIA573B050 | G02393 | 427094016400 |
| HIGH ISLAND A-573 #B006 | HIA573B060 | G02393 | 427094017000 |
| HIGH ISLAND A-573 #B008 | HIA573B080 | G02393 | 427094017900 |
| HIGH ISLAND A-573 #B010 | HIA573B100 | G02393 | 427094021100 |
| HIGH ISLAND A-573 #B012 | HIA573B120 | G02393 | 427094022700 |
| HIGH ISLAND A-573 #E007 | HIA573E070 | G02393 | 427094098200 |
| HIGH ISLAND A-573 #E012 | HIA573E120 | G02393 | 427094115000 |
| HIGH ISLAND A-573 #F007 | HIA573F070 | G02393 | 427114061200 |
| HIGH ISLAND A-573 #F009 | HIA573F090 | G02393 | 427114062000 |
| HIGH ISLAND A-573 #F016 ST5 | HIA573F165 | G02393 | 427114066805 |
| HIGH ISLAND A-573 #F018 ST1 | HIA573F181 | G02393 | 427114067301 |
| HIGH ISLAND A-573 #F022 | HIA573F220 | G02393 | 427114068400 |
| HIGH ISLAND A-573 #F023 ST2 | HIA573F232 | G02393 | 427114069302 |
| HIGH ISLAND A-581 #D004 | HIA581D040 | G18959 | 427094112200 |
| HIGH ISLAND A-582 #C001 | HIA582C010 | G02719 | 427094061500 |
| HIGH ISLAND A-582 #C002 | HIA582C020 | G02719 | 427094061900 |
| HIGH ISLAND A-582 #C003 | HIA582C030 | G02719 | 427094058000 |
| HIGH ISLAND A-582 #C006 | HIA582C060 | G02719 | 427094063400 |
| HIGH ISLAND A-582 #C007 | HIA582C070 | G02719 | 427094063900 |
| HIGH ISLAND A-582 #C010 | HIA582C100 | G02719 | 427094070200 |
| HIGH ISLAND A-582 #C011 | HIA582C110 | G02719 | 427094071400 |
| HIGH ISLAND A-582 #C012 | HIA582C120 | G02719 | 427094074900 |
| HIGH ISLAND A-582 #C013 | HIA582C130 | G02719 | 427094072700 |
| HIGH ISLAND A-582 #C014 | HIA582C140 | G02719 | 427094073800 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-582 #C015 | HIA582C150 | G02719 | 427094075800 |
| HIGH ISLAND A-582 #C019 | HIA582C190 | G02719 | 427094108200 |
| HIGH ISLAND A-582 #D002 ST1 | HIA582D021 | G02719 | 427094110801 |
| HIGH ISLAND A-582 #D003 ST | HIA582D031 | G02719 | 427094111401 |
| HIGH ISLAND A-582 #D005 | HIA582D050 | G02719 | 427094114300 |
| HIGH ISLAND A-582 #D006 | HIA582D060 | G02719 | 427094114700 |
| HIGH ISLAND A-595 #D001 ST2 | HIA595D1D2 | G02721 | 427094055302 |
| HIGH ISLAND A-595 #D003 | HIA595D03 | G02721 | 427094058500 |
| HIGH ISLAND A-595 #D005 | HIA595D050 | G02721 | 427094092900 |
| HIGH ISLAND A-595 #D006 | HIA595D063 | G02721 | 427094063205 |
| HIGH ISLAND A-595 #D010 | HIA595D100 | G02721 | 427094070500 |
| HIGH ISLAND A-595 #D012 | HIA595D120 | G02721 | 427094077000 |
| HIGH ISLAND A-595 #D017 ST2 | HIA595D172 | G02721 | 427094083702 |
| HIGH ISLAND A-595 #D018 | HIA595D181 | G02721 | 427094093501 |
| HIGH ISLAND A-595 #E011 | HIA595E110 | G02721 | 427094114501 |
| HIGH ISLAND A-596 #B014 | HIA596B140 | G02722 | 427094025800 |
| HIGH ISLAND A-596 #D002 | HIA596D020 | G02722 | 427094056901 |
| HIGH ISLAND A-596 #D004 | HIA596D040 | G02722 | 427094060500 |
| HIGH ISLAND A-596 #D007 ST4 | HIA596D074 | G02722 | 427094064304 |
| HIGH ISLAND A-596 #D008 ST1 | HIA596D081 | G02722 | 427094067001 |
| HIGH ISLAND A-596 #D009 | HIA596D090 | G02722 | 427094068400 |
| HIGH ISLAND A-596 #D011 | HIA596D110 | G02722 | 427094075700 |
| HIGH ISLAND A-596 #D013 ST2 | HIA596D132 | G02722 | 427094079502 |
| HIGH ISLAND A-596 #D014 | HIA596D140 | G02722 | 427094080100 |
| HIGH ISLAND A-596 #D016 | HIA596D160 | G02722 | 427094082400 |
| HIGH ISLAND A-596 #E005 | HIA596E050 | G02722 | 427094085900 |
| HIGH ISLAND A-596 #E008 | HIA596E080 | G02722 | 427094112801 |
| HIGH ISLAND A-596 #E009 | HIA596E090 | G02722 | 427094114200 |
| MAIN PASS 077 #A001 | MP077A0100 | G04481 | 177254033800 |
| MAIN PASS 077 #A002 | MP077A0201 | G04481 | 177254043101 |
| MAIN PASS 077 #A003 | MP077A0300 | G04481 | 177254036100 |
| MAIN PASS 077 #A004 | MP077A0400 | G04481 | 177254036900 |
| MAIN PASS 077 #A005 | MP077A0500 | G04481 | 177254038000 |
| MAIN PASS 077 #A006 ST2 | MP077A0602 | G04481 | 177254036402 |
| MAIN PASS 077 #A010 | MP077A1000 | G04481 | 177254039600 |
| MAIN PASS 077 #A011 | MP077A1100 | G04481 | 177254042400 |
| MAIN PASS 077 #A012 | MP077A1200 | G04481 | 177254039700 |
| MAIN PASS 077 #A013 | MP077A1300 | G04481 | 177254044900 |
| MAIN PASS 077 #A014 | MP077A1400 | G04481 | 177254044500 |
| MAIN PASS 077 #A015 | MP077A1501 | G04481 | 177254045101 |
| MAIN PASS 077 #A016 | MP077A1600 | G04481 | 177254045900 |
| MAIN PASS 077 #A017 | MP077A1700 | G04481 | 177254046200 |
| MAIN PASS 077 #A018 | MP077A1800 | G04481 | 177254046800 |
| MAIN PASS 077 #A019 | MP077A1900 | G04481 | 177254048200 |
| MAIN PASS 077 #A020 | MP077A2001 | G04481 | 177254048501 |
| MAIN PASS 077 #A021 ST | MP077A2100 | G04481 | 177254067002 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|------------|----------------|--------------|-----|
| MAIN PASS 077 #A022 | MP077A2201 | G04481 | 177254067401 |
| MAIN PASS 077 #A023 | MP077A23 | G04481 | 177254067601 |
| MAIN PASS 077 #A07 | MP077A0700 | G04481 | 177254041000 |
| MAIN PASS 077 #A08 | MP077A0800 | G04481 | 177254038200 |
| MAIN PASS 077 #A09 | MP077A0900 | G04481 | 177254039000 |
| MAIN PASS 091 #A001 | MP091A0100 | G14576 | 177254060600 |
| MAIN PASS 091 #A002 | MP091A0200 | G14576 | 177254062200 |
| MAIN PASS 091 #A003 | MP091A0300 | G14576 | 177254065000 |
| MAIN PASS 140 #A001 | MP140A0100 | G02193 | 177254006400 |
| MAIN PASS 140 #A002 | MP140A0200 | G02193 | 177254007700 |
| MAIN PASS 140 #A003 | MP140A0300 | G02193 | 177254007800 |
| MAIN PASS 140 #A004 | MP140A0400 | G02193 | 177254008200 |
| MAIN PASS 140 #A005 ST1 | MP140A0501 | G02193 | 177254008301 |
| MAIN PASS 140 #A008 ST2 | MP140A0802 | G02193 | 177254009202 |
| MAIN PASS 140 #A009 | MP140A0900 | G02193 | 177254009400 |
| MAIN PASS 140 #A010 ST2 | MP140A1002 | G02193 | 177254009502 |
| MAIN PASS 140 #A011 | MP140A1100 | G02193 | 177254010000 |
| MAIN PASS 140 #A012 ST2 | MP140A1202 | G02193 | 177254010102 |
| MAIN PASS 140 #A013 ST1 | MP140A1301 | G02193 | 177254010401 |
| MAIN PASS 140 #A014 | MP140A1400 | G02193 | 177254010500 |
| MAIN PASS 140 #A015 | MP140A1500 | G02193 | 177254010600 |
| MAIN PASS 140 #A016 ST3 | MP140A1603 | G02193 | 177254008603 |
| MAIN PASS 140 #A017 | MP140A1700 | G02193 | 177254011000 |
| MAIN PASS 140 #A018 ST3 | MP140A1803 | G02193 | 177254008803 |
| MAIN PASS 140 #A020 | MP140A2000 | G02193 | 177254065700 |
| MAIN PASS 140 #A021 | MP140A2100 | G02193 | 177254065500 |
| MAIN PASS 140 #B001 | MP140B0100 | G02193 | 177254006600 |
| MAIN PASS 140 #B003 ST1 | MP140B0301 | G02193 | 177254008001 |
| MAIN PASS 140 #B004 ST3 | MP140B0403 | G02193 | 177254008103 |
| MAIN PASS 140 #B007 ST1 | MP140B0701 | G02193 | 177254009001 |
| MAIN PASS 140 #B008 ST2 | MP140B0802 | G02193 | 177254009102 |
| MAIN PASS 140 #B011 ST1 | MP140B1101 | G02193 | 177254009801 |
| MAIN PASS 140 #B012 ST2 | MP140B1202 | G02193 | 177254008902 |
| MAIN PASS 140 #B013 | MP140B1300 | G02193 | 177254010200 |
| MAIN PASS 140 #B014 ST | MP140B1401 | G02193 | 177254010301 |
| MAIN PASS 140 #B015 ST2 | MP140B1502 | G02193 | 177254010702 |
| MAIN PASS 140 #B017 | MP140B1701 | G02193 | 177254010901 |
| MAIN PASS 140 #B018 | MP140B1800 | G02193 | 177254062600 |
| MAIN PASS 140 #B019 | MP140B1900 | G02193 | 177254063000 |
| MAIN PASS 140 #B020 | MP140B2000 | G02193 | 177254063100 |
| MAIN PASS 140 #B021 ST | MP140B2101 | G02193 | 177254073301 |
| MAIN PASS 140 #B022 | MP140B2200 | G02193 | 177254077300 |
| MAIN PASS 140 #B023 | MP140B2300 | G02193 | 177254077500 |
| MAIN PASS 152 #A015 | MP152A1500 | G01966 | 177232005300 |
| MAIN PASS 152 #A020B | MP152A20B0 | G01966 | 177232006200 |
| MAIN PASS 152 #B004A | MP152B04A0 | G01966 | 177254000900 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 152 #B012 | MP152B1200 | G01966 | 177254002700 |
| MAIN PASS 152 #B015 | MP152B1500 | G01966 | 177254002300 |
| MAIN PASS 152 #B020 ST | MP152B2002 | G01966 | 177254002802 |
| MAIN PASS 152 #B022A | MP152B22A0 | G01966 | 177254003500 |
| MAIN PASS 152 #B030 | MP152B3000 | G01966 | 177254004500 |
| MAIN PASS 152 #B031A | MP152B31A0 | G01966 | 177254004700 |
| MAIN PASS 152 #C002 | MP152C0200 | G01966 | 177254040800 |
| MAIN PASS 152 #C005 | MP152C0500 | G01966 | 177254042000 |
| MAIN PASS 152 #C006 | MP152C0600 | G01966 | 177254042100 |
| MAIN PASS 152 #C008 | MP152C0800 | G01966 | 177254042500 |
| MAIN PASS 152 #C011 | MP152C1100 | G01966 | 177254043200 |
| MAIN PASS 152 #C031 | MP152C3100 | G01966 | 177254048100 |
| MAIN PASS 152 #C032 | MP152C3200 | G01966 | 177254049000 |
| MAIN PASS 153 #A017B | MP153A17B0 | G01967 | 177232005400 |
| MAIN PASS 153 #B001 | MP153B0100 | G01967 | 177252010300 |
| MAIN PASS 153 #B003A | MP153B03A0 | G01967 | 177254000302 |
| MAIN PASS 153 #B010 ST2 | MP153B1002 | G01967 | 177254001803 |
| MAIN PASS 153 #B017 | MP153B1700 | G01967 | 177254002500 |
| MAIN PASS 153 #B018 | MP153B1800 | G01967 | 177254002900 |
| MAIN PASS 153 #B025 | MP153B2500 | G01967 | 177254004000 |
| MAIN PASS 153 #B027 | MP153B2700 | G01967 | 177254004200 |
| MAIN PASS 153 #C009 | MP153C0900 | G01967 | 177254042701 |
| MAIN PASS 153 #C012 | MP153C1200 | G01967 | 177254043300 |
| MAIN PASS 153 #C013 ST | MP153C1301 | G01967 | 177254043501 |
| MAIN PASS 153 #C014 | MP153C1400 | G01967 | 177254043902 |
| MAIN PASS 153 #C017 | MP153C1700 | G01967 | 177254044200 |
| MAIN PASS 153 #C018 | MP153C1800 | G01967 | 177254044300 |
| MAIN PASS 153 #C020 | MP153C2000 | G01967 | 177254045400 |
| MAIN PASS 153 #C021 | MP153C2100 | G01967 | 177254045500 |
| MAIN PASS 153 #C024 | MP153C2400 | G01967 | 177254046100 |
| MAIN PASS 153 #C026 | MP153C2600 | G01967 | 177254046900 |
| MAIN PASS 153 #C027 | MP153C2700 | G01967 | 177254047400 |
| MAIN PASS 153 #C028 | MP153C2800 | G01967 | 177254048400 |
| MAIN PASS 153 #C029 | MP153C2901 | G01967 | 177254047501 |
| MAIN PASS 153 #C030 | MP153C3002 | G01967 | 177254047802 |
| MAIN PASS 259 #001 | MP25900101 | G07827 | 177244048801 |
| MAIN PASS 259 #002 | MP25900200 | G07827 | 177244050000 |
| MAIN PASS 259 #003 | MP25900300 | G07827 | 608164015800 |
| MAIN PASS 259 #004 | MP25900400 | G07827 | 177244050500 |
| MAIN PASS 259 #005 | MP25900500 | G07827 | 608164016400 |
| MAIN PASS 259 #A001 | MP259A0100 | G07827 | 177244069700 |
| MAIN PASS 259 #A002 | MP259A0200 | G07827 | 177244070200 |
| MAIN PASS 259 #A003 | MP259A0300 | G07827 | 177244070800 |
| MAIN PASS 259 #A004 | MP259A0400 | G07827 | 177244071000 |
| MAIN PASS 259 #A005 | MP259A0500 | G07827 | 177244071300 |
| MAIN PASS 259 #A006 | MP259A0600 | G07827 | 177244071600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 259 #A007 | MP259A0700 | G07827 | 177244071800 |
| MAIN PASS 259 #A008 ST1 | MP259A0801 | G07827 | 177244072401 |
| MAIN PASS 259 #A010 ST1 | MP259A1001 | G07827 | 177244074601 |
| MAIN PASS 259 #A011 ST1 | MP259A1101 | G07827 | 177244074901 |
| MAIN PASS 259 #A012 ST1 | MP259A1201 | G07828 | 177244076801 |
| MAIN PASS 275 #A001 ST1 | MP275A0101 | G15395 | 177244085701 |
| MAIN PASS 275 #A002 ST1 | MP275A0201 | G15395 | 177244086101 |
| MAIN PASS 275 #A003 | MP275A0300 | G15395 | 177244093300 |
| MAIN PASS 289 #013 | MP28901300 | G01666 | 177244004700 |
| MAIN PASS 289 #B001 | MP289B0100 | G01666 | 177240007800 |
| MAIN PASS 289 #B005 | MP289B0501 | G01666 | 177240011701 |
| MAIN PASS 289 #B014A | MP289B1400 | G01666 | 177242000100 |
| MAIN PASS 289 #B015 | MP289B1500 | G01666 | 177240014800 |
| MAIN PASS 289 #B016 WIW | MP289B1600 | G01666 | 177242003100 |
| MAIN PASS 289 #B018 WIW | MP289B1800 | G01666 | 177242003200 |
| MAIN PASS 289 #C001 | MP289C0100 | G01666 | 177244048100 |
| MAIN PASS 289 #C002 | MP289C0200 | G01666 | 177244047600 |
| MAIN PASS 289 #C003A | MP289C0300 | G01666 | 177244047800 |
| MAIN PASS 289 #C004A | MP289C0402 | G01666 | 177244047902 |
| MAIN PASS 289 #C005 | MP289C0500 | G01666 | 177244048000 |
| MAIN PASS 289 #C007 | MP289C0700 | G01666 | 177244048400 |
| MAIN PASS 289 #C008 | MP289C0800 | G01666 | 177244048500 |
| MAIN PASS 289 #C009 | MP289C0901 | G01666 | 177244048301 |
| MAIN PASS 289 #C010 | MP289C1000 | G01666 | 177244048200 |
| MAIN PASS 289 #C011 | MP289C1100 | G01666 | 177244048700 |
| MAIN PASS 289 #C012 | MP289C1203 | G01666 | 177244049203 |
| MAIN PASS 289 #C013 WSW | MP289C1300 | G01666 | 177244052400 |
| MAIN PASS 289 #C014 | MP289C1400 | G01666 | 177244049900 |
| MAIN PASS 289 #C015 | MP289C1500 | G01666 | 177244048900 |
| MAIN PASS 289 #C017 | MP289C1700 | G01666 | 177244053900 |
| MAIN PASS 289 #C019 | MP289C1900 | G01666 | 177244049400 |
| MAIN PASS 289 #C020 | MP289C2000 | G01666 | 177244050100 |
| MAIN PASS 289 #C021 | MP289C2100 | G01666 | 177244049100 |
| MAIN PASS 289 #C022 WIW | MP289C2200 | G01666 | 177244049300 |
| MAIN PASS 289 #C023 | MP289C2301 | G01666 | 177244053801 |
| MAIN PASS 289 #C024 | MP289C2401 | G01666 | 177244051901 |
| MAIN PASS 289 #C025 WIW | MP289C2500 | G01666 | 177244051400 |
| MAIN PASS 289 #C026 | MP289C2600 | G01666 | 177244052700 |
| MAIN PASS 289 #C027 | MP289C2700 | G01666 | 177244053100 |
| MAIN PASS 289 #C028 | MP289C2801 | G01666 | 177244051501 |
| MAIN PASS 289 #C029D | MP289C29D1 | G01666 | 177244051801 |
| MAIN PASS 289 #C030 | MP289C3000 | G01666 | 177244053300 |
| MAIN PASS 289 #C031 | MP289C3100 | G01666 | 177244090200 |
| MAIN PASS 289 #C032 | MP289C3200 | G01666 | 177244090300 |
| MAIN PASS 290 #C006 | MP290C0600 | G01667 | 177244050400 |
| MAIN PASS 290 #C016 | MP290C1600 | G01667 | 177244051000 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 290 #C018 ST2 | MP290C1802 | G01667 | 177244051302 |
| MAIN PASS 295 #001 | MP29500100 | G32263 | 177244097001 |
| MAIN PASS 295 #003 | MP29500300 | G32263 | 177244097500 |
| MAIN PASS 296 #B001 | MP296B0100 | G01673 | 177244022300 |
| MAIN PASS 296 #B003 | MP296B0300 | G01673 | 177244022700 |
| MAIN PASS 296 #B004 | MP296B0400 | G01673 | 177244022900 |
| MAIN PASS 296 #B008 | MP296B0800 | G01673 | 177244023600 |
| MAIN PASS 296 #B013 ST | MP296B1301 | G01673 | 177244024501 |
| MAIN PASS 296 #B014 ST1 | MP296B1401 | G01673 | 177244024401 |
| MAIN PASS 296 #B018 | MP296B1800 | G01673 | 177244025300 |
| MAIN PASS 296 #B019 ST2 | MP296B1902 | G01673 | 177244027302 |
| MAIN PASS 296 #C001 | MP296C0100 | G01673 | 177244016100 |
| MAIN PASS 296 #C002 | MP296C0200 | G01673 | 177244021100 |
| MAIN PASS 296 #C004 ST3 | MP296C0403 | G01673 | 177244021403 |
| MAIN PASS 296 #C005 | MP296C0500 | G01673 | 177244021700 |
| MAIN PASS 296 #C006 | MP296C0603 | G01673 | 177244021503 |
| MAIN PASS 296 #C007A | MP296C07A0 | G01673 | 177244021600 |
| MAIN PASS 296 #C013 | MP296C1301 | G01673 | 177244022401 |
| MAIN PASS 296 #C014 | MP296C1402 | G01673 | 177244030702 |
| MAIN PASS 296 #C015 | MP296C1500 | G01673 | 177244031300 |
| MAIN PASS 296 #C018 ST | MP296C1801 | G01673 | 177244089101 |
| MAIN PASS 296 #C019 | MP296C1900 | G01673 | 177244089400 |
| MAIN PASS 300 #B002 | MP300B0200 | G01317 | 177244067200 |
| MAIN PASS 301 #A002 | MP301A0200 | G04486 | 177244034600 |
| MAIN PASS 301 #A003 | MP301A0300 | G04486 | 177244035101 |
| MAIN PASS 301 #A004 | MP301A0400 | G04486 | 177244039501 |
| MAIN PASS 301 #B001 | MP301B0100 | G04486 | 177244063000 |
| MAIN PASS 302 #B004 | MP302B0400 | G32264 | 177244018801 |
| MAIN PASS 302 #B019 | MP302B1900 | G32264 | 177244097401 |
| MAIN PASS 303 #A005D (MP310) | MP303A05D1 | G04253 | 177244030600 |
| MAIN PASS 303 #A017 | MP303A1700 | G04253 | 177244094700 |
| MAIN PASS 303 #B005 | MP303B0500 | G04253 | 177244023000 |
| MAIN PASS 303 #B007 | MP303B0700 | G04253 | 177244023400 |
| MAIN PASS 303 #B009 | MP303B0900 | G04253 | 177244023800 |
| MAIN PASS 303 #B015 | MP303B1500 | G04253 | 177244024800 |
| MAIN PASS 304 #A007 | MP304A0700 | G03339 | 177244030800 |
| MAIN PASS 304 #A009 | MP304A0900 | G03339 | 177244030500 |
| MAIN PASS 304 #B012 | MP304B1200 | G03339 | 177244024300 |
| MAIN PASS 308 #A001 | MP308A0100 | G32265 | 177244095600 |
| MAIN PASS 308 #A002 | MP308A0200 | G32265 | 177244095700 |
| MAIN PASS 308 #A003 | MP308A0300 | G32265 | 177244096500 |
| MAIN PASS 308 #A004 ST | MP308A0401 | G32265 | 177244096200 |
| MAIN PASS 308 #A006 | MP308A0600 | G32265 | 177244095900 |
| MAIN PASS 308 #A007 | MP308A0700 | G32265 | 177244096700 |
| MAIN PASS 308 #A008 | MP308A0801 | G32265 | 177244096601 |
| MAIN PASS 309 #A005 | MP309A0500 | G08760 | 177244096301 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 309 #A009 | MP309A0900 | G08760 | 177244096900 |
| MAIN PASS 309 #JA001 | MP309JA010 | G08760 | 177244063500 |
| MAIN PASS 309 #JA002 | MP309JA200 | G08760 | 177244064600 |
| MAIN PASS 309 #JA006 | MP309JA600 | G08760 | 177244065100 |
| MAIN PASS 309 #JA007 | MP309JA700 | G08760 | 177244065000 |
| MAIN PASS 309 #JA008 | MP309JA800 | G08760 | 177244065200 |
| MAIN PASS 309 #JA010 | MP309JA100 | G08760 | 177244072700 |
| MAIN PASS 309 #JA05A | MP309JA5A0 | G08760 | 177244064800 |
| MAIN PASS 310 #A001 | MP310A0100 | G04126 | 177244028700 |
| MAIN PASS 310 #A002 ST2 | MP310A0202 | G04126 | 177244029502 |
| MAIN PASS 310 #A003 | MP310A0301 | G04126 | 177244029401 |
| MAIN PASS 310 #A004 | MP310A0400 | G04126 | 177244030000 |
| MAIN PASS 310 #A006 | MP310A0603 | G04126 | 177244030103 |
| MAIN PASS 310 #A008A | MP310A0800 | G04126 | 177244029700 |
| MAIN PASS 310 #A010 | MP310A1000 | G04126 | 177244029800 |
| MAIN PASS 310 #A011 ST | MP310A1102 | G04126 | 177244041702 |
| MAIN PASS 310 #A012 | MP310A1200 | G04126 | 177244041900 |
| MAIN PASS 310 #A013 | MP310A1300 | G04126 | 177244042400 |
| MAIN PASS 310 #A014 | MP310A1401 | G04126 | 177244042601 |
| MAIN PASS 310 #A015 | MP310A1500 | G04126 | 177244042500 |
| MAIN PASS 310 #A016 ST | MP310A1601 | G04126 | 177244043301 |
| MAIN PASS 310 #JA009 | MP310JA902 | G04126 | 177244065602 |
| MAIN PASS 311 #A001 | MP311A0100 | G02213 | 177244013600 |
| MAIN PASS 311 #A002 | MP311A0200 | G02213 | 177244013900 |
| MAIN PASS 311 #A003 | MP311A0300 | G02213 | 177244014100 |
| MAIN PASS 311 #A005 | MP311A0500 | G02213 | 177244014500 |
| MAIN PASS 311 #A006 | MP311A0600 | G02213 | 177244014800 |
| MAIN PASS 311 #A007 | MP311A0700 | G02213 | 177244014900 |
| MAIN PASS 311 #A008 | MP311A0800 | G02213 | 177244015200 |
| MAIN PASS 311 #A009 | MP311A0900 | G02213 | 177244015300 |
| MAIN PASS 311 #A010 | MP311A1000 | G02213 | 177244015500 |
| MAIN PASS 311 #A011A | MP311A1100 | G02213 | 177244016400 |
| MAIN PASS 311 #A012 | MP311A1200 | G02213 | 177244016300 |
| MAIN PASS 311 #A013 | MP311A1301 | G02213 | 177244017202 |
| MAIN PASS 311 #A014 | MP311A1400 | G02213 | 177244017800 |
| MAIN PASS 311 #A015 | MP311A1500 | G02213 | 177244017600 |
| MAIN PASS 311 #A016 | MP311A1600 | G02213 | 177244018000 |
| MAIN PASS 311 #A017 | MP311A1700 | G02213 | 177244017900 |
| MAIN PASS 311 #A020 ST | MP311A2001 | G02213 | 177244089301 |
| MAIN PASS 311 #A024 | MP311A2400 | G02213 | 177244096400 |
| MAIN PASS 311 #B001 | MP311B0100 | G02213 | 177244015900 |
| MAIN PASS 311 #B002D | MP311B02D0 | G02213 | 177244018300 |
| MAIN PASS 311 #B006 | MP311B0600 | G02213 | 177244019200 |
| MAIN PASS 311 #B007 | MP311B0700 | G02213 | 177244019300 |
| MAIN PASS 311 #B008 | MP311B0801 | G02213 | 177244019001 |
| MAIN PASS 311 #B009 | MP311B0900 | G02213 | 177244019400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 311 #B010 | MP311B1000 | G02213 | 177244019500 |
| MAIN PASS 311 #B012 | MP311B1200 | G02213 | 177244020001 |
| MAIN PASS 311 #B013D | MP311B13D0 | G02213 | 177244035600 |
| MAIN PASS 311 #B014 | MP311B1401 | G02213 | 177244036201 |
| MAIN PASS 311 #B015 | MP311B1500 | G02213 | 177244036700 |
| MAIN PASS 311 #B017 | MP311B1700 | G02213 | 177244036400 |
| MAIN PASS 311 #B018 ST | MP311B1801 | G02213 | 177244089201 |
| MAIN PASS 312 #A021 | MP312A2100 | G16520 | 177244093200 |
| MAIN PASS 312 #A022 | MP312A2200 | G16520 | 177244093400 |
| MAIN PASS 314 #A023 (MP311A) | MP314A2300 | G33693 | 177244096100 |
| MAIN PASS 315 #JA003 ST | MP315JA302 | G08467 | 177244064502 |
| MAIN PASS 315 #JA004 | MP315JA400 | G08467 | 177244064700 |
| MAIN PASS 315 #SS002 | MP31500200 | G08467 | 177244095500 |
| MATAGORDA IS 519 #L001 | MI519L1SL0 | MF-79413 | 427033030000 |
| MATAGORDA IS 519 #L002 | MI519L2SL0 | MF-79413 | 427033034000 |
| MATAGORDA IS 519 #L003 | MI519L3SL0 | MF-79413 | 427033039700 |
| MATAGORDA IS 519 #L004 | MI519L4SL0 | MF-79413 | 427033039700 |
| MATAGORDA IS 622 #C001 | MI622C01 | G05000 | 427034013800 |
| MATAGORDA IS 622 #C002 ST1 | MI622C0201 | G05000 | 427034018901 |
| MATAGORDA IS 622 #C008 | MI622C0800 | G05000 | 427034052700 |
| MATAGORDA IS 622 #D001 | MI622D0100 | G05000 | 427034048400 |
| MATAGORDA IS 622 #D003 | MI622D0300 | G05000 | 427034053000 |
| MATAGORDA IS 622 #D004 | MI622D0400 | G05000 | 427034054700 |
| MATAGORDA IS 622 #G002 | MI622G0200 | G05000 | 427034053700 |
| MATAGORDA IS 623 #B001 | MI623B0100 | G03088 | 427034010600 |
| MATAGORDA IS 623 #B003 ST1 | MI623B0301 | G03088 | 427034014401 |
| MATAGORDA IS 623 #B006 | MI623B0600 | G03088 | 427034018400 |
| MATAGORDA IS 623 #B008 | MI623B0800 | G03088 | 427034051300 |
| MATAGORDA IS 623 #C007 | MI623C0700 | G03088 | 427034052400 |
| MATAGORDA IS 623 #F002 | MI623F0200 | G03088 | 427034051100 |
| MATAGORDA IS 623 #F003 | MI623F0300 | G03088 | 427034053800 |
| MATAGORDA IS 623 #H001 (#6) | MI623H0100 | G03088 | 427034058100 |
| MATAGORDA IS 623 #H002 (#7) | MI623H0200 | G03088 | 427034058200 |
| MATAGORDA IS 623(622) #C004 | MI623C0400 | G05000 | 427034021400 |
| MATAGORDA IS 635 #F001 | MI635F0100 | G06043 | 427034048800 |
| MISSISSIPPI CANYON 065 #B004 | MC065B0400 | G21742 | 608174106300 |
| MISSISSIPPI CANYON 065 #B015 | MC065B1500 | G21742 | 608174111500 |
| MISSISSIPPI CANYON 108 #A027 | MC108A2703 | G09777 | 608174045703 |
| MISSISSIPPI CANYON 108 #A032 | MC108A3203 | G09777 | 608174088503 |
| MISSISSIPPI CANYON 110 #001 | MC1100100 | G18192 | 608174060500 |
| MISSISSIPPI CANYON 110 #A009 | MC110A0900 | G18192 | 608174042501 |
| MISSISSIPPI CANYON 110 #A011ST | MC110A1101 | G18192 | 608174042601 |
| MISSISSIPPI CANYON 110 #A031 | MC110A3100 | G18192 | 608174087900 |
| MISSISSIPPI CANYON 311 #A001ST | MC311A0102 | G02968 | 608174006502 |
| MISSISSIPPI CANYON 311 #A005 | MC311A0500 | G02968 | 608174011700 |
| MISSISSIPPI CANYON 311 #A006ST | MC311A0601 | G02968 | 608174010901 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MISSISSIPPI CANYON 311 #A011ST | MC311A1101 | G02968 | 608174014201 |
| MISSISSIPPI CANYON 311 #A012 | MC311A1200 | G02968 | 608174015000 |
| MISSISSIPPI CANYON 311 #A013 | MC311A1300 | G02968 | 608174015600 |
| MISSISSIPPI CANYON 311 #A014 | MC311A1400 | G02968 | 608174016200 |
| MISSISSIPPI CANYON 311 #A015ST | MC311A1501 | G02968 | 608174017801 |
| MISSISSIPPI CANYON 311 #A016 | MC311A1600 | G02968 | 608174016300 |
| MISSISSIPPI CANYON 311 #A020ST | MC311A2001 | G02968 | 608174033901 |
| MISSISSIPPI CANYON 311 #A022ST | MC311A2201 | G02968 | 608174034801 |
| MISSISSIPPI CANYON 311 #A024ST | MC311A2401 | G02968 | 608174035301 |
| MOBILE 826 #001 | MO826D0100 | G26176 | 608154014900 |
| NORTH PADRE IS 969 #A001 | PN969A0100 | G05953 | 427134003400 |
| NORTH PADRE IS 969 #A004 | PN969A0400 | G05953 | 427134005600 |
| NORTH PADRE IS 969 #A006 | PN969A0600 | G05953 | 427134005700 |
| NORTH PADRE IS 969 #A007 | PN969A0700 | G05953 | 427134005800 |
| NORTH PADRE IS 969 #JA002 | PN969JA020 | G05953 | 427014003000 |
| NORTH PADRE IS 976 #A002 | PN976A0200 | G05954 | 427134005000 |
| NORTH PADRE IS 976 #A003 | PN976A03 | G05954 | 427134005101 |
| NORTH PADRE IS 976 #A005 | PN976A0500 | G05954 | 427134005500 |
| NORTH PADRE IS 976 #A008 | PN976A0800 | G05954 | 427134005900 |
| NORTH PADRE IS 976 #A009 | PN976A0900 | G05954 | 427134006000 |
| SHIP SHOAL 030 #011 | SS03001100 | 00333 | 177114093000 |
| SHIP SHOAL 030 #013 | SS03001300 | 00333 | 177114109400 |
| SHIP SHOAL 030 #014D | SS030014D0 | 00333 | 177114111900 |
| SHIP SHOAL 030 #A001 | SS030A0100 | 00333 | 177114113000 |
| SHIP SHOAL 032 #024 | SS03202401 | 00335 | 177114131701 |
| SHIP SHOAL 033 #005 | SS03300500 | 00336 | 177114030900 |
| SHIP SHOAL 068 #002 ST1 | SS06800201 | G02917 | 177114096701 |
| SHIP SHOAL 068 #003 | SS06800301 | G02925 | 177114101301 |
| SHIP SHOAL 068 #004 | SS06800402 | G02917 | 177114101802 |
| SHIP SHOAL 068 #005 ST1 | SS06800501 | G02917 | 177114101401 |
| SHIP SHOAL 068 #009 | SS06800900 | G02917 | 177114126000 |
| SHIP SHOAL 068 #010 | SS06801000 | G02917 | 177114135200 |
| SHIP SHOAL 068 #G001 (ORR) | SS068G0100 | G02917 | 177114119400 |
| SHIP SHOAL 068 #G002 | SS068G0200 | G02917 | 177114121200 |
| SHIP SHOAL 091 #A001 | SS091A0100 | G02919 | 177114044300 |
| SHIP SHOAL 091 #A003 | SS091A0300 | G02919 | 177114056800 |
| SHIP SHOAL 091 #A004 ST1 | SS091A0401 | G02919 | 177114062501 |
| SHIP SHOAL 091 #A005 ST1 | SS091A0501 | G02919 | 177114058201 |
| SHIP SHOAL 091 #A006 ST2 | SS091A0602 | G02919 | 177114059202 |
| SHIP SHOAL 091 #B001 ST1 | SS091B0101 | G02919 | 177114066401 |
| SHIP SHOAL 091 #B002 ST1 | SS091B0201 | G02919 | 177114065701 |
| SHIP SHOAL 091 #B003 | SS091B0300 | G02919 | 177114068400 |
| SHIP SHOAL 091 #B004 ST1 | SS091B0401 | G02919 | 177114072101 |
| SHIP SHOAL 091 #B005 | SS091B0500 | G02919 | 177114110800 |
| SHIP SHOAL 105 #007 | SS10500700 | G09614 | 177114130800 |
| SHIP SHOAL 105 #A001 ST1 | SS105A0101 | G09614 | 177114124501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 105 #B004 | SS105B0400 | G09614 | 177114122400 |
| SHIP SHOAL 105 #B006 | SS105B0600 | G09614 | 177114130201 |
| SHIP SHOAL 126 #B001 | SS126B0100 | G12940 | 177114121000 |
| SHIP SHOAL 126 #B002 | SS126B0200 | G12940 | 177114134203 |
| SHIP SHOAL 126 #B003 ST1 | SS126B0301 | G12940 | 177114135401 |
| SHIP SHOAL 129 #A002 ST1 | SS129A0201 | G12941 | 177114117201 |
| SHIP SHOAL 129 #A003 | SS129A0300 | G12941 | 177114120100 |
| SHIP SHOAL 129 #B001 ST1 | SS129B0101 | G12941 | 177114135301 |
| SHIP SHOAL 129 #B002 ST1 | SS129B0201 | G12941 | 177114145501 |
| SHIP SHOAL 129 #L001 | SS129L0100 | G12941 | 177114150000 |
| SHIP SHOAL 129 #L002 | SS129L0200 | G12941 | 177114150300 |
| SHIP SHOAL 145 #E001 | SS145E01 | G34831 | 177114140501 |
| SHIP SHOAL 151 #A001 (ORRI) | SS151A0100 | G15282 | 177114125702 |
| SHIP SHOAL 151 #A002 (ORRI) | SS151A0200 | G15282 | 177114154300 |
| SHIP SHOAL 159 #001 | SS15900100 | G11984 | 177114143701 |
| SHIP SHOAL 169 #BB001 | SS169BB010 | 00820 | 177114048100 |
| SHIP SHOAL 169 #BB002 | SS169BB020 | 00820 | 177114055501 |
| SHIP SHOAL 169 #BB003 | SS169BB030 | 00820 | 177114057800 |
| SHIP SHOAL 169 #BB004 | SS169BB040 | 00820 | 177114056500 |
| SHIP SHOAL 169 #BB005 | SS169BB050 | 00820 | 177114059600 |
| SHIP SHOAL 169 #BB006 | SS169BB060 | 00820 | 177114060101 |
| SHIP SHOAL 169 #C001 | SS169C0100 | 00820 | 177114075600 |
| SHIP SHOAL 169 #C003 | SS169C0300 | 00820 | 177114078500 |
| SHIP SHOAL 169 #C004 | SS169C0400 | 00820 | 177114077400 |
| SHIP SHOAL 169 #C006 | SS169C0600 | 00820 | 177114080201 |
| SHIP SHOAL 169 #C007 | SS169C0700 | 00820 | 177114080601 |
| SHIP SHOAL 169 #C008 | SS169C0800 | 00820 | 177114081300 |
| SHIP SHOAL 169 #C009 | SS169C0900 | 00820 | 177114144400 |
| SHIP SHOAL 169 #C010 | SS169C1000 | 00820 | 177114144800 |
| SHIP SHOAL 169 #G001 | SS169G0100 | 00820 | 177114127400 |
| SHIP SHOAL 169 #G002 | SS169G0200 | 00820 | 177114128500 |
| SHIP SHOAL 169 #G003 | SS169G0300 | 00820 | 177114156600 |
| SHIP SHOAL 175 #A004 | SS175A0400 | G05550 | 177094078900 |
| SHIP SHOAL 176 #001 | SS17600100 | G33646 | 177114155400 |
| SHIP SHOAL 178 #A001 | SS178A0100 | G05551 | 177114076800 |
| SHIP SHOAL 178 #A002A | SS178A0200 | G05551 | 177114080800 |
| SHIP SHOAL 178 #A003 | SS178A0302 | G05551 | 177114081902 |
| SHIP SHOAL 178 #A004 | SS178A0400 | G05551 | 177114082900 |
| SHIP SHOAL 178 #A005 | SS178A0500 | G05551 | 177114082300 |
| SHIP SHOAL 178 #A006 | SS178A0600 | G05551 | 177114113900 |
| SHIP SHOAL 182 #A001 | SS182A0100 | G03998 | 177114059400 |
| SHIP SHOAL 182 #A002 ST1 | SS182A0201 | G03998 | 177114060601 |
| SHIP SHOAL 182 #A003 | SS182A0300 | G03998 | 177114063100 |
| SHIP SHOAL 182 #A004 | SS182A0400 | G03998 | 177114065500 |
| SHIP SHOAL 182 #B001 | SS182B0101 | G03998 | 177114066001 |
| SHIP SHOAL 182 #B002 | SS182B0201 | G03998 | 177114074501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 182 #B003 ST2 | SS182B0402 | G03998 | 177114090502 |
| SHIP SHOAL 182 #B004 | SS182B0400 | G03998 | 177114090800 |
| SHIP SHOAL 182 #B005 | SS182B0500 | G03998 | 177114113600 |
| SHIP SHOAL 182 #B006 | SS182B0600 | G03998 | 177114130500 |
| SHIP SHOAL 182 #C001D ST1 | SS182C01D0 | G03998 | 177114087501 |
| SHIP SHOAL 182 #C002 | SS182C0200 | G03998 | 177114088500 |
| SHIP SHOAL 182 #C003 | SS182C0300 | G03998 | 177114087800 |
| SHIP SHOAL 182 #C004 | SS182C0400 | G03998 | 177114132000 |
| SHIP SHOAL 189 #A001A | SS189A01A0 | G04232 | 177114062000 |
| SHIP SHOAL 189 #A002 | SS189A0201 | G04232 | 177114085301 |
| SHIP SHOAL 189 #A003A | SS189A03A0 | G04232 | 177114085200 |
| SHIP SHOAL 189 #A005 | SS189A0500 | G04232 | 177114088400 |
| SHIP SHOAL 189 #A007 ST2 | SS189A0702 | G04232 | 177114129502 |
| SHIP SHOAL 189 #A008 | SS189A0800 | G04232 | 177114130900 |
| SHIP SHOAL 189 #A009 ST1 | SS189A0901 | G04232 | 177114139801 |
| SHIP SHOAL 189 #A010BP1 | SS189A1001 | G04232 | 177114154701 |
| SHIP SHOAL 189 #A4 (SS210) | SS189A04 | G05204 | 177114086801 |
| SHIP SHOAL 189 #A6 (SS188) | SS189A06 | G05203 | 177114088900 |
| SHIP SHOAL 189 #B001 (ORRI) | SS189B0100 | G04232 | 177114151001 |
| SHIP SHOAL 189 #B002 (ORRI) | SS189B0200 | G04232 | 177114152300 |
| SHIP SHOAL 189 #C001 | SS189C0101 | G04232 | 177114153901 |
| SHIP SHOAL 189 #D001 | SS189D0100 | G04232 | 177114154402 |
| SHIP SHOAL 190 #B001 ST2 | SS190B0103 | G10775 | 177114114803 |
| SHIP SHOAL 190 #B002 | SS190B0200 | G10775 | 177114134700 |
| SHIP SHOAL 193 #A001 ST1 | SS193A0101 | G13917 | 177114112301 |
| SHIP SHOAL 193 #A002 ST1 | SS193A0201 | G13917 | 177114112601 |
| SHIP SHOAL 193 #A003 | SS193A0300 | G13917 | 177114115300 |
| SHIP SHOAL 193 #A004 ST1 | SS193A0401 | G13917 | 177114116001 |
| SHIP SHOAL 193 #A005 ST1 | SS193A0501 | G13917 | 177114117301 |
| SHIP SHOAL 193 #A006 ST5 | SS193A0605 | G13917 | 177114123005 |
| SHIP SHOAL 193 #A007 ST1 | SS193A0701 | G13917 | 177114139501 |
| SHIP SHOAL 193 #M001 | SS193M0100 | G13917 | 177114148500 |
| SHIP SHOAL 194 #A001 | SS194A0100 | G15288 | 177114121300 |
| SHIP SHOAL 194 #A002 ST1 | SS194A0201 | G15288 | 177114121701 |
| SHIP SHOAL 198 #J011 | SS198J1100 | 00593 | 177114147800 |
| SHIP SHOAL 204 #A008 | SS204A0800 | G01520 | 177110083000 |
| SHIP SHOAL 204 #A015 ST1 | SS204A1501 | G01520 | 177112003401 |
| SHIP SHOAL 204 #A016 | SS204A1601 | G01520 | 177112005401 |
| SHIP SHOAL 204 #A020 | SS204A2000 | G01520 | 177112012600 |
| SHIP SHOAL 204 #A024 ST1 | SS204A2401 | G01520 | 177112017701 |
| SHIP SHOAL 204 #A028 ST3 | SS204A2803 | G01520 | 177110071003 |
| SHIP SHOAL 204 #A030A | SS204A30A1 | G01520 | 177114002801 |
| SHIP SHOAL 204 #A031 | SS204A3101 | G01520 | 177110084201 |
| SHIP SHOAL 204 #A034 | SS204A3400 | G01520 | 177114146700 |
| SHIP SHOAL 204 #A035 | SS204A3502 | G01520 | 177114147402 |
| SHIP SHOAL 204 #A036 ST1 | SS204A3603 | G01520 | 177114146803 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 206 #E002 | SS206E0201 | G01522 | 177114118101 |
| SHIP SHOAL 206 #E003 | SS206E0301 | G01522 | 177114118201 |
| SHIP SHOAL 206 #E004 | SS206E0400 | G01522 | 177114141800 |
| SHIP SHOAL 206 #E005 | SS206E0500 | G01522 | 177114142000 |
| SHIP SHOAL 207 #A003 ST1 | SS207A0301 | G01523 | 177110072801 |
| SHIP SHOAL 207 #A004B | SS207A04B0 | G01523 | 177110075500 |
| SHIP SHOAL 207 #A006D | SS207A06D0 | G01523 | 177110078200 |
| SHIP SHOAL 207 #A008B | SS207A08B0 | G01523 | 177110080700 |
| SHIP SHOAL 207 #A009 | SS207A0900 | G01523 | 177110082400 |
| SHIP SHOAL 207 #A010D | SS207A10D0 | G01523 | 177110083900 |
| SHIP SHOAL 207 #A013 | SS207A1300 | G01523 | 177112002500 |
| SHIP SHOAL 207 #A015 ST1 | SS207A1501 | G01523 | 177112010601 |
| SHIP SHOAL 207 #A016 ST1 | SS207A1601 | G01523 | 177112011401 |
| SHIP SHOAL 207 #A018 | SS207A1800 | G01523 | 177112005000 |
| SHIP SHOAL 207 #A019ST | SS207A1901 | G01523 | 177114009401 |
| SHIP SHOAL 207 #A020 | SS207A2000 | G01523 | 177114010300 |
| SHIP SHOAL 207 #A022 ST1 | SS207A2201 | G01523 | 177114011301 |
| SHIP SHOAL 207 #A023B | SS207A23B0 | G01523 | 177114013500 |
| SHIP SHOAL 207 #A024 | SS207A2400 | G01523 | 177114014300 |
| SHIP SHOAL 207 #A025 | SS207A2500 | G01523 | 177114015500 |
| SHIP SHOAL 207 #A026 | SS207A2601 | G01523 | 177112001101 |
| SHIP SHOAL 207 #A027 | SS207A2701 | G01523 | 177110079401 |
| SHIP SHOAL 207 #A028 | SS207A2801 | G01523 | 177110077301 |
| SHIP SHOAL 207 #A029 ST | SS207A2901 | G01523 | 177112001901 |
| SHIP SHOAL 207 #A030 | SS207A3001 | G01523 | 177110071501 |
| SHIP SHOAL 207 #A031 ST2 | SS207A3102 | G01523 | 177114117702 |
| SHIP SHOAL 207 #A032 | SS207A3201 | G01523 | 177114119701 |
| SHIP SHOAL 207 #A033 ST1 | SS207A3301 | G01523 | 177114121901 |
| SHIP SHOAL 207 #A034 | SS207A3400 | G01523 | 177114122200 |
| SHIP SHOAL 207 #A035 ST1 | SS207A3501 | G01523 | 177114133301 |
| SHIP SHOAL 207 #A036 | SS207A3600 | G01523 | 177114137700 |
| SHIP SHOAL 207 #D002 | SS207D0200 | G01523 | 177114025400 |
| SHIP SHOAL 207 #D007 | SS207D0700 | G01523 | 177114030300 |
| SHIP SHOAL 207 #D008 | SS207D0800 | G01523 | 177114032300 |
| SHIP SHOAL 207 #D009 | SS207D0900 | G01523 | 177114116400 |
| SHIP SHOAL 207 #D010 ST1 | SS207D1001 | G01523 | 177114116501 |
| SHIP SHOAL 216 #C004 ST1 | SS216C0401 | G01524 | 177112014901 |
| SHIP SHOAL 216 #C005A | SS216C05A0 | G01524 | 177112017400 |
| SHIP SHOAL 216 #C007 ST1 | SS216C0701 | G01524 | 177114001201 |
| SHIP SHOAL 216 #C009 ST1 | SS216C0901 | G01524 | 177114003801 |
| SHIP SHOAL 216 #C010 | SS216C1000 | G01524 | 177114004900 |
| SHIP SHOAL 216 #C012C | SS216C12C0 | G01524 | 177114006700 |
| SHIP SHOAL 216 #C013 | SS216C1300 | G01524 | 177114007700 |
| SHIP SHOAL 216 #C015 | SS216C1500 | G01524 | 177114009000 |
| SHIP SHOAL 216 #C016 | SS216C1601 | G01524 | 177114000101 |
| SHIP SHOAL 216 #C017A | SS216C17A1 | G01524 | 177114003001 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 216 #C019 | SS216C1900 | G01524 | 177114031900 |
| SHIP SHOAL 216 #C023 | SS216C2300 | G01524 | 177114134600 |
| SHIP SHOAL 216 #C024 ST2 | SS216C2402 | G01524 | 177114135102 |
| SHIP SHOAL 243 #A001 (ORRI) | SS243A0100 | G10780 | 177124051700 |
| SHIP SHOAL 243 #A004 (ORRI) | SS243A0400 | G10780 | 177124059402 |
| SHIP SHOAL 243 #A006 (ORRI) | SS243A0600 | G10780 | 177124064901 |
| SHIP SHOAL 249 #D017 | SS249D1700 | G01030 | 177112020800 |
| SHIP SHOAL 259 #001 | SS25900100 | G05044 | 177124028500 |
| SHIP SHOAL 259 #JA001 ST2 | SS259JA102 | G05044 | 177124035002 |
| SHIP SHOAL 259 #JA002 | SS259JA201 | G05044 | 177124035301 |
| SHIP SHOAL 259 #JA003 ST2 | SS259JA302 | G05044 | 177124035402 |
| SHIP SHOAL 259 #JA004 | SS259JA400 | G05044 | 177124035600 |
| SHIP SHOAL 259 #JA005 ST1 | SS259JA501 | G05044 | 177124035801 |
| SHIP SHOAL 259 #JA006 | SS259JA600 | G05044 | 177124035900 |
| SHIP SHOAL 259 #JA007 | SS259JA700 | G05044 | 177124064200 |
| SHIP SHOAL 259 #JA008 ST2 | SS259JA802 | G05044 | 177124064402 |
| SHIP SHOAL 259 #JA009 | SS259JA900 | G05044 | 177124064500 |
| SHIP SHOAL 259 #JA010 ST1 | SS259JA101 | G05044 | 177124065501 |
| SHIP SHOAL 274 #A001 | SS274A0100 | G01039 | 177120001500 |
| SHIP SHOAL 274 #A002 | SS274A0200 | G01039 | 177120001600 |
| SHIP SHOAL 274 #A003 | SS274A0300 | G01039 | 177120001700 |
| SHIP SHOAL 274 #A004 | SS274A0400 | G01039 | 177120001800 |
| SHIP SHOAL 274 #A006 | SS274A0601 | G01039 | 177120002001 |
| SHIP SHOAL 274 #A008 | SS274A0800 | G01039 | 177120002200 |
| SHIP SHOAL 274 #A010 | SS274A1001 | G01039 | 177120002401 |
| SHIP SHOAL 274 #A012 | SS274A1201 | G01039 | 177120002601 |
| SHIP SHOAL 274 #A013 | SS274A1300 | G01039 | 177120002700 |
| SHIP SHOAL 274 #A014 | SS274A1403 | G01039 | 177120001903 |
| SHIP SHOAL 274 #A016 | SS274A1602 | G01039 | 177120010202 |
| SHIP SHOAL 274 #C001 | SS274C0100 | G01039 | 177124038900 |
| SHIP SHOAL 274 #C002 | SS274C0200 | G01039 | 177124038800 |
| SHIP SHOAL 274 #C003 | SS274C0300 | G01039 | 177124039000 |
| SHIP SHOAL 274 #C004 | SS274C0400 | G01039 | 177124039100 |
| SHIP SHOAL 274 #C005 WIW | SS274C0500 | G01039 | 177124039200 |
| SHIP SHOAL 274 #C006 WSW | SS274C0600 | G01039 | 177124039300 |
| SHIP SHOAL 274 #C007 | SS274C0700 | G01039 | 177124039900 |
| SHIP SHOAL 274 #C008 | SS274C0800 | G01039 | 177124040300 |
| SHIP SHOAL 274 #C009 | SS274C0900 | G01039 | 177124040200 |
| SHIP SHOAL 274 #C010 WIW | SS274C1000 | G01039 | 177124040000 |
| SHIP SHOAL 274 #C011 | SS274C1100 | G01039 | 177124040100 |
| SHIP SHOAL 274 #C012 | SS274C1200 | G01039 | 177124040700 |
| SHIP SHOAL 274 #C013 | SS274C1300 | G01039 | 177124040800 |
| SHIP SHOAL 274 #C014 | SS274C1400 | G01039 | 177124040900 |
| SHIP SHOAL 274 #C015 | SS274C1500 | G01039 | 177124041400 |
| SHIP SHOAL 274 #C016 | SS274C1600 | G01039 | 177124041300 |
| SHIP SHOAL 274 #C017 | SS274C1701 | G01039 | 177124041501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 274 #C018 | SS274C1800 | G01039 | 177124041800 |
| SHIP SHOAL 274 #C019 WSW | SS274C1900 | G01039 | 177124042000 |
| SHIP SHOAL 274 #C020 | SS274C2000 | G01039 | 177124041900 |
| SHIP SHOAL 274 #C021 | SS274C2100 | G01039 | 177124042600 |
| SHIP SHOAL 274 #C022 | SS274C2201 | G01039 | 177124056102 |
| SHIP SHOAL 274 #C023 | SS274C2300 | G01039 | 177124059600 |
| SHIP SHOAL 274 #C024 | SS274C2400 | G01039 | 177124060100 |
| SHIP SHOAL 276 #A6 | - | G10785 | 177124042500 |
| SHIP SHOAL 276 #A7 | - | G10785 | 177124043000 |
| SHIP SHOAL 314 #A002 | SS314A0200 | G26074 | 177124047202 |
| SHIP SHOAL 314 #A004 (ORRI) | SS314A0400 | G26074 | 177124047500 |
| SHIP SHOAL 354 #A001 ST2 | SS354A0102 | G15312 | 177124055202 |
| SHIP SHOAL 354 #A002 ST2 | SS354A0202 | G15312 | 177124056002 |
| SHIP SHOAL 354 #A003 ST1 | SS354A0301 | G15312 | 177124057901 |
| SHIP SHOAL 354 #A004 ST1 | SS354A0401 | G15312 | 177124057701 |
| SHIP SHOAL 354 #A005 | SS354A0500 | G15312 | 177124065600 |
| SHIP SHOAL 354 #A006 | SS354A0600 | G15312 | 177124066000 |
| SHIP SHOAL 354 #A007 ST1 | SS354A0701 | G15312 | 177124066101 |
| SHIP SHOAL 354 #A008 | SS354A0800 | G15312 | 177124066200 |
| SHIP SHOAL206#E001(SS207E1 | SS207E0100 | G01523 | 177114115500 |
| SOUTH MARSH IS 010 #004 | SM01000400 | G01181 | 177074089700 |
| SOUTH MARSH IS 010 #A002 | SM010A0200 | G01181 | 177070050200 |
| SOUTH MARSH IS 010 #A003 | SM010A0300 | G01181 | 177074043200 |
| SOUTH MARSH IS 010 #A004 | SM010A0400 | G01181 | 177070050600 |
| SOUTH MARSH IS 010 #A007 | SM010A0700 | G01181 | 177070051300 |
| SOUTH MARSH IS 010 #A008 | SM010A0800 | G01181 | 177070052100 |
| SOUTH MARSH IS 010 #A009E | SM010A09E0 | G01181 | 177072000000 |
| SOUTH MARSH IS 010 #A011 | SM010A1100 | G01181 | 177072000500 |
| SOUTH MARSH IS 010 #A012 | SM010A1200 | G01181 | 177072001100 |
| SOUTH MARSH IS 010 #A013 ST1 | SM010A1301 | G01181 | 177072000401 |
| SOUTH MARSH IS 010 #A017 | SM010A1700 | G01181 | 177074032300 |
| SOUTH MARSH IS 010 #A019 | SM010A1901 | G01181 | 177074046301 |
| SOUTH MARSH IS 010 #A021 | SM010A2100 | G01181 | 177074075200 |
| SOUTH MARSH IS 011 #034 | SM01103400 | G01182 | 177072004300 |
| SOUTH MARSH IS 011 #058 BP2 | SM01105802 | G01182 | 177074090702 |
| SOUTH MARSH IS 018 #A001 ST1 | SM018A0101 | G08680 | 177074057701 |
| SOUTH MARSH IS 018 #A002 | SM018A0200 | G08680 | 177074064900 |
| SOUTH MARSH IS 018 #A003 | SM018A0300 | G08680 | 177074070300 |
| SOUTH MARSH IS 048 #E002 | SM048E0201 | 00786 | 177072002801 |
| SOUTH MARSH IS 048 #E003 ST1BP | SM048E0302 | 00786 | 177072003302 |
| SOUTH MARSH IS 048 #E004 | SM048E0401 | 00786 | 177072004001 |
| SOUTH MARSH IS 048 #E005 | SM048E0505 | 00786 | 177072004800 |
| SOUTH MARSH IS 048 #E007 | SM048E07 | 00786 | 177074092300 |
| SOUTH MARSH IS 066 #C001 | SM066C0100 | G01198 | 177070041200 |
| SOUTH MARSH IS 066 #C002 | SM066C0200 | G01198 | 177070049000 |
| SOUTH MARSH IS 066 #C003 | SM066C0300 | G01198 | 177074005800 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 066 #C004 | SM066C0400 | G01198 | 177070050000 |
| SOUTH MARSH IS 066 #C005 | SM066C0500 | G01198 | 177070050700 |
| SOUTH MARSH IS 066 #C006 | SM066C0600 | G01198 | 177072018700 |
| SOUTH MARSH IS 066 #C007 | SM066C0700 | G01198 | 177070052800 |
| SOUTH MARSH IS 066 #C009B | SM066C09B0 | G01198 | 177072001200 |
| SOUTH MARSH IS 066 #C010 ST2 | SM066C1002 | G01198 | 177072002502 |
| SOUTH MARSH IS 066 #C011 | SM066C1100 | G01198 | 177074072900 |
| SOUTH MARSH IS 066 #C012 | SM066C1200 | G01198 | 177074073500 |
| SOUTH MARSH IS 066 #D001 | SM066D0100 | G01198 | 177074025400 |
| SOUTH MARSH IS 066 #D003 | SM066D0300 | G01198 | 177074029000 |
| SOUTH MARSH IS 066 #D004 | SM066D0400 | G01198 | 177074032000 |
| SOUTH MARSH IS 066 #D005 | SM066D0500 | G01198 | 177074032600 |
| SOUTH MARSH IS 066 #D006 ST | SM066D0601 | G01198 | 177074031201 |
| SOUTH MARSH IS 066 #D007 ST1BP | SM066D0701 | G01198 | 177074027401 |
| SOUTH MARSH IS 076 #F001 BP2 | SM076F0102 | G01208 | 177084095402 |
| SOUTH MARSH IS 076 #F002 | SM076F0200 | G01208 | 177084095500 |
| SOUTH MARSH IS 105 #A001 | SM105A0100 | G17938 | 177084089700 |
| SOUTH MARSH IS 105 #A002 ST1 | SM105A0201 | G17938 | 177084089901 |
| SOUTH MARSH IS 106 #A001N | SM106A01N0 | G03776 | 177084038200 |
| SOUTH MARSH IS 106 #A002 ST | SM106A02N1 | G03776 | 177084038701 |
| SOUTH MARSH IS 106 #A003N | SM106A03N0 | G03776 | 177084039100 |
| SOUTH MARSH IS 106 #A004 | SM106A04N0 | G03776 | 177084040600 |
| SOUTH MARSH IS 106 #A005 ST2 | SM106A05N2 | G03776 | 177084047202 |
| SOUTH MARSH IS 106 #A006 ST1 | SM106A06N1 | G03776 | 177084048401 |
| SOUTH MARSH IS 106 #A007 | SM106A07N0 | G03776 | 177084048600 |
| SOUTH MARSH IS 106 #A008 | SM106A08N0 | G03776 | 177084049100 |
| SOUTH MARSH IS 106 #A009 ST1 | SM106A09N1 | G03776 | 177084049801 |
| SOUTH MARSH IS 106 #A010 | SM106A10N0 | G03776 | 177084051300 |
| SOUTH MARSH IS 106 #A011 ST2 | SM106A11N2 | G03776 | 177084052302 |
| SOUTH MARSH IS 106 #A013 | SM106A13N0 | G03776 | 177084081200 |
| SOUTH MARSH IS 106 #A014 | SM106A14N0 | G03776 | 177084082000 |
| SOUTH MARSH IS 106 #A015 | SM106A15N0 | G03776 | 177084082600 |
| SOUTH MARSH IS 106 #A016 | SM106A16N0 | G03776 | 177084082700 |
| SOUTH MARSH IS 106 #A017 | SM106A17N0 | G03776 | 177084082800 |
| SOUTH MARSH IS 106 #A020 | SM106A20S0 | G02279 | 177084082200 |
| SOUTH MARSH IS 106#A012ST2 | SM106A12S2 | G02279 | 177084053602 |
| SOUTH MARSH IS 108 #A018 | SM108A1800 | 00792 | 177084094500 |
| SOUTH MARSH IS 127 #B011 | SM127B1100 | G02883 | 177084015800 |
| SOUTH MARSH IS 127 #B017 | SM127B17S1 | G02883 | 177084025801 |
| SOUTH MARSH IS 127 #B022 ST1 | SM127B2201 | G02883 | 177084078501 |
| SOUTH MARSH IS 128 #A002 | SM128A0200 | G02587 | 177084014300 |
| SOUTH MARSH IS 128 #A003 | SM128A0300 | G02587 | 177084013400 |
| SOUTH MARSH IS 128 #A004C ST1 | SM128A04C1 | G02587 | 177084014601 |
| SOUTH MARSH IS 128 #A005 | SM128A0500 | G02587 | 177084015000 |
| SOUTH MARSH IS 128 #A006 ST1 | SM128A0601 | G02587 | 177084016101 |
| SOUTH MARSH IS 128 #A007 | SM128A0700 | G02587 | 177084015500 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 128 #A009 | SM128A0900 | G02587 | 177084019100 |
| SOUTH MARSH IS 128 #A010 | SM128A1002 | G02587 | 177084019302 |
| SOUTH MARSH IS 128 #A011 ST3 | SM128A1103 | G02587 | 177084017103 |
| SOUTH MARSH IS 128 #A012 | SM128A1200 | G02587 | 177084023600 |
| SOUTH MARSH IS 128 #A013 ST2 | SM128A1302 | G02587 | 177084024002 |
| SOUTH MARSH IS 128 #A014 | SM128A1400 | G02587 | 177084026100 |
| SOUTH MARSH IS 128 #A015 ST2 | SM128A1502 | G02587 | 177084012902 |
| SOUTH MARSH IS 128 #A016 ST1 | SM128A1601 | G02587 | 177084033301 |
| SOUTH MARSH IS 128 #A017 ST1 | SM128A1702 | G02587 | 177084028202 |
| SOUTH MARSH IS 128 #A018 | SM128A1800 | G02587 | 177084030300 |
| SOUTH MARSH IS 128 #A019 | SM128A1900 | G02587 | 177084035100 |
| SOUTH MARSH IS 128 #A021 | SM128A2100 | G02587 | 177084035200 |
| SOUTH MARSH IS 128 #A022 ST2 | SM128A2202 | G02587 | 177084034402 |
| SOUTH MARSH IS 128 #A023 ST1 | SM128A2301 | G02587 | 177084037601 |
| SOUTH MARSH IS 128 #A024 | SM128A2400 | G02587 | 177084039700 |
| SOUTH MARSH IS 128 #A025 | SM128A2500 | G02587 | 177084040000 |
| SOUTH MARSH IS 128 #A026 | SM128A2600 | G02587 | 177084039900 |
| SOUTH MARSH IS 128 #B001A | SM128B01D0 | G02587 | 177084011000 |
| SOUTH MARSH IS 128 #B002 ST1 | SM128B0201 | G02587 | 177084014401 |
| SOUTH MARSH IS 128 #B003 ST1 | SM128B0301 | G02587 | 177084011601 |
| SOUTH MARSH IS 128 #B005D | SM128B05D0 | G02587 | 177084012700 |
| SOUTH MARSH IS 128 #B006 ST2 | SM128B0602 | G02587 | 177084012202 |
| SOUTH MARSH IS 128 #B007 ST2 | SM128B0702 | G02587 | 177084014502 |
| SOUTH MARSH IS 128 #B008A | SM128B08A0 | G02587 | 177084014700 |
| SOUTH MARSH IS 128 #B009 | SM128B0900 | G02587 | 177084014900 |
| SOUTH MARSH IS 128 #B010 | SM128B1000 | G02587 | 177084015600 |
| SOUTH MARSH IS 128 #B012 ST1 | SM128B1201 | G02587 | 177084016401 |
| SOUTH MARSH IS 128 #B013 | SM128B1300 | G02587 | 177084023500 |
| SOUTH MARSH IS 128 #B015 | SM128B1500 | G02587 | 177084024700 |
| SOUTH MARSH IS 128 #B016 | SM128B1600 | G02587 | 177084025300 |
| SOUTH MARSH IS 128 #B018 | SM128B1800 | G02587 | 177084029200 |
| SOUTH MARSH IS 128 #B019 | SM128B1900 | G02587 | 177084030600 |
| SOUTH MARSH IS 128 #B020 | SM128B2000 | G02587 | 177084063300 |
| SOUTH MARSH IS 128 #B021 | SM128B2100 | G02587 | 177084078200 |
| SOUTH MARSH IS 128 #B024 | SM128B2400 | G02587 | 177084088600 |
| SOUTH MARSH IS 128 #C001 | SM128C0100 | G02587 | 177084028600 |
| SOUTH MARSH IS 128 #C002 | SM128C0200 | G02587 | 177084027300 |
| SOUTH MARSH IS 128 #C003 | SM128C0300 | G02587 | 177084029600 |
| SOUTH MARSH IS 128 #C004A | SM128C04A0 | G02587 | 177084030000 |
| SOUTH MARSH IS 128 #C005A | SM128C05A0 | G02587 | 177084030700 |
| SOUTH MARSH IS 128 #C006A | SM128C06A0 | G02587 | 177084031300 |
| SOUTH MARSH IS 128 #C007 | SM128C0700 | G02587 | 177084031700 |
| SOUTH MARSH IS 128 #C008 | SM128C0800 | G02587 | 177084032000 |
| SOUTH MARSH IS 128 #C009 | SM128C0900 | G02587 | 177084034900 |
| SOUTH MARSH IS 128 #C010D | SM128C10D0 | G02587 | 177084035000 |
| SOUTH MARSH IS 128 #C011 | SM128C1100 | G02587 | 177084036400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 128 #C012A | SM128C12A0 | G02587 | 177084037300 |
| SOUTH MARSH IS 128 #C013 | SM128C1300 | G02587 | 177084037700 |
| SOUTH MARSH IS 128 #C014 | SM128C1400 | G02587 | 177084038900 |
| SOUTH MARSH IS 128 #C015A | SM128C15A0 | G02587 | 177084039300 |
| SOUTH MARSH IS 128 #C016 | SM128C1600 | G02587 | 177084062000 |
| SOUTH MARSH IS 128 #C017A | SM128C17A0 | G02587 | 177084062600 |
| SOUTH MARSH IS 128 #C018D | SM128C18D0 | G02587 | 177084062900 |
| SOUTH MARSH IS 128 #C019 | SM128C1900 | G02587 | 177084088000 |
| SOUTH MARSH IS 128 #C020 | SM128C2000 | G02587 | 177084088100 |
| SOUTH MARSH IS 128 #C021 | SM128C2101 | G02587 | 177084088201 |
| SOUTH MARSH IS 132 #B002 | SM132B0200 | G02282 | 177084031800 |
| SOUTH MARSH IS 132 #B003 ST1 | SM132B0301 | G02282 | 177084031601 |
| SOUTH MARSH IS 132 #B004 | SM132B0400 | G02282 | 177084033000 |
| SOUTH MARSH IS 132 #B005 | SM132B0500 | G02282 | 177084033500 |
| SOUTH MARSH IS 132 #B006 | SM132B0600 | G02282 | 177084033900 |
| SOUTH MARSH IS 132 #B007 | SM132B0700 | G02282 | 177084034100 |
| SOUTH MARSH IS 132 #B008 | SM132B0800 | G02282 | 177084035500 |
| SOUTH MARSH IS 132 #B009 | SM132B0900 | G02282 | 177084036200 |
| SOUTH MARSH IS 132 #B010 | SM132B1000 | G02282 | 177084036500 |
| SOUTH MARSH IS 132 #B011 | SM132B1100 | G02282 | 177084037800 |
| SOUTH MARSH IS 135 #C003 BP1 | SM135C0301 | G19776 | 177084089401 |
| SOUTH MARSH IS 136 #A004 | SM136A0400 | G02588 | 177084021900 |
| SOUTH MARSH IS 136 #A008 | SM136A08 | G02588 | 177084032401 |
| SOUTH MARSH IS 136 #A010 | SM136A1000 | G02588 | 177084035700 |
| SOUTH MARSH IS 136 #A015 | SM136A1500 | G02588 | 177084071200 |
| SOUTH MARSH IS 136 #C007 | SM136C0700 | G02588 | 177084091900 |
| SOUTH MARSH IS 137 #A001 | SM137A0100 | G02589 | 177084007700 |
| SOUTH MARSH IS 137 #A003 | SM137A0300 | G02589 | 177084020400 |
| SOUTH MARSH IS 137 #A005 | SM137A0500 | G02589 | 177084024100 |
| SOUTH MARSH IS 137 #A009 | SM137A0900 | G02589 | 177084034600 |
| SOUTH MARSH IS 137 #A011 ST1 | SM137A1101 | G02589 | 177084030201 |
| SOUTH MARSH IS 137 #A012 | SM137A1200 | G02589 | 177084040400 |
| SOUTH MARSH IS 137 #A013 | SM137A1300 | G02589 | 177084042900 |
| SOUTH MARSH IS 137 #A014 | SM137A1400 | G02589 | 177084045000 |
| SOUTH MARSH IS 137 #A018 | SM137A1800 | G02589 | 177084072800 |
| SOUTH MARSH IS 141 #B014C | SM141B14C1 | G02885 | 177084025701 |
| SOUTH MARSH IS 141 #B023A | SM141B23A0 | G02885 | 177084079100 |
| SOUTH MARSH IS 149 #C001 ST1 | SM149C0101 | G02592 | 177084088901 |
| SOUTH MARSH IS 149 #C002 | SM149C0200 | G02592 | 177084089100 |
| SOUTH MARSH IS 149 #C004 | SM149C0400 | G02592 | 177084090300 |
| SOUTH MARSH IS 149 #C005 | SM149C0500 | G02592 | 177084090400 |
| SOUTH MARSH IS 149 #D001 | SM149D0101 | G02592 | 177084094401 |
| SOUTH MARSH IS 150 #C006 BP2 | SM150C0600 | G16325 | 177084091802 |
| SOUTH MARSH IS 150 #D002 | SM150D0200 | G16325 | 177084095700 |
| SOUTH MARSH IS 150 #D003 | SM150D0301 | G16325 | 177084096401 |
| SOUTH MARSH IS 161 #A014 ORRI | SM161A1400 | G04809 | 177084061401 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 161 #A015 ORRI | SM161A1500 | G04809 | 177084090501 |
| SOUTH MARSH IS 236 #139 (ORRI) | SM23613900 | 00310 | 177074053802 |
| SOUTH MARSH IS 236 #144 ORRI | SM23614400 | 00310 | 177074058600 |
| SOUTH MARSH IS 236 #160 (ORRI) | SM23616000 | 00310 | 177074058700 |
| SOUTH MARSH IS 236 #A001 ORRI | SM236A0100 | 00310 | 177074037700 |
| SOUTH MARSH IS 236 #A003 ORRI | SM236A0300 | 00310 | 177074040800 |
| SOUTH MARSH IS 236 #A005 ORRI | SM236A0500 | 00310 | 177074041100 |
| SOUTH MARSH IS 236 #A009 ORRI | SM236A0900 | 00310 | 177074044000 |
| SOUTH MARSH IS 240 #0200 | SM24020000 | 00310 | 177074078800 |
| SOUTH MARSH IS 240 #153 | SM240153 | 00310 | 177074061100 |
| SOUTH MARSH IS 240 #156 | SM24015600 | 00310 | 177074061800 |
| SOUTH MARSH IS 240 #191 | SM24019101 | 00310 | 177074073600 |
| SOUTH MARSH IS 240 #196 | SM24019600 | 00310 | 177074075800 |
| SOUTH MARSH IS 240 #E001 | SM240E0100 | 00310 | 177074060900 |
| SOUTH MARSH IS 240 #E002 | SM240E0200 | 00310 | 177074065600 |
| SOUTH MARSH IS 241 #302 | SM241302 | 00310 | 177074042001 |
| SOUTH MARSH IS 268 #A002C | SM268A02C0 | G02310 | 177074007600 |
| SOUTH MARSH IS 268 #A007A | SM268A07A0 | G02310 | 177074013600 |
| SOUTH MARSH IS 268 #A017B | SM268A17B0 | G02310 | 177074016800 |
| SOUTH MARSH IS 268 #D001 | SM268D0100 | G02310 | 177074020600 |
| SOUTH MARSH IS 268 #D003D | SM268D03D0 | G02310 | 177074021600 |
| SOUTH MARSH IS 268 #D004 | SM268D0400 | G02310 | 177074022500 |
| SOUTH MARSH IS 268 #D006 | SM268D0600 | G02310 | 177074024700 |
| SOUTH MARSH IS 268 #D007 | SM268D0700 | G02310 | 177074025700 |
| SOUTH MARSH IS 268 #D012 | SM268D1200 | G02310 | 177074028700 |
| SOUTH MARSH IS 268 #D016D | SM268D16D1 | G02310 | 177074029901 |
| SOUTH MARSH IS 269 #A021B | SM269A21B0 | G02311 | 177074018100 |
| SOUTH MARSH IS 269 #B002 | SM269B0200 | G02311 | 177074008100 |
| SOUTH MARSH IS 269 #B017 ST1 | SM269B1701 | G02311 | 177074075701 |
| SOUTH MARSH IS 269 #B019 BP1 | SM269B1901 | G02311 | 177074088501 |
| SOUTH MARSH IS 269 #F001 ST1 | SM269F0101 | G02311 | 177074080401 |
| SOUTH MARSH IS 280 #G001 | SM280G0100 | G14456 | 177074071400 |
| SOUTH MARSH IS 280 #G002 | SM280G0200 | G14456 | 177074080700 |
| SOUTH MARSH IS 280 #H001 ST1 | SM280H0102 | G14456 | 177074081802 |
| SOUTH MARSH IS 280 #H002 STB | SM280H0203 | G14456 | 177074082303 |
| SOUTH MARSH IS 281 #C001 | SM281C0100 | G02600 | 177074012500 |
| SOUTH MARSH IS 281 #C003A | SM281C03A0 | G02600 | 177074013900 |
| SOUTH MARSH IS 281 #C005A | SM281C05A0 | G02600 | 177074015300 |
| SOUTH MARSH IS 281 #C006 | SM281C0600 | G02600 | 177074015800 |
| SOUTH MARSH IS 281 #C008 ST1 | SM281C0801 | G02600 | 177074017701 |
| SOUTH MARSH IS 281 #C010 ST | SM281C1001 | G02600 | 177074020701 |
| SOUTH MARSH IS 281 #C011 ST1 | SM281C1101 | G02600 | 177074022401 |
| SOUTH MARSH IS 281 #C012A | SM281C12A0 | G02600 | 177074024100 |
| SOUTH MARSH IS 281 #C014 ST | SM281C1401 | G02600 | 177074026901 |
| SOUTH MARSH IS 281 #C015 | SM281C1500 | G02600 | 177074028300 |
| SOUTH MARSH IS 281 #C016C | SM281C16C0 | G02600 | 177074029600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 281 #C017 | SM281C1700 | G02600 | 177074030500 |
| SOUTH MARSH IS 281 #C019B | SM281C19B0 | G02600 | 177074034400 |
| SOUTH MARSH IS 281 #C020 ST1 | SM281C2001 | G02600 | 177074034901 |
| SOUTH MARSH IS 281 #C021B | SM281C21B0 | G02600 | 177074035500 |
| SOUTH MARSH IS 281 #C023 ST2 | SM281C2302 | G02600 | 177074036802 |
| SOUTH MARSH IS 281 #C024 | SM281C2400 | G02600 | 177074037300 |
| SOUTH MARSH IS 281 #C025 | SM281C2500 | G02600 | 177074083500 |
| SOUTH MARSH IS 281 #C026 | SM281C2600 | G02600 | 177074083700 |
| SOUTH MARSH IS 281 #C027 | SM281C2700 | G02600 | 177074085200 |
| SOUTH MARSH IS 281 #C028 BP2 | SM281C2802 | G02600 | 177074089402 |
| SOUTH MARSH IS 281 #D002 | SM281D0200 | G02600 | 177074021100 |
| SOUTH MARSH IS 281 #D009 | SM281D0900 | G02600 | 177074027100 |
| SOUTH MARSH IS 281 #D010A | SM281D10A0 | G02600 | 177074027500 |
| SOUTH MARSH IS 281 #D011 | SM281D1100 | G02600 | 177074028000 |
| SOUTH MARSH IS 281 #D013 | SM281D1300 | G02600 | 177074029100 |
| SOUTH MARSH IS 281 #D014A | SM281D14A0 | G02600 | 177074029700 |
| SOUTH MARSH IS 281 #D05A | SM281D05A0 | G02600 | 177074023200 |
| SOUTH MARSH IS 281 #D08A | SM281D08A0 | G02600 | 177074026600 |
| SOUTH MARSH IS 281 #E001D | SM281E01D0 | G02600 | 177074018500 |
| SOUTH MARSH IS 281 #E002A | SM281E02A0 | G02600 | 177074024600 |
| SOUTH MARSH IS 281 #E003 | SM281E0300 | G02600 | 177074027800 |
| SOUTH MARSH IS 281 #E004 | SM281E0400 | G02600 | 177074028500 |
| SOUTH MARSH IS 281 #E005A | SM281E05A0 | G02600 | 177074029300 |
| SOUTH MARSH IS 281 #E006 | SM281E0601 | G02600 | 177074030101 |
| SOUTH MARSH IS 281 #E007 | SM281E0700 | G02600 | 177074031600 |
| SOUTH MARSH IS 281 #E008A | SM281E08A1 | G02600 | 177074033101 |
| SOUTH MARSH IS 281 #E009A | SM281E09A0 | G02600 | 177074033800 |
| SOUTH MARSH IS 281 #E010A | SM281E10A0 | G02600 | 177074034800 |
| SOUTH MARSH IS 281 #E011 ST | SM281E1101 | G02600 | 177074035601 |
| SOUTH MARSH IS 281 #E012 | SM281E1200 | G02600 | 177074036000 |
| SOUTH MARSH IS 281 #E013 | SM281E1300 | G02600 | 177074036600 |
| SOUTH MARSH IS 281 #E014 | SM281E1400 | G02600 | 177074038600 |
| SOUTH MARSH IS 281 #I001 | SM281I0101 | G02600 | 177074082601 |
| SOUTH MARSH IS 281 #I002 ST1 | SM281I0201 | G02600 | 177074082701 |
| SOUTH MARSH IS 281 #I003 | SM281I0300 | G02600 | 177074082800 |
| SOUTH MARSH IS 48 # E 6 | SM048E06 | 00786 | 177074066702 |
| SOUTH PASS 061 #D004 ST2 | SP061D0402 | G01609 | 177234006302 |
| SOUTH PASS 061 #D023 | SP061D2300 | G01609 | 177234008200 |
| SOUTH PASS 061 #D024 ST1 | SP061D2401 | G01609 | 177234007701 |
| SOUTH PASS 061 #D025 | SP061D2500 | G01609 | 177234008300 |
| SOUTH PASS 061 #D026 | SP061D2600 | G01609 | 177234008400 |
| SOUTH PASS 061 #D033 ST2 | SP061D3302 | G01609 | 177234008700 |
| SOUTH PASS 061 #D034 ST1 | SP061D3401 | G01609 | 177234009001 |
| SOUTH PASS 061 #D035 ST2 | SP061D3502 | G01609 | 177234009102 |
| SOUTH PASS 061 #D036 ST1 | SP061D3601 | G01609 | 177234009201 |
| SOUTH PASS 061 #D038 | SP061D38 | G01609 | 177234009702 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 061 #D039 ST1 | SP061D3901 | G01609 | 177234009801 |
| SOUTH PASS 061 #D040 ST2 | SP061D4002 | G01609 | 177234009502 |
| SOUTH PASS 061 #D043 ST2 | SP061D4302 | G01609 | 177234009602 |
| SOUTH PASS 062 #C001 | SP062C0101 | G01294 | 177230007901 |
| SOUTH PASS 062 #C004 | SP062C0401 | G01294 | 177232000101 |
| SOUTH PASS 062 #C005 | SP062C0500 | G01294 | 177230008600 |
| SOUTH PASS 062 #C006 | SP062C0601 | G01294 | 177232000301 |
| SOUTH PASS 062 #C007 ST3 | SP062C0703 | G01294 | 177234000803 |
| SOUTH PASS 062 #C009 | SP062C0900 | G01294 | 177232000800 |
| SOUTH PASS 062 #C011 ST1 | SP062C1101 | G01294 | 177232001501 |
| SOUTH PASS 062 #C013B | SP062C13B0 | G01294 | 177232002100 |
| SOUTH PASS 062 #C016 | SP062C1600 | G01294 | 177232003000 |
| SOUTH PASS 062 #C017 | SP062C1702 | G01294 | 177232003102 |
| SOUTH PASS 062 #C018 | SP062C1800 | G01294 | 177232003200 |
| SOUTH PASS 062 #C021 | SP062C2105 | G01294 | 177230008005 |
| SOUTH PASS 062 #D001 | SP062D0100 | G01294 | 177234012300 |
| SOUTH PASS 062 #D002 | SP062D0200 | G01294 | 177234011900 |
| SOUTH PASS 062 #D003 | SP062D0300 | G01294 | 177234012000 |
| SOUTH PASS 062 #D004 | SP062D0401 | G01294 | 177234012901 |
| SOUTH PASS 062 #D005 | SP062D0500 | G01294 | 177234012100 |
| SOUTH PASS 062 #D007 | SP062D0700 | G01294 | 177234012200 |
| SOUTH PASS 062 #D008 | SP062D0800 | G01294 | 177234012500 |
| SOUTH PASS 062 #D009 | SP062D0900 | G01294 | 177234013000 |
| SOUTH PASS 062 #D010 ST1 | SP062D1001 | G01294 | 177234012801 |
| SOUTH PASS 062 #D012 | SP062D1200 | G01294 | 177234013200 |
| SOUTH PASS 062 #D014 | SP062D1400 | G01294 | 177234014100 |
| SOUTH PASS 062 #D019 | SP062D1900 | G01294 | 177234012400 |
| SOUTH PASS 062 #D020 ST1 | SP062D2001 | G01294 | 177234014001 |
| SOUTH PASS 062 #D021 | SP062D2100 | G01294 | 177234013700 |
| SOUTH PASS 062 #D022 | SP062D2201 | G01294 | 177234013801 |
| SOUTH PASS 062 #D023 | SP062D2300 | G01294 | 177234014300 |
| SOUTH PASS 062 #D027 | SP062D2700 | G01294 | 177234014500 |
| SOUTH PASS 062 #D028 | SP062D2800 | G01294 | 177234014601 |
| SOUTH PASS 062 #D029 | SP062D2900 | G01294 | 177234014900 |
| SOUTH PASS 062 #D030 | SP062D3000 | G01294 | 177234014700 |
| SOUTH PASS 062 #D031 | SP062D3100 | G01294 | 177234014800 |
| SOUTH PASS 062 #D032 | SP062D3201 | G01294 | 177234015001 |
| SOUTH PASS 062 #D033 | SP062D3300 | G01294 | 177234016300 |
| SOUTH PASS 062 #D034A | SP062D34A0 | G01294 | 177234016600 |
| SOUTH PASS 062 #D035 | SP062D3500 | G01294 | 177234016900 |
| SOUTH PASS 062 #D036 | SP062D3600 | G01294 | 177234016400 |
| SOUTH PASS 064 #A003A | SP064A0300 | G01901 | 177232001700 |
| SOUTH PASS 064 #A013 ST1 | SP064A1300 | G01901 | 177232004800 |
| SOUTH PASS 064 #B014 ST | SP064B1401 | G01901 | 177254002601 |
| SOUTH PASS 064 #B021 | SP064B2100 | G01901 | 177254003300 |
| SOUTH PASS 064 #B023 | SP064B2300 | G01901 | 177254003600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 064 #B034 | SP064B3400 | G01901 | 177254005100 |
| SOUTH PASS 064 #C001 | SP064C0100 | G01901 | 177254039900 |
| SOUTH PASS 065 #A001 | SP065A0101 | G01610 | 177232001001 |
| SOUTH PASS 065 #A009 | SP065A0900 | G01610 | 177232004400 |
| SOUTH PASS 065 #A012 | SP065A1200 | G01610 | 177232004700 |
| SOUTH PASS 065 #A016A | SP065A1600 | G01610 | 177232005100 |
| SOUTH PASS 065 #A018 | SP065A1800 | G01610 | 177232005600 |
| SOUTH PASS 065 #A024 | SP065A2400 | G01610 | 177232006700 |
| SOUTH PASS 065 #A027 | SP065A2700 | G01610 | 177232007100 |
| SOUTH PASS 065 #A028 | SP065A2800 | G01610 | 177232007200 |
| SOUTH PASS 065 #A029 | SP065A2900 | G01610 | 177232007400 |
| SOUTH PASS 065 #A030 ST | SP065A3001 | G01610 | 177232007501 |
| SOUTH PASS 065 #A034 | SP065A3400 | G01610 | 177232007900 |
| SOUTH PASS 065 #A036 ST | SP065A3602 | G01610 | 177232007802 |
| SOUTH PASS 065 #B011 | SP065B1100 | G01610 | 177254001900 |
| SOUTH PASS 065 #B019 | SP065B1900 | G01610 | 177254003000 |
| SOUTH PASS 065 #B033 ST2 | SP065B3302 | G01610 | 177254005002 |
| SOUTH PASS 065 #C003 | SP065C0300 | G01610 | 177254040900 |
| SOUTH PASS 065 #C010 | SP065C1000 | G01610 | 177254042800 |
| SOUTH PASS 065 #C022 | SP065C2200 | G01610 | 177254045800 |
| SOUTH PASS 065 #C023 | SP065C2300 | G01610 | 177254046700 |
| SOUTH PASS 070 #C001 | SP070C0100 | G01614 | 177234001200 |
| SOUTH PASS 070 #C002 | SP070C0200 | G01614 | 177234001400 |
| SOUTH PASS 070 #C003 | SP070C0300 | G01614 | 177234001500 |
| SOUTH PASS 070 #C004 | SP070C0400 | G01614 | 177234001600 |
| SOUTH PASS 070 #C006 | SP070C0600 | G01614 | 177234001800 |
| SOUTH PASS 070 #C009 | SP070C0900 | G01614 | 177234002000 |
| SOUTH PASS 070 #C010 | SP070C1000 | G01614 | 177234002200 |
| SOUTH PASS 070 #C011 | SP070C1100 | G01614 | 177234002300 |
| SOUTH PASS 070 #C014 | SP070C1400 | G01614 | 177234002500 |
| SOUTH PASS 070 #C015 | SP070C1500 | G01614 | 177234002600 |
| SOUTH PASS 070 #C017 | SP070C1700 | G01614 | 177234002800 |
| SOUTH PASS 070 #C018 | SP070C1800 | G01614 | 177234002900 |
| SOUTH PASS 070 #C019 | SP070C1900 | G01614 | 177234003000 |
| SOUTH PASS 070 #C021 | SP070C2100 | G01614 | 177234003200 |
| SOUTH PASS 070 #C022 | SP070C2200 | G01614 | 177234003300 |
| SOUTH PASS 070 #C024 | SP070C2400 | G01614 | 177234003500 |
| SOUTH PASS 070 #C025 | SP070C2500 | G01614 | 177234003700 |
| SOUTH PASS 070 #C026 | SP070C2600 | G01614 | 177234003800 |
| SOUTH PASS 070 #C028 | SP070C2800 | G01614 | 177234004000 |
| SOUTH PASS 070 #C029 ST2 | SP070C2902 | G01614 | 177234004402 |
| SOUTH PASS 070 #C031 | SP070C3100 | G01614 | 177234004500 |
| SOUTH PASS 070 #C032 | SP070C3200 | G01614 | 177234004600 |
| SOUTH PASS 070 #C034 | SP070C3400 | G01614 | 177234004700 |
| SOUTH PASS 070 #C038 | SP070C3800 | G01614 | 177234005100 |
| SOUTH PASS 070 #C039 ST1 | SP070C3901 | G01614 | 177234004901 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 070 #C041 | SP070C4100 | G01614 | 177234005400 |
| SOUTH PASS 070 #C042 | SP070C4200 | G01614 | 177234005500 |
| SOUTH PASS 070 #C045 | SP070C4500 | G01614 | 177234005700 |
| SOUTH PASS 070 #C046 ST3 | SP070C4603 | G01614 | 177234005003 |
| SOUTH PASS 070 #C047 | SP070C4700 | G01614 | 177234005800 |
| SOUTH PASS 070 #C048 | SP070C4800 | G01614 | 177234005900 |
| SOUTH PASS 070 #D001 | SP070D0100 | G01614 | 177234006000 |
| SOUTH PASS 070 #D002 | SP070D0200 | G01614 | 177234006100 |
| SOUTH PASS 070 #D003 | SP070D0300 | G01614 | 177234006200 |
| SOUTH PASS 070 #D005 | SP070D0500 | G01614 | 177234006400 |
| SOUTH PASS 070 #D006 ST1 | SP070D0600 | G01614 | 177234006501 |
| SOUTH PASS 070 #D007 | SP070D0700 | G01614 | 177234006600 |
| SOUTH PASS 070 #D008 | SP070D0800 | G01614 | 177234006700 |
| SOUTH PASS 070 #D012 | SP070D1200 | G01614 | 177234007100 |
| SOUTH PASS 070 #D013 | SP070D130 | G01614 | 177234007200 |
| SOUTH PASS 070 #D014 | SP070D1400 | G01614 | 177234007300 |
| SOUTH PASS 070 #D015 ST1 | SP070D1501 | G01614 | 177234007401 |
| SOUTH PASS 070 #D016 | SP070D1600 | G01614 | 177234007500 |
| SOUTH PASS 070 #D018 | SP070D1800 | G01614 | 177234007600 |
| SOUTH PASS 070 #D020 | SP070D2000 | G01614 | 177234007800 |
| SOUTH PASS 070 #D021 | SP070D2100 | G01614 | 177234007900 |
| SOUTH PASS 070 #D027 | SP070D2700 | G01614 | 177234008500 |
| SOUTH PASS 070 #D028 | SP070D2800 | G01614 | 177234008600 |
| SOUTH PASS 070 #D030 | SP070D3000 | G01614 | 177234008800 |
| SOUTH PASS 070 #D037 | SP070D3700 | G01614 | 177234009300 |
| SOUTH PASS 070 #D042 ST1 | SP070D4201 | G01614 | 177234009901 |
| SOUTH PASS 070 #D044 ST1 | SP070D4401 | G01614 | 177234016201 |
| SOUTH PASS 087 #006 | SP08700602 | G07799 | 177224023102 |
| SOUTH PASS 087 #D002 ST | SP087D0201 | G07799 | 177224021001 |
| SOUTH PASS 087 #D003 | SP087D0202 | G07799 | 177224021202 |
| SOUTH PASS 087 #D008 | SP087D0800 | G07799 | 177224020803 |
| SOUTH PASS 087 #D009 | SP087D0900 | G07799 | 177224022600 |
| SOUTH PASS 087 #D011 | SP087D1101 | G07799 | 177224022801 |
| SOUTH PASS 087 #D07A | SP087D0700 | G07799 | 177224020900 |
| SOUTH PASS 088 #D005 ST | SP088D0501 | G10894 | 177224021901 |
| SOUTH PASS 088 #D006 | SP088D0601 | G10894 | 177224022201 |
| SOUTH PASS 088 #D010 | SP088D1001 | G10894 | 177224022701 |
| SOUTH PASS 089 #013 | SP08901300 | G01618 | 177224015100 |
| SOUTH PASS 089 #014 | SP08901400 | G01618 | 177224017500 |
| SOUTH PASS 089 #B001A | SP089B01A0 | G01618 | 177224005300 |
| SOUTH PASS 089 #B002A | SP089B02A0 | G01618 | 177224005700 |
| SOUTH PASS 089 #B003 | SP089B0300 | G01618 | 177224006400 |
| SOUTH PASS 089 #B004A | SP089B04A0 | G01618 | 177224006800 |
| SOUTH PASS 089 #B005 | SP089B0500 | G01618 | 177224008400 |
| SOUTH PASS 089 #B006D | SP089B06D0 | G01618 | 177224009500 |
| SOUTH PASS 089 #B007 | SP089B0700 | G01618 | 177224008501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 089 #B008 ST1 | SP089B0801 | G01618 | 177224009901 |
| SOUTH PASS 089 #B009 ST1 | SP089B0901 | G01618 | 177224008601 |
| SOUTH PASS 089 #B010 | SP089B1000 | G01618 | 177224010900 |
| SOUTH PASS 089 #B011 ST | SP089B1101 | G01618 | 177224010403 |
| SOUTH PASS 089 #B012 | SP089B1200 | G01618 | 177224011200 |
| SOUTH PASS 089 #B013 | SP089B1300 | G01618 | 177224011704 |
| SOUTH PASS 089 #B014 | SP089B1400 | G01618 | 177224011601 |
| SOUTH PASS 089 #B015 ST3 | SP089B1503 | G01618 | 177224012703 |
| SOUTH PASS 089 #B016 ST2 | SP089B1602 | G01618 | 177224014702 |
| SOUTH PASS 089 #B017 ST | SP089B1701 | G01618 | 177224015901 |
| SOUTH PASS 089 #B018 ST2 | SP089B1802 | G01618 | 177224017602 |
| SOUTH PASS 089 #B019 ST | SP089B1901 | G01618 | 177224017901 |
| SOUTH PASS 089 #B020 ST3 | SP089B2003 | G01618 | 177224016203 |
| SOUTH PASS 089 #B022 | SP089B2200 | G01618 | 177224017800 |
| SOUTH PELTO 001 #A002 ST1 | PL001A0201 | G04234 | 177134009201 |
| SOUTH PELTO 001 #A004 | PL001A0400 | G04234 | 177134015600 |
| SOUTH PELTO 001 #A005 | PL001A0500 | G04234 | 177134009800 |
| SOUTH PELTO 001 #A006 | PL001A0600 | G04234 | 177134016100 |
| SOUTH PELTO 009 #001 | PL00900100 | G02924 | 177134001300 |
| SOUTH PELTO 009 #002 | PL00900200 | G02924 | 177134002300 |
| SOUTH PELTO 009 #005 | PL00900500 | G02924 | 177134018700 |
| SOUTH PELTO 009 #006 | PL00900600 | G02924 | 177134006100 |
| SOUTH PELTO 009 #007 | PL00900700 | G02924 | 177134007800 |
| SOUTH PELTO 009 #010 | PL00901000 | G02924 | 177134025300 |
| SOUTH PELTO 010 #002 | PL01000200 | G02925 | 177134001000 |
| SOUTH PELTO 010 #003 | PL01000300 | G02925 | 177134001400 |
| SOUTH PELTO 010 #004 | PL01000400 | G02925 | 177134001600 |
| SOUTH PELTO 010 #005 | PL01000500 | G02917 | 177114098000 |
| SOUTH PELTO 010 #006 ST1 | PL01000601 | G02925 | 177134002101 |
| SOUTH PELTO 010 #007 | PL01000700 | G02925 | 177134002200 |
| SOUTH PELTO 010 #009 ST3 | PL01000903 | G02925 | 177134003303 |
| SOUTH PELTO 010 #010 | PL01001000 | G02925 | 177134007200 |
| SOUTH PELTO 010 #011 ST2 | PL01001102 | G02925 | 177134005102 |
| SOUTH PELTO 010 #012 ST5 | PL01001205 | G02925 | 177134006705 |
| SOUTH PELTO 010 #013 ST1 | PL01001301 | G02925 | 177134007402 |
| SOUTH PELTO 010 #014 | PL01001400 | G02925 | 177134009400 |
| SOUTH PELTO 010 #016 ST2 | PL01001602 | G02925 | 177134011802 |
| SOUTH PELTO 010 #017 ST1 | PL01001701 | G02925 | 177134012301 |
| SOUTH PELTO 010 #019 ST1 | PL01001901 | G02925 | 177134010601 |
| SOUTH PELTO 010 #020 | PL01002000 | G02925 | 177134015800 |
| SOUTH PELTO 010 #022 ST1 | PL01002201 | G02925 | 177134018201 |
| SOUTH PELTO 010 #023 ST1 | PL01002301 | G02925 | 177134016601 |
| SOUTH PELTO 010 #026 | PL01002600 | G02925 | 177134018000 |
| SOUTH PELTO 010 #B025 | PL010B2501 | G02925 | 177134018301 |
| SOUTH PELTO 011 #017 | PL01101700 | 00071 | 177134003102 |
| SOUTH PELTO 011 #019 ST1 | PL01101901 | 00071 | 177134004501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PELTO 011 #022 | PL01102200 | 00071 | 177134012000 |
| SOUTH PELTO 011 #025 | PL01102500 | 00071 | 177134018900 |
| SOUTH PELTO 011 #031 | PL01103100 | 00071 | 177134022701 |
| SOUTH PELTO 011 #032 | PL01103200 | 00071 | 177134022600 |
| SOUTH PELTO 011 #F001 | PL011F0100 | 00071 | 177130000300 |
| SOUTH PELTO 011 #F002 | PL011F0200 | 00071 | 177134000500 |
| SOUTH PELTO 011 #F003 ST | PL011F0300 | 00071 | 177134001700 |
| SOUTH PELTO 013 #009 | PL01300900 | G03171 | 177134019701 |
| SOUTH PELTO 025 #005 (ORRI) | PL02500502 | G14535 | 177134024303 |
| SOUTH PELTO 025 #006 (ORRI) | PL02500600 | G14535 | 177134025003 |
| SOUTH PELTO 025 #JA001 | PL025JA01 | G14535 | 177134019800 |
| SOUTH PELTO 025 #JB001 (ORRI) | PL025JB012 | G14535 | 177134020302 |
| SOUTH TIMBALIER 049 #A001 ST2 | ST049A0102 | G24956 | 177154123902 |
| SOUTH TIMBALIER 053 #004 | ST05300401 | G04000 | 177154043101 |
| SOUTH TIMBALIER 053 #006 | ST05300601 | G04000 | 177154083500 |
| SOUTH TIMBALIER 053 #A001 | ST053A0101 | G04000 | 177154034402 |
| SOUTH TIMBALIER 053 #A002 | ST053A0201 | G04000 | 177154037601 |
| SOUTH TIMBALIER 053 #A003 | ST053A0301 | G04000 | 177154038401 |
| SOUTH TIMBALIER 053 #A004 | ST053A0400 | G04000 | 177154038500 |
| SOUTH TIMBALIER 053 #A006 | ST053A0601 | G04000 | 177154039201 |
| SOUTH TIMBALIER 053 #A007 | ST053A0700 | G04000 | 177154040400 |
| SOUTH TIMBALIER 053 #A008 | ST053A0800 | G04000 | 177154040500 |
| SOUTH TIMBALIER 053 #A009 | ST053A0900 | G04000 | 177154041500 |
| SOUTH TIMBALIER 053 #A010 | ST053A1001 | G04000 | 177154043501 |
| SOUTH TIMBALIER 053 #A011 | ST053A1100 | G04000 | 177154042400 |
| SOUTH TIMBALIER 053 #A012 | ST053A1201 | G04000 | 177154042301 |
| SOUTH TIMBALIER 053 #A013 | ST053A1300 | G04000 | 177154044000 |
| SOUTH TIMBALIER 053 #A014 | ST053A1400 | G04000 | 177154042900 |
| SOUTH TIMBALIER 053 #A015 | ST053A1501 | G04000 | 177154076901 |
| SOUTH TIMBALIER 053 #A016 | ST053A1601 | G04000 | 177154043601 |
| SOUTH TIMBALIER 053 #A017 | ST053A1701 | G04000 | 177154061101 |
| SOUTH TIMBALIER 053 #A018 | ST053A1801 | G04000 | 177154061201 |
| SOUTH TIMBALIER 053 #A019 | ST053A1900 | G04000 | 177154077200 |
| SOUTH TIMBALIER 053 #A020 | ST053A2001 | G04000 | 177154077101 |
| SOUTH TIMBALIER 053 #A021 | ST053A2100 | G04000 | 177154111000 |
| SOUTH TIMBALIER 053 #C001 | ST053C0100 | G04000 | 177154067200 |
| SOUTH TIMBALIER 053 #C002 | ST053C0200 | G04000 | 177154107300 |
| SOUTH TIMBALIER 053 #I001 | ST053I0100 | G04000 | 177154031200 |
| SOUTH TIMBALIER 067 #006 | ST06700602 | 00020 | 177154078404 |
| SOUTH TIMBALIER 148 #A001 | ST148A0100 | G01960 | 177154009400 |
| SOUTH TIMBALIER 148 #A002 | ST148A0200 | G01960 | 177154013200 |
| SOUTH TIMBALIER 148 #A003 | ST148A0300 | G01960 | 177154015800 |
| SOUTH TIMBALIER 148 #A004 | ST148A04 | G01960 | 177154039700 |
| SOUTH TIMBALIER 148 #A005 | ST148A05 | G01960 | 177154041100 |
| SOUTH TIMBALIER 148 #A006 | ST148A0600 | G01960 | 177154074603 |
| SOUTH TIMBALIER 148 #A007 | ST148A0700 | G01960 | 1771540890 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH TIMBALIER 148 #A008 | ST148A0801 | G01960 | 177154090501 |
| SOUTH TIMBALIER 148 #A009 | ST148A0903 | G01960 | 177154095103 |
| SOUTH TIMBALIER 205 #B001 ST1 | ST205B0101 | G05612 | 177154059001 |
| SOUTH TIMBALIER 205 #B002A ST1 | ST205B02A1 | G05612 | 177154062901 |
| SOUTH TIMBALIER 205 #B004 ST1 | ST205B0401 | G05612 | 177154081601 |
| SOUTH TIMBALIER 205 #B005A | ST205B05A0 | G05612 | 177154103300 |
| SOUTH TIMBALIER 205 #G001 ST1 | ST205G0101 | G05612 | 177154106701 |
| SOUTH TIMBALIER 205 #G003 ST1 | ST205G0301 | G05612 | 177154115301 |
| SOUTH TIMBALIER 206 #A001 ST1 | ST206A0101 | G05613 | 177154057801 |
| SOUTH TIMBALIER 206 #A002 ST1 | ST206A0201 | G05613 | 177154060101 |
| SOUTH TIMBALIER 206 #A003 | ST206A0300 | G05613 | 177154061000 |
| SOUTH TIMBALIER 206 #A004A | ST206A04A0 | G05613 | 177154074300 |
| SOUTH TIMBALIER 206 #A006 | ST206A0600 | G05613 | 177154075100 |
| SOUTH TIMBALIER 206 #A007 | ST206A0700 | G05613 | 177154075200 |
| SOUTH TIMBALIER 206 #A008 | ST206A0800 | G05613 | 177154075300 |
| SOUTH TIMBALIER 206 #A009 | ST206A0900 | G05613 | 177154075400 |
| SOUTH TIMBALIER 206 #A010ST2BP | ST206A1002 | G05613 | 177154075702 |
| SOUTH TIMBALIER 206 #B003 ST1 | ST206B0301 | G05613 | 177154074001 |
| SOUTH TIMBALIER 206 #B006 | ST206B0600 | G05613 | 177154103000 |
| SOUTH TIMBALIER 276 #A010 ST1 | ST276A1001 | G07780 | 177164013301 |
| SOUTH TIMBALIER 276 #A019 | ST276A1900 | G07780 | 177164014500 |
| SOUTH TIMBALIER 276 #A029 | ST276A2900 | G07780 | 177164022300 |
| SOUTH TIMBALIER 290 #A025 | - | G16454 | 608104014901 |
| SOUTH TIMBALIER 291 #A023 | ST291A2300 | G16455 | 608104014700 |
| SOUTH TIMBALIER 295 #A001 | ST295A0102 | G05646 | 177164010302 |
| SOUTH TIMBALIER 295 #A002 | ST295A0200 | G05646 | 177164005500 |
| SOUTH TIMBALIER 295 #A003 | ST295A0300 | G05646 | 177164010400 |
| SOUTH TIMBALIER 295 #A004 | ST295A0400 | G05646 | 177164011300 |
| SOUTH TIMBALIER 295 #A005 | ST295A0500 | G05646 | 177164011600 |
| SOUTH TIMBALIER 295 #A006 | ST295A0600 | G05646 | 177164011800 |
| SOUTH TIMBALIER 295 #A007 | ST295A0700 | G05646 | 177164012000 |
| SOUTH TIMBALIER 295 #A008 | ST295A0800 | G05646 | 177164012200 |
| SOUTH TIMBALIER 295 #A009 | ST295A0900 | G05646 | 177164012300 |
| SOUTH TIMBALIER 295 #A011 | ST295A1100 | G05646 | 177164012700 |
| SOUTH TIMBALIER 295 #A012 | ST295A1200 | G05646 | 177164012400 |
| SOUTH TIMBALIER 295 #A013 ST1 | ST295A1301 | G05646 | 177164012901 |
| SOUTH TIMBALIER 295 #A014 | ST295A1400 | G05646 | 177164013400 |
| SOUTH TIMBALIER 295 #A015 | ST295A1500 | G05646 | 177164013700 |
| SOUTH TIMBALIER 295 #A016 ST1 | ST295A1601 | G05646 | 177164013901 |
| SOUTH TIMBALIER 295 #A017 | ST295A1700 | G05646 | 177164014000 |
| SOUTH TIMBALIER 295 #A018 | ST295A1800 | G05646 | 177164014400 |
| SOUTH TIMBALIER 295 #A020 | ST295A2000 | G05646 | 177164014600 |
| SOUTH TIMBALIER 295 #A021 ST2 | ST295A2102 | G05646 | 177164014902 |
| SOUTH TIMBALIER 295 #A022 ST3 | ST295A2203 | G05646 | 177164017703 |
| SOUTH TIMBALIER 295 #A023 | ST295A2300 | G05646 | 177164018000 |
| SOUTH TIMBALIER 295 #A024 | ST295A2400 | G05646 | 177164018300 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH TIMBALIER 295 #A025D | ST295A25D0 | G05646 | 177164018100 |
| SOUTH TIMBALIER 295 #A026 | ST295A2600 | G05646 | 177164018400 |
| SOUTH TIMBALIER 295 #A027 | ST295A2700 | G05646 | 177164018500 |
| SOUTH TIMBALIER 295 #A030 | ST295A3000 | G05646 | 177164022600 |
| SOUTH TIMBALIER 295 #A031 | ST295A3100 | G05646 | 177164026100 |
| SOUTH TIMBALIER 295 #A032 | ST295A3200 | G05646 | 177164027800 |
| SOUTH TIMBALIER 295 #B001 | ST295B0100 | G05646 | 177164028900 |
| SOUTH TIMBALIER 295 #B002 ST1 | ST295B0201 | G05646 | 177164029301 |
| SOUTH TIMBALIER 295 #B003 | ST295B0302 | G05646 | 177164029202 |
| SOUTH TIMBALIER 295 #B004 ST1 | ST295B0401 | G05646 | 177164029101 |
| SOUTH TIMBALIER 295 #B005 | ST295B0500 | G05646 | 177164030000 |
| SOUTH TIMBALIER 295 #B006 ST3 | ST295B0603 | G05646 | 177164030403 |
| SOUTH TIMBALIER 296 #001 | ST29600100 | G12981 | 177164020900 |
| SOUTH TIMBALIER 296 #A028 | ST296A2800 | G12981 | 177164021700 |
| SOUTH TIMBALIER 311 # A 1 | ST311A01 | G31418 | 177164035500 |
| SOUTH TIMBALIER 311 # A-4 | ST311A04 | G31418 | 177164036400 |
| SOUTH TIMBALIER 316 #A001 | ST316A0100 | G22762 | 177164028600 |
| SOUTH TIMBALIER 316 #A002 | ST316A0200 | G22762 | 177164028800 |
| SOUTH TIMBALIER 316 #A006 | ST316A0602 | G22762 | 177164035302 |
| SOUTH TIMBALIER 320 #A002 | ST320A02 | G24990 | 177164036200 |
| SOUTH TIMBALIER 320 #A003 | ST320A03 | G24990 | 177164036300 |
| SOUTH TIMBALIER 320 #A005 ST | ST320A05 | G24990 | 608104010401 |
| tEAST CAMERON 278 #C010 | EC278C1001 | G00974 | 177044110001 |
| VERMILION 261 #A001 | VR261A0100 | G03328 | 177064029000 |
| VERMILION 261 #A002 | VR261A0200 | G03328 | 177064033000 |
| VERMILION 261 #A004 | VR261A0402 | G03328 | 177064032902 |
| VERMILION 261 #A005 | VR261A0500 | G03328 | 177064034600 |
| VERMILION 261 #A007 | VR261A0700 | G03328 | 177064035400 |
| VERMILION 261 #A008 | VR261A0800 | G03328 | 177064084900 |
| VERMILION 262 #A006 | VR262A06 | G34257 | 177064035201 |
| VERMILION 265 #A001 ST | VR265A0101 | G01955 | 177064003101 |
| VERMILION 265 #A002 ST1 | VR265A0201 | G01955 | 177064004701 |
| VERMILION 265 #A003 ST1 | VR265A0301 | G01955 | 177064003201 |
| VERMILION 265 #A006 | VR265A0600 | G01955 | 177064005300 |
| VERMILION 265 #A007 ST1 | VR265A0701 | G01955 | 177064005501 |
| VERMILION 265 #A010 | VR265A1000 | G01955 | 177064006200 |
| VERMILION 265 #A014ST1 | VR265A1401 | G01955 | 177064029101 |
| VERMILION 265 #A016ST1 | VR265A1601 | G01955 | 177064029301 |
| VERMILION 265 #A017ST1 | VR265A1701 | G01955 | 177064033201 |
| VERMILION 265 #A021 | VR265A2100 | G01955 | 177064057100 |
| VERMILION 265 #A025 | VR265A2500 | G01955 | 177064057400 |
| VERMILION 265 #A027ST1 | VR265A2701 | G01955 | 177064058101 |
| VERMILION 271 #I003 | VR271I0300 | G04800 | 177064098100 |
| VERMILION 326 #A001 | VR326A0100 | G21096 | 177064085000 |
| VERMILION 369 #A014 | VR369A1400 | G02274 | 177064073400 |
| VERMILION 369 #D001 | VR369D01 | G02274 | 177064087000 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VERMILION 380 #009 | VR38000900 | G02580 | 177064080100 |
| VERMILION 380 #A001 ST1 | VR380A0101 | G02580 | 177064044301 |
| VERMILION 380 #A003 ST1 | VR380A0301 | G02580 | 177064044901 |
| VERMILION 380 #A005 | VR380A0500 | G02580 | 177064046300 |
| VERMILION 380 #A006 ST2 | VR380A0602 | G02580 | 177064046402 |
| VERMILION 380 #A008 ST1 | VR380A0801 | G02580 | 177064046901 |
| VERMILION 380 #A010 | VR380A1000 | G02580 | 177064047600 |
| VERMILION 380 #A011 | VR380A1100 | G02580 | 177064048000 |
| VERMILION 380 #A012 | VR380A1200 | G02580 | 177064048700 |
| VERMILION 380 #A015 ST4 | VR380A1504 | G02580 | 177064049004 |
| VERMILION 380 #A016 ST2 | VR380A1602 | G02580 | 177064044702 |
| VERMILION 380 #A020 ST1 | VR380A2001 | G02580 | 177064095601 |
| VERMILION 381 #A017 | VR381A1700 | G16314 | 177064085500 |
| VERMILION 381 #A018 ST2 | VR381A1802 | G16314 | 177064085702 |
| VERMILION 381 #A021 ST1 | VR381A2101 | G16314 | 177064095801 |
| VIOSCA KNOLL 693 #001 | VK69300100 | G07898 | 608164015700 |
| VIOSCA KNOLL 693 #002 | VK69300200 | G07898 | 608164016000 |
| VIOSCA KNOLL 694 #001 | VK69400100 | G13055 | 608164016600 |
| VIOSCA KNOLL 694 #002 | VK69400200 | G13055 | 608164016700 |
| VIOSCA KNOLL 694 #003 ST1 | VK69400301 | G13055 | 608164036701 |
| VIOSCA KNOLL 694 #004 | VK69400400 | G13055 | 608164030900 |
| VIOSCA KNOLL 694 #A009 | VK694A0900 | G13055 | 177244073300 |
| VIOSCA KNOLL 824 #004 | VK82400402 | G15436 | 608164032902 |
| WEST CAMERON 033 #001 | WC03300100 | G15050 | 177004105100 |
| WEST CAMERON 033 #001 SL16473 | SL16473010 | 16473 | 177002024400 |
| WEST CAMERON 033 #002 SL16473 | SL16473020 | 16473 | 177002024500 |
| WEST CAMERON 033 #N001 (EC2) | WC033N0100 | G15050 | 177004124000 |
| WEST CAMERON 033 #N002 (EC2) | WC033N0200 | G15050 | 177004124600 |
| WEST CAMERON 033 #N003 (EC2) | WC033N0300 | G15050 | 177004125400 |
| WEST CAMERON 033 #N004 (EC2) | WC033N0400 | G15050 | 177004125500 |
| WEST CAMERON 033 #O001 | WC033O0100 | G15050 | 177004126500 |
| WEST CAMERON 033 #O002 | WC033O0200 | G15050 | 177004126600 |
| WEST CAMERON 033 #O003 | WC033O0300 | G15050 | 177004126800 |
| WEST CAMERON 033 #O004 | WC033O0400 | G15050 | 177004126900 |
| WEST CAMERON 035 #A014 | WC035A1400 | G02819 | 177004017000 |
| WEST CAMERON 035 #B005 | WC035B0500 | G02819 | 177004018600 |
| WEST CAMERON 035 #B013 | WC035B1300 | G02819 | 177004024300 |
| WEST CAMERON 035 #C003 | WC035C0300 | G02819 | 177004037600 |
| WEST CAMERON 035 #C004 | WC035C0401 | G02819 | 177004038701 |
| WEST CAMERON 035 #D005 | WC035D0500 | G01860 | 177004039101 |
| WEST CAMERON 065 #008 | WC06500801 | G02825 | 177004103701 |
| WEST CAMERON 065 #009 | WC06500900 | G02825 | 177004105500 |
| WEST CAMERON 065 #B018 | WC065B1800 | G02825 | 177004098900 |
| WEST CAMERON 065 #B019 | WC065B1901 | G02825 | 177004099501 |
| WEST CAMERON 065 #B020 ST2 | WC065B2001 | G02825 | 177004099701 |
| WEST CAMERON 065 #E007 | WC065E0700 | G02825 | 177004129600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 065 #JA001 | WC065JA100 | G02825 | 177004023300 |
| WEST CAMERON 065 #JA002 | WC065JA200 | G02825 | 177004024600 |
| WEST CAMERON 065 #JA003 | WC065JA300 | G02825 | 177004040400 |
| WEST CAMERON 065 #JA004 | WC065JA400 | G02825 | 177004041500 |
| WEST CAMERON 065 #JA005 | WC065JA500 | G02825 | 177004075400 |
| WEST CAMERON 066 #A001 | WC066A0100 | G01860 | 177004011300 |
| WEST CAMERON 066 #A002 | WC066A0200 | G01860 | 177004011800 |
| WEST CAMERON 066 #A003 | WC066A0300 | G01860 | 177004012400 |
| WEST CAMERON 066 #A004 | WC066A0400 | G01860 | 177004012600 |
| WEST CAMERON 066 #A005 | WC066A0500 | G01860 | 177004012800 |
| WEST CAMERON 066 #A006 | WC066A0600 | G01860 | 177004013200 |
| WEST CAMERON 066 #A007 (WC35) | WC035A0700 | G01860 | 177004013500 |
| WEST CAMERON 066 #A008 | WC066A0800 | G01860 | 177004014100 |
| WEST CAMERON 066 #A009 | WC066A0900 | G01860 | 177004014500 |
| WEST CAMERON 066 #A010 | WC066A1000 | G01860 | 177004014700 |
| WEST CAMERON 066 #A011 | WC066A1100 | G01860 | 177004014900 |
| WEST CAMERON 066 #A012 (WC35) | WC035A1200 | G01860 | 177004015700 |
| WEST CAMERON 066 #A015 | WC066A1500 | G01860 | 177004096100 |
| WEST CAMERON 066 #A016 | WC066A1601 | G01860 | 177004096601 |
| WEST CAMERON 066 #A017 | WC066A1700 | G02826 | 177004100600 |
| WEST CAMERON 066 #B002 | WC066B0200 | G02826 | 177004017600 |
| WEST CAMERON 066 #B003 | WC066B0300 | G02826 | 177004017800 |
| WEST CAMERON 066 #B004 | WC066B0400 | G02826 | 177004018300 |
| WEST CAMERON 066 #B006 | WC066B0600 | G02826 | 177004019100 |
| WEST CAMERON 066 #B007 | WC066B0700 | G02826 | 177004019600 |
| WEST CAMERON 066 #B008D | WC066B08D0 | G02826 | 177004020400 |
| WEST CAMERON 066 #B009 | WC066B0900 | G02826 | 177004020801 |
| WEST CAMERON 066 #B010 | WC066B1000 | G02826 | 177004021400 |
| WEST CAMERON 066 #B012 | WC066B1200 | G02826 | 177004023000 |
| WEST CAMERON 066 #B014 | WC066B1401 | G02826 | 177004022001 |
| WEST CAMERON 066 #B015 | WC066B1500 | G02826 | 177004087600 |
| WEST CAMERON 066 #B016 | WC066B1601 | G02826 | 177004097101 |
| WEST CAMERON 066 #B017 | WC066B1700 | G02826 | 177004098700 |
| WEST CAMERON 066 #C001 | WC066C0102 | G01860 | 177004010502 |
| WEST CAMERON 066 #C002 ST3 | WC066C0203 | G01860 | 177004036603 |
| WEST CAMERON 066 #C005 ST2 | WC066C0502 | G01860 | 177004098302 |
| WEST CAMERON 066 #D007 | WC066D0702 | G01860 | 177004042902 |
| WEST CAMERON 066 #E001 | WC066E0100 | G02826 | 177004034700 |
| WEST CAMERON 066 #E002 | WC066E0200 | G02826 | 177004043400 |
| WEST CAMERON 066 #E003 | WC066E0300 | G02826 | 177004047900 |
| WEST CAMERON 066 #E004 | WC066E0400 | G02826 | 177004051500 |
| WEST CAMERON 066 #E006 | WC066E0600 | G02826 | 177004097600 |
| WEST CAMERON 071 #018 | WC07101800 | 00244 | 177004029400 |
| WEST CAMERON 071 #023 | WC07102300 | 00244 | 177004040500 |
| WEST CAMERON 071 #026 | WC07102600 | 00244 | 177004067600 |
| WEST CAMERON 071 #027 | WC07102700 | 00244 | 177004069700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 071 #028 | WC07102800 | 00244 | 177004071000 |
| WEST CAMERON 071 #031 | WC07103100 | 00244 | 177004118900 |
| WEST CAMERON 071 #D001 | WC071D0100 | 00244 | 177002000100 |
| WEST CAMERON 071 #D003 | WC071D0300 | 00244 | 177002004800 |
| WEST CAMERON 071 #D005 | WC071D0501 | 00244 | 177002004101 |
| WEST CAMERON 071 #D006 | WC071D0600 | 00244 | 177002006900 |
| WEST CAMERON 071 #D009 | WC071D0900 | 00244 | 177002008000 |
| WEST CAMERON 071 #F001 | WC071F0100 | 00244 | 177004102400 |
| WEST CAMERON 071 #F002 | WC071F0200 | 00244 | 177004102600 |
| WEST CAMERON 072 #001 | WC07200100 | G23735 | 177004114900 |
| WEST CAMERON 072 #002 | WC07200200 | G23735 | 177004119400 |
| WEST CAMERON 072 #003 | WC07200301 | G23735 | 177004125001 |
| WEST CAMERON 102 #002 | WC10200200 | 00247 | 177002009300 |
| WEST CAMERON 102 #005 | WC10200500 | 00247 | 177004006800 |
| WEST CAMERON 102 #007 | WC10200700 | 00247 | 177004008600 |
| WEST CAMERON 102 #008 | WC10200800 | 00247 | 177004009400 |
| WEST CAMERON 102 #022 | WC10202200 | 00247 | 177004064300 |
| WEST CAMERON 102 #024 | WC10202400 | 00247 | 177004062500 |
| WEST CAMERON 102 #H001 | WC102H0100 | 00247 | 177004103400 |
| WEST CAMERON 102 #H002 | WC102H0202 | 00247 | 177004104402 |
| WEST CAMERON 110 #006 | WC11000600 | 00081 | 177002002700 |
| WEST CAMERON 110 #007 | WC11000700 | 00081 | 177002003000 |
| WEST CAMERON 110 #010 ST1 | WC11001001 | 00081 | 177004025001 |
| WEST CAMERON 110 #011 | WC11001100 | 00081 | 177004083400 |
| WEST CAMERON 110 #012 ST2 | WC11001202 | 00081 | 177004086302 |
| WEST CAMERON 110 #014 ST2 | WC11001402 | 00081 | 177004090002 |
| WEST CAMERON 110 #015 ST1 | WC11001501 | 00081 | 177004106501 |
| WEST CAMERON 110 #018 ST2 | WC11001802 | 00081 | 177004127002 |
| WEST CAMERON 110 #019 ST1 | WC11001901 | 00081 | 177004127801 |
| WEST CAMERON 110 #05A | WC1105AD64 | 00081 | 177002002200 |
| WEST CAMERON 110 #A001 | WC110A0100 | 00081 | 177000013100 |
| WEST CAMERON 110 #A002C | WC110A02C0 | 00081 | 177000013200 |
| WEST CAMERON 110 #A003 | WC110A0300 | 00081 | 177000013300 |
| WEST CAMERON 110 #A004 | WC110A0400 | 00081 | 177000013400 |
| WEST CAMERON 110 #A005 | WC110A0500 | 00081 | 177000038900 |
| WEST CAMERON 110 #A006 | WC110A0600 | 00081 | 177002004000 |
| WEST CAMERON 110 #C001 | WC110C0100 | 00081 | 177004112500 |
| WEST CAMERON 110 #F001 | WC110F0100 | 00081 | 177004107300 |
| WEST CAMERON 110 #F002 | WC110F0200 | 00081 | 177004119300 |
| WEST CAMERON 290 #002 | WC29002 | G04818 | 177014018400 |
| WEST CAMERON 290 #A001 | WC290A0100 | G04818 | 177014020700 |
| WEST CAMERON 290 #A002 | WC290A0200 | G04818 | 177014024200 |
| WEST CAMERON 290 #A003 | WC290A0300 | G04818 | 177014029100 |
| WEST CAMERON 295 #A001 | WC295A0101 | G24730 | 177014037501 |
| WEST CAMERON 295 #A002 | WC295A0201 | G24730 | 177014039001 |
| WEST CAMERON 67 #D1 | WC067D0100 | G03256 | 177004031600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 67 #D10 | - | G03256 | 177004098501 |
| WEST CAMERON 67 #D6 | - | G03256 | 177004040700 |
| WEST CAMERON 67 #D9 | WC067D0900 | G03256 | 177004078600 |
| WEST DELTA 053 #001 | WD05300100 | 17935 | 170752037400 |
| WEST DELTA 068 #U001 | WD068U0100 | 00180 | 177190136200 |
| WEST DELTA 068 #U004 | WD068U0400 | 00180 | 177192007000 |
| WEST DELTA 068 #U005 ST2 | WD068U0502 | 00180 | 177192007502 |
| WEST DELTA 068 #U006 | WD068U0600 | 00180 | 177192008600 |
| WEST DELTA 068 #U009 | WD068U0900 | 00180 | 177192011401 |
| WEST DELTA 068 #U011 | WD068U11 | 00180 | 177192013603 |
| WEST DELTA 068 #U013 ST2 | WD068U1302 | 00180 | 177194065102 |
| WEST DELTA 068 #U014 | WD068U1400 | 00180 | 177194065300 |
| WEST DELTA 069 #D007 ST2 | WD069D0702 | 00181 | 177190063802 |
| WEST DELTA 070 #D001D | WD070D0100 | 00182 | 177190063300 |
| WEST DELTA 070 #D005 | WD070D0500 | 00182 | 177190063600 |
| WEST DELTA 070 #D008 | WD070D0800 | 00182 | 177190063900 |
| WEST DELTA 070 #D009 | WD070D0900 | 00182 | 177190064000 |
| WEST DELTA 070 #D010 | WD070D1000 | 00182 | 177190066700 |
| WEST DELTA 070 #D011 | WD070D1100 | 00182 | 177194036800 |
| WEST DELTA 070 #D012 | WD070D1200 | 00182 | 177194037200 |
| WEST DELTA 070 #D013 | WD070D1300 | 00182 | 177194057000 |
| WEST DELTA 070 #D014 | WD070D1400 | 00182 | 177194057200 |
| WEST DELTA 070 #E001 ST1 | WD070E0101 | 00182 | 177190108201 |
| WEST DELTA 070 #E002 | WD070E0200 | 00182 | 177190067800 |
| WEST DELTA 070 #E003 | WD070E0300 | 00182 | 177190066500 |
| WEST DELTA 070 #FF001 | WD070FF100 | 00182 | 177194084200 |
| WEST DELTA 070 #FF002 | WD070FF200 | 00182 | 177194084300 |
| WEST DELTA 070 #FF003 | WD070FF300 | 00182 | 177194084400 |
| WEST DELTA 070 #I003 ST1 | WD070I0301 | 00182 | 177190091301 |
| WEST DELTA 070 #I004 | WD070I0400 | 00182 | 177190091500 |
| WEST DELTA 070 #I005 ST1 | WD070I0501 | 00182 | 177190095001 |
| WEST DELTA 070 #I006 ST | WD070I0601 | 00182 | 177190095101 |
| WEST DELTA 070 #I008 ST1 | WD070I0801 | 00182 | 177190102101 |
| WEST DELTA 070 #I010 ST1 | WD070I1001 | 00182 | 177190105701 |
| WEST DELTA 070 #I012 STBP2 | WD070I1202 | 00182 | 177194010702 |
| WEST DELTA 070 #I013 | WD070I1300 | 00182 | 177194038400 |
| WEST DELTA 070 #I014 | WD070I1400 | 00182 | 177194061100 |
| WEST DELTA 070 #I015 | WD070I1500 | 00182 | 177194061300 |
| WEST DELTA 070 #I016 ST | WD070I1601 | 00182 | 177194064201 |
| WEST DELTA 070 #I017 | WD070I1700 | 00182 | 177194064600 |
| WEST DELTA 070 #L003 | WD070L0300 | 00182 | 177190113800 |
| WEST DELTA 070 #L004 | WD070L0400 | 00182 | 177190115100 |
| WEST DELTA 070 #L005 | WD070L0500 | 00182 | 177190115500 |
| WEST DELTA 070 #L006 | WD070L0600 | 00182 | 177190115000 |
| WEST DELTA 070 #L010 | WD070L1000 | 00182 | 177190119500 |
| WEST DELTA 070 #L011 | WD070L1100 | 00182 | 177190121400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 071 #E006 | WD071E0600 | 00838 | 177190073200 |
| WEST DELTA 071 #E007 ST1 | WD071E0701 | 00838 | 177190095601 |
| WEST DELTA 071 #E009 ST1 | WD071E0901 | 00838 | 177190091701 |
| WEST DELTA 071 #E010 | WD071E1000 | 00838 | 177190095700 |
| WEST DELTA 071 #O001 ST2 | WD071O0102 | 00838 | 177190118502 |
| WEST DELTA 071 #O003 | WD071O0300 | 00838 | 177190121500 |
| WEST DELTA 071 #O004 ST1 | WD071O0401 | 00838 | 177190124301 |
| WEST DELTA 071 #O005 | WD071O0501 | 00838 | 177190125001 |
| WEST DELTA 071 #O006 | WD071O0601 | 00838 | 177190127101 |
| WEST DELTA 071 #O007 | WD071O0702 | 00838 | 177190129602 |
| WEST DELTA 071 #O009 | WD071O0900 | 00838 | 177190133600 |
| WEST DELTA 071 #O010 | WD071O1000 | 00838 | 177194002500 |
| WEST DELTA 071 #O013 | WD071O1303 | 00838 | 177192001102 |
| WEST DELTA 075 #A004B | WD075A04B0 | G01085 | 177190074300 |
| WEST DELTA 075 #A010D | WD075A10D0 | G01085 | 177190082700 |
| WEST DELTA 075 #A015 | WD075A1500 | G01085 | 177194030300 |
| WEST DELTA 075 #B002 | WD075B0201 | G01085 | 177190131301 |
| WEST DELTA 075 #B009 | WD075B0900 | G01085 | 177190136800 |
| WEST DELTA 075 #B017 ST | WD075B1701 | G01085 | 177194019501 |
| WEST DELTA 075 #B024 | WD075B2400 | G01085 | 177194045700 |
| WEST DELTA 075 #B026 ST | WD075B2601 | G01085 | 177194046601 |
| WEST DELTA 075 #F002 ST2 | WD075F0200 | G01085 | 177194042800 |
| WEST DELTA 075 #G002 | WD075G0200 | G01085 | 177194056600 |
| WEST DELTA 090 #A001 | WD090A0100 | G01089 | 177190061600 |
| WEST DELTA 090 #A005 | WD090A0500 | G01089 | 177190128700 |
| WEST DELTA 090 #A009D | WD090A09D0 | G01089 | 177190077300 |
| WEST DELTA 090 #B004 ST1 | WD090B0401 | G01089 | 177190132101 |
| WEST DELTA 090 #B011 ST | WD090B1101 | G01089 | 177192000801 |
| WEST DELTA 090 #B018 | WD090B1800 | G01089 | 177194040400 |
| WEST DELTA 090 #B020 | WD090B2001 | G01089 | 177190135901 |
| WEST DELTA 090 #B021 | WD090B2100 | G01089 | 177194041500 |
| WEST DELTA 090 #B027 | WD090B2700 | G01089 | 177194046700 |
| WEST DELTA 090 #F004 | WD090F0400 | G01089 | 177194057700 |
| WEST DELTA 090 #F005 ST2 | WD090F0502 | G01089 | 177194057902 |
| WEST DELTA 090 #F006 | WD090F0600 | G01089 | 177194058601 |
| WEST DELTA 094 #V001 | WD094V0100 | 00839 | 177192005700 |
| WEST DELTA 094 #V002 | WD094V0200 | 00839 | 177192011600 |
| WEST DELTA 094 #V003 | WD094V0300 | 00839 | 177192014900 |
| WEST DELTA 094 #V004 | WD094V0400 | 00839 | 177192015500 |
| WEST DELTA 094 #V014 | WD094V1400 | 00839 | 177194039000 |
| WEST DELTA 094 #V015 | WD094V1500 | 00839 | 177194064000 |
| WEST DELTA 094 #V016 | WD094V1602 | 00839 | 177194063902 |
| WEST DELTA 095 #S005 ST1BP1 | WD095S0502 | G01497 | 177190126202 |
| WEST DELTA 095 #S006 | WD095S0600 | G01497 | 177190135400 |
| WEST DELTA 095 #S008 | WD095S0800 | G01497 | 177190127700 |
| WEST DELTA 095 #S010 ST1 | WD095S1001 | G01497 | 177192000101 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 095 #S012 ST | WD095S1201 | G01497 | 177192002301 |
| WEST DELTA 095 #X001 ST | WD095X0101 | G01497 | 177194002901 |
| WEST DELTA 095 #X003 | WD095X0300 | G01497 | 177194003200 |
| WEST DELTA 095 #X007 ST1 | WD095X0701 | G01497 | 177194003701 |
| WEST DELTA 095 #X010 ST2 | WD095X1001 | G01497 | 177194055301 |
| WEST DELTA 095 #X011 | WD095X1100 | G01497 | 177194055700 |
| WEST DELTA 095 #X012D | WD095X12D0 | G01497 | 177194055900 |
| WEST DELTA 096 #S002 ST1BP1 | WD096S0202 | G01498 | 177190123402 |
| WEST DELTA 096 #S007 ST1 | WD096S0701 | G01498 | 177190132901 |
| WEST DELTA 096 #X004 ST1 | WD096X0401 | G01498 | 177194003301 |
| WEST DELTA 096 #X006 ST2 | WD096X0602 | G01498 | 177194003502 |
| WEST DELTA 096 #X009 | WD096X0900 | G01498 | 177194004000 |
| WEST DELTA 103 #F001 ST1 | WD103F0101 | G12360 | 177194054801 |
| WEST DELTA 103 #F002 | WD103F0200 | G12360 | 177194055100 |
| WEST DELTA 103 #F003 | WD103F0300 | G12360 | 177194058200 |
| WEST DELTA 103 #F007 | WD103F0700 | 00840 | 177194083800 |
| WEST DELTA 104 #D005 | WD104D0500 | 00841 | 177190116200 |
| WEST DELTA 104 #D009 | WD104D0900 | 00841 | 177190118400 |
| WEST DELTA 104 #D010 ST | WD104D1001 | 00841 | 177190119801 |
| WEST DELTA 104 #D011 | WD104D1100 | 00841 | 177190119900 |
| WEST DELTA 104 #D012 | WD104D1200 | 00841 | 177190120500 |
| WEST DELTA 104 #D013 | WD104D1300 | 00841 | 177194068900 |
| WEST DELTA 104 #D014 | WD104D1400 | 00841 | 177194083900 |
| WEST DELTA 104 #E004 | WD104E0401 | 00841 | 177194040901 |
| WEST DELTA 104 #E009 | WD104E0901 | 00841 | 177194041601 |
| WEST DELTA 104 #E010 | WD104E1002 | 00841 | 177194040702 |
| WEST DELTA 104 #E015 | WD104E1504 | 00841 | 177194042504 |
| WEST DELTA 104 #E020 | WD104E2001 | 00841 | 177194064901 |
| WEST DELTA 105 #D003 | WD105D0300 | 00842 | 177190114300 |
| WEST DELTA 105 #E001 ST3 | WD105E0103 | 00842 | 177194039803 |
| WEST DELTA 105 #E002 ST1 | WD105E0201 | 00842 | 177194039901 |
| WEST DELTA 105 #E003 | WD105E0301 | 00842 | 177194040001 |
| WEST DELTA 105 #E005A | WD105E05A0 | 00842 | 177194040500 |
| WEST DELTA 105 #E006 | WD105E0600 | 00842 | 177194041000 |
| WEST DELTA 105 #E007 | WD105E0700 | 00842 | 177194040600 |
| WEST DELTA 105 #E008 ST1 | WD105E0801 | 00842 | 177194041101 |
| WEST DELTA 105 #E011 | WD105E1101 | 00842 | 177194041401 |
| WEST DELTA 105 #E012 | WD105E1200 | 00842 | 177194041800 |
| WEST DELTA 105 #E013 ST1 | WD105E1301 | 00842 | 177194042001 |
| WEST DELTA 105 #E014 | WD105E1400 | 00842 | 177194043200 |

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| BRAZOS 491 P/F-4 | BA4914CAS | G06069 | BA491 | 100.0% |
| BRAZOS 491 P/F-5 | BA4915CAS | G06069 | BA491 | 100.0% |
| BRAZOS 491 P/F-A | BA491AWP | G06069 | BA491 | 100.0% |
| BRAZOS A-105 P/F-A | BAA105PFA | G01757 | BAA105 | 12.5% |
| BRAZOS A-105 P/F-B | BAA105PFB | G01757 | BAA105 | 12.5% |
| BRAZOS A-133 P/F-A | BAA133APLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-B | BAA133BPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-C-AUX | BAA133CAUX | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-D | BAA133DPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-E | BAA133EPLT | G02665 | BAA133 | 25.0% |
| CHANDELEUR 043 P/F-A | CA43APLT | G32268 | CA043 | 50.00% |
| EAST CAMERON 002 P/F-1 SL16475 | SL164751PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-1 SL18121 | SL181211PT | 18121 | EC002 | 50.0000% |
| EAST CAMERON 002 P/F-1/1D16473 | SL164731PT | 16473 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-2 SL16475 | SL164752PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-2/2D16473 | SL164732PT | 16473 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-3/3D16475 | SL164753PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-4/4D16475 | SL164754PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-5 SL16475 | SL164755PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-B (SL) | EC2BSL | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-C SL16475 | EC2CPLT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 014 P/F-12 | EC1412CAS | G01440 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-13 | EC1413CAS | G01440 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-B | EC014PFB | G13572 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-CF | EC14CFPLT | G01440 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-CF-2 | EC14CF2PLT | G01440 | EC014 | 100.0000% |
| EAST CAMERON 265 P/F-D | EC265DPLT | G00972 | EC265 | 50.0000% |
| EAST CAMERON 278 P/F-B | EC278BPLT | G00974 | EC278 | 50.0000% |
| EAST CAMERON 278 P/F-C | EC278CPLT | G00974 | EC278 | 50.0000% |
| EAST CAMERON 338 P/F-A | EC338PFA | G02063 | EC338 | 15.6694% |
| EUGENE IS 053 P/F-10 | EI5310CAS | 00479 | EI053 | 100.0000% |
| EUGENE IS 053 P/F-12 | EI5312CAS | 00479 | EI053 | 100.0000% |
| EUGENE IS 053 P/F-8 | EI538CAS | 00479 | EI053 | 66.6667% |
| EUGENE IS 053 P/F-9 | EI539PLT | 00479 | EI053 | 66.6667% |
| EUGENE IS 053 P/F-B | EI53BPLT | 00479 | EI053 | 66.6667% |
| EUGENE IS 053 P/F-C | EI53CPLT | 00479 | EI053 | 83.3334% |
| EUGENE IS 053 P/F-D | EI53DCAS | 00479 | EI053 | 100.0000% |
| EUGENE IS 053 P/F-G | EI53GCAS | 00479 | EI053 | 66.6667% |
| EUGENE IS 089 P/F-23 | EI089PF23 | 00044 | EI089 | 75.0000% |
| EUGENE IS 119 P/F-13 | EI11913CAS | 00050 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-30 | EI11930WP | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-33 | EI11933CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-33-AUX | EI11933AUX | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-34 | EI11934CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-35 | EI11935CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-37 | EI11937CAS | 00049 | EI119 | 50.0000% |
| EUGENE IS 119 P/F-37 H | EI11937HCA | 00049 | EI119 | 50.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EUGENE IS 119 P/F-F | EI119FPLT | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-I | EI119IPLT | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-I-8 | EI119I8CAS | 00050 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-K | EI119KPLT | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-M-4 | EI119M4WP | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-M-7 | EI119M7CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 120 P/F-11 | EI12011CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-12 | EI12012CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-14 | EI12014CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-15 | EI12015CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-17 | EI12017CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-19 | EI12019CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-20 | EI12020CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-9 | EI1209CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-CF-QTRS | EI120CFQTR | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-CMP1 | EI120CMP1 | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-CMP2 | EI120CMP2 | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-FIRE STA | EI120FIRE | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-PROD | EI120PRD | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-SC | EI120SCPLT | 00050 | EI120 | 100.0000% |
| EUGENE IS 125 P/F-2 | EI1252CAS | 00051 | EI125 | 100.0000% |
| EUGENE IS 125 P/F-A | EI125APLT | 00051 | EI125 | 100.0000% |
| EUGENE IS 125 P/F-R | EI125RPLT | 00051 | EI125 | 100.0000% |
| EUGENE IS 126 P/F-12 | EI12612CAS | 00052 | EI126 | 100.0000% |
| EUGENE IS 126 P/F-31 | EI12631CAS | 00052 | EI126 | 100.0000% |
| EUGENE IS 136 P/F-1 | EI1361CAS | G03152 | EI136 | 100.0000% |
| EUGENE IS 136 P/F-JA | EI136JAPLT | G03152 | EI136 | 100.0000% |
| EUGENE IS 158 P/F-14 | EI15814CAS | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-B | EI158BPLT | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-C | EI158CPLT | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-C-QRT | EI158CQTR | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-JB | EI158JBPLT | G01220 | EI158 | 100.0000% |
| EUGENE IS 173 P/F-G | EI173GPLT | G13622 | EI173 | 100.0000% |
| EUGENE IS 175 P/F-C-PROD | EI175CPRD | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-D | EI175DPLT | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-F | EI175FPLT | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-H | EI175HCAS | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-I | EI175ICAS | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-J | EI175JPLT | 438 | EI175 | 75.0000% |
| EUGENE IS 187 P/F-2 | EI187PF2 | G10736 | EI187 | 100.0000% |
| EUGENE IS 187 P/F-JC | EI187JCPLT | G10736 | EI187 | 100.0000% |
| EUGENE IS 187 P/F-JD | EI187JDPLT | G10736 | EI187 | 100.0000% |
| EUGENE IS 188 P/F-A | EI188APLT | 00443 | EI188 | 100.0000% |
| EUGENE IS 188 P/F-JE | EI188JEPLT | G10736 | EI188 | 100.0000% |
| EUGENE IS 188 P/F-P-VALVE | EI188PVALV | 00443 | EI188 | 100.0000% |
| EUGENE IS 189 P/F-B | EI189BPLT | 423 | EI189 | 100.0000% |
| EUGENE IS 189 P/F-JG | EI189JGPLT | 423 | EI189 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EUGENE IS 212 P/F-A | EI212APLT | G05503 | EI212 | 66.6667% |
| EUGENE IS 224 P/F-A | EI224APLT | G05504 | EI224 | 100.0000% |
| EUGENE IS 224 P/F-C | EI224CPLT | G05504 | EI224 | 100.0000% |
| EUGENE IS 296 P/F-B | EI296PFB | G01687M | EI 296 | 85.5270% |
| EUGENE IS 307 P/F-A | EI307PFA | G02110 | EI307 | 0.0000% |
| EUGENE IS 307 P/F-B | EI307PFB | G02110 | EI307 | 0.0000% |
| EUGENE IS 312 P/F-D | EI312PFD | G22679 | EI312 | 0.0000% |
| EUGENE IS 315 P/F-A | EI315APLT | G24912 | EI315 | 75.2917% |
| EUGENE IS 315 P/F-C | EI315PFC | G24912 | EI315 | 25.0000% |
| EUGENE IS 316 P/F-A | EI316APLT | G05040 | EI316 | 100.0000% |
| EUGENE IS 330 P/F A C S | EI330ACSPF | G02115 | EI330 | 27.0000% |
| EUGENE IS 330 P/F-B | EI330BPLT | G02115 | EI330 | 65.0249% |
| EUGENE IS 330 P/F-D | EI330DPLT | G02115 | EI330 | 70.0249% |
| EUGENE IS 333 P/F-B | EI333BPLT | G02317 | EI333 | 100.0000% |
| EUGENE IS 334 P/F-D | EI334DPLT | G15263 | EI334 | 100.0000% |
| EUGENE IS 337 P/F-A | EI337APLT | G03332 | EI337 | 100.0000% |
| EUGENE IS 342 P/F-C | EI342CPLT | G02319 | EI342 | 67.4286% |
| EUGENE IS 346 P/F-A | EI346APLT | G14482 | EI346 | 100.0000% |
| EUGENE IS 353 P/F-D | EI353PFD | G02324 | EI353 | 3.7850% |
| EUGENE IS 354 P/F-D | EI354DPLT | G10752 | EI354 | 100.0000% |
| EUGENE IS 360 P/F-C | EI360PFC | G02324 | EI360 | 3.2730% |
| EUGENE IS 360 P/F-E | EI360PFE | G02324 | EI360 | 4.3730% |
| EUGENE IS 361 P/F-A | EI361PFA | G02324 | EI361 | 6.7568% |
| EWING BANK 826 P/F-A | EW826APLT | G05800 | EW826 | 100.0000% |
| GALVESTON 210 P/F-1 | GA2101CAS | G25524 | GA210 | 66.6700% |
| GALVESTON 210 P/F-2 | GA2102CAS | G25524 | GA210 | 66.6700% |
| GALVESTON 210 P/F-B | GA210BPLT | G25524 | GA210 | 66.6700% |
| GRAND ISLE 039 P/F-Q | GI39QPLT | 00127 | GI039 | 75.0000% |
| GRAND ISLE 040 P/F-G | GI40GPLT | 00128 | GI040 | 75.0000% |
| GRAND ISLE 040 P/F-M | GI40MPLT | 00128 | GI040 | 75.0000% |
| GRAND ISLE 041 P/F-B | GI41BPLT | 00129 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-D | GI041PFD | 00129 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-E | GI41EPLT | 00130 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-H | GI41HPLT | 00130 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-I | GI41ICAS | 00132 | GI041 | 75.0000% |
| GRAND ISLE 042 P/F-C | GI42CPLT | 00131 | GI042 | 75.0000% |
| GRAND ISLE 042 P/F-F | GI42FPLT | 00131 | GI042 | 75.0000% |
| GRAND ISLE 043 P/F-AC-CMP | GI043PFAC | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AP-QRT | GI43APPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AQ-QRT | GI43AQPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AR-RSR | GI43ARPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AS-SEP | GI43ASPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 047 P/F-A | GI47APLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-AP | GI47APPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-AQ-QTRS | GI47AQPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-AX (BRACE) | GI47AXPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-L | GI47LPLT | 00133 | GI047 | 75.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| GRAND ISLE 047 P/F-O | GI47OPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 048 P/F-E | GI48EPLT | 00134 | GI048 | 75.0000% |
| GRAND ISLE 048 P/F-J | GI48JPLT | 00134 | GI048 | 75.0000% |
| GRAND ISLE 048 P/F-P | GI48PPLT | 00134 | GI048 | 75.0000% |
| GRAND ISLE 054 P/F-A | GI54APLT | G27173 | GI054 | 50.0000% |
| GRAND ISLE 076 P/F-A | GI076PFA | G02161 | GI076 | 95.8333% |
| GRAND ISLE 116 P/F-A | GI116APLT | G13944 | GI116 | 50.0000% |
| HIGH ISLAND 110 P/F-A | HI110PFA | G02353 | HI110 | 20.0000% |
| HIGH ISLAND 110 P/F-B | HI110PFB | G02353 | HI110 | 20.0000% |
| HIGH ISLAND 120 P/F-A-PROCESS | HI120APROC | G01848 | HI120 | 34.33% |
| HIGH ISLAND 129 P/F-1 | HI1291CAS | G01848 | HI129 | 0.0000% |
| HIGH ISLAND 129 P/F-16 | HI12916CAS | G01848 | HI129 | 0.0000% |
| HIGH ISLAND 129 P/F-17 | HI12917CAS | G01848 | HI129 | 90.0000% |
| HIGH ISLAND 129 P/F-18 | HI129PF18 | G01848 | HI129 | 27.0000% |
| HIGH ISLAND 129 P/F-5/6 | HI1295PLT | G01848 | HI129 | 90.0000% |
| HIGH ISLAND 129 P/F-CPF | HI129CPF | G01848 | HI129 | 0.0000% |
| HIGH ISLAND 179 P/F-A | HI179APLT | G03236 | HI179 | 69.0750% |
| HIGH ISLAND 206 P/F-B | HI206BPLT | G20660 | HI206 | 100.0000% |
| HIGH ISLAND A-341 P/F-B | HIA341BPLT | G25605 | HIA341 | 60.0000% |
| HIGH ISLAND A-376 P/F-A | HIA376APLT | G02754 | HIA376 | 48.8298% |
| HIGH ISLAND A-376 P/F-B | HIA376BPLT | G02754 | HIA376 | 48.8298% |
| HIGH ISLAND A-376 P/F-C | HIA376CPLT | G02754 | HIA376 | 48.8298% |
| HIGH ISLAND A-382 P/F-F | HIA382FPLT | G02757 | HIA382 | 72.4106% |
| HIGH ISLAND A-474 P/F-A | HIA474PFA | G02366 | HIA474 | 10.0000% |
| HIGH ISLAND A-489 P/F-B | HIA489PFB | G02372 | HIA489 | 8.5000% |
| HIGH ISLAND A-545 P/F-JA | HIA545JAPT | G17199 | HIA545 | 60.0000% |
| HIGH ISLAND A-573 P/F-A | HIA573APLT | G02393 | HIA573 | 72.4102% |
| HIGH ISLAND A-573 P/F-B | HIA573BPLT | G02393 | HIA573 | 72.4102% |
| HIGH ISLAND A-582 P/F-C | HIA582PFC | G02719 | HIA582 | 18.0975% |
| HIGH ISLAND A-582 P/F-D | HIA582PFD | G02719 | HIA582 | 36.5786% |
| HIGH ISLAND A-595 P/F-CF | HIA595CFPT | G02721 | HIA595 | 72.4102% |
| HIGH ISLAND A-595 P/F-D | HIA595DPLT | G02721 | HIA595 | 72.4102% |
| HIGH ISLAND A-596 P/F-E | HIA596EPLT | G02722 | HIA596 | 72.4102% |
| MAIN PASS 077 P/F-A | MP077PFA | G04481 | MP077 | 26.1683% |
| MAIN PASS 140 P/F-A | MP140APLT | G02193 | MP140 | 65.0000% |
| MAIN PASS 140 P/F-B | MP140BPLT | G02193 | MP140 | 65.0000% |
| MAIN PASS 153 P/F-B | MP153BPLT | G01967 | MP153 | 50.0000% |
| MAIN PASS 153 P/F-C | MP153CPLT | G01967 | MP153 | 50.0000% |
| MAIN PASS 259 P/F-A | MP259APLT | G07827 | MP259 | 56.9016% |
| MAIN PASS 275 P/F-A | MP275APLT | G15395 | MP275 | 100.0000% |
| MAIN PASS 289 P/F-B | MP289BPLT | G01666 | MP289 | 100.0000% |
| MAIN PASS 289 P/F-C | MP289CPLT | G01666 | MP289 | 100.0000% |
| MAIN PASS 296 P/F-B | MP296BPLT | G01673 | MP296 | 55.0343% |
| MAIN PASS 296 P/F-C | MP296CPLT | G01673 | MP296 | 50.4846% |
| MAIN PASS 301 P/F-A | MP301PFA | G04486 | MP301 | 22.7793% |
| MAIN PASS 301 P/F-B | MP301PFB | G04486 | MP301 | 22.7793% |
| MAIN PASS 308 P/F-A | MP308APLT | G32265 | MP308 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| MAIN PASS 310 P/F-A | MP310APLT | G04126 | MP310 | 100.0000% |
| MAIN PASS 310 P/F-JA | MP310JAPT | G04126 | MP310 | 100.0000% |
| MAIN PASS 311 P/F-A | MP311APLT | G02213 | MP311 | 50.0000% |
| MAIN PASS 311 P/F-B | MP311BPLT | G02213 | MP311 | 50.0000% |
| MATAGORDA IS 622 P/F-C | MI622CPLT | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-C-COMPRES | MI622CCMP | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-C-PRD | MI622CPRD | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-C-QRT | MI622CQTR | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-D | MI622DPLT | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 623 P/F-B-DRIL | MI623BPLT | G03088 | MI623 | 81.0000% |
| MATAGORDA IS 623 P/F-B-PRD | MI623BPRD | G03088 | MI623 | 81.0000% |
| MATAGORDA IS 623 P/F-H | MI623HPLT | G03088 | MI623 | 100.0000% |
| MATAGORDA IS 635 P/F-F | MI635FPLT | G06043 | MI635 | 81.0000% |
| MATAGORDA IS 635 P/F-G | MI635GPLT | G05000 | MI635 | 81.0000% |
| MISSISSIPPI CANYON 311 P/F-A | MC311APLT | G02968 | MC311 | 100.0000% |
| MOBILE 821 P/F-A-QRT | MO821AQTR | G05058 | MO821 | 100.0000% |
| MOBILE 826 P/F-D | MO826DPLT | G26176 | MO826 | 75.0000% |
| NORTH PADRE IS 969 P/F-JA | PN969PFJA | G05953 | PN969 | 1.2500% |
| NORTH PADRE IS 975 P/F-A | PN975PFA | G05953 | PN969 | 1.2500% |
| SHIP SHOAL 030 #011 CAS P/F | SS030PF11 | 00333 | SS030 | 28.9474% |
| SHIP SHOAL 030 #013 CAS P/F | SS030PF13 | 00333 | SS030 | 28.9474% |
| SHIP SHOAL 030 P/F-14 | SS030PF14 | 00333 | SS030 | 28.9474% |
| SHIP SHOAL 031 P/F-10 | SS031PF10 | 00334 | SS031 | 28.9474% |
| SHIP SHOAL 031 P/F-A | SS031PFA | 00333 | SS031 | 28.9474% |
| SHIP SHOAL 032 P/F-18 | SS032PF18 | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 032 P/F-20 | SS032PF20 | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 032 P/F-24 | SS032PF24 | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 032 P/F-E-1 | SS032PFE | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 033 #005 CAS P/F | SS033PF05 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 033 P/F-C-1 | SS033PFC1 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 033 P/F-C-2 | SS033PFC2 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 033 P/F-C-3(PROD) | SS033PFC3 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 068 P/F-05 | SS685CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-10 | SS6810CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-2 | SS682CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-4 | SS684CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-9 | SS689CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-F | SS68FPLT | G02925 | SS068 | 100.0000% |
| SHIP SHOAL 091 P/F-A | SS91APLT | G02919 | SS091 | 100.0000% |
| SHIP SHOAL 091 P/F-B | SS91BPLT | G02919 | SS091 | 100.0000% |
| SHIP SHOAL 105 P/F-A | SS105APLT | G09614 | SS105 | 100.0000% |
| SHIP SHOAL 105 P/F-B | SS105BPLT | G09614 | SS105 | 100.0000% |
| SHIP SHOAL 126 P/F-B | SS126BPLT | G12940 | SS126 | 100.0000% |
| SHIP SHOAL 129 P/F-A | SS129APLT | G12941 | SS129 | 100.0000% |
| SHIP SHOAL 129 P/F-A-AUX | SS129AAUX | G12941 | SS129 | 100.0000% |
| SHIP SHOAL 129 P/F-B | SS129BPLT | G12941 | SS129 | 100.0000% |
| SHIP SHOAL 129 P/F-L | SS129LCAS | G12941 | SS129 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SHIP SHOAL 144 PF 1 | - | G30275 | SS 144 | 15.5400% |
| SHIP SHOAL 169 P/F-BB | SS169PFBB | 00820 | SS169 | 66.6667% |
| SHIP SHOAL 169 P/F-C | SS169PFC | 00820 | SS169 | 66.6667% |
| SHIP SHOAL 169 P/F-G | SS169PFG | 00820 | SS169 | 66.6667% |
| SHIP SHOAL 176 P/F-1 | SS1761PLT | G33646 | SS176 | 57.1429% |
| SHIP SHOAL 178 P/F-A | SS178APLT | G05551 | SS178 | 100.0000% |
| SHIP SHOAL 182 P/F-A | SS182APLT | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 182 P/F-A-AUX | SS182AAUX | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 182 P/F-B | SS182BPLT | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 182 P/F-C | SS182CPLT | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 99.0000% |
| SHIP SHOAL 189 P/F-C | SS189PFC | G04232 | SS189 | 24.7396% |
| SHIP SHOAL 190 P/F-B | SS190BPLT | G10775 | SS190 | 100.0000% |
| SHIP SHOAL 193 P/F-A | SS193APLT | G13917 | SS193 | 100.0000% |
| SHIP SHOAL 193 P/F-A-PROD | SS193APRD | G13917 | SS193 | 100.0000% |
| SHIP SHOAL 193 P/F-M | SS193MPLT | G13917 | SS193 | 100.0000% |
| SHIP SHOAL 194 P/F-A | SS194APLT | G15288 | SS194 | 100.0000% |
| SHIP SHOAL 198 P/F-G | SS198PFG | 00593 | SS198 | 50.0000% |
| SHIP SHOAL 198 P/F-G-QTRS | SS198PFGQR | 00593 | SS198 | 50.0000% |
| SHIP SHOAL 198 P/F-K | SS198PFK | 00593 | SS198 | 50.0000% |
| SHIP SHOAL 204 P/F-A | SS204APLT | G01520 | SS204 | 55.2000% |
| SHIP SHOAL 204 P/F-A-GEN | SS204AGEN | G01520 | SS204 | 55.2000% |
| SHIP SHOAL 204 P/F-A-PROD | SS204APRD | G01520 | SS204 | 55.2000% |
| SHIP SHOAL 206 P/F-E | SS206EPLT | G01522 | SS206 | 60.0000% |
| SHIP SHOAL 207 P/F-A-CMP | SS207ACOMP | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-A-DRILL | SS207ADRL | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-A-MANTIS | SS207PFAMA | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-A-PROD | SS207APRD | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-D | SS207DPLT | G01523 | SS207 | 52.8000% |
| SHIP SHOAL 207 P/F-DWPF | SS207PFDWP | G01523 | SS207 | 0.0000% |
| SHIP SHOAL 216 P/F-C | SS216CPLT | G01524 | SS216 | 70.0000% |
| SHIP SHOAL 259 P/F-JA | SS259JAPLT | G05044 | SS259 | 93.7130% |
| SHIP SHOAL 274 P/F-A | SS274APLT | G01039 | SS274 | 100.0000% |
| SHIP SHOAL 274 P/F-C | SS274CPLT | G01039 | SS274 | 100.0000% |
| SHIP SHOAL 291 P/F-A | SS291PFA | G02923 | SS291 | 0.0000% |
| SHIP SHOAL 354 P/F-A | SS354APLT | G15312 | SS354 | 100.0000% |
| SOUTH MARSH IS 010 P/F-4 | SM010PF4 | G01181 | SM010 | 100.0000% |
| SOUTH MARSH IS 010 P/F-A | SM10APLT | G01181 | SM010 | 100.0000% |
| SOUTH MARSH IS 011 P/F-34 | SM011PF34 | G01182 | SM011 | 100.0000% |
| SOUTH MARSH IS 011 P/F-58 | SM011PF58 | G01182 | SM011 | 100.0000% |
| SOUTH MARSH IS 018 P/F-A | SM018PFA | G08680 | SM018 | 100.0000% |
| SOUTH MARSH IS 048 P/F-E | SM048PFE | 786 | SM048 | 100.0000% |
| SOUTH MARSH IS 066 P/F-C | SM66CPLT | G01198 | SM058 | 50.0000% |
| SOUTH MARSH IS 066 P/F-D | SM66DPLT | G01198 | SM066 | 50.0000% |
| SOUTH MARSH IS 076 P/F-F | SM76FPLT | G01208 | SM076 | 100.0000% |
| SOUTH MARSH IS 093 P/F-A | SM093PFA | G21618 | SM093 | 12.5000% |
| SOUTH MARSH IS 105 P/F-A | SM105APLT | G17938 | SM105 | 100.0000% |

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SOUTH MARSH IS 106 P/F-A-NORTH | SM106ANPLT | G03776 | SM106 | 100.0000% |
| SOUTH MARSH IS 106 P/F-JUNCTIO | SM106JCT | G02279 | SM106 | 100.0000% |
| SOUTH MARSH IS 128 P/F-A | SM128APLT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 128 P/F-B | SM128BPLT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 128 P/F-C | SM128CPLT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 128 P/F-SA-2 | SM128SADPT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 132 P/F-B | SM132BPLT | G02282 | SM132 | 50.0000% |
| SOUTH MARSH IS 137 P/F-A | SM137APLT | G02589 | SM137 | 50.0000% |
| SOUTH MARSH IS 149 P/F-C | SM149CPLT | G02592 | SM149 | 50.0000% |
| SOUTH MARSH IS 149 P/F-D | SM149DPLT | G02592 | SM149 | 100.0000% |
| SOUTH MARSH IS 239 156 CAIS | SM239PF156 | 00310 | SM240 | 16.0000% |
| SOUTH MARSH IS 239 191 CAIS | SM239PF191 | 00310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 1 CAIS | SM240PF1 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 153 CAIS | SM240PF153 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 192 CAIS | SM240PF192 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 196 CAIS | SM240PF196 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 2 CAIS | SM240PF2 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 E DOLPHIN | SM240PF0E | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 P/F-E-PRD | SM240PFE | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 241 CAS 149 P/F | SM241PF149 | 310 | SM241 | 16.0000% |
| SOUTH MARSH IS 241 CAS 200 P/F | SM241PF200 | 00310 | SM241 | 16.0000% |
| SOUTH MARSH IS 241 CAS 302 P/F | SM241PF302 | 00310 | SM241 | 16.0000% |
| SOUTH MARSH IS 268 P/F-A-DRL | SM268APLT | G02310 | SM268 | 69.4185% |
| SOUTH MARSH IS 268 P/F-A-PRD | SM268APRD | G02310 | SM268 | 69.4185% |
| SOUTH MARSH IS 268 P/F-D | SM268DPLT | G02310 | SM268 | 69.4185% |
| SOUTH MARSH IS 269 P/F-B | SM269BPLT | G02311 | SM269 | 72.8000% |
| SOUTH MARSH IS 269 P/F-F | SM269FCAS | G02311 | SM269 | 87.7000% |
| SOUTH MARSH IS 280 P/F-G | SM280GPLT | G14456 | SM280 | 50.0000% |
| SOUTH MARSH IS 280 P/F-H | SM280HPLT | G14456 | SM280 | 50.0000% |
| SOUTH MARSH IS 280 P/F-I | SM280IPLT | G02600 | SM280 | 58.4000% |
| SOUTH MARSH IS 281 P/F-C | SM281PFC | G02600 | SM281 | 68.1000% |
| SOUTH MARSH IS 281 P/F-E | SM281EPLT | G02600 | SM281 | 68.1000% |
| SOUTH PASS 062 P/F-A | SP62APLT | G01294 | SP062 | 100.0000% |
| SOUTH PASS 062 P/F-B | SP62BPLT | G01294 | SP062 | 100.0000% |
| SOUTH PASS 062 P/F-C | SP062PFC | G01294 | SP062 | 100.0000% |
| SOUTH PASS 062 P/F-D | SP062PFD | G01294 | SP062 | 100.0000% |
| SOUTH PASS 065 P/F-A | SP65APLT | G01610 | SP065 | 50.0000% |
| SOUTH PASS 070 P/F-C | SP070PFC | G01614 | SP070 | 100.0000% |
| SOUTH PASS 070 P/F-D | SP070PFD | G01614 | SP070 | 100.0000% |
| SOUTH PASS 075 P/F-A | SP75APLT | G05051 | SP075 | 100.0000% |
| SOUTH PASS 087 P/F-D | SP87DPLT | G07799 | SP087 | 86.1125% |
| SOUTH PASS 089 P/F-B | SP89BPLT | G01618 | SP089 | 50.0000% |
| SOUTH PELTO 001 P/F-A | PL001PFA | G04234 | PL001 | 100.0000% |
| SOUTH PELTO 009 P/F-10 | PL009PF10 | G02924 | PL009 | 50.0000% |
| SOUTH PELTO 009 P/F-5 | PL009PF05 | G02924 | PL009 | 100.0000% |
| SOUTH PELTO 009 P/F-6 | PL009PF06 | G02924 | PL009 | 100.0000% |
| SOUTH PELTO 009 P/F-7 | PL009PF07 | G02924 | PL009 | 100.0000% |

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SOUTH PELTO 010 #2 (2924)CAIS | PL0102CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-10 | PL1010CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-10-8 | PL10108CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-11 | PL1011CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-12 | PL1012WP | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-14 | PL1014CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-16 | PL1016CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-17 | PL1017CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-19 | PL1019CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-20 | PL1020CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-22 | PL1022CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-23 | PL1023CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-26 | PL1026CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-2A | PL102ACAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-3A | PL103ACAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-4 | PL104WP | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-7 | PL107CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-9-1-A | PL1091ACAS | G02925 | PL010 | 50.0000% |
| SOUTH PELTO 010 P/F-A | PL10APLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-B | PL10BPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-B25 | PL10B25CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-B-AUX | PL10BAUXPT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-C | PL10CPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-D | PL10DPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-E | PL10EPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-LQ | PL10LQPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 011 P/F-17 | PL1117CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-19 | PL1119CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-22 | PL1122CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-25 | PL1125CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-F | PL11FPLT | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-F-3 | PL11F3CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-G | PL11GCAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 025 JA PF | PL025PFJA | G14535 | PL025 | 100.0000% |
| SOUTH PELTO 025 JB PF | PL025PFJB | G14535 | PL025 | 100.0000% |
| SOUTH TIMBALIER 049 P/F-A | ST49APLT | G24956 | ST049 | 100.0000% |
| SOUTH TIMBALIER 053 P/F-4 | ST053PF4 | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-6 | ST053PF6 | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-A | ST053PFA | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-A-AUX | ST053PFAAX | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-C (5) | ST053PFC5 | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-I | ST053PFI | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 068 P/F-1 | ST681CAS | 00020 | ST068 | 79.6666% |
| SOUTH TIMBALIER 148 P/F-A | ST148PFA | G01960 | ST148 | 15.5500% |
| SOUTH TIMBALIER 161 P/F-C | ST161PFC | G01248 | ST161 | 100.0000% |
| SOUTH TIMBALIER 203 P/F-B | ST203PFB | G01269 | ST203 | 40.0000% |
| SOUTH TIMBALIER 205 P/F-B | ST205BPLT | G05612 | ST205 | 50.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SOUTH TIMBALIER 205 P/F-G | ST205GPLT | G05612 | ST205 | 100.0000% |
| SOUTH TIMBALIER 206 P/F-A | ST206APLT | G05612 | ST206 | 50.0000% |
| SOUTH TIMBALIER 291 P/F-A | ST291APLT | G16455 | ST291 | 35.0000% |
| SOUTH TIMBALIER 295 P/F-A | ST295APLT | G05646 | ST295 | 92.9167% |
| SOUTH TIMBALIER 295 P/F-B | ST295BPLT | G05646 | ST295 | 92.9167% |
| SOUTH TIMBALIER 311 P/F-A | ST311APLT | G31418 | ST311 | 22.5000% |
| SOUTH TIMBALIER 316 P/F-A | ST316PFA | G22762 | ST316 | 20.0000% |
| VERMILION 261 P/F-A | VR261APLT | G03328 | VR261 | 75.0000% |
| VERMILION 261 P/F-A-AUX | VR261AAUX | G03328 | VR261 | 75.0000% |
| VERMILION 265 P/F-A-DRL | VR265ADRL | G01955 | VR265 | 100.0000% |
| VERMILION 265 P/F-A-PRD | VR265APRD | G01955 | VR265 | 100.0000% |
| VERMILION 326 P/F-A | VR326APLT | G21096 | VR326 | 70.3148% |
| VERMILION 369 P/F-A | VR369PFA | G02274 | VR369 | 10.9700% |
| VERMILION 369 P/F-D | VR369PFD | G02274 | VR369 | 23.1707% |
| VERMILION 380 P/F-A | VR380APLT | G02580 | VR380 | 100.0000% |
| VERMILION 408 P/F-A | VR408PF | G15212 | VR408 | 50.0000% |
| VIOSCA KNOLL 203 P/F-A | VK203PFA | G07890 | VK203 | 33.3333% |
| VIOSCA KNOLL 203 P/F-B | VK203PFB | G07890 | VK203 | 33.3333% |
| VIOSCA KNOLL 204 P/F-3 | VK204PF3 | G04921 | VK204 | 33.3333% |
| VIOSCA KNOLL 204 P/F-C | VK204PFC | G04921 | VK204 | 33.3333% |
| VIOSCA KNOLL 780 P/F-A | VK780APLT | G15436 | VK780 | 100.0000% |
| WEST CAMERON 033 P/F-1 | WC033PF1 | G15050 | WC033 | 100.0000% |
| WEST CAMERON 033 P/F-N | WC033PFN | G15050 | WC033 | 100.0000% |
| WEST CAMERON 033 P/F-O | WC033PFO | G15050 | WC033 | 100.0000% |
| WEST CAMERON 065 P/F-8 | WC065CAIS8 | G02825 | WC065 | 100.0000% |
| WEST CAMERON 065 P/F-9 | WC065CAIS9 | G02825 | WC065 | 100.0000% |
| WEST CAMERON 065 P/F-JA | WC65JAPLT | G02825 | WC065 | 100.0000% |
| WEST CAMERON 065 P/F-JA-AUX | WC65JAAUX | G02825 | WC065 | 100.0000% |
| WEST CAMERON 066 P/F-A | WC66APLT | G01860 | WC066 | 91.0585% |
| WEST CAMERON 066 P/F-B | WC066PFB | G02826 | WC066 | 82.9104% |
| WEST CAMERON 066 P/F-C | WC066PFC | G01860 | WC066 | 75.0000% |
| WEST CAMERON 066 P/F-E | WC066PFE | G02826 | WC066 | 75.0000% |
| WEST CAMERON 066 P/F-F(FMR31) | WC066PFF31 | 00244 | WC066 | 100.0000% |
| WEST CAMERON 071 P/F-28 | WC071PF28 | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-D | WC071PFD | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-D-AUX | WC071PFDAX | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-F (FMR18) | WC71FPLT | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-QTR | WC71QTR | 00244 | WC071 | 100.0000% |
| WEST CAMERON 072 P/F-1 | WC072PF1 | G23735 | WC072 | 25.0000% |
| WEST CAMERON 072 P/F-2 | WC072PF2 | G23735 | WC072 | 25.0000% |
| WEST CAMERON 072 P/F-3 | WC072PF3 | G23735 | WC072 | 25.0000% |
| WEST CAMERON 102 P/F-2 | WC102PF2 | 00247 | WC102 | 100.0000% |
| WEST CAMERON 102 P/F-G | WC102GPLT | 00247 | WC102 | 100.0000% |
| WEST CAMERON 102 P/F-G-AUX | WC102GAUX | 00247 | WC102 | 100.0000% |
| WEST CAMERON 102 P/F-H | WC102HPLT | 00247 | WC102 | 100.0000% |
| WEST CAMERON 110 P/F-10 | WC11010CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-11 | WC11011CAS | 00081 | WC110 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| WEST CAMERON 110 P/F-12 | WC11012CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-15 | WC11015CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-18 | WC11018CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-19 | WC11019CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-A | WC110APLT | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-A-AUX1 | WC110AAUX1 | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-E | WC110EPLT | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-H | WC110HPLT | 00081 | WC110 | 100.0000% |
| WEST CAMERON 111 P/F-C | WC111CCAS | 00081 | WC111 | 100.0000% |
| WEST CAMERON 111 P/F-F | WC111FCAS | 00081 | WC111 | 100.0000% |
| WEST CAMERON 144 P/F-B | WC144BPLT | G01953 | WC144 | 100.0000% |
| WEST CAMERON 225 P/F-C | WC225PFC | G00900 | WC225 | 26.6675% |
| WEST CAMERON 289 P/F-A-PROCESS | WC289APROC | G04818 | WC289 | 100.0000% |
| WEST CAMERON 290 P/F-A | WC290PFA | G04818 | WC290 | 10.3759% |
| WEST CAMERON 295 P/F-A | WC295ACAS | G24730 | WC295 | 20.60% |
| WEST DELTA 068 P/F-U | WD68UPLT | 00180 | WD068 | 75.0000% |
| WEST DELTA 070 P/F-D | WD070PFD | 00182 | WD070 | 75.0000% |
| WEST DELTA 070 P/F-FF | WD070PFFF | 00182 | WD070 | 75.0000% |
| WEST DELTA 070 P/F-I | WD070PFI | 00182 | WD070 | 75.0000% |
| WEST DELTA 070 P/F-L | WD070PFL | 00182 | WD070 | 75.0000% |
| WEST DELTA 071 P/F-E | WD71EPLT | 00838 | WD071 | 75.0000% |
| WEST DELTA 071 P/F-O | WD071OPLT | 00838 | WD071 | 75.0000% |
| WEST DELTA 075 P/F-D | WD075PFD | G01085 | WD075 | 100.0000% |
| WEST DELTA 075 P/F-F | WD075PFF | G01085 | WD075 | 100.0000% |
| WEST DELTA 075 P/F-G | WD075PFG | G01085 | WD075 | 100.0000% |
| WEST DELTA 090 P/F-A | WD090PFA | G01089 | WD090 | 100.0000% |
| WEST DELTA 090 P/F-B | WD090PFB | G01089 | WD090 | 100.0000% |
| WEST DELTA 090 P/F-E | WD090PFE | G01089 | WD090 | 100.0000% |

**Exhibit I-C(ii)**

| Name | State | County/Parish | Ownership % |
|---|---|---|---|
| Blue Water Gas Plant | Louisiana | | 0.1000% |
| Galveston 300/301 Facility | Texas | Galveston | 100.0000% |
| Gibbstown Separation Station | Louisiana | Cameron | 100.0000% |
| Grand Bay Receiving Station | Louisiana | Plaquemines | 65.0000% |
| Grand Chenier Separation Facility | Louisiana | Cameron | 5.4% |
| Grand Chenier Tank Battery | Louisiana | Cameron | 100.0000% |
| Grand Isle Fuel Line (supply line for municipality) | Louisiana | Jefferson | 100.0000% |
| Grand Isle Tank Bat | Louisiana | Jefferson | 75.0000% |
| Johnson Bayou Onshore Separation Facility | Louisiana | Cameron | 24.31% of Co-Owned Equipment |
| Johnson Bayou Onshore Separation Facility | Louisiana | Cameron | 54.875% of Producers' Equipment |
| MI 519 Bay City Compressor Station | Texas | Matagorda | 81.8979% |
| North Terrebonne Gas Processing Plant | Louisiana | Terrebonne | 0.0000% |
| Sea Robin Condensate Separation Facility (aka "Henry Hub") | Louisiana | Vermilion | 8.0000% |
| Sea Robin Gas Plant | Louisiana | Vermilion | 23.7285% |
| Stingray Onshore Separation Facility (Cameron Onshore Commingling Facility) | Louisiana | Cameron | 11.1300% |
| Targa Venice | Louisiana | Plaquemines | 100.0000% |
| Thousand Square Mile Area (TASMA) | Louisiana | Vermilion | 100.0000% |
| Tivoli Plant | Texas | Refugio | 56.1394% |
| TOCA Gas Processing Plant | Louisiana | St. bernard | 4.2900% |
| Venice Dehydration Facility (South Pass Dehydration Station) | Louisiana | Plaquemines | 35.2000% |
| Vermilion 76 Onshore Scrubber | Louisiana | Vermilion | 93.9% |

Exhibit I-D(i)

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15213 | Fieldwood Energy, LLC | BS | 41 | B | BS | 42 | 24" SSTI | 10 | G/C | Partial Abandon | G25383 | G11142 |
| 17938 | Fieldwood Energy, LLC | CA | 43 | A | VK | 247 | 24"SSTI | 6 | GAS | Active | G29431 | G32268 |
| 3519 | Fieldwood Energy, LLC | EC | 14 | CF | EC | 9 | F/S | 4 | COND | Out of Service | G13721 | G01440 |
| 13104 | Fieldwood Energy, LLC | EC | 2 | F/S | EC | 2 | 6" SSTI | 4 | GAS | Permitted for Abandonment | G22383 | G15050 |
| 17801 | Fieldwood Energy, LLC | EC | 14 | CF | WC | 69 | 30 SSTI | 12 | GAS | Permitted for Abandonment | G28556 | G01440 |
| 44 | Fieldwood Energy, LLC | EI | 175 | C | EI | 176 | 12" SSTI | 8 | OIL | Out of Service | G13445 | 00438 |
| 1128 | Fieldwood Energy, LLC | EI | 330 | flanged end | EI | 306 | 14-inch SSTI | 14 | OIL | Active | G02139A | G02115 |
| 6818 | Fieldwood Energy, LLC | EI | 337 | A | EI | 330 | B | 6 | GAS | Out of Service | G05932 | G03332 |
| 6819 | Fieldwood Energy, LLC | EI | 337 | A | EI | 330 | B | 6 | GAS | Out of Service | G05931 | G03332 |
| 6852 | Fieldwood Energy, LLC | EI | 315 | A | EI | 330 | 14 SSTI | 6 | OIL | Out of Service | G13447 | G02112 |
| 7290 | Fieldwood Energy, LLC | EI | 316 | A | EI | 330 | 14 SSTI | 8 | OIL | Active | G07537 | G05040 |
| 7347 | Fieldwood Energy, LLC | EI | 316 | A | EI | 330 | 8" SSTI | 6 | GAS | Active | G07555 | G05040 |
| 7914 | Fieldwood Energy, LLC | EI | 212 | A | SS | 152 | 24 SSTI | 6 | GAS | Out of Service | G08530 | G05503 |
| 7915 | Fieldwood Energy, LLC | EI | 212 | A | EI | 213 | 12 SSTI | 6 | OIL | Out of Service | G08531 | G05503 |
| 7943 | Fieldwood Energy, LLC | EI | 342 | C | EI | 327 | 08 SSTI | 4 | OIL | Out of Service | G08541 | G02319 |
| 9211 | Fieldwood Energy, LLC | EI | 53 | B | EI | 64 | 22 SSTI | 6 | G/C | Partial Abandon | G12373 | 00479 |
| 9376 | Fieldwood Energy, LLC | EI | 142 | A | EI | 141 | 10 SSTI | 4 | OIL | Out of Service | G12734 | 00052 |
| 11923 | Fieldwood Energy, LLC | EI | 53 | C | EI | 64 | 22 SSTI | 6 | G/C | Out of Service | G20539 | 00479 |
| 14073 | Fieldwood Energy, LLC | EI | 188 | JE | EI | 188 | 06 SSTI | 4 | BLKG | Out of Service | G29056 | 00443 |
| 14479 | Fieldwood Energy, LLC | EI | 158 | C | EI | 176 | 12"SSTI | 6 | OIL | Out of Service | G13702 | G01220 |
| 15906 | Fieldwood Energy, LLC | EI | 173 | G | EI | 175 | C | 4 | BLKG | Out of Service | G28239 | G13622 |
| 16225 | Fieldwood Energy, LLC | EI | 354 | D | EI | 337 | A | 4 | OIL | Out of Service | G28598 | G10752 |
| 16226 | Fieldwood Energy, LLC | EI | 354 | D | EI | 337 | A | 4 | OIL | Out of Service | G28599 | G10752 |
| 16243 | Fieldwood Energy, LLC | EI | 189 | B | EI | 188 | A | 4 | GAS | Out of Service | G29057 | 00423 |
| 18493 | Fieldwood Energy, LLC | EI | 342 | C | EI | 343 | SSTI | 6 | OIL | Out of Service | G29108 | G02319 |
| 19960 | Fieldwood Energy LLC | EI | 342 | C | EI | 342 | Blind Flange | 6 | OIL | Out of Service | G29471 | G02319 |
| | Fieldwood Energy, LLC | EI | 187 | 2 | EI | 187 | 2 | | | Out of Service | G30283 | G10736 |
| 8487 | Fieldwood Energy, LLC | EW | 826 | A | ST | 300 | 12 SSTI | 12 | OIL | Out of Service | G10110 | G05800 |
| 15298 | Fieldwood Energy, LLC | GA | 210 | B | GA | 239 | 12 SSTI | 8 | G/C | Active | G26931 | G25524 |
| 7866 | Fieldwood Energy, LLC | GI | 33 | A | GI | 22 | L | 8 | GAS | Permitted for Abandonment | G08514 | G04002 |
| 9084 | GOM Shelf, LLC | GI | 43 | AS | GI | 19 | F/S | 10 | OIL | Active | G12304 | 00175 |
| 17673 | Fieldwood Energy, LLC | GI | 54 | #2 | GI | 47 | L | 4 | BLKO | Permitted for Abandonment | G28528 | G27173 |
| 5470 | Fieldwood Energy, LLC | HI | A356 | Valve | HI | A343 | HIOS | 12 | GAS | Out of Service | G04050 | G02754 |
| 6504 | Fieldwood Energy, LLC | HI | A595 | D | HI | 573 | B | 8 | OIL | Out of Service | G28525 | G02721 |
| 6669 | Fieldwood Energy, LLC | HI | A 376 | A | HI | A 356 | 12 SSTI | 10 | GAS | Out of Service | G05238 | G02754 |
| 6669 | Fieldwood Energy, LLC | HI | A 376 | Platform A | HI | A 356 | 12 SSTI W/PSN 10882 | 10 | GAS | Out of Service | G05238 | G02754 |
| 10882 | Fieldwood Energy, LLC | HI | A356 | 10SST | HI | A356 | 12SSTI | 12 | GAS | Out of Service | G04051 | G02754 |
| 11841 | Fieldwood Energy, LLC | HI | A 545 | JA | HI | A 547 | B | 8 | BLKG | Permitted for Abandonment | G20510 | G17199 |
| 14650 | Fieldwood Energy, LLC | HI | 201 | #1 | HI | 199 | A | 6 | BLKG | Partial Abandon | G25397 | G23599 |
| 15401 | Fieldwood Energy, LLC | HI | A 341 | B | HI | A 340 | 30" SSTI | 812 | G/C | Active | G26938 | G25605 |
| 15581 | Fieldwood Energy, LLC | HI | 120 | A | HI | 128 | SSTI | 6 | G/C | Out of Service | G26968 | G24730 |
| 16077 | Fieldwood Energy, LLC | HI | 130 | #2 | HI | 165 | 8-inch SSTI | 8 | BLGH | Partial Abandon | G28284 | G25579 |
| 18789 | Fieldwood Energy LLC | HI | 116 | Platform A | HI | 71 | 16-inch SSTI | 16 | G/C | PABN | G28649 | G06156 |
| 9032 | Fieldwood Energy, LLC | MC | 311 | A | MC | 312 | 8 SSTI | 8 | OIL | Active | G11747 | G02968 |
| 3472 | Fieldwood Energy, LLC | MP | 140 | B | MP | 56 | F/S | 18 | GAS | Out of Service | G13511 | G02193 |
| 5917 | GOM Shelf, LLC | MP | 311 | A | MP | 313 | 12 SSTI | 8 | OIL | Out of Service | G13466 | G02213 |
| 7143 | Fieldwood Energy, LLC | MP | 310 | A | MP | 297 | 12 SSTI | 6 | GAS | Out of Service | G07100 | G04126 |
| 13100 | Fieldwood Energy, LLC | MP | 259 | A | VK | 739 | #01 | 5 | UMB | Out of Service | G22377 | G07827 |
| 15818 | Fieldwood Energy Offshore LLC | MP | 77 | A | MP | 151 | 18"SSTI | 8 | GAS | Out of Service | G28221 | G04481 |
| 5408 | Fieldwood Energy, LLC | PL | 10 | B | PL | 13 | 20 SSTI | 8 | GAS | Out of Service | G09317 | G02925 |
| 16044 | Fieldwood Energy, LLC | PL | 9 | #10 | PL | 10 | A | 6 | BLKG | Out of Service | G28276 | G02924 |
| 4008 | Fieldwood Energy, LLC | SM | 268 | A | SM | 28 | A | 12 | OIL | Out of Service | G02816 | G34284 |
| 4647 | Fieldwood Energy, LLC | SM | 149 | 6"SSTI | SM | 132 | B | 6 | BLKO | Out of Service | G03432 | G02592 |
| 5427 | Fieldwood Energy, LLC | SM | 281 | E | SM | 268 | A | 12 | SPLY | Out of Service | G02817 | G02600 |
| 5429 | Fieldwood Energy, LLC | SM | 281 | C | SM | 281 | 12 SSTI | 10 | SPLY | Out of Service | G02817 | G02600 |
| 6512 | Fieldwood Energy, LLC | SM | 281 | C | SM | 268 | D | 8 | GAS | Out of Service | G29131 | G02600 |
| 6513 | Fieldwood Energy, LLC | SM | 268 | D | SM | 268 | A | 10 | BLKO | Out of Service | G29132 | G02310 |
| 10977 | Fieldwood Energy, LLC | SM | 268 | A | SM | 280 | #03 | 3 | BLKG | Active | G28756 | G14456 |
| 11046 | Fieldwood Energy, LLC | SM | 11 | Well No.34 | SM | 11 | A | 6 | GAS | Out of Service | G28813 | G01182 |
| 11047 | Fieldwood Energy, LLC | SM | 10 | A | SM | 11 | 34 | 3 | LIFT | Out of Service | G28812 | G01181 |
| 11986 | Fieldwood Energy, LLC | SM | 39 | A | SM | 33 | 30 SSTI | 8 | GAS | Out of Service | G20565 | G16320 |
| 11987 | Fieldwood Energy, LLC | SM | 39 | A | SM | 40 | 10 SSTI | 6 | OIL | Out of Service | G20566 | G16320 |
| 13642 | Fieldwood Energy, LLC | SM | 280 | H | SM | 268 | A | 10 | BLKG | Permitted for Abandonment | G28758 | G14456 |
| 17499 | Fieldwood Energy, LLC | SM | 269 | B | SM | 268 | A | 4 | BLKG | Active | G28484 | G02311 |
| 18057 | Fieldwood Energy, LLC | SM | 11 | No.58 Caisson | SM | 10 | A | 4 | BLKG | Out of Service | G28815 | G01182 |
| 18510 | Fieldwood Energy, LLC | SM | 48 | A | SM | 287 | SSTI | 8 | GAS | Out of Service | G29113 | G01181 |
| 18563 | Fieldwood Energy, LLC | SM | 48 | E | SM | 39 | A | 6 | GAS | Out of Service | G28813 | 00786 |
| 18583 | Fieldwood Energy, LLC | SM | 39 | A | SM | 11 | SSTI | 4 | OIL | Out of Service | G28814 | G01181 |
| 18802 | Fieldwood Energy, LLC | SM | 39 | A | SM | 48 | E | 3 | LIFT | Out of Service | G29182 | G16320 |
| 4716 | Fieldwood Energy, LLC | SP | 70 | A | SP | 60 | B | 8 | BLKG | Out of Service | G03436 | G01614 |
| 15064 | FW GOM Pipeline, Inc. | SP | 49 | A | SP | 27 | F/S Boundary | 10 | G/O | Active | G07561 | G05051 |
| 15598 | Fieldwood Energy, LLC | SP | 70 | C | SP | 60 | E | 6 | OIL | Out of Service | G26860 | G01614 |
| 15626 | Fieldwood Energy, LLC | SP | 65 | A | SP | 62 | 18 SSTI | 6 | GAS | Out of Service | G01686A | G01617 |
| 1137 | Fieldwood Energy, LLC | SS | 207 | A Platform | SS | 204 | A | 4 | GAS | Out of Service | G13489 | G01523 |
| 1138 | Fieldwood Energy, LLC | SS | 204 | A | SS | 207 | A | 6 | G/O | Active | G13491 | G01520 |
| 5133 | Fieldwood Energy, LLC | SS | 207 | A | SS | 208 | F-Pump | 12 | OIL | Out of Service | G13491 | G01520 |
| 6432 | Fieldwood Energy, LLC | SS | 182 | A | SS | 168 | 18 SSTI | 6 | OIL | Active | G09321 | G03998 |
| 6538 | Fieldwood Energy, LLC | SS | 91 | PL | 11 | 08 SSTI | 6 | OIL | Out of Service | G05146 | G02919 |
| 6748 | Fieldwood Energy, LLC | SS | 169 | C Platform | SS | 169 | 18-inch SSTI | 6 | GAS | Out of Service | G09322 | G0820 |
| 7650 | Fieldwood Energy, LLC | SS | 178 | A | SS | 169 | 18 SSTI | 6 | OIL | Out of Service | G08054 | G05551 |
| 10406 | Fieldwood Energy, LLC | SS | 274 | A | EI | 359 | B | 6 | OIL | Active | G14731 | G01039 |
| 10780 | Fieldwood Energy, LLC | SS | 193 | A | SS | 183 | 18 SSTI | 6 | OIL | Active | G15683 | G13917 |
| 10781 | Fieldwood Energy, LLC | SS | 193 | A | SS | 183 | 10 SSTI | 6 | GAS | Active | G15684 | G13917 |
| 11137 | Fieldwood Energy, LLC | SS | 129 | A | SS | 122 | 18 SSTI | 6 | OIL | Out of Service | G16084 | G12941 |
| 11145 | Fieldwood Energy, LLC | SS | 129 | A | SS | 149 | 6 SSTI | 6 | G/C | Out of Service | G16087 | G12941 |
| 11480 | Fieldwood Energy, LLC | SS | 105 | A | EI | 165 | 30 SSTI | 10 | GAS | Out of Service | G18801 | G09614 |
| 11544 | Fieldwood Energy, LLC | SS | 126 | B | SS | 105 | A | 4 | BLKG | Out of Service | G18820 | G12940 |
| 12778 | Fieldwood Energy, LLC | SS | 189 | A | SS | 185 | 26"SSTI | 8 | G/C | Out of Service | G22139 | G04232 |
| 15530 | Fieldwood Energy, LLC | SS | 183 | Flange | SS | 169 | Flange | 10 | GAS | Out of Service | G01460 | G13917 |
| 16036 | Fieldwood Energy, LLC | SS | 207 | Capped End | SS | 207 | A | 4 | BLKO | Permitted for Abandonment | G14734 | G10775 |
| 18837 | Fieldwood Energy, LLC | SS | 176 | C | EI | 212 | A | 6 | BLKG | Out of Service | G29190 | G33646 |
| 20050 | Fieldwood Energy, LLC | SS | 168 | SSTI | SS | 168 | SSTI | 6 | | Proposed | G28788 | 00820 |
| 5890 | Fieldwood Energy, LLC | ST | 53 | A | ST | 52 | A | 6 | OIL | Out of Service | G05319 | G04000 |
| 7802 | Fieldwood Energy, LLC | ST | 295 | A | ST | 296 | SS 8487 | 2 | OIL | Active | G08385 | G05646 |
| 8676 | Fieldwood Energy, LLC | ST | 206 | A | ST | 175 | T-22 | 16 | G/C | Out of Service | G11146 | G05613 |
| 9313 | Fieldwood Energy, LLC | ST | 295 | A | ST | 295 | 24 SSTI | 8 | BLKG | Active | G12709 | G05646 |
| 13462 | Fieldwood Energy, LLC | ST | 205 | G | ST | 206 | A | 4 | OIL | Out of Service | G028821 | G05612 |
| 13462 | Fieldwood Energy, LLC | ST | 205 | G | ST | 206 | A | 4 | OIL | Out of Service | G29451 | G05612 |
| 17265 | Fieldwood Energy, LLC | ST | 68 | Caisson No. 1 | ST | 53 | A | 6 | BLKO | Out of Service | G28385 | G04000 |
| 17898 | Fieldwood Energy, LLC | ST | 49 | Platform A | ST | 35 | 6-inch SSTI | 4 | G/C | Out of Service | G28577 | G24956 |
| 19776 | Fieldwood Energy, LLC | ST | 295 | 24" SSTI | ST | 292 | A | 24 | GAS | Out of Service | G29376 | G05646 |
| 13098 | Fieldwood Energy, LLC | VK | 694 | M | MP | 259 | A | 4 | BLKG | Out of Service | G22376 | G13055 |
| 13099 | Fieldwood Energy, LLC | VK | 739 | SS #3 | MP | 259 | A | 6 | BLKG | Out of Service | G22377 | G07827 |
| 13720 | Fieldwood Energy, LLC | VK | 340 | 8"SSTI | VK | 251 | A | 8 | G/C | Out of Service | G28221 | G04481 |
| 13720 | Fieldwood Energy Offshore LLC | VK | 340 | 8-inch SSTI | VK | 251 | Platform A | 8 | BLGH | Active | G28703 | G10933 |
| 13721 | Fieldwood Energy, LLC | VK | 251 | A | VK | 340 | A | 3 | AIR | Active | G28704 | G10930 |
| 14876 | Fieldwood Energy, LLC | VK | 251 | A | MP | 154 | A | 4 | H2O | Out of Service | G22465 | G10930 |
| 6113 | Fieldwood Energy, LLC | VR | 380 | A | VR | 397 | 24 SSTI | 12 | GAS | Out of Service | G04645 | G02580 |
| 12502 | Fieldwood Energy, LLC | VR | 326 | A Platform | VR | 321 | 22-inch SSTI | 6 | G/C | Active | G21523 | G21096 |
| 17090 | Fieldwood Energy, LLC | VR | 261 | A | VR | 265 | A | 4 | BLKO | Out of Service | G28347 | G03328 |
| 18502 | Fieldwood Energy, LLC | VR | 380 | A | VR | 398 | 16" SSTI | 6 | OIL | Out of Service | G02919 | G02580 |
| 18502 | Fieldwood Energy, LLC | VR | 380 | Platform A | VR | 398 | 16-inch SSTI | 6 | OIL | Out of Service | G29109 | G02580 |
| 2698 | Fieldwood Energy, LLC | WC | 102 | flange | WC | 102 | A | 8 | OIL | Out of Service | G02124D | G0247 |
| 3763 | Fieldwood Energy, LLC | WC | 102 | #02 | WC | 102 | 08 SSTI | 8 | G/O | Out of Service | G02124D | G0247 |
| 3986 | Fieldwood Energy, LLC | WC | 66 | A | WC | 31 | F/S | 10 | G/O | Active | G03345 | G01860 |

Exhibit I-D(i)

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5343 | Fieldwood Energy, LLC | WC | 34 | D | WC | 35 | 10 SSTI | 8 | G/O | Out of Service | G28659 | G01860 |
| 8621 | Bandon Oil and Gas, LP | WC | 290 | A | WC | 289 | A | 6 | BLKG | Out of Service | G10532 | G04818 |
| 9504 | Fieldwood Energy, LLC | WC | 71 | 12 SSTI | WC | 71 | 12 SSTI | 12 | GAS | Out of Service | G04346 | O0244 |
| 14251 | Fieldwood Energy Offshore LLC | WC | 72 | #1 | WC | 65 | JA | 4 | BLKG | Out of Service | G25275 | G23735 |
| 15210 | Fieldwood Energy, LLC | WC | 295 | 2 | HI | 120 | A-PROCESS | 6 | BLKG | Out of Service | G26886 | G24730 |
| 15952 | Fieldwood Energy, LLC | WC | 33 | O | WC | 34 | D | 4 | G/O | Out of Service | G28657 | G15050 |

Exhibit I-D(ii)

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|
| EI | 188 | JE | 26052 | G30268 | G10736 | Fieldwood Energy LLC | 04/18/14 | EI 187 JC001, JD001, JD002, 002 & JE002 |
| HI | 120 | A-PROCESS | 10450 | G30270 | G01848 | Fieldwood Energy LLC | 08/06/14 | WC 295 A001 & A002 |
| SM | 132 | B | 21982 | G30329 | G02588 | Fieldwood Energy LLC | 05/06/19 | SM 136 C007, SM 149 C001, C002 & C004 |
| ST | 206 | A | 23851 | G30291 | G05612 | Fieldwood Energy LLC | 12/11/15 | ST 205 G001 & G003 |
| SM | 10 | A | 20706 | G30365 | G01181 | Fieldwood Energy LLC | | |

**Exhibit I-E**

Call Sign:

KKS457

WQFI654

WQGX432

WPSH741

KNDQ614

WPXX340

| Contract Type | Contract Date | Contract Title | Contract Description |
|---|---|---|---|
| Land | 8/7/1953 | UA | HI 179 Unit Agreement |
| Land | 10/27/1954 | Unit Agreement No. 14-08-001-20221 | Grand Isle CATCO Unit Agreement, dated October 27, 1954, between Continental Oil Company and The Atlantic Refining Company, Tide Water Associated Oil Company and Cities Service Oil Company.; Unit No. 891002021 |
| Land | 5/1/1995 | Unit Operating Agreement | Amendment-to Unit Operating Agreement, dated effective May 1, 1995, by and between Conoco Inc.,Vastar Resources, Inc., Texaco Exploration and Production Inc. and Oxy USA Inc. |
| Land | 11/21/1955 | Unit Agreement No. 14-08-001-2454 | West Delta-Grand Isle Unit Agreement, dated November 21,1955, between Continental Oil Company, as unit operator, and The Atlantic Refining Company, Tidewater Associated Oil Company and Cities Service Production Company, as non-operators, as amended ; Unit No. 891002454 |
| Land | 4/10/1956 | Unit Agreement | Unit No. 891002891 - SS 32 |
| Land | 12/4/1958 | OPERATING AGREEMENT | OPERATING AGREEMENT BY AND BETWEEN THE TEXAS COMPANY AND PAN AMERICAN PETROLEUM CORPORATION , AS AMENDED |
| Land | 12/4/1958 | Operating Agreement | Operating Agreement eff. 12/4/58 |
| Land | 7/25/1960 | Operating Agreement | Operating Agreement, dated effective July 25,1960, as amended, between Second Mobil Oil Company, Inc., Gulf Oil 'Corporation, and Humble Oil & Refining Company, as amended, SS 169 Field. |
| Land | 8/3/1964 | UOA | Operating Agreement eff. 8-3-64 |
| Land | 11/2/1964 | UA | EI 266 Unit Agreement |
| Land | 1/12/1965 | Joint Operating Agreement | Main Agreement, dated effective January 12,1965, between Cities Service Oil Company, Skelly Oil Company, Sunray DX Oil Company and Tidewater Oil Company, governing operations on the contract area. The Operating Agreement contained in Exhibit "C" of the Main Agreement was superseded by the Joint Operating Agreement eff. 1/1/97 |
| Land | 1/21/1966 | Unit Agreement No. 14-08-001-8784 | Unit No. 891008784 - SS 271 |
| Land | 2/26/1966 | Offshore Operating Agreement | Operating Agreement by and between Hardy Oil & Gas USA Inc., as Operator and British-Borneo Exploration, Inc. and Zilkha Energy Company, As Non-Operators |
| Land | 6/10/1966 | Unit Operating Agreement Ship Shoal | SS 271 Unit Operating Agreement (Unit#891008784) As Amended, originally by and between Forest Oil Corp. as Operator, and Texas Gas Exploration Corp. et al as Non-Operators |
| Land | 2/6/1967 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN CONTINENTAL OIL COMPANY AND TENNECO OIL COMPANY ET AL, AS AMENDED |
| Land | 1/1/1971 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC., MESA PETROLEUM CO., ET AL. |
| Land | 2/1/1971 | Joint Operating Agreement | Operating Agreement, dated February 1,1971, between Tenneco Oil Company and Texaco Inc. Amendment to Operating Agreement, dated effective May 1,1974, between Tenneco Oil Company, Texaco Inc. and Tenneco Exploration 11, Ltd., whereby Tenneco Exploration II became a party to, and ratified, the operating agreement. |
| Land | 1/1/1972 | Joint Operating Agreement | OPERATING AGREEMENT BY AN D BETWEEN SIGNAL OIL AND GAS COMPANY AND THE LOUISIANA LAND AND EXPLORATION COMPANY, ET AL. |
| Land | 3/24/1972 | Unit Agreement | SP 65 G-1 Unit Res B Unit Agreement -891012327 |
| Land | 5/18/1972 | Unit Agreement | SP 65 G-1 Unit Res A Unit Agreement-891012332 |
| Land | 5/18/1972 | Unit Agreement | SP 65 G2-G3 Unit Agreement-891012333 |
| Land | 1/1/1973 | Offshore Operating Agreement | Offshore Operating Agreement* (VR 369/386+) *Unit Operating Agreement supersedes JOperating Agreement 1/1/1973 |
| Land | 8/1/1973 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN MOBIL OIL CORPORATION AND UNION OIL COMPANY OF CALIFORNIA ET AL |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8.1-73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8/1/73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8/1/73 |
| Land | 5/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN PENNZOIL OFFSHORE GAS OPERATORS, INC. AND PENNZOIL LOUISIANA AND TEXAS OFFSHORE, INC. ET AL. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 9/3/1974 | FO | Farmout Agreement by and between CNG Producing Company, Columbia Gas Development Corporation and Forest Oil Corporation |
| Land | 12/1/1974 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC. AND PENNZOIL LOUISIANA AND TEXAS OFFSHORE, INC. ET AL. |
| Land | 4/23/1975 | Joint Operating Agreement | Operating Agreement eff. 4-23-75 |
| Land | 7/1/1975 | Joint Operating Agreement | Operating Agreement eff. 7/1/75 by and between Mesa Petroleum as Operator and American Natural Gas Production Co, et al |
| Land | 3/1/1976 | Joint Operating Agreement | Operating Agreement eff. 3-1-76 b/b POGO, Mesa and Mobil, et al |
| Land | 4/1/1976 | Joint Operating Agreement | Operating Agreement eff. 4-1-76 as amended |
| Land | 4/1/1977 | Unit Operating Agreement | UNIT OPERATING AGREEMENT BY AND BETWEEN DEVON ENERGY PRODUCTION , APACHE CORPORATION, ET AL. |
| Land | 4/1/1977 | Unit Agreement No. 14-08-001-16943 | Unit Agreement, JO Sand, Reservoir A, Eugene Island Block 330 Field (Unit Number 891016943), dated effective April 1,1977, naming Pennzoil Oil & Gas, Inc., as Operator, and Texaco Inc. and Shell Oil Company, as sub-operators |
| Land | 12/12/1977 | Unit Agreement | Unit Agreement (VR 369 Unit Area) 12/12/1977 |
| Land | 12/23/1977 | Unit Agreement | Unit Operating Agreement* (VR 369 Unit Area) *UOperating Agreement supersedes JOperating Agreement 12/23/1977 |
| Land | 1/1/1978 | UOA | HI 179 Unit Operating Agreement |
| Land | 5/2/1978 | FO | FARMOUT AGREEMENT EFFECTIVE MAY 2, 1978, BY AND BETWEEN ENSERCH, FARMOR, AND ANADARKO, FARMEE. |
| Land | 11/1/1978 | OA | Operating Agreement eff. 11/1/78 |
| Land | 11/17/1978 | FO | Farmout Agreement dated November 17,1978 between Gulf Oil Corporation and Shell Oil Company covering the Northeast Quarter (NE/4) of that certain Oil and Gas Lease dated July 1,1967 bearing Serial No. OCS-G 1609, South Pass Area Block 61. |
| Land | 3/1/1979 | Joint Operating Agreement | OPERATING AGREEMENT DATED MARCH 1, 1979, BY AND BETWEEN UNION OIL COMPANY OF CALIFORNIA AND MOBIL OIL EXPLORATION & PRODUCTION SOUTHEAST INC. |
| Land | 9/15/1979 | Joint Operating Agreement | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO, AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC, AND SAMEDAN OIL CORPORATION, NON-OPERATORS. |
| Land | 12/1/1979 | OFFSHORE OPERATING AGREEMENT | OFFSHORE OPERATING AGREEMENT b/b SHELL OIL COMPANYand FLORIDA EXPLORATION COMPANY, ET AL. |
| Land | 4/1/1981 | Unit Operating Agreement | Unit Operating Agreement; dated April 1,1981, by and between Conoco Inc., Atlantic Richfield Company, Getty Oil Company, Cities Service Company, Placid Oil Company, Hamilton Brother Oil Company, Mobil Oil Exploration and Producing S.E., Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt Industries and Prosper Energy Corporation, comprising all working interest owners in the Ship ShOperating Agreement! Blocks 206, 207,,OCS-G J523 and OCS-G 1523, respectively. |
| Land | 9/1/1981 | Joint Operating Agreement | Operating Agreement 9/1/1981 |
| Land | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement 9/1/1981 |
| Land | 1/1/1982 | Joint Operating Agreement | OPERATING AGREEMENT BETWEEN SOHIO PETROLEUM COMPANY AND EXXON CORPORATION |
| Land | 4/28/1982 | Letter Agreement | Letter Agreement dated April 28,1982 between Gulf Oil Corporation and Shell Oil Company evidencing an agreement for Gulf Oil Company to install a Drilling Platform in the Northeast Quarter (NE/4) South Pass Area Block 61. |
| Land | 11/1/1982 | UNIT AGREEMENT FOR OUTER CONTINENTAL SHELF, 'N' SERIES | UNIT AGREEMENT BY AND BETWEEN CONOCO INC. AND CITIES SERVICE COMPANY AT AL |
| Land | 1/1/1983 | ORRI | Conveyance of Overriding Royalty Interests, dated effective January 1,1983, creating the Tel Offshore Trust, and granting an overriding royalty interest, equivalent to 25% net profits interest, in all of Tenneco Exploration, Ltd.'s oil and gas properties |

| | | | |
|---|---|---|---|
| Land | 7/1/1983 | UOA | EI 212 Unit Operating Agreement |
| Land | 8/4/1983 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement effective August 4, 1984 BY AND BETWEEN APACHE CORPORATION AND SHELL OFFSHORE CONTIGUOUS BLOCK TO SHELL VENTURE PROPERTY THAT MAY TRIGGER AMI RESPONSIBILITY REGARDING FUTURE PURCHASE OR BID OF TRACTS COVERING GEOLOGIC STRUCTURE COMMON TO EXISTING SHELL VENTURE PROPERTY |
| Land | 7/1/1984 | Unit Agreement | UNIT AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND FLORIDA EXPLORATION COMPANY ET AL |
| Land | 7/1/1984 | UOA | MP 310 Unit Operating Agreement |
| Land | 1/1/1985 | OA | Operating Agreement eff. 1/1/85 |
| Land | 6/3/1985 | Consent to Assign | Consent to Assignment of Interest, dated June 3,1985, between Tenneco Exploration, Ltd. and Texaco Inc., as Grantors of Consent, and Huffco Petroleum, as Assignor, and L. S. Holding Company, AE Investments, Inc., Colton Gulf COperating Agreements\, Inc., and Huffco 1982 Exploration Limited Partnership, as Assignees, assigning all of Huffco Petroleum's record title interest to the Assignees. |
| Land | 5/1/1986 | Assignment | Assignment, dated effective May 1,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Plumb Offshore, Inc., subject to the reservation of an overriding royalty interest. |
| Land | 7/2/1986 | FARMOUT AGREEMENT | Farmout Agreement 7/2/1986 |
| Land | 10/31/1986 | Assignment | Assignment of Interest, dated effective October 31,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Tenneco Oil Company. |
| Land | 11/2/1987 | SIMULTANEOUS EXCHANGE AGREEMENT | EXCHANGE AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC AND CONOCO INC |
| Land | 3/3/1988 | PA | PARTICIPATION AGREEMENT EFFECTIVE MARCH 3, 1988, BY AND BETWEEN WESTPORT OIL AND GAS COMPANY, INC., AND BASIN EXPLORATION INC. |
| Land | 6/7/1988 | UA | EI 212 Unit Agreement |
| Land | 10/31/1988 | FO | Farmout Agreement 10/31/1988 |
| Land | 1/1/1989 | OPERATING AGREEMENT | WD/GI UOA - CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | GI CATCO UOA - CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL Unit No. 891002021 |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | UOA | EI 266 Unit Operating Agreement |
| Land | 1/1/1989 | OA | CATCO Operating Agreement eff. 1/1/89 by and between Conoco, Richfield , Texaco, et al |
| Land | 1/1/1989 | OA | Operating Agreement 1/1/89 |
| Land | 3/10/1989 | FO | Ratification of Farmout Agreement 3/10/1989 |
| Land | 5/2/1989 | Letter Agreement | Letter Agreement, dated May 2, 1989, between Southern Natural Gas Company and Chevron U.S.A. Inc.,concerning the "Construction, Installation, Operation and Maintenance of Measurement and Pipeline Facilities "<br>for receipt points at various locations on the OCS, including Main Pass 77 'A' platform (as amended). Consent Sec. 1O. |
| Land | 7/1/1989 | OA | Operating Agreement eff. 7/1/89 |
| Land | 12/15/1989 | FO | FARMOUT AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC., ET AL. AND CNG PRODUCING COMPANY |
| Land | 7/1/1990 | UA & UOA | MP 259 Unit Agreement and Unit Operating Agreement |
| Land | 10/1/1990 | Joint Operating Agreement | RATIFICATION AND AMENDMENT NUMBER 1 TO JOINT OPERATING AGREEMENT DATED OCTOBER 1, 1990, BY AND BETWEEN CONOCO INC. AND TEXAS PRODUCING INC. |
| Land | 1/1/1991 | PA | Offshore Participation Agreement, dated effectivenuary 1,1991, between Unocal Exploration Corporation, The Northwestern Mutual Life Insurance Company, and Hardy Oil & Gas USA Inc., BA A105. |
| Land | 4/15/1991 | OA | Operating Agreement eff. 4-15-91 b/b Conoco and Shell |
| Land | 5/1/1991 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC., MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST ET AL |
| Land | 6/1/1991 | UA | UNIT AGREEMENT, SOUTH TIMBALIER BLOCK 295 FIELD UNIT BY AND BETWEEN SHELL OFFSHORE INC. AND APACHE CORPORATION, ET AL. |
| Land | 7/1/1983 | UOA | ST 295 UOA, as amended |
| Land | 8/15/1991 | OA | HI A442 Operating Agreement C-02-0004194 |
| Land | 9/10/1991 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN ATLANTIC RICHFIELD COMPANY AND EXXON CORPORATION |
| Land | 10/1/1991 | FO | FO and Operating Agreement dated 10/1/91 between Torch Energy Advisors Inc etal and Hall-Houston Oil Company |
| Land | 4/1/1992 | Unit Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development and Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf, Contract No. 754394018, as amended |
| Land | 4/1/1992 | Unit Agreement | Amendment to Unit Agreement. For Outer Continental Shelf Exploration, Development and Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf (Contract No. 754394018) to expand the Unit Agreement to include the NE/4 of the NW/4 of Block 61, OCS-G 1609, South. Pass Area. |
| Land | 5/2/1992 | ABOS | Agreement and Bill of Sale, dated effective May 2,1992, between Union Oil Company of California, as Seller, and The Northwestern Mutual Life Insurance Company and Hardy Oil & Gas USA Inc., as Buyers, selling 43.75% interest in the BA A105 "A" Platform, equipment arid pipeline, to NW Mutual 31.25%, and Hardy 12.50%. |
| Land | 6/25/1992 | Letter Agreement | Letter Agreement, dated June 25, 1992, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana ", whereby Chevron obtained consent from Southern for Chevron to connect, operate and maintain pneumatic chart recorders at various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
| Land | 7/1/1992 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN ATLANTIC RICHFIELD COMPANY AND SAMEDAN OIL CORPORATION |
| Land | 7/1/1992 | OA | Operating Agreement 7-1-92 b/b Kerr-McGee and Samedan |
| Land | 1/1/1993 | Unit Operating Agreement | Unit Operating Agreement eff. 1-1-93 |
| Land | 2/15/1993 | Letter Agreement | Letter Agreement, dated effective February 15, 1993, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit -<br>Various Meter Stations, Offshore Louisiana", whereby Chevron and Southern agree to amend and replace Exhibit "A" to that certain Letter Agreement, dated June 25, 1992 (described hereinabove). |
| Land | 4/2/1993 | ABOS | Bill of Sale, dated April 2, 1993, from Southern Natural Gas Company ("Southern") to Chevron U.S.A. Inc.("Purchaser"), whereby Southern sells to Purchaser certain Barton chart recorders and appurtenant equipment<br>located at various on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
| Land | 5/7/1993 | Letter Agreement | Letter Agmt. dated 5-7-1993 b/b Shell Offshore Inc. and Freeport McMoRan Oil and Gas Company. |
| Land | 6/1/1993 | FO | Farmout Agmt. eff. 6-1-1993 b/b Shell Offshore Inc. and Samedan Oil Coporation. |
| Land | 6/11/1993 | Joint Operating Agreement | Operating Agreement eff. 6-11-1993 b/b Samedan Oil Corporation and British Borneo Exploration Inc., et al |
| Land | 8/1/1993 | Assignment | Assignment of Interest in Oil and Gas Lease (OCS-G 13944) effective date 08/01/93 from Anadarko Petroleum Corporation, Assignor, to Phillips Petroleum Company,Assignee, 50% of its right, title and interest in OCS-G 13944, GI Block 116, South Addition. |
| Land | 8/16/1993 | Joint Operating Agreement | Amendment to Operating Agreement, dated August 16, 1993, between Express Acquisition Company and Torch EnergyAdvisors Inc. |
| Land | 12/30/1993 | OA | WD 90, WD 103 Operating Agreement15 12-30-1993 |

| Land | 1/1/1994 | Joint Operating Agreement | BP EXPLORATION & OIL INC. AND SHELL OFFSHORE INC ET AL |
|------|----------|---------------------------|---------------------------------------------------------|
| Land | 1/1/1994 | Co-Development Agreement and Amendment to Unit Operating Agreement | Co-Development Agreement and Amendment to Unit Operating Agreement originally by and between CNG Producing Company & Columbia Gas Development Corp., et al |
| Land | 1/21/1994 | Unit Operating Agreement | Unit Operating Agreement for the Viosca Knoll .252 Unit, by and between Samedan Oil Corporation, as Operator, and Continental Land & Fur Co., Inc., dated effective January 21,1994. Preferential Right to Purchase - 15 Days. (Section 26.2) |
| Land | 2/1/1994 | JOA | JOperating Agreement eff. 2/1/94 |
| Land | 2/10/1994 | JDA | JOINT DEVELOPMENT AGREEMENT DATED FEBRUARY 10, 1994, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA - TERMINATED BY LETTER AGREEMENT DATED MARCH 10, 1999. |
| Land | 2/11/1994 | Unit Agreement | Unit Agreement For Outer Continental Shelf Exploration, Development and Production Operations on theViosca Knoll 252 Unit designated Contract No. 754394013, by the Minerals Management Service, dated effective February 11, 1994, executed by Samedan Oil Corporation (as Unit Operator) and Chevron U.S.A. Inc.(as a working interest owner). |
| Land | 6/1/1994 | Joint Operating Agreement | OPERATING AGREEMENT DATED JUNE 1, 1994, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. |
| Land | 6/6/1994 | Letter Agreement | Letter Agreement, dated June 6, 1994, whereby Chevron U.S.A. Inc. approves, adopts and.recognizes the Unit Operating Agreement, date January 21, 1994 for the Viosca Knoll 252 Unit |
| Land | 6/9/1994 | Letter Agreement | Letter Agreement, dated June 9, 1994, by and between Chevron U.S.A. Inc., Samedan Oil Corporation and Continental Land & Fur Co., Inc. |
| Land | 6/24/1994 | OA | Operating Agreement eff. 6-24-94 |
| Land | 7/1/1994 | OA | Operating Agreement 7/1/1974 |
| Land | 7/7/1994 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN POGO PRODUCING COMPANY AND COCKRELL OIL AND GAS, L.P., ET AL. |
| Land | 7/15/1994 | Letter Agreement | LETTER AGREEMENT DATED JULY 15, 1994 BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY. |
| Land | 9/1/1994 | UOA | EI 89 Field UOperating Agreement 9/1/94 |
| Land | 9/1/1994 | FARMOUT AGREEMENT | Farmout Agmt Eff. 9-1-94 |
| Land | 10/19/1994 | JDA | Joint Venture Development Agreement, dated October 19,1994',.between Norcen Explorer, Inc and Texaco Exploration and Production, Inc. forming a working-interest unit comprising portions of Ship Sh.Operating Agreement! Block 206 and OCS-G 1523, Ship ShOperating Agreement! Block 207'. |
| Land | 11/16/1994 | JDA | Joint Venture Development Agreement, dated November 16:=1994, between Norcen.Explorer, Inc., Texaco Exploration and1 Production, Inc., Industries, TheiGeorge R. Brown Partnership, JOC Venture, LamarHunt Trust Estate, Mobil Oil Exploration SoProducingSoutheast Inc.,-and Hunt Oil Company, covering all of Blocks 206 and 207 Ship ShOperating Agreement! Area. |
| Land | 11/30/1994 | JDA | Amendment to Joint Venture Development Agreement, dated November'30,1994, between iNorcen Explorer,.'Inc., Texaco Exploration and,Production; Inc., Hunt Industries, The George.R.,Brown Partnership, JOG Venture, Laniar Hunt Trust Estate, Mobil Oil Exploration &«Producing Southeast Inc., and Hunt Oil Company, covering all of Blocks 206 and 207 Ship ShOperating Agreement! Area. |
| Land | 3/28/1995 | Letter Agreement | LETTER AGREEMENT DATED MARCH 28,1995, BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY, ET AL. |
| Land | 4/6/1995 | JDA | Amendment to Joint Venture Development Agreement, dated April 6, 1995, between Norcen Explorer, Inc., Texaco Exploration and Production; Inc., Hunt Industries, The George R. Brown, Partnership; JOC Venture, Lamar Hunt Trust Estate, Mobil Oil Exploration 8i Producing Southeast Inc., and Hunt Oil Company, covering; all of'Blocks.206 and 207 Ship ShOperating Agreement! Area. |
| Land | 5/1/1995 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MAY 1, 1995, BY AND BETWEEN CONOCO INC. AND VASTAR RESOURCES, INC., ET AL. |
| Land | 7/1/1995 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT EFFECTIVE JULY 1, 1995, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, DALEN RESOURCES OIL & GAS CO AND GLOBAL NATURAL RESOURCES CORPORATION OF NEVADA COVERING PORTIONS OF BLOCK 117 AND 118, EUGENE ISLAND, AS AMENDED TO EXCLUDE JOINT DEVELOPMENT ACREAGE. |
| Land | 10/1/1995 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN AMERADA HESS CORPORATION AND VASTAR RESOURCES INC. |
| Land | 11/8/1995 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN FORCENERGY GAS EXPLORATION INC. AND ENERGY INVESTMENTS INC. |
| Land | 12/14/1995 | LOI | REVISED LETTER OF INTENT (FARMOUT) DATED DECEMBER 14, 1995, BY AND BETWEEN ENSERCH EXPLORATION, INC, AND PETROBRAS AMERICA, INC. |
| Land | 2/23/1996 | JOINT DEVELOPMENT AGREEMENT | JOINT DEVELOPMENT AGREEMENT BY AND BETWEEN APACHE CORPORATION, W & T, DEVON, NCX |
| Land | 3/7/1996 | Conditional Letter of Acceptance to Exploration Agreement | Letter Agreement by and between Hardy Oil & Gas USA, Inc., American Borneo Exploration by Hardy Oil & Gas USA, Inc., British Borneo Exploration, Inc. and Zilkha Energy Company |
| Land | 3/7/1996 | JDA | JOINT DEVELOPMENT AREA AGREEMENT DATED MARCH 7, 1996, BY AND BETWEEN LOUISIANA LAND AND EXPLORATION COMPANY AND ENSERCH EXPLORATION, INC, ET AL COVERING PORTIONS OF BLOCKS 107, 108, 118 AND 117, EUGENE ISLAND. |
| Land | 9/1/1996 | OA | JOA BY AND BETWEEN CAIRNE ENERGY USA, INC. AND NORCEN EXPLORER, INC. ET AL. |
| Land | 9/1/1996 | OA | Offshore Operating Agreement 9/1/1996 |
| Land | 9/3/1996 | OA | Operating Agreement (depths below 9000' on VR 392 & VR 408; and all depths VR 407) 9/3/1996 |
| Land | 12/15/1996 | OA | Operating Agreement eff. 12-15-96 b/b Vastar and Union |
| Land | 1/3/1997 | Joint Operating Agreement | Operating Agreement eff. 1-3-1977 b/b Transco Exploration Company, as Operator, and Freeport Oil Company, Energy Development Corporation, Pioneer Production Corporation, et al |
| Land | 1/21/1997 | Assignment | Assignment of Record Title effective date 01/21/97 from Phillips Petroleum Company to SOI. SOI will acquire a 50.0% of 6/6ths interest in OCS-G 13944, GI Block 116, South Addition. |
| Land | 1/21/1997 | PSA | Purchase and Sale Agreement between Phillips Petroleum Company ("Seller") and SOI ("Purchaser"), whereby Phillips reserves a prop0ltionately reduced 10% of 6/6ths Overriding Royalty Interest in OCS-G 13944, effective date 01/21197 |
| Land | 5/1/1997 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective May 1,1997, between GOM Shelf, LLC, and ChevronTexaco and Kerr-McGee Oil & Gas Corporation, amending Exhibit "A" to reflect a new division of interest. |
| Land | 7/7/1997 | Letter Agreement | Letter Agreement, dated July 7, 1997, by and between Chevron U.S.A. Inc. and Samedan Oil Corporation,concerning of the OCSTG 10930 Well #1 in Viosca Knoll Block 251 to a proposed depth of 22,500' and certain earning and assignment provisions, more fully described therein. |
| Land | 10/1/1997 | UOA | MI 623 Unit Operating Agreement |
| Land | 10/1/1997 | UOA | SP 65 G G-1 Unit Res A UOperating Agreement |
| Land | 10/1/1997 | UOA | SP 65 G G-1 Unit Res B UOperating Agreement |
| Land | 10/1/1997 | UOA | SP 65 G2-G3 UOperating Agreement |
| Land | 10/1/1997 | OA | SP 61, 70 Joint Operating Agreement eff. 10-1-97 |
| Land | 12/18/1997 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC. |
| Land | 2/1/1998 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC |
| Land | 2/28/1998 | Letter Agreement | Letter Agreement dated 02/28/98 between CNG Producing Company, et al, and SOI and Anadarko Petroleum Corporation, whereby SOI acquires 50% working interest in GI Block 110. |
| Land | 3/1/1998 | Unit Operating Agreement | UNIT OPERATING AGREEMENT DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION AND SHELL OFFSHORE INC. UNIT NO.754398019 |
| Land | 3/1/1998 | Unit Agreement | UNIT AGREEMENT FOR OUTER CONTINENTAL SHELF EXPLORATION, DEVELOPMENT, AND PRODUCTION OPERATIONS ON THE GRAND ISLE BLOCK 116 UNIT, DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, AND SHELL OFFSORE INC. UNIT NO:754398019 |
| Land | 3/1/1998 | ORRI | Assignment of Overriding Royalty Interest, dated effective 03/01/98, whereby ANADARKO and SOI assigns 1% (of 6/6ths) ORRI to BHP, CNG and Amoco, re: GI 111OCS-G18069, GI 116 OCS-G 13944, GI 110OCS-G13943. |

| | | | |
|---|---|---|---|
| Land | 3/1/1998 | Assignment | Record Title Assignment of Oil and Gas Lease (OCS-G 13943) effective date 03/01/98 whereby BHP Petroleum (GOM) Inc., (Assignor) assigns to SOI and Anadarko Petroleum Corporation (Assignees) a 25% of 6/6ths, equally to Assignees, being of all right, title and interest, covering OCS-G 13943, GI Block 110, South Addition. |
| Land | 3/1/1998 | ORRI | Assignment of Overriding Royalty Interest, dated effective 03/01/98, whereby ANADARKO and SOI assigns 1 % (of 6/6ths) ORRI to BHP, CNG and Amoco, re: GI 110/OCS-G18069, GI 116 OCS-G 13943. |
| Land | 3/2/1998 | LA | LETTER AGREEMENT DATED MARCH 2, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, ET AL, AND AMOCO PRODUCTION COMPANY, ET AL. |
| Land | 3/3/1998 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN WESTPORT OIL AND GAS COMPANY INC. AND BASIN EXPLORATION INC |
| Land | 3/13/1998 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MARCH 13, 1998, BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC. AND VASTAR RESOURCES, INC. |
| Land | 4/1/1998 | JVA | JOINT VENTURE AGREEMENT - SPECTER PROSPECT DATED APRIL 1, 1998 BY AND BETWEEN SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL., as amended. |
| Land | 4/1/1998 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. |
| Land | 4/6/1998 | Letter Agreement | LETTER (ELF OFFERS NIPPON PART OF THE COperating AgreementSTAL INTEREST) DATED APRIL 6, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED |
| Land | 4/6/1998 | JVA | AMENDMENT TO JOINT VENTURE AGREEMENT- ELF ASSUMES COperating AgreementSTAL POSISTION DATED APRIL 6, 1998 ELF EXPLORATION INC. AND COperating AgreementSTAL O&G CORPORATION. |
| Land | 4/7/1998 | Assignment | Assignment of Record Title Interest, dated 4/7/98, whereby SOI assigns 12.5% Record Title to OBI regarding GI 116, OCS-G 13944. |
| Land | 4/10/1998 | FO | FARMOUT AGREEMENT DATED APRIL 10, 1998, BY AND BETWEEN COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 4/13/1998 | Letter Agreement | LETTER- NIPPON TAKES ITS SHARE OF COperating AgreementSTAL F/O & SHARE OF ELF'S INTEREST DATED APRIL 13, 1998, BY AND BETWEEN ELF EXPLORATION INC., COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 7/1/1998 | Farmout Agreement | FO by and between Energy Development Corp & Juniper Energy Kp |
| Land | 7/12/1998 | Joint Operating Agreement | JOINT OPERATING AGREEMENT DATED JULY 12, 1998 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 11/5/1998 | JVA | ADDENDUM TO JOINT VENTURE AGREEMENT DATED NOVEMBER 5, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| Land | 2/11/1999 | OA | Operating Agreement eff. 2-11-99 |
| Land | 6/1/1999 | AREA OF MUTUAL INTEREST | AREA OF MUTUAL INTEREST BY AND BETWEEN OCEAN ENERGY INC. AND DUKE ENERGY HYDROCARBONS, LLC |
| Land | 8/5/1999 | EA | EXPLORATION AGREEMENT DATED AUGUST 5, 1999 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 11/18/1999 | Letter Agreement | Letter Agreement, dated November. 18, 1999, by and between Chevron U.S.A. tic. and Samedan Oil CorporatioIri being a COPAS Amendment to Unit Operating Agreement for the Viosca Knoll 252 Unit concerning Subpart (L) of Section m. "Overhead", andimade effective January 1,2000. |
| Land | 12/1/1999 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN FORCENERGY INC. AND MAXO OFFSHORE EXPLORATION, INC., ET AL. |
| Land | 11/1/1980 | Joint Operating Agreement | Operating Agreement, Main Pass Area, Blocks 77 and 78, Gulf of Meidco, dated effective November 1, 1980,between Gulf Oil Corporation, Texoma Production'Company, The Anschutz Corporation, NICOR Exploration Company, and The Superior Oil Company, covering the federal Oil and Gas Lease OCS-G 4481, Blocks 77+and78 Main Pass Area, Offshore Louisiana, a true copy of the original is recorded in C.O.B. 592, Folio 658, Plaquemines Parish, Louisiana. |
| Land | 12/15/1999 | Letter Agreement | Letter Agreement, dated December 15, 1999, between Apache Corporation, Chevron U.S.A. Production Company, Kelley Oil Corporation, Key Production Company, Mobil Exploration & Producing U.S. Inc. and Sabco Oil and Gas Corporation, regarding the OCS-G 4481 #A-23 Well, Main Pass Block 77, Main Pass Block 151 Field, Offshore. LA. Note: only have Key's executed cop |
| Land | 1/1/2000 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN OCEAN ENERGY, INC., MCMORAN OIL & GAS COMPANY, ET AL. |
| Land | 1/31/2000 | FO | Farmout Letter Agreement 1/31/2000 |
| Land | 2/7/2000 | OA | Operating Agreement eff. 2-7-00 |
| Land | 5/1/2000 | OA | Operating Agreement eff. 5/1/00 |
| Land | 8/4/2000 | FO | Farmout Agreement 8/4/2000 |
| Land | 11/17/2000 | PA | Participation Agreement and Operating Agreement 11-17-00 b/b Samedan and Stone |
| Land | 12/8/2000 | Letter Agreement | Letter Agreement, dated December 8, 2000 (effective December 1, 2000), by and between Chevron U.S.A. Inc and Williams Field Services - Gulf COperating Agreementst Company, L.P., whereby Chevron U.S.A. Inc. consents to an assignment by Williams Field Services - Gulf COperating Agreementstst Company, L.P., to its affiliate, Williams Mobile Bay Producer Services, L.L.C. |
| Land | 1/11/2001 | LETTER AGREEMENT | Letter, dated January 11, 2001, from the United States Department of the Interior, Minerals Management Servceto Chevron U.S.A. Inc., approving the initial participating area plat and Exhibit C for the Viosca Knoll 252 Unit,Agreement No. 754394013, effective November 8, 2000 |
| Land | 6/1/2001 | OA | Offshore Operating Agreement 6/1/2001 |
| Land | 6/15/2001 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND RWE PERTROLEUM COMPANY ET AL. |
| Land | 6/15/2001 | JDA | JOINT DEVELOPMENT AGREEMENT EFFECTIVE JUNE 15, 2001, BY AND BETWEEN RME PETROLEUM COMPANY AND W&T OFFSHORE, INC, "SM280 OWNERS" AND RME ET AL "SM 281 OWNERS" AND THAT CERTAIN JOINT OPERATING AGREEMENT ATTACHED THERETO AS EXHIBIT "B". |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 66 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering OCS-G 2282, South Marsh Island Block 132. |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 135 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 136 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 137 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 149 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 150 |
| Land | 10/1/2001 | OA | Operating Agreement eff. 10-1-01 b/b Union and Forest |
| Land | 10/1/2001 | OA | Operating Agreement eff. 10-1-01 b/b Union and Forest |
| Land | 11/3/2001 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| Land | 1/9/2002 | Letter Agreement | Letter, dated January 9, 2002, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit C for the Viosca Knoll 252 Unit, Agreement No. 754394b73, effective December 1, 2001. |
| Land | 3/1/2002 | FO | Farmout Agmt. eff. 3-1-2002 b/b Samedan Oil Corporation (Farmor) and Pure Resources, L.P. (Farmee) |
| Land | 8/23/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc., as Operator, and Spinnaker Exploration Company, L.L.C., as Non-Operator |
| Land | 8/30/2002 | Assignment | Assignment of Record Title Interest, approved 8/30/2002, whereby SOI assigns unto OBI, covering GI 110 OCS-G 13943. |
| Land | 9/20/2002 | Assignment | Assignment of Operating Rights, approved 9/20/2002, whereby SOI assigns unto OEI, covering GI 110, OCS-G 13943. |
| Land | 12/18/2002 | Pooling Agreement | POOLING AGREEMENT DATED DECEMBER 18, 2002, BY AND BETWEEN THE STATE OF TEXAS AND SPINNAKER EXPLORATION COMPANY, L.L.C. |

| | | | |
|---|---|---|---|
| Land | 12/20/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC |
| Land | 3/31/2003 | Letter Agreement | Letter Agreement, dated March 31, 2003, between Chevron U.S.A. Inc., Sabco Oil and Gas Corporation, Apache Corporation, ExxonMobil Production Company, Key Production Company and Contour Energy Company regarding Second Opportunity to Participate - Election to Acquire*Non-Participating Interest, in the MP77 OCS-G 4481 A-6 TTPG, Project No. UWGHP-R3011, Cost Center UCP170500, Main Pass Block 77. Key Production Company election. |
| Land | 5/1/2003 | Joint Operating Agreement | Offshore Operating Agreement dated May 1, 2003 between Magnum Hunter Production,Inc, and Westport Resources Corporation et al |
| Land | 5/19/2003 | JOA | JOperating Agreement eff. 5/19/03 |
| Land | 5/19/2003 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between FIELDWOOD ENERGY OFFSHORE LLC(SUCCESSOR TO GRYPHON EXPLORATION COMPANY) ANDAPACHE CORPORATION (SUCCESSOR TO WESTPORT EXPLORATION COMPANY, L.L.C.) |
| Land | 6/9/2003 | PA | Participation Agmt. eff. 6-9-2003 b/b Samedan Oil Corporation and CLK Company |
| Land | 8/7/2003 | PA | Exploration Participation Agreement, dated August 7, 2003, by and between Chevron U.S.A. Inc. and Westport Resources Corporation, as amended, concerning certain Offshore Continental Shelf properties, all as is more fully, provided'for and described therein. |
| Land | 9/25/2003 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between Apache Corporation and Chevron USA |
| Land | 1/1/2004 | FO | FARMOUT AGREEMENT DATED JANUARY 21, 2004, BY AND BETWEEN CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. |
| Land | 1/7/2004 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between Apache Corporation and Shell Offshore et al |
| Land | 2/25/2004 | FO | Farmout Agmt eff. 2-25-2004 b/b Forest Oil Corporation, Texas Standard Oil Company, Noble Energy, Inc. and Pioneer Natural Resources USA, Inc., as Farmors, and Houston Energy, L.P., as Farmee |
| Land | 2/25/2004 | Joint Operating Agreement | Ratification and Amdt. Of Operating Agreement eff. 2-25-2004 b/b Forest Oil Corporation et al |
| Land | 3/18/2004 | PSA | PSA dated 3-18-04 but eff. 9-1-2003 b/b Noble Energy, Inc. and Northstar Gulfsands, LLC |
| Land | 3/25/2004 | JVA | Amendment to Joint Venture Development Agreement, dated. March 25, 2004 between Anadarko E Bt P Company LP: Chevron U.S.A.; Hunt Oil Company, Hunt Petroleum, the George,R. Brown Partnership LP, Offshore Investment ,Cov and the'Lamar Hunt Trust Estate,, whereby the Unit 'was expanded |
| Land | 4/1/2004 | Joint Operating Agreement | AMENDMENT OF JOINT OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 4/2/2004 | Divestiture | ASSET SALE AGREEMENT DATED APRIL 2, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 4/19/2004 | FO | Farmout Agreement by and between Newfield Exploration Company and Westport Resources Company, as Owners of WC 73, and Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC as Owners of WC 72 |
| Land | 5/28/2004 | Letter Agreement | Letter, dated May 28, 2004, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit Cfor theViosca Knoll 252 Unit, Agreement No. 754394013, effective December 1, 2003. |
| Land | 6/1/2004 | OA | Operating Agreement eff. 6-1-04 by and between Newfield Exploration Co & Triumph Energy LLC |
| Land | 6/29/2004 | Letter Agreement | LETTER AGREEMENT DATED JUNE 29, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. |
| Land | 7/20/2004 | PHA | PHA eff. 7-20-2004 b/b Forest Oil Corporation, as operator and co-owner of the WD 34 A PF and Red Willow Offshore, LLC, et al, as producers |
| Land | 7/27/2004 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Corporation and Applied Drilling Technology, Inc. |
| Land | 8/1/2004 | Unit Operating Agreement | Amendment and Supplement to?Unit Operating Agreement for the Viosca Knoll 252 Unit, dated August 1,2004, by and between Chevron U.S.A. Inc. and-Noble Energy, Inc |
| Land | 8/1/2004 | OA | Operating Agreement 8/1/04 |
| Land | 8/11/2004 | Notice | NOTICE OF ASSIGNMENT DATED AUGUST 11, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 8/24/2004 | Letter Agreement | Letter Agreement dated August 24, 2004, between Chevron U.S.A. Inc. and Williams Field Services- Gulf COperating Agreementst Company, L.P. |
| Land | 9/7/2004 | Settlement and Release Agreement | SETTLEMENT AND RELEASE AGREEMENT DATED SEPTEMBER 7, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 10/1/2004 | OA | Operating Agreement eff. 10-1-04 |
| Land | 10/6/2004 | LOI | LETTER OF INTENT DATED OCTOBER 6, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 10/7/2004 | EA | EXPLORATION AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 10/14/2004 | Letter Agreement | Letter Agreement, dated October. 14, 2004, between Chevron U.S.A. Inc and Noble Energy, Inc. concerning Production Handling Agreement Terin's, Viosca Knoll 251 "A' PlatformvCadillacProspect and any Other Future Non-unit Production |
| Land | 10/28/2004 | PSA | PSA dated 10-28-2004 but eff. 7-1-2004 B/B Eni Deepwater LLC and Northstar Gulfsands, LLC |
| Land | 11/1/2004 | PA | Exploration Participation Agreement, dated November 1, 2004, by and between Chevron U.S.A. Inc. and Newfield Exploration Company, concerning certain Offshore Continental Shelf properties, all as is more fully provided for and described therein |
| Land | 11/18/2004 | Letter Agreement | Letter Agreement, dated November 18; 2004, between Chevron U.S.A. Inc. and Newfield Exploration Company, amending'the;terms of Letter Agreement• dated October 14, 2004, between Chevron U.S.A. Inc. and Noble Energy, Inc. concerning Production Handling Agreement Terms, Viosca knoll.251 "A" Platform, Cadillac Prospect and any Other Future Non-unit Production |
| Land | 1/1/2005 | VUA | VOLUNTARY UNIT AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY. |
| Land | 1/1/2005 | Operating Agreement | Operating Agreement 1-1-05 by an between Maritech and Arena |
| Land | 1/25/2005 | Letter Agreement | Letter Agreement for the Operation and Ownership Transfer of Certain South Marsh Island Block 66 Facilities, dated effective January 25, 2005, between Transcontinental Gas Pipeline Corporation,;as Seller> and Union Oil "Company-of California and Forest Oil Corporation, as Purchasers, for facilities and pipeline associated with "A" and "C" Platforms'. NEVER CONSOMATED. |
| Land | 2/1/2005 | Letter Agreement | Letter Agreement, dated February 1, 2005, between Union Oil Company of California and Forest Oil , covering OCS-G 2589, South Marsh Island Block 137, andthe Unit Operating Agreement for South Marsh Island Block 137 Unit, identified as Unit Agreement No. 14-08-001-20237, replacing and superseding, effective October 1, 2001, that certain Unit Operating Agreement dated January 1,1989 between Conoco Inc., Texaco Producing Inc. and CanadianOXY Offshore Production Company. |
| Land | 3/28/2005 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN GOM SHELF LLC BY APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION |
| Land | 5/27/2005 | Joint Operating Agreement | Operating Agmt eff. 5-27-2005 b/b BP Exploration & Production Inc. and EOG Resources, Inc. |
| Land | 5/28/2005 | PA | Participation Agmt eff. 5-28-2005 b/b BP Exploration & Production Inc. and EOG Resources, Inc. |
| Land | 8/2/2005 | PSA | PURCHASE AND SALE AGREEMENT DATED AUGUST 2, 2005, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 10/25/2005 | OA | Operating Agreement 10-25-05 |
| Land | 11/1/2005 | JDA | JOINT DEVELOPMENT AGREEMENT BY AND BETWEEN MERIT ENERGY COMPANY AND STONE ENERGY CORPORATION ET AL. |
| Land | 11/1/2005 | Partition and Redemption Agreement | Partition and Redemption Agmt. dated 11-1-2005 b/b Northstar Gulfsands, LLC and Gulfsands Petroleum USA, Inc. |
| Land | 11/7/2005 | Unit Agreement | Amendment to Unit Agreement, Viosca Knoll Block 252 Unit, Contract No. 754394013, dated November 7, 2005 (effective November 1, 2005) as approved by the Minerals Management Service by letter dated January 10,2007, but made effective November 8, 2006, replacing Exhibits "A", "B" and "C" and Article 13.1 in its entirety (reduction of Unit Area) |
| Land | 12/20/2005 | Letter Agreement | Letter Agreement, dated December 20, 2005, between Noble Energy, Inc. and Ghevron U.S.A. Inc., being a consent to,disclose confidential data |
| Land | 2/22/2006 | FO | Farmout Proposal Letter Agreement between The Houston Exploration Company and Noble Energy Inc. 2/22/2006 |

Exhibit I-I

| | | | |
|---|---|---|---|
| Land | 3/1/2006 | ABOS | ABOS eff. 3-1-2006 b/b Noble Energy, Inc. as Assignor and Coldren Resources LP as Assignee. |
| Land | 4/4/2006 | Joint Operating Agreement | STONE ENERGY CORPORATION AND GOM SHELF LLC, ET AL |
| Land | 6/28/2006 | OA | JOperating Agreement eff. 6-28-86 |
| Land | 7/24/2006 | OA | Operating Agreement eff. 7-24-06 |
| Land | 10/17/2006 | JOA | Operating Agreement eff. 10-17-06 |
| Land | 10/30/2006 | FO | Farmout Agreement, dated effective October 30, 2006, between Chevron U.S.A. Inc., as-Farmor, and Mariner Energy Resources, Inc., as farmee, covering 5/2 of SM 149 (OCS-G 2592) and 5/2 of SM 150 (005-016325) and limited to depths from the surface to the stratigraphic equivalent of 100' below the deepest depth drilled in the #1 Well as proposed. |
| Land | 1/10/2007 | Letter Agreement | Letter dated January 10, 2007, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision Exhibits "A", "B" and "C" reflecting a change in the Unit Area due to contraction provisions in the Viosca Knoll 252 Unit, Agreement No. 754394013. |
| Land | 2/28/2007 | FO | FO eff. 2/28/07 by and between Newfield and Apache |
| Land | 4/3/2007 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Coporation, Samson Contour Energy and Shell Offshore |
| Land | 5/17/2007 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN DEVON ENERGY PRODUCTION COMPANY, L.P. AND HUNT PETROLEUM CORPORATION, ET AL. |
| Land | 9/21/2007 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand SENECA RESOURCES CORPORATION |
| Land | 12/31/2007 | PSA | PURCHASE AND SALE AGREEMENT BY AND BETWEEN GOM SHELF LLC and WILD WELL CONTROL INC. |
| Land | 12/31/2007 | Company Agreement | Company Agreement, dated effective December 31, 2007, between BP America Production Company,Chevron USA Inc. and GOM Shelf LLC, amending the Operating Agreements for certain jointly-owned Facilities and Wells in GI 40, 41, 47, 48 and WD 69 and 70 damaged by Hurricane Katrina. |
| Land | 12/31/2007 | PSA | Agreement for Purchase and Sale, effective December 31, 2007, between Chevron U.S.A. Inc., as Seller, and Wild Well Control, Inc., as Buyer, conveying Chevron's undivided interest in certain Facilities and Wells in GI 40, 41, 47, 48 and WD 69 and 70 to Wild Well Control for the purpose of decommissioning |
| Land | 5/1/2008 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN MARINER ENERGY, INC. AND APACHE CORPORATION |
| Land | 7/7/2008 | Acquisition | Stock Purchase Agmt dated July 7, 2008 b/b Northstar E&P, LP and Dynamic Offshore Resources, LLC |
| Land | 7/7/2008 | Letter Agreement | VR 332 AS Letter Agmt dated July 7, 2008 b/b Northstar Interests, L.C. and Dynamic Offshore Resources, LLC |
| LAND | 7/15/2008 | Participation Agreement | ST 311 Participation Agreement-Walter & APA-7-15-2008 |
| LAND | 7/15/2008 | Assignment of ORRI | ST 311 Walter ORRI Assign. |
| Land | 8/27/2008 | FO | FARMOUT AGREEMENT BY AND BETWEEN PIESCES ENERGY LLC AND APACHE CORPORATION |
| Land | 12/8/2008 | Platform Sale | Platform Sale Agreement, WD 94 G Auxiliary Platform, dated-effective December 8, 2008 between BP America'Production Company and GOM Shelf LLC, as-sellers, and Chevron USA Inc., as buyer. |
| Land | 4/30/2009 | OA | Operating Agreement eff. 4-30-09 Chevron USA, et al |
| Land | 6/1/2009 | FO | Farmout Agreement dated effective June 1, 2009, between Chevron U.S.A. Inc., and Phoenix Exploration Company, LP and Challenger Minerals Inc., covering OCS-G 32267, Chandeleur Block 42 and OCS-G 32268, Chandeleur Block 43, INSOFAR AND ONLY INSOFAR as they cover those depths from the surface to one hundred feet (100') below the deepest depth drilled and logged in the earning well. |
| Land | 6/1/2009 | OA | JOperating Agreement CA 42/43 |
| Land | 6/1/2009 | OA | Operating Agreement eff. 6-1-09 Chevron USA, et al |
| Land | 8/7/2009 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Corporaiton and Houston Energy, L.P. |
| Land | 12/14/2009 | OPTION AGREEMENT | OPTION AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 2/1/2010 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 2/25/2010 | OA | Operating Agreement eff. 2-25-10 |
| Land | 4/8/2010 | Letter Agreement | Letter Agreement, dated 4/8/2010 between Shell Offshore Inc., Apache Corporation and Nippon Oil Exploration U.S.A. Limited amending the Unit Operating Agreement, dated March 1, 1998. |
| Land | 6/1/2010 | PA | Approval of Revision of Participation Area, effective June 1, 2010, whereby the Grand Isle CATCO Unit was revised. |
| Land | 6/1/2010 | ABOS | Bill of Sale and Conveyance, effective June 1, 2010, whereby Chevron U.S.A. Inc. transferred certain Interests in Grand Isle Block 46, OCS-G 00132 N-I well/API No. 17-717-40959-00, certain interests in Grand Isle Block 46, OCS-G 00132 Platform, the line fill as of the effective date, and the Minerals Management Segment Number 15732 Pipeline as well as its associated Right of Way, equipment and facilities to GOM Shelf |
| Land | 7/23/2010 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Corporaoion and W & T Offshore Inc. |
| LAND | 9/1/2010 | OCS Exploration Venture | mp-295-Joint Venture Letter Agreement |
| Land | 9/14/2010 | Letter Agreement | CHEVRON USA INC. AND GOM SHELF LLC |
| Land | 2/1/2011 | ABOS | Assignment and Conveyance, dated effective February 1, 2011, between Harrigan Energy Partners, Inc.,Assignor, and Chevron U.S.A. Inc^ as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities; pipelines, equipment, contracts., etc., all as more fully described therein. |
| Land | 3/15/2011 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATIONand STONE ENERGY OFFSHORE LLC |
| Land | 4/21/2011 | PSA | Asset Purchase and Sale Agreement, dated April 21, 2011, but made effective February 1, 2011, between SabcoOil and Gas Corporation, as Seller, and Chevron U.S.A. Inc., as Purchaser, whereby Purchaser acquired 0.63149% of 0.83932% of 8/8ths of Seller's right title and interest in the Lease, together with Seller's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein. |
| Land | 4/21/2011 | ABOS | Assignment and BUI of.Sale, dated April 21, 2011, but made effective February 1, 2011, between Sabco Oil and Gas Corporation, as Assignor/and Chevron U.S.A. Inc., as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as.more fully described therein |
| Land | 8/1/2011 | ABOS | OS eff. 8-1-2011 b/b XTO Offshore Inc. ("Assingor") and Dynamic Offshore Resources, LLC ("Assignee") |
| Land | 8/25/2011 | PARTICIPATION AGREEMENT | PARTICIPATION AGREEMENT b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| LAND | 9/20/2011 | Slot and Well Bore Acquisition | MP 296 MP 296 B-19 Slot, Wellbore Acquisition Agreement |
| Land | 11/3/2011 | Letter Agreement | Letter Agreement dated November 3, 2011 evidencing Chevron U.S.A. Inc.'s consent to an assignment of interest from Phoenix Exploration Company LP in that certain Farmout Agreement dated and made effective June 1, 2009, to Apache Corporation and Castex Offshore, Inc. |
| Land | 11/3/2011 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| LAND | 11/17/2011 | Assignment and Bill of Sale | MP 295, MP 296, MP 303, MP 304, MP 311, MP 312, MP 313 ABOS Stone to EPL 11-1-2011 |
| LAND | 12/1/2011 | Participation Agreement | ST 311 Participation Agreement-Walter & APA & Castex-12-1-2011 |
| LAND | 12/15/2011 | Slot and Well Bore Acquisition | MP 296 MP 296 B19 ST2 Slot & Well Bore Acq Agmt |
| Land | 4/1/2012 | PA | Approval of. Revision of Participation Area, effective April 1, 2012, whereby the Grand, Isle CATCO Unit was revised. |
| Land | 5/1/2012 | CONDENSATE TRANSPORT & SEPARATION AGREEMENT | CONDENSATE TRANSPORT & SEPARATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| Land | 5/2/2012 | Letter Agreement | Letter, dated May 2, 2012 between Newfield Exploration Company and Chevron U.S.A. Inc., being a waiver of confidentiality provision grant by Chevron in favor of Newfield; |

Exhibit I-F

| | | | |
|---|---|---|---|
| Land | 6/1/2012 | PSA | Ratification of Purchase and Sale Agreement by Holders of Preferential Right to Purchase, dated effective June I , 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc. and Dynamic Offshore Resources, LLC, as Preferential Right Purchasers, affecting that certain Purchase and Sale Agreement, dated June 27, 2012 but made effective June 1, 2012 between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc., as Buyer. |
| Land | 6/1/2012 | ABOS | Conveyance, Assignment and Bill of Sale, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Assignor, and Chevron U.S.A. be. and Dynamic Offshore Resources, LLC, as Assignees, covering an undivided 0.83922% right, title and interest in certain property described in Exhibit "A" attached thereto, assigning 75.247% thereof to Chevron (0.63149% net) and 24.753% thereof to Dynamic (0.207.73%.net). |
| Land | 6/27/2012 | PSA | Purchase and Sale Agreement, dated June 27, 2012 but made.effective June I , 2012, between Key Production Company, Inc., as'Seller, and Chevron U.S.A. Inc., as Buyer, covering all of Seller's right, title and interest in that certain Oil & Gas Lease bearing Serial No. OCS-G 448,1, ), together with Seller's interest in certain wells, facilities, pipelines, equipment contracts, etc, all as more.fully described therein. |
| Land | 7/9/2012 | Joint Operating Agreement | Offshore Operating Agreement (Ship ShOperating Agreement 176 Prospect OCS-G 33646) Originally by and between Hall-Houston Exploration IV, L.p, as Operator and GOM Offshore Exploration I, LLC and Apache Corporation as Non-Operators |
| Land | 8/1/2012 | Throughput Capacity Lease Agreement | Fieldwood leases capacity to Arena for Barnacle Pipeline |
| Land | 9/17/2012 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN APACHE CORPORATION AND WALTER OIL & GAS CORPORATION |
| LAND | 12/20/2012 | Farmout Agreement Extension Letter | MP 295 Extension 12-20-12 |
| Land | 2/1/2013 | AREA OF MUTUAL INTEREST | AREA OF MUTUAL INTEREST AGREEMENT BY AND BETWEEN APACHE CORPORATION AND ENERGY XXI GOM, LLC |
| Land | 2/1/2013 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATION AND ENERGY XXI GOM, LLC |
| Land | 2/1/2013 | Data Agreement | Data Agreement effective 2-1-2013 by and between Fieldwood Energy LLC, GOM Shelf LLC, Apache Corporation and EXXI |
| LAND | 2/1/2013 | Memorandum of OA and Financing Statement | Primary Term Lands - MOA Recorded 01-2015 Revision |
| LAND | 2/1/2013 | Exploration Agreement | MP 296 EXXI Exploration Agreement\Exploration Agreement Apache & Energy XXI 2-1-2013 with Exhibits (less B) |
| LAND | 2/22/2013 | Exploration Agreement Letter | Heron Prospect (MP 295) Letter of Agreement 2-22-13 |
| Land | 3/15/2013 | Exploration Venture | Exploration Venture for portions of VR 271 SM 87 by and between Fieldwood Energy Offshore LLC, Apache Corporation and Pisces Energy LLC |
| Land | 6/1/2013 | OA | Operating Agreement eff. 6-1-13 Castex, et al |
| Land | 7/1/2013 | Acquisition | PURCHASE AND SALE AGREEMENT by and among APACHE CORPORATION,APACHE SHELF, INC., and APACHE DEEPWATER LLC collectively as the Sellers, and FIELDWOOD ENERGY LLCas Buyer and GOM SHELF LLC Dated as of July 18, 2013 |
| Land | 7/1/2013 | Acquisition | Acquistion by and between Fieldwood Energy LLC and Callon Petroleum Operating Co. |
| Land | 7/1/2013 | MOA | EI 136 Recorded Memorandum of Operating Agreement and Financing Statement |
| Land | 7/1/2013 | Joint Operating Agreement | EI 136 Operating Agreement covering depths below 19,135' SSTVD |
| Land | 7/1/2013 | Joint Operating Agreement | JOperating Agreement covering OCS-G 32264 MP 302 |
| Land | 7/1/2013 | Stipulation and Corrective Assignment | Stipulates the interest held by Apache Offshore Petroleum Limited Partnership, Fieldwood Energy LLC and Third parties |
| Land | 7/1/2013 | Assignment of Federal OCS Pipeline Right of Way | Assignment of Pipeline ROW Apache to Fieldwood LLC |
| Land | 9/9/2013 | Amendment No. 1 Bar Prospect Offshore Operating Agreement | Amends certain JOperating Agreement dated 02/01/2013 |
| Land | 9/30/2013 | Acquisition | Purchased GOM Shelf as a company from Apache |
| Land | 10/7/2013 | election Letter Agreement PL 13 007 ST2 WeLLC | Election Letter Agreement by and between Fieldwood Energy LLC and Enven Energy Ventures |
| LAND | 10/16/2013 | Fabrication Agreement | ST 311 A Platform Construction Contract Gulf Island LLC and Walter Oil and Gas dtd 10-16-13 |
| Land | 10/25/2013 | Letter Agreement | Letter Agreement dated October 25, 2013 evidencing Chevron U.S.A. Inc.'s consent to an assignment of interest from Apache Corporation in that-certain Farmout Agreement dated and made effective June 1, 2009, to Fieldwood Energy LLc. |
| Land | 12/1/2013 | Acquisition | Equity Purchase Agreement between Sandridge Energy, Inc., Sandridge Holdings, Inc. and Fieldwood Energy LLC: Fieldwood purchased all companies listed with their assets which included Offshore and SandRidge Legacy South Texas and South Louisiana assets. |
| Land | 12/4/2013 | Extension Request - Slot Rental Agreement | by and between Fieldwood Energy LLC, GOM Shelf LLC and EPL Oil & Gas, LLC - Amends certain Slot Rental Agreement dated 12/26/2012 |
| Land | 12/4/2013 | Extension Request - Slot Rental Agreement | by and between Fieldwood Energy LLC, GOM Shelf LLC and Apache Shelf Exploration LLC - Amends certain Slot Rental Agreement dated 12/26/2012 |
| Land | 12/16/2013 | Joint Operating Agreement | TANA EXPLORATION COMPANY LLC AND APACHE CORPORATION |
| Land | 12/28/2013 | Well Proposal | Letter proposing well B-19 MP 302 well by and between Fieldwood Energy LLC, GOM Shelf LLC, Apache Corporation and Apache Shelf Exploration LLC |
| Land | 12/30/2013 | Withdrawal Agreement | Withdrawal Agreement by and between Fieldwood Energy LLC and Chevron U.S.A. Inc. |
| Land | 1/10/2014 | Prospect Proposal | Gilligan & Bingo: Stone offering of prospects to Fieldwood Fieldwood election |
| Land | 1/10/2014 | Prospect Proposal | Gilligan & Bingo: Stone offering of prospects to Fieldwood Fieldwood election |
| Land | 2/5/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldowood's election |
| Land | 2/5/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldowood's election |
| Land | 3/1/2014 | Acquisition | by and between Fieldwood Energy Offshore LLC and Black Elk Energy Offshore Operations, LLC: Leases where Fieldwood was the operator and Black Elk held interest. Exception is ST 53 where Black Elk was the Operator. |
| LAND | 3/1/2014 | Contract Operating Agreement | ST 320 Contract Operating Agreement dtd 3-1-14 |
| Land | 3/13/2014 | Casing Point Election Letter MP 302 B-19 Well | by and between Fieldwood Energy LLC, GOM Shelf LLC and Apache Shelf Exploration LLC: Fieldwood to run casing and election by Apache |
| Land | 3/13/2014 | Contract Operations Agreement | Pursuant to change in operatorship per that PSA btw SandRidge and Black Elk |
| Land | 3/24/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldowood's election |
| Land | 3/24/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldowood's election |
| Land | 3/28/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldowood's election |
| Land | 3/28/2014 | Prospect Proposal | Proposal Amendment and Various requests for extension from Stone and election by Fieldwood |
| Land | 4/1/2014 | FO | Farmout Agreement: OCS-G 13576; East Cameron Block 71 (Limited to the NE/4 of the block and a Contract Area created to include the Farmout Area and EC 58 S/2) |
| Land | 4/16/2014 | Settlement Agreement and Release | Settlement Agreementa nd Release - SS 198/VR 369/VR 408/ SP 8/13 |
| Land | 4/23/2014 | Letters of No Objection | Letters of No Objection, Lease & Pipeline Crossings: Appies to ST 276, 296 & 311, includes indemnification |
| Land | 4/28/2014 | Letter Agreement | Letter Agreement, dated April 28, 2014, between Chevron U.S.A. Inc. and Samson Contour Energy E&P, LLC, regarding Main Pass 77 OII Imbalance Claim |
| Land | 5/2/2014 | Letter Agreement Well Proposal | Set forth the agreement between Apache Shelf and Fieldwood for the drilling of the EI 126 A-5 well |
| Land | 6/1/2014 | Acquisition | by and between Fieldwood Energy Offshore LLC, NW Pipeline, Inc. and Northwestern Mutual Life Ins. Co.HIPS 13-III |
| LAND | 6/1/2014 | Memorandum of OA and Financing Statement | Heron Prospect MOA amd. No.2 6-1-14 |
| Land | 7/2/2014 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and Castex Offshore, Inc. : Fieldwood Divestiture of HI 116 Platform and pipelines |
| Land | 7/21/2014 | Contract Operation Agreement | Castex is named as operator of HI 167 Platform |
| Land | 8/7/2014 | Recompletion Proposal Election | MP 259 A-7 Recompletion Proposal Election: McMoRan elects not to participate in A-7 welll to Tex W-5 Sand |
| Land | 8/15/2014 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and W & T Offshore, Inc. : Assignment of interest in HI 129#16 well |
| Land | 8/15/2014 | Letter Agreement | by and between Fieldwood Energy LLC and W & T Offshore, Inc. : RE: High Island 129 No. 12 Well Assignment |
| Land | 10/1/2014 | Divestiture | by and between Fieldwood Energy Offshore LLC, Renaissance Offshore LLC and Apache Corporation: Assignment of Contractual interest Main Pass 76 SL 13287 #1 Well |
| Land | 10/15/2014 | Release and Settlment Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, Prime Offshore L.L.C., Tammany Oil and Gas LLC and Castex Offshore, Inc. |

Exhibit I-I

| Land | 11/5/2014 | Request for extnesion of Timely Operations | MP 259 A-7 Recompletion Request for extnesion of Timely Operations: Request timely operations extension for propoed A-7 well |
|---|---|---|---|
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 1/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC UNOCAL, and Chevron U.S.A. Inc. : GOM NOJV - Grand Isle/West Delta etc. |
| Land | 1/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC and Shell Offshore Inc.: Hickory Unit - GI 110/116 |
| LAND | 1/13/2015 | Letter Agreement | Heron Prospect (MP 295) Letter Agent 1-13-15 |
| Land | 4/1/2015 | Assignment of Operating Rights Interest in Oil & Gas Lease | by and between Fieldwood Energy Offshore LLC, Peregrine Oil & Gas, LLC RTR Fund I, L.P, and Hall-Houston Exploration II, L.P.: Assignment of Operating Rights Interest in Oil & Gas Lease - GA 151 Operating Rights |
| LAND | 4/1/2015 | Gas Dedication and Gathering Agreement | ST 311 Gas Dedication and Gathering Agreement eff 04012015 |
| LAND | 4/1/2015 | Liquids Separation, Handling, Stabilization and Redelivery Agreement | ST 311 Liquids Separation, Handling, Stabilization and Redeliv Agreement eff 04012015 |
| LAND | 4/1/2015 | Liquids Transportation Agreement | ST 311 Liquids Transportation Agreement eff 04012015 |
| Land | 4/2/2015 | Consent to Disclose Confidential Information | by and between Fieldwood Energy LLC, Bandon Oil and Gas, LP and Chevron U.S.A. Inc.: VK 252 Unit Area |
| Land | 4/30/2015 | Settlement Agreement and Release | by and between Fieldwood Energy Offshore LLC, Black Elk Energy Offshore Operations LLC and Northstar Offshore Group, LLC: |
| Land | 5/1/2015 | Divestiture | by and between Fieldwood Energy LLC and Discvovery Producer Services LLC: ST 311 Pipeline Divestiture |
| Land | 5/14/2015 | Second Amendment to the Participation Agreement | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C.: Second Amendment to the Participation Agreement OCS-G0786, South Marsh Island Area, Block 48 Offshore Federal Waters |
| Land | 6/15/2015 | Election and Designation of Successor Operator Letter | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Wichita Partnership, Ltd., W & T Energy VI, LLC and W&T Offshore, L.L.C.: In furtherance of April 14, 2015 letter Areana earned assignment from Chevron Chevron to resign as operator |
| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |
| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |
| Land | 6/29/2015 | Settlement | by and between Fieldwood Energy LLC and Discvovery Producer Services LLC: ST 311 Pipeline Divestiture |
| Land | 6/30/2015 | Consent to Assign | Consent to Assign ROW - Martin O. Miller II, LLC Sec. 11, T15S-R6W Cameron Parish LA |
| Land | 7/1/2015 | Settlement Agreement and Release | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI Petroleum US LLC and ENI US Operating Co. Inc.: SS.249 D-5 RIG Incident |
| Land | 7/2/2015 | Bill of Sale, Assignment and Assumption Agreement | By and between Walter Oil & Gas Corporation, Castex Offshore, Inc., Fieldwood Energy LLC and Apache Shelf Exploration LLC as "Seller" and Discovery Producer Services LLC as "Buyer" |
| LAND | 7/10/2015 | Termination of Farmout Agreement | MP 295 9-18-2012 Farmout Termination Ltr dtd 7-10-15 |
| Land | 8/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc. : MP 77, 78 and VK 251, 252, 340  Fields |
| Land | 8/3/2015 | Release and Settlement Agreement | Release and Settlement Agreement by and between Fieldwood Energy Offshore and Browning Offshore Partners, Inc. |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/9/2015 | Supplemental Bonding Agreement | by and between Fieldwood Energy LLC, SEO A LLC, Stone Energy Corporation and Stone Energy Offshore, L.L.C.: Fieldwood will apply on Supp Bonding |
| Land | 9/9/2015 | Transmittal of Supplemental Bonding | by and between Fieldwood Energy LLC and Stone Energy Corporation: Stone acknowledgement of reciept of Bond |
| Land | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/17/2015 | Election and Designation of Successor Operator Letter | In furtherance of April 14, 2015 and June 15, 2015 letters, Areana earned assignment from Chevron Chevron to resign as operator, clarifying Working Interests, etc. |
| Land | 10/15/2015 | Release and Settlement Agreement | by and between Fieldwood Energy LLC and Fairways Offshore Exploration, Inc. : Release and Settlement Agreement |
| Land | 10/19/2015 | Contract Operations Agreement | by and between Fieldwood Energy LLC and Helis Oil and Gas Company L.L.C.: Contract Operations Agreement #18 Helis well |
| Land | 11/19/2015 | Production Handling Agreement SM10 | PHA between Fieldwood and Byron for Byron's SM 6 production |
| Land | 12/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC, ENI US Operating Inc,  and ENI Petroleum US LLC: GA 151, SS 246, SS 247, SS 248, SS 249, SS 270, SS 271, VR 78, VR 313, WC 72, WC 100, WC 130 |
| Land | 12/1/2015 | Release and Settlement Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI US Operating Inc. and ENI Petroleim US LLC: Release and Settlement Agreement |
| Land | 2/2/2016 | Correction Assignment | by and between Fieldwood Energy LLC and Chevron U.S.A. Inc.: Correction Assignment of Operating Rights EI 353 |
| Land | 2/22/2016 | Withdrawal Election | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Hall-Houston Exploration IV, L.P. and GOM Offshore Exploration I, LLC: Hall Houston withdrawal Election |
| Land | 3/1/2016 | Ratification and Amendment to Farmout Agreement | by and between Fieldwood Energy LLC, Walter Oil and Gas Corporation and Cairn Energy USA: Ratify and amend that certain Farmout dated 12/31/1984 |
| Land | 3/2/2016 | Withdrawal Election | by and between Fieldwood Energy LLC and Hall-Houston Exploration IV, L.P.: Hall Houston withdrawal Agreement |
| Land | 3/11/2016 | Waiver of Confidentiality and Consent to Disclose | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: applies to HIE 129 and ST 229 |
| Land | 4/13/2016 | Recommendation to Add Compression Services | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil and Gas II, LLC and Castex Offshore, Inc.: Requests change to compression standards in that certain Processing & Contract Operating Services Agreement dated 07/01/2011 |
| Land | 4/25/2016 | Release and Settlement Agreement | by and between Fieldwood Energy LLC, Peregrine Oil & Gas, LP and Peregrine Oil & Gas II, LLC: Release and Settlement Agreement |
| Land | 5/31/2016 | Election to Continue or Cease Compression Services | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC and Castex Offshore, Inc.: Increases to continue compression services past orignal test period |
| Land | 6/29/2016 | Election to elect out of Badger Tax Partnership | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC and Castex Offshore, Inc.: |
| Land | 7/1/2016 | Acquisition | by and between Fieldwood Energy LLC and Monforte Exploration, LLC: 3% ORRI SM 48 E wells |
| Land | 7/1/2016 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and All Aboard Development Corporation: Assignment All Aboard to Fieldwood |
| Land | 7/8/2016 | Letter Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: Fieldwood's response to W&T Letter Agreement  - HI 129 #16 Well - Final Agreement |
| Land | 7/21/2016 | Contract Operations Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: Contract Operating Agreement eff. 7-21-16 |
| Land | 7/21/2016 | Contract Operations Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: Contract Operating Agreement - #16 well |
| Land | 8/1/2016 | Letter Agreement | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/1/2016 | Letter Agreement | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/4/2016 | Letter of No Objection | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 8/4/2016 | Letter of No Objection | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 8/25/2016 | Amendment and Ratification of Production Handling Agreement | by and between Fieldwood Energy LLC, CL&F Resources, L.P, Houston Energy LP., Helis Oil and Gas Company LLC and W&T Offshore, Inc.: Amendment and Ratification of Production Handling Agreement (High Island, East Addition Block 129) |

| | | | |
|---|---|---|---|
| Land | 9/13/2016 | Agreement for Payment of Insurance Charges | by and between  Fieldwood Energy LLC and Monforte Exploration L.L.C.: Fieldwood agrees to pay Monforte's insurance charges |
| Land | 10/1/2016 | ABOS | by and between  Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: |
| Land | 11/9/2016 | Confidentiality Agreement | Confidentiality Agreement:BY AND BETWEEN FIELDWOOD ENERGY LLC AND LLOG EXPLORATION OFFSHORE, L.L.C. |
| Land | 11/21/2016 | Offer to Purchase | by and between  Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: Offer to Purchase GS E &R America Offshore, LLC's Interest in GI 94, SS 79, VR 332 and WD 34 |
| Land | 12/14/2016 | Surrender of Interest Agreement | by and between  Fieldwood Energy LLC and All Aboard Development Corporation: All Aboard Development Corp. surrender of interest |
| Land | 1/1/2017 | Acquisition | by and between  Fieldwood Energy Offshore LLC and GOM Offshore Exploration I, LLC: SS 176 Lease, Well and facilities |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 3/1/2017 | Reinbursement Agreement | by and between  Fieldwood Energy LLC, W & T Offshore, Inc., Renaissance Offshore LLC, Transcontinental Gas Pipe Line and Chevron U.S.A. Inc.: Transco Facilities Subseaq Modification - Shell owned ST 300 Platform |
| Land | 3/27/2017 | Offshore Tie-in Agreement | by and between  Fieldwood Energy Offshore LLC, Fieldwood Energy LLC and Amberjack Pipeline Company LLC: Consent of PSA between Empire and Amberjack subject to addendum |
| Land | 3/30/2017 | Letter of No Objection | Fieldwood agreed to COX request/letter of no objectin to allow cox to produce its EI 64# 9 well. Fieldwood is the operator of SW/4 of EI 53 |
| Land | 6/8/2017 | Bill of Sale and Assumption Agreement | by and between  Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C: Manta Ray sells to Fieldood  pursuant to reverse of gas flow  in ST 295 block to direct flow of gas to ST 292 Platform |
| Land | 6/8/2017 | Interconnection and Measurement Agreement | by and between  Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.: Fieldwood desires to connect with Mata Ray's ST 292 platform and piping, etc. |
| Land | 6/8/2017 | Lease of Offshore Platform Space - ST 292 Platform | by and between  Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.: |
| Land | 7/28/2017 | Indemnity and Release Agreement | by and between  Fieldwood Energy LLC and Chevron U.S.A. Inc.: Chevron sold to Cantium and needed DOO from Fieldood, Fieldwood required this Agreement to allow DOO |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| LAND | 9/15/2017 | Memorandum of OA and Financing Statement | ST 311 320 UCC, Mortgage and Conveyance |
| LAND | 9/15/2017 | Offshore Operating Agreement | ST 311-320 JDA Offshore Operating Agreement dtd 9-15-17, as amended |
| LAND | 9/15/2017 | Participation Agreement | ST 311-320 JDA Participation Agreement dtd 9-15-17 |
| Land | 9/19/2017 | Offer to Purchase | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: Offer to Purchase SCL Resources, LLC's Interest in GI 94, SS 79, VR 332 and WD 34 |
| Land | 11/7/2017 | Modification to PHA | Enhancement and modification to test separator MBD -4010 at HI 547 B Platform - PHA Agreement dated May 8, 1998 |
| Land | 4/6/2018 | Notification of Withdrawal - WC 269 | Withdrawal Election |
| Land | 4/17/2018 | Amendment | by and between  Fieldwood Energy LLC and Arena Energy, LP: Amendment to Production Handling Service Agreement dated May 8, 1988 |
| Land | 5/1/2018 | Assignment Conveyance and Bill of Sale | By and between Fieldwood Energy LLC, Peregrine Oil & Gas II, LLC and Castex Offshore, Inc. as "Assignor" and Northstar Offshore Ventures LLC as "Assignee" |
| Land | 5/15/2018 | Divestiture | Divestiture of Interests in Mustang Island to TR Offshore, L.L.C. |
| Land | 6/1/2018 | Property Exchange Agreement | Property Exchange Letter Agreement dated June 1, 2018 - BS 25 (OCS-G 31442; St. of LA Lease No. 19718) EI Area, South Addition, North Half of Block 315 (OCS-G 24912) Offshore Louisiana |
| Land | 6/14/2018 | Performance Bond | Sanare Energy Partners, LLC is the new principal replacing  Northstar Offshore Ventures LLC |
| Land | 7/11/2018 | Assignment of Operating Interest | Assignment of Operating Rights Interest  from Apacoh to Fieldwood and GOM Shelf |
| Land | 7/23/2018 | Amendment to Property Exchange Agreement | Amendment to Property Exchange Letter Agreement dated June 1, 2018 - BS 25 (OCS-G 31442; St. of LA Lease No. 19718) EI Area, South Addition, North Half of Block 315 (OCS-G 24912) Offshore Louisiana |
| Land | 8/1/2018 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech's Interest in the SS 271 Unit (SS 247,248,249) |
| Land | 8/1/2018 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdraws from SS 271 Unit |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/8/2018 | Take Over Election Letter Agreement | In accordance with certain Farmout Agreeements dated 12/17/2002, 05/19/2003 and 02/13/2004, Fieldwood elects to decline |
| Land | 8/13/2018 | Confidentiality Agreement | Confidentiality Agreement: GOM SHELF - DEEPWATER PROPERTIES |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 10/1/2018 | Acquisition | Assignment of Hall-Houston overriding royalty interest in SS 176 |
| Land | 10/18/2018 | Abandonment Agreement | pursuant to that certain PHA for WC 496 produced at SP B Platform dated 11/1/2002 |
| Land | 12/4/2018 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Byron Energy Inc. |
| Land | 12/10/2018 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Exxon Mobil Corporation |
| Land | 12/20/2018 | Letter of Intent | by and between  Fieldwood Energy LLC and TR Offhsore. L.L.C.: Contemplation of Contract Operating Agreement, Transportation Agreement |
| Land | 2/4/2019 | Termination of Exchange Agreement | Termination of Property Exchange Letter Agreement dated June 1, 2018 - BS 25 (OCS-G 31442; St. of LA Lease No. 19718) EI Area, South Addition, North Half of Block 315 (OCS-G 24912) Offshore Louisiana |
| LAND | 2/22/2019 | Exploration Agreement Letter | APA - EXXI MP 295 Side Ltr Agrmnt dtd 2-22-13 |
| Land | 3/5/2019 | Relinquishment | by and between  GOM Shelf LLC and Arena Energy, LP: Relinquishment of OCS G0978 |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and ANKOR |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Sa nare |
| Land | 4/1/2019 | PHA Amendment | First Amendment to that certain Production Handling Agreement, dated September 1, 2009 - Eiugene Island 224 "A" Platform - Federal Offshore Louisiana |

| Land | 5/1/2019 | Confidentiality Agreement | Confidentiality: BY AND BETWEEN FIELDWOOD ENERGY LLC AND CIBCO RESOURCES, LLC |
|---|---|---|---|
| Land | 5/16/2019 | Letter Agreement | by and between Fieldwood Energy LLC and Panther Pipeline, LLC: Letter Agreement Matagorda Operating Agreement MI 518/519 with regard to natural gas pipeline work. |
| Land | 6/10/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and TRANSCONTINENTAL GAS PIPELINE COMPANY: Confidentiality Agreement: |
| Land | 7/25/2019 | Letter Agreement OCS-G 14535 JB15T2 Well | Pursuant to that certain Farmout dated 12/17/2002. Reassignment to Arena and P&A liabilitiy |
| LAND | 7/25/2019 | Exploration Agreement | Exploration Venture Agreement by and between Fieldwood Energy LLC and Juneau Oil & Gas LLC (terminated 6-23-20) |
| Land | 11/5/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and W&T OFFSHORE, INC: Confidentiality Agreement: |
| LAND | 11/5/2019 | Transfer Notice | |
| Land | 11/8/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and PROMETHEAN ENERGY CORPORATION: Confidentiality Agreement: |
| Land | 11/8/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and RDC OIL PTY LTD: Confidentiality Agreement: |
| Land | 11/12/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and CASTEX ENERGY, INC: Confidentiality Agreement: |
| Land | 11/14/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and COX OIL OFFSHORE, LLC: Confidentiality Agreement: |
| Land | 11/21/2019 | Withdrawal Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: W&T Withdrawal from EC 2 SL 18121 - W&T did not prepay abandonment |
| Land | 11/21/2019 | Letter Agreement | Letter Agreement SS 19B J-11 Well zone shift: Zone shift recommended and election from HO to HG sand by and between GOM Shelf Offshore LLC and Talos Energy Offshore LLC |
| Land | 11/21/2019 | Letter Agreement | Letter Agreement SS 19B J-11 Well zone shift: Zone shift recommended and election from HO to HG sand by and between GOM Shelf Offshore LLC and Renaissance Offshore LLC |
| Land | 12/10/2019 | Non-Consent | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: W&T Non-consent lease saving ooperation on EC 2 SL 18121 for failure to respond to lease number FW194042 |
| Land | 12/12/2019 | Purchase of Pipeline ROW OCS-G 14731 Seg. No. 10406 | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C.: SS 274 A Platform to EI 259 A Platform |
| Land | 1/22/2020 | Confidentiality Agreement | by and between Fieldwood Energy LLC and WERRUS AQUAMARINE, LLC: Confidentiality Agreement: |
| Land | 1/27/2020 | Acquisition | by and between Fieldwood Energy LLC, Castex Offshore, Inc., GOME 12711 LLC and Dorado Deep GP, LLC : Assignment of Interest in MP 275 A-3 Well |
| Land | 3/2/2020 | Confidentiality Agreement | Confidentiality Agreement BY AND BETWEEN FIELDWOOD ENERGY LLC AND ODYSSEY PIPELINE LLC = MP 289 "C" PF |
| Land | 3/4/2020 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Arena Energy |
| Land | 01/01/1994, 04/08/1994 | Unit Operating Agreement | U nit Operating Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Total Minatome Corporation, Energy Development Corporation, Murphy Exploration and Production Company and Anadarko Petroleum Corporation; and Forest Oil Corporation and Timbuck Company/The Hat Creek Production Company, Limited Partnership (referred to as "Override Parties") |
| Land | 12/31/2013 | First Amendment to the Participation Agreement | First Amendment to the Participation Agreement OCS-G0786, South Marsh Island Area, Block 48 Offshore Federal Waters |
| Pipeline Transport | 10/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | |
| Pipeline Transport | 10/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Arena Offshore LP and Arena Offshore LP |
| Pipeline Transport | 10/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Arena Offshore LP and Arena Offshore LP |
| Pipeline Transport | 7/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | |
| Pipeline Transport | 7/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 7/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 6/3/2015 | Barnacle Pipeline Throughput Capacity Agreement | |
| Pipeline Transport | 6/3/2015 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 6/3/2015 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 7/8/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC |
| Pipeline Transport | 7/8/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC |
| Pipeline Transport | 7/8/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC |
| Pipeline Transport | 8/1/2015 | Cheetah Pipeline Throughput Capacity | Capacity Agreement by and between Fieldwood and Talos Energy Offshore, LLC and Talos Energy Offshore, LLC |
| Pipeline Transport | 8/1/2015 | Cheetah Pipeline Throughput Capacity | Capacity Agreement by and between Fieldwood and Talos Energy Offshore, LLC and Talos Energy Offshore, LLC |
| Pipeline Transport | 11/12/2013 | THROUGHPUT CAPACITY LEASE AND TIE IN AGREEMENT | Capacity Agreement by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| Pipeline Transport | 12/1/2018 | EWING BANK FLOWLINE THROUGHPUT CAPACITY LEASE AGREEMENT | Capacity Agreement by and between Fieldwood and Apache Shelf Exploration LLC and Apache Shelf Exploration LLC |
| Pipeline Transport | 12/1/2018 | EWING BANK FLOWLINE THROUGHPUT CAPACITY LEASE AGREEMENT | Capacity Agreement by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| Pipeline Transport | 12/1/2018 | EWING BANK FLOWLINE THROUGHPUT CAPACITY LEASE AGREEMENT | Capacity Agreement by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| Pipeline Transport | 2/2/1996 | GATHERING AGREEMENT | Gathering Agreement by and between Fieldwood and CMA Pipeline and CMA Pipeline |
| Pipeline Transport | 9/30/2015 | AMENDMENT TO GATHERING AGREEMENT | Gathering Agreement by and between Fieldwood and CMPA PIPELINE PARTNERSHIP, LLC and CMPA PIPELINE PARTNERSHIP, LLC |
| PHA SS182/SS170 | 5/1/2013 | PRODUCTION HANDLING AGMT | PHA by and between Fieldwood and BOIS D'ARC EXPLORATION, LLC and BOIS D'ARC EXPLORATION, LLC |
| PHA EI316A/EI 315C | 7/14/2008 | PRODUCTION HANDLING AGMT | PHA EI 3316A/EI 315C by and between Fieldwood and TANA EXPLORATION COMPANY LLC and TANA EXPLORATION COMPANY LLC |
| PHA for EB165A/EB430 | 9/30/2004 | PRODUCTION HANDLING AGMT | PHA for EB165A/EB430 by and between Fieldwood and WALTER OIL & GAS CORPORATION and WALTER OIL & GAS CORPORATION |
| PHA for SP108/ST72 | 12/1/2014 | PRODUCTION HANDLING AGMT | PHA for SP108/ST72 by and between Fieldwood and WALTER OIL & GAS CORPORATION and WALTER OIL & GAS CORPORATION |
| PHA GI 116A/ST 229 | 6/1/2005 | PRODUCTION HANDLING AGMT | PHA GI 116A/ST229 by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| PHA SS178A/SS177#7A-4ST | 8/25/1998 | PRODUCTION HANDLING AGMT | PHA SS178A/SS177#7A-4ST by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| PHA MP 310A/MP 315 | 11/30/2015 | PRODUCTION HANDLING AGMT | PHA MP 310A/MP315 by and between Fieldwood and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC |
| PHA MP 310A/MP 315 | 11/30/2015 | PRODUCTION HANDLING AGMT | PHA MP 310A/MP315 by and between Fieldwood and HE&D OFFSHORE LP and HE&D OFFSHORE LP |
| Service Agreements | 4/1/2009 | SERVICE CONTRACT | Allocation of quality bank by and between Fieldwood and Allocation Specialists, LLC and Allocation Specialists, LLC |
| LEASE OF PLATFORM SPACE | 2/1/1990 | Access and Right of Use Agreement3/1/2020 - 2/28/2021 | A-LOPS-WD075 by and between Fieldwood and American Panther, LLC and American Panther, LLC |
| LEASE OF PLATFORM SPACE | 10/10/1984 | Platform Space Rental Agreement SMI 268A Platform10/01/2020 - 11/30/2021 | A-LOPS- SM268A by and between Fieldwood and American Panther, LLC and American Panther, LLC |
| LEASE OF PLATFORM SPACE | 11/29/2009 | Amendment to Lease of Platform Space Agreement Main Pass 289 C8/1/2020 - 7/31/2021(Horn Mountain) | A-LOPS-MP289C(Horn Mountain) by and between Fieldwood and Anadarko US Offshore LLC and Anadarko US Offshore LLC |
| LEASE OF PLATFORM SPACE | 7/12/2016 | Marathon Pipeline Facilities Exxon's vermilion Block 265 Platform A | A-LOPS-AccessSvc by and between Fieldwood and East Cameron Gathering LLC and East Cameron Gathering LLC |

| | | | |
|---|---|---|---|
| LEASE OF PLATFORM SPACE | 4/15/1988 | Amendment of SMI Gathering System (Vermillion Block 265 Platform) Access and Services Agreement1/1/2020- 12/31/2020 | Annual LOPS-VR 265 P/F-A-DRL by and between Fieldwood and Crimson Gulf Accounts Payable and Crimson Gulf Accounts Payable |
| LEASE OF PLATFORM SPACE | 8/1/1996 | Lease of Platform Space5/1/2020 - 4/30/2021 | A-LOPS-ODYSSEY by and between Fieldwood and Shell Pipeline Company LP and Shell Pipeline Company LP |
| LEASE OF PLATFORM SPACE | 11/1/2001 | Lease of Platform Space11/1/2020 - 10/30/2021 | A-LOPS-SM128SA2 by and between Fieldwood and Shell Pipeline Company LP and Shell Pipeline Company LP |
| LEASE OF PLATFORM SPACE | 4/27/1977 | FIRST AMENDMENT AND RATIAFICATION TO TIE-IN SERVICE AGREEMENT04/01/2020-3/31/2021 | A-LOPS-MP288-MP289FWE0240 by and between Fieldwood and Stone Energy Corpration and Stone Energy Corpration |
| LEASE OF PLATFORM SPACE | 11/15/1996 | Lease of Platform space Agreement | ALOPS-RAM POWELL by and between Fieldwood and Stone Energy Corpration and Stone Energy Corpration |
| LEASE OF PLATFORM SPACE | 10/25/1985 | PLATFORM SPACE AGREEMENT10/25/2020 - 9/24/2021 | A-LOPS-SP89B by and between Fieldwood and Texas Eastern Transmission and Texas Eastern Transmission |
| LEASE OF PLATFORM SPACE | 3/1/1980 | 4/1/2020 - 3/31/2021 | A-LOPS-HI179A by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation |
| LEASE OF PLATFORM SPACE | 9/5/1981 | Receipt and Measurement Facility LOPS EI Block 158 Platform4/1/2020 - 3/31/2021 | A-LOPS-EI158B by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation |
| LEASE OF PLATFORM SPACE | 9/15/1981 | Receipt and Measurement Facility LOPS EI Block 135 "JA" Platform4/1/2020 - 3/31/2021 | A-LOPS-EI136JA by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation |
| LEASE OF PLATFORM SPACE | 7/1/1997 | Lease of Offshore Platform Space Gas Measurement Facility, Pipeline Rise, Liquids Scrubber Facility | A-LOPS-SM128 by and between Fieldwood and Trunkline Gas Company LLC and Trunkline Gas Company LLC |
| LEASE OF PLATFORM SPACE | 3/1/1998 | 3/01/2020 - 2/28/2021 | A-LOPS-SS354A by and between Fieldwood and Williams Field Services and Williams Field Services |
| LEASE OF PLATFORM SPACE | 11/29/2001 | 03/01/2020 - 02/28/2021 | A-LOPS- MP289C by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| LEASE OF PLATFORM SPACE | 11/29/2001 | LEASE OF PLATFORM SPACE | ANA103-LOPS (Horn Mountain Monthly) by and between Fieldwood and Anadarko US Offshore LLC and Anadarko US Offshore LLC |
| LEASE OF PLATFORM SPACE | 12/21/2002 | PLATFORM OPERATIONS AGMT | ARE101-LOPS - PL25 by and between Fieldwood and ARENA OFFSHORE LP and ARENA OFFSHORE LP |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2018 | SERVICES CONTRACT | EAS101 VR265ADRL by and between Fieldwood and EAST CAMERON GATHERING LLC and EAST CAMERON GATHERING LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 4/28/2009 | LEASE OF PLATFORM SPACE | ROT101-LOPS EI 189P/F B by and between Fieldwood and Rotocraft Leasing Company, LLC and Rotocraft Leasing Company, LLC |
| LEASE OF PLATFORM SPACE | 4/28/2009 | LEASE OF PLATFORM SPACE | ROT101-LOPS MATAGORDA ISLAND 622C by and between Fieldwood and Rotocraft Leasing Company, LLC and Rotocraft Leasing Company, LLC |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-1 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-2 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-3 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-4 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-5 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-6 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-7 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-8 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-9 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-13 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-17 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-18 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-14 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-16 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-20 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-24 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-25 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-26 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 4/15/1968 | LEASE OF PLATFORM SPACE | KIN129-LOPS by and between Fieldwood and KINETICA DEEPWATER EXPRESS, LLC and KINETICA DEEPWATER EXPRESS, LLC |
| LEASE OF PLATFORM SPACE | 6/14/2000 | FACILITIES OPERATING AND MAINTENANCE AGMT | WIL174 OP&MN FEE-VK251A  by and between Fieldwood and WILLIAMS FIELD SERVICES and WILLIAMS FIELD SERVICES |
| PRODUCTION HANDLING AGMT (IIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC            and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (IIB)-3 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC            and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (IIB)-3 | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA PL009-PL010B by and between Fieldwood and MCMORAN OIL & GAS LLC            and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (IIB)-3 | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA PL009-PL010B by and between Fieldwood and RIDGEWOOD ENERGY CORPORATION and RIDGEWOOD ENERGY CORPORATION |
| PRODUCTION HANDLING AGMT (IIB)-3 | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA PL009-PL010B by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (IIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC            and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (IIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC            and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (IIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (IIB)-5 | 6/9/2008 | JIB PHA EC 2C/EC2#1 | PHA EC002-EC002C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (IIB)-5 | 6/9/2008 | JIB PHA EC 2C/EC2#1 | PHA EC002-EC002C by and between Fieldwood and C/O FAIRFIELD-MAXWELL LTD            and C/O FAIRFIELD-MAXWELL LTD |
| PRODUCTION HANDLING AGMT (IIB)-5 | 6/9/2008 | JIB PHA EC 2C/EC2#1 | PHA EC002-EC002C by and between Fieldwood and HILCORP ENERGY 1 LP            and HILCORP ENERGY 1 LP |
| PRODUCTION HANDLING AGMT (IIB)-6 | 5/1/2012 | JIB PHA EI 354#A6/EI337A10 | PHA EI354-EI337A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (IIB)-6 | 5/1/2012 | JIB PHA EI 354#A6/EI337A10 | PHA EI354-EI337A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (IIB)-6 | 5/1/2012 | JIB PHA EI 354#A6/EI337A10 | PHA EI354-EI337A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (IIB)-7 | 1/1/2001 | PHA VK694-MP0259A-FWE0313 | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (IIB)-7 | 1/1/2001 | PHA VK694-MP0259A-FWE0313 | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and PIQUANT INC and PIQUANT INC |
| PRODUCTION HANDLING AGMT (IIB)-7 | 1/1/2001 | PRODUCTION HANDLING AGREEMENT | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (IIB)-7 | 1/1/2001 | PRODUCTION HANDLING AGREEMENT | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (IIB)-8 | 10/1/2002 | PRODUCTION HANDLING AGREEMENT | PHA ST205-ST206A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (IIB)-8 | 10/1/2002 | PRODUCTION HANDLING AGREEMENT | PHA ST205-ST206A by and between Fieldwood and FWE and FWE |

| | | | |
|---|---|---|---|
| PRODUCTION HANDLING AGMT (JI8)-8 | 10/1/2002 | PRODUCTION HANDLING AGREEMENT | PHA ST205-ST206A by and between Fieldwood and MARATHON OIL COMPANY and MARATHON OIL COMPANY |
| PRODUCTION HANDLING AGMT (JI8)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MP0259A-FWE0317 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JI8)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MP0259A-FWE0317 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (JI8)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MP0259A-FWE0317 by and between Fieldwood and PIQUANT INC and PIQUANT INC |
| PRODUCTION HANDLING AGMT (JI8)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MP0259A-FWE0317 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (JI8)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | |
| PRODUCTION HANDLING AGMT (JI8)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP312-MP311A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JI8)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP312-MP311A by and between Fieldwood and EPL OIL & GAS, LLC and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JI8)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JI8)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JI8)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and TANA EXPLORATION COMPANY LLC and TANA EXPLORATION COMPANY LLC |
| PRODUCTION HANDLING AGMT (JI8)-12 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP311B-MP302B19 by and between Fieldwood and APACHE SHELF EXPLORATION LLC and APACHE SHELF EXPLORATION LLC |
| PRODUCTION HANDLING AGMT (JI8)-12 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP311B-MP302B19 by and between Fieldwood and EPL OIL & GAS, LLC and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JI8)-13 | 4/1/2007 | PRODUCTION HANDLING AGREEMENT | RID108101-MP289C-MP275 by and between Fieldwood and RIDGEWOOD ENERGY CORPORATION and RIDGEWOOD ENERGY CORPORATION |
| PRODUCTION HANDLING AGMT (JI8)-13 | 4/1/2007 | PRODUCTION HANDLING AGREEMENT | RID108101-MP289C-MP275 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JI8) | 10/23/2018 | AGREEMENT FOR THE GATHERING AND PROCESSING OF MO 826 ("SLEEPING BEAR") | MO826-VK251 by and between Fieldwood and W& T Offshore and W& T Offshore |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | ST 320 A-55T1 by and between Fieldwood and W&T Offshore, Inc. and W&T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/30/1999 | PRODUCTION HANDLING AGREEMENT | MC 10B/MC 109 by and between Fieldwood and Talos Energy LLC and Talos Energy LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | ST 311 A1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 7/18/2002 | PRODUCTION HANDLING AGREEMENT | HI A-582 by and between Fieldwood and Cox Operating, LLC and Cox Operating, LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 10/21/2018 | PRODUCTION HANDLING AGREEMENT | ST 320 A02 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 5/20/2019 | PRODUCTION HANDLING AGREEMENT | ST 320 A03 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/13/1996 | PRODUCTION HANDLING AGREEMENT | SS 300 B/SS301 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/30/1999 | PLATFORM ACCESS, OPERATING SERVICES AND PRODUCTION HANDLING AGREEMENT(ORION) | MC 109/MC110 by and between Fieldwood and Talos Energy and Talos Energy |
| PRODUCTION HANDLING AGMT (Non-Op) | 5/5/2009 | PRODUCTION HANDLING AGREEMENT | SS 189 C-1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | SM 107 by and between Fieldwood and Talos Energy and Talos Energy |
| PRODUCTION HANDLING AGMT (Non-Op) | 7/1/2014 | PRODUCTION HANDLING AND FACILITY USE AGREEMENT | VR 271 by and between Fieldwood and Castex Offshore Inc and Castex Offshore Inc |
| PRODUCTION HANDLING AGMT (Non-Op) | 8/1/1997 | PRODUCTION HANDLING AGREEMENT | ST 176/ST 148 by and between Fieldwood and Arena Offshore LLC and Arena Offshore LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 8/1/1997 | PRODUCTION HANDLING AGREEMENT | ST 176/ST 148 by and between Fieldwood and Arena Offshore LLC and Arena Offshore LLC |
| CONNECTION AGREEMENT EI 342C | 9/17/1986 | PIPELINE CONNECTION & OPERATION AGREEMENT EUGENE ISLAND PIPELINE SYSTEM | Interconnect Agreement EI 346 by and between Fieldwood and GEL Offshore Pipeline, LLC and GEL Offshore Pipeline, LLC |
| CONNECTION AGREEMENT EI 342C | 1/1/2010 | RATIFICATION OF & SUPPLEMENT TO PIPELINE CONNECTION AND OPERATION AGREEMENT | Interconnect Agreement EI 346 by and between Fieldwood and GEL Offshore Pipeline, LLC and GEL Offshore Pipeline, LLC |
| CONNECTION AGREEMENT EI 342C | 8/7/2018 | AMENDMENT NO. 1 TO PIPELINE CONNECTION AND OPERATION AGREEMENT | Interconnect Agreement EI 346 by and between Fieldwood and GEL Offshore Pipeline, LLC and GEL Offshore Pipeline, LLC |
| CONNECTION AGREEMENT EI 342 | 10/26/2011 | FACILITIES LETTER AGREEMENT | Agreement for Gas Connection at EI 346 by and between Fieldwood and ANR Pipeline Company and ANR Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | ISCT Contract | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | ISCT Contract | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 9/13/2011 | IT Transport Contract | |
| | | | Chandeleur IT Transportation - Fieldwood interest in MP 59 was sold to Cantium by and between Fieldwood Energy LLC and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream |
| Marketing Gas - Transport | 4/1/2015 | FT -2 Transport | Discovery Gas - FT2 agreement;  by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission |
| Marketing Gas - Transport | 2/1/2019 | Pool Agreement | Pool Agreement by and between Fieldwood Energy LLC and Gulf South Pipeline Company, LP and Gulf South Pipeline Company, LP |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2003 | IT Transport Contract- Reserve Dedicaation and Discount Commodity Rate Agreement | Stingray Reserve Dedication VR Block 326 S.10 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 10/1/2019 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy LLC and Venice Gathering and Venice Gathering |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 4/1/2000 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedication , Disount Rate of $.06 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 12/1/2015 | Firm - Gathering | Firm - Gathering by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 12/1/1992 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedicaiton , Disount Rate of $.032 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 4/1/2010 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedicaiton , Disount Rate of $.12 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 4/1/2010 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedicaiton , Disount Rate of $.12 by and between Fieldwood Energy Offshore, LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 4/1/2010 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedicaiton , Disount Rate of $.12 by and between Fieldwood Energy Offshore, LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 10/30/2017 | FT -2 Transport | EW 910 / ST 320 by and between Fieldwood Energy, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company |
| Marketing Gas - Transport | 4/1/2010 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy Offshore, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT PR Transport Contract | Searobin West PTR Transprt,  max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011 | IT-PTR Transport | Searobin Pipeline - sandridge /Dynamic IT transport by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 10/1/2011 | IT-Retrograde Transport | SearobinWest  Pipeline - sandridge./Dynamic IT Retrograde by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 4/1/2015 | FT-2 Discount Letter Agreement | Discovery Gas FT2 Discount letter by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission |
| Marketing Gas - Gathering and Dedication | 4/1/2015 | Gas Dedication and Gathering Agreement | Discovery Gas Gathering and Gas Dedication by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission |
| Marketing Gas - Transport | 1/1/2012 | IT Transport Contract - Reserve Dedication and Discount Rate | Stinray - HI 350, WC 144 WC269 S.10 discount. Reserve Dedicaton agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 1/1/2012 | IT Transport Contract - Reserve Dedication and Discount Rate | Stinray - HI 350, WC 144 WC269 S.10 discount. Reserve Dedicaton agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 1/1/2012 | IT Transport Contract - Reserve Dedication and Discount Rate | Stinray - HI 350, WC 144 WC269 S.10 discount. Reserve Dedicaton agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 1/1/2017 | IT-Transport- Discount Letter | Searobin East - Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 1/1/2017 | IT-Transport- Discount Letter | Searobin East - Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 1/1/2017 | IT-PTR Transport | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 1/1/2017 | IT-PTR Transport | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport- Discount Letter | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport- Discount Letter | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (FW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas-Transport | 12/17/1997 | FT - Transport | Venice Gatheing  Firm Transport with Disount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. |
| Marketing Gas-Transport | 8/13/1997 | Precedent Agreement for Transportation of Gas and Non-Jurisictional Services | Venice Gatheing  Firm Transport with Disount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. |
| Marketing Gas-Transport | 12/15/1997 | Reserve Commitment Agreement | Venice Gatheing  Firm Transport with Disount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. |
| Marketing Gas-Gathering | 4/1/2003 | IT Transport | GC 45, WD 41 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. |
| Marketing Gas-Gathering | 11/1/2010 | IT Transport | Venice Gatheiring, Max Rate,WD 41 Effective date 11/1/2010 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Marketing Gas-Gathering | 9/10/1990 | Gas Gathering Agreement | Gathering Agreement - Discount for BA 491 by and between Fieldwood Energy LLC and WFS and WFS |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | des the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |

Exhibit I-I

| Operating and Management Agreement | es the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Field wood Energy LLC and  and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | es the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Field wood Energy LLC and  and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | es the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Field wood Energy LLC and  and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | es the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Field wood Energy LLC and  and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and and |
| Ownership and Operating Agreement | 10/1/1982 | Construction, Ownership and Operating Agreement | Governs the Ownership and Operations of the Facility. The Facility is co-owned by two groups, Owners and Producers.  Facility assets are owned in three different classes: either solely owned by Owners, co-owned by Owners and Producers or soley owned by Pr by and between Fieldwood Energy LLC and Kinetica Partners LLC and Kinetica Partners LLC |
| Ownership Agreement | 12/2/1985 | Ownership Agreement for the Producers' Facility Sabine Pass, as amended | Governs the Ownership and Operations of the Producers' Facility. The Producers' Facility consists of assets owned by Producers, as well as those assets co-owned by the Producers and Owners. Fieldwood, as the designated Producers' Representative, reprents th by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Ownership and Operating Agreement | 3/6/1974 | Construction and Operating Agreement for Onshore Separation Facility Cameron Parish, Louisiana  as amended | Provides for the construction and operation of the onshore separation facility which is connected to the facilites of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Stinray by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |

| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
|---|---|---|---|
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Contribution Agreement (LLC formation) | 11/2/2010 | Contribution Agreement | SP 49 Pipeline LLC (the "Entity"), an limited liability company, was formed on November 2, 2010 by Apache GOM Pipeline, Inc, (succeeded by FW GOM Pipeline, Inc), Energy XXI GOM LLC, and Stone Energy Offshore, LLC (succeeded by Talos Resources LLC). The e by and between Fieldwood Energy LLC and Talos Resources LLC and Energy XXI GOM, LLC and Talos Resources LLC and Energy XXI GOM, LLC |
| Operating Agreement | 11/2/2010 | Operating Agreement South Pass Block 49 & Southwest Pass 24 Pipeline System | The Operator is responsible for the entity's operations, accounting, and reporting detailed in the Operating Agreement, including pipeline operation, repair, and maintenance, as well as administrative functios such as paying expenses and maintaing records by and between Fieldwood Energy LLC and  and |
| Operating Agreement | 11/2/2010 | Operating Agreement South Pass Block 49 & Southwest Pass 24 Pipeline System | The Operator is responsible for the entity's operations, accounting, and reporting detailed in the Operating Agreement, including pipeline operation, repair, and maintenance, as well as administrative functios such as paying expenses and maintaing records by and between Fieldwood Energy LLC and  and |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Construction and Operating Agreement | 10/22/1976 | Agreement for the Construction and Operation of the Blue Water Gas Plant Acadia Parish, Louisiana | Processing of Owners' gas all in accordance with agreements by and between Fieldwood Energy LLC and EnLink Midstream Operating, LP and EnLink Midstream Operating, LP |
| Operating Agreement |  | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement |  | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement |  | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement |  | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement |  | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline.  Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline.  Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |

Exhibit I-1

| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline. Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
|---|---|---|---|
| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline. Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshoe LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshoe LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshoe LLC and  and |
| Proposed Ownership Agreement | 7/11/2009 | Letter of Intent Amberjack Pipeline Repair - Mississippi Canyon Block 109 Area and Chevron Pipe Line Company Valve Project - South Pass 50 | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and  and |
| Proposed Ownership Agreement | 7/11/2009 | Letter of Intent Amberjack Pipeline Repair - Mississippi Canyon Block 109 Area and Chevron Pipe Line Company Valve Project - South Pass 50 | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and  and |
| Proposed Ownership Agreement | 7/11/2009 | Letter of Intent Amberjack Pipeline Repair - Mississippi Canyon Block 109 Area and Chevron Pipe Line Company Valve Project - South Pass 50 | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and  and |
| Oil Purchase and Sale Agreement/Transport | 12/23/1995 | Oil Purchase and Sale Agreement Between Anadarko Petroleum Corporation and Texaco Trading and Transportation INC  (now Poseidon Oil Pipeline Company LLC) | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 6/1/2003 | Oil Gathering Agreement Between Westport Resources Corporation Noble Energy Inc M | Crude Oil Transport. by and between Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC |
| Oil Purchase and Sale Agreement/Transport | 7/15/2003 | Oil Purchase and Sale Agreement Between Westport Resources Corporation Mariner Energy Inc Noble Energy Inc and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Purchase and Sale Agreement/Transport | 4/10/2012 | Oil Purchase and Sale Agreement Between Apache Shelf Inc and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 3/6/2020 | Oil Gathering and Reserve Dedication Agreement Between Rosefield Pipeline Company, LLC and Fieldwood Energy LLC as Producer | Crude Oil Transport. by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Gathering Agreement | 3/6/2020 | Oil Gathering and Reserve Dedication Agreement Between Rosefield Pipeline Company, LLC and Fieldwood Energy LLC as Producer | Crude Oil Transport. by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |

| Oil Gathering Agreement | 3/6/2020 | Oil Gathering and Reserve Dedication Agreement Between Rosefield Pipeline Company, LLC and Fieldwood Energy LLC as Producer | Crude Oil Transport. by and between Fieldwood Energy and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Pipeline Connection Agreeet | 7/23/2020 | ST 53/67 Connection Agreement ST 52 "A" Topsides Work-Connecting Fieldwood Energy LLC Pipeline System No 5890 to Rosefield Pipeline System 10" Pipeline | Connection Agreement by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Pipeline Connection Agreeet | 7/23/2020 | ST 53/67 Connection Agreement ST 52 "A" Topsides Work-Connecting Fieldwood Energy LLC Pipeline System No 5890 to Rosefield Pipeline System 10" Pipeline | Connection Agreement by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Liquids Transportation Agreement | 4/1/2015 | Liquids Transportation Agreement (ST 311-"Megalodon") By and Among Discovery Gas Transmission LLC and Fieldwood Energy LLC | Liquids Transportation Agreement by and between Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |

| | | | |
|---|---|---|---|
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 4/8/2010 | Amendment Liquid HydrocarbonTransportation Agreement (NHI/Johnson Bayou) Cont. No. 1022772, Doc. No. 97 0515 | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipe Line Company LLC( formerly  Transcontinental Gas Pipe Line Corporation) |
| Liquid Transportation | 8/6/1997 | Liquid Hydrocarbon Transportation Agreement | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 7/1/2008 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement Central Texas Gathering System 28 0384 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |

| | | | |
|---|---|---|---|
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | eement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Oil Liquids Transportation Agreement | 9/1/1997 | Agreement Cocodrie/Pecan Island Plants | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation Agreement for Bluewater System | 10/22/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 4/1/2004 | Liquids Transportation Agreement #51051 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51051 dated 4/1/2004 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | iginal Contract; Amendment Effecti | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | /1992, Amendment Effective 1/1/2 | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Amendment to Liquids Transport Agreement | ent date 8/1/2014 contract date 1 | Amendment to Associated Liquids Transportation Agreement Patterson Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Amendment to Liquids Transport Agreement | ent date 8/1/2014 contract date 1 | Amendment to Associated Liquids Transportation Agreement Patterson Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Amendment to Liquids Transport Agreement | ent date 8/1/2014 contract date 1 | Amendment to Associated Liquids Transportation Agreement Patterson Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquid Handling Agreement | 5/1/2008 | Liquid Handling Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement | 3/1/2011 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement to transfer from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/1/2012 amended 12/1/2013 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 3/1/2011 | Liquids Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 3/1/2011 | Liquids Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 3/1/2011 | Liquids Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |

| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
|---|---|---|---|
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement Amendment | 1/2012 Amended effective 12/1/20 | Amendment | Oil Liquids Transportation transferring agreement from apache Corporation to Fieldwood Energy LLC by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement Amendment | 1/2012 Amended effective 12/1/20 | Amendment | Oil Liquids Transportation transferring agreement from apache Corporation to Fieldwood Energy LLC by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Assignment, Assumption and Consent Agreement | 7/1/2013 | Assignment, Assumption and Consent Agreement | Consent to assign liquids separation 7 stabilization agreement as amended dated 1/17/2001 between Manta Ray and Apache (Contract Nos. 101939, 310225 and 106968) by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Assignment, Assumption and Consent Agreement | 7/1/2013 | Assignment, Assumption and Consent Agreement | Consent to assign liquids separation 7 stabilization agreement as amended dated 1/17/2001 between Manta Ray and Apache (Contract Nos. 101939, 310225 and 106968) by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Sepation and Stabilization Agreement | 11/1/2010 | Liquids Sepation and Stabilization Agreement | LSA by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2008 | First Amendment to Liquids Separation and Stalization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2008 | First Amendment to Liquids Separation and Stalization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Second Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Second Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 4/27/2004 | Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2014 | Second Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Block on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2014 | Second Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Block on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids and Stabilization Agreement | 6/1/2014 | Third Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 4/1/2018 | Liquids Sepation Agreement | Contract for ST 320 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Transporation Agreement | 4/1/2018 | Nautilus Pipeline Company, L.L.C. Liquids Transportation Agreement | LTA for ST 320 by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 3/1/2014 | First Amendment to Liquids Transportation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 1/1/2015 | Second Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 1/1/2015 | Second Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 11/1/2010 | First Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 11/1/2010 | First Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
|---|---|---|---|
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/5/2006 | Amendment No. 1 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/5/2006 | Amendment No. 1 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2003 | Liquid Hydrocarbons Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 7/1/2010 | Amendment No. 2 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 7/1/2010 | Amendment No. 2 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 7/1/2010 | Amendment No. 2 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

| | | | |
|---|---|---|---|
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline Field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC, and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC, and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Separation Agreement | 10/1/2004 | Liquid Hydrocarbons Separation Agreement | LSA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Separation Agreement | 10/1/2004 | Liquid Hydrocarbons Separation Agreement | LSA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/19/2012 | Amendment No. 4 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/19/2012 | Amendment No. 4 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/19/2012 | Amendment No. 4 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 6/1/2011 | Amendment No. 3 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 6/1/2011 | Amendment No. 3 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 6/1/2011 | Amendment No. 3 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/1/2011 | Amendment No. 2 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/1/2011 | Amendment No. 2 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/1/2011 | Amendment No. 2 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 5/1/2009 | Amendment No. 1 to Liquid Hydrocarbon Separataion Agreement dated 10/1/2004 between Trunkline Field Services, LLC and Apache Corporation | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 5/1/2009 | Amendment No. 1 to Liquid Hydrocarbon Separataion Agreement dated 10/1/2004 between Trunkline Field Services, LLC and Apache Corporation | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 5/1/2009 | Amendment No. 1 to Liquid Hydrocarbon Separataion Agreement dated 10/1/2004 between Trunkline Field Services, LLC and Apache Corporation | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 54401 | | WH/B42/S1 | LINER: PWR CYL | | EA | | 1 | 3,975.83 | 100.0% | 3,975.83 |
| North Warehouse | Fieldwood | 54402 | | WH/B42/FLR | PSTN/ROD ASSY: 10-1/2", GMWA, | | EA | | 1 | 15,303.69 | 100.0% | 15,303.69 |
| North Warehouse | Fieldwood | 54403 | | WH/B42/FLR | PSTN/ROD ASSY: 28", GMWA, ROD | | EA | | 1 | 21,498.05 | 100.0% | 21,498.05 |
| North Warehouse | Fieldwood | 54406 | | WH/B42/S1 | PSTN: 18", PISTON, GMVC 1ST STGE | | EA | | 1 | 19,676.18 | 100.0% | 19,676.18 |
| North Warehouse | Fieldwood | 54407 | | B3/B3/S2 | LINER: 2ND STGE CYL | | EA | | 1 | 2,542.05 | 100.0% | 2,542.05 |
| North Warehouse | Fieldwood | 54408 | | WH/B41/S2 | LINER: GMVC 1ST STGE | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 54409 | | WH/B37/FL | HD: 2ND STGE CRNKEND | | EA | | 1 | 4,372.48 | 100.0% | 4,372.48 |
| North Warehouse | Fieldwood | 54411 | | WH/SE Wall/FLR | CRNKSHFT: GMVA/GMVC-12 | | EA | | 1 | 82,650.64 | 100.0% | 82,650.64 |
| North Warehouse | Fieldwood | 54412 | | WH/SE Wall/FLR | CRNKSHFT: GMVA/GMVC-12 | | EA | | 2 | 81,082.47 | 100.0% | 81,082.47 |
| North Warehouse | Fieldwood | 54419 | | B3/B3/S2 | PMP: GMVA LUBE OIL | | EA | | 1 | 5,829.98 | 100.0% | 5,829.98 |
| North Warehouse | Fieldwood | 54420 | | WH/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 6,095.65 | 100.0% | 6,095.65 |
| North Warehouse | Fieldwood | 54421 | | WH/B41/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 6,095.65 | 100.0% | 6,095.65 |
| North Warehouse | Fieldwood | 54422 | | WH/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 7,703.92 | 100.0% | 7,703.92 |
| North Warehouse | Fieldwood | 54445 | | B3/B3/S2 | GEAR: GMVC BLOWER DRV | | EA | | 1 | 3,352.24 | 100.0% | 3,352.24 |
| North Warehouse | Fieldwood | 54447 | | WH/B42/FLR | PSTN/ROD ASSY: 18", 1ST STGE | | EA | | 1 | 14,956.39 | 100.0% | 14,956.39 |
| North Warehouse | Fieldwood | 54448 | | WH/B42/S1 | LINER: 18", 1ST STGE COMPRSSR | | EA | | 1 | 1,967.62 | 100.0% | 1,967.62 |
| North Warehouse | Fieldwood | 54449 | | WH/B42/S1 | LINER: 15", 2ND STGE COMPRSSR | | EA | | 1 | 1,785.43 | 100.0% | 1,785.43 |
| North Warehouse | Fieldwood | 54450 | | WH/B41/S2 | LINER: 9-3/4", 3RD STGE COMPRSSR | | EA | | 1 | 1,909.90 | 100.0% | 1,909.90 |
| North Warehouse | Fieldwood | 54452 | | B3/B1/S1 | GEAR: GMV3-FB, PARTCO BLOWER W/HUB | | EA | | 1 | 16,032.44 | 100.0% | 16,032.44 |
| North Warehouse | Fieldwood | 54456 | | WH/B42/FLR | PSTN/ROD ASSY: 9-3/4", 3RD STGE | | EA | | 1 | 2,399.73 | 100.0% | 2,399.73 |
| North Warehouse | Fieldwood | 54457 | | WH/B43/S1 | PSTN/ROD ASSY: 9-5/8", GMWA, | | EA | | 1 | 16,032.44 | 100.0% | 16,032.44 |
| North Warehouse | Fieldwood | 54458 | | WH/B43/FLR | PSTN/ROD ASSY: 17-1/4", GMVA-8 1ST S TGE | | EA | | 1 | 18,636.17 | 100.0% | 18,636.17 |
| North Warehouse | Fieldwood | 54460 | | B3/B2/FLR | ROD: ALL GMV PWR PISTON | | EA | | 2 | 1,821.87 | 100.0% | 1,821.87 |
| North Warehouse | Fieldwood | 54468 | | B3/B2/S3 | PMP: GMVA H2O W/GSKTS | | EA | | 1 | 13,481.83 | 100.0% | 13,481.83 |
| North Warehouse | Fieldwood | 54469 | | WH/B41/FLR | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 13,051.81 | 100.0% | 13,051.81 |
| North Warehouse | Fieldwood | 54480 | | WH/B43/FLR | PSTN/ROD ASSY: 16-1/4", 2ND STGE, | | EA | | 1 | 18,408.45 | 100.0% | 18,408.45 |
| North Warehouse | Fieldwood | 54481 | | Bay3/N Wall/FLR | PSTN/ROD ASSY: GMWE PWR,FITS GMWE-12 | | EA | | 1 | 3,223.36 | 100.0% | 3,223.36 |
| North Warehouse | Fieldwood | 54486 | | WH/B43/FLR | PSTN/ROD ASSY: GMWA | | EA | | 1 | 21,945.24 | 100.0% | 21,945.24 |
| North Warehouse | Fieldwood | 56001 | | WH/B41/S1 | BEARING: TLA COMPRSSR RD, BEARING | | EA | | 5 | 725.83 | 100.0% | 725.83 |
| North Warehouse | Fieldwood | 56002 | | WH/B41/S1 | BEARING: TLA MAIN | | EA | | 7 | 635.76 | 100.0% | 635.76 |
| North Warehouse | Fieldwood | 56633 | | B3/B58S3 | KT: RPR CYL, TLA PWR | | EA | | 5 | 725.10 | 100.0% | 725.10 |
| North Warehouse | Fieldwood | 56644 | | B3/B4/S2 | SPRCKT: TLA CRNKSHFT | | EA | | 1 | 6,085.04 | 100.0% | 6,085.04 |
| North Warehouse | Fieldwood | 56645 | | B3/B4/S3 | SPRCKT: TLA | | EA | | 1 | 3,377.74 | 100.0% | 3,377.74 |
| North Warehouse | Fieldwood | 56646 | | B3/B3/S2 | SPRCKT: HYD PUMP & DRV | | EA | | 1 | 2,135.23 | 100.0% | 2,135.23 |
| North Warehouse | Fieldwood | 56648 | | WH/B41/S1 | LINE: CYL, TLA 2ND STG | | EA | | 1 | 7,817.91 | 100.0% | 7,817.91 |
| North Warehouse | Fieldwood | 56653 | | WH/B43/S2,TOP IN BACK | PSTN: TLA 2ND STGE | | EA | | 1 | 20,689.57 | 100.0% | 20,689.57 |
| North Warehouse | Fieldwood | 56654 | | WH/B44/S1 | PSTN: TLA 1ST STGE | | EA | | 1 | 22,170.79 | 100.0% | 22,170.79 |
| North Warehouse | Fieldwood | 56657 | | B3/B4/FLR | PMP: SHFT, TLA IDLER | | EA | | 1 | 1,136.85 | 100.0% | 1,136.85 |
| North Warehouse | Fieldwood | 56658 | | B3/B4/S3 | PMP: SHFT, TLA DRIVE | | EA | | 1 | 3,188.27 | 100.0% | 3,188.27 |
| North Warehouse | Fieldwood | 56659 | | B3/B4/S3 | PMP: SHFT, TLA WATER PUMP | | EA | | 1 | 1,789.07 | 100.0% | 1,789.07 |
| North Warehouse | Fieldwood | 56663 | | WH/B41/S2 | SHOE: TLA TPE XHD SLIPPER | | EA | | 1 | 2,514.18 | 100.0% | 2,514.18 |
| North Warehouse | Fieldwood | 56695 | | B3/B4/FLR | NUT: TLA CONNECTING ROD | | EA | | 4 | 397.17 | 100.0% | 397.17 |
| North Warehouse | Fieldwood | 56744 | | B3/B4/FLR | GEAR: TLA BULL TIMING CNTRL | | EA | | 1 | 1,898.39 | 100.0% | 1,898.39 |
| North Warehouse | Fieldwood | 56746 | | B3/B4/S3 | GEAR: TLA OIL PUMP | | EA | | 2 | 3,800.42 | 100.0% | 3,800.42 |
| North Warehouse | Fieldwood | 56771 | | B3/B4/FLR | LABYRINTH: TLA TURBINE | | EA | | 1 | 1,745.35 | 100.0% | 1,745.35 |
| North Warehouse | Fieldwood | 56772 | | B3/B4/FLR | LABYRINTH: TLA | | EA | | 2 | 626.73 | 100.0% | 626.73 |
| North Warehouse | Fieldwood | 56779 | | B3/B4/FLR | CARRIER: TLA BULL GEAR | | EA | | 3 | 1,286.24 | 100.0% | 1,286.24 |
| North Warehouse | Fieldwood | 56780 | | B3/B4/FLR | CARRIER: TLA IDLER GEAR | | EA | | 3 | 1,187.86 | 100.0% | 1,187.86 |
| North Warehouse | Fieldwood | 56782 | | B3/B4/FLR | LINKAGE: TLA LWR/CNTRL | | EA | | 2 | 1,435.63 | 100.0% | 1,435.63 |
| North Warehouse | Fieldwood | 56788 | | B3/B4/FLR | SHFT COMPRSSR: TLA TIMER DR | | EA | | 1 | 739.68 | 100.0% | 739.68 |
| North Warehouse | Fieldwood | 56799 | | B3/B4/S3 | VLV: TLA FUEL | | EA | | 6 | 2,288.27 | 100.0% | 2,288.27 |
| North Warehouse | Fieldwood | 56800 | | B3/B5/S3 | SPRCKT: TLA CRNKSHFT | | EA | | 1 | 6,512.01 | 100.0% | 6,512.01 |
| North Warehouse | Fieldwood | 56802 | | WH/B44/S2 | PSTN/ROD ASSY: TLA MATL NO DRAW TYP E | | EA | | 1 | 9,300.03 | 100.0% | 9,300.03 |
| North Warehouse | Fieldwood | 56806 | | B3/B6/S1 | ROD: TLA W/LCKNG STDDS & PN SZ W/RD CAP | | EA | | 1 | 24,799.27 | 100.0% | 24,799.27 |
| North Warehouse | Fieldwood | 56808 | | B3/B3/S2 | WHEEL: TLA TRBN | | EA | | 1 | 23,760.81 | 100.0% | 23,760.81 |
| North Warehouse | Fieldwood | 56809 | | WH/B30/S1 | SCRN ASSY: TLA DWG | | EA | | 1 | 3,917.02 | 100.0% | 3,917.02 |
| North Warehouse | Fieldwood | 56810 | | B3/B4/S3 | JT: EXPNSN, TLA | | EA | | 2 | 1,435.63 | 100.0% | 1,435.63 |
| North Warehouse | Fieldwood | 56811 | | B3/B1/S2 | JT: EXPNSN, TLA EXHAUST | | EA | | 1 | 980.17 | 100.0% | 980.17 |
| North Warehouse | Fieldwood | 56815 | | B3/B10/S2 | INTCLR ASSY: TLA SCAV AIR | | EA | | 6 | 4,339.69 | 100.0% | 4,339.69 |
| North Warehouse | Fieldwood | 56816 | | B3/B4/FLR | NUT: TLA ROD ALL STGS | | EA | | 1 | 1,012.96 | 100.0% | 1,012.96 |
| North Warehouse | Fieldwood | 56817 | | B3/B4/S3 | RING: TLA TURB NZZLE | | EA | | 2 | 8,435.25 | 100.0% | 8,435.25 |
| North Warehouse | Fieldwood | 58585 | | WH/SE Wall/FLR | CRNKSHFT | | EA | | 1 | 15,303.69 | 100.0% | 15,303.69 |
| North Warehouse | Fieldwood | 59286 | | WH/B43/S1 | PSTN/ROD ASSY: 9-3/4", GMV, W/ 3" ROD | | EA | | 1 | 12,227.14 | 100.0% | 12,227.14 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qt | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 71926 | | Bay3/N Wall/FLR | STDDS: STEP, CYL. W/ NUTS 4 SUCT | | EA | | 24 | 72.87 | 100.0% | 72.87 |
| North Warehouse | Fieldwood | 71936 | | B2/B1/S2 | CYL: HYD, I/BRD, UNRPRD | | EA | | 1 | 1,020.25 | 100.0% | 1,020.25 |
| North Warehouse | Fieldwood | 71937 | | B2/B1/S2 | CYL, HYD, I/BRD, UNRPRD | | EA | | 1 | 1,020.25 | 100.0% | 1,020.25 |
| North Warehouse | Fieldwood | 71939 | | B2/B4/S | CYL: COMPRSSR, 8", W/ ALL HD STDDS & NTS | | EA | | 1 | 6,558.73 | 100.0% | 6,558.73 |
| North Warehouse | Fieldwood | 71948 | | B2/B5/S1 | VLV CHR: UNRPR'D | | EA | | 8 | 153.04 | 100.0% | 153.04 |
| North Warehouse | Fieldwood | 71952 | | B2/B1/S2 | CYL: CMPRSSR, 8", W/ IB HEAD & P. GL ND | | EA | | 1 | 3,497.99 | 100.0% | 3,497.99 |
| North Warehouse | Fieldwood | 71955 | | B2/B4/S1 | PSTN: COMP, C.I., W/2 STEEL DONUTS | | EA | | 1 | 1,311.75 | 100.0% | 1,311.75 |
| North Warehouse | Fieldwood | 71971 | | B2/B1/S2 | PSTN/ ROD ASSY: X 2", NO RINGS, TUNGSTEN | | EA | | 1 | 1,289.88 | 100.0% | 1,289.88 |
| North Warehouse | Fieldwood | 71975 | | B2/B1/S2 | CRSSHD: GUIDE, WBF-74, BORE | | EA | | 1 | 3,279.36 | 100.0% | 3,279.36 |
| North Warehouse | Fieldwood | 71977 | | B2/B1/S2 | DIST PC: WBF-74, NEW OEM 14" CYL | | EA | | 1 | 2,040.49 | 100.0% | 2,040.49 |
| North Warehouse | Fieldwood | 71980 | | WH/B29/S1 | FAN ASSY: 7 BLADE 132" DIA AIR-X-CHANGER | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 71983 | | WH/B29/S1 | FAN BLDES: FIBERGLASS 62" L X 11-1/4" W | | EA | | 6 | 364.37 | 100.0% | 364.37 |
| North Warehouse | Fieldwood | 72001 | | WH/B8/S2 | PMP ASSY: LUBE, MVS, W/ ATMOS IND. & | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 72002 | | WH/B8/S2 | PMP ASSY: LUBE, MVS, W/ ATMOS IND. & | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 72013 | | WH/B8/FLR | HD: CYL, PWR, RECOND | | EA | | 2 | 1,311.75 | 100.0% | 1,311.75 |
| North Warehouse | Fieldwood | 72025 | | WH/B38/S1 | MANIFOLD: INTAKE | | EA | | 1 | 728.75 | 100.0% | 728.75 |
| North Warehouse | Fieldwood | 72027 | | WH/B36/S1 | MANIFOLD: EXHST, P9390, SECTIONS | | EA | | 3 | 655.87 | 100.0% | 655.87 |
| North Warehouse | Fieldwood | 72037 | | WH/B6/S2 | ROD: CONN, P9390, US'D | | EA | | 16 | 510.12 | 100.0% | 510.12 |
| North Warehouse | Fieldwood | 81982 | | B3/B2/FLR | ROD: ARTIC1D, GMVC | | EA | | 1 | 1,366.40 | 100.0% | 1,366.40 |
| North Warehouse | Fieldwood | 81984 | | B3/B4/S3 | SPRCKT: TLA SGL SPLIT | | EA | | 1 | 6,635.24 | 100.0% | 6,635.24 |
| North Warehouse | Fieldwood | 81985 | | B3/B4/FLR | SPRCKT: TLA IDLER W/PUMP | | EA | | 1 | 1,923.89 | 100.0% | 1,923.89 |
| North Warehouse | Fieldwood | 81987 | | WH/B41/S2 | SHOE: GMVC XHD | | EA | | 1 | 1,689.76 | 100.0% | 1,689.76 |
| North Warehouse | Fieldwood | 89087 | | WH/B43/S1 | PSTN/ROD ASSY: SZ 28" US'D C7120-3A 3172 | | EA | | 1 | 9,838.09 | 100.0% | 9,838.09 |
| North Warehouse | Fieldwood | 96073 | | WH/B8/S2 | PMP,HYD: 5.2gpm | | EA | | 1 | 9,793.64 | 100.0% | 9,793.64 |
| North Warehouse | Fieldwood | 96074 | | WH/B8/S2 | PMP,HYD: 1.9gpm | | EA | | 1 | 9,793.64 | 100.0% | 9,793.64 |
| North Warehouse | Fieldwood | 112605 | | B3/B8/FLR | KT: RPR VRA | | EA | | 3 | 852.63 | 100.0% | 852.63 |
| North Warehouse | Fieldwood | 112606 | | B3/B10/S1 | VLV | | EA | | 3 | 1,093.12 | 100.0% | 1,093.12 |
| North Warehouse | Fieldwood | 112608 | | B3/B10/S1 | VLV | | EA | | 6 | 655.87 | 100.0% | 655.87 |
| North Warehouse | Fieldwood | 197167 | | WH/B25/S2 | TRBCHRGR: VTC254 BBC W/MNTNG GSKT | | EA | | 1 | 33,066.91 | 100.0% | 33,066.91 |
| North Warehouse | Fieldwood | 200368 | | WH/B30/FLR | ROTOR ASSY, DEEPWELL PUMP | | EA | | 1 | 7,651.85 | 100.0% | 7,651.85 |
| North Warehouse | Fieldwood | 200371 | | B2/B10/FLR | CYL: WRTHGTN SIZE 9-1/4" | | EA | | 1 | 10,931.21 | 100.0% | 10,931.21 |
| North Warehouse | Fieldwood | 200372 | | B2/B11/FLR | CYL: WRTHGTN, SIZE 7" | | EA | | 1 | 8,744.97 | 100.0% | 8,744.97 |
| North Warehouse | Fieldwood | 200379 | | B2/B11/FLR | CYL: WRTHGTN SIZE 7.007 | | EA | | 1 | 9,838.09 | 100.0% | 9,838.09 |
| North Warehouse | Fieldwood | 200380 | | WH/B5/S2 | IMPELLER: TURBINE | | EA | | 1 | 16,560.78 | 100.0% | 16,560.78 |
| North Warehouse | Fieldwood | 200381 | | WH/B5/S2 | IMPELLER: 'C30' B STG, SOLAR | | EA | | 1 | 17,289.53 | 100.0% | 17,289.53 |
| North Warehouse | Fieldwood | 200387 | | WH/B11/S1 | COMPR: AIR | | EA | | 1 | 6,194.35 | 100.0% | 6,194.35 |
| North Warehouse | Fieldwood | 200390 | | WH/B27/S2 | GEAR: BX TYPE, 206HS, RAT 1.262-1 | | EA | | 1 | 29,149.89 | 100.0% | 29,149.89 |
| North Warehouse | Fieldwood | 200400 | | WH/B5/S2 | BEARING ASSY: C30 SLR GC DMPR SUCT | | EA | | 1 | 21,060.80 | 100.0% | 21,060.80 |
| North Warehouse | Fieldwood | 200401 | | WH/B5/S2 | BEARING ASSY: C30 DIS SLR GC TILT PAD | | EA | | 1 | 18,346.21 | 100.0% | 18,346.21 |
| North Warehouse | Fieldwood | 200414 | | B2/B7/S1 | CYL: 6, WRTHGTN COMPRSSR | | EA | | 1 | 8,744.97 | 100.0% | 8,744.97 |
| North Warehouse | Fieldwood | 200421 | | B2/B9/FLR | CYL: 15", COMPRSSR, NO STDDS F/VLV CAPS | | EA | | 1 | 14,574.95 | 100.0% | 14,574.95 |
| North Warehouse | Fieldwood | 200422 | | B2/B5/S1 | CYL: 9", COMPRSSR #10674-E I/R -RDS | | EA | | 1 | 10,931.21 | 100.0% | 10,931.21 |
| North Warehouse | Fieldwood | 200423 | | B2/B11/S1 | CYL: 11-1/4", COMPRSSR W/ 11.287 BORE | | EA | | 1 | 13,117.45 | 100.0% | 13,117.45 |
| North Warehouse | Fieldwood | 200424 | | B2/B5/S2 | CYL: 5", COMPRSSR I/R-RDS | | EA | | 1 | 9,327.97 | 100.0% | 9,327.97 |
| North Warehouse | Fieldwood | 200426 | | WH/B20/S1 | TURBINE | | EA | | 1 | 3,643.74 | 100.0% | 3,643.74 |
| North Warehouse | Fieldwood | 202849 | | YD/R4 | HEAT EXCHNGR | | EA | | 1 | 22,226.79 | 100.0% | 22,226.79 |
| North Warehouse | Fieldwood | 202850 | | WH/B38/FLR | PMP: CMSD 4X6X10.5 | | EA | | 1 | 65,000.00 | 100.0% | 65,000.00 |
| North Warehouse | Fieldwood | 202854 | | Bay 6 | COMPR: PKG | | EA | | 1 | 22,117.48 | 100.0% | 22,117.48 |
| North Warehouse | Fieldwood | 202876 | | YD/R4 | ENG: NG 399 | | EA | | 1 | | 100.0% | |
| North Warehouse | Fieldwood | 227188 | | B3/B6/S1 | CYL: CPR GMWA-9-1A PWR CYLINDERS | | EA | | 1 | 7,651.85 | 100.0% | 7,651.85 |
| North Warehouse | Fieldwood | 228011 | | Bay 2 | PSTN/ROD ASSY: 29-1/2", CPR F/ V250 COM | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 228012 | | B2/B2/S1 | PSTN ROD: I/R RDS 2.125 IN CRBDE CTD | | EA | | 1 | 2,379.02 | 100.0% | 2,379.02 |
| North Warehouse | Fieldwood | 229324 | | WH/B44/S1 | PSTN/ROD ASSY: TLA COMPRSSR | | EA | | 1 | 4,733.25 | 100.0% | 4,733.25 |
| North Warehouse | Fieldwood | 233282 | | Linear Controls | ENG:NG,235hp,1200rpm | | EA | | 1 | 26,909.80 | 100.0% | 26,909.80 |
| North Warehouse | Fieldwood | 233305 | | B1/Floor | ENG:DIESEL,318hp,8,2100 rpm | | EA | | 1 | 13,481.83 | 100.0% | 13,481.83 |
| North Warehouse | Fieldwood | 233453 | | Yard/Row 3 | GEN:DIESEL,30kW,208/48 0V,AC,1800rpm, 3ph | | EA | | 1 | 9,291.53 | 100.0% | 9,291.53 |
| North Warehouse | Fieldwood | 241167 | | B2/B6/FLR | CYL: 28", VRA CLRK COMPRSSR | | EA | | 1 | 3,079.21 | 100.0% | 3,079.21 |
| North Warehouse | Fieldwood | 241168 | | B2/B7/FLR | CYL: 17", VRA CLRK COMPRSSR | | EA | | 1 | 2,309.41 | 100.0% | 2,309.41 |
| North Warehouse | Fieldwood | 241169 | | B2/B2/FLR | CYL: 9, VRA CLRK COMPRSSR | | EA | | 1 | 1,539.61 | 100.0% | 1,539.61 |
| North Warehouse | Fieldwood | 241173 | | WH/B44/FL | PSTN/ROD ASSY: VRA CLRK COMPRSSR | | EA | | 1 | 1,539.61 | 100.0% | 1,539.61 |
| North Warehouse | Fieldwood | 241179 | | WH/B1/Floor | HD: VRA CLRK O/BRD UNLDR | | EA | | 1 | 3,849.02 | 100.0% | 3,849.02 |
| North Warehouse | Fieldwood | 241181 | | B10K/B36/S1 | VLV CHR: VRA CLRK VLV CHRS F/13" | | EA | | 12 | 173.21 | 100.0% | 173.21 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 241182 | | B3/B10,11,12/FLR | PSTN: VRA CLRK PWR | | EA | | 6 | 2,169.33 | 100.0% | 2,169.33 |
| North Warehouse | Fieldwood | 241185 | | B3/B9/S1 | ROD: VRA CLRK ART CONN | | EA | | 1 | 11,708.19 | 100.0% | 11,708.19 |
| North Warehouse | Fieldwood | 241189 | | B3/B10/S3 | PIN: WRIST, VRA CLRK PWR PISTON | | EA | | 4 | 1,255.26 | 100.0% | 1,255.26 |
| North Warehouse | Fieldwood | 241191 | | B3/B8/S1 | TENSIONER: VRA CLRK CHAIN | | EA | | 2 | 1,196.78 | 100.0% | 1,196.78 |
| North Warehouse | Fieldwood | 241202 | | B3/B2/S2 | GVRNR: GMVC-12 | | EA | | 1 | 8,409.66 | 100.0% | 8,409.66 |
| North Warehouse | Fieldwood | 241203 | | B3/B1/FLR | JUMPER: H2O, GMVC-12 HD TO CYL | | EA | | 12 | 148.50 | 100.0% | 148.50 |
| North Warehouse | Fieldwood | 241205 | | B3/B3/S2 | JUMPER: H2O, GMVC-12 CYL TO RAIL | | EA | | 6 | 111.47 | 100.0% | 111.47 |
| North Warehouse | Fieldwood | 241216 | | B3/B3/S3 | EXHST: ELBOW, GMVC-12, GMVA-34-2C | | EA | | 4 | 857.27 | 100.0% | 857.27 |
| North Warehouse | Fieldwood | 251608 | | B2/Yard | ENG | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 252667 | | B2/B5/S2 | CYL: 6", WHT SUPR COMPRSSR CMPLT | | EA | | 1 | 4,862.67 | 100.0% | 4,862.67 |
| North Warehouse | Fieldwood | 323171 | | WH/B41/S1 | PSTN: RING FOR 23.00" PISTON | | EA | | 2 | 238.14 | 100.0% | 238.14 |
| North Warehouse | Fieldwood | 323172 | | WH/B41/S1 | PSTN: RING FOR 16.50" PISTON | | EA | | 2 | 223.27 | 100.0% | 223.27 |
| North Warehouse | Fieldwood | 323173 | | WH/B41/S1 | PSTN: RING FOR 10.50" PISTON | | EA | | 3 | 139.85 | 100.0% | 139.85 |
| North Warehouse | Fieldwood | 326861 | | WH/B41/FLR | PSTN: 10.50", PART #579-062-001 | | EA | | 1 | 6,451.03 | 100.0% | 6,451.03 |
| North Warehouse | Fieldwood | 326862 | | WH/B44/FLR | PSTN: ROD FOR 10.50", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 326863 | | WH/B44/FLR | PSTN: ROD FOR 23.00", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 326864 | | WH/B44/FLR | PSTN: ROD FOR 16.50", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 328243 | | WH/B41/FLR | PSTN: 16.50", PART #579-082-201 | | EA | | 1 | 18,426.94 | 100.0% | 18,426.94 |
| North Warehouse | Fieldwood | 329558 | | Linear Controls | ENG:NG,423hp,12,7in,H2 0,900rpm | | EA | | 1 | 84,000.00 | 100.0% | 84,000.00 |
| North Warehouse | Fieldwood | 333387 | | WH/B41/FLR | PSTN: 23.00", PART #579-303-201 | | EA | | 1 | 33,442.43 | 100.0% | 33,442.43 |
| North Warehouse | Fieldwood | 348619 | | B1/B1/S1 | MTR,ELEC:TEFC,3600rpm, 150hp,445LP | | EA | | 1 | 7,220.06 | 100.0% | 7,220.06 |
| North Warehouse | Fieldwood | 370132 | | Linear Controls | ENG:NG,85-220hp,1905in3,6,7IN | | EA | | 1 | 60,750.95 | 100.0% | 60,750.95 |
| North Warehouse | Fieldwood | 500133 | | Fluid Crane | SUMP TANK,4'WX10'LX4'H,ATM OS,EXT,16" PFLA | | EA | | 1 | 26,250.00 | 100.0% | 26,250.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 61 | 1-48" X 15' X 230 WP L.P. Horizontal Separator (No Skid) | ? | EA | | 1 | 4,850.00 | 100.0% | 4,850.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 64 | 24" X 10' Vertical H.P. Separator w/Skid | Eugene Island Block#266-B | EA | | 1 | 1,770.00 | 100.0% | 1,770.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 65 | 12" X 6' Vertical LP Fuel Gas Scrubber (No Skid) | ? | EA | | 1 | 1,235.00 | 100.0% | 1,235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 66 | 12" X 6' Vertical LP Fuel Gas Scrubber w/Skid | South Marsh Island 11-N | EA | | 1 | 1,235.00 | 100.0% | 1,235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 70 | 1-120 Degree Boat Landing with 48" Plate Doublers | South Marsh Island 11 | EA | | 1 | 820.00 | 100.0% | 820.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 73 | 24" X 10' Vertical H.P. Separator w/Skid | ? | EA | | 1 | 1,625.00 | 100.0% | 1,625.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 74 | 30" X 10' Vertical LP Test Separator w/Skid | ? | EA | | 1 | 1,895.00 | 100.0% | 1,895.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 77 | 16" X 8' Vertical LP Separator (No Skid) | South Marsh Island 10 | EA | | 1 | 1,455.00 | 100.0% | 1,455.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 90 | 1-48" X 10' X 275 WP L.P. Horizontal Scrubber Vessel NO SKID | South Marsh Island Block# 48 E | EA | | 1 | 4,120.00 | 100.0% | 4,120.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 96 | 1-Glycol Reboiler with Stack & Stihl Column | High Island Block# 467 A | EA | | 1 | 8,145.00 | 100.0% | 8,145.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 100 | 48" X 10' X 275# W.P. Horizontal Water Skimmer with Skid | N/A | EA | | 1 | 4,175.00 | 100.0% | 4,175.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 101 | 42" X 15' X 1440# W.P. Horizontal 3-Phase Separator "No Skid" | N/A | EA | | 1 | 3,895.00 | 100.0% | 3,895.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 102 | 42" X 12' 6" X 125# W.P. Horizontal Skimmer with Skid | N/A | EA | | 1 | 3,215.00 | 100.0% | 3,215.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 103 | 20" X 7' 6" X 275 W.P. Vertical Separator with Skid | N/A | EA | | 1 | 1,210.00 | 100.0% | 1,210.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 104 | 30" X 10' X 1480 W.P. Horizontal Separator with Skid | N/A | EA | | 1 | 2,150.00 | 100.0% | 2,150.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 105 | One Dual Meter Run Skid with Pig Traps | N/A | EA | | 1 | 1,385.00 | 100.0% | 1,385.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 106 | 30" X 6' X 150# W.P. Vertical Scrubber Vessel with Skid | N/A | EA | | 1 | 1,665.00 | 100.0% | 1,665.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. KK | 30" X 4' X 250 WP Vertical Scrubber Vessel w/Skid | From Offshore Specialty Fabricators in Houma | EA | | 1 | 1,570.00 | 100.0% | 1,570.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. CCC | Line Heater/Reboiler Package 8' W X 22' 6"L X 10' 1" T | Eugene Island Block# 212 "A" | EA | | 1 | 12,275.00 | 100.0% | 12,275.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. DDD | 3-Vapor Recovery Stands | Eugene Island Block# 212 "A" | EA | | 1 | 235.00 | 100.0% | 235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. EEE | 1-Heater Stack, 1-Still Column, and Misc Pipe and Hardware for Line Heater/Reboiler | Eugene Island Block# 212 "A" | EA | | 1 | 355.00 | 100.0% | 355.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 107 | 1-Pallet of Used Spool Piping | West Cameron Block# 165 "A" | EA | | 1 | 295.00 | 100.0% | 295.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 109 | 1-Filter Separator with Skid (5' X 12' X 8' Tall) Est. 10,000# | High Island Block# A376 B | EA | | 1 | 1,155.00 | 100.0% | 1,155.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 110 | 1-Float Cell with Skid (7' X 12' X 9' Tall) Est. 10,000# | High Island Block# A376 B | EA | | 1 | 1,490.00 | 100.0% | 1,490.00 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qt | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 111 | Two (2) Plate Heat Exchanger Skids | High Island Block# A595 "CF" | EA | | 1 | 475.00 | 100.0% | 475.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 112 | 1-Piggy-Back Water Skimmer & Float Cell Package (Newly Fabricated) | Main Pass Block# 140-A | EA | | 1 | 5,025.00 | 100.0% | 5,025.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 113 | 1-Verticle Water Skimmer Vessel with Skid (60" X 12" X 15,000#) (MBM-1800) | Vermilion Block# 60-A | EA | | 1 | 3,375.00 | 100.0% | 3,375.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 114 | 1-Verticle Floatation Unit (4M Spinsep) with Skid (ABM-1908) (10,150M) (Monosep Corporation-Serial# MCO-2076) | West Cameron Block# 68-A | EA | | 1 | 655.00 | 100.0% | 655.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 115 | 1-Verticle Test Separator with Skid (MBD-4501) (36 X 10 Foot X 17,000#) (2,000 WP @ 100 deg, MFG 1982) | West Cameron Block# 68-A | EA | | 1 | 865.00 | 100.0% | 865.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 116 | 1-Horizontal 3-Phase H.P. Production Separator with Skid (MBD-4502) (60" X 15') (1440 @ 100 Deg-Yr Built 1982) | West Cameron Block# 68-A | EA | | 1 | 1,435.00 | 100.0% | 1,435.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 117 | 1-Vertical Vent Scrubber Package with Skid (MBF-2401) (30" X 10' X 22,000#) | West Cameron Block# 68-A | EA | | 1 | 1,775.00 | 100.0% | 1,775.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 118 | 1-Horizontal 2-Phase Vent Scrubber Vessel W/Skid (48" X 10' X 150# @ 100 Deg) Built 1987 | East cameron Block# 320-A | EA | | 1 | 3,545.00 | 100.0% | 3,545.00 |
| Viking - Henderson | Viking Fabricators, LLC | | | | Handrails | | EA | | 179 | 315.00 | 100.0% | 315.00 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 10 FT. LONG LADDER CAGES | | EA | | 1 | 763.87 | 100.0% | 763.87 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 12'-6" LONG LADDER CAGES | | EA | | 84 | 1,291.85 | 100.0% | 1,291.85 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 10 FT. LONG LADDERS | | EA | | 81 | 622.75 | 100.0% | 622.75 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 20 FT. LONG LADDERS | | EA | | 107 | 1,236.43 | 100.0% | 1,236.43 |
| Linear - Lafayette | Linear Controls | 2124118-01 | 11233630-1 | ATS - OUTDOOR | ASSY, TREE CAP, BP TROIKA | | EA | 7,155 | 1 | 5,545.13 | 100.0% | 5,545.13 |
| Linear - Lafayette | Linear Controls | 2124617-01 | 2659561170 | ATS - OUTDOOR | ASSY, RIG TEST SKID, SUBSEA TREE, | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124117-07 | 400257303-01 | ATS - OUTDOOR | CONV. ASSY, SUBSEA TREE, 4" X 2"-10M, | | EA | 80,000 | 1 | 62,000.00 | 100.0% | 62,000.00 |
| Linear - Lafayette | Linear Controls | 2273013-01 | 110598733-1(RR1) | ATS - OUTDOOR | ASSEMBLY, 5" X 2"-10M SPOOLTREE | | EA | 66,000 | 1 | 51,150.00 | 100.0% | 51,150.00 |
| Linear - Lafayette | Linear Controls | 2124123-01 | 96101817050 | ATS - OUTDOOR | ASSY, TREE CAP SHIPPING SKID | | EA | 1,850 | 1 | 1,433.75 | 100.0% | 1,433.75 |
| Linear - Lafayette | Linear Controls | 2124145-01 | 45256012-5 | ATS - OUTDOOR | ASSY, HUB, 4" WELL TERMINATION, | | EA | 1,400 | 1 | 1,085.00 | 100.0% | 1,085.00 |
| Linear - Lafayette | Linear Controls | 2141833-01 | 11227730-01 | ATS - OUTDOOR | ASSY, TREE TRANSPORTATION SKID, BP | | EA | 5,800 | 1 | 4,495.00 | 100.0% | 4,495.00 |
| Linear - Lafayette | Linear Controls | 2124836-01 | 11171617-1 | ATS - OUTDOOR | TEST STUMP BODY, TREE FAT SKID, | | EA | 6,200 | 1 | 4,805.00 | 100.0% | 4,805.00 |
| Linear - Lafayette | Linear Controls | 2124641-01 | 11384318-1 | ATS - OUTDOOR | ASSY, COMPLETION GUIDE BASE, STM-15 | | EA | 20,500 | 1 | 15,887.50 | 100.0% | 15,887.50 |
| Linear - Lafayette | Linear Controls | 2098861-02 | 11197244-1 | ATS - OUTDOOR | ASSY, MCPAC CONNECTION TOOL, SHELL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2098861-02 | 11199037-1 | ATS - OUTDOOR | ASSY, MCPAC CONNECTION TOOL, SHELL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124119-01 | 964534560 | ATS - OUTDOOR | ASSY, TREE RUNNING TOOL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124129-01 | 265340930 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER RUNNING TOOL | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124128-01 | 11286013-17 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER, STM-15, | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |
| Linear - Lafayette | Linear Controls | 2124135-01 | 2659561200 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER HANDLING / TEST | | EA | 300 | 1 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2124135-01 | 2659561190 | TOOLSKID - OUTDOOR | ASSIY, TUBING HANGER HANDLING / TEST | | EA | 300 | 1 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2018904-01 | 265956120(RR2) | TOOLSKID - OUTDOOR | ASSY, LEAD IMPRESSION TOOL | | EA | 900 | 1 | 697.50 | 100.0% | 697.50 |
| Linear - Lafayette | Linear Controls | 2124129-01 | 266013010 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER RUNNING TOOL | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124139-01 | 11186901-01 | TOOLSKID - OUTDOOR | ASSY, DUMMY TBG HGR, STM-15, 4.06" | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |
| Linear - Lafayette | Linear Controls | 2055294-12 | 110357224-01 | CPB 077 - INDOOR | ASSEMBLY, TUBING HANGER, 5 IN NOM. | | EA | 2,500 | 1 | 1,937.50 | 100.0% | 1,937.50 |
| Linear - Lafayette | Linear Controls | 2748033-01 | 45353783-01-01 | CPB 077 - INDOOR | WIRELINE PLUG, 5.25" DIA, METAL AND | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2749898-01 | 4500436775-2-1 | CPB 077 - INDOOR | 5.250" WIRELINE PLUG 'HH' TRIM WITH | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2055296-02-01 | 110407008-1 | CPB 078 - INDOOR | ASSEMBLY, INTERNAL TREE CAP, 10K WP | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 60007268 | 96953428110 | SF-YARD - OUTDOOR | TROIKA TOOL SHED | | EA | | 1 | 15,000.00 | 100.0% | 15,000.00 |
| Linear - Lafayette | Linear Controls | 2124147-04 | 111802674 | TRI 168 - INDOOR | ASSY, CLAMP, W/ SEAL PLATE, 10" | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-05 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-06 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-05 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11363037-01 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-04 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124159-01 | 45284821-04 | TRI 171 - INDOOR | BODY, HUB, 10" FLOWLINE TEST STAND | | EA | 250 | 1 | 193.75 | 100.0% | 193.75 |
| Linear - Lafayette | Linear Controls | 2124159-01 | 45284821-01 | TRI 171 - INDOOR | BODY, HUB, 10" FLOWLINE TEST STAND | | EA | 250 | 1 | 193.75 | 100.0% | 193.75 |

| Facility | Facility Owner | Item Number | Serial No | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qt | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 041700-47 | 4503010723-1-1 | TRI 171 - INDOOR | GASKET, AX - 18-3/4" 10/15M 316 SS | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 96111219520 | TRI 172 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 96111219570 | TRI 172 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2141279-01 | 4502534448-01-01 | TRI 172 - INDOOR | CLAMP, 10" FLOWLINE/ PIGGING LOOP/ | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-02-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-01-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-03-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2142930-01 | 4501742451-1-2 | TRI 174 - INDOOR | ACCESS STAND, G2 TUBING HANGER RUNNING | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11410124-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-02 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-02 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-03 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-04 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-01 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-03 | 4502533058-01-01 | TRI 174 - INDOOR | SEAL PLATE, 10" FLOWLINE JUMPER | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11251434-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124586-01 | 450605865-1 | TRI 175 - INDOOR | END PLATE, MANDREL RETAINER, | | EA | 500 | 1 | 387.50 | 100.0% | 387.50 |
| Linear - Lafayette | Linear Controls | 2124584-01 | 450605849-1-1 | TRI 175 - INDOOR | MANDREL, RETAINER SLEEVE, | | EA | 400 | 1 | 310.00 | 100.0% | 310.00 |
| Linear - Lafayette | Linear Controls | 2124535-01 | NS20160402072902 | TRI 175 - INDOOR | ANNULUS LOOP, 2.875 O.D. X 2.125 | | EA | 300 | 4 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2124624-01 | 450604006-1 | TRI 175 - INDOOR | BODY, 4" PRODUCTION STAB, | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124585-01 | 450605858-1 | TRI 175 - INDOOR | RETAINER PLATE, MASTER VALVE BLOCK | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2156742-01 | 11328834-01 | TRI 175 - INDOOR | SUB-ASSY, BOP SPANNER JOINT, 7.625" | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2156773-02 | 11322641-01 | TRI 175 - INDOOR | UPPER ADAPTER, BOP SPANNER JOINT, | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 400297648 | TRI 176 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 11213146-1 | TRI 176 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 041700-09-01 | 400133273 | TRI 178 - INDOOR | AX GASKET, 11"- 5M/10MM, ST/ST1 WITH | | EA | 30 | 1 | 23.25 | 100.0% | 23.25 |
| Linear - Lafayette | Linear Controls | 041700-09-01 | 400133274 | TRI 178 - INDOOR | AX GASKET, 11"- 5M/10MM, ST/ST1 WITH | | EA | 30 | 1 | 23.25 | 100.0% | 23.25 |
| Linear - Lafayette | Linear Controls | 2098477-01 | 175670-1 | TRI 178 - INDOOR | AX-VX GASKET | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2098477-01 | 175670-2 | TRI 178 - INDOOR | AX-VX GASKET | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-8 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-6 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-3 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-11 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-3 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-2 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45438628-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-4 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 501040-1 | 961276244180 | TRI 178 - INDOOR | 6" Gasket Sealing Ring | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-04 | 45424496-2 | TRI 178 - INDOOR | GASKET W/ O-RING, 10"-15M SEAL | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-01 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-01 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-06 | 45424796-06 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424274-02 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-04 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-03 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-04 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124134-01 | 2659561110 | TRI 180 - INDOOR | ASSY, TUBING HANGER ADJUSTMENT STAN | | EA | 600 | 1 | 465.00 | 100.0% | 465.00 |
| Linear - Lafayette | Linear Controls | 2099720-02 | 26-1567 | TRI FLOOR - INDOOR | ASSY, TREE CAP RUNNING TOOL, BP | | EA | 5,000 | 1 | 3,875.00 | 100.0% | 3,875.00 |
| Linear - Lafayette | Linear Controls | 60031311 | 9523237807360 | TRI SHED - INDOOR | Troika Dummy Control Pod | | EA | 3,000 | 1 | 2,325.00 | 100.0% | 2,325.00 |
| Linear - Lafayette | Linear Controls | 60031470 | 9523237807390 | TRI SHED - INDOOR | SHELL DUMMY CONTROL POD SHIPPING SKID | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |

Exhibit I-G

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qt | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 2123000-01 | 9624280360 | TRI-SHELL - OUTDOOR | HANDLING TOOL ASSY, TREE CAP & TREE | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2123000-01 | 2657807220 | TRI-SHELL - OUTDOOR | HANDLING TOOL ASSY, TREE CAP & TREE | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2123738-01 | 9624280370 | TRI-SHELL - OUTDOOR | LIFT SUB, 1.50" NOM SHACKLE X | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2099099-03 | 11196376-1 | TRI-SHELL - OUTDOOR | ASSY, TEST HUB, 10" FLOWLINE / | | EA | 350 | 1 | 271.25 | 100.0% | 271.25 |
| Linear - Lafayette | Linear Controls | 2099099-03 | 11210778-1 | TRI-SHELL - OUTDOOR | ASSY, TEST HUB, 10" FLOWLINE / | | EA | 350 | 1 | 271.25 | 100.0% | 271.25 |
| Linear - Lafayette | Linear Controls | 2035504-02 | 961276650350 | TRI-SHELL - OUTDOOR | ASSY, DEBRIS CAP, 18-3/8" OD MCPAC | | EA | 100 | 1 | 77.50 | 100.0% | 77.50 |
| Linear - Lafayette | Linear Controls | 2035519-01 | 1276650650 | TRI-SHELL - OUTDOOR | ASSY, ROV RETRIEVABLE DEBRIS/TEST | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2035519-01 | 1276650660 | TRI-SHELL - OUTDOOR | ASSY, ROV RETRIEVABLE DEBRIS/TEST | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2156132-01 | 9523237807220 | TRI-SHELL - OUTDOOR | ASSY, COMBINATION (TREE/TREE CAP) | | EA | 500 | 1 | 387.50 | 100.0% | 387.50 |
| Linear - Lafayette | Linear Controls | 2156145-01 | 11324065-01 | TRI-SHELL - OUTDOOR | ASSY, 3-1/16-15M MONOBORE TUBING | | EA | 8,500 | 1 | 6,587.50 | 100.0% | 6,587.50 |
| Linear - Lafayette | Linear Controls | 2124137-01 | 9523237807330 | TRI-SHELL - OUTDOOR | ASSY, TOOL STORAGE & SHIPPING SKID | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124137-01 | 9523237807340 | TRI-SHELL - OUTDOOR | ASSY, TOOL STORAGE & SHIPPING SKID | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124118-01 | 11278658-1 | TRI-SHELL - OUTDOOR | ASSY, TREE CAP, BP TROIKA | | EA | 8,000 | 1 | 6,200.00 | 100.0% | 6,200.00 |
| Linear - Lafayette | Linear Controls | | Serial.# WPI317 | | Waukesha Engine L7042 GSI | | EA | | 1 | 82,625.00 | 100.0% | 82,625.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 48799 | | Waukesha Engine L3711 | | EA | | 1 | 51,250.00 | 100.0% | 51,250.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 1029776 | | Waukesha Engine F1905 | | EA | | 1 | 43,765.00 | 100.0% | 43,765.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 218794 | | Waukesha Engine F1905 | | EA | | 1 | 43,765.00 | 100.0% | 43,765.00 |
| Linear - Lafayette | Linear Controls | | Serial.#396632 | | Waukesha Engine F1197 | | EA | | 1 | 24,315.00 | 100.0% | 24,315.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 362530 | | Waukesha Engine F1197 | | EA | | 1 | 24,315.00 | 100.0% | 24,315.00 |
| Whitco - Broussard | Whitco Supply | 357501 | | | 1" x 3' x 20' Galvanized Grating | | EA | | 106 | 395.00 | 100.0% | 395.00 |
| Whitco - Broussard | Whitco Supply | 333963 | | | 1-1/2" x 3' x 20' Galvanized Grating | | EA | | - | 598.00 | 100.0% | 598.00 |
| Express - Fourchon | Express Supply & Steel | | | | 1" x 3-1/16" x 36" x 20' Serrated Galvanized Domestic Grating | | EA | | 10 | 400.65 | 100.0% | 400.65 |
| Express - Fourchon | Express Supply & Steel | | | | 1-1/2" x 3-1/16" x 36" x 20' Serrated Galvanized Domestic Grating | | EA | | 35 | 555.67 | 100.0% | 555.67 |

Exhibit I-H

Cash and other balances to be determined at effective date

**Surety Bonds in favor of FWE I:**

| DATE | BOND NO. | Amount | Lease | PARTIES | SURETY | BENEFICIARY |
|---|---|---|---|---|---|---|
| 3/6/19 | B011964 | $300,000 | OCS-G 01194 | Fieldwood Energy LLC; Byron Energy Inc. | U.S. Specialty Insurance Company | Fieldwood Energy LLC |
| 3/6/19 | B011963 | $450,000 | OCS-G 01194 | Fieldwood Energy LLC; Byron Energy Inc.;BOEM | U.S. Specialty Insurance Company | Fieldwood Energy LLC; BOEM |
| 11/29/18 | N-7001005 | $2,366,855 | OCS-0810; OCS-0812 | Northstar Offshore Ventures LLC; SanareEnergy Partners, LLC; Fieldwood Energy LLC | Indemnity National Insurance Company | Fieldwood Energy LLC |
| 3/9/18 | N-7000930 | $2,640,126 | OCS-G11691 | Monforte Exploration L.L.C.; FieldwoodEnergy LLC | Indemnity National Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149835 | $250,000 | OCS-G03587 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149836 | $1,000,000 | OCS-G03171 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149838 | $2,500,000 | OCS-G01216;OCS-G01217 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 5/1/16 | RLB0016261 | $1,514,600 | 2 A; ROW G12732;ROW G13 | Whitney Oil & Gas, LLC; Apache Corporation; GOM Shelf LLC | RLI Insurance Company | Apache Corporation; GOM Shelf LLC |

**Exhibit I-I**

**<u>Subsidiaries:</u>**
GOM Shelf LLC
FW GOM Pipeline Inc.

**<u>Equity Interests:</u>**
Paloma Pipeline Company - 9.65%
SP 49 LLC - 33.33% (owned by FW GOM Pipeline Inc.)

Exhibit I-J

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 287 | G24987 | Federal | RT | 5/1/2003 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 287 | G24987 | Federal | OP 1 | 5/1/2003 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 287 | G24987 | Federal | OP 2 | 5/1/2003 | | 5000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 308 | G21685 | Federal | RT | 6/1/2000 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 308 | G21685 | Federal | OP 1 | 6/1/2000 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 308 | G21685 | Federal | OP 2 | 6/1/2000 | | 5000 | Fieldwood En | 50.0% | PROD |
| VERMILION 362/371 | VR 362 | G10687 | Federal | RT | 6/1/1989 | | 5,000 | Fieldwood En Off | 100.0% | UNIT |
| VERMILION 362/371 | VR 362 | G10687 | Federal | OP | 6/1/1989 | | 5,000 | Fieldwood En Off | 16.7% | UNIT |
| VERMILION 362/371 | VR 363 | G09522 | Federal | RT | 5/1/1988 | | 5,000 | Fieldwood En | 100.0% | ACTIVE |
| VERMILION 362/371 | VR 363 | G09522 | Federal | OP 1 | 5/1/1988 | | 5,000 | Fieldwood En | 100.0% | ACTIVE |
| VERMILION 362/371 | VR 363 | G09522 | Federal | OP 2 | 5/1/1988 | | 5,000 | Fieldwood En Off | 33.3% | ACTIVE |
| VERMILION 362/371 | VR 363 | G09522 | Federal | OP 3 | 5/1/1988 | | 5,000 | Fieldwood En | 50.0% | ACTIVE |
| VERMILION 362/371 | VR 371 | G09524 | Federal | RT | 7/1/1988 | | 5,000 | Fieldwood En Off | 100.0% | ACTIVE |
| VERMILION 362/371 | VR 371 | G09524 | Federal | OP | 7/1/1988 | | 5,000 | Fieldwood En Off | 16.7% | ACTIVE |
| VERMILION 78 | VR 78 | G04421 | Federal | RT | 11/1/1980 | | 5,000 | Fieldwood En | 37.5% | ACTIVE |
| VERMILION 78 | VR 78 | G04421 | Federal | OP | 11/1/1980 | | 5,000 | Fieldwood En | 18.8% | ACTIVE |

Right of Way bearing Serial No. OCS-G29427 for Pipeline Segment No. 20278 pertaining to South Timbalier 308
Right of Way bearing Serial No. OCS-G15047 for Pipeline Segment No. 10675 pertaining to Vermilion 371
All other right, title and interest of FWE in any assets to the extent such assets relate to any of the foregoing leases or rights of way.

Exhibit I-K(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | e Cur Acre | Operator | WI | | Lease Status | |
|-------|-------|-------|------|--------|-------------|-------------|-----------|----------|-----|---|--------------|---|
| EAST CAMERON 2 - (SL LA) | EC 2 | SL18121 | SL - LA | WI | 5/12/2004 | 11/6/2020 | 220 | Fieldwood | 50.0% | | RELINQ | |
| CHANDELEUR 42/43 | CA 43 | G32268 | Federal | OP 1 | 7/1/2008 | | 5,000 | ieldwood E | 7.69% | | PROD | Knight Default |
| CHANDELEUR 42/43 | CA 42 | G32267 | Federal | OP 1 | 7/1/2008 | 6/21/2019 | 5,000 | ieldwood E | 7.69% | | RELINQ | Knight Default |
| WEST CAMERON 295 | WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | | 5,000 | ieldwood E | 6.00% | | PROD | Tammany Default |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | | 5,000 | Idwood En | 0.042% | | UNIT | Hillcrest GOM Default in Unit |
| SHIP SHOAL 246/247/248/270/271 | SS 248 | G01029 | Federal | RT B | 6/1/1962 | | 5,000 | Idwood En | 0.04% | | UNIT | Hillcrest GOM Default in Unit |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | ORRI | 7/1/1983 | | 5,000 | ieldwood E | 2.0% | | PROD | |

Exhibit I-K(ii)

| Asset Name | FWE Acct. Code | Lease Number | API | WI | NRI |
|---|---|---|---|---|---|
| CHANDELEUR 042 #A002 | CA042A0200 | G32267 | 177294001500 | 7.7% | 5.4% |
| CHANDELEUR 043 #A001 | CA043A0100 | G32268 | 177294001400 | 7.7% | 5.4% |
| CHANDELEUR 043 #A003 | CA043A0300 | G32268 | 177294001600 | 7.7% | 5.4% |
| EAST CAMERON 002 #001 SL 18121 | SL18121010 | 18121 | 177032013600 | 50.0% | 37.3% |
| EUGENE IS 330 #B003 ST1 | EI330B0301 | G02115 | 177104008001 | 35.0% | 29.1% |
| MAIN PASS 259 #A007 | MP259A0700 | G07827 | 177244071800 | 43.1% | 29.7% |
| MAIN PASS 303 #B015 | MP303B1500 | G04253 | 177244024800 | 42.9% | 35.7% |
| MATAGORDA IS 519 #L001 | MI519L1SL0 | MF-79413 | 427033030000 | 15.8% | 12.2% |
| MATAGORDA IS 519 #L002 | MI519L2SL0 | MF-79413 | 427033034000 | 15.8% | 12.2% |
| MATAGORDA IS 519 #L003 | MI519L3SL0 | MF-79413 | 427033039500 | 15.8% | 12.2% |
| MATAGORDA IS 519 #L004 | MI519L4SL0 | MF-79413 | 427033039700 | 15.8% | 12.2% |
| SHIP SHOAL 249 #D017 | SS249D1700 | G01030 | 177124020800 | 0.042% | TA |
| SOUTH TIMBALIER 205 #B002A ST1 | ST205B02A1 | G05612 | 177154062901 | 25.0% | 20.8% |
| SOUTH TIMBALIER 205 #B004 ST1 | ST205B0401 | G05612 | 177154081601 | 25.0% | 20.8% |
| SOUTH TIMBALIER 206 #A002 ST1 | ST206A0201 | G05613 | 177154060101 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A003 | ST206A0300 | G05613 | 177154061000 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A004A | ST206A04A0 | G05613 | 177154074300 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A006 | ST206A0600 | G05613 | 177154075100 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A007 | ST206A0700 | G05613 | 177154075200 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A008 | ST206A0800 | G05613 | 177154075300 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A009 | ST206A0900 | G05613 | 177154075400 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A010ST2BP | ST206A1002 | G05613 | 177154075702 | 25.0% | TA |
| SOUTH TIMBALIER 206 #B003 ST1 | ST206B0301 | G05613 | 177154074001 | 25.0% | 20.8% |
| SOUTH TIMBALIER 206 #B006 | ST206B0600 | G05613 | 177154103000 | 25.0% | 20.8% |
| WEST CAMERON 295 #A002 | WC295A0201 | G24730 | 177014039001 | 6.0% | 4.9% |
| SOUTH TIMBALIER 205 #G001 ST1 | ST205G0101 | G05612 | 177154106701 | 0.0% | 2.0% |
| SOUTH TIMBALIER 205 #G003 ST1 | ST205G0301 | G05612 | 177154115301 | 0.0% | 2.0% |

Exhibit I-K(iii)

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| CHANDELEUR 043 P/F-A | CA43APLT | G32268 | CA043 | 7.69% |
| HIGH ISLAND 120 P/F-A-PROCESS | HI120APROC | G01848 | HI120 | 6.00% |
| WEST CAMERON 295 P/F-A | WC295ACAS | G24730 | WC295 | 6.00% |
| SHIP SHOAL 248 P/F-G | SS248PFG | G01029 | SS248 | 0.04% |
| SOUTH TIMBALIER 206 P/F-A | ST206APLT | G05612 | ST206 | 25.00% |
| SOUTH TIMBALIER 205 P/F-B | ST205BPLT | G05612 | ST205 | 25.00% |
| MATAGORDA IS 487 P/F-L(SL) | MI487LSL | MF-88562 | MI487 | 15.80% |
| MATAGORDA IS 519 P/F-L - SL | MI519LSL | MF-88562 | MI519 | 15.80% |
| Venice Dehydration Facility (South Pass Dehydration Station) | VENICEDHYD | | | 64.80% |
| Tivoli Plant | TIVOLIPL | | | 43.86% |
| MI 519 Bay City Compressor Station | MI519BAY | | | 18.10% |
| Vermilion 76 Onshore Scrubber | VR76SCRUB | | | 6.08% |
| Grand Chenier Separation Facility | GRCHENPF | | | 72.08% |
| EAST CAMERON 002 P/F-1 SL18121 | SL181211PT | 18121 | EC002 | 50.00% |

**Exhibit II-A**

Exhibit II-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| BRETON SOUND 41 | BS 41 | G21142 | Federal | OP 2 | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | 10.0% | TERMIN |
| BRETON SOUND 41 | BS 41 | G21142 | Federal | Contractual | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | 25.0% | TERMIN |
| EAST CAMERON 257 | EC 257 | G21580 | Federal | OP 1 | 7/1/2000 | 2/2/2018 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| GALVESTON 241 | GA 241 | G01772 | Federal | OP 1 | 7/1/1968 | 8/2/2014 | 1,440 | Fieldwood En Off | 100.0% | TERMIN |
| GALVESTON 241 | GA 241 | G01773 | Federal | RT | 7/1/1968 | 8/2/2014 | 1,440 | Fieldwood En Off | 100.0% | TERMIN |
| GALVESTON 241 | GA 255 | G01777 | Federal | RT | 7/1/1968 | 4/3/1998 | 5,760 | Fieldwood En Off | 100.0% | TERMIN |
| GRAND ISLE 83 | GI 83 | G03793 | Federal | RT | 6/1/1978 | 11/26/2019 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| HIGH IS. A-446 | HI A-446 | G02359 | Federal | RT | 8/1/1973 | 4/12/2016 | 5,760 | Bandon O&G | 100.0% | TERMIN |
| HIGH ISLAND A-446 | HI A-447 | G02360 | Federal | RT | 8/1/1973 | 9/4/2010 | 5,760 | Bandon O&G | 100.0% | TERMIN |
| MAIN PASS 154 | MP 154 | G10902 | Federal | RT | 7/1/1989 | 7/29/2000 | 4,995 | Fieldwood En Off | 100.0% | TERMIN |
| MAIN PASS 29/112/114/116/118/125 | MP 112 | G09707 | Federal | RT | 6/1/1988 | 4/19/2017 | 4,995 | Fieldwood En Off | 100.0% | RELINQ |
| SOUTH MARSH IS. 39 | SM 39 | G16320 | Federal | RT | 7/1/1996 | | 5,000 | Fieldwood En Off | 50.0% | PROD |
| SOUTH TIMBALIER 242 | ST 242 | G23933 | Federal | RT | 6/1/2002 | 5/7/2019 | 5,000 | Fieldwood En Off | 60.0% | TERMIN |
| VERMILION 315/332 | VR 314 | G05438 | Federal | OP 2 | 7/1/1983 | | 5,000 | Fieldwood En Off | 50.0% | PROD |
| VERMILION 315/332 | VR 315 | G04215 | Federal | OP 1 | 1/1/1980 | 3/7/2012 | 5,000 | Dynamic Off Res | 50.0% | TERMIN |
| VERMILION 315/332 | VR 332 | G09514 | Federal | OP 1 | 7/1/1988 | | 5,000 | Fieldwood En | 67.0% | PROD |
| VERMILION 315/332 | VR 332 | G09514 | Federal | RT | 7/1/1988 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| VERMILION 315/332 | VR 333 | G14417 | Federal | RT | 7/1/1994 | 11/29/1999 | 4,201 | Fieldwood En Off | 67.0% | TERMIN |
| VIOSCA KNOLL 113 | VK 113 | G16535 | Federal | RT | 6/1/1996 | 2/23/2020 | 5,760 | Fieldwood En Off | 100.0% | TERMIN |
| VIOSCA KNOLL 251/340/384 | VK 251 | G10930 | Federal | OP 1 | 7/1/1989 | | 5,760 | Fieldwood En Off | 100.0% | UNIT |
| VIOSCA KNOLL 251/340/384 | VK 340 | G10933 | Federal | OP 1 | 7/1/1989 | | 5,760 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 100 | WC 100 | G22510 | Federal | RT | 7/1/2001 | 6/13/2018 | 5,000 | Fieldwood En Off | 100.0% | RELINQ |
| WEST CAMERON 289/290/294 | WC 290 | G04818 | Federal | OP 1 | 9/1/1981 | 7/21/2020 | 5,000 | Fieldwood En Off | 50.0% | TERMIN |

**Exhibit II-B**

Exhibit II-B

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST CAMERON 257 #001 | EC25701 | G21580 | 177044102500 |
| GALVESTON 241 #A005 | GA241A05 | G01772 | 427064001500 |
| GALVESTON 241 #A006 | GA241A06 | G01773 | 427064001700 |
| GALVESTON 241 #A010 | GA241A10 | G01773 | 427064001402 |
| GALVESTON 255 #A002 | GA255A02 | G01777 | 427063002300 |
| GALVESTON 255 #A003 | GA255A03 | G01777 | 427064000500 |
| GRAND ISLE 083 #A002 | GI083A02 | G03793 | 177174011002 |
| GRAND ISLE 083 #A003 | GI083A03 | G03793 | 177174030200 |
| GRAND ISLE 083 #B001 | GI083B01 | G03793 | 177174097400 |
| GRAND ISLE 083 #B002 | GI083B02 | G03793 | 177174098000 |
| GRAND ISLE 083 #B003 | GI083B03 | G03793 | 177174098100 |
| HIGH ISLAND A-446 #A001 | HIA446A01 | G02359 | 427094055400 |
| HIGH ISLAND A-446 #A002B | HIA446A02 | G02360 | 427094055700 |
| HIGH ISLAND A-446 #A004 | HIA446A04 | G02359 | 427094056300 |
| HIGH ISLAND A-446 #A005 | HIA446A05 | G02359 | 427094057700 |
| HIGH ISLAND A-446 #A006 | HIA446A06 | G02359 | 427094056700 |
| HIGH ISLAND A-446 #A007 | HIA446A07 | G02359 | 427094056800 |
| HIGH ISLAND A-446 #A008 | HIA446A08 | G02359 | 427094057400 |
| HIGH ISLAND A-446 #A009 | HIA446A09 | G02359 | 427094060200 |
| HIGH ISLAND A-446 #A010 | HIA446A10 | G02359 | 427094058300 |
| HIGH ISLAND A-446 #A011 | HIA446A11 | G02359 | 427094058700 |
| HIGH ISLAND A-446 #A012 | HIA446A12 | G02359 | 427094059400 |
| HIGH ISLAND A-446 #A014 | HIA446A14 | G02359 | 427094060900 |
| HIGH ISLAND A-446 #A015 | HIA446A15 | G02359 | 427094061300 |
| HIGH ISLAND A-446 #A016 | HIA446A16 | G02359 | 427094062300 |
| MAIN PASS 154 #A001 | MP154A01 | G10902 | 177244060400 |
| MAIN PASS 154 #A002 | MP154A02 | G10902 | 177244069000 |
| SOUTH MARSH IS 039 #A001 | SM039A01 | G16320 | 177074077000 |
| SOUTH MARSH IS 039 #B001 | SM039B01 | G16320 | 177074074702 |
| SOUTH MARSH IS 039 #B002 | SM039B02 | G16320 | 177074076102 |
| SOUTH MARSH IS 039 #C001 | SM039C01 | G16320 | 177074077900 |
| SOUTH MARSH IS 039 #C002 | SM039C02 | G16320 | 177074078000 |
| SOUTH MARSH IS 039 #C003 | SM039C03 | G16320 | 177074078200 |
| SOUTH MARSH IS 039 #C004 | SM039C04 | G16320 | 177074810200 |
| SOUTH TIMBALIER 242 #A001 | ST242A01 | G23933 | 177164032800 |
| VERMILION 314 #A009 | VR314A09 | G05438 | 177064076900 |
| VERMILION 332 #A001 | VR332A01 | G09514 | 177064069400 |
| VERMILION 332 #A002 | VR332A02 | G09514 | 177064069900 |
| VERMILION 332 #A003 | VR332A03 | G09514 | 177064072300 |
| VERMILION 332 #A005 | VR332A05 | G09514 | 177064077802 |
| VERMILION 332 #A006 | VR332A06 | G09514 | 177064077901 |
| VERMILION 333 #A004 | VR333A04 | G14417 | 177064072600 |
| VIOSCA KNOLL 113 #A001 | VK113A01 | G16535 | 608164039101 |
| VIOSCA KNOLL 251 #A001 | VK251A001 | G10930 | 608164029800 |
| VIOSCA KNOLL 251 #A002 | VK251A002 | G10930 | 608164034501 |
| VIOSCA KNOLL 251 #A003 | VK251A003 | G10930 | 608164041500 |
| VIOSCA KNOLL 251 #A004 | VK251A004 | G10930 | 608164042101 |
| VIOSCA KNOLL 340 #A001 | VK340A01 | G10933 | 608164038800 |

**Exhibit II-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VIOSCA KNOLL 340 #A002 | VK340A02 | G10933 | 608164044400 |
| WEST CAMERON 100 #A001 | WC100A01 | G22510 | 177004112100 |
| WEST CAMERON 100 #A002 | WC100A02 | G22510 | 177004112602 |
| WEST CAMERON 100 #A003 | WC100A03 | G22510 | 177004117102 |
| WEST CAMERON 100 #A004 | WC100A04 | G22510 | 177004118100 |
| WEST CAMERON 290 #002 | WC29002 | G04818 | 177014018400 |
| WEST CAMERON 290 #A001 | WC290A0100 | G04818 | 177014020700 |
| WEST CAMERON 290 #A002 | WC290A0200 | G04818 | 177014024200 |
| WEST CAMERON 290 #A003 | WC290A0300 | G04818 | 177014029100 |

**Exhibit II-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EAST CAMERON 257 P/F-A | EC257PFA | G21580 | EC257 | 100.0% |
| GALVESTON 255 P/F-A | GA255PFA | G01777 | GA255 | 100.0% |
| GRAND ISLE 083 P/F-A | GI083PFA | G03793 | GI083 | 100.0% |
| GRAND ISLE 083 P/F-B | GI083PFB | G03793 | GI083 | 100.0% |
| HIGH ISLAND A-446 P/F-A | HIA446PFA | G02359 | HIA446 | 100.0% |
| MAIN PASS 154 P/F-A | MP154PFA | G10902 | MP154 | 100.0% |
| SOUTH MARSH IS 039 P/F-A | SM039PFA | G16320 | SM039 | 100.0% |
| SOUTH MARSH IS 039 P/F-B | SM039PFB | G16320 | SM039 | 100.0% |
| SOUTH MARSH IS 039 P/F-C | SM039PFC | G16320 | SM039 | 100.0% |
| SOUTH TIMBALIER 242 P/F-A | ST242PFA | G23933 | ST242 | 60.0% |
| VERMILION 315 P/F-A | VR315PFA | G04215 | VR315 | 100.0% |
| VERMILION 315 P/F-A-AUX | VR315PFAAU | G04215 | VR315 | 100.0% |
| VERMILION 332 P/F-A | VR332PFA | G09514 | VR332 | 80.2% |
| VIOSCA KNOLL 113 P/F-A | VK113PFA | G16535 | VK113 | 100.0% |
| VIOSCA KNOLL 251 P/F-A | VK251PFA | G10930 | VK251 | 100.0% |
| VIOSCA KNOLL 251 P/F-A-AUX | VK251PFAAU | G10930 | VK251 | 100.0% |
| VIOSCA KNOLL 340 P/F-A | VK340PFA | G10933 | VK340 | 100.0% |
| WEST CAMERON 100 P/F-A | WC100APLT | G22510 | WC100 | 100.0% |
| WEST CAMERON 289 P/F-A-PROCESS | WC289APROC | G04818 | WC289 | 0.0% |

**Exhibit II-C(ii)**

None

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15213 | Fieldwood Energy, LLC | BS | 41 | B | BS | 42 | 24" SSTI | 10 | G/C | Partial Abandon | G25383 | G21142 |
| 5911 | Bandon Oil and Gas, LP | GI | 83 | A | GI | 82 | 16 SSTI | 6 | GAS | Permitted for Abandonment | G04355 | G03793 |
| 9006 | Fieldwood Energy, LLC | MP | 112 | #02 | MP | 117 | 08 SSTI | 6 | BLKG | Permitted for Abandonment Approved | G11738 | G09707 |
| 15220 | Fieldwood Energy Offshore LLC | ST | 242 | A | SS | 283 | 24 SSTI | 8 | G/C | Permitted for Abandonment | G26891 | G23933 |
| 19427 | Fieldwood Energy, LLC | VK | 113 | A | CA | 43 | A | 4 | BLKG | Out of Service | G29321 | G16535 |
| 13721 | Fieldwood Energy, LLC | VK | 251 | A | VK | 340 | A | 3 | AIR | Active | G28704 | G10930 |
| 14876 | Fieldwood Energy, LLC | VK | 251 | A | MP | 154 | A | 4 | H2O | Active | G22465 | G10930 |
| 13720 | Fieldwood Energy Offshore LLC | VK | 340 | 8-inch SSTI | VK | 251 | Platform A | 8 | BLGH | Active | G28703 | G10933 |
| 7298 | Dynamic Industries, Inc | VR | 315 | A | VR | 331 | 06 SSTI | 6 | OIL | Out of Service | G07545 | G04215 |
| 10736 | Dynamic Industries, Inc | VR | 332 | A | VR | 315 | A | 8 | BLKG | Out of Service | G15672 | G09514 |
| 10737 | Dynamic Industries, Inc | VR | 332 | A | VR | 315 | A | 6 | LIFT | Out of Service | G15673 | G09514 |
| 14210 | Fieldwood Energy Offshore LLC | WC | 100 | A | WC | 102 | 30" SSTI | 8 | G/C | Permitted for Abandonment | G24699 | G22510 |
| 13864 | Fieldwood Energy, LLC | WC | 100 | A | WC | 102 | 30 SSTI | 8 | G/C | Permitted for Abandonment Approved | G24253 | G22510 |
| 8621 | Bandon Oil and Gas, LP | WC | 290 | A | WC | 289 | A | 6 | BLKG | Out of Service | G10532 | G04818 |

**Exhibit II-D(ii)**

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|
| GA | 255 | A | 10050 | G30195 | G01777 | Fieldwood Energy Offshore LLC | 06/12/13 | GA 241 A005 & B004 |
| MP | 154 | A | 24171 | G30337 | G10902 | Fieldwood Energy Offshore LLC | 02/03/17 | MP 154 A001 & A002 |
| VR | 315 | A | 22981 | G30213 | G04215 | Fieldwood Energy Offshore LLC | 11/26/13 | VR 332 A001, A002, A005 & A006 |
| VR | 315 | A-AUX | 22981 | G30213 | G04215 | Fieldwood Energy Offshore LLC | 11/26/13 | Production from VR 315 A RUE |
| WC | 289 | A-PROCESS | 23036 | G14262 | G04818 | Fieldwood Energy LLC | 12/03/93 | ROW accessory PF WC 289 A |

**Exhibit II-E**

None

| Contract Type | Contract Date | Contract Title | Contract Description |
|---|---|---|---|
| Land | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement 9/1/1981 |
| Land | 7/2/1986 | FARMOUT AGREEMENT | Farmout Agreement 7/2/1986 |
| Land | 1/1/1987 | Joint Operating Agreement | Joint Operating Agreement 1-1-87 |
| Land | 5/7/1993 | Letter Agreement | Letter Agmt. eff. 5-7-1993 b/b Shell Offshore Inc. and Freeport McMoRan Oil and Gas Company. |
| Land | 6/1/1993 | FO | Farmout Agmt. eff. 6-1-1993 b/b Shell Offshore Inc. and Samedan Oil Coporation. |
| Land | 6/11/1993 | Joint Operating Agreement | Operating Agreement eff. 6-11-1993 b/b Samedan Oil Corporation and British Borneo Exploration Inc., et al |
| Land | 1/21/1994 | Unit Operating Agreement | Unit Operating Agreement for the Viosca Knoll .252 Unit, by and between Samedan Oil Corporation, as Operator, and Continental Land &'Fur Co., Inc., dated effective January 21,1994. Preferential Right to Purchase - 15 Days. (Section 26.2) |
| Land | 2/11/1994 | Unit Agreement | Unit Agreement For Outer Continental Shelf Exploration, Development and Production Operations on theViosca Knoll 252 Unit designated Contract No. 754394013, by the Minerals Management Service, dated effective February 11, 1994, executed by Samedan Oil Corporation (as Unit Operator) and Chevron U.S.A. Inc.(as a working interest owner). |
| Land | 6/6/1994 | Letter Agreement | Letter Agreement, dated June 6, 1994, whereby Chevron U.S.A. Inc. approves, adopts and.recognizes the Unit Operating Agreement, dated January 21, 1994 for the Viosca Knoll 252 Unit |
| Land | 6/9/1994 | Letter Agreement | Letter Agreement, dated June 9, 1994, by and between Chevron U.S.A. Inc., Samedan Oil Corporation and Continental Land & Fur Co., Inc. |
| Land | 9/20/1995 | OA | Operating Agreement eff. 9-20-95 b/b Samedan and Walter |
| Land | 7/1/1996 | JOA | 7.1.1996 SM 39 Joint Operating Agreement, as amended |
| Land | 7/7/1997 | Letter Agreement | Letter Agreement, dated July 7, 1997, by and between Chevron U.S.A. Inc. and Samedan Oil Corporation,concerning of the OCSTG 10930 Well #1 in Viosca Knoll Block 251 to a proposed depth of 22,500' and certain earning and assignment provisions, more fully described therein. |
| Land | 11/18/1999 | Letter Agreement | Letter Agreement, dated Novembr. 18, 1999, by and between Chevron U.S.A. Inc. and Samedan Oil Corporatidri being a COPAS Amendment to Unit Operating Agreement for the Viosca Knoll 252 Unit concerning Subpart (i;) of Section m. "Overhead", andimade effective January 1,2000. |
| Land | 8/5/2000 | Transfer Agreement | Transfer of Ownership and Title Agreement, made and entered into August 5, 2000, by and between Bonray,Inc.; Energen Resources Corporation; Forcenergy Inc; Gardner Offshore Corporation; Gulfstar Energy, Inc,;; Gulfstream Energy Services, Inc.; Liberty Energy Gulf Corporation; Range Energy Ventures Corporation; and V.Saia Energy Interests, Inc., as Seller, to Range Resources Corporation and Chevron U.S.A. Inc., concerning the sale of the Main Pass Block 154 Platform "A" and the wells OCS-G 10902 No. A001 and OCS-G 10902 No. A002, all as more fully described in said document. |
| Land | 8/5/2000 | ABOS | Bill of Sale, Conveyance and Quit Claim, dated effective August 5, 2000, from Energen Resources Corporation to Chevron •U.S.A. Inc., covering Energeh's right, title 'and interests in and to the.'Main Pass Block 154 Platform"A" and the wells OCS-G 10902. No. A001 and OCS-G 10902 No. A002. all as more fully described in said document. |
| Land | 10/23/2000 | Letter Agreement | Letter Agreement, dated October 23, 2000, between Range Resources Corporation and Chevron U.S.A. Inc.,entitled "Annual Reciprocity Notice Regarding Conveyance to Chevron U.S.A. Inc. of Main Pass Block 154, South and East Addition Platform "A" and Two'Wells Thereon, Federal OCS, Offshore Alabama." |
| Land | 12/8/2000 | Letter Agreement | Letter Agreement, dated December 8, 2000 (effective December 1, 2000), by and between Chevron U.S.A. Inc.and Williams Field Services - Gulf COperating Agreementst Company, L.P., whereby Chevron U.S.A. Inc. consents to an assignment by Williams Field Services - Gulf COperating Agreementst Company, L.P., to its affiliate, Williams Mobile Bay Producer Services, L.L.C. |
| Land | 1/11/2001 | LETTER AGREEMENT | Letter, dated January 11, 2001, from the United States Department of the Interior, Minerals Management Serviceto Chevron U.S.A. Inc., approving the initial participating area plat and Exhibit C for the Viosca Knoll 252 Unit,Agreement No. 754394013, effective November 8, 2000 |
| Land | 11/1/2001 | Letter Agreement | Letter Agreement, dated November 1, 2001, between Range Resources Corporation and Chevron U.S^A. Inc.,entitled "Satisfaction and Accord of Seller's P&A Obligation, Release and.Discharge of Surety Bond Requirement, Amwest Surety Bond No. 15005293, Main Pass Block 154, So. and East Add." |
| Land | 11/3/2001 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| Land | 1/9/2002 | Letter Agreement | Letter, dated January 9, 2002, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving.a revision to the participating area plat and Exhibit C for the Viosca Knoll 252 Unit, Agreement No. 754394bl'3, effective December 1, 2001. |
| Land | 3/1/2002 | FO | Farmout Agmt. eff. 3-1-2002 b/b Samedan Oil Corporation (Farmor) and Pure Resources, L.P. (Farmee) |
| Land | 6/9/2003 | PA | Participation Agmt. eff. 6-9-2003 b/b Samedan Oil Corporation and CLK Company |
| Land | 8/7/2003 | PA | Exploration Participation Agreement, dated August 7, 2003, by and between Chevron U.S.A. Inc. and'Westport Resources Corporation, as amended, concerning certain Offshore Continental Shelf properties, all as is more fully, provided'for and described therein. |
| Land | 3/18/2004 | PSA | PSA dated 3-18-04 but eff. 9-1-2003 b/b Noble Energy, Inc. and Northstar Gulfsands, LLC |
| Land | 5/28/2004 | Letter Agreement | Letter, dated May 28, 2004, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit Cfor theiViosca Knoll 252 Unit, Agreement No. 754394013, effective December 1, 2003. |
| Land | 8/1/2004 | Unit Operating Agreement | Amendment and Supplement to?Unit Operating Agreement for the Viosca Knoll 252 Unit, dated August 1,2004, by and between Chevron UiS.A. Inc. and-Noble Energy, Inc |
| Land | 9/1/2004 | JOA | Operating Agreement eff. 9-1-04 |

| Land | 10/14/2004 | Letter Agreement | Letter Agreement, dated October. 14, 2004, between Ghevron U.S.A. Inc. and Noble Energy,.Inc. concerning Production Handling Agreement Terin's, Viosca Knoll 251 "A' PlatfomvCadillacProspect and any Other Future Non-unit Production |
| Land | 10/28/2004 | PSA | PSA dated 10-28-2004 but eff. 7-1-2004 B/B Eni Deepwater LLC and Northstar Gulfsands, LLC |
| Land | 11/1/2004 | PA | Exploration Participation Agreement, dated November 1, 2004, by and between Chevron U.S.A. Inc. and Newfield Exploration Company, concerning certain Offshore Continental Shelf properties, all as is more fully provided for and described therein |
| Land | 11/18/2004 | Letter Agreement | Letter Agreement, dated November 18; 2004, between Chevron U.S.A. Inc. and Newfield Exploration Company, amendihg'the;terms of Letter Agreement•,dated October f4, 2004, between Chevron U.S.A. Inc. and Noble Energy, Inc. concerning Production Handling Agreement Terms, Viosca knoll.251 "A"' Platform, Cadillac Prospect and any Other Future Non-unit Production: |
| Land | 11/1/2005 | Partition and Redemption Agreement | Partition and Redemption Agmt. dated 11-1-2005 b/b Northstar Gulfsands, LLC and Gulfsands Petroleum USA, Inc. |
| Land | 11/7/2005 | Unit Agreement | Amendment to Unit Agreement, Viosca Knoll Block 252 Unit, Contract No. 754394013, dated November 7, 2005 (effective November 1, 2005) as approved by the Minerals Management Service by letter dated January 10,2007, but made effective November 8, 2006, replacing Exhibits "A", "B" and "C" and Article 13.1 in its entirety (reduction of Unit Area) |
| Land | 12/20/2005 | Letter Agreement | Letter Agreement, dated December 20, 2005, between Noble Energy, Inc. and Ghevron U.S.A. Inc., being a consent.to.disclose confidential data |
| Land | 3/1/2006 | ABOS | ABOS eff. 3-1-2006 b/b Noble Energy, Inc. as Assignor and Coldren Resources LP as Assignee. |
| Land | 1/10/2007 | Letter Agreement | Letter dated January 10, 2007, from the.United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision Exhibits "A", "B" and "C" reflecting a change in the Unit Area due to contraction provisions in the Viosca Knoll 252 Unit, Agreement No. 754394013. |
| Land | 7/7/2008 | Acquisition | Stock Purchase Agmt dated July 7, 2008 b/b Northstar E&P, LP and Dynamic Offshore Resources, LLC |
| Land | 7/7/2008 | Letter Agreement | VR 332 A5 Letter Agmt dated July 7, 2008 b/b Northstar Interests, L.C. and Dynamic Offshore Resources, LLC |
| Land | 8/1/2011 | ABOS | ABOS eff. 8-1-2011 b/b XTO Offshore Inc. ("Assingor") and Dynamic Offshore Resources, LLC ("Assignee") |
| Land | 11/3/2011 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| Land | 5/2/2012 | Letter Agreement | Letter, dated May 2, 2012 between Newfield Exploration Company and Chevron U.S.A. Inc., being a waiver of confidentiality provision grant by Chevron in favor of Newfield; |
| Land | 7/1/2013 | Acquisition | PURCHASE AND SALE AGREEMENT by and among APACHE CORPORATION,APACHE SHELF, INC., and APACHE DEEPWATER LLC collectively as the Sellers, and FIELDWOOD ENERGY LLCas Buyer and GOM SHELF LLC Dated as of July 18, 2013 |
| Land | 12/1/2013 | Acquisition | Equity Purchase Agreement between Sandridge Energy, Inc., Sandridge Holdings, Inc. and Fieldwood Energy LLC: Fieldwood purchased all companies listed with their assets which included Offshore and SandRidge Legacy South Texas and South Louisiana assets. |
| Land | 10/15/2014 | Release and Settlment Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, Prime Offshore L.L.C., Tammany Oil and Gas LLC and Castex Offshore, Inc. |
| Land | 4/2/2015 | Consent to Disclose Confidential Information | by and between Fieldwood Energy LLC, Bandon Oil and Gas, LP and Chevron U.S.A. Inc.: VK 252 Unit Area |
| Land | 8/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc. : MP 77, 78 and VK 251, 252, 340 Fields |
| Land | 10/15/2015 | Release and Settlement Agreement | by and between Fieldwood Energy LLC and Fairways Offshore Exploration, Inc. : Release and Settlement Agreement |
| Land | 12/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC, ENI US Operating Inc, and ENI Petroleum US LLC: GA 151, SS 246, SS 247, SS 248, SS 249, SS 270, SS 271, VR 78, VR 313, WC 72, WC 100, WC 130 |
| Land | 12/1/2015 | Release and Settlement Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI US Operating Inc. and ENI Petrolem US LLC: Release and Settlement Agreement |
| Land | 8/1/2016 | Letter Agreement | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/1/2016 | Letter Agreement | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/4/2016 | Letter of No Objection | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 8/4/2016 | Letter of No Objection | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 10/1/2016 | ABOS | by and between Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: |
| Land | 11/21/2016 | Offer to Purchase | by and between Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: Offer to Purchase GS E &R America Offshore, LLC's Interest in GI 94, SS 79, VR 332 and WD 34 |
| Land | 8/1/2017 | ABOS | by and between Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| Land | 9/19/2017 | Offer to Purchase | by and between Fieldwood Energy Offshore LLC and SCL Resources, LLC: Offer to Purchase SCL Resources, LLC'S Interest in GI 94, SS 79, VR 332 and WD 34 |
| PHA VR 315/VR 332 A01and VR 333 | 10/15/1995 | PRODUCTION HANDLING AGMT | PHA VR 315/VR 332 and VR 333 by and between Fieldwood and CANNAT ENERGY INC. and CANNAT ENERGY INC. |
| PHA VR 315/VR 332A02 and VR 333 | 10/15/1995 | PRODUCTION HANDLING AGMT | PHA VR 315/VR 332 and VR 333 by and between Fieldwood and CANNAT ENERGY INC. and CANNAT ENERGY INC. |
| PHA VR 315/VR 332A05 | 10/15/1995 | PRODUCTION HANDLING AGMT | PHA VR 315/VR 332 and VR 333 by and between Fieldwood and ANKOR E&P HOLDINGS CORPORATION and ANKOR E&P HOLDINGS CORPORATION |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-22 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 6/14/2000 | FACILITIES OPERATING AND MAINTENANCE AGMT | WIL174 OP&MN FEE-VK251A by and between Fieldwood and WILLIAMS FIELD SERVICES and WILLIAMS FIELD SERVICES |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | ISCT Contract | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 12/12013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2012 | IT Transport &  Discount Letter | Searobin West Discounted Trans =.1758 plus Discounted Gathering .0642 = total discounted rate - $.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2012 | IT Retrograde & Discount Letter | Searobin West Discounted Trans =.1758 plus Discounted Gathering .0642 = total discounted rate - $.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2012 | IT PTR & Discount Letter | Searobin West Discounted Trans =.1758 plus Discounted Gathering .0642 = total discounted rate - $.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy Offshore LLC and Third Coast Midstream LLC  (formerly Panther Operating Company, LLC)  and Third Coast Midstream LLC  (formerly Panther Operating Company, LLC) |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement to the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Dynamic Offshore Resources, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Dynamic Offshore Resources, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0065 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |

| | | | |
|---|---|---|---|
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 10/1/2010 | PROCESSING AGREEMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 11/1/2010 | PROCESSING AGREEMENT- 1ST AMMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 7/24/2012 | PROCESSING AGREEMENT- 2ND AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 10/1/1995 | CONTRUCTION/OPERATING (NI) | CONTRUCTION/OPERATING (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 9/1/2010 | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/18/2010 | BALLOT TO EXTEND MCMORAN GPA THORUGH 12/31/2011 | BALLOT TO EXTEND MCMORAN GPA THORUGH 12/31/2011 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 12/1/2010 | BALLOT TO AMEND EXHIBIT E TO C&O AGREEMENT | BALLOT TO AMEND EXHIBIT E TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 6/1/2012 | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/2012 | BALLOT TO APPROVE ENTERPRISE AS PLANT OPERATOR TO C&O AGREEMENT | BALLOT TO APPROVE ENTERPRISE AS PLANT OPERATOR TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/2012 | APPROVAL OF AFES TO C&O AGREEMENT | APPROVAL OF AFES TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 9/25/2013 | BALLOT TO C&O AGREEMENT | BALLOT TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/6/2013 | REVISED EXHIBIT C TO C&O AGREEMENT | REVISED EXHIBIT C TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 12/1/2000 | SERVICE-DEHYDRATION (NI) | SERVICE-DEHYDRATION (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 2/1/2000 | SERVICE-FRACTIONATION (NI) | SERVICE-FRACTIONATION (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/1992 | BASE | BASE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/1/1995 | CONSTRUCTION/OPERATING (NI) | CONSTRUCTION/OPERATING (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/13/1998 | RAW MAKE | RAW MAKE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 11/13/1998 | AMENDMEMT | AMENDMEMT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/31/2001 | LIQ EXCHANGE | LIQ EXCHANGE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 2/1/2005 | GAS PROCESSING AGREEMENT | 88/12% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 2/20/2008 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 88/12% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Environmental/Govt | 6/24/2019 | Master Services Contract | -- IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 10/2/2019 | Software License Agreement | IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 11/19/2018 | Master Service Contract | Regulatory |
| Environmental/Govt | 11/1/2013 | Master Services Contract | Platform Audits / BSEE Drawings |
| Environmental/Govt | 10/30/2019 | Master Client Agreement | Industry Standards, Analytics, and Research / Subscription Service |
| Environmental/Govt | 11/15/2019 | Order Form | Industry Standards, Analytics, and Research / Subscription Service |
| Land | 10/1/2003 | PSA | By and Between UNOCAL, Pure Resources, L.P., Pure Partners, L.P. and SPN Resources, LLC (Fieldwood SP) |
| Land | 5/16/2001 | JOA | Unocal and Callon dated 5/16/2001 but effective 2/14/2001 |
| Land | 8/1/2010 | JOA | Amdt to JOA dated 5/16/2001 by and between Unocal and Callon |
| Land | 11/28/1979 | OA | McMoRan et al |
| Land | 2/18/2000 | OA | b/b Chevron and Samedan |

**Exhibit II-G**

None

Exhibit III-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MYETTE POINT - ONSHORE | – | 14519 | SL - TX | WI | – | – | – | – | 50.0% | UNIT |
| MYETTE POINT - ONSHORE | – | 14520 | SL - TX | WI | – | – | – | – | 50.0% | UNIT |
| MYETTE POINT - ONSHORE | – | 14914 | SL - TX | WI | – | – | – | – | 65.6% | UNIT |
| SOUTH PASS 42/43 FED / SL LA | – | 16869 | SL - LA | WI | – | – | – | – | 100.0% | PROD |
| EUGENE ISLAND 010 (SL 19269) - (SL LA) | – | 19266 | SL - LA | WI | – | – | – | – | 17.3% | ACTIVE |
| FRANKLIN GAP | – | JMB Partnership | Onshore | | 2/6/2019 | | | | 100.0% | – |
| FRANKLIN GAP | – | JMB Partnership | Onshore | | 2/25/2018 | | | | 100.0% | – |
| FRANKLIN GAP | – | Richardson A Caffery et al | Onshore | | 2/1/2016 | | | | 100.0% | – |
| FRANKLIN GAP | – | Caroline Baker Trust No 1 | Onshore | | 1/22/2016 | | | | 100.0% | – |
| ONSHORE/ STATE LEASE | – | 19051 | SL - LA | ORRI | 8/9/2006 | | | Southern Oil of Louisiana | 0.2% | UNIT |
| WEST CAMERON 009 (SL LA) | – | 18287 | SL - LA | WI | – | – | – | – | 44.2% | – |
| | – | 17072 | SL - LA | WI | – | – | – | – | 37.8% | ACTIVE |
| | – | 42450 | SL - LA | WI | – | – | – | Fieldwood Onshore | 62.5% | TERMINATED |
| | – | 490100 | SL - LA | WI | – | – | – | iRidge Exploration & Produ | 100.0% | SCOPING |
| STATE TRACT 773 | – | 111650 | SL - TX | | – | – | – | TR Offshore, LLC | 7.2% | ACTIVE |
| STATE TRACT 773 | – | 115727 | SL - TX | | – | – | – | TR Offshore, LLC | 7.0% | ACTIVE |
| STATE TRACT 773 | – | 114988 | SL - TX | | – | – | – | TR Offshore, LLC | 7.0% | ACTIVE |
| | – | 19334 | SL - TX | WI | – | – | – | Elliott Oil & Gas Operating | 75.0% | INJECTION |
| | – | 136449 | SL - TX | | – | – | – | TR Offshore, LLC | 7.0% | ACTIVE |
| | – | 09061 | SL - TX | WI | – | – | – | Landon Browning | 33.3% | TERMIN |
| | – | 168986 | SL - TX | WI | – | – | – | Fieldwood Onshore | 100.0% | TERMIN |
| | – | 189098 | SL - TX | WI | – | – | – | Fieldwood Onshore | 100.0% | TERMIN |
| | – | 206882 | SL - TX | WI | – | – | – | Fieldwood Onshore | 100.0% | TERMIN |
| BRETON SOUND 52/53 FED / SL LA | – | 03770 | SL - LA | WI | – | – | – | – | 50.0% | UNIT |
| BRAZOS A-102/A-105 | BA A-102 | G01754 | Federal | RT | 6/1/1968 | 6/14/2020 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| BRAZOS A-102/A-105 | BA A-105 | G01757 | Federal | RT A | 7/1/1968 | | 5,760 | Fieldwood En | 87.5% | PROD |
| BRAZOS A-102/A-105 | BA A-105 | G01757 | Federal | RT B | 7/1/1968 | | 5,760 | Fieldwood En | 100.0% | PROD |
| BRAZOS A-133 | BA A-133 | G02665 | Federal | RT | 7/1/1974 | | 5,760 | GOM Shelf | 25.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 158 | G02645 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 66.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 159 | G02646 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 66.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 160 | G02647 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 100.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 161 | G02648 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 100.0% | PROD |
| EAST BREAKS 165 | EB 165 | G06280 | Federal | RT | 10/1/1983 | | 5,760 | Fieldwood SD Off | 100.0% | UNIT |
| EAST BREAKS 165 | EB 209 | G07397 | Federal | RT | 9/1/1984 | | 5,760 | Fieldwood SD Off | 100.0% | UNIT |
| EAST CAMERON 330 | EC 330 | G03540 | Federal | OP 1 | 8/1/1977 | 2/8/2017 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EAST CAMERON 331/332 | EC 331 | G08658 | Federal | OP 1 | 8/1/1987 | | 5,000 | Fieldwood En | 92.8% | TERMIN |
| EAST CAMERON 331/332 | EC 331 | G08658 | Federal | OP 2 | 8/1/1987 | | 5,000 | Fieldwood En | 92.8% | TERMIN |
| EAST CAMERON 331/332 | EC 332 | G09478 | Federal | RT | 5/1/1988 | | 5,000 | Fieldwood En Off | 88.0% | TERMIN |
| EAST CAMERON 331/332 | EC 332 | G09478 | Federal | OP 2 | 5/1/1988 | | 5,000 | Fieldwood En Off | 88.0% | TERMIN |
| EAST CAMERON 349 | EC 349 | G14385 | Federal | OP 1 | 5/1/1994 | | 5,000 | W & T Off | 25.0% | PROD |
| EAST CAMERON 349 | EC 350 | G15157 | Federal | OP 1 | 9/1/1995 | 12/27/2001 | 5,000 | W & T Off | 25.0% | TERMIN |
| EAST CAMERON 349 | EC 356 | G13592 | Federal | RT | 9/1/1992 | 12/29/1999 | 5,000 | Fieldwood En | 25.0% | TERMIN |
| EAST CAMERON 371 | EC 371 | G02267 | Federal | CONT | 2/1/1973 | 3/31/2010 | 5,000 | Talos ERT | 25% | TERMIN |
| EUGENE IS. 100 | EI 100 | 00796 | Federal | Contractual | 5/1/1960 | – | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 173/174/175 | EI 175 | 00438 | Federal | OP 1 | 12/1/1954 | | 5,000 | Fieldwood En | 25.0% | PROD |
| EUGENE IS. 307 | EI 307 | G02110 | Federal | RT | 2/1/1971 | 11/4/2019 | 2,500 | Fieldwood En Off | 25.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 311 | G27918 | Federal | RT | 7/1/2006 | 9/27/2012 | 5,000 | Dynamic Off Res | 60.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 312 | G22679 | Federal | OP 1 | 6/1/2001 | 8/7/2020 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| EUGENE IS. 32 | EI 32 | 00196 | Federal | OP 1 | 11/26/1946 | | 5,000 | Cox Op | 33.3% | PROD |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | Contractual | 1/1/1971 | | 5,000 | Fieldwood En | 17.0% | UNIT |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | RT A | 2/1/1973 | | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 53 | EI 53 | 00479 | Federal | OP 1 | 12/1/1954 | | 5,000 | Fieldwood En | 11.1% | PROD |
| EUGENE IS. 62/63/77 | EI 63 | 00425 | Federal | RT | 12/1/1954 | 10/20/2003 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| EWING BANK 782/826 / ST 291 | EW 782 | G05793 | Federal | CONT | 7/1/1983 | 3/25/1994 | 1093 | Fieldwood En | 100.0% | TERMIN |
| GALVESTON 151 | GA 151 | G15740 | Federal | RT | 11/1/1995 | 4/12/2016 | 4,804 | Fieldwood En | 33.0% | TERMIN |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 1 | 12/1/2003 | | 5,760 | Fieldwood En | 16.7% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 3 | 12/1/2003 | | 5,760 | Fieldwood En | 33.0% | PROD |
| GALVESTON A-155 | GA A-155 | G30654 | Federal | RT | 10/1/2006 | 5/14/2018 | 5,760 | Peregrine O&G | 10.8% | TERMIN |
| GREEN CANYON 157 | GC 157 | G24154 | Federal | RT | 6/1/2002 | 8/15/2020 | 5760 | LLOG Exp Off | 15.0% | TERMIN |
| GREEN CANYON 157 | GC 201 | G12210 | Federal | OP | 5/1/1990 | | 5760 | Fieldwood En Off | 15.0% | UNIT |
| GREEN CANYON 200 (Troika) | GC 245 | G05916 | Federal | CONT | 7/1/1983 | | 5760 | Fieldwood En Off | 100.00% | UNIT |
| GREEN CANYON 64/65/108/109/243 | GC 64 | G07005 | Federal | CONT | 6/1/1984 | 5/29/1998 | 5760 | Fieldwood En Off | 49.0% | TERMIN |
| HIGH IS. A-341 | HI A-341 | G25605 | Federal | RT | 12/1/2003 | | 5,760 | Fieldwood En | 40.0% | PROD |
| HIGH IS. A-365/A-376 | HI A-365 | G02750 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 49.6% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G02754 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 55.4% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-382 | G02757 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 27.6% | PROD |
| HIGH IS. A-474 | HI A-474 | G02366 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 12.0% | TERMIN |
| HIGH ISLAND A-474/489 | HI A-475 | G02367 | Federal | CONT | 8/1/1973 | 12/25/1999 | 5,760 | McMoRan O&G | 12.0% | TERMIN |
| HIGH IS. A-474 | HI A-489 | G02372 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 12.0% | TERMIN |
| HIGH ISLAND A-510 | HI A-531 | G02696 | Federal | OP 1 | 7/1/1974 | 11/6/2016 | 5,760 | Fieldwood En Off | 75.0% | TERMIN |
| HIGH IS. A-550 | HI A-550 | G04081 | Federal | RT | 10/1/1979 | | 5,760 | Fieldwood En Off | 100.0% | PROD |
| HIGH IS. A-550 | HI A-550 | G04081 | Federal | OP 1 | 10/1/1979 | | 5,760 | Fieldwood En Off | 100.0% | PROD |
| HIGH IS. A-550 | HI A-550 | G04081 | Federal | OP 2 | 10/1/1979 | | 5,760 | Fieldwood En Off | 100.0% | PROD |
| HIGH IS. A-563 (564/581/582) | HI A-563 | G02388 | Federal | RT | 8/1/1973 | | 5,760 | Cox Op | 2.0% | PROD |
| HIGH IS. A-563 (564/581/582) | HI A-564 | G02389 | Federal | OP 1 | 8/1/1973 | 4/18/1998 | 5,760 | Cox Op | 2.0% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-572 | G02392 | Federal | RT | 8/1/1973 | 5/18/2006 | 5,760 | Fieldwood En | 24.1% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-573 | G02393 | Federal | RT | 8/1/1973 | | 5,760 | Fieldwood En | 27.6% | PROD |
| HIGH IS. A-563 (564/581/582) | HI A-581 | G18959 | Federal | RT | 12/1/1997 | 7/7/2005 | 5,760 | Cox Op | 2.0% | TERMIN |
| HIGH IS. A-563 (564/581/582) | HI A-582 | G02719 | Federal | OP 1 | 7/1/1974 | | 5,760 | Cox Op | 2.3% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-595 | G02721 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 27.6% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-596 | G02722 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 27.6% | PROD |
| MOBILE BAY 861 | MO 861 | G05062 | Federal | RT | 4/1/1982 | 10/13/2009 | 5,198 | Providence Res GOM 2 | 100.0% | TERMIN |
| MOBILE BAY 861 | MO 861 | G05062 | Federal | OP 1 | 4/1/1982 | 10/13/2009 | 5,198 | Providence Res GOM 2 | 50.0% | TERMIN |
| MAIN PASS 101 | MP 101 | G22792 | Federal | RT | 7/1/2001 | 9/5/2014 | 4,995 | Fieldwood En Off | 77.5% | TERMIN |
| MAIN PASS 109 | MP 109 | G22794 | Federal | OP 1 | 5/1/2001 | | 4,995 | W & T Off | 33.3% | TERMIN |
| MAIN PASS 109 | MP 109 | G22794 | Federal | OP 2 | 5/1/2001 | 4/1/2016 | 4,995 | W & T Off | 33.3% | TERMIN |
| MAIN PASS 77 | MP 77 | G04481 | Federal | RT | 11/1/1980 | | 4,655 | Fieldwood En Off | 73.8% | RELINQ |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 3 | 7/1/1975 | 5/23/2018 | 5,000 | ANKOR En | 2.0% | TERMIN |
| VERMILION 272 / SOUTH MARSH 102 | SM 102 | G24872 | Federal | RT | 5/1/2003 | | 3,113 | Fieldwood En Off | 100.0% | PROD |
| SOUTH MARSH IS. 132 | SM 132 | G02282 | Federal | RT | 2/1/1973 | 4/1/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 135 | G19776 | Federal | RT | 5/1/1988 | 2/18/2012 | 3,293 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 136 | G02588 | Federal | RT | 5/1/1974 | 8/4/2019 | 2,500 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 137 | G02589 | Federal | RT | 5/1/1974 | 6/30/2015 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 147 | SM 139 | G21106 | Federal | OP 1 | 7/1/1999 | 8/22/2020 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | SM 142 | G01216 | Federal | RT | 6/1/1962 | 8/7/2020 | 2,761 | Fieldwood En | 86.1% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | SM 142 | G01216 | Federal | OP 1 | 6/1/1962 | 8/7/2020 | 2,761 | Fieldwood En | 86.1% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | SM 143 | G01217 | Federal | CONT | 5/1/1962 | 7/17/1997 | 2,738 | Fieldwood En | 16.0% | TERMIN |
| SOUTH MARSH IS. 147 | SM 146 | G09546 | Federal | RT | 7/1/1988 | | 5,000 | Dynamic Off Res | 100.0% | TERMIN |
| SOUTH MARSH IS. 147 | SM 147 | G06693 | Federal | RT | 7/1/1984 | 1/14/2011 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 150 | G16325 | Federal | RT | 6/1/1996 | 5/22/2018 | 3,329 | Fieldwood En | 50.0% | RELINQ |
| SOUTH MARSH IS. 268/269/280/281 | SM 268 | G02310 | Federal | RT | 3/1/1973 | 9/7/2009 | 3,237 | Fieldwood En | 30.1% | TERMIN |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | RT | 1/1/1973 | | 5,000 | Fieldwood En | 17.7% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | OP 1 | 1/1/1973 | | 5,000 | Fieldwood En | 9.1% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | OP 2 | 1/1/1973 | | 5,000 | Fieldwood En | 0.4% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 1 | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 3 | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 281 | G02600 | Federal | RT | 4/1/1974 | | 3,214 | Fieldwood En | 31.9% | PROD |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| SOUTH MARSH IS. 66 | SM 66 | G01198 | Federal | RT | 6/1/1962 | 9/25/2019 | 5,000 | Fieldwood En Off | 50.0% | TERMIN |
| VERMILION 272 / SOUTH MARSH 102 | SM 87 | G24870 | Federal | RT | 5/1/2003 | | 3,077 | Castex Off | 100.0% | PROD |
| SOUTH PASS 60 | SP 17 | G24938 | Federal | RT | 11/1/1974 | | 962 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 37 | SP 37 | 00697 | Federal | OP 1 | 10/1/1959 | -- | 2,500 | Whitney O&G | 44.0% | PROD |
| SOUTH PASS 42/43 FED / SL LA | SP 42 | 03011 | SL- LA | WI | | -- | -- | -- | 100.0% | SOP |
| SOUTH PASS 60 | SP 59 | G02942 | Federal | RT | 11/1/1974 | | 1,657 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 59 | G02943 | Federal | RT | 11/1/1974 | | 907 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 59, SP 60 | G01608 | Federal | RT | 7/1/1967 | | 3,510 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 6 | G03337 | Federal | RT | 4/1/1976 | | 318 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 6 | G03337 | Federal | OP | 4/1/1976 | | 318 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 60 | G02137 | Federal | RT | 11/1/1971 | | 1,762 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 61 | G01609 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH PASS 60 | SP 61 | G01609 | Federal | OP 1 | 7/1/1967 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH PASS 60 | SP 66 | G01611 | Federal | RT | 6/1/1967 | | 4,310 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 67 | G01612 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En Off | 100.0% | UNIT |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | OP 1 | 1/1/1955 | 2/25/2020 | 5,000 | W & T Off | 3.0% | TERMIN |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | OP 2 | 1/1/1955 | 2/25/2020 | 5,000 | W & T Off | 3.0% | TERMIN |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | OP | 1/1/1955 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | OP 2 | 1/1/1955 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 169/182/193/194 | SS 193 | 00820 | Federal | RT | 4/1/1960 | | 5,000 | Fieldwood En | 33.3% | PROD |
| SHIP SHOAL 177 | SS 177 | 00590 | Federal | RT | 9/1/1955 | | 5,000 | W & T Off | 25.0% | PROD |
| SHIP SHOAL 189 | SS 189 | G04232 | Federal | OP 5 | 12/1/1979 | | 5,000 | Fieldwood En | 1.0% | PROD |
| SHIP SHOAL 204 | SS 204 | G01520 | Federal | RT | 7/1/1962 | | 5,000 | Fieldwood En | 20.9% | PROD |
| SHIP SHOAL 204 | SS 204 | G01520 | Federal | RT | 7/1/1962 | | 5,000 | Fieldwood En | 0.2% | PROD |
| SHIP SHOAL 190/206/216 | SS 206 | G01522 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 40.0% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 27.5% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 0.3% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | OP | 7/1/1967 | | 5,000 | Fieldwood En | 0.3% | UNIT |
| SHIP SHOAL 214 | SS 214 | 00828 | Federal | RT | 5/1/1960 | | 5,000 | W & T Off | 35.5% | PROD |
| SHIP SHOAL 214 | SS 214 | 00828 | Federal | OP 1 | 5/1/1960 | | 5,000 | W & T Off | 13.5% | PROD |
| SHIP SHOAL 190/206/216 | SS 216 | G01524 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 19.7% | PROD |
| SHIP SHOAL 190/206/216 | SS 216 | G01524 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 0.3% | PROD |
| SHIP SHOAL 233/238 | SS 232 | G01529 | Federal | RT | 9/1/1995 | 2/10/2012 | 5,000 | W & T Off | 33.8% | TERMIN |
| SHIP SHOAL 233/238 | SS 233 | G01528 | Federal | RT | 7/1/1967 | | 5,000 | W & T Off | 33.8% | PROD |
| SHIP SHOAL 233/238 | SS 238 | G03169 | Federal | RT | 7/1/1975 | | 5,000 | W & T Off | 34.5% | PROD |
| SHIP SHOAL 233/238 | SS 238 | G03169 | Federal | OP 2 | 7/1/1975 | | 5,000 | Peregrine O&G II | 34.5% | PROD |
| SHIP SHOAL 246/247/248/270/271 | SS 246 | G01027 | Federal | OP 11 | 6/1/1962 | | 5,000 | Fieldwood En Off | 80.7% | TERMIN |
| SHIP SHOAL 246/247/248/270/271 | SS 246 | G01027 | Federal | OP 13 | 6/1/1962 | | 5,000 | Fieldwood En Off | 76.8% | TERMIN |
| SHIP SHOAL 246/247/248/270/271 | SS 247 | G01028 | Federal | RT B | 6/1/1962 | | 5,000 | Fieldwood En Off | 89.2% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 247 | G01028 | Federal | RT C | 6/1/1962 | | 5,000 | Fieldwood En Off | 77.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 248 | G01029 | Federal | RT B | 6/1/1962 | | 5,000 | Fieldwood En Off | 77.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En Off | 79.7% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 2 | 6/1/1962 | | 5,000 | Fieldwood En Off | 68.8% | UNIT |
| SHIP SHOAL 252/253 | SS 252 | G01529 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 252 | G01529 | Federal | OP 1 | 7/1/1967 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 252 | G01529 | Federal | OP 2 | 7/1/1967 | | 5,000 | Fieldwood En Off | 31.9% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 2 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 4 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 5 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 246/247/248/270/271 | SS 270 | G01037 | Federal | RT | 3/13/1962 | | 5,000 | Fieldwood En Off | 89.2% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 271 | G01038 | Federal | RT | 3/13/1962 | | 5,000 | Fieldwood En Off | 72.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 271 | G01038 | Federal | OP | 3/13/1962 | | 5,000 | Fieldwood En Off | 72.3% | UNIT |
| SHIP SHOAL 300/314/315 | SS 291 | G02923 | Federal | RT B | 12/1/1974 | | 3,750 | Fieldwood En | 15.4% | OPERNS |
| SHIP SHOAL 300/314/315 | SS 300 | G07760 | Federal | RT | 8/1/1985 | | 5,000 | W & T Off | 24.3% | PROD |
| SHIP SHOAL 300/314/315 | SS 315 | G09631 | Federal | RT | 6/1/1988 | | 5,000 | W & T Off | 25.0% | PROD |
| | ST 169 | G01253 | Federal | RT | 6/1/1962 | 1/8/2010 | 4,708 | Beryl O&G | 100.0% | TERMIN |
| SOUTH TIMBALIER 195 | ST 195 | G03593 | Federal | RT | 8/1/1977 | 2/5/2019 | 4,708 | Fieldwood En | 100.0% | TERMIN |
| SOUTH TIMBALIER 316 | ST 315 | G23946 | Federal | RT | 7/1/2002 | | 4,458 | W & T Off | 50.0% | PROD |
| SOUTH TIMBALIER 316 | ST 316 | G22762 | Federal | RT | 6/1/2001 | | 4,435 | W & T Off | 40.0% | PROD |
| VIOSCA KNOLL 780 | VK 824 | G15436 | Federal | CONT | 9/1/1995 | 8/20/2013 | 5,760 | Fieldwood En | 6.1% | RELINQ |
| VIOSCA KNOLL 826 (NEPTUNE) | VK 826 | G06888 | Federal | RT | 8/1/1998 | 5/16/2018 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| VK0826-VIOSCA KNOLL 826 (NEPTUNE) SWO | VK 917 | G15441 | Federal | OP | 7/1/1995 | | 5760 | Fieldwood En | 85.0% | PROD |
| VIOSCA KNOLL 917 / 962 (SWORDFISH) | VK 962 | G15445 | Federal | OP 1 | 7/1/1995 | 8/4/2015 | 5760 | Fieldwood En | 85.0% | TERMIN |
| VERMILION 196 | VR 196 | G19760 | Federal | OP 1 | 8/1/1998 | | 5,000 | Fieldwood En | 63.1% | TERMIN |
| VERMILION 196 | VR 207 | G19761 | Federal | OP 1 | 8/1/1998 | 7/27/2009 | 5,000 | Fieldwood En | 46.4% | RELINQ |
| VERMILION 261/262 | VR 261 | G03328 | Federal | RT | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 25.0% | TERMIN |
| VERMILION 261/262 | VR 261 | G03328 | Federal | OP 1 | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 25.0% | TERMIN |
| VERMILION 261/262 | VR 262 | G34257 | Federal | RT | 10/1/2012 | 7/7/2017 | 5,485 | Fieldwood En | 25.0% | RELINQ |
| VERMILION 272 / SOUTH MARSH 102 | VR 272 | G23829 | Federal | RT | 6/1/2002 | | 4,381 | Fieldwood En Off | 100.0% | PROD |
| VERMILION 272 / SOUTH MARSH 102 | VR 273 | G14412 | Federal | OP 3 | 5/1/1994 | 6/1/2010 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| VERMILION 279 | VR 279 | G11881 | Federal | OP 1 | 5/1/1994 | | 5,000 | Talos En Off | 50.0% | TERMIN |
| VERMILION 313 | VR 313 | G01172 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| VERMILION 313 | VR 313 | G01172 | Federal | OP 2 | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| VERMILION 408 | VR 408 | G15212 | Federal | CONT | 7/1/1995 | | 5,000 | Fieldwood En | 33.2% | PROD |
| WEST CAMERON 171 | WC 171 | G01997 | Federal | RT | 1/1/1971 | 1/31/2014 | 5,000 | XTO | 33.5% | TERMIN |
| WEST CAMERON 295 | WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | | 5,000 | Fieldwood En | 13.8% | PROD |
| WEST CAMERON 485/507 | WC 485 | G02220 | Federal | RT | 2/1/1973 | | 5,000 | Cox Op | 100.0% | UNIT |
| WEST CAMERON 498 | WC 498 | G03520 | Federal | RT | 8/1/1977 | | 5,000 | Cox Op | 3.7% | PROD |
| WEST CAMERON 485/507 | WC 507 | G02549 | Federal | RT | 4/1/1974 | | 2,500 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 485/507 | WC 507 | G10594 | Federal | OP 1 | 4/1/1974 | | 2,500 | Fieldwood En | 100.0% | UNIT |
| WEST CAMERON 485/507 | WC 507 | G10594 | Federal | OP 2 | 6/1/1989 | | 2,500 | Fieldwood En | 100.0% | UNIT |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | OP 4 | 12/1/1974 | | 5,000 | Fieldwood En | 18.8% | PROD |
| WEST CAMERON 35/65/66 | WC 66 | G02826 | Federal | OP 2 | 12/1/1974 | | 3,750 | Fieldwood En | 18.8% | PROD |
| WEST CAMERON 71/72/102 | WC 67 | G02556 | Federal | CONT | 9/1/1975 | | 5,000 | Fieldwood En | 17.5% | TERMIN |
| | WC 72 | G23735 | Federal | RT | 7/1/2002 | | 5,000 | Fieldwood En | 75.0% | PROD |
| | WC 96 | G23740 | Federal | OP 1 | 5/1/2002 | | 5,000 | Talos | 25.0% | UNIT |
| WEST DELTA 90/103 | WD 103 | G12360 | Federal | OP 1 | 5/1/1960 | | 1,016 | Fieldwood En | 16.0% | PROD |
| WEST DELTA 121/122 | WD 121 | G19843 | Federal | OP 1 | 8/1/1998 | | 5,000 | Fieldwood En | 16.0% | PROD |
| WEST DELTA 121/122 | WD 121 | G13645 | Federal | OP 1 | 8/1/1992 | | 5,000 | Fieldwood En | 16.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 2 | 8/1/1992 | | 5,000 | Fieldwood En | 16.0% | PROD |
| WEST DELTA 27 | WD 27 | G04473 | Federal | RT B | 11/1/1980 | | 5,000 | Cox Op | 13.8% | PROD |
| WEST DELTA 79/80 | WD 57, WD 79, WC | G01449 | Federal | RT | 5/1/1966 | | 3,125 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 63/64 | WD 63 | G19839 | Federal | OP 1 | 5/1/1998 | 5/25/2016 | 5,000 | Peregrine O&G | 12.5% | RELINQ |
| WEST DELTA 63/64 | WD 64 | G25008 | Federal | RT | 5/1/2003 | 2/21/2017 | 5,000 | Peregrine O&G | 5.9% | TERMIN |
| WEST DELTA 73/74 | WD 73 | G01083 | Federal | OP 2 | 6/1/1962 | | 5,000 | Cox Op | 5.9% | UNIT |
| WEST DELTA 73/74 | WD 74 | G01084 | Federal | OP | 6/1/1962 | | 5,000 | Cox Op | 5.9% | UNIT |
| WEST DELTA 79/80 | WD 79, WD 80 | G01874 | Federal | RT | 12/1/1968 | | 3,438 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 79/80 | WD 80 | G01989 | Federal | RT | 8/1/1970 | | 1,875 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 79/80 | WD 80 | G02136 | Federal | RT | 1/1/1972 | | 938 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 86 | WD 85 | G04895 | Federal | RT | 12/1/1981 | 5/9/2019 | 2,630 | Fieldwood En Off | 100.0% | TERMIN |
| WEST DELTA 86 | WD 85 | G04895 | Federal | OP 1 | 12/1/1981 | 5/9/2019 | 2,630 | Fieldwood En Off | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G02934 | Federal | RT | 12/1/1974 | 8/30/2010 | 2,500 | SPN Res | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G04243 | Federal | RT | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En Off | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G04243 | Federal | OP 1 | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En Off | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G04243 | Federal | OP 2 | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En Off | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G04243 | Federal | OP 3 | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En Off | 100.0% | TERMIN |

Exhibit III-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| WEST DELTA 90/103 | WD 90 | G01089 | Federal | OP 3 | 6/1/1962 | | 5,000 | Fieldwood En | 18.8% | PROD |
| GREEN CANYON 200 (Troika) | GC 201 | G12210 | Federal | RT NE4 | 5/1/1990 | | 5760 | Fieldwood En Off | 100.0% | UNIT |

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| ACOM O H EST GU 3R | ACOMGU3 | 168986 | 42071321150 |
| ARCO SANGER EST 5 | ARCOSANG5 | 09061 | 422973358000 |
| BRAZOS A-102 #A002 | BAA102A02 | G01754 | 427054002500 |
| BRAZOS A-105 #002 | BAA105002 | G01757 | 427054000400 |
| BRAZOS A-105 #A001 | BAA105A01 | G01757 | 427054003100 |
| BRAZOS A-105 #A003 | BAA105A03 | G01757 | 427054002900 |
| BRAZOS A-105 #A004 | BAA105A04 | G01757 | 427054003000 |
| BRAZOS A-105 #A005 | BAA105A05 | G01757 | 427054003200 |
| BRAZOS A-105 #B001 | BAA105B010 | G01757 | 427054012200 |
| BRAZOS A-105 #B002 | BAA105B020 | G01757 | 427054012600 |
| BRAZOS A-105 #B003 | BAA105B030 | G01757 | 427054012800 |
| BRAZOS A-105 #B004 | BAA105B040 | G01757 | 427054013000 |
| BRAZOS A-105 #B005 | BAA105B050 | G01757 | 427054013300 |
| BRAZOS A-133 #A001 | BAA133A010 | G02665 | 427054002400 |
| BRAZOS A-133 #A002 | BAA133A020 | G02665 | 427054003300 |
| BRAZOS A-133 #A003 | BAA133A030 | G02665 | 427054003500 |
| BRAZOS A-133 #A004 ST1 | BAA133A041 | G02665 | 427054004301 |
| BRAZOS A-133 #A005 ST1 | BAA133A051 | G02665 | 427054004401 |
| BRAZOS A-133 #A006 | BAA133A060 | G02665 | 427054004500 |
| BRAZOS A-133 #A007 | BAA133A070 | G02665 | 427054004800 |
| BRAZOS A-133 #A008 | BAA133A080 | G02665 | 427054005200 |
| BRAZOS A-133 #A009 | BAA133A090 | G02665 | 427054005400 |
| BRAZOS A-133 #A010 | BAA133A100 | G02665 | 427054013100 |
| BRAZOS A-133 #C001 | BAA133C010 | G02665 | 427054007800 |
| BRAZOS A-133 #C002 | BAA133C020 | G02665 | 427054008200 |
| BRAZOS A-133 #C003 | BAA133C030 | G02665 | 427054010700 |
| BRAZOS A-133 #C004 | BAA133C040 | G02665 | 427054013500 |
| BRAZOS A-133 #D001 ST1 | BAA133D011 | G02665 | 427054009201 |
| BRAZOS A-133 #D003 | BAA133D030 | G02665 | 427054012700 |
| BRETON SOUND 053 #001 SL3770 | SL0377001 | 03770 | 1.7726E+11 |
| BRETON SOUND 053 #007 SL 3770 | SL0377007 | 03770 | 177262015800 |
| BRETON SOUND 053 #008 SL 3770 | SL0377008 | 03770 | 177262016300 |
| EAST BREAKS 158 #A003 | EB158A03 | G02645 | 608044004104 |
| EAST BREAKS 158 #A007 | EB158A07 | G02645 | 608044005100 |
| EAST BREAKS 158 #A012 | EB158A12 | G02645 | 608044005601 |
| EAST BREAKS 158 #A014 | EB158A14 | G02645 | 608044005901 |
| EAST BREAKS 159 #A002 | EB159A02 | G02646 | 608044003800 |
| EAST BREAKS 159 #A005 | EB159A05 | G02646 | 608044004503 |
| EAST BREAKS 159 #A006 | EB159A06 | G02646 | 608044004401 |
| EAST BREAKS 159 #A009 | EB159A09 | G02646 | 608044005200 |
| EAST BREAKS 159 #A011 | EB159A11 | G02646 | 608044005400 |
| EAST BREAKS 159 #A017 | EB159A17 | G02646 | 608044018300 |
| EAST BREAKS 160 #A005 HB-2 | EB160A05 | G02647 | 608044003700 |
| EAST BREAKS 160 #A009 HB2 | EB160A09 | G02647 | 608044005800 |
| EAST BREAKS 160 #A010 GA1 | EB160A10 | G02647 | 608044008702 |
| EAST BREAKS 160 #A016 | EB160A16 | G02647 | 608044006000 |
| EAST BREAKS 160 #A018 ST4 | EB160A18 | G02647 | 608044006904 |
| EAST BREAKS 160 #A023 | EB160A23 | G02647 | 608044003900 |
| EAST BREAKS 160 #A025 | EB160A25 | G02647 | 608044004600 |
| EAST BREAKS 160 #A027 HB2 | EB160A27 | G02647 | 608044004900 |
| EAST BREAKS 160 #A031 HB2 | EB160A31 | G02647 | 608044008400 |

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST BREAKS 160 #A033 ST TA | EB160A33 | G02647 | 608044007002 |
| EAST BREAKS 161 #002 (CORONA) | EB16102 | G02648 | 608044022600 |
| EAST BREAKS 161 #A001 ST | EB161A01 | G02648 | 608044002801 |
| EAST BREAKS 161 #A002 | EB161A02 | G02648 | 608044003100 |
| EAST BREAKS 161 #A003 HB4 | EB161A03 | G02648 | 608044002900 |
| EAST BREAKS 161 #A007 GM1 | EB161A07 | G02648 | 608044004300 |
| EAST BREAKS 161 #A008 HB2 | EB161A08 | G02648 | 608044004800 |
| EAST BREAKS 161 #A013 ST | EB161A13 | G02648 | 608044024501 |
| EAST BREAKS 161 #A029 GA3 | EB161A29 | G02648 | 608044005300 |
| EAST BREAKS 165 #A001 | EB165A01 | G06280 | 608044010800 |
| EAST BREAKS 165 #A002 | EB165A02 | G06280 | 608044010900 |
| EAST BREAKS 165 #A003 | EB165A03 | G06280 | 608044011100 |
| EAST BREAKS 165 #A004 | EB165A04 | G06280 | 608044011200 |
| EAST BREAKS 165 #A005 | EB165A05 | G06280 | 608044011300 |
| EAST BREAKS 165 #A007 | EB165A07 | G06280 | 608044011700 |
| EAST BREAKS 165 #A008 | EB165A08 | G06280 | 608044011600 |
| EAST BREAKS 165 #A009 | EB165A09 | G06280 | 608044011900 |
| EAST BREAKS 165 #A010 | EB165A10 | G06280 | 608044011802 |
| EAST BREAKS 165 #A011 | EB165A11 | G06280 | 608044012300 |
| EAST BREAKS 165 #A012 | EB165A12 | G06280 | 608044012200 |
| EAST BREAKS 165 #A014 | EB165A14 | G06280 | 608044012501 |
| EAST BREAKS 165 #A015 | EB165A15 | G06280 | 608044012800 |
| EAST BREAKS 165 #A017 | EB165A17 | G06280 | 608044013100 |
| EAST BREAKS 165 #A018 | EB165A18 | G06280 | 608044013201 |
| EAST BREAKS 165 #A019 | EB165A19 | G06280 | 608044013302 |
| EAST BREAKS 165 #A020 | EB165A20 | G06280 | 608044013501 |
| EAST BREAKS 165 #A021 | EB165A21 | G06280 | 608044013400 |
| EAST BREAKS 165 #A022 | EB165A22 | G06280 | 608044013700 |
| EAST BREAKS 165 #A023 | EB165A23 | G06280 | 608044013600 |
| EAST BREAKS 165 #A024 | EB165A24 | G06280 | 608044014000 |
| EAST BREAKS 165 #A025 | EB165A25 | G06280 | 608044013900 |
| EAST BREAKS 165 #A026 | EB165A26 | G06280 | 608044014100 |
| EAST BREAKS 165 #A029 | EB165A29 | G06280 | 608044014401 |
| EAST BREAKS 165 #A030 | EB165A30 | G06280 | 608044014501 |
| EAST BREAKS 209 #A013 GA RA13 | EB209A13 | G07397 | 608044012400 |
| EAST CAMERON 330 #B003 | EC330B03 | G03540 | 177044055600 |
| EAST CAMERON 330 #B004 | EC330B04 | G03540 | 177044055800 |
| EAST CAMERON 330 #B005 | EC330B05 | G03540 | 177044056100 |
| EAST CAMERON 330 #B006 | EC330B06 | G03540 | 177044056200 |
| EAST CAMERON 330 #B008 | EC330B08 | G03540 | 177044056800 |
| EAST CAMERON 331 #A001 | EC331A01 | G08658 | 177044076300 |
| EAST CAMERON 331 #A003 | EC331A03 | G08658 | 177044076400 |
| EAST CAMERON 331 #A004 | EC331A04 | G08658 | 177044076700 |
| EAST CAMERON 331 #A009 | EC331A09 | G08658 | 177044079400 |
| EAST CAMERON 331 #A010 | EC331A10 | G08658 | 177044079500 |
| EAST CAMERON 331 #A012 | EC331A12 | G08658 | 177044083300 |
| EAST CAMERON 331 #A013 | EC331A13 | G08658 | 177044083400 |
| EAST CAMERON 332 #A002 | EC332A02 | G09478 | 177044076200 |
| EAST CAMERON 332 #A005 | EC332A05 | G09478 | 177044076800 |
| EAST CAMERON 332 #A006 | EC332A06 | G09478 | 177044077301 |
| EAST CAMERON 332 #A007 | EC332A07 | G09478 | 177044077400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST CAMERON 332 #A008 | EC332A08 | G09478 | 177044077700 |
| EAST CAMERON 332 #A011 | EC332A11 | G09478 | 177044083101 |
| EAST CAMERON 332 #A014 | EC332A14 | G09478 | 177044094600 |
| EAST CAMERON 332 #A016 | EC332A16 | G09478 | 177044097901 |
| EAST CAMERON 332 #A017 | EC332A17 | G09478 | 177044078103 |
| EAST CAMERON 349 #A001 | EC349A01 | G15157 | 177044082700 |
| EAST CAMERON 349 #A002U | EC349A02U | G13592 | 177044081400 |
| EAST CAMERON 349 #A004 | EC349A04 | G14385 | 177044097700 |
| EAST CAMERON 350 #A005 S04 | EC350A05 | G15157 | 177044098200 |
| EAST CAMERON 356 #A003 | EC356A03 | G13592 | 177044097301 |
| EAST CAMERON 371 #A002 | EC371A02 | G02267 | 177044094300 |
| EUGENE IS 032 #008 | EI03208 | 00196 | 177090061800 |
| EUGENE IS 032 #010 | EI03210 | 00196 | 177090072400 |
| EUGENE IS 032 #011 | EI03211 | 00196 | 177090054400 |
| EUGENE IS 032 #012 | EI03212 | 00196 | 177090054500 |
| EUGENE IS 032 #016 | EI03216 | 00196 | 177090061500 |
| EUGENE IS 032 #020 | EI03220 | 00196 | 177092019100 |
| EUGENE IS 032 #022 | EI03222 | 00196 | 177094014800 |
| EUGENE IS 032 #024 | EI03224 | 00196 | 177094032800 |
| EUGENE IS 032 #026 | EI03226 | 00196 | 177094097200 |
| EUGENE IS 032 #028 | EI03228 | 00196 | 177094098601 |
| EUGENE IS 032 #029 | EI03229 | 00196 | 177094110003 |
| EUGENE IS 032 #30 | EI03230 | 00196 | 177094116401 |
| EUGENE IS 032 #031 | EI03231 | 00196 | 177094126501 |
| EUGENE IS 032 #032 | EI03232 | 00196 | 177094126700 |
| EUGENE IS 032 #033 | EI03233 | 00196 | 177094136900 |
| EUGENE IS 032 #A001 | EI032A01 | 00196 | 177090052800 |
| EUGENE IS 032 #A002 | EI032A02 | 00196 | 177090052901 |
| EUGENE IS 032 #A003 | EI032A03 | 00196 | 177090053000 |
| EUGENE IS 032 #A005 | EI032A05 | 00196 | 177090053200 |
| EUGENE IS 032 #A006 | EI032A06 | 00196 | 1770900533 |
| EUGENE IS 032 #E001 | EI032E01 | 00196 | 177090053800 |
| EUGENE IS 032 #E002 | EI032E02 | 00196 | 177090053900 |
| EUGENE IS 032 #E003 | EI032E03 | 00196 | 177090054000 |
| EUGENE IS 032 #E004 | EI032E04 | 00196 | 177090054100 |
| EUGENE IS 032 #F001 | EI032F01 | 00196 | 177090054200 |
| EUGENE IS 053 #008D | EI053008D0 | 00479 | 177094086200 |
| EUGENE IS 053 #009 | EI05300900 | 00479 | 177094094000 |
| EUGENE IS 053 #B001D | EI053B01D0 | 00479 | 177094085900 |
| EUGENE IS 053 #C002 | EI053C0200 | 00479 | 177094122600 |
| EUGENE IS 053 #G001 ST1 | EI053G01D2 | 00479 | 177094144201 |
| EUGENE IS 100 #013 | EI10013 | 00796 | 177090032601 |
| EUGENE IS 100 #020 | EI10020 | 00796 | 177090088800 |
| EUGENE IS 100 #024 | EI10024 | 00796 | 177092019204 |
| EUGENE IS 100 #027 | EI10027 | 00796 | 177092018602 |
| EUGENE IS 100 #030 | EI10030 | 00796 | 177094052700 |
| EUGENE IS 100 #031 | EI10031 | 00796 | 177094091603 |
| EUGENE IS 100 #033 | EI10033 | 00796 | 177094093001 |
| EUGENE IS 100 #041 | EI10041 | 00796 | 177094115601 |
| EUGENE IS 175 #D008 | EI175D0800 | 00438 | 177094003900 |
| EUGENE IS 175 #F001 ST1 | EI175F0101 | 00438 | 177094035401 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 175 #F003 ST | EI175F0302 | 00438 | 177094039702 |
| EUGENE IS 175 #F004 ST | EI175F0401 | 00438 | 177094041001 |
| EUGENE IS 175 #F005 | EI175F0500 | 00438 | 177094042900 |
| EUGENE IS 175 #F007 | EI175F0700 | 00438 | 177094048900 |
| EUGENE IS 175 #F009 | EI175F0901 | 00438 | 177094087601 |
| EUGENE IS 175 #H002 | EI175H0200 | 00438 | 177094106700 |
| EUGENE IS 175 #H003 | EI175H0300 | 00438 | 177094110800 |
| EUGENE IS 175 #H004 | EI175H0400 | 00438 | 177094110900 |
| EUGENE IS 175 #H005 ST1BP1 | EI175H0502 | 00438 | 177094112002 |
| EUGENE IS 175 #I002 | EI175I0201 | 00438 | 177094107101 |
| EUGENE IS 175 #I004 | EI175I0400 | 00438 | 177094109200 |
| EUGENE IS 175 #J002 ST1 | EI175J0201 | 00438 | 177094123201 |
| EUGENE IS 307 #A001 | EI307A01 | G02110 | 177104007400 |
| EUGENE IS 307 #A002 | EI307A02 | G02110 | 177104042401 |
| EUGENE IS 307 #A003 | EI307A03 | G02110 | 177104059300 |
| EUGENE IS 307 #A004 | EI307A04 | G02110 | 177104060900 |
| EUGENE IS 307 #A005 | EI307A05 | G02110 | 177104062000 |
| EUGENE IS 307 #A006 | EI307A06 | G02110 | 177104065900 |
| EUGENE IS 307 #A007 | EI307A07 | G02110 | 177104067100 |
| EUGENE IS 307 #A008 | EI307A08 | G02110 | 177104164600 |
| EUGENE IS 307 #B001 | EI307B01 | G02110 | 177104078501 |
| EUGENE IS 307 #B003 | EI307B03 | G02110 | 177104113302 |
| EUGENE IS 307 #B008 | EI307B08 | G02110 | 177104153802 |
| EUGENE IS 311 #D003 | EI311D03 | G27918 | 177104162000 |
| EUGENE IS 312 #D001 | EI312D0100 | G22679 | 177104160900 |
| EUGENE IS 312 #D002 | EI312D0200 | G22679 | 177104161900 |
| EUGENE IS 330 #B015 ST1 | EI330B1501 | G02115 | 177104028601 |
| EUGENE IS 342 #004 | EI34200400 | G02319 | 177104113000 |
| EUGENE IS 342 #C002 ST1 | EI342C0201 | G02319 | 177104110601 |
| EUGENE IS 342 #C003 | EI342C0300 | G02319 | 177104114000 |
| EUGENE IS 342 #C004 | EI342C0401 | G02319 | 177104120101 |
| EUGENE IS 342 #C005 | EI342C0502 | G02319 | 177104120202 |
| EUGENE IS 342 #C006 | EI342C0600 | G02319 | 177104120300 |
| EUGENE IS 342 #C007 | EI342C0700 | G02319 | 177104120800 |
| EUGENE IS 342 #C008 | EI342C0800 | G02319 | 177104121000 |
| EUGENE IS 342 #C009 | EI342C0900 | G02319 | 177104121300 |
| EUGENE IS 342 #C011 | EI342C1100 | G02319 | 177104122000 |
| EUGENE IS 342 #C012 | EI342C1200 | G02319 | 177104122200 |
| EUGENE IS 342 #C013 | EI342C1300 | G02319 | 177104122700 |
| EUGENE IS 342 #C014 | EI342C1400 | G02319 | 177104135800 |
| EUGENE IS 342 #C015 | EI342C1501 | G02319 | 177104162101 |
| EUGENE IS 342 #C016 | EI342C1601 | G02319 | 177104162201 |
| EUGENE IS 342 #C017 BP1 | EI342C1701 | G02319 | 177104162501 |
| EVANS GAS UNIT 1 | EVANSGASU1 | 19334 | 4216701288 |
| EVANS OIL UNIT 1 | EVANSOILU1 | 19334 | 4216701288 |
| EWING BANK 782 #A012 | EW826A1200 | G05793 | 608105001800 |
| FROST - ACOM GU 1 | FROSTAC1 | 189098 | 42071320621 |
| FROST - ACOM GU 2 | FROSTAC2 | 206882 | 42071320921 |
| GALVESTON 151 #005 | GA15100500 | G15740 | 427064044200 |
| GALVESTON 210 #001 | GA21000100 | G25524 | 427064044300 |
| GALVESTON 210 #002 | GA21000200 | G25524 | 427064044800 |

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GALVESTON A-155 #A001 | GAA155A01 | G30654 | 427074010800 |
| GREEN CANYON 064 #A040 | GC064A40 | G07005 | 608114016202 |
| GREEN CANYON 157 SS003 | GC157003 | G24154 | 608114043901 |
| GREEN CANYON 201 #001 ST2 | GC201001 | G12210 | 608114043802 |
| GREEN CANYON 201 SS001 | GC157001 | G12210 | 608114043802 |
| GREEN CANYON 245 # TA 8 TROIKA | - | G05916 | 608114032900 |
| HAYES LUMBER 1 - HBY 4 RC SUA | HAYESLUM1 | 42450 | 17053212861 |
| HAYES LUMBER CO 28 2 | HAYESLUM02 | Onshore | 170532123800 |
| HAYES LUMBER HBY 4 RA SUA 1ALT | HAYESLUM01 | 42450 | 170532122800 |
| HAYES MINERALS 29 001 | HAYESMIN29 | 42450 | 170532130600 |
| HELIS 2 | HELIS2 | 17072 | 1704520888 |
| HIGH ISLAND A-341 #B001 | HIA341B010 | G25605 | 427114085900 |
| HIGH ISLAND A-341 #B002 | HIA341B020 | G25605 | 427114087101 |
| HIGH ISLAND A-365 #A001 | HIA365A010 | G02750 | 427114052200 |
| HIGH ISLAND A-365 #A004 | HIA365A040 | G02750 | 427114053700 |
| HIGH ISLAND A-365 #A006 | HIA365A060 | G02750 | 427114053100 |
| HIGH ISLAND A-365 #A007 | HIA365A070 | G02750 | 427114054100 |
| HIGH ISLAND A-365 #A008 | HIA365A080 | G02750 | 427114054800 |
| HIGH ISLAND A-365 #A010 | HIA365A100 | G02750 | 427114055200 |
| HIGH ISLAND A-365 #A012 | HIA365A120 | G02750 | 427114055600 |
| HIGH ISLAND A-365 #A013 ST1 | HIA365A131 | G02750 | 427114055801 |
| HIGH ISLAND A-365 #A016 | HIA365A160 | G02750 | 427114056700 |
| HIGH ISLAND A-365 #A020 | HIA365A200 | G02750 | 427114057500 |
| HIGH ISLAND A-365 #A021 | HIA365A210 | G02750 | 427114057600 |
| HIGH ISLAND A-365 #A024 | HIA365A240 | G02750 | 427114066300 |
| HIGH ISLAND A-365 #A025 | HIA365A250 | G02750 | 427114066500 |
| HIGH ISLAND A-376 #A002 ST1 | HIA376A021 | G02754 | 427114052601 |
| HIGH ISLAND A-376 #A003 | HIA376A030 | G02754 | 427114052700 |
| HIGH ISLAND A-376 #A005 | HIA376A050 | G02754 | 427114053500 |
| HIGH ISLAND A-376 #A009 | HIA376A090 | G02754 | 427114054400 |
| HIGH ISLAND A-376 #A011 | HIA376A110 | G02754 | 427114055000 |
| HIGH ISLAND A-376 #A014 ST2 | HIA376A142 | G02754 | 427114056002 |
| HIGH ISLAND A-376 #A015 | HIA376A150 | G02754 | 427114056200 |
| HIGH ISLAND A-376 #A017 | HIA376A170 | G02754 | 427114057200 |
| HIGH ISLAND A-376 #A018 | HIA376A180 | G02754 | 427114057300 |
| HIGH ISLAND A-376 #A019 | HIA376A190 | G02754 | 427114057400 |
| HIGH ISLAND A-376 #A022 | HIA376A220 | G02754 | 427114057700 |
| HIGH ISLAND A-376 #B001 | HIA376B010 | G02754 | 427114068700 |
| HIGH ISLAND A-376 #B002 | HIA376B020 | G02754 | 427114068900 |
| HIGH ISLAND A-376 #B003 | HIA376B031 | G02754 | 427114078701 |
| HIGH ISLAND A-376 #B004 | HIA376B041 | G02754 | 427114079001 |
| HIGH ISLAND A-376 #B005 | HIA376B050 | G02754 | 427114079600 |
| HIGH ISLAND A-376 #C001 | HIA376C010 | G02754 | 427114088900 |
| HIGH ISLAND A-376 #C002 | HIA376C020 | G02754 | 427114089600 |
| HIGH ISLAND A-376 #C003 | HIA376C030 | G02754 | 427114089500 |
| HIGH ISLAND A-376 #C004 | HIA376C040 | G02754 | 427114089400 |
| HIGH ISLAND A-382 #A009 | HIA382A090 | G02757 | 427094018600 |
| HIGH ISLAND A-382 #B013 | HIA382B130 | G02757 | 427094025500 |
| HIGH ISLAND A-382 #F001 ST1 | HIA382F011 | G02757 | 427114059401 |
| HIGH ISLAND A-382 #F002 | HIA382F020 | G02757 | 427114059800 |
| HIGH ISLAND A-382 #F003 | HIA382F031 | G02757 | 427114059901 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-382 #F004 | HIA382F040 | G02757 | 427114060600 |
| HIGH ISLAND A-382 #F005 | HIA382F050 | G02757 | 427114060900 |
| HIGH ISLAND A-382 #F006 | HIA382F061 | G02757 | 427114061001 |
| HIGH ISLAND A-382 #F008 | HIA382F080 | G02757 | 427114061700 |
| HIGH ISLAND A-382 #F010 ST5 | HIA382F105 | G02757 | 427114062605 |
| HIGH ISLAND A-382 #F011 | HIA382F110 | G02757 | 427114063100 |
| HIGH ISLAND A-382 #F012 | HIA382F121 | G02757 | 427114063601 |
| HIGH ISLAND A-382 #F013 | HIA382F130 | G02757 | 427114063800 |
| HIGH ISLAND A-382 #F014 | HIA382F140 | G02757 | 427114063900 |
| HIGH ISLAND A-382 #F015 | HIA382F151 | G02757 | 427114064701 |
| HIGH ISLAND A-382 #F017 | HIA382F171 | G02757 | 427114066701 |
| HIGH ISLAND A-382 #F019 | HIA382F190 | G02757 | 427114067100 |
| HIGH ISLAND A-382 #F020 | HIA382F200 | G02757 | 427114067500 |
| HIGH ISLAND A-382 #F021 | HIA382F211 | G02757 | 427114067801 |
| HIGH ISLAND A-474 #A001 | HIA474A010 | G02366 | 427094017100 |
| HIGH ISLAND A-474 #A002 | HIA474A020 | G02366 | 427094017200 |
| HIGH ISLAND A-474 #A003 | HIA474A030 | G02366 | 427094019900 |
| HIGH ISLAND A-474 #A004 | HIA474A040 | G02366 | 427094022800 |
| HIGH ISLAND A-474 #A005 | HIA474A050 | G02366 | 427094023500 |
| HIGH ISLAND A-474 #A006 | HIA474A060 | G02366 | 427094024300 |
| HIGH ISLAND A-474 #A007 | HIA474A070 | G02366 | 427094027702 |
| HIGH ISLAND A-474 #A008 | HIA474A080 | G02366 | 427094026100 |
| HIGH ISLAND A-474 #A010 | HIA474A100 | G02366 | 427094029400 |
| HIGH ISLAND A-474 #A011 | HIA474A110 | G02366 | 427094030000 |
| HIGH ISLAND A-474 #A012 | HIA474A120 | G02366 | 427094030801 |
| HIGH ISLAND A-474 #A013 | HIA474A130 | G02366 | 427094036104 |
| HIGH ISLAND A-474 #A014 | HIA474A140 | G02366 | 427094035000 |
| HIGH ISLAND A-474 #A017 | HIA474A170 | G02366 | 427094032500 |
| HIGH ISLAND A-474 #A020 | HIA474A200 | G02366 | 427094038500 |
| HIGH ISLAND A-474 #A021 | HIA474A210 | G02366 | 427094040700 |
| HIGH ISLAND A-474 #B023 | HIA474B230 | G02366 | 427094037200 |
| HIGH ISLAND A-475 #A016 | HIA475A16 | G02367 | 427094035500 |
| HIGH ISLAND A-489 #A009 | HIA489A090 | G02372 | 427094028500 |
| HIGH ISLAND A-489 #A015 | HIA489A150 | G02372 | 427094037000 |
| HIGH ISLAND A-489 #B002 | HIA489B020 | G02372 | 427094021000 |
| HIGH ISLAND A-489 #B003 | HIA489B030 | G02372 | 427094020901 |
| HIGH ISLAND A-489 #B007 | HIA489B070 | G02372 | 427094027601 |
| HIGH ISLAND A-489 #B009 | HIA489B090 | G02372 | 427094026500 |
| HIGH ISLAND A-489 #B010 | HIA489B100 | G02372 | 427094028800 |
| HIGH ISLAND A-489 #B012 | HIA489B120 | G02372 | 427094031400 |
| HIGH ISLAND A-489 #B013 | HIA489B130 | G02372 | 427094028600 |
| HIGH ISLAND A-489 #B014 | HIA489B140 | G02372 | 427094029700 |
| HIGH ISLAND A-489 #B015 | HIA489B150 | G02372 | 427094030400 |
| HIGH ISLAND A-489 #B016 | HIA489B160 | G02372 | 427094029800 |
| HIGH ISLAND A-489 #B017 | HIA489B170 | G02372 | 427094023802 |
| HIGH ISLAND A-489 #B018 | HIA489B180 | G02372 | 427094032801 |
| HIGH ISLAND A-489 #B020 | HIA489B200 | G02372 | 427094028101 |
| HIGH ISLAND A-489 #B021 | HIA489B210 | G02372 | 427094026202 |
| HIGH ISLAND A-489 #B022 | HIA489B220 | G02372 | 427094036000 |
| HIGH ISLAND A-489 #B024 | HIA489B240 | G02372 | 427094035400 |
| HIGH ISLAND A-489 #B025 | HIA489B250 | G02372 | 427094041400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-489 #B026 | HIA489B260 | G02372 | 427094043100 |
| HIGH ISLAND A-489 #B027 | HIA489B270 | G02372 | 427094042501 |
| HIGH ISLAND A-489 #B028 | HIA489B280 | G02372 | 427094054500 |
| HIGH ISLAND A-489 #B029 | HIA489B290 | G02372 | 427094111100 |
| HIGH ISLAND A-550 #002 | HIA55002 | G04081 | 427094062700 |
| HIGH ISLAND A-550 #003 | HIA55003 | G04081 | 427094063700 |
| HIGH ISLAND A-550 #A001 | HIA550A01 | G04081 | 427094057004 |
| HIGH ISLAND A-550 #A002 | HIA550A02 | G04081 | 427094074101 |
| HIGH ISLAND A-550 #A003 | HIA550A03 | G04081 | 427094076000 |
| HIGH ISLAND A-550 #A004 | HIA550A04 | G04081 | 427094099501 |
| HIGH ISLAND A-550 #A005 | HIA550A05 | G04081 | 427094099801 |
| HIGH ISLAND A-550 #A006 | HIA550A06 | G04081 | 427094104801 |
| HIGH ISLAND A-563 #B001 | HIA563B01 | G02388 | 427094029900 |
| HIGH ISLAND A-563 #B004 | HIA563B04 | G02388 | 427094034402 |
| HIGH ISLAND A-563 #B005 | HIA563B05 | G02388 | 427094037100 |
| HIGH ISLAND A-563 #B007 | HIA563B07 | G02388 | 427094038600 |
| HIGH ISLAND A-563 #B008 | HIA563B08 | G02388 | 427094038900 |
| HIGH ISLAND A-563 #B009 | HIA563B09 | G02388 | 427094039601 |
| HIGH ISLAND A-563 #B010 | HIA563B10 | G02388 | 427094040000 |
| HIGH ISLAND A-563 #B012 | HIA563B12 | G02388 | 427094043502 |
| HIGH ISLAND A-563 #B013 | HIA563B13 | G02388 | 427094040501 |
| HIGH ISLAND A-563 #B015 | HIA563B15 | G02388 | 427094048000 |
| HIGH ISLAND A-563 #B016 | HIA563B16 | G02388 | 427094048102 |
| HIGH ISLAND A-563 #B017 | HIA563B17 | G02388 | 427094045804 |
| HIGH ISLAND A-563 #B018 | HIA563B18 | G02388 | 427094052501 |
| HIGH ISLAND A-563 #B019 | HIA563B19 | G02388 | 427094052000 |
| HIGH ISLAND A-563 #B022 | HIA563B22 | G02388 | 427094055000 |
| HIGH ISLAND A-563 #B023 | HIA563B23 | G02388 | 427094056400 |
| HIGH ISLAND A-563 #B024 | HIA563B24 | G02388 | 427094056601 |
| HIGH ISLAND A-563 #B025 | HIA563B25 | G02388 | 427094059300 |
| HIGH ISLAND A-563 #B026 | HIA563B26 | G02388 | 427094066801 |
| HIGH ISLAND A-563 #B027 | HIA563B27 | G02388 | 427094068100 |
| HIGH ISLAND A-563 #C004 | HIA563C04 | G02388 | 427094059602 |
| HIGH ISLAND A-563 #C005 | HIA563C05 | G02388 | 427094062800 |
| HIGH ISLAND A-563 #C008 | HIA563C08 | G02388 | 427094069400 |
| HIGH ISLAND A-563 #C009 | HIA563C09 | G02388 | 427094064600 |
| HIGH ISLAND A-564 #B006 | HIA563B06 | G02389 | 427094033801 |
| HIGH ISLAND A-564 #B020 | HIA564B20 | G02389 | 427094053102 |
| HIGH ISLAND A-564 #B021 | HIA563B21 | G02389 | 427094053900 |
| HIGH ISLAND A-572 #A003 ST1 | HIA572A031 | G02392 | 427094012901 |
| HIGH ISLAND A-572(573)A014 | HIA572A140 | G02392 | 427094034100 |
| HIGH ISLAND A-573 #006 | HIA5730060 | G02393 | 427094053700 |
| HIGH ISLAND A-573 #A001 ST2 | HIA573A012 | G02393 | 427094007102 |
| HIGH ISLAND A-573 #A002 ST3 | HIA573A023 | G02393 | 427094013803 |
| HIGH ISLAND A-573 #A004 | HIA573A040 | G02393 | 427094015000 |
| HIGH ISLAND A-573 #A005 ST1 | HIA573A051 | G02393 | 427094015501 |
| HIGH ISLAND A-573 #A008 | HIA573A080 | G02393 | 427094018000 |
| HIGH ISLAND A-573 #A010 | HIA573A100 | G02393 | 427094020500 |
| HIGH ISLAND A-573 #A015 | HIA573A150 | G02393 | 427094034200 |
| HIGH ISLAND A-573 #A016 | HIA573A160 | G02393 | 427094034300 |
| HIGH ISLAND A-573 #A017 | HIA573A170 | G02393 | 427094036500 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-573 #A019 ST1 | HIA573A191 | G02393 | 427094038001 |
| HIGH ISLAND A-573 #B001 | HIA573B010 | G02393 | 427094012800 |
| HIGH ISLAND A-573 #B002 | HIA573B020 | G02393 | 427094014100 |
| HIGH ISLAND A-573 #B005 | HIA573B050 | G02393 | 427094016400 |
| HIGH ISLAND A-573 #B006 | HIA573B060 | G02393 | 427094017000 |
| HIGH ISLAND A-573 #B008 | HIA573B080 | G02393 | 427094017900 |
| HIGH ISLAND A-573 #B010 | HIA573B100 | G02393 | 427094021100 |
| HIGH ISLAND A-573 #B012 | HIA573B120 | G02393 | 427094022700 |
| HIGH ISLAND A-573 #E007 | HIA573E070 | G02393 | 427094098200 |
| HIGH ISLAND A-573 #E012 | HIA573E120 | G02393 | 427094115000 |
| HIGH ISLAND A-573 #F007 | HIA573F070 | G02393 | 427114061200 |
| HIGH ISLAND A-573 #F009 | HIA573F090 | G02393 | 427114062000 |
| HIGH ISLAND A-573 #F016 ST5 | HIA573F165 | G02393 | 427114066805 |
| HIGH ISLAND A-573 #F018 ST1 | HIA573F181 | G02393 | 427114067301 |
| HIGH ISLAND A-573 #F022 | HIA573F220 | G02393 | 427114068400 |
| HIGH ISLAND A-573 #F023 ST2 | HIA573F232 | G02393 | 427114069302 |
| HIGH ISLAND A-581 #D004 | HIA581D040 | G18959 | 427094112200 |
| HIGH ISLAND A-581 #D004 | HIA581D040 | G18959 | 427094112200 |
| HIGH ISLAND A-582 #C001 | HIA582C010 | G02719 | 427094061500 |
| HIGH ISLAND A-582 #C002 | HIA582C020 | G02719 | 427094061900 |
| HIGH ISLAND A-582 #C003 | HIA582C030 | G02719 | 427094058000 |
| HIGH ISLAND A-582 #C006 | HIA582C060 | G02719 | 427094063400 |
| HIGH ISLAND A-582 #C007 | HIA582C070 | G02719 | 427094063900 |
| HIGH ISLAND A-582 #C010 | HIA582C100 | G02719 | 427094070200 |
| HIGH ISLAND A-582 #C011 | HIA582C110 | G02719 | 427094071400 |
| HIGH ISLAND A-582 #C012 | HIA582C120 | G02719 | 427094074900 |
| HIGH ISLAND A-582 #C013 | HIA582C130 | G02719 | 427094072700 |
| HIGH ISLAND A-582 #C014 | HIA582C140 | G02719 | 427094073800 |
| HIGH ISLAND A-582 #C015 | HIA582C150 | G02719 | 427094075800 |
| HIGH ISLAND A-582 #C019 | HIA582C190 | G02719 | 427094108200 |
| HIGH ISLAND A-582 #D001 | HIA582D010 | G18959 | 42094110200 |
| HIGH ISLAND A-582 #D002 ST1 | HIA582D021 | G02719 | 427094110801 |
| HIGH ISLAND A-582 #D003 ST | HIA582D031 | G02719 | 427094111401 |
| HIGH ISLAND A-582 #D005 | HIA582D050 | G02719 | 427094114300 |
| HIGH ISLAND A-582 #D006 | HIA582D060 | G02719 | 427094114700 |
| HIGH ISLAND A-595 #D001 ST2 | HIA595D1D2 | G02721 | 427094055302 |
| HIGH ISLAND A-595 #D003 | HIA595D03 | G02721 | 427094058500 |
| HIGH ISLAND A-595 #D005 | HIA595D050 | G02721 | 427094092900 |
| HIGH ISLAND A-595 #D006 | HIA595D063 | G02721 | 427094063205 |
| HIGH ISLAND A-595 #D010 | HIA595D100 | G02721 | 427094070500 |
| HIGH ISLAND A-595 #D012 | HIA595D120 | G02721 | 427094077000 |
| HIGH ISLAND A-595 #D017 ST2 | HIA595D172 | G02721 | 427094083702 |
| HIGH ISLAND A-595 #D018 | HIA595D181 | G02721 | 427094093501 |
| HIGH ISLAND A-595 #E011 | HIA595E110 | G02721 | 427094114501 |
| HIGH ISLAND A-596 #B014 | HIA596B140 | G02722 | 427094025800 |
| HIGH ISLAND A-596 #D002 | HIA596D020 | G02722 | 427094056901 |
| HIGH ISLAND A-596 #D004 | HIA596D040 | G02722 | 427094060500 |
| HIGH ISLAND A-596 #D007 ST4 | HIA596D074 | G02722 | 427094064304 |
| HIGH ISLAND A-596 #D008 ST1 | HIA596D081 | G02722 | 427094067001 |
| HIGH ISLAND A-596 #D009 | HIA596D090 | G02722 | 427094068400 |
| HIGH ISLAND A-596 #D011 | HIA596D110 | G02722 | 427094075700 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-596 #D013 ST2 | HIA596D132 | G02722 | 427094079502 |
| HIGH ISLAND A-596 #D014 | HIA596D140 | G02722 | 427094080100 |
| HIGH ISLAND A-596 #D016 | HIA596D160 | G02722 | 427094082400 |
| HIGH ISLAND A-596 #E005 | HIA596E050 | G02722 | 427094085900 |
| HIGH ISLAND A-596 #E008 | HIA596E080 | G02722 | 427094112801 |
| HIGH ISLAND A-596 #E009 | HIA596E090 | G02722 | 427094114200 |
| LA ST LSE 3011 1 SWD BURRWOOD | BURRWOOD | 03011 | 177210074800 |
| LANDREAU ET UX 1 | LANDREAU1 | 490100 | UNKNOWN |
| MAIN PASS 077 #A001 | MP077A0100 | G04481 | 177254033800 |
| MAIN PASS 077 #A002 | MP077A0201 | G04481 | 177254043101 |
| MAIN PASS 077 #A003 | MP077A0300 | G04481 | 177254036100 |
| MAIN PASS 077 #A004 | MP077A0400 | G04481 | 177254036900 |
| MAIN PASS 077 #A005 | MP077A0500 | G04481 | 177254038000 |
| MAIN PASS 077 #A006 ST2 | MP077A0602 | G04481 | 177254036402 |
| MAIN PASS 077 #A010 | MP077A1000 | G04481 | 177254039600 |
| MAIN PASS 077 #A011 | MP077A1100 | G04481 | 177254042400 |
| MAIN PASS 077 #A012 | MP077A1200 | G04481 | 177254039700 |
| MAIN PASS 077 #A013 | MP077A1300 | G04481 | 177254044900 |
| MAIN PASS 077 #A014 | MP077A1400 | G04481 | 177254044500 |
| MAIN PASS 077 #A015 | MP077A1501 | G04481 | 177254045101 |
| MAIN PASS 077 #A016 | MP077A1600 | G04481 | 177254045900 |
| MAIN PASS 077 #A017 | MP077A1700 | G04481 | 177254046200 |
| MAIN PASS 077 #A018 | MP077A1800 | G04481 | 177254046800 |
| MAIN PASS 077 #A019 | MP077A1900 | G04481 | 177254048200 |
| MAIN PASS 077 #A020 | MP077A2001 | G04481 | 177254048501 |
| MAIN PASS 077 #A021 ST | MP077A2100 | G04481 | 177254067002 |
| MAIN PASS 077 #A022 | MP077A2201 | G04481 | 177254067401 |
| MAIN PASS 077 #A023 | MP077A23 | G04481 | 177254067601 |
| MAIN PASS 077 #A07 | MP077A0700 | G04481 | 177254041000 |
| MAIN PASS 077 #A08 | MP077A0800 | G04481 | 177254038200 |
| MAIN PASS 077 #A09 | MP077A0900 | G04481 | 177254039000 |
| NW MYETTE POINT SL 14519 #001 | SL1451901 | 14519 | 171012195100 |
| NW MYETTE POINT SL 14519 #002 | SL1451902 | 14519 | 171012200800 |
| NW MYETTE POINT SL 14520 #002 | SL1452002 | 14520 | 171012201500 |
| NW MYETTE POINT SL 14914 #002 | SL1491402 | 14914 | 171012206300 |
| NW MYETTE POINT SL 14914 #003 | SL1491403 | 14914 | 171012239600 |
| NW MYETTE POINT SL14519 #1 SWD | SL14519SWD | 14519 | 171018805900 |
| SHIP SHOAL 149 #A017 (ORRI) | SS149A17 | 00434 | 177114131300 |
| SHIP SHOAL 149 #C001 | SS149C01 | 00434 | 177114005500 |
| SHIP SHOAL 149 #C002 | SS149C02 | 00434 | 177114007000 |
| SHIP SHOAL 149 #C003 | SS149C03 | 00434 | 177114016000 |
| SHIP SHOAL 149 #C004 | SS149C04 | 00434 | 177114024301 |
| SHIP SHOAL 149 #C005 | SS149C05 | 00434 | 177114025800 |
| SHIP SHOAL 149 #C019 (ORRI) | SS149C19 | 00434 | 177114132300 |
| SHIP SHOAL 149 #E007 | SS149E07 | 00434 | 177114113100 |
| SHIP SHOAL 169 #BB001 | SS169BB010 | 00820 | 177114048100 |
| SHIP SHOAL 169 #BB002 | SS169BB020 | 00820 | 177114055501 |
| SHIP SHOAL 169 #BB003 | SS169BB030 | 00820 | 177114057800 |
| SHIP SHOAL 169 #BB004 | SS169BB040 | 00820 | 177114056500 |
| SHIP SHOAL 169 #BB005 | SS169BB050 | 00820 | 177114059600 |
| SHIP SHOAL 169 #BB006 | SS169BB060 | 00820 | 177114060101 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 169 #C001 | SS169C0100 | 00820 | 177114075600 |
| SHIP SHOAL 169 #C003 | SS169C0300 | 00820 | 177114078500 |
| SHIP SHOAL 169 #C004 | SS169C0400 | 00820 | 177114077400 |
| SHIP SHOAL 169 #C006 | SS169C0600 | 00820 | 177114080201 |
| SHIP SHOAL 169 #C007 | SS169C0700 | 00820 | 177114080601 |
| SHIP SHOAL 169 #C008 | SS169C0800 | 00820 | 177114081300 |
| SHIP SHOAL 169 #C009 | SS169C0900 | 00820 | 177114144400 |
| SHIP SHOAL 169 #C010 | SS169C1000 | 00820 | 177114144800 |
| SHIP SHOAL 169 #G001 | SS169G0100 | 00820 | 177114127400 |
| SHIP SHOAL 169 #G002 | SS169G0200 | 00820 | 177114128500 |
| SHIP SHOAL 169 #G003 | SS169G0300 | 00820 | 177114156600 |
| SHIP SHOAL 177 #007 | SS17700700 | 00590 | 177114101100 |
| SHIP SHOAL 177 #A001 | SS177A01 | 00590 | 177114056300 |
| SHIP SHOAL 177 #A002 | SS177A02 | 00590 | 177114055000 |
| SHIP SHOAL 177 #A003 | SS177A03 | 00590 | 177114056100 |
| SHIP SHOAL 177 #A005 | SS177A05 | 00590 | 177114119301 |
| SHIP SHOAL 189 #A001A | SS189A01A0 | G04232 | 177114062000 |
| SHIP SHOAL 189 #A003A | SS189A03A0 | G04232 | 177114085200 |
| SHIP SHOAL 189 #A005 | SS189A0500 | G04232 | 177114088400 |
| SHIP SHOAL 189 #A007 ST2 | SS189A0702 | G04232 | 177114129502 |
| SHIP SHOAL 189 #A008 | SS189A0800 | G04232 | 177114130900 |
| SHIP SHOAL 189 #A009 ST1 | SS189A0901 | G04232 | 177114143900 |
| SHIP SHOAL 189 #A010BP1 | SS189A1001 | G04232 | 177114154701 |
| SHIP SHOAL 189 #A4 (SS210) | SS189A04 | G04232 | 177114086801 |
| SHIP SHOAL 189 #A6 (SS188) | SS189A06 | G04232 | 177114088906 |
| SHIP SHOAL 204 #A008 | SS204A0800 | G01520 | 177110083000 |
| SHIP SHOAL 204 #A015 ST1 | SS204A1501 | G01520 | 177112003401 |
| SHIP SHOAL 204 #A016 | SS204A1601 | G01520 | 177112005401 |
| SHIP SHOAL 204 #A020 | SS204A2000 | G01520 | 177112012600 |
| SHIP SHOAL 204 #A024 ST1 | SS204A2401 | G01520 | 177112017701 |
| SHIP SHOAL 204 #A028 ST3 | SS204A2803 | G01520 | 177110071003 |
| SHIP SHOAL 204 #A030A | SS204A30A1 | G01520 | 177114002801 |
| SHIP SHOAL 204 #A031 | SS204A3101 | G01520 | 177110084201 |
| SHIP SHOAL 204 #A034 | SS204A3400 | G01520 | 177114146700 |
| SHIP SHOAL 204 #A035 | SS204A3502 | G01520 | 177114147402 |
| SHIP SHOAL 204 #A036 ST1 | SS204A3603 | G01520 | 177114146803 |
| SHIP SHOAL 206 #E002 | SS206E0201 | G01522 | 177114118101 |
| SHIP SHOAL 206 #E003 | SS206E0301 | G01522 | 177114118201 |
| SHIP SHOAL 206 #E004 | SS206E0400 | G01522 | 177114141800 |
| SHIP SHOAL 206 #E005 | SS206E0500 | G01522 | 177114142000 |
| SHIP SHOAL 207 #A003 ST1 | SS207A0301 | G01523 | 177110072801 |
| SHIP SHOAL 207 #A004B | SS207A04B0 | G01523 | 177110075500 |
| SHIP SHOAL 207 #A006D | SS207A06D0 | G01523 | 177110078200 |
| SHIP SHOAL 207 #A008B | SS207A08B0 | G01523 | 177110080700 |
| SHIP SHOAL 207 #A009 | SS207A0900 | G01523 | 177110082400 |
| SHIP SHOAL 207 #A010D | SS207A10D0 | G01523 | 177110083900 |
| SHIP SHOAL 207 #A013 | SS207A1300 | G01523 | 177112002500 |
| SHIP SHOAL 207 #A015 ST1 | SS207A1501 | G01523 | 177112010601 |
| SHIP SHOAL 207 #A016 ST1 | SS207A1601 | G01523 | 177112011401 |
| SHIP SHOAL 207 #A018 | SS207A1800 | G01523 | 177112005000 |
| SHIP SHOAL 207 #A019ST | SS207A1901 | G01523 | 177114009401 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 207 #A020 | SS207A2000 | G01523 | 177114010300 |
| SHIP SHOAL 207 #A022 ST1 | SS207A2201 | G01523 | 177114011301 |
| SHIP SHOAL 207 #A023B | SS207A23B0 | G01523 | 177114013500 |
| SHIP SHOAL 207 #A024 | SS207A2400 | G01523 | 177114014300 |
| SHIP SHOAL 207 #A025 | SS207A2500 | G01523 | 177114015500 |
| SHIP SHOAL 207 #A026 | SS207A2601 | G01523 | 177112001101 |
| SHIP SHOAL 207 #A027 | SS207A2701 | G01523 | 177110079401 |
| SHIP SHOAL 207 #A028 | SS207A2801 | G01523 | 177110077301 |
| SHIP SHOAL 207 #A029 ST | SS207A2901 | G01523 | 177112001901 |
| SHIP SHOAL 207 #A030 | SS207A3001 | G01523 | 177110071501 |
| SHIP SHOAL 207 #A031 ST2 | SS207A3102 | G01523 | 177114111702 |
| SHIP SHOAL 207 #A032 | SS207A3201 | G01523 | 177114119701 |
| SHIP SHOAL 207 #A033 ST1 | SS207A3301 | G01523 | 177114121901 |
| SHIP SHOAL 207 #A034 | SS207A3400 | G01523 | 177114122200 |
| SHIP SHOAL 207 #A035 ST1 | SS207A3501 | G01523 | 177114133301 |
| SHIP SHOAL 207 #A036 | SS207A3600 | G01523 | 177114137700 |
| SHIP SHOAL 207 #D002 | SS207D0200 | G01523 | 177114025400 |
| SHIP SHOAL 207 #D007 | SS207D0700 | G01523 | 177114030300 |
| SHIP SHOAL 207 #D008 | SS207D0800 | G01523 | 177114032300 |
| SHIP SHOAL 207 #D009 | SS207D0900 | G01523 | 177114116400 |
| SHIP SHOAL 207 #D010 ST1 | SS207D1001 | G01523 | 177114116501 |
| SHIP SHOAL 214 #004 | SS21404 | 00828 | 177110060600 |
| SHIP SHOAL 214 #E003 | SS214E03 | 00828 | 177110071100 |
| SHIP SHOAL 214 #E004 | SS214E04 | 00828 | 177110073500 |
| SHIP SHOAL 214 #E007 | SS214E07 | 00828 | 177110070200 |
| SHIP SHOAL 214 #E014 | SS214E14 | 00828 | 177110076400 |
| SHIP SHOAL 214 #F003 | SS214F03 | 00828 | 177110069900 |
| SHIP SHOAL 214 #F005 | SS214F05 | 00828 | 177110073600 |
| SHIP SHOAL 214 #F006 | SS214F06 | 00828 | 177110075600 |
| SHIP SHOAL 214 #F007 | SS214F07 | 00828 | 177110075801 |
| SHIP SHOAL 214 #F008 | SS214F08 | 00828 | 177110077200 |
| SHIP SHOAL 214 #F009 | SS214F09 | 00828 | 177110078000 |
| SHIP SHOAL 214 #F014 | SS214F14 | 00828 | 177110078600 |
| SHIP SHOAL 214 #H004 | SS214H04 | 00828 | 177112017100 |
| SHIP SHOAL 214 #H007 | SS214H07 | 00828 | 177114000900 |
| SHIP SHOAL 214 #H008 | SS214H08 | 00828 | 177114002100 |
| SHIP SHOAL 214 #H009 | SS214H09 | 00828 | 177114002600 |
| SHIP SHOAL 214 #H011 | SS214H11 | 00828 | 177114003500 |
| SHIP SHOAL 214 #H012 | SS214H12 | 00828 | 177114004000 |
| SHIP SHOAL 214 #K001 | SS214K01 | 00828 | 177114053900 |
| SHIP SHOAL 214 #K002 | SS214K02 | 00828 | 177114054000 |
| SHIP SHOAL 214 #K008 | SS214K08 | 00828 | 177114145700 |
| SHIP SHOAL 214 #K010 | SS214K10 | 00828 | 177114144300 |
| SHIP SHOAL 214 #K011 | SS214K11 | 00828 | 177114147300 |
| SHIP SHOAL 214 #L001 | SS214L01 | 00828 | 177114066500 |
| SHIP SHOAL 214 #L002 | SS214L02 | 00828 | 177114068100 |
| SHIP SHOAL 214 #L003 | SS214L03 | 00828 | 177114068300 |
| SHIP SHOAL 214 #L004 | SS214L04 | 00828 | 177114070100 |
| SHIP SHOAL 214 #L005 | SS214L05 | 00828 | 177114070200 |
| SHIP SHOAL 214 #L006 | SS214L06 | 00828 | 177114074601 |
| SHIP SHOAL 214 #L007 | SS214L07 | 00828 | 177114075500 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 214 #L008 | SS214L08 | 00828 | 177114076101 |
| SHIP SHOAL 216 #C004 ST1 | SS216C0401 | G01524 | 177112014901 |
| SHIP SHOAL 216 #C005A | SS216C05A0 | G01524 | 177112017400 |
| SHIP SHOAL 216 #C007 ST1 | SS216C0701 | G01524 | 177114001201 |
| SHIP SHOAL 216 #C009 ST1 | SS216C0901 | G01524 | 177114003801 |
| SHIP SHOAL 216 #C010 | SS216C1000 | G01524 | 177114004900 |
| SHIP SHOAL 216 #C012C | SS216C12C0 | G01524 | 177114006700 |
| SHIP SHOAL 216 #C013 | SS216C1300 | G01524 | 177114007700 |
| SHIP SHOAL 216 #C015 | SS216C1500 | G01524 | 177114009000 |
| SHIP SHOAL 216 #C016 | SS216C1601 | G01524 | 177114000101 |
| SHIP SHOAL 216 #C017A | SS216C17A1 | G01524 | 177114003001 |
| SHIP SHOAL 216 #C019 | SS216C1900 | G01524 | 177114031900 |
| SHIP SHOAL 216 #C023 | SS216C2300 | G01524 | 177114134600 |
| SHIP SHOAL 216 #C024 ST2 | SS216C2402 | G01524 | 177114135102 |
| SHIP SHOAL 232 #B012 | SS233B12 | G15293 | 1771141070 |
| SHIP SHOAL 232 #B02 | SS233002 | G15293 | 1771140371 |
| SHIP SHOAL 233 #B001 | SS233B01 | G01528 | 177114028700 |
| SHIP SHOAL 233 #B003 | SS233B03 | G01528 | 177114059800 |
| SHIP SHOAL 233 #B004 | SS233B04 | G01528 | 177114060400 |
| SHIP SHOAL 233 #B006 | SS233B06 | G01528 | 177114063500 |
| SHIP SHOAL 233 #B007 | SS233B07 | G01528 | 177114065400 |
| SHIP SHOAL 233 #B010 | SS233B10 | G01528 | 177114069901 |
| SHIP SHOAL 233 #B011 | SS233B11 | G01528 | 177114073201 |
| SHIP SHOAL 233 #E006 | SS233E06 | G01528 | 177110071900 |
| SHIP SHOAL 233 #H005 | SS233H05 | G01528 | 177112017800 |
| SHIP SHOAL 238 #A001 | SS238A01 | G03169 | 177124023400 |
| SHIP SHOAL 238 #A003 | SS238A03 | G03169 | 177124025701 |
| SHIP SHOAL 238 #A005 | SS238A05 | G03169 | 177124027200 |
| SHIP SHOAL 238 #B005 | SS238B05 | G03169 | 177114061400 |
| SHIP SHOAL 238 #B008 | SS238B08 | G03169 | 177114086600 |
| SHIP SHOAL 238 #C001 ( ORRI) | SS238C01 | G03169 | 177124068100 |
| SHIP SHOAL 238 #C002 | SS238C02 | G03169 | 177124068400 |
| SHIP SHOAL 246 #A001 | SS246A01 | G01027 | 177124005700 |
| SHIP SHOAL 246 #A002 | SS246A02 | G01027 | 177124007400 |
| SHIP SHOAL 246 #A004 | SS246A04 | G01027 | 177124008200 |
| SHIP SHOAL 246 #A005 | SS246A05 | G01027 | 177124008300 |
| SHIP SHOAL 246 #A006 | SS246A06 | G01027 | 177124009000 |
| SHIP SHOAL 246 #A007 | SS246A07 | G01027 | 177124009100 |
| SHIP SHOAL 246 #A009 | SS246A09 | G01027 | 177124010200 |
| SHIP SHOAL 246 #A011 | SS246A11 | G01027 | 177124011500 |
| SHIP SHOAL 246 #A014 | SS246A14 | G01027 | 177124014600 |
| SHIP SHOAL 246 #A019 | SS246A19 | G01027 | 177124016100 |
| SHIP SHOAL 246 #A020 | SS246A20 | G01027 | 177124012901 |
| SHIP SHOAL 246 #J001 | SS246J01 | G01027 | 177124061800 |
| SHIP SHOAL 247 #D003 | SS247D03 | G01028 | 177124013100 |
| SHIP SHOAL 247 #D007 | SS247D07 | G01028 | 177124015600 |
| SHIP SHOAL 247 #D009 | SS247D09 | G01028 | 177124016600 |
| SHIP SHOAL 247 #D012 | SS247D12 | G01028 | 177124017903 |
| SHIP SHOAL 247 #F002 | SS247F02 | G01028 | 177124019702 |
| SHIP SHOAL 247 #F010 | SS247F10 | G01028 | 177124022400 |
| SHIP SHOAL 247 #F014 | SS247F14 | G01028 | 177124022301 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 247 #F017 | SS247F17 | G01028 | 177124022901 |
| SHIP SHOAL 247 #F018 | SS247F18 | G01028 | 177124023201 |
| SHIP SHOAL 247 #F019 | SS247F19 | G01028 | 177124052500 |
| SHIP SHOAL 248 #D006 | SS248D06 | G01029 | 177124015000 |
| SHIP SHOAL 248 #D015 | SS248D15 | G01029 | 177124020600 |
| SHIP SHOAL 248 #D016 | SS248D16 | G01029 | 177124021000 |
| SHIP SHOAL 248 #D018 | SS248D18 | G01029 | 177124021100 |
| SHIP SHOAL 248 #D020 | SS248D2000 | G01029 | 177124022000 |
| SHIP SHOAL 248 #F008 | SS248F08 | G01029 | 177124022100 |
| SHIP SHOAL 248 #G001 | SS248G01 | G01029 | 177124049500 |
| SHIP SHOAL 248 #G002 | SS248G02 | G01029 | 177124053000 |
| SHIP SHOAL 248 #G003 | SS248G03 | G01029 | 177124053300 |
| SHIP SHOAL 249 #006 | SS24906 | G01030 | 177124062200 |
| SHIP SHOAL 249 #D002 | SS249D02 | G01030 | 177124012000 |
| SHIP SHOAL 249 #D004 | SS249D04 | G01030 | 177124017100 |
| SHIP SHOAL 249 #D005 | SS249D05 | G01030 | 177124014200 |
| SHIP SHOAL 249 #D008 | SS249D08 | G01030 | 177124015900 |
| SHIP SHOAL 249 #D011 | SS249D11 | G01030 | 177124018500 |
| SHIP SHOAL 249 #D014 | SS249D14 | G01030 | 177124019200 |
| SHIP SHOAL 249 #D017 | SS249D1700 | G01030 | 177124020800 |
| SHIP SHOAL 249 #D019 | SS249D19 | G01030 | 177124021500 |
| SHIP SHOAL 252 #C004 | SS252C04 | G01529 | 177122001500 |
| SHIP SHOAL 252 #C005 | SS252C05 | G01529 | 177122002000 |
| SHIP SHOAL 252 #C009 | SS252C09 | G01529 | 177124029401 |
| SHIP SHOAL 252 #C012 | SS252C12 | G01529 | 177124047300 |
| SHIP SHOAL 252 #F001 | SS252F01 | G01529 | 177124052000 |
| SHIP SHOAL 252 #F003 | SS252F03 | G01529 | 177124052200 |
| SHIP SHOAL 252 #F004 | SS252F04 | G01529 | 177124067400 |
| SHIP SHOAL 253 #C001 | SS253C01 | G01031 | 177122000100 |
| SHIP SHOAL 253 #C002 | SS253C02 | G01031 | 177122006700 |
| SHIP SHOAL 253 #C003 | SS253C03 | G01031 | 177122001400 |
| SHIP SHOAL 253 #C006 | SS253C06 | G01031 | 177122002100 |
| SHIP SHOAL 253 #C007 | SS253C07 | G01031 | 177122002300 |
| SHIP SHOAL 253 #C008 | SS253C08 | G01031 | 177124030000 |
| SHIP SHOAL 253 #C010 | SS253C10 | G01031 | 177124029300 |
| SHIP SHOAL 253 #C011 | SS253C11 | G01031 | 177124030900 |
| SHIP SHOAL 253 #D001 | SS253D01 | G01031 | 177122004200 |
| SHIP SHOAL 253 #D003 | SS253D03 | G01031 | 177124000400 |
| SHIP SHOAL 253 #D004 | SS253D04 | G01031 | 177124001100 |
| SHIP SHOAL 253 #D005 | SS253D05 | G01031 | 177124001200 |
| SHIP SHOAL 253 #D006 | SS253D06 | G01031 | 177124001300 |
| SHIP SHOAL 253 #D007 | SS253D07 | G01031 | 177124001401 |
| SHIP SHOAL 253 #D008 | SS253D08 | G01031 | 177124001600 |
| SHIP SHOAL 253 #D009 | SS253D09 | G01031 | 177124001800 |
| SHIP SHOAL 253 #D010 | SS253D10 | G01031 | 177124002001 |
| SHIP SHOAL 253 #D013 | SS253D13 | G01031 | 177124002600 |
| SHIP SHOAL 253 #D014 | SS253D14 | G01031 | 177124002701 |
| SHIP SHOAL 253 #E001 | SS253E01 | G01031 | 177124024200 |
| SHIP SHOAL 253 #E002 | SS253E02 | G01031 | 177124024600 |
| SHIP SHOAL 253 #E003 | SS253E03 | G01031 | 177124025301 |
| SHIP SHOAL 253 #E004 | SS253E04 | G01031 | 177124025400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 253 #E005 | SS253E05 | G01031 | 177124025500 |
| SHIP SHOAL 253 #E006 | SS253E06 | G01031 | 177124026600 |
| SHIP SHOAL 253 #E007 | SS253E07 | G01031 | 177124026800 |
| SHIP SHOAL 253 #E008 | SS253E08 | G01031 | 177124027600 |
| SHIP SHOAL 253 #E009 | SS253E09 | G01031 | 177124027701 |
| SHIP SHOAL 253 #E010 | SS253E10 | G01031 | 177124027800 |
| SHIP SHOAL 253 #E011 | SS253E11 | G01031 | 177124028200 |
| SHIP SHOAL 253 #E012 | SS253E12 | G01031 | 177124028400 |
| SHIP SHOAL 253 #E013 | SS253E13 | G01031 | 177124037500 |
| SHIP SHOAL 253 #E014 | SS253E14 | G01031 | 177124042100 |
| SHIP SHOAL 253 #E015 | SS253E15 | G01031 | 177124044401 |
| SHIP SHOAL 253 #F002 | SS253F02 | G01031 | 177124052100 |
| SHIP SHOAL 300 #A001 | SS300A01 | G07760 | 177124037401 |
| SHIP SHOAL 300 #A003 | SS300A03 | G07760 | 177124041602 |
| SHIP SHOAL 300 #A004 | SS300A04 | G07760 | 177124043100 |
| SHIP SHOAL 300 #A005 | SS300A05 | G07760 | 177124053600 |
| SHIP SHOAL 300 #A006 | SS300A06 | G07760 | 177124053700 |
| SHIP SHOAL 300 #B001 | SS300B01 | G07760 | 177124044100 |
| SHIP SHOAL 300 #B002 | SS300B02 | G07760 | 177124044800 |
| SHIP SHOAL 300 #B003 | SS300B03 | G07760 | 177124045600 |
| SHIP SHOAL 300 #B004 | SS300B04 | G07760 | 177124045700 |
| SHIP SHOAL 300 #B005 | SS300B05 | G07760 | 177124045900 |
| SHIP SHOAL 315 #A001 | SS315A01 | G09631 | 177124046901 |
| SHIP SHOAL 315 #A003 | SS315A03 | G09631 | 177124047402 |
| SHIP SHOAL206#E001(SS207E1 | SS207E0100 | G01523 | 177114115500 |
| SOUTH MARSH IS 066 #C001 | SM066C0100 | G01198 | 177070041200 |
| SOUTH MARSH IS 066 #C002 | SM066C0200 | G01198 | 177070049000 |
| SOUTH MARSH IS 066 #C003 | SM066C0300 | G01198 | 177074005800 |
| SOUTH MARSH IS 066 #C004 | SM066C0400 | G01198 | 177070050000 |
| SOUTH MARSH IS 066 #C005 | SM066C0500 | G01198 | 177070050700 |
| SOUTH MARSH IS 066 #C006 | SM066C0600 | G01198 | 177072018700 |
| SOUTH MARSH IS 066 #C007 | SM066C0700 | G01198 | 177070052800 |
| SOUTH MARSH IS 066 #C009B | SM066C09B0 | G01198 | 177072001200 |
| SOUTH MARSH IS 066 #C011 | SM066C1100 | G01198 | 177074072900 |
| SOUTH MARSH IS 066 #C012 | SM066C1200 | G01198 | 177074073500 |
| SOUTH MARSH IS 066 #D001 | SM066D0100 | G01198 | 177074025400 |
| SOUTH MARSH IS 066 #D003 | SM066D0300 | G01198 | 177074029000 |
| SOUTH MARSH IS 066 #D004 | SM066D0400 | G01198 | 177074032000 |
| SOUTH MARSH IS 066 #D005 | SM066D0500 | G01198 | 177074032600 |
| SOUTH MARSH IS 066 #D006 ST | SM066D0601 | G01198 | 177074031201 |
| SOUTH MARSH IS 066 #D007 ST1BP | SM066D0701 | G01198 | 177074027401 |
| SOUTH MARSH IS 087 #A002 | SM087A02 | G24870 | 177084092201 |
| SOUTH MARSH IS 087 #A004 | SM087A04 | G24870 | 177084093704 |
| SOUTH MARSH IS 087 #A005 | SM087A05 | G24870 | 177084093802 |
| SOUTH MARSH IS 087 #I002 | SM087I02 | G24870 | 177064097900 |
| SOUTH MARSH IS 102 #A001 | SM102A01 | G24872 | 177084091200 |
| SOUTH MARSH IS 102 #A006 | SM102A06 | G24872 | 177084094101 |
| SOUTH MARSH IS 132 #B002 | SM132B0200 | G02282 | 177084031800 |
| SOUTH MARSH IS 132 #B003 ST1 | SM132B0301 | G02282 | 177084031601 |
| SOUTH MARSH IS 132 #B004 | SM132B0400 | G02282 | 177084033000 |
| SOUTH MARSH IS 132 #B005 | SM132B0500 | G02282 | 177084033500 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 132 #B006 | SM132B0600 | G02282 | 177084033900 |
| SOUTH MARSH IS 132 #B007 | SM132B0700 | G02282 | 177084034100 |
| SOUTH MARSH IS 132 #B008 | SM132B0800 | G02282 | 177084035500 |
| SOUTH MARSH IS 132 #B009 | SM132B0900 | G02282 | 177084036200 |
| SOUTH MARSH IS 132 #B010 | SM132B1000 | G02282 | 177084036500 |
| SOUTH MARSH IS 132 #B011 | SM132B1100 | G02282 | 177084037800 |
| SOUTH MARSH IS 135 #C003 BP1 | SM135C0301 | G19776 | 177084089401 |
| SOUTH MARSH IS 136 #A004 | SM136A0400 | G02588 | 177084021900 |
| SOUTH MARSH IS 136 #A008 | SM136A08 | G02588 | 177084032401 |
| SOUTH MARSH IS 136 #A010 | SM136A1000 | G02588 | 177084035700 |
| SOUTH MARSH IS 136 #A015 | SM136A1500 | G02588 | 177084071200 |
| SOUTH MARSH IS 136 #C007 | SM136C0700 | G02588 | 177084091900 |
| SOUTH MARSH IS 137 #A001 | SM137A0100 | G02589 | 177084007700 |
| SOUTH MARSH IS 137 #A003 | SM137A0300 | G02589 | 177084020400 |
| SOUTH MARSH IS 137 #A005 | SM137A0500 | G02589 | 177084024100 |
| SOUTH MARSH IS 137 #A009 | SM137A0900 | G02589 | 177084034600 |
| SOUTH MARSH IS 137 #A011 ST1 | SM137A1101 | G02589 | 177084030201 |
| SOUTH MARSH IS 137 #A012 | SM137A1200 | G02589 | 177084040400 |
| SOUTH MARSH IS 137 #A013 | SM137A1300 | G02589 | 177084042900 |
| SOUTH MARSH IS 137 #A014 | SM137A1400 | G02589 | 177084045000 |
| SOUTH MARSH IS 137 #A018 | SM137A1800 | G02589 | 177084072800 |
| SOUTH MARSH IS 139 #B001 | SM139B01 | G21106 | 177084092300 |
| SOUTH MARSH IS 139 #B002 | SM139B02 | G21106 | 177084093501 |
| SOUTH MARSH IS 142 #A001 | SM142A01 | G01216 | 177084014100 |
| SOUTH MARSH IS 142 #A002 | SM142A02 | G01216 | 177084014800 |
| SOUTH MARSH IS 142 #A003 | SM142A03 | G01216 | 177084016500 |
| SOUTH MARSH IS 142 #A004 | SM142A04 | G01216 | 177084017900 |
| SOUTH MARSH IS 142 #A005 | SM142A05 | G01216 | 177084019200 |
| SOUTH MARSH IS 142 #A006 | SM142A06 | G01216 | 177084020300 |
| SOUTH MARSH IS 142 #A007 | SM142A07 | G01216 | 177084021000 |
| SOUTH MARSH IS 142 #A008 | SM143A08 | G01216 | 177084023000 |
| SOUTH MARSH IS 142 #A009 | SM142A09 | G01216 | 177084026300 |
| SOUTH MARSH IS 142 #A010 | SM142A10 | G01216 | 177084070000 |
| SOUTH MARSH IS 142 #A011 | SM142A11 | G01216 | 177084091100 |
| SOUTH MARSH IS 142 #C001 | SM142C01 | G01216 | 177084082900 |
| SOUTH MARSH IS 142 #C002 | SM142C02 | G01216 | 177084084201 |
| SOUTH MARSH IS 142 #C003 | SM142C03 | G01216 | 177084085000 |
| SOUTH MARSH IS 142 #C004 | SM142C04 | G01216 | 177084085400 |
| SOUTH MARSH IS 142 #C005 | SM142C05 | G01216 | 177084091301 |
| SOUTH MARSH IS 146 #A008 | SM146A08 | G09546 | 177084077102 |
| SOUTH MARSH IS 150 #C006 BP2 | SM150C0600 | G16325 | 177084091802 |
| SOUTH MARSH IS 150 #D003 | SM150D0301 | G16325 | 177084096401 |
| SOUTH MARSH IS 268 #A002C | SM268A02C0 | G02310 | 177074007600 |
| SOUTH MARSH IS 268 #A007A | SM268A07A0 | G02310 | 177074013600 |
| SOUTH MARSH IS 268 #A017B | SM268A17B0 | G02310 | 177074016800 |
| SOUTH MARSH IS 268 #D001 | SM268D0100 | G02310 | 177074020600 |
| SOUTH MARSH IS 268 #D003D | SM268D03D0 | G02310 | 177074021600 |
| SOUTH MARSH IS 268 #D004 | SM268D0400 | G02310 | 177074022500 |
| SOUTH MARSH IS 268 #D006 | SM268D0600 | G02310 | 177074024700 |
| SOUTH MARSH IS 268 #D007 | SM268D0700 | G02310 | 177074025700 |
| SOUTH MARSH IS 268 #D012 | SM268D1200 | G02310 | 177074028700 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 268 #D016D | SM268D16D1 | G02310 | 177074029901 |
| SOUTH MARSH IS 269 #A021B | SM269A21B0 | G02311 | 177074018100 |
| SOUTH MARSH IS 269 #B002 | SM269B0200 | G02311 | 177074008100 |
| SOUTH MARSH IS 269 #B017 ST1 | SM269B1701 | G02311 | 177074075701 |
| SOUTH MARSH IS 269 #B019 BP1 | SM269B1901 | G02311 | 177074088501 |
| SOUTH MARSH IS 269 #F001 ST1 | SM269F0101 | G02311 | 177074080401 |
| SOUTH MARSH IS 280 #G001 | SM280G0100 | G14456 | 177074071400 |
| SOUTH MARSH IS 280 #G002 | SM280G0200 | G14456 | 177074080700 |
| SOUTH MARSH IS 280 #H001 ST1 | SM280H0102 | G14456 | 177074081802 |
| SOUTH MARSH IS 280 #H002 STB | SM280H0203 | G14456 | 177074082303 |
| SOUTH MARSH IS 281 #C001 | SM281C0100 | G02600 | 177074012500 |
| SOUTH MARSH IS 281 #C003A | SM281C03A0 | G02600 | 177074013900 |
| SOUTH MARSH IS 281 #C005A | SM281C05A0 | G02600 | 177074015300 |
| SOUTH MARSH IS 281 #C006 | SM281C0600 | G02600 | 177074015800 |
| SOUTH MARSH IS 281 #C008 ST1 | SM281C0801 | G02600 | 177074017701 |
| SOUTH MARSH IS 281 #C010 ST | SM281C1001 | G02600 | 177074020701 |
| SOUTH MARSH IS 281 #C011 ST1 | SM281C1101 | G02600 | 177074022401 |
| SOUTH MARSH IS 281 #C012A | SM281C12A0 | G02600 | 177074024400 |
| SOUTH MARSH IS 281 #C014 ST | SM281C1401 | G02600 | 177074026901 |
| SOUTH MARSH IS 281 #C016C | SM281C16C0 | G02600 | 177074029600 |
| SOUTH MARSH IS 281 #C017 | SM281C1700 | G02600 | 177074030500 |
| SOUTH MARSH IS 281 #C019B | SM281C19B0 | G02600 | 177074034400 |
| SOUTH MARSH IS 281 #C020 ST1 | SM281C2001 | G02600 | 177074034901 |
| SOUTH MARSH IS 281 #C021B | SM281C21B0 | G02600 | 177074035500 |
| SOUTH MARSH IS 281 #C023 ST2 | SM281C2302 | G02600 | 177074036802 |
| SOUTH MARSH IS 281 #C024 | SM281C2400 | G02600 | 177074037300 |
| SOUTH MARSH IS 281 #C025 | SM281C2500 | G02600 | 177074083500 |
| SOUTH MARSH IS 281 #C026 | SM281C2600 | G02600 | 177074083700 |
| SOUTH MARSH IS 281 #C027 | SM281C2700 | G02600 | 177074085200 |
| SOUTH MARSH IS 281 #C028 BP2 | SM281C2802 | G02600 | 177074089402 |
| SOUTH MARSH IS 281 #D002 | SM281D0200 | G02600 | 177074021100 |
| SOUTH MARSH IS 281 #D009 | SM281D0900 | G02600 | 177074027100 |
| SOUTH MARSH IS 281 #D010A | SM281D10A0 | G02600 | 177074027500 |
| SOUTH MARSH IS 281 #D011 | SM281D1100 | G02600 | 177074028000 |
| SOUTH MARSH IS 281 #D013 | SM281D1300 | G02600 | 177074029100 |
| SOUTH MARSH IS 281 #D014A | SM281D14A0 | G02600 | 177074029700 |
| SOUTH MARSH IS 281 #D05A | SM281D05A0 | G02600 | 177074023200 |
| SOUTH MARSH IS 281 #D08A | SM281D08A0 | G02600 | 177074026600 |
| SOUTH MARSH IS 281 #E001D | SM281E01D0 | G02600 | 177074018500 |
| SOUTH MARSH IS 281 #E002A | SM281E02A0 | G02600 | 177074024600 |
| SOUTH MARSH IS 281 #E003 | SM281E0300 | G02600 | 177074027800 |
| SOUTH MARSH IS 281 #E004 | SM281E0400 | G02600 | 177074028500 |
| SOUTH MARSH IS 281 #E005A | SM281E05A0 | G02600 | 177074029300 |
| SOUTH MARSH IS 281 #E006 | SM281E0601 | G02600 | 177074030101 |
| SOUTH MARSH IS 281 #E007 | SM281E0700 | G02600 | 177074031600 |
| SOUTH MARSH IS 281 #E008A | SM281E08A1 | G02600 | 177074033101 |
| SOUTH MARSH IS 281 #E009A | SM281E09A0 | G02600 | 177074033800 |
| SOUTH MARSH IS 281 #E010A | SM281E10A0 | G02600 | 177074034800 |
| SOUTH MARSH IS 281 #E011 ST | SM281E1101 | G02600 | 177074035601 |
| SOUTH MARSH IS 281 #E012 | SM281E1200 | G02600 | 177074036000 |
| SOUTH MARSH IS 281 #E013 | SM281E1300 | G02600 | 177074036600 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 281 #E014 | SM281E1400 | G02600 | 177074038600 |
| SOUTH MARSH IS 281 #I001 | SM281I0101 | G02600 | 177074082601 |
| SOUTH MARSH IS 281 #I002 ST1 | SM281I0201 | G02600 | 177074082701 |
| SOUTH MARSH IS 281 #I003 | SM281I0300 | G02600 | 177074082800 |
| SOUTH PASS 017 #A023 | SP017A23 | G02938 | 177212022601 |
| SOUTH PASS 017 #D006 | SP017D06 | G02938 | 177214012901 |
| SOUTH PASS 017 #D009 | SP017D09 | G02938 | 177214013303 |
| SOUTH PASS 017 #D029 | SP017D29 | G02938 | 177214012203 |
| SOUTH PASS 017 #D032 | SP017D32 | G02938 | 177214030101 |
| SOUTH PASS 017 #E004 | SP017E04 | G02938 | 177214020300 |
| SOUTH PASS 017 #E006 | SP017E06 | G02938 | 177214020101 |
| SOUTH PASS 017 #G016 | SP017G16 | G02938 | 177214035501 |
| SOUTH PASS 017 #G026 | SP017G26 | G02938 | 177214037203 |
| SOUTH PASS 017 #G029 | SP017G29 | G02938 | 177214037504 |
| SOUTH PASS 037 #003 | SP03703 | 00697 | 177214045700 |
| SOUTH PASS 042 SWD 1 | SL301101 | 03011 | UNKNOWN |
| SOUTH PASS 059 #A018 | SP059A18 | G01608 | 177234015204 |
| SOUTH PASS 059 #C007 | SP059C07 | G02943 | 177212021402 |
| SOUTH PASS 059 #C008 | SP059C08 | G01608 | 177212022502 |
| SOUTH PASS 059 #C017 | SP059C17 | G02943 | 177212022802 |
| SOUTH PASS 059 #C018 | SP059C18 | G02943 | 177212024601 |
| SOUTH PASS 059 #C019 | SP059C19 | G01608 | 177214006906 |
| SOUTH PASS 059 #C020 | SP059C20 | G02943 | 177214007004 |
| SOUTH PASS 059 #C022 | SP059C22 | G02943 | 177214009002 |
| SOUTH PASS 059 #C026 | SP059C26 | G02943 | 177214010400 |
| SOUTH PASS 059 #C027 | SP059C27 | G02943 | 177214011302 |
| SOUTH PASS 059 #C030 | SP059C30 | G01608 | 177214005703 |
| SOUTH PASS 059 #C037 | SP059C37 | G02942 | 177212022701 |
| SOUTH PASS 059 #C039 | SP059C39 | G02943 | 177214006201 |
| SOUTH PASS 059 #C040 | SP059C40 | G01608 | 177214032304 |
| SOUTH PASS 059 #C041 | SP059C41 | G02942 | 177214032602 |
| SOUTH PASS 059 #C042 | SP059C42 | G02943 | 177214039603 |
| SOUTH PASS 059 #D023 | SP059D23 | G02942 | 177214017802 |
| SOUTH PASS 059 #D025 | SP059D25 | G02943 | 177214018403 |
| SOUTH PASS 059 #D026 | SP059D26 | G02942 | 177214019302 |
| SOUTH PASS 059 #D027 | SP059D27 | G02942 | 177214020500 |
| SOUTH PASS 059 #D033 | SP059D33 | G02942 | 177214031102 |
| SOUTH PASS 059 #D034 | SP059D34 | G02943 | 177214030901 |
| SOUTH PASS 059 #G002 | SP059G02 | G02943 | 177214033500 |
| SOUTH PASS 059 #G005 | SP059G05 | G02943 | 177214034000 |
| SOUTH PASS 059 #G012 | SP059G12 | G02943 | 177214035100 |
| SOUTH PASS 059 #G018 | SP059G18 | G02943 | 177214035601 |
| SOUTH PASS 059 #G020 | SP059G20 | G02943 | 177214036101 |
| SOUTH PASS 060 #A003 | SP060A03 | G02137 | 177214001501 |
| SOUTH PASS 060 #A004 | SP060A04 | G02137 | 177214001601 |
| SOUTH PASS 060 #A005 | SP060A05 | G02137 | 177212012400 |
| SOUTH PASS 060 #A006 | SP060A06 | G02137 | 177214001801 |
| SOUTH PASS 060 #A007 | SP060A07 | G02137 | 177212012700 |
| SOUTH PASS 060 #A009 | SP060A09 | G02137 | 177212014702 |
| SOUTH PASS 060 #A010 | SP060A10 | G02137 | 177214002902 |
| SOUTH PASS 060 #A012 | SP060A12 | G02137 | 177212017600 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 060 #A013 | SP060A13 | G01608 | 177214004000 |
| SOUTH PASS 060 #A017 | SP060A17 | G01608 | 177214004901 |
| SOUTH PASS 060 #A018 | SP060A18 | G02137 | 177212020600 |
| SOUTH PASS 060 #A019 | SP060A19 | G02137 | 177212020802 |
| SOUTH PASS 060 #A021 | SP060A21 | G02137 | 177212022201 |
| SOUTH PASS 060 #A025 | SP060A25 | G02938 | 177212024501 |
| SOUTH PASS 060 #A028 | SP060A28 | G02137 | 177212025003 |
| SOUTH PASS 060 #A029 | SP060A29 | G01608 | 177214008101 |
| SOUTH PASS 060 #A031 | SP060A31 | G01608 | 177214007106 |
| SOUTH PASS 060 #A032 | SP060A32 | G01608 | 177212018702 |
| SOUTH PASS 060 #A033 | SP060A33 | G02137 | 177214001303 |
| SOUTH PASS 060 #A034 | SP060A34 | G01608 | 177212017501 |
| SOUTH PASS 060 #A035 | SP060A35 | G02137 | 177212019302 |
| SOUTH PASS 060 #A036 | SP060A36 | G01608 | 177214001202 |
| SOUTH PASS 060 #A037 | SP060A37 | G02137 | 177212013701 |
| SOUTH PASS 060 #B001 | SP060B01 | G01608 | 177214002001 |
| SOUTH PASS 060 #B003 | SP060B03 | G01608 | 177214002302 |
| SOUTH PASS 060 #B004 | SP060B04 | G02137 | 177214002402 |
| SOUTH PASS 060 #B006 | SP060B06 | G01608 | 177214003001 |
| SOUTH PASS 060 #B007 | SP060B07 | G01608 | 177214003601 |
| SOUTH PASS 060 #B008 | SP060B08 | G01608 | 177214003701 |
| SOUTH PASS 060 #B012 | SP060B12 | G01608 | 177214004202 |
| SOUTH PASS 060 #B013 | SP060B13 | G01608 | 177214003904 |
| SOUTH PASS 060 #B014 | SP060B14 | G01608 | 177214004403 |
| SOUTH PASS 060 #B015 | SP060B15 | G01608 | 177214004502 |
| SOUTH PASS 060 #B017 | SP060B17 | G01608 | 177214004703 |
| SOUTH PASS 060 #B020 | SP060B20 | G01608 | 177214005101 |
| SOUTH PASS 060 #B021 | SP060B21 | G01608 | 177214002502 |
| SOUTH PASS 060 #B022 | SP060B22 | G01608 | 177214004106 |
| SOUTH PASS 060 #B026 | SP060B26 | G01608 | 177214005003 |
| SOUTH PASS 060 #C006 | SP060C06 | G02137 | 177212021100 |
| SOUTH PASS 060 #C023 | SP060C23 | G02137 | 177214009200 |
| SOUTH PASS 060 #C031 | SP060C31 | G02137 | 177214011806 |
| SOUTH PASS 060 #C038 | SP060C38 | G01608 | 177214005502 |
| SOUTH PASS 060 #D002 | SP060D02 | G02137 | 177214011601 |
| SOUTH PASS 060 #D010 | SP060D10 | G02137 | 177214013902 |
| SOUTH PASS 060 #D012 | SP060D12 | G02137 | 177214014301 |
| SOUTH PASS 060 #D014 | SP060D14 | G01608 | 177214014401 |
| SOUTH PASS 060 #D015 | SP060D15 | G01608 | 177214015102 |
| SOUTH PASS 060 #D016 | SP060D16 | G02137 | 177214016101 |
| SOUTH PASS 060 #D017 | SP060D17 | G02137 | 177214016202 |
| SOUTH PASS 060 #D018 | SP060D18 | G02137 | 177214016501 |
| SOUTH PASS 060 #D021 | SP060D21 | G02137 | 177214016703 |
| SOUTH PASS 060 #D022 | SP060D22 | G02137 | 177214015802 |
| SOUTH PASS 060 #D024 | SP060D24 | G02137 | 177214018200 |
| SOUTH PASS 060 #D025 | SP060D25 | G02137 | 177214038901 |
| SOUTH PASS 060 #D031 | SP060D31 | G02137 | 177214028901 |
| SOUTH PASS 060 #D035 | SP060D35 | G02137 | 177214022703 |
| SOUTH PASS 060 #E001 | SP060E01 | G01608 | 177214019202 |
| SOUTH PASS 060 #E002 | SP060E02 | G01608 | 177214021602 |
| SOUTH PASS 060 #E003 | SP060E03 | G01608 | 177214022201 |

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 060 #E005 | SP060E05 | G01608 | 177214022902 |
| SOUTH PASS 060 #E008 | SP060E08 | G01608 | 177214023900 |
| SOUTH PASS 060 #E009 | SP060E09 | G01608 | 177214024405 |
| SOUTH PASS 060 #E011 | SP060E11 | G01608 | 177214027500 |
| SOUTH PASS 060 #E012 | SP060E12 | G01608 | 177214025100 |
| SOUTH PASS 060 #E013 | SP060E13 | G01608 | 177214025601 |
| SOUTH PASS 060 #E014 | SP060E14 | G01608 | 177214025903 |
| SOUTH PASS 060 #E015 | SP060E15 | G01608 | 177214026300 |
| SOUTH PASS 060 #E016 | SP060E16 | G01608 | 177214026603 |
| SOUTH PASS 060 #E019 | SP060E19 | G01608 | 177214027400 |
| SOUTH PASS 060 #E021 | SP060E21 | G01608 | 177214027802 |
| SOUTH PASS 060 #E022 | SP060E22 | G02137 | 177214028700 |
| SOUTH PASS 060 #E023 | SP060E23 | G01608 | 177214029302 |
| SOUTH PASS 060 #E024 | SP060E24 | G01608 | 177214029403 |
| SOUTH PASS 060 #E025 | SP060E25 | G01608 | 177214031301 |
| SOUTH PASS 060 #E026 | SP060E26 | G01608 | 177214031501 |
| SOUTH PASS 060 #E028 | SP060E28 | G01608 | 177214032201 |
| SOUTH PASS 060 #G001 | SP060G01 | G02137 | 177214032901 |
| SOUTH PASS 060 #G003 | SP060G03 | G02137 | 177214033400 |
| SOUTH PASS 060 #G004 | SP060G04 | G02137 | 177214033700 |
| SOUTH PASS 060 #G006 | SP060G06 | G02137 | 177214033801 |
| SOUTH PASS 060 #G007 | SP060G07 | G01608 | 177214034102 |
| SOUTH PASS 060 #G008 | SP060G08 | G02137 | 177214034200 |
| SOUTH PASS 060 #G009 | SP060G09 | G01608 | 177214034600 |
| SOUTH PASS 060 #G010 | SP060G10 | G02137 | 177214034900 |
| SOUTH PASS 060 #G011 | SP060G11 | G01608 | 177214035000 |
| SOUTH PASS 060 #G013 | SP060G13 | G01608 | 177214034803 |
| SOUTH PASS 060 #G014 | SP060G14 | G02137 | 177214035301 |
| SOUTH PASS 060 #G015 | SP060G15 | G02137 | 177214035404 |
| SOUTH PASS 060 #G017 | SP060G17 | G01608 | 177214035701 |
| SOUTH PASS 060 #G019 | SP060G19 | G02137 | 177214035903 |
| SOUTH PASS 060 #G021 | SP060G21 | G02137 | 177214036201 |
| SOUTH PASS 060 #G022 | SP060G22 | G01608 | 177214036501 |
| SOUTH PASS 060 #G023 | SP060G23 | G01608 | 177214036700 |
| SOUTH PASS 060 #G024 | SP060G24 | G01608 | 177214036900 |
| SOUTH PASS 060 #G025 | SP060G25 | G02137 | 177214037001 |
| SOUTH PASS 060 #G027 | SP060G27 | G01608 | 177214037100 |
| SOUTH PASS 060 #G028 | SP060G28 | G01608 | 177214037301 |
| SOUTH PASS 060 #G031 | SP060G31 | G02137 | 177214038101 |
| SOUTH PASS 060 #G032 | SP060G32 | G02137 | 177214038302 |
| SOUTH PASS 060 #G033 | SP060G33 | G01608 | 177214037700 |
| SOUTH PASS 060 #G034 | SP060G34 | G02137 | 177214038901 |
| SOUTH PASS 060 #G035 | SP060G35 | G02137 | 177214039200 |
| SOUTH PASS 060 #G036 | SP060G36 | G02137 | 177214039301 |
| SOUTH PASS 061 #B018 | SP061B18 | G01609 | 177214004802 |
| SOUTH PASS 061 #E029 | SP061E29 | G01609 | 177214031802 |
| SOUTH PASS 066 #A012 | SP066A1200 | G01611 | 177234011401 |
| SOUTH PASS 066 #A015 | SP066A15 | G01611 | 177234011702 |
| SOUTH PASS 066 #C001 | SP066C0100 | G01611 | 177212019402 |
| SOUTH PASS 066 #C013 | SP066C1300 | G01611 | 177214005803 |
| SOUTH PASS 066 #C021 | SP066C2100 | G01611 | 177214008303 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 066 #C025 | SP066C2500 | G01611 | 177214010301 |
| SOUTH PASS 066 #C029 | SP066C29 | G01611 | 177214012702 |
| SOUTH PASS 066 #C036 | SP066C3600 | G01611 | 177214005305 |
| SOUTH PASS 067 #A001 | SP067A01 | G01612 | 177234010501 |
| SOUTH PASS 067 #A004 | SP067A04 | G01612 | 177234010603 |
| SOUTH PASS 067 #A005 | SP067A05 | G01612 | 177234010702 |
| SOUTH PASS 067 #A008 | SP067A08 | G01612 | 177234010901 |
| SOUTH PASS 067 #A009 | SP067A09 | G01612 | 177234011001 |
| SOUTH PASS 067 #A010 | SP067A10 | G01612 | 177234011100 |
| SOUTH PASS 067 #A011 | SP067A11 | G01612 | 177234011200 |
| SOUTH PASS 067 #A013 | SP067A13 | G01612 | 177234011502 |
| SOUTH PASS 067 #A014 | SP067A14 | G01612 | 177234011601 |
| SOUTH PASS 067 #A016 | SP067A16 | G01612 | 177234015101 |
| SOUTH PASS 067 #A019 | SP067A19 | G01612 | 177234015700 |
| SOUTH PASS 067 #A020 | SP067A20 | G01612 | 177234015301 |
| SOUTH PASS 067 #A021 | SP067A21 | G01612 | 177234015600 |
| SOUTH PASS 067 #A022 | SP067A22 | G01612 | 177234015900 |
| SOUTH PASS 067 #A023 | SP067A23 | G01612 | 177234015801 |
| SOUTH PASS 067 #A024 | SP067A24 | G01612 | 177234016000 |
| SOUTH PASS 067 #A025 | SP067A25 | G01612 | 177234017400 |
| SOUTH PELTO 013 #009 | PL01300900 | G03171 | 177134019701 |
| SOUTH TIMBALIER 195 #B001 | ST195B01 | G03593 | 177154091400 |
| SOUTH TIMBALIER 195 #B002 | ST195B02 | G03593 | 177154092500 |
| SOUTH TIMBALIER 195 #B003 | ST195B03 | G03593 | 177154117901 |
| SOUTH TIMBALIER 315 #A003 | ST315A03 | G23946 | 177164029004 |
| SOUTH TIMBALIER 316 #A001 | ST316A0100 | G22762 | 177164028600 |
| SOUTH TIMBALIER 316 #A002 | ST316A0200 | G22762 | 177164028800 |
| STATE TRACT 773 #L001 (NW/4) | ST773L1N | 111650 | 427023021000 |
| STATE TRACT 773 #L001 (SW/4) | ST773L1S | 136449 | 426023016700 |
| STATE TRACT 773 #L002 | ST773L2 | 115727 | 427023021800 |
| STATE TRACT 773 #L003 | ST773L3 | 114988 | 427023022000 |
| VERMILION 196 #A001 | VR196A01 | G19760 | 177054112300 |
| VERMILION 196 #A002 | VR196A02 | G19760 | 177054116700 |
| VERMILION 196 #A004 | VR196A04 | G19760 | 177054127900 |
| VERMILION 207 #A003 | VR207A03 | G19761 | 177054117600 |
| VERMILION 261 #A001 | VR261A0100 | G03328 | 177064029000 |
| VERMILION 261 #A002 | VR261A0200 | G03328 | 177064033000 |
| VERMILION 261 #A004 | VR261A0402 | G03328 | 177064032902 |
| VERMILION 261 #A005 | VR261A0500 | G03328 | 177064034600 |
| VERMILION 261 #A007 | VR261A0700 | G03328 | 177064035400 |
| VERMILION 261 #A008 | VR261A0800 | G03328 | 177064084900 |
| VERMILION 262 #A006 | VR262A06 | G34257 | 177064035201 |
| VERMILION 272 #A001 | VR272A01 | G23829 | 177064091300 |
| VERMILION 272 #A002 | VR272A02 | G23829 | 177064091400 |
| VERMILION 272 #A003 | VR272A03 | G23829 | 177084093603 |
| VERMILION 272 #A004 | VR272A04 | G23829 | 177064091602 |
| VERMILION 272 #A005 | VR272A05 | G23829 | 177064091700 |
| VERMILION 272 #A006 | VR272A06 | G23829 | 177064096100 |
| VERMILION 272 #A007 | VR272A07 | G23829 | 177064096200 |
| VERMILION 272 #B001 | VR272B01 | G23829 | 177064091800 |
| VERMILION 272 #B002 | VR272B02 | G23829 | 177064092502 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VERMILION 272 #C001 | VR272C01 | G23829 | 177064096001 |
| VERMILION 273 #B003 | VR273B03 | G14412 | 177064092600 |
| VERMILION 279 #A001 | VR279A01 | G11881 | 177064074701 |
| VERMILION 279 #A002 | VR279A02 | G11881 | 177064075701 |
| VERMILION 279 #A003 | VR279A03 | G11881 | 177064076601 |
| VERMILION 279 #A004 | VR279A04 | G11881 | 177064087600 |
| VERMILION 279 #A005 | VR279A05 | G11881 | 177064075802 |
| VERMILION 279 #A006 | VR279A06 | G11881 | 177064079900 |
| VERMILION 279 #A007 | VR279A07 | G11881 | 177064078800 |
| VERMILION 279 #A008 | VR279A08 | G11881 | 177064079600 |
| VERMILION 279 #A009 | VR279A09 | G11881 | 177064080400 |
| VERMILION 279 #A010 | VR279A10 | G11881 | 177064080700 |
| VERMILION 279 #A011 | VR279A11 | G11881 | 177064080802 |
| VERMILION 279 #A012 | VR279A12 | G11881 | 177064087100 |
| VERMILION 313 #B001 | VR313B01 | G01172 | 177064028100 |
| VERMILION 313 #B002 | VR313B02 | G01172 | 177064029700 |
| VERMILION 313 #B003 | VR313B03 | G01172 | 177064030100 |
| VERMILION 313 #B005 | VR313B05 | G01172 | 177064032800 |
| VERMILION 313 #B006 | VR313B06 | G01172 | 177064031900 |
| VERMILION 313 #B007 | VR313B07 | G01172 | 177064032700 |
| VERMILION 313 #B009 | VR313B09 | G01172 | 177064033801 |
| VERMILION 313 #B010 | VR313B10 | G01172 | 177064035700 |
| VERMILION 313 #B011 | VR313B11 | G01172 | 177064037100 |
| VERMILION 313 #B012 | VR313B12 | G01172 | 177064036200 |
| VERMILION 313 #C001 | VR313C01 | G01172 | 177064071700 |
| VERMILION 313 #C002 | VR313C02 | G01172 | 177064071900 |
| VERMILION 313 #C003 | VR313C03 | G01172 | 177064072200 |
| VERMILION 313 #C004 | VR313C04 | G01172 | 177064072000 |
| VERMILION 313 #D001 | VR313D01 | G01172 | 177064090000 |
| VERMILION 313 #D002 | VR313D02 | G01172 | 177064090201 |
| VERMILION 313 #D003 | VR313D03 | G01172 | 177064090300 |
| VERMILION 313 #D004 | VR313D04 | G01172 | 177064090501 |
| VERMILION 313 #D005 | VR313D05 | G01172 | 177064090701 |
| VERMILION 408 #A001 | VR408A01 | G15212 | 177064084401 |
| VERMILION 408 #A002 | VR408A02 | G15212 | 177064086600 |
| VERMILION 408 #A003 | VR408A03 | G15212 | 177064089900 |
| VIOSCA KNOLL 824 #004 | VK82400402 | G15436 | 608164032902 |
| VIOSCA KNOLL 826  A-10 ST1 | VK826A1001 | G06888 | 608164032601 |
| VIOSCA KNOLL 826  A-12 BP1 | VK826A1201 | G06888 | 608164038101 |
| VIOSCA KNOLL 826  A-13 | VK826A13 | G06888 | 608164038200 |
| VIOSCA KNOLL 826  A-14 ST1 | VK826A1401 | G06888 | 608164038001 |
| VIOSCA KNOLL 826  A-3 | VK826A03 | G06888 | 608164022000 |
| VIOSCA KNOLL 826  A-4 | VK826A04 | G06888 | 608164020500 |
| VIOSCA KNOLL 826  A-5 | VK826A05 | G06888 | 608164022100 |
| VIOSCA KNOLL 826  A-6 | VK826A06 | G06888 | 608164022200 |
| VIOSCA KNOLL 826  A-7 | VK826A07 | G06888 | 608164023600 |
| VIOSCA KNOLL 826  A-8 | VK826A08 | G06888 | 608164032400 |
| VIOSCA KNOLL 826  A-9 ST1 | VK826A0901 | G06888 | 608164032501 |
| VIOSCA KNOLL 826 A-1 ST | VK826A0101 | G06888 | 608164019401 |
| VIOSCA KNOLL 826 A-2 | VK826A02 | G06888 | 608164021900 |
| VIOSCA KNOLL 826 SS12 | VK826SS012 | G06888 | 608164035800 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VIOSCA KNOLL 917 SS01 ST2 | VK917SS102 | G15441 | 608164040002 |
| VIOSCA KNOLL 962 SS01 | VK962SS01 | G15445 | 608164039901 |
| WEST CAMERON 009 #001 SL 18287 | SL1828701 | 18287 | 177002025000 |
| WEST CAMERON 065 #B018 | WC065B1800 | G02825 | 177004098900 |
| WEST CAMERON 065 #B019 | WC065B1901 | G02825 | 177004099501 |
| WEST CAMERON 065 #B020 ST2 | WC065B2001 | G02825 | 177004099701 |
| WEST CAMERON 066 #A017 | WC066A1700 | G02826 | 177004100600 |
| WEST CAMERON 066 #B002 | WC066B0200 | G02826 | 177004017600 |
| WEST CAMERON 066 #B003 | WC066B0300 | G02826 | 177004017800 |
| WEST CAMERON 066 #B004 | WC066B0400 | G02826 | 177004018300 |
| WEST CAMERON 066 #B006 | WC066B0600 | G02826 | 177004019100 |
| WEST CAMERON 066 #B007 | WC066B0700 | G02826 | 177004019600 |
| WEST CAMERON 066 #B008D | WC066B08D0 | G02826 | 177004020400 |
| WEST CAMERON 066 #B009 | WC066B0900 | G02826 | 177004020801 |
| WEST CAMERON 066 #B010 | WC066B1000 | G02826 | 177004021400 |
| WEST CAMERON 066 #B012 | WC066B1200 | G02826 | 177004023000 |
| WEST CAMERON 066 #B014 | WC066B1401 | G02826 | 177004022001 |
| WEST CAMERON 066 #B015 | WC066B1500 | G02826 | 177004087600 |
| WEST CAMERON 066 #B016 | WC066B1601 | G02826 | 177004097101 |
| WEST CAMERON 066 #B017 | WC066B1700 | G02826 | 177004098700 |
| WEST CAMERON 066 #E001 | WC066E0100 | G02826 | 177004034700 |
| WEST CAMERON 066 #E002 | WC066E0200 | G02826 | 177004043400 |
| WEST CAMERON 066 #E003 | WC066E0300 | G02826 | 177004047900 |
| WEST CAMERON 066 #E004 | WC066E0400 | G02826 | 177004051500 |
| WEST CAMERON 072 #001 | WC07200100 | G23735 | 177004114900 |
| WEST CAMERON 072 #002 | WC07200200 | G23735 | 177004119400 |
| WEST CAMERON 072 #003 | WC07200301 | G23735 | 177004125001 |
| WEST CAMERON 295 #A001 | WC295A0101 | G24730 | 177014037501 |
| WEST CAMERON 295 #A002 | WC295A0201 | G24730 | 177014039001 |
| WEST CAMERON 485 #A001 | WC485A01 | G02220 | 177024010002 |
| WEST CAMERON 485 #A010 | WC485A10 | G02220 | 177024117800 |
| WEST CAMERON 485 #A011 | WC485A11 | G02220 | 177024118300 |
| WEST CAMERON 485 #B006 | WC485B06 | G02220 | 177024108300 |
| WEST CAMERON 498 #B001 | WC498B01 | G03520 | 177024106500 |
| WEST CAMERON 498 #B002 | WC498B02 | G03520 | 177024106901 |
| WEST CAMERON 498 #B003 | WC498B03 | G03520 | 177024109002 |
| WEST CAMERON 498 #B004 | WC498B04 | G03520 | 177024109400 |
| WEST CAMERON 498 #B005 | WC498B05 | G03520 | 177024116001 |
| WEST CAMERON 498 #B006 | WC498B06 | G03520 | 177024116100 |
| WEST CAMERON 498 #B007 | WC498B07 | G03520 | 177024116200 |
| WEST CAMERON 498 #B008 | WC498B08 | G03520 | 177024118801 |
| WEST CAMERON 498 #B009 | WC498B09 | G03520 | 177024120201 |
| WEST CAMERON 498 #B010 | WC498B10 | G03520 | 177024121000 |
| WEST CAMERON 498 #B011 | WC498B11 | G03520 | 177024131700 |
| WEST CAMERON 507 #A002 | WC507A02 | G02549 | 177024018200 |
| WEST CAMERON 507 #A003 | WC507A03 | G02549 | 177024020101 |
| WEST CAMERON 507 #A004 | WC507A04 | G10594 | 177024023002 |
| WEST CAMERON 507 #A005 | WC507A05 | G02549 | 177024023500 |
| WEST CAMERON 507 #A006 | WC507A06 | G02549 | 177024024902 |
| WEST CAMERON 507 #A007 | WC507A07 | G02549 | 177024094900 |
| WEST CAMERON 507 #A008 | WC507A08 | G02549 | 177024094400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 507 #A009 | WC507A09 | G02549 | 177024094700 |
| WEST CAMERON 507 #B001 | WC507B01 | G02549 | 177024098304 |
| WEST CAMERON 507 #B002 | WC507B02 | G02549 | 177024099001 |
| WEST CAMERON 507 #B003 | WC507B03 | G02549 | 177024100201 |
| WEST CAMERON 507 #B004 | WC507B04 | G02549 | 177024108202 |
| WEST CAMERON 507 #B005 | WC507B05 | G02549 | 177024101200 |
| WEST CAMERON 507 #C001 | WC507C01 | G02549 | 177024130300 |
| WEST CAMERON 67 #D1 | WC067D0100 | G03256 | 177004031600 |
| WEST CAMERON 67 #D10 | - | G03256 | 177004098501 |
| WEST CAMERON 67 #D6 | - | G03256 | 177004040700 |
| WEST CAMERON 67 #D9 | WC067D0900 | G03256 | 177004078600 |
| WEST DELTA 027 #008 | WD02708 | G04473 | 177194065801 |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| BRAZOS A-105 P/F-A | BAA105PFA | G01757 | BAA105 | 87.5% |
| BRAZOS A-105 P/F-B | BAA105PFB | G01757 | BAA105 | 87.5% |
| BRAZOS A-133 P/F-A | BAA133APLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-B | BAA133BPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-C-AUX | BAA133CAUX | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-D | BAA133DPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-E | BAA133EPLT | G02665 | BAA133 | 25.0% |
| EAST BREAKS 159 P/F-A | EB159PFA | G02646 | EB159 | 66.7% |
| EAST BREAKS 160 P/F-A | EB160PFA | G02647 | EB160 | 100.0% |
| EAST BREAKS 165 P/F-A | EB165PFA | G06280 | EB165 | 100.0% |
| EAST CAMERON 330 P/F-B | EC330PFB | G03540 | EC330 | 95.0% |
| EAST CAMERON 332 P/F-A | EC332PFA | G09478 | EC332 | 90.4% |
| EAST CAMERON 349 P/F-A | EC349PFA | G14385 | EC349 | 25.0% |
| EUGENE IS 032 #012 CAS P/F | EI032PF12 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #016 CAS P/F | EI032PF16 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #020 CAS P/F | EI032PF20 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #029 CAS P/F | EI032PF29 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #8 CAS P/F | EI032PF08 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-10 | EI032PF10 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-22 | EI032PF22 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-23 | EI032PF23 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-24 | EI032PF24 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-25 | EI032PF25 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-26 | EI032PF26 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-27 | EI032PF27 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-28 | EI032PF28 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-30 | EI032PF30 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-5 | EI032PF5 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A | EI032PFA | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A-PRD | EI032PFAPR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A-QRT | EI032PFAQR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A-TNK | EI032PFATN | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-E | EI032PFE | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-E-PRD | EI032PFEPR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-CMP | EI032PFFCM | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-PROD | EI032PFFPR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-TANK | EI032PFFTN | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-TRT | EI032PFFTR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-GM-VALVE | EI032PFGMV | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-H | EI032PFH | 00196 | EI032 | 23.7% |
| EUGENE IS 053 P/F-10 | EI5310CAS | 00479 | EI053 | 0.0% |
| EUGENE IS 053 P/F-12 | EI5312CAS | 00479 | EI053 | 0.0% |
| EUGENE IS 053 P/F-8 | EI538CAS | 00479 | EI053 | 11.1% |
| EUGENE IS 053 P/F-9 | EI539PLT | 00479 | EI053 | 11.1% |
| EUGENE IS 053 P/F-B | EI53BPLT | 00479 | EI053 | 11.1% |
| EUGENE IS 053 P/F-C | EI53CPLT | 00479 | EI053 | 5.6% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EUGENE IS 053 P/F-D | EI53DCAS | 00479 | EI053 | 0.0% |
| EUGENE IS 053 P/F-G | EI53GCAS | 00479 | EI053 | 11.1% |
| EUGENE IS 063 P/F-A | EI063PFA | 00425 | EI062 | 140.0% |
| EUGENE IS 063 P/F-B | EI063PFB | 00425 | EI062 | 140.0% |
| EUGENE IS 063 P/F-C-QTR | EI063PFC | 00425 | EI062 | 140.0% |
| EUGENE IS 100 P/F-D-QTR | EI100PFD | 00796 | EI100 | 100.0% |
| EUGENE IS 175 P/F-C-PROD | EI175CPRD | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-D | EI175DPLT | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-F | EI175FPLT | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-H | EI175HCAS | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-I | EI175ICAS | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-J | EI175JPLT | 438 | EI175 | 25.0% |
| EUGENE IS 296 P/F-B | EI296PFB | G01687M | EI 296 | 14.5% |
| EUGENE IS 307 P/F-A | EI307PFA | G02110 | EI307 | 100.0% |
| EUGENE IS 307 P/F-B | EI307PFB | G02110 | EI307 | 100.0% |
| EUGENE IS 312 P/F-D | EI312PFD | G22679 | EI312 | 60.0% |
| EUGENE IS 330 P/F A C S | EI330ACSPF | G02115 | EI330 | 0.0% |
| EUGENE IS 330 P/F-B | EI330BPLT | G02115 | EI330 | 0.0% |
| EUGENE IS 330 P/F-D | EI330DPLT | G02115 | EI330 | 0.0% |
| EUGENE IS 342 P/F-C | EI342CPLT | G02319 | EI342 | 0.0% |
| GALVESTON 210 P/F-1 | GA2101CAS | G25524 | GA210 | 33.3% |
| GALVESTON 210 P/F-2 | GA2102CAS | G25524 | GA210 | 33.3% |
| GALVESTON 210 P/F-B | GA210BPLT | G25524 | GA210 | 33.3% |
| GALVESTON A-155 P/F-A | GAA155PFA | G30654 | GAA155 | 8.1% |
| HIGH ISLAND A-341 P/F-B | HIA341BPLT | G25605 | HIA341 | 40.0% |
| HIGH ISLAND A-376 P/F-A | HIA376APLT | G02754 | HIA376 | 51.2% |
| HIGH ISLAND A-376 P/F-B | HIA376BPLT | G02754 | HIA376 | 51.2% |
| HIGH ISLAND A-376 P/F-C | HIA376CPLT | G02754 | HIA376 | 51.2% |
| HIGH ISLAND A-382 P/F-F | HIA382FPLT | G02757 | HIA382 | 27.6% |
| HIGH ISLAND A-474 P/F-A | HIA474PFA | G02366 | HIA474 | 12.0% |
| HIGH ISLAND A-489 P/F-B | HIA489PFB | G02372 | HIA489 | 12.0% |
| HIGH ISLAND A-550 P/F-A | HIA550PFA | G04081 | HIA550 | 100.0% |
| HIGH ISLAND A-563 P/F-B | HIA563PFB | G02388 | HIA563 | 2.7% |
| HIGH ISLAND A-573 P/F-A | HIA573APLT | G02393 | HIA573 | 27.6% |
| HIGH ISLAND A-573 P/F-B | HIA573BPLT | G02393 | HIA573 | 27.6% |
| HIGH ISLAND A-582 P/F-C | HIA582PFC | G02719 | HIA582 | 3.0% |
| HIGH ISLAND A-582 P/F-D | HIA582PFD | G02719 | HIA582 | 2.6% |
| HIGH ISLAND A-595 P/F-CF | HIA595CFPT | G02721 | HIA595 | 27.6% |
| HIGH ISLAND A-595 P/F-D | HIA595DPLT | G02721 | HIA595 | 27.6% |
| HIGH ISLAND A-596 P/F-E | HIA596EPLT | G02722 | HIA596 | 27.6% |
| MAIN PASS 077 P/F-A | MP077PFA | G04481 | MP077 | 73.8% |
| SHIP SHOAL 149 P/F-C | SS149PFC | 434 | SS149 | 3.0% |
| SHIP SHOAL 169 P/F-BB | SS169PFBB | 00820 | SS169 | 33.3% |
| SHIP SHOAL 169 P/F-C | SS169PFC | 00820 | SS169 | 33.3% |
| SHIP SHOAL 169 P/F-G | SS169PFG | 00820 | SS169 | 33.3% |
| SHIP SHOAL 177 P/F-7 | SS177PF7 | 00590 | SS177 | 25.0% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SHIP SHOAL 177 P/F-A | SS177PFA | 00590 | SS177 | 25.0% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 0.0% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 1.0% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 1.0% |
| SHIP SHOAL 189 P/F-C | SS189PFC | G04232 | SS189 | 0.0% |
| SHIP SHOAL 204 P/F-A | SS204APLT | G01520 | SS204 | 20.9% |
| SHIP SHOAL 204 P/F-A | SS204APLT | G01520 | SS204 | 0.2% |
| SHIP SHOAL 204 P/F-A-GEN | SS204AGEN | G01520 | SS204 | 20.9% |
| SHIP SHOAL 204 P/F-A-GEN | SS204AGEN | G01520 | SS204 | 0.2% |
| SHIP SHOAL 204 P/F-A-PROD | SS204APRD | G01520 | SS204 | 20.9% |
| SHIP SHOAL 204 P/F-A-PROD | SS204APRD | G01520 | SS204 | 0.2% |
| SHIP SHOAL 206 P/F-E | SS206EPLT | G01522 | SS206 | 40.0% |
| SHIP SHOAL 207 P/F-A-CMP | SS207ACOMP | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-CMP | SS207ACOMP | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-A-DRILL | SS207ADRL | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-DRILL | SS207ADRL | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-A-MANTIS | SS207PFAMA | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-MANTIS | SS207PFAMA | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-A-PROD | SS207APRD | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-PROD | SS207APRD | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-D | SS207DPLT | G01523 | SS207 | 47.0% |
| SHIP SHOAL 207 P/F-D | SS207DPLT | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-DWPF | SS207PFDWP | G01523 | SS207 | 19.8% |
| SHIP SHOAL 214 P/F-4 | SS214PF4 | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-E | SS214PFE | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-F | SS214PFF | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-H | SS214PFH | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-K | SS214PFK | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-L | SS214PFL | 00828 | SS214 | 35.5% |
| SHIP SHOAL 216 P/F-C | SS216CPLT | G01524 | SS216 | 5.2% |
| SHIP SHOAL 216 P/F-C | SS216CPLT | G01524 | SS216 | 0.3% |
| SHIP SHOAL 233 P/F-A | SS233PFA | G15293 | SS233 | 33.8% |
| SHIP SHOAL 233 P/F-B | SS233PFB | G01528 | SS233 | 33.8% |
| SHIP SHOAL 238 P/F-A | SS238PFA | G03169 | SS238 | 34.5% |
| SHIP SHOAL 238 P/F-B | SS238PFB | G03169 | SS238 | 34.5% |
| SHIP SHOAL 246 P/F-A | SS246PFA | G01027 | SS246 | 78.7% |
| SHIP SHOAL 246 P/F-E | SS246PFE | G01027 | SS246 | 78.7% |
| SHIP SHOAL 246 P/F-J | SS246PFJ | G01027 | SS246 | 100.0% |
| SHIP SHOAL 247 P/F-F | SS247PFF | G01028 | SS247 | 87.0% |
| SHIP SHOAL 248 P/F-D | SS248PFD | G01029 | SS248 | 83.3% |
| SHIP SHOAL 248 P/F-G | SS248PFG | G01029 | SS248 | 83.3% |
| SHIP SHOAL 253 P/F-C | SS253PFC | G01031 | SS253 | 100.0% |
| SHIP SHOAL 253 P/F-D | SS253PFD | G01031 | SS253 | 100.0% |
| SHIP SHOAL 253 P/F-E | SS253PFE | G01031 | SS253 | 100.0% |
| SHIP SHOAL 253 P/F-F | SS253PFF | G01031 | SS253 | 100.0% |
| SHIP SHOAL 291 P/F-A | SS291PFA | G02923 | SS291 | 100.0% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SHIP SHOAL 300 P/F-A | SS300PFA | G07760 | SS300 | 24.3% |
| SHIP SHOAL 300 P/F-B | SS300PFB | G07760 | SS300 | 21.8% |
| SHIP SHOAL 315 P/F-A | SS315PFA | G09631 | SS315 | 25.0% |
| SOUTH MARSH IS 066 P/F-C | SM66CPLT | G01198 | SM058 | 50.0% |
| SOUTH MARSH IS 066 P/F-D | SM66DPLT | G01198 | SM066 | 50.0% |
| SOUTH MARSH IS 102 P/F-A | SM102PFA | G24872 | SM102 | 100.0% |
| SOUTH MARSH IS 132 P/F-B | SM132BPLT | G02282 | SM132 | 50.0% |
| SOUTH MARSH IS 137 P/F-A | SM137APLT | G02589 | SM137 | 50.0% |
| SOUTH MARSH IS 142 P/F-A | SM142PFA | G01216 | SM142 | 100.0% |
| SOUTH MARSH IS 142 P/F-C | SM142PFC | G01216 | SM142 | 100.0% |
| SOUTH MARSH IS 146 P/F-B | SM146PFB | G09546 | SM146 | 100.0% |
| SOUTH MARSH IS 147 P/F-A | SM147PFA | G06693 | SM147 | 100.0% |
| SOUTH MARSH IS 268 P/F-A-DRL | SM268APLT | G02310 | SM268 | 30.1% |
| SOUTH MARSH IS 268 P/F-A-DRL | SM268APLT | G02310 | SM268 | 0.4% |
| SOUTH MARSH IS 268 P/F-A-PRD | SM268APRD | G02310 | SM268 | 30.1% |
| SOUTH MARSH IS 268 P/F-A-PRD | SM268APRD | G02310 | SM268 | 0.4% |
| SOUTH MARSH IS 268 P/F-D | SM268DPLT | G02310 | SM268 | 30.1% |
| SOUTH MARSH IS 268 P/F-D | SM268DPLT | G02310 | SM268 | 0.4% |
| SOUTH MARSH IS 269 P/F-B | SM269BPLT | G02311 | SM269 | 26.8% |
| SOUTH MARSH IS 269 P/F-B | SM269BPLT | G02311 | SM269 | 0.4% |
| SOUTH MARSH IS 269 P/F-F | SM269FCAS | G02311 | SM269 | 11.9% |
| SOUTH MARSH IS 269 P/F-F | SM269FCAS | G02311 | SM269 | 0.4% |
| SOUTH MARSH IS 280 P/F-G | SM280GPLT | G14456 | SM280 | 0.0% |
| SOUTH MARSH IS 280 P/F-H | SM280HPLT | G14456 | SM280 | 50.0% |
| SOUTH MARSH IS 280 P/F-I | SM280IPLT | G02600 | SM280 | 41.2% |
| SOUTH MARSH IS 280 P/F-I | SM280IPLT | G02600 | SM280 | 0.3% |
| SOUTH MARSH IS 281 P/F-C | SM281PFC | G02600 | SM281 | 31.4% |
| SOUTH MARSH IS 281 P/F-C | SM281PFC | G02600 | SM281 | 0.5% |
| SOUTH MARSH IS 281 P/F-E | SM281EPLT | G02600 | SM281 | 31.4% |
| SOUTH MARSH IS 281 P/F-E | SM281EPLT | G02600 | SM281 | 0.5% |
| SOUTH PASS 060 P/F-A | SP060PFA | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-B | SP060PFB | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-C | SP060PFC | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-D | SP60PFD | G01608 | SP60P | 100.0% |
| SOUTH PASS 060 P/F-E | SP060PFE | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-F | SP060PFF | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-G | SP60PFG | G01608 | SP60P | 100.0% |
| SOUTH PASS 067 P/F-A | SP067PFA | G01612 | SP067 | 100.0% |
| SOUTH PELTO 013 P/F-7 | PL013PF7 | G03171 | PL013 | 2.0% |
| SOUTH PELTO 013 P/F-9 | PL013PF9 | G03171 | PL013 | 2.0% |
| SOUTH PELTO 013 P/F-A | PL013PFA | G03171 | PL013 | 0.0% |
| SOUTH PELTO 013 P/F-B | PL013PFB | G03171 | PL013 | 0.0% |
| SOUTH PELTO 013 P/F-S | PL013PFS | G03171 | PL013 | 0.0% |
| SOUTH TIMBALIER 195 P/F-B | ST195PFB | G03593 | ST195 | 100.0% |
| SOUTH TIMBALIER 316 P/F-A | ST316PFA | G22762 | ST316 | 40.0% |
| VERMILION 196 P/F-A | VR196PFA | G19760 | VR196 | 100.0% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| VERMILION 261 P/F-A | VR261APLT | G03328 | VR261 | 25.0% |
| VERMILION 261 P/F-A-AUX | VR261AAUX | G03328 | VR261 | 25.0% |
| VERMILION 272 P/F-A | VR272PFA | G23829 | VR272 | 100.0% |
| VERMILION 272 P/F-B | VR272PFB | G23829 | VR272 | 100.0% |
| VERMILION 272 P/F-C | VR272PFC | G23829 | VR272 | 100.0% |
| VERMILION 313 P/F-B | VR313PFB | G01172 | VR313 | 100.0% |
| VERMILION 313 P/F-C | VR313PFC | G01172 | VR313 | 100.0% |
| VERMILION 313 P/F-D | VR313PFD | G01172 | VR313 | 100.0% |
| VERMILION 408 P/F-A | VR408PF | G15212 | VR408 | 0.331868 |
| VIOSCA KNOLL 826 NEPTUNE SPAR | VK826NEP | G15441 | VK826 | 100.0% |
| WEST CAMERON 065 P/F-8 | WC065CAIS8 | G02825 | WC065 | 0.0% |
| WEST CAMERON 065 P/F-9 | WC065CAIS9 | G02825 | WC065 | 0.0% |
| WEST CAMERON 065 P/F-JA | WC65JAPLT | G02825 | WC065 | 0.0% |
| WEST CAMERON 065 P/F-JA-AUX | WC65JAAUX | G02825 | WC065 | 0.0% |
| WEST CAMERON 066 P/F-B | WC066PFB | G02826 | WC066 | 17.1% |
| WEST CAMERON 066 P/F-E | WC066PFE | G02826 | WC066 | 25.0% |
| WEST CAMERON 072 P/F-1 | WC072PF1 | G23735 | WC072 | 75.0% |
| WEST CAMERON 072 P/F-2 | WC072PF2 | G23735 | WC072 | 75.0% |
| WEST CAMERON 072 P/F-3 | WC072PF3 | G23735 | WC072 | 75.0% |
| WEST CAMERON 171 P/F-A | WC171PFA | G01997 | WC171 | 21.2% |
| WEST CAMERON 171 P/F-A-AUX1 | WC171PFAA1 | G01997 | WC171 | 21.2% |

**Exhibit III-C(ii)**

Exhibit III-C(ii)

| Name | State | County/Parish |
|------|-------|---------------|
| BURRWOOD | Louisiana | Plaquemines |
| HAYES LUMBER | Louisiana | Jefferson Davis |
| HELIS 2 | Louisiana | Iberia |
| MYETTE POINT | Louisiana | St. Mary |

Exhibit III-D(i)

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7912 | Fieldwood Energy, LLC | EB | 160 | A | HI | A582 | SSTI | 12 | GAS | Out of Service | G08528 | G02647 |
| 7923 | Fieldwood Energy, LLC | EB | 165 | A | HI | A 582 | 30 SSTI | 12 | GAS | Active | G08536 | G06280 |
| 10301 | Bandon Oil and Gas, LP | EC | 332 | A | EC | 330 | 08 SSTI | 6 | OIL | Out of Service | G14699 | G09478 |
| 44 | Fieldwood Energy, LLC | EI | 175 | C | EI | 176 | 12" SSTI | 8 | OIL | Out of Service | G13445 | 00438 |
| 1128 | Fieldwood Energy, LLC | EI | 330 | flanged end | EI | 306 | 14-inch SSTI | 14 | OIL | Out of Service | G02139A | G02115 |
| 7943 | Fieldwood Energy, LLC | EI | 342 | C | EI | 327 | 08 SSTI | 4 | OIL | Out of Service | G08541 | G02319 |
| 18493 | Fieldwood Energy, LLC | EI | 342 | C | EI | 343 | SSTI | 6 | GAS | Out of Service | G29108 | G02319 |
| 19960 | Fieldwood Energy LLC | EI | 342 | C | EI | 342 | Blind Flange | 6 | OIL | Out of Service | G29471 | G02319 |
| 11923 | Fieldwood Energy, LLC | EI | 53 | C | EI | 64 | 22 SSTI | 10 | G/C | Out of Service | G20539 | 00479 |
| 9211 | Fieldwood Energy, LLC | EI | 53 | B | EI | 64 | 22 SSTI | 6 | G/C | Partial Abandon | G12373 | 00479 |
| 15298 | Fieldwood Energy, LLC | GA | 210 | B | GA | 239 | 12 SSTI | 8 | G/C | Active | G26931 | G25524 |
| 16077 | Fieldwood Energy, LLC | HI | 130 | #2 | HI | 165 | 8-inch SSTI | 8 | BLGH | Partial Abandon | G28284 | G25579 |
| 15401 | Fieldwood Energy, LLC | HI | A 341 | B | HI | A 340 | 30" SSTI | 812 | G/C | Active | G26938 | G25605 |
| 6669 | Fieldwood Energy, LLC | HI | A 376 | A | HI | A 356 | 12 SSTI | 10 | GAS | Out of Service | G05238 | G02754 |
| 6669 | Fieldwood Energy LLC | HI | A 376 | Platform A | HI | A 356 | 12 SSTI W/PSN 10882 | 10 | GAS | Out of Service | G05238 | G02754 |
| 7684 | Fieldwood Energy, LLC | HI | A 550 | A | HI | A 568 | 20 SSTI | 10 | GAS | Out of Service | G08276 | G04081 |
| 6340 | Fieldwood Energy, LLC | HI | A 568 | Subsea Valve | HI | A 539 | 20 SSTI | 20 | G/C | Out of Service | G04974 | G04081 |
| 5470 | Fieldwood Energy, LLC | HI | A356 | Valve | HI | A343 | HIOS | 12 | GAS | Out of Service | G04050 | G02754 |
| 10882 | Fieldwood Energy, LLC | HI | A356 | 10SST | HI | A356 | 12SSTI | 12 | GAS | Out of Service | G04051 | G02754 |
| 6504 | Fieldwood Energy, LLC | HI | A595 | D | HI | 573 | B | 8 | OIL | Out of Service | G28525 | G02721 |
| 14304 | Fieldwood Energy, LLC | MP | 101 | SSTI Manifold | MP | 102 | Plat A | 8 | BLKG | Partial Abandon | G24687 | G22792 |
| 15810 | Fieldwood Energy Offshore LLC | MP | 29 | Well No. 1 | MP | 118 | Platform A | 6 | BLKG | Out of Service | G28216 | G27196 |
| 15818 | Fieldwood Energy Offshore LLC | MP | 77 | A | MP | 151 | 18"SSTI | 8 | GAS | Out of Service | G28221 | G04481 |
| 4733 | Fieldwood Energy Offshore LLC | SM | 142 | A | SM | 127 | 24 SSTI | 10 | G/C | Out of Service | G03441 | G01216 |
| 15106 | Fieldwood Energy Offshore LLC | SM | 146 | B | SM | 147 | A | 6 | BLKG | Out of Service | G26837 | G09546 |
| 15107 | Fieldwood Energy, LLC | SM | 146 | B | SM | 147 | A | 4 | BLKG | Out of Service | G26838 | G09546 |
| 15108 | Fieldwood Energy, LLC | SM | 147 | A | SM | 146 | B | 2 | LIFT | Out of Service | G26839 | G09546 |
| 19363 | Fieldwood Energy Offshore LLC | SM | 147 | A | SM | 130 | 12 SSTI | 6 | BLKO | Out of Service | G14093 | G06693 |
| 19363 | Fieldwood Energy Offshore LLC | SM | 147 | A | SM | 130 | 12 SSTI | 6 | BLKO | Out of Service | G29316 | G06693 |
| 10977 | Fieldwood Energy, LLC | SM | 268 | A | SM | 280 | #03 | 3 | BLKG | Out of Service | G28756 | G14456 |
| 17499 | Fieldwood Energy, LLC | SM | 269 | B | SM | 268 | A | 10 | GAS | Out of Service | G28484 | G02311 |
| 13642 | Fieldwood Energy, LLC | SM | 280 | H | SM | 268 | A | 10 | BLKG | Permitted for Abandonment | G28758 | G14456 |
| 5427 | Fieldwood Energy, LLC | SM | 281 | E | SM | 268 | A | 12 | SPLY | Out of Service | G02817 | G02600 |
| 5429 | Fieldwood Energy, LLC | SM | 281 | C | SM | 281 | 12 SSTI | 10 | SPLY | Out of Service | G02817 | G02600 |
| 6512 | Fieldwood Energy, LLC | SM | 281 | C | SM | 268 | D | 10 | BLKO | Out of Service | G29131 | G02600 |
| 10268 | Fieldwood Energy SP LLC | SP | 60 | A | SP | 6 | F/S | 10 | OIL | Out of Service | G14679 | G02137 |
| 20050 | Fieldwood Energy, LLC | SS | 168 | SSTI | SS | 168 | SSTI | 6 | | Proposed | G28788 | 00820 |
| 6748 | Fieldwood Energy, LLC | SS | 169 | C Platform | SS | 169 | 18-inch SSTI | 6 | OIL | Out of Service | G09322 | 00820 |
| 12778 | Fieldwood Energy, LLC | SS | 189 | A | SS | 185 | 26"SSTI | 8 | G/C | Out of Service | G22139 | G04232 |
| 1138 | Fieldwood Energy, LLC | SS | 204 | A | SS | 207 | A | 6 | G/O | Out of Service | G13491 | G01520 |
| 1137 | Fieldwood Energy, LLC | SS | 207 | A Platform | SS | 204 | A | 4 | GAS | Out of Service | G13489 | G01523 |
| 1147 | Fieldwood Energy, LLC | SS | 207 | A | SS | 208 | F-Pump | 12 | OIL | Out of Service | G13492 | G01523 |
| 17775 | Fieldwood Energy, LLC | SS | 253 | C | SS | 208 | F-Pump | 4 | OIL | Out of Service | G01691C | G01031 |
| 18094 | Bandon Oil and Gas, LP | ST | 195 | B | ST | 196 | SSTI | 6 | G/C | Permitted for Abandonment Approved | G29005 | G03593 |
| 11107 | Bandon Oil and Gas, LP | ST | 196 | 06-inch SSTI | SS | 208 | F | 6 | OIL | Permitted for Abandonment Approved | G05120 | G03593 |
| 13720 | Fieldwood Energy, LLC | VK | 340 | 8"SSTI | VK | 251 | A | 8 | BLGH | Active | G28221 | G04481 |
| 13193 | Bandon Oil and Gas, LP | VR | 196 | A | VR | 206 | 12 SSTI | 8 | G/C | Out of Service | G22418 | G19760 |
| 18591 | Fieldwood Energy, LLC | VR | 196 | A | VR | 215 | A | 4 | BLKO | Out of Service | G29137 | G19760 |
| 18588 | Fieldwood Energy, LLC | VR | 215 | A | VR | 196 | A | 4 | GAS | Active | G29136 | G19760 |
| 17090 | Fieldwood Energy, LLC | VR | 261 | A | VR | 265 | A | 8 | BLKO | Out of Service | G28347 | G03328 |
| 14609 | Fieldwood Energy, LLC | VR | 272 | "A" | VR | 250 | 8" SSTI | 4 | OIL | Out of Service | G25384 | G23829 |
| 14277 | Fieldwood Energy, LLC | VR | 272 | A | SM | 116 | 20" SSTI | 10 | G/C | Out of Service | G25288 | G23829 |
| 5440 | Fieldwood Energy Offshore LLC | VR | 313 | B | VR | 313 | 20 SSTI | 10 | GAS | Out of Service | G04044 | G01172 |
| 15136 | Fieldwood Energy Offshore LLC | VR | 313 | B | VR | 313 | 6" SSTI | 6 | OIL | Out of Service | G03879 | G01172 |
| 4289 | Fieldwood Energy Offshore LLC | WC | 485 | A | WC | 509 | GP | 12 | GAS | Out of Service | G02122E | G02220 |
| 14251 | Fieldwood Energy Offshore LLC | WC | 72 | #1 | WC | 65 | JA | 6 | BLKG | Out of Service | G25275 | G23735 |
| 16088 | Fieldwood Energy, LLC | WD | 122 | A | WD | 105 | E | 6 | GAS | Out of Service | G28289 | G13645 |
| 16089 | Fieldwood Energy, LLC | WD | 122 | A | WD | 105 | E | 3 | OIL | Out of Service | G28290 | G13645 |
| 15960 | Fieldwood Energy, LLC | WD | 90 | A | WD | 73 | SSTI | 4 | OIL | Out of Service | G28260 | G01089 |

Exhibit III-D(ii)

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|
| EI | 63 | A | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | EI 63 002,003, EI 62 and 005, 006, 008, 009, 010 and 011 |
| EI | 63 | B | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | Production from EI 63 A |
| EI | 63 | C-QTR | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | Production from EI 63 A |
| SM | 146 | B | 1663 | G30248 | G09546 | Fieldwood Energy Offshore LLC | 08/21/13 | SM 139 B001 & B002 |
| SM | 147 | A | 23389 | G30200 | G06693 | Fieldwood Energy Offshore LLC | 09/12/13 | SM 139 B001, B002 & B002D |
| WD | 86 | A | 22593 | G30173 | G04243 | Fieldwood Energy Offshore LLC | 06/20/13 | WD 86 B001, B002 & B005 |
| VK | 826 | A-Neptune Spar | 24235 | G30353 | G15441 | Fieldwood Energy LLC | 07/03/18 | VK 917 SS001 & VK 962 SS001 |

**Exhibit III-E**

Call Signs:
WQBQ549
WQRK423

| Contract Type | Contract Date | Contract Title | Contract Description |
|---|---|---|---|
| Land | 8/29/1956 | Operating Agreement | Operating Agreement eff. 8-29-1956 |
| Land | 12/4/1958 | Operating Agreement | Operating Agreement eff. 12-4-58 |
| Land | 7/25/1960 | Operating Agreement | Operating Agreement, dated effective July 25,1960, as amended, between Second Mobil Oil Company, Inc., Gulf Oil 'Corporation, and Humble Oil & Refining Company, as amended, SS 169 Field. |
| Land | 3/1/1961 | Operating Agreement | SS 214 Operating Agreement eff. 3-1-61 |
| Land | 3/13/1962 | Operating Agreement | Operating Agreement dated 3/13/62 between The Pure Oil Company and The Ohio Oil Company |
| Land | 7/3/1962 | Operating Agreement | Operating Agreement eff 7-3-62 as amended |
| Land | 1/12/1965 | Joint Operating Agreement | Main Agreement, dated effective January 12,1965, between Cities Service Oil Company, Skelly Oil Company, Sunray DX Oil Company and Tidewater Oil Company, governing operations on the contract area. The Operating Agreement contained in Exhibit "C" of the Main Agreement was superseded by the Joint Operating Agreement eff. 1/1/97 |
| Land | 1/21/1966 | Unit Agreement No. 14-08-001-8784 | Unit No. 891008784 - SS 271 |
| Land | 2/26/1966 | Offshore Operating Agreement | Operating Agreement by and between Hardy Oil & Gas USA Inc., As Operator and British-Borneo Exploration, Inc. and Zilkha Energy Company, As Non-Operators |
| Land | 6/10/1966 | Unit Operating Agreement Ship Shoal | SS 271 Unit Operating Agreement (Unit#891008784) As Amended, originally by and between Forest Oil Corp. as Operator, and Texas Gas Exploration Corp. et al as Non-Operators |
| Land | 12/23/1966 | Joint Operating Agreement | Operating Agreement by and between American Petrofina Exploration Company (Operator), Chambers & Kennedy, COperating Agreementstal Production Company, Waymon G. Peavy, Harbert Construction Company, Jenney Manufacturing Company, Kirby Petroleum Co., HC Price Co., States Marine Lines, Inc., Pan American Petroleum Corporation |
| Land | 1/1/1971 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC., MESA PETROLEUM CO., ET AL. |
| Land | 2/1/1971 | Joint Operating Agreement | Operating Agreement, dated February 1,1971, between Tenneco Oil Company and Texaco Inc. Amendment to Operating Agreement, dated effective May 1,1974, between Tenneco Oil Company, Texaco Inc. and Tenneco Exploration 11, Ltd., whereby Tenneco Exploration II became a party to, and ratified, the operating agreement. |
| Land | 8/1/1973 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN MOBIL OIL CORPORATION AND UNION OIL COMPANY OF CALIFORNIA ET AL |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement 8/1/1973 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 9/3/1974 | FO | Farmout Agreement by and between CNG Producing Company, Columbia Gas Development Corporation and Forest Oil Corporation |
| Land | 7/1/1975 | Joint Operating Agreement | Operating Agreement eff. 7/1/75 by and between Mesa Petroleum as Operator and American Natural Gas Production Co, et al |
| Land | 9/1/1975 | Joint Operating Agreement | First Amendment to Operating. Agreements, dated effective September 1, 1975, between Mobil Oil Corporation, Amoco Production Company, and 'Union Oil Company of Califomia. |
| Land | 3/17/1976 | Joint Operating Agreement | Unit Operating Agreement 3/17/76 between Forest Oil Corp and Columbia Gas Development Corp, etal |
| Land | 4/1/1976 | Joint Operating Agreement | Operating Agreement eff. 4-1-76 as amended |
| Land | 4/1/1977 | Unit Operating Agreement | UNIT OPERATING AGREEMENT BY AND BETWEEN  DEVON ENERGY PRODUCTION , APACHE CORPORATION, ET AL. |
| Land | 4/1/1977 | Unit Agreement No. 14-08-0001-16943 | Unit Agreement, JD Sand, Reservoir A, Eugene Island Block 330 Field (Unit Number 891016943), dated effective April 1,1977, naming Pennzoil Oil & Gas, Inc., as Operator, and Texaco Inc. and Shell Oil Company, as sub-operators |
| Land | 8/1/1977 | Joint Operating Agreement | Operating Agreement eff. 8-1-77 b/b Transco et al |
| Land | 5/2/1978 | FO | FARMOUT AGREEMENT EFFECTIVE MAY 2, 1978, BY AND BETWEEN ENSERCH, FARMOR, AND ANADARKO, FARMEE. |
| Land | 8/17/1978 | Ownership Agreement "F" Platform | Platform Ownership Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Texas Gas Exploration Corporation, Pelto Oil Company, Ocean Production Company, Ocean Oil and Gas Company |
| Land | 9/15/1978 | Joint Operating Agreement | Amendment of Operating Agreement, dated September 15, 1978, between Amoco Production Company, Mobil Oil Corporation, and 'Union Oil Company of California. |
| Land | 11/13/1978 | Joint Operating Agreement | Second Amendment to Operating Agreements, dated effective; November 13, 1978, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of California |
| Land | 11/13/1978 | Joint Operating Agreement | Fourth Amendment to Operating Agreements, dated effective; November 13, 1978,.between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of California |
| Land | 11/17/1978 | FO | Farmout Agreement dated November 17,1978 between Gulf Oil Corporation and Shell Oi! Company covering the Northeast Quarter (NE/4) of that certain Oil and Gas Lease dated July 1,1967 bearing Serial No. OCS-G 1609, South Pass Area Block 61. |

| | | | |
|---|---|---|---|
| Land | 5/2/1979 | Proposed Installation and Operating Agreement of Ship Shoal Area Block 246 Field ("A" Platform) | Installation and Operating Agreement by and between CNG Producing Company, Consolidated Gas Supply Corporation |
| Land | 9/15/1979 | Joint Operating Agreement | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO, AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC, AND SAMEDAN OIL CORPORATION, NON-OPERATORS. |
| Land | 12/1/1979 | OFFSHORE OPERATING AGREEMENT | OFFSHORE OPERATING AGREEMENT b/b SHELL OIL COMPANYand FLORIDA EXPLORATION COMPANY, ET AL |
| Land | 1/1/1980 | Joint Operating Agreement | Third Amendment to Operating Agreements, dated effective January 1, 1980, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company bf California. |
| Land | 4/1/1981 | Unit Operating Agreement | Unit Operating Agreement; dated April 1,1981, by and between Conoco Inc., Atlantic Richfield Company, Getty Oil Company, Cities Service Company, Placid Oil Company, Hamilton Brother Oil Company, Mobil Oil Exploration and Producing S.E., Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt Industries and Prosper Energy Corporation, comprising all working interest owners in the Ship ShOperating Agreement Blocks 206, 207,,OCS-G:i523:and OCS-G 1523, respectively. |
| Land | 4/22/1980 | Joint Operating Agreement | Amendment to Operating Agreement, dated April 22, 1980, between Union Oil Company, of California and,Amoco;Production Company. |
| Land | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement (MP 108+) 9/1/1981 |
| Land | 4/28/1982 | Letter Agreement | Letter Agreement dated April 28,1982 between Gulf Oil Corporation and Shell Oil Company evidencing an agreement for Gulf Oil Company to install a Drilling Platform in the Northeast Quarter (NE/4) South Pass Area Block 61. |
| Land | 1/1/1983 | ORRI | Conveyance of Overriding Royalty Interests, dated effective January 1,1983, creating the Tel Offshore Trust, and granting an overriding royalty interest, equivalent to 25% net profits interest, in all of Tenneco Exploration, Ltd.'s oil and gas properties |
| Land | 8/4/1983 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement effective August 4, 1984 BY AND BETWEEN APACHE CORPORATION AND SHELL OFFSHORE CONTIGUOUS BLOCK TO SHELL VENTURE PROPERTY THAT MAY TRIGGER AMI RESPONSIBILITY REGARDING FUTURE PURCHASE OR BID OF TRACTS COVERING GEOLOGIC STRUCTURE COMMON TO EXISTING SHELL VENTURE PROPERTY |
| Land | 4/13/1984 | Unit Operating Agreement | WD 27 28 Unit Operating Agreement Tenneco OP & Samedan et al as amended |
| Land | 6/3/1985 | Consent to Assign | Consent to Assignment of Interest, dated June 3,1985, between Tenneco Exploration, Ltd. and Texaco Inc., as Grantors of Consent, and Huffco Petroleum, as Assignor, and L. S. Holding Company, AE Investments, Inc., Colton Gulf COperating Agreementsst, Inc., and Huffco 1982 Exploration Limited Partnership, as Assignees, assigning all of Huffco Petroleum's record title interest to the Assignees. |
| Land | 3/3/1986 | OA | Offshore Operating Agreement (All of Block 300 - A Wells) 3/3/1986 |
| Land | 5/1/1986 | Assignment | Assignment, dated effective May 1,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Plumb Offshore, Inc., subject to the reservation of an overriding royalty interest. |
| Land | 7/1/1986 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective July 1, 1986,, between Amoco Production Company; Union Oil Company of California, and Mobil ProducingTexas & New Mexico, Inc. |
| Land | 10/20/1986 | UA | Unit Agreement 10/20/86 between Chevron USA Inc., Union Exploraiton partners, LTD, and Pennzoil Producing Company |
| Land | 10/31/1986 | Assignment | Assignment of Interest, dated effective October 31,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Tenneco Oil Company. |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OA | Operating Agreement 1/1/89 |
| Land | 5/2/1989 | Letter Agreement | Letter Agreement, dated May 2, 1989, between Southern Natural Gas Company and Chevron U.S.A. Inc.,concerning the "Construction, Installation, Operation and Maintenance of Measurement and Pipeline Facilities " for receipt points at various locations on the OCS, including Main Pass 77 'A' platform (as amended). Consent Sec. 1O. |
| Land | 9/10/1990 | FO | Farmout Agreement (Forest - SS 291/300) 9/10/1990 |
| Land | 9/15/1990 | OA | Offshore Operating Agreement (NW/4 NW/4 Blk 300 - B Wells) 9/15/1990 |
| Land | 10/1/1990 | Joint Operating Agreement | RATIFICATION AND AMENDMENT NUMBER 1 TO JOINT OPERATING AGREEMENT DATED OCTOBER 1, 1990, BY AND BETWEEN CONOCO INC. AND TEXAS PRODUCING INC. |
| Land | 10/1/1990 | UOA | UA and Unit Operating Agreement dated 10/1/90 between Marathon Oil Co and Phillips Petroleum etal |
| Land | 1/1/1991 | PA | Offshore Participation Agreement, dated effectiveJanuary 1,1991, between Unocal Exploration Corporation, The Northwestern Mutual Life Insurance Company, and Hardy Oil & Gas USA Inc., BA A105. |
| Land | 5/1/1991 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC., MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST ET AL |
| Land | 10/1/1991 | FO | FO and Operating Agreement dated 10/1/91 between Torch Energy Advisors Inc etal and Hall-Houston Oil Company |
| Land | 4/1/1992 | Unit Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development and Production Operations on the South Pass Block 60 Unit (Blocks.6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf, Contract No. 754394018, as amended |
| Land | 4/1/1992 | Unit Agreement | Amendment to Unit Agreement. For Outer Continental Shelf Exploration, Development and Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf (Contract No. 754394018) to expand the Unit Agreement to include the NE/4 of the NW/4 of Block 61, OCS-G 1609, South. Pass Area. |
| Land | 5/2/1992 | ABOS | Agreement and Bill of Sale, dated effective May 2,1992, between Union Oil Company of California, as Seller, and The Northwestern Life Insurance Company and Hardy Oil & Gas USA Inc., as Buyers, selling 43.75% interest in the BA A-105 "A" Platform, equipment arid pipeline, to NW Mutual 31.25%, and Hardy 12.50%. |
| Land | 5/15/1992 | Unit Agreement | EC 331/332 Unit Agreement |

| Land | 6/25/1992 | Letter Agreement | Letter Agreement, dated June 25, 1992, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana ", whereby Chevron obtained consent from Southern for Chevron to connect, operate and maintain pneumatic chart recorders on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
|------|-----------|------------------|-----------------------------------------------------------------------------------------------------------------------------|
| Land | 7/1/1992 | FO | Farmout Agreement 7/1/1992 |
| Land | 7/1/1992 | OA | Offshore Operating Agreement 7/1/1992 |
| Land | 1/1/1993 | OA | Operating Agreement 1/1/1993 |
| Land | 2/15/1993 | Letter Agreement | Letter Agreement, dated effective February 15, 1993, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana", whereby Chevron and Southern agree to amend and replace Exhibit "A" to that certain Letter Agreement, dated June 25, 1992 (described hereinabove). |
| Land | 4/2/1993 | ABOS | Bill of Sale, dated April 2, 1993, from Southern Natural Gas Company ("Southern") to Chevron U.S.A. Inc.("Purchaser"), whereby Southern sells to Purchaser certain Barton chart recorders and appurtenant equipment located at various on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
| Land | 6/15/1993 | GC 244 Unit Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development, and Production Operations on the Green Canyon Block 244 Unit (Contract No. 754393016) dated effective June 15, 1993, covering OCS-G 11043 (Green Canyon Block 244), OCS-G 12209 (Green Canyon Block 200), and OCS-G 12210 (Green Canyon Block 201). |
| Land | 6/15/1993 | Unit Operating Agreement | Unit Operating Agreement dated effective June 15, 1993 between Shell Offshore Inc and Marathon Oil Company, as successors in interest. |
| Land | 8/16/1993 | Joint Operating Agreement | Amendment to'Operating Agreement, dated August 16, 1993, between Express Acquisition Company and Torch EnergyAdvisors Inc. |
| Land | 12/30/1993 | OA | WD 90, WD 103 Operating Agreement5 12-30-1993 |
| Land | 1/1/1994 | Co-Development Agreement and Amendment to Unit Operating Agreement | Co-Development Agreement and Amendment to Unit Operating Agreement originally by and between CNG Producing Company & Columbia Gas Development Corp., et al |
| Land | 2/10/1994 | JDA | JOINT DEVELOPMENT AGREEMENT DATED FEBRUARY 10, 1994, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA - TERMINATED BY LETTER AGREEMENT DATED MARCH 10, 1999. |
| Land | 5/12/1994 | Letter Agreement | Letter Agreement by and between CNG Producing Company and Columbia Gas Development Corporation |
| Land | 6/1/1994 | Joint Operating Agreement | OPERATING AGREEMENT DATED JUNE 1, 1994, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. |
| Land | 7/1/1994 | OA | Operating Agreement 7/1/1974 |
| Land | 7/7/1994 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN POGO PRODUCING COMPANY AND COCKRELL OIL AND GAS, L.P.., ET AL |
| Land | 7/15/1994 | Letter Agreement | LETTER AGREEMENT DATED JULY 15, 1994 BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY. |
| Land | 10/19/1994 | JDA | Joint Venture Development Agreement, dated October 19,1994',,between Norcen Explorer, Inc. and Texaco Exploration and Production, Inc. forming a working-interest unit comprising portions of'Ship .ShOperating Agreementl Block 206 and OCS-G 1523,-Ship ShOperating Agreementl Block 207; |
| Land | 11/16/1994 | JDA | Joint Venture Development Agreement, dated November 16><1994, between Norcen.Explorer, Inc., Texaco Exploration and1 Production, Inc., Industries, TheiGeorge R. Brown Partnership, JOC Venture, LamarHunt Trust Estate, Mobil Oil Exploration SoProducingiSoutheast Inc.,-and Hunt Oil Company,.covering all of Blocks 206 and 207 Ship ShOperating Agreementl Area. |
| Land | 11/30/1994 | JDA | Amendment to Joint Venture Development Agreement, dated November'30,1994, between iNorcen Explorer,.'Inc., Texaco Exploration and Production; Inc., Hunt Industries, The George.R..Brown Partnership, JOG Venture, Laniar Hunt Trust Estate, Mobil Oil Exploration &«Producing Southeast Inc., and Hunt Oil Company, covering all of Blocks 206 and 207 Ship ShOperating Agreementl Area. |
| Land | 3/28/1995 | Letter Agreement | LETTER AGREEMENT DATED MARCH 28,1995, BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY, ET AL. |
| Land | 4/6/1995 | JDA | Amendment to Joint Venture Development Agreement, dated April 6, 1995, between Norcen. Explorer, Inc., Texaco Exploration and Production; Inc., Hunt Industries, The George R. Brown, Partnership; JOC Venture, Lamar Hunt Trust Estate, Mobil Oil Exploration 8i Producing Southeast Inc., and Hunt Oil Company, covering; all of'Blocks.206 and 207 Ship ShOperating Agreementl Area. |
| Land | 5/1/1995 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MAY 1, 1995, BY AND BETWEEN CONOCO INC. AND VASTAR RESOURCES, INC., ET AL. |
| Land | 8/16/1995 | Letter Agreement | Letter Agreement by and between Columbia Gas Development and CNG Producing Company |
| Land | 10/1/1995 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN AMERADA HESS CORPORATION AND VASTAR RESOURCES INC. |
| Land | 12/14/1995 | LOI | REVISED LETTER OF INTENT (FARMOUT) DATED DECEMBER 14, 1995, BY AND BETWEEN ENSERCH EXPLORATION, INC, AND PETROBRAS AMERICA, INC. |
| Land | 3/7/1996 | Conditional Letter of Acceptance to Exploration Agreement | Letter Agreement by and between Hardy Oil & Gas USA, Inc., British-Borneo Exploration by Hardy Oil & Gas USA, Inc., British Borneo Exploration, Inc. and Zilkha Energy Company |
| Land | 4/17/1996 | Plan of Development | Plan of Development by and between Shell Offshore Inc, BP Exploration and Oil, Inc and marathon oil compnay dated effective 17 Apr 1996. |
| Land | 8/26/1996 | PSA | Purchase and Sale Agreement, dated August 26, 1996, between Amoco Production Company and Union Oil Company of California, EB 158/EB 159. |
| Land | 9/1/1996 | OA | Offshore Operating Agreement 9/1/1996 |

| | | | |
|---|---|---|---|
| Land | 9/3/1996 | OA | Operating Agreement (depths below 9000' on VR 392 & VR 408; and all depths VR 407) 9/3/1996 |
| Land | 1/1/1997 | OA | Operating Agreement eff. 1-1-97 |
| Land | 5/1/1997 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective May 1,1997, between GOM Shelf, LLC, and ChevronTexaco and Kerr-McGee Oil & Gas Corporation, amending Exhibit "A" to reflect a new division of interest. |
| Land | 8/1/1997 | UOA | EC 331/332 Unit Operating Agreement |
| Land | 3/13/1998 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MARCH 13, 1998, BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC. AND VASTAR RESOURCES, INC. |
| Land | 4/1/1998 | JVA | JOINT VENTURE AGREEMENT - SPECTER PROSPECT DATED APRIL 1, 1998 BY AND BETWEEN SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL., as amended. |
| Land | 4/1/1998 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. |
| Land | 4/6/1998 | Letter Agreement | LETTER (ELF OFFERS NIPPON PART OF THE COperating AgreementSTAL INTEREST) DATED APRIL 6, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED |
| Land | 4/6/1998 | JVA | AMENDMENT TO JOINT VENTURE AGREEMENT- ELF ASSUMES COperating AgreementSTAL POSITION DATED APRIL 6, 1998 ELF EXPLORATION INC. AND COperating AgreementSTAL O&G CORPORATION. |
| Land | 4/10/1998 | FO | FARMOUT AGREEMENT DATED APRIL 10, 1998, BY AND BETWEEN COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 4/13/1998 | Letter Agreement | LETTER- NIPPON TAKES ITS SHARE OF COperating AgreementSTAL F/O & SHARE OF ELF'S INTEREST DATED APRIL 13, 1998, BY AND BETWEEN ELF EXPLORATION INC., COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 11/5/1998 | JVA | ADDENDUM TO JOINT VENTURE AGREEMENT DATED NOVEMBER 5, 1998, BY AND BETWEEN SHELL OFSSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| Land | 2/9/1999 | Joint Operating Agreement | Offshore Operating Agreement, dated February 9, 1999, between Ocean Energy, Inc. and Shell Offshore Inc., covering Vermilion 195, 196 and 207, as amended December 23, 1999 by that certain Letter Agreement regarding the sale of properties to McMoran Oil & Gas LLC, and further amended August 22, 2000, December 31, 2001 and September 15, 2010. |
| Land | 12/1/1999 | Assignment | Assignment of Record Title Leasehold Interest dated effective December 1, 1999 between Shell Offshore Inc., as Assignor, and McMoRan Oil & Gas LLC, as Assignee, covering OCS-G 19760, Vermilion Block 196 |
| Land | 11/1/1980 | Joint Operating Agreement | Operating Agreement, Main Pass Area, Blocks 77 and 78, Gulf of Meidco, dated effective November 1, 1980,between Gulf Oil Corporation, Texoma Production'Company, The Anschutz Corporation, NICOR Exploration Company, and The Superior Oil Company, covering the federal Oil and Gas Lease OCS-G 4481, Blocks 77>and78 Main Pass Area, Offshore Louisiana, a true copy of the original is recorded in C.O.B. 592, Folio 658, Plaquemines Parish, Louisiana. |
| Land | 12/15/1999 | Letter Agreement | Letter Agreement, dated December 15, 1999, between Apache Corporation, Chevron U.S.A. Production Company, Kelley Oil Corporation, Key Production Company, Mobil Exploration & Producing U.S. Inc. and Sabco Oil and Gas Corporation, regarding the OCS-G 4481 #A-23 Well, Main Pass Block 77, Main Pass Block 151 Field, Offshore. LA. Note: only have Key's executed cop |
| Land | 1/31/2000 | FO | Farmout Letter Agreement 1/31/2000 |
| Land | 8/4/2000 | FO | Farmout Agreement 8/4/2000 |
| Land | 1/1/2001 | Joint Operating Agreement | Fifth Amendment to Operating Agreements, dated effective January 1,, 2001, between Union Oil Company of Califomia and 'Vastar Offshore,Inc |
| Land | 1/15/2001 | Joint Operating Agreement | Amendment to Operating Agreement,, dated January 15, .2001, between Union Oil Company, Amoco Production Company, and Vastar Offshore,'Inc |
| Land | 11/17/2000 | PA | Participation Agreement and Operating Agreement 11-17-00 b/b Samedan and Stone |
| Land | 3/1/2001 | JDA | Joint Development Agreement with Operating Agreement, dated March 1, 2001, between Union Oil Company of Califomia, Vastar Offshore, Inc. and Panaco, Inc., parts of EB 161 and 205. |
| Land | 6/1/2001 | OA | Offshore Operating Agreement 6/1/2001 |
| Land | 6/15/2001 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND RWE PERTROLEUM COMPANY ET AL |
| Land | 6/15/2001 | JDA | JOINT DEVELOPMENT AGREEMENT  EFFECTIVE JUNE 15, 2001, BY AND BETWEEN RME PETROLEUM COMPANY AND W&T OFFSHORE, INC, "SM280 OWNERS" AND RME ET AL "SM 281 OWNERS" AND THAT CERTAIN JOINT OPERATING AGREEMENT ATTACHED THERETO AS EXHIBIT "B". |
| Land | 9/17/2001 | Joint Operating Agreement | Joint Operating Agreement attached to and made part of that certain Farmout Agreement dated September 17, 2001 by and between Amoco Production Company (Samedan Oil Corporation was successor-in-interest to Amoco Production Company and subsequently merged with Noble Energy, Inc.; Fieldwood is successor-in-interest to Noble Energy, Inc.) and Mariner Energy, Inc. |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 66 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering OCS-G 2282, South Marsh Island Block 132. |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 135 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 136 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 137 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 150 |
| Land | 11/1/2001 | Joint Operating Agreement | Operating Agreement by and between Dominion Exploration & Production, Inc., as Operator, and Aviara Energy Corporation |
| Land | 11/1/2001 | PA | Participation Agreement by and between Dominion Exploration & Production, Inc. and Aviara Energy Corporation |
| Land | 3/15/2002 | Bidding Agreement | BIDDING AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P. AND LLOG EXPLORATION OFFSHORE, INC. |
| Land | 8/23/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc., as Operator, and Spinnaker Exploration Company, L.L.C., as Non-Operator |

| | | | |
|---|---|---|---|
| Land | 8/30/2002 | OA | SP 42 43 Operating Agreement LLOG and Pure et al |
| Land | 9/1/2002 | Operating Agreement | Operating Agreement by and between Union Oil and Northstar Gulfsands |
| Land | 12/12/2002 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN LLOG EXPLORATION OFFSHORE, INC. AND DAVIS OFFSHORE, L.P. |
| Land | 12/12/2002 | MOA | MEMORANDUM OF OPERATING AGREEMENT LLOG EXPLORATION OFFSHORE, INC. AND DAVIS OFFSHORE, L.P. |
| Land | 12/12/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Llog Exploraiton Offshore, Inc and Davis Offshore L.P. dated 12 Dec 02 |
| Land | 3/24/2003 | FO | FARMOUT AGREEMENT BY AND BETWEEN NOBLE / KERR-MCGEE FARMOUT (MP 109) 3/24/2003 |
| Land | 3/31/2003 | Letter Agreement | Letter Agreement, dated March 31, 2003, between Chevron U.S.A. Inc., Sabco Oil and Gas Corporation, Apache Corporation, ExxonMobil Production Company, Key Production Company and Contour Energy<br>Company regarding Second Opportunity to Participate - Election to Acquire^Non-Participating Interest, in the MP77 OCS-G 4481 A-6 TTPG, Project No. UWGHP-R3011, Cost Center UCP170500, Main Pass Block 77.<br>Key Production Company election. |
| Land | 5/1/2003 | Joint Operating Agreement | Offshore Operating Agreement dated May 1, 2003 between Magnum Hunter Production,Inc, and Westport Resourcs Corporation et al |
| Land | 9/25/2003 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between Apache Corporation and Chevron USA |
| Land | 1/1/2004 | FO | FARMOUT AGREEMENT DATED JANUARY 21, 2004, BY AND BETWEEN CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. |
| Land | 1/1/2004 | Assignments | Assignment from BP Exploration and Production to Noble Energy Inc dated effective 1 Jan 04 (Relevant PSA was excluded from NBL - FW Deal) |
| Land | 2/1/2004 | OA | VR 272 Operating Agreement eff/ 2-1-04 LLOG and ST Mary |
| Land | 3/18/2004 | PSA | PSA dated 3-18-04 but eff. 9-1-2003 b/b Noble Energy, Inc. and Northstar Gulfsands, LLC |
| Land | 3/25/2004 | JVA | Amendment to Joint Venture Development Agreement, dated. March 25, 2004 between Anadarko E 8t P Company LP: Chevron U.S.A. Inc.; Hunt Oil Company, Hunt Petroleum, the George,R. Brown Partnership LP, Offshore Investment ,Cov and the'Lamar Hunt Trust Estate,, whereby the Unit 'was expanded |
| Land | 4/1/2004 | Joint Operating Agreement | AMENDMENT OF JOINT OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 4/1/2004 | OA | Operating Agreement dated 4/1/04 between Newfield Exploration Co and Hunt Petroleum (AEC) Inc |
| Land | 4/2/2004 | Divestiture | ASSET SALE AGREEMENT DATED APRIL 2, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 4/19/2004 | FO | Farmout Agreement by and between Newfield Exploration Company and Westport Resources Company, as Owners of WC 73, and Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC as Owners of WC 72 |
| Land | 5/26/2004 | Production Handling Agreement | Production Handling Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 26 May 2004 and as amended by<br>(a) 1st Amendment dated 27 Jun 2005<br>(b) 2nd Amendment dated 6 Feb 2006<br>© 3rd Amendment dated 30 Jan 2008 |
| Land | 6/29/2004 | Letter Agreement | LETTER AGREEMENT DATED JUNE 29, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. |
| Land | 8/1/2004 | OA | Operating Agreement 8/1/04 |
| Land | 8/11/2004 | Notice | NOTICE OF ASSIGNMENT DATED AUGUST 11, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 8/24/2004 | Letter Agreement | Letter Agreement dated August 24, 2004, between Chevron U.S.A. Inc. and Williams Field Services- Gulf COperating Agreement Company, L.P. |
| Land | 9/7/2004 | Settlement and Release Agreement | SETTLEMENT AND RELEASE AGREEMENT DATED SEPTEMBER 7, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 10/6/2004 | LOI | LETTER OF INTENT DATED OCTOBER 6, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 10/7/2004 | EA | EXPLORATION AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 11/1/2004 | FO | FO eff. 11/1/04 as Amended, between Newfield Exploration Company, Continental Land & Fur Co., Inc., KCS Resources, Inc., and Fidelity Oil Co., as Farmors, and Explore Offshore LLC as Farmee |
| Land | 12/20/2004 | Preferential Right Agreement | Purchase and Sale agreement by and between BP Exploration and Production Inc and Marathon Oil Company dated 20 Dec 2004 |
| Land | 1/1/2005 | VUA | VOLUNTARY UNIT AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY. |
| Land | 1/11/2005 | Pref Right | Preferential Right Agreement dated 01/11/05 between BP and SOI for the acquisition of 49.99998% ofBP's 33.33333% interest at Troika. |
| Land | 1/25/2005 | Letter Agreement | Letter Agreement for the Operation and Ownership Transfer of Certain South Marsh Island Block 66 Facilities, dated effective January 25, 2005, between Transcontinental Gas Pipeline Corporation,;as Seller> and Union Oil "Company-of California and Forest Oil Corporation, as Purchasers, for facilities and pipeline associated with "A" and "C" Platforms'. NEVER CONSOMATED. |
| Land | 2/1/2005 | Letter Agreement | Letter Agreement, dated February 1, 2005, between Union Oil Company of California and Forest Oil , covering OCS-G 2589, South Marsh Island Block 137, asthe Unit Operating Agreement for South Marsh Island Block 137 Unit, identified as Unit Agreement No. 14-08-001-20237, replacing and superseding, effective October 1, 2001, that certain Unit Operating Agreement dated January 1,1989 between Conoco Inc., Texaco Producing Inc. and CanadianOXY Offshore Production Company. |
| Land | 2/28/2005 | OA | JOperating Agreement eff. 2-28-05 b/b Peregrine O&G and Chroma Energy, et al; as amended |
| Land | 8/2/2005 | PSA | PURCHASE AND SALE AGREEMENT DATED AUGUST 2, 2005, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 9/12/2005 | Notice | NOTICE AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC AND DAVIS OFFSHORE, L.P. |
| Land | 10/25/2005 | OA | Operating Agreement 10-25-05 |
| Land | 1/19/2006 | Letter Agreement | Letter Agreement, - dated January 19, 2006, between BP Exploration & Production Inc. and Union Oil Company of California: |

| Land | 2/22/2006 | FO | Farmout Proposal Letter Agreement between The Houston Exploration Company and Noble Energy Inc. 2/22/2006 |
|------|-----------|-----|------------------------------------------------------------------------------------------|
| Land | 3/1/2006 | ABOS | ABOS eff. 3-1-2006 b/b Noble Energy, Inc. as Assignor and Coldren Resources LP as Assignee. |
| Land | 10/30/2006 | FO | Farmout Agreement, dated effective October 30, 2006, between Chevron U.S.A. Inc., as Farmor, and Mariner Energy Resources, Inc., as farmee, covering S/2 of SM 149 (OCS-G 2592) and S/2 of SM 150 (005-016325) and limited to depths from the surface to the stratigraphic equivalent of 100' below the deepest depth drilled in the #1 Well as proposed. |
| Land | 4/3/2007 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Coporation, Samson Contour Energy and Shell Offshore |
| Land | 9/21/2007 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand SENECA RESOURCES CORPORATION |
| Land | 11/10/2007 | Purchase and Sale Agreement | Purchase and Sale agreement by and between BP Exploration and Production Inc and W+T Offshore, Inc dated9 Nov 2004 (Preempted by Shell and Marathon) |
| Land | 5/14/2008 | Notice | Final Notification Letter Memo-Well Payout, elated May 14, 2008, EB 160 #A-13 well paid out on March 3, 2008. |
| Land | 10/1/2008 | ORRI | OVERRIDING ROYALTY INTEREST AGREEMENT BY AND BETWEEN LLOG EXPLORATION OFFSHORE INC AND DAVIS OFFSHORE, L.P. TO SHELL OFFSHORE INC AND MARATHON OIL COMPANY |
| Land | 10/1/2008 | Farmout Agreement | Farmout Agreement by and between Shell Offshore, Marathon Oil Company, Llog Exploraiton Offshore, Inc and Davis Offshore L.P. dated 1 Oct 2008 |
| Land | 2/15/2009 | FO | Farmout Agreement dated February 15, 2009 between SPN Resources LLC and Moreno Offshore Resources, L.L.C., Farmors, and Houston Energy, L.P., Farmee |
| Land | 2/17/2009 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P. AND LLOG EXPLORATION OFFSHORE, INC. |
| Land | 3/6/2009 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC., LLOG EXPLORATION OFFSHORE, INC. AND DAVIS OFFSHORE, L.P. |
| Land | 3/30/2009 | PA | Participation Agreement dated March 30, 2009 between Helis Oil & Gas Company, L.L.C. , et al and Challenger Minerals Inc. |
| Land | 3/30/2009 | Joint Operating Agreement | Offshore Operating Agreement dated March 30 2009 between Helis Oil & Gas Company, L.L.C., Operator, and Houston Energy, LP, et al, Non-operators; as Ratified and Amended by Ratification And Amendment of Operating Agreement dated March 16, 2012 |
| Land | 3/30/2009 | MOA | Memorandum of Offshore Operating Agreement and Financing Agreement dated March 30, 2009 between Helis Oil & Gas Company, L.L.C. et al |
| Land | 12/14/2009 | OPTION AGREEMENT | OPTION AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 2/1/2010 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 3/30/2010 | Marketing Election | Ship ShOperating Agreementl 252 Marketing Election Letter dated March 30, 2010 (Helis Oil & Gas Company, L.L.C.) |
| Land | 2/1/2011 | ABOS | Assignment and Conveyance, dated effective February 1, 2011, between Harrigan Energy Partners, Inc.,Assignor, and Chevron U.S.A. Inc^ as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities; pipelines; equipment, contracts,, etc., all as more fully described therein. |
| Land | 4/21/2011 | PSA | Asset Purchase and Sale Agreement, dated April 21, 2011, but made effective February 1, 2011, between SabcoOil and Gas Corporation, as Seller, and Chevron U.S.A. Inc., as Purchaser, whereby Purchaser acquired 0.63149% of 0.83922% of 8/8ths of Seller's right title and interest in the Lease, together with Seller's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein. |
| Land | 4/21/2011 | ABOS | Assignment and BUI of Sale, dated April 21, 2011, but made effective February 1, 2011, between Sabco Oil and Gas Corporation, as Assignor/and Chevron U.S.A. Inc., as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein |
| Land | 5/31/2011 | Tolling Agreement | Tolling Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 31 May 2011 and as extended by (a) 1st Extension dated 30 Jun 2012 (b) 2nd Extension dated 30 Sept 2012 |
| Land | 6/3/2011 | Notice | Apache Notice Letter, dated June 3, 2011, non-consented EB 159 #A-9 Well, Thru Tubing Gravel Pack GM 2-2. |
| Land | 8/1/2011 | ABOS | ABOS eff. 8-1-2011 b/b XTO Offshore Inc. ("Assignor") and Dynamic Offshore Resources, LLC ("Assignee") |
| Land | 8/25/2011 | PARTICIPATION AGREEMENT | PARTICIPATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| Land | 3/20/2012 | Notice | Chevron's Notice to Apache Letter, dated March 20, 2012, EB 159 #A-I5 Well (GM-2-2 Sand) conductor removal. |
| Land | 4/27/2012 | PHA | Production Handling Agreement dated August 1, 2009 between SPN Resources, LLC and Moreno Offshore Resources, L.L.C., Platform Owners, and Helis Oil & Gas Company, L.L.C., et al, Producers; as amended by agreement on April 27, 2012. |
| Land | 5/1/2012 | CONDENSATE TRANSPORT & SEPARATION AGREEMENT | CONDENSATE TRANSPORT & SEPARATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| Land | 6/1/2012 | PSA | Ratification of Purchase and Sale Agreement by Holders of Preferential Right to Purchase, dated effective June l , 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc. and Dynamic Offshore Resources, LLC, as Preferential Right Purchasers, affecting that certain Purchase and Sale Agreement, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc., as Buyer. |
| Land | 6/1/2012 | ABOS | Conveyance, Assignment and Bill of Sale, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Assignor, and Chevron U.S.A. be. and Dynamic Offshore Resources, LLC, as Assignees, covering an undivided 0.83922% right, title and.interest in certain property described in Exhibit "A" attached thereto, assigning 75.247% thereof to Chevron (0.63149% net) and 24.753% thereof to Dynamic (0.207.73%.net). |

| Land | 6/27/2012 | PSA | Purchase and Sale Agreement, dated June 27, 2012 but made effective June 1 , 2012, between Key Production Company, Inc,,. as'Seller, and Chevron U.S.A. Inc., as Buyer, covering all of Seller's,right, title and interest in that certain Oil & Gas Lease bearing Serial No. OCS-G 448,1, ), together with Seller's interest in certain wells, facilities, pipelines, equipment contracts, etc, all as more.fully described therein. |
|------|-----------|-----|------|
| Land | 8/1/2012 | Throughput Capacity Lease Agreement | Fieldwood leases capacity to Arena for Barnacle Pipeline |
| Land | 11/30/2012 | Permit Agmt(incl Seismic) | Seismic Reprocessing and Data Use Agreement by and between Noble Energy, Inc and Apache Deepwater LLC dated 30 Nov 12 |
| Land | 2/6/2013 | Letter Agreement | Letter Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 6 Feb 2013 re system upgrades |
| Land | 3/15/2013 | Exploration Venture | Exploration Venture for portions of VR 271 SM 87 by and between Fieldwood Energy Offshore LLC, Apache Corporation and Pisces Energy LLC |
| Land | 5/1/2013 | Transportation Agreement | Transportation Agreement by and between Dynamic Offshore Resources NS, LLC, W&T Offshore, Inc., Hall-Houston Exploration IV, L.P., GOM Offshore Exploration I, LLC and PetroQuest Energy, LLC |
| Land | 7/1/2013 | Acquisition | PURCHASE AND SALE AGREEMENT by and among APACHE CORPORATION,APACHE SHELF, INC., and APACHE DEEPWATER LLC collectively as the Sellers, and FIELDWOOD ENERGY LLCas Buyer and GOM SHELF LLC Dated as of July 18, 2013 |
| Land | 7/1/2013 | Acquisition | Acquistion by and between Fieldwood Energy LLC and Callon Petroleum Operating Co. |
| Land | 9/12/2013 | Amendemnbt of Exhibit "D" to Unit Operating Agreement | Amends UOperating Agreement dated 04/13/1984 as amended 09/08/2011 |
| Land | 9/30/2013 | Acquisition | Purchased GOM Shelf as a company from Apache |
| Land | 10/7/2013 | Election Letter Agreement PL 13 007 ST2 Well | Election Letter Agreement by and between Fieldwood Energy LLC and Enven Energy Ventures LLC |
| Land | 11/1/2013 | Purchase & Sale Agreement | Purchase and Sale Agreement by and between Noble Energy, Inc, Anadarko Petroleum, Anadarko US Offshore Corp and Eni Petroleum US LLC dated 1 Nov 13 as amended 21 July 2016 (but effective 1 Oct 14) |
| Land | 12/1/2013 | Acquisition | Equity Purchase Agreement between Sandridge Energy, Inc., Sandridge Holdings, Inc. and Fieldwood Energy LLC: Fieldwood purchased all companies listed with their assets which included Offshore and SandRidge Legacy South Texas and South Louisiana assets. |
| Land | 12/30/2013 | Withdrawal Agreement | Withdrawal Agreement by and between Fieldwood Energy LLC and Chevron U.S.A. Inc. |
| Land | 1/20/2014 | Letter Agreement | Letter Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 20 Jan 2014 re settlement of reallOperating Agreementction |
| Land | 3/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Black Elk Energy Offshore Operations, LLC: Leases where Fieldwood was the operator and Black Elk held interest. Exception is ST 53 where Black Elk was the Operator. |
| Land | 4/16/2014 | Settlment Agreement and Release | Settlement Agreementa and Release - SS 198/VR 369/VR 408/ SP 8/13 |
| Land | 4/21/2014 | Production Handling Agreement | For WD 27 "A" platform hadnling WD 28 production |
| Land | 4/28/2014 | Letter Agreement | Letter Agreement, dated April 28, 2014, between Chevron U.S.A. Inc. and Samson Contour Energy E&P, LLC, regarding Main Pass 77 Oil Imbalance Claim |
| Land | 5/16/2014 | Termination of Farmout Agreements | Terminates Farmouts dated 05.01.13 and 06.01.13 |
| Land | 6/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Davis Offshore L.P. |
| Land | 6/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC, NW Pipeline, Inc. and Northwestern Mutual Life Ins. Co:HIPS 13-III |
| Land | 7/25/2014 | Amendment and Ratification of Production Handling Agreement | Amend PHA for WD 27 "A" platform handling WD 28 production dated 04/21/14 |
| Land | 8/5/2014 | Purchase and Sale Agreement | Equity Purchase Agreement by and between Davis Petroleum Acquisition Corp, Davis Offshore Partners, LLc< and Davis Offshore, L.P. and Fieldwood Energy Offshore dated 5 Aug 2014 |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy SP LLC, Paul G. Hendershott and C. Gordon Lindsey: Conversion of NPI to ORI for the WD 79/80/85/86 - fields |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood SD Offshore LLC, Unocal Pipeline Companyand Union Oil Company of California : East Breaks 158/160 Fields |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC UNOCAL, and Chevron U.S.A. Inc. : GOM NOJV - Grand Isle/West Delta etc. |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Shell Offshore Inc.: Troika Unit - GC 244, 200, 201 |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Japex (U.S.) Corp.: WD 90 & WD 103 |
| Land | 1/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy SP LLC, Paul G. Hendershott and C. Gordon Lindsey, : Net Profits Interest |
| Land | 1/1/2015 | Confidential Mutual Release and Settlement Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC,  Fieldwood Energy SP LLC, Paul G. Hendershott and C. Gordon Lindsey, |
| Land | 1/1/2015 | Overriding Royalty Assignment | by and between  Fieldwood Energy Offshore LLC and Shell Ofnshore Inc: Overridign Royalty Assignment |
| Land | 1/13/2015 | Acquisition | by and between  Fieldwood Onshore LLC and Energy XXi Onshore, LLC: relative to (1) the transfer and ownership of certain existing leasehold rights, (2) the acquisition of additional leasehold rights, (3) the conduct of a 3-D geophysical survey and (4) the drilling, completion and operation of oil and/or gas wells relative to the lands outlined in Red on Exhibit "B" (the "Contract Area") |
| Land | 4/1/2015 | Assignment of Operating Rights Interest in Oil & Gas Lease | by and between  Fieldwood Energy Offshore LLC, Peregrine Oil & Gas, LLC RTR Fund I, L.P, and Hall-Houston Exploration II, L.P.: Assignment of Operating Rights Interest in Oil & Gas Lease - GA 151 Operating Rights |
| Land | 4/1/2015 | Production Handling Agreement | by and between  Bandon Oil and Gas, LP, Tana Exploration Company LLC, CSL Exploration LLC, GCER Offshore LLC and W&T Offshore, INC.: PHA |
| Land | 5/14/2015 | ORRI | Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of Stat Energy & Consulting, Inc dated May 14, 2015 |
| Land | 5/14/2015 | ORRI | Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of James A. Bibby dated May 14, 2015 |
| Land | 5/14/2015 | ORRI | Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of Clifford T. Crowe dated May 14, 2015 |
| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |

| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |
|---|---|---|---|
| Land | 7/1/2015 | Settlment Agreement and Release | by and between  Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI Petroleum US LLC and ENI US Operating Co. Inc.: SS 249 D-5 RIG incident |
| Land | 8/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc. : MP 77, 78 and VK 251, 252, 340   Fields |
| Land | 8/12/2015 | Pipeline Modification Agreement | Relative to pipelines near SS 208 Seg #1849 and #882 |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawl |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawl |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawl |
| Land | 9/16/2015 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 12/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC, ENI US Operating Inc,  and ENI Petroleum US LLC: GA 151, SS 246, SS 247, SS 248, SS 249, SS 270, SS 271, VR 78, VR 313, WC 72, WC 100, WC 130 |
| Land | 12/1/2015 | Release and Settlement Agreement | Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI US Operating Inc. and ENI Petrolem US LLC: Release and Settlement Agreement |
| Land | 12/18/2015 | Welll Operations Agreement | by and between Fieldwood Enegy Offshore LLC, Fieldwood Energy SP LLC, Arena Energy, LP, Arena Energy GP, LLC and Arena Energy Offshore, LP : WD 86 B-3 well |
| Land | 3/14/2016 | Completions Letter Agreement | by and between  Fieldwood Energy LLC and Whitney Oil & Gas, LLC: SP #37 #3 well dually completed and no longer economic for Feildwood |
| Land | 4/1/2016 | Divestiture | by and between  Fieldwood Energy Offshore LLC and Whitney Oil & Gas, LLC: Assignment of interest in the SP 37#3 J1 and J2 sands |
| Land | 4/1/2016 | Second Amendment of Production Handling Agreement | by and between  Fieldwood Energy Offshore LLC and Walter Oil & Gas Corporation : Second Amendment of Production Handling Agreement - East Breaks 165 A Platform |
| Land | 4/25/2016 | Release and Settlement Agreement | by and between  Fieldwood Energy LLC, Peregrine Oil & Gas, LP and Peregrine Oil & Gas II, LLC: Release and Settlement Agreement |
| Land | 7/1/2016 | Acquisition | by and between  Fieldwood Energy Offshore LLC and JOC Venture: SS 246 JOC Withdrawal |
| Land | 7/1/2016 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and All Aboard Development Corporation: Assignment All Aboard to Fieldwood |
| Land | 7/1/2016 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and JOC Venture: ABOS pursuant to JOC Venture withdrawal |
| Land | 8/8/2016 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture Withdrawal |
| Land | 9/13/2016 | Agreement for Payment of Insurance Charges | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C.: Fieldwood agrees to pay Monforte's insurance charges |
| Land | 12/14/2016 | Surrener of Interest Agreement | by and between  Fieldwood Energy LLC and All Aboard Development Corporation: All Aboard Development Corp. surrender of interest |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 3/1/2017 | Reinbursement Agreement | by and between Fieldwood Energy LLC, W & T Offshore, Inc., Renaissance Offshore LLC, Transcontinental Gas Pipe Line and Chevron U.S.A. Inc.: Transco Facilities Subseaq Modification - Shell owned ST 300 Platform |
| Land | 3/1/2017 | Reinbursement Agreement | by and between Fieldwood Energy LLC, W & T Offshore, Inc., Renaissance Offshore LLC, Transcontinental Gas Pipe Line and Chevron U.S.A. Inc.: Transco Facilities Subseaq Modification - Shell owned ST 300 Platform |
| Land | 3/30/2017 | Letter of No Objection | Fieldwood agreed to COX request/letter of no objectin to allow cox to produce its EI 64# 9 well. Fieldwood is the operator of SW/4 of EI 53 |
| Land | 1/1/2018 | Acquisition | by and between  Fieldwood Energy SP LLC and Knight Resources LLC: Acquisition of Knight's interest in the SS 252 #F-4 |
| Land | 1/2/2018 | Letter Agreement | by and between  Fieldwood Energy LLC and EXXI GOM, LLC: Governs particpation in WD 73 C-27 McCloud drill well |
| Land | 4/1/2018 | Purchase and Sale Agreement | Purchase and Sale agreement by and between Fieldwood Energy LLC and Marathon Oil Company dated 20 June 2018 and effective 1 April 2018 |
| Land | 4/11/2018 | F40 Cost Memorialization Agreement | by and between Fieldwood Energy LLC and EXXI GOM, LLC: WD 73 C-27 Well McCloud F-40 Reservoir  memorialization of drilling costs, etc. |

| Land | 4/11/2018 | West Delta 73 C-27 "MCCLOUD" F-40 Sand Reservoir A | by and between Fieldwood Energy LLC and Energy XXI GOM, LLC: West Delta 73 C-27 "MCCLOUD" F-40 Sand Reservoir A - Letter Agreement |
|---|---|---|---|
| Land | 5/21/2018 | Consent to Assign | Consent to Assignment by and Between Fieldwood Energy, Noble Energy and Eni Petroleum 21 May 2018 governing transition from NBL to Fieldwood Ownership of Neptune |
| Land | 5/22/2018 | Consent to Assign | Consent to Assignment by and Between Fieldwood Energy, Noble Energy and Anadarko Petroleum Corporation dated 22 May 2018 governing transition from NBL to Fieldwood Ownership of Neptune |
| Land | 8/1/2018 | Acquisition | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech's Interest in the SS 271 Unit (SS 247,248,249) |
| Land | 8/1/2018 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdraws from SS 271 Unit |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: ABOS pursuant to Entech Enterprises Withdrawal |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: ABOS pursuant to Entech Enterprises Withdrawal |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Enterprises withdrawal & settlmnet |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Enterprises withdrawal & settlmnet |
| Land | 9/18/2018 | Constuction and Operating Agreement for the Interconnect Pipeline | |
| Land | 12/5/2018 | Escrow Agreement | Escrow Agreement by and between Anadarko Offshore LLC, Eni Petroleum US LLC and Noble Energy, Inc dated 5 December 2013 and amended by that first amendment dated 5 Dec 2018 |
| Land | 12/10/2018 | Confidentiality Agreement | Confidentiality Agreement by and between Fielwood Energy LLC and Exxon Mobil Corporation |
| Land | 2/8/2019 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and Richard Schmidt, as Trustee for the Black Elk Litigation Trust and the Black Elk Liquidating Trust: Pursuant to that certain Stipulation and Agreed Order including Terra Point Petroleum LLC |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and ANKOR |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Sanare |
| Land | 4/30/2019 | CPHTA Extension Letter Agreement | by and between Fieldwood Energy Offshore LLC, ANKOR E&P Holding Corporation and Orinoco Natural Resources LLC :Ankors production from MC 21 processed at SP 60 |
| Land | 6/10/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and TRANSCONTINENTAL GAS PIPELINE COMPANY: Confidentiality Agreement: |
| Land | 7/1/2019 | Divestiture | by and between Fieldwood Energy LLC and Energy XXI GOM, LLC: Fieldwood Divestiture of WD 73 Field Interests in the F40 Sands |
| Land | 7/1/2019 | Farmout Agreement | By and between W & T Offshore, Inc. and Dynamic Offshore Resources NS, LLC and Peregrine Oil and Gas II, LLC and GOM Energy Venture I, LLC |
| Land | 7/1/2019 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and Energy XXI GOM, LLC: Assignment and Bill of Sale |
| Land | 7/1/2019 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and Energy XXI GOM, LLC: Assignment and Bill of Sale |
| Land | 7/2/2019 | Letter Agreement | By and between W & T Offshore, Inc. and Dynamic Offshore Resources NS, LLC and Peregrine Oil and Gas II, LLC and GOM Energy Venture I, LLC |
| Land | 8/28/2019 | CPHTA Extension Letter Agreement | Extension to 04/30/2019 Letter Agreement. Ankors production from MC 21 processed at SP 60 |
| Land | 11/1/2019 | Amendment No. 3 to CPHYA, PHA and Transportation Agreement | by and between Fieldwood Energy Offshore LLC and Fieldwood Energy Offshore LLC as Processor and ANKOR Energy LLC, ANKOR E&P Holdings Coporation, KOA Energy LP and Sanare Energy Partners, LLC as Producer |
| Land | 2/13/2020 | CPHTA Subsea Tie-in Deadline Extension Letter Agreement | by and between Sanare Energy Partners, Fieldwood Energy LLC, ANKOR E&P Holidngs Corporation and KOA Energy LP |
| Land | 4/23/2020 | CPHTA Subsea Tie-in Deadline Extension Letter Agreement | by and between Sanare Energy Partners, Fieldwood Energy LLC, ANKOR E&P Holidngs Corporation and KOA Energy LP |
| Land | 01/01/1994, 04/08/1994 | Unit Operating Agreement | U nit Operating Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Total Minatome Corporation, Energy Development Corporation, Murphy Exploration and Production Company and Anadarko Petroleum Corporation; and Forest Oil Corporation and Timbuck Company/The Hat Creek Production Company, Limited Partnership (referred to as "Override Parties") |
| PHA SP 60F/MC 21 | 4/29/2005 | CONSTRUCTION, PRODUCTION HANDLING AND TRANSPORTATION AGREEMENT | PHA by and between Fieldwood and ANKOR E&P HOLDINGS CORPORATION and ANKOR E&P HOLDINGS CORPORATION |
| PHA SM 278/SM 257 | 1/1/2008 | PRODUCTION HANDLING AGMT | PHA by and between Fieldwood and HELIS OIL & GAS CO and HELIS OIL & GAS CO |
| LEASE OF PLATFORM SPACE | 10/10/1984 | Platform Space Rental Agreement SMI 268A Platform10/01/2020 - 11/30/2021 | A-LOPS- SM268A by and between Fieldwood and American Panther, LLC and American Panther, LLC |
| LEASE OF PLATFORM SPACE | 10/25/1985 | Lease of Platform Space | ALOPS-WD86A by and between Fieldwood and Texas Eastern Transmission and Texas Eastern Transmission |
| LEASE OF PLATFORM SPACE | 9/1/1997 | 09/01/2020 - 8/30/2021 | A-LOPS-WD79A by and between Fieldwood and PANTHER AS COUNTRACT OPERATOR FOR VENICE GATHERING SYSTEM and PANTHER AS COUNTRACT OPERATOR FOR VENICE GATHERING SYSTEM |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-1 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-11 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-17 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-14 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |

| | | | |
|---|---|---|---|
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-21 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-27 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-26 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 9/1/1997 | LEASE OF PLATFORM SPACE | VEN104-LOPS by and between Fieldwood and Panther as Contract Operator for Venice Gathering System and Panther as Contract Operator for Venice Gathering System |
| LEASE OF PLATFORM SPACE | 4/15/1968 | LEASE OF PLATFORM SPACE | KIN129-LOPS by and between Fieldwood and KINETICA DEEPWATER EXPRESS, LLC and KINETICA DEEPWATER EXPRESS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC                and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC                and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC                and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC                and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and TANA EXPLORATION COMPANY LLC and TANA EXPLORATION COMPANY LLC |
| PRODUCTION HANDLING AGMT (JIB) | 1/31/2005 | PRODUCTION HANDLING AGREEMENT(NEPTUNE)Swordfish Producers | VK826NEP by and between Fieldwood and Apache Deepwater LLC and Apache Deepwater LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 7/18/2002 | PRODUCTION HANDLING AGREEMENT | HI A-582  by and between Fieldwood and Cox Operating, LLC and Cox Operating, LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 11/14/1996 | PRODUCTION HANDLING AGREEMENT | EC 349 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | SS 315A3/ST 314 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | SS 315A3/ST 314 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/13/1996 | PRODUCTION HANDLING AGREEMENT | SS 300 B/SS301 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 5/5/2009 | PRODUCTION HANDLING AGREEMENT | SS 189 C-1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 8/1/2005 | Gas Gathering Agreement | DIGS Gatheiring Agreement for Swordfish-Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | Gas Gathering Agreement | DIGS Gatheiring Agreement for Swordfish-Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | Gas Gathering Agreement | DIGS Gatheiring Agreement for Swordfish-Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 2/1/2019 | Pool Agreement | Pool Agreement by and between Fieldwood Energy LLC and Gulf South Pipeline Company, LP and Gulf South Pipeline Company, LP |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 8/7/2009 | IT Transport Contract - "IT Discount Life of Reserves" | Stingray - WC 485, WC 507 5.13 discount Life Of Reserve Dedicaiton by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 10/1/2019 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy LLC and Venice Gathering and Venice Gathering |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 4/1/2010 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy Offshore, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/12013 | IT PR Transport Contract | Searobin West PTR Transprt, max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011, disoucnt letter 9/16/2011 | IT-PTR Transport plus discount letter letter | Searobin WestIT PTR Contract for Discount SMI 142 and SMI 140 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011 | IT Transport Contract | Searobin West Pipeline - sandridge /Dynamic IT transport plus Discount letter for SMI 142 and SMI 40 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011 | IT-Retrograde Transport | SearobinWest Pipeline - sandridge /Dynamic IT Retrograde by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2008 | Gas Gathering Agreement-Amendment | DIGS Gathering Agreement for Swordfish-Neptune - Amendment adds Burlington Resources WI by and between Fieldwood Energy LLC and DCP Midstream, Daulphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2008 | Gas Gathering Agreement-Amendment | DIGS Gathering Agreement for Swordfish-Neptune - Amendment adds Burlington Resources WI by and between Fieldwood Energy LLC and DCP Midstream, Daulphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2008 | Gas Gathering Agreement-Amendment | DIGS Gathering Agreement for Swordfish-Neptune - Amendment adds Burlington Resources WI by and between Fieldwood Energy LLC and DCP Midstream, Daulphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement | DIGP - FT2 & Reserve Dedication - Swordfish Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement | DIGP - FT2 & Reserve Dedication - Swordfish Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement | DIGP - FT2 & Reserve Dedication - Swordfish Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |

Exhibit III-F

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement - Amendment | DIGP - FT2 & Reserve Dedication - Swordfish Neptune - Amendment Adds Burlington Resourses WI; plus 2 more amendments Revising MDQ by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement - Amendment | DIGP - FT2 & Reserve Dedication - Swordfish Neptune - Amendment Adds Burlington Resourses WI; plus 2 more amendments Revising MDQ by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement - Amendment | DIGP - FT2 & Reserve Dedication - Swordfish Neptune - Amendment Adds Burlington Resourses WI; plus 2 more amendments Revising MDQ by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/7/2009 | IT Transport Contract - "IT Discount Life of Reserves" | Stingray - WC 485, WC 507 $.13 discount Life Of Reserve Dedicaiton by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas-Transport | 12/18/1997 | FT - Transport | Venice Gatheing  Firm Transport with Disount $.05, WD 79 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Transport | 1/1/2001 | FT - Transport | Venice Gathering  Firm transport Max rate WD 79 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Gathering | 11/1/2006 | IT Transport | Venice Gathering, WD 39 Effective date 11/1/2006 WD 64 Effective 11/1/2010 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy Offshore LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy Offshore LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |

Exhibit III-F

| | | | |
|---|---|---|---|
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Ownership and Operating Agreement | 3/6/1974 | Construction and Operating Agreement for Onshore Separation Facility Cameron Parish, Louisiana  as amended | Provides for the construction and operation of the onshore separation facility which is connected to the facilites of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Strinay by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Ownership and Operating Agreement | 3/6/1974 | Construction and Operating Agreement for Onshore Separation Facility Cameron Parish, Louisiana  as amended | Provides for the construction and operation of the onshore separation facility which is connected to the facilites of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Strinay by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Construction and Operating Agreement | 10/22/1976 | Agreement for the Construction and Operation of the Blue Water Gas Plant Acadia Parish, Louisiana | Processing of Owners' gas all in accordance with agreements by and between Fieldwood Energy LLC and EnLink Midstream Operating, LP and EnLink Midstream Operating, LP |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Dynamic Offshore Resources, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Sandridge Offshore, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Sandridge Offshore, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline.  All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshoe LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshoe LLC and  and |
| Oil Purchase and Sale Agreement/Transport | 8/1/2018 | Oil Purchase and Sale Agreement between Fieldwood Energy Offshore LLC and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Memorandum of Agreement | 8/1/2020 | Memorandum of Agreement Between Fieldwood Energy Offshore LLC and Poseidon Oil Pipeline Company LLC | Memorandum of Agreement by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 6/1/2003 | Oil Gathering Agreement Between Westport Resources Corporation Noble Energy Inc M | Crude Oil Transport.  by and between Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC |

| | | | |
|---|---|---|---|
| Oil Purchase and Sale Agreement/Transport | 7/15/2003 | Oil Purchase and Sale Agreement Between Westport Resources Corporation Mariner Energy Inc Noble Energy Inc and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 7/1/2005 | Oil Gathering Agreement | Crude Oil Transport.  by and between Fieldwood Energy LLC and Main Pass Oil Gathering Company and Main Pass Oil Gathering Company |
| Oil Gathering Agreement | 7/1/2005 | Oil Gathering Agreement | Crude Oil Transport.  by and between Fieldwood Energy LLC and Main Pass Oil Gathering Company and Main Pass Oil Gathering Company |
| Oil Gathering Agreement | 7/1/2005 | Oil Gathering Agreement | Crude Oil Transport.  by and between Fieldwood Energy LLC and Main Pass Oil Gathering Company and Main Pass Oil Gathering Company |
| Reimbursement Agreement | 1/21/2019 | Pigging Service Reimbursement Agreement | Reimbursement Agreement by and between Fieldwood Energy LLC and Main Pass Oil Gatherind LLC and Main Pass Oil Gatherind LLC |
| Reimbursement Agreement | 1/21/2019 | Pigging Service Reimbursement Agreement | Reimbursement Agreement by and between Fieldwood Energy LLC and Main Pass Oil Gatherind LLC and Main Pass Oil Gatherind LLC |
| Reimbursement Agreement | 1/21/2019 | Pigging Service Reimbursement Agreement | Reimbursement Agreement by and between Fieldwood Energy LLC and Main Pass Oil Gatherind LLC and Main Pass Oil Gatherind LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |

| | | | |
|---|---|---|---|
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Oil Liquids Transportation Agreement for Bluewater System | 10/22/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 4/1/2004 | Liquids Transportation Agreement #51051 dated 4/1/2004 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51051 dated 4/1/2004 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |

Exhibit III-F

| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
|---|---|---|---|
| Oil Liquids Amendment No. 6 | 1/1/2007 Original Contract; Amendment Effective 1/1/2007 | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | 8/1/1992, Amendment Effective 1/1/2007 | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation | 3/3/2011 | Associated Liquids Transportation Agreement #117842 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Deepwater Express, LLC and Kinetica Deepwater Express, LLC |
| Oil Liquids Transportation | 3/3/2011 | Associated Liquids Transportation Agreement #117842 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Deepwater Express, LLC and Kinetica Deepwater Express, LLC |
| Oil Liquids Transportation | 11/1/2012 Amendment Date: 8/1/2014 | Amendment No. 1 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Deepwater Express, LLC and Kinetica Deepwater Express, LLC |
| Oil Amendment transferring from Apache to Fieldwood Energy LLC | 12/1/2013 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquid Handling Agreement | 5/1/2008 | Liquid Handling Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement | 3/1/2011 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement to transfer from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/1/2012 amended 12/1/2013 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement transferring from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/2/2010 amended effective 12/1/2014 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement transferring from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/2/2010 amended effective 12/1/2014 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Block on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Transporation Agreement | 1/1/2015 | Second Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

Exhibit III-F

| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
|---|---|---|---|
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 5/1/2001 | Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 5/1/2001 | Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transportation Agreement | Start date 12/1/2013-End Date 1/1/2200 | Rate Schedule ITS Interruptible Transportation Service | Liquids Transportation Service by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transportation Agreement | Start date 5/1/2014-End date 1/1/2200 | Amendment to Interruptible Transportation Agreement | Liquids Transportation Service by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0064 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0065 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0066 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |

| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
|---|---|---|---|
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/14/2020 | STUSCO CONTRACT REF. NO. - CL69LP0062 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/14/2020 | STUSCO CONTRACT REF. NO. - CL69LP0062 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/14/2020 | STUSCO CONTRACT REF. NO. - CL69LP0062 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/13/2020 | STUSCO CONTRACT REF. NO. - CLP0003971 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/13/2020 | STUSCO CONTRACT REF. NO. - CLP0003971 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 1/31/2014 | Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/30/2014 | Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |

| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
|---|---|---|---|
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales/Purchase | 6/1/1998 | Crude Oil Purchase and Sale Agreement | Producers sell Crude Oil to Questor and Questor purchases Crude Oil from Producers. Producers buy back a volume of Crude Oil at HIPS Segment III tie-in equal to their monthly production sold to Questor at the Platform. by and between Fieldwood Energy LLC and Questor Pipeline Venture and Questor Pipeline Venture |
| MARKETING - GAS PROCESSING | 10/22/1976 | CONSTRUCTION/OPERATING | Agreement for the Construction and Operation of the Blue Water Gas Plant, Acadia Parish, Louisiana by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 7/1/2019 | PROCESSING-FEE | between $.15 /mmbtu to $.10 /mmbtu depending on volume esc by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC and Arrowhead Louisiana Pipeline, LLC |
| MARKETING - GAS PROCESSING | 7/1/2019 | PROCESSING-FEE | between $.15 /mmbtu to $.10 /mmbtu depending on volume esc by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC and Arrowhead Louisiana Pipeline, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | PROCESSING-Greater of Fee or POL | 80%/20% POL with a minimum $.13 /MMBtu by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 12/1/2010 | 1st AMENDMENT | 80%/20% POL with a minimum $.13 /MMBtu by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 11/5/2004 | LETTER AGREEMENT- PROCESSING-FEE | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 2/1/2004 | LETTER AGREEMENT- PROCESSING-FEE | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 9/1/2004 | 1st AMENDMENT PROCESSING-FEE | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 8/1/2004 | LETTER AGREEMENT- PROCESSING-FEE | PTR KEEP WHOLE-fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 8/1/2005 | GAS PROCESSING / CONDITIONING AGREEMENT | GPM: <2=80%, 2-3=82.5% by and between Fieldwood Energy LLC and DCP Midstream, DCP Mobile Bay Processing, LLC and DCP Midstream, DCP Mobile Bay Processing, LLC |
| MARKETING - GAS PROCESSING | 8/1/2005 | GAS PROCESSING / CONDITIONING AGREEMENT | GPM: <2=80%, 2-3=82.5%, >3=85% by and between Fieldwood Energy LLC and DCP Midstream, DCP Mobile Bay Processing, LLC and DCP Midstream, DCP Mobile Bay Processing, LLC |
| MARKETING - GAS PROCESSING | 1/8/2019 | GAS PROCESSING AGREEMENT-FEE | $.16 /MMBTU (escl) plus electricity fee by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/8/2019 | GAS PROCESSING AGREEMENT-FEE | $.16 /MMBTU (escl) plus electricity fee by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 5/1/2009 | PROCESSING AGREEMENT-GREATER of Fee or POL | 92/8% or $.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 6/29/2010 | PROCESSING AGREEMENT AMENDMENT-GREATER of Fee or POL | 92/8% or $.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 10/1/2010 | PROCESSING AGREEMENT-GREATER of Fee or POL | GPM: <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |

| | | | |
|---|---|---|---|
| MARKETING - GAS PROCESSING | 11/1/2010 | PROCESSING AGREEMENT- 1ST AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 7/24/2012 | PROCESSING AGREEMENT- 2ND AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 7/1/2011 | GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/1/2012 | FIRST AMENDMENT - GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 7/1/2011 | GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/19/2012 | FIRST AMENDMENT - GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/19/2012 | GAS PROCESSING AGREEMENT-POL | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/19/2012 | GAS PROCESSING AGREEMENT-POL | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 2/17/2014 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 2/17/2014 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 11/9/2004 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/8/2007 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 4/1/2010 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/12/2011 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 4/1/2011 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/16/2004 | GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/16/2004 | GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/1/2005 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/1/2005 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/2009 | THIRD AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/2009 | THIRD AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/1970 | CONSTRUCTION/OPERATING (NI) | Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/1970 | CONSTRUCTION/OPERATING (NI) | Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/25/2014 | RATIFICATION AND ADOPTION OF C&O AGREEMENT | Ratificaton to the Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/25/2014 | RATIFICATION AND ADOPTION OF C&O AGREEMENT | Ratificaton to the Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/1998 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 1/1/1998 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2010 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2010 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2011 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2011 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2005 | POL -GAS PROCESSING AGREEMENT | POL DEPENDENT ON GPm by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2005 | POL -GAS PROCESSING AGREEMENT | POL DEPENDENT ON GPm by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2006 | POL -GAS PROCESSING AGREEMENT | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2011 | POL -GAS PROCESSING AGREEMENT-AMENDMENT | POL DEPENDENT ON GPM PLU FEE - 77%/23% -$.12026 by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 3/15/2020 | GREATER OF FEE OR POL - GAS PROCESSING AGREEMENT | GREATER OF FEE OR POL 85%/15% OR $.15 / MMBTU PLUS dgs FEE by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 1/1/2012 | FEE GAS PROCESSING AGREEMENT | FEE - .08005 /MCF (SUBJECT TO gdp (NEVER LESS THAT .075 OR GRATER THAN $.12 /MCF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/2012 | FEE GAS PROCESSING AGREEMENT | FEE - .08005 /MCF (SUBJECT TO gdp (NEVER LESS THAT .075 OR GRATER THAN $.12 /MCF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |

| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
|---|---|---|---|
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcf by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/1/2012 | POL- GAS PROCESSING AGREEMENT | pol 85% 15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/1/2012 | Gas processing Raw make purchase | Gas processing Raw make purchase  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Environmental/Govt | 6/24/2019 | Master Services Contract | – IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 10/2/2019 | Software License Agreement | IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 11/19/2018 | Master Service Contract | Regulatory |
| Environmental/Govt | 11/1/2013 | Master Services Contract | Platform Audits / BSEE Drawings |
| Environmental/Govt | 10/30/2019 | Master Client Agreement | Industry Standards, Analytics, and Research / Subscription Service |
| Environmental/Govt | 11/15/2019 | Order Form | Industry Standards, Analytics, and Research / Subscription Service |
| Land | 4/1/1981 | Unit Agreement No. 14-08-001-20231 | Unit Agreement for the C-6/JS Sand, effective April 1,1981, between. Arco Oil and Gas,Company;,Getty Oil Company, Cities Service Company, Hamilton Brothers Oil Company, Mobil Oil. Exploration &>. Producing S.E. Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt; Industries, and Prosper Energy Corporation.; Unit No. 891020231 |

**Exhibit III-G**

None

Exhibit III-H

Cash and other balances to be determined at effective date

**Surety Bonds in favor of FWE Survivor:**

| DATE | BOND NO. | Amount | Lease | PARTIES | SURETY | BENEFICIARY |
|------|----------|--------|-------|---------|--------|-------------|
| 10/17/18 | SUR0049418 | $631,130 | ROW OCS-G16039 | Talos Gulf Coast Offshore LLC; W&TOffshore Inc.; Bandon Oil and Gas, LP | Argonaut Insurance Company | Bandon Oil and Gas, LP |
| 10/17/18 | SUR0049419 | $3,455,326 | OCS-G 11881 | Talos Gulf Coast Offshore LLC; W&TOffshore Inc.; Bandon Oil and Gas, LP | Argonaut Insurance Company | Bandon Oil and Gas, LP |
| 2/13/18 | 1149839 | $500,000 | OCS-G19760 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149840 | $50,000 | OCS-G19761 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |

**Exhibit 5A**
*Attachment to Plan of Merger (Exhibit 5)*

**Certificate of Merger (TX) (FWE)**

# CERTIFICATE OF MERGER
## (DOMESTIC ENTITY DIVISIONAL MERGER)
## OF
## FIELDWOOD ENERGY LLC

**[●], 2021**

Pursuant to Title 1, Chapter 10 and Title 3 of the Texas Business Organizations Code (the "TBOC"), the undersigned, Fieldwood Energy, LLC, a Texas limited liability company ("FWE"), submits this certificate of merger for the purpose of dividing itself into a surviving domestic entity and one new domestic entity, and hereby certifies the following:

FIRST:  The name of the domestic filing entity that is dividing itself is Fieldwood Energy, LLC.

SECOND:  The principal place of business of FWE is 2000 W Sam Houston Pkwy S #1200, Houston, TX 77042.

THIRD:  The filing number issued to FWE by the Secretary of State of the State of Texas is [●][1].

FOURTH:  FWE is organized as a limited liability company.

FIFTH: FWE shall survive the merger and shall maintain its separate existence and continue as a filing entity under the name "Fieldwood Energy III LLC" ("FWE III").

SIXTH:  In lieu of providing the plan of merger, the filing entity certifies that:

(i)  An executed copy of the Agreement and Plan of Merger, dated as of [●], 2021 (the "Plan of Merger"), of FWE is on file at the principal place of business of each surviving and new domestic entity provided in this form.

(ii)  On written request, a copy of the Plan of Merger will be furnished without cost by each surviving or new domestic entity to any member of any domestic entity that is a party to or created by the Plan of Merger, and any creditor or obligee of the parties to the merger at the time of the merger if a liability or obligation is then outstanding.

SEVENTH:  The certificate of formation of FWE shall continue to be the certificate of formation of FWE following the merger, provided that the certificate of formation of FWE shall be amended to change the name of such entity to "Fieldwood Energy III, LLC".

EIGHTH:  The name, jurisdiction of organization, principal place of business address, and entity description of the entity to be created pursuant to the plan of merger are set forth

---

[1] **Note to Draft**:  to be assigned upon conversion of FWE to a Texas LLC.

below. The certificate of formation of the new domestic filing entity to be created is being filed with this certificate of merger.

Name:  Fieldwood Energy I LLC

Entity Description:  limited liability company

Jurisdiction of Organization:  Texas

Principal place of business: [●].

NINTH:  The Plan of Merger has been approved, adopted, certified, executed and acknowledged as required by the TBOC and the governing documents of the filing entity.

TENTH:  This document shall be effective when the document is accepted and filed by the Secretary of State of the State of Texas.

ELEVENTH:  In lieu of providing the tax certificate, FWE III shall continue to be liable for the payment of all required franchise taxes of FWE III.

\*   \*   \*   \*   \*   \*

2

IN WITNESS WHEREOF, the undersigned has caused this certificate of merger to be duly executed as of the date first set forth above.

**FIELDWOOD ENERGY, LLC**
a Texas limited liability company

By: _____

Name: _____

Title: _____

**Exhibit 5B**
*Attachment to Plan of Merger (Exhibit 5)*

**Certificate of Formation (TX) (Fieldwood Energy I LLC)**

**Form 205**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee:  $300**



This space reserved for office use.

**Certificate of Formation**
**Limited Liability Company**

## Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company.  The name of the entity is:

FIELDWOOD ENERGY I LLC

The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

## Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete <u>either</u> A or B and complete C.)

☒  A.  The initial registered agent is an organization (cannot be entity named above) by the name of:

**OR**

CAPITOL CORPORATE SERVICES, INC.

☐  B.  The initial registered agent is an individual resident of the state whose name is set forth below:

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|

C.  The business address of the registered agent and the registered office address is:

| 206 E. 9TH STREET, SUITE 1300 | AUSTIN | TX | 78701 |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

## Article 3—Governing Authority
(Select and complete <u>either</u> A or B and provide the name and address of each governing person.)

☒  A.  The limited liability company will have managers. The name and address of each initial manager are set forth below.

☐  B.  The limited liability company will not have managers.  The company will be governed by its members, and the name and address of each initial member are set forth below.

| **GOVERNING PERSON 1** |
|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) |
|     **IF INDIVIDUAL** |

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|

**OR**
**IF ORGANIZATION**

*Organization Name*
**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|

Form 205                                    4

| GOVERNING PERSON 2 |
| --- |

**NAME** (Enter the name of either an individual or an organization, but not both.)

    **IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
| --- | --- | --- | --- |

**OR**

    **IF ORGANIZATION**

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
| --- | --- | --- | --- | --- |

| GOVERNING PERSON 3 |
| --- |

**NAME** (Enter the name of either an individual or an organization, but not both.)

    **IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
| --- | --- | --- | --- |

**OR**

    **IF ORGANIZATION**

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
| --- | --- | --- | --- | --- |

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

### Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

The entity is formed pursuant to a plan of merger.  The name of the merging entity is Fieldwood Energy LLC.

The address of the converting entity is  2000 W. Sam Houston Pkwy. S., Suite 1200, Houston, Texas 77042.

The merging entity was formed on 11/5/2012 under the laws of the State of Delaware, USA.

The merging entity was previously a Delaware limited liability company. The merger entity converted to a Texas limited liability company on [___]/[___]/2021.

## Organizer

The name and address of the organizer:

_____
*Name*

_____
*Street or Mailing Address*                    *City*              *State*      *Zip Code*

## Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☒ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

the filing of the certificate of merger of Fieldwood Energy LLC with the Secretary of State of Texas.

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date: _____

_____
Signature of organizer

_____
Printed or typed name of organizer

| Print | Reset |

**Exhibit 6**

**Fieldwood Energy I LLC Agreement**

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## FIELDWOOD ENERGY I LLC

*(a Texas Limited Liability Company)*

**[●], 2020**

**THE MEMBERSHIP INTERESTS REFERENCED IN THIS LIMITED LIABILITY COMPANY AGREEMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY APPLICABLE STATE SECURITIES LAWS. SUCH MEMBERSHIP INTERESTS MAY NOT BE SOLD, ASSIGNED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF AT ANY TIME WITHOUT EFFECTIVE REGISTRATION UNDER SUCH ACT AND LAWS OR EXEMPTION THEREFROM, AS WELL AS COMPLIANCE WITH THE OTHER SUBSTANTIAL RESTRICTIONS ON TRANSFERABILITY THAT ARE SET FORTH HEREIN.**

# TABLE OF CONTENTS

**ARTICLE I     DEFINITIONS** ........................................................................................1

    **Section 1.01     Definitions** .................................................................................1
    **Section 1.02     Interpretation** .........................................................................11

**ARTICLE II     ORGANIZATION** .................................................................................12

    **Section 2.01     Formation** ................................................................................12
    **Section 2.02     Name** .......................................................................................12
    **Section 2.03     Principal Office** ......................................................................12
    **Section 2.04     Registered Office; Registered Agent** ....................................12
    **Section 2.05     Purposes; Powers** ...................................................................13
    **Section 2.06     Term** .......................................................................................14

**ARTICLE III     CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS** ..........................14

    **Section 3.01     Initial Capital Contributions** ...............................................14
    **Section 3.02     Additional Capital Contributions** .........................................14
    **Section 3.03     Maintenance of Capital Accounts** .........................................14
    **Section 3.04     Succession Upon Transfer** .....................................................15
    **Section 3.05     Negative Capital Accounts** ....................................................15
    **Section 3.06     No Withdrawals from Capital Accounts** .................................15
    **Section 3.07     Treatment of Loans from Members** .......................................15
    **Section 3.08     Modifications** .........................................................................15

**ARTICLE IV     MEMBERS** ..........................................................................................15

    **Section 4.01     No Personal Liability** .............................................................15
    **Section 4.02     No Withdrawal** .......................................................................16
    **Section 4.03     No Interest in Company Property** ..........................................16
    **Section 4.04     Certification of Membership Interests** ..................................16
    **Section 4.05     Meetings of Members** .............................................................16
    **Section 4.06     Action Without Meeting** ........................................................17
    **Section 4.07     Power of Members** .................................................................18
    **Section 4.08     Similar or Competitive Activities; Business Opportunities** .................18

**ARTICLE V     ALLOCATIONS** ...................................................................................18

    **Section 5.01     Allocation of Net Income and Net Loss** ................................18
    **Section 5.02     Regulatory and Special Allocations** ......................................18
    **Section 5.03     Tax Allocations** .....................................................................20
    **Section 5.04     Allocations in Respect of Transferred Membership Interests** ...............21

i

ARTICLE VI    DISTRIBUTIONS ..................................................................22

    Section 6.01    General ..........................................................................22
    Section 6.02    Tax Advances ................................................................22
    Section 6.03    Tax Withholding; Withholding Advances ................................23
    Section 6.04    Distributions in Kind .....................................................24

ARTICLE VII    MANAGEMENT ..................................................................25

    Section 7.01    Management of the Company ..........................................25
    Section 7.02    Independent Director ....................................................25
    Section 7.03    Sole Manager ................................................................26
    Section 7.04    Service Provider ............................................................26
    Section 7.05    Actions Requiring Independent Director Consent ...............27
    Section 7.06    Actions Requiring Apache Consent ...................................28
    Section 7.07    Compensation and Reimbursement of the Independent Director, the Sole Manager, the Service Provider and Fieldwood II ................................31
    Section 7.08    No Personal Liability ......................................................31
    Section 7.09    Funding Capital Expenditures ........................................31

ARTICLE VIII   TRANSFER ........................................................................32

    Section 8.01    General Restrictions on Transfer .....................................32

ARTICLE IX    EXCULPATION AND INDEMNIFICATION ..............................34

    Section 9.01    Exculpation of Covered Persons .....................................34
    Section 9.02    Liabilities and Duties of Covered Persons .........................35
    Section 9.03    Indemnification .............................................................36
    Section 9.04    Survival .........................................................................38

ARTICLE X    ACCOUNTING; TAX MATTERS ..........................................38

    Section 10.01   Financial Statements and Other Information .....................38
    Section 10.02   Inspection Rights ...........................................................39
    Section 10.03   Income Tax Status .........................................................39
    Section 10.04   Tax Matters Representative ............................................40
    Section 10.05   Tax Returns ..................................................................41
    Section 10.06   Company Funds .............................................................41

ARTICLE XI    WINDING UP AND TERMINATION ....................................42

    Section 11.01   Events Requiring Winding Up ..........................................42
    Section 11.02   Effectiveness of Termination ..........................................42
    Section 11.03   Liquidation ...................................................................42

ii

Section 11.04   Certificate of Termination..........................................................................43
Section 11.05   Survival of Rights, Duties, and Obligations.............................................44
Section 11.06   Recourse for Claims..................................................................................44

ARTICLE XII   MISCELLANEOUS..................................................................................44

Section 12.01   Expenses....................................................................................................44
Section 12.02   Further Assurances...................................................................................44
Section 12.03   Confidentiality..........................................................................................45
Section 12.04   Notices.......................................................................................................46
Section 12.05   Headings....................................................................................................47
Section 12.06   Severability...............................................................................................47
Section 12.07   Entire Agreement.....................................................................................47
Section 12.08   Successors and Assigns.............................................................................48
Section 12.09   No Third-Party Beneficiaries..................................................................48
Section 12.10   Amendment...............................................................................................48
Section 12.11   Waiver.......................................................................................................48
Section 12.12   Governing Law.........................................................................................48
Section 12.13   Submission to Jurisdiction.......................................................................48
Section 12.14   Waiver of Jury Trial................................................................................49
Section 12.15   Equitable Remedies..................................................................................49
Section 12.16   Attorney's Fees.........................................................................................49
Section 12.17   Remedies Cumulative...............................................................................49
Section 12.18   Counterparts.............................................................................................50

EXHIBIT A         FORM OF TRANSITION SERVICES AGREEMENT
SCHEDULE A        MEMBERS SCHEDULE
SCHEDULE B        INDEPENDENT DIRECTOR'S COMPENSATION
SCHEDULE C        SOLE MANAGER'S COMPENSATION
SCHEDULE D        ACCOUNTING PROCEDURES FOR APACHE OFFICERS AND
                  EMPLOYEES

EMF_US 81719156v10
#93633328v11

## LIMITED LIABILITY COMPANY AGREEMENT OF
## FIELDWOOD ENERGY I LLC

This Limited Liability Company Agreement of Fieldwood Energy I LLC, a Texas limited liability company (the "**Company**"), dated as of [●], 2020 (this "**Agreement**"), is entered into by and among the Company, the Initial Member[1] executing this Agreement as of the date hereof, and each other Person who after the date hereof becomes a Member of the Company and becomes a party to this Agreement by executing a joinder agreement in form and substance acceptable to the Company. Capitalized terms not defined where used in this Agreement shall have the meanings assigned to such terms in ARTICLE I of this Agreement.

## RECITALS

**WHEREAS,** the Company was formed under the laws of the State of Texas by the filing of a Certificate of Formation with the Secretary of State of the State of Texas on [●], 2020 (the "**Certificate of Formation**") for the purposes set forth in Section 2.05 of this Agreement;

**WHEREAS,** pursuant to and in accordance with the Confirmation Order and the Term Sheet, respectively, and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company will own (i) the Legacy Apache Properties subject to the operational liabilities in connection therewith, including plugging and abandonment and decommissioning liabilities relating to the Legacy Apache Properties, and (ii) the equity interests of GOM Shelf;

**WHEREAS,** in accordance with the Term Sheet, [●] has been appointed to serve as the initial Independent Director of the Company in accordance with this Agreement; and

**WHEREAS,** the Initial Member wishes to enter into this Agreement to set forth the terms and conditions governing the operation and management of the Company;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

**Section 1.01    Definitions.**  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in this Section 1.01:

"**Acceptance Notice**" has the meaning set forth in Section 7.09.

---

[1] NTD: Please confirm identity of Initial Member and the equity holders of the Initial Member.

"**Adjusted Capital Account Deficit**" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

(a)    crediting to such Capital Account any amount that such Member is obligated to restore or is deemed to be obligated to restore pursuant to Treasury Regulations Sections 1.704-1(b)(2)(ii)(c), 1.704-2(g)(1) and 1.704-2(i); and

(b)    debiting to such Capital Account the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6).

"**Adjusted Taxable Income**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year (or portion thereof) with respect to the Membership Interest held by such Member means the federal taxable income allocated by the Company to the Member with respect to its Membership Interest (as adjusted by any final determination in connection with any tax audit or other proceeding) for such Fiscal Year (or portion thereof); provided, that such taxable income shall be computed (i) minus any excess taxable loss of the Company for any prior period allocable to such Member with respect to its Membership Interest that were not previously taken into account for purposes of determining such Member's Adjusted Taxable Income in a prior Fiscal Year to the extent such loss would be available under the Code to offset income of the Member (or, as appropriate, the direct or indirect owners of the Member) determined as if the income and loss from the Company were the only income and loss of the Member (or, as appropriate, the direct or indirect owners of the Member) in such Fiscal Year and all prior Fiscal Years, and (ii) taking into account any special basis adjustment with respect to such Member resulting from an election by the Company under Code Section 754.

"**Affiliate**" means, with respect to any Person, any other Person who, directly or indirectly (including through one or more intermediaries), controls, is controlled by, or is under common control with, such Person. For purposes of this definition, "control," when used with respect to any specified Person, shall mean the power, direct or indirect, to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or partnership or other ownership interests, by contract or otherwise; and the terms "controlling" and "controlled" shall have correlative meanings. For the avoidance of doubt, neither Apache nor any of its Subsidiaries nor Fieldwood II nor any of its Subsidiaries shall constitute an Affiliate of the Company.

"**Agreement**" has the meaning set forth in the Preamble.

"**Apache**" means Apache Corporation, a Delaware corporation, and its successors or assigns.

"**Applicable Law**" means all applicable provisions of (a) constitutions, treaties, statutes, laws (including the common law), rules, regulations, decrees, ordinances, codes, proclamations, declarations, or orders of any Governmental Authority; (b) any consents or approvals of any Governmental Authority; and (c) any orders, decisions, advisory or interpretative opinions, injunctions, judgments, awards, decrees of, or agreements with, any Governmental Authority.

2

"**Approved Providers**" has the meaning set forth in Section 7.02(a).

"**BOC**" means the Texas Business Organizations Code, as amended and in effect at the time of this Agreement.

"**Book Depreciation**" means, with respect to any Company asset for each Fiscal Year, the Company's depreciation, amortization, or other cost recovery deductions determined for federal income tax purposes, except that if the Book Value of an asset differs from its adjusted tax basis at the beginning of such Fiscal Year, Book Depreciation shall be (a) if such difference is being eliminated by use of the remedial method under Treasury Regulations Section 1.704-3(d), the amount of book basis recovered for such period under the rules prescribed by Treasury Regulations Section 1.704-3(d)(2), or (b) if the remedial method is not used, an amount which bears the same ratio to such beginning Book Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; provided, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero and the Book Value of the asset is positive, Book Depreciation shall be determined with reference to such beginning Book Value using any permitted method selected by the Sole Manager in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g)(3).

"**Book Value**" means, with respect to any Company asset, the adjusted basis of such asset for federal income tax purposes, except as follows:

(a)     the initial Book Value of any Company asset contributed by a Member to the Company shall be the gross Fair Market Value of such Company asset as of the date of such contribution;

(b)     immediately before the distribution by the Company of any Company asset to a Member, the Book Value of such asset shall be adjusted to its gross Fair Market Value as of the date of such distribution;

(c)     the Book Value of all Company assets may, in the sole discretion of the Sole Manager, be adjusted to equal their respective gross Fair Market Values, as reasonably determined by the Sole Manager, as of the following times:

(i)     the acquisition of an additional Membership Interest in the Company by a new or existing Member in consideration for more than a *de minimis* Capital Contribution;

(ii)     the distribution by the Company to a Member of more than a *de minimis* amount of property (other than cash) as consideration for all or a part of such Member's Membership Interest in the Company; and

(iii)     the liquidation of the Company within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g);

(d)     the Book Value of each Company asset shall be increased or decreased, as the case may be, to reflect any adjustments to the adjusted tax basis of such Company asset

3

pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Account balances pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m); provided, that Book Values shall not be adjusted pursuant to this paragraph (d) to the extent that an adjustment pursuant to paragraph (c) above is made in conjunction with a transaction that would otherwise result in an adjustment pursuant to this paragraph (d); and

(e)     if the Book Value of a Company asset has been determined pursuant to paragraph (a) or adjusted pursuant to paragraphs (c) or (d) above, such Book Value shall thereafter be adjusted to reflect the Book Depreciation taken into account with respect to such Company asset for purposes of computing Net Income and Net Losses.

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in the State of Texas are authorized or required to close.

"**Capital Account**" has the meaning set forth in Section 3.03.

"**Capital Contribution**" means, for any Member, the total amount of cash and cash equivalents and the Book Value of any property contributed to the Company by such Member.

"**Certificate of Formation**" has the meaning set forth in the Recitals.

"**Certificate of Termination**" means a certificate to be filed upon completion of the winding up and liquidation of the Company as set forth in Section 11.04, which certificate shall be in the form required by § 11.101 of the BOC.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company**" has the meaning set forth in the Preamble.

"**Company Minimum Gain**" means "partnership minimum gain" as defined in Treasury Regulations Section 1.704-2(b)(2), substituting the term "Company" for the term "partnership" as the context requires.

"**Confidential Information**" has the meaning set forth in Section 12.03(a).

"**Confirmation Order**" means the confirmation order entered in Chapter 11 Case 20-33948, In re: Fieldwood Energy LLC, *et al*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in form and substance reasonably acceptable to Apache.

"**Continuance**" has the meaning set forth in Section 11.01.

"**Covered Person**" has the meaning set forth in Section 9.01(a).

"**Decommissioning Agreement**" means that certain Decommissioning Agreement, dated as of September 30, 2013, by and among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood Energy LLC and GOM Shelf LLC, as amended by (i) the First Amendment thereto dated as of September 30, 2013, (ii) the Second

Amendment thereto dated as of September 30, 2013, (iii) the Third Amendment thereto dated effective as of April 25, 2017, (iv) the Fourth Amendment thereto dated effective as of September 1, 2017, as amended by that certain Letter Agreement dated January 3, 2018, and (v) the Fifth Amendment thereto dated effective as of April 11, 2018.

"**Decommissioning Security**" means the funds available from Trust A, the letters of credit, and the bonds from time to time outstanding pursuant to the Decommissioning Agreement or documents or instruments related thereto.

"**Depletable Property**" means each separate oil and gas property as defined in Section 614 of the Code.

"**Divisive Merger Documents**" means the certificate of division, the plan of division, the certificate of merger, and other documents filed by or on behalf of Fieldwood with respect to the Company with the Texas Secretary of State related to the creation of the Company.

"**Electronic Transmission**" means any form of communication, including communication by use of or participation in one or more electronic networks or databases, not directly involving the physical transmission of paper that creates a record that may be retained, retrieved, and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

"**Equity Securities**" means any and all Membership Interests of the Company and any securities of the Company convertible into, exchangeable for, or exercisable for, such Membership Interests, and warrants or other rights to acquire such Membership Interests.

"**Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the Member's Tax Amount for such Fiscal Year as estimated in good faith from time to time by the Sole Manager. In making such estimate, the Sole Manager shall take into account amounts shown on Internal Revenue Service Form 1065 filed by the Company and similar state or local forms filed by the Company for the preceding taxable year and such other adjustments as the Sole Manager reasonably determines are necessary or appropriate to reflect the estimated operations of the Company for the Fiscal Year.

"**Excess Amount**" has the meaning set forth in Section 6.02(c).

"**Fair Market Value**" of any asset as of any date means the purchase price that a willing buyer having all relevant knowledge would pay a willing seller for such asset in an arm's length transaction, as determined in good faith by the Sole Manager on such factors as the Sole Manager, in the exercise of his or her reasonable business judgment, considers relevant.

"**Fieldwood**" means Fieldwood Energy LLC, a Texas limited liability company, and its successors and assigns (excluding, for the avoidance of doubt, the Company).

EMF_US 81719156v10
#93633328v11

"[**Fieldwood II**" means [Fieldwood Energy II LLC], a [Delaware] limited liability company][2], and its successors and assigns.

"**Fiscal Year**" means the calendar year, unless the Company is required to have a taxable year other than the calendar year, in which case Fiscal Year shall be the period that conforms to its taxable year.

"**GAAP**" means generally accepted accounting principles in the United States of America in effect from time to time; provided, that, notwithstanding any term or provision contained in this Agreement, GAAP will be deemed for all purposes hereof to treat leases that would have not been considered to be indebtedness in accordance with GAAP as in effect on December 31, 2017 (whether such leases were in effect on such date or are entered into thereafter) in a manner consistent with the treatment of such leases under GAAP as in effect on December 31, 2017, notwithstanding any modification or interpretative changes thereto or implementations of any such modifications or interpretative changes that may have occurred thereafter.

"**GOM Shelf**" means GOM Shelf LLC, a Delaware limited liability company, and its successors and assigns.

"**GOM Shelf Properties**" means those assets or properties owned by GOM Shelf.

"**Governmental Authority**" means any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations, or orders of such organization or authority have the force of law), or any arbitrator, court, or tribunal of competent jurisdiction.

"**Independent Director**" means, initially, [●], or such other Person as may be designated or become the Independent Director pursuant to the terms of this Agreement. The Independent Director shall constitute a "manager" (as that term is defined in the BOC) of the Company.

"**Information Notice**" has the meaning set forth in Section 7.09.

"**Initial Member**" has the meaning set forth in the term Member.

"**Farmout Agreement**" means that certain Farmout Agreement of even date herewith by and between the Company and Fieldwood II.

"**Legacy Apache Properties**" means the list of assets set forth on Schedule I to the Plan of Merger.

---

[2] NTD: Name to be confirmed.

6

"**Legacy Apache Properties PSA**" means that Purchase and Sale Agreement, dated as of July 18, 2013, between Apache and certain of its affiliates, Fieldwood and certain of its affiliates, and GOM Shelf, as such agreement has been amended.

"**Lien**" means any mortgage, pledge, security interest, option, right of first offer, encumbrance, or other restriction or limitation of any nature whatsoever.

"**Liquidator**" has the meaning set forth in Section 11.03(a).

"**Losses**" has the meaning set forth in Section 9.03(a).

"**Member**" means (a) each Person identified on the Members Schedule as of the date hereof as a Member and who has executed this Agreement or a counterpart thereof (each, an "**Initial Member**"); and (b) each Person who is hereafter admitted as a Member in accordance with the terms of this Agreement and the BOC, in each case so long as such Person is shown on the Company's books and records as the owner of Membership Interests. The Members shall constitute "members" (as that term is defined in the BOC) of the Company.

"**Member Nonrecourse Debt**" means "partner nonrecourse debt" as defined in Treasury Regulations Section 1.704-2(b)(4), substituting the term "Company" for the term "partnership" and the term "Member" for the term "partner" as the context requires.

"**Member Nonrecourse Debt Minimum Gain**" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if the Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Treasury Regulations Section 1.704-2(i)(3).

"**Member Nonrecourse Deduction**" means "partner nonrecourse deduction" as defined in Treasury Regulations Section 1.704-2(i), substituting the term "Member" for the term "partner" as the context requires.

"**Members Schedule**" has the meaning set forth in Section 3.01.

"**Membership Interest**" means an interest in the Company owned by a Member, including such Member's right (a) to its distributive share of Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company; (b) to its distributive share of the assets of the Company; (c) to vote on, consent to, or otherwise participate in any decision of the Members as provided in this Agreement; and (d) to any and all other benefits to which such Member may be entitled as provided in this Agreement or the BOC. The Membership Interest of each Member shall be expressed as a percentage interest and shall be as set forth on the Members Schedule.

"**Net Income**" and "**Net Loss**" mean, for each Fiscal Year or other period specified in this Agreement, an amount equal to the Company's taxable income or taxable loss, or particular items thereof, determined in accordance with Code Section 703(a) (where, for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or taxable loss), but with the following adjustments:

7

(f)     any income realized by the Company that is exempt from federal income taxation, as described in Code Section 705(a)(1)(B), shall be added to such taxable income or taxable loss, notwithstanding that such income is not includable in gross income;

(g)     any expenditures of the Company described in Code Section 705(a)(2)(B), including any items treated under Treasury Regulations Section 1.704-1(b)(2)(iv)(I) as items described in Code Section 705(a)(2)(B), shall be subtracted from such taxable income or taxable loss, notwithstanding that such expenditures are not deductible for federal income tax purposes;

(h)     any gain or loss (including Simulated Gain) resulting from any disposition of Company property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of the property so disposed, notwithstanding that the adjusted tax basis of such property differs from its Book Value;

(i)     any items of depreciation, amortization, and other cost recovery deductions with respect to Company property having a Book Value that differs from its adjusted tax basis shall be computed by reference to the property's Book Value (as adjusted for Book Depreciation) in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g);

(j)     if the Book Value of any Company property is adjusted as provided in the definition of Book Value, then the amount of such adjustment shall be treated as an item of gain or loss and included in the computation of such taxable income or taxable loss;

(k)     to the extent an adjustment to the adjusted tax basis of any Company property pursuant to Code Sections 732(d), 734(b) or 743(b) is required, pursuant to Treasury Regulations Section 1.704 1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis); and

(l)     any items which are specially allocated pursuant to Section 5.02 hereof shall not be taken into account in computing Net Income or Net Loss.  The amounts of the items of Company income, gain, loss or deduction available to be specially allocated pursuant to Section 5.02 hereof shall be determined by applying rules analogous to those set forth in subparagraphs (a) through (f) above.

"**Nonrecourse Deductions**" has the meaning set forth in Treasury Regulations Section 1.704-2(b).

"**Nonrecourse Liability**" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity.

8

"**Plan of Merger**" means the Agreement and Plan of Merger of Fieldwood Energy LLC into Fieldwood Energy I LLC and Fieldwood Energy III LLC, dated as of [●], 2021, and adopted by Fieldwood Energy LLC, a Texas limited liability company.

"**Plan of Reorganization**" means the plan of reorganization of Fieldwood that was included in, and was confirmed by, the Confirmation Order.

"**Qualified Person**" has the meaning set forth in Section 7.02(a).

"**Quarterly Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any calendar quarter of a Fiscal Year means the excess, if any of: (a) the product of (i) a quarter (1/4) in the case of the first calendar quarter of the Fiscal Year, half (1/2) in the case of the second calendar quarter of the Fiscal Year, three-quarters (3/4) in the case of the third calendar quarter of the Fiscal Year, and one (1) in the case of the fourth calendar quarter of the Fiscal Year and (ii) the Member's Estimated Tax Amount for such Fiscal Year; over (b) all distributions previously made during such Fiscal Year to such Member.

"**Recharacterization Mortgages**" has the meaning assigned to such term in Section 6.7 of the Decommissioning Agreement.

"**Regulatory Allocations**" has the meaning set forth in Section 5.02(f).

"**Rejection Notice**" has the meaning set forth in Section 7.09.

"**Related Party Agreement**" means any agreement, arrangement, or understanding between or among the Company or any of its Affiliates, on the one hand, and the Independent Director, the Sole Manager or any member or officer of the Company or any of its Affiliates, or any Affiliate of the Independent Director, the Sole Manager or any member or officer of the Company or any of its Affiliates; in each case, as such agreement may be amended, modified, supplemented, or restated in accordance with the terms of this Agreement.

"**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors or lenders, counsel, accountants, and other agents of such Person.

"**Restructuring Support Agreement**" means the Restructuring Support Agreement, dated as of August 4, 2020, by and among (i) Fieldwood Energy LLC, a Delaware limited liability company, and including the Fieldwood PSA Parties (as defined therein); (ii) the Consenting FLTL Lenders (as defined therein); (iii) the Consenting SLTL Lenders (as defined therein); and (iv) Apache.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations thereunder, which shall be in effect at the time.

"**Service Provider**" has the meaning set forth in Section 7.04.

"**Service Provider Agreement**" has the meaning set forth in Section 7.04.

"**Shortfall Amount**" has the meaning set forth in Section 6.02(b).

"**Simulated Basis**" means, with respect to each Depletable Property, the Book Value of such property.

"**Simulated Depletion**" means, with respect to each Depletable Property, a depletion allowance computed in accordance with U.S. federal income tax principles (as if the Simulated Basis of the property were its adjusted tax basis and using simulated cost depletion) and in the manner specified in Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2), provided that the Simulated Depletion with respect to a Depletable Property shall in no event exceed the Simulated Basis of such Depletable Property.

"**Simulated Gain or Loss**" means the simulated gain or loss computed with respect to a sale or other disposition of any Depletable Property pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2).

"**Sole Manager**" has the meaning set forth in Section 7.01.

"**Standby Facility**" means a secured line of credit to be provided by Apache to the Company and GOM Shelf to fund the ongoing plugging and abandonment and decommissioning of the Legacy Apache Properties and the GOM Shelf Properties, which shall become available to advance funds to the Company and for use in accordance with the Standby Facility Documentation. The Standby Facility shall be secured by a first-priority lien on all the assets of the Company (including all of the equity interests of GOM Shelf) and on all the GOM Shelf Properties, provided that such lien shall also secure the obligations of the Company to Apache under the Decommissioning Agreement.

"**Standby Facility Documentation**" means the Standby Loan Agreement, dated as of [●], 2020, by and between the Company and GOM Shelf, as borrowers, and Apache, as lender, and all of the other agreements, documents and instruments related thereto governing or setting forth terms and conditions of the Standby Facility or of the loans/borrowings made thereunder.

"**Subsidiary**" means, with respect to any Person, any other Person of which a majority of the outstanding shares or other equity interests having the power to vote for directors or comparable managers are owned, directly or indirectly, by the first Person.

"**Tax Advance**" has the meaning set forth in Section 6.02(a).

"**Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the product of (a) the Tax Rate for such Fiscal Year and (b) the Adjusted Taxable Income of the Member for such Fiscal Year with respect to its Membership Interest.

"**Tax Matters Representative**" has the meaning set forth in Section 10.04(a).

10

"**Tax Rate**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any period, means the highest effective marginal combined federal, state, and local tax rate applicable to an individual residing in Houston, Texas (or, if higher, a corporation doing business in Houston, Texas), taking into account (a) the character (for example, long-term or short-term capital gain, ordinary, or exempt) of the applicable income and (b) if applicable, the deduction under IRC Section 199A.

"**Taxing Authority**" has the meaning set forth in Section 6.03(b).

"**Term Sheet**" means that certain term sheet, dated July 31, 2020, among Fieldwood and certain of its Affiliates, on the one hand, and Apache and certain of its Affiliates, on the other hand.

"**Transfer**" means to, directly or indirectly, sell, transfer, assign, gift, pledge, encumber, hypothecate, or similarly dispose of, either voluntarily or involuntarily, by operation of law or otherwise, or to enter into any contract, option, or other arrangement or understanding with respect to the sale, transfer, assignment, gift, pledge, encumbrance, hypothecation, or similar disposition of, any Membership Interests owned by a Person or any interest (including a beneficial interest) in any Membership Interests owned by a Person. "**Transfer**" when used as a noun shall have a correlative meaning. "**Transferor**" and "**Transferee**" mean a Person who makes or receives a Transfer, respectively.

"**Transition Services Agreement**" means the transition services agreement in form and substance attached hereto as Exhibit A.

"**Treasury Regulations**" means the final or temporary regulations issued by the United States Department of Treasury pursuant to its authority under the Code, and any successor regulations.

"**Trust A**" means the Fieldwood Decommissioning Trust A, a Delaware statutory trust.

"**Withholding Advances**" has the meaning set forth in Section 6.03(b).

**Section 1.02   Interpretation.**  For purposes of this Agreement: (a) the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole.

The definitions given for any defined terms in this Agreement shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms.

Unless the context otherwise requires, references herein: (x) to Articles, Sections, Exhibits, and Schedules mean the Articles and Sections of, and Exhibits and Schedules attached to, this Agreement; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder.

This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

The Exhibits and Schedules referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

## ARTICLE II
## ORGANIZATION

**Section 2.01    Formation**.

(a)      The Company was formed on [●], 2020, pursuant to the provisions of the BOC, upon the filing, or constructive filing with the Divisive Merger Documents, of the Certificate of Formation with the Secretary of State of the State of Texas.

(b)      This Agreement shall constitute the "company agreement" (as that term is used in the BOC) of the Company.  The rights, powers, duties, obligations, and liabilities of the Members, the Sole Manager and the Independent Director shall be determined pursuant to the BOC and this Agreement.  To the extent that the rights, powers, duties, obligations, and liabilities of any Member, the Sole Manager or the Independent Director are different by reason of any provision of this Agreement than they would be under the BOC in the absence of such provision, this Agreement shall, to the extent permitted by the BOC, control.

**Section 2.02    Name.**  The name of the Company is "Fieldwood Energy I LLC" or such other name or names as may be designated by the Sole Manager; provided, that the name shall always contain the words "Limited Liability Company" or "Limited Company" or an abbreviation of one of those phrases.  Amendments to the Certificate of Formation or this Agreement to reflect any such name change may be made by the Sole Manager without the consent of the Members.  The Sole Manager shall give prompt notice to the Members of any change to the name of the Company and any related amendment to the Certificate of Formation or this Agreement.  The Company may conduct business under any assumed or fictitious name required by Applicable Law or otherwise deemed desirable by the Sole Manager.

**Section 2.03    Principal Office.**  The principal office of the Company is located at [●], or such other place as may from time to time be determined by the Sole Manager.  The Sole Manager shall give prompt notice of any such change to each of the Members and Apache.

**Section 2.04    Registered Office; Registered Agent.**

(a)      The registered office of the Company shall be the office of the initial registered agent named in the Certificate of Formation or such other office (which need not

12

be a place of business of the Company) as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

(b)     The registered agent for service of process on the Company in the State of Texas shall be the initial registered agent named in the Certificate of Formation or such other Person or Persons as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

**Section 2.05   Purposes; Powers.**

(a)     The purposes of the Company are to engage in the acquisition, disposition, ownership, operation, plugging and abandonment, and decommissioning of the Legacy Apache Properties and to cause GOM Shelf to engage in the acquisition, disposition, ownership, operation, plugging and abandonment, and decommissioning of the GOM Shelf Properties, and to engage in any and all activities necessary or incidental to the foregoing purposes.

(b)     At the date of this Agreement, the Company has no assets other than (i) the Legacy Apache Properties, including any accounts receivable associated with the Legacy Apache Properties accruing after the effective date of the Plan of Reorganization and any cash flow generated from the Legacy Apache Properties after the effective date of the Plan of Reorganization (such cash flow shall be reinvested and used to fund operating expenditures, to fund plugging and abandonment and decommissioning activities associated with the Legacy Apache Properties and the GOM Shelf Properties, to fund capital expenditures on the Legacy Apache Properties approved and authorized in accordance with this Agreement, and to repay amounts outstanding, if any, under the Standby Facility); (ii) 100% of the limited liability company interests or other equity interests in GOM Shelf; and (iii) the initial capitalization provided by Fieldwood pursuant to the divisive merger in an amount equal to $50 million *minus* the actual plugging and abandonment and decommissioning expenses incurred by Fieldwood between the date of its bankruptcy petition filing on August 3, 2020, and the effective date of the Plan of Reorganization.

(c)     At the date of this Agreement, the Company has no liabilities other than (i) operational liabilities accruing after the effective date of the Plan of Reorganization (including any accounts payable associated with the Legacy Apache Properties accruing after the effective date of the Plan of Reorganization), (ii) plugging and abandonment and decommissioning liabilities and obligations (A) relating to the Legacy Apache Properties and (B) of GOM Shelf relating to the GOM Shelf Properties, (iii) obligations under the Decommissioning Agreement and the Legacy Apache Properties PSA, and (iv) obligations under the Standby Facility Documentation.

(d)     The Company shall have all the powers necessary or convenient to carry out the purposes for which it is formed, including the powers granted by the BOC.

13

**Section 2.06   Term.**  The term of the Company commenced on the date the Certificate of Formation was filed with the Secretary of State of the State of Texas and shall continue in existence perpetually until the Company is terminated in accordance with the provisions of this Agreement.

## ARTICLE III
## CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS

**Section 3.01   Initial Capital Contributions.**  Contemporaneously with the execution of this Agreement, and pursuant to the Plan of Reorganization and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company shall have the property and assets identified in clauses (i) through (iii) in Section 2.05(b), which shall constitute the aggregate Capital Contributions made by the Initial Member.  The Initial Member shall own Membership Interests in the amount set forth opposite such Member's name on Schedule A attached hereto (the "**Members Schedule**").   From and after the date of this Agreement, the Sole Manager shall maintain and update the Members Schedule upon the issuance or Transfer of any Membership Interests to any new or existing Member in accordance with this Agreement.

**Section 3.02   Additional Capital Contributions.**  No Member shall be required to make any additional Capital Contributions to the Company.  Any future Capital Contributions made by any Member shall only be made with the consent of the Sole Manager and, in connection with an issuance of additional Membership Interests, made in compliance with Section 7.06(e).  To the extent that a Member makes an additional Capital Contribution to the Company, the Sole Manager shall revise the Members Schedule to reflect an increase in the Membership Interest of the contributing Member that fairly and equitably reflects the value of its additional Capital Contribution in relation to the aggregate amount of all Capital Contributions made by the Members.

**Section 3.03   Maintenance of Capital Accounts.**  The Company shall establish and maintain for each Member a separate capital account (a "**Capital Account**") on its books and records in accordance with this Section 3.03.  Each Capital Account shall be established and maintained in accordance with the following provisions:

(a)      Each Member's Capital Account shall be increased by the amount of:

(i)      such Member's Capital Contributions, including such Member's initial Capital Contribution and any additional Capital Contributions;

(ii)      any Net Income or other item of income or gain allocated to such Member pursuant to ARTICLE V; and

(iii)      any liabilities of the Company that are assumed by such Member or secured by any property distributed to such Member.

(b)      Each Member's Capital Account shall be decreased by:

(i)      the cash amount or Book Value of any property distributed to such Member pursuant to ARTICLE VI and Section 11.03(d);

14

(ii) the amount of any Net Loss or other item of loss or deduction allocated to such Member pursuant to ARTICLE V; and

(iii) the amount of any liabilities of such Member assumed by the Company or that are secured by any property contributed by such Member to the Company.

**Section 3.04   Succession Upon Transfer.**   In the event that any Membership Interests are Transferred in accordance with the terms of this Agreement, the Transferee shall succeed to the Capital Account of the Transferor to the extent it relates to the Transferred Membership Interests and, subject to Section 5.04, shall receive allocations and distributions pursuant to ARTICLE V, ARTICLE VI, and ARTICLE XI in respect of such Membership Interests.

**Section 3.05   Negative Capital Accounts.**   In the event that any Member shall have a deficit balance in its Capital Account, such Member shall have no obligation, during the term of the Company or upon termination or liquidation thereof, to restore such negative balance or make any Capital Contributions to the Company by reason thereof, except as may be required by Applicable Law or in respect of any negative balance resulting from a withdrawal of capital or termination in contravention of this Agreement.

**Section 3.06   No Withdrawals from Capital Accounts.**   No Member shall be entitled to withdraw any part of its Capital Account or to receive any distribution from the Company, except as otherwise provided in this Agreement.  No Member shall receive any interest, salary, or drawing with respect to its Capital Contributions or its Capital Account, except as otherwise provided in this Agreement.  The Capital Accounts are maintained for the sole purpose of allocating items of income, gain, loss, and deduction among the Members and shall have no effect on the amount of any distributions to any Members, in liquidation or otherwise.

**Section 3.07   Treatment of Loans from Members.**   Loans by any Member to the Company shall not be considered Capital Contributions and shall not affect the maintenance of such Member's Capital Account, other than to the extent provided in Section 3.03(a)(iii), if applicable.

**Section 3.08   Modifications.**   The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations Section 1.704-1(b) and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  If the Sole Manager determines that it is prudent to modify the manner in which the Capital Accounts, or any increases or decreases to the Capital Accounts, are computed in order to comply with such Treasury Regulations, the Sole Manager may authorize such modifications without the consent of any Member.

## ARTICLE IV
## MEMBERS

**Section 4.01   No Personal Liability.**   Except as otherwise provided in the BOC, by Applicable Law, or expressly in this Agreement, no Member will be obligated personally for any debt, obligation, or liability of the Company or other Members, whether arising in contract, tort,

15

or otherwise, including a debt, obligation, or liability under a judgment, decree, or order of a court, solely by reason of being a Member.

**Section 4.02 No Withdrawal.** So long as a Member continues to hold a Membership Interest, such Member shall not have the ability to withdraw or resign as a Member prior to the winding up and termination of the Company and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to the winding up and termination of the Company shall be null and void. As soon as any Person who is a Member ceases to hold a Membership Interest, such Person shall no longer be a Member.

**Section 4.03 No Interest in Company Property.** No real or personal property of the Company shall be deemed to be owned by any Member individually, but shall be owned by, and title shall be vested solely in, the Company. Without limiting the foregoing, each Member hereby irrevocably waives during the term of the Company any right that such Member may have to maintain any action for partition with respect to the property of the Company.

**Section 4.04 Certification of Membership Interests.**

(a) The Sole Manager may, but shall not be required to, issue certificates to the Members representing the Membership Interests held by such Member.

(b) In the event that the Sole Manager shall issue certificates representing Membership Interests in accordance with Section 4.04(a), then in addition to any other legend required by Applicable Law, all certificates representing issued and outstanding Membership Interests shall bear a legend substantially in the following form:

> THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO A LIMITED LIABILITY COMPANY AGREEMENT AMONG THE COMPANY AND ITS MEMBERS, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL EXECUTIVE OFFICE OF THE COMPANY. NO TRANSFER, SALE, ASSIGNMENT, GIFT, PLEDGE, HYPOTHECATION, ENCUMBRANCE, OR OTHER DISPOSITION OF THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE MAY BE MADE EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF SUCH COMPANY AGREEMENT.

> THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS AND MAY NOT BE TRANSFERRED, SOLD, ASSIGNED, GIFTED, PLEDGED, HYPOTHECATED, OR OTHERWISE DISPOSED EXCEPT PURSUANT TO (A) A REGISTRATION STATEMENT EFFECTIVE UNDER SUCH ACT AND LAWS, OR (B) AN EXEMPTION FROM REGISTRATION THEREUNDER.

16

**Section 4.05   Meetings of Members.**

(a)      Meetings of the Members may be called by (i) the Sole Manager or (ii) a Member or group of Members holding a majority of the Membership Interests.

(b)      Written notice stating the place, date, and time of the meeting and, in the case of a meeting of the Members not regularly scheduled, describing the purposes for which the meeting is called, shall be delivered not fewer than ten days and not more than 60 days before the date of the meeting to each Member, by or at the direction of the Sole Manager or the Member(s) calling the meeting, as the case may be.  The Members may hold meetings at the Company's principal office or at such other place, within or outside the State of Texas, as the Sole Manager or the Member(s) calling the meeting may designate in the notice for such meeting.

(c)      Any Member may participate in a meeting of the Members by means of conference telephone or other communications equipment by means of which all Persons participating in the meeting can talk to and hear each other, and participation in a meeting by such means shall constitute presence in person at such meeting.

(d)      On any matter that is to be voted on by Members, a Member may vote in person or by proxy, and such proxy may be granted in writing, by means of Electronic Transmission or as otherwise permitted by Applicable Law.  Every proxy shall be revocable in the discretion of the Member executing it unless otherwise provided in such proxy; provided, that such right to revocation shall not invalidate or otherwise affect actions taken under such proxy prior to such revocation.  In lieu of a proxy, a Member may grant an irrevocable power of attorney to conduct the affairs of such Member with respect to matters of the Company, including matters relating to the organization, internal affairs, or termination of the Company.

(e)      The business to be conducted at such meeting need not be limited to the purpose described in the notice and can include business to be conducted by Members; provided, that the appropriate Members shall have been notified of the meeting in accordance with Section 4.05(b).  Attendance of a Member at any meeting shall constitute a waiver of notice of such meeting, except where a Member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(f)      A quorum of any meeting of the Members shall require the presence, whether in person or by proxy, of the Members holding a majority of the Membership Interests.  Subject to Section 4.06, no action may be taken by the Members unless the appropriate quorum is present at a meeting.

(g)      Subject to Section 4.06, Section 7.05, Section 7.06 , Section 12.10 or any provision of this Agreement or the BOC requiring the vote, consent, or approval of a different percentage of the Membership Interests, no action may be taken by the Members at any meeting at which a quorum is present without the affirmative vote of the Members holding a majority of the outstanding Membership Interests.

17

**Section 4.06   Action Without Meeting.**

(a)      Notwithstanding the provisions of Section 4.05, any matter that is to be voted on, consented to, or approved by the Members may be taken without a meeting, without prior notice, and without a vote if consented to, in writing or by Electronic Transmission, by a Member or Members holding not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which each Member entitled to vote on the action is present and votes.  A record shall be maintained by the Sole Manager of each such action taken by written consent of a Member or Members.

(b)      A Member's consent may not be established by a Member's failure to object to an action in a timely manner or by any other means not explicitly provided for in this Agreement.

(c)      If any action or decision permitted by this Agreement to be taken or made by less than all of the Members is taken or made by a written consent signed by less than all of the Members, the Sole Manager shall, within ten calendar days after such action is taken or such decision is made, give written notice of the action taken or the decision made to the Members who did not sign the written consent.

**Section 4.07   Power of Members.**  The Members shall have the power to exercise any and all rights or powers granted to Members pursuant to the express terms of this Agreement and the BOC.  Except as otherwise specifically provided by this Agreement or required by the BOC, no Member, in its capacity as a Member, shall have the power to act for or on behalf of, or to bind, the Company, other than to the extent that the Company has granted a power of attorney to such Member to bind the Company on such actions.

**Section 4.08   Similar or Competitive Activities; Business Opportunities.**  Nothing contained in this Agreement shall prevent any Member or any of its Affiliates from engaging in any other activities or businesses, regardless of whether those activities or businesses are similar to or competitive with the Company.  None of the Members nor any of their Affiliates shall be obligated to account to the Company or to the other Members for any profits or income earned or derived from such other activities or businesses.  None of the Members nor any of their Affiliates shall be obligated to inform the Company or the other Members of a business opportunity of any type or description.

**ARTICLE V**
**ALLOCATIONS**

**Section 5.01   Allocation of Net Income and Net Loss.**  For each Fiscal Year (or portion thereof), after giving effect to the special allocations set forth in Section 5.02, Net Income and Net Loss of the Company shall be allocated among the Members pro rata in accordance with their Membership Interests.

**Section 5.02   Regulatory and Special Allocations.**  Notwithstanding the provisions of Section 5.01:

18

(a)     If there is a net decrease in Company Minimum Gain (determined according to Treasury Regulations Section 1.704-2(d)(1)) during any Fiscal Year, each Member shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2(g). The items to be so allocated shall be determined in accordance with Treasury Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2).  This Section 5.02(a) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)     Member Nonrecourse Deductions shall be allocated in the manner required by Treasury Regulations Section 1.704-2(i).  Except as otherwise provided in Treasury Regulations Section 1.704-2(i)(4), if there is a net decrease in Member Nonrecourse Debt Minimum Gain during any Fiscal Year, each Member that has a share of such Member Nonrecourse Debt Minimum Gain shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to that Member's share of the net decrease in Member Nonrecourse Debt Minimum Gain.  Items to be allocated pursuant to this paragraph shall be determined in accordance with Treasury Regulations Sections 1.704-2(i)(4) and 1.704-2(j)(2).  This Section 5.02(b) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)     Nonrecourse Deductions shall be allocated to the Members in accordance with their Membership Interests.

(d)     In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), Net Income shall be specially allocated to such Member in an amount and manner sufficient to eliminate the Adjusted Capital Account Deficit created by such adjustments, allocations, or distributions as quickly as possible.  This Section 5.02(d) is intended to comply with the "qualified income offset" requirement in Treasury Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(e)     Simulated Depletion and Simulated Loss with respect to any Depletable Property shall be allocated among the Members in proportion to their shares of the Simulated Basis in such property.  Each Member's share of the Simulated Basis in each of the Company's Depletable Properties shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such Depletable Property is acquired by the Company, and shall be reallocated among the Members in accordance with the Members' Membership Interest as determined immediately following the occurrence of an event giving rise to any adjustment to the Book Values of the Company's oil and gas properties pursuant to the terms of this Agreement (or at the time of any material additions to the federal income tax basis of such Depletable Property).

(f)     The allocations set forth in subsections Section 5.02(a), Section 5.02(b), Section 5.02(c), Section 5.02(d) and Section 5.02(e) above (the "**Regulatory Allocations**")

19

are intended to comply with certain requirements of the Treasury Regulations under Code Section 704. Notwithstanding any other provisions of this ARTICLE V (other than the Regulatory Allocations), the Regulatory Allocations shall be taken into account in allocating Net Income and Net Losses among Members so that, to the extent possible, the net amount of such allocations of Net Income and Net Losses and other items and the Regulatory Allocations to each Member shall be equal to the net amount that would have been allocated to such Member if the Regulatory Allocations had not occurred.

**Section 5.03    Tax Allocations.**

(a)    Subject to Section 5.03(b), Section 5.03(c), and Section 5.03(d), all income, gains, losses and deductions of the Company shall be allocated, for federal, state, and local income tax purposes, among the Members in accordance with the allocation of such income, gains, losses, and deductions pursuant to Section 5.01 and Section 5.02, except that if any such allocation for tax purposes is not permitted by the Code or other Applicable Law, the Company's subsequent income, gains, losses, and deductions shall be allocated among the Members for tax purposes, to the extent permitted by the Code and other Applicable Law, so as to reflect as nearly as possible the allocation set forth in Section 5.01 and Section 5.02.

(b)    Items of Company taxable income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall be allocated among the Members in accordance with Code Section 704(c) using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager, so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its Book Value.

(c)    If the Book Value of any Company asset is adjusted pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(f) as provided in Section 1.01(c) of the definition of Book Value, subsequent allocations of items of taxable income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager.

(d)    Allocations of tax credit, tax credit recapture, and any items related thereto shall be allocated to the Members according to their interests in such items as determined by the Sole Manager taking into account the principles of Treasury Regulations Section 1.704-1(b)(4)(ii).

(e)    The deduction for depletion with respect to each separate oil and gas property (as defined in Section 614 of the Code) shall, in accordance with Section 613A(c)(7)(D) of the Code, be computed for federal income tax purposes separately by the Members rather than the Company. The proportionate share of the adjusted tax basis of each oil and gas property shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such oil and gas

20

property is acquired by the Company (and any additions to such U.S. federal income tax basis resulting from expenditures required to be capitalized in such basis shall be allocated among the Members in a manner designed to cause the Members' proportionate shares of such adjusted U.S. federal income tax basis to be in accordance with their Membership Interests as determined at the time of any such additions), and shall be reallocated among the Members in accordance with the Members' Membership Interests as determined immediately following the occurrence of an event giving rise to an adjustment to the Book Values of the Company's oil and gas properties.  For purposes of the separate computation of gain or loss by each Member on the taxable disposition of each oil and gas property, the amount realized from such disposition shall be allocated (i) first, to the Members in an amount equal to the Simulated Basis in such oil and gas property in proportion to their allocable shares thereof and (ii) second, any remaining amount realized shall be allocated consistent with the allocation of Simulated Gain.  The allocations described in this Section 5.03(e) are intended to be applied in accordance with the Members' "interests in partnership capital" under Section 613A(c)(7)(D) or the Code; provided, however, that the Members understand and agree that the Sole Manager may authorize special allocations of federal income tax basis, income, gain, deduction or loss, as computed for U.S. federal income tax purposes, in order to eliminate differences between Simulated Basis and adjusted U.S. federal income tax basis with respect to each oil and gas property, in such manner as determined consistent with the principles outlined in Sections 5.03(b) and 5.03(c).  The provisions of this Section 5.03(e) and the other provisions of this Agreement relating to allocations under Section 613A(c)(7)(D) of the Code are intended to comply with Treasury Regulations Section 1.704-1(b)(4)(v) and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  Each Member, with the assistance of the Company, shall separately keep records of its share of the adjusted tax basis in each oil and gas property, adjust such share of the adjusted tax basis for any cost or percentage depletion allowable with respect to such property and use such adjusted tax basis in the computation of its cost depletion or in the computation of its gain or loss on the disposition of such property by the Company.  Upon the reasonable request of the Company, each Member shall advise the Company of its adjusted tax basis in each oil and gas property and any depletion computed with respect thereto, both as computed in accordance with the provisions of this subsection for purposes of allowing the Company to make adjustments to the tax basis of its assets as a result of certain transfers of interests in the Company or distributions by the Company.  The Company may rely on such information and, if it is not provided by the Member, may make such reasonable assumptions as it shall determine with respect thereto.  When reasonably requested by the Members, the Company shall provide all available information needed by such Members to comply with the record keeping requirements of this Section 5.03(e) and other applicable tax reporting obligations.

(f)     Allocations pursuant to this Section 5.03 are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account or share of Net Income, Net Losses, distributions, or other items pursuant to any provisions of this Agreement.

**Section 5.04  Allocations in Respect of Transferred Membership Interests.**  In the event of a Transfer of Membership Interests during any Fiscal Year made in compliance with the

21

provisions of ARTICLE VIII, Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company attributable to such Membership Interests for such Fiscal Year shall be determined using the interim closing of the books method.

## ARTICLE VI
## DISTRIBUTIONS

**Section 6.01   General.**

(a)   Subject to Section 6.02, distributions of available cash shall be made to the Members when and in such amounts as determined by the Sole Manager and only following (i) payment of all operating expenses of the Company, including required payments under the Transition Services Agreement or the Service Provider Agreement, (ii) the repayment in full to Apache of any outstanding principal amounts borrowed by the Company under the Standby Facility and the payment of any accrued interest or premium thereon, in each case, pursuant to the Standby Facility Documentation, (iii) the reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates (A) in performing services on behalf of the Company in connection with the Legacy Apache Properties or the GOM Shelf Properties pursuant to a services contract between Apache or any of its Affiliates and the Company, (B) pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, and (C) pursuant to or as may be required in connection with the Decommissioning Agreement or plugging and abandonment and decommissioning of the Legacy Apache Properties or the GOM Shelf Properties, unless otherwise reimbursed in accordance with the Decommissioning Agreement, and (iv) the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties.  After making all distributions required for a given Fiscal Year under Section 6.02 and repaying/paying all amounts then due and outstanding under the Standby Facility as described in the preceding sentence, distributions determined to be made by the Sole Manager pursuant to this Section 6.01(a) shall be paid to the Members in accordance with their respective Membership Interests.

(b)   Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make any distribution to the Members (i) prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, except as provided in Section 6.02, or (ii) if such distribution would violate § 101.206 of the BOC or other Applicable Law.

**Section 6.02   Tax Advances.**

(a)   Subject to (i) any restrictions in the Company's then applicable debt-financing arrangements, including, but not limited to, the Standby Facility Documentation, (ii) the prior repayment in full to Apache of any outstanding principal amounts borrowed

22

by the Company under the Standby Facility and the payment of any accrued interest or premium thereon, in each case, pursuant to the Standby Facility Documentation, (iii) the prior reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates (A) in performing services on behalf of the Company in connection with the Legacy Apache Properties or the GOM Shelf Properties pursuant to a services contract between Apache or any of its Affiliates and the Company, (B) pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, and (C) pursuant to or as may be required in connection with the Decommissioning Agreement or plugging and abandonment and decommissioning of the Legacy Apache Properties or the GOM Shelf Properties, unless otherwise reimbursed in accordance with the Decommissioning Agreement, (iv) the prior cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, and (v) the Sole Manager's determination to retain any other amounts necessary to satisfy the Company's obligations, from and after such time, at least three days before each date prescribed by the Code for a calendar-year corporation to pay quarterly installments of estimated tax, the Company shall use commercially reasonable efforts to distribute cash to each Member in proportion to and to the extent of such Member's Quarterly Estimated Tax Amount for the applicable calendar quarter (each such distribution, a "**Tax Advance**").

(b)     If, at any time after the final Quarterly Estimated Tax Amount has been distributed pursuant to Section 6.02(a) with respect to any Fiscal Year, the aggregate Tax Advances to any Member with respect to such Fiscal Year are less than such Member's Tax Amount for such Fiscal Year (a "**Shortfall Amount**"), the Company shall use commercially reasonable efforts to distribute cash in proportion to and to the extent of each Member's Shortfall Amount.  The Company shall use commercially reasonable efforts to distribute Shortfall Amounts with respect to a Fiscal Year before the 90th day of the next succeeding Fiscal Year; provided, that if the Company has made distributions other than pursuant to this Section 6.02, the Sole Manager may apply such distributions to reduce any Shortfall Amount.

(c)     If the aggregate Tax Advances made to any Member pursuant to this Section 6.02 for any Fiscal Year exceed such Member's Tax Amount (an "**Excess Amount**"), such Excess Amount shall reduce subsequent Tax Advances that would be made to such Member pursuant to this Section 6.02, except to the extent taken into account as an advance pursuant to Section 6.02(d).

(d)     Any distributions made pursuant to this Section 6.02 shall be treated for purposes of this Agreement as advances on distributions pursuant to Section 6.01 and shall reduce, dollar-for-dollar, the amount otherwise distributable to such Member pursuant to Section 6.01.

23

**Section 6.03   Tax Withholding; Withholding Advances.**

(a)   **Tax Withholding.**  Each Member agrees to furnish the Company with any representations and forms as shall be reasonably requested by the Company to assist it in determining the extent of, and in fulfilling, any withholding obligations it may have.

(b)   **Withholding Advances.**  The Company is hereby authorized at all times to make payments ("**Withholding Advances**") with respect to each Member in amounts required to discharge any obligation of the Company, including any obligation under Section 6225 of the Code (as determined by the Tax Matters Representative) based on the advice of legal or tax counsel to the Company) to withhold or make payments to any federal, state, local or foreign taxing authority (a "**Taxing Authority**") with respect to any distribution or allocation by the Company of income or gain to such Member and to withhold the same from distributions to such Member.   Any funds withheld from a distribution by reason of this Section 6.03(b) shall nonetheless be deemed distributed to the Member in question for all purposes under this Agreement.  If the Company makes any Withholding Advance in respect of a Member hereunder that is not immediately withheld from actual distributions to the Member, then the Member shall promptly reimburse the Company for the amount of such payment, plus interest at a rate equal to the prime rate published in the Wall Street Journal on the date of payment plus two percent (2.0%) per annum, compounded annually, on such amount from the date of such payment until such amount is repaid (or deducted from a distribution) by the Member (any such payment shall not constitute a Capital Contribution).  Each Member's reimbursement obligation under this Section 6.03(b) shall continue after such Member transfers its Membership Interests.

(c)   **Indemnification.**  Each Member hereby agrees to indemnify and hold harmless the Company and the other Members from and against any liability with respect to taxes, interest, or penalties that may be asserted by reason of the Company's failure to deduct and withhold tax on amounts distributable or allocable to such Member.  The provisions of this Section 6.03(c) and the obligations of a Member pursuant to Section 6.03(b) shall survive the termination, dissolution, liquidation, and winding up of the Company and the withdrawal of such Member from the Company or Transfer of its Membership Interests.  The Company may pursue and enforce all rights and remedies it may have against each Member under this Section 6.03, including bringing a lawsuit to collect repayment with interest of any Withholding Advances.

(d)   **Overwithholding.**  None of the Company, the Sole Manager or the Independent Director shall be liable for any excess taxes withheld in respect of any distribution or allocation of income or gain to a Member.   In the event of an overwithholding, a Member's sole recourse shall be to apply for a refund from the appropriate Taxing Authority.

**Section 6.04   Distributions in Kind.**

(a)   Subject to Sections 6.01 and 6.02, the Sole Manager is hereby authorized, as it may reasonably determine, to make distributions to the Members in the form of

24

securities or other property (but not including any oil and gas properties) held by the Company; provided, that Tax Advances shall only be made in cash. In any non-cash distribution, the securities or property so distributed will be distributed among the Members in the same proportion and priority as cash equal to the Fair Market Value of such securities or property would be distributed among the Members pursuant to Section 6.01.

(b)     Any distribution of securities shall be subject to such conditions and restrictions as the Sole Manager determines are required or advisable to ensure compliance with Applicable Law. In furtherance of the foregoing, the Sole Manager may require that the Members execute and deliver such documents as the Sole Manager may deem necessary or appropriate to ensure compliance with all federal and state securities laws that apply to such distribution and any further Transfer of the distributed securities, and may appropriately legend the certificates that represent such securities to reflect any restriction on Transfer with respect to such laws.

### ARTICLE VII
### MANAGEMENT

**Section 7.01   Management of the Company.**   The business and affairs of the Company shall be managed, operated, and controlled by or under the direction of the Sole Manager ("**Sole Manager**"). Subject to the provisions of Section 7.06, the Sole Manager shall have, and is hereby granted, full and complete power, authority, and discretion for, on behalf of, and in the name of the Company, to take such actions as it may deem necessary or advisable to carry out any and all of the objectives and purposes of the Company.

**Section 7.02   Independent Director.**

(a)     The Independent Director shall (i) be a natural person who is not, nor for the prior five years has been, a director, officer, employee, trade creditor or equityholder (or spouse, parent, sibling or child of any of the foregoing) of (A) Fieldwood or any Affiliate of Fieldwood or (B) any prior or current lender of Fieldwood (a natural person satisfying such condition set forth in this clause (i), a "**Qualified Person**") and (ii) be provided by Citadel SPV, Global Securitization Services, LLC, Corporation Service Company, CT Corporation, [Lord Securities Corporation][3], Wilmington Trust Company, or, if none of those companies is then in the service of providing professional independent directors, another nationally recognized company selected by Fieldwood (or, following the divisive merger of Fieldwood pursuant to § 10.008 of the BOC, Fieldwood II) subject to Apache's prior consent, which may be given or withheld in its sole discretion (such providers collectively, the "**Approved Providers**"). [●] is the Qualified Person provided by an Approved Provider that, as of the date of this Agreement, has been appointed to serve as the initial Independent Director and has also been approved to serve as the initial Independent Director for the Company in connection with the Confirmation Order entered

---

[3] NTD: Does this entity still exist?

EMF_US 81719156v10
#93633328v11

by the Bankruptcy Court for the Southern District of Texas before which the reorganization of Fieldwood was being conducted.

(b)     The Independent Director may not be removed without Apache's prior written consent, which may be given or withheld in its sole discretion.  If the Independent Director is removed with Apache's written consent or the Independent Director resigns or otherwise ceases to serve in such capacity, then the Company (acting by majority vote of its Members) shall select another Qualified Person from the Approved Providers to serve as the Independent Director.

**Section 7.03   Sole Manager.**  The Company shall not have any officers or employees other than a Sole Manager.  In accordance with the procedure for the selection of the Sole Manager set forth in the Term Sheet, [●] has been selected and designated to serve as the initial Sole Manager.  The Sole Manager may not be removed without Apache's prior written consent, which may be given or withheld in its sole discretion.  In the event that the Sole Manager is removed with Apache's written consent or the Sole Manager resigns or otherwise ceases to serve in such capacity, then the Sole Manager shall be selected pursuant to the following procedure:  Apache and the Company (acting through the Independent Director for all purposes under this Section 7.03, who shall solicit input from Fieldwood II for all purposes under this Section 7.03) shall each provide the other with a list of three natural persons, each having a minimum of five years of relevant experience in the energy sector; and if one or more names appear on both Apache's and the Company's lists, then the Company will select, and the Member(s) shall cause the Company to select, the new Sole Manager from those common names; if, however, there are no common names between Apache's and the Company's lists, then Apache and the Company (acting through the Independent Director, who shall solicit input from Fieldwood II) shall each have the right to strike two names from the other's list, and the new Sole Manager shall be selected by the Independent Director from the remaining two names.

**Section 7.04   Service Provider.**

(a)     Subject to the Transition Services Agreement described below in Section 7.04(b), the Sole Manager shall hire one or more third-party service provider(s) (whether one or more, collectively, the "**Service Provider**") to perform all operations and plugging and abandonment and decommissioning activities with respect to the Company's and GOM Shelf's properties or assets in a manner consistent with the procedures set forth in this Section 7.04.  The Sole Manager shall solicit and obtain a bid for the work to be performed by each Service Provider from not less than three qualified candidates, each of which must (i) have a minimum of five years of relevant experience and (ii) not be, as of such date when bids are submitted, an Affiliate of Apache; such bids shall detail the scope, terms and conditions of the work to be performed, along with the price to be paid for the performance of such work.  The Company shall share copies of each such bid received with Apache promptly following receipt thereof.  Following the receipt of such bids, with Apache's prior written consent (which may be given or withheld in its sole discretion), the Sole Manager shall select the candidate whose bid contains the lowest price and best terms for the work to be performed, in view of their relevant experience (all as determined in good faith by the Sole Manager and consented to by Apache), to serve as the Service Provider, and shall

26

cause the Company to enter into an agreement with such Service Provider (such agreement, a "**Service Provider Agreement**") to provide services contemplated in this Section 7.04; provided that, immediately prior to executing such Service Provider Agreement, the Sole Manager shall have confirmed that the proposed Service Provider satisfies the candidate qualifications detailed in clause (ii) of the immediately prior sentence (as if being considered on the date of such Service Provider Agreement rather than the date when bids are submitted), and if the proposed Service Provider does not satisfy such candidate qualifications, the Sole Manager shall then reconsider the submitted bids and select another candidate in accordance with the requirements of this sentence as if the previously selected candidate had not submitted a bid. Any Service Provider Agreement shall be in such form and contain such terms as the Sole Manager determines in good faith to be appropriate and consistent with this Section 7.04. In the event that the Sole Manager elects to remove the Service Provider or the Service Provider otherwise ceases to provide its services in such capacity, then the Sole Manager shall again bid out the work, and shall select the Person to serve as the successor Service Provider, in accordance with the foregoing procedures of this Section 7.04.

(b)     Upon the effectiveness of the Plan of Reorganization, the Company shall enter into the Transition Services Agreement with Fieldwood II pursuant to which Fieldwood II shall provide transitional operations for the Company in accordance with the terms of the Transition Services Agreement. The Company and Fieldwood II (in its sole discretion) may mutually agree that Fieldwood II shall become the Service Provider, at the effective time of which the Transition Services Agreement shall terminate, and the Sole Manager shall cause the Company to enter into the Service Provider Agreement with Fieldwood II. Furthermore, as provided in the Transition Services Agreement, the Transition Services Agreement may be terminated by the Company, in its sole discretion, in accordance with the terms of the Transition Services Agreement.

**Section 7.05 Actions Requiring Independent Director Consent and Service Provider.** Without the prior consent of the Independent Director (which consent may be given or withheld in the sole discretion of the Independent Director), and the Company shall not do, or enter into any commitment to do, and shall not cause or permit GOM Shelf to do, or enter into any commitment to do, any of the following:

(a)     amend, modify, supplement or waive the Certificate of Formation, this Agreement or any other organizational documents of the Company or its Subsidiaries;

(b)     remove or replace the Sole Manager or the Service Provider;

(c)     enter into a fundamental business transaction (as such term is defined in the BOC), including a merger, consolidation, interest exchange, conversion or sale of all or substantially all of the Company's or GOM Shelf's properties or assets;

(d)     wind-up, dissolve, liquidate or terminate the Company or any of its Subsidiaries prior to the occurrence of any event set forth in Section 11.01 or enter into a

27

receivership or initiate a bankruptcy proceeding involving the Company or any of its Subsidiaries;

(e)     revoke a voluntary decision to wind up the Company or GOM Shelf or cancel the required winding up of the Company due to an event specified in § 11.051 of the BOC; or

(f)     reinstate the Company or GOM Shelf after termination.

Except as provided in the fourth sentence of Section 9.02(a), in exercising its rights and performing its duties under this Agreement (including pursuant to this Section 7.05), the Independent Director shall have fiduciary duties of loyalty and care similar to that of a director of a business corporation organized under the BOC.

**Section 7.06     Actions Requiring Apache Consent.** Without the prior written consent of Apache (which written consent may be given or withheld in Apache's sole discretion, unless expressly indicated otherwise), the Company shall not do, or enter into any commitment to do, and shall not cause or permit GOM Shelf to do, or enter into any commitment to do, any of the following:

(a)     conduct or be involved in any business or operations other than (i) operating or plugging and abandoning and decommissioning the Legacy Apache Properties and (ii) causing GOM Shelf to operate or plug and abandon and decommission the GOM Shelf Properties;

(b)     purchase or farm-in any properties or assets or sell any of the Company's or GOM Shelf's properties or assets; provided that, following receipt of any such written consent from Apache to purchase or farm-in any properties or assets, other than with respect to usual and ordinary G&A and operating expenditures required to own and maintain such properties or assets, no additional funds of, or available to, the Company or GOM Shelf shall be spent with respect to such properties or assets without the prior written consent of Apache (which written consent may be given or withheld in Apache's sole discretion), provided further, however, that if any Person makes an unsolicited proposal to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties on fair market terms and conditions (including fair market rates of return), then the Company shall be obligated to market (or cause GOM Shelf to market) such farm-in opportunity and accept (or cause GOM Shelf to accept) the highest and best offer for such farm-in opportunity as long as the farm-in transaction would be accretive to the Company's consolidated cash flow, and in such instance no consent from Apache will be required if Apache has made or bid on such farm-in opportunity;

(c)     farm-out any of the Company's or GOM Shelf's properties or assets; provided, however, if any Person makes an unsolicited proposal to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties on fair market terms and conditions (including fair market rates of return), then the Company shall be obligated to market (or cause GOM Shelf to market) such farm-in opportunity and accept (or cause GOM Shelf to accept) the highest and best offer for such farm-in opportunity as long as

28

the farm-in transaction would be accretive to the Company's consolidated cash flow, and in such instance no consent from Apache will be required if Apache has made or bid on such farm-in opportunity;

(d)  incur indebtedness for borrowed money other than pursuant to the Standby Facility, pledge or grant Liens on any properties or assets of the Company or GOM Shelf other than those provided pursuant to the Standby Facility Documentation and the Recharacterization Mortgages, or guarantee, assume, endorse or otherwise become responsible for the obligations of any other Person;

(e)  issue additional Membership Interests or any other Equity Securities or admit additional Members to the Company, or issue additional equity interests of or admit additional members to GOM Shelf;

(f)  use its free cash flow (after operating expenses) for any purposes other than fulfilling its obligations to Apache under the Decommissioning Agreement and the Standby Facility Documentation for so long as the obligations thereunder have yet to be satisfied in full (for the avoidance of doubt, Apache's consent shall be required for any development activities proposed by Fieldwood II under the Farmout Agreement);

(g)  make any loan, advance, or capital contribution or make any investment in any Person;

(h)  enter into, amend, waive, or terminate any Related Party Agreement;

(i)  amend, modify, supplement, restate, or waive any provision of the Certificate of Formation, this Agreement, or any other organizational documents of the Company or its Subsidiaries (and any such amendment, modification, supplement, or waiver that is attempted without Apache's prior written consent shall be void *ab initio* and without effect);

(j)  engage in any activity or take any action with respect to its properties or assets, other than in the ordinary course of business;

(k)  select, remove, or replace, or change the work to be performed by, the Service Provider;

(l)  remove, replace, or change the powers, rights, or responsibilities of, the Sole Manager or the Independent Director;

(m)  establish a Subsidiary or enter into any joint venture or similar business arrangement or enter into a transaction covered by Section 7.09;

(n)  settle any lawsuit, action, dispute, or other proceeding or otherwise assume any liability or agree to the provision of any equitable relief by the Company or GOM Shelf;

(o)     enter into a fundamental business transaction (as such term is defined in the BOC), including a merger, consolidation, interest exchange, conversion, or sale of all or substantially all of the Company's or GOM Shelf's properties or assets;

(p)     wind-up, dissolve, liquidate, or terminate the Company or any of its Subsidiaries or initiate a bankruptcy proceeding involving the Company or any of its Subsidiaries;

(q)     revoke a voluntary decision to wind up the Company or GOM Shelf or cancel the required winding up of the Company due to an event specified in § 11.051 of the BOC; or

(r)     reinstate the Company or GOM Shelf after termination.

In addition to the foregoing, if (i)(A) the Company or GOM Shelf defaults on its plugging and abandonment and decommissioning obligations under the Decommissioning Agreement, (B) any Governmental Authority or any other Person seeks to cause Apache or its Affiliates to conduct plugging and abandonment or decommissioning activity that is required in accordance with Applicable Law or contract in respect of any of the Legacy Apache Properties or the GOM Shelf Properties, and (C) Apache conducts such plugging and abandonment or decommissioning activity or activities, or (ii) prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties, any letter of credit or bond that is part of the Decommissioning Security is not renewed in a manner consistent in all respects with the existing terms of such letter of credit or bond, then the Company shall, and the Independent Director and the Sole Manager shall cause the Company to:  (x) if applicable, as promptly as practicable after the Independent Director or the Sole Manager becomes aware of an event described in clause (ii) immediately above, provide written notice to Apache of the upcoming expiration of, and inability to renew, such letter of credit or bond in a manner consistent in all respects with the existing terms of such letter of credit or bond, and use its best efforts to assist Apache in drawing under the expiring letter of credit or bond so that drawn funds can be contributed to Trust A; (y) take any action reasonably requested by Apache to entitle Apache to be reimbursed by the Company or to draw on the cash in Trust A or the other Decommissioning Security to pay or reimburse Apache for the costs (which costs shall include, without limitation, costs of compensation and benefits of officers and employees of Apache and its Affiliates that devote any of their productive time to performing or overseeing any of the plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties in accordance with the provisions on Schedule D attached hereto applied in a consistent manner as the application of COPAS procedures, which costs shall be determined in good faith by Apache based on the time spent by such employees in performing or overseeing such activities) and expenses incurred in conducting such activity or activities or, if such costs have been paid by Trust A or reimbursed to Apache with funds from Trust A, then to contribute funds to Trust A; and (z) not take any position in any proceeding opposed to or that is otherwise inconsistent with Apache's ability to draw on the cash in Trust A or the other Decommissioning Security to pay or reimburse Apache for such costs and expenses incurred in conducting such activity or activities or to contribute funds to Trust A.

Furthermore, the Company shall provide written notice to Apache of (i) each request or proposal the Company or GOM Shelf receives from a Person to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties and (ii) each prospective joint development under the Farmout Agreement. In connection with each of the foregoing, the Company shall, and shall cause GOM Shelf to, provide Apache full and open access to all information that the Company or GOM Shelf has regarding each such opportunity.

**Section 7.07    Compensation and Reimbursement of the Independent Director, the Sole Manager, the Service Provider and Fieldwood II.**  The Independent Director shall be compensated for the services provided by such individual as the Independent Director of the Company in the amount as specified in Schedule B attached hereto. The Sole Manager shall be compensated for the services provided by such individual as the Sole Manager of the Company in the amount as specified in Schedule C attached hereto.  The Company shall reimburse the Independent Director and the Sole Manager for all ordinary, necessary, and direct third-party expenses incurred by the Independent Director and the Sole Manager, respectively, on behalf of the Company in carrying out the Company's business activities.  All reimbursements for expenses shall be reasonable in amount and shall not exceed \$[●] in the aggregate for any Fiscal Year.  The Service Provider shall be compensated for the services provided by the Service Provider and reimbursed for the out-of-pocket costs and expenses incurred in connection therewith as shall be set forth in the applicable Service Provider Agreement.  Fieldwood II shall be compensated for its services under the Transition Services Agreement and reimbursed for the out-of-pocket costs and expenses incurred in connection therewith as set forth in the Transition Services Agreement.

**Section 7.08    No Personal Liability.**  Except as otherwise provided in the BOC, by Applicable Law, or expressly in this Agreement, neither the Independent Director nor the Sole Manager will be obligated personally for any debt, obligation, or liability of the Company, whether arising in contract, tort, or otherwise, including a debt, obligation, or liability under a judgment, decree, or order of a court, solely by reason of being or acting as the Independent Director or the Sole Manager, as applicable.

**Section 7.09    Funding Capital Expenditures.**  Prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, if the Company receives a proposal that the Company engage in any project that is forecast to increase production or cash flow generated from the Legacy Apache Properties or the GOM Shelf Properties (excluding any proposed development activities pursuant to the Farmout Agreement), then the Sole Manager shall, through a written notice, offer to Apache the opportunity to fund the capital expenditures related to such project on behalf of the Company on terms and subject to conditions to be mutually agreed between the Company and Apache; provided that the Company acknowledges and agrees that if any such capital expenditures are funded, in whole or in part, out of funds then available to be borrowed by the Company under the Standby Facility, any additional properties or assets obtained or that come into existence as a result of the use of such borrowed amounts under the Standby Facility, including, without limitation, any increased production or cash amounts generated thereby, shall be pledged as additional security under the Standby Facility Documentation.  Such written notice provided to Apache shall include all available details about such opportunity, including, but not limited to, the forecast impact on production and cash flow from the Legacy Apache Properties or

31

the GOM Shelf Properties, as appropriate. Apache shall have a reasonable period (not to exceed 20 Business Days) following its receipt of such written notice to provide written notice to the Company of (a) Apache's election to fund any such capital expenditures and the terms and conditions that Apache proposes to apply thereto, including whether it will fund such capital expenditure, in whole or in part, using amounts then available to be borrowed by the Company under the Standby Facility (such notice, an "**Acceptance Notice**"), (b) Apache's election not to fund any such capital expenditures (such notice, a "**Rejection Notice**"), or (c) Apache's request for additional information it requires to fully evaluate the proposed project (such notice, an "**Information Notice**"). If Apache provides a timely Acceptance Notice, then the Company and Apache shall endeavor in good faith to negotiate the proposed terms and conditions that will apply thereto, and if mutually satisfactory terms are agreed to by the Company and Apache, such terms and conditions shall be documented as promptly as practicable and the closing of such agreement and funding(s) of such capital expenditures shall occur as so agreed. If (i) Apache timely provides to the Company a Rejection Notice, (ii) Apache timely provides an Acceptance Notice but the Company and Apache are unable within 60 Business Days after the Company's receipt of the Acceptance Notice to agree upon mutually satisfactory terms and conditions applicable thereto, or (iii) Apache does not submit a timely response to the offer, then the offer for Apache to fund the capital expenditures of the Company in the applicable project shall be deemed rejected by Apache and the Company shall have 180 days within which to obtain third-party funding for such capital expenditures subject to, and in accordance with, the other terms and conditions of this Agreement (including, without limitation, Section 7.06); provided, however, if the Company is unable to obtain such funding subject to, and in accordance with, the other terms and conditions of this Agreement within such 180-day period, then the Company must again follow the procedures in this Section 7.09 and offer Apache the opportunity to fund such expenditures. If Apache timely provides the Company with an Information Notice, then the Company shall endeavor in good faith to promptly provide the requested information to Apache, and following Apache's receipt of such information, Apache shall have the right to accept or reject such offer on the terms set forth in this Section 7.09.

**ARTICLE VIII**
**TRANSFER**

**Section 8.01   General Restrictions on Transfer.**

(a)      No Member shall Transfer all or any portion of its Membership Interest in the Company without the prior written approval of:

(i)      Apache and the Company prior to (A) the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties, (B) the repayment in full of any and all amounts outstanding under the Standby Facility and the satisfaction of all obligations under the Standby Facility Documentation, (C) the payment or reimbursement by the Company or from funds available under the Decommissioning Security of the costs (which costs shall include, without limitation, costs of compensation and benefits of officers and employees of Apache and its Affiliates that devote any of their productive time to performing or

32

overseeing any of the plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties in accordance with the provisions on Schedule D attached hereto applied in a consistent manner as the application of COPAS procedures) and expenses incurred by Apache and its Affiliates (1) in performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties or (2) pursuant to or as may be required in connection with the Decommissioning Agreement, and (D) the reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required; and

(ii)     thereafter, the Company.

(b)     Subject to Section 8.01(a), each Member agrees that it will not Transfer all or any portion of its Membership Interest in the Company, and the Company agrees that it shall not issue any Membership Interests:

(i)     except as permitted under the Securities Act and other applicable federal or state securities or blue sky laws, and then, with respect to a Transfer of Membership Interests, only upon delivery to the Company of an opinion of counsel in form and substance satisfactory to the Company to the effect that such Transfer may be effected without registration under the Securities Act;

(ii)     if such Transfer or issuance would cause the Company to be considered a "publicly traded partnership" under Section 7704(b) of the Code within the meaning of Treasury Regulations Section 1.7704-1(h)(1)(ii), including the look-through rule in Treasury Regulations Section 1.7704-1(h)(3);

(iii)     if such Transfer or issuance would affect the Company's existence or qualification as a limited liability company under the BOC;

(iv)     if such Transfer or issuance would cause the Company to lose its status as a partnership for federal income tax purposes;

(v)     if such Transfer or issuance would cause the Company to be required to register as an investment company under the Investment Company Act of 1940, as amended; or

(vi)     if such Transfer or issuance would cause the assets of the Company to be deemed "Plan Assets" as defined under the Employee Retirement Income Security Act of 1974 or its accompanying regulations or result in any "prohibited transaction" thereunder involving the Company.

(c)     Any Transfer or attempted Transfer of any Membership Interest in violation of this Agreement shall be null and void *ab initio*, no such Transfer shall be recorded on

the Company's books, and the purported Transferee in any such Transfer shall not be treated (and the purported Transferor shall continue to be treated) as the owner of such Membership Interest for all purposes of this Agreement.

(d)     Subject to Section 7.06(e), no Transfer of any Membership Interest to a Person not already a Member of the Company shall be deemed completed until the prospective Transferee has executed a joinder agreement in form and substance acceptable to the Company.

(e)     For the avoidance of doubt, any completed Transfer of a Membership Interest permitted by this Agreement shall be deemed a sale, transfer, assignment, or other disposal of such Membership Interest in its entirety as intended by the parties to such Transfer, and shall not be deemed a sale, transfer, assignment, or other disposal of any less than all of the rights and benefits described in the definition of the term "Membership Interest."

## ARTICLE IX
## EXCULPATION AND INDEMNIFICATION

### Section 9.01     Exculpation of Covered Persons.

(a)     **Covered Persons.**  As used herein, the term "**Covered Person**" shall mean (i) each current or former Member; (ii) each current or former manager, officer, director (including the Independent Director), shareholder, partner, member, Affiliate, employee, agent, or Representative of each Member, and each of their Affiliates; and (iii) each manager (including the Sole Manager), officer (if any), employee (if any), agent, or Representative of the Company.

(b)     **Standard of Care.**   Subject to Section 9.02(a) with respect to the Independent Director, no Covered Person shall be liable to the Company or any other Covered Person for any loss, damage, or claim incurred by reason of any action taken or omitted to be taken by such Covered Person in good faith reliance on the provisions of this Agreement, so long as such action or omission does not constitute fraud or willful misconduct by such Covered Person.

(c)     **Good Faith Reliance.**  A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports, or statements (including financial statements and information, opinions, reports, or statements as to the value or amount of the assets, liabilities, Net Income, or Net Losses of the Company or any facts pertinent to the existence and amount of assets from which distributions might properly be paid) of the following Persons or groups: (i) another Member; (ii) one or more officers or employees of the Company; (iii) any attorney, independent accountant, appraiser, or other expert or professional employed or engaged by or on behalf of the Company; or (iv) any other Person selected in good faith by or on behalf of the Company, in each case as to matters that such relying Person reasonably believes to be within such other Person's professional or expert competence.  The preceding sentence

34

shall in no way limit any Person's right to rely on information to the extent provided in § 3.102 or § 3.105 of the BOC.

**Section 9.02    Liabilities and Duties of Covered Persons.**

(a)    **Limitation of Liability.**  This Agreement, unless otherwise specifically stated herein, is not intended to, and does not, create or impose any fiduciary duty on any Covered Person. Furthermore, each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligations of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.  Notwithstanding anything to the contrary in this Article IX, to the fullest extent permitted by Applicable Law, and notwithstanding any duty otherwise existing at law or in equity, the Independent Director shall consider only the interests of the Company, including its creditors, in acting or otherwise consenting to matters requiring the consent of the Independent Director in this Agreement.  Except for duties to the Company as set forth in the immediately preceding sentence (including duties to the Members and the Company's creditors solely to the extent of their respective economic interests in the Company but excluding (i) all other interests of the Members, (ii) the interests of other Affiliates of the Company, and (iii) the interests of any group of Affiliates of which the Company is a part) and in the last sentence of Section 7.05, the Independent Director shall not have any fiduciary duties to the Members or any other Person bound by this Agreement; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.  To the fullest extent permitted by law, the Independent Director shall not be liable to the Company, the Members or any other Person bound by this Agreement for breach of contract or breach of duties (including fiduciary duties), unless the Independent Director acted in bad faith or engaged in willful misconduct.

(b)    **Duties.**  Except as provided in Section 9.02(a) with respect to the Independent Director, whenever in this Agreement a Covered Person is permitted or required to make a decision (including a decision that is in such Covered Person's "discretion" or under a grant of similar authority or latitude), the Covered Person shall be entitled to consider only such interests and factors as such Covered Person desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person.  Whenever in this Agreement a Covered Person is permitted or required to make a decision in such Covered Person's "good faith," the Covered Person shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or any other Applicable Law.

35

**Section 9.03   Indemnification.**

(a)      **Indemnification.**   To the fullest extent permitted by the BOC, as the same now exists or may hereafter be amended, substituted or replaced (but, in the case of any such amendment, substitution, or replacement, only to the extent that such amendment, substitution, or replacement permits the Company to provide broader indemnification rights than the BOC permitted the Company to provide prior to such amendment, substitution, or replacement), the Company shall indemnify, hold harmless, defend, pay, and reimburse any Covered Person against any and all losses, claims, damages, judgments, fines, or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines, or liabilities, and any amounts expended in settlement of any claims (collectively, "**Losses**") to which such Covered Person may become subject by reason of:

(i)      any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member, or any direct or indirect Subsidiary of the foregoing in connection with the business of the Company; or

(ii)      such Covered Person being or acting in connection with the business of the Company as a member, shareholder, Affiliate, manager, director, officer, employee, or agent of the Company, any Member, or any of their respective Affiliates, or that such Covered Person is or was serving at the request of the Company as a member, manager, director, officer, employee, or agent of any Person including the Company;

provided, that (x) such Covered Person acted in good faith and in a manner believed by such Covered Person to be in, or not opposed to, the best interests of the Company and, with respect to any criminal proceeding, had no reasonable cause to believe his conduct was unlawful, and (y) such Covered Person's conduct did not constitute fraud or willful and intentional misconduct, in either case as determined by a final, nonappealable order of a court of competent jurisdiction.  In connection with the foregoing, the termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Covered Person did not act in good faith or, with respect to any criminal proceeding, had reasonable cause to believe that such Covered Person's conduct was unlawful, or that the Covered Person's conduct constituted fraud or willful misconduct.

(b)      **Control of Defense.**   Upon a Covered Person's discovery of any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03, the Covered Person shall give prompt written notice to the Company of such claim, lawsuit, or proceeding, provided, that the failure of the Covered Person to provide such notice shall not relieve the Company of any indemnification obligation under this Section 9.03, unless the Company shall have been materially prejudiced thereby.  The Company shall be entitled to participate in or assume the defense of any such claim, lawsuit, or proceeding at its own expense.  After notice from the Company to the Covered Person of its election to assume the defense of any such claim,

36

lawsuit, or proceeding, the Company shall not be liable to the Covered Person under this Agreement or otherwise for any legal or other expenses subsequently incurred by the Covered Person in connection with investigating, preparing to defend, or defending any such claim, lawsuit, or other proceeding. If the Company does not elect (or fails to elect) to assume the defense of any such claim, lawsuit, or proceeding, the Covered Person shall have the right to assume the defense of such claim, lawsuit, or proceeding as it deems appropriate, but it shall not settle any such claim, lawsuit, or proceeding without the consent of the Company (which consent shall not be unreasonably withheld, conditioned, or delayed).

(c) **Reimbursement.** The Company shall promptly reimburse (and/or advance to the extent reasonably required) each Covered Person for reasonable legal or other expenses (as incurred) of such Covered Person in connection with investigating, preparing to defend, or defending any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03; provided, that if it is finally judicially determined that such Covered Person is not entitled to the indemnification provided by this Section 9.03, then such Covered Person shall promptly reimburse the Company for any reimbursed or advanced expenses.

(d) **Entitlement to Indemnity.** The indemnification provided by this Section 9.03 shall not be deemed exclusive of any other rights to indemnification to which those seeking indemnification may be entitled under any agreement or otherwise. The provisions of this Section 9.03 shall continue to afford protection to each Covered Person regardless of whether such Covered Person remains in the position or capacity pursuant to which such Covered Person became entitled to indemnification under this Section 9.03 and shall inure to the benefit of the executors, administrators, legatees, and distributees of such Covered Person.

(e) **Insurance.** To the extent available on commercially reasonable terms, the Company may purchase, at its expense, insurance to cover Losses covered by the foregoing indemnification provisions and to otherwise cover Losses for any breach or alleged breach by any Covered Person of such Covered Person's duties in such amount and with such deductibles as the Sole Manager may reasonably determine; provided, that the failure to obtain such insurance shall not affect the right to indemnification of any Covered Person under the indemnification provisions contained herein, including the right to be reimbursed or advanced expenses or otherwise indemnified for Losses hereunder. If any Covered Person recovers any amounts in respect of any Losses from any insurance coverage, then such Covered Person shall, to the extent that such recovery is duplicative, reimburse the Company for any amounts previously paid to such Covered Person by the Company in respect of such Losses.

(f) **Funding of Indemnification Obligation.** Notwithstanding anything contained herein to the contrary, any indemnity by the Company relating to the matters covered in this Section 9.03 shall be provided out of and to the extent of Company assets only, and no Member (unless such Member otherwise agrees in writing) shall have personal

37

liability on account thereof or shall be required to make additional Capital Contributions to help satisfy such indemnity by the Company.

(g)     **Savings Clause.**   If this Section 9.03 or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify and hold harmless each Covered Person pursuant to this Section 9.03 to the fullest extent permitted by any applicable portion of this Section 9.03 that shall not have been invalidated and to the fullest extent permitted by Applicable Law.

(h)     **Amendment.**   The provisions of this Section 9.03 shall be a contract between the Company, on the one hand, and each Covered Person who served in such capacity at any time while this Section 9.03 is in effect, on the other hand, pursuant to which the Company and each such Covered Person intend to be legally bound.   No amendment, modification, or repeal of this Section 9.03 that adversely affects the rights of a Covered Person to indemnification for Losses incurred or relating to a state of facts existing prior to such amendment, modification or repeal shall apply in such a way as to eliminate or reduce such Covered Person's entitlement to indemnification for such Losses without the Covered Person's prior written consent.

**Section 9.04   Survival.**  The provisions of this ARTICLE IX shall survive the dissolution, liquidation, winding up, and termination of the Company.

**ARTICLE X**
**ACCOUNTING; TAX MATTERS**

**Section 10.01 Financial Statements and Other Information.**   The Company shall furnish to each Member and Apache the following reports:

(a)     **Annual Financial Statements.**   As soon as available, and in any event within 105 days after the end of each Fiscal Year, its audited consolidated balance sheet and related consolidated statements of operations, Members' equity and cash flows as of the end of and for such year prepared under AICPA auditing standards, setting forth in each case in comparative form the figures for the previous Fiscal Year, all reported on by independent public accountants acceptable to each Member and Apache (without a "going concern" or like qualification, commentary, or exception (except to the extent that any such qualification, commentary, or exception expressly indicates that after giving effect to the exclusion of asset retirement obligations reflected on the accompanying balance sheet, there would be no such qualification, commentary, or exception), and without any qualification or exception as to the scope of such audit) to the effect that such consolidated financial statements present fairly in all material respects the consolidated financial condition and results of operations of the Company and GOM Shelf in accordance with GAAP consistently applied;

(b)     **Quarterly Financial Statements.**   As soon as available, and in any event within 50 days after the end of each quarterly accounting period in each Fiscal Year (including the last fiscal quarter of the Fiscal Year), its unaudited consolidated balance sheet and related unaudited consolidated statements of operations, Members' equity and

38

cash flows as of the end of and for such fiscal quarter and the then elapsed portion of the current Fiscal Year, setting forth in each case in comparative form the figures for the corresponding period or periods of the previous Fiscal Year or as at the end of such period or periods, all in reasonable detail and certified by the Company as presenting fairly in all material respects the consolidated financial condition and results of operations of the Company and GOM Shelf in accordance with GAAP consistently applied, subject to normal year-end audit adjustments and the absence of footnotes; and

(c)     **Monthly Operating Data.**  As soon as available, but in no event later than 15 Business Days after the end of each calendar month, a statement in a form reasonably satisfactory to each Member and Apache showing all operating data for the Company and GOM Shelf, including operating expenses and revenue for each of the Company and GOM Shelf, for such calendar month.

(d)     **Operating Budget.**  As soon as available, but in any event no later than 60 days after the end of each Fiscal Year of the Company, a detailed operating budget for the Fiscal Year, forecasting revenue, operating costs, and capital expenses for each fiscal quarter in form reasonably satisfactory to each Member and Apache.

(e)     **Additional Information.**  Promptly following any reasonable request therefor, such other information regarding the operations, business affairs and financial condition of each of the Company and GOM Shelf, as any Member or Apache may reasonably request, including, without limitation, decommissioning cost estimates and calculations.

**Section 10.02 Inspection Rights.**  Upon reasonable notice from a Member or Apache, the Company shall afford each Member or Apache and their respective Representatives access during normal business hours to (a) the Company's properties, offices, plants, and other facilities; (b) the corporate, financial, and similar records, reports, and documents of the Company, including, without limitation, all books and records, minutes of proceedings, internal management documents, reports of operations, reports of adverse developments, copies of any management letters and communications with Members or the Sole Manager or Independent Director, and to permit each Member or Apache and their respective Representatives to examine such documents and make copies thereof; and (c) any officers, senior employees, and public accountants of the Company, and to afford each Member or Apache and their respective Representatives the opportunity to discuss and advise on the affairs, finances, and accounts of the Company with such officers, senior employees, and public accountants (and the Company hereby authorizes said accountants to discuss with such Member or Apache and their respective Representatives such affairs, finances, and accounts).

**Section 10.03 Income Tax Status.**  It is the intent of the Company and the Members that the Company shall be treated as a partnership or a disregarded entity for U.S., federal, state, and local income tax purposes.  Neither the Company nor any Member shall make an election for the Company to be classified as other than a partnership or a disregarded entity pursuant to Treasury Regulations Section 301.7701-3.

**Section 10.04 Tax Matters Representative.**

(a) **Appointment.** The Members hereby appoint the Sole Manager as "partnership representative" as provided in Code Section 6223(a) (the "**Tax Matters Representative**"). If any state or local tax law provides for a tax matters partner/partnership representative or Person having similar rights, powers, authority or obligations, the person designated as the Tax Matters Representative shall also serve in such capacity. To the extent required by Applicable Law, if the Tax Matters Representative is an entity, it shall appoint a "designated individual" to act on its behalf. The Tax Matters Representative can be removed at any time by a vote of Members holding a majority of the Membership Interests, and shall resign if it is no longer a Member. In the event of the resignation or removal of the Tax Matters Representative, Members holding a majority of the Membership Interests shall select a replacement Tax Matters Representative.

(b) **Tax Examinations and Audits.** The Tax Matters Representative is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by Taxing Authorities, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith. The Tax Matters Representative shall promptly notify the Members in writing of the commencement of any tax audit of the Company, upon receipt of a tax assessment and upon receipt of a notice of final partnership adjustment, and shall keep the Members reasonably informed of the status of any tax audit and resulting administrative and judicial proceedings. Without the consent of Members holding a majority of the Membership Interests, the Tax Matters Representative shall not extend the statute of limitations, file a request for administrative adjustment, file suit relating to any Company tax refund or deficiency or enter into any settlement agreement relating to items of income, gain, loss or deduction of the Company with any Taxing Authority.

(c) **US Federal Tax Proceedings.** The Members acknowledge that the Company may elect the application of Section 6226 of the Code. This acknowledgement applies to each Member whether or not the Member owns an interest in the Company in both the reviewed year and the year of the tax adjustment. In the event that the Company elects the application of Section 6226 of the Code, the Members agree and covenant to take into account and report to the Internal Revenue Service (or any other applicable taxing authority) any adjustment to their tax items for the reviewed year of which they are notified by the Company in a written statement, in the manner provided in Section 6226(b) of the Code, whether or not the Member owns any interest in the Company at such time. Any Member that fails to report its share of such adjustments on its tax return, agrees to indemnify and hold harmless the Company and the Tax Matters Representative from and against any and all losses, costs, liabilities and expenses related to taxes (including penalties and interest) imposed on the Company as a result of the Member's inaction. If the Company is required to pay the assessment of the imputed underpayment under Section 6225(a)(1) of the Code or similar provisions of state law, any taxes, penalties, and interest payable by the Company shall be treated as attributable to the Members, and, to the extent possible, the Tax Matters Representative shall allocate the burden of any such

40

amounts to those Members to whom such amounts are reasonably attributable taking into account the Member's or former Member's allocable share of taxable income or loss with respect to the Fiscal Year to which such assessment pertains and adjustments that may have been made in computing the imputed underpayment. To the extent that any such amount is payable by the Company, at the option of the Tax Matters Representative, such amount shall be recoverable from such Member as provided in Section 6.03(c). The provisions contained in this Section 10.04 shall survive the dissolution, termination or liquidation of the Company, the withdrawal of any Member or the transfer of any Member's interest in the Company and apply to unadmitted assignees of a Member Interest who may be considered current or former partners of the Company for federal tax purposes.

(d) **Tax Returns.** Each Member agrees that such Member shall not treat any Company item inconsistently on such Member's federal, state, foreign or other income tax return with the treatment of the item on the Company's return.

(e) **Section 754 Election.** The Tax Matters Representative will make an election under Code Section 754, if the Company is to be taxed as a partnership for federal tax purposes.

(f) **Indemnification**. The Company shall defend, indemnify, and hold harmless the Tax Matters Representative against any and all liabilities sustained as a result of any act or decision concerning Company tax matters and within the scope of responsibilities as Tax Matters Representative, so long as such act or decision was done or made in good faith and does not constitute gross negligence or willful misconduct.

**Section 10.05 Tax Returns.** At the expense of the Company, the Sole Manager (or any officer of the Company that it may designate pursuant to this Agreement) shall endeavor to cause the preparation and timely filing (including extensions) of all tax returns required to be filed by the Company pursuant to the Code as well as all other required tax returns in each jurisdiction in which the Company owns property or does business. As soon as reasonably possible after the end of each Fiscal Year, the Sole Manager or any designated officer of the Company, as applicable, will cause to be delivered to each Person who was a Member at any time during such Fiscal Year, IRS Schedule K-1 to Form 1065, if applicable, and such other information with respect to the Company as may be necessary for the preparation of such Person's federal, state, and local income tax returns for such Fiscal Year.

**Section 10.06 Company Funds.** All funds of the Company shall be deposited in its name, or in such name as may be designated by the Sole Manager, in such checking, savings, or other accounts, or held in its name in the form of such other investments as shall be designated by the Sole Manager. The funds of the Company shall not be commingled with the funds of any other Person. All withdrawals of such deposits or liquidations of such investments by the Company shall be made exclusively upon the signature or signatures of the Sole Manager, or any officer or officers of the Company that may be designated by the Sole Manager, as applicable, pursuant to this Agreement.

41

## ARTICLE XI
## WINDING UP AND TERMINATION

**Section 11.01 Events Requiring Winding Up.** The Company shall begin to wind up its business and affairs only upon the occurrence of any of the following events (in each case, subject to the applicable provisions of Section 7.06):

(a) upon the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties;

(b) the occurrence of a nonwaivable event under the terms of the BOC which requires the winding up of the Company after its termination unless a Continuance occurs in respect of such event; or

(c) the entry of a judicial decree ordering winding up and termination under § 11.314 of the BOC in proceedings of which Apache has been given notice and an opportunity to participate.

Notwithstanding the occurrence of an event referenced in Section 11.01(b), if the Company is permitted prior to the termination of its existence in accordance with the BOC to revoke a winding up upon the occurrence of such event and each of Apache, the Sole Manager, and the Independent Director provide their prior written consent to such revocation, then, to the extent so permitted under the BOC and in the manner provided therein, the Company's existence shall be continued (the revocation of such a winding up and continuance of the Company, a "**Continuance**").

**Section 11.02 Effectiveness of Termination.** The Company shall begin to wind up its business and affairs as soon as reasonably practicable upon the occurrence of an event described in Section 11.01 (if such event has not been revoked or cancelled), but the Company shall not terminate until the winding up of the Company has been completed, the assets of the Company have been distributed as provided in Section 11.03, and the Certificate of Termination shall have been filed as provided in Section 11.04.

**Section 11.03 Liquidation.** If the Company is to be terminated pursuant to Section 11.01, the Company shall be liquidated and its business and affairs wound up in accordance with the BOC and the following provisions:

(a) **Liquidator.** The Sole Manager shall act as liquidator to wind up the Company (the "**Liquidator**"); provided, however, that if there is then a vacancy in the position of the Sole Manager or the Sole Manager is not willing to act as the Liquidator, the Members shall appoint a person to act as the Liquidator. The Liquidator shall have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and business-like manner.

(b) **Accounting.** As promptly as possible after the event requiring winding up and again after final liquidation, the Liquidator shall cause a proper accounting to be made by a recognized firm of certified public accountants of the Company's assets, liabilities,

42

and operations through the last day of the calendar month in which such event occurs or the final liquidation is completed, as applicable.

(c) **Notice.** The Liquidator shall deliver to each known claimant of the Company the notice required by § 11.052 of the BOC.

(d) **Distribution of Proceeds.** The Liquidator shall liquidate the assets of the Company and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of Applicable Law:

(i) First, to the payment of all of the Company's debts and liabilities to its creditors (including Members, if applicable) and the expenses of liquidation (including sales commissions incident to any sales of assets of the Company);

(ii) Second, to Trust A until the aggregate funds in Trust A are in an amount equal to 125% of the then Remaining Decommissioning (as defined in the Decommissioning Agreement);

(iii) Third, to the establishment of and additions to other reserves that are determined by the Liquidator to be reasonably necessary for any contingent unforeseen liabilities or obligations of the Company; and

(iv) Fourth, to the Members in accordance with the positive balances in their respective Capital Accounts, as determined after taking into account all Capital Account adjustments for the taxable year of the Company during which the liquidation of the Company occurs.

(e) **Discretion of Liquidator.** Notwithstanding the provisions of Section 11.03(d) that require the liquidation of the assets of the Company, but subject to the order of priorities set forth in Section 11.03(d), if upon winding up of the Company the Liquidator reasonably determines that an immediate sale of part or all of the Company's assets would be impractical or could cause undue loss to the Members, the Liquidator may defer the liquidation of any assets except those necessary to satisfy Company liabilities, Trust A, and reserves, and may, upon approval of holders of a majority of the outstanding Membership Interests, distribute to the Members, in lieu of cash, as tenants in common and in accordance with the provisions of Section 11.03(d), undivided interests in such Company assets as the Liquidator deems not suitable for liquidation. Any such distribution in kind shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any agreements governing the operating of such properties at such time. For purposes of any such distribution, any property to be distributed will be valued at its Fair Market Value.

**Section 11.04 Certificate of Termination.** Upon completion of the distribution of the assets of the Company as provided in Section 11.03(d) hereof, the Liquidator or other such officer shall execute and cause to be filed a Certificate of Termination in the State of Texas and shall cause the cancellation of all qualifications and registrations of the Company as a foreign limited liability company in jurisdictions other than the State of Texas and shall take such other actions as

43

may be necessary to terminate the Company. Upon acceptance of the Certificate of Termination by the Texas Secretary of State, the Company shall be terminated.

**Section 11.05 Survival of Rights, Duties, and Obligations.** Dissolution, liquidation, winding up, or termination of the Company for any reason shall not release any party from any Loss that at the time of such dissolution, liquidation, winding up, or termination already had accrued to any other party or thereafter may accrue in respect of any act or omission prior to such dissolution, liquidation, winding up, or termination. For the avoidance of doubt, none of the foregoing shall replace, diminish, or otherwise adversely affect any Member's right to indemnification pursuant to Section 9.03.

**Section 11.06 Recourse for Claims.** Each Member shall look solely to the assets of the Company for all distributions with respect to the Company, such Member's Capital Account, and such Member's share of Net Income, Net Loss, and other items of income, gain, loss, and deduction, and shall have no recourse therefor (upon termination or otherwise) against the Liquidator, the Independent Director, or any other Member.

**ARTICLE XII**
**MISCELLANEOUS**

**Section 12.01 Expenses.** Except as otherwise expressly provided herein, in the Restructuring Support Agreement, or in the Confirmation Order, all costs and expenses, including fees and disbursements of counsel, financial advisors, and accountants, incurred in connection with the preparation and execution of this Agreement, or any amendment or waiver hereof, and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses. In addition to the immediately preceding sentence and the payment or reimbursement to Apache and its Affiliates for the costs and expenses of performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties as provided in the final paragraph of Section 7.06, from time to time as Apache evaluates any matter specified in Section 7.06 for which its consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, the Company shall reimburse Apache for all costs and expenses incurred in connection therewith, with such reimbursement to be made regardless of whether Apache consents to such matter or provides an Acceptance Notice, Rejection Notice, or Information Notice to the Company with respect to such proposal. Apache's costs shall include, without limitation, third-party costs and the reimbursable costs of compensation and benefits of employees of Apache and its Affiliates who devote productive time to evaluating any matter specified in Section 7.06 for which the consent of Apache is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, which costs shall be determined in good faith by Apache based on the time spent by such employees in conducting such evaluation. The reimbursement to be made pursuant to the immediately preceding sentences shall be made within 30 days of the Company's receipt of a statement from Apache specifying the costs to be so reimbursed.

**Section 12.02 Further Assurances.** In connection with this Agreement and the transactions contemplated hereby, the Company and each Member hereby agrees, at the request of the Company or any other Member, to execute and deliver such additional documents, instruments,

44

conveyances, and assurances and to take such further actions as may be required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

**Section 12.03 Confidentiality.**

(a)      Each Member acknowledges that, during the term of this Agreement, it will have access to and become acquainted with trade secrets, proprietary information, and confidential information belonging to the Company and its Affiliates that are not generally known to the public, including, but not limited to, information concerning business plans, financial statements, and other information provided pursuant to this Agreement, operating practices and methods, expansion plans, strategic plans, marketing plans, contracts, customer lists, or other business documents that the Company treats as confidential, in any format whatsoever (including oral, written, electronic, or any other form or medium) (collectively, "**Confidential Information**").  In addition, each Member acknowledges that: (i) the Company has invested, and continues to invest, substantial time, expense, and specialized knowledge in developing its Confidential Information; (ii) the Confidential Information provides the Company with a competitive advantage over others in the marketplace; and (iii) the Company would be irreparably harmed if the Confidential Information were disclosed to competitors or made available to the public.  Without limiting the applicability of any other agreement to which any Member is subject, no Member shall, directly or indirectly, disclose or use (other than solely for the purposes of such Member monitoring and analyzing its investment in the Company) at any time, including, without limitation, use for personal, commercial, or proprietary advantage or profit, either during its association with the Company or thereafter, any Confidential Information of which such Member is or becomes aware.  Each Member in possession of Confidential Information shall take all appropriate steps to safeguard such information and to protect it against disclosure, misuse, espionage, loss, and theft.

(b)      Nothing contained in Section 12.03(a) shall prevent any Member from disclosing Confidential Information: (i) upon the order of any court or administrative agency; (ii) upon the request or demand of any regulatory agency or authority having jurisdiction over such Member; (iii) to the extent compelled by legal process or required or requested pursuant to subpoena, interrogatories, or other discovery requests; (iv) to the extent necessary in connection with the exercise of any remedy hereunder; (v) to the other Members; or (vi) to such Member's Representatives who, in the reasonable judgment of such Member, need to know such Confidential Information and agree to be bound by the provisions of this Section 12.03 as if a Member; or (vii) to any potential Transferee in connection with a proposed Transfer of Membership Interests from such Member, as long as such potential Transferee agrees in writing to be bound by the provisions of this Section 12.03 as if a Member before receiving such Confidential Information; provided, that in the case of clause (i), (ii), or (iii), such Member shall notify the Company and other Members of the proposed disclosure as far in advance of such disclosure as practicable (but in no event make any such disclosure before notifying the Company and other Members) and use reasonable efforts to ensure that any Confidential Information so disclosed is accorded confidential treatment satisfactory to the Company, when and if available.

45

(c)     The restrictions of Section 12.03(a) shall not apply to Confidential Information that: (i) is or becomes generally available to the public other than as a result of a disclosure by a Member in violation of this Agreement; (ii) is or has been independently developed or conceived by such Member without use of Confidential Information; or (iii) becomes available to such Member or any of its Representatives on a non-confidential basis from a source other than the Company, the other Members, or any of their respective Representatives, provided, that such source is not known by the receiving Member to be bound by a confidentiality agreement regarding the Company.

(d)     The obligations of each Member under this Section 12.03 shall survive for so long as such Member remains a Member, and for three years following the earlier of (i) termination, dissolution, liquidation, and winding up of the Company; (ii) the withdrawal of such Member from the Company; or (iii) such Member's Transfer of its Membership Interests; provided that with respect to Confidential Information that constitutes a trade secret under Applicable Law, the obligations of each Member under this Section 12.03 shall survive until, if ever, such Confidential Information loses its trade secret protection other than due, directly or indirectly, to an act or omission of the Member.

**Section 12.04 Notices.**  All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given:

(a)     when delivered by hand (with written confirmation of receipt);

(b)     when received by the addressee if sent by a nationally recognized overnight courier (receipt requested);or

(c)     on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 12.04):

| **If to the Company:** | Fieldwood Energy I LLC |
| --- | --- |
| | [COMPANY ADDRESS] |
| | Attention: [TITLE OF OFFICER TO RECEIVE NOTICES] |

EMF_US 81719156v10
#93633328v11

|                                                         |                                                                                                                                 |
| ------------------------------------------------------- | ------------------------------------------------------------------------------------------------------------------------------- |
| with a copy to:<br><br>(which shall not constitute notice) | Hunton Andrews Kurth LLP<br>600 Travis Street<br>Suite 4200<br>Houston, TX 77002<br>Attention: G. Michael O'Leary                |
| **If to the Independent Director:**                     | [INDEPENDENT DIRECTOR ADDRESS]<br>Attention: [TITLE OF OFFICER TO RECEIVE NOTICES]                                               |
| with a copy to:<br><br>(which shall not constitute notice) | Hunton Andrews Kurth LLP<br>600 Travis Street<br>Suite 4200<br>Houston, TX 77002<br>Attention: G. Michael O'Leary                |
| **If to a Member**:                                     | To the Member's respective mailing address as set forth on the Members Schedule.                                                 |

**Section 12.05 Headings.** The headings in this Agreement are inserted for convenience or reference only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision of this Agreement.

**Section 12.06 Severability.** If any term or provision of this Agreement is held to be invalid, illegal, or unenforceable under Applicable Law in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Except as provided in Section 9.03(g), upon such determination that any term or other provision is invalid, illegal, or unenforceable, this Agreement shall be modified automatically so as to effect the original intent of the parties as closely as possible in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible, legal, and enforceable.

**Section 12.07 Entire Agreement.** This Agreement, together with the Certificate of Formation and all related Exhibits and Schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

**Section 12.08 Successors and Assigns.** Subject to the restrictions on Transfers set forth herein, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns.

**Section 12.09 No Third-Party Beneficiaries.** Except (a) with respect to certain rights reserved to Apache as set forth in this Agreement, which shall be for the benefit of and enforceable by Apache, and (b) as provided in ARTICLE IX, which shall be for the benefit of and enforceable by Covered Persons as described therein, this Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, successors, and assigns) and nothing herein, express or implied, is intended to or shall confer upon any other Person, including any creditor of the Company, any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 12.10 Amendment.** Subject to Sections 2.02 and 7.06(i), no provision of this Agreement may be amended or modified except by an instrument in writing executed by the Company and the Members holding a majority of the Membership Interests. Any such written amendment or modification will be binding upon the Company and each Member. Notwithstanding the foregoing, amendments to the Members Schedule following any new issuance, redemption, repurchase, or Transfer of Membership Interests in accordance with this Agreement may be made by the Independent Director without the consent of or execution by the Members.

**Section 12.11 Waiver.** No waiver by any party or Apache of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving or Apache, respectively. No waiver by any party or Apache shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege. For the avoidance of doubt, nothing contained in this Section 12.11 shall diminish any of the explicit and implicit waivers described in this Agreement.

**Section 12.12 Governing Law.** All issues and questions concerning the application, construction, validity, interpretation, and enforcement of this Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas.

**Section 12.13 Submission to Jurisdiction.** The parties hereby agree that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the federal courts of the United States of America or the courts of the State of Texas, in each case located in Harris County and in Houston, Texas. Each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate

48

appellate courts therefrom) in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding that is brought in any such court has been brought in an inconvenient forum. Service of process, summons, notice, or other document by registered mail to the address set forth in Section 12.04 shall be effective service of process for any suit, action, or other proceeding brought in any such court.

**Section 12.14 Waiver of Jury Trial**. EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**Section 12.15 Equitable Remedies.** Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties or Apache, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto and Apache shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance, and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

**Section 12.16 Attorney's Fees.** In the event that any party or third-party beneficiary hereto institutes any legal suit, action, or proceeding, including arbitration, against another party in respect of a matter arising out of or relating to this Agreement, the prevailing party or third-party beneficiary in the suit, action, or proceeding shall be entitled to receive, in addition to all other damages to which it may be entitled, the costs incurred by it in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

**Section 12.17 Remedies Cumulative.** The rights and remedies under this Agreement are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise, except to the extent expressly provided in Section 9.02 to the contrary.

**Section 12.18 Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by email or other means of Electronic Transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

(SIGNATURE PAGE FOLLOWS)

49

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**The Company:**

FIELDWOOD ENERGY I LLC,
a Texas limited liability company

By:_____
[NAME]
[TITLE]

**The Initial Member:**

[_____]
a [_____]

By:_____
[NAME]
[TITLE]

EMF_US 81719156v10
#93633328v11

**EXHIBIT A**

**FORM OF TRANSITION SERVICES AGREEMENT**

**SCHEDULE A**

**MEMBERS SCHEDULE**

| Member Name, and Address | Capital Contribution | Membership Interest |
|---|---|---|
| [_____] [ADDRESS] | $[AMOUNT] | 100% |
| Total: | $[AMOUNT] | 100% |

EMF_US 81719156v10
#93633328v11

**SCHEDULE B**

**INDEPENDENT DIRECTOR'S COMPENSATION**

[To be the market compensation needed to attract a qualified candidate to accept the position.]

EMF_US 81719156v10
#93633328v11

# SCHEDULE C

## SOLE MANAGER'S COMPENSATION

[To be the market compensation needed to attract a qualified candidate to accept the position.]

EMF_US 81719156v10
#93633328v11

**SCHEDULE D**

**ACCOUNTING PROCEDURES FOR APACHE OFFICERS AND EMPLOYEES**

I.      DIRECT CHARGES

1.      LABOR

A.      Salaries and wages, including incentive compensation programs as set forth in COPAS MFI-37 ("Chargeability of Incentive Compensation Programs"), for:

> (1)      Apache's field employees directly employed on-site in the conduct of plugging and abandonment and decommissioning activities with respect to the applicable Legacy Apache Property or the GOM Shelf Property, and

> (2)      Apache's employees providing First Level Supervision.

Charges for Apache's employees identified in Section I.1.A may be made based on the employee's actual salaries and wages, or in lieu thereof, a day rate representing Apache's average salaries and wages of the employee's specific job category.

Charges for personnel chargeable under this Section I.1.A who are foreign nationals shall not exceed comparable compensation paid to an equivalent U.S. employee pursuant to this Section I.1.

B.      Apache's cost of holiday, vacation, sickness, and disability benefits, and other customary allowances paid to employees whose salaries and wages are chargeable under Section I.1.A, excluding severance payments or other termination allowances. Such costs under this I.1.B may be charged on a "when and as-paid basis" or by "percentage assessment" on the amount of salaries and wages chargeable under Section I.1.A. If percentage assessment is used, the rate shall be based on Apache's cost experience.

C.      Expenditures or contributions made pursuant to assessments imposed by governmental authority that are applicable to costs chargeable under Sections I.1.A and B.

D.      Personal expenses of personnel whose salaries and wages are chargeable under Section I.1.A when the expenses are incurred in connection with directly chargeable activities.

E.      Apache's cost of established plans for employee benefits, as described in COPAS MFI-27 ("Employee Benefits Chargeable to Joint Operations and Subject to Percentage Limitation"), applicable to Apache's labor costs chargeable under Sections I.1.A and B based on Apache's actual cost not to exceed 40%.

Sch. D-1

F.     Award payments to employees, in accordance with COPAS MFI-49 ("Awards to Employees and Contractors") for personnel whose salaries and wages are chargeable under Section I.1.A.

## II. OVERHEAD

As compensation for costs not specifically identified as chargeable pursuant to Section I (Direct Charges), Apache shall be reimbursed in accordance with this Section II.

Functions included in the overhead rates regardless of whether performed by Apache, Apache's Affiliates or third parties and regardless of location, shall include, but not be limited to, costs and expenses of:

- design and drafting
- inventory costs
- procurement
- administration
- accounting and auditing
- human resources
- management
- supervision not directly charged under Section I.1 (Labor)
- in-house legal services
- taxation
- preparation and monitoring of permits and certifications; preparing regulatory reports; appearances before or meetings with governmental agencies or other authorities having jurisdiction over the applicable Legacy Apache Property or GOM Shelf Property, other than on-site inspections.

Overhead charges shall include the salaries or wages plus applicable payroll burdens, benefits, and personal expenses of personnel performing overhead functions, as well as office and other related expenses of overhead functions.

To compensate Apache for overhead costs incurred in connection with any particular plugging and abandonment or decommissioning project conducted on any applicable Legacy Apache Property or GOM Shelf Property, the following overhead rates shall be applied to those costs incurred in the performance of such plugging, abandonment, and decommissioning activities:

(1)     5% of total costs if such costs are less than $100,000; plus

(2)     3% of total costs in excess of $100,000 but less or equal to $1,000,000; plus

(3)     2% of total costs in excess of $1,000,000.

Total cost shall mean the gross cost of any one project

EMF_US 81719156v10
#93633328v11

**Exhibit 7**

**ST 308 Bond Form**

# PERFORMANCE BOND

**Bond Number:** _____

## KNOW ALL MEN BY THESE PRESENTS:

**That** we, [Fieldwood Energy II LLC, a Texas limited liability company] with its principal office at [_____] (hereinafter called the "***Principal***") and [_____] with its principal mailing address at [_____] (hereinafter called the "***Surety***") are held and firmly bound unto Apache Corporation, with its principal office at 2000 Post Oak Blvd., Suite 100, Houston, TX 77056 (hereinafter called the "***Obligee***"), in the penal sum of Thirteen Million Two Hundred Thousand and 00/100 Dollars ($13,200,000.00) (the "***Amount***") lawful money of the United States of America for the payment of which penal sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

**WHEREAS**, pursuant to the terms of that certain [_____ dated effective _____ by and between Fieldwood Energy LLC ("***Fieldwood***") and Principal (the "***Purchase Agreement***")], Principal acquired from Fieldwood certain interests in the lease described on Exhibit "A" attached hereto and in the wells, facilities, platforms, structures, pipelines, and associated equipment located thereon (such interests so acquired collectively, the "***Property***"); and

**WHEREAS**, in accordance with the terms of the Purchase Agreement and the documents executed in connection therewith, Principal (i) assumed the obligations attributable to the Property to perform and complete the plugging, abandonment, decommissioning, and site clearance for the Properties in compliance with all applicable law, rules, and regulations (the "***P&A Obligations***") (for the avoidance of doubt, the P&A Obligations do not include any obligations of, or any obligations attributable to the interests of, Apache Shelf Exploration LLC or any other current co-owner or their successors or assigns in the Property other than Principal), including but not limited to, the rules and regulations of the Bureau of Ocean Energy Management ("***BOEM***"), the Bureau of Safety and Environmental Enforcement ("***BSEE***"), and their respective successor agencies and (ii) agreed to deliver to Obligee this Performance Bond to secure the performance of the P&A Obligations;

**NOW THEREFORE**, notwithstanding anything contained herein to the contrary, if the P&A Obligations are satisfied (as evidenced by providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, satisfied, and extinguished, together with an affidavit signed by an officer of Principal attesting to such performance), then this Bond and the obligations hereunder shall be null and void; otherwise, this Bond shall remain in full force and effect in the amount hereof; provided that if Principal performs or causes to be performed operations and activities to satisfy any part of the P&A Obligations, then following BSEE's approval of the performance of such operations or activities, the Amount will be automatically reduced to an amount equal to the lesser of (i) the Amount or (ii) one hundred twenty-five percent (125%) of BSEE's then current decommissioning cost estimate for the remaining P&A Obligations.

**FURTHERMORE,** if as to any Property, a Principal Default, as defined below, occurs and is not cured and Obligee is required by BOEM, BSEE, or any governmental authority, to perform any of the P&A Obligations (or a demand is made upon Obligee by a co-obligor of Principal to perform or contribute toward the costs of performing any of the P&A Obligations following such Principal Default and

Obligee is required by law or contract to so perform or contribute), then prior to any performance by Obligee of any such P&A Obligations (or payment of Obligee to such co-obligor of a share of the estimated costs of performing such P&A Obligations if such demand for such payment is made on Obligee), Surety agrees to pay to Obligee an amount reasonably estimated by Obligee as necessary or appropriate to perform such P&A Obligations (or to pay its share of the estimated costs of such P&A Obligations if such demand is made by such co-obligor following such failure) in an amount up to, but not exceeding, the Amount. The Amount shall be automatically reduced by any and all amounts paid by Surety to Obligee.

**FURTHERMORE**, it is agreed that the Surety shall have no obligation to the Principal, the Obligee, or any other person or entity for any loss suffered by the Principal, the Obligee, or any other person or entity by reason of acts or omissions for which Obligee receives payment from the Principal's general liability insurance, products liability insurance, or completed operations insurance. In no event shall the Surety be obligated to incur Surety Costs and/or pay**,** in the aggregate, for all claims hereunder, an amount exceeding the Amount.

It is further agreed that the Surety shall not be liable for any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of the work and/or operations of any party in forming the P&A Obligations.

If Principal fails to perform any of the P&A Obligations in accordance with the terms of the Purchase Agreement and/or any applicable laws, rules, regulations, or governmental orders (or to pay its share of the estimated costs for the P&A Obligations if demand is made by the Principal's co-obligor which share is otherwise payable by Obligee upon Principal's failure to pay) then Principal shall have thirty (30) days following receipt of notice of default from Obligee in which to fully cure or remedy such default, provided that the Surety shall have the option to either cure or remedy such default within such thirty (30) day period by hiring a contractor (subject to Obligee's prior, reasonable written approval) to perform such P&A Obligations in accordance with the terms and conditions of the Purchase Agreement and all applicable laws, rules, regulations, or governmental orders (any such costs incurred by the Surety to so cure or remedy such default, the "***Surety Costs***") or by making payment to Obligee for such P&A Obligations in an amount reasonably estimated by Obligee as necessary or appropriate to perform such P&A Obligations (or to pay its share of the estimated costs for such P&A Obligations if demand is made by the Principal's co-obligor in connection with such co-obligor's performance of such P&A Obligations) in an amount up to, but not exceeding, the Amount. Obligee agrees to provide Surety with a copy of each such default notice. If the default covered by such default notice is not cured or remedied within such thirty (30) day period then upon the expiration of such thirty (30) day period such default shall constitute a "***Principal Default***" for purposes of this Bond.

No amendment of or supplement to the terms or provisions of the Purchase Agreement, the agreements and instruments entered into in association therewith, or the exhibits or schedules attached thereto shall release the Principal and the Surety or any of them from their liability under this Performance Bond, notice to the Surety of any such amendment or supplement being hereby waived.

No (i) assignment of the Purchase Agreement, the agreements and instruments entered into in association therewith, or of the Properties by the Principal, its successors and assigns, (ii) delay, neglect or failure of the Obligee to proceed promptly to enforce any rights it might have against Principal under the Purchase Agreement or otherwise or to proceed promptly in the premises in case of any default on the part of the Principal, (iii) lack of enforceability or other defense or offset right in respect of any

obligation of Principal or any right to Obligee under the Purchase Agreement or otherwise in respect of the P&A Obligations, or (iv) the insolvency, bankruptcy, or receivership of Principal, shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Performance Bond; and Principal and Surety hereby waive any defense or argument they may in relation to their obligations under this Performance Bond in connection with any of the foregoing.

**HOWEVER**, if upon assignment of the Property or any part thereof by the Principal, its successors, or assigns, the Principal shall cause its assignee (i) to post security with Obligee, in a form and amount reasonably satisfactory to Obligee and otherwise containing terms and issued by the parties that are reasonably satisfactory to Obligee (including terms no less favorable in the aggregate to Obligee than those contained in this Performance Bond and from a surety or other party issuing the applicable security having a [S&P rating of A- or better or an A.M. Best rating of A- or better and, in either case, listed on the Federal Register as acceptable to the U.S. Treasury to issue bonds for U.S. government obligees (T-listed)]) and (ii) to assume (in a written instrument approved by Obligee) all P&A Obligations, then the Obligee will accept such security in lieu of this Bond and issue an unconditional release of the Bond within thirty (30) days of Obligee's acceptance of such other security.

**NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY**, in the event one or more dual obligee bonds in favor of Obligee and the United States of America acting through and by the Bureau of Ocean Energy Management ("***BOEM***") (i) are delivered to BOEM and Obligee, (ii) contain terms no less favorable in the aggregate to Obligee than those contained in this Performance Bond, (iii) are issued by a surety having a [S&P rating of A- or better or an A.M. Best rating of A- or better and, in either case, listed on the Federal Register as acceptable to the U.S. Treasury to issue bonds for U.S. government obligees (T-listed)]), (iv) cover all or part of the P&A Obligations, and (v) do not cover any other obligations (other than the P&A Obligations) such that the penal sum of such bond could be reduced as a result of the satisfaction or reduction of such other obligations, then the Amount of this Performance Bond shall automatically be reduced to the positive difference, if any, between the current Amount and the penal sum of such dual obligee bond(s).

No right or action shall accrue on this Performance Bond to or for the use of any person or corporation other than the Principal, the Obligee, and their respective heirs, executors, administrators, successors, and assigns.

This Performance Bond may not be amended, supplemented, or modified except pursuant to a written instrument duly executed by the Principal, Surety, and Obligee. No course of conduct, dealing, or performance shall amend, supplement, or modify this Performance Bond unless incorporated into a written instrument referenced in the preceding sentence.

This Bond shall be governed by and construed in accordance with the laws of the State of Texas, excluding its conflicts of laws rules and principles. Principal, Surety, and Obligee agree that any dispute arising out of this Performance Bond shall be brought and heard exclusively in the state or federal courts sitting in Harris County, Texas, and all of them irrevocably consent to the jurisdiction of said courts and do hereby waive any objections they may have to the laying of venue in such courts, including objections based upon grounds that such venue is inconvenient.

The Obligee will issue a release of this Bond within a reasonable time period following the earlier to occur of (i) its receipt of satisfactory evidence of the full performance, satisfaction, and extinguishment of the P&A Obligations in accordance with all applicable laws, rules, regulations, and orders, (ii) the full performance by Surety of its obligations under this Bond and (iii) the incurrence of Surety Costs and/or the making of payments by the Surety under the Bond of an amount equal to the Amount, in each case,