# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | **Chapter 11** |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § § | **Case No. 20-33948 (MI)** |
| Debtors.[1] | § § § | **(Jointly Administered)** |

### DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING EXCLUSIVE PERIODS PURSUANT TO SECTION 1121(d) OF BANKRUPTCY CODE

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Fieldwood Energy LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), file this motion (the "**Motion**") for entry of an order further extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and to solicit acceptances thereof (the "**Exclusive Solicitation Period**" and together with the Exclusive Filing period, the "**Exclusive Periods**") by an additional 90 days through and including May 31, 2021,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

and July 29, 2021, respectively.[2]  In support of the Motion, the Debtors respectfully represent as follows:

**Preliminary Statement**

1.    As the Court is aware, in early January, the Debtors reached a major milestone in these chapter 11 cases when they filed their chapter 11 plan and related disclosure statement with the support of the DIP Lenders,[3] the FLTL Lenders holding approximately 76.75% of the FLTL Claims, the SLTL Lenders holding approximately 28.91%[4] of the SLTL Claims, and Apache Corporation ("**Apache**"), the predecessor in interest for the vast majority of the Debtor' Shelf Assets.  Since then, the Debtors have continued to make significant progress towards confirming a chapter 11 plan that seeks to maximize value for the Debtors' creditors and other stakeholders and ensure that all P&A Obligations are performed in a responsible and safe manner.

2.    Over the past two months, the Debtors have been focused on: (i) finalizing several key plan transaction documents and exhibits to their Disclosure Statement with the Consenting Creditors and Apache and (ii) advancing discussions with their other key stakeholders. The Debtors have made significant progress towards finalizing the terms of their proposed recapitalization of the Debtors' deepwater E&P business into a more streamlined efficient enterprise that would preserve the jobs of over 1,000 employees and contractors, including the following:

---

[2]    Ninety days after March 1, 2021 is Sunday, May 30, 2021.  Consequently, in accordance with Bankruptcy Rule 9006(a)(1)(C), the Debtors seek to extend the deadline to Monday, May 31, 2021.

[3]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement (each defined below), as applicable.

[4]    The Plan is now supported by Prepetition FLTL Lenders holding in excess of 84.11% of the FLTL Claims and Prepetition SLTL Lenders holding in excess of 30.42% of the SLTL Claims.

- **Credit Bid Purchase Agreement**. The Debtors have made substantial progress in their negotiations with the Consenting FLTL Lenders on the terms of a substantially final version of the Credit Bid Purchase Agreement.

- **First Lien Exit Facility**. The Debtors have made substantial progress in their negotiations with the FLFO Lenders and are close to finalizing a term sheet with the FLFO Lenders for the first lien term loan exit facility to fund the Credit Bid Purchaser.

- **Second Lien Exit Financing and Backstop Commitment**. The Debtors are close to securing a commitment for an up to $185 million second lien term loan facility (the "**Second Lien Exit Facility**") to fund the Credit Bid Purchase Transaction and initial capital needs of the Credit Bid Purchaser, to be fully backstopped by the Backstop Parties in accordance with and subject to the terms and conditions of the Backstop Commitment Letter.

- **Other Disclosure Statement Exhibits**. The Debtors prepared their Liquidation Analysis, Financial Projections, Valuation Analysis, and updated oil and gas lease schedules for each category of properties.

- **Negotiations with Apache**. As announced in the initial disclosure statement, the Debtors and Apache negotiated substantially final forms of the definitive documents providing for the transactions contemplated by, or relating to, the Apache Term Sheet (the "**Apache Definitive Documents**"). Since then, the Debtors have continued to work with Apache to finalize the Apache transactions documents by, among other things, negotiating the schedule of FWE I Oil & Gas Lease Interests and obtaining Court approval of the Apache Sublease Amendment and assumption of the Apache Sublease. *See* Docket No. 898.

