UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY, LLC,** *et al.,* | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

**EMERGENCY MOTION TO COMPEL DEBTORS TO RESPOND
SUBSTANTIVELY TO AN INTERROGATORY, PRODUCE
DOCUMENTS, AND/OR ALLOW ACCESS TO DATA ROOM(S)**

**Emergency relief has been requested.**

**If you object to the requested relief or you believe that emergency consideration is not warranted, you must file a written response prior to the below date by which relief is requested. Otherwise, the Court may treat the request as unopposed and grant the relief requested.**

**Relief is requested not later than May 7, 2021.**

BP Exploration & Production Inc. ("BP") files this Emergency Motion (the "Emergency Motion")[2] requesting that the Court compel Debtors to respond to an interrogatory and produce and/or allow access to certain information pursuant to sections 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure (the "Federal Rules") as incorporated by Rules 7026, 7033,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fieldwood Energy LLC (6778), Fieldwood Energy Inc. (4991), Fieldwood Onshore LLC (3489), Fieldwood SD Offshore LLC (8786), Fieldwood Energy Offshore LLC (4494), Fieldwood Offshore LLC (2930), GOM Shelf LLC (8107), FW GOM Pipeline, Inc. (8440), Galveston Bay Procession LLC (5703), Galveston Bay Procession LLC (0422), Fieldwood Energy SP LLC (1971), Dynamic Offshore Resources NS, LLC (0158), Bandon Oil and Gas, LP (9266), and Bandon Oil and Gas GP, LLC (9172). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] BP notes that the Scheduling Order contemplates the filing of letter briefs if the parties are unable to resolve discovery disputes. [Dkt. No. 1224 at ¶ 2]. Thereafter, on April 30, 2021, pursuant to the Scheduling Order, Apache Corporation ("Apache") filed a letter brief addressing a discovery dispute. [Dkt. No. 1322]. On May 3, 2021, the Court construed Apache's letter brief as a motion for leave to file an emergency motion under the local rules and granted Apache leave to file the same. [Dkt. No. 1322]. Therefore, consistent with the Court's guidance to Apache, BP files this Emergency Motion in accordance with Local Bankruptcy Rule 1075-1 and the Procedures for Complex Chapter 11 cases instead of filing a letter brief.

7034, 7037, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's Scheduling Order [Dkt. No. 1224], and respectfully states as follows:

## I.  BACKGROUND

1. On April 6, 2021, this Court issued a scheduling order (the "Scheduling Order") which provided an April 14, 2021 deadline to serve discovery requests and an April 30, 2021 deadline to complete document production and responses to other discovery requests. [Dkt. No. 1224 at ¶ 1].

2. On April 14, 2021, BP served its "First Set of Interrogatories and Second Set of Requests for Production of Documents to the Debtors." *See* **Exhibit A.**

3. BP's discovery requests sought in relevant part:

**Interrogatory No. 4:**

> Identify by name and address, and provide the name, address, telephone number, and e-mail address of the primary point of contact for, each person or entity who executed a confidentiality agreement and obtained access to the Houlihan's Sell Side virtual data room during the course of the M&A process, as discussed on page 6 of the Disclosure Statement.

**Request for Production Nos. 24–26:**

> 24. All of the documents and other data and information available at any time in Houlihan's Sell Side virtual data room from the June 2020 M&A process discussed in the Disclosure Statement and provided to Creditors Committee's advisors. *See* Disclosure Statement at p. 6.
>
> 25. Access to the "other data rooms" (or the documents and other data and information available at any time in such data rooms) referenced in the April 6, 2021 information request conference between Weil and Greenberg Traurig.
>
> 26. Copies of the "15 management presentations" and the "12 written bid letters and other indications of interest" as discussed in the Disclosure Statement as well as any other bid letters or other indications of interest received by Fieldwood in the last year. *See* Disclosure Statement at p. 6.

*See* **Exhibit A.**

      4.      On April 30, 2021, Debtors served their responses and objections to the same. *See* **Exhibit B**. For each of the above requests, the objections and responses were identical:

> The Debtors object to this Request on the grounds fully articulated in General Objection Nos. 1, 4, and 6.
>
> Subject to and without waiver of the foregoing objections, the Debtors have already produced all relevant and proportional documents and information in the "FWE – Confirmation Discovery\1 – Financials" folder, "FWE – Confirmation Discovery\4 – Expert Materials" folder, and the data room index the Debtors emailed BP on April 30, 2021. In accordance with the parties' meet and confer on April 28, 2021, BP will inform the Debtors if it identifies any further documents or information it needs related to this Request.

*See* **Exhibit B.** Debtors did not provide the information sought in Interrogatory No. 4 and did not produce or make accessible the information sought in Request for Production Nos. 24 through 26.

