IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

### DEBTORS' RESPONSE IN OPPOSITION TO BP'S EMERGENCY MOTION TO COMPEL

Fieldwood Energy LLC ("**Fieldwood**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") file this *Response in Opposition to BP Exploration & Production Inc.'s* ("**BP**") *Emergency Motion to Compel Debtors to Respond Substantively to an Interrogatory, Produce Documents, and/or Allow Access to Data Room(s)* (the "**Motion**"), and in support state the matters set forth below.

### ARGUMENT AND AUTHORITIES

1. The Court should deny BP's Motion in its entirety because BP has not—and cannot—articulate how the over 25,500 documents it seeks to compel from the Debtors are relevant to confirmation or proportional to the needs of this case.

2. Parties in discovery may only obtain information and documents on "any nonprivileged matter that is [1] relevant to any party's claim or defense *and* [2] proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). "Proportionality" weighs "the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fieldwood Energy LLC (6778), Fieldwood Energy Inc. (4991), Fieldwood Onshore LLC (3489), Fieldwood SD Offshore LLC (8786), Fieldwood Energy Offshore LLC (4494), Fieldwood Offshore LLC (2930), GOM Shelf LLC (8107), FW GOM Pipeline, Inc. (8440), Galveston Bay Procession LLC (5703), Galveston Bay Procession LLC (0422), Fieldwood Energy SP LLC (1971), Dynamic Offshore Resources NS, LLC (0158), Bandon Oil and Gas, LP (9266), and Bandon Oil and Gas GP, LLC (9172). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

1

importance of the issues at stake in the action, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Importantly, a "court *must* limit the . . . extent of discovery otherwise allowed by these rules . . . if it determines that . . .the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added).

3. Although BP has not filed a proof of claim in these cases, they are contract counterparties to several agreements involving ongoing commercial matters that have been in dispute and will likely be in dispute in the future. In addition, BP is a former record title holder in certain properties that the Debtors are seeking to abandon under the Plan.

4. BP seeks to compel the Debtors' production of over 25,500 commercially sensitive documents (the "**Documents**") related to the Debtors' marketing processes commenced in the summer of 2020 (the "**Summer Marketing Process**") relating exclusively to the deepwater assets, and in the winter of 2021 (the "**Winter Marketing Process**") in connection with the filing of the Disclosure Statement in January 2021 (collectively, the "**Marketing Processes**"). Specifically, BP is asking the Court to order the Debtors to produce (1) all 25,500+ documents that were in M&A data rooms created to support the Debtors' marketing processes, and (2) a management presentation and copies of non-actionable bids related to the Summer Marketing Process. With respect to documents in the data rooms, BP has refused to identify what documents or types of documents it needs.

5. The Debtors received over 370 individual confirmation discovery requests from 10 parties, and no other party has sought unfettered access to the data rooms filled with highly sensitive commercial information and created for the purpose of facilitating bids in connection with the Marketing Processes. It makes sense that no other party has asked for the same data room

access or scope of information because the Debtors' Marketing Processes are simply not relevant to any issue that will be contested at confirmation.

6. The Debtors' valuation expert from Houlihan Lokey did not rely on the Marketing Processes for valuation purposes or otherwise, and for good reason. The Summer Marketing Process is irrelevant to confirmation of the Plan[2] before the Court because (1) it took place during a different time in a lower commodity price environment, (2) it involved a specific subset of Fieldwood's assets, and (3) the bids the Debtors received were non-actionable in any event. The Winter Marketing Process resulted in no bids and thus is irrelevant as well.

7. During numerous meet and confers, the Debtors repeatedly asked BP to articulate the relevance of these documents. The only explanations BP could provide were conclusory statements about "valuation" and "process." BP's Motion similarly provides nothing more than conclusory references to sections of the Bankruptcy Code (*see, e.g.*, BP Mot. at ¶ 12). Although it remains unclear why BP is seeking the entire contents of the data rooms in connection with confirmation, given that the Debtors' expert's valuation would have to be off by ***almost $1 billion*** for unsecured creditors like BP to get a recovery in this case, the Debtors should not be required to produce substantial amounts of commercially sensitive information, which no other party has asked for in this case, to a competitor like BP without BP providing a non-conclusory explanation as to its relevance.

8. Even if this information were marginally relevant (which it is not), the amount and type of information that BP seeks is simply not proportional to the needs in this case for several reasons. First, the Debtors have already produced to BP all the documents considered by the Debtors' expert in contention with valuation. The Debtors have already produced to BP their

---

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

expert reports and all supporting materials, including, among numerous other things, the Company's MY2020 Aries database and YE2020 Aries database, as well as detailed Fieldwood models and a comprehensive P&A Detail spreadsheet. BP's counsel also has access to the same information in the same confirmation discovery data room that the Debtors have provided to counsel for all other parties who sought confirmation discovery. The Debtors have produced over 12,400 documents to BP over the past three months.

9. Second, BP's requests are not proportional given that BP is a significant competitor of Fieldwood's in the Gulf of Mexico, and the approximately 25,500 documents that BP seeks are highly commercially sensitive. As a result, the Debtors have serious concerns about giving BP's professionals *carte blanche* access to such substantial amounts of commercially sensitive information absent a legitimate need proportional to this case. In light of those concerns, which the Debtors expressed to BP, the Debtors repeatedly asked BP to identify specific information that it needs (rather than entire data rooms). *See* Declaration of Erin Choi (the "**Choi Declaration**"), Exhibit A, filed contemporaneously herewith. At BP's own request, the Debtors even gave BP an index listing the approximately 19,700 documents that were in the Summer Marketing Process Data Room when that data room existed. In response, BP's counsel asked to share the index with BP's businesspeople, so, notwithstanding the Debtors' concerns about BP's businesspeople having access to the Debtors' commercially sensitive information, the Debtors allowed them to see the index for the purposes of allowing BP to narrow its requests to specific information. *See* Choi Declaration, Exhibit A. BP has yet to name a single document that it needs from the index, let alone a valid basis for why BP or its professionals need *carte blanche* access to the over 25,500 competitively sensitive documents. *See* Choi Declaration, Exhibit A. Rather than identifying

specific information that it needs, BP filed this Motion. Because BP's requests continue to be disproportional to any legitimate need in this case, the Court should deny the Motion.

## **CONCLUSION**

For the reasons set forth herein, BP's requests fail to meet the relevance and proportionality requirements of Rule 26, and the Court should deny BP's Motion in its entirety.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief, at law or in equity, as the Court may deem just and appropriate.

Dated: May 6, 2021
      Houston, Texas

    /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Matt.Barr@weil.com
       Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email: Paul.Genender@weil.com
      Erin.Choi@weil.com

*Attorneys for Debtors and Debtors in Possession*

**Certificate of Service**

I hereby certify that, on May 6, 2021, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

    */s/ Alfredo R. Pérez*
Alfredo R. Pérez