<pre>
 1                IN THE UNITED STATES BANKRUPTCY COURT

 2              FOR THE SOUTHERN DISTRICT OF TEXAS

 3                       HOUSTON DIVISION

 4  IN RE:                    §     CASE NO. 20-33948-11
                              §     HOUSTON, TEXAS
 5  FIELDWOOD ENERGY, LLC,    §     THURSDAY,
                              §     APRIL 1, 2021
 6          DEBTOR.           §     3:58 P.M. TO 4:28 P.M.

 7

 8                  STATUS CONFERENCE (VIA ZOOM)

 9           BEFORE THE HONORABLE MARVIN ISGUR
             UNITED STATES BANKRUPTCY JUDGE

10

11

12      APPEARANCES:                  SEE NEXT PAGE

13

14

15      (Recorded via CourtSpeak; No log notes)

16

17

18

19

20              TRANSCRIPTION SERVICE BY:

21          JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                935 Eldridge Road, #144
22              Sugar Land, TX 77478
                    281-277-5325
23             www.judicialtranscribers.com

24
        Proceedings recorded by electronic sound recording;
25         transcript produced by transcription service.
</pre>

<pre>
 1                      APPEARANCES (VIA ZOOM):

 2

 3   FOR THE DEBTOR:              WEIL GOTSHAL & MANGES, LLP
                                  Alfredo Perez, Esq.
 4                                700 Louisiana, Suite 1700
                                  Houston, TX  77002
 5

 6

 7   FOR CONOCOPHILLIPS COMPANY:  LOCKE LORD, LLP
     MCMORAN OIL & GAS,          Bradley Knapp, Esq.
 8   MERIT ENERGY CO., U.S.       601 Poydras Street, Suite 2660
     SPECIALTY INS. CO., and      New Orleans, LA  70130
 9   HCC INTERNATIONAL INS. CO.

10                                LOCKE LORD, LLP
                                  Philip Eisenberg, Esq.
11                                600 Travis, Suite 3400
                                  Houston, TX  77002
12

13   AD HOC GROUP OF SECURED      DAVIS POLK & WARDWELL, LLP
     LENDERS:                     Damian Schaible, Esq.
14                                450 Lexington Avenue
                                  New York, NY  10017
15

16

17   (Please also see Electronic Appearances.)

18

19

20

21

22

23

24

25
</pre>

1         HOUSTON, TEXAS; THURSDAY, APRIL 1, 2021; 3:58 P.M.

2           THE COURT:  All right.  We're going to call

3 Fieldwood Energy.  It's 20-33948.  I've enabled three of the

4 lines:  Mr. Grizz (phonetic), Mr. Perez, and Mr. Eisenberg.

5 If somebody wants their line enabled right now, that's fine.

6           I wanted to get the initial status report on where

7 we were and thought those might be the right people.  And I

8 don't mean to pick who's going to speak for a particular

9 client.  So I see Mr. Knapp there smiling.  Maybe I should

10 have clicked his line instead of Mr. Eisenberg's.  And just

11 let me know if that's the case.

12           MR. KNAPP:  Your Honor, (indiscernible) that group

13 sounds pretty good to me, Your Honor.

14           THE COURT:  All right.

15           MR. KNAPP:  Duane Brescia may -- Duane Brescia

16 would also be -- may be able to add some color to the

17 (indiscernible).

18           THE COURT:  So Mr. Schaible has asked to be added

19 to that.  I've added him.  Let's find --

20           MR. PEREZ:  And, Your Honor, I think we need

21 Ms. Choi.  I need a lawyer on the line to help me.

22           THE COURT:  Ms. Choi is now on and Mr. Brescia is

23 now on.  And --

24           MR. SPEAKER:  Thank you -- and thanks to

25 Mr. Perez.  That's why I had Mr. Knapp on the phone.

1          THE COURT:  So I think we now have Mr. Knapp on

2   the phone.  Mr. Knapp, is that your line I got?  It came in

3   on the trunk line.

4          MR. KNAPP:  Yes, Your Honor.  I'm at 226-1327.

5   Thank you very much.

6          THE COURT:  Yeah.  It came in at 226-1200, which

7   is why your name isn't with it I think, so yeah.  All right.

8   Well, let's get just an initial status report on where we

9   are, whoever wants to deliver that.

