**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.,*[1] | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**COVERSHEET TO THIRD INTERIM FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP, AS COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF FIELDWOOD ENERGY LLC, *ET AL*., FOR THE
PERIOD FROM FEBRUARY 1, 2021 THROUGH AND INCLUDING APRIL 30, 2021**

| | | |
|---|---|---|
| **Name of Applicant:** | Stroock & Stroock & Lavan LLP | |
| **Applicant's Role in Case / Name of Client:** | Counsel to the Official Committee of Unsecured Creditors | |
| **Interim or Final Application:** | Third Interim Fee Application | |
| **Petition Date:** | August 3, 2020 | |
| **Retention Date:** | August 19, 2020 | |
| **Date Order of Employment Signed:** | October 16, 2020 [Docket No. 471] | |
| **Time period covered by this Application:** | **Beginning of Period** | **End of Period** |
| | February 1, 2021 | April 30, 2021 |
| **Time period covered by any prior Application:** | August 19, 2020 | January 31, 2021 |
| **Total amounts awarded in all prior Applications:** | $2,940,817.84 | |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

| | |
|---|---|
| **Total fees requested in this Third Interim Application Period:** | $1,206,264.50 |
| **Total actual professional hours covered by this Third Interim Application Period:** | 939 |
| **Average hourly rate for professionals:** | $1,258 |
| **Total paraprofessional fees requested in this Third Interim Application Period:** | $24,966.00 |
| **Total actual paraprofessional hours covered by this Third Interim Application Period:** | 55.2 |
| **Average hourly rate for paraprofessionals:** | $452 |
| **Reimbursable expenses sought in this Third Interim Application Period:** | $623.86 |
| **Total to be Paid to Priority Unsecured Creditors:** | Not yet determined. |
| **Anticipated % Dividend to Priority Unsecured Creditors:** | Not yet determined. |
| **Total to be Paid to General Unsecured Creditors:** | Not yet determined. |
| **Anticipated % Dividend to General Unsecured Creditors:** | Not yet determined. |
| **Date of Confirmation Hearing:** | June 9, 2021 |
| **Indicate whether plan has been confirmed:** | No. |
| **Total allowed expenses paid to date:** | $18,682.84 |
| **Compensation sought in this application already paid pursuant to the Interim Compensation Order, as defined in this Application, but not yet allowed:** | $771,462.80 |
| **Expenses sought in this application already paid pursuant to the Interim Compensation Order, as defined in this Application, but not yet allowed:** | $317.76 |

2

| | |
|---|---|
| **Number of professionals included in this application:** | 14 |
| **If applicable, number of professionals in this application not included in a staffing plan approved by client:** | N/A |
| **If applicable, difference between fees budgeted and compensation sought for this period:** | N/A |
| **Number of professionals billing fewer than 15 hours to the case during this period:** | 4 |
| **Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application.** | Yes.<br><br>$1,188,058.50 |

Dated: May 27, 2021                    Respectfully submitted,

> /s/  Kenneth Pasquale
> _____
> Kenneth Pasquale (admitted *Pro Hac Vice*)
> Stroock & Stroock & Lavan LLP
> 180 Maiden Lane
> New York, NY 10038-4982
> (212) 806-5562
> Fax No. (212) 806-6006
> kpasquale@stroock.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*,[1] | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**THIRD INTERIM FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FIELDWOOD ENERGY LLC, *ET AL.*, FOR THE PERIOD FROM FEBRUARY 1, 2021 THROUGH AND INCLUDING APRIL 30, 2021**

> **THIS APPLICATION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Stroock & Stroock & Lavan LLP ("Stroock"), counsel for the Official Committee of

Unsecured Creditors (the "Committee") of Fieldwood Energy LLC, *et al.* (the "Debtors"), hereby

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

submits its third interim fee application (this "Application") for allowance and payment of compensation for services rendered in the amount of $1,206,264.50 and reimbursement of expenses in the amount of $623.86 that Stroock incurred for the period from February 1, 2021 through and including April 30, 2021 (the "Fee Period"). In support of this Application, Stroock submits the declaration of Kenneth Pasquale (the "Pasquale Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Application, Stroock respectfully states as follows:

## PRELIMINARY STATEMENT

1.      By this Application, Stroock seeks allowance of its reasonable fees as well as the actual and necessary expenses incurred by Stroock during the period from February 1, 2021 through and including April 30, 2021. In that time, Stroock, acting on behalf of the Committee, continued to work towards the goals of maximizing value for general unsecured creditors and facilitating the efficient administration of the Chapter 11 Cases.

