# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **FIELDWOOD ENERGY LLC, *et al.*,** | ) |
| | ) Case No. 20-33948 (MI) |
| Debtors.[1] | ) |
| | ) **(Chapter No. 11)** |
| | ) |
| | ) **(Jointly Administered)** |
| | ) |
| | ) |

### SHELL OFFSHORE INC.'S MOTION TO QUASH
### DEBTORS' NOTICE OF BANKRUTPCY RULE 2004 REQUEST
### FOR PRODUCTION OF DOCUMENTS FROM SHELL OFFSHORE INC.
### [RELATES TO DKT. NO. 1388]

_____

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Shell Offshore Inc. ("Shell") a creditor and non-debtor party in the above-captioned, jointly administered bankruptcy cases (the "Bankruptcy Cases"), hereby files this motion (the "Motion") for entry of an order quashing the *Debtors' Notice of Bankruptcy Rule 2004 Request for Production of Documents from Shell Offshore Inc.* [Dkt No. 1388] (the "2004 Notice").[2] In support of this Motion, Shell respectfully states as follows:

## PRELIMINARY STATEMENT

1. The 2004 Notice should be quashed because the Debtors have not provided a reasonable basis—the requisite "good cause"—to justify the examination of the material sought to be discovered. Moreover, it seeks examination beyond the scope allowed under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004" or collectively, the "Rules"). By the Debtors' own admission, the 2004 Notice does not relate to the Amended Plan or the upcoming confirmation hearing in these Bankruptcy Cases.[3] Rather, the 2004 Notice appears to be, at least in part, an attempt by the Debtors to obtain targeted commercially sensitive information from one of its competitors and suppliers (that they would not be able to obtain in the ordinary course of business). Such an objective, if true, is not a proper use of Rule 2004. Indeed, permitting debtors to exploit Rule 2004 to conduct discovery on their competitors to utilize post-emergence from bankruptcy would set a very troubling precedent and should not be sanctioned by this Court.

2. Despite the impropriety of relief sought in the 2004 Notice, Shell has employed a constructive approach with the Debtors in an attempt to resolve these issues. To that end, counsel for Shell and the Debtors have engaged in several meet and confer meetings pursuant to

---

[2] Capitalized terms not otherwise defined herein shall maintain the definitions ascribed to them in the 2004 Notice.

[3] The Debtors have informed Shell that the basis for the 2004 Notice is completely independent from the Amended Plan. Furthermore, the deadline to propound discovery requests related to the Amended Plan pursuant to the *Scheduling Order* [Dkt. No. 1224] was April 14, 2021.

2

Bankruptcy Local Rule 2004-1(c) (as further described below). Notwithstanding multiple good faith attempts by the parties to resolve their issues, Shell's concerns with the 2004 Notice persist.[4] Specifically, (i) the Debtors have failed to provide a reasonable basis to examine the material sought to be discovered; (ii) the 2004 Notice seeks material beyond information that involves the Debtors' interests and the administration of the Debtors' estates; (iii) the 2004 Notice seeks highly confidential and commercially sensitive documents in contravention of non-debtor parties' contractual agreements; and (iv) the 2004 Notice calls for the production of documents during an expansive time period that would be extremely burdensome and costly for Shell to produce.[5] For the reasons discussed herein, the Debtors have not established good cause for the 2004 Notice, and this Motion should be granted in its entirety.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Bankruptcy Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

**A.    Shell's Relationship with the Debtors**

4. Shell's involvement in the Bankruptcy Cases stems from the fact that Shell and other related affiliates are in chain of title or contractual privity with Fieldwood Energy LLC and its affiliates (collectively, "Fieldwood" or "FWE") either directly or by virtue of divesture of certain oil and gas assets (*e.g.*, well, leases, pipelines) to Apache and other parties. Specifically,

---

[4] Shell disputes the Debtors' characterization of Shell's position in the Certificate of Conference in the 2004 Notice, and has communicated its disagreement to the Debtors.

