**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.[1]** | § | **(Jointly Administered)** |

**MOTION OF BP EXPLORATION & PRODUCTION INC. FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 362(d) AUTHORIZING RELIEF FROM THE AUTOMATIC STAY TO COMMENCE ARBITRATION AGAINST THE DEBTORS**

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST [SEVEN (7)] DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MATTER ON JULY 9, 2021 AT 10:00 A.M (PREVAILING CENTRAL TIME) BEFORE THE HONORABLE MARVIN ISGUR.**

**IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THE HEARING. AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY BY DIALING 832-917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER 954554.**

**YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE BANKRUPTCY COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fieldwood Energy LLC (6778), Fieldwood Energy Inc. (4991), Fieldwood Onshore LLC (3489), Fieldwood SD Offshore LLC (8786), Fieldwood Energy Offshore LLC (4494), Fieldwood Offshore LLC (2930), GOM Shelf LLC (8107), FW GOM Pipeline, Inc. (8440), Galveston Bay Procession LLC (5703), Galveston Bay Procession LLC (0422), Fieldwood Energy SP LLC (1971), Dynamic Offshore Resources NS, LLC (0158), Bandon Oil and Gas, LP (9266), and Bandon Oil and Gas GP, LLC (9172). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**MEETING CODE "JUDGEISGUR" OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE (https://www.gotomeet.me/JudgeIsgur) ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT HAND CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

BP Exploration & Production Inc. ("BP") submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit 1**, pursuant to sections 105(a) and 362 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 4001-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court the Southern District of Texas (the "BLR"), and Section 3 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3: (a) granting relief from the automatic stay to allow BP to commence and proceed with arbitration against Fieldwood Energy LLC ("Fieldwood") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"); and (b) compelling the parties to resolve their disputes in arbitration, as required by the parties' contract and the FAA. In support of this Motion, BP respectfully moves as follows:

**Preliminary Statement**[2]

1. On May 14, 2021, Fieldwood sent BP a notice, purporting to invoke Section 3.02 of the Galapagos Area Loop Subsea Production System Construction and Operating Agreement, dated December 1, 2011 (as amended from time to time, the "LSPS OA") to remove BP as operator of the entire Galapagos Loop Subsea Production System ("LSPS") in the Gulf of Mexico. *See Exhibit A1, true and correct copy of the LSPS OA.* Without alleging a continuing breach under the LSPS OA, and notwithstanding BP's full compliance with the Court's February 3, 2021 Order

[2] Capitalized terms used in this section but not otherwise defined herein shall have the same meanings as ascribed to them later in the Motion.

resulting in Fieldwood and BP successfully working together to bring the Genovesa well online by March 27, 2021, Fieldwood is now attempting to improperly remove BP as the operator of the entire LSPS. BP vehemently contests Fieldwood's attempt to remove BP as operator of the LSPS, and upon learning of Fieldwood's improper attempts, BP has repeatedly noticed Fieldwood of the existence of a "Dispute" under the LSPS OA Dispute Resolution Procedure. Because Fieldwood has refused to comply with the LSPS OA Dispute Resolution Procedure, BP now moves this Court to lift the stay for the limited purpose of allowing BP to commence and proceed with arbitration, and to compel arbitration of the Dispute.

2. Cause exists to lift the stay and compel arbitration. The parties have agreed to arbitrate "any claims(s), controversy(sies) or dispute(s) (the "Dispute") between the Parties arising out of, relating to or in connection with the [LSPS OA], including the interpretation, validity, termination or breach thereof." *See Exhibit A2, true and correct copy of the Dispute Resolution Procedure*. As discussed below, the current "Dispute" involves interpretation of the LSPS OA, including whether Fieldwood has the ability and authority to remove BP as Operator and whether its purported attempt to do so is effective, as well as Fieldwood's refusal to comply with the terms of the Dispute Resolution Procedure. By contract, the parties have agreed to resolve these Disputes through binding arbitration.

3. For months, Fieldwood has alluded to future/coming disputes with BP. A justiciable controversy (i.e., a Dispute) now exists between the parties that must be resolved through arbitration.

