# EXHIBIT A5

```
           IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION

                                      §
 In re:                               § Chapter 11
                                      §
 FIELDWOOD ENERGY LLC, et al.,        § Case No. 20-33948 (MI)
                                      §
      Debtors.                        § (Jointly Administered)
                                      §
```

30(b)(6) ORAL DEPOSITION OF

DEBTOR FIELDWOOD ENERGY, LLC

MR. MICHAEL T. DANE

May 13, 2021

30(b)(6) ORAL DEPOSITION OF DEBTOR FIELDWOOD ENERGY, LLC, MR. MICHAEL T. DANE, produced as a witness at the instance of the Sureties and Parties-in-interest, and duly sworn, was taken in the above-styled and numbered cause on the 13th day of May, 2021, from 9:37 a.m. to 6:43 p.m., before Michelle Hartman, Certified Shorthand Reporter in and for the State of Texas and Registered Professional Reporter, reported by computerized stenotype machine via Zoom videoconference, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.



Page 2

```
 1                  APPEARANCES
 2   FOR THE DEBTOR FIELDWOOD AND THE WITNESS MICHAEL DANE:
 3      Mr. Alfredo R. Pérez
        WEIL, GOTSHAL & MANGES LLP
 4      700 Louisiana
        Suite 1700
 5      Houston, Texas 77002
        Telephone: 713-546-5040
 6      E-mail: alfredo.perez@weil.com
     and
 7      Ms. Erin Choi
        Mr. Paul Genender
 8      Mr. Kevin Simmons
     and Ms. Jessica Liou (New York Office)
 9      WEIL, GOTSHAL & MANGES LLP
        200 Crescent Court, Suite 300
10      Dallas, TX 75201
        Telephone:  214 746 8184
11      E-mail:  erin.choi@weil.com
12   FOR THE SURITIES EVEREST, ASPEN, BERKLEY, AND SIRIUS:
13      Mr. Darren Grzyb
        CHIESA, SHAHINIAN & GIANTOMASI PC
14      One Boland Drive
        West Orange, New Jersey 07052
15      Telephone: 973-530-2077
        E-mail: dgrzyb@csglaw.com
16
     FOR THE INTERESTED PARTY HCCI:
17
        Mr. Brad C. Knapp
18   and  Mr. Philip Eisenberg
        LOCKE LORD
19      601 Poydras Street
        Suite 2660
20      New Orleans, Louisiana 70130
        Telephone: 504-558-5210
21      E-mail: bknapp@lockelord.com
22   FOR THE INTERESTED PARTY APACHE CORPORATION:
23      Ms. Robin Russell
        HUNTON ANDREWS KURTH
24      600 Travis Street
        Houston, Texas 77002
25      Telephone: 713-220-4086
        E-mail: rrussell@huntonak.com
        E-mail: rrussell@huntonak.com
```

Page 3

```
 1              APPEARANCES (Continued)
 2   FOR THE SURETY GROUPS:
 3      Ms. Lily W. Cheung
        NETHERLAND, SEWELL & ASSOCIATES, INC.
 4      Fulbright Tower, Suite 3200
        1301 McKinney Street
 5      Houston, Texas 77010
        Telephone: 713-654-4950
 6      E-mail: lcheung@nsai-petro.com
 7   FOR THE INSURERS LIBERTY MUTUAL INSURANCE COMPANY,
     TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, THE
 8   HANOVER INSURANCE COMPANY, AND XL SPECIALTY INSURANCE
     COMPANY:
 9
        Mr. Brandon Bains
10      LANGLEY ATTORNEYS & COUNSELORS
        PO Box 94075
11      Southlake, Texas 76092
        Telephone: 214-722-7171
12      E-mail: bbains@l-llp.com
13   FOR THE INSURER PHILADELPHIA INDEMNITY INSURANCE
     COMPANY:
14
        Mr. Robert W. Miller
15      MANIER & HEROD
        1201 Demonbreun Street,
16      Suite 900
        Nashville, Tennessee 37203
17      Telephone: 615-742-9320
        E-mail: rmiller@manierherod.com
18
     FOR THE INTERESTED PARTY CHEVRON USA, INC. & NOBLE
19   ENERGY, INC.:
20      Ms. Lisa M. Norman
        ANDREWS MYERS
21      1885 Saint James Palace
        Suite 1500
22      Houston, Texas 77056
        Telephone: 713-850-4245
23      E-mail: lnorman@andrewsmyers.com
24
25
```

