**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

**MOTION OF BP EXPLORATION & PRODUCTION, INC.**
**TO QUASH DEBTORS' BANKRUPTCY RULE 2004 DISCOVERY REQUESTS**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

BP Exploration & Production, Inc. ("BP") files this *Motion of BP Exploration & Production, Inc. to Quash Debtors' Bankruptcy Rule 2004 Discovery Requests* (the "Motion"), and respectfully moves as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fieldwood Energy LLC (6778), Fieldwood Energy Inc. (4991), Fieldwood Onshore LLC (3489), Fieldwood SD Offshore LLC (8786), Fieldwood Energy Offshore LLC (4494), Fieldwood Offshore LLC (2930), GOM Shelf LLC (8107), FW GOM Pipeline, Inc. (8440), Galveston Bay Procession LLC (5703), Galveston Bay Procession LLC (0422), Fieldwood Energy SP LLC (1971), Dynamic Offshore Resources NS, LLC (0158), Bandon Oil and Gas, LP (9266), and Bandon Oil and Gas GP, LLC (9172). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

## I.
### RELIEF REQUESTED

1. By this Motion, BP seeks entry of an order, substantially in the form attached hereto as Exhibit A, quashing Debtors' Rule 2004 requests for the production of documents to BP (the "<u>Rule 2004 Requests</u>"). By seeking to unilaterally remove BP as operator of the Galapagos Area Loop Subsea Production System, Fieldwood has initiated a dispute under the parties' agreement, which is subject to a mandatory and binding arbitration. In response, BP has filed a motion to lift stay and compel arbitration of this underlying dispute(s), and as such, the discovery at issue must be conducted within said arbitration. In particular, BP has asked the Court to compel Fieldwood to arbitrate the underlying dispute(s) under the Commercial Arbitration Rules of the American Arbitration Association. Granting this Motion will aid in the resolution of the discovery dispute between the Parties, and will not prejudice Debtors' or any creditor's otherwise applicable rights and claims, as Fieldwood will still be able to seek discovery pursuant to the parties' agreement. Fieldwood, as the party opposing arbitration, assumes the burden to demonstrate that the enforcement of the arbitration provisions would conflict with the actual text or the underlying purposes of the Bankruptcy Code. BP represents that Fieldwood clearly cannot, and has not, met that burden. Even assuming, *arguendo* that the Court does not compel the parties to arbitration, the discovery requests at issue must still be quashed because they are unduly burdensome, harassing, irrelevant, and untimely, and seek documents that are commercially sensitive and that BP has a limited obligation to produce and/or make available to Fieldwood under the parties' commercial agreements.

## II.
### BACKGROUND

### A.   General Background

2.   On August 3, 2020 (the "Petition Date"), the Debtors each filed with this Court petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code.

3.   Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

### B.   The Genovesa Well and Subsequent Litigation

4.   Fieldwood and BP, among others, entered into that certain Galapagos Area Loop Subsea Production System Construction and Operating Agreement, dated December 1, 2011 (as amended from time to time, the "LSPS OA"), a true and correct copy of which is attached hereto as Exhibit B-1.  In effect, the LSPS OA governs the relationship of the parties as owners of the Galapagos Area Loop Subsea Production System ("LSPS") with BP owning a majority of the LSPS and Fieldwood owning about 21%.  In general, the LSPS transports hydrocarbons from wells to the Na Kika platform, which is owned by BP and Shell, for production.

5.   Prior to the Petition Date, one of Fieldwood's wells (the "Genovesa Well") was in the process of going online to eventually flow production on the LSPS, but it was determined that there was a leak in the LSPS flowline preventing the Genovesa Well from safely going online.  To correct this anomaly, the parties agreed that they would implement a series of modifications to the field architecture to isolate the leak (the "SFLP"), enabling Genovesa to flow whilst repairs to the LSPS flowline progressed .

6.   Production of the Genovesa Well operates in accordance with that certain Mississippi Canyon Block 519 OCS-G 27278 Lease (the "Lease").  Under the applicable regulations, the Lease would have expired in April 2021, unless: (a) production was restored,

3

(b) other lease saving activities occurred, or (c) the Bureau of Safety and Environmental Enforcement authorized a suspension of production ("SOP"). On January 20, 2021, the U.S. Department of the Interior released Order 3395, which limited consideration of lease extensions, among other things, to political appointees.

