## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

_____

In re:

FIELDWOOD ENERGY LLC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 20-33948 (MI)

(Jointly Administered)

_____

## OBJECTIONS OF NORTH AMERICAN SPECIALTY INSURANCE COMPANY TO CONFIRMATION OF THE FOURTH AMENDED JOINT CHAPTER 11 PLAN

North American Specialty Insurance ("NAS") submits the following as its objections to the confirmation of the Fourth Amended Joint Chapter 11 Plan (the "Plan") of the Debtors [Docket No. 1252]:

### The NAS Surety Bonds

1.      NAS is a surety on three bonds securing the plugging and abandonment decommissioning obligations of Fieldwood Offshore Energy LLC.  The largest bond is bond no. 2196705 naming Eni Petroleum US LLC and Eni US Operating Co., Inc., as obligee, in the amount of $19,950,000.  A second bond names Chevron U.S.A. Inc. & Union Oil as obligee in the amount of $18,600,000, bond no. 2196702. The third bond names Bureau of Ocean Energy Management as obligee in the amount of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

$450,000, bond no. 2196703 (the "NAS Bonds"). The bond issued in favor of Chevron (the "Chevron Bond") secures the obligations of Fieldwood Energy Offshore LLC ("FWE LLC") to perform decommissioning work as required by the terms of an Asset Sale and Purchase Agreement that was effective as of January 1, 2015.  The bond issued in favor of Eni (the "Eni Bond") secured the obligations of FWE LLC to perform decommissioning work as required by the terms of a Purchase and Sale Agreement effective December 1, 2015.

### NAS Joins in in the Objections Other Sureties

2.      NAS joins in and assets on its own behalf the objections asserted in *Objection of the Hanover Insurance Company; Travelers Casualty & Surety Company of America; and XL Specialty Insurance Company to Confirmation of the Fourth Amended Joint Chapter 11 Plan of the Debtors* [Docket No. 1427].  NAS will likewise join in the objections of the other sureties that have yet to be filed with regard issues related to treatment of surety credit in the Plan, the scope of the releases of the Plan, the viability and feasibility of the Plan

### The Plan Fails to Treat Surety Bonds as Surety Obligations

3.      Surety bonds are not property of the estate of the principal.  *See In re Lockard*, 884 F.2d 1171, 1177 (9th Cir. 1989) (a contractor does not have a property interest in surety bond issued by third-party to guarantee its performance)(citing cases); *In re Petroleum Piping Contractors*, 211 BR 290, 311-12 (Bankr. N.D. Ind. 1997) (a payment bond given by a surety for the bankruptcy debtor to a project owner is not property of the estate); *In re McLean Trucking Co.*, 74 B.R. 820, 827 (Bankr. W.D. N.C. 1987) (surety bond for workers' compensation claims not asset of the estate). *But see In re War Eagle Construction Co.*, 283 B.R. 193, 196 (S.D. W.Va. 2002) (noting that bankruptcy court held: "Upon review of the various cash deposits and instruments constituting the Bond, the Court determines that the Bond is an asset of the

2

bankruptcy estate …," but holding that letter of credit part of the performance bond was not an asset of the estate).

4.      Substitution of the principal of a bond discharges the surety.  *Leila Hosp. & Health Ctr. V. Xonics Medical Sys., Inc.,* 948 F.2d 271 (6th Cir. 1991); *Becker v. Faber,* 19 NE. 2d 997 (N.Y. 1939).  Through divisive merger the Plan changes the identity of the principal.

5.      In the Plan, Debtors want to assign parts of leases while abandoning other portions of the leases carrying significant P& **A** obligations.  There is no approach to the assumption of leases by the Debtors that is recognized in §365 of the Code.

6.      The Debtors cannot abandon decommissioning liabilities. *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.,* 474 U.S. 494 (1986).  The Plan is entirely premised on abandonment of these liabilities.

7..      The obligees of the NAS Bonds should not agree to arrangements that would allow assets available to cure the Debtors' defaults of their P&A obligations to be used for other purposes.  Restatement of the Law Third, Suretyship & Guaranty § 37 (1996).  The private obligees of the NAS Bonds, as proponents of the Plan, have committed acts that potentially impair suretyship status. The Plan potentially interferes with the ability of NAS to assert suretyship defenses against the obligees.

