# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*,[1] | § | CASE NO. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## CGG SERVICES (U.S.), INC.'S OBJECTION TO CONFIRMATION OF THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS

**TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:**

CGG Services (U.S.) Inc. ("CGG"), by and through its undersigned counsel, hereby files its objection (the "Objection") to the confirmation of the proposed *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC And Its Affiliated Debtors* (the "Plan") [Dkt. No. 1284] and respectfully states as follows:

## INTRODUCTION

1. The Court should deny confirmation of the Debtors' Plan because it contains material provisions that are contrary to the United States Bankruptcy Code and applicable bankruptcy law rendering the Plan non-confirmable under 11 U.S.C. § 1129(a)(1).

2. Specifically, the provisions of the Plan that purport to nullify and/or modify change of ownership or control provisions contained in the MLA, as defined herein, between CGG and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Debtor Fieldwood Energy LLC ("Fieldwood") are without legal basis and are contrary to both bankruptcy law and non-bankruptcy law.

3.  The MLA contains enforceable "change of control" provisions that are being triggered pursuant to the transactions contemplated by the Debtors' Plan. Pursuant to Section 365(c)(1)(A) of the Bankruptcy Code, CGG must consent to the assumption of the MLA because non-bankruptcy law (federal and Texas) provides CGG with a protection to the transfer of the data licensed under the MLA. CGG has not consented to the assumption of the MLA.

## BACKGROUND

4.  CGG and Fieldwood are parties to a Master Geophysical Data-Use License (Multiple Transactions) (the "MLA"), pursuant to which CGG agreed to license to Fieldwood certain geophysical data and products. True and correct copies of the MLA and supplements thereto are attached hereto as **Exhibit A**.

5.  The MLA provides as follows:

> 5.  Transfer of License
>
> Licensee may not sell, sublicense, assign, or transfer this License to any other party, in whole or in part, or transfer its rights or obligations hereunder, except as expressly authorized in this License.
>
> 5.1  Acquisitions/Mergers This License will automatically termination at such time as a Third Party becomes an Acquirer of Licensee.
>
> 1.1  "Acquirer(s)" means Third Parties that acquire, either directly or indirectly, Ownership or Control of Licensee, whether accomplished voluntarily or by operation of law, by statutory merger, consolidation or share exchange, by stock or asset sale or purchase, or by any other transaction method.
>
> 1.22  "Third Party" or "Third Parties" means any corporation, individual, partnership, trust, or other entity not a party to this License (including, without limitation Prospective Acquirers and Prospective Partners) other than a Related Entity.
>
> 1.18  "Related Entity or Related Entities" means, at any time, any entity which (I) is Owned by Licensee, either directly or indirectly, or (II)

Owns Licensee. An entity will be a Related Entity only so long as it (I) is Owned by Licensee or (II) Owns Licensee. Notwithstanding the previous two sentences, neither of the following will be a Related Entity at any time: (a) an Acquirer of Licensee or (b) any entity engaged in the business of licensing geophysical data.

## BANKRUPTCY CASE

6. On August 3, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

7. On April 15, 2021, the Debtors filed the solicitation version of their Plan.

8. On May 26, 2021, the Debtors filed their Plan Supplement [Dkt. No. 1394] (the "Plan Supplement"). The Plan Supplement identifies on its Schedule of Assumed Contracts a "Perpetual Software License Agreement" to be assumed and assigned from CGG to the Credit Bid Purchaser (as defined in the Plan), but there is no date or any other information referenced in connection with the agreement to be assumed and assigned. On May 27, 2021, undersigned counsel requested clarification from Debtors' counsel regarding whether the "Perpetual Software License Agreement" is intended to refer to the MLA. As of the time of the filing of this Objection, counsel has not yet confirmed that the Debtors intend to assume and assign the MLA. Out of an abundance of caution, CGG files this Objection.

## LAW AND ARGUMENT

**A.    The MLA Is an Executory Contract with Valid Change of Control Provisions.**

9. The Fifth Circuit has adopted the generally accepted definition that an executory contract "includes contracts on which performance remains due to some extent on both sides." *See In re Murexco Petroleum*, 15 F.3d 60, 62-63 (5th Cir. 1994) citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521-22 (1984). The MLA is an executory contract within the meaning of Section 365 of the Bankruptcy Code because, *inter alia*, Fieldwood has continuing confidentiality obligations to CGG and restrictions upon the use of the licensed data under the MLA, and CGG

