

# MASTER GEOPHYSICAL DATA-USE LICENSE
## (Multiple Transactions)

This Master Geophysical Data-Use License (the *"License"*) is dated effective June 27, 2014 (*"Effective Date"*) between **CGG Services (U.S.) Inc.**, a Delaware corporation (*"CGG"*) and **Fieldwood Energy LLC**, a Delaware limited liability company (*"Licensee"*).

In consideration of the mutual promises contained in this License, CGG agrees to grant to Licensee and Licensee agrees to accept a non-exclusive license to use certain Data, from time to time, upon the terms and conditions set forth in this License

Upon each occasion CGG licenses specific Data to Licensee, the Parties will execute a supplemental agreement (*"Supplement"*) to this License. The Supplement will be in substantially the form attached to this License as Exhibit A and will identify the specific Data licensed, the consideration to be paid by Licensee with respect to such specific Data, and other particulars concerning the license transaction to which the Parties mutually agree.

From time to time, one or more of CGG's affiliated companies and one or more of Licensee's Related Entities (as defined below) may agree to adopt the terms of this License for use in licensing Data. In that event, the two companies will enter into a Supplement and, by referring to this License in the Supplement, agree to be bound by the terms set forth in this License as if they were parties to it.

1. Definitions Capitalized terms used in this License have the following meanings:

   1.1 "Acquirer(s)" means Third Parties that acquire, either directly or indirectly, Ownership or Control of Licensee, whether accomplished voluntarily or by operation of law, by statutory merger, consolidation or share exchange, by stock or asset sale or purchase, or by any other transaction method.

   1.2 "CGG" is defined in the first paragraph of this License.

   1.3 "Confidentiality Agreement(s)" means a written agreement between Licensee and a Third Party whereby the Third Party agrees to maintain the Data and Derivatives, either by specific reference hereto or by general reference to items disclosed to the Third Party by Licensee in connection with a negotiation, in strict confidence as provided in this License and not to Show or Transfer the Data, Derivatives, or any analyses or interpretations thereof to any other Third Party.










1.4 "Consultant(s)" means Third Parties which are bona fide, recognized consultants in the geophysical industry engaged by Licensee to interpret, reprocess or make other technical studies of the Data for the sole use and benefit of Licensee. A Third Party cannot be a Consultant if such party (i) is a Prospective Partner, Partner, Prospective Acquirer or Acquirer of Licensee, (ii) is in the business of licensing geophysical data, (iii) is in the business of producing hydrocarbons; or (iv) directly or indirectly owns or acquires an economic interest in any oil and gas lease, production-sharing contract, or other interest within the geological area of the respective Data being used other than an overriding royalty interest (not to exceed 1% of the revenue from such geographic area) granted to such party by Licensee as part of the party's compensation arrangements.

1.5 "Control(s)" means the ability to, directly or indirectly, direct, manage or dictate the actions of, or determine the management of, the entity in question by any method, including without limitation, whether by the election of members of the board of directors or other governing body of such entity, or by having the ability to exercise control over a majority number of members of such governing body or through the Ownership of, or the exercise of voting or consensual rights with respect to, the common stock, voting securities or other interests held in such entity.

1.6 "Data" means geophysical and geological information, regardless of the form or medium on which it is displayed or stored. Data also includes interpretations created by CGG for license to third parties. Specific Data subject to this License is more particularly described in each Supplement.

1.7 "Derivative(s)" means any product derived, generated, or created from the Data, including, but not limited to, any and all processed and reprocessed Data or analyses, regardless of the form or medium on which it is displayed or stored whether produced by CGG, Licensee or Third Parties; provided, however, that those products which qualify as Licensee Interpretations, as defined herein below, are expressly excluded from "Derivatives".

1.8 "Effective Date" is defined in the first paragraph of this License.

1.9 "License" means this agreement as supplemented by each Supplement.

1.10 "Licensee" is defined in the first paragraph of this License

1.11 "Licensee Interpretation(s)" means work products created by Licensee or its Consultants, such as maps and interpretations, which may be based upon the Data or Derivatives but which do not display any part of either (a) the Data in



the form received from CGG or (b) the Derivatives in the form which results from re-formatting, processing or re-processing.

1.12 "Ownership" or "Owns" means, in the case of a corporation or other entity that issues voting securities, greater than 80% of the outstanding common stock or other voting securities and, in the case of a partnership, trust or other entity, greater than 80% of the interest in the profits thereof.

1.13 "Parties" means CGG and Licensee. "Party" means either CGG or Licensee.

