**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **Fieldwood Energy LLC, et al.,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

**ZURICH AMERICAN INSURANCE COMPANY'S**
**(I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF**
**FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II)**
<u>**LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT**</u>
[relates to ECF No. 1284, 1286, 1394, 1395]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422) (collectively, the "**Debtors**").

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND FACTS ......................................................................................5

III.    ZURICH'S SURETY INTERESTS .....................................................................7

      A.     Zurich's Claims and Contractual Relationships Relevant to the
            Plan. ..........................................................................................................7

      B.     Nature and Scope of the Surety Relationship. .......................................10

            (1)     Suretyship has a Tripartite Relationship. ...................................10

            (2)     Surety Bonds are Not Insurance. ................................................11

            (3)     Common Law Rights of Surety Bonds. .......................................12

IV.    ARGUMENT AND AUTHORITIES ...................................................................14

      A.     Applicable Legal Standard.......................................................................14

      B.     The Plan Violates Section 1123(a)(4) of the Code Because It
            Treats Apache and Zurich Differently, Who Are Similarly Situated
            Creditors...................................................................................................16

      C.     The Plan Violates Sections 1123(a)(6) and (7) of the Code Because
            the Selection of and Powers Granted to the FWE I Sole Manager
            and Independent Director Are Not "Consistent With the Interests
            of Creditors".............................................................................................19

      D.     The Treatment (or Lack Thereof) of the Zurich Bonds and Zurich
            GAI as Proposed by the Plan Violates Sections 1129(a)(1) and
            1123(a)(5) of the Code and Is Contrary to Applicable Non-
            Bankruptcy Law.......................................................................................24

            (1)     Vague Treatment of Zurich Under the Plan................................24

            (2)     The Zurich Bonds and GAI Are Executory Contracts That
                   Cannot Be Assumed Without Zurich's Consent.........................25

            (3)     Assumption of the Decommissioning Agreement between
                   Debtors and Apache Necessarily Means That All Integrated
                   Agreements and Obligations Thereunder Survive Under the
                   Plan. ............................................................................................26

(4) Zurich's Property Rights in the Zurich Bonds and Zurich GAI Continue to Exist Regardless of Any Assumption of the Decommissioning Agreement or Rejection of the Zurich Bonds and Zurich GAI. ................................................................29

(5) Common Law Rights Extend Beyond Confirmation Because the Zurich Bonds are Retained. ....................................32

E. The Plan Is Not Proposed In Good Faith and Does Not Comply with Applicable Law as Required in Section 1129(a)(3) of the Code. ........................................................................................32

(1) The Plan Does Not Maximize Value and Reduce Expenses for FWE I. .............................................................................33

(2) The Plan is Proposed in Bad Faith Because the Plan With Respect to FWE I is Designed to Serve the Interests of One Contingent Unsecured Creditor – Apache. ...............................35

(3) Apache, Unlike Other Unsecured Creditors, Will Have Its Expenses Reimbursed by FWE I and There is No Supervision of Operations or Accountability to Other Creditors............................................................................................35

(4) The Purpose of FWE I is Limited Solely to P&A, Not to Maximize Value for Creditors. ...................................................37

(5) The Credit Bid Purchaser is the Only Party That Can Propose New Projects Other Than the Sole Manager...............................37

F. The Plan Violates Section 1129(a)(11) of the Code Because It is Not Feasible as to FWE I. .......................................................37

(1) Applicable Standard.................................................................37

(2) The Plan is Not Feasible Regarding FWE I..............................39

G. All Third-Party Exculpations Are Improper and Constitute Impermissible, Non-Consensual Third-Party Releases. .......................................40

V. JOINDER .............................................................................................45

VI. RESERVATION OF RIGHTS .........................................................................45

VII. CONCLUSION..............................................................................................45

## **TABLE OF AUTHORITIES**

### **CASES**

*Admiral Oriental Line v. United States*,
  86 F.2d 201 (2d Cir. 1936) ..................................................... 13

*Am. S. Ins. Co. v. DLM, LLC*,
  CV GLR-16-3628, 2017 WL 2930464 at *5-6 (D. Md. 2017)............................................. 32

*Arch Ins. Co. v. Centerplan Constr. Co., LLC*,
  No. 19-2622-CV, 2021 WL 1207906, at *5 (2d Cir. Mar. 31, 2021)................................... 11

*Arch Insurance Co. v. Centerplan Construction Co., LLC*,
  368 F.Supp.3d 350 (D. Conn. 2019)........................................ 10

*Argonaut Ins. Co. v. Allstate Ins. Co.*,
  869 S.W.2d 537 (Tex. App–Corpus Christi 1993) ............................ 14

*Bailey v. Hannibal & St. J. R.R. Co.*,
  84 U.S. (17 Wall.) 96, 21 L.Ed. 611 (1872) ........................ 27

*Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999)................................................ 17

*Beard Family Partnership v. Commercial Indem. Ins. Co.*,
  116 S. W.3d 839 (Tex. App.—Austin 2003, no. pet.) .................. 10, 11

*Begier v. I.R.S.*,
  496 U.S. 53 (1990)................................................ 16

*Blixseth v. Credit Suisse*,
  961 F.3d 1074 (9th Cir. 2020), cert. denied 2021 WL 666497 (Feb. 22, 2021).................... 43

*Chemical Bank v. Meltzer*,
  93 NY2d 296 (N.Y. 1999) .................................. 10

*Crimmins v. Lowry*,
  691 S.W.2d 582 (Tex. 1985) ................................ 13

*Gen. Auth. for Supply Commodities, Cairo, Egypt v. Ins. Co. of N. Am.*,
  951 F. Supp. 1097, 1109 (S.D.N.Y. 1997) ........................ 11

*Glades Cty., Fla. v. Detroit Fid. & Sur. Co.*,
  57 F.2d 449 (5th Cir. 1932) ............................ 13

*Gov't Nat'l Mort. Corp. v. Adana Mort. Bankers, Inc. (In re Adana Mort. Bankers, Inc.)*,
   12 B.R. 977 (Bankr. N.D. Ga. 1980) ................................................................ 26

*Great Am. Indem. Co. v. Beverly*,
   150 F. Supp. 134 (M.D. Ga. 1956) ................................................................. 30

*Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 7*,
   908 S.W.2d 415 (Tex. 1995) ............................................................. 10, 11, 12

*Hanson v. First Bank of South Dakota*,
   828 F.2d 1310 (8th Cir.1987) ......................................................................... 33

*In re Acequia, Inc.*,
   787 F.2d 1352 (9th Cir. 1986) ................................................................... 21, 22

*In re Ahead Commc'ns Sys., Inc.*
   395 B.R. 512 (D. Conn. 2008) ....................................................................... 21

*In re Am. Cap. Equip., LLC*,
   688 F.3d 145 (3d Cir. 2012) .......................................................................... 39

*In re Bigler, LP*,
   443 B.R. 101 (Bankr. S.D. Tex. 2010) .......................................................... 33

*In re Breitburn Energy Partners LP*,
   582 B.R. 321 (Bankr. S.D.N.Y. 2018) ........................................................... 17

*In re Briscoe Enters., Ltd. II*,
   994 F.2d 1160 (5th Cir.1993), cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126
   L.Ed.2d 451 (1993) ....................................................................................... 15

*In re Canal Place Ltd. P'ship*,
   921 F.2d 569 (5th Cir.1991) ......................................................................... 39

*In re Cent. Med. Ctr., Inc.*,
   122 B.R. 568 (Bankr.E.D.Mo.1990) ............................................................. 17

*In re Combustion Eng'g, Inc.*,
   391 F.3d 190 (3d Cir. 2004), as amended (Feb. 23, 2005) ........................... 15

*In re Cypresswood Land Partners, I*,
   409 B.R. 396 (Bankr. S.D. Tex. 2009) .......................................................... 16

*In re Dana Corp.*,
   412 B.R. 53 (S.D.N.Y.2008) ......................................................................... 17

*In re DeVries*,
2014 WL 4294540, *12-13, (Bankr. N.D. Tex. 2014) ....................................................... 31

*In re Diamond Offshore Drilling, Inc., et al*,
Case No. 20-32307 (DRJ) (Bankr. S.D. Tex. March 30, 2021) ................................ 42, 43, 44

*In re Ditech Holding Corp.*,
606 B.R. 544 (Bankr. S.D.N.Y. 2019) ................................................................................ 16

*In re Edwards Mobile Home Sales, Inc.*,
119 B.R. 857 (Bankr. M.D. Fla. 1990) ................................................................................ 26

*In re Energy Future Holdings Corp.*,
648 F. App'x 277 (3d Cir. 2016) ......................................................................................... 19

*In re Evans Prod. Co.*,
91 B.R. 1003 (Bankr. S.D. Fla. 1988) ................................................................................ 25

*In re Falcon V, L.L.C.*,
620 B.R. 256 (Bankr. M.D. La. 2020) ................................................................................ 30

*In re Flintkote Co.*,
486 B.R. 99 (Bankr. D. Del. 2012), aff'd, 526 B.R. 515 (D. Del. 2014) ............................. 38

*In re Food City, Inc.*,
110 B.R. 808 (Bankr. W.D. Tex. 1990) ............................................................................... 39

*In re Idearc Inc.*,
423 B.R. 138 (Bankr. N.D. Tex. 2009) ............................................................................... 16

*In re Idearc, Inc.*,
662 F.3d 315 (5th Cir. 2011) ............................................................................................. 16

*In re Jones Const. & Renovation, Inc.*,
337 B.R. 579 (Bankr. E.D. Va. 2006) ................................................................................. 14

*In re Kemp*,
134 B.R. 413 (Bankr. E.D. Cal. 1991) ................................................................................ 33

*In re Lakeside Global II, Ltd.*,
116 B.R. 499 (Bankr.S.D.Tex.1989) .................................................................................. 38

*In re Lively*,
467 B.R. 884 (Bankr. S.D. Tex. 2012) ............................................................................... 15

*In re LMR, LLC*,
496 B.R. 410 (Bankr. W.D. Tex. 2013) ............................................................................... 38

*In re M & S Associates, Ltd.*,
    138 B.R. 845 (Bankr.W.D.Tex.1992) .................................................................................. 38

*In re Mahoney*,
    80 B.R. 197 (Bankr. S.D. Cal. 1987) ................................................................................... 21

*In re Paragon Offshore PLC*,
    588 B.R. 735 (Bankr. D. Del. 2018) .................................................................................... 30

*In re Patriot Place, Ltd.*,
    486 B.R. 773 (Bankr. W.D. Tex. 2013) ......................................................................... 15, 42

*In re Quigley Co., Inc.*,
    437 B.R. 102 (Bankr. S.D.N.Y. 2010) ................................................................................ 39

*In re Save Our Springs (S.O.S.) Alliance Inc.*,
    632 F.3d 168 (5th Cir.2011) .......................................................................................... 38, 39

*In re Southern Foods Group, LLC*,
    Case No 19-36313 (DRJ)(Bankr. S.D. Tex. March 4, 2021) ......................................... 42, 43

*In re Star Ambulance Serv., LLC*,
    540 B.R. 251 (Bankr. S.D. Tex. 2015) ................................................................................ 33

*In re TCI 2 Holdings, LLC*,
    428 B.R. 117 (Bankr. D.N.J. 2010) .................................................................................... 17

*In re Texas Wyoming Drilling, Inc.*,
    486 B.R. 746 (Bankr. N.D. Tex. 2013) ............................................................................... 30

*In re Think Fin., LLC*,
    No. 17-33964 (HDH), 2019 WL 8272638, at *6 (Bankr. N.D. Tex. Dec. 2,
    2019) ................................................................................................................................... 33

*In re Toy & Sports Warehouse, Inc.*,
    37 B.R. 141 (Bankr.S.D.N.Y.1984) .................................................................................... 33

*In re Village at Camp Bowie I, L.P.*,
    710 F.3d 239 (5th Cir.2013) ............................................................................................... 33

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012), aff'd sub nom ........................................................................ 16

*In re Walker*,
    165 B.R. 994 (E.D. Va. 1994) ............................................................................................ 33

*In re Wegner Farms*,
    49 B.R. 440 (N.D. Iowa 1985) ........................................................................................... 26

*In re WR Grace & Co.*,
729 F.3d 332 (3d Cir. 2013), and aff'd, 532 F. App'x 264 (3d Cir. 2013), and
aff'd, 729 F.3d 311 (3d Cir. 2013), and aff'd sub nom........................................ 16

*Insurance Co. of the West v. H & G Contractors, Inc.*, No. C–10–390, 2011 WL
4738197 at *1 n.1 (S.D. Tex. Oct. 5, 2011)............................................................ 13

*Interfirst Bank Dallas, N.A. v. U.S. Fid. & Guar. Co.*,
774 S.W.2d 391 (Tex. App.—Dallas 1989, writ denied) ...................................... 14

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*,
665 F.3d 671 (5th Cir. 2011) ................................................................................. 32

*Jasik v. Conrad (In re Jasik)*,
727 F.2d 1379 (5th Cir.1984) ................................................................................ 33

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*,
242 S.W.3d 1 n.7 (Tex. 2007) ............................................................................... 12

*Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*,
756 F.2d 1043 (4th Cir. 1985) ............................................................................... 26

*Matter of Austin Dev. Co.*,
19 F.3d 1077 (5th Cir. 1994) ................................................................................. 30

*McBroom–Bennet Plumbing, Inc. v. Villa France, Inc.*,
515 S.W.2d 32 (Tex. Civ. App.–Dallas 1974)...................................................... 14

*Meyer v. Building and Realty Serv. Co.*,
196 N.E. 250 (Ind. 1935) ....................................................................................... 12

*Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*,
197 Fed. Appx. 285 (5th Cir 2006) ....................................................................... 27

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
139 S. Ct. 1652 (2019)........................................................................................... 30

*Neal [v. Hardee's Food Systems, Inc.]*,
918 F.2d [34,] 37–38 [5th Cir. 1990].................................................................... 27

*Old Republic Sur. Co. v. Palmer*,
5 S.W.3d 357 (Tex. App.–Texarkana 1999).......................................................... 13

*Pac. Bank of New York Trust Company, N.A. v. Official Committee of Unsecured
Creditors (In re Pac. Lumber Co.)*,
584 F.3d 229 (5th Cir. 2009) ........................................................................... 42, 43

*Pearlman v. Reliance Ins. Co.*,
371 U.S. 132, 140 n. 19 (1962).................................................................. 12, 14

*Penn. Nat'l Mut. Cas. Ins. Co. v. City of Pine Bluff*,
354 F.3d 945 (8th Cir. 2004) ............................................................................ 10

*[Personal Sec. & Safety Systems Inc. v.] Motorola [Inc.]*,
297 F.3d [388,] 392–95 [5th Cir. 2002].......................................................... 27

*Princeton Restoration Corp. v. Int'l Fid. Ins. Co.*,
338 F. Supp. 2d 391 (E.D.N.Y. 2004) ............................................................. 11

*PWS Holding Corp.*,
228 F3d 224 (3rd Cir. 2000) ............................................................................. 43

*Richland Plantation Co. v. Justiss–Mears Oil Co., Inc.*,
671 F.2d 154 (5th Cir.1982) ............................................................................. 27

*RPD Holdings, L.L.C v. Tech Pharmacy Servs (In re Provider Meds, L.L.C.)*,
907 F.3d 845 (5th Cir. 2018) ............................................................................ 25

*Safer v. Nelson Financial Group, Inc.*,
422 F.3d 289 (5th Cir. 2005) ...................................................................... 27, 30

*Southern Foods Group, LLC*,
Case No. 1936313 at Docket No. 3555 ............................................................ 43

*St. Paul Fire & Marine Ins. Co. v. United States*,
370 F.2d 870 (5th Cir.1967) ............................................................................. 14

*Stewart Title Guar. Co., v. Old Republic Nat'l Title Ins. Co.*,
83 F.3d 735 (5th Cir. 1996) .............................................................................. 27

*Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84 B.R. 167 (Bankr. 9th
Cir.1988)........................................................................................................... 33

*Sunbeam Prods. v. Chi. Am. Mfg., LLC*,
686 F3d 372 (7th Cir. 2012) ............................................................................. 31

*Tex. Co. v. Miller*,
165 F.2d 111 (5th Cir. 1947) ............................................................................ 14

*Trinity Universal Ins. Co. v. Bellmead State Bank*,
396 S.W.2d 163 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.)........................ 14

*Trinity Universal Ins. Co. v. United States*,
382 F.2d 317 (5th Cir.1967) ............................................................................. 14

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*,
    484 U.S. 365 (1988).............................................................................................. 39

*United States Fidelity and Guar. Co. v. Harper*,
    561 S.W.2d 630 (Tex. Civ. App.—Fort Worth 1978, no writ) ............................................. 13

*Wright Way Const. Co. v. Harlingen Mall Co.*,
    799 S.W.2d 415 (Tex. App.— Corpus Christi 1990, writ denied) ................................. 11, 12

*Yonack v. Interstate Sec. Co. of Texas*,
    217 F.2d 649 (5th Cir. 1954) ............................................................................... 14

## STATUTES

11 U.S.C. § 1107 ..................................................................................................... 5

11 U.S.C. § 1129(b) ............................................................................................... 15

11 U.S.C. §1108 ..................................................................................................... 5

11 U.S.C. §1122 ................................................................................................... 15

11 U.S.C. §1123(a)(7) ................................................................................... 3, 20, 21

11 U.S.C. §1123(b)(2) ............................................................................................ 3

11 U.S.C. §1129(a)(2) ...................................................................................... 3, 16

11 U.S.C. §364 ..................................................................................................... 26

11 U.S.C. §365(b)(1) ............................................................................................ 29

11 U.S.C. §524(a)(3) .............................................................................................. 5

11 U.S.C.§1123(a)(3) .............................................................................................. 4

## OTHER AUTHORITIES

Andrew, *Executory Contracts in Bankruptcy:  Understanding Rejection*, 50 Colo.
    L.Rev. 845 (1988) ........................................................................................... 31

Countryman, *Executory Contracts in Bankruptcy*, 57 Minn.L.Rev. 439 (1973) ......................... 31

Pottow, *A New Approach to Executory Contracts*, 96 Tex.L.Rev 1437 (2018) ........................... 31

RESTATEMENT (THIRD) OF SUR. & GUAR. (1996) § 21 ..................................................... 13

S. Rep. No. 989, 95th Cong., 2d Sess. 11 (1978), *reprinted in* 1978 U.S.C.C.A.N.
5787, 5797) ............................................................................................................. 21

Westbrook and White, *The Demystification of Contracts in Bankruptcy*, 91
Am.Bankr. L.J. 481 (2017) ..................................................................................... 31

Westbrook, *A Functional Analysis of Executory Contracts*, 74 Minn..L. Rev. 227
(1989)....................................................................................................................... 31

**Summary of Exhibits**

**Exhibit 1-A**    Decommissioning Agreement (excerpts only)
**Exhibit 1-B**    First Amendment to Decommissioning Agreement
**Exhibit 1-C**    Second Amendment to Decommissioning Agreement
**Exhibit 1-D**    Third Amendment to Decommissioning Agreement
**Exhibit 1-E**    Fourth Amendment to Decommissioning Agreement
**Exhibit 1-F**    Fifth Amendment to Decommissioning Agreement
**Exhibit 1-G**    Conformed Copy of Decommissioning Agreement w/Amendments
**Exhibit 2-A**    Amendment to Standby Letter of Credit No. DBS-20280
**Exhibit 2-B**    Deutsche Bank Standby Letter of Credit 839BGC1500968
**Exhibit 2-C**    Deutsche Bank Standby Letter of Credit 839BGC1500969
**Exhibit 2-D**    Deutsche Bank Standby Letter of Credit 839BGC1500970
**Exhibit 3-A**    Zurich Performance Bond LPM9181831
**Exhibit 3-B**    Zurich Performance Bond LPM9181832
**Exhibit 3-C**    Zurich Performance Bond LPM9181833
**Exhibit 3-D**    Zurich Performance Bond LPM9181834
**Exhibit 4**       Zurich General Indemnity Agreement
**Exhibit 5**       The Fieldwood Decommissioning Trust A Trust Agreement
**Exhibit 6**       Expert Report of John-Paul Hanson of Houlihan Lokey
**Exhibit 7**       Expert Report of Lily W. Cheung of Netherland Sewell & Associates, Inc.
**Exhibit 8**       Excerpt of Debtor's Document Produced #FWE0045403

Note: Exhibits 1-A through 1-G and Exhibits 5 – 8 are filed under seal.

Zurich American Insurance Company ("**Zurich**") files this *Objection to (I) Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors and (II) Limited Objection to Assumption of Decommissioning Agreement* (the "**Objection**"), and respectfully shows the Court as follows:

## I.
## INTRODUCTION

1.     Through their *Fourth Amended Joint Chapter 11 Plan* [ECF No. 1284] (the "**Plan**")[2] and its associated *Restructuring Support Agreement* [ECF No. 29] (the "**RSA**"), which was hatched last summer (at the absolute nadir of market value), the Debtors allowed their first lien secured lenders to cherry-pick only the valuable assets from these bankruptcy estates to be acquired through a credit bid purchase and discard all liability of the Debtors' enterprise into several liquidating entities.  The Debtors have also planned, negotiated and agreed that Apache Corporation ("**Apache**") will assume supervisory control and obtain numerous consent rights over the operation of the Legacy Apache Assets which are placed into Fieldwood Energy I, LLC ("**FWE I**") FWE I under the Plan of Merger, particularly through the new FWE I, LLC Agreement.  This structure allows Apache to: (1) arbitrarily force the use of the potentially available surety bonds to pay for plugging and abandonment ("**P&A**") liabilities on those assets, while depriving the relevant Sureties[3] of their indemnity rights and premiums they bargained for as a condition to issuing such bonds; (2) obtain valuable new rights above and beyond to the residual value in the FWE I assets ahead of other unsecured creditors; and (3) delay payments of its own regulatory liabilities.

---

[2] Unless otherwise stated herein, any capitalized term not specifically defined that have the meaning ascribed to the term in the Plan located at ECF No. 1284.
[3] Zurich and the other sureties related to the Legacy Apache Assets, Everest Reinsurance Company ("**Everest**"), Philadelphia Indemnity Insurance Company ("**Philadelphia**") and HCC International Insurance Company ("**HCCI**"), are collectively referred to herein as the "**Sureties.**"

2.      The Debtors financial projections show that FWE I will not generate free cash flow to fund its P&A obligations, and so, those obligations will shift to Apache—a contingent unsecured creditor—under the terms of the Decommissioning Agreement, which is the document governing the P&A obligations relating to the FWE I assets. Absent the rights Apache is acquiring under the Plan, Apache would be required to fund as much as $200-$400 million in P&A obligations, net of potentially available funds from the Sureties and other sources, while receiving more recourse against the Debtors other than available to other creditors.  However, under the Plan, Apache is provided with an additional method of recourse to meditate the P&A obligations. Specifically, Apache is acquiring a priority right to the "residual value" in FWE I's assets in the form of a security interest, the only consideration for which is a "loan," which Apache can elect to provide to FWE I in its sole discretion.  This puts Apache ahead of any residual value.  The "loan" is illusory because in its absence Apache would have to fund its own P&A liability as required by government regulations and environmental law, without the benefit of having recourse through its security interest in FWE I acquired through the loan.  Based on these terms, Apache has no incentive under the Plan to reduce costs and maximize the value of the FWE I Assets – which is a hallmark of the Bankruptcy Code protections for creditors – because Apache will be deciding when and if the Sureties' bonds are at risk.  Thus, Apache is *effectively on both sides of the to-be-assumed Decommissioning Agreement,* which allows Apache to limit its own risk and deprive the Sureties of the necessary recourse to limit their risk.  This is all done through a liquidating entity -  FWE I.

3.      Accordingly, the Plan is manifestly unfair to Zurich and other Sureties on the FWE I assets because it does not permit Zurich (who like Apache is a contingent unsecured creditors on these assets) with similar rights to:  (a) participate in the management and control of these assets; (b) propose capital projects funded by Zurich and/or the other Sureties that would be accretive in

value to FWE I; (c) ascertain the market value of the assets and perhaps conduct a sale process to a solvent buyer; or (d) receive security or other residual value in these assets similar to Apache for its payment of FWE I's obligations.  Zurich and the other Sureties are fulcrum creditors in the operation of FWE I, yet they are stripped of any rights to manage or maximize FWE I's value.  As a result of this manifest unfairness and violations of multiple provisions of the Bankruptcy Code, confirmation of the Plan should be denied.

       4.      The Plan fails to satisfy the provisions of Sections 1129(a)(1) and (2), which require the Plan to satisfy all provisions of the Code.  Specifically, the Plan and the Debtors violate the following provisions of the Code:

-    Section 1123(a)(4) – *equal treatment of similarly situated claims* – The Plan unfairly discriminates against the Zurich by granting Apache myriad special rights to control or restrictively prohibit FWE I from fully operating despite the fact that Apache and the Sureties are all contingent creditors of equal status, whose liability depends upon FWE I's fulfilling its P&A obligations to the U.S. Government, all to the detriment of the Sureties.

-    Sections 1123(a)(6) and (7) – *selection of officers and directors and management conditions consistent with the interests of creditors* – The selection and design of the management of FWE I is not structured to serve the best interest of the stakeholders - the unsecured creditors.  Rather, it is designed to solely serve Apache's interests. The Sole Manager of FWE I is a former Apache employee, and his appointment is subject to the consent of Apache.  The FWE I Independent Director is subject to the consent of Apache. However, the structure of FWE I not only permits, it also requires these individuals to operate FWE I *solely* to complete the P&A, which benefits Apache and Credit Bid Purchaser at the expense of Zurich, the other Sureties and other creditors, who are equal stakeholders in FWE I.

-    Section 1123(b)(2) and Section 365 – *executory contracts* – The Plan fails to comply with Section 365 of the Code in that the Debtor is attempting to assume only one part of a series of contracts and obligations that comprise a single integrated transaction. The Debtor purports to assume the Decommissioning Agreement with Apache, but that Agreement does not stand alone; it is an inseparable part of an integrated transaction among multiple parties, including the Debtor, Apache, Deutsche Bank and the Sureties, pursuant to which the Sureties agreed to bond certain obligations in consideration for various rights and recourse granted to them as a condition of issuing the bonds. The Debtor and Apache are joining together to cherry pick the benefits of the integrated transaction for

themselves, by assuming one agreement among the many agreements that form the integrated transaction, in order to deprive the Sureties of the benefit of the bargain by eliminating their recourse to mitigate their risk and their damages.  In several parts of the Plan and the Apache Term Sheet Implementation Agreement, Apache adamantly requires that the Decommissioning Security (Trust A, the bonds and the letter of credit) be maintained, but then these documents exclude the rights of the Sureties that were required as a condition to the granting of the Decommissioning Security.  The Decommissioning Agreement should be assumed as an integrated transaction, which includes the obligations under the Zurich indemnity agreements and Deutsche Bank reimbursement agreement related thereto.

- <u>Section 1123(a)(3) and (5)</u> – *specify treatment of impaired claims and adequate means for implementation* - The Plan does not adequately address the nature and extent of Zurich's claims and executory contracts, which are non-assumable financial accommodations.  All property and intangible rights granted to Zurich under applicable non-bankruptcy law, especially those against third parties and post-petition common law rights against FWE I, survive any intended rejection and intended breach by the Debtor.  The Plan must clarify that these rights are retained by Zurich and the other Sureties or the Plan should fail.

- <u>Section 1129(a)(3)</u> – *good faith requirement* – The Plan is proposed in bad faith because the Plan with respect to FWE I is designed to serve the interests of one contingent unsecured creditor – Apache. Further, the Debtors have not attempted to maximize the value of FWE I for the benefit of the Sureties and other unsecured creditors. Specifically, the Debtors have not attempted to market or sell the FWE I assets.  Debtors struck their deal with Apache last summer, granting Apache rights to determine how FWE I shall be operated post-confirmation. The Apache Term Sheet Implementation Agreement is designed to allow Apache to retain any residual value in FWE I.  The Plan is built on the subterfuge that FWE I is assuming the Decommissioning Agreement with Apache; but Apache, in order to obtain favorable treatment unavailable to similarly situated creditors, is making the Debtor a "loan" (to fund costs Apache would otherwise have to pay) so the Debtor can "cure" the defaults under the Decommissioning Agreement. Also, Apache is waving the requirement that FWE I provide adequate assurance that FWE I can perform under the agreement. However, the Debtor's own projections demonstrate that FWE I cannot perform under the agreement.

- <u>Section 1129(a)(11)</u> – *feasibility test* – The Plan, as it relates to FWE I, is not feasible.  FWE I will default on the Decommissioning Agreement less than a year after the Effective Date, and all obligations of FWE I will then fall to Apache, who will attempt to obtain reimbursement from the Sureties.  As a result, Zurich and the other the Sureties are the fulcrum creditors that should receive governance rights consistent with the other objections set forth herein.

- <u>Section 524(a)(3)</u> – *third party releases and exculpation* – The Plan does not permit creditors to opt out of the exculpations granted to third parties, including Apache.

Exculpations are nothing more than post-petition releases and should be addressed the same as non-consensual third-party releases.  Zurich should be permitted to opt out of the third-party exculpations consistent with controlling Fifth Circuit precedent and practice in this District.

5.      Zurich could potentially support the broad structure created under the Plan for FWE I if it was treated fairly and equitably and in a similar manner as Apache.  To date, the Debtors and Apache have refused to engage in serious discussions and consider any concession whereby Zurich could reduce its exposure and/or provide positive benefit to FWE I.

