# EXHIBIT E




A Member of the Tokio Marine Group

## GENERAL INDEMNITY AGREEMENT
## COMMERCIAL SURETY

**THIS GENERAL INDEMNITY AGREEMENT** (hereinafter called the "Agreement") is made by the undersigned Indemnitors, jointly and severally, in favor of PHILADELPHIA INDEMNITY INSURANCE COMPANY (hereinafter "Surety"), for the purpose of collateralizing, exonerating, and indemnifying Surety for any Bonds issued pursuant to this Agreement.

**WHEREAS**, Principals and Indemnitors may be required to give or procure Bonds in the performance of certain agreements and/or contracts, and to renew, continue, extend or substitute such Bonds from time to time; and

**WHEREAS**, Surety has been requested to execute, or has executed, Bonds on behalf of the Principals with the express understanding Indemnitors execute this Agreement; and

**WHEREAS**, Principals and Indemnitors have a substantial, material and beneficial interest in the obtaining of bonds or in the Surety's refraining from cancelling any or all Bonds.

**NOW THEREFORE**, in consideration of the foregoing and intending to be legally bound hereby, the Indemnitors and Principals for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, along with its successors and assigns, as follows:

1. **DEFINITIONS**: The following terms are defined as follows:

   a. **Bond:** All surety bonds, undertakings, recognizances, instruments of guarantee or other surety obligations and any renewals, modifications or extensions thereof issued on behalf of any Principal or Indemnitor by: Surety, or any other party at the request of Surety; and, as to all of the foregoing, whether issued before or after execution of this Agreement. The term Bond also includes any electronic processes in lieu of the issuance of paper bonds, whether in the contract bidding process or otherwise.

   b. **Bonded Contract:** A contract for which Surety issues or has issued a Bond.

   c. **Indemnitors**: Indemnitors include: (i) all Persons who sign this Agreement or whose authorized representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement, including, without limitation: (1) any Persons added to this Agreement via rider or amendment and (2) any Person who agrees to be bound by this Agreement in response to a request from any Indemnitor or Principal named herein; (ii) any present or future, direct or indirect, subsidiary, successor, affiliate, or parent of any Indemnitor or Principal; and (iii); and, as to all of the foregoing, whether they act alone or in joint venture with others, whether or not said others are named herein.

   d. **Good Faith:** Good faith shall mean honesty in fact and the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed the absence of good faith.

   e. **Persons:** An individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity.

   f. **Principals**: Any Persons for whom Bond(s) are issued by Surety, whether by such Persons' own request or at the request of any Indemnitor, including, without limitation, any present or future, direct or indirect, subsidiary, successor, affiliate, or parent of any Indemnitor or Principal, or any other entity or person for whom Bond(s) are issued by Surety in response to a request from any Indemnitor or Principal named herein, and, as to all of the foregoing, whether they act alone or in joint venture with others, whether or not said others are named herein.




g. **Surety**: Philadelphia Indemnity Insurance Company, or any other present or future subsidiary or affiliate of thereof, which may issue Bonds, as well as any and all sureties, co-sureties or reinsurers who issue, execute or reinsure any portion of the Bond or who procure bonds at the request of Surety. The terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsurers.

h. **Default:** Any instance or condition where Principals or Indemnitors have or are alleged to have: (i) failed to pay any Bond premium charge when due; (ii) forfeited, breached, abandoned, repudiated, or defaulted any Bonded Contract; (iii) neglected or refused to pay for any indebtedness due in relation to any Bonded Contract, (iv) failed to honor any obligation under this Agreement; (v) become the subject of any voluntary or involuntary agreements or proceedings of liquidation, insolvency, bankruptcy, receivership, trusteeship, or be party to any assignment for the benefit of creditors; (vi) with respect to any Indemnitors which are not individuals, dissolved or ceased to continue their legal existence; (viii) in the case of Indemnitors who are individuals, died, absconded, disappeared, become incompetent, are convicted of a felony or are imprisoned; (ix) violated any other written agreement with Surety, or (x) failed to procure the discharge of Surety from any Bond upon Surety's request.

