## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*,[1] | Case No. 20-33948 (MI) |
| Debtors. | (Jointly Administered) |

### ECOPETROL AMERICA LLC'S OBJECTION TO
### (I) FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
### FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS, AND (II) NOTICE
### TO CONTRACT PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED
### LEASES OF THE SCHEDULE OF ASSUMED CONTRACTS AND CURE AMOUNTS

Ecopetrol America LLC ("Ecopetrol") by and through its undersigned counsel, hereby files this objection[2] to the above-captioned debtors' (the "Debtors") (I) *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284], and related documents (collectively, the "Plan"),[3] and (II) *Notice to Contract Parties to Executory Contracts and Unexpired Leases of the Schedule of Assumed Contracts and Cure Amounts* [Docket No. 1395]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] In support of this objection, Ecopetrol also relies on *Ecopetrol America LLC's Statement of Position and Reservation of Rights in Regards to Emergency Motion of Debtors for Order (I) Approving Entry Into First Lien Exit Facility Commitment Letter and Related Fee Letter, (II) Authorizing Incurrence and Payment of Certain Fees and Costs in Connection Therewith, and (III) Granting Related Relief* [Docket No. 1242] (the "Exit Facility ROR"), the *Declaration of Teresa Calderon in Support of Ecopetrol America LLC's Objection to (I) Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors, and (II) Notice to Contract Parties to executory Contracts and Unexpired Leases of the Schedule of Assumed Contracts and Cure Amounts* [Docket No. 1452] (the "Calderon Declaration"), and the *Declaration of Kelly E. Singer in Support of Ecopetrol America LLC's Objection to (I) Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors, and (II) Notice to Contract Parties to executory Contracts and Unexpired Leases of the Schedule of Assumed Contracts and Cure Amounts* [Docket No. 1453] (the "Singer Declaration").

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan.

(the "Cure Notice").  As an initial matter, **the Debtors have admitted that**:

- **Ecopetrol is a secured creditor under the applicable Unit Operating Agreement discussed herein;**

- **Fieldwood is obligated to, among other things, remove liens, indemnify, and hold harmless Ecopetrol for breaches under the Unit Operating Agreement, and such obligations are secured under the Unit Operating Agreement;**

- **The adversary proceeding involving Atlantic Maritime Services LLC ("Atlantic Maritime") (discussed below) implicates Fieldwood's secured obligations in favor of Ecopetrol, and requires Fieldwood to indemnify Ecopetrol;**

- **Subject to this Court's approval, Fieldwood is definitely assuming and assigning the Unit Operating Agreement and related agreements to the purchaser under the applicable Credit Bid Purchase Agreement (discussed below); and**

- **As part of this assumption and assignment, Fieldwood is obligated to cure breaches and provide adequate assurance of future performance of the terms of the Unit Operating Agreement and related agreements.**

*See Debtors' Opposition to Atlantic's Motion to Dismiss (Docket No. 31)*, Adv. P. No. 20-03476,

¶ 38 [Docket No. 36] (the "Debtors' AP Litigation Opposition").

Against that backdrop, the relief requested in this objection is not controversial.  Ecopetrol

nevertheless files this objection and supporting documentation out of an abundance of caution and

to ensure that any order(s) regarding the plan and credit bid purchase is/are clear in regards to

Ecopetrol's rights and secured claims and Fieldwood's obligations under the UOA.

## PRELIMINARY STATEMENT

1.     The Debtors' Plan, Cure Notice, and Purchase and Sale Agreement Among

Fieldwood Energy LLC and Its Affiliates Signatory Hereto as Sellers and [_____] as Buyer Dated

[____] [__], 2021 (the "Credit Bid Purchase Agreement") [Docket No. 1285][4] are prejudicial to

---

[4] A copy of the Credit Bid Purchase Agreement is attached as Exhibit H to the *Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1285] (the

Ecopetrol and, as currently drafted, an attempt to restrict Ecopetrol's contractual rights and protections under that certain Unit Operating Agreement, effective January 1, 2013 and executed by and among Fieldwood Energy LLC, one of the Debtors ("Fieldwood"),[5] Ecopetrol, and Talos Energy Offshore LLC (inclusive of attachments, memoranda, related agreements, and the Related Contracts defined below, and as has been amended or restated from time to time, collectively, the "UOA").[6]

2.      **First**, as the operator of the UOA projects, Fieldwood was responsible for, among other things, controlling the finances, collecting funds from other UOA working interest holders, and paying third-party contractors as necessary.  Certain third-parties, however, have asserted lien claims against working interests associated with the UOA leases and wells.  Despite Ecopetrol's efforts to seek information from Fieldwood, and despite Fieldwood's undisputed obligations under the UOA, Ecopetrol has not been able to (a) determine the extent of the third-party liability, (b) obtain any payment and/or accounting records from Fieldwood detailing how many third-parties may have outstanding invoices associated with the UOA projects, or (c) determine what the status is of funds Ecopetrol transferred to Fieldwood in accordance with the UOA (*i.e.*, where did Ecopetrol's payments go?).  Obviously, these raise significant concerns for Ecopetrol, all of which are exemplified in the dispute between Atlantic Maritime and the Debtors (discussed below), which dispute has caused Atlantic Maritime to commence a lawsuit against Ecopetrol in

---

"Disclosure Statement"), and slightly revised in Exhibit F to the *Notice of Filing of Plan Supplement in Connection with Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1394] (the "Plan Supplement Notice").

