IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, et al.[1] | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors | § | (Jointly Administered) |
| | § | |

**LOUISIANA DEPARTMENT OF REVENUE'S OBJECTION TO
FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS**

The Secretary of the Louisiana Department of Revenue ("LDR") through undersigned counsel, objects to the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors ("Plan") [Doc. No. 1284], as follows:

BACKGROUND

1.

The LDR is the holder of four claims:[2]

(A) <u>Claim 946</u>: Claim 946 was timely filed in the amount of $9.542.61 consisting of a Priority Tax Claim in the amount of $6,454.05 for the tax and pre-petition interest deficiency determined on a Sales Tax Audit for 03/01/2018 through 3/31/2020 and a General Unsecured Claim in the amount of $3,088.56 for the pre-petition accrued penalty.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489);Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM ShelfLLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Nothing herein below is intended to modify any filed claim; if there is any inadvertent discrepancy, the filed claim controls.

(B) <u>Claim 950</u>: Claim 950 was timely filed for $28,777.97. The claim is for the priority tax severance periods 11/1/2012 through 4/30/3014; however, the balance remaining consists entirely of penalty and therefore is classified as General Unsecured Debt.

(C) <u>Claim 951</u>: Claim 951 was timely filed for $47,659.30 consisting of a Priority Tax Claim for $8,266.80 for the Corporate tax and prepetition interest for the tax period 12/31/2018 and a General Unsecured Claim for $39,392.50.

(D) <u>Claim 952</u>: Claim 952 was timely filed for $3,780.61 consisting of a Priority Tax Claim in the wholly estimated amount of $2,307.33 for the Corporate Tax Periods 12/31/2017, 12/31/2018 and 12/31/2019, with estimated pre-petition interest included in that sum, and a General Unsecured Claim for $1,472.28 for estimated pre-petition penalties.

OBJECTIONS

2.

(A) The LDR objects to Section 2.1 because it provides for the Administrative Tax Claims to be paid consistent with section 1129(a)(9), when Administrative Tax Claims are required to be paid in conformity with section 1129(a)(9)(A). This requires payment upon the Effective Date or payment upon the due date *in the ordinary course of business accordance with tax law*, whichever is later. The LDR does not consent to lesser treatment. The Plan provides:

> *On (or as soon thereafter as is reasonably practicable) the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date each Administrative Expense Claim becomes an Allowed Administrative Expense Claim*, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim) shall receive in full and final satisfaction of such Claim, either (x) Cash in an amount equal to the Allowed amount of such Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code or (y) such other treatment as to which the Debtors, the Post-Effective Date Debtors, or NewCo and its subsidiaries (including the Credit Bid Purchaser), as applicable, and the holder of such Allowed Administrative Expense Claim will have agreed upon in writing; *provided*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Post-Effective Date Debtors, <u>*as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities*</u>; *provided, further*,

that any Allowed Administrative Expense Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties. (Emphasis Added).

(B)  The Plan provides for such ordinary course payments to be paid consistent "***past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities***  , but consistent with the *tax law* is not included.

(C)  Additionally, the LDR objects to the language in Section 6.2 to the extent applicable to Administrative Tax Claims.  LDR is entitled to interest on its Administrative Claims if they are not paid when due pursuant to applicable non-bankruptcy law at the rate provided by applicable non-bankruptcy law.  *United States v. Yellin (In re Weinstein)*, 272 F.3d 39, 40 (1st Cir. 2001) (noting that all other circuit courts to decide the issue had come to the same conclusion); *In re Injection Molding Co.*, 95 B.R. 313, 315-316 (Bankr. M.D. Pa. 1989).  In this case the applicable non-bankruptcy law is La. Rev. Stat. Ann. 47:1601, et seq.  LDR is also entitled to penalties on any tax claims that are accorded Administrative Priority.  *See* 11 U.S.C. § 503(b)(1)(C).

(D)   Both the Administrative Claim treatment and the Priority Tax Treatment contains this similar language: "*provided, further*, that any Allowed Administrative Expense Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties."  The language for the Priority Claims Treatment is the same except for substituting "Allowed Priority Tax Claim" for "Allowed Administrative Expense Claim."  The LDR objects to this language **in both sections** to the extent that it is not known who shall be responsible for any

Allowed Administrative Expense Claim, if any LDR ultimately has, and/or Allowed Priority Tax Claims. Schedule 4.19, Schedule 6.8 and Schedule 10.11, to name a few schedules named within the Credit Bid Purchase Agreement related to assumed liabilities for taxes, does not follow the Credit Bid Purchase Agreement in Doc. 1394 to the best of LDR's knowledge.[3]

(C) Because the Plan is not in conformity with these provisions, the Plan cannot be confirmed pursuant to 11 U.S.C. §1129(a)(1).

3.

