IN THE UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | * | Case No.  20-33948 (MI) |
| | * | |
| FIELDWOOD ENERGY LLC. *et al* | * | Chapter 11 |
| | * | |
| Debtors. [1] | * | (Jointly Administered) |

**OBJECTION OF LLOG TO CONFIRMATION OF THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY, LLC, AND ITS AFFILIATED DEBTORS AND OPT-OUT OF RELEASES
(ECF NO. 1284)**

LLOG Exploration Offshore, L.L.C., and LLOG Energy, L.L.C. (collectively, "LLOG") creditors and parties-in-interest in the above captioned, jointly administered bankruptcy cases (the "Bankruptcy Cases"), file this Objection to the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy, LLC, and its Affiliated Debtors (this "Objection").

In support of this Objection, LLOG respectfully represents as follows:

**I.     Introduction and Background**

1. The Debtors are debtors-in-possession in the jointly administered bankruptcy cases captioned Fieldwood Energy LLC et al., Case No. 20-33948 currently pending in the United States Bankruptcy Court for the Southern District of Texas.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778);Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

2. On April 15, 2021, the Debtors filed the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors at ECF No. 1284 (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan").

3. LLOG and Fieldwood Energy Offshore, LLC ("Fieldwood") are co-owners in Green Canyon Block 157, Lease No. OCS-G 24154 ("GC 157"), and Green Canyon Block 201, Lease No. OCS-G 12210 (but limited to the northeast quarter of such block from the surface down to 17,000 feet true vertical depth subsea) ("GC 201," and collectively with GC 157, the "Contract Area").

4. Additionally, LLOG is predecessor in interest for certain offshore oil and gas leases for which a Debtor is currently a record title holder and operator (the "FWE Operated Properties" and, together with the Contract Area, the "LLOG Abandoned Properties").[2]

## II. LLOG objects to the proposed 363 Sale to the extent that it impairs its right as a secured creditor.

### A. LLOG is a secured creditor entitled to full recovery under the Plan.

5. LLOG and Fieldwood, as successor to Davis Offshore L.P. ("Davis"), are the current parties to that certain Offshore Operating Agreement dated December 12, 2002 (as ratified and amended, the "OOA") covering the Contract Area.[3] Under the OOA, Fieldwood holds a 15% working interest in the Contract Area while LLOG holds the remaining 85% working interest.[4] LLOG is the recognized operator under the OOA and is the designated operator with the Bureau of Ocean Energy Management and the Bureau of Safety and Environmental Enforcement.

---

[2] A schedule of the LLOG Abandoned Properties is attached hereto as **Exhibit A**.
[3] A copy of the OOA is at ECF No. 774-1.
[4] *See* Ratification and First Amendment to Operating Agreement ECF No. 774-2 at p. 1. Note that an affiliate of LLOG, namely LLOG Energy, LLC, actually holds a 1% working interest in GB 157, with LLOG owning 84%.

6. A more detailed description of the relationship between LLOG and Debtor and the underlying leases and claims associated with GC 157 and CG 201 is included in prior filings by LLOG found at *LLOG Exploration Offshore, LLC's Motion for Relief from the Automatic Stay* (ECF No. 683); *LLOG Exploration Offshore L.L.C.'s Motion for Adequate Protection* (ECF No. 684), and *LLOG Exploration Offshore, LLC's Reply in Support if its Motion for Relief from Automatic Stay and Motion for Adequate Protection* (ECF No. 780) (referred to collectively herein as the "Stay Motions"). In summary fashion, and for purposes of this Objection, the pertinent facts and timeline are as follows:

- May 1, 1990, oil and gas lease bearing Serial No. OCS-G 12210, issued by the United States of America, acting through the Regional Director, Gulf of Mexico OCS Region, Minerals Management Service, as Lessor, covering and affecting lands described as Green Canyon, Block 201, Official Protraction Diagram, NG 15-03. BP Exploration, Inc. was the only original lessee in and to the lease covering GC 201.

