IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>**FIELDWOOD ENERGY LLC**, *et al.*,<br><br>Debtors.[1] | )<br>)<br>)<br>)  Case No. 20-33948 (MI)<br>)<br>)  (Chapter No. 11)<br>)<br>)  (Jointly Administered)<br>)<br>) |

**SHELL OFFSHORE, INC.'S OBJECTION TO THE
FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
FIELDWOOD ENERGY, LLC AND ITS AFFILIATED DEBTORS
[RELATES TO DKT. NO. 1284]**

Shell Offshore Inc. ("Shell") a creditor and party-in-interest in the above-captioned, jointly administered bankruptcy cases (the "Bankruptcy Cases"), hereby files this objection (the "Objection") to the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1284] (the "Fourth Amended Plan" or "Plan").[2] In support of this Objection, Shell respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms not otherwise defined herein shall maintain the definitions ascribed to them in the Plan.

**BACKGROUND**

A. **Shell's Relationship with the Debtors**

1. Shell is in chain of title with Fieldwood Energy LLC and its affiliates (collectively, "Fieldwood" or "FWE") either directly or by virtue of divesture of certain oil and gas assets (*e.g.*, leases) to Apache Corporation and other parties. Specifically, Shell and Fieldwood are parties to that certain (i) *Asset Purchase Agreement* dated April 8, 2015 (the "Troika APA"), whereby Fieldwood purchased oil and gas interests, properties and associated leases, contracts, wells, equipment and facilities regarding the Troika Unit located in the Gulf of Mexico and that certain (ii) *Asset Purchase Agreement* dated April 8, 2015 (the "Hickory APA", together with the Troika APA, the "Purchase Agreements") whereby Fieldwood purchased oil and gas interests, properties and associated leases, contracts, wells, equipment and facilities regarding the Hickory Unit located in the Gulf of Mexico.

2. Shell and Fieldwood's business operations are subject to oversight by several government agencies, including, *inter alia*, the Bureau of Safety and Environmental Enforcement ("BSEE"), whose regulations serve as the basis for various plugging and abandonment obligations (the "P&A Obligations") for decommissioning certain leases.

B. **The Chapter 11 Cases**

3. On August 3, 2020 and August 4, 2020, Fieldwood and 13 affiliated debtors (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

4. On November 19, 2020, Shell filed Proof of Claim No. 412 to assert undetermined claims related to decommissioning liability pursuant to the Purchase Agreements.

5. On January 1, 2021, the Debtors filed the *Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 722] (the "Plan") and the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 723] (the "Disclosure Statement").

6. On March 15, 2021, the Debtors filed the *Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1020] (the "Amended Plan"), and on March 16, 2021, the Debtors filed the *Disclosure Statement for Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1022] (the "Amended Disclosure Statement").

7. On March 18, 2021, Shell filed its *Objection and Joinder of Shell Offshore, Inc. to the (A) Objection of Chevron U.S.A., Inc. and Noble Energy, Inc., (B) Objection of XTO Offshore, INc., HHE Energy Company, and XH LLC, (C) Objection of Marathon Oil Company, (D) Objection of ENI Operating Co. Inc. and ENI Petroleum US LLC, and (e) Objection of Sea Robin Pipeline Company, LLC, West Cameron Dehydration Company, L.L.C., Florida Gas Transmission, LLC, Stingray Pipeline Company, L.L.C., Trunkline Gas Company, LLC, and Trunkline Field Services LLC (collectively, "Energy Transfer"), and (f) Objection of Freeport-Mcmoran Oil & Gas LLC and Mcmoran Oil & Gas LLC to the Disclosure Statement for the Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors* [Dkt. No. 1056] ("Shell's Objection to the Amended Disclosure Statement").

8. On March 23, 2021, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1098] (the "Second Amended Plan"), and the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Fieldwood*

*Energy LLC and its Affiliated Debtors* [Dkt. No. 1102] (the "Second Amended Disclosure Statement").

9. On March 24, 2021, the Debtors filed the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1115] (the "Third Amended Plan"), and the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1117] (the "Third Amended Disclosure Statement").

