## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY, LLC, *et al.* | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § | (Jointly Administered) |
| | § | |

### RLI INSURANCE COMPANY'S OBJECTION TO
### DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION
### [Relates to Docket No. 1284]

RLI Insurance Company ("RLI"), by and through undersigned counsel, hereby offers this Objection (the "Objection") to the Fourth Amended Plan of Reorganization ("Plan") [Docket No. 1284]. RLI objects to the Plan and reserves rights as follows:

## I.    PRELIMINARY STATEMENT

1.    Just two years after emerging from bankruptcy, Debtors find themselves back in front of this Court with a Plan that is unprecedented in both scope and effect. Debtors propose transferring their most valuable assets to a newly created special-purpose entity owned by Debtors' lenders and managed by Debtors' twice-failed management team, while simultaneously shedding billions of dollars of safety and environment obligations

---

[1]    The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

associated with negative value leases onto the U.S. Government, co-working interests owners, predecessors, and sureties. Most egregiously, Debtors intend to simply abandon and walk away from nearly two hundred oil and gas leases in the Gulf of Mexico with no actionable plan and no meaningful financial contribution to address the safety and environmental concerns being left behind. Debtors' blatant and ongoing disregard for regulatory concerns and environmental safety cannot be ignored and should not be rewarded by this Court. Because the Plan does not meet the requirements for reorganization under the Bankruptcy Code and contravenes regulatory requirements, it should not be confirmed.

## II.   BACKGROUND

2.     Debtors operate independent exploration and production companies focused on development of offshore oil and gas assets in the Gulf of Mexico. Debtors' assets include, among other things, oil and gas leases, wells, platforms, rights of way, and contracts that have been acquired through various purchases since 2013. As part of acquiring these assets, Debtors agreed to be responsible for decommissioning obligations that are required to be performed pursuant to BOEM and other regulatory agency regulations. It should be noted that assuming decommissioning obligations for existing oil and gas assets is not some unexpected consequence of the purchase—it is a core feature of Debtors' business model of acquiring and producing these assets.

3.     In the ordinary course of business, Debtors are required to provide surety bonds to certain regulatory agencies and other third parties to secure the performance of

obligations relating to oil and natural gas exploration and production operations, including obligations related to the decommissioning of Debtors' oil and gas properties.

4.     From time to time, RLI[2] issued certain surety bonds (collectively, the "Bonds") on behalf of Debtors, or a subsidiary, parent, predecessor in interest, affiliate, or division of Debtors, to secure obligations to third-party obligees, including but not limited to those Bonds summarized on Appendix A attached hereto.[3] Debtor, or a subsidiary, parent, predecessor in interest, affiliate, or division of Debtor, has executed and delivered one or more Indemnity Agreements identified in Appendix B, pursuant to which Debtor may be required to pay all premiums, provide collateral, indemnify and exonerate RLI, and hold RLI harmless from and against any and all liability, damage, loss, cost, and expense that RLI has incurred or will incur in connection with (1) the furnishing of the Bonds or (2) the enforcement of the Indemnity Agreements.

5.     On August 3 and August 4, 2020, Debtors each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. The cases are jointly administered under Case No. 20-33948.

6.     On April 15, 2011, Debtors filed the subject Plan as well as the Amended Disclosure Statement that was conditionally approved by this Court [Docket No. 1285].

---

[2]     RLI is a specialty property and casualty insurance and surety bond company with a principal place of business of 9025 N. Lindbergh Drive Peoria, IL 61615.

[3]     Appendix A may contain Bonds as to which liability has been extinguished by the obligees, by the terms of the Bond, or by operation of law. RLI reserves the right to amend and supplement Appendix A. A copy of any and/or all of the Bonds can be obtained upon request.

7.    Debtors' Plan essentially proposes that through a "divisive merger" that is not fully explained, Debtors' collective assets will be merged and then repartitioned into the following categories: (1) Specified Deepwater and Shelf Assets to be sold to a credit bid purchaser ("NewCo");[4] (2) Legacy Apache Properties to be operated by an administrator ("FWE I");[5] (3) other certain properties to be operated by an administrator ("FWE III");[6] (4) certain properties to be operated pursuant to an agreement with Chevron USA, Inc. ("FWE IV");[7]  and (4) other certain properties to be abandoned pursuant to sections 105(a) and 554(a) of the Bankruptcy Code ("Abandoned Properties").[8]

8.    As discussed in more detail below, the Plan is not feasible, contains provisions that are contrary to law, and contravenes regulatory requirements. Because the Plan does not meet the requirements for reorganization under the Bankruptcy Code, it should not be confirmed.

