IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | § Chapter 11 |
| FIELDWOOD ENERGY LLC, et al., | § Case No. 20-33948 (MI) |
| Debtors. | § (Jointly Administered) |

30(b)(6) ORAL DEPOSITION OF
DEBTOR FIELDWOOD ENERGY, LLC
MR. MICHAEL T. DANE
May 13, 2021

30(b)(6) ORAL DEPOSITION OF DEBTOR FIELDWOOD ENERGY, LLC, MR. MICHAEL T. DANE, produced as a witness at the instance of the Sureties and Parties-in-interest, and duly sworn, was taken in the above-styled and numbered cause on the 13th day of May, 2021, from 9:37 a.m. to 6:43 p.m., before Michelle Hartman, Certified Shorthand Reporter in and for the State of Texas and Registered Professional Reporter, reported by computerized stenotype machine via Zoom videoconference, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.



Ex. A

```
                                                          Page 2
 1                       APPEARANCES
 2    FOR THE DEBTOR FIELDWOOD AND THE WITNESS MICHAEL DANE:
 3        Mr. Alfredo R. Pérez
          WEIL, GOTSHAL & MANGES LLP
 4        700 Louisiana
          Suite 1700
 5        Houston, Texas 77002
          Telephone: 713-546-5040
 6        E-mail: alfredo.perez@weil.com
      and
 7        Ms. Erin Choi
          Mr. Paul Genender
 8        Mr. Kevin Simmons
      and Ms. Jessica Liou (New York Office)
 9        WEIL, GOTSHAL & MANGES LLP
          200 Crescent Court, Suite 300
10        Dallas, TX 75201
          Telephone:  214 746 8184
11        E-mail:  erin.choi@weil.com
12    FOR THE SURITIES EVEREST, ASPEN, BERKLEY, AND SIRIUS:
13        Mr. Darren Grzyb
          CHIESA, SHAHINIAN & GIANTOMASI PC
14        One Boland Drive
          West Orange, New Jersey 07052
15        Telephone: 973-530-2077
          E-mail: dgrzyb@csglaw.com
16
      FOR THE INTERESTED PARTY HCCI:
17
          Mr. Brad C. Knapp
18    and Mr. Philip Eisenberg
          LOCKE LORD
19        601 Poydras Street
          Suite 2660
20        New Orleans, Louisiana 70130
          Telephone: 504-558-5210
21        E-mail: bknapp@lockelord.com
22    FOR THE INTERESTED PARTY APACHE CORPORATION:
23        Ms. Robin Russell
          HUNTON ANDREWS KURTH
24        600 Travis Street
          Houston, Texas 77002
25        Telephone: 713-220-4086
          E-mail: rrussell@huntonak.com
          E-mail: rrussell@huntonak.com
```



```
                                                           Page 3
 1                  APPEARANCES (Continued)
 2   FOR THE SURETY GROUPS:
 3        Ms. Lily W. Cheung
          NETHERLAND, SEWELL & ASSOCIATES, INC.
 4        Fulbright Tower, Suite 3200
          1301 McKinney Street
 5        Houston, Texas 77010
          Telephone: 713-654-4950
 6        E-mail: lcheung@nsai-petro.com
 7   FOR THE INSURERS LIBERTY MUTUAL INSURANCE COMPANY,
     TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, THE
 8   HANOVER INSURANCE COMPANY, AND XL SPECIALTY INSURANCE
     COMPANY:
 9
          Mr. Brandon Bains
10        LANGLEY ATTORNEYS & COUNSELORS
          PO Box 94075
11        Southlake, Texas 76092
          Telephone: 214-722-7171
12        E-mail: bbains@l-llp.com
13   FOR THE INSURER PHILADELPHIA INDEMNITY INSURANCE
     COMPANY:
14
          Mr. Robert W. Miller
15        MANIER & HEROD
          1201 Demonbreun Street,
16        Suite 900
          Nashville, Tennessee 37203
17        Telephone:  615-742-9320
          E-mail: rmiller@manierherod.com
18
     FOR THE INTERESTED PARTY CHEVRON USA, INC. & NOBLE
19   ENERGY, INC.:
20        Ms. Lisa M. Norman
          ANDREWS MYERS
21        1885 Saint James Palace
          Suite 1500
22        Houston, Texas 77056
          Telephone: 713-850-4245
23        E-mail: lnorman@andrewsmyers.com
24
25
```



```
                                                              Page 4
 1                    APPEARANCES (Continued)
 2     FOR THE INTERESTED PARTY BP PLC:
 3         Mr. Craig Duewall
   and   Ms. Shari Heyen
 4         Ms. Nicole Bakare
           Mr. Jared Weir
 5         GREENBERG TRAURIG
           1000 Louisiana Street
 6         Suite 1700
           Houston, Texas 77002
 7         Telephone:  713.374.3608
           E-mail: duewall@gt.com
 8
       FOR THE INTERESTED PARTY GOLDMAN SACHS AS FIRST LIEN
 9     OUT AGENT:
10         Mr. Bradley Foxman
           VINSON & ELKINS
11         Trammell Crow Center
           2001 Ross Avenue
12         Suite 3900
           Dallas, Texas 75201
13         Telephone: 214-220-7784
           E-mail: bfoxman@velaw.com
14
       FOR THE INSURER ZURICH AMERICAN:
15
           Mr. Stephen A. Roberts
16         CLARK HILL
           720 Brazos Street
17         Suite 700
           Austin, Texas
18         Telephone: 512-499-3624
           E-mail: sroberts@ClarkHill.com
19
       FOR THE US DEPARTMENT OF JUSTICE:
20
           Mr. Serajul Ali
21         U.S. DEPARTMENT OF JUSTICE
           P.O. Box 875 - Ben Franklin Station
22         Washington, D.C. 20044
           Telephone: 202-307-0488
23         E-mail: serajul.ali@usdoj.gov
24
25
```



```
 1                APPEARANCES (Continued)
 2   FOR THE INSURED LEXON INSURANCE COMPANY:
 3        Mr. Lee E. Woodard
          HARRIS BEACH PLLC
 4        333 West Washington Street
          Syracuse, New York 13202
 5        Telephone: 315-423-7100
          E-mail: lwoodard@harrisbeach.com
 6
     FOR THE OFFICIAL CREDITORS:
 7
          Mr. Kenneth Pasquale
 8        STROOCK & STROOCK & LAVAN LLP
          180 Maiden Lane
 9        New York, New York 10038
          Telephone: 212-806-5562
10        E-mail: kpasquale@stroock.com
11   FOR THE INTERESTED PARTY ATLANTIC MARITIME SERVICES,
     LLC:
12
          Mr. Benjamin W. Kadden
13        LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
          601 Poydras Street
14        Suite 2775
          New Orleans, Louisiana 70130
15        Telephone: 504-568-1990
          E-mail: bkadden@lawla.com
16
     CO-COUNSEL TO THE COMMITTEE:
17
          Mr. Michael D. Warner
18        PACHULSKI, STANG, ZIEHL & JONES
          440 Louisiana
19        Suite 900
          Houston, Texas 77002
20        Telephone: 817-832-5566
          E-mail: mwarner@pszjlaw.com
21
     FOR THE AD HOC GROUP OF FIELDWOOD FIRST LIEN LENDERS:
22
          Mr. Andy T. Parrott
23        DAVIS POLK & WARDWELL LLP
          901 15th Street, N.W.
24        Washington DC, District of Columbia  20005
          Telephone: 202-962-9147
25        E-mail: andy.parrot@davispollk.com
```



```
 1                APPEARANCES (Continued)
 2   FOR THE INSURER RLI INSURANCE COMPANY:
 3        Mr. Elliot Scharfenberg
          KREBS FARLEY & DRY
 4        909 18th Street
          Plano, Texas 75074
 5        Telephone: 972-737-2517
          E-mail: escharfenberg@krebsfarley.com
 6
     FOR LEXON INSURANCE COMPANY:
 7
          Mr. Lee E. Woodard
 8        HARRIS BEACH PLLC
          333 West Washington Street
 9        Syracuse, New York 13202
          Telephone: 315-423-7100
10        E-mail: lwoodard@harrisbeach.com
11   FOR THE INSURER NORTH AMERICAN SPECIALTY INSURANCE COMPANY:
12        Mr. T. Scott Leo
          THE LAW OFFICES OF T. SCOTT LEO, P.C.
13        100 N. LaSalle Street, Suite 514
          Chicago, Illinois 60602
14        Telephone: 312-857-0910
          E-mail: sleo@leolawpc.com
15
16   ALSO PRESENT:
17        Mr. Anthony L. Green, corporate counsel
18
19
20
21
22
23
24
25
```



```
 1                       EXHIBITS
 2   EXHIBIT            DESCRIPTION                   PAGE
 3   Exhibit 1    Notice of Rule 30(b)(6)              24
                  Deposition of Debtor Fieldwood
 4                Energy LLC
 5   Exhibit 2    Dear John e-mail re:  Swordfish      69
                  catch up FWE-0047937
 6
     Exhibit 3    9/17/20 letter to Dane from          77
 7                (blacked out), FWE-0047938 to
                  47948
 8
     Exhibit 4    7/17/20 letter to Fieldwood          78
 9                Energy, Dear John, re:  Offer
                  to Purchase Co-Owned
10                Properties, FWE-0047949 to
                  47954
11
     Exhibit 5    Decommissioning Agreement            54
12                between Apache Corporation, et
                  al and Fieldwood Energy, et al
13                in 2013, no Bates
14   Exhibit 6    Exhibit 14, 2021 Farmout             90
                  Agreement, pages 131 to 158 of
15                469
16   Exhibit 7    Exhibit 8 to the Plan of             95
                  Reorganization and Disclosure
17                Statement, titled Standby Loan
                  Agreement, pages 978 to 1024 of
18                1032
19   Exhibit 8    Transmission Services               101
                  Agreement, Exhibit 15 to the
20                Disclosure Statement and Plan
                  of Reorganization, Document
21                Number 1285-2, pages 289 to 310
                  of 469
22
     Exhibit 9    Exhibit 6, Fieldwood Energy I       116
23                LLC Agreement, Document Number
                  1285-1, pages 910 to 964 of
24                1032
25
```