3. As summarized below, the Debtors have also made significant progress with their other key stakeholders, including (i) the Bureau of Ocean Energy Management ("**BOEM**"), Bureau of Safety and Environmental Enforcement ("**BSEE**"), the Department of Interior ("**DOI**") and the Department of Justice ("**DOJ**"), (ii) predecessors in interest (the "**Predecessors**"), (iii) co-working interest owners (the "**CIOs**"), (iv) surety providers (the "**Sureties**"), (v) the Creditors' Committee, and (vi) trade vendors, including the following:

- ***Discussions with Regulators / Predecessors / CIOs***. The Debtors have been in regular discussions with their regulators, the Predecessors, and CIOs regarding the terms of their proposed restructuring, including the Debtors' plan for abandoning the Abandoned Properties, in an effort to reach

consensual arrangements for transitioning such properties in a safe and orderly manner.  The Debtors' efforts include, among other things:

- o  in response to feedback from various parties, significantly expanding the scope of information and level of detail included in the oil and gas lease schedules attached to the Disclosure Statement;

- o  producing thousands of pages of documents in response to numerous formal and informal information and document requests and providing parties with access to a document-hosting platform loaded with diligence materials;

- o  providing personalized presentations tailored to a specific Predecessor's potential exposure to P&A liabilities;

- o  preparing comprehensive operational transition plans for the Abandoned Properties, which the Debtors expect to deliver to Predecessors on a rolling basis;

- o  proposing to each Predecessor a post-exit transition services agreement whereby NewCo would continue to operate the Abandoned Properties for a 90-day period at the Predecessor's expense, but charged at cost only; and

- o  engaging in ongoing discussions with the Predecessors regarding commercial agreements similar to the FWE I structure.

- • ***Sureties***.  The Debtors have been in regular discussions with their surety providers, have produced thousands of documents in response to formal and informal requests, and have provided several Sureties with presentations tailored to their potential exposure for P&A liability and potential considerations to mitigate such potential liability.

- • ***Managing Vendor Relations***.  The Debtors and their advisors have continued to manage relations with the Debtors' vendors through the Debtors' vendor program by completing 149 trade agreements resolving approximately $136 million of prepetition claims and continuing to work towards completing an additional 11 trade agreements representing an additional $8.3 million of prepetition claims.

- • ***Creditors' Committee***.  The Debtors have actively engaged with the Creditors' Committee and are in productive ongoing discussions regarding a consensual resolution for the Plan treatment of unsecured claims.

4.      In addition to the considerable progress made with each of their stakeholder groups, the Debtors have recently made a number of other major achievements in these chapter 11

cases, including (i) obtaining entry of an order from this Court compelling a counterparty to perform under pre-petition agreements to allow the Debtors to bring the Genevosa wells online in a timely manner and thereby avoid forfeiting valuable estate assets and (ii) resolving certain criminal and civil violations alleged by the United States Attorney's Office for the Eastern District of Louisiana by executing a non-prosecution agreement (the "**NPA**").

5.      Accordingly, in light of the progress made by the Debtors in these chapter 11 cases and the proposed timeline for seeking approval of their Disclosure Statement and confirmation of the Plan, the Debtors are seeking a 90-day extension of the Exclusive Periods.  For all these reasons and those further discussed below, cause exists to grant the Debtors an extension of the Exclusive Periods.

## Background

6.      Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

7.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

9.      On August 18, 2020, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

## Debtors' Plan and Disclosure Statement

10. On January 1, 2021, the Debtors filed (i) the *Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Docket No. 722) (as may be amended, modified, or supplemented, the "**Plan**"), (ii) the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Debtor Affiliates* (Docket No. 723) (as may be amended, modified, or supplemented, the "**Disclosure Statement**"), and (iii) the *Motion of Debtors for Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (VI) Approving Procedures for Objections to the Assignment and Transfer of Property of the Estate; (VII) Approving Bid Submission Deadline and Procedures for Submission of Higher or Better Bids; and (VIII) Granting Related Relief* (Docket No. 724) (the "**Disclosure Statement Approval Motion**").