      5.      On May 5, 2021, BP's counsel held a final meet and confer by videoconference with counsel for Debtors. That was only the most recent discussion in a conversation between BP and Debtors about these issues that has been ongoing for over a month and initially previewed to the Court during the hearing conducted on April 9, 2021. The parties were unable to resolve their disagreement regarding these discovery disputes.

## II.    JURISDICTION AND VENUE

      6.      The United States Bankruptcy Court for the Southern District of Texas has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## III.    ARGUMENT AND AUTHORITIES

**A.**    **Legal Standard**

      7.      Under Rule 26 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rules 7026 and 9014(c) of the Bankruptcy Rules, BP is entitled to discovery

regarding any matter that is relevant to BP's claims or Debtors' defenses, subject only to the limitation that such discovery is "proportional to the needs of the case." See FED. R. CIV. P. 26(b)(1). Indeed, it is well established that Rule 26 embodies a broad discovery policy and should be liberally construed in favor of disclosure. *See, e.g.*, *INTL FCStone Fin., Inc. v. OptionSellers.com, Inc.*, No. 6:21-MC-0004-JDK, 2021 WL 1540528, at *2 (E.D. Tex. Apr. 20, 2021) ("The scope of discovery in federal court is broad.").

8. In the bankruptcy context, however, debtors are required to provide even more information than is ordinarily required in civil litigation. "Debtors must divulge all relevant facts in order to receive the full benefits and protections of the Bankruptcy Code, with the broad policy and goals of the Code favoring transparency and disclosure whenever possible." *In re McDowell*, 483 B.R. 471, 477 (Bankr. S.D. Tex. 2012) (cleaned up) (internal citations omitted). Moreover, "[i]n bankruptcy, the expectation of confidentiality is diminished, with debtors—unlike other civil litigants—continually and affirmatively required to disclose" numerous categories of information that "must be reliable and complete." *Id.* at 485–86 (internal citations omitted).

9. When a dispute arises over permissible discovery, Rule 37 of the Federal Rules of Civil Procedure, which is incorporated into contested matters by Rules 7037 and 9014(c) of the Bankruptcy Rules, governs the resolution of that dispute. In general, Rule 37 governs the provision of relief in the form of compelling a party's response and provides that, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1); *see also* FED. R. BANKR. P. 7037, 9014(c). It is the burden of the party resisting discovery and opposing a motion to compel to "specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of proper discovery . . . or that a

discovery request would impose an undue burden or expense or is otherwise objectionable." *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015).

B. **BP Needs the Information It Is Seeking**

10. Here, BP is evaluating whether to maintain its opposition to confirmation of the Plan. As part of that process, it is seeking information that is relevant to that analysis and may be used to support BP's ultimate opposition (if any) to Plan confirmation.

11. To that end, BP is seeking discovery into the "M&A Process" described in Debtors' Disclosure Statement—a process that began pre-petition and in which the Debtor's investment banker "marketed the Deepwater Assets to 47 parties identified as potential third party buyers" including "a broad spectrum of national and international strategic buyers and financial sponsors[.]" [Dkt. No. 1285 at p. 6]. As further explained by Debtors, post-petition the M&A Process "resulted in 18 parties executing confidentiality agreements and obtaining access to a virtual data room ("**VDR**"), 15 management presentations, and receipt of approximately 12 written bid letters and other indications of interest." [*See id.*]. Moreover, the Creditor's Committee advisors were given "access to all of the information provided to potential buyers, including access to the VDR." [*See id.*].

12. Among other things, the requested information should demonstrate whether the Plan is being proposed in good faith by permitting parties to analyze the process by which Debtors sought out alternatives to the plan. *See* 11 U.S.C. § 1129(a)(3). Additionally, it will show how the market was recently valuing the NewCo assets—something extremely relevant to determining whether the Plan is in the best interest of creditors. *See* 11 U.S.C. § 1129(a)(7)(A). Furthermore, the market's view of the NewCo assets should provide much needed insight into the feasibility of NewCo itself. *See* 11 U.S.C. § 1129(a)(11).

13. By providing the information sought in Request No. 24 to potential purchasers and the Creditors Committee's advisors, Debtors have admitted its relevance to valuation. Similarly Request Nos. 25 and 26 seek information that will, among other things, provide insight into the market's reaction and valuation of Debtors' assets and liabilities.

14. Any argument that the information and/or materials sought relate only NewCo has no merit and only supports BP's argument for production. The feasibility of NewCo is one of the most important issues in this case. If NewCo is destined to fail and abandon even more properties in the Gulf of Mexico than the thousands that Debtors have proposed abandoning under the Plan, it would be better for the stakeholders to start dealing with that reality now and not in the years to come.

15. Debtors' expert reports regarding value raise many questions. It is difficult to imagine a better way to check the analysis of the Debtors' expert than to compare it to the offers that were actually received last year and the operational data that Debtors were keeping in their ordinary course of business.