10          MR. PEREZ:  So, Your Honor, this is Alfredo Perez.

11   Thank you for hearing -- listening to us today.

12          Your Honor, I think as it relates to -- we had a

13   very long meet-and-confer the day after the hearing with all

14   of the sureties.  And at that time and since that time we

15   have produced documents, some of which have -- did not exist

16   prior to yesterday and some of which they didn't know

17   existed or -- and some of which they asked for.  And we've

18   done that.  So I think on the document production front, I

19   don't think that there is any issue of either documents that

20   are not -- that have not been produced or documents that are

21   not in the process of being produced as they were recently

22   requested.

23          I think the fundamental issue is the schedule.

24   And I think is the schedule that has the confirmation

25   hearing on May 17th.  In view of the fact that, you know,

1  substantial production has already occurred, and we're

2  talking about being, you know, six, seven weeks out, I think

3  we can proceed on that schedule.  That is I think a delay of

4  two months from that May 17th date I think would be

5  catastrophic to the company.  And I don't say that lightly.

6  And, you know, and I'm not necessarily prone to hyperbole

7  but I do believe that would be the case.  But I think in

8  terms of the documents, you know, all of the requests,

9  whether they've been asked for or not, have now been

10  addressed.

11          And to the extent that there is additional

12  information, we're happy to continue to provide.  I mean, I

13  can assure the Court there's absolutely nothing that they've

14  asked for that we haven't produced or are in the process of

15  producing.  So I think the issue is the timing.  And we

16  would, you know, request that the Court -- I mean, we're

17  seven -- we're, you know, six weeks out.  I think that's

18  plenty of time, things can be double-tracked.  And we'll

19  work our hardest to not be the impediment here, Your Honor.

20          THE COURT:  Do you have any more expert reports

21  that you intend to offer that you will use at confirmation?

22          MR. PEREZ:  Your Honor, the -- so there -- we had

23  a valuation.  I don't know whether any -- I mean, so we will

24  have an expert report on valuation.  That will be produced

25  in the ordinary course.

1          THE COURT:  Well when?

2          MR. PEREZ:  We have --

3          THE COURT:  No, by when though?  Because I'm

4    worried about --

5          MR. PEREZ:  Your Honor, --

6          THE COURT:  -- giving them a chance to deal with

7    what you've got.  You know, if you give it to them on the

8    16th, then that isn't going to work.

9          MR. PEREZ:  No.  Your Honor, we had indicated that

10   expert reports would be due by April 28th.  And to the

11   extent we want to move that up a week, I mean, we're happy

12   to try to accommodate that date.  I mean, we're not talking

13   about, you know, expert discovery until significantly after

14   that.  But we're happy to move up that expert report.

15         And, Your Honor, let me just back up.  At the end

16   of the day, we're going to see exactly how much of this

17   actually gets used because I'm not sure that valuation is an

18   issue in this case.  But obviously we'll be guided by what

19   the sureties say, but I don't think that valuation is an

20   issue.  So we will have obviously to the extent someone

21   challenges, we have a liquidation, you know, the meets the

22   best interest test, so we obviously have a person, you know,

23   who would testify as to that.  And I think the bulk of the

24   rest of the testimony would come from the company, you know,

25   Mr. Dane or someone else.  That would be the bulk of the

1  testimony.  We have not -- there is no other expert that we

2  retained that we're going to spring on them.

3         THE COURT:  Would you do me a favor before we go

4  to others?  And I know that when we were in the last

5  hearing, there was a written schedule you had proposed.  I

6  just want to take another look at that.  That may be on Ms.

7  Choi's PowerPoint or it may be a document but I need to see

8  that.

9         MR. PEREZ:  Yes.  I think we filed it but Ms. Choi

10 can put that up.

11        MR. SPEAKER:  And, Your Honor, if it helps, we

12 also filed a proposed schedule with a notice this afternoon

13 at 2:00 o'clock.  Mr. Million filed that.  And it has their

14 proposed dates and our proposed dates on it for Your Honor's

15 convenience.

16        THE COURT:  Thank you.  Let me pull that up then,

17 1210.

18        MR. SPEAKER:  That's accurate, Your Honor.

19        THE COURT:  All right.  Hold on a second.  I'm

20 going to take back the screen, Ms. Choi, from you.  And I

21 use one that has the side-by-side so give me a second.

22      (Pause from 4:05 p.m. to 4:06 p.m.)