2.      The Committee was appointed on August 19, 2020, and Stroock was retained the same day. During this Fee Period, Stroock continued its analysis of the pre-petition lenders' collateral package and researched various issues related to the validity of their liens. As a result of the Committee's investigation, various unencumbered assets and potential claims were identified that would serve as potential challenges to certain of the lenders' asserted liens (together the "Preserved Claims"). Stroock engaged in discussions with the prepetition lenders' counsel regarding the Preserved Claims and entered into stipulations extending the deadline established pursuant to the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11. U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Docket

No. 346] (the "Final DIP Order") for the Committee to assert such Preserved Claims. In connection with the Preserved Claims, Stroock attorneys devoted time during this Fee Period to considering and drafting a potential motion for standing (the "Standing Motion") to prosecute such claims. Although the Standing Motion was ultimately not filed, the Committee's positions and arguments developed in the motion's preparation were the foundation for the negotiation of such extensions, and ultimately for the Committee's settlement with the Debtors and lenders, as described in more detail below.

3.      During this Fee Period, Stroock attorneys devoted substantial effort to analyzing the proposed plan of reorganization (the "Plan") and disclosure statement (the "Disclosure Statement"), advanced by the Debtors and the transactions contemplated thereby, and considering potential avenues for maximizing unsecured creditors' recoveries. This analysis included continued review of the agreements between the Debtors and Apache Corporation, touted by the Debtors as the cornerstone of the Plan (the "Apache Transaction"), as well as the other structures pursuant to which certain assets would be acquired by certain of the prepetition lenders, other assets would be abandoned and the remainder would be retained by the reorganized debtors and "wound down." Stroock also researched various issues concerning implementation and feasibility of the Plan. A significant portion of the Plan review process focused on the claims of the various categories of unsecured claims and their proposed treatment under the Plan, as well as consideration of other viable alternatives.

4.      On behalf of the Committee, Stroock engaged with both the Debtors' and the prepetition lenders' advisors in an effort to discuss and negotiate meaningful treatment for the unsecured creditor constituency. Through these efforts and negotiations, Stroock successfully negotiated a Plan settlement on behalf of the Committee (the "Committee Settlement") which

significantly improved the recoveries for general unsecured and trade creditors, as compared to that which was contemplated in the Debtors' originally proposed plan of reorganization.

5.      Also during the Fee Period, Stroock attorneys continued to monitor the Debtors' activities, including, most significantly, the progress of the Debtors' program to pay pre-petition amounts outstanding to vendors (the "Vendor Program"), to ensure that the claims of the trade community that services the Debtors' ongoing business were being addressed in a reasonable manner, as proposed by the Debtors in obtaining their "First Day" relief.

6.      Additionally, in order to ensure efficient administration of the Chapter 11 Cases as well as administration of the estates post-confirmation, Stroock assisted the Committee during the Fee Period in interviewing candidates for and selecting a plan administrator (the "Plan Administrator").

7.      These and other efforts undertaken by Stroock advanced the interests and protected the rights of the Committee and of general unsecured creditors in these Chapter 11 Cases. For these reasons, and as further demonstrated below, Stroock's fees and expenses are reasonable in the circumstances of these Chapter 11 Cases and Stroock's services to the Committee greatly benefitted the estates. Accordingly, Stroock respectfully requests that the Court approve the Application.

## **JURISDICTION**

8.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).

9.      The statutory bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), with recognition of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "U.S. Trustee Guidelines").

## BACKGROUND

10.     On August 3, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

11.     On August 18, 2020, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Committee. The Committee is currently comprised of the following entities: (i) Sea Robin Pipeline, LLC; (ii) Aggreko, LLC; and (iii) Partco, LLC.[2]

12.     On August 19, 2020, the Committee selected Stroock to serve as its counsel, subject to this Court's approval. On August 20, 2020, the Committee selected Cole Schotz P.C. ("Cole Schotz") to serve as co-counsel and Conway MacKenzie, LLC ("Conway MacKenzie"), to serve as financial advisor. Subsequently, on February 19, 2021, the Committee authorized Pachulski

---

[2] On January 5, 2021 the U.S. Trustee filed a *Notice of Reconstitution of Official Committee of Unsecured Creditors* [Docket No. 744] noting the addition of Partco, LLC to the Committee. On February 19, 2021, the U.S. Trustee filed a *Notice of Reconstitution of Official Committee of Unsecured Creditors* [Docket No. 895] noting the addition of Sea Robin Pipeline, LLC and Aggreko, LLC to the Committee.