[5] The 2004 Notice seeks far-ranging documents from January 1, 2018 to the present (the "Time Period")—over two and a half years prior to the filing of these Bankruptcy Cases.

3

Shell and Fieldwood are parties to that certain (i) *Asset Purchase Agreement* dated April 8, 2015 (the "Troika APA"), whereby Fieldwood purchased oil and gas interests, properties and associated leases, contracts, wells, equipment and facilities regarding the Troika Unit located in the Gulf of Mexico and that certain (ii) *Asset Purchase Agreement* dated April 8, 2015 (the "Hickory APA," together with the Troika APA, the "Purchase Agreements") whereby Fieldwood purchased oil and gas interests, properties and associated leases, contracts, wells, equipment and facilities regarding the Hickory Unit located in the Gulf of Mexico.

5. Shell and Fieldwood's business operations are subject to oversight by several government agencies, including, *inter alia*, the Bureau of Safety and Environmental Enforcement ("BSEE"), whose regulations serve as the basis for various plugging and abandonment obligations (the "P&A Obligations") for decommissioning certain leases.

6. Fieldwood is a co-working interest owner and operator of a well in the Gulf of Mexico that is part of the Galapagos field ("Genovesa"). Genovesa was drilled in June-July 2019 and connects to a host platform called Na Kika (hereinafter "Na Kika" or the "Na Kika Host"). Na Kika is a semi-submersible, four column production platform operating in 6,340 feet of water. Shell has a 50% non-operating ownership interest in the Na Kika Host of which BP operates under the Na Kika JOA between BP and Shell. Thus, BP may have contractual agreements with the Debtors relating to Genovesa or other satellite fields/wells of which Shell is not a party and Shell's consent thereto is not required.

7. Shell operates one satellite field, Coulomb, which has production that flows through the Na Kika Host. Generally, satellite field producers have no relationship with the non-operator, co-owner of a host facility. In the normal course of business, Shell and Fieldwood have

no communication or coordination as it relates to Na Kika or Genovesa. Fieldwood, with interest in a satellite field, would have no interaction with the Na Kika non-operator owner—Shell.

8. Shell has no independent discretion over the operation of the Na Kika Host as it relates to Fieldwood. However, pursuant to the Na-Kika Joint Operating Agreement (the "Na Kika JOA"), Shell engages in regular communications with BP regarding operations of the Na Kika Host of which satellite field producers have no contractual or other right to obtain or review.

**B.     The Chapter 11 Cases**

9. On August 3, 2020 and August 4, 2020, Fieldwood and 13 affiliated debtors (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

10. On November 19, 2020, Shell filed Proof of Claim No. 412 to assert undetermined claims related to decommissioning liability pursuant to the Purchase Agreements.

11. On January 1, 2021, the Debtors filed the *Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 722] (the "Plan") and the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 723] (the "Disclosure Statement"). Pursuant to the Plan, the Debtors intend to "reorganize" by way of the following transactions: (i) a credit bid sale; (ii) a divisive merger transaction pursuant to which certain assets and liabilities of FWE would be divided into several NewCo entities; (iii) the decommissioning of certain properties; and (iv) abandonment of certain properties, along with the P&A Obligations associated therewith, to the Debtors' predecessors.

12. On March 15, 2021, the Debtors filed the Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors [Dkt. No. 1020] (as later modified and supplemented, the "Amended Plan"), and on March 16, 2021, the Debtors filed the Disclosure

5

Statement for Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors [Dkt. No. 1022] (as later modified and supplemented, the "Amended Disclosure Statement"). The Debtors have since filed several iterations of the Amended Plan and Amended Disclosure Statement in these cases.