4. In support of this Motion, BP relies on the attached Declaration of Craig Duewall, together with the following documents, which demonstrate an enforceable agreement to arbitrate a Dispute within the broad scope of the arbitration agreement:

- *Exhibit A1, true and correct copy of the LSPS OA.*
- *Exhibit A2, true and correct copy of the Dispute Resolution Procedure.*
- *Exhibit A3, true and correct copy of Transcript from the Court's April 9, 2021 Hearing, Page 27, Lines 17-19.*
- *Exhibit A4, true and correct copy of Transcript from the Court's May 6, 2021 Hearing, Page 42, Lines 18-23.*
- *Exhibit A5, true and correct copy of Deposition Transcript of Mr. Dane, Page 273, Lines 2-7.*
- *Exhibit A6, true and correct copy of letter from Fieldwood to BP dated May 14, 2021.*
- *Exhibit A7, true and correct copy of letter from BP to Fieldwood, dated May 19, 2021.*
- *Exhibit A8, true and correct copy of letter from Paul Genender to Craig Duewall, dated May 21, 2021.*
- *Exhibit A9, true and correct copy of letter from Craig Duewall to Paul Genender, dated May 21, 2021.*
- *Exhibit A10, true and correct copy of letter from Paul Genender to Craig Duewall, date May 24, 2021.*

5. BP has attempted to resolve this Dispute with Fieldwood without resorting to Court intervention. Those attempts have not been successful. As defined in the Dispute Resolution Procedure of the LSPS OA, there is a "claim," "controversy," or "dispute," between BP and Fieldwood, and the parties are mandated to engage in arbitration.

6. This Court does not have discretion to forego compelling arbitration, and should lift the stay to allow the parties to proceed with arbitration. There is no contractual or Bankruptcy Code-based reason not to refer this matter to arbitration. Moreover, arbitration is particularly appropriate here, because the current Dispute between Fieldwood and BP is not a "core" proceeding and does not otherwise implicate any bankruptcy-related policy. Under these

circumstances, virtually every court to consider the issue has found that the parties' contractual agreement to arbitrate a dispute trumps a debtor's desire to litigate in bankruptcy court.

7. Accordingly, BP respectfully requests that this Court to lift the stay, so that it may commence and proceed with mandatory arbitration against Fieldwood to resolve the Dispute.

## Jurisdiction and Venue

8. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G). Venue for this Motion is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested in this Motion are sections 105(a) and 362 of the Bankruptcy Code, Bankruptcy Rule 4001, and BLR 4001-1.

## Background

### A. General Background

9. On August 3, 2020 (the "Petition Date"), the Debtors each filed with this Court petitions for relief under chapter 11 of the Bankruptcy Code.

10. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### B. The Genovesa Well and Subsequent Litigation.

11. In effect, the LSPS OA governs the relationship of the parties as owners of the LSPS, with BP owning a majority of the LSPS and Fieldwood owning about 21%. In general, the LSPS transports hydrocarbons from wells to the Na Kika platform, which is owned by BP and Shell.

12. Prior to the Petition Date, one of Fieldwood's wells (the "Genovesa Well") was in the process of going online to eventually flow production on the LSPS, but it was determined that

there was a leak in the LSPS flowline preventing the Genovesa Well from safely going online. To correct this anomaly, the parties agreed that they would implement a series of modifications to the field architecture to isolate the leak (the "SFLP"), enabling Genovesa to flow whilst repairs to the LSPS flowline progressed.

13. Production of the Genovesa Well operates in accordance with that certain Mississippi Canyon Block 519 OCS-G 27278 Lease (the "Lease"). Under the applicable regulations, the Lease would have expired in April 2021, unless: (a) production was restored, (b) other lease saving activities occurred, or (c) the Bureau of Safety and Environmental Enforcement authorized a suspension of production ("SOP"). On January 20, 2021, the U.S. Department of the Interior released Order 3395, which limited consideration of lease extensions, among other things, to political appointees.

14. On January 27, 2021, sixty-eight days prior to the Lease's anticipated expiration, Fieldwood filed the *Emergency Motion to Compel BP Exploration & Production Inc. to Perform Pre-Petition Contracts* [Docket No. 792] (the "SFLP Motion")—seeking only to have BP complete the SFLP by either (a) performing under the LSPS OA or (b) allowing Fieldwood to perform the actions required to bring the Genovesa Well online.