Page 4

```
 1              APPEARANCES (Continued)
 2   FOR THE INTERESTED PARTY BP PLC:
 3      Mr. Craig Duewall
     and  Ms. Shari Heyen
 4      Ms. Nicole Bakare
        Mr. Jared Weir
 5      GREENBERG TRAURIG
        1000 Louisiana Street
 6      Suite 1700
        Houston, Texas 77002
 7      Telephone:  713.374.3608
        E-mail: duewall@gt.com
 8
     FOR THE INTERESTED PARTY GOLDMAN SACHS AS FIRST LIEN
 9   OUT AGENT:
10      Mr. Bradley Foxman
        VINSON & ELKINS
11      Trammell Crow Center
        2001 Ross Avenue
12      Suite 3900
        Dallas, Texas 75201
13      Telephone: 214-220-7784
        E-mail: bfoxman@velaw.com
14
     FOR THE INSURER ZURICH AMERICAN:
15
        Mr. Stephen A. Roberts
16      CLARK HILL
        720 Brazos Street
17      Suite 700
        Austin, Texas
18      Telephone: 512-499-3624
        E-mail: sroberts@ClarkHill.com
19
     FOR THE US DEPARTMENT OF JUSTICE:
20
        Mr. Serajul Ali
21      U.S. DEPARTMENT OF JUSTICE
        P.O. Box 875 - Ben Franklin Station
22      Washington, D.C. 20044
        Telephone: 202-307-0488
23      E-mail: serajul.ali@usdoj.gov
24
25
```

Page 5

```
 1              APPEARANCES (Continued)
 2   FOR THE INSURED LEXON INSURANCE COMPANY:
 3      Mr. Lee E. Woodard
        HARRIS BEACH PLLC
 4      333 West Washington Street
        Syracuse, New York 13202
 5      Telephone: 315-423-7100
        E-mail: lwoodard@harrisbeach.com
 6
     FOR THE OFFICIAL CREDITORS:
 7
        Mr. Kenneth Pasquale
 8      STROOCK & STROOCK & LAVAN LLP
        180 Maiden Lane
 9      New York, New York 10038
        Telephone: 212-806-5562
10      E-mail: kpasquale@stroock.com
11   FOR THE INTERESTED PARTY ATLANTIC MARITIME SERVICES,
     LLC:
12
        Mr. Benjamin W. Kadden
13      LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
        601 Poydras Street
14      Suite 2775
        New Orleans, Louisiana 70130
15      Telephone: 504-568-1990
        E-mail: bkadden@lawla.com
16
     CO-COUNSEL TO THE COMMITTEE:
17
        Mr. Michael D. Warner
18      PACHULSKI, STANG, ZIEHL & JONES
        440 Louisiana
19      Suite 900
        Houston, Texas 77002
20      Telephone: 817-832-5566
        E-mail: mwarner@pszjlaw.com
21
     FOR THE AD HOC GROUP OF FIELDWOOD FIRST LIEN LENDERS:
22
        Mr. Andy T. Parrott
23      DAVIS POLK & WARDWELL LLP
        901 15th Street, N.W.
24      Washington DC, District of Columbia  20005
        Telephone: 202-962-9147
25      E-mail: andy.parrot@davispollk.com
```



Page 6

```
 1              APPEARANCES (Continued)
 2   FOR THE INSURER RLI INSURANCE COMPANY:
 3       Mr. Elliot Scharfenberg
         KREBS FARLEY & DRY
 4       909 18th Street
         Plano, Texas 75074
 5       Telephone: 972-737-2517
         E-mail: escharfenberg@krebsfarley.com
 6
     FOR LEXON INSURANCE COMPANY:
 7
         Mr. Lee E. Woodard
 8       HARRIS BEACH PLLC
         333 West Washington Street
 9       Syracuse, New York 13202
         Telephone: 315-423-7100
10       E-mail: lwoodard@harrisbeach.com
11   FOR THE INSURER NORTH AMERICAN SPECIALTY INSURANCE COMPANY:
12       Mr. T. Scott Leo
         THE LAW OFFICES OF T. SCOTT LEO, P.C.
13       100 N. LaSalle Street, Suite 514
         Chicago, Illinois 60602
14       Telephone: 312-857-0910
         E-mail: sleo@leolawpc.com
15
16   ALSO PRESENT:
17       Mr. Anthony L. Green, corporate counsel
18
19
20
21
22
23
24
25
```