7. On January 27, 2021, sixty-eight days prior to the Lease's anticipated expiration, Fieldwood filed the *Emergency Motion to Compel BP Exploration & Production Inc. to Perform Pre-Petition Contracts* [Docket No. 792] (the "SFLP Motion")—seeking only to have BP complete the SFLP by either (a) performing under the LSPS OA or (b) allowing Fieldwood to perform the actions required to bring the Genovesa Well online.

8. BP objected to the SFLP Motion. [Docket No. 833]. After conducting a contested hearing on February 2, 2021, the Court granted emergency relief with respect to the SFLP but allowed BP to elect to have Fieldwood do the work necessary to bring the Genevosa well online in connection with the SFLP. On February 3, 2021, counsel for BP advised the Court that BP elected to have Fieldwood complete the work to bring the Genovesa Well online.

9. Shortly after, the Court entered the *Order Pursuant to Sections 105(a) and 365 of the Bankruptcy Code Compelling Performance of Pre-petition Contracts in Case No. 20-33948* [Docket No. 845] (the "February 3rd Order"), which ordered BP to "perform all necessary steps to support and fully cooperate with Fieldwood's efforts to bring the Genovesa Well online prior to April 5, 2021 and to prevent the Lease from expiring." (February 3rd Order, ¶ 2). Importantly, the February 3rd Order further provided, in paragraph 6, that "nothing herein shall create, or is intended to create, any rights in favor or enhance the status of any claim held by any party."

C.  **BP Makes Good Faith Efforts to Assist with Putting the Genovesa Wells Online.**

10. Immediately following entry of the February 3rd Order, BP made significant and good faith efforts to ensure that the Genovesa Well went online by April 5, 2021. On February 4, 2021, BP and Fieldwood executed that certain Facility / Pipeline Projects Estimate of Costs and Authorization for Expenditure (the "AFE").

11. In addition, BP dedicated substantial time, resources, and personnel to make sure that Fieldwood was in the best position to complete the SFLP. During the seven-week-long process, BP had countless calls with Fieldwood, worked nights, worked weekends, and worked as best as it could during the Texas Winter Storm, which was all done to ensure that the SFLP would be completed to get the Genovesa Well online.

12. As Fieldwood acknowledged in its *Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1254] (the "Disclosure Statement"), "BP and FWE have worked cooperatively on the SFLP project," and the parties brought the Genovesa Well online on March 27, 2021. (Disclosure Statement, Art. V.Q). Fieldwood also acknowledged and expressed its gratitude for the hard work of BP numerous times directly to BP, even providing the BP team with commemorative polo shirts as tokens of appreciation at the successful conclusion of the coordinated effort.

D.  **Fieldwood Provides Notice of Future Disputes.**

13. Despite Fieldwood's statements in its Disclosure Statement, for two months, Fieldwood has alluded to future/coming disputes with BP regarding and/or related to the Genovesa Well and the LSPS. That dispute has now matured.

14. On April 9, 2021, counsel for Fieldwood generally informed the Court on the record that "we're going to have a dispute on the basis of, you know, the reasons why they took the actions

5

that they took, your Honor." *See* Exhibit B-2, a true and correct copy of Transcript from the Court's April 9, 2021 Hearing, Page 27, Lines 17-19.

15. On May 6, 2021, counsel for Fieldwood further stated on the record that "as the Court knows we've had disputes with [BP][,] [a]nd unfortunately, I think we're going to have disputes with them in the future regarding the operations of the – the Galapagos area, which is where the Genovesa well is." *See* Exhibit B-3, a true and correct copy of Transcript from the Court's May 6, 2021 Hearing, Page 42, Lines 18-23. Counsel for Fieldwood continued by stating, "[t]hat data room relates to the offshore assets, the deep water assets, which include all of the assets that are the subject of the disputes that we have with BP." *See id.* at Page 43, Lines 20-22.