8.      The underlying obligations of the NAS Bonds give rise to administrative obligations of the Debtors.  *In re American Coastal Energy,* 399 B.R.805 (Bankr. S.D. 2009). NAS as a surety securing these obligations should not be treated as an unsecured creditor but would be subrogated to the rights of the obligees to assert an administrative expense claim. *In re Wingspread Corp.*, 116 B.R. 915 (Bankr. S.D.N.Y. 1990).

3

9.      How the Plan treats surety credit remains unclear.  All indications from the documents suggest the Debtors want to treat the surety bonds as cash demand instruments that are there for the benefit of the Debtors. A bond, however, secures the debt or default of the principal. Restatement of the Law, Suretyship & Guaranty § 1 (1996).  The event that triggers the ability of the obligees to make demand on the bonds is a default by the principal.  The Debtors are parties to the bonds, such, that if the Debtors bring a suit or demand on bonds on which they are principals, they are in effect suing themselves.

10.      The uncertainty and hesitancy of the Debtors' treatment of bonds is apparent in the unclear language of the Plan and supporting documents.  The Debtors in response to interrogatories from the sureties stated, "Neither the Plan nor Disclosure Statement provide that any bonds will be split, assumed, assigned or otherwise transferred." The term sheets between the Debtors and the NAS Bond obligees (Chevron and Eni) assume that the sureties will contribute to post-confirmation decommissioning costs.  In responding as they did, perhaps the Debtors mean there is no transfer of the NAS Bonds because of the divisive merger.  Had the sureties asked whether their bond survive the Plan perhaps they might have received a more direct answer to the interrogatory.  But the Debtors are not saying whether they can access in the Plan the proceeds of the surety bonds because of a pre-petition default or the post-confirmation default that is anticipated, or some other theory.[2]  What the Plan and supporting documents appear to represent is that the sureties will contribute the proceeds of the bonds without recourse against the post-confirmation entities.

11.      NAS believes the financial projections submitted by the Debtors for decommissioning costs likely assume contribution from the sureties for those costs without the

---

[2]      Whether the bonds are assumed or simply continue to exist as obligations of the divisive merger entities also has implications for whether the Debtors should provide cure values for decommissioning costs, whether the bonds can be assumed and whether the bonds must be replaced.

sureties having recourse to recover those costs from the post-confirmation entities created by the Plan.  If that is an assumption of Debtors' projection (and the sureties continue to have recourse by operation of law) this would impact the accuracy of the projections and the feasibility of meeting the post-conformation decommissioning obligations. Notwithstanding Debtors' position that the surety indemnity agreements will be rejected upon confirmation of the Plan, if the post-confirmation entities remain the principals of the bonds, by operation of law the sureties have rights of exoneration and reimbursement against the post-confirmation entities by virtue of their status as the sureties for the post-confirmation entities.  Restatement of the Law Third, Suretyship & Guaranty §§ 21 and 22 (1996).  These liabilities should survive the divisive merger and should be allocated.  Tex. Bus. Code Ann. § 10.008(a)(3) and (4).

## Conclusion

The Plan fails to address how surety bonds survive the Plan and how surety credit will continue after the Plan and the basis for the proceeds of existing surety bonds being applied to future or present decommissioning obligations, as well as the continuing recourse of sureties and their claims against the estate.

For the foregoing reasons, and for the reasons set forth in the objections of the other sureties of the Fieldwood Debtors, North American Speciality Insurance Company requests the Court enter an order denying confirmation of the Plan.

Respectfully submitted,

*/s/ T. Scott Leo*
T. Scott Leo
The Law Offices of T. Scott Leo, P.C.
100 N. LaSalle Street, Suite 514
Chicago, Illinois 60602
Phone:  (312) 857-0910
sleo@leolawpc.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 2nd day of June, 2021, a true and correct copy of the foregoing Objections were served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned case.

*/s/ T. Scott Leo*