has continuing obligations to allow Fieldwood to use the licensed data. *See In re Kmart Corp.*, 290 B.R. 614, 618 (Bankr. N.D. Ill. 2003) ("Generally speaking, a license agreement is an executory contract as such is contemplated in the Bankruptcy Code."); *RCI Tech. Corp. v. Sunterra Corp.* (*In re Sunterra Corp.*), 361 F.3d 257, 264 (4th Cir. 2004) (a software license agreement was executory when at the time of filing, the parties each possessed an ongoing obligation to maintain the confidentiality of the source code of the software developed by the other). "Courts generally found intellectual property licenses to be 'executory' within the meaning of section 365(c) because each party to the license had the material duty of 'refraining from suing the other for infringement of any of the [intellectual property] covered by the license.'" *In re Golden Books Family Entm't*, 269 B.R. 300, 308 (Bankr. D. Del. 2001) (quoting *In re Access Beyond Techs., Inc.*, 237 B.R. 32, 44 (Bankr. D. Del. 1999); *see also Pegasus Imaging Corp. v. Northrop Grumman Corp.*, No. 07-1937, 2010 WL 1528506 (M.D. Fla. April 14, 2010) (holding that duties do not cease when software is delivered pursuant to software license agreement); *In re Chapin Revenue Cycle Mgmt., LLC*, 343 B.R. 728, 730 (Bankr. M.D. Fla. 2006) (holding that an end-user license agreement was an executory contract).

10. The change of control provisions contained in the MLA prohibit a transfer of the MLA to a Third Party that becomes an Acquirer. The Credit Bid Purchaser clearly constitutes a Third Party, and the Plan clearly contemplates the Credit Bid Purchaser becoming an Acquirer. As a result, the MLA prohibits the contemplated assumption and assignment of the MLA to the Credit Bid Purchaser.

11. Change in control provisions such as those contained in the MLA are valid and enforceable against a debtor. *See e.g., In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 174 (Bankr. E.D. Va. 1993) (language in a lease that required principal of the debtor to control

debtor prevented sale of stock in debtor as a method of transferring the lease as valid); *see also Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489, 494 (1st Cir. 1997) (suggesting licensors desiring to prevent the assignment of their material without consent could include provisions either limiting or terminating the licensee's rights in the event of a change in ownership), cert. den., 521 U.S. 1120 (1997), abrogated on other grounds, *Hardeman v. City of Boston*, 1998 WL 148382 (1st Cir. 1998).

**B.     The Assumption of the MLA is Prohibited by 11 U.S.C. § 365(c)(1)(A) Absent the Consent of CGG.**

12.     Furthermore, the Court should rule that the proposed assumption is prohibited by Section 365(c)(1)(A) of the Bankruptcy Code, which provides that a trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if:

(a)     "applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession . . .," and (b) "such party does not consent to such assumption or assignment . . .".

13.     "Applicable law" as used in Section 365(c)(1)(A) means "any law applicable to a contract, other than bankruptcy law." *See In re Sunterra*, 361 F.3d at 261 n. 5. The Fifth Circuit applies the expansive approach to "applicable law" under Section 365(c)(1)(A). *In re Braniff Airways, Inc.*, 700 F.2d 935, 943 (5th Cir. 1983).

    *i.     Texas and Federal Trade Secret Law is "Applicable Law" under Section 365(c)(1)(A).*

14.     Texas and U.S. trade secrets laws constitute "applicable law" under Section 365(c)(1)(A) and excuse CGG from accepting performance from or rendering performance to an Acquirer.

15. Although the Bankruptcy Code does not define "applicable law" for the purposes of Section 365(c)(1)(A), it has been interpreted to include non-bankruptcy federal law governing patent, trademark and copyright licenses. *See, e.g., Permian v. Catapult Entm't. Inc.*, (*In re Catapult Entm't Inc.*), 165 F.3d 747, 750 (9th Cir. 1999) (finding that federal patent law constitutes "applicable law" for the purposes of Section 365(c)(1)); *Everex Sys., Inc. v. Cadtrak Corp.* (*In re CFLC, Inc.*), 89 F.3d 673, 679 (9th Cir. 1996) (holding that federal law governs the assignability of a patent license and finding that the application of federal law was supported by the federal patent policy of encouraging innovation); *In re Alltech Plastics, Inc.*, 71 B.R. 686, 689 (Bankr. W.D. Tenn. 1987) (finding federal law governs the assignability of patent licenses); *In re Sunterra Corp*, 361 F.3d at 257 (finding that federal law constitutes applicable law in the case of copyright licenses); *In re Patient Educ Media, Inc.*, 210 B.R. 237 (Bankr. S.D.N.Y. 1997) (applying federal law to non-exclusive copyright license); *Harris v. Emus Records Corp*, 734 F.2d 1329 (9th Cir 1984) (applying federal law to copyright license); *NCP Mktg Group, Inc. v. Blanks* (*In re NCP Mktg Group, Inc.*), 337 B.R. 230 (D. Nev. 2005) (applying federal law to trademark license).

16. While the case law does not address whether "applicable law" includes trade secret laws, it should apply equally to trade secret laws as it does for copyright, trademark and patent laws as they all serve similar purposes.