1.14 "Partner(s)" means Third Parties contractually related to Licensee in Third Party Business Transactions (whether or not such relationships constitute a partnership at law).

1.15 "Processor(s)" means Third Parties which are bona fide recognized contractors that are engaged by Licensee to provide reformatting or reprocessing services for geophysical and geological data for the sole use and benefit of Licensee; provided that such contractors are not, directly or indirectly, related to or in the business of exploring for or producing hydrocarbons.

1.16 "Prospective Acquirer(s)" means any Third Party who is conducting bona fide negotiations in an endeavor to become an Acquirer.

1.17 "Prospective Partner(s)" means any Third Party who (i) has contacted Licensee or been contacted by Licensee concerning becoming a Partner; or (ii) is in any stage of bona fide negotiations with Licensee to become a Partner.

1.18 "Related Entity or Related Entities" means, at any time, any entity which (i) is Owned by Licensee, either directly or indirectly, or (ii) Owns Licensee. An entity will be a Related Entity only so long as it (i) is Owned by Licensee or (ii) Owns Licensee. Notwithstanding the previous two sentences, neither of the following will be a Related Entity at any time: (a) an Acquirer of Licensee or (b) any entity engaged in the business of licensing geophysical data.

1.19 "Show(n)" means to display or otherwise allow passive viewing, under the direct supervision and control of Licensee, of the Data or Derivatives for short periods of time to a Third Party in secure environments whereby such Third Parties are not able to (i) operate any computer workstation on which the Data or Derivatives are displayed; (ii) make copies, summaries, transcriptions, reproductions or interpretations of any type; (iii) remove copies, summaries or transcriptions of the Data or Derivatives from Licensee's premises; or (iv) otherwise impair the intellectual property value of such Data or Derivatives.



1.20 "Storage Contractor(s)" means Third Parties which are bona fide recognized contractors that are engaged by Licensee to provide central storage facilities and retrieval services or electronic databases for geophysical and geological data for the sole use and benefit of Licensee; provided that such contractors are not, directly or indirectly, related to or in the business of exploring for or producing hydrocarbons and are not competitors of CGG.

1.21 "Supplement(s)" is defined in the second paragraph of this License.

1.22 "Third Party" or "Third Parties" means any corporation, individual, partnership, trust, or other entity not a party to this License (including without limitation Prospective Acquirers and Prospective Partners) other than a Related Entity.

1.23 "Third Party Business Transaction(s)" means farmouts, operating agreements, acreage trades, areas of mutual interest, joint development agreements, joint bidding agreements, technical cooperation agreements and similar business transactions entered into by Licensee with Third Parties for the joint exploration or development of a particular geographical area(s), partially or wholly covered by Data or Derivatives.

1.24 "Transfer" means any grant of access to any Data or Derivatives of greater duration or scope than Shown, including but not limited to any sale, conveyance, sublet, assignment, lease, license, sublicense, transfer, exchange, trade, publication, lien, mortgage, pledge, hypothecation, encumbrance, or other disposition of any Data, whether voluntary, by operation of law, or by any other method.

2. Data Ownership/Confidential Treatment

2.1. Ownership/Confidentiality CGG owns or otherwise has the right to license to others the right to use the Data. CGG represents, and Licensee acknowledges, that the Data and Derivatives, regardless of the form or the medium on which they are stored, constitute a valuable and highly confidential intellectual property and a trade secret that are not generally available and are the sole property and proprietary information of CGG (or those on behalf of which CGG acts). Title to the Data and Derivatives will remain in CGG (or those on behalf of which CGG acts) and Licensee will acquire, under the terms hereof, only the non-exclusive right to utilize such Data on the terms provided in this License. Licensee is not permitted to assign this License or any Supplement or use, display, disclose, Show or Transfer, in whole or in part, the Data, Derivatives or any copies thereof to any individual or entity whatsoever, except as specifically



allowed by this License. CGG has the right at any time to license any part of the Data to persons or entities other than the Licensee at such prices and on such terms as CGG chooses.

Except as expressly permitted by this License, Licensee agrees (a) to keep strictly confidential, and must ensure that its employees and agents keep strictly confidential, the Data and Derivatives and (b) not to Transfer or Show to, allow use by, or deliver the Data or Derivatives to, any other person.

2.2 Original Data-Retention/Licensing/Right to Destroy It is the intent of CGG to retain the original Data (such as field tapes and other related information obtained during acquisition); however, Licensee acknowledges that original media may erode, become damaged, or contain Data not relevant to the licensed area and in such situations, CGG will be unable to provide Licensee the portion of the original Data thereby affected. CGG will have the sole right to delete or discard the original Data upon making reasonable efforts to notify Licensee of its intention to do so.