## II.
## BACKGROUND FACTS

6.      On August 3, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") commencing cases for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**" or "**Code**"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to 11 U.S.C. Sections 1107 and 1108.

7.      On January 1, 2021, the Debtors filed their Disclosure Statement (the "**Disclosure Statement**") and the *Joint Chapter 11 Plan of Fieldwood Energy, LLC and Its Affiliated Debtors* [ECF No. 722].   The Plan has been amended four times and the operative plan is now the Fourth Amended *Joint Chapter 11 Plan of Fieldwood Energy, LLC and Its Affiliated Debtors* [ECF No. 1284](the "**Plan**").

8.      The Disclosure Statement was approved on April 15, 2021 [ECF No. 1286] ("**Order Approving Disclosure Statement**").

9.      Pursuant to the Order Approving Disclosure Statement, the deadline to object to the Plan is June 2, 2021 ("**Plan Objection Deadline**"). Accordingly, this Objection is timely filed.

10.     In the Plan, the Debtors propose through the Credit Bid Transaction and Plan of Merger to allocate certain assets and obligations of the estate into five main buckets[4]:

(1) <u>Purchased Oil & Gas Lease Interests</u> - certain Deepwater Assets and Shelf Assets are to be sold to an entity formed by the Debtors' Consenting FLTL Lenders (the Credit Bid Purchaser identified in the Plan) in exchange for a credit bid of debt and a cash contribution under the Credit Bid Purchase Agreement[5];

(2) <u>FWE I</u> - assets assigned to FWE I are the Legacy Apache Properties, which are assets associated with the Debtors' 2013 acquisition from Apache.  FWE I will "own, operate, plug and abandon, and decommission" the Legacy Apache Assets. This transaction will be accomplished through the Apache Term Sheet Implementation Agreement and the Apache Definitive Documents, which include, among several other documents, the: (i) Plan of Merger; (ii) FWE I LLC Agreement; (iii) Transition Services Agreement ("**TSA**") with Credit Bid Purchaser; (iv) Farmout Agreement ("**Farmout**") with Credit Bid Purchaser ; and (v) the Standby Credit Facility Documents where Apache can elect to provide potential liquidity of up to $400,000,000 (collectively, the "**Apache Transaction**").  The Apache Transaction also requires that the Decommissioning Agreement be assumed, all defaults cured and that nothing in the Plan or the Apache Transaction shall be deemed to impair Apache's Decommissioning Security provided through the letter of credit, surety bonds and the surety indemnity agreements;

(3) <u>FWE III</u> - assets assigned to FWE III are primarily assets not associated with the Legacy Apache Assets – i.e., the Debtors "remaining assets";

(4) <u>FWE IV</u> - These formerly Abandoned Assets are allocated to a new entity, FWE IV, to be governed by the Chevron Term Sheet; and

(5) <u>Abandoned Assets</u> - certain assets that are called Abandoned Assets, which are carved out of the other assets because the Debtors view these assets as properly allocated to predecessors-in-interest or joint owners for which such third-parties are jointly and severally liable on any P&A Obligations.

(collectively, the "**Post-Plan Entities**").

11.     Under the Apache Transaction, FWE I will only have one officer, the Sole Manager (a former Apache employee), an "independent" director *selected with Apache's consent*, and no employees. Pursuant to the TSA, FWE I will rely on access to employees of Credit Bid Purchaser

---

[4] Zurich notes that several creditors whose own liability would fall into the Abandoned Assets bucket have entered into term sheets that may create additional entities for which the Plan of Merger may apply.

[5] See Disclosure Statement pp. 2, 4-6 and *Exhibit H* thereto.

in order to conduct operations. The Apache Transaction grants Apache de-facto control and numerous consent rights over FWE I's actions and creates a level of control well beyond any rights originally granted to Apache under the Decommissioning Agreement.  Additionally, Apache has rights over the selection of P&A service providers. Any dispute as to the propriety of any action under the Decommissioning Agreement was previously subject to expert review, which is now removed in favor of Apache's sole discretion.  Also, Apache is granted a security interest in the assets of FWE I as collateral for the Standby Credit Facility.  Effectively, Apache is loaning FWE I approximately $45 million to cure FWE I's default against Apache, and Apache is gaining both a security interest for this loan and a full suite of customary lender consent rights.  Finally, Apache also gets its expenses associated with the Decommissioning Agreement reimbursed by FWE I without any oversight.

12.     Apache has filed proofs of claim against the Debtors' estates asserting that it is partially secured by Trust A (defined later herein) and the Legacy Apache Surety Bonds in amounts of approximately $736,000,000 with an unsecured deficiency claim of $546,750,000.[6] The Plan and Disclosure Statement do not confirm or state anywhere that this "security" is an asset of any Debtor estate.  Apache's position in this case is consistent with this conclusion.

<div align="center">

**III.**
**ZURICH'S SURETY INTERESTS**

</div>

**A.     Zurich's Claims and Contractual Relationships Relevant to the Plan.**

13.     As discussed at earlier points in this case, the surety bonds issued to the Debtors' are not all similarly situated.  Zurich's surety bond interests are related to liabilities associated with the Legacy Apache Assets.  When Apache sold certain assets to the Debtors pursuant to a Purchase

---

[6] See Proof of Claim Nos. 230, 238, 236, and 238.

and Sale Agreement dated July 18, 2013 (the "**Apache PSA**"),[7] the parties entered into a decommissioning agreement dated September 30, 2013, as amended and supplemented (the "**Decommissioning Agreement**")(attached hereto as sealed *Exhibit 1* with five amendments and a conformed copy), under which Apache's continuing decommissioning liabilities would be satisfied by the Debtors. Pursuant to the Decommissioning Agreement, the Debtors were required to, among other things, collateralize their obligations to Apache by assuring that approximately $500,000,000 in Apache's P&A exposure would be secured by the issuance of one or more letters of credit and/or surety bonds issued to benefit Apache. In partial response, on November 12, 2015, the Debtors caused the issuance of four standby letters of credit by Deutsche Bank AG New York Branch ("**Deutsche Bank**") in favor of Apache in the total sum of $300,000,000.[8]  As a condition for the issuance of the L/Cs, Deutsche Bank required the Debtors to obtain surety bonds to collateralize Deutsche Bank's payment obligation. On November 9, 2015, Zurich issued four surety bonds in the total penal sum of $300,000,000 with Deutsche Bank as the obligee and the Debtor Fieldwood Energy LLC as the principal. Specifically, Zurich issued bond numbers LPM9181831, LPM9181832, LPM9181833[9], and LPM9181834[10] related to the L/Cs (collectively, the "**Zurich Bonds**").[11] As a condition of the issuance of the Zurich Bonds and other

---

[7] See Disclosure Statement pp. 7-8 for additional background about the Apache-related assets.
[8] Specifically, Deutsche Bank issued standby letters of credit numbers 830BGC1500968, 839BGC1500969, and 839BGC1500970 each in the amount of $67,557,357.00 and standby letter of credit number 839BGC1500971 in the amount of $97,327,931.00 (collectively, the "**L/Cs**")(See *Exhibit 2A – 2D*). These parties also entered into that certain Continuing Agreement for Standby Letters of Credit dated November 9, 2015 (the "**Deutsche Bank Continuing Agreement**") proscribing Debtors' reimbursement obligations.
[9] Each with a bond penal limit of $67,557,356.00.
[10] With a bond penal limit of $97,327,931.00.
[11] See *Exhibit 3A-D*.

ZURICH AMERICAN INSURANCE COMPANY'S (I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT - Page 8 of 57
ClarkHill\C2996\A80062\262944115.v7-6/2/21

prior Zurich bonds, Zurich required the Debtor Fieldwood Energy LLC and several affiliates to enter into a General Agreement of Indemnity dated September 18, 2014 (the "**Zurich GAI**").[12]

14.     The waterfall provisions of the Decommissioning Agreement that may create liability for the Debtors under the Zurich Bonds and the Zurich GAI are generally summarized as follows: the Debtors have primary responsibility to conduct decommissioning operations under the Decommissioning Agreement under a schedule mutually agreed upon with Apache. If the Debtors fail to complete these requirements and if Apache is subsequently ordered to undertake decommissioning by a government regulator (a "**Government P&A Order**"), and Apache incurs expenses associated with a Government P&A Order, then Apache can be reimbursed first by funds held in a trust ("**Trust A**")[13] created by the Decommissioning Agreement (currently with approximate amount of $238,000,000 in assets). If Trust A is exhausted, then Apache may request a draw on the L/Cs. Thereafter, Deutsche Bank may demand payment on the Zurich Bonds in accordance with their terms. When Zurich pays Deutsche Bank, the Debtors then become liable to Zurich under the Zurich GAI. Separately, Apache may also draw on 100% the L/Cs if the Debtors fail to pay the annual fees due on the L/Cs and they are due to expire.  Apache may also draw on the bond of the other Sureties.

15.     Zurich filed four proofs of claim against the various Debtor entities obligated on the Zurich GAI estate asserting an unsecured claim in the amount of $300,000,000.00.[14]

---

[12] See *Exhibit 4*.  Copies of the Zurich Bonds and the Zurich GAI are also attached to Proof of Claim Nos. 787, 791, 793 and 834 filed by Zurich.
[13] See *Exhibit 5*.
[14] See Proof of Claim Nos. 787, 791, 793 and 834.

B.    **Nature and Scope of the Surety Relationship.**

(1)    Suretyship has a Tripartite Relationship.

16.    The surety relationship has unique characteristics unlike the relationship between a debtor and most creditors. In general, as consideration for the surety's agreement to issue a bond, its principal agrees to indemnify the surety against loss under the bond. The principal's obligation to indemnify the surety is memorialized by the former's execution and delivery of a general indemnity agreement to the issuing surety. The principal's obligation to indemnify also arises by operation of law upon the issuance of the bond. Unlike other contracts, a surety bond is a written instrument that creates a tripartite relationship. *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 7*, 908 S.W.2d 415, 419 (Tex. 1995); *see also Penn. Nat'l Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945 (8th Cir. 2004) ("Bonds are contracts, and suretyship status is created through a tripartite agreement 'whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee.'"); *Arch Insurance Co. v. Centerplan Construction Co., LLC*, 368 F.Supp.3d 350, 373 (D. Conn. 2019) ("tripartite relationship among surety, principal, and claimant"); *Great Am. Ins. Co. v. N. Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 418 (Texas 1995) ("suretyship involves a tripartite relationship between a surety, its principal, and the bond obligee"); *Chemical Bank v. Meltzer*, 93 NY2d 296, 302 (N.Y. 1999) (explaining that a surety bond is a tripartite agreement creating rights and obligations among three parties). One party to this tripartite relationship, the "principal," obtains a bond to secure its performance of a contract with another party, the "obligee." *Great Am. Ins. Co.*, 908 S.W.2d at 419; *Meltzer*, 93 NY2d at 302. The remaining party, the "surety," agrees to perform the contract in the event that the principal fails to perform. *Beard Family Partnership v. Commercial Indem. Ins. Co.*, 116 S. W.3d 839, 845 (Tex. App.—Austin 2003, no. pet.); *Meltzer*, 93 NY2d at 302.

17.     Here, the three-party instruments are between (i) the primary obligor (Debtor Fieldwood Energy, LLC pursuant to the Decommissioning Agreement), who is named as principal on the bond and remains primarily liable for all obligations under the L/Cs, (ii) the obligee, to which the Debtors owe performance and payment of their obligations under the Decommissioning Agreement and L/Cs, and (iii) the surety, who is secondarily liable to the obligee. In the event of a default by the primary obligor (i.e., the principal), the surety is answerable to the obligee to perform the bonded obligation if the conditions of the bond are otherwise satisfied. *See Great Am. Ins. Co.*, 908 S.W.2d at 418-19; *Wright Way Const. Co. v. Harlingen Mall Co*., 799 S.W.2d 415, 426 (Tex. App.— Corpus Christi 1990, writ denied); *Gen. Auth. for Supply Commodities, Cairo, Egypt v. Ins. Co. of N. Am*., 951 F. Supp. 1097, 1109 (S.D.N.Y. 1997).

(2)     Surety Bonds are Not Insurance.

18.     The United States Supreme Court has held that "suretyship is not insurance." *Pearlman v. Reliance Ins. Co*., 371 U.S. 132, 140 n. 19 (1962). Suretyship differs from insurance in that a surety bond is a three-party contract involving a surety, principal and obligee while an insurance policy is a two-party contract between the insured and the insurer. A bond is issued by a surety for the benefit of the obligee only after the character, ability and financial worth of the principal is confirmed by the surety. The fee paid for a surety bond is primarily a payment for the investigation of the principal and the subsequent certification by the surety that the principal is "bonded."  This tripartite relationship is always present in a surety contract, while an insurance contract in itself never creates a tripartite relationship analogous to the surety relationship. *Great Am. Ins. Co.*, 908 S.W.2d at 418-19; *Meyer v. Building and Realty Serv. Co*., 196 N.E. 250 (Ind. 1935). "Unlike a liability insurance contract, in which the obligation of the insurer to the insured is the *primary* obligation of indemnity to the insured for loss, the obligation of a surety to a bond

ZURICH AMERICAN INSURANCE COMPANY'S (I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT - Page 11 of 57

ClarkHill\C2996\A80062\262944115.v7-6/2/21

obligee is _secondary_ to the obligation owed by its principal." *Great Am. Ins. Co*., 908 S.W.2d at 418-19. *See Wright Way Constr. Co. v. Harlingen Mall Co*., 799 S.W.2d 415, 426 (Tex. App.-- Corpus Christi 1990, writ denied) ("The liability of a surety is derivative in nature.")(emphasis added).

(3)     Common Law Rights of Surety Bonds.

19.     Surety bonds are also a type of credit transaction where the surety bonds function as a credit accommodation[15] where the surety anticipates no loss. Consistent with this concept of bonds as credit transactions where the surety expects no loss, a surety has many rights, including the common law rights of exoneration and indemnification.

20.     Bond principals have a common law duty to exonerate the surety. *Insurance Co. of the West v. H & G Contractors, Inc*., No. C–10–390, 2011 WL 4738197 at \*1 n.1 (S.D. Tex. Oct. 5, 2011); *see also* RESTATEMENT (THIRD) OF SUR. & GUAR. (1996) § 21. The common law duty to exonerate the surety recognizes the obligations of the bond principal to stand in front of and prevent any out of pocket expenditures of the surety. *See Glades Cty., Fla. v. Detroit Fid. & Sur. Co*., 57 F.2d 449, 451 (5th Cir. 1932) ("As between the surety and the principal there arises without payment by the surety and without his having even been sued an equity of exoneration."); *Admiral Oriental Line v. United States*, 86 F.2d 201, 204 (2d Cir. 1936) (citing *Glades Cty., Fla. v. Detroit Fid. & Sur. Co*., 57 F.2d 449, 451  (5th Cir. 1932)) ("[B]efore paying the debt a surety

---

[15] Surety bonds are directly based upon the financial strength of the debtor and obligate the surety "to make good on certain financial liabilities of the debtor in the event the debtor does not or cannot pay." *Wegner Farms v. Merchants Bonding Co. (In re Wegner Farms Co.),* 49 B.R. 440, 444 (Bankr. D. Iowa 1985); *c.f. Gov't Nat'l Mort. Corp. v. Adana Mort. Bankers, Inc. (In re Adana Mort. Bankers, Inc.),* 12 B.R. 977, 987 (Bankr. N.D. Ga. 1980) ("[t]he obligation to pay money on the obligation of another is a financial accommodation"). *See also Lamar Homes, Inc. v. Mid-Continent Cas. Co*., 242 S.W.3d 1, 10 n.7 (Tex. 2007) ("[A] surety bond is underwritten based on what amounts to a credit evaluation of the particular contractor and its capabilities to perform its contracts, with the expectation that no losses will occur.").

may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal.").

21.     Similarly, the surety who pays the debt of its principal has a common law right to be indemnified by the principal.  Consequently, even without a contractual indemnity agreement, a surety on a bond who pays the debt of its principal has an equitable right at common law to indemnification. *Crimmins v. Lowry*, 691 S.W.2d 582, 585 (Tex. 1985); *United States Fidelity and Guar. Co. v. Harper*, 561 S.W.2d 630 (Tex. Civ. App.—Fort Worth 1978, no writ); *Old Republic Sur. Co. v. Palmer*, 5 S.W.3d 357, 362 (Tex. App.–Texarkana 1999).

22.     In addition, and related to the common law right of indemnification, a surety who pays the debt of its principal acquires the common law right of equitable subrogation. As articulated by the Fifth Circuit, "[s]ubrogation arises by operation of law where a person has been compelled to pay off . . . the debt of another in such circumstances that equity will afford him the security or obligation held by the creditor whose claim has been paid." *Tex. Co. v. Miller*, 165 F.2d 111, 116 (5th Cir. 1947) (internal citations omitted). The doctrine of equitable subrogation is frequently applied in situations where the obligation of a bond principal is satisfied by the surety on the principal's bond. *Interfirst Bank Dallas, N.A. v. U.S. Fid. & Guar. Co.*, 774 S.W.2d 391, 397 (Tex. App.—Dallas 1989, writ denied) (citing *Pearlman v. Reliance Ins. Co*., 371 U.S. 132, 141, 83 S.Ct. 232, 237, 9 L.Ed.2d 190 (1962); *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 320–21 (5th Cir.1967); *Trinity Universal Ins. Co. v. Bellmead State Bank*, 396 S.W.2d 163, 168 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.)). The two elements of a claim of equitable subrogation are "1) that the party on whose behalf the claimant discharged a debt was primarily liable on the debt, and 2) that the claimant paid the debt involuntarily." *Argonaut Ins. Co. v. Allstate Ins. Co*., 869 S.W.2d 537, 542 (Tex. App–Corpus Christi 1993).  In such situations, a surety can

subrogate not only to the rights of the creditor, but also to the rights of the principal on whose behalf the surety made payments. *Interfirst Bank Dallas, N.A,*, 774 S.W.2d at 397; *St. Paul Fire & Marine Ins. Co. v. United States*, 370 F.2d 870, 872 (5th Cir.1967). The law with respect to a surety's rights of equitable subrogation is well-established. *See, e.g., Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 236 (1962). Notably, "[t]he Courts of Texas have always been peculiarly hospitable to the right of subrogation and have been in the forefront of upholding it." *McBroom–Bennet Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 36 (Tex. Civ. App.–Dallas 1974); *see also Yonack v. Interstate Sec. Co. of Texas*, 217 F.2d 649, 651 (5th Cir. 1954). A surety's subrogation rights relate to the issuance of the applicable bond. *In re Jones Const. & Renovation, Inc.*, 337 B.R. 579, 583 (Bankr. E.D. Va. 2006).

## IV.
## ARGUMENT AND AUTHORITIES

### A.    Applicable Legal Standard.

23.    Section 1129 of the Code puts forth various requirements that a plan must satisfy. Accordingly, if a plan does not comply with the provisions of Section 1129,[16] then the bankruptcy court **must deny confirmation**. *In re Lively*, 467 B.R. 884, 888 (Bankr. S.D. Tex. 2012) (holding that the plan of reorganization cannot be confirmed when it did not satisfy either the requirements in Sections 1129(a) or (b)); *In re Patriot Place, Ltd.*, 486 B.R. 773, 819 (Bankr. W.D. Tex. 2013) (court holding that it cannot confirm a plan that does not comply with Bankruptcy Code); *In re*

---

[16] Some of the requirements of Section 1129 that must be satisfied are: (1) plan's compliance with Code; (2) proponent's compliance with Code; (3) good faith proposal of plan; (4) disclosure of payments; (5) identification of management; (6) regulatory approval of rate changes, if applicable; (7) "best interest" test, requiring that each claim holder in impaired class accept plan or receive no less than would be received in Chapter 7 liquidation; (8) acceptance of plan by each impaired class (9) treatment of administrative and priority claims in accordance with statute; (10) acceptance by at least one impaired class of claimants; (11) feasibility of plan; (12) payment of bankruptcy fees; and (13) payment of retiree benefits. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 243 (3d Cir. 2004), as amended (Feb. 23, 2005).

*Briscoe Enters., Ltd. II*, 994 F.2d 1160, 1165 (5th Cir.1993), cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993). Accordingly, the Court does not have discretion to approve a plan that violates the provisions of Section 1129.

24.     Section 1129(a)(1) of the Bankruptcy Code requires compliance with the other provisions of the Bankruptcy Code. *Matter of: Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 239 (5th Cir.), cert. denied sub nom. *Port of Corpus Christi Auth. of Nueces Cty., Texas v. Sherwin Alumina Co., LLC*, 141 S. Ct. 360, 208 L. Ed. 2d 88 (2020). Section 1129(a)(1) "is an 'umbrella' statutory section that ensures compliance with other more specific sections of the Code. In particular, Section 1129(a)(1) is predominantly aimed at ensuring compliance with Section 1122 and Section 1123 . . . which address classification of claims and contents of the plan." *In re W.R. Grace & Co.*, 475 B.R. 34, 173 (D. Del. 2012), aff'd sub nom. *In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and aff'd, 532 F. App'x 264 (3d Cir. 2013), and aff'd, 729 F.3d 311 (3d Cir. 2013), and aff'd sub nom. *In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013).

25.     Furthermore, Section 1129(a)(2) requires that the plan proponent comply with the Bankruptcy Code. *In re Idearc Inc.*, 423 B.R. 138, 163 (Bankr. N.D. Tex. 2009), *subsequently aff'd sub nom.  In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011). Both Section 1129(a)(1) and (2) must be proven by the debtor by a preponderance of evidence, like the other requirements under Section 1129(a). *In re Cypresswood Land Partners, I*, 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009); *In re Ditech Holding Corp.*, 606 B.R. 544, 571 (Bankr. S.D.N.Y. 2019).  As set forth in this Objection, the Plan violates numerous sections of the Code that render the Plan unconfirmable under Sections 1129(a)(1) and (2).

**B.**     **The Plan Violates Section 1123(a)(4) of the Code Because It Treats Apache and Zurich Differently, Who Are Similarly Situated Creditors.**

26.     In the confirmation process, "[e]quality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier v. I.R.S.*, 496 U.S. 53, 54 (1990). This bedrock principle of equity is seen in Section 1123(a)(4) of the Code. Pursuant to Section 1123(a)(4), creditors that hold similar claims or interests against the debtor must receive equal treatment under a plan of reorganization. Under Section 1123(a)(4), courts have interpreted "the 'same treatment' requirement to mean that all claimants in a class must have 'the same opportunity' for recovery." *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013). This treatment need not be identical, but it must be approximately the same for all members of the class. *Id.* Here, as discussed further below, Section 1123(a)(4) is violated by the Debtors disparate treatment of Apache and Zurich, resulting in the denial of confirmation.

27.     As discussed in the Supreme Court's *LaSalle* opinion (a case analyzing Section 1129(b)(1))[17], a plan's treatment of a claim or interest includes the property or opportunities received by the holder thereof on account of that claim or interest, not just cash distributions. *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 443 (1999); see also *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 133 (Bankr. D.N.J. 2010).   In *LaSalle*, the Supreme Court held that an exclusive opportunity provided to certain equity holders of the debtor to purchase the equity in the reorganized entity holds value and should be treated as an interest in property. *526 U.S. 434* at 455-55. Notably, the Court commented that the exclusive opportunity should not "be treated merely as a detail of the broader transaction" and that it was incorrect to argue that there was no favoritism inferred. *Id.* at 456.

---

[17] The policy underlying *LaSalle* and case law interpreting 1129(b)(1) is instructive and applicable to cases involving Section 1123(a)(4). *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. at 443.

28.     Furthermore, Courts have extended the requirement that creditors in the same class be given equal opportunities to satisfy the equal treatment mandated under Section 1123(a)(4). *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013); *In re Breitburn Energy Partners LP*, 582 B.R. 321, 358 (Bankr. S.D.N.Y. 2018); *In re Dana Corp.*, 412 B.R. 53, 62 (S.D.N.Y.2008); *see also In re Cent. Med. Ctr., Inc.*, 122 B.R. 568, 575 (Bankr.E.D.Mo.1990).

29.     Here, Apache holds a contingent unsecured claim whereby its liability is contingent upon the use and performance of the FWE I assets to accomplish all legally required P&A, just like Zurich and the other Sureties.  Apache recognizes this position, as it announced in open court at the hearing to approve the Disclosure Statement that it is a Class 6B creditor with a partially liquidated and partially contingent claim.   Under the Plan, the Debtors are assuming the Decommissioning Agreement and presumably curing the *partially liquidated portion* of Apache's claim.  The contingent portion of Apache's claim is what is being addressed under the Apache Transaction.  Inarguably, Apache is a Class 6B creditor, but no other contingent creditor on the FWE I assets in Class 6B was offered or extended any similar opportunity as was given to Apache. The only parties the Debtors' negotiated with under the RSA are the FLFO/FLTL Lenders and Apache. The Apache Term Sheet was made part of the RSA and the Debtors obligated themselves to Apache to the exclusion of all other creditors that are similarly situated in violation of Section 1124(a)(4).

30.     The Apache Transaction grants Apache de-facto control through *numerous consent rights* over FWE I's operations and management that combine to give leverage and advantage well

beyond any right granted to Apache under the Decommissioning Agreement.   For example, Section 7 and Section 10 of the proposed FWE I LLC Agreement[18] grants Apache:

(a)     Veto rights over the selection and removal of the independent director of FWE I, who cannot be removed without Apache's consent [Section 7.02] (*not* in the DA);

(b)     Consent rights over removal of the sole manager of FWE I [Section 7.03] (*not* in the DA);

(c)     Consent and information rights for bids for service providers to conduct P&A operations [Section 7.04] (*expanded* from the DA);

(d)     Consent rights as to sales, fundamental business transactions, or Farm-ins [Section 7.06] (*expanded* from the DA);

(e)     Consent rights as to Farm-outs [Section 7.06] (*expanded* from the DA);

(f)     Right of first refusal and information rights for the funding of capital expenditures [Section 7.09];

(g)     Information rights as to annual financial statements, quarterly financial statements, monthly operating data, operating budget and "such other information regarding operations, business affairs and financial conditions" as Apache may reasonably request [Section 10.01];

(h)     Inspection rights [Section 10.01];

(i)     Consent rights with regard to any development activities, including those with positive or accretive investment profile [Section 7.06] (*not* in DA and more harmful to FWE I because Apache can now force accelerated decommissioning, whereas before, the Debtors could extend P&A requirements by continued incremental production); and

(j)     Incur indebtedness other than provided by Apache, even if such indebtedness is on more favorable terms or used for positive or accretive investment activities [Section 7.06].

(collectively, the "**Apache Consent Rights**").   Additionally, Apache has sole discretion to approve the selection and removal of P&A service providers. Any dispute as to the propriety of any action under the Decommissioning Agreement was previously subject to expert review, which is now

---

[18] See *Exhibit G-6* to the Disclosure Statement, as amended and/or restated by *Exhibit 1* to Plan Supplement [ECF No. 1394].

removed in favor of Apache's sole discretion.  Also, Apache is granted a security interest in the assets of FWE I as collateral for the Standby Credit Facility.  This Standby Credit Facility also adds a second layer of consent rights found in the FWE I LLC Agreement, so it suffers from the same defects.

31.     Apache has also managed to turn its P&A liability to the U.S. Government into a secured loan to FWE I and scoop up any remaining value in FWE I after the surety bonds related to FWE I are exhausted. The Plan does not provide the same Apache Consent Rights and security interests to Zurich or the other Sureties. Apache is exclusively given the right to turn their contingent liability into a security interest in FWE I.

32.     The entire Apache Transaction should be considered favorable treatment. Disparate treatment of this kind is exactly what Section 1123(a)(4) was enacted to prevent. *In re Energy Future Holdings Corp.*, 648 F. App'x 277, 283 (3d Cir. 2016)(discussing the bankruptcy court's obligation to ensure that creditors are treated equally and fairly even under a pre-confirmation settlement when the settlement affects the treatment of creditors in a bankruptcy).

**C.     The Plan Violates Sections 1123(a)(6) and (7) of the Code Because the Selection of and Powers Granted to the FWE I Sole Manager and Independent Director Are Not "Consistent With the Interests of Creditors".**

33.     The structure of the voting and management of FWE I are not consistent with the interests of all creditors, including Zurich, which is required by Sections 1123(a)(6) and (7) of the Code.  To ensure overall fairness, control of corporate governance and management must mirror the capital structure of the entity. Here the unsecured creditors are the stakeholders in FWE I and, based on the Debtors' valuation analysis, the Sureties' position in the FWE I capital structure is the fulcrum security, yet the Sureties have no ability to oversee or participate in management or operations.

34.      Sections 1123(a)(6) and (7) focus on fairness and equality amongst the parties involved in a debtor's restructuring. Specifically, Section 1123(a)(6) requires that a plan

> [P]rovide for the inclusion in the charter of the debtor, if the debtor is a corporation, or of any corporation referred to in paragraph (5)(B) or (5)(C) of this subsection, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends…

Section 1123(a)(7) requires that a plan:

> [C]ontain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee…

35.      Section "1123(a)(7) does not state whose public policy (federal, state or local) should not be violated by a plan of reorganization. However, absent advancement by the debtor of any compelling reason why the proposed corporate form must violate [state] corporation laws, this Court declines to confirm a plan which disregards [state] public policy as embodied in these corporations code sections." *In re Mahoney*, 80 B.R. 197, 201 (Bankr. S.D. Cal. 1987)(court holding that the public policy that was outlined in the requirements under the California corporate code was impermissibly violated by the proposed plan).