i. **Liability & Loss**: Any and all liability, losses, costs, expenses, and fees of whatever kind or nature that Surety may sustain or incur as a result of executing any Bond, or as a result of the failure of Principals or Indemnitors to perform or comply with this Agreement. Liability & Loss includes but is not limited to: (i) the face amount of any claim or demand that is asserted against Surety under any Bond(s) plus the Surety's estimate of the costs and expenses Surety may sustain and incur while paying, compromising, resisting, defending, trying or appealing the claim or demand (in Surety's sole discretion) (ii) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (iii) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (iv) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors; (v) funds loaned or advanced by Surety (at the Surety's sole discretion) to the Principal; and (vi) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

2. **PREMIUMS** - Principals and Indemnitors shall pay to the Surety when due all premiums, costs and charges of the Surety for any Bonds issued by the Surety in accordance with its rate filings, its manual of rates as determined by the Surety, or as otherwise determined by the Surety, and where such premium, costs and charges are annual, continue to pay the same until the Principals or Indemnitors shall deliver evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

3. **INDEMNITY** – Principals and Indemnitors agree to indemnify and hold harmless Surety from and against any Liability & Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Principals or Indemnitors to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement. The Principals' and Indemnitors' obligations to indemnify the Surety shall also apply to any Bond renewals, continuations or substitutes therefore and shall extend to any payments made by Surety under the Good Faith belief that (a) Surety was or might be liable therefor or (b) the payments were necessary or advisable to protect any of Surety's rights or to avoid or lessen Surety's liability or alleged liability. In the event of payments by Surety, Principals and Indemnitors agree to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Principals and Indemnitors to Surety in any demand, claim or suit by Surety against Principals and Indemnitors. Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by




A Member of the Tokio Marine Group

Surety. The Surety may, but shall not be obligated to, join any or all of the Principals or Indemnitors as parties to any action relating to any Bonds or this Agreement, and Surety shall have no obligation to exhaust any remedies against any person or entity prior to pursuing any such action against one or more Principals or Indemnitors. All Principals and Indemnitors waive and subordinate all rights of indemnity, subrogation, and contribution against each other until all obligations due to the Surety under this Agreement, at law, or at equity have been fully satisfied. The Surety shall be entitled to intervene in any action between one or more Principals or Indemnitors in order to enforce this provision.

4. **POSTING OF COLLATERAL** – Principals and Indemnitors agree to deposit collateral immediately upon demand by Surety an amount equaling any and/or all of the following: (a) the face amount of any claim or demand that is asserted against Surety under any Bond(s) plus the Surety's estimate of the costs and expenses Surety may sustain and incur while paying, compromising, resisting, defending, trying or appealing the claim or demand (in Surety's sole discretion); (b) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (c) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (d) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principals or Indemnitors; (e) funds loaned or advanced by Surety (at the Surety's sole discretion) to the Principals; (f) an amount Surety determines (at Surety's sole discretion) is sufficient to collateralize or pay any outstanding Bond obligations and all liability in connection with any Bond if Principals and Indemnitors are unable to produce the full and complete discharge of Surety from its Bonds upon Surety's request; and (g) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors. Surety may, in its sole discretion, either retain or use any part or all of the collateral in settlement or payment of any claim made under any Bond(s), as collateral or reimbursement for any actual Liability & Loss already incurred, as reserve to cover the amount of any potential Liability & Loss, or for any other purpose related to any Liability & Loss for which the Indemnitors would be required to collateralize, exonerate, or indemnify Surety under the terms of this Agreement. The Principals and Indemnitors shall be obligated to deposit the amount of collateral demanded by Surety regardless of whether they dispute their liability for any Liability & Loss or potential Liability & Loss or assert any defenses to the validity or enforcement of this Agreement. In the event that Surety demands collateral from more than one Principal or Indemnitor, Surety shall be entitled, in its sole discretion, to apportion the amount of collateral required to be deposited by each Principal or Indemnitor. If Surety permits the Principals and Indemnitors to deposit less than the full amount of either (a) through (g) herein, Surety may, from time to time, require the Principals and Indemnitors to increase the amount of the collateral by any amount Surety deems appropriate, in its sole discretion, up to an amount equal to (a) through (g) herein. In the event that the Principals and Indemnitors fail to deposit the amount of cash collateral required under this provision, Surety may, in its sole discretion, direct the Principals and Indemnitors to deposit alternate forms of collateral security acceptable to Surety. Principals and Indemnitors acknowledge that their duty to deposit collateral under this Paragraph is specifically enforceable because Surety lacks an adequate remedy at law and their failure to deposit collateral with Surety as required by this Paragraph will cause irreparable harm to as to justify injunctive relief compelling the deposit of collateral. Surety agrees to refund any unused portion of the deposit, without any interest or other damages for loss of use of such funds, upon the termination of all liability of Surety on all Bonds and the full performance of all of the Principals and Indemnitors of all obligations under this Agreement.