[5] Ecopetrol initially contracted with Noble Energy, Inc. to be the operator of the Contract Area Leases, and Fieldwood is a successor-in-interest to Noble Energy, Inc. as of 2018.

[6] The Debtors attached the UOA, but not its exhibits, as Exhibit A to the *Emergency Motion of the Debtors for Entry of an Order Extending the Automatic Stay to Certain of Debtors' Co-Working Interest Owners* [Docket No. 563] (the "Emergency Motion").  A copy of the UOA and referenced provisions is attached as Exhibit A to the Calderon Declaration.

Louisiana.  Under these circumstances, it is not possible for Ecopetrol to ascertain how much liability Fieldwood has in regards to the UOA, and/or what other third-parties (with claims similar to Atlantic Maritime) may exist.

3.  **Second**, the Credit Bid Purchase Agreement inappropriately attempts to strip the UOA of the protections Ecopetrol negotiated for by (a) assuming and assigning the UOA to the Credit Bid Purchaser,[7] and (b) having the Debtors (and not the Credit Bid Purchaser, the new proposed operator under the UOA) retain all of the liabilities tied to Fieldwood's acts and omissions.  This veiled attempt to strip the UOA of key protections afforded to Ecopetrol is impermissible under the well-established "*cum onere*" bankruptcy principle that one must accept all of an executory contract's/unexpired lease's terms and conditions "as is".  The UOA provides, among other things, that under the current circumstances, the operator must hold Ecopetrol harmless, rectify the third-party lien threats, and indemnify Ecopetrol for any damages arising from these disputes.  Assumption and assignment of the UOA by the Debtors should not and cannot change these contractual UOA obligations.

4.  **Third**, the Credit Bid Purchase Agreement and Plan create a mechanism by which the reorganized debtors have at least until June 9, 2022 to decide whether it will assume and assign a certain executory contract/unexpired lease to the Credit Bid Purchaser.  Potentially waiting another year before continuing the UOA projects is financially irresponsible and is not in the best interest of any UOA party.  The Plan, Cure Notice, and Credit Bid Purchase Agreement deficiencies are simple and can be rectified before the Debtors' confirmation hearing.  If the Plan is confirmed as currently proposed, it will be much harder, if not impossible, to resolve certain

---

[7] The "Credit Bid Purchaser" is defined as a new entity formed by the lenders holding 87% of the loans incurred under that certain prepetition *Amended and Restated First Lien Term Loan Agreement*, dated as of April 11, 2018, by and among Fieldwood, Fieldwood Energy Inc., and certain lenders.

UOA issues.

5.     **Fourth**, Ecopetrol negotiated to have a perfected security interest in certain of Fieldwood's working interests under the UOA to secure Fieldwood's UOA obligations.  The Plan, however, requests that the Debtors' exit financing facilities documents become effective upon the effective date of the Plan, which facilities purport to grant the lending parties security interests.  As explained in Ecopetrol's Exit Facility ROR, Ecopetrol must have assurances that its security interest in Fieldwood's working interests associated with the UOA is not primed or otherwise impacted by these exit financing facilities.

6.     **Fifth**, the Cure Notice improperly suggests that the Debtors can assume and assign the UOA to the Credit Bid Purchaser for $0 (the "<u>Cure Amount</u>").  For the reasons previewed above, and as more fully discussed below, the Debtors must resolve a number of matters before the UOA can be assumed and assigned, and this cure amount cannot be accurate.

7.     **Sixth**, as a holder of a perfected, secured claim against Fieldwood, in the event the Debtors and Credit Bid Purchaser cannot resolve the various flaws raised herein and the UOA is subsequently rejected by the Debtors, Ecopetrol will preserve all of its contractual rights under the breached UOA.  Thus, Ecopetrol's Proof of Claim No. 455 (the "<u>POC</u>") filed in these chapter 11 cases would be classified as a Class 1 "Other Secured Claims" under the Plan pursuant to Ecopetrol's lien on Fieldwood's working interests associated with the UOA.[8]

8.     Without resolving the points addressed in this objection, the Plan cannot be approved.  Ecopetrol is prepared and ready to coordinate with the Debtors, Credit Bid Purchaser, and all other parties in interest to resolve the UOA-related issues before the June 9, 2021 confirmation hearing, with the goal of adding language to a prospective confirmation order that

---

[8] If the UOA is rejected by the Debtors and the POC is subsequently allowed by the Court, Ecopetrol would be entitled to be paid in full by the Debtors as a secured claimant.

addresses Ecopetrol's concerns and objections in a manner satisfactory to Ecopetrol.

## BACKGROUND

### I.     Unit Operating Agreement

9.     Ecopetrol holds Working Interests (as defined in the UOA and demonstrated in Exhibit A-2 of the UOA) in certain oil and gas leases covering submerged lands on the Outer Continental Shelf situated in the Mississippi Canyon protraction area (the "Leases"), for which Fieldwood serves as the operator under the UOA.  Fieldwood also holds Working Interests in the Leases and is bound by certain contractual obligations under the UOA, specifically Sections 5.4 (Liens and Encumbrances), 6.1 (Basis of Charges to the Parties), 6.3 (Security Rights), 22.1 (Individual Obligations), and 22.4 (Defense of Claims and Lawsuits) (collectively, the "UOA Provisions").