(A) The LDR objects to Section 2.5 because it provides for Priority Tax Claims to be paid consistent with the provisions of section 1129(a)(9), when Priority Tax Claims are required to be paid in conformity with section 1129(a)(9)(C), absent agreement to lesser treatment by the creditor. LDR does not agree to lesser treatment. (B) Section 2.5 fails to provide for the commencement date of distributions and the frequency of payment of such distributions, without which the LDR cannot know if the Plan meets the requirements of "regular installments".

(B) Additionally, LDR objects to Section 6.2 of the Plan which provides: 'except with respect to the FLFO Claims of the Prepetition Secured Parties or as otherwise ***specifically provided for in the Plan, the Confirmation Order, or another order of the Bankruptcy Court,*** post-petition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date." The Plan does not differentiate between (1) the interest that accrues between the Petition Date and the Effective Date versus (2)

---

[3] The Supplement is two parts of over 680 pages, without any bookmarks are indexes for page numbers to locate these documents within the .pdf documents.

the Post-Effective Date interest required by Section 1129(a)(9). LDR reserves all right to payment of *the total value of its prepetition claims, as of the effective date* (in other words interest at the rate required by 11 U.S.C. §511) in regular installment payments *within five years of the Petition date*. To the extent that the plan attempts to avoid the payment of such interest, in Section 2.5 and/or Section 6.2 elsewhere in the Plan, the LDR avers that confirmation of the Plan should be denied.

(C) The LDR also objects to Claim 6.5 as an impairment of collection interest on any of the LDR's Administrative Tax Claims and Priority Tax Claims. The Plan provides that: "Distributions made after the Effective Date to holders of Disputed Claims shall be deemed to have been made on the Effective Date." Nothing in the Bankruptcy Code authorizes this. LDR is entitled to interest on its Administrative Tax Claims, if any, from the date they are due under the law and is entitled to interest on Priority Claims from the Effective Date until paid in full pursuant to 11 U.S.C. §1129(a)(9)(C) at the rate set by 11 U.S.C. §511. The current rate of interest for delinquent tax debts owed to the LDR confirmed between 1/1/2021 and 12/31/2021 is 6.5% per annum.

(D) Accordingly, the plan cannot be confirmed pursuant to 11 U.S.C. §1129(a)(1) because it does not comply with the Bankruptcy Code.

4.

(A) LDR objects to Section 6.6 providing that the Plan Administrator shall make all Distributions to any holder of an Allowed Claim …(a) at the address of such holder *on the books and records of the Debtors or their agents….*" The Official Proof of Claim has the required address for communications and payments to a creditor, *NOT the books and records of the debtor or their*

*agents.* Specifically, the address for the Louisiana Department of Revenue, Bankruptcy Section, Collection Division, Post Office Box 66658, Baton Rouge, Louisiana 70896-6658.

(B) LDR also objects to the denial of interest on an undeliverable distribution (unless and until the Plan Administrator has been notified of the then current address of such holder. There is no provision of law for this in the Bankruptcy Code. Additionally, the LDR accepts electronic payments through LaTap (with registration credentials), so there is no reason for mailing a check. This is perhaps understandable for an individual creditor that changes its address or who sells or assigns its claims. But simply providing that because the distribution is returned undeliverable is not sufficient to deny the payment of interest on a claim. In the event of return of a distribution the Plan Administrator should be required to do due diligence with the return of the distribution. The Plan provision as written does not even require the plan Administrator ascertain whether there was a mistake by his office in addressing it.

5.

Similarly, the LDR objects to Section 6.7 of the Plan, which provides:

> One year from the later of: (a) the Effective Date and (b) the date that is ten (10) Business Days after the date a Claim is first Allowed, all distributions that remain payable on account of such Claim shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Post-Effective Date Debtors or their successors or assigns, and all claims of any other Person (including the holder of a Claim in the same Class) to such distribution shall be discharged and forever barred. ***The Post-Effective Date Debtors and the Plan Administrator shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.***
>
> For the avoidance of doubt, a distribution shall be deemed unclaimed if a holder has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Post-Effective Date Debtors or the Plan Administrator of an intent to accept a particular distribution; (c) responded to the Debtors', the Post-Effective Date Debtors', or the Plan

>Administrator's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution. (Emphasis Added).

(A) This Plan provision goes beyond the Bankruptcy Code. Priority Tax Payments can stretch over the course of five years from the Petition Date. Section 347 of the Bankruptcy Code does not provide for a time frame for such distributions to become unclaimed property *except to* provide "[a]ny security, money or other property remaining unclaimed at *the expiration of the time allowed in a case under Chapter …11…. of this title **for the presentation of a security or the performance of a condition to participation***….becomes property of the debtor or the entity acquiring the assets of the debtor." (Emphasis added). Section 1143 of the Bankruptcy Code provides:

> If a plan requires presentment or surrender of a security or the performance of any other act as a condition to participation in distribution under the plan, *such action shall be taken not later than five years after the date of the entry of the order of confirmation*. Any entity that has not within such time presented or surrendered such entity's security or taken any such other action that the plan requires may not participate in distribution under the plan. (Emphasis added).