- June 1, 2002, oil and gas lease bearing Serial No. OCS-G 24154, issued by the United States of America, acting through the Regional Director, Gulf of Mexico OCS Region, Minerals Management Service, as Lessor, covering and affecting lands described as Green Canyon, Block 157, Official Protraction Diagram, NG 15-03. LLOG and Davis were the original lessees in and to the lease covering GC 157.

- December 12, 2002, the effective date of the OOA by and among LLOG and Davis covering the GC 157 Lease.[5]

- December 12, 2002, Memorandum of Operating Agreement and Financing Statement, executed by LLOG and Davis in 2009, filed in the mortgage records of Terrebonne Parish on July 27, 2009 at File Number 1328132, Book 2201, Page 579.[6]

- October 1, 2008, Farmout Agreement entered into by and among LLOG, Davis, Shell Offshore Inc. ("SOI"), and Marathon Oil Company ("MRO") through which LLOG and Davis earned operating rights in and to the NE/4 of the GC 201 lease from the surface down to 17,000 feet.[7]

---

[5] ECF No. 774-1.
[6] ECF No. 774-4.
[7] ECF No. 775-6.

- October 1, 2008 Assignment and Conveyance of Overriding Royalty Interest from LLOG and Davis to SOI and MRO as consideration for assignment of the GC 201 operating rights pursuant to the Farmout Agreement.[8]

- July 27, 2009, Correction to Memorandum of Operating Agreement filed in the mortgage records of Terrebonne Parish on September 16, 2009 at File Number 1331665, Book 2215, Page 126. This Corrected Memorandum of Operating Agreement also added the GC 201 lease to the Contract Area covered by the OOA. <u>This is the filing that creates the enforceable mortgage lien in favor of LLOG and encumbering all of Fieldwood's interest in GC 201, specifically including the ORRI</u>.[9]

- August 5, 2014 Equity Purchase Agreement through which Fieldwood acquired Davis and its interests in GC 157 and GC 201.[10]
.
- January 1, 2015, Overriding Royalty Assignment through which SOI assigned its reserved ORRI to Fieldwood for the GC 201 aliquots and depths.[11]

7.  As part of a Farmout Agreement covering GC 201, SOI reserved an overriding royalty interest. Such overriding royalty interest was created by an Assignment and Conveyance of Overriding Royalty Interest dated effective October 1, 2008, by and between LLOG and Davis, as Assignors, and SOI and MRO, as Assignees, covering GC 201 (as depth and aliquot restricted) (the "GC 201 ORRI").[12] Effective January 1, 2015, SOI sold and conveyed its portion of the GC 201 ORRI to Fieldwood in conjunction with other transactions unrelated to LLOG. However, the OOA, dated and effective as of December 12, 2002, expressly provides that, "if subsequent to the execution of this Agreement, any Party should create an Overriding Royalty Interest, such subsequently created Overriding Royalty shall be made specifically subject to all the terms and provisions of this Agreement and shall be subordinate to the rights of the other Parties to this Agreement."[13]

---

[8] ECF No. 775-8.
[9] ECF No. 774-6.
[10] ECF Nos. 775-9, 775-10.
[11] ECF No. 775-12.
[12] ECF No. 775-8.
[13] *See* OOA Section 19.1.1, ECF No. 774-1 at p. 133.

4

8. Pursuant to the express terms of the OOA, LLOG, as Operator, is afforded certain security rights, not only in connection with both leases comprising the Contract Area, but also in the oil and gas produced therefrom. These security rights have been perfected as a matter of public record.[14] Even though Davis granted these original mortgage liens and security interests, Fieldwood is bound thereby through the Louisiana public records doctrine and because Fieldwood bought the equity in Davis, not the underlying assets.