10. April 9, 2021, the Debtors filed the Fourth Amended Plan at Dkt. No. 1252 and the *Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1254] (the "Fourth Amended Disclosure Statement" or "Disclosure Statement"). The solicitation versions of the Fourth Amended Plan and Fourth Amended Disclosure Statement were subsequently filed at Dkt. Nos. 1284 and 1285, respectively.

11. The Court held a hearing on the Fourth Amended Disclosure Statement on April 14, 2021. While certain parties withdrew their objections to the Disclosure Statement, many parties, including Shell, reserved their objections for plan confirmation. On April 15, 2021, the Court entered an amended order conditionally approving the Fourth Amended Disclosure Statement. *See* Dkt. No. 1287.

12. Pursuant to the Fourth Amended Plan, the Debtors intend to "reorganize" by way of the following transactions: (i) a credit bid sale, (ii) a divisive merger transaction pursuant to which certain assets and liabilities of FWE will be divided into several NewCo entities, (iii) the decommissioning of certain assets, and (iv) abandonment of the Abandoned Properties, along with the P&A Obligations associated therewith, to the Debtors' predecessors.

**OBJECTIONS AND ARGUMENT**

13.     Among other things, a plan must comply with the applicable provisions of the Bankruptcy Code. Section 1129(a) of the Bankruptcy Code sets forth the requirements for confirming a chapter 11 plan on a consensual basis, when each impaired class of claims votes to approve the plan. The Debtors, as proponents, bear the burden of establishing that the plan complies with each applicable requirement of 11 U.S.C. § 1129 by a preponderance of evidence. *Heartland Federal Sav. & Loan Assoc. v. Briscoe Enter., Ltd. (In re Briscoe Enter., Ltd.)*, 994 F.2d 1160, 1167 (5th Cir. 1993); *In re MCorp Fin., Inc.*, 137 B.R. 219, 225 (Bankr. S.D. Tex. 1992), *appeal dismissed*, 139 B.R. 820 (S.D. Tex. 1992).

**A.     The Plan Contains Overbroad Releases.**

14.     Section 1129(a)(1) requires the Plan to be in compliance with the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(1). Here, however, the Plan contains impermissible third party releases and accompanying injunctions to non-debtor third parties such as "the Apache PSA Parties" ("<u>Apache</u>"), which is in chain of title with Shell on certain of its oil and gas interests and may have decommissioning obligations for such interests along with creditors like Shell. The Fifth Circuit has rejected non-debtor releases except those releasing the unsecured creditors' committee and its members because they contravene section 524(e). *See Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 253 (5th Cir. 2009).

15.     Nothing in the Plan should purport to release Apache from any of its environmental obligations, including decommissioning obligations, or obligations to third parties, joint working interest owners, and others in the chains of title for any of the Debtors' assets. The proposed release of Apache exceeds the scope of releases allowed under *In re Pacific Lumber*, 584 F.3d 229, 250 (5th Cir. 2009). Although similar third-party release provisions have been approved in this

Court—in situations without meaningful objection—they should not be approved here after numerous parties have objected to the overbroad releases.[3]

### B.    The Plan is not Proposed in Good Faith.

16.    Section 1129(a)(3) requires that the Plan be proposed in good faith and not by any means forbidden by law. *See* 11 U.S.C. § 1129(a)(3). The Fifth Circuit has noted that "good faith" should be evaluated "in light of the totality of the circumstances surrounding establishment of [the] plan," mindful of the purposes underlying the Bankruptcy Code. *Western Real Estate Equities, L.L.C. v. Vill. at Camp Bowie I, L.P. (In re Vill. at Camp Bowie I, L.P.)*, 2013 U.S. App. LEXIS 3949, at *18 (5th Cir. Feb. 26, 2013).

17.    Through the Plan, the Debtors purport to abandon their interests in a large number of leases (including a number of leases in which Shell is in the chain of title); however, the Debtors still have not addressed the fact that they cannot avoid their environmental and regulatory liabilities through abandonment. *See* 30 CFR § 250.1702; *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494 (1986); *In re Anglo-Suisse Offshore Partners, LLC*, Case No. 15-36566 (Bankr. S.D. Tex. Apr. 6, 2016) (Dkt. No. 63); *In re Amer. Coastal Energy, Inc.*, 399 B.R. 805, 812 (Bankr. S.D. Tex. 2009).[4]

18.    The Supreme Court's *Midlantic* opinion generally precludes debtors from abandoning assets that pose a risk to public safety and health. *Midlantic Nat'l Bank*, 474 U.S. 494

---

[3] For the avoidance of doubt, Shell does not consent to, and expressly opts out of, all releases proposed by the Plan or otherwise.