### III.    LAW AND ARGUMENT

### A.    Standard for Confirmation of a Plan of Reorganization

9.    For the Plan to be confirmed, Debtors must establish by a preponderance of the evidence that the Plan complies with section 1129 of the Bankruptcy Code. *See In re Briscoe Enters., Ltd. II*, 994 F.2d 1160, 1165 (5th Cir. 1993) (finding "preponderance of

---

[4]    *See* Exhibit B to the Disclosure Statement [Docket No. 1285].

[5]    *See* Exhibit C to the Disclosure Statement [Docket No. 1285].

[6]    *See* Exhibit D to the Disclosure Statement [Docket No. 1285].

[7]    *See* Exhibit E to the Disclosure Statement [Docket No. 1285].

[8]    *See* Exhibit F to the Disclosure Statement [Docket No. 1285].

the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown."); *In re Cypresswood Land Partners, I,* 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009) (debtor has the burden of proving all elements of section 1129 are met). Section 1129 requires the Debtors to establish their Plan complies with all applicable provisions of the Bankruptcy Code, is proposed in good faith, and is not proposed by any means forbidden by law. *See* 11 U.S.C. § 1129(a)(1), (3). For the reasons discussed below, the Plan contravenes Supreme Court jurisprudence and does not meet the requirements of Section 1129, and thus should not be confirmed.

**B.**   **The Plan Improperly Releases Post-Effective Date Debtors from Future Obligations Related to the Abandoned Properties**

10.   With respect to the nearly 200 lease interests or partial lease interests identified on the schedule of Abandoned Properties, Section 5.13 of the Plan provides that all of Debtors' rights and interests in the Abandoned Properties will be abandoned immediately on the effective date, and that:

> The Abandoned Properties shall not be allocated to nor vest in the Post-Effective Date Debtors or NewCo and its subsidiaries, including the Credit Bid Purchaser. Except as otherwise provided in this Plan or the Confirmation Order, the Debtors, their Estates, and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Properties. Nothing in this Plan or the Confirmation Order shall be construed as barring, waiving, or limiting the United States' rights to assert a claim against the Debtors, the Post-Effective Date Debtors or any co-lessees or predecessors in interest with respect to the Abandoned Properties for any decommissioning obligations for the Abandoned Properties.

11.     While the Plan provides that the United States may "assert a claim" with respect to decommissioning obligations for Abandoned Properties, it is unclear what that means outside of the context of a bankruptcy claim. Moreover, the ability to assert a "claim" is meaningless if the preceding sentence relieves the Post-Effective Date Debtors of all obligations related to the Abandoned Properties. Further, the Plan Injunctions in Section 10.7 specifically preclude holders of "Claims" from asserting or enforcing any rights after the Effective Date. As such, despite the apparent intent to create an exception, the Plan does not appear to maintain any future rights on behalf of the United States or any other party to enforce the referenced decommissioning obligations against the Post-Effective Date Debtors.

12.     Further, the Plan not only releases Post-Effective Date Debtors from pre-petition decommissioning obligations, the Plan specifically provides that Post-Effective Date Debtors are forever barred from accruing any future decommissioning liability related to the Abandoned Properties.

13.     The Plan specifically contemplates certain oil and gas lease interests being partially allocated to FWE I and interests in those same oil and gas leases being abandoned. To the extent Post-Effective Date Debtors intend to continue operating or participating in the hundreds of federal oil and gas lease interests designated to be retained, statutory regulations require that Post-Effective Date Debtors are jointly and severally liable for the entirety of lease decommissioning obligations, including obligations deriving from the lease interests that are abandoned.

14. It would be untenable and plainly contrary to regulatory authority for the Plan to allow Post-Effective Date Debtors to continue ongoing development and production of these leases while at the same time forever barring the accrual of statutory liability for portions of the lease-interests that were abandoned under the Plan. Because the Plan is contrary to law and equity regarding future obligations related to the Abandoned Properties, it should not be confirmed.