Page 8

EXHIBITS (cont.)

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 10 | Excel spreadsheet, FWE-0000002 | 176 |
| Exhibit 11 | *Attached but not mentioned, Fieldwood Energy, Inc. Estimated Future Reserves and Income Attributable to Certain Leasehold and Royalty Interests SEC Parameters as of December 31, 2020 | 10 |
| Exhibit 12 | *Attached but not mentioned - SpinCo Preliminary G & A Detail FWE-0000019 | 10 |
| Exhibit 13 | *Attached but not mentioned, Category/NewCo/Comments table, FWE-0000018 | 10 |
| Exhibit 14 | *Attached but not mentioned, Excel spreadsheet, FWE-0037606 | 10 |
| Exhibit 15 | *Attached but not mentioned, Document beginning "West Areas", FWE-0045265 to 266 | 10 |
| Exhibit 16 | *Attached but not mentioned, Excel spreadsheet FWE-0038676 Fields not returning to production | 10 |
| Exhibit 17 | *Attached but not mentioned, e-mail from Lamme to Lamb 4/29/21 re: BOEM Questions, FWE-0045280 | 10 |
| Exhibit 18 | *Attached but not mentioned, Excel spreadsheet, FWE-0045403 | 10 |
| Exhibit 19 | *Attached but not mentioned, Houlihan Lokey expert report of John-Paul Hanson, 80 pages | 10 |