## First Exclusivity Order

11. On December 1, 2020, the Debtors filed the *Debtors' Motion for Entry of an Order Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 625) (the "**First Exclusivity Motion**"). A limited objection to the First Exclusivity Motion and several joinders were filed by several of the Debtors' surety providers. (Docket Nos. 686, 688, 694). The Debtors filed a reply in support of the First Exclusivity Motion on January 1, 2021 (Docket No. 725).

12. On January 8, 2021, the Court entered an order extending (i) the Exclusive Filing Period through and including March 1, 2021, and (ii) the Exclusive Solicitation Period

through and including April 30, 2021, in each case, without prejudice to the Debtors' rights to seek additional extensions of such periods (Docket No. 751) (the "**First Exclusivity Order**").

### Jurisdiction

13.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

14.     The Debtors request, pursuant to section 1121(d) of the Bankruptcy Code, an extension of the Exclusive Filing Period by 90 days through and including May 31, 2021, and the Exclusive Solicitation Period through and including July 29, 2021, without prejudice to the Debtors' right to request further extensions of such periods in accordance with section 1121(d) of the Bankruptcy Code.  The Debtors' Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on March 1, 2021, and April 30, 2021, respectively.[5]

15.     A proposed form of order approving the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

### Basis for Relief

16.     Section 1121(b) of the Bankruptcy Code provides an initial 120-day Exclusive Filing Period and an initial 180-day Exclusive Solicitation Period.  The Debtors' initial Exclusive Filing Period and Exclusive Solicitation Period were set to expire on December 1, 2020

---

[5]     Rule 18 of the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* provides that "if a motion is filed that complies with Bankr. Loc. R. 9013-1 to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules, the time for taking the action is automatically extended until the Court rules on the motion."  By the filing of this Motion prior to the expiration of the Exclusive Filing Period, the Exclusive Filing Period will not expire until the Court resolves the Motion.

and January 30, 2020.  After entry of the First Exclusivity Order, the Exclusive Filing Period was

extended to March 1, 2021 and the Exclusive Solicitation Period was extended to April 30, 2021.

17.    Under section 1121(d) of the Bankruptcy Code, the Court may extend the

Exclusive Periods for cause:

> Subject to paragraph (2),[6] on request of a party in interest made within the
> respective periods specified in subsections (b) and (c) of this section and after notice
> and a hearing, the court may for cause reduce or increase the 120-day period or the
> 180-day period referred to in this section."

11 U.S.C. § 1121(d).

18.    The Bankruptcy Code neither defines the term "cause" for purposes of

section 1121(d) nor establishes formal criteria for an extension.  The legislative history of section

1121 of the Bankruptcy Code indicates, however, that it is intended to be a flexible standard to

balance the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95–595, at 231–

32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give

Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an

unimpeded opportunity to negotiate settlement of debts without interference from other parties in

interest); *In re Timbers of Inwood Forest Assoc., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) ("Any

bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the

legislative goal behind § 1121."); *In re Mirant Corp.*, Ch. 11 Case No. 4-04-CV-476-A, 2004 WL

2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been

granted, the debtor showed substantial progress had been made in negotiations toward

reorganization").

---

[6]    Paragraph (2) provides that the Exclusive Periods may not be extended beyond 18 and 20 months, respectively,
after the Petition Date.  The extension requested by this Motion would not extend the Exclusive Periods beyond
18 and 20 months, respectively, after the Petition Date.

19.     The broad discretion conferred on the Court in these circumstances enables the Court to consider a variety of factors to assess the totality of circumstances in each case.  *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *In re Washington-St. Tammany Elec. Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests with the discretion of the Court"); *In re New Millennium Mgmt., LLC*, No. 13-35719-H3-11, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (identifying the *Adelphia* factors as factors to consider in determining whether cause exists to extend exclusivity); *In re Friedman's, Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005) (identifying the same factors); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P. 8th Cir. 2003) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).