16. Such information is also directly relevant to the 363 Credit Bid Transaction proposed under the Plan which the Plan currently requires if the plan is not confirmed by June 16, 2021 (i.e., the "Confirmation Outside Date"). The Plan specifically requires Debtors to seek approval of a standalone sale motion to the Lenders. [Dkt. No. 1284 at § 5.2(c)]. Such a motion requires analysis of whether, *inter alia*, there is sufficient evidence that Debtors have a sound business justification for the sale. In the absence of access to the data room, the competing offers, and the manner and form that the information was provided to potential buyers, it is impossible for parties such as BP to test whether the Credit Bid Transaction is supported by a sound business justification.

17. Although Debtors' offer to provide BP access to discrete documents from the database may sound reasonable in the abstract, it is inadequate in the present case. First, as stated above, when Debtors were marketing their assets last year, they presumably thought all of the information in the data room was relevant to potential purchasers—why else would it be included? Second, according to the index, the data room contained over 19,700 documents and it is difficult to know based on cryptic descriptions in the index what material to request. Third, if counsel for BP is required to go back to Debtors each time they realize they should have requested additional documents from the data room, they will be losing valuable time and may inadvertently reveal BP's legal arguments and strategy prematurely.

C. **Debtors' Objections are Insufficient**

18. As an initial matter, Debtors are relying entirely upon boilerplate objections and made no effort to tailor those objections to the specific requests. This is improper. *See, e.g., Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 185 (N.D. Iowa 2017) (internal quotation marks and citation omitted) ("merely assert[ing] boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc., without specifying how each [interrogatory or] request for production is deficient and without articulating the particular harm that would accrue if [the responding party] were required to respond to [the proponent's] discovery requests simply is not enough.").

19. Here, General Objection 1 is asserted in response to each of the four requests addressed above "to the extent" BP is seeking information it is not entitled to seek in discovery, but it makes no attempt to explain how BP is doing that. BP is only seeking information it is entitled to seek under the Federal Rules and the Bankruptcy Rules.

20. As to General Objection 4, it is also asserted as to each of the four requests. This objection is peculiar because Debtors are signatories to this Court's Amended Stipulated Protective Order, which permits the parties to designate sensitive information as Confidential or Highly Confidential to protect it. [Dkt. No. 989][3]. If Debtors need to protect this information, they should designate it accordingly.

21. Similarly, General Objection 6 is asserted in response to each of the requests at issue, but Debtors make no attempt to explain how the "breadth, burden, and expense of responding to the Requests outweighs the Requests' purported relevance and is disproportional to the needs of the case." Nor do Debtors explain their conclusory statement that the requests are "more disruptive and costly to the Debtors than beneficial to BP." Regarding those requests that seek access to data room(s), it appears as though it would be extremely easy to provide BP's counsel and professionals access to that information just like the potential purchasers were provided access last year. As to the remaining requests, they are defined sufficiently narrowly to not be overly broad or burdensome.

## IV. CONCLUSION AND REQUEST FOR EMERGENCY HEARING

BP requests that the Court overrule Debtors' objections and order Debtors to respond substantively to Interrogatory No. 4 and to produce the documents and/or provide access to the information sought in Request for Production Nos. 24–26. If the Court determines that oral argument is necessary, BP requests an expedited hearing at the Court's earliest convenience.

*[remainder of page intentionally left blank]*

---

[3] BP reserves the right to challenge any such designations—especially in light of the fact that BP was previously offered access to the data room as part of Debtors' 2020 M&A process.

Dated:  May 5, 2021

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Karl D. Burrer*
Shari L. Heyen
Texas State Bar Number 09564750
HeyenS@gtlaw.com
Karl D. Burrer
Texas State Bar Number 24043584
BurrerK@gtlaw.com
Nicole S. Bakare
Texas State Bar Number 24056017
BakareN@gtlaw.com
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

– and –

Craig A. Duewall (admitted *pro hac vice*)
Texas State Bar Number 24025334
DuewallC@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

– and –

David B. Kurzweil (*admitted pro hac vice*)
KurzweilD@gtlaw.com
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212

*Counsel for BP Exploration & Production Inc.*

**CERTIFICATE OF ACCURACY**

The undersigned herby certifies that the facts and circumstances described in the above pleading giving rise to the emergency request are true and accurate to the best of my knowledge, information and belief.

                                                */s/ Craig A. Duewall*
                                                Craig A. Duewall

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that the parties met and conferred to attempt to resolve all discovery disputes. While substantial progress was made, the parties were unable to resolve the matters herein.

                                                */s/ Craig A. Duewall*
                                                Craig A. Duewall

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on May 5, 2021.

                                                */s/ Craig A. Duewall*
                                                Craig A. Duewall