23        MR. PEREZ:  And, Your Honor, I don't if the

24 Court's reviewing this, but --

25        THE COURT:  I can listen.  Go ahead.

1          MR. PEREZ:  Okay.  So, Your Honor, with respect to

2     the deadline to serve discovery requests, we've actually

3     received lots of discovery requests.  We're responding to

4     them, you know, seriatim.  We're not waiting the whole time

5     period to respond.  And so to the extent there's any

6     additional requests, we would, you know, we would certainly

7     entertain them.  That's not intended to be a bar.  But, you

8     know, the discovery requests have some in the last couple of

9     weeks and they've been extensive, and we've complied.  So I

10    don't think that that deadline is a hard bar.

11          Obviously we're going to have the Disclosure

12    Statement hearing.  And with respect to the information that

13    we've received, we've committed to complete production by

14    the 21st.  And to the extent that there additional -- is

15    additional information, we'll continue to produce it, so

16    that's not an issue.

17          So the first, you know, deadline, Your Honor,

18    would be the expert report.  And as I've said, you know,

19    we're happy to move that up a week.  I don't think that's

20    going to create a hardship for us.  I think we're -- we can

21    move that up and serve our expert report at the same time we

22    conclude the document request.

23          And then, Your Honor, in terms of discovery, we

24    basically have from the 21st through we have, you know,

25    three weeks, three full weeks for discovery, and then the

1   confirmation hearing on the 17th -- almost four weeks for

2   discovery, Your Honor.

3               THE COURT:  All right.

4               MR. PEREZ:  So I --

5               THE COURT:  What's the Rule 3018(a) motion

6   deadline about?

7               MR. PEREZ:  Your Honor, there we -- in connection

8   with the plan, the way that the voting worked was to the

9   extent you had a contingent, unliquidated claim, we gave you

10  a dollar vote.  So to the extent someone wanted to -- who

11  had a contingent, unliquidated claim, wanted to vote

12  something other than a dollar, we would have them, you know,

13  file a motion and tell us that.  And then there are some

14  claims that have been filed in large amounts that we think

15  are contingent, unliquidated and they've been filed as if

16  they're not contingent, unliquidated, so it's a -- it's

17  really more to determine voting.

18              As a practical matter, Your Honor, I'm not sure

19  this is not a situation where, you know, we need an impaired

20  consenting class or anything like that.  I mean, and there's

21  no recovery to equity so it's not like if the general

22  unsecureds reject the plan, I mean, there's not going to be

23  a big cramdown fight.  But we would like to have that, you

24  know, fleshed out.

25              THE COURT:  All right.  Let me hear from other

1   people that want to make a comment.

2           MR. EISENBERG:  Thank you, Your Honor, Philip

3   Eisenberg on behalf of U.S. Specialty Insurance Company and

4   HCCI.

5           May I be heard, your Honor?

6           THE COURT:  Yes, sir.

7           MR. EISENBERG:  Thank you, Your Honor.

8           We -- the -- going to the first thing that you --

9   the last thing you mentioned, the 3018 deadline and our

10  request for estimation deadline that we put into our

11  proposed schedule and then took the dates that were already

12  in the old -- in the proposed order, that's very important

13  for us, Your Honor, because of the way that they have given

14  folks only a one dollar vote or things of that nature and

15  what we think there's going to be disparate treatment for

16  folks in the unsecured class.

17          And so if they're going to try to disallow claims

18  or have those disallowed by just simply virtue of them

19  entering into their proposed order, that was certainly an

20  issue we were going to bring up on 4/9 when we talked about

21  the issues for the disclosure hearing.  But we felt that it

22  needed to be built into this deadline as -- into this

23  schedule as well because we think that claims allowance, or

24  at least for voting purposes, is very important in this case

25  for the unsecured classes themselves and the treatment

1   because some of the unsecureds are getting certain treatment

2   that other unsecureds or not, and who's in what class for

3   what company is being formed here is very important.

4           And so we built that in, Your Honor, and so our

5   schedule allows for that.  I just wanted to kind of follow

6   on -- follow-up on that.  I didn't want to put too fine a

7   point on it, Your Honor, but we did build that into the

8   schedule, and that's more for the planning meeting for the

9   Disclosure Statement hearing.

10          But from the standpoint from status, I do want to,

11  you know, commend my colleague, Mr. Perez, and the folks

12  that he's working with, his entire team, that when we did

13  have our meet-and-confer, they did meet us more than

14  halfway, Your Honor, and we do appreciate that.  And we are

15  in the process of having things produced.