Stang Ziehl & Jones LLP ("Pachulski", and together with Stroock, Cole Schotz, and Conway MacKenzie, the "Committee Professionals") to replace Cole Schotz as co-counsel to the Committee, effective as of January 20, 2021.

13.     On September 17, 2020, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 367] ("Interim Compensation Order").

14.     On September 18, 2020, the Committee filed the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of Stroock & Stroock & Lavan LLP as Counsel, Effective as of August 19, 2020* [Docket No. 375] (the "Retention Application"). On October 16, 2020, the Court entered the *Order Authorizing Employment and Retention of Stroock & Stroock & Lavan LLP as Counsel to the Official Committee of Unsecured Creditors Effective as of August 19, 2020* [Docket No. 471] (the "Retention Order"). The Retention Order authorizes Stroock's employment and allows for compensation for Stroock's services and reimbursement of its expenses in accordance with 11 U.S.C. §§ 330 and 331, the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules, and any orders of this Court.

15.     On November 30, 2020, Stroock filed its *First Interim Application of Stroock & Stroock & Lavan LLP, as Counsel to the Official Committee of Unsecured Creditors of Fieldwood Energy LLC, et al., for the Period from August 19, 2020 Through and Including October 31, 2020* [Docket No. 619] (the "First Interim Fee Application"). The Court entered an order approving the First Interim Fee Application on December 30, 2020 [Docket No. 709].

16.     On March 1, 2021, Stroock filed its *Second Interim Application of Stroock & Stroock & Lavan LLP, as Counsel to the Official Committee of Unsecured Creditors of Fieldwood*

*Energy LLC, et al., for the Period from November 1, 2020 Through and Including January 31, 2021* [Docket No. 925] (the "Second Interim Fee Application"). The Court entered an order approving the Second Interim Fee Application on March 29, 2021 [Docket No. 1180].

17.     Pursuant to the Interim Compensation Order, Stroock has submitted three monthly fee statements for services rendered and expenses incurred during the Fee Period: the first for the period covering February 1, 2021 through and including February 28, 2021; the second for the period covering March 1, 2021 through and including March 31, 2021; and the third for the period covering April 1, 2021 through and including April 30, 2021. As of the date of the Application, Stroock has not received any objections to any of its monthly fee statements.

18.     In accordance with the Interim Compensation Order, Stroock received payment of 80% of fees and 100% of expenses with respect to the first two monthly statements. The Debtors have not yet remitted payment for the month of April, 2021. A summary of the amounts paid to Stroock in accordance with the Interim Compensation Order for the monthly statements related to the Fee Period is as follows:

| Monthly Statement Fee Period | Fees Incurred | Fees Paid (80%) | Expenses Incurred | Expenses Paid (100%) | Balance (Fees & Expenses) |
|---|---|---|---|---|---|
| February 1, 2021 – February 28, 2021 | $419,081.00 | $335,264.80 | $233.66 | $233.66 | $83,816.20 |
| March 1, 2021 – March 31, 2021 | $545,247.50 | $436,198.00 | $84.10 | $84.10 | $109,049.50 |
| April 1, 2021 – April 30, 2021 | $241,936.00 | $0.00 | $306.10 | $0.00 | $242,242.10 |
| **Balance Owing:** | | | | | **$435,107.80** |

## RELIEF REQUESTED

19.     Stroock requests that the Court enter an order (the "Order"), substantially in the form attached hereto as **Exhibit E**: (a) granting the interim allowance of compensation for the actual, reasonable and necessary professional and paraprofessional services that Stroock provided during the Fee Period in the amount of $1,206,264.50 and reimbursement for Stroock's actual, reasonable and necessary expenses in the amount of $623.86; and (b) authorizing and directing the Debtors to remit payment to Stroock for all approved but unpaid fees and expenses in the aggregate amount of $435,107.80. In support of this Application, attached are the following exhibits:

- **Exhibit A**: Declaration of Kenneth Pasquale

- **Exhibit B**: Summary of Stroock's Fees and Expenses

- **Exhibit C**: Customary and Comparable Compensation Disclosures

- **Exhibit D**: Seventh, Eighth and Ninth Monthly Fee Statements

- **Exhibit E**: Proposed Order Granting Third Interim Fee Application

## SUMMARY OF SERVICES PROVIDED BY STROOCK DURING THE FEE PERIOD

20.     As set forth in the Summary Cover Sheet to the Third Interim Fee Application submitted herewith, Stroock rendered a total of 994.2 hours of professional services during the Fee Period, for which it seeks compensation of $1,206,264.50, calculated in accordance with Stroock's normal hourly rates in effect at the time the services were rendered and/or as agreed upon by the Debtors and Stroock.