13. On March 18, 2021, Shell filed its *Objection and Joinder of Shell Offshore, Inc. to the (A) Objection of Chevron U.S.A., Inc. and Noble Energy, Inc., (B) Objection of XTO Offshore, INc., HHE Energy Company, and XH LLC, (C) Objection of Marathon Oil Company, (D) Objection of ENI Operating Co. Inc. and ENI Petroleum US LLC, and (e) Objection of Sea Robin Pipeline Company, LLC, West Cameron Dehydration Company, L.L.C., Florida Gas Transmission, LLC, Stingray Pipeline Company, L.L.C., Trunkline Gas Company, LLC, and Trunkline Field Services LLC (collectively, "Energy Transfer"), and (f) Objection of Freeport-Mcmoran Oil & Gas LLC and Mcmoran Oil & Gas LLC to the Disclosure Statement for the Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors* [Dkt. No. 1056] ("Shell's Objection to the Amended Disclosure Statement").

**C.    Requests for Production of Documents**

14. Following the hearing on the Debtors' Amended Disclosure Statement, on April 14, 2021, the Debtors served the *Debtors' First Requests for Production of Documents to Shell Offshore, Inc.* (the "RFPs") by email to counsel for Shell. The RFPs included five (5) requests that generally sought documents that formed a basis for Shell's Objection to the Amended Disclosure Statement, and any objections Shell may intend to raise at confirmation to the Amended Plan.

15. Shell complied with the Debtors' RFPs. Specifically, on April 28, 2021, counsel for Shell served by email upon counsel for the Debtors *Shell Offshore, Inc.'s Objections and Responses to the Debtors First Requests for Production of Documents*, in addition to a secure link

to a OneDrive file containing documents responsive to the RFPs. The Debtors did not subsequently request additional information related to the RFPs.

16. On May 14, 2021, the Debtors informally served the 2004 Notice by email to counsel for Shell, seeking to schedule a time to meet and confer prior to the Debtors' formal service of the 2004 Notice.

17. On May 18, 2021, May 19, 2021, May 20, 2021, and May 28, 2021,[6] counsel for Shell and the Debtors held several meet and confer meetings in an attempt to work constructively towards a resolution (the "Meet and Confers"). During the Meet and Confers, counsel for Shell agreed to engage in further discussions with the Debtors as to the Rule 2004 Notice and its scope, and the Debtors later provided search terms, but at no time did counsel for Shell state that it was unopposed to the Rule 2004 Notice.

18. On May 21, 2021, the Debtors filed the 2004 Notice.

**RELIEF REQUESTED**

19. For all the reasons set forth herein, Shell respectfully requests the Court enter an order quashing the 2004 Notice in its entirety.

**ARGUMENT AND AUTHORITIES**

20. Although Rule 2004 permits a broad scope of examination, that scope is not unlimited. *In re Buckner*, 271 B.R. 213 (B.A.P. 10th Cir. 2001). A bankruptcy court is vested with discretion over the granting or denial requests made pursuant to Rule 2004. *In re Board of Directors of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001). Consequently, a request under Rule 2004 is evaluated under the "good cause" standard. *Official Committee of Unsecured Creditors v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 169 B.R. 130,

---

[6] *See* Certificate of Conference, *infra*.

7

134 (Bankr. S.D. Ohio 1994); *see also In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("[O]nce a motion to quash a subpoena has been made, the examiner bears the burden of proving that good cause exists for taking the requested discovery.").

## A. The Debtors Have Not Established Good Cause for the 2004 Notice.

21. Good cause requires a showing that the Rule 2004 examination is "necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Express One Int'l*, 217 B.R. 215, 216 (Bankr. E.D. Tex. 1998). Courts generally apply a "totality of the circumstances" or balancing test to determine whether "good cause" exists. *See In re AOG Enm't, Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008). Failure to establish good cause is grounds to deny Rule 2004 discovery. *See In re Millennium Lab*, 562 B.R. 614, 628 (Bankr. D. Del. 2016). In addition, courts "have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002).