15. BP objected to the SFLP Motion. [Docket No. 833]. After conducting a contested hearing on February 2, 2021, the Court granted emergency relief with respect to the SFLP but allowed BP to elect to have Fieldwood do the work necessary to bring the Genovesa Well online in connection with the SFLP. On February 3, 2021, counsel for BP advised the Court that BP elected to have Fieldwood complete the work to bring the Genovesa Well online.

16. Shortly after, the Court entered the *Order Pursuant to Sections 105(a) and 365 of the Bankruptcy Code Compelling Performance of Pre-petition Contracts in Case No. 20-33948*

[Docket No. 845] (the "February 3rd Order"), which ordered BP to "perform all necessary steps to support and fully cooperate with Fieldwood's efforts to bring the Genovesa Well online prior to April 5, 2021 and to prevent the Lease from expiring." (February 3rd Order, ¶ 2). Importantly, the February 3rd Order further provided, in paragraph 6, that "nothing herein shall create, or is intended to create, any rights in favor or enhance the status of any claim held by any party."

**C. BP Makes Good Faith Efforts to Assist with Putting the Genovesa Well Online.**

17. Immediately following entry of the February 3rd Order, BP made significant and good faith efforts to ensure that the Genovesa Well went online by April 5, 2021. On February 4, 2021, BP and Fieldwood executed that certain Facility / Pipeline Projects Estimate of Costs and Authorization for Expenditure (the "AFE").

18. In addition, BP dedicated substantial time, resources, and personnel to make sure that Fieldwood was in the best position to complete the SFLP. During the seven-week-long process, BP had countless calls with Fieldwood, worked nights, worked weekends, and worked as best as it could during the Texas Winter Storm, which was all done to ensure that the SFLP would be completed to get the Genovesa Well online.

19. As Fieldwood acknowledged in its *Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1254] (the "Disclosure Statement"), "BP and FWE have worked cooperatively on the SFLP project," and the parties brought the Genovesa Well online on March 27, 2021. (Disclosure Statement, Art. V.Q). Fieldwood also acknowledged and expressed its gratitude for the hard work of BP numerous times directly to BP, even providing the BP team with commemorative polo shirts as tokens of appreciation at the successful conclusion of the coordinated effort.

**D. <u>Fieldwood Provides Notice of Future Disputes</u>.**

20. Despite Fieldwood's statements in its Disclosure Statement, for two months, Fieldwood has alluded to future/coming disputes with BP regarding and/or related to the Genovesa Well and the LSPS. That dispute has now matured.

21. On April 9, 2021, counsel for Fieldwood generally informed the Court on the record that "we're going to have a dispute on the basis of, you know, the reasons why they took the actions that they took, your Honor." *See Exhibit A3, true and correct copy of Transcript from the Court's April 9, 2021 Hearing, Page 27, Lines 17-19.*

22. On May 6, 2021, counsel for Fieldwood further stated on the record that "as the Court knows we've had disputes with [BP][,] [a]nd unfortunately, I think we're going to have disputes with them in the future regarding the operations of the – the Galapagos area, which is where the Genovesa well is." *See Exhibit A4, true and correct copy of Transcript from the Court's May 6, 2021 Hearing, Page 42, Lines 18-23*. Counsel for Fieldwood continued by stating, "[t]hat data room relates to the offshore assets, the deep water assets, which include all of the assets that are the subject of the disputes that we have with BP." *See id.* at Page 43, Lines 20-22.

23. On May 13, 2021, at the deposition of Fieldwood's corporate representative, counsel for Fieldwood objected to certain questions about operating costs by stating, "I'm a little concerned about, you know, continued questions about Genovesa, which, as you know, have been the subject of significant disputes between the parties, and I don't think this is intended to be a deposition relating to Genovesa…" *See Exhibit A5, true and correct copy of Deposition Transcript of Mr. Dane, Page 273, Lines 2-7.*

**E. <u>BP Receives the Removal Notice.</u>**

24. On May 14, 2021, Fieldwood sent to BP a Notice for Removal of Operator for Cause (the "<u>Removal Notice</u>"), allegedly under Article 3.02(a) of the LSPS OA.[3] *See Exhibit A6, true and correct copy of letter from Fieldwood to BP dated May 14, 2021*. In the Removal Notice, the Debtors did not (and cannot) identify a continuing breach of BP, but rather relied on the February 3rd Order and the Court's related findings to allege that cause now somehow exists to remove BP as operator of the entire Galapagos Loop System.