Page 7

```
 1                        EXHIBITS
 2   EXHIBIT        DESCRIPTION                   PAGE
 3   Exhibit 1    Notice of Rule 30(b)(6)          24
                  Deposition of Debtor Fieldwood
 4                Energy LLC
 5   Exhibit 2    Dear John e-mail re: Swordfish   69
                  catch up FWE-0047937
 6
     Exhibit 3    9/17/20 letter to Dane from      77
 7                (blacked out), FWE-0047938 to
                  47948
 8
     Exhibit 4    7/17/20 letter to Fieldwood      78
 9                Energy, Dear John, re:  Offer
                  to Purchase Co-Owned
10                Properties, FWE-0047949 to
                  47954
11
     Exhibit 5    Decommissioning Agreement        54
12                between Apache Corporation, et
                  al and Fieldwood Energy, et al
13                in 2013, no Bates
14   Exhibit 6    Exhibit 14, 2021 Farmout         90
                  Agreement, pages 131 to 158 of
15                469
16   Exhibit 7    Exhibit 8 to the Plan of         95
                  Reorganization and Disclosure
17                Statement, titled Standby Loan
                  Agreement, pages 978 to 1024 of
18                1032
19   Exhibit 8    Transmission Services           101
                  Agreement, Exhibit 15 to the
20                Disclosure Statement and Plan
                  of Reorganization, Document
21                Number 1285-2, pages 289 to 310
                  of 469
22
     Exhibit 9    Exhibit 6, Fieldwood Energy I   116
23                LLC Agreement, Document Number
                  1285-1, pages 910 to 964 of
24                1032
25
```

Page 8

```
 1                     EXHIBITS (cont.)
 2   EXHIBIT        DESCRIPTION                   PAGE
 3
     Exhibit 10   Excel spreadsheet, FWE-0000002  176
 4
     Exhibit 11   *Attached but not mentioned,     10
 5                Fieldwood Energy, Inc.
                  Estimated Future Reserves and
 6                Income Attributable to Certain
                  Leasehold and Royalty Interests
 7                SEC Parameters as of December
                  31, 2020
 8
     Exhibit 12   *Attached but not mentioned -    10
 9                SpinCo Preliminary G & A Detail
                  FWE-0000019
10
     Exhibit 13   *Attached but not mentioned,     10
11                Category/NewCo/Comments table,
                  FWE-0000018
12
     Exhibit 14   *Attached but not mentioned,     10
13                Excel spreadsheet, FWE-0037606
14   Exhibit 15   *Attached but not mentioned,     10
                  Document beginning "West
15                Areas", FWE-0045265 to 266
16   Exhibit 16   *Attached but not mentioned,     10
                  Excel spreadsheet FWE-0038676
17                Fields not returning to
                  production
18
     Exhibit 17   *Attached but not mentioned,     10
19                e-mail from Lamme to Lamb
                  4/29/21 re:  BOEM Questions,
20                FWE-0045280
21   Exhibit 18   *Attached but not mentioned,     10
                  Excel spreadsheet, FWE-0045403
22
     Exhibit 19   *Attached but not mentioned,     10
23                Houlihan Lokey expert report of
                  John-Paul Hanson, 80 pages
24
25
```