16. On May 13, 2021, at the deposition of Fieldwood's corporate representative, counsel for Fieldwood objected to certain questions about operating costs by stating, "I'm a little concerned about, you know, continued questions about Genovesa, which, as you know, have been the subject of significant disputes between the parties, and I don't think this is intended to be a deposition relating to Genovesa…" *See* Exhibit B-4, a true and correct copy of Deposition Transcript of Mr. Dane, Page 273, Lines 2-7.

**E.   BP Receives Rule 2004 Requests for Documents and the Removal Notice.**

17. On May 14, 2021, Debtors served BP's counsel with a draft copy of the Rule 2004 Requests seeking the production of 17 far-reaching categories of documents, which Debtors filed with the Court close to midnight at approximately at 11:58 p.m. on Friday, May 21, 2021 and served on BP at 12:12 a.m, Saturday morning, May 22, 2021. By way of example, these requests seek:

- All documents and communications concerning the Genovesa Well (No. 1);
- All documents for or from meetings between BP and Shell concerning the Na Kika offshore semi-submersible floating platform (No. 3); and

- All documents and communications concerning efforts to bring the Manuel, Isabela, and Calliope wells online at Na Kika as well as BP's ownership interest in those wells (Nos. 6–11);

as well as several other requests related to the Na Kika platform, which is owned by BP and Shell. (Docket No. 1387).

18. Also on May 14, 2021, about 90 minutes after sending the draft Rule 2004 Requests, Fieldwood sent to BP a Notice for Removal of Operator for Cause (the "Removal Notice"), allegedly under Article 3.02(a) of the LSPS OA.[2] *See* Exhibit B-5, a true and correct copy of letter from Fieldwood to BP, dated May 14, 2021. In the Removal Notice, Debtors did not (and cannot) identify a continuing breach of BP, but rather relied on the February 3rd Order and the Court's related findings to allege that cause now somehow exists to remove BP as operator of the entire Galapagos Loop System.

19. On May 19, 2021, BP responded to the Removal Notice and disputed, among other things, Fieldwood's exercise of Article 3.02(a). *See* Exhibit B-6, a true and correct copy of letter from BP to Fieldwood, dated May 19, 2021. BP also invoked the Dispute Resolution Procedures contained in the LSPS OA, and appointed a Management Representative, Richard Eaton, as required by the parties' agreed dispute resolution procedures.

**F.    Fieldwood refuses to comply with the contractual ADR procedures.**

20. Counsel for Fieldwood responded to BP's letter on May 21, 2021 by refusing to comply with the Dispute Resolution Procedure, stating "To be clear, however, any such meeting would necessarily occur outside of the dispute resolution provisions of the LSPS OA." *See* Exhibit

---

[2]    Article 3.02(a) provides that the LSPS Operator may be removed by any Party upon written notice "during the continuation of one (1) of the following circumstances: (i) the LSPS Operator has been found liable by a final judgment of a court of competent jurisdiction . . . for an act of gross negligence or willful misconduct hereunder; (ii) the LSPS Operator is in Default hereunder or has been found to have committed a substantial breach of a material provision of this Agreement by a final judgment of a court of competent jurisdiction . . . ."

7

B-7, a true and correct copy of letter from Paul Genender to Craig Duewall, dated May 21, 2021. Counsel for BP responded by affirming that "BP has invoked the Dispute Resolution Procedures of the LSPS OA," that "it appears Fieldwood is refusing to comply with the dispute resolution procedures," and "BP renews its demand that Fieldwood designate a Management Representative pursuant to Exhibit 'F' Dispute Resolution Procedures attached to the LSPS OA for purposes of seeking to resolve this Dispute." *See* Exhibit B-8, true and correct copy of letter from Craig Duewall to Paul Genender, dated May 21, 2021. In response, counsel for Fieldwood unambiguously stated, "Fieldwood also reiterates that Mike Dane is available to speak with Richard Eaton, but not under the dispute resolution procedures that BP is trying to improperly invoke." *See* Exhibit B-9, a true and correct copy of letter from Paul Genender to Craig Duewall, dated May 24, 2021. BP continues to maintain that it has not been removed as LSPS Operator and it continues to serve as the LSPS Operator.