17. The data licensed under the MLA is a protected trade secret under Texas law.[2] *See, e.g., In re Bass*, 113 S.W.3d 735, 742 (Tex. 2003) (It is undisputed that the oil and gas industry typically treats seismic data and other methods for obtaining subsurface geological information as trade secrets). Other jurisdictions have recognized this industry wide practice of treating seismic data as trade secrets; *see also Musser David Land Co. v. Union Pac. Res.*, 201 F.3d 561, 569 (5th

---

[2] The MLA provides that it is governed by Texas law. *See* Section 14 of the master license attached as Exhibit A.

Cir. 2000); *Anadarko Petroleum Corp. v. Davis*, 06-2849, 2006 WL 3837518 at *15 (S.D. Tex. Dec. 28, 2006); *In re TXCO Res., Inc.*, 475 B.R. 781 (Bankr. W.D. Tex. 2012).

18. Under the Texas Uniform Trade Secrets Act, disclosure or use of a trade secret results in a misappropriation action if it occurs without the express or implied consent of the owner. TEX. CIV. PRAC. & REM. CODE § 134A.002(3).

19. Furthermore, federal trade secret law mirrors the Texas Uniform Trade Secrets Act providing for a federal action for misappropriation of a trade secret if consent of the owner is not obtained. *See* 18 U.S.C. § 1836 et seq.

20. Thus, the Texas Uniform Trade Secrets Act and federal trade secrets law constitute "applicable law" under Section 365(c)(1)(A) of the Bankruptcy Code excusing CGG from accepting performance from or rendering performance to an Acquirer. Accordingly, the MLA cannot be assumed under the Debtors' Plan without the consent of CGG.

### ii.    *Federal Copyright Law is "Applicable Law" under Section 365(c)(1)(A).*

21. In addition, the U.S. Copyright Act further constitutes "applicable law" under Section 365(c)(1)(A) and precludes assumption of the MLA absent CGG's consent.

22. The Copyright Act, 17 U.S.C. §102, *et. seq.*, provides protection to the authors of "original works of authorship" fixed in "any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated," including but not limited to both published and non-published literary, pictorial, graphic, artistic, audiovisual, sound recording, architectural, and certain other intellectual works. It also applies to and protects compilations and derivative works.

23. It is well-settled that federal copyright law makes non-exclusive copyrights non-assignable absent consent of the licensor. *See, e.g., In re Sunterra Corp.*, 361 F.3d at 262, n.7; *In*

*re Trump Entertainment Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015); *In re Patient Education Media, Inc.*, 210 B.R. 237, 241 (Bankr. S.D.N.Y. 1997).

24. Pursuant to the MLA, CGG provides Fieldwood with a non-exclusive license to use sensitive, highly confidential, and copyrighted seismic data. Because the MLA is protected under copyright laws, Section 365(c)(1)(A) of the Bankruptcy Code prohibits the assumption of the MLs by the Debtors under the Plan without the consent of CGG. CGG does not consent to the assumption of the MLA.

**C.   Notice of CGG's Opt-Out and Objection to the Releases.**

25. Section 10.7 of the Debtor's Plan contains a broad release provision that releases the Debtors, the Reorganized Debtors and numerous third parties from a broad set of pre-petition and post-petition claims, obligations, actions, and omissions. Further, Section 10.8 of the Plan contains a broad exculpation provision. To the extent that the release and/or exculpation provisions of the Plan could be interpreted to bar CGG from bringing a post-confirmation claim against the Reorganized Debtors and/or the Credit Bid Purchaser, CGG hereby objects to those provisions and provides notice of CGG's opt-out of the third-party release and exculpation provisions of the Plan.

## RESERVATION OF RIGHTS

26. CGG reserves the right to supplement, amend, and/or modify its objection and raise other objections they may have to confirmation of the Debtors' proposed Plan, as well as all other rights including, without limitation, the right to file any such further and additional objections to any filings in this proceeding that they deem appropriate.

WHEREFORE, CGG respectfully requests that the Court deny confirmation of the Debtors' Plan unless and until CGG's objections are resolved, and grant CGG such other and further relief to which it may be entitled in law and equity.

Dated June 2, 2021

Respectfully submitted,

**FROST BROWN TODD, LLC**

By: */s/ Mark A. Platt*
    Mark A. Platt
    Texas State Bar No. 00791453
    mplatt@fbtlaw.com

Rosewood Court
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201
Telephone:  (214) 580-5852
Facsimile:  (214) 545-3473

**COUNSEL FOR CGG SERVICES (U.S.) INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that on the 2nd day of June, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered to receive such notice.

*/s/ Mark A. Platt*
**MARK A PLATT**

0146068.0737535   4832-0475-1084v1