Licensee may license such original Data upon payment of an additional license fee.

2.3 Notice of Restricted Use Licensee is permitted to make copies of any Data and Derivatives for the sole purpose of using such copies pursuant to the rights granted in this License, provided that each such copy must have the following notice printed on it or attached to it or printed on or attached to its container:

NOTICE

> This Data is proprietary to and a trade secret of CGG Services (U.S.) Inc. ("***CGG***"). The use of this Data and Derivatives is restricted to companies holding a valid use license from CGG and is subject to the confidentiality terms of that license.

No one is permitted to remove, obliterate, conceal or otherwise obscure such notice permanently.

3. Disclosure of Data & Derivatives Licensee will have the non-exclusive right to use the Data for its internal purposes only. Licensee will have the exclusive right to use Derivatives (created by or on behalf of Licensee by a Consultant or Processor) for its internal purposes only. Licensee is not permitted to Show, Transfer or otherwise dispose of or allow access to, or use of, any of the Data or Derivatives except as







specifically provided in this Section 3. Copies of any Confidentiality Agreements between Licensee and Third Parties as required by the terms of this License will be provided to CGG upon written request.

3.1 Related Entities Related Entities will have the same right of usage of the Data and Derivatives as has Licensee and, as a condition of such right, will be bound by the terms of this License to the same extent as is Licensee. Licensee will be responsible for any breach of any provision of this License by any Related Entity. In the event that any Related Entity ceases to exist or no longer meets the definition of a Related Entity, such entity's rights to use or possess the Data or Derivatives will immediately cease, and the entity must promptly and in no greater than 30 days (i) return to Licensee any copies of all or part of the Data or Derivatives and any Licensee Interpretations then in the possession of such entity and (ii) remove any copies of all or part of the Data or Derivatives and any Licensee Interpretations from its storage and archival systems, workstations, and prospect files. To the extent the Related Entity's computer back-up procedures create a copy of any part of the Data or Derivatives, the Related Entity is allowed to retain such copy only for the period it normally archives backed up computer records; provided, however, that until the information on such back-up copy is destroyed, the Related Entity will make no use of such Data or Derivatives, will make no further copies of such Data or Derivatives and will neither disclose nor transfer the Data or Derivatives to any Third Party. Licensee shall be responsible for ensuring that such former Related Entity complies with this requirement.

3.2 Government Agencies

3.2.1 Licensee is permitted to disclose the Data and Derivatives to the extent such disclosure is specifically required by law, governmental or court decree, order, rule or regulation, or by any similar legal process. In the event Licensee is required by law, governmental or court decree, order, rule or regulation, or by any similar legal process to disclose any Data or Derivatives, Licensee must give CGG prompt notice of such process so that CGG may seek an appropriate protective order (or other appropriate remedy) with respect to maintaining the confidentiality of the affected Data and Derivatives before disclosure thereof by Licensee. If, in the absence of a protective order, Licensee is nevertheless compelled to disclose Data or Derivatives, Licensee is permitted to disclose only that portion of the Data or Derivatives that Licensee is advised by opinion of counsel is legally required to be disclosed. In the event of such disclosure, Licensee must give CGG written notice as far in advance as practicable and use reasonable efforts to obtain assurances



that the disclosed Data or Derivatives will be accorded confidential treatment.

3.2.2 This paragraph 3.2.2 will apply only to Data pertaining to the Outer Continental Shelf in U.S. Waters. Pursuant to regulations (30 CFR Parts 550 and 551), issued by the Bureau of Ocean Energy Management, including its predecessors or successors ("BOEM"), an agency of the United States government, CGG hereby notifies Licensee, and Licensee hereby acknowledges, that by the licensing to Licensee of geological or geophysical Data or Derivatives which are subject to the jurisdiction of the BOEM, Licensee assumes the obligations of a third party licensee of geological and geophysical data under 30 CFR Section 551.11 or 551.12, as the case may be, as the same may, from time-to-time, be amended. The provisions of this paragraph do not limit or supersede the provisions of Section 3.2.1 above.

3.3 <u>Outside Service Providers</u>

3.3.1 <u>Consultants</u> Licensee is permitted to make the Data and Derivatives available to its Consultant for the sole use and benefit of Licensee provided that the Consultant signs a Confidentiality Agreement in advance of the restricted use of the Data or Derivatives and immediately returns the Data and Derivatives to Licensee upon the earlier of completion of the work for which the Consultant was engaged or termination of the License. The Consultant is not permitted to retain any copies of the Data, Derivatives, or any analyses or interpretations of the Data or Derivatives after completion of the work for which Consultant was engaged.