36.      Further, Section 1123(a)(7) should be read together with 1123(a)(6) because "these [two] provisions require that the court scrutinize any plan which alters voting rights or establishes management in connection with a plan of reorganization, whether or not the plan provides for the issuance of new securities." *In re Acequia, Inc.*, 787 F.2d 1352, 1361 (9th Cir. 1986). In *Acequia* the Ninth Circuit identified three relevant factors: "(1) the shareholders' interest in participating in the corporation, (2) the desire to preserve the debtor's reorganization, and (3) the overall fairness

ZURICH AMERICAN INSURANCE COMPANY'S (I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT - Page 20 of 57

ClarkHill\C2996\A80062\262944115.v7-6/2/21

of the provisions." *Id.* To ensure overall fairness, control of corporate governance and management must <u>mirror capital structure of the entity</u>. *In re Ahead Commc'ns Sys., Inc.* 395 B.R. 512, 518 (D. Conn. 2008). The parties whose money and interests are in jeopardy should have control. The stakes for ensuring fairness and equity are high. Indeed, "[t]he drafters of section 1123(a)(6) expressed concern with ensuring a 'fair and equitable reorganization,' which 'is literally the last chance to conserve for [the creditors'] values that corporate financial stress or insolvency have placed in jeopardy.'" *In re Ahead Commc'ns Sys., Inc.*, 395 B.R. 512, 517 (D. Conn. 2008) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 11 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5797).

37.     The standards for evaluating 11 U.S.C. §§ 1123(a)(6) and (a)(7) are flexible and consider the totality of the circumstances, including potential future results of the relevant provisions. The Ninth Circuit in *Acequia* recognized this reality and did not limit its analysis to the plain language of the operative documents. In that case, the chapter 11 plan provided for the debtor's two shareholders to retain their interests but precluded them from voting for or removing the directors or officers during the pendency of the plan. *Acequia, Inc.*, 787 F.2d at 1361. Looking beyond the plan's provisions, the court affirmed the plan's stripping of the shareholders' control rights based upon the shareholders' prior behavior as well as how the provisions would shape the debtor's future governance. *Id.* at 1362. In sum, the Ninth Circuit recognized that the plan provisions cannot be analyzed without context and the parties' relationship to the provisions is equally relevant.

38.     The Plan classifies both Apache and the Sureties as holders of General Unsecured Claims in Class 6B. The Apache Consent Rights create considerable leverage and control over FWE I at the expense of its other stakeholders in FWE I, particularly other Sureties. This contrast is amplified by the fact that both Apache and the Sureties will be contingent creditors of FWE I

ZURICH AMERICAN INSURANCE COMPANY'S (I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT - Page 21 of 57

ClarkHill\C2996\A80062\262944115.v7-6/2/21

following the divisive merger based on liabilities associated with the Legacy Apache Properties. Moreover, under the terms of the Standby Facility, FWE I must exhaust the Decommissioning Security (Trust A, the L/C and the surety bonds) prior to drawing on the Standby Facility. Given that FWE I is a liquidating entity, it is the Sureties, not just Apache, who should be represented in the corporate governance, management, and operations.

39. Based on the Debtors' valuation analysis, the Sureties' position in the FWE I capital structure as the fulcrum security cannot be disputed.[19]

[19] *See* Disclosure Statement, *Exhibit O* and corresponding footnotes [ECF No. 1285].
[20] [reserved].
[21] See *Exhibit 8*, bates #0045403 produced by Debtors.
[22] See *Exhibit 7*, p. 14.
[23] *Id.*

ZURICH AMERICAN INSURANCE COMPANY'S (I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT - Page 22 of 57

40.

As the fulcrum creditor, the Sureties are entitled to share in the governance and management of FWE I in a manner similar to the right granted to Apache.  Without equal treatment, confirmation must be denied its failure to satisfy Sections 1123(a)(6) and (7).

---

24

25 See Cheung Report, *Exhibit 7*, p. 13.

**D.** **The Treatment (or Lack Thereof) of the Zurich Bonds and Zurich GAI as Proposed by the Plan Violates Sections 1129(a)(1) and 1123(a)(5) of the Code and Is Contrary to Applicable Non-Bankruptcy Law.**

41.     The Plan does not fully describe what should happen to the Zurich Bonds and Zurich GAI.  The Plan also does not state which post-confirmation reorganized debtor maintains the obligations under these agreements under any "allocation."  Given the general discharge of debts and broad injunctions imposed under the Plan, it is imperative that the Plan describe its impact upon Zurich's agreements.  Zurich objects to the Plan under Sections 1129(a)(1) and 1123(a)(5) of the Code unless and until the treatment and effect of the Zurich Bonds and Zurich GIA is established in compliance with the Code and applicable non-bankruptcy law.

(1)     Vague Treatment of Zurich Under the Plan.

42.     The Plan and the Disclosure Statement are extremely vague and at times inconsistent as it relates to the Zurich Bonds and the Zurich GAI.  Numerous times throughout the Plan (including in the definition of Releasees) and the *Apache Term Sheet Implementation Agreement,* it is repeatedly maintained that nothing in the Plan shall be construed to "impair the Decommissioning Security or the Apache PSA Parties' ability to draw on the Decommissioning Security."[26]  However, the Plan states that all executory contracts are rejected unless specifically

---

[26] See Article X, Section 10.7 of the Plan regarding releases states:

> NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(b) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY, OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT.  FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING SECURITY ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE; AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

ECF No. 1284 (emphasis added)

assumed in the Plan Supplement (under the "**Assumed Contracts List**").  See Plan, Article VIII, Section 8.1.[27]  The Assumed Contracts List states that Decommissioning Agreement is to be assumed and allocated to FWE I.  The Zurich Bonds and Zurich GAI are not listed in the Assumed Contracts List.  Thus, these contracts are ostensibly to be rejected and breached by the Debtors.[28] This is inconsistent given the essential nature of the Plan that aims to protect and maintain the Decommissioning Security.

  (2) <u>The Zurich Bonds and GAI Are Executory Contracts That Cannot Be Assumed Without Zurich's Consent</u>.

  43. Surety bonds, including the Zurich Bonds, are executory contracts that cannot be assumed without consent.  Under Fifth Circuit precedent, a contract is executory if "performance remains due to some extent on both sides" and if "at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party." *RPD Holdings, L.L.C v. Tech Pharmacy Servs (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 851 (5th Cir. 2018).  The inquiry is thus, "whether both sides [] owed additional performance under the [contract] and whether any party's failure to perform would constitute a material breach excusing the other side's performance." *Id.* at 852.  Several courts have held that the tripartite relationship of a surety agreement (the bonds and the indemnity agreement) constitute an executory contract. [29]

---

[27] Debtors' Plan Supplement was filed on May 27,2021 at ECF. No. 1394.

[28] See Plan, Article VIII, Section 8.1 deems a rejection of the Zurich Bonds and GIA, which results in material a breach.  As established in Part III(C) above, the Zurich Bonds and GIA are also non-assumable executory contracts.

[29] A principal's performance obligations under both the bonded obligation as well as the indemnification agreement, including the duty to indemnify and pay premium, to constitute remaining performance obligations within the meaning of an executory contract.  *In re Evans Prod. Co.*, 91 B.R. 1003, 1005 (Bankr. S.D. Fla. 1988).  A surety's obligations to assure the principal's payment or performance related to the bonded obligation similarly constitute remaining performance obligations.  *Id.*; *see Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985) (contingency of indemnification does not prevent a contract from being executory).

44.     Surety bonds are also non-assumable financial accommodations under the Code. *See* 11 U.S.C. § 365(c)(2); *In re Wegner Farms*, 49 B.R. 440 (N.D. Iowa 1985)(holding that a bond is a financial accommodation that cannot be assumed by the debtor); *In re Edwards Mobile Home Sales, Inc*., 119 B.R. 857 (Bankr. M.D. Fla. 1990)(court's analysis discussing surety bond falling within the definition of financial accommodation). Surety bonds are directly based upon the financial strength of the debtor and obligate the surety "to make good on certain financial liabilities of the debtor in the event the debtor does not or cannot pay."   *Wegner Farms v. Merchants Bonding Co. (In re Wegner Farms Co.),* 49 B.R. 440, 444 (Bankr. D. Iowa 1985); *c.f. Gov't Nat'l Mort. Corp. v. Adana Mort. Bankers, Inc. (In re Adana Mort. Bankers, Inc.)*, 12 B.R. 977, 987 (Bankr. N.D. Ga. 1980) ("[t]he obligation to pay money on the obligation of another is a financial accommodation"). Although Section 365(c)(2) does not implicitly state that the financial accommodation can be assumed with consent of the contract counterparty, it is consistent with the definition of the financial accommodation as more in the nature of a credit transaction that the Debtor can continue the bond if it meets the standards of Section 364 of the Code.[30]

(3)     Assumption of the Decommissioning Agreement between Debtors and Apache Necessarily Means That All Integrated Agreements and Obligations Thereunder Survive Under the Plan.

45.     The Debtors are assuming its Decommissioning Agreement with Apache, which necessarily means that the Debtors' obligations set forth in this integrated transaction continue to exist post-confirmation as obligations of FWE I.  This includes the Zurich GAI and the Deutsche Bank Continuing Agreement.

---

[30] *See Transamerica Commercial Fin. Corp. v. Citibank, N.A. (In re Sun Runner Marine, Inc.)*, 945 F.2d 1089, 1093 (9th Cir. 1991) (proper method to continue a financial accommodation is to use Section 364 of the Code).

46.     In this jurisdiction, "it is well established that as a general proposition an executory contract must be assumed or rejected in its entirety."  *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 197 Fed. Appx. 285, 288 (5th Cir 2006)(citing *Stewart Title Guar. Co., v. Old Republic Nat'l Title Ins. Co*., 83 F.3d 735, 741 (5th Cir. 1996) (internal quotation marks omitted). This includes all agreements that were created relating to the same subject matter and that were executed at substantially the same time.  As explained by the Fifth Circuit in *Safer v. Nelson Financial Group, Inc.*, 422 F.3d 289, 296 (5th Cir. 2005)(specifically addressing an arbitration clause):

> This court has repeatedly found that when agreements are interdependent and exist to further a single goal, an arbitration clause in one of the agreements "reach[es] all aspects of the parties' relationship," including disputes that might arise out of the other agreement. *Neal [v. Hardee's Food Systems, Inc.]*, 918 F.2d [34,] 37–38 [5th Cir. 1990]; *see also [Personal Sec. & Safety Systems Inc. v.] Motorola [Inc.]*, 297 F.3d [388,] 392–95 [5th Cir. 2002]. In determining whether two agreements are related, "it is well-settled law that several writings executed by the same parties substantially at the same time and relating to the same subject-matter may be read together as forming parts of one transaction." *Bailey v. Hannibal & St. J. R.R. Co*., 84 U.S. (17 Wall.) 96, 108, 21 L.Ed. 611 (1872); *see also Neal*, 918 F.2d at 37 ("[u]nder general principles of contract law, separate agreements executed contemporaneously by the same parties, for the same purposes, and part of the same transaction, are to be construed together."); *Richland Plantation Co. v. Justiss–Mears Oil Co., Inc.*, 671 F.2d 154, 156 (5th Cir.1982) ("When several documents represent one agreement, all must be construed together in an attempt to discern the intent of the parties, reconciling apparently conflicting provisions and attempting to give effect to all of them, if possible.").

47.     Here, there is no question that the Decommissioning Security provided to Apache through the Decommissioning Agreement, including the Debtors' reliance on the L/Cs and Sureties' bonds, are an essential piece of the overall transaction.  The Debtors contracted with Zurich to issue performance bonds that would cover the claims of the bonds' obligee, Deutsche Bank, who, in turn, issued the L/Cs to Apache to satisfy Debtors' obligations under the Decommissioning Agreement.  In exchange, Debtors agreed to indemnify Zurich for claims on the

Zurich Bonds through the Zurich GAI and to indemnify Deutsche Bank through the Deutsche Bank Continuing Agreement.   The L/Cs and the Zurich Bonds would not exist but for the Decommissioning Agreement and are vital to its overall operation.   The Plan contemplates that one piece of the Decommissioning Security is maintained - Trust A; but it is silent as to the interrelated obligations regarding the L/Cs, the direct bonds issued by Everest and Philadelphia, and the Zurich Bonds and Zurich GAI.

48.      Only one section (comprising seven pages) of the Decommissioning Agreement, as amended, is devoted to the Debtors' P&A obligations.   The next four sections (comprising twenty pages) is devoted to creating, protecting, replacing, maintaining and drawing upon the Decommissioning Security, which includes Trust A, the original Trust B (since deleted), Letters of Credit, Mortgages and/or direct surety bonds (Fifth Amendment).   As exhibits, the form of the Letter of Credit is proscribed, as are the direct bonds.   The *Apache Term Sheet Implementation Agreement* states:

> …[T]he Apache PSA Parties shall be deemed a releasing party (as defined by the Plan) only to the extent such releases do not impair the Decommissioning Security, or Apache's ability to draw on the Decommissioning Security in any respect.   For the avoidance of doubt, any and all claims the Apache PSA Parties may have against FWE I related to the Decommissioning Agreement arising post-Effective Date and any security obtained, provided, pledged in connection with the Decommissioning Agreement (the "**Decommissioning Security**") will be preserved.[31]

This preservation of the Decommissioning Security is recited in numerous parts of the global Plan transaction, included the release provisions of the Plan [ECF No. 1284] and the Apache Term Sheet [ECF No. 1285, pp. 607, 618, 621, 625].   Based upon the Debtors' own proposed documents, which were approved by and in perhaps some instances written by Apache, the Debtor should be estopped to argue that preservation of the Decommission Security is not a central element of the

---

[31] See Second Amended Apache Term Sheet Implementation Agreement.  ECF No.1365, p16.

Apache Transaction.  All obligations of Debtors related to those integrated agreements must be maintained in full force and effect upon the assumption of the Decommissioning Agreement.  The Debtors must not be allowed to slice and dice the Decommissioning Agreement and accept its benefits and only some burdens.  It must assume the entire integrated transaction, including the essential pieces that comply with the Plans mandate of not impairing the Decommissioning Security or the Apache PSA Parties' ability to draw on the Decommissioning Security.

49.     Part of the assumption of any contract, including the multiple contracts that form a fully integrated transaction like the Decommissioning Agreement, is the cure of outstanding defaults.  11 U.S.C. Section 365(b)(1).  Under the Zurich Bonds and the Zurich GAI, Zurich has incurred payable losses and expenses totaling $10,115,099.36, plus continually accruing legal fees and costs.

50.     Zurich objects to the assumption of the integrated Decommissioning Agreement unless and until Debtors (i) cure all defaults under the Zurich Bonds and Zurich GAI and (ii) provide adequate assurance of future performance.

(4)     <u>Zurich's Property Rights in the Zurich Bonds and Zurich GAI Continue to Exist Regardless of Any Assumption of the Decommissioning Agreement or Rejection of the Zurich Bonds and Zurich GAI</u>.

51.     Regardless of the status of the Decommissioning Agreement in subpart (3) above, the Zurich Bonds and Zurich GIA must be construed as a single integrated agreement and the bundle of rights created thereby should continue to exist, regardless of whether these agreements may be "rejected" or "something else" under the Plan.

52.     If the Decommissioning Agreement is construed to not include preservation of all of the Decommissioning Security, and the thus rejection occurs, the question remains:  what is to become of Zurich's rights under the Plan?  Unquestionably, the Zurich Bonds and Zurich GAI are

ZURICH AMERICAN INSURANCE COMPANY'S (I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT - Page 29 of 57

ClarkHill\C2996\A80062\262944115.v7-6/2/21

a single integrated agreement.  See *Great Am. Indem. Co. v. Beverly*, 150 F. Supp. 134, 136 (M.D. Ga. 1956) (holding that bond and indemnity agreement "were obviously intended as, and constituted a part of, the same transaction and must be construed together").[32]  It is well established that rejection under the Section 365 is merely the Debtors' permitted pre-petition breach of the rejected contract.  *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1657 (2019). The Debtor is excused from performance.  *Id.* at 1658.  Any damage claim resulting from the Debtors' breach of a pre-petition contract becomes a pre-petition claim under the Plan.  *Id.* However, the contract is not terminated, but rather continues in existence.  *In re Texas Wyoming Drilling, Inc.*, 486 B.R. 746, 757 (Bankr. N.D. Tex. 2013)(discussing that an agreement is not terminated under Section 365, and the rights that parties would have under that contract outside of bankruptcy are not abrogated); *see also Matter of Austin Dev. Co.*, 19 F.3d 1077, 1083 (5th Cir. 1994) (stating that termination does not result from rejection of an agreement). This is especially the case for a contract where there are multiple parties.  *In re Paragon Offshore PLC*, 588 B.R. 735, 749 (Bankr. D. Del. 2018) (stating that the rejection of an executory contract is only a breach, and the "terms of the contract still control the relationships of the parties" in relation to an arbitration provision).

53.    It is evident that the Zurich Bonds and Zurich GAI are not terminated.  The contracts survive not only as to the non-Debtor parties (Zurich and Deutsche Bank), but the established rights and defenses thereunder remain as well.  Preserving these rights is not an esoteric issue because its import can be limited by various portions of the Plan.[33]  The case law surrounding

---

[32] See also, *See In re Falcon V, L.L.C.*, 620 B.R. 256, 264 (Bankr. M.D. La. 2020) (explaining that "the Indemnity Agreement and bond must be construed together," following the Fifth Circuit in *Safer*, 422 F.3d at 296, although Zurich disagrees with many other aspects of the *Falcon* opinion).

[33] *Id.* at 268 (holding that the surety, who mistakenly assumed the import of the plan, "did not object to confirmation, challenge or clarify the plan's provisions for its claims, move for new trial or appeal the order confirming the plan . . . Thus, [the surety] is bound by the confirmed plan.") (citations omitted)

what happens to rejected contracts is long, contested, and the subject of numerous scholarly analyses.[34]  What is clear from the Countryman line of reasoning through to today, though, is that rejected contracts are not terminated and the Code cannot simply "vaporize" established property rights created under state law.[35]  The consensus is that, with respect to rejection rights of the contract counterparty, state law shall define those rights and its remedy, including specific performance against rejecting Debtors where the context requires it.[36]

54.     This Court does not need to define, determine, limit, or expand the rights of Zurich and the other parties to the Zurich Bonds, Zurich GAI, L/Cs, and all related agreements or any rights or defenses that exist under common law, including suretyship law, guaranty law or any other recognized "bundle of rights" that comprise the suretyship relationship (exoneration, indemnity, equitable subrogation).[37]  Zurich's objection to the Plan in this regard can be resolved by a clarification expressly (i) preserving these defined property rights created and enforceable under state law, and (ii) stating that these rights are not intentionally or unintentionally expunged, eliminated, curtailed, or superseded by express language in the Plan.  The Plan may only define the intention of the Debtors' rejection of any contract or contracts and any ensuing claim of the

---

[34] See Countryman, *Executory Contracts in Bankruptcy*, 57 Minn.L.Rev. 439 (1973) and its progeny, including: Andrew, *Executory Contracts in Bankruptcy:  Understanding Rejection*, 50 Colo. L.Rev. 845 (1988); Westbrook, *A Functional Analysis of Executory Contracts*, 74 Minn..L. Rev. 227 (1989); Westbrook and White, *The Demystification of Contracts in Bankruptcy*, 91 Am.Bankr. L.J. 481 (2017); and Pottow, *A New Approach to Executory Contracts*, 96 Tex.L.Rev 1437 (2018).

[35] Westbrook, *Demystification*, 91 Am.Bankr.L.J. at 18 (state law defines contract rights); *In re DeVries*, 2014 WL 4294540, *12-13, (Bankr. N.D. Tex. 2014)(in LLC context, state law defines rights of contract counterparty); Pottow, *A New Approach to Executory Contracts*, 96 Tex.L.Rev. at 8 (citing *Sunbeam Prods. v. Chi. Am. Mfg., LLC*, 686 F3d 372, 377 (7th Cir. 2012)(even abandonment by the Debtor does not "vaporize" a contract counterparties' right in a contract).  Further, in this case, there is little difference between an executory contract that is rejected or cannot be assumed with a non-executory contract that survives bankruptcy, but is merely abandoned under Section 554 of the Code.  The result is the same.

[36] Westbrook, *Demystification*, 91 Am.Bankr.L.J. at 536, Appendix of case analyses (for example, a right of first refusal by non-Debtor members of an LLC should be enforced against a rejecting Debtor because it would be inequitable and violate state law to eliminate this vital contract right).

[37] See Section III.(B) above

ZURICH AMERICAN INSURANCE COMPANY'S (I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT - Page 31 of 57

ClarkHill\C2996\A80062\262944115.v7-6/2/21

contract counterparties to any may have under the Plan or the estate.  The scope of retained property right, however, should expressly preserved to be decided in another forum with competent jurisdiction when a dispute becomes ripe.

        (5)    <u>Common Law Rights Extend Beyond Confirmation Because the Zurich Bonds are Retained</u>.

55.     Finally, even if the Court concludes that the contract indemnity claims under the Zurich GAI may be discharged, the allocation of the Decommissioning Agreement (which includes the Decommissioning Security, L/Cs and the Zurich Bonds) to FWE I means that the indemnifications rights of Zurich under the common law survive.  In *Am. S. Ins. Co. v. DLM, LLC*, CV GLR-16-3628, 2017 WL 2930464 at *5-6 (D. Md. 2017), the District Court ruled that, although the debtor discharged its contract indemnity obligations through its confirmed plan, the common law rights of indemnity and subrogation continued post-plan because the surety bonds in that case were maintained.   See also, *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 680-81 (5th Cir. 2011) (recognizing surety's common law indemnification rights arise from bond under Texas law).  Therefore, regardless of whether the scenario under subparts (2) and (3) above prevail, the common law rights of exoneration, indemnity, and subrogation extend to Zurich and the other Sureties post-confirmation.

**E.**    <u>**The Plan Is Not Proposed In Good Faith and Does Not Comply with Applicable Law as Required in Section 1129(a)(3) of the Code.**</u>

56.     This Plan is not proposed in good faith.  Section 1129(a)(3) provides that a plan of reorganization must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The term good faith is undefined but "[i]n the context of a Chapter 11 reorganization ... a plan is considered proposed in good faith 'if there is a reasonable likelihood that the Plan will achieve a result consistent with the standards prescribed under the Code.'" *Hanson v. First Bank*

*of South Dakota*, 828 F.2d 1310, 1315 (8th Cir.1987) (quoting *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr.S.D.N.Y.1984)); accord *Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84 B.R. 167, 172 (Bankr. 9th Cir.1988). Notably, "[t]he bankruptcy judge is in the best position to assess the good faith of the parties' proposals." *Jasik v. Conrad (In re Jasik)*, 727 F.2d 1379, 1383 (5th Cir.1984). Within the Fifth Circuit, "good faith [should] be determined 'in light of the totality of the circumstances surrounding establishment of [the] plan.'" *In re Star Ambulance Serv., LLC*, 540 B.R. 251, 262 (Bankr. S.D. Tex. 2015) (citing *In re Village at Camp Bowie I, L.P.*, 710 F.3d 239, 247 (5th Cir.2013)).

57.     Pursuant to the Bankruptcy Code and court interpretations, "two of the primary objectives underlying a chapter 11 bankruptcy [are] the resolution of disputed claims and distribution of value to creditors." *In re Think Fin., LLC*, No. 17-33964 (HDH), 2019 WL 8272638, at *6 (Bankr. N.D. Tex. Dec. 2, 2019); see also *In re Kemp*, 134 B.R. 413, 415 (Bankr. E.D. Cal. 1991). Accordingly, "one of the primary objectives of the bankruptcy process is to pay claims as much as possible." *In re Bigler, LP*, 443 B.R. 101, 115 (Bankr. S.D. Tex. 2010). It follows from the primary objective that "the failure of a debtor to use the *full reach of its disposable resources to repay creditors* is evidence that a plan is not proposed in good faith because such conduct frustrates this objective." *In re Walker*, 165 B.R. 994, 1001 (E.D. Va. 1994)(emphasis added).

(1)     The Plan Does Not Maximize Value and Reduce Expenses for FWE I.

58.     Under the circumstances discussed above, the Plan is not proposed in good faith and the Debtors cannot demonstrate that they acted with "honesty and good intentions" when entering into the RSA and the Apache Term Sheet.  The Plan's results will not be consistent with the Code's goal of ratable distribution to creditors. As explained below, instead of seeking to increase the potential distribution to creditors by selling all or part of the Legacy Apache Assets,

ZURICH AMERICAN INSURANCE COMPANY'S (I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT - Page 33 of 57

ClarkHill\C2996\A80062\262944115.v7-6/2/21

the Debtors permit FWE I and Apache to draw down on the Sureties' Bonds and drain the financial resources of those creditors that it is obliged to protect. The Debtors made no attempt to market and sell the Legacy Apache Assets; which may have considerable value that would benefit the Debtors' bankruptcy estate.

59.

60.     If there is substantial value in the assets that would be realized with the capital expenditures included in the Debtors reserve data base produced by Debtors, the Plan's structure for FWE I will transfer that value to Apache even though the Sureties will contribute substantial

---

[38] See *Exhibit 7*, p.8.
[39] See Disclosure Statement at *Exhibit O*.
[40] See *Exhibit 7*, p. 14.

money to the decommissioning of assets prior to Apache's liability horizon.  In addition, this Plan does not contemplate reducing expenses for FWE I, but instead layers on additional expenses related to the TSA between FWE I and Credit Bid Purchaser, a Sole Manager for FWE I, an Independent Director, and ongoing reimbursement for all of Apache's time and expenses.

     (2)    <u>The Plan is Proposed in Bad Faith Because the Plan With Respect to FWE I is Designed to Serve the Interests of One Contingent Unsecured Creditor – Apache</u>.

61.     The Plan is proposed in bad faith because the Apache Implementation Term Sheet, upon which the Plan is based, is designed to allow Apache to retain any residual value in FWE I at the expense of the other creditors of the Debtors' bankruptcy estate.  As demonstrated in numerous sections above, the Plan is built on the subterfuge that FWE I will assume the Decommissioning Agreement with Apache; but Apache, in order to obtain favorable treatment unavailable to similarly situated creditors, is making the Debtor an illusory loan (to fund costs Apache would otherwise have to pay) so the Debtor can "cure" the defaults under the Decommissioning Agreement. Also, Apache is waving the requirement that FWE I provide adequate assurance that FWE I can perform under the agreement. Rather, the Debtor's own projections demonstrate that FWE I cannot perform under the agreement.

     (3)    <u>Apache, Unlike Other Unsecured Creditors, Will Have Its Expenses Reimbursed by FWE I and There is No Supervision of Operations or Accountability to Other Creditors</u>.

62.     As if it were not already afforded excessively favorable treatment under the Plan's grant of the Apache Consent Rights, Apache also will have every conceivable expense it incurs associated with monitoring and participating in the operations reimbursed by FWE I.  The language in the FWE I LLC Agreement where Apache's expenses are reimbursed is so astonishing that it must be revealed in full:

**Section 12.01 Expenses.** Except as otherwise expressly provided herein, in the Restructuring Support Agreement, or in the Confirmation Order, all costs and expenses, including fees and disbursements of counsel, financial advisors, and accountants, incurred in connection with the preparation and execution of this Agreement, or any amendment or waiver hereof, and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses. In addition to the immediately preceding sentence and the payment or reimbursement to Apache and its Affiliates for the costs and expenses of performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties as provided in the final paragraph of Section 7.06, from time to time as Apache evaluates any matter specified in Section 7.06 for which its consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, the Company shall reimburse Apache for all costs and expenses incurred in connection therewith, with such reimbursement to be made regardless of whether Apache consents to such matter or provides an Acceptance Notice, Rejection Notice, or Information Notice to the Company with respect to such proposal. Apache's costs shall include, without limitation, third-party costs and the reimbursable costs of compensation and benefits of employees of Apache and its Affiliates who devote productive time to evaluating any matter specified in Section 7.06 for which the consent of Apache is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, which costs shall be determined in good faith by Apache based on the time spent by such employees in conducting such evaluation. The reimbursement to be made pursuant to the immediately preceding sentences shall be made within 30 days of the Company's receipt of a statement from Apache specifying the costs to be so reimbursed.[41]

This treatment is better than any fully secured creditor could hope to receive, yet it is afforded to Apache as a contingent unsecured creditor. There is no limit, scope, or cap upon which Apache may charge against FWE I. There is no oversight by creditors as to the propriety of these reimbursed expenses and no opportunity to challenge such expenses, as is the case with most liquidating trusts. Yet, it is the Sureties who ultimately bear the responsibility for paying Apache's expenses.

---

[41] See Plan Supplement dated May 26, 2021, *Exhibit 1*, Section 12.01 Expenses, p. 44 [ECF No. 1394].

ZURICH AMERICAN INSURANCE COMPANY'S (I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT - Page 36 of 57

ClarkHill\C2996\A80062\262944115.v7-6/2/21

(4)     The Purpose of FWE I is Limited Solely to P&A, Not to Maximize Value for
        Creditors.

63.     Likewise, the structure of FWE I and its intended purpose is solely to complete

P&A.  While this purpose understandably is a part of its function, the Debtors fail to also include

in its structure the ability to maximize the value of the assets to increase its value to be able to

satisfy a larger P&A amount.  Zurich and the other Sureties have been willing to assist with capital

expenditures that would be accretive in value to FWE I, but without any leverage or control, that

increase is frustrated.