5. **ASSIGNMENTS** – In the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, as of the date of execution of each Bond, all of their rights under all Bonded Contract(s), including: (a) all claims and causes of action against any parties to the Bonded Contract(s) or against third parties arising from or relating to the Bonded Contract(s); and (b) any other rights to payment from any person or entity in relation to the Bonded Contracts, including but not limited to, any insurance proceeds or premium refunds, any tax or assessment refunds, or any rights to payment by virtue of participation in a



partnership, joint venture, or the like. In the event that the Surety receives any monies in excess of the total amount of its Liability & Loss or potential Loss on any individual Bond or Bonded Contract, Surety shall be entitled to apply any such excess amounts toward the Surety's Liability & Loss or potential Liability & Loss on any other Bonds or Bonded Contracts until the Surety has been fully reimbursed and collateralized as provided by the terms of this Agreement. In the event of Default, Principal and Indemnitors further hereby agree to appoint and designate Surety and its authorized representatives as their respective Attorneys-in-Fact with power to (i) endorse and sign in the name of Principal or Indemnitor, as payee or otherwise, all documents and all checks, drafts, warrants or other instruments made or issued in connection with the Bonded Contract(s); and (ii) execute any and all documents in connection with the Bonded Contract(s) consistent with the Surety's rights as assignee per the terms of this paragraph.

6. **FILING OF AGREEMENT UNDER THE UCC** – This Agreement shall constitute a Security Agreement and grants to Surety a security interest in all assets, and also shall constitute a Financing Statement naming Surety as secured creditor and each Indemnitor as debtor, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of a copy of this Agreement shall be solely at the option of Surety and Surety's failure to do so shall not release or impair any obligation of Indemnitors, under this Agreement or otherwise arising, nor shall such failure to file be in any manner in derogation of Surety's rights under this Agreement or otherwise. Each Indemnitor hereby irrevocably appoints and designates Surety or its authorized representative as its respective Attorneys-In-Fact to sign any Financing Statement or any other form which may be required in order to file the same in any jurisdiction or office. A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

7. **SURETY'S CONSENT TO CHANGES** - Surety may consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, including any changes that might increase the liability of any Principals or Indemnitors, or Surety may refuse to consent to any such change. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to Surety under this Agreement.

8. **CLAIMS** - Surety shall have the exclusive right, in its sole discretion, to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, on the basis of Surety's Good Faith belief that it is or could be liable or because the Surety deems it necessary or expedient to do so, and Surety's decision thereon shall be final and binding upon the Indemnitors. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principals or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall upon request: (a) provide a reasonable basis or bases for litigating such claim or demand, or defending such suit, or appealing from such judgment and; (b) deposit with the Surety cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorney's fees.