10.     Under the UOA, Fieldwood has obligations to, among other things, (a) keep the Leases "free from all liens and encumbrances", (b) "pay all Costs of joint operations" related to the Leases,[9] (c) grant Ecopetrol and other Working Interest holders a perfected security interest in Fieldwood's Working Interests to secure Fieldwood's obligations under the UOA, (d) hold Ecopetrol and other Working Interest holders "harmless from liens and encumbrances on the Leases . . . arising as a result of [Fieldwood's] acts or omissions", and (e) supervise the conduct of any UOA-related litigation and settle such litigation after receiving unanimous consent from the other Working Interest holders (when such amount exceeds $250,000).  *See* UOA §§ 5.4, 6.1, 6.3.2, 6.3.3, 22.1, and 22.4.

---

[9] Historically, after Fieldwood purportedly paid third-party invoices, Fieldwood subsequently billed each Working Interest holder (*e.g.*, Ecopetrol) to be reimbursed for the portion of the invoice that each Working Interest holder was responsible to pay.  Each Working Interest holder is responsible for paying the percentage of the third-party invoice proportionate to the amount of Working Interests it holds at the specific Lease (each payment to Fieldwood, the "Invoice Reimbursement Payment").

6

## II.      Joint Account under the Unit Operating Agreement

11.      Pursuant to Section 6.1 of the UOA, Fieldwood is, among other things, required to maintain a joint account (the "Joint Account"), which contains the Invoice Reimbursement Payments that Ecopetrol pays to Fieldwood (the "Ecopetrol Funds") on account of certain joint interest billings Ecopetrol receives from Fieldwood (the "Joint Interest Billings").  The purpose of the Joint Account is for Fieldwood, as the operator, to pay third-parties to maintain, operate, and service the projects being undertaken pursuant to the UOA.

12.      As of the date of this objection, Ecopetrol paid all prepetition and postpetition Joint Interest Billings it received from Fieldwood.  *See* Calderon Declaration at ¶ 8.  Since June 2019, the total amount of Ecopetrol Funds transferred to the Joint Account pursuant to the Joint Interest Billings Ecopetrol received from Fieldwood and certain cash call payments consist of approximately $19,931,179, of which $18,915,624.74 was paid prepetition and $1,015,554.26 was paid postpetition.  *Id.*  At no time has Ecopetrol refuted or failed to pay a Joint Interest Billing from Fieldwood since Ecopetrol began receiving Joint Interest Billings from Fieldwood in July 2018. *Id.*

## III.      Applicable Filings by the Debtors

13.      With respect to a UOA lien dispute, on November 24, 2020, the Debtors filed an adversary proceeding in this Court against Atlantic Maritime styled *Fieldwood Energy LLC v. Atlantic Maritime Services, LLC*, Adv. Pro. No. 20-03476 [AP Docket No. 1] (Bankr. S.D. Tex. 2020) (the "Atlantic AP Litigation").  On May 25, 2021, in response to the Debtors' motion for summary judgment [AP Docket No. 32] and Atlantic Maritime's motion to dismiss [AP Docket No. 31], the Debtors filed the Debtors' AP Litigation Opposition in the Atlantic AP Litigation setting forth, in part, Ecopetrol's UOA rights, Fieldwood's UOA obligations, the Debtors'

intention to resolve the Atlantic AP Litigation before the confirmation hearing, and the Debtors'
desire to assume and assign the UOA to the Credit Bid Purchaser.

14.      Over the past two months, the Debtors have filed a number of pleadings that relate
to Ecopetrol's objections stated herein or otherwise implicate the UOA.  Of note, on March 26,
2021, the Debtors filed the *Emergency Motion of Debtors for Order (I) Approving Entry Into First
Lien Exit Facility Commitment Letter and Related Fee Letter, (II) Authorizing Incurrence and
Payment of Certain Fees and Costs in Connection Therewith, and (III) Granting Related Relief*
[Docket No. 1165] (the "Exit Facility Motion"); and on May 20, 2021, the Debtors filed the
*Emergency Motion of Debtors for Order (I) Approving Rights Offering Procedures and Related
Form, (II) Authorizing Debtors to Conduct Rights Offerings in Connection with Debtors' Plan of
Reorganization, (III) Authorizing Entry into Equity Backstop Commitment Agreements, (IV)
Approving Obligations Thereunder, and (V) Granting Related Relief* [Docket No. 1384]
(collectively, the "Rights Offering Motion").  On April 15, 2021, the Debtors filed the Plan and
Disclosure Statement with the hearing scheduled for June 9, 2021 at 10:00 a.m. (Prevailing Eastern
Time).  The Credit Bid Purchase Agreement was attached as Exhibit H to the Disclosure Statement
and a slightly amended version was filed in the Plan Supplement Notice on May 27, 2021.  Lastly,
on May 27, 2021, the Debtors filed the Cure Notice indicating the proposed Cure Amount for the
UOA.