Because the Plan does not comply with these sections of the Bankruptcy Code, the Plan is not confirmable pursuant to 11 U.S.C. §1129(a)(1). Further, the Constitution of the State of Louisiana does not permit the LDR to give away revenue due to it except as authorized by law; and by not objecting to this provision as written; undersigned would be tacitly agreeing to forfeit money owed to the LDR in a manner not authorized by law. LDR does not waive its right to any distribution to which it may be entitled under the Plan except in accordance with the law.

(B) Similarly, LDR also objects to Section 6.10 with respect to the Plan Administrator not making a final Plan Distribution of less than $50.00. Again, nothing in the Bankruptcy Code authorizes this, and the Constitution of the State of Louisiana does not permit the LDR to allow

revenue owed to it to be forfeited, except on the basis of Louisiana prescription or as provided by law.

(C)  Because this Plan provision is not in compliance with the Bankruptcy Code, the Plan cannot be confirmed pursuant to 11 U.S.C. §1129(a)(1).

6.

LDR objects to Section 7.4.  There is no provision in the Bankruptcy Code that allows the Plan Administrator or anyone else *to assume* that a claim is either amended or superseded (or as seen in some objections, both) and expunge it. Section 502(a) of the Bankruptcy Code provides that a claim is deemed allowed <u>unless a creditor objects to the claim</u>.  An Objection requires notice and a hearing.  See 11 U.S.C. §502(b).  A Plan provision is not a substitute for a claims objection. A creditor may disagree as to whether a claim has been "amended" or "whether it has been superseded" and must be afforded an opportunity to prevent expungement and should not be placed in the situation as would result here – having to file a motion for reconsideration of the disallowance and expungement.  These two (amended and superseded) terms have different meanings for purposes of relation back to an original claim file date.[4]  Because this Plan provision is not in compliance with the Bankruptcy Code, the Plan cannot be confirmed pursuant to 11 U.S.C. §1129(a)(1).

7.

LDR objects to Section 7.7 of the Plan as written.  The provision requires that authorization of the Bankruptcy Court <u>and</u> permission of the Post-Effective Date Debtor.   This Plan Provision does not comply with the Bankruptcy Rules.  Rule 15(a) of the Federal Rules of Civil Procedure

---

[4] *See In re Kolstad,* 928 F.2d 171, 175 (5th Cir. 1991).

allows amendment of pleadings by leave of the court. While the Post Effective Date Debtor's permission is certainly very helpful in accomplishing an amendment of a claim or a superseding claim, it is not a requirement. Disposition of a motion to amend is within the sound discretion of the district court." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).[5] If the sentence read "or permission of the Post Effective Date Debtor, it would be acceptable.

8.

Confirmation should be denied because the Plan injunction at Section 10.6 fails to preserve the statutory setoff and recoupment rights afforded under applicable non-bankruptcy law and the Bankruptcy Code. Although the Bankruptcy Code does not establish a right of setoff, § 553 is widely recognized as preserving any right to setoff under applicable non-bankruptcy law. *Citizens Bank v. Strumpf*, 116 S.Ct. 286, 289 (1995). Setoff rights and all aspects of a particular right of setoff, including the waiver of such a right, are determined by non-bankruptcy law.

(B) Under § 553 of the Bankruptcy Code, setoff rights survive bankruptcy and are not affected by other sections of the Bankruptcy Code, including § 1141. *IRS v. Luongo (In re Luongo)*, 259 F.3d 323 (5th Cir. 2001); *United States on Behalf of IRS v. Norton*, 717 F.2d 767 772 (3rd Cir. 1983); *In re Garden Ridge Corp.,* 338 B.R. 627, 632 (Bankr. D. Del. 2006); *Carolco Television, Inc. v. National Broadcasting Co. (In re DeLaurentis Entertainment Group, Inc.)*, 963 F.2d 1269, 1276-78 (9th Cir. 1992), *cert. denied*, 506 U.S. 918, 113 S. Ct. 330, 121 L.Ed.2d 249 (1992); *Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1537

---

[5] Rule 7015 incorporates Rule 15 of the Federal Rules of Civil Procedure (governing amendment) into adversary proceedings in bankruptcy cases. The Court, at its discretion may apply the rule to contested matters, such as claims objections.

(10th Cir. 1990); *Pettibone Corp. V. United States (In re Pettibone Corp.)*, 161 B.R. 960, 964 (N.D. Ill. 1993); *Womack v. United States (In re Womack)*, 188 B.R. 259 (Bankr. E.D. Ark. 1995); *In re Whitaker*, 173 B.R. 359 (Bankr. S.D. Ohio 1994).