9. Specifically, the OOA states that "[e]ach Non-Operating Party [i.e., Fieldwood] hereby grants to the Operator [i.e., LLOG] a mortgage, hypothec, and pledge of and over all of its rights, titles, and interest in and to (a) the Lease[s], (b) the oil and gas in, on, under, and that may be produced from the Lease[s] or included in the Contact Area, and (c) all other immovable property susceptible of mortgage situated with the Contact Area."[15] As set forth in the OOA, "this mortgage is given to secure the complete and timely performance of and payment by [Fieldwood] of all obligations and indebtedness of every kind and nature, whether now owed by [Fieldwood] or hereafter arising pursuant to this Agreement," and "shall secure the payment of all Costs and other charges properly charged to such Party."[16] These obligations are reflected in public records

---

[14] These mortgage, lien, and security rights were perfected by the parties with an interest in the Contract Area by filing a Memorandum of Operating Agreement in the mortgage records of Terrebonne Parish on July 27, 2009 at File Number 1328132, Book 2201, Page 579; with a correction thereto being filed in the mortgage records of Terrebonne Parish on September 16, 2009 at File Number 1331665, Book 2215, Page 126 (original signatures thereon create the mortgage interest in the GC 201 ORRI); with a notice of re-inscription being filed in the mortgage records of Terrebonne Parish on April 8, 2014 at File Number 1450879, Book 2645, Page 470; and with an amendment and ratification thereto being filed in the mortgage records of Terrebonne Parish on February 3, 2015 at File Number 1473360, Book 2716, Page 268 (adding Fieldwood as a debtor). Companion filings were made in the Louisiana Uniform Commercial Code records of Terrebonne Parish on August 16, 2013 at UCC File Number 55-1434772, with an amendments and a continuation thereto filed on February 3, 2015 at UCC File Number 55-1473361, February 3, 2015 at UCC File Number 55-1473362, February 3, 2017 at UCC File Number 55-1473363 (adding Fieldwood as a debtor), February 3, 2015 at UCC File Number 5-1473364, and on February 20, 2018 at UCC File Number 55-1552263 (continuation).

[15] Section A(i) to Exhibit I to the OOA, ECF No. 774-1, at p. 178.

[16] Section A(i) to Exhibit I to the OOA, ECF No. 774-1, at p. 178.

filings in Terrebonne Parish, Louisiana, which make LLOG a fully secured claimant for all obligations of Davis and Fieldwood under the OOA.

### 1. LLOG is a secured creditor with a secured claim in the amount of $19,808.451.47.

10. LLOG holds a secured claim against Debtor, which, if allowed, entitles it to have "[its] claims satisfied in full, either through payment in Cash or other treatment as specified in the Plan."[17] Specifically LLOG, as operator under the OOA, has a secured claim against Debtors in the total amount of $19,808.451.47.[18] As Operator, LLOG is afforded certain security rights, not only in connection with both leases comprising the Contract Area, but also in connection with the oil and gas produced therefrom.

11. LLOG's security interest in the proceeds of the GC 201 ORRI were extensively briefed in connection with LLOG's Stay Motions.[19] In addition, LLOG can establish its perfected mortgage in the GC 201 ORRI. Specifically, LLOG can establish that Fieldwood succeeded to Davis' obligations under the OOA, including its proportionate share of plugging and abandonment and decommissioning obligations associated with the Contract Area, and that the GC 201 Lease, GC 201 ORRI included, is burdened with LLOG's liens securing said obligations. Further, LLOG's mortgage lien in and to all of Davis' (now Fieldwood's) interest in the GC 201 Lease

---

[17] ECF No. 1285 at p. 15; *see also* ECF No. 1285-1 at p. 41.
[18] LLOG intends to time file a rejection damages claim against Fieldwood, in the secured amount of $19,808.451.47, based upon the fact that Debtor intends to reject the OOA and to abandon or otherwise reject the relevant interests in GC 157 and GC 201 leases. LLOG expressly reserves the right, to further substantiate its secured rejection damages claims with additional evidence and/or supporting its security interests in the GC 201 Lease, the GC 201 ORRI, and/or the As-Extracted Collateral.
[19] *See* LLOG Exploration Offshore, LLC's Reply in Support if its Motion for Relief from Automatic Stay and Motion for Adequate Protection (ECF No. 780); *see also* ECF Nos. 683, 684.

remains valid under Louisiana law and was properly recorded and reinscribed such that it remains valid through 2024.[20]

12. Should LLOG ultimately establish its rights as a secured creditor, it will be entitled to full recovery on the later of the Effective Date or "on the date that is ten (10) Business Days after the date on which such Other Secured claim becomes an Allowed Other Secured Claim."[21] However, as things currently stand, it is unclear (and unlikely) that Debtors will be in a position to satisfy LLOG's secured claim absent the GC 201 ORRI post-confirmation and after the claims objection process occurs.