[4] To this point, the Plan likewise lacks specificity about how the Abandoned Properties will return to the Predecessors, including, but not limited to, whether record title interest will return to Shell. As previously stated in Shell's Objection to the Disclosure Statement, abandonment "is not a transfer of property but simply 'a divestiture of all of the estate's interest in the property." *In re Pilz Compact Disc, Inc.*, 229 B.R. 630, 639 (Bankr. E.D. Pa 1999) (citing *In re Dewsnup*, 908 F.2d 588,590 (10th Cir. 1990), *aff'd* 502 U.S. 410 (1992)). And while the Plan provides that BSEE will issue orders compelling certain predecessors to perform the P&A Obligations, it fails to address whether the contemplated transfer of leases is feasible from a regulatory or legal perspective.

at 507. "In codifying the judicially developed rule of abandonment, Congress also presumably included the established corollary that a trustee could not exercise his abandonment power in violation of certain state and federal laws." *Id*. at 509. In *In re ATP Oil & Gas Corp*., 2013 WL 3157567, at *2-3 (Bankr. S.D. Tex. Jun. 19, 2013), this Court recognized an exception to *Midlantic*, but only if the United States has consented to the abandonment and the abandonment is subject to "conditions that will adequately protect the public's health and safety."

19. Furthermore, federal regulations require that every company demonstrate that it is qualified to own a lease or operate under a lease on the outer-continental shelf. 30 C.F.R. § 556.400. The Bureau of Ocean Energy Management ("<u>BOEM</u>") may disqualify a company from acquiring a lease if that company (or its principals) fails to satisfy due diligence requirements on other leases (30 C.F.R. § 556.403(a) citing 43 U.S.C. § 1337(d)) or is determined to have an unacceptable operating performance. 30 C.F.R. § 556.403(c). In addition, BOEM must approve all transfers of non-economic lease interests. 30 C.F.R. § 556.700 et seq. BOEM may disapprove where the "transferor or transferee" has unsatisfied obligations, including well abandonment and decommissioning obligations. 30 C.F.R. § 556.704.

20. The Plan is also devoid of specific information as to the go-forward status of the bonds that were issued to address the P&A Obligations of the Debtors in connection with the purchase of assets from predecessor entities like Shell. The Plan fails to specifically provide (i) which properties are covered by bonds; (ii) whether those bonds are available for properties to be conveyed, retained, or abandoned; (iii) how any of the bonds related to the Abandoned Properties are allocated to each property; (iv) whether the Debtors have obtained the requisite surety bonding commitments; (v) whether any of the existing surety providers are willing to support the Amended

Plan or willing to continue to provide surety bonding, and (vi) whether the surety bonds may be utilized in addressing P&A Obligations of the Abandoned Properties.[5]

21. In light of the foregoing deficiencies, the Plan is not proposed in good faith because it does not sufficiently address the mechanical steps the Debtors will undertake to jettison the Abandoned Properties, nor does it establish a record that abandonment will adequately protect the public. Permitting the Debtors to abandon these assets would, from a public policy perspective, establish a troubling precedent whereby future debtors may avoid similar widespread environmental decommissioning liabilities in the Gulf of Mexico.

22. The Court should not approve a Plan that allows the Debtors to walk away from a significant public health, environmental, and safety risk of its own making.[6] Allowing debtors to abandon these obligations serves to endorse a cycle of bankruptcies whereby companies are not held accountable for maintaining their assets and performing their decommissioning obligations, operating under the belief that they can simply return those obligations to predecessors, co-owners, and taxpayers whenever such assets become uneconomic. And the same participants later return to the Outer Countinental Shelf ("OCS") as new entities accruing even more unsecured obligations.[7]

---

[5] Some of these issues will be addressed in connection with the pending Declaratory Action (as hereinafter defined). *See* Adv. Proc. No. 21-03418, *Fieldwood Energy LLC et al. v. Everest Reinsurance Company et al.* (the "Declaratory Action").