**C.** **The Plan Does Not Address Operator Status and Is Not Feasible With Regard to Properties Being Partially Abandoned and Partially Retained**

15. As discussed above, the Plan provides that on the Effective Date nearly 200 lease interests or partial lease-interests identified on the schedule of Abandoned Properties will be immediately abandoned.[9] Of those lease-interests being abandoned, over 120 are identified as being operated by Debtors, and nearly 50 of those operated lease-interests are identified as having some portion of the lease designated to be retained by the Post-Effective Date Debtor entities.

16. The Plan makes no provisions regarding operator status of any leases being retained by the Post-Effective Date Debtors. In fact, it is not currently known whether Post-Effective Date Debtors will even be allowed to operate any leases.[10]

17. The feasibility of the Plan is severely called into question by this failure to address the operator status of retained leases going forward. This problem is particularly salient for Debtors' operated leases that are being partially abandoned and partially retained

---

[9] *See* Exhibit F to the Disclosure Statement [Docket No. 1285].

[10] *See* Transcript of Fieldwood 30(b)(6) Deposition, at 241:24-242:6 (Ex. A)

by Post-Effective Date Debtors. Presuming Post-Effective Date Debtors intend to continue as operator for such properties, it would again be untenable for the Plan to release and forever preclude Post-Effective Date Debtors from accruing the same statutory liability applicable to all operators of oil and gas leases.

18.     These questions regarding operator status are absolutely critical to the implementation and feasibility of the Plan and remain entirely unaddressed. Because the Plan does not address operator status and is not feasible with regard to properties being partially abandoned and partially retained, confirmation should be denied.

## D.     <u>The Plan Does Not Provide for a Means to Pay Administrative Expenses Associated with the Abandoned Properties</u>

19.     Chapter 11 plans must provide for the payment in full of all administrative expenses on the effective date of the plan, unless the holders of such administrative expenses agree to a different treatment. 11 U.S.C. § 1129(a)(9)(A); *In re American Coastal Energy*, 309 B.R. at 808.

20.     Jurisprudence from this Court and the U.S. Fifth Circuit confirms that costs associated with decommissioning oil and gas wells are for the benefit of the estate and are entitled to administrative priority. *See H.L.S. Energy*, 151 F.3d at 438 (decommissioning costs were a benefit to the state and entitled to administrative priority); *American Coastal Energy*, 309 B.R. at 816-17 ("expenditures for remedying violations of environmental and safety laws are necessary to preserve the estate, regardless of whether liability for the state law violation first occurred before or after the filing of a bankruptcy petition"); *In re ATP Oil & Gas Corp.*, 2014 WL 1047818, No. 12-36187 (Bankr. S.D. Tex. March 18, 2014)

8

(coming to the same conclusion and further explaining that "a debtor's obligation to expend funds to bring the estate into compliance with a state health and safety law does not change just because another entity has the same obligation.").

21.     Debtors have received and continue to receive a number of Incidents of Non-Compliance that remain unresolved.[11] Debtors estimate that the Abandoned Properties alone will cost around $6 million just to make them safe for transition.[12]

22.     Moreover, Debtors' assets include a number of leases that have lapsed, thereby triggering decommissioning obligations.[13] In fact, Debtors' schedules indicate that over 300 lease interests have already been terminated.[14]

23.     Pursuant to the jurisprudence discussed above, all costs associated with maintaining the safety of these properties and satisfying triggered decommissioning obligations should constitute administrative expenses entitled to administrative priority under section 503(b)(1)(A), regardless of the fact that such obligations may arise from prepetition contracts, and regardless of whether other parties may be held secondarily liable for such obligations.

24.     Unless Debtors can demonstrate the ability to fund the hundreds of millions of dollars in administrative expenses that would be required to make the properties safe

---

[11]   *See* Transcript of Fieldwood 30(b)(6) Deposition, at 254:8-255:5 (Ex. A).

[12]   *See* Transcript of Fieldwood 30(b)(6) Deposition, at 223:18-224:10 (Ex. A)

[13]   *See* Transcript of Fieldwood 30(b)(6) Deposition, at 235:14-236:12 (Ex. A).

[14]   *See* Exhibits B through F to the Disclosure Statement [Docket No. 1285].

and fulfill already triggered decommissioning obligations, the Plan fails to satisfy Section 1129(a)(9)(A) and cannot be confirmed.