Page 9

```
 1                      EXHIBITS (cont.)
 2      EXHIBIT             DESCRIPTION                  PAGE
 3
        Exhibit 20    Exhibit O Financial                 120
 4                    Projections, page 439 to 448
 5      Exhibit 21    Excel Spreadsheet FWE-0000016       134
 6      Exhibit 22    *Attached but not mentioned,         10
                      FWE Amended responses and
 7                    objections to sureties
                      discovery request
 8
        Exhibit 23    *Attached but not mentioned,         10
 9                    Exhibit B, page one of three
10      Exhibit 24    Excel Spreadsheet FWE-000008         10
11      Exhibit 25    Disclosure statement, page 1 of     10
                      99
12
        Exhibit 26    Alix Partners Liquidation           10
13                    Expert Report of Marc J. Brown,
                      April 21st, 2021
14
        Exhibit 27    Everest Indemnity Agreement         245
15
16
17
18
19
20
21
22
23
24
25
```



```
 1                            INDEX
 2                                                            PAGE
 3   MR. MICHAEL T. DANE
 4   Examination by Mr. Grzyb ..........................11
     Examination by Mr. Bains .........................183
 5   Examination by Mr. Scharfenberg ..................220
     Examination by Mr. Knapp  ........................235
 6   Examination by Mr. Miller ........................244
     Examination by Mr. Duewall .......................252
 7   Signature Page  ..................................289
     Signature Page  ..................................290
 8   Court Reporter's Certificate ....................291
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



Page 223

1          A.   I don't have that number offhand.
2          Q.   Is it a substantial amount of properties
3     that you just do helicopter flyovers?
4          A.   I don't know what "substantial" means,
5     but there are a number that we are still in the
6     process of completing repairs to so that they can be
7     physically boarded.
8          Q.   Would you say that there is over ten
9     properties or platforms that are not able to be
10    physically visited because of INCs or other issues on
11    those platforms?
12         A.   So I think your question mixes a couple
13    of different concepts.  There are probably over ten
14    properties that require additional repair and
15    maintenance to physically board the facility, in
16    which case they are monitored and maintained in other
17    ways.
18         Q.   Does Fieldwood have any cost estimate for
19    how much money it would take to bring all the
20    properties that are not physically able to be visited
21    up to compliance so that they can be physically
22    visited?
23         A.   Yes, we do.
24         Q.   What is that number?
25         A.   With respect to the abandoned properties,



Page 224

1   the amount of capital that we have earmarked on a
2   go-forward basis to perform those types of repairs as
3   of a month or so ago was around $6 million, and with
4   respect to the Fieldwood 1-related properties, that
5   is incorporated into our ongoing repair and
6   maintenance budgets, which we are currently spending,
7   in total, approximately $6 million a month on, and
8   will take us several more months in order to
9   complete -- in order to put -- put all of the
10  facilities in the condition that you described.
11       Q.   You said that $6 million were
12  earmarked -- approximately $6 million were earmarked
13  for the abandoned properties to make them safe to,
14  you know, ingress and egress.
15            Is that the amount that you estimate it
16  will cost to bring all of those lessees' leases into
17  that level of compliance or is that just what you
18  have earmarked for it?
19       A.   That is our cost estimate to restore
20  egress to the facilities and to -- and to resolve any
21  safety related INCs that are outstanding or on those
22  facilities or other safety --
23       Q.   Do you know how much money has been --
24  oh, I'm sorry, please continue.
25       A.   I was going to say -- or any other



Page 235

1  questions I have.  Thank you, sir.
2              THE WITNESS:  Thank you.
3              MR. PÉREZ:  Who's next?
4              MR. MILLER:  Brad, do you want me to go
5  next or do you want to go next?
6              MR. KNAPP:  Let me go, if you don't mind.
7              MR. MILLER:  That's fine.
8                       EXAMINATION
9         Q.  (BY MR. KNAPP) Mr. Dane, my name is Brad
10  Knapp.  I'm with Locke Lord, and I represent HCCI.
11              I would like to talk about P and A plans
12  in Fieldwood I.  Are you familiar with those issues?
13         A.  Generally speaking.
14         Q.  All right.  The Fieldwood I assets
15  include a number of terminated and expired leases; is
16  that correct?
17         A.  I believe so.
18         Q.  And those include also leases that have
19  been terminated or expired for over a year; is that
20  correct?
21         A.  I would have to look at our records to
22  confirm that, but I think in certain cases there
23  probably are some assets that have been terminated
24  for over a year.
25         Q.  And you also have a number of leases that



```
 1   have terminated or expired within the past year; is
 2   that correct?
 3        A.   Yes.
 4        Q.   And you understand that the applicable
 5   regulations require decommissioning of leases within
 6   a year of expiration or termination; is that correct?
 7        A.   The regulations have time frames under
 8   which decommissioning needs to be conducted and
 9   reconsulted with the regulatory agencies on an
10   ongoing basis about the timing and our ability to
11   conduct certain operations contingent on a number of
12   factors.
13        Q.   Do you have an understanding with the
14   regulatory agencies on what timing -- or, I guess:
15   Is there a timing in place that's unique to Fieldwood
16   right now that departs from the regulations?
17        A.   I don't understand your question.
18        Q.   Do you have an agreement with the
19   government that would extend the one-year shot clock
20   for conducting decommissioning on terminated or
21   expired leases?
22        A.   I already answered that question.  With
23   respect to agreements that we have with the
24   government, we waive any existing regulations.
25        Q.   Understood.  Understood.
```