These non-exclusive factors include:

(i)      the size and complexity of the debtor's case;

(ii)     the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii)    the existence of good faith progress towards reorganization;

(iv)    the fact that the debtor is paying its bills as they become due;

(v)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi)    whether the debtor has made progress in negotiations with its creditors;

(vii)   whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(viii)  whether an unresolved contingency exists.

*See, e.g.*, *Millennium Mgmt.*, 2014 WL 792115, at *6; *see also Adelphia*, 352 B.R. at 587 (noting that the factors listed above are "objective factors which courts historically have considered in

making determinations of this character"); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity).

20. Not all factors are relevant to every case, and courts tend to use a relevant subset of the above factors in determining whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g.*, *Hoffinger Indus.*, 292 B.R. at 644 ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Serv. Merch. Co.*, 256 B.R. 744, 751-54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the aforementioned factors); *Express One Int'l*, 194 B.R. at 100 (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

### Cause Exists to Extend Exclusive Periods

21. A further extension of the Exclusive Periods by 90 days is necessary and appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11 of the Bankruptcy Code. Ample cause exists to grant the Debtors the extensions of the Exclusive Periods as, the requested extension of the Exclusive Periods will enable the Debtors to pursue confirmation and implementation of a chapter 11 plan without the risk of competing plans and the attendant disruption, expense, and delay. Accordingly, application of the relevant factors listed above to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

## A. Debtors Have Made, and Continue to Make, Good Faith Progress Towards Reorganization

22. Since entry of the First Exclusivity Order, the Debtors have continued to build on the momentum gained from filing their chapter 11 plan and disclosure statement on January 1, 2021.

23. First, the Debtors have significantly advanced the Plan transaction documents with the other RSA parties, including:

- Made substantial progress in their negotiations with the Consenting FLTL Lenders on the terms of a substantially final version of the Credit Bid Purchase Agreement;

- made substantial progress in their negotiations with the FLFO Lenders and are close to finalizing a term sheet with the FLFO Lenders for a first lien term loan exit facility to fund the Credit Bid Purchaser;

- are close to securing the Second Lien Exit Facility to fund the Credit Bid Purchase Transaction and initial capital needs of the Credit Bid Purchaser, to be fully backstopped by the Backstop Parties in accordance with and subject to the terms and conditions of the Backstop Commitment Letter;

- prepared their Liquidation Analysis, Financial Projections, Valuation Analysis, and updated oil and gas lease schedules for each category of properties; and

- continued to work with Apache to finalize the Apache transaction documents by, among other things, finalizing the schedule of FWE I Oil & Gas Lease Interests and obtaining Court approval of the Apache Sublease Amendment and assumption of the Apache Sublease.

## B. Debtors Have Made Substantial Progress in Discussions with Other Key Stakeholder Groups

24. The Debtors have also made substantial progress in their discussions with their regulators, the Predecessors, the Sureties, the CIOs, and the vendors, including:

- made significant progress with BOEM, BSEE, DOI, and DOJ on regulatory and legal matters;

- been in regular discussions with their regulators, the Predecessors, and CIOs regarding the terms of their proposed restructuring, including the Debtors'

plan for abandoning the Abandoned Properties, by (i) significantly expanding the scope of information and level of detail included in the oil and gas lease schedules attached to the Disclosure Statement, (ii) producing thousands of pages of documents in response to numerous formal and informal information and document requests and providing access to a document-hosting platform loaded with diligence materials, (iii) providing personalized presentations tailored to a specific Predecessor's potential exposure to P&A liabilities, (iv) preparing comprehensive operational transition plans for the Abandoned Properties, which the Debtors expect to deliver on a rolling basis, (v) proposing to each Predecessor a post-exit transition services agreement whereby NewCo would continue to operate the Abandoned Properties for a 90-day period at the Predecessor's expense, but charged at cost only, and (vi) engaging in ongoing discussions with the Predecessors regarding commercial agreements similar to the FWE I structure;