16          We have had some things that we thought we should

17  have gotten perhaps six -- as much as six weeks ago, they're

18  coming now.  And we're starting to digest them.  The reason

19  why we put the 4/14 deadline in there for the request is

20  because even today as things are getting rolled out, we

21  started to identify things that are not necessarily there,

22  that we don't understand, that we need further backup on,

23  and so now that we're getting the production flowing that we

24  thought we should have gotten sooner, that we're going to

25  need time to identify what else that implies, including what

1   other witnesses we might need beyond the six to eight

2   witnesses we've identified, plus the expert witnesses.  And

3   that's just for the sureties, Your Honor, and that's just

4   from us taking depositions, not anybody else's in the case.

5   And so that's why we put that in there.

6           We take Mr. Perez at his word that they will

7   continue to roll it out.  I really don't see a -- you know,

8   if they want to expedite their expert report, that's one

9   thing.  But we definitely need the time we built in here to

10  now digest what they have and to move forward.

11          Like I said, I think we feel like we're, you know,

12  four to six weeks behind on this from where we should have

13  been.  We are very pleased with the progress we're making

14  and the -- and we want to move forward.  From the standpoint

15  of are we going to use this, this information's critical,

16  Your Honor.

17          As they pointed out, 63 percent of the

18  decommissioning and really a lot of the properties are in

19  Fieldwood One.  And making sure that that is a viable going

20  concern, how that company's going to be able to move

21  forward, how it's going to be governed, how it's going to be

22  capitalized, how the P&A schedule is going to jive with the

23  actual performance of the properties themselves, whether

24  they've got a process to monetize some of the more valuable

25  properties that might raise cash and eliminate some of the

1 decommissioning exposures at the back end, those are all

2 things we're examining and we're analyzing.

3           And that's critically important to the sureties

4 that have over seven -- like $700 million on that risk, Your

5 Honor.  It's very important.  And so we are making very

6 important use of this, particularly to decide how to

7 participate in this bankruptcy.  We want Fieldwood One to be

8 as viable a company as it can be.  But we're concerned with

9 several of the constructs and with understanding what the

10 company is made up of, the cashflows, what's going to move

11 forward, what's not going to move forward, how they're going

12 to address decommissioning, how they're going to address

13 capitalization.  These are all critical for us.

14           And so, yes, this is very important information

15 and it's why we have been so focused on trying to develop

16 this over time, Your Honor.

17           And so as you've pointed out, we're going to need

18 time with their expert report and -- their expert reports.

19 And so we have built that in to the schedule as well.  And

20 we felt like the schedule that had been originally proposed

21 which had the May 17 confirmation date, it was incredibly

22 tight, Your Honor.

23           And now that we've gotten the process of

24 information, we feel that additional time should be

25 provided.  We've made our proposal.  We shared it with

1   Debtors this morning before we filed it on the Record.  And
2   we're willing to continue to talk to them about it.  We feel
3   like that this is very important for us to be able to get
4   this right and to have the parties to have a fair
5   opportunity in this very complex case.  This is like several
6   of the oil company cases we had all wrapped up into one and
7   then put on steroids, Your Honor.

8            There are a lot of moving parts, as Your Honor has
9   said.  And we want to get this one right.  We're very
10  concerned that we had a Chapter 11 in 2018, we've had one
11  now in 2020.  We are concerned about the possibility of this
12  -- the process that's being put here not working in whole or
13  in part.  And so we are moving with all deliberation to do
14  that and so that's why we have laid out our schedule.

15           The last thing that I wanted to talk about is that
16  time would be catastrophic for the company.  I'm not sure
17  I'm onboard with that.  There's been no draw on the DIP
18  except for the upfront fees.  They've just filed their
19  monthly operating report that says they have a hundred
20  million in free, unencumbered cash.  There's $29 million in
21  positive cashflow right now from the company.  And the
22  company is operating.  And we don't think that a six to
23  seven-week modification to this schedule is catastrophic in
24  the way that Mr. Perez has described.

25           So we have a difference of opinion on that based

1   on the facts as we see them and the fact that it's taken

2   this long just to get to the point where we have the

3   information where we can now weigh in to do the analysis we

4   have with our clients, many of which are over in Europe and

5   which, you know, which we have to explain the process to,

6   and it takes a little bit more time to get their input on

7   this.

8          And we certainly want to be able to have a

9   meaningful process here.  And we're not the only ones.