21.     The fees and expenses incurred by Stroock are reasonable based on the nature and extent of the services rendered, the size and complexity of these Chapter 11 Cases, the time, labor, and special expertise brought to bear on the questions presented and other related factors. During the Fee Period, the professional services performed by Stroock were necessary and appropriate to

8

protect the rights and fulfill the obligations of the Committee given the nature and complexity of the issues at hand, were in the best interests of the Committee, all general unsecured creditors and other parties in interest, and were performed in an expeditious and efficient manner. In addition, Stroock coordinated with the Committee's other advisors, so as not to duplicate effort. Accordingly, Stroock submits that the compensation sought herein is reasonable within the meaning of sections 330 and 331 of the Bankruptcy Code.

22.     The following summary of services rendered during the Fee Period is not intended to be a detailed description of the work performed. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the issues to which Stroock was required to direct its attention.[3]

### Case Administration – Matter No. 0001

23.     Time in this category includes, but is not limited to, organizational and administrative matters concerning the Committee and its functioning. Specifically, during the Fee Period, Stroock attorneys conferred with the Office of the United States Trustee regarding the resignation of existing Committee members and the appointment of new members, onboarded new Committee members appointed by the Office of the United States Trustee and attended to other administrative matters that were necessary to its efficient and effective participation in these Chapter 11 Cases.

24.     Stroock routinely reviewed the docket in the Chapter 11 Cases and reviewed and analyzed the various pleadings filed. Stroock also maintained an ongoing calendar of important

---

[3] Pursuant to the U.S. Trustee Guidelines, Stroock classified all services performed for which compensation is sought into twenty-three (23) categories. Stroock attempted to place the services performed in the category that best relates to the services provided. However, because certain services may relate to one or more categories, services pertaining to one category may be included in another category. Timekeeping entries, attached hereto as **Exhibit D**, provide detailed descriptions of all services rendered with respect to each of these categories.

dates, deadlines and tasks relevant to these cases, including meetings, hearings and other dates of critical importance.

25.     Stroock expended 38.1 hours in this category, for a total of $20,404.00 during the Fee Period.

## Meetings & Communications with Debtors – Matter No. 0002

26.     Time in this category includes, but is not limited to, conference calls and other communications with the Debtors' professionals. During this Fee Period, Stroock worked with the Debtors' professionals to obtain information, evaluate and, as appropriate, negotiate concerning various developments in these Chapter 11 Cases, including those related to the Debtors' proposed Plan and the Committee Settlement. Additionally, Stroock conferred with the Debtors' professionals regarding the positions of other parties-in-interest, including the sureties and predecessors in interest, the status of any negotiations and the Debtors' positions with respect to such parties.

27.     Stroock expended 35.8 hours in this category, for a total of $48,494.00 during the Fee Period.

## Court Hearings – Matter No. 0005

28.     Time in this category includes preparation for and telephonic or video attendance at numerous hearings before the Bankruptcy Court. During the Fee Period, Stroock attorneys attended several court hearings, which took place on February 1, February 2, February 22, February 26, March 24, March 29, April 1, April 9, April 14, and April 16, including hearings in respect of the Debtors' Disclosure Statement, the Debtors' motion to extend their exclusive plan filing and solicitation periods, and various discovery conferences.

29.     Stroock expended 56.1 hours in this category, for a total of $70,163.50 during the Fee Period.

**Creditors Committee Meetings and Communications – Matter No. 0006**

30.     Time in this category includes, but is not limited to, coordinating and participating in telephonic conference calls with the Committee, and with individual Committee members, as well as with the Committee's other professionals. As a result of the numerous issues to be resolved during the Fee Period, Stroock coordinated and conducted regularly scheduled weekly status calls with the Committee and its advisors to apprise the Committee members of real-time developments in these Chapter 11 Cases related to, among other things, ongoing discussions and negotiations regarding the Debtors' proposed Plan, the Committee Settlement, and selection of the Plan Administrator, to discuss such matters with the Committee, and to facilitate the efficient administration of these Chapter 11 Cases.

31.     In preparation for these calls and meetings, Stroock prepared agendas, reviewed pending matters to be discussed with the Committee, and reviewed and reported on underlying documentation in connection with pending matters. Stroock and the other Committee Professionals also conducted a regular all-hands conference call in advance of the weekly Committee meetings in order to prepare for the Committee meetings and to discuss agenda items, presentations to the Committee and various ongoing issues including pleadings, issues arising in the ordinary course of the Debtors' operations, and overall case strategies. During the Fee Period, Stroock attorneys also drafted memoranda to the Committee summarizing the relief requested in various motions, analyzing legal and factual issues when appropriate, and providing recommendations for the Committee's consideration.  Through such telephone conferences and correspondence, Stroock assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that arose in these cases and to monitor closely the Debtors' administration of these Chapter 11 Cases.