22. The requests made under the 2004 Notice do not relate to the financial condition of the Debtors or their right to a discharge. Rather, the 2004 Notice is an attempt by the Debtors to gain access to commercially sensitive information of one of their competitiors and suppliers that they would not otherwise be able to obtain in the ordinary course of business. Specifically, the 2004 Notice requests invasive and highly sensitive confidential information as to the operations of third parties in the Gulf of Mexico.[7] Considering the relevance and necessity of this information

---

[7] Shell's response and position concerning the Debtors' request to produce commercially sensitive information mirrors the Debtors' argument in their filed opposition to BP's *Emergency Motion to Compel Debtors to Respond Substantively to an Interrogatory, Produce Documents, and/or Allow Access to Data Room(s)* [Dkt No. 1337]. *See Debtors' Response in Opposition to BP's Emergency Motion to Compel* [Dkt No. 1343] ("[T]he Debtors should not be required to produce substantial amounts of commercially sensitive information, which no other party has asked for in this case, to a competitor like BP without BP providing a non-conclusory explanation as to its relevance.").

8

against the risk of abuse and burden to the opposing party weighs against a finding of good cause under these circumstances. *See In re AOG Entm't, Inc.*, 558 B.R. at 109 (denying Rule 2004 examination upon application of the balancing test); *In re Countrywide Home Loans*, 384 B.R. at 393 (noting that inquiries that seek far-reaching information into a creditor's operations "present a greater potential for abuse."); *see also In re SunEdison, Inc.*, 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017) (reasoning that the 2015 amendments to the Federal Rules of Civil Procedure that require a proportionality analysis in cost of producing discovery is relevant to the determination of "cause" for a Bankruptcy Rule 2004 examination). Moreover, to the extent the Debtors seek to use this information for some post-confirmation purpose or adversarial matter, the normal rules of discovery should apply. *See generally In re Carmelo Bambace, Inc.*, 134 B.R. 125, 130 (Bankr. S.D.N.Y. 1991) (denying creditor's Rule 2004 motion post-confirmation).

23. Because no good cause exists for taking the requested discovery from Shell, the Court should enter an order quashing the examination in its entirety.

**B.    The 2004 Notice Exceeds the Scope of Permissible Discovery Under Rule 2004.**

24. As a preliminary matter, the 2004 Notice does not state how each of the requests to Shell is permissible under Rule 2004, which dictates that an examination "***may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor***, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b) (emphasis added).

25. Bankruptcy Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs and is not intended to provide unlimited access to the internal affairs of a debtor's creditors. *In re CIS Corp.*, 123 B.R. 488 (S.D.N.Y. 1991) (discovery of accounting firm's internal auditing documents is proper only where there is a

9

pending claim against the firm involving the propriety of an audit). *In re Board of Directors of Hopewell Intern. Ins. Ltd.*, 258 B.R. 580 (Bankr. S.D. N.Y. 2001) (precluding a foreign debtor's representatives from conducting a Rule 2004 examination of a creditor's representatives for purposes of discovering matters unrelated to the ancillary case); *In re Continental Forge Co., Inc.*, 73 B.R. 1005 (Bankr. W.D. Pa. 1987); *Matter of Wilcher*, 56 B.R. 428 (Bankr. N.D. Ill. 1985).

26. Rather, the scope of Rule 2004 discovery is limited by the Rule's purpose: "to enable parties in interest to locate assets of the debtor and to make those assets available for the creditors of the estate." *In re Continental Forge Co. Inc.*, 73 B.R. 1005, 1007 (W.D. Pa. 1987) (denying discovery under Rule 2004 when "the requested information is not relevant to any conceivably legitimate issue," such as "the discovery and collection of assets of the debtor [or] the development of a plan of reorganization"); *accord* Fed. R. Bankr. P. 2004(b).

27. Especially given that Shell is a non-debtor third party, the requests in the 2004 Notice reach far beyond the scope of Rule 2004. Rule 2004 does not permit examination of all third parties, but rather "only of those persons possessing ***knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy***." *In re Wilcher*, 56 B.R. 428 (Bankr. N.D. Ill. 1985) (emphasis added) (quashing subpoena to third party where examining party failed to show connection to bankruptcy proceeding).