25. On May 19, 2021, BP responded to the Removal Notice and disputed, among other things, Fieldwood's exercise of Article 3.02(a). *See Exhibit A7, true and correct copy of letter from BP to Fieldwood, dated May 19, 2021*. BP also invoked the Dispute Resolution Procedures contained in the LSPS OA, and appointed a Management Representative, Richard Eaton, as required by the parties' agreed dispute resolution procedures.

**F. <u>Fieldwood refuses to comply with the contractual ADR procedures.</u>**

26. Counsel for Fieldwood responded to BP's letter on May 21, 2021 by refusing to comply with the Dispute Resolution Procedure, stating "To be clear, however, any such meeting would necessarily occur outside of the dispute resolution provisions of the LSPS OA." *See Exhibit A8, true and correct copy of letter from Paul Genender to Craig Duewall, dated May 21, 2021*. Counsel for BP responded by affirming that "BP has invoked the Dispute Resolution Procedures of the LSPS OA," that "it appears Fieldwood is refusing to comply with the dispute resolution procedures," and "BP renews its demand that Fieldwood designate a Management Representative

---

[3] Article 3.02(a) provides that the LSPS Operator may be removed by any Party upon written notice "during the continuation of one (1) of the following circumstances: (i) the LSPS Operator has been found liable by a final judgment of a court of competent jurisdiction . . . for an act of gross negligence or willful misconduct hereunder; (ii) the LSPS Operator is in Default hereunder or has been found to have committed a substantial breach of a material provision of this Agreement by a final judgment of a court of competent jurisdiction . . . ."

pursuant to Exhibit 'F' Dispute Resolution Procedures attached to the LSPS OA for purposes of seeking to resolve this Dispute." *See Exhibit A9, true and correct copy of letter from Craig Duewall to Paul Genender, dated May 21, 2021*. In response, counsel for Fieldwood unambiguously stated, "Fieldwood also reiterates that Mike Dane is available to speak with Richard Eaton, but not under the dispute resolution procedures that BP is trying to improperly invoke." *See Exhibit A10, true and correct copy of letter from Paul Genender to Craig Duewall, date May 24, 2021*. BP continues to maintain that it has not been removed as LSPS Operator and it continues to serve as the LSPS Operator

27. Fieldwood has refused, and continues to refuse, to participate in the contractual resolution process that is the first step under the Dispute Resolution Procedures. Instead, Fieldwood has abused the bankruptcy discovery process to try to obtain discovery related to the dispute that must be resolved through the Dispute Resolution Procedures. *See* Motion of BP Exploration & Production, Inc., to Quash Debtors' Bankruptcy Rule 2004 Discovery Requests.[4] The Disputes between the parties has now matured into a justiciable controversy. As a result, BP is now forced to file this Motion and seek to have the Court lift the automatic bankruptcy stay so that BP can initiate arbitration, as the parties must arbitrate this Dispute concerning Fieldwood's alleged unilateral removal of BP as LSPS Operator and Fieldwood's refusal to comply with the LSPS OA Dispute Resolution Procedures.

[4] The Motion to Quash is being filed contemporaneously with this Motion.

## Basis for Relief

### A. "Cause" Exists to Lift the Stay Because The Parties Have Triggered the Mandatory Arbitration Provision of the LSPS OA.

28. Section 362(d)(1) of the Bankruptcy Code provides, in pertinent part, that "the court shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause" as used within subsection (d)(1). *In re WGMJR, Inc.*, 435 B.R. 423, 432 (Bankr. S.D. Tex. 2010). "Whether cause exists must be determined on a case by case basis based on an examination of the totality of the circumstances." *Id.*; *see In re iHeartMedia, Inc.*, 2019 Bankr. LEXIS 1617, *13 (Bankr. S.D. Tex. May 28, 2019) ("Cause, for purposes of relief from the automatic stay, is not defined under the Bankruptcy Code, granting the Court discretion to determine whether cause exists.").

29. Bankruptcy courts will regularly modify the stay to permit creditors to commence arbitration against debtors. *See Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1068 (5th Cir. 1997) ("In those cases permitting arbitration, courts have typically found little difficulty with arbitration of disputes where resolution would not involve matters of federal bankruptcy law."); *see, e.g.*, *In re EXCO Servs.*, 2020 Bankr. LEXIS 1110, *8 (Bankr. S.D. Tex. Apr. 22, 2020).