Page 9

```
 1                     EXHIBITS (cont.)
 2   EXHIBIT        DESCRIPTION                   PAGE
 3
     Exhibit 20   Exhibit O Financial             120
 4                Projections, page 439 to 448
 5   Exhibit 21   Excel Spreadsheet FWE-0000016   134
 6   Exhibit 22   *Attached but not mentioned,     10
                  FWE Amended responses and
 7                objections to sureties
                  discovery request
 8
     Exhibit 23   *Attached but not mentioned,     10
 9                Exhibit B, page one of three
10   Exhibit 24   Excel Spreadsheet FWE-000008     10
11   Exhibit 25   Disclosure statement, page 1 of  10
12                99
     Exhibit 26   Alix Partners Liquidation        10
13                Expert Report of Marc J. Brown,
                  April 21st, 2021
14
     Exhibit 27   Everest Indemnity Agreement     245
15
16
17
18
19
20
21
22
23
24
25
```



```
                                        Page 10
 1              INDEX
 2                          PAGE
 3   MR. MICHAEL T. DANE
 4   Examination by Mr. Grzyb ..........11
     Examination by Mr. Bains ..........183
 5   Examination by Mr. Scharfenberg ...220
     Examination by Mr. Knapp ..........235
 6   Examination by Mr. Miller .........244
     Examination by Mr. Duewall ........252
 7   Signature Page ....................289
     Signature Page ....................290
 8   Court Reporter's Certificate ......291
 9
10
11
...
25
```

Page 11

1   THE COURT REPORTER: Okay. Can I get an
2   agreement between Counsel, please, the court reporter
3   can swear in the witness remotely.
4       MR. GRZYB: Okay with me.
5       MR. PÉREZ: Yes, ma'am.
6       MR. MICHAEL T. DANE,
7   having been first duly sworn, testified as follows:
8           EXAMINATION
9       Q. (BY MR. GRZYB) Good morning, Mr. Dane,
10  and thank you for your time today. My name is Darren
11  Grzyb. I'm a lawyer with the firm of Chiesa,
12  Shahinian & Giantomasi. I have four surety clients
13  that are involved in this case: Everest, Aspen,
14  Berkeley, and Sirius.
15      It was our notice of deposition that was
16  issued from my office signed by me that today's
17  proceeding relates to. As I said, today is a
18  deposition. Have you been deposed before, Mr. Dane?
19      A. No, I have not.
20      Q. Then I think it is important to start
21  with some ground rules. The format of today's
22  proceeding is a question-and-answer session. I will
23  be asking you questions, and it is important that I
24  issue verbal questions and you are to give me verbal
25  responses. You can't shake your head, particularly

Page 12

1   now that we're doing this by Zoom, but you shouldn't
2   do that in the first place in a deposition. So it is
3   important that you give me verbal responses.
4       It is also important that you understand
5   the question. If I ask a question, and you don't
6   understand it, but you give an answer, I will assume
7   that you've understood the question. It is also
8   important that you and I and Mr. Perez, to the extent
9   he interposes an objection, don't talk over each
10  other because our friend, Michelle, is transcribing
11  everything that we say and, therefore, it will be
12  hard for her if we talk over each other for her to
13  transcribe what we say.
14      That's another point, the description of
15  this. Michelle, Madam Court Reporter, is typing out
16  all the words that we say. So at the end of this,
17  what we will have is a transcript of everything we
18  say: My questions, Mr. Perez's objections, and your
19  responses.
20      It's also important that if you would
21  like to take a break -- it could be a long day, I
22  have no problem with us taking breaks, so if the
23  challenge might be that you're not in the same room
24  with Mr. Perez, I will be very understanding if you
25  want to take a break; and frankly, I will likely need

Page 13

1   to take breaks during this process as well.
2       That's all I have for now in terms of
3   ground rules. If you have any questions as to the
4   ground rules, let me know.
5       Do you have any questions?
6       A. No, thank you very much.
7       MR. PÉREZ: So, Darren, this is Alfredo
8   Perez, before we get started, the -- you've provided
9   us -- we have had the courtesy of you providing us
10  several depositions with the exhibits that we have
11  reviewed. Several of the exhibits have been marked
12  "Confidential" and several of them have been marked
13  "Highly Confidential," pursuant to the Protective
14  Order that was ordered by the Court.
15      So I just want to make sure that everyone
16  on the -- that is in the Zoom deposition -- and there
17  are approximately 40 participants -- has either
18  agreed to be bound by the terms of that and that
19  there aren't -- there isn't anyone here who's
20  otherwise not -- you know, that -- that the debtor is
21  protected as a result of that deposition.
22      So I suspect that when you're going in --
23  when you're going into documents that were marked
24  "Highly Confidential," you'll alert us so that we can
25  check that again, but that is my only comment at this

4 (Pages 10 to 13)