21. Fieldwood has refused, and continues to refuse, to participate in the contractual resolution process that is the first step under the Dispute Resolution Procedures and therefore abide by the agreed discovery provisions set forth therein. Instead, Fieldwood has abused the bankruptcy discovery process to try to obtain discovery related to the dispute that must be resolved through the Dispute Resolution Procedures. As a result, BP is now forced to file this Motion and seek to have the Court quash Debtors' Rule 2004 Requests.

### III.
### MOTION TO QUASH

**A.   Fieldwood cannot show good cause for the Rule 2004 Requests because the parties' dispute is subject to mandatory and binding arbitration.**

22. Bankruptcy Rule 2004 states: "On motion of any party in interest, the court may order the examination of any entity." FED. R. BANK. P. 2004(b). Here, under Local Rule 2004-1,

parties must give at least 14 days' written notice of such an examination and if the party to be examined has objections, "that party has the burden to seek relief from the court by filing a motion to quash or for a protective order." LOCAL BANK. R. 2004-1. By this motion, BP objects to the Rule 2004 Requests, thereby shifting the burden to Fieldwood to show "good cause" for the requests.

23. Rule 2004 uses the word "may" and "thereby affords courts discretion to limit (or preclude) examinations as justice requires." *In re Kleynerman*, 617 B.R. 122, 128 (Bankr. E.D. Wis. 2020); *accord Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197 (Bankr. S.D. Ohio 1992) (for purposes of Rule 2004, "[m]ay connotes discretion."). Accordingly, courts consider such requests on a case-by-case basis, balancing the examiner's interests against the respondent's interests. *Id.* Inquiries, like the discovery requests at issue here, that seek "far-reaching information will require a higher showing of good cause because they are inherently more intrusive and present a greater potential for abuse." *Id.*; *see also In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (Bankr. E.D.N.Y. 1999) (denying application for order under Rule 2004 because it "did not pass the 'smell test'" and was it was an attempt to "harass and abuse").

24. "Examinations under Rule 2004 are allowed for the 'purpose of discovering assets and unearthing frauds' and have been compared to a 'fishing expedition.'" *In re Duratech*, 241 B.R. at 189; *accord In re Kleynerman*, 617 B.R. at 128 ("The main function of a Rule 2004 examination is to uncover defalcations of the debtor and management of the estate."). There are limits, however, and a party seeking a Rule 2004 examination has the burden of showing "good cause" for the request to be granted. *See, e.g.*, *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008) (concluding that when a creditor objects to a 2004 examination, the moving party must meet a threshold standard of "good cause" before it will be permitted to conduct

examinations and require the production of documents); *In re Grabill Corp.*, 109 B.R. 329, 334 (Bankr. N.D. Ill. 1989) ("Good cause is the standard to be employed under Rule 2004."); *In re Wilcher*, 56 B.R. 428, 434-35 (Bankr. N.D. Ill. 1985) ("the examiner bears the burden of proving that good cause exists for taking the requested discovery"); *Eagle-Picher Indus., Inc.*, 169 B.R. at 134.

25. BP and Fieldwood are both parties to the LSPS OA, which includes an explicit, conspicuous, and mandatory arbitration provision for any and all claims, controversies, and disputes arising out of the agreement:

> Any claim, controversy or dispute arising out of, relating to or in connection with the interpretations of this Agreement or any activity or operation conducted or to be conducted hereunder, shall be resolved in accordance with the mediation and binding arbitration provision set forth in Exhibit "F" *(Dispute Resolution Procedures)* to this Agreement.[3]

(LSPS OA, Art. 22.28). The referenced Exhibit "F" echoes the broad reach of this provision, makes clear that the arbitration process is binding on all parties to the LSPS OA, and that all parties have waived any right to seek relief in the courts:

> Arbitration as used in this statement is a procedure whereby an Arbitrator resolves any claim(s), controversy(ies) or dispute(s) (the "Dispute") between the Parties arising out of, relating to or in connection with the Agreement, including the interpretation, validity, termination or breach thereof."
>
> (i)  Binding: The arbitration process is binding on the Parties and this arbitration is intended to be a final resolution of any Dispute between the Parties as described above, to the same extent as a final judgment of a court of competent jurisdiction. Each Party hereby expressly covenants that it shall not resort to court remedies except as provided for herein, and for preliminary relief in aid of arbitration.