3.3.2 <u>Processors</u> Licensee is permitted to make the Data available to its Processors for the purpose of creating Derivatives provided that the Processor signs a Confidentiality Agreement in advance of the restricted use of the Data and immediately returns the Data and Derivatives to Licensee upon the earlier of completion of the work for which the Processor was engaged or termination of the License. All Derivatives must be marked as provided in Section 2.3 above to identify them as containing Data proprietary to CGG.

3.3.3 <u>Storage Contractors</u> Licensee is permitted to deliver the Data and Derivatives to the custody of Licensee's Storage Contractor provided that the Storage Contractor (i) signs a Confidentiality Agreement prior to the delivery of any Data or Derivatives; (ii) makes such Data and



Derivatives available only to Licensee or its Related Entity; and (iii) immediately returns all copies of the Data and Derivatives to Licensee or its Related Entity upon the earlier of completion of the service engagement or termination of the License.

3.3.4 Licensee agrees that it will be fully responsible for a breach of any provision of this License by an outside service provider.

3.4 Prospective Acquirers/Prospective Partners Licensee is permitted to Show the Data or Derivatives to Prospective Acquirers or Prospective Partners provided that such Prospective Acquirer or Prospective Partner signs a Confidentiality Agreement prior to being Shown the Data or Derivatives and the Data or Derivatives Shown are limited to those portions of the Data or Derivatives directly pertaining to the prospect(s) under negotiation.

3.5 Acquirers Licensee is not permitted to Show, Transfer, or give copies of the Data or Derivatives to any Acquirer of Licensee without the prior written consent of CGG.

3.6 Partners

3.6.1 No Showing or Disclosure Except as provided in Section 3.6.2, Licensee is not permitted to Show, Transfer, disclose or give copies of the Data or Derivatives to any Partner of Licensee without the prior written consent of CGG.

3.6.2 Partner Has a License to Identical Data If, prior to Showing, Transferring, or giving copies of any Data to its Partner, Licensee and its Partner confirm with CGG in writing that the Partner has licensed from CGG the identical Data which Licensee intends to Show or Transfer to such Partner, CGG will consent in writing to the Showing or disclosure of such Data.

3.6.3 No Showing or Transfer of Derivative Data Even if Licensee's Partner has licensed from CGG the identical Data from which Licensee or its Consultant has prepared any Derivative, Licensee is not permitted to Show, Transfer, or give copies of such Derivative to its Partner without CGG's prior written consent.

3.7 Internet Disclosures Licensee is not permitted to Show or Transfer Data or Derivatives to Third Parties via the Internet, E-Commerce sites, virtual data rooms,



asset divestiture web sites, or any other similar means of virtual access outside of Licensee's premises without the prior written consent of CGG.

4. Taxes

In the event any sales, gross receipts, value added, use, stamp duty, or similar taxes or duties are levied or assessed on or against the fees and other sums payable to CGG as a consequence of the licensing of Data to Licensee hereunder (whether payable by CGG or by Licensee on behalf of CGG), such taxes or duties shall be in addition to the payments contained herein and will be for the sole account of Licensee, who will promptly reimburse CGG if such taxes or duties are paid by CGG or if such taxes or duties are deducted from payments made to CGG. If Licensee is obliged by the law to withhold income taxes from payments made by Licensee to CGG, Licensee shall submit written notice to the CGG of the obligation to withhold and shall provide a withholding tax receipt or other evidence of remittance of withholding taxes to CGG. All such withheld taxes shall be for the account of the CGG. Licensee shall make reasonable efforts to minimize withholding taxes arising with respect to payments to CGG including, but not limited to, cooperating and reasonably assisting CGG in supporting claims for any applicable tax treaty benefits. Licensee will be responsible for any fines, interest or penalties resulting from Licensee's failure to withhold or remit required withholding taxes if payment by Licensee is required.

5. Transfer of License

Licensee may not sell, sublicense, assign, or transfer this License to any other party, in whole or in part, or transfer its rights or obligations hereunder, except as expressly authorized in this License.

5.1 Acquisitions/Mergers This License will automatically terminate at such time as a Third Party becomes an Acquirer of Licensee.

5.2 Initial Public Offering

(a) The provisions of Section 5.1 will not apply if shares of stock of Licensee are sold to the general public on a securities exchange for the first time pursuant to an initial public offering.