(5)     The Credit Bid Purchaser is the Only Party That Can Propose New Projects Other
        Than the Sole Manager.

64.     Further, under the Plan, Credit Bid Purchaser is the only party provided the right to

propose new projects to FWE I through the Farmout Agreement.  The Farmout Agreement contains

non-standard provisions whereby FWE I will assume all costs of P&A, yet only splits net profits

*after* the costs to the Creditor Bid Purchaser are recovered.  This is a risk-free proposition for the

Credit Bid Purchaser. Zurich and the other Sureties have an interest in the proper operation and

management of the Legacy Apache Assets, which should include the right to fund future projects

that solely benefit FWE I. Thus, the Debtors failure to seek to utilize the assets profitable and under

standard industry terms is a disregard of good faith and for the primary objective of prioritizing

payment to creditors.

**F.      The Plan Violates Section 1129(a)(11) of the Code Because It is Not Feasible as to
         FWE I.**

(1)     Applicable Standard.

65.     The Plan, as least with respect to FWE I is not feasible.  The feasibility requirement

is codified in § 1129(a)(11) of the Bankruptcy Code, which requires that "confirmation of the plan

is not likely to be followed by the liquidation, or the need for further financial reorganization, of

the debtor." 11 U.S.C. § 1129(a)(11); *In re Save Our Springs (S.O.S.) Alliance Inc.*, 632 F.3d 168, 172 (5th Cir.2011). As with all requirements under Section 1129(a), the Debtor must prove the feasibility by the preponderance of the evidence. *In re Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012), aff'd, 526 B.R. 515 (D. Del. 2014).

66.     The feasibility requirement concerns whether the debtor can realistically carry out its plan. See *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506 (Bankr.S.D.Tex.1989). In determining plan feasibility, bankruptcy courts have often examined the following factors: (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *In re M & S Associates, Ltd.*, 138 B.R. 845, 849 (Bankr.W.D.Tex.1992). Generally, the most important factor for the Court to consider is that "the debtor must provide the bankruptcy court with an estimate of its future earning capacity." *In re Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012), aff'd, 526 B.R. 515 (D. Del. 2014). However, there is no requirement that the Court consider all six of these factors. *In re LMR, LLC*, 496 B.R. 410, 437 (Bankr. W.D. Tex. 2013).

67.     Though a guarantee of success is not required, the bankruptcy court should be satisfied that the reorganized debtor can stand on its own two feet. See *Lakeside Global*, 116 B.R. at 506, fn. 19 (citing *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 378 (1988)). Speculative, conjectural, or unrealistic projections by a debtor cannot support a debtor's prediction of future performance. *Save Our Springs*, 632 F.3d at 172; *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 579 (5th Cir.1991). When analyzing the feasibility of a plan, courts will look into the future to ascertain the likelihood of success. For instance, at least one

ZURICH AMERICAN INSURANCE COMPANY'S (I) OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) LIMITED OBJECTION TO ASSUMPTION OF DECOMMISSIONING AGREEMENT - Page 38 of 57

ClarkHill\C2996\A80062\262944115.v7-6/2/21

court has looked out as far as five years to determine that a plan is not feasible because there is not a continuing earning capacity. *In re Quigley Co., Inc.*, 437 B.R. 102, 142 (Bankr. S.D.N.Y. 2010) (determining that a plan is not feasible because the debtor failed to show that it has sufficient business to continue operating for five years).

68.     Further, even a plan of liquidation must be feasible in that it must have a realistic and workable framework. For instance, when a liquidation plan hinges on the successful actions of third parties when the success is possible, but not reasonably likely, the plan is not feasible and cannot be confirmed. *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) (determining that a plan of liquidation is not feasible when its funding relied on ongoing civil litigation). Finally, a plan's violation of applicable law can affect its feasibility under Section 1129(a)(11). As noted by the Western District of Texas Bankruptcy Court "the legal consequences which might flow from the implementation of a substantive provision which is prohibited by law could affect the plan's feasibility …" *In re Food City, Inc.*, 110 B.R. 808, 812 (Bankr. W.D. Tex. 1990).

(2)     <u>The Plan is Not Feasible Regarding FWE I.</u>

69.

70.     Accordingly, the Plan is not feasible and cannot be approved under Section 1129(a)(11) because the Debtors have inadequate capital and earning potential to satisfy their regulatory obligations and operating expenses.

**G.    All Third-Party Exculpations Are Improper and Constitute Impermissible, Non-Consensual Third-Party Releases.**

71.     The Plan improperly extends overly-broad exculpation coverage to myriad parties that should be denied.  If approved by this Court for other reasons, then Zurich should at least be permitted to opt out of the exculpations as is customary for non-consensual third-party releases under Section 524(e) of the Code.  The effect of the exculpations in this case go far beyond what can be afforded under Sections 105(a) and 1123(a)(6) Code, the authority relied upon by many debtors and some courts in recent cases to justify broad third-party exculpations.

72.     The exculpation provisions proposed in *Article X*, Section 10.8 of the Plan state as follows:

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE APACHE

---

[42] See para. 59, infra.

DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

These provisions apply to a broad range of parties, including, the Debtors, the Post-Effective Date

Debtors, all secured lenders, *the Apache PSA Parties*, and each of their respective affiliates,

predecessors, successors, and assigns:

*Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Agents, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) Credit Bid Purchaser and all of its subsidiaries (including the Credit Bid Purchaser), (l) the Exit Facility Agents, (m) the Exit Facility Lenders, (n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) *the Apache PSA Parties*, and (q) with respect to each of the foregoing Persons in clauses (a) through (p) each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their

capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.[43]

73.     *Article X,* Section 10.9 of the Plan states that parties are permanently enjoined from pursuing any claims released or exculpated by the Plan or the confirmation.   However, no party may opt out of the broad exculpations like they are afforded the right to do for the third-party releases.[44]

74.     Similar exculpation clauses have come under fire from the United States Trustee ("**UST**") in several cases across the nation in recent months.  See *In re Southern Foods Group, LLC*, Case No 19-36313 (DRJ)(Bankr. S.D. Tex. March 4, 2021)[ECF No. 3512], *In re Diamond Offshore Drilling, Inc., et al,* Case No. 20-32307 (DRJ) (Bankr. S.D. Tex. March 30, 2021)[ECF No. 1176].  The argument made by the UST is that, under controlling Fifth Circuit law, a chapter 11 plan may only exculpate a creditors committee and its members. See *Pac. Bank of New York Trust Company, N.A. v. Official Committee of Unsecured Creditors (In re Pac. Lumber Co.)*, 584 F.3d 229, 252-53 (5th Cir. 2009); see also *In re Patriot Place, Ltd*., 486 B.R. 773, 823-24 (Bankr. W.D. Tex. 2013) (applying *Pac. Lumber* and concluding that "that the Non–Debtor Releases/Exculpations proposed in the [plan were] vague, overbroad, and [did] not comply with Fifth Circuit precedent and the Bankruptcy Code").

75.     Recently, many debtors have alternatively argued, and other courts have found, that Section 524(e) has a more limited scope and does not operate to restrict most exculpation provisions sought by Debtors and the various parties.  See *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1082-84 (9th Cir. 2020), cert. denied 2021 WL 666497 (Feb. 22, 2021); see also, briefing of Debtors in *Southern Foods Group, LLC*, Case No. 1936313 at Docket No. 3555, 60-69 (string cite

---

[43] *See* Debtors' Plan, *Art. I. 1.1*, "**Exculpated Parties**" (emphasis added).
[44] See *Article I*, 1.1, **Releasing Parties**, excludes parties opting out of the "releases" as Releasing Parties but specifically omits reference to parties exculpated by the Plan.

of cases).[45]  In *Blixseth*, the Ninth Circuit focused on the fact that exculpations should be narrow in scope and time and, properly understood, merely set the standard for liability for such acts or omissions that may have occurred (usually limiting them to willful misconduct and/or gross negligence). 961 F.3d at 1081; see also *PWS Holding Corp.*, 228 F3d 224, 246 (3rd Cir. 2000)(discussion of exculpation provisions).

76.     Regardless of the outcome in this dispute on a national scale, this Court is bound by the Fifth Circuit's precedent which emphatically states that exculpation is simply a release.  See *Pacific Lumber*, 584 F.3d at 240 (using exculpation and release interchangeably).  Crafting exculpations to simply mean the standard of liability that is imposed misses the point – any curtailment of claims by third parties against other third parties is an impermissible release.

77.     In *In re Southern Foods Group, LLC*, Case No 19-36313 (DRJ), the Court considered and overruled the objection by the UST related to the scope of the exculpation provisions.  Nevertheless, the Plan in that case gave creditors the opportunity to opt-out of the broad exculpation provisions.  See *Southern Foods*, Dkt. No. 3400, p. 19 (providing opportunity to "Opt Out of the Release, Exculpation, and Injunction Provisions Set Forth in Article IX of the Plan.").  In *In re Diamond Offshore Drilling, Inc., et al,* , Case No. 20-32307 (DRJ), the UST also objected to the overly-broad nature of the exculpation, noting that there no opportunity to opt out, as there was in *Southern Foods*.  The Court again overruled the objection because no other party besides UST had objected to the exculpation provisions and thus, there was no harm that should be addressed by the UST's objection.[46]

---

[45] This Court has also approved third-party exculpation clauses in recent cases as well.  See *In re Alta Mesa Res. Inc.*, Case No 19-35133 (Bankr. S.D. Tex May 27, 2020); *In re Weatherly Oil & Gas, LLC*, Case No. 19-31087 (Bankr. S.D. Tex. Aug. 15, 2019).
[46] See ECF No. 1231 in *Diamond Offshore*. This ruling is currently on appeal by the UST.

78.     The import of these recent decision from this District are clear:  the Debtor must afford parties the chance to opt out of the exculpation provisions of the Plan, similar to third-party releases that extend beyond the scope of *Pacific Lumber*.  Here, voting parties have the opportunity under the approved Ballots to opt out of the releases, but not the exculpations.  The exculpations in this case, especially as it relates to the Apache PSA Parties and Sureties, including Zurich, are more harmful that those found in other cases.  As this Court is aware, the Sureties have argued that the Apache PSA parties very act of negotiating for and executing the Apache Definitive documents with FWE I, if approved by the Court, *creates* a viable defense to payment under the applicable surety bonds and L/Cs.  The Debtors subsequently commenced Adversary Case No. 21-03418 with this Court in order seek a declaratory judgment as to the state law effects between Apache and the Sureties resulting from the Debtors deal with Apache.  Thus, the exculpation may have the intended or unintended effect of *releasing* the Apache PSA Parties from these state law defenses. In this case, the exculpation has the very effect prohibited under Section 524(e) – a non-consensual third-party release.  Just as Zurich is permitted to opt out of the third-party releases, it must be granted the same opportunity to opt out of the exculpations.  The current national dispute as to the effect of exculpations and their limits under section 524(e) is inapplicable.  The exculpations afforded to Apache, and perhaps others, in the Plan should not be approved under the Ninth Circuit's *Blixseth* reasoning or under Section 105(a) and section 1123(a)(6) for any reason, as they have the effect of third-party release.

79.     Zurich objects to the Plan in this regard and if permitted by the Court to opt out of the exculpations, hereby does opt out regardless of the form of Ballot it received from Debtors.[47]

---

[47] Zurich does object to the exculpations as they relate to the Committee and its professionals, but only as to all other parties identified by the Plan.

## V.
## JOINDER

80.     To the extent not contradicted by the arguments contained herein, Zurich also joins

in to the arguments and authorities in the objections set forth by all other sureties and filed with

this Court in response to the issues that are similar to Zurich.

## VI.
## RESERVATION OF RIGHTS

81.     Discovery is ongoing in this case, by agreement, and thus, Zurich reserves its right

to assert such additional and further objections to confirmation of the Plan to the extent they are

revealed in discovery, raised by other parties and/or the result of oppositional briefing by opposing

parties, including the Debtors, any of the Debtors lenders, the Committee and/or Apache.  To the

extent Zurich is impacted in any way by the contents of any supplements or amendments to the

Plan (including the Plan Supplement, any revised Valuation Analysis, any revised Liquidation

Analysis, and revised Financial Projections) or that may arise as a result of continued discover in

this case that is scheduled to occur or does occur after the Objection Deadline, Zurich reserves its

right to object thereto on any basis whatsoever.

## VII.
## CONCLUSION

WHEREFORE, Zurich prays that this Court (i) sustain this Objection; (ii) deny

confirmation of the Plan; and (iii) grant Zurich such other and further relief to which it may be

justly entitled.

Dated: June 2, 2021

Respectfully,

*/s/ Duane J. Brescia*

Duane J. Brescia
Stephen A. Roberts
**CLARK HILL**
720 Brazos, Suite 700
Austin, TX 78701
(512) 499-3647 (direct)
(512) 499-3660 (fax)
dbrescia@clarkhill.com
sroberts@clarkhill.com

Christopher R. Ward
Audrey L. Hornisher
**CLARK HILL, PLC**
901 Main Street, Suite 6000
Dallas, TX 75202
(214) 651-2056 (direct)
(214) 651-4330 (fax)
cward@clarkhill.com
ahornisher@clarkhill.com

**Counsel for Zurich American Insurance Company**

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of June 2021, a true and correct copy of the above pleading was served upon all parties via the Court's electronic case filing system (ECF).

*/s/ Duane J. Brescia*
Duane J. Brescia

# EXHIBIT 1-A
# Filed Under Seal

# EXHIBIT 1-B
# Filed Under Seal

# EXHIBIT 1-C

# Filed Under Seal

# EXHIBIT 1-D
# Filed Under Seal

# EXHIBIT 1-E

# Filed Under Seal

# EXHIBIT 1-F
# Filed Under Seal

**Exhibit 1-G**

**FILED UNDER SEAL**

# EXHIBIT 2-A

**Deutsche Bank**
Global Trade Operations & Services



November 12, 2015

Amendment to Standby Letter of Credit No. DBS-20280

Beneficiary:

Deutsche Bank AG New York Branch
60 Wall Street
Mail Stop NYC60-3817
New York, NY 10005

Apache Corporation (the "**Beneficiary**")
2000 Post Oak Boulevard
Suite 1000
Houston, Texas 77056
Attention: Matt Dundrea
Phone:     (713) 296-6000

Ladies and Gentlemen:

We, Deutsche Bank AG New York Branch (the "**Issuing Bank**") hereby amend in your favor our Irrevocable Standby Letter of Credit No. DBS-20280 for the account of Fieldwood Energy LLC, a Delaware limited liability company (the "**Applicant**"), as follows:

- The Standby Letter of Credit number has been change to 839BGC1500971.
- The expiry date of the Standby Letter of Credit is extended to November 09, 2017.

All other terms and conditions remain unchanged.

**Your agreement to this amendment is required. Please indicate your acceptance or rejection by returning a signed copy of this amendment via facsimile to 212-797-0780 or email at Dominic.Giordani@db.com**

This amendment is to be attached to the original credit instrument, of which it is to become an integral part thereof.

Yours Truly,
Deutsche Bank AG,
New York Branch

**Kam Chan**
**Assistant Vice President**

**Cherine Kenawy**
**Assistant Vice President**

We hereby      ( ) agree      ( ) reject      with this amendment:

_____
Authorized Signature
Apache Corporation (the "**Beneficiary**")

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

Deutsche Bank
Global Technology & Operations



September 30, 2013

Deutsche Bank AG New York Branch
STANDBY LETTER OF CREDIT UNIT
60 WALL STREET
NEW YORK, NY 10005

Fax 212 797-0403

Standby Letter of Credit No. DBS-20280

Beneficiary:

Apache Corporation (the "***Beneficiary***")
2000 Post Oak Boulevard
Suite 1000
Houston, Texas 77056
Attention: Matt Dundrea
Phone: (713) 296-6000

Ladies and Gentlemen:

　　　　We, Deutsche Bank AG New York Branch (the "***Issuing Bank***") hereby establish in your favor our Irrevocable Standby Letter of Credit No. DBS-20280 for the account of Fieldwood Energy LLC, a Delaware limited liability company (the "***Applicant***"), for a sum or sums not to exceed in the aggregate U.S. Dollars $97,327,931.00 [Ninety Seven Million Three Hundred Twenty Seven Thousand Nine Hundred Thirty One and No/100 U.S. Dollars] (the "***Stated Amount***").

　　　　Funds under this Standby Letter of Credit are available to you upon receipt of your written statement in accordance with the terms and conditions of this Standby Letter of Credit in the form of Exhibit A (a "***Decommissioning Drawing Request***") or Exhibit B (a "***Non-Extension Drawing Request***") attached hereto purportedly signed by your authorized officer.

　　　　Multiple and partial drawings under this Standby Letter of Credit are allowed. The Stated Amount of this Standby Letter of Credit shall be reduced by the amount of any such drawings.

　　　　The Stated Amount of this Standby Letter of Credit shall from time to time automatically reduce (without any requirement for further notice, amendment or other formality or action of any person) upon the Issuing Bank's receipt of a Reduction Notice executed by both the Applicant and the Beneficiary in the form of Exhibit C.

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

Deutsche Bank



Deutsche Bank AG New York Branch
STANDBY LETTER OF CREDIT UNIT
60 WALL STREET
NEW YORK, NY 10005
Fax 212 797-0403

This Standby Letter of Credit expires at our office of Deutsche Bank AG New York Branch, 60 Wall Street, New York, New York 10005 on September 30, 2014 (as such date may be extended pursuant to the next paragraph, the "***Expiration Date***").

It is a condition of this Standby Letter of Credit that its expiry date shall be automatically extended, without amendment, for additional periods of one year from the expiry date hereof, or any future expiration date, unless at least 60 (sixty) days prior to any expiry date we notify you by certified mail (return receipt requested) or by any other receipted means that we elect not to consider expiry date of this Standby Letter of Credit extended for any such additional period.

This Standby Letter of Credit shall automatically terminate (without any requirement for further notice, amendment or other formality or action of any person) upon the Issuing Bank's receipt of a Termination Notice, accompanied by the Original Letter of Credit and executed by both the Applicant and the Beneficiary in the form of Exhibit D.

We hereby agree with you that each Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, presented under and in compliance with the terms and conditions of this Standby Letter of Credit will be duly honored upon presentation to us, and we will make payment on or before the second Banking Day following such presentment in accordance with the terms and conditions hereof.

As used herein, "Banking Day" means any day other than a Saturday, a Sunday, or a day on which banking institutions in the city of New York, New York are authorized or required to be closed.

In the event that a Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, fails to comply with the terms and conditions of this Standby Letter of Credit but is presented on or before the Expiration Date of this Standby Letter of Credit, we shall provide you prompt notice of same stating the reasons therefore and shall upon your instructions hold any non-conforming Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, at your disposal or return any non-conforming Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, to you at the address set forth above by overnight courier. Upon being notified that the Decommissioning Drawing Request or Non-Extension Drawing

Chairman of the Supervisory Board: Paul Achleitner

Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court VAT ID No DE114103379 www.db.com

Deutsche Bank
[illegible subtitle]



Deutsche Bank AG New York Branch
STANDBY LETTER OF CREDIT UNIT
60 WALL STREET
NEW YORK, NY 10005
Fax 212 797-0403

Request, as applicable, was not effected in compliance with this Standby Letter of Credit, the Beneficiary may attempt to correct such non-complying Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, in accordance with the terms and conditions of this Standby Letter of Credit.

Payments hereunder shall be made by us to you (a) by wire transfer in United States Dollars of immediately available funds in the amount of such drawing in accordance with your instructions set forth in the Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, and (b) without any deduction, recoupment, diminution, set-off, counterclaim or withholding (other than deduction or withholding of tax required by law, which shall be permitted) and we expressly waive any such right.

All Decommissioning Drawing Requests, Non-Extension Drawing Requests and communications with respect to this Standby Letter of Credit shall be in writing, addressed to us at 60 Wall Street, New York, New York 10005, Attention Standby Letter of Credit Unit, referencing this Standby Letter of Credit number DBS-20280 and presented to us by overnight courier, delivery in person or facsimile transmission at such address, provided that the original of any such Decommissioning Drawing Request or Non-Extension Drawing Request, as the case may be, sent via facsimile transmission shall also be sent to us at such address by overnight courier. However, our receipt of original Decommissioning Drawing Requests or Non-Extension Drawing Requests will not be conditions for payment hereunder.

All of the Issuing Bank's charges are for the Applicant's account.

Except as otherwise expressly stated herein, this Standby Letter of Credit is subject to the International Standby Practices, International Chamber of Commerce, Publication No. 590 ("ISP98") and as to matters not addressed by the ISP98, shall be governed by and construed in accordance with the laws of State of New York.

Very truly yours,

Deutsche Bank AG New York Branch

By: _____
Name: Everardus J Rozing
Title: Vice President

By: _____
Name: Christine LaMonaca
Assistant Vice President

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte.
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No. 30 000; Frankfurt am Main Local Court; VAT ID No. DE 114 103 379; www.db.com

# EXHIBIT 2-B

**Deutsche Bank**
GlobalTrade Operations & Services



November 12, 2015

Standby Letter of Credit No. 839BGC1500968

Beneficiary:

Deutsche Bank AG New York Branch
60 Wall Street
Mail Stop NYC60-3817
New York , NY 10005

Apache Corporation (the "**Beneficiary**")
2000 Post Oak Boulevard
Suite 1000
Houston, Texas 77056
Attention: James W. Kimble, Vice President and Treasurer
E-mail:    Jim.Kimble@apachecorp.com
Phone:    (713) 296-6752

Ladies and Gentlemen:

We, Deutsche Bank AG New York Branch (the "**Issuing Bank**") hereby establish in your favor our Irrevocable Standby Letter of Credit No. 839BGC1500968 for the account of Fieldwood Energy LLC, a Delaware limited liability company (the "**Applicant**"), for a sum or sums not to exceed in the aggregate U.S. Dollars $67,557,356.00 (Sixty Seven Million Five Hundred Fifty Seven Thousand Three Hundred Fifty Six and No/100 U.S. Dollars) (the "**Stated Amount**").

Funds under this Standby Letter of Credit are available to you upon receipt of your written statement in accordance with the terms and conditions of this Standby Letter of Credit in the form of Exhibit A (a "**Decommissioning Drawing Request**") or Exhibit B (a "**Non-Extension Drawing Request**") attached hereto purportedly signed by your authorized officer.

Multiple and partial drawings under this Standby Letter of Credit are allowed. The Stated Amount of this Standby Letter of Credit shall be reduced by the amount of any such drawings.

The Stated Amount of this Standby Letter of Credit shall from time to time automatically reduce (without any requirement for further notice, amendment or other formality or action of any person) upon the Issuing Bank's receipt of a Reduction Notice executed by both the Applicant and the Beneficiary in the form of <u>Exhibit C</u>.

This Standby Letter of Credit expires at our office of Deutsche Bank AG New York Branch, 60 Wall Street, New York, New York 10005 on November 9, 2017 (as such date may be extended pursuant to the next paragraph, the "**Expiration Date**").

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



It is a condition of this Standby Letter of Credit that its expiry date shall be automatically extended, without amendment, for additional periods of one year from the expiry date hereof, or any future expiration date, unless at least 60 (sixty) days prior to any expiry date we notify you by certified mail (return receipt requested) or by any other receipted means that we elect not to consider expiry date of this Standby Letter of Credit extended for any such additional period.

This Standby Letter of Credit shall automatically terminate (without any requirement for further notice, amendment or other formality or action of any person) upon the Issuing Bank's receipt of a Termination Notice accompanied by the Original Letter of Credit and executed by both the Applicant and the Beneficiary in the form of Exhibit D.

We hereby agree with you that each Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, presented under and in compliance with the terms and conditions of this Standby Letter of Credit will be duly honored upon presentation to us, and we will make payment on or before the second Banking Day following such presentment in accordance with the terms and conditions hereof.

As used herein, "Banking Day" means any day other than a Saturday, a Sunday, or a day on which banking institutions in the city of New York, New York are authorized or required to be closed.

In the event that a Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, fails to comply with the terms and conditions of this Standby Letter of Credit but is presented on or before the Expiration Date of this Standby Letter of Credit, we shall provide you prompt notice of same stating the reasons therefore and shall upon your instructions hold any non-conforming Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, at your disposal or return any non-conforming Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, to you at the address set forth above by overnight courier. Upon being notified that the Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, was not effected in compliance with this Standby Letter of Credit, the Beneficiary may attempt to correct such non-complying Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, in accordance with the terms and conditions of this Standby Letter of Credit.

Payments hereunder shall be made by us to you (a) by wire transfer in United States Dollars of immediately available funds in the amount of such drawing in accordance with your instructions set forth in the Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, and (b) without any deduction, recoupment, diminution, set-off, counterclaim or withholding (other than deduction or withholding of tax required by law, which shall be permitted) and we expressly waive any such right.

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



All Decommissioning Drawing Requests, Non-Extension Drawing Requests and communications with respect to this Standby Letter of Credit shall be in writing, addressed to us at 60 Wall Street, New York, New York 10005 Attention: Trade Finance Department, referencing this Standby Letter of Credit number 839BGC1500968 and presented to us by overnight courier, delivery in person or facsimile transmission to 212-797-0780 at such address, provided that the original of any such Decommissioning Drawing Request or Non-Extension Drawing Request, as the case may be, sent via facsimile transmission shall also be sent to us at such address by overnight courier. However, our receipt of original Decommissioning Drawing Requests or Non-Extension Drawing Requests will not be conditions for payment hereunder.

All of the Issuing Bank's charges are for the Applicant's account.

Except as otherwise expressly stated herein, this Standby Letter of Credit is subject to the International Standby Practices, International Chamber of Commerce, Publication No. 590 ("ISP98") and as to matters not addressed by the ISP98, shall be governed by and construed in accordance with the laws of State of New York.

Very truly yours,

Deutsche Bank AG, New York Branch

By: _____
Name: Cherine Kenawy
Title: Assistant Vice President

By: _____
Name: Kam Chan
Title: Assistant Vice President

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



**EXHIBIT A**

**FORM OF DECOMMISSIONING DRAWING REQUEST**

Date: _____

To:

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attention: Trade Finance Department
Fax No 212-797-0780

Re:   Your Standby Letter of Credit No. 839BGC1500968 (the "Standby Letter of Credit")

Ladies and Gentlemen:

The undersigned individual, an authorized officer of Apache Corporation (the "**Beneficiary**"), hereby certifies to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to the Standby Letter of Credit No. 839BGC1500968 (the "**Letter of Credit**") dated November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of Fieldwood Energy LLC (the "**Applicant**"), as follows as of the date hereof (any capitalized term used in this Drawing Certificate and not defined in this Drawing Certificate shall have its respective meaning as set forth in the Letter of Credit):

1.     The undersigned is authorized to make the drawing request pursuant to this Decommissioning Drawing Request on behalf of the Beneficiary.

2.     The Beneficiary is entitled to make a drawing in the amount of [$_____] (the "**Drawing Amount**") pursuant to the terms and conditions of the Letter of Credit and of the Decommissioning Agreement dated as of September 30, 2013 among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Applicant and GOM Shelf LLC (as amended, restated or otherwise modified from time to time, the "**Decommissioning Agreement**"). Such Drawing Amount does not exceed the amount available for drawing under the Letter of Credit, and the Letter of Credit has not expired.

3.     Buyer has failed to reimburse and pay a Seller or its Affiliate for Reimbursable Amounts (as such terms are defined in the Decommissioning Agreement) in the amount of the Drawing Amount within the time period specified in Section 2.7(b) of the Decommissioning Agreement.

4.     Beneficiary has complied with Section 3.2(a)(i) and Section 3.2(a)(ii) of the Decommissioning Agreement.

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

5.    The Drawing Amount does not exceed the amount Beneficiary is entitled to draw under the Letter of Credit pursuant to the Decommissioning Agreement.

6.    The Beneficiary has provided or will provide the Applicant with a copy of this Decommissioning Drawing Request on the date hereof by facsimile transmission to:

> Fieldwood Energy LLC
> Attention: [_____]
> Facsimile: [_____].

7.    Please remit payment in the amount of [$_____] in immediately available funds, by wire transfer, to the order of Beneficiary in accordance with the following payment instructions:

<p style="text-align:center">[insert payment instructions]</p>

IN WITNESS WHEREOF, the undersigned has executed and delivered this Decommissioning Drawing Request on [insert date of the Decommissioning Drawing Request].

**Apache Corporation**

By:_____
Name:
Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



**Exhibit B**

**FORM OF NON-EXTENSION DRAWING REQUEST**

**<u>Non-Extension Drawing Request</u>**

Apache Corporation (the "Beneficiary")
2000 Post Oak Boulevard
Suite 1000
Houston, Texas 77056
                        [insert date of the Non-Extension Drawing Request]

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attn: Trade Finance Department
Fax no. 212-797-0780

> Drawn under Deutsche Bank AG New York Branch
> Letter of Credit Number 839BGC1500968
> Dated November 12, 2015

Ladies and Gentlemen:

      The undersigned individual, an authorized officer of Apache Corporation (the "**Beneficiary**"), hereby certifies to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to the Standby Letter of Credit No. 839BGC1500968 (the "Letter of Credit") dated November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of Fieldwood Energy LLC (the "Applicant"), as follows as of the date hereof (any capitalized term used in this Non-Extension Drawing Request and not defined in this Non-Extension Drawing Request shall have its respective meaning as set forth in the Letter of Credit):

      1.    The undersigned is authorized to make this Non-Extension Drawing Request on behalf of the Beneficiary.

      2.    The Beneficiary is entitled to make a drawing in the amount of [$_____] pursuant to the terms of the Letter of Credit and the Decommissioning Agreement dated as of September 30, 2013 among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Applicant and GOM Shelf LLC (as amended, restated or otherwise modified from time to time). Such Drawing Amount does not exceed the amount available for drawing under the Letter of Credit, and the Letter of Credit has not expired.