9. **SURETY'S RIGHT TO DECLINE BONDS** - Surety has the right to decline to execute any Bond requested by the Principals or Indemnitors, including any such Bond requested after Surety has executed a preliminary bond including, but not limited to, a bid or proposal bond, or a Consent of Surety to the issuance of Bonds. Surety's declining to issue or execute any Bond shall not release or affect the obligations of Indemnitors to Surety under this Agreement. Principals and Indemnitors acknowledge that the Surety makes no representations as to the acceptability of any of its Bonds to any person, firm or entity under any contract, and that Principal and Indemnitors shall have no claim against the Surety relating to the failure or refusal of any entity to accept any Bond issued by the Surety.




10. **DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

11. **ACCESS TO BOOKS & RECORDS** - Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principals and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principals and Indemnitors agree to provide updated financial statements upon the Surety's request. Principals and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder. Principals and Indemnitors also hereby authorize any bank, financial or lending institution, or depository to provide Surety with access to any bank statements or financial records or any other information or documents requested by Surety. Principals and Indemnitors acknowledge that their duty to provide access to books and records under this Paragraph is specifically enforceable because Surety lacks an adequate remedy at law and their failure to provide access to Surety as required by this Paragraph will cause irreparable harm to as to justify injunctive relief compelling such access be provided.

12. **INDEMNITORS' WAIVER OF NOTICE** - Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond and agree to keep themselves fully informed as to the business activities and financial affairs of any one or more of the Indemnitors or any Principal for whom Bonds are executed by Surety. Indemnitors hereby expressly waive any notice from the Surety of any fact or information coming to the attention or knowledge of the Surety which affects its rights or the rights or liabilities of the Indemnitors, including notice of execution of any particular Bond subject to this Agreement.

13. **EFFECT OF INVALIDITY** - Any defect or invalidity in the execution of this Agreement by any Indemnitor shall not in any manner affect the validity of these obligations or the liability hereunder of the other Indemnitors. Invalidity of any provision of this Agreement by reason of the laws of any State or for any other reason shall not render the remaining provisions of this Agreement invalid, and this Agreement shall be construed and enforced with the same effect as though such provision or provisions were omitted.

14. **TERMINATION BY ANY INDEMNITOR** - Any Indemnitor wishing to terminate this Agreement must give Surety written notice as provided in this Agreement which shall be deemed effective thirty (30) days from date of receipt by Surety. The termination will not affect Indemnitors' obligations hereunder with respect to any Bonds executed and issued prior to the effective date of termination of this Agreement by that Indemnitor. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

15. **EFFECT OF CHANGE IN STATUS/TRANSFER OF ASSETS** - Each Principal and Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to the extent such change has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Principal or Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Principal or Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. The Principals and Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to an LLC, LLP or similar status. Principals and Indemnitors acknowledge that the Surety relies upon the assets reflected in their financial statements in the issuance of Bonds, and agree not to dispose of or transfer said assets, except in the ordinary course of business, without the prior, express, written consent of Surety.

16. **NOTICE OF CHANGE IN RESIDENCE** - Each Indemnitor who is an individual agrees to give Surety written notice of any change in his/her primary residence within 30 days of the change of address. Each Indemnitor, that is not an individual, agrees not to change its principal place of business or the state of jurisdiction in



which it is incorporated or otherwise organized without also giving Surety thirty (30) days prior written notice of the proposed change. If Surety has previously filed a Uniform Commercial Code Financing Statement with respect to such Indemnitor, Indemnitor agrees that Surety may file a Financing Statement in the new state or jurisdiction.

17. **EFFECT OF RELEASE OF ANY INDEMNITOR** - Indemnitors agree that, at any time, Surety may release any Indemnitor or Indemnitors from this Agreement, without affecting, reducing or otherwise limiting the obligations of any remaining Indemnitor, and Indemnitors hereby expressly waive both (a) notice from Surety of any such release, and (b) any defense that may be created in favor of any remaining Indemnitor as a result of Surety's release of another Indemnitor. Waiver of any one Default shall not be deemed a waiver of any other Default.

18. **APPLICABILITY OF AGREEMENT** - This Agreement shall apply to all Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others. Principals and Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Principals and Indemnitors admit and acknowledge that any such Bond was executed pursuant to a request and in reliance on the representation and promise of Principals and Indemnitors to execute this Agreement.