## OBJECTION

I.      **Fieldwood's Alleged Failure to Pay Contract Area Invoices Highlights the
         Importance of Preserving the UOA Provisions**

15.      Despite Ecopetrol paying the Ecopetrol Funds into the Joint Account pursuant to
the Joint Interest Billings it received from Fieldwood, due to Fieldwood's alleged failure to pay
third-party invoices related to work at the Lease locations (as defined in the UOA, the "Contract

8

Area"), several third-parties have asserted, are seeking, or may have the right to seek, liens against the Leases' Working Interests.  For example, in the Atlantic AP Litigation, *Atlantic Maritime Services, LLC v. Ecopetrol America, LLC*, Civil Action No. 2:20-cv-03097 (E.D. La. 2020), and *Atlantic Maritime Services, LLC v. Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC*, Civil Action No. 2:20-cv-03099 (E.D. La. 2020), Atlantic Maritime Services is seeking to, among other requests, assert a lien on the Working Interests related to the UOA (together, the "Atlantic Litigation").[10]  Ecopetrol is aware of similar third-party invoice litigation and/or disputes against Fieldwood being asserted by Newpark Drilling Fluids LLC (believed to be approximately $4,070.00) and Wood Group PSN, Inc. (believed to be approximately $54,080.29) (collectively, the "Known Lien Disputes").[11]

16.     As of the filing of this objection, despite Ecopetrol's counsel's repeated requests over the past several months for an accounting record from Fieldwood related to third-party invoices, paid invoices, and Invoice Reimbursement Payments, Fieldwood has not provided Ecopetrol with these financial records.  *See* Singer Declaration at ¶ 6.  As a result, Ecopetrol does not know how many other third-parties may assert liens and encumbrances on the Working Interests in the future (the "Unknown Lien Disputes," collectively with the Atlantic Litigation and Known Lien Disputes, the "Lien Disputes").

17.     Due to the Lien Disputes, Fieldwood has breached Section 5.4 of the UOA,[12] which

---

[10] On May 19, 2021, Atlantic Maritime filed the *Atlantic Maritime Services LLC's Motion for Limited Relief From Automatic Stay and Stay Extension Order Solely for the Purpose of Instituting Actions and Filing Notices of Lis Pendens to Preserve Atlantic's Liens on Non-Debtor Property* [Docket No. 1380] seeking relief from the automatic stay to commence actions against non-debtor Working Interest holders related to the Leases other leases unrelated to this objection.

[11] On information and belief, liens were also filed by Halliburton, National Oilwell Varco, L.P.; Petro Amigo Supply, PRT Offshore; Tetra Technologies, Inc.; Wild Well Control, Inc.; and Workstrings International, L.L.C., but it appears that these have been released or otherwise withdrawn.  Ecopetrol, however, does not know if the amounts supporting the liens have been paid by Fieldwood.

[12] Fieldwood is, among other things, required to use "reasonable efforts to keep the [Leases] free from all liens and encumbrances."  *See* UOA, § 5.4.

gave rise to, among other remedies, Ecopetrol's secured indemnification rights under Section 22.1 of the UOA.[13]  Without the UOA Provisions remaining intact, the liability to Ecopetrol on account of the Lien Disputes could be endless if the parties do not adhere to the UOA Provisions.[14]  Thus, the Debtors and Ecopetrol must preserve the UOA term's in its confirmation and assignment documents associated with the Credit Bid Purchase Agreement.

## II.    The Credit Bid Purchase Agreement Fails to Preserve the UOA Provisions and Terms

18.    Pursuant to Article 8.2 of the Plan, the Debtors will assume and assign certain executory contracts and unexpired leases to the Credit Bid Purchaser by paying such counterparties a cash cure amount on the Plan's effective date in accordance with the terms of the Credit Bid Purchase Agreement.  Certain provisions of the Credit Bid Purchase Agreement impact the UOA, particularly Articles 1.2(o) and 1.2(r) (Acquired Interests; Assets), 2.3 (Consents to Assign), 6.7(a) (Assumption and Assignment of Contracts), 11.1(a) (Buyer's Assumption of Liabilities), and 11.2(a) (Sellers' Retention of Liabilities).

### A.    Article 1.2 – Acquired Interests

19.    First, Articles 1.2(o) and 1.2(r) note that the Credit Bid Purchaser will be acquiring certain interests, which includes Fieldwood's working interests in certain oil and gas leases (the "Other Leases") and all wells operated in connection with any Other Leases (the "Other Wells"), respectively.  In Exhibit A (pages 13 and 14) of the Credit Bid Purchase Agreement, all six of the UOA Leases have been classified as Other Leases:  OCS-G 36405 ("Lease 1"), OCS-G 28030 ("Lease 2"), OCS-G 32363 ("Lease 3"), OCS-G 24133 ("Lease 4"), OCS-G 24134 ("Lease 5"),

---

[13] Section 22.1 of the UOA contains a "hold harmless" clause that provides, in part, that "The obligations, duties and liabilities of the Parties shall be several and not joint or collective . . . .  Each Party shall hold all the other Parties harmless from liens and encumbrances on the Leases or in the Contract Area arising as a result of its acts or omissions."

[14] To be clear, Ecopetrol reserves all rights, arguments, and defenses in regards to any Lien Dispute or related claim asserted against Ecopetrol directly.

and OCS-G 36566 ("Lease 6").  However, in Exhibit C (page 9) of the Credit Bid Purchase Agreement, only two of the six wells associated with the UOA Leases are classified as Other Wells:  Mississippi Canyon 948 (associated with Lease 2) and Mississippi Canyon 992 (associated with Lease 4).