(C) Section 553 "preserves for the creditors benefit any setoff right that it may have under applicable non-bankruptcy law." *In re Semcrude, L.P.*, 399 B.R. 388 (Bankr. D. Del. 2009) (quoting *Packaging Indus. Group, Inc. v. Dennison Mfg. Co., Inc. (In re Sentinel Prod. Corp., Inc.)*, 192 B.R. 41, 45 (N.D. N.Y. 1996)). And "there is no basis in the Code to eliminate [a creditor's] setoff rights" asserted prior to confirmation. *In re ALTA+CAST, LLC*, 2004 WL 484881 (Bankr. D. Del. 2004) (creditor was entitled to preserve its setoff rights under §553 where those rights were asserted prior to confirmation). In addition to preserving setoff rights on the face of their proofs of claim, the LDR asserts preservation of their setoff rights by objecting to any attempt to limit those rights through the Plan. *Alta + Cast*, 2004 WL 484881 (Bankr. D. Del.) (confirmation objection to attempt to affect setoff rights is sufficient to preserve those rights).

(D) Confirmation of a plan does not extinguish setoff claims when they are timely asserted. *United States v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536, 542 (3d Cir. 1998), *cert. denied*, 525 U.S. 929 (1998). Like other creditors, the LDR has the right to setoff mutual debts. "The government has the same right which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." *United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234, 239 (1947).

(E) The LDR has statutory setoff rights and recoupment rights, including but not limited to those under La. Rev. Stat. Ann. §47:1621 and §47:1622. Hence, a taxing authority may setoff mutual prepetition debts and claims pursuant to § 553, and generally it also has the right to setoff mutual post-petition debts and claims. *See In re Mohawk Indus., Inc.*, 82 B.R. 174, 178-179

(Bankr. D. Mass. 1987). To the extent that the Plan contains provisions which impair or eliminate the setoff and recoupment rights, the Plan does not comply with 11 U.S.C. §553 and cannot be confirmed pursuant to 11 U.S.C. §1129(a)(1).

( F ) Therefore, to o the extent that the Plan contains provisions which impair or eliminate the setoff and recoupment rights of LDR, the Plan does not comply with 11 U.S.C. §553 and cannot be confirmed pursuant to 11 U.S.C. §1129(a)(1).

9.

The Debtor has trust tax accounts with the LDR and Louisiana law imposes liability on third parties who are responsible for same with the taxpayer. *See* La. Rev. Stat. Ann. §47:1561.1. To the extent that the Plan attempts to enjoin the LDR from collecting outstanding trust tax liabilities pursuant to La. Rev. Stat. Ann. §47:1561.1, the LDR objects to confirmation of the plan because such non-Debtor third party release language is in conflict with § 524(e) of the Bankruptcy Code. Accordingly, confirmation of the plan should be denied pursuant to 11 U.S.C. §1129(a)(1). **For the avoidance of all doubt, LDR opts out of the third party releases in the Plan**. LDR did not receive all required ballots for its General Unsecured claims as they are against multiple parties.

WHEREFORE, the LDR prays that, after all due legal proceedings are had, that confirmation of the Plan will be denied, or temporarily denied, until the LDR's objections are cured by an amended Plan or by inclusion of cure provisions within the Confirmation Order, and for all other relief that may be just in the premises.

Respectfully submitted,

LOUISIANA DEPARTMENT OF REVENUE

/s/ Florence Bonaccorso-Saenz
Florence Bonaccorso-Saenz (La. Bar No. 25493)
Senior Bankruptcy Counsel, Litigation Division
617 N. Third St., Office 780
Post Office Box 4064 (Zip Code 70821-4064)

Baton Rouge, LA  70802
Tele: (225) 219-2083, Fax: (225) 231-6235
Email: Florence.Saenz@la.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 2, 2021, a copy of the LOUISIANA DEPARTMENT OF REVENUE'S OBJECTION TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS was served electronically through the CM/ECF on all parties requesting electronic notice through the court), including but not limited to the following, which were also served via separate email.

**Jason George** at jason.george@weil.com
**Jessica Liou** at Jessica.Liou@weil.com
**Alfredo R Perez** at alfredo.perez@weil.com
**Hector Duran, Jr** at Hector.Duran.Jr@usdoj.gov
**Stephen Douglas Statham** at stephen.statham@usdoj.gov
**James W Walker** at jwalker@coleschotz.com
**Michael D Warner at** mwarner@pszjlaw.com
**Constantine Z Pamphilis**  at dpamphilis@kasowitz.com

/s/ Florence Bonaccorso-Saenz
Florence Bonaccorso-Saenz
Senior Bankruptcy Counsel
Litigation Division
Louisiana Department of Revenue