### 2. LLOG intends to continue to pursue and preserve its secured claim in the amount of $18,905,960.55 against Fieldwood, especially considering Debtors' proposed treatment of GC 201 and GC 157.

13. LLOG's Stay Motions – filed in December 2020 and prior to any plan filings – focused simply on obtaining an order from this Court whereby the first purchaser of production at GC 201 could segregate production proceeds as security for Fieldwood's proportionate share of joint interest billings, in an amount not less than $902,490.92, for plugging and abandonment work and other operational charges associated with the Contract Area. Having now learned that Debtors intend to essentially bifurcate the GC 201 Lease – by selling the valuable portions (i.e., the GC

---

[20] Specifically, LOGG (then LLOG Exploration Offshore, Inc.) and Davis entered in that certain Memorandum of Operating Agreement and Financing Statement (Louisiana), dated effective December 12, 2002, and signed by LEO Inc., as Operator, on July 21, 2009, and by Davis, as Non-Operating Party, on July 21, 2009, (the "MOA"), which was then promptly corrected by that certain Correction to Memorandum of Operating Agreement and Financing Statement (Louisiana), signed by LEO Inc. on September 9, 2009, and by Davis on September 1, 2009, (the "Correction to MOA") (the MOA as corrected by the Correction to MOA, sometimes herein the "Corrected MOA"). Fully executed originals of the MOA and Correction to MOA were included in the following filings recorded in the public records of Terrebonne Parish, Louisiana: The MOA is found under Mortgage Book 2201, Page 579, File No. 1328132, recorded on July 27, 2009, (as so recorded, sometimes herein the "Recorded MOA") and the Correction to MOA is found under Mortgage Book 2215, Page 126, File No. 1331655, recorded on September 16, 2009 (as so recorded, sometimes herein the "Recorded Correction to MOA"). In April 2014, a Notice and Request of Reinscription, dated April 1, 2014, signed by the secured party LLOG (successor by conversion to LEO Inc.), and relating to the Recorded MOA and Recorded Correction to MOA, was recorded on April 8, 2014, in Terrebonne Parish, Louisiana, under Mortgage Book 2645, Page 470, File No. 1450879 (the "Notice of Reinscription").
[21] ECF No. 1285-1 at p. 548.

201 record title interest and the GC 201 ORRI) while leaving others to contend with Debtor's significant proportionate share of P&A liability (approximately $14 million) associated ith the GC 201 operating rights and the GC 157 lease in its entirety- LLOG intends to expand the reach of its secured claim to include the estimated decomissioing costs associated with the Contract Area, which total approximately $18,905,960.55.[22]

14. Specifically, LLOG intends to file a rejection damages claim against Fieldwood, in the secured amount of $18,905,960.55 plus the $902,490.92, based upon the fact that Debtors' Plan seeks to reject the OOA and to abandon or otherwise reject it record title interest in GC 157 and as well as its operating interest and record title interest (as it relate to the NE4) in GC 201.[23] LLOG notes Article 8.3 of the Plan, which suggests that any rejection damages claim "shall be classified as treated in Class 6B (General Unsecured Claims)," and expressly objects to the Plan to the extent it impairs its rights as a secured creditor entitled to full recovery. Although most rejection damages claims are unsecured, they do not have to be unsecured as a matter of law. [24] Based upon its mortgage and liens rights referenced herein as granted by the OOA and various public records filings, LLOG contends that its rejected damages claims for unpaid joint interest billings and future P&A costs are secured by the GC 201 ORRI.