[6] Decommissioning obligations and related regulatory obligations are not "Claims" as defined by Section 101(5) of the Bankruptcy Code, but are instead mandatory, nondischargeable performance obligations intended to protect the public health and safety. *See Sheerin v. Davis* (*In re: Davis*), 3 F. 3d 113, 116 (5th Cir. 1993) (holding that creditors entitled to an equitable remedy are not required to select a suboptimal remedy of money damages).

[7] Indeed, according to the Government Accountability Office, the Dept. of Interior has historically under-estimated decommissioning costs and required insufficient security from current owners to protect taxpayers from receiving decommissioning obligations. *See Offshore Oil and Gas Resources: Actions Needed to Better Protect Against Billions of Dollars in Federal Exposure to Decommisssioning Liabilties*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE, HTTPS://WWW.GAO.GOV/PRODUCTS/GAO-16-40 (last visited June 2, 2021). This reinforces the importance of keeping the obligations with debtors who purposely and willingly availed themselves to these obligations in the pursuit of profits, having purported to perform all the due diligence to own and operate these assets on federal waters, and being fully cognizant of the costs, benefits and risks (including of commodities prices) of

**C.     The Plan is not Feasible.**

23.     Section 1129(a)(11) provides that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).  It is the Debtors' responsibility to show by a preponderance of the evidence that the Plan as proposed is feasible. *See Fin. Sec. Assurance Inc. vs. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 801 (5th Cir. 1997).

24.     A number of factors should be analyzed when determining whether a plan is feasible. Among these are the Debtors' capital structure, earning power, management ability, economic conditions, the availability of credit, the adequacy of funds for equipment replacement, provisions for adequate working capital, and "any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan." *In re M & S Assoc., Ltd*., B.R. 845, 849 (Bankr. W.D. Tex. 1992).

25.     The Plan is not feasible because it does not provide the means for the Debtors' satisfaction of their decommissioning obligations. While the Debtors contend that they can satisfy all administrative claims in full, given the potential for sizable post-petition claims related to decommissioning obligations, it is unclear whether the Debtors will have sufficient funds to satisfy their administrative expense liabilities.  *See In re Amer. Coastal Energy Inc*., 399 B.R. 805, 809 (Bankr. S.D. Tex. 2009) ("The Fifth Circuit has held that an expense incurred post-petition to remedy a post-petition environmental liability is an administrative expense under section 503(b)(1)(A)." ).

---

exploring developing, and producing oil and gas on the federal OCS. Moreover, what happens if predecessors do not, or are unable to, comply with BOEM or BSEE orders—who is responsible for such liability?

26. The significant overlap between the FWE I, FWE III, the newly proposed FWE IV, and Abandoned Properties schedules makes this analysis (whether these entities can accomplish the proposed decommissioning without need for further reorganization in the future) more difficult to assess.

## RESERVATION OF RIGHTS

27. Shell reserves the right to amend, update, modify, and/or supplement the Objection in all respects, including, without limitation, any of the arguments or concerns raised in and incorporated into this Objection at any time, including at any hearing set by the Court for consideration of the Fourth Amended Plan, or any subsequently-filed plan of reorganization in these Bankruptcy Cases. Additionally, Shell hereby reserves and preserves any and all rights to the extent that the Plan, the Confirmation Order, or any other Plan-related document modifies or impairs Shell's rights with respect to any non-Debtor parties, including, but not limited to Shell's rights with respect to third party surety bonds.

## CONCLUSION

WHEREFORE, Shell requests that the Court (a) sustain its Objection and deny approval of the Fourth Amended Plan, and (b) grant such other and further relief as the Court may deem just, proper, and equitable.

*[Remainder of Page Intentionally Left Blank]*

Dated: June 2, 2021                                                     Respectfully submitted,

*/s/ Ryan E. Manns*
Ryan E. Manns
State Bar No. 24041391
ryan.manns@nortonrosefulbright.com
Scott Drake
State Bar No. 24026812
scott.drake@nortonrosefulbright.com
Emma Persson
State Bar No. 24110219
emma.persson@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201-7932
Telephone:     (214) 855-8000
Facsimile:      (214) 855-8200

Counsel to Shell Offshore, Inc.

### **CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in these cases on June 2, 2021.

*/s/ Ryan E. Manns*
Ryan E. Manns