E.    **The Plan Violates Applicable State and Federal Laws Designed to Protect Health and Safety**

25.    Debtors seek to abandon certain properties under Section 554(a) of the Bankruptcy Code, including a number of leases used to conduct oil and gas operations in the Outer Continental Shelf, Louisiana, and Texas. Debtors contend that the properties to be abandoned are "burdensome to the Debtors' estates."[15] Pursuant to Federal and State regulations, the Abandoned Properties require decommissioning that is expected to cost hundreds of millions of dollars.[16]

26.    As this Court is aware, Debtors are unable to abandon properties "in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986); *see also Matter of H.L.S. Energy Co., Inc.*, 151 F.3d 434, 438 (5th Cir. 1998) ("a bankruptcy trustee may not abandon property in contravention of a state law reasonably designed to protect public health or safety."); *In re American Coastal Energy, Inc.*, 399 B.R. 805, 813 (Bankr. S.D. Tex. 2009) ("This Court need not make a determination whether the environmental hazard presents an

---

[15]    *See* Disclosure Statement [Docket No. 1285], p. 51.

[16]    The United States Department of the Interior, Bureau of Safety & Environmental Enforcement has filed proofs of claims against Debtors totaling over $4.5 billion.

imminent or identifiable harm. It is enough that the claim arises from a state law designed to protect the public from an identified hazard").

27.     Federal and State regulations regarding decommissioning of oil and gas leases are reasonably designed to protect the public health or safety from identifiable harm. *See, e.g., American Coastal Energy*, 399 B.R. at 813 ("the applicable provisions of the Texas Natural Resources Code [requiring the plugging and remediation of wells] are reasonably designed to protect the public health and safety."); *Matter of H.L.S. Energy Co., Inc.*, 151 F.3d 434, 438 (5th Cir. 1998) ("there is no question that under Texas law, the owner of an operating interest is required to plug wells that have remained unproductive for a year . . . Thus, a combination of Texas and federal law placed on the trustee an inescapable obligation to plug the unproductive wells").

**F.      The Plan Injunctions are Vague and Overbroad and Should Not Be Confirmed**

28.     Section 10.6 of the Plan provides that all Persons who have or may hold a Claim or Interest are, with respect to any such Claim or Interest, permanently enjoined from:

> (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor;
>
> []
> (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner

11

or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor;

[]

(iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor;

[]

(iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and

[]

(v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

29.    Injunctions are required to "describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." Fed. R. Civ. P. 65(d); Fed. R. Bankr. P. 7065. It is unacceptable to define the scope of the injunction post-confirmation, as the burden to articulate its scope is on the Plan Proponents as a requisite of confirmation. *In re Pittsburgh Corning Corp.*, 453 B.R. 570, 594 (Bankr. W.D. Pa. 2011). The Supreme Court has repeatedly emphasized that "the specificity provisions of Rule 65(d) are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S.

473, 476 (1974). "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id.*

30.     The Plan Injunctions provided in Section 10.6 are inherently vague and cannot be interpreted without relying on *numerous* other sources to determine, among other things, what constitutes the "Estate" or "property" referenced, or what constitutes actions that "in any manner, in any place whatsoever [do] not conform to or comply with the provisions of the Plan." As such, the Plan Injunctions should not be confirmed.

31.     Nevertheless, this ground of RLI's objection would be resolved by including the following language in the Confirmation Order:

> RLI Insurance Company's rights, including but not limited to security interests, security rights, contract rights, setoff and recoupment rights, contribution rights, and subrogation rights, against non-Debtors under surety bonds, operating agreements, other contracts, and applicable law are hereby reserved, and nothing contained in the Plan, Confirmation Order, or any other order of the Bankruptcy Court shall modify or impair RLI Insurance Company's rights with respect to any non-Debtor parties.

**G.     RLI Objects to Any Impairment of Its Collateral Rights**

32.     Section 10.7(c) of the Plan provides:

> (c) Release of Liens. Except as otherwise specifically provided in the Plan (including all Liens securing the FLFO Claims or the First Lien Exit Facility) or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages,

deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors. For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Initial Plan of Merger) held by the Prepetition FLFO Secured Parties, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

33.     RLI entered into an escrow agreement with Panaco, Inc., a predecessor in interest of Fieldwood SD Offshore, LLC, and other parties effective September 30, 1999 ("EB Escrow Agreement"), in connection with certain Bonds issued in favor of BP Exploration & Oil, Inc ("BP Bonds"). Pursuant to the EB Escrow Agreement, Panaco, Inc. deposited sums in an account maintained at JPMorgan Chase Bank, N.A. ("Escrow Account") to secure the obligations to RLI arising out of the BP Bonds, among other things. The property currently in the Escrow Account, which is valued at approximately $8.25 million as of the date of the Petition ("Panaco Collateral"), constitutes security for and secures the obligations owed by Debtor to RLI. The security interest in favor of RLI continues "in full force and effect until the later of (x) payment in full of the Obligations and (y) the release of all the Collateral pursuant to Section 7.01."[17]

---

[17]   *See* EB Escrow Agreement (Ex. B).