```
                                              Page 241
 1   being conducted largely through our going repair and
 2   maintenance efforts, which -- which are at a very
 3   high level of activity as we speak.
 4          Q.   And has Fieldwood received INCs requiring
 5   decommissioning of assets?
 6          A.   We have received INCs in the past with
 7   respect to decommissioning.
 8          Q.   And do you know if there are pending INCs
 9   requiring decommissioning?
10          A.   Yes.
11          Q.   Has Fieldwood appealed those INCs are or
12   are they just sitting there?
13          A.   We're addressing each one as appropriate.
14          Q.   Okay.  Staying on that regulatory
15   subject:  Is Fieldwood I now a qualified operator?
16          A.   I don't believe that.
17               MR. PÉREZ:  Yeah, Fieldwood I doesn't
18   exist yet, so --
19               MR. KNAPP:  Well, then I guess the
20   answer's no.  I guess the answer's no.  Well, I guess
21   my question -- let me rephrase that.
22          Q.   (BY MR. KNAPP) Well, first of all, okay,
23   let's just take it:  Fieldwood I does not exist.
24               Have you had conversations with the
25   government about whether Fieldwood I will be a
```



MAGNA LEGAL SERVICES

Page 242

```
 1   qualified operator as of the plan effective date?
 2         A.   The government understands the plan and
 3   the various entities that are contemplated, and we
 4   are working very closely with the government on an
 5   ongoing basis to try and facilitate all the elements
 6   of the plan that are required.
 7         Q.   A quick question going to the financial
 8   projections for Fieldwood I, and to just kind of
 9   clarify the earlier testimony about what work is
10   planned going forward for the capital spend, the
11   capital spend budget in Exhibit O to the Disclosure
12   Statement contemplates only well recompletions; is
13   that correct?
14         A.   Yes.
15         Q.   Okay.  And those well recompletions are
16   based on sort of a general budget for recompletions
17   and not tied to -- there is no specific list of
18   recompletions that are planned; is that correct?
19         A.   With respect to the projections, the
20   basis for the spending on capital related to
21   Fieldwood I and the production contributions was a
22   type curve type of methodology, which was based on
23   our historic results and opportunities that related
24   to those assets.  We do have actual lists of
25   opportunities, but that's not the basis for what
```



```
                                                   Page 254
 1              Are they still with the organization?
 2         A.   They are.
 3         Q.   And is it their intent to stay also, do
 4   you know?
 5         A.   Yes.
 6         Q.   Okay.  So --
 7         A.   I believe so.
 8         Q.   Let's shift gears and talk about INCs for
 9   a minute.  We were talking about INCs with the
10   sureties.  Is it the company's intent to resolve all
11   of the INCs before the planned confirmation date?
12         A.   It is the company's objective always to
13   resolve as many INCs as they can.  Largely, that's a
14   scheduling issue more than anything.  The company is
15   not going to be able to resolve all of the INCs prior
16   to the confirmation date, which is only weeks away.
17         Q.   What about the effective date, could the
18   company resolve all the INCs before the effective
19   date?
20         A.   What INCs are you speaking of
21   specifically?
22         Q.   All of them, all of the outstanding INCs
23   before the planned confirmation -- or planned
24   effective date, is that something the company could
25   do?
```



Page 255

```
 1          A.   No.
 2          Q.   So just so we're clear on the record,
 3   before Fieldwood abandons the property, it doesn't
 4   intend to resolve all the INCs; is that correct?
 5          A.   Correct.
 6          Q.   Before Fieldwood abandons the property,
 7   is it going to make sure that all of the safety
 8   systems are in service and operational on the
 9   properties?
10          A.   The operational transition plans that
11   have been developed for each asset contain an
12   asset-by-asset plan that's specific to each property
13   that's appropriate to ensure that these properties
14   are being abandoned or safely transitioned in a
15   manner that doesn't compromise any environmental or
16   regulatory concerns, and that determination is done
17   on an asset-by-asset basis and is a part of our
18   operational transition plans and how we manage these
19   transitions.
20          Q.   During the first bankruptcy, were
21   properties abandoned?
22          A.   No.
23          Q.   So this is the first time that in a
24   leadership capacity you've had to abandon properties
25   in a bankruptcy, correct?
```