- similarly engaged with their surety providers by producing thousands of documents in response to formal and informal requests, providing several Sureties with presentations tailored to their potential exposure to P&A liabilities, and discussing ways to mitigate such potential liability;

- continued to manage relations with the Debtors' vendors through the Debtors' vendor program by completing 149 trade agreements resolving approximately $136 million of prepetition claims and continuing to work towards completing an additional 11 trade agreements representing an additional $8.3 million of prepetition claims;

- actively engaged with the Creditors' Committee and are in productive ongoing discussions regarding a consensual resolution for the Plan treatment of unsecured claims;

- obtained entry of an order from this Court compelling a counterparty to perform under pre-petition agreements in order to allow the Debtors to bring the Genevosa wells online in a timely manner and thereby avoid the risk of forfeiting valuable estate assets;

- resolved certain criminal and civil violations alleged by the United States Attorney's Office for the Eastern District of Louisiana by executing the NPA; and

- successfully mediated with a co-working interest owner resolving, among other things, a dispute over cure costs in another chapter 11 case, which settlement agreement will be presented to the Court for approval under Bankruptcy Rule 9019.

25.     In light of the considerable progress made towards finalizing the Plan transaction documents with the Consenting Lenders and Apache and advancing discussions with their other key stakeholder groups, the Debtors submit that a 90-day extension of the Exclusive Periods is reasonable and appropriate to ensure that the Debtors' continued progress is not impeded due to a loss of exclusivity and to provide the Debtors a full and fair opportunity to advance a value-maximizing chapter 11 plan without the distraction of competing plan proposals.  On this basis alone, the requested exclusivity extension is warranted.  *See Adelphia*, 352 B.R. at 588 (viewing the good faith factor "as one of the more important factors" in the analysis).  Accordingly, in light of the substantial process made to date and the complexity of the transactions contemplated by the Plan, the Exclusive Periods should be extended by a further 90 days to provide the Debtors with adequate time to file and prosecute their chapter 11 plan.

**C.      Debtors Are Making Administrative Expense Payments and Will Continue to Do So**

26.     Courts considering an extension of exclusivity also assess a debtor's liquidity. *See Millennium Mgmt.*, 2014 WL 792115, at *6. Here, the Debtors are paying administrative expenses as they come due and will continue to do so.  In addition, as set forth in the monthly operating reports filed to date, the Debtors have made approximately $370 million in disbursements since the Petition Date and have a total cash balance of approximately $110 million as of January 30, 2021 (excluding cash held in trust or escrow accounts). *See Debtor-in-Possession Monthly Operating Report for Reporting Period of January 1, 2021 through January 30, 2021* (Docket No. 922). Moreover, the Debtors have access to approximately $90 million in DIP Financing pursuant to the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105,. 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(d)(1), and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. §§ 363, and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364,*

*and 507(b)* (Docket No. 346). The Debtors continue to monitor their liquidity closely and are confident that sufficient funding will be available to satisfy their postpetition payment obligations during the requested extension of the Exclusive Periods.

**D.      An Extension of the Exclusive Periods Will Not Prejudice Creditors**

27.      As detailed above, the Debtors are prepared to move forward with the Disclosure Statement hearing and, if approved by the Court, solicit a chapter 11 plan designed to maximize value for the Debtors' stakeholders.  In the meantime, the Debtors will continue to engage with their stakeholders and are hopeful that these discussions will result in consensual arrangements with additional parties, including the Creditors' Committee and certain Predecessors and CIOs.  The complex issues present in these cases evidence the need for additional time for the Debtors to consult and negotiate with their stakeholders.  The Debtors believe that no party in interest is prejudiced by the requested extension of the Exclusive Periods because all stakeholders will benefit from the continued stability and predictability that comes with the Debtors being the sole plan proponents.  The stage of these cases, in light of their complexity, further supports the requested extensions.