10  There are other folks involved.  We haven't heard from any

11  of them but we think that the schedule we put out there is a

12  more viable schedule based on the realities of what we have

13  to do here in this very complex case.

14         THE COURT:  Thank you, Mr. Eisenberg.

15         Does anybody else wish to address the schedule or

16  other issues right now?

17      (No audible response)

18         THE COURT:  Let me tell you all what I think is a

19  workable schedule from what I'm hearing.  But I -- this

20  isn't something I'm going to order until I hear you all tell

21  me that I'm simply wrong about it.  So I'm going to put back

22  up Mr. Million's schedule.  Here's what I am suggesting as

23  workable, and that is that we have the discovery conference

24  obviously today.

25         On April the 9th, that there will be a planning

1  meeting regarding the Disclosure Statement hearing, but that

2  will not be in court, it will be private.  If there are

3  disputes you can bring them to court.  The deadline to serve

4  discovery requests will be April 14th.  The Disclosure

5  Statement hearing will be April 14.  The completion of

6  document production will be April 30th.  The completion of

7  responses to all other discovery requests will be

8  April 30th.

9          The Debtors' expert report deadline for matters on

10  which it has the initial burden will be April 21st.

11  Everyone else's disclosure deadline for experts on matters

12  on which they have the burden of proof will be May 10th.

13  Fact witness depositions will begin immediately, so April

14  2nd, and will end on May 10th.  Rule 3018 motions will be

15  due by May 7th.  Requests for estimations must be filed by

16  May 7th.  Rebuttal expert reports will be due by May 24th by

17  all parties.

18          In other words, I'm only giving the Debtors

19  14 days to do rebuttal expert reports; everybody else gets

20  quite a bit of time.  Expert witness deposition have to end

21  by June 4th.  The plan supplement is due June 2nd.  The

22  voting deadline is June 2nd.  The deadline to file

23  confirmation objections is June 2nd.  The ballot

24  certification deadline is June 7th.  The deadline to file

25  the confirmation brief and the reply to plan objections will

1  be June 4th.  And the confirmation hearing will be on June

2  the 9th starting at 9:00 in the morning.

3          If anybody thinks that doesn't meet what we have

4  to do, feel free to argue it.  I'm trying to move faster

5  than what I know the sureties want to move, but I agree that

6  this is complicated enough, I'm not quite as comfortable

7  with the Debtors' schedule as what they have proposed

8  either.

9          Am I causing any terrible heartburn to anybody,

10  they want to argue against it?

11          Mr. Perez, go ahead.

12          MR. PEREZ:  Yeah, Your Honor, I think this puts us

13  in a horrible position, but obviously, you know, I've come

14  to court and won some stuff and come to court and lost it.

15  This is a loss but we are, you know, we'd love to be able to

16  move it up at least a week but if that's the Court's

17  inclination, I'd certainly like to hear from Mr. Schaible

18  because, you know, we've got a bunch of milestones and he so

19  far has been very accommodating.  But that would be

20  important.

21          THE COURT:  Mr. Eisenberg, let me hear from you.

22          MR. EISENBERG:  Your Honor, I -- while I've been

23  doing all the talking, I'm not the only one with

24  considerations here.

25          But we do take your point, and moving up their

1  expert report deadline to give us additional time is

2  helpful, Your Honor, and so we do appreciate Your Honor's

3  consideration and in many of the deadlines that are in

4  there.

5          And so I think we can work through this.

6  Obviously if there's something that comes up, we know we can

7  come back to court.  But we do appreciate everybody's

8  courtesies and Your Honor's view on this.  And but I'm not

9  the only one.  And this certainly -- we did not solicit the

10 predecessor's view and whether they --

11         THE COURT:  No, I got it.  I know you're speaking

12 for yourself but you took the lead and I'm going to --

13         MR. EISENBERG:  Okay.

14         THE COURT:  I'm just trying to go around the room.

15         MR. EISENBERG:  Yes, Your Honor.

16         THE COURT:  Mr. Schaible.

17         MR. SCHAIBLE:  Your Honor, thanks for

18 (indiscernible).  Damian Schaible, Davis Polk, on behalf of

19 the Ad Hoc Group of Secured Creditors.

20         Your Honor, your timing is within our, you know,

21 we (indiscernible) maturity of the DIP (indiscernible)

22 extend milestones under the RSA.  Again, (indiscernible) you

23 know, every day (indiscernible) that a lot can happen and a

24 lot can fall apart (indiscernible) everything else.  But I'm

25 not going to tell Your Honor that we can't make this

1 schedule work if Your Honor thinks (indiscernible) schedule.