32.     Stroock also responded to inquiries of various creditors regarding proposed Plan treatment as well as their other concerns about these cases.

33.     Stroock expended 181.6 hours in this category, for a total of $233,328.50 during the Fee Period.

### Case Analysis / Pleading Analysis and Responses – Matter No. 0007

34.     Time in this category includes, but is not limited to, time spent reviewing and analyzing various pleadings filed by the Debtors and other parties in the Chapter 11 Cases. Stroock attorneys drafted memoranda to the Committee summarizing the relief requested in various motions, including certain motions related to unexpired leases, the Debtors' motion to approve a non-prosecution agreement with the United States Attorney's Office, controversies with various parties in interest, such as BP Exploration & Production Inc., and various settlement motions pursuant to Bankruptcy Rule 9109, analyzing legal and factual issues when appropriate, and providing, in conjunction with the other Committee Professionals, recommendations for the Committee's consideration.

35.     Stroock expended 14.9 hours in this category, for a total of $14,738.00 during the Fee Period.

### Stroock Fee Application – Matter No. 0009

36.     Time in this category includes, but is not limited to, the review of Stroock's fee statements and invoices and preparation of Stroock's fee applications.

37.     Stroock expended 25.8 hours in this category, for a total of $20,184.00 during the Fee Period.

### Other Professional Retention – Matter No. 0010

38.     Time in this category includes, but is not limited to, Stroock's review of the retention applications of the Debtors' ordinary course professionals and of supplemental

declarations submitted by certain of the Debtors' professionals in connection with already filed retention applications.

39.     Stroock expended 3.7 hours in this category, for a total of $3,530.50 during the Fee Period.

### Other Professional Fee Applications – Matter No. 0011

40.     Time in this category includes, but is not limited to, the review of the Debtors' professionals' fee statements and invoices, as well as and analysis and discussion related to the order establishing interim compensation procedures for professionals in these Chapter 11 Cases [Docket No. 367]. In addition, in accordance with the DIP Order [Docket No. 346], Stroock received and reviewed the invoices of the lenders' professionals distributed during this period.

41.     Stroock expended 10.8 hours in this category, for a total of $9,628.00 during the Fee Period.

### Lien Review – Matter No. 0012

42.     Time in this category includes, but is not limited to, reviewing and investigating the liens and collateral packages of the prepetition lenders to determine the extent and validity of their liens and security interests and the extent to which such liens were properly perfected, within the challenge period set forth in the Final DIP Order. In connection with the Committee's investigation and analysis, Stroock continued its review and analysis of numerous debt documents and various other instruments, including security agreements, mortgages, deposit account control agreements and UCC financing statements and with the other UCC professionals devoted significant attention to the values which might be ascribed to the unencumbered assets available for unsecured creditors. Stroock attorneys also coordinated with co-counsel in connection with their review of the pre-petition lenders' interest in the oil and gas leases and the value of those leases not subject to the prepetition lenders' liens. In addition, Stroock reviewed and tracked the

various notices of mechanics' and materialmens' liens filed and analyzed the merits of such purported liens.

43.     During the Fee Period, Stroock also engaged in  negotiations with the lenders and Debtors to extend the Committee's Challenge Period for assertion of the Preserved Claims, resulting in the drafting and filing of the various stipulations to that effect.

44.     Stroock expended 10.0 hours in this category, for a total of $12,431.00 during the Fee Period.

## Litigation & Adversary Proceedings – Matter No. 0015

45.     Time in this category primarily includes, but is not limited to, Stroock's review of materials provided by the Debtors via a virtual data room, and analysis of potential causes of action available to the estates and/or the Committee. Through such analysis, Stroock identified several colorable estate causes of action and prepared a Standing Motion to obtain authority for the Committee to prosecute such claims.

46.     Additionally, Stroock reviewed, analyzed and summarized various pleading filed in the adversary proceedings, including the Debtors' adversary complaints against Valero Marketing and Supply Company, Atlantic Maritime Services LLC, and Everest Reinsurance Company.

47.     Stroock expended 101.2 hours in this category, for a total of $118,794.50 during the Fee Period.

## Business Operations  – Matter No. 0016

48.      Time in this category primarily includes, but is not limited to, review and analysis of Joint Interest Billing and Vendor Program payments and analysis of predecessors' plugging and abandonment liability and related issues.