28. The 2004 Notice calls for far-ranging documents that reach into the internal affairs and proprietary business decisions of non-debtor parties, including Shell, with no stated connection to these Bankuptcy Cases. For example, the requests call for "all documents for or from meetings between BP and Shell concerning Na Kika, including presentations, other exchanged documents, minutes, or summaries of the meeting." *See* 2004 Notice, Request No. 2. This inquiry is not solely related to the Debtors' assets, estates, or these Bankruptcy Cases, as the assets of non-debtor parties

10

flow through the Na Kika host. For instance, Shell only operates one satellite field, Coulomb, which flows through the Na Kika host, but for which Fieldwood has no interest in. Producing documents regarding Coulomb would be entirely inappropriate and clearly exceeds the scope of Rule 2004.

**C.     The 2004 Notice Seeks Highly Confidential and Proprietary Documents.**

29.     Shell also takes issue with the Debtors' attempt to use Rule 2004 to obtain highly confidential documents when applicable third-party non-debtor agreements clearly limit the disclosure of such material.[8]

30.     For example, Request No. 4 calls for "[d]ocuments sufficient to show the meaning of 'Na Kika Obligations,' as defined in § PHA 2.2.87, including, without limitation, 'the Na Kika JOA, the Na Kika HUA, the Host M&A, the Satellite Field Start-up Agreement' (as those terms are defined in the PHA), and any other agreements or other Documents necessary to determine the meaning of 'Na Kika Obligations.'" Shell is not a party to the PHA and, upon information and belief, does not possess a copy of this agreement. In addition, the Na Kika JOA contains strict confidentiality provisions and notice procedures to non-disclosing parties.

31.     Again, Shell submits that Fieldwood seeks to utilize Rule 2004 to obtain access to confidential information that it would not otherwise be able to obtain. For this reason, Shell requests that the Court quash the 2004 Notice because it requires the production of confidential information in violation of key contractual provisions. *See generally In re Cont'l Forge Co.*, 73

---

[8] For example, under the Na Kika JOA, if Shell is "legally compelled to disclose any Confidential Data," Shell has an obligation to "promptly provide all other Parties to this Agreement written notice of such proceedings so that the non-disclosing Parties may seek a protective order or other remedy." *See* Na Kika JOA, Section 7.1. Shell also has an obligation to "furnish only such Confidential Data as is legally required and will use its reasonable efforts to obtain confidential treatment for any Confidential Data disclosed." *Id.*

11

B.R. 1005, 1006 (Bankr. W.D. Pa. 1987) ("Rule 2004 is not intended to be used as a vehicle for gathering confidential information for which no reasonable need is shown.").

**D.     The Requests in the 2004 Notice are Unduly Burdensome and Overbroad**

32.     The requests to Shell in the 2004 Notice are overbroad and unduly burdensome. Indeed, even if proactive measures are undertaken to alleviate the burden of the production, based on the expansive scope of the requests Shell estimates that there are potentially tens of thousands of responsive documents. Bankruptcy Rule 2004 cannot be used for "purposes of abuse or harassment" and it "cannot stray into matters which are not relevant to the basic inquiry." *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984). The court must also weigh the relevance of the discovery against the burden it will impose on the producing party. *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *see also In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("[T]he examination should not be so broad as to be more disruptive and costly to the [producing party] than beneficial to the [requesting party]"). If the cost and disruption to the examinee outweighs the benefits to the examiner, the examination should be denied and the Court may, for good cause, issue an order forbidding the disclosure or discovery. *See, e.g., In re Buccaneer Res.*, 2015 WL 8527424, at *6 (Bankr. S.D. Tex. Dec. 10, 2015).

33.     Here, the vast majority of the requests for production in the 2004 Notice calls for "[a]ll Documents" and/or all "Communications." Given that the Time Period identified in the 2004 Notice is over three years, Shell's production of "[a]ll Documents" and/or all "Communications" would be very costly and unduly burdensome to produce.