30. Federal policy favors stay relief. Under the FAA, "there is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). Where there is a valid agreement to arbitrate, as here, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

31. The FAA requires enforcement of an arbitration clause in a maritime contract. *Iberia Credit Bureau v. Cingular Wireless*, 379 F.3d 159, 166 (5th Cir. 2004) (citing 9 U.S.C. § 2); *Triton Lines, Inc. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 707 F. Supp. 277, 278 (S.D. Tex. 1989).

32. Arbitration is mandatory when (1) there is a valid agreement to arbitrate between the parties, and (2) the dispute in question falls within the scope of that arbitration agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–28 (1985); *see also AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1986) ("Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, the [] claim . . . is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator."). The requirements are satisfied here.

**1. The LSPS OA Contains a Valid Agreement to Arbitrate.**

33. The LSPS OA is governed by maritime law, (LSPS OA, Art. 22.25). Under maritime law, a contract's clear and unambiguous terms are to be construed in accordance with their plain meaning. *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986); *see Channette v. Neches Gulf Marine, Inc.*, 440 F. App'x 258, 260 (5th Cir. 2011).

34. Pursuant to the Dispute Resolution Procedures of the LSPS OA (the "Dispute Resolution Procedures"), the arbitration process clearly binds all parties—including Fieldwood:

> (i) Binding: **The arbitration process is binding on the Parties and this arbitration is intended to be a final resolution of any Dispute between the Parties** as described above, to the same extent as a final judgment of a court of competent jurisdiction. Each Party hereby expressly covenants that it shall not resort to court remedies except as provided for herein, and for preliminary relief in aid of arbitration.

(Dispute Resolution Procedures, Art. I.A(i) (emphasis added)). As demonstrated in Article 22.28 of the LSPS OA, Fieldwood agreed to the above Dispute Resolution Procedures:

> Any claim, controversy or dispute arising out of, relating to or in connection with the interpretation of this [LSPS OA] or any activity or operation conducted or to be conducted hereunder **shall be** resolved in accordance with the mediation and binding arbitration provision set forth in Exhibit "F" (*Dispute Resolution Procedures*) to this [LSPS OA].

(LSPS OA, Art. 22.28) (emphasis added).

35. The above quoted language is clear and unambiguous. Its plain meaning demonstrates a valid agreement to arbitrate that binds both BP and Fieldwood. Accordingly, the first prong of the test is satisfied.

**2. The Dispute Falls Within the Scope of the Agreement to Arbitrate.**

36. There is a genuine "Dispute" between Fieldwood and BP relating to the LSPS OA that requires arbitration. Under that contract's Dispute Resolution Procedures:

> **A.** **Description and Goals**. Arbitration as used in this statement is a procedure whereby an Arbitrator resolves any claim(s), controversy(ies) or dispute(s) (the "Dispute") between the Parties arising out of, relating to or in connection with the Agreement, including the interpretation, validity, termination or breach thereof.

(Dispute Resolution Procedures, Art. I.A). The current Disputes arise out of, relate to, and are in connection with the LSPS OA.

37. Fieldwood has inappropriately invoked its "rights" under the LSPS OA by seeking to remove BP as operator of the entire Galapagos Loop System. BP disputes that any alleged breach of the LSPS OA by BP supports or allows BP's removal. Moreover, there is no continuing breach or default—meaning that Fieldwood's attempt to remove BP as operator under Article 3.02(a) of the LSPS OA is without merit. (LSPS, Art. 3.02(a)) (providing that a party can remove an operator "during the ***continuation*** of one (1) of the following circumstances . . . .") (emphasis added). BP is not aware of, and Fieldwood has not provided in the Removal Notice, any notice

of any alleged continuing breach or default under the LSPS OA. To the contrary, since entry of the February 3rd Order, BP took comprehensive and good faith measures to remain in compliance with this Court's order and act in accordance with the LSPS OA. As even recognized by Fieldwood, BP played a critical and instrumental role in assisting with the Genovesa Well going online prior to April 5, 2021.