Page 270

1  cash flow to be able to represent an attractive
2  business proposition to stakeholders that are
3  investing hundreds of millions of dollars of new
4  capital as a part of that restructuring.
5      Q.  So, just to paraphrase what you have
6  said, 80 percent deepwater, 20 percent shelf, and of
7  that 80 percent that's in deepwater, how many are
8  those, again, are wells that Fieldwood has drilled
9  and that you're the first entity in the chain of
10 title?
11     A.  Fieldwood drilled five wells in deepwater
12 on leases that generally have extensive chain of
13 title ownership or very significant predecessor, and
14 more of those wells were drilled with co-working
15 interest owners.
16     Q.  And then now coming out of bankruptcy,
17 it's my understanding that you have -- and was the
18 Genovesa well one of those five or was that
19 considered a different well?
20     A.  No, that was -- that was one of the five.
21     Q.  And now coming out of bankruptcy, it is
22 my understanding that Fieldwood would like to drill
23 six more wells.  Is that your drilling plan?
24     A.  The plans generally contemplate one to
25 two three wells per year, but again, the strategy is

Page 271

1  focused on a business plan that has a disciplined
2  capital investment program and the ability to
3  generate cash flow.
4      Q.  And those wells are the Katmai 2, 3, and
5  4, the Gunflint, the CPN, and the Big Bend Number 2;
6  is that correct?
7      A.  Those are wells that are in our inventory
8  and incorporated in our projections.  We have a
9  significant inventory that's under a continuous
10 evaluation, and like any company, we're always
11 looking for the best opportunities to pursue at any
12 given time.
13     Q.  Have all of those wells been permitted?
14     A.  No.
15     Q.  Have you any of them been permitted?
16     A.  Can you recite for me which wells again
17 you're -- you're asking about?
18     Q.  Certainly.  And I'm not intending to
19 trick you, so if -- if you have a question or if I'm
20 ever inarticulate, and I have been -- I have been
21 that before, just let me know.  I want to make sure
22 you understand my questions.
23         Has the Katmai Number 2 been permitted?
24     A.  It has not.
25     Q.  Has the Katmai Number 3 been permitted?

Page 272

1      A.  No.
2      Q.  Has the Katmai Number 4 been permitted?
3      A.  No.
4      Q.  Has the Gunflint been permitted?
5      A.  There is multiple wells in the Gunflint
6  and the Gunflint's yield.  I'm not aware that those
7  wells have been permitted.
8      Q.  Has the CPN been permitted?
9      A.  No.
10     Q.  Has the Big Bend Number 2 been permitted?
11     A.  No.
12     Q.  Will each of those wells be a similar
13 deepwater well to the Genovesa well or are some of
14 those also shelf wells?
15     A.  The wells that you specified are
16 deepwater wells.
17     Q.  What does it cost typically to drill a
18 well like that?
19     A.  There is a wide range of costs for
20 drilling deepwater wells.  A dry hole cost of a
21 sidetrack may be as low as 20 or $30 million.  A
22 deep, new well may cost, for the dry hole cost, in
23 excess of $60 million.
24     Q.  What did it cost when you drilled the
25 Genovesa well, just by reference?

Page 273

1      A.  I believed the dry -- I don't --
2          MR. PÉREZ:  Yeah, if you don't know --
3  but I'm a little concerned about, you know, continued
4  questions about Genovesa, which, as you know, have
5  been the subject of significant disputes between the
6  parties, and I don't think this is intended to be a
7  deposition relating to Genovesa, but I mean, if you
8  know, the answer, if you have the number, if you know
9  the number.
10         MR. DUEWALL:  If he has a number?  He is
11 the CFO.  I'm asking him what the budget was when it
12 got drilled.  I think he should know that.  And I'm
13 not asking anything else right now, so let's not
14 jump -- let's not get too far ahead of ourselves with
15 our objections.
16         THE WITNESS:  Yes, I would have to
17 consult our records.  I don't have the number at my
18 fingertips.
19     Q.  (BY MR. DUEWALL) And do you know what the
20 de-com cost would be for a well like the Genovesa
21 well?
22     A.  A deepwater well can cost anywhere from
23 eight to $20 million to be decommissioned is probably
24 a general range.
25     Q.  You cut out when you were talking, and I