---

[3] This provision includes an exception for claims for indemnification between or among the Parties when they arise out of or are related to a lawsuit filed by a Third Party.

(¶ I.A.). Exhibit "F" further provides for limited, "depositionless" discovery during which each party may—in "good faith" and not for the "purpose of delay or harassment"—serve on the other party up to ten requests for the production of documents, including subparts, "that are relevant to a claim or defense in the Arbitration proceeding, or reasonably calculated to lead to the discovery of admissible evidence." (¶ II.C; II.I.). Fieldwood's Rule 2004 discovery is clearly an attempt to make an end-run around the parties' contractual agreement to conduct discovery concerning disputes that should be subject to mandatory arbitration.

26.    Here, there is clearly a Dispute under the LSPS OA because Fieldwood and BP disagree about whether Fieldwood is required to participate in the dispute resolution process and/or whether Fieldwood has a contractual right to remove BP as LSPS Operator pursuant to Article 3.02 of the LSPS OA and then administer the election of a new operator pursuant to Article 3.03 of the LSPS OA.

27.    Fieldwood sent the Removal Notice on May 14, 2021 purporting to remove BP as LSPS Operator based solely on this Court's February 3rd Order allowing BP to elect to have Fieldwood do the work to bring the Genovesa well online by the April 5, 2021 expiry date, but it failed to identify a continuing breach as required by the LSPS OA.  To the contrary, as BP explained in its response and Notice of Dispute on May 19, 2021, BP fully and completely complied with the terms of the Order and provided substantial resources, assistance, and guidance to Fieldwood in timely getting the Genovesa Well on production.  More specifically, during a seven week-long process, BP had countless calls with Fieldwood, worked nights, worked weekends, worked as best as it could during the Texas Winter Storm, and provided substantial resources, assistance, and personnel to assist Fieldwood.  Through these efforts, the Genovesa Well went online before the April 5, 2021 deadline.

28. Further, Paragraph 6 of the Order provides that "nothing herein shall create, nor is intended to create, any rights in favor or enhance the status of any claim held by any party." (Docket No. 845). Nevertheless, Fieldwood is attempting to use findings made in connection with the February 3rd Order to create new rights inconsistent with the relief sought at the time, *i.e.*, the removal of BP as the LSPS operator. If this is the argument that Fieldwood intends to make, it is required to make it in arbitration.

29. Finally, Fieldwood elected its remedy back in January 2021. Fieldwood did not seek, and cannot now belatedly seek, to remove BP as operator, especially after BP fully complied with the terms of the February 3rd Order.

30. For these reasons, BP invoked the LSPS OA's dispute resolution procedure by serving a Notice of Dispute and designating a Management Representative pursuant to the terms of Exhibit "F". Fieldwood claims in response that "arbitration is not required here" and refuses to cooperate under these terms, however, essentially disputing that there is a Dispute under the LSPS OA and Exhibit "F". Fieldwood thus wishes to now claim there is no dispute in hopes of avoiding arbitration and is instead seeking the Court's blessing to conduct an overly broad fishing expedition. But when convenient, Debtors' have tried to avoid discovery by repeatedly alluding to future/coming disputes with BP. *See supra* Part II.D.

31. That future is now, but given the clear terms of the LSPS OA and Exhibit "F," the parties' dispute is subject to a mandatory and binding arbitration.[4] As a result, Debtors cannot meet their burden to make a "higher showing of good cause," and the Rule 2004 Requests should be quashed. *See In re Kleynerman*, 617 B.R. at 128.

---

[4] *See Motion of BP Exploration & Production Inc. for Entry of an Order Pursuant to 11 U.S.C. § 362(d) Authorizing Relief from the Automatic Stay to Commence Arbitration Against the Debtors*, which has been contemporaneously filed with this Motion to Quash.

12

**B.     The pending proceeding rule applies to preclude Debtors from seeking Rule 2004 discovery related to the parties' dispute.**

32.     Debtors served BP's counsel with a draft copy of the Rule 2004 Requests at 8:25 p.m. on Friday, May 14, 2021 and then sent the Removal Notice later that evening at 10:04 p.m. Clearly, the two are related and the pending proceeding rule should apply.