(b) The provisions of Sections 5 and 5.1 will not apply and Licensee may:

(i) assign this License in whole to a Related Entity (for the avoidance of doubt, "in whole" means this License and all Supplements executed



under this License regardless of the entity named in the Supplement or Supplements), and

(ii) Transfer the Data and Derivatives to that Related Entity,

if shares of that Related Entity (the "New Licensee") will be sold to the general public on a securities exchange for the first time pursuant to an initial public offering, provided that Licensee assigns the License under Subsection 5.2(b)(i) and Transfers the Data and Derivatives under Subsection 5.2(b)(ii) immediately before or contemporaneously with the initial public offering.

Further, Fieldwood Energy LLC acknowledges and agrees that on the day of the initial public offering of the New Licensee, Fieldwood Energy LLC will cease to be a Related Entity of the New Licensee and Fieldwood Energy LLC's rights to use or possess the Data and Derivatives will immediately cease. Fieldwood Energy LLC shall promptly (in no more than 30 days) destroy all copies of the Data and Derivatives in the possession of Fieldwood Energy LLC, and remove any copies of the Data and Derivatives from its storage and archival systems, workstations, and prospect files. To the extent that Fieldwood Energy LLC's computer back-up procedures create a copy of any part of the Data or Derivatives, Fieldwood Energy LLC (including its successors and assigns) may retain such copy only for the period it normally archives backed-up computer records; provided, however, that until the information on such back-up copy is destroyed, Fieldwood Energy LLC (and its successors and assigns) will make no use of such Data or Derivatives, and will make no further copies of such Data or Derivatives, and will neither disclose nor Transfer the Data or Derivatives to any Third Party.

5.3 Other Changes in Ownership or Control The provisions of Section 5.1 will not apply to situations where the voting securities of Licensee (or any of its parents) are publicly traded and the Ownership of such securities changes over time in the normal course of business *unless*, however, Ownership or Control of Licensee (or any of its parents including but not limited to the ultimate holding company) becomes, after the Effective Date, concentrated in one unrelated Third Party or two or more Third Parties acting together.

6. Warranties and Disclaimers

6.1 CGG WARRANTS ONLY THAT IT HAS FULL AUTHORITY AND POWER TO GRANT TO LICENSEE THE USE RIGHTS COVERED IN THIS LICENSE. CGG SHALL INDEMNIFY LICENSEE FOR DIRECT DAMAGES SUFFERED BY LICENSEE WITH RESPECT TO A BREACH BY CGG OF THE WARRANTY COVERED UNDER THIS SECTION 6.1.



6.2 SUBJECT TO SECTION 6.3, CGG ASSUMES ALL LIABILITIES WHICH MAY ARISE OUT OF ITS ACTIVITIES IN ACQUIRING AND PROCESSING THE DATA, AND AGREES TO INDEMNIFY, DEFEND AND HOLD LICENSEE AND ITS RELATED ENTITIES, AND EACH OFFICER, DIRECTOR, MANAGER, EMPLOYEE, OR OTHER AGENT OF EITHER LICENSEE OR ITS RELATED ENTITY, HARMLESS FROM ANY CLAIMS, ACTIONS, OR DAMAGES, INCLUDING ATTORNEY'S FEES AND EXPENSES, ARISING OUT OF OR RESULTING FROM SUCH ACTIVITIES, PROVIDED LICENSEE NOTIFIES CGG PROMPTLY IN WRITING OF ANY SUCH CLAIMS AGAINST IT AND GIVES CGG AUTHORITY, INFORMATION AND ASSISTANCE (AT CGG'S EXPENSE) FOR THE DEFENSE OR ASSISTANCE IN THE DEFENSE OF SUCH PROCEEDINGS.

6.3 DATA DELIVERED TO LICENSEE HEREUNDER ARE, TO THE BEST OF THE KNOWLEDGE, INFORMATION AND BELIEF OF CGG, PREPARED IN ACCORDANCE WITH ACCEPTED PRACTICES OF THE GEOPHYSICAL PROFESSION; HOWEVER, LICENSEE ACKNOWLEDGES IT IS ACCEPTING ALL DATA AND DERIVATIVES SUBJECT TO THIS LICENSE "AS IS" AND CGG MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, IN RESPECT TO THE QUALITY, ACCURACY OR USEFULNESS OF SUCH DATA AND DERIVATIVES OR OTHERWISE AND ANY IMPLIED WARRANTIES OR REPRESENTATIONS ARE HEREBY EXPRESSLY NEGATED. SUCH DATA AND DERIVATIVES ARE DELIVERED HEREUNDER WITH THE EXPLICIT UNDERSTANDING AND AGREEMENT OF LICENSEE THAT ANY ACTION TAKEN OR EXPENDITURE MADE BY LICENSEE OR ANY PERSON OR ENTITY PERMITTED ACCESS TO THE DATA AND DERIVATIVES IN ACCORDANCE WITH THIS LICENSE WILL BE AT SUCH PARTY'S SOLE RISK, AND NEITHER LICENSEE NOR ANY OTHER SUCH PARTY WILL HAVE ANY CLAIM AGAINST CGG AND EACH HEREBY RELEASES CGG FROM ANY LIABILITY AS A CONSEQUENCE THEREOF.