      3.    The Beneficiary has provided or will provide the Applicant with a copy of this Non-Extension Drawing Request on the date hereof by facsimile transmission to:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

Fieldwood Energy LLC
Attention: [_____]
Facsimile: [_____].

    4.    Please remit payment in the amount of [$_____] in immediately available funds, by wire transfer, to the order of Beneficiary in accordance with the following payment instructions:

        [insert payment instructions for the Trust A Account]

    IN WITNESS WHEREOF, the undersigned has executed and delivered this Non-Extension Drawing Request on [insert date of the Non-Extension Drawing Request].

**Apache Corporation**

By:_____

Name:

Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



**EXHIBIT C**

**FORM OF REDUCTION NOTICE**

**<u>Reduction Notice</u>**

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South
Suite 1200
Houston, Texas 77042
Phone: (713) 969-1000

[insert date of the Reduction Notice]

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attn: Trade Finance Department
Fax no. 212-797-0780

<div align="center">

Re:   Standby Letter of Credit No. 839BGC1500968 issued by
Deutsche Bank AG New York Branch

</div>

Ladies and Gentlemen:

Each of the undersigned individuals, authorized officers of Fieldwood Energy LLC (the "**Applicant**") and Apache Corporation (the "**Beneficiary**"), respectively, hereby certifies to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to the Standby Letter of Credit No. 839BGC1500968   (the "**Letter of Credit**") dated November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of the Applicant, as follows as of the date hereof (any capitalized term used in this Reduction Notice and not defined in this Reduction Notice shall have its respective meaning as set forth in the Letter of Credit):

1.      Each of the undersigned is authorized to execute and deliver this Reduction Notice on behalf of the Applicant and the Beneficiary, respectively.

2.      The Drawing Amount under the Letter of Credit shall be reduced to the following: [$_____].

Accordingly, in accordance with the requirements of the Letter of Credit, upon the Issuing Bank's receipt of this Reduction Notice, the Drawing Amount under the Letter of Credit shall automatically be reduced to [$_____] without any requirement for further, amendment or other formality or action of any person.

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

Deutsche Bank 

IN WITNESS WHEREOF, each of the undersigned has executed and delivered this Reduction Notice on [insert date of the Reduction Notice].

**Fieldwood Energy LLC**

By:_____
Name:
Title:

**Apache Corporation**

By:_____
Name:
Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



**EXHIBIT D**

**FORM OF TERMINATION NOTICE**

**Termination Notice**

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South
Suite 1200
Houston, Texas 77042
Phone: (713) 969-1000

[insert date of the Termination Notice]

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attn: Trade Finance Department
Fax no. 212-797-0780

Re:  Irrevocable Standby Letter of Credit No. 839BGC1500968
issued by Deutsche Bank AG New York Branch

Ladies and Gentlemen:

Each of the undersigned individuals, authorized officers of Fieldwood Energy LLC (the "**Applicant**") and Apache Corporation (the "**Beneficiary**"), respectively, hereby certifies to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to the Standby Letter of Credit No. 839BGC1500968 (the "**Letter of Credit**") dated November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of the Applicant, as follows as of the date hereof (any capitalized term used in this Termination Notice and not defined in this Termination Notice shall have its respective meaning as set forth in the Letter of Credit):

Each of the undersigned is authorized to execute and deliver this Termination Notice on behalf of the Applicant and the Beneficiary, respectively.

Accordingly, in accordance with the provisions of the Letter of Credit, the Letter of Credit shall automatically be terminated (without any requirement for further notice, amendment or other formality or action of any person) upon the Issuing Bank's receipt of this Termination Notice accompanied by the Original Letter of Credit.

IN WITNESS WHEREOF, each of the undersigned has executed and delivered this Termination Notice on [insert date of the Termination Notice].

**Fieldwood Energy LLC**

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephen Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

By:_____

Name:

Title:

**Apache Corporation**

By:_____

Name:

Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

# EXHIBIT 2-C

Deutsche Bank
Global Trade Operations & Services



November 12, 2015

Standby Letter of Credit No. 839BGC1500969

Beneficiary:

Apache Corporation (the "**Beneficiary**")
2000 Post Oak Boulevard
Suite 1000
Houston, Texas 77056
Attention: James W. Kimble, Vice President and Treasurer
E-mail:   Jim.Kimble@apachecorp.com
Phone:   (713) 296-6752

Deutsche Bank AG New York Branch
60 Wall Street
Mail Stop NYC60-3817
New York , NY 10005

Ladies and Gentlemen:

We, Deutsche Bank AG New York Branch (the "**Issuing Bank**") hereby establish in your favor our Irrevocable Standby Letter of Credit No. 839BGC1500969 for the account of Fieldwood Energy LLC, a Delaware limited liability company (the "**Applicant**"), for a sum or sums not to exceed in the aggregate U.S. Dollars $67,557,356.00 (Sixty Seven Million Five Hundred Fifty Seven Thousand Three Hundred Fifty Six and No/100 U.S. Dollars) (the "**Stated Amount**").

Funds under this Standby Letter of Credit are available to you upon receipt of your written statement in accordance with the terms and conditions of this Standby Letter of Credit in the form of Exhibit A (a "**Decommissioning Drawing Request**") or Exhibit B (a "**Non-Extension Drawing Request**") attached hereto purportedly signed by your authorized officer.

Multiple and partial drawings under this Standby Letter of Credit are allowed. The Stated Amount of this Standby Letter of Credit shall be reduced by the amount of any such drawings.

The Stated Amount of this Standby Letter of Credit shall from time to time automatically reduce (without any requirement for further notice, amendment or other formality or action of any person) upon the Issuing Bank's receipt of a Reduction Notice executed by both the Applicant and the Beneficiary in the form of Exhibit C.

This Standby Letter of Credit expires at our office of Deutsche Bank AG New York Branch, 60 Wall Street, New York, New York 10005 on November 9, 2017 (as such date may be extended pursuant to the next paragraph, the "**Expiration Date**").

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



Deutsche Bank

It is a condition of this Standby Letter of Credit that its expiry date shall be automatically extended, without amendment, for additional periods of one year from the expiry date hereof, or any future expiration date, unless at least 60 (sixty) days prior to any expiry date we notify you by certified mail (return receipt requested) or by any other receipted means that we elect not to consider expiry date of this Standby Letter of Credit extended for any such additional period.

This Standby Letter of Credit shall automatically terminate (without any requirement for further notice, amendment or other formality or action of any person) upon the Issuing Bank's receipt of a Termination Notice accompanied by the Original Letter of Credit and executed by both the Applicant and the Beneficiary in the form of <u>Exhibit D</u>.

We hereby agree with you that each Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, presented under and in compliance with the terms and conditions of this Standby Letter of Credit will be duly honored upon presentation to us, and we will make payment on or before the second Banking Day following such presentment in accordance with the terms and conditions hereof.

As used herein, "<u>Banking Day</u>" means any day other than a Saturday, a Sunday, or a day on which banking institutions in the city of New York, New York are authorized or required to be closed.

In the event that a Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, fails to comply with the terms and conditions of this Standby Letter of Credit but is presented on or before the Expiration Date of this Standby Letter of Credit, we shall provide you prompt notice of same stating the reasons therefore and shall upon your instructions hold any non-conforming Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, at your disposal or return any non-conforming Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, to you at the address set forth above by overnight courier. Upon being notified that the Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, was not effected in compliance with this Standby Letter of Credit, the Beneficiary may attempt to correct such non-complying Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, in accordance with the terms and conditions of this Standby Letter of Credit.

Payments hereunder shall be made by us to you (a) by wire transfer in United States Dollars of immediately available funds in the amount of such drawing in accordance with your instructions set forth in the Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, and (b) without any deduction, recoupment, diminution, set-off, counterclaim or withholding (other than deduction or withholding of tax required by law, which shall be permitted) and we expressly waive any such right.

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



All Decommissioning Drawing Requests, Non-Extension Drawing Requests and communications with respect to this Standby Letter of Credit shall be in writing, addressed to us at 60 Wall Street, New York, New York 10005 Attention: Trade Finance Department, referencing this Standby Letter of Credit number 839BGC1500969 and presented to us by overnight courier, delivery in person or facsimile transmission to 212-797-0780 at such address, provided that the original of any such Decommissioning Drawing Request or Non-Extension Drawing Request, as the case may be, sent via facsimile transmission shall also be sent to us at such address by overnight courier. However, our receipt of original Decommissioning Drawing Requests or Non-Extension Drawing Requests will not be conditions for payment hereunder.

All of the Issuing Bank's charges are for the Applicant's account.

Except as otherwise expressly stated herein, this Standby Letter of Credit is subject to the International Standby Practices, International Chamber of Commerce, Publication No. 590 ("ISP98") and as to matters not addressed by the ISP98, shall be governed by and construed in accordance with the laws of State of New York.

Very truly yours,

Deutsche Bank AG, New York Branch

By: _____
Name: Cherine Kenawy
Title: Assistant Vice President

By: _____
Name: Kam Chan
Title: Assistant Vice President

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



# EXHIBIT A

## FORM OF DECOMMISSIONING DRAWING REQUEST

Date: _____

To:

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attention: Trade Finance Department
Fax No 212-797-0780

Re:     Your Standby Letter of Credit No. 839BGC1500969 (the "Standby Letter of Credit")

Ladies and Gentlemen:

The undersigned individual, an authorized officer of Apache Corporation (the "**Beneficiary**"), hereby certifies to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to the Standby Letter of Credit No. 839BGC1500969 (the "**Letter of Credit**") dated November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of Fieldwood Energy LLC (the "**Applicant**"), as follows as of the date hereof (any capitalized term used in this Drawing Certificate and not defined in this Drawing Certificate shall have its respective meaning as set forth in the Letter of Credit):

1.      The undersigned is authorized to make the drawing request pursuant to this Decommissioning Drawing Request on behalf of the Beneficiary.

2.      The Beneficiary is entitled to make a drawing in the amount of [$_____] (the "**Drawing Amount**") pursuant to the terms and conditions of the Letter of Credit and of the Decommissioning Agreement dated as of September 30, 2013 among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Applicant and GOM Shelf LLC (as amended, restated or otherwise modified from time to time, the "**Decommissioning Agreement**"). Such Drawing Amount does not exceed the amount available for drawing under the Letter of Credit, and the Letter of Credit has not expired.

3.      Buyer has failed to reimburse and pay a Seller or its Affiliate for Reimbursable Amounts (as such terms are defined in the Decommissioning Agreement) in the amount of the Drawing Amount within the time period specified in Section 2.7(b) of the Decommissioning Agreement.

4.      Beneficiary has complied with Section 3.2(a)(i) and Section 3.2(a)(ii) of the Decommissioning Agreement.

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephen Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

5.      The Drawing Amount does not exceed the amount Beneficiary is entitled to draw under the Letter of Credit pursuant to the Decommissioning Agreement.

6.      The Beneficiary has provided or will provide the Applicant with a copy of this Decommissioning Drawing Request on the date hereof by facsimile transmission to:

Fieldwood Energy LLC
Attention: [_____]
Facsimile: [_____].

7.      Please remit payment in the amount of [$_____] in immediately available funds, by wire transfer, to the order of Beneficiary in accordance with the following payment instructions:

[insert payment instructions]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Decommissioning Drawing Request on [insert date of the Decommissioning Drawing Request].

**Apache Corporation**

By:_____
Name:
Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



**Exhibit B**

## FORM OF NON-EXTENSION DRAWING REQUEST

### <u>Non-Extension Drawing Request</u>

Apache Corporation (the "Beneficiary")
2000 Post Oak Boulevard
Suite 1000
Houston, Texas 77056
                    [insert date of the Non-Extension Drawing Request]

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attn: Trade Finance Department
Fax no. 212-797-0780

> Drawn under Deutsche Bank AG New York Branch
> Letter of Credit Number 839BGC1500969
> Dated November 12, 2015

Ladies and Gentlemen:

The undersigned individual, an authorized officer of Apache Corporation (the **"Beneficiary"**), hereby certifies to Deutsche Bank AG New York Branch (the **"Issuing Bank"**), with reference to the Standby Letter of Credit No. 839BGC1500969 (the "Letter of Credit") dated November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of Fieldwood Energy LLC (the "Applicant"), as follows as of the date hereof (any capitalized term used in this Non-Extension Drawing Request and not defined in this Non-Extension Drawing Request shall have its respective meaning as set forth in the Letter of Credit):

1.     The undersigned is authorized to make this Non-Extension Drawing Request on behalf of the Beneficiary.

2.     The Beneficiary is entitled to make a drawing in the amount of [$_____] pursuant to the terms of the Letter of Credit and the Decommissioning Agreement dated as of September 30, 2013 among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Applicant and GOM Shelf LLC (as amended, restated or otherwise modified from time to time).  Such Drawing Amount does not exceed the amount available for drawing under the Letter of Credit, and the Letter of Credit has not expired.

3.     The Beneficiary has provided or will provide the Applicant with a copy of this Non-Extension Drawing Request on the date hereof by facsimile transmission to:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

Fieldwood Energy LLC
Attention: [_____]
Facsimile: [_____].

4.    Please remit payment in the amount of [$_____] in immediately available funds, by wire transfer, to the order of Beneficiary in accordance with the following payment instructions:

[insert payment instructions for the Trust A Account]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Non-Extension Drawing Request on [insert date of the Non-Extension Drawing Request].

**Apache Corporation**

By:_____

Name:

Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

Deutsche Bank 

**EXHIBIT C**

**FORM OF REDUCTION NOTICE**

**Reduction Notice**

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South
Suite 1200
Houston, Texas 77042
Phone: (713) 969-1000

[insert date of the Reduction Notice]

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attn: Trade Finance Department
Fax no. 212-797-0780

> Re:   Standby Letter of Credit No. 839BGC1500969 issued by
> Deutsche Bank AG New York Branch

Ladies and Gentlemen:

Each of the undersigned individuals, authorized officers of Fieldwood Energy LLC (the "**Applicant**") and Apache Corporation (the "**Beneficiary**"), respectively, hereby certifies to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to the Standby Letter of Credit No. 839BGC1500969 (the "**Letter of Credit**") dated November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of the Applicant, as follows as of the date hereof (any capitalized term used in this Reduction Notice and not defined in this Reduction Notice shall have its respective meaning as set forth in the Letter of Credit):

> 1.      Each of the undersigned is authorized to execute and deliver this Reduction Notice on behalf of the Applicant and the Beneficiary, respectively.

> 2.      The Drawing Amount under the Letter of Credit shall be reduced to the following: [$_____].

Accordingly, in accordance with the requirements of the Letter of Credit, upon the Issuing Bank's receipt of this Reduction Notice, the Drawing Amount under the Letter of Credit shall automatically be reduced to [$_____] without any requirement for further, amendment or other formality or action of any person.

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



IN WITNESS WHEREOF, each of the undersigned has executed and delivered this Reduction Notice on [insert date of the Reduction Notice].

**Fieldwood Energy LLC**

By:_____

Name:

Title:

**Apache Corporation**

By:_____

Name:

Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



**EXHIBIT D**

**FORM OF TERMINATION NOTICE**

<u>**Termination Notice**</u>

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South
Suite 1200
Houston, Texas 77042
Phone: (713) 969-1000

[insert date of the Termination Notice]

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attn: Trade Finance Department
Fax no. 212-797-0780

> Re: Irrevocable Standby Letter of Credit No. 839BGC1500969 issued by Deutsche Bank AG New York Branch

Ladies and Gentlemen:

Each of the undersigned individuals, authorized officers of Fieldwood Energy LLC (the "**Applicant**") and Apache Corporation (the "**Beneficiary**"), respectively, hereby certifies to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to the Standby Letter of Credit No. 839BGC1500969 (the "**Letter of Credit**") dated November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of the Applicant, as follows as of the date hereof (any capitalized term used in this Termination Notice and not defined in this Termination Notice shall have its respective meaning as set forth in the Letter of Credit):

Each of the undersigned is authorized to execute and deliver this Termination Notice on behalf of the Applicant and the Beneficiary, respectively.

Accordingly, in accordance with the provisions of the Letter of Credit, the Letter of Credit shall automatically be terminated (without any requirement for further notice, amendment or other formality or action of any person) upon the Issuing Bank's receipt of this Termination Notice accompanied by the Original Letter of Credit.

IN WITNESS WHEREOF, each of the undersigned has executed and delivered this Termination Notice on [insert date of the Termination Notice].

**Fieldwood Energy LLC**

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

By:_____

Name:

Title:

**Apache Corporation**

By:_____

Name:

Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

# EXHIBIT 2-D

Deutsche Bank
GlobalTrade Operations & Services



November 12, 2015

Standby Letter of Credit No. 839BGC1500970

Beneficiary:

Deutsche Bank AG New York Branch
60 Wall Street
Mail Stop NYC60-3817
New York, NY 10005

Apache Corporation (the "*Beneficiary*")
2000 Post Oak Boulevard
Suite 1000
Houston, Texas 77056
Attention: James W. Kimble, Vice President and Treasurer
E-mail:    Jim.Kimble@apachecorp.com
Phone:    (713) 296-6752

Ladies and Gentlemen:

     We, Deutsche Bank AG New York Branch (the "*Issuing Bank*") hereby establish in your favor our Irrevocable Standby Letter of Credit No. 839BGC1500970 for the account of Fieldwood Energy LLC, a Delaware limited liability company (the "*Applicant*"), for a sum or sums not to exceed in the aggregate U.S. Dollars $67,557,357.00 (Sixty Seven Million Five Hundred Fifty Seven Thousand Three Hundred Fifty Seven and No/100 U.S. Dollars) (the "*Stated Amount*").

     Funds under this Standby Letter of Credit are available to you upon receipt of your written statement in accordance with the terms and conditions of this Standby Letter of Credit in the form of Exhibit A (a "*Decommissioning Drawing Request*") or Exhibit B (a "*Non-Extension Drawing Request*") attached hereto purportedly signed by your authorized officer.

     Multiple and partial drawings under this Standby Letter of Credit are allowed. The Stated Amount of this Standby Letter of Credit shall be reduced by the amount of any such drawings.

     The Stated Amount of this Standby Letter of Credit shall from time to time automatically reduce (without any requirement for further notice, amendment or other formality or action of any person) upon the Issuing Bank's receipt of a Reduction Notice executed by both the Applicant and the Beneficiary in the form of <u>Exhibit C</u>.

     This Standby Letter of Credit expires at our office of Deutsche Bank AG New York Branch, 60 Wall Street, New York, New York 10005 on November 9, 2017  (as such date may be extended pursuant to the next paragraph, the "*Expiration Date*").

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



It is a condition of this Standby Letter of Credit that its expiry date shall be automatically extended, without amendment, for additional periods of one year from the expiry date hereof, or any future expiration date, unless at least 60 (sixty) days prior to any expiry date we notify you by certified mail (return receipt requested) or by any other receipted means that we elect not to consider expiry date of this Standby Letter of Credit extended for any such additional period.

This Standby Letter of Credit shall automatically terminate (without any requirement for further notice, amendment or other formality or action of any person) upon the Issuing Bank's receipt of a Termination Notice accompanied by the Original Letter of Credit and executed by both the Applicant and the Beneficiary in the form of Exhibit D.

We hereby agree with you that each Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, presented under and in compliance with the terms and conditions of this Standby Letter of Credit will be duly honored upon presentation to us, and we will make payment on or before the second Banking Day following such presentment in accordance with the terms and conditions hereof.

As used herein, "Banking Day" means any day other than a Saturday, a Sunday, or a day on which banking institutions in the city of New York, New York are authorized or required to be closed.

In the event that a Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, fails to comply with the terms and conditions of this Standby Letter of Credit but is presented on or before the Expiration Date of this Standby Letter of Credit, we shall provide you prompt notice of same stating the reasons therefore and shall upon your instructions hold any non-conforming Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, at your disposal or return any non-conforming Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, to you at the address set forth above by overnight courier. Upon being notified that the Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, was not effected in compliance with this Standby Letter of Credit, the Beneficiary may attempt to correct such non-complying Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, in accordance with the terms and conditions of this Standby Letter of Credit.

Payments hereunder shall be made by us to you (a) by wire transfer in United States Dollars of immediately available funds in the amount of such drawing in accordance with your instructions set forth in the Decommissioning Drawing Request or Non-Extension Drawing Request, as applicable, and (b) without any deduction, recoupment, diminution, set-off, counterclaim or withholding (other than deduction or withholding of tax required by law, which shall be permitted) and we expressly waive any such right.

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephen Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



All Decommissioning Drawing Requests, Non-Extension Drawing Requests and communications with respect to this Standby Letter of Credit shall be in writing, addressed to us at 60 Wall Street, New York, New York 10005 Attention: Trade Finance Department, referencing this Standby Letter of Credit number 839BGC1500970 and presented to us by overnight courier, delivery in person or facsimile transmission to 212-797-0780 at such address, provided that the original of any such Decommissioning Drawing Request or Non-Extension Drawing Request, as the case may be, sent via facsimile transmission shall also be sent to us at such address by overnight courier. However, our receipt of original Decommissioning Drawing Requests or Non-Extension Drawing Requests will not be conditions for payment hereunder.

All of the Issuing Bank's charges are for the Applicant's account.

Except as otherwise expressly stated herein, this Standby Letter of Credit is subject to the International Standby Practices, International Chamber of Commerce, Publication No. 590 ("ISP98") and as to matters not addressed by the ISP98, shall be governed by and construed in accordance with the laws of State of New York.

Very truly yours,

Deutsche Bank AG, New York Branch

By: _____
Name: Cherine Kenawy
Title: Assistant Vice President

By: _____
Name: Kam Chan
Title: Assistant Vice President

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



# EXHIBIT A

## FORM OF DECOMMISSIONING DRAWING REQUEST

Date: _____

To:

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attention: Trade Finance Department
Fax No 212-797-0780

Re:     Your Standby Letter of Credit No. 839BGC1500970 (the "Standby Letter of Credit")

Ladies and Gentlemen:

The undersigned individual, an authorized officer of Apache Corporation (the "**Beneficiary**"), hereby certifies to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to the Standby Letter of Credit No. 839BGC1500970 (the "**Letter of Credit**") dated November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of Fieldwood Energy LLC (the "**Applicant**"), as follows as of the date hereof (any capitalized term used in this Drawing Certificate and not defined in this Drawing Certificate shall have its respective meaning as set forth in the Letter of Credit):

1.     The undersigned is authorized to make the drawing request pursuant to this Decommissioning Drawing Request on behalf of the Beneficiary.

2.     The Beneficiary is entitled to make a drawing in the amount of [$_____] (the "**Drawing Amount**") pursuant to the terms and conditions of the Letter of Credit and of the Decommissioning Agreement dated as of September 30, 2013 among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Applicant and GOM Shelf LLC (as amended, restated or otherwise modified from time to time, the "**Decommissioning Agreement**").  Such Drawing Amount does not exceed the amount available for drawing under the Letter of Credit, and the Letter of Credit has not expired.

3.     Buyer has failed to reimburse and pay a Seller or its Affiliate for Reimbursable Amounts (as such terms are defined in the Decommissioning Agreement) in the amount of the Drawing Amount within the time period specified in Section 2.7(b) of the Decommissioning Agreement.

4.     Beneficiary has complied with Section 3.2(a)(i) and Section 3.2(a)(ii) of the Decommissioning Agreement.

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephen Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

Deutsche Bank 

5.    The Drawing Amount does not exceed the amount Beneficiary is entitled to draw under the Letter of Credit pursuant to the Decommissioning Agreement.

6.    The Beneficiary has provided or will provide the Applicant with a copy of this Decommissioning Drawing Request on the date hereof by facsimile transmission to:

Fieldwood Energy LLC
Attention: [_____]
Facsimile: [_____].

7.    Please remit payment in the amount of [$_____] in immediately available funds, by wire transfer, to the order of Beneficiary in accordance with the following payment instructions:
                    [insert payment instructions]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Decommissioning Drawing Request on [insert date of the Decommissioning Drawing Request].

**Apache Corporation**

By:_____

Name:

Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



**Exhibit B**

**FORM OF NON-EXTENSION DRAWING REQUEST**

**<u>Non-Extension Drawing Request</u>**

Apache Corporation (the "Beneficiary")
2000 Post Oak Boulevard
Suite 1000
Houston, Texas 77056
<span style="margin-left:6em">[insert date of the Non-Extension Drawing Request]</span>

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attn: Trade Finance Department
Fax no. 212-797-0780

<div style="margin-left:12em">

Drawn under Deutsche Bank AG New York Branch
Letter of Credit Number 839BGC1500970
Dated November 12, 2015

</div>

Ladies and Gentlemen:

The undersigned individual, an authorized officer of Apache Corporation (the "**Beneficiary**"), hereby certifies to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to the Standby Letter of Credit No. 839BGC1500970 (the "Letter of Credit") dated November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of Fieldwood Energy LLC (the "Applicant"), as follows as of the date hereof (any capitalized term used in this Non-Extension Drawing Request and not defined in this Non-Extension Drawing Request shall have its respective meaning as set forth in the Letter of Credit):

1.      The undersigned is authorized to make this Non-Extension Drawing Request on behalf of the Beneficiary.

2.      The Beneficiary is entitled to make a drawing in the amount of [$_____] pursuant to the terms of the Letter of Credit and the Decommissioning Agreement dated as of September 30, 2013 among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Applicant and GOM Shelf LLC (as amended, restated or otherwise modified from time to time).  Such Drawing Amount does not exceed the amount available for drawing under the Letter of Credit, and the Letter of Credit has not expired.

3.      The Beneficiary has provided or will provide the Applicant with a copy of this Non-Extension Drawing Request on the date hereof by facsimile transmission to:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

Deutsche Bank

Fieldwood Energy LLC
Attention: [_____]
Facsimile: [_____].

4.      Please remit payment in the amount of [$_____] in immediately available funds, by wire transfer, to the order of Beneficiary in accordance with the following payment instructions:

[insert payment instructions for the Trust A Account]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Non-Extension Drawing Request on [insert date of the Non-Extension Drawing Request].

**Apache Corporation**

By:_____

Name:

Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



## EXHIBIT C

## FORM OF REDUCTION NOTICE

### Reduction Notice

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South
Suite 1200
Houston, Texas 77042
Phone: (713) 969-1000

[insert date of the Reduction Notice]

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attn: Trade Finance Department
Fax no. 212-797-0780

> Re:   Standby Letter of Credit No. 839BGC1500970 issued by
> Deutsche Bank AG New York Branch

Ladies and Gentlemen:

Each of the undersigned individuals, authorized officers of Fieldwood Energy LLC
(the "**Applicant**") and Apache Corporation (the "**Beneficiary**"), respectively, hereby
certifies to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to
the Standby Letter of Credit No. 839BGC1500970   (the "**Letter of Credit**") dated
November 12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the
account of the Applicant, as follows as of the date hereof (any capitalized term used in
this Reduction Notice and not defined in this Reduction Notice shall have its respective
meaning as set forth in the Letter of Credit):

1.    Each of the undersigned is authorized to execute and deliver this
Reduction Notice on behalf of the Applicant and the Beneficiary, respectively.

2.    The Drawing Amount under the Letter of Credit shall be reduced to the
following: [$_____].

Accordingly, in accordance with the requirements of the Letter of Credit, upon the
Issuing Bank's receipt of this Reduction Notice, the Drawing Amount under the Letter of
Credit shall automatically be reduced to [$_____] without any requirement for
further, amendment or other formality or action of any person.

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main: HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

Deutsche Bank



IN WITNESS WHEREOF, each of the undersigned has executed and delivered this Reduction Notice on [insert date of the Reduction Notice].

**Fieldwood Energy LLC**

By:_____
Name:
Title:


**Apache Corporation**

By:_____
Name:
Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com



## EXHIBIT D

## FORM OF TERMINATION NOTICE

### <u>Termination Notice</u>

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South
Suite 1200
Houston, Texas 77042
Phone: (713) 969-1000

[insert date of the Termination Notice]

Deutsche Bank AG New York Branch
60 Wall Street
New York, New York 10005
Attn: Trade Finance Department
Fax no. 212-797-0780

Re:     Irrevocable Standby Letter of Credit No. 839BGC1500970
issued by Deutsche Bank AG New York Branch

Ladies and Gentlemen:

Each of the undersigned individuals, authorized officers of Fieldwood Energy LLC (the
"**Applicant**") and Apache Corporation (the "**Beneficiary**"), respectively, hereby certifies
to Deutsche Bank AG New York Branch (the "**Issuing Bank**"), with reference to the
Standby Letter of Credit No. 839BGC1500970 (the "**Letter of Credit**") dated November
12, 2015, issued in favour of the Beneficiary by the Issuing Bank for the account of the
Applicant, as follows as of the date hereof (any capitalized term used in this Termination
Notice and not defined in this Termination Notice shall have its respective meaning as set
forth in the Letter of Credit):

Each of the undersigned is authorized to execute and deliver this Termination
Notice on behalf of the Applicant and the Beneficiary, respectively.

Accordingly, in accordance with the provisions of the Letter of Credit, the Letter
of Credit shall automatically be terminated (without any requirement for further notice,
amendment or other formality or action of any person) upon the Issuing Bank's receipt of
this Termination Notice accompanied by the Original Letter of Credit.

IN WITNESS WHEREOF, each of the undersigned has executed and delivered
this Termination Notice on [insert date of the Termination Notice].