19. **PAYMENTS BY INDEMNITORS** - All payments made by Indemnitors to Surety under this Agreement shall be in United States Dollars and in no other currency and shall be sent, at Surety's discretion via check or wire transfer to any bank account subsequently designated by Surety. All sums payable to the Surety under this Agreement shall bear interest if not paid by Indemnitors within ten (10) days of demand by Surety. The interest rate shall be an annual rate of 10%, or the maximum rate permitted by applicable law if less than 10%.

20. **JURISDICTION -** As to any legal action related to this Agreement, Principal and Indemnitors consent to the jurisdiction of any court of competent jurisdiction, including the jurisdiction of any state or federal court where the Surety, Principal, or one or more of any of the Indemnitors is domiciled or doing business, at the sole discretion of the Surety. Principal and Indemnitors waive any right to trial by a jury for any tort or contract claims related to this Agreement and waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

21. **DELIVERY OF NOTICES** – Any notices provided pursuant to this Agreement shall be sent by registered mail or overnight delivery to the last known address and shall constitute service whether or not actually received.

22. **ADDRESS FOR NOTICES** - All notices required to be given by Indemnitors under this Agreement shall be sent to Philadelphia Indemnity Insurance Company, One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004, Attn: Surety Division.

23. **CONSTRUCTION OF AGREEMENT** - This Agreement shall be liberally construed so as to protect, exonerate, and indemnify Surety, and any ambiguity or inconsistency shall be construed in favor of Surety's rights and remedies. Surety shall have every right, remedy, or defense that any uncompensated personal surety would have, and the provisions of this Agreement shall be cumulative and in addition to any rights, remedies, or defenses available to Surety at law, in equity, or otherwise. No act or failure to act by Surety shall be construed as an election of rights, remedies, or defenses..

24. **CONSENT TO OBTAIN CREDIT REPORTS** – Principals and Indemnitors hereby consent and agree that Surety may access personal credit reports from time to time for the purposes of (including, but not limited to): (a) evaluating and monitoring credit worthiness for the extension of surety credit; (b) verifying information provided by Principal and Indemnitors; and (c) aiding in the collection of any Liability & Loss.



25. **CORPORATE ACTS & APPROVALS –** Principals and Indemnitors acknowledge and agree that each has a material and beneficial interest in all Bonds issued hereunder by the Surety and that each is authorized and empowered by their respective bylaws, charters, membership agreements, or other organizational documents to execute, deliver and perform their obligations under this Agreement with respect to all such Bonds. Principals and Indemnitors further represent and warrant that they have obtained all internal corporate and/or organizational approvals, consents and authorizations necessary to facilitate the execution, delivery and performance of this Agreement, any amendments hereto, and any other agreement executed by any Principal or Indemnitor for the benefit of the Surety. The Surety may also, at its discretion, require that the Principals and Indemnitors provide additional evidence of the foregoing corporate and/or organizational approvals as a condition precedent to the issuance of any Bond or Bonds hereunder. The Principals and Indemnitors hereby agree to promptly comply with all such requests by providing the appropriate documentation in a form deemed acceptable to the Surety.

26. **WRITING CONSTITUTES THE ENTIRE AGREEMENT** - This Agreement constitutes the entire agreement among the Principal, Indemnitors and the Surety regarding the rights and obligations of the parties hereto and supersedes any prior agreement between the parties. The parties acknowledge that there are no other agreements, documents, or understandings, whether oral or written, that comprise any part of this Agreement or in any way modify, change or vitiate the obligations of this Agreement. This Agreement, and the rights and remedies of Surety hereunder may not be waived, challenged or modified orally. No written waiver, change or modification shall be effective unless signed by an officer or other authorized representative of Surety.

27. **COUNTERPARTS –** This Agreement may be executed by Indemnitors independently in any number of counterparts, all of which together will constitute but one and the same original instrument, which is valid and effective as if all parties had executed the same counterpart.