20.    If the UOA is ultimately assumed and assigned to the Credit Bid Purchaser, the following four UOA wells associated with the UOA Leases will also need to be included as Other Wells:  Mississippi Canyon 905 (associated with Lease 1), Mississippi Canyon 949 (associated with Lease 3), Mississippi Canyon 993 (associated with Lease 5), and Mississippi Canyon 904 (associated with Lease 6).  Otherwise, the Debtors cannot assume and assign the UOA to the Credit Bid Purchaser.

**B.    Article 2.3 – 1 Year Assumption Dispute Option**

21.    Article 2.3 of the Credit Bid Purchase Agreement provides a summary for how the Debtors can seek to assume and assign certain contracts and leases to the Credit Bid Purchaser. First, Article 2.3(a) discusses how cure cost notices will be sent to contract/lease counterparties. Relatedly, Article 6.7 of the Credit Bid Purchase Agreement explains that contracts and leases that will be assumed pursuant to Bankruptcy Code § 365 will be served no later than seven days before the Debtors' confirmation hearing (*i.e.*, June 2, 2021).  Next, Article 2.3(b) holds that if the Debtors fail to receive a contract/lease counterparty's consent, then such interests will be excluded from the list of assets purchased by the Credit Bid Purchaser and be considered a "Delayed Asset."  The Credit Bid Purchaser may agree to assume such contract/lease and obtain the Delayed Asset up to a year after the Credit Bid Purchase Agreement is closed.  Article 2.3(c) clarifies that if this Court enters an order approving the Credit Bid Purchase Agreement (*i.e.*, approves the Plan and enters the Debtors' confirmation order), then such contract/lease may be assumed and assigned despite

010-9214-5963/6/AMERICAS

not receiving a counterparty's consent.  Article 2.3(d) notes that between closing the Credit Bid Purchase Agreement and one year thereafter, the Debtors will "use their commercially reasonable efforts" to obtain a Delayed Asset counterparty's consent.  And with respect to whether a counterparty has consented, Article 2.3(e) holds that a party will be deemed to consent if it was served notice of the assumption and assignment, withdrew its objection or had its objection overruled, and the Court entered the Debtors' confirmation order permitting such assumption and assignment.

22.     With respect to Article 2.3 of the Credit Bid Purchase Agreement, Ecopetrol objects to the extent the Debtors seek to classify the UOA and related Leases and wells as Delayed Assets in order to receive at least another year after/if the Plan is confirmed to negotiate with Ecopetrol. If the Plan is confirmed, then according to Article 8.2(c) of the Plan, the Debtors would have a year to negotiate/litigate this dispute with Ecopetrol, rather than have the UOA be deemed rejected on the effective date pursuant to Article 8.1(a) of the Plan.  A production delay of this length at the Contract Area would be operationally irresponsible and cause economic harm to all UOA counterparties, including Ecopetrol.  Indeed, Ecopetrol has little to no incentive to continue paying Joint Interest Billings with these significant economic issues plaguing the projects and Ecopetrol. *See* Calderon Declaration at ¶ 9.  Moreover, confirmation of the Plan would restrict the Debtors from rectifying certain issues addressed in this objection.  In short, the right course of action is to resolve these issues before June 9, 2021 in connection with confirmation, not over a year later while operations at the Contract Area are in flux.

### C.     Assumption and Retention of Liabilities

23.     Article 11.1(a) of the Credit Bid Purchase Agreement states that the Credit Bid Purchaser will only assume liabilities arising out of assumed and assigned contracts and leases "to

the extent that such Liabilities arise after the Closing." Likewise, Article 11.2(a) of the Credit Bid Purchase Agreement holds that the Debtors will retain "all Liabilities arising out of [assumed and assigned contracts and leases] except those Liabilities set forth in Section 11.1(a)."

24.     Article 11 of the Credit Bid Purchase Agreement is unacceptable with respect to how the UOA was negotiated. The UOA Provisions expressly hold Fieldwood liable for the Lien Disputes at the Contract Area. The UOA requires Fieldwood to indemnify Ecopetrol for any Lien Dispute liability, including its attorneys' fees, costs, and any other damages Ecopetrol suffers as a result of Fieldwood's acts or omissions. In accordance with Fifth Circuit case law, Fieldwood's obligations under the UOA Provisions must remain uninhibited by the Credit Bid Purchase Agreement in order for the Debtors to permissibly assume and assign the UOA to the Credit Bid Purchaser.[15]

25.     Put simply, an indemnification obligation arising from a pre-closing breach of the UOA is a liability that must be cured and/or assumed by the purchaser under the Credit Bid Purchase Agreement.[16] This is important. To the extent there currently exists an Unknown Lien Dispute (just one example of a Lien Dispute), Fieldwood's obligations, including its indemnification obligations under the above-cited provisions of the UOA, are pre-closing liabilities. This is true even if a UOA-related action against Ecopetrol is commenced after the

---

[15] *See, e.g.*, *In re Provider Meds, L.L.C.*, 907 F.3d 845, 851 (5th Cir. 2018) ("An executory contract must be assumed or rejected in its entirety. . . ."); *In re Escarent Entities, L.P.*, 423 Fed. Appx. 462, 466 (5th Cir. 2011) (It is well-settled that an executory contract cannot be assumed in part and rejected in part. Rather a debtor 'must assume the entire contract, *cum onere*' – the debtor must accept 'both the obligations and the benefits of the executory contract.'" (citing *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) and *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000)); *In re Mirant Corp.*, 197 Fed. App'x 285, 288 (5th Cir. 2006) (same).