**B. Debtors' 363 Sale and proposed treatment of the GC 201 ORRI essentially strips LLOG of rights to its collateral.**

15. Debtor's Fourth Amended Plan contemplates the sale of certain of Debtors' interests to a "newly formed special purpose bidding entity," in accordance with the Credit Bid

---

[22] Fieldwood's approximate proportionate share of decommissioning costs associated with the Contract Area is based on total decommissioning costs estimates per BOEM/BSEE records. *See* ECF Nos. 774-22, 774-23.
[23] *See* Article 5.13 of Plan, ECF No. 1285-1 at p. 55; *see also* ECF No. 1290, ¶ 20 at pp. 14-15.
[24] *See, e.g., In re Mainstream Access, Inc.*, 134 B.R. 743, 750 (Bankr. S.D.N.Y. 1991) (holding rejection damage claim secured up to the value of security deposit).

8

Purchase Agreement (referred to herein as the "363 Sale").[25] Debtors have suggested that this new special purpose entity will be "formed at the direction of the Consenting FLTL Lenders" and will purchase certain of Debtors' assets – including specified Deepwater Asses and Shelf Assets "for the aggregate consideration of approximately $1.03 billion."[26] Debtors have disclosed that such consideration will include (among other consideration) "a credit bid of the Allowed FLTL Claims up to the FLTL Claims Allowed Amount" and "cash in the amount up to approximately $105 million."[27]

16. The schedule of oil and gas lease interests included as part of the 363 Sale includes Fieldwood's interest in the GC 201 ORRI.[28] Under the Plan, and pursuant to the terms of the Credit Bid Purchase Agreement, LLOG understands that Fieldwood's interests in the GC 201 ORRI "will vest free and clear of all Liens, Claims, charges, Interests and other encumbrances,"[29] thereby stripping LLOG of its rights without compensation.

17. To the extent that LLOG ultimately prevails on its secured claim, the GC 201 will likely already be transferred to the Credit Bid Purchaser "free and clear", essentially stripping LLOG of its collateral, with no definitive ultimate means of recovery. Although the Plan provides for cash recovery for secured creditors, it is not presently clear whether, absent the GC 201 ORRI, Debtor will have on hand the assets necessary to satisfy LLOG's allowed claim, which could end up being close to $20 million.[30] Accordingly, and for the reason set forth more specifically herein, LLOG objects to the 363 Sale.

---

[25] ECF No. 1285 -1 at p. 12.
[26] ECF No. 1285 at p. 13.
[27] ECF No. 1285 at p. 13. Remaining consideration comprised of the GUC Warrants, the SLTL Warrants, and the assumption of certain liabilities as set forth in Credit Bid Purchase Agreement.
[28] ECF No 1285-1 at p. 97.
[29] ECF No. 1285 at p. 18; ECF No. 1396 at p. 8.
[30] To provide evidence for the value of the override, LLOG commissioned Netherland, Sewell & Associates, Inc. to create a specific reserve analysis/reserve report for the GC 201 ORRI. *See* ECF No. 1363-1. This reserve report is

1. **The Credit Bid Purchaser does not have a lien on the GC 201 ORRI such that they are unable to credit bid for purposes of the 363 Sale**

18. The Credit Bid Purchaser does not have a superior lien – or any lien – on the GC 201 ORRI and/or the GC 201 As-Extracted Collateral[31]. For the reasons discussed and referenced herein, LLOG created and perfected its mortgage and security interests related to the GC 201 ORRI well before the Petition Date. To LLOG's knowledge, there are no mortgage or UCC filings related to the GC 201 ORRI that predate LLOG's filings.[32] Further, though the Final Cash Collateral Order granted fully perfected first priority senior security interests in "all tangible and intangible pre- and post-petition property" of Fieldwood, LLOG's aforementioned interests in GC 201 were expressly excluded as "Unaltered Senior Prepetition Liens and Rights."[33] Because the Credit Bid Purchaser has no security interest in the GC 201 ORRI and/or the GC 201 As-Extracted Collateral, it is unable to credit bid such interest in connection with this proposed purchase transaction. Without the ability to credit bid to the Credit Bid Purchaser, Debtors are proposing to sell the very collateral that is securing LLOG's claim against Fieldwood.