34.     Because Debtors have not satisfied the Obligations under EB Escrow Agreement and have no present, vested interest in the escrowed funds, the Panaco Collateral is not property of the estate and RLI's rights cannot be impaired under the Plan. *See In re Expert S. Tulsa, LLC*, 522 B.R. 634, 647 (Bankr. App. 10th Cir. 2014) ("most courts hold that funds held in escrow to assure or guarantee the debtor's performance of an obligation are not property of the estate where: (1) the funds were placed in escrow under an escrow agreement for the benefit or protection of another party; (2) the funds were in the possession and control of an escrow agent on the petition date; and (3) the debtor is entitled to receive the funds (or some portion thereof) only after fulfilling certain conditions.").

35.     As such, RLI objects to the extent Section 10.7(c) or any other part of the Plan purports to impair any of RLI's rights to the Panaco Collateral.

36.     To resolve this ground of RLI's objection, the following language should be included in the Confirmation Order:

> Notwithstanding any other provisions of the Plan, this Confirmation Order, or any other order of the Bankruptcy Court, all rights and obligations related to that certain escrow agreement, effective September 30, 1999, between Panaco, Inc., a predecessor in interest of Fieldwood SD Offshore, LLC, RLI Insurance Company, and certain other parties ("EB Escrow Agreement") shall be reaffirmed and ratified by the applicable Post-Effective Date Debtor and continue in full force and effect and are not discharged, released, or precluded by the Plan in any way. On the Effective Date, all liens, security interests, and claims arising under or granted pursuant to or in connection with the EB Escrow Agreement shall be valid, binding, perfected, enforceable liens and security interests with the priorities established in respect thereof under applicable non-bankruptcy law and the common law of

suretyship, and shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination or similar encumbrance under any applicable law, the Plan, or this Confirmation Order. Nothing in this Confirmation Order or the Plan or otherwise shall be deemed to limit RLI Insurance Company's right to draw on any collateral held pursuant to the EB Escrow Agreement.

## H.   RLI Objects to Any Improper or Overbroad Releases

37.     The Fifth Circuit has expressly held that section 524(e) prohibits non-debtor discharges or non-consensual third-party releases under a plan. *See Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 761 (5th Cir. 1995) ("[B]ecause the permanent injunction as entered improperly discharged a potential debt of CIGNA, a nondebtor, the bankruptcy court exceeded its powers under § 105."); *see also Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.),* 522 F.3d 575, 590 (5th Cir. 2008) (holding that section 524(e) prohibits non-debtor discharges and finding that a plan may not release third-party claims against a non-debtor).

38.     Courts in the Fifth Circuit have consistently stricken provisions that extend non-consensual releases to parties other than debtors, reorganized debtors, statutory committees, statutory committee members, and statutory committee professionals. *See In re Pac. Lumber Co.,* 584 F.3d at 252-53 (striking non-debtor releases, including releases of the debtors' officers and directors, except with respect to creditors' committee and members); *Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.),* Case No. 17-1958, 2018 U.S. Dist. LEXIS 179769, at *61-69 (N.D. Tex. Oct. 19, 2018) (reversing bankruptcy court's approval of injunction and exculpation provisions that released non-debtor third parties, such as the debtor's parent company, officers, and directors").

16

39.     RLI has specifically opted-out of any consensual releases on the ballot form provided. However, in an abundance of caution, RLI hereby objects to being included as a "Releasing Party" and to any provision in the Plan that purports to release, preclude, or otherwise enjoin any rights RLI may have against any non-debtor.