**E.      Requested Extension Is in Best Interest of Debtors' Estates**

28.      The Debtors continue to work diligently to advance these cases and have filed a Plan and Disclosure Statement with the support of key stakeholders.  In addition to advancing discussions with the Consenting Creditors and Apache, the Debtors continue to make significant progress with their regulators, the Predecessors, the CIOs, the Sureties, the FLFO Lender, and the Creditors' Committee. The Debtors intend to use the additional time to continue to advance those discussions with the aim of negotiating as many consensual arrangements as possible and maximizing support for the Plan.

29.     The facts in these cases are more than sufficient to support a finding of "cause" to  extend the Exclusive Periods.    Therefore, it is appropriate for the Court to extend the Exclusive Periods to allow the Debtors to build on the considerable momentum achieved to date and seek confirmation of a chapter 11 plan without the risk of distraction, delay, and cost attendant to competing plan proposals.

**F.      Other Factors Continue to Support the Extension Request**

30.     The scale and complexity of the Debtors' businesses and corporate structure requires the Debtors to navigate complex issues in their restructuring efforts and further substantiates the need for an extension of the Exclusive Periods.  This factor weighs heavily in favor of extending exclusivity.  *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").  These chapter 11 cases consist of fourteen separate Debtor entities.  Moreover, the Debtors operate one of the largest oil and gas exploration and production companies in the Gulf of Mexico, employ approximately 1,000 employees across their offices in Houston, Lafayette, and offshore, and have approximately $1.8 billion in funded debt.  Their portfolio of properties includes both deepwater and shallow water assets in the Gulf of Mexico including over 300 operated platforms spread across over 1.5 million gross acres.

31.     Courts considering an extension of exclusivity also assess a debtor's liquidity.  *See Millennium Mgmt.*, 2014 WL 792115, at *6.  Here, the Debtors are continuing to pay administrative expenses as they come due.  The Debtors continue to monitor their liquidity closely and are confident that sufficient funding will be available to satisfy their postpetition payment obligations during the requested extension of the Exclusive Periods.

### Notice

32.    Notice of this Motion will be provided to (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 and (ii) any other party entitled to notice pursuant to Local Rule 9013-1(d).

### Prior Requests

33.    Except for the First Exclusivity Motion, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: March 1, 2021
       New York, New York

Respectfully submitted,

 /s/ Jessica Liou
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
             Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## **Certificate of Service**

I hereby certify that, on March 1, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

       */s/ Jessica Liou*
       Jessica Liou

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

## ORDER PURSUANT TO SECTION 1121(d)
## OF THE BANKRUPTCY CODE FURTHER EXTENDING EXCLUSIVE PERIODS

Upon the motion, dated March 1, 2021 (the "**Motion**"),[2] of Fieldwood Energy LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), for an order further extending the Debtors' exclusive periods in which to file a chapter 11 plan (the "**Exclusive Filing Period**") and solicit acceptances thereof (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"), pursuant to section 1121(d) of title of title 11 of the United States Code (the "**Bankruptcy Code**"), as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and a

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

hearing, if any, having been held to consider the relief requested in the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Exclusive Filing Period in which to file a chapter 11 plan is extended from March 1, 2021, through and including May 31, 2021.

2.      Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Exclusive Solicitation Period in which to solicit acceptances of its chapter 11 plan is extended from April 30, 2021, through and including July 29, 2021.

3.      The extensions of the Exclusive Periods granted herein are without prejudice the Debtors' rights to seek from this Court further extensions of time pursuant to 1121(d) of the Bankruptcy Code.

4.      The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

5.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2021
      Houston, Texas

                                        _____
                                        THE HONORABLE MARVIN ISGUR
                                        UNITED STATES BANKRUPTCY JUDGE