2         THE COURT:  Let me hear anyone that wants to

3 object to those deadlines then.

4     (No audible response)

5         THE COURT:  All right.  Look, if something turns

6 out not to work, and that can go both directions, you all

7 can come back in and, you know, seek a change.  If somebody

8 needs to take some deposition earlier than what somebody

9 doesn't agree to, Mr. Perez, from your point of view, or if

10 you need an extra day or two from, you know, Mr. Brescia's

11 point of view, and you all can't work that out, I'm here.

12         Why don't you all upload an order that does this,

13 include a provision that says -- think about a way that you

14 all can voluntarily agree to move some dates around without

15 having to come back to court every time you reach an

16 agreement.  That may not be --

17         MR. PEREZ:  Your Honor, --

18         THE COURT:  -- possible because there are so many

19 of you.  I don't know.

20         MR. PEREZ:  Your Honor, I don't really have a

21 problem moving dates around.  And I think from the

22 standpoint of the Debtor, we're going to be flexible.  Our

23 biggest concern is the June date.  That's a real concern.

24 You know, --

25         THE COURT:  It's a real date.

1           MR. PEREZ:  -- first of all, I --

2           THE COURT:  It's a real date.  I'm not going to --

3    I'm not backing up on that June date without something

4    catastrophic occurring.  I mean, I'm not going to say never,

5    but that's the real confirmation date.  But the intervening

6    dates I want you all to be free to move around on your own.

7    And giving you have this many parties, figure out a workable

8    way to do that without having to come to court every time

9    you need to do it.

10          MR. PEREZ:  Understand, Your Honor, and understand

11   that the Court has ruled.  But to the extent that the Court

12   is ruling because you think that we haven't -- that there

13   should have been information that was -- should have been

14   provided that wasn't provided, I think we're prepared to

15   discuss that.

16          Most of the information -- it is hard, we don't

17   disagree with that.  But most of the information that is

18   provided, we're providing in real time.  And what they've

19   asked for we have provided.  So the suggestion that this is

20   being done because somehow we should have given them

21   information a long time ago is just simply not correct.

22          THE COURT:  I made --

23          MR. PEREZ:  And I just want to make sure the

24   Court --

25          THE COURT:  I absolutely am making no such

1   finding.  No, I'm just trying to come to a workable schedule

2   where I think people can get fully prepared for one of the

3   more complicated P&A programs probably ever confronted

4   anywhere.  This is going to be hard.  And I know it's going

5   to be hard and I don't want to put people in a position

6   where have to come and make arguments where their experts

7   haven't had a chance to get fully engaged or to evaluate

8   what you've done.

9         But everything I'm hearing, Mr. Perez, is that the

10  Debtor has been totally forthcoming with everything.  I'm

11  hearing zero complaints.  I heard some, you know, earlier,

12  but they're not -- and not today.  And I'm not doing this

13  because of that.  If I thought that you had been sandbagging

14  them on stuff, we wouldn't be talking June 9th.  I mean, so

15  it's --

16        MR. PEREZ:  All right, Your Honor, understood,

17  Your Honor.  And, you know, to the extent that from a

18  business standpoint, because this is what we're talking

19  about, I'm not talking about the, you know, so much the

20  dates here.  We're talking about what can this company

21  withstand?  So to the extent from a business standpoint we

22  feel that the company is impaired, we'll come back to you.

23        THE COURT:  I'll be here.  Does anybody else want

24  to voice any objections to these deadlines?

25      (No audible response)

1          THE COURT:  Okay.  That's what we'll adopt.  What

2    else can we accomplish today?

3         (No audible response)

4          Okay.  We are in adjournment.  I appreciate

5    everybody's help.  Thank you.

6         (Proceeding adjourned at 4:28 p.m.)

7                         *  *  *  *  *

8          *I certify that the foregoing is a correct*

9    *transcript to the best of my ability due to the condition of*

10   *the electronic sound recording of the ZOOM/telephonic*

11   *proceedings in the above-entitled matter.*

12   */S/ MARY D. HENRY*

13   *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

14   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

15   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

16   *JTT TRANSCRIPT #63964*

17   *DATE FILED:  MAY 14, 2021*

18

19

20

21

22

23

24

25