14

49.     Stroock expended 8.2 hours in this category, for a total of $11,370.50 during the Fee Period.

### Claims Administration & Objections – Matter No. 0022

50.     Time in this category includes, but is not limited to, review and analysis of various claims filed against the Debtors in response to the bar date established by this Court for the filing of claims and research conducted in connection with certain significant filed claims.

51.     Stroock expended 14.3 hours in this category, for a total of $17,050.00 during the Fee Period.

### Plan & Disclosure Statement – Matter No. 0023

52.     Time in this category relates to, among other things, Stroock's communications with the Debtors' and lenders' advisors concerning Plan structure, timing and, importantly, treatment, and discussions with the Committee regarding same. Stroock also spent significant time reviewing and analyzing the Debtors' proposed Plan and Disclosure Statement, related discovery produced by the Debtors, and attending to other Plan and Disclosure Statement-related issues, including negotiating, on behalf of the Committee, the Committee Settlement, which significantly improved the expected recovery for unsecured creditors in these Chapter 11 Cases. Stroock provided comments to the various versions of the Plan, Disclosure Statement and other Plan related documents circulated by the Debtors to ensure that they accurately reflected the Committee Settlement and otherwise comported with the Committee's understanding of the restructuring. Stroock reviewed and commented on a proposed settlement with the Second Lien Term Loan Lenders (the "SLTLs") and discussed the matter with counsel to the lenders and the Debtors, as well as with the Committee.  Stroock obtained modifications to the Committee Settlement that further improved the consideration to general unsecured creditors based upon the terms of the Plan settlement with the SLTLs.  Stroock also drafted a letter on behalf of the Committee to unsecured

15

creditors in support of the Plan and scrutinized the ballots and other solicitation materials being sent to the unsecured creditor constituency including a form of trade agreement provided to those electing to participate in a trade creditor class.

53.     During the Fee Period, Stroock attorneys also reviewed and analyzed various objections filed by creditors to the Debtors' Disclosure Statement and Plan. In addition, attention was devoted to researching issues including, but not limited to those which were raised in the filed Disclosure Statement and Plan objections, which might affect the treatment or recovery of general unsecured creditors in a plan, such as plugging and abandonment and surety bond issues, among others. Stroock also communicated with representatives of the federal government as well as counsel to various sureties and predecessors in interest who had objected to the Disclosure Statement and/or indicated their opposition to the Plan to assess the issues and determine if a consensual resolution might be achievable.

54.     Stroock expended 489.7 hours in this category, for a total of $620,322.50 during the Fee Period.

## **BASIS FOR RELIEF REQUESTED**

55.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under sections 327 or 1103 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered…and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall

16

consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

A.      the time spent on such services;

B.      the rates charged for such services;

C.      whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

D.      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

E.      with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

F.      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

56.     The Fifth Circuit considers the following twelve factors set forth in *First Colonial* in determining the validity of awards of attorneys' fees in bankruptcy cases: (i) time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill required to perform the legal services properly; (iv) the preclusion of other employment by the professional due to acceptance of the case; (v) the customary fee; (vi) whether the fee is contingent or fixed; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *In re First Colonial Corp. of America,* 544 F.2d 1291, 1298-99 (5th Cir. 1977), *cert. denied,* 431 U.S. 904 (1977). These factors were adopted from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), a non-bankruptcy case, and are commonly referred to as the

17

"*Johnson* factors." The original *Johnson* factors, as embraced by *First Colonial,* remain applicable to the determination of reasonableness of fees awarded under the Bankruptcy Code. *See* 15 King, *Collier on Bankruptcy*, ¶ 330.04[3] at 330-35 to 330-41.

57.     The Fifth Circuit has rejected the "hindsight" or "material benefit" standard that was originally set forth in *In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998). Instead, the Fifth Circuit enunciated a prospective standard based on whether the services of counsel were reasonably likely to benefit the estate at the time they were rendered. *See In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015).

58.     Stroock respectfully submits that it has met its burden under both section 330 of the Bankruptcy Code and the *Johnson* factors, and the services for which it seeks compensation in this Application were, at the time rendered, necessary for and beneficial to the Committee and the general unsecured creditors of the estates, and were rendered to protect and preserve the Debtors' estates. Stroock further believes that it performed the services for the Committee economically, effectively, efficiently, and the results obtained benefited not only the Committee, but also the Debtors' estates and the Debtors' constituents. Stroock further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee and all parties in interest.