34.     For example, Request No. 2 calls for "[a]ll documents for or from meetings between BP and Shell concerning Na Kika, including presentations, other exchanged documents, minutes, or summaries of the meeting." This request is not only improper and harassing for the reasons

previously addressed herein (namely, it encompasses information concerning Na Kika that is unrelated to assets of the Debtors) but the request is extremely broad. In the operation of the Na Kika Host, and as parties to the platform, there are numerous formal, monthly operation meetings and daily communications between Shell and BP on a myriad of issues. Notably, the Debtors have no contractual right to obtain or review these documents as a non-party to the Na Kika Host. The production for this request alone would be very expensive and unduly burdensome.

35. Request No. 1 likewise calls for "[a]ll Documents and Commmunications concerning Genovesa, including but not limited to Internal Comunications or Commmunications with BP, OSS, Honeywell, or any third party; Analyses on the impact Genovesa would have on production at Manuel; Fieldwood's timeline for bringing Genovesa online at Na Kika; BP and Shell's offer to accelerate bringing Genovesa on at Na Kika, if Fieldwood paid." The request for "all Documents and Communications" is overbroad and includes documents and communications unrelated to these Bankruptcy Cases or the Debtors. In addition, this request for "analyses" and any "offer" encompasses highly sensitive commercial information that would afford the Debtors an unfair competitive advantage and improper view into the internal affairs of Shell, of which Fieldwood is a competitor.[9] These are but a few examples of the overbroad requests contained in the 2004 Notice.[10]

36. The Debtors have failed to articulate exactly how the requests in the 2004 Notice concern, or would lead to information concerning, the *Debtors'* acts, the *Debtors'* conduct, the *Debtors'* financial affairs, or the administration of the *Debtors'* estate. (emphasis added). Instead,

---

[9] *See supra*, note 6.

[10] The timing of the 2004 Notice is also questionable. Mere weeks after propounding Shell with discovery related to confirmation (to which Shell complied) the Debtors have served Shell with the 2004 Notice, which the Debtors have represented is unrelated to confirmation, on the eve of the plan objection deadline without providing a reasonable basis to justify the examination of the material sought to be discovered.

the 2004 Notice is an attempt by the Debtors to obtain access to documents that they would not otherwise be entitled to and leverage such information post-emergence (to the detriment of their competitors, like Shell). Such an objective is inappropriate, and an impermissible use of Rule 2004. Accordingly, and for the reasons described above, Shell respectfully requests the Court quash the 2004 Notice in its entirety.

## **RESERVATION OF RIGHTS**

37. Nothing herein shall constitute and admission by Shell as to the relevance or propriety of the Debtors' specific document requests in the 2004 Notice. Shell reserves the right to object to each and every document request, including its right to object to the scope of each and every document request, in the event the Court determines the 2004 Notice is appropriate. Shell also reserves the right to amend, update, modify, and/or supplement this Motion in all respects, including, without limitation, any of the arguments or concerns raised in and incorporated into this Motion at any time, including at any hearing set by the Court for consideration of the 2004 Notice.

## **CONCLUSION**

WHEREFORE, Shell requests that the Court enter an order (a) granting the Motion and quashing the 2004 Notice in its entirety; and (b) granting such other and further relief as the Court may deem just, proper, and equitable.

*[Remainder of Page Intentionally Left Blank]*

Dated: May 28, 2021

Respectfully submitted,

*/s/ Ryan E. Manns*
Ryan E. Manns
State Bar No. 24041391
ryan.manns@nortonrosefulbright.com
Scott Drake
State Bar No. 24026812
scott.drake@nortonrosefulbright.com
Emma Persson
State Bar No. 24110219
emma.persson@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201-7932
Telephone:     (214) 855-8000
Facsimile:      (214) 855-8200

Counsel to Shell Offshore, Inc.

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on 28th of May, 2021, he conferred with Mr. Paul Genender, counsel to the Debtors, regarding the Motion. Mr. Genender indicated that the Debtors oppose the requested relief in the Motion.

*/s/ Ryan E. Manns*
Ryan E. Manns

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in these cases on May 28, 2021.

*/s/ Ryan E. Manns*
Ryan E. Manns