38. Moreover, Fieldwood elected its remedy back in January 2021 by filing the SFLP Motion. Fieldwood did not seek, and cannot now belatedly seek, to remove BP as operator of the entire Galapagos Loop System, especially after BP fully complied with the terms of the February 3rd Order and the Genovesa Well was timely brought online due to BP's substantial assistance. The current dispute falls squarely within the Dispute Resolution Procedures of the LSPS OA, which binds both parties. This Court "must ordinarily respect" such an agreement. *EXCO Servs.*, 2020 Bankr. LEXIS 1110, *8.

39. Fieldwood is now refusing to work through the Dispute Resolution Procedure and the only available outlet to resolve this dispute is by arbitration. Accordingly, the requirements for compelling arbitration under the FAA have been satisfied and "cause" exists under section 362(d)(1) of the Bankruptcy Code to allow the Court to lift the stay and permit BP to commence and proceed with arbitration.

**B. <u>The Court Has No Discretion to Refuse Arbitration</u>.**

40. The Bankruptcy Code does not provide any reason to deviate from the parties' agreement to rely on arbitration. A party arguing that the Bankruptcy Code displaces the FAA bears a "heavy burden of showing a clear and manifest expression of congressional intent that the Bankruptcy Code displaces the FAA." *In re Trevino*, 599 B.R. 526, 546 (S.D. Tex. 2019).

41. The Fifth Circuit has adopted a two-prong test to determine whether an enforceable arbitration clause must be enforced in bankruptcy court: (1) whether the dispute is a core or non-core bankruptcy matter; and (2) whether the arbitration would conflict with the Bankruptcy Code. *Nat'l Gypsum Co.*, 118 F.3d at 1068; *see In re Henry*, 944 F.3d 587, 590–91 (5th Cir. 2019); *In re Trevino*, 599 B.R. at 541. Here, both prongs mandate enforcement of the arbitration agreement.

**1. The Proceeding does not arise exclusively from the Bankruptcy Code.**

42. Under *National Gypsum*, courts must first determine whether the proceeding to be arbitrated derives exclusively from the provisions of the Bankruptcy Code. 118 F.3d at 1068. Only proceedings that are premised on provisions of the Bankruptcy Code that inherently conflict with the FAA, and proceedings where arbitration would "necessarily jeopardize the objectives of the Bankruptcy Code," present the type of severe and inherent conflict necessary to demonstrate congressional intent to overrule the FAA. *Id.* If a dispute is "non-core," bankruptcy courts must enforce binding arbitration agreements. *In re Gandy*, 299 F.3d 489, 495 (5th Cir. 2002) ("[I]t is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings.").

43. Here, the dispute is not a "core" proceeding. It involves only the parties' contract, not any provision of the Bankruptcy Code. It arises from Fieldwood's decision to exercise Article 3.02(a) of the LSPS OA – a prepetition contract executed nearly a decade ago. Moreover, the Dispute centers on substantive issues derived from applicable maritime law, not the Bankruptcy Code, and could have arisen in the absence of a chapter 11 filing. *See Elite Precision Fabricators, Inc. v. General Dynamics Land Sys., Inc.*, 2015 WL 9302843, at *8 (S.D. Tex. 2015) ("Elite's claims fail the first prong of *National Gypsum* because they derive from Elite's pre-petition legal

rights rather than entirely from federal rights conferred by the Bankruptcy Code.") (citing *Gandy*, 299 F. 3d at 495).

44. This is a straightforward contract dispute that has no connection to the Bankruptcy Code. Accordingly, the first prong does not favor court discretion to deny arbitration.

**2. Arbitration will not Conflict with the Purposes of the Bankruptcy Code.**

45. Even if Fieldwood could satisfy the first prong (which it cannot), the Court cannot exercise discretion here because the dispute does not conflict with the purposes of the Bankruptcy Code. Only when the proceeding is derived entirely from the Bankruptcy Code, must the court then determine whether arbitration of the proceeding would conflict with the purposes of the Bankruptcy Code. *Nat'l Gypsum*, 118 F.3d at 1067. Courts generally consider the following factors when determining the second prong of the test: (1) the centralized resolution of bankruptcy issues; (2) the need to protect creditors and reorganizing debtors from piecemeal litigation; and (3) the undisputed power of a bankruptcy court to enforce its own orders. *Exco Servs.*, 2020 Bankr. LEXIS 1110, at *7-8 (citing *Trevino*, 599 B.R. at 546). None of these factors is present.