33.     The pending proceeding rule provides that "once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not Rule 2004." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *see also In re Hopewell Int'l, Ins.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (denying Rule 2004 motion based on pending arbitration). The basis for this proscription lies in the distinction between the broad nature of the Rule 2004 examination and the more restrictive nature of discovery under the Federal Rules of Civil Procedure—a distinction that has prompted courts to "express[] concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of [those rules]." *Id.* at 840–41. For this reason, "discovery pursuant to Rule 2004(a) is only available in the bankruptcy proceeding and cannot be used 'where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee.'" *USCO S.p.A v. ValuePart, Inc.*, No. 2:14-CV-02590, 2015 WL 4601192, *6 (W.D. Tenn. July 29, 2015) (quoting *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)); *see also Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994), *aff'd sub. nom., In re Snyder*, 52 F.3d 1067 (5th Cir. 1995).

34.     Courts have similarly prohibited the use of Rule 2004 discovery to protect discovery limits in the context of an arbitration clause, finding that where a contract properly places the review of a legal dispute outside the bankruptcy court, a party cannot use Rule 2004 to "supersede[] the discovery limitations of the arbitration clauses." *In re Daisytek, Inc.*, 323 B.R. at

188; *see also In re Bd. of Directors of Hopewell Int'l Ins.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) ("Where there is such a separate proceeding pending, parties are remitted to the disclosure procedures that exist in those proceedings. Although the cited cases involved adversary proceedings and contested matters, their reasoning is applicable to a case where the separate proceeding is an arbitration pending in a foreign country.").

35. Accordingly, there are two "crucial questions" that a Court must ask when determining whether to apply the pending proceeding rule: (1) whether the Rule 2004 examination will lead to discovery of evidence related, or unrelated, to the pending proceeding; and (2) whether the party's primary purpose in the Rule 2004 examination is to further the administration of the bankruptcy case or to aid in the pending proceeding. *See In re Braxton*, No. 09-08876-8-RDD, 2014 WL 4178207, *5 (E.D.N.C. Aug. 21, 2014).

36. Here, the Rule 2004 Requests are not related to the pending proceeding. The Debtors' primary purpose in serving Rule 2004 discovery is to aid in the Parties' dispute related to the LSPS. At the very least, the documents sought in the Rule 2004 Requests will benefit Fieldwood in the Parties' dispute over the purported removal of BP as operator. *See USCO S.p.A*, 2015 WL 4601192, at *6. The Rule 2004 Requests are attempt to make an end-run around the parties' contractual dispute resolution agreements and seek discovery not permitted thereunder. Under the agreed terms of Exhibit "F", no depositions are allowed and the parties may serve only ten requests for production, including subparts, "that are relevant to a claim or defense in the Arbitration proceeding, or reasonably calculated to lead to the discovery of admissible evidence."

37. For these reasons, the pending proceeding rule applies to preclude Debtors from seeking Rule 2004 discovery related to the parties' dispute.

C.     **The Rule 2004 Requests are unduly burdensome and harassing.**

38.    In addition to assessing whether a Rule 2004 request is made with "good cause," courts consider whether the request is unduly burdensome. *See In re Kleynerman*, 617 B.R. at 129. This factor is often seen as neutral because the court may tailor the request, but "when the request is . . . for information that could have been acquired months earlier during normal bankruptcy process, or is information that is likely to be used for improper (*i.e.*, competitive or harassing) purposes, then a court should be circumspect in granting such a request." *Id.* For example, in *In re Kleynerman*, the court declined to order a Rule 2004 examination because the request was based on "conjecture" and "wishful thinking," which led the court to conclude that it was being used "as a harassment needle." *See id.* at 129–130; *see also In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (Bankr. E.D.N.Y. 1999) (denying application for order under Rule 2004 because it "did not pass the 'smell test'" and was an attempt to "harass and abuse").