6.4 CGG MAKES NO REPRESENTATION THAT OIL AND GAS OR OTHER MINERAL LEASES WILL BE GRANTED OR OTHER EXPLORATION ACTIVITY WILL BE AUTHORIZED FOR AREAS COVERED BY THE DATA OR DERIVATIVES BY ANY INDIVIDUAL, CORPORATION, GOVERNMENT ENTITY OR OTHER THIRD PARTY AND ANY IMPLIED WARRANTY OR REPRESENTATION TO THAT EFFECT IS HEREBY EXPRESSLY NEGATED.

6.5 NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS LICENSE OR ANY SUPPLEMENT, CGG WILL IN NO EVENT BE LIABLE TO LICENSEE OR ANY OTHER PARTY FOR LOSS OF PROFIT, PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING OUT OF THIS LICENSE OR THE USE BY LICENSEE OR SUCH OTHER PARTIES OF THE DATA OR DERIVATIVES, INCLUDING, WITHOUT LIMITATION, LOSS OF REVENUE, LOSS OF USE OR BUSINESS INTERRUPTION, HOWEVER SAME MAY BE CAUSED.



6.6 EXCEPT FOR THE INDEMNITY CONTAINED IN SECTION 6.2, CGG's LIABILITY TO LICENSEE FOR ANY CLAIMS RELATED TO THE LICENSED DATA AND DERIVATIVES WILL NOT EXCEED THE TOTAL AMOUNT OF LICENSE FEES RECEIVED BY CGG UNDER THE APPLICABLE SUPPLEMENT.

7. Payments

7.1 All amounts due CGG under this License or any Supplement will be due as set forth in the applicable Supplement and paid by electronic transfer in U.S. dollars at the address shown on CGG's invoice. Any payment not made within 30 days after the date of CGG's invoice receipt will bear interest at the rate of 1.0% per month on the unpaid balance until paid.

7.2 Unless subject to a bona fide dispute hereunder, Licensee is obligated to pay all amounts due CGG under this License or any Supplement (i) notwithstanding any change of Control or Ownership of Licensee, and (ii) whether the license granted is terminated for non-payment or otherwise as provided in this License.

8. Term & Termination

8.1 Term Unless earlier terminated, this License will terminate 25 years from the date first written above. Unless earlier terminated, each Supplement will terminate 25 years after the effective date of such Supplement. Regardless of the termination of the License, the Parties will continue to be bound by all terms and conditions of this License. Regardless of the termination of the License, the Parties will continue to be bound by all terms and conditions of this License with respect to any active Supplement for the unexpired term of such active Supplement(s).

8.2 Automatic Termination This License and all Supplements will automatically terminate:

8.2.1 In accordance with Section 5.1;

8.2.2 In the event that Licensee voluntarily files a petition in bankruptcy; or assigns, voluntarily or involuntarily, its assets for the benefit of its creditors; or

8.2.3 In the event that proceedings are commenced against or by Licensee under any bankruptcy, insolvency or similar statute.



8.3 Termination Upon Notice CGG may terminate this License or any individual Supplement:

8.3.1 Immediately upon written notice from CGG that Licensee has committed a material breach of any provision of this License or such Supplement relating to use, display, Transfer, Showing, sale, trade, lending, or other disposition of the Data shown on such Supplement or any Derivatives derived from that Data;

8.3.2 30 days following written notice from CGG that Licensee has breached any other provision not included in Section 8.3.1 above and has further failed to remedy such breach prior to the end of the 30-day notice period; or

8.3.3 30 days following written notice from CGG that Licensee has failed to make any required payment for use of the Data as set forth in this License or the applicable Supplement unless Licensee makes the required payment prior to the end of the 30-day notice period.