### **Fieldwood Energy LLC**

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

By:_____

Name:

Title:

**Apache Corporation**

By:_____

Name:

Title:

Chairman of the Supervisory Board: Paul Achleitner
Management Board: Jürgen Fitschen (Co-Chairman), Anshuman Jain (Co-Chairman), Stephan Leithner, Stuart Lewis, Stefan Krause, Rainer Neske, Henry Ritchotte
Deutsche Bank Aktiengesellschaft domiciled in Frankfurt am Main; HRB No 30 000, Frankfurt am Main, Local Court; VAT ID No DE114103379; www.db.com

# EXHIBIT 3-A

|  | **PERFORMANCE BOND** |
|---|---|

**Bond No . LPM9181831**

KNOW ALL MEN BY THESE PRESENTS, that **FIELDWOOD ENERGY LLC** ("Fieldwood") as Principal and **ZURICH AMERICAN INSURANCE COMPANY**, a corporation duly organized under the laws of New York and duly authorized and licensed to transact the business of suretyship in the United States of America (the "**Surety**") as Surety, and our administrators, successors and assigns, are held and firmly bound unto **DEUTSCHE BANK AG NEW YORK BRANCH** (the "**Obligee**") in the penal sum of **Ninety Seven Million, Three Hundred Twenty-seven Thousand, Nine Hundred Thirty-one and no/100** ($97,327,931) lawful money of the United States of America (the "**Bond Amount**"), for the payment of which well and truly to be made, we bind ourselves, our administrators, successors and assigns, jointly and severally by these presents.

WHEREAS, Fieldwood and its subsidiaries entered into an arrangement with Apache Corporation (the "**Beneficiary**"), among others pursuant to which Fieldwood will perform decommissioning of various oil and gas wells in the Gulf of Mexico and other activities as described in that certain Decommissioning Agreement dated as of September 30, 2013, as amended (the "**Agreement**"); and

WHEREAS, Fieldwood has entered into certain written applications and agreements between the Obligee and Fieldwood dated November 9, 2015 (each as amended, restated, supplemented or otherwise modified, collectively, the "**Reimbursement Agreement**"), under which the Obligee has agreed to provide Obligee's standby letter of credit No.839BGC1500971 (the "**Security**") to ensure Fieldwood's satisfactory performance of the Agreement to the Beneficiary and Fieldwood has agreed to reimburse the Obligee for any drawings under the Security to the extent that the Obligee is not reimbursed under this Bond.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Surety hereby agrees in favor of the Obligee as follows:

THE CONDITION OF THIS OBLIGATION IS SUCH that, if Fieldwood shall fully, faithfully and timely perform its obligations under the Agreement, then this obligation to be void (unless an Event of Default (as defined below) shall have occurred or thereafter occurs); otherwise, to remain in full force and effect.

The Surety shall be obligated to make payment under this Bond if the Obligee delivers a written notice to the Surety within the time required hereby (which delivery may occur after the performance of such obligations) that an Event of Default has occurred, provided, however, that this Bond is subject to the following conditions:

1. Event of Default:  An "Event of Default" for purposes of this Bond is the delivery to the Surety by the Obligee of one of the following:

a.  A written statement from the Obligee, in the form attached hereto as Annex A, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "A" to the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to perform and reimburse the Beneficiary for Government Decommissioning obligations (as defined in the Agreement); or

b.  A written statement from the Obligee, in the form attached hereto as Annex B, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "B" to the Security arising from the Obligee having notified the Beneficiary of the Obligee's election to not extend the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to provide the Beneficiary with replacement security within the time required by the Agreement.

2.  Preliminary Notice to Surety:  Obligee shall endeavor to notify the Surety, with reasonable promptness, of any facts or circumstances of which Obligee has received actual notice which constitute an Event of Default.   Such preliminary notice is not, however, a condition precedent of the Surety's obligation under this Bond and failure of the Obligee to so notify the Surety shall not relieve or reduce the Surety's liabilities and obligations to the Obligee under this Bond.

3.  Upon the occurrence of an Event of Default, the Surety shall pay to the Obligee the amount demanded in the Obligee's written statement within ten (10) Business Days (as defined below) after receipt of such statement from the Obligee.  Each such written statement from the Obligee shall constitute conclusive evidence of the facts stated therein.  The Surety irrevocably agrees to pay interest on all Overdue Amounts (as defined below) at the annual rate equal to the Prime Rate (as defined below) of the Obligee such interest to accrue on a daily basis for each day that any Overdue Amount remains unpaid, calculated monthly in arrears and shall be compounded monthly until payment in full by the Surety.  The Surety hereby agrees to indemnify and hold harmless the Obligee from and against any and all damages, losses, liabilities and expenses (including, without limitation, reasonable attorneys' fees and disbursements), that may be incurred or sustained by, or asserted or awarded against, the Obligee, in each case arising out of or in connection with or relating to the Surety's failure to pay to the Obligee any amount demanded when due hereunder.   For the purposes of this Bond, (a) the term "**Business Day**" means a day on which chartered banks are open for over-the-counter business in the ordinary course in New York, New York and excludes Saturday, Sunday and any other day which is a recognized holiday in the state of New York; (b) the term "**Prime Rate**" means on any day the fluctuating annual rate of interest established from time to time by the Obligee and in effect that day as the reference rate it will use for purposes of determining rates of interest it will charge on loans to customers in the United States and designated as its prime rate; and (c) the term "**Overdue Amounts**" means amounts due and owing to the Obligee by the Surety under this Agreement.

4.  This Bond sets forth in full the terms of the Surety's liabilities and obligations to the Obligee under this Bond.  Such liabilities and obligations shall not be in any way modified, amended or supplemented by reference to any document or instrument referred to herein, and any such reference shall not be deemed to incorporate herein any document or instrument.   The

Performance Bond                                                           Page 2 of 9

Surety's liabilities and obligations under this Bond to the Obligee are not subject to any condition or qualification except as expressly set forth herein and are not contingent on any of the following (and shall not be reduced, diminished or eliminated by virtue of any of the following): (a) the ability or inability of the Surety to acquire or perfect any lien or security interest on any asset or property of Fieldwood, (b) the Surety's success or failure in obtaining indemnification from Fieldwood or (c) any other fact or circumstance involving or affecting any one or more of Fieldwood, the Obligee or the Surety (but the Surety reserving all of its rights against Fieldwood).   This Bond constitutes the Surety's primary, absolute and independent obligation to make payment to the Obligee in accordance with the terms hereof, under any and all circumstances, including, without limitation, due to the lack of validity, legality or enforceability of the Agreement, the Reimbursement Agreement or the Security and irrespective of all objections, exceptions, set-offs, counterclaims or defenses of any kind from the Surety, Fieldwood or other third parties.

5. Address for Written Statements and Notice:  Any written statement or notice provided under this Bond shall be in writing and shall be delivered by personal delivery, certified mail, express mail, or overnight courier service to the address of the party set out below and to the attention of the person there indicated, provided that any written statement or notice shall be delivered only by personal delivery or overnight courier in the event that there is a threatened or actual discontinuance or interruption of regular postal service:

    a.  if to the Surety:

        Zurich American Insurance Company
        Zurich Surety
        500 Enterprise Drive, Rocky Hill, Connecticut 06067
        Attention: Commercial Surety Underwriting

        with a copy to:

        Zurich Surety Bond Claims
        1400 American Lane
        Schaumburg, Illinois 60196
        reportsfclaims@zurichna.com

    b.  if to the Obligee:

        Deutsche Bank AG New York Branch
        Cherine Kenawy, Trade Finance Operations
        60 Wall Street, 38th Floor
        Mailstop: NYC60-3817
        New York, NY 10005-2836
        Attention: Standby Letter of Credit Department
        DBNY.standby-LC@db.com

        With a copy to:

        Deutsche Bank AG New York Branch

Performance Bond

60 Wall Street
New York, NY 10005
Attention: Mr. Prashant Mehra

c.   if to Fieldwood:

Fieldwood Energy LLC
2000 W Sam Houston Parkway S
Suite 1200
Houston, Texas 77042
Attention: Richard D. Black, Sr. Vice President and General Counsel

and such statement or notice shall be deemed to have been received on the fifth (5th)
Business Day if sent by certified mail or express mail and deemed to have been received on
the following Business Day if sent by overnight courier or personal delivery. Any party may
change its notice address by delivering a notice of such change to the other parties in the
manner provided herein.

6. Limitations on Liability: The liability of the Surety shall not exceed the Bond Amount stated
above, plus all costs and expenses required to be paid by the Surety hereunder, regardless of
the number of years that this Bond shall continue or be continued in force and the number or
amounts of premiums paid by Fieldwood (it being acknowledged and agreed that all
premiums and fees payable to the Surety for the issuance and maintenance of this Bond are
the sole obligation of Fieldwood and the Obligee shall have no liability therefor). Partial and
multiple demands are permitted. The Bond Amount shall be reduced by the amount of any
payment made by the Surety under this Bond. It is expressly agreed that in the event any
payments are made under this Bond, the Bond Amount (as it may be reduced from time to
time as a result of payments that are made as against the Bond) shall be carried over on an
annual basis for each subsequent calendar year in which the Bond is renewed.

7. This Bond is an annual obligation for the term of November 9, 2015 to November 9, 2017.
This Bond will be automatically renewed for one year annual terms unless the Obligee and
Fieldwood are notified of the Surety's intention to not renew or extend this Bond, written
notice of which shall be given by the Surety at least ninety (90) days prior to the then current
expiration date of this Bond, such cancellation notice to be provided in accordance with
Section 5 above.

8. If the Surety so notifies the Obligee pursuant to Section 7 that this Bond will not be renewed,
the Surety acknowledges that the Obligee may be required to notify the Beneficiary at least
sixty (60) days prior to the then current expiration date of the Security of the Obligee's
election not to extend the Security and that the Beneficiary shall then be entitled to demand
payment under the Security in accordance with the Agreement. To ensure that the Obligee
will have sufficient time to make written demand for payment under this Bond in the event
the Beneficiary has demanded payment under the Security prior to the latest date the
Beneficiary is entitled to make a drawing under the Security, the Surety agrees that if the
Beneficiary is entitled to make a drawing under the Security after the then applicable
expiration date of the Security for any reason, including, without limitation, the application
of applicable laws, rules and regulations relating to letters of credit, the Obligee shall be

given an additional amount of time (equal to the amount of such additional time given to the Beneficiary) to make its written demand on the Surety for payment under this Bond.

9. In the event Fieldwood fails to provide replacement security or other form of collateral acceptable in the Obligee's sole discretion, the Obligee may make written demand for payment under this Bond.  Upon payment by the Surety to the Obligee pursuant to this Section 9, the Obligee shall hold such payment in a cash collateral account on the basis that if the Beneficiary makes a demand under the Security issued by the Obligee, the Obligee shall be entitled to appropriate and apply the relevant amount(s) from such cash collateral to make payment to the Beneficiary with the net balance remaining in such cash collateral account being returned by the Obligee to the Surety (or to the representatives of the Surety) when the Obligee has no further obligations or liabilities to the Beneficiary under such Security.

10. This Bond shall be governed by and construed in accordance with the law of the State of New York (without reference to conflict of law doctrine), and the parties submit to the nonexclusive jurisdiction of the courts of the State of New York located in the County of New York.

11. No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Obligee named herein and the administrators, successors and assigns of the Obligee.

12. The Surety hereby represents that it has the power and requisite authority to execute, deliver and perform its obligations under this Bond.  The Surety is duly authorized to, and has taken all action necessary to authorize it to, perform its obligations under this Bond and is and will continue to be duly authorized to enter into this Bond and to perform its obligations under this Bond. This Bond is the legal and binding obligation of the Surety enforceable in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance or similar laws affecting creditors' rights generally and general principles of equity (regardless of whether the application of such principles is considered in a proceeding in equity or at law).

SIGNED, SEALED AND DATED this 9th day of November, 2015.


**FIELDWOOD ENERGY LLC**
  (Fieldwood)

**ZURICH AMERICAN INSURANCE COMPANY**
  (Surety)


By: _____
Name: G. M. McCarroll
Title:   President and Chief Executive Officer

By: _Janice H. Fennell_
Name:  Janice H. Fennell
Title:   Attorney-in-Fact

## ANNEX A

## FORM OF DEMAND UNDER PERFORMANCE BOND

Date:

**Zurich American Insurance Company**
500 Enterprise Drive
Rocky Hill, Connecticut 06067
Attention: Commercial Surety Underwriting
Facsimile:_____

Re:    Performance Bond No. LPM9181834 (the "**Bond**")

      Each of the undersigned individuals, authorized officers of Deutsche Bank AG New York Branch (the "**Obligee**"), hereby certifies to Zurich American Insurance Company (the "**Surety**"), with reference to the Performance Bond No. LPM9181834 (the "**Bond**") dated November 9, 2015 issued in favor of the Obligee by the Surety for the account of Fieldwood Energy LLC ("**Fieldwood**"), as follows (any capitalized term used in this Demand Under Performance Bond and not defined herein shall have its respective meaning as set forth in the Bond):

     1.     The undersigned is authorized to make this Demand Under Performance Bond on behalf of the Obligee.

     2.     The Obligee is entitled to make a drawing in the amount of [$_____] (the "**Drawing Amount**") pursuant to the terms and conditions of the Bond.  Such Drawing Amount does not exceed the amount available for drawing under the Bond, and the time for the Obligee to demand payment under the Bond has not expired.

     3.     The undersigned has been notified that, pursuant to the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC (collectively "Seller"), Fieldwood and GOM Shelf LLC, as amended, restated or otherwise modified from time to time (the "Decommissioning Agreement"), Obligee was required to make payment to Seller under a standby letter of credit issued in favor of Seller as a result of Fieldwood's failure to reimburse and pay Seller or its Affiliate for Reimbursable Amounts (as such terms are defined in the Decommissioning Agreement) in the amount of the Drawing Amount within the time period specified in Section 2.7(b) of the Decommissioning Agreement.

     4.     Please remit payment in the amount of [$_____] within ten (10) business days, by wire transfer, to the order of Obligee in accordance with the following payment instructions:

[insert payment instructions]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Demand Under Performance Bond on [insert date of the Demand Under Performance Bond].

**Obligee:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By: _____
Name: _____
Title: _____

By: _____
Name: _____
Title: _____

## ANNEX B

## FORM OF NON-EXTENSION DRAWING REQUEST

Date:

**Zurich American Insurance Company**
500 Enterprise Drive
Rocky Hill, Connecticut 06067
Attention: Commercial Surety Underwriting
Facsimile:_____


Drawn under Zurich American Insurance Company
Performance Bond No. LPM9181834
Dated November 9, 2015


Each of the undersigned individuals, authorized officers of Deutsche Bank AG New York Branch (the **"Obligee"**), hereby certifies to Zurich American Insurance Company (the **"Surety"**), with reference to the Performance Bond No. LPM9181834 (the **"Bond"**) dated November 9, 2015 issued in favor of the Obligee for the account of Fieldwood Energy LLC (**"Fieldwood"**), as follows (any capitalized term used in this Non-Extension Drawing Request and not defined in this Non-Extension Drawing Request shall have its respective meaning as set forth in the Bond):

      1.      The undersigned is authorized to make this Non-Extension Drawing Request on behalf of the Obligee.

      2.      The Obligee is entitled to make a drawing in the amount of [$_____] pursuant to the terms and conditions of the Bond.  Such Drawing Amount does not exceed the amount available for drawing under the Bond, and the time for the Obligee to demand payment under the Bond has not expired.

      3.      The undersigned has been notified that, pursuant to the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC (collectively "Seller"), Fieldwood and GOM Shelf LLC, as amended, restated or otherwise modified from time to time, (the "Decommissioning Agreement"), Obligee was required to make payment to Seller in the amount of the Drawing Amount under the security issued in favor of Seller as a result of Obligee's election to not extend the security.

      4.      Please remit payment in the amount of [$_____] within ten (10) business days, by wire transfer, to the order of Obligee in accordance with the following payment instructions:

[insert payment instructions]


      IN WITNESS WHEREOF, the undersigned has executed and delivered this Non- Extension Drawing Request on [insert date of Non-Extension Drawing Request].

Obligee:

**DEUTSCHE BANK AG NEW YORK BRANCH**

By: _____
Name: _____
Title: _____

By: _____
Name: _____
Title: _____

**ZURICH AMERICAN INSURANCE COMPANY**
**COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**
**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**
**POWER OF ATTORNEY**

KNOW ALL MEN BY THESE PRESENTS: That the ZURICH AMERICAN INSURANCE COMPANY, a corporation of the State of New York, the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, a corporation of the State of Maryland, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND a corporation of the State of Maryland (herein collectively called the "Companies"), by **JAMES M. CARROLL, Vice President,** in pursuance of authority granted by Article V, Section 8, of the By-Laws of said Companies, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, do hereby nominate, constitute, and appoint **Richard C. ROSE, Jeremy C. ROSE and Janice H. FENNELL, all** of Knoxville, Tennessee, **EACH** its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: **any and all bonds and undertakings,** and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the ZURICH AMERICAN INSURANCE COMPANY at its office in New York, New York., the regularly elected officers of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at its office in Owings Mills, Maryland., and the regularly elected officers of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at its office in Owings Mills,  Maryland., in their own proper persons.

The said Vice President does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article V, Section 8, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President has hereunto subscribed his/her names and affixed the Corporate Seals of the said **ZURICH AMERICAN INSURANCE COMPANY, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,** this 20th day of November, A.D. 2012.

<div align="right">ATTEST:</div>

<div align="right">ZURICH AMERICAN INSURANCE COMPANY<br>COLONIAL AMERICAN CASUALTY AND SURETY COMPANY<br>FIDELITY AND DEPOSIT COMPANY OF MARYLAND</div>

  

By: *Gerald F. Haley*

*Assistant Secretary*
*Gerald F. Haley*

*James M. Carroll*

*Vice President*
*James M. Carroll*

**State of** Maryland
County of Baltimore

On this 20th day of November, A.D. 2012, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, **JAMES M. CARROLL, Vice President, and GERALD F. HALEY, Assistant Secretary,** of the Companies, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and acknowledged the execution of same, and being by me duly sworn, deposeth and saith, that he/she is the said officer of the Company aforesaid, and that the seals affixed to the preceding instrument are the Corporate Seals of said Companies, and that the said Corporate Seals and the signature as such officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

*Constance A. Dunn*

Constance A. Dunn, Notary Public
My Commission Expires: July 14, 2019

POA-F  164-6135C

## EXTRACT FROM BY-LAWS OF THE COMPANIES

"Article V, Section 8, <u>Attorneys-in-Fact</u>. The Chief Executive Officer, the President, or any Executive Vice President or Vice President may, by written instrument under the attested corporate seal, appoint attorneys-in-fact with authority to execute bonds, policies, recognizances, stipulations, undertakings, or other like instruments on behalf of the Company, and may authorize any officer or any such attorney-in-fact to affix the corporate seal thereto; and may with or without cause modify of revoke any such appointment or authority at any time."

## CERTIFICATE

I, the undersigned, Vice President of the ZURICH AMERICAN INSURANCE COMPANY, the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that Article V, Section 8, of the By-Laws of the Companies is still in force.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the ZURICH AMERICAN INSURANCE COMPANY at a meeting duly called and held on the 15th day of December 1998.

RESOLVED: "That the signature of the President or a Vice President and the attesting signature of a Secretary or an Assistant Secretary and the Seal of the Company may be affixed by facsimile on any Power of Attorney...Any such Power or any certificate thereof bearing such facsimile signature and seal shall be valid and binding on the Company."

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994, and the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies, this 9TH day of NOVEMBER, 2015.

  

_Thomas O. McClellan_

Thomas O. McClellan, Vice President

# EXHIBIT 3-B



| | PERFORMANCE BOND |
|---|---|

**Bond No . LPM9181832**

KNOW ALL MEN BY THESE PRESENTS, that **FIELDWOOD ENERGY LLC** ("**Fieldwood**") as Principal and **ZURICH AMERICAN INSURANCE COMPANY**, a corporation duly organized under the laws of New York and duly authorized and licensed to transact the business of suretyship in the United States of America (the "**Surety**") as Surety, and our administrators, successors and assigns, are held and firmly bound unto **DEUTSCHE BANK AG NEW YORK BRANCH** (the "**Obligee**") in the penal sum of **Sixty-seven Million, Five Hundred Fifty-seven Thousand, Three Hundred Fifty-six and no/100** ($67,557,356) lawful money of the United States of America (the "**Bond Amount**"), for the payment of which well and truly to be made, we bind ourselves, our administrators, successors and assigns, jointly and severally by these presents.

WHEREAS, Fieldwood and its subsidiaries entered into an arrangement with Apache Corporation (the "**Beneficiary**"), among others pursuant to which Fieldwood will perform decommissioning of various oil and gas wells in the Gulf of Mexico and other activities as described in that certain Decommissioning Agreement dated as of September 30, 2013, as amended (the "**Agreement**"); and

WHEREAS, Fieldwood has entered into certain written applications and agreements between the Obligee and Fieldwood dated November 9, 2015 (each as amended, restated, supplemented or otherwise modified, collectively, the "**Reimbursement Agreement**"), under which the Obligee has agreed to provide Obligee's standby letter of credit No. 839BGC1500968 (the "**Security**") to ensure Fieldwood's satisfactory performance of the Agreement to the Beneficiary and Fieldwood has agreed to reimburse the Obligee for any drawings under the Security to the extent that the Obligee is not reimbursed under this Bond.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Surety hereby agrees in favor of the Obligee as follows:

THE CONDITION OF THIS OBLIGATION IS SUCH that, if Fieldwood shall fully, faithfully and timely perform its obligations under the Agreement, then this obligation to be void (unless an Event of Default (as defined below) shall have occurred or thereafter occurs); otherwise, to remain in full force and effect.

The Surety shall be obligated to make payment under this Bond if the Obligee delivers a written notice to the Surety within the time required hereby (which delivery may occur after the performance of such obligations) that an Event of Default has occurred, provided, however, that this Bond is subject to the following conditions:

1.  Event of Default:  An "Event of Default" for purposes of this Bond is the delivery to the Surety by the Obligee of one of the following:

a. A written statement from the Obligee, in the form attached hereto as Annex A, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "A" to the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to perform and reimburse the Beneficiary for Government Decommissioning obligations (as defined in the Agreement); or

b. A written statement from the Obligee, in the form attached hereto as Annex B, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "B" to the Security arising from the Obligee having notified the Beneficiary of the Obligee's election to not extend the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to provide the Beneficiary with replacement security within the time required by the Agreement.

2. Preliminary Notice to Surety:  Obligee shall endeavor to notify the Surety, with reasonable promptness, of any facts or circumstances of which Obligee has received actual notice which constitute an Event of Default.  Such preliminary notice is not, however, a condition precedent of the Surety's obligation under this Bond and failure of the Obligee to so notify the Surety shall not relieve or reduce the Surety's liabilities and obligations to the Obligee under this Bond.

3. Upon the occurrence of an Event of Default, the Surety shall pay to the Obligee the amount demanded in the Obligee's written statement within ten (10) Business Days (as defined below) after receipt of such statement from the Obligee.  Each such written statement from the Obligee shall constitute conclusive evidence of the facts stated therein.  The Surety irrevocably agrees to pay interest on all Overdue Amounts (as defined below) at the annual rate equal to the Prime Rate (as defined below) of the Obligee such interest to accrue on a daily basis for each day that any Overdue Amount remains unpaid, calculated monthly in arrears and shall be compounded monthly until payment in full by the Surety.  The Surety hereby agrees to indemnify and hold harmless the Obligee from and against any and all damages, losses, liabilities and expenses (including, without limitation, reasonable attorneys' fees and disbursements), that may be incurred or sustained by, or asserted or awarded against, the Obligee, in each case arising out of or in connection with or relating to the Surety's failure to pay to the Obligee any amount demanded when due hereunder.  For the purposes of this Bond, (a) the term **"Business Day"** means a day on which chartered banks are open for over-the-counter business in the ordinary course in New York, New York and excludes Saturday, Sunday and any other day which is a recognized holiday in the state of New York; (b) the term **"Prime Rate"** means on any day the fluctuating annual rate of interest established from time to time by the Obligee and in effect that day as the reference rate it will use for purposes of determining rates of interest it will charge on loans to customers in the United States and designated as its prime rate; and (c) the term **"Overdue Amounts"** means amounts due and owing to the Obligee by the Surety under this Agreement.

4. This Bond sets forth in full the terms of the Surety's liabilities and obligations to the Obligee under this Bond.  Such liabilities and obligations shall not be in any way modified, amended or supplemented by reference to any document or instrument referred to herein, and any such reference shall not be deemed to incorporate herein any document or instrument.  The

Surety's liabilities and obligations under this Bond to the Obligee are not subject to any condition or qualification except as expressly set forth herein and are not contingent on any of the following (and shall not be reduced, diminished or eliminated by virtue of any of the following): (a) the ability or inability of the Surety to acquire or perfect any lien or security interest on any asset or property of Fieldwood, (b) the Surety's success or failure in obtaining indemnification from Fieldwood or (c) any other fact or circumstance involving or affecting any one or more of Fieldwood, the Obligee or the Surety (but the Surety reserving all of its rights against Fieldwood).   This Bond constitutes the Surety's primary, absolute and independent obligation to make payment to the Obligee in accordance with the terms hereof, under any and all circumstances, including, without limitation, due to the lack of validity, legality or enforceability of the Agreement, the Reimbursement Agreement or the Security and irrespective of all objections, exceptions, set-offs, counterclaims or defenses of any kind from the Surety, Fieldwood or other third parties.

5. Address for Written Statements and Notice:  Any written statement or notice provided under this Bond shall be in writing and shall be delivered by personal delivery, certified mail, express mail, or overnight courier service to the address of the party set out below and to the attention of the person there indicated, provided that any written statement or notice shall be delivered only by personal delivery or overnight courier in the event that there is a threatened or actual discontinuance or interruption of regular postal service:

    a.  if to the Surety:

        Zurich American Insurance Company
        Zurich Surety
        500 Enterprise Drive, Rocky Hill, Connecticut 06067
        Attention: Commercial Surety Underwriting

        with a copy to:

        Zurich Surety Bond Claims
        1400 American Lane
        Schaumburg, Illinois 60196
        reportsfclaims@zurichna.com

    b.  if to the Obligee:

        Deutsche Bank AG New York Branch
        Cherine Kenawy, Trade Finance Operations
        60 Wall Street, 38th Floor
        Mailstop: NYC60-3817
        New York, NY 10005-2836
        Attention: Standby Letter of Credit Department
        DBNY.standby-LC@db.com

        With a copy to:

        Deutsche Bank AG New York Branch

60 Wall Street
New York, NY 10005
Attention: Mr. Prashant Mehra

c.   if to Fieldwood:

Fieldwood Energy LLC
2000 W Sam Houston Parkway S
Suite 1200
Houston, Texas 77042
Attention: Richard D. Black, Sr. Vice President and General Counsel

and such statement or notice shall be deemed to have been received on the fifth (5th) Business Day if sent by certified mail or express mail and deemed to have been received on the following Business Day if sent by overnight courier or personal delivery. Any party may change its notice address by delivering a notice of such change to the other parties in the manner provided herein.

6.  Limitations on Liability: The liability of the Surety shall not exceed the Bond Amount stated above, plus all costs and expenses required to be paid by the Surety hereunder, regardless of the number of years that this Bond shall continue or be continued in force and the number or amounts of premiums paid by Fieldwood (it being acknowledged and agreed that all premiums and fees payable to the Surety for the issuance and maintenance of this Bond are the sole obligation of Fieldwood and the Obligee shall have no liability therefor). Partial and multiple demands are permitted. The Bond Amount shall be reduced by the amount of any payment made by the Surety under this Bond. It is expressly agreed that in the event any payments are made under this Bond, the Bond Amount (as it may be reduced from time to time as a result of payments that are made as against the Bond) shall be carried over on an annual basis for each subsequent calendar year in which the Bond is renewed.

7.  This Bond is an annual obligation for the term of November 9, 2015 to November 9, 2017. This Bond will be automatically renewed for one year annual terms unless the Obligee and Fieldwood are notified of the Surety's intention to not renew or extend this Bond, written notice of which shall be given by the Surety at least ninety (90) days prior to the then current expiration date of this Bond, such cancellation notice to be provided in accordance with Section 5 above.

8.  If the Surety so notifies the Obligee pursuant to Section 7 that this Bond will not be renewed, the Surety acknowledges that the Obligee may be required to notify the Beneficiary at least sixty (60) days prior to the then current expiration date of the Security of the Obligee's election not to extend the Security and that the Beneficiary shall then be entitled to demand payment under the Security in accordance with the Agreement. To ensure that the Obligee will have sufficient time to make written demand for payment under this Bond in the event the Beneficiary has demanded payment under the Security prior to the latest date the Beneficiary is entitled to make a drawing under the Security, the Surety agrees that if the Beneficiary is entitled to make a drawing under the Security after the then applicable expiration date of the Security for any reason, including, without limitation, the application of applicable laws, rules and regulations relating to letters of credit, the Obligee shall be

given an additional amount of time (equal to the amount of such additional time given to the Beneficiary) to make its written demand on the Surety for payment under this Bond.

9. In the event Fieldwood fails to provide replacement security or other form of collateral acceptable in the Obligee's sole discretion, the Obligee may make written demand for payment under this Bond. Upon payment by the Surety to the Obligee pursuant to this Section 9, the Obligee shall hold such payment in a cash collateral account on the basis that if the Beneficiary makes a demand under the Security issued by the Obligee, the Obligee shall be entitled to appropriate and apply the relevant amount(s) from such cash collateral to make payment to the Beneficiary with the net balance remaining in such cash collateral account being returned by the Obligee to the Surety (or to the representatives of the Surety) when the Obligee has no further obligations or liabilities to the Beneficiary under such Security.