**IN WITNESS WHEREOF**, the Indemnitors, intending to be legally bound hereby, represent that they have read and understood the foregoing provisions, that they freely and voluntarily enter into this Agreement, and they have below set their hands and affixed their seals, as appropriate, this __26__day of __September__________, 20_18_.

*By signing below each individual executing this Agreement on behalf of a business, and each business entity executing this Agreement on behalf of another business entity represents and warrants that he, she or it is duly authorized by Indemnitor to all of the terms and conditions of this Agreement.*

**WITNESS/ATTEST**

[signature]

(Name of Witness)

Principal/Indemnitor: Fieldwood Energy, LLC.
By: [signature]
Print Name: Michael T. Dane
Its: Sr. Vice President & CFO
SSN/Tax ID No: [redacted]
Address: 2000 West Sam Houston Parkway south, Houston, TX 77042
Email Address: MDane@fwellc.com

(seal)




**WITNESS/ATTEST**

______________________________
(Name of Witness)

Principal/Indemnitor:
By: ______________________________
Print Name:
Its:
SSN/Tax ID No:
Address:
Email Address: ________________________

(seal)

**WITNESS/ATTEST**

______________________________
(Name of Witness)

Principal/Indemnitor:
By: ______________________________
Print Name:
Its:
SSN/Tax ID No:
Address:
Email Address: ________________________

(seal)

**WITNESS/ATTEST**

______________________________
(Name of Witness)

Principal/Indemnitor:
By: ______________________________
Print Name:
Its:
SSN/Tax ID No:
Address:
Email Address: ________________________

(seal)

## ACKNOWLEDGMENTS

### Corporate Acknowledgment(s)

STATE OF __________________________
ss:
COUNTY OF _________________________

On this _______ day of ____________________, _____, before me, the undersigned, a Notary Public in and for the said State, personally appeared _______________________, known to me (or proved to me on the basis of satisfactory evidence) to be the _______________ ______________, of the___________________________, the corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

____________________________________________________ (seal)
Notary Public

My commission expires ____________________________________________



**Limited Liability Company Acknowledgment**

STATE OF Texas
ss:
COUNTY OF Harris

On this 26th day of September, 2018, before me personally appeared Michael T. Dane, known by me to be the person who is identified in and who executed the foregoing General Agreement of Indemnity, and who being by me duly sworn, deposes and says that (s)he is the Manager of Fieldwood Energy LLC, a limited liability company, that (s)he is duly authorized to execute said Agreement as the act and deed of said limited liability company.

VIVIANA A. BRAVO
My Notary ID # 129116277
Expires September 7, 2020

Viviana A. Bravo
Notary Public
My commission expires September 7, 2020

**Partner(s) Acknowledgment**

STATE OF ____________
ss:
COUNTY OF ____________

On this _______ day of ____________ , _____, before me, the undersigned, a Notary Public in and for the said State, personally appeared ____________, known to me (or proved to me on the basis of satisfactory evidence) to be one of the partners of the partnership that executed the within instrument and acknowledged to me that such partnership executed the same.

____________ (seal)
Notary Public
My commission expires ____________




**Individual Acknowledgment**

STATE OF_______________________________
ss:
COUNTY OF_____________________________

On this_____________ day of________,_____________, before me, the undersigned, a Notary Public in and for the said State, personally appeared__________, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same.

_______________________________________________________________________ (seal)
Notary Public

My commission expires_________________________________________________________




## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ______________ } ss.

On __________________________ before me, ________________________________________________
Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared ________________________________________________
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

________________________________
Signature of Notary Public

**OPTIONAL**

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

Description of Attached Document:

Title or Type of Document:

Document Date: ________ Number of Pages: _____ Signer(s) Other Than Named Above: ____________________

**Capacity(ies) Claimed by Signer(s)** Signer's Name:____________________________________

- ❒ Individual
- ❒ Corporate Officer
  Title________________________________________
- ❒ Partner -- ❒ Limited ❒ General
- ❒ Attorney-in-Fact
- ❒ Trustee
- ❒ Guardian or Conservator

Other:________________________________