[16] *See, e.g.*, *Stephenson v. Caterpillar Inc.*, 2019 U.S. Dist. LEXIS 168616 at *22-23 (E.D. Tex. Sept. 11, 2019) (holding that the indemnification provision is triggered when the applicable claim is asserted, giving rise to the indemnification obligation pursuant to the contract provision(s)); *SJB Group, LLC v. TBE Group, Inc.*, 2013 U.S. Dist. LEXIS 169213, at *20-21 (M.D. La. Nov. 26, 2013) (holding that a party's indemnification obligation arose when the party breached the indemnification provision under the contract); *Itzep v. Target Corp.*, 2010 U.S. Dist. LEXIS 55185, at *57 (W.D. Tex. June 4, 2010) (holding that the party's indemnification obligations arose under the parties' contract upon the counterparty's wrongful act as detailed in the contract).

Credit Bid Purchase Agreement sale closes.[17]

26.     Likewise, in Annex I (Definitions) to the Credit Bid Purchase Agreement, the definition of "Permitted Encumbrance" improperly attempts to remove the Credit Bid Purchaser's Lien Dispute responsibilities and other UOA Provision obligations.  First, subsection (h) provides that the Credit Bid Purchaser will only be responsible for any encumbrance or charge to a lease faced by a working interest holder on account of operating at the purchased site to the extent such encumbrance is "satisfied, settled, released or discharged pursuant to the Plan and Confirmation Order."  In short, if any liability associated with the purchased property is outstanding (*e.g.*, the Lien Disputes), the Credit Bid Purchaser will not assume such liability.  Second, subsection (j) states that the Credit Bid Purchaser will only assume a lien on the purchased property to the extent it "will be permanently and fully extinguished with respect to the Acquired Interests pursuant to the Confirmation Order."  Again, this means that the Credit Bid Purchaser does not want to fulfill the UOA Provision's obligations being triggered by the Lien Dispute.  Third, subsection (m) notes that the Credit Bid Purchaser will only maintain a unit operating agreement's "uniform interest provision . . . if waived by the party or parties having the right to enforce such provision." Ecopetrol expects all of UOA Provisions and terms to be performed by the operator, and to not be forced to waive any contractual rights it negotiated.  Therefore, if the UOA is to be assumed and assigned, the Debtors must revise the definition of "Permitted Encumbrance" in the Credit Bid Purchase Agreement to revise subsections (h), (j), and (m) accordingly.

---

[17] Of note, the Credit Bid Purchase Agreement is contradictory with respect to whether the Debtors or the Credit Bid Purchaser will assume indemnification obligations.  *Compare* Credit Bid Purchase Agreement, Article 11.1(k) (stating that the Credit Bid Purchaser will assume all indemnities of Fieldwood for, among other things, the assumed and assigned contracts) *with* Credit Bid Purchase Agreement, Articles 11.2(g), (p), (r) (providing that "[n]otwithstanding anything to the contrary set forth in this Agreement" Fieldwood shall retain all liabilities for "all indebtedness, whether or not encumbering all or any portion of the Acquired Interests," "all Liabilities arising out of or relating to any Claim with respect to facts and circumstances existing prior to the Closing" regardless of whether such claim has come due or been asserted prior to closing, and all "Liabilities satisfied, compromised, settled, released or discharged pursuant to the Plan and the Confirmation Order").

III.    **The Debtors Have Failed to Exclude Ecopetrol's Security Interest From the Exit Facility Lenders' Collateral**

27.    Under Sections 6.3.2 and 6.3.3 of the UOA, Fieldwood granted Ecopetrol a security interest in, among other things, Fieldwood's Working Interests in the applicable Leases within the Contract Area.  This security interest provides Ecopetrol collateral to secure Fieldwood's UOA obligations pursuant to a certain recorded Memorandums of Operating Agreement, Act of Mortgage, Security Agreement, and Financial Statement, as supplemented.[18]

28.    Specifically, Ecopetrol's security interests in Fieldwood's Working Interests in the applicable Leases within the Contract Area secures (a) Ecopetrol's indemnity rights under the UOA for any lien claim amounts regarding the Contract Area, including its attorneys' fees, costs, and any other damages Ecopetrol suffers as a result of Fieldwood's acts or omissions, (b) Fieldwood's proportionate share of expenses owed to the Joint Account (if ever unpaid) after receiving the Invoice Reimbursement Payments from Ecopetrol and others, and, (c) if applicable, amounts due to Ecopetrol on account of Fieldwood's improper use of the Ecopetrol Funds in the Joint Account.

29.    As explained in Ecopetrol's Exit Facility ROR, the Exit Facility Motion, including the First Lien Exit Facility and/or Second Lien Exit Facility referenced therein (collectively, the "Exit Facilities"), and attached exhibits[19] do not appear to take into account Ecopetrol's perfected security interest in Fieldwood's Working Interests in the Leases within the Contract Area. The Commitment Letter's terms provide that the Debtors' newly-formed borrowing entities and related

---

[18] *See* recorded Memorandums of Operating Agreement, Act of Mortgage, Security Agreement, and Financial Statement, as supplemented, regarding the UOA [Plaquemines Parish Recording Page, file number 2011-00004814, book 1258, page 599; and file number 2020-00001797, book 1424, page 734], and Sections 6.3.2 and 6.3.3 of the UOA.