---

attached hereto and established a present value for the override for . As such, LLOG"s secured claim is at least $7,439,100 (the present developed value) and the balance of its claims shall be treated as unsecured. The 2P present value is $12,422,800 and the 3P present value is $15,008,100. LLOG reserves the right to argue the full amount of its secured claim once is rejection damages claim is on file and liquidated.

[31] The "As Extracted Collateral" refers to the GC 201 Lease, together with all accounts receivable accruing or arising as a result of the sale of such oil and gas and the cash and other proceeds from the sale of such oil and gas once produced (oil and gas produced from or attributable to the GC 201 Lease, the accounts receivable related to or arising from the sale of such oil and gas and the cash or other proceeds from the sale of such oil and gas produced.

[32] *See* LLOG Exploration Offshore, L.L.C. Limited Encumbrance Certificate dated January 12, 2021, at ECF No. 774-3.

[33] ECF No. 346 at pp. 25 – 26.

### III. LLOG joins in the Objections[34] of the Other Predecessors[35]

19. LLOG is a predecessor in interest to Debtors in the LLOG Abandoned Properties. The Plan does not provide for the payment of any of the P&A liability of the Debtors for the LLOG Abandoned Properties. Even though 11 U.S.C. § 554 provides a mechanism for ridding the estate of property that is burdensome or of inconsequential benefit to the estate, the Supreme Court's holing in *Midlantic* is clear:

> The Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety. Accordingly, without reaching the question whether certain state laws imposing conditions on abandonment may be so onerous as to interfere with the bankruptcy adjudication itself, **we hold that a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards.**[36]

Here, confirmation of the Plan violated § 30:34 of the Louisiana Revised Statutes:

> § 30:34. Abandoning gas well without closing prohibited; penalty.
>
> No person shall abandon a well in or adjacent to a natural gas field or an apparent natural gas field, without first placing a properly made plug both above and below the gas-producing sand, or otherwise sufficiently securing the well against the admission of water into the gas-producing sand.
>
> Whoever violates this Section shall be fined not less than one hundred dollars nor more than one thousand dollars or imprisoned not less than thirty days nor more than four months, or both.
> LA. R.S. § 30:34.

---

[34] XTO filed its confirmation objection on Jan. 12, 2021 at ECF No. 759. Marathon filed its confirmation objection June 2, 2021, at ECF No. 1443. Hess' and BP's confirmation objections are not yet assigned docket entry numbers. XTO's supplemental confirmation objection is not yet assigned a docket entry number.

[35] The "Other Predecessors" are: (i) XH LLC, HHE Energy Co., and XTO Offshore, Inc. (collectively "XTO"); (ii) Hess Corporation ("Hess"); (iii) BP Exploration & Production, Inc. ("BP"); and Marathon Oil Company ("Marathon").

[36] *Midlantic Nat'l Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 507 (1986) (emphasis added).

For this reason, and for the reasons set forth in the objections of the Other Predecessors, the Plan cannot be confirmed.

## IV. NOTICE OF OPT OUT

20. LLOG hereby provides notice that it opts out of the release contained in Article 10.7(b) of the Plan.

Dated: June 2, 2021

>Respectfully submitted,
>
>/s/ John E. W. Baay II
>JOHN E. W. BAAY, II
>Texas State Bar No. 798042
>GIEGER, LABORDE & LAPEROUSE, L.L.C.
>Suite 4800, 701 Poydras Street
>New Orleans, Louisiana 70139-4800
>Telephone: (504) 561-0400
>Facsimile: (504) 561-0100
>Email: jbaay@glllaw.com
>*Counsel for* LLOG Exploration Offshore, L.L.C.
>and LLOG Energy, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing pleading was served via the Court's CM/ECF system on the 2nd day of June 2021, which automatically provided electronic notice upon all parties in interest listed on the ECF service list.

*/s/ John E. W. Baay II*