## I.     RLI Objects to Any Impairment of Its Equitable Subrogation Rights

40.     To the extent that RLI is called upon to perform on any of the RLI Bonds, RLI will be equitably subrogated to all of the corresponding rights of the bond obligee. *See Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 136–37 (1962) ("there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed"); *In re Tri-Union Dev. Corp.*, 03-44908, 2015 WL 5730745, at *9 (Bankr. S.D. Tex. Sept. 28, 2015) ("Equitable subrogation applies 'in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter.'")(quoting *Frymire Eng'g Co. ex rel. Lib. Mut. Ins. Co. v. Jomar Int'l, Ltd.,* 259 S.W.3d 140, 142 (Tex. 2008)).

41.     As such, RLI objects to any releases or injunctions in the Plan that purport to limit RLI's equitable subrogation rights against any non-debtor. RLI further objects to any releases or injunctions in the Plan that would limit RLI's right to assert an administrative claim in connection with any future claim under the Bonds.

## IV.     OPT OUT OF CONSENUAL RELEASES

42.     RLI hereby opts-out and does not consent to any consensual releases in the Plan, including but not limited to those contained in Section 10.7(b).

## V.   ADOPTION OF SURETY OBJECTIONS

43.     Several other sureties that bonded certain obligations of the Debtors filed objections to the Plan as well. To the extent those objections do not conflict with the objections contained herein, RLI hereby joins and incorporates by reference all Plan objections and arguments made by the other sureties in this matter.

## VI.   RESERVATION OF RIGHTS

44.     RLI hereby expressly reserves all rights, including, without limitation, all of their rights, claims, defenses, and remedies with respect to the Debtors (or other parties) and all matters in their cases, including but not limited to RLI's rights to assert any claims, rights of setoff, or rights of recoupment under relevant agreements, applicable law, or otherwise. Nothing in this Objection is intended to be, or should be construed as, a waiver by RLI of any of its rights under the Bonds, the Indemnity Agreements, the Bankruptcy Code, or applicable law. RLI reserves the right to amend or supplement this Objection, raise new objections, and to join in the objections of other parties.

**WHEREFORE**, RLI Insurance Company respectfully requests that the Court enter an order that (i) sustains this Objection; and (ii) grants to RLI such other and further relief as this Court deems just and proper.

DATED: June 2, 2021

Respectfully submitted,

/s/ Elliot Scharfenberg
RYAN D. DRY (TX No. 24050532)
ELLIOT SCHARFENBERG (LA No. 35304) (*pro hac vice*)
JONATHAN ORD (LA No. 35274) (*pro hac vice*)
KREBS FARLEY & DRY, PLLC
400 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3570
Facsimile: (504) 299-3582
Email: rdry@krebsfarley.com
        escharfenberg@krebsfarley.com
        jord@krebsfarley.com

CHAD L. SCHEXNAYDER (AZ No. 009832)
(*pro hac vice*)
JENNINGS, HAUG & CUNNINGHAM, LLP
2800 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004
Telephone: (602) 234-7800
Facsimile: (602) 277-5595
E-mail: CLS@JHC.Law

*Counsel for RLI INSURANCE COMPANY*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June 2021, a true and correct copy of the foregoing ***Objection*** was sent via ECF Noticing to all parties registered to receive CM/ECF Notices in these chapter 11 cases.

/s/ Elliot Scharfenberg

## APPENDIX A: LIST OF BONDS

| BOND # | OBLIGEE | PRINCIPAL | AMOUNT |
|---|---|---|---|
| RLB0001509 | B P Exploration & Oil Inc. | Fieldwood SD Offshore LLC | $10,650,000.00 |
| RLB0002369 | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | $1,100,000.00 |
| RLB0002985 | B.O.E.M. | Davis Offshore, L.P. / Fieldwood Energy Offshore LLC | $300,000.00 |
| RLB0006669 | B.O.E.M. | Fieldwood Energy SP LLC | $3,000,000.00 |
| RLB0006670 | B.O.E.M. | Fieldwood Energy SP LLC | $300,000.00 |
| RLB0009112 | Noble Energy, Inc. | Fieldwood Energy Offshore LLC | $409,536.00 |
| RLB0009122 | Noble Energy, Inc. | Fieldwood Energy Offshore LLC | $155,472.00 |
| RLB0009134 | Noble Energy, Inc. | Fieldwood Energy Offshore LLC | $493,434.00 |
| RLB0009150 | Noble Energy, Inc. | Fieldwood Energy Offshore LLC | $225,624.00 |
| RLB0009156 | Noble Energy, Inc. | Fieldwood Energy Offshore LLC | $144,096.00 |
| RLB0012977 | B.O.E.M. | Fieldwood Energy Offshore LLC | $300,000.00 |
| RLB0013334 | B.O.E.M. | Fieldwood Energy Offshore LLC | $3,000,000.00 |
| RLB0013981 | XTO Offshore, Inc., HHE Energy Company, and XH, LLC | Fieldwood Energy Offshore LLC | $39,807,255.00 |
| RLB0014014 | Noble Energy, Inc. | Fieldwood Energy Offshore LLC | $454,464.00 |
| RLB0014015 | Noble Energy, Inc. | Fieldwood Energy Offshore LLC | $172,528.00 |
| RLB0014017 | Noble Energy, Inc. | Fieldwood Energy Offshore LLC | $159,904.00 |
| RLB0014055 | Apache Shelf, Inc. | Fieldwood Energy Offshore LLC | $1,500,000.00 |