59.     As demonstrated below, Stroock has satisfied the *Johnson* factors. Accordingly, it is respectfully requested that the Court allow the requested fees and expenses.

60.     **The Time and Labor Required**. Firm attorneys and paraprofessionals expended a total of 994.2 hours during the Fee Period. The names of the attorneys and paraprofessionals who worked on these Chapter 11 Cases during the Fee Period appear in the Monthly Statements, attached as **Exhibit D**, along with detail regarding the specific services performed by each

individual. Many of the services rendered required a high degree of professional competence and expertise in order to be skillfully and expeditiously administered. When more routine tasks were involved, Stroock used its paraprofessionals to reduce the total fees incurred without sacrificing the quality of the services rendered. All professionals involved in rendering services to the Committee made a deliberate effort to avoid any unnecessary duplication of work and time expended.

61.     **The Novelty and Difficulty of Legal Problems Involved**. These Chapter 11 Cases have presented numerous difficult and complex legal issues that have been considered and addressed by Stroock, all of which have required knowledge of the circumstances of these Chapter 11 Cases and application of the Bankruptcy Code, the Bankruptcy Rules and court decisions interpreting the same. Stroock's diligence and effective advocacy with respect to these issues have been beneficial to the Committee in these Chapter 11 Cases.

62.     **The Skill Required for Performance of Legal Services**. The number of difficult issues and matters addressed in these Chapter 11 Cases required a high degree of skill and expertise. Stroock's attorneys, with varying levels of experience and seniority, have been used effectively and efficiently to perform the necessary tasks and have provided valuable and effective assistance to the Committee. A thorough understanding of the Bankruptcy Code and Bankruptcy Rules was applied along with Stroock's subject matter and industry expertise to assist the Committee. The compensation requested by Stroock is consistent with the compensation awarded in other cases of similar size and complexity.

63.     **Preclusion of Other Employment Due to Acceptance of the Case**. Stroock's representation of the Committee has not precluded the acceptance of new clients because of the size of Stroock's financial restructuring department and the firm as a whole. Stroock has not

declined any representation solely because it serves as counsel for the Committee in these Chapter 11 Cases. However, the issues that have arisen in these proceedings have required attention on an ongoing and often expedited basis and the commitment of significant portions of time by Stroock attorneys and paraprofessionals.

64.    **The Customary Fee**. Stroock has computed the amount of compensation it seeks in this Application according to its customary rates for services of this kind, except as otherwise described herein.[4] The fees charged by Stroock are similar to the fees charged by comparable law firms. The amount of work involved in these cases, the level of skill necessary to perform the work, and the results obtained by Stroock justify an allowance of compensation in the requested amount. The compensation sought herein is not unusual given the magnitude of these Chapter 11 Cases and the time dedicated by Stroock to the representation of the Committee during the Fee Period.

65.    **Whether the Fee is Contingent or Fixed**. Stroock's fees for services rendered in these Chapter 11 Cases are based on its regular hourly rates (as adjusted periodically), subject in all respects to this Court's approval. Stroock has not requested any contingent fee in these Chapter 11 Cases, and the allowance of Stroock's fees is not outcome-dependent.

66.    **Time Limitations Imposed by the Client or Other Circumstances**. At times during the Fee Period, as detailed above, the circumstances of these Chapter 11 Cases have imposed significant time constraints requiring attorneys and paraprofessionals assigned to these Chapter 11 Cases to work evenings and on weekends. Stroock is working diligently and efficiently, with the assistance of the Committee's other advisors, to ensure that the Committee and its constituency are well represented and their interests protected.

---

[4] On December 18, 2020, Stroock filed its *Notice of Rate Increase Pursuant to Order Authorizing Retention and Employment of Stroock & Stroock & Lavan LLC as Attorneys for the Official Committee of Unsecured Creditors Effective as of January 1, 2021* [Docket No. 672]. Stroock has implemented the rate increases set forth in such notice, but has voluntarily charged a lower rate than set forth in the notice for certain counsel, at the request of the Debtors.

67.    **The Results Obtained**. As described in this Application, Stroock's analysis, investigatory work and actions, thus far, have been valuable to the Committee and the constituency it represents in preserving and protecting the interests of the unsecured creditors as these Chapter 11 Cases develop. Stroock, on behalf of the Committee, has greatly contributed to the efficient administration of the Chapter 11 Cases.