46. *First*, the current dispute is a straightforward contract issue, *i.e.* a non-bankruptcy issue, between Fieldwood and BP that will not have any impact of the main bankruptcy proceeding. Indeed, Fieldwood has never represented that becoming operator of the LSPS is necessary for Fieldwood to emerge from these chapter 11 cases.

47. *Second*, if this issue is arbitrated, it will not result in piecemeal litigation, but rather provide for timely and efficient resolution of the Dispute in the manner designated by the parties in the LSPS OA, as opposed to a separate adversary proceeding in the Bankruptcy Court. Arbitration in this instance will not conflict with the goal of centralized resolution of bankruptcy issues and does not promote piecemeal litigation.

48. *Third*, arbitration will not disrupt this Court's ability to enforce its orders. The current dispute is an entirely different issue from the dispute leading to the February 3rd Order. Fieldwood previously sought by emergency motion to compel BP to perform the work necessary to bring the Genovesa well online before the expiry date, not to remove BP as operator of the entire Galapagos Loop System. Accordingly, the February 3rd Order ordered BP to "perform all necessary steps to support and fully cooperate with Fieldwood's efforts to bring the Genovesa well online prior to April 5, 2021 and to prevent the Lease from expiring," and BP fully complied with the Court's February 3rd Order. Indeed, Fieldwood has not alleged otherwise, nor can it. Pursuant to the February 3rd Order, BP made significant efforts and assisted Fieldwood to bring the Genovesa Well online before the April 5, 2021 deadline. Fieldwood's attempt to remove BP as operator, nearly four months after entry of the February 3rd Order, and after successful resolution of the Genovesa well issue, is separate and distinct from the February 3rd Order and does not bear a substantive connection to the main bankruptcy proceeding. Moreover, the February 3rd Order expressly provided that "nothing herein shall create, nor is intended to create, any rights in favor or enhance the status of any claim held by any party." February 3rd Order, at para. 6. Yet Fieldwood is seeking to create new rights to try to now remove BP as operator of the entire Galapagos Loop System, relief that was not previously sought, and is certainly inappropriate now. This is a Dispute that must be resolved via the parties' agreement in arbitration.

49. The dispute does not conflict with the purposes underlying the Bankruptcy Code, even if the Court did consider this dispute a "core" proceeding. Accordingly, the Court does not have discretion to refuse to permit arbitration.

**C. Waiver of the Fourteen-Day Stay Under Bankruptcy Rule 4001(a)(3) Is Appropriate.**

50. Bankruptcy Rule 4001(a)(3) states that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*." FED. R. BANKR. P. 4001(a)(3) (emphasis added).

51. BP respectfully requests that the customary fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3) be waived so that, should the relief requested herein be granted, BP may immediately commence arbitration against Fieldwood. Accordingly, the Court should waive the stay in order to avoid BP suffering additional and irreparable harm.

**Notice**

52. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to BLR 9013-1(d), including Debtors' counsel.

**Conclusion**

BP requests that the Court grant its motion and enter an order, substantially in the form attached hereto as **Exhibit 1**, granting stay relief so that BP can commence arbitration against Fieldwood.

*[Signature Page Follows]*

Dated: May 28, 2021

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ *Shari L. Heyen*
Shari L. Heyen
Texas State Bar Number 09564750
HeyenS@gtlaw.com
Karl D. Burrer
Texas State Bar Number 24043584
BurrerK@gtlaw.com
Nicole S. Bakare
Texas State Bar Number 24056017
BakareN@gtlaw.com
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

– and –

Craig A. Duewall (admitted *pro hac vice*)
Texas State Bar Number 24025334
DuewallC@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

***Counsel for BP Exploration & Production Inc.***

**CERTIFICATE OF CONFERENCE**

In accordance with BLR 4001-1(a)(1), the undersigned certifies that the parties met and conferred to attempt to resolve this dispute. The parties were unable to resolve the matters herein.

*/s/ Craig A. Duewall*
Craig A. Duewall

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail and to those parties listed on the Debtors' Master Service List dated May 21, 2021 by First Class U.S. Mail on May 28, 2021.

*/s/ Craig A. Duewall*
Craig A. Duewall