39.    Here, the Rule 2004 Requests seek information related not only to Fieldwood's Genovesa well and the PSA between BP and Fieldwood, but also to BP's commercial relationship with Shell and others as well as BP's contractual obligations with respect to other wells and infrastructure in which Fieldwood has no interest and has no business investigating or otherwise getting itself involved. For example, Debtors seek information about the Calliope, Manuel, and Isabela wells—wells in which Debtors own no interest and two of which are located on entirely separate loops. Moreover, Debtors seek detailed information about the Na Kika platform even though they do not own an interest in that platform. Without a "higher showing of good cause" for seeking such "intrusive" discovery into these relationships and obligations, Debtors are clearly using the Rule 2004 Requests as a tool to harass BP and gain access to sensitive commercial

information that it is otherwise not entitled to in the ordinary course of business, and they should be quashed. *See In re Kleynerman*, 617 B.R. at 128.

**D.     Fieldwood is contractually precluded from obtaining certain documents from BP.**

40.     Fieldwood is a party to the Production Handling and Operating Services Agreement (the "PHA") dated effective September 21, 2010, as amended, between the parties. *See* Docket No. 832, Ex. 2 (filed under seal). Under Section 1.1 of the PHA, Fieldwood is entitled to request "copies of the redacted Na Kika Obligations[,]" but BP is only required to provide that information if Shell Offshore Inc. gives BP its approval to do so. BP requested Shell's approval and Shell declined to provide such approval. This is a possibility plainly contemplated by the plain terms of the PHA. Now, in a blatant attempt to circumvent this contractual limitation to which it voluntarily agreed, Fieldwood is requesting, among other things, "[d]ocuments sufficient to show the meaning of 'Na Kika Obligations.'" The Court should not countenance such gamesmanship.

**E.     The Rule 2004 Requests are untimely.**

41.     The timing of Debtors' Rule 2004 Requests is also suspect. *See id.* at 131 ("The last aspect that courts usually assess is the timing of the [Rule 2004] motion."). Whatever the specific information was needed by the Rule 2004 Requests has been known since the February 2nd hearing—more than three months ago. Nevertheless, they waited until now—on the eve of confirmation—to send far-reaching document requests to BP, making their timing "suspect," and for this reason too the Rule 2004 Requests should be quashed. *See id.* (denying application for Rule 2004 examination as "suspect" where the requesting party had the triggering information but waited to bring the motion). BP is preparing for the confirmation hearing, and Debtor's discovery seeks to harass and distract during the preparation for the confirmation hearing.

42. The Rule 2004 Requests are also untimely under the Court's Scheduling Order. On its face, the Court's Scheduling Order "shall control any and all discovery by the Parties in connection with the Debtors' Plan confirmation hearing and related proceedings. *See* Docket No. 1224, Scheduling Order at ¶ 4. The Scheduling Order further provides that the "Deadline to Serve Discovery Requests" is April 14, 2021. *Id.* at ¶ 1. Fieldwood even served Requests for Production on BP on April 14, 2021 and BP answered and produced documents on April 30, 2021. Fieldwood served the Rule 2004 Requests well after the deadline on May 21, 2021. Accordingly, the Rule 2004 Requests are untimely and should be quashed by the Court.

### IV.
### NOTICE

43. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to BLR 9013-1(d), including Debtors' counsel.

### V.
### CONCLUSION

44. BP requests that the Court grant its motion and enter an order, substantially in the form attached hereto **as** Exhibit A, quashing the Rule 2004 Requests filed and served on BP by Debtors.

*[Signature Page Follows]*

Dated: May 28, 2021                           Respectfully submitted,

                                                  **GREENBERG TRAURIG, LLP**

By: /s/ *Shari L. Heyen*
Shari L. Heyen
Texas State Bar Number 09564750
HeyenS@gtlaw.com
Karl D. Burrer
Texas State Bar Number 24043584
BurrerK@gtlaw.com
Nicole S. Bakare
Texas State Bar Number 24056017
BakareN@gtlaw.com
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

– and –

Craig A. Duewall (admitted *pro hac vice*)
Texas State Bar Number 24025334
DuewallC@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

***Counsel for BP Exploration & Production Inc.***

## CERTIFICATE OF CONFERENCE

      In accordance with BLR 4001-1(a)(1), the undersigned certifies that the parties met and conferred to attempt to resolve all discovery disputes. The parties were unable to resolve the matters herein.

                                                */s/ Craig A. Duewall*
                                                Craig A. Duewall

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing pleading has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on May 28, 2021.

                                                      */s/ Craig A. Duewall*
                                                      Craig A. Duewall