9. Effects of Termination

9.1 Return of Data / Destruction of Derivatives Upon termination of this License or any Supplement, regardless of the cause, Licensee must, within 30 days, return or destroy all Data previously licensed to Licensee under each terminated Supplement and must, if requested by CGG within the same 30-day period, provide written certification to CGG that, subject to the exception below, (i) all copies of all or part of such Data have been returned to CGG or destroyed, (ii) all of such Data have been removed from Licensee's storage and archival systems, workstations, and prospect files, and (iii) Licensee has retained no copies of such Data. Licensee must also, within 30 days, destroy all Derivatives created from such Data and must, if requested by CGG within the same 30-day period, provide written certification to CGG that, subject to the exception below, (i) all copies of all or part of such Derivatives have been destroyed, (ii) all of such Derivatives have been removed from Licensee's storage and archival systems, workstations, and prospect files, and (iii) Licensee has retained no copies of such Derivatives. To the extent Licensee's computer back-up procedures create a copy of any part of the Data or Derivatives, Licensee is allowed to retain such copy only for the period it normally archives backed up computer records; provided, however, that until the information on such back-up copy is destroyed, Licensee will make no use of such Data or Derivatives, will make no further copies of such Data or Derivatives and will neither disclose nor transfer the Data or Derivatives to any Third Party. For a period of one year from the



termination of any License or applicable Supplement, CGG will have the right to audit Licensee's premises, systems and storage sites to verify that all of the affected Data and Derivatives have been returned or destroyed. The Parties agree that Licensee Interpretations need not be returned or destroyed and will remain the property of Licensee.

9.2 Collection Expenses If CGG is required to engage the services of a collection agency or attorney to enforce its rights under this License, including in an action for damages, declaratory judgment or injunction, CGG will be entitled to recover, in addition to any other costs and relief that may be granted by the court in any such action, reasonable attorney fees and other costs of collection, as well as court costs and other fees and expenses incurred by reason of such engagement. That recovery will include court costs and attorney's fees incurred by CGG during any appeal.

9.3 Cumulative Rights The rights and remedies granted in this License to CGG in the event of default are cumulative and the exercise of any of those rights and remedies will be without prejudice to the enforcement of any other right or remedy, including without limitation injunctive relief and specific enforcement, available by law or in equity or authorized by this License and without any requirement that Licensor post any bond or other security.

10. Confidentiality of License Agreement Licensee agrees that the commercial terms of this License and any Supplement are confidential. Licensee is not permitted to disclose such terms to any individual or entity without CGG's prior written consent except:

(i) to Licensee's employees to the extent necessary to allow them to perform their duties;

(ii) to Licensee's outside auditors, Consultants and counsel to the extent necessary to allow them to perform their respective duties to Licensee;

(iii) as required by law or regulatory or judicial order, provided that Licensee (i) provides CGG with prompt written notice prior to any disclosure; (ii) discloses only that portion of the License or Supplement or the terms thereof that, in the opinion of its counsel, is legally required; and (iii) uses its best efforts to obtain reliable assurance that confidential treatment will be accorded any such disclosure; or

(iv) to Related Entities in accordance with Section 3.1.



Licensee is permitted to disclose the existence of this License or any Supplement to acknowledge that Licensee holds a valid license to the Data.

11. Notices

11.1 All notices permitted or required to be given under the terms of this License must be in writing and will be deemed effective upon receipt if sent by registered or certified and return-receipt requested prepaid post, by facsimile, by e-mail (all with receipt confirmation or, if by e-mail, delivery to a valid e-mail address), or by commercial courier/messenger service, and addressed to the respective Party at its address shown below or at such other address as it may designate in accordance with this notice provision.

| CGG: | Licensee: |
|---|---|
| CGG Services (U.S.) Inc. | Fieldwood Energy LLC |
| 10300 Town Park Drive | 2000 W. Sam Houston Parkway S., Suite 1200 |
| Houston, Texas 77072 | Houston, Texas 77042 |
| Attn: Division President | Attn: Terry Thidodeaux |
| Facsimile: 832-351-8720 | Email: TThibodeaux@fwellc.com |

11.2 Either Party may change its address for notice purposes at any time upon giving written notice specifying such new address and the effective date of such address change to the other Party, in the manner specified in Section 11.1.

12. Waiver The rights of each Party, whether granted by this License or by law or equity, may be exercised, from time to time, singularly or in combination, and the waiver of one or more of such rights will not be deemed to be a waiver of such right in the future or of any one or more of the other rights which the exercising Party may have. Any right and any breach of a term, provision or condition of this License by one Party will not be deemed to have been waived by the other Party, unless such waiver is expressed in writing and signed by an authorized representative of such Party, and the failure of either Party to insist upon the strict performance of any term, provision or condition of this License will not be construed as a waiver or relinquishment in the future of the same or any other term, provision or condition.