10. This Bond shall be governed by and construed in accordance with the law of the State of New York (without reference to conflict of law doctrine), and the parties submit to the nonexclusive jurisdiction of the courts of the State of New York located in the County of New York.

11. No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Obligee named herein and the administrators, successors and assigns of the Obligee.

12. The Surety hereby represents that it has the power and requisite authority to execute, deliver and perform its obligations under this Bond. The Surety is duly authorized to, and has taken all action necessary to authorize it to, perform its obligations under this Bond and is and will continue to be duly authorized to enter into this Bond and to perform its obligations under this Bond. This Bond is the legal and binding obligation of the Surety enforceable in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance or similar laws affecting creditors' rights generally and general principles of equity (regardless of whether the application of such principles is considered in a proceeding in equity or at law).

SIGNED, SEALED AND DATED this 9th day of November, 2015.

**FIELDWOOD ENERGY LLC**
(Fieldwood)

**ZURICH AMERICAN INSURANCE COMPANY**
(Surety)

By: _____

Name: G. M. McCarroll

Title:   President and Chief Executive Officer

By: _Janice H. Fennell_

Name:  Janice H. Fennell

Title:   Attorney-in-Fact

## ANNEX A

## FORM OF DEMAND UNDER PERFORMANCE BOND

Date:

**Zurich American Insurance Company**
500 Enterprise Drive
Rocky Hill, Connecticut 06067
Attention: Commercial Surety Underwriting
Facsimile:_____

Re:      Performance Bond No. LPM9181832 (the "**Bond**")

Each of the undersigned individuals, authorized officers of Deutsche Bank AG New York Branch (the "**Obligee**"), hereby certifies to Zurich American Insurance Company (the "**Surety**"), with reference to the Performance Bond No. LPM9181832 (the "**Bond**") dated November 9, 2015 issued in favor of the Obligee by the Surety for the account of Fieldwood Energy LLC ("**Fieldwood**"), as follows (any capitalized term used in this Demand Under Performance Bond and not defined herein shall have its respective meaning as set forth in the Bond):

1.      The undersigned is authorized to make this Demand Under Performance Bond on behalf of the Obligee.

2.      The Obligee is entitled to make a drawing in the amount of [$_____.____] (the "**Drawing Amount**") pursuant to the terms and conditions of the Bond.  Such Drawing Amount does not exceed the amount available for drawing under the Bond, and the time for the Obligee to demand payment under the Bond has not expired.

3.      The undersigned has been notified that, pursuant to the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC (collectively "Seller"), Fieldwood and GOM Shelf LLC, as amended, restated or otherwise modified from time to time (the "Decommissioning Agreement"), Obligee was required to make payment to Seller under a standby letter of credit issued in favor of Seller as a result of Fieldwood's failure to reimburse and pay Seller or its Affiliate for Reimbursable Amounts (as such terms are defined in the Decommissioning Agreement) in the amount of the Drawing Amount within the time period specified in Section 2.7(b) of the Decommissioning Agreement.

4.      Please remit payment in the amount of [$_____] within ten (10) business days, by wire transfer, to the order of Obligee in accordance with the following payment instructions:

[insert payment instructions]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Demand Under Performance Bond on [insert date of the Demand Under Performance Bond].

**Obligee:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By: _____
Name: _____
Title: _____

By: _____
Name: _____
Title: _____

## ANNEX B

## FORM OF NON-EXTENSION DRAWING REQUEST

Date:

**Zurich American Insurance Company**
500 Enterprise Drive
Rocky Hill, Connecticut 06067
Attention: Commercial Surety Underwriting
Facsimile:_____

Drawn under Zurich American Insurance Company
Performance Bond No. LPM9181832
Dated November 9, 2015

Each of the undersigned individuals, authorized officers of Deutsche Bank AG New York Branch (the **"Obligee"**), hereby certifies to Zurich American Insurance Company (the **"Surety"**), with reference to the Performance Bond No. LPM9181832 (the **"Bond"**) dated November 9, 2015 issued in favor of the Obligee for the account of Fieldwood Energy LLC (**"Fieldwood"**), as follows (any capitalized term used in this Non-Extension Drawing Request and not defined in this Non-Extension Drawing Request shall have its respective meaning as set forth in the Bond):

1.      The undersigned is authorized to make this Non-Extension Drawing Request on behalf of the Obligee.

2.      The Obligee is entitled to make a drawing in the amount of [$_____] pursuant to the terms and conditions of the Bond.  Such Drawing Amount does not exceed the amount available for drawing under the Bond, and the time for the Obligee to demand payment under the Bond has not expired.

3.      The undersigned has been notified that, pursuant to the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC (collectively "Seller"), Fieldwood and GOM Shelf LLC, as amended, restated or otherwise modified from time to time, (the "Decommissioning Agreement"), Obligee was required to make payment to Seller in the amount of the Drawing Amount under the security issued in favor of Seller as a result of Obligee's election to not extend the security.

4.      Please remit payment in the amount of [$_____] within ten (10) business days, by wire transfer, to the order of Obligee in accordance with the following payment instructions:

[insert payment instructions]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Non- Extension Drawing Request on [insert date of Non-Extension Drawing Request].

Performance Bond

**Obligee:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By: _____
Name: _____
Title: _____

By: _____
Name: _____
Title: _____

**ZURICH AMERICAN INSURANCE COMPANY**
**COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**
**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**
**POWER OF ATTORNEY**

KNOW ALL MEN BY THESE PRESENTS: That the ZURICH AMERICAN INSURANCE COMPANY, a corporation of the State of New York, the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, a corporation of the State of Maryland, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND a corporation of the State of Maryland (herein collectively called the "Companies"), by **JAMES M. CARROLL, Vice President**, in pursuance of authority granted by Article V, Section 8, of the By-Laws of said Companies, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, do hereby nominate, constitute, and appoint **Richard C. ROSE, Jeremy C. ROSE and Janice H. FENNELL, all of Knoxville, Tennessee, EACH** its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: **any and all bonds and undertakings**, and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the ZURICH AMERICAN INSURANCE COMPANY at its office in New York, New York., the regularly elected officers of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at its office in Owings Mills, Maryland., and the regularly elected officers of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at its office in Owings Mills, Maryland., in their own proper persons.

The said Vice President does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article V, Section 8, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President has hereunto subscribed his/her names and affixed the Corporate Seals of the said **ZURICH AMERICAN INSURANCE COMPANY, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,** this 20th day of November, A.D. 2012.

ATTEST:

**ZURICH AMERICAN INSURANCE COMPANY**
**COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**
**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**

  

By: *Gerald F. Haley*

*Assistant Secretary*
*Gerald F. Haley*

*James M. Carroll*

*Vice President*
*James M. Carroll*

**State of** Maryland
County of Baltimore

On this 20th day of November, A.D. 2012, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, **JAMES M. CARROLL, Vice President, and GERALD F. HALEY, Assistant Secretary,** of the Companies, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and acknowledged the execution of same, and being by me duly sworn, deposeth and saith, that he/she is the said officer of the Company aforesaid, and that the seals affixed to the preceding instrument are the Corporate Seals of said Companies, and that the said Corporate Seals and the signature as such officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

*Constance A. Dunn*

Constance A. Dunn, Notary Public
My Commission Expires: July 14, 2019

POA-F 164-6135C

## EXTRACT FROM BY-LAWS OF THE COMPANIES

"Article V, Section 8, Attorneys-in-Fact. The Chief Executive Officer, the President, or any Executive Vice President or Vice President may, by written instrument under the attested corporate seal, appoint attorneys-in-fact with authority to execute bonds, policies, recognizances, stipulations, undertakings, or other like instruments on behalf of the Company, and may authorize any officer or any such attorney-in-fact to affix the corporate seal thereto; and may with or without cause modify of revoke any such appointment or authority at any time."

## CERTIFICATE

I, the undersigned, Vice President of the ZURICH AMERICAN INSURANCE COMPANY, the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that Article V, Section 8, of the By-Laws of the Companies is still in force.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the ZURICH AMERICAN INSURANCE COMPANY at a meeting duly called and held on the 15th day of December 1998.

RESOLVED: "That the signature of the President or a Vice President and the attesting signature of a Secretary or an Assistant Secretary and the Seal of the Company may be affixed by facsimile on any Power of Attorney...Any such Power or any certificate thereof bearing such facsimile signature and seal shall be valid and binding on the Company."

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994, and the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies, this 9TH day of NOVEMBER , 2015 .

  

Thomas O. McClellan, Vice President

# EXHIBIT 3-C



# PERFORMANCE BOND

**Bond No . LPM9181833**

KNOW ALL MEN BY THESE PRESENTS, that **FIELDWOOD ENERGY LLC** ("**Fieldwood**") as Principal and **ZURICH AMERICAN INSURANCE COMPANY**, a corporation duly organized under the laws of New York and duly authorized and licensed to transact the business of suretyship in the United States of America (the "**Surety**") as Surety, and our administrators, successors and assigns, are held and firmly bound unto **DEUTSCHE BANK AG NEW YORK BRANCH** (the "**Obligee**") in the  penal sum of **Sixty-seven Million, Five Hundred Fifty-seven Thousand, Three Hundred Fifty-six and no/100** (**$67,557,356**) lawful money of the United States of America (the "**Bond Amount**"), for the payment of which well and truly to be made, we bind ourselves, our administrators, successors and assigns, jointly and severally by these presents.

WHEREAS, Fieldwood and its subsidiaries entered into an arrangement with Apache Corporation (the "**Beneficiary**"), among others pursuant to which Fieldwood will perform decommissioning of various oil and gas wells in the Gulf of Mexico and other activities as described in that certain Decommissioning Agreement dated as of September 30, 2013, as amended (the "**Agreement**"); and

WHEREAS, Fieldwood has entered into certain written applications and agreements between the Obligee and Fieldwood dated November 9, 2015 (each as amended, restated, supplemented or otherwise modified, collectively, the "**Reimbursement Agreement**"), under which the Obligee has agreed to provide Obligee's standby letter of credit No. 839BGC1500969 (the "**Security**") to ensure Fieldwood's satisfactory performance of the Agreement to the Beneficiary and Fieldwood has agreed to reimburse the Obligee for any drawings under the Security to the extent that the Obligee is not reimbursed under this Bond.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Surety hereby agrees in favor of the Obligee as follows:

THE CONDITION OF THIS OBLIGATION IS SUCH that, if Fieldwood shall fully, faithfully and timely perform its obligations under the Agreement, then this obligation to be void (unless an Event of Default (as defined below) shall have occurred or thereafter occurs); otherwise, to remain in full force and effect.

The Surety shall be obligated to make payment under this Bond if the Obligee delivers a written notice to the Surety within the time required hereby (which delivery may occur after the performance of such obligations) that an Event of Default  has occurred, provided, however, that this Bond is subject to the following conditions:

1. Event of Default:  An "Event of Default" for purposes of this Bond is the delivery to the Surety by the Obligee of one of the following:

    a.  A written statement from the Obligee, in the form attached hereto as Annex A, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "A" to the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to perform and reimburse the Beneficiary for Government Decommissioning obligations (as defined in the Agreement); or

    b.  A written statement from the Obligee, in the form attached hereto as Annex B, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "B" to the Security arising from the Obligee having notified the Beneficiary of the Obligee's election to not extend the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to provide the Beneficiary with replacement security within the time required by the Agreement.

2. Preliminary Notice to Surety:  Obligee shall endeavor to notify the Surety, with reasonable promptness, of any facts or circumstances of which Obligee has received actual notice which constitute an Event of Default.  Such preliminary notice is not, however, a condition precedent of the Surety's obligation under this Bond and failure of the Obligee to so notify the Surety shall not relieve or reduce the Surety's liabilities and obligations to the Obligee under this Bond.

3. Upon the occurrence of an Event of Default, the Surety shall pay to the Obligee the amount demanded in the Obligee's written statement within ten (10) Business Days (as defined below) after receipt of such statement from the Obligee.  Each such written statement from the Obligee shall constitute conclusive evidence of the facts stated therein.  The Surety irrevocably agrees to pay interest on all Overdue Amounts (as defined below) at the annual rate equal to the Prime Rate (as defined below) of the Obligee such interest to accrue on a daily basis for each day that any Overdue Amount remains unpaid, calculated monthly in arrears and shall be compounded monthly until payment in full by the Surety.  The Surety hereby agrees to indemnify and hold harmless the Obligee from and against any and all damages, losses, liabilities and expenses (including, without limitation, reasonable attorneys' fees and disbursements), that may be incurred or sustained by, or asserted or awarded against, the Obligee, in each case arising out of or in connection with or relating to the Surety's failure to pay to the Obligee any amount demanded when due hereunder.  For the purposes of this Bond, (a) the term "**Business Day**" means a day on which chartered banks are open for over-the-counter business in the ordinary course in New York, New York and excludes Saturday, Sunday and any other day which is a recognized holiday in the state of New York; (b) the term "**Prime Rate**" means on any day the fluctuating annual rate of interest established from time to time by the Obligee and in effect that day as the reference rate it will use for purposes of determining rates of interest it will charge on loans to customers in the United States and designated as its prime rate; and (c) the term "**Overdue Amounts**" means amounts due and owing to the Obligee by the Surety under this Agreement.

4. This Bond sets forth in full the terms of the Surety's liabilities and obligations to the Obligee under this Bond.  Such liabilities and obligations shall not be in any way modified, amended or supplemented by reference to any document or instrument referred to herein, and any such reference shall not be deemed to incorporate herein any document or instrument.  The

Surety's liabilities and obligations under this Bond to the Obligee are not subject to any condition or qualification except as expressly set forth herein and are not contingent on any of the following (and shall not be reduced, diminished or eliminated by virtue of any of the following): (a) the ability or inability of the Surety to acquire or perfect any lien or security interest on any asset or property of Fieldwood, (b) the Surety's success or failure in obtaining indemnification from Fieldwood or (c) any other fact or circumstance involving or affecting any one or more of Fieldwood, the Obligee or the Surety (but the Surety reserving all of its rights against Fieldwood). This Bond constitutes the Surety's primary, absolute and independent obligation to make payment to the Obligee in accordance with the terms hereof, under any and all circumstances, including, without limitation, due to the lack of validity, legality or enforceability of the Agreement, the Reimbursement Agreement or the Security and irrespective of all objections, exceptions, set-offs, counterclaims or defenses of any kind from the Surety, Fieldwood or other third parties.

5. Address for Written Statements and Notice: Any written statement or notice provided under this Bond shall be in writing and shall be delivered by personal delivery, certified mail, express mail, or overnight courier service to the address of the party set out below and to the attention of the person there indicated, provided that any written statement or notice shall be delivered only by personal delivery or overnight courier in the event that there is a threatened or actual discontinuance or interruption of regular postal service:

   a. if to the Surety:

   Zurich American Insurance Company
   Zurich Surety
   500 Enterprise Drive, Rocky Hill, Connecticut 06067
   Attention: Commercial Surety Underwriting

   with a copy to:

   Zurich Surety Bond Claims
   1400 American Lane
   Schaumburg, Illinois 60196
   reportsfclaims@zurichna.com

   b. if to the Obligee:

   Deutsche Bank AG New York Branch
   Cherine Kenawy, Trade Finance Operations
   60 Wall Street, 38th Floor
   Mailstop: NYC60-3817
   New York, NY 10005-2836
   Attention: Standby Letter of Credit Department
   DBNY.standby-LC@db.com

   With a copy to:

   Deutsche Bank AG New York Branch

60 Wall Street
New York, NY 10005
Attention: Mr. Prashant Mehra

c.   if to Fieldwood:

Fieldwood Energy LLC
2000 W Sam Houston Parkway S
Suite 1200
Houston, Texas 77042
Attention: Richard D. Black, Sr. Vice President and General Counsel

and such statement or notice shall be deemed to have been received on the fifth (5th) Business Day if sent by certified mail or express mail and deemed to have been received on the following Business Day if sent by overnight courier or personal delivery. Any party may change its notice address by delivering a notice of such change to the other parties in the manner provided herein.

6.   Limitations on Liability: The liability of the Surety shall not exceed the Bond Amount stated above, plus all costs and expenses required to be paid by the Surety hereunder, regardless of the number of years that this Bond shall continue or be continued in force and the number or amounts of premiums paid by Fieldwood (it being acknowledged and agreed that all premiums and fees payable to the Surety for the issuance and maintenance of this Bond are the sole obligation of Fieldwood and the Obligee shall have no liability therefor). Partial and multiple demands are permitted. The Bond Amount shall be reduced by the amount of any payment made by the Surety under this Bond. It is expressly agreed that in the event any payments are made under this Bond, the Bond Amount (as it may be reduced from time to time as a result of payments that are made as against the Bond) shall be carried over on an annual basis for each subsequent calendar year in which the Bond is renewed.

7.   This Bond is an annual obligation for the term of November 9, 2015 to November 9, 2017. This Bond will be automatically renewed for one year annual terms unless the Obligee and Fieldwood are notified of the Surety's intention to not renew or extend this Bond, written notice of which shall be given by the Surety at least ninety (90) days prior to the then current expiration date of this Bond, such cancellation notice to be provided in accordance with Section 5 above.

8.   If the Surety so notifies the Obligee pursuant to Section 7 that this Bond will not be renewed, the Surety acknowledges that the Obligee may be required to notify the Beneficiary at least sixty (60) days prior to the then current expiration date of the Security of the Obligee's election not to extend the Security and that the Beneficiary shall then be entitled to demand payment under the Security in accordance with the Agreement. To ensure that the Obligee will have sufficient time to make written demand for payment under this Bond in the event the Beneficiary has demanded payment under the Security prior to the latest date the Beneficiary is entitled to make a drawing under the Security, the Surety agrees that if the Beneficiary is entitled to make a drawing under the Security after the then applicable expiration date of the Security for any reason, including, without limitation, the application of applicable laws, rules and regulations relating to letters of credit, the Obligee shall be

Performance Bond                                                               Page 4 of 9

given an additional amount of time (equal to the amount of such additional time given to the Beneficiary) to make its written demand on the Surety for payment under this Bond.

9. In the event Fieldwood fails to provide replacement security or other form of collateral acceptable in the Obligee's sole discretion, the Obligee may make written demand for payment under this Bond. Upon payment by the Surety to the Obligee pursuant to this Section 9, the Obligee shall hold such payment in a cash collateral account on the basis that if the Beneficiary makes a demand under the Security issued by the Obligee, the Obligee shall be entitled to appropriate and apply the relevant amount(s) from such cash collateral to make payment to the Beneficiary with the net balance remaining in such cash collateral account being returned by the Obligee to the Surety (or to the representatives of the Surety) when the Obligee has no further obligations or liabilities to the Beneficiary under such Security.

10. This Bond shall be governed by and construed in accordance with the law of the State of New York (without reference to conflict of law doctrine), and the parties submit to the nonexclusive jurisdiction of the courts of the State of New York located in the County of New York.

11. No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Obligee named herein and the administrators, successors and assigns of the Obligee.

12. The Surety hereby represents that it has the power and requisite authority to execute, deliver and perform its obligations under this Bond. The Surety is duly authorized to, and has taken all action necessary to authorize it to, perform its obligations under this Bond and is and will continue to be duly authorized to enter into this Bond and to perform its obligations under this Bond. This Bond is the legal and binding obligation of the Surety enforceable in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance or similar laws affecting creditors' rights generally and general principles of equity (regardless of whether the application of such principles is considered in a proceeding in equity or at law).

SIGNED, SEALED AND DATED this 9th day of November, 2015.

**FIELDWOOD ENERGY LLC**
(Fieldwood)

**ZURICH AMERICAN INSURANCE COMPANY**
(Surety)

By: _____
Name: G. M. McCarroll
Title:   President and Chief Executive Officer

By: _____
Name:   Janice H. Fennell
Title:    Attorney-in-Fact

## ANNEX A

## FORM OF DEMAND UNDER PERFORMANCE BOND

Date:

**Zurich American Insurance Company**
500 Enterprise Drive
Rocky Hill, Connecticut 06067
Attention: Commercial Surety Underwriting
Facsimile:_____

Re:     Performance Bond No. LPM9181832 (the "**Bond**")

Each of the undersigned individuals, authorized officers of Deutsche Bank AG New York Branch (the "**Obligee**"), hereby certifies to Zurich American Insurance Company (the "**Surety**"), with reference to the Performance Bond No. LPM9181832 (the "**Bond**") dated November 9, 2015 issued in favor of the Obligee by the Surety for the account of Fieldwood Energy LLC ("**Fieldwood**"), as follows (any capitalized term used in this Demand Under Performance Bond and not defined herein shall have its respective meaning as set forth in the Bond):

1.     The undersigned is authorized to make this Demand Under Performance Bond on behalf of the Obligee.

2.     The Obligee is entitled to make a drawing in the amount of [$_____] (the "**Drawing Amount**") pursuant to the terms and conditions of the Bond. Such Drawing Amount does not exceed the amount available for drawing under the Bond, and the time for the Obligee to demand payment under the Bond has not expired.

3.     The undersigned has been notified that, pursuant to the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC (collectively "Seller"), Fieldwood and GOM Shelf LLC, as amended, restated or otherwise modified from time to time (the "Decommissioning Agreement"), Obligee was required to make payment to Seller under a standby letter of credit issued in favor of Seller as a result of Fieldwood's failure to reimburse and pay Seller or its Affiliate for Reimbursable Amounts (as such terms are defined in the Decommissioning Agreement) in the amount of the Drawing Amount within the time period specified in Section 2.7(b) of the Decommissioning Agreement.

4.     Please remit payment in the amount of [$_____] within ten (10) business days, by wire transfer, to the order of Obligee in accordance with the following payment instructions:

[insert payment instructions]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Demand Under Performance Bond on [insert date of the Demand Under Performance Bond].

**Obligee:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By: _____
Name: _____
Title: _____

By: _____
Name: _____
Title: _____

## ANNEX B

## FORM OF NON-EXTENSION DRAWING REQUEST

Date:

**Zurich American Insurance Company**
500 Enterprise Drive
Rocky Hill, Connecticut 06067
Attention: Commercial Surety Underwriting
Facsimile:_____

Drawn under Zurich American Insurance Company
Performance Bond No. LPM9181832
Dated November 9, 2015

Each of the undersigned individuals, authorized officers of Deutsche Bank AG New York Branch (the **"Obligee"**), hereby certifies to Zurich American Insurance Company (the **"Surety"**), with reference to the Performance Bond No. LPM9181832 (the **"Bond"**) dated November 9, 2015 issued in favor of the Obligee for the account of Fieldwood Energy LLC (**"Fieldwood"**), as follows (any capitalized term used in this Non-Extension Drawing Request and not defined in this Non-Extension Drawing Request shall have its respective meaning as set forth in the Bond):

     1.     The undersigned is authorized to make this Non-Extension Drawing Request on behalf of the Obligee.

     2.     The Obligee is entitled to make a drawing in the amount of [$_____] pursuant to the terms and conditions of the Bond. Such Drawing Amount does not exceed the amount available for drawing under the Bond, and the time for the Obligee to demand payment under the Bond has not expired.

     3.     The undersigned has been notified that, pursuant to the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC (collectively "Seller"), Fieldwood and GOM Shelf LLC, as amended, restated or otherwise modified from time to time, (the "Decommissioning Agreement"), Obligee was required to make payment to Seller in the amount of the Drawing Amount under the security issued in favor of Seller as a result of Obligee's election to not extend the security.

     4.     Please remit payment in the amount of [$_____] within ten (10) business days, by wire transfer, to the order of Obligee in accordance with the following payment instructions:

[insert payment instructions]

     IN WITNESS WHEREOF, the undersigned has executed and delivered this Non- Extension Drawing Request on [insert date of Non-Extension Drawing Request].

**Obligee:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By: _____
Name: _____
Title: _____


By: _____
Name: _____
Title: _____

ZURICH AMERICAN INSURANCE COMPANY
COLONIAL AMERICAN CASUALTY AND SURETY COMPANY
FIDELITY AND DEPOSIT COMPANY OF MARYLAND
POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That the ZURICH AMERICAN INSURANCE COMPANY, a corporation of the State of New York, the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, a corporation of the State of Maryland, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND a corporation of the State of Maryland (herein collectively called the "Companies"), by JAMES M. CARROLL, Vice President, in pursuance of authority granted by Article V, Section 8, of the By-Laws of said Companies, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, do hereby nominate, constitute, and appoint **Richard C. ROSE, Jeremy C. ROSE and Janice H. FENNELL, all of Knoxville, Tennessee, EACH** its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: **any and all bonds and undertakings,** and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the ZURICH AMERICAN INSURANCE COMPANY at its office in New York, New York., the regularly elected officers of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at its office in Owings Mills, Maryland., and the regularly elected officers of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at its office in Owings Mills,  Maryland., in their own proper persons.

The said Vice President does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article V, Section 8, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President has hereunto subscribed his/her names and affixed the Corporate Seals of the said **ZURICH AMERICAN INSURANCE COMPANY, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,** this 20th day of November, A.D. 2012.

ATTEST:

ZURICH AMERICAN INSURANCE COMPANY
COLONIAL AMERICAN CASUALTY AND SURETY COMPANY
FIDELITY AND DEPOSIT COMPANY OF MARYLAND



By:

*Assistant Secretary*
*Gerald F. Haley*

*Vice President*
*James M. Carroll*

State of Maryland
County of Baltimore
On this 20th day of November, A.D. 2012, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, JAMES M. CARROLL, Vice President, and GERALD F. HALEY, Assistant Secretary, of the Companies, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and acknowledged the execution of same, and being by me duly sworn, deposeth and saith, that he/she is the said officer of the Company aforesaid, and that the seals affixed to the preceding instrument are the Corporate Seals of said Companies, and that the said Corporate Seals and the signature as such officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

Constance A. Dunn, Notary Public
My Commission Expires: July 14, 2019

POA-F 164-6135C

### EXTRACT FROM BY-LAWS OF THE COMPANIES

"Article V, Section 8, <u>Attorneys-in-Fact</u>. The Chief Executive Officer, the President, or any Executive Vice President or Vice President may, by written instrument under the attested corporate seal, appoint attorneys-in-fact with authority to execute bonds, policies, recognizances, stipulations, undertakings, or other like instruments on behalf of the Company, and may authorize any officer or any such attorney-in-fact to affix the corporate seal thereto; and may with or without cause modify of revoke any such appointment or authority at any time."

### CERTIFICATE

I, the undersigned, Vice President of the ZURICH AMERICAN INSURANCE COMPANY, the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that Article V, Section 8, of the By-Laws of the Companies is still in force.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the ZURICH AMERICAN INSURANCE COMPANY at a meeting duly called and held on the 15th day of December 1998.

RESOLVED: "That the signature of the President or a Vice President and the attesting signature of a Secretary or an Assistant Secretary and the Seal of the Company may be affixed by facsimile on any Power of Attorney...Any such Power or any certificate thereof bearing such facsimile signature and seal shall be valid and binding on the Company."

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994, and the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies, this 9TH day of NOVEMBER , 2015 .

  

Thomas O. McClellan, Vice President

# EXHIBIT 3-D

| <br>**ZURICH** | **PERFORMANCE BOND** |

**Bond No . LPM9181834**

KNOW ALL MEN BY THESE PRESENTS, that **FIELDWOOD ENERGY LLC** ("**Fieldwood**") as Principal and **ZURICH AMERICAN INSURANCE COMPANY**, a corporation duly organized under the laws of New York and duly authorized and licensed to transact the business of suretyship in the United States of America (the "**Surety**") as Surety, and our administrators, successors and assigns, are held and firmly bound unto **DEUTSCHE BANK AG NEW YORK BRANCH** (the "**Obligee**") in the penal sum of <u>**Sixty-seven Million, Five Hundred Fifty-seven Thousand, Three Hundred Fifty-seven and no/100**</u> (**$67,557,357**) lawful money of the United States of America (the "**Bond Amount**"), for the payment of which well and truly to be made, we bind ourselves, our administrators, successors and assigns, jointly and severally by these presents.

WHEREAS, Fieldwood and its subsidiaries entered into an arrangement with Apache Corporation (the "**Beneficiary**"), among others pursuant to which Fieldwood will perform decommissioning of various oil and gas wells in the Gulf of Mexico and other activities as described in that certain Decommissioning Agreement dated as of September 30, 2013, as amended (the "**Agreement**"); and

WHEREAS, Fieldwood has entered into certain written applications and agreements between the Obligee and Fieldwood dated November 9, 2015 (each as amended, restated, supplemented or otherwise modified, collectively, the "**Reimbursement Agreement**"), under which the Obligee has agreed to provide Obligee's standby letter of credit No. 839BGC1500970 (the "**Security**") to ensure Fieldwood's satisfactory performance of the Agreement to the Beneficiary and Fieldwood has agreed to reimburse the Obligee for any drawings under the Security to the extent that the Obligee is not reimbursed under this Bond.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Surety hereby agrees in favor of the Obligee as follows:

THE CONDITION OF THIS OBLIGATION IS SUCH that, if Fieldwood shall fully, faithfully and timely perform its obligations under the Agreement, then this obligation to be void (unless an Event of Default (as defined below) shall have occurred or thereafter occurs); otherwise, to remain in full force and effect.