[19] The Exit Facility Motion contains one exhibit, which is the commitment letter (the "Commitment Letter") associated with the exit facilities, and three annexes attached to the Commitment Letter – two terms and conditions sections and a copy of the Plan.

subsidiaries and parent entities (collectively, the "Loan Parties") will grant the lenders to the First Lien Exit Facility a "perfected first- priority security interest in" all of the Loan Parties' assets, "excluding certain 'excluded assets' to be agreed."  *See* Commitment Letter, Annex B, § Security. The First Lien Exit Facility Term Sheet, which is attached to the Commitment Letter as Annex B, does not define "excluded assets" to include Fieldwood's Working Interests in the applicable Leases within the Contract Area under the UOA.

30.      Although the proposed order to the Exit Facility Motion was approved on April 9, 2021, the Debtors are seeking final approval of the Exit Facilities upon confirmation of the Plan. *See* Plan, Article 5.11(b).  Before/if the Court approves the Exit Facilities, Ecopetrol asserts that the Commitment Letter should provide that Ecopetrol's security interest in Fieldwood's Working Interest in the applicable Leases within the Contract Area be senior to the Exit Facilities.

31.      To the extent the Rights Offering Motion and/or relief requested therein attempts to prejudice Ecopetrol's UOA or its security interests described above, then Ecopetrol objects to the final approval of such offerings for the same reasons discussed above.

## IV.    Ecopetrol's Proposed Cure Amount is Incorrect and Fails to Consider the UOA and the Related Contracts

32.      Pursuant to page 40 of the Cure Notice (Contract Number 1306), the Debtors seek to assume and assign the UOA to the Credit Bid Purchaser pursuant to Article 8.2(a) of the Plan by paying Ecopetrol the Cure Amount.[20]  The Cure Amount is clearly incorrect after considering (a) Fieldwood's obligations under the UOA Provisions, (b) Fieldwood's alleged failure to use the

---

[20] The UOA Provisions and terms impose ongoing obligations on both Fieldwood and Ecopetrol, including obligations relating to Fieldwood's operations at the Contract Area and payments to third-party contractors and Ecopetrol's responsibility to make Invoice Reimbursement Payments to Fieldwood.  As a result, the UOA is clearly an executory contract and must be assumed and assigned in whole, not in part.  *See NLRB v. Bildisco & Bildisco*, 465 US. 513, 522 n.6 (1984); *In re Murexco Petrol., Inc.*, 15 F.3d 60, 62–63 (5th Cir. 1994); *see also In re Panaco, Inc.*, Case No. 02-37911-H3-11, 2002 WL 31990368, at *5 (Bankr. S.D. Tex. Dec. 10, 2002) (granting motion to compel debtors to assume or reject operating agreements with joint working interest owners); *In re Wilson*, 69 B.R. 960, 963 (Bankr. N.D. Tex. 1987) (holding operating agreements at question are executory contracts).

Joint Account to pay Contract Area third-party invoices, (c) the Lien Dispute liabilities (which includes, Known and Unknown Lien Disputes described above) due to Fieldwood's acts and omissions (and failure to disclose any information to Ecopetrol), (d) the Credit Bid Purchaser's attempt to acquire assets associated with the UOA and strip the UOA of the UOA Provisions, and (e) the ambiguity regarding whether Ecopetrol still has a perfected, senior security interest in Fieldwood's Working Interests if the Exit Facilities are approved by the Court.  Indeed, the Debtors must address Ecopetrol's pecuniary and non-pecuniary cure cost concerns before attempting to assume and assign the UOA.[21]

33.    Only after the UOA cure cost issues are resolved can the Debtors then assume and assign the other UOA-related contracts (collectively, the "Related Contracts").  The Related Contracts are associated with the UOA and relate to one another, which may make them inseparable.  Below is the list of the nine Related Contracts, the number allocated to each in the Cure Notice, and a brief description of each:

| Contract Number | Contract Date | Contract Description |
| --- | --- | --- |
| 298 | 3/1/2019 | Joint Bidding Agreement by and between Chevron USA Inc. and Fieldwood Energy LLC dated 1 March 2019. |
| 426 | N/A | Market Authorization Letter Agreement to act as agent for Ecopetrol America Inc. to Market gas production. |
| 427 | 7/1/2006 | Joint Operating Agreement by and between Noble Energy, Inc. (Fieldwood is successor-in-interest to Noble Energy, Inc.) and Samson Offshore Company effective as of July 1, 2006, including any memorandums or financial statements of the same, as amended by the: A. Ratification and Amendment of Gunflint Joint Operating Agreement by and among Noble Energy, Inc., Samson Offshore Company, BP Exploration & Production Inc., and Marathon Oil Company dated effective November 1, 2008. B. Amendment of the Gunflint Joint Operating Agreement dated |

---

[21] *See, e.g.*, *In re Senior Care Ctrs., LLC*, 607 B.R. 580, 588 (Bankr. N.D. Tex. 2019) (holding that a lease can only be assumed and assigned if, in part, "all monetary and most non-monetary defaults" are cured).