| RLB0014179 | Apache Corporation | Fieldwood Energy Offshore LLC | $2,000,000.00 |
| RLB0014462 | TDC Energy LLC and Petrobras | Dynamic Offshore Resources / Fieldwood Energy Offshore LLC | $1,400,000.00 |
| RLB0015298 | B.O.E.M. | Fieldwood Energy LLC | $3,000,000.00 |
| RLB0015299 | B.O.E.M. | Fieldwood Energy LLC | $300,000.00 |
| RLB0015309 | EOG Resources, Inc. | Fieldwood Energy LLC | $160,588.00 |
| RLB0015327 | Railroad Commission of Texas | Fieldwood Energy LLC | $425,000.00 |
| RLB0015432 | Chevron U.S.A. Inc. | Fieldwood Energy LLC | $500,000.00 |
| RLB0015434 | Chevron U.S.A. Inc. | GOM Shelf LLC / Fieldwood Energy LLC | $1,550,000.00 |
| RLB0015465 | Louisiana Office Of Conservation | Fieldwood Energy LLC | $25,000.00 |
| RLB0015468 | Louisiana Office Of Conservation | Fieldwood Onshore LLC | $25,000.00 |
| RLB0015513 | B.O.E.M. | Fieldwood Energy LLC | $545,000.00 |
| RLB0015517 | B.O.E.M. | Fieldwood Energy LLC | $200,000.00 |
| RLB0015532 | B.O.E.M. | GOM Shelf, LLC | $3,000,000.00 |
| RLB0015533 | B.O.E.M. | GOM Shelf, LLC | $300,000.00 |
| RLB0015572 | Louisiana Office Of Conservation | Fieldwood Energy LLC | $250,000.00 |
| RLB0015605 | B.O.E.M. | Fieldwood Energy LLC | $448,000.00 |
| RLB0015609 | B.O.E.M. | Fieldwood Energy LLC | $1,085,000.00 |
| RLB0015626 | B.O.E.M. | FW GOM Pipeline, Inc. | $300,000.00 |

**APPENDIX B: LIST OF INDEMNITY AND SECURITY AGREEMENTS**

1. 2018 Application for Miscellaneous Surety & Indemnity Agreement for principal Fieldwood Energy, LLC, with additional corporate indemnitor Fieldwood Energy, Inc., with attachments;

2. 2013 Application for Miscellaneous Surety & Indemnity Agreement for principal Fieldwood Energy, LLC, with attachments;

3. 2009 Application for Miscellaneous Surety & Indemnity Agreement for principal Dynamic Offshore Resources, LLC, a predecessor in interest to Fieldwood Energy Offshore, LLC, with attachments;

4. 2006 Application for Miscellaneous Surety & Indemnity Agreement for principal SandRidge Energy Offshore, Inc. with 2013 amendment adding SandRidge Energy Offshore, LLC, a predecessor in interest to Fieldwood Energy Offshore, LLC, with attachments;

5. 2003 Application for Miscellaneous Surety & Indemnity Agreement for principal SPN Resources LLC, a predecessor in interest to Fieldwood Energy SP, LLC, with attachments;

6. 2003 Application for Miscellaneous Surety & Indemnity Agreements for principal Panaco, Inc., a predecessor in interest to Fieldwood SD Offshore, LLC, with attachments and other related historic indemnity agreements;

7. 1999 Escrow and Security Agreement between RLI Insurance Company and Panaco, Inc., a predecessor in interest to Fieldwood SD Offshore, Inc., with attachments.