68.    **The Experience, Reputation, and Ability of the Attorneys**. Stroock possesses extensive experience, expertise and resources in all practice areas relevant to these Chapter 11 Cases, and is well versed in all substantive and procedural aspects of chapter 11 proceedings. Stroock is nationally recognized for having represented numerous official committees of unsecured creditors, ad hoc committees, individual creditors and investors in many chapter 11 cases in this district and others. Further, Stroock attorneys, including those who have provided legal services in these Chapter 11 Cases, have actively participated in leadership positions in bar associations and other organizations, have written for local and national publications, and have spoken on panels involving creditors' rights and bankruptcy areas. Stroock's attorneys are experienced in all aspects of bankruptcy matters, possess a high level of expertise, and have an excellent reputation in the business and legal communities. Furthermore, Stroock has particular experience in the areas of insolvency, workout and corporate reorganization.

69.    **The "Undesirability" of the Case**. Serving as counsel to the Committee in these Chapter 11 Cases has not been undesirable for Stroock.

70.    **The Nature and Length of the Professional Relationship with the Client**. Stroock was selected as the Committee's counsel shortly after the Committee's formation, on August 19, 2020, and was retained effective as of that date pursuant to an order of the Court dated October 16, 2020. Stroock has been rendering services continuously to the Committee since the

Committee was formed, and Stroock has rendered such services in a necessary and appropriate manner.

71.     **Awards in Similar Cases**. Stroock believes that its fees are consistent with fees allowed in similar proceedings for similar services rendered and results obtained. Stroock respectfully requests that the Court take notice of the awards made in similar cases of this size and complexity.

72.     Bankruptcy Code section 330 also authorizes "reimbursement for actual, necessary expenses" incurred by a retained professional. 11 U.S.C. §330(a)(1)(B). Stroock seeks reimbursement for actual and unpaid out-of-pocket expenses incurred in connection with its representation of the Committee during the Fee Period in the amount of $623.86. These expenses were incurred in accordance with Stroock's normal practice of charging clients for expenses related to particular matters, including transportation, photocopying, delivery service, postage and package delivery, vendor charges, court fees, transcript costs, computer-aided research and other out-of-pocket expenses incurred in providing professional services. Stroock has endeavored to minimize these expenses to the fullest extent possible and has provided a detailed summary of the expenses in the Monthly Statements attached hereto as **Exhibit D**.

73.     For the reasons set forth herein, Stroock has satisfied the *Johnson* factors. Accordingly, it is respectfully requested that the Court allow the requested fees and expenses in the amount of $1,206,888.36 for the period from February 1, 2021 through and including April 30, 2021, which amount consists of $1,206,264.50 in fees and $623.86 in expenses.

## STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

74.     The following statement is provided pursuant to ¶ C.5. of the Appendix B Guidelines.

a.    **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period.

    **Answer:** Yes; see discussion in footnote 4 hereof.

b.    **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client**.**

    **Answer**: Not applicable.

c.    **Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case**.**

    **Answer**: No.

d.    **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application). If so, please quantify by hours and fees.

    **Answer**: No.

e.    **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

    **Answer**: No.

f.    **Question**: If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

    **Answer**: Yes. With the authority of the Committee, on December 18, 2020, Stroock filed its *Notice of Rate Increase Pursuant to Order Authorizing Retention and Employment of Stroock & Stroock & Lavan LLC as Attorneys for the Official Committee of Unsecured Creditors Effective as of January 1, 2021* [Docket No. 672], and implemented such increases as set forth in the Second Interim Fee Application and in footnote 4 hereof.

## **RESERVATION OF RIGHTS**

75.     Although every effort has been made to include all fees and expenses incurred during the Fee Period, some fees and expenses may not be included in this Application due to delays in accounting and processing of such time and expenses. Accordingly, Stroock reserves the opportunity to make further application to this Court for the allowance of any such fees and expenses incurred during the Fee Period but not included herein.

## **NO PRIOR REQUEST**

76.     No prior request for the relief sought in this Application has been made to this or any other court.

24

## <u>CONCLUSION</u>

**WHEREFORE**, Stroock respectfully requests that the Court:

(a)     approve interim allowance for the Fee Period of $1,206,264.50 for services rendered to the Committee and $623.86 for expenses that Stroock incurred in connection with the rendering of such services during the period from February 1, 2021 through and including April 30, 2021;

(b)     authorize the Debtors to immediately pay to Stroock any unpaid portion of such allowed fees and expenses; and

(c)     award such other relief as the Court deems just and proper under the circumstances.

Dated: May 27, 2021                                    Respectfully submitted,

*/s/  Kenneth Pasquale*
Kenneth Pasquale
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
(212) 806-5562
Fax No. (212) 806-6006
kpasquale@stroock.com