13. Injunctive Relief Licensee acknowledges that in the event it commits a material breach of any provision of this License or any Supplement relating to use, display, Transfer, Showing, sale, trade, lending, or other disposition of the Data or Derivatives, CGG may not have an adequate remedy in damages. CGG will be entitled to obtain an injunction



immediately to prevent any such breach from occurring or continuing, recognizing Licensee's right to defend such action. CGG's right to obtain injunctive relief will not limit its right to seek further remedies.

14. Governing Law/Jurisdiction All questions arising out of or concerning this License or any Supplement or its validity, interpretation, performance or breach will be governed and decided by application of the laws of the State of Texas (except for any rule of such laws that would make the law of any other jurisdiction applicable to this License). The Parties agree to the exclusive jurisdiction of the courts of the State of Texas or the United States District Court sitting in Houston, Texas; provided, however, that CGG is permitted to seek injunctive or other equitable relief in the courts of one or more other jurisdictions if it believes such action is reasonably necessary: i) to either stop an ongoing material breach of any provision of this License or any Supplement relating to use, display, Transfer, Showing, sale, trade, lending, or other disposition of the Data or Derivatives or to prevent such a breach from occurring or ii) because either the majority of Licensee's assets or the place of registration of Licensee, are outside the United States.

15. Headings The headings in this License are for convenient reference only and are not to be used as aids to its interpretation.

16. Entire Agreement There are no understandings or agreements relative to this License and each Supplement concluded by the Parties pursuant to this License that are not fully expressed in this License. This License, as supplemented by each Supplement, is the entire agreement of the Parties concerning the subject matter hereof. This License and any Supplement may only be modified, amended or supplemented by a written document that (i) specifically references this License or the applicable Supplement and (ii) is signed by an authorized representative of each Party.

17. Conflict in Documents In the event of a conflict between the terms of this License and any Supplement, the terms of the Supplement will control if such Supplement expressly identifies the affected provision in the License; otherwise, the terms of this License control. The terms and conditions appearing on any purchase order or any other order document issued by Licensee will not modify this License or any Supplement and will be null and void regardless of date. In the event of any conflict between the License and any terms or conditions relating to Data or Derivatives contained in a services agreement between Licensee or a Related Entity and CGG or its affiliated companies and which does not expressly form part of this License, the License will prevail regardless of date.

18. Severability If any of the provisions of this Agreement or any order shall be invalid or unenforceable under the laws of the jurisdiction where enforcement is sought, whether on the basis of a court decision or of arbitral award applicable to the entire Agreement



or order, such invalidity or unenforceability shall not invalidate or render unenforceable the entire Agreement or order, but rather the entire Agreement or order shall be construed as if not containing the particular invalid or unenforceable provision or provisions, and the rights and obligations of the Licensee and CGG shall be construed and enforced accordingly.

19. Survival of Terms The termination of this License or any Supplement in connection with this License, will not release the Parties from obligations which, expressly or by their nature, survive the termination hereof beyond such termination. In particular, and as examples and not by way of limitation, each Party shall remain, notwithstanding the termination of this License or of any Supplement, bound to their respective obligations arising under Sections 2, 3.3.4, 8.1, 9, 10, 14, and 18.

**IN WITNESS WHEREOF**, the Parties have caused this License to be executed as of the date first above written.

| **Licensee:** | **CGG:** |
|---|---|
| Fieldwood Energy LLC | CGG Services (U.S.) Inc. |
| By: [signature] | By: [signature] Matthew L. Bognar |
| Title: CEO | Title: S.V.P. Marine Data Library |
| Date: 7/2/14 | Date: 6-27-14 |



[initials]



# Exhibit A

Supplement No. _____

This Supplement No. ________ ("Supplement"), effective _________________, is made between ___________________ ("Licensee") and **CGG Services (U.S.) Inc.** ("CGG"). Upon execution by the parties hereto, this Supplement will become a part of and subject to the terms of the Master Geophysical Data-Use License ("License") between CGG Services (U.S.) Inc. and ______________ dated ________________. Unless stated otherwise, capitalized terms used herein have the same meaning as specified in the License.

## ARTICLE 1 – THE DATA AND DELIVERY

## ARTICLE 2 – COMPENSATION AND PAYMENT

## ARTICLE 3 – OTHER MATTERS

**CGG:**

By:___________________________

**Licensee:**

By:_______________________________