The Surety shall be obligated to make payment under this Bond if the Obligee delivers a written notice to the Surety within the time required hereby (which delivery may occur after the performance of such obligations) that an Event of Default has occurred, provided, however, that this Bond is subject to the following conditions:

1.  Event of Default:  An "Event of Default" for purposes of this Bond is the delivery to the Surety by the Obligee of one of the following:

    a.  A written statement from the Obligee, in the form attached hereto as Annex A, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "A" to the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to perform and reimburse the Beneficiary for Government Decommissioning obligations (as defined in the Agreement); or

    b.  A written statement from the Obligee, in the form attached hereto as Annex B, stating that the Beneficiary has made demand upon Obligee under the Security by delivering to the Obligee a written statement in the form of Exhibit "B" to the Security arising from the Obligee having notified the Beneficiary of the Obligee's election to not extend the Security, which shall be taken by Surety as conclusive proof that Fieldwood has failed to provide the Beneficiary with replacement security within the time required by the Agreement.

2.  Preliminary Notice to Surety:  Obligee shall endeavor to notify the Surety, with reasonable promptness, of any facts or circumstances of which Obligee has received actual notice which constitute an Event of Default.  Such preliminary notice is not, however, a condition precedent of the Surety's obligation under this Bond and failure of the Obligee to so notify the Surety shall not relieve or reduce the Surety's liabilities and obligations to the Obligee under this Bond.

3.  Upon the occurrence of an Event of Default, the Surety shall pay to the Obligee the amount demanded in the Obligee's written statement within ten (10) Business Days (as defined below) after receipt of such statement from the Obligee.  Each such written statement from the Obligee shall constitute conclusive evidence of the facts stated therein.  The Surety irrevocably agrees to pay interest on all Overdue Amounts (as defined below) at the annual rate equal to the Prime Rate (as defined below) of the Obligee such interest to accrue on a daily basis for each day that any Overdue Amount remains unpaid, calculated monthly in arrears and shall be compounded monthly until payment in full by the Surety.  The Surety hereby agrees to indemnify and hold harmless the Obligee from and against any and all damages, losses, liabilities and expenses (including, without limitation, reasonable attorneys' fees and disbursements), that may be incurred or sustained by, or asserted or awarded against, the Obligee, in each case arising out of or in connection with or relating to the Surety's failure to pay to the Obligee any amount demanded when due hereunder.  For the purposes of this Bond, (a) the term "**Business Day**" means a day on which chartered banks are open for over-the-counter business in the ordinary course in New York, New York and excludes Saturday, Sunday and any other day which is a recognized holiday in the state of New York; (b) the term "**Prime Rate**" means on any day the fluctuating annual rate of interest established from time to time by the Obligee and in effect that day as the reference rate it will use for purposes of determining rates of interest it will charge on loans to customers in the United States and designated as its prime rate; and (c) the term "**Overdue Amounts**" means amounts due and owing to the Obligee by the Surety under this Agreement.

4.  This Bond sets forth in full the terms of the Surety's liabilities and obligations to the Obligee under this Bond.  Such liabilities and obligations shall not be in any way modified, amended or supplemented by reference to any document or instrument referred to herein, and any such reference shall not be deemed to incorporate herein any document or instrument.  The

Surety's liabilities and obligations under this Bond to the Obligee are not subject to any condition or qualification except as expressly set forth herein and are not contingent on any of the following (and shall not be reduced, diminished or eliminated by virtue of any of the following): (a) the ability or inability of the Surety to acquire or perfect any lien or security interest on any asset or property of Fieldwood, (b) the Surety's success or failure in obtaining indemnification from Fieldwood or (c) any other fact or circumstance involving or affecting any one or more of Fieldwood, the Obligee or the Surety (but the Surety reserving all of its rights against Fieldwood).   This Bond constitutes the Surety's primary, absolute and independent obligation to make payment to the Obligee in accordance with the terms hereof, under any and all circumstances, including, without limitation, due to the lack of validity, legality or enforceability of the Agreement, the Reimbursement Agreement or the Security and irrespective of all objections, exceptions, set-offs, counterclaims or defenses of any kind from the Surety, Fieldwood or other third parties.

5.  Address for Written Statements and Notice:  Any written statement or notice provided under this Bond shall be in writing and shall be delivered by personal delivery, certified mail, express mail, or overnight courier service to the address of the party set out below and to the attention of the person there indicated, provided that any written statement or notice shall be delivered only by personal delivery or overnight courier in the event that there is a threatened or actual discontinuance or interruption of regular postal service:

    a.   if to the Surety:

        Zurich American Insurance Company
        Zurich Surety
        500 Enterprise Drive, Rocky Hill, Connecticut 06067
        Attention: Commercial Surety Underwriting

        with a copy to:

        Zurich Surety Bond Claims
        1400 American Lane
        Schaumburg, Illinois 60196
        reportsfclaims@zurichna.com

    b.   if to the Obligee:

        Deutsche Bank AG New York Branch
        Cherine Kenawy, Trade Finance Operations
        60 Wall Street, 38th Floor
        Mailstop: NYC60-3817
        New York, NY 10005-2836
        Attention: Standby Letter of Credit Department
        DBNY.standby-LC@db.com

        With a copy to:

        Deutsche Bank AG New York Branch

60 Wall Street
New York, NY 10005
Attention: Mr. Prashant Mehra

c.  if to Fieldwood:

Fieldwood Energy LLC
2000 W Sam Houston Parkway S
Suite 1200
Houston, Texas 77042
Attention: Richard D. Black, Sr. Vice President and General Counsel

and such statement or notice shall be deemed to have been received on the fifth (5th) Business Day if sent by certified mail or express mail and deemed to have been received on the following Business Day if sent by overnight courier or personal delivery.  Any party may change its notice address by delivering a notice of such change to the other parties in the manner provided herein.

6.  Limitations on Liability:  The liability of the Surety shall not exceed the Bond Amount stated above, plus all costs and expenses required to be paid by the Surety hereunder, regardless of the number of years that this Bond shall continue or be continued in force and the number or amounts of premiums paid by Fieldwood (it being acknowledged and agreed that all premiums and fees payable to the Surety for the issuance and maintenance of this Bond are the sole obligation of Fieldwood and the Obligee shall have no liability therefor).  Partial and multiple demands are permitted.  The Bond Amount shall be reduced by the amount of any payment made by the Surety under this Bond.  It is expressly agreed that in the event any payments are made under this Bond, the Bond Amount (as it may be reduced from time to time as a result of payments that are made as against the Bond) shall be carried over on an annual basis for each subsequent calendar year in which the Bond is renewed.

7.  This Bond is an annual obligation for the term of November 9, 2015 to November 9, 2017.  This Bond will be automatically renewed for one year annual terms unless the Obligee and Fieldwood are notified of the Surety's intention to not renew or extend this Bond, written notice of which shall be given by the Surety at least ninety (90) days prior to the then current expiration date of this Bond, such cancellation notice to be provided in accordance with Section 5 above.

8.  If the Surety so notifies the Obligee pursuant to Section 7 that this Bond will not be renewed, the Surety acknowledges that the Obligee may be required to notify the Beneficiary at least sixty (60) days prior to the then current expiration date of the Security of the Obligee's election not to extend the Security and that the Beneficiary shall then be entitled to demand payment under the Security in accordance with the Agreement.  To ensure that the Obligee will have sufficient time to make written demand for payment under this Bond in the event the Beneficiary has demanded payment under the Security prior to the latest date the Beneficiary is entitled to make a drawing under the Security, the Surety agrees that if the Beneficiary is entitled to make a drawing under the Security after the then applicable expiration date of the Security for any reason, including, without limitation, the application of applicable laws, rules and regulations relating to letters of credit, the Obligee shall be

given an additional amount of time (equal to the amount of such additional time given to the Beneficiary) to make its written demand on the Surety for payment under this Bond.

9. In the event Fieldwood fails to provide replacement security or other form of collateral acceptable in the Obligee's sole discretion, the Obligee may make written demand for payment under this Bond. Upon payment by the Surety to the Obligee pursuant to this Section 9, the Obligee shall hold such payment in a cash collateral account on the basis that if the Beneficiary makes a demand under the Security issued by the Obligee, the Obligee shall be entitled to appropriate and apply the relevant amount(s) from such cash collateral to make payment to the Beneficiary with the net balance remaining in such cash collateral account being returned by the Obligee to the Surety (or to the representatives of the Surety) when the Obligee has no further obligations or liabilities to the Beneficiary under such Security.

10. This Bond shall be governed by and construed in accordance with the law of the State of New York (without reference to conflict of law doctrine), and the parties submit to the nonexclusive jurisdiction of the courts of the State of New York located in the County of New York.

11. No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Obligee named herein and the administrators, successors and assigns of the Obligee.

12. The Surety hereby represents that it has the power and requisite authority to execute, deliver and perform its obligations under this Bond. The Surety is duly authorized to, and has taken all action necessary to authorize it to, perform its obligations under this Bond and is and will continue to be duly authorized to enter into this Bond and to perform its obligations under this Bond. This Bond is the legal and binding obligation of the Surety enforceable in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance or similar laws affecting creditors' rights generally and general principles of equity (regardless of whether the application of such principles is considered in a proceeding in equity or at law).

SIGNED, SEALED AND DATED this 9th day of November, 2015.


**FIELDWOOD ENERGY LLC**          **ZURICH AMERICAN INSURANCE COMPANY**
(Fieldwood)                                                                (Surety)


By: _____          By: _Janice H. Fennell_
Name: G. M. McCarroll                              Name: Janice H. Fennell
Title:   President and Chief Executive Officer     Title:   Attorney-in-Fact

## ANNEX A

## FORM OF DEMAND UNDER PERFORMANCE BOND

Date:

**Zurich American Insurance Company**
500 Enterprise Drive
Rocky Hill, Connecticut 06067
Attention: Commercial Surety Underwriting
Facsimile:_____

Re:    Performance Bond No. LPM9181831 (the "**Bond**")

Each of the undersigned individuals, authorized officers of Deutsche Bank AG New York Branch (the "**Obligee**"), hereby certifies to Zurich American Insurance Company (the "**Surety**"), with reference to the Performance Bond No. LPM9181831 (the "**Bond**") dated November 9, 2015 issued in favor of the Obligee by the Surety for the account of Fieldwood Energy LLC ("**Fieldwood**"), as follows (any capitalized term used in this Demand Under Performance Bond and not defined herein shall have its respective meaning as set forth in the Bond):

1.      The undersigned is authorized to make this Demand Under Performance Bond on behalf of the Obligee.

2.      The Obligee is entitled to make a drawing in the amount of [$_____] (the "**Drawing Amount**") pursuant to the terms and conditions of the Bond.  Such Drawing Amount does not exceed the amount available for drawing under the Bond, and the time for the Obligee to demand payment under the Bond has not expired.

3.      The undersigned has been notified that, pursuant to the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC (collectively "Seller"), Fieldwood and GOM Shelf LLC, as amended, restated or otherwise modified from time to time (the "Decommissioning Agreement"), Obligee was required to make payment to Seller under a standby letter of credit issued in favor of Seller as a result of Fieldwood's failure to reimburse and pay Seller or its Affiliate for Reimbursable Amounts (as such terms are defined in the Decommissioning Agreement) in the amount of the Drawing Amount within the time period specified in Section 2.7(b) of the Decommissioning Agreement.

4.      Please remit payment in the amount of [$_____] within ten (10) business days, by wire transfer, to the order of Obligee in accordance with the following payment instructions:

[insert payment instructions]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Demand Under Performance Bond on [insert date of the Demand Under Performance Bond].

**Obligee:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By: _____
Name: _____
Title: _____

By: _____
Name: _____
Title: _____

## ANNEX B

## FORM OF NON-EXTENSION DRAWING REQUEST

Date:

**Zurich American Insurance Company**
500 Enterprise Drive
Rocky Hill, Connecticut 06067
Attention: Commercial Surety Underwriting
Facsimile:_____

Drawn under Zurich American Insurance Company
Performance Bond No. LPM9181831
Dated November 9, 2015

Each of the undersigned individuals, authorized officers of Deutsche Bank AG New York Branch (the **"Obligee"**), hereby certifies to Zurich American Insurance Company (the **"Surety"**), with reference to the Performance Bond No. LPM9181831 (the **"Bond"**) dated November 9, 2015 issued in favor of the Obligee for the account of Fieldwood Energy LLC (**"Fieldwood"**), as follows (any capitalized term used in this Non-Extension Drawing Request and not defined in this Non-Extension Drawing Request shall have its respective meaning as set forth in the Bond):

1.      The undersigned is authorized to make this Non-Extension Drawing Request on behalf of the Obligee.

2.      The Obligee is entitled to make a drawing in the amount of [$_____] pursuant to the terms and conditions of the Bond.  Such Drawing Amount does not exceed the amount available for drawing under the Bond, and the time for the Obligee to demand payment under the Bond has not expired.

3.      The undersigned has been notified that, pursuant to the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC (collectively "Seller"), Fieldwood and GOM Shelf LLC, as amended, restated or otherwise modified from time to time, (the "Decommissioning Agreement"), Obligee was required to make payment to Seller in the amount of the Drawing Amount under the security issued in favor of Seller as a result of Obligee's election to not extend the security.

4.      Please remit payment in the amount of [$_____] within ten (10) business days, by wire transfer, to the order of Obligee in accordance with the following payment instructions:

[insert payment instructions]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Non-Extension Drawing Request on [insert date of Non-Extension Drawing Request].

**Obligee:**

**DEUTSCHE BANK AG NEW YORK BRANCH**

By: _____
Name: _____
Title: _____


By: _____
Name: _____
Title: _____

**ZURICH AMERICAN INSURANCE COMPANY**
**COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**
**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**
**POWER OF ATTORNEY**

KNOW ALL MEN BY THESE PRESENTS: That the ZURICH AMERICAN INSURANCE COMPANY, a corporation of the State of New York, the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, a corporation of the State of Maryland, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND a corporation of the State of Maryland (herein collectively called the "Companies"), by **JAMES M. CARROLL, Vice President,** in pursuance of authority granted by Article V, Section 8, of the By-Laws of said Companies, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, do hereby nominate, constitute, and appoint **Richard C. ROSE, Jeremy C. ROSE and Janice H. FENNELL, all of Knoxville, Tennessee, EACH** its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: **any and all bonds and undertakings,** and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the ZURICH AMERICAN INSURANCE COMPANY at its office in New York, New York., the regularly elected officers of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at its office in Owings Mills, Maryland., and the regularly elected officers of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at its office in Owings Mills,  Maryland., in their own proper persons.

The said Vice President does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article V, Section 8, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President has hereunto subscribed his/her names and affixed the Corporate Seals of the said **ZURICH AMERICAN INSURANCE COMPANY, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,** this 20th day of November, A.D. 2012.

ATTEST:

**ZURICH AMERICAN INSURANCE COMPANY**
**COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**
**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**

  

By: *Gerald F. Haley*

*Assistant Secretary*
*Gerald F. Haley*

*James M. Carroll*

*Vice President*
*James M. Carroll*

**State of** Maryland
County of Baltimore

On this 20th day of November, A.D. 2012, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, **JAMES M. CARROLL, Vice President, and GERALD F. HALEY, Assistant Secretary,** of the Companies, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and acknowledged the execution of same, and being by me duly sworn, deposeth and saith, that he/she is the said officer of the Company aforesaid, and that the seals affixed to the preceding instrument are the Corporate Seals of said Companies, and that the said Corporate Seals and the signature as such officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

*Constance A. Dunn*

Constance A. Dunn, Notary Public
My Commission Expires: July 14, 2019

POA-F  164-6135C

## EXTRACT FROM BY-LAWS OF THE COMPANIES

"Article V, Section 8, <u>Attorneys-in-Fact</u>.  The Chief Executive Officer, the President, or any Executive Vice President or Vice President may, by written instrument under the attested corporate seal, appoint attorneys-in-fact with authority to execute bonds, policies, recognizances, stipulations, undertakings, or other like instruments on behalf of the Company, and may authorize any officer or any such attorney-in-fact to affix the corporate seal thereto; and may with or without cause modify of revoke any such appointment or authority at any time."

### CERTIFICATE

I, the undersigned, Vice President of the ZURICH AMERICAN INSURANCE COMPANY, the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that Article V, Section 8, of the By-Laws of the Companies is still in force.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the ZURICH AMERICAN INSURANCE COMPANY at a meeting duly called and held on the 15th day of December 1998.

RESOLVED:  "That the signature of the President or a Vice President and the attesting signature of a Secretary or an Assistant Secretary and the Seal of the Company may be affixed by facsimile on any Power of Attorney...Any such Power or any certificate thereof bearing such facsimile signature and seal shall be valid and binding on the Company."

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994, and the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990.

RESOLVED:  "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies, this  9TH day of NOVEMBER           , 20 15 .

  

Thomas O. McClellan, Vice President

# EXHIBIT 4



## GENERAL INDEMNITY AGREEMENT

THIS GENERAL INDEMNITY AGREEMENT ("Agreement"), dated this <u>18</u> day of **September**, **2014** by the undersigned (individually and collectively "**Indemnitors**") in favor of ZURICH AMERICAN INSURANCE COMPANY and its subsidiaries, affiliates and associated companies in any jurisdiction, including but not limited to FIDELITY AND DEPOSIT COMPANY OF MARYLAND, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH INSURANCE GROUP LTD., their respective successors and assigns (individually and collectively "**Surety**") with respect to any bond, undertaking, and/or obligation of suretyship or guarantee executed, provided or procured ("issued") by Surety (whether as surety, co-surety, reinsurer or otherwise) whether issued before or after this Agreement, including all renewals, extensions, modifications and substitutions of Bonds ("Bonds" and individually "Bond"). Bonds may be issued in the name of or on behalf of (a) any Indemnitor, (b) any subsidiary or affiliate of any Indemnitor (c) any joint venture, consortium or other economic enterprise in which any Indemnitor is or was a member at the time the Bond was issued and/or (d) any third party on request of any Indemnitor. Indemnitors' obligations under this Agreement are continuing, including obligations for Bonds issued for entities that may be sold, dissolved, otherwise disposed of, or for which ownership or management changes may occur in the future.

As an inducement to Surety, Indemnitors represent, covenant and agree for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

1. **PREMIUMS:**  Indemnitors shall promptly pay all premiums and charges of Surety for Bonds, at the current rate charged by Surety, until Surety has been provided satisfactory evidence, that Bonds have been fully released and/or discharged.

2. **INDEMNITY:** Indemnitors, jointly and severally, shall exonerate, indemnify, and hold Surety harmless from any and all liability, loss, premiums, claims, damages, extra-contractual damages, court costs and expenses, attorneys' fees, consultant fees, interest, and all other costs and expenses that Surety incurs or sustains (all of the foregoing "Loss") arising from or related to: (a) the underwriting or issuance of any Bond, (b) any Claim, which means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond or this Agreement,(c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of the Surety's interests, or to avoid or lessen Surety's liability or alleged liability.  Indemnitors' liability to Surety includes all Loss, all payments made, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the Loss, the amounts paid or the actions taken or that it was necessary or expedient to incur such Loss, make such payments or take such actions, whether or not such liability, necessity or expediency existed.  Good Faith means, with respect to any act, exercise of discretion or omission by Surety, an absence of dishonesty, evil intent and actual malice toward Indemnitors.  An itemized statement of Loss, sworn to by any officer of Surety, or vouchers, affidavits, or other evidence of payment by Surety, shall be *prima facie* evidence of Indemnitors' liability for such Loss.

3. **SURETY'S RIGHT TO SETTLE:** Surety has the absolute and unconditional right and is authorized but not required to pay, perform, settle, compromise, deny, litigate or otherwise resolve any Claim or pay any Loss under any Bonds.  The Surety's decision shall be final, binding, and conclusive on the Indemnitors.

4. **PLACE IN FUNDS:**  Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss.  Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss.  Any remaining funds held by Surety after payment of all sums due to Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

5. **ISSUANCE OF BONDS:** Surety may decline to issue, execute, modify, procure, extend, or renew any bond and may cancel or terminate any Bond without incurring any liability whatsoever to Indemnitors or otherwise impairing its rights, however derived.

6. **OTHER SURETIES AS BENEFICIARIES:** If Surety procures the issuance  of any Bond by other sureties, or issues any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then this Agreement shall inure to the benefit of such other sureties, co-sureties and/or reinsuring sureties, including the right to bring an action for enforcement of this Agreement. Surety may share any information relevant to a Claim or underwriting of Bonds with co-sureties, fronting companies, and/or reinsurers.

7. **EVENT OF DEFAULT:** Indemnitors shall be in default of this Agreement if any of the following occur: (a) breach of any Bond; (b) failure to provide collateral in response to a demand made by Surety; (c) breach of any other provision of this Agreement; (d) Surety setting a reserve against Loss or incurring Loss; (e) any Indemnitor becomes the subject of a bankruptcy, ceases or threatens to cease to carry on business, or has any resolution passed or order made for its bankruptcy, winding-up, liquidation or dissolution; or (f) representations made to Surety by or on behalf of any Indemnitor prove to have been materially false or misleading when made

8. **SURETY'S ADDITIONAL RIGHTS:** This Agreement is in addition to and not in lieu of all rights, powers, and remedies that Surety may have or acquire against Indemnitors or others, and does not waive, release or novate other agreements. Surety may make, consent to or decline to consent to changes in Bonds, may accept, modify or release any Indemnitor, and may accept, modify, subordinate or release any other indemnity, collateral, rights, real or personal property and/or security. Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution against each other and/or any principal until all obligations to Surety under this Agreement, at law or in equity, have been satisfied in full. Surety's forebearance or failure to act to enforce any right shall not waive or diminish any of its rights, which rights may be enforced at any time in Surety's sole discretion,

9. **WAIVER OF NOTICE:** Indemnitors waive notice of the issuance or cancellation of any Bond, any settlement or any act, fact or information concerning or affecting the rights and liabilities of the Surety or the rights or liabilities of Indemnitors under the Bonds or this Agreement, notwithstanding any notice of any kind to which Indemnitors might otherwise have been or be entitled, and notwithstanding any defenses they might have been or be entitled to assert

10. **DISCHARGE:** Indemnitors shall promptly, on Surety's written demand, procure the full and complete discharge of Surety from all Bonds demanded by Surety and all liability in connection with such Bonds.  If Indemnitors are unable to obtain such discharge within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations, or otherwise make provisions acceptable to Surety for the funding of the bonded obligations

11. **LAWSUITS:** Separate suits may be brought under this Agreement as causes of action accrue, and the bringing of suits or the recovery of judgment on any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether arising before or after any other lawsuit or cause of action.

12. **EXECUTION AND CHANGES:** This Agreement may be executed in counterparts, all of which taken together shall constitute the Agreement.  This Agreement shall be effective and immediately binding as to each Indemnitor when that Indemnitor executes this Agreement, regardless of whether any other Indemnitor fails or refuses to execute this Agreement.  This Agreement shall only be changed or modified in writing.

13. **SEVERABILITY:**  If any provision in this Agreement is found to be contrary to any law applicable to any Indemnitor, or is otherwise found void or unenforceable, the remainder of this Agreement shall remain in full force and effect as to that Indemnitor, and the entire Agreement shall remain of full force and effect as to all other Indemnitors.

14. **TERMINATION OF INDEMNITY:**  This Agreement remains in effect until terminated and released by Surety. Any Indemnitor may send written notice to Surety of that Indemnitor's intent to terminate its participation under this Agreement for Bonds issued after the Effective Date of the notice.  Such termination of participation shall be effective twenty (20) days from Surety's receipt of the notice ("Effective Date"); however such termination of participation shall not terminate, reduce or discharge Indemnitor's obligations for Bonds issued prior to the Effective Date.  The notice of intent to terminate, and any other notices to Surety, shall be addressed as follows: **Zurich Surety, Red Brook Corporate Center, 600 Red Brook Blvd., 4th Floor, Owings Mills, Maryland 21117, Attention: Vice President, Commercial Surety.**

15. **REPRESENTATIONS AND WARRANTIES:** Each Indemnitor represents and warrants the following:  (a) Indemnitor has a substantial, material, and/or beneficial interest in one or more Indemnitors or Principals obtaining Bonds or in Surety refraining from canceling Bonds; (b) Indemnitor has the full power and authority to execute and deliver this Agreement and to perform all obligations in this Agreement; (c) Indemnitor's execution and delivery of this Agreement and performance in accordance with its terms does not and will not conflict with, and will not result in a breach or violation of, any terms or conditions of any law, order, regulation or other agreement or obligation binding on Indemnitor; (d) All information provided to Surety by each Indemnitor prior to and after the execution of this Agreement is true, accurate and complete as of the time provided; and (e) each right, power and remedy given to Surety, under this Agreement or otherwise, forms a material part of Surety's consideration for Bonds.

**SIGNATURE PAGE(S) TO FOLLOW**

## SIGNATURE INSTRUCTIONS

*All signatures should be notarized and dated.*

1.  Corporation: an officer on the operational side (i.e. President, CEO, COO) and an officer on the finance side (i.e. Secretary, CFO, Treasurer) should sign;
2.  Limited Liability Corporation (LLC): (a) if manager-managed, and if only one manager, the manager should sign; if more than one manager, two managers should sign (b) if member-managed, two members should sign unless there is only one member, then the one member should sign, or (c) if the LLC has appointed officers to manage the LLC, an officer on the operational side and an officer on the finance side should sign.
3.  Limited Partnership (LP): (a) if only one general partner, the general partner should sign; (b) if more than one general partner, two general partners should sign.
4.  Limited Liability Partnership (LLP): at least two partners should sign.
5.  Trust: All of the Trustee(s) should sign.

**By signing below, each of the undersigned affirms to Surety that the undersigned is a duly authorized officer, manager, trustee, official or member of the entity for which the undersigned executes the foregoing Agreement. In such capacity the undersigned is familiar with all of the documents which establish the rights and which govern the affairs, power and authority of such entity including, to the extent applicable, the (1) certificate or articles of incorporation, (2) bylaws, (3) resolutions, (4) partnership, operating or limited liability agreements or (5) trust agreements of such entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the undersigned affirms that such entity has the power and authority to enter into such Agreement and that the undersigned is duly authorized to execute this Agreement on behalf of the entity and to bind the entity to its terms.**

*(The remainder of this page intentionally left blank)*

**INDEMNITORS**:

Fieldwood Energy LLC
Fieldwood Energy Offshore LLC
GOM Shelf LLC
Fieldwood SD Offshore LLC

LAST 4 DIGITS OF   *(SEAL, IF A*
INDEMNITOR'S TIN:   *CORPORATION)*
6778

_____

*Signer #1*

By: _____

[G. Matt McCarroll]

Date:  [September 18], 2014

As CEO of **Fieldwood Energy LLC**
As CEO of **Fieldwood Energy Offshore LLC**
As CEO of **GOM Shelf LLC**
As CEO of **Fieldwood SD Offshore LLC**

---

NOTARIAL ACKNOWLEDGEMENT

STATE OF: _____   COUNTY OF: _____

The following instrument was acknowledged before me this 18 day of September , 20 14 by:

[*name of signatory*] G. MATT McCARROLL as :

as [title] President & CEO of [entity #1] Fieldwood Energy LLC ; and
as [title] President & CEO of [entity #2] Fieldwood Energy Offshore LLC ; and
as [title] President & CEO of [entity #3] GOM Shelf LLC ; and
as [title] President & CEO of [entity #4] Fieldwood SD Offshore LLC ;

all of the above entities the "Entities", on behalf of the Entities.  He/~~She is~~ personally known to me or has produced [*form of identification*]
_____ as identification.

My commission expires:      Notary Seal:

Notary Public Signature       9-14-2017

Printed Name Mindy A Gregory   20____

MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017

---

**[CONTINUED FROM PRIOR PAGE - SIGNATURE PAGE when the same authorized representatives are signing for multiple business entities]**

*Signer #2*

By: _____       Date: [September 18, 2014
  [John H. Smith

  As **VP of Business Development** of **Fieldwood Energy LLC**
  As **VP of Business Development** of **Fieldwood Energy Offshore LLC**
  As **VP of Business Development** of **GOM Shelf LLC**
  As **VP of Business Development** of **Fieldwood SD Offshore LLC**

---

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: _TEXAS_____       COUNTY OF: _HARRIS_____

The following instrument was acknowledged before me this _18_ day of _SEPTEMBER_, 20_14_ by:

*[name of signatory]* _____ JOHN H. SMITH___ as :

as [title] _VICE PRESIDENT LAND AND BUSINESS DEVELOPMENT_ of [entity #1] ___FIELDWOOD ENERGY LLC_____ ; and

as [title] _VP LAND AND BUSINESS DEV_ of [entity #2] _FIELDWOOD ENERGY OFFSHORE LLC___ ; and

as [title] _VP LAND + BUSINESS DEVELOP_ of [entity #3] _GOM SHELF LLC_____ ; and

as [title] _VP LAND + BUSINESS DEVELOP_ of [entity #4] _FIELDWOOD SD OFFSHORE LLC_____ ;

all of the above entities the "Entities", on behalf of the Entities.  He/~~She~~ is personally known to me or has produced *[form of identification]* _____ as identification.

My commission expires:       Notary Seal:

_____       _9-14-2017_ ,
Notary Public Signature       20____

Printed Name _Mindy A Gregory_

MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017

---

*(The remainder of this page intentionally left blank)*

# EXHIBIT 5
# Filed Under Seal

# EXHIBIT 6
# Filed Under Seal

# EXHIBIT 7
# Filed Under Seal

# EXHIBIT 8
# Filed Under Seal