| | | |
|---|---|---|
| | | effective July 7, 2009 by and between Noble Energy, Inc., Samson Offshore Company, BP Exploration & Production Inc., and Marathon Oil Company.<br>C. Ratification, Amendment and Re-Designation of the Gunflint Operating Agreement as the Gunflint Voluntary Unit Operating Agreement dated effective January 1, 2011 by and between Noble Energy Inc., BP Exploration & Production Inc., Samson Offshore Company, Marathon Oil Company and BHP Billiton Petroleum (Deepwater) Inc. |
| 529 | 12/10/2013 | MC 725 by and between Fieldwood MC 725 by and between Fieldwood and GULFSTAR ONE LLC and GULFSTAR ONE LLC as amended by:<br>A. First Amendment to Production Handling Agreement by and among Gulfstar One LLC, Noble Energy, Inc., Ecopetrol America, Inc., Samson Offshore Mapleleaf, LLC and Marathon Oil Company dated effective July 1, 2016.<br>B. Second Amendment to Production Handling Agreement by and among Gulfstar One LLC, Noble Energy, Inc., Ecopetrol America Inc., Samson Offshore Mapleleaf, LLC, and Marathon Oil Company dated effective August 4, 2016. |
| 1097 | 1/31/2014 | Construction and Coordination Agreement by and among Gulf Star One, LLC, Noble Energy, Inc. (Fieldwood is successor-in-interest to Noble Energy, Inc.), Ecopetrol America Inc., Samson Offshore, LLC and Marathon Oil Company effective January 31, 2014. |
| 1098 | Effective as of 7/1/2016 | Gulfstar One LLC, Noble Energy, Inc., Ecopetrol America, Inc., Samson Offshore Mapleleaf, LLC and Marathon Oil Company. Noble, Ecopetrol, Samson and Marathon Oil Company. |
| 1099 | Effective as of 8/4/2016 | Gulfstar One, Noble Energy, Inc, Ecopetrol America Inc., Samson Offshore Mapleleaf, Inc and Marathon Oil Company. |
| 1310 | 12/10/2013 | Authorization Agreement for Tie-Back Development by and among Noble Energy, Inc. (Fieldwood is successor-in-interest to Noble Energy, Inc.), Ecopetrol America Inc., Samson Offshore, LLC and Marathon Oil Company effective December 10, 2013 as amended by that Amended and Restated Authorization Agreement for Tie-Back Development dated effective as of January 31, 2014 by and among Noble Energy, Inc., Ecopetrol America Inc., Samson Offshore Mapleleaf, LLC, and Marathon Oil Company. |

010-9214-5963/6/AMERICAS

| 1883 | NA | Market Authorization Letter Agreement to act as agent for Ecopetrol America Inc. to market gas production. |

The Related Contracts cannot be assumed and assigned by the Debtors to the Credit Bid Purchaser until all of the underlying UOA issues are resolved.

## **CONCLUSION**

34.     Ecopetrol would propose that the Debtors and Credit Bid Purchaser immediately begin coordinating with Ecopetrol (and other parties in interest to the UOA) to revise the Plan, Cure Notice, Credit Bid Purchase Agreement, Exit Facilities' documents, as well as any proposed confirmation order.  It is Ecopetrol's position that the UOA can only be assumed and assigned to the Credit Bid Purchaser after the concerns in this objection are addressed to Ecopetrol's satisfaction.  Otherwise, the Plan, Cure Notice, and Credit Bid Purchase Agreement as currently drafted should not be approved by this Court.

## **RESERVATION OF RIGHTS**

35.      This objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of Ecopetrol to object to the Plan, Disclosure Statement, Cure Notice, Exit Facilities, or Credit Bid Purchase Agreement on any other grounds whatsoever and Ecopetrol expressly reserves all further substantive or procedural objections that may be available.

## **NOTICE**

36.     Notice of this objection will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

010-9214-5963/6/AMERICAS

**WHEREFORE**, Ecopetrol respectfully requests that the Court not approve the Plan without the Debtors first (a) revising the Plan and Cure Amount to account for the Lien Disputes and the UOA Provisions, (b) revising the Credit Bid Purchase Agreement to permit the UOA to be assumed and assigned to the Credit Bid Purchaser, (c) revising the Exit Facilities' documents to provide that Ecopetrol's security interest in Fieldwood's Working Interest in the applicable Leases within the Contract Area under the UOA is senior to the Exit Facilities, (d) including language satisfactory to Ecopetrol in any proposed confirmation order that addresses the same, and (e) granting such other relief the Court deems appropriate.

Dated:  June 2, 2021

SQUIRE PATTON BOGGS (US) LLP

*/s/  Travis A. McRoberts*
Travis A. McRoberts
2000 McKinney Avenue, Suite 1700
Dallas, Texas 75201
Telephone:  (214)758-1500
Facsimile:  (214)758-1500
Email:  travis.mcroberts@squirepb.com

-and-

Kelly Singer (admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
1 E. Washington St., Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 528-4000
Facsimile: (602) 253-8129
Email: kelly.singer@squirepb.com

*Counsel for Ecopetrol America LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 2, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve notice on all parties registered to receive notice in these cases.

*/s/ Travis A. McRoberts*
Travis A. McRoberts
