## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

## NOTICE OF FILING OF PLAN SUPPLEMENT
## IN CONNECTION WITH FOURTH AMENDED JOINT CHAPTER 11
## PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS

**PLEASE TAKE NOTICE THAT**:

1.      Commencing on August 3, 2020, Fieldwood Energy LLC and its debtor affiliates in the above-captioned cases, as debtors and debtors in possession (collectively, the "**Debtors**"), each filed a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

2.      On April 15, 2021, the Bankruptcy Court entered the *Amended Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

and Unexpired Leases; (VI) Approving Procedures for Objections to the Assignment and Transfer of Property of the Estate; and (VII) Granting Related Relief [Docket No. 1286] (the "**Disclosure Statement Order**").

3.  On April 15, 2021, the Debtors filed the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (the "**Plan**").[2]

4.  In accordance with the Plan and Disclosure Statement Order, the Debtors hereby file this Plan Supplement consisting of the following documents:

| | |
|---|---|
| **Exhibit A** | **Amended Organizational Documents** |
| | **A1 – FWE I Organizational Documents** |
| | **A2 – FWE III Organizational Documents [To Come]** |
| | **A3 – FWE IV Organizational Documents [To Come]** |
| **Exhibit B** | **Required Disclosures Under Section 1129(a)(5) [To Come]** |
| **Exhibit C** | **Schedule of Retained Causes of Action** |
| **Exhibit D** | **Schedule of Assumed Contracts** |
| **Exhibit E** | **Plan Administrator Agreement [To Come]** |
| **Exhibit F** | **Credit Bid Purchase Agreement** |
| **Exhibit G** | **NewCo Organizational Documents [To Come]** |
| **Exhibit H** | **Apache Definitive Documents** |
| **Exhibit I** | **First Lien Exit Facility Agreement** |
| **Exhibit J** | **Second Lien Exit Facility Agreement [To Come – Second Lien Exit Term Sheet Attached]** |
| **Exhibit K** | **New Intercreditor Agreement [To Come]** |

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

| | |
|---|---|
| **Exhibit L** | **New Money Warrant Agreement**<br>**[To Come]** |
| **Exhibit M** | **GUC Warrant Agreement**<br>**[To Come]** |
| **Exhibit N** | **Additional Predecessor Agreements** |
| | **N1 – Chevron Term Sheet** |
| | **N2 – Eni Term Sheet** |
| | **N3 – Hunt Term Sheet** |
| **Exhibit O** | **Oil and Gas Lease Schedules** |
| | **O1 – Leases, Rights of Way and Rights of Use and Easement Related to Purchased Oil & Gas Lease Interests** |
| | **O2 – Leases, Rights of Way and Rights of Use and Easement Related to FWE I Oil & Gas Lease Interests** |
| | **O3 – Leases, Rights of Way and Rights of Use and Easement Related to FWE III Oil & Gas Lease Interests** |
| | **O4 – Leases, Rights of Way and Rights of Use and Easement Related to FWE IV Oil & Gas Lease Interests** |
| | **O5 – Leases, Rights of Way and Rights of Use and Easement Related to Abandoned Properties** |

5.       The documents contained in the Plan Supplement are integral to, and are considered part of, the Plan.  If the Plan is approved, the documents contained in this Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

6.       The Debtors reserve all rights to amend, modify, or supplement the Plan Supplement, and any of the documents contained therein, in accordance with the terms of the Plan. If material amendments or modifications are made to any of these documents, the Debtors will file a blackline with the Bankruptcy Court marked to reflect the same.

7.      A hearing to consider confirmation of the Plan is currently scheduled to begin on **Wednesday, June 9, 2021 at 9:00 a.m. (Prevailing Central Time)** before the Bankruptcy Court (the "**Confirmation Hearing**"). The Confirmation Hearing may be adjourned from time to time, without further notice other than by filing a notice on the Bankruptcy Court's docket indicating such adjournment and/or announcement of the adjourned date(s) at the Confirmation Hearing.

8.      As of the date hereof, the Debtors are still in the process of negotiating and finalizing certain of the documents contained in the Plan Supplement with the Ad Hoc Group of Secured Lenders, Ad Hoc Group of Prepetition SLTL Lenders, the Creditors' Committee, Apache, Chevron U.S.A. Inc. ("**Chevron**"), Eni Petroleum US LLC ("**Eni**"), and Hunt Oil Company ("**Hunt**"), and various other parties in interest.  The Debtors, Ad Hoc Group of Secured Lenders, Ad Hoc Group of Prepetition SLTL Lenders, the Creditors' Committee, Apache, Chevron, Eni, and Hunt, reserve all of their respective rights with respect to any applicable form of documents filed herewith, including any applicable consent rights in the Restructuring Support Agreement.

9.      Copies of the exhibits contained in this Plan Supplement, and all documents filed in these chapter 11 cases are available free of charge by visiting https://cases.primeclerk.com/fieldwoodenergy/.  You may also obtain copies of the pleadings by visiting the Bankruptcy Court's website at https://ecf.txsb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of Page Intentionally Left Blank]*

4

Dated: May 26, 2021
Houston, Texas

>_/s/ Alfredo R. Pérez_
>WEIL, GOTSHAL & MANGES LLP
>Alfredo R. Pérez (15776275)
>Clifford W. Carlson (24090024)
>700 Louisiana Street, Suite 1700
>Houston, Texas 77002
>Telephone:  (713) 546-5000
>Facsimile:  (713) 224-9511
>Email:  Alfredo.Perez@weil.com
>           Clifford.Carlson@weil.com
>
>-and-
>
>WEIL, GOTSHAL & MANGES LLP
>Matthew S. Barr (admitted _pro hac vice_)
>Jessica Liou (admitted _pro hac vice_)
>767 Fifth Avenue
>New York, New York 10153
>Telephone:  (212) 310-8000
>Facsimile:  (212) 310-8007
>Email: Matt.Barr@weil.com
>          Jessica.Liou@weil.com
>
>_Attorneys for Debtors_
>_and Debtors in Possession_

## Certificate of Service

I hereby certify that on May 26, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Alfredo R. Pérez

Alfredo R. Pérez

# Exhibit A

## Organizational Documents

## Exhibit A1

**FWE I Organizational Documents**

**Certificate of Formation (TX) (Fieldwood Energy I LLC)**

**Form 205**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $300**



This space reserved for office use.

### Certificate of Formation
### Limited Liability Company

## Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

FIELDWOOD ENERGY I LLC
The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

## Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete either A or B and complete C.)

☒ A. The initial registered agent is an organization (cannot be entity named above) by the name of:

CAPITOL CORPORATE SERVICES, INC.
**OR**
☐ B. The initial registered agent is an individual resident of the state whose name is set forth below:

| | | | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

C. The business address of the registered agent and the registered office address is:

| | | | |
|---|---|---|---|
| 206 E. 9TH STREET, SUITE 1300 | AUSTIN | TX | 78701 |
| *Street Address* | *City* | *State* | *Zip Code* |

## Article 3—Governing Authority
(Select and complete either A or B and provide the name and address of each governing person.)

☒ A. The limited liability company will have managers. The name and address of each initial manager are set forth below.

☐ B. The limited liability company will not have managers. The company will be governed by its members, and the name and address of each initial member are set forth below.

| GOVERNING PERSON 1 |
|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) |
| **IF INDIVIDUAL** |

| | | | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

**OR**
**IF ORGANIZATION**

*Organization Name*
**ADDRESS**

| | | | | |
|---|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

Form 205                                          4

| **GOVERNING PERSON 2** | | | | | | |
|---|---|---|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | | | | |
| IF INDIVIDUAL | | | | | | |
| | | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | | *Suffix* |
| **OR** | | | | | | |
| **IF ORGANIZATION** | | | | | | |
| | | | | | | |
| *Organization Name* | | | | | | |
| **ADDRESS** | | | | | | |
| | | | | | | |
| *Street or Mailing Address* | | *City* | | *State* | *Country* | *Zip Code* |

| **GOVERNING PERSON 3** | | | | | | |
|---|---|---|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | | | | |
| IF INDIVIDUAL | | | | | | |
| | | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | | *Suffix* |
| **OR** | | | | | | |
| **IF ORGANIZATION** | | | | | | |
| | | | | | | |
| *Organization Name* | | | | | | |
| **ADDRESS** | | | | | | |
| | | | | | | |
| *Street or Mailing Address* | | *City* | | *State* | *Country* | *Zip Code* |

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

### Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

The entity is formed pursuant to a plan of merger.  The name of the merging entity is Fieldwood Energy LLC.

The address of the converting entity is  2000 W. Sam Houston Pkwy. S., Suite 1200, Houston, Texas 77042.

The merging entity was formed on 11/5/2012 under the laws of the State of Delaware, USA.

The merging entity was previously a Delaware limited liability company. The merger entity converted to a Texas limited liability company on [__]/[__]/2021.

TX060BOC - 11/27/2013 Wolters Kluwer Online

## Organizer

The name and address of the organizer:

_____
_Name_

_____
_Street or Mailing Address_                          _City_                _State_    _Zip Code_

### Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☒ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

the filing of the certificate of merger of Fieldwood Energy LLC with the Secretary of State of Texas.

### Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date: _____

_____
Signature of organizer

_____
Printed or typed name of organizer

| Print | Reset |

TX060BOC - 11/27/2013 Wolters Kluwer Online

**Fieldwood Energy I LLC Agreement**

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## FIELDWOOD ENERGY I LLC

### *(a Texas Limited Liability Company)*

### [●], 2021

**THE MEMBERSHIP INTERESTS REFERENCED IN THIS LIMITED LIABILITY COMPANY AGREEMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY APPLICABLE STATE SECURITIES LAWS. SUCH MEMBERSHIP INTERESTS MAY NOT BE SOLD, ASSIGNED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF AT ANY TIME WITHOUT EFFECTIVE REGISTRATION UNDER SUCH ACT AND LAWS OR EXEMPTION THEREFROM, AS WELL AS COMPLIANCE WITH THE OTHER SUBSTANTIAL RESTRICTIONS ON TRANSFERABILITY THAT ARE SET FORTH HEREIN.**

# TABLE OF CONTENTS

**ARTICLE I        DEFINITIONS** ...................................................................................1

    **Section 1.01    Definitions** ....................................................................................1

    **Section 1.02    Interpretation** ...........................................................................12

**ARTICLE II        ORGANIZATION** ...............................................................................12

    **Section 2.01    Formation** ..................................................................................12

    **Section 2.02    Name** ...........................................................................................13

    **Section 2.03    Principal Office** .........................................................................13

    **Section 2.04    Registered Office; Registered Agent** ......................................13

    **Section 2.05    Purposes; Powers** ......................................................................13

    **Section 2.06    Term** ...........................................................................................14

**ARTICLE III        CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS** ...........................14

    **Section 3.01    Initial Capital Contributions** ..................................................14

    **Section 3.02    Additional Capital Contributions** ...........................................15

    **Section 3.03    Maintenance of Capital Accounts** ...........................................15

    **Section 3.04    Succession Upon Transfer** ........................................................15

    **Section 3.05    Negative Capital Accounts** .......................................................15

    **Section 3.06    No Withdrawals from Capital Accounts** ..................................16

    **Section 3.07    Treatment of Loans from Members** .........................................16

    **Section 3.08    Modifications** .............................................................................16

**ARTICLE IV        MEMBERS** ........................................................................................16

    **Section 4.01    No Personal Liability** ................................................................16

    **Section 4.02    No Withdrawal** ..........................................................................16

    **Section 4.03    No Interest in Company Property** ............................................16

    **Section 4.04    Certification of Membership Interests** ...................................17

    **Section 4.05    Meetings of Members** ................................................................17

    **Section 4.06    Action Without Meeting** ..........................................................18

    **Section 4.07    Power of Members** ....................................................................19

    **Section 4.08    Similar or Competitive Activities; Business Opportunities** ...19

**ARTICLE V        ALLOCATIONS** .................................................................................19

    **Section 5.01    Allocation of Net Income and Net Loss** ..................................19

    **Section 5.02    Regulatory and Special Allocations** ........................................19

    **Section 5.03    Tax Allocations** .........................................................................20

    **Section 5.04    Allocations in Respect of Transferred Membership Interests** ...22

**ARTICLE VI    DISTRIBUTIONS** ...................................................................**22**

    **Section 6.01    General** ....................................................................**22**
    **Section 6.02    Tax Advances** .........................................................**23**
    **Section 6.03    Tax Withholding; Withholding Advances** ................**24**
    **Section 6.04    Distributions in Kind** ...............................................**25**

**ARTICLE VII    MANAGEMENT** ...................................................................**25**

    **Section 7.01    Management of the Company** ....................................**25**
    **Section 7.02    Independent Director** ...............................................**25**
    **Section 7.03    Sole Manager** ...........................................................**26**
    **Section 7.04    Service Provider** .......................................................**26**
    **Section 7.05    Actions Requiring Independent Director Consent** ....**27**
    **Section 7.06    Actions Requiring Apache Consent** ..........................**28**
    **Section 7.07    Compensation and Reimbursement of the Independent Director, the Sole Manager, the Service Provider and Credit Bid Purchaser** ....................**31**
    **Section 7.08    No Personal Liability** ................................................**31**
    **Section 7.09    Funding Capital Expenditures** ..................................**32**

**ARTICLE VIII   TRANSFER** .........................................................................**33**

    **Section 8.01    General Restrictions on Transfer** .............................**33**

**ARTICLE IX    EXCULPATION AND INDEMNIFICATION** ............................**34**

    **Section 9.01    Exculpation of Covered Persons** ..............................**34**
    **Section 9.02    Liabilities and Duties of Covered Persons** ..............**35**
    **Section 9.03    Indemnification** ........................................................**36**
    **Section 9.04    Survival** ....................................................................**38**

**ARTICLE X    ACCOUNTING; TAX MATTERS** ..........................................**38**

    **Section 10.01   Financial Statements and Other Information** ...........**38**
    **Section 10.02   Inspection Rights** .....................................................**39**
    **Section 10.03   Income Tax Status** ....................................................**40**
    **Section 10.04   Tax Matters Representative** .....................................**40**
    **Section 10.05   Tax Returns** ..............................................................**41**
    **Section 10.06   Company Funds** ........................................................**42**

**ARTICLE XI    WINDING UP AND TERMINATION** .....................................**42**

    **Section 11.01   Events Requiring Winding Up** ..................................**42**
    **Section 11.02   Effectiveness of Termination** ...................................**42**
    **Section 11.03   Liquidation** ...............................................................**43**

Section 11.04   **Certificate of Termination**................................................................44
Section 11.05   **Survival of Rights, Duties, and Obligations**................................44
Section 11.06   **Recourse for Claims**.....................................................................44


**ARTICLE XII   MISCELLANEOUS**...........................................................................44
Section 12.01   **Expenses**.........................................................................................44
Section 12.02   **Further Assurances**.......................................................................45
Section 12.03   **Confidentiality**.............................................................................45
Section 12.04   **Notices**...........................................................................................46
Section 12.05   **Headings**........................................................................................47
Section 12.06   **Severability**...................................................................................47
Section 12.07   **Entire Agreement**.........................................................................48
Section 12.08   **Successors and Assigns**.................................................................48
Section 12.09   **No Third-Party Beneficiaries**......................................................48
Section 12.10   **Amendment**...................................................................................48
Section 12.11   **Waiver**...........................................................................................48
Section 12.12   **Governing Law**.............................................................................48
Section 12.13   **Submission to Jurisdiction**...........................................................49
Section 12.14   **Waiver of Jury Trial**....................................................................49
Section 12.15   **Equitable Remedies**......................................................................49
Section 12.16   **Attorney's Fees**.............................................................................49
Section 12.17   **Remedies Cumulative**...................................................................49
Section 12.18   **Counterparts**.................................................................................50


EXHIBIT A          FORM OF TRANSITION SERVICES AGREEMENT
SCHEDULE A      MEMBERS SCHEDULE
SCHEDULE B      INDEPENDENT DIRECTOR'S COMPENSATION
SCHEDULE C      SOLE MANAGER'S COMPENSATION
SCHEDULE D      ACCOUNTING PROCEDURES FOR APACHE OFFICERS AND
                          EMPLOYEES

## LIMITED LIABILITY COMPANY AGREEMENT OF
## FIELDWOOD ENERGY I LLC

This Limited Liability Company Agreement of Fieldwood Energy I LLC, a Texas limited liability company (the "**Company**"), dated as of [●], 2021 (this "**Agreement**"), is entered into by and among the Company, the Initial Member[1] executing this Agreement as of the date hereof, and each other Person who after the date hereof becomes a Member of the Company and becomes a party to this Agreement by executing a joinder agreement in form and substance acceptable to the Company.  Capitalized terms not defined where used in this Agreement shall have the meanings assigned to such terms in ARTICLE I of this Agreement.

### RECITALS

**WHEREAS,** the Company was formed under the laws of the State of Texas by the filing of a Certificate of Formation with the Secretary of State of the State of Texas on [●], 2021 (the "**Certificate of Formation**") for the purposes set forth in Section 2.05 of this Agreement;

**WHEREAS,** pursuant to and in accordance with the Confirmation Order and the Term Sheet, respectively, and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company will own (i) the Legacy Apache Properties subject to the operational liabilities in connection therewith, including plugging and abandonment and decommissioning liabilities relating to the Legacy Apache Properties, and (ii) the equity interests of GOM Shelf;

**WHEREAS,** in accordance with the Term Sheet, [●] has been appointed to serve as the initial Independent Director of the Company in accordance with this Agreement; and

**WHEREAS,** the Initial Member wishes to enter into this Agreement to set forth the terms and conditions governing the operation and management of the Company;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I
### DEFINITIONS

**Section 1.01   Definitions.**  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in this Section 1.01:

"**Acceptance Notice**" has the meaning set forth in Section 7.09.

---

[1] NTD: Please confirm identity of Initial Member and the equity holders of the Initial Member.

"**Adjusted Capital Account Deficit**" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

(a)     crediting to such Capital Account any amount that such Member is obligated to restore or is deemed to be obligated to restore pursuant to Treasury Regulations Sections 1.704-1(b)(2)(ii)(c), 1.704-2(g)(1) and 1.704-2(i); and

(b)     debiting to such Capital Account the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6).

"**Adjusted Taxable Income**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year (or portion thereof) with respect to the Membership Interest held by such Member means the federal taxable income allocated by the Company to the Member with respect to its Membership Interest (as adjusted by any final determination in connection with any tax audit or other proceeding) for such Fiscal Year (or portion thereof); provided, that such taxable income shall be computed (i) minus any excess taxable loss of the Company for any prior period allocable to such Member with respect to its Membership Interest that were not previously taken into account for purposes of determining such Member's Adjusted Taxable Income in a prior Fiscal Year to the extent such loss would be available under the Code to offset income of the Member (or, as appropriate, the direct or indirect owners of the Member) determined as if the income and loss from the Company were the only income and loss of the Member (or, as appropriate, the direct or indirect owners of the Member) in such Fiscal Year and all prior Fiscal Years, and (ii) taking into account any special basis adjustment with respect to such Member resulting from an election by the Company under Code Section 754.

"**Affiliate**" means, with respect to any Person, any other Person who, directly or indirectly (including through one or more intermediaries), controls, is controlled by, or is under common control with, such Person.  For purposes of this definition, "control," when used with respect to any specified Person, shall mean the power, direct or indirect, to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or partnership or other ownership interests, by contract or otherwise; and the terms "controlling" and "controlled" shall have correlative meanings.  For the avoidance of doubt, neither Apache nor any of its Subsidiaries nor Credit Bid Purchaser nor any of its Subsidiaries shall constitute an Affiliate of the Company.

"**Agreement**" has the meaning set forth in the Preamble.

"**Apache**" means Apache Corporation, a Delaware corporation, and its successors or assigns.

"**Applicable Law**" means all applicable provisions of (a) constitutions, treaties, statutes, laws (including the common law), rules, regulations, decrees, ordinances, codes, proclamations, declarations, or orders of any Governmental Authority; (b) any consents or approvals of any Governmental Authority; and (c) any orders, decisions, advisory or interpretative opinions, injunctions, judgments, awards, decrees of, or agreements with, any Governmental Authority.

"**Approved Providers**" has the meaning set forth in Section 7.02(a).

"**BOC**" means the Texas Business Organizations Code, as amended and in effect at the time of this Agreement.

"**Book Depreciation**" means, with respect to any Company asset for each Fiscal Year, the Company's depreciation, amortization, or other cost recovery deductions determined for federal income tax purposes, except that if the Book Value of an asset differs from its adjusted tax basis at the beginning of such Fiscal Year, Book Depreciation shall be (a) if such difference is being eliminated by use of the remedial method under Treasury Regulations Section 1.704-3(d), the amount of book basis recovered for such period under the rules prescribed by Treasury Regulations Section 1.704-3(d)(2), or (b) if the remedial method is not used, an amount which bears the same ratio to such beginning Book Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; provided, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero and the Book Value of the asset is positive, Book Depreciation shall be determined with reference to such beginning Book Value using any permitted method selected by the Sole Manager in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g)(3).

"**Book Value**" means, with respect to any Company asset, the adjusted basis of such asset for federal income tax purposes, except as follows:

(a)     the initial Book Value of any Company asset contributed by a Member to the Company shall be the gross Fair Market Value of such Company asset as of the date of such contribution;

(b)     immediately before the distribution by the Company of any Company asset to a Member, the Book Value of such asset shall be adjusted to its gross Fair Market Value as of the date of such distribution;

(c)     the Book Value of all Company assets may, in the sole discretion of the Sole Manager, be adjusted to equal their respective gross Fair Market Values, as reasonably determined by the Sole Manager, as of the following times:

(i)     the acquisition of an additional Membership Interest in the Company by a new or existing Member in consideration for more than a *de minimis* Capital Contribution;

(ii)     the distribution by the Company to a Member of more than a *de minimis* amount of property (other than cash) as consideration for all or a part of such Member's Membership Interest in the Company; and

(iii)     the liquidation of the Company within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g);

(d)     the Book Value of each Company asset shall be increased or decreased, as the case may be, to reflect any adjustments to the adjusted tax basis of such Company asset

pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Account balances pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m); provided, that Book Values shall not be adjusted pursuant to this paragraph (d) to the extent that an adjustment pursuant to paragraph (c) above is made in conjunction with a transaction that would otherwise result in an adjustment pursuant to this paragraph (d); and

(e)    if the Book Value of a Company asset has been determined pursuant to paragraph (a) or adjusted pursuant to paragraphs (c) or (d) above, such Book Value shall thereafter be adjusted to reflect the Book Depreciation taken into account with respect to such Company asset for purposes of computing Net Income and Net Losses.

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in the State of Texas are authorized or required to close.

"**Capital Account**" has the meaning set forth in Section 3.03.

"**Capital Contribution**" means, for any Member, the total amount of cash and cash equivalents and the Book Value of any property contributed to the Company by such Member.

"**Certificate of Formation**" has the meaning set forth in the Recitals.

"**Certificate of Termination**" means a certificate to be filed upon completion of the winding up and liquidation of the Company as set forth in Section 11.04, which certificate shall be in the form required by § 11.101 of the BOC.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company**" has the meaning set forth in the Preamble.

"**Company Minimum Gain**" means "partnership minimum gain" as defined in Treasury Regulations Section 1.704-2(b)(2), substituting the term "Company" for the term "partnership" as the context requires.

"**Confidential Information**" has the meaning set forth in Section 12.03(a).

"**Confirmation Order**" means the confirmation order entered in Chapter 11 Case 20-33948, In re: Fieldwood Energy LLC, *et al*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in form and substance reasonably acceptable to Apache.

"**Continuance**" has the meaning set forth in Section 11.01.

"**Covered Person**" has the meaning set forth in Section 9.01(a).

"**Credit Bid Purchaser**" means [_____],[2] a Delaware limited liability company, and its successors and assigns.

"**Credit Bid Purchaser Documents**" means the agreements entered into between the Credit Bid Purchaser and the Company in connection with the Plan of Reorganization, including but not limited to the Farmout Agreement, Transition Services Agreement, and the Credit Bid Purchaser Contract Services Agreement, if executed.

"**Credit Bid Purchaser Contract Services Agreement**" means, in the event the Credit Bid Purchaser becomes the Service Provider under Section 7.04 of this Agreement, the Contract Services Agreement to be entered into between the Credit Bid Purchaser and the Company in the form attached to the Implementation Agreement, which, if executed, will be deemed the Service Provider Agreement hereunder.

"**Decommissioning Agreement**" means that certain Decommissioning Agreement, dated as of September 30, 2013, by and among Apache, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood and GOM Shelf, as amended by (i) the First Amendment thereto dated as of September 30, 2013, (ii) the Second Amendment thereto dated as of September 30, 2013, (iii) the Third Amendment thereto dated effective as of April 25, 2017, (iv) the Fourth Amendment thereto dated effective as of September 1, 2017, as amended by that certain Letter Agreement dated January 3, 2018, and (v) the Fifth Amendment thereto dated effective as of April 11, 2018.

"**Decommissioning Security**" means the funds available from Trust A, the letters of credit, and the bonds from time to time outstanding pursuant to the Decommissioning Agreement or documents or instruments related thereto.

"**Depletable Property**" means each separate oil and gas property as defined in Section 614 of the Code.

"**Divisive Merger Documents**" means the certificate of division, the plan of division, the certificate of merger, and other documents filed by or on behalf of Fieldwood with respect to the Company with the Texas Secretary of State related to the divisive merger pursuant to the Plan of Merger and the formation of the Company.

"**Electronic Transmission**" means any form of communication, including communication by use of or participation in one or more electronic networks or databases, not directly involving the physical transmission of paper that creates a record that may be retained, retrieved, and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

---

[2] NTD: Name to be confirmed.

"**Equity Securities**" means any and all Membership Interests of the Company and any securities of the Company convertible into, exchangeable for, or exercisable for, such Membership Interests, and warrants or other rights to acquire such Membership Interests.

"**Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the Member's Tax Amount for such Fiscal Year as estimated in good faith from time to time by the Sole Manager.  In making such estimate, the Sole Manager shall take into account amounts shown on Internal Revenue Service Form 1065 filed by the Company and similar state or local forms filed by the Company for the preceding taxable year and such other adjustments as the Sole Manager reasonably determines are necessary or appropriate to reflect the estimated operations of the Company for the Fiscal Year.

"**Excess Amount**" has the meaning set forth in Section 6.02(c).

"**Fair Market Value**" of any asset as of any date means the purchase price that a willing buyer having all relevant knowledge would pay a willing seller for such asset in an arm's length transaction, as determined in good faith by the Sole Manager on such factors as the Sole Manager, in the exercise of his or her reasonable business judgment, considers relevant.

"**Farmout Agreement**" means that certain Farmout Agreement of even date herewith by and between the Company and Credit Bid Purchaser in the form attached to the Implementation Agreement.

"**Fieldwood**" means, prior to the effectiveness of the divisive merger pursuant to the Plan of Merger, Fieldwood Energy LLC, and, from and after the effectiveness of the divisive merger pursuant to the Plan of Merger, Fieldwood Energy III, LLC, a Texas limited liability company. and its successors and assigns (excluding, for the avoidance of doubt, the Company).

"**Fiscal Year**" means the calendar year, unless the Company is required to have a taxable year other than the calendar year, in which case Fiscal Year shall be the period that conforms to its taxable year.

"**GAAP**" means generally accepted accounting principles in the United States of America in effect from time to time; provided, that, notwithstanding any term or provision contained in this Agreement, GAAP will be deemed for all purposes hereof to treat leases that would have not been considered to be indebtedness in accordance with GAAP as in effect on December 31, 2017 (whether such leases were in effect on such date or are entered into thereafter) in a manner consistent with the treatment of such leases under GAAP as in effect on December 31, 2017, notwithstanding any modification or interpretative changes thereto or implementations of any such modifications or interpretative changes that may have occurred thereafter.

"**GOM Shelf**" means GOM Shelf LLC, a Delaware limited liability company, and its successors and assigns.

"**GOM Shelf Properties**" means those assets or properties owned by GOM Shelf.

"**Governmental Authority**" means any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations, or orders of such organization or authority have the force of law), or any arbitrator, court, or tribunal of competent jurisdiction.

"**Implementation Agreement**" means the [Second Amended Apache Term Sheet Implementation Agreement].

"**Independent Director**" means, initially, [●], or such other Person as may be designated or become the Independent Director pursuant to the terms of this Agreement. The Independent Director shall constitute a "manager" (as that term is defined in the BOC) of the Company.

"**Information Notice**" has the meaning set forth in Section 7.09.

"**Initial Member**" has the meaning set forth in the term Member.

"**Legacy Apache Properties**" means the list of assets set forth on Schedule I to the Plan of Merger.

"**Legacy Apache Properties PSA**" means that Purchase and Sale Agreement, dated as of July 18, 2013, between Apache and certain of its affiliates, Fieldwood and certain of its affiliates, and GOM Shelf, as such agreement has been amended.

"**Lien**" means any mortgage, pledge, security interest, option, right of first offer, encumbrance, or other restriction or limitation of any nature whatsoever.

"**Liquidator**" has the meaning set forth in Section 11.03(a).

"**Losses**" has the meaning set forth in Section 9.03(a).

"**Member**" means (a) each Person identified on the Members Schedule as of the date hereof as a Member and who has executed this Agreement or a counterpart thereof (each, an "**Initial Member**"); and (b) each Person who is hereafter admitted as a Member in accordance with the terms of this Agreement and the BOC, in each case so long as such Person is shown on the Company's books and records as the owner of Membership Interests.  The Members shall constitute "members" (as that term is defined in the BOC) of the Company.

"**Member Nonrecourse Debt**" means "partner nonrecourse debt" as defined in Treasury Regulations Section 1.704-2(b)(4), substituting the term "Company" for the term "partnership" and the term "Member" for the term "partner" as the context requires.

"**Member Nonrecourse Debt Minimum Gain**" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if the Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Treasury Regulations Section 1.704-2(i)(3).

"**Member Nonrecourse Deduction**" means "partner nonrecourse deduction" as defined in Treasury Regulations Section 1.704-2(i), substituting the term "Member" for the term "partner" as the context requires.

"**Members Schedule**" has the meaning set forth in Section 3.01.

"**Membership Interest**" means an interest in the Company owned by a Member, including such Member's right (a) to its distributive share of Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company; (b) to its distributive share of the assets of the Company; (c) to vote on, consent to, or otherwise participate in any decision of the Members as provided in this Agreement; and (d) to any and all other benefits to which such Member may be entitled as provided in this Agreement or the BOC.  The Membership Interest of each Member shall be expressed as a percentage interest and shall be as set forth on the Members Schedule.

"**Net Income**" and "**Net Loss**" mean, for each Fiscal Year or other period specified in this Agreement, an amount equal to the Company's taxable income or taxable loss, or particular items thereof, determined in accordance with Code Section 703(a) (where, for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or taxable loss), but with the following adjustments:

(f)      any income realized by the Company that is exempt from federal income taxation, as described in Code Section 705(a)(1)(B), shall be added to such taxable income or taxable loss, notwithstanding that such income is not includable in gross income;

(g)      any expenditures of the Company described in Code Section 705(a)(2)(B), including any items treated under Treasury Regulations Section 1.704-1(b)(2)(iv)(I) as items described in Code Section 705(a)(2)(B), shall be subtracted from such taxable income or taxable loss, notwithstanding that such expenditures are not deductible for federal income tax purposes;

(h)      any gain or loss (including Simulated Gain) resulting from any disposition of Company property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of the property so disposed, notwithstanding that the adjusted tax basis of such property differs from its Book Value;

(i)      any items of depreciation, amortization, and other cost recovery deductions with respect to Company property having a Book Value that differs from its adjusted tax basis shall be computed by reference to the property's Book Value (as adjusted for Book Depreciation) in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g);

(j)      if the Book Value of any Company property is adjusted as provided in the definition of Book Value, then the amount of such adjustment shall be treated as an item of gain or loss and included in the computation of such taxable income or taxable loss;

(k)      to the extent an adjustment to the adjusted tax basis of any Company property pursuant to Code Sections 732(d), 734(b) or 743(b) is required, pursuant to Treasury Regulations Section 1.704 1(b)(2)(iv)(m), to be taken into account in determining

Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis); and

(l)        any items which are specially allocated pursuant to Section 5.02 hereof shall not be taken into account in computing Net Income or Net Loss.  The amounts of the items of Company income, gain, loss or deduction available to be specially allocated pursuant to Section 5.02 hereof shall be determined by applying rules analogous to those set forth in subparagraphs (a) through (f) above.

"**Nonrecourse Deductions**" has the meaning set forth in Treasury Regulations Section 1.704-2(b).

"**Nonrecourse Liability**" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity.

"**Plan of Merger**" means the Agreement and Plan of Merger of Fieldwood into the Company and Fieldwood Energy III LLC, dated as of [●], 2021, and adopted by Fieldwood .

"**Plan of Reorganization**" means the plan of reorganization of Fieldwood that was included in, and was confirmed by, the Confirmation Order.

"**Qualified Person**" has the meaning set forth in Section 7.02(a).

"**Quarterly Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any calendar quarter of a Fiscal Year means the excess, if any of: (a) the product of (i) a quarter (1/4) in the case of the first calendar quarter of the Fiscal Year, half (1/2) in the case of the second calendar quarter of the Fiscal Year, three-quarters (3/4) in the case of the third calendar quarter of the Fiscal Year, and one (1) in the case of the fourth calendar quarter of the Fiscal Year and (ii) the Member's Estimated Tax Amount for such Fiscal Year; over (b) all distributions previously made during such Fiscal Year to such Member.

"**Recharacterization Mortgages**" has the meaning assigned to such term in Section 6.7 of the Decommissioning Agreement.

"**Regulatory Allocations**" has the meaning set forth in Section 5.02(f).

"**Rejection Notice**" has the meaning set forth in Section 7.09.

"**Related Party Agreement**" means any agreement, arrangement, or understanding between or among the Company or any of its Affiliates, on the one hand, and the Independent Director, the Sole Manager or any member or officer of the Company or any of its Affiliates, or any Affiliate of the Independent Director, the Sole Manager or any member or officer of the

Company or any of its Affiliates; in each case, as such agreement may be amended, modified, supplemented, or restated in accordance with the terms of this Agreement.

"**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors or lenders, counsel, accountants, and other agents of such Person.

"**Restructuring Support Agreement**" means the Restructuring Support Agreement, dated as of August 4, 2020, by and among (i) Fieldwood and including the Fieldwood PSA Parties (as defined therein); (ii) the Consenting FLTL Lenders (as defined therein); (iii) the Consenting SLTL Lenders (as defined therein); and (iv) Apache.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations thereunder, which shall be in effect at the time.

"**Service Provider**" has the meaning set forth in Section 7.04(a).

"**Service Provider Agreement**" has the meaning set forth in Section 7.04(a).

"**Shortfall Amount**" has the meaning set forth in Section 6.02(b).

"**Simulated Basis**" means, with respect to each Depletable Property, the Book Value of such property.

"**Simulated Depletion**" means, with respect to each Depletable Property, a depletion allowance computed in accordance with U.S. federal income tax principles (as if the Simulated Basis of the property were its adjusted tax basis and using simulated cost depletion) and in the manner specified in Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2), provided that the Simulated Depletion with respect to a Depletable Property shall in no event exceed the Simulated Basis of such Depletable Property.

"**Simulated Gain or Loss**" means the simulated gain or loss computed with respect to a sale or other disposition of any Depletable Property pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2).

"**Sole Manager**" has the meaning set forth in Section 7.01.

"**Standby Facility**" means a secured line of credit to be provided by Apache to the Company and GOM Shelf to fund the ongoing plugging and abandonment and decommissioning of the Legacy Apache Properties and the GOM Shelf Properties, which shall become available to advance funds to the Company and for use in accordance with the Standby Facility Documentation. The Standby Facility shall be secured by a first-priority lien on all the assets of the Company (including all of the equity interests of GOM Shelf) and on all the GOM Shelf Properties, provided that such lien shall also secure the obligations of the Company to Apache under the Decommissioning Agreement.

"**Standby Facility Documentation**" means the Standby Loan Agreement, dated as of [●], 2020, by and between the Company and GOM Shelf, as borrowers, and Apache, as lender, and all of the other agreements, documents and instruments related thereto governing or setting forth terms and conditions of the Standby Facility or of the loans/borrowings made thereunder.

"**Subsidiary**" means, with respect to any Person, any other Person of which a majority of the outstanding shares or other equity interests having the power to vote for directors or comparable managers are owned, directly or indirectly, by the first Person.

"**Tax Advance**" has the meaning set forth in Section 6.02(a).

"**Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the lesser of (i) the product of (a) the Tax Rate for such Fiscal Year (but not to exceed the Tax Rate applicable to C-corporations for such Fiscal Year) and (b) the Adjusted Taxable Income of the Member for such Fiscal Year with respect to its Membership Interest or (ii) the actual amount of U.S. federal, state and local income tax (including any state or local tax imposed in lieu of an income tax) paid by such Member with respect to such Fiscal Year in respect of the taxable income allocated to the Member by the Company, after taking into account all deductions available to such Member from all sources in excess of such Member's income from other sources; *provided, however*, that if at any time Fieldwood Energy Inc. has a cash tax liability (including an estimated tax liability) on account of items of income or gain of the Company without sufficient cash on hand from a corresponding cash distribution in respect of such income or gain (all as reasonably determined by Fieldwood Energy Inc.), then the Tax Amount shall be increased such that the Company timely distributes cash sufficient to pay such tax liability.

"**Tax Matters Representative**" has the meaning set forth in Section 10.04(a).

"**Tax Rate**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any period, means the highest effective marginal combined federal, state, and local tax rate applicable to an individual residing in Houston, Texas (or, if higher, a corporation doing business in Houston, Texas), taking into account (a) the character (for example, long-term or short-term capital gain, ordinary, or exempt) of the applicable income and (b) if applicable, the deduction under IRC Section 199A.

"**Taxing Authority**" has the meaning set forth in Section 6.03(b).

"**Term Sheet**" means that certain term sheet, dated July 31, 2020, among Fieldwood and certain of its Affiliates, on the one hand, and Apache and certain of its Affiliates, on the other hand.

"**Transfer**" means to, directly or indirectly, sell, transfer, assign, gift, pledge, encumber, hypothecate, or similarly dispose of, either voluntarily or involuntarily, by operation of law or otherwise, or to enter into any contract, option, or other arrangement or understanding with respect to the sale, transfer, assignment, gift, pledge, encumbrance, hypothecation, or similar disposition of, any Membership Interests owned by a Person or any interest (including a beneficial interest) in any Membership Interests owned by a Person.  "**Transfer**" when used as a noun shall have a

correlative meaning. "**Transferor**" and "**Transferee**" mean a Person who makes or receives a Transfer, respectively.

"**Transition Services Agreement**" means the transition services agreement in form and substance attached to the Implementation Agreement and attached hereto as Exhibit A.

"**Treasury Regulations**" means the final or temporary regulations issued by the United States Department of Treasury pursuant to its authority under the Code, and any successor regulations.

"**Trust A**" means the Fieldwood Decommissioning Trust A, a Delaware statutory trust.

"**Withholding Advances**" has the meaning set forth in Section 6.03(b).

**Section 1.02  Interpretation.**  For purposes of this Agreement: (a) the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole.

The definitions given for any defined terms in this Agreement shall apply equally to both the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms.

Unless the context otherwise requires, references herein: (x) to Articles, Sections, Exhibits, and Schedules mean the Articles and Sections of, and Exhibits and Schedules attached to, this Agreement; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder.

This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

The Exhibits and Schedules referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

<div align="center">

**ARTICLE II**
**ORGANIZATION**

</div>

**Section 2.01  Formation**.

(a)     The Company was formed on [●], 2021, pursuant to the provisions of the BOC, upon the filing, or constructive filing with the Divisive Merger Documents, of the Certificate of Formation with the Secretary of State of the State of Texas.

(b)     This Agreement shall constitute the "company agreement" (as that term is used in the BOC) of the Company.  The rights, powers, duties, obligations, and liabilities of the Members, the Sole Manager and the Independent Director shall be determined pursuant to the BOC and this Agreement.  To the extent that the rights, powers, duties, obligations, and liabilities of any Member, the Sole Manager or the Independent Director are different by reason of any provision of this Agreement than they would be under the BOC in the absence of such provision, this Agreement shall, to the extent permitted by the BOC, control.

**Section 2.02   Name.**  The name of the Company is "Fieldwood Energy I LLC" or such other name or names as may be designated by the Sole Manager; provided, that the name shall always contain the words "Limited Liability Company" or "Limited Company" or an abbreviation of one of those phrases.  Amendments to the Certificate of Formation or this Agreement to reflect any such name change may be made by the Sole Manager without the consent of the Members. The Sole Manager shall give prompt notice to the Members of any change to the name of the Company and any related amendment to the Certificate of Formation or this Agreement.  The Company may conduct business under any assumed or fictitious name required by Applicable Law or otherwise deemed desirable by the Sole Manager.

**Section 2.03   Principal Office.**  The principal office of the Company is located at [●], or such other place as may from time to time be determined by the Sole Manager.  The Sole Manager shall give prompt notice of any such change to each of the Members and Apache.

**Section 2.04   Registered Office; Registered Agent.**

(a)     The registered office of the Company shall be the office of the initial registered agent named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

(b)     The registered agent for service of process on the Company in the State of Texas shall be the initial registered agent named in the Certificate of Formation or such other Person or Persons as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

**Section 2.05   Purposes; Powers.**

(a)     The purposes of the Company are to engage in the acquisition, disposition, ownership, operation, plugging and abandonment, and decommissioning of the Legacy Apache Properties and to cause GOM Shelf to engage in the acquisition, disposition, ownership, operation, plugging and abandonment, and decommissioning of the GOM Shelf Properties, and to engage in any and all activities necessary or incidental to the foregoing purposes.

(b)     At the date of this Agreement, the Company has no assets other than (i) the Legacy Apache Properties, including any accounts receivable associated with the Legacy Apache Properties accruing after the effective date of the Plan of Reorganization and any cash flow generated from the Legacy Apache Properties after the effective date of the Plan of Reorganization (such cash flow shall be reinvested and used to fund operating expenditures, to fund plugging and abandonment and decommissioning activities associated with the Legacy Apache Properties and the GOM Shelf Properties, to fund capital expenditures on the Legacy Apache Properties approved and authorized in accordance with this Agreement, and to repay amounts outstanding, if any, under the Standby Facility); (ii) 100% of the limited liability company interests or other equity interests in GOM Shelf; and (iii) the initial capitalization provided by Fieldwood pursuant to the divisive merger in an amount equal to $50 million *minus* the actual plugging and abandonment and decommissioning expenses incurred by Fieldwood between the date of its bankruptcy petition filing on August 3, 2020, and the effective date of the Plan of Reorganization.

(c)     At the date of this Agreement, the Company has no liabilities other than (i) operational liabilities accruing after the effective date of the Plan of Reorganization (including any accounts payable associated with the Legacy Apache Properties accruing after the effective date of the Plan of Reorganization), (ii) plugging and abandonment and decommissioning liabilities and obligations (A) relating to the Legacy Apache Properties and (B) of GOM Shelf relating to the GOM Shelf Properties, (iii) obligations under the Decommissioning Agreement and the Legacy Apache Properties PSA, and (iv) obligations under the Standby Facility Documentation.

(d)     The Company shall have all the powers necessary or convenient to carry out the purposes for which it is formed, including the powers granted by the BOC.

**Section 2.06   Term.**  The term of the Company commenced on the date the Certificate of Formation was filed with the Secretary of State of the State of Texas and shall continue in existence perpetually until the Company is terminated in accordance with the provisions of this Agreement.

### ARTICLE III
### CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS

**Section 3.01   Initial Capital Contributions.**  Contemporaneously with the execution of this Agreement, and pursuant to the Plan of Reorganization and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company shall have the property and assets identified in clauses (i) through (iii) in Section 2.05(b), which shall constitute the aggregate Capital Contributions made by the Initial Member.  The Initial Member shall own Membership Interests in the amount set forth opposite such Member's name on Schedule A attached hereto (the "**Members Schedule**").  From and after the date of this Agreement, the Sole Manager shall maintain and update the Members Schedule upon the issuance or Transfer of any Membership Interests to any new or existing Member in accordance with this Agreement.

Section 3.02  **Additional Capital Contributions.**  No Member shall be required to make any additional Capital Contributions to the Company.  Any future Capital Contributions made by any Member shall only be made with the consent of the Sole Manager and, in connection with an issuance of additional Membership Interests, made in compliance with Section 7.06(e).  To the extent that a Member makes an additional Capital Contribution to the Company, the Sole Manager shall revise the Members Schedule to reflect an increase in the Membership Interest of the contributing Member that fairly and equitably reflects the value of its additional Capital Contribution in relation to the aggregate amount of all Capital Contributions made by the Members.

Section 3.03  **Maintenance of Capital Accounts.**  The Company shall establish and maintain for each Member a separate capital account (a "**Capital Account**") on its books and records in accordance with this Section 3.03.  Each Capital Account shall be established and maintained in accordance with the following provisions:

(a)  Each Member's Capital Account shall be increased by the amount of:

(i)  such Member's Capital Contributions, including such Member's initial Capital Contribution and any additional Capital Contributions;

(ii)  any Net Income or other item of income or gain allocated to such Member pursuant to ARTICLE V; and

(iii)  any liabilities of the Company that are assumed by such Member or secured by any property distributed to such Member.

(b)  Each Member's Capital Account shall be decreased by:

(i)  the cash amount or Book Value of any property distributed to such Member pursuant to ARTICLE VI and Section 11.03(d);

(ii)  the amount of any Net Loss or other item of loss or deduction allocated to such Member pursuant to ARTICLE V; and

(iii)  the amount of any liabilities of such Member assumed by the Company or that are secured by any property contributed by such Member to the Company.

Section 3.04  **Succession Upon Transfer.**  In the event that any Membership Interests are Transferred in accordance with the terms of this Agreement, the Transferee shall succeed to the Capital Account of the Transferor to the extent it relates to the Transferred Membership Interests and, subject to Section 5.04, shall receive allocations and distributions pursuant to ARTICLE V, ARTICLE VI, and ARTICLE XI in respect of such Membership Interests.

Section 3.05  **Negative Capital Accounts.**  In the event that any Member shall have a deficit balance in its Capital Account, such Member shall have no obligation, during the term of the Company or upon termination or liquidation thereof, to restore such negative balance or make

any Capital Contributions to the Company by reason thereof, except as may be required by Applicable Law or in respect of any negative balance resulting from a withdrawal of capital or termination in contravention of this Agreement.

**Section 3.06   No Withdrawals from Capital Accounts.**  No Member shall be entitled to withdraw any part of its Capital Account or to receive any distribution from the Company, except as otherwise provided in this Agreement.  No Member shall receive any interest, salary, or drawing with respect to its Capital Contributions or its Capital Account, except as otherwise provided in this Agreement.  The Capital Accounts are maintained for the sole purpose of allocating items of income, gain, loss, and deduction among the Members and shall have no effect on the amount of any distributions to any Members, in liquidation or otherwise.

**Section 3.07   Treatment of Loans from Members.**  Loans by any Member to the Company shall not be considered Capital Contributions and shall not affect the maintenance of such Member's Capital Account, other than to the extent provided in Section 3.03(a)(iii), if applicable.

**Section 3.08   Modifications.**  The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations Section 1.704-1(b) and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  If the Sole Manager determines that it is prudent to modify the manner in which the Capital Accounts, or any increases or decreases to the Capital Accounts, are computed in order to comply with such Treasury Regulations, the Sole Manager may authorize such modifications without the consent of any Member.

## ARTICLE IV
## MEMBERS

**Section 4.01   No Personal Liability.**  Except as otherwise provided in the BOC, by Applicable Law, or expressly in this Agreement, no Member will be obligated personally for any debt, obligation, or liability of the Company or other Members, whether arising in contract, tort, or otherwise, including a debt, obligation, or liability under a judgment, decree, or order of a court, solely by reason of being a Member.

**Section 4.02   No Withdrawal.**  So long as a Member continues to hold a Membership Interest, such Member shall not have the ability to withdraw or resign as a Member prior to the winding up and termination of the Company and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to the winding up and termination of the Company shall be null and void.  As soon as any Person who is a Member ceases to hold a Membership Interest, such Person shall no longer be a Member.

**Section 4.03   No Interest in Company Property.**  No real or personal property of the Company shall be deemed to be owned by any Member individually, but shall be owned by, and title shall be vested solely in, the Company.  Without limiting the foregoing, each Member hereby irrevocably waives during the term of the Company any right that such Member may have to maintain any action for partition with respect to the property of the Company.

**Section 4.04   Certification of Membership Interests.**

(a)     The Sole Manager may, but shall not be required to, issue certificates to the Members representing the Membership Interests held by such Member.

(b)     In the event that the Sole Manager shall issue certificates representing Membership Interests in accordance with Section 4.04(a), then in addition to any other legend required by Applicable Law, all certificates representing issued and outstanding Membership Interests shall bear a legend substantially in the following form:

> THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO A LIMITED LIABILITY COMPANY AGREEMENT AMONG THE COMPANY AND ITS MEMBERS, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL EXECUTIVE OFFICE OF THE COMPANY.  NO TRANSFER, SALE, ASSIGNMENT, GIFT, PLEDGE, HYPOTHECATION, ENCUMBRANCE, OR OTHER DISPOSITION OF THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE MAY BE MADE EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF SUCH COMPANY AGREEMENT.

> THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS AND MAY NOT BE TRANSFERRED, SOLD, ASSIGNED, GIFTED, PLEDGED, HYPOTHECATED, OR OTHERWISE DISPOSED EXCEPT PURSUANT TO (A) A REGISTRATION STATEMENT EFFECTIVE UNDER SUCH ACT AND LAWS, OR (B) AN EXEMPTION FROM REGISTRATION THEREUNDER.

**Section 4.05   Meetings of Members.**

(a)     Meetings of the Members may be called by (i) the Sole Manager or (ii) a Member or group of Members holding a majority of the Membership Interests.

(b)     Written notice stating the place, date, and time of the meeting and, in the case of a meeting of the Members not regularly scheduled, describing the purposes for which the meeting is called, shall be delivered not fewer than ten days and not more than 60 days before the date of the meeting to each Member, by or at the direction of the Sole Manager or the Member(s) calling the meeting, as the case may be.  The Members may hold meetings at the Company's principal office or at such other place, within or outside the State of Texas, as the Sole Manager or the Member(s) calling the meeting may designate in the notice for such meeting.

(c)     Any Member may participate in a meeting of the Members by means of conference telephone or other communications equipment by means of which all Persons

participating in the meeting can talk to and hear each other, and participation in a meeting by such means shall constitute presence in person at such meeting.

(d)      On any matter that is to be voted on by Members, a Member may vote in person or by proxy, and such proxy may be granted in writing, by means of Electronic Transmission or as otherwise permitted by Applicable Law.   Every proxy shall be revocable in the discretion of the Member executing it unless otherwise provided in such proxy; provided, that such right to revocation shall not invalidate or otherwise affect actions taken under such proxy prior to such revocation.  In lieu of a proxy, a Member may grant an irrevocable power of attorney to conduct the affairs of such Member with respect to matters of the Company, including matters relating to the organization, internal affairs, or termination of the Company.

(e)      The business to be conducted at such meeting need not be limited to the purpose described in the notice and can include business to be conducted by Members; provided, that the appropriate Members shall have been notified of the meeting in accordance with Section 4.05(b).  Attendance of a Member at any meeting shall constitute a waiver of notice of such meeting, except where a Member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(f)      A quorum of any meeting of the Members shall require the presence, whether in person or by proxy, of the Members holding a majority of the Membership Interests.  Subject to Section 4.06, no action may be taken by the Members unless the appropriate quorum is present at a meeting.

(g)      Subject to Section 4.06, Section 7.05, Section 7.06, Section 12.10 or any provision of this Agreement or the BOC requiring the vote, consent, or approval of a different percentage of the Membership Interests, no action may be taken by the Members at any meeting at which a quorum is present without the affirmative vote of the Members holding a majority of the outstanding Membership Interests.

**Section 4.06   Action Without Meeting.**

(a)      Notwithstanding the provisions of Section 4.05, any matter that is to be voted on, consented to, or approved by the Members may be taken without a meeting, without prior notice, and without a vote if consented to, in writing or by Electronic Transmission, by a Member or Members holding not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which each Member entitled to vote on the action is present and votes.  A record shall be maintained by the Sole Manager of each such action taken by written consent of a Member or Members.

(b)      A Member's consent may not be established by a Member's failure to object to an action in a timely manner or by any other means not explicitly provided for in this Agreement.

(c)      If any action or decision permitted by this Agreement to be taken or made by less than all of the Members is taken or made by a written consent signed by less than all of the Members, the Sole Manager shall, within ten calendar days after such action is taken or such decision is made, give written notice of the action taken or the decision made to the Members who did not sign the written consent.

**Section 4.07   Power of Members.**   The Members shall have the power to exercise any and all rights or powers granted to Members pursuant to the express terms of this Agreement and the BOC.   Except as otherwise specifically provided by this Agreement or required by the BOC, no Member, in its capacity as a Member, shall have the power to act for or on behalf of, or to bind, the Company, other than to the extent that the Company has granted a power of attorney to such Member to bind the Company on such actions.

**Section 4.08   Similar or Competitive Activities; Business Opportunities.**   Nothing contained in this Agreement shall prevent any Member or any of its Affiliates from engaging in any other activities or businesses, regardless of whether those activities or businesses are similar to or competitive with the Company.   None of the Members nor any of their Affiliates shall be obligated to account to the Company or to the other Members for any profits or income earned or derived from such other activities or businesses.   None of the Members nor any of their Affiliates shall be obligated to inform the Company or the other Members of a business opportunity of any type or description.

## ARTICLE V
## ALLOCATIONS

**Section 5.01   Allocation of Net Income and Net Loss.**   For each Fiscal Year (or portion thereof), after giving effect to the special allocations set forth in Section 5.02, Net Income and Net Loss of the Company shall be allocated among the Members pro rata in accordance with their Membership Interests.

**Section 5.02   Regulatory and Special Allocations.**   Notwithstanding the provisions of Section 5.01:

(a)      If there is a net decrease in Company Minimum Gain (determined according to Treasury Regulations Section 1.704-2(d)(1)) during any Fiscal Year, each Member shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2(g). The items to be so allocated shall be determined in accordance with Treasury Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2).   This Section 5.02(a) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)      Member Nonrecourse Deductions shall be allocated in the manner required by Treasury Regulations Section 1.704-2(i).   Except as otherwise provided in Treasury Regulations Section 1.704-2(i)(4), if there is a net decrease in Member Nonrecourse Debt Minimum Gain during any Fiscal Year, each Member that has a share of such Member

Nonrecourse Debt Minimum Gain shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to that Member's share of the net decrease in Member Nonrecourse Debt Minimum Gain.  Items to be allocated pursuant to this paragraph shall be determined in accordance with Treasury Regulations Sections 1.704-2(i)(4) and 1.704-2(j)(2).  This Section 5.02(b) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)     Nonrecourse Deductions shall be allocated to the Members in accordance with their Membership Interests.

(d)     In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), Net Income shall be specially allocated to such Member in an amount and manner sufficient to eliminate the Adjusted Capital Account Deficit created by such adjustments, allocations, or distributions as quickly as possible.  This Section 5.02(d) is intended to comply with the "qualified income offset" requirement in Treasury Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(e)     Simulated Depletion and Simulated Loss with respect to any Depletable Property shall be allocated among the Members in proportion to their shares of the Simulated Basis in such property.  Each Member's share of the Simulated Basis in each of the Company's Depletable Properties shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such Depletable Property is acquired by the Company, and shall be reallocated among the Members in accordance with the Members' Membership Interest as determined immediately following the occurrence of an event giving rise to any adjustment to the Book Values of the Company's oil and gas properties pursuant to the terms of this Agreement (or at the time of any material additions to the federal income tax basis of such Depletable Property).

(f)     The allocations set forth in subsections Section 5.02(a), Section 5.02(b), Section 5.02(c), Section 5.02(d) and Section 5.02(e) above (the "**Regulatory Allocations**") are intended to comply with certain requirements of the Treasury Regulations under Code Section 704.  Notwithstanding any other provisions of this ARTICLE V (other than the Regulatory Allocations), the Regulatory Allocations shall be taken into account in allocating Net Income and Net Losses among Members so that, to the extent possible, the net amount of such allocations of Net Income and Net Losses and other items and the Regulatory Allocations to each Member shall be equal to the net amount that would have been allocated to such Member if the Regulatory Allocations had not occurred.

**Section 5.03   Tax Allocations.**

(a)     Subject to Section 5.03(b), Section 5.03(c), and Section 5.03(d), all income, gains, losses and deductions of the Company shall be allocated, for federal, state, and local income tax purposes, among the Members in accordance with the allocation of such income, gains, losses, and deductions pursuant to Section 5.01 and Section 5.02, except

that if any such allocation for tax purposes is not permitted by the Code or other Applicable Law, the Company's subsequent income, gains, losses, and deductions shall be allocated among the Members for tax purposes, to the extent permitted by the Code and other Applicable Law, so as to reflect as nearly as possible the allocation set forth in Section 5.01 and Section 5.02.

(b)      Items of Company taxable income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall be allocated among the Members in accordance with Code Section 704(c) using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager, so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its Book Value.

(c)      If the Book Value of any Company asset is adjusted pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(f) as provided in Section 1.01(c) of the definition of Book Value, subsequent allocations of items of taxable income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager.

(d)      Allocations of tax credit, tax credit recapture, and any items related thereto shall be allocated to the Members according to their interests in such items as determined by the Sole Manager taking into account the principles of Treasury Regulations Section 1.704-1(b)(4)(ii).

(e)      The deduction for depletion with respect to each separate oil and gas property (as defined in Section 614 of the Code) shall, in accordance with Section 613A(c)(7)(D) of the Code, be computed for federal income tax purposes separately by the Members rather than the Company.  The proportionate share of the adjusted tax basis of each oil and gas property shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such oil and gas property is acquired by the Company (and any additions to such U.S. federal income tax basis resulting from expenditures required to be capitalized in such basis shall be allocated among the Members in a manner designed to cause the Members' proportionate shares of such adjusted U.S. federal income tax basis to be in accordance with their Membership Interests as determined at the time of any such additions), and shall be reallocated among the Members in accordance with the Members' Membership Interests as determined immediately following the occurrence of an event giving rise to an adjustment to the Book Values of the Company's oil and gas properties.  For purposes of the separate computation of gain or loss by each Member on the taxable disposition of each oil and gas property, the amount realized from such disposition shall be allocated (i) first, to the Members in an amount equal to the Simulated Basis in such oil and gas property in proportion to their allocable shares thereof and (ii) second, any remaining amount realized shall be allocated consistent with the allocation of Simulated Gain.  The allocations described in this Section 5.03(e) are intended to be applied in accordance with the Members' "interests in

21

partnership capital" under Section 613A(c)(7)(D) or the Code; provided, however, that the Members understand and agree that the Sole Manager may authorize special allocations of federal income tax basis, income, gain, deduction or loss, as computed for U.S. federal income tax purposes, in order to eliminate differences between Simulated Basis and adjusted U.S. federal income tax basis with respect to each oil and gas property, in such manner as determined consistent with the principles outlined in Sections 5.03(b) and 5.03(c). The provisions of this Section 5.03(e) and the other provisions of this Agreement relating to allocations under Sections 613A(c)(7)(D) of the Code are intended to comply with Treasury Regulations Section 1.704-1(b)(4)(v) and shall be interpreted and applied in a manner consistent with such Treasury Regulations. Each Member, with the assistance of the Company, shall separately keep records of its share of the adjusted tax basis in each oil and gas property, adjust such share of the adjusted tax basis for any cost or percentage depletion allowable with respect to such property and use such adjusted tax basis in the computation of its cost depletion or in the computation of its gain or loss on the disposition of such property by the Company. Upon the reasonable request of the Company, each Member shall advise the Company of its adjusted tax basis in each oil and gas property and any depletion computed with respect thereto, both as computed in accordance with the provisions of this subsection for purposes of allowing the Company to make adjustments to the tax basis of its assets as a result of certain transfers of interests in the Company or distributions by the Company. The Company may rely on such information and, if it is not provided by the Member, may make such reasonable assumptions as it shall determine with respect thereto. When reasonably requested by the Members, the Company shall provide all available information needed by such Members to comply with the record keeping requirements of this Section 5.03(e) and other applicable tax reporting obligations.

(f)    Allocations pursuant to this Section 5.03 are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account or share of Net Income, Net Losses, distributions, or other items pursuant to any provisions of this Agreement.

**Section 5.04   Allocations in Respect of Transferred Membership Interests.**  In the event of a Transfer of Membership Interests during any Fiscal Year made in compliance with the provisions of ARTICLE VIII, Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company attributable to such Membership Interests for such Fiscal Year shall be determined using the interim closing of the books method.

<div align="center">

**ARTICLE VI**
**DISTRIBUTIONS**

</div>

**Section 6.01   General.**

(a)    Subject to Section 6.02, distributions of available cash shall be made to the Members when and in such amounts as determined by the Sole Manager and only following (i) payment of all operating expenses of the Company, including required payments under the Transition Services Agreement or the Service Provider Agreement, (ii) the repayment in full to Apache of any outstanding principal amounts borrowed by the

<div align="center">22</div>

Company under the Standby Facility and the payment of any accrued interest or premium thereon, in each case, pursuant to the Standby Facility Documentation, (iii) the reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates (A) in performing services on behalf of the Company in connection with the Legacy Apache Properties or the GOM Shelf Properties pursuant to a services contract between Apache or any of its Affiliates and the Company, (B) pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, and (C) pursuant to or as may be required in connection with the Decommissioning Agreement or plugging and abandonment and decommissioning of the Legacy Apache Properties or the GOM Shelf Properties, unless otherwise reimbursed in accordance with the Decommissioning Agreement, and (iv) the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties.  After making all distributions required for a given Fiscal Year under Section 6.02 and repaying/paying all amounts then due and outstanding under the Standby Facility as described in the preceding sentence, distributions determined to be made by the Sole Manager pursuant to this Section 6.01(a) shall be paid to the Members in accordance with their respective Membership Interests.

(b)     Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make any distribution to the Members (i) prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, except as provided in Section 6.02, or (ii) if such distribution would violate § 101.206 of the BOC or other Applicable Law.

**Section 6.02   Tax Advances.**

(a)     At least three days before each date prescribed by the Code for a calendar-year corporation to pay quarterly installments of estimated tax, the Company shall use commercially reasonable efforts to distribute cash to each Member in proportion to and to the extent of such Member's Quarterly Estimated Tax Amount for the applicable calendar quarter (each such distribution, a "**Tax Advance**").

(b)     If, at any time after the final Quarterly Estimated Tax Amount has been distributed pursuant to Section 6.02(a) with respect to any Fiscal Year, the aggregate Tax Advances to any Member with respect to such Fiscal Year are less than such Member's Tax Amount for such Fiscal Year (a "**Shortfall Amount**"), the Company shall use commercially reasonable efforts to distribute cash in proportion to and to the extent of each Member's Shortfall Amount.  The Company shall use commercially reasonable efforts to distribute Shortfall Amounts with respect to a Fiscal Year before the 90th day of the next succeeding Fiscal Year; provided, that if the Company has made distributions other than pursuant to this Section 6.02, the Sole Manager may apply such distributions to reduce any Shortfall Amount.

23

(c)      If the aggregate Tax Advances made to any Member pursuant to this Section 6.02 for any Fiscal Year exceed such Member's Tax Amount (an "**Excess Amount**"), such Excess Amount shall reduce subsequent Tax Advances that would be made to such Member pursuant to this Section 6.02, except to the extent taken into account as an advance pursuant to Section 6.02(d).

(d)      Any distributions made pursuant to this Section 6.02 shall be treated for purposes of this Agreement as advances on distributions pursuant to Section 6.01 and shall reduce, dollar-for-dollar, the amount otherwise distributable to such Member pursuant to Section 6.01.

**Section 6.03   Tax Withholding; Withholding Advances.**

(a)      **Tax Withholding.**  Each Member agrees to furnish the Company with any representations and forms as shall be reasonably requested by the Company to assist it in determining the extent of, and in fulfilling, any withholding obligations it may have.

(b)      **Withholding Advances.**  The Company is hereby authorized at all times to make payments ("**Withholding Advances**") with respect to each Member in amounts required to discharge any obligation of the Company, including any obligation under Section 6225 of the Code (as determined by the Tax Matters Representative) based on the advice of legal or tax counsel to the Company) to withhold or make payments to any federal, state, local or foreign taxing authority (a "**Taxing Authority**") with respect to any distribution or allocation by the Company of income or gain to such Member and to withhold the same from distributions to such Member.   Any funds withheld from a distribution by reason of this Section 6.03(b) shall nonetheless be deemed distributed to the Member in question for all purposes under this Agreement.  If the Company makes any Withholding Advance in respect of a Member hereunder that is not immediately withheld from actual distributions to the Member, then the Member shall promptly reimburse the Company for the amount of such payment, plus interest at a rate equal to the prime rate published in the Wall Street Journal on the date of payment plus two percent (2.0%) per annum, compounded annually, on such amount from the date of such payment until such amount is repaid (or deducted from a distribution) by the Member (any such payment shall not constitute a Capital Contribution).  Each Member's reimbursement obligation under this Section 6.03(b) shall continue after such Member transfers its Membership Interests.

(c)      **Indemnification.**  Each Member hereby agrees to indemnify and hold harmless the Company and the other Members from and against any liability with respect to taxes, interest, or penalties that may be asserted by reason of the Company's failure to deduct and withhold tax on amounts distributable or allocable to such Member.  The provisions of this Section 6.03(c) and the obligations of a Member pursuant to Section 6.03(b) shall survive the termination, dissolution, liquidation, and winding up of the Company and the withdrawal of such Member from the Company or Transfer of its Membership Interests.  The Company may pursue and enforce all rights and remedies it may have against each Member under this Section 6.03, including bringing a lawsuit to collect repayment with interest of any Withholding Advances.

24

(d)     **Overwithholding.**   None of the Company, the Sole Manager or the Independent Director shall be liable for any excess taxes withheld in respect of any distribution or allocation of income or gain to a Member.   In the event of an overwithholding, a Member's sole recourse shall be to apply for a refund from the appropriate Taxing Authority.

### Section 6.04   Distributions in Kind.

(a)     Subject to Sections 6.01 and 6.02, the Sole Manager is hereby authorized, as it may reasonably determine, to make distributions to the Members in the form of securities or other property (but not including any oil and gas properties) held by the Company; provided, that Tax Advances shall only be made in cash.   In any non-cash distribution, the securities or property so distributed will be distributed among the Members in the same proportion and priority as cash equal to the Fair Market Value of such securities or property would be distributed among the Members pursuant to Section 6.01.

(b)     Any distribution of securities shall be subject to such conditions and restrictions as the Sole Manager determines are required or advisable to ensure compliance with Applicable Law.   In furtherance of the foregoing, the Sole Manager may require that the Members execute and deliver such documents as the Sole Manager may deem necessary or appropriate to ensure compliance with all federal and state securities laws that apply to such distribution and any further Transfer of the distributed securities, and may appropriately legend the certificates that represent such securities to reflect any restriction on Transfer with respect to such laws.

### ARTICLE VII
### MANAGEMENT

**Section 7.01   Management of the Company.**   The business and affairs of the Company shall be managed, operated, and controlled by or under the direction of the Sole Manager ("**Sole Manager**").   Subject to the provisions of Section 7.06, the Sole Manager shall have, and is hereby granted, full and complete power, authority, and discretion for, on behalf of, and in the name of the Company, to take such actions as it may deem necessary or advisable to carry out any and all of the objectives and purposes of the Company.

**Section 7.02   Independent Director.**

(a)     The Independent Director shall (i) be a natural person who is not, nor for the prior five years has been, a director, officer, employee, trade creditor or equityholder (or spouse, parent, sibling or child of any of the foregoing) of (A) Fieldwood or any Affiliate of Fieldwood or (B) any prior or current lender of Fieldwood (a natural person satisfying such condition set forth in this clause (i), a "**Qualified Person**") and (ii) be provided by Citadel SPV, Global Securitization Services, LLC, Corporation Service Company, CT Corporation, [Lord Securities Corporation],[3] Wilmington Trust Company,

---

[3] NTD: Does this entity still exist?  They are now at Citadel SPV.  Lord does not exist.

or, if none of those companies is then in the service of providing professional independent directors, another nationally recognized company selected by Fieldwood (or, following the divisive merger of Fieldwood pursuant to § 10.008 of the BOC, Credit Bid Purchaser) subject to Apache's prior consent, which may be given or withheld in its sole discretion (such providers collectively, the "**Approved Providers**").  [●] is the Qualified Person provided by an Approved Provider that, as of the date of this Agreement, has been appointed to serve as the initial Independent Director and has also been approved to serve as the initial Independent Director for the Company in connection with the Confirmation Order entered by the Bankruptcy Court for the Southern District of Texas before which the reorganization of Fieldwood was being conducted.

(b)     The Independent Director may not be removed without Apache's prior written consent, which may be given or withheld in its sole discretion.  If the Independent Director is removed with Apache's written consent or the Independent Director resigns or otherwise ceases to serve in such capacity, then the Company (acting by majority vote of its Members) shall select another Qualified Person from the Approved Providers to serve as the Independent Director.

**Section 7.03   Sole Manager.**  The Company shall not have any officers or employees other than a Sole Manager.  In accordance with the procedure for the selection of the Sole Manager set forth in the Term Sheet, [●] has been selected and designated to serve as the initial Sole Manager.  The Sole Manager may not be removed without Apache's prior written consent, which may be given or withheld in its sole discretion.  In the event that the Sole Manager is removed with Apache's written consent or the Sole Manager resigns or otherwise ceases to serve in such capacity, then the Sole Manager shall be selected pursuant to the following procedure:  Apache and the Company (acting through the Independent Director for all purposes under this Section 7.03, who shall solicit input from Credit Bid Purchaser for all purposes under this Section 7.03) shall each provide the other with a list of three natural persons, each having a minimum of five years of relevant experience in the energy sector; and if one or more names appear on both Apache's and the Company's lists, then the Company will select, and the Member(s) shall cause the Company to select, the new Sole Manager from those common names; if, however, there are no common names between Apache's and the Company's lists, then Apache and the Company (acting through the Independent Director, who shall solicit input from Credit Bid Purchaser) shall each have the right to strike two names from the other's list, and the new Sole Manager shall be selected by the Independent Director from the remaining two names.

**Section 7.04   Service Provider.**

(a)     Subject to the Transition Services Agreement, the Sole Manager shall hire one or more third-party service provider(s) (whether one or more, collectively, the "**Service Provider**") to perform all operations and plugging and abandonment and decommissioning activities with respect to the Company's and GOM Shelf's properties or assets in a manner consistent with the procedures set forth in this Section 7.04.  The Sole Manager shall solicit and obtain a bid for the work to be performed by each Service Provider from not less than three qualified candidates, each of which must (i) have a minimum of five years of relevant experience and (ii) not be, as of such date when bids are submitted, an Affiliate of Apache;

26

such bids shall detail the scope, terms and conditions of the work to be performed, along with the price to be paid for the performance of such work. The Company shall share copies of each such bid received with Apache promptly following receipt thereof. Following the receipt of such bids, with Apache's prior written consent (which may be given or withheld in its sole discretion), the Sole Manager shall select the candidate whose bid contains the lowest price and best terms for the work to be performed, in view of their relevant experience (all as determined in good faith by the Sole Manager and consented to by Apache), to serve as the Service Provider, and shall cause the Company to enter into an agreement with such Service Provider (such agreement, a "**Service Provider Agreement**") to provide services contemplated in this Section 7.04; provided that, immediately prior to executing such Service Provider Agreement, the Sole Manager shall have confirmed that the proposed Service Provider satisfies the candidate qualifications detailed in clause (ii) of the immediately prior sentence (as if being considered on the date of such Service Provider Agreement rather than the date when bids are submitted), and if the proposed Service Provider does not satisfy such candidate qualifications, the Sole Manager shall then reconsider the submitted bids and select another candidate in accordance with the requirements of this sentence as if the previously selected candidate had not submitted a bid. Any Service Provider Agreement shall be in such form and contain such terms as the Sole Manager determines in good faith to be appropriate and consistent with this Section 7.04. In the event that the Sole Manager elects to remove the Service Provider or the Service Provider otherwise ceases to provide its services in such capacity, then the Sole Manager shall again bid out the work, and shall select the Person to serve as the successor Service Provider, in accordance with the foregoing procedures of this Section 7.04. The Credit Bid Purchaser shall be deemed to satisfy the requirements of a candidate for the Service Provider under this Section 7.04(a).

(b)     Upon the effectiveness of the Plan of Reorganization, the Company shall enter into the Transition Services Agreement and the Farmout Agreement with Credit Bid Purchaser. Pursuant to the Transition Services Agreement, Credit Bid Purchaser shall provide transitional operations for the Company in accordance with the terms of the Transition Services Agreement. The Company and Credit Bid Purchaser (in its sole discretion) may mutually agree that Credit Bid Purchaser shall become the Service Provider, at the effective time of which the Transition Services Agreement shall terminate, and the Sole Manager shall cause the Company to enter into the Service Provider Agreement with Credit Bid Purchaser. Furthermore, as provided in the Transition Services Agreement, the Transition Services Agreement may be terminated by the Company, in its sole discretion, in accordance with the terms of the Transition Services Agreement.

**Section 7.05   Actions Requiring Independent Director Consent and Service Provider.** Without the prior consent of the Independent Director (which consent may be given or withheld in the sole discretion of the Independent Director), and the Company shall not do, or enter into any commitment to do, and shall not cause or permit GOM Shelf to do, or enter into any commitment to do, any of the following:

(a)     amend, modify, supplement or waive the Certificate of Formation, this Agreement or any other organizational documents of the Company or its Subsidiaries;

(b)     remove or replace the Sole Manager or the Service Provider;

(c)     enter into a fundamental business transaction (as such term is defined in the BOC), including a merger, consolidation, interest exchange, conversion or sale of all or substantially all of the Company's or GOM Shelf's properties or assets;

(d)     wind-up, dissolve, liquidate or terminate the Company or any of its Subsidiaries prior to the occurrence of any event set forth in Section 11.01 or enter into a receivership or initiate a bankruptcy proceeding involving the Company or any of its Subsidiaries;

(e)     revoke a voluntary decision to wind up the Company or GOM Shelf or cancel the required winding up of the Company due to an event specified in § 11.051 of the BOC; or

(f)     reinstate the Company or GOM Shelf after termination.

Except as provided in the fourth sentence of Section 9.02(a), in exercising its rights and performing its duties under this Agreement (including pursuant to this Section 7.05), the Independent Director shall have fiduciary duties of loyalty and care similar to that of a director of a business corporation organized under the BOC.

**Section 7.06   Actions Requiring Apache Consent.**  Without the prior written consent of Apache (which written consent may be given or withheld in Apache's sole discretion, unless expressly indicated otherwise), the Company shall not do, or enter into any commitment to do, and shall not cause or permit GOM Shelf to do, or enter into any commitment to do, any of the following:

(a)     conduct or be involved in any business or operations other than (i) operating or plugging and abandoning and decommissioning the Legacy Apache Properties, (ii) causing GOM Shelf to operate or plug and abandon and decommission the GOM Shelf Properties, and (iii) performing its obligations under the Credit Bid Purchaser Documents and the Services Provider Agreement;

(b)     purchase or farm-in any properties or assets or sell any of the Company's or GOM Shelf's properties or assets; provided that, following receipt of any such written consent from Apache to purchase or farm-in any properties or assets, other than with respect to usual and ordinary G&A and operating expenditures required to own and maintain such properties or assets, no additional funds of, or available to, the Company or GOM Shelf shall be spent with respect to such properties or assets without the prior written consent of Apache (which written consent may be given or withheld in Apache's sole discretion), provided further, however, that if any Person makes an unsolicited proposal to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties on fair market terms and conditions (including fair market rates of return), then the Company shall be obligated to market (or cause GOM Shelf to market) such farm-in opportunity and accept (or cause GOM Shelf to accept) the highest and best offer for such farm-in opportunity as long as the farm-in transaction would be accretive to the Company's consolidated cash

flow, and in such instance no consent from Apache will be required if Apache has made or bid on such farm-in opportunity;

(c)     farm-out any of the Company's or GOM Shelf's properties or assets; provided, however, if any Person makes an unsolicited proposal to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties on fair market terms and conditions (including fair market rates of return), then the Company shall be obligated to market (or cause GOM Shelf to market) such farm-in opportunity and accept (or cause GOM Shelf to accept) the highest and best offer for such farm-in opportunity as long as the farm-in transaction would be accretive to the Company's consolidated cash flow, and in such instance no consent from Apache will be required if Apache has made or bid on such farm-in opportunity;

(d)     incur indebtedness for borrowed money other than pursuant to the Standby Facility, pledge or grant Liens on any properties or assets of the Company or GOM Shelf other than those provided pursuant to the Standby Facility Documentation and the Recharacterization Mortgages, or guarantee, assume, endorse or otherwise become responsible for the obligations of any other Person; provided, however, the Company may (i) establish a working capital line of credit secured by Liens subordinated in all respects to the Liens and payment and other obligations provided for in the Standby Facility Documentation, (ii) draw on such line of credit solely for the business purposes specified in 7.06(a), and (iii) repay up to $50,000,000 of such debt in the ordinary course of its business prior to repayment of the obligations secured by Liens in favor of Apache; provided further, however, that the Company shall not establish, draw on, or repay any such line of credit during the existence of an event of default under the Standby Facility Documentation or if such action would cause an event of default under the Standby Facility Documentation;

(e)     issue additional Membership Interests or any other Equity Securities or admit additional Members to the Company, or issue additional equity interests of or admit additional members to GOM Shelf;

(f)     use its free cash flow (after operating expenses, including fees paid under the Credit Bid Purchaser Documents and the Services Provider Agreement) for any purposes other than fulfilling its obligations to Apache under the Decommissioning Agreement and the Standby Facility Documentation for so long as the obligations thereunder have yet to be satisfied in full (for the avoidance of doubt, Apache's consent shall be required for any development activities proposed by Credit Bid Purchaser under the Farmout Agreement);

(g)     make any loan, advance, or capital contribution or make any investment in any Person;

(h)     enter into, amend, waive, or terminate any Related Party Agreement;

(i)     amend, modify, supplement, restate, or waive any provision of the Certificate of Formation, this Agreement, or any other organizational documents of the

Company or its Subsidiaries (and any such amendment, modification, supplement, or waiver that is attempted without Apache's prior written consent shall be void *ab initio* and without effect);

(j)     engage in any activity or take any action with respect to its properties or assets, other than in the ordinary course of business;

(k)     select, remove (other than for gross negligence or willful misconduct), or replace, or change the work to be performed by, the Service Provider;

(l)     remove (other than for gross negligence or willful misconduct), replace, or change the powers, rights, or responsibilities of, the Sole Manager or the Independent Director;

(m)     establish a Subsidiary or enter into any joint venture or similar business arrangement or enter into a transaction covered by Section 7.09;

(n)     settle any lawsuit, action, dispute, or other proceeding or otherwise assume any liability or agree to the provision of any equitable relief by the Company or GOM Shelf;

(o)     enter into a fundamental business transaction (as such term is defined in the BOC), including a merger, consolidation, interest exchange, conversion, or sale of all or substantially all of the Company's or GOM Shelf's properties or assets;

(p)     wind-up, dissolve, liquidate, or terminate the Company or any of its Subsidiaries or initiate a bankruptcy proceeding involving the Company or any of its Subsidiaries;

(q)     revoke a voluntary decision to wind up the Company or GOM Shelf or cancel the required winding up of the Company due to an event specified in § 11.051 of the BOC; or

(r)     reinstate the Company or GOM Shelf after termination.

In addition to the foregoing, if (i)(A) the Company or GOM Shelf defaults on its plugging and abandonment and decommissioning obligations under the Decommissioning Agreement, (B) any Governmental Authority or any other Person seeks to cause Apache or its Affiliates to conduct plugging and abandonment or decommissioning activity that is required in accordance with Applicable Law or contract in respect of any of the Legacy Apache Properties or the GOM Shelf Properties, and (C) Apache conducts such plugging and abandonment or decommissioning activity or activities, or (ii) prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties, any letter of credit or bond that is part of the Decommissioning Security is not renewed in a manner consistent in all respects with the existing terms of such letter of credit or bond, then the Company shall, and the Independent Director and the Sole Manager shall cause the Company to:  (x) if applicable, as promptly as practicable after the Independent Director or the

Sole Manager becomes aware of an event described in clause (ii) immediately above, provide written notice to Apache of the upcoming expiration of, and inability to renew, such letter of credit or bond in a manner consistent in all respects with the existing terms of such letter of credit or bond and (y) pay or reimburse Apache for the costs (which costs shall include, without limitation, costs of compensation and benefits of officers and employees of Apache and its Affiliates that devote any of their productive time to performing or overseeing any of the plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties in accordance with the provisions on Schedule D attached hereto applied in a consistent manner as the application of COPAS procedures, which costs shall be determined in good faith by Apache based on the time spent by such employees in performing or overseeing such activities) and expenses incurred in conducting such activity or activities; provided, however, that, to the extent such costs are not direct, out-of-pocket costs incurred by Apache that are reimbursable under the Decommissioning Agreement, such costs shall be reimbursed to Apache only by draws on the Standby Facility which shall not be repaid by the Company unless and until all surety bonds and letters of credit included within Decommissioning Security have been fully utilized by Apache or it is determined in good faith by Apache that it will have no further drawings under such bonds and letters of credit.

Furthermore, the Company shall provide written notice to Apache of (i) each request or proposal the Company or GOM Shelf receives from a Person to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties and (ii) each prospective joint development under the Farmout Agreement.  In connection with each of the foregoing, the Company shall, and shall cause GOM Shelf to, provide Apache full and open access to all information that the Company or GOM Shelf has regarding each such opportunity.

**Section 7.07   Compensation and Reimbursement of the Independent Director, the Sole Manager, the Service Provider and Credit Bid Purchaser.**  The Independent Director shall be compensated for the services provided by such individual as the Independent Director of the Company in the amount as specified in Schedule B attached hereto. The Sole Manager shall be compensated for the services provided by such individual as the Sole Manager of the Company in the amount as specified in Schedule C attached hereto.  The Company shall reimburse the Independent Director and the Sole Manager for all ordinary, necessary, and direct third-party expenses incurred by the Independent Director and the Sole Manager, respectively, on behalf of the Company in carrying out the Company's business activities.  All reimbursements for expenses shall be reasonable in amount and shall not exceed $[●] in the aggregate for any Fiscal Year.  The Service Provider shall be compensated for the services provided by the Service Provider and reimbursed for the out-of-pocket costs and expenses incurred in connection therewith as shall be set forth in the applicable Service Provider Agreement.  Credit Bid Purchaser shall be compensated for its services under the Transition Services Agreement and reimbursed for the out-of-pocket costs and expenses incurred in connection therewith as set forth in the Transition Services Agreement.

**Section 7.08   No Personal Liability.**  Except as otherwise provided in the BOC, by Applicable Law, or expressly in this Agreement, neither the Independent Director nor the Sole Manager will be obligated personally for any debt, obligation, or liability of the Company, whether arising in contract, tort, or otherwise, including a debt, obligation, or liability under a judgment,

decree, or order of a court, solely by reason of being or acting as the Independent Director or the Sole Manager, as applicable.

     **Section 7.09   Funding Capital Expenditures.**  Prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, if the Company receives a proposal that the Company engage in any project that is forecast to increase production or cash flow generated from the Legacy Apache Properties or the GOM Shelf Properties (excluding any proposed development activities pursuant to the Farmout Agreement), then the Sole Manager shall, through a written notice, offer to Apache the opportunity to fund the capital expenditures related to such project on behalf of the Company on terms and subject to conditions to be mutually agreed between the Company and Apache; provided that the Company acknowledges and agrees that if any such capital expenditures are funded, in whole or in part, out of funds available to be borrowed by the Company under the Standby Facility, any additional properties or assets obtained or that come into existence as a result of the use of such borrowed amounts under the Standby Facility, including, without limitation, any increased production or cash amounts generated thereby, shall be pledged as additional security under the Standby Facility Documentation.  Such written notice provided to Apache shall include all available details about such opportunity, including, but not limited to, the forecast impact on production and cash flow from the Legacy Apache Properties or the GOM Shelf Properties, as appropriate.  Apache shall have a reasonable period (not to exceed 20 Business Days) following its receipt of such written notice to provide written notice to the Company of (a) Apache's election to fund any such capital expenditures and the terms and conditions that Apache proposes to apply thereto, including whether it will fund such capital expenditure, in whole or in part, using amounts then available to be borrowed by the Company under the Standby Facility (such notice, an "**Acceptance Notice**"), (b) Apache's election not to fund any such capital expenditures (such notice, a "**Rejection Notice**"), or (c) Apache's request for additional information it requires to fully evaluate the proposed project (such notice, an "**Information Notice**").  If Apache provides a timely Acceptance Notice, then the Company and Apache shall endeavor in good faith to negotiate the proposed terms and conditions that will apply thereto, and if mutually satisfactory terms are agreed to by the Company and Apache, such terms and conditions shall be documented as promptly as practicable and the closing of such agreement and funding(s) of such capital expenditures shall occur as so agreed.  If (i) Apache timely provides to the Company a Rejection Notice, (ii) Apache timely provides an Acceptance Notice but the Company and Apache are unable within 60 Business Days after the Company's receipt of the Acceptance Notice to agree upon mutually satisfactory terms and conditions applicable thereto, or (iii) Apache does not submit a timely response to the offer, then the offer for Apache to fund the capital expenditures of the Company in the applicable project shall be deemed rejected by Apache and the Company shall have 180 days within which to obtain third-party funding for such capital expenditures subject to, and in accordance with, the other terms and conditions of this Agreement (including, without limitation, Section 7.06); provided, however, if the Company is unable to obtain such funding subject to, and in accordance with, the other terms and conditions of this Agreement within such 180-day period, then the Company must again follow the procedures in this Section 7.09 and offer Apache the opportunity to fund such expenditures.  If Apache timely provides the Company with an Information Notice, then the Company shall endeavor in good faith to promptly provide the requested information to Apache, and following Apache's receipt of such

information, Apache shall have the right to accept or reject such offer on the terms set forth in this Section 7.09.

## ARTICLE VIII
## TRANSFER

**Section 8.01   General Restrictions on Transfer.**

(a)      No Member shall Transfer all or any portion of its Membership Interest in the Company without the prior written approval of:

(i)      Apache and the Company prior to (A) the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties, (B) the repayment in full of any and all amounts outstanding under the Standby Facility and the satisfaction of all obligations under the Standby Facility Documentation, (C) the payment or reimbursement by the Company or from funds available under the Decommissioning Security of the costs (which costs shall include, without limitation, costs of compensation and benefits of officers and employees of Apache and its Affiliates that devote any of their productive time to performing or overseeing any of the plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties in accordance with the provisions on Schedule D attached hereto applied in a consistent manner as the application of COPAS procedures) and expenses incurred by Apache and its Affiliates (1) in performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties or (2) pursuant to or as may be required in connection with the Decommissioning Agreement, and (D) the reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required; and

(ii)      thereafter, the Company.

(b)      Subject to Section 8.01(a), each Member agrees that it will not Transfer all or any portion of its Membership Interest in the Company, and the Company agrees that it shall not issue any Membership Interests:

(i)      except as permitted under the Securities Act and other applicable federal or state securities or blue sky laws, and then, with respect to a Transfer of Membership Interests, only upon delivery to the Company of an opinion of counsel in form and substance satisfactory to the Company to the effect that such Transfer may be effected without registration under the Securities Act;

(ii)      if such Transfer or issuance would cause the Company to be considered a "publicly traded partnership" under Section 7704(b) of the Code

33

within the meaning of Treasury Regulations Section 1.7704-1(h)(1)(ii), including the look-through rule in Treasury Regulations Section 1.7704-1(h)(3);

(iii)    if such Transfer or issuance would affect the Company's existence or qualification as a limited liability company under the BOC;

(iv)    if such Transfer or issuance would cause the Company to lose its status as a partnership for federal income tax purposes;

(v)    if such Transfer or issuance would cause the Company to be required to register as an investment company under the Investment Company Act of 1940, as amended; or

(vi)    if such Transfer or issuance would cause the assets of the Company to be deemed "Plan Assets" as defined under the Employee Retirement Income Security Act of 1974 or its accompanying regulations or result in any "prohibited transaction" thereunder involving the Company.

(c)    Any Transfer or attempted Transfer of any Membership Interest in violation of this Agreement shall be null and void *ab initio*, no such Transfer shall be recorded on the Company's books, and the purported Transferee in any such Transfer shall not be treated (and the purported Transferor shall continue to be treated) as the owner of such Membership Interest for all purposes of this Agreement.

(d)    Subject to Section 7.06(e), no Transfer of any Membership Interest to a Person not already a Member of the Company shall be deemed completed until the prospective Transferee has executed a joinder agreement in form and substance acceptable to the Company.

(e)    For the avoidance of doubt, any completed Transfer of a Membership Interest permitted by this Agreement shall be deemed a sale, transfer, assignment, or other disposal of such Membership Interest in its entirety as intended by the parties to such Transfer, and shall not be deemed a sale, transfer, assignment, or other disposal of any less than all of the rights and benefits described in the definition of the term "Membership Interest."

### ARTICLE IX
### EXCULPATION AND INDEMNIFICATION

**Section 9.01    Exculpation of Covered Persons.**

(a)    **Covered Persons.**  As used herein, the term "**Covered Person**" shall mean (i) each current or former Member; (ii) each current or former manager, officer, director (including the Independent Director), shareholder, partner, member, Affiliate, employee, agent, or Representative of each Member, and each of their Affiliates; and (iii) each manager (including the Sole Manager), officer (if any), employee (if any), agent, or Representative of the Company.

(b)      **Standard of Care.**   Subject to Section 9.02(a) with respect to the Independent Director, no Covered Person shall be liable to the Company or any other Covered Person for any loss, damage, or claim incurred by reason of any action taken or omitted to be taken by such Covered Person in good faith reliance on the provisions of this Agreement, so long as such action or omission does not constitute fraud or willful misconduct by such Covered Person.

(c)      **Good Faith Reliance.**   A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports, or statements (including financial statements and information, opinions, reports, or statements as to the value or amount of the assets, liabilities, Net Income, or Net Losses of the Company or any facts pertinent to the existence and amount of assets from which distributions might properly be paid) of the following Persons or groups: (i) another Member; (ii) one or more officers or employees of the Company; (iii) any attorney, independent accountant, appraiser, or other expert or professional employed or engaged by or on behalf of the Company; or (iv) any other Person selected in good faith by or on behalf of the Company, in each case as to matters that such relying Person reasonably believes to be within such other Person's professional or expert competence.   The preceding sentence shall in no way limit any Person's right to rely on information to the extent provided in § 3.102 or § 3.105 of the BOC.

**Section 9.02   Liabilities and Duties of Covered Persons.**

(a)      **Limitation of Liability.**   This Agreement, unless otherwise specifically stated herein, is not intended to, and does not, create or impose any fiduciary duty on any Covered Person. Furthermore, each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligations of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.   Notwithstanding anything to the contrary in this Article IX, to the fullest extent permitted by Applicable Law, and notwithstanding any duty otherwise existing at law or in equity, the Independent Director shall consider only the interests of the Company, including its creditors, in acting or otherwise consenting to matters requiring the consent of the Independent Director in this Agreement.   Except for duties to the Company as set forth in the immediately preceding sentence (including duties to the Members and the Company's creditors solely to the extent of their respective economic interests in the Company but excluding (i) all other interests of the Members, (ii) the interests of other Affiliates of the Company, and (iii) the interests of any group of Affiliates of which the Company is a part) and in the last sentence of Section 7.05, the Independent Director shall not have any fiduciary duties to the Members or any other Person bound by this Agreement; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.   To the fullest extent permitted by law, the Independent Director shall not be liable to the Company, the Members or any other Person bound by this Agreement for breach of contract or breach of

duties (including fiduciary duties), unless the Independent Director acted in bad faith or engaged in willful misconduct.

(b)     **Duties.**   Except as provided in Section 9.02(a) with respect to the Independent Director, whenever in this Agreement a Covered Person is permitted or required to make a decision (including a decision that is in such Covered Person's "discretion" or under a grant of similar authority or latitude), the Covered Person shall be entitled to consider only such interests and factors as such Covered Person desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person.   Whenever in this Agreement a Covered Person is permitted or required to make a decision in such Covered Person's "good faith," the Covered Person shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or any other Applicable Law.

**Section 9.03   Indemnification.**

(a)     **Indemnification.**   To the fullest extent permitted by the BOC, as the same now exists or may hereafter be amended, substituted or replaced (but, in the case of any such amendment, substitution, or replacement, only to the extent that such amendment, substitution, or replacement permits the Company to provide broader indemnification rights than the BOC permitted the Company to provide prior to such amendment, substitution, or replacement), the Company shall indemnify, hold harmless, defend, pay, and reimburse any Covered Person against any and all losses, claims, damages, judgments, fines, or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines, or liabilities, and any amounts expended in settlement of any claims (collectively, "**Losses**") to which such Covered Person may become subject by reason of:

(i)     any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member, or any direct or indirect Subsidiary of the foregoing in connection with the business of the Company; or

(ii)     such Covered Person being or acting in connection with the business of the Company as a member, shareholder, Affiliate, manager, director, officer, employee, or agent of the Company, any Member, or any of their respective Affiliates, or that such Covered Person is or was serving at the request of the Company as a member, manager, director, officer, employee, or agent of any Person including the Company;

provided, that (x) such Covered Person acted in good faith and in a manner believed by such Covered Person to be in, or not opposed to, the best interests of the Company and, with respect to any criminal proceeding, had no reasonable cause to believe his conduct was unlawful, and (y) such Covered Person's conduct did not constitute fraud or willful and intentional misconduct, in either case as determined by a final, nonappealable order of a court of competent jurisdiction.   In connection with the foregoing, the termination of any

action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Covered Person did not act in good faith or, with respect to any criminal proceeding, had reasonable cause to believe that such Covered Person's conduct was unlawful, or that the Covered Person's conduct constituted fraud or willful misconduct.

(b)     **Control of Defense.**  Upon a Covered Person's discovery of any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03, the Covered Person shall give prompt written notice to the Company of such claim, lawsuit, or proceeding, provided, that the failure of the Covered Person to provide such notice shall not relieve the Company of any indemnification obligation under this Section 9.03, unless the Company shall have been materially prejudiced thereby.  The Company shall be entitled to participate in or assume the defense of any such claim, lawsuit, or proceeding at its own expense.  After notice from the Company to the Covered Person of its election to assume the defense of any such claim, lawsuit, or proceeding, the Company shall not be liable to the Covered Person under this Agreement or otherwise for any legal or other expenses subsequently incurred by the Covered Person in connection with investigating, preparing to defend, or defending any such claim, lawsuit, or other proceeding.  If the Company does not elect (or fails to elect) to assume the defense of any such claim, lawsuit, or proceeding, the Covered Person shall have the right to assume the defense of such claim, lawsuit, or proceeding as it deems appropriate, but it shall not settle any such claim, lawsuit, or proceeding without the consent of the Company (which consent shall not be unreasonably withheld, conditioned, or delayed).

(c)     **Reimbursement.**  The Company shall promptly reimburse (and/or advance to the extent reasonably required) each Covered Person for reasonable legal or other expenses (as incurred) of such Covered Person in connection with investigating, preparing to defend, or defending any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03; provided, that if it is finally judicially determined that such Covered Person is not entitled to the indemnification provided by this Section 9.03, then such Covered Person shall promptly reimburse the Company for any reimbursed or advanced expenses.

(d)     **Entitlement to Indemnity.**  The indemnification provided by this Section 9.03 shall not be deemed exclusive of any other rights to indemnification to which those seeking indemnification may be entitled under any agreement or otherwise.  The provisions of this Section 9.03 shall continue to afford protection to each Covered Person regardless of whether such Covered Person remains in the position or capacity pursuant to which such Covered Person became entitled to indemnification under this Section 9.03 and shall inure to the benefit of the executors, administrators, legatees, and distributees of such Covered Person.

(e)     **Insurance.**  To the extent available on commercially reasonable terms, the Company may purchase, at its expense, insurance to cover Losses covered by the foregoing indemnification provisions and to otherwise cover Losses for any breach or alleged breach

by any Covered Person of such Covered Person's duties in such amount and with such deductibles as the Sole Manager may reasonably determine; provided, that the failure to obtain such insurance shall not affect the right to indemnification of any Covered Person under the indemnification provisions contained herein, including the right to be reimbursed or advanced expenses or otherwise indemnified for Losses hereunder.  If any Covered Person recovers any amounts in respect of any Losses from any insurance coverage, then such Covered Person shall, to the extent that such recovery is duplicative, reimburse the Company for any amounts previously paid to such Covered Person by the Company in respect of such Losses.

(f)  **Funding of Indemnification Obligation.**  Notwithstanding anything contained herein to the contrary, any indemnity by the Company relating to the matters covered in this Section 9.03 shall be provided out of and to the extent of Company assets only, and no Member (unless such Member otherwise agrees in writing) shall have personal liability on account thereof or shall be required to make additional Capital Contributions to help satisfy such indemnity by the Company.

(g)  **Savings Clause.**  If this Section 9.03 or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify and hold harmless each Covered Person pursuant to this Section 9.03 to the fullest extent permitted by any applicable portion of this Section 9.03 that shall not have been invalidated and to the fullest extent permitted by Applicable Law.

(h)  **Amendment.**  The provisions of this Section 9.03 shall be a contract between the Company, on the one hand, and each Covered Person who served in such capacity at any time while this Section 9.03 is in effect, on the other hand, pursuant to which the Company and each such Covered Person intend to be legally bound.  No amendment, modification, or repeal of this Section 9.03 that adversely affects the rights of a Covered Person to indemnification for Losses incurred or relating to a state of facts existing prior to such amendment, modification or repeal shall apply in such a way as to eliminate or reduce such Covered Person's entitlement to indemnification for such Losses without the Covered Person's prior written consent.

**Section 9.04   Survival.**  The provisions of this ARTICLE IX shall survive the dissolution, liquidation, winding up, and termination of the Company.

<div align="center">

**ARTICLE X
ACCOUNTING; TAX MATTERS**

</div>

**Section 10.01 Financial Statements and Other Information.**  The Company shall furnish to each Member and Apache the following reports:

(a)  **Annual Financial Statements.**  As soon as available, and in any event within 105 days after the end of each Fiscal Year, its audited consolidated balance sheet and related consolidated statements of operations, Members' equity and cash flows as of the end of and for such year prepared under AICPA auditing standards, setting forth in each case in comparative form the figures for the previous Fiscal Year, all reported on by

<div align="center">38</div>

independent public accountants acceptable to each Member and Apache (without a "going concern" or like qualification, commentary, or exception (except to the extent that any such qualification, commentary, or exception expressly indicates that after giving effect to the exclusion of asset retirement obligations reflected on the accompanying balance sheet, there would be no such qualification, commentary, or exception), and without any qualification or exception as to the scope of such audit) to the effect that such consolidated financial statements present fairly in all material respects the consolidated financial condition and results of operations of the Company and GOM Shelf in accordance with GAAP consistently applied;

(b) **Quarterly Financial Statements.** As soon as available, and in any event within 50 days after the end of each quarterly accounting period in each Fiscal Year (including the last fiscal quarter of the Fiscal Year), its unaudited consolidated balance sheet and related unaudited consolidated statements of operations, Members' equity and cash flows as of the end of and for such fiscal quarter and the then elapsed portion of the current Fiscal Year, setting forth in each case in comparative form the figures for the corresponding period or periods of the previous Fiscal Year or as at the end of such period or periods, all in reasonable detail and certified by the Company as presenting fairly in all material respects the consolidated financial condition and results of operations of the Company and GOM Shelf in accordance with GAAP consistently applied, subject to normal year-end audit adjustments and the absence of footnotes; and

(c) **Monthly Operating Data.** As soon as available, but in no event later than 15 Business Days after the end of each calendar month, a statement in a form reasonably satisfactory to each Member and Apache showing all operating data for the Company and GOM Shelf, including operating expenses and revenue for each of the Company and GOM Shelf, for such calendar month.

(d) **Operating Budget.** As soon as available, but in any event no later than 60 days after the end of each Fiscal Year of the Company, a detailed operating budget for the Fiscal Year, forecasting revenue, operating costs, and capital expenses for each fiscal quarter in form reasonably satisfactory to each Member and Apache.

(e) **Additional Information.** Promptly following any reasonable request therefor, such other information regarding the operations, business affairs and financial condition of each of the Company and GOM Shelf, as any Member or Apache may reasonably request, including, without limitation, decommissioning cost estimates and calculations.

**Section 10.02 Inspection Rights.** Upon reasonable notice from a Member or Apache, the Company shall afford each Member or Apache and their respective Representatives access during normal business hours to (a) the Company's properties, offices, plants, and other facilities; (b) the corporate, financial, and similar records, reports, and documents of the Company, including, without limitation, all books and records, minutes of proceedings, internal management documents, reports of operations, reports of adverse developments, copies of any management letters and communications with Members or the Sole Manager or Independent Director, and to

39

permit each Member or Apache and their respective Representatives to examine such documents and make copies thereof; and (c) any officers, senior employees, and public accountants of the Company, and to afford each Member or Apache and their respective Representatives the opportunity to discuss and advise on the affairs, finances, and accounts of the Company with such officers, senior employees, and public accountants (and the Company hereby authorizes said accountants to discuss with such Member or Apache and their respective Representatives such affairs, finances, and accounts).

**Section 10.03  Income Tax Status.**  It is the intent of the Company and the Members that the Company shall be treated as a partnership or a disregarded entity for U.S., federal, state, and local income tax purposes.  Neither the Company nor any Member shall make an election for the Company to be classified as other than a partnership or a disregarded entity pursuant to Treasury Regulations Section 301.7701-3.

**Section 10.04  Tax Matters Representative.**

(a)  **Appointment.**  The Members hereby appoint the Sole Manager as "partnership representative" as provided in Code Section 6223(a) (the "**Tax Matters Representative**").  If any state or local tax law provides for a tax matters partner/partnership representative or Person having similar rights, powers, authority or obligations, the person designated as the Tax Matters Representative shall also serve in such capacity.  To the extent required by Applicable Law, if the Tax Matters Representative is an entity, it shall appoint a "designated individual" to act on its behalf.  The Tax Matters Representative can be removed at any time by a vote of Members holding a majority of the Membership Interests, and shall resign if it is no longer a Member.  In the event of the resignation or removal of the Tax Matters Representative, Members holding a majority of the Membership Interests shall select a replacement Tax Matters Representative.

(b)  **Tax Examinations and Audits.**  The Tax Matters Representative is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by Taxing Authorities, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith.  The Tax Matters Representative shall promptly notify the Members in writing of the commencement of any tax audit of the Company, upon receipt of a tax assessment and upon receipt of a notice of final partnership adjustment, and shall keep the Members reasonably informed of the status of any tax audit and resulting administrative and judicial proceedings.  Without the consent of Members holding a majority of the Membership Interests, the Tax Matters Representative shall not extend the statute of limitations, file a request for administrative adjustment, file suit relating to any Company tax refund or deficiency or enter into any settlement agreement relating to items of income, gain, loss or deduction of the Company with any Taxing Authority.

(c)  **US Federal Tax Proceedings.**  The Members acknowledge that the Company may elect the application of Section 6226 of the Code.  This acknowledgement applies to each Member whether or not the Member owns an interest in the Company in

both the reviewed year and the year of the tax adjustment.  In the event that the Company elects the application of Section 6226 of the Code, the Members agree and covenant to take into account and report to the Internal Revenue Service (or any other applicable taxing authority) any adjustment to their tax items for the reviewed year of which they are notified by the Company in a written statement, in the manner provided in Section 6226(b) of the Code, whether or not the Member owns any interest in the Company at such time.  Any Member that fails to report its share of such adjustments on its tax return, agrees to indemnify and hold harmless the Company and the Tax Matters Representative from and against any and all losses, costs, liabilities and expenses related to taxes (including penalties and interest) imposed on the Company as a result of the Member's inaction.  If the Company is required to pay the assessment of the imputed underpayment under Section 6225(a)(1) of the Code or similar provisions of state law, any taxes, penalties, and interest payable by the Company shall be treated as attributable to the Members, and, to the extent possible, the Tax Matters Representative shall allocate the burden of any such amounts to those Members to whom such amounts are reasonably attributable taking into account the Member's or former Member's allocable share of taxable income or loss with respect to the Fiscal Year to which such assessment pertains and adjustments that may have been made in computing the imputed underpayment.  To the extent that any such amount is payable by the Company, at the option of the Tax Matters Representative, such amount shall be recoverable from such Member as provided in Section 6.03(c).  The provisions contained in this Section 10.04 shall survive the dissolution, termination or liquidation of the Company, the withdrawal of any Member or the transfer of any Member's interest in the Company and apply to unadmitted assignees of a Member Interest who may be considered current or former partners of the Company for federal tax purposes.

(d)     **Tax Returns.**  Each Member agrees that such Member shall not treat any Company item inconsistently on such Member's federal, state, foreign or other income tax return with the treatment of the item on the Company's return.

(e)     **Section 754 Election.**  The Tax Matters Representative will make an election under Code Section 754, if the Company is to be taxed as a partnership for federal tax purposes.

(f)     **Indemnification**.  The Company shall defend, indemnify, and hold harmless the Tax Matters Representative against any and all liabilities sustained as a result of any act or decision concerning Company tax matters and within the scope of responsibilities as Tax Matters Representative, so long as such act or decision was done or made in good faith and does not constitute gross negligence or willful misconduct.

**Section 10.05 Tax Returns.**  At the expense of the Company, the Sole Manager (or any officer of the Company that it may designate pursuant to this Agreement) shall endeavor to cause the preparation and timely filing (including extensions) of all tax returns required to be filed by the Company pursuant to the Code as well as all other required tax returns in each jurisdiction in which the Company owns property or does business.  As soon as reasonably possible after the end of each Fiscal Year, the Sole Manager or any designated officer of the Company, as applicable, will cause to be delivered to each Person who was a Member at any time during such Fiscal Year,

IRS Schedule K-1 to Form 1065, if applicable, and such other information with respect to the Company as may be necessary for the preparation of such Person's federal, state, and local income tax returns for such Fiscal Year.

**Section 10.06  Company Funds.**  All funds of the Company shall be deposited in its name, or in such name as may be designated by the Sole Manager, in such checking, savings, or other accounts, or held in its name in the form of such other investments as shall be designated by the Sole Manager.  The funds of the Company shall not be commingled with the funds of any other Person.  All withdrawals of such deposits or liquidations of such investments by the Company shall be made exclusively upon the signature or signatures of the Sole Manager, or any officer or officers of the Company that may be designated by the Sole Manager, as applicable, pursuant to this Agreement.

<div align="center">

**ARTICLE XI**
**WINDING UP AND TERMINATION**

</div>

**Section 11.01  Events Requiring Winding Up.**  The Company shall begin to wind up its business and affairs only upon the occurrence of any of the following events (in each case, subject to the applicable provisions of Section 7.06):

> (a)    upon the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties;

> (b)    the occurrence of a nonwaivable event under the terms of the BOC which requires the winding up of the Company after its termination unless a Continuance occurs in respect of such event; or

> (c)    the entry of a judicial decree ordering winding up and termination under § 11.314 of the BOC in proceedings of which Apache has been given notice and an opportunity to participate.

Notwithstanding the occurrence of an event referenced in Section 11.01(b), if the Company is permitted prior to the termination of its existence in accordance with the BOC to revoke a winding up upon the occurrence of such event and each of Apache, the Sole Manager, and the Independent Director provide their prior written consent to such revocation, then, to the extent so permitted under the BOC and in the manner provided therein, the Company's existence shall be continued (the revocation of such a winding up and continuance of the Company, a "**Continuance**").

**Section 11.02  Effectiveness of Termination.**  The Company shall begin to wind up its business and affairs as soon as reasonably practicable upon the occurrence of an event described in Section 11.01 (if such event has not been revoked or cancelled), but the Company shall not terminate until the winding up of the Company has been completed, the assets of the Company have been distributed as provided in Section 11.03, and the Certificate of Termination shall have been filed as provided in Section 11.04.

<div align="center">42</div>

**Section 11.03  Liquidation.**  If the Company is to be terminated pursuant to Section 11.01, the Company shall be liquidated and its business and affairs wound up in accordance with the BOC and the following provisions:

(a)  **Liquidator.**  The Sole Manager shall act as liquidator to wind up the Company (the "**Liquidator**"); provided, however, that if there is then a vacancy in the position of the Sole Manager or the Sole Manager is not willing to act as the Liquidator, the Members shall appoint a person to act as the Liquidator.  The Liquidator shall have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and business-like manner.

(b)  **Accounting.**  As promptly as possible after the event requiring winding up and again after final liquidation, the Liquidator shall cause a proper accounting to be made by a recognized firm of certified public accountants of the Company's assets, liabilities, and operations through the last day of the calendar month in which such event occurs or the final liquidation is completed, as applicable.

(c)  **Notice.**  The Liquidator shall deliver to each known claimant of the Company the notice required by § 11.052 of the BOC.

(d)  **Distribution of Proceeds.**  The Liquidator shall liquidate the assets of the Company and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of Applicable Law:

(i)  First, to the payment of all of the Company's debts and liabilities to its creditors (including Members, if applicable) and the expenses of liquidation (including sales commissions incident to any sales of assets of the Company);

(ii)  Second, to Trust A until the aggregate funds in Trust A are in an amount equal to 125% of the then Remaining Decommissioning (as defined in the Decommissioning Agreement);

(iii)  Third, to the establishment of and additions to other reserves that are determined by the Liquidator to be reasonably necessary for any contingent unforeseen liabilities or obligations of the Company; and

(iv)  Fourth, to the Members in accordance with the positive balances in their respective Capital Accounts, as determined after taking into account all Capital Account adjustments for the taxable year of the Company during which the liquidation of the Company occurs.

(e)  **Discretion of Liquidator.**  Notwithstanding the provisions of Section 11.03(d) that require the liquidation of the assets of the Company, but subject to the order of priorities set forth in Section 11.03(d), if upon winding up of the Company the Liquidator reasonably determines that an immediate sale of part or all of the Company's assets would be impractical or could cause undue loss to the Members, the Liquidator may defer the liquidation of any assets except those necessary to satisfy Company liabilities,

43

Trust A, and reserves, and may, upon approval of holders of a majority of the outstanding Membership Interests, distribute to the Members, in lieu of cash, as tenants in common and in accordance with the provisions of Section 11.03(d), undivided interests in such Company assets as the Liquidator deems not suitable for liquidation. Any such distribution in kind shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any agreements governing the operating of such properties at such time. For purposes of any such distribution, any property to be distributed will be valued at its Fair Market Value.

**Section 11.04 Certificate of Termination.** Upon completion of the distribution of the assets of the Company as provided in Section 11.03(d) hereof, the Liquidator or other such officer shall execute and cause to be filed a Certificate of Termination in the State of Texas and shall cause the cancellation of all qualifications and registrations of the Company as a foreign limited liability company in jurisdictions other than the State of Texas and shall take such other actions as may be necessary to terminate the Company. Upon acceptance of the Certificate of Termination by the Texas Secretary of State, the Company shall be terminated.

**Section 11.05 Survival of Rights, Duties, and Obligations.** Dissolution, liquidation, winding up, or termination of the Company for any reason shall not release any party from any Loss that at the time of such dissolution, liquidation, winding up, or termination already had accrued to any other party or thereafter may accrue in respect of any act or omission prior to such dissolution, liquidation, winding up, or termination. For the avoidance of doubt, none of the foregoing shall replace, diminish, or otherwise adversely affect any Member's right to indemnification pursuant to Section 9.03.

**Section 11.06 Recourse for Claims.** Each Member shall look solely to the assets of the Company for all distributions with respect to the Company, such Member's Capital Account, and such Member's share of Net Income, Net Loss, and other items of income, gain, loss, and deduction, and shall have no recourse therefor (upon termination or otherwise) against the Liquidator, the Independent Director, or any other Member.

### ARTICLE XII
### MISCELLANEOUS

**Section 12.01 Expenses.** Except as otherwise expressly provided herein, in the Restructuring Support Agreement, or in the Confirmation Order, all costs and expenses, including fees and disbursements of counsel, financial advisors, and accountants, incurred in connection with the preparation and execution of this Agreement, or any amendment or waiver hereof, and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses. In addition to the immediately preceding sentence and the payment or reimbursement to Apache and its Affiliates for the costs and expenses of performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties as provided in the final paragraph of Section 7.06, from time to time as Apache evaluates any matter specified in Section 7.06 for which its consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, the Company shall reimburse Apache for all costs and expenses incurred in connection therewith, with such

reimbursement to be made regardless of whether Apache consents to such matter or provides an Acceptance Notice, Rejection Notice, or Information Notice to the Company with respect to such proposal. Apache's costs shall include, without limitation, third-party costs and the reimbursable costs of compensation and benefits of employees of Apache and its Affiliates who devote productive time to evaluating any matter specified in Section 7.06 for which the consent of Apache is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, which costs shall be determined in good faith by Apache based on the time spent by such employees in conducting such evaluation. The reimbursement to be made pursuant to the immediately preceding sentences shall be made within 30 days of the Company's receipt of a statement from Apache specifying the costs to be so reimbursed.

**Section 12.02 Further Assurances.** In connection with this Agreement and the transactions contemplated hereby, the Company and each Member hereby agrees, at the request of the Company or any other Member, to execute and deliver such additional documents, instruments, conveyances, and assurances and to take such further actions as may be required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

**Section 12.03 Confidentiality.**

(a) Each Member acknowledges that, during the term of this Agreement, it will have access to and become acquainted with trade secrets, proprietary information, and confidential information belonging to the Company and its Affiliates that are not generally known to the public, including, but not limited to, information concerning business plans, financial statements, and other information provided pursuant to this Agreement, operating practices and methods, expansion plans, strategic plans, marketing plans, contracts, customer lists, or other business documents that the Company treats as confidential, in any format whatsoever (including oral, written, electronic, or any other form or medium) (collectively, "**Confidential Information**"). In addition, each Member acknowledges that: (i) the Company has invested, and continues to invest, substantial time, expense, and specialized knowledge in developing its Confidential Information; (ii) the Confidential Information provides the Company with a competitive advantage over others in the marketplace; and (iii) the Company would be irreparably harmed if the Confidential Information were disclosed to competitors or made available to the public. Without limiting the applicability of any other agreement to which any Member is subject, no Member shall, directly or indirectly, disclose or use (other than solely for the purposes of such Member monitoring and analyzing its investment in the Company) at any time, including, without limitation, use for personal, commercial, or proprietary advantage or profit, either during its association with the Company or thereafter, any Confidential Information of which such Member is or becomes aware. Each Member in possession of Confidential Information shall take all appropriate steps to safeguard such information and to protect it against disclosure, misuse, espionage, loss, and theft.

(b) Nothing contained in Section 12.03(a) shall prevent any Member from disclosing Confidential Information: (i) upon the order of any court or administrative agency; (ii) upon the request or demand of any regulatory agency or authority having jurisdiction over such Member; (iii) to the extent compelled by legal process or required or

requested pursuant to subpoena, interrogatories, or other discovery requests; (iv) to the extent necessary in connection with the exercise of any remedy hereunder; (v) to the other Members; or (vi) to such Member's Representatives who, in the reasonable judgment of such Member, need to know such Confidential Information and agree to be bound by the provisions of this Section 12.03 as if a Member; or (vii) to any potential Transferee in connection with a proposed Transfer of Membership Interests from such Member, as long as such potential Transferee agrees in writing to be bound by the provisions of this Section 12.03 as if a Member before receiving such Confidential Information; provided, that in the case of clause (i), (ii), or (iii), such Member shall notify the Company and other Members of the proposed disclosure as far in advance of such disclosure as practicable (but in no event make any such disclosure before notifying the Company and other Members) and use reasonable efforts to ensure that any Confidential Information so disclosed is accorded confidential treatment satisfactory to the Company, when and if available.

(c)     The restrictions of Section 12.03(a) shall not apply to Confidential Information that: (i) is or becomes generally available to the public other than as a result of a disclosure by a Member in violation of this Agreement; (ii) is or has been independently developed or conceived by such Member without use of Confidential Information; or (iii) becomes available to such Member or any of its Representatives on a non-confidential basis from a source other than the Company, the other Members, or any of their respective Representatives, provided, that such source is not known by the receiving Member to be bound by a confidentiality agreement regarding the Company.

(d)     The obligations of each Member under this Section 12.03 shall survive for so long as such Member remains a Member, and for three years following the earlier of (i) termination, dissolution, liquidation, and winding up of the Company; (ii) the withdrawal of such Member from the Company; or (iii) such Member's Transfer of its Membership Interests; provided that with respect to Confidential Information that constitutes a trade secret under Applicable Law, the obligations of each Member under this Section 12.03 shall survive until, if ever, such Confidential Information loses its trade secret protection other than due, directly or indirectly, to an act or omission of the Member.

**Section 12.04 Notices.**  All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given:

(a)     when delivered by hand (with written confirmation of receipt);

(b)     when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); or

(c)     on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 12.04):

| **If to the Company:** | Fieldwood Energy I LLC<br>[COMPANY ADDRESS]<br>Attention: [TITLE OF OFFICER TO RECEIVE NOTICES] |
|---|---|

with a copy to:

(which shall not
constitute notice)

Hunton Andrews Kurth LLP
600 Travis Street
Suite 4200
Houston, TX 77002
Attention: G. Michael O'Leary

| **If to the Independent Director:** | [INDEPENDENT DIRECTOR ADDRESS]<br>Attention: [TITLE OF OFFICER TO RECEIVE NOTICES] |
|---|---|

with a copy to:

(which shall not
constitute notice)

Hunton Andrews Kurth LLP
600 Travis Street
Suite 4200
Houston, TX 77002
Attention: G. Michael O'Leary

| **If to a Member**: | To the Member's respective mailing address as set forth on the Members Schedule. |
|---|---|

**Section 12.05 Headings.** The headings in this Agreement are inserted for convenience or reference only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision of this Agreement.

**Section 12.06 Severability.** If any term or provision of this Agreement is held to be invalid, illegal, or unenforceable under Applicable Law in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Except as provided in Section 9.03(g), upon such determination that any term or other provision is invalid, illegal, or unenforceable, this Agreement shall be modified automatically so as to effect the original intent of the parties as closely as possible in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible, legal, and enforceable.

**Section 12.07 Entire Agreement.**  This Agreement, together with the Certificate of Formation and all related Exhibits and Schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

**Section 12.08 Successors and Assigns.**  Subject to the restrictions on Transfers set forth herein, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns.

**Section 12.09 No Third-Party Beneficiaries.**  Except (a) with respect to certain rights reserved to Apache as set forth in this Agreement, which shall be for the benefit of and enforceable by Apache, and (b) as provided in ARTICLE IX, which shall be for the benefit of and enforceable by Covered Persons as described therein, this Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, successors, and assigns) and nothing herein, express or implied, is intended to or shall confer upon any other Person, including any creditor of the Company, any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 12.10 Amendment.**  Subject to Sections 2.02 and 7.06(i), no provision of this Agreement may be amended or modified except by an instrument in writing executed by the Company and the Members holding a majority of the Membership Interests.  Any such written amendment or modification will be binding upon the Company and each Member. Notwithstanding the foregoing, amendments to the Members Schedule following any new issuance, redemption, repurchase, or Transfer of Membership Interests in accordance with this Agreement may be made by the Independent Director without the consent of or execution by the Members.

**Section 12.11 Waiver.**  No waiver by any party or Apache of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving or Apache, respectively.  No waiver by any party or Apache shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.  No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.  For the avoidance of doubt, nothing contained in this Section 12.11 shall diminish any of the explicit and implicit waivers described in this Agreement.

**Section 12.12 Governing Law.**  All issues and questions concerning the application, construction, validity, interpretation, and enforcement of this Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas.

**Section 12.13  Submission to Jurisdiction.**  The parties hereby agree that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the federal courts of the United States of America or the courts of the State of Texas, in each case located in Harris County and in Houston, Texas.  Each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding that is brought in any such court has been brought in an inconvenient forum.  Service of process, summons, notice, or other document by registered mail to the address set forth in Section 12.04 shall be effective service of process for any suit, action, or other proceeding brought in any such court.

**Section 12.14  Waiver of Jury Trial**.  EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**Section 12.15  Equitable Remedies.**  Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties or Apache, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto and Apache shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance, and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

**Section 12.16  Attorney's Fees.**  In the event that any party or third-party beneficiary hereto institutes any legal suit, action, or proceeding, including arbitration, against another party in respect of a matter arising out of or relating to this Agreement, the prevailing party or third-party beneficiary in the suit, action, or proceeding shall be entitled to receive, in addition to all other damages to which it may be entitled, the costs incurred by it in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

**Section 12.17  Remedies Cumulative.**  The rights and remedies under this Agreement are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise, except to the extent expressly provided in Section 9.02 to the contrary.

**Section 12.18 Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by email or other means of Electronic Transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

(SIGNATURE PAGE FOLLOWS)

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**The Company:**

FIELDWOOD ENERGY I LLC,
a Texas limited liability company


By:_____
[NAME]
[TITLE]


**The Initial Member:**

[_____]
a [_____]


By:_____
[NAME]
[TITLE]

**EXHIBIT A**

**FORM OF TRANSITION SERVICES AGREEMENT**

## SCHEDULE A

## MEMBERS SCHEDULE

| Member Name, and Address | Capital Contribution | Membership Interest |
|---|---|---|
| [_____]<br>[ADDRESS] | $[AMOUNT] | 100% |
| Total: | $[AMOUNT] | 100% |

**SCHEDULE B**

**INDEPENDENT DIRECTOR'S COMPENSATION**

[To be the market compensation needed to attract a qualified candidate to accept the position.]

**SCHEDULE C**

**SOLE MANAGER'S COMPENSATION**

[To be the market compensation needed to attract a qualified candidate to accept the position.]

**SCHEDULE D**

**ACCOUNTING PROCEDURES FOR APACHE OFFICERS AND EMPLOYEES**

I.      DIRECT CHARGES

1.      LABOR

A.      Salaries and wages, including incentive compensation programs as set forth in COPAS MFI-37 ("Chargeability of Incentive Compensation Programs"), for:

> (1)      Apache's field employees directly employed on-site in the conduct of plugging and abandonment and decommissioning activities with respect to the applicable Legacy Apache Property or the GOM Shelf Property, and
>
> (2)      Apache's employees providing First Level Supervision.

Charges for Apache's employees identified in Section I.1.A may be made based on the employee's actual salaries and wages, or in lieu thereof, a day rate representing Apache's average salaries and wages of the employee's specific job category.

Charges for personnel chargeable under this Section I.1.A who are foreign nationals shall not exceed comparable compensation paid to an equivalent U.S. employee pursuant to this Section I.1.

B.      Apache's cost of holiday, vacation, sickness, and disability benefits, and other customary allowances paid to employees whose salaries and wages are chargeable under Section I.1.A, excluding severance payments or other termination allowances. Such costs under this I.1.B may be charged on a "when and as-paid basis" or by "percentage assessment" on the amount of salaries and wages chargeable under Section I.1.A. If percentage assessment is used, the rate shall be based on Apache's cost experience.

C.      Expenditures or contributions made pursuant to assessments imposed by governmental authority that are applicable to costs chargeable under Sections I.1.A and B.

D.      Personal expenses of personnel whose salaries and wages are chargeable under Section I.1.A when the expenses are incurred in connection with directly chargeable activities.

E.      Apache's cost of established plans for employee benefits, as described in COPAS MFI-27 ("Employee Benefits Chargeable to Joint Operations and Subject to Percentage Limitation"), applicable to Apache's labor costs chargeable under Sections I.1.A and B based on Apache's actual cost not to exceed 40%.

F.     Award payments to employees, in accordance with COPAS MFI-49 ("Awards to Employees and Contractors") for personnel whose salaries and wages are chargeable under Section I.1.A.

## II. OVERHEAD

As compensation for costs not specifically identified as chargeable pursuant to Section I (Direct Charges), Apache shall be reimbursed in accordance with this Section II.

Functions included in the overhead rates regardless of whether performed by Apache, Apache's Affiliates or third parties and regardless of location, shall include, but not be limited to, costs and expenses of:

- design and drafting
- inventory costs
- procurement
- administration
- accounting and auditing
- human resources
- management
- supervision not directly charged under Section I.1 (Labor)
- in-house legal services
- taxation
- preparation and monitoring of permits and certifications; preparing regulatory reports; appearances before or meetings with governmental agencies or other authorities having jurisdiction over the applicable Legacy Apache Property or GOM Shelf Property, other than on-site inspections.

Overhead charges shall include the salaries or wages plus applicable payroll burdens, benefits, and personal expenses of personnel performing overhead functions, as well as office and other related expenses of overhead functions.

To compensate Apache for overhead costs incurred in connection with any particular plugging and abandonment or decommissioning project conducted on any applicable Legacy Apache Property or GOM Shelf Property, the following overhead rates shall be applied to those costs incurred in the performance of such plugging, abandonment, and decommissioning activities:

(1)    5% of total costs if such costs are less than $100,000; plus

(2)    3% of total costs in excess of $100,000 but less or equal to $1,000,000; plus

(3)    2% of total costs in excess of $1,000,000.

Total cost shall mean the gross cost of any one project

**Exhibit A2**

**FWE III Organizational Documents**

**[To Come]**

## Exhibit A3

**FWE IV Organizational Documents**

**[To Come]**

**Exhibit B**

**Required Disclosures Under Section 1129(a)(5)**

**Exhibit C**

**Schedule of Retained Causes of Action**

**Schedule of**
**Retained Causes of Action**

In accordance with and as provided by section 1123(b) of the Bankruptcy Code,[1] section 10.11 of the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1284] (together with all exhibits and schedules thereto and as may be amended, modified, and/or supplemented, the "**Plan**"), and the Confirmation Order, any and all Causes of Action of the Debtors (collectively, the "**Retained Causes of Action**"), whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated herein, and such rights to commence, pursue, prosecute, and/or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  Except to the extent that any of the Retained Causes of Action are assigned or transferred to the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement, the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, shall retain and may enforce all rights to commence, pursue, prosecute, and/or settle, as appropriate, each of the Retained Causes of Action.

As provided by section 10.11(a) of the Plan and the Confirmation Order and except as otherwise provided in the Credit Bid Purchase Agreement, the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

---

[1] Unless otherwise defined, capitalized terms used herein have the meanings ascribed to them in the Plan (as defined below).

No Entity may rely on the absence of a specific reference in the Confirmation Order, the Plan, herein, or the Disclosure Statement to any Cause of Action against it as any indication that Credit Bid Purchaser, the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, will not pursue any and all available Causes of Action against it.

As provided by section 10.11(b) of the Plan, notwithstanding section 10.11(a) of the Plan, on the Effective Date, Credit Bid Purchaser, the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, shall be deemed to have released all preference actions pursuant to section 547 of the Bankruptcy Code against the holders of Unsecured Trade Claims and General Unsecured Claims (in each case, solely in their capacity as holders of Unsecured Trade Claims and General Unsecured Claims, as applicable).

Unless any Causes of Action against an Entity are (i) expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order or (ii) sold, transferred, or assigned to the Credit Bid Purchaser or any of the NewCo Entities pursuant to the Credit Bid Purchase Agreement, the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Plan, herein, or the Confirmation Order, any Causes of Action that a Debtor may hold against any Entity shall vest in the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, or be sold, transferred, or assigned to the Credit Bid

Purchaser or any of the NewCo Entities pursuant to the Credit Bid Transaction. the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, shall have the exclusive right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court. For the avoidance of doubt, in the event of any inconsistency between the Credit Bid Purchase Agreement and this schedule, the Credit Bid Purchase Agreement shall govern in all respects.

Notwithstanding and without limiting the generality of section 10.11 of the Plan, all claims and Causes of Action including, but not limited to, the following, are expressly reserved by the Post-Effective Date Debtors, FWE I, or any FWE Additional Entity, as the case may be, (or shall otherwise be sold, transferred, or assigned to the Credit Bid Purchaser or any of the NewCo Entities pursuant to the Credit Bid Purchase Agreement, as applicable): (a) claims related to insurance policies; (b) claims related to tax obligations and refunds; (c) claims, defenses, cross-claims, and counterclaims related to litigation and possible litigation, whether based in tort, contract, equity, or otherwise, including any personal injury claims and wrongful death actions; (d) claims related to contracts and leases; (e) claims related to accounts receivable and accounts payable; (f) claims related to deposits/prepayments, adequate assurance postings, and other collateral postings; (g) claims related to liens; (h) related party claims; (i) claims related to oil and gas leases and related agreements; (j) claims related to the Apache Definitive Documents, the  Chevron Definitive Documents, or any Additional Predecessor Agreements; (k) claims, defenses, appeals, cross-

3

claims, and counterclaims related to any claims or actions asserted by any Governmental Authority, and (l) all other Causes of Action.

Notwithstanding and without limiting the generality of section 10.11 of the Plan, any Causes of Action or claims related to the following are expressly reserved by the Post-Effective Date Debtors, FWE I, FWE IV or any FWE Additional Entity, as the case may be (or shall otherwise be sold, transferred, or assigned to the Credit Bid Purchaser or any of the NewCo Entities pursuant to the Credit Bid Purchase Agreement, as applicable):

- *In re: Fieldwood Energy LLC, et. al Fieldwood Energy LLC, Fieldwood SD Offshore LLC & Fieldwood Energy Offshore LLC v. Sanare Energy Partners* (Adversary Case No. 20-03460);

- *In re: Fieldwood Energy LLC, et. al Fieldwood Energy LLC v. Valero Marketing and Supply Company* (Adversary Case No. 20-03497);

- *Fieldwood Energy LLC, et al. v. Atlantic Maritime Services, LLC* (Adversary Case No. 20-03476);

- *Fieldwood Energy LLC, et al. v. Renaissance Offshore LLC* (Adversary Case No. 20-03461);

- *Fieldwood Energy LLC, et al. Fieldwood Energy, LLC and GOM Shelf LLC v. Everest Reinsurance Company, Philadelphia Indemnity Insurance Company, HCC International Insurance Company Plc, Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC* (Adversary Case No. 20-03418); and

- *Emergency Motion to Compel BP Production & Exploration Inc. to Perform Pre-Petition Contracts* [Docket No. 792].

**Exhibit D**

**Schedule of Assumed Contracts**

**Fieldwood Energy, LLC, et al.**
**Prepared May 26, 2021**

## Schedule of Assumed Contracts

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the parties. To the extent the Debtors are able to identify the proper Debtor entity to the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent parties with a working interest associated with the associated leases.
[5] Cure estimate amounts reflect open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
Reference is hereby made to Section X.X of the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization (as amended, modified, or supplemented, including all exhibits and schedules thereto and as may be further amended, supplemented, or modified (the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Lease(s) [3] | Related Lease Parties [4] | Cure Estimate | Proposed Contract Treatment [5] | FWI | Credit Bid Purchaser | FW II | FW III |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1/1/2014 | Oilfield Services | MSA | 30 et Depth, Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 2 | 1/1/2014 | Oilfield Services | MSA | Abrado, Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 3 | 1/1/2014 | Oilfield Services | MSA | ACADIAN CONTRACTORS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 4 | 1/1/2014 | Oilfield Services | Master Ground Transportation Contract | ACME TRUCK LINE INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 5 | 1/25/2016 | Other | Master Services Contract - Quarterly Preventive Maintenance | ACS MAINTENANCE SOLUTIONS, INC. | Fieldwood Energy LLC | n.a. | n.a. | $4,373.66 | Assume and assign to Credit Bid Purchaser | | x | | |
| 6 | 11/7/2017 | Oilfield Services | MSA | ADAPT CONCEPTS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 7 | 9/6/2016 | Oilfield Services | MSA | ADS ENERGY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 8 | | Non-Oilfield Services | Perpetual Software License Agreement | Adobe Software | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 9 | | Other | processes direct deposits, garnishments and tax | ADP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 10 | | Oilfield Services | Fieldwood Energy LLC Purchase Order Terms and Conditions | Advanced Biocatalytics Corporation | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 11 | 1/1/2014 | Oilfield Services | MSA | Advanced Logistics, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 12 | 4/1/2014 / 4/1/2014 | Other Services Agreements | Resource Removal Agreement; Utilization Agreement; AER Utilization Agreement | AET Inc. | Fieldwood Energy LLC | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 13 | | Other Services Agreements | Consulting Agreement | AGILON TECHNOLOGIES INC | Fieldwood Energy LLC | n.a. | n.a. | $19,980.24 | Assume and assign to Credit Bid Purchaser | | x | | |
| 14 | 10/2016 | Non-Oilfield Services | Consulting Agreements | AGILON TECHNOLOGIES INC | Fieldwood Energy LLC | n.a. | n.a. | $19,980.24 | Assume and assign to Credit Bid Purchaser | | x | | |
| 15 | | Oilfield Services | MSA; Work Order For Quincy Compressor Model Q5S 220v | AIRE TECHNOLOGIES, COMPRESSED AIR SYSTEMS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 16 | 11/8/2018 | Oilfield Services | Technical Services Contract | AKER SOLUTIONS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 17 | 9/17/2020 | Oilfield Services | Fieldwood Energy LLC Purchase Order Terms and Conditions | Alamo Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 18 | 12/14/2010 | Other Misc. | by and between Fieldwood Energy LLC and Alliant Development Corp and Walter Oil and Gas Corporation | Alliant Development Corporation; Walter Oil & Gas Corporation | Fieldwood Energy LLC | SS 199 Lease G04232 | OASIS OFFSHORE INC, WALTER OIL & GAS CORPORATION, BREITON US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Merger | | | x | |
| 19 | 7/14/2010 | Non-Oilfield Services | Master Service Agreement | ALPHEUS DATA SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 20 | | Non-Oilfield Services | Master Services Agreements | ALPHEUS DATA SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 21 | 1/1/2014 | Oilfield Services | MSA | ALTEC, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 22 | 10/1/1997 | Lease of Platform Space | Lease of Platform Space - Amberjack Pipeline Company at GC-55 "A" Platform | AMBERJACK PIPELINE COMPANY AND SHELL OFFSHORE INC. | Fieldwood Energy Offshore LLC | GC-55 Lease G05989 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBEN OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ENI US OPERATING CO INC, MANTA OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, DEEPSTAR LLC INC & ENER | $0.00 | Assume and Allocate Pursuant to Divisive Merger | | | x | |
| 23 | 12/1/1997 | Facilities & Tech Agreements | Offshore Tie-In - Amberjack Pipeline Company at GC-55 "A" Platform | Amberjack Pipeline Company | Fieldwood Energy Offshore LLC | GC-55 Lease G05989 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBEN OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ENI US OPERATING CO INC, MANTA OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, DEEPSTAR LLC INC & ENER | $0.00 | Assume and Allocate Pursuant to Divisive Merger | | | x | |
| 24 | 3/27/2017 | Facilities & Tech Agreements | APPROVAL BY FIELDWOOD ENERGY OFFSHORE TO ASSIGN AND RECOGNIZE AMBERJACK PIPELINE COMPANY AND SHELL OFFSHORE INC. | AMBERJACK PIPELINE COMPANY AND SHELL OFFSHORE INC. | Fieldwood Energy Offshore LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Merger | | | x | |
| 25 | 11/1/2016 | Acquisition / PSA / Other Purchase or Sale Agreements | by and between Fieldwood Energy Offshore LLC and Amberjack Pipeline Company LLC; Joint pipeline | Amberjack Pipeline Company LLC | Fieldwood Energy Offshore LLC | GC 1665 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 26 | 3/27/2017 | Offshore Tie-In Agreement | by and between Amberjack Pipeline Company LLC; Consent of PPA | Amberjack Pipeline Company LLC | Fieldwood Energy Offshore LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 27 | 7/1/2009 | Marketing - Construction, Operations, Management, Ownership Agreements | Prospect Pad - Amberjack Pipeline, collectively, "the Producers", became owners in the Amberjack Pipeline, Chevron Pipe Line Company | Amberjack Pipeline, Chevron Pipe Line Company | Fieldwood Energy Offshore LLC | MC 110 Lease G16192 | MARUBEN OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 28 | 7/1/2009 | Marketing - Construction, Operations, Management, Ownership Agreements | Prospect Pad - Amberjack Pipeline, collectively, "the Producers", became owners in the Amberjack Pipeline, Chevron Pipe Line Company | Amberjack Pipeline, Chevron Pipe Line Company | Fieldwood Energy Offshore LLC | MC 110 Lease G16192 | MARUBEN OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 29 | 7/1/2009 | Marketing - Construction, Operations, Management, Ownership Agreements | Prospect Pad - Amberjack Pipeline, collectively, "the Producers", became owners in the Amberjack Pipeline, Chevron Pipe Line Company | Amberjack Pipeline, Chevron Pipe Line Company | Fieldwood Energy Offshore LLC | MC 110 Lease G16192 | MARUBEN OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 30 | | Non-Oilfield Services | Addendum to Existing Interior Landscaping Agreement effective 03/03/2020 | AMBIUS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 31 | 6/1/2020 | Marketing - Connection Agreement | Connection Agreement between Amtepark Pipeline and Anadarko, Shell and Ocean Energy, INC | Amtepark Pipeline and Anadarko, Shell and Ocean Energy, INC. | Fieldwood Energy Offshore LLC | n.a. | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 32 | 2/17/2014 | Oilfield Services | Master Services Agreement | Amega Inten Services, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 33 | 10/1/1995 | Joint Operating Agreements | JOINT OPERATING AGREEMENT BY AND BETWEEN AMERADA HESS CORPORATION AND VASTAR RESOURCES INC | AMERADA HESS CORPORATION, RWE VASTAR RESOURCES INC | Fieldwood Energy LLC | WD 121 Lease G19843, WD 122 Lease G13645 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 34 | 3/7/1996 | Joint Operating / Venture / Exploration Agreements | JOINT OPERATING AGREEMENT | AMERADA HESS CORPORATION | Fieldwood Energy LLC | WD 137 Lease G15341, EI 108 Lease G04291, EI 117 Lease G04293, EI 118 Lease G04253 | TARPMET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 35 | 6/26/2019 | Oilfield Services | Master and of Abd MSA to Affiliate | American Bureau of Shipping/ ABSG Consulting, Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 36 | 1/1/2014 | Oilfield Services | Master Ground Transportation Contract | AMERICAN EAGLE LOGISTICS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 37 | | Oilfield Services | | AMERICAN TANK CO, INC | Fieldwood Energy LLC | n.a. | n.a. | $3,664.77 | Assume and assign to Credit Bid Purchaser | | x | | |
| 38 | 3/25/2004 | Joint Development / Venture / Exploration Agreements | Amendment to Joint Venture Development Agreement, dated March 25, 2004 and Joint Development Agreement between Avadello's E&P Company LP | Avadello's E&P Company LP | Fieldwood Energy Offshore LLC | SS 208 Lease G01522, SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |

**Fieldwood Energy, LLC, et al.**
**Prepared May 26, 2021**

**Schedule of Assumed Contracts**

Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor records.
[2] The Debtors continue to review the contracts listed on this schedule, and the Debtors reserve all rights. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated Leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related Lease(s) Party represents the counter leaseholder, working interest owner, or otherwise party associated with the identified lease.
[5] Estimates listed on open pre-petition accounts payable balances. Cure estimates are subject to zero for completed/trade agreements.
[6] Reference is hereby made to the Plan for a definition of Assumed Contracts. In the event of any conflict between the terms of this schedule and the terms of the Plan (as it may be further amended, supplemented, or modified, the "Plan"), Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
[6] proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between the terms of the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Party(ies) [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW I | FW II | FW III | Credit Bid Purchaser | FW |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | 3/1/1996 | Unit Agreement and/or Unit Operating Agreement | UNIT DIPHAN PAD AGREEMENT DATED MARCH 1, 1996, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION AND SHELL OFFSHORE INC. | ANADARKO PETROLEUM CORPORATION AND SHELL OFFSHORE INC. | Fieldwood Energy Offshore LLC | GI 110 Lease G13343, GI 116 Lease G13844 | W & S OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 40 | 3/1/1996 | Unit Agreement and/or Unit Operating Agreement | UNIT AGREEMENT FOR OUTER CONTINENTAL SHELF EXPLORATION, DEVELOPMENT, AND PRODUCTION, OPERATIONS ON THE GRAND ISLE BLOCK 110 UNIT, DATED MARCH 1, 1996, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION AND SHELL OFFSHORE INC. UNIT NO.754398019 | ANADARKO PETROLEUM CORPORATION AND SHELL OFFSHORE INC. UNIT NO.754398019 | Fieldwood Energy Offshore LLC | GI 110 Lease G13343, GI 116 Lease G13844 | W & S OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 41 | 3/2/1996 | Letter Agreement - Other Land | LETTER AGREEMENT DATED MARCH 2, 1996, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, ET AL. AND ANADARKO PRODUCTION COMPANY, ET AL. | ANADARKO PETROLEUM CORPORATION, ET AL. AND ANADARKO PRODUCTION COMPANY, ET AL. | Fieldwood Energy Offshore LLC | GI 116 Lease G13844 | W & S OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 42 | 6/1/2000 | Marketing - Connection Agreement | RE CHANGE OF OPERATOR AGREEMENT, SHELL OFFSHORE, INC., AND OCEAN ENERGY, INC. | ANADARKO PETROLEUM CORPORATION, SHELL OFFSHORE, INC., AND OCEAN ENERGY, INC. | Fieldwood Energy Offshore LLC | GI 116 Lease G13844 | W & S OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 43 | 2/7/2004 | Joint Operating Agreement | Joint Operating Agreement by and between Anadarko Petroleum Corporation and Nabla Energy, Inc. dated effective February 1, 2004 and amended by: (a) First Amendment dated 9 Apr 04 (b) Second Amendment dated 23 Sep 12 (c) Third Amendment dated 1 Jan 13 | Anadarko US Offshore LLC | Fieldwood Energy LLC | GC 766 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 44 | 3/1/2004 | Dedication Agreements | Dedication of GC 282 to AWR Pipeline dated 1 Mar 2004 | AWR Pipeline Company | Fieldwood Energy LLC | GC 282 Lease G16727 | | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 45 | 6/28/2001 | Marketing - Connection Agreement | CONNECTION AGREEMENT INSTALLATION OF FACILITIES | AWR PIPELINE COMPANY - FOREST OIL CORPORATION | Fieldwood Energy LLC | SM 149 Lease G02092 | | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 46 | 5/2/1975 | Non-O&G Real Property Lease / Rental / Sublease Agreements | Sublease agreement between Fieldwood Energy and Apache Total Acres: 80300, B0300, B0200, L1.2, L15, L16, L17 and L18Square Footage: 133,686 SF | Apache | Fieldwood Energy LLC | Total Area: B0300, B0300, B0200, L1.2, L15, L16, L17 and L18 Square Footage: 133,685 SF | | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 47 | 6/1/2011 | Other Notices | Apache Notice Letter, dated June 2, 2011, non-consented EB 159/4 Apache | APACHE DEEPWATER LLC | Fieldwood SD Offshore LLC | EB 159/4 Lease G02846 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 48 | 6/15/2012 | Indemnity and Release Agreement | GAS GATHERING, SHELL PIPELINE COMPANY, INC AND FOREST OIL CORPORATION DATED SUCCESSOR-IN-INTEREST UNDER THE TIE-IN MEASUREMENT | GAS GATHERING, SHELL PIPELINE COMPANY, INC AND FOREST OIL CORPORATION | Fieldwood Energy LLC | SM 149 Lease G02092 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 49 | 6/15/2012 | Marketing - Connection Agreement | REQUEST FOR CONSENT TO ASSIGN NM HIATUS CONNECTION TO UNION OIL, AND FOREST INTEREST TO UNION OIL AND FOREST OIL AND EQUILON ENTERPRISES | APACHE AS SUCCESSOR IN INTEREST TO UNION OIL AND FOREST OIL AND EQUILON ENTERPRISES | Fieldwood Energy Offshore LLC | SM 149 Lease G02092 | | $0.00 | Assume and assign to Credit Bid Purchaser (pursuant to Plan and the Purchase Agreement on account of the Leases, and/or Properties owned in connection with the Excluded Assets retained by the Debtors through the Divisive Mergers on account of the Excluded Assets retained by the Debtors through the Divisive Mergers) | | | | x | |
| 50 | 9/20/2013 | Acquisition / PSA / Other Purchase or Sale Agreements | Owned property – pet annual bonus Originally acquired by Apache in 2011 acquisition. Included in Project Tobasco Agreement for $ in Total Area: 9.3 acres Square Footage: approx. 33,900 SF on approx 6 acres Address: 4871 NW Evergreen Thoroug Camichele LA | Apache Corporation | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser (pursuant to Plan and the Purchase Agreement on account of the Leases, and/or Properties owned in connection with the Excluded Assets retained by the Debtors through the Divisive Mergers on account of the Excluded Assets retained by the Debtors through the Divisive Mergers) | | | | x | |
| 51 | 9/20/2013 | Other | Sublease Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 52 | 12/2/2014 | Other | First Amendment to Sublease Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 53 | 9/7/2017 | Other | Second Amendment to Sublease Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 54 | 5/21/2018 | Other | Third Amendment to Sublease Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 55 | 9/20/2013 | Other | Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 56 | 9/30/2013 | Other | First Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 57 | 9/30/2013 | Other | Second Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 58 | 7/1/2016 | Other | Third Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 59 | 9/30/2013 | Other | Fourth Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 60 | 1/3/2018 | Other | Letter Agreement Amending Fourth Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 61 | 4/11/2018 | Other | Fifth Amendment to Decommissioning Agreement | APACHE CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 62 | 1/13/2003 | Farmout Agreement | Farmout Agreement between Apache Corporation & Hunt Petroleum | Apache Corporation & Hunt Petroleum (AEC), Inc. | Fieldwood Energy Offshore LLC | SM 43 Lease G13697 | SAMME ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 63 | 5/19/2003 | Confidentiality Agreements / AMI and Related Consents | AREA OF MUTUAL INTEREST AGREEMENT by and between FIELDWOOD ENERGY OFFSHORE LLC (SUCCESSOR TO SPINNAKER EXPLORATION COMPANY, L.L.C.) (SUCCESSOR TO SPINNAKER EXPLORATION COMPANY) L.L.C.) | APACHE CORPORATION (SUCCESSOR TO SPINNAKER EXPLORATION COMPANY, L.L.C.) | Fieldwood Energy Offshore LLC | SS 301 Lease G10794 | SAMME ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 64 | 8/1/2010 | Marketing - Service Agreement | SERVICE AGREEMENT (OUT CONTAINS) – BANK SERVICES BY AND BETWEEN APACHE CORPORATION AND ISLAND OPERATING COMPANY | APACHE CORPORATION AND ISLAND OPERATING SPECIALIST, LTD. | Fieldwood Energy LLC | SP 49 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 65 | 2/1/2013 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATION AND W & W GONA, LLC | APACHE CORPORATION AND W & W GONA, LLC | Fieldwood Energy LLC | SP 62 Lease G02534, VK 899 Lease G34808 | | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 66 | 2/1/2013 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATION AND ENERGY XXI GOM, LLC - AREA OF MUTUAL INTEREST AGREEMENT BETWEEN APACHE CORPORATION AS OPERATOR AND ENERGY XXI GOM LLC | APACHE CORPORATION AND ENERGY XXI GOM, LLC - AREA OF MUTUAL INTEREST AGREEMENT BETWEEN APACHE CORPORATION AS OPERATOR AND ENERGY XXI GOM LLC | Fieldwood Energy LLC | SP 62 Lease G02534, VK 899 Lease G34808 | | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 67 | 2/1/2013 | Lease of Platform Space | by and between Apache Corporation and Hunt Petroleum (AEC), Inc. | APACHE CORPORATION and Hunt Petroleum (AEC), Inc. | Fieldwood Energy LLC | SM 43 Lease G13697 | | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |
| 68 | 2/6/2000 | Facilities & Tie-In Agreements | TIE-IN, MEASUREMENT AND ALLOCATION AGREEMENT BETWEEN APACHE CORPORATION AND LOG OPERATING, INC. (Grand Bay Receiving Station) | APACHE CORPORATION AND LOG OPERATING, INC. (Grand Bay Receiving Station) | Fieldwood Energy LLC | MP 140 Lease G03199 | NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | | x |
| 69 | 8/20/2007 | Option Agreement | OPTION AGREEMENT BY AND BETWEEN APACHE CORPORATION AND MAGNUM HUNTER PRODUCTION, INC. | APACHE CORPORATION AND MAGNUM HUNTER PRODUCTION, INC. | Fieldwood Energy LLC | ST 287 Lease G24987 | RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| | | | | | | | | | | Applicable Entity | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW I | Credit Bid Purchaser | FW III | FW IV |
| 70 | 11/8/2012 | Operating Agreement - Other | Attached to and made part of that certain Participation Agreement dated November 8, 2012 by and between Apache Corporation and Monforte Exploration LLC | Apache Corporation and Monforte Exploration LLC | | SM 48 Lease 786 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 71 | 11/8/2012 | Property Participation & Exchange Agreements | Participation Agreement dated November 8, 2012 by and between Apache Corporation and Monforte Exploration LLC | Apache Corporation and Monforte Exploration LLC | | SM 48 Lease 786 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 72 | 2/1/1999 | Operating Agreement - Other | b/b Apache Corporation and PETSEC Energy Inc. | Apache Corporation and PETSEC Energy Inc. | | MP 5 Lease SL13890, MP 6 Lease SL03771, MP 6 Lease SL13580, MP 6 Lease SL13891, MP 7 Lease SL03773, MP 7 Lease SL13892, MP 91 Lease G14576 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 73 | 11/15/2007 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT BY AND BETWEEN APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION As Amended 10 January 2009" here as there is an amendment, dated 10 Jan 2009 that describes both the ORRI we pay to Magnum Hunter and the provenance by which Ridgewood never received an assignment in ST 287 as they went Non Consent in the Side Track, but they still retain their share of PA (25%) in the Tophole of the Producer on ST 287 (via the OA of the same date as the original PA at #382) | APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION | Fieldwood Energy LLC | ST 287 Lease G24987 | RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 74 | 11/15/2007 | Joint Operating Agreement | OPERATING AGREEMENT BY AN D BETWEEN APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION | APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION | | ST 287 Lease G24987 | RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 75 | 11/20/2021 | Facilities & Tie-In Agreements | AMENDMENT TO PROVIDE FOR FUEL GAS BETWEEN APACHE CORPORATION AND SARATOGAS RESULOURCES, INC. | APACHE CORPORATION AND SARATOGAS RESULOURCES, INC. | | MP 140 Lease G02193 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 76 | 3/15/2011 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATION AND STONE ENERGY OFFSHORE LLC | APACHE CORPORATION AND STONE ENERGY OFFSHORE LLC | Fieldwood Energy LLC | MP 314, 315 Lease G33693, MP 315 Lease G08467 | EPL OIL & GAS, LLC; HE&D OFFSHORE LP, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 77 | 9/17/2012 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT BY AND BETWEEN APACHE CORPORATION AND WALTER OIL & GAS CORPORATION | APACHE CORPORATION AND WALTER OIL & GAS CORPORATION | Fieldwood Energy LLC | GI 54 Lease G27173 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 78 | 7/1/2013 | Joint Operating Agreement | Joint Exploration Agreement dated 9/30/2013 but effective 7//1/2013 b/b Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood Energy LLC, and GOM Shelf; OA attached as Exhibit D | Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood Energy LLC, and GOM Shelf; OA attached as Exhibit D | Fieldwood Energy LLC; GOM Shelf LLC | WC 111 Lease 82, WC 130 Lease G12761, WC 144 Lease G01953, WC163 Lease G05299, WC 165 Lease 758, WC 172 Lease G01998, WC 225 Lease G00900, WC 269 Lease G13563, WC 290 Lease G04818, WC 295 Lease G24730, WC 300 Lease G15078, WC 310 Lease G17789, WC 401 Lease G07619, WD 34 Lease G03414, WD 38 Lease G22772, WD 41 Lease G01073, WD 42 Lease G16470, WD 67 Lease 179, WD 68 Lease 180, WD 69 Lease 181, WD 70 Lease 182, WD 71 Lease 838, WD 75 Lease G01085, WD 90 Lease G01089, WD 94 Lease 839, WD 95 Lease G01497, WD 96 Lease G01498, WD 103 Lease 840, WD 104 Lease 841, WD 105 Lease 842, WD 121 Lease G19843, WD 122 Lease G13645, WD 128 Lease G10883, WD 133 Lease G1106, EC 2 Lease 16475, WC 33 Lease 16473, EC 24 Lease G04098, EI 224 Lease G05504, EI 307 Lease G02110, MI 623 Lease G50000, MI 635 Lease G06043, ST 311 Lease G31418, VR 271 Lease G04800, WC 110 Lease 81, EI 10 Lease G23851, MC 21 Lease G28531, VK 823 Lease G10942, BA 491 Lease G06069, BA A47 Lease G03940, BA A 105 Lease G01757, BA A133 Lease G02665, BS 41 Lease G21142, BS 53 Lease 3770, EC 2 Lease SL18121, EC 172 Lease G17858, EC 222 Lease G02037, EC 261 Lease G00971, EC 264 Lease G01880, EC 265 Lease G00972, EC 278 Lease G00974, EC 328 Lease G10638, EC 334 Lease G02062, EC 335 Lease G02439, EC 9/14 Lease G01440, EC 37 Lease G25933, EC 71 Lease G13576, EI 10 Lease G23851, EI 105 Lease 797, EI 106 G17965, EI 107 Lease G15241, EI 108 Lease G03811, EI 118 Lease G15242, EI 119 Lease 49, EI 120 Lease 50, EI 125 Lease 51, EI 126 Lease 52, EI 136 Lease G03152, EI 156 Lease G16353, EI 158 Lease G01220, EI 173 Lease G13622, EI 174 Lease G03782, EI 175 Lease 438, EI 187 Lease G10736, EI 189 Lease 423, EI 196 Lease 802, EI 196 Lease G13821, EI 208 Lease 577, EI 211 Lease G05502, EI 212 Lease G05503, EI 217 Lease G00978, EI 224 Lease G05504, EI 227 Lease 809, EI 246 Lease 810, EI 255 Lease G01958, EI 266 Lease 811, EI 267 Lease 812, EI 269 Lease 813, EI 280 Lease G23876, EI 281 Lease G09591, EI 282 Lease G09592, EI 312 Lease G22679, EI 313 Lease G02608, EI 315 Lease G02112, EI 316 Lease | BISSO EXPLORATION &, FAIRFIELD ROYALTY CORP, HILCORP ENERGY 1 LP; BISSO EXPLORATION &, CALLON PETROLEUM OPERATING CO, W & T OFFSHORE INC; ANKOR ENERGY LLC; PEREGRINE OIL AND GAS II, LLC; Chevron USA Production Company, CNOOC MARKETING U.S.A. INC., COX OPERATING, L.L.C., SHELL TRADING (US) COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | x |
| 79 | 12/15/1999 | Letter Agreement - Other Land | Letter Agreement, dated December 15, 1999, between Apache Corporation, Chevron U.S.A. Production Company, Kelley Oil Corporation, Key Production Company, Mobil Exploration & Producing U.S. Inc. and Sabco Oil and Gas Corporation, regarding the OCS-G 4481 #A-23 Well, Main Pass Block 77, Main Pass Block 151 Field, Offshore. LA. Note: only have Key's executed cop | Apache Corporation, Chevron U.S.A. Production Company, Kelley Oil Corporation, Key Production Company, Mobil Exploration & Producing U.S. Inc. and Sabco Oil and Gas Corporation | Fieldwood Energy Offshore LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 80 | 2/1/2013 | Joint Development / Venture / Exploration Agreements | MP 296 EXXI Exploration Agreement\Exploration Agreement Apache & Energy XXI 2-1-2013 with Exhibits (less B) | APACHE CORPORATION, GOM SHELF LLC, ENERGY XXI GOM LLC | Fieldwood Energy LLC | MP 296 Lease G01673 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 81 | 4/23/2013 | Operating Agreement - Other | Amendment and Ratification of OA eff. 4/23/2013 b/b Apache Corporation, GOM Shelf, BDX Ecploration, BDX Group, Shoreline Offshore and Tenkay Resources | Apache Corporation, GOM Shelf, BDX Ecploration, BDX Group, Shoreline Offshore and Tenkay Resources | GOM Shelf LLC | SS 68 Lease G02917, SS 91 Lease G02919 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 82 | 6/30/2003 | Farmout Agreement | Amendment to Farmout Agreement dated 01-13-2003 Ratification of Joint Area Agreement dated 06-01-2003 SM 40 and SM 41 Between Apache Corporation, Hunt Petroleum AEC Inc and LLOG Exploration Offshore Inc. | Apache Corporation, Hunt Petroleum AEC Inc and LLOG Exploration Offshore Inc. | | SM 40 Lease G13607, SM 41 Lease G01192 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 83 | 11/7/2014 | Assignment of Oil & Gas Leasehold Interest(s) | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation | Apache Corporation; Apache Offshore Petroleum Limited Partnership; Apache Shelf Exploration LLC | Fieldwood Energy LLC | SS 259 Lease G05044 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 84 | 11/7/2014 | Assignment of Oil & Gas Leasehold Interest(s) | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation | Apache Corporation; Apache Offshore Petroleum Limited Partnership; Apache Shelf Exploration LLC | Fieldwood Energy LLC | ST 276 Lease G07780 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 85 | 11/7/2014 | Assignment of Oil & Gas Leasehold Interest(s) | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation | Apache Corporation; Apache Offshore Petroleum Limited Partnership; Apache Shelf Exploration LLC | Fieldwood Energy LLC | ST 296 Lease G12981 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 86 | 11/7/2014 | Assignment of Oil & Gas Leasehold Interest(s) | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation | Apache Corporation; Apache Offshore Petroleum Limited Partnership; Apache Shelf Exploration LLC | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 87 | 12/28/2013 | Well / Prospect Proposals | Letter proposing well B-19 MP 302 well by and between Fieldwood Energy LLC, GOM Shelf LLC, Apache Corporation and Apache Shelf Exploration LLC | Apache Corporation; Apache Shelf Exploration LLC | Fieldwood Energy LLC | MP 302 Lease G32264 | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 88 | 3/15/2013 | Joint Development / Venture / Exploration Agreements | Exploration Venture for portions of VR 271 SM 87 by and between Fieldwood Energy Offshore LLC, Apache Corporation and Pisces Energy LLC | Apache Corporation; Pisces Energy LLC | Fieldwood Energy Offshore LLC | VR 271; Lease G04800, SM 87 Lease G24870 | CASTEX OFFSHORE, INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 89 | 8/25/2011 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL | APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 90 | 5/1/2012 | Other Transportation Agreements | CONDENSATE TRANSPORT & SEPARATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL | APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| | | | | | | | | | | Applicable Entity | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW I | Credit Bid Purchaser | FW III | FW IV |
| 91 | 9/21/2007 | Farmout Agreement | FARMOUT AGREEMENT b/b APACHE CORPORATIONand SENECA RESOURCES CORPORATION | APACHE CORPORATIONand SENECA RESOURCES CORPORATION | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 92 | 12/14/2009 | OPTION AGREEMENT | OPTION AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL | APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 93 | 2/1/2010 | Farmout Agreement | FARMOUT AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL | APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 94 | 9/15/1978 | Joint Operating Agreement | Amendment of Operating Agreement, dated September 15, 1978, between Amoco Production Company, Mobil Oil Corporation, and 'Union Oil Company of California. | Apache Deepwater | Fieldwood SD Offshore LLC | EB 160 Lease G02647, EB 161 Lease G02648 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 95 | 9/1/1975 | Joint Operating Agreement | First Amendment to Operating. Agreements, dated effective September 1, 1975, between Mobil Oil Corporation, Amoco Production Company, and 'Union Oil Company of California. | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645, EB 159 Lease G02646, EB 160 Lease G02647, EB 161 Lease G02648 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 96 | 11/13/1978 | Joint Operating Agreement | Second Amendment to Operating Agreements, dated effective; November 13, 1978,.between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of California | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 97 | 11/13/1978 | Joint Operating Agreement | Fourth Amendment to Operating Agreements, dated effective; November 13, 1978,.between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of California | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 98 | 1/1/1980 | Joint Operating Agreement | Third Amendment to Operating Agreements, dated effective January 1, 1980, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company bf Califomia. | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 99 | 4/22/1980 | Joint Operating Agreement | Amendment to Operating Agreement, dated April 22, 1980, between Union Oil Company, of California and,Amoco;Production Company. | Apache Deepwater | Fieldwood SD Offshore LLC | EB 159 Lease G02646, EB 160 Lease G02647 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 100 | 7/1/1986 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective July 1, 1986,, between Amoco Production Company; Union Oil Company of California, and Mobil ProducingTexas & New Mexico, Inc. | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645, EB 159 Lease G02646, EB 160 Lease G02647, EB 161 Lease G02648 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 101 | 1/1/2001 | Joint Operating Agreement | Fifth Amendment to Operating Agreements, dated effective January 1,, 2001, between Union Oil Company of Califomia and 'Vastar Offshore,Inc | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 102 | 1/15/2001 | Joint Operating Agreement | Amendment to Operating Agreement,, dated January 15, .2001, between Union Oil Company, Amoco Production Company, and Vastar Offshore,'Inc | Apache Deepwater | Fieldwood SD Offshore LLC | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 103 | 7/1/2013 | Assignment of Oil & Gas Leasehold Interest(s) | Stipulates the interest held by Apache Offshore Petroleum Limited Partnership, Fieldwood Energy LLC and Third parties | Apache Offshore Petroleum Limited Partnership | Fieldwood Energy LLC | PN 969 G05953 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 104 | 1/1/1993 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement eff. 1-1-93 | Apache Shelf Exploration | Fieldwood Energy LLC | VK 203 Lease G07890, VK 204 Lease G04921 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 105 | 5/2/2014 | Letter Agreement - Other Land | Set forth the agreement between Apache Shelf and Fieldwood for the drilling of the EI 126 A-5 well | Apache Shelf Exploration LLC | Fieldwood Energy LLC | EI 126 Lease 52 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 106 | 7/1/2013 | Joint Operating Agreement | JOperating Agreement covering OCS-G 32264 MP 302 | Apache Shelf Exploration LLC | Fieldwood Energy LLC | MP 302 Lease G32264 | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 107 | 12/4/2013 | Other Lease / Rental Agreement | by and between Fieldwood Energy LLC, GOM Shelf LLC and Apache Shelf Exploration LLC - Amends certain Slot Rental Agreement dated 12/26/2012 | Apache Shelf Exploration LLC | Fieldwood Energy LLC | MP 302 Lease G32264 | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 108 | 3/13/2014 | Elections | by and between Fieldwood Energy LLC, GOM Shelf LLC and Apache Shelf Exploration LLC: Proposal to run casing and election by | Apache Shelf Exploration LLC | Fieldwood Energy LLC | MP 302 Lease G32264 | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 109 | 4/28/2014 | Marketing - PHA | PHA MP311B-MP302B19 by and between Fieldwood and APACHE SHELF EXPLORATION LLC and APACHE SHELF EXPLORATION LLC | APACHE SHELF EXPLORATION LLC | Fieldwood Energy LLC | MP 302 Lease G32264 | APACHE SHELF EXPLORATION LLC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 110 | 7/1/2013 | Operating Agreement - Other | EI 136 Recorded Memorandum of Operating Agreement and Financing Statement | Apache Shelf Exploration LLC | Fieldwood Energy LLC | EI 136 Lease G03152 | APACHE SHELF EXPLORATION LLC, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 111 | 7/1/2013 | Joint Operating Agreement | EI 136 Operating Agreement covering depths below 19,135' SSTVD | Apache Shelf Exploration LLC | Fieldwood Energy LLC | EI 136 Lease G03152 | APACHE SHELF EXPLORATION LLC, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 112 | 8/19/2019 | Preferential Rights Agreement | Negative Pref election associated with Apache Shelf to Juneuau by and between Apache Shelf Exploration LLC Fieldwood Energy Offshore LLC & GOM Shelf LLC | Apache Shelf Exploration LLC Fieldwood Energy Offshore LLC & GOM Shelf LLC | Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 113 | 1/1/1989 | Operating Agreement - Other | WD/GI UOA - CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | Apache Shelf Exploration LLC, Atlantic Richfield Company, BP Exploration & Production Inc., Conoco Inc., Fieldwood Energy Offshore LLC, GOM Shelf LLC, OXY USA Inc., Texaco Producing Inc. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | GI 32 Lease 174, GI 42 Lease 131, GI 43 Lease 175, GI 44 Lease 176, WD 67 Lease 179, WD 68 Lease 180, WD 69 Lease 181, WD 70 Lease 182, WD 71 Lease 838 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 114 | 2/22/2019 | Joint Development / Venture / Exploration Agreements | APA - EXXI MP 295 Side Ltr Agrmnt dtd 2-22-13 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 115 | 2/1/2013 | Operating Agreement - Other | b/b Apache Shelf Exploration LLC, Fieldwood Energy LLC and Energy XXI GOM, LLC as amended | Apache Shelf Exploration LLC, Fieldwood Energy LLC and Energy XXI GOM, LLC as amended | Fieldwood Energy LLC | MP 145 G35283, MP 272 Lease G34865, MP 294 N/2 Lease G34394, MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 116 | 5/1/1995 | Unit Agreement and/or Unit Operating Agreement | Amendment-to Unit Operating Agreement, dated effective May 1, 1995, by and between Conoco Inc.,Vastar Resources, Inc., Texaco Exploration and Production Inc. and Oxy USA Inc. | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 117 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | Apache Shelf Exploration LLC; BP Exploration & Production Inc.; Fieldwood Energy Offshore LLC; GOM Shelf LLC | Fieldwood Energy Offshore LLC; GOM Shelf LLC | SS 199 Lease G12358 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 118 | 1/1/1989 | Operating Agreement - Other | GI CATCO UOA - CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL Unit No. 891002021 | Apache Shelf Exploration LLC; BP Exploration & Production Inc.; Fieldwood Energy Offshore LLC; GOM Shelf LLC | Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 39 Lease 126, GI 39 Lease 127, GI 40 Lease 128, GI 41 Lease 129, GI 41 Lease 130, GI 46 Lease 132, GI 47 Lease 133, GI 48 Lease 134, GI 52 Lease 177 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 119 | 1/21/1966 | Unit Agreement and/or Unit Operating Agreement | Unit No. 891008784 - SS 271 | Apache Shelf Exploration LLC; Bureau of Ocean Energy Management; Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Hillcrest GOM, Inc.; Talos ERT LLC; W & T Energy VI, LLC; W & T Offshore, Inc. | Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SS 247 Lease G01028, SS 248 Lease G01029, SS 249 Lease G01030, SS 270 Lease G01037, SS 271 Lease G01038 | TALOS ERT LLC, W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 120 | 11/21/1955 | Unit Agreement and/or Unit Operating Agreement | West Delta-Grand Isle Unit Agreement, dated November 21,1955, between Continental Oil Company, as unit operator, and The Atlantic Refining Company, Tidewater Associated Oil Company and.Cities Service Production Company, as non-operators, as amended ; Unit No. 891002454 | Apache Shelf Exploratoin LLC; BP Exploration & Production Inc.; Fieldwood Energy Offshore LLC; GOM Shelf | Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 32 Lease 174, GI 42 Lease 131, GI 43 Lease 175, GI 44 Lease 176, WD 67 Lease 179, WD 68 Lease 180, WD 69 Lease 181, WD 70 Lease 182, WD 71 Lease 838 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 121 | 4/1/2014 | Farmout Agreement | Farmout Agreement: OCS-G 13576; East Cameron Block 71 (Limited to the NE/4 of the block and a Contract Area created to include the Farmout Area and EC 58 S/2) | Apache Shelf LLC; CASTEX OFFSHORE INC | Fieldwood Energy LLC | EC 71; Lease G13576 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 122 | | Marketing - Construction, Operations, Management, Ownership Agreements | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and | Apache, Fieldwood Energy LLC, and Bonito Pipeline Owners | Fieldwood Energy LLC | EI 315 Lease G02112, EI 316 Lease G05040, EI 330 Lease G02115, EI 281 Lease G09591, EI 282 Lease G09592, EI 329 Lease G02912, EI 337 Lease G03332, EI 354 Lease G10752, EI 353 Lease G03783, EI 361 Lease G02324 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 123 | 11/2/2010 | Marketing - Construction, Operations, Management, Ownership Agreements | The Operator is responsible for the entity's operations, accounting, and reporting detailed in the Operating Agreement, including pipeline operation, repair, and maintenance, as well as admintistative functions such as paying expenses and maintaing records by and between Fieldwood Energy LLC and and | Apache, Fieldwood Energy LLC, and Bonito Pipeline Owners | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 124 | 11/2/2010 | Marketing - Construction, Operations, Management, Ownership Agreements | The Operator is responsible for the entity's operations, accounting, and reporting detailed in the Operating Agreement, including pipeline operation, repair, and maintenance, as well as admintistative functios such as paying expenses and maintaing records by and between Fieldwood Energy LLC and and | Apache, Fieldwood Energy LLC, and Bonito Pipeline Owners | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 125 | 2/1/2013 | Data Agreement | Data Agreement effective 2-1-2013 by and between Fieldwood Energy LLC, GOM Shelf LLC, Apache Corporation and EXXI | APACHE, GOM SHELF, EXXI, FIELDWOOD | Fieldwood Energy LLC; GOM Shelf LLC | SP 62 Lease G01294, VK 899 Lease G34408 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 126 | 3/5/2012 | Withdrawal Agreement | Apache withdraws and assigns its interst in the HI 176 Platform A and Pipeline Segment 8569 to Hoactzin and creates an escrow in the amount of $594K for abandonment. | Apache, Hoactzin | | HI 176 Lease G06164 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy LLC, et al.**
Prepared May 26, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The "Debtor Parties" column reflects the Debtors party to the applicable agreement(s) based on the schedules below the actual agreements. To the extent the Debtors are able to identify the proper Debtor party for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties are the non-Debtor counterparties to the associated leases.
[5] The proposed treatment of the contracts are subject to change. Cure estimates were adjusted to zero for completed/stale agreements.
[6] Cure estimates are subject to change. In the event Fieldwood files the Fourth Amended Joint Chapter 11 Plan (the "Plan"), Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Parties [2] | Associated Lease [3] | Related Lease Parties [4] | Proposed Contract Treatment [5] | Cure Estimate [6] |
|---|---|---|---|---|---|---|---|---|---|
| 127 | 2/22/2015 | Vendors | by and between Fieldwood Energy LLC, Apache Deep Exploration LLC / Halliburton Exploration N.L.P. and GOM Offshore Exploration LLC | Apache/Deepwater Exploration LLC / Halliburton Exploration N.L.P. | A-PORT, LLC | OS 115 Lease G34046 | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 128 | | Oilfield Services | OTHER SERVICES - 546937_Master Services Agreement dated effective 08/01/2016 | APPSMITHS VENTURES LP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 129 | | Oilfield Services | 777480_Master_Service_Contract Effective, 3-25-2017 | AQUEOS CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 130 | | Oilfield Services | 700020_Master_Service_Contract Effective, 11-1-2013 | ARCHROCK PARTNERS OPERATING LP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 131 | | Oilfield Services | Contract Compression and Aftermarket Services | ARCHROCK SERVICES, LP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 132 | | Oilfield Services | Contract Compression and Aftermarket Services | ARCHROCK SERVICES, LP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 133 | 1/1/1982 | Joint Operating Agreement | OPERATING AGREEMENT dated SOHIO PETROLEUM COMPANY AND EXXON CORPORATION | Arena Energy LP, Dynamic Offshore Resources NS, LLC, Fieldwood Energy LLC Fieldwood Energy Offshore LLC | Fieldwood Energy LLC | E1 313 Lease G24912 | ABEMA ENERGY LP, YANA EXPLORATION COMPANY LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 134 | 11/7/2017 | Marketing - PHA | Enhancement and modification to lease separator MBD 40/20 at HI 443-B Natural Gas Scrubber | Fieldwood Energy Offshore LLC, Markham Gathering, L.L.C. | Fieldwood Energy LLC | HI A547 | n.a. | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 135 | 4/1/1977 | Unit Agreement and/or Unit Operating Agreement | UNIT OPERATING AGREEMENT EI 330 UNIT BETWEEN ENERGY XXI GOM LLC, GOM Shelf LLC, Renaissance Offshore, LLC | Arena Energy Offshore, LP, Arena Energy, LP, Energy XXI GOM LLC, GOM Shelf LLC, Renaissance Offshore, LLC | Fieldwood Energy LLC | EI 330 Lease G02115 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE LLC, Arena, YANA EXPLORATION COMPANY LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 136 | 4/1/1977 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement, JD Sand, Reservoir A, Eugene Island Block 330 Field Unit Number 8910/6642, dated effective April 1 1977 naming Fieldwood Oil & Gas, Inc. as Operator and Texaco Exploration | Arena Energy Offshore, LP, Arena Energy, LP, Energy XXI GOM LLC, GOM Shelf LLC, Renaissance Offshore, LLC | Fieldwood Energy LLC | EI 330 Lease G02115, EI 337 Lease G02332 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE LLC, Arena, YANA EXPLORATION COMPANY LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 137 | 4/1/2016 | Marketing - PHA | Amendment to Production Handling Service Agreement dated May 8, 2013 | Arena Energy, Lp | Fieldwood Energy LLC | HI A547 | n.a. | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 138 | 8/8/2016 | Electors | In connection with Fieldwood Energy LLC and Arena Energy, LP (09 Tower NW) 08/23/2016 Fieldwood Operating | Arena Energy, LP Arena Offshore, LP | Fieldwood Energy LLC | PL 25 Lease G14535 | ABEMA OFFSHORE LP | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 139 | 7/25/2016 | Farmout Agreement | Letter Agreement dated 07/25/2016, Readjustment to Arena and FGA lands | Arena Energy, LP Arena Offshore, LP | Fieldwood Energy LLC | PL 25 Lease G14535 | ABEMA OFFSHORE LP | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 140 | 8/1/2012 | Throughput Dedication Pipeline Lease Agreement | Pipeline Lease and Throughput Capacity to Eugene Island Pipeline | Arena Energy, LP | Fieldwood Energy LLC | EI 330 Number 5 Pipeline Lease G05140, EI 316, EI 335 Bitumen Pipeline Lease G02115 | ABEMA ENERGY LP, YANA EXPLORATION COMPANY LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 141 | | Oilfield Services | PSA Contracts | ARGO ROLLY EDGE LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 142 | | Oilfield Services | RV100B_PO Terms & Conditions dated effective 10/14/2015 | ARROW MAGNOLIA INTERNATIONAL, INC. | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 143 | | Oilfield Services | Consulting Agreement | Ascenx Inc. | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 144 | | Oilfield Services | 509932_Master_Service_Contract Effective, 12-3-2017 | ASRC ENERGY SERVICES OMEGA LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 145 | 12/31/2019 | Non-Oilfield Services | License and System Service Agreement | ASSAI SOFTWARE SERVICES BV | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 146 | 12/31/2019 | Non-Oilfield Services | License and System Service Agreement | ASSAI SOFTWARE SERVICES BV | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 147 | | Non-Oilfield Services | License and System Services Agreement dated effective December 31 2019 | ASSAI SOFTWARE SERVICES BV | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $11,347.31 |
| 148 | | Non-Oilfield Services | ATML Dedicated Ethernet 7630403 | AT & T CORP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $11,347.31 |
| 149 | | Non-Oilfield Services | ATML Mobile Business Agreement 01/15/2017 | AT&T MOBILITY | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $10/142 |
| 150 | | Non-Oilfield Services | Master Services Contract - Offshore Inspection Services (shell) | ATHENA CONSULTING INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $14,234.87 |
| 151 | | Oilfield Services | 504333_Master Services Agreement dated effective 11/01/2013 | ATHENA CONSULTING INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 152 | 9/10/1991 | Letter Agreement - Other Land | LETTER AGREEMENT BY AND BETWEEN ATLANTIC RICHFIELD COMPANY AND EXXON CORPORATION | ATLANTIC RICHFIELD COMPANY AND EXXON CORPORATION | Fieldwood Energy LLC | EI 87 Lease 20 | EI 313 Lease G20006 | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 153 | 7/1/1982 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN ATLANTIC RICHFIELD COMPANY AND MARESHI OIL CORPORATION | ATLANTIC RICHFIELD COMPANY AND MARESHI OIL CORPORATION | Fieldwood Energy LLC | EI 87 Lease 20 | EI 313 Lease G20006 | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 154 | 1/1/1989 | Operating Agreement - Other Land | OPERATING AGREEMENT BY AND BETWEEN GEOGOSTO OPERATIONS, Texaco Producing Inc., Canadianoxy Offshore | Atlantic Richfield Company, Texaco Producing Inc., Canadianoxy Offshore Production Inc | Fieldwood Energy LLC | EI 206 Lease G01522 | ST 57 Lease 20 | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 155 | 9/13/1991 | Letter Agreement - Other Land | Letter Agreement by and between Atlantic Richfield Company and Samedan Oil Corporation | Atlantic Richfield Company and Samedan Oil Corporation | Fieldwood Energy LLC | ST 53 Lease G04030, ST 67 Lease 20 | EPL OIL & GAS, LLC | Assume and assign to Credit Bid Purchaser | $0.00 |
| 156 | 7/1/1992 | Well Completion Agreement | Well Completion Agreement by and between Atlantic Richfield Company and Samedan Oil Corporation | Atlantic Richfield Company and Samedan Oil Corporation | Fieldwood Energy LLC | ST 67/86 Lease 20 | EPL OIL & GAS, LLC | Assume and assign to Credit Bid Purchaser | $0.00 |
| 157 | | Non-Oilfield Services | Master Services Contract Effective 05/16/17 | Automatic Access Gates LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 158 | 6/30/1989 | Joint Development Operating Venture / Exploration Agreement | Private Energy Corporation and Eugene Island 305 L.L.C | Avara Energy Corporation and Eugene Island 305 L.L.C. | Fieldwood Energy LLC | E1 313 Lease G20006 | E1 313 Lease G20006 | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 159 | 6/30/1989 | Operating Agreement - Other Land | by and between Avara Energy Corporation and Texaco Exploration and Production Inc. | Avara Energy Corporation and Texaco Exploration and Production Inc | Fieldwood Energy LLC | E1 313 Lease G20006 | | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 160 | | Oilfield Services | Software Consulting Agreement | AXIO GLOBAL, INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 161 | | Labor | 514017_Master Services Agreement dated effective 01/30/2014 | B & J MARITIN INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 162 | | Oilfield Services | 510089_Master Services Agreement dated effective 06/12/2015 | BAKER HUGHES OILFIELD OPERATIONS INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 163 | | Oilfield Services | Specialty Coating Company used in the GOM to Protect the Interior Structure of Pipelines | Balcones Minerals Industries, Inc | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 164 | 9/19/1979 | Joint Operating Agreement | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 19, 1979, BY AND BETWEEN AMOCO PRODUCTION CO. AS OPERATOR AND EXXON AS EASTERN UNIT, SEADRILL, SHANDON CALIFORNIA DEVELOPMENT CORPORATION, NON-OPERATOR | Bandon Oil and Gas, LP, Fieldwood Energy LLC, Fieldwood Energy Offshore, LLC | Fieldwood Energy LLC | HI A265 Lease G02750, HI A376 Lease G02794 | TAMPNET, INC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 165 | | Oilfield Services | 513358_Master Services Agreement dated effective 07/15/2014 | BARRACUDA OIL TOOLS, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 166 | | Oilfield Services | 700972_Master Services Agreement effective 04/14/2015 | BAYWATER DRILLING LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 167 | | Oilfield Services | 533336_Master Services Agreement effective 07/01/2014 | BEACON RENTAL & SUPPLY INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 168 | | Oilfield Services | 509651_Master Services Agreement effective 05/15/2014 | BECKEL RENTAL TOOLS, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 169 | | Oilfield Services | 586900_Master Services Agreement dated effective 07/15/2014 | BEDROCK PETROLEUM CONSULTANTS LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 170 | | Oilfield Services | 777963_Master Services Contract Effective 05/08/2019 | BELZONA HOUSTON / OFFSHORE | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 171 | | Oilfield Services | Specialty Coating Company used in the GOM to Protect the Interior Structure of Pipelines Backing Up Pop-outs and Coilers | BELZONA OFFSHORE | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 172 | | Oilfield Services | 777788_Master Services Agreement effective 05/16/2019 | BENTON GEOSCIENCES, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 173 | | Oilfield Services | Partnership Lab Analysis | BERGER GEOSCIENCES, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 174 | 4/1/2005 | Ownership & Partnership Agreement | Partnership by and between BHP Billiton Petroleum (Deepwater) Inc, Noble Energy and Chevron USA in certain operations across GC 238 and GC 282 | BHP Billiton Petroleum (Deepwater) Inc, Noble Energy and Chevron USA | Fieldwood Energy LLC | GC 282 Lease G16727, GC 238 Lease G26352 | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |

Case 20-33948   Document 1394-1   Filed in TXSB on 05/26/21   Page 83 of 678

**Fieldwood Energy, LLC, et al.**
Prepared May 25, 2021

**Schedule of Assumed Contracts**

Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule and reserve all rights. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are currently associated with the contracts.
[4] Retained lease parties represent the remaining counterparties to the associated leases.
[5] If a contract constitutes an executory contract or unexpired lease, it will be assumed or assumed and assigned to the extent such contract relates to the Assumed Properties.

The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Retained Lease Parties [4] | Cure Estimate | Proposed Contract Treatment [5] |
|---|---|---|---|---|---|---|---|---|---|
| 176 | 8/1/2012 | Property Participation & Exchange Agreements | Lease Exchange Agreement between BHP Billiton Petroleum (Deepwater) Inc. and Marathon Oil Company dated and Effective 15 June 2012 | BHP Billiton Petroleum (Deepwater) Inc. and Marathon Oil Company | Fieldwood Energy LLC | MC 902, GC Lease G24133 | LLOG TX.RACCA, ANADARKO US OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 177 | 3/1/1997 | Joint Operating Agreement | Joint Operating Agreement by and between BHP Petroleum (Deepwater) Inc. and Chevron USA as amended by First Amendment dated 18 July 2001 | BHP Billiton Petroleum Deepwater; Elpaso; Chevron USA E&P; USA; Murphy E&P USA | Fieldwood Energy LLC | GC 788 Lease G21817, GC 875 Lease G21811 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 178 | 7/1/2009 | Joint Operating Agreement | Joint Operating Agreement by and between Nobel Energy, Inc.; Marathon Oil Company; Statoil Gulf of Mexico LLC | BHP Billiton Petroleum Deepwater; NOBLE ENERGY INC; NOBLE HYDRO E&P; AMERICAS AS INC. AND DAVIS OFFSHORE, L.P. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | GC 236 Lease G20932 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 179 | 3/1/2004 | Joint Operating Agreement | Joint Operating Agreement by and between BHP Billiton Petroleum (Deepwater) Inc. and Chevron USA Inc. dated 1 Mar 07 | BHP; O/A and Noble setting dispute re OH and Pink Pees on Boris and at Typhoon platform dated 29 June 06 | Fieldwood Energy LLC | GC 282 Lease G16727 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 180 | 5/1/2005 | Letter Agreement - Other Land | Letter Agreement re BHP O/A and Noble setting dispute re OH and Pink Pees on Boris and at Typhoon platform dated 29 June 06 | | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 181 | | Oilfield Services | 530911_Rental Equipment dated effective 10/15/2018 | BICO DRILLING TOOLS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 182 | 3/13/2014 | Operating Agreement - Other | Pursuant to change in operatorship per that PSA btw SandRidge and Black Elk Energy Offshore Operations, LLC | Black Elk Energy Offshore Operations, LLC | Fieldwood Energy LLC | ST 53 Lease G04000 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 183 | | Oilfield Services | Cement Charts Provider | BLACKHAWK DATACOM | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 184 | | Oilfield Services | Cement Heads, Cementing Subs, Direct Tool | BLACKHAWK SPECIALTY TOOLS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 185 | | Oilfield Services | 548171-Expanded Drilling Contract dated 12/3/2018 | BLAKE INTERNATIONAL RIGS, LLC | Fieldwood Energy LLC | MP 104 Lease G01962 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 186 | | Oilfield Services | 544108_Master Service Agreement dated effective 11/1/2013 | BLANCHARD CONTRACTORS, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 187 | 10/6/2017 | Non-Oilfield Services | 531544_Master Service Agreement dated effective 09/25/2015 | BLUE LATITUDES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 188 | | Non-Oilfield Services | Perpetual Software License Agreement | BLUE TIDE GEOGRAPHICS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 189 | | Oilfield Services | 700968_Master_Service_Contract Effective_7-22-2015 | BOBCAT HETTERING CALIBRATION SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 190 | | Oilfield Services | Pipeline Isolation Tools | BOLT TECH MANNINGS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 191 | 9/5/2000 | Transfer Agreement & Notices | Transfer of Ownership and Title Agreement, made and entered into August 1, 2000, by and between Bonray Inc.; Energen Resources Corporation; Enervest; Gulfstar Energy Inc.; Liberty Energy... | Bonray Inc.; Energen Resources Corporation; Forenergy Inc; Gardner Offshore Corporation; Gulfstar Energy, Inc.; Gulf Coast Partners Energy, Inc.; Liberty Energy | Fieldwood Energy Offshore LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 192 | | Oilfield Services | 564217_Master Service Agreement dated effective 01/14/2014 | BOOTS & COOTS | Fieldwood Energy LLC | WC 341 Lease G00810, WC 35 Lease G01963, WC 66 Lease G00945, WC 68 Lease G00825, VYC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 193 | | Oilfield Services | 564310_Master Services Agreement dated effective 01/16/2014 | BOSARGE BOATS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 194 | | Oilfield Services | 777587_Master Service Agreement dated effective 4-6-2017 | BOSARGE DIVING INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 195 | | Oilfield Services | 777587_Master Service Agreement dated effective 09/12/2017 | BOSCO OILFIELD SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 196 | 6/13/2016 | Non-Oilfield Services | Cloud Based Document Sharing Site | Box.com | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 197 | 4/1/2004 | Joint Operating Agreement | AMENDMENT OF JOINT OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY | BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION | Fieldwood Energy Offshore LLC | WC 341 Lease G00810, WC 35 Lease G01963, WC 66 Lease G00945, WC 68 Lease G00825, VYC | EI 605 Lease G00983 | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 198 | 2/1/2002 | Operating Agreement - Other | Company Agreement, dated effective December 31, 2007, between BP America Production Company, Chevron USA Inc, and Marathon Oil Company | BP America Production Company, Chevron USA Inc, and GOM Shelf LLC | Fieldwood Energy Offshore LLC | W2 661 Lease 161 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser |
| 199 | 9/26/2002 | Marketing - Other | BP EXPLORATION & OIL INC. | BP AMERICA PRODUCTION COMPANY; OAS TRUNKLINE GAS COMPANY LLC | Fieldwood Energy Offshore LLC | EI 605 Lease G00983 | APACHE (DEEPWATER) LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE, INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 200 | 10/3/2019 | Letter Agreement - Other Land | BP and FW dated 3 Oct 2019 | BP and FW | Fieldwood Energy LLC | MC 519 Lease G27278 | BP EXPLORATION PRODUCTION; HOUSTON ENERGY DEEPWATER VENTURES II; RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 201 | 1/1/2012 | Other Lease / Rental Agreement | Lease Rental and Minimum Royalty Payment Agreement by and between BP Exploration and Production, Inc; Marathon Oil Company; Noble Energy, Inc.; Samson Offshore, LLC; BHP Billiton Petroleum (Deepwater) | BP Exploration and Production, Inc., Marathon Oil Company, Noble Energy, Inc., Samson Offshore, LLC, BHP Billiton Petroleum (Deepwater) | Fieldwood Energy LLC | MC 903 N/2 Lease G24134 | BP EXPLORATION PRODUCTION; HOUSTON ENERGY DEEPWATER VENTURES II; RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 202 | 1/1/1994 | Joint Operating Agreement | BP EXPLORATION & OIL, INC. AND SHELL OFFSHORE, INC ET AL | BP EXPLORATION & OIL INC. | Fieldwood Energy LLC | MC 106 Lease G00771 | TALOS PRODUCTION LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 203 | 4/2/2007 | Joint Operating Agreement | Joint Operating Agreement – Isabela Prospect, dated effective April 2, 2007 by and between BP Exploration & Production, Inc. | BP Exploration & Production Inc. | Fieldwood Energy LLC | MC 562 Lease G15996 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 204 | 6/2/2014 | Joint Operating Agreement | Operations and Joint Operating Agreement by and between BP Exploration and Production, Inc. | BP Exploration & Production Inc. | Fieldwood Energy LLC | MC 474 Lease G26925, MC 518 Lease G26928 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 205 | 10/3/2019 | Letter Agreement - Other Land | Letter Agreement by and between BP Exploration and Production, Inc. | BP Exploration and Production LLC | Fieldwood Energy LLC | MC 518 Lease G27278 | BP EXPLORATION PRODUCTION; HOUSTON ENERGY DEEPWATER VENTURE II; RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser |

Fieldwood Energy, LLC, et al.
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.

[2] Associated Leases represent the oil and gas leases that are associated with or related to the same underlying contract.

[3] Debtor entities represent the oil and gas leases that are associated with or related to the same underlying contract. To the extent the Debtors are able to identify the proper Debtor who is party to the contract, it is identified below; the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.

[4] Related Leases represent the oil and gas leases that are associated with or related to the same underlying contract.

[5] Cure Estimates reflect amounts estimated to be owed as of the anticipated assumption date. Cure estimates were adjusted to zero for completed trade agreements.

[6] The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Definitive Documents, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [3] | Associated Leases [2] | Related Leases (Part-In) [4] | Cure Estimate | Proposed Contract Treatment [6] |
|---|---|---|---|---|---|---|---|---|---|
| 206 | 1/28/2020 | Letter Agreement - Other Land | Letter Agreement by and between Fieldwood Energy LLC and BP Exploration and Production dated 28 Jan 20 permitting Fieldwood to operate under leases | BP Exploration & Production Inc. and EOG Resources, Inc. | Fieldwood Energy LLC | MC 510 Lease G21278 | BP EXPLORATION & PRODUCTION INC; HOUSTON ENERGY DEEPWATER VENTURES I; RED WILLOW OFFSHORE, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 207 | 5/27/2005 | Joint Operating Agreement | Operating Agreement eff. 5/27/2005 btt BP Exploration & Production Production | BP Exploration & Production Inc. and EOG Resources, Inc. | Fieldwood Energy Offshore LLC | GI 94 Lease G02153; GI 93 Lease G00828 | BP EXPLORATION & PRODUCTION INC; RED WILLOW OFFSHORE, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 208 | 5/28/2005 | Property Participation & Exchange Agreements | Participation Agmt eff. 5-29-2005 b/t BP Exploration & Production Inc. and EOG Resources, Inc. | BP Exploration & Production Inc. and EOG Resources, Inc. | Fieldwood Energy Offshore LLC | GI 94 Lease G02153 | BP EXPLORATION & PRODUCTION INC; RED WILLOW OFFSHORE, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 209 | 1/19/2006 | Letter Agreement - Other Land | Letter Agreement – dated January 19, 2006, between BP Exploration & Production Inc. (California) | BP Exploration & Production Inc.; BP Exploration & Production of California | Fieldwood Energy Offshore LLC | EB 158 Lease G02645; EB 159 Lease G02646; EB 160 Lease G02647; EB 161 Lease G02715 | BP EXPLORATION & PRODUCTION INC; RED WILLOW OFFSHORE, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 210 | 12/1/2011 | Joint Operating Agreement | Galapagos Area Leap Subsea Production System Construction and Operating Agreement dated effective 1 Dec 2011... | BP Exploration & Production Inc.; Houston Energy Deepwater Ventures I, LLC; Red Willow Offshore | Fieldwood Energy LLC | MC 519 Lease G27278; MC 562 Lease G19969; MC 563 Lease G21776 | BP EXPLORATION & PRODUCTION INC; HOUSTON ENERGY DEEPWATER VENTURES I; RED WILLOW OFFSHORE, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 211 | 5/1/2019 | Joint Operating Agreement | Letter Agreement dated effective May 1, 2019, by and between Fieldwood, Red Willow and HEDV, which governs the ownership of the lease | BP Exploration & Production Inc.; Houston Energy Deepwater Ventures I, LLC; Red Willow Offshore | Fieldwood Energy LLC | MC 510 Lease G21278 | BP EXPLORATION & PRODUCTION INC; HOUSTON ENERGY DEEPWATER VENTURES I; RED WILLOW OFFSHORE, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 212 | 10/1/2002 | Other Handling / Stabilization Agreements | First Amendment to Deep Water Gathering, Processing and Production Agreement dated 14-MC-518 DEEP | BP Exploration & Production Inc.; Stone Energy Corporation and Shell | Fieldwood Energy Offshore LLC | MC 118 Lease G18192 | MARUBENI OIL & GAS (USA) LLC; TALOS RESOURCES LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 213 | 10/15/2016 | Property Participation & Exchange Agreements | Cash Construction and Fieldwood Energy LLC dated 25 October effective 15 October 2016 | BP Exploration & Production Inc.; Stone Energy Corporation | Fieldwood Energy LLC | MC 662 Lease G19066 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assumed Pursuant to Division Mergers |
| 214 | 12/15/2011 | Acquisition / PSA / Other Purchase or Sale Agreements | Crude Oil Sales Contract for BP and Fieldwood Energy LLC dated 25 | BP Exploration and Production, Inc., Marathon Oil Company, Noble Energy | Fieldwood Energy LLC | MP 296 Lease G01673 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assumed Pursuant to Division Mergers |
| 215 | n.a. | Oilfield Services | 544442_Helicopter Services Agreement dated effective 02/24/2014 | BRISTOW US LLC | Fieldwood Energy LLC | n.a. | DARIN ENERGY DBA INC. CONTINENTAL LAND & EUNESINC | $0.00 | Assumed Pursuant to Division Mergers |
| 216 | n.a. | Oilfield Services | 500004_MSA dated effective 02/06/2014; Amend. effective 3/1/2017 | BROUSSARD BROTHERS INC | Fieldwood Energy Offshore LLC | n.a. | EPL OIL & GAS, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 217 | n.a. | Oilfield Services | 777874_Master Services Agreement dated effective 31 May 2019 by and between Fieldwood, and | BUCKMANN, INC. | Fieldwood Energy LLC | n.a. | EPL OIL & GAS, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 218 | 10/27/1994 | Unit Agreement and/or Unit Operating Agreement | First Amendment to Green Unit Agreement, Garden Banks 244 Operating Agreement dated October 27, 1994 | Grand Isle CATCO Unit Agreement, dated October 27, 1994, by and between BP Exploration and Production Company, The | Fieldwood Energy LLC | GI 39 Lease G27, GI 38 Lease 127; GI 43 Lease 132; GI 41 Lease 129; GI 41 Lease 133; GI 43 Lease 134; GI 52 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assumed Pursuant to Division Mergers |
| 219 | 6/1/2010 | Property Participation & Exchange Agreements | Approval of Reassign of Participation Area, effective June 1, 2010, whereby the Grand Isle CATCO Unit was revised | Bureau of Ocean Energy Management | Fieldwood Energy LLC | GI 39 Lease 127; GI 41 Lease 132; GI 41 Lease 133; GI 43 Lease 134; GI 52 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assumed Pursuant to Division Mergers |
| 220 | 4/1/2012 | Property Participation & Exchange Agreements | Approval of Revision of Participation Area, effective April 1, 2012, whereby the Grand, Isle CATCO Unit was revised | Bureau of Ocean Energy Management | Fieldwood Energy LLC | GI 33 Lease G06558; EG 332 Lease G09478 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assumed Pursuant to Division Mergers |
| 221 | 11/1/1992 | Unit Agreement and/or Unit Operating Agreement | EG 331332 Unit Agreement | Bureau of Ocean Energy Management | Fieldwood Energy LLC | EG 331 Lease G06558; EG 332 Lease G09478 | EPL OIL & GAS, LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 222 | 11/1/1992 | Unit Agreement and/or Unit Operating Agreement | UNIT AGREEMENT BY AND BETWEEN CONOCO INC. AND OTHER SUBJECT LANDS | Bureau of Ocean Energy Management | Fieldwood Energy LLC | MP 296 Lease G01673; MP 303 Lease G04233; MP 304 Lease G03339 | EPL OIL & GAS, LLC; TALOS ENERGY OFFSHORE | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 223 | 8/31/1993 | Unit Agreement and/or Unit Operating Agreement | Unit Operating for the Garden Banks Shell Exploration, Inc. | Bureau of Ocean Energy Management | Fieldwood Energy LLC | GC 200 Lease G12210; GC 201 Lease G12209; GC 244 Lease G17043 | LLOG EXPLORATION COMPANY; RED WILLOW OFFSHORE, LLC; TALOS ENERGY OFFSHORE LLC; TALOS ENERGY... | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 224 | 4/13/1998 | Letter Agreement - Other Land | LETTER AGREEMENT BY AND BETWEEN ELF EXPLORATION Agreement 04, FOR SHARE OF ELF'S INTEREST DATED APRIL 13, 1998 | Chaos of Ocean Energy Management; ELF EXPLORATION INC.; CONOCO INC; EXXON CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED | Fieldwood Energy Offshore LLC | VK 786 Lease G08864; VK 826 Lease G15436 | ENERGY XXI GOM, LLC; MARUBENI OIL & GAS (USA) LLC; TOTAL E & P USA, INC. | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 225 | 12/19/2000 | Posting Agreement | POOLING AGREEMENT DATED DECEMBER 19, 2000, BY AND BETWEEN THE OF PRODUCTION EXPLORATION COMPANY, L.L.C. | Bureau of Ocean Energy Management; THE STATE OF TEXAS AND ELF EXPLORATION COMPANY, L.L.C. | Fieldwood Energy LLC | PN 883 Lease MF04010; PN 883 Lease MF110411; PN 883 Lease MF04012... | EPL OIL & GAS, LLC; TALOS ENERGY OFFSHORE, LLC; HEAD OFFSHORE LP | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 226 | 7/1/1984 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement for the Nuclear Production Inc. and Western Resources Corporation et al | Bureau of Ocean Energy Management; MP 313 Unit Agreement | Fieldwood Energy LLC | MP 310 Lease G03339; MP 310 Lease G03309 | EXXON MOBIL CORPORATION LLC; CHEVENNE INTERNATIONAL CORP.; MAGNUM HUNTER INTERNATIONAL, INC.; W & T OFFSHORE INC.; W&T OFFSHORE, INC. | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 227 | 11/26/2010 | Other Handling / Stabilization Agreements | PPA between Fieldwood and Byron 50 Byron's SM8 production | Byron Energy Inc. | Fieldwood Energy LLC | SM 58 Lease G01181 | CALYPSO EXPLORATION LLC | $0.00 | Assumed Pursuant to Division Mergers |
| 228 | n.a. | Oilfield Services | Master Services Contract dated effective 11/01/2013 | C-DIVE, LLC | Fieldwood Energy LLC | SM 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 229 | n.a. | Oilfield Services | Pipe Supplier | CACTUS PIPE & SUPPLY LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 230 | n.a. | Oilfield Services | Pipe Supplier | CACTUS WELLHEAD LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 231 | n.a. | Oilfield Services | Provide Material Wellheads, Material Trees, Installation Service and Repair | CACTUS WELLHEAD LLC | Fieldwood Energy LLC | n.a. | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 232 | 3/1/2016 | Farmout Agreement | Farmout between Fieldwood Energy LLC, Walter Oil and Gas Corporation and Cairn Energy USA | Cairn Energy USA; Walter Oil & Gas Corporation | Fieldwood Energy LLC | MP 301 Lease G04466 | | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 233 | 9/17/1986 | Joint Operating Agreement | Operating Agreement dated September 17, 1986 between Union Oil Company of California and MC NORTON ET AL. | Cairn Energy USA, INC. AND NORTON JOHN ORDER, INC. ET AL. | Fieldwood Energy LLC | ST 201 Lease G04455 | | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 234 | 9/25/2003 | Joint Operating Agreement | Operating Agreement | CAIRN ENERGY USA, INC. AND NORTON JOHN ORDER, INC. | Fieldwood Energy LLC | ST 201 Lease G04455 | CALYPSO EXPLORATION LLC; CHEYENNE INTERNATIONAL CORP.; MAGNUM HUNTER | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 235 | n.a. | Oilfield Services | Terms and Conditions between Fieldwood Energy and Caltex, fully executed on 09/05/2020 | CALTEX OIL TOOLS, LLC | Fieldwood Energy LLC | MC 296 Lease G34230 | CALYPSO EXPLORATION LLC; CHEYENNE INTERNATIONAL CORP.; MAGNUM HUNTER... | $0.00 | Assumed Pursuant to Division Mergers |
| 236 | n.a. | Other Misc. | Term Order (PO effective R1 PII 94028) by and between Calypso Exploration LLC and Fieldwood Energy LLC – Per R2.2 of JOA A.2 ISA... | Calypso Exploration LLC and Fieldwood Energy LLC | Fieldwood Energy LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 237 | n.a. | Oilfield Services | Vessel Services Agreement dated effective 11/01/2013, Change in effectiveness 01/01/2014 | CAMERON INTERNATIONAL SOLUTIONS INC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Assign to Credit Bid Purchaser |
| 238 | n.a. | Oilfield Services | Wellhead Services Agreement dated 05/01/2014 | CAMERON SOLUTIONS INC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and Assign to Credit Bid Purchaser |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 239 | | Oilfield Services | 700336_Master Services Agreement dated effective 01/01/2014 | CARDINAL COIL TUBING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 240 | | Oilfield Services | Third Party Certification Engineering Group Required by BSEE (Wellwork) | CARDNO PPI TECHNOLOGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 241 | | Oilfield Services | 502386_Joinder dated effective 06/24/2019 | CARLISLE ENERGY GROUP, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 242 | | Oilfield Services | 555168_Master Services Agreement dated effective 11/01/2013 | CASED HOLE WELL SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 243 | 7/21/2014 | Operating Agreement - Other | Castex is named as operator of HI 167 Platform | CASTEX OFFSHORE INC | Fieldwood Energy LLC | HI 116; HI 167 Lease G06156 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 244 | 4/13/2016 | Other Misc. | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil and Gas II, LLC and Castex Offshore, Inc.: Requests changre to compression standards in that certain Processing & Contract Operating Services Agreement dated 07/01/2011 | CASTEX OFFSHORE INC; Chevron U.S.A. Inc.; Peregrine Oil & Gas II, LLC | Fieldwood Energy LLC | MP 59 Lease G08461 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 245 | 5/31/2016 | Elections | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC and Castex Offshore, Inc.: increases to continue compression services past orignal test period | CASTEX OFFSHORE INC; Chevron U.S.A. Inc.; Peregrine Oil & Gas II, LLC | Fieldwood Energy LLC | MP 59 Lease G03194, MP 59 Lease G08461 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 246 | 6/29/2016 | Elections | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC and Castex Offshore, Inc.: | CASTEX OFFSHORE INC; Chevron U.S.A. Inc.; Peregrine Oil & Gas II, LLC | Fieldwood Energy LLC | MP 59 Lease G03194, MP 59 Lease G08461 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 247 | 4/1/2019 | Other Handling / Stabilization Agreements | First Amendment to that certain Production Handling Agreement, dated September 1, 2009 - Eiugene Island 224 "A" Platform - Federal Offshore Louisiana | CASTEX OFFSHORE INC; GOME 1271 GP, LLC; Juniper Exploration, L.L.C | Fieldwood Energy LLC | EI 224 Lease G05504 | TALOS PETROLEUM LLC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 248 | 4/6/2018 | Withdrawal Agreement | Withdrawal Election | CASTEX OFFSHORE INC; Northstar Offshore Ventures LLC; Peregrine Oil & Gas II, LLC | Fieldwood Energy LLC | WC 269 - W/2 NE/4 NE/4; SE/4 and the N/2 NE/4 SE/4 of block 269 surface to 12,805' TVD Lease G13563 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 249 | 7/2/2014 | Assignment of Platform & Pipelines | by and between Fieldwood Energy LLC and Castex Offshore, Inc. : Fieldwood Divestiture of HI 116 Platform and pipelines | CASTEX OFFSHORE INC; Walter Oil and Gas Corporation | Fieldwood Energy LLC | HI 116 Lease G06156 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 250 | 2/1/2010 | Joint Operating Agreement | Joint Operating Agreement between Castex offshore, INC. as Operator and Hunt Oil Company and Walter Oil & Gas Corporation as non-operator. | Castex offshore, INC. as Operator and Hunt Oil Company and Walter Oil & Gas Corporation as non-operator. | | HI 176 Lease G27509 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 251 | 6/1/2013 | Operating Agreement - Other | Operating Agreement eff. 6-1-13 Castex, et al | Castex, et al | Fieldwood Energy LLC | EI 224 Lease G05504 | TALOS PETROLEUM LLC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 252 | | Non-Oilfield Services | Perpetual Software License Agreement | CEI | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 253 | 7/12/2006 | Unit Agreement and/or Unit Operating Agreement | BS 53 Field Voluntary Unit C by and between Centruy Exploration New Orleans, Inc. and LA State Mineral Board | Centruy Exploration New Orleans, Inc. and LA State Mineral Board | | BS Lease 17860, BS Lease 17861 | UPSTREAM EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 254 | 4/1/2014 | Operating Agreement - Other | VIRGo Deep OA Operator ERT GOM, LLC by and between Century Exploration New Orleans LLC, CL&F Resources LP, Sandridge Energy Offshroe, LLC and Energy Resource Technology GOM, LLC | Century Exploration New Orleans LLC, CL&F Resources LP, Sandridge Energy Offshroe, LLC and Energy Resource Technology GOM, LLC | | BS Lease 17860, BS Lease 16737, BS Lease 12806 | UPSTREAM EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 255 | | Oilfield Services | 558154_Master Services Agreement dated effective 01/01/2014 | CENTURY TECHNICAL SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 256 | | Oilfield Services | 700842_Master Services Agreement dated effective 01/01/2014 | CETCO ENERGY SERVICES COMPANY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 257 | | Non-Oilfield Services | Perpetual Software License Agreement | CGG SERVICES (U.S.) INC. | Fieldwood Energy LLC | n.a. | n.a. | $801.23 | Assume and assign to Credit Bid Purchaser | | x | | |
| 258 | | Oilfield Services | Pipe Supplier | CHAMPIONS PIPE & SUPPLY CO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 259 | | Oilfield Services | Amendment to Master Services Contract, dated effective February 1, 2020 | CHAMPIONX | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 260 | 4/1/2006 | Right of Way | Charles Nicholson ETAL | Charles Nicholson ETAL | | WC 66 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 261 | 8/11/2011 | Other Services Agreements | Registration Agreement for Emergency Response Script Services | ChemTel Inc. | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 262 | | Oilfield Services | 502662_MSA effective 11/01/2013; Change Date effective 1/1/2014; Change Date effective 1/1/2014 | CHET MORRISON CONTRACTORS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 263 | 8/21/2020 | Abandonment / Decommissioning Agreement | Chet Morrison remove the two well conductors of the previously plugged wells HI 176 #2, #3 | Chet Morrison Contractors; Exxon Mobil Corporation; Hoactzin Partners, LP; Ridgewood Energy Corporation | Fieldwood Energy LLC | HI 176 Lease G27509 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 264 | 2/18/2000 | Operating Agreement - Other | b/b Chevron and Samedan | Chevron and Samedan | | VK 113 Lease G16535 | CHEVRON USA INC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 265 | 11/18/1999 | Letter Agreement - UOA | Letter Agreement, dated November. 18, 1999, by and between Chevron U.S.A. tic. and Samedan Oil Corporatidri being a COPAS Amendment to Unit Operating Agreement for the Viosca Knoll 252 Unit concerning Subpart (i;) of Section m. "Overhead", andimade effective January 1,2000. | Chevron U.S.A. and Samedan Oil Corporation | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 266 | 3/20/2012 | Other Notices | Chevron's Notice to Apache Letter, dated March 20, 2012, EB 159 #A-I5 Well (GM-2-2 Sand) conductor removal. | Chevron U.S.A. Inc, Apache Corporation | Fieldwood SD Offshore LLC | EB 159 Lease G02646 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 267 | 10/25/2013 | Letter Agreement - Other Land | Letter Agreement dated October 25, 2013 evidencing Chevron U.S.A. Inc.'s consent to an assignment of interest from Apache Corporation in that-certain Farmout Agreement dated and made effective June 1, 2009, to Fieldwood Energy LLC. | Chevron U.S.A. Inc, Apache Corporation | Fieldwood Energy Offshore LLC | CA 42 Lease G32267 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS II LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 268 | 9/25/2003 | Confidentiality Agreements / AMI and Related Consents | Area of Mutual Interest Agreement by and between Apache Corporation and Chevron USA | CHEVRON U.S.A. INC. | Fieldwood Energy LLC | WD 90 Lease G01089, WD 103 Lease 840, WD 103 Lease G12360 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 269 | 12/30/2013 | Withdrawal Agreement | Withdrawal Agreement by and between Fieldwood Energy LLC and Chevron U.S.A. Inc. | Chevron U.S.A. Inc. | Fieldwood Energy LLC | SS 216 Lease G01524 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 270 | 8/1/2016 | Letter Agreement - UOA | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 340 Lease G10933 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 271 | 8/4/2016 | Other Misc. | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 340 Lease G10933 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 272 | 7/28/2017 | Indemnity and Release Agreement | by and between Fieldwood Energy LLC and Chevron U.S.A. Inc.: Chevron sold to Cantium and needed DOO from Fieldood, Fieldwood required this Agreement to allow DOO | Chevron U.S.A. Inc. | Fieldwood Energy LLC | MP 59 Lease G03194, MP 59 Lease G08461 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 273 | 7/1/2019 | Joint Operating Agreement | Joint Operating Agreement by and between Chevron USA Inc and Fieldwood Energy LLC dated 1 July 2019 and as amended by that (a)First Amendment dated effective 1 January 2020 (b) Second Amendment dated effective 1 May 2020 (Part of the LEA) | Chevron U.S.A. Inc. | Fieldwood Energy LLC | MC 118 Lease G35963, MC 119 Lease G36537, MC 163 Lease G36538, MC 206 Lease G36540 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 274 | 5/1/2020 | Property Participation & Exchange Agreements | Lease Exchange Agreement by and between Chevron USA Inc and Fieldwood Energy LLC dated 1 May 2020 | Chevron U.S.A. Inc. | Fieldwood Energy LLC | MC 118 Lease G35963, MC 119 Lease G36537, MC 162 Lease G36880, MC 163 Lease G36538, MC 206 Lease G36540 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 275 | 6/6/1994 | Letter Agreement - UOA | Letter Agreement, dated June 6, 1994, whereby Chevron U.S.A. Inc. approves, adopts and.recognizes the Unit Operating Agreement, dated January 21, 1994 for the Viosca Knoll 252 Unit | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 276 | 8/1/2015 | Acquisition / PSA / Other Purchase or Sale Agreements | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc. : MP 77, 78 and VK 251, 252, 340 Fields | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | MP 77, 78 and VK 251, 252, 340 Fields Lease G04481, MP 77, 78 and VK 251, 252, 340 Fields Lease G10930, MP 77, 78 and VK 251, 252, 340 Fields Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 277 | 8/1/2016 | Letter Agreement - UOA | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 278 | 8/4/2016 | Other Misc. | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE | Chevron U.S.A. Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 279 | 10/14/2004 | Letter Agreement - Other Land | Letter Agreement, dated October. 14, 2004, between Chevron U.S.A. Inc. and Noble Energy,.Inc. concerning Production Handling Agreement Terin's, Viosca Knoll 251 "A' PlatfomvCadillacProspect and any Other Future Non-unit Production | Chevron U.S.A. Inc. and Noble Energy, Inc. | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |

**Fieldwood Energy, LLC, et al.**
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] Associated Lease represents the oil and gas leases that are associated with or related to the same underlying contract.
[3] Debtors will file an amended schedule prior to the contracts to which no Debtor entity is currently listed, the Debtors are able to identify the proper Debtor entity. To the extent the Debtors are able to identify the appropriate schedule prior to the confirmation hearing to reflect this information.
[4] Related Lease parties represent the oil and gas leases that are associated with or related to the same underlying contract.
[5] All estimate values on the pre-petition accounts payable balances. Cure estimates are subject to zero for completed/executory agreements.
[6] Reference to any lease/contract in the Schedule of Assumed Contracts (the "Plan of Assumed Contracts") or any other document (collectively, "Assumed Contracts") shall not be deemed an admission that such agreement constitutes an executory contract or unexpired lease. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Category | Contract Description | Debtor(s) Entity [3] | Known Contract Counterparties [1] | Associated Lease [2] | Related Lease Parties [4] | Cure Estimate | Proposed Contract Treatment [6] | FW | FW II | FW III |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 280 | Letter Agreement - Other Land | Letter Agreement, dated July 7, 1997, by and between Chevron U.S.A. Inc. and Samedan Oil Corporation concerning of the DC/STG I-00 Block 22 Unit | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc. and Samedan Oil Corporation | WR 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 281 | Letter Agreement - Other Land | Letter Agreement, dated April 28, 2014, between Chevron U.S.A. Inc. and Garden Gorror Energy E&P, LLC regarding Main Pass 77 Unit Operations | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc. and Garden Gorror Energy E&P, LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 282 | Letter Agreement - Other Land | Letter Agreement, dated May 2, 1985, between Southern Natural Gas Company and Chevron U.S.A. Inc. concerning the "Construction, Installation, Operation and Maintenance..." | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc. and Southern Natural Gas Company | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 283 | Letter Agreement - Other Land | Letter Agreement, dated June 25, 1990, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern") concerning the Telecommunication of Pneumatic Chart Recorders... | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc. and Southern Natural Gas Company | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 284 | Letter Agreement - Other Land | Letter Agreement, dated March 4, 1988, between Chevron U.S.A. Inc. ("Goodheir"), concerning the "Interconnection of Pneumatic Chart Recorders..." | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc. and Westport Resources Corporation | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 285 | Property Participation & Exchange Agreements | Exploration Agreement, dated June 2, 1995, between Chevron U.S.A. Inc. and Westport Resources Corporation | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc. and Westport Resources Corporation | BA A133 Lease G02665 | W & S ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 286 | Letter Agreement - Other Land | Letter Agreement concerning the Gulf Operating Agreement | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc. and Williams Field Services - Gulf Coast Company | GA 433 Lease G02805, L.P | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | |
| 287 | Farmout Agreement | Transfer notice, RV set and line, etc. by and between Chevron U.S.A. Inc. and GOM SHELF LLC | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc. and GOM SHELF LLC | GI 46 Lease 132 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 288 | Farmout Agreement | Farmout Agreement dated effective June 1, 2005 between Chevron U.S.A. Inc. and Phoenix Exploration Company, L.P. and Challenger Minerals Inc. | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc. and Phoenix Exploration Company, L.P. and Challenger Minerals Inc. | CA 42 Lease G32297 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | |
| 289 | Acquisition / PSA / Other Purchase or Sale Agreements | Purchase and Sale Agreement for Houston and Divisive... by and between Chevron U.S.A. Inc. as Seller, and Wild Well Control, Inc. as Buyer, conveying Chevron's undivided interest in certain Facilities... | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc., as Seller, and Wild Well Control, Inc. as Buyer | WD 68 Lease 181 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement). | x | | |
| 290 | Farmout Agreement | Farmout Agreement, dated effective October 30, 1995, between Chevron U.S.A. Inc., as Farmor, and Marine Energy Resources, Inc., as Farmee | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc., as Farmor, and Marine Energy Resources, Inc., as Farmee | SM 148 Lease G02062, SM 150 Lease G10125 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement). | x | | |
| 291 | Farmout Agreement | Exploration Participation Agreement, dated November 1, 2004, by and between Chevron U.S.A. Inc. and Newfield Exploration Company | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc., and Newfield Exploration Corporation | GI 52 Lease 177 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | |
| 292 | Property Participation & Exchange Agreements | Exploration Agreement dated January 1, 2006, by and between Chevron U.S.A. Inc. and Apache Corporation | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc., and Apache Corporation and Castex Offshore, Inc. | VK 251 Lease G10930, VK 340 Lease G10933 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 293 | Letter Agreement - Other Land | Letter Agreement, dated effective September 3, 2011 referencing Chevron U.S.A. Inc. commitment to an assignment of interest from Phoenix Exploration Company, L.P. and Apache Corporation and Castex Offshore, Inc. | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc., and Phoenix Exploration Company, L.P. Apache Corporation and Castex Offshore, Inc. | CA 42 Lease G32297 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 294 | Letter Agreement - Other Land | Letter Agreement, dated March 21, 2003, between Chevron U.S.A. Inc., Sabco Oil and Gas Corporation, ExxonMobil Production Company, Key Production Company and Contour Energy | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc., Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. | VK 340 Lease G10933 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 295 | Letter Agreement - Other Land | Letter Agreement concerning Second Opportunity to Participate - Election to Participate Working Interest, in the MP77 OCS-G 4481 A-8 PA CL80089A-01... | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc., Samedan Oil Corporation and Continental Land & Fur Company | VK 251 Lease G10930 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 296 | Letter Agreement - Other Land | Letter Agreement dated June 5, 1984, by and between Chevron U.S.A. Inc. as Operator and Continental Land & Fur Co. | Fieldwood Energy Offshore LLC | Chevron U.S.A. Inc., Samedan Oil Corporation and Continental Land & Fur Company | MP 77 Lease G04481 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 297 | LOA | Joint Bidding Agreement by and between Chevron USA Inc and Tatra Energy Offshore Inc. | Fieldwood Energy LLC | Chevron U.S.A. Inc., and Tatra Energy Offshore LLC | MC 110 Lease G36537, MC 163 Lease G36538, MC 236 Lease G36540, n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | |
| 298 | Joint Bidding Agreement | Joint Bidding Agreement dated March 31, 2003, by and between Chevron USA Inc and Renaissance Offshore LLC | Fieldwood Energy LLC | Chevron U.S.A. Inc., Renaissance Offshore LLC; Transcontinental Gas Pipe Line Company, LLC | ST 316 Lease G22782 | V&T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | |
| 299 | Other Misc. | Operating Agreement dated March 31, 2003, by and between Chevron U.S.A. Inc. and Transcontinental Gas Pipe Line Company, LLC | Fieldwood Energy LLC | Chevron U.S.A. Inc., Transcontinental Gas Pipe Line Company, LLC | MC 763 Lease G36491 | | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 300 | Joint Operating Agreement | Operating Agreement dated effective August 1, 2019 by and among Chevron U.S.A. Inc., Fieldwood Energy LLC, and Ridgewood Castle Rock, LLC | Fieldwood Energy LLC | Chevron U.S.A. Inc.; Ridgewood Castle Rock, LLC | | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**

Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 301 | 12/8/2000 | Letter Agreement - Other Land | Letter Agreement, dated December 8, 2000 (effective December 1, 2000), by and between Chevron U.S.A. Inc.and Williams Field Services - Gulf COperating Agreementst Company, L.P., whereby Chevron U.S.A. Inc. consents to an assignment by Williams Field Services - Gulf COperating Agreementst Company, L.P., to its affiliate, Williams Mobile Bay Producer Services, L.L.C. | Chevron U.S.A. Inc.and Williams Field Services - Gulf Coast Company, L.P. | Fieldwood Energy Offshore LLC | VK 340 Lease G10933 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 302 | 3/1/2000 | Marketing - Gathering | Gas gathering agreement between Chevron U.S.A. production Company and Samedan Oil Company as Producer and Shell Offshore Inc. and Amoco Production Company as Processor (considered PHA) for VK 251 | Chevron U.S.A. production Company and Samedan Oil Company as Producer and Shell Offshore Inc. and Amoco Production Company as Processor | | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 303 | 8/1/2004 | Unit Agreement and/or Unit Operating Agreement | Amendment and Supplement to?Unit Operating Agreement for the Viosca Knoll 252 Unit, dated August 1,2004, by and between Chevron UiS.A. Inc. and-Noble Energy, Inc | Chevron UiS.A. Inc. and-Noble Energy, Inc | Fieldwood Energy Offshore LLC | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 304 | 7/18/2001 | Joint Development / Venture / Exploration Agreements | Joint Venture Agrmt amongst Chevron USA INC and BHP Petroleum (Deepwater) Inc dated 18 July 2001 whereby CVX and BHP exchanged WI in GC 281 and 282 and committed to Operating Agreement. (Samedan/NBL lated farmed into BHP's Interest) | Chevron USA INC and BHP Petroleum (Deepwater) Inc | Fieldwood Energy LLC | GC 282 Lease G16727 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 305 | 8/12/2002 | Construction Agreements | CMA amongst Chevron USA INC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy Inc dated 12 Aug 2002 | Chevron USA INC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy Inc | Fieldwood Energy LLC | GC 282 Lease G16727 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 306 | 8/1/2002 | Joint Development / Venture / Exploration Agreements | Development Plan approved by Chevron USA INC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy Inc dated 12 Aug 2002 | Chevron USA INC, BHP Billiton Petroleum (Deepwater) Inc, Noble Energy Inc | Fieldwood Energy LLC | GC 282 Lease G16727 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 307 | 1/1/2004 | Farmout Agreement | FARMOUT AGREEMENT DATED JANUARY 21, 2004, BY AND BETWEEN CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. | CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. | Fieldwood Energy Offshore LLC | WC 66 Lease G02826 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 308 | 9/14/2010 | Letter Agreement - Other Land | CHEVRON USA INC. AND GOM SHELF LLC | CHEVRON USA INC. AND GOM SHELF LLC | Fieldwood Energy LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 309 | 9/15/2009 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P., STEPHENS PRODUCTION COMPANY, LLC, ENERGY PARTNERS, LTD, NOBLE ENERGY INC., AND STATOILHYDRO USA E&P INC | CHEVRON USA INC., PHOENIX EXPLORATION COMPANY, LP, CHALLENGER MINERALS INC., , DAVIS OFFSHORE, L.P., STEPHENS PRODUCTION COMPANY, LLC, ENERGY PARTNERS, LTD, NOBLE ENERGY INC., AND STATOILHYDRO USA E&P INC | Fieldwood Energy Offshore LLC | NE/4 GC 198 Lease G36021 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 310 | 6/15/2015 | Elections | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Wichita Partnership, Ltd., W & T Energy VI, LLC and W&T Offshore, L.L.C.: In furtherance of April 14, 2015 letter Areana earned assignment from Chevron Chevron to resign as operator | CHEVRON USA INC; W&T Energy VI, LLC; W&T Offshore, L.L.C.; Wichita Partnership, Ltd. | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 311 | 9/17/2015 | Elections | In furtherance of April 14, 2015 and June 15, 2015 letters, Areana earned assignment from Chevron Chevron to resign as operator, clarifying Working Interests, etc. | CHEVRON USA INC; W&T Energy VI, LLC; W&T Offshore, L.L.C.; Wichita Partnership, Ltd. | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 312 | 4/30/2009 | Operating Agreement - Other | Operating Agreement eff. 4-30-09 Chevron USA, et al | Chevron USA, et al | Fieldwood Energy LLC | MP 59 Lease G03194, MP 59 Lease G08461 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 313 | 6/1/2009 | Operating Agreement - Other | Operating Agreement eff. 6-1-09 Chevron USA, et al | Chevron USA, et al | Fieldwood Energy LLC | MP 59 Lease G03194, MP 59 Lease G08461 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 314 | 6/28/2012 | Operating Agreement - Other | Ownership and Operating Agreement | Chevron, Dynamic Offshore Resources, LLC, GOMH Explocation, LLC and Hall-Houston Exploration III, L.P. | | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 315 | 6/28/2012 | Marketing - Connection Agreement | Ownership and Operating Agreement | Chevron, Dynamic Offshore Resources, LLC, GOMH Exploration, LLC and Hall-Houston Exploration III, L.P. | | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 316 | Original - 11/15/2019; 1st Amend 5/14/2020; 2nd Amend 9/14/2020 | Non-O&G Real Property Lease / Rental / Sublease Agreements | Lease agreement between Fieldwood and Cheyenne Services Total Area: 2 buildings; office/warehouse space Square Footage: approx. 23,800 SF on approx 3 acres Address: 108 Galbert Road Lafayette LA 70506 | Cheyenne Services | Fieldwood Energy LLC | Total Area: 2 buildings; office/warehouse spaceSquare Footage: approx. 23,800 SF on approx 3 acres | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 317 | 11/15/2019 | Other | Lease - 108 Galbert Rd., Lafayette, LA 70506 | CHEYENNE SERVICES LIMITED | Fieldwood Energy LLC | n.a. | n.a. | $6,475.38 | Assume and assign to Credit Bid Purchaser | | x | | |
| 318 | 4/26/2020 | Other | First Amendment to Lease - 108 Galbert Rd., Lafayette, LA 70506 | CHEYENNE SERVICES LIMITED | Fieldwood Energy LLC | n.a. | n.a. | $6,475.38 | Assume and assign to Credit Bid Purchaser | | x | | |
| 319 | | Oilfield Services | Master Service Agreement dated effective July 17, 2019 | CHURCH POINT WHOLESALE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 320 | | Oilfield Services | 777969_Rental Agreement dated effective 11/21/2018 | CHURCHILL DRILLING TOOLS US, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 321 | | Oilfield Services | 777621_Master Services Agreement dated effective 05/02/2019 | C-INNOVATION, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 322 | 8/25/2016 | Other Handling / Stabilization Agreements | by and between Fieldwood Energy LLC, CL&F Resources, L.P, Houston Energy LP., Helis Oil and Gas Company LLC and W&T Offshore, Inc.: Amendment and Ratification of Production Handling Agreement (High Island, East Addition Block 129) | CL&F Resources, L.P.; Helis Oil and Gas Company LLC; Houston Energy LP; W&T Offshore, Inc. | Fieldwood Energy LLC | HI 129 Lease G01848 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 323 | | Oilfield Services | Master Service Contract dated effective June 22, 2018 | CLARIANT CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 324 | 10/27/2015 | Other | Classic Business Products Maintenance Contract Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 325 | 1/30/2019 | Other | Classic Business Products Maintenance Contract Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 326 | 9/4/2019 | Other | Classic Business Products Maintenance Contract Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 327 | 8/2/2018 | Other | Classic Business Products Maintenance Contract Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 328 | 10/3/2018 | Other | Classic Business Products Maintenance Contract Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 329 | 10/3/2018 | Other | Classic Business Products Rental Agreement | CLASSIC BUSINESS PRODUCTS, INC | Fieldwood Energy LLC | n.a. | n.a. | $485.06 | Assume and assign to Credit Bid Purchaser | | x | | |
| 330 | | Oilfield Services | Spill Response, Service Equipment, OSRO | CLEAN GULF ASSOCIATES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 331 | | Oilfield Services | Spill Response, Service Equipment, OSRO | CLEAN GULF ASSOCIATES SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 332 | 1/1/1994 | Unit Agreement and/or Unit Operating Agreement | Co-Development Agreement and Amendment to Unit Operating Agreement originally by and between CNG Producing Company & Columbia Gas Development Corp., et al | CNG Producing Company & Columbia Gas Development Corp., et al | Fieldwood Energy Offshore LLC | SS 271 Lease G01038, SS 247 Lease G01028, SS 248 Lease G01029, SS 249 Lease G01030, SS 270 Lease G01037 | TALOS ERT LLC, W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 333 | 9/3/1974 | Farmout Agreement | Farmout Agreement by and between CNG Producing Company, Columbia Gas Development Corporation and Forest Oil Corporation | CNG Producing Company, Columbia Gas Development Corporation and Forest Oil Corporation | Fieldwood Energy Offshore LLC | SS 271 Lease G01038 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 334 | 01/01/1994, 04/08/1994 | Unit Agreement and/or Unit Operating Agreement | U nit Operating Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Total Minatome Corporation, Energy Development Corporation, Murphy Exploration and Production Company and Anadarko Petroleum Corporation; and Forest Oil Corporation and Timbuck Company/The Hat Creek Production Company, Limited Partnership (referred to as "Override Parties") | CNG Producing Company, Columbia Gas Development Corporation, Total Minatome Corporation, Energy Development Corporation, Murphy Exploration and Production Company and Anadarko Petroleum Corporation; and Forest Oil Corporation and Timbuck Company | Fieldwood Energy Offshore LLC | SS 247 Lease G01028, SS 248 Lease G01029, SS 249 Lease G01030, SS 270 Lease G01037, SS 271 Lease G01038 | TALOS ERT LLC, W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 335 | 9/24/1985 | Letter Agreement - JOA | Clarification Letter Agreement by and between CNG Producing Company, Hunt Oil Company, Southland Royalty Company (successor to Hunt Oil Company and Anadarko Production Company | CNG Producing Company, Hunt Oil Company, Southland Royalty Company (successor to Hunt Oil Company and Anadarko Production Company | Fieldwood Energy Offshore LLC | VR 78 Lease G04421 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 336 | | Oilfield Services | 501307_Master Services Agreement dated effective 01/01/2014 | COASTAL CHEMICAL CO LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Case 20-33948   Document 1394-1   Filed in TXSB on 05/26/21   Page 88 of 678

**Fieldwood Energy LLC, et al.**
**Prepared May 26, 2021**

## Schedule of Assumed Contracts

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors entities listed represent the schedule in the contract is listed. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Retained lease parties represent current lease-operating interests and/or overriding royalty interest owners and parties retained on account of the contract.
[5] All estimates listed are open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] The terms in this document have the meanings set forth in the Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors (as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
[7] The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Retained Lease Parties [4] | Cure Estimate | Proposed Curative Treatment [5] |
|---|---|---|---|---|---|---|---|---|---|
| 337 | 4/27/1999 | Farmout Agreement | FARMOUT AGREEMENT DATED APRIL 19, 1998, BY AND BETWEEN OPERATING Agreement/TEAL/OIL&CO CORPORATION AND HALL-HOUSTON OIL COMPANY/U.S.A. LIMITED | COASTAL OIL & GAS CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED | Fieldwood Energy Offshore LLC | VK 761 Lease G09584; VK 824 Lease G10436 | ENERGY XXI GOM LLC; MARUBENI OIL & GAS (USA) LLC; TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 338 | 1/7/2016 | Other | Other | Common National de Hidrocarburos | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 339 | | Oilfield Services | Gravel Pack Tools, CT and Tools | Conoco and Shell | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 340 | 4/15/1991 | Operating Agreement - Other | Operating Agreement eff. 4-15-91 b/s Conoco and Shell | Conoco and Shell | Fieldwood Energy LLC | MP 288 Lease G01666 | ANADARKO US OFFSHORE LLC; ERA HELICOPTERS INC; HIGH POINT GAS GATHERING L.L.C.; SHELL PIPELINE COMPANY LP; PETROLEUM GEO-SERVICES INC; RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 341 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | CONOCO INC. AND ATLANTIC RICHFIELD COMPANY, ET AL | Fieldwood Energy Offshore LLC | WC 544 Lease 839 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 342 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | CONOCO INC. AND ATLANTIC RICHFIELD COMPANY, ET AL | Fieldwood Energy Offshore LLC | WD 55 Lease G01497 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 343 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | CONOCO INC. AND ATLANTIC RICHFIELD COMPANY, ET AL | Fieldwood Energy Offshore LLC | WD 90 Lease G01498 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 344 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL | CONOCO INC. AND ATLANTIC RICHFIELD COMPANY | Fieldwood Energy Offshore LLC | WC 24 Lease G02637; WC 35 Lease G02619; WC 68 Lease G02820; WC 480 Lease G02638 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 345 | 1/1/1989 | Operating Agreement - Other | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY OPEN TIME AGREEMENT DATED OCTOBER 1, 1990, BY AND BETWEEN CONOCO AND TEXAS PRODUCING INC | CONOCO INC. AND TEXAS PRODUCING INC. | Fieldwood Energy Offshore LLC | WC 24 Lease G02637; WC 35 Lease G02619; WC 68 Lease G02820; WC 480 Lease G02638; WC 77 Lease G02626 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 346 | 12/1/1990 | Joint Operating Agreement | AMENDMENT TO OPEN TIME AGREEMENT DATED DECEMBER 1, 1990, BY AND BETWEEN CONOCO AND VASTAR RESOURCES, INC. ET AL. | CONOCO INC. AND VASTAR RESOURCES, INC., ET AL. | Fieldwood Energy Offshore LLC | WC 24 Lease G02637; WC 35 Lease G02619; WC 68 Lease G02820; WC 480 Lease G02638; WC 77 Lease G02626 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 347 | 5/1/1995 | Unit Agreement and/or Unit Operating Agreement | CATCO Unit and Co CATCO Unit Operating Agreement Amendment for the Unit et al and Redrill 6-21 to 16.8-21 b/s Conoco, Atlantic Richfield Company, Vastar Resources, Inc., Oxy USA Inc., Texaco Producing Inc. | Conoco Inc., Atlantic Richfield Company, Vastar Resources, Inc., Oxy USA Inc., Texaco Producing Inc. | Fieldwood Energy Offshore LLC | GI 41 Lease 129; GI 47 Lease 133; GI 48 Lease 134; GI 52 Lease 177 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 348 | 1/1/1989 | Operating Agreement - Other | CATCO Operating Agreement eff. 1/1/89 by and between Conoco, Redrill, Texaco, et al | Conoco, Redrill, Texaco, et al | Fieldwood Energy LLC | EI 205 Lease 877 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 349 | 8/1/1992 | Unit Agreement and/or Unit Operating Agreement | Amendment to GI/WD Unit Agmt by and between Continental Oil Company, Et al, Cities Service Production Company | Continental Oil Company, Et al, Cities Service Production Company | Fieldwood Energy LLC | WD 66 Lease 180; WD 85 Lease 181; WD 70 Lease 182; WD 71 Lease 184 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser |
| 350 | 10/1/1989 | Unit Agreement and/or Unit Operating Agreement | Awards both GI/WD Unit and CATCO Unit b/s and between Continental Oil Company, Et al, Cities Service Production Company, Et al | Continental Oil Company, Et al, Cities Service Production Company, Et al | Fieldwood Energy LLC | GI 32 Lease 176; GI 39 Lease 127; GI 40 Lease 128; GI 41 Lease 129; GI 44 Lease 131; GI 45 Lease 132; GI 47 Lease 133; GI 48 Lease 134; GI 52 Lease 177; WD 66 Lease 180; WD 70 Lease 182; WD 71 Lease 184 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser |
| 351 | | Oilfield Services | Provide Specialized Laboratory Analysis of Produced Solids | CORE MINERALOGY, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 352 | 8/30/2019 | Non-Oilfield Services | Master Subscription Agreement; Order Form | COUPA SOFTWARE, INC | Fieldwood Energy LLC | n.a. | n.a. | $2,024.10 | Assume and assign to Credit Bid Purchaser |
| 353 | 9/15/2019 | Non-Oilfield Services | System Services / License Agreements | COUPA SOFTWARE, INC. | Fieldwood Energy LLC | n.a. | n.a. | $2,024.10 | Assume and assign to Credit Bid Purchaser |
| 354 | 3/30/2017 | Other Misc. | Firewood agmt to EOX measurement of its objects to allow use to produce 5 bbl and extend/measure alternate of its 5 cho 5 et al | Cox Operating LLC | Fieldwood Energy LLC | EI 64; EI 53 Lease 479 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 355 | 1/26/2021 | Marketing - Transportation | Gas balancing agreement on Cox Operating LLC Segment 130 day term 3 boe lease by oil adj Cox Operating | Cox Operating LLC | Fieldwood Energy LLC | EI 64/TA Lease G02366 | FREEPORT MCMORAN OIL & GAS LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 356 | | Non-Oilfield Services | SWIM, Master Services Agreement effective 12/03/2013; Amendment dated effective 01/28/2019 | C-PORT/STONE, L.L.C | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Divisive Merger |
| 357 | 8/1/1994 | Operating Agreement - Other | EI 89 Field OA b/s Comoco eff. 8/1/94 | Comoco | Fieldwood Energy, Inc. N/K/T Energy LLC | EI 90005 Lease 4; EI 90005 Lease 229 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 358 | | Oilfield Services | MASDG Master Services Agreement date effective 03/10/2015 | MAXIMUS SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 359 | | Oilfield Services | 5445S, PO Terms & Conditions dated effective 03/10/2015 | CROSBY OREGON LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 360 | | Non-Oilfield Services | 5542A Master Time Charter Agreement dated 11-1-2013 | CROSBY TUGS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 361 | 7/1/2017 / 7/1/2017 | Other Services Agreements | Response Restoration Agreement | CSA Ocean Sciences Inc. | Fieldwood Energy LLC | Area wide | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 362 | 2/8/2018 | Non-Oilfield Services | Master Consulting Agreement | CSI COMPRESSCO SUB, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 363 | | Oilfield Services | 5326G7, Master Services Agreement dated effective 12/01/2013 | CSI TECHNOLOGIES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 364 | 10/26/2013 | Oilfield Services | 5590G2, Master Services Agreement dated effective 11/01/2013 | CUSTOM COMPRESSION SYSTEMS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 365 | | Oilfield Services | 5542S, PO Terms & Conditions dated effective 03/10/2015 | CUSTOM PROCESS EQUIPMENT LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 366 | | Oilfield Services | CVSCAREMARK | CVSCAREMARK | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 367 | | Non-Oilfield Services | 5544A Master Services Agreement effective 11/01/2013 | CYRUS J GUIDRY & ASSOCIATES | Fieldwood Energy LLC | Area wide | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 368 | 2/8/2016 | Non-Oilfield Services | Master Consulting Agreement | DAGEN PERSONNEL | Fieldwood Energy LLC | n.a. | n.a. | $13,510.99 | Assume and assign to Credit Bid Purchaser |
| 369 | | Oilfield Services | 7000W, Master Services Agreement dated effective 04/17/2015 | DAILEY TOWER SERVICE, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 370 | 10/26/2013 | Oilfield Services | 5989D1, Master Services Agreement dated effective 11/01/2013 | DIAMOND SERVICES CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 371 | 9/1/2007 | Non-Oilfield Services | 7012A, Master Services Agreement dated effective 11/01/2013 | DIACOS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 372 | 2/8/2019 | Oilfield Services | 5445G, DART BASIN SERVICES LLC | DART ENERGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 373 | | Non-Oilfield Services | Software Licensing Agreement | DATAWATCH CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $23,610.16 | Assume and assign to Credit Bid Purchaser |
| 374 | 3/12/2009 | Non-Oilfield Services | LETTER AGREEMENT BETWEEN DAVIS OFFSHORE, L.P., NOBLE ENERGY, INC. AND STATOILHYDRO | DAVIS OFFSHORE, L.P. / NOBLE ENERGY, INC. AND STATOILHYDRO (USA) E&P INC. | Fieldwood Energy LLC | GC 198 Lease G26021 | WELD RELL CONTROL INC, DARCON WESTERN INTERNATIONAL INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 375 | 9/1/2007 | Joint Bidding Agreements | JOINT BIDDING AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P., STEPHENS PRODUCTION COMPANY, ENERGY PARTNERS, LTD. | DAVIS OFFSHORE, L.P., STEPHENS PRODUCTION COMPANY, ENERGY PARTNERS, LTD. | Fieldwood Energy LLC | GC 198 Lease G26021 | OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ERA HELICOPTERS INC; SANTA RAY OFFSHORE GATHERING; RED OIL CORPORATION, LLC; TALOS ENERGY OFFSHORE, LLC; CHEVRON USA INC; W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser |
| 376 | 12/19/2013 | Other Misc. | D3, Mooring & Rigging | DCL Mooring & Rigging | Fieldwood Energy LLC | Area wide | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 377 | 1/31/2010 | Abandonment / Decommissioning Agreement | Decommissioning Obligation Agreement by and between Wild Well Control, Inc and Dynamic Offshore Resources Inc dated 01-Jan-2010 | Decommissioning Obligation Agreement by and between Wild Well Control, Inc and Dynamic Offshore Resources Inc dated 31 Jan 2010 | Fieldwood Energy LLC | GC 955C; 105GC 700 Lease G00869 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 378 | 10/3/2014 | Letter Agreement | Letter Agreement Dated 3 Oct 14 by and between Deep Gulf Energy III LLC, Noble Energy, Inc, BP Exploration and Production, Inc, Red Willow Offshore and Houston Energy Deepwater Ventures I LLC | Deep Gulf Energy III, LLC; Noble Energy, Inc; BP Exploration and Production, Inc; Red Willow Offshore and Houston Energy Deepwater Ventures I LLC | Fieldwood Energy LLC | MC 562 Lease G05889 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 379 | | Oilfield Services | 5515, Master Services Agreement effective 07/22/2016 | DEEPWELL, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |

Fleetwood Energy, LLC, et al.
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the applicable Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity, the identification of such entities are listed in actual agreements. To the extent parties are not listed to the same underlying contract, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated Leases represents the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related Leases parties represent the oil and gas lessors that are associated with or related to the same underlying contract.
[5] Cure Estimates reflect estimated cure amounts for completed/complete agreements.
[6] Proposed Contract Treatment represents the proposed treatment of the applicable contract.
[7] Reference is hereby made to the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Leases Parties [4] | Cure Estimate | Proposed Contract Treatment [6] | FW | Credit Bid Purchaser | FW II | FW III |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 380 | 9/3/2019 | Other Lease / Rental Agreement | Lease Agreement with Agreement to Purchase by and between Deepwater Abandonment Alternatives, Inc. and Fieldwood Energy LLC | Deepwater Abandonment Alternatives, Inc. | Fieldwood Energy Offshore LLC | GC 200 (WW4 SE-8, WW4 NE-8, ED 564 N/W4, SD 16/4 N/W1/4, WZ1/2, SE/4, NE/4 SW/4 SE/4, SW/4 N/W4 NE/4) Lease G12209 | FIELDWOOD OFFSHORE LLC; TALOS ENERGY OFFSHORE, LLC; WILD WELL CONTROL, INC; TRADING (US) COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 381 | | Oilfield Services | 511622_Master Services Agreement dated effective 09/19/2014 | DEEPWATER CORROSION SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 382 | | Oilfield Services | 510045_Rental Agreement dated effective 01/21/2014 | DEEPWELL RENTALS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 383 | | Oilfield Services | Completion Engineering Consultant | DELGE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 384 | 4/1/2013 4/1/2013 | Other Services Agreements | Response Resources Agreement; Utilization Agreement | Delmar Systems, Inc. | Fieldwood Energy LLC | Area wide | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 385 | 1/1/2020 | Non-Oilfield Services | Suction Pile, Installation Tools, Mooring, Anchoring, Work Wire, and Winch Equipment Lease | DELMAR SYSTEMS, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 386 | | Oilfield Services | Administrative Services Agreement | DELTA DENTAL INSURANCE COMPANY | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 387 | | Oilfield Services | Gravel Pack Screens | DELTA SCREENS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 388 | | Oilfield Services | 77781E_Master Services Agreement dated effective 12/05/2018 | DELTA SUBSEA, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 389 | | Oilfield Services | Auto Cans for Lafayette Fleet | DELTA WORLD TIRE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 390 | | Oilfield Services | 76032S_Master Services Agreement dated effective 02/15/2014 | DEMEX INTERNATIONAL INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 391 | 10/4/1999 | Unit Agreement and/or Unit Operating Agreement | ST 54 Unit Agreement, as amended and/or expanded by and between (Department of the Interior and Humble Oil & Refining Company, ... | Department of the Interior and Humble Oil & Refining Company | Fieldwood Energy LLC | ST 67 Lease 20 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 392 | 5/13/1999 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement (136360/68) by and between ... dated effective 13 May 1999 and as amended on 15 Mar 2004 | Unit Agreement (136360/68) by and between ... dated effective 13 May 1999 and as amended on 15 Mar 2004 | Fieldwood Energy LLC | GC 65 Lease G06889; GC 109 Lease G14968; GC 109 Lease G09590 | WILD WELL CONTROL, INC; DEEPWATER HORIZON ALTERNATIVES INC; MARUBENI OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ... | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 393 | | Oilfield Services | Screening (Shakers) Equipment | DERRICK CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 394 | 6/1/2018 | Marketing - Transportation | IT Transport Contracts by and between Destin Pipeline company, L.L.C and Fieldwood Energy LLC | Destin Pipeline company, L.L.C | Fieldwood Energy LLC | MC 110 Lease G16192; BB 52 Lease 17875 | MARUBENI OIL & GAS (USA) LLC; TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 395 | | Oilfield Services | Mechanical Parts | DEVALL DIESEL SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 396 | 10/25/2000 | Farmout Agreement | Farmout agreement, as amended: EI 312 with Devon | Devon | Fieldwood Energy LLC | EI 312 Lease G22979 | EPL OIL & GAS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 397 | 5/17/2007 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN DEVON ENERGY PRODUCTION COMPANY, L.P. AND HUNT PETROLEUM CORPORATION, ET AL. | Discovery Producer Services LLC | Fieldwood Energy LLC | MO 826 Lease G24076 | W & T OFFSHORE INC; W & T OFFSHORE, INC | $0.00 | Assume and Allocate Pursuant to Divisive Merger | | | x | |
| 398 | | Oilfield Services | 50984_Master Contract dated effective June 01, 2015 | DIVERSE SAFETY AND SCAFFOLDING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 399 | | Oilfield Services | Derrick Barge Rental | DIAMOND SERVICES CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 400 | 11/30/2014 | Non-Oilfield Services | Master Services Contract | DISA INC | Fieldwood Energy LLC | n.a. | n.a. | $12,774.45 | Assume and assign to Credit Bid Purchaser | | x | | |
| 401 | 1/1/2016 | Non-Oilfield Services | Master Services Contract | DISA INC | Fieldwood Energy LLC | n.a. | n.a. | $12,774.45 | Assume and assign to Credit Bid Purchaser | | x | | |
| 402 | 5/1/2016 | Acquisition / PSA / Other Purchase or Sale | 77777_Master Services Agreement dated effective 04/09/2018 | by and between Fieldwood Energy LLC and Discovery Producer Services LLC; E1 312 Pipeline Operating Agreement | Fieldwood Energy LLC; Fieldwood Energy SP LLC | ... | ... | $0.00 | Assume and Allocate Pursuant to Divisive Merger | | | x | |
| 403 | 6/29/2015 | Joint Operating Agreement | Joint Operating Agreement by and between Discovery Exploration & Production, Inc... | Discovery Producer Services LLC | Fieldwood Energy LLC | ST 311 Lease G31418 | W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Merger | | | x | |
| 404 | 5/17/2007 | Joint Operating Agreement | 77727_Master Services Agreement dated effective 01/17/2014 | Discovery Producer Services LLC | Fieldwood Energy LLC | ST 311 Lease G31418 | W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Merger | | | x | |
| 405 | | Oilfield Services | 79028_Master Services Agreement dated effective 01/17/2014 | DISTRIBUTION NOW L.P., aka DistributionNOW | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 406 | | Non-Oilfield Services | Perpetual Software License Agreement | DIVVUE LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 407 | | Oilfield Services | 77787_Master Services Agreement dated effective 04/06/2018 | DOF SUBSEA USA INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 408 | 12/20/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, L.L.C. | Dominion Exploration & Production, Inc. ... and Spinnaker Exploration Company, L.L.C. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | WC 150 Lease G12091 | WC 711 Lease G12091 | $0.00 | Assume and Allocate Pursuant to Divisive Merger | | | x | |
| 409 | 8/23/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc... | Dominion Exploration & Production, Inc. ... as Operator, and Spinnaker Exploration Company, L.L.C., as Non-Operator | Fieldwood Energy LLC | WC 711 Lease G22735 | WC 711 Lease G22735 | $0.00 | Assume and Allocate Pursuant to Divisive Merger | | | x | |
| 410 | 11/26/2019 | Settlement / Release / Relinquishment | Settlement and Release Agreement b/w Dominion Oklahoma Texas Exploration and Production, Inc. and Fieldwood Energy LLC | Dominion Oklahoma Texas Exploration and Production, Inc. and Fieldwood Energy LLC | Fieldwood Energy LLC | HI 45 Lease G12064 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 411 | | Oilfield Services | 77729_Master Services Agreement dated effective 09/18/2018 | DONECO LLC | Dynamic Offshore Resources, LLC; Enterprise GTM Offshore Operating Company, LLC | GC 65 Lease G06889 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 412 | | Oilfield Services | OEM Manufacture, Clark Gas Compressor Parts, Shop Repairs | DRESSER-RAND CO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 413 | | Oilfield Services | 564720_Master Services Agreement dated effective 09/05/2014 | DRILL CUTTINGS DISPOSAL COMPANY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 414 | | Oilfield Services | 510455_Master Services Agreement dated effective 11/01/2013 | DRILLCHEM DRILLING SOLUTIONS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 415 | | Oilfield Services | 514086_Master Services Agreement dated effective 11/01/2013 | DRILLING SERVICES OF AMERICA | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 416 | 12/19/1997 | Marketing - PHA | Shell Offshore Inc. (SOI) ... owner and operator of GC All Platform and Lease in Green Canyon GC Block ... | DYNAMIC OFFSHORE RESOURCES AND NOBLE ENERGY INC | Fieldwood Energy LLC; Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Noble Energy Inc. | Utilization of Bullwinkle Platform for Talon Prospect Lease G36621 | WILD WELL CONTROL, INC; DEEPWATER HORIZON ALTERNATIVES INC; MARUBENI OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ... | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 417 | | Oilfield Services | 77783_Master Services Agreement dated effective 05/14/2019 | DUPUIS INSPECTION SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 418 | | Oilfield Services | 50217B_Master Services Agreement dated effective 05/14/2019 | DUPONT INDUSTRIES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 419 | 9/26/2012 | Letter Agreement / Other Land Agreement | LETTER AGREEMENT BY AND BETWEEN DYNAMIC OFFSHORE RESOURCES NS, LLC AND ENERGY XXI GOM, LLC | Dynamic Offshore Resources NS, LLC; Energy XXI GOM, LLC | SS 221 Lease G01026; SS 248 Lease G01097; SS 249 Lease G01027; SS 207 Lease G01097 | SS 221 Lease G01026; SS 248 Lease G01097; SS 249 Lease G01097 | TALOS ERT LLC; W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 421 | | Construction, Maintenance, Construction Management, Ownership Agreements | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to a trunk pipeline system ... | Dynamic Offshore Resources, LLC; Enterprise GTM Offshore Operating Company, LLC | HI A-545; HI A-547; HI A-550 Lease G04081 | TARPMET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 422 | | Oilfield Services | 510177_Master Services Agreement dated effective 11/01/2013 | DYNAMIC INDUSTRIES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 423 | | Oilfield Services | Pipe Supplier | EAGLE PIPE, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Case 20-33948   Document 1394-1   Filed in TXSB on 05/26/21   Page 90 of 678

**Fieldwood Energy, LLC, et al.**
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which a contract relates, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Retained lease parties represent the counterparty to the leases identified in the Associated Leases column that are retained by the Debtors.
[5] Estimates listed in the Cure Estimate column are pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor(s) entities [2] | Associated Lease(s) [3] | Retained Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] |
|---|---|---|---|---|---|---|---|---|---|
| 424 | | Non-Upland Services | Perpetual Software License Agreement | ICAD, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 425 | | Oilfield Services | R0181_Master Services Agreement dated effective 12/12/2016 | ECHO OFFSHORE, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 426 | | Marketing - Other | Market Authorization Letter Agreement to act as agent for Ecopetrol America Inc. to Market gas production | ECOPETROL AMERICA INC. | Fieldwood Energy LLC | MC 946 Lease G26530, MC 948 Lease G32353, MC 950 Lease G24153, MC 992 Lease G24153, MC 992 Lease G35686, MC 993 Lease G34490 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC, ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 427 | 7/1/2006 | Joint Operating Agreement | Joint Operating Agreement | ECOPETROL AMERICA INC. | Fieldwood Energy LLC | 993 Lease G24154 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 428 | | Oilfield Services | 536166_Master Services Agreement dated effective 01/20/2014 | ECOSERV, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 429 | | Oilfield Services | S0098_Master Services Agreement dated effective 05/06/2018 | EDG INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 430 | | Oilfield Services | 542171_PO Terms & Conditions dated effective 05/20/2019 | EDGEN MURRAY CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 431 | | Oilfield Services | Produced Water EPA testing for WD63 permit | ELEMENT MATERIALS TECHNOLOGY LAFAYETTE LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 432 | 5/1/1988 | Operating Agreement - Other | Offshore Operating Agreement entered into May 1, 1988 by and between ELF Exploration Inc. as Operator and Penn Offshore, Inc. and Marathon | ELF Explorer Operating Inc. as Operator and Penn Offshore, Inc. and Marathon | Fieldwood Energy Offshore LLC | EI 342 Lease G02319 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 433 | 4/8/1988 | Joint Development / Venture / Exploration Agreements | ELF EXPLORATION INC AND COASTAL OIL & GAS CORPORATION | ELF EXPLORATION INC AND COASTAL OIL & GAS CORPORATION | Fieldwood Energy Offshore LLC | VK 778/K 790 Lease G08884, VK824 Lease G10436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 434 | 4/8/1988 | Letter Agreement - Other Land Agreements | LETTER DATED 04/08/1988 WITHIN PART OF THE COperating Agreement dated 05/01/1988 | ELF EXPLORATION INC AND NIPPON OIL EXPLORATION U.S.A. LIMITED | Fieldwood Energy Offshore LLC | VK 780 Lease G08884, VK 824 Lease G10436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 435 | | Oilfield Services | S7160_Master Services Agreement dated effective 11/01/2013 | ELITE COMMUNICATION SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 436 | | Oilfield Services | 7775TO_Master Services Agreement dated effective 10/30/2019 | ELMONT OIL FIELD SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $199,960.07 | Assume and assign to Credit Bid Purchaser |
| 437 | 3/1/2019 | Marketing - Service Agreement | SERVICES CONTRACT FOR PG-LAUNCHER BETWEEN EMPIRE AND FIELDWOOD ENERGY LLC | EMPIRE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE, INC | Fieldwood Energy LLC | EW 826 Lease G01600 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE, INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 438 | 12/1/2015 | Settlement / Release / Relinquishment Agreements | SERVICES CONTRACT for PG-LAUNCHER between LLC, ENI US Operating Co., Inc., ENI Petroleum US LLC, ENI Petroleum US LLC | ENI US Operating Co., Inc., ENI Petroleum US LLC, ENI Petroleum US LLC Release and & ENI US Operating INC | Fieldwood Energy LLC, Fieldwood Energy Offshore LLC | VK 823 Lease G02170, MC 182 Lease G02510, WC 130 Lease G27810, SS 263 Lease G27501, SS 204 Lease G03090, SS 248 Lease G27028, SS 249 Lease G27500, SS 270 Lease G02200, SS 271 Lease G02000, MC 72 Lease G27101, VK 915 Lease G34882, GA 151 Lease G31040 | ENI US OPERATING CO. INC., ENI PETROLEUM US LLC (indicate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) to Credit Bid Purchaser pursuant to the Divisive Merger and (ii) allocate pursuant to the Divisive Merger on account of the Excluded Assets (as defined in the Credit Bid | $1,500.00 | Assume and (i) assign to Credit Bid Purchaser pursuant to the Divisive Merger and (ii) allocate pursuant to the Divisive Merger on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) |
| 439 | | Oilfield Services | 701217_Master Services Agreement dated 09/05/2018 | ENCORE WELLHEAD SYSTEMS LLC | Fieldwood Energy LLC | SP 62 Lease G01244 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 440 | | Oilfield Services | 700864_Master Services Agreement dated effective 04/28/2014 | ENERGY COMPLETION SERVICES INC | Fieldwood Energy LLC | EI 330 Lease G02115 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 441 | 7/1/1998 | Farmout Agreement | PG by and between Energy Development Corp & Juniper Energy Inc | ENERGY DEVELOPMENT Corp & Juniper Energy Inc | Fieldwood Energy LLC | EI 57 Lease G02931 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 442 | | Oilfield Services | 7775FO_Master Services Agreement dated effective 10/30/2019 | ENERGY GRAPHICS INC | Fieldwood Energy LLC | n.a. | n.a. | $38,970.00 | Assume and assign to Credit Bid Purchaser |
| 443 | | Non-Oilfield Services | | ENERGY INFORMATION INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 444 | | Oilfield Services | BOP Certifier (Wellseco) | ENERGY RISK CONSULTING | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 445 | 9/9/2013 | Operating Agreement - Other | Amends certain JOA operating Agreement dated 02/01/2013 | Energy XXI GOM LLC | Fieldwood Energy LLC | SP 62 Lease G01244 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 446 | 5/1/1971 | Joint Operating Agreement | PEN6256_OFFSHORE GAS OPERATORS, INC., MEDIA PETROLEUM CO. ET AL. | Energy XXI GOM LLC | Fieldwood Energy LLC | EI 330 Lease G02115 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 447 | 12/1/1974 | Joint Operating Agreement | PEN6256_OFFSHORE GAS OPERATORS, INC. AND PENNZOIL OFFSHORE GAS OPERATORS, INC. AND PENNZOIL LOUISIANA AND TEXAS OFFSHORE, INC ET AL | Energy XXI GOM LLC, Fieldwood Energy LLC, OOM Shell LLC | Fieldwood Energy LLC | SM 127 Lease G06383, SM 141 Lease G02685 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 448 | 5/1/2009 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN PENNZOIL LOUISIANA AND TEXAS OFFSHORE, INC ET AL | Energy XXI GOM LLC, OOM Shell LLC | Fieldwood Energy LLC | SM 127 Lease G05067 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 449 | | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN ENERGY XXI GOM LLC, OCEAN ENERGY INC., MCMORAN OIL & GAS | Energy XXI GOM LLC, OCEAN ENERGY INC., MCMORAN OIL & GAS | Fieldwood Energy LLC | EI 106 Lease G03511 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 450 | 7/21/2009 | Joint Operating Agreement | 7B776_Terms & Conditions dated effective 06/08/2016 | Energy XXI GOM LLC, MCMORAN OIL & GAS LLC | Fieldwood Energy LLC | SM 280 Lease G14406 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 451 | | Oilfield Services | 77669_Master Services Agreement dated effective 06/08/2016 | ENGRAFITY GLOBAL LLC | Fieldwood Energy LLC | SM 280 Lease G14406 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 452 | | Oilfield Services | REVISED LETTER OF INTENT (FARMOUT) DATED DECEMBER 14, 1990, BY AND BETWEEN ENSERCH EXPLORATION INC. AND PETROBRAS AMERICA INC. | ENI PETROLEUM US LLC, ENI US Operating INC | Fieldwood Energy LLC | GA 151 Lease G31040, SS 246 Lease G05528, SS 248 Lease G02027, SS 247 Lease G05528, SS 248 Lease G27028, SS 250 Lease G27500, SS 270 Lease G07027, WC 100 Lease G27070, WC 72 Lease G27015, SS 270 Lease G02200, SS 271 Lease G02000, WC 72 Lease G27015 | ENI PETROLEUM US LLC, ENI US Operating INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 453 | | Oilfield Services | FARMOUT AGREEMENT EFFECTIVE MAY 2, 1976, BY AND BETWEEN ENSERCH EXPLORATION INC. AND ANADARKO FARMEC | ENSERCH, FARNOR, AND ANADARKO FARMEC | Fieldwood Energy LLC | HI A265 Lease G02703 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 454 | | Oilfield Services | by and between Fieldwood Energy Offshore LLC, ENI US Operating INC | Entech Enterprises, Inc. | Fieldwood Energy LLC | SS 271 Lease G01028 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 455 | 7/1/1966 | Joint Operating Agreement | 7.1.1966 SM 39 Joint Operating Agreement, as amended | ENTERGY GULF STATES LOUISIANA LLC | Fieldwood Energy LLC | SM 39 Lease G01203 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 456 | 5/2/1976 | Farmout Agreement | Fleet Misc | ENTERGY GULF STATES LOUISIANA LLC | Fieldwood Energy LLC | SM 39 Lease G01203 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 457 | 9/3/2016 | Withdrawal Agreement | | ENTERGY GULF STATES LOUISIANA LLC | Fieldwood Energy LLC | SM 280 Lease G14406 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 458 | | Oilfield Services | | EnVen Energy Ventures, LLC | Fieldwood Energy Offshore LLC | | MP GULF OF MEXICO, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |

Fieldwood Energy, LLC et al.
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors' decision to assume a contract is not based on the schedules below, but is based on the terms of the contracts. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent the counterparties to the oil and gas leases listed as associated leases, to the extent such counterparties are adjusted as the relevant agreement(s).
[5] Proposed contract treatment is subject to change and may be further amended, supplemented, or modified (the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Definitive Documents, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate | Proposed Contract Treatment [5] | FWI | Credit Bid Purchaser | FW II | FW III |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 480 | | Oilfield Services | Utilities - Gravel, tow and U venture | INTERGY LOUISIANA LLC | Fieldwood Energy LLC | n.a. | n.a. | $2,837.27 | Assume and assign to Credit Bid Purchaser | x | | | |
| 481 | 2/1/2006 | Marketing - Transportation | Memorandum of Agreement in addition to the Gas Gathering between Enterprise Field Services company, LLC and Noble Energy, Inc. - Dedication of production | Enterprise Field Services company, LLC and Noble Energy, Inc. - | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 461 | 5/1/2009 | Marketing - Transportation | Reimbursement Agreement between Enterprise Field Services, LLC and Anadarko Petroleum, EM Petroleum US LLC, ConocoPhillips Company, BHP Billiton Petroleum Inc, MOI Gulf of Mexico LLC, NIPPON Oil Exploration USA Limited, Hess Corporation, Repsol E&P USA | Enterprise Field Services, LLC and Anadarko Petroleum, EM Petroleum US LLC, ConocoPhillips Company, BHP Billiton Petroleum Inc, MOI Gulf of Mexico LLC, NIPPON Oil Exploration USA | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 462 | 10/7/2013 | Electrcis | Letter Agreement between Enterprise US Drilling LLC [ENTERPRISE OFFSHORE DRILLING LLC] | ENTERPRISE OFFSHORE DRILLING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 463 | 10/7/2013 | Electrcis | Letter Agreement between Enterprise US Drilling LLC and Envom Energy Ventures LLC | ENVEN ENERGY VENTURES LLC | Fieldwood Energy LLC | PL 13 Lease G20171 | ARENA ENERGY LLC; ENVEN ENERGY VENTURES, LLC | $0.00 | Assume and assign to Credit Bid Purchaser and assign to Divisive Mergers | | | x | |
| 464 | 2/26/1999 | Operating Agreement - Other | Operating Agreement between Walter Oil & Gas Corporation, EnVen Energy, Inc and ZMax Energy Operation and Brine Absence Exploration, Inc and ZMax Energy Operation, Inc | EnVen Energy Ventures, LLC; Fieldwood Energy LLC; Redwood Operator; An | Fieldwood Energy LLC | GA 133 Lease G15242 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and assign to Credit Bid Purchaser and assign to Divisive Mergers | | | x | |
| 465 | | Non-Oilfield Services | Perpetual Software License Agreement | ENVIRONMENTAL SYSTEMS RESEARCH INSTITUTE, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 466 | 11/1/2008 | Farmout Agreement | Farmout Agreement by and between EOG Resources, Inc. and EOG Farm-out Oil & Sales Production Company Inc. | EOG Resources, Inc. | Fieldwood Energy LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 467 | 10/12/2010 | Assignment of Oil & Gas Leasehold Interests | ABSEIM ASSIGNMENT OF 10-12-2010 with [EOG Resources, Inc. ("Assignor") and Northstar Offshore Energy Partners, LLC ("Assignee")] | EOG Resources, Inc. ("Assignor") and Northstar Offshore Energy Partners, LLC ("Assignee") | Fieldwood Energy LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 468 | 6/14/2005 | Farmout Agreement | Farmout Agreement by and between EOG Resources, Inc. and PetroQuest Energy One, L.L.C. | EOG Resources, Inc. and PetroQuest Energy One, L.L.C. | Fieldwood Energy LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 469 | | Oilfield Services | Doing & ROV Services, Well R&A, Cutting Services, Heavy Lifting | EPIC COMPANIES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 470 | | Oilfield Services | Doing & ROV Services, Well R&A, Cutting Services, Heavy Lifting, Diving Subsea | EPIC DIVING & MARINE SERVICES, LLC c/o idsonga | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 471 | 9/19/2020 | Non-Oilfield Services | Statement of Work | EPIC INSURANCE BROKERS & CONSULTANTS | Fieldwood Energy LLC | n.a. | n.a. | $145.16 | Assume and assign to Credit Bid Purchaser | x | | | |
| 472 | 12/4/2013 | Other Lease Rental Agreement | For and in interest Fieldwood Energy LLC; OGW Shelf LLC and EPL Oil & Gas, LLC - Amends certain Shelf Rental Agreement dated | Equinor USA E&P Inc; EPL Oil & Gas, LLC | Fieldwood Energy LLC | MP 302 Lease G32284 | APACHE SHELF EXPLORATION LLC; EPL OIL & GAS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 473 | 10/25/2005 | Property Participation & Exchange | E1315312 includes JOA with EPL | EPL OIL & GAS, LLC | Fieldwood Energy LLC | EI 312 Lease G22479 | EPL OIL & GAS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 474 | 4/28/2014 | Marketing - PHA | PHA MP 311MP309318 by and between Fieldwood and EPL Oil & GAS, LLC and EPL Oil & GAS, LLC | EPL OIL & GAS, LLC | Fieldwood Energy LLC | MP 311 Lease G00213 | EPL OIL & GAS, LLC; APACHE SHELF EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 475 | 2/6/1987 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN CONTINENTAL OIL COMPANY AND TENNECO OIL COMPANY (FL AS AMENDED) | EPL OIL & GAS, LLC; Fieldwood Energy LLC; OGW Shelf LLC | Fieldwood Energy LLC | MP 296 Lease G00333B; MP 303 Leases G04233; MP 304 Lease G04298 MP | EPL OIL & GAS, LLC; EPL OIL & GAS, LLC; APACHE SHELF EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 476 | 6/23/2003 | Marketing - Connection Agreement | OFFSHORE TIE-IN EQUALON ENTERPRISES LLC OGW SHELL OIL PRODUCTS US CONNECTION FOR BOURBON OIL PIPELINE AT MC311A | EQUALON ENTERPRISES LLC | Fieldwood Energy LLC | MC 311 Lease G02998 | ARENA ENERGY LP BRISTOW US LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 477 | 11/1/2011 | Joint Operating Agreement | Joint Operating Agreement by and between Marathon Oil Company, Equinor USA E&P Inc. Stone Energy Offshore L.L.C. | Equinor USA E&P; W & T Energy VI | Fieldwood Energy LLC | MC 660 512 Lease G24134 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 478 | 9/1/2012 | Joint Operating Agreement | Amended and Restated Operating Agreement between Stone Energy Corporation, Equinor USA E&P Inc. Stone Energy Offshore L.L.C. E&P Inc and Woodside Energy (USA) Inc dated and effective 11 Sep 2012 (Mississippi Canyon area 561) and | Equinor USA E&P; W & T Energy VI | Fieldwood Energy LLC | MC 562 512 Lease G24133 | ECOPETROL AMERICA LLC; TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 479 | | Oilfield Services | Operating Agreement for | Equinor USA E&P; W & T Energy VI | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 479 | | Oilfield Services | Consulting Agreement | ERA HELICOPTERS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 480 | | Oilfield Services | Explosives Contractor | ESEIS, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 481 | | Oilfield Services | Amendment of Operating Agreement, dated August 15, 1993, between Explosive Acquisition Company and Torch EnergyAdvisors Inc. | ETHOS ENERGY LIGHT TURBINES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 482 | | Oilfield Services | Gas Operations Supplies | EXPRESS SUPPLY & STEEL LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 483 | | Oilfield Services | RW008 Master Services Agreement effective 08/07/2015 | EXPRESS WELD LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 484 | | Oilfield Services | Rental Drill Bits | EXPRO INDUSTREAM SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 485 | | Oilfield Services | Everlaan Grease | Everlaan Global | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 486 | 7/3/2016 | Non-Oilfield Services | Services Agreement | EVERYTHINGBENEFITS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 487 | 5/8/2019 | Non-Oilfield Services | S04471, Master Services Agreement dated effective 11/01/2013 | EXPEDITORS & PRODUCTION SERVICES CO INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 488 | | Oilfield Services | Explosives Contractor - Amendment to Letter Agreement 10/24/2006 | EXPLORATION TECHNOLOGIES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 489 | | Oilfield Services | Explosives Contractor | EXPLOSIVE SERVICES INTERNATIONAL LTD | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 490 | 8/16/1993 | Joint Operating Agreement | Letter Agreement by and between Express Acquisition Company and Torch EnergyAdvisors Inc. | Express Acquisition Company and Torch EnergyAdvisors Inc. | Fieldwood Energy LLC | SS 207 Lease G01523 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 491 | | Oilfield Services | Pipeline Rental Tools Equipment | EXPRO NORTH SEA SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 492 | | Non-Oilfield Services | Service Agreement | EXTREME ENERGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 493 | 11/15/2013 | Joint Operating Agreement | S43421, Master Services Agreement dated effective 11/01/2013 | EXXON MOBIL CORPORATION and Apache Corporation | Fieldwood Energy LLC | WD 90 Lease G01099 | | $0.00 | Assume and assign to Credit Bid Purchaser and assign to Divisive Mergers | | | x | |
| 494 | 12/11/2001 | Letter Agreement - Other Land | Letter Agreement by and between Exxon Mobil Corporation and Apache Corporation - Amendment to Letter Agreement 10/24/2006 | Exxon Mobil Corporation and Apache Corporation | Fieldwood Energy LLC | | | $1 67/66 Lease 20 | Assume and assign to Credit Bid Purchaser | | x | | |
| 495 | 4/8/2008 | Letter Agreement - Other Land | Letter Agreement by and between Exxon Mobil Corporation and Apache Corporation - Amendment to Letter Agreement 10/24/2006 | Exxon Mobil Corporation and Apache Corporation | Fieldwood Energy LLC | | | $1 67/66 Lease 20 | Assume and assign to Credit Bid Purchaser | | x | | |
| 496 | | Joint Operating Agreement | EXXON MOBIL PIPELINE COMPANY CONNECTION AGREEMENT WITH APACHE CORPORATION | EXXONMOBIL PIPELINE COMPANY | Fieldwood Energy LLC | WD 90 Lease G01099 | | $0.00 | Assume and assign to Credit Bid Purchaser and assign to Divisive Mergers | | | x | |
| 497 | 8/21/2008 | Marketing - Connection Agreement | F&S Flange Connection Agreement with F & S Flange ASODAKO E EXXONMOBIL PIPELINE COMPANY WITH APACHE CORPORATION | F & S FLANGE ASODAKO & EXPORT S.P.A. | Fieldwood Energy LLC | MC 311 Lease G02998 | ARENA ENERGY LP BRISTOW US LLC | $0.00 | Assume and assign to Credit Bid Purchaser and assign to Divisive Mergers | | | x | |
| 498 | | Oilfield Services | S00150, Master Services Agreement dated effective 03/26/2013 | FASTORQ LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 499 | | Oilfield Services | S01490, Master Services Agreement dated effective 02/22/2014 | FDF ENERGY SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 500 | 6/1/2020 | Non-Oilfield Services | Service Agreement | FIELDPOINT SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 501 | 4/1/2009 | Marketing - Other | Allocation of quality basis by and between Fieldwood and Allocation Specialists, LLC and Allocation Specialists, LLC | Fieldwood and Allocation Specialists, LLC and Allocation Specialists, LLC | Fieldwood Energy LLC | GI 116 Lease G13944 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Page 84 of 54

Case 20-33948   Document 1394-1   Filed in TXSB on 05/26/21   Page 92 of 678

**Fieldwood Energy, LLC, et al.**
Prepared May 26, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors that are parties to the contracts being assumed. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Retained lease parties represent the counter parties relating to the working interest owners and/or lessors accounting system records.
[5] All estimates based on open pre-petition accounts payable balances. Cure estimates are subject to zero for completed/one-time agreements.

The proposed treatment set forth in this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Retained Leases Parties [4] | Cure Estimate | Proposed Contract Treatment [5] | FW1 | FW2 | Credit Bid Purchaser |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 502 | 11/1/2018 | Marketing - Other | Allocation of quantity sales by and between Fieldwood and Abraxas Specialists, LLC | Fieldwood and Abraxas Specialists, LLC and Abraxas Specialists, LLC | Fieldwood Energy LLC | GC 001 Lease G00489 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 503 | 1/1/2006 | Marketing - PHA | Gas Sale between Fieldwood and Anadarko US Offshore LLC | Fieldwood and Anadarko US Offshore LLC and Anadarko US Offshore LLC | Fieldwood Energy LLC | GC 768 Lease G24157 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 504 | 9/1/1997 | Marketing - PHA | GTT 7688.1 Sale by and between Fieldwood and Anena Offshore LLC | Fieldwood and Anena Offshore LLC and Anena Offshore LLC | Fieldwood Energy LLC | ST 161 Lease G01248, ST 146 Lease G01960 | ANENA ENERGY LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 505 | 10/31/2013 | Marketing - PHA | Gathering Agreement by and between Fieldwood and Anena Offshore LLC | Fieldwood and Anena Offshore LLC and Anena Offshore LLC | Fieldwood Energy LLC | EI 315 Lease G02112, EI 316 Lease G00540, EI 333 Lease G00312 | ANENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 506 | 9/21/2010 | Marketing - PHA | Gathering Agreement by and between BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood Energy LLC | MC 662 Lease G10966 | ANENA ENERGY LP | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 507 | 9/21/2010 | Marketing - PHA | MC 562 and MC 519 at MC 474(Genovesa) by and between Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood Energy LLC | MC 562 Lease G10996 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 508 | 9/21/2010 | Marketing - PHA | MC 519, Santiago MC 563,Santa Cruz MC 562 started at MC 563 by and between Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood Energy LLC | MC 519 Lease G27278, MC 474 Lease G33523 | BP EXPLORATION & PRODUCTION INC - HOUSTON ENERGY / DEEPWATER VENTURE LLC, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 509 | 9/21/2010 | Marketing - PHA | MC 562 and MC 519 at MC 474(Genovesa) by and between Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood and BP Exploration and Production Inc. and BP Exploration and Production Inc. | Fieldwood Energy LLC | MC 519 Lease G27278, MC 474 Lease G33523 | BP EXPLORATION & PRODUCTION INC - HOUSTON ENERGY / DEEPWATER VENTURE LLC, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 510 | 10/2/2011 | Marketing - Lease of Platform Space | BRESTOW I.S LLC and BREISTOW I.S. LLC and BREISTOW U.S. LLC | Fieldwood and BRISTOW US LLC and BRISTOW U.S. LLC | Fieldwood Energy LLC | EI 346 Lease G14480, MC 311 Lease G02496, SS 198 Lease G04232, ST 059 Lease G05644 | ANENA ENERGY LP, BRISTOW US LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 511 | 7/1/2014 | Marketing - PHA | VR 271 by and between Fieldwood and Castex Offshore Inc | Fieldwood and Castex Offshore Inc | Fieldwood Energy LLC | VR 271 Lease G04300 | ARENA ENERGY LP, BRISTOW OW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | |
| 512 | 11/1/2016 | Marketing - PHA | Gathering Agreement by and between Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | GC 065 Lease G00989 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 513 | 11/4/2016 | Marketing - PHA | Capacity Agreement by and between Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | GC 065 Lease G00989 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 514 | 6/13/2016 | Marketing - PHA | Capacity Agreement by and between Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | GC 065 Lease G00989 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 515 | 10/1/2016 | Marketing - PHA | Capacity Agreement by and between Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood Energy LLC | GC 065 Lease G00989 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 516 | 11/1/2016 | Marketing - PHA | Capacity Agreement by and between Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood Energy LLC | GC 065 Lease G00989 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 517 | 7/13/2016 | Marketing - PHA | Capacity Agreement by and between Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood and Chevron USA INC and Chevron USA INC | Fieldwood Energy LLC | GC 065 Lease G00989 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 518 | 2/2/1996 | Marketing - Pipeline Transport | Gathering Agreement by and between Fieldwood and DMA Pipeline and DMA Pipeline | Fieldwood and DMA Pipeline and DMA Pipeline | Fieldwood Energy LLC | ST 206 Lease G00613 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 519 | 9/30/2015 | Marketing - Pipeline Transport | Gathering Agreement by and between Fieldwood and DMPA PIPELINE PARTNERSHIP, LLC and DMPA PIPELINE PARTNERSHIP LLC | Fieldwood and DMPA PIPELINE PARTNERSHIP, LLC and DMPA PIPELINE PARTNERSHIP LLC | Fieldwood Energy LLC | ST 206 Lease G00613 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC, DMA PIPELINE | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 520 | 7/18/2002 | Marketing - PHA | R.H A&G by and between Fieldwood and Gas Operating, LLC and Gas Operating, LLC | Fieldwood and Gas Operating, LLC and Gas Operating LLC | Fieldwood Energy LLC | RI A&G Lease G02719 | COX OPERATING LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 521 | 7/31/2013 | Marketing - Pipeline Transport | Gas Gathering by and between Fieldwood and Energy XXI and Energy XXI | Fieldwood and Energy XXI and Energy XXI | Fieldwood Energy LLC | EI 315 Lease G02112, EI 316 Lease G00540, EI 333 Lease G00312 | ANENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 522 | 7/31/2013 | Marketing - Pipeline Transport | Gas Gathering by and between Fieldwood and Energy XXI and Energy XXI | Fieldwood and Energy XXI and Energy XXI | Fieldwood Energy LLC | EI 315 Lease G02112, EI 316 Lease G00540, EI 333 Lease G00312 | ANENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 523 | 11/1/2009 | Marketing - Lease of Platform Space | ER 4255 Lease G03093, MP 280 Lease G06686, SS 274 Lease G01019, ST 203 Lease G00613 by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC | Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC | Fieldwood Energy LLC | ER 4255 Lease G03093, MP 280 Lease G06686, SS 274 Lease G01019, ST 203 Lease G00613 | W & T OFFSHORE INC, Conoco Louisiana Pipeline LLC, EAST CAMERON GATHERING LLC, ERA HELICOPTERS LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 524 | 2/1/2011 | Marketing - Lease of Platform Space | Gathering Agreement by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC | Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC | Fieldwood Energy LLC | GC 065 Lease G00989 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |

Case 20-33948   Document 1394-1   Filed in TXSB on 05/26/21   Page 93 of 678

**Fieldwood Energy, LLC, et al.**
Prepared May 26, 2021

## Schedule of Assumed Contracts

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The "Debtor Entities" reflect the current party to the contract based on the actual schedules, amendments, and/or assignments. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Retained lease parties represent the non-debtor parties working interest owners and all parties based on JOA/operating agreements for completed/hole agreements.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed/hole agreements.
[6] The Proposed Contract Treatment refers to the treatment under the Plan. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The proposed treatment set forth on this Schedule of Assumed Contracts, plus the Divisive Merger and the Schedule of Assumed Contracts relating to the Divisive Merger and the Definitive Documents relating to the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Associated Lease [2] | Debtor Entities [3] | Retained Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Credit Bid Purchaser | FWE | FWE III |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 525 | 2/26/1999 | Marketing - PHA | PHA by and between Fieldwood and FIELDWOOD ENERGY LLC | Fieldwood and FIELDWOOD ENERGY LLC | GC 001 Lease G00869 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 526 | 4/1/2007 | Marketing - PHA | RIG/RFS/MRS/MCAR/CFS by and between Fieldwood and FWE | Fieldwood and FWE and FWE | MP 289 Lease G01666 | Fieldwood Energy LLC | ANADARKO US OFFSHORE, LLC, ERA … | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | |
| 527 | 9/14/1995 | Marketing - PHA | PHA SM289-SM298A by and between Fieldwood and FWE and FWE | Fieldwood and FWE and FWE | SM 266 Lease G02310 | Fieldwood Energy LLC | HELIS OIL & GAS CO, AMERICAN PANTHER, LLC … | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | |
| 528 | 5/1/2012 | Marketing - PHA | PHA EI354-EI337A by and between Fieldwood and FWE | Fieldwood and FWE and FWE | EI 354 Lease G10732, EI 337, EI 337 | Fieldwood Energy LLC | RIDGEWOOD ENERGY CORPORATION, COX … | $0.00 | Assume and allocate pursuant to Divisive Mergers | | x | |
| 529 | 12/10/2013 | Marketing - PHA | MC 25 by and between Fieldwood and GULFSTAR ONE LLC and GULFSTAR ONE LLC … | Fieldwood and GULFSTAR ONE LLC and GULFSTAR ONE LLC as amended by | MC 044L Lease G28030 | Fieldwood Energy LLC | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and allocate pursuant to Divisive Mergers | | x | |
| 530 | 4/1/2018 | Marketing - PHA | PHA by and between Fieldwood and KX PROSPECT KATMAI LLC and KX PROSPECT KATMAI LLC | Fieldwood and KX PROSPECT KATMAI LLC and KX PROSPECT KATMAI LLC | GC 001 Lease G01666 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 531 | 1/17/1997 | Marketing - PHA | Fieldwood and Manta Ray Offshore Gathering Co., LLC and Manta Ray Offshore Gathering Co., LLC | Fieldwood and Manta Ray Offshore Gathering Co., LLC and Manta Ray Offshore Gathering Co., LLC | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 532 | 1/14/2019 | Marketing - PHA | RED WILLOW OFFSHORE, LLC and RED WILLOW OFFSHORE LLC | Fieldwood and RED WILLOW OFFSHORE LLC and RED WILLOW OFFSHORE LLC | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 533 | 1/1/2020 | Marketing - Pipeline Transport | Transportation Agreement by and between Fieldwood and RED WILLOW OFFSHORE, LLC and RED WILLOW OFFSHORE, LLC | Fieldwood and RED WILLOW OFFSHORE, LLC and RED WILLOW OFFSHORE, LLC | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 534 | 4/1/2018 | Marketing - PHA | PHA ST 308 Katmai by and between Fieldwood and RIDGEWOOD KATMAI LLC and RIDGEWOOD KATMAI | Fieldwood and RIDGEWOOD KATMAI LLC and RIDGEWOOD KATMAI | GC 001 Lease G01666 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 535 | 4/26/2009 | Marketing - Lease of Platform Space | Fieldwood and Rotorcraft Leasing Company, LLC and Rotorcraft Leasing Company, LLC | Fieldwood and Rotorcraft Leasing Company, LLC and Rotorcraft Leasing Company, LLC | MI 623 Lease G00000 | Fieldwood Energy LLC | ENVEN ENERGY VENTURES LLC, HELIS OIL & GAS COMPANY LLC, ROTOCRAFT LEASING LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 536 | 4/29/2000 | Marketing - Lease of Platform Space | Fieldwood and Rotorcraft Leasing Company, LLC and Rotorcraft Leasing Company, LLC | Fieldwood and Rotorcraft Leasing Company, LLC and Rotorcraft Leasing Company, LLC | MC 696 Lease G26522, MC 762 Lease G33757 | Fieldwood Energy LLC | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | |
| 537 | 8/26/2014 | Marketing - Lease of Platform Space | MC 728 by and between Fieldwood and SBM Gulf Production, LLC and SBM Gulf Production, LLC | Fieldwood and SBM Gulf Production, LLC | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 538 | 1/1/2010 | Marketing - Pipeline Transport | Annual CIP3 payment for 10" Pipeline by and between Fieldwood and Shell GOM Pipeline CO LLC and Shell GOM Pipeline CO LLC | Fieldwood and Shell GOM Pipeline CO LLC and Shell GOM Pipeline CO LLC | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 539 | 11/1/2016 | Marketing - Pipeline Transport | Annual CIP3 payment for 16" Pipeline by and between Fieldwood and Shell GOM Pipeline CO LLC and Shell GOM Pipeline CO LLC | Fieldwood and Shell GOM Pipeline CO LLC and Shell GOM Pipeline CO LLC | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 540 | 3/1/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 541 | 12/5/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 542 | 12/5/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 543 | 12/5/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |
| 544 | 12/5/2016 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | GC 001 Lease G00589 | Fieldwood Energy LLC | WILD WELL CONTROL, INC, DEEPWATER … | $0.00 | Assume and assign to Credit Bid Purchaser | x | | |

Case 20-33948   Document 1394-1   Filed in TXSB on 05/26/21   Page 94 of 678

**Fieldwood Energy, LLC, et al.,**
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors reserve all rights to amend the schedule in any way. To the extent the Debtors are able to identify the proper Debtor entity for the contracts associated with or stated in the same underlying contract.
[3] Associated Leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Retained Leases Parties represent the parties to the Retained Leases.
[5] If estimate listed in Cure Estimate column is pre-petition accounts payable balance. Cure estimates are adjusted to zero for completed trade agreements.
[6] Applicable Entity represents the purchaser under the proposed treatment. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Marketing Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Retained Leases Parties [4] | Cure Estimate | Proposed Contract Treatment [5] | FW | Credit Bid Purchaser | FW II | FW I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 545 | 6/26/2019 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood Energy LLC | OC-G65 Lease G03989 | WILD WELL CONTROL INC; DEEPWATER ABANDONMENT ALTERNATIVES INC; MARUBENI OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ENI HELICOPTERS INC; MANTA RAY OFFSHORE GATHERING; RED WILLOW OFFSHORE, LLC; TALOS ENERGY OFFSHORE, LLC; CHEVRON USA INC; W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 546 | 6/26/2019 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and SHELL TRADING (US) COMPANY | Fieldwood and SHELL TRADING (US) COMPANY and SHELL TRADING (US) COMPANY | Fieldwood Energy LLC | OC-G65 Lease G03989 | WILD WELL CONTROL INC; DEEPWATER ABANDONMENT ALTERNATIVES INC; MARUBENI OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ENI HELICOPTERS INC; MANTA RAY OFFSHORE GATHERING; RED WILLOW OFFSHORE, LLC; TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 547 | 6/30/1999 | Marketing - Pipeline Transport | MC 109 MO110 by and between Fieldwood and Telra Energy and Telra Energy | Fieldwood and Telra Energy and Telra Energy | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC; TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 548 | 3/7/2007 | Marketing - PHA | SM 107 by and between Fieldwood and Telra Energy and Telra Energy | Fieldwood and Telra Energy and Telra Energy | Fieldwood Energy LLC | | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | X | | | |
| 549 | 6/30/1999 | Marketing - PHA | MC 109 MC 109 by and between Fieldwood and Telra Energy LLC and Telra Energy LLC | Fieldwood and Telra Energy LLC and Telra Energy LLC | Fieldwood Energy LLC | MC 108 Lease G06777 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | X | | | |
| 550 | 1/14/2019 | Marketing - PHA | Capacity Agreement by and between Telra Energy Offshore, LLC and Telra Energy Offshore, LLC | Fieldwood and Telra Energy Offshore, LLC and Telra Energy Offshore, LLC | Fieldwood Energy LLC | MP 260 Lease G26769; MP 310 Lease G04728 | TALOS ENERGY OFFSHORE, LLC; RED WILLOW OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | X | | | |
| 551 | 1/14/2019 | Marketing - PHA | Capacity Agreement and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC | Fieldwood and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC | Fieldwood Energy LLC | OC-G65 Lease G03989 | WILD WELL CONTROL INC; DEEPWATER ABANDONMENT ALTERNATIVES INC; MARUBENI OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ENI HELICOPTERS INC; MANTA RAY OFFSHORE GATHERING; RED WILLOW OFFSHORE, LLC; TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 552 | 1/1/2020 | Marketing - Pipeline Transport | Transportation Agreement by and between Fieldwood and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC | Fieldwood and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC | Fieldwood Energy LLC | OC-G65 Lease G03989 | WILD WELL CONTROL INC; DEEPWATER ABANDONMENT ALTERNATIVES INC; MARUBENI OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ENI HELICOPTERS INC; MANTA RAY OFFSHORE GATHERING; RED WILLOW OFFSHORE, LLC; TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 553 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | ST 308 Lease G21865 | VR 371 Lease G00524 | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 554 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | VR 371 Lease G00524 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | X | | | |
| 555 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | GI 43 Lease 1175 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 556 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | GI 116 Lease G13944 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 557 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-2 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | EI 120 Lease 90 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 558 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and Fieldwood and TAMPNET and TAMPNET | Fieldwood and TAMPNET and TAMPNET | Fieldwood Energy LLC | SP 89 Lease G34067 | SP 89 Lease G01524 | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 559 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | SP 207 Lease G01523; SS 176 Lease G01524 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 560 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-4 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | WC 71 Lease 344 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 561 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-4 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | WC 73 Lease 342 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 562 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-2 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | WD 515 Lease 342 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | X | | | |
| 563 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-2 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | GI 43 Lease 175 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 564 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | ST 200 Lease G25446 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | X | | | |
| 565 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-2 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | EI 315 Lease G02112 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 566 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | EI 346 Lease G14462 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 567 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-4 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | SB 189 Lease G04232 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 568 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | HI A-370 Lease G02393; MC 311 Lease G00996; SP 70 Lease G01914 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 569 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-2 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | SS 216 Lease G02759 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 570 | 9/12/2019 | Marketing - Pipeline Transport | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | BA 425 Lease G01702 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 571 | 9/12/2019 | Marketing - Lease of Platform Space | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company | Fieldwood and TAMPNET | Fieldwood Energy LLC | EI 315 Lease G02112; EI 316 Lease G00540; EI 326 Lease G00043 | HILCO SERVICES CO; AMERICAN PANTHER, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 572 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company | Fieldwood Energy LLC | MP 310 Lease G24728 | MP 310 Lease G04728; TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 573 | 9/12/2019 | Marketing - Lease of Platform Space | TAM102-LDPS-3 by and between Fieldwood and TAMPNET | Fieldwood and TAMPNET | Fieldwood Energy LLC | EI 224 Lease G05304 | HILCO SHELL (US); WALTER OIL & GAS | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 574 | 12/1/2016 | Marketing - Other | AGREEMENT FOR IVR IN PRODUCTION TO FLOW TO TRANSCO'S PIPELINE | FIELDWOOD AND TRANSCO | Fieldwood Energy LLC | VR 78 Lease G00431 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 575 | 12/1/2016 | Marketing - Interconnection and Measurement Agreement | ALDPS-E1680 by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation | FIELDWOOD and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation | Fieldwood Energy LLC | WD 123 Lease G13645 | DIVISION KINGS | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | X | | | |
| 576 | 9/1/1981 | Marketing - PHA | SS 359 A by and between Fieldwood and Transcontinental Gas Pipeline Corporation | FIELDWOOD and Transcontinental Gas Pipeline Corporation | Fieldwood Energy LLC | WD 79; WD 80 Lease G01074 | APACHE SHELF EXPLORATION LLC; Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | X | | | |
| 577 | 12/1/2016 | Marketing - Pipeline Transport | ALDPS-E1680 by and between Fieldwood and Transcontinental Gas Pipeline Co LLC | FIELDWOOD and Transcontinental Gas Pipeline Co LLC | Fieldwood Energy LLC | EI 106 Lease G01226 | Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 578 | 7/8/2013 | Marketing - Other | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company | FIELDWOOD and Tana Exploration Company, LLC and Tana Exploration Company | Fieldwood Energy LLC | EI 315 Lease G02112; EI 316 Lease G00540; EI 326 Lease G00043; EI 328 Lease G03442 | ARENA ENERGY LP; TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 579 | 3/1/2014 | Marketing - Other | ALDPS-2 by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company | FIELDWOOD and Tana Exploration Company, LLC and Tana Exploration Company | Fieldwood Energy LLC | BS 25 Lease G03442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 580 | 12/1/2016 | Marketing - Other | AGREEMENT FOR IVR IN PRODUCTION TO FLOW TO TRANSCO'S PIPELINE | FIELDWOOD AND TRANSCO | Fieldwood Energy LLC | VR 78 Lease G00431 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 581 | 12/1/2016 | Marketing - Other | AGREEMENT FOR IVR IN PRODUCTION TO FLOW TO TRANSCO'S PIPELINE | FIELDWOOD AND TRANSCO | Fieldwood Energy LLC | VR 78 Lease G00431 | | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 582 | 9/1/1981 | Marketing - PHA | ALDPS Lease by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation | FIELDWOOD and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation | Fieldwood Energy LLC | EI 106 Lease G01226 | APACHE SHELF EXPLORATION LLC; Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | X | | | |
| 583 | 9/1/1981 | Marketing - PHA | ALDPS SSA by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation | FIELDWOOD and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation | Fieldwood Energy LLC | EI 106 Lease G01226 | APACHE SHELF EXPLORATION LLC; Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | X | | | |
| 584 | 3/1/2017 | Marketing - Other | BE335L TRBOM by and between Fieldwood and Upstream Exploration LLC and Upstream Exploration LLC | FIELDWOOD and Upstream Exploration LLC and Upstream Exploration LLC | Fieldwood Energy LLC | BS 52 Lease 17675 | UPSTREAM EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |
| 585 | 6/1/1996 | Marketing - PHA | SS 300 B/S#09/2 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. | FIELDWOOD and W & T Offshore, Inc. and W & T Offshore, Inc. | Fieldwood Energy LLC | SS 300 Lease G00760; SS 321 Lease G01104 | W&T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | X | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**

Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| | | | | | | | | | | | Applicable Entity | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW I | Credit Bid Purchaser | FW III | FW IV |
| 586 | 10/23/2018 | Marketing - PHA | MO826-VK251 by and between Fieldwood and W& T Offshore and W& T Offshore | Fieldwood and W& T Offshore and W& T Offshore | Fieldwood Energy LLC | MO 826 Lease G26176 | W & T OFFSHORE INC, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 587 | 3/1/2017 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 588 | 3/1/2017 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 589 | 8/1/2018 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 590 | 8/1/2018 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood and W&T Energy Energy VI, LLC and W&T Energy Energy VI, LLC | Fieldwood Energy LLC | GC 065 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 591 | | Marketing - PHA | ST 320 A-5ST1 by and between Fieldwood and W&T Offshore, Inc. and W&T Offshore, Inc. | Fieldwood and W&T Offshore, Inc. and W&T Offshore, Inc. | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 592 | 11/12/2013 | Marketing - Pipeline Transport | Capacity Agreement by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood Energy LLC | EW 826 Lease G05800 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 593 | 9/30/2004 | Marketing - PHA | PHA for EB165A/EB430 by and between Fieldwood and WALTER OIL & GAS CORPORATION and WALTER OIL & GAS CORPORATION | Fieldwood and WALTER OIL & GAS CORPORATION and WALTER OIL & GAS CORPORATION | Fieldwood Energy LLC | EI 224 Lease G05504 | TALOS PETROLEUM LLC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 594 | 10/21/2018 | Marketing - PHA | ST 320 A02 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 595 | 5/20/2019 | Marketing - PHA | ST 320 A03 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 596 | | Marketing - PHA | ST 311 A1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 597 | 6/14/2000 | Marketing - Lease of Platform Space | WIL174 OP&MN FEE-VK251A by and between Fieldwood and WILLIAMS FIELD SERVICES and WILLIAMS FIELD SERVICES | Fieldwood and WILLIAMS FIELD SERVICES and WILLIAMS FIELD SERVICES | Fieldwood Energy LLC | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and allocate pursuant to divisive mergers | x | | x | |
| 598 | 1/7/2016 | Other | Services Agreement | Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 599 | 1/7/2016 | Other | Services Agreement | Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 600 | 2/21/2018 | Other | Engineering, Procurement, Construction and Installation Services Agreement | Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 601 | | Other | Contract for the Extraction of Hydrocarbons under the Production Sharing Modality - Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 602 | 3/1/2011 | Marketing - Processing | POL (0.3/GPM) 80-90% PLUS FEE = $.15 /MCF (ESC) by and between Fieldwood Energy LLC (Formally Noble Energy Inc.) and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC (Formally Noble Energy Inc.) and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 603 | 1/22/2015 | Marketing - Reserve Commitment | Big Bend / Dantzler Reserve Commitment between Fieldwood Energy LLC (Successor to Noble Energy, Inc) and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC (Successor to Noble Energy, Inc) and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC | MC 742 Lease G32343, MC 697 Lease G28021, MC 698 Lease G28022, MC 782 Lease G33757 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 604 | 2/1/2012 | Marketing - Reserve Commitment | Galapagos, Santiago/Santa Cruz Reserve Commitment between Fieldwood Energy LLC (Successor to Noble Energy, Inc) and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC (Successor to Noble Energy, Inc) and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC | MC 519 Lease G27278, MC 562 Lease G19966, MC 563 Lease G21176 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 605 | 10/1/2015 | Marketing - Processing | Coordination Agreement between Fieldwood Energy LLC and (Spectra) Texas Eastern and Texas Eastern to Process at Targa Venice | Fieldwood Energy LLC and (Spectra) Texas Eastern and Texas Eastern to Process at Targa Venice | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 606 | 2/7/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Air Liquide Large Indsutries U.S. LP | Fieldwood Energy LLC and Air Liquide Large Indsutries U.S. LP | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 607 | 10/1/2013 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Apache Corporation | Fieldwood Energy LLC and Apache Corporation | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 608 | 2/1/2016 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Arena Energy, LP | Fieldwood Energy LLC and Arena Energy, LP | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 609 | 7/1/2019 | Marketing - Processing | between $.15 /mmbtu to $.10 /mmbtu depending on volume esc by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC and Arrowhead Louisiana Pipeline, LLC | Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC | Fieldwood Energy LLC | WC 33 Lease G15050, WC 66 Lease G02826, WC 65 Lease G02825, EC 9/14 Lease G01440, EC 2 SL16473 Lease 16473, EC 2 SL16473 Lease 16473 | FAIRFIELD ROYALTY CORP, HILCORP ENERGY 1 LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 610 | 12/1/2008 | Marketing - Processing | Greater of FEE or POL (85%/15%) min Fee $.16 (annual esclator) by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC | VR 78 Lease G04421, GI 43 (GI 32 - 52 / WD 67-71, 94-96) Lease 175, VR 229 Lease G27070 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 611 | 1/1/2011 | Marketing - Processing | Greater of FEE or POL (85%/15%) min Fee $.16 (annual esclator) by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC | VR 78 Lease G04421, GI 43 (GI 32 - 52 / WD 67-71, 94-96) Lease 175, VR 229 Lease G27070 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 612 | 9/17/2017 | Marketing - Processing | Greater of FEE or POL (85%/15%) min Fee $.16 (annual esclator) by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC | VR 78 Lease G04421, GI 43 (GI 32 - 52 / WD 67-71, 94-96) Lease 175, VR 229 Lease G27070 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 613 | 3/1/2020 | Marketing - Processing | Amend to FEE: Transco VR 66/78 = $.1873 per MMBtu(annual Esclator); Kinetica Egan Gap interconect = $.08 per mmbtu (not subject to Esclator) by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC current operator and Arrowhead Louisiana Pipeline, LLC current operator | Fieldwood Energy LLC | VR 78 Lease G04421, GI 43 (GI 32 - 52 / WD 67-71, 94-96) Lease 175, VR 229 Lease G27070, ST 53 Lease G04000 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 614 | 7/1/2017 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and BASF Intertrade Corporation | Fieldwood Energy LLC and BASF Intertrade Corporation | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 615 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Boston Gas Company D/B/A National Grid | Fieldwood Energy LLC and Boston Gas Company D/B/A National Grid | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 616 | 11/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and BP Energy Company | Fieldwood Energy LLC and BP Energy Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 617 | 1/1/2020 | Property Participation & Exchange Agreements | Lease Exchange and Well Participation Agreement dated effective 20 January 2020 by and between Fieldwood Energy LLC and BP Exploration and Production Inc covering MC 474 / 518 | Fieldwood Energy LLC and BP Exploration and Production Inc covering MC 474 / 518 | Fieldwood Energy LLC | MC 474 Lease G35825, MC 518 Lease G35828 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 618 | 6/1/2020 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 782 Lease G33757, MC738 Lease G32343 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| | | | | | | | | | | Applicable Entity | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW I | Credit Bid Purchaser | FW III | FW IV |
| 619 | 6/1/2020 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | MC 742 Lease G32343 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 620 | 4/1/2021 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | MC 474 Lease G35825 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 621 | 11/30/2017 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 622 | 5/19/2020 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | MC 698 Lease G28022, MC 782 Lease G33757 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 623 | 6/1/2020 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | MC 698 Lease G28022 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 624 | 7/1/2020 | Marketing - Crude Sales | BP Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC and BP Oil Supply, a Division of BP Products North America Inc. and BP Oil Supply, a Division of BP Products North America Inc. | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 625 | 6/14/2000 | Marketing - Gathering | Gas Gathering Agreement by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend | Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend | Fieldwood Energy LLC | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 626 | 6/14/2000 | Marketing - Gathering | Gas Gathering Agreement by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend | Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend | Fieldwood Energy LLC | VK 251 Lease G10930 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 627 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Castex Energy, Inc. | Fieldwood Energy LLC and Castex Energy, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 628 | 7/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Castex Offshore, Inc. | Fieldwood Energy LLC and Castex Offshore, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 629 | 9/13/2011 | Marketing - Transportation | Chandeleur IT Transportation - Fieldwood interest in MP 59 was sold to Cantium by and between Fieldwood Energy LLC and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream | Fieldwood Energy LLC and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream | Fieldwood Energy LLC | MP 59 Lease G03194 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 630 | 3/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Chevron Natural Gas | Fieldwood Energy LLC and Chevron Natural Gas | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 631 | 2/25/2011 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC | EI 315 Lease G02112, EI 316 Lease G05040, EI 330 Lease G02115, EI 281 Lease G09591, EI 282 Lease G09592, EI 329 Lease G02912, EI 337 Lease G03332 | ARENA ENERGY LP, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 632 | 2/1/2019 | Marketing - Other | Methanol Treatment Agreement by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC | MC 948 Lease G28030 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 633 | 10/1/1984 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides for the construction and operation of the EI 361 Pipeline. Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company | Fieldwood Energy LLC | EI 354 Lease G10752, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324 | RIDGEWOOD ENERGY CORPORATION, COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 634 | 5/31/2018 | Marketing - Crude Sales | Gunflint - Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company | Fieldwood Energy LLC | MC 904 Lease G36566, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 635 | 1/30/2014 | Marketing - Crude Sales | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | MP 77 Lease G04481 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 636 | 1/31/2014 | Marketing - Crude Sales | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | PL 13 Lease G03171, MP 140 Lease G02193 | ANKOR ENERGY LLC, ENVEN ENERGY VENTURES, LLC; JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 637 | 5/31/2018 | Marketing - Crude Sales | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | MC 948 Lease G28030 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 638 | 1/31/2014 | Marketing - Crude Sales | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | SS 274 Lease G01039, EI 188 Lease 443, SM 149 Lease G02592, SM 132 Lease G02282, SM 268 Lease G02310, SS 204 Lease G01520, SS 207 Lease G01523, SS 216 Lease G01524, ST 311 Lease G31418, SM 40 Lease G13607, SM 41 Lease G01192, SM 44 Lease G23840, SM 41 Lease G01192, SM 44 Lease G23840, SM 39 Lease G16320, SM 48 Lease 786 | ERA HELICOPTERS INC. | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | x |
| 639 | 3/18/2014 | Marketing - Crude Sales | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company | Fieldwood Energy LLC | GI 116 Lease G13944, ST 320 Lease G24990 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 640 | 9/1/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and CIMA Energy, LTD | Fieldwood Energy LLC and CIMA Energy, LTD | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 641 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Colonial Gas Company D/B/A National Grid | Fieldwood Energy LLC and Colonial Gas Company D/B/A National Grid | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 642 | 3/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and ConocoPhillips Company | Fieldwood Energy LLC and ConocoPhillips Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 643 | 11/30/2018 | Marketing - Transportation | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC | Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC | Fieldwood Energy LLC | EI 136 Lease G03152, EI 158 Lease G01220, EI 173 Lease G13622, EI 174 Lease G03782, EI 175 Lease 438, EI 187 Lease G10736, EI 189 Lease 423, EI 211 Lease G05502, EI 212 Lease G05503, EI 307 Lease G02110, SS 151 Lease G15282, SS 175 Lease G05550, SS 176 Lease G33646, SS 246 Lease G01027, SS 247 Lease G01028, SS 248 Lease G01029, SS 249 Lease G01030, SS 271 Lease G01038, SS 274 Lease G01039, SS 291 Lease G02923 | APACHE SHELF EXPLORATION LLC, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 644 | 7/8/2011 | Marketing - Gathering | Galapagos, FT 2 - plus 5 amendments-MDQ changes by and between Fieldwood Energy LLC and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC | MC 519 Lease G27278, MC 562 Lease G19966, MC 563 Lease G21176 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 645 | 8/28/2015 | Marketing - Gathering | Big Bned Dantzler, Destin FT2, - plus 4 amendments-MDQ changes by and between Fieldwood Energy LLC and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC and Destin Pipeline Company, LLC and Destin Pipeline Company, LLC | Fieldwood Energy LLC | MC 782 Lease G33757, MC 697 Lease G33757 | RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 646 | 11/15/2013 eff 12/1/2013 | Marketing - Transportation | Discovery Gas FT2 agreement; plus amendments to MDQ and Exhibit B by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 647 | 11/15/2013 eff 12/1/2013 | Marketing - Transportation | Discovery Gas FT2 Discount letter by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 648 | 5/1/2020 | Marketing - Transportation | Disocvery Gas - FT2 agreement; by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 649 | 5/1/2020 | Marketing - Transportation | Discovery Gas FT2 Discount letter by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 650 | 4/1/2015 | Marketing - Transportation | Disocvery Gas - FT2 agreement; by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 651 | 4/1/2015 | Marketing - Transportation | Discovery Gas FT2 Discount letter by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| | | | | | | | | | | Applicable Entity | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW I | Credit Bid Purchaser | FW III | FW IV |
| 652 | 4/1/2015 | Marketing - Gathering | Discovery Gas Gathering and Gas Dedication by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 653 | 7/15/2004 | Marketing - Transportation | Condensate Transportation Agreement by and between Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 654 | 8/25/2009 | Marketing - Separation & Stablization | Amendment Letter to Condensate Transport Agreement ST 308 Tarantula by and between Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 655 | 4/1/2015 | Marketing - Transportation | Liquids Transportation Agreement by and between Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC | Fieldwood Energy LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 656 | 7/15/2004 | Marketing - Separation & Stablization | Liquids Sep., Handling, Stab.,and Redelivery Agreement by and between Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producer Services LLC | Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producer Services LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 657 | 5/1/2020 | Marketing - Separation & Stablization | Liquids Sep., Handling, Stab.,and Redelivery Agreement by and between Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producer Services LLC | Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producer Services LLC | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 658 | 10/1/2006 | Marketing - Separation & Stablization | Amendment Letter to Condensated Sep., and Redelivery Agreement ST 308 Tarantula by and between Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producter Services LLC | Fieldwood Energy LLC and Discovery Producer Services LLC and Discovery Producter Services LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 659 | 2/24/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and DTE Energy Trading, Inc. | Fieldwood Energy LLC and DTE Energy Trading, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 660 | 2/1/2017 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Duke Energy Carolinas, LLC | Fieldwood Energy LLC and Duke Energy Carolinas, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 661 | 5/6/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Duke Energy Florida, Inc. | Fieldwood Energy LLC and Duke Energy Florida, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 662 | 2/27/2015 | Marketing - Transportation | Crude Oil Transport. by and between Fieldwood Energy LLC and Endymion Oil Pipeline Company LLC and Endymion Oil Pipeline Company LLC | Fieldwood Energy LLC and Endymion Oil Pipeline Company LLC and Endymion Oil Pipeline Company LLC | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343, MC 782 Lease G33757 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 663 | 10/1/1981 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC | Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC | Fieldwood Energy LLC | WD 80 Lease G01989, WD 85 Lease G04895, WD 86 Lease G02934, SP 87 Lease G07799, SP 89 Lease G01618, WD 104 Lease 841, WD 105 Lease 842, WD 133 Lease G01106, WD 121 Lease G19843, WD 122 Lease G13645, WD 128 Lease G10883, SP 87 Lease G07799, SP 88 Lease G10894 | TAMPNET INC; TALOS ERT LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 664 | 9/16/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Enlink Gas Marketing, LP | Fieldwood Energy LLC and Enlink Gas Marketing, LP | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 665 | 4/1/2020 | Marketing - Processing | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC | Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC | Fieldwood Energy LLC | EI 126 Lease 52, EI 136 Lease G03152, EI 158 Lease G01220, SS 32 Lease 335, SS 33 Lease 336, SS 91 Lease G02919, SS 214 Lease 828, SS 233 Lease G01528, SS 246 Lease G01027, SS 271 Lease G01038, SS 252 Lease G01529, SS 253 Lease G01031, SS 354 Lease G15312, SM 93 Lease G21618, SM 139 Lease G21106, PL 1 Lease G04234, PL 9 Lease G02924, PL 10 Lease G02925, PL 11 Lease 71, SS 68 Lease G02917, PL 10 Lease G02925, PL 11 Lease 71, ST 242 Lease G23933, ST 315 Lease G23946, ST 316 Lease G22762, VR 272 Lease G23829, VR 313 Lease G01172, VR 315 Lease G04215, VR 332 Lease G09514 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 666 | 11/1/2004 | Marketing - Processing | $0.06/MMBTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC | SM 149 Lease G02592 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 667 | 4/1/2007 | Marketing - Processing | $0.06/MMBTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC | SM 149 Lease G02592 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 668 | 1/19/2012 | Marketing - Processing | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC | SM 136 Lease G02588, SM 137 Lease G02589 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 669 | 2/17/2014 | Marketing - Processing | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC | SM 137 Lease G02589, SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 670 | 1/1/2013 | Marketing - Processing | 98%/2% AND $.06/mmbTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC | EI 346 Lease G14482, GI 116 Lease G13944, SS 79/80 Lease G15277 | BRISTOW US LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 671 | 1/1/2011 | Marketing - Processing | 98%/2% AND $.06/mmbTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC | GI 116 Lease G13944, EI 346 Lease G14482, SS 79/80 Lease G15277 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 672 | 4/1/2012 | Marketing - Processing | 98%/2% AND $.06/mmbTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC | GI 116 Lease G13944, EI 346 Lease G14482, SS 79/80 Lease G15277 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 673 | 6/1/2012 | Marketing - Processing | 98%/2% AND $.06/mmbTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC | GI 116 Lease G13944, EI 346 Lease G14482, SS 79/80 Lease G15277 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 674 | 11/1/2012 | Marketing - Processing | 98%/2% AND $.06/mmbTU by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator | Fieldwood Energy LLC | GI 116 Lease G13944, EI 346 Lease G14482, SS 79/80 Lease G15277 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 675 | 3/1/2011 | Marketing - Processing | Gas processing Raw make purchase by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC ((Formally Noble Energy Inc.) and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC ((Formally Noble Energy Inc.) and Enterprise Gas Processing LLC | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 676 | 3/16/2004 | Marketing - Processing | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 142 Lease G01216, SM 40 Lease G13607, EC 178 Lease G34229, EI 307 Lease G02110, EC 338 Lease G02063 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 677 | 11/11/2004 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | VR 161 Lease G34253 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 678 | 12/6/2004 | Marketing - Processing | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | VR 161 Lease G34253 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 679 | 2/1/2005 | Marketing - Processing | 88/12% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 39 Lease G16320 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 680 | 4/1/2010 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EI 307 Lease G02110 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 681 | 4/1/2011 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EI 307 Lease G02110 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 682 | 11/1/2011 | Marketing - Processing | (.5/GPM*100) or $.10 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | MC 519 Lease G27278, MC 563 Lease G21176, MC 562 Lease G19966 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 683 | 11/9/2004 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 332 Lease G09478 | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**

Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Applicable Entity: Credit Bid Purchaser | Applicable Entity: FW III | Applicable Entity: FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 684 | 1/8/2007 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 332 Lease G09478 | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 685 | 1/12/2011 | Marketing - Processing | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 332 Lease G09478 | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 686 | 8/1/2009 | Marketing - Processing | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EI 211 Lease G05502, EI 212 Lease G05503, EI 281 Lease G09591, EI 281 Lease G09591, SS 178 Lease G05551, SS 190 Lease G10775, EI 53 Lease 479, GI 76 Lease G02161, SM 280 Lease G14456, SS 274 Lease G01039, ST 205 Lease G05612, ST 296 Lease G12981, ST 291 Lease G16455, SM 149 Lease G02592, ST 190 Lease G01261, ST 205 Lease G05612, SM 268 Lease G02310, SM 281 Lease G02600, SM 280 Lease G14456 | EPL OIL & GAS, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 687 | 1/18/2012 | Marketing - Processing | FEE - .0800 PER MCF - ESCALATOR ADDED by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EI 211 Lease G05502, EI 212 Lease G05503, EI 281 Lease G09591, EI 281 Lease G09591, SS 178 Lease G05551, SS 190 Lease G10775, EI 53 Lease 479, GI 76 Lease G02161, SM 280 Lease G14456, SS 274 Lease G01039, ST 205 Lease G05612, ST 296 Lease G12981, ST 291 Lease G16455, SM 149 Lease G02592, ST 190 Lease G01261, ST 205 Lease G05612, SM 268 Lease G02310, SM 281 Lease G02600, SM 280 Lease G14456 | EPL OIL & GAS, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 688 | 2/11/2015 | Marketing - Processing | 95% & $0.08/Mmbtu/ MINIMUM $.20 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | MC 742 Lease G32343, MC 697 Lease G28021, MC 698 Lease G28022 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 689 | 1/8/2019 | Marketing - Processing | $.16 /MMBTU (escl) plus electricity fee by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | MP 140 Lease G02193, WD 90 Lease G01089, WD 103 Lease 840, WD 105 Lease 842, MP 289 Lease G01666, MP 290 Lease G34866, MP 275 Lease G15395, MP 289 Lease G01666, SP 62 Lease G01294, MP 296 Lease G01673, MP 311 Lease G02213, MP 311 Lease G02213, MP 77 Lease G04481, BS 52 Lease 17675, MC 311 Lease G02968, MC 108 Lease G09777 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | x |
| 690 | 1/1/2012 | Marketing - Processing | FEE - .08005 /MCF (SUBJECT TO gdp (NEVER LESS THAT .075 OR GRATER THAN $.12 /MCF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 76 Lease G01208, SM 58 Lease G01194, EI 158 Lease G01220, EI 188 Lease 443, SS 207 Lease G01523, ST 295 Lease G05646, SS 189 Lease G04232, PL 25 Lease G14535 | LOUISIANA LAND & EXPLORATION CO | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 691 | 1/8/2019 | Marketing - Processing | $.16 /MMBTU (escl) plus electricity fee by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 692 | 10/1/2012 | Marketing - Processing | pol 85% 15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | GC 200 Lease G12209, GC 201 Lease G12210, GC 244 Lease G11043 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, WILD WELL CONTROL INC, CHEVRON USA INC, W & T ENERGY VI LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 693 | 2/27/2015 | Marketing - Processing | 95.75% & $0.10/Mmbtu / Minimum $.20 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | MC 782 Lease G33757 | RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 694 | 3/1/2005 | Marketing - Processing | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 142 Lease G01216, SM 40 Lease G13607, EC 178 Lease G34229, EI 307 Lease G02110 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 695 | 1/1/2009 | Marketing - Processing | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 142 Lease G01216, SM 40 Lease G13607, EC 178 Lease G34229, EI 307 Lease G02110 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 696 | 1/1/1992 | Marketing - Processing | BASE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 697 | 10/1/1995 | Marketing - Processing | CONTRUCTION/OPERATING (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 698 | 10/13/1998 | Marketing - Processing | RAW MAKE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 699 | 11/13/1998 | Marketing - Processing | AMENDMEMT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 700 | 2/1/2000 | Marketing - Processing | SERVICE-FRACTIONATION (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 701 | 12/1/2000 | Marketing - Processing | SERVICE-DEHYDRATION (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 702 | 9/1/2010 | Marketing - Processing | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 703 | 10/18/2010 | Marketing - Processing | BALLOT TO EXTEND MCMORAN GPA THORUGH 12/31/2011 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 704 | 12/1/2010 | Marketing - Processing | BALLOT TO AMEND EXHIBIT E TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 705 | 6/1/2012 | Marketing - Processing | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 706 | 7/1/2012 | Marketing - Processing | BALLOT TO APPROVE ENTERPRISE AS PLANT OPERATOR TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 707 | 7/1/2012 | Marketing - Processing | APPROVAL OF AFES TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 708 | 9/25/2013 | Marketing - Processing | BALLOT TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 709 | 10/6/2013 | Marketing - Processing | REVISED EXHIBIT C TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 265 Lease G00972, EC 338 Lease G02063, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 315 Lease G02112, EI 316 Lease G05040, EI 333 Lease G02317, EI 334 Lease G15263, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 361 Lease G02324, SM 39 Lease G16320, SM 48 Lease 786, SM 127 Lease G02883, SM 128 Lease G02587, SM 141 Lease G02885 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | |
| 710 | 8/1/1999 | Marketing - Processing | fixed fee conveyance by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | GC 065 G05889, GC 108 G14668, GC 109 G05900, GC 243 G20051, GC 200 G12209, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 711 | 10/1/2007 | Marketing - Processing | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | EC 338 Lease G02063 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 712 | 2/20/2008 | Marketing - Processing | 88/12% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | SM 39 Lease G16320, EC 338 Lease G02063 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 713 | 4/1/2018 | Marketing - Processing | fee = $.12 / MMBTU by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 714 | 4/1/2020 | Marketing - Processing | NGL BANK - FIRST AMENDED AND RESTATED by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 715 | 8/1/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Enven Energy Ventures, LLC | Fieldwood Energy LLC and Enven Energy Ventures, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 716 | 1/23/2014 | Marketing - Crude Sales | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION | Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION | Fieldwood Energy LLC | EI 281 Lease G09591, EI 282 Lease G09592, EI 315 Lease G02112, EI 316 Lease G05040, EI 329 Lease G02912, EI 330 Lease G02115, EI 337 Lease G03332, EI 337 Lease G03332, EI 353 Lease G03783, EI 354 Lease G10752, EI 342 Lease G02319, GC 065 Lease G05889, SM 142 Lease G01216, SM 93 Lease G21618, SM 127 Lease G02883, SM 128 Lease G02587, SS 300 Lease G07760, SS 315 Lease G09631, SS 314 Lease G26074, VR 362 Lease G10687, VR 371 Lease G09524, EI 361 Lease G02324, PL 1 Lease G04234, PL 9 Lease G02924, PL 10 Lease G02925, SS 68 Lease G02917, PL 9 Lease G02924, PL 10 Lease G02925, EI 361 Lease G02324, ST 316 Lease G22762, VR 380 Lease G02580 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 717 | 1/23/2014 | Marketing - Crude Sales | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION | Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION | Fieldwood Energy LLC | SS 301 Lease G10794 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 718 | 1/23/2014 | Marketing - Crude Sales | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION | Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 719 | | Marketing - Crude Sales | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION | Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION | Fieldwood Energy LLC | GI 43 Lease 175 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 720 | 1/1/2020 | Marketing - Crude Sales | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION | Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION | Fieldwood Energy LLC | GC 065 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900, GC 244 Lease G11043, GC 200 Lease G12209, GC 243 Lease G20051, GC 201 Lease G12210 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 721 | 7/23/2020 | Marketing - Connection Agreement | ST 53/ST 57 CONNECTION AGREEMENT BETWEEN FIELDWOOD ENERGY LLC AND FIELDWOOD ENERGY OFFSHORE AND ROSEFIELD PIPELINE COMPANY, LLC | FIELDWOOD ENERGY LLC AND FIELDWOOD ENERGY OFFSHORE AND ROSEFIELD PIPELINE COMPANY, LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | ST 53 Lease G04000, ST 67 Lease 20 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 722 | 11/21/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Florida Power & Light Company | Fieldwood Energy LLC and Florida Power & Light Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 723 | 2/1/2019 | Marketing - Transportation | Pool Agreement by and between Fieldwood Energy LLC and Gulf South Pipeline Company, LP and Gulf South Pipeline Company, LP | Fieldwood Energy LLC and Gulf South Pipeline Company, LP and Gulf South Pipeline Company, LP | Fieldwood Energy LLC | EI 32 Lease 196, EI 89 Lease 44 | COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**

Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Applicable Entity: Credit Bid Purchaser | Applicable Entity: FW III | Applicable Entity: FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 724 | 12/10/2013 | Marketing - Transportation | Crude Oil Transport. by and between Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 725 | 12/10/2013 | Marketing - Transportation | Crude Oil Transport. by and between Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 726 | 12/10/2013 | Marketing - Transportation | Crude Oil Transport. by and between Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC and Gulfstar One LLC and Gulfstar One LLC | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 727 | 11/1/1995 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc | Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc | Fieldwood Energy LLC | EB 159 Lease G02646, EB 160 Lease G02647, EB 165 Lease G06280, HI A-341 Lease G25605, HI A-365 G02750 Lease G02750, HI A-376 G02754 Lease G02754, HI A545 Lease G17199, HI A-550 Lease G04081, HI A-563 Lease G02388, HI A-382 Lease G02757, HI A-573 Lease G02393, HI A-595 Lease G02721, HI A-596 Lease G02722 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 728 | 10/10/2013 | Marketing - Transportation | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 729 | 1/1/2019 | Marketing - Transportation | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 730 | 12/1/2013 | Marketing - Transportation | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC | Fieldwood Energy LLC | BS 52 Lease 17675, MP 153 Lease G01967, SP 65 Lease G01610, MP 296 Lease G01673, MP 310 Lease G04126, MP 311 Lease G02213, MP 311 Lease G02213, MP 77 Lease G04481, SP 62 Lease G01294, WD 75 Lease G01085, MC 110 Lease G18192 | UPSTREAM EXPLORATION LLC; AMERICAN PANTHER, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 731 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC | Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC | Fieldwood Energy LLC | MC 311 Lease G02968, WD 105 Lease 842, MP 289 Lease G01666, MP 275 Lease G15395, BS 52 Lease 17675, MC 110 Lease G18192 | ARENA ENERGY LP, BRISTOW US LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 732 | 9/10/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and J. Aron & Company | Fieldwood Energy LLC and J. Aron & Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 733 | 1/14/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and J.P. Morgan Ventures Energy Corporation | Fieldwood Energy LLC and J.P. Morgan Ventures Energy Corporation | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 734 | 3/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Jefferson Island Storage & Hub, L.L.C. | Fieldwood Energy LLC and Jefferson Island Storage & Hub, L.L.C. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 735 | 7/25/2019 | Joint Development / Venture / Exploration Agreements | Exploration Venture Agreement by and between Fieldwood Energy LLC and Juneau Oil & Gas LLC (terminated 6-23-20) | Fieldwood Energy LLC and Juneau Oil & Gas LLC (terminated 6-23-20) | Fieldwood Energy LLC | MULTIPLE | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 736 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Keyspan Gas East Corporation D/B/A National Grid | Fieldwood Energy LLC and Keyspan Gas East Corporation D/B/A National Grid | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 737 | 5/1/2008 | Marketing - PHA | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC | SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 738 | 3/1/2011 | Marketing - PHA | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC | SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 739 | 11/1/2012 amended 12/1/2013 | Marketing - PHA | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC | SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 740 | 11/1/2012 Amended effective 12/1/2013 | Marketing - Transportation | Oil Liquids Transportation transferring agreement from apache Corporation to Fieldwood Energy LLC by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC | WC 165 Lease 758, WC 291 Lease G04397 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 741 | Amendment date 8/1/2014 contract date 11/1/2012 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC | SM 149 Lease G02592, SM 149 Lease G02592, SM 149 Lease G02592 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 742 | 3/1/2011 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC | VR 380 Lease G02580, SM 149 Lease G02592, EI 267 Lease 812, SS 79/80 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 743 | 11/1/2012 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC | SS 79/80 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 744 | 9/1/1997 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 745 | Amendment effective 11/1/2009 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC and Kinetica and Kinetica | Fieldwood Energy LLC | VR 229 Lease G27070 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 746 | 4/1/2004 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | VR 261 Lease G03328 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 747 | 9/30/2009 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | VR 261 Lease G03328 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 748 | 9/30/2009 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | VR 261 Lease G03328 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 749 | 10/22/2009 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | VR 261 Lease G03328 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 750 | 1/1/2007 Original Contract; Amendment Effective 1/1/2007 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | WC 66 Lease G02826 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 751 | 8/1/1992, Amendment Effective 1/1/2007 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | WC 66 Lease G02826 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 752 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | GI 43 Lease 175, GI 47 Lease 133, EI 224 Lease G05504, SS 169 Lease 820, SS 182 Lease G03998, SS 193 Lease G13917, SS 198 Lease 593, SS 198 Lease 593, SM 106 Lease G02279, VR 196 Lease G19760, VR 229 Lease G27070, VR 261 Lease G03328, EC 2 SL16473 Lease 16473, EC 2 SL16473 Lease 16473, ST 53 Lease G04000 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY; BOIS D'ARC EXPLORATION, LLC; FAIRFIELD ROYALTY CORP, HILCORP ENERGY 1 LP | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 753 | 2/25/2010 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | WC 65 Lease G02825, WC 66 Lease G02826, WC 72 Lease G23735, EC 2 SL16473 Lease 16473 | FAIRFIELD ROYALTY CORP, HILCORP ENERGY 1 LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 754 | 9/1/1997 | Marketing - Transportation | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC | Fieldwood Energy LLC | SS 198 Lease 593 | RENAISSANCE OFFSHORE, LLC, TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, et al.
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names
[2] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract. To the extent the Debtors are able to identify the proper Debtor and are able to determine the proper Debtor with which to contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the amended meaning to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease owners and/or non-operating working interest parties.
[5] If estimate listed is zero pre-petition accounts payable balances. Cure estimates were adjusted to zero for consistent treatment.
[6] Reference is hereby made to the Global Debtors' Plan Supplement [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the terms of the Definitive Document and this Schedule, the Definitive Document shall control.

| # | Contract Category | Effective Date | Contract Description | Retained Entities [2] | Associated Leases [3] | Known Contract Counterparties [1] | Related Lease Parties [4] | Cure Estimate | Proposed Cure/Assumption Treatment [5] |
|---|---|---|---|---|---|---|---|---|---|
| 755 | Marketing - Transportation | 4/1/2020 | IT Gathering by and between Fieldwood Energy, LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC | ... | Fieldwood Energy LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy, LLC and Kinetica Midstream Energy, LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) |
| 756 | Marketing - Transportation | 4/1/2020 | IT Gathering by and between Fieldwood Energy, LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC | | Fieldwood Energy LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy, LLC and Kinetica Midstream Energy, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 757 | Marketing - Gathering | 12/1/2013 | IT Gathering by and between Fieldwood Energy, LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC | | Fieldwood Energy LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy, LLC and Kinetica Midstream Energy, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 758 | Marketing - Gathering | 4/1/2020 | IT Gathering by and between Fieldwood Energy, LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC | | Fieldwood Energy LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy, LLC and Kinetica Midstream Energy, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 759 | Marketing - Transportation | 4/1/2020 | IT Gathering by and between Fieldwood Energy, LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy LLC | | Fieldwood Energy LLC and Kinetica Midstream Energy, LLC | Fieldwood Energy, LLC and Kinetica Midstream Energy, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 760 | Marketing - Transportation | 1/1/2017 | Other Assignment [Bill of Sale or Conveyance, Notice of Exercise] & Related Contracts | Fieldwood Energy LLC | | Fieldwood Energy LLC and Lamar Hunt Trust Estate | Fieldwood Energy, LLC and Lamar Hunt Trust Estate | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 761 | Marketing - Gathering | 1/1/2017 | Other Assignment [Bill of Sale or Conveyance, Notice of Exercise] & Related Contracts | Fieldwood Energy LLC | | Fieldwood Energy LLC and Lamar Hunt Trust Estate | Fieldwood Energy, LLC and Lamar Hunt Trust Estate | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 762 | Marketing - Gas Sales | 10/1/2017 | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Manifest Power and Gas LLC | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manifest Power and Gas LLC | Fieldwood Energy, LLC and Manifest Power and Gas LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 763 | Marketing - Gathering | 2/1/2006 | Crude Oil Transport, by and between Fieldwood Energy Co. LLC and Manta Ray Gathering Co. LLC | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Gathering Co. LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company | $0.00 | Assume and assign to Credit Bid Purchaser |
| 764 | Marketing - Gathering | 3/15/2020 | Crude Oil Transport, by and between Fieldwood Energy Co. LLC and Manta Ray Gathering Co. LLC | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Gathering Co. LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company | $0.00 | Assume and assign to Credit Bid Purchaser |
| 765 | Marketing - Gathering | 3/15/2020 | Crude Oil Transport, by and between Fieldwood Energy Co. LLC and Manta Ray Gathering Co. LLC | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Gathering Co. LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company | $0.00 | Assume and assign to Credit Bid Purchaser |
| 766 | Marketing - Gathering | 6/1/2020 | Crude Oil Transport, by and between Fieldwood Energy Co. LLC and Manta Ray Gathering Co. LLC | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Gathering Co. LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company | $0.00 | Assume and assign to Credit Bid Purchaser |
| 767 | Marketing - Gathering | 9/1/2004 | Crude Oil Transport, by and between Fieldwood Energy Co. LLC and Manta Ray Gathering Company LLC | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Gathering Company LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company | $0.00 | Assume and assign to Credit Bid Purchaser |
| 768 | Marketing - Transportation | 4/1/2010 | Manta Ray firm Gathering and Dedication - Discount Rate of 6.12 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 769 | Marketing - Transportation | 4/1/2010 | Manta Ray firm Gathering and Dedication - Discount Rate of 6.12 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company | $0.00 | Assume and assign to Credit Bid Purchaser |
| 770 | Marketing - Transportation | 12/1/1990 | Gas Dedication (3-1 amendment dated 7/1/2011) by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company | $0.00 | Assume and assign to Credit Bid Purchaser |
| 771 | Marketing - Transportation | 4/1/2000 | Oil Liquids Transportation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 772 | Marketing - Transportation | 12/1/2015 | Oil Liquids Transportation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 773 | Marketing - Transportation | 7/1/2013 | Firm Gathering and Dedication Agreement [as amended dated 11/7/2001 between Manta Ray and Apache Corporation 1012 11 102 GTX and 1099 01 to 11 1013] by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 774 | Marketing - Separation & Stabilization | 4/27/2004 | Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 775 | Marketing - Separation & Stabilization | 11/1/2000 | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 776 | Marketing - Transportation | 11/1/2000 | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 777 | Marketing - Transportation | 3/1/2006 | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 778 | Marketing - Separation & Stabilization | 11/1/2010 | Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 779 | Marketing - Separation & Stabilization | 4/1/2010 | Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 780 | Marketing - Transportation | 4/1/2010 | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 781 | Marketing - Separation & Stabilization | 4/1/2010 | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy LLC | | Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. | Fieldwood Energy, LLC and Manta Ray Offshore Gathering Company, L.L.C. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 782 | Marketing - Gathering | 4/1/2001 | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Marathon Petroleum Company LP | Fieldwood Energy LLC | | Fieldwood Energy LLC and Marathon Petroleum Company LP | Fieldwood Energy, LLC and Marathon Petroleum Company LP | $0.00 | Assume and assign to Credit Bid Purchaser |
| 783 | Marketing - Gathering | 5/23/2014 | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Marathon Petroleum Company | Fieldwood Energy LLC | | Fieldwood Energy LLC and Marathon Petroleum Company | Fieldwood Energy, LLC and Marathon Petroleum Company | $0.00 | Assume and assign to Credit Bid Purchaser |
| 784 | Lease of Platform Space | 6/8/2017 | Lease Agreement | Fieldwood Energy LLC | | Fieldwood Energy LLC and Maxus Energy | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 785 | Marketing - Gas Sales | 7/11/2018 | Marketing | Fieldwood Energy LLC | | Fieldwood Energy LLC and McRae's Inc | | $0.00 | Assume and assign to Credit Bid Purchaser |
| 786 | Marketing - Gas Sales | 5/23/2014 | Marketing | Fieldwood Energy LLC | | Fieldwood Energy LLC | | $0.00 | Assume and assign to Credit Bid Purchaser |

Page 24 of 54

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Applicable Entity: Credit Bid Purchaser | Applicable Entity: FW III | Applicable Entity: FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 787 | 6/6/2018 | Marketing - Crude Sales | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 788 | 7/1/2018 | Marketing - Crude Sales | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 789 | 3/5/2014 | Marketing - Crude Sales | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP | Fieldwood Energy LLC | EB 158 Lease G02645, EB 159 Lease G02646, EB 160 Lease G02647, EB 165 Lease G06280, HI A-365 G02754 Lease G02754, HI A-376 G02754 Lease G02754, HI A545 Lease G17199, HI A-573 Lease G02393, HI A-595 Lease G02721, HI A-582 Lease G02719 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 790 | 11/18/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC | Fieldwood Energy LLC and McMoRan Oil & Gas LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 791 | 10/15/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Mercuria Energy Gas Trading LLC | Fieldwood Energy LLC and Mercuria Energy Gas Trading LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 792 | 8/28/2015 | Marketing - Transportation | Murphy Lateral -Gas Transportation for Big Bend and Dantzler by and between Fieldwood Energy LLC and Murphy and Murphy | Fieldwood Energy LLC and Murphy and Murphy | Fieldwood Energy LLC | MC 698 Lease G28022, MC 782 Lease G33757, MC 742 Lease G28022 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 793 | 8/28/2015 | Marketing - Transportation | Murphy Lateral -Gas Transportation for Big Bend and Dantzler by and between Fieldwood Energy LLC and Murphy and Murphy | Fieldwood Energy LLC and Murphy and Murphy | Fieldwood Energy LLC | MC 697 Lease G33757 | RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 794 | 8/28/2015 | Marketing - Transportation | Crude Oil Transport. by and between Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC | MC 697 Lease G28021, MC 742 Lease G32343 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 795 | 8/28/2015 | Marketing - Transportation | Crude Oil Transport by and between Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC | MC 698 Lease G28022 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 796 | 8/28/2015 | Marketing - Transportation | Crude Oil Transport by and between Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC and Murphy Exploration & Production Company USA and Murphy Exploration & Production Company USA | Fieldwood Energy LLC | MC 782 Lease G33757 | RIDGEWOOD DANTZLER LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 797 | 4/1/2018 | Marketing - Transportation | LTA for ST 320 by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. | Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. | Fieldwood Energy LLC | ST 320 Lease G24990 | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 798 | 2/14/2020 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and NextEra Energy Power Marketing, LLC | Fieldwood Energy LLC and NextEra Energy Power Marketing, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 799 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Niagara Mohawk Power Corporation D/B/A National Grid | Fieldwood Energy LLC and Niagara Mohawk Power Corporation D/B/A National Grid | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 800 | 9/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and NJR Energy Services Company | Fieldwood Energy LLC and NJR Energy Services Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 801 | 4/11/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Noble Energy, Inc. | Fieldwood Energy LLC and Noble Energy, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 802 | 7/8/2011 | Marketing - Gathering | Galapagos, Gas Gathering, Okeanos Gas Dedication within Gathering - plus 5 amendments-MDQ changes by and between Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC | MC 519 Lease G27278, MC 562 Lease G19966, MC 563 Lease G21176 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 803 | 2/27/2015 | Marketing - Gathering | Big Bned Dantzler, Okeanos Gas Gathering, Gas Dedication within Gathering - plus 4 amendments-MDQ changes by and between Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC | MC 698 Lease G28022, MC 782 Lease G33757, MC 742 Lease G28022, MC 697 Lease G33757 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 804 | 8/28/2015 | Marketing - Gathering | Big Bned Dantzler, Destin FT2, - plus 4 amendments-MDQ changes by and between Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC and Okeanos Gas Gathering Company, LLC and Okeanos Gas Gathering Company, LLC | Fieldwood Energy LLC | MC 698 Lease G28022, MC 742 Lease G28022 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 805 | 6/1/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Peoples Gas System, a divison of Tampa Electric Company | Fieldwood Energy LLC and Peoples Gas System, a divison of Tampa Electric Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 806 | 6/18/2020 | Marketing - Crude Sales | Phillips 66 Petroleum Company buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Phillips 66 Company and Phillips 66 Company | Fieldwood Energy LLC and Phillips 66 Company and Phillips 66 Company | Fieldwood Energy LLC | GI 43 Lease 175 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 807 | 6/18/2020 | Marketing - Crude Sales | Phillips 66 Petroleum Company buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Phillips 66 Company and Phillips 66 Company | Fieldwood Energy LLC and Phillips 66 Company and Phillips 66 Company | Fieldwood Energy LLC | MP 311 Lease G02213, SP 62 Lease G01294, SP 65 Lease G01610 | EPL OIL & GAS, LLC, APACHE SHELF EXPLORATION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 808 | 5/1/2009 | Marketing - Processing | 92/8% or $.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 809 | 6/29/2010 | Marketing - Processing | 92/8% or $.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 810 | 10/1/2010 | Marketing - Processing | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC | GI 83 Lease G03793, ST 195 Lease G03593, ST 179 Lease G12020, ST 203 Lease G01269, ST 190 Lease G01261 | CLK EXPLORATION COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 811 | 11/1/2010 | Marketing - Processing | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC | GI 83 Lease G03793, ST 195 Lease G03593, ST 179 Lease G12020, ST 203 Lease G01269, ST 190 Lease G01261 | CLK EXPLORATION COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 812 | 7/24/2012 | Marketing - Processing | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC | GI 83 Lease G03793, ST 195 Lease G03593, ST 179 Lease G12020, ST 203 Lease G01269, ST 190 Lease G01261 | CLK EXPLORATION COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 813 | 5/1/2009 | Marketing - Processing | 92/8% or $.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 814 | 6/29/2010 | Marketing - Processing | 92/8% or $.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. | Fieldwood Energy LLC | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 815 | 9/1/2004 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 816 | 4/10/2012 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | VR 380 Lease G02580 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 817 | 5/1/2006 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 818 | 12/23/1995 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | EI 346 Lease G14482 | BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 819 | 3/15/2020 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 820 | 3/15/2020 | Marketing - Transportation | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, et al.**
Prepared May 23, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors reserve all rights to review the documents and other agreements listed below on this schedule. To the extent the Debtors determine that the appropriate treatment for any of the contracts listed on this schedule should be to reject or assume a particular contract, or that a particular Assumed Contract should be assumed under a different schedule, and such changes will be reflected in a subsequent amended version of this schedule.
[3] Cure amounts indicated are based on the Debtors' books and records. Cure estimates are subject to change based on additional information and are not final.
[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Debtor Entity [1] | Known Contract Counterparties [1] | Contract Counterparties [1] | Associated Lease [2] | Related Lease Parties [4] | Cure Estimate | Proposed Cure/Assumption Treatment [3] | FWE I | FWE III | Credit Bid Purchaser |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 821 | 7/1/2020 | Marketing / Transportation | | Fieldwood Energy LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC | | ST 316 Lease G22792 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 822 | 2/27/2015 | Marketing / Transportation | | Fieldwood Energy LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC | | MC 698 Lease G24932, MC 742 Lease G32341, MC 783 Lease G33757 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 823 | 2/27/2015 | Marketing / Transportation | | Fieldwood Energy LLC | Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC | | MC 697 Lease G26921 | | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 824 | 5/1/2019 | Marketing / Acquisition / PSA / Other Purchase or Sale Agreements | | Fieldwood Energy LLC | Fieldwood Energy LLC and Red Willow Offshore LLC | | MC 519 Lease G02779 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 826 | 6/10/2019 | Marketing / Gas Sales | | Fieldwood Energy LLC | Fieldwood Energy LLC and Red Willow Offshore, LLC | | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 827 | 3/8/2021 | Marketing / Settlement / Release / Reimbursement Agreements | | Fieldwood Energy LLC and Renaissance Offshore LLC | | | SP 49 Lease G01991, SP 65 Lease G01519, SS 198 Lease G12349, MP 152 Lease G29962, MP 153 Lease G01867, EI 330 Lease G02115 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 828 | 11/30/2014 | Marketing / Gas Sales | | Fieldwood Energy LLC and Rooster Petroleum, LLC | | | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 829 | 3/8/2020 | Marketing / Gathering | | Fieldwood Energy LLC and Rosefield Pipeline Company LLC | | | EI 315 Lease G24956, EI 53 Lease G04000, EI 67 Lease 20 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 830 | 7/23/2020 | Marketing / Connection Agreement | | Fieldwood Energy LLC and Rosefield Pipeline Company LLC | | | EI 53 Lease G24956 | | $0.00 | Assume and (i) assign to the Divisive Merger account of the Assumed Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | | x |
| 830 | 7/23/2020 | Marketing / Facilities & Tie-In Agreements | | Fieldwood Energy LLC and Rosefield Pipeline Company LLC | | | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 831 | 5/1/2018 | Marketing / Gas Sales | | Fieldwood Energy LLC and Sabco Oil & Gas USA Corp | | | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 832 | 6/1/2015 | Marketing / Gas Sales | | Fieldwood Energy LLC and Scana Energy Marketing, Inc. | | | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 833 | 7/1/2014 | Marketing / Gas Sales | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 834 | 7/23/2020 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | EI 370 Lease G01464, EI 371 Lease G01464, EI 372 Lease G01465 | | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 835 | 12/1/2013 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | EI 330 Lease G02115, EI 337 Lease G02533, SM 126 Lease G02467, SM 39 Lease G02467 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | x | |
| 836 | 12/1/2013 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | EI 330 Lease G02115, EI 337 Lease G02533, SM 126 Lease G02467, SM 39 Lease G02467 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE LLC, Anna, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | x | |
| 837 | 12/1/2013 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | EI 330 Lease G02115, EI 337 Lease G02533, SM 126 Lease G02467, SM 39 Lease G02467 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE LLC, Anna, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 838 | 8/1/2018 | Marketing / Gathering | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin | | | SS 274 Lease G00109, SM 288 Lease G00315 | EW Energy LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 839 | 12/1/2013 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | SS 274 Lease G00109, SM 288 Lease G00315, EW Eld Lease G00900, ST 205 Lease G00031, EI 28 Lease G00031, ST 205 Lease G00031 | EW ENERGY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | x | |
| 840 | 12/1/2013 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | SS 274 Lease G00109, SM 288 Lease G00315, EW Eld Lease G00900, ST 205 Lease G00031 | EW ENERGY LLC, HELICOPTERS INC, MANATHON OIL COMPANY, W & T ENERGY VI LLC, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | x | |
| 841 | 12/1/2013 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | SS 274 Lease G00109, SM 288 Lease G00315 | HELICOPTERS INC, TRUNKLINE GAS CO LLC, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | x | |
| 842 | 12/1/2013 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | | x |
| 843 | 1/1/2017 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 844 | 1/1/2017 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | GI 116 Lease G13944, ST 295 Lease G00666 | W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 845 | 5/1/2020 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | | | GI 116 Lease G13944, ST 295 Lease G00666 | W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 846 | 5/1/2020 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | | | EC 267 Lease G00971 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 847 | 5/1/2015 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | | | EI 238 Lease G01666 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 848 | 5/1/2015 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | | | ST 146 Lease G01340, ST 205 Lease G00900, SS 168 Lease G05600, GI 116 Lease G01200, EW 854 Lease G00900, SS 168 Lease G12601, ST 295 Lease G00666, SS 168 Lease G12601, ST 295 Lease G00666, GI 116 Lease G09612, ST 1 Lease G00612, SS 198 Lease G09612, ST 295 Lease G00666 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 849 | 2/1/2018 | Marketing / Gathering | | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | | | EW 826 Lease G00900, SS 198 Lease G24232, ST 205 Lease G00666 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | x | |
| 850 | 5/1/2020 | Marketing / Separation & Stabilization | | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | | | EI 53 Lease G24232, ST 295 Lease G00666 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 851 | 5/1/2021 | Marketing / Separation & Stabilization | | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | | | EI 53 Lease 479 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | |
| 852 | 10/1/2004 | Marketing / Transportation | | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | | | ST 205 Lease G00612, ST 295 Lease G00666 | MARATHON OIL COMPANY, W & T ENERGY VI LLC, ENI HELICOPTERS INC P.L.C., TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | x | |

Fieldwood Energy, LLC, et al.
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed in the schedule and reserve all rights. To the extent the Debtors are able to identify the proper Debtor and/or the applicable listed, the Debtors will find an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated or related to the same underlying contract.
[4] Proposed treatment assumes the current lease-related accounts of the working interest owner listed in actual agreements.
[5] All related leases will, upon assumption, be assigned to the counterparty of such contract. Cure estimates were adjusted to zero for completed trade agreements.
[6] Assume and Allocate Pursuant to Divisive Mergers refers to treatment of the contract under either the Plan [Dkt No. 1284] including any exhibits and schedules thereto and as may be further amended, supplemental, or modified, the "Plan"]. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts for informational purposes only. In the event of any conflict between any of the Definitive Documents making to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

[Large multi-column spreadsheet table. Columns include: #, Contract (No.), Contract Category, Contract Description, Known Contract Counterparty/Counterparties [1], Debtor Entities [2], Associated Leases [3], Cure Estimate, Proposed Treatment, and Applicable Entity (Credit Bid Purchaser / FWI / FW II).]

| # | Contract Date | Contract Category | Known Contract Counterparty [1] | Debtor Entity | Associated Leases [3] | Related Lease Party(ies) [4] | Cure Estimate | Proposed Treatment [6] |
|---|---|---|---|---|---|---|---|---|
| 853 | 10/1/2004 | Marketing - Transportation | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05413 | MARATHON OIL COMPANY; W & T ENERGY VI LLC; ERA HELICOPTERS INC.; TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 854 | 3/1/2004 | Marketing - Separation & Stabilization | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05412; ST 205 Lease G05613; ST 201 Lease G16455 | MARATHON OIL COMPANY; W & T ENERGY VI LLC; ERA HELICOPTERS INC.; TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 855 | 1/1/2011 | Marketing - Separation & Stabilization | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05412; ST 201 Lease G16455 | MARATHON OIL COMPANY; W & T ENERGY VI LLC; ERA HELICOPTERS INC.; TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 856 | 6/1/2011 | Marketing - Separation & Stabilization | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05412; ST 201 Lease G16455 | MARATHON OIL COMPANY; W & T ENERGY VI LLC; ERA HELICOPTERS INC.; TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 857 | 11/5/2012 | Marketing - Separation & Stabilization | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05412; ST 201 Lease G16455 | MARATHON OIL COMPANY; W & T ENERGY VI LLC; ERA HELICOPTERS INC.; TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 858 | 3/1/2015 | Marketing - Separation & Stabilization | Remington Commodities Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05412; ST 205 Lease G05613; ST 201 Lease G16455; SM 130 Lease G00201; SM 288 Lease G00210; ST 190 Lease G02107; ST 235 Lease G02435; ST 203 Lease G05510; ST 205 Lease G05826 | MARATHON OIL COMPANY; W & T ENERGY VI LLC; ERA HELICOPTERS INC.; TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 859 | 5/1/2015 | Marketing - Transportation | LTs by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05412; ST 201 Lease G16455; EC 331 Lease A79 | MARATHON OIL COMPANY; W & T ENERGY VI LLC; ERA HELICOPTERS INC.; TRUNKLINE GAS CO LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 860 | 3/1/2016 | Marketing - Separation & Stabilization | Remington Commodities Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05412; ST 205 Lease G05613; EW 954 Lease G0000; GI Lease G05000; ST 201 Lease G16455; SM 130 Lease G00210; ST 202/3 | MEMORANDUM & GAS LLC; POUDART INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 861 | 5/1/2015 | Marketing - Separation & Stabilization | LTs by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | ST 205 Lease G05412; GI 5040 Lease G05400; SM 71 Lease G02110; GI 83 Lease G02170; ST 195 Lease G02470 | MEMORANDUM & GAS LLC; POUDART INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 862 | 5/6/2006 | Marketing - Transportation | Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EC 261 Lease G00974 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 863 | 7/1/2010 | Marketing - Transportation | LTs by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EC 261 Lease G00974; EC 270 Lease G00974; AI 333 Lease G02317 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 864 | 6/17/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase for Natural Gas by and between Fieldwood Energy LLC and Sempra Midstream Services, Inc. | Fieldwood Energy LLC | n.a. | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 865 | 9/19/2020 | Marketing - Gas Sales | Base Contract for Sale and Purchase for Natural Gas by and between Fieldwood Energy LLC and Sequent Energy Management, L.P. | Fieldwood Energy LLC | MC 65 Lease G21176 | MC MS Lease G21176 | $0.00 | Assume and assign to Credit Bid Purchaser |
| 866 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | MC 65 Lease G20522; VR 55 Lease G00332; SM 39 Lease G16320; SM | $0.00 | Assume and assign to Credit Bid Purchaser |
| 867 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | VR 385 Lease G02363; EI 711 Lease G00552; EI 712 Lease G00503; SM 144 Lease G02376; EI 53 Lease G20110; SM 109 Lease G16457; SM 109 Lease G20472; SM 130 Lease G03320; VR 214 Lease G03422; SM 207 Lease G00757; SM 180 Lease G15410; EI 64 Lease G05211; G05 130; EI 185 Lease A43; EI 63 Lease G01017; MC 109 Lease G00572; MC 109 Lease G20472; MC 208 Lease G01607; BP 209 Lease G01017; MC 807 Lease G14417; SS 15B Lease A493; SS Lease G21457; EC 300 Lease A505; HI A571 Lease G01333; MC 85 Lease G20110 | BP EXPLORATION & PRODUCTION INC.; HOUSTON ENERGY DEEPWATER VENTURES; HOUSTON; UP; RED WILLOW | $0.00 | Assume and assign to the Plan and the Credit Bid Purchaser [pursuant to the Plan and the Credit Bid Purchase Agreement] [on account of the Assumed Interests and/or Assumed Contracts or [on account of the pursuant to the Divisive Merger] and/or account of [the Plan Sale or the Credit Bid Purchase Agreement] |
| 868 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | VR 385 Lease G02363; EI 711 Lease G00552; EI 712 Lease G00503; SM 144 Lease G02376; EI 53 | ENERGY XXI GOM LLC; SHELL PIPELINE COMPANY LP; PETROGRAPH OPERATING CO | $0.00 | Assume and assign to Credit Bid Purchaser |
| 869 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | MC 65 Lease G21176 | ENERGY XXI GOM LLC; SHELL PIPELINE COMPANY LP; PETROGRAPH OPERATING CO | $0.00 | Assume and assign to Credit Bid Purchaser |
| 870 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | MC 674 Lease G20463 | MC 674 Lease G20463 | $0.00 | Assume and assign to Credit Bid Purchaser |
| 871 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | VR 78 Lease G04421 | TARPINE INC. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 872 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | MC 519 Lease G02179 | W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 873 | 9/14/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | MP 310 Lease G04138; MC 108 Lease G00577; MC 153 Lease G19160; MP 296 Lease G03973; HO 79, HO 85 Lease G01974; ST 51 Lease G00577A | W & T OFFSHORE INC; HELIS OIL & GAS COMPANY LLC; HELIS OIL & GAS COMPANY; HEAD; EXXON MOBIL CORPORATION | $0.00 | Assume and assign to Credit Bid Purchaser |
| 874 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | SM 128 Lease G02387; VR 166 Lease G01974; VR 225 Lease G04457 | W & T OFFSHORE, LLC; HEAD OFFSHORE LP; COX OPERATING LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 875 | 9/11/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | MP 310 Lease G04138; MC 108 Lease G00577; MC 153 Lease G19160; MP 296 Lease G03973; HO 79, HO 85 Lease G01974; ST 51 Lease G00577; EI 311 Lease G00574; EI 341 Lease G03395; HI 540 Lease G05311; SM 272 Lease G04360; MP 46 Lease G01207; SM 110 Lease G00574; EW 910, EW 954 Lease G05213; MC 773; BY Lease A450; ST 151 Lease G02579; ST 131 Lease G02570; WD 97, WD 90 Lease G00505; WD 90 Lease G00571 | HELIS OIL & GAS CORPORATION; MCMORAN OIL & GAS LLC; RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and assign to Credit Bid Purchaser |
| 876 | 9/14/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | MP 259 Lease G04561; WC 65 Lease G20532; BA A535 Lease G21757 | WALTER OIL & GAS CORPORATION; W&T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 877 | 8/22/2017 | Marketing - Gas Sales | Base Contract for Sale and Purchase for Natural Gas by and between Fieldwood Energy LLC and Seminole Energy Services, Inc. | Fieldwood Energy LLC | BA A133 Lease G00605; BA A133 Lease G01757 | WALTER OIL & GAS CORPORATION; W&T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 878 | 5/1/2020 | Marketing - Gas Sales | Base Contract for Sale and Purchase for Natural Gas by and between Fieldwood Energy LLC and South Jersey Resources Group, LLC | Fieldwood Energy LLC | HI 125 Lease G01348; HI 178 Lease G20050; EI 224 Lease G20354; SS 129 Lease G01048; HI 128 Lease G00202; MP 260 Lease G02033; VR 249 Lease G03000; VR 249 Lease G00574; SS 132 Lease G20033; EI 331 Lease G00574 | W & T OFFSHORE INC; HELICOL OIL & GAS COMPANY LLP | $0.00 | Assume and assign to Credit Bid Purchaser |
| 879 | 9/17/2020 | Marketing - Gas Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | SS 129 Lease G01048; SM 204 Lease G03331; BA A133 Lease G00605 | TARPINE INC. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 880 | 8/19/2020 | Marketing - Crude Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | EI 341 Lease G04138 | W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 881 | 9/14/2020 | Marketing - Gas Sales | Base Contract for Sale and Purchase for Natural Gas by and between Fieldwood Energy LLC and Shell Energy North America | Fieldwood Energy LLC | BA A133 Lease G00605; BA A133 Lease G01757 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 882 | 5/1/2020 | Marketing - Gas Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 883 | 9/11/2020 | Marketing - Gas Sales | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company | Fieldwood Energy LLC and Shell Trading (US) Company | ST 151 Lease G14115; ST 320 Lease G24060 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 884 | 5/21/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Southwest Energy, LP | Fieldwood Energy LLC and Southwest Energy, LP | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 885 | 8/7/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Spire Marketing Inc. | Fieldwood Energy LLC and Spire Marketing Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 886 | 2/1/1995 | Marketing - Transportation | Stingray - Vr 371 Lateral agreement with Reserve Dedication of Block 371, VR 362 - $.06 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC | VR 371 Lease G09524 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 887 | 1/1/2012 | Marketing - Transportation | Stinray - HI 350, WC 144 WC269 $.10 discount. Reserve Dedicaton agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC | HI A350 Lease G02428, HI A350 Lease G02428, HI A350 Lease G02428 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 888 | 12/1/2003 | Marketing - Transportation | Stingray Reserve Dedication VR Block 326 $.10 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC | VR 326 Lease G21096 | HELIS OIL & GAS COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 889 | 3/6/1974 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides for the construction and operation of the onshore separation facility which is connected to the facilites of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Stinray by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) | Fieldwood Energy LLC | WC 269 Lease G13563, WC 485 Lease G02220, WC 507 Lease G02549 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 890 | 1/1/2010 | Marketing - Transportation | Liquids Transportation Service by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC | HI A350 Lease G02428, WC 144 Lease G01953, WC 172 Lease G01998 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 891 | 2/1/1995 | Marketing - Transportation | Liquids Transportation Service by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC | VR 326 Lease G21096 | HELIS OIL & GAS COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 892 | 1/1/2012 | Marketing - Transportation | Liquids Transportation Service by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC and Stingray Pipeline Company LLC and Stingray Pipeline Company LLC | Fieldwood Energy LLC | VR 326 Lease G21096 | HELIS OIL & GAS COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 893 | 12/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Superior Natural Gas Corporation | Fieldwood Energy LLC and Superior Natural Gas Corporation | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 894 | 11/2/2010 | Marketing - Construction, Operations, Management, Ownership Agreements | SP 49 Pipeline LLC (the "Entity"), an limited liability company, was formed on November 2, 2010 by Apache GOM Pipeline, Inc, (succeeded by FW GOM Pipeline, Inc), Energy XXI GOM LLC, and Stone Energy Offshore, LLC (succeeded by Talos Resources LLC). Then by and between Fieldwood Energy LLC and Talos Resources LLC and Energy XXI GOM, LLC and Talos Resources LLC and Energy XXI GOM, LLC | Fieldwood Energy LLC and Talos Resources LLC and Energy XXI GOM, LLC and Talos Resources LLC and Energy XXI GOM, LLC | Fieldwood Energy LLC; FW GOM Pipeline, Inc. | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 895 | 9/16/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Tammary Oil & Gas LLC | Fieldwood Energy LLC and Tammary Oil & Gas LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 896 | 6/1/2018 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Tampa Electric Company | Fieldwood Energy LLC and Tampa Electric Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 897 | 6/19/2014 | Confidentiality Agreements / AMI and Related Consents | Consent to Disclose by and between Fieldwood Energy LLC and Tana Exploration Company LLC : BS 25 and other properties | Fieldwood Energy LLC and Tana Exploration Company LLC | Fieldwood Energy LLC | BS 25 Lease 19718, BS 25 Lease G31442, EI 315 Lease G24912, EI 342 Lease G02319, VR 229 Lease G27070 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 898 | 3/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Targa Gas Marketing LLC | Fieldwood Energy LLC and Targa Gas Marketing LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 899 | 10/1/2014 | Marketing - Transportation | IT Gathering by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services | Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services | Fieldwood Energy LLC | WC 71 Lease 244, WC 102 Lease 247 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 900 | 10/1/2014 | Marketing - Transportation | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services | Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services | Fieldwood Energy LLC | HI 129 Lease G01848, WC 290 Lease G04818 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, CHEYENNE PETROLEUM COMPANY, MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 901 | 9/1/2005 | Marketing - Processing | POL DEPENDENT ON GPm by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | SP 60 Lease G02137, SP 61 Lease G01609 | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 902 | 8/1/2007 | Marketing - Processing | POL depending on GPM plus FEE $.10 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 34 Lease G03414, ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 903 | 1/1/2009 | Marketing - Processing | Greater of 87%/13% or $.08 by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WC 71 Lease 244, WC 102 Lease 247 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 904 | 6/1/2009 | Marketing - Processing | 75%/25% plus $.12026 / mmbu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 34 Lease G03414, ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 905 | 1/1/2011 | Marketing - Processing | Greater of 87%/13% or $.08 by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WC 71 Lease 244, WC 102 Lease 247 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 906 | 5/1/2012 | Marketing - Processing | Greater of 87%/13% or $.08 by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WC 71 Lease 244, WC 102 Lease 247 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 907 | 1/1/2003 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 908 | 1/1/2009 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 909 | 3/31/2009 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 910 | 9/1/2009 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 911 | 11/1/2009 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 912 | 8/11/2010 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 913 | 11/1/2010 | Marketing - Processing | POL depending on GPM plus FEE $.12 /MMBtu by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 41 Lease G01073, GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 914 | 2/1/2013 | Marketing - Processing | GREATER OF FEE OR POL 85%/15% OR $.15 / MMBTU PLUS dgs FEE by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | GI 47 Lease 133, SS 198 Lease 593, GI 48 Lease 134, SM 106 Lease G02279, SP 75 Lease G05051, EI 224 Lease G05504, SS 129 Lease G12941, SS 130 Lease 453 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 915 | 2/1/2013 | Marketing - Processing | GREATER OF FEE OR POL 85%/15% OR $.15 / MMBTU PLUS dgs FEE by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | GI 43 Lease 175, ST 53 Lease G04000, VR 229 Lease G27070, GI 32 Lease 174, GI 39 Lease 126, GI 40 Lease 128, GI 41 Lease 129, GI 42 Lease 131, GI 44 Lease 176, GI 46 Lease 132, GI 52 Lease 177, WD 94 Lease 839, WD 95 Lease G01497, WD 96 Lease G01498, GI 43 Lease 175, GI 47 Lease 133, GI 48 Lease 134 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 916 | 4/1/2013 | Marketing - Processing | Greater of Fee or POL (85%/15%) min Fee $.12 plu s DGS FEE $.04 plus Dehy Fee $.02 (subject to annual exclation) by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | GI 32 Lease 174, GI 39 Lease 126, GI 40 Lease 128, GI 41 Lease 129, GI 42 Lease 131, GI 44 Lease 176, GI 46 Lease 132, GI 47 Lease 133, GI 48 Lease 134, GI 52 Lease 177, WD 67 Lease 179, WD 68 Lease 180, WD 69 Lease 181, WD 70 Lease 182, WD 71 Lease 838, WD 94 Lease 839, WD 95 Lease G01497, WD 96 Lease G01498 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 917 | 4/1/2013 | Marketing - Processing | Greater of Fee or POL (85%/15%) min Fee $.12 plu s DGS FEE $.04 plus Dehy Fee $.02 (subject to annual exclation) by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | GI 43 Lease 175 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 918 | 3/15/2020 | Marketing - Processing | GREATER OF FEE OR POL 85%/15% OR $.15 / MMBTU PLUS dgs FEE by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 86 Lease G02934, SP 87 Lease G07799, SP 89 Lease G01618 | ARENA OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 919 | 1/1/1998 | Marketing - Processing | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874, WD 80 Lease G01989 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 920 | 5/1/2010 | Marketing - Processing | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874, WD 80 Lease G01989 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 921 | 5/1/2011 | Marketing - Processing | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874, WD 80 Lease G01989 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 922 | 3/12/2012 as amended 3/1/2015 | Marketing - Processing | Greater of Fee or POL (80%/20%) min Fee $.15 plu s DGS FEE $.04 plus Dehy Fee $.02 (subject to annual exclation) by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 923 | 6/10/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Tenaska Marketing Ventures | Fieldwood Energy LLC and Tenaska Marketing Ventures | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 924 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC | CA 43 Lease G32268, VK 113 Lease G16535, EC 14 Lease G13572, SP 87 Lease G07799, SP 89 Lease G01618, VR 261 Lease G03328, VR 265 Lease G01955 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS II LLC; CHEVRON USA INC, EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | x |
| 925 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 926 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC and Texas Eastern and Texas Eastern | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 927 | 4/1/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Texla Energy Management, Inc. | Fieldwood Energy LLC and Texla Energy Management, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 928 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and The Brooklyn Union Gas Company D/B/A National Grid NY | Fieldwood Energy LLC and The Brooklyn Union Gas Company D/B/A National Grid NY | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 929 | 4/29/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and The Energy Authority, Inc. | Fieldwood Energy LLC and The Energy Authority, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 930 | 8/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and The Narragansett Electric Company D/B/A National Grid | Fieldwood Energy LLC and The Narragansett Electric Company D/B/A National Grid | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 931 | 5/1/2016 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and TOTAL Gas & Power North America, Inc. | Fieldwood Energy LLC and TOTAL Gas & Power North America, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 932 | 1/26/2015 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and TrailStone NA Logistics, LLC | Fieldwood Energy LLC and TrailStone NA Logistics, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 933 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC | MC 904 Lease G36566 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 934 | 10/1/2014 | Marketing - Transportation | Plant Flash Gas by and between Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC | VR 78 Lease G04421 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 935 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC | MC 948 Lease G28030, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 936 | 12/1/2013 | Marketing - Transportation | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC | BA A133 Lease G02665, BA 491 Lease G06069, BA A105 Lease G01757, GA 210 Lease G25524, HI 206 Lease G20660, HI 179 Lease G03236, WC 110 Lease 81, VR 78 Lease G04421, EI 119 Lease 49, EI 120 Lease 50, EI 125 Lease 51, EI 126 Lease 52, EI 136 Lease G03152, EI 158 Lease G01220, EI 173 Lease G13622, EI 174 Lease G03782, EI 175 Lease 438, HI 111 Lease G02354, HI 110 Lease G02353, HI 176 Lease G27509, SS 32 Lease 335, SS 58 Lease G07746, SS 91 Lease G02919, SS 214 Lease 828, SS 243 Lease G10780, SS 246 Lease G01027, SS 271 Lease G01038, SS 252 Lease G01529, SS 253 Lease G01031, SS 354 Lease G15312, SM 66 Lease G01198, SM 76 Lease G01208, SM 93 Lease G21618, SM 108 Lease 792, SM 147 Lease G06693, PL 1 Lease G04234, PL 9 Lease G02924, PL 10 Lease G02925, PL 11 Lease 71, SS 68 Lease G02917, ST 242 Lease G23933, ST 315 Lease G23946, ST 316 Lease G22762, VR 78 Lease G04421, VR 272 Lease G23829, SM 102 Lease G24872, VR 313 Lease G01172, VR 315 Lease G04215, VR 332 Lease G09514 | W & T ENERGY VI LLC; LOUISIANA LAND & EXPLORATION CO; WALTER OIL & GAS CORPORATION, MCMORAN OIL & GAS LLC, RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | x | x |
| 937 | 12/1/2013 | Marketing - Transportation | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC and Transco and Transco | Fieldwood Energy LLC | MO 826 Lease G26176, VK 251 Lease G10930 | W & T OFFSHORE INC, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| | | | | | | | | | | Applicable Entity | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW I | Credit Bid Purchaser | FW III | FW IV |
| 938 | 7/1/2001 | Marketing - Gathering | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 939 | 2/10/2014 | Marketing - Transportation | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 940 | 7/1/2014 | Marketing - Gathering | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 941 | 4/8/2010 | Marketing - Transportation | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Gas Pipe Line Corporation) | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Ga | Fieldwood Energy LLC | SA 10 Lease G03958 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 942 | 11/1/2007 | Marketing - Transportation | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC | EI 126 Lease 52, PL 10 Lease G02925, SS 214 Lease 828, SS 253 Lease G01031, VR 313 Lease G01172, EI 158 Lease G01220, SS 233 Lease G01528, VR 315 Lease G04215, ST 316 Lease G22762, VR 272 Lease G23829, SS 91 Lease G02919, SS 354 Lease G15312 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 943 | 7/1/2008 | Marketing - Transportation | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 944 | 8/6/1997 | Marketing - Transportation | Liquid Transportation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC | HI 179 Lease G03236 | ARENA ENERGY LP, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 945 | 9/27/1993 | Marketing - Transportation | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069, GA 210 Lease G25524, HI 179 Lease G03236, HI 206 Lease G20660, WC 110 Lease 81, SS 354 Lease G15312, VR 78 Lease G04421 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 946 | 11/1/2007 | Marketing - Transportation | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069, GA 210 Lease G25524, HI 179 Lease G03236, HI 206 Lease G20660, WC 110 Lease 81, VR 78 Lease G04421 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 947 | 1/22/2013 | Marketing - Transportation | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) | Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas | Fieldwood Energy LLC | BA A105 Lease G01757, BA A133 Lease G02665, BA 491 Lease G06069, GA 210 Lease G25524, HI 179 Lease G03236, HI 206 Lease G20660, WC 110 Lease 81, VR 78 Lease G04421 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 948 | 8/7/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and United Energy Trading, LLC | Fieldwood Energy LLC and United Energy Trading, LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 949 | 11/1/2015 | Marketing - Other | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) | Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) | Fieldwood Energy LLC | SP 89 Lease G01618, WD 86 Lease G02934, WD 128 Lease G10883, WD 104 Lease 841 | TALOS ERT LLC, THE LOUISIANA LAND & EXPL CO LLC, SANARE ENERGY PARTNERS, LLC, Texas Eastern Transmission / Spectra Energy | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 950 | 8/13/1997 | Marketing - Transportation | Venice Gatheing Firm Transport with Disount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. | Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 951 | 12/17/1997 | Marketing - Transportation | Venice Gatheing Firm Transport with Disount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. | Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 952 | 10/1/2019 | Marketing - Transportation | FT -2 Transport by and between Fieldwood Energy LLC and Venice Gathering and Venice Gathering | Fieldwood Energy LLC and Venice Gathering and Venice Gathering | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874, ST 148 Lease G01960 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 953 | 12/15/1997 | Marketing - Transportation | Venice Gatheing Firm Transport with Disount $.05, ST-148 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC | ST 148 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 954 | 4/1/2003 | Marketing - Gathering | GC 45, WD 41 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC | WD 41 Lease G01073 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 955 | 11/1/2010 | Marketing - Gathering | Venice Gathiering, Max Rate,WD 41 Effective date 11/1/2010 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC | WD 41 Lease G01073 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 956 | 12/18/1997 | Marketing - Transportation | Venice Gatheing Firm Transport with Disount $.05, WD 79 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 957 | 1/1/2001 | Marketing - Transportation | Venice Gatheing Firm transport Max rate WD 79 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. | Fieldwood Energy LLC | WD 79, WD 80 Lease G01874 | TAMPNET INC, VENICE GATHERING SYSTEMS | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 958 | 3/31/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and W&T Offshore, Inc. | Fieldwood Energy LLC and W&T Offshore, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 959 | 8/14/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Washington Gas Light Company | Fieldwood Energy LLC and Washington Gas Light Company | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 960 | 9/10/1990 | Marketing - Gathering | Gathering Agreement - Discount for BA 491 by and between Fieldwood Energy LLC and WFS and WFS | Fieldwood Energy LLC and WFS and WFS | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 961 | 9/1/2009 | Marketing - Terminalling | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company | Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company | Fieldwood Energy LLC | SM 66 Lease G01198, SM 132 Lease G02282, ST 316 Lease G22762, SS 145 Lease G34831, SM 76 Lease G01208 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 962 | 9/1/2009 | Marketing - Terminalling | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company | Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company | Fieldwood Energy LLC | PL 10 Lease G02925, PL 13 Lease G03171, PL 10 Lease G02925, EI 158 Lease G01220, EI 107 Lease G15241, EI 107 Lease G15241, SS 182 Lease G03998, SS 259 Lease G05044, SS 33 Lease 336, SS 193 Lease G13917, SM 76 Lease G01208 | WALTER OIL & GAS CORPORATION, MCMORAN OIL & GAS LLC, RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 963 | 2/1/2014 | Marketing - Terminalling | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC | Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC | Fieldwood Energy LLC | EI 126 Lease 52, PL 10 Lease G02925, SS 214 Lease 828, SS 253 Lease G01031, VR 313 Lease G01172, EI 158 Lease G01220, SS 233 Lease G01528, VR 315 Lease G04215, ST 316 Lease G22762, VR 272 Lease G23829, SS 91 Lease G02919, SS 354 Lease G15312 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 964 | 3/26/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and WGL Midstream, Inc. | Fieldwood Energy LLC and WGL Midstream, Inc. | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 965 | 2/1/2014 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy LLC and Williams Energy Resources LLC | Fieldwood Energy LLC and Williams Energy Resources LLC | Fieldwood Energy LLC | n.a. | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 966 | 3/1/2003 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 967 | 4/1/2003 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 968 | 12/1/2003 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA 491 Lease G06069 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 969 | 7/15/2004 | Marketing - Processing | POL 90%/10% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 970 | 8/1/2009 | Marketing - Processing | POL 90%/10% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 971 | 8/25/2009 | Marketing - Processing | POL 90%/10% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | ST 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 972 | 12/10/2013 | Marketing - Processing | POL 85% / 15% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 973 | 12/12/2013 | Marketing - Processing | POL 90%/10% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | St 308 Lease G21685 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Applicable Entity: Credit Bid Purchaser | Applicable Entity: FW III | Applicable Entity: FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 974 | 12/10/2013 | Marketing - Processing | POL 85% / 15% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 975 | 12/10/2013 | Marketing - Processing | POL 85% / 15% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC; ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 976 | 2/1/2004 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A105 Lease G01757 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 977 | 9/1/2004 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A105 Lease G01757 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 978 | 11/5/2004 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A105 Lease G01757 | ERA HELICOPTERS INC., TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 979 | 5/1/2020 | Marketing - Processing | POL-65% of GPM- Never less than10% or more than 20% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | GC 040 Lease G34536 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 980 | 1/24/2001 | Marketing - Processing | 80% / 20% PTR KEEP WHOLE by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MP 259 Lease G07827 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 981 | 1/1/2016 | Marketing - Processing | 80% / 20% PTR KEEP WHOLE by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MP 259 Lease G07827, VK 692/693 Lease G07898, VK 694 Lease G13055 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 982 | 8/1/2004 | Marketing - Processing | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A133 Lease G02665 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 983 | 8/1/2009 | Marketing - Processing | 80%/20% POL with a minimum $.13 /MMBtu by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A133 Lease G02665, MU A85 Lease G03061, MU A-111 Lease G03068, BA A47 Lease G03940 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 984 | 12/1/2010 | Marketing - Processing | 80%/20% POL with a minimum $.13 /MMBtu by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | BA A133 Lease G02665, MU A85 Lease G03061, MU A-111 Lease G03068, BA A47 Lease G03940 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 985 | 9/1/2009 | Marketing - Processing | If inlet volume is greater than 25,000; ((25,000 MMBTU * .03) + (Excess Daily Volume * 0.025))/Total Field Delivery Pt. Daily Volume by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | MO 826 Lease G26176 | W & T OFFSHORE INC, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 986 | 4/1/2015 | Marketing - Processing | GPM; < 1.8 = 82/18%, 1.8>3 = 85/15%, >3 = 88/12% by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC and Williams Field Services and Williams Field Services | Fieldwood Energy LLC | ST 311 Lease G31418, ST 320 Lease G24990 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 987 | 10/15/2018 | Assignment of Oil & Gas Leasehold Interest(s) | Assignment and Bill of Sale dated 10/25/2018 but effective 10/15/2018 by and between Fieldwood Energy LLC as Assignor and BP Exploration & Production as Assignee | Fieldwood Energy LLC as Assignor and BP Exploration & Production as Assignee | Fieldwood Energy LLC | MC 562 Lease G19966 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 988 | 11/2/2020 | Letter Agreement - Other Land | Letter Agreement dated 11-20-2020 but acknowledged and agreed to 12-9-2020 by and between Fieldwood Energy LLC, Arena Offshore, LP and Arena Energy, LLC | Fieldwood Energy LLC, Arena Offshore, LP and Arena Energy, LLC | Fieldwood Energy LLC | PL 25 Lease G14535 | ARENA OFFSHORE LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 989 | 1/28/2021 | Settlement / Release / Relinquishment Agreements | Release and Settlement Agreement effective January 28, 2021 by and between Fieldwood Energy LLC, Fieldwood SD Offshore LLC, Fieldwood Energy Offshore LLC and Sanare Energy Partners LLC | Fieldwood Energy LLC, Fieldwood SD Offshore LLC, Fieldwood Energy Offshore LLC and Sanare Energy Partners LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Fieldwood SD Offshore LLC | VR 229 Lease G27070, SP 89 Lease G01618, SM 40 Lease G13607, SS 252 Lease G01529, HIPS Lease ?, Venice Dehydration Station Lease ?, Grand Chenier Separation Facility | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 990 | 11/1/2018 | Letter Agreement - Other Land | Letter Agreement re Project Team Letter Agreement re Project Team by and between Fieldwood Energy LLC, Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC, effective November 1, 2018 covering Katmai | Fieldwood Energy LLC, Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC, effective November 1, 2018 covering Katmai | Fieldwood Energy LLC | EW 1009 Lease G34878, EW 1010 Lease G34879, EW 1011 Lease G34880, GC 40 Lease G34536, GC 41 Lease G34537, GC 39A Lease G34966 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 991 | 12/4/1958 | Operating Agreement - Other | OPERATING AGREEMENT BY AND BETWEEN THE TEXAS COMPANY AND PAN AMERICAN PETROLEUM CORPORATION , AS AMENDED | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | WD 103 Lease 840 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 992 | 7/25/1960 | Operating Agreement - Other | Operating Agreement, dated effective July 25,1960, as amended, between Second Mobil Oil Company, Inc., Gulf Oil 'Corporation, and Humble Oil & Refining Company, as amended, SS 169 Field. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SS 169 Lease 820 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 993 | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | HI A382 Lease G02757 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 994 | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | HI A596 Lease G02722 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 995 | 11/11/1980 | Joint Operating Agreement | JOINT OPERATING AGREEMENT DATED NOVEMBER 11, 1980, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, AS OPERATOR, AND CNG PRODUCING COMPANY AND HUNT OIL COMPANY, AS NON-OPERATORS, COVERING VERMILION AREA, BLOCK 78, OCS-G 4421, OFFSHORE LOUISIANA. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | VR 78 Lease G04421 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 996 | 4/1/1981 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement; dated April 1,1981, by and between Conoco Inc., Atlantic Richfield Company, Getty Oil Company, Cities Service Company, Placid Oil Company, Hamilton Brother Oil Company, Mobil Oil Exploration and Producing S.E., Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt Industries and Prosper Energy Corporation, comprising all working interest owners in the Ship ShOperating Agreementl Blocks 206, 207,OCS-G:i523:ahd OCS-G 1523, respectively. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SS 206 Lease G01522, SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 997 | 4/1/1981 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement for the C-6/JS Sand, effective April 1,1981, between. Arco Oil and Gas,Company;,Getty Oil Company, Cities Service Company, Hamilton Brothers Oil Company, Mobil Oil. Exploration &>. Producing S.E. Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt; Industries, and Prosper Energy Corporation.; Unit No. 891020231 | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | SS 206 Lease G01522, SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | x |
| 998 | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | HI A595 Lease G02721 | APACHE DEEPWATER LLC, COX OPERATING, L.L.C., ENI Trading & Shipping Inc., NEXEN ENERGY MARKETING U.S.A. INC., SANARE ENERGY PARTNERS, LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 999 | 8/1/1973 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN MOBIL OIL CORPORATION AND UNION OIL COMPANY OF CALIFORNIA ET AL | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | HI A573 Lease G02393, HI A572 Lease G02392 | ERA HELICOPTERS INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1000 | 8/19/2019 | Termination / Ratification and Joinder of Operating or Other Agreements | Terminates Master Use Agreement and JEA by and between Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC Juneau Oil & Gas LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC Juneau Oil & Gas LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1001 | 11/1/2019 | Property Participation & Exchange Agreements | Agree to prospect area; elects not to aquire GI 46 AMI; elects not to participate, etc. by and between Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC Juneau Oil & Gas LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC Juneau Oil & Gas LLC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; GOM Shelf LLC | GI 46 Lease 132 | APACHE SHELF EXPLORATION LLC, BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1002 | 7/1/1995 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT EFFECTIVE JULY 1, 1995, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, DALEN RESOURCES OIL & GAS CO AND GLOBAL NATURAL RESOURCES CORPORATION OF NEVADA COVERING PORTIONS OF BLOCK 117 AND 118, EUGENE ISLAND, AS AMENDED TO EXCLUDE JOINT DEVELOPMENT ACREAGE. | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Tammany Oil and Gas | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | EI 107 Lease G15241, EI 108 Lease G03811, EI 118 Lease G15242 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, et al.
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] Associated leases referenced may only be a partial list of leases associated with an agreement. To the extent the Debtors are able to identify the proper Debtor entity counterparty, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease counterparties and/or related parties working interest owners.
[5] All estimated cure amounts are subject to reconciliation. Cure estimates are adjusted to zero for completed trade agreements.

The proposed treatment set forth on this Schedule, Column "Proposed Outcome / Treatment [5]", including any exhibits and schedules thereto and as may be further amended, supplemented, or modified (the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Page 81 of 54

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [3] | Debtor Entities [2] | Associated Leases [4] | Related Lease Parties [4] | Cure Estimate | Proposed Outcome / Treatment [5] | FW | Credit Bid Purchaser | FW III | FW II |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1003 | 2/22/1999 | Joint Development Venture / Exploration Agreements | JOINT DEVELOPMENT AGREEMENT BY AND BETWEEN W&T OFFSHORE, INC CORPORATION, W & T OFFSHORE, INC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC; Samuray Oil and Gas | Fieldwood Energy LLC | EI 107 Lease OCS-G 09441; EI 10t Lease OCS-G 08411; EI 117 Lease OCS-G 05142 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1004 | 2/1/1971 | Joint Operating Agreement | Operating Agreement, dated February 1 1971, between Tenneco Oil Company, Texaco Inc, Amerada Petroleum Co | Fieldwood Energy LLC; GOM Shell LLC | EI 342 Lease G02319 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1005 | 10/1/1972 | Joint Operating Agreement | OPERATING AGREEMENT, dated October 1 1972 covering OCS-G 14790, SPI OIL AND GAS COMPANY AND THE LOUISIANA LAND EXPLORATION Co LLC | Fieldwood Energy LLC; GOM Shell LLC; Fieldwood Energy Land Exploration Co LLC | SP 81 Lease G07766; SP 86 Lease G01616 | TALOS ERT LLC; TALOS ERT LLC; THE LOUISIANA LAND & EXPL CO LLC; SAMARA ENERGY PARTNERS LLC (formerly Tyson Lease) | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1006 | 12/20/2016 | Preferential Rights Agreement | Preferential Right to Purchase Election Letter by and between Fieldwood Energy Offshore LLC and ANKOR E&P Holdings Corporation - ANKOR Waiver of Pref per GCEB to Fieldwood | Fieldwood Energy Offshore LLC; and ANKOR E&P Holdings Corporation | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1007 | 10/11/2017 | Preferential Rights Agreement | Preferential Right to Purchase Election Letter by and between Fieldwood Energy Offshore LLC and ANKOR E&P Holdings | Fieldwood Energy Offshore LLC; and ANKOR E&P Holdings Corporation | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1008 | 11/4/2014 | Farmout Agreement | Farmout Proposal by and between Fieldwood Energy Offshore LLC and ANKOR Energy LLC. SS 79 Energy and ANKOR Energy LLC, L.L.C, Resources, LLC - Proposal Letter from Fieldwood | Fieldwood Energy Offshore LLC; and ANKOR Energy LLC, SS 79 Resources LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1009 | 7/7/2015 | Preferential Rights Agreement | Preferential Right to Purchase Election Letter by and between Fieldwood Energy Offshore LLC and Apache Shelf Exploration LLC | Fieldwood Energy Offshore LLC; and Apache Shelf Exploration LLC | GI 110 Lease G13943; GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1010 | 7/1/2016 | Marketing - Gas Sales | Base Contract for Sale and Purchase of Natural Gas by and between Fieldwood Energy Offshore LLC and Emerald Energy LP | Fieldwood Energy Offshore LLC; and Emerald Energy, LP | n.a. | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1011 | 6/1/2017 | Joint Operating Agreement | Notice of Default by and between Fieldwood Energy Offshore LLC and Angeli Resources, LLC | Fieldwood Energy Offshore LLC; and Angeli Resources, LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1012 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate Trust Estate Withdrawal Letter Agreement dated 5/15/2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC; and Lamar Hunt Trust Estate | SS 206 Lease G01522 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1013 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate Withdrawal Letter Agreement dated 5-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC; and Lamar Hunt Trust Estate | SS 207 Lease G01523 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1014 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate Withdrawal Letter Agreement dated 5-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC; and Lamar Hunt Trust Estate | SS 216 Lease G01524 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1015 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate Withdrawal Letter Agreement dated 5-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC; and Lamar Hunt Trust Estate | SM 285 Lease G02311 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1016 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate Withdrawal Letter Agreement dated 5-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC; and Lamar Hunt Trust Estate | SM 281 Lease G02660 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1017 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate Withdrawal Letter Agreement dated 5-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC; and Lamar Hunt Trust Estate | SS 204 Lease G02310 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1018 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate Withdrawal Letter Agreement dated 5-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC; and Lamar Hunt Trust Estate | SM 280 Lease G01406 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1019 | 1/1/2017 | Withdrawal Agreement | by and between Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate Withdrawal Letter Agreement dated 5-15-2017 but effective 1/1/2017 | Fieldwood Energy Offshore LLC; and Lamar Hunt Trust Estate | GI 116 Lease G13944 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1020 | 6/1/2014 | Marketing - Separation & Stabilization | USM-La ship all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore LLC; and Manta Ray Offshore Gathering Company, L.L.C. | GC 109 Lease G09301; GI 110 Lease G13943; GI 116 Lease G13944 | WELD WELL CONTROL, INC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1021 | 6/1/2014 | Marketing - Separation & Stabilization | USM-La ship all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore LLC; and Manta Ray Offshore Gathering Company, L.L.C. | GC 108 Lease G00900; GI 106 Lease G00910; GI 110 Lease G13943 | WELD WELL CONTROL, INC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1022 | 6/1/2014 | Marketing - Separation & Stabilization | USM-La ship all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore LLC; and Manta Ray Offshore Gathering Company, L.L.C. | GC 106 Lease G04968; GC 108 Lease G00900; GI 110 Lease G13943 | WELD WELL CONTROL, INC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1023 | 10/25/2015 | Marketing - Separation & Stabilization | USM-La ship all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore LLC; and Manta Ray Offshore Gathering Company, L.L.C. | GC 106 Lease G04968; GC 108 Lease G00900; GC 244 Lease G10948; GI 110 Lease G13943 | WELD WELL CONTROL, INC; DEEPWATER ABANDONMENT ALTERNATIVES INC; MARUBENI OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ERA HELICOPTERS INC; MANTA RAY OFFSHORE GATHERING COMPANY, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1024 | 3/1/2014 | Marketing - Separation & Stabilization | USM-La ship all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore LLC; and Manta Ray Offshore Gathering Company, L.L.C. | GC 065 Lease G05688 | WELD WELL CONTROL, INC; DEEPWATER ABANDONMENT ALTERNATIVES INC; MARUBENI OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ERA HELICOPTERS INC; MANTA RAY OFFSHORE GATHERING COMPANY, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1025 | 6/1/2014 | Marketing - Separation & Stabilization | USM-La ship all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore LLC; and Manta Ray Offshore Gathering Company, L.L.C. | GC 065 Lease G05688 | WELD WELL CONTROL, INC; DEEPWATER ABANDONMENT ALTERNATIVES INC; MARUBENI OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ERA HELICOPTERS INC; MANTA RAY OFFSHORE GATHERING COMPANY, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1026 | 10/25/2015 | Marketing - Separation & Stabilization | USM-La ship all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company | Fieldwood Energy Offshore LLC; and Manta Ray Offshore Gathering Company, L.L.C. | GC 065 Lease G05688 | WELD WELL CONTROL, INC; DEEPWATER ABANDONMENT ALTERNATIVES INC; MARUBENI OIL & GAS (USA) LLC; WALTER OIL & GAS CORPORATION; ERA HELICOPTERS INC; MANTA RAY OFFSHORE GATHERING COMPANY, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1027 | 5/30/2017 | Marketing - PHA | Notice of Default by and between Fieldwood Energy Offshore LLC and Rooster Oil & Gas, LLC | Fieldwood Energy Offshore LLC; and Rooster Oil & Gas, LLC | SS 79 Lease G15277 | W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1028 | 1/12/1993 | Other Notices | Notice of Default by and between Fieldwood Energy Offshore LLC and Rooster Oil & Gas, LLC - Notice Default per 81 of 234 dated | Fieldwood Energy Offshore LLC; GOM Shell LLC; GOM Shell LLC | BA A133 Lease G02666 | | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1500 | 5/1/1997 | Joint Operating Agreement | Main Agreement, dated effective January 12 1993, between Chieftain International (U.S.) Inc. and Tatham Offshore, L.L.C. and Tidewater Oil & Gas Company and Red Willow Offshore, LLC ("Red Willow") | Fieldwood Energy Offshore LLC; GOM Shell LLC; & W Energy VI LLC; GOM Shell LLC | BA A133 Lease G02666 | W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1501 | 5/1/1997 | Joint Operating Agreement | (...) | | | | | $0.00 | | | | | |
| 1502 | 1/12/1993 | Joint Operating Agreement | (...) | | | | | $0.00 | | | | | |

Fieldwood Energy, LLC, et al.
Prepared May 26, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors and their estates reserve all rights based on this Schedule as identified only. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent parties owning an interest in the associated leases.
[5] Contract treatment is subject to change based on ongoing discussions.
[6] If estimate based on cure pre-petition accounts payable balance. Cure estimates are adjusted to zero for completed trade agreements.
[7] Reference is hereby made to the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
[8] Reference is hereby made to the Schedule of Assumed Contracts for informational purposes only. In the event of any conflict between any of the Definitive Documents and the Disclosure Statement relating to the Disclosure Statement and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Category | Contract Description | Debtor Entities [1] | Known Contract Counterparties [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate | Proposed Contract Treatment [5] |
|---|---|---|---|---|---|---|---|---|
| 1031 | Marketing / Transportation | Gathering Agreement for GC 242, Phases 5, 6, 7 by and between Fieldwood Energy Offshore, LLC and Marlin Bay Offshore Gathering Company and Marlin Bay Offshore Gathering Company | Fieldwood Energy Offshore LLC | Fieldwood Energy Offshore, LLC and Marlin Bay Offshore Gathering Company | GC 242 Lease G01001 | RED HOLLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1032 | Marketing / Transportation | Marlin Bay Firm Gathering and Dedication - Discount Rates of 0.79 by and between Fieldwood Energy Offshore, LLC and Marlin Bay Offshore Gathering Company and Marlin Bay Offshore Gathering Company | Fieldwood Energy Offshore LLC | GC 244 Lease G13491, GC 200 Lease G13916, GA 116 Lease G13943 | | RED HOLLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1033 | Marketing / Transportation | Seaside Gas Sweetening / Treating Agreement by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | SM 142 Lease G01216, SM 40 Lease G13607 | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1034 | Marketing / Transportation | Seaside Pipeline - Standridge (Dynamic IT transport) plus Discount 3.24 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | EC 178 Lease G24229 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1035 | Marketing / Transportation | Seaside Pipeline - standridge (Dynamic IT Retrograde by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | EC 178 Lease G24229 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1036 | Marketing / Transportation | SeasidePlatform - standridge (Dynamic IT Retrograde by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | SM 30 Lease G15330 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1037 | Marketing / Transportation | Seaside Platform - standridge (Dynamic IT Retrograde 0942 + total discounted rate= 3.24 - Discount only for SM30 SM 83 30 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | SM 40 Lease G13607, SM 40 Lease G13607 | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1038 | Marketing / Transportation | Seaside Platform - standridge (Dynamic IT Retrograde 0942 + total discounted rate= 3.24 - Discount only for SM30 SM 83 30 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | SM 30 Lease G15330 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1039 | Marketing / Transportation | Seaside Platform - standridge (Dynamic IT Retrograde 0942 + total discounted rate= 3.24 - Discount only for SM30 SM 83 30 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | SM 40 Lease G13607, SM 40 Lease G13607 | | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1040 | Marketing / Transportation 2011 discount (Seaside Platform) | Seaside Platform - standridge (Dynamic IT Retrograde 0942 + total discounted rate= 3.24 - Discount only for SM30 SM 83 30 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company | Fieldwood Energy Offshore LLC | Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company | SM 40 Lease G13607, SM 40 Lease G13607 | | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1041 | Marketing / Transportation | Toolhandlers (QC Term at SM 216) by and between Fieldwood Energy, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company | Fieldwood Energy LLC | Fieldwood Energy, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company | GC 768 Lease G21817 | | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1042 | Marketing / Transportation | EW 910 / ST 320 by and between Fieldwood Energy, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company | Fieldwood Energy LLC | EW 910 / ST 320 by and between Fieldwood Energy, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company | ST 320 Lease G24990 | | W&T OFFSHORE INC, WALTER OIL & GAS CORPORATION | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1043 | Marketing / Connection Agreement | CONSENT TO ASSIGNMENT OF FIELDWOOD TO OR ENTIRE FIRM AGREEMENT IN AMERICAN PIPELINE, EMFIRE DEEPWATER LLC AGREEMENT LLC AND ADDENDUM TO CONSENT TO ASSIGN DEEPWATER LLC AND ADDENDUM TO CONSENT TO ASSIGN | Fieldwood Energy LLC | ST 176 Lease G13944 | | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1044 | Marketing / Lease of Platform Space | FIELDWOOD LEASES PLATFORM SPACE AT ST 292 from Marlin Bay Offshore Gathering Company L.L.C. | Fieldwood Energy LLC | Fieldwood, Marlin Bay Offshore Gathering Company L.L.C. | n.a. | | APACHE OFFSHORE INVESTMENT GP BRISTOW US LLC, TARPNET INC | $0.00 | Assume and allocate pursuant to divisive merger |
| 1045 | Non-Oilfield Services | 77817 ;PO Terms & Conditions spec effective 01/15/2019 | Fieldwood Energy LLC | FELTRAN, INC | n.a. | | n.a. | $2,544.52 | Assume and assign to Credit Bid Purchaser |
| 1046 | Marketing / Connection Agreement | 7/18/2017 Agreement Purchase Agreement effective Jan 1, 2019 | Fieldwood Energy LLC | FITZGERALD INSPECTION, INC. | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1047 | Oilfield Services | 500896_Master_Service_Contract Effective_11-1-2013 | Fieldwood Energy LLC | FLUID-SENSING & CONSTRUCTION | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1048 | Oilfield Services | Fluids Consultant | Fieldwood Energy LLC | FLUID TECHNOLOGY SERVICE INTERNATIONAL LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1049 | Oilfield Services | 53655;1 Master Services Agreement dated effective 08/12/2015 | Fieldwood Energy LLC | FMC TECHNOLOGIES INC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1050 | Other Misc | Tax Agreement Settlement between ForestEnergy Gas Exploration, Inc. and Shell Oil Company | ForestEnergy Gas Exploration, Inc. and Shell Oil Company | ForestEnergy Gas Exploration, Inc. and Shell Oil Company | SM132 Lease G02282, SM 140 Lease G22392 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1051 | Right of Way | LETTER AGREEMENT BY AND BETWEEN FORCENERGY GAS EXPLORATION, INC. AND ENERGY RESOURCE TECHNOLOGY, INC. | Fieldwood Energy LLC | FORCENERGY GAS EXPLORATION INC. AND ENERGY RESOURCE TECHNOLOGY | VR 380 Lease G02560 | | n.a. | $0.00 | Assume and allocate pursuant to divisive merger |
| 1052 | Joint Development / Venture / Exploration Agreements | Plan of Development by and between Shell Offshore Inc. BP Exploration and etc for production and Oil, Inc and marathon oil company dated effective 17 Apr 1995 | Fieldwood Energy LLC | FORCENERGY GAS EXPLORATION INC. AND ENERGY RESOURCE TECHNOLOGY Exploration and Oil, Inc and marathon oil company dated effective 17 Apr 1995 | GC 205 Lease G12309, GC 201 Lease G13253, GC 244 Lease G13543 | | RED HOLLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, CHEVRON U.S.A. INC, W & T ENERGY VI LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1053 | Oilfield Services | 70486_Master Services Agreement dated effective 06/15/2019 | Fieldwood Energy LLC | FOREFRONT EMERGENCY MANAGEMENT LP | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1054 | Joint Operating Agreement | Ratification and Book of Operating Agreement eff 2-25-2004 KA Forest Oil Corporation et al | Forest Oil Corporation | Forest Oil Corporation | W/0 341 Lease G04414 | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1055 | Other Operating / Stabilization Agreements | MP 259 N-P Compression Agreement by and co-owned of the WD 34 A PP and co-owner of the WD 34 A PP and Red Willow Offshore, L.L.C. et al | Forest Oil Corporation, as operator and co-owner of the WD 34 A PP and Red Willow Offshore, LLC, et al, as owners | Forest Oil Corporation, as operator and co-owner of the WD 34 A PP and Red Willow Offshore, L.L.C. et al | WD 34 Lease G00414 | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1056 | Farmout Agreement | Farmout Agreement by and between Forest Oil Corporation, et al and Petro Oil Company, et al | Forest Oil Corporation | Forest Oil Corporation, et al and Petro Oil Company et al | MP 259 Lease G01927 | | TALOS ERT LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1057 | Farmout Agreement | Farmout Agreement dated 6-25-2004 KA Forest Oil Corporation, Texas Eastern CY Resources GM4 and Houston Energy, L.P. et al | Forest Oil Corporation, Texas Eastern CY Resources, Noble Energy, Inc, and Houston Energy, L.P., as owners | Forest Oil Corporation, Texas Eastern CY Resources GMA, Inc, and Houston Energy, L.P. et al | WD 34 Lease G00414 | | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1058 | Oilfield Services | 70002_Master Services Agreement dated effective 10/09/2014 | Fieldwood Energy LLC | FORUM US INC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1059 | Right of Way | Frances L. Welch Perry | Fieldwood Energy LLC | Frances L. Welch Perry ETAL | WD 66 | | n.a. | $0.00 | Assume and allocate pursuant to divisive merger |
| 1060 | Right of Way | Frances L. Welch Perry ETAL | Fieldwood Energy LLC | Frances L. Welch Perry ETAL | WD 66 | | n.a. | $0.00 | Assume and allocate pursuant to divisive merger |
| 1061 | Non-Oilfield Services | Jennings Service Agreement Master Services Contract effective 01/01/2014 | Fieldwood Energy LLC | FRANK'S INTERNATIONAL LLC | n.a. | | n.a. | $263,009.26 | Assume and assign to Credit Bid Purchaser |
| 1062 | Oilfield Services | Drilling / Completion Handling Services [turning around] | Fieldwood Energy LLC | FRANK'S INTERNATIONAL LLC | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1063 | Oilfield Services | MP 259 N-Pressuration Principal Decision McMoRan steals not for participants in & T wells SL the B/J tenth | Freeport-McMoRan Oil & Gas LLC | MP 259 Lease G01927 | | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1064 | Oilfield Services | MP 259 N-Pressuration Principal Decision McMoRan steals not for participants in & T wells SL the B/J tenth | Freeport-McMoRan Oil & Gas LLC | MP 259 Lease G01927 | | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1065 | Other | Consulting Agreement | Fieldwood Energy LLC | G. MATT McCARROLL | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1066 | Other | Separation and Release Agreement | Fieldwood Energy LLC | G. MATT McCARROLL | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1067 | Oilfield Services | 77789_Master Services Agreement dated effective 12/05/2018 | Fieldwood Energy LLC | GAIA EARTH SCIENCES LIMITED | n.a. | | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |

Note: This is a wide, dense multi-column legal schedule. Values transcribed to best legibility.

Fieldwood Energy LLC, et al.
Prepared May 26, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors currently believe that the following schedules include only the Debtor entities. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent parties to the associated lease.
[5] Cure estimates based on open pre-petition accounts payable balances. Cure estimates are subject to open pre-petition accounts payable balances.
[6] Where possible, contracts have been categorized as [Assume; Assume and assign to Credit Bid Purchaser; Assume and Allocate Pursuant to Divisive Mergers; etc.]. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth in the Schedule of Assumed Contracts. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Party/ies [4] | Cure Estimate [5] | Proposed Contract Treatment [6] |
|---|---|---|---|---|---|---|---|---|---|
| 1069 | 1999 | Oilfield Services | 777617_Master Services Agreement dated effective 02/13/2019 | G4TE | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1070 | 1999 | Oilfield Services | 705651_Master Services Agreement dated effective 07/01/2014 | GAUGING5 UNLIMITED LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1071 | 1999 | Oilfield Services | Turbines / Compressor Equipment Purchases and Maintenance | GE OIL & GAS COMPRESSION SYSTEMS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1072 | 1999 | Oilfield Services | 551242_Master Services Agreement dated effective 11/01/2013 | GE OIL & GAS LOGGING SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1073 | 1999 | Oilfield Services | 555510_MSA dated effective 02/09/2015; Joinder effective 04/02/2019; Joinder effective 05/16/2019 | GE GAS PRESSURE CONTROL LP (Hytell) | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1074 | 1999 | Non-Oilfield Services | Geological and Geophysical Integrated Modeling | GEOCOMPUTING GROUP LLC | Fieldwood Energy LLC | n.a. | n.a. | $137,665.20 | Assume and Allocate Pursuant to Divisive Mergers |
| 1075 | 1999 | Oilfield Services | 777859_Master Services Agreement dated effective 12/17/2017 | GIR SOLUTIONS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1076 | 1999 | Oilfield Services | Tank & Vessel Bidder | GLOBAL VESSEL & TANK, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1078 | 12/31/2007 | Acquisition / PSA / Other Purchase or Sale Agreements | PURCHASE AND SALE AGREEMENT BY AND BETWEEN GOM SHELF LLC AND WELL CONTROL, INC. | GOM SHELF LLC AND WELL CONTROL, INC | Fieldwood Energy Offshore LLC | GI 43 Lease 135; GI 43 Lease 128; GI 41 Lease 129; GI 41 Lease 130; GI 47 Lease 133; GI 48 Lease 177 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the account of the Acquired Interests) and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) |
| 1079 | 3/28/2005 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT BY AND BETWEEN GOM SHELF LLC (BY APACHE CORPORATION) AND RIDGEWOOD | GOM SHELF LLC (BY APACHE CORPORATION U.S.A. Inc) | Fieldwood Energy LLC | WD 64 Lease 830; WD 65 Lease G01497; WD 66 Lease G01468 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1080 | 12/19/2007 | Letter Agreement - Other Land | GOM Shelf LLC letter that issue 2008 AFEs by and between GOM Shelf LLC and Chevron U.S.A. Inc. | GOM Shelf LLC Chevron U.S.A. Inc. | Fieldwood Energy LLC | GI 39 Lease 127; GI 40 Lease 128; GI 41 Lease 129; GI 41 Lease 130; GI 47 Lease 132; GI 48 Lease 177 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1081 | 7/19/2007 | Water Bottom Contracts | Renewal of term Contract No. 184 with State of LA by and between GOM Shelf LLC State of LA | GOM Shelf LLC State of LA State Land Office | Fieldwood Energy LLC | GI 132 Lease 132; GI 46 Lease 175 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1082 | 7/2/2012 | Water Bottom Contracts | Renewal of term Contract No. 184 with State of LA by and between GOM Shelf LLC State of LA | GOM Shelf LLC State of LA State Land Office | Fieldwood Energy LLC | AREA 5 GI 43 Lease 175 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1083 | 7/8/2017 | Water Bottom Contracts | Renewal of term Contract No. 184 with State of LA by and between GOM Shelf LLC State of LA | GOM Shelf LLC State of LA State Land Office | Fieldwood Energy LLC | GI 43 EI et. Lease 175 | APACHE SHELF EXPLORATION LLC; BP AMERICA PRODUCTION COMPANY; TALOS PRODUCTION LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1084 | 11/27/2019 | Letter Agreement - Other Land | Letter Agreement SS 198 J-1 that dropped Utica and Talos Energy Offshore LLC | GOM Shelf Offshore LLC and Talos Energy Offshore LLC | Fieldwood Energy LLC | SS 198 Lease 593 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1085 | 1999 | Oilfield Services | GREENE'S ENERGY GROUP LLC | GREENE'S ENERGY GROUP, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1086 | 1999 | Oilfield Services | GREENE'S HOLDING CORPORATION | GREENE'S HOLDING CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1087 | 1999 | Well / Prospect Proposals | Pressure Testing, Pipeline Flowback Equipment, Tree, Valve and Wellhead Services | GS E&R America Offshore LLC | Fieldwood Energy Offshore LLC | GI 94 Lease G02163; SS 73 Lease G12277; VR 332 Lease G01674; VR 332 Lease G09574; WD 34 Lease G00434 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1088 | 10/12/2016 | Assignment of Oil & Gas Leasehold Interests | Assignment of Record Title Interest by and between GS E&R America Offshore, LLC / Fieldwood Energy Offshore, LLC, Bureau of Ocean Energy Management, LLC (dated by GS E&R America Offshore, LLC) | GS E&R America Offshore, LLC / Fieldwood Energy Offshore, LLC | Fieldwood Energy Offshore LLC | GI 94 Lease G02163; SS 73 Lease G12277; VR 332 Lease G01674; VR 332 Lease G09574; WD 34 Lease G00434 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1089 | 7/2/2012 | Marketing - Other | 530365_Master_Service_Contract Effective_11-1-2013 | GULF COAST MARINE FABRICATORS, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1090 | 1999 | Oilfield Services | 530074_Master Services Agreement dated effective 11/01/2013 | GULF CRANE SERVICES, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1091 | 1999 | Oilfield Services | 500582_Master Services Agreement dated effective 04/13/2015 | GULF ISLAND SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1092 | 1999 | Marketing - Other | 700652_Master Agreement effective 04/10/2015 | GULF OFFSHORE RENTALS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1093 | 11/1/1978 | Letter Agreement - Other Land | Letter Agreement dated April 28,1980 between Gulf Oil Corporation and Shell Oil Company covering the Northwest Quarter (NE/4) of that certain Federal Oil and Gas Lease OCS-G 3400, Block 77 South Pass Area Block 61 | Gulf Oil Corporation and Shell Oil Company | Fieldwood Energy Offshore LLC | SP 61 Lease G01609 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1094 | 11/17/1978 | Farmout Agreement | Farmout Agreement dated November 17, 1978 between Gulf Oil Corporation and Shell Oil Company covering the Northwest Quarter (NE/4) of that certain Federal Oil and Gas Lease OCS-G 3400, Block 77 South Pass Area Block 61 | Gulf Oil Corporation and Shell Oil Company | Fieldwood Energy Offshore LLC | SP 61 Lease G01609 | n.a. | $0.00 | Assumed and Shell Oil Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) |
| 1095 | 4/28/1980 | Letter Agreement - Other | MI Gulf Oil Corporation, Mobil Oil Corporation, Pennzoil Offshore Gas Operators, Inc. and Penrod Louisiana and Texas Offshore, Inc., as amended | Gulf Oil Corporation, Mobil Oil Corporation, Pennzoil Offshore Gas Operators, Inc. and Penrod Louisiana and Texas Offshore, Inc., as amended | Fieldwood Energy LLC | MP 138 Lease G02191; MP 149 Lease G02193; MP 149 Lease G02155; MP 149 Lease G02177 | J.M NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1096 | 1999 | Operating Agreement - Other | Operating Agreement, Main Pass Area, Blocks 77 and 78, dated as of 1980, between Gulf Oil Corporation, NICOR Exploration Company, and The Superior Oil Company | Gulf Oil Corporation, NICOR Exploration Company, and The Superior Oil Company | Fieldwood Energy LLC | MP 77 Lease G04481 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1097 | 1/31/2014 | Construction Agreements | Construction and Coordination Agreement by and among Gulf Star One LLC, Noble Energy, Inc. (Fieldwood is successor-in-interest of Noble Energy, Inc.), Ecopetrol America Inc.; Samson Offshore, LLC; and Marathon Oil Company effective January 31, 2014 | Gulf Star One LLC, Noble Energy, Inc. (Fieldwood is successor-in-interest of Noble Energy, Inc.), Ecopetrol America Inc.; Samson Offshore, LLC; and Marathon Oil Company | Fieldwood Energy Offshore LLC | MC 646 Lease G28900; MC 690 Lease G03083; MC 692 Lease G02653; MC 691 Lease G02652 | ECOPETROL AMERICA LLC; TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1098 | 1999 | Marketing - PHA | Gulfstar Deep Water Facility (Gulfstar One) | Gulfstar One, LLC | Fieldwood Energy LLC | MC 646 Lease G28900 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1099 | 4/29/1982 | Operating Agreement - Other | Gulfstar One, LLC; Noble Energy, Inc; Ecopetrol America Inc.; Samson Offshore Company; and Marathon Oil Company | Gulfstar One, LLC; Noble Energy, Inc; Ecopetrol America Inc.; Samson Offshore Company; and Marathon Oil Company | Fieldwood Energy Offshore LLC | MC 646 Lease G28900; MC 690 Lease G03083; MC 692 Lease G02653; MC 691 Lease G02652 | ECOPETROL AMERICA LLC; TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1100 | 11/1/1988 | Joint Operating Agreement | Vote to and Approval sale between the Gulfstar Partners | GUNBILT LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1101 | 1/15/2013 | Letter Agreement - Other | 590275_Master Services Agreement dated effective 03/10/2014 | GYRODATA, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1102 | 7/9/2012 | Joint Operating Agreement | Offshore Operating Agreement Ship SN operating Agreement HI Exploration LLC, LP as Operator and GOM Offshore Exploration LLC, L.P. as Operator | Halliburton Exploration LP, L.P. as Operator and GOM Offshore Exploration LLC, L.P. as Operator | Fieldwood Energy Offshore LLC | SS 176 Lease G03646 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1103 | 3/2/2016 | Withdrawal Agreement | Ownership and Operating Agreement HI Exploration LLC, Halliburton Offshore Exploration LLC, L.P as Operator, Exxon Corporation, Ridgewood, et al Amerada | Halliburton Offshore, Exxon Corporation, Ridgewood, et al, Amerada Hess Corporation | Fieldwood Energy Offshore LLC | SS 176 Lease G03646 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1105 | 9/11/1988 | Oilfield Services | 550072_Master Service Agreement dated effective 09/28/2011 | HALLIBURTON ENERGY SERVICES | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |

Fieldwood Energy, LLC, et al.
Prepared May 26, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the Confirmation Hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with the underlying contract.
[4] Retained Lease Parties represent current lessees or working interest owners.
[5] Estimated cure amounts are pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the proposed treatment and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Debtor Entities [2] | Known Contract Counterparties [1] | Associated Leases [3] | Retained Lease Parties [4] | Cure Estimate [5] | Proposed Treatment [6] | FWI | FW II | FW III | FW IV | Credit Bid Purchaser |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1107 | 3/7/1996 | Joint Development Venture / Exploration Agreements | | Fieldwood Energy LLC | Harry Oil & Gas USA, Inc.; British Borneo Exploration, Inc; and 2Win-a Energy Company | GA 151 Lease G15740 | EXXON ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 1107 | 2/26/1998 | Joint Development Venture / Exploration Agreements | | Fieldwood Energy LLC | Harry Oil & Gas USA, Inc.; British Borneo Exploration, Inc. | GA 151 Lease G15740 | EXXON ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 1108 | | Oilfield Services | | Fieldwood Energy LLC | HARDY OILFIELD SERVICE LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1109 | 6/15/2012 | Marketing – Connection Agreement | | Fieldwood Energy LLC | HARVEST MIDSTREAM PIPELINE LLC AND APACHE CORPORATION FOR 10" CRUDE OIL LINE | MP 140 Lease G02193 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 1110 | | Oilfield Services | | Fieldwood Energy LLC | HB RENTALS LC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1111 | | Non-Oilfield Services | | Fieldwood Energy LLC | HCL MECHANICAL SERVICES, LLC | n.a. | n.a. | $2,039.04 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1112 | 1/1/2019 | Non-Oilfield Services | | Fieldwood Energy LLC | HEALTH CARE SERVICE CORP | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1113 | 12/19/2015 | Operating Agreement – Other | | Fieldwood Energy LLC and Helis Oil and Gas Company L.L.C. | MI 105 Lease G01848 | W & T OFFSHORE, INC, HELIS OIL & GAS COMPANY L.L.C., HELIS OIL & GAS CO. LTD EXPLORATION LLC, CHEVRON PETROLEUM EXPLORATION LLC, MAGNUM HUNTER PRODUCTION INC. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1114 | | Oilfield Services | | Fieldwood Energy LLC | HELIX ENERGY SOLUTIONS GROUP INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1115 | 4/1/2013 | Other Services Agreements | | Fieldwood Energy LLC | Helix Energy Solutions Group, Inc. | Area wide | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1116 | 12/20/2012 | Non-Oilfield Services | | Fieldwood Energy LLC | HELMERICH & PAYNE INTL DRILLING CO | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1117 | | Non-Oilfield Services | | Fieldwood Energy LLC | HGC CONSULTING | n.a. | n.a. | $16,500.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1118 | 8/13/1981 | Operating Agreement – Other | | Fieldwood Energy LLC | HI A442 Lease G11383 | HI A442 Lease G11383 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1119 | | Oilfield Services | | Fieldwood Energy LLC | HOLE OPENER CORP | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1120 | | Oilfield Services | | Fieldwood Energy LLC | HOLLOWAY HOUSTON INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1121 | 5/1/2019 | Joint Operating Agreement | | Fieldwood Energy LLC | Houston Energy Deepwater Ventures I LLC; Red Willow Offshore | MC 510 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 1122 | 10/10/2018 | Joint Operating Agreement | | Fieldwood Energy LLC | Houston Energy Deepwater Ventures I LLC; Red Willow Offshore, LLC | MC 510 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 1123 | 3/12/2019 | Letter Agreement – Operating Agreement | | Fieldwood Energy LLC | Houston Energy Deepwater Ventures I LLC; Red Willow Offshore, LLC | MC 510 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 1124 | 9/12/2019 | Joint Development Venture / Exploration Agreements | | Fieldwood Energy LLC | Houston Energy Deepwater Ventures V LLC; Red Willow Offshore, LLC | MC 510 Lease G27278 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 1125 | 5/1/2019 | Joint Operating Agreement | | Fieldwood Energy LLC | Houston Energy Deepwater Ventures V LLC; Red Willow Offshore; Energy DDM Op; Ridgewood OS Santa Cruz, ILX Prospect Santa Cruz | MC 515 Lease G27278, MC 559 Lease G02712 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 1126 | 6/1/2012 | Joint Operating Agreement | | Fieldwood Energy LLC | Hunt Oil Company as Owner and Moritird Exploration LLC as Producer | MC 697 Leases G26521, MC 698 Leases G28022, MC 742 Leases G32341 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 1127 | 3/12/2015 | Joint Operating Agreement | | Fieldwood Energy LLC | Hunt Energy Deepwater Ventures V, LLC; Red Willow Offshore, Inc | MC 697 Leases G26521, MC 698 Lease G28022, MC 742 Lease G32341 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | | |
| 1128 | 2/22/2017 | Marketing - PHA | | Fieldwood Energy LLC | Hunt Petroleum, LLC/Oil Company, as Producer | SM 48 G0796 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1129 | 2/17/2010 | Farmout Agreement | | Fieldwood Energy LLC | Hunt Petroleum, LLC/Exploration Inc and Centre Offshore, LLC | SM 48 G0796 | SMANE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1130 | 2/24/2003 | Operating Agreement – Other | | Fieldwood Energy LLC | Hunt Petroleum, LLC/Exploration Inc and Devon Energy Production Company, attached to the Joint Area Agreement | SM 604 Leases G13607, SM 641 Lease G01192 | SMANE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1131 | 5/1/2003 | Joint Area Agreement | | Fieldwood Energy LLC | Hunt Petroleum, LLC/Exploration Inc, ratified by Apache | SM 46 Leases G13607, SM 41 Lease G01192 | SMANE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1132 | 7/1/2003 | Lease of Platform Space | | Fieldwood Energy LLC | Hunt Petroleum, LLC/Exploration between Hunt Petroleum, LLC | SM 604 Leases G13607, SM 641 Lease G01192 | SMANE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1133 | 5/1/2003 | Joint Area Agreements | | Fieldwood Energy LLC | Hunt Petroleum, LLC/Exploration, ratification with Apache Corp - letter | SM 604 Leases G13607, SM 641 Lease G01192 | SMANE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1134 | 6/1/2003 | Operating Agreement – Other | | Fieldwood Energy LLC | Hunt Petroleum, LLC/Exploration Inc and Devon Energy Production Company attached to the Joint Area Agreement | SM 604 Leases G13607, SM 641 Lease G01192 | SMANE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |
| 1135 | | Oilfield Services | | Fieldwood Energy LLC | IDEAL ENERGY SOLUTIONS LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | | x |

Page 85 of 54

Case 20-33948   Document 1394-1   Filed in TXSB on 05/26/21   Page 113 of 678

**Fieldwood Energy, LLC, et al.**
Prepared May 21, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The below schedule lists the Debtor entity party to the agreement. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the amended meaning to reflect this information.
[3] Associated Leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Retained Lease Parties represent parties subject to leases or otherwise bound, associated with or related to the contracts being assumed under the Plan. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.
[5] Estimate based on open pre-petition accounts payable balance. Cure estimates are subject to change for completed trade agreements.
[6] Reference is hereby made to the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization (ECF No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between the Disclosure Statement and the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Retained Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW | Credit Bid Purchaser | FW II | FW I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1136 | | Non-Oilfield Services | Perpetual Software License Agreement | IHS GLOBAL INC | Fieldwood Energy LLC | n.a. | n.a. | $84,255.44 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1137 | 4/1/2016 | Unit Agreement and/or Unit Operating Agreement | GC 40 Unit Operating Agreement by and between Fieldwood Energy LLC, Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC | ILX Prospect Katmai, LLC; Ridgewood Katmai, LLC | Fieldwood Energy LLC | EW 1006 Lease G34875, EW 1010 Lease G34876, EW 1011 Lease G34880, GC 041 Lease G34936, GC 041 Lease G34937, GC 39 A Lease G34949, GC | ILX PROSPECT KATMAI LLC; RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1138 | 11/1/2018 | Joint Development / Venture / Exploration Agreements | Letter Agreement re Abbreviated Development Plan by and between Fieldwood Energy LLC and ILX Prospect Katmai, LLC, effective November 1, 2018 | ILX Prospect Katmai, LLC; Ridgewood Katmai, LLC | Fieldwood Energy LLC | EW 1006 Lease G34875, EW 1010 Lease G34876, EW 1011 Lease G34880, GC 041 Lease G34936, GC 041 Lease G34937, GC 39 A Lease G34949, GC | ILX PROSPECT KATMAI LLC; RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1139 | 8/1/2013 | Operating Agreement - Other | Offshore Operating Agreement, effective as of August 1, 2013, between Noble Energy, Inc. (Fieldwood is a successor-in-interest to Noble Energy, Inc.) and Ridgewood Energy Corporation | RIDGEWOOD GANTZELER LLC; TALOS EXPLORATION LLC; W & T ENERGY VI LLC | Fieldwood Energy LLC | GC 054 Lease G33757 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1140 | 10/4/2018 | Other | Equipment Lease Agreement (Sales order # 308672) | IMAGENET CONSULTING LLC | Fieldwood Energy LLC | n.a. | n.a. | $6,687.99 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1141 | 10/4/2018 | Other | Equipment Service Agreement (Sales order # 308672) | IMAGENET CONSULTING LLC | Fieldwood Energy LLC | n.a. | n.a. | $6,687.99 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1142 | 1/17/2019 | Other | Equipment Lease Agreement (Sales order # 307392) | IMAGENET CONSULTING LLC | Fieldwood Energy LLC | n.a. | n.a. | $6,687.99 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1143 | 1/17/2019 | Other | Equipment Service Agreement (Sales order # 307392) | IMAGENET CONSULTING LLC | Fieldwood Energy LLC | n.a. | n.a. | $6,687.99 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1144 | | Oilfield Services | Manage Design and Construction of Drill Site / Production Facilities in "Hydrostatic Area" | INDUSTRIAL PIPELINE CONSTRUCTION SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1145 | | Oilfield Services | DCP Pipeline Training Provider | INDUSTRIAL SOLUTIONS GROUP LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1146 | | Oilfield Services | Gas and Gas Cylinders, Welding Supply | INDUSTRIAL WELDING SUPPLY CO OF HARVEY INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1147 | | Oilfield Services | Chemical Pump | INJECT-TECH & SUPPLY, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1148 | 11/20/1984 | Joint Development / Venture / Exploration Agreements | Amendment to Joint Venture Development Agreement, dated November 20, 1984, between Horizon Oil & Gas Company of Texas, Helmerich & Payne, Inc., Rand Trust Estate, Model Oil Exploration | Horizon Exploration, Inc.; Helmerich & Payne, Inc.; Rand Trust Estate; Model Oil Exploration | Fieldwood Energy Offshore LLC | SS 206 Lease G01522; SS 207 Lease G01523 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1149 | | Oilfield Services | 702570J_Master Services Agreement dated effective 3/3/2015 | INSULATION TECHNOLOGIES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1150 | | Oilfield Services | 700603_Master Services Agreement dated effective 12/01/2013 | INTERNATIONAL SNUBBING SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1151 | | Oilfield Services | 777926_Master Services Agreement dated effective 06/11/2019 | INTERWELL US LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1152 | | Oilfield Services | 701222_Master Services Agreement effective 10/20/2016 | IPT GLOBAL LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1153 | | Non-Oilfield Services | Amendment to Roustabout Management Services Agreement | IRON MOUNTAIN | Fieldwood Energy LLC | n.a. | n.a. | $37,518.16 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1154 | | Oilfield Services | Surface BOP Rental Tools | IRONGATE RENTAL SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1155 | | Oilfield Services | 701904_Master_Service_Contract Effective_1-1-2014 | IRONGATE TUBULAR SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1156 | | Oilfield Services | 501347_Master Services Agreement 11/5/2014 Amendment effective 08/03/2014_Amendment effective | ISLAND OPERATING COMPANY INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1157 | | Oilfield Services | SEMS Audit Company | IT CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1158 | | Oilfield Services | 777943_Master Services Agreement dated effective 04/16/2019 | J & J MACHINE WELL SOLUTIONS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1159 | | Oilfield Services | 700526_Master Services Agreement dated effective 01/17/2014 | J A J MARINE PEST CONTROL INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1160 | | Oilfield Services | Service agreement for 33A/3 CO RD 168 COM STATE/VIC | JACKSON ELECTRIC COOP INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1161 | | Non-Oilfield Services | 777704_Master Services Agreement dated effective 09/25/2018 | JAMES FISHER RUSSELL & LUCAS LTD | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1162 | | Oilfield Services | 510197_Master Services Agreement dated effective 11/01/2013 | JAMC DIRECTIONAL SURVEY INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1163 | | Oilfield Services | 777777_Master Services Agreement dated effective 01/08/2015 | JAVELER MARINE SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1164 | | Oilfield Services | Tubular Supplier | JD RUSH CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1165 | | Oilfield Services | Utilities | JEFFERSON DAVIS ELECTRIC COOPERATIVE INC | Fieldwood Energy LLC | n.a. | n.a. | $17,264.77 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1166 | | Oilfield Services | Choke Parts | JM CAMEL SALES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1167 | 9/16/2015 | Withdrawal Agreement | Letter Agreement Fieldwood Energy LLC and JOC Venture, JOC by and between Fieldwood Energy LLC and JOC Venture, JOC Venture withdrawal | JOC Venture | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1168 | 9/16/2015 | Withdrawal Agreement | Letter Agreement Fieldwood Energy LLC and JOC Venture, JOC by and between Fieldwood Energy LLC and JOC Venture, JOC Venture withdrawal | JOC Venture | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1169 | 9/16/2015 | Withdrawal Agreement | Letter Agreement Pursuant to Operating and Processing Agreement dated 08/13/2008 by and between Ken McGee Oil & Gas Corporation and Gryphon Exploration Company | JOHN C HEALY JR CONSULTING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1170 | | Oilfield Services | Ratification of Operating and Processing Agreement by and between Ken McGee Oil & Gas Corporation and Gryphon Exploration Company - Ratified Operating Agreement effective 04/01/1998 | JOHN CHANCE LAND SURVEYS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1171 | | Offshore Surveys | Directional Surveys | JOHN CHANCE LAND SURVEYS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1172 | | Oilfield Services | 503327_PO Terms & Conditions dated effective 07/31/2015 | JOHN W STONE OIL DISTRIBUTOR LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1173 | 6/1/1998 | Operating Agreement - Other | Joint Operating Agreement dated June 1, 1998 by and between JP Petroleum Company, Inc., as Operator, and LLOG Exploration Offshore, Inc. | JP Petroleum Company, Inc., as Operator, and LLOG Exploration Offshore, Inc. | Fieldwood Energy LLC | VK 326 Lease G21096 | HELIS OIL & GAS COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1174 | | Oilfield Services | Remote Air Freight Flights | KENAN AVIATION, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1175 | 3/22/2001 | Letter Agreement - Operating Agreement | Letter Agreement Pursuant to Operating and Processing Agreement dated 08/13/2008 by and between Ken McGee Oil & Gas Corporation and Gryphon Exploration Company - Depth Severance, Company - Ratified Operating Agreement | Ken McGee Oil & Gas Corporation and Gryphon Exploration Company | Fieldwood Energy LLC | SS 301 Lease G01703 | EPL OIL & GAS, LLC; KINETICA DEEPWATER EXPRESS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1176 | 3/22/2001 | Termination / Ratification and Joinder of Operating Agreements | Letter Agreement Pursuant to Operating and Processing Agreement dated 08/13/2008 by and between Ken McGee Oil & Gas Corporation and Gryphon Exploration Company - Ratified Operating Agreement effective 04/01/1998 | Ken McGee and Semadan | Fieldwood Energy LLC | SS 314 Lease G06074 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1177 | 7/1/1962 | Operating Agreement - Other | Operating Agreement | Ken McGee and Semadan | Fieldwood Energy LLC | n.a. | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1178 | 9/5/2002 | Farmout Agreement | Letter Agreement by and between Ken McGee Oil & Gas Corp. and LLOG Exploration Offshore, Inc. | Ken McGee Oil & Gas Corp. and LLOG Exploration Offshore, Inc. | Fieldwood Energy LLC | BB 21 Lease SL4574, BB 28 Lease SL1990, BB 28 Lease SL1990, BB 28 Lease 20, BB 28 Lease G4430, SL1725, BB 37 Lease SL4430 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers (pursuant to the Plan and the Divestiture Documents, this contract will be partially assigned to the Credit Bid Purchaser and partially allocated on account of the Acquired Interests and/or Retained Assets to the applicable pursuant to the Divisive Mergers on account of the Excluded Assets and/or the applicable Credit Bid Purchaser Agreement) | | | x | |

Page 86 of 154

Case 20-33948   Document 1394-1   Filed in TXSB on 05/26/21   Page 114 of 678

**Fieldwood Energy, LLC, et al.**
**Prepared May 26, 2021**

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors reserve the right to remove any contracts listed on this schedule at any time. To the extent the Debtors are able to identify the proper Debtor party to a contract, the Debtors have listed such party here. The Debtors reserve the right to amend the Debtor party to any contract.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent parties related to the associated leases identified in column [3].
[5] Cure amounts listed herein are estimates only. Cure estimates are subject to change for completed/new agreements.
[6] If the treatment for a contract is noted as "Assume and assign to Credit Bid Purchaser" [or similar], the Debtors may further amend, supplemental, or modified the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is subject to change. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] |
|---|---|---|---|---|---|---|---|---|---|
| 1179 | 3/1/2020 | Operating Agreement - Other | by and between Ken-McGee Oil & Gas Corp. and LLOG Exploration Offshore, Inc. | Ken-McGee Oil & Gas Corp. and LLOG Exploration Offshore, Inc. | Fieldwood Energy LLC | BS Lease 1906, BS Lease 20, BS Lease G21235, BS Lease 4429 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) effectuate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) |
| 1180 | | Oilfield Services | KILGORE AIRCRAFT LEASE AGREEMENT | KILGORE MARINE SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1181 | 11/1/1998 | Operating Agreement - Other | Ownership and Operating Agreement b/w Kirby Company of TX, et al | Kirby Company of TX, et al | Fieldwood Energy LLC | HI 31 MT 1660 I Lease 11662 I, HI 31 MT 106158 Lease 106158, HI 31 MT 106155 Lease 106155 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1182 | 12/10/2018 | Facilities & Tech Agreements | FACILITIES CONNECTION FOR GAS CONNECTION WITH KINETICA ENERGY EXPRESS, LLC AND FIELDWOOD ENERGY LLC | KINETICA ENERGY EXPRESS, LLC AND FIELDWOOD ENERGY LLC | Fieldwood Energy LLC | SS 160 Lease 820, SS 162 Lease G09066, SS 133 Lease G13917 | BOIS DARC EXPLORATION, LLC | $0.00 | Assume and allocate Pursuant to Divisive Mergers |
| 1183 | 1/1/2016 | Other | SECURITY Agreement [01/01/01] | KNIGHT SECURITY SYSTEMS LLC | Fieldwood Energy LLC | n.a. | n.a. | $617.17 | Assume and assign to Credit Bid Purchaser |
| 1184 | | Non-Oilfield Services | ITT MSA Agreement dated effective 04/08/2019 | KNIGHTEN INDUSTRIES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1185 | | Oilfield Services | Consulting Agreements | KPA/LLLP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1186 | | Other | HR and payroll system | Kronos | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1187 | | Oilfield Services | PO Terms & Conditions entered into by and between Fieldwood Energy LLC and L&I Technologies | L&I TECHNOLOGIES DBA SHANGHAI JARS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1188 | | Oilfield Services | LA ENERGY SERVICES OF IBERIA, LLC | LA ENERGY SERVICES OF IBERIA, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1189 | | Non-Oilfield Services | Global Warehouse - Water Acct#1826400024 & Acct# 0841889191 | LAFAYETTE UTILITIES SYSTEM | Fieldwood Energy LLC | n.a. | n.a. | $43.32 | Assume and assign to Credit Bid Purchaser |
| 1190 | | Oilfield Services | Prepetual software license agreement | LANDMARK GRAPHICS CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1191 | | Oilfield Services | 777662_Master Services Agreement dated effective 01/01/2014 | LAREDO OFFSHORE SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1192 | | Oilfield Services | 777662_Master Services Agreement dated effective 01/01/2014 | LAREDO OFFSHORE SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1193 | | Oilfield Services | 777711_Master Services Agreement dated effective 07/18/2018 | LARRY DOHERTY, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1194 | | Oilfield Services | Perpetual software license agreement | LARSON SOFTWARE TECHNOLOGY, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1195 | | Non-Oilfield Services | | LEASE/CARRY, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1196 | 10/3/2012 | Letter Agreement - Other Land | Letter Agreement between Statoil Gulf of Mexico LLC and Marathon Oil Company, dated 3 October 2012 | Letter Agreement between Statoil USA E+P Inc and Marathon Oil Company, dated 3 October 2012 | Fieldwood Energy LLC | MC 860 SC1 Lease G24133 | ECOPETROL AMERICAS LLC, TALOS ENERGY OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1197 | 1/1/2013 | Letter Agreement - Other Land | Letter Agreement between Western Geco by Samson Offshore, LLC dated 17 December 2014 | Letter Agreement between Western Geco by Samson Offshore, LLC dated 17 December 2014 covering blocks GC 679, 639, 696 | Fieldwood Energy LLC | GC 679 Lease G24181, GC 768 Lease G25817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1198 | | Oilfield Services | Data subscription agreement | LEXCO DATA SYSTEMS, LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1199 | | Oilfield Services | 512390_Master Services Agreement dated effective 11/01/2013 | LINEAR CONTROLS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1200 | 1/15/2001 | Operating Agreement - Other | Operating Agreement b/w LLOG and Century | LLOG and Century | Fieldwood Energy LLC | BS 43 Lease 3770, BS 45 Lease 10683 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1201 | 3/27/2003 | Operating Agreement - Other | Operating Agreement b/w LLOG and Century | LLOG and Century | Fieldwood Energy LLC | BS 45 Lease 10683, BS 52/53 Lease 17875 | UPSTREAM EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1202 | 11/1/2016 | Pipeline Use / Tie-in / Modification Agreement | Operating Agreement b/w LLOG and Century | LLOG and Century | Fieldwood Energy LLC | MP 112 Lease G01587 | n.a. | $0.00 | Assume and allocate Pursuant to Divisive Mergers |
| 1203 | 10/20/2015 | Joint Operating and/or Unit Operating Agreement | Unit Agreement by and between LLOG Bluewater Holdings, L.L.C., LLOG Exploration Offshore, L.L.C., Sandridge Energy Offshore, LLC, and Saratoga Resources, Inc. | Unit Agreement by and between LLOG Bluewater Holdings, L.L.C., LLOG Exploration Offshore, L.L.C., Sandridge Energy Offshore, LLC, and Saratoga Resources, Inc. | Fieldwood Energy LLC | BS 25 Lease 19716, BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) effectuate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) |
| 1204 | 5/20/2001 | Unit Agreement and/or Unit Operating Agreement | Order No. 12436 Unit Inclusion # Zone Reservoir A BS 25 Field by LLOG Exploration Company, L.L.C. and Office of Conservation State of LA | LLOG Exploration Offshore, Inc. LLOG Exploration Company, L.L.C. and Office of Conservation State of LA | Fieldwood Energy LLC | BS 25 Lease 19716, BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $108,635.57 | Assume and assign to Credit Bid Purchaser |
| 1205 | 3/1/2009 | Property Participation & Exchange Agreements | Participation Agreement by and between LLOG Exploration Offshore, Inc., LLOG Exploration Company, L.L.C. and XTO Offshore Inc. | LLOG Exploration Offshore, Inc., LLOG Exploration Company, L.L.C. and XTO Offshore Inc. | Fieldwood Energy LLC | BS 25 Lease 19716, BS 25 Lease G31442 | XTO Offshore Inc. | $463,640.18 | Assume and assign to Credit Bid Purchaser |
| 1206 | 5/12/2020 | Non-Oilfield Services | Service Agreement | LLOG SOFTWARE CORP | Fieldwood Energy LLC | n.a. | n.a. | $463,640.18 | Assume and assign to Credit Bid Purchaser |
| 1207 | | Oilfield Services | Perpetual software license agreement | LOG SYSTEMS CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate Pursuant to Divisive Mergers |
| 1208 | | Non-Oilfield Services | IT Services Agreement | LOGIX FIBER NETWORKS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1209 | | Oilfield Services | IT Services Agreement | LONG VIEW SYSTEMS CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1210 | | Oilfield Services | IT Services Agreement; Addendum | LONG VIEW SYSTEMS CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1211 | | Non-Oilfield Services | Labor & Parts | LOUISIANA MACHINERY COMPANY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1212 | 11/14/2003 | Government Orders | Louisiana Office of Conservation Order No. 235-R, 10-207 RA SUA | Louisiana Office of Conservation | Fieldwood Energy LLC | BS Lease 1906, BS Lease 20, BS Lease G21235, BS Lease 4429 | n.a. | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) effectuate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) |
| 1213 | | Oilfield Services | 500380_Master Services Agreement dated effective 11/01/2013 | LOUISIANA SAFETY SYSTEMS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1214 | 12/16/2020 | Indemnity and Release Agreement | Offshore Facilities sharing and interest [indemnification Agreement] for SS 91 LA B&B platform by and between Louisiana State University and Fieldwood Energy LLC extended 12-16-2020 through 12-16-2021 | Louisiana State University and Fieldwood Energy LLC extended 12-16-2020 through 12-15-2021 | Fieldwood Energy LLC | SS 91 Lease G20979 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1215 | | Oilfield Services | 503397_Master Services Agreement dated effective 01/01/2014 | LOT INDUSTRIES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1216 | | Oilfield Services | LOW ENERGY AND TRANSPORTATION | LOW ENERGY AND TRANSPORTATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1217 | | Oilfield Services | 701037_Master_Service_Contract Effective_12-14-2015 | M&H MANAGEMENT LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1218 | | Oilfield Services | 531437_Master Services Agreement dated effective 11/20/2013 | M.R. VARGLAN, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate Pursuant to Divisive Mergers |
| 1219 | | Oilfield Services | Subsea Tree Hydraulic Oil [Shell? (HI 4373 Only)] | MACDERMID OFFSHORE SOLUTIONS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1220 | 10/21/2019 | Other | | MACQUARIE CORPORATE & ASSET FUNDING, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and allocate Pursuant to Divisive Mergers |
| 1221 | 10/21/2019 | Other | Equipment Schedule No. 1 pursuant to Master Lease Agreement dated 10/21/19 | MACQUARIE CORPORATE & ASSET FUNDING, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1222 | | Non-Oilfield Services | 908678_Master Services Agreement dated effective 11/01/2013 | MAGNOLIA TORQUE & TESTING INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1223 | 9/1/2004 | Joint Operating Agreement | Operating Agreement at ST-54 | Magnum Hunter | Fieldwood Energy Offshore LLC | ST 242 Lease G23933 | MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and allocate Pursuant to Divisive Mergers |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1224 | 11/7/2007 | Farmout Agreement | FARMOUT AGREEMENT BY AND BETWEEN MAGNUM HUNTER PRODUCTION, INC. AND APACHE CORPORATION | MAGNUM HUNTER PRODUCTION, INC. AND APACHE CORPORATION | Fieldwood Energy LLC | ST 287 Lease G24987 | RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1225 | 12/1/1999 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN FORCENERGY INC. AND MAKO OFFSHORE EXPLORATION, INC., ET AL. | Mako Offshore Exploration Inc.; Pruet Offshore Company | Fieldwood Energy LLC | VR 381 Lease G16314 | MAKO OFFSHORE EXPLORATION INC, PRUET Offshore Company | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1226 | | Oilfield Services | Derrick Barge Work | MANSON GULF | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1227 | 10/1/1999 | Marketing - Connection Agreement | AGREEMENT TO TIE IN AND FOR OPERATION AND CONSTRUCTION BETWEEN MANTA RAY OFFSHORE GATHERING COMPANY, L.L.C. AND ANADARKO PETROLEUM CORPORATION, OCEAN ENERGY INC., AND SHELL OFFSHORE INC. | MANTA RAY OFFSHORE GATHERING COMPANY, L.L.C. AND ANADARKO PETROLEUM CORPORATION, OCEAN ENERGY INC., AND SHELL OFFSHORE INC. | | GI 110 Lease G13943, GI 111 G35611, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1228 | 10/1/1999 | Marketing - Connection Agreement | Manta Ray Offshore Gathering Company, L.L.C. and Anadarko Petroleum Corporation, Ocean Energy Inc., Shell Offshore Inc. | Manta Ray Offshore Gathering Company, L.L.C. and Anadarko Petroleum Corporation, Ocean Energy Inc., Shell Offshore Inc. | | GI 110 Lease G13943, GI 111 G35611, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1229 | 6/8/2017 | Other Assignment / Bill of Sale (or Conveyance, Notice of Exercise) & Related Consents | by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.: Manta Ray sells to Fieldood pursuant to reverse of gas flow in ST 295 block to direct flow of gas to ST 292 Platform | Manta Ray Offshore Gathering Company, L.L.C.; Manta Ray Offshore Gathering, L.L.C. | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1230 | 6/8/2017 | Interconnection and Measurement Agreement | by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.: Fieldwood desires to connect with Mata Ray's ST 292 platform and piping, etc. | Manta Ray Offshore Gathering, L.L.C. | Fieldwood Energy LLC | ST 295 Lease G05646 | APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1231 | 4/1/2011 | Marketing - Separation & Stablization | Liquids Separation Agreement betweeen Noble Energy, Inc and Manta Ray Offsoure Gathering Company, L.L.c. | Manta Ray Offsoure Gathering Company, L.L.C. | | GC 768 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1232 | 1/1/2012 | Lease Rental and Minimum Royalty Payment Agreement | Lease Rental and Minimum Royalty Payment Agreement by and between Marathon Oil Cmpany, Samson Offshore, LLC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy, Inc dated 9 March 2012, but effective 1 Jan 12 | Marathon Oil Cmpany, Samson Offshore, LLC, BHP Billiton Petroleum (Deepwater) Inc and Noble Energy, Inc dated 9 March 2012, but effective 1 Jan 12 | | MC 992 N/2 Lease G24133 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1233 | 10/1/1990 | Unit Agreement and/or Unit Operating Agreement | UA and Unit Operating Agreement dated 10/1/90 between Marathon Oil Co and Phillips Petroleum etal | Marathon Oil Co and Phillips Petroleum etal | Fieldwood Energy LLC | WD 0057 Lease G01449 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1234 | 4/1/2018 | Acquisition / PSA / Other Purchase or Sale Agreements | Purchase and Sale agreement by and between Fieldwood Energy LLC and Marathon Oil Company dated 20 June 2018 and effective 1 April 2018 | Marathon Oil Company | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134, MC 904 Lease G36566, MC 905 Lease G36405 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1235 | 11/1/2011 | Property Participation & Exchange Agreements | Like Kind Exchange and Participating Agreement between Marathon Oil Company and Statoil USA E&P Inc dated and effective 1 Nov 2011 | Marathon Oil Company and Statoil USA E&P Inc dated and effective 1 Nov 2011 | Fieldwood Energy LLC | MC 993 S/2 Lease G24134 | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1236 | 6/11/2012 | Joint Operating Agreement | Area of Mutual Interest Agreement and Joint Operating Agreement made and entered into between Marathon Oil Company, Statoil USA E&P Inc and Woodside Energy (USA) Inc dated and effective 11 June 2012 (including JOA to be identical to JOA for MC 993 S/2) | Marathon Oil Company, Statoil USA E&P Inc and Woodside Energy (USA) Inc dated and effective 11 June 2012 (including JOA to be identical to JOA for MC 993 S/2) | | MC 992 S/2 Lease G24133 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1237 | 4/1/1981 | Operating Agreement - Other | b/b Marathon, Amerada Hess, LL&E and Texas Eastern Coproation | Marathon, Amerada Hess, LL&E and Texas Eastern Coproation | | HI A-550 Lease G04081 | TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1238 | 5/1/2008 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN MARINER ENERGY, INC. AND APACHE CORPORATION | MARINER ENERGY, INC. AND APACHE CORPORATION | Fieldwood Energy LLC | ST 49 Lease G24956 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1239 | 1/1/2005 | Operating Agreement - Other | Operating Agreement 1-1-05 by an between Maritech and Arena | Maritech and Arena | Fieldwood Energy LLC | EC 328 Lease G10638 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1240 | 8/1/1987 | Operating Agreement - Other | OA by and between Mark Producing, Inc. as Operator and EP Operating Company and Non-Operartor | Mark Producing, Inc. as Operator and EP Operating Company and Non-Operartor | | EC 332 Lease G09478 | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1241 | | Oilfield Services | 556438_Master Services Agreement dated effective 06/20/2018 | MARLIN OILFIELD DIVERS INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1242 | 11/13/2018 | Non-Oilfield Services | Consulting Agreement - Katmai Development | MARS OFFSHORE TECHNOLOGY INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1243 | | Oilfield Services | 533060_Master Services Agreement dated effective 12/03/2013; Amendment dated effective 01/28/2019 | MARTIN HOLDINGS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1244 | | Oilfield Services | 777710_Master Services Agreement dated effective 07/17/2018 | MASTER FLO VALVE (USA) INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1245 | | Oilfield Services | 700795_Rental Agreement dated effective 10/22/2014 | MAVERICK ENERGY SOLUTIONS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1246 | | Oilfield Services | Inspection and Service | MAXIM SILENCERS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1247 | 7/1/1978 | Operating Agreement - Other | b/b McMoRan and Transco et al | McMoRan and Transco et al | | HI A447 Lease G02360 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1248 | 11/28/1979 | Operating Agreement - Other | McMoRan et al | McMoRan et al | | HI A-446 Lease G02359 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1249 | | Oilfield Services | 556487_Master Services Agreement dated effective 11/01/2013 | MECHANICAL & PERFORMANCE ANALYSIS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1250 | | Oilfield Services | 777724_Master_Service_Contract Effective_6-6-2018 | MELANCON'S WELDING & REPAIR, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1251 | 11/1/2005 | Joint Development / Venture / Exploration Agreements | JOINT DEVELOPMENT AGREEMENT BY AND BETWEEN MERIT ENERGY COMPANY AND STONE ENERGY CORPORATION ET AL | MERIT ENERGY COMPANY AND STONE ENERGY CORPORATION ET AL | Fieldwood Energy LLC; GOM Shelf LLC | SS 198 Lease 593, SS 198 Lease G12355 | RENAISSANCE OFFSHORE, LLC, TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1252 | 7/1/1975 | Joint Operating Agreement | Operating Agreement eff. 7/1/75 by and between Mesa Petroleum as Operator and American Natural Gas Production Co, et al | Mesa Petroleum as Operator and American Natural Gas Production Co, et al | Fieldwood Energy LLC | PL 13 Lease G03171 | ANKOR ENERGY LLC, ENVEN ENERGY VENTURES, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1253 | | Oilfield Services | Mud, Completion Brine, Cleanout Tools, Solids Handling Equipment | M-I SWACO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1254 | | Non-Oilfield Services | Software Licensing Agreement | MICROSOFT LICENSING, GP | Fieldwood Energy LLC | n.a. | n.a. | $293.97 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1255 | | Oilfield Services | Blast Media | MINERAL TECH LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1256 | 11/7/2005 | Unit Agreement and/or Unit Operating Agreement | Amendment to Unit Agreement, Viosca Knoll Block 252 Unit, Contract No. 754394013, dated November 7, 2005 (effective November 1, 2005) as approved by the Minerals Management Service by letter dated January 10,2007, but made effective November 8, 2006, replacing Exhibits "A", "B" and "C" and Article 13.1 in its entirety (reduction of Unit Area) | Minerals Management Service | | VK 251 Lease G10930, VK 340 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 1257 | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended | Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended | | EB 160 Lease G02647 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1258 | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended | Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended | | EB 161 Lease G02648 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1259 | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended | Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended | | EB 158 Lease G02645 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1260 | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended | Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended | | EB 159 Lease G02646 | APACHE DEEPWATER LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1261 | 1/1/1988 | Marketing - Connection Agreement | OFFSHORE TIE-IN AGREEMENT EWING BANK 826 PIPELINE SYSTEM TIE-IN TO SHELL PIPE LINE CORPORATION'S COUGAR PIPELINE BETWEEN MOBILE EXPLORATION & PRODUCING U.S. INC., KERR-MCGEE PIPELINE CORP., AND SOHIO PIPELINE (document just shows 1988) | MOBILE EXPLORATION & PRODUCING U.S. INC., KERR-MCGEE PIPELINE CORP., AND SOHIO PIPELINE | | EW 826 Lease G05800 | APACHE DEEPWATER LLC, WALTER OIL & GAS CORPORATION, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1262 | | Oilfield Services | 700363_Master Services Agreement dated effective 02/06/2014 | MODERN AMERICAN RECYCLING SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1263 | | Oilfield Services | 777951_Master Services Agreement dated effective 03/29/2019 | MONCLA WORKOVER & DRILLING OPERATIONS, LLC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, et al.
Prepared May 25, 2021

Schedule of Assumed Contracts

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] Associated Leases represent leases listed in actual agreements and may not reflect all leases related to the contract. To the extent the Debtors are able to identify the proper Debtor entity and/or the proper schedule(s), they will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated Leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related Leases Parties represent parties to the underlying lease associated with an applicable contract.
[5] All schedules marked with an asterisk are subject to change and pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed hole agreements.
[6] The Cure amount is the Debtors' estimate and is subject to change. Chapter 11 Plan of Reorganization of Fieldwood Energy LLC and Its Affiliated Debtors (the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents and this Schedule, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Debtor Entities [1] | Known Contract Counterparties [1] | Associated Leases [2] | Related Leases Parties [4] | Cure Estimate [6] | Proposed Contract Treatment [5] | Credit Bid Purchaser | FW | FWI | FWII |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1264 | 12/07/2013 | Property Participation & Exchange Agreements | First Amendment to the Participation Agreement OCS-G0796, South Marsh Island Area, Block 48 Offshore Federal Waters | Fieldwood Energy LLC | MONTCO OFFSHORE INC | SM 48 Lease 796 | n.a. | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) otherwise pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | | | |
| 1265 | 5/14/2015 | Property Participation & Exchange Agreements | by and between Fieldwood Energy LLC and Montfore Exploration L.L.C. - Second Amendment to the Participation Agreement OCS-G0796, South Marsh Island Area, Block 48 Offshore Federal Waters | Fieldwood Energy LLC | MONTCO OILFIELD CONTRACTORS LLC | SM 48 Lease 796 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1266 | 9/13/2016 | Other Misc. | by and between Fieldwood Energy LLC and Montfore Exploration L.L.C. | Fieldwood Energy LLC | MONTCO OILFIELD CONTRACTORS LLC | SS 274 Lease G01038 | ENI HELICOPTERS INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1267 | 12/12/2019 | Acquisition / PSA / Other Purchase or Sale | by and between Fieldwood Energy LLC and Montfore Exploration L.L.C. | Fieldwood Energy LLC | MONTFORE EXPLORATION LLC | SS 274 Lease G01039 | ENI HELICOPTERS INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1268 | 12/12/2019 | Pipeline Purchase Agreement | Terms and condition of sale of pipeline and associated equipment | Fieldwood Energy LLC | MONTFORE EXPLORATION LLC | SS 274 Lease G01039 | ENI HELICOPTERS INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1269 | | Oilfield Services | 515485_Master Services Agreement dated effective 11/01/2013 | Fieldwood Energy LLC | MONTCO OFFSHORE INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1270 | 3/19/2018 | Oilfield Services | 558865_Master Services Agreement dated effective 12/03/2013 | Fieldwood Energy LLC | MURPHY EXPLORATION AND PRODUCTION COMPANY - USA | MC 697 Lease G26021, MC 698 Lease G26022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC, W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1271 | | Assignment of Oil & Gas Leasehold Interests | Letter Agreement governing the Transfer of Operatorship by and between Fieldwood Energy LLC, Walter Oil & Gas Corporation, Castex Offshore, Inc. | Fieldwood Energy LLC | Murphy Exploration and Production Company – USA, Eni Petroleum US L.L.C., Red Willow Offshore, LLC, HEDV V, LLC, ILX Prospect Danzber and Discovery Producer Services LLC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1272 | 7/2/2015 | Assignment of Oil & Gas Leasehold Interests | Daywork Drilling Contract dated 3-11-2014 | Fieldwood Energy LLC | NABORS OFFSHORE CORPORATION | n.a. | n.a. | $8,750.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1273 | 1/10/2020 | Non-Oilfield Services | Consulting Agreement | Fieldwood Energy LLC | N DARLENE WALKER & ASSOCIATES | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1274 | 1/10/2020 | Non-Oilfield Services | Consulting Agreement | Fieldwood Energy LLC | N DARLENE WALKER & ASSOCIATES | n.a. | n.a. | $8,750.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1275 | | Oilfield Services | 528377_Master Services Agreement dated effective 11/01/2013 | Fieldwood Energy LLC | NAMDRE OFFSHORE CORPORATION | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1276 | | Oilfield Services | 566024_Master Services Agreement dated effective 05/20/2011 | Fieldwood Energy LLC | NALCO COMPANY | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1277 | | Oilfield Services | 777062_Master Services Agreement dated effective 00/30/2019 | Fieldwood Energy LLC | NATIONAL OILWELL VARCO LP | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1278 | | Oilfield Services | 701142_Master Services Agreement dated effective 11/14/2016 | Fieldwood Energy LLC | NATIONAL RESPONSE CORPORATION | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1279 | | Oilfield Services | Perpetual Software License Agreement | Fieldwood Energy LLC | NEO PRODUCTS | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1280 | | Non-Oilfield Services | 545623_Master Services Agreement dated effective 01/01/2014 | Fieldwood Energy LLC | NEURALOG LP | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1281 | | Oilfield Services | PO# 2015-01 by and between Newland and Apache | Fieldwood Energy LLC | NEW TECH GLOBAL VENTURES LLC | SM 243 Lease G14482 | BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1282 | 2/26/2007 | Oilfield Services | Operating Agreement for & Triumph Energy LLC | Fieldwood Energy LLC | Newfield and Apache | VK 251 Lease G10930, VK 343 Lease G15623 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1283 | 6/1/2004 | Farmout Agreement | Operating Agreement | Fieldwood Energy Offshore LLC | Newfield Exploration Co & Triumph Energy LLC | WC 72 Lease G23735 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1284 | 5/2/2012 | Confidentiality Agreements / A&A and Related Consents | Confidentiality Agreement by and between Fieldwood Exploration Company and Chevron U.S.A. Inc. | Fieldwood Energy LLC | Newfield Exploration Company and Chevron U.S.A. Inc. | n.a. | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1285 | 4/19/2004 | Farmout Agreement | Farmout Agreement by and between Newfield Exploration Company and Westport Resources Company as Spinnaker Exploration & Production, Inc. and Spinnaker Exploration Company, LLC as Owners of WC 72 | Fieldwood Energy Offshore LLC | Newfield Exploration Company and Westport Resources Company, Spinnaker Exploration & Production, Inc. and Spinnaker Exploration Company, LLC as Owners of WC 72 | GC 198 Lease G21817 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1286 | 11/16/2004 | Letter Agreement - Other Land | Letter Agreement, dated November 16, 2004, between Chevron U.S.A. Inc. and Newfield Exploration Company, Chevron U.S.A. Inc., Noble Energy, Inc. | Fieldwood Energy Offshore LLC | Newfield Exploration Company, Chevron U.S.A. Inc., Noble Energy, Inc. | GC 198 Lease G21817 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1287 | | Oilfield Services | 501111_Master Services Agreement dated effective 11/01/2013 | Fieldwood Energy LLC | NEWLIN RENTAL & SUPPLIES INC | GC 766 Lease G26021 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1288 | | Oilfield Services | Gas and Gas Cylinders, Welding Supply | Fieldwood Energy LLC | NEWMAN CRANE SERVICE INC | MC 945 Lease G28930 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1289 | | Oilfield Services | | Fieldwood Energy LLC | NI WELDING SUPPLY LLC | MC 945 Lease G28930 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1290 | 4/2/2008 | Confidentiality Agreements / A&A and Related Consents | AREA OF MUTUAL INTEREST AGREEMENT BY AND BETWEEN NOBLE ENERGY INC., DAVIS OFFSHORE, L.P. AND STATOIL/HYDRO USA E&P INC. | Fieldwood Energy Offshore LLC | NOBLE ENERGY INC., DAVIS OFFSHORE, L.P. AND STATOIL/HYDRO USA E&P INC. | GC 198 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1291 | 5/6/2008 | Confidentiality Agreements / A&A and Related Consents | AREA OF MUTUAL INTEREST AGREEMENT BY AND BETWEEN NOBLE ENERGY INC., DAVIS OFFSHORE, L.P. AND STATOIL/HYDRO USA E&P INC. | Fieldwood Energy Offshore LLC | NOBLE ENERGY INC., DAVIS OFFSHORE, L.P. AND STATOIL/HYDRO USA E&P INC. | GC 198 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1292 | | Oilfield Services | Letter Agreement by and between Noble Energy Inc. and Anadarko Petroleum Corporation dated 20 Dec 2012 | Fieldwood Energy LLC | Noble Energy Inc. and Anadarko Petroleum Corporation dated 20 Dec 2012 | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1293 | 12/03/2012 | Property Participation & Exchange Agreements | Letter Agreement by and between Noble Energy Inc. and Anadarko | Fieldwood Energy LLC | Noble Energy Inc. and Anadarko | GC 198 Lease G21817 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1294 | 3/30/2006 | Letter Agreement - Other Land | NOBLE ENERGY INC. AND DAVIS OFFSHORE L.P. PIONEER NATURAL RESOURCES USA, INC. AND STEPHENS PRODUCTION COMPANY | Fieldwood Energy Offshore LLC | NOBLE ENERGY INC. AND DAVIS OFFSHORE L.P. PIONEER NATURAL RESOURCES USA, INC. AND STEPHENS PRODUCTION COMPANY | GC 198 Lease G21817 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES III, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1295 | 5/4/2015 | Letter Agreement - Other Land | AREA OF MUTUAL INTEREST AGREEMENT BY AND BETWEEN NOBLE ENERGY INC. AND DAVIS OFFSHORE, L.P. AND STEPHENS PRODUCTION COMPANY | Fieldwood Energy Offshore LLC | NOBLE ENERGY INC. AND DAVIS OFFSHORE, L.P. AND STEPHENS PRODUCTION COMPANY | MC 697 Lease G26021, MC 698 Lease G26022, MC 742 Lease G32343 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1296 | 3/20/2008 | Property Participation & Exchange Agreements | Participation Agreement by and between Noble Energy Inc. and Murphy | Fieldwood Energy LLC | Noble Energy Inc. and Murphy | MC 697 Lease G26021, MC 698 Lease G26022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1297 | 8/28/2014 | Letter Agreement - Other Land | Letter Agreement by and between Noble Energy Inc. and Murphy | Fieldwood Energy LLC | Noble Energy Inc. and Murphy | MC 697 Lease G26021, MC 698 Lease G26022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1298 | 5/24/2019 | Letter Agreement - Other Land | Letter Agreement by and between Noble Energy Inc. and Murphy | Fieldwood Energy LLC | Noble Energy Inc. and Murphy | MC 697 Lease G26021, MC 698 Lease G26022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES I, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |
| 1299 | 11/1/2006 | Ownership & Partnership Agreements | Partnership agreement by and between Noble Energy Inc. and Samson Offshore Company covering multiple blocks in OWCOM | Fieldwood Energy LLC | Partnership agreement by and between Noble Energy Inc. and Samson Offshore Company | GC 766 Lease G21817 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | x | | | |

Fleetwood Energy, LLC, et al.
Prepared May 26, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] Associated leases represents the lease(s) to which the contracts relate. To the extent the Debtors are able to identify the proper Debtor and the lease number associated schedules prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease holding parties of record for the associated leases and such listing is for informational purposes only. Cure estimates were adjusted to zero for completed trade agreements.
[5] Proposed Contract Treatment represents the Debtors' proposed treatment as set forth on the Schedule of Assumed Contracts for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Proposed Contract Treatment [5] | Cure Estimate | FW | FW II | FW III | Credit Bid Purchaser |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1301 | Letter Agreement - Other Land | | | Fieldwood Energy LLC | NG4-GC 198 Lease U0421 | ANADARKO US OFFSHORE LLC | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1302 | Farmout Agreement | | | Fieldwood Energy LLC | GC 198 Lease G21817 | | Bill Unit/Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1303 | Letter Agreement - JOA | | | Fieldwood Energy Offshore LLC | GC 198 Lease G26021 | | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1304 | Facilities & Tech Agreements | | | Fieldwood Energy LLC | MC 762 Lease G23757 | ROUGHNECK OPERATING LLC, TALOS EXPLORATION LLC, W & T ENERGY VI LLC | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1305 | Assignment of Positions | | | Fieldwood Energy LLC | HI 720 Lease G01948 | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO, CALYPSO EXPLORATION LLC, SANDRIDGE PETROLEUM COMPANY, MAXIMUS HUNTER PRODUCTION PARTNERS | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | | | | x |
| 1306 | Unit Agreement and/or Unit Operating Agreement | | | Fieldwood Energy LLC | MC 948 S/2N/2 Lease G32353, MC 948 S/2S/2N/2 Lease G32363, MC 992 N/2 Lease G34134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1307 | Marketing - Transportation | | | Fieldwood Energy LLC | GC 768 Lease G21817 | | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1308 | Assignment of OPRI | | | Fieldwood Energy LLC | MC 803 Lease G01948 | | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1309 | Unit Agreement and/or Unit Operating Agreement | | | Fieldwood Energy LLC | MC 942 Lease G28000, MC 948 Lease G24132, MC 992 Lease G24134, 993 Lease G24134 | BP EXPLORATION & PRODUCTION INC - HOUSTON ENERGY DEEPWATER VENTURES II, RED WILLOW OFFSHORE LLC | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1310 | Facilities & Tech Agreements | | | Fieldwood Energy LLC | MC 662 SS/4, E/2 NE/4 Lease G27278 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1311 | Unit Agreement and/or Unit Operating Agreement | | | Fieldwood Energy LLC | MC 607 SE/4, E/2 NE/4 Lease G27278, MC 792 Lease G24132 | BP EXPLORATION & PRODUCTION INC - HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1312 | Confidentiality Agreements / AMI and Related Consents | | | Fieldwood Energy Offshore LLC | VK 251 Lease G10900, VK 340 Lease G10933 | Williams Field Services | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | | | | x |
| 1313 | Other Notices | | | Fieldwood Energy Offshore LLC | GC 198 Lease G26021 | | Assume and assign to Credit Bid Purchaser | $0.00 | | x | | |
| 1314 | Unit Agreement and/or Unit Operating Agreement | | | Fieldwood Energy Offshore LLC | MC 697 Lease G26022, MC 698 Lease G23243 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1315 | Letter Agreement - Other Land | | | Fieldwood Energy LLC | NG4-GC 198 Lease U0421 | | Assume and assign to Credit Bid Purchaser | $0.00 | | | | x |
| 1316 | Letter Agreement - Other Land | | | Fieldwood Energy Offshore LLC | GC 198 Lease G26021 | | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | | | | x |
| 1317 | Joint Operating Agreement | | | Fieldwood Energy Offshore LLC | SM 280 Lease G14006 | MP GULF OF MEXICO, LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | | | | x |

Fieldwood Energy, LLC, et al.
Debtors.
Prepared May 26, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual counterparties and/or vendor names.
[2] The Debtors and their affiliated non-Debtors are party to the agreements listed on this schedule. To the extent the Debtors are able to identify the proper Debtor entity for the contracts listed on this schedule, such Debtor entity is listed here. The Debtors reserve all rights to amend the list of the proper Debtor entity(ies) at any time in the future.
[3] Associated Leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related Lease Parties represent the current lessee operating interest owner and/or working interest owner associated with the associated leases.
[5] If certain assets are to be transferred to a successful bidder, Cure estimates were adjusted to zero for contracts/leases agreements.
[6] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

The proposed treatment set forth in the Schedule of Assumed Contracts is preliminary and subject to change. The proposed treatment for each contract shall be subject to a further amended, supplemental, or modified the "Plan". Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Proposed Cutdown Treatment [5] | Cure Estimate |
|---|---|---|---|---|---|---|---|---|---|
| 1318 | 12/31/1998 | Joint Development / Venture / Exploration Agreements | Joint Venture Development Agreement, dated October 18,1998, between Norcen Explorer, Inc. and Texaco Exploration and Production, Inc. forming a working/venture/joint operating relationship of Ship.36/Operating Agreement Block 206 and OCS-G 1523. | Norcen Explorer, Inc. and Texaco Exploration and Production, Inc., Hunt Industries, The George R. Brown Partnership, JOC Venture, Larmar Hunt Trust Estate, MidCon Exploration JOC | Fieldwood Energy Offshore LLC | SS 206 Lease G01522; SS 207 Lease G01523 | n.a. | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 1319 | 48/1995 | Joint Development / Venture / Exploration Agreements | Amendment to Joint Venture Development Agreement, dated April 8, 1995, between Norcen Explorer, Inc., Texaco Exploration and Production, Inc., Hunt Industries, The George R. Brown, Partnership, JOC Venture, Lamar Hunt Trust Estate, MidCon Exploration JOC Producing Southeast Inc., and Hunt Oil Company covering all | Norcen Explorer, Inc., Texaco Exploration and Production, Inc., Industries, The George R. Brown Partnership, JOC Venture, Lamar Hunt Trust Estate, MidCon Exploration JOC | Fieldwood Energy Offshore LLC | SS 206 Lease G01522; SS 207 Lease G01523 | n.a. | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 1320 | 11/06/1984 | Joint Development / Venture / Exploration Agreements | Joint Venture Development Agreement, dated November 16, 1984, between Norcen Explorer, Inc., Texaco Exploration and Production, Inc., Industries, The George R. Brown Partnership, JOC Venture, Lamar Hunt Trust Estate, MidCon Exploration JOC Producing Southeast Inc., and Hunt Oil Company, covering all OCS oil and gas leases within the boundaries of OCS | Norcen Explorer, Inc., Texaco Exploration and Production, Inc., Industries, The George R. Brown Partnership, JOC Venture, Lamar Hunt Trust Estate, MidCon Exploration JOC | Fieldwood Energy Offshore LLC | SS 206 Lease G01522; SS 207 Lease G01523 | n.a. | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 1321 | | Oilfield Services | | NORD-SUD SHIPPING, INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1322 | | Oilfield Services | | NORGASTI MARINE & OFFSHORE SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1323 | 11/12/2009 | Other Misc. | Partition and Redemption Agrt. dated 11-1-2009 b/h Northstar Gulfsands, LLC and Gulfsands Petroleum USA, Inc. | Northstar Gulfsands, LLC and Gulfsands Petroleum USA, Inc. | Fieldwood Energy Offshore LLC | VR 332 Lease G04914 | AMODR E&P HOLDINGS CORPORATION, CAINIAT ENERGY INC. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1324 | 7/7/2008 | Letter Agreement - Other Land | Ltr agmt dtd 7-7-2008 from Northstar Interests, L.L.C. to Gulfsands Petroleum USA, Inc. | Northstar Interests, L.L.C. and Dynamic Offshore Resources LLC | Fieldwood Energy Offshore LLC | VR 332 Lease G04914 | AMODR E&P HOLDINGS CORPORATION, CAINIAT ENERGY INC. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1325 | 6/1/2014 | Acquisition / PSA / Other Purchase or Sale Agreements | WV Pipeline LLC - Dynamic Offshore Resources LLC, NV Pipeline, Inc. and Northwestern Mutual Life Ins. Co.HIP 1-3.41 | Northwestern Mutual Life Ins. Co.; NV Pipeline, Inc. | Fieldwood Energy LLC | HI A-573 Lease G02393; HI A-362 Lease G02721; HI A-572 Lease G02207; HI A-571 Lease G02206 | EPL OIL & GAS INC | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1326 | | Oilfield Services | | NV PROCESS & FLOW TECHNOLOGIES US, INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1327 | 1/1/1981 | Operating Agreement - Other | WV MM Murad, Hardy and Unichem | NV Murad, Hardy and Unichem | Fieldwood Energy LLC | BA A 102 Lease G01754; BA A 105 Lease G01757 | ERA HELICOPTERS INC., TARPHE INC | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1328 | | Oilfield Services | | OCCIDENTAL CHEMICAL CORP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1329 | | Oilfield Services | | OCEAN ENERGY SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1330 | 5/27/2003 | Master Services Agreement | Master Services Agreement dated effective 5/27/2003 Amendment dated effective 6/25/2015 | OCEAN ENERGY INC | Fieldwood Energy LLC | n.a. | W & T OFFSHORE INC | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1331 | 6/1/1999 | Confidentiality Agreements / AMI and Related Agreements | AREA OF MUTUAL INTEREST BY AND BETWEEN OCEAN ENERGY INC. AND DUKE ENERGY HYDROCARBONS, LLC | Ocean Energy, Inc.; Duke Energy Hydrocarbons, LLC, Midlantan Oil | Fieldwood Energy Offshore LLC | VR 196 Lease G01916; VR 201 Lease G01918; VR 207 Lease G01951 | HALLIBURTON ENERGY SERVING, ARENA ENERGY LP, ARENA OFFSHORE LP | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 1332 | | Oilfield Services | | OCEAN FLOW INTERNATIONAL LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1333 | 4/22/2015 | Master Services Agreement | Master Services Agreement, Contract Effective, 4-22-2015 | OCEANEERING INTERNATIONAL, INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1334 | 3/1/1999 | Termination / Ratification and Joinder of Contract / Other Agreements | Master Services Agreement dated effective 11/00/2013, Amendment dated effective 8/15/2014 | OCEANEERING INTERNATIONAL, INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1335 | | Oilfield Services | | OCEANS WIRELINE INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1336 | 11/1/2013 | Master Services Agreement | Master Services Agreement dated effective 11/01/2013 | OFFSHORE ENERGY SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1337 | | Oilfield Services | | OFFSHORE EQUIPMENT SOLUTIONS | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1338 | 11/1/2013 | Master Services Agreement | Master Services Agreement dated effective 11/01/2013 | OFFSHORE SERVICES OF ACADIANA LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1339 | 7/31/2006 | Articles of Merger | Articles of Merger by and between Offshore Shelf LLC and W&T Offshore, Inc. effective December 20, 2009 and Certificate of Merger | Offshore Shelf LLC and W&T Offshore, Inc. | Fieldwood Energy Offshore LLC | MC 110 Lease G18192 | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1340 | | Oilfield Services | | ONESUBSEA LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1341 | 2/24/2014 | Master Services Agreement | Master Services Agreement dated effective 02/24/2014 | OFFSHORE TECHNICAL COMPLIANCE, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1342 | 12/17/2018 | Master Services Agreement | Master Services Agreement dated effective 12/17/2018 | OFFSHORE TECHNICAL SOLUTIONS LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1343 | 7/17/2013 | Non-Oilfield Services | Software Agreement, End User Support DocVue Product | OIL & GAS INFORMATION SYSTEMS, INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1344 | | Oilfield Services | | OIL STATES SKAGIT SMATCO | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1345 | 1/1/2019 | Master Services Agreement | Split Response / Master Services Agmt, dtd 1-1-2019 | OLIVER INTERNATIONAL, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1346 | 7/7/1995 | Master Services Agreement | Jumbo Heliport Services to Tier 1 Early 7/5 OSMO | OMEGA NATURAL SOLUTIONS | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $50,277.75 |
| 1347 | | Oilfield Services | | OMNISUBSEA LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1348 | 1/4/2007 | Operating Agreement - Other | Joint Operating Agreement as Amended | Operating Agreement as Amended | Fieldwood Energy LLC | SM 44 Lease G23840 | n.a. | Assume and assign to Credit Bid Purchaser | $50,277.75 |
| 1349 | 5/31/2014 | Non-Oilfield Services | Perpetual Software License/Master Agreement | OPPORTUNE LLP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $7,617.47 |
| 1350 | | Non-Oilfield Services | Consulting Agreement, Engagement Letter | OPPORTUNE LLP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1351 | | Non-Oilfield Services | Perpetual Software License Agreement | OPPORTUNE LLP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1352 | | Non-Oilfield Services | Perpetual Software License Agreement | OSIsoft LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1353 | | Non-Oilfield Services | GC 65 Pi Data Software Company | OSIsoft LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $50,277.75 |
| 1354 | 1/1/1997 | Joint Operating Agreement | Joint Operating Agreement, dated effective January 1, 1997, between OXY USA Inc., as Operator, Texaco Exploration and Production Inc. and Sun Operating Limited Partnership, for Brazos Block A-133. | OXY USA Inc., as Operator, Texaco Exploration and Production Inc. and Sun Operating Limited Partnership, for Brazos Block A-133 | Fieldwood Energy LLC | BA A133 Lease G02065 | W & T ENERGY VI LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 |
| 1355 | | Non-Oilfield Services | IP/EMERGY SOLUTIONS | PADADDM | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $20,608.87 |
| 1356 | | Oilfield Services | | PANTHEINS LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1357 | | Non-Oilfield Services | Data subscription agreement | PALEO DATA | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1358 | | Non-Oilfield Services | Perpetual Software License Agreement | PANGEL TECHNOLOGY USA CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1359 | 5/6/2019 | Letter Agreement - Operating Agreement | Joint Operating Agreement - Partner Pipeline LLC; Letter Agreement Matagorda Operating Agreement MI 518/519 with regard to pipeline abandonment | Panther Pipeline LLC | Fieldwood Energy LLC | MI 518 Lease G06169 | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1360 | 2/1/2016 | Non-Oilfield Services | Consulting Agreement | PARKER HANNIFIN | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1361 | | Oilfield Services | | ROP Internal, Downhole tools | PATTERSON RENTAL TOOLS, PATTERSON FISHING TOO | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| | | | | | | | | | | Applicable Entity | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW I | Credit Bid Purchaser | FW III | FW IV |
| 1363 | | Oilfield Services | 555709_Rental Agreement dated effective 02/11/2014 | PAWS ENERGY SERVICES INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1364 | | Oilfield Services | 778044_Master_Rental_Agreement dated 6-27-2020 | PELICAN WASTE AND DEBRIS LLC | Fieldwood Energy LLC | n.a. | n.a. | $104.19 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1365 | | Oilfield Services | 700604_Master_Service_Contract Effective_7-28-2015 | PENINSULA MARINE INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1366 | 5/17/1999 | Farmout Agreement | by and between PennzEnergy Exploration and Production L.L.C. and Aviara Energy Corporation | PennzEnergy Exploration and Production L.L.C. and Aviara Energy Corporation | | EI 313 Lease G02608 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1367 | 2/10/1994 | Joint Development / Venture / Exploration Agreements | JOINT DEVELOPMENT AGREEMENT DATED FEBRUARY 10, 1994, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA - TERMINATED BY LETTER AGREEMENT DATED MARCH 10, 1999. | PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA | Fieldwood Energy Offshore LLC | EI 53 Lease 479 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1368 | | Oilfield Services | 700471_Master_Service_Contract Effective_07-2-2019 | PERC ENGINEERING, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1369 | | Oilfield Services | 777953_Master Services Agreement dated effective 12/04/2018 | PETRAM CONSULTING, LLC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1370 | | Oilfield Services | Pipe Supplier | PETRO AMIGOS SUPPLY INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1371 | 1/7/2016 | Other | Contract for the Extraction of Hydrocarbons under the Production Sharing Modality - Fieldwood Energy E&P Mexico, S. De R.L. De C.V. | Petrobal Upstream Delta 1, S.A. de C.V. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1372 | | Oilfield Services | 777567_Master Services Agreement dated effective 02/08/2018 | PETROLEUM CO-ORDINATORS | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1373 | | Non-Oilfield Services | Perpetual Software License Agreement | PETROLEUM EXPERTS, INC. | Fieldwood Energy LLC | n.a. | n.a. | $41,309.38 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1374 | | Oilfield Services | PHI 2019-2020 Pricing Agreement (4); Ninth Amendment dated 04/22/2020 | PETROLEUM HELICOPTERS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1375 | 7/24/2018 | Non-Oilfield Services | Consulting Agreement | Petrophysical Applications International, Inc. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1376 | | Non-Oilfield Services | Consulting Agreement; Subscription License Agreement | PETROPHYSICAL SOLUTIONS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1377 | 11/10/2017 | Non-Oilfield Services | Master Consulting Agreement | PETROPLAN USA LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1378 | 7/15/2000 | Joint Operating Agreement | Operating Agreement eff. 7-15-00 b/b Petroquest Energy One, L.L.C and LLOG Exploration and Production Company | Petroquest Energy One, L.L.C and LLOG Exploration and Production Company | Fieldwood Energy Offshore LLC | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1379 | 1/12/2001 | Property Participation & Exchange Agreements | Participation Agreement by and between PetroQuest Energy One, L.L.C. and Challenge Minerals Inc; Stephens Production Company, LLC : Exploration and Development of contract area including SS 79 | PetroQuest Energy One, L.L.C. and Challenge Minerals Inc; Stephens Production Company, LLC | | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1380 | 7/15/2000 | Property Participation & Exchange Agreements | Participation Agreement by and between PetroQuest Energy One, L.L.C. and LLOG Exploration & Production Company | PetroQuest Energy One, L.L.C. and LLOG Exploration & Production Company | | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1381 | 1/12/2001 | Joint Operating Agreement | Joinder and Ratification Agreement by and between PetroQuest Energy One, L.L.C. and LLOG Exploration & Production Company; Challenter Minerals Inc.; GMT, Inc.; Stephens Production Company, L.L.C. : Joinder and Ratification to 07/15/2000 JOA | PetroQuest Energy One, L.L.C. and LLOG Exploration & Production Company; Challenter Minerals Inc.; GMT, Inc.; Stephens Production Company, L.L.C. | | SS 79 Lease G15277 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1382 | | Oilfield Services | 547503_PO Terms & Conditions dated effective 07/24/2018 | PETROQUIP ENERGY SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1383 | | Oilfield Services | Pipeline Repair Clamps | PETROQUIP INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1384 | | Non-Oilfield Services | Perpetual Software License Agreement | Petroseismic Software | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1385 | 10/1/2014 | Other Services Agreements | MOU | PetroSkills (OGCI) | | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1386 | | Oilfield Services | Fishing Tools (Formerly Extreme Energy Services) | PETROSTAR SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1387 | | Oilfield Services | 777661_Master_Service_Contract Effective_12-19-2019 | PETROSTREAM LP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1388 | | Oilfield Services | 700006_Master Services Agreement dated effective 01/01/2013 | PHARMASAFE INDUSTRIAL SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1389 | | Non-Oilfield Services | Perpetual Software License Agreement | Phi Helipass, Llc | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1390 | | Oilfield Services | Personnel Check-in, Cargo Processing, Etc., at Heliparts, Marine Ports, and Other Ports | PHI HELIPASS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1391 | | Oilfield Services | 700975_Master Services Agreement dated effective 06/08/2015 | PHOENIX INTERNATIONAL HOLDING, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1392 | 8/27/2008 | Farmout Agreement | FARMOUT AGREEMENT BY AND BETWEEN PIESCES ENERGY LLC AND APACHE CORPORATION | PIESCES ENERGY LLC AND APACHE CORPORATION | Fieldwood Energy LLC | ST 291 Lease G16455 | ENVEN ENERGY VENTURES LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1393 | 4/15/2017 | Other | Standard Lease Agreement | PINHOOK TOWER | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1394 | 5/1/2018 | Other | Amendment to Standard Lease Agreement | PINHOOK TOWER | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1395 | 3/7/2019 | Other | Second Amendment to Standard Lease Agreement | PINHOOK TOWER | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1396 | | Oilfield Services | Facility and Structural Engineering for Construction Dept (Topside) | PINNACLE PROJECT SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1397 | | Oilfield Services | Slickline and E-line, Coil Tubing Units, Well Servicing | PIONEER WIRELINE SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1398 | | Oilfield Services | Pipe Supplier | PIPECO SERVICES | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1399 | 4/20/2017 | Other | PitneyBowes Lease Agreement (0040071677) | PITNEY BOWES POSTAGE BY PHONE | Fieldwood Energy LLC | n.a. | n.a. | $1,126.96 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1400 | 8/6/2018 | Other | PitneyBowes Lease Agreement (G240047002) | PITNEY BOWES POSTAGE BY PHONE | Fieldwood Energy LLC | n.a. | n.a. | $1,126.96 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1401 | | Non-Oilfield Services | Agreement for postage for machines in Houston and Lafayette | PITNEY BOWES POSTAGE BY PHONE | Fieldwood Energy LLC | n.a. | n.a. | $545.86 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1402 | 9/2/1992 | Surface Lease | PLAQUEMINE PARISH GOVERNMENT S-92-1 SL#33 | PLAQUEMINE PARISH GOVERNMENT | | GRANDBAY / MP140 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1403 | 9/14/1992 | Surface Lease | SURFACE LEASE AGREEMENT BETWEEN PLAQUEMINES PARISH GOVERNMENT AS LESSOR AND CHEVRON PIPELINE COMPANY, LESSEE FOR MP 140 | PLAQUEMINES PARISH GOVERNMENT AS LESSOR AND CHEVRON PIPELINE COMPANY, LESSEE FOR MP 140 | | MP 140 Lease G02193 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1404 | | Oilfield Services | 777972_Master Services Agreement dated effective 11/01/2019 | PMB SAFETLY & REGULATORY, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1405 | 7/7/1994 | Letter Agreement - Other Land | LETTER AGREEMENT BY AND BETWEEN POGO PRODUCING COMPANY AND COCKRELL OIL AND GAS, L.P., ET AL | POGO PRODUCING COMPANY AND COCKRELL OIL AND GAS, L.P., ET AL | Fieldwood Energy LLC | EI 330 Lease G02115 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE, LLC, Arena, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1406 | 5/17/2006 | Marketing - Other | LETTER AGREEMENT, PLATFORM & FACILITIES OWNERSHIP AND ABANDONMENT LIABILITY, EUGENE ISLAND 330 D BY AND BETWEEN POGO PRODUCING COMPANY, APACHE CORPORATION, EXXONMOBIL CORPORATION, MARINER ENERGY RESOURCES, INC. | POGO PRODUCING COMPANY, APACHE CORPORATION, EXXONMOBIL CORPORATION, MARINER ENERGY RESOURCES, INC. | | EI 330 Lease G02115 | ENERGY XXI GOM LLC, RENAISSANCE OFFSHORE, LLC, Arena, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1407 | 3/1/1976 | Joint Operating Agreement | Operating Agreement eff. 3-1-76 b/b POGO, Mesa and Mobil, et al | POGO, Mesa and Mobil, et al | Fieldwood Energy LLC | EI 337 Lease G03332, EI 354 Lease G10752 | RIDGEWOOD ENERGY CORPORATION; RIDGEWOOD ENERGY CORPORATION, COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1408 | 1/31/2010 | Other Services Agreements | Preferred Provider Agreement by and between Wild Well Control, Inc and Dynamic Offshore Resources Inc dated 31 Jan 2010 | Preferred Provider Agreement by and between Wild Well Control, Inc and Dynamic Offshore Resources Inc dated 31 Jan 2010 | Fieldwood Energy Offshore LLC | GC 65GC 108GC 109 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |

Fieldwood Energy, LLC, et al.
Prepared May 20, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtor entities represent the entities that are parties to the listed schedules, but such listing may not reflect all of the entities that could be affected by the assumption of the listed contract. To the extent the Debtors are able to identify the proper Debtor and/or to the extent that additional Debtors are able to identify the proper Debtor and/or parties, they reserve the right to amend this Schedule.
[3] Associated leases represent the oil and gas leases that are associated with or related to the work underlying contract.
[4] Related lease parties represents the record title or operating interest owners of the associated leases.
[5] If amended schedules are included herein, such schedules supersede and replace any prior filed version. Contract estimates are subject to ongoing reconciliation.
[6] All estimates based on currently available information. Cure estimates are subject to ongoing reconciliation.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Debtor Entities [2] | Known Contract Counterparties [1] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate | Proposed Contract Treatment [5] | FW | FW I | FW II | Credit Bid Purchaser |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1409 | | Oilfield Services | NXT-M_Master Services Agreement dated Effective 07/12/2014 | Fieldwood Energy LLC | PREMIERE, INC. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1410 | | Oilfield Services | R0064_Master_Service_Contract Effective_11-1-2013 | Fieldwood Energy LLC | PRIORITY ARTIFICIAL LIFT SERVICES LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1411 | | Oilfield Services | Wellhead Maintenance and Testing, Valve Repairs | Fieldwood Energy LLC | PRO-VAL VS SERVICES, INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1412 | | Oilfield Services | Pipe, Valves & Fittings | Fieldwood Energy LLC | PROCESS PIPING MATERIALS INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1413 | | Oilfield Services | PROOOF CHEMICALS INC | Fieldwood Energy LLC | PROOOF CHEMICALS INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1414 | 8/1/2012 | Other Services Agreements | Production Technician Services Contract by and between June 1, 2012, as amended yearly | Fieldwood Energy LLC | Production Technician Services | MC 519 Lease G27279, MC 562 Lease G19868, MC 553 Lease G31178 | BP EXPLORATION & PRODUCTION INC, HOUSTON ENERGY DEEPWATER VENTURES II, RED WILLOW OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1415 | 9/1/2013 | Other Services Agreements | PT381_Master Services Agreement dated effective 10/22/2018 | Fieldwood Energy LLC | PRODUCTION TECHNOLOGY & SERVICES, INC. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1416 | 9/1/2013 | Other Services Agreements | Resources Agreement | Fieldwood Energy LLC | Production Testing Services Inc | Area wide | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1417 | 9/1/2013 | Oilfield Services | 510325_Master Services Agreement dated effective 05/16/2014 | Fieldwood Energy LLC | PROFESSIONAL FLUID SERVICES, LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1418 | | Oilfield Services | 777010_Master Services Agreement dated effective 03/16/2016 | Fieldwood Energy LLC | PROFESSIONAL RENTAL TOOLS LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1419 | | Oilfield Services | Wireline Rentals | Fieldwood Energy LLC | PROFESSIONAL WIRELINE RENTALS | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1420 | | Oilfield Services | Machine Shop | Fieldwood Energy LLC | PROGRESS MACHINE INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1421 | | Oilfield Services | 566442_Master Services Agreement dated effective 02/24/2014 | Fieldwood Energy LLC | PROSERV OPERATIONS INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1422 | | Oilfield Services | 700472_Master_Service_Contract Effective_2-14-2014 | Fieldwood Energy LLC | PROSPER OPERATORS, INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1423 | | Oilfield Services | Master Service Contract dated July 19, 2019; Amendment dated September 1, 2019 | Fieldwood Energy LLC | PROVISIONS ENERGY & MARINE SUPPORT | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1424 | | Oilfield Services | Pipe Supplier | Fieldwood Energy LLC | PYRAMID TUBULAR PRODUCTS LP | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1425 | | Oilfield Services | 520792_Master Services Agreement dated effective 01/01/2014 | Fieldwood Energy LLC | QUALITY CONSTRUCTION & PRODUCTIONAL | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1427 | | Oilfield Services | 554939_Master Services Agreement dated effective 11/25/2013 | Fieldwood Energy LLC | QUALITY ENERGY SERVICES, INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1428 | | Oilfield Services | 509420_Master Services Agreement dated effective 07/05/2014 | Fieldwood Energy LLC | QUALITY PREHEAT & PRESSURE WASHERS INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1429 | | Oilfield Services | 535026_Master Services Agreement dated effective 11/03/2013 | Fieldwood Energy LLC | QUALITY PROCESS SERVICES LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1430 | | Oilfield Services | Production Operations Quality Company - Operators, Area II | Fieldwood Energy LLC | QUALITY PRODUCTION MGMT LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1431 | | Oilfield Services | 777561_PO Terms & Conditions dated effective 04/03/2018 | Fieldwood Energy LLC | QUALITY WIRELINE & CABLE INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1432 | | Oilfield Services | 564799_Master Services Agreement dated effective 07/25/2018 | Fieldwood Energy LLC | QUEST INTEGRITY USA LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1433 | 7/18/2013 | Non-Oilfield Services | Software Licensing Agreement | Fieldwood Energy Offshore LLC | QUORUM BUSINESS SOLUTIONS (USA) INC. | n.a. | n.a. | $57,819.40 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1433 | | Oilfield Services | PO Terms & Conditions | Fieldwood Energy LLC | R&R ENERGY SERVICES LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1434 | 10/23/2003 | Letter Agreement - Other Land | Letter Agreement, dated October 23, 2003, between Range Resources Corporation and Chevron U.S.A. Inc. regarding Well ... Main Pass Block 164 | Fieldwood Energy Offshore LLC | Range Resources Corporation and Chevron U.S.A. Inc. | MP 164 Lease G13902 | MP 164 Lease G13902 | $0.00 | Assume and assign to Credit Bid Purchaser | | | x | |
| 1435 | 7/12/1999 | Joint Operating Agreement | Joint Operating Agreement dated July 13, 1999 by and between RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | Fieldwood Energy Offshore LLC | RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | PN 893 Lease MP 154/015, PN 883 Lease MP12491, PN 883 Lease MP15189, PN 893 Lease MP66146, PN 883 Lease MP52484 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1436 | 6/6/1999 | Joint Development / Venture / Exploration Agreements | EXPLORATION AGREEMENT DATED AUGUST 6, 1999 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | Fieldwood Energy Offshore LLC | RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | PN 893 Lease MP 154/015, PN 883 Lease MP12491, PN 883 Lease MP15189, PN 893 Lease MP66146, PN 883 Lease MP52484 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1437 | | Oilfield Services | Spooling Fluid | Fieldwood Energy LLC | RAPID DRILLING INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1438 | | Oilfield Services | Solid Body Centralizers | Fieldwood Energy LLC | RAY OIL TOOL CO, INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1439 | 1/14/2019 | Operating Agreement - Other | Operating Agreement, effective as of January 14, 2019, among Fieldwood Energy Offshore LLC, Red Willow Offshore, LLC, and CHEVRON U.S.A. INC re: WEST DELTA Block 133 | Fieldwood Energy LLC | Red Willow Offshore / Talos Energy Offshore | GC 200 (WW4 SE-8, WW4 NE-8), EC (N/A WW4, S/2 N/A WW4, W/2 N/A WW4) SE-8, NE-8 (WW4 SE-8, WW4 NW4 N/A/W) Lease G12209 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENERGY VI LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1440 | 3/4/2020 | Oil Agreement and/or Unit Operating Agreement | Operating Agreement, effective as of January 14, 2019, among Fieldwood Offshore LLC and Talos Energy Offshore dated March 2020 | Fieldwood Energy Offshore LLC | Red Willow Offshore / Talos Energy Offshore | GC 200 (WW4 SE-8, WW4 NE-8, EC (N/A WW4, S/2 N/A WW4, W/2 N/A WW4) SE-8, NE-8 (WW4 SE-8, WW4 NW4 N/A/W) Lease G12209 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENERGY VI LLC, SHELL TRADING (US) COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1441 | | Oilfield Services | Tension Packers | Fieldwood Energy LLC | RELIABLE PACKER SALES & SERVICES TOOLS LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1442 | | Oilfield Services | Training Provider | Fieldwood Energy LLC | RELYON NUTEC GUA, LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1443 | 8/7/2012 | Master Service Agreement | Master Service Agreement | Fieldwood Energy LLC | Rentsys Recovery Services, Inc. | Area wide | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1444 | | Oilfield Services | Workstrings | Fieldwood Energy LLC | RESOURCE RENTAL TOOLS LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1445 | 2/13/2019 | Non-Oilfield Services | IT Services Agreement | Fieldwood Energy LLC | REVOLUTIONARY SECURITY LLC | n.a. | n.a. | $178,296.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1446 | 4/1/2007 | Marketing - PHA | R0100101-MR38GU4P275 by and between Fieldwood and RIDGEWOOD ENERGY CORPORATION dated 04/01/2007 | Fieldwood Energy LLC | RIDGEWOOD ENERGY CORPORATION | WP 275 Lease G13395 | RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1447 | | Oilfield Services | 705847_Master_Service_Contract_Effective_5-23-2013 | Fieldwood Energy LLC | RIG INTERNATIONAL INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1448 | | Oilfield Services | 525103_Master Services Agreement dated effective 01/01/2014, amendment dated effective 06/28/2018 | Fieldwood Energy LLC | RIGHT HAND OIL FIELD ASSOCIATES LLC | n.a. | n.a. | $474,052.25 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1449 | | Oilfield Services | Pipe Tong | Fieldwood Energy LLC | RIGNET INC. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1450 | | Oilfield Services | Crane Compression, INC | Fieldwood Energy LLC | RINO-KAK COMPRESSION, INC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1451 | | Oilfield Services | Crane Mats | Fieldwood Energy LLC | RITTER FOREST PRODUCTS | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1452 | | Oilfield Services | 506791 Helicopter Service Agreement 7/17/2014 | Fieldwood Energy LLC | RLC LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |
| 1453 | 6/15/2001 | Joint Operating Agreement | JOINT DEVELOPMENT AGREEMENT EFFECTIVE JUNE 15, 2001 BY AND BETWEEN RME PETROLEUM COMPANY AND WAT OFFSHORE, INC. ("THE JOINT DEVELOPMENT AREA COMPANY OPERATING AGREEMENT") | Fieldwood Energy LLC | RME PETROLEUM COMPANY, WAT OFFSHORE, INC, RME LLC | SM 280 Lease G14456, SM 281 Lease G02600 | MP GULF OF MEXICO, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1454 | | Oilfield Services | 701590_Master_Service_Contract_Effective_1-06-2016 | Fieldwood Energy LLC | ROGUE INDUSTRIAL GROUP LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | x |

Page 4 of 54

Fieldwood Energy, LLC, et al.
Prepared May 26, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors' inclusion of a contract on this schedule does not constitute an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute the amount of, basis for, or validity of any claim. To the extent the Debtors are able to identify the proper Debtor and/or the nonDebtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties are the parties associated with the associated leases.
[5] Cure estimate represents the amount the Debtors believe is owed under the applicable contract.
[6] All estimates based on current information and are subject to change. Cure estimates are adjusted to zero for completed trade agreements.

*The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the terms described herein shall have the meanings ascribed to such terms in the Plan. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.*

| # | Contract Category | Contract Description | Known Contract Counterparty(ies) [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] |
|---|---|---|---|---|---|---|---|---|
| 1455 | Non-O&G Real Property Leases (Rental Homes) | Lease agreement between Fieldwood and Sonne White Custom Homes | Sonne White Custom Homes | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1456 | Oilfield Services | Rowan Amendment (12-18-13) | ROWAN COMPANIES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1457 | Oilfield Services | Rig Company | ROWAN DRILLING (AMERICAS) LIMITED | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1458 | Oilfield Services | Rig Company | ROWAN DRILLING UNLIMITED | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1459 | Oilfield Services | SYASO_Master Services Agreement dated effective 11/01/2013 | ROYAL SERVICE AND RENTALS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1460 | Other | Engagement Letter | RYAN LLC | Fieldwood Energy LLC | n.a. | n.a. | $1,389,004.43 | Assume and assign to Credit Bid Purchaser |
| 1461 | Operating Agreement - Other | Participation Agreement and Operating Agreement 11-17-00 t/b | Samedan and Stone | Fieldwood Energy LLC | VR 261 Lease G03328 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1462 | Operating Agreement - Other | Operating Agreement eff. 9-20-95 b/w Samedan and Walter | Samedan and Walter | Fieldwood Energy LLC | VR 314 Lease G04438, VR 315 Lease G04215 | ANPOR-B(FHOLDINGS CORPORATION, CKR WAT ENERGY, INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1463 | Farmout Agreement | Farmout Agmt. eff. 3-1-2002 b/w Samedan Oil Corporation (Farmor) and Pure Resources, L.P. (Farmee) | Samedan Oil Corporation (Farmor) and Pure Resources, L.P. (Farmee) | Fieldwood Energy Offshore LLC | VR 332 Lease G09014 | ANPOR-B(FHOLDINGS CORPORATION, CKR WAT ENERGY, INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1464 | Farmout Agreement | Participation Agreement eff. 8-11-1993 b/w Samedan Oil Corporation and British Borneo Exploration Inc, et al | Samedan Oil Corporation and British Borneo Exploration Inc, et al | Fieldwood Energy Offshore LLC | VR 332 Lease G09014, VR 333 Lease G14417 | ANPOR-B(FHOLDINGS CORPORATION, CKR WAT ENERGY, INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1465 | Property Participation & Exchange | Participation Agmt. eff. 8-8-2003 b/w Samedan Oil Corporation and CLK Company | Samedan Oil Corporation and CLK Company | Fieldwood Energy Offshore LLC | VR 332 Lease G09014 | ANPOR-B(FHOLDINGS CORPORATION, CKR WAT ENERGY, INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1466 | Joint Operating Agreement | Offshore Operating Agreement, effective January 20, 1983, between Samedan Oil Corporation and Development Corporation | Samedan Oil Corporation and Development Corporation | Fieldwood Energy LLC | VR 362 Lease G10687, VR 363 Lease G06622, VR 371 Lease G09624 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1467 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement and Unit Operating Agmt. 2/23 Unit, by and between Samedan Oil Corporation, as Operator and Continental Land & Fur Co., Inc. (collectively known as the Viosca Knoll 251 Unit) | Samedan Oil Corporation, as Operator and Continental Land & Fur Co., Inc. | Fieldwood Energy LLC | VR 251 Lease G10650, VR 340 Lease G10633 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1468 | Marketing - Connection Agreement | Gathering Agmt. between Samedan Oil Corporation, Shell Offshore, Inc, and Stingray Pipeline Company | Samedan Oil Corporation, Shell Offshore, Inc, and Stingray Pipeline Company | Fieldwood Energy LLC | VR 228 Lease G07270 | | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1469 | Marketing - Connection Agreement | Lease Project Agreement between Samedan Oil Corporation, Shell Offshore, Inc, and Stingray Pipeline Company | Samedan Oil Corporation, Shell Offshore, Inc, and Stingray Pipeline Company | Fieldwood Energy Offshore LLC | VR 228 Lease G07270 | | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1470 | Farmout Agreement | Farmout Agreement Samson Offshore Company - Farmor and H&B Pipeline | Samson Offshore Company - Farmor and H&B Pipeline | Fieldwood Energy Offshore LLC | EC 349 Lease G15106 | | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1471 | Letter Agreement - Other Land and between Samson Offshore Mapleleaf LLC and Chevron Pipeline, effective between 2/26/2017 | Letter Agreement - Other Land and between Samson Offshore Mapleleaf LLC and Chevron Pipeline and 2.67% proportionally reduced dated February 19, 2017 | Samson Offshore Mapleleaf LLC and Chevron Pipeline | Fieldwood Energy LLC | MC 948 Lease G32635, MC 949 Lease G32383, MC 992 Lease G24133, MC 993 Lease G30586, MC 995 Lease C30405 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1472 | Oilfield Services | SAN LEON MUNICIPAL UTILITY DISTRICT | SAN LEON MUNICIPAL UTILITY DISTRICT | Fieldwood Energy LLC | n.a. | n.a. | $597.60 | Assume and assign to Credit Bid Purchaser |
| 1473 | Joint Operating Agreement | Operating Agreement effective October 9, 1992 | Sanare Energy Partners | Fieldwood Energy LLC | VR 228 Lease G07270 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1474 | Joint Operating Agreement | Joint Operating Agreement effective 10-12-1967 | Sanare Energy Partners | Fieldwood Energy LLC | VR 228 Lease G07270 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1475 | Joint Operating Agreement | Joint Operating Agreement 10-12-1968 | Sanare Energy Partners | Fieldwood Energy LLC | VR 228 Lease G07270 | SANARE ENERGY PARTNERS, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1476 | Performance Bond & Supplemental Bonding Agreement | Sanare Energy Partners, LLC is the new principal replacing Fieldwood | Sanare Energy Partners, LLC is the new principal replacing Fieldwood | Fieldwood Energy LLC | EC 246 Lease 810, ID 267 Lease 812 | | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1477 | Marketing - Construction, Operations, Management, Ownership Agreements | Owners constructed and own the Lateral Line which is used to connect pipelines from High Island Offshore System to other pipelines/owners and by High Island A5 Platform (HI-A5) and 5% reassignment to another pipeline/owners and with steps by and between Fieldwood Energy Offshore LLC and and SBM Gulf Production, LLC dated 11 April 2016 governing HIOS Lateral | Saratoga Offshore, LLC, Enterprise GTM Offshore Operating Company, LLC | Fieldwood Energy LLC | EB 165 Lease G00647, EB 165 Lease G06280 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1478 | Letter Agreement - Other Land | 777852_Master Services Agreement dated effective 02/12/2019 | SBM Gulf Production, LLC | Fieldwood Energy LLC | MC 657 Lease G28823, MC 658 Lease G28922, MC 742 Lease G33243 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1479 | Oilfield Services | Master Services Agreement | SBS ENERGY SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1480 | Non-Oilfield Services | 601838_Master Services Agreement dated effective 11/21/2013 | SCHLUMBERGER TECHNOLOGY CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1481 | Non-Oilfield Services | Master Services Agreement | SCHLUMBERGER TECHNOLOGY CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1482 | Assignment of Oil & Gas Leasehold Interests | 601538_Master Services Agreement dated effective 11/21/2013 | SCL Resources LLC DBA SCL Resources, LLC | Fieldwood Energy LLC | SS 79 Lease G24377 | CALYPSO EXPLORATION LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1483 | Well Prospect Proposals | WAF Prospect Proposals by and between SCL Resources, LLC DBA or Purchase SCL Resources, LLC/S Interest in OCS-G Resources, LLC; Offer to Purchase SCL Resources, LLC/S Interest in OCS-G Lease G03414 | SCL Resources, LLC | Fieldwood Energy LLC | SS 65 Lease G02115, SS 79 Lease G15477, VR 332 Lease G05974, VR 334 Lease G03414 | | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1484 | Master Service Agreement | Liquids Transportation Service by and between Fieldwood Energy LLC and Seadrift Pipeline Corporation, LLC and Sea Robin Pipeline Company, LLC | Seadrift Pipeline Corporation, LLC and Sea Robin Pipeline Company, LLC | Fieldwood Energy LLC | EC 281 Lease G00977, EC 278 Lease G00974, EC 333 Lease G00479, EC 333 Lease G02111, EC 333 Lease G02117, EC 315 Lease G00440 | | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1485 | Master Service Agreement | 906510_Master Services Agreement dated effective 11/01/2013 | SEACOR MARINE LLC | Fieldwood Energy LLC | EC 281 Lease G00977, EC 278 Lease G00974, EC 333 Lease G00479, EC 333 Lease G02111, EC 333 Lease G02117, EC 315 Lease G00440 | | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1486 | Non-Oilfield Services | Master Services Agreement | SEND INFOW DON'N | Fieldwood Energy LLC | Area wide | | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1487 | INTERCONNECT AND REIMBURSEMENT AGREEMENT | PIPING REIMBURSEMENT AGREEMENT, SHIP SHOAL BLOCK 274 BETWEEN SEA ROBIN PIPELINE AND FIELDWOOD ENERGY | SEA ROBIN PIPELINE, LLC AND FIELDWOOD ENERGY LLC | Fieldwood Energy LLC | n.a. | ENI US OPERATING CO. INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1488 | Oilfield Services | 777835_PO Terms & Conditions dated effective 07/10/2019 | SEAHORSE ENERGY | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1489 | Oilfield Services | 555257_Master Services Agreement dated effective 12/24/2013 | SEAL-RITE INTERNATIONAL | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1490 | Master Services Agreement | Master Services Data Participation and Licensing Agreement | SeaTrax, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1491 | Master Services Agreement | Master Services Data Participation and Licensing Agreement | SeisData, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1492 | Non-Oilfield Services | 906510_Master Services Participation and Licensing Agreement | SELECT OILFIELD SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1493 | Master Services Agreement | 906510_Master Services Agreement dated effective 11/01/2013 | SELECT OILFIELD SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1494 | Non-Oilfield Services | communication software | SENDWORD NOW | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1495 | Master Services Agreement | Wes Roger (Stings) | SERVICE RIGGING | Fieldwood Energy LLC | n.a. | ENI HELICOPTERS INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1496 | Oilfield Services | 565752_Master Services Agreement dated effective 11/01/2013 | SHAMROCK ENERGY SOLUTIONS | Fieldwood Energy LLC | n.a. | ENI HELICOPTERS INC | $0.00 | Assume and assign to Credit Bid Purchaser |

Page 44 of 54

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1497 | | Oilfield Services | HSE Training and Facility Use | SHELL EXPLORATION AND PRODUCTION COMPANY | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1498 | 8/4/1983 | Confidentiality Agreements / AMI and Related Consents | Area of Mutual Interest Agreement effective August 4, 1984 BY AND BETWEEN APACHE CORPORATION AND SHELL OFFSHORE CONTIGUOUS BLOCK TO SHELL VENTURE PROPERTY THAT MAY TRIGGER AMI RESPONSIBILITY REGARDING FUTURE PURCHASE OR BID OF TRACTS COVERING GEOLOGIC STRUCTURE COMMON TO EXISTING SHELL VENTURE PROPERTY | SHELL OFFSHORE | Fieldwood Energy LLC | SS 198 Lease 593, SS 199 Lease G12358, SS 223 G01526, SS 238 Lease G03169, SP 82 G05685, SP 83 Lease G05052, ST 276 Lease G07780, ST 295 Lease G05646, ST 296 Lease G12981 | RENAISSANCE OFFSHORE, LLC, TALOS PRODUCTION LLC; APACHE OFFSHORE INVESTMENT GP; APACHE OFFSHORE INVESTMENT GP, BRISTOW US LLC, TAMPNET INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1499 | 1/7/2004 | Confidentiality Agreements / AMI and Related Consents | Area of Mutual Interest Agreement by and between Apache Corporation and Shell Offshore et al | SHELL OFFSHORE ET AL | Fieldwood Energy LLC | SS 258, 259. APACHE WAIVED PREF RIGHT TO BUY SHELL'S RIGHTS BELOW 15,000' Lease G05044 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1500 | 8/1/2009 | Marketing - PHA | Shell Offshore Inc (Bullwinkle Owner and Operator) and Shell Offshore Inc. and Marathon Oil Company (Troika Group) and Marathon Oil Company (Droshky Owner) | Shell Offshore Inc (Bullwinkle Owner and Operator) and Shell Offshore Inc. and Marathon Oil Company (Troika Group) and Marathon Oil Company (Droshky Owner) | | GC 65 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1501 | 11/2/1987 | Property Participation & Exchange Agreements | EXCHANGE AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC AND CONOCO INC | SHELL OFFSHORE INC AND CONOCO INC | Fieldwood Energy LLC | MP 303 Lease G04253, MP 304 Lease G03339, MP 310 Lease G04126 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1502 | 8/1/2009 | Other Handling / Stabilization Agreements | Droshky Production Handling Agreement by and between Shell Offshore Inc and Marathon Oil Company dated 1 Aug 2009 including flow back agreement | Shell Offshore Inc and Marathon Oil Company | Fieldwood Energy Offshore LLC | GC 65 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1503 | 3/1/1999 | Other Handling / Stabilization Agreements | Angus Production Handling Agreement by and between Shell Offshore Inc and Shell Deepwater Development and Marathon Oil Company dated 1 March 99 | Shell Offshore Inc and Shell Deepwater Development and Marathon Oil Company dated 1 March 99 | Fieldwood Energy Offshore LLC | GC 65 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER; WILD WELL CONTROL INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1504 | 6/15/1993 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement dated effective June 15, 1993 between Shell Offshore Inc and Marathon Oil Company, as successors in interest. | Shell Offshore Inc and Marathon Oil Company, as successors in interest. | Fieldwood Energy Offshore LLC | GC 200 Lease G12210, GC 201 Lease G12209, GC 244 Lease G11043 | LLOG EXPLORATION COMPANY, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1505 | 4/1/1982 | Operating Agreement - Other | b/b Shell Offshore Inc, and Florida Exploration Company, et al | Shell Offshore Inc, and Florida Exploration Company, et al | | SS 258 Lease G05560, SS 259 Lease G05044 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1506 | 10/1/1983 | Operating Agreement - Other | b/b Shell Offshore Inc, and Florida Exploration Company, et al | Shell Offshore Inc, and Florida Exploration Company, et al | | PN 969 Lease G05953, PN 976 Lease G05954 | PEREGRINE OIL AND GAS II, LLC | $62,197.36 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1507 | 3/3/2005 | Other Handling / Stabilization Agreements | Lorien Production Handling Agreement by and between Shell Offshore Inc, Noble Energy, Inc, Hydro Gulf of Mexico, LLC and Davis Offshore, LP dated 3 March 05 and as amended 10 Dec 2006 | Shell Offshore Inc, Noble Energy, Inc, Hydro Gulf of Mexico, LLC and Davis Offshore, LP dated 3 March 05 and as amended 10 Dec 2006 | Fieldwood Energy Offshore LLC | GC 65 Lease G05889, GC 108 Lease G14668, GC 109 Lease G05900 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1508 | 1/1/2015 | Acquisition / PSA / Other Purchase or Sale Agreements | by and between Fieldwood Energy Offshore LLC and Shell Offshore Inc.: Hickory Unit - GI 110/116 | Shell Offshore Inc. | Fieldwood Energy Offshore LLC | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1509 | 11/1/1997 | Marketing - PHA | Shell Offshore Inc. (SOI) as owner and operator of GC 65 Platform and BP Exploration & Oil Inc., Marathon Oil Company, and Shell Deepwater Development Inc., successor in interest to Shell Offshore Inc. | Shell Offshore Inc. (SOI) as owner and operator of GC 65 Platform and BP Exploration & Oil Inc., Marathon Oil Company, and Shell Deepwater Development Inc., successor in interest to Shell Offshore Inc. | | GC 65 Lease G05889 | WILD WELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERA HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC, CHEVRON USA INC, W & T ENER | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1510 | 6/1/1991 | Unit Agreement and/or Unit Operating Agreement | UNIT AGREEMENT, SOUTH TIMBALIER BLOCK 295 FIELD UNIT BY AND BETWEEN SHELL OFFSHORE INC. AND APACHE CORPORATION, ET AL. | SHELL OFFSHORE INC. AND APACHE CORPORATION, ET AL. | | ST 276 Lease G07780, ST 295 Lease G05646, ST 296 Lease G12981 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1511 | 2/11/1993 | Letter Agreement - Other Land | Letter Agreement by and between Shell Offshore Inc. and BP Exploration & Oil Inc. : btw BP and Shell in Lieu of PHA with Apache, exploration area | Shell Offshore Inc. and BP Exploration & Oil Inc. | | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1512 | 3/7/2005 | Termination / Ratification and Joinder of Operating or Other Agreements | Termination of Exploration Program Agreement by and between Shell Offshore Inc. and Devon Louisiana Corporation; Apache Corporation : Termination of 01/01/1998 Exploration Program | Shell Offshore Inc. and Devon Louisiana Corporation; Apache Corporation | | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1513 | 5/7/1993 | Letter Agreement - Other Land | Letter Agmt. dated 5-7-1993 b/b Shell Offshore Inc. and Freeport McMoRan Oil and Gas Company. | Shell Offshore Inc. and Freeport McMoRan Oil and Gas Company. | Fieldwood Energy Offshore LLC | VR 332 Lease G09514 | ANKOR E&P HOLDINGS CORPORATION, CANNAT ENERGY INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 1514 | 1/1/1998 | Joint Development / Venture / Exploration Agreements | Exploration Program Agreement by and between Shell Offshore Inc. and Ocean Energy Inc. : Exploration Program Agreement Shell ID prospects Ocean to Participate | Shell Offshore Inc. and Ocean Energy Inc. | | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1515 | 6/1/1993 | Farmout Agreement | Farmout Agmt. eff. 6-1-1993 b/b Shell Offshore Inc. and Samedan Oil Coporation. | Shell Offshore Inc. and Samedan Oil Coporation | Fieldwood Energy Offshore LLC | VR 332 Lease G09514 | ANKOR E&P HOLDINGS CORPORATION, CANNAT ENERGY INC. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | x | |
| 1516 | 4/1/1998 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. | SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. | Fieldwood Energy Offshore LLC | VK 780 Lease G06884, VK 824 Lease G15436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1517 | 12/18/1997 | Property Participation & Exchange Agreements | PARTICIPATION AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC. | SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC. | Fieldwood Energy LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1518 | 12/1/2006 | Farmout Agreement | Droshky Farmout Agreement dated effective December 1, 2006 between Shell Offshore Inc. and Marathon Oil Company designating Marathon Oil Company as operator of GC 244 16,000' TVDSS to 24,000' TVDSS | Shell Offshore Inc. and Marathon Oil Company designating Marathon Oil Company as operator of GC 244 16,000' TVDSS to 24,000' TVDSS | Fieldwood Energy Offshore LLC | GC 244 Lease G11043 | RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1519 | 9/25/1997 | Operating Agreement - Other | b/b Shell Offshore Inc. andf Barrett Resources Corporation | Shell Offshore Inc. andf Barrett Resources Corporation | | HI A545 Lease G17199 | TALOS ERT LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1520 | 4/8/2010 | Letter Agreement - UOA | Letter Agreement, dated 4/8/2010 between Shell Offshore Inc., Apache Corporation and Nippon Oil Exploration U.S.A. Limited amending the Unit Operating Agreement, dated March 1, 1998. | Shell Offshore Inc., Apache Corporation and Nippon Oil Exploration U.S.A. Limited amending the Unit Operating Agreement, dated March 1, 1998. | Fieldwood Energy Offshore LLC | GI 110 Lease G13943, GI 116 Lease G13944 | W & T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1521 | 12/15/1989 | Farmout Agreement | FARMOUT AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC., ET AL. AND CNG PRODUCING COMPANY | SHELL OFFSHORE INC., ET AL. AND CNG PRODUCING COMPANY | Fieldwood Energy LLC | ST 276 Lease G07780 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1522 | 2/1/1998 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC | SHELL OFFSHORE, INC, OPERATOR. AND WESTPORT OIL & GAS COMPANY, INC | Fieldwood Energy LLC; Fieldwood Energy Offshore LLC | MC 110 Lease G18192 | MARUBENI OIL & GAS (USA) LLC, TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1523 | 4/1/1998 | Joint Development / Venture / Exploration Agreements | JOINT VENTURE AGREEMENT - SPECTER PROSPECT DATED APRIL 1, 1998 BY AND BETWEEN SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL., as amended. | SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL. | Fieldwood Energy Offshore LLC | VK 780 Lease G06884, VK 824 Lease G15436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1524 | 11/5/1998 | Joint Development / Venture / Exploration Agreements | ADDENDUM TO JOINT VENTURE AGREEMENT DATED NOVEMBER 5, 1998, BY AND BETWEEN SHELL OFSSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. | SHELL OFSSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. | Fieldwood Energy Offshore LLC | VK 780 Lease G06884, VK 824 Lease G15436 | ENERGY XXI GOM LLC, MARUBENI OIL & GAS (USA) LLC, TOTAL E & P USA INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1525 | 12/1/1979 | Operating Agreement - Other | OFFSHORE OPERATING AGREEMENT b/b SHELL OIL COMPANYand FLORIDA EXPLORATION COMPANY, ET AL | SHELL OIL COMPANYand FLORIDA EXPLORATION COMPANY, ET AL | Fieldwood Energy LLC | SS 189 Lease G04232 | CASTEX OFFSHORE INC, WALTER OIL & GAS CORPORATION, WALTER OIL & GAS CORPORATION, BRISTOW US LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1526 | 6/1/2021 | Surface Lease | SHELL PIPELINE | SHELL PIPELINE | | MP 69 /Perez Family Surface Lease | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy, LLC, et al.
Prepared May 25, 2021

## Schedule of Assumed Contracts

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.

[2] Associated Leases represents the oil and gas leases that are associated with or related to the same underlying schedules below. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which our Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.

[3] Cure Amounts represent the oil and gas leases that are associated with or related to the same underlying contract.

[4] Retained Lease Parties represents the non-Debtor parties that will be assigned the contracts listed below in accordance with the Plan.

[5] All amounts are based on the Debtors' books and records. Cure estimates are adjusted to zero for completed/trade agreements.

[6] Proposed treatment set forth on this Schedule of Assumed Contracts reflects the Debtors' current expectations of the treatment of such contracts. In the event of any conflict between any of the Definitive Documents reflecting the treatment in this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entity | Associated Lease [2] | Retained Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW | Credit Bid Purchaser | FW II | FW III |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1527 | 7/7/1999 | Marketing, Construction, Operations, Management, Ownership Agreements | Small Pipeline a contract operator - Fieldwood Energy LLC has ownership along with various other owners including shell. | Shell Pipeline | Fieldwood Energy LLC | GC 965 Lease G05069 | FIELDWELL CONTROL INC, DEEPWATER ABANDONMENT ALTERNATIVES INC, MARUBENI OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERIN HELICOPTERS INC, MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, QUEXCROW LLC, SHC OIL & GAS | | | x | | | |
| 1528 | | Oilfield Services | 2018 Steven Offshore Services LLC - Platform Removal Contract | SHORE OFFSHORE SERVICE LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | |
| 1529 | | Oilfield Services | 777955_Master Services Agreement dated effective 01/22/2019 | SIGMA ENGINEERING CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1530 | | Oilfield Services | Master Services Agreement dated effective 03/07/2019 | Skoflo Industries, Inc. | Fieldwood Energy LLC | n.a. | n.a. | $30,460.96 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1531 | | Oilfield Services | 777902_PO Terms & Conditions dated effective 10/10/2019 | SKYSPECIAL OIL & GAS SERVICES, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1532 | 7/21/2016 | Oilfield Services | MMTI, LMC Work Area, Drilling Tools, Fishing Services | SMITH INTERNATIONAL, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1533 | 7/21/2016 | Non-Oilfield Services | State Agreement (Field) | SOLIX | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1534 | | Oilfield Services | Gathering Services & Personnel (Cooks, Galleyhands, Etc.) | SONVIXO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1535 | 5/31/2019 | Non-Oilfield Services | Consulting Agreement | SOREAP LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1536 | | Non-Oilfield Services | Consulting Agreements | SOREAP LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1537 | 8/1/1994 | Operating Agreement - Other | OPERATION AND MAINTENANCE OF MEASUREMENT FACILITIES GRAND BAY RECEIVING STATION BETWEEN SOUTHERN NATURAL GAS COMPANY AND PENZOIL PETROLEUM COMPANY | SOUTHERN NATURAL GAS COMPANY AND PENZOIL PETROLEUM COMPANY | Fieldwood Energy LLC | MP 140 Lease G02780 | JX NIPPON OIL EXPLORATION USA LTD | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1538 | | Oilfield Services | (Spartan Drilling Contract dated 1-3-2012 | SPARTAN OFFSHORE DRILLING, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1539 | | Oilfield Services | 701182_Master Services Agreement dated effective 09/16/2016 | SPECIALTY RTP LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1540 | | Oilfield Services | Water Analyzers | SPECTRO SCIENTIFIC, INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1541 | 1/1/2000 | Unit Agreement and/or Unit Operating Agreement | VIOLET MFP UNIT AGREEMENT DATED JANUARY 1, 2000, BY AND BETWEEN SPINAKER EXPLORATION COMPANY L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND SPINAKER EXPLORATION COMPANY | VIOLET MFP UNIT AGREEMENT DATED JANUARY 1, 2000, BY AND BETWEEN SPINAKER EXPLORATION COMPANY L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND SPINAKER EXPLORATION COMPANY | Fieldwood Energy Offshore LLC | GA 210 Lease G25824 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1542 | 12/12/2004 | Operating Agreement - Other | 98 SPN and Arena as amended by Amendment and Supplement to Evaluation Agreement dated November 3, 2004 and Supplement to Evaluation Agreement dated December 13, 2004, Extension Request dated November 3, 2004, and Assignment Agreement and Amendment to Operating Agreements dated May 8, 2006 | SPN and Arena | Fieldwood Energy Offshore LLC | WD 57 Lease G01449, WD 70/80 Lease G01674, WD 80 Lease G01960, WD 80/s Lease G04899, WD 80 Lease G02804 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1543 | 11/30/2004 | Amendment and Supplement to Evaluation Agreement | 98 SPN and Arena | SPN and Arena | Fieldwood Energy Offshore LLC | WD 57 Lease G01449, WD 70/80 Lease G01674, WD 80 Lease G01960, WD 80 Lease G04899 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | |
| 1544 | 12/13/2004 | Amendment and Supplement to Evaluation Agreement | 98 SPN and Arena | SPN and Arena | Fieldwood Energy Offshore LLC | WD 57 Lease G01449, WD 70/80 Lease G01674, WD 80 Lease G01960, WD 80/s Lease G04899 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | |
| 1545 | 5/6/2006 | Operating Agreement - Other | 98 SPN and Arena | SPN and Arena | Fieldwood Energy Offshore LLC | WD 57 Lease G01449, WD 70/80 Lease G01674, WD 80 Lease G01960, WD 80/s Lease G04899, WD 80 Lease G02804 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | |
| 1546 | 11/3/2004 | Evaluation Agreement | 98 SPN and Arena | SPN and Arena | Fieldwood Energy Offshore LLC | WD 57 Lease G01449, WD 70/80 Lease G01674, WD 80 Lease G01960, WD 80/s Lease G04899, WD 80 Lease G02804 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | |
| 1547 | 12/27/2001 | Purchase Agreement & Exchange Agreement | 98 SPN and Arena | SPN and Arena | Fieldwood Energy Offshore LLC | WD 57 Lease G01449, WD 70/80 Lease G01674, WD 80 Lease G01960, WD 80/s Lease G04899, EI 100 Lease 736 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | |
| 1548 | | Oilfield Services | 98 SPN and Arena | SPN and Arena | Fieldwood Energy Offshore LLC | WD 57 Lease G01449, WD 70/80 Lease G01674, WD 80/s Lease G04899, WD 80 Lease G02804 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | | | | |
| 1549 | | Oilfield Services | Software at Grand Chenier Separating Facility (Hendersons West) | STANDARD AUTOMATION & CONTROL, LP | Fieldwood Energy Offshore LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 1550 | 6/13/2013 | West Lease Transfer Agreement | Lease Extension and Amendment State Lease No. 19716 by and between State Mineral Board and Dynamic Offshore Resources, LLC (LLOG) and Energy, LLC, LLC/Oil Exploration Company L.L.C. | State Mineral Board and Dynamic Offshore Resources, LLC (LLOG) Bluewater Holdings, L.L.C. / LLOG Exploration Company L.L.C. | Fieldwood Energy LLC | SR 25 Lease 19716 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 1551 | 9/18/1975 | Right of Way | ST OF LA ROW 1564 | STATE OF LA | Fieldwood Energy LLC | SP 8 & 7 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1552 | 6/28/2007 | Water Bottom Contracts | STATE OF LA WATER BOTTOM LEASE #676 | STATE OF LA | Fieldwood Energy LLC | BURRWOOD TSP 42-43 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1553 | 10/17/2007 | Surface Lease | ST OF LA NO 3011 | STATE OF LA | Fieldwood Energy LLC | BURRWOOD | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1554 | 6/17/2014 | Assignment of Oil & Gas Leasehold Interests | Assignment agreement dated 17 Jun 14 by and between Stand Oil of Mexico LLC and Noble Energy, Inc. - Phoenix Exploration Company L.P. et. al. | Stand Oil of Mexico LLC and Noble Energy, Inc. - Phoenix Exploration Company L.P. et. al. | Fieldwood Energy LLC | EW 798 Lease G13140 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1555 | 3/1/2014 | Letter Agreement - Other Land | Letter Agreement dated effective March 1, 2014 by and between Stand Oil of Mexico LLC, Noble Energy, Inc., Phoenix Exploration Company L.P., Byron Energy, Inc., et al | Stand Oil of Mexico LLC, Noble Energy, Inc., Phoenix Exploration Company L.P., Byron Energy, Inc., et al | Fieldwood Energy LLC | GC 40 Lease G24539, GC 41 Lease G24537, SW 1009 Lease G34878, EW 1010 Lease G34879, EW 1011 Lease G34880 | ILX PROSPECT KAIKIAS LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1556 | | Oilfield Services | Letter Agreement dated effective March 1, 2014 | STEEL ENERGY CORPORATION AND DAVID U MELOY | Fieldwood Energy LLC | MYSTIC POINT / EL NM H-03 / FW II | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1557 | 4/7/2008 | Surface Lease | STERLING SUGARS LLC | STERLING SUGARS LLC | Fieldwood Energy LLC | n.a., n.a., n.a., n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1558 | | Oilfield Services | Threaded | STEWART TUBULAR PRODUCTS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | | |
| 1559 | 2/23/2017 | Marketing - Pipeline Transport | Stingray Pipeline Agreement by and between Stingray Pipeline Company L.L.C. and Fieldwood Energy LLC | Stingray Pipeline Company L.L.C. and Fieldwood Energy LLC | Fieldwood Energy LLC | GI 90 Lease G00777 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser (pursuant to the Plan and the Definitive Documents) and/or Credit Bid Purchaser (solely on account of the Acquired Interests and/or subject to/a) (solely on account of the Excluded Interests) to be allocated pursuant to the Divisive Mergers | | | | |
| 1560 | | Oilfield Services | 900187_MSA dated effective 11/01/2013; Master Services Agreement dated effective 01/01/2016 | STOKES & SPREULLER OFFSHORE INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 1561 | 9/5/2015 | Performance Bond & Supplemental Bonding | by and between Fieldwood Energy LLC and Stone Energy Corporation (SBD acquisition) | STONE ENERGY CORP | Fieldwood Energy LLC | WC 108 Lease G00777 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 1562 | 6/29/2004 | Letter Agreement - Other Land | LETTER AGREEMENT DATED JUNE 29, 2004 BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY | STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY | Fieldwood Energy LLC | WC 341 Lease G33250, VK 25 Lease G02903, WC 29, WC 66 Lease G00590, VK 14 Lease G27305, VK 29, WC 66 Lease G02806, WC 67 Lease G02829, WC 65 Lease G02826, WC 66 Lease G02806 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 1563 | 3/24/2015 | Letter Agreement - Other Land | LETTER AGREEMENT DATED 03 MARCH 24,1999 EFF AND BETWEEN STONE ENERGY CORPORATION AND DAVID U MELOY | STONE ENERGY CORPORATION AND DAVID U MELOY | Fieldwood Energy LLC | WC 84 Lease G02876, WC 66 Lease G00590, WC 85 Lease G02825, WC 66 Lease G02826, WC 67 Lease G02829 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 1564 | 7/13/1994 | Letter Agreement - Other Land | LETTER AGREEMENT DATED JULY 13, 1994 BY AND BETWEEN STONE ENERGY CORPORATION AND GOM SHELF LLC ET. AL | STONE ENERGY CORPORATION AND GOM SHELF LLC, ET AL | Fieldwood Energy LLC | WC 84 Lease G02876, WC 85 Lease G02825, WC 66 Lease G00590, WC 66 Lease G02826 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 1565 | 4/4/2006 | Joint Operating Agreement | STONE ENERGY CORPORATION AND MELOY | STONE ENERGY CORPORATION AND MELOY | Fieldwood Energy LLC | SB 198 Lease 8833, SB 198 Lease G02326 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 1566 | 1/15/2014 | Joint Operating Agreement | STONE ENERGY CORPORATION AND GOM SHELF LLC, ET AL | STONE ENERGY CORPORATION AND GOM SHELF LLC, ET AL | Fieldwood Energy LLC | n.a. | RENAISSANCE OFFSHORE LLC, TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | x | x | |
| 1567 | 2/2/2014 | Well / Prospect Proposals | Gilligan & Bingo: Stone replacing extension and Fieldwood's Agreement | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | WC 66 Lease G00590 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 1568 | 3/24/2015 | Well / Prospect Proposals | Gilligan & Bingo: Stone replacing extension and Fieldwood's Agreement | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | WC 65 Lease G21742 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |
| 1569 | 3/24/2015 | Well / Prospect Proposals | Gilligan & Bingo: Stone replacing extension and Fieldwood's Agreement | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | WC 65 Lease G21742 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | |

Fieldwood Energy, LLC, et al.
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The various contracts have been set forth on this schedule based on the Debtors' review of the agreements. To the extent the Debtors are able to identify the proper Debtor and/or its affiliate(s) as a party to the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated Leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related Leases & Parties represent the oil and gas leases, as applicable, and related parties to such leases.
[5] Cure Estimate reflects certain estimated amounts based on the Debtors' books and records as of a certain date.
[6] All estimates based upon current prepetition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
Fieldwood Energy, LLC or one of its Debtor affiliates (the "Debtors") reserve all rights with respect to the contracts/leases listed herein. The Proposed Treatment of Assumed contracts reflects the Debtors' current intention, which may be subject to change. Under the Plan, "Debtor" (including any exhibits and schedules thereto, and as may be further amended, supplemented, or modified, the "Plan"), Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is not binding on the Debtors and is subject to change. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

*Table spans many columns; representative column headers and selected field values follow. Full row-by-row data is a wide multi-column matrix.*

| # | Contract Effective Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Leases & Parties [4] | Cure Estimate [5][6] | Proposed Treatment of Assumed Contract |
|---|---|---|---|---|---|---|---|---|---|
| 1570 | 3/26/2019 | Well / Prospect Proposals | Proposal Amendment and various requests for extension from Stone Energy Offshore, L.L.C. | Stone Energy Offshore, L.L.C. | Fieldwood Energy LLC | WC 65 Lease G21742 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1571 | 1/30/2014 | Well / Prospect Proposals | Gilligan & Bingo: Stone offering of prospects to Fieldwood (Fieldwood election 3/26/2014) | Gilligan & Bingo: Stone maprcship extension and Fieldwood's election | Fieldwood Energy LLC | WC 106 Lease G06777 | TALOS PRODUCTION LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1572 | 2/5/2014 | Well / Prospect Proposals | Gilligan & Bingo: Stone maprcship extension and Fieldwood's election | Gilligan & Bingo: Stone maprcship extension and Fieldwood's election | Fieldwood Energy LLC | WC 106 Lease G06777 | TALOS PRODUCTION LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1573 | 3/24/2014 | Well / Prospect Proposals | Gilligan & Bingo: Stone maprcship extension and Fieldwood's election | Gilligan & Bingo: Stone maprcship extension and Fieldwood's election | Fieldwood Energy LLC | WC 106 Lease G06777 | TALOS PRODUCTION LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1574 | 9/6/2019 | Performance Bond & Supplemental Bonding Agreement | Indemnity between Fieldwood Energy LLC, SEO A LLC, Stone Energy Corporation and Stone Energy Offshore, L.L.C. Fieldwood will apply own Sign Net Loss Coverage | Stone Energy Offshore, L.L.C. / Stone Energy Corporation; SEO A LLC | Fieldwood Energy LLC | WC 106 Lease G06777 | TALOS PRODUCTION LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1575 | | Oilfield Services | Core Sample / Fluid Sample Analysis | STRATUM RESERVOIR (STRATUM, LLC) 2020 | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1576 | | Oilfield Services | Master Services Contract dated February 1, 2020 | STRATUM RESERVOIR LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1577 | | Oilfield Services | MSA and Grant Financial Approval Letter (US for PO 25323 only) | STRESS ENGINEERING SERVICES, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1578 | | Oilfield Services | Master Agreement For the Provision of Marine Construction Services dated effective 05/05/2016 | Subsea 7 (US) LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1579 | | Oilfield Services | Master Agreement For the Provision of Marine Construction Services dated effective May 20, 2016 | Subsea 7 (US) LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1580 | | Oilfield Services | Master Service Agreement (BPXC) dated May 20, 2019 | SUBSEA 7 US LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1581 | | Oilfield Services | 7777RL Master Services Agreement dated effective 11/15/2018 | SUBSEA SOLUTIONS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1582 | | Oilfield Services | Marine Construction Services Agreement dated effective May 20th 2019 | SUBSEA 7 TECH US INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1583 | 12/17/2019 | Non-Oilfield Services | Consulting Agreement | SULLEXIS, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1584 | | Oilfield Services | Specialty Fluids | SUN DRILLING PRODUCTS CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1585 | | Oilfield Services | 510044_Master Services Agreement dated effective 12/01/2013 | SUPERIOR ENERGY SERVICES LLC | Fieldwood Energy LLC | GIBBSTOWN | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1586 | | Oilfield Services | Venture Contractor Services (CT Units, GP Tools, Rental Equip., Thruster Services, Wireline, etc) | SUPERIOR ENERGY SERVICES LLC | Fieldwood Energy LLC | EC 265 Lease G00972 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1587 | 1/31/2010 | Acquisition / PSA / Other Purchase or Sale Agreements | Purchase and Sale Agreement, dated January 31, 2010, by and between Apache Corporation, Mariner Energy, Inc., Mariner Energy Resources, Inc., et al. | Superior Energy Services, Inc.; Wild Well Control, Inc. | Fieldwood Energy Offshore LLC | n.a. | WILD WELL CONTROL, INC./DEEPWATER ABANDONMENT ALTERNATIVES, INC.; SHERIDAN PRODUCTION, LLC; WALTER OIL & GAS CORPORATION; RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE, LLC; TANA ENERGY OPERATING, LLC; SANTA FE SNYDER OIL CORPORATION; W & T ENERGY | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1588 | | Oilfield Services | Grating & Handrail Pipe, Valves and Fittings | SUPERIOR SUPPLY & STEEL | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1589 | | Oilfield Services | Wellheads | SUPER FIELD SYSTEMS/CAMERON | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1590 | | Oilfield Services | 7777RL / PO Terms & Conditions dated effective 04/01/2019 | SWAGELOK LOUISIANA | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1591 | 9/27/2013 | Surface Lease | SWEET LAKE LAND & OIL CO | SWEET LAKE LAND & OIL CO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1592 | | Oilfield Services | stop loss insurance | Symetra, Partner re | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1593 | 12/4/1989 | Operating Agreement | Operating Agreement eff. 12/4/89 | Talos Energy Offshore | Fieldwood Energy LLC | EC 265 Lease G00972 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1594 | 11/21/2019 | Letter Agreement - Other Land | Letter Agreement SS 198 J-11 Well zone eff. zone shift recommendation, dated November 21, 2019 | Talos Energy Offshore LLC / Renaissance Offshore, LLC | Fieldwood Energy LLC | SS 198 Lease 593 | RENAISSANCE OFFSHORE, LLC; TALOS PRODUCTION LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1595 | 10/18/2018 | Abandonment / Decommissioning Agreement | GOM Shelf Offshore LLC and Renaissance Offshore LLC and Offshore Operating, LLC dated 11/1/2002 | GOM Shelf LLC | Fieldwood Energy LLC | SP 89 Lease G01616 | TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1596 | | Oilfield Services | 504073_Master Services Agreement dated effective 02/13/2014 | Talos ENT, LLC; Tana Louisiana Land and Exploration Company LLC; Mariann Oil & Gas (USA) LLC | Fieldwood Energy LLC | n.a. | TALOS ENT, LLC; THE LOUISIANA LAND & EXPL CO LLC; DYNAMIC ENERGY PARTNERS, LLC; Talos Energy Partners, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1597 | | Oilfield Services | Communication for LBI Man-O-War (FMA) | FABFINET INC. | Fieldwood Energy LLC | EC 315 lease G24912 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1598 | 12/16/2013 | Joint Operating Agreement | TANA EXPLORATION COMPANY LLC AND APACHE CORPORATION | TANA EXPLORATION COMPANY LLC AND APACHE CORPORATION | Fieldwood Energy LLC | BS 25 Lease 197 & BS 25 Lease G24912 | ARENA ENERGY LP.*, TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1599 | 8/13/2012 | Property Participation & Exchange Agreements | Participation Agreement by and between Tana Exploration Company, LLC and Dynamic Offshore Resources, LLC dated August 13, 2012 | Tana Exploration Company LLC and Dynamic Offshore Resources, LLC | Fieldwood Energy LLC | BS 25 Lease 197 & BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1600 | 6/6/2013 | Elections | BS No. 1 Well Election Consortium Letter by and between Tana Exploration Company LLC and Dynamic Offshore Resources, LLC dated June 6, 2013 | Tana Exploration Company LLC and Dynamic Offshore Resources, LLC | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1601 | 6/3/2013 | Other Misc. | Amendment No. 1 to Offshore Operating Agreement, by and between Water Oil & Gas Corporation - Tana drilled well No. 1 Brazos Lease | Tana Exploration Company LLC and Dynamic Offshore Resources, LLC; Water Oil & Gas Corporation | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1602 | 12/7/2017 | Termination / Ratification and Joinder of Operating or Other Agreements | Termination of Ratification and Joinder of Operating Agreement by and between Tana Exploration Company, L.L.C. and Dynamic Offshore Resources, LLC (Abandon Holdings, L.L.C.) | Tana Exploration Company LLC and Dynamic Offshore Resources, LLC | Fieldwood Energy LLC | BS 25 Lease 197 & BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1603 | 8/21/2013 | Termination / Ratification and Joinder of Operating or Other Agreements | Ratification and Joinder of Offshore Operating Agreement by and between Tana Exploration Company LLC and LLOG Exploration Offshore, L.L.C.; LLOG Exploration Company L.L.C. and LLOG Exploration | Tana Exploration Company LLC and LLOG Exploration Offshore, L.L.C.; LLOG Exploration Company L.L.C. and LLOG Exploration | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1604 | 8/21/2013 | Operating Agreement - Other | Amendment No. 1 to Offshore Operating Agreement by and between Tana Exploration Company LLC and Water Oil & Gas Corporation; LLOG Exploration Company LLC and LLOG Exploration Offshore, LLC; Bluewater Holdings, L.L.C.; Dynamic Offshore Resources, LLC | Tana Exploration Company LLC and Water Oil & Gas Corporation | Fieldwood Energy LLC | BS 25 Lease G31442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1605 | | Other | SanSaver | SanSaver | Fieldwood Energy LLC | ST 313 Lease G02008 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1606 | | Other | | T&B FABRICATION, INC | Fieldwood Energy LLC | | | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1607 | | Oilfield Services | telemedicine | Teladoc | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1608 | | Oilfield Services | Hazard Surveys and Vessel Positioning (Purchase) Tesla | TELESIS GEOPHYSICAL SERVICES, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1609 | | Oilfield Services | 500360_Master_Services_Contract dated effective 01/13/20 | TOWER GLOBAL SERVICES USA CORP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1610 | | Oilfield Services | 501430_Master Services Agreement dated effective 11/16/2013 | TETRA APPLIED TECHNOLOGIES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1611 | 5/30/1999 | Property Participation & Exchange Agreements | by and between Texaco Exploration and Production Inc. and Arona Energy Corporation dated May 30, 1999 | TexacO Exploration and Production Inc. and Arona Energy Corporation | Fieldwood Energy Offshore LLC | EI 313 Lease G02008 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1612 | 5/1/1991 | Operating Agreement | Operating Agreement eff. 5/1/91 | Texaco Exploration and Production Inc. and Arona Energy Corporation | Fieldwood Energy LLC | SS 254 Lease G01520, SS 207 Lease G01523, SS 215 Lease G01524 | EPL OIL & GAS, LLC, KINETICA DEEPWATER EXPRESS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1613 | 3/13/1968 | Joint Operating Agreement | AMENDMENT TO OPERATING AND UNIT AGREEMENT DATED MARCH 13, 1968, BY AND BETWEEN TEXACO, INC. AND OTHERS FOR OIL AND GAS PRODUCTION AND PRODUCTION AND AND VASTAR RESOURCES, INC. | TEXACO EXPLORATION AND PRODUCTION AND VASTAR RESOURCES, INC | Fieldwood Energy Offshore LLC | WC 341 Lease G02251, WC 35 Lease G02819, WC 35, WC 66 Lease G02660, WC 66 Lease G02659 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |

Page # of 54

**Fieldwood Energy, LLC, et al.**
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review and reconcile the contracts listed on this schedule against their books and records. The inclusion of any contract on this schedule does not constitute an admission as to the executory or non-executory nature of such contract, or the validity of any contract.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contracts.
[4] Related lease party/ies represents the current lessor/lessee record owner of the associated lease and/or operating interest.
[5] Cure estimates based on cure prepetition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Parties are hereby also provided notice that in Debtors' Fourth Amended Joint Plan of Fieldwood Energy LLC and its Affiliated Debtors (Docket No. 1042), including any exhibits and schedules thereto and as it may be further amended, supplemented, or modified (the "Plan"), Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Definitive Document and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Proposed Assumed Treatment [5] | Cure Estimate | Credit Bid Purchaser | FW | FWI | FW II |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1614 | 5/7/1991 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC., MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST INC. | Texaco Exploration and Production Inc.; Mobil Oil Exploration & Producing Southeast Inc.; Hunt Oil Company; The George R. Brown Partnership; Torch Energy Advisors Incorporated; Torch Operating Company; Nippon Oil Exploration U.S.A. Limited | Fieldwood Energy LLC | SM 281 Lease G02930 | NP GULF OF MEXICO, LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | x | | | |
| 1615 | 6/15/2001 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC, MARATHON OIL COMPANY | Texaco Exploration and Production Inc.; Marathon Oil Company | Fieldwood Energy LLC | SM 281 Lease G14456; SM 281 Lease G02930 | n.a. | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | x | | | |
| 1616 | 8/27/2003 | Marketing - Connection Agreement | INTERCONNECT AGREEMENT FOR SP 87 | TEXAS EASTERN TRANSMISSION CORPORATION; MARATHON OIL COMPANY | Fieldwood Energy LLC | SP 87 Lease G07799 | TALOS ERT LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | x | | | |
| 1617 | 2/16/2010 | Marketing - Connection Agreement | Interconnect and Reimbursement Agreement | TEXAS EASTERN TRANSMISSION, LP; PHOENIX EXPLORATION COMPANY LP; PEREGRINE OIL AND GAS II, LLC; CHALLENGER MINERALS INC. | Fieldwood Energy LLC | CA 43 Lease G32298 | CANTIUM OFFSHORE INC., PEREGRINE OIL AND GAS II LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | | x | | |
| 1618 | | Oilfield Services | Provides Superbacks of Cement | TEXAS LEHIGH CEMENT COMPANY LP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1619 | 10/6/2004 | Other Misc. | 700478_Master_Service_Contract Effective_2/2-28-2014 | TEXAS MARINE SHIPYARD LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1620 | 10/10/2018 | Non-Oilfield Services | Consulting Agreement | TH1, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1621 | | Oilfield Services | Skidline / Speed Hole Bailers | THE CAVINS CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1622 | 10/12/2016 | Non-Oilfield Services | Services Agreement | THE GUARDIAN LIFE INSURANCE COMPANY | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1623 | 1/1/2017 | Non-Oilfield Services | Insurance Policy | THE GUARDIAN LIFE INSURANCE COMPANY | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1624 | 10/6/2004 | Other Misc. | LETTER OF INTENT DATED OCTOBER 6, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | Fieldwood Energy Offshore LLC | GA 215 Lease G25524 | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1625 | 10/7/2004 | Joint Development / Venture / Exploration Agreement | EXPLORATION AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. | Fieldwood Energy Offshore LLC | GA 215 Lease G25524 | n.a. | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | x | | | |
| 1626 | 2/22/2007 | Farmout Agreement | Farmout (Physical Letter Agreement) between The Houston Exploration Company and Noble Energy Inc. | The Houston Exploration Company and Noble Energy Inc. 2222006 | Fieldwood Energy LLC | VR 405 Lease G15212 | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1627 | 12/1/2016 | Other | Sublease - One Briar Lake Plaza-Suite 320 | THE LUBRIZOL CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $1,858.36 | x | | | |
| 1628 | 2/11/1994 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement For Outer Continental Shelf Exploration, Development and Production Operations on the Minerva Prospect designated Contract No. 754384013, by the Minerals Management Service, dated effective February 11, 1994, executed by Exxon Oil Corporation (as Unit Operator) and Chevron U.S.A. Inc. | The Minerals Management Service, Exxon Oil Corporation and Chevron U.S.A. Inc. | Fieldwood Energy LLC | VK 251 Lease G10936; VK 340 Lease G10853 | Williams Field Services | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1629 | | Oilfield Services | Mud Logging | THE MUDLOGGING COMPANY USA LP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1630 | | Oilfield Services | 504781_Master Services Agreement dated effective 11/01/2013 | THE NACHER CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1631 | | Oilfield Services | Drill Pipe, Downhole Tools, Other Rental Tools | THOMAS TOOLS | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1632 | 1/30/2019 | Oilfield Services | Subscription Agreement | TIBCO SOFTWARE, INC. | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1633 | | Non-Oilfield Services | Filter Media | TIMBALIER SALES & RENTAL INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1634 | | Oilfield Services | 566912_Master Services Agreement dated effective 05/11/2017 | TIMKEN GEARS & SERVICES INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1635 | 9/10/2019 | Non-Oilfield Services | Consulting Agreement | TORAM SUBSEA INC. | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1636 | 10/1/1991 | Farmout Agreement | PO and Operating Agreement dated 10/1/91 between Torch Energy Advisors Inc. and Hall-Houston Oil Company | Torch Energy Advisors Inc. and Hall-Houston Oil Company | Fieldwood Energy LLC | SS 291 Lease G02923 | n.a. | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | x | | | |
| 1637 | 5/26/2009 | Marketing - Connection Agreement | CONNECTION AGREEMENT INSTALLATION OF FACILITIES | TOTAL E&P USA, INC., STONE ENERGY OFFSHORE LLC | Fieldwood Energy Offshore LLC | MC 109 Lease G09777 | TALOS PRODUCTION LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | | x | | |
| 1638 | | Oilfield Services | Daily Operating Supplies | TOTAL PRODUCTION SUPPLY, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1639 | | Oilfield Services | 501635_Master Services Agreement dated effective 07/01/2014 | TOTAL SAFETY U.S. INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1640 | 12/20/2018 | Other Misc. | Ioy and Interconnect Fieldwood Energy LLC and TR Offshore, L.L.C. Contract (station of Contract and Ratification) Agreement | TR Offshore, L.L.C. | Fieldwood Energy LLC | MI 518 Lease SL 900221 Lease MF 95052 | n.a. | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | | x | | |
| 1641 | 1/24/1998 | Joint Operating Agreement | Operating Agreement of 1-24-1997 by Transco Exploration Company, as Operator, and Freeport Oil Company, Energy Development Corporation, Pioneer Natural Resources Corporation, et al | Transco Exploration Company, as Operator and Freeport Oil Company; Energy Development Corporation; Pioneer Natural Resources Corporation, et al | Fieldwood Energy Offshore LLC | WD 341 Lease G03414 | TALOS PRODUCTION LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | | x | | |
| 1642 | 6/30/1991 | Marketing - Connection Agreement | CONNECTION AND LATERAL LINE INTERCONNECT | TRANSCONTINENTAL GAS PIPELINE CORPORATION; BP EXPLORATION INC. | Fieldwood Energy LLC | MC 109 Lease G09777 | TALOS PRODUCTION LLC | Assume and Allocate Pursuant to Divisive Mergers | $0.00 | | x | | |
| 1643 | 1/25/2008 | Letter Agreement - Operating Agreement | Letter Agreement for the Operation and Ownership Transfer of Certain South Marsh Island Block 248 Facilities, dated January 25, 2008, between Transcontinental Gas Pipeline Corporation (as Operator and Transferor), Union Oil Company of California and Forest Oil | Transcontinental Gas Pipeline Corporation; Union Oil Company of California and Forest Oil | Fieldwood Energy Offshore LLC | SM 248 Lease G01198 | Area wide | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1644 | 12/4/1998 | Joint Operating Agreement | OPERATING AGREEMENT ST 331/332, dated December 4, 1998, by and between Transtexas Gas Corporation (as Operator), et al | TRANSTEXAS GAS CORPORATION; DAVIS PETROLEUM CORP | Fieldwood Offshore LLC | ST 331/332; EAGLE BAY ST 329 #1; SAN LEON GAS UNIT | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1645 | 2/20/2008 | Pooling Agreement | POOLING AGREEMENT 5-3-2007 by and between Transtexas Gas Corporation, Davis Petroleum Corp and General Land Office of Texas | Transtexas Gas Corporation; Davis Petroleum Corp and General Land Office of Texas | Fieldwood Onshore LLC | SAN LEON GAS UNIT NO. 1 | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1646 | 10/3/2020 | Non-O&G Real Property Lease / Rental / Sublease Agreements | COVID-19 Testing facilities. Monthly agreement between Fieldwood and Trend Services | Trend Services | Fieldwood Energy LLC | Total Area Work Ticket & Furniture - 3 Locations | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1647 | | Oilfield Services | 700574_Master Services Agreement effective 09/22/2015 | TRENDSETTER ENGINEERING INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1648 | 4/1/2011 | Other Service Agreements | Response Protective Agreement Utilization Agreement | Trendsetter Subsea International LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1649 | 4/16/2011 | Oilfield Services | Well Protection Agreement | TRI-STAR PROTECTOR SVG CO | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1650 | | Oilfield Services | Primary_Cleaning / Confined Space Entry Crews, Clean Out Crews | TRUDSCO, INC. | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |
| 1651 | | Oilfield Services | 504782_Master Services Agreement dated effective 09/27/20 | TRUSTED COMPLIANCE, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 | x | | | |

Case 20-33948   Document 1394-1   Filed in TXSB on 05/26/21   Page 126 of 678

**Fieldwood Energy, LLC, et al.**
**Prepared May 26, 2021**

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors reserve all rights with respect to the proper Debtor entity for the contracts listed on this schedule. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the relevant oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lessees or interest owners of the relevant oil and gas lease(s) associated with the relevant contract.
[5] Estimate based on cure pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed/hubs agreements.
[6] For purposes of this schedule, "Assume and Allocate Pursuant to Plan of Reorganization" or "Divisive Merger" [Opt. 1296] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Credit Bid Purchaser / FW / FW II / FW III |
|---|---|---|---|---|---|---|---|---|---|---|
| 1652 | | Oilfield Services | P&A and D Reports (Capital) | Fieldwood Energy LLC | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1653 | | Oilfield Services | Thread and Tubular Inspection | Fieldwood Energy LLC | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1654 | | Oilfield Services | 599992_Master Services Agreement dated effective 11/01/2013 | TUBULAR SOLUTIONS, INC. | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1655 | | Oilfield Services | Fieldwood Core Network Provider (SAA) | FW TELECOM HOLDINGS LLC | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1656 | 10/1/2001 | Operating Agreement - Other | Operating Agreement eff. 10-1-01 b/t Union and Forest | Union and Forest | SM 18 Lease G06680 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1657 | 10/1/2001 | Operating Agreement - Other | Operating Agreement eff. 10-1-01 b/t Union and Forest | Union and Forest | VR 383 Lease G02380 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1658 | 3/1/2001 | Joint Operating Agreement | Joint Development Agreement with Operating Agreement, dated March 1, 2001, between Union Oil Company of California, Vastar Offshore, Inc. and Penaco, Inc. | Union Oil Company of California, Vastar Offshore, Inc. and Penaco, Inc. | EB 165 Lease G02646 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1659 | 2/1/2006 | Letter Agreement - UOA | Letter Agreement, dated February 1, 2006, between UnionOil Company of California and Forest Oil, covering OCS-G 2906, South Marsh Island Block 101 wellbore | Union Oil Company of California and Forest Oil | SM 101 Lease G02906 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1660 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1 2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 137 | Union Oil Company of California and Forest Oil Corporation | SM 137 Lease G02282 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1661 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1 2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 138 | Union Oil Company of California and Forest Oil Corporation | SM 138 Lease G02359 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1662 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1 2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 135 | Union Oil Company of California and Forest Oil Corporation | SM 135 Lease G01976 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1663 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1 2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 138 | Union Oil Company of California and Forest Oil Corporation | SM 138 Lease G02359 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1664 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1 2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 137 | Union Oil Company of California and Forest Oil Corporation | SM 137 Lease G02282 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1665 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1 2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 148 | Union Oil Company of California and Forest Oil Corporation | SM 148 Lease G02092 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1666 | 10/1/2001 | Operating Agreement - Other | Joint Operating Agreement, dated effective October 1 2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 150 | Union Oil Company of California and Forest Oil Corporation | SM 150 Lease G01825 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1667 | 3/1/1979 | Joint Operating Agreement | OPERATING AGREEMENT DATED MARCH 1, 1979, BY AND BETWEEN UNION OIL COMPANY OF CALIFORNIA AND MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST INC. | Union Oil Company of California and Mobil Oil Exploration & Producing Southeast Inc. | ST 53 Lease G04300 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1668 | 1/1/2015 | Acquisition / PSA / Other Purchase or Sale Agreement | PGA Agreement (SAA4) dated effective 1/1/2015, by and between Fieldwood Energy LLC, Unocal Pipeline Company and Unocal Pipeline Company | Fieldwood Energy LLC, Unocal Pipeline Company and Unocal Pipeline Company | EB 158 Lease G02845, EB 159 Lease G02647, EB 160 Lease G02647, EB 161 Lease G02646 | Apache Deepwater LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1669 | 4/30/1993 | Letter Agreement - UOA | Agreement (VR 371/380/382) dated 4/30/1993, VR 371 UA | Fieldwood Energy LLC | VR 371 Lease G04924 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1670 | 11/1/2001 | Letter Agreement - UOA | Letter Agreement, dated October 1, 2001, between United States Department of the Interior, Minerals Management Services (Devon U.S.A. Inc., respectively the executing parties and Exhibit "C" to the Vioska Knoll 252 Unit Agreement No. 754394013, effective November 1, 2000 | United States Department of the Interior, Minerals Management Services (Devon U.S.A. Inc.) | VK 251 Lease G10930, VK 360 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1671 | 1/6/2002 | Letter Agreement - UOA | Letter, dated January 6, 2002, from the United States Department of the Interior, Minerals Management Service re approving a revision to the participating area plat and Exhibit C for Viosca Knoll 252 Unit Agreement No. 754394013, effective December 1, 2000 | United States Department of the Interior, Minerals Management Service | VK 251 Lease G10930, VK 360 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1672 | 9/28/2004 | Letter Agreement - UOA | Letter, dated May 28, 2004, from the United States Department of the Interior, Minerals Management Service re Chevron U.S.A. Inc. | United States Department of the Interior, Minerals Management Service re Chevron U.S.A. Inc. | VK 251 Lease G10930, VK 360 Lease G10933 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1673 | 1/10/2007 | Letter Agreement - UOA | Letter, dated January 10, 2007, from the United States Department of the Interior, Minerals Management Service, The Northwestern Mutual Life Insurance Company, and Mariner Energy, Inc., for the Vioska Knoll 252 Unit Agreement No. 754394013, effective December 1, 2003 | United States Department of the Interior, Minerals Management Service, The Northwestern Mutual Life Insurance Company | BA 163 Lease G01757 | Williams Field Services | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1674 | | Oilfield Services | 779543_Master_Service_Contract Effective 3/4/2020 | UNITED STATES 8-9 UNLIMITED LLC | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1675 | | Oilfield Services | Master Service Contract effective July 28, 2020 | UNITED SUBSEA SPECIALISTS LLC | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1676 | 8/1/2010 | Joint Operating Agreement | Anrit to JOA dated 8/16/2010 by and between Unocal and Union | Unocal and Union | EC 257 Lease G21580 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1677 | 5/16/2001 | Joint Operating Agreement | Unocal and Union dated 5/16/2001 but effective 2/14/2001 | Unocal and Union | EC 257 Lease G21580 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1678 | 1/1/1998 | Property Participation & Exchange Agreements | Offshore Participation Agreement, dated effective January 1 1998, between Union Oil Company of California and Pacific Enterprises Oil Company (USA), Inc. (fka BEB Gas & Oil Company), IBA 91 | Union Oil Company of California, Pacific Enterprises Oil Company (USA) | BA 163 Lease G01757 | EBA HELICOPTERS INC., FAIRNET, INC. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1679 | 10/1/1981 | Property Participation & Exchange Agreements | Operating Agreement eff. 10-1-98 b/t Vastar and Union | Vastar and Union | EB 105 Lease G09614 | VARIABLE BORE RAMS INC | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1680 | 12/15/1998 | Oilfield Services | Operating Agreement eff. 12-15-98 b/t Vastar and Union | Vastar and Union | EB 105 Lease G09614 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1681 | 11/6/2001 | Property Participation & Exchange Agreements | N/Q G2-R; R-3 T 1 that by and between Vastar Resources, Inc. and VDF Associates, LLC, dated 52 Exchange and Farmout Agreement | Vastar Resources, Inc. a part of BP America Inc., Spinnaker Exploration | G1 52 Lease 117 | APACHE SHELF EXPLORATION, LLC; BP AMERICA PRODUCTION COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | |
| 1682 | 10/29/2020 | Non-O&G Real Property Lease / Rental / Sublease Agreements | Lease agreement between Fieldwood Energy and Vector Aviation (Total Area Heliport and office trailer) Address 112 Paris Simon Loop Abbeville LA 70510 | Fieldwood Energy and Vector Aviation | n.a. | Vector Aviation | $3,699.73 | Assume and assign to Credit Bid Purchaser | |
| 1683 | 10/22/2019 | Non-Oilfield Services | Software License Agreement | VERIS GLOBAL, LLC | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1684 | 10/22/2019 | Non-Oilfield Services | Software Licensing Agreement | VERIS GLOBAL, LLC | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1685 | | Non-Oilfield Services | 777930_Master Services Agreement dated effective 06/24/2019 | VERUS GLOBAL, LLC | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1686 | | Non-Oilfield Services | Services Agreement | VERIZON WIRELESS | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |
| 1687 | | Non-Oilfield Services | 536955_Master Services Agreement dated effective 11/22/2013 | VERSABUILD LLC | n.a. | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser | |

Fieldwood Energy, LLC, et al.
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] Debtor entities represent the Debtor counterparties to the applicable Executory Contract or Unexpired Lease. To the extent the Debtors are able to identify the proper Debtor and/or the proper schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related Lease Parties represent certain lease counterparties.
[5] All estimated cure amounts listed are based on the Debtors' books and records and are subject to revision.
[6] All estimates used in open pre-petition accounts payable balances. Cure estimates are adjusted to zero for completed trade agreements.

The proposed treatment set forth on this Schedule of Assumed Contracts, and the Schedule of Assumed Contracts and the Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor(s) entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] |
|---|---|---|---|---|---|---|---|---|---|
| 1688 | | Oilfield Services | Paraffin Wax Remediation Product Vendor | VERSALID AMERICAS INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1689 | | Oilfield Services | Rigging, Derrick Barges | VERSAMARINE, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1690 | | Oilfield Services | I&E Control and Power Systems, Provides Engineering, Fabrication, Installation and Startup | VERSATECH AUTOMATION SERVICES LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1691 | | Oilfield Services | Subsea Master Services Agreement | VISCO RENEWAL & PRESSURE CONTROL LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1692 | | Oilfield Services | Provides Wellhead Equipment and Rental Tools | VETCO GRAY INC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1693 | 11/26/2013 | Non-Oilfield Services | Consulting Agreement | VIKING ENGINEERING LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1694 | | Oilfield Services | T1766A_PO Terms & Conditions dated 08/06/2017 | VIKING FABRICATORS LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and Allocate Pursuant to Purchaser |
| 1695 | | Oilfield Services | Life Raft Exchange | VIKING LIFE-SAVING EQUIPMENT AMERICA, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1696 | | Oilfield Services | T1766A_PO Terms & Conditions dated 05/26/2019 | VIM PROCESS, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1697 | | Other | Vision Service Provider | VSP | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1698 | 8/26/2014 | Facilities & Tech Agreements | Bridging Agreement dated 26 Aug 2014 by and between the Rig Owner Diamond Offshore Services, Inc., V-F Energy, LLC, Red Willow Offshore, LLC and RDV V, LLC bridging the responsibilities of the Host Operator | W & T Energy VI, LLC; Red Willow Offshore, LLC; Houston Energy Deepwater Ventures V, LLC; W&T Offshore, Inc.; LLC; Ridgewood Oakliner | Fieldwood Energy LLC | MC 691 Lease G28521; MC 695 Lease G28522; MC 738 Lease G28523 | HOUSTON ENERGY DEEPWATER VENTURES V, LLC; RED WILLOW OFFSHORE, LLC; W&T ENERGY VI, LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1699 | 4/10/1990 | Unit Agreement and/or Unit Operating Agreement | Unit No. 8910036191 - SS 32 | W & T Offshore, Inc. | Fieldwood Energy LLC | SS 30 Lease 335; SS 31 Lease 304; SS 32 Lease 335; SS 33 Lease 336 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1700 | 12/10/2019 | Other Misc. | Withdrawal Agreement | W&T Offshore, Inc. | Fieldwood Energy LLC | EC 2 Lease 18121 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1701 | | Oilfield Services | by and between Fieldwood Energy LLC and W&T Offshore, Inc. Well Purchase lease ayreement for EC 2 SL 18121 for lease transaction | W&T Offshore, Inc. | Fieldwood Energy LLC | EC 2 Lease 18121 | n.a. | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1702 | 7/8/2016 | Letter Agreement - Other Land | by and between Fieldwood Energy LLC and W&T Offshore, Inc. Letter Agreement H 129 #16 Well | W&T Offshore, Inc. | Fieldwood Energy LLC | HI 129 Lease G01948 | W & T OFFSHORE, INC.; HELIS OIL & GAS COMPANY LLC; HELIS OIL & GAS CO.; CNG PRODUCING COMPANY; MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1703 | 7/23/2016 | Operating Agreement - Other | by and between Fieldwood Energy LLC and W&T Offshore, Inc. Contract Operating Agreement - #16 well | W&T Offshore, Inc. | Fieldwood Energy LLC | HI 129 Lease G01948 | W & T OFFSHORE, INC.; HELIS OIL & GAS COMPANY LLC; HELIS OIL & GAS CO.; CNG PRODUCING COMPANY; MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1704 | 7/23/2016 | Operating Agreement - Other | by and between Fieldwood Energy LLC and W&T Offshore, Inc. Contract Operating Agreement - #16 well | W&T Offshore, Inc. | Fieldwood Energy LLC | HI 129 Lease G01948 | W & T OFFSHORE, INC.; HELIS OIL & GAS COMPANY LLC; HELIS OIL & GAS CO.; CNG PRODUCING COMPANY; MAGNUM HUNTER PRODUCTION INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1705 | 7/11/2012 | Letter Agreement - Operating Agreement | Letter Agreement Pursuant to Operating and Processing Agreement dated 06/13/1989 by and between W&T Offshore, Inc. and Dynamic Offshore Resources, LLC | W&T Offshore, Inc. and Dynamic Offshore Resources, LLC | Fieldwood Energy LLC | EW 780 Lease G33140; EW 834 Lease G27982; EW 835 Lease G34000; MC 721 Lease G34999 | W&T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1706 | 11/1/2014 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement between W&T Offshore, Inc. for EW 834 dated 1 Nov 14 as amended by that Unit amendment dated 1 April 2015 | Water and Harbors for EW 834 Unit; Water Oil & Gas Corporation | Fieldwood Energy LLC | EW 780 Lease G33140; EW 834 Lease G27982; EW 835 Lease G34000; MC 721 Lease G34999 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1707 | 4/23/2014 | Other Misc. | Subsurface to Water prior to signing Unit Agreement dated | Water Oil and Gas Corporation | Fieldwood Energy LLC | ST 270 Lease G07760 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1708 | 7/19/2005 | Property Participation & Exchange Agreements | ST 311 Participation Agreement Water & APA 2 | WALTER OIL & GAS CORPORATION | Fieldwood Energy LLC | ST 311 Lease G21618 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1709 | 7/1/2009 | Oilfield Services | ST 311 320 Offshore Operating Agreement | Water Oil & Gas Corporation | Fieldwood Energy LLC | ST 311 Lease G21618 | WALTER OIL & GAS CORPORATION; W&T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1710 | 9/13/2017 | Oilfield Services | ST 311 320 JOA Offshore Operating Agreement dated 9-13-17, as amended | Water Oil & Gas Corporation and W & T Offshore - et al | Fieldwood Energy LLC | ST 311 Lease G21618 | WALTER OIL & GAS CORPORATION; W&T OFFSHORE INC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1711 | 12/1/2011 | Property Participation & Exchange Agreements | ST 311 Participation Agreement Water & APA Lease 20-1-2011 | Water Oil & Gas Corporation, Apache, Castex | Fieldwood Energy LLC | ST 311 Lease G21618 | n.a. | $27.33 | Assume and assign to Credit Bid Purchaser |
| 1712 | 1/24/2007 | Farmout Agreement | Farmout Agreement by and between Noble Energy Inc and Walter Oil and Gas Corporation dated 15 Jan 10 as amended by (a) First Amendment dated 1 March 15 (b) Second Amendment dated 1 June 2016 (c) Third Amendment dated 1 July 16 (d) Fourth Amendment dated 1 March 17 (e) Fifth Amendment | WASTE MANAGEMENT, INC. | Fieldwood Energy LLC | EW 781 Lease G33145; EW 834 Lease G27982 | n.a. | $1,453.59 | Assume and assign to Credit Bid Purchaser |
| 1713 | | Oilfield Services | Master Services Agreement dated effective 01/01/2014 | WAVELAND SERVICES, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1714 | 12/1/2014 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement between Water and Apache VR4 South Additions as amended effective 1 June 2016 | WAVELAND GEMOCO | Fieldwood Energy LLC | EW 781 Lease G33145; EW 834 Lease G27982; EW 835 Lease G34000; EW 835 Lease G34000 | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1715 | | Oilfield Services | Gauges, Cement, Fluid Equipment | WEATHERFORD LABORATORIES, INC. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1716 | | Oilfield Services | Master Service Contract dated effective November 01, 2013 | WEATHERFORD U.S., L.P. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1717 | | Oilfield Services | Master Service Contract dated effective November 01, 2013 | WEATHERFORD U.S., L.P. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1718 | | Oilfield Services | Master Service Contract dated effective November 01, 2013 | WEATHERFORD U.S., L.P. | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1719 | 1/17/2014 | Oilfield Services | MSA - Wireline Services dated 01/17/2014 | WEBB BOARD INTERNATIONAL CORPORATION | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1720 | | Oilfield Services | MSA - Water Handling, Treatment, Tanks signed effective 11.8.16 | WELTEC INFORMATION MANAGEMENT, LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1721 | 1/3/2013 | Overriding Royalty Interest Agreement | Overriding Royalty Interest Agreement 01/3/2013 signed 2010 (1) Conveyance Assignment of ORRI 13 | WESTERN GECO, Samson Offshore | Fieldwood Energy LLC | GC 679 Lease G28111; GC 768 Lease G28117 | WESTPORT OIL AND GAS COMPANY, INC. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1722 | | Oilfield Services | Gauges, Cement, Fluid Equipment | WESTERN GECO | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1723 | | Oilfield Services | Master Service Contract dated November 1, 2020 | WESTERN OIL SUPPLY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1724 | | Oilfield Services | Master Services Agreement dated effective 11.1.16 | WGI | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1725 | 12/20/2013 | Joint Operating Agreements | MSA - Water Handling, Treatment dated 12/20/2013 signed 2015 12-13 | WESTPORT OIL AND GAS MANAGEMENT, LLC | Fieldwood Energy LLC | GC 679 Lease G28111; GC 768 Lease G28117 | ANADARKO US OFFSHORE LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1726 | | Joint Operating Agreements | MSA - Water Handling, Treatment, Tanks signed effective 11.8.16 | WESTPORT OIL AND GAS COMPANY INC. AND BASIN EXPLORATION | Fieldwood Energy LLC | GC 679 Lease G28111; GC 768 Lease G28117 | MARUBENI OIL & GAS (USA) LLC; TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1727 | 3/3/1998 | Joint Operating Agreements | 531601_Master Services Agreement | WESTPORT OIL AND GAS COMPANY, INC. AND BASIN EXPLORATION INC | Fieldwood Energy LLC | MC 110 Lease G16192 | MARUBENI OIL & GAS (USA) LLC; TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1728 | 3/3/1998 | Joint Operating Agreements | 531601_Master Services Agreement | WESTPORT OIL AND GAS COMPANY, INC. AND BASIN EXPLORATION INC | Fieldwood Energy LLC | MC 110 Lease G16192 | MARUBENI OIL & GAS (USA) LLC; TALOS RESOURCES LLC | $0.00 | Assume and assign to Credit Bid Purchaser |
| 1729 | | Oilfield Services | 528305_PO Terms & Conditions dated effective 03/10/2017 | WHITCO SUPPLY LLC | Fieldwood Energy LLC | n.a. | n.a. | $0.00 | Assume and assign to Credit Bid Purchaser |

Fieldwood Energy, LLC, et al.
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts based on the information available to them. To the extent the Debtors are able to identify the proper Debtor entity for the contracts listed on this schedule, they will be so associated with the appropriate schedule.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Retained lease parties represent the oil and gas leases that are associated with or related to the same underlying contract.
[5] If parties will be open pre-petition accounts payable balance. Cure estimates are adjusted to zero for completed transactions.
[6] The cure amounts may be based upon a Cure ("Cure Estimate") or may be further amended, supplemented, or modified (the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and the Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Retained Leases Parties [4] | Proposed Contract Treatment [5] | Cure Estimate [6] |
|---|---|---|---|---|---|---|---|---|
| 1731 | Marketing - Transportation | Gathering and Dedication of Reserves by and between Wild Well (FWE) and Manta Ray Offshore Gathering Company | Wild Well (FWE) and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | GC 955 Lease G03899 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC., MARGIREM OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERIN HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, CHEVRON USA INC, W & T ENER | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1732 | Marketing - Transportation | 8 Gathering, dedication for GC1-A3 - Aspen, 3.09 by and between Wild Well Aspen (FWE) and Manta Ray Offshore Gathering Company | Wild Well Aspen (FWE) and Manta Ray Offshore Gathering Company | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1733 | Oilfield Services | 8 Acquisition Gathering Agreement dated effective 12/31/2013 | WILD WELL CONTROL, INC | Fieldwood Energy LLC | n.a. | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC., MARGIREM OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERIN HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, CHEVRON USA INC, W & T ENER | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1734 | Acquisition / PSA / Other Purchase or Sale Agreements | Purchase and Sale Agreement by and between Wild Well Control, Inc. dated 31 Jan 2010 but effective 1 Jan 2010 but effective 1 Jan 2010 as Amended 26 Aug 2010 | Wild Well Control, Inc. | Fieldwood Energy Offshore LLC | GC 65 Lease G05989, GC 108 Lease G14809, GC 108 Lease G05900, GC 64 Lease G07055 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC., MARGIREM OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERIN HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, CHEVRON USA INC, W & T ENER | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1735 | Acquisition / PSA / Other Purchase or Sale Agreements | by and between Fieldwood Energy Offshore LLC and Wild Well Control, Inc. 31% of the Manta 12-organism Agreement 8205 running through 2 Jul 2014, as Amended 26 Aug 2010 | Wild Well Control, Inc. | Fieldwood Energy Offshore LLC | GC 65 Lease G05989, GC 108 Lease G05900, GC 64 Lease G04938 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC., MARGIREM OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERIN HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, CHEVRON USA INC, W & T ENER | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1736 | Well / Prospect Proposals | Terms 6 Purchase Wild Well's interest in the Rocky 12 | Wild Well Control, Inc. | Fieldwood Energy Offshore LLC | GC 19/65 | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1737 | Joint Operating Agreement | 8 Joint Operating Agreement by and between Wild Well Control, Inc and Dynamic Offshore Resources Inc. dated effective 1 Jan 2010 | Wild Well Control, Inc. | Fieldwood Energy Offshore LLC | GC 65 Lease G05989 | WILD WELL CONTROL, INC, DEEPWATER ABANDONMENT ALTERNATIVES INC., MARGIREM OIL & GAS (USA) LLC, WALTER OIL & GAS CORPORATION, ERIN HELICOPTERS INC., MANTA RAY OFFSHORE GATHERING, RED WILLOW OFFSHORE LLC, TALOS ENERGY OFFSHORE LLC, CHEVRON USA INC, W & T ENER | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1738 | Letter Agreement - JOA | Letter Agreement regarding Ocean Canyon 55 Unit Joint Operating Agreement Amendment for Bullwinkle Drilling Program, dated December, by and between Wild Well Control, Inc. | Wild Well Control, Inc. | Fieldwood Energy Offshore LLC | MC 504 Lease G34906, MC 548 Lease G28130, MC 548 Lease G32383, MC 903 Lease G24133, MC 903 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC, ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1739 | Oilfield Services | Weather Service | WUKENSON WEATHER TECHNOLOGIES INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1740 | Oilfield Services | Team Disposal (Cameron Dock) | WUKENSON TRANSPORTATION INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1741 | Marketing - Gas Sales | MP 259 no longer flowing by and between WILLIAMS ENERGY SERVICES COMPANY AND DEVON SRS | WILLIAMS ENERGY SERVICES COMPANY AND DEVON SRS | Fieldwood Energy LLC | MP 255/259, VK 692, 693, 694, 695 Lease G07927 | MONDRANOIL & GAS LLC | Assume and Allocate Pursuant to Divisive Merger | $0.00 |
| 1742 | Marketing - Gas Sales | MP 259 no longer flowing by and between WILLIAMS ENERGY SERVICES COMPANY AND SNYDER OIL OFFSHORE | WILLIAMS ENERGY SERVICES COMPANY AND SNYDER OIL OFFSHORE | Fieldwood Energy LLC | MP 255/259, VK 692, 693, 694, 695 Lease G07927 | MONDRANOIL & GAS LLC | Assume and Allocate Pursuant to Divisive Merger | $0.00 |
| 1743 | Marketing - Gas Export Agreement | MP 259 no longer flowing by and between WILLIAMS ENERGY SERVICES COMPANY AND SNYDER OIL OFFSHORE | WILLIAMS ENERGY SERVICES COMPANY AND SNYDER OIL OFFSHORE | Fieldwood Energy LLC | MC 504 Lease G34906, MC 548 Lease G28130, MC 548 Lease G32383, MC 903 Lease G24133, MC 903 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC, ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC | Assume and assign to Credit Bid Purchaser | $8,802.70 |
| 1745 | Marketing - Gas Export Agreement | Williams Field Services Lateral Agreement | Williams Field Services | Fieldwood Energy LLC | MC 504 Lease G34906, MC 548 Lease G28130, MC 548 Lease G32383, MC 903 Lease G24133, MC 903 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC, ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1746 | Marketing - Gas Export Agreement | Williams Field Services Lateral Agreement | Williams Field Services | Fieldwood Energy LLC | MC 504 Lease G34906, MC 548 Lease G28130, MC 548 Lease G32383, MC 903 Lease G24133, MC 903 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC, ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1747 | Marketing - Transportation | Williams Field Services Gas Gathering Agreement (Canyon Chief) | Williams Field Services | Fieldwood Energy LLC | MC 504 Lease G34906, MC 548 Lease G28130, MC 548 Lease G32383, MC 903 Lease G24133, MC 903 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC, ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE LLC | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1748 | Marketing - Transportation | Williams Field Services Gas Gathering Agreement (Canyon Chief) | Williams Field Services | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1749 | Marketing - Transportation | Williams Field Services Gas Gathering Agreement (Canyon Chief) | Williams Field Services | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1750 | Oilfield Services | 500605_Master_Service_Contract Effective_6-27-2018 | WILDCATTERS INC - TEXAS | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1751 | Oilfield Services | Wireline Rentals / No Longer a Subcontinger Entity | WIRELINE CONTROL SYSTEMS | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1752 | Non-Oilfield Services | DevVue Software License | WOLFEPAK SOFTWARE, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1753 | Non-Oilfield Services | Annual Subscription | WOOD MACKENZIE INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1754 | Non-Oilfield Services | Subscription Software License | Workshare Technology Inc. | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1755 | Oilfield Services | 553368_Master Services Agreement dated effective 12/31/2013 | WORKSTRINGS INTERNATIONAL, LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1756 | Oilfield Services | Non-Rotating Casing Protectors | WWT INTERNATIONAL INC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1757 | Oilfield Services | 510196_Master Services Agreement dated effective 07/01/2014 | XL SYSTEMS LP | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1758 | Farmout Agreement | Farmout Agmt blk XTO Offshore, Inc. and Century Exploration New Orleans | XTO Offshore, Inc. and Century Exploration New Orleans | Fieldwood Energy LLC | BS 43 Lease 10653 | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1759 | Non-Oilfield Services | Consulting Agreement | YAKIMA Software LLC | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1760 | Non-Oilfield Services | Software License Agreement | ZETAWARE INC. | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1761 | Non-Oilfield Services | License and Software maintenance | ZETAWARE INC. | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1762 | Non-Oilfield Services | License and Software maintenance | ZETAWARE INC. | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1763 | Other | ASAD insurance, business interest insurance | Zurich | Fieldwood Energy LLC | n.a. | n.a. | Assume and assign to Credit Bid Purchaser | $0.00 |
| 1764 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development and Production Operations on the South Pass block 60 Unit (Blocks 61, 62, and 77, 78, and 79) South Pass Area, Louisiana Outer Continental Shelf, Contract No. 754384/0/A.S. | Fieldwood Energy LLC | SP 61 Lease G01625, SP 66 Lease G01511, SP 67 Lease G01612, SP 6 Lease G03529, SP 11 Lease G02029, SP 56 Lease G02042, SP 56 Lease G02042, SP 66 Lease G00088, SP 66 Lease G00889, SP 68 Lease G02137 | ANKOR E&P HOLDINGS CORPORATION | Assume and assign to Credit Bid Purchaser (pursuant to the Plan and the Definitive Documents, to the account of the Assumed Interests and/or Divesters on account of the Excluded Assets, as applicable, it being understood that Mergers on account of the Excluded Assets, as applicable, it be) | $0.00 |

**Fieldwood Energy, LLC, *et al.***
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**
Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will filed an amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and JIB partners based on Company accounting system records.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | Applicable Entity: FW I | Credit Bid Purchaser | FW III | FW IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1765 | 4/1/1992 | Unit Agreement and/or Unit Operating Agreement | Amendment to Unit Agreement. For Outer Continental Shelf Exploration, Development and Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf (Contract No. 754394018) to expand the Unit Agreement to include the NE/4 of the NW/4 of Block 61, OCS-G 1609, South. Pass Area. | | | SP 61 Lease G01609, SP 66 Lease G01611, SP 67 Lease G01612, SP 6 Lease G03337, SP 17 Lease G02938, SP 59 Lease G02942, SP 59 Lease G02943, SP 59 / 60 Lease G01608, SP 60 Lease G02137 | ANKOR E&P HOLDINGS CORPORATION | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Divisive Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | x | | |
| 1766 | 7/1/1983 | Unit Agreement and/or Unit Operating Agreement | ST 295 UOA. As amended | | Fieldwood Energy LLC | ST 276 Lease G07780, ST 295 Lease G05646, ST 296 Lease G12981 | APACHE OFFSHORE INVESTMENT GP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1767 | 9/1/2010 | Joint Development / Venture / Exploration Agreements | mp-295-Joint Venture Letter Agreement | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1768 | 12/20/2012 | Farmout Agreement | MP 295 Extension 12-20-12 | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1769 | 2/1/2013 | Operating Agreement - Other | Primary Term Lands - MOA Recorded 01-2015 Revision | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1770 | 2/22/2013 | Joint Development / Venture / Exploration Agreements | Heron Prospect (MP 295) Letter of Agreement 2-22-13 | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1771 | 6/1/2014 | Operating Agreement - Other | Heron Prospect MOA amd. No.2 6-1-14 | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1772 | 1/13/2015 | Letter Agreement - Other Land | Heron Prospect (MP 295) Letter Agmt 1-13-15 | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1773 | 7/10/2015 | Termination / Ratification and Joinder of Operating or Other Agreements | MP 295 9-18-2012 Farmout Termination Ltr dtd 7-10-15 | | | MP 295 Lease G32263 | APACHE SHELF EXPLORATION LLC, ENERGY XXI GOM LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1774 | 8/7/1953 | Unit Agreement and/or Unit Operating Agreement | HI 179 Unit Agreement | | Fieldwood Energy LLC | HI 179 Lease G03236 | ARENA ENERGY LP, Transcontinental Gas Pipeline Co LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1775 | 1/1/1978 | Unit Agreement and/or Unit Operating Agreement | HI 179 Unit Operating Agreement | | Fieldwood Energy LLC | HI 179 Lease G03236, GA 180 Lease G03228 | ARENA ENERGY LP, Transcontinental Gas Pipeline Co LLC; ARENA ENERGY LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1776 | 8/1/1997 | Unit Agreement and/or Unit Operating Agreement | EC 331/332 Unit Operating Agreement | | Fieldwood Energy LLC | EC 331 Lease G08658, EC 332 Lease G09478 | CAIRN ENERGY USA INC, CONTINENTAL LAND & FUR CO INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | | x |
| 1777 | 6/1/2009 | Operating Agreement - Other | JOperating Agreement CA 42/43 | | | CA 42/43 Lease G32267, CA 43 Lease G32268 | CASTEX OFFSHORE INC, PEREGRINE OIL AND GAS II LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1778 | 1/1/1987 | Joint Operating Agreement | Joint Operating Agreement 1-1-87 | | Fieldwood Energy LLC | GI 83 Lease G03793 | CLK EXPLORATION COMPANY | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | | | x | |
| 1779 | 1/1/1990 | Operating Agreement - Other | Operating Agreement effective January 1, 1990 | | Fieldwood Energy LLC | EI 361 Lease G02324 | COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1780 | 7/1/1994 | Operating Agreement - Other | Operating Agreement 7/1/1974 | | Fieldwood Energy LLC | HI A582 Lease G02719 | COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1781 | 8/4/2000 | Farmout Agreement | Farmout Agreement 8/4/2000 | | Fieldwood Energy LLC | HI A582 Lease G02719 | COX OPERATING LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1782 | 4/13/2009 | Letter Agreement - JOA | Letter Agreement AmendingArticle 12.2 of Joint Operating Agreement | | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134, MC 904 Lease G36566, MC 905 Lease G36405 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1783 | 5/7/2009 | Letter Agreement - JOA | Letter Agreement AmendingArticle 12.2 of Joint Operating Agreement | | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134, MC 904 Lease G36566, MC 905 Lease G36405 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1784 | 4/25/2011 | Letter Agreement - Other Land | Rescinds AFE | | | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 N/2 Lease G24133, MC 993 N/2 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1785 | 10/25/2012 | Letter Agreement - UOA | One time supersedence of UOperating Agreement provision 11.2 | | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1786 | 1/1/2013 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development, and Production Operations on the Mississippi Canyon Block 948 Unit, Contract No. 754313005. | | | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1787 | 12/10/2013 | Marketing - Gathering | | | | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1788 | 12/10/2013 | Marketing - Gathering | | | | MC 904 Lease G36566, MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363, MC 993 Lease G32363 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1789 | 12/10/2013 | Marketing - Gathering | | | | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G32363, MC 993 Lease G32363, MC 904 Lease G36566 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1790 | 2/20/2014 | Letter Agreement - UOA | One time supersedence of UOperating Agreement provision 8.3.1 | | Fieldwood Energy LLC | MC 948 Lease G28030, MC 949 Lease G32363, MC 992 Lease G24133, MC 993 Lease G24134 | ECOPETROL AMERICA LLC, TALOS ENERGY OFFSHORE, LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1791 | 10/1/1997 | Unit Agreement and/or Unit Operating Agreement | MI 623 Unit Operating Agreement | | Fieldwood Energy LLC | MI 623 Lease G03088 | EOG RESOURCES INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1792 | 7/1/1983 | Unit Agreement and/or Unit Operating Agreement | EI 212 Unit Operating Agreement | | Fieldwood Energy LLC | EI 212 Lease G05503 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1793 | 7/1/1984 | Unit Agreement and/or Unit Operating Agreement | MP 310 Unit Operating Agreement | | Fieldwood Energy LLC | MP 303 Lease G04253, MP 304 Lease G03339, MP 310 Lease G04126 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1794 | 6/7/1988 | Unit Agreement and/or Unit Operating Agreement | EI 212 Unit Agreement | | Fieldwood Energy LLC | EI 212 Lease G05503 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1795 | 3/29/2005 | Confidentiality Agreements / AMI and Related Consents | Area of Mutual Interest - EI 312 N/2 | | | EI 312 Lease G22679 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1796 | 10/25/2005 | Operating Agreement - Other | Operating Agreement 10-25-05 | | Fieldwood Energy LLC | EI 312 Lease G22679, EI 311 Lease G27918 | EPL OIL & GAS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1797 | 2/8/2006 | Letter Agreement - Other Land | SS 204 A36ST1 Non-Consent 500% Penalty | | | SS 204 Lease G01520 | EPL OIL & GAS, LLC, KINETICA DEEPWATER EXPRESS, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1798 | 8/1/1973 | Operating Agreement - Other | Operating Agreement eff. 8-1-73 | | Fieldwood Energy LLC | HI A474 Lease G02366 | FREEPORT MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1799 | 8/1/1973 | Operating Agreement - Other | Operating Agreement eff. 8-1-73 | | | HI A489 Lease G02372 | FREEPORT MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1800 | 10/1/2004 | Operating Agreement - Other | Operating Agreement eff. 10-1-04 | | Fieldwood Energy LLC | SS 159 Lease G11984 | HOACTZIN PARTNERS LP | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1801 | 2/11/2009 | Other Handling / Stabilization Agreements | Anchor Producer PHA dated 11 Feb 2009 (FW/NBL not a party; info only) | | Fieldwood Energy LLC | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1802 | 9/1/2016 | Letter Agreement - Other Land | | | | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1803 | 5/5/2017 | Letter Agreement - Other Land | | | | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1804 | 9/11/2017 | Letter Agreement - Other Land | | | | MC 697 Lease G28021, MC 698 Lease G28022, MC 742 Lease G32343 | HOUSTON ENERGY DEEPWATER VENTURES V, RED WILLOW OFFSHORE LLC, W & T ENERGY VI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1805 | 4/1/2018 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement No. 754318002 for the Green Canyon Block 40 Unit approved by the BOEM effective April 1, 2018 | | | EW 1009 Lease G34878, EW 1010 Lease G34879, EW 1011 Lease G34880, GC 040 Lease G34536, GC 041 Lease G34537, GC 39 A Lease G34966, GC 039 B Lease G36476 | ILX PROSPECT KATMAI LLC, RIDGEWOOD KATMAI LLC | $0.00 | Assume and assign to Credit Bid Purchaser | | x | | |
| 1806 | 7/1/1990 | Unit Agreement and/or Unit Operating Agreement | MP 259 Unit Agreement and Unit Operating Agreement | | Fieldwood Energy LLC | MP 259 Lease G07827, VK 692/693 Lease G07898 | MCMORAN OIL & GAS LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1807 | 7/24/2006 | Operating Agreement - Other | Operating Agreement eff. 7-24-06 | | Fieldwood Energy LLC | PL 9 Lease G02924 | MCMORAN OIL & GAS LLC, RIDGEWOOD ENERGY CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1808 | 3/24/1972 | Unit Agreement and/or Unit Operating Agreement | SP 65 G G-1 Unit Res B Unit Agreement -891012327 | | Fieldwood Energy LLC | SP 65 Lease G01610, MP 152 Lease G01966, MP 153 Lease G01967 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1809 | 5/18/1972 | Unit Agreement and/or Unit Operating Agreement | SP 65 G G-1 Unit Res A Unit Agreement-891012332 | | Fieldwood Energy LLC | SP 65 Lease G01610, MP 152 Lease G01966, MP 153 Lease G01967, SP 64 Lease G01901 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1810 | 5/18/1972 | Unit Agreement and/or Unit Operating Agreement | SP 65 G2-G3 Unit Agreement-891012333 | | Fieldwood Energy LLC | SP 65 Lease G01610, MP 152 Lease G01966, MP 153 Lease G01967, SP 64 Lease G01901 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |
| 1811 | 10/1/1997 | Unit Agreement and/or Unit Operating Agreement | SP 65 G G-1 Unit Res A UOperating Agreement | | Fieldwood Energy LLC | SP 65 G G-1 Unit Res A Lease G01610 | RENAISSANCE OFFSHORE, LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers | x | | | |

Fieldwood Energy LLC, et al.
Prepared May 25, 2021

**Schedule of Assumed Contracts**

[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors' contracts or leases listed on this schedule may be listed once. To the extent the Debtors are able to identify the proper Debtor party to the contracts which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the amended schedules prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Restoral leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[5] Cure Estimate reflects the Debtors' estimate of the cure amount that may be owing under the applicable contract.
[6] If estimates based on open pre-petition accounts payable balances. Cure estimates are subject to change for completed hole agreements.
[7] The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents, including the Definitive Confirmation Order, the terms of the Plan [...], Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

| # | Contract No. | Contract Category | Contract Description | Debtor Entity [2] | Known Contract Counterparties [1] | Associated Leases [3] | Restoral Leases Parties [4] | Cure Estimate | Proposed Contract Treatment [5] |
|---|---|---|---|---|---|---|---|---|---|
| 1812 | 10/1/1997 | Unit Agreement and/or Unit Operating Agreement | SP 65 C-G-1 Unit Bore 6 (Operating Agreement) | Fieldwood Energy LLC | RENAISSANCE OFFSHORE, LLC | SP 65 G-3-1 Unit Bore 6 Lease Q01010 | RENAISSANCE OFFSHORE LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1813 | 10/1/1997 | Joint Operating Agreement | SP 65 GG-03 UOperating Agreement | Fieldwood Energy LLC | | SP 65 GG-03 Lease Q01010 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1814 | 4/1/2008 | Marketing - PSA | Ratification of SM 44 "C", SM 42 (A) PNA for SM 40 C-20-D Well | Fieldwood Energy LLC | SAWANI ENERGY PARTNERS, LLC | SM 42 Lease D13497, SM 44 Lease Q23940 | SAWANI ENERGY PARTNERS LLC | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser |
| 1815 | 10/1/1981 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides for the construction management of the facility by and between Fieldwood Energy LLC and NA and NA | Fieldwood Energy LLC | TALOS ERT LLC | SP 87 Lease G07799, SP 89 Lease G01616, WD 105 Lease 842, WD 86 Lease G02584, VR 104 Lease G01079, WD 105 Lease G19463, WD 107 Lease G19466, SP 89 Lease G01617 | TALOS ERT LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1816 | 9/26/1983 | Marketing - Construction, Operations, Management, Ownership Agreements | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and NA | Fieldwood Energy LLC | TALOS ERT LLC, THE LOUISIANA LAND & EXPL. CO. LLC, SAWANI ENERGY PARTNERS, LLC, Texas Eastern Transmission | SM 104 Lease 751 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1817 | 8/3/1984 | Unit Agreement and/or Unit Operating Agreement | Operating Agreement eff. 8-3-84 | Fieldwood Energy LLC | TALOS PRODUCTION LLC | SM 109 Lease 751 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1818 | 3/28/2014 | Well / Prospect Proposals | Proposal eff. 3-28-14 | Fieldwood Energy LLC | TALOS PRODUCTION LLC | WC 136 Lease G09177 | TALOS PRODUCTION LLC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1819 | 3/28/2014 | Well / Prospect Proposals | Proposal Amendment and Various requests for extension from State and election by Fieldwood | Fieldwood Energy LLC | | WC 136 Lease G09177 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1820 | 10/1/1997 | Operating Agreement - Other | Operating Agreement eff. 10-1-97 | Fieldwood Energy LLC | TARPINE I INC | SP 70 Lease G01614 | TARPINE I INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1821 | 3/1/2009 | Operating Agreement - Other | Operating Agreement | Fieldwood Energy LLC | TANA EXPLORATION COMPANY LLC | BS 25 Lease 19718, BS 25 Lease G23442 | TANA EXPLORATION COMPANY LLC | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser |
| 1822 | 8/14/2003 | Unit Agreement and/or Unit Operating Agreement | UV B AA Voluntary Unit Agreement | Fieldwood Energy LLC | UPSTREAM EXPLORATION LLC | BS 45 Lease 19083, BS 52/53 Lease 17675 | UPSTREAM EXPLORATION LLC | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser |
| 1823 | 11/1/1978 | Operating Agreement - Other | Operating Agreement eff. 11-1-78 | Fieldwood Energy LLC | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO. CALYPSO EXPLORATION LLC, CHEVRONNE PETROLEUM COMPANY, MAXUS EXPLORATION | HI 125 Lease Q01048 | W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1824 | 9/15/2003 | Operating Agreement - Other | 9/15/2003 operating agreement | Fieldwood Energy LLC | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO. CALYPSO EXPLORATION LLC, CHEVRONNE PETROLEUM COMPANY, MAXUS EXPLORATION | HI 125 Lease Q01048 | W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1825 | 2/5/2004 | Other Handling / Stabilization Agreements | 2/5/2004 production handling agreement (which was amended and ratified by the 8/2/2016 PHA) | Fieldwood Energy LLC | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO. CALYPSO EXPLORATION LLC, CHEVRONNE PETROLEUM COMPANY, MAXUS EXPLORATION | HI 125 Lease Q01048 | W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1826 | 1/8/2003 | Termination / Ratification and Joinder of Operating or Other Agreements | 1/8/2003 ratification of 9/15/2003 operating agreement | Fieldwood Energy LLC | W & T OFFSHORE INC, HELIS OIL & GAS COMPANY LLC, HELIS OIL & GAS CO. CALYPSO EXPLORATION LLC, CHEVRONNE PETROLEUM COMPANY, MAXUS EXPLORATION | HI 125 Lease Q01048 | W & T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1827 | 8/1/1973 | Operating Agreement - Other | Operating Agreement eff. 8/1/73 | Fieldwood Energy LLC | W&T OFFSHORE INC | HI 110 W/2 Lease G02253 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser |
| 1828 | 8/1/1973 | Operating Agreement - Other | Operating Agreement eff. 8/1/73 | Fieldwood Energy LLC | W&T OFFSHORE INC | HI 116 E/2 Lease G02254 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser |
| 1829 | 11/1/1979 | Operating Agreement - Other | Operating Agreement eff. 11/1/79 | Fieldwood Energy LLC | W&T OFFSHORE INC | HI 111 E/2 Lease G02254 | W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser |
| 1830 | 3/1/2014 | Offshore Operating Agreement | Offshore Operating Agreement 9/1/2001 | Fieldwood Energy LLC | ST 320 Lease Q24995 | ST 320 Lease Q24990 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1831 | 9/1/2001 | Joint Operating Agreement | ST 320 Contract Operating Agreement 9/1/1-14 | Fieldwood Energy LLC | WC 250 Lease G04818 | | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1832 | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement 9/1/1981 | Fieldwood Energy LLC | WALTER OIL & GAS CORPORATION | WC 250 Lease G04818 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1833 | 11/1/1988 | Operating Agreement - Other | Operating Agreement eff. 11/1/88 | Fieldwood Energy LLC | WALTER OIL & GAS CORPORATION | WP 300 Lease Q01317 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1834 | 7/28/1986 | Farmout Agreement | Farmout Agreement 7-28-86 | Fieldwood Energy LLC | WALTER OIL & GAS CORPORATION | WP 300 Lease G04488 | WALTER OIL & GAS CORPORATION | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1835 | 10/16/2013 | Other Misc | ST 311-A Platform, Construction, Contract Gulf Island LLC and Walter Oil and Gas eff 10-16-13 | Fieldwood Energy LLC | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1836 | 4/1/2015 | Dedication Agreements | ST 311 Products Dedication Gathering Agreement eff 04/01/2015 | Fieldwood Energy LLC | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1837 | 4/1/2015 | Other Transportation Agreements | ST 311 Liquids Separation, Handling, Stabilization and Redeliv Agreement eff 04/01/2015 | Fieldwood Energy LLC | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1838 | 4/1/2015 | Other Misc | ST 311 SDI LOC_Mortgage and Conveyance | Fieldwood Energy LLC | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | ST 311 Lease G31418 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1839 | 9/15/2017 | Property Participation & Exchange | ST 311-SDI JDA Participation Agreement eff 9-15-17 | Fieldwood Energy LLC | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | ST 311 Lease G31418, ST 320 Lease Q24990 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1840 | 11/5/2019 | Transfer Agreements & Notices | Transfer Agreement & Notice | Fieldwood Energy LLC | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | ST 311 Lease G31418, ST 320 Lease Q24990 | WALTER OIL & GAS CORPORATION, W&T OFFSHORE INC | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1841 | 11/20/1989 | Unit Agreement and/or Unit Operating Agreement | EI 266 Unit Agreement | Fieldwood Energy LLC | WALTER OIL & GAS CORPORATION | EI 266 Lease 611, EI 245 Lease 810, EI 267 Lease 872, EI 269 Lease 873 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1842 | 11/2/1998 | Unit Agreement and/or Unit Operating Agreement | Offshore Operating Agreement (VR 360/369) "Unit Operating Agreement Dated 12/12/1977 | Fieldwood Energy LLC | VR 368 Lease G01960 | VR 368 Lease G01960 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1843 | 4/23/1976 | Joint Operating Agreement | Unit Agreement (VR 360 Unit Area) 12/12/1977 | Fieldwood Energy LLC | ST 148 Lease G01960 | VR 261 Lease G02274, VR 368 Lease G02279 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1844 | 4/1/1976 | Joint Operating Agreement | Operating Agreement eff. 4-1-76 as amended | Fieldwood Energy LLC | VR 261 Lease G02338 | VR 261 Lease G02338 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1845 | 12/12/1977 | Unit Agreement and/or Unit Operating Agreement | Unit Agreement (VR 360 Unit Area) 12/12/1977 | Fieldwood Energy LLC | VR 261 Lease G02274 | VR 368 Lease G02274 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1846 | 12/12/1977 | Unit Agreement and/or Unit Operating Agreement | Unit Operating Agreement (VR 360 Unit Area) "UOperating Agreement supersedes VOperating Agreement" 12/12/1977 | Fieldwood Energy LLC | VR 261 Lease G02274 | VR 368 Lease G02274 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1847 | 11/1/1981 | Farmout Agreement | Farmout 12/1/1963 | Fieldwood Energy LLC | VR 360 Lease G00652 | VR 368 Lease G00652 | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser |
| 1848 | 9/1/1981 | Joint Operating Agreement | Operating Agreement 9/1/1981 | Fieldwood Energy LLC | WD 90, WD 103 Operating Agreement 12-30-1963 | WD 90/WD 103 Operating Agreement, WD 013 Lease G12360 | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser |
| 1849 | 12/30/1963 | Joint Operating Agreement | Operating Agreement 12-30-1963 | Fieldwood Energy (Offshore) LLC | | WD 090/WD 103 Operating Agreement, WD 013 Lease G12360 | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser |
| 1850 | 12/1/1985 | Farmout Agreement | Farmout Agreement 12/1/1985 | Fieldwood Energy LLC | | BA 481 Lease Q08860 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1851 | 3/1/1994 | Joint Operating Agreement | JOperating Agreement eff. 3/1/94 | Fieldwood Energy LLC | EI 296 Lease 813, EI 245 Lease 810, EI 267 Lease 872, EI 269 Lease 873 | EI 296 Lease 813 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1852 | 1/1/1988 | Joint Operating Agreement | JOperating Agreement 1/1/88 | Fieldwood Energy LLC | EI 296 Lease G21110 | EI 296 Lease G21110 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1853 | 3/10/1969 | Farmout Agreement | Ratification of Farmout Agreement 3/10/1969 | Fieldwood Energy LLC | BA 481 Lease G08099 | BA 481 Lease G08099 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1854 | 7/1/1989 | Joint Operating Agreement | Operating Agreement eff. 7/1/89 | Fieldwood Energy LLC | EI 296 Lease G02274 | EI 296 Lease G02274 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1855 | 12/1/1993 | Farmout Agreement | Farmout 12/1/1993 | Fieldwood Energy LLC | VR 363 Lease G00652 | VR 363 Lease G00652 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1856 | 12/30/1993 | Operating Agreement - Other | WD 90, WD 103 Operating Agreement 12-30-1963 | Fieldwood Energy LLC | WD 090/WD 103 Operating Agreement, WD 013 Lease G12360 | WD 090/WD 103 Operating Agreement, WD 013 Lease G12360 | | $0.00 | Assume and Allocate Pursuant to Credit Bid Purchaser |
| 1857 | 1/1/1994 | Joint Operating Agreement | JOperating Agreement eff. 1/1/94 | Fieldwood Energy LLC | WP 281 Lease G10910 | WP 281 Lease G10910 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1858 | 6/24/1994 | Joint Operating Agreement | Operating Agreement eff. 6-24-94 | Fieldwood Energy LLC | | SS 301 Lease G10910 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |
| 1859 | 9/1/1994 | Farmout Agreement | Farmout Agmt Eff 9-1-94 | Fieldwood Energy LLC | | PL 5 Lease G12327 | | $0.00 | Assume and Allocate Pursuant to Divisive Mergers |

**Fieldwood Energy LLC, et al.**
**Prepared May 25, 2021**

**Schedule of Assumed Contracts**

Notes:
[1] Known Contract Counterparties represent parties listed in actual agreements and/or vendor names.
[2] The Debtors continue to review the contracts listed on this schedule to determine the appropriate Debtor entity. To the extent the Debtors are able to identify the proper Debtor entity for the contracts to which no Debtor entity is currently listed, the Debtors will file an amended schedule prior to the amended schedule prior to the confirmation hearing to reflect this information.
[3] Associated leases represent the oil and gas leases that are associated with or related to the same underlying contract.
[4] Related lease parties represent current lease co-working interest owners and holders parties and working interest owners and holders of record.
[5] Estimates based on open pre-petition accounts payable balances. Cure estimates were adjusted to zero for completed trade agreements.
[6] Reference is hereby made to the Debtors' Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
The proposed treatment set forth on this Schedule of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Definitive Documents relating to the Divisive Merger and this Schedule of Assumed Contracts, the applicable Definitive Document shall control.

| # | Contract Date | Contract Category | Contract Description | Known Contract Counterparties [1] | Debtor Entities [2] | Associated Leases [3] | Related Lease Parties [4] | Cure Estimate [5] | Proposed Contract Treatment [6] | FW | FWB | FW II | Credit Bid Purchaser |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1890 | 9/1/1996 | Operating Agreement - Other | Offshore Operating Agreement 8/1/1996 | Fieldwood Energy LLC | VR 408 Lease G15212 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1891 | 9/3/1996 | Operating Agreement - Other | Operating Agreement (depths below 9000' on VR 382 & VR 408, and all depths VR 407) 8/13/1996 | Fieldwood Energy LLC | VR 408 Lease G15212 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1892 | 2/11/1999 | Operating Agreement - Other | Operating Agreement aff. 2/11/99 | Fieldwood Energy LLC | EI 255 Lease G01966 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1893 | 1/31/2000 | Farmout Agreement | Farmout Letter Agreement 1/31/2000 | Fieldwood Energy LLC | VR 408 Lease G15212 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1894 | 2/7/2000 | Operating Agreement - Other | Operating Agreement aff. 2-7-00 | Fieldwood Energy LLC | HI 255 Lease G20900 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1895 | 5/19/2003 | Joint Operating Agreement | JOperating Agreement aff. 5/19/03 | Fieldwood Energy Offshore LLC | SS 301 Lease G10794 | | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | x |
| 1896 | 6/16/2003 | Unit Agreement and/or Unit Operating Agreement | TEX W RA SUA Unit Agreement | Fieldwood Energy | BS 45 Lease 15663 | | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | x |
| 1897 | 8/1/2004 | Operating Agreement - Other | Operating Agreement 8/1/04 | Fieldwood Energy LLC | HI A341 Lease G20905 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1898 | 10/17/2006 | Joint Operating Agreement | Operating Agreement eff. 10-17-06 | Fieldwood Energy LLC | EC 37 Lease G28933 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1899 | 1/4/2007 | Farmout Agreement | Farmout Agreement | Fieldwood Energy LLC | SM 44 Lease G23940 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1900 | 3/8/2007 | Property Participation & Exchange Agreements | Participation Agreement as Amended | Fieldwood Energy LLC | SM 44 Lease G23940 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1901 | 5/14/2008 | Other Notices | Final Notification Letter from Wind Payout, dated May 14, 2008, EB 160 No. 1 ("well paid out in full in March 3, 2008") | Fieldwood SD Offshore LLC | SB 160 Lease G00847 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1902 | 2/25/2010 | Operating Agreement - Other | Operating Agreement eff. 2-25-10 | Fieldwood Energy LLC | EI 10 Lease G02851 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1903 | 8/1/2010 | Marketing - Service Agreement | SERVICE AGREEMENT FOR SOUTH PASS 49 PIPELINE SYSTEM | | SP 49 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1904 | 5/11/2011 | Pipeline Use / Tariff Modification Agreements | Pipeline Term and Use Agreement | | MP 112 Lease G02007 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1905 | 11/13/2013 | Master Service Agreement | Platform Audit / BSEE Drawings | | Area wide | | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | x |
| 1906 | 4/16/2014 | Other Lease / Rental Agreement | Rental Agreement | | MC 593 NOMC 593 SO Lease G24134 | | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | x |
| 1907 | 11/19/2013 | Master Service Agreement | Regulatory | | Area wide | | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | x |
| 1908 | 6/24/2016 | Master Service Agreement | I.T and Consulting Support for the HWCG / Fieldwood Portal for Vendor Exercise | Fieldwood Energy LLC | Area wide | | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | x |
| 1909 | 8/6/2019 | Right of Use Easement | USAGE RULE EACH2b-2.17-73 (SP5) | | SP 50 | | | $0.00 | Assume and Allocate Pursuant to Division Mergers | x | | | |
| 1910 | 10/22/2019 | Other Services Agreements | IT and Consulting Support for the HWCG / Fieldwood Portal for Vendor Exercises | Fieldwood Energy LLC | Area wide | | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | x |
| 1911 | 10/30/2009 | Master Service Agreement | Industry Standards, Analytics, and Research / Subscription Service | | Area wide | | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | x |
| 1912 | 11/10/2019 | Master Service Agreement | Industry Standards, Analytics, and Research / Subscription Service | | Area wide | | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | x |
| 1913 | | Marketing - Other | Market Authorization Letter Agreement to act as agent for Ecopetrol America Inc. to Market gas production | Fieldwood Energy LLC | MC 904 Lease G34066 | | | $0.00 | Assume and Assign to Credit Bid Purchaser | | x | | x |
| 1914 | 1/1/2014 | Marketing - Construction, Operations, Management, Ownership Agreements | Operating and Ownership of the Facility, Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility expenses reimbursed from Sea Robin Pl by and between Fieldwood Energy LLC and and | Fieldwood Energy LLC | EC 178 Lease G34126, EC 291 Lease G06914, EC 278 Lease G06974, EC 291 Lease G06916, EI 315 Lease Q2491G, EI 331 Lease G04319, EI 341 Lease G03231, EI 315 Lease G24610, EI 341 Lease G24124, EI 315 Lease G02117, EI 331 Lease G02017, EI 331 Lease G03332, EI 341 Lease G03234, SM 55 Lease G00577, EI 331 Lease G03332, SM 40 Lease G13807, SM 142 Lease G01176, SM 128 Lease G01187, G02087 | | | $0.00 | Assume and (i) assign to Credit Bid Purchaser (pursuant to the Plan and the Credit Bid Purchase Agreement) on account of the Acquired Interests and/or (ii) allocate pursuant to the Division Mergers on account of the Excluded Assets (as defined in the Credit Bid Purchase Agreement) | x | | x | x |

## Exhibit E

**Plan Administrator Agreement**

**[To Come]**

## Exhibit F

**Credit Bid Purchase Agreement**

# PURCHASE AND SALE AGREEMENT

## AMONG

## FIELDWOOD ENERGY LLC

## AND

## ITS AFFILIATES SIGNATORY HERETO

## AS SELLERS

## AND

## [_____]

## AS BUYER

## DATED

## [_____] [___], 2021

**[DISCLAIMER:  This is a proposed form purchase agreement only, and not an offer that can be accepted.  Until the authorized representatives of the Sellers and Buyer agree to and execute a definitive agreement, neither the Sellers nor Buyer has any obligation (legal or otherwise) to conclude a transaction.  Unless included in a definitive agreement, communications (written or oral) shall not create any obligations whatsoever on the Sellers or Buyer and no person, including any recipient of this proposed form, may rely on them as the basis for taking or foregoing any action or opportunity or for incurring any costs.  Further, this proposed form purchase agreement may be amended and/or modified in its entirety to provide for the 363 Credit Bid Transaction in the circumstances contemplated by, and subject to any consents required by, Section 5.2(c) of the Plan.]**

# TABLE OF CONTENTS

**Page**

**ARTICLE I        PURCHASE AND SALE** ...................................................................2
1.1     Purchase and Sale .......................................................................................2
1.2     Acquired Interests; Assets..........................................................................2
1.3     Excluded Assets ..........................................................................................9
1.4     Effective Time ...........................................................................................10
1.5     Certain Sellers ...........................................................................................10

**ARTICLE II       CONSIDERATION** .........................................................................10
2.1     Consideration .............................................................................................10
2.2     Allocation of Adjusted Consideration ......................................................11
2.3     Consents to Assign.....................................................................................12
2.4     Governmental Approvals ...........................................................................14
2.5     Preferential Rights .....................................................................................16
2.6     [Reserved.] .................................................................................................17
2.7     Withholding ...............................................................................................17
2.8     Assets Sold "As Is, Where Is" ..................................................................17
2.9     Presence of Wastes, NORM, Hazardous Substances and Asbestos .........18

**ARTICLE III      DUE DILIGENCE** ...........................................................................19
3.1     Due Diligence .............................................................................................19

**ARTICLE IV      SELLERS' REPRESENTATIONS** ................................................20
4.1     Organization/Qualification ........................................................................20
4.2     Power and Authority ..................................................................................20
4.3     Non-Contravention .....................................................................................20
4.4     Authorization and Enforceability...............................................................21
4.5     Liability for Brokers' Fees ........................................................................21
4.6     Litigation ....................................................................................................21
4.7     Governmental Approvals ...........................................................................21
4.8     Preferential Rights; Applicable Consents ..................................................22
4.9     Taxes...........................................................................................................22
4.10    Well Status .................................................................................................23
4.11    Compliance with Laws; Permits ................................................................23
4.12    Environmental Matters...............................................................................24
4.13    Payments.....................................................................................................24
4.14    Material Contracts......................................................................................24
4.15    Imbalances; Prepayments...........................................................................27
4.16    AFEs; Cash Calls .......................................................................................27
4.17    Labor and Employment Matters.................................................................27
4.18    Employee Benefits .....................................................................................28
4.19    Non-Consent Operations............................................................................29
4.20    Suspense Funds...........................................................................................29
4.21    Payout Balances..........................................................................................29
4.22    Title to Acquired Interests.........................................................................29
4.23    Insurance ....................................................................................................30
4.24    Related Party Transactions ........................................................................30
4.25    Intellectual Property...................................................................................31

i

**TABLE OF CONTENTS**

**(continued)**

| | | |
|---|---|---|
| 4.26 | Undue Influence | 32 |
| 4.27 | No Undisclosed Material Liabilities | 33 |
| 4.28 | Absence of Certain Changes | 33 |
| 4.29 | Equipment and Fixed Assets | 33 |
| 4.30 | Operatorship | 34 |
| 4.31 | Joint Venture | 34 |
| 4.32 | Plan of Merger | 35 |
| 4.33 | Exhibit X-1 | 35 |
| **ARTICLE V** | **BUYERS' REPRESENTATIONS** | 36 |
| 5.1 | Organization; Standing; Capitalization | 36 |
| 5.2 | Power | 37 |
| 5.3 | Non-Contravention | 37 |
| 5.4 | Authorization and Enforceability | 37 |
| 5.5 | Liability for Brokers' Fees | 38 |
| 5.6 | Litigation | 38 |
| 5.7 | Governmental and Third Person Consents | 38 |
| 5.8 | Financial Capability | 38 |
| 5.9 | Qualification | 38 |
| 5.10 | Bankruptcy | 38 |
| 5.11 | Investor Status; Investigation | 38 |
| 5.12 | No Other Representations | 39 |
| **ARTICLE VI** | **COVENANTS AND AGREEMENTS** | 40 |
| 6.1 | Covenants and Agreements of the Sellers | 40 |
| 6.2 | Casualty Event | 43 |
| 6.3 | Press Releases | 43 |
| 6.4 | Solicitation; Other Offers | 44 |
| 6.5 | Regulatory Matters; Cooperation | 44 |
| 6.6 | Bankruptcy Court Matters | 46 |
| 6.7 | Assumption and Assignment of Contracts | 48 |
| 6.8 | Employee Matters | 49 |
| 6.9 | [Reserved] | 52 |
| 6.10 | Certain Agreements | 52 |
| 6.11 | Transfer Orders; Letters in Lieu | 52 |
| 6.12 | Taxes | 52 |
| 6.13 | Commercially Reasonable Efforts | 54 |
| 6.14 | Insurance Policies | 54 |
| 6.15 | Novation of Hedges | 54 |
| 6.16 | Qualification | 54 |
| 6.17 | Settlements with Governmental Authorities | 54 |
| 6.18 | Operator Forms | 55 |
| 6.19 | [Reserved] | 55 |
| 6.20 | Bonds and Insurance | 55 |

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

**TABLE OF CONTENTS**

**(continued)**

| | | |
|---|---|---|
| 6.21 | [New Equity Interests | 55 |
| 6.22 | Employment Agreements | 55 |

**ARTICLE VII CONDITIONS PRECEDENT TO CLOSING** .......55
| | | |
|---|---|---|
| 7.1 | Conditions Precedent of the Parties | 55 |
| 7.2 | Sellers' Conditions Precedent | 56 |
| 7.3 | Buyers' Conditions Precedent | 57 |

**ARTICLE VIII RIGHT OF TERMINATION AND ABANDONMENT** .......59
| | | |
|---|---|---|
| 8.1 | Termination | 59 |
| 8.2 | Remedies | 61 |
| 8.3 | Specific Performance | 61 |

**ARTICLE IX CLOSING** .......62
| | | |
|---|---|---|
| 9.1 | Date of Closing | 62 |
| 9.2 | Closing Obligations | 62 |

**ARTICLE X POST-CLOSING OBLIGATIONS AND COVENANTS** .......63
| | | |
|---|---|---|
| 10.1 | Field Data and Records | 63 |
| 10.2 | Suspense Funds; Prepaid JOA Funds | 63 |
| 10.3 | Post-Closing Asset Reconciliation | 63 |
| 10.4 | Assignments; Operatorship | 64 |
| 10.5 | Confidentiality | 65 |
| 10.6 | Seller Marks License | 66 |
| 10.7 | Power of Attorney | 66 |
| 10.8 | No Successor Liability | 66 |
| 10.9 | Access to Records | 67 |
| 10.10 | Payment of Assumed Liabilities | 67 |
| 10.11 | Payment of Retained Liabilities | 68 |
| 10.12 | Accounts Receivables | 68 |
| 10.13 | Directors' and Officers' Indemnification | 69 |
| 10.14 | Rights of Use | 71 |
| 10.15 | Post-Closing Agreements | 71 |
| 10.16 | Effective Date Payments | 72 |

**ARTICLE XI ASSUMPTION AND RETENTION OF LIABILITIES** .......72
| | | |
|---|---|---|
| 11.1 | Buyer's Assumption of Liabilities | 72 |
| 11.2 | Sellers' Retention of Liabilities | 73 |
| 11.3 | Reservation as to Third Persons | 75 |

**ARTICLE XII MISCELLANEOUS** .......75
| | | |
|---|---|---|
| 12.1 | Expenses | 75 |
| 12.2 | Notices | 75 |
| 12.3 | Amendments | 77 |

iii

**TABLE OF CONTENTS**

**(continued)**

                                                                                          **Page**

12.4     Waiver ...................................................................................................................77
12.5     No Third-Party Beneficiaries ..............................................................................77
12.6     Assignment ...........................................................................................................77
12.7     Counterparts .........................................................................................................78
12.8     Governing Law; Jurisdiction; Venue; Jury Trial .................................................78
12.9     Entire Agreement ..................................................................................................78
12.10    Binding Effect .......................................................................................................79
12.11    Time of the Essence ..............................................................................................79
12.12    No Partnership; No Fiduciary Duty ......................................................................79
12.13    Obligations of the Sellers .....................................................................................79
12.14    No Recourse ..........................................................................................................79
12.15    Disclosure Schedules ............................................................................................79
12.16    Other Contract Interpretation ...............................................................................80

**ARTICLE XIII    SURVIVAL AND INDEMNIFICATION** ...................................................81
13.1     Survival; Limited Recourse Against Sellers .........................................................81
13.2     Indemnification by Buyer .....................................................................................82
13.3     Indemnification Procedures ..................................................................................82


Annex I          Definitions

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

## EXHIBIT LIST[1]

| Exhibit | Title |
|---|---|
| EXHIBIT A | Leases |
| EXHIBIT B | Easements |
| EXHIBIT C | Scheduled Wells |
| EXHIBIT D | Platforms and Facilities |
| EXHIBIT D-1 | Inventory |
| EXHIBIT E | Permits |
| EXHIBIT F | Seismic Data |
| EXHIBIT G | Form of Assignment, Bill of Sale and Conveyance for Co-Owned Assets |
| EXHIBIT H | Form of Assignment, Bill of Sale and Conveyance for Other Assets |
| EXHIBIT I | Form of Assignment and Assumption Agreement |
| EXHIBIT J | Form of Assignment of Leases and Subleases |
| EXHIBIT K | Form of Office Assets Conveyance |
| EXHIBIT L | [Reserved] |
| EXHIBIT M | [Reserved] |
| EXHIBIT N | [Reserved] |
| EXHIBIT O | [Reserved] |
| EXHIBIT P | Form of Transition Services Agreement |
| EXHIBIT Q | Form of SEMS Bridging Agreement |
| EXHIBIT R | Form of ST 308 Performance Bond |
| EXHIBIT S | Form of Release Document |
| EXHIBIT T | Form of Farmout Agreement |
| EXHIBIT U | [Reserved] |
| EXHIBIT V | [Reserved] |
| EXHIBIT W | Form of Funding Agreement |
| EXHIBIT X | Working Capital |
| EXHIBIT X-1 | Working Capital Estimate |
| EXHIBIT Y | Specified Oil and Gas Interests |

---

[1] Note to Draft: Exhibits are subject to ongoing review and comment by Buyer and are subject to change in all respects.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

| Exhibit | Title |
|---------|-------|
| EXHIBIT Z | Specified P&A Equipment |

**SCHEDULE LIST**

| Schedule | Title |
|----------|-------|
| Schedule 1.2 | Applicable Shared Asset Interests |
| Schedule 1.3(d) | Scheduled Exclusions |
| Schedule 4.6 | Litigation |
| Schedule 4.7 | Governmental Approvals |
| Schedule 4.8(a) | Preferential Rights |
| Schedule 4.8(b) | Applicable Consents |
| Schedule 4.9 | Taxes |
| Schedule 4.9(p) | Entity Classifications |
| Schedule 4.12 | Environmental Matters |
| Schedule 4.13 | Payments |
| Schedule 4.14 | Material Contracts |
| Schedule 4.14(c) | Leases and Easements |
| Schedule 4.15 | Imbalances |
| Schedule 4.16(a) | AFEs |
| Schedule 4.16(b) | Cash Calls |
| Schedule 4.18 | Employee Benefits |
| Schedule 4.19 | Non-Consent Operations |
| Schedule 4.20 | Suspense Funds |
| Schedule 4.21 | Payout Balances |
| Schedule 4.22 | Title Matters |
| Schedule 4.22(d) | Owned Real Property |
| Schedule 4.23 | Insurance |
| Schedule 4.24 | Related Party Transactions |
| Schedule 4.25(a) | Owned Intellectual Property |
| Schedule 4.27 | Material Liabilities |
| Schedule 4.28(b) | Absence of Certain Changes |

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

| Schedule | Title |
|----------|-------|
| Schedule 4.31(c) | Equity Interests of Fieldwood Mexico and Subsidiaries |
| Schedule 4.31(d) | Fieldwood U.A. Interests |
| Schedule 4.31(f) | Fieldwood U.A. Liabilities |
| Schedule 5.1(c) | Buyer Grandparent Equity Interests |
| Schedule 5.7 | Buyer Governmental and Third Person Consents |
| Schedule 5.9 | Lease Bonds, Area-Wide Bonds, Surety Bonds and Insurance Policies |
| Schedule 6.1(a) | Sellers' Required Operations |
| Schedule 6.1(b) | Sellers' Disallowed Operations |
| Schedule 6.7(g) | Required Assigned 365 Contracts |
| Schedule 6.22 | Seller Employees |
| Schedule 7.3(i) | Required Novations |
| Schedule 7.3(l) | Required Governmental Approvals |
| Schedule 10.13(a) | Existing D&O Indemnification Terms |
| Schedule 10.13(e) | D&O Indemnified Parties |
| Schedule 10.14 | Right of Use Easements (RUEs) |

[End of Table of Contents]

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

## PURCHASE AND SALE AGREEMENT[2]

This Purchase and Sale Agreement (this "***Agreement***") is made as of [_____] [____], 2021 (the "***Execution Date***") by and among (a) Fieldwood Energy LLC, a Delaware limited liability company ("***Fieldwood***"), Fieldwood Energy Inc., a Delaware corporation, Dynamic Offshore Resources NS, LLC, a Texas limited liability company, Fieldwood Energy Offshore LLC, a Delaware limited liability company, Fieldwood Onshore LLC, a Delaware limited liability company, Fieldwood SD Offshore LLC, a Delaware limited liability company, Fieldwood Offshore LLC, a Delaware limited liability company, Bandon Oil and Gas GP, LLC, a Delaware limited liability company, Bandon Oil and Gas, LP, a Delaware limited partnership, Fieldwood Energy SP LLC, a Louisiana limited liability company, Galveston Bay Pipeline LLC, a Delaware limited liability company, and Galveston Bay Processing LLC, a Delaware limited liability company, (b) subject to <u>Section 1.5</u>, FW GOM Pipeline, Inc., a Delaware corporation ("***FW GOM Pipeline***"), and GOM Shelf LLC, a Delaware limited liability company ("***GOM Shelf***" and each of the other entities specified in <u>clauses (a)</u> and <u>(b)</u>, a "***Seller***" and collectively the "***Sellers***"), and (c) [_____], a [Delaware limited liability company] ("***Buyer***"), and [_____], [a Delaware limited liability company and a wholly-owned subsidiary of Buyer] ("***Buyer 2***").  The Sellers, Buyer and Buyer 2 may be referred to individually as a "***Party***" or collectively as the "***Parties.***"  Capitalized terms used in this Agreement have the meanings referenced in **<u>Annex I</u>** to this Agreement.

## RECITALS

A.      The Sellers desire to sell, and Buyer desires to purchase, all of the Acquired Interests on the terms and subject to the conditions set forth below.

B.      On August 3, 2020 and August 4, 2020, the Sellers (collectively, the "***Debtors***") filed voluntary petitions (the "***Bankruptcy Cases***") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended from time to time, the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***").

C.      [Buyer has provided to the Sellers at or prior to the execution of this Agreement a copy of a fully executed and effective direction letter (the "***Direction Letter***") causing to be delivered at Closing such portion of the **[Obligations]** (as defined in the Credit Agreement) as is necessary to allow for payment of the Credit Bid and Release.][3]

D.      Pursuant to the Plan, and as consideration for the transactions contemplated by the Direction Letter, each holder of Allowed FLTL Claims (as defined in the Plan) will receive its pro rata portion (as determined pursuant to the Plan and the Confirmation Order) of (a) on the Effective Date, the Credit Bid and Release New Equity Interests and (b) if and when issuable pursuant to

---

[2] <u>Note to Draft</u>: Subject to review by Administrative Agent.

[3] <u>Note to Draft</u>: Subject to review by Administrative Agent.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

the Plan, Confirmation Order, or any other order entered by the Bankruptcy Court, the FLTL Subscription Rights.

E.     Pursuant to the Plan, each holder of Allowed SLTL Claims (as defined in the Plan) will receive its pro rata portion (as determined pursuant to the Plan and the Confirmation Order) of, if and when issuable pursuant to the Plan, Confirmation Order, or any other order entered by the Bankruptcy Court, the SLTL Subscription Rights.

F.     Following Fieldwood's receipt of the GUC Warrants and the SLTL Warrants pursuant to <u>Section 9.2(j)</u>, Fieldwood will cause such GUC Warrants and SLTL Warrants to be distributed and received by the Persons entitled to receipt of such interests pursuant to the Plan on the Effective Date in accordance with the Plan.

G.     Upon the terms and subject to the conditions set forth herein, the Parties intend to effectuate the transactions contemplated by this Agreement through a sale of the Acquired Interests pursuant to Sections 105, 363, 365, 1123(a)(5)(D), 1129, 1141 and 1146 of the Bankruptcy Code, and Rules 4001, 6004, 6006 and 3020 of the Federal Rules of Bankruptcy Procedure of the Bankruptcy Code (as amended from time to time, the "***Bankruptcy Rules***").

H.     The execution and delivery of this Agreement and the Sellers' ability to consummate the transactions contemplated by this Agreement are subject to, among other things, the Bankruptcy Court's entry of the Confirmation Order.

<div align="center">

**AGREEMENT**

</div>

In consideration of the recitals above, the provisions below and other good and valuable cause and consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer, Buyer 2 and the Sellers agree as follows:

<div align="center">

**ARTICLE I**
**PURCHASE AND SALE**

</div>

1.1     <u>Purchase and Sale</u>.     Subject to the provisions hereof and the entry of the Confirmation Order, Buyer agrees to purchase and accept from the Sellers and the Sellers agree to sell, assign, convey, transfer and deliver, or cause to be sold, assigned conveyed, transferred and delivered to Buyer at the Closing, the Acquired Interests free and clear of any and all Encumbrances (other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances)); *provided* that Buyer and Buyer 2 may determine in their sole discretion that certain Fieldwood U.A. Interests and certain JV Interests may be acquired by Buyer 2 instead of by Buyer, in which case all references hereto to Buyer with respect to such Fieldwood U.A. Interests or JV Interests shall be understood to be to Buyer 2 instead of Buyer.

1.2     <u>Acquired Interests; Assets</u>.     As used herein, the term "***Acquired Interests***" refers to (x) all of each Seller's right, title and interest in, to, under or derived from the Co-Owned Assets excluding the FWE I Assets and the GOM Shelf Oil and Gas Properties other than the Applicable Shared Asset Interests (which Applicable Shared Asset Interests shall be "Co-Owned Assets") and (y) all of each Seller's right, title and interest in, to, under or derived from the Other Assets.  As

<div align="center">2</div>

used herein, the term "*Assets*" means the Co-Owned Assets and Other Assets, wherever located, real, personal or mixed, tangible or intangible, known or unknown, as the same shall exist as of the Closing.  As used herein, the term "*Co-Owned Assets*" means the following (*provided*, that (subject to the following provisos) Buyer may, from time to time prior to the Designation Deadline, subject to obtaining the Sellers' prior written consent (in the Sellers' sole discretion (it being understood that Buyer shall not add to or remove from the "Co-Owned Assets" any FWE I Asset or GOM Shelf Oil and Gas Properties provided that the foregoing shall not prevent the addition or removal of Applicable Shared Asset Interests as appropriate (which may be added or removed with the Sellers' prior written consent))), add any assets to or remove any assets from the "Co-Owned Assets" (and, in the event an asset is added or removed, to the extent applicable, add, modify or remove any related Liabilities to or from the "Assumed Liabilities") and any affected Exhibit or Schedule (including **Schedule 1.3(d)**) will be updated accordingly, and if Buyer removes any asset from the "Co-Owned Assets" Buyer shall indemnify the Sellers with respect to any Liability incurred by the Sellers as a result of the removal by Buyer of any Co-Owned Asset and the retention by the Sellers of such "Co-Owned Asset"; *provided, further,* that (notwithstanding anything to the contrary in this <u>Section 1.2</u>), Buyer may not remove any assets from the "Co-Owned Assets" after the Designation Deadline):

(a)     the oil and gas leases (and other agreements) described in **Part 1** of **<u>Exhibit A</u>**, but excluding the FWE I Assets and the GOM Shelf Oil and Gas Properties (collectively, the "*Co-Owned Leases*"), including all Working Interests, Net Revenue Interests, royalty interests, overriding royalty interests, production payments, net profits interests, carried interests, reversionary interests (including rights under non-consent provisions), possibilities of reverter, conversion rights and options, fee mineral interests and other interests of every kind and character in, to, under or derived from any Co-Owned Lease or any land subject to, covered by or included within any Co-Owned Lease (except that, solely as to each of lease OCS-00786 covering South Marsh Island 48 and lease OCS-G 1609 covering South Pass 61, the interests in such lease to be conveyed hereunder are solely the overriding royalty interests held by the Sellers in such lease);

(b)     (i) each Unit that includes any of the lands covered by or subject to any Co-Owned Lease (each, a "*Co-Owned Subject Unit*"), (ii) each pooling, unitization or communitization declaration, designation, agreement or order creating or modifying any Co-Owned Subject Unit (each, a "*Co-Owned Subject Unit Agreement*") and (iii) the oil and gas leases and lands subject to, covered by or included within each Co-Owned Subject Unit;

(c)     all servitudes, rights of way, easements, surface leases, subsurface agreements and similar rights and agreements related to or held for use in connection with (in each case, whether or not located on) any land subject to or covered by any Co-Owned Lease or Co-Owned Subject Unit (collectively, the "*Co-Owned Easements*"), including those described in **Part 1** of **<u>Exhibit B</u>**;

(d)     all wells (whether producing, not producing, shut-in, temporarily abandoned, injection, disposal or otherwise) owned or operated in connection with any of the Co-Owned Leases or Co-Owned Subject Units, whether or not such well is located on any land subject to or covered by any Co-Owned Lease or Co-Owned Subject Unit (collectively, the "*Co-Owned Wells*"), including those described in **Part 1** of **<u>Exhibit C</u>** (such wells, the "*Co-Owned Scheduled Wells*");

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(e)      all equipment, machinery, structures, fixtures, inventory, vehicles, rolling stock, improvements and other movable property related to, used or held for use in connection with or held as inventory in connection with (in each case, whether or not located on) any Co-Owned Lease, Co-Owned Subject Unit, Co-Owned Easement, lands covered by or subject to any Co-Owned Lease, Co-Owned Subject Unit or Co-Owned Easement or Co-Owned Well (including well equipment; casing; rods; tanks and tank batteries; boilers; tubing; pumps; pumping units and engines; Christmas trees; production facilities; dehydration units and facilities; heater-treaters; compressors; testing and sampling equipment; sulfur recovery units and facilities; valves; gauges; supervisory control and data acquisition (SCADA) systems, equipment and related software; meters and other measurement equipment; flow lines; pipelines; gathering systems; processing systems or facilities; umbilicals; caissons; water systems (whether for source water, treatment, disposal, injection or otherwise); the platforms and facilities listed in **Part 1** of **Exhibit D**; and all additions and accessions to, substitutions for and replacements of any of the foregoing, together with all attachments, components, parts, equipment, supplies, pipes, tools, casing, tubing, tubulars, fittings and accessories in connection with any of the foregoing), including the foregoing listed in **Part 1** of **Exhibit D-1** (collectively, the "***Co-Owned Inventory***");

(f)      (i) all oil, gas, minerals, condensate, distillate, natural gasoline, natural gas liquids, plant products and other liquid or gaseous hydrocarbons and all other substances produced with any of the foregoing hydrocarbons (collectively, "***Hydrocarbons***") (A) that are produced on, or the right to explore for which, or an interest in which, is granted pursuant to, any Co-Owned Lease, Co-Owned Subject Unit or Co-Owned Subject Unit Agreement or (B) that are located in any Co-Owned Inventory; and (ii) all proceeds from the sale of any such Hydrocarbons;

(g)      all Permits (and pending applications therefor) that pertain or relate in any way to any of the Co-Owned Field Assets, including the Permits listed in **Part 1** of **Exhibit E**, to the extent assignable by the Sellers to Buyer or Buyer 2;

(h)      subject to Section 6.7, all Co-Owned Assigned Contracts;

(i)      all rights (including intangible and inchoate rights), Claims, rights of set-off, rights under warranties and indemnities made by prior owners, manufacturers, vendors and Third Persons or accruing under applicable statutes of limitation or prescription, insofar only as the foregoing relate or are attributable to any of the other Co-Owned Assets or to any Assumed Liabilities, including any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the Co-Owned Assets;

(j)      to the extent transferable by the Sellers to Buyer at Closing without payment of a fee or other penalty to any Third Party pursuant to any Contract (unless Buyer has, prior to the Closing, separately agreed in writing to pay such fee or penalty), all seismic data (conventional, three dimensional or otherwise; whether owned or licensed; and including original field tapes) (including all such data relating to those licenses and agreements listed in **Part 1** of **Exhibit F**), log cores, geological, reserve engineering and other scientific and technical information, samples, tests, reports, maps and data that relate to any of the Co-Owned Field Assets or any land on which any Co-Owned Field Asset is located (collectively, the "***Co-Owned Field Data***");

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(k)    all files, records (including reservoir, production, operation, contract, land and title records; drawings, maps, plats and surveys; abstracts of title, title insurance policies, title opinions and title curative; lease, prospect, contract, division order, marketing, correspondence, operations, environmental, production, processing, accounting, Property-Related Tax, Production Tax, Transfer Tax, regulatory compliance, facility and well records and files; supplier lists and files; customer lists and files; and reports to any Governmental Authority), databases, data and other information (in each case, whether in written or electronic format) that relate to any of the other Co-Owned Assets (collectively, the "***Co-Owned Records***");

(l)    [reserved];

(m)    all raw materials, work-in-process, finished goods, supplies and other inventories related to, used or held for use in connection with (in each case, whether or not located on) any Co-Owned Lease, Co-Owned Subject Unit, Co-Owned Easement or Co-Owned Well;

(n)    all goodwill associated with any Co-Owned Asset; and

(o)    all credits or other rights to prepaid expenses, deposits, advances, prepayments, excess or unearned premiums, costs, and other refunds attributable to any Co-Owned Assets (excluding Excluded Prepaid JOA Funds).

As used herein, the term "***Other Assets***" means the assets described in clauses (p) through (rr) below; *provided*, that, from time to time prior to the Designation Deadline, Buyer may, in its sole discretion (subject to the following provisos), (x) add any assets to the "Other Assets" or (y) remove any Other Assets from the "Other Assets" (other than (1) to add any Co-Owned Assets to, or to remove any Co-Owned Assets from, the Other Assets or (2) the assets or items set forth in clauses (aa), (ee), (gg), (ii), (oo) or (pp) of this Section 1.2), and, in the event an asset is added or removed, to the extent applicable, add, modify or remove any related Liabilities to or from the "Assumed Liabilities" (and any affected Exhibit or Schedule (including **Schedule 1.3(d)**) will be updated accordingly); *provided*, *however*, that Buyer may not add or remove any FWE I Asset or GOM Shelf Oil and Gas Property; *provided, further,* that (notwithstanding anything to the contrary in this Section 1.2), Buyer may not remove any assets from the "Other Assets" after the Designation Deadline; and, *provided*, *further*, that Buyer may not (i) remove any assets from the "Other Assets" unless Buyer has agreed in writing to indemnify Sellers with respect to any Liability incurred by any Seller as a result of the retention by Sellers of such "Other Asset" or (ii) add any assets to the Other Assets if such addition would require a Governmental Approval (except for those which are obtained post Closing) that would reasonably be expected to materially delay the Closing); *provided*, *further* that Buyer may remove any such asset if Buyer increases the Cash Portion to include the amount of such Liability:

(p)    the oil and gas leases (and other agreements) described in **Part 2** of **Exhibit A** (collectively, the "***Other Leases***"), including all Working Interests, Net Revenue Interests, royalty interests, overriding royalty interests, production payments, net profits interests, carried interests, reversionary interests (including rights under non-consent provisions), possibilities of reverter, conversion rights and options, fee mineral interests and other interests of every kind and character in, to, under or derived from any Other Lease or any land subject to, covered by or included within any Other Lease (except that, (x) solely as to lease OCS-G 12210

5

covering Green Canyon 201, the interests in such lease to be conveyed hereunder exclude any record title or operating rights in the NE1/4 of Block 201, Green Canyon, (y) solely as to lease OCS-G 10794 covering Ship Shoal 301, Fieldwood's overriding royalty interest in such lease is not to be conveyed hereunder; and (z) solely as to each of OCS-G 1449 covering portions of West Delta 57, 79 and 80, OCS-G 1874 covering portions of West Delta 79 and 80 and OCS-G 1989 and OCS-G 2136 covering portions of West Delta 80, the interests in such lease to be conveyed hereunder are solely the overriding royalty interests held by the Sellers in such lease);

(q)      (i) each Unit that includes any land covered by or subject to any Other Lease (each, a "*Other Subject Unit*"), (ii) each pooling, unitization or communitization declaration, designation, agreement or order creating or modifying any Other Subject Unit (each, a "*Other Subject Unit Agreement*") and (iii) the oil and gas leases and lands subject to, covered by or included within each Other Subject Unit;

(r)      all servitudes, rights of way, easements, surface leases, subsurface agreements and similar rights and agreements located on (or related to or held for use in connection with (in each case, whether or not located on)) any land subject to or covered by any Other Lease or Other Subject Unit (collectively, the "*Other Easements*"), including those described in **Part 2** of **Exhibit B**;

(s)      all wells (whether producing, not producing, shut-in, temporarily abandoned, injection, disposal or otherwise) owned or operated in connection with any Other Lease or Other Subject Unit, whether or not such well is located on any land subject to or covered by any Other Lease or Other Subject Unit (collectively, the "*Other Wells*"), including those described in **Part 2** of **Exhibit C** (such wells, the "*Other Scheduled Wells*");

(t)      all equipment, machinery, structures, fixtures, inventory, vehicles, rolling stock, improvements and other movable property related to, used or held for use in connection with or held as inventory in connection with (in each case, whether or not located on) any Other Lease, Other Subject Unit, Other Easement, lands covered by or subject to any Other Lease, Other Subject Unit or Other Easement or Other Well (including well equipment; casing; rods; tanks and tank batteries; boilers; tubing; pumps; pumping units and engines; Christmas trees; production facilities; dehydration units and facilities; heater-treaters; compressors; testing and sampling equipment; sulfur recovery units and facilities; valves; gauges; supervisory control and data acquisition (SCADA) systems, equipment and related software; meters and other measurement equipment; flow lines; pipelines; gathering systems; processing systems or facilities; umbilicals; caissons; water systems (whether for source water, treatment, disposal, injection or otherwise); the platforms and facilities listed in **Part 2** of **Exhibit D**; and all additions and accessions to, substitutions for and replacements of any of the foregoing, together with all attachments, components, parts, equipment, supplies, pipes, tools, casing, tubing, tubulars, fittings and accessories in connection with any of the foregoing), including the foregoing listed in **Part 2** of **Exhibit D-1** (collectively, the "*Other Inventory*");

(u)      (i) all Hydrocarbons (A) that are produced on, or the right to explore for which, or an interest in which, is granted pursuant to, any Other Lease, Other Subject Unit or Other Subject Unit Agreement or (B) that are located in any Other Inventory; and (ii) all proceeds from the sale of any such Hydrocarbons;

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(v)      all Permits (and pending applications therefor) that pertain or relate in any way to any of the Other Field Assets, including the Permits listed in **Part 2** of **Exhibit E**, to the extent assignable by the Sellers to Buyer or Buyer 2;

(w)      all rights (including intangible and inchoate rights), Claims, rights of set-off, rights under warranties and indemnities made by prior owners, manufacturers, vendors and Third Persons or accruing under applicable statutes of limitation or prescription, insofar only as the foregoing relate or are attributable to any of the Other Assets, including any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the Other Assets;

(x)      to the extent transferable by the Sellers to Buyer at Closing without payment of a fee or other penalty to any Third Party pursuant to any Contract (unless Buyer has, prior to the Closing, separately agreed in writing to pay such fee or penalty), (i) all seismic data (conventional, three dimensional or otherwise; whether owned or licensed; and including original field tapes) (including all such data relating to those licenses and agreements listed in **Part 2** of **Exhibit F**), log cores, geological, reserve engineering and other scientific and technical information, samples, tests, reports, maps and data that relate to any of the Other Field Assets or any land on which any Other Field Asset is located and (ii) copies of all proprietary seismic data (conventional, three dimensional or otherwise), log cores, geological, reserve engineering and other scientific and technical information, samples, tests, reports, maps and data that relate to any of the FWE I Oil and Gas Properties or any land on which any FWE I Oil and Gas Property is located (collectively, the "*Other Field Data*");

(y)      all files, records (including reservoir, production, operation, contract, land and title records; drawings, maps, plats and surveys; abstracts of title, title insurance policies, title opinions and title curative; lease, prospect, contract, division order, marketing, correspondence, operations, environmental, production, processing, accounting, Property-Related Tax, Production Tax, Transfer Tax, regulatory compliance, facility and well records and files; supplier lists and files; customer lists and files; and reports to any Governmental Authority), databases, data and other information (in each case, whether in written or electronic format) that relate to any of the Other Assets (collectively, the "*Other Records*");

(z)      subject to Section 6.7, all of the Other Assigned Contracts;

(aa)     all Working Capital Assets;

(bb)     all of the Sellers' rights, title and interest as borrowers under the Prepetition FLFO Credit Agreement (as defined in the Plan) as modified to the extent set forth in the First Lien Exit Facility Documents (as defined in the Plan);

(cc)     all raw materials, work-in-process, finished goods, supplies and other inventories located on (or related to, used or held for use in connection with (in each case, whether or not located on)) any Other Lease, Other Subject Unit, Other Easement or Other Well;

(dd)     all goodwill associated with the Other Assets;

(ee)     the Office Sublease, the Lafayette Lease Agreement, the Warehouse Lease and the Lubrizol Sublease and, in each case, the premises demised thereunder, all fixtures and

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

appurtenances thereto, and all furniture and other personal (movable) property located therein (collectively, the "***Office Assets***");

(ff)    all credits or other rights to prepaid expenses, deposits, advances, prepayments, excess or unearned premiums, costs, and other refunds attributable to the Other Assets;

(gg)    all (i) Suspense Funds and Undisbursed Revenue related to the Acquired Interests and (ii) Prepaid JOA Funds;

(hh)    all futures, options, swaps and other derivatives with respect to the sale of Hydrocarbons described in <u>clauses (f)</u> or <u>(u)</u> of this <u>Section 1.2</u> and novated to Buyer pursuant to <u>Section 6.15</u> (the "***Hedges***");

(ii)    all assets relating to the Assumed Employee Plans (to the extent funded);

(jj)    all of the Sellers' economic analyses and pricing forecasts relating to any of the Assets;

(kk)    all Transferred Intellectual Property;

(ll)    all Seller IT Assets;

(mm)    all Tax refunds other than those described in <u>Section 1.3(f)</u>;

(nn)    all collateral securing any bond provided for any of the Assets;

(oo)    all memberships (*lidmaatschap*), including all membership rights (*lidmaatschapsrechten*) of Fieldwood U.A. held by any Seller (the "***Fieldwood U.A. Interests***") and all shares in the capital of Fieldwood Mexico and any of its Subsidiaries (Fieldwood Mexico and its Subsidiaries, collectively, the "***Mexico JV***") held by any Seller (the "***JV Interests***"), and all rights, interests and title in and to such Seller's equity ownership of, and all present and future rights of such Seller as an equity holder of, Fieldwood U.A. or the Mexico JV, as applicable, both actual and contingent, including all distributions of profits, dividends, distribution of reserves, repayments of capital, liquidation or dissolution proceeds and all other distributions, payments and repayments in respect of such equity ownership and any right to receive the same, and all other rights in respect of such equity ownership under or pursuant to the organizational documents of and any equity holders' agreement in respect of Fieldwood U.A. or the Mexico JV, as applicable;

(pp)    the Specified P&A Equipment;

(qq)    all proceeds recovered under the Tail Policy, but only with respect to reimbursement of D&O Indemnified Liabilities actually paid by Buyer pursuant to <u>Section 10.12</u>; and

(rr)    all rights, claims, demands and causes of action of the Sellers relating to the Acquired Interests or the Assumed Liabilities, including those set forth on <u>Schedule 1.2(rr)</u>;

8

*provided* that this <u>clause (rr)</u> shall not apply with respect to or in connection with Taxes or Tax refunds.

     1.3    <u>Excluded Assets</u>.  The Assets and Acquired Interests do not include, and there is hereby expressly excepted and excluded therefrom and reserved to the Sellers, all assets and properties of each Seller and its Affiliates that are not described or otherwise identified as Acquired Interests in <u>Section 1.2</u>, including the following assets and properties (the "***Excluded Assets***"):

     (a)    all corporate, financial, legal (other than title opinions) and tax records of the Sellers, but excluding Records;

     (b)    other than (i) the Fieldwood U.A. Interests and the shares of capital stock or equity interests of any Person held, directly or indirectly, by Fieldwood U.A. and (ii) the JV Interests and the shares of capital stock or equity interests of any Person held, directly or indirectly, by Fieldwood Mexico and its Subsidiaries, any shares of capital stock or other equity interest held by the Sellers in any other Person;

     (c)    all BOEM operator numbers;

     (d)    all of the Sellers' right, title and interest in and to those interests, rights, properties and assets more particularly described on **<u>Schedule 1.3(d)</u>** as such Schedule may be amended in accordance with <u>Section 2.6</u>;

     (e)    all of the Sellers' right, title and interest in, to and under any of the FWE I Assets, other than any Applicable Shared Asset Interests added to the Co-Owned Assets or Other Assets by Buyer pursuant to the terms of <u>Section 1.2</u>;

     (f)    all Tax refunds attributable to the Retained Liabilities;

     (g)    all Excluded Contracts;

     (h)    all assets of any Employee Plan that are not Assumed Employee Plans;

     (i)    all Intellectual Property owned or purported to be owned by any Seller (other than Transferred Intellectual Property);

     (j)    all insurance policies held by the Sellers;

     (k)    all rights, claims, demands and causes of action of the Sellers under this Agreement;

     (l)    all cash held in accounts of the Sellers, other than (i) Suspense Funds, (ii) Undisbursed Revenue and (iii) Prepaid JOA Funds;

     (m)    any and all Claims of any Seller against other Persons pertaining to Imbalances attributable to the FWE I Assets;

     (n)    the Specified Excluded Receivables;

(o)    all Avoidance Actions;

(p)    as to each of lease OCS-G 1449 covering portions of West Delta 57, 79 and 80, OCS-G 1874 covering portions of West Delta 79 and 80, OCS-G 1989 and OCS-G 2136 covering portions of West Delta 80, OCS-00786 covering South Marsh Island 48 and lease OCS-G 1609 covering South Pass 61, any interest other than any overriding royalty interests held by the Sellers in such lease;

(q)    solely as to lease OCS-G 12210 covering Green Canyon 201 any record title or operating rights (for the avoidance of doubt, not including any overriding royalty interests) in the NE1/4 of Block 201, Green Canyon; and

(r)    solely as to lease OCS-G 10794 covering Ship Shoal 301, Fieldwood's overriding royalty interest in such lease.

1.4    <u>Effective Time</u>.  The purchase and sale of the Acquired Interests shall be effective as of 7:00 am (Central Prevailing Time) on the Closing Date (the "***Effective Time***").

1.5    <u>Certain Sellers</u>.  The Parties agree that each of FW GOM Pipeline and GOM Shelf have executed this Agreement as Sellers solely for the purpose of selling, assigning, conveying, transferring and delivering to Buyer any Acquired Interests held by such entities as of the Closing pursuant to this <u>Article I</u> and the applicable Transfer Documents, and without limiting the applicability of covenants and representations to the closing conditions set forth in <u>Article VII</u> neither FW GOM Pipeline nor GOM Shelf makes, or shall have any obligation or liability with respect to, any other covenant or representation of the Sellers made under this Agreement or any certificate delivered pursuant hereto.  For the avoidance of doubt, neither FW GOM Pipeline or GOM Shelf shall be required or obligated to sell, assign, convey, transfer or deliver to Buyer or Buyer 2 any of the GOM Shelf Oil and Gas Properties.  Notwithstanding anything to the contrary, Fieldwood Energy I, GOM Shelf, and their Subsidiaries shall have no liability under this Agreement or any Ancillary Document (including, without limitation, for breach, misrepresentation, fraud, breach of warranty, or otherwise) or relating to the sale or purchase of the Acquired Interests, the operation or business of the Acquired Interests, or any other transactions contemplated by this Agreement or any Ancillary Document, except for any breach (i) by Fieldwood Energy I of its obligations pursuant to Section 3(b)(i) of the Plan of Merger (as contemplated by <u>Section 10.12(e)</u>) or (ii) by FW GOM Pipeline or GOM Shelf of its obligations pursuant to <u>Sections 9.2</u>, <u>10.2</u>, <u>10.3</u>, <u>10.4</u>, <u>10.5</u>, <u>10.6</u>, <u>10.7</u>, <u>10.9</u> and, in respect of its interest in an asset which is also in part a Co-Owned Asset, <u>10.11</u>.

<div align="center">

**ARTICLE II**
**CONSIDERATION**

</div>

2.1    <u>Consideration</u>.

(a)    The aggregate consideration to be paid by Buyer and Buyer 2 to the Sellers with respect to the sale to Buyer and Buyer 2 of the Acquired Interests shall consist of the following (collectively, the "***Consideration***"): (1) a credit bid and equivalent release of the Sellers and any guarantors (and their respective successors and assigns) from a portion of the Claims arising under the Credit Agreement, in an aggregate amount up to the FLTL Claims Allowed Amount (as defined

<div align="center">10</div>

in the Plan) (the "*Credit Bid and Release*")[4], (2) the Cash Portion, (3) the GUC Warrants, (4) the SLTL Warrants, (5) the Subscription Rights and (6) Buyer's assumption of the Assumed Liabilities (including, for the avoidance of doubt, the Liabilities set forth in Section 11.1(o))[5].  For the avoidance of doubt, the Credit Bid and Release will not include all of the Claims arising under the Credit Agreement, and (x) the portion of such Claims not included in the Credit Bid and Release will not be transferred to Sellers by Buyer and Buyer 2 pursuant to this Agreement and (y) the holder(s) thereof will be entitled to receive the distribution of the FLTL Subscription Rights by the Debtors pursuant to, and as contemplated by, the Plan.

(b)     Prior to the Closing, the Sellers and Buyer shall in good faith endeavor to agree upon the Closing Cash Amount, the Effective Date Cash Obligations and the Effective Date Cash Obligations Amount in accordance with the definitions thereof.

(c)     The Parties hereby agree that, for U.S. federal income tax purposes, the assumption by Buyer of the remaining Allowed FLFO Claims (as such term is defined in the Plan) pursuant to Section 11.1(o) hereof shall be treated as if: (i) Buyer issues a debt instrument to the Sellers ("**Buyer Obligation**") with terms that are identical (with the exception of the obligor) to the terms of the Buyer Parent Debt (defined below) as additional consideration for the Acquired Interests, (ii) the Sellers deliver the Buyer Obligation to holders of Allowed FLFO Claims (as such term is defined in the Plan) (together with the FLFO Distribution Amount (as such term is defined in the Plan)) in satisfaction of their Allowed FLFO Claims (as such term is defined in the Plan), in a transaction that constitutes a "significant modification" within the meaning of Treasury Regulations Section 1.1001-3, and (iii) Buyer Parent issues the First Lien Exit Facility (as such term is defined in the Plan) (the "**Buyer Parent Debt**") to holders of Allowed FLFO Claims (as such term is defined in the Plan) in substitution of the Buyer Obligation, thereby assuming Buyer's obligation with respect to the Buyer Obligation. The parties further agree that (i) the issue price, within the meaning of Section 1273 of the Code, of the Buyer Obligation is equal to the issue price of the Buyer Parent Debt and (ii) the Sellers shall take into account for U.S. federal income tax purposes any cancellation of debt consequences under the Code, resulting from or in connection with (including as a result of the application of Treasury Regulations Section 1.1274-5, if applicable) or arising from the transactions described in this paragraph.

2.2    Allocation of Adjusted Consideration.  The Parties acknowledge and agree that the Credit Bid and Release and the Cash Portion (and the Assumed Liabilities, taking into account Section 2.1(c), and other relevant items, to the extent properly taken into account under the federal income Tax principles as consideration for the Acquired Interests) shall be allocated among the Acquired Interests in accordance with Section 1060 of the Code and the Treasury Regulations thereunder (and any similar provision of state, local or non-U.S. Law, as appropriate).  Buyer shall, as promptly as practicable after the Closing Date, but in no case later than one hundred twenty

---

[4] Note to Draft: Credit Bid and Release to be equal to at least $1.03 billion, less (i) the Cash Portion, (ii) the GUC Warrants, (iii) the SLTL Warrants, (iv) the Subscription Rights and (v) the amount of the First Lien Exit Facility on the Closing Date, subject to such other adjustments as agreed with consent of the Debtors, the Required DIP Lenders and the Requisite FLTL Lenders (each as defined in the Plan).

[5] Note to Draft: Sellers to be third party beneficiaries of the Direction Letter, with the right to specifically enforce the Credit Bid and Release.

(120) days following the Closing Date, prepare and deliver to the Sellers a proposed allocation as described in the preceding sentence (the "***Initial Allocation***").  The Parties, for a period of no more than ninety (90) days, shall cooperate in good faith to resolve any disagreements the Sellers may have with the Initial Allocation and agree on a final allocation (the "***Final Allocation***").  The Parties agree to file all Tax Returns (including the filing of IRS Form 8594 with their U.S. federal income Tax Return for the taxable year that includes the date of the Closing) consistent with the Final Allocation unless otherwise required by applicable Law.

2.3    <u>Consents to Assign</u>.

(a)    The Sellers shall, within five (5) Business Days after the Execution Date (to the extent not sent prior to the Execution Date), send to the holder of each Applicable Consent with respect to each Lease and any Assigned Contract that is not a 365 Contract (for which notices regarding 365 Contracts are addressed in <u>Section 6.7</u>) a notice seeking such holder's consent to the transactions contemplated hereby or as otherwise sufficient to permit the assignment of such Lease or Assigned Contract to Buyer or Buyer 2, as applicable, pursuant to this Agreement upon entry of the Confirmation Order.  Upon request of Buyer, the Sellers shall promptly provide a reasonable update to Buyer regarding the status of requests for consents made pursuant to this <u>Section 2.3(a)</u>.

(b)    If the Sellers fail to obtain an Applicable Consent prior to Closing and (i) with respect to any Lease or Assigned Contract that is not a 365 Contract, (A) the failure to obtain such Applicable Consent would under the express terms thereof cause the assignment of the Acquired Interest affected thereby to Buyer or Buyer 2, as applicable, to be void or voidable, (B) the failure to obtain such Applicable Consent would under the express terms thereof permit the termination of such Lease or Assigned Contract under the express terms thereof upon the purported assignment of such Lease or Assigned Contract to Buyer or Buyer 2, as applicable, pursuant to this Agreement, or (C) the failure to obtain such Applicable Consent would under the express terms thereof permit a party to such Lease or Assigned Contract to impose a financial or other penalty on any Seller, Buyer or Buyer 2 or (ii) with respect to any Lease or Assigned Contract, a party holding such Applicable Consent right has objected to the assignment of the affected Acquired Interest in accordance with the terms of the relevant Applicable Consent right (each Consent as to which <u>clause (i)</u> or <u>(ii)</u> is applicable, a "***Required Consent***"), then, unless the Bankruptcy Court has entered an order approving (or in the case of <u>clause (ii)</u>, such objection is resolved to permit) the sale and assignment of the affected Acquired Interest to Buyer or Buyer 2, as applicable, pursuant to this Agreement without obtaining such Required Consent (and without Buyer or Buyer 2 being subject to the consequences set forth in <u>clauses (i)(A)</u> through <u>(i)(C)</u> of the definition of Required Consent as a result of not obtaining such Required Consent), the Acquired Interests (or portions thereof) affected by such un-obtained Required Consent shall be excluded from the Acquired Interests to be assigned to Buyer or Buyer 2 at Closing (and shall be considered Excluded Assets hereunder)  (a "***Delayed Asset***").  In the event that any such Required Consent with respect to any such Delayed Asset (or portion thereof) is obtained during the Post-Closing Consent Period (or if during the Post-Closing Consent Period the Bankruptcy Court enters an order providing that (x) such Required Consent is not required to consummate the sale and assignment of the Delayed Asset to Buyer or Buyer 2, as applicable, pursuant to this Agreement or (y) the Delayed Asset may be sold and assigned to Buyer or Buyer 2, as applicable, pursuant to this Agreement free and clear (as applicable to the sale and assignment of the Delayed Asset to

Buyer or Buyer 2, as applicable, pursuant to this Agreement) of such Required Consent) (in each case of clauses (x) and (y) without Buyer or Buyer 2 being subject to the consequences set forth in clauses (i)(A) through (i)(C) of the definition of Required Consent as a result of not obtaining such Required Consent) then, (1) the Sellers shall so notify Buyer, and (2) on or prior to the tenth (10th) Business Day after the date such Required Consent is obtained or such order referred to above is entered, the Sellers shall assign such Delayed Asset (or portions thereof) that were so excluded as a result of such previously un-obtained Required Consent to Buyer or Buyer 2, as applicable, pursuant to an instrument in substantially the same form as the Assignment, Bill of Sale and Conveyance, or the JV Assignment Agreement (in the case where the Delayed Asset is a Fieldwood U.A. Interest or a JV Interest) (and such Delayed Asset (or portions thereof) shall no longer be considered Excluded Assets hereunder) and Buyer shall assume all Assumed Liabilities with respect thereto.  Notwithstanding anything to the contrary in this Agreement, without limiting any of the rights of Buyer hereunder, including those set forth in Section 7.3, (A) Buyer in its sole discretion may elect for the Sellers not to sell, transfer, convey, assign or deliver such Delayed Assets that is an Other Asset to Buyer, and (B) from and after the Closing, Buyer and the Sellers shall reasonably cooperate in a reasonable arrangement to provide Buyer or Buyer 2, as applicable, with all of the benefits of, or under, each such Delayed Asset, including enforcement (at Buyer's cost) for the benefit of Buyer or Buyer 2, if applicable, of any and all rights of the Sellers against any party with respect to such Delayed Asset arising out of the breach or cancellation with respect to such Delayed Asset by such party; *provided*, *further*, that (i) to the extent that any such arrangement has been made to provide Buyer or Buyer 2, as applicable, with the benefits of, under or with respect to, a Delayed Asset, from and after the Closing, Buyer shall be responsible for, and shall promptly pay and perform all payment and other obligations under such Delayed Asset for the period during which Buyer or Buyer 2, as applicable, is receiving the benefits under the applicable Delayed Asset to the same extent as if such Delayed Asset had been assigned or transferred at the Closing, and (ii) the Sellers shall (or, as to any Delayed Asset that is an Other Asset, at Buyer's request the Sellers shall) sell, transfer, convey, assign and deliver such Delayed Asset to Buyer or Buyer 2, as applicable, promptly after receipt of such Required Consent or the entry of such order referred to above with respect to such Delayed Asset; *provided* that Buyer shall so request such sale, transfer, conveyance, assignment and deliverance promptly after such receipt, unless (1) the retention of such Delayed Asset by the applicable Seller would not result in such Seller retaining an incremental Liability as compared to if such Seller had transferred such Delayed Asset to Buyer (unless Buyer provides an amount in cash to the Sellers equal to the amount of such Liabilities and/or indemnification to the Sellers for any such Liabilities) or (2) the Sellers and Buyer mutually agree not to make such sale, transfer, conveyance, assignment and deliverance of such Delayed Asset; *provided further* that from and after the date that is six (6) months after the Closing, Buyer shall have no obligation to make any such request and may elect for the Sellers to retain such Delayed Asset, in which case such Delayed Asset shall be an Excluded Asset for all purposes under this Agreement and the arrangements described in clause (B)(i) shall terminate.

(c)     If the Sellers fail to obtain a Consent prior to Closing and such Consent (i) is not a Required Consent or (ii) is a Required Consent and prior to Closing the Bankruptcy Court enters an order providing that the affected Acquired Interests may be sold and assigned to Buyer or Buyer 2, as applicable, pursuant to this Agreement free and clear (as applicable to the sale and assignment of the affected Acquired Interests to Buyer pursuant to this Agreement) of such Required Consent (without Buyer or Buyer 2, as applicable, being subject to the consequences set forth in clauses (i)(A) through (i)(C) of the definition of Required Consent as a result of not

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

obtaining such Required Consent), then, in the case of each of <u>clauses (i)</u> and <u>(ii)</u>, the Acquired Interests (or portions thereof) subject to such un-obtained Consent shall nevertheless be assigned by the Sellers to Buyer at Closing as part of the Acquired Interests and Buyer shall be deemed to have assumed any and all Liabilities for the failure to obtain any such Consent as part of the Assumed Liabilities hereunder and Buyer shall have no claim against the Sellers from any Liability for the failure to obtain such Consent.

(d)     Prior to Closing and until the 365th day after Closing (the "***Post-Closing Consent Period***"), with respect to any un-obtained Required Consents with respect to which the Bankruptcy Court shall not have entered an order providing that the affected Acquired Interests may be sold and assigned to Buyer or Buyer 2, as applicable, pursuant to this Agreement free and clear (as applicable to the sale and assignment of the affected Acquired Interests to Buyer or Buyer 2, as applicable, pursuant to this Agreement) of such Required Consent (without Buyer or Buyer 2, as applicable, being subject to the consequences set forth in <u>clauses (i)(A)</u> through <u>(i)(C)</u> of the definition of Required Consent as a result of not obtaining such Required Consent), the Sellers shall use their commercially reasonable efforts to obtain such Required Consents, except that such obligation of the Sellers to use their commercially reasonable efforts to obtain Required Consents shall not apply in respect of any Delayed Asset with respect to which Buyer has made the election in accordance with the final sentence of <u>Section 2.3(b)</u>.  If Buyer so requests, the Sellers shall be required to make any payments or provide other consideration in order to obtain any such Required Consent (provided that Buyer shall reimburse Sellers for any such payment made after the Closing); *provided, however,* that without the consent of Buyer, the Sellers shall not be required to incur any Liability, pay any money or provide any other consideration in order to obtain any such Consent (other than any Liability or obligation to pay money or provide consideration that has been expressly assumed by Buyer). Buyer shall use its commercially reasonable efforts (without any obligation to incur any Liability, pay money or provide any other consideration) to assist and cooperate with the Sellers in furtherance of the Sellers' efforts pursuant to this <u>Section 2.3(d)</u>.

(e)     The Sellers shall be deemed to have obtained all Consents required in respect of the assumption and/or assignment of any Lease or Assigned Contract if (i) the Sellers have properly served under the Bankruptcy Code notice of assumption and/or assignment on the counterparty to such Lease or Assigned Contract, (ii) any objections to assumption and/or assignment of such Lease or Assigned Contracts filed by such counterparty have been withdrawn or overruled (including pursuant to the Confirmation Order or other order of the Bankruptcy Court), and (iii) pursuant to the Confirmation Order or other order of the Bankruptcy Court, the Sellers are authorized to assume and/or assign such Lease or Assigned Contract to Buyer free and clear of such Consents, in each case without Buyer or Buyer 2, as applicable, being subject to the consequences forth in <u>clauses (i)(A)</u> through <u>(i)(C)</u> of the definition of Required Consent as a result of not obtaining such Required Consent.

2.4     <u>Governmental Approvals</u>.     The Sellers and Buyer shall use commercially reasonable efforts to obtain the approval of, or waiver from, each Governmental Authority required, after giving effect to the entry of the Confirmation Order, to permit the assignment of the Acquired Interests to Buyer or Buyer 2, as applicable, pursuant to this Agreement, in accordance with <u>Sections 6.5(b)</u> and <u>(c)</u>.  If Buyer so requests, the Sellers shall be required to make any payments or provide any other consideration in order to obtain any Governmental Approval

14

(provided that Buyer shall reimburse Sellers for any such payment made after the Closing); *provided*, *however*, that without the consent of Buyer, the Sellers shall not be required to incur any Liability, pay any money or provide any other consideration in order to obtain any such Governmental Approval (other than any Liability or obligation to pay money or provide consideration that has been expressly assumed by Buyer). If, as of the Closing, any Governmental Approval, other than any Governmental Approval that is required or permitted to be made or obtained after the Closing (and, if permitted, customarily made or obtained after the Closing) (each, an "***Applicable Governmental Approval***"), has not been obtained and, notwithstanding the entry of the Confirmation Order, the failure to have obtained such Applicable Governmental Approval restricts the Sellers' ability to transfer any Acquired Interest to Buyer or Buyer 2, as applicable, at Closing, then, notwithstanding anything to the contrary herein, (x) (A) without limiting any of the rights of Buyer hereunder, including those set forth in Section 7.3, Buyer in its sole discretion may elect for the Sellers not to sell, transfer, convey, assign or deliver such Acquired Interests (which shall be treated as Delayed Assets, *mutatis mutandis*) and (B) from and after the Closing, (i) the Sellers and Buyer shall reasonably cooperate in a reasonable arrangement (to the extent legally permissible) to provide Buyer or Buyer 2, as applicable, with all of the benefits of, or under, such Delayed Asset, including (at Buyer's cost) enforcement for the benefit of Buyer or Buyer 2, as applicable, of any and all rights of the Sellers against any party with respect to such Delayed Asset arising out of the breach or cancellation with respect to such Delayed Asset by such party; *provided*, that to the extent that any such arrangement has been made to provide Buyer or Buyer 2, as applicable, with the benefits of, under or with respect to, a Delayed Asset, from and after the Closing, Buyer shall be responsible for, and shall promptly pay and perform all payment and other obligations under such Delayed Asset for the period during which Buyer or Buyer 2, as applicable, is receiving the benefits under the applicable Delayed Asset to the same extent as if such Delayed Asset had been assigned or transferred at the Closing, (ii) the Sellers shall reasonably cooperate with Buyer to obtain such Applicable Governmental Approval, and (iii) subject to the immediately following proviso, the Sellers shall promptly after receipt of the Applicable Governmental Approval with respect to such Delayed Asset, sell, transfer, convey, assign and deliver such Delayed Asset to Buyer or Buyer 2, as applicable, and Buyer or Buyer 2, as applicable, shall accept such conveyance; *provided* that, with respect to any such Delayed Asset that is an Other Asset, Buyer in its sole discretion (subject to the immediately following proviso) may elect for the Sellers not to sell, transfer, convey, assign or deliver such Delayed Asset to Buyer after receipt of the Applicable Governmental Approval; *provided* however that Buyer shall so request such sale, transfer, conveyance, assignment and deliverance promptly after receipt of the Applicable Governmental Approval, unless (1) the retention of such Delayed Asset by the applicable Seller would not result in such Seller retaining any incremental Liabilities as compared to if such Seller had transferred such Delayed Asset to Buyer (unless Buyer provides an amount in cash to the Sellers equal to the amount of such Liabilities and/or indemnification to the Sellers for any such Liabilities) or (2) the Sellers and Buyer mutually agree not to make such sale, transfer, conveyance, assignment and deliverance of such Delayed Asset; *provided further* that from and after the date that is six (6) months after the Closing, Buyer shall have no obligation to make any such request and may elect for the Sellers to retain such Delayed Asset, in which case such Delayed Asset shall be an Excluded Asset for all purposes under this Agreement and the arrangements described under clause (B)(i) shall terminate.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

2.5     Preferential Rights.

(a)     The Sellers shall, within five (5) Business Days after the Execution Date (to the extent not sent prior to the Execution Date), send to the holder of each Preferential Right with respect to any Acquired Interest a notice setting forth the information required to satisfy such notice provision for such Preferential Right and requesting a waiver thereof or as otherwise sufficient to permit the assignment of such Acquired Interest to Buyer or Buyer 2, as applicable, pursuant to this Agreement upon entry of the Confirmation Order free and clear of such Preferential Right if such Preferential Right is not validly waived or exercised prior to Closing. The Sellers and Buyer shall agree in good faith on the holders to whom the notices in the preceding sentence shall be sent. Upon request of Buyer, the Sellers shall promptly provide a reasonable update to Buyer regarding requests for waivers of Preferential Rights made pursuant to this Section 2.5(a).

(b)     If a bona fide Preferential Right with respect to any Acquired Interest is validly exercised prior to the Closing, such Acquired Interest and the related Contracts (solely to the extent related to such Acquired Interest) shall be excluded from the Acquired Interests conveyed to Buyer or Buyer 2, as applicable, at the Closing, the affected Acquired Interest will be deemed to be an Excluded Asset, and the Sellers shall pay over to Buyer all proceeds received for the affected Acquired Interest and related Contracts (or portion thereof) from the Person exercising such Preferential Right.

(c)     If prior to Closing (i) any Acquired Interest is burdened by a Preferential Right that has not been validly exercised or waived as of the Closing, regardless of whether the time period for the exercise of such right has expired or (ii) any Person asserts that it is the beneficiary of a Preferential Right with respect to any Acquired Interest and objects to the sale of such Acquired Interest to Buyer pursuant to this Agreement and such objection is not resolved so as to permit the sale and assignment of such Acquired Interest free and clear of such Preferential Right (as applicable to the sale and assignment to Buyer or Buyer 2, as applicable, pursuant to this Agreement) to Buyer or Buyer 2, as applicable (by Final Order of the Bankruptcy Court or otherwise to Buyer's reasonable satisfaction), then, without limiting any of the rights of Buyer hereunder, including those set forth in Section 7.3, (A) at Buyer's option, such Acquired Interest shall be excluded from the Acquired Interests and treated as a Delayed Asset (*mutatis mutandis*), and (B) from and after the Closing, if Buyer so elects, (i) the Sellers and Buyer shall reasonably cooperate to provide a reasonable arrangement (to the extent legally permissible) to provide Buyer or Buyer 2, as applicable, with all of the benefits of, or under, such Delayed Asset, including (at Buyer's cost) enforcement for the benefit of Buyer or Buyer 2, as applicable, of any and all rights of the Sellers against any party with respect to such Delayed Asset arising out of the breach or cancellation with respect to such Delayed Asset by such party; *provided*, that to the extent that any such arrangement has been made to provide Buyer or Buyer 2, as applicable, with the benefits of, under or with respect to, a Delayed Asset, from and after the Closing, Buyer shall be responsible for, and shall promptly pay and perform all payment and other obligations under such Delayed Asset for the period during which Buyer or Buyer 2, as applicable, is receiving the benefits under the applicable Delayed Asset to the same extent as if such Delayed Asset had been assigned or transferred at the Closing, (ii) the Sellers and Buyer shall reasonably cooperate with Buyer to obtain the waiver of the Preferential Right with respect to such Delayed Asset, and (iii) if such asserted Preferential Right is not validly exercised prior to its expiration or waiver, or if the dispute

16

regarding the Preferential Right affecting such Delayed Asset is resolved by Final Order of the Bankruptcy Court or otherwise to Buyer's reasonable satisfaction, such Delayed Asset, subject to the immediately following proviso, shall be promptly conveyed to Buyer or Buyer 2, as applicable; *provided* that, with respect to any such Delayed Asset that is an Other Asset, Buyer in its sole discretion (subject to the immediately following proviso) may elect for the Sellers not to sell, transfer, convey, assign or deliver such Delayed Asset to Buyer after the occurrence of the events in the preceding clause (iii); *provided* that Buyer shall so elect, unless (x) the retention of such Delayed Asset by the applicable Seller would not result in such Seller retaining any incremental Liability as compared to if such Seller had transferred such Delayed Asset to Buyer (unless Buyer provides an amount in cash to the Sellers equal to the amount of such Liabilities and/or indemnification to the Sellers for any such Liabilities) or (y) the Sellers and Buyer mutually agree for Buyer not to so elect; *provided further* that from and after the date that is six (6) months after the Closing, Buyer shall have no obligation to make any such election and may elect for the Sellers to retain such Delayed Asset, in which case such Delayed Asset shall be an Excluded Asset for all purposes under this Agreement and the arrangements described in clause (B)(i) shall terminate. If, for any reason, such Preferential Right is validly exercised by the holder thereof after the Closing and prior to an election by Buyer for the Sellers to retain such Delayed Asset pursuant to the second proviso in the preceding sentence, the Sellers shall pay over to Buyer all proceeds paid for the affected Acquired Interest by the holder of the relevant Preferential Right.

2.6    [Reserved.]

2.7    Withholding.  Buyer and its Affiliates shall be entitled to deduct and withhold, from any amounts payable under this Agreement, amounts required to be deducted and withheld under the Code or any other applicable Law.  To the extent any amount is so withheld and paid to the appropriate Governmental Authority pursuant to applicable Law, such withheld amounts shall be treated for all purposes of the Agreement as having been paid to the Person in respect of which such deduction or withholding was made.

2.8    Assets Sold "As Is, Where Is".

(a)    BUYER ACKNOWLEDGES AND AGREES THAT THE ACQUIRED INTERESTS SOLD PURSUANT TO THIS AGREEMENT ARE SOLD, CONVEYED, TRANSFERRED AND ASSIGNED ON AN "AS IS, WHERE IS" BASIS "***WITH ALL FAULTS***" AND THAT, EXCEPT AS SET FORTH IN ARTICLE IV OF THIS AGREEMENT AND THE CERTIFICATES DELIVERED BY THE SELLERS AT CLOSING (BUT SUBJECT TO THE TERMINATION OF REPRESENTATIONS AND WARRANTIES AT CLOSING PURSUANT TO SECTION 13.1), THE SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES, TERMS, CONDITIONS, UNDERSTANDINGS OR COLLATERAL AGREEMENTS OF ANY NATURE OR KIND, EXPRESS OR IMPLIED, BY STATUTE OR OTHERWISE, CONCERNING THE ACQUIRED INTERESTS OR THE CONDITION, DESCRIPTION, QUALITY, USEFULNESS, QUANTITY OR ANY OTHER THING AFFECTING OR RELATING TO THE ACQUIRED INTERESTS, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WHICH WARRANTIES ARE ALSO HEREBY EXPRESSLY DISCLAIMED. BUYER FURTHER ACKNOWLEDGES THAT THE SELLERS HAVE MADE NO AGREEMENT OR PROMISE TO REPAIR OR IMPROVE ANY OF THE ACQUIRED

17

INTERESTS BEING SOLD TO BUYER, AND THAT BUYER TAKES ALL SUCH ACQUIRED INTERESTS IN THE CONDITION EXISTING ON THE CLOSING DATE (SUBJECT TO SATISFACTION OR WAIVER OF THE CONDITIONS SET FORTH IN ARTICLE VII) "AS IS, WHERE IS" AND "*WITH ALL FAULTS*" AND WITHOUT WARRANTY OF TITLE.  NOTHING HEREIN SHALL LIMIT BUYER'S REMEDIES IN THE EVENT OF FRAUD (AS DEFINED IN ANNEX I), EXCEPT THAT BUYER SHALL HAVE NO REMEDY IN THE EVENT OF FRAUD WITH RESPECT TO FIELDWOOD ENERGY I, FW GOM PIPELINE, GOM SHELF OR ANY OF THEIR RESPECTIVE SUBSIDIARIES.

(b)     EXCEPT AS AND TO THE EXTENT EXPRESSLY SET FORTH IN ARTICLE IV OF THIS AGREEMENT OR THE CERTIFICATES DELIVERED BY THE SELLERS AT CLOSING (BUT SUBJECT TO THE TERMINATION OF REPRESENTATIONS AND WARRANTIES AT CLOSING PURSUANT TO SECTION 13.1), AND WITHOUT LIMITING THE GENERALITY OF SECTION 2.8(a), THE SELLERS EXPRESSLY DISCLAIM ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, AS TO (i) TITLE TO ANY OF THE ACQUIRED INTERESTS, (ii) THE CONTENTS, CHARACTER OR NATURE OF ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT, OR ANY ENGINEERING, GEOLOGICAL OR SEISMIC DATA OR INTERPRETATION, RELATING TO THE ACQUIRED INTERESTS, (iii) THE QUANTITY, QUALITY OR RECOVERABILITY OF HYDROCARBONS IN OR FROM THE ACQUIRED INTERESTS, (iv) ANY ESTIMATES OF THE VALUE OF THE ACQUIRED INTERESTS OR FUTURE REVENUES GENERATED BY THE ACQUIRED INTERESTS, (v) THE PRODUCTION OF HYDROCARBONS FROM THE ACQUIRED INTERESTS, (vi) THE CONDITION, QUALITY, SUITABILITY OR MARKETABILITY OF THE ACQUIRED INTERESTS, INCLUDING THE MARKETABILITY OF ANY HYDROCARBONS, (vii) THE AVAILABILITY OF GATHERING OR TRANSPORTATION FOR HYDROCARBONS FROM THE ACQUIRED INTERESTS, (viii) THE CONTENT, CHARACTER OR NATURE OF ANY INFORMATION MEMORANDUM, REPORTS, BROCHURES, CHARTS OR STATEMENTS PREPARED BY OR ON BEHALF OF THE SELLERS OR THIRD PARTIES WITH RESPECT TO THE ACQUIRED INTERESTS, AND (ix) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE TO BUYER OR ANY AFFILIATE OF BUYER, OR ITS OR THEIR EMPLOYEES, AGENTS, CONSULTANTS, REPRESENTATIVES OR ADVISORS IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY DISCUSSION OR PRESENTATION RELATING THERETO.  ANY AND ALL SUCH DATA, INFORMATION AND OTHER MATERIALS FURNISHED BY OR ON BEHALF OF THE SELLERS IS PROVIDED TO BUYER AS A CONVENIENCE, AND ANY RELIANCE ON OR USE OF THE SAME SHALL BE AT BUYER'S SOLE RISK.

2.9     Presence of Wastes, NORM, Hazardous Substances and Asbestos.  BUYER ACKNOWLEDGES THAT THE ACQUIRED INTERESTS HAVE BEEN USED TO EXPLORE FOR, DEVELOP AND PRODUCE HYDROCARBONS, AND THAT SPILLS OF WASTES, CRUDE OIL, PRODUCED WATER, HAZARDOUS SUBSTANCES AND OTHER MATERIALS MAY HAVE OCCURRED THEREON OR THEREFROM.  ADDITIONALLY, THE ACQUIRED INTERESTS, INCLUDING PRODUCTION EQUIPMENT, MAY CONTAIN ASBESTOS, HAZARDOUS SUBSTANCES OR NORM.  NORM MAY AFFIX OR ATTACH ITSELF TO THE INSIDE OF WELLS, MATERIALS AND EQUIPMENT AS SCALE OR IN

18

OTHER FORMS, AND NORM-CONTAINING MATERIAL MAY HAVE BEEN BURIED OR OTHERWISE DISPOSED OF ON THE ACQUIRED INTERESTS.  SPECIAL PROCEDURES MAY BE REQUIRED FOR REMEDIATION, REMOVING, TRANSPORTING AND DISPOSING OF ASBESTOS, NORM, HAZARDOUS SUBSTANCES AND OTHER MATERIALS FROM THE ACQUIRED INTERESTS.

## ARTICLE III
## DUE DILIGENCE

3.1     Due Diligence.

(a)     From and after the date hereof until the Closing Date, the Sellers shall (i) afford to Buyer and its Representatives (at Buyer's cost) during normal business hours (A) upon the reasonable request of Buyer, reasonable access to and entry upon any specified Field Asset (subject to (1) execution of the Sellers' customary boarding agreement, (2) the terms, conditions and restrictions of agreements that are related to access to such Field Assets and to which any Seller is a party and (3) the consent of any third party operator, as applicable), including execution of agreements required by any third party with respect to access to such Field Assets for the purposes of performing onsite tests, inspections, examinations, investigations, studies and assessments of the Field Assets (including non-invasive environmental assessments of the Field Assets and, subject to the consent of the Sellers (such consent not to be unreasonably withheld, conditioned or delayed) invasive environmental assessments of the Field Assets; *provided*, that prior to conducting any invasive environmental assessments, Buyer and Sellers will cooperate in good faith to enter into a written agreement with respect to the parameters and scope of, allocation of liability with respect to, and rights to information (including samples) arising from, such assessments); and (B) at the offices of each of the Sellers, (1) reasonable access to the Sellers' title records, Leases, Easements, Contracts, environmental and legal materials, books, records, statements and operating data, information relating to the Field Assets (including all land and title records, surveys, abstracts of title, title insurance policies, title opinions, title curative and all lease, contract, division order, marketing, acquisition, correspondence, operations, environmental, insurance, production, accounting, regulatory, Property-Related Tax, Production Tax, Transfer Tax and well records and files) and any other information or documents that are in the possession or control of the Sellers and relate in any way to any Acquired Interests and (2) to the extent permitted in accordance with applicable licensing agreements, the opportunity to review the Field Data, and (ii) instruct the Sellers' representatives to reasonably cooperate with Buyer and its Representatives in their investigation of the Acquired Interests.  Notwithstanding anything in this Section 3.1(a) to the contrary, (x) all such information shall be held in confidence by Buyer in accordance with the terms of Section 10.5, and (y) in no event shall the Sellers be obligated to provide (A) access or information in violation of applicable Law, (B) any information the disclosure of which would cause the loss of any legal privilege available to any Seller relating to such information or would cause any Seller to breach a confidentiality obligation to which it is bound; *provided* that the applicable Seller shall use commercially reasonable efforts to provide such information and documents in a manner that does not violate such Law or result in such loss of privilege or breach of obligation, or (C) copies of bids, letters of intent, expressions of interest or other proposals received from other Persons in connection with the transactions contemplated by this Agreement or information and analyses relating to such communications.  For the avoidance of doubt, Buyer and its Representatives shall not be permitted to conduct any invasive

environmental investigations without the Sellers' express written consent, which may be withheld by the Sellers in their sole discretion.

(b)     No investigation by Buyer or other information received by Buyer shall operate as a waiver or otherwise affect any representation, warranty or agreement given or made by any Seller hereunder.

## ARTICLE IV
## SELLERS' REPRESENTATIONS

Each Seller represents and warrants to Buyer and Buyer 2, subject to the Disclosure Schedules (subject to Section 12.15), as follows:

4.1     <u>Organization/Qualification</u>.  Each Seller is an entity duly formed, validly existing and in good standing under the Laws of the jurisdiction of its organization.  Each Seller is qualified to do business and is in good standing under the Laws of each jurisdiction where such qualification is necessary, except for those jurisdictions where failure to be so qualified would not, individually or in the aggregate, prevent, materially delay or materially impede the performance by such Seller of its obligations under this Agreement or its consummation of the transactions contemplated by this Agreement.  Each Seller has all requisite power and authority required to own and operate its properties (including the Acquired Interests) and to carry on its business as now conducted.

4.2     <u>Power and Authority</u>.  Subject to entry of the Confirmation Order and such other authorization as may be required by the Bankruptcy Court, each Seller has the requisite power and authority to execute and deliver this Agreement and the other Ancillary Documents to which it is (or, upon its execution and delivery, will be) a party and perform its obligations under this Agreement and such other Ancillary Documents.

4.3     <u>Non-Contravention</u>.  Each Seller's execution, delivery and performance of this Agreement and each Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party and each Seller's performance of the transactions contemplated herein and therein will not (a) conflict with or result in a breach of any provisions of the organizational documents of such Seller, Fieldwood U.A. or, to the Sellers' Knowledge, the Mexico JV or (b) subject to (w) the entry of the Disclosure Statement Order and the Confirmation Order, (x) obtaining or making the Applicable Consents set forth on **Schedule 4.8(b)** in accordance with Section 2.3, (y) obtaining or making the Governmental Approvals set forth on **Schedule 4.7** and (z) obtaining waivers for the Preferential Rights set forth on **Schedule 4.8(a)** (in the case of each of the preceding clauses (x) and (z), after giving effect to the Confirmation Order), result in (i) a breach of or default under, or give rise to any right of termination, revocation, cancellation or acceleration under, any Permit, Lease, Subject Unit Agreement, Easement, Assigned Contract, credit agreement (excluding the Credit Agreement), note, bond, mortgage, indenture, license or other agreement, document or instrument to which any Seller is a party or by which any Seller or any of the Acquired Interests may be bound, or otherwise result in a loss of any benefit relating to the Acquired Interests, (ii) the creation or imposition of any Encumbrance upon any Acquired Interest other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances), or (iii) violate any applicable Law,

except, in the case of the preceding clauses (i) and (ii), as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect.

4.4     Authorization and Enforceability.  Subject to entry of the Disclosure Statement Order and the Confirmation Order, each Seller has full capacity, power and authority to enter into and perform this Agreement, each Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party and the transactions contemplated herein and therein.  The execution, delivery and performance by each Seller of this Agreement and each Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party have been duly and validly authorized and approved by all necessary company action on the part of such Seller.  Subject to entry of the Disclosure Statement Order and the Confirmation Order, this Agreement and each Ancillary Document to which each Seller is (or, upon its execution and delivery, will be) a party are, or upon their execution and delivery will be, the valid and binding obligations of such Seller and enforceable against such Seller in accordance with their respective terms, subject to the effects of bankruptcy, insolvency, reorganization, moratorium and similar Laws as well as to principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

4.5     Liability for Brokers' Fees.  Other than Houlihan Lokey Capital, Inc., there is no investment banker, broker, finder or other intermediary which has been retained by or is authorized to act on behalf of any Seller who might be entitled to any fee, commission or expenses in connection with the transactions contemplated by this Agreement or any of the Ancillary Documents.

4.6     Litigation.  Other than the Bankruptcy Cases or as specified on **Schedule 4.6**, no Claim (or any basis thereof) by any Governmental Authority or other Person (including expropriation or forfeiture proceedings) nor any legal, administrative or arbitration proceeding (or any basis thereof) is pending or, to the Sellers' Knowledge, threatened against any Acquired Interest or against any Seller relating to any Acquired Interest which, individually or in the aggregate, if determined or resolved adversely in accordance with the plaintiff's demands, (x) to the extent the representation is to the existence of any basis of any Claim or any legal, administrative or arbitration proceeding, would reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect and (y) otherwise, would reasonably be expected to be material to the Acquired Interests, individually or taken as a whole, or which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

4.7     Governmental Approvals.  Except as set forth on **Schedule 4.7**, no Governmental Approval (other than the Disclosure Statement Order and the Confirmation Order) is required to authorize, or is otherwise required in connection with, (a) any Seller's valid execution and delivery by such Seller of this Agreement or any Ancillary Document to which such Seller is (or, upon its execution and delivery, will be) a party, (b) any Seller's performance of its obligations hereunder or thereunder or (c) the consummation of the transactions contemplated by this Agreement or any of the Ancillary Documents.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

4.8     Preferential Rights; Applicable Consents.

(a)     Except as set forth on **Schedule 4.8(a)**, none of the Acquired Interests is subject to a Preferential Right.

(b)     Except as set forth on **Schedule 4.8(b)**, none of the Acquired Interests is subject to an Applicable Consent.

The inclusion of any Acquired Interest on **Schedule 4.8** shall not be construed as an admission by Buyer or Sellers that any preferential purchase right or similar right or Consent in any agreement relating to such Acquired Interest (or any express exception thereto contained in such agreement) is (or is not) applicable to the transactions contemplated hereby.

4.9     Taxes.  Except as would not result, individually or in the aggregate, in a Material Adverse Effect and except as otherwise set forth on **Schedule 4.9**, (a) all Tax Returns required to be filed with respect to the Acquired Interests or any Hydrocarbon production therefrom (including Property-Related Taxes and Production Taxes) or by Fieldwood U.A. have been timely filed, and all such Tax Returns are true, complete and correct; (b) the Sellers have adequately accrued in accordance with GAAP, established adequate reserves for the payment of, and will timely pay, all Taxes which arise from or with respect to the Acquired Interests or any Hydrocarbon production therefrom or allocable thereto incurred in or attributable to all Pre-Closing Tax Periods (other than Taxes described in the preceding clause (a)); (c) all Taxes due and owing by the Sellers with respect to the Acquired Interests or any Hydrocarbon production therefrom (including with respect to Property-Related Taxes and Production Taxes) or by Fieldwood U.A. (whether or not shown on any Tax Return) have been paid, and no extension of time within which to file any such Tax Return is in effect; (d) there are no Encumbrances on any Acquired Interest; (e) no audits, investigations, examinations, audits, litigation, Claims or other proceedings are pending, or to the Sellers' Knowledge threatened in writing, against any Seller relating to the payment of Taxes (including Property-Related Taxes and Production Taxes) with respect to any Acquired Interests or with respect to Taxes for which Fieldwood U.A. may be liable; (f) there are no currently proposed or pending adjustments by any Governmental Authority in connection with any Tax Returns of any Seller pertaining to the Acquired Interests or of Fieldwood U.A.; (g) no waiver or extension of any statute of limitations has been granted or requested as to any Tax matter relating to any Acquired Interests or with respect to any Taxes for which Fieldwood U.A. may be liable, in each case, that is still in effect; (h) Fieldwood U.A. will not be required to include any item of income in, or exclude any item of deduction from, taxable income in any taxable period (or portion thereof) after Closing, as a result of any change in method of accounting, closing agreement, installment sale or receipt of any prepaid amount outside of the ordinary course of business, in each case, made or entered into prior to Closing; (i) no Governmental Authority responsible for the administration or imposition of Taxes in any jurisdiction in which a Seller or any of its Affiliates (in respect of the Acquired Interests) or Fieldwood U.A. has not filed a Tax Return has asserted in writing that such Seller, any of its Affiliates, or Fieldwood U.A., as the case may be, is subject to Tax or required to file a Tax Return in that jurisdiction; (j) Fieldwood U.A. has withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor, creditor, customer, shareholder or other third party; (k) Fieldwood U.A. has not been a member of any Company Group; (l) none of the Sellers or Fieldwood U.A. has engaged in a "***listed transaction***" within the meaning of Treasury Regulations Section 1.6011-

4(b); (m) the Acquired Interests are not subject to, for federal income tax purposes, a partnership between any Seller and any other Person for which a partnership income tax return is required to be filed under Subchapter K of Chapter 1 of Subtitle A of the Code (other than a partnership for which an election to be excluded from such provisions is in effect pursuant to the provisions of Section 761 of the Code and the regulations thereunder); (n) Fieldwood U.A. is not, and does not own (directly or indirectly) stock or a warrant in, a corporation that is (or was at any time during the course of such ownership) a passive foreign investment company, as defined in Section 1297 of the Code; (o) Fieldwood U.A. is not a party to or bound by any Tax Sharing Agreement; and (p) **Schedule 4.9(p)** lists (A) the entity classification of Fieldwood U.A., Fieldwood Mexico and any Subsidiary thereof for U.S. federal income Tax purposes, as of the date hereof and as of the Closing Date, and (B) each entity classification election and change in entity classification that has been made under Treasury Regulations Section 301.7701-3 with respect to Fieldwood U.A., Fieldwood Mexico and any Subsidiary thereof for U.S. federal income Tax purposes.

4.10   <u>Well Status</u>.  Except as set forth on **Exhibit C**, (a) the Sellers are the operators of that portion of the Lease(s) covering all Scheduled Wells; (b)  all Wells that are not currently producing Hydrocarbons in paying quantities have been plugged, abandoned and decommissioned, and all related salvage, site clearance and surface restoration and decommissioning operations have been completed, in accordance with all applicable Laws in all material respects; (c) no Scheduled Well has been permanently, or is currently temporarily, plugged and abandoned; and (d) there is no Well in respect of which any Seller or any of its Affiliates has received an order from any Governmental Authority requiring that such Well be plugged and abandoned (or re-plugged), other than a Well for which such plugging and abandonment (or re-plugging) requirements have been completely satisfied.  All Wells that have not been plugged, abandoned and decommissioned are listed on **Exhibit C**.

4.11   <u>Compliance with Laws; Permits</u>.  Except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect, (a) each Seller, and to the Sellers' Knowledge each Third Person operator of any Lease (or portion thereof), Subject Unit or Easement, is in compliance, and since January 1, 2018 has at all times complied, with all applicable Laws and all Permits necessary or required in each case in connection with the ownership and, with respect to each Acquired Interest operated by a Seller, operation of the Acquired Interests, including the Leases, Subject Units, Easements and Wells and the production, marketing and disposition of Hydrocarbons therefrom; and (b) with respect to each Acquired Interest, the Sellers and, to the Sellers' Knowledge, each Third Person operator of such Acquired Interest, if applicable, has all Permits necessary or required in connection with the ownership and operation of such Acquired Interest, and all such Permits are in full force and effect.  Since January 1, 2018, no Seller has received written notice from any Governmental Authority that any applicable Law or Permit has been violated or not complied with by any Seller.  With respect to Suspense Funds, each Seller is in compliance with applicable Laws in all material respects.  Except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect, Fieldwood U.A. and the Mexico JV are in compliance with applicable Laws.  Other than the Bankruptcy Cases, there is no judgment, decree, injunction, rule or order of any arbitrator or Governmental Authority outstanding against any Seller, Fieldwood U.A. or the Mexico JV that has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  All Permits held by the Sellers that relate to the Assets are valid and in full force and effect and no Seller is in

23

default under or in violation of any such Permit, except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect.

4.12   <u>Environmental Matters</u>.   Except as could not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect or as set forth on **Schedule 4.12**, (a) each Seller, and to the Sellers' Knowledge each Third Person operator of any Acquired Interest, if applicable, has all Permits required under Environmental Laws in connection with the ownership and operation of the Acquired Interests, including the Field Assets, the production, marketing and disposition of Hydrocarbons therefrom and the ownership and use of the Office Assets and all such Permits are in full force and effect; (b) no Seller has received, and to the Sellers' Knowledge no Third Person operator has received, any written notice of violation, assessment or incident of non-compliance or other communication that alleges any actual or potential non-compliance with or Liability under any Environmental Law or Permit required under Environmental Laws in connection with ownership or operations of the Acquired Interests, including the Field Assets and Office Assets; (c) no investigation, proceedings or other Claims resulting from any Environmental Law or Permit required under Environmental Laws is pending, or to the Sellers' Knowledge threatened in writing, against any Asset, (d) the Assets are in compliance in all respects with all applicable Environmental Laws, and (e) there has been no Release under or from any Asset or, to the Sellers' Knowledge, at any asset or property formerly owned, leased or operated by, or otherwise arising from the operations of any Seller or any of its Affiliates or predecessors, in violation of, or in a manner reasonably expected to give rise to Liability under, Environmental Laws or any Permit required under Environmental Laws. The Sellers have made available to Buyer, in written or electronic format, all environmental site assessments, studies and analyses in the possession or control of any Seller addressing potentially material Losses, Claims or obligations pertaining to Environmental Contaminants or Environmental Law in relation to the Acquired Interests.

4.13   <u>Payments</u>.   Except (x) as set forth on **Schedule 4.13** and (y) for the Suspense Funds listed on **Schedule 4.20**, each Seller has timely (a) paid all Lease Burdens due in respect of Hydrocarbons produced from or allocable to any Acquired Interests payable by the Sellers, (b) reported to applicable Governmental Authorities, to the extent required by applicable Law, Hydrocarbons produced from or allocable to any Lease, Subject Unit or Well required to be reported by the Sellers, and (c) paid all amounts owing by such Seller under any Easement or with respect to any Office Asset, except, in the case of this <u>clause (c)</u>, as would not be reasonably expected to result, individually or in the aggregate, in a Material Adverse Effect.  No Seller has received written notice of any Claim that has not been resolved claiming that such Seller's disbursement of Lease Burdens or reporting of Hydrocarbon production with respect to the Acquired Interests is inaccurate, other than Claims relating to disbursements or reporting that are not, in the aggregate, material to the Acquired Interests taken as a whole.

4.14   <u>Material Contracts</u>.

(a)   Prior to the Execution Date, the Sellers made available to Buyer accurate and complete copies of all Material Contracts.  Except as set forth on **Schedule 4.14**, no Seller has delegated or otherwise transferred to any third party any of its material rights or obligations with respect to any Assigned Contract.  Except as set forth on **Schedule 4.14**, no Seller is a party to or

<div align="center">24</div>

bound by any of the following Contracts (other than any Contract that is an Excluded Asset or Retained Liability) (each, a "***Material Contract***"):

(i) any Contract (excluding any purchase orders entered into in the ordinary course of business) relating to or used in connection with any Acquired Interest that could reasonably be expected to provide for either (A) annual payments by, or revenues to, the Sellers of $5,000,000 or more or (B) aggregate payments by, or revenues to, the Sellers of $10,000,000 or more;

(ii) any Subject Unit Agreement;

(iii) any Hydrocarbon purchase and sale, exchange, marketing, compression, fractionation, drilling, completion, gathering, transportation, processing, production handling, refining, treatment, storage, handling, chemicals, construction or similar Contract, in each case, that is not terminable by the Sellers without penalty on thirty (30) days' or less notice;

(iv) any Contract to acquire, sell, lease, develop or otherwise dispose of or encumber any interest in any of the Acquired Interests after the Closing Date (other than sales of Hydrocarbons in the ordinary course of business);

(v) any Contract with any individual person acting as an independent contractor or consultant which includes payment for services to such person in excess of $500,000 annually;

(vi) any Contract relating to or used in connection with any Acquired Interests that limits the freedom of any Seller to engage in any line of business or in any area or to compete with any Person or which would so limit the freedom of Buyer or any of its Affiliates after the Closing Date, including any noncompetition agreement, area of mutual interest or other agreement;

(vii) any Contract providing for any call upon, option to purchase, or similar rights with respect to the Acquired Interests or to the production therefrom or the processing thereof, or that is a dedication of production;

(viii) any Contract relating to or used in connection with any Acquired Interest that constitutes an operating agreement, exploration agreement, joint development agreement, farmin agreement, plugging and abandonment agreement, balancing agreement, platform use agreement, farmout agreement, partnership agreement, participation agreement, joint venture agreement, or similar Contract;

(ix) any Contract relating to or used in connection with any Acquired Interest involving any resolution or settlement or any actual or threatened Claim which imposes material continuing obligations on any Seller will not have been fully performed prior to the Closing Date;

25

(x)     any Contract relating to or used in connection with any Acquired Interest that requires the posting of a security deposit, letter of credit, performance bond or surety;

(xi)     any Contract relating to or used in connection with any Acquired Interest that is a seismic, engineering, geological or other geophysical acquisition agreement or license;

(xii)     any Contract pursuant to which a Seller (A) grants to a third party any license, right to use or covenant not to sue under any Owned Intellectual Property or (B) is granted by a third party any license, right to use or covenant not to sue under any Intellectual Property (excluding from clause (B), (x) licenses for commercial off-the-shelf software that are generally available on non-discriminatory pricing terms which have an aggregate annual cost of $50,000 or less and (y) the licenses and agreements listed on **Exhibit F**);

(xiii)     any lease or sublease for any personal property included in the Acquired Interests providing for annual rentals of $250,000 or more;

(xiv)     any lease or sublease of real property; and

(xv)     any Contract by which any Seller is obligated by virtue of a take or pay payment, advance payment, production payment or other similar payment or commitment, to deliver Hydrocarbons, or proceeds from the sale thereof, attributable to the Sellers' aggregate interest in the Assets at some future time without receiving payment therefor at or after the time of delivery.

(b)     Each Material Contract is in full force and effect and a valid and binding obligation of the Seller(s) party thereto and, to the Sellers' Knowledge, the other parties thereto, in accordance with its terms and conditions, except as such validity and enforceability may be limited by (i) bankruptcy, insolvency, or other similar Laws affecting the enforcement of creditors' rights generally, (ii) equitable principles of general applicability (whether considered in a proceeding at law or in equity), and (iii) the obligation to pay Cure Costs.  No event has occurred which, with the passage of time or the giving of notice, or both, would constitute a default under or a violation of any Material Contract or would cause the acceleration of any right or obligation of any Seller or, to the Sellers' Knowledge, any other party thereto or the creation of an Encumbrance upon any Acquired Interest, except for such events that would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  No Seller nor, to the Sellers' Knowledge, any other party to any Material Contract has given written notice of any action to terminate, cancel, rescind, repudiate or procure a judicial reformation of any such Material Contract or any provision thereof.

(c)     Prior to the Execution Date, the Sellers made available to Buyer accurate and complete copies of all Leases and Easements. Except as set forth on **Schedule 4.14(c)**, no Seller is a party to or bound by any Lease or Easement (other than any Lease or Easement that is an Excluded Asset or Retained Liability).

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

4.15    <u>Imbalances; Prepayments</u>.   Except as set forth on **<u>Schedule 4.15</u>**, as of the Execution Date, (x) no Seller has a Claim constituting an Acquired Interest and (y) no Seller is subject to any Liability constituting an Assumed Liability, with respect to any Imbalance.

4.16    <u>AFEs; Cash Calls</u>.   Except as set forth on **<u>Schedule 4.16(a)</u>**, no authorities for expenditure or other commitments to make capital expenditures relating to any Acquired Interest for which the Sellers' liability is in excess of $200,000 is outstanding.   Except as set forth on **<u>Schedule 4.16(b)</u>**, no cash calls or payments due from any Seller under the terms of the Assigned Contracts or otherwise relating to the Acquired Interests are past due by more than thirty (30) days (excluding amounts being disputed in good faith).

4.17    <u>Labor and Employment Matters</u>.

(a)    The Sellers have provided the Ad Hoc Group of Secured Lenders Advisors (as defined in the Plan), on a confidential basis and for professional eyes only, with a true and complete list of the following information for all employees of the Sellers and of each of their Affiliates (such employees from time to time, and whether or not listed, the "***Seller Employees***"), including name, title, hire date, location, whether full- or part-time, whether active or on leave (and, if on leave, the nature of the leave and the expected return date), whether exempt from the Fair Labor Standards Act of 1938, annual salary or wage rate, most recent annual bonus received, and current annual bonus opportunity (such list, the "***Employee List***"), which list may not be shared with any debt or equity holders of Buyer.   In addition, the Sellers have provided Buyer with the Employee List, but excluding each Seller Employee's name and title, which can be shared with Buyer's debt and equity holders, the DIP Lenders (as such term is defined in the Plan) and the FLTL Lenders (as such term is defined in the Plan).

(b)    The Sellers and each of their Affiliates are, and for the last three (3) years, have been, in compliance in all material respects with applicable Laws relating to labor and employment, including those relating to worker classification, labor management relations, wages and hours (including classification of independent contractors and exempt and non-exempt employees), overtime, collective bargaining, unemployment, workers' compensation, equal employment opportunity, discrimination, civil rights, affirmative action, work authorization, immigration, safety and health, continuation coverage under group health plans, information privacy and security and payment of withholding of taxes and social security.

(c)    For the last three (3) years, (i), no allegations of sexual harassment or other sexual misconduct have been made against any current or former employee or independent contractor of the Sellers or any of their Affiliates who has three or more direct reports, (ii) there are and have been no actions pending or, to the Sellers' Knowledge, threatened in writing related to any allegations of sexual harassment or other sexual misconduct by any current or former employee or independent contractor of the Sellers or any of their Affiliates who has three or more direct reports, and (iii) neither the Sellers nor any of their Affiliates have entered into any settlement agreements related to allegations of sexual harassment or other sexual misconduct by any current or former employee or independent contractor of the Sellers or any of their Affiliates.

(d)    There are no collective bargaining agreements to which any Seller or any Affiliate of any Seller is a party relating to any Seller Employee and, to the Sellers' Knowledge,

27

threatened.  No application for certification of a collective bargaining agent involving any Seller and any Seller Employee is pending.  With respect to the Seller Employees, there are no (i) strikes, slowdowns, picketing or work stoppage by any Seller Employee pending or, to the Sellers' Knowledge, threatened or (ii) except as would not reasonably be expected to result in a material Liability, unfair labor practice charges or other employment or labor complaints pending or, to the Sellers' Knowledge, threatened in writing against any Seller or any of their Affiliates before the National Labor Relations Board or any other Governmental Authority or any current union representation questions involving any current or former employees or independent contractors of any Seller or any of their Affiliates.

    4.18    <u>Employee Benefits</u>.

    (a)    **Schedule 4.18** sets forth a true and complete list of each material (i) deferred compensation plan, (ii) incentive compensation plan, (iii) equity compensation plan, (iv) "*welfare*" plan, fund or program (within the meaning of Section 3(1) of ERISA), (v) "*pension*" plan, fund or program (within the meaning of Section 3(2) of ERISA), (vi) "*employee benefit plan*" (within the meaning of Section 3(3) of ERISA), (vii) employment (other than offer letters entered into in the ordinary course of business that do not provide for severance, transaction or retention bonuses or any guaranteed payments), termination, severance or "*change in control*" agreement and (viii) other employee benefit plan, fund, program, agreement or arrangement, in each case, that is sponsored, maintained or contributed to or required to be contributed to by any Seller or by any trade or business, whether or not incorporated, that together with any Seller would be deemed a "*single employer*" within the meaning of Section 4001(b) of ERISA (an "*ERISA Affiliate*"), or to which any Seller or any ERISA Affiliate is party, for the benefit of any Seller Employee (each an "*Employee Plan*").  Each Employee Plan that Buyer or one of its Affiliates shall assume as of the Closing will be so noted on **Schedule 4.18** (each an "*Assumed Employee Plan*").

    (b)    None of the Sellers nor any of their Affiliates or ERISA Affiliates (nor any predecessor of any such entity) sponsors, maintains, administers or contributes to (or has any obligation to contribute to), or has in the past six (6) years sponsored, maintained, administered or contributed to (or had any obligation to contribute to), or has or is reasonably expected to have any direct or indirect Liability with respect to, any plan subject to Title IV of ERISA, including any "*multiemployer plan*" (as defined in Section 3(37) of ERISA or any plan described in Section 413 of the Code).  No Assumed Employee Plan is a multiple employer welfare arrangement (within the meaning of Section 3(40) of ERISA).

    (c)    Each Assumed Employee Plan that is intended to be qualified under Section 401(a) of the Code has received a favorable determination letter or opinion, is entitled to rely on an opinion letter from the IRS or has applied to the IRS for such a letter within the applicable remedial amendment period or such period has not expired and, to the Sellers' Knowledge, no circumstances exist that would reasonably be expected to result in the loss of such qualification.

    (d)    No Assumed Employee Plan provides for any post-employment or post-retirement medical, dental, disability, hospitalization, life or similar benefits (whether insured or

<div align="center">28</div>

self-insured) to any current or former employee of the Sellers (other than coverage mandated by applicable Law, including COBRA).

(e)     Each Employee Plan has been maintained, funded and administered in compliance with its terms and all applicable Law, including ERISA and the Code, except where the failure to be so operated would not reasonably be expected to result in a material Liability. There is no action, suit, investigation, audit, proceeding or claim (other than routine claims for benefits) pending against or, to the Sellers' Knowledge, threatened against or involving any Employee Plan before any court or arbitrator or any Governmental Authority, including the IRS, the Department of Labor or the Pension Benefit Guaranty Corporation, that would reasonably be expected to result in a material Liability.

(f)     Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby (either alone or together with any other event) will (i) entitle any current or former employee or independent contractor to any material payment or benefit, including any bonus, retention, severance, retirement or job security payment or benefit, (ii) accelerate the time of payment or vesting or trigger any payment or funding (through a grantor trust or otherwise) of compensation or benefits under, or increase the amount payable or trigger any other obligation under, any Employee Plan with respect to any current or former employee or independent contractor or (iii) result in the payment of any amount that would subject any current or former employee or independent contractor to excise taxes under Section 4999 of the Code.

4.19     <u>Non-Consent Operations</u>.  Except as set forth on **<u>Schedule 4.19</u>**, no operations are being conducted or have been conducted on any Field Assets with respect to which any Seller has elected, or been deemed, to be a non-consenting party under the applicable operating agreement and with respect to which all of such Seller's rights have not yet reverted to it.

4.20     <u>Suspense Funds</u>.  **<u>Schedule 4.20</u>** sets forth the amount of all Suspense Funds as of the date set forth therein.

4.21     <u>Payout Balances</u>.  To the Sellers' Knowledge, **<u>Schedule 4.21</u>** contains a list of the estimated status of any "***payout***" balance (on a gross Working Interest basis for all Working Interest owners affected thereby), as of the date set forth on such Schedule, for each Well, Lease or Subject Unit that is subject to a reversion or other adjustment at some level of cost recovery or payout.

4.22     <u>Title to Acquired Interests</u>.

(a)     The Sellers: (i) with respect to each Lease listed on **<u>Exhibit A</u>**, hold pursuant to such Lease a valid interest in all or a portion of the oil and gas interests leased pursuant to such Lease, (ii) with respect to each Easement listed on **<u>Exhibit B</u>**, have a valid easement or other limited property interest in such Easement and (iii) with respect to each Well listed on **<u>Exhibit C</u>**, hold pursuant to one or more of the Leases a valid interest in all or a portion of the oil and gas produced from such Well, in each case, free and clear of any Encumbrances (other than (x) Permitted Encumbrances and (y) as would not be material to such Acquired Interest).  For the avoidance of doubt, the Sellers do not make any representations or warranties pursuant to the preceding sentence with respect to holding any specific net revenue interest or working interest in

29

any of the Wells or Leases.  Except for the Encumbrances described on **Schedule 4.22**, the Sellers have good and valid title to all Acquired Interests other than the Wells, Leases, Easements and Subject Units, and are the record and beneficial owners of the Fieldwood U.A. Interests and the JV Interests, in each case free and clear of any Encumbrances and any other limitation or restriction (including any restriction on the right to vote, sell or otherwise dispose of the Fieldwood U.A. Interests or the JV Interests), other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances), in each case except as would not be material to such Acquired Interest.

(b)     No Affiliate of Fieldwood that is not a Seller owns any asset, property or right that is an Acquired Interest or would have been an Acquired Interest if such Affiliate had been a Seller hereunder.

(c)     The Acquired Interests constitute all of the property and assets used or held for use in the business of the Sellers as it relates to the ownership and operation of the Leases and are adequate to conduct the business of the Sellers as it relates to the ownership and operation of the Leases as currently conducted.

(d)     Except as set forth on **Schedule 4.22(d)**, no Seller or any of its Affiliates owns any real property.

4.23     <u>Insurance</u>.  **Schedule 4.23** sets forth a true and complete list of all policies of insurance held by or maintained by the Sellers or any of their Affiliates related to any Acquired Interests or the Seller Employees, including the type of policy, the limits of the coverage and any deductible or self-retention limit with respect thereto.  Such policies of insurance are in full force and effect.  Except as set forth on **Schedule 4.23**, no Seller has received, since January 1, 2020, any written notice from any insurer under any insurance policy applicable to the Acquired Interests or the Seller Employees disclaiming or limiting coverage with respect to any particular material claim or such policy in general or canceling or amending any such policy.  All premiums payable under all such insurance policies have been timely paid and each Seller has otherwise complied in all material respects with the terms and conditions of all such insurance policies.  To the Knowledge of the Sellers, no termination of, material non-ordinary course premium increase with respect to, or material alteration of coverage under, any of such policies or bonds has been threatened.

4.24     <u>Related Party Transactions</u>.  Except as set forth on **Schedule 4.24**, (a) there are no Assigned Contracts by and between any Seller and (i) any Affiliates of, or holder of five percent (5%) or more of the equity of, any Seller, (ii) any director or officer of any Seller or of any Person referenced in <u>clause (i)</u>, or (iii) any "***associate***" or "***immediate family***" member (as such terms are respectively defined in Rule 12b-2 and Rule 16a-1 of the Securities Exchange Act of 1934) of any Person referenced in <u>clause (i)</u> or <u>(ii)</u> (the Persons referenced in <u>clauses (i)</u>, <u>(ii)</u> and <u>(iii)</u> collectively, the "***Seller Related Parties***") and (b) no Seller has otherwise entered into any transactions or other arrangements with any Seller Related Parties that will be binding on Buyer or the Acquired Interests after the Closing Date.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

4.25    Intellectual Property.

(a)    **Schedule 4.25(a)** contains a true and complete list of each of the issuances, registrations and applications for issuance or registration included in the Owned Intellectual Property, specifying as to each such item, as applicable, (i) the owner of such item, (ii) each jurisdiction in which such item is issued or registered or in which any application for issuance or registration has been filed, (iii) the respective issuance, registration and/or application number of such item and (iv) the date of application and issuance or registration of such item.

(b)    The Sellers are the sole and exclusive owners of all Owned Intellectual Property, in each case free and clear of any Encumbrance (except Permitted Encumbrances).  The Sellers own or have a valid and enforceable license or other right to use all Transferred Intellectual Property, and the Transferred Intellectual Property is all of the Intellectual Property (except Trademarks) necessary for the conduct of, or used or held for use in, the business of the Sellers as it relates to the Acquired Interests as currently conducted.

(c)    There exist no restrictions on the Sellers' disclosure, use, license or transfer of the Owned Intellectual Property, and the consummation of the transactions contemplated by this Agreement will not alter, encumber, impair or extinguish any Owned Intellectual Property or the Sellers' rights under any material Licensed Intellectual Property or impair the right of the Sellers to develop, use, sell, license or otherwise dispose of, or to bring any action for the infringement, misappropriation or other violation of, any Owned Intellectual Property.

(d)    The Sellers have not infringed, misappropriated or otherwise violated any Intellectual Property of any Person.  There is no Claim pending or threatened in writing, in each case, against any Seller (i) challenging or seeking to deny or restrict, the rights of any Seller in any of the Transferred Intellectual Property, (ii) alleging that any Transferred Intellectual Property is invalid or unenforceable, (iii) alleging that the use of any of the Transferred Intellectual Property or any services provided, processes used or products manufactured, used, imported or sold by any Seller, misappropriate, infringe or otherwise violate any Intellectual Property of any Person or (iv) otherwise alleging that any Seller has infringed, misappropriated or otherwise violated any Intellectual Property of any Person.

(e)    The Sellers have taken commercially reasonable steps to maintain, enforce and protect the Owned Intellectual Property.  None of the issuances or registrations included in the Owned Intellectual Property has been adjudged invalid or unenforceable in whole or part, all issuances and registrations included in the Owned Intellectual Property are valid, enforceable, in full force and effect and subsisting, and all registration, maintenance and renewal fees applicable to such issuances and registrations that are currently due have been paid and all documents and certificates related to such items and required to be filed with the relevant Governmental Authority for the purposes of maintaining such items have been filed with the relevant Governmental Authority.

(f)    To the Sellers' Knowledge, no Person has infringed, misappropriated or otherwise violated any material Owned Intellectual Property.  The Sellers have taken commercially reasonable steps in accordance with normal industry practice to maintain the confidentiality of all material Owned Intellectual Property the value of which to any of the Sellers is contingent upon

31

maintaining the confidentiality thereof and no such material Owned Intellectual Property has been disclosed other than to employees, representatives, agents or partners of the Sellers or any other Persons, in each case, who are bound by written and enforceable confidentiality agreements.

(g)     The Sellers have appropriate procedures in place designed to provide that all material Intellectual Property conceived or developed by employees performing their duties for any Seller, and by Third Persons performing research and development for any Seller, have been assigned to such Seller, as applicable.  To the extent that any material Owned Intellectual Property has been developed or created by any Third Persons (including any current or former employee) for any Seller, such Seller has a written agreement with such Third Persons with respect thereto, which provides that such Seller either (i) has obtained ownership of and is the sole and exclusive owner of or (ii) has obtained a valid right to exploit, sufficient for the conduct of its business as it relates to the Acquired Interests, as currently conducted, such material Owned Intellectual Property.

(h)     The Seller IT Assets operate and perform in a manner that permits each Seller to conduct its business as it relates to the Acquired Interests as currently conducted, and the Sellers have taken commercially reasonable actions, consistent with current industry standards, to protect the integrity and security of the Seller IT Assets (and the confidentiality and security of all information and transactions stored or contained therein or transmitted thereby) against unauthorized use, access, interruption, modification or corruption, including the implementation of commercially reasonable (i) data backup, (ii) disaster avoidance and recovery procedures, (iii) business continuity procedures and (iv) encryption and other security protocol technology.  There has been no unauthorized use, access, interruption, modification or corruption of any Seller IT Assets that had a material adverse impact on the Sellers.

(i)     The Sellers have at all times materially complied with all applicable Laws, policies, procedures and contractual and all other obligations governing the collection, use, storage, processing, disclosure, protection, or security of Personal Information collected, used, stored, transferred or processed by or on behalf of any Seller (collectively, the "***Data Obligations***").  There has been no material loss, theft, security breach or unauthorized or unlawful disclosure or acquisition of any such Personal Information. No Claim has been asserted or, to the Sellers' Knowledge, threatened in writing, in each case, against any Seller alleging a violation of any Data Obligation.  For purposes of this Section 4.25(b), "***Personal Information***" means, in addition to any definition for any similar term (e.g., "personal data" or "personally identifiable information") provided by applicable Law, all information that identifies or can reasonably be used to identify an individual person.

4.26     Undue Influence.  In the past five (5) years, in connection with the ownership or operation of the business of the Sellers as it relates to the Acquired Interests, neither any Seller nor, to the Sellers' Knowledge, any director, officer, agent, employee or Affiliate, in each case, of any Seller, has taken any action, directly or indirectly, with respect to the business of the Sellers as it relates to the Acquired Interests that would result in a material violation of the Foreign Corrupt Practices Act of 1977 and the rules and regulations thereunder (the "***FCPA***") or any anti-corruption or anti-bribery laws, export control laws or sanctions issued or promulgated by any Governmental Authority.  In the past five (5) years, each Seller, and, to the Sellers' Knowledge, their respective Affiliates, have conducted the business of the Sellers as it relates to the Acquired Interests in

compliance with the FCPA and all anti-corruption and anti-bribery laws, export control laws and sanctions issued or promulgated by any Governmental Authority in all material respects.

4.27   <u>No Undisclosed Material Liabilities</u>.  Except as set forth on **Schedule 4.27**, there are no Liabilities of or relating to the business of the Sellers as it relates to the ownership or operation of the Acquired Interests that would constitute Assumed Liabilities (without taking into account any modifications requested by Sellers to the Co-Owned Assets, Other Assets or Assumed Liabilities after the Execution Date) that would be required by GAAP to be disclosed on financial statements of the Sellers as of the Execution Date, other than Liabilities (a) reflected or disclosed in the consolidated balance sheet of the Sellers for the fiscal quarter ended September 30, 2020 ("***Balance Sheet Date***"), (b) incurred in the ordinary course of business since the Balance Sheet Date (excluding any breaches of Law or any Lease, Easement or Contract), (c) disclosed in any materials filed with the Bankruptcy Court prior to the Execution Date in connection with the Bankruptcy Cases, (d) set forth on the Disclosure Schedules or (e) that are not material, individually or in the aggregate, to the Acquired Interests.

4.28   <u>Absence of Certain Changes</u>.

(a)   Since the Balance Sheet date through the Execution Date, (i) except as authorized by the Bankruptcy Court prior to the date hereof, including as expressly contemplated by any orders entered in the Bankruptcy Cases from and after the Petition Date through the date hereof, the Acquired Interests have been owned and operated in the ordinary course of business in all material respects and (ii) except as disclosed on the Financial Statements, there has not been a Material Adverse Effect.

(b)   From January 1, 2020 through the Execution Date, except as set forth on **Schedule 4.28(b)**, or as expressly contemplated by any orders entered in the Bankruptcy Cases from and after the Petition Date, the Sellers have not:  (A) purchased or otherwise acquired any material properties or assets (tangible or intangible) that constitute Acquired Interests or sold, leased, licensed, transferred, abandoned or otherwise disposed of any material assets that would otherwise have constituted Acquired Interests, except for (x) purchases of materials, and sales of Hydrocarbons and surplus inventory, in each case, in the ordinary course of business and (y) purchases or sales not contemplated by the preceding <u>clause (x)</u> that involved consideration of less than $5,000,000 individually, and $10,000,000 in the aggregate, (B) removed any material Inventory or other Acquired Interests from any of the properties or facilities that will transfer to Buyer as a result of the transactions contemplated hereby, other than in the ordinary course of business or (C) suffered any damage or destruction to or loss of any Acquired Interest whether or not covered by insurance where the value of such damage, destruction or loss (measured by cost to the Sellers of repairing or replacing the applicable Acquired Interest) was greater than $1,000,000.

4.29   <u>Equipment and Fixed Assets</u>.  Except as would not reasonably be expected to result, individually or in the aggregate, in a Material Adverse Effect, all Inventory is in good operating condition and state of repair for the purposes for which they are used by the Sellers in the operation of its business, normal wear and tear excepted.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

4.30    Operatorship.  The Sellers have not received written notice of any vote to have the Sellers removed as the named operator of any of the Field Assets for which any Seller is currently designated as the operator and for which such vote is pending as of the Execution Date.  From September 30, 2013 through the Execution Date, no Seller has been removed as the named operator of any material Field Asset.

4.31    Joint Venture.

(a)    Fieldwood U.A. is an entity duly formed and validly existing under the Laws of the Netherlands.  To the Sellers' Knowledge, (i) Fieldwood Mexico is an entity duly formed and validly existing under the Laws of the Netherlands and (ii) each of the Subsidiaries of Fieldwood Mexico is an entity duly formed and validly existing under the Laws of its jurisdiction of incorporation.  Fieldwood U.A. is, and, to the Sellers' Knowledge, the Mexico JV is qualified to do business and is in good standing under the Laws of each jurisdiction where such qualification is necessary, except for those jurisdictions where failure to be so qualified would not, individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect.  Fieldwood U.A. has, and, to the Sellers' Knowledge, the Mexico JV has all requisite power and authority required to own and operate their properties and to carry on their business as now conducted.

(b)    Prior to the date hereof, the Sellers have made available to Buyer all organizational documents and equity holder, stockholder, operating, membership, voting and other similar agreements of or relating to Fieldwood U.A. and, to the Sellers' Knowledge, the Mexico JV (the "***Organizational Documents***").  None of any Seller or, to the Sellers' Knowledge, any other Person, is in material breach of any Organizational Document.  Other than the Organizational Documents, there are no agreements to which any Seller is a party with respect to the voting of any JV Interests or Fieldwood U.A. Interests or which restrict the transfer of any JV Interests or Fieldwood U.A. Interests.

(c)    To the Sellers' Knowledge, Fieldwood Mexico has the following Subsidiaries, each of which are incorporated in Mexico: (1) Fieldwood Energy de Mexico, S. de R.L. de C.V.; (2) Fieldwood Energy E&P Mexico, S. de R.L. de C.V.; and (3) Fieldwood Energy Services de Mexico, S. de R.L. de C.V.  To the Sellers' Knowledge, as of the Execution Date, the equity interests of: (i) Fieldwood Mexico consists of (A) class A shares, (B) class B shares and (C) class D shares, (ii) Fieldwood Energy de Mexico, S. de R.L. de C.V. consists of two (2) equity interests (*partes sociales*), (iii) Fieldwood Energy E&P Mexico, S. de R.L. de C.V. consists of two (2) equity interests (*partes sociales*) and (iv) Fieldwood Energy Services de Mexico, S. de R.L. de C.V. consists of two (2) equity interests (*partes sociales*) (the equity interests of the Mexico JV collectively, the "***JV Shares***").  The equity interests of Fieldwood Mexico and each of its Subsidiaries that are held by the Sellers are listed on **Schedule 4.31(c)**.  To the Sellers' Knowledge, (x) the equity interests of Fieldwood Mexico, and (y) the issued and outstanding JV Shares are held of record by the Persons listed on **Schedule 4.31(c)**.

(d)    The outstanding equity interests of Fieldwood U.A., as of the Execution Date, consist of the Fieldwood U.A. Interests, and are held of record by the Persons listed on **Schedule 4.31(d)**.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(e)      All of the issued and outstanding Fieldwood U.A. Interests and, to the Sellers' Knowledge, JV Interests have been duly authorized and validly issued, and are fully paid and nonassessable and were not issued in violation of any rights of first refusal, preemptive rights or similar rights.  Except as set forth on **Schedule 4.31(c)** and **Schedule 4.31(d)**, (i) all of the outstanding securities or other similar ownership interests of any class or type of or in Fieldwood U.A. are held by Fieldwood Offshore LLC and Fieldwood, (ii) there are no outstanding securities or other similar ownership interests of any class or type of or in Fieldwood U.A. or, to the Sellers' Knowledge, the Mexico J.V. and (iii) there are no outstanding options, warrants, calls, purchase rights, subscription rights, exchange rights or other rights, convertible exercisable or exchangeable securities, ***phantom***" equity rights, stock appreciation rights, equity-based performance units, or similar agreements, commitments or undertakings of any kind pursuant to which Fieldwood U.A. or, to the Sellers' Knowledge, the Mexico JV is or may become obligated to (i) issue, deliver, transfer, sell or otherwise dispose of, or pay an amount relating to, any securities or other similar ownership interests of the Mexico JV or Fieldwood U.A., or any securities convertible into or exercisable or exchangeable for any securities or other ownership interests of the Mexico JV or Fieldwood U.A., or (ii) redeem, purchase or otherwise acquire any outstanding securities of the Mexico JV or Fieldwood U.A.

(f)      Fieldwood U.A. has no employees.  Fieldwood U.A. has (i) no assets other than the JV Interests held by Fieldwood U.A. and (ii) except as set forth on **Schedule 4.31(f)**, no non *de minimis* Liabilities other than those Liabilities incident to the ownership of the JV Interests held by Fieldwood U.A. (but not any Liabilities with respect to any breach of Law or Contract with respect to the ownership of such JV Interests).

4.32    Plan of Merger.  The FWE I Oil and Gas Properties (excluding the assets listed on Exhibit I-K of the Plan of Merger) include solely "Legacy Apache Properties" (as such term is defined in the Apache Term Sheet (as such term is defined in the Restructuring Support Agreement)) and no other asset.  As of the Execution Date, there is no asset listed on Exhibit I-K of the Plan of Merger that is related to, used or held for use in connection with or held as inventory in connection with, any Lease, Easement or Well listed on **Exhibit A**, **Exhibit B** or **Exhibit C**.

4.33    Exhibit X-1.  **Exhibit X-1** sets forth an estimate of estimated Working Capital Assets (excluding clause (b) of the definition thereof) and Working Capital Liabilities (excluding clause (b) of the definition thereof) assuming an Effective Time occurring on June 30, 2021, which was prepared at the direction of the Sellers.  To the Sellers' Knowledge, when prepared in February 2021, the information in **Exhibit X-1** reflected a reasonable estimate of Working Capital Assets (excluding clause (b) of the definition thereof) and Working Capital Liabilities (excluding clause (b) of the definition thereof) assuming an Effective Time occurring on June 30, 2021, subject to (a) the assumptions described therein and (b) omission of liabilities for accrued payroll.  To the Sellers' Knowledge, (x) the Fieldwood Energy I Closing Accounts Receivable do not include or exclude assets that would have resulted in a material deviation of the net amount of the Working Capital Assets described in **Exhibit X-1** if such assets had been estimated and reflected in **Exhibit X-1** when prepared and (y) the Fieldwood Energy I Closing Accounts Payable do not include or exclude liabilities that would have resulted in a material deviation of the net amount of the Working Capital Liabilities described in **Exhibit X-1** if such liabilities had been estimated and reflected in **Exhibit X-1** when prepared (assuming that all, or substantially all, pre-petition payables are excluded from the calculation of Fieldwood Energy I Closing Accounts Payable as

35

obligations satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order, including by being paid as Cure Costs), in the case of each of clause (x) and clause (y), after taking into account duplication between the accounts described in **Exhibit X-1** and in the definitions of Working Capital Assets and Working Capital Liabilities, on the one hand, and Fieldwood Energy I Closing Accounts Receivable and Fieldwood Energy I Closing Accounts Payable, on the other hand.

# ARTICLE V
# BUYERS' REPRESENTATIONS

Each of Buyer and Buyer 2 represents and warrants to the Sellers, subject to the Disclosure Schedules (subject to Section 12.15), as follows:

5.1     Organization; Standing; Capitalization.

(a)     At the date hereof, each of Buyer and Buyer 2 is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware. Each of Buyer and Buyer 2 has all requisite power and authority and all governmental licenses, authorizations, permits, consents and approvals required to carry on its business as now conducted.

(b)     At the Closing, (i) all of the issued and outstanding **[membership interests]** of Buyer are held by [_____], a [_____] ("***Buyer Intermediate***"), (ii) all of the issued and outstanding **[membership interests]** of Buyer 2 are held by Buyer, (iii) all of the issued and outstanding **[membership interests]** of Buyer Intermediate are held by [_____], a [_____] ("***Buyer Parent***") and (iv) all of the issued and outstanding [membership interests] of Buyer Parent are held by [_____], a [_____] ("***Buyer Grandparent***").[6]

(c)     At the Closing, except as set forth on **Schedule 5.1(c)**, the authorized and issued equity interests of Buyer Grandparent (the "***Buyer Grandparent Equity Interests***") shall consist solely of (i) the New Equity Interests to be issued pursuant to Section 4.4(a)(i) of the Plan, (ii) the Subscription Rights (including any New Equity Interests issued in connection with the exercise thereof), (iii) Backstop Commitment Premium Equity Interests (as defined in the Plan), (iv) the GUC Warrants, (v) the SLTL Warrants and (vi) the New Money Warrants, in each case, issued pursuant to, and in accordance with, the Plan.  At the Closing, all of the issued and outstanding Buyer Grandparent Equity Interests, and all of the membership interests of Buyer Parent, Buyer, Buyer 2 and Buyer Intermediate, will have been duly authorized and validly issued, and will be fully paid and nonassessable and not issued in violation of any rights of first refusal, preemptive rights or similar rights.  As of the Closing Date, except as set forth in Section 5.1(b) and the first sentence of this Section 5.1(c), there are no issued and outstanding (i) securities or other similar ownership interests of any class or type of or in Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent or (ii) options, warrants, calls, purchase rights, subscription rights, exchange rights or other rights, convertible exercisable or exchangeable securities, "***phantom***" equity rights, stock appreciation rights, equity-based performance units, or similar agreements, commitments or undertakings of any kind pursuant to which Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent is or may become obligated to (A) issue, deliver,

---

[6] Note to Draft: To be confirmed prior to signing.

transfer, sell or otherwise dispose of, or pay an amount relating to, any securities or other similar ownership interests of Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent or any securities convertible into or exercisable or exchangeable for any securities or other ownership interests of Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent, or (B) redeem, purchase or otherwise acquire any outstanding securities of Buyer, Buyer 2, Buyer Intermediate, Buyer Parent or Buyer Grandparent.[7]

(d)     As of immediately following the Closing, the only Liabilities of Buyer, Buyer 2, Buyer Intermediate and Buyer Parent will be: (x) liabilities under the Exit Facilities (as defined in the Plan), (y) in the case of Buyer and Buyer 2, the Assumed Liabilities and (z) Liabilities incurred in connection with this Agreement or any of the Ancillary Documents or any of the transactions contemplated hereunder or thereunder (including with respect to any surety bonds).

5.2     <u>Power</u>.  Each of Buyer and Buyer 2 has the requisite power and authority to execute and deliver this Agreement and the Ancillary Documents to which it is a party and perform its obligations under this Agreement and such Ancillary Documents.

5.3     <u>Non-Contravention</u>.     Buyer's execution, delivery and performance of this Agreement and each Ancillary Document to which Buyer is (or, upon its execution and delivery, will be) a party and the performance of the transactions contemplated herein and therein will not (a) conflict with or result in a breach of any provisions of the organizational documents of Buyer or (b) assuming compliance with matters referred to in <u>Section 5.7</u>, violate any material Law applicable to Buyer.  Buyer 2's execution, delivery and performance of this Agreement and each Ancillary Document to which Buyer 2 is (or, upon its execution and delivery, will be) a party and the performance of the transactions contemplated herein and therein will not (x) conflict with or result in a breach of any provisions of the organizational documents of Buyer 2 or (y) assuming compliance with matters referred to in <u>Section 5.7</u>, violate any material Law applicable to Buyer 2.

5.4     <u>Authorization and Enforceability</u>.  Each of Buyer and Buyer 2 has full capacity, power and authority to enter into and perform this Agreement, each Ancillary Document to which Buyer and Buyer 2, as applicable, is (or, upon its execution and delivery, will be) a party and the transactions contemplated herein and therein.  The execution, delivery and performance by each of Buyer and Buyer 2 of this Agreement and each Ancillary Document to which Buyer and Buyer 2, as applicable, is (or, upon its execution and delivery, will be) a party have been duly and validly authorized and approved by all necessary organizational action of Buyer and Buyer 2, as applicable.  This Agreement and each Ancillary Document to which Buyer and Buyer 2 is (or, upon its execution and delivery will be) a party are, or upon their execution and delivery will be, the valid and binding obligations of Buyer and Buyer 2, as applicable, and enforceable against Buyer and Buyer 2, as applicable, in accordance with their respective terms, subject to the effects of bankruptcy, insolvency, reorganization, moratorium and similar Laws as well as to principles

---

[7] <u>Note to Draft</u>: To be confirmed prior to signing.

of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

5.5     Liability for Brokers' Fees.  Other than Rothschild & Co. US Inc. and Intrepid Partners, LLC, who have been retained by the Ad Hoc Group of Secured Lenders (as defined in the Plan), there is no investment banker, broker, finder or other intermediary which has been retained by or is authorized to act on behalf of Buyer or Buyer 2 who might be entitled to any fee, commission or expenses in connection with the transactions contemplated by this Agreement or any of the Ancillary Documents.

5.6     Litigation.  Neither any Claim by any Governmental Authority or other Person nor any legal, administrative or arbitration proceeding is pending or, to Buyer's Knowledge, threatened against Buyer or Buyer 2 which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

5.7     Governmental and Third Person Consents.  Except as set forth on **Schedule 5.7** no Governmental Approval is required to authorize, or is otherwise required in connection with, (a) Buyer's or Buyer 2's valid execution and delivery of this Agreement or any Ancillary Document to which Buyer or Buyer 2 is (or, upon its execution and delivery, will be) a party, (b) Buyer's or Buyer 2's performance of their respective obligations hereunder or thereunder or (c) the consummation of the transactions contemplated by this Agreement and the Ancillary Documents.

5.8     Financial Capability.  At or prior to the Closing, Buyer has provided to the Sellers a true and complete copy of the [Direction Letter.][8]

5.9     Qualification.  At the Closing, Buyer will have met the BOEM Qualifications.

5.10    Bankruptcy.  There are no bankruptcy, reorganization, receivership or arrangement proceedings pending against or to Buyer's Knowledge, threatened against Buyer or Buyer 2.

5.11    Investor Status; Investigation.

(a)     To the extent any Acquired Interests constitute securities, the Acquired Interests are being acquired by Buyer and Buyer 2 for investment purposes only, for Buyer's and Buyer 2's own account and not with a view to, or for resale in connection with, any distribution thereof in violation of the 1933 Act.

(b)     Each of Buyer and Buyer 2 acknowledges that, to the extent any Acquired Interests constitute securities, the sale of the Acquired Interests has not been registered under the 1933 Act or any state or foreign securities laws and that the Acquired Interests, to the extent constituting securities, may not be sold, transferred, offered for sale, pledged, hypothecated or otherwise disposed of unless such transfer, sale, assignment, pledge, hypothecation or other disposition is pursuant to the terms of an effective registration statement under the 1933 Act and

---

[8] Note to Draft: Subject to Agent feedback (i.e., whether 1 letter or 2 letters).

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

registered under any applicable state or foreign securities laws or pursuant to an exemption from registration under the 1933 Act and any applicable state or foreign securities laws.

(c)      Each of Buyer and Buyer 2 has such expertise, knowledge and sophistication in financial and business matters generally that it is capable of evaluating, and has evaluated, the merits and economic risks of its investment in the Acquired Interests. Each of Buyer and Buyer 2 is knowledgeable of the oil and gas business and of the usual and customary practices of oil and gas producers, including those in the areas where the Acquired Interests are located. Further, each of Buyer and Buyer 2 is capable of making such investigation, inspection, review and evaluation of the Acquired Interests as a prudent purchaser would deem appropriate under the circumstances including with respect to all matters relating to the Acquired Interests, their value, operation and suitability.

(d)      Each of Buyer and Buyer 2 has had the opportunity to examine all aspects of the Acquired Interests that Buyer and Buyer 2 have deemed relevant and has had access to all information requested by Buyer or Buyer 2 with respect to the Acquired Interests in order to enter into this Agreement. In connection with the transactions contemplated hereby, each of Buyer and Buyer 2 has had the opportunity to ask such questions of, and has received sufficient answers from, the representatives of the Sellers and obtain such additional information about the Acquired Interests as each of Buyer and Buyer 2 deems necessary to enter into this Agreement.

(e)      Each of Buyer and Buyer 2 confirms, acknowledges and agrees that Buyer and Buyer 2, as applicable, is relying entirely upon the representations and warranties of the Sellers in this Agreement, any certificates delivered hereunder and any Ancillary Document, as well as Buyer's and Buyer 2's own investigations and inspections of the books, records and assets of the Sellers, including the Acquired Interests, prior to the execution of this Agreement in entering into this Agreement and proceeding with the transactions on the terms as set forth herein. Each of Buyer and Buyer 2 acknowledges and agrees that, other than the express representations and warranties of the Sellers set forth in Article IV, in the certificates delivered by the Sellers at Closing, or any Ancillary Document, any description of the Sellers, their businesses, operations and assets (including the Acquired Interests) in this Agreement, the Disclosure Schedules or any Ancillary Document is for the sole purpose of identification only and no representation, warranty or condition is or will be given by the Sellers in respect of the accuracy of any description. In deciding to enter into this Agreement, and to consummate the transactions contemplated hereby, other than the express representations and warranties of the Sellers set forth in Article IV, any certificates delivered hereunder and any Ancillary Document, each of Buyer and Buyer 2 has relied solely upon its own knowledge, investigation, judgment and analysis and not on any other disclosure or representation made by the Sellers or the Sellers' representatives. Nothing herein shall limit Buyer's or Buyer 2's remedies in the event of Fraud, except that Buyer and Buyer 2 shall have no remedy in the event of Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries.

5.12      No Other Representations. No Seller nor any other Person (on behalf of any Seller or otherwise) has made or is making any representation or warranty whatsoever, express or implied, at law or in equity, with respect to the Sellers, the Acquired Interests, this Agreement or the transactions contemplated by this Agreement other than the representations and warranties expressly set forth in Article IV (as modified by the Disclosure Schedules), the certificates

delivered hereunder or any Ancillary Document, and neither Buyer nor Buyer 2 is relying on and has not relied on any representation or warranty other than those representations or warranties set forth in Article IV (as modified by the Disclosure Schedules), the certificates delivered hereunder or any Ancillary Document and any reliance by Buyer or Buyer 2 on any representation or warranty other than those representations and warranties set forth in Article IV (as modified by the Disclosure Schedules), the certificates delivered hereunder or any Ancillary Document is hereby expressly disclaimed.  Nothing herein shall limit Buyer's or Buyer 2's remedies in the event of Fraud, except that Buyer and Buyer 2 shall have no remedy in the event of Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries.

## ARTICLE VI
## COVENANTS AND AGREEMENTS

6.1    <u>Covenants and Agreements of the Sellers</u>.  The Sellers covenant and agree that, during the Interim Period (or, if earlier, until termination of this Agreement), except (u) as otherwise expressly required under this Agreement or any Ancillary Document, (v) as required by any applicable Law or Governmental Authority (including the Bankruptcy Code, the Bankruptcy Court and any actions required to be taken (or not taken) by the Sellers in order to comply with any orders of the Bankruptcy Court), (w) to the extent related solely to Excluded Assets and/or Retained Liabilities, (x) for renewal of insurance coverage in the ordinary course of business, (y) for emergency operations to address any emergency that threatens human life, safety or the environment; *provided* that the Sellers will provide notice to Buyer of any such emergency operation prior to taking such action if practicable and, otherwise, as soon as reasonably practicable thereafter or (z) otherwise with Buyer's prior written consent (not to be unreasonably withheld, conditioned or delayed):

(a)    except as set forth on **Schedule 6.1(a)**, each Seller shall and shall cause its Affiliates to:

(i)    carry on the business of the Sellers as it relates to the Acquired Interests in the ordinary course of business consistent with past practice and use commercially reasonable efforts to maintain, preserve and protect the Acquired Interests in the condition in which they exist on the Execution Date, except for ordinary wear and tear and except for replacements, modifications or maintenance in the ordinary course of business consistent with past practice;

(ii)    maintain and operate as a reasonably prudent operator in the ordinary course of business the Field Assets operated by the Sellers as of the Execution Date and maintain the Office Assets as a reasonably prudent lessee and owner;

(iii)    use commercially reasonable efforts to maintain their relationships with, and preserve for the business of the Sellers as it relates to the Acquired Interests, and preserve the goodwill of, their key suppliers and customers; *provided*, *however*, that (x) this clause (iii) will not restrict the Sellers from taking any action deemed necessary, prudent or advisable in the business judgment of the Sellers in connection with the Bankruptcy Cases, including with respect to any claim of any suppliers or customers of the Sellers that is subject to the Bankruptcy Cases, and (y) prior to taking any action (other

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

than such action required by the Plan or an order of the Bankruptcy Court) outside the ordinary course of business that the Sellers reasonably believe will adversely affect their relationships with their key suppliers and customers, the Sellers will consult with Buyer prior to taking any such action;

(iv)    pay or cause to be paid, when due, all Taxes, Lease Burdens and development and operating expenses and other payments, in each case consistent with past practice, except (A) royalties held in suspense in good faith and (B) expenses or royalties being contested in good faith;

(v)    maintain its books, accounts and records consistent with past practice;

(vi)    pay all post-petition trade payables and use commercially reasonable efforts to collect accounts receivable, as they related to the Acquired Interests after the Petition Date, in each case in the ordinary course of business consistent with past practice but, in the case of post-petition trade payables, in no event later than the due date thereof, unless being disputed in good faith (but, for the avoidance of doubt, subject to applicable orders of the Bankruptcy Court);

(vii)    provide Buyer (promptly but in no event later than three (3) Business Days after the Sellers' receipt thereof) with copies of any written notice received from any Third Person with respect to (A) any proposed operations on any Field Asset or (B) any Claim relating to any Acquired Interests (in the case of each of clauses (A) and (B), where the Sellers' Liability (or potential Liability) is in excess of $1,000,000);

(viii)    provide Buyer with copies of any material correspondence received from any Governmental Authority with respect to any Acquired Interests as soon as reasonably practicable, but in no event later than two (2) Business Days after the Sellers' receipt thereof; and

(ix)    within ten (10) Business Days following the execution of this Agreement, deliver to Buyer a true and complete list of the names, titles, hire date, location, whether full- or part-time, whether active or on leave (and, if on leave, the nature of the leave and the expected return date), whether exempt from the Fair Labor Standards Act of 1938, annual salary or wage rate, most recent annual bonus received, current annual bonus opportunity for all Seller Employees, which list shall be updated not less than ten (10) Business Days prior to the Closing to reflect the hiring, resignation or termination of any Seller Employee; and

(b)    except as set forth on **Schedule 6.1(b)**, each Seller shall not and shall cause its Affiliates not to:

(i)    modify in any material respect its now existing credit, collection or payment policies, procedures or practices as they relate to the Acquired Interests, including accelerating collections of receivables or failing to pay or delaying payment of payables in a manner inconsistent with its now existing practices;

41

(ii)    remove any Acquired Interest from any real property or other location of the Sellers' business such that such Acquired Interest is no longer located within any property of the Sellers' business that is an Acquired Interest, except for sales of inventory in the ordinary course of business;

(iii)    subject to, and without limiting, the Sellers' rights pursuant to Section 6.4, transfer, convey, sell, abandon or otherwise dispose of any material Acquired Interests (other than sales of Hydrocarbons in the ordinary course of business consistent with past practice) or any interest in any of the Leases;

(iv)    create any Encumbrance on any Acquired Interests other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances) or Encumbrances that will be released prior to Closing (including if released pursuant to the Confirmation Order);

(v)    commence, propose, commit or agree to participate in any single operation with respect to any Field Asset with an anticipated cost in excess of $1,000,000;

(vi)    amend, modify, renew or terminate any Material Contract or enter into any Contract that would be an Material Contract if it existed on the date hereof if such Material Contract would be an Assigned Contract;

(vii)    (A) hire any officers or other senior executive employees or terminate any such officer or employee (other than for "cause"); or (B) except in the ordinary course of business consistent with past practice, hire any other employees or terminate any such other employee (other than for "cause");

(viii)    (A) increase the annual rate of base salary or any target bonus opportunity of any Seller Employee, except in the ordinary course of business consistent with past practice and not in excess of 3% for any Seller Employee; (B) pay any bonus, benefit, or other direct or indirect incentive compensation (other than any such payments authorized pursuant to any first or second day orders in the Bankruptcy Cases); (C) award any equity or equity-based compensation awards (whether phantom or equity) with respect to the equity of any Seller or any of its Affiliates; (D) modify, amend or terminate any Employee Plan; (E) enter into or modify any employment, compensation, severance, non-competition, or similar Contract (or amend any such Contract) to which any Seller or any of its Affiliates is a party; or (F) adopt any new severance pay, termination pay, deferred compensation, bonus, or other employee benefit plan, agreement, program, practice, arrangement or policy with respect to Seller Employees that would be an Employee Plan if it existed on the date hereof (including any employment agreement, severance agreement, change in control agreement, or transaction or retention bonus agreements), except, in the case of each of clauses (A) through (F), (1) to the extent set forth in any order of the Bankruptcy Court or as required by applicable Law; or (2) to the extent required pursuant to the terms of any Employee Plan, as in effect on the date hereof;

(ix)    relinquish its position as operator to any Person other than Buyer or Buyer 2 with respect to any Acquired Interest operated by the Sellers;

42

(x)      waive, release, settle or compromise any material Claim or proceeding relating to any Acquired Interest;

(xi)     subject to, and without limiting, the Sellers' rights pursuant to Section 6.4, enter into any merger or divisive merger, or liquidate or dissolve;

(xii)    sell, lease, license (except for non-exclusive licenses granted in the ordinary course of business) or otherwise transfer or dispose of, abandon or permit to lapse, fail to take any action necessary to maintain, enforce or protect, or create or incur any Encumbrance (other than Permitted Encumbrances) on, any material Owned Intellectual Property;

(xiii)   cause or allow any of its current directors and officers liability, property or casualty insurance policies that apply to any of the Acquired Interests or that apply to the business of the Sellers as it relates to the Acquired Interests to be canceled or terminated or any of the coverage thereunder to lapse unless, simultaneously with such termination, cancellation or lapse, replacement policies providing coverage equal to or greater than the coverage under the canceled, terminated or lapsed policies are in full force and effect;

(xiv)    make, change or revoke any material Tax election in respect of the Acquired Interests, settle or otherwise compromise any claim relating to Taxes of Fieldwood U.A. or with respect to the Acquired Interests, enter into any closing agreement or similar agreement relating to Taxes of Fieldwood U.A. or the Acquired Interests, surrender any right to claim a Tax refund, offset or other reduction in Tax Liability of Fieldwood U.A. or with respect to the Acquired Interests, or request any ruling or similar guidance with respect to Taxes of Fieldwood U.A. or with respect to the Acquired Interests; or

(xv)     enter into any Contract or other commitment to take, or authorize the taking of or resolve to take, any actions prohibited by this Section 6.1(b).

6.2     Casualty Event.  The Sellers shall give Buyer prompt written notice of any Casualty Event that occurs with respect to any Acquired Interest during the Interim Period, together with a description of the applicable insurance coverage and an estimate of the Sellers' exposure with respect to such Casualty Event.  If the damaged or taken Acquired Interest is not repaired or replaced on or before the Closing Date, the Sellers shall provide to Buyer an assignment of all of the Sellers' right, title and interest in and to all insurance proceeds and recoveries from Third Persons payable, in each case with respect to the Acquired Interest damaged or taken as the result of such Casualty Event.

6.3     Press Releases.  Except as required in the Bankruptcy Cases or by applicable Law (a) each Party shall consult with the other before issuing any press release or otherwise making any public statement with respect to the transactions contemplated by this Agreement and (b) no Party shall issue any press release or make any such public statement before obtaining the other Party's prior written approval, which shall not be unreasonably withheld, conditioned or delayed. To the extent such release or public statement is required by Law, the Party intending to make such

43

release or public statement (i) shall give the other Party the opportunity (within reasonable time before any applicable deadline) to review and comment upon such release or public statement and (ii) shall consider in good faith all reasonable comments thereto received sufficiently in advance of any applicable deadline.

6.4    Solicitation; Other Offers.

(a)    Each of Buyer and Buyer 2 acknowledges and agrees that from and after the Execution Date through entry of the Confirmation Order, the Sellers may take any action (including entering into any agreement or letter-of-intent with respect thereto) to cause, promote, assist with or enter into an Alternative Transaction.

(b)    Without limiting the foregoing, the Sellers may, directly or indirectly through its Representatives, (i) engage in discussions and negotiations regarding an Alternative Transaction with any one or more Third Persons as potential bidders (each, an "***Alternative Bidder***") in connection with the solicitation of one or more proposals relating to an Alternative Transaction and (ii) furnish to any Alternative Bidder who has signed a confidentiality agreement and has made a request therefor any public or non-public information relating to the Sellers and afford to any such Alternative Bidder access to any properties, Acquired Interests, books or records of the Sellers or the business of the Sellers; *provided* that the Sellers shall not actively solicit proposals relating to an Alternative Transaction unless the failure to do so would be contrary to or inconsistent with applicable fiduciary duties.

6.5    Regulatory Matters; Cooperation.

(a)    The Sellers, on one hand, and Buyer, on the other hand, shall cooperate, and reasonably determine upon the advice of counsel (which, in the case of Buyer, may be Davis Polk & Wardwell LLP as counsel to the Required Lenders) within fifteen (15) Business Days of the Execution Date, other than the notifications required to be filed under the HSR Act, any notifications, filings, consents, clearances, waivers, waiting periods and approvals, if any, required under any applicable Antitrust Law in connection with the transactions contemplated by this Agreement (including by any persons that will hold, directly or indirectly, any equity interest in Buyer as of or immediately after the Closing) (the "***Foreign Antitrust Approvals***").  Subject to Section 6.5(c), as soon as reasonably practicable (and, in any event, within ten (10) Business Days, or a later date as agreed by the Parties) after the Execution Date, the Sellers, on the one hand, and Buyer, on the other hand, shall each prepare and file, or cause to be prepared and filed, any notifications required to be filed under the HSR Act with the United States Federal Trade Commission, the Antitrust Division of the United States Department of Justice and any Foreign Antitrust Approvals, and request early termination of the waiting periods applicable to such notifications.  Subject to Section 6.5(c), Buyer, on the one hand, and the Sellers, on the other hand, shall promptly respond to any requests for additional information or documentary materials in connection with such filings and shall take all commercially reasonable actions necessary to cause the waiting periods applicable to such notifications to terminate or expire at the earliest practicable date after the date of filing.  The Sellers shall be responsible for payment of the applicable filing fee under the HSR Act or Foreign Antitrust Approvals, and each Party shall be responsible for any other payment of its own respective costs and expenses incurred by such Party (including

44

attorneys' fees and other legal fees and expenses) associated with the preparation of its portion of any antitrust filings.

(b)     Subject to the provisions of <u>Section 6.5(c)</u> and <u>Section 6.7</u>, including the limitations set forth therein, the Sellers, on the one hand, and Buyer, on the other hand, shall use reasonable best efforts to obtain, at the earliest practicable date, all necessary Governmental Approvals and all necessary registrations, declarations and filings (including registrations, declarations and filings with Governmental Authorities and any change in control requirements relating to any consent decrees, decisions, judgments, settlements, consent orders, stipulations, decrees or similar orders relating to the Acquired Interests, if any), in each case for the consummation of the transactions contemplated by this Agreement and the Ancillary Documents, and use its reasonable best efforts to avoid any Claim by any Governmental Authority relating to the transactions contemplated by this Agreement and the Ancillary Documents.  Subject to the provisions of <u>Section 6.5(c)</u> and <u>Section 6.7</u>, including the limitations set forth therein, in addition to such actions, the Sellers, on the one hand, and Buyer, on the other hand, shall use reasonable best efforts to (i) take all acts necessary in connection with meeting with any Governmental Authority regarding the transferring of the Permits included in the Acquired Interests and (ii) execute and deliver any additional instruments reasonably necessary to consummate the transactions contemplated hereby and to fully carry out the purposes of this Agreement.

(c)     The Sellers, on the one hand, and Buyer, on the other hand, (i) to the extent permissible, shall promptly inform each other of any material communication from any Governmental Authority concerning this Agreement, the transactions contemplated hereby, and any filing, notification or request for approval by any Governmental Authority and (ii)  to the extent permissible, shall permit the other to review in advance any proposed written or material oral communication or information submitted to any such Governmental Authority in response thereto.  In addition, none of the Parties shall agree to participate in any meeting with any Governmental Authority in respect of any filings, investigation or other inquiry with respect to this Agreement or the transactions contemplated hereby, unless, to the extent permissible, such Party consults with the other Parties in advance and, to the extent permitted by any such Governmental Authority, gives the other Party the opportunity to attend and participate thereat, in each case to the maximum extent reasonably practicable.  Subject to restrictions under any Law, each of Buyer, on the one hand, and the Sellers, on the other hand, shall furnish the other with copies of all correspondence, filings and communications (and memoranda setting forth the substance thereof) between it and its Affiliates and their respective Representatives on the one hand, and the Governmental Authority or members of its staff on the other hand, with respect to this Agreement, the transactions contemplated hereby (excluding documents and communications which are subject to preexisting confidentiality agreements or to the attorney-client privilege or work product doctrine or which refer to valuation of the Acquired Interests) or any such filing, notification or request for approval.  Each Party shall also furnish the other Party with such necessary information and assistance as such other Party and its Affiliates may reasonably request in connection with their preparation of necessary filings, registration or submissions of information to the Governmental Authority in connection with this Agreement, the transactions contemplated hereby and any such filing, notification or request for approval.  Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall require Buyer or the Sellers, or any of their respective Affiliates to (and none of any Seller or any of its Affiliates shall, without the prior written consent of Buyer), in performing their respective obligations under this <u>Section 6.5</u>, (i)

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

enter into any settlement, undertaking, consent decree, stipulation or agreement with any Governmental Authority in connection with the transactions contemplated hereby, (ii) divest or otherwise hold separate (including by establishing a trust or otherwise), or take any other action (or otherwise agree to do any of the foregoing) with respect to the Acquired Interests or any assets or business of Buyer or any of its Affiliates or (iii) defend any Claim relating to the transactions contemplated by this Agreement or any Ancillary Document, except, in the case of each of <u>clauses (i)</u> through <u>(iii)</u>, actions expressly contemplated to be taken by the Sellers in accordance with the Plan.

(d)     Notwithstanding anything to the contrary contained in this Agreement, Buyer shall (or shall through its Representatives), on behalf of the Parties, control and lead all communications and strategy relating to the Antitrust Laws (*provided* that the Sellers are not constrained from complying with applicable Law), *provided*, further, that the Parties shall consult and cooperate with one another, and consider in good faith the views of one another, regarding the form and content of any analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of either Party in connection with proceedings under or relating to any Antitrust Law prior to their submission.

6.6     <u>Bankruptcy Court Matters</u>.

(a)     <u>Qualified Bids</u>.  Subject to the terms of the Disclosure Statement Order, if one or more Qualified Bid(s) (as such term is defined in the Disclosure Statement Order) is received by the Sellers on or before the Bid Deadline (as such term is defined in the Disclosure Statement Order), no later than three (3) Business Days after the Bid Deadline (as such term is defined in the Disclosure Statement Order), the Sellers shall file with the Bankruptcy Court a notice of receipt of such Qualified Bid(s) (as such term is defined in the Disclosure Statement Order) and the Sellers' proposed procedures for selecting the highest or otherwise best bid, including, but not limited to, any procedures for submitting revised bids and/or holding an auction to the extent the Sellers determine holding an auction will maximize value to the Sellers' estate.

(b)     <u>Confirmation Order</u>.  The Sellers and Buyer shall use commercially reasonable efforts to obtain entry by the Bankruptcy Court of a Confirmation Order by no later than the Confirmation Outside Date.  The Confirmation Order shall be in form and substance acceptable to the Sellers and Buyer.  The Sellers acknowledge and agree, and the Confirmation Order shall provide that, on the Closing Date and concurrently with the Closing, all then existing or thereafter arising Liabilities and Encumbrances of, against or created by the Sellers or their bankruptcy estates, shall be fully released from and with respect to the Acquired Interests, which shall be transferred to Buyer free and clear of all Encumbrances (other than Permitted Encumbrances (except for the Fieldwood U.A. Interests and the JV Interests, which shall not have any Permitted Encumbrances)) and Retained Liabilities and Buyer shall at Closing be required to assume the Assumed Liabilities as set forth hereunder.  The Sellers and Buyer covenant and agree that if the Confirmation Order is entered, they will pursue the transactions contemplated by the Confirmation Order and in this Agreement.  The Sellers shall use commercially reasonable efforts to cause the Confirmation Order to provide either that (a) the Sellers have complied with the requirements of any applicable Law relating to bulk sales and transfer or (b) compliance with applicable Law relating to bulk sales and transfers is not necessary or appropriate under the

46

circumstances.  Buyer agrees that it will take commercially reasonable efforts to take such actions as are reasonably requested by the Sellers to assist in obtaining entry of the Confirmation Order.

(c)  <u>Reasonable Efforts</u>.  The Sellers shall use commercially reasonable efforts to (i) obtain entry of the Disclosure Statement Order, (ii) promptly commence solicitation on the Plan upon entry of the Disclosure Statement Order, and (iii) (A) facilitate the solicitation, confirmation and consummation of the Plan and the transactions contemplated hereby, (B) obtain entry of the Confirmation Order and (C) consummate the Plan.

(d)  <u>Bankruptcy Filings</u>.

(i)  During the Interim Period, the Sellers shall deliver to Buyer copies of all pleadings, motions, notices, statements, schedules, applications, reports and other papers that relate, in whole or in part, to this Agreement and the transactions contemplated hereby at least two (2) Business Days prior to the date when the Sellers intend to file any such pleading or other document (*provided,* that if delivery of such motions, orders or materials (other than the Plan, the disclosure statement, a disclosure statement order, the Confirmation Order or adequate protection order) at least two (2) Business Days in advance is not reasonably practicable, such motion, order or material shall be delivered as soon as reasonably practicable prior to filing) for Buyer's prior review and comment, and the Sellers shall consult in good faith with Buyer regarding the form and substance of such filings to the extent they are related to the Acquired Interests, any Assumed Liabilities or the transactions contemplated hereby, including any of Buyer's rights or obligations hereunder.  The Parties shall use commercially reasonable efforts to consult and cooperate regarding (i) any such pleadings, motions, notices, statements, schedules, applications, reports or other papers, (ii) any discovery taken in connection with seeking entry of the Confirmation Order (including any depositions) and (iii) any hearings relating to the Confirmation Order, including the submission of any evidence, including witness testimony, in connection with such hearing.  The Sellers agree to diligently prosecute the entry of the Confirmation Order as provided herein.  During the Interim Period (subject to Section 6.4), the Sellers shall not take any action that is intended to (or is reasonably likely to), or fail to take any action the intent (or reasonably likely result) of which failure to act is to, result in the reversal, voiding, modification or staying of the Confirmation Order, or this Agreement.

(ii)  In the event the entry of the Disclosure Statement Order, the Confirmation Order, or any other order reasonably necessary in connection with the transactions contemplated by this Agreement is appealed, the Sellers shall use commercially reasonable efforts to defend such appeal.

(e)  <u>Cooperation with Plan Administrator</u>. In accordance with the terms of the Plan, the Parties agree that they shall use commercially reasonable efforts to cooperate with the Plan Administrator (as defined in the Plan) and each other, in relation to the Parties' respective activities and obligations under the Plan, including by providing reasonable, good-faith access to personnel, systems, and books and records and their respective personnel and consulting with each other to avoid duplication of effort.

6.7    <u>Assumption and Assignment of Contracts</u>.

(a)    No later than twenty eight (28) days prior to the Designation Deadline, the Sellers shall provide to Buyer a list of all 365 Contracts and the Sellers' good faith estimate of Cure Costs associated with each such 365 Contract (the "***365 Schedule***").  The Sellers may amend or supplement the 365 Schedule from time to time to add or remove any 365 Contract inadvertently included or excluded from such 365 Schedule or to amend, based on the Sellers' good faith calculation of the Cure Costs, any proposed Cure Costs set forth in such 365 Schedule and shall provide Buyer written notice thereof.  No later than fourteen (14) days prior to the Designation Deadline, Buyer shall designate in writing which 365 Contracts from the 365 Schedule Buyer desires to be assumed by the Sellers and assigned to Buyer (collectively, and as further modified by Buyer pursuant to the provisions of this <u>Section 6.7</u>, the "***Assigned 365 Contracts***" and Buyer's designated list of Assigned 365 Contracts, the "***Assigned 365 Contracts List***").

(b)    Promptly following the receipt of Buyer's initial designation of the Assigned 365 Contracts pursuant to <u>Section 6.7(a)</u> (to the extent not previously filed) and by no later than the Designation Deadline, the Sellers shall file the Assigned 365 Contracts List with the Bankruptcy Court and deliver a written notice of the proposed assignments of the Assigned 365 Contracts and the proposed Cure Costs for each Assigned 365 Contract (consistent with the Sellers' good faith estimates set forth on the 365 Schedule) to all non-debtor parties of the Assigned 365 Contracts, which notice shall notify each non-debtor party to such Assigned 365 Contract of (i) the proposed Cure Cost for such Assigned 365 Contract and (ii) an objection deadline for such non-debtor party to object to the proposed assumption and assignment and proposed Cure Cost.

(c)    Notwithstanding anything herein to the contrary, Buyer may, from time to time, in its sole discretion revise the Assigned 365 Contracts List at any time prior to 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the Confirmation Hearing (or such other time as agreed in writing between the Sellers and the applicable counterparty to a 365 Contract) (the "***Designation Deadline***") by (x) subtracting therefrom any Assigned 365 Contract, and any 365 Contract so removed shall no longer be considered Assigned 365 Contracts for purposes of this Agreement or (y) adding thereto any 365 Contract, and any 365 Contract so added will be an Assigned 365 Contract for the purposes of this Agreement; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the rescheduled or continued Confirmation Hearing, and this provision shall apply in the case of any and all subsequent adjournments and continuances of the Confirmation Hearing.  The Sellers shall promptly file on the docket in the Bankruptcy Cases and serve on the affected non-Debtor counterparty(ies) a notice of any actions taken by Buyer pursuant to the preceding sentence pursuant to and in accordance with the Disclosure Statement Order.  Subject to the preceding sentences, all 365 Contracts of the Sellers that are listed on the 365 Schedule and which Buyer does not designate in writing for assumption and assignment shall not be considered Assigned 365 Contracts or Acquired Interests and shall automatically be deemed "***Excluded Contracts***;" *provided, however,* that Buyer may not exclude from the Assigned 365 Contracts any 365 Contract that is set forth on **<u>Schedule 6.7(g)</u>**.

(d)     Each of each Seller and Buyer, as applicable, shall use commercially reasonable efforts to assign or cause to be assigned, the Assigned 365 Contracts to Buyer, including, if necessary, taking all actions required by the Bankruptcy Court to obtain a Final Order containing a finding that the proposed assumption and assignment of the Assigned 365 Contract to Buyer satisfies all applicable requirements of Section 365 of the Bankruptcy Code.  If the Sellers are successful in effecting such assumption as of or before the Closing, such Lease, Easement or Contract shall become an Assigned 365 Contract and transferred and conveyed to Buyer.

(e)     On the Closing Date, immediately following payment by Buyer of the Cash Portion, the Sellers shall pay all undisputed Cure Costs with respect to the Assigned 365 Contracts.

(f)     Buyer shall provide adequate assurance of future performance of all of the Assigned 365 Contracts so that all Assigned 365 Contracts can be assumed by the Sellers and assigned to Buyer at the Closing in accordance with the provisions of Section 365 of the Bankruptcy Code and this Agreement, and Buyer acknowledges that such cooperation may require Buyer to provide reasonably necessary information regarding Buyer and its Subsidiaries, as well as a commitment of performance by Buyer and/or its Subsidiaries with respect to the Assigned 365 Contracts from and after the Closing to demonstrate adequate assurance of the performance of the Assigned 365 Contracts, and the Sellers' obligation to assume and assign such Assigned 365 Contracts is subject to Buyer providing such adequate assurance of future performance.

(g)     Notwithstanding anything in this Agreement to the contrary, including Section 6.7(c) above, the Contracts set forth on **Schedule 6.7(g)** shall at all times constitute Assigned 365 Contracts and shall be assigned to Buyer at the Closing.[9]

(h)     Notwithstanding anything to the contrary in this Agreement, no Seller (i) shall agree to, settle or compromise any dispute with respect to, the amount of Cure Costs in respect of any Assigned 365 Contract without the prior written approval of Buyer in its sole discretion or (ii) shall, without the prior written consent of Buyer in its sole discretion, reject or move to reject (A) any 365 Contracts prior to the Designation Deadline or (B) any Assigned 365 Contract (whether before or after the Designation Deadline).

(i)     Notwithstanding anything in this Section 6.7 to the contrary, Buyer may not, except with the prior written consent of the Sellers, designate any 365 Contract as an Assigned 365 Contract to the extent that such 365 Contract is identified on Exhibit I-F of the Plan of Merger (except to the extent constituting Applicable Shared Asset Interests).

6.8     Employee Matters.

(a)     Offers and Terms of Employment.  All Seller Employees (including those on leave of absence or disability) identified by the Sellers on the updated list provided pursuant to Section 6.1(a)(vii) shall be offered employment by Buyer or its Affiliate no later than five (5) days prior to the Closing Date, in each case, such employment to be effective as of the Closing Date;

---

[9] Note to Draft: Schedule 6.7(g) to include the McCarroll agreements and, subject to Buyer's review of Schedule 6.7(g), any agreements related to the Co-Owned Assets that are required to be conveyed in connection with the assignment of the Co-Owned Assets.

*provided*, *however*, that neither Buyer nor any of its Affiliates shall be required to make an offer of employment to any Section 6.8 Employee unless Buyer and Seller mutually agree that Buyer shall offer employment to such Section 6.8 Employee.  Each offer of employment made by Buyer or its Affiliates to a Seller Employee, as applicable, shall be effective as of the Closing Date and shall contain terms and conditions of employment substantially comparable in the aggregate to the terms and conditions of employment provided by the Sellers immediately prior to the Closing Date with respect to such Seller Employee, *provided* each such offer shall include (i) at least the same level of base salary or wage rate (based on pre-COVID-19 salary or wage rate without regard to any reduction), (ii) for substantially all such Seller Employees, at least the same annual cash incentive compensation opportunity and (iii) substantially similar employee benefits.  For purposes of this Agreement, any individual who becomes employed by Buyer in accordance with this Section 6.8 is referred to as a "***Transferred Employee***."

(b)     Liabilities.  Effective as of the Closing, (i) Buyer shall, or shall cause an Affiliate of Buyer to, assume or retain, as the case may be, any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the employment or services, or termination of employment services, of any Transferred Employee, accrued and unpaid bonuses, accrued and unused vacation, sick days and paid time off and any workers' compensation claims against any Seller or its Affiliates, irrespective of when such claims are made (and Buyer shall or shall cause an Affiliate of Buyer to pay the applicable Transferred Employees the unpaid portion of any Transferred Employee's accrued annual bonus for the calendar year in which the Closing occurs at the time such bonuses are paid to such Transferred Employees in the ordinary course consistent with past practice) and (ii) the Sellers shall, or shall cause their Affiliates to assign to Buyer, and Buyer shall, or shall cause an Affiliate of Buyer, to assume, (A) sponsorship of the Fieldwood Energy Health & Welfare Benefit Plan, including any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the operation of the Fieldwood Energy Health & Welfare Benefit Plan, and Buyer shall be, or shall cause an Affiliate to be, responsible for all claims whenever incurred under the Fieldwood Energy Health & Welfare Benefit Plan, including any claims incurred prior to the Closing but not yet reported and any claims reported prior to Closing but which have not yet been processed, (B) sponsorship of the Fieldwood Energy LLC 401(k) Plan, including any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the operation of the Fieldwood Energy LLC 401(k) Plan, and (C) each other Assumed Employee Plan, including any and all Liabilities (contingent or otherwise) relating to, arising out of, or resulting from the operation of each Assumed Employee Plan; *provided* that except as otherwise set forth in Section 6.8(c), in no event shall Buyer or any of its Affiliates assume any Liabilities relating to bonuses, severance or workers' compensation claims for any current or former employee of any Seller or any of its Affiliates other than a Transferred Employee and all such Liabilities shall be Retained Liabilities.

(c)     Severance.  With respect to any Seller Employee who Sellers and Buyer mutually agree shall not be offered employment by Buyer and who shall not become a Transferred Employee, Sellers shall provide severance payments (subject to executing a general employment release in favor of Sellers and Buyer) in such amount as mutually determined by Sellers and Buyer, which amount shall in no event exceed two (2) months of base salary ("***Employee Severance***").  Employee Severance shall be paid by Sellers to each such Seller Employee in the ordinary course through the Closing.  Buyer shall, and shall cause its Affiliates to, be liable for and provide to each

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

such Seller Employee any portion of the unpaid Employee Severance that otherwise becomes due and payable following the Closing.

(d)     Credit for Service.  Buyer shall, and shall cause its Affiliates to, credit Transferred Employees for service earned on and prior to the Closing Date with the Sellers and their Affiliates or predecessors to the extent that such service would be credited pursuant to the applicable Employee Plan, in addition to service earned with Buyer and its Affiliates on or after the Closing Date to the extent that service is relevant for purposes of eligibility, vesting, paid-leave entitlement or the calculation of benefits under any employee benefit plan, program or arrangement of Buyer or any of its Affiliates for the benefit of the Transferred Employees on or after the Closing Date, but not for the purposes of benefit accrual under any defined benefit pension plan; *provided*, *however*, that nothing herein shall result in a duplication of benefits with respect to the Transferred Employees.

(e)     Pre-existing Conditions; Coordination.  Buyer shall, and shall cause its Affiliates to, waive any pre-existing condition or actively at work limitations, evidence of insurability and waiting periods for the Transferred Employees and their eligible spouses and dependents under any employee benefit plan, program or arrangement of Buyer or any of its Affiliates for the benefit of the Transferred Employees on or after the Closing Date.  Buyer shall, and shall cause its Affiliates to credit for purposes of determining and satisfying annual deductibles, co-insurance, co-pays, out-of-pocket limits and other applicable limits under the comparable health plans and arrangements offered to Transferred Employees, deductibles, co-insurance, co-pays and out-of-pocket expenses paid by Transferred Employees and their respective spouses and dependents under the Sellers or any of their respective Affiliates' health plans in the calendar year in which the Closing Date occurs.

(f)     Accrued Vacation.  Buyer or its Affiliates shall provide each Transferred Employee with credit for the same number of vacation, sick days and personal days such Transferred Employee has accrued but not used in the calendar year in which the Closing Date occurs; *provided*, that to the extent required by applicable Law, such amount shall be paid by Buyer or its Affiliates to the applicable Transferred Employee in cash.  In the event that a Transferred Employee is unable to use such carried over vacation and sick days within the calendar year in which the Closing Date occurs, Buyer or its Affiliates shall allow such Transferred Employee to carry over such vacation and sick days to be used in the subsequent calendar year solely to the extent that such Transferred Employee would have had the same right to carry over such vacation and sick days pursuant to the policies of the Seller or its Subsidiaries as of the date hereof.

(g)     COBRA.  On the Closing Date, the Sellers and their Affiliates shall cease to provide health and welfare coverage to each Seller Employee and his or her covered dependents and beneficiaries, and Buyer or its Affiliate shall commence providing such coverage to Transferred Employees and his or her covered dependents and beneficiaries.  Buyer and its "buying group" (as defined in Treasury Regulation Section 54.4980B-9, Q&A-2(c)) shall be solely responsible for providing continuation coverage under COBRA to those individuals who are or become M&A qualified beneficiaries (as defined in Treasury Regulation Section 54.490B-9, Q&A-4(a)) with respect to the transactions contemplated by this Agreement. Buyer and its Affiliates shall provide coverage required by COBRA to Transferred Employees and their eligible

51

dependents or beneficiaries under group health plans maintained by Buyer or an Affiliate of Buyer with respect to qualifying events occurring on and after the Closing Date.

(h)     Tax Reporting.  Buyer shall adopt the "*alternate procedure*" for preparing and filing IRS Forms W-2 (Wage and Tax Statements), as described in Revenue Procedure 2004-53.  Under this procedure, Buyer as the successor employer shall provide Forms W-2 to Transferred Employees reflecting all wages paid and Taxes withheld with respect to such Transferred Employees for the calendar year in which the Closing Date occurs.  The Sellers as the predecessor employer shall have no employment tax reporting responsibilities for the Transferred Employees following the Closing Date.  Buyer shall also adopt the "*alternate procedure*" of Revenue Procedure 2004-53 for purposes of IRS Forms W-4 (Employee's Withholding Allowance Certificate) and W-5 (Earned Income Credit Advance Payment Certificate).

(i)     No Third Party Beneficiaries.  Without limiting the generality of Section 12.5, no provision of this Section 6.8 shall (i) be treated as an amendment of, or undertaking to amend, any benefit plan, (ii) obligate Buyer or the Sellers to retain the employment of any particular employee or (iii) confer any rights or benefits on any Third Person beneficiary or create any Third Person beneficiary or other rights in any current or former employee, independent contractor or other service provider (including any beneficiary or dependent thereof) of any Seller in respect of continued employment (or resumed employment) with either Buyer or any of, its Affiliates and no provision of this Section 6.8 shall create any rights in any such Persons in respect of any benefits that may be provided, directly or indirectly, under any Employee Plan or any plan or arrangement that may be established by Buyer or any of its Affiliates, including as to the level or duration of compensation or benefits.  No provision of this Agreement shall constitute a limitation on rights to amend, modify or terminate after the Closing Date any such plans or arrangements of the Sellers, Buyer or any of their respective Affiliates.

6.9     [Reserved].

6.10    Certain Agreements.  The Sellers will obtain assignment of, or replacement agreements with respect to, the Specified Section 6.10 Contract(s) prior to or at the Closing (with any replacement agreement being on substantially the same terms as the Specified Section 6.10 Contract(s) being replaced); *provided* that Buyer understands and agrees that this Section 6.10 will not require Sellers to enter into any settlement, undertaking or agreement, undertake any obligation, or pay any consideration, in each case, with or to any third party, other than, to the extent required to be paid prior to the Closing, if so requested by Buyer, Sellers paying in cash any such consideration requested by such third party.

6.11    Transfer Orders; Letters in Lieu.  Prior to the Closing, the Sellers shall deliver to Buyer completed transfer orders or letters in lieu thereof, directing all purchasers of production to make payment to Buyer of proceeds attributable to Hydrocarbons constituting Acquired Interests effective as of the Closing.

6.12    Taxes.

(a)     To the extent not exempt under the Confirmation Order or Section 1146 of the Bankruptcy Code, Buyer shall assume responsibility for, and shall bear and pay, all Transfer

Taxes (if any) incurred or imposed with respect to the conveyance of the Acquired Interests to Buyer; *provided* that if any such Transfer Taxes are due prior to the Closing the Sellers shall assume responsibility for, and shall bear and pay such Transfer Taxes.  The Party required by applicable Law to file Tax Returns with respect to Transfer Taxes shall prepare and file such Tax Returns or other documents and the non-preparing Party shall cooperate therewith.

(b)     The Sellers shall timely file or cause to be timely filed when due all Tax Returns that are required to be filed by or with respect to Fieldwood U.A. on or prior to the Closing Date and all Tax Returns that are required to be filed by the Sellers under applicable Law with respect to the Acquired Interests (including any Tax Returns reporting any Property-Related Taxes and Production Taxes) and, in each case, all such Tax Returns shall be prepared and filed in a manner consistent with past practice.  In each case, the Sellers shall remit or cause to be remitted any Taxes shown as due on such Tax Returns.  Buyer shall timely file or cause to be timely filed when due (taking into account any extensions properly obtained) all other Tax Returns that are required to be filed by or with respect to Fieldwood U.A. and the Acquired Interests after the Closing Date and shall pay any Taxes shown as due on such Tax Returns.  The Sellers shall reimburse Buyer for (A) Retained Taxes which are remitted in respect of any Tax Return to be filed by Buyer pursuant to this Section 6.12 or (B) Retained Taxes in respect of any Tax Return to be filed by the Sellers under this Section 6.12(b) which have not been paid by the Sellers and for which a taxing authority seeks payment from Buyer, in each case, up to the amount reserved for such Retained Taxes in determining the Effective Date Cash Obligations Amount, no later than ten (10) days after Buyer's written request therefor.

(c)     For purposes of this Agreement, in the case of a Straddle Period, (x) all Property-Related Taxes and any exemptions, allowances and deductions with respect to such Taxes shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period based on the number of days of such Straddle Period included in the Pre-Closing Tax Period and the number of days of such Straddle Period included in the Post-Closing Tax Period, (y) all Production Taxes shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period based upon the period during which the applicable production occurred, and (z) all other Taxes shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period as if such taxable period ended as of the end of the day on the final day of the Pre-Closing Tax Period.

(d)     Property-Related Taxes and Production Taxes shall be timely paid, and all applicable filings, reports and returns shall be filed as provided by applicable Law.

(e)     All Tax Sharing Agreements between the Sellers and any Affiliates of the Sellers, on the one hand, and Fieldwood U.A., Fieldwood Mexico or any Subsidiary thereof, on the other hand, will terminate as to Fieldwood U.A., Fieldwood Mexico and any Subsidiary thereof prior to the Closing Date and Fieldwood U.A., Fieldwood Mexico and such Subsidiary will not have any liability thereunder on or after the Closing Date.

(f)     Each Seller, on the one hand, and Buyer, on the other hand, will provide each other with such cooperation and information as either of them reasonably may request of the other in filing any Tax Return, claiming any refund of Taxes, determining a Liability for Taxes or a right to a refund of Taxes, or conducting any audit or other proceeding in respect of Taxes.  Such cooperation and information shall include providing copies of relevant Tax Returns or portions

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

thereof, together with accompanying schedules, related work papers and documents relating to rulings and other determinations by Governmental Authorities.  Any information obtained under this <u>Section 6.12</u> shall be kept confidential except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refund or in conducting any audit or other proceeding.

6.13  <u>Commercially Reasonable Efforts</u>.  Subject to the terms and conditions of this Agreement, and subject to the Bankruptcy Code and any orders of the Bankruptcy Court, and without limiting any other provision of this Agreement (including <u>Section 6.5(c)</u>), Buyer and the Sellers each agree to use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable to cause the conditions precedent to Closing set forth in <u>Article VII</u> to be satisfied and to consummate the transactions; *provided* that the Parties understand and agree that the commercially reasonable efforts of any Party shall not be deemed to include, except as expressly set forth in this Agreement, entering into any settlement, undertaking, consent decree, stipulation or agreement with any Governmental Authority in connection with the transactions contemplated hereby; *provided, further* that this <u>Section 6.13</u> shall not (a) limit or affect the obligation of any Party to perform any of its other obligations and covenants expressly set forth in this Agreement or (b) require any Party to incur any obligations or pay any fees or amounts to third parties not otherwise required under this Agreement or the Plan.

6.14  <u>Insurance Policies</u>.  Effective at or prior to Closing, the Sellers shall cause Buyer to be named as an 'additional insured' with respect to each insurance policy held by the Sellers which provides coverage with respect to any of the Acquired Interests (excluding, for the avoidance of doubt, any director and officer insurance policies).  The Sellers shall maintain such insurance policies in full force and effect until the expiration of their terms, and shall cooperate in good faith with Buyer in connection with any claim made by Buyer under any such policy.  The Sellers shall not have any obligation to renew any such insurance policies following the expiration of their terms, and from and after such expiration, Buyer will be solely responsible for maintaining such insurance as Buyer deems reasonable with respect to the Acquired Interests.

6.15  <u>Novation of Hedges</u>.  Buyer shall use commercially reasonable efforts to cause the Hedges to be novated to Buyer at Closing, and the Sellers shall reasonably cooperate with Buyer in connection with such novation; *provided* that (a) to the extent that the total volume of production hedged as of the Closing with respect to the Hedges exceeds 45,000 Boepd, Buyer may elect to (but is not required pursuant to this <u>Section 6.15</u> to) use commercially reasonable efforts to novate such excess (or any portion thereof) to Buyer at Closing; (b) Buyer shall be solely responsible for any credit support or other requirements in connection with such novation; and (c) the Sellers shall not be required to pay any consideration or undertake any obligation in connection with such novation.

6.16  <u>Qualification</u>.  Prior to the Closing, Sellers (and their respective officers and employees) will provide commercially reasonable assistance to Buyer with respect to Buyer obtaining such qualifications as are necessary to own and, where applicable, to assume operatorship of, the Acquired Interests in all jurisdictions where the Acquired Interests are located.

6.17  <u>Settlements with Governmental Authorities</u>.  From the date hereof until the Closing, none of any Seller nor any of its Affiliates shall make or enter into any material non-

ordinary course stipulation, settlement or other agreement with any Governmental Authority (each, a "***Governmental Settlement Agreement***") that is not in form and substance acceptable to Buyer. The Sellers shall pay all amounts due and payable under any Governmental Settlement Agreement executed by any Seller or any of its Affiliates prior to the Closing.

6.18    Operator Forms.  By no later than ten (10) days after the Execution Date, the Sellers shall have sent all applicable Third Persons all designation of operator forms (Form BOEM – 1123) designating Buyer as operator (along with all corresponding OSFR forms) with respect to each Lease or portion thereof as to which any Seller is the designated operator as of the date hereof, and Sellers shall use reasonable best efforts to obtain such executed forms from such Third Persons prior to the Closing.

6.19    [Reserved].

6.20    Bonds and Insurance.  To the extent required by applicable state and federal Governmental Authorities (and subject to compliance by the Sellers with their respective covenants under this Agreement) in connection with the transactions contemplated by this Agreement, as of the Closing or promptly thereafter (and in any case within ten (10) Business Days of the Closing) Buyer and/or Buyer 2, as applicable, will have the lease bonds, area-wide bonds and surety bonds or insurance policies set forth on **Schedule 6.20**, in each case to the extent required by and in accordance with the requirements of such Governmental Authorities.

6.21    [New Equity Interests.  Buyer shall cause (a) the Credit Bid and Release New Equity Interests to be received by the Persons entitled to receipt of such interests pursuant to the Plan on the Effective Date in accordance with the Plan, and (b) the Equity Rights Offering New Equity Interests (if and when authorized pursuant to an order of the Bankruptcy Court) to be received on the Effective Date by the Persons entitled to receipt of such interests in accordance with the Plan, the Subscription Rights, the FLTL ERO Backstop Agreement and the SLTL ERO Backstop Agreement.][10]

6.22    Employment Agreements.  Buyer shall, in good faith, negotiate the terms of an employment agreement (each, an "***Employment Agreement***") with each of the Seller Employees identified on Schedule 6.22 from and after the date hereof.  If terms of an Employment Agreement are mutually agreed between Buyer and a Seller Employee prior to Closing, then at (or immediately following) the Closing Buyer shall enter into an Employment Agreement with each such Seller Employee.

**ARTICLE VII**
**CONDITIONS PRECEDENT TO CLOSING**

7.1    Conditions Precedent of the Parties.  The obligations of the Sellers, Buyer and Buyer 2 to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of each of the following conditions:

---

[10] Note to Draft: Subject to review of Equity Rights Offerings procedures/ERO Backstop Agreements/obligations of Buyer to issue equity upon exercise of Subscription Rights.

(a)        no applicable Law shall prohibit the transactions contemplated hereby or the consummation of the Closing and no suit, action or proceeding shall be pending or threatened before any court or arbitration tribunal seeking to enjoin, restrain, prohibit or declare illegal the transactions contemplated by this Agreement;

(b)        no injunction, order, decree or judgment that restrains, enjoins or prohibits the transactions contemplated in this Agreement shall be in effect;

(c)        any applicable waiting period under the HSR Act relating to the transactions contemplated hereby shall have expired or been terminated;

(d)        the Bankruptcy Court shall have entered the Disclosure Statement Order and the Confirmation Order and each such order shall be a Final Order;

(e)        each of the conditions precedent to the Effective Date shall have been satisfied (or shall become effective concurrent with the Closing Date hereunder) or waived in accordance therewith; and

(f)        (i) the Credit Bid and Release New Equity Interests shall have been, or will be on the Effective Date, received by the holders of Allowed FLTL Secured Claims (as defined in the Plan) in accordance with the Plan and (ii) the Equity Rights Offering New Equity Interests (if and when authorized pursuant to an order of the Bankruptcy Court) shall have been, or will be on the Effective Date, received by the Persons entitled to receipt of such interests in accordance with the Plan, the Subscription Rights, the FLTL ERO Backstop Agreement and the SLTL ERO Backstop Agreement.

7.2    <u>Sellers' Conditions Precedent</u>.  The obligation of the Sellers to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of each of the following conditions:

(a)        the representations and warranties of Buyer and Buyer 2 set forth in this Agreement shall be true and correct, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct as of such earlier date), except for those failures to be true and correct that, individually or in the aggregate, would not adversely affect in any material respect the ability of Buyer and Buyer 2 to consummate the transactions contemplated by this Agreement;

(b)        Each of Buyer and Buyer 2 shall have performed and fulfilled in all material respects each covenant, agreement and condition required by this Agreement to be performed or fulfilled by Buyer or Buyer 2, as applicable, at or before the Closing;

(c)        the Effective Date Cash Obligations Amount shall have been agreed in amounts acceptable to Sellers acting in good faith; and

(d)        Each of Buyer and Buyer 2 shall have executed and delivered all documents required to be executed and delivered by Buyer or Buyer 2, as applicable, as set forth in <u>Section 9.2</u>.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

The foregoing conditions of this Section 7.2 are for the sole benefit of the Sellers and may be waived by the Sellers, in whole or in part, at any time and from time to time in the sole discretion of the Sellers.  The failure by the Sellers at any time to exercise any of their rights hereunder shall not be deemed a waiver of any such right and each such right shall be deemed an ongoing right which may be asserted at any time and from time to time.

7.3     Buyers' Conditions Precedent.  The obligation of Buyer and Buyer 2 to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of each of the following conditions:

(a)     (i) each of the Fundamental Representations of each Seller shall be true and correct in all respects, except for *de minimis* inaccuracies, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct as of such earlier date), (ii) the representations and warranties of each Seller set forth in each of Section 4.22(a), Section 4.32 and Section 4.33 shall (disregarding any qualifications or exceptions set forth therein relating to Material Adverse Effect or "materiality" or any similar qualification or standard) be true and correct in all material respects, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct in all material respects as of such earlier date), and (iii) all other representations and warranties of each Seller set forth in Article IV of this Agreement shall (disregarding any qualifications or exceptions set forth therein relating to Material Adverse Effect or "materiality" or any similar qualification or standard) be true and correct, as of the date hereof and as of the Closing Date, as if made at and as of such date (other than any representation and warranty expressly made as of a specific earlier date, which shall have been true and correct as of such earlier date) except in the case of this clause (iii), for those failures to be true and correct that would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

(b)     each Seller shall have performed and fulfilled in all material respects each covenant, agreement and condition required by this Agreement to be performed or fulfilled by such Seller at or before the Closing;

(c)     each Seller shall have executed and delivered all documents required to be executed and delivered by such Seller as set forth in Section 9.2;

(d)     no Default or Event of Default (each as defined in the DIP Credit Agreement) under the DIP Credit Agreement shall have occurred and be continuing;

(e)     the Restructuring Support Agreement shall not have been terminated with respect to any party thereto;

(f)     the conditions precedent under each of the Backstop Commitment Letters shall have been satisfied or waived;

(g)     the Plan confirmed by the Confirmation Order shall be in substantially the same form and substance as the plan filed by the Debtors on [•], at Docket No. [•] in the Bankruptcy

Court, as may be amended, modified or supplemented from time to time in accordance with the Restructuring Support Agreement or as otherwise consented to by or on behalf of Buyer;

(h)     at least five (5) Business Days prior to the Closing Date, the Bankruptcy Court shall have approved and authorized the assumption and assignment of each material Assigned 365 Contract pursuant to Section 365 of the Bankruptcy Code through entry of an order that shall have become a Final Order and all such material Assigned 365 Contracts shall have been duly assigned to Buyer at or prior to the Closing;

(i)     all Assigned 365 Contracts that require novation and are set forth on **Schedule 7.3(i)** will have been novated to Buyer;

(j)     the estimated amount of Allowed Specified Administrative Expense Claims at any time are projected by the Sellers not to exceed the Toggle Amount (as defined in the Plan), or, upon the occurrence of the Toggle Date, such other amount as determined by the Majority Backstop Parties (as defined in the Second Lien Backstop Commitment Letter) in their sole and absolute discretion;

(k)     the aggregate Allocated Values of all Acquired Interests treated as Delayed Assets pursuant to Section 2.3(b), Section 2.4 and Section 2.5, together with the aggregate Allocated Values of all Acquired Interests with respect to which a bona fide Preferential Right is validly exercised prior to the Closing, shall not be greater than $100,000,000;

(l)     all Governmental Approvals set forth on **Schedule 7.3(l)** shall have been obtained and delivered to Buyer and such Governmental Approvals shall be in full force and effect;

(m)     since the Execution Date, no Material Adverse Effect (or any result, event, occurrence, change, circumstance, consequence or development that, individually or in the aggregate, would reasonably be expected to result in a Material Adverse Effect) shall have occurred;

(n)     any agreements between Buyer and the Plan Administrator shall be reasonably acceptable to Buyer;

(o)     Buyer shall have obtained all qualifications required to assume operatorship of the Leases operated by a Seller as of immediately prior to the Closing in all jurisdictions where such Leases are located, all of which qualifications shall be in full force and effect;

(p)     the Sellers shall have delivered to Buyer a fully executed copy of the Fourth Amendment to Office Sublease;

(q)     the Effective Date Cash Obligations Amount shall have been agreed in amounts acceptable to Buyer acting in good faith; and

(r)     the Sellers shall have delivered to Buyer a duly executed letter agreement, or the Bankruptcy Court shall have entered an order which shall have become a Final Order, in each case in a form reasonably acceptable to Buyer, providing that Buyer is not a "successor" or "assign" of Sellers under the NPA.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

The foregoing conditions of this <u>Section 7.3</u> are for the sole benefit of Buyer and Buyer 2 and may be waived by Buyer or Buyer 2, as applicable, in whole or in part, at any time and from time to time in the sole discretion of Buyer and Buyer 2.  The failure by Buyer or Buyer 2 at any time to exercise any of its rights hereunder shall not be deemed a waiver of any such right and each such right shall be deemed an ongoing right which may be asserted at any time and from time to time.

## ARTICLE VIII
## RIGHT OF TERMINATION AND ABANDONMENT

8.1     <u>Termination</u>.  This Agreement may be terminated by written notice at any time before the Closing:

(a)     by mutual written consent of the Sellers and Buyer;

(b)     by the Sellers, on one hand, or by Buyer, on the other hand:

(i)     if the Closing shall not have been consummated on or before July 31, 2021 (as such date may be extended by mutual written agreement of the Parties, the "***End Date***"); *provided* that the right to terminate this Agreement pursuant to this <u>Section 8.1(b)(i)</u> shall not be available to any Party (A) who is then in material breach of any of its material agreements, covenants, representations or warranties contained herein or (B) whose breach of any provision of this Agreement is the proximate cause of the failure of the Closing to be consummated before the End Date;

(ii)     if there shall be any applicable Law that makes consummation of the transactions contemplated by this Agreement illegal or otherwise prohibited or if consummation of such transactions would violate any Final Order of any Governmental Authority having competent jurisdiction;

(iii)     for any reason, Buyer is unable, pursuant to Section 363(k) or Section 1123(a) of the Bankruptcy Code, to credit bid in payment of all or any portion of the Consideration as set forth in <u>Section 2.1</u> (other than the Assumed Liabilities);

(iv)     the Bankruptcy Court shall have entered an order dismissing, or converting into cases under Chapter 7 of the Bankruptcy Code, any of the cases commenced by the Sellers under Chapter 11 of the Bankruptcy Code and comprising part of the Bankruptcy Cases; or

(v)     any of the Sellers shall have entered into any agreement with respect to any Alternative Transaction (consistent with the fiduciary duties of the officers and directors of the Sellers) or if the Bankruptcy Court shall have approved any such Alternative Transaction;

(c)     by Buyer if:

(i)     the Sellers shall have breached any of their representations and warranties, or shall have failed to perform or comply with any of their covenants and

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

agreements contained in this Agreement and such breach or failure to perform or comply (A) would result in the Sellers being unable to satisfy a condition set forth in Section 7.3 and (B) is not cured within ten (10) Business Days after Buyer notifies the Sellers of such breach or failure to perform or comply in writing; *provided*, that Buyer shall not have a right of termination pursuant to this Section 8.1(c)(i) if Buyer is then in material breach of any of its material agreements, covenants, representations or warranties contained herein;

   (ii) any of the Sellers, without the prior consent of Buyer, enter into a definitive agreement with respect to the sale of any material Acquired Interests (excluding sales of Hydrocarbons in the ordinary course of business) or any interest in any of the Leases;

   (iii) the Confirmation Order shall not have been entered by the Confirmation Outside Date;

   (iv) the Restructuring Support Agreement shall have been terminated with respect to any party thereto; *provided*, that the right to terminate this Agreement pursuant to this Section 8.1(c)(iv) shall not be available to Buyer if any Consenting Creditor's breach of any provision of the Restructuring Support Agreement is the proximate cause of the termination of the Restructuring Support Agreement;

   (v) any Event of Default (as defined in the DIP Facility Credit Agreement) under the DIP Facility Credit Agreement shall have occurred and be continuing;

   (vi) the Equity Rights Offerings are not consummated;

   (vii) the Disclosure Statement Order or the Confirmation Order shall have been stayed, vacated, reversed or materially modified or amended by the Bankruptcy Court or another court of competent jurisdiction at any time without the prior written consent of Buyer; or

   (viii) any Seller seeks to have the Bankruptcy Court enter an order dismissing, or converting into cases under Chapter 7 of the Bankruptcy Code, any of the cases commenced by the Sellers under Chapter 11 of the Bankruptcy Code and comprising part of the Bankruptcy Cases, or if a trustee in the Bankruptcy Cases or a responsible officer or an examiner with enlarged powers is appointed (other than a fee examiner) relating to the operation of the Sellers' businesses pursuant to Section 1104 of the Bankruptcy Code, or such an order of dismissal, conversion or appointment is entered; and

  (d) by the Sellers if:

   (i) Buyer or Buyer 2 shall have breached any of its representations and warranties, or shall have failed to perform or comply with any of its covenants and agreements contained in this Agreement and such breach or failure to perform or comply (A) would result in Buyer or Buyer 2, as applicable, being unable to satisfy a condition set forth in Section 7.2 and (B) is not be cured within ten (10) Business Days after the Sellers notify Buyer of such breach or failure to perform or comply in writing; *provided*, that the

<div align="center">60</div>

Sellers shall not have a right of termination pursuant to this Section 8.1(d)(i) if any Seller is then in material breach of any of its material agreements, covenants, representations or warranties contained herein;

(ii)     Any of the Backstop Commitment Letters is terminated and Buyer has not, within thirty (30) days following the termination of such Backstop Commitment Letter, entered into a definitive written agreement with respect to committed financing or other arrangement in an amount at least equal to that provided by such Backstop Commitment Letter (as of the date hereof) and otherwise in form and substance reasonably acceptable to Sellers; or

(iii)     the Equity Rights Offerings are not consummated and Buyer has not, within thirty (30) days following the failure of the Equity Rights Offerings to be consummated, entered into a definitive written agreement with respect to committed financing or other arrangement in an amount at least equal to the amount that would have been provided by the Equity Rights Offerings and otherwise in form and substance reasonably acceptable to Sellers.

Each termination trigger set forth in this Section 8.1, pursuant to which this Agreement may be terminated shall be considered separate and distinct from each other such termination trigger.  If more than one of the termination triggers set forth in this Section 8.1 are applicable, the applicable Party shall have the right to choose the termination trigger pursuant to which this Agreement is to be terminated.  Any Party desiring to terminate this Agreement pursuant to this Section 8.1 shall give written notice of such termination to the other Party.

8.2     Remedies.  In the event of termination of this Agreement by Buyer or the Sellers pursuant to this Article VIII, this Agreement shall become null and void and have no effect and all rights and obligations of the Parties under this Agreement shall terminate without any Liability of any Party to any other Party except the provisions of this Section 8.2, Section 12.1, Section 12.8 and **Annex I** (and, to the extent applicable to the interpretation or enforcement of such provisions, Article XII) shall expressly survive the termination of this Agreement.

8.3     Specific Performance.  The Parties agree that irreparable damage for which monetary damages, even if available, would not be an adequate remedy would occur in the event any provisions of this Agreement were not performed in accordance with the terms hereof (including failing to take such actions as are required hereunder in order to consummate the transactions contemplated hereby) or were otherwise breached and that the Parties shall be entitled to injunctive relief, specific performance and other equitable relief to prevent breaches (or threatened breaches) of this Agreement and to enforce specifically the performance of the provisions hereof.  Any Party seeking an injunction to prevent breaches of this Agreement and to enforce specifically the provisions of this Agreement shall not be required to provide any bond or other security in connection with any such order or injunction.  The rights set forth in this Section 8.3 shall, subject to Section 8.2, be in addition to any other rights which a Party may have at law or in equity pursuant to this Agreement.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

## ARTICLE IX
## CLOSING

9.1    <u>Date of Closing</u>.  Subject to satisfaction (or waiver by the required Party) of the conditions to Closing set forth in <u>Article VII</u> (other than those conditions that by their nature cannot be satisfied until the time of Closing, but subject to the satisfaction (or waiver by the requisite Party) of those conditions), the Closing shall occur on the Effective Date (the "***Closing Date***"). Notwithstanding the foregoing, the parties hereto may agree in writing to such other date or time for Closing to take place and such other date or time shall be the "***Closing Date***" as such term is defined herein.  The Closing shall take place through electronic means of communication on the Closing Date.

9.2    <u>Closing Obligations</u>.  At Closing, the Parties (as applicable) shall take, or cause to be taken, the following actions, each being a condition precedent to the others and each being deemed to have occurred simultaneously with the others:

(a)    The Sellers and Buyer shall deliver to one another duly executed counterpart signature pages to each Transfer Document to which they are a party, in sufficient numbers of duly executed and acknowledged original counterparts to facilitate, to the extent appropriate, recording in all relevant jurisdictions;

(b)    The Sellers shall deliver to Buyer the JV Assignment Agreements duly executed by the applicable Sellers;

(c)    Buyer and Buyer 2 shall deliver a duly executed counterpart to the Release Document;

(d)    The Sellers shall deliver to Buyer a certificate, dated and effective as of the Closing Date, executed by an authorized officer of each Seller, certifying to Buyer that, on the Closing Date, the conditions set forth in <u>Section 7.3(a)</u> and <u>Section 7.3(b)</u> have been satisfied;

(e)    Buyer shall deliver to the Sellers a certificate, dated and effective as of the Closing Date, executed by an authorized officer of each of Buyer and Buyer 2, certifying to the Sellers that, on the Closing Date, the conditions set forth in <u>Section 7.2(a)</u> and <u>Section 7.2(b)</u> have been satisfied;

(f)    Each Seller shall deliver to Buyer a statement that satisfies the requirements of Treas. Reg. §1.1445-2(b)(2), certifying that such Seller is not a foreign person within the meaning of Section 1445(f)(3) or Section 1446(f)(2) of the Code;

(g)    Fieldwood and Buyer shall deliver to one another duly executed signature pages to the Funding Agreement;

(h)    Buyer shall deliver by wire transfer of immediately available funds an amount in cash equal to the Cash Portion, to one or more accounts designated by the Sellers (which shall be designated by the Sellers at least two (2) days prior to Closing);

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(i)      Sellers shall pay the Cure Costs out of the Closing Cash Amount and/or the Cash Portion in accordance with an order of the Bankruptcy Court; and

(j)      Buyer shall deliver to Fieldwood the GUC Warrants and the SLTL Warrants for distribution by Fieldwood pursuant to the Plan.

## ARTICLE X
## POST-CLOSING OBLIGATIONS AND COVENANTS

10.1    <u>Field Data and Records</u>.  Within ten (10) Business Days after the Closing, pursuant to Buyer's reasonable instructions, the Sellers shall deliver to Buyer any Field Data or Records that are not maintained in the Office Assets.  Buyer shall be entitled to all original Field Data and Records.  Within ten (10) Business Days after the Closing, the Sellers may make and retain, at the Sellers' expense, copies of any Field Data and Records (except to the extent prohibited by Contract where Buyer obtains the originals thereof).

10.2    <u>Suspense Funds; Prepaid JOA Funds</u>.

(a)      To the extent that as of Closing, any Seller holds Suspense Funds or Undisbursed Revenue relating to the Acquired Interests (excluding Prepaid JOA Funds) the Sellers shall deliver to Buyer at Closing such Suspense Funds and Undisbursed Revenue and an accounting of such Suspense Funds and Undisbursed Revenue and Buyer shall from and after such time be responsible for the application of such Suspense Funds and Undisbursed Revenue under the applicable operating or other agreement governing the application of such Suspense Funds and Undisbursed Revenue.  The Sellers shall remain liable, and shall be solely responsible, for (i) the disbursement of all funds owed to Persons (including any Suspense Funds) that are not paid or disbursed to Buyer at Closing and (ii) all Liabilities with respect to any misapplication of any Suspense Funds (or any escheat or other Laws related thereto) as to any period of time at or before the Closing Date; such Liabilities and responsibilities shall be considered Retained Liabilities.

(b)      To the extent that as of Closing, any Seller holds funds received by the Sellers (in their capacity as operator of any Acquired Interests) on account of working interest owners in the Acquired Interests as prepayments for items under operating or other agreements ("***Prepaid JOA Funds***"), the Sellers shall deliver to Buyer at Closing such Prepaid JOA Funds and an accounting of each of such prepayments and Buyer shall from and after Closing be responsible for the application of such Prepaid JOA Funds under the applicable operating or other agreement pursuant to which such Prepaid JOA Funds were collected.  The Sellers shall remain liable, and shall be solely responsible, for (i) the disbursement of all funds owed to Persons (including any Prepaid JOA Funds) that are not paid or disbursed to Buyer at Closing and (ii) all Liabilities with respect to any misapplication of Prepaid JOA Funds (or any escheat or other Laws related thereto) as to any period of time at or before the Closing Date; such Liabilities and responsibilities shall be considered Retained Liabilities.

10.3    <u>Post-Closing Asset Reconciliation</u>.

(a)      After the Closing Date, Buyer and the Sellers shall execute and deliver, or shall cause to be executed and delivered, from time to time such further instruments of conveyance and transfer, and shall take such other actions as Buyer or the Sellers may reasonably request, to

convey and deliver the Acquired Interests to Buyer, to perfect Buyer's title thereto and to accomplish the orderly transfer of the Acquired Interests to Buyer.

(b)     In the event that at any time, or from time to time following the Closing Date, any (i) Acquired Interest is found to have been retained by the Sellers or any of their Affiliates (each a "***Non-Transferred Asset***"), then the Sellers shall transfer, or shall cause such Affiliate to transfer, with any necessary prior consent from any Third Person or Governmental Authority, such Non-Transferred Asset to Buyer as soon as practicable, or an Affiliate thereof as designated by Buyer, and to forward or remit to Buyer, or an Affiliate thereof as designated by Buyer, any payments actually received by the Sellers on account of any such Non-Transferred Asset from the Closing until the time such Non-Transferred Asset is transferred to Buyer; *provided*, that Buyer shall pay to the Sellers the amount of any expenses or payables actually paid by the Sellers on account of any such Non-Transferred Asset from the Closing until the time such Non-Transferred Asset is transferred to Buyer (which may be netted by the Sellers against amounts received on account of such Non-Transferred Asset).  Prior to any such transfer, the Sellers shall hold such Non-Transferred Asset in trust for Buyer.

(c)     In the event of a transfer pursuant to clause (b) of this Section 10.3, Buyer or an Affiliate thereof and the Sellers or an Affiliate thereof shall execute and deliver, or cause to be executed and delivered, to the other Party as soon as practicable any conveyances, notices, assumptions, releases and acquittances and such other instruments, and shall take such further actions, as may be necessary or appropriate to fully and effectively transfer, assign and convey unto Buyer or an Affiliate thereof, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Buyer or an Affiliate thereof, and to otherwise make effective the transactions contemplated hereby, and to confirm Buyer's (or its Affiliate's) title to or interest in and to such Non-Transferred Asset, and to put Buyer or its Affiliate in actual possession and operating control thereof.

(d)     For the avoidance of doubt, this Section 10.3 does not apply to any Delayed Assets retained by a Seller at the Closing.

10.4    Assignments; Operatorship.

(a)     Other than with respect to Governmental Approvals (which are addressed by Section 2.4), the Sellers will prepare and execute, and Buyer will execute, at or before the Closing, all documentation necessary to convey to Buyer the Acquired Interests granted by a Governmental Authority (except any such documentation that is customarily completed post-Closing) in the form as prescribed by the applicable Governmental Authority and otherwise reasonably acceptable to Buyer and the Sellers.

(b)     At the Closing, each Seller shall, as applicable, deliver to Buyer a resignation as operator of (and, as applicable, designated applicant under OSFR for) all Field Assets as to which such Seller served as operator (or, as applicable, designated applicant under OSFR) immediately before the Closing Date.  With respect to those Field Assets as to which a Seller controls the selection of the successor operator (or, as applicable, the designated applicant under OSFR), such Seller shall at the Closing deliver to Buyer (and any pertinent Third Person) a written notification designating Buyer as the successor operator of (or, as applicable, the successor

designated applicable under OSFR for) such Field Assets effective as of the Closing Date.  With respect to any Field Assets as to which the Sellers do not control the selection of the successor operator (or, as applicable, the designated applicant under OSFR), the Sellers will cast their votes at or before Closing, and will use commercially reasonable efforts to obtain before, or promptly following, Closing the votes of the other owners of Working Interests in such Field Assets, in each case in favor of the designation of Buyer as successor operator of (and, as applicable, the designated applicant under OSFR for) such Field Assets effective as of the Closing Date.  Within five (5) days after the later of the Closing Date or the date on which Buyer is named successor operator under the terms of the applicable Contract, the Sellers and Buyer shall make all necessary filings, including any BOEM designation of operator forms and designated applicant OSFR form designations, and take all other actions necessary to cause the resignation of the applicable Sellers as operator of (and, as applicable, the designated applicant under OSFR for), and the designation of Buyer as the successor operator of (and, as applicable, the designated applicant under OSFR for), such Field Assets to be recognized and, if required, approved by all relevant Governmental Authorities.  In each case, the Sellers shall use commercially reasonable efforts to assist Buyer in assuming the timely operation and management of the Field Assets.  Each of the Sellers' covenants in this <u>Section 10.4(b)</u> is subject to the accuracy at Closing of Buyer's representations in <u>Section 5.9</u>.  Each of Buyer's covenants in this <u>Section 10.4(b)</u> is subject to Buyer's receipt from the Sellers and Third Persons of all such required designations and forms.  For the avoidance of doubt, "Field Assets" does not include any Lease, Subject Unit, Easement or Well with respect to which no right, title or interest is included in the Acquired Interests.

(c)     With respect to each Field Asset operated by the Sellers as of the Closing, the Sellers, with the continued assistance of Buyer, shall use commercially reasonable efforts to cause each joint owner, record title interest owner and applicable operating rights interest owner in such Field Asset to execute and deliver such instruments, forms and filings (including any BOEM designation of operator forms and designated applicant OSFR form designations and any instruments, forms and filings required by BSEE) that are necessary to designate and appoint under all applicable Laws, Leases, Easements and Contracts, Buyer as operator of (and, as applicable, the designated applicant under OSFR for) such Field Asset as promptly as practicable following the Closing.

(d)     Each Party agrees that the execution and delivery of the instruments, forms and filings (including any BOEM designation of operator forms and OSFR form designation and any instruments, forms and filings required by BSEE) that are necessary to designate and appoint under all applicable Law, Leases, Easements and Contracts Buyer as operator (and, as applicable, the designated applicant under OSFR for) of the Field Assets will be made prior to the execution and delivery of the instruments, forms and filings (including any BOEM designation of operator forms and designated applicant OSFR form designations and any instruments, forms and filings required by BSEE) that may be required in connection with the implementation of the Divisive Merger.

10.5     <u>Confidentiality</u>.  Following the Closing, the Sellers agree not to, and to cause their respective Affiliates and Representatives not to, use or disclose any confidential or non-public information concerning the Acquired Interests or the business affairs of Buyer and its Affiliates, including as it relates to the Acquired Interests, or the Assumed Liabilities ("***Confidential Information***") except disclosure of Confidential Information that (a) is lawfully obtained after

<div align="center">65</div>

Closing from a source that, to the Knowledge of the Sellers, was not under an obligation of confidentiality to Buyer with respect to such information, (b) is disclosed or becomes available to the public without any breach by the Sellers of the terms of this Section 10.5, (c) is or may be necessary to wind down any of the Sellers' bankruptcy estates, or in connection with the enforcement of the rights of, or the defense of any Claim against or involving, any Seller provided that, in each case, the Confidential Information is afforded confidential treatment, (d) to the extent it relates to any Excluded Assets or (e) is or may be necessary in connection with the Bankruptcy Cases provided that the Confidential Information is afforded confidential treatment. Notwithstanding the foregoing, a Seller may disclose Confidential Information if such Seller believes (after consultation with counsel) it is legally required to make such disclosure in order to comply with Laws or legal, judicial or administrative process (including in connection with the Bankruptcy Cases). If a Seller or any of its Representatives becomes required (including by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar process) or it becomes necessary in connection with the Bankruptcy Cases to disclose any of the Confidential Information, such Seller or Representative shall use reasonable efforts to provide Buyer with prompt notice, to the extent allowed by Law, of such requirement, and, to the extent reasonably practicable, cooperate with Buyer to obtain a protective order or similar remedy to cause such information not to be disclosed, including interposing all available objections thereto, such as objections based on settlement privilege; *provided*, that, in the event that such protective order or other similar remedy is not obtained, such Seller shall, or shall cause such Representative to, furnish only that portion of such information that has been legally compelled, and shall, or shall cause its Representative (as applicable) to, exercise its commercially reasonable efforts, at Buyer's expense, to obtain assurance that confidential treatment will be accorded such disclosed information.

10.6    Seller Marks License. Each Seller hereby grants to Buyer and its Affiliates a limited, non-exclusive, royalty-free, worldwide license, effective as of the Closing Date and terminating one (1) year thereafter, to use the Seller Marks solely (a) in connection with the Acquired Interests in the same manner, and with the same standards of quality, as used by the Sellers immediately prior to Closing or (b) as necessary to wind down the use of, and transition away from the use of, the Seller Marks. Buyer and its Affiliates shall use their respective commercially reasonable efforts to wind down the use of, and transition away from the use of, the Seller Marks reasonably promptly after the Closing Date.

10.7    Power of Attorney. Each Seller hereby constitutes and appoints, effective as of the Closing Date, Buyer and its successors and assigns as the true and lawful attorney of such Seller with full power of substitution in the name of Buyer, or in the name of such Seller but for the benefit of Buyer, (a) to collect for the account of Buyer any items of Acquired Interests and (b) to institute and prosecute all proceedings which Buyer may in its sole discretion deem proper in order to assert or enforce any right, title or interest in, to or under the Acquired Interests, and to defend or compromise any and all actions, suits or proceedings in respect of the Acquired Interests. Buyer shall be entitled to retain for its own account any amounts collected pursuant to the foregoing powers, including any amounts payable as interest in respect thereof.

10.8    No Successor Liability. The Parties intend that, upon the Closing, Buyer shall not be deemed to: (a) be the successor of, or related person, successor in interest or successor employer (as described under any applicable Law) to, any Seller or any of its Affiliates, predecessors,

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

successors or assigns, including, with respect to any Employee Plans, other than the Assumed Employee Plans to the extent set forth in <u>Section 6.8</u>; (b) have, de facto or otherwise merged into any Seller or any of its Affiliates, predecessors, successors or assigns; (c) be a mere continuation or substantial continuation of any Seller or any of its Affiliates, predecessors, successors or assigns or the enterprise(s) of any Seller or any of its Affiliates, predecessors, successors or assigns; or (d) other than as expressly set forth in this Agreement, be liable for any acts or omissions of any Seller or any of its Affiliates, predecessors, successors or assigns in the current or former conduct of the business of the Sellers relating to the Acquired Interests or arising under or related to the Acquired Interests.  Without limiting the generality of the foregoing, and except as otherwise expressly provided in this Agreement, the Parties intend that Buyer shall not be liable for any Encumbrances (except Permitted Encumbrances (except for the Fieldwood U.A. Interests and the JV Interests, which shall not have any Permitted Encumbrances)) against any Seller or any of its Affiliates, predecessors, successors or assigns, and Buyer shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date, or whether fixed or contingent, whether now existing or hereafter arising, with respect to the Acquired Interests or any Liabilities of the Sellers arising prior to or after the Closing Date other than the Assumed Liabilities and Permitted Encumbrances (except for the Fieldwood U.A. interests and the JV Interests, which shall not have any Permitted Encumbrances).  The Parties agree that the provisions substantially in the form of this <u>Section 10.8</u> shall be reflected in the Confirmation Order.

10.9    <u>Access to Records</u>.

(a)    On and after the Closing Date, each Seller will, and will cause its Affiliates, successors and assigns and Representatives to, afford promptly to Buyer and its agents reasonable access to its books of account, financial and other records (including accountant's work papers), information, employees and auditors to the extent necessary or useful for Buyer in connection with any audit, investigation, dispute or litigation or any other reasonable business purpose relating to the Acquired Interests or the Assumed Liabilities; *provided* that any such access by Buyer shall not unreasonably interfere with the conduct of the business of such Seller.

(b)    Buyer agrees that, following the Closing, and subject to applicable Law and any confidentiality restrictions to third parties, and except as may be necessary to protect any applicable legal privilege, it shall (and shall cause its Subsidiaries to) give to the Sellers and their Representatives reasonable access during normal business hours to the Records pertaining to any and all periods prior to and including the Closing Date, to the extent useful or necessary for the Sellers in connection with any audit, investigation, dispute or litigation relating to the Seller's prior ownership of the Acquired Interests or the Assumed Liabilities, as the Sellers and their Representatives may reasonably request; *provided* that any such access by the Sellers shall not unreasonably interfere with the conduct of business of Buyer.

10.10   <u>Payment of Assumed Liabilities</u>.  If, from and after the Closing Date, any Seller or their respective Affiliates receives an invoice from a third party for payment of amounts that constitute Assumed Liabilities, such Seller may deliver such invoice to Buyer for payment and Buyer shall pay such invoice promptly and in any event within thirty (30) days of Buyer's receipt of such invoice from such Seller; *provided*, that for the avoidance of doubt, that if any such invoice covers amounts that are not Assumed Liabilities, as well as amounts that are Assumed Liabilities,

Buyer shall only be required by this <u>Section 10.10</u> to pay that portion of the amounts invoiced that constitute Assumed Liabilities.

10.11   <u>Payment of Retained Liabilities</u>.  If, from and after the Closing Date, Buyer or its Affiliates receives an invoice from a third party for payment of amounts that constitute Retained Liabilities, Buyer may deliver such invoice to the Sellers for payment and the Sellers shall pay such invoice promptly and in any event within thirty (30) days of the Sellers' receipt of such invoice from Buyer; *provided*, that (a) for the avoidance of doubt, that if any such invoice covers amounts that are not Retained Liabilities, as well as amounts that are Retained Liabilities, the Sellers shall only be required by this <u>Section 10.11</u> to pay that portion of the amounts invoiced that constitute Retained Liabilities, (b) Sellers will not be required to pay any such Retained Liability to the extent such Retained Liability has been satisfied, compromised, settled, released or discharged pursuant to the Plan and the Confirmation Order or is otherwise subject to a different specified treatment pursuant to the Plan and (c) this <u>Section 10.11</u> will not limit Sellers' right to exercise or pursue any counterclaim, right to setoff or other defense of Sellers with respect to such Retained Liability.

10.12   <u>Accounts Receivables</u>.

(a)   On the Closing Date, Fieldwood shall deliver to Buyer a statement setting forth the names of the obligor and the amount of each Closing Accounts Receivable (or amounts as known as of the Closing) (as such statement may be modified or supplemented from time to time within ninety (90) days after the Closing Date by written notice of Fieldwood to Buyer, the "***Closing Accounts Receivables Statement***").

(b)   From and after the Closing until the date that is 365 days following the Closing (the "***AR Collections Period***"), if Buyer so requests, Fieldwood shall collect the Closing Accounts Receivable for the benefit of Buyer and Fieldwood shall use the same level of efforts in the collection of the Closing Accounts Receivable that Fieldwood uses in the collection of its own accounts receivables; *provided* that (i) Fieldwood may settle any Closing Accounts Receivable by setoff (each such setoff, an "***Accounts Receivable Setoff***") of any amounts owed by the obligor thereunder against any amount that Fieldwood or any of its Subsidiaries owes to such obligor, to the extent (A) such Accounts Receivable Setoff is permitted under applicable Law and (B) Fieldwood delivers to Buyer (as set forth in <u>Section 10.12(c)</u>) an amount in cash equal to the amount of such Closing Accounts Receivable actually collected by such Accounts Receivable Setoff, (ii) Fieldwood must obtain the prior written consent of Buyer to settle (whether in cash or by way of an Accounts Receivable Setoff) any Closing Accounts Receivable for an amount less than the applicable amount set forth on the Closing Accounts Receivables Statement, (iii) without limiting Fieldwood's other obligations in this Agreement neither Fieldwood nor any of its Subsidiaries shall be required to incur any out-of-pocket expenses or admit or consent to any liability or obligation in connection with the collection of any Closing Accounts Receivable and (iv) Fieldwood shall not have any obligation to commence any litigation or other legal proceeding in connection with the collection of any Closing Accounts Receivable.  Each Party acknowledges that Fieldwood is making efforts to collect the Closing Accounts Receivable hereunder solely pursuant to a contractual relationship on an arm's length basis and that the Parties do not intend that Fieldwood act or be responsible as a fiduciary to Buyer, any holders of Claims or any other Person, and expressly disclaim any such fiduciary relationship, whether between or among Buyer,

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

on the one hand, and Fieldwood or any Seller, on the other hand.  Buyer acknowledges that Fieldwood's obligations pursuant to this Section 10.12 (including Fieldwood Energy I's obligations under Section 10.12(e)) will be undertaken by Buyer pursuant to and in accordance with the TSA.  Fieldwood shall be liable to Buyer (as set forth in Section 10.12(c)) for any Closing Accounts Receivable actually collected by Fieldwood (including as set off by Accounts Receivable Setoff) pursuant to this Section 10.12, and shall indemnify Buyer on a dollar-for-dollar basis for any Closing Accounts Receivable that are actually collected by Fieldwood (including as set off by Accounts Receivable Setoff) but not paid to Buyer pursuant to Section 10.12(c). In the case of an Accounts Receivable Setoff, the date of such Accounts Receivable Setoff shall be the earlier of (i) the date notice of such Accounts Receivable Setoff is delivered to Buyer pursuant to this Section 10.12(b) and (ii) the date such Accounts Receivable Setoff is reflected on the books of Fieldwood or any of its Subsidiaries.

(c)     Prior to the tenth (10th) calendar day following the end of each calendar month occurring after the Closing Date and through the month in which the end of the AR Collections Period occurs, Fieldwood shall promptly deliver the amount of any and all cash collected in respect of Closing Accounts Receivables and the amount of any and all Accounts Receivable Setoffs (collectively, the "*Accounts Receivable Collections*") to Buyer, together with a statement setting forth the aggregate amount of all the Accounts Receivable Collections.

(d)     On the date that is fifteen (15) calendar days after the end of the month in which the AR Collections Period ends, Fieldwood shall (i) deliver to Buyer a statement setting forth (A) the names of the obligor and amount of each Closing Accounts Receivable that remains uncollected, whether by cash or setoff (collectively, the "*Remaining Accounts*"); and (B) the aggregate amount of all of the Remaining Accounts receivables; and (ii) from and after the AR Collections Period, Fieldwood shall have no further obligation under this Section 10.12 to make efforts to collect the Remaining Accounts; *provided*, *however*, for the avoidance of doubt, if Buyer so requests, Fieldwood or its Subsidiaries may elect to collect any of the Remaining Accounts after the expiration of the AR Collections Period, and if Fieldwood so elects, Fieldwood shall pay such amounts over to Buyer, and Fieldwood shall be liable to Buyer for, and shall indemnify Buyer on a dollar-for-dollar basis for, any Remaining Accounts actually collected by Fieldwood pursuant to this Section 10.12.

(e)     Each of the Sellers and Buyer acknowledges and agrees that in connection with, and from and after, the consummation of the Divisive Merger, Fieldwood's obligations and liabilities (including indemnification obligations) under this Section 10.12 will vest in and be allocated to (i) Fieldwood Energy I (in the case of Closing Accounts Receivable attributable to the FWE I Assets) or (ii) Fieldwood Energy III or Fieldwood Energy IV LLC, as applicable, (in the case of Closing Accounts Receivable other than those attributable to the FWE I Assets).

10.13   Directors' and Officers' Indemnification.

(a)     From and after Closing, Buyer shall indemnify, defend and hold harmless (i) each individual Person who is, as of the Closing Date, a director, officer or manager of any Seller, and (ii) Matt McCarroll with respect to his service, prior to the Closing Date, as a director, officer or manager (as applicable) of the Sellers (the "*D&O Indemnified Parties*"), against any and all Losses (including, for the avoidance of doubt, reasonable attorneys' fees, costs and other

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

out-of-pocket expenses) arising out of or relating to any threatened or actual Claim based in whole or in part on, or arising out of or relating in whole or in part to, the fact that such individual Person is or was a director, officer or manager of one or more of the Sellers whether based upon, arising out of or relating to any act or omission actually or allegedly committed or attempted at or prior to the Closing Date and whether asserted or claimed prior to, or at or after, the Closing Date, including all Claims based in whole or in part on, or arising in whole or in part out of, or relating to this Agreement or the transactions contemplated hereby, in each case to the full extent a Seller would be permitted under applicable Law to indemnify its own directors, officers or managers (including payment of expenses in advance of the final disposition of any such action or proceeding to each D&O Indemnified Party), but only to the extent that such Losses would be indemnifiable by the Sellers pursuant to the terms of (x) the organizational documents of the Sellers or (y) any indemnification agreement between one or more Sellers, on the one hand, and the D&O Indemnified Party(ies) seeking indemnification from Buyer pursuant to this Section 10.13(a), on the other hand, set forth on **Schedule 10.13(a)**, in each case, as such organizational documents or agreements existed on the Petition Date (the "***Existing D&O Indemnification Terms***"); *provided*, *however*, that Buyer's obligation to indemnify and hold harmless the D&O Indemnified Parties pursuant to this Section 10.13(a) with respect to Losses associated with any Claim shall be reduced by the amount of any recovery actually received by the applicable D&O Indemnified Party(ies) under the Tail Policy with respect to such Claim (the "***D&O Indemnified Liabilities***").  A D&O Indemnified Party shall not be entitled to make a claim against Buyer for indemnification pursuant to this Section 10.13(a) with respect to an underlying Claim unless and until such D&O Indemnified Party has made a claim against the Tail Policy with respect to such Claim and received a determination of coverage available under the Tail Policy with respect thereto.

(b)     Buyer acknowledges that certain D&O Indemnified Parties may have rights to indemnification, advancement of expenses and/or insurance provided by the Sellers, but excluding, for purposes of the definition of "Indemnitors", the Tail Policy and the insurance providers with respect thereto (collectively, the "***Indemnitors***").  Buyer hereby agrees that as between Buyer and Sellers (i) the Tail Policy and the insurance providers with respect thereto are the indemnitors of first resort with respect to indemnity obligations to the D&O Indemnified Parties, (ii) Buyer's indemnity obligations to the D&O Indemnified Parties apply only once coverage under the Tail Policy has been exhausted upon either payment of the Tail Policy's limits of liability or a determination by the insurance providers thereof that coverage is unavailable with respect to a particular Loss, (iii) the Indemnitors' indemnity obligations to the D&O Indemnified Parties are secondary to Buyer's indemnity obligations to the D&O Indemnified Parties, (iv) Buyer shall be required to advance the full amount of expenses incurred by any D&O Indemnified Party and shall be liable for the full amount of all expenses, judgments, penalties, fines and amounts paid in settlement to the extent legally permitted and as required by the terms of this Agreement, without regard to any rights the D&O Indemnified Party may have against the Indemnitors, but only to the extent that such expenses would be advanced, and such expenses, judgments, penalties, fines and amounts paid in settlement would be payable, in each case pursuant to the Existing D&O Indemnification Terms and (v) Buyer irrevocably waives, relinquishes and releases the Indemnitors from any and all claims against the Indemnitors for contribution, subrogation or any other recovery of any kind in respect thereof in respect of the matters set forth in this Section 10.13(b).  Buyer further agrees that no advancement or payment by an Indemnitor on behalf of a D&O Indemnified Party with respect to any claim for which a D&O Indemnified Party has sought indemnification from Buyer shall affect the foregoing and the applicable Indemnitor shall have a

70

right of contribution and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of the D&O Indemnified Party against Buyer.  Buyer and the D&O Indemnified Parties agree that the Indemnitors are express third party beneficiaries of the terms of this Section 10.13.

(c)     Without limiting Section 10.13(a), in the event a Claim is brought against any D&O Indemnified Party (whether arising before or after the Closing Date), nothing in this Section 10.13 shall limit the D&O Indemnified Party's(ies') right, to the extent provided pursuant to the Existing D&O Indemnification Terms, to retain counsel satisfactory to him or her (and Buyer shall (to the extent such coverage would be available pursuant to the Existing D&O Indemnification Terms) pay the fees and expenses of such counsel (to the extent such fees and expenses constitute D&O Indemnified Liabilities) for the D&O Indemnified Party promptly as statements therefor are received), *provided* that, to the extent the D&O Indemnified Party(ies) would retain control of any such defense pursuant to the Existing D&O Indemnification Terms, the D&O Indemnified Party(ies) shall retain control of any such defense.

(d)     In the event that Buyer or any of its successors or assigns (i) consolidates with or merges into any other Person and is not the continuing or surviving corporation or entity of such consolidation or merger; or (ii) sells, transfers or conveys to any Person or Persons acting in concert all or substantially all of its properties and assets, or ownership of a majority of equity representing the right to control the management of Buyer, then, and in each such case, Buyer shall cause proper provision to be made so that the successors and assigns of Buyer shall assume all of the obligations of Buyer set forth in this Section 10.13.

(e)     Each manager that is included in the D&O Indemnified Parties is identified on **Schedule 10.13(e)**.

10.14   Rights of Use.  The Parties recognize that, under current BSEE policy, BSEE will recognize only a single entity as the holder of a right of use and easement (each, a "***RUE***").  The Parties agree that RUE No. OCS-G 30329 covering the South Marsh Island 132 Platform B (Complex ID 21982) shall be held by Fieldwood Energy I (upon completion of the anticipated Divisive Merger) on behalf of both itself and Buyer; the Parties agree that, as a contractual matter between themselves, Fieldwood Energy I and Buyer shall each own a one-half interest in such platform and shall each be responsible for one half of the costs and obligations (for operating, decommissioning and otherwise) relating to such platform.  The Sellers and Buyer will use commercially reasonable efforts to obtain, to the extent required by BSEE, replacement Right of Use Agreements with respect to each Right of Use Agreement listed on **Schedule 10.14** at, or as promptly as practicable following, the Closing.  The rights of the Sellers and Buyer to use, and the obligations with respect to, any RUE listed in **Part 1** of **Schedule 10.14** shall be governed by the terms of the joint operation agreements from the Lease(s) associated with such RUE.

10.15   Post-Closing Agreements.  On the date of the consummation of the transactions contemplated by the Divisive Merger, each Seller shall, and shall cause its applicable Affiliates to, and Buyer shall, deliver counterparts to the TSA, the SEMS Bridging Agreement, the ST 308 Performance Bond, the Farmout Agreement, and each of the Joint Operating Agreement Amendments.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

10.16   <u>Effective Date Payments</u>.  On the Effective Date, the Sellers will pay, or cause to be paid, each of the Effective Date Cash Obligations that is to be paid on the Effective Date pursuant to the Plan to the applicable payees thereof.

<div align="center">

**ARTICLE XI**
**ASSUMPTION AND RETENTION OF LIABILITIES**

</div>

11.1   <u>Buyer's Assumption of Liabilities</u>.  Subject to the terms of this Agreement, if the Closing occurs, Buyer shall be deemed to have assumed (and shall pay, perform and discharge) the following Liabilities of the Sellers, as of the Closing (collectively, the "***Assumed Liabilities***"):

(a)   all Liabilities to the extent arising out of the Leases and the Assigned Contracts that are Acquired Interests, but, as to such Leases and such Assigned Contracts that constitute Other Assets, only to the extent that such Liabilities arise after the Closing;

(b)   all Liabilities to the extent arising out of the ownership, operation, use or environmental condition of the Acquired Interests (other than the Leases and Assigned Contracts), but, as to the Other Assets that are Acquired Interests, only to the extent that the acts, omissions, events or conditions giving rise thereto first arise, occur or come into existence after the Closing;

(c)   all Liabilities to assess, remediate, remove, transport or dispose as required under Environmental Law any Environmental Contaminants present as of the Closing at the Acquired Interests;

(d)   all Liabilities (whether arising before, at or after the Closing) to the extent arising out of the plugging, abandonment and decommissioning of, and all related salvage, site clearance and surface restoration activities for, any Field Assets that are Acquired Interests to the extent required under applicable Law or the terms of the applicable Leases, but, as to such Field Assets that constitute Other Assets, excluding any monetary fines and penalties to the extent that such monetary fines and penalties arise from or relate to facts or conditions existing or occurring at or before the Closing;

(e)   all Liabilities to the extent arising out of any Imbalances attributable to the Acquired Interests;

(f)   all Liabilities to the extent arising out of any Suspense Funds delivered to Buyer at the Closing but excluding Liabilities with respect to misapplication of any Suspense Funds (or any escheat or other Laws related thereto) before the Closing;

(g)   all Liabilities to the extent arising out of any Prepaid JOA Funds or Undisbursed Revenue, in each case, that is delivered to Buyer at the Closing but excluding Liabilities with respect to misapplication of Prepaid JOA Funds or Undisbursed Revenue (or any escheat or other Laws related thereto) before the Closing;

(h)   all Liabilities assumed by Buyer pursuant to <u>Section 6.8</u>;

(i)   all Liabilities for Taxes attributable to the Acquired Interests other than the Retained Taxes;

<div align="center">72</div>

(j)      all Liabilities relating to (i) any Seller Employee who becomes a Transferred Employee, that arise at, before or after the Closing, in each case unless such claim is (A) discharged under the Plan or (B) covered by insurance and (ii) any Employee Severance that becomes due and payable following the Closing;

(k)      all indemnities of Buyer under Section 1.2, Section 2.3, Section 2.4 and Section 2.5;

(l)      all Working Capital Liabilities;

(m)      the D&O Indemnified Liabilities;

(n)      all Liabilities arising out of or relating to any affirmative defenses of third parties with respect to any Claim or cause of action assigned to Buyer pursuant to Section 1.2(i), Section 1.2(w) and Section 1.2(rr) to the extent that if treated as Retained Liabilities such defenses would not constitute general unsecured claims of the Sellers; and

(o)      the Allowed FLFO Claims (as defined in the Plan) remaining following distribution of the FLFO Distribution Amount (as defined in the Plan) pursuant to the Plan (as modified to the extent set forth in the First Lien Exit Facility Documents (as defined in the Plan)).

Notwithstanding anything to the contrary herein, Assumed Liabilities shall not include any surety bond premiums, indemnity obligations or other obligations on account of surety bonds that were obtained by the Sellers.

11.2      Sellers' Retention of Liabilities.  Notwithstanding anything to the contrary set forth in this Agreement or in any other document or instrument entered into in connection with this Agreement, the Parties expressly acknowledge and agree that Buyer is assuming only the Assumed Liabilities and is not assuming any other Liability of any Seller.  All other Liabilities of each Seller or any of its Affiliates (or any predecessor of any Seller or any of its Affiliates or any prior owner of all or part of their businesses and assets) shall be retained by and remain Liabilities of such Seller and its Affiliates (all such Liabilities not being assumed being herein referred to as the "**Retained Liabilities**") including the following:

(a)      all Liabilities arising out of the Leases and the Assigned Contracts except those Liabilities set forth in Section 11.1(a);

(b)      all Liabilities arising out of the plugging, abandonment and decommissioning of, and all related salvage, site clearance and surface restoration activities for, any assets, properties or leases, except those Liabilities set forth in Section 11.1(d);

(c)      all Liabilities relating to the presence of Environmental Contaminants, except those Liabilities set forth in Section 11.1(c);

(d)      [reserved];

(e)      all current liabilities of the Sellers and their Subsidiaries, including all expenses and accounts, notes and other payables (other than the Working Capital Liabilities);

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(f)      all Liabilities arising out of the ownership, operation, use or environmental condition of the Acquired Interests (other than Leases and Assigned Contracts) prior to or as of the Closing, except those liabilities set forth in <u>Section 11.1(b)</u>;

(g)      all indebtedness, whether or not encumbering all or any portion of the Acquired Interests (other than the Working Capital Liabilities);

(h)      all Liabilities arising out of any Suspense Funds, Undisbursed Revenue and Prepaid JOA Funds (except for those Liabilities described in <u>Sections 11.1(f)</u> and <u>Section 11.1(g)</u>);

(i)      [reserved];

(j)      all Liabilities arising out of or relating to the Decommissioning Agreement and Apache PSA;

(k)      all Liabilities related to, resulting from or otherwise arising out of or relating to any Excluded Assets (other than the Working Capital Liabilities);

(l)      all Liabilities arising out of or relating to any Seller's breach of this Agreement;

(m)      all Liabilities for (a) Taxes of the Sellers or Taxes relating to the Acquired Interests (other than Fieldwood U.A. Interests) or the Assumed Liabilities with respect to any Pre-Closing Tax Period (including Property-Related Taxes and Production Taxes that are allocated to the Pre-Closing Tax Period pursuant to <u>Section 6.12</u>), (b) Taxes imposed on Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof, or for which Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof may otherwise be liable, with respect to any Pre-Closing Tax Period; (c) Taxes imposed on Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof, or for which Fieldwood U.A. or Fieldwood Mexico or any Subsidiary thereof may otherwise be liable, as a result of having been a member of any Company Group; and (d) Transfer Taxes solely to the extent such Transfer Taxes are the responsibility of the Sellers pursuant to <u>Section 6.12</u> (the "***Retained Taxes***");

(n)      all Liabilities for non-compliance by the Sellers or Buyer (or any of their respective Affiliates) with any bulk sales, bulk transfer or similar Law;

(o)      all Liabilities relating to any current or former independent contractor of any Seller or any of its Affiliates or any Seller Employee or other current or former employee of any Seller or any of its Affiliates who does not become a Transferred Employee, that arise at, before or after the Closing (except for those Liabilities assumed by Buyer pursuant to <u>Section 6.8(c)</u>);

(p)      all Liabilities arising out of or relating to any Claim with respect to facts and circumstances existing prior to the Closing, including Liabilities for any fines or penalties relating thereto, except (i) as provided in <u>Section 11.1(b)</u> through <u>Section 11.1(h)</u> and (ii) any affirmative defenses of third parties with respect to any Claim or cause of action assigned to Buyer pursuant to <u>Section 1.2(i)</u>, <u>Section 1.2(w)</u> and <u>Section 1.2(rr)</u> except to the extent that if treated as Retained Liabilities such defenses would constitute general unsecured claims of the Sellers;

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

(q)      all Liabilities relating to an Employee Plan that is not an Assumed Employee Plan;

(r)      Liabilities satisfied, compromised, settled, released or discharged pursuant to the Plan and the Confirmation Order; and

(s)      all Effective Date Cash Obligations.

Notwithstanding anything contained in this Section 11.2 or elsewhere in this Agreement or any Ancillary Document, Assumed Liabilities shall include all Fieldwood Energy I Closing Accounts Payable.

11.3    Reservation as to Third Persons.  Nothing herein is intended to limit or otherwise waive any recourse Buyer or the Sellers may have against any Third Person for any Liabilities that may be incurred with respect to the Acquired Interests.

## ARTICLE XII
## MISCELLANEOUS

12.1    Expenses.  Except as otherwise specifically provided herein or in any order of the Bankruptcy Court, all fees, costs and expenses (including engineering, land, title, legal, accounting, consulting and other professional fees, costs and expenses) (excluding any fees, costs and expenses incurred by the Prepetition FLTL Agents and the Prepetition FLTL Agents Advisors (each as defined in the Plan)) incurred by Buyer, Buyer 2 or the Sellers in negotiating this Agreement, the Ancillary Documents or in consummating the transactions contemplated herein or therein shall be paid by the Party incurring the same whether or not the Closing shall have occurred. Buyer shall be solely responsible and pay for all recording fees related to the transfer of the Acquired Interests; *provided* that if any such recording fees are required to be paid prior to the Closing the Sellers shall pay such recording fees when due.

12.2    Notices.   All notices and communications required or permitted to be given hereunder (each, a "***Notice***") shall be in writing and shall be delivered personally, or sent by certified U.S. mail, postage prepaid with return receipt requested, bonded overnight courier, by facsimile or email transmission (provided any such facsimile or email transmission is confirmed either orally or by written confirmation), addressed to the appropriate Party at the address for such Party shown below:

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

If to Buyer or Buyer 2:

[__]

If to the Sellers:

c/o Fieldwood Energy LLC
2000 W. Sam Houston Pkwy. S., Suite 1200
Houston, Texas  77042
Attention:  Mike Dane
                     Thomas R. Lamme
                     Jon Graham
Email:        MDane@fwellc.com
                     TLamme@fwellc.com
JGraham@fwellc.com

with a copy (which will not constitute notice) to:

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Attention:  Damian Schaible
                     Natasha Tsiouris
                     Cheryl Chan
Email:        damian.schaible@davispolk.com
                     natasha.tsiouris@davispolk.com
                     cheryl.chan@davispolk.com

and

Seward & Kissel LLP
One Battery Park Plaza
New York, New York 10004
Attention: John R. Ashmead
                    Gregg S. Bateman
                    Catherine LoTempio

Email: ashmead@sewkis.com
             bateman@sewkis.com
             lotempio@sewkis.com

with a copy (which will not constitute notice) to:

Weil, Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201
Attention:  Rodney L. Moore
                     Samuel C. Peca
                     Matt Barr
                     Alfredo R. Perez
                     Jessica Liou
Email:        rodney.moore@weil.com
                     samuel.peca@weil.com
                     matt.barr@weil.com
                     alfredo.perez@weil.com
                     jessica.liou@weil.com

Any Notice given in accordance herewith shall be deemed to have been given and received upon: (a) if by personal delivery, then upon receipt (except, if a Notice is received at or after 5:00 p.m. Central Time or on a day that is not a Business Day, it shall be deemed received on the next Business Day), (b) if sent by U.S. certified mail, postage prepaid, return receipt requested, then the date shown as received on the return notice, (c) if sent by facsimile or email transmission, the date such facsimile or email transmission is confirmed either orally or by written confirmation, or (d) if by bonded overnight courier, the date shown on the notice of delivery.  Any Party may change

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

the address, facsimile number or email address to which Notices are to be addressed by giving written notice to the other Party in the manner provided in this Section 12.2.

12.3    Amendments.    Except as set forth in Section 1.2, Section 2.1, Section 2.3(b), Section 2.4, Section 2.6 and Section 6.7, this Agreement, including all Exhibits and Schedules hereto, may be amended or modified only by an agreement in writing executed by all of the Parties.

12.4    Waiver.    No Party shall be deemed to have waived or discharged any claim arising out of this Agreement, or any power, right, privilege, remedy or condition under this Agreement, unless the waiver or discharge of such claim, power, right, privilege, remedy or condition is expressly set forth in a written instrument duly executed and delivered by the Party against whom the waiver or discharge is sought to be enforced.  A waiver or discharge made on one occasion or a partial waiver or discharge of any power, right, privilege, remedy or condition shall not preclude any other or further exercise or enforcement of such power, right, privilege or remedy or requirement to satisfy such condition.  Except as expressly provided otherwise in this Agreement, the rights of each Party under this Agreement shall be cumulative, and the exercise or partial exercise of any such right shall not preclude the exercise of any other right.

12.5    No Third-Party Beneficiaries.    Nothing in this Agreement entitles any Person other than Buyer, Buyer 2 and the Sellers, including Fieldwood Energy I and GOM Shelf and their Subsidiaries, to any claims, remedy or right of any kind; *provided, however,* (a) the D&O Indemnified Parties are intended to be, and shall be, third party beneficiaries of Section 10.12, (b) the Non-Recourse Parties are intended to be, and shall be, third party beneficiaries of Section 12.14 and (c) the Seller Indemnified Parties are intended to be, and shall be, third party beneficiaries of the rights of Seller Indemnified Parties specified in Article XIII.  From and after the establishment of the Liquidating Trust, the Liquidating Trustee shall be a third party beneficiary of the Sellers' rights under this Agreement.

12.6    Assignment.

(a)    Subject to Section 12.6(b), neither this Agreement nor any rights, interests or obligations hereunder shall be assigned by any Party by operation of Law or otherwise without the other Party's express written consent (which may be granted or withheld in the sole discretion of such other Party); *provided, however,* that Buyer and Buyer 2 shall be permitted, upon notice to the Sellers, to assign all or part of its respective rights or obligations hereunder (including obligations related to the Assumed Liabilities) to any wholly-owned Subsidiary of NewCo (as defined in the Plan) and the Sellers may assign their respective rights and obligations under this Agreement to any liquidating trust or other similar representative of the Sellers created or appointed pursuant to a Bankruptcy Court order.  Notwithstanding the foregoing, no assignment of any rights hereunder shall relieve the assigning Party of any obligations or responsibilities hereunder.

(b)    If a Liquidating Trust is established, from and after the formation of the Liquidating Trust, subject to the terms of the Confirmation Order, all rights and obligations of the Sellers under this Agreement shall accrue to and be for the benefit of and shall be exercisable by the Liquidating Trust, as provided by any order of the Bankruptcy Court and the Liquidating Trustee shall be entitled to exercise all of the rights of the Sellers under this Agreement.

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098\v87

12.7    <u>Counterparts</u>.  This Agreement and any amendment hereto may be executed by Buyer, Buyer 2 and the Sellers in any number of counterparts, each of which shall be deemed an original instrument, but all of which together shall constitute but one and the same agreement. Notwithstanding anything to the contrary in <u>Section 12.2</u>, delivery of an executed counterpart of a signature page to this Agreement or any amendment hereto by telecopier, facsimile or email attachment that contains a portable document format (.pdf) file of an executed signature shall be effective as delivery of a manually executed counterpart of this Agreement or such amendment, as applicable.

12.8    <u>Governing Law; Jurisdiction; Venue; Jury Trial</u>.

(a)    Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this Agreement or the negotiation, execution, termination, performance or non-performance of this Agreement, or any Ancillary Document (unless such Ancillary Document provides for the application of the laws of another jurisdiction) shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of New York applicable hereto.

(b)    Without limitation of any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Claim; *provided*, *however*, that, if the Bankruptcy Cases have been closed pursuant to Section 350(a) of the Bankruptcy Code (or in the event that the Bankruptcy Court determines that it does not have jurisdiction), all Claims arising out of or relating to this Agreement shall be heard and determined in a New York state court or a federal court sitting in the Borough of Manhattan, New York, New York, and the Parties hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in any such Claim and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Claim.  The Parties consent to service of process by mail (in accordance with <u>Section 12.2</u>) or any other manner permitted by Law.

(c)    THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY CLAIM OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE NEGOTIATION, EXECUTION, TERMINATION, PERFORMANCE OR NON-PERFORMANCE OF THIS AGREEMENT, OR ANY ANCILLARY DOCUMENT (UNLESS SUCH ANCILLARY DOCUMENT PROVIDES OTHERWISE).

12.9    <u>Entire Agreement</u>.  This Agreement (including the Exhibits, Schedules and Disclosure Schedules), the Ancillary Documents and the Plan constitute the entire agreement between the Parties with respect to the subject matter hereof and supersede all negotiations, prior

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

discussions and prior agreements and understandings relating to such subject matter. In the event of any conflict between this Agreement, any Ancillary Document and the Plan, this Agreement will control.

12.10 <u>Binding Effect</u>. This Agreement shall be binding in all respects against (a) the Sellers and all of their successors and permitted assigns (including, for the avoidance of doubt, any trustee, examiner or other fiduciary appointed in the Bankruptcy Case) and (b) Buyer, Buyer 2 and all of their respective successors and permitted assigns.

12.11 <u>Time of the Essence</u>. Time is of the essence for this Agreement.

12.12 <u>No Partnership; No Fiduciary Duty</u>. This Agreement shall not create and it is not the purpose or intention of the Parties to create any partnership, mining partnership, joint venture, general partnership or other partnership relationship and none shall be inferred. Nothing in this Agreement shall be construed to establish a fiduciary relationship between the Parties for any purpose.

12.13 <u>Obligations of the Sellers</u>. The Liabilities, obligations, representations, warranties and covenants of the Sellers in this Agreement and in the Ancillary Documents are solidary (as that term is used under Louisiana law) and joint and solidary (as that phrase is used under Texas law). Fieldwood shall cause each other Seller to comply with such Seller's obligations under this Agreement, including with respect to the transfer and assignment of the Acquired Interests and Assumed Liabilities and the obligations in <u>Section 6.1</u>.

12.14 <u>No Recourse</u>. Notwithstanding anything that may be expressed or implied in this Agreement or any Ancillary Document, each Party, on behalf of itself and its Affiliates and their respective representatives, covenants, agrees and acknowledges that no Person other than the Parties (and their respective successors or assignees, as applicable) has any obligation hereunder and that, neither any Party, their respective Affiliates or their respective representatives, shall have any right of recovery under this Agreement or any Ancillary Document against, and no personal liability under this Agreement or any Ancillary Document shall attach to, any Party's former, current or future debt or equity financing sources, equity holders, controlling Persons, directors, officers, employees, general or limited partners, members, managers, Affiliates or agents, or any former, current or future equity holder, controlling Person, director, officer, employee, general or limited partner, member, manager, Affiliate or agent of any of the foregoing (collectively, each of the foregoing but not including the Parties, a "***Non-Recourse Party***"), whether by or through attempted piercing of the corporate, limited partnership or limited liability company veil, by or through a claim by or on behalf of any Party against any Non-Recourse Party, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any applicable Law, whether in contract, tort or otherwise. Without limiting the foregoing, no past, present or future director, officer, employee, incorporator, member, partner, stockholder, Affiliate, agent, attorney or representative of the Parties or their respective Affiliates shall have any liability for any obligations or liabilities of the Parties under this Agreement of or for any Claim based on, in respect of, or by reason of, the transactions contemplated hereby.

12.15 <u>Disclosure Schedules</u>. All references to Schedules in <u>Article IV</u> and <u>Article V</u> of this Agreement are referred to in this <u>Section 12.15</u> as "***Disclosure Schedules***". The information

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

in the Disclosure Schedules constitutes exceptions, qualifications and/or supplements to particular representations or warranties of the Sellers, Buyer and Buyer 2 as set forth in this Agreement. The Disclosure Schedules shall not be construed as indicating that any disclosed information is required to be disclosed, and no disclosure shall be construed as an admission that such information is material to, outside the ordinary course of business of, or required to be disclosed by, the Sellers, Buyer or Buyer 2 or constitutes, individually or in the aggregate, a Material Adverse Effect. Capitalized terms used in the Schedules that are not defined therein and are defined in this Agreement shall have the meanings given to them in this Agreement. The captions contained in the Schedules are for the convenience of reference only, and shall not be deemed to modify or influence the interpretation of the information contained in the Disclosure Schedules or this Agreement. The statements in each Schedule of the Disclosure Schedules qualify and relate to the corresponding provisions in the Sections of this Agreement to which they expressly refer and to each other Section in <u>Article IV</u> or <u>Article V</u> of this Agreement to which the applicability of a statement or disclosure in a particular Schedule of the Disclosure Schedules is readily apparent on its face.

12.16   <u>Other Contract Interpretation</u>.

(a)   <u>Headings</u>. The headings of the Exhibits, Schedules, Articles, Sections, and subsections of this Agreement are for guidance and convenience of reference only and shall not limit or otherwise affect any provision of this Agreement. All references in this Agreement to any "Section," "Article," "Annex," "Exhibit," or "*Schedule*" are to the corresponding Section, Article, Annex, Exhibit or Schedule of this Agreement unless otherwise specified (subject to <u>Section 12.15</u>).

(b)   <u>Severability</u>. If any provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of Law or public policy, it shall not affect the validity or enforceability of the other provisions here and all other provisions of this Agreement shall nevertheless remain in full force and effect. Upon such determination that any provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby fulfilled to the greatest extent possible.

(c)   <u>Agreement Not to Be Construed Against Drafter</u>. The Parties have participated jointly in negotiating and drafting this Agreement. In the event that an ambiguity or a question of intent or interpretation arises, both this Agreement and the Ancillary Documents will be construed as if drafted jointly by the Parties. No presumption or burden of proof will arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement or any Ancillary Document.

(d)   <u>Miscellaneous Interpretation</u>. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a day other than a Business Day, the period in question shall end on the next succeeding Business Day. Whenever the words "include," "*includes*" or "*including*" are used in this Agreement, they will be deemed to be followed by the words "*without limitation*" and shall not be construed to limit any general statement that it follows to the specific or similar items or

80

matters immediately following.  Unless the context otherwise requires, (1) "*or*" is disjunctive but not exclusive, (2) words in the singular include the plural and vice versa, (3) the words "herein," "hereof," "hereby," "*hereunder*" and words of similar nature refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited, (4) the use in this Agreement of a pronoun in reference to a Party or Person includes the masculine, feminine or neuter, as the context may require, (5) reference to any Person includes the successors and permitted assigns of that Person, (6) any reference in this Agreement to "$" means United States dollars, (7) and reference in this Agreement to "*days*" (but not "*Business Days*") means to calendar days, (8) reference to any law in this Agreement means such law as amended, modified, codified, reenacted, supplemented or superseded in whole or in part, and in effect from time to time together with any rules or regulations promulgated thereunder, (9) any reference in this Agreement to "*related to*", "*relating to*" or a similar phrase, in each case, in respect of the business of the Sellers, the Acquired Interests, or any other matter means, unless the context otherwise requires, "*related in whole or in part to*", "*relating in whole or in part to*" or a similar construction in the case of a similar phrase, as applicable, and (10) any reference in this Agreement to "*transactions contemplated by this Agreement*" or words of similar import includes the transactions contemplated by the other Ancillary Documents except as the context may otherwise require.  The Annex, Schedules and Exhibits attached to this Agreement are deemed to be part of this Agreement and included in any reference to this Agreement.  If the deadline for performance falls on a day that is not a Business Day, then the actual deadline for performance will be the next succeeding day that is a Business Day.  Where this Agreement references any item being "made available" to Buyer, such item will be deemed to have been "made available" to Buyer if it was provided to Davis Polk & Wardwell LLP or any other Representative of Buyer (including through an electronic dataroom).

## ARTICLE XIII
## SURVIVAL AND INDEMNIFICATION

13.1    <u>Survival; Limited Recourse Against Sellers</u>.

(a)    The representations and warranties of the Sellers, Buyer and Buyer 2 contained herein and in any certificate or other writing delivered by the Sellers pursuant hereto, including any representation or warranty that may be deemed to be made pursuant to <u>Section 1.1</u> with respect to the Acquired Interests being acquired by Buyer or Buyer 2 free and clear of any and all Encumbrances (other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances)), shall terminate upon and not survive the Closing and there shall be no liability (whether arising in contract, tort or otherwise, or whether at law or in equity, and regardless of the legal theory under which any entitlement, remedy or recourse may be sought or imposed (including all rights afforded by any statute which limits the effects of a release with respect to unknown claims)) thereafter in respect thereof.  Nothing herein shall limit Buyer's or Buyer 2's remedies in the event of Fraud, except that Buyer and Buyer 2 shall have no remedy in the event of Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries.  Each of the covenants of the Sellers, Buyer and Buyer 2 contained in this Agreement shall terminate upon the Closing except to the extent that performance under such covenant is to take place after Closing, in which case such covenant shall survive the Closing until the earlier of (i) performance of such covenant in accordance with this Agreement or (ii) the expiration of applicable statute of limitations with respect to any claim for any failure to perform such covenant (for clarity, any

covenant that may be deemed to be made pursuant to Section 1.1 with respect to the Acquired Interests being acquired by Buyer or Buyer 2 free and clear of any and all Encumbrances (other than Permitted Encumbrances (except that the Fieldwood U.A. Interests and the JV Interests shall not be subject to any Permitted Encumbrances) shall terminate upon Closing)).  The intended effect of termination of representations, warranties, covenants and agreements is to bar, from and after the date of termination, any claim or cause of action based on (x) the alleged inaccuracy of such representation or breach of such warranty or (y) an alleged breach or failure to fulfill such covenant or agreement; *provided* that if a written notice of any claim with respect to any covenant to be performed after Closing is given prior to the expiration of such covenant then such covenant shall survive until, but only for purposes of, the resolution of such claim by final, non-appealable judgment or settlement.

(b)     Neither Buyer nor Buyer 2 shall have any recourse against any Person who is not a party to this Agreement (excluding any successor or assign of any Seller), including any Affiliate of any Seller or any lender or creditor of any Seller from and after Closing for any Losses relating to the Acquired Interests or this Agreement (including with respect to title and environmental matters) or the Sellers' breach of any representations and warranties, covenants or other provision of this Agreement.  In addition, each of Buyer and Buyer 2 agree to the terms, conditions and limitations set forth in Section 1.5.

(c)     No Seller shall have any recourse against any Person who is not a party to this Agreement (excluding any successor or assign of Buyer or Buyer 2), including any Affiliate of Buyer or Buyer 2 or any lender or creditor of Buyer or Buyer 2 from and after Closing for any Losses relating to the Acquired Interests or this Agreement (including with respect to title and environmental matters) or Buyer or Buyer 2's breach of any representations and warranties, covenants or other provision of this Agreement.

(d)     For the avoidance of doubt, nothing in this Agreement shall prohibit the Sellers from ceasing operations or winding up their respective affairs following the Closing.

13.2     Indemnification by Buyer.  From and after Closing, Buyer hereby agrees to indemnify and hold each Seller, Fieldwood Energy I, GOM Shelf, and each of their successors, their Affiliates and all of their respective officers, managers, directors, employees, equity owners and agents (collectively, the "*Seller Indemnified Parties*") harmless from and against any and all Liabilities (including reasonable attorneys' fees and costs incurred in connection therewith) based upon, attributable to or resulting from:

(a)     the Fieldwood Energy I Closing Accounts Payable; and

(b)     all Assumed Liabilities to the extent associated with the Co-Owned Assets that are Acquired Interests.

13.3     Indemnification Procedures.

(a)     In the event that any proceedings shall be instituted or that any claim or demand shall be asserted by any Indemnified Party in respect of which indemnity may be sought under this Agreement (an "*Indemnification Claim*"), the Indemnified Party shall reasonably and promptly cause written notice of the assertion of any Indemnification Claim of which it has

82

knowledge which is covered by such indemnity to be provided to the Indemnifying Party.  Such notice shall set forth in reasonable detail such Indemnification Claim and the basis for indemnification.  The failure to so notify the Indemnifying Party shall not relieve the Indemnifying Party of its obligation hereunder, except to the extent such failure shall have actually prejudiced the Indemnifying Party.  The Indemnifying Party shall have the right, at its sole option and expense, to be represented by counsel of its choice, and to appoint lead counsel for and control, defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder.  If the Indemnifying Party elects to appoint lead counsel for and control, defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder, it shall within thirty (30) days of receipt of the Indemnification Claim notify the Indemnified Party of its intent to do so.  If the Indemnifying Party elects not to appoint lead counsel for and control, defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder, the Indemnified Party may control, defend against, negotiate, settle or otherwise deal with such Indemnification Claim.  If the Indemnifying Party shall assume the control of the defense of any Indemnification Claim, the Indemnified Party may participate, at his or its own expense, in the defense of such Indemnification Claim; *provided*, *however*, that such Indemnified Party shall be entitled to participate in any such defense with separate counsel at the expense of the Indemnifying Party if (i) so requested by the Indemnifying Party to participate or (ii) in the reasonable opinion of counsel to the Indemnified Party a conflict or potential conflict exists between the Indemnified Party and the Indemnifying Party that would make such separate representation advisable; and *provided*, *further*, that the Indemnifying Party shall not be required to pay for more than one (1) such counsel for all Indemnified Parties in connection with any Indemnification Claim.  The Parties agree to cooperate fully with each other in connection with the defense, negotiation or settlement of any such Indemnification Claim.  Notwithstanding anything in this <u>Section 13.3</u> to the contrary, if the Indemnifying Party shall assume the control of the defense of any Indemnification Claim, the Indemnifying Party shall not, without the written consent of the Indemnified Party (which shall not be unreasonably withheld, conditioned or delayed), settle or compromise any Indemnification Claim or consent to entry of any judgment unless the claimant provides to the Indemnified Party an unqualified release from all liability in respect of the Indemnification Claim.  If the Indemnifying Party makes any payment on any Indemnification Claim, the Indemnifying Party shall be subrogated, to the extent of such payment, to all rights and remedies of the Indemnified Party to any insurance benefits or other claims of the Indemnified Party with respect to such Indemnification Claim.

(b)      After any final decision, judgment or award shall have been rendered by a Governmental Authority of competent jurisdiction and the expiration of the time in which to appeal therefrom, or a settlement shall have been consummated, or the Indemnified Party and the Indemnifying Party shall have arrived at a mutually binding agreement with respect to an Indemnification Claim hereunder, the Indemnified Party shall forward to the Indemnifying Party notice of any sums due and owing by the Indemnifying Party pursuant to this Agreement with respect to such matter.  In the case of an Indemnification Claim that does not involve a third-party claim, if the Indemnifying Party does not notify the Indemnified Party within thirty (30) days following the receipt of a notice with respect to any such claim that the Indemnifying Party disputes its indemnity obligation to the Indemnified Party for any Losses with respect to such claim, such Losses shall be conclusively deemed a liability of the Indemnifying Party and the Indemnifying Party shall promptly pay to the Indemnified Party any and all Losses arising out of such claim.  If

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

the Indemnifying Party has timely disputed its indemnity obligation for any Losses with respect to such claim, the parties shall proceed in good faith to negotiate a resolution of such dispute and, if not resolved through negotiations, such dispute shall be resolved by litigation in an appropriate court of jurisdiction determined pursuant to Section 12.8.

        (c)     The amount of any Losses payable by the Indemnifying Party shall be net of any (i) amounts recovered or recoverable by the Indemnified Party under applicable insurance policies or from any other Person alleged to be responsible therefor, and (ii) Tax benefit actually realized by the Indemnified Party arising from the incurrence or payment of any such Losses in the taxable year such Loss was incurred.  If the Indemnified Party receives any amounts under applicable insurance policies, or from any other Person alleged to be responsible for any Losses, subsequent to an indemnification payment by the Indemnifying Party, then such Indemnified Party shall promptly reimburse the Indemnifying Party for any payment made or expense incurred by such Indemnifying Party in connection with providing such indemnification payment up to the amount received by the Indemnified Party, net of any expenses incurred by such Indemnified Party in collecting such amount.

        (d)     The Indemnifying Party shall not be liable for any (i) consequential damages (but, for the avoidance of doubt, without limiting liability for direct damages), (ii) punitive damages or (iii) Losses for lost profits.

        (e)     Each Indemnified Party must mitigate in accordance with applicable Law any loss for which such Indemnified Party seeks indemnification under this Agreement.  If such Indemnified Party mitigates its loss after the Indemnifying Party has paid the Indemnified Party under any indemnification provision of this Agreement in respect of that loss, the Indemnified Party must notify the Indemnifying Party and pay to the Indemnifying Party the extent of the value of the benefit to the Indemnified Party of that mitigation (less the Indemnified Party's reasonable costs of mitigation) within two (2) Business Days after the benefit is received.

        (f)     Each Indemnified Party shall use reasonable efforts to collect any amounts available under insurance coverage, or from any other Person alleged to be responsible, for any Losses payable under an indemnity in this Agreement.

        (g)     Express Negligence.  THE INDEMNIFICATION, RELEASE, ASSUMED LIABILITIES, RETAINED LIABILITIES, WAIVER AND LIMITATION OF LIABILITY PROVISIONS PROVIDED FOR IN THIS AGREEMENT SHALL BE APPLICABLE WHETHER OR NOT THE LIABILITIES, LOSSES, COSTS, EXPENSES AND DAMAGES IN QUESTION AROSE OR RESULTED SOLELY OR IN PART FROM THE SOLE, ACTIVE, PASSIVE, CONCURRENT OR COMPARATIVE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OR VIOLATION OF LAW OF OR BY ANY INDEMNIFIED PARTY.

        (h)     Tax Treatment of Indemnity Payments.  The Sellers, Buyer and Buyer 2 agree to treat any indemnity payment made pursuant to this Agreement as an adjustment to the Consideration for federal, state, local and foreign income tax purposes.  Any indemnity payment under this Agreement shall be treated as an adjustment to the value of the asset upon which the underlying Indemnification Claim was based, unless a final determination (within the meaning of Section 1313 of the Code) with respect to the Indemnified Party or any of its Affiliates causes any

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

such payment not to be treated as an adjustment to the value of the asset for United States federal income tax purposes.

(i)      Sole and Exclusive Remedy.   Except for any post-Closing payment expressly contemplated by this Agreement or any claim for a breach of a Party's covenants hereunder (to the extent not limited by Section 13.1(a)) or for Fraud (but not Fraud with respect to Fieldwood Energy I, FW GOM Pipeline, GOM Shelf or any of their respective Subsidiaries), the remedies provided in this Article XIII and in Section 8.3 shall be the sole and exclusive legal and equitable remedies of the Parties, from and after the Closing, with respect to this Agreement and the transactions contemplated hereby, and no Person will have any other entitlement, remedy or recourse, whether in contract, tort or otherwise, or whether at law or in equity, and regardless of the legal theory under which such entitlement, remedy or recourse may be sought or imposed (including all rights afforded by any statute which limits the effects of a release with respect to unknown claims), it being agreed that all of such other remedies, entitlements and recourse are expressly waived and released by the Parties to the fullest extent permitted by law.

*[**Signature page follows**.]*

WEIL:\97751377\56\45327.0007
WEIL:\97751377\67\45327.0007
#93848098v87

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution Date.

**SELLERS:**

Fieldwood Energy Inc.

By: _____
Name:
Title:

Fieldwood Energy LLC

By: _____
Name:
Title:

Dynamic Offshore Resources NS, LLC

By: _____
Name:
Title:

Fieldwood Energy Offshore LLC

By: _____
Name:
Title:

Fieldwood Onshore LLC

By: _____
Name:
Title:

Fieldwood SD Offshore LLC

By: _____
Name:
Title:

Fieldwood Offshore LLC

By: _____
Name:
Title:


FW GOM Pipeline, Inc.

By: _____
Name:
Title:


GOM Shelf LLC

By: _____
Name:
Title:


Bandon Oil and Gas GP, LLC

By: _____
Name:
Title:


Bandon Oil and Gas, LP

By: _____
Name:
Title:


Fieldwood Energy SP LLC

By: _____
Name:
Title:


Galveston Bay Pipeline LLC

By: _____
Name:
Title:

Galveston Bay Processing LLC

By: _____
Name:
Title:

**BUYER:**

[_____]

By: _____
Name:
Title:

**BUYER 2:**

[_____]

By: _____
Name:
Title:

## Annex I

### Definitions

The following terms and expressions shall have the following meanings:

"***1933 Act***" means the Securities Act of 1933, as amended, and the rules and regulations as promulgated thereunder.

"***365 Contracts***" means all Applicable Contracts and other executory contracts and unexpired leases to which a Seller is a party to the extent covering, attributable to or relating to any of the Acquired Interests or to which any of the Acquired Interests is subject or bound, in each case that may be assumed by one or more Sellers pursuant to Section 365 of the Bankruptcy Code.

"***365 Schedule***" is defined in <u>Section 6.7(a)</u>.

"***Accounts Receivable Collections***" is defined in <u>Section 10.12(c)</u>.

"***Accounts Receivable Setoff***" is defined in <u>Section 10.12(b)</u>.

"***Acquired Interests***" is defined in <u>Section 1.2</u>.

"***Affiliate***" means, with respect to a Person, any other Person that, as of the relevant time for which the determination of affiliation is made, directly or indirectly controls, is controlled by, or is under common control with, such Person.  For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, contract, voting trust, membership in management or in the group appointing or electing management or otherwise through formal or informal arrangements or business relationships.

"***Agent***" is defined in the recitals.

"***Agreement***" is defined in the preamble and includes all annexes, schedules and exhibits hereto, as well as all supplements, amendments and restatements hereof.

"***Allocated Value***" means the value allocated to the applicable Acquired Interest, if any, as agreed in good faith by Buyer and the Sellers.

"***Allowed Priority Tax Claim***" has the meaning set forth in the Plan.

"***Allowed Specified Administrative Expense Claims***" has the meaning set forth in the Plan.

"***Alternative Bidder***" is defined in <u>Section 6.4(b)</u>.

"***Alternative Transaction***" means (a) any sale, transfer or other disposition of all or a material portion of the Acquired Interests or (b) any series of sales, transfers or other dispositions of any portion of the Acquired Interests that, when taken collectively, constitutes a disposition of all or a material portion of the Acquired Interests, in each case, to any Person or Persons other than Buyer.

"*Ancillary Documents*" means each Assignment, Bill of Sale and Conveyance, the Assignment and Assumption Agreement, the Office Assets Conveyance, the TSA, the Farmout Agreement, the ST 308 Performance Bond, the SEMS Bridging Agreement, the Assignment of Leases and Subleases, the Joint Operating Agreement Amendments, the JV Assignment Agreement, the Funding Agreement, the Release Document and any other agreement, document, instrument or certificate entered into or delivered pursuant to this Agreement.

"*Antitrust Law*" means, collectively, the HSR Act, Title 15 of the United States Code §§ 1 7 (the Sherman Act), Title 15 of the United States Code §§ 12-27 and Title 29 of the United States Code §§ 52-53, (the Clayton Act), the Federal Trade Commission Act (15 U.S.C. §§ 41, et seq.) and the rules and regulations promulgated thereunder and any other Laws that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade or lessening of competition through merger or acquisition.

"*Apache PSA*" means that certain Purchase and Sale Agreement, dated as of July 18, 2013, by and among Apache Corporation, Apache Deepwater LLC, Apache Shelf, Inc., Apache Shelf Exploration LLC, GOM Shelf and Fieldwood, as amended from time to time, and the transaction documents executed in connection therewith.

"*Applicable Consent*" means any consent, waiver or approval that is required to be obtained from, or any notice that is required to be given to, any Third Person as a result of the assignment of the Acquired Interests by the Sellers to Buyer as contemplated by this Agreement (each, a "*Consent*") that (a) relates to an Assigned Contract, which consent, waiver or approval would be required for such Assigned Contract to be assumed and assigned to Buyer, after giving effect to Sections 365(c)(1) and 365(f)(1) of the Bankruptcy Code or (b) that relates to any Acquired Interest other than an Assigned Contract, other than, in each case, (i) for Preferential Rights and (ii) any Governmental Approvals.

"*Applicable Contracts*" means (a) all Contracts (*provided* that, for clarity, any "Operating Agreement" or "Joint Operating Agreement" identified on the 365 Schedule shall be deemed a Contract for purposes of this definition) to which a Seller is a party or is bound to the extent covering, attributable to or relating to any of the Acquired Interests or to which any of the Acquired Interests is subject or bound, including, without limitation, operating agreements, crude oil, condensate and natural gas purchase and sale agreements, gathering agreements, transportation agreements, marketing, disposal or injection agreements, farmout and farmin agreements, unitization, pooling and communitization agreements, exploration agreements, development agreements, area of mutual interest agreements, exchange and processing contracts and agreements, partnership and joint venture agreements, confidentiality agreements and any other similar contracts, agreements and instruments, and all amendments thereto, and (b) all Easements.

"*Applicable Governmental Approval*" is defined in Section 2.4.

"*Applicable Shared Asset Interests*" means, with respect to each asset described on Schedule 1.2, the portion of the Sellers' right, title, and interest in each such asset that corresponds to the portion of the Sellers' right, title and interest in the Co-Owned Leases, the Co-Owned Subject Units and the Co-Owned Wells (collectively, the "Co-Owned Oil and Gas Properties"), as applicable, conveyed to Buyer under this Agreement.

"***AR Collections Period***" is defined in <u>Section 10.12(b)</u>.

"***Assets***" is defined in <u>Section 1.2</u>.

"***Assigned 365 Contracts***" is defined in <u>Section 6.7(a)</u>.

"***Assigned 365 Contracts List***" is defined in <u>Section 6.7(a)</u>.

"***Assigned Contracts***" means (a) the Assigned 365 Contracts and (b) all Applicable Contracts that are not 365 Contracts (other than Excluded Assets), and any and all amendments, ratifications or extensions of the foregoing.

"***Assignment and Assumption Agreement***" means that Assignment and Assumption Agreement to be entered into at Closing by the parties thereto, in the form attached as **Exhibit I** hereto.

"***Assignment, Bill of Sale and Conveyance***" means that Bill of Sale, Assignment and Assumption Agreement to be entered into at Closing by the parties thereto in the form attached as **Exhibit G** hereto for the Co-Owned Assets and in the form attached as **Exhibit H** hereto for the Other Assets.

"***Assignment of Leases and Subleases***" means each Assignment and Assumption of Leases and Subleases to be entered into at Closing by the parties thereto for the Office Sublease, the Lafayette Lease Agreement, the Warehouse Lease and the Lubrizol Sublease, in the form attached as **Exhibit J** hereto.

"***Assumed Employee Plan***" is defined in <u>Section 4.18(a)</u>.

"***Assumed Liabilities***" is defined in <u>Section 11.1</u>.

"***Avoidance Action***" means any avoidance, preference, recovery, claim, right or cause of action of any Seller arising under Chapter 5 of the Bankruptcy Code or under any analogous state or federal bankruptcy or non-bankruptcy laws.

"***Backstop Commitment Letters***" means the Second Lien Backstop Commitment Letter, the FLTL ERO Backstop Agreement and the SLTL ERO Backstop Agreement.

"***Backstop Commitment Premium Equity Interests***" has the meaning set forth in the Plan.

"***Balance Sheet Date***" is defined in <u>Section 4.27</u>.

"***Bankruptcy Cases***" is defined in the recitals.

"***Bankruptcy Code***" is defined in the recitals.

"***Bankruptcy Court***" is defined in the recitals.

"***Bankruptcy Rules***" is defined in the recitals.

"**BOEM**" means the Bureau of Ocean Energy Management or any successor agency thereto.

"**BOEM Qualifications**" means the Person has received a GOM qualification number from BOEM, and is able to bid on, own and hold a lease on the Outer Continental Shelf, Gulf of Mexico region.

"**BSEE**" means the Bureau of Safety and Environmental Enforcement or any successor agency thereto.

"**Business Day**" means any day other than a Saturday, a Sunday or any other day on which banking institutions in, New York, New York or Houston, Texas, are required or authorized by Law or executive order to be closed.

"**Buyer**" is defined in the preamble.

"**Buyer 2**" is defined in the preamble.

"**Buyer Grandparent**" is defined in Section 5.11(b).

"**Buyer Grandparent Equity Interests**" is defined in Section 5.1(c).

"**Buyer Intermediate**" is defined in Section 5.1(b).

"**Buyer Obligation**" is defined in Section 2.1(c).

"**Buyer Parent**" is defined in Section 5.1(b).

"**Buyer Parent Debt**" is defined in Section 2.1(c).

"**Cash Portion**" means an amount in cash (which amount shall not exceed the proceeds of (x) the Second Lien Exit Facility (as defined in the Plan) plus (y) the proceeds of the Equity Rights Offerings (as defined in the Plan), less (z) $120,000,000; *provided*, that the amount in (z) may be reduced to an amount not less than $100,000,000 in the sole and absolute discretion of the Buyer), equal to (a) the Effective Date Cash Obligations Amount, less (b) the Closing Cash Amount.

"**Casualty Event**" means (a) any fire, explosion, accident, earthquake, act of the public enemy, act of God or other similar event or occurrence that results in damage to or the destruction of any Acquired Interest and (b) any taking, or threatened taking, of any Acquired Interest by condemnation or under the right of eminent domain.

"**CERCLA**" is defined in the definition of Environmental Contaminants.

"**Claims**" means any and all claims, demands, Encumbrances, notices of non-compliance or violation, notices of Liability or potential Liability, investigations, incidents of non-compliance (INCs), actions (whether judicial, administrative or arbitrational), causes of action, suits, proceedings and controversies.

"**Closing**" means the consummation of the transactions contemplated in this Agreement.

"**Closing Accounts Receivable**" means all current assets of the Sellers as of the Effective Time that are included in the Working Capital Assets, other than such current assets attributable to the Acquired Interests.

"**Closing Accounts Receivables Statement**" is defined in Section 10.12(a).

"**Closing Cash Amount**" means the amount of cash in accounts of the Sellers as of immediately prior to the Effective Time, excluding all restricted cash (restricted cash includes, for the avoidance of doubt, all Suspense Funds, Excluded Suspense Funds, Prepaid JOA Funds, Excluded Prepaid JOA Funds, Undisbursed Revenue and Excluded Undisbursed Revenue), as determined in good faith by the Sellers and Buyer in accordance with GAAP.

"**Closing Date**" is defined in Section 9.1.

"**COBRA**" means Section 4980B of the Code and Sections 601 through 608 of ERISA.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company Group**" means any group of entities filing Tax Returns on an affiliated, combined, consolidated, unitary or similar basis for Tax purposes that, at any time on or before the Closing Date, includes or has included Fieldwood U.A. or Fieldwood Mexico or any of their respective Subsidiaries.

"**Confidential Information**" is defined in Section 10.5.

"**Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means an order of the Bankruptcy Court in form and substance, including with respect to (i) all findings of fact and conclusions of law and (ii) the matters described in Section 2.3 through Section 2.5, acceptable to Fieldwood and the Buyer, confirming the Plan and, without limitation to the generality of the foregoing, such Confirmation Order shall provide that the transfer of the Acquired Interests to Buyer shall be, pursuant to, inter alia, Sections 105, 363, 365, 1123(a)(5)(b), 1129, 1141 and 1146 of the Bankruptcy Code, free and clear of any and all Encumbrances (other than Permitted Encumbrances (except for the Fieldwood U.A. Interests and the JV Interests, which shall not have any Permitted Encumbrances)) and Retained Liabilities, which Confirmation Order shall be subject to the consent rights set forth in the Restructuring Support Agreement.

"**Confirmation Outside Date**" has the meaning set forth in the Plan.

"**Consent**" is defined in the definition of Applicable Consent.

"**Consenting Creditors**" has the meaning set forth in the Plan.

"**Consideration**" is defined in Section 2.1(a).

"*Contracts*" means any agreement, license, lease, sublease, sublicense, contract, promise, obligation, sale or purchase order, service order, indenture, note, bond, loan, mortgage, deed of trust, instrument, commitment or undertaking, including any exhibits, annexes, appendices or attachments thereto, and any amendments, modifications, supplements, extension or renewals thereto, but excluding, however (a) any Lease, easement (including the Easements), right-of-way or other instrument, in each case, creating any oil and gas mineral interest or other real property interests and (b) any Permit.

"*Conveyed*" means conveyed, assigned, or sold pursuant to the Apache PSA, regardless of whether such conveyance, assignment, or bill of sale was recorded in the appropriate records of, or approved or recognized by, any applicable Governmental Authority.

"*Co-Owned Assets*" is defined in Section 1.2.

"*Co-Owned Assigned Contracts*" means the Assigned Contracts relating to any Co-Owned Lease, Co-Owned Subject Unit, Co-Owned Easement or Co-Owned Inventory.

"*Co-Owned Easements*" is defined in Section 1.2(c).

"*Co-Owned Field Assets*" means the Co-Owned Leases, Co-Owned Subject Units, Co-Owned Easements, Co-Owned Wells and Co-Owned Inventory.

"*Co-Owned Field Data*" is defined in Section 1.2(j).

"*Co-Owned Inventory*" is defined in Section 1.2(e).

"*Co-Owned Leases*" is defined in Section 1.2(a).

"*Co-Owned Records*" is defined in Section 1.2(k).

"*Co-Owned Scheduled Wells*" is defined in Section 1.2(d).

"*Co-Owned Subject Unit*" is defined in Section 1.2(b).

"*Co-Owned Subject Unit Agreement*" is defined in Section 1.2(b).

"*Co-Owned Wells*" is defined in Section 1.2(d).

"*Credit Agreement*" means that certain *Amended and Restated First Lien Credit Agreement*, dated as of April 11, 2018, by and among Fieldwood, as borrower, Fieldwood Energy Inc., as holdings, Cantor Fitzgerald Securities, as the administrative agent and collateral agent, the lenders party thereto, and the other parties thereto, as amended, restated, amended and restated, supplemented, or otherwise modified.

"*Credit Bid and Release*" is defined in Section 2.1(a)(1).

"*Credit Bid and Release New Equity Interests*" means the New Equity Interests being distributed to the holders of Allowed FLTL Secured Claims (as defined in the Plan) pursuant to the Plan.

"**Cure Costs**" means, with respect to any given 365 Contract, all monetary liabilities, including pre-petition monetary liabilities, of the Sellers that must be paid or otherwise satisfied to cure all of the Sellers' monetary defaults under such 365 Contract pursuant to Section 365 of the Bankruptcy Code in order for such 365 Contract to be assumed and assigned to Buyer (if applicable) as provided hereunder, as such amounts are determined by the Bankruptcy Court or approved pursuant to the assignment and assumption procedures provided for in the Plan, Confirmation Order, or herein.

"**D&O Indemnified Liabilities**" is defined in Section 10.13(a).

"**D&O Indemnified Parties**" is defined in Section 10.13(a).

"**Data Obligations**" is defined in Section 4.25(i).

"**Debtors**" is defined in the recitals.

"**Decommissioning**" has the meaning ascribed to such term in the Decommissioning Agreement.

"**Decommissioning Agreement**" means that Decommissioning Agreement, dated as of September 30, 2013, by and among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood and GOM Shelf, as amended.

"**Delayed Asset**" is defined in Section 2.3(b).

"**Designation Deadline**" is defined in Section 6.7(c).

"**DIP Facility Credit Agreement**" means that certain *Senior Secured Debtor-in-Possession Term Loan Credit Agreement*, dated as of August 24, 2020, by and among Fieldwood, as borrower, Fieldwood Energy Inc., as holdings, Cantor Fitzgerald Securities, as the administrative agent and collateral agent, the lenders party thereto, and the other parties thereto, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

"**Direction Letter**" is defined in the recitals.

"**Disclosure Schedules**" is defined in Section 12.15.

"**Disclosure Statement**" means the Disclosure Statement For Joint Chapter 11 Plan Of Fieldwood Energy LLC And Its Affiliated Debtors, as may be amended, modified, or supplemented from time to time in form and substance acceptable to the Debtors, the Required DIP Lenders, and the Requisite FLTL Lenders.

"**Disclosure Statement Order**" means an order of the Bankruptcy Court approving the Disclosure Statement.

"**Divisive Merger**" has the meaning set forth in the Plan.

"**Divisive Merger Effective Time**" means the effective time of the Divisive Merger.

"*Easements*" means the Co-Owned Easements and Other Easements.

"*Effective Date*" means the "*Effective Date*" of the Plan.

"*Effective Date Cash Obligations*" means the Sellers' obligations under the Confirmation Order, the Plan, the Plan of Merger and the transactions contemplated thereby and this Agreement, including, without limitation, collectively: (i) the DIP Claims (as defined in the Plan) and related fees and expenses as provided in Section 2.4 of the Plan, (ii) the FLFO Distribution Amount (as defined in the Plan), (iii) the Professional Fee Escrow Amount (as defined in the Plan), (iv) the Restructuring Expenses (as defined in the Plan), (v) any Allowed Postpetition Hedge Claims, (vi) any Cure Amounts (as defined in the Plan), (vii) any Allowed Administrative Expense Claims (as defined in the Plan) not otherwise included in the other subsections of this definition, (viii) any Allowed Priority Tax Claims (as defined in the Plan), (ix) any Allowed Priority Non-Tax Claims (as defined in the Plan), (x) any Allowed Other Secured Claims (as defined in the Plan), (xi) the Plan Administrator Expense Reserve Amount (as defined in the Plan), (xii) the FWE I Cash Amount (as defined in the Plan of Merger), (xiii) an amount for the initial capitalization of Fieldwood Energy III as determined by the Sellers and the Majority Backstop Parties (as defined in the Second Lien Backstop Commitment Letter), (xiv) any cash distributions to holders of Allowed Unsecured Trade Claims (as defined in the Plan), (xv) any other amounts as agreed between the Sellers and the Required DIP Lenders (as defined in the Plan) and the Requisite FLTL Lenders (as defined in the Plan), (xvi) amounts due or to become due after the Closing pursuant to any Governmental Settlement Agreement and (xvii) the amounts of any Claims asserted prior to the Closing with respect to facts and circumstances existing prior to the Closing (except to the extent such amounts constitute general unsecured claims of the Sellers), including, but not limited to, (1) Claims for personal injury or damage to third party property (but with respect to such Claims that are covered by insurance policies, including for the avoidance of doubt, such Claims for personal injury or damage to third party property only to the extent of the applicable deductible or retention amount under the applicable insurance policies covering such Claims) and (2) fines and penalties related to such Claims, including Claims described in the preceding clause (1) (except to the extent such Claims or related Liabilities (x) constitute Assumed Liabilities or (y) are satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order), in each case of <u>clauses (i)</u> through <u>(xvii)</u> solely to the extent not paid by the Sellers prior to Closing.

"*Effective Date Cash Obligations Amount*" means the amount of cash necessary to satisfy the Effective Date Cash Obligations, as determined in good faith by the Sellers and Buyer.

"*Effective Time*" is defined in <u>Section 1.4</u>.

"*Employee List*" is defined in <u>Section 4.17(a)</u>.

"*Employee Plan*" is defined in <u>Section 4.18(a)</u>.

"*Employee Severance*" is defined in <u>Section 6.8(c)</u>.

"*Employment Agreements*" is defined in <u>Section 6.22</u>.

"*Encumbrance*" means any encumbrance, license, right of first refusal, mortgage, deed of trust, pledge, security interest, lien, privilege, charge of any kind (including any agreement to grant any of the foregoing), adverse claim of any kind, capital lease, conditional sale or title retention agreement, lease or sublease in the nature thereof or the filing of or agreement to give any financing statement under the Uniform Commercial Code of any jurisdiction.

"*End Date*" is defined in Section 8.1(b)(i).

"*Environmental Contaminants*" means "hazardous substances" and "pollutants or contaminants" as those terms are defined in Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act ("*CERCLA*"), petroleum, including any fraction thereof, any "natural gas, natural liquids, liquefied natural gas, or synthetic gas usable for fuel" as those terms are used in Section 101 of CERCLA, any "solid or hazardous waste" as those terms are defined or used in the Resource Conservation and Recovery Act and any industrial or oil and gas wastes regulated by applicable rules of any relevant Governmental Authority.  The term also includes NORM concentrated, disposed of, released from or present on any Field Assets or resulting from or in association with Hydrocarbon activities on any Field Assets.

"*Environmental Law*" means all applicable Laws (including the CERCLA, the Resource Conservation and Recovery Act, the Oil Pollution Act of 1990 and such other applicable Laws relating to the Release, management or disposal of Environmental Contaminants including oilfield waste, in each case as amended from time to time) relating to the protection of the environment or protection of human health (to the extent relating to exposure to Environmental Contaminants).

"*Equity Rights Offerings*" has the meaning set forth in the Plan.

"*Equity Rights Offering New Equity Interests*" means the New Equity Interests issuable upon exercise of the FLTL Subscription Rights and SLTL Subscription Rights in accordance with the Plan.

"*ERISA*" means the Employee Retirement Income Security Act of 1974, as amended.

"*ERISA Affiliate*" is defined in Section 4.18(a).

"*Excluded Assets*" is defined in Section 1.3.

"*Excluded Contracts*" is defined in Section 6.7(c).

"*Excluded Prepaid JOA Funds*" means any funds received by the Sellers (in their capacity as operator of any Excluded Assets) on account of working interest owners in Excluded Assets as prepayments for items under operating or other agreements.

"*Excluded Suspense Funds*" means those proceeds of production and associated penalties and interest in respect of any Excluded Assets or any Hydrocarbons produced from or attributable to any Excluded Assets that belong to one or more Third Persons and are being held in suspense by any Seller or any Affiliate thereof.

"***Excluded Undisbursed Revenue***" means those proceeds of production and associated penalties and interest in respect of any Excluded Assets or any Hydrocarbons produced from or attributable to any Excluded Assets that belong to one or more Third Persons and have been received by, and at the Closing are being held by, the Sellers on account of such Third Persons for disbursement to such Third Persons after the Closing.

"***Execution Date***" is defined in the preamble.

"***Existing D&O Indemnification Terms***" is defined in Section 10.13(a).

"***Farmout Agreement***" means that Farmout Agreement by and among Fieldwood Energy I, GOM Shelf and Buyer, in the form attached hereto as **Exhibit T**.

"***FCPA***" is defined in Section 4.26.

"***Field Assets***" means the Leases, Subject Units, Easements, Wells and Inventory.

"***Field Data***" means the Co-Owned Field Data and Other Field Data.

"***Fieldwood***" is defined in the preamble.

"***Fieldwood Energy I***" means a Texas limited liability company to be formed pursuant to the Plan of Merger under the name Fieldwood Energy I LLC (or such other name as may be substituted therefor in the final, as filed version of the Plan of Merger).

"***Fieldwood Energy I Closing Accounts Payable***" means, whether classified on the books and records of the Sellers as an account payable or otherwise, expenses of the Sellers incurred by any Seller as of the Effective Time but not yet paid as of the Effective Time and attributable to the FWE I Oil and Gas Properties and the GOM Shelf Oil and Gas Properties, including, without limitation:

       (a)     payables arising from the exploration of and production and sale of oil and gas from the FWE I Oil and Gas Properties and the GOM Shelf Oil and Gas Properties;

       (b)     payables to third parties on account of third party working interest owners to the extent that there is a corresponding joint interest billing receivable included in the Fieldwood Energy I Closing Accounts Receivable;

       (c)     obligations for Royalties in respect of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties payable on account of Hydrocarbons produced from the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties and sold prior to and unpaid as of the Effective Time (*provided* that if a Royalty reporting, miscalculation, or underpayment claim is asserted after the Effective Time with respect to any Royalty paid prior to the Effective Time such claim or obligation shall not be deemed a Fieldwood Energy I Closing Accounts Payable except to the extent any such reporting, miscalculation, or underpayment claim (i) totals more than $1,000,000, (ii) arises out of the willful misconduct of the person or persons performing such reporting, calculations, or payments as determined by a final, non-appealable

judgment of a court or other tribunal having jurisdiction) and (iii) is asserted within three (3) years of the Closing Date;

(d)      the GOM Shelf and FW GOM Pipeline Payables;

*provided*, that, Fieldwood Energy I Closing Accounts Payable shall exclude:

(i)      obligations for FWE I Suspense Funds, Excluded Suspense Funds and Excluded Prepaid JOA Funds;

(ii)      Interim Unpaid P&A Expenses;

(iii)      obligations to pay Royalties on Hydrocarbons produced from FWE I Oil and Gas Properties or GOM Shelf Oil and Gas Properties and sold from and after the Effective Date;

(iv)      payables to third parties on account of third party working interest owners other than those described in clause (b) above;

(v)      any Royalty reporting, miscalculation, or underpayment claim in respect of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties payable on account of Hydrocarbons produced from the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties except as described in clause (c) above;

(vi)      any fines or penalties levied or imposed by governmental authorities prior to the Effective Time with respect to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties;

(vii)      P&A Obligations and Decommissioning expenses; and

(viii)      obligations satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order.

"***Fieldwood Energy I Closing Accounts Receivable***" means all accounts, notes and other receivables of the Sellers attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties as of the Effective Time, including all accounts, notes and other receivables attributable to the sale of oil or gas produced and sold from the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties prior to or as of the Effective Time and joint interest billing receivables for expenses paid by the Sellers as of the Effective Time or for which a payable is included in the Fieldwood Energy I Closing Accounts Payable; *provided* "Fieldwood Energy I Closing Accounts Receivable" shall exclude the Specified Excluded Receivables.

"***Fieldwood Energy III***" means Fieldwood Energy III LLC, a Texas limited liability company.

"***Fieldwood Mexico***" means Fieldwood Mexico B.V., a Dutch private company.

"***Fieldwood U.A.***"  means Fieldwood Coöperatief U.A.

"***Fieldwood U.A. Interests***" is defined in <u>Section 1.2(oo)</u>.

"***Final Allocation***" is defined in <u>Section 2.2</u>.

"***Final Order***" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has:  (a) not been reversed, stayed, modified or amended, as to which the time to appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration or rehearing has been timely filed; or (b) as to which any appeal, petition for certiorari or motion for reargument, reconsideration or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration or rehearing was sought; *provided*, *however*, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in such other court of competent jurisdiction) may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

"***Financial Statements***" means (a) the consolidated quarterly financial statements (unaudited) of Sellers for the fiscal quarter ended September 30, 2020 and the elapsed portion of the fiscal year then ended and (b) the consolidated annual financial statements of Sellers for the year ended December 31, 2019.

"***FLTL ERO Backstop Agreement***" has the meaning set forth in the Plan.

"***FLTL Subscription Rights***" means the "FLTL Subscription Rights" as defined in the Plan.

"***Foreign Antitrust Approvals***" is defined in <u>Section 6.5(a)</u>.

"***Fourth Amendment to Office Sublease***" is defined in the definition of Office Sublease.

"***Fraud***" means common law fraud and requires (a) a false representation with respect to a representation or warranty made by Sellers in <u>Article IV</u> or any certificate delivered by Sellers hereunder, (b) knowledge or belief that the representation was false when made, (c) with intent to induce, and (d) justifiable reliance upon the representation (it being acknowledged that each of Buyer and Buyer 2 has relied on each of the representations in <u>Article IV</u> and the certificates delivered hereunder).

"***Fundamental Representations***" means the representations and warranties set forth in <u>Section 4.1</u>, <u>Section 4.2</u>, <u>Section 4.3(a)</u>, <u>Section 4.4</u>, <u>Section 4.5</u>, <u>Section 4.31(a)</u> and <u>Section 4.31(f)</u>.

"***Funding Agreement***" means a Funding Agreement by and between Buyer and Fieldwood, in the form attached hereto as **<u>Exhibit W</u>**.

"***FW GOM Pipeline***" is defined in the preamble.

"*FWE I Assets*" has the meaning set forth in Part A of Schedule I to the Plan of Merger as of the date hereof as reflected in the Plan of Merger as it exists on the date hereof but excluding the Specified Oil and Gas Interests and the Specified P&A Equipment.

"*FWE I Obligations*" has the meaning set forth in Part B of Schedule I to the Plan of Merger.

"*FWE I Oil and Gas Properties*" has the meaning set forth in Part A of Schedule I to the Plan of Merger as of the date hereof as reflected in the Plan of Merger as it exists on the date hereof but excluding the Specified Oil and Gas Interests.

"*FWE I Suspense Funds*" means all funds held in suspense (i) by Fieldwood to the extent attributable to any of the FWE I Assets and (ii) by GOM Shelf, and any interest accrued in escrow accounts for such suspended funds.

"*GAAP*" means generally accepted accounting principles in the United States of America, consistently applied.

"*GOM Shelf*" is defined in the preamble.

"*GOM Shelf and FW GOM Pipeline Payables*" means the payables of GOM Shelf and FW GOM Pipeline as of the Effective Time (as determined consistent with the definition of Fieldwood Energy I Closing Accounts Payable).

"*GOM Shelf Oil and Gas Properties*" has the meaning set forth in the Plan of Merger as of the date hereof as reflected in the Plan of Merger as it exists on the date hereof but excluding the Specified Oil and Gas Interests.

"*Governmental Approval*" means any authorization, consent, approval, exemption, franchise, permit or license of, or filing with, or notice or any other action by, any relevant Governmental Authority.

"*Governmental Authority*" means any transnational, domestic or foreign governmental or quasi-governmental federal, state, provincial, county, city, regulatory or administrative authority or other political subdivision or any officer, department, bureau, agency, commission, court or other statutory or regulatory body or instrumentality thereof.

"*Governmental Settlement Agreement*" is defined in Section 6.17.

"*GUC Warrants*" has the meaning set forth in the Plan.

"*Hedges*" is defined in Section 1.2(hh).

"*HSR Act*" means the Hart-Scot-Rodino Antitrust Improvements Act of 1976, and the rules and regulations promulgated thereunder.

"*Hydrocarbons*" is defined in Section 1.2(g).

"*Imbalance*" means (a) any imbalance between (i) the quantity of Hydrocarbons produced from any well and allocated to a Person from time to time and (ii) the share of such production to which such Person is actually entitled by virtue of its ownership interest in such well or in the lease or unit under which such well is produced and (b) any imbalance between (i) the quantity of Hydrocarbons produced from any oil and gas asset and actually delivered from a Third Person pipeline and allocated to a Person from time to time and (ii) the share of such Hydrocarbons to which such Person is actually entitled to receive from such Third Person pipeline.

"*Implementation Agreement*" means that certain Apache Term Sheet Implementation Agreement dated January 1, 2021, by and between Fieldwood, GOM Shelf, Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC.

"*Indemnification Claim*" is defined in Section 13.3(a).

"*Indemnified Party*" means a Party entitled to indemnification under this Agreement, whether on behalf of itself or, with respect to the Sellers, any of the Seller Indemnified Parties.

"*Indemnifying Party*" means a Party from whom indemnification is sought under this Agreement by an Indemnified Party.

"*Indemnitors*" is defined in Section 10.13(b).

"*Initial Allocation*" is defined in Section 2.2.

"*Intellectual Property*" means any and all intellectual property rights or industrial property rights throughout the world, including all (a) national and multinational statutory invention registrations, patents and patent applications of any type issued or applied for in any jurisdiction, including all provisionals, divisions, continuations, continuations-in-part, reissues, extensions, re-examinations and the equivalents of any of the foregoing in any jurisdiction, and all inventions disclosed in each such registration, patent or patent application, (b) trademarks, service marks, trade dress, logos, brand names, certification marks, domain names, trade names, corporate names and other indications of origin, whether or not registered, in any jurisdiction, and all registrations and applications for registration of the foregoing in any jurisdiction, and all goodwill associated with the foregoing (collectively, "*Trademarks*"), (c) copyrights (whether or not registered) and registrations and applications for registration thereof in any jurisdiction, including all derivative works, moral rights, renewals, extensions, reversions or restorations associated with such copyrights, regardless of the medium of fixation or means of expression, (d) trade secrets, information, data, specifications, processes, methods, know-how, formulae, techniques, schematics, drawings, blueprints, utility models, designs, technology, software, inventions, discoveries, ideas and improvements, including manufacturing information and processes, engineering and other manuals and drawings, standard operating procedures, flow diagrams, technical information, research records and similar data and information, (e) database rights, industrial designs and industrial property rights and (f) the right to assert, claim or sue and collect damages for the past, present or future infringement, misappropriation or other violation of any of the foregoing.

"*Interim Period*" means the period from the Execution Date through and including the Closing Date.

"**Interim Unpaid P&A Expenses**" means all incurred but unpaid expenses incurred by Fieldwood for Plugging and Abandonment costs and expenses on the FWE I Oil and Gas Properties between the filing on August 3, 2020, of the Bankruptcy Cases and the Divisive Merger Effective Time to the extent not paid as of the Divisive Merger Effective Time.

"**Inventory**" means the Co-Owned Inventory and Other Inventory.

"**IRS**" means the Internal Revenue Service of the United States.

"**Joint Operating Agreement Amendment**" means the amendments to jointly owned properties operating agreements with respect to those Co-Owned Leases (or portion thereof) that are not subject to any Assigned Contract that is a joint operating agreement or unit operating agreement with one or more Third Persons, in each case that is in form and substance acceptable to Buyer.

"**JV Assignment Agreement**" means the Assignment Agreements (or equivalent) and related instruments to be entered into at Closing by the parties thereto with respect to the transfer of the Fieldwood U.A. Interests and the JV Interests pursuant to this Agreement, in each case that is in form and substance acceptable to Buyer.

"**JV Interests**" is defined in Section 1.2(oo).

"**JV Shares**" is defined in Section 4.31(c).

"**Knowledge**" means (a) with respect to Buyer and Buyer 2, the actual knowledge of any executive officer of Buyer or Buyer 2, as applicable, and (b) with respect to the Sellers, the actual knowledge of Thomas Lamme, Mike Dane, William Swingle, Patrick Eiland and John Seeger.

"**Lafayette Lease Agreement**" means that certain Lease Agreement dated as of April 5, 2017, between Fieldwood and Ronnie White Custom Homes, L.L.C.

"**Law**" means all laws, constitutions, treaties, statutes, ordinances, rules, regulations, codes, orders, judgments, decrees, orders, writs, injunctions and decisions of any Governmental Authority, or having the effect of law in any applicable jurisdiction, including all principles of common law.

"**Lease Burdens**" means all royalties, overriding royalties, production payments, carried interests, net profits interests, reversionary interests and similar contractual burdens upon, payable out of or measured by Hydrocarbons produced from or allocated to a Lease; and all rentals, shut-in royalties, minimum royalties and bonus payments under a Lease.

"**Leases**" means the Co-Owned Leases and Other Leases.

"**Liability**" means any debt, Loss, obligation, duty, commitment, demand, responsibility, suit, judgment, undertaking, royalty, deficiency or obligation (including those arising out of any action, such as any settlement or compromise thereof or judgment or award therein), Claim or Encumbrance of any kind or nature whatsoever whether known or unknown, disclosed or undisclosed, expressed or implied, primary or secondary, direct or indirect, matured or unmatured,

determined or indeterminable, disputed or undisputed, secured or unsecured, joint or several, asserted or unasserted, fixed, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, whether due or to become due, whether in contract, tort or otherwise, and whether or not required to be accrued on the financial statements of any entity or individual, including those arising under any Law, or imposed by any Governmental Authority or arbitrator of any kind.

"*Licensed Intellectual Property*" means any and all Intellectual Property (a) owned by a Third Person and licensed or sublicensed to a Seller or for which a Seller has obtained a covenant not to be sued, in each case, under an Assigned Contract and (b) related to the ownership or operation of the Acquired Interests.

"*Liquidating Trust*" means a liquidating or similar trust as may be established with respect to Sellers' estates in conjunction with the Bankruptcy Cases.

"*Liquidating Trustee*" means the trustees or other representative of the Liquidating Trust.

"*Losses*" and "*Loss*" means any and all losses, judgments, damages, liabilities, injuries, costs, interest, taxes, settlements, penalties and fines or expenses (including any incidental, indirect or consequential damages, losses, liabilities or expenses, and any lost profits or diminution in value). As used herein, the term "Losses" includes reasonable attorneys' fees and other costs and expenses of any Party entitled to defense or indemnity hereunder incident to (a) the investigation and defense of any Claim that results in litigation or the settlement of any Claim or (b) the enforcement of such defense or indemnity rights under this Agreement.

"*Lubrizol Sublease*" means that certain Sublease, dated December 22, 2018, by and between The Lubrizol Corporation, as sublandlord, and Fieldwood Energy LLC, as subtenant, for Suite 320 in the building known as One Briarlake Plaza and located at 2000 W. Sam Houston Parkway South, Houston, Texas, and that certain Consent to Sublease, effective as of January 29, 2019.

"*Material Adverse Effect*" means a result, event, occurrence, change, circumstance, development or consequence that, individually or in the aggregate, would reasonably be expected to (a) materially and adversely affect the value, condition (financial or otherwise) or results of operations of the Acquired Interests taken as a whole or (b) materially and adversely affect the ability of the Sellers to perform their obligations under this Agreement or the documents executed in connection herewith or consummate the transactions contemplated herein and therein; *provided*, that, with respect to <u>clause (a)</u> only, any result, event, occurrence, change, circumstance, development or consequence to the extent resulting from any of the following matters shall not be taken into account in determining whether a Material Adverse Effect has occurred: (i) changes in financial or securities markets generally; (ii) changes in general economic or political conditions in the United States or worldwide; (iii) changes in conditions or developments generally applicable to the oil and gas industry in the area where the Acquired Interests are located, including, but not limited to, changes in the market price of oil and natural gas; (iv) actions taken after the date of this Agreement as required by this Agreement or with the written consent of Buyer; (v) the commencement or pendency of the Bankruptcy Cases and any adverse effects resulting therefrom, (vi) entering into this Agreement or the announcement of the transactions contemplated hereby (provided, that this <u>clause (vi)</u> shall not be excluded with respect to the representations and

warranties and related conditions contained in this Agreement that address the consequences of the execution, announcement or performance of this Agreement or the consummation of the transactions contemplated hereby); (vii) acts of God, including hurricanes, storms or other naturally occurring events; (viii) acts or failures to act of Governmental Authorities, except as a result of any action or inaction by or on behalf of the Sellers; **[(ix) matters expressly disclosed on any Exhibit or Annex to this Agreement or in the Disclosure Schedules]**; (x) any epidemic, pandemic or disease outbreak (including the COVID-19 virus) or hostilities, terrorist activities or war or any similar disorder and, in each case, governmental actions related thereto; (xi) matters that are cured or no longer exist by the earlier of Closing and the termination of this Agreement; (xii) any change in laws or in GAAP and any interpretations thereof from and after the Execution Date; (xiii) any reclassification or recalculation of reserves in the ordinary course of business; (xiv) natural declines in well performance; (xv) the departure of officers or directors of the Sellers after the Execution Date; (xvi) any objections in the Bankruptcy Court to (A) this Agreement and the other Ancillary Documents and the transactions contemplated hereby and thereby, (B) the reorganization of any Seller and any related plan of reorganization or disclosure statement or (C) the Plan of Merger or transactions contemplated thereby; and (xvii) any order of the Bankruptcy Court (except any such order that would preclude or prohibit the Sellers from consummating the transactions contemplated by this Agreement) or any actions or omissions of the Sellers in compliance therewith; *provided*, that, with respect to <u>clauses (i)</u> through <u>(iii)</u>, <u>(vii)</u>, <u>(viii)</u>, <u>(x)</u> and <u>(xii)</u> any such result, event, occurrence, change, circumstance, development or consequence shall not be disregarded to the extent that it has had a disproportionate effect on the Acquired Interests relative to similar oil and gas assets in the Gulf of Mexico held by other participants in the industries in which the Acquired Interests are operated.

"***Material Contract***" is defined in <u>Section 4.14(a)</u>.

"***Mexico JV***" is defined in <u>Section 1.2(oo)</u>.

"***Net Revenue Interest***" means, with respect to each Lease and Scheduled Well, the interest in and to all Hydrocarbons produced and saved from or attributable to such Lease or Scheduled Well, after giving effect to all valid Lease Burdens, carried interests, reversionary interests and other similar interests constituting burdens upon, measured by or payable out of Hydrocarbons produced and saved from or attributable to such Lease or Scheduled Well.

"***New Equity Interests***" has the meaning set forth in the Plan.

"***New Money Warrants***" has the meaning set forth in the Plan.

"***Non-Recourse Party***" is defined in <u>Section 12.14</u>.

"***Non-Transferred Asset***" is defined in <u>Section 10.3(b)</u>.

"***NORM***" means naturally occurring radioactive material.

"***Notice***" is defined in <u>Section 12.2</u>.

"***NPA***" means that certain Non-Prosecution Agreement dated as of February 9, 2021, entered into between Fieldwood and the United States Attorney's Office for the Eastern District of Louisiana.

"***Office Assets***" is defined in Section 1.2(ee).

"***Office Assets Conveyance***" means that Bill of Sale, Assignment and Assumption Agreement to be entered into at the Closing by the parties thereto, in the form attached as **Exhibit K** hereto.

"***Office Sublease***" means that certain Sublease Agreement, dated as of September 30, 2013, between Apache Corporation, as sublessor, and Fieldwood, as sublessee, for space in the building known as One BriarLake Plaza located at 2000 West Sam Houston Parkway South, Houston, Texas, as amended by (i) First Amendment to Sublease Agreement, dated as of January 2, 2014, (ii) Second Amendment to Sublease Agreement, dated as of September 7, 2017, (iii) Third Amendment to Sublease Agreement, dated as of May 28, 2018, and (iv) Fourth Amendment to Sublease, dated as of _____ ___, 2020 (the "***Fourth Amendment to Office Sublease***").

"***Organizational Documents***" is defined in Section 4.31(b).

"***OSFR***" means Oil Spill Financial Responsibility.

"***Other Assets***" is defined in Section 1.2(o).

"***Other Assigned Contracts***" means all Assigned Contracts other than the Co-Owned Assigned Contracts.

"***Other Easements***" is defined in Section 1.2(r).

"***Other Field Assets***" means the Other Leases, Other Subject Units, Other Easements, Other Wells and Other Inventory.

"***Other Field Data***" is defined in Section 1.2(x).

"***Other Inventory***" is defined in Section 1.2(t).

"***Other Leases***" is defined in Section 1.2(p).

"***Other Records***" is defined in Section 1.2(y).

"***Other Scheduled Wells***" is defined in Section 1.2(s).

"***Other Subject Unit***" is defined in Section 1.2(q).

"***Other Subject Unit Agreement***" is defined in Section 1.2(q).

"***Other Wells***" is defined in Section 1.2(s).

"**Owned Intellectual Property**" means any and all Intellectual Property (except for Trademarks) (a) owned or purported to be owned by any Seller and (b) related to the ownership or operation of the Acquired Interests.

"**P&A Obligations**" means any and all obligations, liabilities, damages, losses, and claims arising out of or attributable to the payment or performance of all Plugging and Abandonment.

"**Parties**" and "**Party**" are defined in the preamble.

"**Permit**" means any permit, license, authorization, certificate, registration, franchise, exemptions, waiver, consent, approval or other similar rights or privileges granted by any Governmental Authority.

"**Permitted Encumbrances**" means:

(a)    easements, restrictive covenants, servitudes, permits, surface leases and other rights with respect to surface operations, and rights-of-way on, over or in respect of any of the Acquired Interests that, singularly or in the aggregate, do not prevent or materially interfere with the ownership, value or operation of the affected Acquired Interests and which are of a nature that would be reasonably acceptable to a prudent owner or operator of oil and gas properties;

(b)    all applicable Laws and all rights reserved to or vested in any Governmental Authority: (1) to control or regulate the Assets in any manner, (2) by the terms of any right, power, franchise, grant, license or Permit issued by any Governmental Authority, or by any provision of applicable Law, to terminate such right, power, franchise, grant, license or permit or to purchase, condemn, expropriate or recapture or to designate a purchaser of any Asset; (3) to use such Asset in a manner which does not materially impair the use of such property for the purposes for which it is currently owned and operated; or (4) to enforce any obligations or duties affecting the Assets to any Governmental Authority with respect to any franchise, grant, license or permit, excluding in each case of <u>clauses (1)</u> through <u>(4)</u> any such rights or Laws resulting from any breach, default, violation or non-compliance with any Law or Permit;

(c)    the terms, conditions, restrictions, exceptions, reservations, limitations and other matters (including dedications thereof) contained in (1) the Leases, (2) the Assigned Contracts, (3) the Preferential Rights disclosed on **Schedule 4.8(a)**, and (4) the Easements, but excluding in each case of <u>clauses (1)</u> through <u>(4)</u> any such terms, conditions, restrictions, reservations, exceptions, limitations or other matters resulting from any breach, violation, default or non-compliance;

(d)    Encumbrances for Taxes or assessments not yet due and payable or, if due and payable, those Taxes or assessments that are being contested in good faith by proceedings diligently conducted in the normal course of business and for which adequate reserves have been established in accordance with applicable accounting principles;

(e)    mechanic's, materialmen's, carrier's, supplier's, vendor's, repairer's or other similar statutory Encumbrances arising in the ordinary course of business securing obligations that are (i) not yet delinquent or (ii) satisfied, settled, released or discharged pursuant to the Plan and Confirmation Order;

(f)     utility easements, restrictive covenants, zoning, entitlement, building, subdivision and other similar restrictions that, singularly or in the aggregate, do not prevent or materially interfere with the ownership, value or operation of the affected Acquired Interests and which are of a nature that would be reasonably acceptable to a prudent owner or operator of offshore oil and gas properties;

(g)     Encumbrances created by Buyer, Buyer 2 or any of their respective successors or assigns;

(h)     any lessor's, operator's, working interest owner's or other inchoate or undetermined Encumbrance or charge (whether statutory or contractual) constituting or securing the payment of Lease Burdens or of expenses which were or will be incurred in the ordinary course of business and incidental to the maintenance, development, production or operation of any Acquired Interest, to the extent the same are satisfied, settled, released or discharged pursuant to the Plan and Confirmation Order;

(i)     Lease Burdens, division orders, carried interests, rights to recoupment, unitization, pooling, proration and spacing designations, orders and agreements, reversionary interests, rights to take in kind, and any other similar Encumbrance;

(j)     any charge, equitable interest, privilege, lien, mortgage, deed of trust, production payment, option, pledge, collateral assignment, security interest, right of first refusal, restriction, encroachment, defect, or other arrangement substantially equivalent thereto, or other defect or irregularity of any kind, in each case, that will be permanently and fully extinguished with respect to the Acquired Interests pursuant to the Confirmation Order;

(k)     all Governmental Approvals in connection with the conveyance of the Acquired Interests, if the same are permitted to be received after Closing and are customarily sought and received after Closing;

(l)     such other defects or irregularities of title or encumbrances as Buyer or Buyer 2 may expressly waive in writing;

(m)     any maintenance of uniform interest provision in a joint or unit operating agreement if waived by the party or parties having the right to enforce such provision;

(n)     any Encumbrance affecting the Assets that is permanently and fully discharged by the Sellers at or prior to the Closing;

(o)     non-exclusive licenses of, to or under any Intellectual Property granted in the ordinary course of business;

(p)     rights of a common owner of any interest in rights-of-way, Permits or easements (including Easements) held by the Sellers and such common owner as tenants in common or through common ownership that, singularly or in the aggregate, do not prevent or materially interfere with the ownership, value or operation of the affected Acquired Interests;

(q)      any matters set forth on **Exhibit A** or **Exhibit C**, all litigation and claims set forth on **Schedule 4.6**, and all Imbalances set forth on **Schedule 4.15**; and

(r)      all depth restrictions or limitations applicable to any Acquired Interests to the extent set forth on **Exhibit A** or **Exhibit C**.

"***Person***" means any individual, corporation, limited liability company, partnership, trust, joint stock company, joint venture, association, unincorporated organization, Governmental Authority or any other form of entity.

"***Personal Information***" is defined in Section 4.25(i).

"***Petition Date***" means August 3, 2020.

"***Plan***" means the joint plan filed by the Debtors under chapter 11 of the Bankruptcy Code implementing the restructuring transactions, including the transaction contemplated in this Agreement, which plan shall be in substantially the same form and substance as the plan filed by the Debtors on January 1, 2021, at Docket No. 722 in the Bankruptcy Court, as may be amended, modified or supplemented by the Plan Supplement or otherwise from time to time in accordance with the Restructuring Support Agreement.

"***Plan of Merger***" means the form of Agreement and Plan of Merger of Fieldwood into Fieldwood Energy I and Fieldwood Energy III which is attached as Exhibit 5 to the Implementation Agreement.

"***Plan Supplement***" has the meaning set forth in the Plan.

"***Plugging and Abandonment***" and its derivatives mean all plugging, replugging, abandonment, re-plugging and re-abandonment, equipment removal, disposal, or restoration associated with the properties and assets included in or burdened by the FWE I Assets, including all plugging and abandonment, removal, dismantling, decommissioning, surface and subsurface restoration, site clearance, and disposal of the FWE I Oil and Gas Properties, well cellars, fixtures, platforms, caissons, flowlines, pipelines, structures, and personal property of whatever kind located on or under, related to, or associated with operations and activities conducted by whomever with respect to each of the FWE I Oil and Gas Properties, the flushing, pickling, burial, removal, and capping of all associated flowlines, field transmission and gathering lines, pit closures, the restoration of the surface, site clearance, any disposal of related waste materials and Environmental Contaminants and obligations to obtain plugging exceptions for any of the FWE I Oil and Gas Properties, with a current plugging exception, all in accordance with all applicable Laws, the terms and conditions of each of the FWE I Oil and Gas Properties, or similar leasehold interests, beneficial interests, easements and the FWE I Oil and Gas Properties.

"***Post-Closing Consent Period***" is defined in Section 2.3(d).

"***Post-Closing Tax Period***" means any taxable period beginning after the Closing Date and, with respect to a Straddle Period, the portion of such Straddle Period beginning after the Closing Date.

"***Pre-Closing Tax Period***" means any taxable period ending on or before the Closing Date and, with respect to a Straddle Period, the portion of such Straddle Period ending on and including the Closing Date.

"***Preferential Right***" means any preferential right to purchase, right of first refusal, right of first offer or similar right that is applicable to the Acquired Interests or the Assigned Contracts and the operation of which is triggered by the transactions contemplated in this Agreement.

"***Prepaid JOA Funds***" is defined in Section 10.2(b).

"***Production Taxes***" means any and all severance, production, gathering, Btu or gas, transportation, gross receipts, utility, excise and other similar taxes (other than Property-Related Taxes, Transfer Taxes and taxes based on or measured by income or gross or net worth) relating to the production, gathering or transportation of Hydrocarbons, or increases therein, and any interest or penalties thereon.

"***Property-Related Taxes***" means any and all ad valorem, property, generation, conversion, privilege, consumption, lease, transaction and other taxes, franchise fees, governmental charges or fees, licenses, fees, permits and assessments, or increases therein, and any interest or penalties thereon.

"***Records***" means the Co-Owned Records and Other Records.

"***Release***" means any release, disposal, spilling, leaking, pouring, emission, emptying, discharge, injection, escape, transmission, leaching or dumping, or any threatened release, of any Environmental Contaminants from, or related in any way to the use, ownership or operation of, the Acquired Interests.

"***Release Document***" means a Credit Bid and Release Agreement in the form attached hereto as **Exhibit S**.

"***Remaining Accounts***" is defined in Section 10.12(d).

"***Representatives***" means, with respect to a Person, the directors, managers, shareholders, members, partners, officers, employees, consultants, advisors, agents or other representatives, including legal counsel, accountants, investment bankers and financial advisors of (i) such Person, (ii) such Person's Affiliates, (iii) the successors and assigns of such Person and (iv) the successors and assigns of such Person's Affiliates; *provided* however that solely with respect to Buyer and Buyer 2, the term "Representatives" shall also include Davis Polk & Wardwell LLP.

"***Required Consent***" is defined in Section 2.3(b).

"***Restructuring Support Agreement***" means that certain *Restructuring Support Agreement*, dated as of August 4, 2020, by and among Fieldwood, certain of its affiliates specified therein, the Consenting Creditors, and Apache Corporation, as the same may be amended, restated, or otherwise modified in accordance with its terms.

"***Retained Liabilities***" is defined in Section 11.2.

"*Royalties*" means all minimum royalties, shut-in payments, royalties, overriding royalties, reversionary interests, net profits interests, production payments, carried interests, non-participating royalty interests, reversionary interests, and other royalty burdens and other interests payable out of production of Hydrocarbons from or allocated to the FWE I Oil and Gas Properties, the GOM Shelf Oil and Gas Properties, or the proceeds thereof to third parties.

"*RUE*" is defined in Section 10.14.

"*Section 6.8 Employee*" means each of those employees of Sellers specified on **[insert reference to email of counsel]**.

"*Scheduled Wells*" means the Co-Owned Scheduled Wells and Other Scheduled Wells.

"*Second Lien Backstop Commitment Letter*" has the meaning set forth in the Plan.

"*Seller*" and "*Sellers*" is defined in the preamble.

"*Seller Employees*" is defined in Section 4.17(a).

"*Seller Indemnified Parties*" is defined in Section 13.2.

"*Seller IT Assets*" means any and all computers, networks, systems, printers, software, firmware, middleware, servers, workstations, routers, hubs, switches, data communications lines, and all other information technology equipment, and all associated documentation, owned or purported to be owned by any Seller.

"*Seller Marks*" mean Trademarks owned by any Seller, including "Fieldwood," and any variations thereof.

"*Seller Related Parties*" is defined in Section 4.24.

"*SEMS Bridging Agreement*" means that Bridging Agreement by and among Buyer, Fieldwood Energy I and GOM Shelf, in the form attached hereto as **Exhibit Q**.

"*SLTL ERO Backstop Agreement*" has the meaning set forth in the Plan.

"*SLTL Subscription Rights*" has the meaning set forth in the Plan.

"*SLTL Warrants*" has the meaning set forth in the Plan.

"*Specified Excluded Receivables*" means each of the following:

(a)     all deposits with third parties, escrow accounts, guarantees, letters of credit, treasury securities and insurance policies, in each case to the extent relating to the FWE I Assets and surety bonds, all OSFR coverage (whether consisting of one or more insurance policies) and other forms of credit assurances or credit support provided by a third party for the benefit of the Sellers, in each case to the extent for financial assurance for the obligations and liabilities arising out of or related to the FWE I Assets, the GOM Shelf Oil and Gas Properties or GOM Shelf,

including the P&A Obligations arising out of or related to the FWE I Assets or the GOM Shelf Oil and Gas Properties, including those items listed on **Exhibit U**;

       (b)    instruments and general intangibles (as such terms are defined in the Uniform Commercial Code of the applicable jurisdictions in which the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties to which such assets relate are located) and other economic benefits in each case attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties (excluding any accounts, notes or other receivables attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties or of GOM Shelf); *provided*, that nothing in this clause (b) shall be interpreted to limit the scope of Fieldwood Energy I Closing Accounts Receivable;

       (c)    claims of indemnity, contribution, or reimbursement of the Sellers or of GOM Shelf, in each case, relating to the FWE I Obligations or obligations of GOM Shelf;

       (d)    receivables of the Sellers for imbalances attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties;

       (e)    rights to insurance proceeds or other claims of recovery, indemnity, contribution, or reimbursement of the Sellers attributable to the FWE I Assets or the GOM Shelf Oil and Gas Properties due to casualty or other damage or destruction of or to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties;

       (f)    cash in the amount of advance payments on account of third party working interest owners in the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, to the extent such cash amounts are associated with FWE I Obligations; and

       (g)    rights to receive and collect cash and advance payments, in each case pursuant to cash calls associated with the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties to the extent such cash and advance payments are associated with FWE I Obligations.

"*Specified Oil and Gas Interests*" means the assets listed on **Exhibit Y**.

"*Specified P&A Equipment*" means the equipment listed on **Exhibit Z**.

"*Specified Section 6.10 Contract(s)*" means those certain contracts and/or agreements specified on **[insert reference to email of counsel]**.

"*ST 308 Performance Bond*" means that ST 308 Performance Bond to be entered into by and among Buyer, Apache Corporation and the surety named therein, a form of which is attached as **Exhibit R** hereto.

"*Straddle Period*" means any taxable period beginning on or prior to the Closing Date and ending after the Closing Date.

"*Subject Unit Agreement*" means the Co-Owned Subject Unit Agreements and Other Subject Unit Agreements.

"*Subject Units*" means the Co-Owned Subject Units and Other Subject Units.

"*Subscription Rights*" has the meaning set forth in the Plan.

"*Subsidiary*" means, with respect to any Person, any entity of which such first Person (either alone or through or together with any other Person pursuant to any contract) (a) owns, directly or indirectly, securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other governing body of such corporation, partnership, limited liability company, joint venture or other entity or other persons performing similar functions or (b) acts as the managing member or general partner of such other Person that is a partnership, limited liability company, joint venture or other entity.

"*Suspense Funds*" means those proceeds of production and associated penalties and interest in respect of any Field Assets or any Hydrocarbons produced from or attributable to any Field Assets that belong to one or more Third Persons and are being held in suspense by any Seller or any Affiliate thereof.

"*Tail Policy*" means the directors and officers insurance policies of the Sellers, including that certain policy issued by Sompo International (Endurance American Insurance Company), Policy Number BLP300011112000, and each additional layer of directors and officers insurance held by the Sellers.

"*Tax*" means (i) all U.S. federal, state, local or non-U.S. taxes, including all income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, environmental, customs duties, capital stock, ad valorem, value added, inventory, franchise, profits, withholding, windfall profit, social security, surcharge, impost, unemployment, disability, health, real property, personal property, mortgage, production, sales, use, occupancy, transfer, registration, alternative or add-on minimum, estimated or other similar tax of any kind whatsoever or any assessment, duty, levy, fee or charge of any kind in the nature of (or similar to) taxes imposed by any Governmental Authority, and including any interest, penalty, or addition thereto, (ii) any liability for the payment of any amounts of the type described in clause (i) as a result of any obligation to indemnify or otherwise assume or succeed to the liability of any other person, including as a transferee or successor, whether imposed by Law or Contract and (iii) in the case of Fieldwood U.A. and Fieldwood Mexico or any of their respective Subsidiaries, any liability for the payment of amounts determined by reference to amounts described in clauses (i) and (ii) as a result of being or having been a member of any Company Group (including, in each case, for any Tax purposes or by operation of Law), as a result of any obligation under any agreement or arrangement (including any Tax Sharing Agreement), as a result of being a transferee or successor, or by Contract.

"*Tax Return*" means any return, claim for refund, declaration, disclosure, election, report, statement, information return or other similar document (including any related or supporting information, amendments, schedule or supplements of any of the foregoing) filed or required to be filed with any Governmental Authority with respect to Taxes.

"*Tax Sharing Agreement*" means any agreement or arrangement, including any Tax sharing, allocation, indemnification, reimbursement, receivables or similar agreement entered into

prior to the Closing binding Fieldwood U.A. or Fieldwood Mexico or any of their respective Subsidiaries that provides for the allocation, apportionment, sharing or assignment of any Tax liability or Tax benefit, or the transfer or assignment of income, revenues, receipts, or gains for the purpose of determining any Person's Tax liability (other than any customary commercial contract entered into in the ordinary course of business the principal subject matter of which is not Taxes).

"***Third Person***" means any Person other than the Sellers, Buyer or Buyer 2.

"***Toggle Date***" has the meaning set forth in the Plan.

"***Trademarks***" is defined in the definition of Intellectual Property.

"***Transfer Documents***" means each Assignment, Bill of Sale and Conveyance, the Assignment and Assumption Agreement, the Office Assets Conveyance, the Assignment of Leases and Subleases and each JV Assignment Agreement.

"***Transfer Taxes***" means any sales, use, goods and services, value added, stock, stamp, document, filing, recording, registration and similar tax or charge (including any interest or penalties thereon and the cost of preparing any Tax Returns with respect thereto).

"***Transferred Employee***" is defined in Section 6.8(a).

"***Transferred Intellectual Property***" means the Owned Intellectual Property and Licensed Intellectual Property.

"***Trust Agreement***" means that certain Trust Agreement dated September 30, 2013 by and among Fieldwood and GOM Shelf, as Settlors and Primary Beneficiaries, and Apache Corporation, Apache Shelf, Inc., Apache Deep Water LLC and Apache Shelf Exploration LLC, as Secondary Beneficiaries, as amended.

"***TSA***" means that Transition Services Agreement to be entered into by Buyer, Fieldwood Energy I and GOM Shelf in the form attached as **Exhibit P** hereto.

"***Undisbursed Revenue***" means those proceeds of production and associated penalties and interest in respect of any Field Assets or any Hydrocarbons produced from or attributable to any Field Assets that belong to one or more Third Persons and have been received by, and at the Closing are being held by, the Sellers on account of such Third Persons for disbursement to such Third Persons after the Closing.

"***Unit***" means a unit for the production and operation of a Hydrocarbon well created by the pooling, unitization or communitization, whether voluntary or governmental, of any or all portions of any Leases and the lands covered thereby with other oil and gas leases or lands.

"***Warehouse Lease***" means that certain Lease dated as of November 15, 2019, by and between Cheyenne Services, LLC, as lessor, and Fieldwood Energy LLC, as lessee, for leased premises located at 108 Galbert Rd., Lafayette, LA, as amended by (i) First Amendment to Lease, executed April 26, 2020 and (ii) Second Amendment to Lease, executed November 10, 2020.

"***Wells***" means the Co-Owned Wells and Other Wells.

"***Working Capital Assets***" means, without duplication, (a) the current assets of the Sellers as of immediately prior to the Effective Time; *provided* that this <u>clause (a)</u> shall include only the types of current assets set forth as line items under the header "Current Assets" on **Exhibit X**, excluding the Specified Excluded Receivables, and (b) the Fieldwood Energy I Closing Accounts Receivable.  For the avoidance of doubt, Working Capital Assets shall not include any cash, including Suspense Funds, Undisbursed Revenue and Prepaid JOA Funds.

"***Working Capital Liabilities***" means, without duplication, (a) the current liabilities of the Sellers as of immediately prior to the Effective Time; *provided* that this <u>clause (a)</u> shall include only the types of current liabilities set forth as line items under the header "Current Liabilities" on **Exhibit X**, excluding any prepetition accounts, Interim Unpaid P&A Expenses, obligations for FWE I Suspense Funds, Excluded Suspense Funds or Excluded Prepaid JOA Funds, P&A Obligations and Decommissioning expenses or any obligations satisfied, compromised (to the extent compromised), settled, released or discharged pursuant to the Plan and Confirmation Order, and (b) the Fieldwood Energy I Closing Accounts Payable; *provided, further*, that in no event shall Working Capital Liabilities include Effective Date Cash Obligations.

"***Working Interest***" means, with respect to each Lease and Scheduled Well, the interest that represents the ownership of the oil and gas leasehold estate created by such Lease or Scheduled Well and that is burdened with the obligation to bear and pay costs of operations on or in respect of such Lease or Scheduled Well.

[End of Annex I]

## Exhibit G

**NewCo Organizational Documents**

**[To Come]**

**Exhibit H**

**Apache Definitive Documents**

## Second Amended Apache Term Sheet Implementation Agreement

This SECOND AMENDED IMPLEMENTATION AGREEMENT (the "**Agreement**") is made and entered into effective as of January 1, 2021, by and among (a) Fieldwood Energy LLC, a Delaware limited liability company ("**FWE**"), and GOM Shelf LLC, a Delaware limited liability company (collectively, the "**Fieldwood PSA Parties**") and (b) Apache Corporation ("**Apache**"), Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC (collectively, the "**Apache PSA Parties**") (each, a "**Party**" and collectively, the "**Parties**") to implement the transactions contemplated by or related to the term sheet attached hereto as **Exhibit A** (the "**Apache Term Sheet**").

## RECITALS

WHEREAS, on July 31, 2020, the Parties executed a letter agreement whereby each of the Parties agreed (i) to work to implement the terms of the Apache Term Sheet in accordance therewith and (ii) to execute and support a restructuring support agreement with certain consent rights for Apache and consistent in all respects with the terms of the Apache Term Sheet;

WHEREAS, commencing on August 3, 2020 (the "**Petition Date**"), FWE and certain of its affiliates each filed with the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") a voluntary case under chapter 11 of title 11 of the United States Code;

WHEREAS, Apache asserts that it holds prepetition audit claims against FWE related to (a) the 2013 audit of WC 72 for 2011-12 for the remaining amount of $10,222.37 which amount was included on the April 2016 JIB relating to ENI's debit pay, (b) credits from Noble Energy to Apache for VK 917 and 962 as shown on the August 2018 JIB in the amount of $11,413.53, and (c) joint venture expenditure audits #17.2.12 relating to East Breaks 158/159 for 2017, #19.2.11 relating to the Main Pass 302 #B19 Well for 2019, #19.2.12 relating to East Breaks 158/159 for 2019, and #19.2.22 relating to Viosca Knoll 917/961/962 (Swordfish) for 2019 in the aggregate

net amount of $115,969 (collectively, the "**Apache Audit Claims**"); Apache, as a beneficiary of The Fieldwood Decommissioning Trust A ("**Trust A**") created pursuant to that certain Trust Agreement, dated September 30, 2013, by and among the Fieldwood PSA Parties, as Settlors and Primary Beneficiaries, and the Apache PSA Parties and Apache Shelf Exploration LLC, as Secondary Beneficiaries, as amended, and pursuant to an audit conducted on behalf of Trust A relating to the Fourth and Fifth Amendments to the Decommissioning Agreement, asserts that it holds prepetition claims against FWE relating to funds allegedly improperly withdrawn from Trust A in the aggregate amount of approximately $1,514,236.00 (the "**Apache Trust A Claims**"); and Apache asserts that it holds claims against FWE related to FWE's obligations under the Decommissioning Agreement[1] (the "**Decommissioning Claims**" and, together with the Apache Audit Claims, the Apache Trust A Claims, and any other prepetition claim Apache may assert, the "**Apache Claims**");

WHEREAS, the Bankruptcy Court has established a general bar date of 5:00 p.m. (Central Time) on November 25, 2020 (the "**General Bar Date**") for filing proofs of claim against the Fieldwood PSA Parties; the Parties hereto entered into that certain stipulation, dated as of November 24, 2020, thereby agreeing to extend the General Bar Date as to the Apache Claims in contemplation of the resolution of the Apache Claims as set forth in the RSA (as defined below), the Apache Term Sheet, and the Apache Definitive Documents (as defined below);

---

[1] Specifically, per the terms of the Decommissioning Agreement (each capitalized term used herein without definition is as defined in the Decommissioning Agreement), FWE's Required Spend for decommissioning the Legacy Apache Properties for Plan Year 2020 was $80,000,000.00. According to FWE's records, only approximately $31,730,441.00 was spent by FWE in Plan Year 2020 on such decommissioning obligations, creating a shortfall of the Required Spend of approximately $48,269,559 (the "**2020 Shortfall**"). Upon Apache's information and belief, FWE has not funded the 2020 Shortfall into Trust A, as required pursuant to the terms of the Decommissioning Agreement. Accordingly, one of the Decommissioning Claims Apache asserts it holds against FWE is for the 2020 Shortfall.

WHEREAS, that certain *Restructuring Support Agreement*, dated as of August 4, 2020 (as amended,[2] the "**RSA**"), was entered into by and among (i) the Company[3] (including the Fieldwood PSA Parties); (ii) the Consenting FLTL Lenders; (iii) the Consenting SLTL Lenders (together with the Consenting FLTL Lenders, the "**Consenting Creditors**"); and (iv) Apache (collectively, the "**RSA Parties**"), pursuant to which the RSA Parties agreed to support a financial restructuring of the Company as provided therein;

WHEREAS, the Company and the Consenting Creditors have agreed that certain interests in certain non-Legacy Apache Properties and the properties included in the fields listed on Schedule A to the Apache Term Sheet as "Ownership and Operatorship" (the "**Retained Properties**") (such non-Legacy Apache Properties and the Retained Properties, collectively, the "**Credit Bid Acquired Interests**") will be sold and conveyed to, and certain liabilities and obligations of the Debtors will be assumed by and will constitute liabilities and obligations of (such liabilities and obligations, collectively, the "**Credit Bid Assumed Liabilities**"), an entity to be formed for purposes of consummating the transactions under the Credit Bid Purchase Agreement ("**Credit Bid Purchaser**"), pursuant to a purchase and sale agreement (the "**Credit Bid Purchase Agreement**");

WHEREAS, pursuant to the RSA, the Company agreed to, among other things: (i) negotiate in good faith the definitive documents implementing the transactions contemplated by or relating to the Apache Term Sheet (the "**Apache Definitive Documents**"); (ii) use commercially reasonable efforts to execute and deliver the Apache Definitive Documents; and

---

[2] Since the RSA was executed on August 4, 2020, additional lenders holding FLTL Claims and/or SLTL Claims have executed joinders to the RSA, including members of the ad hoc group of holders of Prepetition SLTL Loans that is represented by the Ad Hoc Group of SLTL Advisors (each as defined in the Plan (as defined below)).

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the RSA, unless indicated otherwise.

(iii) use commercially reasonable efforts to consummate the transactions contemplated under the Apache Definitive Documents;

WHEREAS, pursuant to the RSA, Apache agreed to, among other things: (i) support and take all actions necessary or reasonably requested by the Company to facilitate the finalization of the Apache Definitive Documents; and (ii) support and take all actions necessary or reasonably requested by the Company to facilitate the transactions contemplated under the Apache Definitive Documents;

WHEREAS, pursuant to the RSA, the Apache Definitive Documents shall be in a form reasonably acceptable to the Company, Apache, the Requisite DIP Commitment Parties, and the Requisite FLTL Lenders;

WHEREAS, pursuant to the Apache Term Sheet, Apache acknowledged and agreed that the Apache Definitive Documents shall be subject to the approval of holders of consent rights as set forth in the RSA, which approval shall not be unreasonably withheld, it being understood that good faith negotiations with respect to matters not addressed in the Apache Term Sheet or the Restructuring Term Sheet shall not be considered unreasonably withholding approval;

WHEREAS, the Apache Term Sheet provides that the parties thereto agree to negotiate mutually agreeable Apache Definitive Documents no later than 45 days after the Petition Date, which deadline the Parties have mutually agreed to extend to January 1, 2021;

WHEREAS, the RSA provides that it shall be a DIP Commitment Parties Termination Event if the Company shall not have complied with the deadline requiring the finalization of the Apache Definitive Documents by no later than 75 days after the Petition Date, which deadline has been extended to January 1, 2021;

WHEREAS, pursuant to that certain *Senior Secured Debtor-In-Possession Term Loan Credit Agreement*, dated as of August 24, 2020, among Fieldwood Energy Inc., Fieldwood Energy LLC, the Several Lenders, from time to time, and Cantor Fitzgerald Securities, the Apache Definitive Documents shall be finalized no later than 75 days after the Petition Date, which deadline has been extended to January 1, 2021;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1. **Apache Definitive Documents**. The documents below comprise the Apache Definitive Documents as contemplated in the RSA and the Apache Term Sheet:

a. *Conversion of FWE into a Texas Limited Liability Company*.

(i) *Certificate of Conversion (DE) (FWE)*. Annexed hereto as **Exhibit 1**.

(ii) *Certificate of Conversion (TX) (FWE)*. Annexed hereto as **Exhibit 2**.

(iii) *Plan of Conversion (TX) (FWE)*. Annexed hereto as **Exhibit 3**.

(iv) *Certificate of Formation (TX) (FWE)*. Annexed hereto as **Exhibit 4**.

b. *Divisional Merger Documents*.

(i) *Agreement and Plan of Merger (TX) (FWE)* (the "**Plan of Merger**"). Annexed hereto as **Exhibit 5**.

(ii) *Certificate of Merger (TX) (FWE)*. Annexed hereto as **Exhibit 5A**.

(iii) *Certificate of Formation (TX) (Fieldwood Energy I LLC)*. Annexed hereto as **Exhibit 5B**.

c. *Fieldwood Energy I LLC Agreement*. Annexed hereto as **Exhibit 6**.

d. *ST 308 Bond Form*. Annexed hereto as **Exhibit 7**.

e.  *Standby Credit Facility Documents* (collectively, the "**Standby Credit Facility Documents**").

      (i)  *Standby Loan Agreement*.  Annexed hereto as **Exhibit 8**.

      (ii)  *Security Agreement*.  Annexed hereto as **Exhibit 9**.

      (iii)  *Guarantee (Fieldwood Energy I LLC)*.  Annexed hereto as **Exhibit 10**.

      (iv)  *Guarantee (GOM Shelf LLC)*.  Annexed hereto as **Exhibit 11**.

      (v)  *Form of Mortgages*.  Annexed hereto as **Exhibit 12**.

f.  *Form of Amendment to Unit Operating Agreement*.  Annexed hereto as **Exhibit 13**, the form of which shall be modified in a manner consistent with the Apache Term Sheet and this Agreement to amend each operating agreement with respect to the properties included in the fields listed on Schedule A to the Apache Term Sheet as solely "Operatorship" for which Credit Bid Purchaser shall become operator, which amendments shall be subject to the same consent rights of the Required DIP Lenders and Requisite FLTL Lenders as for the Apache Definitive Documents, and the Parties shall enter into such amendments prior to the closing of the transactions contemplated by the Credit Bid Purchase Agreement.

g.  *Farmout Agreement*.  Annexed hereto as **Exhibit 14**.

h.  *Transition Services Agreement*.  Annexed hereto as **Exhibit 15**.

i.  *SEMS Bridging Agreement*.  Annexed hereto as **Exhibit 16**.

j.  *Amended BriarLake Sublease*.  Annexed hereto as **Exhibit 17**.

k.  *Certification of Rights*.  Annexed hereto as **Exhibit 18**.

      2.  **Execution of Apache Definitive Documents**; **Good Faith Cooperation.** Each Party agrees, and Apache expressly acknowledges, that the Company and the Apache PSA Parties have satisfied the requirements under the Apache Term Sheet and the RSA to negotiate

mutually agreeable Apache Definitive Documents by the relevant deadlines set forth therein. Subject to and in accordance with the terms of the RSA and Apache Term Sheet, each of the Parties shall negotiate any exhibits, amendments, modifications or supplements to the Apache Definitive Documents in good faith and agree to exercise commercially reasonable efforts with respect to the negotiation, pursuit, approval, execution, delivery, implementation, and consummation of the Apache Definitive Documents.  The Parties may, by mutual agreement, amend, modify, or supplement the forms of the Apache Definitive Documents attached hereto or negotiate to add additional documents to the list of Apache Definitive Documents, consistent with the terms and conditions herein, in the RSA, and in the Apache Term Sheet, and subject to the consent rights of the Parties in the RSA and the Apache Term Sheet, as necessary or desirable to effectuate the Apache Term Sheet and a chapter 11 plan of reorganization that incorporates the transactions contemplated in the Apache Definitive Documents (the "**Plan**").  Subject to the immediately preceding sentence, the Parties shall execute and deliver the Apache Definitive Documents on or before the effective date of the Plan (the "**Effective Date**").  Each Party agrees to use commercially reasonable efforts to execute and deliver the instruments, forms and filings (including any BOEM designation of operator forms and designated applicant Oil Spill Financial Responsibility ("**OSFR**") form designations and any instruments, forms and filings required by BSEE) that are necessary to designate and appoint under all applicable laws and contracts the Credit Bid Purchaser as operator (and, as applicable, the designated applicant under OSFR for) the Credit Bid Acquired Interests as promptly as practicable following the closing of the Credit Bid Purchase Agreement, and in any case, prior to the execution and delivery of the instruments, forms and filings (including any BOEM designation of operator forms and designated applicant OSFR form designations and

any instruments, forms and filings required by BSEE) that may be required in connection with the implementation of the Divisive Merger (as defined below).

3.     **FWE I Exhibits to the Plan of Merger**.  Exhibits I-A(i) through I-K(iii) to Schedule I to the Plan of Merger (collectively, the "**FWE I Exhibits**") set forth a list of Legacy Apache Properties, which FWE I Exhibits the Apache PSA Parties and the Fieldwood PSA Parties hereto respectively acknowledge are subject to the ongoing review and consent rights of the Consenting Creditors under the RSA (which consent has not yet been provided), and the Apache PSA Parties and Fieldwood PSA Parties agree that the FWE I Exhibits are subject to modification based on such review to be consistent with the Apache Term Sheet.

4.     **Plan and Confirmation Order**.  As provided in the RSA, provisions in the Plan and Confirmation Order that directly affect the structure of FWE I outlined in the Apache Term Sheet or the economic treatment of Apache remain subject to Apache's review and must be in form and substance reasonably acceptable to Apache, and the Plan and Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Requisite DIP Commitment Parties, and the Requisite FLTL Lenders at all times.  To facilitate the implementation of the Apache Term Sheet and the Apache Definitive Documents pursuant to the Plan as contemplated in the RSA and the Apache Term Sheet, the Parties agree that subject to the negotiation of mutually agreeable definitive language, any order of the Bankruptcy Court confirming the Plan (the "**Confirmation Order**") shall provide for the following:

(i)     FWE shall pay up to $5.5 million of reasonable and documented fees and expenses of Apache related to the formation of Fieldwood Energy I LLC ("**FWE I**") and FWE's restructuring, including the negotiation and preparation of the Apache Definitive Documents (collectively, the "**Apache Fees and Expenses**"); provided that amounts paid to Apache on

account of the Apache Fees and Expenses shall not be subject to disgorgement unless the transactions contemplated in the Apache Definitive Documents fail to close as a result of Apache's breach of the RSA.

(ii)     The Prepetition FLFO Lenders, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall release (and/or cause the applicable administrative agent or collateral agent to release) all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I to the Plan of Merger) and the Consenting Creditors shall release the Apache PSA Parties from any and all causes of action and claims of any kind related to the Legacy Apache Properties arising prior to the date of the Apache Term Sheet Implementation Agreement.

(iii)     FWE's assets to be allocated to, possessed by, assumed by, and vested in FWE I and Fieldwood Energy III LLC ("**FWE III**"), respectively, pursuant to the transactions contemplated by and in accordance with the Plan of Merger (the "**Divisive Merger**"), including contracts, leases, oil and gas leases and assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), shall be (a) free and clear of (i) any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of the assets in connection with the Divisive Merger (such rights, the "**Consent Rights**") and (ii) all preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the vesting of the assets in connection with the Divisive Merger (such rights, the "**Preferential Purchase Rights**"), but (b) subject to and burdened by (x) the liabilities and obligations allocated to and vested in, respectively, FWE I or FWE III, as specified in the Plan of Merger, pursuant to the Divisive Merger (collectively, "**Allocated**

**Obligations**") and (y) Permitted Post-Closing Liens (as defined in the Schedule of Defined Terms for Required Confirmation Order Provisions, attached hereto as **Exhibit B**).

(iv)     Entities (as defined under section 101(15) of the Bankruptcy Code) or Parties that fail to timely file an objection are (a) forever barred from objecting to the allocation and vesting of the assets in connection with the Divisive Merger free and clear of all Consent Rights and Preferential Purchase Rights, and from asserting any alleged Consent Rights or Preferential Purchase Rights with respect to the Divisive Merger, and (b) deemed to consent to and approve the allocation and vesting of the assets free and clear of all Consent Rights and Preferential Purchase Rights, regardless of whether such consent must be in writing pursuant to the terms of any agreement.

(v)     Subject to the Implementation Costs Cap (as defined below), FWE III shall, and shall cause its debtor affiliates in the above-captioned chapter 11 cases to, on the Effective Date, provide for the payment of any and all documentary, filing, recording, stamp, and registration fees, costs, taxes, and expenses (including all reasonable and documented attorneys' fees and regulatory consultant fees) incurred or imposed after the Effective Time (as defined in the Plan of Merger) in connection with the filing of record by or on behalf of FWE I or GOM Shelf LLC of any instrument or instruments with the appropriate records office of any county, parish, state, federal, or other governmental unit (including BOEM) that may be required in connection with the implementation of the Divisive Merger or that either FWE I or GOM Shelf LLC determines in its respective sole discretion to be necessary or appropriate to reflect in the appropriate records of any governmental unit that as a result of the Divisive Merger (a) ownership of the FWE I Assets have been allocated to and are vested in FWE I (and to the extent appropriate to reflect ownership of the GOM Shelf Properties (as defined in the Plan of Merger) in GOM Shelf LLC), and (b) the

Allocated Obligations have been allocated to and vested in, and constitute liabilities and obligations of, FWE I and FWE III, respectively (collectively, the "**Implementation Costs**"). For the avoidance of doubt, the documentary, filing, recording, stamp, and registration fees of FWE I or GOM Shelf LLC, shall include such costs and expenses required to file or to cause to be filed of record in the records office, as determined by Apache to be appropriate, of any county, parish, state, federal, or other governmental unit (including BOEM) of the mortgages, security interests and similar security documentation as is contemplated by the Standby Loan Agreement and the Standby Credit Facility Documents to secure the obligations of FWE I and GOM Shelf LLC thereunder. Any Implementation Costs that exceed the Implementation Costs Cap shall be the sole responsibility of and paid for by FWE I.

(vi)     Upon the Effective Date of the Plan, the Decommissioning Agreement shall be assumed, with the consent of the Apache PSA Parties, by the Fieldwood PSA Parties and, upon consummation of the transactions provided for in the Plan of Merger, become the obligation of FWE I. Any Cure Amounts payable as a result of assumption of the Decommissioning Agreement, which amount will be mutually agreed between the Parties prior to confirmation of the Plan and scheduled as a Cure Amount, shall include any amounts relating to the Apache Claims (including the Apache Trust A Claims and the Decommissioning Claims) and shall be paid into Trust A on the Effective Date or as soon as reasonably practicable thereafter but in no event later than ten (10) business days following the Effective Date. Payment of any mutually agreed Cure Amount as a result of assumption of the Decommissioning Agreement does not constitute an admission by any Party that a default exists or existed at any time under the Decommissioning Agreement.

(vii)    Except for the rights and remedies to enforce (a) the Decommissioning Agreement against GOM Shelf LLC and FWE I following the Divisive Merger (which agreement

11

shall be allocated to FWE I and GOM Shelf LLC under the Divisive Merger), (b) the Plan, (c) the Confirmation Order, and (d) the obligations contemplated by the Apache Definitive Documents, the Apache PSA Parties shall be deemed Releasing Parties (as defined in the Plan) under the Plan and waive and release any and all pre-Effective Date claims of any kind (including, without limitation, the Apache Audit Claims, the Apache Trust A Claims and any claims that could qualify as administrative expense claims) against the Debtors, their estates and any other Released Party (as defined in the Plan), in all circumstances only to the extent such claims accrued on or prior to the Effective Date and only to the extent such releases do not impair the Decommissioning Security, or Apache's ability to draw on the Decommissioning Security in any respect.  For the avoidance of doubt, any and all claims the Apache PSA Parties may have against FWE I related to the Decommissioning Agreement arising post-Effective Date and any security obtained, provided, or pledged in connection with the Decommissioning Agreement (the "**Decommissioning Security**") will be preserved.

(viii)   Except for the rights and remedies to enforce (a) the Decommissioning Agreement against the Apache PSA Parties following the Divisive Merger, (b) the Plan, (c) the Confirmation Order, and (d) the obligations contemplated by the Apache Definitive Documents, the Debtors shall waive and release any and all pre-Effective Date claims of any kind against the Apache PSA Parties, in all circumstances only to the extent such claims accrued on or prior to the Effective Date.  For the avoidance of doubt, any and all claims FWE I may have against the Apache PSA Parties related to the Decommissioning Agreement arising post-Effective Date and the Decommissioning Security will be preserved.

(ix)   All rights of the Apache PSA Parties with respect to  bonds and letters of credit constituting Decommissioning Security shall be preserved as against such bonding

companies and letter of credit issuers in all respects. The Debtors shall not terminate any bonds issued on behalf of the Debtors relating to the Legacy Apache Properties under which any federal, state or local governmental entity is an obligee.

(x)      With respect to the agreements and memberships relating, in whole or in part, to well containment/control, clean-up of spills, or other pollution, or the gathering of data relating to certifications required to be made to a governmental unit with respect to the FWE I Assets (as defined in the Plan of Merger) or GOM Shelf Oil and Gas Properties (as defined in the Plan of Merger), to the extent any such agreements or memberships are also needed in respect to any Credit Bid Acquired Interests or FWE III Assets (as defined in the Plan of Merger) that are set forth on **Exhibit 23** hereto, then on or before the Effective Date, FWE shall obtain new agreements and membership for such use with respect to the Credit Bid Acquired Interests or FWE III Assets. With respect to any Excluded Contracts (as defined in the Plan of Merger), FWE shall, on or before the Effective Date, prepare and negotiate replacement agreements with the counterparties to such Excluded Contracts upon substantially the same terms as such Excluded Contracts which may be executed by FWE I immediately following the Effective Date.

(xi)      The Fieldwood PSA Parties and the Apache PSA Parties may, by mutual agreement, amend and modify, without the consent of the Consenting Creditors, the forms of the agreements governing the terms of employment of the Independent Director (as defined in the Apache Term Sheet) of FWE I and of the "sole manager" (as that term is used in the Apache Term Sheet) of FWE I (the "**Sole Manager**"), and the form of the agreement with the "service provider" (as that term is used in the Apache Term Sheet) of FWE I (the "**Contract Services Provider**") to be included in the bid package for the Contract Services Provider (collectively, such forms of agreement comprise the "**Fieldwood I Administrative Documents**").

(xii)    The Bankruptcy Court (i) approves the Apache Definitive Documents and all transactions contemplated by the Apache Term Sheet Implementation Agreement, including the Plan of Merger and Standby Credit Facility Documents, and all actions to be taken, undertakings to be made, and obligations to be incurred by FWE I contemplated thereby; and (ii) following the consummation of the Plan of Merger, authorizes FWE I, without further notice to or action, order, or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into, deliver, and fully perform its obligations under the Apache Definitive Documents, including without limitation, the Standby Credit Facility Documents.  Upon entry of the Confirmation Order, FWE I or the Sole Manager, as applicable, shall be authorized and empowered, without further approval of the Bankruptcy Court or any other party, to take such actions and perform such acts as may be necessary, convenient, desirable, or appropriate to execute and deliver the Apache Definitive Documents in accordance with the Plan and to execute and deliver all documents relating thereto and to perform all of their obligations thereunder.  On the Effective Date, the Apache Definitive Documents shall constitute legal, valid, binding, and authorized obligations of FWE I, enforceable in accordance with their terms, and such obligations of FWE I shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination by FWE I or the Post-Effective Date Debtors (as defined in the Plan) under applicable law, the Plan, or the Confirmation Order.  On the Effective Date, all liens granted pursuant to, or in connection with, the Apache Definitive Documents shall be deemed granted by FWE I and/or GOM Shelf LLC, in each case, pursuant to the Apache Definitive Documents.  On the Effective Date, all liens granted pursuant to, or in connection with Apache Definitive Documents, as applicable, (i) shall be valid, binding, perfected, enforceable liens and security interests in the property described in the applicable Apache Definitive

Documents granted by FWE I and/or GOM Shelf LLC pursuant to the Apache Definitive Documents, as applicable, with the priorities established in respect thereof under applicable non-bankruptcy law and the Apache Definitive Documents, including, but not limited to, the Mortgages, Security Agreement or Standby Loan Agreement and (ii) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination by FWE I and/or GOM Shelf LLC under applicable law, the Plan, or the Confirmation Order.  For the avoidance of doubt, the liens granted to Apache pursuant to the Recharacterization Mortgages (as such term is defined in the Decommissioning Agreement, as amended from time to time, and as supplemented by the Recharacterization Mortgages) upon any recharacterization of the Trust A or Trust A-1 NPIs (as such terms are defined in the Decommissioning Agreement, as amended from time to time, and as supplemented by the Recharacterization Mortgages) shall be senior in all respects to any other liens.

5.      **Implementation Costs Cap**.  No later than twenty-one (21) days after the effective date of this Agreement (as such date may be extended upon mutual written consent by the Parties including via email), the Parties shall mutually agree in good faith on the estimated amount of Implementation Costs to be funded by the Debtors (such amount, the "**Implementation Costs Cap**").  In the event the Parties are unable to reach a mutual agreement as to the Implementation Costs Cap, the determination shall be submitted to and determined by the law firm of Geiger Laborde & Laperouse, LLC (the "**Referee**").  If the Referee shall be responsible for determining the Implementation Costs Cap, each Party will be required to submit its respective estimate regarding the Implementation Costs Cap to the Referee.  The Referee will then conduct its own investigation and issue its decision regarding the Implementation Costs Cap, where such amount shall not be (i) higher than the highest estimate submitted by a Party, or (ii) lower than the

lowest estimate submitted by a Party.  The Referee's decision shall be considered final and binding.

Moreover, the Parties will each pay half of the total costs relating to the Referee's determination

of the Implementation Costs Cap.  The Apache PSA Parties' portion of such costs shall not be

considered Apache Fees and Expenses.

6. **Fieldwood I Administrative Documents**.  The documents below comprise

the Fieldwood I Administrative Documents:

(i) *Sole Manager Agreement.*  Annexed hereto as **Exhibit 19**.

(ii) *Independent Director Agreement.*  Annexed hereto as **Exhibit 20**.

(iii) *Form of Contract Services Agreement*, to be included in the bid package for

the Contract Services Provider.  Annexed hereto as **Exhibit 21**.

(a) Any waivers, amendments, or modifications made to the Fieldwood I

Administrative Documents or any provisions contained therein shall be made by mutual agreement

between the Fieldwood PSA Parties and the Apache PSA Parties without the consent of the

Consenting Lenders.

7. **Termination of Agreement and Tolling of General Bar Date.**

(a) This Agreement shall terminate upon the earlier to occur of (i) the

termination of the RSA and (ii) the termination of Apache as a party to the RSA.  Upon termination

of this Agreement, each Party shall be immediately released from its obligations, commitments,

undertakings and agreements under or related to this Agreement; provided that in no event shall

any such termination relieve a Party from liability for its breach or non-performance of its

obligations hereunder prior to the date of such termination.

(b) Notwithstanding the General Bar Date, the Parties agree that Apache shall

not file a proof of claim against the Debtors on account of the Apache Claims until after the earliest

to occur of the following (the date of the earliest to occur of the following, the "**Apache POC Filing Date**"): (i) the date that this Agreement is terminated, (ii) the date that FWE, without Apache's express, written consent, files a plan of reorganization materially inconsistent with the RSA, the Apache Term Sheet, or the Apache Definitive Documents, (iii) the date that FWE's chapter 11 case is converted to a case under chapter 7, and (iv) January 15, 2021 if the RSA has not been amended to modify or remove the requirement that Apache timely vote its Claims and Interests to accept the Plan contemplated by the RSA.  Following the occurrence of the Apache POC Initial Filing Date, at any time within the period of thirty (30) days after the Apache POC Initial Filing Date, Apache shall have the right to file a proof of claim or proofs of claim against the Debtors on account of the Apache Claims.  The terms of this paragraph 7(b) shall survive the termination of this Agreement.

8.      **363 Credit Bid Transaction.**  In the event the credit bid sale transaction to Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders) is pursued pursuant to section 363 of the Bankruptcy Code as contemplated in the Plan (the "**363 Credit Bid Transaction**"), the Apache PSA Parties agree, consistent with their obligations under the RSA, to support and take reasonable actions to facilitate the 363 Credit Bid Transaction, and cooperate in good faith with Debtors, the Required DIP Lenders and Requisite FLTL Lenders to facilitate the 363 Credit Bid Transaction, including, without limitation, by making any amendments to the Apache Definitive Documents; provided that no such actions shall require the Apache PSA Parties to alter the economics of the Apache Definitive Documents without the Apache PSA Parties' express written consent.

9.      **Credit Bid Purchase Agreement Terms**.[4]

---

[4] The Consenting Creditors agreed under the Apache Term Sheet that "any outstanding accounts receivable and accounts payable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of

17

(a)     The terms of the  Credit Bid Purchase Agreement (or an alternative purchase and sale agreement conveying the Credit Bid Acquired Interests to a buyer) that relate to (i) the scope of Credit Bid Assumed Liabilities (including payables with respect to the Legacy Apache Properties and the Retained Properties) to be assumed by the buyer thereunder and any indemnities with respect thereto and (ii) the scope of receivables with respect to the Legacy Apache Properties to be assigned to the buyer and the obligations that may be imposed on FWE I with respect to the collection of such receivables ((i) and (ii), collectively, the "**Specified Credit Bid Terms**")  shall be in form and substance acceptable to Apache and the Debtors.

(b)     The Parties agree that the terms as set forth on **Exhibit 22** that relate to the Specified Credit Bid Terms are acceptable to Apache and the Debtors to address the Specified Credit Bid Terms in the Credit Bid Purchase Agreement (or an alternative purchase and sale agreement conveying the Credit Bid Acquired Interests to a buyer), and any terms contained in the Credit Bid Purchase Agreement (or an alternative purchase and sale agreement conveying the Credit Bid Acquired Interests to a buyer) that relate to the Specified Credit Bid Terms, other than as set forth on Exhibit 22, must be in form and substance acceptable to Apache and the Debtors.

10.     **Transfer of Retained Properties**.   Notwithstanding anything to the contrary herein, any Retained Properties transferred to Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders) in a credit

---

reorganization shall be retained by [Credit Bid Purchaser]."  However, for the avoidance of doubt, any language in Paragraph 9 or Exhibit 22 of this Agreement that differs from, supplements, modifies or is otherwise inconsistent with the foregoing language in the Apache Term Sheet (including, without limitation, any language that relates to items that are not accounts payable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of reorganization being retained by Credit Bid Purchaser or any language that relates to items that are accounts receivable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of reorganization not being retained by Credit Bid Purchaser) has not been agreed to by the Consenting Creditors, and the Consenting Creditors reserve all rights with respect to any such difference, supplement, modification or inconsistency.

bid sale transaction shall be conveyed in accordance with the Decommissioning Agreement.  Any amounts payable to Trust A on account of such transfer shall be the obligation of FWE I.  Apache agrees to work with FWE and the Trust A trustee to obtain the required releases from Trust A and conveyances of such interest to Credit Bid Purchaser in connection with this transfer.

11.    **Effectiveness; Counterparts.**  This Agreement shall become effective and binding upon each Party upon the execution and delivery by such Party of an executed signature page hereto and shall become effective and binding on all Parties on the date when all Parties have executed and delivered a signature page hereto.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement.  Execution copies of this Agreement may be delivered by electronic mail, or otherwise, which shall be deemed to be an original for the purposes of this paragraph.

12.    **Governing Law; Jurisdiction; Waiver of Jury Trial.**  To the maximum extent permitted by applicable law, this Agreement is governed by and is to be construed in accordance with the internal laws of the State of Texas, without giving effect to any principles of conflicts of law thereunder that would result in the application of the laws of any other jurisdiction. Each Party irrevocably agrees that any legal action, suit, or proceeding arising out of or relating to this Agreement brought by any party or its successors or assigns shall be brought and determined in the Bankruptcy Court and each Party hereby irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court, and if the Bankruptcy Court does not have (or abstains from) jurisdiction, Courts of the State of Texas and of the United States District Court of the Southern District of Texas, and any appellate court from any thereof, for itself and with respect to its property, generally and unconditionally, with regard to any such proceeding arising out of or relating to this

Agreement.  Each Party further agrees that notice as provided herein shall constitute sufficient service of process and the Parties further waive any argument that such service is insufficient. Each Party hereby irrevocably and unconditionally waives, and agrees not to assert, by way of motion or as a defense, counterclaim or otherwise, in any proceeding arising out of or relating to this Agreement, (a)  any claim that it is not personally subject to the jurisdiction of the Bankruptcy Court as described herein for any reason, (b) that it or its property is exempt or immune from jurisdiction of such court or from any legal process commenced in such court (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment, or otherwise) and (c) that (1) the proceeding in such court is brought in an inconvenient forum, (2) the venue of such proceeding is improper, or (3) this Agreement, or the subject matter hereof, may not be enforced in or by such court.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF RELATING TO THIS AGREEMENT.  EACH PARTY CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.

      13.    **Notices.**  All notices hereunder shall be deemed given if in writing and delivered, if contemporaneously sent by electronic mail, courier or by registered or certified mail (return receipt requested) to the following addresses:

(1)     If to the Fieldwood PSA Parties, to:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway S., Suite 1200
Houston, Texas 77042
Attention:  Thomas R. Lamme

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention:  Matt Barr, Esq. (matt.barr@weil.com)
                    Alfredo Peréz, Esq. (alfredo.perez@weil.com)
                    Jessica Liou, Esq. (jessica.liou@weil.com)

(2)     If to the Apache PSA Parties, to:

Apache Corporation
2000 Post Oak Boulevard, Suite 100
Houston, Texas 77056-4400
Attention:   Anthony Lannie and Brett Cupit

With a copy to:

Hunton Andrews Kurth LLP
600 Travis Street
Suite 4200
Houston, Texas 77002
Attention: Robin Russell, Esq. (RRussell@andrewskurth.com)
                    Catherine Diktaban, Esq. (CDiktaban@hunton.com)

14.     **Amendments.**  Neither this Agreement nor any provision hereof may be waived, amended, or modified **except** pursuant to an agreement or agreements in writing entered into by the Fieldwood PSA Parties and the Apache PSA Parties.

*[Signature Pages to Follow]*

**IN WITNESS WHEREOF**, the undersigned Parties have executed this Second Amended Implementation Agreement as of the effective date of this Agreement.

FIELDWOOD ENERGY LLC,
a Delaware limited liability company

By: _Thomas R. Lamme_

Name: _Thomas R. Lamme_

Title: _Senior Vice President and General Counsel_

GOM SHELF LLC,
a Delaware limited liability company

By: _Thomas R. Lamme_

Name: _Thomas R. Lamme_

Title: _Vice President_

APACHE CORPORATION

By: _____

Name: Ben C. Rodgers
Title:   Senior Vice President, Treasurer and
         Marketing and Midstream


APACHE SHELF, INC.

By: _____

Name: Ben C. Rodgers
Title:   Senior Vice President and Treasurer


APACHE DEEPWATER LLC

By: _____

Name: Ben C. Rodgers
Title:   Senior Vice President and Treasurer

APACHE SHELF EXPLORATION LLC

By: _____

Name: Ben C. Rodgers
Title:   Senior Vice President and Treasurer

## Exhibit A

**The "Apache Term Sheet"**

# FIELDWOOD ENERGY

Thomas R. Lamme
Senior Vice President and General Counsel
Direct: 713-969-1107
Email: TLamme@fwellc.com

**VIA EMAIL**

July 31, 2020

P. Anthony Lannie
Executive Vice President and General Counsel
Apache Corporation
2000 Post Oak Boulevard, Suite 100
Houston, Texas 77056-4400

*Re:     Legacy Apache Properties Term Sheet*

Dear Mr. Lannie:

Attached as <u>Exhibit A</u> is the agreed upon term sheet dated July 31, 2020, by and between Fieldwood Energy LLC and certain of its affiliates (collectively, the "**Fieldwood PSA Parties**") and Apache Corporation and certain of its affiliates (collectively, the "**Apache PSA Parties**" and, together with the Fieldwood PSA Parties, the "**Parties**") supporting the restructuring of the portion of the Fieldwood PSA Parties' business relating to certain assets described therein as the "Legacy Apache Properties" (the "**Legacy Apache Properties Term Sheet**").

By executing this letter agreement, each of the undersigned Parties agrees (i) to work to implement the terms of the Legacy Apache Properties Term Sheet in accordance therewith and (ii) (upon Fieldwood's payment of the retainers to Apache's attorneys and advisors in the amounts submitted to Fieldwood's outside counsel and subject to review and reasonable satisfaction with the restructuring term sheet to be attached to the restructuring support agreement) to execute and support a restructuring support agreement in a final form reasonably acceptable to Apache and consistent in all respects with the terms of the Legacy Apache Properties Term Sheet.

The Parties may execute and deliver this letter agreement by electronic reproduction and in multiple counterparts, each of which shall constitute an original and all of which shall be one and the same document. This letter agreement shall be governed by the laws of the State of Texas without regard to any choice of law principles.

Regards,

*Thomas R. Lamme*

Thomas R. Lamme

Enclosure

cc:  Michael T. Dane
     Senior Vice President and Chief Financial Officer

IN WITNESS WHEREOF, the undersigned Parties have executed this letter agreement as of the date first written above.

**FIELDWOOD ENERGY LLC**

By: _Thomas R. Lamme_
Name: Thomas R. Lamme
Title: Senior Vice President and General Counsel

**GOM SHELF LLC**

By: _Thomas R. Lamme_
Name: Thomas R. Lamme
Title: Vice President

**APACHE CORPORATION**

Name: P. Anthony Lannie
Title: Executive Vice President and General Counsel

**APACHE SHELF, INC.**

Name: P. Anthony Lannie
Title: Executive Vice President and General Counsel

**APACHE DEEP WATER LLC**

Name: P. Anthony Lannie
Title: Executive Vice President and General Counsel

**Exhibit A**

**Term Sheet for Fieldwood Energy LLC Restructuring**

**Summary of Principal Terms**

| | |
|---|---|
| **Entity Owning Legacy Apache Properties Post-Confirmation** | All oil and gas assets conveyed by Apache Corporation ("Apache") and certain of its affiliates (collectively, the "Apache PSA Parties") in favor of Fieldwood Energy LLC ("Fieldwood" or "debtor") and certain of its affiliates (collectively, the "Fieldwood PSA Parties") pursuant to that Purchase and Sale Agreement dated as of July 18, 2013 between the Apache PSA Parties and the Fieldwood PSA Parties (as amended, "PSA"), plus all leases, wells, fixtures, equipment, permits, ONRR royalty and other deposits, decommissioning bonds with third parties relating to previously sold assets, decommissioning bonds posted by Fieldwood on Legacy Apache Properties, inventory, facilities, easements, pipelines, and related property associated therewith, less and except any such assets sold, assigned, decommissioned, or otherwise disposed of by Fieldwood to third parties or otherwise prior to the date of this Term Sheet or as contemplated in this Term Sheet, and not including the Retained Properties (defined below) (collectively, the "Legacy Apache Properties") shall be owned post-confirmation by a Reorganized Fieldwood unless a different entity is created in accordance with the section entitled "Assumption of Obligations" below (this portion of the business of the Reorganized Fieldwood being referred to hereinafter as "Fieldwood I"). Any outstanding accounts receivable and accounts payable associated with the Legacy Apache Properties as of the effective date of Fieldwood's plan of reorganization shall be retained by Fieldwood II (defined below), and any accounts receivable and accounts payable accruing after the effective date of Fieldwood's plan of reorganization shall accrue to the benefit or obligation of Fieldwood I. Fieldwood I will retain BOEM Operator numbers and Qualification cards for Fieldwood and Fieldwood's affiliate GOM Shelf LLC. <br><br> Fieldwood I shall (i) have no assets or liabilities upon confirmation other than the Legacy Apache Properties and operational liabilities, including plugging and abandonment and decommissioning liabilities relating to the Legacy Apache Properties and certain assets described under "Additional Initial Funding Sources" and "Assumption of Obligations" below, (ii) be a bankruptcy remote business entity with a governance structure which is consistent with the business goals of the parties outlined herein (which includes an independent director or manager whose vote is needed to approve major decisions such as bankruptcy, receivership, liquidation, mergers, and consolidations, and removal and appointment (after the initial appointment) of the sole manager and service provider described below (the "Independent Director")), (iii) not be a reporting entity for SEC purposes, (iv) as of the confirmation date, not create a variable interest entity that Apache is required to consolidate, and (v) is structured in a tax efficient manner within the constraints of the criteria set forth in items (i) through (iv) above. To the extent it will accomplish the goals of the parties outlined herein and is otherwise allowed by applicable law, Fieldwood I and the holder of Fieldwood's other assets not sold during the pendency of the Chapter 11 cases ("Fieldwood II") may be created by a divisional merger of Fieldwood under applicable state law upon the confirmation of Fieldwood's plan of reorganization. |

| Management of Fieldwood I | Fieldwood I will not have employees other than a sole manager. Apache and debtor shall each provide the other with a list of three candidates with a minimum of five (5) years of relevant experience in the energy sector. If one or more names appear on both lists, then the debtor will select the initial sole manager of Fieldwood I from those common name(s). If there are no common names, then each shall have the right to strike two names from the other party's list and the bankruptcy judge shall select the sole manager from the two remaining names (one from each list). In the event the sole manager must be removed (which shall require Apache's consent) and/or replaced or resigns or otherwise no longer serves, then the foregoing procedure will be repeated (except that the Independent Director will replace the bankruptcy court and Fieldwood I will replace the debtor for that purpose). |
|---|---|

The initial Independent Director shall be appointed by the debtor and shall be a natural person who is not and, for the prior five years has not been, a director, officer, employee, trade creditor, or shareholder (or spouse, parent, sibling, or child of the foregoing) of Fieldwood, any affiliate of Fieldwood, or any lender to Fieldwood (a "Qualified Person"), and shall be an individual provided by Citadel SPV, Global Securitization Services, LLC, Corporation Service Company, CT Corporation, Lord Securities Corporation, Wilmington Trust Company, or, if none of those companies is then providing professional independent managers, another nationally-recognized company selected by Fieldwood with Apache's consent (the "Approved List") and approved by the bankruptcy court. The Independent Director may not be removed, except with Apache's consent. If the Independent Director is removed, resigns, or otherwise ceases to serve, then Fieldwood I shall select another Independent Director who is a Qualified Person from the Approved List.

The limited liability agreement will specify that the sole manager will have the right to control the business and operations of Fieldwood I at all times prior to the completion of the decommissioning of the Legacy Apache Properties owned by Fieldwood I, subject to compliance with the following covenants which can only be waived with Apache's consent:

1. Fieldwood I shall not have any business or operations other than operating the Legacy Apache Properties and decommissioning them;
2. Fieldwood I shall not purchase, sell, or farm-in any asset;
3. Except in compliance with item 4 immediately below, Fieldwood I shall not farm-out any asset;
4. If anyone makes an unsolicited proposal to farm in to any of the Legacy Apache Properties on fair market terms and conditions (including fair market rates of return), then Fieldwood I shall be obligated to market such farm-in opportunity and accept the highest and best offer for such farm-in opportunity as long as the transaction is accretive to Fieldwood I cashflow;
5. Fieldwood I shall not incur indebtedness for borrowed money other than under the Standby Facility (defined below);
6. Fieldwood I shall not use its free cash flow (after operating expenses) for any purposes other than fulfilling is obligations to Apache under the

2

| | |
|---|---|
| | Decommissioning Agreement (defined below) and the Standby Facility (defined below) until those obligations have been satisfied in full; |
| | 7. Fieldwood I shall not amend its bylaws, limited liability agreement, or other organizational documents, and any effort to do so shall be ineffective for any purpose; |
| | 8. Fieldwood I shall not engage in any activity or take any action outside the ordinary course of business; and |
| | 9. Fieldwood I shall not dissolve, liquidate, or merge or consolidate with any other entity. |
| **Employee Matters** | Fieldwood shall provide Apache with a list of certain employees involved in the operation and management of the Legacy Apache Properties no later than one month after finalizing definitive documentation for the transactions reflected in this Term Sheet and shall make such employees available on a mutually agreed timeline to be interviewed by Apache for potential employment by Apache following the consummation of the Fieldwood I transaction. Apache shall have no obligation to hire any such employees.<br><br>Fieldwood is willing to consider assigning all or a portion of its existing decommissioning business, including separate P&A equipment and spreads, to Apache in connection with mutually agreeable resolution of Fieldwood I terms and based on Fieldwood II's residual business post-restructuring. Consummation of the transaction outlined herein shall not be conditioned on Apache's potential acquisition of such decommissioning business. |
| **Operations and Decommissioning Activities** | Fieldwood I shall hire an independent third-party service provider to perform all operations and decommissioning on behalf of Fieldwood I. The work to be performed by the independent service provider shall be bid out to not less than three (3) qualified candidate service providers, each with a minimum of five (5) years of relevant experience. The qualified bidder who bids the lowest price and best terms, in view of relevant experience, shall be selected as the initial service provider. To facilitate the transition process prior to selection of such service provider, upon the effectiveness of the plan of reorganization, Fieldwood I will enter into a transition services agreement with Fieldwood II to provide operational services for Fieldwood I and the initial service provider. Such transition services agreement may be terminated by Fieldwood I at any time. In the event the service provider must be removed (which may be done by the sole manager, but only with Apache's consent) and/or replaced or otherwise no longer serves, then the sole manager shall again bid out the work in accordance with the procedures outlined hereinabove. No later than 45 days after the Chapter 11 filing date (the "Petition Date"), Fieldwood may select with Apache's consent, which consent may be withheld by Apache in its sole discretion, certain properties (the "Retained Properties") for which Fieldwood II or its successors shall retain operatorship or ownership and operatorship.[1] Properties set forth on <u>Schedule A</u>, attached hereto, constitute the agreed-upon Retained Properties as of the date of this Term Sheet. With regard to ST 308 (identified as a Retained Property on <u>Schedule A</u>), |

---

[1] Properties comprise fields, onshore and offshore facilities, inventory, shore bases, and other assets in which Fieldwood has acquired an incremental working interest separate from the Apache acquisition or have an operational relationship to other Fieldwood properties and which will be operated by or owned and operated by the Fieldwood II or the Fieldwood deepwater business.

#93441325v24
WEIL:\97575248\2\45327.0005

|  | Fieldwood's interest in such property will be transferred to, or allocated through the divisional merger, and owned and operated by the party who owns the deepwater Katmai project upon effectiveness of Fieldwood's plan of reorganization, and the owner of such property shall provide Fieldwood I with a surety bond in a form acceptable to Fieldwood I securing the decommissioning obligations for the ST 308 lease and associated ROW(s) in the amount of $13.2 million. With regard to VR 78 and VR 362/371 (each identified as a Retained Property on Schedule A), Fieldwood's interest in such properties will remain with Fieldwood II and be owned and operated by Fieldwood II, and Fieldwood II shall assume the decommissioning obligations with respect to those properties. With regard to the four properties listed on Schedule A as "Operatorship" in which ownership will be retained by Fieldwood I, a joint operating agreement reasonably satisfactory to Apache will be put in place (or amended) which provides that Fieldwood I as non-operator will have the right to opt in or out of participation in any future capital spending or project related to a work-over or recompletion of an existing well on the property or the drilling of a new well on the property (a "New Project"). If Fieldwood I elects not to participate in accordance with the applicable joint operating agreement, Fieldwood II as Operator may fund (and, if so, it will indemnify Fieldwood I against costs and liabilities associated with) such New Project as an exclusive (sole risk) operation giving Fieldwood II sole right and obligation to any and all risk, costs, liabilities, downside, and upside from such New Project. Fieldwood I shall retain all of its rights and obligations relating to the property other than those rights and obligations created by the New Project. Services provided by Fieldwood II under such JOA will be billed to Fieldwood I at Fieldwood II's actual costs without any actual or allocated overhead or additional G&A charges. |
| --- | --- |
|  | Services provided by Apache or its third-party contractors to Fieldwood I will be billed to Fieldwood I at Apache's cost and according to typical industry practices under a joint operating agreement. |
| **Right to Fund Capital Expenditures** | Apache will have the right, but not the obligation, to fund any future capital expenditures related to projects forecast to increase production or cash flow on the Legacy Apache Properties ("Approved CapEx") upon terms and conditions mutually agreed between Apache and Fieldwood I. |
|  | At confirmation, to the extent it is formed or the equivalent entity exists, Fieldwood II and Fieldwood I will enter into a Joint Development Agreement ("JDA") whereby Fieldwood II has the right for two years to present capital projects to Fieldwood I relating to Legacy Apache Properties, which will give Fieldwood I, in Fieldwood I's sole discretion, the option to participate or decline participation under terms mutually agreed and set forth in the JDA. Also, if Fieldwood I intends to decommission a property that was producing at the time Fieldwood I was created, upon notice, Fieldwood II will have the option for a period of time to be agreed on by the parties to request to take over (in the form of participation or conveyance to Fieldwood II) such property in accordance with terms set forth in the JDA. Such request may be accepted or rejected by Fieldwood I in its sole discretion. |

| Initial Capitalization | Fieldwood shall deposit into Fieldwood I an amount equal to $50 million minus the actual post-petition decommissioning spend by Fieldwood on the Legacy Apache Properties. |
|---|---|
| Additional Initial Funding Sources | In addition to Fieldwood's contribution above, Fieldwood I will be capitalized and funded as follows:<br><br>1) Any and all funds in Trust A shall be made available as described under "Assumption of Obligations" below and<br><br>2) Cash flow from the Legacy Apache Properties shall be reinvested and used for decommissioning activities, to fund Approved CapEx, and to repay amounts outstanding, if any, under the Standby Facility. |
| Assumption of Obligations | Fieldwood I shall continue to be responsible for all of Fieldwood's obligations under the Decommissioning Agreement dated as of September 30, 2013 among the Apache PSA Parties and the Fieldwood PSA Parties (as amended, the "Decommissioning Agreement") and the PSA, including all related contracts, and all contracts relating to insurance, surety bonds, letters of credit, and other decommissioning security assets and all other obligations relating to the Legacy Apache Properties (except to the extent reimbursement or indemnification obligations with respect to the surety bonds and letters of credit are discharged through the bankruptcy), but shall not be responsible for any other obligations of Fieldwood related to its other assets. However, if Fieldwood I is created in a manner other than a divisional merger and is not a residual entity from Fieldwood, Fieldwood I shall assume the same obligations described in the immediately preceding sentence, and Fieldwood and Apache will agree on a structure to complete the formation transaction consistent with the intent of this Term Sheet; provided that all necessary consents can be obtained in order to preserve all material rights of Apache under the material contracts described above, including the letters of credit and bonds issued to Apache in support of the Decommissioning Agreement. If the plan of reorganization confirmed by the bankruptcy court and the definitive documents contemplated herein are consistent with the terms herein unless otherwise agreed and grant Apache all the rights and protections provided for in this Term Sheet unless otherwise agreed, then Apache will waive any claims against the debtor based on any alleged prepetition breach of the Decommissioning Agreement or any related agreement and shall release any and all claims against the debtors and all other released parties under Fieldwood's plan of reorganization (and such releases shall be mutual with Apache benefiting as a released party under the plan) but only to the extent such releases do not impair the Decommissioning Security, or Apache's ability to draw on the Decommissioning Security, in any respect.<br><br>If (i) Fieldwood I defaults on its decommissioning obligations under the Decommissioning Agreement, (ii) any governmental authority or any other Person or entity seeks to cause Apache or its Affiliates to conduct decommissioning that is required in accordance with applicable Law or contract, and (iii) Apache conducts the decommissioning, it shall be done in a manner that entitles Apache to draw on cash in Trust A, the letters of credit, and the bonds currently outstanding, totaling approximately $736 million (the "Decommissioning Security") in reimbursement of such advances. Apache shall |

| | |
|---|---|
| | be entitled to draw at any time prior to completion of decommissioning of the Legacy Apache Properties should certain letters of credit or bonds of the Decommissioning Security not be renewed in a manner consistent in all respects with the existing terms of such letters of credit or bonds, and, if drawn in such manner, such funds shall be contributed to Trust A. Fieldwood I shall take any action reasonably requested by Apache to entitle Apache to draw on the Decommissioning Security as contemplated in this Term Sheet and shall not take any position in any proceeding or otherwise inconsistent with Apache's ability to draw on the Decommissioning Security. |
| **Standby Facility** | After the Decommissioning Security has been exhausted or is not available to pay or reimburse Apache for decommissioning, Fieldwood I will have the right to borrow from Apache the funds required to perform decommissioning on the Legacy Apache Properties via a line of credit (the "Standby Facility").<br><br>The Standby Facility shall have a first lien on all the assets of Fieldwood I. Cash advanced shall earn interest at 400 basis points (4% per annum) over the interest rate of Apache's then most recently issued bonds. All principal and interest will be paid in cash from the first available free cash flow of Fieldwood I following each loan. Additional customary terms and conditions TBD. The first lien shall also secure Fieldwood I's obligations to Apache under the Decommissioning Agreement.<br><br>The Standby Facility shall mature at completion of all decommissioning activities. |
| **Beneficiaries of the Fieldwood I** | Fieldwood has the right to designate who shall receive ownership interests entitling the holder to any assets remaining in Fieldwood I after decommissioning is complete and the Standby Facility is repaid. Such interests may be distributed by Fieldwood (consistent with the rules of priority and as may be negotiated under the plan) upon confirmation of Fieldwood's plan of reorganization or as otherwise agreed thereafter but shall thereafter be non-transferable on the books and records of Fieldwood I, it being the goal of all parties that Fieldwood I will not be a reporting entity for SEC purposes and such ownership interests in Fieldwood I shall not be registered or traded on any exchange. Apache understands and agrees that the restructuring transactions currently contemplated by the RSA (defined below) do not provide for the DIP Lenders or the pre-petition FLTL Lenders becoming beneficial owners of Fieldwood I. |
| **Fieldwood's Plan of Reorganization** | Apache will support a Fieldwood Chapter 11 plan of reorganization which provides for the Fieldwood I structure outlined herein and will execute a restructuring support agreement ("RSA") consistent with the terms herein evidencing same. The RSA shall provide that Apache shall have consent rights over all definitive documents related to the Fieldwood I structure outlined herein, and over the portions of the plan of reorganization and the confirmation order that provide for and approve the Fieldwood I structure outlined herein. The RSA shall contain customary termination rights. |
| **Post-Petition Decommissioning Activity** | The DIP Budget shall provide Fieldwood with reasonable funds to accomplish the following during the pendency of the Chapter 11 cases, as it pertains to the Legacy Apache Properties: |

|  | |
|---|---|
|  | 1) Maintain and operate the properties as a reasonably prudent operator in the ordinary course of business,<br><br>2) Maintain all of the assets in their current condition, subject to the Post-Petition Decommissioning Budget (defined below), and insurance upon such assets in amounts and kinds comparable to pre-petition coverage, and<br><br>3) Perform decommissioning activities consistent with the Decommissioning Agreement in accordance with a budget agreed to in advance between Fieldwood and Apache (the "Post-Petition Decommissioning Budget"), the total amount of which budget shall not be greater than $50 million during the pendency of the case, assuming an emergence by March 31, 2021. In the event of emergence later than March 31, 2021, Fieldwood and Apache shall (i) work in good faith to agree upon an extended Post-Petition Decommissioning Budget and (ii) in such event, if (a) Fieldwood has insufficient operating income from the Legacy Apache Properties to perform any required decommissioning within respect to any Legacy Apache Property, after mutually agreed upon capital expenditures, and (b) any governmental authority or any other Person or entity causes Apache or its Affiliates to conduct decommissioning that is required in accordance with applicable Law or contract, then Apache will conduct or cause to be conducted such decommissioning in accordance with the terms of the Decommissioning Agreement. |
| **Expense Reimbursement** | Fieldwood will pay up to $4,000,000 of reasonable and documented fees and expenses of Apache related to the formation of Fieldwood I and Fieldwood's restructuring; provided that such fees and expenses shall only be payable so long as Apache is a party to the RSA. |
| **Other Matters** | Briarlake office sublease to be renegotiated (i) to reflect current market rates for remainder of sublease term; and (ii) to reflect reduced square-footage consistent with the scale and business functions of Fieldwood II or its successors as a result of the Chapter 11 plan of reorganization).<br><br>Fieldwood and Apache shall negotiate mutually agreeable definitive documentation for the transactions reflected in this Term Sheet within 45 days of the Petition Date. Additionally, Apache acknowledges and agrees that the definitive documentation implementing the transactions contemplated under this Term Sheet shall be subject to approval of holders of consent rights as set forth in the RSA, including certain DIP and FLTL Lenders consent rights, which approval shall not be unreasonably withheld, it being understood that good faith negotiations with respect to matters not addressed in this Term Sheet shall not be considered unreasonably withholding approval. |
| **Effectiveness** | The transactions contemplated by this Term Sheet, and as set forth in definitive documentation, shall (i) require that the Decommissioning Agreement and related agreements will not be rejected by the debtor during the Chapter 11 case, and such obligations shall be allocated to, and remain the obligations of, Fieldwood I upon |

7

|  | the consummation of the plan and the divisional merger contemplated herein, (ii) preserve all Apache's rights with respect to Trust A, the net profits interests, and the letters of credit and bonds issued to Apache under the Decommissioning Agreement, and (iii) become effective on the consummation of Fieldwood's plan of reorganization. |
|---|---|

8

## Schedule A: Retained Properties

| Field | Classification |
|---|---|
| ST 308 | Ownership and Operatorship |
| GI 110/116 | Operatorship |
| GI 43 | Operatorship |
| ST 53/67/68 | Operatorship |
| MC 109 | Operatorship |
| VR 78 | Ownership and Operatorship |
| VR 362/371 | Ownership and Operatorship |

**Exhibit 1**

**Certificate of Conversion (DE) (FWE)**

**STATE OF DELAWARE**
**CERTIFICATE OF CONVERSION**
**FROM A DELAWARE LIMITED LIABILITY COMPANY**
**TO A NON-DELAWARE ENTITY**
**PURSUANT TO SECTION 18-216 OF**
**THE LIMITED LIABILITY COMPANY ACT**

1.) The name of the Limited Liability Company is _____
Fieldwood Energy LLC_____.

    (If changed,  the name under which it's certificate of formation was originally
filed: _____ )

2.) The date of filing of its original certificate of formation with the Secretary of
State is 11/5/2012_____.

3.) The jurisdiction in which the business form, to which the limited liability company
shall be converted, is organized, formed or created is Texas_____.

4.) The conversion has been approved in accordance with this section;

5.) The limited liability company may be served with process in the State of Delaware in
any action, suit or proceeding for enforcement of any obligation of the limited liability
company arising while it was a limited liability company of the State of Delaware, and
that it irrevocably appoints the Secretary of State as its agent to accept service of process
in any such action, suit or proceeding.

6.) The address to which a copy of the process shall be mailed to by the Secretary of State
is
CAPITOL CORPORATE SERVICES, INC.
206 E. 9TH STREET, SUITE 1300 AUSTIN, TX 78701

In Witness Whereof, the undersigned have executed this Certificate of Conversion on this
_____ day of _____, A.D. _____.

    By: _____
                Authorized Person

    Name: _____
             Print or Type

**Exhibit 2**

**Certificate of Conversion (TX) (FWE)**

## STATE OF TEXAS
## CERTIFICATE OF CONVERSION
## OF A
## DELAWARE LIMITED LIABILITY COMPANY
## TO A
## TEXAS LIMITED LIABILITY COMPANY

This Certificate of Conversion (this "Certificate"), dated as of [●], 2021, has been duly executed and is being filed by Fieldwood Energy LLC, a Delaware limited liability company, to convert to Fieldwood Energy LLC, a Texas limited liability company under Section 10.102 of the Texas Business Organizations Code (the "TBOC").

1.  The name of the converting entity is Fieldwood Energy LLC, a Delaware limited liability company (the "Converting Entity").

2.  The jurisdiction of formation of the Converting Entity is the State of Delaware and the date of formation of the Converting Entity is November 5, 2012.

3.  The Converting Entity is converting from a limited liability company formed under the laws of the State of Delaware to a Texas limited liability company formed under the laws of the State of Texas.  The name of the Texas limited liability company is "Fieldwood Energy LLC" (the "Company").

4.  The file number issued to the Converting Entity by the Secretary of State is 0801715506.

5.  The plan of conversion (the "Plan") as required under Section 10.103 of the TBOC is attached hereto as Exhibit A.

6.  The Certificate of Formation of the Company is attached to the Certificate of Conversion as Exhibit A to the Plan.

7.  The Plan has been approved as required by the laws of the jurisdiction of formation and the governing documents of the Converting Entity.

8.  The Company will be responsible for the payment of any required franchise taxes of the Converting Entity.

9.  This document shall become effective upon its acceptance and filing by the Secretary of State of the State of Texas.

IN WITNESS WHEREOF, the undersigned has executed this Certificate as of the date first above written.

FIELDWOOD ENERGY LLC

By: _____
    Name: [●]
    Title:  [●]

**<u>Exhibit A</u>**

**Plan of Conversion**

See attached.

**Exhibit 3**

**Plan of Conversion (TX) (FWE)**

# PLAN OF CONVERSION
## OF
### Fieldwood Energy LLC
### (a Delaware limited liability company)
## INTO
### Fieldwood Energy LLC
### (a Texas limited liability company)

Adopted on [●], 2021

Pursuant to the provisions of Section 18-216 of the Delaware Limited Liability Company Act and Section 10.103 of the Texas Business Organizations Code, Fieldwood Energy LLC, a Delaware limited liability company ("Fieldwood"), hereby adopts the following Plan of Conversion:

1.      The name of the converting entity is "Fieldwood Energy LLC", a Delaware limited liability company, and the name of the converted entity is "Fieldwood Energy LLC", a Texas limited liability company (the "Company").

2.      Fieldwood is continuing its existence in the organizational form of a Texas limited liability company.

3.      The Company is to be a limited liability company under the laws of the State of Texas.

4.      100% of the membership interests of Fieldwood outstanding immediately prior to the conversion shall by virtue of the conversion and without any action on the part of the holders thereof, automatically be converted into 100% of the issued and outstanding membership interests of the Company.

5.      The conversion shall become effective upon (a) the filing and acceptance of a Certificate of Conversion with the Secretary of State of the State of Texas and (b) the filing and acceptance of a Certificate of Conversion with the Secretary of State of the State of Delaware.

6.      The Company will be responsible for the payment of all fees and franchise taxes and will be obligated to pay such fees and taxes if they are not timely paid.

7.      Attached as Exhibit A to this Plan of Conversion is the Texas Certificate of Formation of the Company.

8.      The Plan of Conversion has been approved as required by the laws of the Corporation's jurisdiction of formation and governing document.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned has executed this Plan of Conversion as of the date first written above.

**FIELDWOOD ENERGY LLC**

By: _____
Name:    [●]
Title:     [●]

**EXHIBIT A**

**CERTIFICATE OF FORMATION**

*See attached.*

**<u>Exhibit 4</u>**

**Certificate of Formation (TX) (FWE)**

**Form 205**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $300**

This space reserved for office use.



### Certificate of Formation
### Limited Liability Company

## Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company.  The name of the entity is:

FIELDWOOD ENERGY LLC

The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

## Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete either A or B and complete C.)

☒  A.  The initial registered agent is an organization (cannot be entity named above) by the name of:

CAPITOL CORPORATE SERVICES, INC.

**OR**
☐  B.  The initial registered agent is an individual resident of the state whose name is set forth below:

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|

C.  The business address of the registered agent and the registered office address is:

| 206 E. 9TH STREET, SUITE 1300 | AUSTIN | TX | 78701 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

## Article 3—Governing Authority
(Select and complete either A or B and provide the name and address of each governing person.)

☐  A.  The limited liability company will have managers. The name and address of each initial manager are set forth below.

☒  B.  The limited liability company will not have managers.  The company will be governed by its members, and the name and address of each initial member are set forth below.

| GOVERNING PERSON 1 | | | | | |
|---|---|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | | | |
| **IF INDIVIDUAL** | | | | | |
| First Name | M.I. | Last Name | | | Suffix |
| **OR** | | | | | |
| **IF ORGANIZATION** | | | | | |
| FIELDWOOD ENERGY INC. | | | | | |
| Organization Name | | | | | |
| **ADDRESS** | | | | | |
| 2000 W. SAM HOUSTON PKWY S., SUITE 1200 | HOUSTON | | TX | USA | 77042-3623 |
| Street or Mailing Address | City | | State | Country | Zip Code |

TX060BOC - 11/27/2013 Wolters Kluwer Online

| GOVERNING PERSON 2 | | | |
|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | |
| IF INDIVIDUAL | | | |
| _First Name_ | _M.I._ | _Last Name_ | _Suffix_ |
| **OR** | | | |
| IF ORGANIZATION | | | |
| _Organization Name_ | | | |
| **ADDRESS** | | | |

| _Street or Mailing Address_ | _City_ | _State_ | _Country_ | _Zip Code_ |
|---|---|---|---|---|

| GOVERNING PERSON 3 | | | |
|---|---|---|---|
| **NAME** (Enter the name of either an individual or an organization, but not both.) | | | |
| IF INDIVIDUAL | | | |
| _First Name_ | _M.I._ | _Last Name_ | _Suffix_ |
| **OR** | | | |
| IF ORGANIZATION | | | |
| _Organization Name_ | | | |
| **ADDRESS** | | | |

| _Street or Mailing Address_ | _City_ | _State_ | _Country_ | _Zip Code_ |
|---|---|---|---|---|

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

### Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

The entity is formed under a plan of conversion.  The name of the converting entity is Fieldwood Energy LLC.  The address of the converting entity is  2000 W. Sam Houston Pkwy. S., Suite 1200, Houston, Texas 77042.  The converting entity was formed on 11/5/2012 under the laws of the State of Delaware, USA.  The converting entity was previously a Delaware limited liability company. The converting entity is registered as a foreign entity under the Texas Secretary of State file number 0801715506.

TX060BOC - 11/27/2013 Wolters Kluwer Online

## Organizer

The name and address of the organizer:

_____
*Name*

_____
*Street or Mailing Address*                    *City*                    *State*    *Zip Code*

### Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing.  The delayed effective date is: _____

C. ☒ This document takes effect upon the occurrence of the future event or fact, other than the passage of time.  The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

the filing of the certificate of conversion of Fieldwood Energy LLC with the Secretary of State of Texas .

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment.  The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date: _____

_____
Signature of organizer

_____
Printed or typed name of organizer

TX060BOC - 11/27/2013 Wolters Kluwer Online

**Exhibit 5**

**Agreement and Plan of Merger (TX) (FWE)**

# AGREEMENT AND PLAN OF MERGER
## OF
### FIELDWOOD ENERGY LLC
### INTO
### FIELDWOOD ENERGY I LLC
### AND
### FIELDWOOD ENERGY III LLC

This AGREEMENT AND PLAN OF MERGER, dated as of [●], 2021 (this "Plan of Merger"), is adopted by Fieldwood Energy LLC, a Texas limited liability company ("FWE").

WHEREAS, commencing August 3, 2020, FWE and certain other affiliates of FWE (each, a "Debtor" and collectively, the "Debtors") filed voluntary petitions with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") initiating their respective cases pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") styled *In re Fieldwood Energy LLC, et al.*, jointly administered under Case No. 20-33948 (MI) (each case of a Debtor, a "Case" and collectively, the "Chapter 11 Cases");

WHEREAS, in connection with the Chapter 11 Cases, the Debtors filed the [*Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* at Docket No. [●]] (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Plan of Reorganization"), which was confirmed by order of the Bankruptcy Court entered on [●], 2021 at Docket No. [●] (as may be amended, modified, and supplemented, the "Confirmation Order");

[WHEREAS, in accordance with the Plan of Reorganization and Confirmation Order, pursuant to the Credit Bid Purchase Agreement certain assets and properties of the Debtors (defined in the Plan of Reorganization as the "Credit Bid Acquired Interests") were sold and conveyed to, and certain liabilities and obligations of Debtors (defined in the Plan of Reorganization as the "Credit Bid Assumed Liabilities") were assumed by, FWE II prior to the Effective Time (the "Credit Bid Transaction");]

WHEREAS, pursuant to the Plan of Reorganization, and as authorized by the Confirmation Order, FWE converted from a Delaware limited liability company to a Texas limited liability company on [●], 2021;

WHEREAS, pursuant to the Plan of Reorganization, and as authorized by the Confirmation Order, FWE is to effect a divisional merger as set forth in this Plan of Merger (the "Merger"), pursuant to which, among other things:

a) FWE shall maintain its separate existence and continue as a surviving entity under the name "Fieldwood Energy III LLC" (as such entity exists from and after the Effective Time, "FWE III");

b) a new Texas limited liability company shall be formed under the name "Fieldwood Energy I LLC" ("FWE I");

c)   all of the FWE I Assets (as defined below) shall be allocated to, possessed by, and vested in FWE I, and all of the FWE I Obligations (as defined below) shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE I;

d)   all of the assets of FWE (other than the FWE I Assets and the Credit Bid Acquired Assets) shall be allocated to, possessed by, and vested in FWE III; and

e)   all of the liabilities and obligations of FWE (other than the FWE I Obligations and the Credit Bid Assumed Liabilities) shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE III; and

WHEREAS, this Plan of Merger has been authorized by the Confirmation Order, which provides such approval of the transactions contemplated hereby as required for purposes of Sections 10.001, 10.002, and 10.302 of the Texas Business Organizations Code (the "TBOC"), and, in accordance with Section 10.008 of TBOC, the Merger shall be consummated without any transfer or assignment having occurred.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, and for the purpose of prescribing the terms and conditions of the Merger, the mode of carrying it into effect, the manner and basis of allocating ownership interests of each of the resulting entities and such other details and provisions of the Merger as are deemed necessary or desirable, FWE has agreed and covenanted, and does hereby agree and covenant, as follows:

1.     Subject to the provisions of this Plan of Merger, FWE shall cause the Merger to be consummated by filing a certificate of merger with the Secretary of State of the State of Texas in such form as is required by, and executed in accordance with, the relevant provisions of the TBOC, in substantially the form attached as Exhibit A (the "Certificate of Merger"), together with a certificate of formation of FWE I in substantially the form attached as Exhibit B. The Certificate of Merger shall provide that the Merger shall be effective on the date the Certificate of Merger is accepted and filed with the Secretary of State of the State of Texas (the "Effective Time").

2.     At the Effective Time:

(a)     FWE shall be divisionally merged in accordance with the TBOC with (i) FWE I being formed as a Texas limited liability company separate from FWE III and continuing as a surviving business entity of the Merger as to the FWE I Assets and the FWE I Obligations in accordance with the TBOC under the name "Fieldwood Energy I LLC" and (ii)  FWE continuing as a surviving business entity of the Merger as to all assets and liabilities of FWE (other than the FWE I Assets, the FWE I Obligations, the Credit Bid Acquired Assets, and the Credit Bid Assumed Liabilities) in accordance with the TBOC under the name "Fieldwood Energy III LLC."   The Merger will have the effect set forth below and in Section 10.008 of the TBOC.

(b)     There shall be no change (through conversion, exchange, or otherwise) to the membership interests of FWE, which membership interest in FWE III will continue to be owned by Fieldwood Energy Inc. as of immediately following the Effective Time.

(c)      All of the membership interests of FWE I shall be owned by Fieldwood Energy Inc. as of immediately following the Effective Time

(d)      All of the rights, assets, and properties of FWE described in Part A of Schedule I attached hereto (the "FWE I Assets") shall be allocated to, possessed by, and vested in FWE I without reversion or impairment, without further act or deed, and without transfer or assignment having occurred.

(e)      All of the liabilities and obligations of FWE described in Part B of Schedule I attached hereto (the "FWE I Obligations") shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE I. For the avoidance of doubt, the FWE I Obligations exclude all Credit Bid Assumed Liabilities (including all Closing Date Payables and all FWE II Retained Properties Payables).

(f)      All of the rights, assets, and properties of FWE other than the FWE I Assets and the Credit Bid Acquired Assets (collectively, the "FWE III Assets"), including (i) those rights, assets, and properties of FWE described in Part A of Schedule II attached hereto (collectively, the "Wind Down Assets") and (ii) those rights, assets, and properties described in Part A of Schedule III (collectively, the "Predecessor Assets"), shall be allocated to, possessed by, and vested in FWE III without reversion or impairment, without further act or deed, and without transfer or assignment having occurred.

(g)      All of the liabilities and obligations of FWE other than the FWE I Obligations and the Credit Bid Assumed Liabilities (collectively, the "FWE III Obligations"), including (i) all liabilities and obligations to the extent relating to the Wind Down Assets and all liabilities and obligations described in Part B of Schedule II attached hereto (collectively, the "Wind Down Obligations"), (ii) all of the liabilities and obligations of FWE retained by FWE upon consummation of the Credit Bid Transaction, as well as (except as provided in Section 3(b)(i)) obligations of FWE under the Credit Bid Purchase Agreement, and (iii) all liabilities and obligations relating to the Predecessor Assets and all liabilities and obligations described in Part B of Schedule III attached hereto (collectively, the "Predecessor Obligations"), shall be allocated to and shall vest in, and shall constitute liabilities and obligations of, FWE III.

3.      Post-Merger Covenants.

(a)      Each of FWE I and FWE III shall, at any time and from time to time from and after the Effective Time as and when requested by FWE I or FWE III, or by their respective successors or assigns, execute and deliver, or cause to be executed and delivered in its name by its authorized officers, all such conveyances, transfers, deeds, or other instruments as FWE I or FWE III, as applicable, or such successors or assigns, may reasonably deem necessary in order to evidence (i) the allocation to and vesting in FWE I of the FWE I Assets, and the allocation to and vesting in FWE I of, and the liability and obligation of FWE I for, the FWE I Obligations as a result of the Merger and (ii) the allocation to and vesting in FWE III of the FWE III Assets, and the allocation to and vesting in FWE III of, and the liability and obligation of FWE III for, the FWE III Obligations as a result of the Merger.  Without limiting the foregoing, FWE III shall take such actions as necessary to effect a transfer from **[insert applicable bank account]** to an account

designated in writing by FWE I of (i) the FWE I Cash Amount, (ii) the FWE I Suspense Funds, and (iii) the Prepaid JIB Cash Amount.

(b)       From and after the Effective Time (i) FWE I shall, and shall cause the FWE I Subsidiaries controlled by FWE I to, perform the obligations of FWE under Section [●][1] of the Credit Bid Purchase Agreement with respect to Closing Accounts Receivable to the extent attributable to FWE I Assets or any assets held by such FWE I Subsidiaries as of the Effective Time (provided FWE I shall have no obligation to incur any cost or expense in performing such obligations) and (ii) FWE III shall, and shall cause its subsidiaries to, perform the obligations of FWE under Section [●] of the Credit Bid Purchase Agreement with respect to Closing Accounts Receivable to the extent attributable to FWE III Assets or any assets held by subsidiaries of FWE III as of the Effective Time.

4.       As a result of the consummation of the Merger in accordance with this Plan of Merger, FWE I shall only be allocated, shall only possess, and shall only be vested in and receive the FWE I Assets, and shall only be allocated and vested in, shall only possess, and shall only be subject to the FWE I Obligations, and FWE I shall have no rights or obligations relating to any of the FWE III Assets or the FWE III Obligations, except as may be expressly set forth in Section 6 or a separate agreement, which is entered into at or after the Effective Time, between FWE I and FWE III with respect to such other Assets or Obligations; and FWE I shall not be deemed to be a predecessor in interest to any of the FWE III Assets or the FWE III Obligations.

5.       As a result of the consummation of the Merger in accordance with this Plan of Merger, FWE III shall only be allocated, shall only possess, and shall only be vested in and receive the FWE III Assets and shall only be allocated and vested in, shall only possess, and shall only be subject to the FWE III Obligations, and FWE III shall have no rights or obligations relating to any of the FWE I Assets or the FWE I Obligations, except as may be expressly set forth in Section 6 or in a separate agreement, which is entered into at or after the Effective Time, between FWE III and FWE I with respect to such other Assets or Obligations; and FWE III shall not be deemed to be a predecessor in interest to any of the FWE I Assets or the FWE I Obligations.

6.       If immediately prior to the Effective Time, FWE owned an interest or right in assets (other than Predecessor Oil and Gas Properties or Wind Down Oil and Gas Properties) which FWE did not acquire under or pursuant to the Apache PSA and which[2], immediately prior to the Effective Time, was used in connection with or held for use in connection both with (a) FWE I Oil and Gas Properties or FWE I Rights of Way, on the one hand, and any of (b)(i) Wind Down Oil and Gas Properties or Wind Down Rights of Way or (ii) Predecessor Oil and Gas Properties or Predecessor Rights of Way, on the other hand (individually, a "Fieldwood Joint Use Property" and, collectively, the "Fieldwood Joint Use Properties"), then FWE I shall own such Fieldwood Joint Use Property as an FWE I Asset and such Fieldwood Joint Use Property shall not be a Wind

---

[1] **Note to Draft**:  This is to reference the provision of the Credit Bid Purchase Agreement providing for collection of Closing Accounts Receivable post sale to FWE II.

[2] **Note to Draft**:  FWE confirming there are no Legacy Apache Assets that are also used for any other interests/assets. To the extent any Legacy Apache Assets are also used for any other interests/assets, such assets will be identified and will either be added to the assets governed by Section 6 or FWE I and FWE III will enter into a letter agreement regarding the joint use of such assets consistent with Section 6 or as otherwise agreed to by FWE I and FWE III.

Down Asset or a FWE III Asset or owned by FWE III; provided, however, that FWE III shall have, and FWE I shall provide FWE III with, access, use, and economic benefit with respect to such Fieldwood Joint Use Property to the extent, and only to the extent, such Fieldwood Joint Use Property was used or held for use in connection with the applicable Wind Down Oil and Gas Properties, Wind Down Rights of Way, Predecessor Oil and Gas Properties, or Predecessor Rights of Way immediately prior to the Effective Time; provided, further, that any obligation or liability incurred by FWE I to the extent arising from, related to, or connected with such access, use, or economic benefit by or on behalf of FWE III, (1) shall not constitute an FWE I Obligation, (2) shall be FWE III Obligations and the obligations and liabilities of FWE III, and (3) FWE III shall indemnify and hold harmless FWE I and the FWE Subsidiaries from and against all such obligations and liabilities allocated to FWE III pursuant to this <u>Section 6</u>.

   7. <u>Certain Definitions</u>.  As used herein and in the Schedules and Exhibits attached hereto, (i) the terms set forth below have the meanings ascribed to such terms below and (ii) the terms defined in the Schedules and Exhibits attached hereto have the meanings ascribed to such terms in such Schedules and Exhibits.

     (a) "<u>Apache</u>" means Apache Corporation, a Delaware corporation.

     (b) "<u>Apache PSA</u>" means that certain Purchase and Sale Agreement, dated as of July 18, 2013, by and among Apache, Apache Deepwater LLC, Apache Shelf, Inc., Apache Shelf Exploration LLC, GOM Shelf, and FWE, as amended from time to time, and the transaction documents executed in connection therewith.

     (c) "<u>Asset</u>" means any individual asset, property, right, or interest in any of the FWE I Assets or the FWE III Assets; "<u>Assets</u>" means, collectively, the FWE I Assets and the FWE III Assets.

     (d) "<u>Bankruptcy Code</u>" has the meaning ascribed to such term in the recitals hereto.

     (e) "<u>Bankruptcy Court</u>" has the meaning ascribed to such term in the recitals hereto.

     (f) "<u>Case</u>" has the meaning ascribed to such term in the recitals hereto.

     (g) "<u>Casualty</u>" means an event in which any portion of the Assets is damaged or destroyed or otherwise impaired by fire, explosion, tornado, hurricane, earthquake, earth movement, flood, water damage, or other similar casualty or is taken in condemnation or under right of eminent domain.

     (h) "<u>Certificate of Merger</u>" has the meaning ascribed to such term in <u>Section 1</u> hereto.

     (i) "<u>Chapter 11 Cases</u>" has the meaning ascribed to such term in the recitals hereto.

(j)      "Closing Accounts Receivable" has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

(k)      "Closing Date Payable" has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

(l)      "Confirmation Order" has the meaning ascribed to such term in the recitals hereto.

(m)      "Contract" means any contract, lease, license, purchase order, sales order, indenture, note, bond, loan, instrument, obligation, promise, grant, or other agreement, arrangement, understanding or commitment, whether or not in written form, that is binding upon a Person or its property.

(n)      "Conveyed" means conveyed, assigned, or sold pursuant to the Apache PSA, regardless of whether such conveyance, assignment, or bill of sale was recorded in the appropriate records of, or approved or recognized by, the applicable Governmental Authority.

(o)      "Credit Bid Acquired Interests" has the meaning ascribed to such term in the recitals hereto.

(p)      "Credit Bid Assumed Liabilities" has the meaning ascribed to such term in the recitals hereto.

(q)      "Credit Bid Purchase Agreement" means the Purchase and Sale Agreement, **[dated [●], [●], by and among FWE, [FWE Affiliates] and FWE II]**.

(r)      "Credit Bid Transaction" has the meaning ascribed to such term in the recitals hereto.

(s)      "Debtor" and "Debtors" has the meaning ascribed to such term in the recitals hereto.

(t)      "Decommissioning" has the meaning ascribed to such term in the Decommissioning Agreement.

(u)      "Decommissioning Agreement" has the meaning ascribed to such term clause (xix) in Part A of Schedule I attached hereto.

(v)      "Effective Time" has the meaning ascribed to such term in Section 1 hereto.

(w)      "Environmental Laws" means, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"); the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq.; the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.; the Clean Air Act, 42 U.S.C. § 7401 et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. § 5101 et seq.; the Toxic Substances Control Act, 15 U.S.C. §§ 2601 through 2629; the Oil Pollution Act, 33 U.S.C. § 2701 et seq.; the Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11001 et seq.; the Endangered Species Act, 16 U.S.C.

§ 1531 et seq.; and the Safe Drinking Water Act, 42 U.S.C. §§ 300f through 300j, in each case as amended in effect as of the Effective Time, and all similar laws in effect as of the Effective Time of any Governmental Authority having jurisdiction over the property in question addressing pollution, protection of the environment, biological resources, Hazardous Substances, or P&A Obligations.

(x)      "Environmental Liabilities" means any and all damages, remediation, obligations, liabilities, environmental response costs, costs to cure, cost to investigate or monitor, restoration costs, costs of remediation or removal, settlements, penalties, fines, and attorneys' and consultants fees and expenses arising out of or related to any violations or non-compliance with any Environmental Laws, including any contribution obligation under CERCLA or any other Environmental Law or matters incurred or imposed pursuant to any claim or cause of action by a Governmental Authority or other Person, attributable to any environmental liabilities, any Release of Hazardous Substances, or any other environmental condition with respect to the ownership or operation of the Assets, including conditions of Facilities not in compliance with Laws promulgated by the Bureau of Ocean Energy Management ("BOEM"), the Bureau of Safety and Environmental Enforcement ("BSEE"), or the United States Coast Guard.

(y)      "Facilities" means the FWE I Facilities, the Wind Down Facilities, or the Predecessor Facilities, as applicable.

(z)      "Fieldwood Joint Use Property" has the meaning ascribed to such term in Section 6 hereto.

(aa)      "FWE" has the meaning ascribed to such term in the recitals hereto.

(bb)      "FWE I" has the meaning ascribed to such term in the recitals hereto.

(cc)      "FWE I Assets" has the meaning ascribed to such term in Section 2(d) hereto.

(dd)      "FWE I Cash Amount" has the meaning ascribed to such term in clause (xxiii) of Part A of Schedule I hereto.

(ee)      "FWE I Contracts" has the meaning ascribed to such term in clause (x) in Part A of Schedule I attached hereto.

(ff)      "FWE I Facilities" has the meaning ascribed to such term in clause (iii) in Part A of Schedule I attached hereto.

(gg)      "FWE I Lands" has the meaning ascribed to such term in clause (i) in Part A of Schedule I attached hereto.

(hh)      "FWE I Leases" has the meaning ascribed to such term in clause (i) in Part A of Schedule I attached hereto.

(ii)      "FWE I Permits" has the meaning ascribed to such term in clause (vi) in Part A of Schedule I attached hereto.

(jj)     "FWE I Obligations" has the meaning ascribed to such term in Section 2(e) hereto.

(kk)     "FWE I Rights of Way" has the meaning ascribed to such term in clause (v) in Part A of Schedule I attached hereto.

(ll)     "FWE I Subsidiaries" means GOM Shelf and the other entities listed on Exhibit I-I.

(mm)     "FWE I Units" has the meaning ascribed to such term in clause (i) in Part A of Schedule I attached hereto.

(nn)     "FWE I Wells" has the meaning ascribed to such term in clause (ii) in Part A of Schedule I attached hereto.

(oo)     "FWE II" means **[insert Buyer under the Credit Bid Purchase Agreement]**.

(pp)     "FWE II Retained Properties" has the meaning ascribed to such term in Part A of Schedule I attached hereto.

(qq)     "FWE II Retained Properties Payables" has the meaning ascribed to such term in the Credit Bid Purchase Agreement.

(rr)     "FWE III" has the meaning ascribed to such term in the recitals hereto.

(ss)     "FWE III Assets" has the meaning ascribed to such term in Section 2(f) hereto.

(tt)     "FWE III Obligations" has the meaning ascribed to such term in Section 2(g) hereto.

(uu)     "GOM Shelf" means GOM Shelf LLC, a Delaware limited liability company.

(vv)     "GOM Shelf Oil and Gas Properties" means the ownership interests held by GOM Shelf immediately prior to the closing of the transactions under the Apache PSA in (i) the oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in Hydrocarbons in place and mineral interests or servitudes of every nature in, on, under, and that may be produced from or attributable to any of the lands covered by such leases, subleases, interests, and rights, whether legal or equitable, vested or contingent, and regardless of whether the same are expired or terminated, including those described on Exhibit I-A attached hereto that are identified as GOM Shelf Leases thereon (collectively, the "GOM Shelf Leases"), (ii) all pooled, communitized, or unitized acreage that includes all or part of any GOM Shelf Leases (the "GOM Shelf Units"), (iii) all tenements, hereditaments, and appurtenances belonging to the GOM Shelf Leases and the GOM Shelf Units (collectively with the GOM Shelf Leases and GOM Shelf Units, the "GOM Shelf

Lands"), and (iv) any and all Hydrocarbon, water, $CO_2$, injection wells or other wells completed on, drilled from, or otherwise located, in whole or in part, on, under, or within the GOM Shelf Lands, in each case whether producing, non-producing, shut in, or permanently or temporarily Plugged and Abandoned, including the wells set forth on Exhibit I-B attached hereto that are identified as GOM Shelf Wells thereon and all wellbores spudded prior to the Effective Time located on the GOM Shelf Lands (the "GOM Shelf Wells"); for the avoidance of doubt, (x) the GOM Shelf Oil and Gas Properties shall not include any of the FWE II Retained Properties, (y) the GOM Shelf Lands shall include only the ownership interests therein held by GOM Shelf immediately prior to the closing of the transactions under the Apache PSA and the descriptions in Exhibit I-A shall reference only such ownership interests, and (z) the GOM Shelf Wells shall include only the ownership interests therein held by GOM Shelf immediately prior to the closing of the transactions under the Apache PSA and the descriptions in Exhibit I-B shall reference only such ownership interests.

(ww)   "GOM Shelf Properties" means those assets or properties owned by GOM Shelf.

(xx)   "Governmental Authority" means any federal, state, municipal, tribal, local, or similar governmental authority, regulatory, or administrative agency, court, or arbitral body, or any subdivision of any of the foregoing.

(yy)   "Hazardous Substances" means any pollutant, contaminant, dangerous or toxic substance, hazardous or extremely hazardous substance or chemical, or otherwise hazardous material or waste defined as "hazardous waste", "hazardous substance" or "hazardous material" under applicable Environmental Laws, including chemicals, pollutants, contaminants, wastes, or toxic substances that are classified as hazardous, toxic, radioactive, or otherwise are regulated by, or form the basis for Liability under, any applicable Environmental Law, including hazardous substances under CERCLA.

(zz)   "Hydrocarbons" means oil and gas and other hydrocarbons produced or processed in association therewith (regardless of whether such item is in liquid or gaseous form), or any combination thereof, and any minerals (whether in liquid or gaseous form) produced in association therewith, including all crude oil, gas, casinghead gas, condensate, natural gas liquids, and other gaseous or liquid hydrocarbons (including ethane, propane, iso-butane, nor-butane, gasoline, and scrubber liquids) of any type and chemical composition.

(aaa)   "Imbalance" means any over-production, under-production, over-delivery, under-delivery, or similar imbalance of Hydrocarbons produced from or allocated to the FWE I Assets or the FWE III Assets, as applicable, regardless of whether such over-production, under-production, over-delivery, under-delivery, or similar imbalance arises at the wellhead, pipeline, gathering system, transportation system, processing plant, or other location, including any imbalances under gas balancing or similar agreements, imbalances under processing agreements, and imbalances under gathering or transportation agreements.

9

(bbb)   "Implementation Cost Cap" shall be an amount equal to $[●].[3]

(ccc)   "Interim Unpaid P&A Expenses" has the meaning ascribed to such term in clause (ix) in Part B of Schedule I attached hereto.

(ddd)   "JIB Advance AR" has the meaning ascribed to such term in clause (xvi) in Part A of Schedule I attached hereto.

(eee)   "Laws" means all laws (including common law), statutes, rules, regulations, ordinances, orders, decrees, requirements, judgments, and codes of Governmental Authorities.

(fff)   "Merger" has the meaning ascribed to such term in the recitals hereto.

(ggg)   "Obligation" means any individual liability or obligation in any of the FWE I Obligations or the FWE III Obligations; "Obligations" means, collectively, the FWE I Obligations and the FWE III Obligations.

(hhh)   "P&A Obligations" means any and all obligations, liabilities, damages, losses, and claims arising out of or attributable to the payment or performance of all Plugging and Abandonment.

(iii)   "Person" means any individual, corporation, partnership, limited liability company, trust, estate, Governmental Authority, or any other entity.

(jjj)   "Plan Effective Date" means the date on which the [Plan of Reorganization/Confirmation Order becomes effective].

(kkk)   "Plan of Merger" has the meaning ascribed to such term in the recitals hereto.

(lll)   "Plan of Reorganization" has the meaning ascribed to such term in the recitals hereto.

(mmm) "Plugging and Abandonment" and "Plug and Abandon" and its derivatives mean all plugging, replugging, abandonment, re-plugging and re-abandonment, equipment removal, disposal, or restoration associated with the properties and assets included in or burdened by the FWE I Assets or the FWE III Assets, as applicable, including all plugging and abandonment, removal, dismantling, decommissioning, surface and subsurface restoration, site clearance, and disposal of the FWE I Wells, the Wind Down Wells, or the Predecessor Wells, as applicable, or the FWE I Facilities, the Wind Down Facilities, and the Predecessor Facilities, as applicable, well cellars, fixtures, platforms, caissons, flowlines, pipelines, structures, and personal property of whatever kind located on or under, related to, or associated with operations and activities conducted by whomever with respect to each of the FWE I Assets and the FWE III Assets, as applicable, the flushing, pickling, burial, removal, and capping of all associated flowlines, field

---

[3] Note to Draft:  Implementation Costs Cap amount to be inserted once determined in accordance with Section 4 of the Apache Term Sheet Implementation Agreement.

transmission and gathering lines, pit closures, the restoration of the surface, site clearance, any disposal of related waste materials and Hazardous Substances and obligations to obtain plugging exceptions for any of the FWE I Wells, the Wind Down Wells, and the Predecessor Wells, as applicable, with a current plugging exception, all in accordance with all applicable Laws, the terms and conditions of each of the FWE I Leases, the Wind Down Leases, and the Predecessor Leases, as applicable, or similar leasehold interests, beneficial interests, easements and the FWE I Leases, the Wind Down Leases, and the Predecessor Leases, as applicable.

(nnn)   "Predecessor Assets" has the meaning ascribed to such term in Section 2(f) hereto.

(ooo)   "Predecessor Contracts" has the meaning ascribed to such term in clause (x) in Part A of Schedule III attached hereto.

(ppp)   "Predecessor Facilities" has the meaning ascribed to such term in clause (iii) in Part A of Schedule III attached hereto.

(qqq)   "Predecessor Lands" has the meaning ascribed to such term in clause (i) in Part A of Schedule III attached hereto.

(rrr)   "Predecessor Leases" has the meaning ascribed to such term in clause (i) in Part A of Schedule III attached hereto.

(sss)   "Predecessor Obligations" has the meaning ascribed to such term in Section 2(g) hereto.

(ttt)   "Predecessor Oil and Gas Properties" has the meaning ascribed to such term in clause (ii) in Part A of Schedule III attached hereto.

(uuu)   "Predecessor Permits" has the meaning ascribed to such term in clause (vi) in Part A of Schedule III attached hereto.

(vvv)   "Predecessor Rights of Way" has the meaning ascribed to such term in clause (v) in Part A of Schedule III attached hereto.

(www) "Predecessor Suspense Funds" has the meaning ascribed to such term in clause (xvii) in Part A of Schedule III attached hereto.

(xxx)   "Predecessor Units" has the meaning ascribed to such term in clause (i) in Part A of Schedule III attached hereto.

(yyy)   "Predecessor Wells" has the meaning ascribed to such term in clause (ii) in Part A of Schedule III attached hereto.

(zzz)   "Prepaid JIB Cash Amount" has the meaning ascribed to such term in clause (xvi) in Part A of Schedule I attached hereto.

WEIL:\97614386\42\45327.0007

(aaaa) "Proprietary Seismic Data" means any and all proprietary Seismic Data owned (but not licensed) by FWE related to the FWE I Assets and/or the FWE III Assets.

(bbbb) "Records" means all books, records, files, data, information, drawings, maps, corporate, financial, tax, and legal data and records to the extent (and only to the extent) related to the FWE I Assets, the FWE I Obligations, the FWE III Assets, and/or the FWE III Obligations, as applicable, including electronic copies of all computer records where available, contract files, lease files, well logs, division order files, title opinions and other title information (including abstracts, evidences of rental payments, maps, surveys, and data sheets), hazard data and surveys, production records, SEMS Documentation and Procedures, Proprietary Seismic Data, engineering files, and environmental records.

(cccc) "Release" means any discharge, emission, spilling, leaking, pumping, pouring, injecting, dumping, burying, leaching, migrating, abandoning, or disposing into or through the environment of any Hazardous Substance, including the abandonment or discarding of barrels, containers, and other closed receptacles containing any Hazardous Substance.

(dddd) "Royalties" means all rentals, minimum royalties, shut in payments, royalties, overriding royalties, reversionary interests, net profits interests, production payments, carried interests, non-participating royalty interests, reversionary interests, and other royalty burdens and other interests payable out of production of Hydrocarbons from or allocated to the FWE I Oil and Gas Properties, the GOM Shelf Oil and Gas Properties, the Wind Down Oil and Gas Properties, or the Predecessor Oil and Gas Properties, as applicable, or the proceeds thereof to third parties.

(eeee) "Seismic Data" means any and all seismic, geological, geochemical, and geophysical data (including core and fluid samples and other engineering, geological, and/or geophysical studies (including seismic data, studies, and information)), all licensed or proprietary or confidential geologic, seismic, geophysical, and interpretative data, records, and analyses, including any and all interpretations, derivative data, and other work products of any of the foregoing, and other similar information and records, in each case relating to the Assets or the regional area surrounding the Assets.

(ffff) "SEMS Documentation and Procedures" means all documents and procedures in place by FWE to comply with BSEE's Safety and Environmental Management System (SEMS) 30 CFR 250 Subpart S with respect to the FWE I Assets and/or the FWE III Assets.

(gggg) "Standby Facility" means a secured line of credit to be provided by Apache to FWE I and GOM Shelf to fund the ongoing Plugging and Abandonment of the Legacy Apache Properties (as such term is defined in the FWE I LLC Agreement) and the GOM Shelf Properties, which shall become available to advance funds to FWE I and for use in accordance with the Standby Credit Facility Documents.  The Standby Facility shall be secured by a first-priority lien on all the assets of FWE I (including all of the equity interests of GOM Shelf) and on all the GOM Shelf Properties, provided that such lien shall also secure the obligations of FWE I to Apache under the Decommissioning Agreement.

(hhhh) "<u>Standby Credit Facility Documents</u>" means the Standby Loan Agreement, to be entered into promptly after the Effective Time, by and between FWE I and GOM Shelf, as borrowers, and Apache, as lender, and all of the other agreements, documents, and instruments related thereto governing or setting forth terms and conditions of the Standby Facility or of the loans/borrowings made thereunder.

(iiii)    "<u>Suspense Funds</u>" means any and all funds held in suspense by FWE at the Effective Time, and any interest accrued in escrow accounts for such suspended funds.

(jjjj)    "<u>TBOC</u>" has the meaning ascribed to such term in the recitals hereto.

(kkkk) "<u>Wind Down Assets</u>" has the meaning ascribed to such term in <u>Section 2(f)</u> hereto.

(llll)    "<u>Wind Down Contracts</u>" has the meaning ascribed to such term in <u>clause (x)</u> in <u>Part A</u> of <u>Schedule II</u> attached hereto.

(mmmm)    "<u>Wind Down Facilities</u>" has the meaning ascribed to such term in <u>clause (iii)</u> in <u>Part A</u> of <u>Schedule II</u> attached hereto.

(nnnn) "<u>Wind Down Lands</u>" has the meaning ascribed to such term in <u>clause (i)</u> in <u>Part A</u> of <u>Schedule II</u> attached hereto.

(oooo) "<u>Wind Down Leases</u>" has the meaning ascribed to such term in <u>clause (i)</u> in <u>Part A</u> of <u>Schedule II</u> attached hereto.

(pppp) "<u>Wind Down Obligations</u>" has the meaning ascribed to such term in <u>Section 2(g)</u> hereto.

(qqqq) "<u>Wind Down Oil and Gas Properties</u>" has the meaning ascribed to such term in <u>clause (ii)</u> in <u>Part A</u> of <u>Schedule II</u> attached hereto.

(rrrr)    "<u>Wind Down Permits</u>" has the meaning ascribed to such term in <u>clause (vi)</u> in <u>Part A</u> of <u>Schedule II</u> attached hereto.

(ssss)    "<u>Wind Down Rights of Way</u>" has the meaning ascribed to such term in <u>clause (v)</u> in <u>Part A</u> of <u>Schedule II</u> attached hereto.

(tttt)    "<u>Wind Down Suspense Funds</u>" has the meaning ascribed to such term in <u>clause (xvii)</u> in <u>Part A</u> of <u>Schedule II</u> attached hereto.

(uuuu) "<u>Wind Down Units</u>" has the meaning ascribed to such term in <u>clause (i)</u> in <u>Part A</u> of <u>Schedule II</u> attached hereto.

(vvvv) "<u>Wind Down Wells</u>" has the meaning ascribed to such term in <u>clause (ii)</u> in <u>Part A</u> of <u>Schedule II</u> attached hereto.

WEIL:\97614386\42\45327.0007

8.      <u>Choice of Law</u>.   This Plan of Merger shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Texas and without regard to any borrowing statute that would result in the application of the statutes of limitations or repose of any other jurisdiction.   In furtherance of the foregoing, the laws of the State of Texas will control even if under such jurisdiction's choice of law or conflict of law analysis, the substantive or procedural law of some other jurisdiction would ordinarily or necessarily apply.

9.      <u>FWE III Obligation to Pay Recording Expenses</u>. Subject to the Implementation Costs Cap, FWE III shall, and shall cause its debtor affiliates in the Chapter 11 Cases to, on the Plan Effective Date, provide for the payment of any and all documentary, filing, recording, stamp, and registration fees, costs, taxes, and expenses (including all reasonable and documented attorneys' fees and regulatory consultant fees) incurred or imposed after the Effective Time in connection with the filing of record by or on behalf of FWE I or GOM Shelf of any instrument or instruments with the appropriate records office of any county, parish, state, federal, or other governmental unit (including BOEM) that may be required in connection with the implementation of the Merger or that either FWE I or GOM Shelf determines in its respective sole discretion to be necessary or appropriate to reflect in the appropriate records of any governmental unit that as a result of the Merger (a) ownership of the FWE I Assets have been allocated to and are vested in FWE I (and to the extent appropriate to reflect ownership of the GOM Shelf Properties in  GOM Shelf), and (b) the liabilities and obligations to be allocated to and vested in, respectively, FWE I or FWE III pursuant to the Merger have been allocated to and vested in, and constitute liabilities and obligations of, FWE I and FWE III, respectively (collectively, the "<u>Implementation Costs</u>"). For the avoidance of doubt, the documentary, filing, recording, stamp, and registration fees of FWE I or GOM Shelf shall include such costs and expenses required to file or to cause to be filed of record in the records office, as determined by Apache to be appropriate, of any county, parish, state, federal, or other governmental unit (including BOEM) of the mortgages, security interests, and similar security documentation as is contemplated by the Standby Facility and the Standby Facility Documents to secure the obligations of FWE I and GOM Shelf thereunder.  Any Implementation Costs that exceed the Implementation Costs Cap shall be the sole responsibility of and paid for by FWE I.

10.      <u>Interpretation</u>. The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof.   As used herein, the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation" and will not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.   Words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Plan of Merger as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.   All Exhibits and Schedules annexed hereto or referred to in this Plan of Merger are hereby incorporated in and made a part of this Plan of Merger as if set forth in full in this Plan of Merger, and definitions therein shall apply herein.   Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein will be defined as set forth in this Plan of Merger, and vice-versa.   A reference to any legislation or to any provision of any legislation shall include any modification or re-enactment thereof, any legislative provision substituted therefor, and all regulations and statutory instruments issued thereunder or pursuant thereto.

WEIL:\97614386\42\45327.0007

11.     <u>Rejected Contracts</u>.    Any Contract rejected pursuant to Section 365 of the Bankruptcy Code in the Chapter 11 Cases shall be deemed to be excluded and removed from any Exhibit or Schedule attached hereto, and any such Contract shall not be allocated to any of FWE I or FWE III, and any liabilities or obligations of such Contract shall be treated in accordance with the Plan of Reorganization and Confirmation Order or otherwise satisfied, compromised, settled, released, or discharged pursuant to the Plan of Reorganization and Confirmation Order.

*  *  *  *  *  *

IN WITNESS WHEREOF, the undersigned has duly executed this Plan of Merger as of the date first written above.

**FIELDWOOD ENERGY LLC**,
a Texas limited liability company


By: _____
Name:
Title:

**<u>Exhibit A</u>**

**Certificate of Merger**

[see attached]

## **Exhibit B**

### **Certificate of Formation – FWE I**

[see attached]

**Schedule I** [4]

**FWE I Assets and FWE I Obligations**

Part A:

"FWE I Assets" means all of FWE's right, title, and interest in, to, or under the following, less and except any FWE II Retained Properties:

    (i)    the ownership interests Conveyed[5] to FWE pursuant to the Apache PSA in the oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in or to Hydrocarbons in place and mineral interests or servitudes of every nature, in, on, under, and that may be produced from or attributable to any of the lands covered by such leases, subleases, interests, and rights, whether legal or equitable, vested or contingent, and regardless of whether the same are expired or terminated, including those described on Exhibit I-A attached hereto that are identified as FWE I Leases thereon (collectively, the "FWE I Leases"), together with all pooled, communitized, or unitized acreage that includes all or part of any of the FWE I Leases (the "FWE I Units"), and all tenements, hereditaments, and appurtenances belonging to the FWE I Leases and the FWE I Units (collectively with the FWE I Leases and FWE I Units, the "FWE I Lands"); for the avoidance of doubt, the FWE I Lands shall only include the ownership interests therein Conveyed to FWE pursuant to the Apache PSA and the descriptions in Exhibit I-A shall only reference such ownership interests;

    (ii)    the ownership interests Conveyed to FWE pursuant to the Apache PSA in any and all Hydrocarbon, water, CO2, injection, disposal wells or other wells completed on, drilled from, or otherwise located, in whole or in part,[6] on, under, or within the FWE I Lands, in each case whether producing, non-producing, shut in, or temporarily or permanently Plugged and Abandoned, including the wells set forth on Exhibit I-B attached hereto that are identified as FWE I Wells thereon and all wellbores spudded prior to the Effective Time located on the FWE I Lands (the "FWE I Wells" and, together with the FWE I Leases and the FWE I Units, but excluding the FWE II Retained Properties, the "FWE I Oil and Gas Properties"); for the avoidance of doubt, the FWE I Wells shall only include the ownership interests therein Conveyed to FWE pursuant

---

[4] **Note to Draft**:  In the event an asset not included on the schedules hereto is identified after the parties have agreed to the final form of this Plan of Merger, but prior to the Effective Time, subject to the agreement of the parties, the applicable schedule shall be updated to include and provide for the allocation of such asset.

[5] **Note to Draft**:   Any additional interests in the FWE I Assets acquired by FWE other than under the Apache PSA ("Add-On Interests") are to be identified by FWE and if, upon being identified, Apache agrees to the inclusion of such interest in the FWE I Assets Schedule I will be modified to include such interests and if Apache does not agree then such interests will be allocated to and vested in FWE III to the extent held by FWE as of the Effective Time.

[6] **Note to Draft**:  FWE to confirm whether there are any wells that are not Legacy Apache Properties that would otherwise fall within this description, and, if so, expressly exclude those wells and allocate them to FWE III.

to the Apache PSA and the descriptions in <u>Exhibit I-B</u> shall only reference such ownership interests;

(iii)    all platforms and facilities, including all associated processing systems, buildings, compressors, meters, tanks, machinery, tools, personal property, equipment (including spars, trees, PLETs, jumpers, flowlines, risers, umbilicals, control assemblies, and production handling equipment), pipelines, gathering lines, water lines, tank batteries, pipeline capacity, other water gathering, transportation, or disposal infrastructure and equipment, frac tanks, ponds, metering facilities, interconnections, and other inventory, boats, vehicles, fixtures, improvements, and other property (whether real, immovable, personal, movable, mixed or otherwise) that (a) are located on or appurtenant to any of the FWE I Leases, the FWE I Lands, the FWE I Rights of Way, the FWE I Wells, or the GOM Shelf Oil and Gas Properties, (b) are used or held for use in whole or in part in connection with any of the FWE I Wells or the GOM Shelf Wells and the operation of any of the FWE I Leases, or the GOM Shelf Leases (whether located on or appurtenant to any of the FWE I Leases, the FWE I Lands, the FWE I Rights of Way, the FWE I Wells, the GOM Shelf Leases, the GOM Shelf Lands, the GOM Shelf Wells, or stored at a different location (onshore or offshore)), or (c) were acquired by FWE pursuant to the Apache PSA, but in such event only as to the interests so acquired by FWE under and pursuant to such Apache PSA, and such flowlines, pipelines, gathering lines, and/or pipeline capacity that either (1) are used or held for use in whole or in part in connection with any of the FWE I Leases, the FWE I Wells or the FWE I Units operations or the production, transportation, or processing of Hydrocarbons produced from any of the FWE I Oil and Gas Properties, or (2) were acquired by FWE pursuant to the Apache PSA, but in such event only as to the interests so acquired by FWE under and pursuant to such Apache PSA, including all platforms identified on <u>Exhibit I-C(i)</u> attached hereto and all facilities identified on <u>Exhibit I-C(ii)</u> attached hereto (the "<u>FWE I Facilities</u>");

(iv)    the Proprietary Seismic Data and licensed Seismic Data relating, in whole or in part, to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties; [7]

(v)    all surface fee interests, easements, right-of-use easements, licenses, servitudes, rights-of-way, surface leases, authorizations, permits, and other rights to use the surface or seabed appurtenant to, and held for use in whole or in part in connection with, the ownership or operation of any or all of the GOM Shelf Oil and Gas Properties or any or all of the properties, rights, titles, and interests described in clauses (i) through (iii) and (vi) of this <u>Schedule I</u>, <u>Part A</u>, but only to the extent such either (i) are used or held for use exclusively in connection with the ownership or operation of such properties, rights, titles, and interests, or (ii) were acquired by FWE pursuant to the Apache PSA, but in such event only as to the interests so acquired by FWE under and pursuant to such Apache PSA, including the property described on <u>Exhibit I-D(i)</u> attached hereto and <u>Exhibit I-D(ii)</u> attached hereto (the "<u>FWE I Rights of Way</u>");

(vi)    all environmental and other governmental (whether federal, state, or local) permits (including all plans filed with or approved by applicable Government Authorities), licenses, orders, authorizations, franchises, and related instruments or rights to the extent relating in whole or in part to the ownership, operation, or use of any or all of the GOM Shelf Oil and Gas Properties

---

[7] <u>**Note to Draft**</u>:  No proprietary seismic (remains under review).

Schedule I – FWE Wind Down
WEIL:\97614386\42\45327.0007

or any or all of the properties, rights, titles, and interests described in clauses (i) through (iii), (v) and (viii) of this Schedule I, Part A (the "FWE I Permits");[8]

(vii)   Service Agreement, dated April 1, 2015, applicable to Firm Transportation Service under FT-2 Rate Schedule by and between Discovery Gas Transmission LLC as Transporter and Fieldwood Energy LLC as Shipper;

(viii)   all Hydrocarbons in, on, under, or that may be produced from or attributable to the FWE I Leases, the FWE I Units, or the FWE I Wells, including all oil, condensate, and scrubber liquids inventories and ethane, propane, iso-butane, nor-butane, and gasoline inventories of FWE from the FWE I Oil and Gas Properties in storage or constituting linefill and Imbalances;

(ix)   the FCC licenses associated with the call signs listed on Exhibit I-E attached hereto;[9]

(x)   all contracts, agreements, leases, licenses, commitments, sales and purchase orders, and other instruments that relate, in whole or in part, to the ownership or operation of any or all of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties (and including any insurance contract if such insurance contract provides coverage for any incident that occurs on any FWE I Asset(s) or the GOM Shelf Oil and Gas Properties at, before, or after the Effective Time, but excluding all derivative or hedge agreements (including any ISDAs) or rights thereunder) or any other properties, rights, titles, and interests described in the clauses of this Schedule I, Part A, including operating agreements, unitization, pooling, and communitization agreements, declarations and orders, area of mutual interest agreements, exploration agreements, joint venture agreements, farmin and farmout agreements, exchange agreements, purchase and sale agreements, and other contracts relating to the FWE I Assets (but expressly excluding any such agreements pursuant to which FWE acquired interests in or to any other FWE I Assets in addition to the rights, title, and interests acquired by FWE under the Apache PSA), transportation agreements, agreements for the sale and purchase of Hydrocarbons, processing agreements, and service agreements (together with the agreements referenced in clause (xxii) below), including the contracts listed on Exhibit I-F attached hereto (the "FWE I Contracts");

(xi)   originals of the Records that relate, in whole or in part, to any one or more of the FWE I Assets, the FWE I Obligations, or the GOM Shelf Oil and Gas Properties (whether or not such Records also relate to any one or more of the FWE III Obligations or the FWE III Assets);

(xii)   inventory, equipment, machinery, tools, and other personal property, to the extent located on the FWE I Facilities or, if located elsewhere, used or held for use, in whole or part, in connection with the FWE I Oil and Gas Properties, the FWE I Facilities, or the GOM Shelf Oil and Gas Properties, or charged to the joint account pursuant to the applicable FWE I Contracts, including those items listed on Exhibit I-G attached hereto;

---

[8] **Note to Draft**:  To be determined if there are Permits used for the FWE I Assets and also FWE III such that FWE III will need to obtain its own permits.

[9] **Note to Draft**:  To include licenses for GOM Shelf if not held by GOM Shelf directly.  FWE confirming there are only 5 licenses relating to all of the FWE I and GOM Shelf properties.

(xiii)   FWE-owned SCADA equipment and all automation systems, including meters and related telemetry, licensed radio frequencies, and associated communications infrastructure including towers, antennas, data links, and network circuits used or held for use, in whole or in part, in connection with the FWE I Oil and Gas Properties, the FWE I Facilities, or the GOM Shelf Oil and Gas Properties, or for the production of Hydrocarbons therefrom;

(xiv)   all deposits with third parties, escrow accounts, guarantees, letters of credit, treasury securities, insurance policies relating, in whole or in part, to the FWE I Assets, surety bonds, all Oil Spill Financial Responsibility coverage (whether consisting of one or more insurance policies) and other forms of credit assurances or credit support provided by a third party for the benefit of FWE for financial assurance for the obligations and liabilities arising out of or related to the FWE I Assets, the GOM Shelf Oil and Gas Properties, or GOM Shelf, including the Plugging and Abandonment Obligations arising out of or related to the FWE I Assets or the GOM Shelf Oil and Gas Properties, including those items listed on Exhibit I-H attached hereto;

(xv)   all agreements and memberships relating, in whole or in part, to well containment/control, clean-up of spills, or other pollution, or the gathering of data relating to certifications required to be made to Governmental Authorities with respect to the FWE I Assets or GOM Shelf Oil and Gas Properties;[10]

(xvi)   all (i) accounts receivable as of the Effective Time associated with the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties other than the Closing Accounts Receivable, (ii) instruments and general intangibles (as such terms are defined in the Uniform Commercial Code of the applicable jurisdictions in which the FWE I Oil and Gas Properties or GOM Shelf Oil and Gas Properties to which such assets relate are located) and other economic benefits in each case attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties (excluding only the Closing Accounts Receivable); *provided*, that, for the avoidance of doubt, nothing in the preceding clauses (i) or (ii) shall be interpreted to limit the scope of "Closing Accounts Receivable" as that term is defined in the Credit Bid Purchase Agreement, (iii) claims of indemnity, contribution, or reimbursement of FWE or of GOM Shelf, in each case, relating to the FWE I Obligations or obligations of GOM Shelf, (iv) Imbalances receivables of FWE or of GOM Shelf, in each case, attributable to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, (v) rights to insurance proceeds or other claims of recovery, indemnity, contribution, or reimbursement of FWE attributable to the FWE I Assets or the GOM Shelf Oil and Gas Properties due to casualty or other damage or destruction of or to the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, (vi) cash in the amount of advance payments on account of third party working interest owners in the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties ("Prepaid JIB Cash Amount"), to the extent such Prepaid JIB Cash Amount is associated with FWE I Obligations, and (vii) rights to receive and collect cash and advance payments pursuant to cash calls associated with the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties ("JIB Advance AR"), to the extent such JIB Advance AR is associated with FWE I Obligations;

---

[10] **Note to Draft**:  There are not any memberships that are specific to the FWE I Assets; may need new agreements. Under further review.

(xvii) all Suspense Funds (i) of FWE to the extent attributable to any of the FWE I Oil and Gas Properties or the GOM Shelf Oil and Gas Properties, and (ii) of GOM Shelf (collectively, "FWE I Suspense Funds");

(xviii) all equity interests set forth on Exhibit I-I ("FWE I Subsidiaries");

(xix)  the Decommissioning Agreement, dated as of September 30, 2013, by and among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, FWE and GOM Shelf LLC, as amended by (i) the First Amendment thereto, dated as of September 30, 2013, (ii) the Second Amendment thereto, dated as of September 30, 2013, (iii) the Third Amendment thereto, dated effective as of April 25, 2017, (iv) the Fourth Amendment thereto dated effective as of September 1, 2017, as amended by that certain Letter Agreement, dated January 3, 2018, and (v) the Fifth Amendment thereto, dated effective as of April 11, 2018 (the "Decommissioning Agreement");

(xx)   the Apache PSA and the transaction documents entered into in connection with the consummation of the transactions contemplated thereby, including the Joint Exploration Agreement (as defined in the Apache PSA), the Master Facilities Use, Access, Production Handling and Transportation Agreement (as defined in the Apache PSA), and the Fully Paid Up Turnkey Removal Contract (as defined in the Apache PSA);

(xxi)  all rights [**to the BOEM qualification held by FWE immediately prior to the Effective Time and its BOEM operator number (GOM #3295), and**][11] all area-wide operator bonds, supplemental bonds, or other securities, or any authorization or permission from, the BOEM, BSEE, or any other Governmental Authority, held by FWE (a) in whole or in part for any FWE I Assets (which, for the avoidance of doubt, include all rights of FWE in any area-wide bonds)[12] or (b) with respect to GOM Shelf,  in whole or in part for any of the GOM Shelf Oil and Gas Properties;

(xxii) beneficial ownership of The Trust established by that certain Fieldwood Decommissioning Trust A Trust Agreement dated September 30, 2013;

(xxiii) cash in an amount (the "FWE I Cash Amount") equal to $50.0 million minus the sum of (a) the actual cash expenditures paid by FWE for Plugging and Abandonment costs and expenses on the FWE I Assets between the filing on August 3, 2020 of the Chapter 11 Cases and the Effective Time and (b) the actual cash payments made by FWE between January 4, 2021 and the Effective Time to the individual engaged as the sole manager of FWE I;

(xxiv) the Fieldwood Joint Use Properties as specified in Section 6 of the Plan of Merger; and

---

[11] **Note to Draft**:  Now that FWE I is no longer the surviving entity under the divisive merger, to confirm whether BOEM qualification will be permitted to "vest" in FWE I or whether FWE I will be required to obtain its own qualification separate from FWE's qualification (which will inure to FWE III instead).

[12] **Note to Draft**:  to confirm if area-wide bonds will be permitted to be split between FWE I and FWE III per the divisive merger.  If not and FWE I gets such bonds, then FWE III may need to post its own separate area-wide bonds. Who will pay for such?

Schedule I – FWE Wind Down
WEIL:\97614386\42\45327.0007

(xxv)  the specific interests in and to the wells, pipelines, platforms, and facilities set forth on <u>Exhibit I-K</u> which were acquired or assumed by FWE as a result of co-owner actions under applicable joint or unit operating agreements or as a result of a recalculation determined in accordance with the terms of a FWE I Contract, and such interests will be deemed to be included in the FWE I Leases, FWE I Units, FWE I Lands , FWE I Wells , FWE I Facilities , and FWE I Rights-of-Way, as applicable.[13]

For the avoidance of doubt, the FWE I Assets do not include any of the leases, rights of way, or other assets specified in <u>Exhibit I-J</u>[14] attached hereto (such assets, collectively, the "<u>FWE II Retained Properties</u>"), which FWE II Retained Properties were conveyed to FWE II pursuant to the Credit Bid Purchase Agreement, and the FWE I Obligations shall not include any obligations attributable to such FWE II Retained Properties.

Part B:

"<u>FWE I Obligations</u>" means (A) all of the obligations and liabilities (contractual or otherwise) of FWE, without duplication, of any kind, character, or description (whether known or unknown, accrued, absolute, contingent, or otherwise) relating to, arising out of, or with respect to any of the FWE I Assets, the GOM Shelf Oil and Gas Properties, or FWE I's ownership interest in GOM Shelf, including obligations and liabilities of FWE:  (i) relating to the furnishing of makeup gas according to the terms of applicable gas sales, gathering, or transportation FWE I Contracts and all obligations with respect to Imbalances arising out of, related to, or attributable to FWE I's ownership interests in any of the FWE I Oil and Gas Properties or in GOM Shelf; (ii) with respect to Royalties arising out of, related to, or attributable to any of the FWE I Oil and Gas Properties, FWE I Suspense Funds, and Prepaid JIB Cash Amounts, including any reporting and/or mis-reporting, and payment and/or mis-payment of such Royalties, FWE I Suspense Funds, or Prepaid JIB Cash Amounts; (iii) constituting or related to Environmental Liabilities arising out of, related to, or attributable to any of the FWE I Assets; (iv) applicable to or imposed on the lessee, owner, operator, holder, responsible party, payor or designated applicant under or with respect to any of the FWE I Assets or GOM Shelf Oil and Gas Properties; (v) constituting or relating to any and all P&A Obligations related to FWE I's or GOM Shelf's, as the case may be, ownership interests in, or operation of,  any of the FWE I Assets or GOM Shelf Oil and Gas Properties; (vi) relating to the FWE I Suspense Funds; (vii) relating to the Decommissioning Agreement and the Decommissioning obligations thereunder; (viii) relating to the Apache PSA or any of the agreements entered into in connection with the consummation of the transactions contemplated

---

[13]  **Note to Draft**:  If the parties agree to include Add-On Interests in the FWE I Assets, <u>Exhibit I-K</u> will be added to specifically identify the interests agreed upon to be included.  If the parties do not agree to include Add-On Interests in the FWE I Assets, item (xxv) will be deleted.

[14]  **Note to Draft**:  <u>Exhibit I-J</u> should list as FWE II Retained Properties the properties included in the fields which are identified to be owned and operated by FWE II on Schedule A to the Term Sheet dated July 31, 2020.  **[NTD: per HAK**, FWE to confirm these properties consist of only the following properties: Oil and Gas Lease bearing Serial No. OCS-G 21685 covering South Timbalier 308, Oil and Gas Lease bearing Serial No. OCS-G24987 covering South Timbalier 287, Oil and Gas Lease bearing Serial No. OCS-G10687 covering Vermilion 287, Oil and Gas Lease bearing Serial No. OCS-G09522 covering Vermilion 363, Oil and Gas Lease bearing Serial No. OCS-G09524 covering Vermilion 371, Oil and Gas Lease bearing Serial No. OCS-G04421 covering Vermilion 78, Right of Way bearing Serial No. OCS-G29427 for Pipeline Segment No. 20278 pertaining to South Timbalier 308, and Right of Way bearing Serial No. OCS-G15047 for Pipeline Segment No. 10675 pertaining to Vermilion 371].

thereby, including the Joint Exploration Agreement (as defined in the Apache PSA), the Master Facilities Use, Access, Production Handling and Transportation Agreement (as defined in the Apache PSA), and the Fully Paid Up Turnkey Removal Contract (as defined in the Apache PSA); and (ix) expenses incurred by FWE for Plugging and Abandonment costs and expenses on the FWE I Assets between the filing on August 3, 2020, of the Chapter 11 Cases and the Effective Time to the extent not paid as of the Effective Time (such incurred but unpaid expenses, the "Interim Unpaid P&A Expenses"); and (B) the obligations of FWE I under Section 3(b)(i) of the Plan of Merger; provided, however, that, subject to the foregoing clause (B), the FWE I Obligations do not include (1) any of the FWE III Obligations, (2) any of the Credit Bid Assumed Liabilities, (3) obligations for personal injury or damage to property arising from the ownership or operation of any property that is not included in the FWE I Assets or GOM Shelf Oil and Gas Properties, and (4) any claims, liabilities, or obligations satisfied, compromised, settled, released, or discharged pursuant to the Plan of Reorganization and Confirmation Order.

**Schedule II**[15]

**Wind Down Assets and Wind Down Obligations**

<u>Part A</u>:

"<u>Wind Down Assets</u>" means all of FWE's right, title, and interest in, to, or under the following, subject to <u>Section 6</u> of the Plan of Merger:

  (i) the oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in and to Hydrocarbons in place and mineral interests or servitudes of every nature, in, on, under, and that may be produced from or attributable to any of the lands covered by the leases, subleases, interests, and rights described on <u>Exhibit II-A</u> attached hereto, whether legal or equitable, vested or contingent, and regardless of whether the same are expired or terminated (collectively, the "<u>Wind Down Leases</u>"), together with all pooled, communitized, or unitized acreage that includes all or part of any of the Wind Down Leases (the "<u>Wind Down Units</u>"), and all tenements, hereditaments, and appurtenances belonging to the Wind Down Leases and the Wind Down Units (collectively with the Wind Down Leases and Wind Down Units, the "<u>Wind Down Lands</u>");

  (ii) any and all Hydrocarbon, water, CO2, injection, disposal  wells or other wells located on, under, or within the Wind Down Lands described on <u>Exhibit II-B</u> attached hereto, in each case whether producing, non-producing, shut-ins, or temporarily or permanently Plugged and Abandoned, including the wells set forth on <u>Exhibit II-B</u> attached hereto and all wellbores spudded prior to the Effective Time located on the Wind Down Lands (the "<u>Wind Down Wells</u>" and, together with the Wind Down Leases and Wind Down Units, the "<u>Wind Down Oil and Gas Properties</u>");

  (iii) all platforms and facilities, including all associated processing systems, buildings, compressors, meters, tanks, machinery, tools, personal property, equipment (including spars, trees, PLETs, jumpers, flowlines, risers, umbilicals, control assemblies, and production handling equipment), pipelines, gathering lines, water lines, tank batteries, pipeline capacity, other water gathering, transportation, or disposal infrastructure and equipment, frac tanks, ponds, metering facilities, interconnections, and other inventory, boats, vehicles, fixtures, improvements, and other property (whether real, immovable, personal, movable, and mixed or otherwise) that is located on or appurtenant to any of the Wind Down Leases, the Wind Down Lands, the Wind Down Rights of Way, or the Wind Down Wells or used or held for use exclusively in connection with any of the Wind Down Wells and the operation of any of the Wind Down Leases (whether located on or appurtenant to any of the Wind Down Leases, the Wind Down Lands, the Wind Down Rights of Way, or the Wind Down Wells, or stored at a different location (onshore or offshore)), and such flowlines, pipelines, gathering lines, and/or pipeline capacity that are used or held for use exclusively in connection with any of the Wind Down Leases, the Wind Down

---

[15] <u>**Note to Draft**</u>:  In the event an asset not included on the schedules hereto is identified after the parties have agreed to the final form of this Plan of Merger, but prior to the Effective Time, subject to the agreement of the parties, the applicable schedule shall be updated to include and provide for the allocation of such asset.

Wells, or the Wind Down Units operations or the production, transportation, or processing of Hydrocarbons produced from any of the Wind Down Oil and Gas Properties, including all platforms identified on Exhibit II-C(i) attached hereto and all facilities identified on Exhibit II-C(ii) attached hereto, but excluding any FWE I Facilities (the "Wind Down Facilities");

(iv)     Proprietary Seismic Data and licensed Seismic Data relating exclusively to the Wind Down Oil and Gas Properties;

(v)     all surface fee interests, easements, right-of-use easements, licenses, servitudes, rights-of-way, surface leases, authorizations, permits, and other rights to use the surface or seabed appurtenant to, and used or held for use exclusively in connection with, the ownership or operation of any or all of the properties, rights, titles, and interests described in clauses (i) through (iii) and (vi) of this Schedule II, Part A, including the property described on Exhibit II-D(i) attached hereto and Exhibit II-D(ii) attached hereto (the "Wind Down Rights of Way");

(vi)     all environmental and other governmental (whether federal, state, or local) permits (including all plans filed with or approval by applicable Governmental Authorities), licenses, orders, authorizations, franchises, and related instruments or rights relating exclusively to the ownership, operation, or use of the properties, rights, titles, and interests described in clauses (i) through (iii), (v) and (viii) of this Schedule II, Part A (the "Wind Down Permits");

(vii)     all transportation agreements described on Exhibit II-F attached hereto;[16]

(viii)   all Hydrocarbons in, on, under, or that may be produced from or attributable to the Wind Down Leases, the Wind Down Units, or the Wind Down Wells, including all oil, condensate, and scrubber liquids inventories and ethane, propane, iso-butane, nor-butane, and gasoline inventories of FWE from the Wind Down Oil and Gas Properties in storage or constituting linefill and Imbalances;

(ix)     the FCC licenses associated with the call signs listed on Exhibit II-E attached hereto;

(x)     all contracts, agreements, leases, licenses, commitments, sales and purchase orders, and other instruments that relate exclusively to the ownership or operation of any or all of the Wind Down Oil and Gas Properties  or any other properties, rights, titles, and interests described in the clauses of this Schedule II, Part A, including operating agreements, unitization, pooling, and communitization agreements, declarations and orders, area of mutual interest agreements, exploration agreements, joint venture agreements, farmin and farmout agreements, exchange agreements, purchase and sale agreements, and other contracts in which FWE acquired interests in any other Wind Down Assets, transportation agreements, agreements for the sale and purchase of Hydrocarbons, processing agreements, and service agreements, including the contracts listed on Exhibit II-F attached hereto (the "Wind Down Contracts");

---

[16] **Note to Draft**: To be determined if any FERC regulated transportation agreements need FERC waivers.

Schedule II – FWE Wind Down
WEIL:\97614386\42\45327.0007

(xi)    originals of the Records that relate solely to the Wind Down Assets or the Wind Down Obligations, or both, and copies of the Records that constitute FWE I Assets or Predecessor Assets and also relate to either or both of the Wind Down Assets or the Wind Down Obligations;

(xii)    inventory, equipment, machinery, tools, and other personal property, to the extent located on the Wind Down Facilities or, if located elsewhere, used or held for use exclusively in connection with the Wind Down Oil and Gas Properties or the Wind Down Facilities or charged to the joint account pursuant to the applicable Wind Down Contracts, including those items listed on Exhibit II-G attached hereto;

(xiii)    FWE-owned SCADA equipment and all automation systems, including meters and related telemetry, licensed radio frequencies, and associated communications infrastructure including towers, antennas, data links, and network circuits used or held for use exclusively in connection with the Wind Down Oil and Gas Properties and the Wind Down Facilities or for the production of Hydrocarbons therefrom;

(xiv)    all cash (subject to the obligation of FWE to deliver the FWE I Cash Amount, the FWE I Suspense Funds, and the Prepaid JIB Cash Amount to FWE I), and all third party deposits, escrow accounts, guarantees, letters of credit, treasury securities, surety bonds, and other forms of credit assurances or credit support provided by a third party for the benefit of FWE for financial assurance for the obligations and liabilities arising out of or related to any other  Wind Down Assets (but not also in part any FWE I Assets), including the Plugging and Abandonment Obligations arising out of or related to any other Wind Down Assets (but not also in part any FWE I Assets);

(xv)    all agreements and memberships relating exclusively to well containment/control, clean-up of spills, or other pollution, or the gathering of data relating to certifications required to be made to Governmental Authorities with respect to the Wind Down Assets; and

(xvi)    all (i) accounts receivable attributable to the Wind Down Oil and Gas Properties with respect to any period of time, (ii)  rights to any payout or recovery for any Casualty occurring on or at any Wind Down Asset, whether occurring prior to, on or after Plan Effective Date, (iii) instruments and general intangibles (as such terms are defined in the Uniform Commercial Code of the applicable jurisdictions in which the Wind Down Oil and Gas Properties to which such assets relate are located), and other economic benefits attributable to the Wind Down Oil and Gas Properties, (iv) claims of indemnity, contribution, or reimbursement relating to the Wind Down Obligations and (v) Imbalances receivables of FWE attributable to the Wind Down Oil and Gas Properties;

(xvii)  all Suspense Funds of FWE to the extent attributable to any of the Wind Down Oil and Gas Properties (the "Wind Down Suspense Funds"); and

(xviii) all rights to any supplemental bonds or other securities (excluding area-wide bonds) held by, or any authorization or permission from, the BOEM, BSEE, or any other Governmental Authority with respect to FWE exclusively for other Wind Down Assets.

Part B:

"<u>Wind Down Obligations</u>" means:  all of the obligations and liabilities (contractual or otherwise) of FWE of any kind, character or description (whether known or unknown, accrued, absolute, contingent, or otherwise) relating to, arising out of, or with respect to any of the Wind Down Assets, including obligations and liabilities of FWE:  (i)(a) relating to the furnishing of makeup gas according to the terms of applicable gas sales, gathering, or transportation Wind Down Contracts and all obligations with respect to Imbalances attributable to the FWE III's ownership interests in any of the Wind Down Oil and Gas Properties; (b) with respect to Royalties arising out of, related to, or attributable to any of the Wind Down Oil and Gas Properties and Wind Down Suspense Funds, including any reporting and/or mis-reporting, and payment and/or mis-payment of such Royalties or the Wind Down Suspense Funds; (c) constituting or related to Environmental Liabilities arising out of, related to, or attributable to any of the Wind Down Assets; (d) applicable to or imposed on the lessee, owner, operator, holder, responsible party, payor or designated applicant under or with respect to any of the Wind Down Assets, or as required by applicable Laws; and (e) constituting or relating to any and all P&A Obligations related to the FWE III's ownership interests in, or operation of, any of the Wind Down Assets; and (ii) the liabilities and obligations of the FWE III specified in <u>Section 6</u> of the Plan of Merger to the extent attributable to use of the Joint Use Properties with respect to the Wind Down Assets; provided, however, that the Wind Down Obligations do not include any claims, liabilities or obligations satisfied, compromised, settled, released or discharged pursuant to the Plan of Reorganization and Confirmation Order.

4

**Schedule III**[17]

**Predecessor Assets and Predecessor Obligations**

Part A:

"Predecessor Assets" means all of FWE's right, title, and interest in, to, or under the following, subject to Section 6 of the Plan of Merger:[18]

    (i)     the oil, gas, other Hydrocarbon, and mineral leases, subleases, operating rights, record title interests, carried interests, royalties, overriding royalty interests, net profits interests, production payments, reversionary interests, and other rights or interests of any kind or character in or to Hydrocarbons in place and mineral interests or servitudes of every nature, in, on, under, and that may be produced from or attributable to any of the lands covered by the leases, subleases, interests, and rights described on Exhibit III-A attached hereto, whether legal or equitable, vested or contingent, and regardless of whether the same are expired or terminated (collectively, the "Predecessor Leases"), together with all pooled, communitized, or unitized acreage that includes all or part of any of the Predecessor Leases (the "Predecessor Units"), and all tenements, hereditaments, and appurtenances belonging to the Predecessor Leases and the Predecessor Units (collectively with the Predecessor Leases and Predecessor Units, the "Predecessor Lands");

    (ii)    any and all Hydrocarbon, water, CO2, injection, disposal wells or other wells located on, under, or within the Predecessor Lands described on Exhibit III-B attached hereto, in each case whether producing, non-producing, shut-in, or temporarily or permanently Plugged and Abandoned, including the wells set forth on Exhibit III-B attached hereto and all wellbores spudded prior to the Effective Time located on the Predecessor Lands (the "Predecessor Wells" and, together with the Predecessor Leases and the Predecessor Units, the "Predecessor Oil and Gas Properties");

    (iii)    all platforms and facilities, including all associated processing systems, buildings, compressors, meters, tanks, machinery, tools, personal property, equipment (including spars, trees, PLETs, jumpers, flowlines, risers, umbilicals, control assemblies, and production handling equipment), pipelines, gathering lines, water lines, tank batteries, pipeline capacity, other water gathering, transportation, or disposal infrastructure and equipment, frac tanks, ponds, metering facilities, interconnections, and other inventory, boats, vehicles, fixtures, improvements, and other property (whether real, immovable, personal, movable, mixed, or otherwise) that is located on or appurtenant to any of the Predecessor Leases, the Predecessor Lands, the Predecessor Rights of Way, or the Predecessor Wells or used or held for use exclusively in connection with the any of Predecessor Wells and the operation of any of the Predecessor Leases (whether located on or appurtenant to any of the Predecessor Leases, the Predecessor Lands, Predecessor Rights of Way,

---

[17] **Note to Draft**:  In the event an asset not included on the schedules hereto is identified after the parties have agreed to the final form of this Plan of Merger, but prior to the Effective Time, subject to the agreement of the parties, the applicable schedule shall be updated to include and provide for the allocation of such asset.

[18] **Note to Draft**:  To be determined if any Predecessor Assets constitute assets in which FWE I will also own an interest and, as to such assets, modify Schedule III as necessary to cover only the applicable interest in such assets to be allocated to and vest in FWE III as Predecessor Assets.

or the Predecessor Wells, or stored at a different location (onshore or offshore)), and such flowlines, pipelines, gathering lines, and/or pipeline capacity that are used or held for use exclusively in connection with any of the Predecessor Leases, the Predecessor Wells or the Predecessor Units operations or the production, transportation, or processing of Hydrocarbons produced from any of the Predecessor Oil and Gas Properties, including all platforms identified on Exhibit III-C(i) attached hereto and all facilities identified on Exhibit III-C(ii) attached hereto, but excluding any FWE I Facilities (the "Predecessor Facilities");

(iv)    Proprietary Seismic Data and licensed Seismic Data relating exclusively to the Predecessor Oil and Gas Properties;

(v)    all surface fee interests, easements, right-of-use easements, licenses, servitudes, rights-of-way, surface leases and other rights to use the surface or seabed appurtenant to, and used or held for use exclusively in connection with, the ownership or operation of any or all of the properties, rights, titles, and interests described in clauses (i) through (iii) and (vi) of this Schedule III, Part A, including the property described on Exhibit III-D(i) attached hereto and Exhibit III-D(ii) attached hereto (the "Predecessor Rights of Way");

(vi)    all environmental and other governmental (whether federal, state, or local) permits (including all plans filed with or approval by applicable Governmental Authorities), licenses, orders, authorizations, franchises, and related instruments or rights relating exclusively to the ownership, operation, or use of the properties, rights, titles, and interests described in clauses (i) through (iii), (v) and (viii) of this Schedule III, Part A (the "Predecessor Permits");

(vii)    all transportation agreements described on Exhibit III-F attached hereto;[19]

(viii)    all Hydrocarbons in, on, under, or that may be produced from or attributable to the Predecessor Leases, the Predecessor Units, or the Predecessor Wells, including all oil, condensate, and scrubber liquids inventories and ethane, propane, iso-butane, nor-butane, and gasoline inventories of FWE from the Predecessor Oil and Gas Properties in storage or constituting linefill and Imbalances;

(ix)    the FCC licenses associated with the call signs listed on Exhibit III-E attached hereto;

(x)    all contracts, agreements, leases, licenses, commitments, sales and purchase orders, and other instruments that relate exclusively to the ownership or operation of any or all of the Predecessor Oil and Gas Properties or any other properties, rights, titles, and interests described in this Schedule III, Part A, including operating agreements, unitization, pooling, and communitization agreements, declarations and orders, area of mutual interest agreements, exploration agreements, joint venture agreements, farmin and farmout agreements, exchange agreements, purchase and sale agreements, and other contracts in which FWE acquired interests in any Predecessor Assets, transportation agreements, agreements for the sale and purchase of

---

[19] **Note to Draft**: To be determined if any FERC regulated transportation agreements need FERC waivers.

Hydrocarbons, processing agreements, and service agreements, including the contracts listed on Exhibit III-F attached hereto (the "Predecessor Contracts");

(xi)     originals of the Records that relate (i) solely to the Predecessor Assets or the Predecessor Obligations, or both, or (ii) to the Predecessor Assets or the Predecessor Obligations, or both, and also to the Wind Down Assets or Wind Down Obligations, or both, and copies of the Records that constitute FWE I Assets and also relate to either or both of the Predecessor Assets or the Predecessor Obligations;

(xii)    inventory, equipment, machinery, tools, and other personal property, to the extent located on the Predecessor Facilities or, if located elsewhere, used or held for use exclusively in connection with the Predecessor Oil and Gas Properties or the Predecessor Facilities or charged to the joint account pursuant to the applicable Predecessor Contracts, including those items listed on Exhibit III-G attached thereto;

(xiii)   FWE-owned SCADA equipment and all automation systems, including meters and related telemetry, licensed radio frequencies, and associated communications infrastructure including towers, antennas, data links, and network circuits used or held for use exclusively in connection with the Predecessor Oil and Gas Properties and the Predecessor Facilities or for the production of Hydrocarbons therefrom;

(xiv)    all cash (subject to the obligation of FWE to deliver the FWE I Cash Amount, the FWE I Suspense Funds, and the Prepaid JIB Cash Amount to FWE I), and all third party deposits, escrow accounts, guarantees, letters of credit, treasury securities, surety bonds, and other forms of credit assurances or credit support provided by a third party for the benefit of FWE for financial assurance exclusively for the obligations and liabilities arising out of or related to any other Predecessor Assets (but not also in part any FWE I Assets), including the Plugging and Abandonment Obligations arising out of or related to any other Predecessor Assets (but not also in part any FWE I Assets), including those items listed on Exhibit III-H attached hereto;

(xv)     all agreements and memberships relating solely to well containment/control, clean-up of spills, or other pollution, or the gathering of data relating to certifications required to be made to Governmental Authorities with respect to the Predecessor Assets; and

(xvi)    all (i) accounts receivable attributable to the Predecessor Oil and Gas Properties with respect to any period of time, (ii) rights to any payout or recovery for any Casualty occurring on or at any Predecessor Asset, whether occurring prior to, on or after the Plan Effective Date, (iii) instruments and general intangibles (as such terms are defined in the Uniform Commercial Code of the applicable jurisdictions in which the Predecessor Oil and Gas Properties to which such assets relate are located), and other economic benefits attributable to the Predecessor Oil and Gas Properties, (iv) claims of indemnity, contribution, or reimbursement relating to the Predecessor Obligations and (v) Imbalances receivables of FWE attributable to the Predecessor Oil and Gas Properties;

(xvii)   all Suspense Funds of FWE to the extent attributable to the Predecessor Oil and Gas Properties (the "Predecessor Suspense Funds");

(xviii)  all rights to any supplemental bonds or other securities (excluding area-wide bonds) held by, or any authorization or permission from, the BOEM, BSEE, or any other Governmental Authority with respect to FWE exclusively for other Predecessor Assets; and

(xix)  all other assets and rights of FWE other than FWE I Assets and Wind Down Assets.

Notwithstanding the foregoing, the Predecessor Assets shall include all assets and rights of FWE not expressly included in the FWE I Assets or the Wind Down Assets, but shall exclude any assets expressly allocated to FWE I pursuant to the Plan of Merger.

Part B:

"Predecessor Obligations" means:  all of the obligations and liabilities (contractual or otherwise) of FWE of any kind, character or description (whether know or unknown, accrued, absolute, contingent, or otherwise) relating to, arising out of, or with respect to any of the Predecessor Assets, including (i) obligations and liabilities of FWE:  (a) relating to the furnishing of makeup gas according to the terms of applicable gas sales, gathering, or transportation Predecessor Contracts and all obligations with respect to Imbalances attributable to FWE III's ownership interests in any of the Predecessor Oil and Gas Properties; (b) with respect to Royalties arising out of, related to, or attributable to any of the Predecessor Oil and Gas Properties and the Predecessor Suspense Funds, including any reporting and/or mis-reporting, and payment and/or mis-payment of such Royalties or the Predecessor Suspense Funds; (c) constituting or related to Environmental Liabilities arising out of, related to, or attributable to any of the Predecessor Assets; (d) applicable to or imposed on the lessee, owner, operator, holder, responsible party, payor or designated applicant under or with respect to any of the Predecessor Assets, or as required by applicable Laws; (e) constituting or relating to any and all P&A Obligations related to FWE III's ownership interests in, or operation of,  any of the Predecessor Assets; and (f) any and all liabilities and obligations of FWE not expressly included in the FWE I Obligations or the Wind Down Obligations; and (ii) the obligations and liabilities of FWE III specified in Section 6 of the Plan of Merger to the extent attributable to use of the Joint Use Properties with respect to the Predecessor Assets; provided, however, that the Predecessor Obligations do not include any claims, liabilities or obligations satisfied, compromised, settled, released or discharged pursuant to the Plan of Reorganization and Confirmation Order.

## Schedule of Exhibits[20]

| | |
|---|---|
| Exhibit A: | Certificate of Merger |
| Exhibit B: | Certificate of Formation – FWE I |
| Exhibit I-A(i): | FWE I Leases |
| Exhibit I-A(ii): | FWE I Deep Rights |
| Exhibit I-B: | FWE I Wells |
| Exhibit I-C(i) | FWE I Platforms |
| Exhibit I-C(ii) | FWE I Facilities |
| Exhibit I-D(i) | FWE I Rights of Way Acquired Pursuant to Apache PSA |
| Exhibit I-D(ii) | FWE I RUEs |
| Exhibit I-E | FWE I FCC Licenses |
| Exhibit I-F | FWE I Contracts |
| Exhibit I-G | FWE I Inventory |
| Exhibit I-H | FWE I Deposits/Escrows/Credit Support |
| Exhibit I-I | Subsidiaries and Equity Interests |
| Exhibit I-J | FWE II Retained Properties |
| Exhibit I-K(i) | Incremental Interests – Leases |
| Exhibit I-K(ii) | Incremental Interests – Wells |
| Exhibit I-K(iii) | Incremental Interests – Platforms and Facilities |
| Exhibit II-A: | Wind Down Leases[21] |

---

[20] **Note to Draft**:  **FWE I Exhibits to the Plan of Merger**. Exhibits I-A(i) through I-K(iii) to Schedule 1 to the Plan of Merger (collectively, the "FWE I Exhibits") set forth a list of Legacy Apache Properties, which FWE I Exhibits the Apache PSA Parties and the Fieldwood PSA Parties hereto respectively acknowledge are subject to the ongoing review and consent rights of the Consenting Creditors under the RSA (which consent has not yet been provided), and the Apache PSA Parties and Fieldwood PSA Parties agree that the FWE I Exhibits are subject to modification based on such review to be consistent with the Apache Term Sheet.

[21] **Note to Draft**:  Exhibits II-A – II-G to be attached to Executed Plan of Merger.

| | |
|---|---|
| Exhibit II-B: | Wind Down Wells |
| Exhibit II-C(i) | Wind Down Platforms |
| Exhibit II-C(ii) | Wind Down Facilities |
| Exhibit II-D(i) | Wind Down Rights of Way |
| Exhibit II-D(ii) | Wind Down RUEs |
| Exhibit II-E | Wind Down FCC Licenses |
| Exhibit II-F | Wind Down Contracts |
| Exhibit II-G | Wind Down Inventory |
| Exhibit III-A: | Predecessor Leases[22] |
| Exhibit III-B: | Predecessor Wells |
| Exhibit III-C(i) | Predecessor Platforms |
| Exhibit III-C(ii) | Predecessor Facilities |
| Exhibit III-D(i) | Predecessor Rights of Way |
| Exhibit III-D(ii) | Predecessor RUEs |
| Exhibit III-E | Predecessor FCC Licenses |
| Exhibit III-F | Predecessor Contracts |
| Exhibit III-G | Predecessor Inventory |
| Exhibit III-H | Predecessor Deposits/Escrows/Credit Support |

[End of Schedule of Exhibits]

---

[22] **Note to Draft**: Exhibits III-A – III-H to be attached to Executed Plan of Merger

Exhibit I-A(i)

Exhibit I-A(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| LOUISIANA NON-OPERATED | -- | 12503 | SL-LA | ORRI | -- | -- | -- | | 0.6% | TERMIN |
| LOUISIANA NON-OPERATED | -- | 06618 | SL-LA | ORRI | -- | -- | -- | | 5.2% | TERMIN |
| BRAZOS 491 | BA 491 | G06069 | Federal | RT | 10/1/1983 | | 5,760 | Fieldwood En | 100.0% | TERMIN |
| BRAZOS A-102/A-105 | BA 105 | G01757 | Federal | RT | 7/1/1968 | | 5,760 | Fieldwood En | 12.5% | PROD |
| BRAZOS A-102/A-105 | BA A-105 | G01757 | Federal | RT A | 7/1/1968 | | 5,760 | Fieldwood En | 12.5% | PROD |
| BRAZOS A-133 | BA A133 | G02665 | Federal | OP | 7/1/1974 | | 5,760 | GOM Shelf | 12.5% | PROD |
| BRAZOS A-133 | BA A133 | G02665 | Federal | RT | 7/1/1974 | | 5,760 | GOM Shelf | 25.0% | PROD |
| $0 Liability | BA A19 | G33399 | Federal | RT | 1/1/2010 | 12/31/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | BA A47 | G03940 | Federal | RT | 3/1/1979 | 9/21/2014 | 5,760 | Apache Shelf Exp | 33.3% | TERMIN |
| $0 Liability | BA A47 | G03940 | Federal | OP | 3/1/1979 | 9/21/2014 | 5,760 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | BA A69 | G32733 | Federal | RT | 10/31/2013 | 10/31/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| BRETON SOUND 41 | BS 39 | G33683 | Federal | RT | 7/1/2010 | 5/20/2015 | 1,237 | Petsec En | 18.8% | REUNQ |
| BRETON SOUND 41 | BS 41 | G21142 | Federal | OP 2 | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | 13.1% | TERMIN |
| BRETON SOUND 41 | BS 41 | G21142 | Federal | Contractual | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | TBD | TERMIN |
| CHANDELEUR 42/43 | BS 42 | G33684 | Federal | RT | 7/1/2010 | 5/13/2015 | 4,552 | Apache Shelf Exp | 37.5% | REUNQ |
| CHANDELEUR 42/43 | CA 42 | G32267 | Federal | OP 1 | 7/1/2008 | 6/21/2019 | 5,000 | Fieldwood En | 50.0% | REUNQ |
| CHANDELEUR 42/43 | CA 43 | G32268 | Federal | OP 1 | 7/1/2008 | | 5,000 | Fieldwood En | 50.0% | PROD |
| $0 Liability | DD 253 | G10426 | Federal | RT | 6/1/1990 | 9/8/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | DD 297 | G10427 | Federal | RT | 6/1/1990 | 9/8/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EB 128 | G34034 | Federal | RT | 4/1/2012 | 3/15/2016 | 165 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EB 172 | G34035 | Federal | RT | 4/1/2012 | 3/15/2016 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 12 | G34220 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Fieldwood En | 100.0% | REUNQ |
| EAST CAMERON 9/14 | EC 14 | G13572 | Federal | RT | 7/1/1992 | 5/16/2005 | 2,544 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | EC 171 | G34228 | Federal | RT | 9/1/2012 | 4/7/2015 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | EC 172 | G17858 | Federal | RT | 7/1/1997 | 1/22/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | EC 178 | G34229 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | EC 179 | G34230 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | EC 185 | G34796 | Federal | RT | 6/1/2013 | 5/25/2017 | 5,000 | Fieldwood En | 100.0% | REUNQ |
| EAST CAMERON 2 - (SL LA) | EC 2 | 18121 | SL-LA | WI | 5/12/2004 | 1/0/1900 | 220 | Fieldwood | 50.0% | ACTIVE |
| EAST CAMERON 2 - (SL LA) | EC 2 | 16473 | SL-LA | WI | 7/13/1999 | 7/15/2015 | 148 | Apache | 89.1% | ACTIVE |
| EAST CAMERON 2 - (SL LA) | EC 2 | 16473 | SL-LA | WI | 7/19/1999 | | 134.75 | Apache | 89.1% | ACTIVE |
| $0 Liability | EC 222 | G02037 | Federal | OP 1 | 2/1/1971 | 11/24/2015 | 5,000 | Talos | 17.9% | TERMIN |
| $0 Liability | EC 222 | G02037 | Federal | OP 2 | 2/1/1971 | 11/24/2015 | 5,000 | Talos | 17.9% | TERMIN |
| $0 Liability | EC 229 | G34232 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 230 | G34233 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 24 | G04098 | Federal | RT | 10/1/1979 | 2/12/2014 | 5,000 | Apex O&G | 18.0% | TERMIN |
| $0 Liability | EC 24 | G04098 | Federal | OP 2 | 10/1/1979 | 2/12/2014 | 5,000 | Apex O&G | 31.3% | TERMIN |
| $0 Liability | EC 24 | G04098 | Federal | OP 3 | 10/1/1979 | 2/12/2014 | 5,000 | Apex O&G | 30.3% | TERMIN |
| $0 Liability | EC 242 | G34234 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 243 | G34235 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 261 | G00971 | Federal | RT | 6/1/1962 | 1/14/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | EC 263 | G33637 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EC 264 | G01880 | Federal | RT | 3/1/1969 | 7/11/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EAST CAMERON 265 / 278 | EC 265 | G00957 | Federal | RT | 6/1/1962 | 10/3/2016 | 5,000 | Fieldwood En | 50.0% | REUNQ |
| EAST CAMERON 265 / 278 | EC 270 | G02045 | Federal | RT | 1/1/1971 | 6/7/2013 | 2,500 | Apache | 70.0% | TERMIN |
| EAST CAMERON 265 / 278 | EC 278 | G00974 | Federal | RT | 6/1/1962 | 10/3/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 292 | G34237 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 293 | G34238 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 294 | G34239 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EC 310 | G34240 | Federal | RT | 11/1/2012 | 10/4/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| *No FW lease ownership | EC 328 | G10638 | Federal | RT | 5/1/1989 | | 5,000 | Arena Off | 100.0% | PROD |
| $0 Liability | EC 33 | G00972 | Federal | OP | 9/1/1970 | 2/15/2016 | 1,250 | Merit En | 15.6% | TERMIN |
| *No FW asset ownership | EC 335 | G02439 | Federal | OP | 8/1/1973 | 6/16/2015 | 5,000 | Energy XXI GOM | 14.0% | TERMIN |
| EAST CAMERON 338 | EC 338 | G02063 | Federal | RT | 2/1/1971 | | 5,000 | Anadarko US Off | 15.7% | PROD |
| EAST CAMERON 37 | EC 37 | G25933 | Federal | RT | 5/1/2004 | 9/27/2014 | 2,608 | Probe Res US | 100.0% | TERMIN |
| $0 Liability | EC 370 | G33073 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| *No FW asset ownership | EC 71 | G15316 | Federal | RT | 9/1/1992 | | 5,000 | EC Off Prop | 100.0% | SOP |
| EAST CAMERON 14 | EC 9/14 | G01440 | Federal | OP 1 | 4/1/1966 | | 3,152 | Fieldwood En | 100.0% | PROD |
| EAST CAMERON 14 | EC 9/14 | G01440 | Federal | RT | 4/1/1966 | | 3,152 | Fieldwood En | 100.0% | PROD |
| EUGENE ISLAND 010 | EI 10 | G23851 | Federal | RT | 7/1/2002 | | 2,303 | Contango Op | 50.0% | PROD |
| EUGENE ISLAND 010 | EI 10 | G23851 | Federal | OP 2 | 7/1/2002 | | 2,303 | Contango Op | 50.0% | PROD |
| $0 Liability | EI 105 | 00797 | Federal | RT | 5/1/1960 | 12/9/2013 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE ISLAND 105/106 | EI 106 | G17966 | Federal | RT A | 7/1/1997 | 8/4/2013 | 5,000 | Apache | 50.0% | TERMIN |
| EUGENE ISLAND 105/106 | EI 106 | G17966 | Federal | RT B | 7/1/1997 | 8/4/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | EI 107 | G15241 | Federal | RT | 9/1/1995 | 9/1/2013 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 108 | G03811 | Federal | OP 1 | 6/1/1978 | 11/22/2015 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| $0 Liability | EI 108 | G03811 | Federal | RT A | 6/1/1978 | 11/22/2015 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | EI 108 | G03811 | Federal | RT B | 6/1/1978 | 11/22/2015 | 5,000 | Fieldwood En | 71.3% | TERMIN |
| $0 Liability | EI 116 | G34292 | Federal | RT | 8/1/2012 | 8/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EI 117 | G34293 | Federal | RT | 10/1/2012 | 9/16/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 118 | G15242 | Federal | RT A | 7/1/1995 | 12/17/2015 | 5,000 | Black Elk En Off Op | 25.0% | TERMIN |
| $0 Liability | EI 118 | G15242 | Federal | RT B | 7/1/1995 | 12/17/2015 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE IS. 119/120/125/126 | EI 119 | 00049 | Federal | RT A | 8/28/1945 | | 5,000 | Fieldwood En | 50.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 119 | 00049 | Federal | RT B | 8/28/1945 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 120 | 00050 | Federal | RT | 8/28/1945 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 125 | 00051 | Federal | RT | 8/28/1945 | -- | 5,000 | Fieldwood En | 100.0% | OPERNS |
| EUGENE IS. 119/120/125/126 | EI 126 | 00052 | Federal | RT | 8/28/1945 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 119/120/125/126 | EI 126 | 00052 | Federal | OP | 8/28/1945 | | 5,000 | Fieldwood En | 75.0% | PROD |
| $0 Liability | EI 128 | G34294 | Federal | RT | 10/1/2012 | 9/16/2016 | 3,427 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 131 | G33625 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 132 | G33626 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EI 135 | G34296 | Federal | RT | 10/1/2012 | 8/26/2015 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| EUGENE IS. 136/158 | EI 136 | G03152 | Federal | RT | 7/1/1975 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | EI 156 | G16353 | Federal | OP | 6/1/1996 | 8/24/2014 | 5,000 | Black Elk En Off Op | 50.0% | TERMIN |
| EUGENE IS. 136/158 | EI 158 | G01220 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 173/174/175 | EI 173 | G13622 | Federal | RT | 7/1/1992 | | 5,000 | Arena Off | 100.0% | PROD |
| EUGENE IS. 173/174/175 | EI 174 | G03782 | Federal | RT | 6/1/1978 | | 5,000 | Arena Off | 100.0% | PROD |
| EUGENE IS. 173/174/175 | EI 174 | G03782 | Federal | OP | 6/1/1978 | | 5,000 | Arena Off | 30.0% | PROD |
| EUGENE IS. 173/174/175 | EI 175 | 00438 | Federal | OP 1 | 12/1/1954 | | 5,000 | Fieldwood En | 75.0% | PROD |
| EUGENE IS. 187/189 | EI 187 | G10736 | Federal | RT | 7/1/1989 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE ISLAND 188 | EI 188 | 00443 | Federal | RT | 1/1/1955 | 4/30/2010 | 5,000 | Apache | 100.0% | TERMIN |
| EUGENE ISLAND 188 | EI 189 | 00423 | Federal | RT | 12/1/1954 | | 3,750 | Fieldwood En | 100.0% | PROD |
| $0 Liability | EI 196 | 00802 | Federal | RT | 5/1/1960 | 3/25/2019 | 3,516 | Fieldwood En | 50.0% | REUNQ |
| $0 Liability | EI 196 | 00802 | Federal | OP | 5/1/1960 | 3/25/2019 | 3,516 | Fieldwood En | 100.0% | REUNQ |
| $0 Liability | EI 196 | G13821 | Federal | OP 2 | 5/1/1960 | 3/22/2019 | 1,484 | Arena Off | 100.0% | REUNQ |
| $0 Liability | EI 196 | G13821 | Federal | OP 4 | 5/1/1960 | 3/22/2019 | 1,484 | Arena Off | 100.0% | REUNQ |
| $0 Liability | EI 20 | G34286 | Federal | RT | 10/1/2012 | 8/19/2016 | 3,582 | Castex Off | 50.0% | REUNQ |
| $0 Liability | EI 207 | G34301 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| *No FW asset ownership | EI 208 | 00577 | Federal | OP | 9/1/1955 | | 2,500 | ANKOR En | 100.0% | PROD |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 211 | G05502 | Federal | RT B | 7/1/1983 | | 5,000 | Fieldwood En | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 211 | G05502 | Federal | OP | 7/1/1983 | | 5,000 | Chevron USA | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 212 | G05503 | Federal | RT B | 7/1/1983 | | 5,000 | Fieldwood En | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | EI 212 | G05503 | Federal | OP | 7/1/1983 | | 5,000 | Chevron USA | 66.7% | UNIT |
| $0 Liability | EI 216 | G34308 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| EUGENE ISLAND 196/217/227 | EI 217 | G00978 | Federal | RT | 5/1/1962 | 3/22/2019 | 5,000 | Arena Off | 25.0% | REUNQ |
| EUGENE IS. 266 | EI 224 | G05504 | Federal | ORRI | 7/1/1983 | | 5,000 | Castex Off | 100.0% | PROD |
| EUGENE IS. 266 | EI 224 | G05504 | Federal | RT | 7/1/1983 | | 5,000 | Castex Off | 100.0% | PROD |
| EUGENE ISLAND 196/217/227 | EI 227 | 00809 | Federal | RT | 5/1/1960 | 3/25/2019 | 5,000 | Arena Off | 50.0% | REUNQ |
| EUGENE ISLAND 196/217/227 | EI 227 | G36745 | Federal | ORRI | 11/1/2013 | | 5,000 | Arena Off | 6.25% | PRIMRY |
| EUGENE ISLAND 196/217/227 | EI 227 | G36745 | Federal | ORRI | 11/1/2013 | | 5,000 | Arena Off | 4.17% | PRIMRY |
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| EUGENE ISLAND 224/266 | EI 246 | 00810 | Federal | ORRI | 5/1/1960 | -- | 5,000 | Sanare En Part | 6.3% | UNIT |
| EUGENE ISLAND 255 | EI 255 | G01958 | Federal | RT | 1/1/1970 | | 2,500 | Cox Op | 2.0% | PROD |
| EUGENE ISLAND 255 | EI 255 | G01958 | Federal | OP 3 | 1/1/1970 | | 2,500 | Cox Op | 77.2% | PROD |
| EUGENE ISLAND 255 | EI 255 | G01958 | Federal | OP 4 | 1/1/1970 | | 2,500 | Cox Op | 38.6% | PROD |
| $0 Liability | EI 266 | 00811 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |
| $0 Liability | EI 266 | 00811 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 266 | 00811 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 267 | 00812 | Federal | OP | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |
| $0 Liability | EI 267 | 00812 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 267 | 00812 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 269 | 00813 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 25.0% | UNIT |
| $0 Liability | EI 269 | 00813 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 269 | 00813 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | EI 280 | G23876 | Federal | RT | 5/1/2002 | 1/19/2014 | 5,000 | Energy XXI GOM | 18.8% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | RT | 5/1/1988 | 7/5/2016 | 5,000 | Bennu O&G | 90.5% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | OP 1 | 5/1/1988 | 7/5/2016 | 5,000 | Bennu O&G | 45.3% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | OP 2 | 5/1/1988 | 7/5/2016 | 5,000 | Bennu O&G | 45.3% | TERMIN |
| $0 Liability | EI 281 | G09591 | Federal | OP 3 | 5/1/1988 | 7/5/2016 | 5,000 | Bennu O&G | 45.3% | TERMIN |
| $0 Liability | EI 282 | G09592 | Federal | RT | 6/1/1988 | 7/5/2016 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 282 | G09592 | Federal | OP 1 | 6/1/1988 | 7/5/2016 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 282 | G09592 | Federal | OP 2 | 6/1/1988 | 7/5/2016 | 5,000 | Apache | 75.0% | TERMIN |
| $0 Liability | EI 29 | G34287 | Federal | RT | 12/1/2012 | 11/22/2016 | 5,000 | Apache Shelf Exp | 50.0% | REUNQ |
| EUGENE IS. 307 | EI 307 | G02110 | Federal | OP | 2/1/1971 | 11/4/2019 | 2,500 | Fieldwood En Off | 25.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 312 | G22679 | Federal | RT | 6/1/2001 | 8/7/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 312 | G22679 | Federal | ORRI | 6/1/2001 | 8/7/2020 | 5,000 | Fieldwood En | 8.3% | TERMIN |
| $0 Liability | EI 313 | G02608 | Federal | RT | 5/1/1974 | 6/23/2016 | 5,000 | Arena Off | 50.0% | TERMIN |
| $0 Liability | EI 313 | G02608 | Federal | OP 1 | 5/1/1974 | 6/23/2016 | 5,000 | Arena Off | 50.0% | TERMIN |
| $0 Liability | EI 313 | G02608 | Federal | OP 2 | 5/1/1974 | 6/23/2016 | 5,000 | Arena Off | 50.0% | TERMIN |
| EUGENE IS. 315/316/329 | EI 315 | G02112 | Federal | RT | 8/1/1974 | | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 315/316/329 | EI 315 | G02112 | Federal | OP | 8/1/1974 | | 2,500 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 315/316/329 | EI 315 | G24912 | Federal | RT | 5/1/2003 | | 2,500 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 315/316/329 | EI 316 | G05040 | Federal | RT | 4/1/1982 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 315/316/329 | EI 329 | G02912 | Federal | RT | 12/1/1974 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | Contractual | 1/1/1971 | | 5,000 | Fieldwood En | 63.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 7 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 6 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 5 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 4 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 3 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 2 | 1/1/1971 | | 5,000 | Fieldwood En | 47.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | RT | 1/1/1971 | | 5,000 | Fieldwood En | 42.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | RT | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 7 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 6 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 5 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 4 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 3 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | OP 2 | 1/1/1971 | | 5,000 | Fieldwood En | 23.0% | UNIT |
| EUGENE IS. 333/334 | EI 333 | G02317 | Federal | RT | 2/1/1973 | 8/29/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 333/334 | EI 334 | G15263 | Federal | RT | 7/1/1995 | 8/29/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | RT | 3/1/1976 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| EUGENE IS. 337 | EI 337 | G3332 | Federal | ORRI | 3/1/1976 | | | Fieldwood En | 0.1% | UNIT |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | OP | 3/1/1976 | | 5,000 | Fieldwood En | 98.0% | UNIT |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | OP 1 | 3/1/1976 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| EUGENE IS. 337 | EI 337 | G03332 | Federal | OP 3 | 3/1/1976 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | RT A | 2/1/1973 | | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | RT B | 2/1/1973 | | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | OP 1 | 2/1/1973 | | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | OP 2 | 2/1/1973 | | 5,000 | Fieldwood En | 61.8% | TERMIN |
| EUGENE IS. 345/346 | EI 345 | G21647 | Federal | RT | 7/1/2000 | 8/21/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 345/346 | EI 346 | G14482 | Federal | RT | 6/1/1994 | | 5,000 | Arena Off | 100.0% | PROD |
| EUGENE IS. 353/354 | EI 353 | G03783 | Federal | OP | 6/1/1978 | 8/26/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| EUGENE IS. 337 | EI 354 | G10752 | Federal | RT | 5/1/1989 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 337 | EI 354 | G10752 | Federal | OP | 5/1/1989 | | 5,000 | Fieldwood En | 67.0% | PROD |
| EUGENE IS. 353/354 | EI 361 | G02324 | Federal | RT | 2/1/1973 | | 5,000 | Cox Op | 12.4% | PROD |
| EUGENE IS. 53 | EI 53 | 00479 | Federal | OP 1 | 12/1/1954 | | 5,000 | EnVen En Vent | 66.7% | PROD |
| EUGENE IS. 53 | EI 53 | 00479 | Federal | OP | 12/1/1954 | | 5,000 | EnVen En Vent | 100.0% | PROD |
| EUGENE ISLAND 57/58 | EI 57 | G02601 | Federal | OP 2 | 5/1/1974 | 3/27/2020 | 5,000 | Talos | 31.7% | TERMIN |
| EUGENE ISLAND 57/58 | EI 57 | G02601 | Federal | OP 4 | 5/1/1974 | 3/27/2020 | 5,000 | ANKOR En | 15.8% | TERMIN |
| $0 Liability | EI 88 | G10721 | Federal | OP | 7/1/1989 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE ISLAND 88/89/90/93/94/95 | EI 89 | 00044 | Federal | OP | 8/28/1945 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| EUGENE ISLAND 88/89/90/93/94/95 | EI 89 | 00044 | Federal | OP 2 | 8/28/1945 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| *No FW asset ownership | EI 90 | 00229 | Federal | OP | 11/19/1948 | 2/22/2016 | 1,250 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EI 93 | 00228 | Federal | OP | 11/19/1948 | 2/22/2016 | 2,500 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EI 94 | G05488 | Federal | OP | 7/1/1983 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EI 95 | 00046 | Federal | OP | 8/28/1945 | 2/22/2016 | 5,000 | Fieldwood En | 75.0% | TERMIN |
| $0 Liability | EW 525 | G33704 | Federal | RT | 7/1/2010 | 6/19/2015 | 2,420 | Apache Shelf Exp | 46.9% | REUNQ |
| $0 Liability | EW 526 | G33134 | Federal | RT | 6/1/2009 | 5/31/2014 | 3,517 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | EW 781 | G33137 | Federal | RT | 6/1/2009 | 5/31/2014 | 309 | Apache Shelf Exp | 100.0% | EXPIR |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | EW 782 | G31470 | Federal | RT | 12/1/2007 | | 1,093 | Fieldwood En | 100.0% | PROD |
| $0 Liability | EW 789 | G33139 | Federal | RT | 7/1/2009 | 4/30/2015 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | EW 826 | G05800 | Federal | RT | 7/1/1983 | | 5,760 | BP E&P | 100.0% | PROD |
| $0 Liability | EW 906 | G34415 | Federal | RT | 8/1/2012 | 7/7/2016 | 1,007 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EW 906 | G33708 | Federal | RT | 8/1/2012 | 4/7/2016 | 1,084 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EW 949 | G34877 | Federal | RT | 8/1/2013 | 7/7/2016 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | EW 950 | G33709 | Federal | RT | 6/1/2010 | 4/7/2016 | 5,760 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | FM 411 | G08361 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 412 | G08362 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 16.0% | EXPIR |
| $0 Liability | FM 455 | G08363 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 456 | G08364 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 499 | G08365 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 500 | G08366 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 16.0% | EXPIR |
| $0 Liability | FM 543 | G08367 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| $0 Liability | FM 587 | G08368 | Federal | RT | 8/1/1986 | 1/30/2015 | 5,760 | Chevron USA | 24.3% | EXPIR |
| GALVESTON 151 | GA 151 | G15740 | Federal | RT | 11/1/1995 | 4/12/2016 | 4,804 | Fieldwood En | 33.3% | TERMIN |
| HIGH IS. 179 / GA 180 | GA 180 | G20228 | Federal | RT | 9/1/1975 | | 5,760 | Fieldwood En | 100.0% | UNIT |
| HIGH ISLAND 179 | GA 192 | G03229 | Federal | CONT | 9/1/1975 | | 5,760 | Arena Off | 90.0% | UNIT |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 1 | 12/1/2003 | | 5,760 | Fieldwood En | 83.3% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 3 | 12/1/2003 | | 5,760 | Fieldwood En | 66.7% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP | 12/1/2003 | | 5,760 | Fieldwood En | 66.7% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | RT | 12/1/2003 | | 5,760 | Fieldwood En | 83.3% | PROD |
| $0 Liability | GA 343 | G06105 | Federal | RT | 10/1/1983 | 1/19/2014 | 5,760 | Black Elk En Off Op | 12.5% | TERMIN |
| $0 Liability | GA 343 | G06105 | Federal | OP | 10/1/1983 | 1/19/2014 | 5,760 | Black Elk En Off Op | 37.5% | TERMIN |
| $0 Liability | GB 85 | G34515 | Federal | RT | 8/1/2012 | 7/7/2016 | 4,450 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | GI 104 | G33671 | Federal | RT | 7/1/2010 | 6/19/2015 | 5,000 | Apache Shelf Exp | 46.9% | REUNQ |
| GRAND ISLE 110/116 | GI 110 | G13943 | Federal | RT | 8/1/1993 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| GRAND ISLE 110/116 | GI 116 | G13944 | Federal | RT | 8/1/1993 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| $0 Liability | GI 117 | G32232 | Federal | RT | 8/1/2008 | 7/31/2013 | 4,540 | Apache | 100.0% | EXPIR |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 32 | 00174 | Federal | RT | 7/17/1948 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 32 | 00174 | Federal | OP 2 | 7/17/1948 | | 2,500 | GOM Shelf | 37.5% | UNIT |

Exhibit I-A(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| $0 Liability | GI 32 | G01580 | Federal | RT | 7/1/1967 | 3/15/2016 |  | BP Am Prod | 75.0% | TERMIN |
| $0 Liability | GI 32 | G01580 | Federal | OP | 7/1/1967 | 3/15/2016 |  | BP Am Prod | 37.5% | TERMIN |
| $0 Liability | GI 33 | G04002 | Federal | RT | 3/1/1979 | 2/24/2017 |  | Fieldwood En | 100.0% | RELINQ |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00127 | Federal | RT | 4/21/1947 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00127 | Federal | OP 2 | 4/21/1947 |  | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00126 | Federal | RT | 4/21/1947 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 39 | 00126 | Federal | OP 2 | 4/21/1947 |  | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 40 | 00128 | Federal | RT | 4/21/1947 |  | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 40 | 00128 | Federal | OP 2 | 4/21/1947 |  | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00129 | Federal | RT | 4/21/1947 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00129 | Federal | OP 2 | 4/21/1947 |  | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00130 | Federal | RT | 4/21/1947 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 41 | 00130 | Federal | OP 2 | 4/21/1947 |  | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 42 | 00131 | Federal | RT | 4/21/1947 |  | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 42 | 00131 | Federal | OP 2 | 4/21/1947 |  | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 43 | 00175 | Federal | RT | 7/17/1948 | -- | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 43 | 00175 | Federal | OP 2 | 7/17/1948 | -- | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 44 | 00176 | Federal | RT | 7/17/1948 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 44 | 00176 | Federal | OP 2 | 7/17/1948 |  | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 46 | 00132 | Federal | RT | 4/21/1947 |  | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 46 | 00132 | Federal | OP 2 | 4/21/1947 |  | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 47 | 00133 | Federal | RT | 4/21/1947 |  | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 47 | 00133 | Federal | OP 2 | 4/21/1947 |  | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 48 | 00134 | Federal | RT | 4/21/1947 |  | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 48 | 00134 | Federal | OP 2 | 4/21/1947 |  | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 51 | 00177 | Federal | OP 1 | 7/17/1948 |  | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | GI 52 | 00177 | Federal | OP 1 | 7/17/1948 |  | 5,000 | GOM Shelf | 50.0% | UNIT |
| $0 Liability | GI 54 | G27173 | Federal | RT | 7/1/2005 | 2/12/2017 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| GRAND ISLE 76 | GI 90 | G02161 | Federal | RT | 10/1/1972 | 9/18/2015 | 5,000 | Fieldwood En | 95.8% | RELINQ |
| $0 Liability | GI 90 | G04003 | Federal | RT | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 1 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 2 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 4 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 5 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 90 | G04003 | Federal | OP 6 | 3/1/1979 | 4/18/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 93 | G02628 | Federal | RT | 5/1/1974 | 12/4/2014 | 5,000 | BP E&P | 100.0% | TERMIN |
| $0 Liability | GI 93 | G02628 | Federal | OP | 5/1/1974 | 12/4/2014 | 5,000 | BP E&P | 100.0% | TERMIN |
| GRAND ISLE 90/94 | GI 94 | G02163 | Federal | RT | 11/1/1972 | 7/27/2017 | 4,540 | Fieldwood En | 100.0% | TERMIN |
| GRAND ISLE 90/94 | GI 94 | G02163 | Federal | OP | 11/1/1972 | 7/27/2017 | 4,540 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | GI 98 | G34354 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| HIGH IS. 110/111 | HI 110 | G02353 | Federal | RT | 8/1/1973 | 5/31/2019 | 5,760 | W & T Off | 20.0% | TERMIN |
| HIGH IS. 110/111 | HI 111 | G02354 | Federal | RT | 8/1/1973 | 4/30/2019 | 5,760 | W & T Off | 20.0% | TERMIN |
| $0 Liability | HI 114 | G32747 | Federal | RT | 12/1/2008 | 11/30/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| HIGH IS. 116 | HI 116 | G06156 | Federal | RT | 10/1/1983 | 2/25/2015 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| HIGH IS. 129 | HI 129 | G01848 | Federal | RT | 6/1/1968 |  | 5,760 | Fieldwood En | 90.0% | PROD |
| HIGH IS. 129 | HI 129 | G01848 | Federal | ORRI | 6/1/1968 |  | 5,760 | Fieldwood En | 10.4% | PROD |
| $0 Liability | HI 132 | G32748 | Federal | RT | 12/1/2008 | 11/30/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | HI 140 | 00518 | Federal | OP | 1/1/1955 | 2/10/2015 | 5,760 | Black Elk En Off Op | 50.0% | TERMIN |
| $0 Liability | HI 163 | G22236 | Federal | RT | 12/1/2000 | 5/31/2015 | 5,760 | Fieldwood En | 70.0% | TERMIN |
| HIGH ISLAND 176 | HI 176 | G06164 | Federal | OPRTS Cont | 10/1/1983 | 12/1/2002 | 5,760 | Apache | 49.5% | TERMIN |
| HIGH IS. 179 / GA 180 | HI 179 | G03236 | Federal | RT | 9/1/1975 |  | 5,760 | Cox Op | 100.0% | UNIT |
| HIGH ISLAND 179 | HI 193 | G06317 | Federal | CONT | 9/1/1975 |  | 5,760 | Arena Off | 90.0% | UNIT |
| $0 Liability | HI 194 | G06166 | Federal | RT | 10/1/1983 | 7/21/2013 | 5,760 | Apache | 100.0% | TERMIN |
| $0 Liability | HI 194 | G06166 | Federal | OP | 10/1/1983 | 7/21/2013 | 5,760 | Apache | 45.0% | TERMIN |
| $0 Liability | HI 201 | G23199 | Federal | OP | 12/1/2001 | 10/5/2014 | 5,760 | Apache Shelf | 37.6% | TERMIN |
| HIGH IS. 206 | HI 206 | G20660 | Federal | RT | 1/1/1999 |  | 5,760 | Fieldwood En | 100.0% | PROD |
| HIGH ISLAND 45 | HI 45 | G12564 | Federal | RT | 10/1/1990 | 3/8/2015 | 4,367 | Fieldwood En | 16.7% | TERMIN |
| HIGH ISLAND 45 | HI 45 | G12564 | Federal | OP 1 | 10/1/1990 | 3/8/2015 | 4,367 | Fieldwood En | 15.0% | TERMIN |
| HIGH ISLAND 45 | HI 45 | G12564 | Federal | OP 2 | 10/1/1990 | 3/8/2015 | 4,367 | Fieldwood En | 33.3% | TERMIN |
| $0 Liability | HI 52 | 00508 | Federal | RT | 1/1/1955 | 9/24/2013 | 1,440 | SandRidge En Off | 75.0% | TERMIN |
| $0 Liability | HI 52 | 00509 | Federal | RT | 1/1/1955 | 9/24/2013 | 1,440 | Apache | 75.0% | TERMIN |
| $0 Liability | HI 52 | 00511 | Federal | RT | 1/1/1955 | 9/24/2013 | 1,440 | Apache | 75.0% | TERMIN |
| $0 Liability | HI 52 | 00513 | Federal | RT | 1/1/1955 | 9/24/2013 | 180 | Phoenix Exp | 75.0% | TERMIN |
| $0 Liability | HI 53 | 00740 | Federal | RT | 4/1/1960 | 9/24/2013 | 1,440 | Apache | 75.0% | TERMIN |
| $0 Liability | HI-113-133 | G32760 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-145 | G32761 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-146 | G32762 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | HI A-148 | G32763 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A-160 | G32764 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI-171 | G30679 | Federal | RT | 12/1/2006 | 8/9/2014 | 5,760 | Walter O&G | 33.3% | TERMIN |
| $0 Liability | HI-326 | G32777 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| HIGH IS. A-334 | HI A-334 | G02423 | Federal | RT | 8/1/1973 | 2/27/2014 | 5,760 | Fieldwood En | 38.9% | TERMIN |
| HIGH IS. A-341 | HI A-341 | G25605 | Federal | RT | 12/1/2003 |  | 5,760 | Fieldwood En | 60.0% | PROD |
| $0 Liability | HI-350 | G02428 | Federal | RT | 8/1/1973 | 7/24/2013 | 4,345 | Apache | 100.0% | RELINQ |
| $0 Liability | HI A360 | G34677 | Federal | RT | 8/1/1973 | 2/18/2016 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | HI A361 | G34678 | Federal | RT | 3/1/2013 | 2/24/2017 | 5,760 | Fieldwood En | 100.0% | RELINQ |
| $0 Liability | HI A363 | G33413 | Federal | RT | 10/1/2009 | 9/30/2014 | 5,760 | Apache Shelf Exp | 100.0% | TERMIN |
| HIGH IS. A-365/A-376 | HI A-365 | G02750 | Federal | RT | 7/1/1974 |  | 5,760 | Fieldwood En | 53.1% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G02753 | Federal | OP 1 | 7/1/1974 |  | 5,760 | Fieldwood En | 100.0% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G02754 | Federal | RT | 7/1/1974 |  | 5,760 | Fieldwood En | 44.4% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G2754 | Federal | ORRI | 7/1/1974 |  |  | Fieldwood En | 1.2% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G2754 | Federal | ORRI | 7/1/1974 |  |  | Fieldwood En | 6.0% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI-382 | G02757 | Federal | RT | 7/1/1974 |  | 5,760 | Fieldwood En | 72.4% | PROD |
| $0 Liability | HI A406 | G32767 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A440 | G33412 | Federal | RT | 10/1/2009 | 9/30/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| HIGH ISLAND A-442 | HI A442 | G11383 | Federal | OP | 11/1/1989 | 3/27/2017 | 5,760 | Northstar Off Grp | 22.7% | TERMIN |
| $0 Liability | HI A454 | G32769 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI A457 | G32770 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | HI-A474 | G02366 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 10.0% | TERMIN |
| HIGH ISLAND A-474/489 | HI A-475 | G02367 | Federal | CONT | 8/1/1973 | 12/25/1999 | 5,760 | McMoRan O&G | 10.0% | TERMIN |
| HIGH IS. A-474 | HI A-489 | G02372 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 8.5% | TERMIN |
| Ex N | HI A537 | G02698 | Federal | CONT | 5/29/1974 | 11/2/2016 |  | McMoRan O&G |  | TERMIN |
| HIGH IS. A-545 | HI A545 | G11739 | Federal | OP | 1/1/1997 | 4/30/2015 | 5,760 | Fieldwood En | 60.0% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-572 | G02392 | Federal | RT | 8/1/1973 | 5/18/2006 | 5,760 | Apache | 72.4% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-573 | G02393 | Federal | RT | 8/1/1973 |  | 5,760 | Fieldwood En | 72.4% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-581 | G18959 | Federal | CONT | 8/27/1997 | 7/1/2005 | 5,760 | Cox Op | 24.7% | TERMIN |
| HIGH IS. A-563 (563/564/581/582) | HI A-582 | G02719 | Federal | RT | 7/1/1974 |  | 5,760 | Cox Op | 24.7% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-582 | G02719 | Federal | OP 1 | 7/1/1974 |  | 5,760 | Cox Op | 15.5% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-595 | G02721 | Federal | RT | 7/1/1974 |  | 5,760 | Fieldwood En | 72.4% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-596 | G02722 | Federal | RT | 7/1/1974 |  | 5,760 | Fieldwood En | 72.4% | PROD |
| MISSISSIPPI CANYON 109 | MC 108 | G09777 | Federal | RT | 7/1/1988 |  | 5,760 | BP E&P | 75.2% | PROD |
| MISSISSIPPI CANYON 109 | MC 109 | G09777 | Federal | RT | 7/1/1988 |  | 5,760 | BP E&P | 75.2% | PROD |
| MISSISSIPPI CANYON 109 | MC 110 | G18192 | Federal | RT | 8/1/1997 |  | 5,760 | Fieldwood En | 50.0% | PROD |
| MISSISSIPPI CANYON 109 | MC 110 | G18192 | Federal | ORRI | 8/1/1997 |  |  | Fieldwood En | 3.9% | PROD |
| MISSISSIPPI CANYON 21/65 | MC 21 | G28351 | Federal | ORRI | 7/1/1995 |  | 4,445 | ANKOR En | 3.0% | PROD |
| MISSISSIPPI CANYON 311 | MC 311 | G02968 | Federal | RT | 12/1/1974 |  | 5,760 | Fieldwood En | 100.0% | PROD |
| MISSISSIPPI CANYON 21/65 | MC 65 | G21742 | Federal | RT | 6/1/2000 |  | 5,760 | ANKOR En | 100.0% | PROD |
| MISSISSIPPI CANYON 21/65 | MC 65 | G21742 | Federal | ORRI | 6/1/2000 |  |  | ANKOR En | 13.0% | PROD |
| MATAGORDA ISLAND 519 FED / SL TX | MI 486 | MF88560 | SL - TX | WI | 10/5/1982 | 9/1/2019 | 1,440 | Fieldwood | 100.0% | EXPIRED |
| MATAGORDA ISLAND 519 FED / SL TX | MI 487 | MF-88562 | SL - TX | WI | 10/5/1982 |  | 1,305 | Fieldwood | 100.0% | SI |
| MATAGORDA ISLAND 519 FED / SL TX | MI 518 | G05169 | Federal | RT | 1/1/1983 | 9/30/2019 | 5,675 | Fieldwood En | 100.0% | TERMIN |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MATAGORDA ISLAND 519 FED / SL TX | MI 518 | MF80522 | SL - TX | OP | 10/2/1979 | 9/1/2019 | 85 | Fieldwood | 100.0% | EXPIRED |
| MATAGORDA ISLAND 519 FED / SL TX | MI 519 | MF-79413 | SL - TX | WI | 2/6/1979 | | 739 | Fieldwood | 100.0% | SI |
| MATAGORDA IS. 622/623/635/636 | MI 622 | G05000 | Federal | RT | 4/1/1982 | 8/23/2018 | 5,760 | Fieldwood En | 81.0% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 622 | G05000 | Federal | OP | 4/1/1982 | 8/23/2018 | 5,760 | BP E&P | 37.5% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 623 | G03088 | Federal | RT | 4/1/1975 | 8/23/2018 | 5,760 | Fieldwood En | 81.0% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 623 | G03088 | Federal | OP | 4/1/1975 | 8/23/2018 | 5,760 | BP E&P | 37.5% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 635 | G06043 | Federal | RT | 10/1/1983 | 8/23/2018 | 5,760 | Fieldwood En | 81.0% | TERMIN |
| MATAGORDA IS. 622/623/635/636 | MI 635 | G06043 | Federal | OP | 10/1/1983 | 8/23/2018 | 5,760 | BP E&P | 37.5% | TERMIN |
| $0 Liability | MI 636 | G34670 | Federal | RT | 4/1/2013 | 3/25/2016 | 5,760 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MI 652 | G34022 | Federal | RT | 2/1/2012 | 1/31/2017 | 5,760 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MI 681 | G04703 | Federal | RT | 9/1/1981 | 2/25/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MI 685 | G04548 | Federal | RT | 1/1/1981 | 12/22/2014 | 5,760 | EOG Res | 50.0% | TERMIN |
| $0 Liability | MI 685 | G04548 | Federal | OP | 1/1/1981 | 12/22/2014 | 5,760 | EOG Res | 2.5% | TERMIN |
| $0 Liability | MI 703 | G03733 | Federal | RT | 6/1/1978 | 2/26/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MI 703 | G03733 | Federal | OP 1 | 6/1/1978 | 2/26/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MI 703 | G03733 | Federal | OP 2 | 6/1/1978 | 2/26/2014 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| | MI 772 | MF93351 | SL - TX | WI | 2/7/1989 | 1/1/2017 | 704 | Fieldwood | | TERMINATED |
| $0 Liability | MO 820 | G34403 | Federal | RT | 8/1/2012 | 7/7/2016 | 3,347 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MO 821 | G05058 | Federal | RT | 4/1/1982 | 9/19/2014 | 4,028 | Fieldwood En | 100.0% | TERMIN |
| | MO 826 | STATE OF ALABAMA 627 | SL - AL | WI | 8/14/1984 | 1/1/2009 | 2,511 | Fieldwood | | TERMINATED |
| MOBILE BAY 826 | MO 826 | G26176 | Federal | RT | 7/1/2004 | | 1,430 | Fieldwood En | 75.0% | PROD |
| $0 Liability | MO 871 | G32272 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | MO 913 | G33131 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR |
| $0 Liability | MO 914 | G33132 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR |
| | MP 120 | G3197 | Federal | ORRI | 7/1/1975 | | | Arena Off | 2.0% | PROD |
| | MP 120 | G03197 | Federal | RT | 5/28/1975 | | | Arena Off | 2.0% | PROD |
| $0 Liability | MP 134 | G34375 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 135 | G34376 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 136 | G34377 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 137 | G34378 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ |
| MAIN PASS 140 | MP 140 | G02193 | Federal | RT | 10/1/1972 | | 4,995 | Fieldwood En | 65.0% | PROD |
| $0 Liability | MP 143 | G34380 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,995 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 146 | G34860 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,561 | Apache Shelf Exp | 75.0% | RELINQ |
| $0 Liability | MP 147 | G34861 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,561 | Apache Shelf Exp | 75.0% | RELINQ |
| $0 Liability | MP 148 | G34381 | Federal | RT | 11/1/2012 | 10/4/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 149 | G34382 | Federal | RT | 11/1/2012 | 10/4/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 150 | G34862 | Federal | RT | 7/1/2013 | 6/21/2017 | 5,000 | Apache Shelf Exp | 75.0% | RELINQ |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 152 | G01966 | Federal | RT | 1/1/1970 | | 4,978 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 152 | G01966 | Federal | OP | 1/1/1970 | | 4,978 | Fieldwood En | 75.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 153 | G01967 | Federal | RT | 1/1/1970 | | 5,000 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | MP 153 | G01967 | Federal | OP | 1/1/1970 | | 5,000 | Fieldwood En | 75.0% | UNIT |
| $0 Liability | MP 166 | G26152 | Federal | RT | 7/1/2004 | 11/3/2014 | 4,995 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | MP 175 | G08753 | Federal | OP | 8/1/1987 | 9/1/2013 | 4,995 | Tana Exp | 21.2% | TERMIN |
| $0 Liability | MP 255 | G07825 | Federal | RT | 8/1/1985 | 3/9/2014 | 4,995 | Fieldwood En | 52.4% | TERMIN |
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | MP 259 | G07827 | Federal | RT | 9/1/1985 | 7/11/2020 | 4,995 | Fieldwood En | 56.9% | TERMIN |
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | MP 260 | G07828 | Federal | RT | 9/1/1985 | 7/11/2020 | 4,995 | Fieldwood En | 56.9% | TERMIN |
| MAIN PASS 270 | MP 270 | G22812 | Federal | ORRI | 7/1/2001 | | 4,995 | Castex Off | 1.0% | UNIT |
| $0 Liability | MP 271 | G34388 | Federal | RT | 10/1/2012 | 9/30/2017 | 4,995 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | MP 272 | G34865 | Federal | RT | 7/1/2013 | 6/21/2017 | 4,995 | Apache Shelf Exp | 75.0% | RELINQ |
| *No FW lease ownership | MP 273 | G36690 | Federal | RT | 7/1/2010 | | 4,995 | Castex Off | 37.5% | UNIT |
| $0 Liability | MP 274 | G33691 | Federal | RT | 7/1/2010 | 6/30/2015 | 4,995 | Castex Off | 37.5% | UNIT |
| MAIN PASS 270/275/289/290 | MP 275 | G15395 | Federal | RT | 9/1/1995 | | 4,995 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 270/275/289/290 | MP 275 | G15395 | Federal | ORRI | 9/1/1995 | | 4,995 | Fieldwood En | 8.3% | PROD |
| *No FW asset ownership | MP 281 | G10910 | Federal | RT | 7/1/1989 | | 4,995 | EnVen En Vent | 50.0% | PROD |
| *No FW asset ownership | MP 281 | G10910 | Federal | OP | 7/1/1989 | | 4,995 | EnVen En Vent | 30.0% | PROD |
| | MP 281 | G10910 | Federal | ORRI | 7/1/1989 | | | EnVen En Vent | 3.1% | PROD |
| MAIN PASS 270/275/289/290 | MP 289 | G01666 | Federal | RT | 7/1/1967 | | 4,561 | Fieldwood En | 100.0% | PROD |
| $0 Liability | MP 290 | G34866 | Federal | RT | 7/1/1967 | 6/21/2017 | 4,561 | Apache | 75.0% | RELINQ |
| MAIN PASS 275/289/290 | MP 290 | G01667 | Federal | RT | 7/1/1967 | 11/22/2012 | 4,561 | Apache | 100.0% | TERMIN |
| $0 Liability | MP 292 | G34391 | Federal | RT | 11/1/2012 | 10/31/2017 | 4,561 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | MP 293 | G34392 | Federal | RT | 11/1/2012 | 10/4/2016 | 4,561 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | MP 293 | G34393 | Federal | RT | 11/1/2012 | 10/31/2017 | 4,561 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | MP 294 | G34394 | Federal | RT | 11/1/2012 | 10/4/2016 | 4,561 | Apache Shelf Exp | 100.0% | RELINQ |
| MAIN PASS 295 | MP 295 | G32263 | Federal | CONT | 8/1/2008 | 7/31/2015 | 4,561 | Fieldwood En | 37.5% | TERMIN |
| MAIN PASS 296/303/304 | MP 296 | G01673 | Federal | RT | 6/1/1967 | | 4,561 | GOM Shelf | 50.0% | UNIT |
| MAIN PASS 296/303/304 | MP 296 | G01673 | Federal | OP | 6/1/1967 | | 4,561 | GOM Shelf | 25.0% | UNIT |
| $0 Liability | MP 297 | G34395 | Federal | RT | 11/1/2012 | 10/4/2016 | 4,561 | Apache Shelf Exp | 100.0% | RELINQ |
| MAIN PASS 300/301 | MP 300 | G01317 | Federal | OP | 6/1/1962 | | 4,561 | Cantium | 10.4% | UNIT |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | OP 1 | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 10.4% | TERMIN |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | OP 2 | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 6.3% | TERMIN |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | OP 3 | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 10.4% | TERMIN |
| MAIN PASS 300/301 | MP 301 | G04486 | Federal | RT | 11/1/1980 | 8/23/2019 | 5,000 | Walter O&G | 10.4% | TERMIN |
| MAIN PASS 311/312 | MP 302 | G32264 | Federal | RT | 7/1/2008 | | 5,000 | GOM Shelf | 50.0% | PROD |
| MAIN PASS 296/303/304 | MP 303 | G04253 | Federal | OP 1 | 12/1/1979 | | 5,000 | Fieldwood En | 25.0% | UNIT |
| MAIN PASS 296/303/304 | MP 303 | G04253 | Federal | RT | 12/1/1979 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| MAIN PASS 308/309/310 | MP 304 | G03339 | Federal | OP | 4/1/1976 | | 5,000 | ConocoPhillips | 100.0% | UNIT |
| $0 Liability | MP 305 | G34396 | Federal | RT | 12/1/2012 | 11/22/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| MAIN PASS 308/309/310 | MP 308 | G32265 | Federal | RT | 8/1/2008 | | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 308/309/310 | MP 309 | G08760 | Federal | RT | 6/1/1987 | | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 308/309/310 | MP 309 | G04126 | Federal | RT | 10/1/1979 | | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 311/312 | MP 311 | G02013 | Federal | RT | 11/1/1972 | | 5,000 | GOM Shelf | 50.0% | PROD |
| MAIN PASS 311/312 | MP 311 | G02213 | Federal | RT | 11/1/1972 | | 5,000 | GOM Shelf | 25.0% | PROD |
| MAIN PASS 311/312 | MP 312 | G16520 | Federal | RT | 7/1/1996 | | 5,000 | Fieldwood En | 100.0% | PROD |
| MAIN PASS 311/312 | MP 314 | G33693 | Federal | OP | 7/1/2010 | 6/30/2015 | 5,000 | Apache Shelf Exp | 80.0% | EXPIR |
| MAIN PASS 308/309/310 | MP 315 | G08467 | Federal | RT | 7/1/1986 | | 5,000 | Fieldwood En | 80.0% | PROD |
| MAIN PASS 308/309/310 | MP 315 | G08467 | Federal | OP 2 | 7/1/1986 | | 5,000 | Fieldwood En | 80.0% | PROD |
| MAIN PASS 308/309/310 | MP 315 | G08467 | Federal | OP 3 | 7/1/1986 | | 5,000 | Fieldwood En | 80.0% | PROD |
| MAIN PASS 308/309/310 | MP 315 | G08467 | Federal | OP | 7/1/1986 | | 5,000 | Fieldwood En | 80.0% | PROD |
| | MP 5 | SL13890 | SL - LA | WI | | | 26 | Apache | 50.0% | TERMIN |
| MAIN PASS 59 | MP 59 | G03194 | Federal | OP | 7/1/1975 | | 1,406 | Cantium | 37.5% | UNIT |
| MAIN PASS 59 | MP 59 | G04461 | Federal | OP | 7/1/1986 | | 2,340 | Cantium | 37.5% | UNIT |
| | MP 6 | SL03771 | SL - LA | WI | 4/26/1961 | 6/28/2012 | 1,067 | Apache | 50.0% | TERMIN |
| | MP 6 | SL13580 | SL - LA | WI | | | 287 | Apache | 50.0% | TERMIN |
| | MP 6 | SL13891 | SL - LA | WI | | | 270 | Apache | 50.0% | TERMIN |
| MAIN PASS 64 | MP 64 | G04909 | Federal | ORRI | 12/1/1981 | | 4,988 | Sanare En Part | 4.2% | UNIT |
| | MP 7 | SL03773 | SL - LA | WI | 4/26/1961 | 6/28/2012 | 4 | Apache | 50.0% | TERMIN |
| | MP 7 | SL13892 | SL - LA | WI | | | 44 | Apache | 50.0% | TERMIN |
| $0 Liability | MP 74 | G34857 | Federal | RT | 8/1/2013 | 7/7/2016 | 1,733 | Apache Shelf Exp | 75.0% | RELINQ |
| MAIN PASS 77 | MP 77 | G04481 | Federal | RT | 11/1/1980 | | 4,655 | Fieldwood En Off | 26.2% | RELINQ |
| MAIN PASS 77 | MP 77/78 | G04481 | Federal | OP | 11/1/1980 | | 4,655 | Fieldwood En Off | 23.5% | RELINQ |
| MAIN PASS 6/7 FED / SL LA | MP 91 | G14576 | Federal | RT | 5/1/1994 | 3/18/2008 | 1,017 | Apache | 100.0% | TERMIN |
| | MU 883 | MF98761 | SL - TX | WI | | 10/1/2012 | | Apache | | TERMIN |
| MUSTANG ISLAND A-111 | MU A-111 | G03068 | Federal | RT | 4/1/1975 | 1/12/2013 | 5,760 | Apache | 100.0% | TERMIN |
| $0 Liability | MU A133 | G33392 | Federal | RT | 10/1/2009 | 9/30/2014 | 5,760 | Apache Shelf Exp | 100.0% | EXPIR |
| MUSTANG ISLAND A-85 | MU A134 | G32724 | Federal | RT | 11/1/2008 | 10/31/2013 | 5,760 | Apache | 100.0% | EXPIR |
| $0 Liability | MU A85 | G03061 | Federal | RT | 4/1/1975 | | 5,760 | EnVen En Vent | 53.3% | PROD |
| $0 Liability | PE 881 | G06390 | Federal | OP | 2/1/1984 | 10/17/2013 | 760 | ConocoPhillips | 18.8% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 1 | G04234 | Federal | RT | 1/1/1980 | 7/10/2020 | 1,568 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 10 | G02925 | Federal | RT | 12/1/1974 | 7/26/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 11 | 00071 | Federal | RT | 9/12/1946 | 9/8/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | RT | 7/1/1975 | 5/23/2018 | 5,000 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 1 | 7/1/1975 | 5/23/2018 | 391 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 2 | 7/1/1975 | 5/23/2018 | 3,906 | ANKOR En | 12.5% | TERMIN |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 3 | 7/1/1975 | 5/23/2018 | 703 | ANKOR En | 4.4% | TERMIN |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 5 | 7/1/1975 | 5/23/2018 | 391 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 25 | PL 25 | G14535 | Federal | RT | 7/1/1994 | 7/30/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| *No FW asset ownership | PL 5 | G12027 | Federal | RT | 6/1/1990 | 5/13/2019 | 5,000 | Talos En Off | 100.0% | RELINQ |
| $0 Liability | PL 6 | G09651 | Federal | RT | 5/1/1988 | 7/12/2017 | 5,000 | Walter O&G | 100.0% | RELINQ |
| $0 Liability | PL 6 | G09651 | Federal | OP 1 | 5/1/1988 | 7/12/2017 | 5,000 | Walter O&G | 35.0% | TERMIN |
| $0 Liability | PL 6 | G09651 | Federal | OP 2 | 5/1/1988 | 7/12/2017 | 5,000 | Walter O&G | 65.0% | TERMIN |
| $0 Liability | PL 8 | G03587 | Federal | RT | 8/1/1977 | 6/19/2018 | 5,000 | ANKOR En | 12.5% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 9 | G02924 | Federal | RT | 12/1/1974 | 7/26/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | PL 9 | G02924 | Federal | OP | 12/1/1974 | 7/26/2020 | 5,000 | Fieldwood En | 50.0% | TERMIN |
|  | PN 883 | MF100410 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
|  | PN 883 | MF100411 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
|  | PN 883 | MF100412 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 720 | Apache | 35.0% | ACTIVE |
|  | PN 883 | MF101898 | SL - TX | WI | 10/6/1998 |  | 720 | Apache | 35.0% | ACTIVE |
|  | PN 883 | MF96146 | SL - TX | WI | 10/4/1994 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
|  | PN 883 | MF96147 | SL - TX | WI | 10/4/1994 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
|  | PN 883 | SL96146 | SL - TX | WI | 10/4/1994 | 1/0/1900 | 720 | Fieldwood | 35.0% | ACTIVE |
|  | PN 899K | MF100433 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 375 | Fieldwood | 35.0% | ACTIVE |
|  | PN 899L | MF100414 | SL - TX | WI | 10/6/1998 | 1/0/1900 | 360 | Fieldwood | 35.0% | ACTIVE |
| NORTH PADRE ISLAND 969 | PN 969 | G05953 | Federal | RT | 10/1/1983 | 6/30/2015 | 5,760 | Peregrine O&G II | 8.3% | TERMIN |
| NORTH PADRE ISLAND 969 | PN 976 | G05954 | Federal | RT | 10/1/1983 | 6/30/2015 | 5,760 | Peregrine O&G II | 8.3% | TERMIN |
| $0 Liability | SA 10 | G03958 | Federal | RT | 3/1/1979 | 12/29/2017 | 3,144 | Fieldwood En | 92.3% | TERMIN |
| $0 Liability | SA 10 | G03958 | Federal | OP | 3/1/1979 | 12/29/2017 | 3,144 | Fieldwood En | 20.0% | TERMIN |
| *No FW asset ownership | SA 13 | G03959 | Federal | OP | 3/1/1979 | 1/16/2020 | 5,000 | Renaissance Off | 50.0% | TERMIN |
| SOUTH MARSH IS. 10/18 | SM 10 | G03181 | Federal | RT | 4/1/1962 | 1/6/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 105/106 | SM 105 | G17938 | Federal | RT | 8/1/1997 |  | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH MARSH IS. 105/106 | SM 106 | G03776 | Federal | RT | 2/1/1973 | 11/19/2015 | 2,500 | Fieldwood En | 100.0% | TERMIN |
| SOUTH MARSH IS. 105/106 | SM 106 | G03776 | Federal | RT | 6/1/1978 |  | 2,500 | Fieldwood En | 100.0% | PROD |
| SOUTH MARSH ISLAND 107/108 | SM 108 | 00792 | Federal | RT | 5/1/1960 | − | 5,000 | Talos En Off | 25.0% | PROD |
| SOUTH MARSH ISLAND 107/108 | SM 108 | 00792 | Federal | OP | 5/1/1960 | − | 5,000 | Talos En Off | 12.5% | PROD |
| SOUTH MARSH IS. 10/18 | SM 11 | G01182 | Federal | RT | 3/1/1962 |  | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | RT | 12/1/1974 |  | 2,784 | Fieldwood En | 66.7% | PROD |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | OP 2 | 12/1/1974 |  | 2,784 | Fieldwood En | 33.3% | PROD |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | RT | 12/1/1974 |  | 2,784 | Fieldwood En | 17.3% | PROD |
| SOUTH MARSH IS. 127/128 | SM 127 | G02883 | Federal | OP 2 | 12/1/1974 |  | 2,784 | Fieldwood En | 8.7% | PROD |
| SOUTH MARSH IS. 127/128 | SM 128 | G02587 | Federal | RT | 5/1/1974 |  | 5,000 | Fieldwood En | 66.7% | PROD |
| SOUTH MARSH IS. 127/128 | SM 128 | G02587 | Federal | RT | 5/1/1974 |  | 5,000 | Fieldwood En | 17.3% | PROD |
| SOUTH MARSH IS. 132 | SM 132 | G02282 | Federal | RT | 2/1/1973 | 4/1/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 135 | G19776 | Federal | RT | 5/1/1998 | 2/18/2012 | 3,293 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 136 | G02588 | Federal | RT | 5/1/1974 | 8/4/2019 | 2,500 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 137 | G02589 | Federal | RT | 5/1/1974 | 6/30/2015 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH ISLAND 141 | SM 141 | G02885 | Federal | OP 2 | 12/1/1974 | 4/1/2016 | 5,000 | Fieldwood En | 66.7% | TERMIN |
| SOUTH MARSH ISLAND 141 | SM 141 | G02885 | Federal | RT | 12/1/1974 | 4/1/2016 | 5,000 | Fieldwood En | 77.6% | TERMIN |
| SOUTH MARSH ISLAND 141 | SM 141 | G02885 | Federal | OP 2 | 12/1/1974 | 4/1/2016 | 5,000 | Fieldwood En | 17.3% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 149 | G02592 | Federal | RT | 5/1/1974 |  | 2,500 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 136/137/149/150 | SM 150 | G16325 | Federal | RT | 6/1/1996 | 5/22/2018 | 3,329 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH ISLAND 161 | SM 161 | G04809 | Federal | RT | 9/1/1981 |  | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | SM 171 | G34273 | Federal | RT | 9/1/2012 | 8/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | SM 172 | G34274 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 50.0% | TERMIN |
| $0 Liability | SM 177 | G34275 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | SM 178 | G34276 | Federal | RT | 9/1/2012 | 8/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH MARSH IS. 10/18 | SM 18 | G08680 | Federal | RT | 6/1/1987 | 11/3/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 10/18 | SM 18 | G08680 | Federal | OP | 6/1/1987 | 11/3/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | SM 188 | G34277 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | SM 189 | G34278 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 50.0% | TERMIN |
| $0 Liability | SM 193 | G34279 | Federal | RT | 9/1/2012 | 8/23/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | SM 195 | G21108 | Federal | ORRI | 11/1/1980 |  |  | Tarpon O&D | 4.0% | TERMIN |
|  | SM 236 | G4437 | Federal | ORRI | 11/1/1980 | 12/27/2015 |  | Cox Op | 4.4% | UNIT |
| SOUTH MARSH IS. 241 | SM 241 | 00310 | Federal | RT | 2/7/1936 |  | 114,601 | Cox Op | 60.0% | UNIT |
| SOUTH MARSH IS. 241 | SM 241 | 00310 | Federal | OP | 2/7/1936 | − | 114,601 | Cox Op | 60.0% | UNIT |
| SOUTH MARSH IS. 241 | SM 241 | 00310 | Federal | Unit | 2/7/1936 | − | 114,601 | Cox Op | 16.0% | UNIT |
| Ex N | SM 268 | G02310 | Federal | CONT | 12/19/1972 | 9/7/2009 |  | Apache | 69.9% | TERMIN |
| SOUTH MARSH IS. 268/269/280/281 | SM 268 | G34284 | Federal | RT | 8/1/2012 | 7/31/2017 | 3,237 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | RT | 1/1/1973 |  | 5,000 | Fieldwood En | 72.8% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 1 | 6/1/1994 |  | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 3 | 6/1/1994 |  | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | RT | 6/1/1994 |  | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 281 | G02600 | Federal | RT | 4/1/1974 |  | 3,214 | Fieldwood En | 68.1% | PROD |
| SOUTH MARSH IS. 39 | SM 34 | G13897 | Federal | OP | 5/1/1993 | 8/24/2014 | 5,000 | Black Elk En Off Op | 50.0% | TERMIN |
| $0 Liability | SM 44 | G23840 | Federal | RT | 5/1/2002 | 3/25/2014 | 5,000 | SandRidge En Off | 50.0% | TERMIN |
| SOUTH MARSH IS. 39 | SM 48 | 00786 | Federal | RT | 5/1/1962 |  | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH MARSH ISLAND 58 | SM 58 | G01194 | Federal | RT | 6/1/1962 |  | 5,000 | ANKOR En | 100.0% | PROD |
| SOUTH MARSH IS. 66 | SM 66 | G13610 | Federal | RT | 6/1/1962 | 9/25/2019 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| $0 Liability | SM 7 | G13610 | Federal | RT | 7/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| SOUTH MARSH IS. 76 | SM 76 | G01208 | Federal | RT | 4/1/1962 |  | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 93 | SM 93 | G21618 | Federal | RT | 5/1/2000 |  | 5,000 | Talos ERT | 12.5% | TERMIN |
| $0 Liability | SM 97 | G32159 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Apache | 100.0% | EXPIR |
| SOUTH PASS 60 | SP 61 | G01609 | Federal | OP | 7/1/1967 |  | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH PASS 60 | SP 62 | G01294 | Federal | RT | 8/1/1962 |  | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 63 | G34365 | Federal | RT | 8/1/2012 | 7/31/2017 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 64 | G01901 | Federal | RT | 1/1/1969 |  | 5,000 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 64 | G01901 | Federal | OP | 1/1/1969 |  | 5,000 | Fieldwood En | 75.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 65 | G01610 | Federal | RT | 1/1/1969 |  | 5,000 | Fieldwood En | 50.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 65 | G01610 | Federal | OP | 1/1/1969 |  | 5,000 | Fieldwood En | 75.0% | UNIT |
| SOUTH PASS 64/65 / MAIN PASS 152/153 | SP 66 | G1611 | Federal | ORRI | 1/1/1967 |  | 5,000 | Fieldwood En | 8.3% | UNIT |
| $0 Liability | SP 68 | G34366 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| $0 Liability | SP 69 | G34367 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| SOUTH PASS 61/70 | SP 70 | G01614 | Federal | RT | 8/1/1962 |  | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH PASS 75 | SP 75 | G05051 | Federal | OP 2 | 4/1/1982 | 1/23/2016 | 5,000 | GOM Shelf | 28.8% | TERMIN |
| SOUTH PASS 75 | SP 75 | G05051 | Federal | RT | 4/1/1982 | 1/23/2016 | 5,000 | GOM Shelf | 71.2% | TERMIN |
| SOUTH PASS 75 | SP 75 | G05051 | Federal | OP 2 | 4/1/1982 | 1/23/2016 | 5,000 | GOM Shelf | 71.2% | TERMIN |
| SOUTH PASS 83 | SP 83 | G05052 | Federal | ORRI | 4/1/1982 | 2/27/2020 | 5,000 | Arena Off | 0.7% | RELINQ |
| SOUTH PASS 87/89 / WEST DELTA 128 | SP 87 | G07799 | Federal | RT | 9/1/1985 | 8/2/2020 | 3,540 | Fieldwood En | 33.3% | TERMIN |
| SOUTH PASS 87/89 / WEST DELTA 128 | SP 87 | G07799 | Federal | RT | 9/1/1985 | 8/2/2020 | 3,540 | Fieldwood En | 33.3% | TERMIN |
| SOUTH PASS 87/89 / WD 128 | SP 88 | G10894 | Federal | RT | 5/1/1989 | 5/2/2012 | 3,540 | Apache | 100.0% | TERMIN |
| SOUTH PASS 87/89 / WEST DELTA 128 | SP 89 | G01618 | Federal | RT | 7/1/1967 |  | 5,000 | Fieldwood En | 50.0% | PROD |
| $0 Liability | SP 96 | G31431 | Federal | RT | 3/1/2008 | 2/21/2014 | 5,000 | Stone En | 50.0% | RELINQ |
| SHIP SHOAL 105/126/129 | SS 105 | G09614 | Federal | RT | 8/1/1988 |  | 5,000 | Bennu O&G | 100.0% | PROD |
| SHIP SHOAL 105/126/129 | SS 105 | G09614 | Federal | OP 2 | 8/1/1988 |  | 5,000 | Bennu O&G | 50.0% | PROD |
| SHIP SHOAL 105/126/129 | SS 105 | G09614 | Federal | OP 3 | 8/1/1988 |  | 5,000 | Bennu O&G | 50.0% | PROD |
| SHIP SHOAL 105/126/129 | SS 126 | G12940 | Federal | RT | 5/1/1991 | 2/16/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 105/126/129 | SS 126 | G12940 | Federal | OP | 5/1/1991 | 2/16/2020 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SHIP SHOAL 105/126/129 | SS 129 | G12941 | Federal | RT | 5/1/1991 |  | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SHIP SHOAL 105/126/129 | SS 129 | G12941 | Federal | ORRI | 5/1/1991 |  |  | Fieldwood En | 3.3% | PROD |
| SHIP SHOAL 130 | SS 130 | 00453 | Federal | ORRI | 1/1/1955 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 145 | SS 145 | G34831 | Federal | CONT | 9/1/2013 | 10/31/2019 | 5,000 | Hoactzin Part | 25.0% | TERMIN |
| SHIP SHOAL 150 | SS 150 | G0419 | Federal | ORRI | 11/1/1954 |  | 5,000 | Ridgelake En | 5.0% | PROD |
| SHIP SHOAL 151 | SS 151 | G15282 | Federal | RT | 7/1/1995 |  | 5,000 | EnVen En Vent | 100.0% | PROD |
| $0 Liability | SS 153 | G18011 | Federal | RT | 7/1/1997 | 7/5/2016 | 5,000 | Fieldwood En | 33.3% | TERMIN |
|  | SS 154 | 00420 | Federal | ORRI | 11/1/1954 |  |  | Ridgelake En | 8.0% | PROD |
| SHIP SHOAL 159 | SS 159 | G11984 | Federal | OP | 7/1/1990 | 10/31/2019 | 5,000 | Hoactzin Part | 15.5% | TERMIN |
| SHIP SHOAL 169/182/193/194 | SS 169 | 00820 | Federal | RT | 4/1/1960 |  | 5,000 | Fieldwood En | 66.7% | PROD |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | SS 175 | G05550 | Federal | RT | 7/1/1983 | | 5,000 | Chevron USA | 66.7% | UNIT |
| EUGENE IS. 211/212 / SHIP SHOAL 175/176 | SS 176 | G38646 | Federal | RT | 7/1/2010 | | 5,000 | Fieldwood En | 40.0% | PROD |
| SHIP SHOAL 178 | SS 178 | G05551 | Federal | RT | 7/1/1983 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 169/182/193/194 | SS 182 | G03998 | Federal | RT | 3/1/1979 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 189 | SS 188 | G05203 | Federal | CONT | 1/1/1983 | 12/30/1991 | 5,027 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 189 | SS 189 | G04232 | Federal | OP 5 | 12/1/1979 | | 5,000 | Fieldwood En | 99.0% | PROD |
| SHIP SHOAL 189 | SS 189 | G04232 | Federal | RT | 12/1/1979 | | 5,000 | Fieldwood En | 99.0% | PROD |
| SHIP SHOAL 189 | SS 189 | G4232 | Federal | ORRI | 12/1/1979 | | | Fieldwood En | 8.0% | PROD |
| SHIP SHOAL 190/206/207/216 | SS 190 | G10775 | Federal | RT | 4/1/1989 | 8/10/2019 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| SHIP SHOAL 190/206/207/216 | SS 190 | G10775 | Federal | OP | 4/1/1989 | 8/10/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 169/182/193/194 | SS 193 | G13917 | Federal | RT | 5/1/1993 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 169/182/193/194 | SS 194 | G15288 | Federal | RT | 7/1/1995 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 198/199 | SS 198 | O0593 | Federal | RT | 9/1/1955 | | 2,969 | Renaissance Off | 50.0% | PROD |
| SHIP SHOAL 198/199 | SS 198 | G12355 | Federal | OP | 9/1/1955 | | 2,031 | Renaissance Off | 25.0% | PROD |
| $0 Liability | SS 199 | O0594 | Federal | OP | 9/1/1955 | | 3,516 | Talos En Off | 50.0% | PROD |
| SHIP SHOAL 198/199 | SS 199 | G12358 | Federal | OP | 9/1/1955 | | 1,484 | Renaissance Off | 50.0% | PROD |
| SHIP SHOAL 204 | SS 204 | G01520 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 55.2% | PROD |
| SHIP SHOAL 190/206/216 | SS 206 | G01522 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 60.0% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 72.2% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | OP | 7/1/1967 | | 5,000 | Fieldwood En | 47.6% | UNIT |
| SHIP SHOAL 189 | SS 210 | G05204 | Federal | CONT | 1/1/1983 | 12/26/1990 | 5,000 | Fieldwood En | 100.0% | RELINQ |
| SHIP SHOAL 190/206/216 | SS 216 | G01524 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 80.0% | PROD |
| SHIP SHOAL 243 | SS 243 | G10780 | Federal | RT | 7/1/1989 | | 5,000 | Fieldwood En | 10.5% | PROD |
| SHIP SHOAL 243 | SS 243 | G10780 | Federal | ORRI | 7/1/1989 | | | Fieldwood En | 4.2% | PROD |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En Off | 5.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G1030 | Federal | ORRI | 6/1/1962 | | | Fieldwood En Off | 0.2% | UNIT |
| $0 Liability | SS 258 | G05560 | Federal | RT | 7/1/1983 | 4/1/2016 | 5,000 | Castex Off | 100.0% | TERMIN |
| $0 Liability | SS 258 | G05560 | Federal | OP | 7/1/1983 | 4/1/2016 | 5,000 | Castex Off | 7.4% | TERMIN |
| SHIP SHOAL 258/259 | SS 259 | G05044 | Federal | RT | 4/1/1982 | 3/1/2018 | 5,141 | Fieldwood En | 100.0% | TERMIN |
| SHIP SHOAL 258/259 | SS 259 | G05044 | Federal | OP | 4/1/1982 | 3/1/2018 | 5,141 | Fieldwood En | 7.4% | TERMIN |
| $0 Liability | SS 271 | G01038 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En Off | 20.0% | UNIT |
| SHIP SHOAL 274 | SS 274 | G01039 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 274 | SS 276 | G10785 | Federal | RT | 5/1/1989 | 10/31/2007 | 5,000 | Monforte | 66.7% | TERMIN |
| SHIP SHOAL 274 | SS 277 | G09627 | Federal | RT | 5/1/1988 | | 5,000 | Fieldwood En | 1.0% | SOP |
| SHIP SHOAL 274 | SS 277 | G09627 | Federal | OP | 5/1/1988 | | 5,000 | Fieldwood En | 100.0% | SOP |
| SHIP SHOAL 278 | SS 278 | G32206 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Apache | 100.0% | EXPIR |
| SHIP SHOAL 300/314/315 | SS 291 | G02923 | Federal | OP | 12/1/1974 | | 3,750 | Apache | 67.9% | OPENS |
| SHIP SHOAL 30/31/32/33 | SS 30 | O0333 | Federal | RT | 9/12/1946 | | 5,000 | W & T Off | 37.5% | UNIT |
| | SS 301 | G10794 | Federal | ORRI | 5/1/1989 | | | Fieldwood En | 1.5% | SOP |
| SHIP SHOAL 30/31/32/33 | SS 31 | O0334 | Federal | RT | 9/12/1946 | | 5,000 | W & T Off | 37.5% | UNIT |
| SHIP SHOAL 300/314/315 | SS 314 | G26074 | Federal | OP 4 | 5/1/2004 | | 5,000 | Fieldwood En | 37.5% | PROD |
| SHIP SHOAL 300/314/315 | SS 314 | G26074 | Federal | RT | 5/1/2004 | | 5,000 | Fieldwood En | 75.0% | PROD |
| SHIP SHOAL 300/314/315 | SS 314 | G26074 | Federal | ORRI | 5/1/2004 | | | Fieldwood En | 4.5% | PROD |
| SHIP SHOAL 30/31/32/33 | SS 32 | O0335 | Federal | RT | 9/12/1946 | | 5,000 | W & T Off | 37.5% | UNIT |
| SHIP SHOAL 30/31/32/33 | SS 33 | O0336 | Federal | CONT | 9/12/1946 | | 5,000 | W&T Off | 28.9% | UNIT |
| SHIP SHOAL 30/31/32/33 | SS 33 | O0336 | Federal | ORRI | 9/12/1946 | | | W&T Off | 0.8% | UNIT |
| SHIP SHOAL 354 | SS 354 | G15312 | Federal | RT | 7/1/1995 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | SS 355 | G33650 | Federal | RT | 6/1/2010 | 4/7/2016 | 5,323 | Apache Shelf Exp | 100.0% | RELINQ |
| SHIP SHOAL 58 | SS 58 | G07746 | Federal | ORRI | 7/1/1985 | | 5,000 | Talos Third Cst | 10.5% | PROD |
| SOUTH PELTO 20 / PL 1/9/10/11 / SHIP SHOAL 68 | SS 68 | G02917 | Federal | RT | 12/1/1974 | 11/15/2019 | 5,000 | Fieldwood En | 10.5% | RELINQ |
| SHIP SHOAL 87 | SS 87 | G12349 | Federal | ORRI | 9/12/1946 | | 1,953 | Sanare En Part | 1.0% | UNIT |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | RT | 12/1/1974 | | 5,000 | Fieldwood En | 87.5% | PROD |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | OP 2 | 12/1/1974 | | 5,000 | Fieldwood En | 87.5% | PROD |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | OP 2 | 12/1/1974 | | 5,000 | Fieldwood En | 12.5% | PROD |
| SHIP SHOAL 91 | SS 91 | G02919 | Federal | RT | 12/1/1974 | | 5,000 | Fieldwood En | 12.5% | PROD |
| $0 Liability | ST 146 | G33110 | Federal | RT | 7/1/2009 | 6/30/2014 | 3,772 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH TIMBALIER 148 | ST 148 | G01960 | Federal | RT | 2/1/1970 | | 2,500 | Arena Off | 15.6% | PROD |
| SOUTH TIMBALIER 148 | ST 148 | G01960 | Federal | OP | 2/1/1970 | | 2,500 | Arena Off | 15.6% | PROD |
| SOUTH TIMBALIER 176 | ST 161 | G01248 | Federal | OP | 6/1/1962 | | 5,000 | Arena Off | 25.0% | PROD |
| $0 Liability | ST 166 | G01252 | Federal | OP | 6/1/1962 | 8/27/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | ST 173 | G04001 | Federal | RT | 3/1/1979 | 8/27/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | ST 179 | G12020 | Federal | RT | 6/1/1990 | 8/27/2015 | 5,000 | Fieldwood En Off | 50.0% | TERMIN |
| $0 Liability | ST 179 | G12020 | Federal | OP | 6/1/1990 | 8/27/2015 | 5,000 | Fieldwood En Off | 68.8% | TERMIN |
| $0 Liability | ST 190 | G01261 | Federal | RT | 6/1/1962 | 9/27/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| $0 Liability | ST 190 | G01261 | Federal | OP | 6/1/1962 | 9/27/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| $0 Liability | ST 194 | G05610 | Federal | RT | 7/1/1983 | 1/5/2015 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | ST 203 | G01269 | Federal | OP 1 | 6/1/1962 | 5/25/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| $0 Liability | ST 203 | G01269 | Federal | OP 2 | 6/1/1962 | 5/25/2014 | 5,000 | Black Elk En Off Op | 20.0% | TERMIN |
| $0 Liability | ST 203 | G01269 | Federal | RT | 6/1/1962 | 5/25/2014 | 5,000 | Black Elk En Off Op | 40.0% | TERMIN |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | RT | 7/1/1983 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 3 | 7/1/1983 | | 5,000 | Fieldwood En | 75.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 4 | 7/1/1983 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 7 | 7/1/1983 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 6 | 7/1/1983 | | 5,000 | Fieldwood En | 75.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | OP 5 | 7/1/1983 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 205/206 | ST 206 | G05613 | Federal | RT | 7/1/1983 | 1/31/2015 | 5,000 | Fieldwood En | 50.0% | PROD |
| $0 Liability | ST 228 | G32217 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Eni US Op | 40.0% | EXPIR |
| SOUTH TIMBALIER 229 | ST 229 | G13938 | Federal | OP | 7/1/1993 | | 2,148 | W & T Off | 33.3% | PROD |
| $0 Liability | ST 244 | G34341 | Federal | RT | 10/1/2012 | 9/16/2016 | 4,572 | Apache Shelf Exp | 100.0% | RELINQ |
| *No FW lease ownership | ST 26 | G01361 | Federal | RT | 5/1/1964 | | 625 | Cox Op | 50.0% | UNIT |
| *No FW lease ownership | ST 26 | G01870 | Federal | RT | 11/1/1968 | | 1,875 | Cox Op | 50.0% | UNIT |
| *No FW lease ownership | ST 26 | G02620 | Federal | RT | 5/1/1974 | | 2,500 | Cox Op | 50.0% | UNIT |
| SOUTH TIMBALIER 276/295/296 | ST 276 | G07780 | Federal | RT | 8/1/1985 | | 5,000 | Eni US Op | 100.0% | UNIT |
| SOUTH TIMBALIER 276/295/296 | ST 276 | G07780 | Federal | OP | 8/1/1985 | | 5,000 | Eni US Op | 100.0% | UNIT |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | ST 290 | G16454 | Federal | RT | 4/24/1996 | 1/5/2010 | 5,000 | Apache | 100.0% | PROD |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | ST 291 | G16455 | Federal | RT | 9/1/1996 | | 5,000 | Fieldwood En | 100.0% | PROD |
| EWING BANK 826/782 / SOUTH TIMBALIER 291 | ST 291 | G16455 | Federal | OP | 9/1/1996 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 276/295/296 | ST 295 | G05646 | Federal | RT | 7/1/1983 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH TIMBALIER 276/295/296 | ST 296 | G12981 | Federal | RT | 5/1/1991 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH TIMBALIER 276/295/296 | ST 296 | G12981 | Federal | OP | 5/1/1991 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH TIMBALIER 311 | ST 311 | G31418 | Federal | RT | 3/1/2008 | | 5,000 | Walter O&G | 45.0% | PROD |
| SOUTH TIMBALIER 316 | ST 316 | G22762 | Federal | RT | 6/1/2001 | | 4,435 | W & T Off | 20.0% | PROD |
| SOUTH TIMBALIER 311 | ST 320 | G24990 | Federal | RT | 2/1/2003 | | 5,000 | W & T Off | 11.3% | PROD |
| $0 Liability | ST 47 | G33652 | Federal | RT | 7/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| SOUTH TIMBALIER 49 | ST 49 | G24956 | Federal | RT | 6/1/2003 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 49 | ST 49 | G24956 | Federal | OP | 6/1/2003 | | 5,000 | Fieldwood En | 100.0% | PROD |
| $0 Liability | ST 50 | G34331 | Federal | RT | 8/1/2012 | 7/7/2016 | 5,000 | Apache Shelf Exp | 100.0% | RELINQ |
| SOUTH TIMBALIER 53/67/68 | ST 53 | G04000 | Federal | RT | 3/1/1979 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 53/67/68 | ST 53 | G04000 | Federal | OP 1 | 3/1/1979 | | 5,000 | Fieldwood En | 50.0% | PROD |
| $0 Liability | ST 59 | G31404 | Federal | RT | 2/1/2008 | 1/17/2014 | 5,000 | LLOG Exp Off | 25.0% | TERMIN |
| $0 Liability | ST 64 | G33106 | Federal | RT | 7/1/2009 | 6/30/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| SOUTH TIMBALIER 53/67/68 | ST 67 | O0020 | Federal | CONT | 4/25/1947 | | | Fieldwood En | 79.7% | UNIT |
| SABINE PASS 10 | SX 17 | G04143 | Federal | RT | 10/19/1979 | 9/30/2013 | 2,042 | Apache | 92.3% | RELINQ |
| SABINE PASS 10 | SX 17 | G04143 | Federal | OP | 10/1/1979 | 9/30/2013 | 2,042 | Apache | 20.0% | RELINQ |
| VIOSCA KNOLL 203/204 | VK 118 | G33697 | Federal | RT | 5/1/2010 | 4/30/2015 | 5,760 | Apache Shelf Exp | 75.0% | EXPIR |
| VIOSCA KNOLL 203/204 | VK 203 | G07890 | Federal | RT | 7/1/1985 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 203/204 | VK 203 | G07890 | Federal | OP | 7/1/1985 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 203/204 | VK 204 | G04921 | Federal | RT | 12/1/1981 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 203/204 | VK 204 | G04921 | Federal | OP | 12/1/1981 | 11/29/2019 | 5,760 | Talos ERT | 33.3% | TERMIN |
| VIOSCA KNOLL 251/340/384 | VK 251 | G10930 | Federal | OP | 7/1/1989 | | 5,760 | Fieldwood En Off | 7.5% | UNIT |
| VIOSCA KNOLL 251/340/384 | VK 340 | G10933 | Federal | OP | 7/1/1989 | | 5,760 | Fieldwood En Off | 7.5% | UNIT |
| $0 Liability | VK 384 | G16541 | Federal | OP | 6/1/1996 | 2/8/2014 | 5,760 | Chevron USA | 20.0% | TERMIN |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | VK 692/693 | G07898 | Federal | RT | 7/1/1985 | 7/11/2020 | 4,773 | Fieldwood En | 56.9% | TERMIN |
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | VK 694 | G13055 | Federal | RT | 7/1/1991 | 7/11/2020 | 3,214 | Fieldwood En | 53.1% | TERMIN |
| MAIN PASS 259/260 / VIOSCA KNOLL 693/694 | VK 694 | G13055 | Federal | OP | 7/1/1991 | 7/11/2020 | 3,214 | Fieldwood En | 92.1% | TERMIN |
| $0 Liability | VK 698 | G07901 | Federal | RT | 8/1/1985 | 2/20/2014 | 4,996 | Fieldwood En | 52.4% | TERMIN |
| $0 Liability | VK 736 | G13987 | Federal | RT | 7/1/1993 | 12/12/2013 | 4,742 | Fieldwood En | 100.0% | TERMIN |
| VIOSCA KNOLL 780 | VK 780 | G06884 | Federal | RT | 6/1/1984 | 12/12/2013 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| VIOSCA KNOLL 780 | VK 824 | G15436 | Federal | RT | 9/1/1995 | 8/20/2013 | 5,760 | Apache | 100.0% | REUNQ |
| $0 Liability | VK 856 | G34872 | Federal | RT | 7/1/2013 | 6/21/2017 | 877 | Apache Shelf Exp | 75.0% | REUNQ |
| $0 Liability | VK 899 | G34408 | Federal | RT | 8/1/2012 | 7/31/2017 | 1,553 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | VR 115 | G33593 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | VR 128 | G33594 | Federal | RT | 6/1/2010 | 4/30/2015 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| *No FW lease ownership | VR 131 | 00775 | Federal | OP | 5/1/1960 | 7/20/2000 | 4,923 | Talos En Off | 72.5% | TERMIN |
| $0 Liability | VR 146 | G33084 | Federal | RT | 7/1/2009 | 6/30/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | VR 156 | G34251 | Federal | RT | 10/1/2012 | 7/24/2015 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | VR 160 | G34252 | Federal | RT | 10/1/2012 | 7/24/2015 | 4,868 | Apache Shelf Exp | 100.0% | TERMIN |
| $0 Liability | VR 161 | G34253 | Federal | RT | 10/1/2012 | 7/24/2015 | 4,868 | Apache Shelf Exp | 100.0% | TERMIN |
| VERMILION 252 | VR 252 | G05431 | Federal | ORRI | 7/1/1983 | | 4,454 | Castex Off | 2.0% | PROD |
| VERMILION 253 | VR 253 | G17912 | Federal | ORRI | 7/1/1997 | | 5,000 | Castex Off | 0.6% | PROD |
| $0 Liability | VR 26 | 00297 | Federal | OP 1 | 11/26/1946 | 9/12/2013 | 4,646 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | VR 26 | 00297 | Federal | OP 2 | 11/26/1946 | 9/12/2013 | 4,646 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | VR 26 | 00297 | Federal | RT | 11/26/1946 | 9/12/2013 | 4,646 | Apache Shelf | 50.0% | TERMIN |
| VERMILION 261/262 | VR 261 | G03328 | Federal | RT | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 75.0% | TERMIN |
| VERMILION 261/262 | VR 261 | G03328 | Federal | OP 2 | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 37.5% | TERMIN |
| VERMILION 261/262 | VR 261 | G03328 | Federal | ORRI | 4/1/1976 | | | Fieldwood En | 6.3% | TERMIN |
| VERMILION 261/262 | VR 262 | G34257 | Federal | RT | 10/1/2012 | 7/7/2017 | 5,485 | Fieldwood En | 75.0% | REUNQ |
| VERMILION 265 | VR 265 | G01955 | Federal | RT | 1/1/1970 | | 5,000 | Fieldwood En | 100.0% | SOP |
| $0 Liability | VR 27 | G01329 | Federal | OP 2 | 12/1/1962 | 6/16/2013 | 1,902 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 27 | G01329 | Federal | OP 1 | 12/1/1962 | 6/16/2013 | 1,902 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | VR 27 | G01329 | Federal | RT | 12/1/1962 | 6/16/2013 | 1,902 | Apache Shelf | 50.0% | TERMIN |
| VERMILION 271/272 / SMI 87/102 | VR 271 | G04800 | Federal | OP | 9/1/1981 | | 4,418 | Castex Off | 12.5% | PROD |
| VERMILION 326 | VR 326 | G21096 | Federal | RT | 6/1/1999 | 8/21/2020 | 5,000 | Fieldwood En | 70.3% | TERMIN |
| | VR 332 | G09514 | Federal | CONT | 3/30/1988 | | | Fieldwood En | 50.0% | PROD |
| $0 Liability | VR 34 | G01356 | Federal | OP 1 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 34 | G01356 | Federal | OP 2 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 34 | G01356 | Federal | RT | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00548 | Federal | OP 1 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00548 | Federal | OP 2 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 35 | 00549 | Federal | OP 1 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00549 | Federal | OP 2 | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 35 | 00548 | Federal | RT | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 35 | 00549 | Federal | RT | 9/1/1955 | 6/16/2013 | 2,500 | Apache Shelf | 100.0% | TERMIN |
| VERMILION 356 | VR 356 | G17921 | Federal | ORRI | 8/1/1997 | | 4,093 | EnVen En Vent | 2.6% | PROD |
| $0 Liability | VR 36 | G01357 | Federal | OP 2 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 75.0% | TERMIN |
| $0 Liability | VR 36 | G01357 | Federal | OP 1 | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| $0 Liability | VR 36 | G01357 | Federal | RT | 6/1/1964 | 6/16/2013 | 625 | Apache Shelf | 100.0% | TERMIN |
| Other (TBD) | VR 369 | G02274 | Federal | OP 4 | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| Other (TBD) | VR 369 | G02274 | Federal | OP 3 | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| Other (TBD) | VR 369 | G02274 | Federal | RT | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| Other (TBD) | VR 369 | G02274 | Federal | Unit | 2/1/1973 | | 5,000 | Renaissance Off | 23.2% | UNIT |
| $0 Liability | VR 374 | G32153 | Federal | RT | 8/1/2008 | 7/31/2013 | 5,000 | Apache | 100.0% | EXPIR |
| VERMILION 380/381 | VR 380 | G02580 | Federal | RT | 5/1/1974 | | 5,000 | Fieldwood En | 100.0% | PROD |
| VERMILION 380/381 | VR 381 | G16314 | Federal | RT | 9/1/1996 | 10/27/2015 | 5,000 | Apache Shelf | 100.0% | TERMIN |
| VERMILION 380/381 | VR 381 | G16314 | Federal | OP | 9/1/1996 | 10/27/2015 | 5,000 | Apache Shelf | 80.0% | TERMIN |
| $0 Liability | VR 386 | G02278 | Federal | RT A | 2/1/1973 | | 5,000 | Marathon Oil | 30.2% | UNIT |
| $0 Liability | VR 386 | G02278 | Federal | RT B | 2/1/1973 | | 5,000 | Marathon Oil | 29.0% | UNIT |
| VERMILION 408 | VR 408 | G15212 | Federal | RT | 7/1/1995 | | 5,000 | Fieldwood En | 12.5% | PROD |
| VERMILION 408 | VR 408 | G15212 | Federal | OP | 7/1/1995 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST CAMERON 71/72/102 | WC 102 | 00247 | Federal | RT | 9/9/1946 | | 5,000 | Fieldwood En | 100.0% | TERMIN |
| WEST CAMERON 110 | WC 110 | 00081 | Federal | RT | 6/10/1947 | | 5,000 | BP E&P | 100.0% | PROD |
| WEST CAMERON 110 | WC 110 | 00081 | Federal | OP | 6/10/1947 | | 5,000 | BP E&P | 37.5% | PROD |
| WEST CAMERON 110/111 | WC 111 | 00082 | Federal | RT | 6/10/1947 | | 1,250 | BP E&P | 100.0% | PROD |
| WEST CAMERON 110/111 | WC 111 | 00082 | Federal | OP | 6/10/1947 | | 1,250 | BP E&P | 37.5% | PROD |
| $0 Liability | WC 111 | G33046 | Federal | RT | 8/1/2009 | 7/31/2014 | 3,750 | Eni US Op | 25.0% | EXPIR |
| $0 Liability | WC 130 | G12761 | Federal | RT | 5/1/1991 | 4/1/2015 | 5,000 | Eni US Op | 25.0% | TERMIN |
| WEST CAMERON 144 | WC 144 | G01953 | Federal | RT | 1/1/1970 | 4/1/2016 | 5,000 | Fieldwood En | 62.5% | TERMIN |
| $0 Liability | WC 155 | G32114 | Federal | RT | 8/1/2008 | 7/31/2015 | 5,000 | Apache | 100.0% | EXPIR |
| WEST CAMERON 163 | WC 163 | G05299 | Federal | RT A | 7/1/1983 | 12/1/2015 | 5,000 | Fieldwood En | 61.0% | TERMIN |
| WEST CAMERON 163 | WC 163 | G05299 | Federal | RT B | 7/1/1983 | 12/1/2015 | 5,000 | Fieldwood En | 56.2% | TERMIN |
| $0 Liability | WC 165 | 00758 | Federal | RT | 4/1/1960 | 12/30/2017 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 1 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 2 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 3 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 4 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 22.5% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 10 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 11 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | WC 172 | G01998 | Federal | OP 12 | 2/1/1971 | 10/18/2014 | 5,000 | Apache Shelf | 25.0% | TERMIN |
| $0 Liability | WC 181 | G33558 | Federal | RT | 6/1/2010 | 4/30/2015 | 2,500 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | WC 196 | G05292 | Federal | RT | 7/1/1983 | 8/27/2015 | 5,000 | Union Oil CA | 8.3% | TERMIN |
| *No FW asset ownership | WC 20 | 00680 | Federal | OP | 8/1/1959 | | 1,873 | Sanare En Part | 50.0% | PROD |
| $0 Liability | WC 210 | G34216 | Federal | RT | 10/1/2012 | 3/3/2014 | 5,000 | Apache | 100.0% | REUNQ |
| $0 Liability | WC 225 | G00900 | Federal | OP 1 | 4/1/1962 | 3/14/2018 | 5,000 | Tarpon O&D | 26.7% | TERMIN |
| WEST CAMERON 269 | WC 269 | G13563 | Federal | OP | 8/1/1992 | 8/11/2020 | 5,000 | Sanare En Part | 33.8% | TERMIN |
| WEST CAMERON 289/290/294 | WC 290 | G04818 | Federal | OP 1 | 9/1/1981 | 7/21/2020 | 5,000 | Fieldwood En Off | 10.4% | TERMIN |
| WEST CAMERON 289/290/294 | WC 290 | G04818 | Federal | RT | 9/1/1981 | 7/21/2020 | 5,000 | Fieldwood En Off | 16.7% | TERMIN |
| $0 Liability | WC 291 | G04397 | Federal | RT | 11/1/1980 | 7/16/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | WC 291 | G04397 | Federal | OP | 11/1/1980 | 7/16/2013 | 5,000 | Apache | 60.0% | TERMIN |
| WEST CAMERON 295 | WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | | 5,000 | Fieldwood En | 20.6% | PROD |
| $0 Liability | WC 300 | G15078 | Federal | RT | 7/1/1995 | 12/21/2013 | 5,000 | SandRidge En Off | 14.0% | TERMIN |
| $0 Liability | WC 300 | G15078 | Federal | OP | 7/1/1995 | 12/21/2013 | 5,000 | SandRidge En Off | 24.4% | TERMIN |
| $0 Liability | WC 310 | G17789 | Federal | RT | 8/1/1997 | 6/3/2016 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | WC 310 | G17789 | Federal | OP | 8/1/1997 | 6/3/2016 | 5,000 | Fieldwood En | 73.7% | TERMIN |
| WEST CAMERON 33 | WC 33 | G16050 | Federal | RT | 7/1/1995 | | 2,891 | Fieldwood En | 100.0% | PROD |
| WEST CAMERON 35/65/66 | WC 34 | G03251 | Federal | RT | 9/1/1975 | 6/1/2012 | 4,506 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 35 | G02819 | Federal | RT | 12/1/1974 | 11/3/2013 | 4,688 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 35 | G02819 | Federal | OP | 12/1/1974 | 11/3/2013 | 4,688 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 35, WC 6 | G01860 | Federal | OP 2 | 1/1/1969 | | 1,563 | BP E&P | | PROD |
| WEST CAMERON 35/65/66 | WC 35/66 | G01860 | Federal | RT | 1/1/1969 | | 1,563 | BP E&P | | PROD |
| $0 Liability | WC 401 | G07619 | Federal | RT | 7/1/1985 | 9/27/2015 | 5,000 | ConocoPhillips | 33.3% | TERMIN |
| WEST CAMERON 35/65/66 | WC 576 | G33061 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | EXPIR |
| $0 Liability | WC 624 | G33064 | Federal | RT | 6/1/2009 | 5/31/2014 | 5,000 | Apache Shelf Exp | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | OP 4 | 12/1/1974 | | 5,000 | BP E&P | 81.3% | PROD |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | RT | 12/1/1974 | | 5,000 | BP E&P | 100.0% | PROD |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | OP | 12/1/1974 | | 5,000 | BP E&P | 100.0% | PROD |
| $0 Liability | WC 650 | G34217 | Federal | RT | 10/1/2012 | 9/19/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | WC 656 | G34218 | Federal | RT | 10/1/2012 | 9/19/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| $0 Liability | WC 657 | G34219 | Federal | RT | 10/1/2012 | 9/19/2016 | 5,000 | Apache Shelf Exp | 100.0% | REUNQ |
| WEST CAMERON 35/65/66 | WC 66 | G02826 | Federal | OP 2 | 12/1/1974 | | 3,750 | Fieldwood En | 75.0% | PROD |
| WEST CAMERON 35/65/66 | WC 66 | G02826 | Federal | RT | 12/1/1974 | | 3,750 | Fieldwood En | 100.0% | PROD |
| WEST CAMERON 35/65/66 | WC 67 | G03256 | Federal | OP 1 | 9/1/1975 | 2/8/2008 | 5,000 | Apache | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 67 | G03256 | Federal | OP 2 | 9/1/1975 | 2/8/2008 | 5,000 | Apache | 66.6% | TERMIN |
| $0 Liability | WC 68 | 00526 | Federal | RT | 9/1/1955 | 9/3/2014 | 5,000 | BP Am Prod | 100.0% | TERMIN |
| WEST CAMERON 35/65/66 | WC 71 | 00244 | Federal | RT | 9/9/1946 | 12/19/2019 | 5,000 | Fieldwood En | 100.0% | TERMIN |

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| WEST CAMERON 71/72/102 | WC 72 | G23735 | Federal | RT | 7/1/2002 | | 5,000 | Fieldwood En Off | 25.00% | PROD |
| *No FW asset ownership | WC 73 | G23736 | Federal | OP | 7/1/2002 | | 5,000 | Castex Off | 25.00% | PROD |
| $0 Liability | WC 99 | G34213 | Federal | RT | 8/1/2012 | 7/7/2015 | 5,000 | Apache Shelf Exp | 100.00% | RELINQ |
| WEST DELTA 90/103 | WD 103 | 00840 | Federal | RT | 5/1/1960 | | 3,984 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 90/103 | WD 103 | G12360 | Federal | OP 1 | 5/1/1960 | | 1,016 | Fieldwood En | 81.3% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 1 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 2 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 3 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 104 | 00841 | Federal | OP 5 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | RT | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 3 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 4 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 5 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 104/105 | WD 105 | 00842 | Federal | OP 6 | 5/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 121/122 | WD 121 | G19843 | Federal | OP 1 | 8/1/1998 | | 5,000 | Fieldwood En | 84.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 1 | 8/1/1992 | | 5,000 | Fieldwood En | 84.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 2 | 8/1/1992 | | 5,000 | Fieldwood En | 84.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | RT | 8/1/1992 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SOUTH PASS 87/89 / WEST DELTA 128 | WD 128 | G10883 | Federal | RT | 6/1/1989 | 8/2/2020 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| WEST DELTA 133 | WD 133 | G1106 | Federal | ORRI | 5/1/1962 | | | Arena Off | 1.0% | PROD |
| WEST DELTA 133 | WD 133 | G1106 | Federal | ORRI | 5/1/1962 | | | Arena Off | 7.2% | PROD |
| WEST DELTA 133 | WD 133 | G01106 | Federal | RT | 5/1/1962 | | 5,000 | Arena Off | 100.0% | PROD |
| $0 Liability | WD 34 | G03414 | Federal | RT | 1/1/1977 | 3/20/2017 | 2,500 | Fieldwood En | 76.7% | TERMIN |
| $0 Liability | WD 34 | G03414 | Federal | OP | 1/1/1977 | 3/20/2017 | 2,500 | Fieldwood En | 46.7% | TERMIN |
| $0 Liability | WD 38 | G22772 | Federal | RT | 5/1/2001 | 9/13/2013 | 1,796 | Apache | 87.5% | TERMIN |
| $0 Liability | WD 38 | G22772 | Federal | OP | 5/1/2001 | 9/13/2013 | 1,796 | Apache | 43.8% | TERMIN |
| $0 Liability | WD 41 | G01073 | Federal | RT | 3/1/1962 | 10/25/2013 | 5,000 | Apache | 100.0% | TERMIN |
| $0 Liability | WD 41 | G01073 | Federal | OP | 3/1/1962 | 10/25/2013 | 5,000 | Apache | 50.0% | TERMIN |
| $0 Liability | WD 42 | G16470 | Federal | RT | 9/1/1996 | 1/26/2014 | 5,000 | Fieldwood En | 100.0% | TERMIN |
| $0 Liability | WD 42 | G16470 | Federal | OP | 9/1/1996 | 1/26/2014 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| | WD 53 | 17935 | SL- LA | WI | 10/13/2003 | 1/27/2015 | – | Whitney Oil | 33.3% | TERMIN |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 67 | 00179 | Federal | RT | 7/17/1948 | | 2,500 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 67 | 00179 | Federal | OP 2 | 7/17/1948 | | 2,500 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 68 | 00180 | Federal | RT | 7/17/1948 | | 1,833 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 68 | 00180 | Federal | OP 2 | 7/17/1948 | | 1,833 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 69 | 00181 | Federal | RT | 7/17/1948 | | 3,665 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 69 | 00181 | Federal | OP 2 | 7/17/1948 | | 3,665 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 70 | 00182 | Federal | RT | 7/17/1948 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 70 | 00182 | Federal | OP 2 | 7/17/1948 | | 5,000 | GOM Shelf | 37.5% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 71 | 00838 | Federal | RT | 4/1/1960 | | 5,000 | GOM Shelf | 75.0% | UNIT |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 71 | 00838 | Federal | OP 2 | 4/1/1960 | | 5,000 | GOM Shelf | 37.5% | UNIT |
| WEST DELTA 75/90 | WD 75 | G01085 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| WEST DELTA 90/103 | WD 90 | G01089 | Federal | OP 3 | 6/1/1962 | | 5,000 | Fieldwood En | 81.3% | PROD |
| WEST DELTA 90/103 | WD 90 | G01089 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En | 100.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 94 | 00839 | Federal | RT | 5/1/1960 | | 5,000 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 94 | 00839 | Federal | OP 2 | 5/1/1960 | | 5,000 | GOM Shelf | 37.5% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 95 | G01497 | Federal | RT | 12/1/1966 | | 5,000 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 95 | G01497 | Federal | OP 1 | 12/1/1966 | | 5,000 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 96 | G01498 | Federal | RT | 12/1/1966 | | 3,665 | GOM Shelf | 75.0% | PROD |
| GRAND ISLE 43 (GI32-52/ WD67-71, 94-96) | WD 96 | G01498 | Federal | OP 2 | 12/1/1966 | | 3,665 | GOM Shelf | 37.5% | PROD |

Exhibit I-A(ii)

| Lease / ROW / RUE | Status | Area | Block | Depths | Area / Aliquot | Leasehold | WI |
|---|---|---|---|---|---|---|---|
| G06069 | TERMIN | Brazos Area | 491 | 6891 to 99999 | All | Operating Rights | 50.00000% |
| G01757 | PROD | Brazos Area | A0105 | 14090 to 99999 | NE/4;S/2 | Operating Rights | 6.75000% |
| G02665 | PROD | Brazos Area | A-133 | Below 13,840' MD | SE/4 | Operating Rights | 12.50000% |
| G13576 | SOP | East Cameron | 71 | 14,645' to 99,999' | N/2N/2, N/2S/2N/2, S/2SW/4NW/4, SW/4SE/4NW/4, W/2SW/4, W/2E/2SW/4, SE/4SE/4SW/4 and S/2S/2SE/4 | Operating Rights | 50.00000% |
| G13576 | SOP | East Cameron | 71 | 10,400' to 99,999' | N/2SE/4, N/2S/2SE/4, S/2S/2NE/4, SE/4SE/4NW/4, E/2NE/4NW/4, NE/4SE/4SW/4 | Operating Rights | 100.00000% |
| G02063 | PROD | East Cameron | 338 | 7,244' TVDSS to 99,999' | All | Operating Rights | 7.83469% |
| G01440 | PROD | East Cameron | 9 & 14 | 15199 to 99999 | SE/4;E/2SW/4 | Operating Rights | 50.00000% |
| 49 | PROD | Eugene Island | 119 | 15,410' TVDSS to 99,999' | NW/4 | Operating Rights | 25.00000% |
| 49 | PROD | Eugene Island | 119 | 15,410' TVDSS to 99,999' | SW/4; E/2 | Operating Rights | 20.00000% |
| 50 | PROD | Eugene Island | 120 | 14,136' to 99,999 | All | Operating Rights | 50.00000% |
| 51 | OPERNS | Eugene Island | 125 | 13,334' to 99,999 | All | Operating Rights | 50.00000% |
| 52 | PROD | Eugene Island | 126 | 9,400 to 99,999 | SE/4NE/4;NE/4SE/4 | Operating Rights | 100.00000% |
| 52 | PROD | Eugene Island | 126 | 12,056 to 99,999 | W/2;W/2E/2;NE/4NE/4;SE/4SE/4 | Operating Rights | 50.00000% |
| G03152 | PROD | Eugene Island | 136 | 19,135' to 99,999 | All | Operating Rights | 50.00000% |
| G01220 | PROD | Eugene Island | 158 | 17,588 to 99,999 | All | Operating Rights | 50.00000% |
| G13622 | PROD | Eugene Island | 174 | 14,097' to 99,999 | All | Operating Rights | 50.00000% |
| G03782 | PROD | Eugene Island | 174 | from the stratigraphic equivalent of 100' below a true vertical depth of 10,960' as encountered in the Newfield Exploration Company OCSG 3782 Well No. A10 to 99,999' TVDSS | SW/4 | Operating Rights | 100.00000% |
| G03782 | PROD | Eugene Island | 174 | 12,431' TVDSS to 99,999' | N/2;SE/5 | Operating Rights | 50.00000% |
| 438 | PROD | Eugene Island | 175 | 13,032 to 99,999 | All | Operating Rights | 37.50000% |
| G10736 | PROD | Eugene Island | 187 | 17,170' to 99,999 | All | Operating Rights | 50.00000% |
| 423 | PROD | Eugene Island | 189 | 13,638' to 99,999 | W/2;W/2E/2 | Operating Rights | 50.00000% |
| G05502 | UNIT | Eugene Island | 211 | surface to 99,999' | SE/4SE/4; E/2SW/4SE/4 | Operating Rights | 66.66667% |
| G05504 | PROD | Eugene Island | 224 | 18,000' to 99,999' | All | Operating Rights | 15.00000% |
| G22679 | TERMIN | Eugene Island | 312 | 9,000' TVD to 99,999' TVDSS | E/2NW/4;W/2NE/4 | Operating Rights | 50.00000% |
| G22679 | TERMIN | Eugene Island | 312 | 9,015' TVDSS to 99,999' | W/2NW/4;E/2NE/4;S/3 | Operating Rights | 50.00000% |
| G02112 | TERMIN | Eugene Island | 315 | 25,000' SS TVD down to 99,999' | S/2 | Operating Rights | 25.00000% |
| G24912 | PROD | Eugene Island | 315 | 8,000' subsea to 99,999 | N/2 | Operating Rights | 50.00000% |
| G05040 | PROD | Eugene Island | 316 | 7,739' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G02912 | TERMIN | Eugene Island | 329 | from 7,871' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G02115 | UNIT | Eugene Island | 330 | 8,329' TVDSS to 99,999' | SW/4, SW/4NW/4, S/2NW/4NW/4, NW/4NW/4NW/4, S/2SE/4NW/4, NW/4SE/4NW/4, SW/4SE/4, S/2NW/4SE/4, NW/4NW/4SE/4, S/2SE/4SE/4 and NW/4SE/4SE/4 | Operating Rights | 21.00000% |
| G02115 | UNIT | Eugene Island | 330 | 8,329' TVDSS to 99,999' | SW/4, SW/4NW/4, S/2NW/4NW/4, NW/4NW/4NW/4, S/2SE/4NW/4, NW/4SE/4NW/4, SW/4SE/4, S/2NW/4SE/4, NW/4NW/4SE/4, S/2SE/4SE/4 and NW/4SE/4SE/4 | Operating Rights | 11.51246% |
| G02317 | TERMIN | Eugene Island | 333 | 12,629' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G15263 | TERMIN | Eugene Island | 334 | 12,629' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G03332 | UNIT | Eugene Island | 337 | 7,026' TVD to 99,999' TVDSS | NE/4NE/4NE/4 | Operating Rights | 98.00000% |
| G03332 | UNIT | Eugene Island | 337 | 6,020' TVDSS to 99,999' TVDSS | SW/4SE/4SE/4; S/2SW/4NW/4 | Operating Rights | 100.00000% |
| G03332 | UNIT | Eugene Island | 337 | 12,455' TVDSS to 99,999' | SE/4SW/4, W/2SE/4, and SW/4NE/4 | Operating Rights | 50.00000% |
| G14482 | PROD | Eugene Island | 346 | 13,469' TVDSS to 99,999' TVDSS | N/2NW/4, SE/4NW/4, NE/4SW/4NW/4, E/2SW/4, E/2SW/4SW/4 and SE/4 | Operating Rights | 50.00000% |
| G14482 | PROD | Eugene Island | 346 | 7,511' TVD to 99,999' TVDSS | NE/4 | Operating Rights | 100.00000% |
| G14482 | PROD | Eugene Island | 346 | from the stratigraphic equivalent of 12,890' TVD, being the total depth drilled in the Eugene Island Area, South Addition, Block 346, OCSG 14482, B1 Well plus 100 feet being 12,990' TVD to 99,999' TVDSS | W/2SW/4NW/4, W/2SW/4SW/4, NW/4SW/4, and SW/4SW/4 | Operating Rights | 100.00000% |
| G10752 | PROD | Eugene Island | 354 | 9,669' TVDSS to 99,999' | S/2, S/2N/2 and NE/4NE/4 | Operating Rights | 50.00000% |
| G02324 | PROD | Eugene Island | 361 | 5,220' TVDSS to 99,999' TVDSS | All | Operating Rights | 6.17647% |
| G31470 | PROD | Ewing Bank | 782 | 12,960' TVDSS to 99,999 | All | Operating Rights | 50.00000% |
| G03228 | UNIT | Galveston | 180 | 8,900' to 99,999 | All | Operating Rights | 50.00000% |
| G25524 | PROD | Galveston | 210 | 100' below the stratigraphic equivalent of 10,200' TD to 99,999' TVDSS | N/2NE/4 | Operating Rights | 33.34000% |
| G25524 | PROD | Galveston | 210 | 9,636' to 99,999 | S/2NE/4, NW/4 and S/2 | Operating Rights | 33.34000% |
| 174 | UNIT | Grand Isle | 32 | depths below 18,000' subsea (TVDS) to 99,999' subsea (TVDS). | S/2 | Operating Rights | 18.75000% |
| 126 | UNIT | Grand Isle | 39 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS | E/2 | Operating Rights | 18.75000% |
| 127 | UNIT | Grand Isle | 39 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS | W/2 | Operating Rights | 18.75000% |
| 128 | UNIT | Grand Isle | 40 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 129 | UNIT | Grand Isle | 41 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS | E/2 | Operating Rights | 18.75000% |
| 130 | UNIT | Grand Isle | 41 | 18,000' subsea (TVDS) to 99,999' subsea (TVDS | W/2 | Operating Rights | 18.75000% |
| 131 | UNIT | Grand Isle | 42 | below 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 175 | UNIT | Grand Isle | 43 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 176 | UNIT | Grand Isle | 44 | 18,000' subsea (TVDS) to 99,999' | N/2 | Operating Rights | 18.75000% |
| 132 | UNIT | Grand Isle | 46 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 133 | UNIT | Grand Isle | 47 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 134 | UNIT | Grand Isle | 48 | 18,000' subsea (TVDS) to 99,999' | All | Operating Rights | 18.75000% |
| 177 | UNIT | Grand Isle | 52 | depths below 17,651' TVDSS down to 99,999' TVDSS | N/2 | Operating Rights | 18.75000% |
| G13944 | UNIT | Grand Isle | 116 | 19,402' TVDSS to 99,999' | | Operating Rights | 50.00000% |
| G01848 | PROD | High Island | 129 | 15,418' TVDSS to 99,999' | W/2NW/4, SE/4NW/4, W/2NE/4NW/4;S/2 | Operating Rights | 45.00000% |
| G03236 | UNIT | High Island | 179 | 9,839' TVDSS to 99,999' | W/2NW/4;S/2 | Operating Rights | 50.00000% |
| G03236 | UNIT | High Island | 179 | 10,036' TVDSS to 99,999' | E/2N/2;E/2W/2N/2 | Operating Rights | 50.00000% |
| G20660 | PROD | High Island | 206 | 12,145' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G25605 | PROD | High Island | A0341 | 8,847' TVDSS to 99,999' | All | Operating Rights | 30.00000% |
| G02750 | PROD | High Island | A0365 | 5,659' TVDSS to 99,999' | All | Operating Rights | 26.54255% |
| G02754 | PROD | High Island | A0376 | 11,850' TVDSS to 99,999' | N/2, SW/4, W/2SE/4, SE/4SE/4, W/2NE/4SE/4 and SE/4NE/4SE/4 | Operating Rights | 22.28723% |
| G02757 | PROD | High Island | A0382 | 11,025' TVDSS to 99,999' | All | Operating Rights | 36.20529% |
| G02721 | PROD | High Island | A0595 | 10,827' TVDSS to 99,999' | All | Operating Rights | 36.20510% |
| G02722 | PROD | High Island | A0596 | 13,264' TVDSS to 99,999' | All | Operating Rights | 36.20510% |
| G02393 | PROD | High Island | A0573 | 7,795' to 99,999' | | Operating Rights | 36.20510% |
| G04481 | RELINQ | Main Pass | 77 | depths below the stratigraphic equivalent of 13,040' measured depth on the Schlumberger IFS/Sonic wireline log (RUN 4) dated 7/12/81 for the Chevron U.S.A. Inc. State of La. Lease 8693 Well No. 4 (API # 1772520242), Main Pass Block 77 field down to 99,999' | | Operating Rights | 11.76468% |
| G02193 | PROD | Main Pass | 140 | 8,959' TVDSS to 99,999' | | Operating Rights | 32.50000% |
| G07827 | TERMIN | Main Pass | 259 | 11,636' TVDSS to 99,999' TVDSS | | Operating Rights | 28.45078% |
| G07828 | TERMIN | Main Pass | 260 | from 12,072' TVDSS to 99,999' TVDSS | | Operating Rights | 28.45078% |
| G15395 | PROD | Main Pass | 275 | 11,278' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G10666 | PROD | Main Pass | 289 | 9,077' TVDSS to 99,999' TVDSS | N/2, SW/4 and W/2W/2SE/4 | Operating Rights | 50.00000% |
| G01673 | UNIT | Main Pass | 296 | below 9,500' TVDSS down to 99,999' TVDSS | | Operating Rights | 16.66667% |
| G04253 | UNIT | Main Pass | 303 | 6,060' TVDSS to 99,999' | N/2 and N/2S/2 | Operating Rights | 93.10100% |

Exhibit I-A(ii)

| Lease / ROW / RUE | Status | Area | Block | Depths | Area / Aliquot | Leasehold | WI |
|---|---|---|---|---|---|---|---|
| G32265 | PROD | Main Pass | 308 | from 6,284' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G08760 | PROD | Main Pass | 309 | 6,510' TVDSS to 99,999' | | Operating Rights | 50.00000% |
| G04126 | UNIT | Main Pass | 310 | 6,944' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G02213 | PROD | Main Pass | 311 | below 12,000' TVDSS down to 99,999' TVDSS | | Operating Rights | 16.66666% |
| G16520 | PROD | Main Pass | 312 | 9,916' TVDSS to 99,999' | | Operating Rights | 50.00000% |
| G08467 | PROD | Main Pass | 315 | from the stratigraphic equivalent of the deepest depth found production (7,830' MD/TVD) in the Apache Corporation OCS-G 8467 No 2 Well plus 100' to 99,999' | W/2NW/4 and W/2E/2NW/4 | Operating Rights | 100.00000% |
| G08467 | PROD | Main Pass | 315 | from 7,760' TVDSS to 99,999' | S/2, NE/4 and E/2E/2NW/4 | Operating Rights | 50.00000% |
| G01966 | UNIT | Main Pass | 152 | from the stratigraphic equivalent of 10,700' Measured Depth as seen in the OCSG 1967 #3 Well down to a depth of 50,000' | | Operating Rights | 37.50000% |
| G01967 | UNIT | Main Pass | 153 | 10,700' MD down to a depth of 50,000' TVDSS | | Operating Rights | 37.50000% |
| MF88562 | Shut-In | Matagorda Is | 487 | below the base of the MF Sand | SW/4 | Leasehold | 50.00000% |
| MF88560 | Shut-In | Matagorda Is | 487 | 4 below the base of the MF Sand | SE/4 | Leasehold | 50.00000% |
| MF80522 | Shut-In | Matagorda Is | 518 | below the base of the 15600 Sand | NW/4 | Leasehold | 50.00000% |
| MF79413 | Shut-In | Matagorda Is | 519 | below the base of the 16950 Sand | NE/4 | Leasehold | 50.00000% |
| G09777 | PROD | Mississippi Canyon | 108 | below 20,000' true vertical depth subsea down to 99,999' | All | Operating Rights | 37.59399% |
| G18192 | PROD | Mississippi Canyon | 110 | 6,688' TVDSS to 99,999' | All | Operating Rights | 25.00000% |
| G02968 | PROD | Mississippi Canyon | 311 | 11,860' TVDSS to 99,999' | All | Operating Rights | 50.00000% |
| G26176 | PROD | Mobile | 826 | 21,730' TVDSS to 99,999' | All | Operating Rights | 37.50000% |
| 333 | UNIT | Ship Shoal | 30 | 17,478' TVDSS to 99,999' TVDSS | All | Operating Rights | 18.75000% |
| G02919 | PROD | Ship Shoal | 91 | 11,148' TVDSS to 99,999' TVDSS | All | Operating Rights | 6.25000% |
| G02919 | PROD | Ship Shoal | 91 | 11,148' TVDSS to 99,999' TVDSS | All | Operating Rights | 28.12500% |
| G12941 | PROD | Ship Shoal | 129 | 17,446' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G15282 | PROD | Ship Shoal | 151 | from the stratigraphic equivalent of 12,612' MD as seen in the Zilkha OCS-G 15282 Well No. 1 (said depth being 100' below the total depth drilled and logged in the Zilkha OCS-G 15282 Well No. 1), down to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| 820 | PROD | Ship Shoal | 169 | 10,658' TVDSS to 99,999' TVDSS | All | Operating Rights | 33.33000% |
| G05550 | UNIT | Ship Shoal | 175 | surface to 99,999' TVD | S/2SW/4NW/4; NW/4SW/4 | Operating Rights | 66.66667% |
| G33646 | PROD | Ship Shoal | 176 | 12,274' TVDSS to 99,999' TVDSS | All | Operating Rights | 20.00000% |
| G05551 | PROD | Ship Shoal | 178 | 10,031' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G03998 | PROD | Ship Shoal | 182 | 11,825' TVDSS to 99,999' TVDSS | W/2 | Operating Rights | 50.00000% |
| G04232 | PROD | Ship Shoal | 189 | 19,077' TVDSS to 99,999' TVDSS | W/2, SE/4, N/2N/2NE/4 and SW/4NW/4NE/4 | Operating Rights | 49.47915% |
| G04232 | PROD | Ship Shoal | 189 | 19,000' TVD to 99,999' TVDSS | S/2NE/4, SE/4NW/4NE/4 and S/2NE/4NE/4 | Operating Rights | 49.47915% |
| G13917 | PROD | Ship Shoal | 193 | 12,901' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G15288 | PROD | Ship Shoal | 194 | 13,619' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G12355 | PROD | Ship Shoal | 198 | 12,072' TVDSS to 99,999' | NW/4, W/2W/2NE/4, N/2NE/4SW/4, NW/4SW/4SW/4 | Operating Rights | 25.00000% |
| 593 | PROD | Ship Shoal | 198 | 12,072' TVDSS to 99,999' | E/2NE/4; E/2W/2NE/4; S/2NE/4SW/4; S/2SW/4; SE/4 | Operating Rights | 25.00000% |
| 594 | PROD | Ship Shoal | 199 | 10,440' TVDSS to 99,999' TVDSS | W/2, W/2W/2NE/4, W/2NW/4SE/4, SE/4NW/4SE/4, SW/4SE/4, S/2SE/4SE/4 | Operating Rights | 25.00000% |
| G01520 | PROD | Ship Shoal | 204 | 12,791' TVDSS to 99,999' TVDSS | All | Operating Rights | 27.58165% |
| G01522 | UNIT | Ship Shoal | 206 | 12,355' TVDSS to 99,999' TVDSS | All | Operating Rights | 30.00000% |
| G01523 | PROD | Ship Shoal | 207 | below 15,000' down to 99,999' TVD | All | Operating Rights | 23.95873% |
| G01524 | PROD | Ship Shoal | 216 | 14,088' TVDSS to 99,999' TVDSS | All | Operating Rights | 27.77814% |
| G10780 | PROD | Ship Shoal | 243 | from 15,858' TVDSS to 99,999' TVDSS | E/2 | Operating Rights | 25.00000% |
| G10780 | PROD | Ship Shoal | 243 | 20,000' TVDSS to 99,999' TVDSS | W/2 | Operating Rights | 25.00000% |
| G01038 | UNIT | Ship Shoal | 271 | 7,810' TVDSS to 99,999' TVDSS | All | Operating Rights | 10.00000% |
| G01039 | PROD | Ship Shoal | 274 | 8,525' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G26074 | PROD | Ship Shoal | 314 | 10,750' TVDSS to 99,999' TVDSS | W/2W/2 | Operating Rights | 37.50000% |
| G26074 | PROD | Ship Shoal | 314 | 10,950' TVDSS to 99,999' TVDSS | E/2W/2 and E/2 | Operating Rights | 37.50000% |
| G15312 | PROD | Ship Shoal | 354 | 14,853' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| 334 | UNIT | Ship Shoal | 31 | 15,320' to 99,999' | | Operating Rights | 18.75000% |
| 335 | UNIT | Ship Shoal | 32 | 11,315' to 99,999' | | Operating Rights | 18.75000% |
| G09627 | SOP | Ship Shoal | 277 | 10,000' TVD down to a depth of 50,000' TVD subsea | All | Operating Rights | 50.00000% |
| G01182 | TERMIN | South Marsh Is | 11 | 13,007' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G01194 | PROD | South Marsh Is | 58 | 13,639' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G17938 | PROD | South Marsh Is | 105 | 9,220' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G03776 | PROD | South Marsh Is | 106 | 9,368' TVDSS to 99,999' TVDSS | S/2 | Operating Rights | 50.00000% |
| G02883 | PROD | South Marsh Is | 127 | all depths below 18,000' (TVDSS) down to 99,999' (TVDSS | | Operating Rights | 8.67331% |
| G02587 | PROD | South Marsh Is | 128 | from 9,016' TVDSS to 99,999' TVDSS | | Operating Rights | 8.67331% |
| G02587 | PROD | South Marsh Is | 128 | from 9,016' TVDSS to 99,999' TVDSS | | Operating Rights | 33.33334% |
| G02592 | PROD | South Marsh Is | 149 | 7,386' TVDSS to 99,999' TVDSS | All | Operating Rights | 25.00000% |
| G04809 | PROD | South Marsh Is | 161 | 10,576' TVDSS to 99,999' TVDSS | W/2 and W/2E/2 | Operating Rights | 50.00000% |
| G04809 | PROD | South Marsh Is | 161 | from the stratigraphic equivalent of the true vertical depth of 9,782.5' (being the true vertical depth drilled in the OCS-G 4809 #14 Well plus 100 feet) to 99,999' SSTVD | E/2E/2 | Operating Rights | 100.00000% |
| G02311 | PROD | South Marsh Is | 269 | 11,719' TVDSS to 99,999' TVDSS | All | Operating Rights | 36.41794% |
| G14456 | PROD | South Marsh Is | 280 | 14,115' TVDSS to 99,999' TVDSS | W/2, NE/4 and E/2E/2SE/4 | Operating Rights | 25.00000% |
| G14456 | PROD | South Marsh Is | 280 | from 100' below the stratigraphic equivalent of that certain zone encountered between the interval of 13,814' and 13,920' TVD on the electric log from the Norcen Explorer, Inc. OCS-G 14456 Well No. 3 to 99,999' TVDSS | W/2SE/4 and W/2E/2SE/4 | Operating Rights | 50.00000% |
| G02600 | PROD | South Marsh Is | 281 | 16,062' TVDSS to 99,999' TVDSS | All | Operating Rights | 34.06318% |
| G21618 | PROD | South Marsh Is | 93 | 13,299' to 99,999' | | Operating Rights | 6.25000% |
| 792 | PROD | South Marsh Is | 108 | all depths below 14,000' TVD | | Operating Rights | 16.66667% |
| G01192 | PROD | South Marsh Is | 41 | 15,000' TVD down to a depth of 50,000' TVD | W/2 | Operating Rights | 25.00000% |
| G01192 | PROD | South Marsh Is | 41 | 11,500' TVD down to a depth of 50,000' TVD | E/2 | Operating Rights | 50.00000% |
| 786 | PROD | South Marsh Is | 48 | 13,000' TVD down to a depth of 50,000' Subsea | All | Operating Rights | 50.00000% |
| G01294 | PROD | South Pass | 62 | 18,247' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G01614 | PROD | South Pass | 70 | 8,480' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G07799 | TERMIN | South Pass | 87 | 18,001' TVDSS to 99,999' TVDSS | | Operating Rights | 16.68000% |
| G07799 | TERMIN | South Pass | 87 | 18,001' TVDSS to 99,999' TVDSS | | Operating Rights | 16.67000% |
| G01618 | PROD | South Pass | 89 | 16,802' TVDSS to 99,999' TVDSS | | Operating Rights | 25.00000% |
| G01901 | UNIT | South Pass | 64 | from 10,700' Measured Depth down to a depth of 50,000' TVD subsea | | Operating Rights | 37.50000% |
| G01610 | UNIT | South Pass | 65 | from 10,700' Measured Depth down to a depth of 50,000' TVD subsea | All | Operating Rights | 37.50000% |
| G04234 | TERMIN | South Pelto | 1 | 12,460' TVDSS to 99,999' TVDSS | | Operating Rights | 50.00000% |
| G02924 | TERMIN | South Pelto | 9 | 100' below the stratigraphic equivalent of 17,337' TVD as seen in the Newfield Exploration Company OCS-G 02924 Well No. 10 (API No. 177134025300) to 99,999' TVDSS | NE/4 | Operating Rights | 50.00000% |
| G02924 | TERMIN | South Pelto | 9 | 16,992' TVDSS to 99,999' TVDSS | S/2; NW/4 | Operating Rights | 50.00000% |
| G02925 | TERMIN | South Pelto | 10 | 13,261' TVDSS to 99,999' TVDSS | | Operating Rights | – |
| 71 | RELINQ | South Pelto | 11 | 11,705' TVDSS to 99,999' TVDSS | | Operating Rights | – |

| Lease / ROW / RUE | Status | Area | Block | Depths | Area / Aliquot | Leasehold | WI |
|---|---|---|---|---|---|---|---|
| G24956 | PROD | South Timbalier | 49 | 18,800' TVD to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G04000 | PROD | South Timbalier | 53 | 6,782' TVDSS to 99,999' TVDSS | All | Operating Rights | 25.00000% |
| G01960 | PROD | South Timbalier | 148 | 17,777' TVDSS to 99,999' TVDSS | NE/4, N/2NE/4SE/4, SE/4NE/4SE/4 and NE/4SE/4SE/4 | Operating Rights | 7.77500% |
| G05612 | PROD | South Timbalier | 205 | 18,640' TVDSS to 99,999' TVDSS | SE/4SW/4 | Operating Rights | 25.00000% |
| G16455 | PROD | South Timbalier | 291 | 9,669' TVDSS to 99,999' TVDSS | N/2 and SE/4 | Operating Rights | 50.00000% |
| G16455 | PROD | South Timbalier | 291 | 7,461' TVDSS to 99,999' TVDSS | SW/4 | Operating Rights | 100.00000% |
| G05646 | UNIT | South Timbalier | 295 | 14,293' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G31418 | PROD | South Timbalier | 311 | 12,251' TVD to 99,999' | All | Operating Rights | 22.50000% |
| G22762 | PROD | South Timbalier | 316 | 12,520' TVDSS to 99,999' TVDSS | All | Operating Rights | 10.00000% |
| G03328 | TERMIN | Vermilion | 261 | 9,241' TVD as identified in the Stone Energy Corporation's OCS-G 3328 Well No A-3 ST to 99,999' TVDSS | S/2S/2NE/4 and N/2NE/4SE/4 | Operating Rights | 37.50000% |
| G03328 | TERMIN | Vermilion | 261 | 9,304' TVDSS to 99,999' TVDSS | W/2, N/2NE/4, N/2S/2NE/4, W/2SE/4, SE/4SE/4 and S/2NE/4SE/4 | Operating Rights | 37.50000% |
| G01955 | SOP | Vermilion | 265 | 10,465' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G21096 | TERMIN | Vermilion | 326 | 8,447' TVDSS to 99,999' TVDSS | All | Operating Rights | 35.15742% |
| G02274 | UNIT | Vermilion | 369 | below 10,000' down to 99,999' | NW/4, W/2E/2, NE/4NE/4 | Operating Rights | 11.58535% |
| G02580 | PROD | Vermilion | 380 | 10,245' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G02278 | UNIT | Vermilion | 386 | 5,175' TVDSS to 99,999' TVDSS | NW/4NE/4NE/4, S/2NE/4NE/4, E/2NW/4NE/4, NW/4SE/4NE/4 and N/2SW/4NE/4 | Operating Rights | 15.08620% |
| G02278 | UNIT | Vermilion | 386 | 5,175' TVDSS to 99,999' TVDSS | S/2, SW/4NW/4, S/2S/2NE/4, W/2NW/4NE/4, NE/4SE/4NE/4 and NE/4NE/4NE/4 | Operating Rights | 14.48210% |
| G04800 | PROD | Vermilion | 271 | 6,103' TVD down to a depth of 50,000' TVD subsea | All | Operating Rights | 6.25000% |
| G15212 | PROD | Vermilion | 408 | below 9,000' TVD | All | Operating Rights | 50.00000% |
| G10930 | UNIT | Viosca Knoll | 251 | depths below the stratigraphic equivalent of the subsea depth of 15,083 to and including 99,999' as encountered in Samedan Oil Corporation's OCS-G 13982 #1 well located in Viosca Knoll Block 252 | All | Operating Rights | 3.75000% |
| G10933 | UNIT | Viosca Knoll | 340 | depths below the stratigraphic equivalent of the subsea depth of 15,083 to and including 99,999' as encountered in Samedan Oil Corporation's OCS-G 13982 #1 well located in Viosca Knoll Block 252 | All | Operating Rights | 3.75000% |
| G07898 | TERMIN | Viosca Knoll | 693 | 11,636' TVDSS to 99,999' TVDSS | All | Operating Rights | 28.45078% |
| G13055 | TERMIN | Viosca Knoll | 694 | 10,774' TVDSS to 99,999' TVDSS | W/2, NE/4 and N/2SE/4 | Operating Rights | 26.53745% |
| G13055 | TERMIN | Viosca Knoll | 694 | 11,714' TVDSS to 99,999' TVDSS | S/2SE/4 | Operating Rights | 26.53745% |
| G15050 | PROD | West Cameron | 33 | 15,055' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G02825 | PROD | West Cameron | 65 | all depths below the stratigraphic equivalent of 13,679' as seen in the OCS-G 02825 Well No. 4, down to a vertical depth of 99,999' | E/2E/2SW/4; W/2W/2SE/4; and E/2SW/4SE/5 | Operating Rights | 100.00000% |
| G02825 | PROD | West Cameron | 65 | depths below 100' below the stratigraphic equivalent of the base of the IT Sand as present in The Continental Oil Company's West Cameron Block 66 B-14 Well at a measured depth of 9,580 feet on the ISF-Sonic Log down to 99,999 feet TVDSS | NE/4 | Operating Rights | 81.25000% |
| G23735 | PROD | West Cameron | 72 | 15,126' TVDSS to 99,999' TVDSS | All | Operating Rights | 12.50000% |
| 247 | TERMIN | West Cameron | 102 | 14,150' TVD to 99,999' TVDSS | N/2SW/4NW/4, NW/4SE/4NW/4 | Operating Rights | 100.00000% |
| 81 | PROD | West Cameron | 110 | all depths below 15,000' (TVDSS) down to 99,999' (TVDSS) | All | Operating Rights | 18.75000% |
| 82 | PROD | West Cameron | 111 | below 15,000' (TVDSS) down to 99,999' (TVDSS) | SE/4 | Operating Rights | 18.75000% |
| G04818 | TERMIN | West Cameron | 290 | 13,500' TVD to 50,000' TVD | All | Operating Rights | 8.33334% |
| 680 | PROD | West Cameron | 20 | 13,500' TVD to 50,000' TVD | All | Operating Rights | 25.00000% |
| G02826 | PROD | West Cameron | 66 | 13,590' to 99,999' | W1/2; N1/2SE1/4 | Operating Rights | 37.50000% |
| G02826 | PROD | West Cameron | 66 | 9,216' to 99,999' | S1/2SE1/4 | Operating Rights | 75.00000% |
| 179 | UNIT | West Delta | 67 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | S/2 | Operating Rights | 18.75000% |
| 180 | UNIT | West Delta | 68 | below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | S/2 | Operating Rights | 18.75000% |
| 181 | UNIT | West Delta | 69 | 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | All | Operating Rights | 18.75000% |
| 182 | UNIT | West Delta | 70 | 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | All | Operating Rights | 18.75000% |
| 838 | UNIT | West Delta | 71 | depths below 18,000' subsea (TVDS) to 99,999' subsea (TVDS) | All | Operating Rights | 18.75000% |
| G01085 | PROD | West Delta | 75 | 17,844' TVDSS to 99,999' TVDSS | All | Operating Rights | 50.00000% |
| G01089 | PROD | West Delta | 90 | 13,199' TVDSS to 99,999' TVDSS | N/2 and N/2S/2 | Operating Rights | 50.00000% |
| G01089 | PROD | West Delta | 90 | 13,199' TVDSS to 99,999' TVDSS | S/2S/2 | Operating Rights | 40.62500% |
| 839 | PROD | West Delta | 94 | 13,159' TVDSS to 99,999% TVDSS | All | Operating Rights | 37.50000% |
| G01497 | PROD | West Delta | 95 | 13,601' TVDSS to 99,999' TVDSS | N/2, N/2N/2SE/4, N/2SE/4 and N/2SW/4SW/4 | Operating Rights | 37.50000% |
| G12360 | PROD | West Delta | 103 | 13,279' TVDSS to 99,999' TVDSS | NW/4NW/4, NE/4NW/4, N/2SW/4, N/2SW/4NW/4, N/2NW/4NE/4, N/2S/2NW/4NE/4, N/2N/2NE/4NE/4 | Operating Rights | 40.62500% |
| 840 | PROD | West Delta | 103 | 13,279' TVDSS to 99,999' TVDSS | S/2, S/2NE/4, SE/4NW/4, S/2SW/4NW/4, S/2NE/4NE/4, S/2N/2NE/4NE/4, S/2S/2NW/4NE/4 and S/2N/2SW/4NW/4 | Operating Rights | 50.00000% |
| 841 | PROD | West Delta | 104 | 11,970' TVDSS to 99,999' TVDSS | NW4, N2NE4, SW4NE4 and N2SE4NE4 | Operating Rights | 50.00000% |
| 842 | PROD | West Delta | 105 | 12,149' TVDSS to 99,999' TVDSS | N2S2N2 | Operating Rights | 50.00000% |

Exhibit I-B

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| BRAZOS 491 #004 | BA49100400 | G06069 | 427044034300 |
| BRAZOS 491 #005 | BA49100500 | G06069 | 427044035700 |
| BRAZOS 491 #A001 | BA491A0100 | G06069 | 427044018200 |
| BRAZOS 491 #A002 | BA491A0200 | G06069 | 427044018300 |
| BRAZOS 491 #A003 | BA491A0300 | G06069 | 427044032900 |
| BRAZOS A-105 #B001 | BAA105B010 | G01757 | 427054012200 |
| BRAZOS A-105 #B002 | BAA105B020 | G01757 | 427054012600 |
| BRAZOS A-105 #B003 | BAA105B030 | G01757 | 427054012800 |
| BRAZOS A-105 #B004 | BAA105B040 | G01757 | 427054013000 |
| BRAZOS A-105 #B005 | BAA105B050 | G01757 | 427054013300 |
| BRAZOS A-133 #A001 | BAA133A010 | G02665 | 427054002400 |
| BRAZOS A-133 #A002 | BAA133A020 | G02665 | 427054003300 |
| BRAZOS A-133 #A003 | BAA133A030 | G02665 | 427054003500 |
| BRAZOS A-133 #A004 ST1 | BAA133A041 | G02665 | 427054004301 |
| BRAZOS A-133 #A005 ST1 | BAA133A051 | G02665 | 427054004001 |
| BRAZOS A-133 #A006 | BAA133A060 | G02665 | 427054004500 |
| BRAZOS A-133 #A007 | BAA133A070 | G02665 | 427054004800 |
| BRAZOS A-133 #A008 | BAA133A080 | G02665 | 427054005200 |
| BRAZOS A-133 #A009 | BAA133A090 | G02665 | 427054005400 |
| BRAZOS A-133 #A010 | BAA133A100 | G02665 | 427054013100 |
| BRAZOS A-133 #C001 | BAA133C010 | G02665 | 427054007800 |
| BRAZOS A-133 #C002 | BAA133C020 | G02665 | 427054008200 |
| BRAZOS A-133 #C003 | BAA133C030 | G02665 | 427054010700 |
| BRAZOS A-133 #C004 | BAA133C040 | G02665 | 427054013500 |
| BRAZOS A-133 #D001 ST1 | BAA133D011 | G02665 | 427054009201 |
| BRAZOS A-133 #D003 | BAA133D030 | G02665 | 427054012700 |
| CHANDELEUR 042 #A002 | CA042A0200 | G32267 | 177294001500 |
| CHANDELEUR 043 #A001 | CA043A0100 | G32268 | 177294001400 |
| CHANDELEUR 043 #A003 | CA043A0300 | G32268 | 177294001600 |
| EAST CAMERON 002 #001 SL 18121 | SL18121010 | 18121 | 177032013600 |
| EAST CAMERON 002 #001AL 16475 | SL16475010 | 16475 | 177032012000 |
| EAST CAMERON 002 #002AL 16475 | SL16475020 | 16475 | 177032012200 |
| EAST CAMERON 002 #003 SL16475 | SL16475030 | 16475 | 177032012300 |
| EAST CAMERON 002 #004AL 16475 | SL16475040 | 16475 | 177032012400 |
| EAST CAMERON 002 #005AL 16475 | SL16475050 | 16475 | 177032012500 |
| EAST CAMERON 009 #B009 | EC009B0900 | G01440 | 177032004300 |
| EAST CAMERON 014 #012 | EC01401200 | G01440 | 177034060600 |
| EAST CAMERON 014 #013 | EC01401300 | G01440 | 177034101300 |
| EAST CAMERON 014 #B006 | EC014B0600 | G01440 | 177032003700 |
| EAST CAMERON 014 #B007 | EC014B0700 | G01440 | 177032004000 |
| EAST CAMERON 014 #B008 | EC014B0800 | G01440 | 177032004200 |
| EAST CAMERON 014 #B010 ST1 | EC014B1001 | G01440 | 177032004601 |
| EAST CAMERON 014 #B011 | EC014B1100 | G01440 | 177034006900 |
| EAST CAMERON 014 #B013 | EC014B13 | G13572 | 177034094700 |
| EAST CAMERON 014 #CF001 | EC014CF010 | G01440 | 177030032800 |
| EAST CAMERON 014 #CF002 | EC014CF020 | G13572 | 177034068600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|------------|----------------|--------------|-----|
| EAST CAMERON 037 #A002 | EC037A0200 | G25933 | 177034101700 |
| EAST CAMERON 265 #D001 | EC265D0100 | G00972 | 177044105100 |
| EAST CAMERON 265 #D002 | EC265D0200 | G00972 | 177044106200 |
| EAST CAMERON 265 #D003 | EC265D0300 | G00972 | 177044106300 |
| EAST CAMERON 265 #D004 | EC265D0400 | G00972 | 177044106400 |
| EAST CAMERON 265 #D005 | EC265D0500 | G00972 | 177044106500 |
| EAST CAMERON 278 #B009 | EC278B0900 | G00974 | 177044071700 |
| EAST CAMERON 278 #C001 | EC278C0100 | G00974 | 177044058500 |
| EAST CAMERON 278 #C002 | EC278C0204 | G00974 | 177044070000 |
| EAST CAMERON 278 #C003 | EC278C0300 | G00974 | 177044071800 |
| EAST CAMERON 278 #C004 ST2 | EC278C0401 | G00974 | 177044072101 |
| EAST CAMERON 278 #C005 | EC278C0500 | G00974 | 177044069700 |
| EAST CAMERON 278 #C006 | EC278C0600 | G00974 | 177044071400 |
| EAST CAMERON 278 #C007 | EC278C0700 | G00974 | 177044094800 |
| EAST CAMERON 278 #C008 | EC278C0800 | G00974 | 177044109800 |
| EAST CAMERON 278 #C009 | EC278C0900 | G00974 | 177044109901 |
| EAST CAMERON 338 #A002 | EC338A0200 | G02063 | 177044024700 |
| EAST CAMERON 338 #A003 | EC338A0300 | G02063 | 177044025000 |
| EAST CAMERON 338 #A011 | EC338A1100 | G02063 | 177044028800 |
| EAST CAMERON 338 #A015 | EC338A1500 | G02063 | 177044032000 |
| EAST CAMERON 338 #A016 | EC338A1601 | G02063 | 177044034601 |
| EAST CAMERON 338 #A022 | EC338A2200 | G02063 | 177044025101 |
| EUGENE IS 053 #008D | EI053008D0 | 00479 | 177094086200 |
| EUGENE IS 053 #009 | EI05300900 | 00479 | 177094094000 |
| EUGENE IS 053 #010 ST1 | EI05301001 | 00479 | 177094113001 |
| EUGENE IS 053 #012 ST1 | EI05301201 | 00479 | 177094115301 |
| EUGENE IS 053 #015 BP1 | EI05301501 | 00479 | 177094127601 |
| EUGENE IS 053 #B001D | EI053B01D0 | 00479 | 177094085900 |
| EUGENE IS 053 #C001 | EI053C0101 | 00479 | 177094121101 |
| EUGENE IS 053 #C002 | EI053C0200 | 00479 | 177094122600 |
| EUGENE IS 053 #G001 ST1 | EI053G01D2 | 00479 | 177094144201 |
| EUGENE IS 119 #030 ST1 | EI11903001 | 00049 | 177094079801 |
| EUGENE IS 119 #033 ST2 | EI11903302 | 00049 | 177094117002 |
| EUGENE IS 119 #034 | EI11903400 | 00049 | 177094118700 |
| EUGENE IS 119 #035 ST1 | EI11903501 | 00049 | 177094120301 |
| EUGENE IS 119 #037 ST1 | EI11903701 | 00049 | 177094129001 |
| EUGENE IS 119 #F001D | EI119F01D0 | 00049 | 177090026700 |
| EUGENE IS 119 #F002 ST1 | EI119F0201 | 00049 | 177090026801 |
| EUGENE IS 119 #F003 | EI119F0300 | 00049 | 177090026900 |
| EUGENE IS 119 #F005 ST1 | EI119F0501 | 00049 | 177090027101 |
| EUGENE IS 119 #F006 | EI119F0600 | 00049 | 177090027200 |
| EUGENE IS 119 #F007 | EI119F0700 | 00049 | 177094137900 |
| EUGENE IS 119 #F008 ST1 | EI119F0801 | 00049 | 177094138401 |
| EUGENE IS 119 #K001 | EI119K0100 | 00049 | 177090028900 |
| EUGENE IS 119 #K002 | EI119K0200 | 00049 | 177090029000 |
| EUGENE IS 119 #K003 | EI119K0300 | 00049 | 177090029100 |

Exhibit I-B

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 119 #K004 | EI119K0400 | 00049 | 177090029200 |
| EUGENE IS 119 #K005 | EI119K0500 | 00049 | 177090029300 |
| EUGENE IS 119 #K006 | EI119K0600 | 00049 | 177090029400 |
| EUGENE IS 119 #K007 | EI119K0700 | 00049 | 177090029500 |
| EUGENE IS 119 #M004 | EI119M0400 | 00049 | 177090029900 |
| EUGENE IS 119 #M007 | EI119M0700 | 00049 | 177092009000 |
| EUGENE IS 120 #009 ST1 | EI12000901 | 00050 | 177094026101 |
| EUGENE IS 120 #011 | EI12001100 | 00050 | 177094078000 |
| EUGENE IS 120 #012 ST1 | EI12001201 | 00050 | 177094113901 |
| EUGENE IS 120 #013 | EI12001300 | 00050 | 177094114100 |
| EUGENE IS 120 #014 | EI12001400 | 00050 | 177094115200 |
| EUGENE IS 120 #015 ST2 | EI12001502 | 00050 | 177094116702 |
| EUGENE IS 120 #017 | EI12001700 | 00050 | 177094121700 |
| EUGENE IS 120 #019 ST2 | EI12001902 | 00050 | 177094126102 |
| EUGENE IS 120 #020 | EI12002000 | 00050 | 177094138300 |
| EUGENE IS 120 #I008 | EI120I0800 | 00050 | 177094137000 |
| EUGENE IS 125 #002B ST2 | EI125002B2 | 00051 | 177090022902 |
| EUGENE IS 125 #A003 ST1 | EI125A0301 | 00051 | 177090022601 |
| EUGENE IS 125 #R001 | EI125R0100 | 00051 | 177094080201 |
| EUGENE IS 125 #R002 | EI125R0201 | 00051 | 177094141301 |
| EUGENE IS 126 #012 | EI12601201 | 00052 | 177094131501 |
| EUGENE IS 126 #031 ST2 | EI12603102 | 00052 | 177094086702 |
| EUGENE IS 126 #A002 | EI126A0200 | 00052 | 177090022500 |
| EUGENE IS 126 #A004D | EI126A04D0 | 00052 | 177090022700 |
| EUGENE IS 126 #A005 | EI126A0501 | 00052 | 177094092903 |
| EUGENE IS 126 #A006 | EI126A0600 | 00052 | 177094151000 |
| EUGENE IS 136 #001 | EI13600100 | G03152 | 177094115700 |
| EUGENE IS 136 #JA001 | EI136JA100 | G03152 | 177094028300 |
| EUGENE IS 136 #JA002 | EI136JA200 | G03152 | 177094117501 |
| EUGENE IS 136 #JA003 BP1 | EI136JA301 | G03152 | 177094140601 |
| EUGENE IS 136 #JA004 | EI136JA400 | G03152 | 177094151101 |
| EUGENE IS 158 #014B | EI158014B0 | G01220 | 177090094300 |
| EUGENE IS 158 #016 | EI15801600 | G01220 | 177092000402 |
| EUGENE IS 158 #017A | EI158017A0 | G01220 | 177092000900 |
| EUGENE IS 158 #027 ST1 | EI15802701 | G01220 | 177092006501 |
| EUGENE IS 158 #028 ST1BP1 | EI15802802 | G01220 | 177092009702 |
| EUGENE IS 158 #029 | EI15802900 | G01220 | 177092008200 |
| EUGENE IS 158 #032 | EI15803200 | G01220 | 177094111400 |
| EUGENE IS 158 #034 | EI15803400 | G01220 | 177094147600 |
| EUGENE IS 158 #B003A | EI158B03A2 | G01220 | 177090066202 |
| EUGENE IS 158 #B004B | EI158B04B0 | G01220 | 177090063700 |
| EUGENE IS 158 #B005E | EI158B05E0 | G01220 | 177090070400 |
| EUGENE IS 158 #B007 | EI158B0703 | G01220 | 177090094803 |
| EUGENE IS 158 #B008 | EI158B0800 | G01220 | 177092001500 |
| EUGENE IS 158 #B010F | EI158B1100 | G01220 | 177092001800 |
| EUGENE IS 158 #B011 ST2 | EI158B1102 | G01220 | 177094104902 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 158 #B012 | EI158B1200 | G01220 | 177094105000 |
| EUGENE IS 158 #B013 | EI158B1302 | G01220 | 177094143502 |
| EUGENE IS 158 #C001 | EI158C0100 | G01220 | 177092014700 |
| EUGENE IS 158 #C002 | EI158C0200 | G01220 | 177092015200 |
| EUGENE IS 158 #C003C | EI158C03C0 | G01220 | 177092015300 |
| EUGENE IS 158 #C005A | EI158C05A0 | G01220 | 177094002200 |
| EUGENE IS 158 #C006 | EI158C0600 | G01220 | 177094001900 |
| EUGENE IS 158 #C007F | EI158C07F0 | G01220 | 177094004700 |
| EUGENE IS 158 #C008C | EI158C08C0 | G01220 | 177094005100 |
| EUGENE IS 158 #C009 | EI158C0900 | G01220 | 177094005700 |
| EUGENE IS 158 #C010B | EI158C10B0 | G01220 | 177094006000 |
| EUGENE IS 158 #C011A | EI158C11A0 | G01220 | 177094006300 |
| EUGENE IS 158 #C012D | EI158C12D0 | G01220 | 177094007100 |
| EUGENE IS 158 #C013D | EI158C13D0 | G01220 | 177094008000 |
| EUGENE IS 158 #C014 | EI158C1400 | G01220 | 177094008100 |
| EUGENE IS 158 #JB008 | EI158JB801 | G01220 | 177090091401 |
| EUGENE IS 158 #JB009 | EI158JB900 | G01220 | 177090090200 |
| EUGENE IS 158 #JB013 | EI158JB130 | G01220 | 177090094102 |
| EUGENE IS 158 #JB019 | EI158JB190 | G01220 | 177092002101 |
| EUGENE IS 158 #JB022 | EI158JB220 | G01220 | 177092003300 |
| EUGENE IS 158 #JB024 | EI158JB240 | G01220 | 177092003900 |
| EUGENE IS 158 #JB030 (D04) | EI158JB300 | G01220 | 177094100300 |
| EUGENE IS 158 #JB033 | EI158JB330 | G01220 | 177094111100 |
| EUGENE IS 173 #G002 | EI173G0200 | G13622 | 177094074701 |
| EUGENE IS 174 #A010 | EI174A1000 | G03782 | 177094101100 |
| EUGENE IS 174 #G001 ST1 | EI174G0101 | G03782 | 177094065601 |
| EUGENE IS 174 #G003 ST2 | EI174G0302 | G03782 | 177094084402 |
| EUGENE IS 174 #G004 ST1 | EI174G0402 | G03782 | 177094116502 |
| EUGENE IS 175 #D006 ST1 | EI175D0601 | 00438 | 177094003301 |
| EUGENE IS 175 #D008 | EI175D0800 | 00438 | 177094003900 |
| EUGENE IS 175 #D009 ST1 | EI175D0901 | 00438 | 177094005401 |
| EUGENE IS 175 #D012 ST | EI175D1201 | 00438 | 177094010601 |
| EUGENE IS 175 #D021 ST3 | EI175D2103 | 00438 | 177092012603 |
| EUGENE IS 175 #F001 ST1 | EI175F0101 | 00438 | 177094035401 |
| EUGENE IS 175 #F002 ST1 | EI175F0201 | 00438 | 177094039601 |
| EUGENE IS 175 #F003 ST | EI175F0302 | 00438 | 177094039702 |
| EUGENE IS 175 #F004 ST | EI175F0401 | 00438 | 177094041001 |
| EUGENE IS 175 #F005 | EI175F0500 | 00438 | 177094042900 |
| EUGENE IS 175 #F007 | EI175F0700 | 00438 | 177094048900 |
| EUGENE IS 175 #F009 | EI175F0901 | 00438 | 177094087601 |
| EUGENE IS 175 #H001 | EI175H0100 | 00438 | 177094104700 |
| EUGENE IS 175 #H002 | EI175H0200 | 00438 | 177094106700 |
| EUGENE IS 175 #H003 | EI175H0300 | 00438 | 177094110800 |
| EUGENE IS 175 #H004 | EI175H0400 | 00438 | 177094110900 |
| EUGENE IS 175 #H005 ST1BP1 | EI175H0502 | 00438 | 177094112002 |
| EUGENE IS 175 #I002 | EI175I0201 | 00438 | 177094107101 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 175 #I003 | EI175I0300 | 00438 | 177094107200 |
| EUGENE IS 175 #I004 | EI175I0400 | 00438 | 177094109200 |
| EUGENE IS 175 #I005 | EI175I0500 | 00438 | 177094109300 |
| EUGENE IS 175 #J001 ST1 | EI175J0101 | 00438 | 177094122301 |
| EUGENE IS 175 #J002 ST1 | EI175J0201 | 00438 | 177094123201 |
| EUGENE IS 175 #J003 ST1 | EI175J0301 | 00438 | 177094123501 |
| EUGENE IS 175 #J004 | EI175J0400 | 00438 | 177094128300 |
| EUGENE IS 187 #002 | EI18700200 | G10736 | 177094151601 |
| EUGENE IS 187 #JC001 | EI187JC101 | G10736 | 177094091101 |
| EUGENE IS 187 #JD001 | EI187JD201 | G10736 | 177094092801 |
| EUGENE IS 187 #JD002 | EI187JD200 | G10736 | 177094131900 |
| EUGENE IS 187 #JE002 | EI187JE020 | G10736 | 177094109700 |
| EUGENE IS 188 #JE001 | EI188JE100 | 00443 | 177094096500 |
| EUGENE IS 189 #020 | EI18902000 | 00423 | 177094099500 |
| EUGENE IS 189 #B001 | EI189B0100 | 00423 | 177090062500 |
| EUGENE IS 189 #B003 ST1 | EI189B0300 | 00423 | 177090062601 |
| EUGENE IS 189 #B014 | EI189B1400 | 00423 | 177090075200 |
| EUGENE IS 189 #B016B | EI189B16B3 | 00423 | 177090075103 |
| EUGENE IS 189 #B020 | EI189B2001 | 00423 | 177090079001 |
| EUGENE IS 189 #B025 | EI189B2501 | 00423 | 177090078501 |
| EUGENE IS 189 #B027 | EI189B2701 | 00423 | 177094059001 |
| EUGENE IS 211 #A003 | EI211A0300 | G05502 | 177094071500 |
| EUGENE IS 211 #A005 | EI211A0500 | G05502 | 177094083400 |
| EUGENE IS 211 #A006 | EI211A0600 | G05502 | 177094083601 |
| EUGENE IS 212 #A001 BP1 | EI212A0100 | G05503 | 177094063200 |
| EUGENE IS 212 #A002 | EI212A0200 | G05503 | 177094070700 |
| EUGENE IS 212 #A007 | EI212A0700 | G05503 | 177094097400 |
| EUGENE IS 224 #A001 | EI224A0101 | G05504 | 177094074001 |
| EUGENE IS 224 #A002 | EI224A0201 | G05504 | 177094082501 |
| EUGENE IS 224 #A003 | EI224A0300 | G05504 | 177094083200 |
| EUGENE IS 224 #A004 | EI224A0400 | G05504 | 177094089100 |
| EUGENE IS 224 #A005 | EI224A0503 | G05504 | 177094089403 |
| EUGENE IS 224 #A006 | EI224A0600 | G05504 | 177094103600 |
| EUGENE IS 224 #A007 | EI224A0700 | G05504 | 177094106800 |
| EUGENE IS 224 #A008 | EI224A0800 | G05504 | 177094111600 |
| EUGENE IS 224 #A009 | EI224A0900 | G05504 | 177094121900 |
| EUGENE IS 224 #A010 | EI224A1000 | G05504 | 177094135200 |
| EUGENE IS 224 #C001 | EI224C01 | G05504 | 177094112501 |
| EUGENE IS 224 #G002 (ORRI) | EI224G02 | G05504 | 177094150801 |
| EUGENE IS 224 #SS006 (ORRI) | EI224SS06 | G05504 | 177094149000 |
| EUGENE IS 312 #D001 | EI312D0100 | G22679 | 177104160900 |
| EUGENE IS 312 #D002 | EI312D0200 | G22679 | 177104161900 |
| EUGENE IS 315 #A001 ST1 | EI315A0101 | G02112 | 177104099001 |
| EUGENE IS 315 #A003 | EI315A0300 | G02112 | 177104099500 |
| EUGENE IS 315 #A005 | EI315A0500 | G02112 | 177104099800 |
| EUGENE IS 315 #A006 | EI315A0600 | G02112 | 177104101700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 315 #A007 ST1 | EI315A0701 | G02112 | 177104103001 |
| EUGENE IS 315 #A010 | EI315A1000 | G02112 | 177104103700 |
| EUGENE IS 315 #A012 | EI315A1200 | G02112 | 177104104000 |
| EUGENE IS 315 #A016 | EI315A1600 | G02112 | 177104127000 |
| EUGENE IS 315 #A017 | EI315A1700 | G02112 | 177104152000 |
| EUGENE IS 315 #C001 (TANA) | EI315C0100 | G24912 | 177104160800 |
| EUGENE IS 315 #C002 (TANA) | EI315C0200 | G24912 | 177104162300 |
| EUGENE IS 316 #A001 | EI316A0101 | G05040 | 177104100701 |
| EUGENE IS 316 #A002 ST1 | EI316A0200 | G05040 | 177104106400 |
| EUGENE IS 316 #A003 ST3 | EI316A0302 | G05040 | 177104111302 |
| EUGENE IS 316 #A005 ST5 | EI316A0505 | G05040 | 177104112905 |
| EUGENE IS 316 #A007 | EI316A0700 | G05040 | 177104117000 |
| EUGENE IS 316 #A008 | EI316A0800 | G05040 | 177104117300 |
| EUGENE IS 316 #A010 | EI316A1000 | G05040 | 177104118300 |
| EUGENE IS 316 #A011 | EI316A1100 | G05040 | 177104137500 |
| EUGENE IS 316 #A012 | EI316A1200 | G05040 | 177104138400 |
| EUGENE IS 316 #A013 ST1 (S01) | EI316A13S1 | G05040 | 177104107601 |
| EUGENE IS 329 #A002 | EI329A0200 | G02912 | 177104099101 |
| EUGENE IS 329 #A004 | EI329A0400 | G02912 | 177104099400 |
| EUGENE IS 329 #A008 | EI329A0800 | G02912 | 177104103500 |
| EUGENE IS 329 #A011 | EI329A1100 | G02912 | 177104103800 |
| EUGENE IS 329 #A014 | EI329A1400 | G02912 | 177104106800 |
| EUGENE IS 329 #A015 | EI329A1500 | G02912 | 177104108001 |
| EUGENE IS 329 #A018 | EI329A1800 | G02912 | 177104151700 |
| EUGENE IS 330 #B001 | EI330B0101 | G02115 | 177104004301 |
| EUGENE IS 330 #B003 ST1 | EI330B0301 | G02115 | 177104008001 |
| EUGENE IS 330 #B004 ST1 | EI330B0401 | G02115 | 177104008701 |
| EUGENE IS 330 #B005 ST2 | EI330B0502 | G02115 | 177104009502 |
| EUGENE IS 330 #B006 ST3 | EI330B0603 | G02115 | 177104010503 |
| EUGENE IS 330 #B007 ST1 | EI330B0701 | G02115 | 177104011601 |
| EUGENE IS 330 #B008 ST1 LF | EI330B0801 | G02115 | 177104013001 |
| EUGENE IS 330 #B009 ST1 | EI330B0901 | G02115 | 177104016301 |
| EUGENE IS 330 #B010 ST1 | EI330B1001 | G02115 | 177104017101 |
| EUGENE IS 330 #B011 | EI330B1100 | G02115 | 177104025200 |
| EUGENE IS 330 #B012 ST1 | EI330B1201 | G02115 | 177104021001 |
| EUGENE IS 330 #B014 ST1 | EI330B1401 | G02115 | 177104027401 |
| EUGENE IS 330 #B015 ST1 | EI330B1501 | G02115 | 177104028601 |
| EUGENE IS 330 #B016 ST1 | EI330B1601 | G02115 | 177104030201 |
| EUGENE IS 330 #B018 | EI330B1800 | G02115 | 177104031200 |
| EUGENE IS 330 #D001 | EI330D0100 | G02115 | 177104105600 |
| EUGENE IS 330 #D002 | EI330D0200 | G02115 | 177104116900 |
| EUGENE IS 330 #D003 ST2 | EI330D0302 | G02115 | 177104117802 |
| EUGENE IS 330 #D004 | EI330D0400 | G02115 | 177104118400 |
| EUGENE IS 330 #D005 ST1 | EI330D0502 | G02115 | 177104118702 |
| EUGENE IS 330 #D006 ST | EI330D0602 | G02115 | 177104119102 |
| EUGENE IS 330 #D008 ST1 | EI330D0801 | G02115 | 177104119602 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 330 #D009 ST1 | EI330D0901 | G02115 | 177104138201 |
| EUGENE IS 330 #D011 | EI330D1100 | G02115 | 177104138700 |
| EUGENE IS 330 #D012 ST1 | EI330D1201 | G02115 | 177104138801 |
| EUGENE IS 330 #D013 | EI330D1301 | G02115 | 177104164301 |
| EUGENE IS 330 #D014 | EI330D1401 | G02115 | 177104164401 |
| EUGENE IS 330 #D015 | EI330D1500 | G02115 | 177104164500 |
| EUGENE IS 330 #D016 | EI330D1602 | G02115 | 177104164702 |
| EUGENE IS 330 #D017 | EI330D1700 | G02115 | 177104164800 |
| EUGENE IS 330 #D018 | EI330D1801 | G02115 | 177104165101 |
| EUGENE IS 330 #D019 | EI330D1900 | G02115 | 177104165200 |
| EUGENE IS 330 #D020 | EI330D2000 | G02115 | 177104165300 |
| EUGENE IS 333 #B012 | EI333B1200 | G02317 | 177104145204 |
| EUGENE IS 334 #B013 ST1 | EI334B1301 | G15263 | 177104152201 |
| EUGENE IS 334 #D001 BP1 | EI334D0100 | G15263 | 177104159300 |
| EUGENE IS 334 #D003 BP1 | EI334D0301 | G15263 | 177104161401 |
| EUGENE IS 337 #A001 ST2 | EI337A0102 | G03332 | 177104054002 |
| EUGENE IS 337 #A003 ST1 | EI337A0301 | G03332 | 177104101101 |
| EUGENE IS 337 #A005 ST1 | EI337A0501 | G03332 | 177104102201 |
| EUGENE IS 337 #A007 | EI337A0700 | G03332 | 177104104600 |
| EUGENE IS 337 #A008 ST2 | EI337A0802 | G03332 | 177104104902 |
| EUGENE IS 337 #A010 | EI337A1000 | G03332 | 177104161000 |
| EUGENE IS 337 #A011 | EI337A1103 | G03332 | 177104163803 |
| EUGENE IS 342 #004 | EI34200400 | G02319 | 177104113000 |
| EUGENE IS 342 #C002 ST1 | EI342C0201 | G02319 | 177104110601 |
| EUGENE IS 342 #C003 | EI342C0300 | G02319 | 177104114000 |
| EUGENE IS 342 #C004 | EI342C0401 | G02319 | 177104120101 |
| EUGENE IS 342 #C005 | EI342C0502 | G02319 | 177104120202 |
| EUGENE IS 342 #C006 | EI342C0600 | G02319 | 177104120300 |
| EUGENE IS 342 #C007 | EI342C0700 | G02319 | 177104120800 |
| EUGENE IS 342 #C008 | EI342C0800 | G02319 | 177104121000 |
| EUGENE IS 342 #C009 | EI342C0900 | G02319 | 177104121300 |
| EUGENE IS 342 #C010 | EI342C1000 | G02319 | 177104121500 |
| EUGENE IS 342 #C011 | EI342C1100 | G02319 | 177104122000 |
| EUGENE IS 342 #C012 | EI342C1200 | G02319 | 177104122200 |
| EUGENE IS 342 #C013 | EI342C1300 | G02319 | 177104122700 |
| EUGENE IS 342 #C014 | EI342C1400 | G02319 | 177104135800 |
| EUGENE IS 342 #C015 | EI342C1501 | G02319 | 177104162101 |
| EUGENE IS 342 #C016 | EI342C1601 | G02319 | 177104162201 |
| EUGENE IS 342 #C017 BP1 | EI342C1701 | G02319 | 177104162501 |
| EUGENE IS 345 #A004 | EI345A0401 | G21647 | 177104159201 |
| EUGENE IS 346 #004 | EI34600400 | G14482 | 177104150500 |
| EUGENE IS 346 #005 | EI34600500 | G14482 | 177104151900 |
| EUGENE IS 346 #A001 | EI346A0100 | G14482 | 177104149101 |
| EUGENE IS 346 #A002 ST3 | EI346A0203 | G14482 | 177104149603 |
| EUGENE IS 346 #A003 | EI346A0300 | G14482 | 177104155100 |
| EUGENE IS 346 #B001 (ORRI) | EI346B0100 | G14482 | 177104161700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 346 #B003 (ORRI) | EI346B0300 | G14482 | 177104162800 |
| EUGENE IS 353 #D017 ST2 | EI353D1702 | G03783 | 177104143402 |
| EUGENE IS 353(354) #D3 ST | EI353D0300 | G03783 | 177104138501 |
| EUGENE IS 354 #A006 | EI354A0602 | G10752 | 177104104302 |
| EUGENE IS 354 #D001 | EI354D0101 | G10752 | 177104142101 |
| EUGENE IS 354 #D002 | EI354D0200 | G10752 | 177104138100 |
| EUGENE IS 354 #D004 | EI354D0400 | G10752 | 177104142900 |
| EUGENE IS 354 #D005 | EI354D0500 | G10752 | 177104142800 |
| EUGENE IS 354 #D006 | EI354D0600 | G10752 | 177104143500 |
| EUGENE IS 354 #D008 | EI354D0800 | G10752 | 177104144000 |
| EUGENE IS 354 #D009 ST4 | EI354D0904 | G10752 | 177104145604 |
| EUGENE IS 354 #D010 | EI354D1000 | G10752 | 177104144700 |
| EUGENE IS 354 #D011 | EI354D1100 | G10752 | 177104144900 |
| EUGENE IS 354 #D012 | EI354D1200 | G10752 | 177104146400 |
| EUGENE IS 354 #D014 ST1 | EI354D1401 | G02324 | 177104147201 |
| EUGENE IS 354 #D015 | EI354D1500 | G10752 | 177104147700 |
| EUGENE IS 354 #D016 ST1 | EI354D1601 | G10752 | 177104147901 |
| EUGENE IS 361 #A001 | EI361A0100 | G02324 | 177104095200 |
| EUGENE IS 361 #A002 | EI361A0200 | G02324 | 177104095600 |
| EUGENE IS 361 #A006 | EI361A0600 | G02324 | 1771040979 |
| EUGENE IS 361 #A007 | EI361A0700 | G02324 | 177104098500 |
| EUGENE IS 361 #A008 | EI361A0800 | G02324 | 1771040992 |
| EUGENE IS 361 #A010 | EI361A1000 | G02324 | 1771041012 |
| EUGENE IS 361 #A011 | EI361A1102 | G02324 | 177104103402 |
| EUGENE IS 361 #A013 | EI361A1300 | G02324 | 177104104400 |
| EUGENE IS 361 #A014 | EI361A1400 | G02324 | 177104104700 |
| EUGENE IS 361 #A015 | EI361A1500 | G02324 | 177104105300 |
| EUGENE IS 361 #A016 | EI361A1600 | G02324 | 1771041057 |
| EUGENE IS 361 #A017 | EI361A1700 | G02324 | 177104105800 |
| EUGENE IS 361 #A018 | EI361A1800 | G02324 | 177104106600 |
| EUGENE IS 361 #A019 | EI361A1900 | G02324 | 177104107500 |
| EUGENE IS 361 #A020 | EI361A2000 | G02324 | 1771041079 |
| EUGENE IS 361 #A021 | EI361A2101 | G02324 | 177104108101 |
| EUGENE IS 361 #A022 | EI361A2200 | G02324 | 177104144600 |
| EUGENE IS 361 #A023 | EI361A2300 | G02324 | 1771041454 |
| EUGENE IS 361 #A024 | EI361A2400 | G02324 | 177104157900 |
| EUGENE IS 361 #C003 | EI361C0300 | G02324 | 177104112401 |
| EUGENE IS 361 #C012 | EI361C1202 | G02324 | 177104118002 |
| EUGENE IS 361 #C015 | EI361C1500 | G02324 | 177104119500 |
| EUGENE IS 361 #C016 | EI361C1600 | G02324 | 177104119800 |
| EUGENE IS 361 #D001 | EI361D0102 | G02324 | 177104111102 |
| EUGENE IS 361 #D004 | EI361D0400 | G02324 | 1771041135 |
| EUGENE IS 361 #D010 | EI361D1000 | G02324 | 1771041171 |
| EUGENE IS 361 #D014 | EI361D1400 | G02324 | 1771041193 |
| EUGENE IS 361 #D015 | EI361D1501 | G02324 | 177104134601 |
| EUGENE IS 361 #D017 | EI361D1701 | G02324 | 177104152401 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EWING BANK 782 #A011 ST1 EW826 | EW782A1101 | G31470 | 608105002901 |
| EWING BANK 782 #A022 (EW826) | EW782A2200 | G31470 | 608104014400 |
| EWING BANK 782 #A026 | EW782A2600 | G31470 | 608104015003 |
| EWING BANK 826 #A001 | EW826A0100 | G05800 | 608105000100 |
| EWING BANK 826 #A002 ST2 | EW826A0202 | G05800 | 608105000202 |
| EWING BANK 826 #A003 ST2 | EW826A0302 | G05800 | 608105000402 |
| EWING BANK 826 #A004 | EW826A0400 | G05800 | 608105000500 |
| EWING BANK 826 #A005 ST3 | EW826A0503 | G05800 | 608105001303 |
| EWING BANK 826 #A006 | EW826A0600 | G05800 | 608105001200 |
| EWING BANK 826 #A007 | EW826A0700 | G05800 | 608105002000 |
| EWING BANK 826 #A008 | EW826A0800 | G05800 | 608105001400 |
| EWING BANK 826 #A009 | EW826A0900 | G05800 | 608105002800 |
| EWING BANK 826 #A010 | EW826A1000 | G05800 | 608105001700 |
| EWING BANK 826 #A013 | EW826A1300 | G05800 | 608105003000 |
| EWING BANK 826 #A015 | EW826A1501 | G05800 | 608105003501 |
| EWING BANK 826 #A016 | EW826A1600 | G05800 | 608105002100 |
| EWING BANK 826 #A017 | EW826A1700 | G05800 | 608104013600 |
| EWING BANK 826 #A018 | EW826A1800 | G05800 | 608104013700 |
| EWING BANK 826 #A019 BP1 | EW826A1901 | G05800 | 608104013801 |
| EWING BANK 826 #A020 | EW826A2000 | G05800 | 608104014000 |
| EWING BANK 826 #A021 BP3 | EW826A2103 | G05800 | 608104014103 |
| EWING BANK 826 #A024 ST1 | EW826A2401 | G05800 | 608104014801 |
| GALVESTON 151 #005 | GA15100500 | G15740 | 427064044200 |
| GALVESTON 180 #A002 | GA180A0200 | G03228 | 427084005600 |
| GALVESTON 180 #A004 ST1 | GA180A0401 | G03228 | 427084005801 |
| GALVESTON 180 #A007B | GA180A7B0 | G03228 | 427084005900 |
| GALVESTON 180 #A017 | GA180A1700 | G03228 | 427084005700 |
| GALVESTON 192 #A014C | GA192A14C1 | G03229 | 427084006701 |
| GALVESTON 210 #001 | GA21000100 | G25524 | 427064044300 |
| GALVESTON 210 #002 | GA21000200 | G25524 | 427064044800 |
| GRAND ISLE 032 #U012 ST1 | GI032U1201 | 00174 | 177192014502 |
| GRAND ISLE 039 #P002 ST2 | GI039P0202 | 00127 | 177174097802 |
| GRAND ISLE 039 #Q001 ST3 | GI039Q0103 | 00127 | 177174037903 |
| GRAND ISLE 040 #E007D | GI040E07D0 | 00128 | 177170077500 |
| GRAND ISLE 040 #E009 | GI040E0900 | 00128 | 177170078700 |
| GRAND ISLE 040 #G001 | GI040G0100 | 00128 | 177170070400 |
| GRAND ISLE 040 #G002 | GI040G0200 | 00128 | 177170076200 |
| GRAND ISLE 040 #G006 | GI040G0600 | 00133 | 177174012600 |
| GRAND ISLE 040 #G010 | GI040G1000 | 00128 | 177174037200 |
| GRAND ISLE 040 #G011 | GI040G1100 | 00128 | 177174037300 |
| GRAND ISLE 040 #G013 | GI040G1300 | 00128 | 177174098600 |
| GRAND ISLE 040 #M001 | GI040M0100 | 00128 | 177174037000 |
| GRAND ISLE 040 #M002D | GI040M02D0 | 00128 | 177174038600 |
| GRAND ISLE 040 #M003 | GI040M0300 | 00128 | 177174043600 |
| GRAND ISLE 040 #O005 | GI040O0500 | 00128 | 177174097100 |
| GRAND ISLE 041 #D002 | GI041D0200 | 00129 | 177170075300 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 041 #D003 | GI041D0300 | 00129 | 177170076700 |
| GRAND ISLE 041 #D004 | GI041D0400 | 00130 | 177170080500 |
| GRAND ISLE 041 #D007 | GI041D0700 | 00129 | 177172000000 |
| GRAND ISLE 041 #D008 ST | GI041D0801 | 00130 | 177172000801 |
| GRAND ISLE 041 #D009 | GI041D0900 | 00129 | 177172001500 |
| GRAND ISLE 041 #D010ST | GI041D1000 | 00129 | 177174017801 |
| GRAND ISLE 041 #D011E | GI041D1100 | 00129 | 177174018400 |
| GRAND ISLE 041 #E001 ST1 | GI041E0101 | 00130 | 177170069401 |
| GRAND ISLE 041 #E002 ST1 | GI041E0201 | 00130 | 177170074701 |
| GRAND ISLE 041 #E003D | GI041E03D0 | 00130 | 177170075000 |
| GRAND ISLE 041 #E004 ST1 | GI041E0401 | 00130 | 177170075201 |
| GRAND ISLE 041 #E005 | GI041E0500 | 00129 | 177170075400 |
| GRAND ISLE 041 #E006D | GI041E06D0 | 00130 | 177170077300 |
| GRAND ISLE 041 #E008 | GI041E0800 | 00130 | 177170079800 |
| GRAND ISLE 041 #E010 | GI041E1001 | 00130 | 177172000301 |
| GRAND ISLE 041 #E012D | GI041E12D0 | 00130 | 177174011500 |
| GRAND ISLE 041 #E013 | GI041E1300 | 00130 | 177174012900 |
| GRAND ISLE 041 #F003 ST1 | GI041F0301 | 00129 | 177174006401 |
| GRAND ISLE 041 #F005 ST2 | GI041F0502 | 00129 | 177174017302 |
| GRAND ISLE 041 #G007 | GI041G0700 | 00130 | 177174022400 |
| GRAND ISLE 041 #G008 | GI041G0800 | 00130 | 177174026400 |
| GRAND ISLE 041 #H001 | GI041H0100 | 00130 | 177174020300 |
| GRAND ISLE 041 #H002 | GI041H0200 | 00129 | 177174028100 |
| GRAND ISLE 041 #H003 ST | GI041H0301 | 00130 | 177174028601 |
| GRAND ISLE 041 #H004 | GI041H0400 | 00130 | 177174038000 |
| GRAND ISLE 041 #H005 | GI041H0500 | 00129 | 177174038100 |
| GRAND ISLE 041 #H006 ST1 | GI041H0601 | 00129 | 177174098301 |
| GRAND ISLE 041 #H007 | GI041H0700 | 00130 | 177174098400 |
| GRAND ISLE 042 #C001 | GI042C0100 | 00131 | 177170067000 |
| GRAND ISLE 042 #C002 | GI042C0200 | 00131 | 177170072100 |
| GRAND ISLE 042 #F001 | GI042F0100 | 00131 | 177174005100 |
| GRAND ISLE 042 #F002 | GI042F0200 | 00131 | 177174006000 |
| GRAND ISLE 042 #F004 | GI042F0400 | 00131 | 177174007100 |
| GRAND ISLE 046 #001 ST1 | GI04600101 | 00132 | 177174042801 |
| GRAND ISLE 046 #G009 ST1 | GI046G0901 | 00132 | 177174026101 |
| GRAND ISLE 047 #E006 | GI047E0600 | 00133 | 177170078100 |
| GRAND ISLE 047 #E008 | GI047E0800 | 00133 | 177170079500 |
| GRAND ISLE 047 #E017 | GI047E1700 | 00133 | 177174039900 |
| GRAND ISLE 047 #G004 ST | GI047G0401 | 00133 | 177170079601 |
| GRAND ISLE 047 #G005 ST | GI047G0501 | 00133 | 177170080301 |
| GRAND ISLE 047 #G012 | GI047G1200 | 00133 | 177174037500 |
| GRAND ISLE 047 #L001 | GI047L0100 | 00133 | 177174012800 |
| GRAND ISLE 047 #L002 ST | GI047L0201 | 00133 | 177174015901 |
| GRAND ISLE 047 #L003 | GI047L0300 | 00133 | 177174020500 |
| GRAND ISLE 047 #L004 | GI047L0400 | 00133 | 177174017000 |
| GRAND ISLE 047 #L005 | GI047L0500 | 00133 | 177174017900 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 047 #L006D | GI047L0600 | 00133 | 177174036300 |
| GRAND ISLE 047 #L007 ST | GI047L0701 | 00177 | 177174039101 |
| GRAND ISLE 047 #L009 ST1 | GI047L0901 | 00133 | 177174039201 |
| GRAND ISLE 047 #L011 ST2 | GI047L1102 | 00133 | 177174039602 |
| GRAND ISLE 047 #O001 BP2 | GI047O01D3 | 00133 | 177174096102 |
| GRAND ISLE 047 #O002 | GI047002D1 | 00133 | 177174096600 |
| GRAND ISLE 047 #O003 | GI04700300 | 00133 | 177174096700 |
| GRAND ISLE 047 #O004 | GI047O0400 | 00133 | 177174096900 |
| GRAND ISLE 047 #O006 | GI047O0600 | 00133 | 177174097200 |
| GRAND ISLE 047 #O007 ST1 | GI047O0701 | 00133 | 177174097301 |
| GRAND ISLE 047 #O008 | GI047O0800 | 00133 | 177174097600 |
| GRAND ISLE 047 #O009 | GI047O09D1 | 00133 | 177174097700 |
| GRAND ISLE 048 #E001 | GI048E0100 | 00134 | 177170045400 |
| GRAND ISLE 048 #E014 | GI048E1400 | 00134 | 177172003900 |
| GRAND ISLE 048 #E018 ST | GI048E1801 | 00134 | 177174043501 |
| GRAND ISLE 048 #J002 ST1 | GI048J0201 | 00134 | 177174003201 |
| GRAND ISLE 048 #J003 ST | GI048J0302 | 00134 | 177174004502 |
| GRAND ISLE 048 #J004 ST2 | GI048J0403 | 00134 | 177174004803 |
| GRAND ISLE 048 #J005 ST | GI048J0501 | 00134 | 177174011601 |
| GRAND ISLE 048 #J006 | GI048J0600 | 00134 | 177174012000 |
| GRAND ISLE 048 #J007 | GI048J0700 | 00134 | 177174012200 |
| GRAND ISLE 048 #J008 | GI048J0800 | 00134 | 177174016900 |
| GRAND ISLE 048 #J009 | GI048J0900 | 00134 | 177174044200 |
| GRAND ISLE 048 #J010 ST | GI048J1001 | 00134 | 177174044401 |
| GRAND ISLE 048 #P001 FKA #14 | GI048P0100 | 00134 | 177174015300 |
| GRAND ISLE 052 #L008 ST | GI052L0801 | 00177 | 177174019501 |
| GRAND ISLE 052 #L010 | GI052L1001 | 00177 | 177174043901 |
| GRAND ISLE 052 #L012 | GI052L1200 | 00177 | 177174044604 |
| GRAND ISLE 076 #A001 | GI076A0100 | G02161 | 177174004600 |
| GRAND ISLE 076 #A002 | GI076A0200 | G02161 | 177174004700 |
| GRAND ISLE 076 #A003 | GI076A0300 | G02161 | 177174004900 |
| GRAND ISLE 076 #A005 | GI076A0500 | G02161 | 177174005200 |
| GRAND ISLE 076 #A006 | GI076A0601 | G02161 | 177174005001 |
| GRAND ISLE 076 #A008 | GI076A0800 | G02161 | 177174005400 |
| GRAND ISLE 076 #A009 | GI076A0900 | G02161 | 177174005500 |
| GRAND ISLE 076 #A010 | GI076A1001 | G02161 | 177174005301 |
| GRAND ISLE 076 #A011 | GI076A1100 | G02161 | 177174005600 |
| GRAND ISLE 076 #A013 | GI076A1300 | G02161 | 177174005800 |
| GRAND ISLE 076 #A014 | GI076A1400 | G02161 | 177174006100 |
| GRAND ISLE 076 #A015 | GI076A1500 | G02161 | 177174005900 |
| GRAND ISLE 076 #A018 | GI076A1800 | G02161 | 177174006500 |
| GRAND ISLE 076 #A022 | GI076A2201 | G02161 | 177174006601 |
| GRAND ISLE 076 #A023 ST1 | GI076A2301 | G02161 | 177174044101 |
| GRAND ISLE 076 #A024 ST1BP1 | GI076A2401 | G02161 | 177174095502 |
| GRAND ISLE 110 #A002 | GI110A0200 | G13943 | 177184008900 |
| GRAND ISLE 110 #A005 BP2 | GI110A0502 | G13943 | 177184010402 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GRAND ISLE 116 #A001 | GI116A0100 | G13944 | 177184008700 |
| GRAND ISLE 116 #A003 | GI116A0300 | G13944 | 177184009200 |
| GRAND ISLE 116 #A004 | GI116A0401 | G13944 | 177184009501 |
| GRAND ISLE 116 #A006 | GI116A0601 | G13944 | 177184010601 |
| GRAND ISLE 116 #A007 | GI116A0700 | G13944 | 177184011100 |
| HIGH ISLAND 110 #A001 | HI110A0100 | G02353 | 427084001700 |
| HIGH ISLAND 110 #A002 | HI110A0200 | G02353 | 427084002300 |
| HIGH ISLAND 110 #A004 | HI110A0400 | G02353 | 427084003300 |
| HIGH ISLAND 110 #A005 | HI110A0500 | G02353 | 427084003500 |
| HIGH ISLAND 110 #A006 | HI110A0600 | G02353 | 427084003700 |
| HIGH ISLAND 110 #A008 | HI110A0800 | G02353 | 427084004900 |
| HIGH ISLAND 110 #A009 | HI110A0900 | G02353 | 427084039400 |
| HIGH ISLAND 110 #B002 | HI110B0200 | G02353 | 427084004300 |
| HIGH ISLAND 110 #B004 | HI110B0400 | G02353 | 427084006100 |
| HIGH ISLAND 110 #B009 | HI110B0900 | G02353 | 427084035000 |
| HIGH ISLAND 110 #B010 | HI110B1000 | G02353 | 427084039600 |
| HIGH ISLAND 111 #003 | HI11100300 | G02354 | 427084046200 |
| HIGH ISLAND 111 #A003 | HI111A0300 | G02354 | 427084002600 |
| HIGH ISLAND 111 #A010 | HI111A1000 | G02354 | 427084040101 |
| HIGH ISLAND 116 #A001 | HI116A0100 | G06156 | 427084016400 |
| HIGH ISLAND 116 #A002D | HI116A02D0 | G06156 | 427084017600 |
| HIGH ISLAND 116 #A003 | HI116A0300 | G06156 | 427084018300 |
| HIGH ISLAND 129 #005 | HI129005 | G01848 | 427104000700 |
| HIGH ISLAND 129 #006 | HI12900600 | G01848 | 427104000800 |
| HIGH ISLAND 129 #013 | HI12901300 | G01848 | 427104009600 |
| HIGH ISLAND 129 #017 | HI12901702 | G01848 | 427104015302 |
| HIGH ISLAND 129 #018 (HELIS) | HI12901800 | G01848 | 427104015400 |
| HIGH ISLAND 176 #002 | HI17600200 | G06164 | 427084030200 |
| HIGH ISLAND 176 #003 | HI17603 | G06164 | 427084031300 |
| HIGH ISLAND 179 #A001 | HI179A0100 | G03236 | 427084005500 |
| HIGH ISLAND 179 #A003 | HI179A0300 | G03236 | 427084005700 |
| HIGH ISLAND 179 #A006 ST2 | HI179A0602 | G03236 | 427084006002 |
| HIGH ISLAND 179 #A008B | HI179A08B0 | G03236 | 427084006200 |
| HIGH ISLAND 179 #A009 | HI179A0900 | G03236 | 427084006300 |
| HIGH ISLAND 179 #A010 | HI179A1000 | G03236 | 427084006400 |
| HIGH ISLAND 179 #A016 | HI179A1600 | G03236 | 427084007300 |
| HIGH ISLAND 179 #A018E | HI179A18E0 | G03236 | 427084008000 |
| HIGH ISLAND 179 #A019 | HI179A1900 | G03236 | 427084007800 |
| HIGH ISLAND 193 #A015 | HI193A1500 | G03237 | 427084006801 |
| HIGH ISLAND 206 #B001 ST1 | HI206B0101 | G20660 | 427084056501 |
| HIGH ISLAND 206 #B002 ST1 | HI206B0201 | G20660 | 427084059201 |
| HIGH ISLAND 206 #B003 ST1 | HI206B0301 | G20660 | 427084063501 |
| HIGH ISLAND A-341 #B001 | HIA341B010 | G25605 | 427114085900 |
| HIGH ISLAND A-341 #B002 | HIA341B020 | G25605 | 427114087101 |
| HIGH ISLAND A-365 #A001 | HIA365A010 | G02750 | 427114052200 |
| HIGH ISLAND A-365 #A004 | HIA365A040 | G02750 | 427114053700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-365 #A006 | HIA365A060 | G02750 | 427114053100 |
| HIGH ISLAND A-365 #A007 | HIA365A070 | G02750 | 427114054100 |
| HIGH ISLAND A-365 #A008 | HIA365A080 | G02750 | 427114054800 |
| HIGH ISLAND A-365 #A010 | HIA365A100 | G02750 | 427114055200 |
| HIGH ISLAND A-365 #A012 | HIA365A120 | G02750 | 427114055600 |
| HIGH ISLAND A-365 #A013 ST1 | HIA365A131 | G02750 | 427114055801 |
| HIGH ISLAND A-365 #A016 | HIA365A160 | G02750 | 427114056700 |
| HIGH ISLAND A-365 #A020 | HIA365A200 | G02750 | 427114057500 |
| HIGH ISLAND A-365 #A021 | HIA365A210 | G02750 | 427114057600 |
| HIGH ISLAND A-365 #A024 | HIA365A240 | G02750 | 427114066300 |
| HIGH ISLAND A-365 #A025 | HIA365A250 | G02750 | 427114066500 |
| HIGH ISLAND A-376 #A002 ST1 | HIA376A021 | G02754 | 427114052601 |
| HIGH ISLAND A-376 #A003 | HIA376A030 | G02754 | 427114052700 |
| HIGH ISLAND A-376 #A005 | HIA376A050 | G02754 | 427114053500 |
| HIGH ISLAND A-376 #A009 | HIA376A090 | G02754 | 427114054400 |
| HIGH ISLAND A-376 #A011 | HIA376A110 | G02754 | 427114055000 |
| HIGH ISLAND A-376 #A014 ST2 | HIA376A142 | G02754 | 427114056002 |
| HIGH ISLAND A-376 #A015 | HIA376A150 | G02754 | 427114056200 |
| HIGH ISLAND A-376 #A017 | HIA376A170 | G02754 | 427114057200 |
| HIGH ISLAND A-376 #A018 | HIA376A180 | G02754 | 427114057300 |
| HIGH ISLAND A-376 #A019 | HIA376A190 | G02754 | 427114057400 |
| HIGH ISLAND A-376 #A022 | HIA376A220 | G02754 | 427114057700 |
| HIGH ISLAND A-376 #B001 | HIA376B010 | G02754 | 427114068700 |
| HIGH ISLAND A-376 #B002 | HIA376B020 | G02754 | 427114068900 |
| HIGH ISLAND A-376 #B003 | HIA376B031 | G02754 | 427114078701 |
| HIGH ISLAND A-376 #B004 | HIA376B041 | G02754 | 427114079001 |
| HIGH ISLAND A-376 #B005 | HIA376B050 | G02754 | 427114079600 |
| HIGH ISLAND A-376 #C001 | HIA376C010 | G02754 | 427114088900 |
| HIGH ISLAND A-376 #C002 | HIA376C020 | G02754 | 427114089600 |
| HIGH ISLAND A-376 #C003 | HIA376C030 | G02754 | 427114089500 |
| HIGH ISLAND A-376 #C004 | HIA376C040 | G02754 | 427114089400 |
| HIGH ISLAND A-382 #A009 | HIA382A090 | G02757 | 427094018600 |
| HIGH ISLAND A-382 #B013 | HIA382B130 | G02757 | 427094025500 |
| HIGH ISLAND A-382 #F001 ST1 | HIA382F011 | G02757 | 427114059401 |
| HIGH ISLAND A-382 #F002 | HIA382F020 | G02757 | 427114059800 |
| HIGH ISLAND A-382 #F003 | HIA382F031 | G02757 | 427114059901 |
| HIGH ISLAND A-382 #F004 | HIA382F040 | G02757 | 427114060600 |
| HIGH ISLAND A-382 #F005 | HIA382F050 | G02757 | 427114060900 |
| HIGH ISLAND A-382 #F006 | HIA382F061 | G02757 | 427114061001 |
| HIGH ISLAND A-382 #F008 | HIA382F080 | G02757 | 427114061700 |
| HIGH ISLAND A-382 #F010 ST5 | HIA382F105 | G02757 | 427114062605 |
| HIGH ISLAND A-382 #F011 | HIA382F110 | G02757 | 427114063100 |
| HIGH ISLAND A-382 #F012 | HIA382F121 | G02757 | 427114063601 |
| HIGH ISLAND A-382 #F013 | HIA382F130 | G02757 | 427114063800 |
| HIGH ISLAND A-382 #F014 | HIA382F140 | G02757 | 427114063900 |
| HIGH ISLAND A-382 #F015 | HIA382F151 | G02757 | 427114064701 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-382 #F017 | HIA382F171 | G02757 | 427114066701 |
| HIGH ISLAND A-382 #F019 | HIA382F190 | G02757 | 427114067100 |
| HIGH ISLAND A-382 #F020 | HIA382F200 | G02757 | 427114067500 |
| HIGH ISLAND A-382 #F021 | HIA382F211 | G02757 | 427114067801 |
| HIGH ISLAND A-442 #A001 (ORRI) | HIA442A010 | G11383 | 427094096101 |
| HIGH ISLAND A-442 #A003 (ORRI) | HIA442A03 | G11383 | 427094098101 |
| HIGH ISLAND A-442 #A004 (ORRI) | HIA442A040 | G11383 | 427094099000 |
| HIGH ISLAND A-442 #B001 (ORRI) | HIA442B01 | G11383 | 427094108900 |
| HIGH ISLAND A-474 #A001 | HIA474A010 | G02366 | 427094017100 |
| HIGH ISLAND A-474 #A002 | HIA474A020 | G02366 | 427094017200 |
| HIGH ISLAND A-474 #A003 | HIA474A030 | G02366 | 427094019900 |
| HIGH ISLAND A-474 #A004 | HIA474A040 | G02366 | 427094022800 |
| HIGH ISLAND A-474 #A005 | HIA474A050 | G02366 | 427094023500 |
| HIGH ISLAND A-474 #A006 | HIA474A060 | G02366 | 427094024300 |
| HIGH ISLAND A-474 #A007 | HIA474A070 | G02366 | 427094027702 |
| HIGH ISLAND A-474 #A008 | HIA474A080 | G02366 | 427094026100 |
| HIGH ISLAND A-474 #A010 | HIA474A100 | G02366 | 427094029400 |
| HIGH ISLAND A-474 #A011 | HIA474A110 | G02366 | 427094030000 |
| HIGH ISLAND A-474 #A012 | HIA474A120 | G02366 | 427094030801 |
| HIGH ISLAND A-474 #A013 | HIA474A130 | G02366 | 427094036104 |
| HIGH ISLAND A-474 #A014 | HIA474A140 | G02366 | 427094035000 |
| HIGH ISLAND A-474 #A017 | HIA474A170 | G02366 | 427094032500 |
| HIGH ISLAND A-474 #A020 | HIA474A200 | G02366 | 427094038500 |
| HIGH ISLAND A-474 #A021 | HIA474A210 | G02366 | 427094040700 |
| HIGH ISLAND A-474 #B023 | HIA474B230 | G02366 | 427094037200 |
| HIGH ISLAND A-475 #A016 | HIA475A16 | G02367 | 427094035500 |
| HIGH ISLAND A-475 #A018 | HIA475A18 | G02367 | 427094033100 |
| HIGH ISLAND A-489 #A009 | HIA489A090 | G02372 | 427094028500 |
| HIGH ISLAND A-489 #A015 | HIA489A150 | G02372 | 427094037000 |
| HIGH ISLAND A-489 #B002 | HIA489B020 | G02372 | 427094021000 |
| HIGH ISLAND A-489 #B003 | HIA489B030 | G02372 | 427094020901 |
| HIGH ISLAND A-489 #B005 ST | HIA489B050 | G02372 | 427094024601 |
| HIGH ISLAND A-489 #B007 | HIA489B070 | G02372 | 427094027601 |
| HIGH ISLAND A-489 #B009 | HIA489B090 | G02372 | 427094026500 |
| HIGH ISLAND A-489 #B010 | HIA489B100 | G02372 | 427094028800 |
| HIGH ISLAND A-489 #B012 | HIA489B120 | G02372 | 427094031400 |
| HIGH ISLAND A-489 #B013 | HIA489B130 | G02372 | 427094028600 |
| HIGH ISLAND A-489 #B014 | HIA489B140 | G02372 | 427094029700 |
| HIGH ISLAND A-489 #B015 | HIA489B150 | G02372 | 427094030400 |
| HIGH ISLAND A-489 #B016 | HIA489B160 | G02372 | 427094029800 |
| HIGH ISLAND A-489 #B017 | HIA489B170 | G02372 | 427094023802 |
| HIGH ISLAND A-489 #B020 | HIA489B200 | G02372 | 427094028101 |
| HIGH ISLAND A-489 #B021 | HIA489B210 | G02372 | 427094026202 |
| HIGH ISLAND A-489 #B022 | HIA489B220 | G02372 | 427094036000 |
| HIGH ISLAND A-489 #B024 | HIA489B240 | G02372 | 427094035400 |
| HIGH ISLAND A-489 #B025 | HIA489B250 | G02372 | 427094041400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-489 #B026 | HIA489B260 | G02372 | 427094043100 |
| HIGH ISLAND A-489 #B027 | HIA489B270 | G02372 | 427094042501 |
| HIGH ISLAND A-489 #B028 | HIA489B280 | G02372 | 427094054500 |
| HIGH ISLAND A-489 #B029 | HIA489B290 | G02372 | 427094111100 |
| HIGH ISLAND A-545 #JA001 | HIA545JA01 | G17199 | 427094104000 |
| HIGH ISLAND A-545 #JA002 | HIA545JA02 | G17199 | 427094112401 |
| HIGH ISLAND A-545 #JA003 | HIA545JA03 | G17199 | 427094113700 |
| HIGH ISLAND A-572 #A003 ST1 | HIA572A031 | G02392 | 427094012901 |
| HIGH ISLAND A-572(573)A014 | HIA572A140 | G02392 | 427094034100 |
| HIGH ISLAND A-573 #006 | HIA5730060 | G02393 | 427094053700 |
| HIGH ISLAND A-573 #A001 ST2 | HIA573A012 | G02393 | 427094007102 |
| HIGH ISLAND A-573 #A002 ST3 | HIA573A023 | G02393 | 427094013803 |
| HIGH ISLAND A-573 #A004 | HIA573A040 | G02393 | 427094015000 |
| HIGH ISLAND A-573 #A005 ST1 | HIA573A051 | G02393 | 427094015501 |
| HIGH ISLAND A-573 #A008 | HIA573A080 | G02393 | 427094018000 |
| HIGH ISLAND A-573 #A010 | HIA573A100 | G02393 | 427094020500 |
| HIGH ISLAND A-573 #A015 | HIA573A150 | G02393 | 427094034200 |
| HIGH ISLAND A-573 #A016 | HIA573A160 | G02393 | 427094034300 |
| HIGH ISLAND A-573 #A017 | HIA573A170 | G02393 | 427094036500 |
| HIGH ISLAND A-573 #A019 ST1 | HIA573A191 | G02393 | 427094038001 |
| HIGH ISLAND A-573 #B001 | HIA573B010 | G02393 | 427094012800 |
| HIGH ISLAND A-573 #B002 | HIA573B020 | G02393 | 427094014100 |
| HIGH ISLAND A-573 #B005 | HIA573B050 | G02393 | 427094016400 |
| HIGH ISLAND A-573 #B006 | HIA573B060 | G02393 | 427094017000 |
| HIGH ISLAND A-573 #B008 | HIA573B080 | G02393 | 427094017900 |
| HIGH ISLAND A-573 #B010 | HIA573B100 | G02393 | 427094021100 |
| HIGH ISLAND A-573 #B012 | HIA573B120 | G02393 | 427094022700 |
| HIGH ISLAND A-573 #E007 | HIA573E070 | G02393 | 427094098200 |
| HIGH ISLAND A-573 #E012 | HIA573E120 | G02393 | 427094115000 |
| HIGH ISLAND A-573 #F007 | HIA573F070 | G02393 | 427114061200 |
| HIGH ISLAND A-573 #F009 | HIA573F090 | G02393 | 427114062000 |
| HIGH ISLAND A-573 #F016 ST5 | HIA573F165 | G02393 | 427114066805 |
| HIGH ISLAND A-573 #F018 ST1 | HIA573F181 | G02393 | 427114067301 |
| HIGH ISLAND A-573 #F022 | HIA573F220 | G02393 | 427114068400 |
| HIGH ISLAND A-573 #F023 ST2 | HIA573F232 | G02393 | 427114069302 |
| HIGH ISLAND A-581 #D004 | HIA581D040 | G18959 | 427094112200 |
| HIGH ISLAND A-582 #C001 | HIA582C010 | G02719 | 427094061500 |
| HIGH ISLAND A-582 #C002 | HIA582C020 | G02719 | 427094061900 |
| HIGH ISLAND A-582 #C003 | HIA582C030 | G02719 | 427094058000 |
| HIGH ISLAND A-582 #C006 | HIA582C060 | G02719 | 427094063400 |
| HIGH ISLAND A-582 #C007 | HIA582C070 | G02719 | 427094063900 |
| HIGH ISLAND A-582 #C010 | HIA582C100 | G02719 | 427094070200 |
| HIGH ISLAND A-582 #C011 | HIA582C110 | G02719 | 427094071400 |
| HIGH ISLAND A-582 #C012 | HIA582C120 | G02719 | 427094074900 |
| HIGH ISLAND A-582 #C013 | HIA582C130 | G02719 | 427094072700 |
| HIGH ISLAND A-582 #C014 | HIA582C140 | G02719 | 427094073800 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-582 #C015 | HIA582C150 | G02719 | 427094075800 |
| HIGH ISLAND A-582 #C019 | HIA582C190 | G02719 | 427094108200 |
| HIGH ISLAND A-582 #D002 ST1 | HIA582D021 | G02719 | 427094110801 |
| HIGH ISLAND A-582 #D003 ST | HIA582D031 | G02719 | 427094111401 |
| HIGH ISLAND A-582 #D005 | HIA582D050 | G02719 | 427094114300 |
| HIGH ISLAND A-582 #D006 | HIA582D060 | G02719 | 427094114700 |
| HIGH ISLAND A-595 #D001 ST2 | HIA595D1D2 | G02721 | 427094055302 |
| HIGH ISLAND A-595 #D003 | HIA595D03 | G02721 | 427094058500 |
| HIGH ISLAND A-595 #D005 | HIA595D050 | G02721 | 427094092900 |
| HIGH ISLAND A-595 #D006 | HIA595D063 | G02721 | 427094063205 |
| HIGH ISLAND A-595 #D010 | HIA595D100 | G02721 | 427094070500 |
| HIGH ISLAND A-595 #D012 | HIA595D120 | G02721 | 427094077000 |
| HIGH ISLAND A-595 #D017 ST2 | HIA595D172 | G02721 | 427094083702 |
| HIGH ISLAND A-595 #D018 | HIA595D181 | G02721 | 427094093501 |
| HIGH ISLAND A-595 #E011 | HIA595E110 | G02721 | 427094114501 |
| HIGH ISLAND A-596 #B014 | HIA596B140 | G02722 | 427094025800 |
| HIGH ISLAND A-596 #D002 | HIA596D020 | G02722 | 427094056901 |
| HIGH ISLAND A-596 #D004 | HIA596D040 | G02722 | 427094060500 |
| HIGH ISLAND A-596 #D007 ST4 | HIA596D074 | G02722 | 427094064304 |
| HIGH ISLAND A-596 #D008 ST1 | HIA596D081 | G02722 | 427094067001 |
| HIGH ISLAND A-596 #D009 | HIA596D090 | G02722 | 427094068400 |
| HIGH ISLAND A-596 #D011 | HIA596D110 | G02722 | 427094075700 |
| HIGH ISLAND A-596 #D013 ST2 | HIA596D132 | G02722 | 427094079502 |
| HIGH ISLAND A-596 #D014 | HIA596D140 | G02722 | 427094080100 |
| HIGH ISLAND A-596 #D016 | HIA596D160 | G02722 | 427094082400 |
| HIGH ISLAND A-596 #E005 | HIA596E050 | G02722 | 427094085900 |
| HIGH ISLAND A-596 #E008 | HIA596E080 | G02722 | 427094112801 |
| HIGH ISLAND A-596 #E009 | HIA596E090 | G02722 | 427094114200 |
| MAIN PASS 077 #A001 | MP077A0100 | G04481 | 177254033800 |
| MAIN PASS 077 #A002 | MP077A0201 | G04481 | 177254043101 |
| MAIN PASS 077 #A003 | MP077A0300 | G04481 | 177254036100 |
| MAIN PASS 077 #A004 | MP077A0400 | G04481 | 177254036900 |
| MAIN PASS 077 #A005 | MP077A0500 | G04481 | 177254038000 |
| MAIN PASS 077 #A006 ST2 | MP077A0602 | G04481 | 177254036402 |
| MAIN PASS 077 #A010 | MP077A1000 | G04481 | 177254039600 |
| MAIN PASS 077 #A011 | MP077A1100 | G04481 | 177254042400 |
| MAIN PASS 077 #A012 | MP077A1200 | G04481 | 177254039700 |
| MAIN PASS 077 #A013 | MP077A1300 | G04481 | 177254044900 |
| MAIN PASS 077 #A014 | MP077A1400 | G04481 | 177254044500 |
| MAIN PASS 077 #A015 | MP077A1501 | G04481 | 177254045101 |
| MAIN PASS 077 #A016 | MP077A1600 | G04481 | 177254045900 |
| MAIN PASS 077 #A017 | MP077A1700 | G04481 | 177254046200 |
| MAIN PASS 077 #A018 | MP077A1800 | G04481 | 177254046800 |
| MAIN PASS 077 #A019 | MP077A1900 | G04481 | 177254048200 |
| MAIN PASS 077 #A020 | MP077A2001 | G04481 | 177254048501 |
| MAIN PASS 077 #A021 ST | MP077A2100 | G04481 | 177254067002 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 077 #A022 | MP077A2201 | G04481 | 177254067401 |
| MAIN PASS 077 #A023 | MP077A23 | G04481 | 177254067601 |
| MAIN PASS 077 #A07 | MP077A0700 | G04481 | 177254041000 |
| MAIN PASS 077 #A08 | MP077A0800 | G04481 | 177254038200 |
| MAIN PASS 077 #A09 | MP077A0900 | G04481 | 177254039000 |
| MAIN PASS 091 #A001 | MP091A0100 | G14576 | 177254060600 |
| MAIN PASS 091 #A002 | MP091A0200 | G14576 | 177254062200 |
| MAIN PASS 091 #A003 | MP091A0300 | G14576 | 177254065000 |
| MAIN PASS 140 #A001 | MP140A0100 | G02193 | 177254006400 |
| MAIN PASS 140 #A002 | MP140A0200 | G02193 | 177254007700 |
| MAIN PASS 140 #A003 | MP140A0300 | G02193 | 177254007800 |
| MAIN PASS 140 #A004 | MP140A0400 | G02193 | 177254008200 |
| MAIN PASS 140 #A005 ST1 | MP140A0501 | G02193 | 177254008301 |
| MAIN PASS 140 #A008 ST2 | MP140A0802 | G02193 | 177254009202 |
| MAIN PASS 140 #A009 | MP140A0900 | G02193 | 177254009400 |
| MAIN PASS 140 #A010 ST2 | MP140A1002 | G02193 | 177254009502 |
| MAIN PASS 140 #A011 | MP140A1100 | G02193 | 177254010000 |
| MAIN PASS 140 #A012 ST2 | MP140A1202 | G02193 | 177254010102 |
| MAIN PASS 140 #A013 ST1 | MP140A1301 | G02193 | 177254010401 |
| MAIN PASS 140 #A014 | MP140A1400 | G02193 | 177254010500 |
| MAIN PASS 140 #A015 | MP140A1500 | G02193 | 177254010600 |
| MAIN PASS 140 #A016 ST3 | MP140A1603 | G02193 | 177254008603 |
| MAIN PASS 140 #A017 | MP140A1700 | G02193 | 177254011000 |
| MAIN PASS 140 #A018 ST3 | MP140A1803 | G02193 | 177254008803 |
| MAIN PASS 140 #A020 | MP140A2000 | G02193 | 177254065700 |
| MAIN PASS 140 #A021 | MP140A2100 | G02193 | 177254065500 |
| MAIN PASS 140 #B001 | MP140B0100 | G02193 | 177254006600 |
| MAIN PASS 140 #B003 ST1 | MP140B0301 | G02193 | 177254008001 |
| MAIN PASS 140 #B004 ST3 | MP140B0403 | G02193 | 177254008103 |
| MAIN PASS 140 #B007 ST1 | MP140B0701 | G02193 | 177254009001 |
| MAIN PASS 140 #B008 ST2 | MP140B0802 | G02193 | 177254009102 |
| MAIN PASS 140 #B011 ST1 | MP140B1101 | G02193 | 177254009801 |
| MAIN PASS 140 #B012 ST2 | MP140B1202 | G02193 | 177254008902 |
| MAIN PASS 140 #B013 | MP140B1300 | G02193 | 177254010200 |
| MAIN PASS 140 #B014 ST | MP140B1401 | G02193 | 177254010301 |
| MAIN PASS 140 #B015 ST2 | MP140B1502 | G02193 | 177254010702 |
| MAIN PASS 140 #B017 | MP140B1701 | G02193 | 177254010901 |
| MAIN PASS 140 #B018 | MP140B1800 | G02193 | 177254062600 |
| MAIN PASS 140 #B019 | MP140B1900 | G02193 | 177254063000 |
| MAIN PASS 140 #B020 | MP140B2000 | G02193 | 177254063100 |
| MAIN PASS 140 #B021 ST | MP140B2101 | G02193 | 177254073301 |
| MAIN PASS 140 #B022 | MP140B2200 | G02193 | 177254077300 |
| MAIN PASS 140 #B023 | MP140B2300 | G02193 | 177254077500 |
| MAIN PASS 152 #A015 | MP152A1500 | G01966 | 177232005300 |
| MAIN PASS 152 #A020B | MP152A20B0 | G01966 | 177232006200 |
| MAIN PASS 152 #B004A | MP152B04A0 | G01966 | 177254000900 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 152 #B012 | MP152B1200 | G01966 | 177254002700 |
| MAIN PASS 152 #B015 | MP152B1500 | G01966 | 177254002300 |
| MAIN PASS 152 #B020 ST | MP152B2002 | G01966 | 177254002802 |
| MAIN PASS 152 #B022A | MP152B22A0 | G01966 | 177254003500 |
| MAIN PASS 152 #B030 | MP152B3000 | G01966 | 177254004500 |
| MAIN PASS 152 #B031A | MP152B31A0 | G01966 | 177254004700 |
| MAIN PASS 152 #C002 | MP152C0200 | G01966 | 177254040800 |
| MAIN PASS 152 #C005 | MP152C0500 | G01966 | 177254042000 |
| MAIN PASS 152 #C006 | MP152C0600 | G01966 | 177254042100 |
| MAIN PASS 152 #C008 | MP152C0800 | G01966 | 177254042500 |
| MAIN PASS 152 #C011 | MP152C1100 | G01966 | 177254043200 |
| MAIN PASS 152 #C031 | MP152C3100 | G01966 | 177254048100 |
| MAIN PASS 152 #C032 | MP152C3200 | G01966 | 177254049000 |
| MAIN PASS 153 #A017B | MP153A17B0 | G01967 | 177232005400 |
| MAIN PASS 153 #B001 | MP153B0100 | G01967 | 177252010300 |
| MAIN PASS 153 #B003A | MP153B03A0 | G01967 | 177254000302 |
| MAIN PASS 153 #B010 ST2 | MP153B1002 | G01967 | 177254001803 |
| MAIN PASS 153 #B017 | MP153B1700 | G01967 | 177254002500 |
| MAIN PASS 153 #B018 | MP153B1800 | G01967 | 177254002900 |
| MAIN PASS 153 #B025 | MP153B2500 | G01967 | 177254004000 |
| MAIN PASS 153 #B027 | MP153B2700 | G01967 | 177254004200 |
| MAIN PASS 153 #C009 | MP153C0900 | G01967 | 177254042701 |
| MAIN PASS 153 #C012 | MP153C1200 | G01967 | 177254043300 |
| MAIN PASS 153 #C013 ST | MP153C1301 | G01967 | 177254043501 |
| MAIN PASS 153 #C014 | MP153C1400 | G01967 | 177254043902 |
| MAIN PASS 153 #C017 | MP153C1700 | G01967 | 177254044200 |
| MAIN PASS 153 #C018 | MP153C1800 | G01967 | 177254044300 |
| MAIN PASS 153 #C020 | MP153C2000 | G01967 | 177254045400 |
| MAIN PASS 153 #C021 | MP153C2100 | G01967 | 177254045500 |
| MAIN PASS 153 #C024 | MP153C2400 | G01967 | 177254046100 |
| MAIN PASS 153 #C026 | MP153C2600 | G01967 | 177254046900 |
| MAIN PASS 153 #C027 | MP153C2700 | G01967 | 177254047400 |
| MAIN PASS 153 #C028 | MP153C2800 | G01967 | 177254048400 |
| MAIN PASS 153 #C029 | MP153C2901 | G01967 | 177254047501 |
| MAIN PASS 153 #C030 | MP153C3002 | G01967 | 177254047802 |
| MAIN PASS 259 #001 | MP25900101 | G07827 | 177244048801 |
| MAIN PASS 259 #002 | MP25900200 | G07827 | 177244050000 |
| MAIN PASS 259 #003 | MP25900300 | G07827 | 608164015800 |
| MAIN PASS 259 #004 | MP25900400 | G07827 | 177244050500 |
| MAIN PASS 259 #005 | MP25900500 | G07827 | 608164016400 |
| MAIN PASS 259 #A001 | MP259A0100 | G07827 | 177244069700 |
| MAIN PASS 259 #A002 | MP259A0200 | G07827 | 177244070200 |
| MAIN PASS 259 #A003 | MP259A0300 | G07827 | 177244070800 |
| MAIN PASS 259 #A004 | MP259A0400 | G07827 | 177244071000 |
| MAIN PASS 259 #A005 | MP259A0500 | G07827 | 177244071300 |
| MAIN PASS 259 #A006 | MP259A0600 | G07827 | 177244071600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 259 #A007 | MP259A0700 | G07827 | 177244071800 |
| MAIN PASS 259 #A008 ST1 | MP259A0801 | G07827 | 177244072401 |
| MAIN PASS 259 #A010 ST1 | MP259A1001 | G07827 | 177244074601 |
| MAIN PASS 259 #A011 ST1 | MP259A1101 | G07827 | 177244074901 |
| MAIN PASS 259 #A012 ST1 | MP259A1201 | G07828 | 177244076801 |
| MAIN PASS 275 #A001 ST1 | MP275A0101 | G15395 | 177244085701 |
| MAIN PASS 275 #A002 ST1 | MP275A0201 | G15395 | 177244086101 |
| MAIN PASS 275 #A003 | MP275A0300 | G15395 | 177244093300 |
| MAIN PASS 289 #013 | MP28901300 | G01666 | 177244004700 |
| MAIN PASS 289 #B001 | MP289B0100 | G01666 | 177240007800 |
| MAIN PASS 289 #B005 | MP289B0501 | G01666 | 177240011701 |
| MAIN PASS 289 #B014A | MP289B1400 | G01666 | 177242000100 |
| MAIN PASS 289 #B015 | MP289B1500 | G01666 | 177240014800 |
| MAIN PASS 289 #B016 WIW | MP289B1600 | G01666 | 177242003100 |
| MAIN PASS 289 #B018 WIW | MP289B1800 | G01666 | 177242003200 |
| MAIN PASS 289 #C001 | MP289C0100 | G01666 | 177244048100 |
| MAIN PASS 289 #C002 | MP289C0200 | G01666 | 177244047600 |
| MAIN PASS 289 #C003A | MP289C0300 | G01666 | 177244047800 |
| MAIN PASS 289 #C004A | MP289C0402 | G01666 | 177244047902 |
| MAIN PASS 289 #C005 | MP289C0500 | G01666 | 177244048000 |
| MAIN PASS 289 #C007 | MP289C0700 | G01666 | 177244048400 |
| MAIN PASS 289 #C008 | MP289C0800 | G01666 | 177244048500 |
| MAIN PASS 289 #C009 | MP289C0901 | G01666 | 177244048301 |
| MAIN PASS 289 #C010 | MP289C1000 | G01666 | 177244048200 |
| MAIN PASS 289 #C011 | MP289C1100 | G01666 | 177244048700 |
| MAIN PASS 289 #C012 | MP289C1203 | G01666 | 177244049203 |
| MAIN PASS 289 #C013 WSW | MP289C1300 | G01666 | 177244052400 |
| MAIN PASS 289 #C014 | MP289C1400 | G01666 | 177244049900 |
| MAIN PASS 289 #C015 | MP289C1500 | G01666 | 177244048900 |
| MAIN PASS 289 #C017 | MP289C1700 | G01666 | 177244053900 |
| MAIN PASS 289 #C019 | MP289C1900 | G01666 | 177244049400 |
| MAIN PASS 289 #C020 | MP289C2000 | G01666 | 177244050100 |
| MAIN PASS 289 #C021 | MP289C2100 | G01666 | 177244049100 |
| MAIN PASS 289 #C022 WIW | MP289C2200 | G01666 | 177244049300 |
| MAIN PASS 289 #C023 | MP289C2301 | G01666 | 177244053801 |
| MAIN PASS 289 #C024 | MP289C2401 | G01666 | 177244051901 |
| MAIN PASS 289 #C025 WIW | MP289C2500 | G01666 | 177244051400 |
| MAIN PASS 289 #C026 | MP289C2600 | G01666 | 177244052700 |
| MAIN PASS 289 #C027 | MP289C2700 | G01666 | 177244053100 |
| MAIN PASS 289 #C028 | MP289C2801 | G01666 | 177244051501 |
| MAIN PASS 289 #C029D | MP289C29D1 | G01666 | 177244051801 |
| MAIN PASS 289 #C030 | MP289C3000 | G01666 | 177244053300 |
| MAIN PASS 289 #C031 | MP289C3100 | G01666 | 177244090200 |
| MAIN PASS 289 #C032 | MP289C3200 | G01666 | 177244090300 |
| MAIN PASS 290 #C006 | MP290C0600 | G01667 | 177244050400 |
| MAIN PASS 290 #C016 | MP290C1600 | G01667 | 177244051000 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 290 #C018 ST2 | MP290C1802 | G01667 | 177244051302 |
| MAIN PASS 295 #001 | MP29500100 | G32263 | 177244097001 |
| MAIN PASS 295 #003 | MP29500300 | G32263 | 177244097500 |
| MAIN PASS 296 #B001 | MP296B0100 | G01673 | 177244022300 |
| MAIN PASS 296 #B003 | MP296B0300 | G01673 | 177244022700 |
| MAIN PASS 296 #B004 | MP296B0400 | G01673 | 177244022900 |
| MAIN PASS 296 #B008 | MP296B0800 | G01673 | 177244023600 |
| MAIN PASS 296 #B013 ST | MP296B1301 | G01673 | 177244024501 |
| MAIN PASS 296 #B014 ST1 | MP296B1401 | G01673 | 177244024401 |
| MAIN PASS 296 #B018 | MP296B1800 | G01673 | 177244025300 |
| MAIN PASS 296 #B019 ST2 | MP296B1902 | G01673 | 177244027302 |
| MAIN PASS 296 #C001 | MP296C0100 | G01673 | 177244016100 |
| MAIN PASS 296 #C002 | MP296C0200 | G01673 | 177244021100 |
| MAIN PASS 296 #C004 ST3 | MP296C0403 | G01673 | 177244021403 |
| MAIN PASS 296 #C005 | MP296C0500 | G01673 | 177244021700 |
| MAIN PASS 296 #C006 | MP296C0603 | G01673 | 177244021503 |
| MAIN PASS 296 #C007A | MP296C07A0 | G01673 | 177244021600 |
| MAIN PASS 296 #C013 | MP296C1301 | G01673 | 177244022401 |
| MAIN PASS 296 #C014 | MP296C1402 | G01673 | 177244030702 |
| MAIN PASS 296 #C015 | MP296C1500 | G01673 | 177244031300 |
| MAIN PASS 296 #C018 ST | MP296C1801 | G01673 | 177244089101 |
| MAIN PASS 296 #C019 | MP296C1900 | G01673 | 177244089400 |
| MAIN PASS 300 #B002 | MP300B0200 | G01317 | 177244067200 |
| MAIN PASS 301 #A002 | MP301A0200 | G04486 | 177244034600 |
| MAIN PASS 301 #A003 | MP301A0300 | G04486 | 177244035101 |
| MAIN PASS 301 #A004 | MP301A0400 | G04486 | 177244039501 |
| MAIN PASS 301 #B001 | MP301B0100 | G04486 | 177244063000 |
| MAIN PASS 302 #B004 | MP302B0400 | G32264 | 177244018801 |
| MAIN PASS 302 #B019 | MP302B1900 | G32264 | 177244097401 |
| MAIN PASS 303 #A005D (MP310) | MP303A05D1 | G04253 | 177244030600 |
| MAIN PASS 303 #A017 | MP303A1700 | G04253 | 177244094700 |
| MAIN PASS 303 #B005 | MP303B0500 | G04253 | 177244023000 |
| MAIN PASS 303 #B007 | MP303B0700 | G04253 | 177244023400 |
| MAIN PASS 303 #B009 | MP303B0900 | G04253 | 177244023800 |
| MAIN PASS 303 #B015 | MP303B1500 | G04253 | 177244024800 |
| MAIN PASS 304 #A007 | MP304A0700 | G03339 | 177244030800 |
| MAIN PASS 304 #A009 | MP304A0900 | G03339 | 177244030500 |
| MAIN PASS 304 #B012 | MP304B1200 | G03339 | 177244024300 |
| MAIN PASS 308 #A001 | MP308A0100 | G32265 | 177244095600 |
| MAIN PASS 308 #A002 | MP308A0200 | G32265 | 177244095700 |
| MAIN PASS 308 #A003 | MP308A0300 | G32265 | 177244096500 |
| MAIN PASS 308 #A004 ST | MP308A0401 | G32265 | 177244096201 |
| MAIN PASS 308 #A006 | MP308A0600 | G32265 | 177244095900 |
| MAIN PASS 308 #A007 | MP308A0700 | G32265 | 177244096700 |
| MAIN PASS 308 #A008 | MP308A0801 | G32265 | 177244096601 |
| MAIN PASS 309 #A005 | MP309A0500 | G08760 | 177244096301 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 309 #A009 | MP309A0900 | G08760 | 177244096900 |
| MAIN PASS 309 #JA001 | MP309JA010 | G08760 | 177244063500 |
| MAIN PASS 309 #JA002 | MP309JA200 | G08760 | 177244064600 |
| MAIN PASS 309 #JA006 | MP309JA600 | G08760 | 177244065100 |
| MAIN PASS 309 #JA007 | MP309JA700 | G08760 | 177244065000 |
| MAIN PASS 309 #JA008 | MP309JA800 | G08760 | 177244065200 |
| MAIN PASS 309 #JA010 | MP309JA100 | G08760 | 177244072700 |
| MAIN PASS 309 #JA05A | MP309JA5A0 | G08760 | 177244064800 |
| MAIN PASS 310 #A001 | MP310A0100 | G04126 | 177244028700 |
| MAIN PASS 310 #A002 ST2 | MP310A0202 | G04126 | 177244029502 |
| MAIN PASS 310 #A003 | MP310A0301 | G04126 | 177244029401 |
| MAIN PASS 310 #A004 | MP310A0400 | G04126 | 177244030000 |
| MAIN PASS 310 #A006 | MP310A0603 | G04126 | 177244030103 |
| MAIN PASS 310 #A008A | MP310A0800 | G04126 | 177244029700 |
| MAIN PASS 310 #A010 | MP310A1000 | G04126 | 177244029800 |
| MAIN PASS 310 #A011 ST | MP310A1102 | G04126 | 177244041702 |
| MAIN PASS 310 #A012 | MP310A1200 | G04126 | 177244041900 |
| MAIN PASS 310 #A013 | MP310A1300 | G04126 | 177244042400 |
| MAIN PASS 310 #A014 | MP310A1401 | G04126 | 177244042601 |
| MAIN PASS 310 #A015 | MP310A1500 | G04126 | 177244042500 |
| MAIN PASS 310 #A016 ST | MP310A1601 | G04126 | 177244043301 |
| MAIN PASS 310 #JA009 | MP310JA902 | G04126 | 177244065602 |
| MAIN PASS 311 #A001 | MP311A0100 | G02213 | 177244013600 |
| MAIN PASS 311 #A002 | MP311A0200 | G02213 | 177244013900 |
| MAIN PASS 311 #A003 | MP311A0300 | G02213 | 177244014100 |
| MAIN PASS 311 #A005 | MP311A0500 | G02213 | 177244014500 |
| MAIN PASS 311 #A006 | MP311A0600 | G02213 | 177244014800 |
| MAIN PASS 311 #A007 | MP311A0700 | G02213 | 177244014900 |
| MAIN PASS 311 #A008 | MP311A0800 | G02213 | 177244015200 |
| MAIN PASS 311 #A009 | MP311A0900 | G02213 | 177244015300 |
| MAIN PASS 311 #A010 | MP311A1000 | G02213 | 177244015500 |
| MAIN PASS 311 #A011A | MP311A1100 | G02213 | 177244016600 |
| MAIN PASS 311 #A012 | MP311A1200 | G02213 | 177244016300 |
| MAIN PASS 311 #A013 | MP311A1301 | G02213 | 177244017202 |
| MAIN PASS 311 #A014 | MP311A1400 | G02213 | 177244017800 |
| MAIN PASS 311 #A015 | MP311A1500 | G02213 | 177244017600 |
| MAIN PASS 311 #A016 | MP311A1600 | G02213 | 177244018000 |
| MAIN PASS 311 #A017 | MP311A1700 | G02213 | 177244017900 |
| MAIN PASS 311 #A020 ST | MP311A2001 | G02213 | 177244089301 |
| MAIN PASS 311 #A024 | MP311A2400 | G02213 | 177244096400 |
| MAIN PASS 311 #B001 | MP311B0100 | G02213 | 177244015900 |
| MAIN PASS 311 #B002D | MP311B02D0 | G02213 | 177244018300 |
| MAIN PASS 311 #B006 | MP311B0600 | G02213 | 177244019200 |
| MAIN PASS 311 #B007 | MP311B0700 | G02213 | 177244019300 |
| MAIN PASS 311 #B008 | MP311B0801 | G02213 | 177244019001 |
| MAIN PASS 311 #B009 | MP311B0900 | G02213 | 177244019400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MAIN PASS 311 #B010 | MP311B1000 | G02213 | 177244019500 |
| MAIN PASS 311 #B012 | MP311B1200 | G02213 | 177244020001 |
| MAIN PASS 311 #B013D | MP311B13D0 | G02213 | 177244035600 |
| MAIN PASS 311 #B014 | MP311B1401 | G02213 | 177244036201 |
| MAIN PASS 311 #B015 | MP311B1500 | G02213 | 177244036700 |
| MAIN PASS 311 #B017 | MP311B1700 | G02213 | 177244036400 |
| MAIN PASS 311 #B018 ST | MP311B1801 | G02213 | 177244089201 |
| MAIN PASS 312 #A021 | MP312A2100 | G16520 | 177244093200 |
| MAIN PASS 312 #A022 | MP312A2200 | G16520 | 177244093400 |
| MAIN PASS 314 #A023 (MP311A) | MP314A2300 | G33693 | 177244096100 |
| MAIN PASS 315 #JA003 ST | MP315JA302 | G08467 | 177244064502 |
| MAIN PASS 315 #JA004 | MP315JA400 | G08467 | 177244064700 |
| MAIN PASS 315 #SS002 | MP31500200 | G08467 | 177244095500 |
| MATAGORDA IS 519 #L001 | MI519L1SL0 | MF-79413 | 427033030000 |
| MATAGORDA IS 519 #L002 | MI519L2SL0 | MF-79413 | 427033034000 |
| MATAGORDA IS 519 #L003 | MI519L3SL0 | MF-79413 | 427033039500 |
| MATAGORDA IS 519 #L004 | MI519L4SL0 | MF-79413 | 427033039700 |
| MATAGORDA IS 622 #C001 | MI622C01 | G05000 | 427034013800 |
| MATAGORDA IS 622 #C002 ST1 | MI622C0201 | G05000 | 427034018901 |
| MATAGORDA IS 622 #C008 | MI622C0800 | G05000 | 427034052700 |
| MATAGORDA IS 622 #D001 | MI622D0100 | G05000 | 427034048400 |
| MATAGORDA IS 622 #D003 | MI622D0300 | G05000 | 427034053000 |
| MATAGORDA IS 622 #D004 | MI622D0400 | G05000 | 427034054700 |
| MATAGORDA IS 622 #G002 | MI622G0200 | G05000 | 427034053700 |
| MATAGORDA IS 623 #B001 | MI623B0100 | G03088 | 427034010600 |
| MATAGORDA IS 623 #B003 ST1 | MI623B0301 | G03088 | 427034014401 |
| MATAGORDA IS 623 #B006 | MI623B0600 | G03088 | 427034018400 |
| MATAGORDA IS 623 #B008 | MI623B0800 | G03088 | 427034051300 |
| MATAGORDA IS 623 #C007 | MI623C0700 | G03088 | 427034052400 |
| MATAGORDA IS 623 #F002 | MI623F0200 | G03088 | 427034051100 |
| MATAGORDA IS 623 #F003 | MI623F0300 | G03088 | 427034053800 |
| MATAGORDA IS 623 #H001 (#6) | MI623H0100 | G03088 | 427034058100 |
| MATAGORDA IS 623 #H002 (#7) | MI623H0200 | G03088 | 427034058200 |
| MATAGORDA IS 623(622) #C004 | MI623C0400 | G05000 | 427034021400 |
| MATAGORDA IS 635 #F001 | MI635F0100 | G06043 | 427034048800 |
| MISSISSIPPI CANYON 065 #B004 | MC065B0400 | G21742 | 608174106300 |
| MISSISSIPPI CANYON 065 #B015 | MC065B1500 | G21742 | 608174111500 |
| MISSISSIPPI CANYON 108 #A027 | MC108A2703 | G09777 | 608174045703 |
| MISSISSIPPI CANYON 108 #A032 | MC108A3203 | G09777 | 608174088503 |
| MISSISSIPPI CANYON 110 #001 | MC1100100 | G18192 | 608174060500 |
| MISSISSIPPI CANYON 110 #A009 | MC110A0900 | G18192 | 608174042501 |
| MISSISSIPPI CANYON 110 #A011ST | MC110A1101 | G18192 | 608174042600 |
| MISSISSIPPI CANYON 110 #A031 | MC110A3100 | G18192 | 608174087900 |
| MISSISSIPPI CANYON 311 #A001ST | MC311A0102 | G02968 | 608174006502 |
| MISSISSIPPI CANYON 311 #A005 | MC311A0500 | G02968 | 608174011700 |
| MISSISSIPPI CANYON 311 #A006ST | MC311A0601 | G02968 | 608174010901 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| MISSISSIPPI CANYON 311 #A011ST | MC311A1101 | G02968 | 608174014201 |
| MISSISSIPPI CANYON 311 #A012 | MC311A1200 | G02968 | 608174015000 |
| MISSISSIPPI CANYON 311 #A013 | MC311A1300 | G02968 | 608174015600 |
| MISSISSIPPI CANYON 311 #A014 | MC311A1400 | G02968 | 608174016200 |
| MISSISSIPPI CANYON 311 #A015ST | MC311A1501 | G02968 | 608174017801 |
| MISSISSIPPI CANYON 311 #A016 | MC311A1600 | G02968 | 608174016300 |
| MISSISSIPPI CANYON 311 #A020ST | MC311A2001 | G02968 | 608174033901 |
| MISSISSIPPI CANYON 311 #A022ST | MC311A2201 | G02968 | 608174034801 |
| MISSISSIPPI CANYON 311 #A024ST | MC311A2401 | G02968 | 608174035301 |
| MOBILE 826 #001 | MO826D0100 | G26176 | 608154014900 |
| NORTH PADRE IS 969 #A001 | PN969A0100 | G05953 | 427134003000 |
| NORTH PADRE IS 969 #A004 | PN969A0400 | G05953 | 427134005600 |
| NORTH PADRE IS 969 #A006 | PN969A0600 | G05953 | 427134005700 |
| NORTH PADRE IS 969 #A007 | PN969A0700 | G05953 | 427134005800 |
| NORTH PADRE IS 969 #JA002 | PN969JA020 | G05953 | 427014003000 |
| NORTH PADRE IS 976 #A002 | PN976A0200 | G05954 | 427134005000 |
| NORTH PADRE IS 976 #A003 | PN976A03 | G05954 | 427134005101 |
| NORTH PADRE IS 976 #A005 | PN976A0500 | G05954 | 427134005500 |
| NORTH PADRE IS 976 #A008 | PN976A0800 | G05954 | 427134005900 |
| NORTH PADRE IS 976 #A009 | PN976A0900 | G05954 | 427134006000 |
| SHIP SHOAL 030 #011 | SS03001100 | 00333 | 177114093000 |
| SHIP SHOAL 030 #013 | SS03001300 | 00333 | 177114109400 |
| SHIP SHOAL 030 #014D | SS030014D0 | 00333 | 177114111900 |
| SHIP SHOAL 030 #A001 | SS030A0100 | 00333 | 177114113000 |
| SHIP SHOAL 032 #024 | SS03202401 | 00335 | 177114131701 |
| SHIP SHOAL 033 #005 | SS03300500 | 00336 | 177114030900 |
| SHIP SHOAL 068 #002 ST1 | SS06800201 | G02917 | 177114096701 |
| SHIP SHOAL 068 #003 | SS06800301 | G02925 | 177114101301 |
| SHIP SHOAL 068 #004 | SS06800402 | G02917 | 177114101802 |
| SHIP SHOAL 068 #005 ST1 | SS06800501 | G02917 | 177114101401 |
| SHIP SHOAL 068 #009 | SS06800900 | G02917 | 177114126000 |
| SHIP SHOAL 068 #010 | SS06801000 | G02917 | 177114135200 |
| SHIP SHOAL 068 #G001 (ORR) | SS068G0100 | G02917 | 177114119400 |
| SHIP SHOAL 068 #G002 | SS068G0200 | G02917 | 177114121200 |
| SHIP SHOAL 091 #A001 | SS091A0100 | G02919 | 177114044300 |
| SHIP SHOAL 091 #A003 | SS091A0300 | G02919 | 177114056800 |
| SHIP SHOAL 091 #A004 ST1 | SS091A0401 | G02919 | 177114062501 |
| SHIP SHOAL 091 #A005 ST1 | SS091A0501 | G02919 | 177114058201 |
| SHIP SHOAL 091 #A006 ST2 | SS091A0602 | G02919 | 177114059202 |
| SHIP SHOAL 091 #B001 ST1 | SS091B0101 | G02919 | 177114066401 |
| SHIP SHOAL 091 #B002 ST1 | SS091B0201 | G02919 | 177114065701 |
| SHIP SHOAL 091 #B003 | SS091B0300 | G02919 | 177114068400 |
| SHIP SHOAL 091 #B004 ST1 | SS091B0401 | G02919 | 177114072101 |
| SHIP SHOAL 091 #B005 | SS091B0500 | G02919 | 177114110800 |
| SHIP SHOAL 105 #007 | SS10500700 | G09614 | 177114130800 |
| SHIP SHOAL 105 #A001 ST1 | SS105A0101 | G09614 | 177114124501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 105 #B004 | SS105B0400 | G09614 | 177114122400 |
| SHIP SHOAL 105 #B006 | SS105B0600 | G09614 | 177114130201 |
| SHIP SHOAL 126 #B001 | SS126B0100 | G12940 | 177114121000 |
| SHIP SHOAL 126 #B002 | SS126B0200 | G12940 | 177114134203 |
| SHIP SHOAL 126 #B003 ST1 | SS126B0301 | G12940 | 177114135401 |
| SHIP SHOAL 129 #A002 ST1 | SS129A0201 | G12941 | 177114117201 |
| SHIP SHOAL 129 #A003 | SS129A0300 | G12941 | 177114120100 |
| SHIP SHOAL 129 #B001 ST1 | SS129B0101 | G12941 | 177114135301 |
| SHIP SHOAL 129 #B002 ST1 | SS129B0201 | G12941 | 177114145501 |
| SHIP SHOAL 129 #L001 | SS129L0100 | G12941 | 177114150000 |
| SHIP SHOAL 129 #L002 | SS129L0200 | G12941 | 177114150300 |
| SHIP SHOAL 145 #E001 | SS145E01 | G34831 | 177114140501 |
| SHIP SHOAL 151 #A001 (ORRI) | SS151A0100 | G15282 | 177114125702 |
| SHIP SHOAL 151 #A002 (ORRI) | SS151A0200 | G15282 | 177114154300 |
| SHIP SHOAL 159 #001 | SS15900100 | G11984 | 177114143701 |
| SHIP SHOAL 169 #BB001 | SS169BB010 | 00820 | 177114048100 |
| SHIP SHOAL 169 #BB002 | SS169BB020 | 00820 | 177114055501 |
| SHIP SHOAL 169 #BB003 | SS169BB030 | 00820 | 177114057800 |
| SHIP SHOAL 169 #BB004 | SS169BB040 | 00820 | 177114056500 |
| SHIP SHOAL 169 #BB005 | SS169BB050 | 00820 | 177114059600 |
| SHIP SHOAL 169 #BB006 | SS169BB060 | 00820 | 177114060101 |
| SHIP SHOAL 169 #C001 | SS169C0100 | 00820 | 177114075600 |
| SHIP SHOAL 169 #C003 | SS169C0300 | 00820 | 177114078500 |
| SHIP SHOAL 169 #C004 | SS169C0400 | 00820 | 177114077400 |
| SHIP SHOAL 169 #C006 | SS169C0600 | 00820 | 177114080201 |
| SHIP SHOAL 169 #C007 | SS169C0700 | 00820 | 177114080601 |
| SHIP SHOAL 169 #C008 | SS169C0800 | 00820 | 177114081300 |
| SHIP SHOAL 169 #C009 | SS169C0900 | 00820 | 177114144400 |
| SHIP SHOAL 169 #C010 | SS169C1000 | 00820 | 177114144800 |
| SHIP SHOAL 169 #G001 | SS169G0100 | 00820 | 177114127400 |
| SHIP SHOAL 169 #G002 | SS169G0200 | 00820 | 177114128500 |
| SHIP SHOAL 169 #G003 | SS169G0300 | 00820 | 177114156600 |
| SHIP SHOAL 175 #A004 | SS175A0400 | G05550 | 177094078900 |
| SHIP SHOAL 176 #001 | SS17600100 | G33646 | 177114155400 |
| SHIP SHOAL 178 #A001 | SS178A0100 | G05551 | 177114076800 |
| SHIP SHOAL 178 #A002A | SS178A0200 | G05551 | 177114080800 |
| SHIP SHOAL 178 #A003 | SS178A0302 | G05551 | 177114081902 |
| SHIP SHOAL 178 #A004 | SS178A0400 | G05551 | 177114082900 |
| SHIP SHOAL 178 #A005 | SS178A0500 | G05551 | 177114082300 |
| SHIP SHOAL 178 #A006 | SS178A0600 | G05551 | 177114113900 |
| SHIP SHOAL 182 #A001 | SS182A0100 | G03998 | 177114059400 |
| SHIP SHOAL 182 #A002 ST1 | SS182A0201 | G03998 | 177114060601 |
| SHIP SHOAL 182 #A003 | SS182A0300 | G03998 | 177114063100 |
| SHIP SHOAL 182 #A004 | SS182A0400 | G03998 | 177114065500 |
| SHIP SHOAL 182 #B001 | SS182B0101 | G03998 | 177114066001 |
| SHIP SHOAL 182 #B002 | SS182B0201 | G03998 | 177114074501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 182 #B003 ST2 | SS182B0402 | G03998 | 177114090502 |
| SHIP SHOAL 182 #B004 | SS182B0400 | G03998 | 177114090800 |
| SHIP SHOAL 182 #B005 | SS182B0500 | G03998 | 177114113600 |
| SHIP SHOAL 182 #B006 | SS182B0600 | G03998 | 177114130500 |
| SHIP SHOAL 182 #C001D ST1 | SS182C01D0 | G03998 | 177114087501 |
| SHIP SHOAL 182 #C002 | SS182C0200 | G03998 | 177114088500 |
| SHIP SHOAL 182 #C003 | SS182C0300 | G03998 | 177114087800 |
| SHIP SHOAL 182 #C004 | SS182C0400 | G03998 | 177114132000 |
| SHIP SHOAL 189 #A001A | SS189A01A0 | G04232 | 177114062000 |
| SHIP SHOAL 189 #A002 | SS189A0201 | G04232 | 177114085301 |
| SHIP SHOAL 189 #A003A | SS189A03A0 | G04232 | 177114085200 |
| SHIP SHOAL 189 #A005 | SS189A0500 | G04232 | 177114088400 |
| SHIP SHOAL 189 #A007 ST2 | SS189A0702 | G04232 | 177114129502 |
| SHIP SHOAL 189 #A008 | SS189A0800 | G04232 | 177114130900 |
| SHIP SHOAL 189 #A009 ST1 | SS189A0901 | G04232 | 177114139801 |
| SHIP SHOAL 189 #A010BP1 | SS189A1001 | G04232 | 177114154701 |
| SHIP SHOAL 189 #A4 (SS210) | SS189A04 | G05204 | 177114086801 |
| SHIP SHOAL 189 #A6 (SS188) | SS189A06 | G05203 | 177114088900 |
| SHIP SHOAL 189 #B001 (ORRI) | SS189B0100 | G04232 | 177114151001 |
| SHIP SHOAL 189 #B002 (ORRI) | SS189B0200 | G04232 | 177114152300 |
| SHIP SHOAL 189 #C001 | SS189C0101 | G04232 | 177114153901 |
| SHIP SHOAL 189 #D001 | SS189D0100 | G04232 | 177114154402 |
| SHIP SHOAL 190 #B001 ST2 | SS190B0103 | G10775 | 177114114803 |
| SHIP SHOAL 190 #B002 | SS190B0200 | G10775 | 177114134700 |
| SHIP SHOAL 193 #A001 ST1 | SS193A0101 | G13917 | 177114112301 |
| SHIP SHOAL 193 #A002 ST1 | SS193A0201 | G13917 | 177114112601 |
| SHIP SHOAL 193 #A003 | SS193A0300 | G13917 | 177114115300 |
| SHIP SHOAL 193 #A004 ST1 | SS193A0401 | G13917 | 177114116001 |
| SHIP SHOAL 193 #A005 ST1 | SS193A0501 | G13917 | 177114117301 |
| SHIP SHOAL 193 #A006 ST5 | SS193A0605 | G13917 | 177114123005 |
| SHIP SHOAL 193 #A007 ST1 | SS193A0701 | G13917 | 177114139501 |
| SHIP SHOAL 193 #M001 | SS193M0100 | G13917 | 177114148500 |
| SHIP SHOAL 194 #A001 | SS194A0100 | G15288 | 177114121300 |
| SHIP SHOAL 194 #A002 ST1 | SS194A0201 | G15288 | 177114121701 |
| SHIP SHOAL 198 #J011 | SS198J1100 | 00593 | 177114147800 |
| SHIP SHOAL 204 #A008 | SS204A0800 | G01520 | 177110083000 |
| SHIP SHOAL 204 #A015 ST1 | SS204A1501 | G01520 | 177112003401 |
| SHIP SHOAL 204 #A016 | SS204A1601 | G01520 | 177112005401 |
| SHIP SHOAL 204 #A020 | SS204A2000 | G01520 | 177112012600 |
| SHIP SHOAL 204 #A024 ST1 | SS204A2401 | G01520 | 177112017701 |
| SHIP SHOAL 204 #A028 ST3 | SS204A2803 | G01520 | 177110071003 |
| SHIP SHOAL 204 #A030A | SS204A30A1 | G01520 | 177114002800 |
| SHIP SHOAL 204 #A031 | SS204A3101 | G01520 | 177110084201 |
| SHIP SHOAL 204 #A034 | SS204A3400 | G01520 | 177114146700 |
| SHIP SHOAL 204 #A035 | SS204A3502 | G01520 | 177114147402 |
| SHIP SHOAL 204 #A036 ST1 | SS204A3603 | G01520 | 177114146803 |

Exhibit I-B

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 206 #E002 | SS206E0201 | G01522 | 177114118101 |
| SHIP SHOAL 206 #E003 | SS206E0301 | G01522 | 177114118201 |
| SHIP SHOAL 206 #E004 | SS206E0400 | G01522 | 177114141800 |
| SHIP SHOAL 206 #E005 | SS206E0500 | G01522 | 177114142000 |
| SHIP SHOAL 207 #A003 ST1 | SS207A0301 | G01523 | 177110072801 |
| SHIP SHOAL 207 #A004B | SS207A04B0 | G01523 | 177110075500 |
| SHIP SHOAL 207 #A006D | SS207A06D0 | G01523 | 177110078200 |
| SHIP SHOAL 207 #A008B | SS207A08B0 | G01523 | 177110080700 |
| SHIP SHOAL 207 #A009 | SS207A0900 | G01523 | 177110082400 |
| SHIP SHOAL 207 #A010D | SS207A10D0 | G01523 | 177110083900 |
| SHIP SHOAL 207 #A013 | SS207A1300 | G01523 | 177112002500 |
| SHIP SHOAL 207 #A015 ST1 | SS207A1501 | G01523 | 177112010601 |
| SHIP SHOAL 207 #A016 ST1 | SS207A1601 | G01523 | 177112011401 |
| SHIP SHOAL 207 #A018 | SS207A1800 | G01523 | 177112005000 |
| SHIP SHOAL 207 #A019ST | SS207A1901 | G01523 | 177114009401 |
| SHIP SHOAL 207 #A020 | SS207A2000 | G01523 | 177114010300 |
| SHIP SHOAL 207 #A022 ST1 | SS207A2201 | G01523 | 177114011301 |
| SHIP SHOAL 207 #A023B | SS207A23B0 | G01523 | 177114013500 |
| SHIP SHOAL 207 #A024 | SS207A2400 | G01523 | 177114014300 |
| SHIP SHOAL 207 #A025 | SS207A2500 | G01523 | 177114015500 |
| SHIP SHOAL 207 #A026 | SS207A2601 | G01523 | 177112001101 |
| SHIP SHOAL 207 #A027 | SS207A2701 | G01523 | 177110079401 |
| SHIP SHOAL 207 #A028 | SS207A2801 | G01523 | 177110077301 |
| SHIP SHOAL 207 #A029 ST | SS207A2901 | G01523 | 177112001901 |
| SHIP SHOAL 207 #A030 | SS207A3001 | G01523 | 177110071501 |
| SHIP SHOAL 207 #A031 ST2 | SS207A3102 | G01523 | 177114117702 |
| SHIP SHOAL 207 #A032 | SS207A3201 | G01523 | 177114119701 |
| SHIP SHOAL 207 #A033 ST1 | SS207A3301 | G01523 | 177114121901 |
| SHIP SHOAL 207 #A034 | SS207A3400 | G01523 | 177114122200 |
| SHIP SHOAL 207 #A035 ST1 | SS207A3501 | G01523 | 177114133301 |
| SHIP SHOAL 207 #A036 | SS207A3600 | G01523 | 177114137700 |
| SHIP SHOAL 207 #D002 | SS207D0200 | G01523 | 177114025400 |
| SHIP SHOAL 207 #D007 | SS207D0700 | G01523 | 177114030300 |
| SHIP SHOAL 207 #D008 | SS207D0800 | G01523 | 177114032300 |
| SHIP SHOAL 207 #D009 | SS207D0900 | G01523 | 177114116400 |
| SHIP SHOAL 207 #D010 ST1 | SS207D1001 | G01523 | 177114116501 |
| SHIP SHOAL 216 #C004 ST1 | SS216C0401 | G01524 | 177112014901 |
| SHIP SHOAL 216 #C005A | SS216C05A0 | G01524 | 177112017400 |
| SHIP SHOAL 216 #C007 ST1 | SS216C0701 | G01524 | 177114001201 |
| SHIP SHOAL 216 #C009 ST1 | SS216C0901 | G01524 | 177114003801 |
| SHIP SHOAL 216 #C010 | SS216C1000 | G01524 | 177114004900 |
| SHIP SHOAL 216 #C012C | SS216C12C0 | G01524 | 177114006700 |
| SHIP SHOAL 216 #C013 | SS216C1300 | G01524 | 177114007700 |
| SHIP SHOAL 216 #C015 | SS216C1500 | G01524 | 177114009000 |
| SHIP SHOAL 216 #C016 | SS216C1601 | G01524 | 177114000101 |
| SHIP SHOAL 216 #C017A | SS216C17A1 | G01524 | 177114003001 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 216 #C019 | SS216C1900 | G01524 | 177114031900 |
| SHIP SHOAL 216 #C023 | SS216C2300 | G01524 | 177114134600 |
| SHIP SHOAL 216 #C024 ST2 | SS216C2402 | G01524 | 177114135102 |
| SHIP SHOAL 243 #A001 (ORRI) | SS243A0100 | G10780 | 177124051700 |
| SHIP SHOAL 243 #A004 (ORRI) | SS243A0400 | G10780 | 177124059402 |
| SHIP SHOAL 243 #A006 (ORRI) | SS243A0600 | G10780 | 177124064901 |
| SHIP SHOAL 249 #D017 | SS249D1700 | G01030 | 177124020800 |
| SHIP SHOAL 259 #001 | SS25900100 | G05044 | 177124028500 |
| SHIP SHOAL 259 #JA001 ST2 | SS259JA102 | G05044 | 177124035002 |
| SHIP SHOAL 259 #JA002 | SS259JA201 | G05044 | 177124035301 |
| SHIP SHOAL 259 #JA003 ST2 | SS259JA302 | G05044 | 177124035402 |
| SHIP SHOAL 259 #JA004 | SS259JA400 | G05044 | 177124035600 |
| SHIP SHOAL 259 #JA005 ST1 | SS259JA501 | G05044 | 177124035801 |
| SHIP SHOAL 259 #JA006 | SS259JA600 | G05044 | 177124035900 |
| SHIP SHOAL 259 #JA007 | SS259JA700 | G05044 | 177124064200 |
| SHIP SHOAL 259 #JA008 ST2 | SS259JA802 | G05044 | 177124064402 |
| SHIP SHOAL 259 #JA009 | SS259JA900 | G05044 | 177124064500 |
| SHIP SHOAL 259 #JA010 ST1 | SS259JA101 | G05044 | 177124065501 |
| SHIP SHOAL 274 #A001 | SS274A0100 | G01039 | 177120001500 |
| SHIP SHOAL 274 #A002 | SS274A0200 | G01039 | 177120001600 |
| SHIP SHOAL 274 #A003 | SS274A0300 | G01039 | 177120001700 |
| SHIP SHOAL 274 #A004 | SS274A0400 | G01039 | 177120001800 |
| SHIP SHOAL 274 #A006 | SS274A0601 | G01039 | 177120002001 |
| SHIP SHOAL 274 #A008 | SS274A0800 | G01039 | 177120002200 |
| SHIP SHOAL 274 #A010 | SS274A1001 | G01039 | 177120002401 |
| SHIP SHOAL 274 #A012 | SS274A1201 | G01039 | 177120002601 |
| SHIP SHOAL 274 #A013 | SS274A1300 | G01039 | 177120002700 |
| SHIP SHOAL 274 #A014 | SS274A1403 | G01039 | 177120001903 |
| SHIP SHOAL 274 #A016 | SS274A1602 | G01039 | 177120010202 |
| SHIP SHOAL 274 #C001 | SS274C0100 | G01039 | 177124038900 |
| SHIP SHOAL 274 #C002 | SS274C0200 | G01039 | 177124038800 |
| SHIP SHOAL 274 #C003 | SS274C0300 | G01039 | 177124039000 |
| SHIP SHOAL 274 #C004 | SS274C0400 | G01039 | 177124039100 |
| SHIP SHOAL 274 #C005 WIW | SS274C0500 | G01039 | 177124039200 |
| SHIP SHOAL 274 #C006 WSW | SS274C0600 | G01039 | 177124039300 |
| SHIP SHOAL 274 #C007 | SS274C0700 | G01039 | 177124039900 |
| SHIP SHOAL 274 #C008 | SS274C0800 | G01039 | 177124040300 |
| SHIP SHOAL 274 #C009 | SS274C0900 | G01039 | 177124040200 |
| SHIP SHOAL 274 #C010 WIW | SS274C1000 | G01039 | 177124040000 |
| SHIP SHOAL 274 #C011 | SS274C1100 | G01039 | 177124040100 |
| SHIP SHOAL 274 #C012 | SS274C1200 | G01039 | 177124040700 |
| SHIP SHOAL 274 #C013 | SS274C1300 | G01039 | 177124040800 |
| SHIP SHOAL 274 #C014 | SS274C1400 | G01039 | 177124040900 |
| SHIP SHOAL 274 #C015 | SS274C1500 | G01039 | 177124041400 |
| SHIP SHOAL 274 #C016 | SS274C1600 | G01039 | 177124041300 |
| SHIP SHOAL 274 #C017 | SS274C1701 | G01039 | 177124041501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 274 #C018 | SS274C1800 | G01039 | 177124041800 |
| SHIP SHOAL 274 #C019 WSW | SS274C1900 | G01039 | 177124042000 |
| SHIP SHOAL 274 #C020 | SS274C2000 | G01039 | 177124041900 |
| SHIP SHOAL 274 #C021 | SS274C2100 | G01039 | 177124042600 |
| SHIP SHOAL 274 #C022 | SS274C2201 | G01039 | 177124056102 |
| SHIP SHOAL 274 #C023 | SS274C2300 | G01039 | 177124059600 |
| SHIP SHOAL 274 #C024 | SS274C2400 | G01039 | 177124060100 |
| SHIP SHOAL 276 #A6 | - | G10785 | 177124042500 |
| SHIP SHOAL 276 #A7 | - | G10785 | 177124043000 |
| SHIP SHOAL 314 #A002 | SS314A0200 | G26074 | 177124047202 |
| SHIP SHOAL 314 #A004 (ORRI) | SS314A0400 | G26074 | 177124047500 |
| SHIP SHOAL 354 #A001 ST2 | SS354A0102 | G15312 | 177124055202 |
| SHIP SHOAL 354 #A002 ST2 | SS354A0202 | G15312 | 177124056002 |
| SHIP SHOAL 354 #A003 ST1 | SS354A0301 | G15312 | 177124057901 |
| SHIP SHOAL 354 #A004 ST1 | SS354A0401 | G15312 | 177124057701 |
| SHIP SHOAL 354 #A005 | SS354A0500 | G15312 | 177124065600 |
| SHIP SHOAL 354 #A006 | SS354A0600 | G15312 | 177124066000 |
| SHIP SHOAL 354 #A007 ST1 | SS354A0701 | G15312 | 177124066101 |
| SHIP SHOAL 354 #A008 | SS354A0800 | G15312 | 177124066200 |
| SHIP SHOAL206#E001(SS207E1 | SS207E0100 | G01523 | 177114115500 |
| SOUTH MARSH IS 010 #004 | SM01000400 | G01181 | 177074089700 |
| SOUTH MARSH IS 010 #A002 | SM010A0200 | G01181 | 177070050200 |
| SOUTH MARSH IS 010 #A003 | SM010A0300 | G01181 | 177074043200 |
| SOUTH MARSH IS 010 #A004 | SM010A0400 | G01181 | 177070050600 |
| SOUTH MARSH IS 010 #A007 | SM010A0700 | G01181 | 177070051300 |
| SOUTH MARSH IS 010 #A008 | SM010A0800 | G01181 | 177070052100 |
| SOUTH MARSH IS 010 #A009E | SM010A09E0 | G01181 | 177072000000 |
| SOUTH MARSH IS 010 #A011 | SM010A1100 | G01181 | 177072000500 |
| SOUTH MARSH IS 010 #A012 | SM010A1200 | G01181 | 177072001100 |
| SOUTH MARSH IS 010 #A013 ST1 | SM010A1301 | G01181 | 177072000401 |
| SOUTH MARSH IS 010 #A017 | SM010A1700 | G01181 | 177074032300 |
| SOUTH MARSH IS 010 #A019 | SM010A1901 | G01181 | 177074046301 |
| SOUTH MARSH IS 010 #A021 | SM010A2100 | G01181 | 177074075200 |
| SOUTH MARSH IS 011 #034 | SM01103400 | G01182 | 177072004300 |
| SOUTH MARSH IS 011 #058 BP2 | SM01105802 | G01182 | 177074090702 |
| SOUTH MARSH IS 018 #A001 ST1 | SM018A0101 | G08680 | 177074057701 |
| SOUTH MARSH IS 018 #A002 | SM018A0200 | G08680 | 177074064900 |
| SOUTH MARSH IS 018 #A003 | SM018A0300 | G08680 | 177074070300 |
| SOUTH MARSH IS 048 #E002 | SM048E0201 | 00786 | 177072002801 |
| SOUTH MARSH IS 048 #E003 ST1BP | SM048E0302 | 00786 | 177072003302 |
| SOUTH MARSH IS 048 #E004 | SM048E0401 | 00786 | 177072004001 |
| SOUTH MARSH IS 048 #E005 | SM048E005 | 00786 | 177072004800 |
| SOUTH MARSH IS 048 #E007 | SM048E07 | 00786 | 177074092300 |
| SOUTH MARSH IS 066 #C001 | SM066C0100 | G01198 | 177070041200 |
| SOUTH MARSH IS 066 #C002 | SM066C0200 | G01198 | 177070049000 |
| SOUTH MARSH IS 066 #C003 | SM066C0300 | G01198 | 177074005800 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 066 #C004 | SM066C0400 | G01198 | 177070050000 |
| SOUTH MARSH IS 066 #C005 | SM066C0500 | G01198 | 177070050700 |
| SOUTH MARSH IS 066 #C006 | SM066C0600 | G01198 | 177072018700 |
| SOUTH MARSH IS 066 #C007 | SM066C0700 | G01198 | 177070052800 |
| SOUTH MARSH IS 066 #C009B | SM066C09B0 | G01198 | 177072001200 |
| SOUTH MARSH IS 066 #C010 ST2 | SM066C1002 | G01198 | 177072002502 |
| SOUTH MARSH IS 066 #C011 | SM066C1100 | G01198 | 177074072900 |
| SOUTH MARSH IS 066 #C012 | SM066C1200 | G01198 | 177074073500 |
| SOUTH MARSH IS 066 #D001 | SM066D0100 | G01198 | 177074025400 |
| SOUTH MARSH IS 066 #D003 | SM066D0300 | G01198 | 177074029000 |
| SOUTH MARSH IS 066 #D004 | SM066D0400 | G01198 | 177074032000 |
| SOUTH MARSH IS 066 #D005 | SM066D0500 | G01198 | 177074032600 |
| SOUTH MARSH IS 066 #D006 ST | SM066D0601 | G01198 | 177074031201 |
| SOUTH MARSH IS 066 #D007 ST1BP | SM066D0701 | G01198 | 177074027401 |
| SOUTH MARSH IS 076 #F001 BP2 | SM076F0102 | G01208 | 177084095402 |
| SOUTH MARSH IS 076 #F002 | SM076F0200 | G01208 | 177084095500 |
| SOUTH MARSH IS 105 #A001 | SM105A0100 | G17938 | 177084089700 |
| SOUTH MARSH IS 105 #A002 ST1 | SM105A0201 | G17938 | 177084089901 |
| SOUTH MARSH IS 106 #A001N | SM106A01N0 | G03776 | 177084038200 |
| SOUTH MARSH IS 106 #A002 ST | SM106A02N1 | G03776 | 177084038701 |
| SOUTH MARSH IS 106 #A003N | SM106A03N0 | G03776 | 177084039100 |
| SOUTH MARSH IS 106 #A004 | SM106A04N0 | G03776 | 177084040600 |
| SOUTH MARSH IS 106 #A005 ST2 | SM106A05N2 | G03776 | 177084047202 |
| SOUTH MARSH IS 106 #A006 ST1 | SM106A06N1 | G03776 | 177084048401 |
| SOUTH MARSH IS 106 #A007 | SM106A07N0 | G03776 | 177084048600 |
| SOUTH MARSH IS 106 #A008 | SM106A08N0 | G03776 | 177084049100 |
| SOUTH MARSH IS 106 #A009 ST1 | SM106A09N1 | G03776 | 177084049801 |
| SOUTH MARSH IS 106 #A010 | SM106A10N0 | G03776 | 177084051300 |
| SOUTH MARSH IS 106 #A011 ST2 | SM106A11N2 | G03776 | 177084052302 |
| SOUTH MARSH IS 106 #A013 | SM106A13N0 | G03776 | 177084081200 |
| SOUTH MARSH IS 106 #A014 | SM106A14N0 | G03776 | 177084082000 |
| SOUTH MARSH IS 106 #A015 | SM106A15N0 | G03776 | 177084082600 |
| SOUTH MARSH IS 106 #A016 | SM106A16N0 | G03776 | 177084082700 |
| SOUTH MARSH IS 106 #A017 | SM106A17N0 | G03776 | 177084082800 |
| SOUTH MARSH IS 106 #A020 | SM106A20S0 | G02279 | 177084082200 |
| SOUTH MARSH IS 106#A012ST2 | SM106A12S2 | G02279 | 177084053602 |
| SOUTH MARSH IS 108 #A018 | SM108A1800 | 00792 | 177084094500 |
| SOUTH MARSH IS 127 #B011 | SM127B1100 | G02883 | 177084015800 |
| SOUTH MARSH IS 127 #B017 | SM127B17S1 | G02883 | 177084025801 |
| SOUTH MARSH IS 127 #B022 ST1 | SM127B2201 | G02883 | 177084078501 |
| SOUTH MARSH IS 128 #A002 | SM128A0200 | G02587 | 177084014300 |
| SOUTH MARSH IS 128 #A003 | SM128A0300 | G02587 | 177084013400 |
| SOUTH MARSH IS 128 #A004C ST1 | SM128A04C1 | G02587 | 177084014601 |
| SOUTH MARSH IS 128 #A005 | SM128A0500 | G02587 | 177084015000 |
| SOUTH MARSH IS 128 #A006 ST1 | SM128A0601 | G02587 | 177084016101 |
| SOUTH MARSH IS 128 #A007 | SM128A0700 | G02587 | 177084015500 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 128 #A009 | SM128A0900 | G02587 | 177084019100 |
| SOUTH MARSH IS 128 #A010 | SM128A1002 | G02587 | 177084019302 |
| SOUTH MARSH IS 128 #A011 ST3 | SM128A1103 | G02587 | 177084017103 |
| SOUTH MARSH IS 128 #A012 | SM128A1200 | G02587 | 177084023600 |
| SOUTH MARSH IS 128 #A013 ST2 | SM128A1302 | G02587 | 177084024002 |
| SOUTH MARSH IS 128 #A014 | SM128A1400 | G02587 | 177084026100 |
| SOUTH MARSH IS 128 #A015 ST2 | SM128A1502 | G02587 | 177084012902 |
| SOUTH MARSH IS 128 #A016 ST1 | SM128A1601 | G02587 | 177084033301 |
| SOUTH MARSH IS 128 #A017 ST1 | SM128A1702 | G02587 | 177084028202 |
| SOUTH MARSH IS 128 #A018 | SM128A1800 | G02587 | 177084030300 |
| SOUTH MARSH IS 128 #A019 | SM128A1900 | G02587 | 177084035100 |
| SOUTH MARSH IS 128 #A021 | SM128A2100 | G02587 | 177084035200 |
| SOUTH MARSH IS 128 #A022 ST2 | SM128A2202 | G02587 | 177084034402 |
| SOUTH MARSH IS 128 #A023 ST1 | SM128A2301 | G02587 | 177084037601 |
| SOUTH MARSH IS 128 #A024 | SM128A2400 | G02587 | 177084039700 |
| SOUTH MARSH IS 128 #A025 | SM128A2500 | G02587 | 177084040000 |
| SOUTH MARSH IS 128 #A026 | SM128A2600 | G02587 | 177084039900 |
| SOUTH MARSH IS 128 #B001A | SM128B01D0 | G02587 | 177084011000 |
| SOUTH MARSH IS 128 #B002 ST1 | SM128B0201 | G02587 | 177084014401 |
| SOUTH MARSH IS 128 #B003 ST1 | SM128B0301 | G02587 | 177084011601 |
| SOUTH MARSH IS 128 #B005D | SM128B05D0 | G02587 | 177084012700 |
| SOUTH MARSH IS 128 #B006 ST2 | SM128B0602 | G02587 | 177084012202 |
| SOUTH MARSH IS 128 #B007 ST2 | SM128B0702 | G02587 | 177084014502 |
| SOUTH MARSH IS 128 #B008A | SM128B08A0 | G02587 | 177084014700 |
| SOUTH MARSH IS 128 #B009 | SM128B0900 | G02587 | 177084014900 |
| SOUTH MARSH IS 128 #B010 | SM128B1000 | G02587 | 177084015600 |
| SOUTH MARSH IS 128 #B012 ST1 | SM128B1201 | G02587 | 177084016401 |
| SOUTH MARSH IS 128 #B013 | SM128B1300 | G02587 | 177084023500 |
| SOUTH MARSH IS 128 #B015 | SM128B1500 | G02587 | 177084024700 |
| SOUTH MARSH IS 128 #B016 | SM128B1600 | G02587 | 177084025300 |
| SOUTH MARSH IS 128 #B018 | SM128B1800 | G02587 | 177084029200 |
| SOUTH MARSH IS 128 #B019 | SM128B1900 | G02587 | 177084030600 |
| SOUTH MARSH IS 128 #B020 | SM128B2000 | G02587 | 177084063300 |
| SOUTH MARSH IS 128 #B021 | SM128B2100 | G02587 | 177084078200 |
| SOUTH MARSH IS 128 #B024 | SM128B2400 | G02587 | 177084088600 |
| SOUTH MARSH IS 128 #C001 | SM128C0100 | G02587 | 177084028600 |
| SOUTH MARSH IS 128 #C002 | SM128C0200 | G02587 | 177084027300 |
| SOUTH MARSH IS 128 #C003 | SM128C0300 | G02587 | 177084029600 |
| SOUTH MARSH IS 128 #C004A | SM128C04A0 | G02587 | 177084030000 |
| SOUTH MARSH IS 128 #C005A | SM128C05A0 | G02587 | 177084030700 |
| SOUTH MARSH IS 128 #C006A | SM128C06A0 | G02587 | 177084031300 |
| SOUTH MARSH IS 128 #C007 | SM128C0700 | G02587 | 177084031700 |
| SOUTH MARSH IS 128 #C008 | SM128C0800 | G02587 | 177084032000 |
| SOUTH MARSH IS 128 #C009 | SM128C0900 | G02587 | 177084034900 |
| SOUTH MARSH IS 128 #C010D | SM128C10D0 | G02587 | 177084035000 |
| SOUTH MARSH IS 128 #C011 | SM128C1100 | G02587 | 177084036400 |

Exhibit I-B

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 128 #C012A | SM128C12A0 | G02587 | 177084037300 |
| SOUTH MARSH IS 128 #C013 | SM128C1300 | G02587 | 177084037700 |
| SOUTH MARSH IS 128 #C014 | SM128C1400 | G02587 | 177084038900 |
| SOUTH MARSH IS 128 #C015A | SM128C15A0 | G02587 | 177084039300 |
| SOUTH MARSH IS 128 #C016 | SM128C1600 | G02587 | 177084062000 |
| SOUTH MARSH IS 128 #C017A | SM128C17A0 | G02587 | 177084062600 |
| SOUTH MARSH IS 128 #C018D | SM128C18D0 | G02587 | 177084062900 |
| SOUTH MARSH IS 128 #C019 | SM128C1900 | G02587 | 177084088000 |
| SOUTH MARSH IS 128 #C020 | SM128C2000 | G02587 | 177084088100 |
| SOUTH MARSH IS 128 #C021 | SM128C2101 | G02587 | 177084088201 |
| SOUTH MARSH IS 132 #B002 | SM132B0200 | G02282 | 177084031800 |
| SOUTH MARSH IS 132 #B003 ST1 | SM132B0301 | G02282 | 177084031601 |
| SOUTH MARSH IS 132 #B004 | SM132B0400 | G02282 | 177084033000 |
| SOUTH MARSH IS 132 #B005 | SM132B0500 | G02282 | 177084033500 |
| SOUTH MARSH IS 132 #B006 | SM132B0600 | G02282 | 177084033900 |
| SOUTH MARSH IS 132 #B007 | SM132B0700 | G02282 | 177084034100 |
| SOUTH MARSH IS 132 #B008 | SM132B0800 | G02282 | 177084035500 |
| SOUTH MARSH IS 132 #B009 | SM132B0900 | G02282 | 177084036200 |
| SOUTH MARSH IS 132 #B010 | SM132B1000 | G02282 | 177084036500 |
| SOUTH MARSH IS 132 #B011 | SM132B1100 | G02282 | 177084037800 |
| SOUTH MARSH IS 135 #C003 BP1 | SM135C0301 | G19776 | 177084089401 |
| SOUTH MARSH IS 136 #A004 | SM136A0400 | G02588 | 177084021900 |
| SOUTH MARSH IS 136 #A008 | SM136A08 | G02588 | 177084032401 |
| SOUTH MARSH IS 136 #A010 | SM136A1000 | G02588 | 177084035700 |
| SOUTH MARSH IS 136 #A015 | SM136A1500 | G02588 | 177084071200 |
| SOUTH MARSH IS 136 #C007 | SM136C0700 | G02588 | 177084091900 |
| SOUTH MARSH IS 137 #A001 | SM137A0100 | G02589 | 177084007700 |
| SOUTH MARSH IS 137 #A003 | SM137A0300 | G02589 | 177084020400 |
| SOUTH MARSH IS 137 #A005 | SM137A0500 | G02589 | 177084024100 |
| SOUTH MARSH IS 137 #A009 | SM137A0900 | G02589 | 177084034600 |
| SOUTH MARSH IS 137 #A011 ST1 | SM137A1101 | G02589 | 177084030201 |
| SOUTH MARSH IS 137 #A012 | SM137A1200 | G02589 | 177084040400 |
| SOUTH MARSH IS 137 #A013 | SM137A1300 | G02589 | 177084042900 |
| SOUTH MARSH IS 137 #A014 | SM137A1400 | G02589 | 177084045000 |
| SOUTH MARSH IS 137 #A018 | SM137A1800 | G02589 | 177084072800 |
| SOUTH MARSH IS 141 #B014C | SM141B14C1 | G02885 | 177084025701 |
| SOUTH MARSH IS 141 #B023A | SM141B23A0 | G02885 | 177084079100 |
| SOUTH MARSH IS 149 #C001 ST1 | SM149C0101 | G02592 | 177084088901 |
| SOUTH MARSH IS 149 #C002 | SM149C0200 | G02592 | 177084089100 |
| SOUTH MARSH IS 149 #C004 | SM149C0400 | G02592 | 177084090300 |
| SOUTH MARSH IS 149 #C005 | SM149C0500 | G02592 | 177084090400 |
| SOUTH MARSH IS 149 #D001 | SM149D0101 | G02592 | 177084094401 |
| SOUTH MARSH IS 150 #C006 BP2 | SM150C0600 | G16325 | 177084091802 |
| SOUTH MARSH IS 150 #D002 | SM150D0200 | G16325 | 177084095700 |
| SOUTH MARSH IS 150 #D003 | SM150D0301 | G16325 | 177084096401 |
| SOUTH MARSH IS 161 #A014 ORRI | SM161A1400 | G04809 | 177084061401 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 161 #A015 ORRI | SM161A1500 | G04809 | 177084090501 |
| SOUTH MARSH IS 236 #139 (ORRI) | SM23613900 | 00310 | 177074053802 |
| SOUTH MARSH IS 236 #144 ORRI | SM23614400 | 00310 | 177074058600 |
| SOUTH MARSH IS 236 #160 (ORRI) | SM23616000 | 00310 | 177074058700 |
| SOUTH MARSH IS 236 #A001 ORRI | SM236A0100 | 00310 | 177074037700 |
| SOUTH MARSH IS 236 #A003 ORRI | SM236A0300 | 00310 | 177074040800 |
| SOUTH MARSH IS 236 #A005 ORRI | SM236A0500 | 00310 | 177074041100 |
| SOUTH MARSH IS 236 #A009 ORRI | SM236A0900 | 00310 | 177074044000 |
| SOUTH MARSH IS 240 #0200 | SM24020000 | 00310 | 177074078800 |
| SOUTH MARSH IS 240 #153 | SM240153 | 00310 | 177074061100 |
| SOUTH MARSH IS 240 #156 | SM24015600 | 00310 | 177074061800 |
| SOUTH MARSH IS 240 #191 | SM24019101 | 00310 | 177074073600 |
| SOUTH MARSH IS 240 #196 | SM24019600 | 00310 | 177074075800 |
| SOUTH MARSH IS 240 #E001 | SM240E0100 | 00310 | 177074060900 |
| SOUTH MARSH IS 240 #E002 | SM240E0200 | 00310 | 177074065600 |
| SOUTH MARSH IS 241 #302 | SM241302 | 00310 | 177074042001 |
| SOUTH MARSH IS 268 #A002C | SM268A02C0 | G02310 | 177074007600 |
| SOUTH MARSH IS 268 #A007A | SM268A07A0 | G02310 | 177074013600 |
| SOUTH MARSH IS 268 #A017B | SM268A17B0 | G02310 | 177074016800 |
| SOUTH MARSH IS 268 #D001 | SM268D0100 | G02310 | 177074020600 |
| SOUTH MARSH IS 268 #D003D | SM268D03D0 | G02310 | 177074021600 |
| SOUTH MARSH IS 268 #D004 | SM268D0400 | G02310 | 177074022500 |
| SOUTH MARSH IS 268 #D006 | SM268D0600 | G02310 | 177074024700 |
| SOUTH MARSH IS 268 #D007 | SM268D0700 | G02310 | 177074025700 |
| SOUTH MARSH IS 268 #D012 | SM268D1200 | G02310 | 177074028700 |
| SOUTH MARSH IS 268 #D016D | SM268D16D1 | G02310 | 177074029901 |
| SOUTH MARSH IS 269 #A021B | SM269A21B0 | G02311 | 177074018100 |
| SOUTH MARSH IS 269 #B002 | SM269B0200 | G02311 | 177074008100 |
| SOUTH MARSH IS 269 #B017 ST1 | SM269B1701 | G02311 | 177074075701 |
| SOUTH MARSH IS 269 #B019 BP1 | SM269B1901 | G02311 | 177074088501 |
| SOUTH MARSH IS 269 #F001 ST1 | SM269F0101 | G02311 | 177074080401 |
| SOUTH MARSH IS 280 #G001 | SM280G0100 | G14456 | 177074071400 |
| SOUTH MARSH IS 280 #G002 | SM280G0200 | G14456 | 177074080700 |
| SOUTH MARSH IS 280 #H001 ST1 | SM280H0102 | G14456 | 177074081802 |
| SOUTH MARSH IS 280 #H002 STB | SM280H0203 | G14456 | 177074082303 |
| SOUTH MARSH IS 281 #C001 | SM281C0100 | G02600 | 177074012500 |
| SOUTH MARSH IS 281 #C003A | SM281C03A0 | G02600 | 177074013900 |
| SOUTH MARSH IS 281 #C005A | SM281C05A0 | G02600 | 177074015300 |
| SOUTH MARSH IS 281 #C006 | SM281C0600 | G02600 | 177074015800 |
| SOUTH MARSH IS 281 #C008 ST1 | SM281C0801 | G02600 | 177074017701 |
| SOUTH MARSH IS 281 #C010 ST | SM281C1001 | G02600 | 177074020701 |
| SOUTH MARSH IS 281 #C011 ST1 | SM281C1101 | G02600 | 177074022401 |
| SOUTH MARSH IS 281 #C012A | SM281C12A0 | G02600 | 177074024100 |
| SOUTH MARSH IS 281 #C014 ST | SM281C1401 | G02600 | 177074026901 |
| SOUTH MARSH IS 281 #C015 | SM281C1500 | G02600 | 177074028300 |
| SOUTH MARSH IS 281 #C016C | SM281C16C0 | G02600 | 177074029600 |

Exhibit I-B

| Asset Name | FWE Acct. Code | Lease Number | API |
|------------|----------------|--------------|-----|
| SOUTH MARSH IS 281 #C017 | SM281C1700 | G02600 | 177074030500 |
| SOUTH MARSH IS 281 #C019B | SM281C19B0 | G02600 | 177074034400 |
| SOUTH MARSH IS 281 #C020 ST1 | SM281C2001 | G02600 | 177074034901 |
| SOUTH MARSH IS 281 #C021B | SM281C21B0 | G02600 | 177074035500 |
| SOUTH MARSH IS 281 #C023 ST2 | SM281C2302 | G02600 | 177074036802 |
| SOUTH MARSH IS 281 #C024 | SM281C2400 | G02600 | 177074037300 |
| SOUTH MARSH IS 281 #C025 | SM281C2500 | G02600 | 177074083500 |
| SOUTH MARSH IS 281 #C026 | SM281C2600 | G02600 | 177074083700 |
| SOUTH MARSH IS 281 #C027 | SM281C2700 | G02600 | 177074085200 |
| SOUTH MARSH IS 281 #C028 BP2 | SM281C2802 | G02600 | 177074089402 |
| SOUTH MARSH IS 281 #D002 | SM281D0200 | G02600 | 177074021100 |
| SOUTH MARSH IS 281 #D009 | SM281D0900 | G02600 | 177074027100 |
| SOUTH MARSH IS 281 #D010A | SM281D10A0 | G02600 | 177074027500 |
| SOUTH MARSH IS 281 #D011 | SM281D1100 | G02600 | 177074028000 |
| SOUTH MARSH IS 281 #D013 | SM281D1300 | G02600 | 177074029100 |
| SOUTH MARSH IS 281 #D014A | SM281D14A0 | G02600 | 177074029700 |
| SOUTH MARSH IS 281 #D05A | SM281D05A0 | G02600 | 177074023200 |
| SOUTH MARSH IS 281 #D08A | SM281D08A0 | G02600 | 177074026600 |
| SOUTH MARSH IS 281 #E001D | SM281E01D0 | G02600 | 177074018500 |
| SOUTH MARSH IS 281 #E002A | SM281E02A0 | G02600 | 177074024600 |
| SOUTH MARSH IS 281 #E003 | SM281E0300 | G02600 | 177074027800 |
| SOUTH MARSH IS 281 #E004 | SM281E0400 | G02600 | 177074028500 |
| SOUTH MARSH IS 281 #E005A | SM281E05A0 | G02600 | 177074029300 |
| SOUTH MARSH IS 281 #E006 | SM281E0601 | G02600 | 177074030101 |
| SOUTH MARSH IS 281 #E007 | SM281E0700 | G02600 | 177074031600 |
| SOUTH MARSH IS 281 #E008A | SM281E08A1 | G02600 | 177074033101 |
| SOUTH MARSH IS 281 #E009A | SM281E09A0 | G02600 | 177074033800 |
| SOUTH MARSH IS 281 #E010A | SM281E10A0 | G02600 | 177074034800 |
| SOUTH MARSH IS 281 #E011 ST | SM281E1101 | G02600 | 177074035601 |
| SOUTH MARSH IS 281 #E012 | SM281E1200 | G02600 | 177074036000 |
| SOUTH MARSH IS 281 #E013 | SM281E1300 | G02600 | 177074036600 |
| SOUTH MARSH IS 281 #E014 | SM281E1400 | G02600 | 177074038600 |
| SOUTH MARSH IS 281 #I001 | SM281I0101 | G02600 | 177074082601 |
| SOUTH MARSH IS 281 #I002 ST1 | SM281I0201 | G02600 | 177074082701 |
| SOUTH MARSH IS 281 #I003 | SM281I0300 | G02600 | 177074082800 |
| SOUTH MARSH IS 48 # E 6 | SM048E06 | 00786 | 177074066702 |
| SOUTH PASS 061 #D004 ST2 | SP061D0402 | G01609 | 177234006302 |
| SOUTH PASS 061 #D023 | SP061D2300 | G01609 | 177234008200 |
| SOUTH PASS 061 #D024 ST1 | SP061D2401 | G01609 | 177234007701 |
| SOUTH PASS 061 #D025 | SP061D2500 | G01609 | 177234008300 |
| SOUTH PASS 061 #D026 | SP061D2600 | G01609 | 177234008400 |
| SOUTH PASS 061 #D033 ST2 | SP061D3302 | G01609 | 177234008700 |
| SOUTH PASS 061 #D034 ST1 | SP061D3401 | G01609 | 177234009001 |
| SOUTH PASS 061 #D035 ST2 | SP061D3502 | G01609 | 177234009102 |
| SOUTH PASS 061 #D036 ST1 | SP061D3601 | G01609 | 177234009201 |
| SOUTH PASS 061 #D038 | SP061D38 | G01609 | 177234009702 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 061 #D039 ST1 | SP061D3901 | G01609 | 177234009801 |
| SOUTH PASS 061 #D040 ST2 | SP061D4002 | G01609 | 177234009502 |
| SOUTH PASS 061 #D043 ST2 | SP061D4302 | G01609 | 177234009602 |
| SOUTH PASS 062 #C001 | SP062C0101 | G01294 | 177230007901 |
| SOUTH PASS 062 #C004 | SP062C0401 | G01294 | 177232000101 |
| SOUTH PASS 062 #C005 | SP062C0500 | G01294 | 177230008600 |
| SOUTH PASS 062 #C006 | SP062C0601 | G01294 | 177232000301 |
| SOUTH PASS 062 #C007 ST3 | SP062C0703 | G01294 | 177234000803 |
| SOUTH PASS 062 #C009 | SP062C0900 | G01294 | 177232000800 |
| SOUTH PASS 062 #C011 ST1 | SP062C1101 | G01294 | 177232001501 |
| SOUTH PASS 062 #C013B | SP062C13B0 | G01294 | 177232002100 |
| SOUTH PASS 062 #C016 | SP062C1600 | G01294 | 177232003000 |
| SOUTH PASS 062 #C017 | SP062C1702 | G01294 | 177232003102 |
| SOUTH PASS 062 #C018 | SP062C1800 | G01294 | 177232003200 |
| SOUTH PASS 062 #C021 | SP062C2105 | G01294 | 177230008005 |
| SOUTH PASS 062 #D001 | SP062D0100 | G01294 | 177234012300 |
| SOUTH PASS 062 #D002 | SP062D0200 | G01294 | 177234011900 |
| SOUTH PASS 062 #D003 | SP062D0300 | G01294 | 177234012000 |
| SOUTH PASS 062 #D004 | SP062D0401 | G01294 | 177234012901 |
| SOUTH PASS 062 #D005 | SP062D0500 | G01294 | 177234012100 |
| SOUTH PASS 062 #D007 | SP062D0700 | G01294 | 177234012200 |
| SOUTH PASS 062 #D008 | SP062D0800 | G01294 | 177234012500 |
| SOUTH PASS 062 #D009 | SP062D0900 | G01294 | 177234013000 |
| SOUTH PASS 062 #D010 ST1 | SP062D1001 | G01294 | 177234012801 |
| SOUTH PASS 062 #D012 | SP062D1200 | G01294 | 177234013200 |
| SOUTH PASS 062 #D014 | SP062D1400 | G01294 | 177234014100 |
| SOUTH PASS 062 #D019 | SP062D1900 | G01294 | 177234012400 |
| SOUTH PASS 062 #D020 ST1 | SP062D2001 | G01294 | 177234014001 |
| SOUTH PASS 062 #D021 | SP062D2100 | G01294 | 177234013700 |
| SOUTH PASS 062 #D022 | SP062D2201 | G01294 | 177234013801 |
| SOUTH PASS 062 #D023 | SP062D2300 | G01294 | 177234014300 |
| SOUTH PASS 062 #D027 | SP062D2700 | G01294 | 177234014500 |
| SOUTH PASS 062 #D028 | SP062D2800 | G01294 | 177234014601 |
| SOUTH PASS 062 #D029 | SP062D2900 | G01294 | 177234014900 |
| SOUTH PASS 062 #D030 | SP062D3000 | G01294 | 177234014700 |
| SOUTH PASS 062 #D031 | SP062D3100 | G01294 | 177234014800 |
| SOUTH PASS 062 #D032 | SP062D3201 | G01294 | 177234015001 |
| SOUTH PASS 062 #D033 | SP062D3300 | G01294 | 177234016300 |
| SOUTH PASS 062 #D034A | SP062D34A0 | G01294 | 177234016600 |
| SOUTH PASS 062 #D035 | SP062D3500 | G01294 | 177234016900 |
| SOUTH PASS 062 #D036 | SP062D3600 | G01294 | 177234016400 |
| SOUTH PASS 064 #A003A | SP064A0300 | G01901 | 177232001700 |
| SOUTH PASS 064 #A013 ST1 | SP064A1300 | G01901 | 177232004800 |
| SOUTH PASS 064 #B014 ST | SP064B1401 | G01901 | 177254002601 |
| SOUTH PASS 064 #B021 | SP064B2100 | G01901 | 177254003300 |
| SOUTH PASS 064 #B023 | SP064B2300 | G01901 | 177254003600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 064 #B034 | SP064B3400 | G01901 | 177254005100 |
| SOUTH PASS 064 #C001 | SP064C0100 | G01901 | 177254039900 |
| SOUTH PASS 065 #A001 | SP065A0101 | G01610 | 177232001001 |
| SOUTH PASS 065 #A009 | SP065A0900 | G01610 | 177232004400 |
| SOUTH PASS 065 #A012 | SP065A1200 | G01610 | 177232004700 |
| SOUTH PASS 065 #A016A | SP065A1600 | G01610 | 177232005100 |
| SOUTH PASS 065 #A018 | SP065A1800 | G01610 | 177232005600 |
| SOUTH PASS 065 #A024 | SP065A2400 | G01610 | 177232006700 |
| SOUTH PASS 065 #A027 | SP065A2700 | G01610 | 177232007100 |
| SOUTH PASS 065 #A028 | SP065A2800 | G01610 | 177232007200 |
| SOUTH PASS 065 #A029 | SP065A2900 | G01610 | 177232007400 |
| SOUTH PASS 065 #A030 ST | SP065A3001 | G01610 | 177232007501 |
| SOUTH PASS 065 #A034 | SP065A3400 | G01610 | 177232007900 |
| SOUTH PASS 065 #A036 ST | SP065A3602 | G01610 | 177232007802 |
| SOUTH PASS 065 #B011 | SP065B1100 | G01610 | 177254001900 |
| SOUTH PASS 065 #B019 | SP065B1900 | G01610 | 177254003000 |
| SOUTH PASS 065 #B033 ST2 | SP065B3302 | G01610 | 177254005002 |
| SOUTH PASS 065 #C003 | SP065C0300 | G01610 | 177254040900 |
| SOUTH PASS 065 #C010 | SP065C1000 | G01610 | 177254042800 |
| SOUTH PASS 065 #C022 | SP065C2200 | G01610 | 177254045800 |
| SOUTH PASS 065 #C023 | SP065C2300 | G01610 | 177254046700 |
| SOUTH PASS 070 #C001 | SP070C0100 | G01614 | 177234001200 |
| SOUTH PASS 070 #C002 | SP070C0200 | G01614 | 177234001400 |
| SOUTH PASS 070 #C003 | SP070C0300 | G01614 | 177234001500 |
| SOUTH PASS 070 #C004 | SP070C0400 | G01614 | 177234001600 |
| SOUTH PASS 070 #C006 | SP070C0600 | G01614 | 177234001800 |
| SOUTH PASS 070 #C009 | SP070C0900 | G01614 | 177234002000 |
| SOUTH PASS 070 #C010 | SP070C1000 | G01614 | 177234002200 |
| SOUTH PASS 070 #C011 | SP070C1100 | G01614 | 177234002300 |
| SOUTH PASS 070 #C014 | SP070C1400 | G01614 | 177234002500 |
| SOUTH PASS 070 #C015 | SP070C1500 | G01614 | 177234002600 |
| SOUTH PASS 070 #C017 | SP070C1700 | G01614 | 177234002800 |
| SOUTH PASS 070 #C018 | SP070C1800 | G01614 | 177234002900 |
| SOUTH PASS 070 #C019 | SP070C1900 | G01614 | 177234003000 |
| SOUTH PASS 070 #C021 | SP070C2100 | G01614 | 177234003200 |
| SOUTH PASS 070 #C022 | SP070C2200 | G01614 | 177234003300 |
| SOUTH PASS 070 #C024 | SP070C2400 | G01614 | 177234003500 |
| SOUTH PASS 070 #C025 | SP070C2500 | G01614 | 177234003700 |
| SOUTH PASS 070 #C026 | SP070C2600 | G01614 | 177234003800 |
| SOUTH PASS 070 #C028 | SP070C2800 | G01614 | 177234004000 |
| SOUTH PASS 070 #C029 ST2 | SP070C2902 | G01614 | 177234004402 |
| SOUTH PASS 070 #C031 | SP070C3100 | G01614 | 177234004500 |
| SOUTH PASS 070 #C032 | SP070C3200 | G01614 | 177234004600 |
| SOUTH PASS 070 #C034 | SP070C3400 | G01614 | 177234004700 |
| SOUTH PASS 070 #C038 | SP070C3800 | G01614 | 177234005100 |
| SOUTH PASS 070 #C039 ST1 | SP070C3901 | G01614 | 177234004901 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 070 #C041 | SP070C4100 | G01614 | 177234005400 |
| SOUTH PASS 070 #C042 | SP070C4200 | G01614 | 177234005500 |
| SOUTH PASS 070 #C045 | SP070C4500 | G01614 | 177234005700 |
| SOUTH PASS 070 #C046 ST3 | SP070C4603 | G01614 | 177234005003 |
| SOUTH PASS 070 #C047 | SP070C4700 | G01614 | 177234005800 |
| SOUTH PASS 070 #C048 | SP070C4800 | G01614 | 177234005900 |
| SOUTH PASS 070 #D001 | SP070D0100 | G01614 | 177234006000 |
| SOUTH PASS 070 #D002 | SP070D0200 | G01614 | 177234006100 |
| SOUTH PASS 070 #D003 | SP070D0300 | G01614 | 177234006200 |
| SOUTH PASS 070 #D005 | SP070D0500 | G01614 | 177234006400 |
| SOUTH PASS 070 #D006 ST1 | SP070D0600 | G01614 | 177234006501 |
| SOUTH PASS 070 #D007 | SP070D0700 | G01614 | 177234006600 |
| SOUTH PASS 070 #D008 | SP070D0800 | G01614 | 177234006700 |
| SOUTH PASS 070 #D012 | SP070D1200 | G01614 | 177234007100 |
| SOUTH PASS 070 #D013 | SP070D130 | G01614 | 177234007200 |
| SOUTH PASS 070 #D014 | SP070D1400 | G01614 | 177234007300 |
| SOUTH PASS 070 #D015 ST1 | SP070D1501 | G01614 | 177234007401 |
| SOUTH PASS 070 #D016 | SP070D1600 | G01614 | 177234007500 |
| SOUTH PASS 070 #D018 | SP070D1800 | G01614 | 177234007600 |
| SOUTH PASS 070 #D020 | SP070D2000 | G01614 | 177234007800 |
| SOUTH PASS 070 #D021 | SP070D2100 | G01614 | 177234007900 |
| SOUTH PASS 070 #D027 | SP070D2700 | G01614 | 177234008500 |
| SOUTH PASS 070 #D028 | SP070D2800 | G01614 | 177234008600 |
| SOUTH PASS 070 #D030 | SP070D3000 | G01614 | 177234008800 |
| SOUTH PASS 070 #D037 | SP070D3700 | G01614 | 177234009300 |
| SOUTH PASS 070 #D042 ST1 | SP070D4201 | G01614 | 177234009901 |
| SOUTH PASS 070 #D044 ST1 | SP070D4401 | G01614 | 177234016201 |
| SOUTH PASS 087 #006 | SP08700602 | G07799 | 177224023102 |
| SOUTH PASS 087 #D002 ST | SP087D0201 | G07799 | 177224021001 |
| SOUTH PASS 087 #D003 | SP087D0202 | G07799 | 177224021202 |
| SOUTH PASS 087 #D008 | SP087D0800 | G07799 | 177224020803 |
| SOUTH PASS 087 #D009 | SP087D0900 | G07799 | 177224022600 |
| SOUTH PASS 087 #D011 | SP087D1101 | G07799 | 177224022801 |
| SOUTH PASS 087 #D07A | SP087D0700 | G07799 | 177224020900 |
| SOUTH PASS 088 #D005 ST | SP088D0501 | G10894 | 177224021901 |
| SOUTH PASS 088 #D006 | SP088D0601 | G10894 | 177224022201 |
| SOUTH PASS 088 #D010 | SP088D1001 | G10894 | 177224022701 |
| SOUTH PASS 089 #013 | SP08901300 | G01618 | 177224015100 |
| SOUTH PASS 089 #014 | SP08901400 | G01618 | 177224017500 |
| SOUTH PASS 089 #B001A | SP089B01A0 | G01618 | 177224005300 |
| SOUTH PASS 089 #B002A | SP089B02A0 | G01618 | 177224005700 |
| SOUTH PASS 089 #B003 | SP089B0300 | G01618 | 177224006400 |
| SOUTH PASS 089 #B004A | SP089B04A0 | G01618 | 177224006800 |
| SOUTH PASS 089 #B005 | SP089B0500 | G01618 | 177224008400 |
| SOUTH PASS 089 #B006D | SP089B06D0 | G01618 | 177224009500 |
| SOUTH PASS 089 #B007 | SP089B0700 | G01618 | 177224008501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 089 #B008 ST1 | SP089B0801 | G01618 | 177224009901 |
| SOUTH PASS 089 #B009 ST1 | SP089B0901 | G01618 | 177224008601 |
| SOUTH PASS 089 #B010 | SP089B1000 | G01618 | 177224010900 |
| SOUTH PASS 089 #B011 ST | SP089B1101 | G01618 | 177224010403 |
| SOUTH PASS 089 #B012 | SP089B1200 | G01618 | 177224011200 |
| SOUTH PASS 089 #B013 | SP089B1300 | G01618 | 177224011704 |
| SOUTH PASS 089 #B014 | SP089B1400 | G01618 | 177224011601 |
| SOUTH PASS 089 #B015 ST3 | SP089B1503 | G01618 | 177224012703 |
| SOUTH PASS 089 #B016 ST2 | SP089B1602 | G01618 | 177224014702 |
| SOUTH PASS 089 #B017 ST | SP089B1701 | G01618 | 177224015901 |
| SOUTH PASS 089 #B018 ST2 | SP089B1802 | G01618 | 177224017602 |
| SOUTH PASS 089 #B019 ST | SP089B1901 | G01618 | 177224017901 |
| SOUTH PASS 089 #B020 ST3 | SP089B2003 | G01618 | 177224016203 |
| SOUTH PASS 089 #B022 | SP089B2200 | G01618 | 177224017800 |
| SOUTH PELTO 001 #A002 ST1 | PL001A0201 | G04234 | 177134009201 |
| SOUTH PELTO 001 #A004 | PL001A0400 | G04234 | 177134015600 |
| SOUTH PELTO 001 #A005 | PL001A0500 | G04234 | 177134009800 |
| SOUTH PELTO 001 #A006 | PL001A0600 | G04234 | 177134016100 |
| SOUTH PELTO 009 #001 | PL00900100 | G02924 | 177134001300 |
| SOUTH PELTO 009 #002 | PL00900200 | G02924 | 177134002300 |
| SOUTH PELTO 009 #005 | PL00900500 | G02924 | 177134018700 |
| SOUTH PELTO 009 #006 | PL00900600 | G02924 | 177134006100 |
| SOUTH PELTO 009 #007 | PL00900700 | G02924 | 177134007800 |
| SOUTH PELTO 009 #010 | PL00901000 | G02924 | 177134025300 |
| SOUTH PELTO 010 #002 | PL01000200 | G02925 | 177134001000 |
| SOUTH PELTO 010 #003 | PL01000300 | G02925 | 177134001400 |
| SOUTH PELTO 010 #004 | PL01000400 | G02925 | 177134001600 |
| SOUTH PELTO 010 #005 | PL01000500 | G02917 | 177114098000 |
| SOUTH PELTO 010 #006 ST1 | PL01000601 | G02925 | 177134002101 |
| SOUTH PELTO 010 #007 | PL01000700 | G02925 | 177134002200 |
| SOUTH PELTO 010 #009 ST3 | PL01000903 | G02925 | 177134003303 |
| SOUTH PELTO 010 #010 | PL01001000 | G02925 | 177134007200 |
| SOUTH PELTO 010 #011 ST2 | PL01001102 | G02925 | 177134005102 |
| SOUTH PELTO 010 #012 ST5 | PL01001205 | G02925 | 177134006705 |
| SOUTH PELTO 010 #013 ST1 | PL01001301 | G02925 | 177134007402 |
| SOUTH PELTO 010 #014 | PL01001400 | G02925 | 177134009400 |
| SOUTH PELTO 010 #016 ST2 | PL01001602 | G02925 | 177134011802 |
| SOUTH PELTO 010 #017 ST1 | PL01001701 | G02925 | 177134012301 |
| SOUTH PELTO 010 #019 ST1 | PL01001901 | G02925 | 177134010601 |
| SOUTH PELTO 010 #020 | PL01002000 | G02925 | 177134015800 |
| SOUTH PELTO 010 #022 ST1 | PL01002201 | G02925 | 177134018201 |
| SOUTH PELTO 010 #023 ST1 | PL01002301 | G02925 | 177134016601 |
| SOUTH PELTO 010 #026 | PL01002600 | G02925 | 177134018000 |
| SOUTH PELTO 010 #B025 | PL010B2501 | G02925 | 177134018301 |
| SOUTH PELTO 011 #017 | PL01101700 | 00071 | 177134003102 |
| SOUTH PELTO 011 #019 ST1 | PL01101901 | 00071 | 177134004501 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PELTO 011 #022 | PL01102200 | 00071 | 177134012000 |
| SOUTH PELTO 011 #025 | PL01102500 | 00071 | 177134018900 |
| SOUTH PELTO 011 #031 | PL01103100 | 00071 | 177134022701 |
| SOUTH PELTO 011 #032 | PL01103200 | 00071 | 177134022600 |
| SOUTH PELTO 011 #F001 | PL011F0100 | 00071 | 177130000300 |
| SOUTH PELTO 011 #F002 | PL011F0200 | 00071 | 177134000500 |
| SOUTH PELTO 011 #F003 ST | PL011F0300 | 00071 | 177134001700 |
| SOUTH PELTO 013 #009 | PL01300900 | G03171 | 177134019701 |
| SOUTH PELTO 025 #005 (ORRI) | PL02500502 | G14535 | 177134024303 |
| SOUTH PELTO 025 #006 (ORRI) | PL02500600 | G14535 | 177134025003 |
| SOUTH PELTO 025 #JA001 | PL025JA01 | G14535 | 177134019800 |
| SOUTH PELTO 025 #JB001 (ORRI) | PL025JB012 | G14535 | 177134020302 |
| SOUTH TIMBALIER 049 #A001 ST2 | ST049A0102 | G24956 | 177154123902 |
| SOUTH TIMBALIER 053 #004 | ST05300401 | G04000 | 177154043101 |
| SOUTH TIMBALIER 053 #006 | ST05300601 | G04000 | 177154083500 |
| SOUTH TIMBALIER 053 #A001 | ST053A0101 | G04000 | 177154034402 |
| SOUTH TIMBALIER 053 #A002 | ST053A0201 | G04000 | 177154037601 |
| SOUTH TIMBALIER 053 #A003 | ST053A0301 | G04000 | 177154038401 |
| SOUTH TIMBALIER 053 #A004 | ST053A0400 | G04000 | 177154038500 |
| SOUTH TIMBALIER 053 #A006 | ST053A0601 | G04000 | 177154039201 |
| SOUTH TIMBALIER 053 #A007 | ST053A0700 | G04000 | 177154040400 |
| SOUTH TIMBALIER 053 #A008 | ST053A0800 | G04000 | 177154040500 |
| SOUTH TIMBALIER 053 #A009 | ST053A0900 | G04000 | 177154041500 |
| SOUTH TIMBALIER 053 #A010 | ST053A1001 | G04000 | 177154043501 |
| SOUTH TIMBALIER 053 #A011 | ST053A1100 | G04000 | 177154042400 |
| SOUTH TIMBALIER 053 #A012 | ST053A1201 | G04000 | 177154042301 |
| SOUTH TIMBALIER 053 #A013 | ST053A1300 | G04000 | 177154044000 |
| SOUTH TIMBALIER 053 #A014 | ST053A1400 | G04000 | 177154042900 |
| SOUTH TIMBALIER 053 #A015 | ST053A1501 | G04000 | 177154076901 |
| SOUTH TIMBALIER 053 #A016 | ST053A1601 | G04000 | 177154043601 |
| SOUTH TIMBALIER 053 #A017 | ST053A1701 | G04000 | 177154061101 |
| SOUTH TIMBALIER 053 #A018 | ST053A1801 | G04000 | 177154061201 |
| SOUTH TIMBALIER 053 #A019 | ST053A1900 | G04000 | 177154077200 |
| SOUTH TIMBALIER 053 #A020 | ST053A2001 | G04000 | 177154077101 |
| SOUTH TIMBALIER 053 #A021 | ST053A2100 | G04000 | 177154111000 |
| SOUTH TIMBALIER 053 #C001 | ST053C0100 | G04000 | 177154067200 |
| SOUTH TIMBALIER 053 #C002 | ST053C0200 | G04000 | 177154107300 |
| SOUTH TIMBALIER 053 #I001 | ST053I0100 | G04000 | 177154031200 |
| SOUTH TIMBALIER 067 #006 | ST06700602 | 00020 | 177154078404 |
| SOUTH TIMBALIER 148 #A001 | ST148A0100 | G01960 | 177154009400 |
| SOUTH TIMBALIER 148 #A002 | ST148A0200 | G01960 | 177154013200 |
| SOUTH TIMBALIER 148 #A003 | ST148A0300 | G01960 | 177154015800 |
| SOUTH TIMBALIER 148 #A004 | ST148A04 | G01960 | 177154039700 |
| SOUTH TIMBALIER 148 #A005 | ST148A05 | G01960 | 177154041100 |
| SOUTH TIMBALIER 148 #A006 | ST148A0600 | G01960 | 177154074603 |
| SOUTH TIMBALIER 148 #A007 | ST148A0700 | G01960 | 1771540890 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH TIMBALIER 148 #A008 | ST148A0801 | G01960 | 177154090501 |
| SOUTH TIMBALIER 148 #A009 | ST148A0903 | G01960 | 177154095103 |
| SOUTH TIMBALIER 205 #B001 ST1 | ST205B0101 | G05612 | 177154059001 |
| SOUTH TIMBALIER 205 #B002A ST1 | ST205B02A1 | G05612 | 177154062901 |
| SOUTH TIMBALIER 205 #B004 ST1 | ST205B0401 | G05612 | 177154081601 |
| SOUTH TIMBALIER 205 #B005A | ST205B05A0 | G05612 | 177154103300 |
| SOUTH TIMBALIER 205 #G001 ST1 | ST205G0101 | G05612 | 177154106701 |
| SOUTH TIMBALIER 205 #G003 ST1 | ST205G0301 | G05612 | 177154115301 |
| SOUTH TIMBALIER 206 #A001 ST1 | ST206A0101 | G05613 | 177154057801 |
| SOUTH TIMBALIER 206 #A002 ST1 | ST206A0201 | G05613 | 177154060101 |
| SOUTH TIMBALIER 206 #A003 | ST206A0300 | G05613 | 177154061000 |
| SOUTH TIMBALIER 206 #A004A | ST206A04A0 | G05613 | 177154074300 |
| SOUTH TIMBALIER 206 #A006 | ST206A0600 | G05613 | 177154075100 |
| SOUTH TIMBALIER 206 #A007 | ST206A0700 | G05613 | 177154075200 |
| SOUTH TIMBALIER 206 #A008 | ST206A0800 | G05613 | 177154075300 |
| SOUTH TIMBALIER 206 #A009 | ST206A0900 | G05613 | 177154075406 |
| SOUTH TIMBALIER 206 #A010ST2BP | ST206A1002 | G05613 | 177154075702 |
| SOUTH TIMBALIER 206 #B003 ST1 | ST206B0301 | G05613 | 177154074001 |
| SOUTH TIMBALIER 206 #B006 | ST206B0600 | G05613 | 177154103000 |
| SOUTH TIMBALIER 276 #A010 ST1 | ST276A1001 | G07780 | 177164013301 |
| SOUTH TIMBALIER 276 #A019 | ST276A1900 | G07780 | 177164014500 |
| SOUTH TIMBALIER 276 #A029 | ST276A2900 | G07780 | 177164022300 |
| SOUTH TIMBALIER 290 #A025 | - | G16454 | 608104014901 |
| SOUTH TIMBALIER 291 #A023 | ST291A2300 | G16455 | 608104014700 |
| SOUTH TIMBALIER 295 #A001 | ST295A0102 | G05646 | 177164010302 |
| SOUTH TIMBALIER 295 #A002 | ST295A0200 | G05646 | 177164005500 |
| SOUTH TIMBALIER 295 #A003 | ST295A0300 | G05646 | 177164010400 |
| SOUTH TIMBALIER 295 #A004 | ST295A0400 | G05646 | 177164011300 |
| SOUTH TIMBALIER 295 #A005 | ST295A0500 | G05646 | 177164011600 |
| SOUTH TIMBALIER 295 #A006 | ST295A0600 | G05646 | 177164011800 |
| SOUTH TIMBALIER 295 #A007 | ST295A0700 | G05646 | 177164012000 |
| SOUTH TIMBALIER 295 #A008 | ST295A0800 | G05646 | 177164012200 |
| SOUTH TIMBALIER 295 #A009 | ST295A0900 | G05646 | 177164012300 |
| SOUTH TIMBALIER 295 #A011 | ST295A1100 | G05646 | 177164012700 |
| SOUTH TIMBALIER 295 #A012 | ST295A1200 | G05646 | 177164012400 |
| SOUTH TIMBALIER 295 #A013 ST1 | ST295A1301 | G05646 | 177164012901 |
| SOUTH TIMBALIER 295 #A014 | ST295A1400 | G05646 | 177164013400 |
| SOUTH TIMBALIER 295 #A015 | ST295A1500 | G05646 | 177164013700 |
| SOUTH TIMBALIER 295 #A016 ST1 | ST295A1601 | G05646 | 177164013901 |
| SOUTH TIMBALIER 295 #A017 | ST295A1700 | G05646 | 177164014000 |
| SOUTH TIMBALIER 295 #A018 | ST295A1800 | G05646 | 177164014400 |
| SOUTH TIMBALIER 295 #A020 | ST295A2000 | G05646 | 177164014700 |
| SOUTH TIMBALIER 295 #A021 ST2 | ST295A2102 | G05646 | 177164014902 |
| SOUTH TIMBALIER 295 #A022 ST3 | ST295A2203 | G05646 | 177164017703 |
| SOUTH TIMBALIER 295 #A023 | ST295A2300 | G05646 | 177164018000 |
| SOUTH TIMBALIER 295 #A024 | ST295A2400 | G05646 | 177164018300 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH TIMBALIER 295 #A025D | ST295A25D0 | G05646 | 177164018100 |
| SOUTH TIMBALIER 295 #A026 | ST295A2600 | G05646 | 177164018400 |
| SOUTH TIMBALIER 295 #A027 | ST295A2700 | G05646 | 177164018500 |
| SOUTH TIMBALIER 295 #A030 | ST295A3000 | G05646 | 177164022600 |
| SOUTH TIMBALIER 295 #A031 | ST295A3100 | G05646 | 177164026100 |
| SOUTH TIMBALIER 295 #A032 | ST295A3200 | G05646 | 177164027800 |
| SOUTH TIMBALIER 295 #B001 | ST295B0100 | G05646 | 177164028900 |
| SOUTH TIMBALIER 295 #B002 ST1 | ST295B0201 | G05646 | 177164029301 |
| SOUTH TIMBALIER 295 #B003 | ST295B0302 | G05646 | 177164029202 |
| SOUTH TIMBALIER 295 #B004 ST1 | ST295B0401 | G05646 | 177164029101 |
| SOUTH TIMBALIER 295 #B005 | ST295B0500 | G05646 | 177164030000 |
| SOUTH TIMBALIER 295 #B006 ST3 | ST295B0603 | G05646 | 177164030403 |
| SOUTH TIMBALIER 296 #001 | ST29600100 | G12981 | 177164020900 |
| SOUTH TIMBALIER 296 #A028 | ST296A2800 | G12981 | 177164021700 |
| SOUTH TIMBALIER 311 # A 1 | ST311A01 | G31418 | 177164035500 |
| SOUTH TIMBALIER 311 # A-4 | ST311A04 | G31418 | 177164036400 |
| SOUTH TIMBALIER 316 #A001 | ST316A0100 | G22762 | 177164028600 |
| SOUTH TIMBALIER 316 #A002 | ST316A0200 | G22762 | 177164028800 |
| SOUTH TIMBALIER 316 #A006 | ST316A0602 | G22762 | 177164035302 |
| SOUTH TIMBALIER 320 #A002 | ST320A02 | G24990 | 177164036200 |
| SOUTH TIMBALIER 320 #A003 | ST320A03 | G24990 | 177164036300 |
| SOUTH TIMBALIER 320 #A005 ST | ST320A05 | G24990 | 608104010401 |
| tEAST CAMERON 278 #C010 | EC278C1001 | G00974 | 177044110001 |
| VERMILION 261 #A001 | VR261A0100 | G03328 | 177064029000 |
| VERMILION 261 #A002 | VR261A0200 | G03328 | 177064033000 |
| VERMILION 261 #A004 | VR261A0402 | G03328 | 177064032902 |
| VERMILION 261 #A005 | VR261A0500 | G03328 | 177064034600 |
| VERMILION 261 #A007 | VR261A0700 | G03328 | 177064035400 |
| VERMILION 261 #A008 | VR261A0800 | G03328 | 177064084900 |
| VERMILION 262 #A006 | VR262A06 | G34257 | 177064035201 |
| VERMILION 265 #A001 ST | VR265A0101 | G01955 | 177064003101 |
| VERMILION 265 #A002 ST1 | VR265A0201 | G01955 | 177064004701 |
| VERMILION 265 #A003 ST1 | VR265A0301 | G01955 | 177064003201 |
| VERMILION 265 #A006 | VR265A0600 | G01955 | 177064005300 |
| VERMILION 265 #A007 ST1 | VR265A0701 | G01955 | 177064005501 |
| VERMILION 265 #A010 | VR265A1000 | G01955 | 177064006200 |
| VERMILION 265 #A014ST1 | VR265A1401 | G01955 | 177064029101 |
| VERMILION 265 #A016ST1 | VR265A1601 | G01955 | 177064029301 |
| VERMILION 265 #A017ST1 | VR265A1701 | G01955 | 177064033201 |
| VERMILION 265 #A021 | VR265A2100 | G01955 | 177064057100 |
| VERMILION 265 #A025 | VR265A2500 | G01955 | 177064057400 |
| VERMILION 265 #A027ST1 | VR265A2701 | G01955 | 177064058101 |
| VERMILION 271 #I003 | VR271I0300 | G04800 | 177064098100 |
| VERMILION 326 #A001 | VR326A0100 | G21096 | 177064085000 |
| VERMILION 369 #A014 | VR369A1400 | G02274 | 177064073400 |
| VERMILION 369 #D001 | VR369D01 | G02274 | 177064087000 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VERMILION 380 #009 | VR38000900 | G02580 | 177064080100 |
| VERMILION 380 #A001 ST1 | VR380A0101 | G02580 | 177064044301 |
| VERMILION 380 #A003 ST1 | VR380A0301 | G02580 | 177064044901 |
| VERMILION 380 #A005 | VR380A0500 | G02580 | 177064046300 |
| VERMILION 380 #A006 ST2 | VR380A0602 | G02580 | 177064046402 |
| VERMILION 380 #A008 ST1 | VR380A0801 | G02580 | 177064046901 |
| VERMILION 380 #A010 | VR380A1000 | G02580 | 177064047600 |
| VERMILION 380 #A011 | VR380A1100 | G02580 | 177064048000 |
| VERMILION 380 #A012 | VR380A1200 | G02580 | 177064048700 |
| VERMILION 380 #A015 ST4 | VR380A1504 | G02580 | 177064049004 |
| VERMILION 380 #A016 ST2 | VR380A1602 | G02580 | 177064048702 |
| VERMILION 380 #A020 ST1 | VR380A2001 | G02580 | 177064095601 |
| VERMILION 381 #A017 | VR381A1700 | G16314 | 177064085500 |
| VERMILION 381 #A018 ST2 | VR381A1802 | G16314 | 177064085702 |
| VERMILION 381 #A021 ST1 | VR381A2101 | G16314 | 177064095801 |
| VIOSCA KNOLL 693 #001 | VK69300100 | G07898 | 608164015700 |
| VIOSCA KNOLL 693 #002 | VK69300200 | G07898 | 608164016000 |
| VIOSCA KNOLL 694 #001 | VK69400100 | G13055 | 608164016600 |
| VIOSCA KNOLL 694 #002 | VK69400200 | G13055 | 608164016700 |
| VIOSCA KNOLL 694 #003 ST1 | VK69400301 | G13055 | 608164036701 |
| VIOSCA KNOLL 694 #004 | VK69400400 | G13055 | 608164030900 |
| VIOSCA KNOLL 694 #A009 | VK694A0900 | G13055 | 177244073300 |
| VIOSCA KNOLL 824 #004 | VK82400402 | G15436 | 608164032902 |
| WEST CAMERON 033 #001 | WC03300100 | G15050 | 177004105100 |
| WEST CAMERON 033 #001 SL16473 | SL16473010 | 16473 | 177002024400 |
| WEST CAMERON 033 #002 SL16473 | SL16473020 | 16473 | 177002024500 |
| WEST CAMERON 033 #N001 (EC2) | WC033N0100 | G15050 | 177004124000 |
| WEST CAMERON 033 #N002 (EC2) | WC033N0200 | G15050 | 177004124600 |
| WEST CAMERON 033 #N003 (EC2) | WC033N0300 | G15050 | 177004125400 |
| WEST CAMERON 033 #N004 (EC2) | WC033N0400 | G15050 | 177004125500 |
| WEST CAMERON 033 #O001 | WC033O0100 | G15050 | 177004126500 |
| WEST CAMERON 033 #O002 | WC033O0200 | G15050 | 177004126600 |
| WEST CAMERON 033 #O003 | WC033O0300 | G15050 | 177004126800 |
| WEST CAMERON 033 #O004 | WC033O0400 | G15050 | 177004126900 |
| WEST CAMERON 035 #A014 | WC035A1400 | G02819 | 177004017000 |
| WEST CAMERON 035 #B005 | WC035B0500 | G02819 | 177004018600 |
| WEST CAMERON 035 #B013 | WC035B1300 | G02819 | 177004024300 |
| WEST CAMERON 035 #C003 | WC035C0300 | G02819 | 177004037600 |
| WEST CAMERON 035 #C004 | WC035C0401 | G02819 | 177004038701 |
| WEST CAMERON 035 #D005 | WC035D0500 | G01860 | 177004039101 |
| WEST CAMERON 065 #008 | WC06500801 | G02825 | 177004103701 |
| WEST CAMERON 065 #009 | WC06500900 | G02825 | 177004105500 |
| WEST CAMERON 065 #B018 | WC065B1800 | G02825 | 177004098900 |
| WEST CAMERON 065 #B019 | WC065B1901 | G02825 | 177004099501 |
| WEST CAMERON 065 #B020 ST2 | WC065B2001 | G02825 | 177004099701 |
| WEST CAMERON 065 #E007 | WC065E0700 | G02825 | 177004129600 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|------------|----------------|--------------|-----|
| WEST CAMERON 065 #JA001 | WC065JA100 | G02825 | 177004023300 |
| WEST CAMERON 065 #JA002 | WC065JA200 | G02825 | 177004024600 |
| WEST CAMERON 065 #JA003 | WC065JA300 | G02825 | 177004040400 |
| WEST CAMERON 065 #JA004 | WC065JA400 | G02825 | 177004041500 |
| WEST CAMERON 065 #JA005 | WC065JA500 | G02825 | 177004075400 |
| WEST CAMERON 066 #A001 | WC066A0100 | G01860 | 177004011300 |
| WEST CAMERON 066 #A002 | WC066A0200 | G01860 | 177004011800 |
| WEST CAMERON 066 #A003 | WC066A0300 | G01860 | 177004012400 |
| WEST CAMERON 066 #A004 | WC066A0400 | G01860 | 177004012600 |
| WEST CAMERON 066 #A005 | WC066A0500 | G01860 | 177004012800 |
| WEST CAMERON 066 #A006 | WC066A0600 | G01860 | 177004013200 |
| WEST CAMERON 066 #A007 (WC35) | WC035A0700 | G01860 | 177004013500 |
| WEST CAMERON 066 #A008 | WC066A0800 | G01860 | 177004014100 |
| WEST CAMERON 066 #A009 | WC066A0900 | G01860 | 177004014500 |
| WEST CAMERON 066 #A010 | WC066A1000 | G01860 | 177004014700 |
| WEST CAMERON 066 #A011 | WC066A1100 | G01860 | 177004014900 |
| WEST CAMERON 066 #A012 (WC35) | WC035A1200 | G01860 | 177004015700 |
| WEST CAMERON 066 #A015 | WC066A1500 | G01860 | 177004096100 |
| WEST CAMERON 066 #A016 | WC066A1601 | G01860 | 177004096601 |
| WEST CAMERON 066 #A017 | WC066A1700 | G02826 | 177004100600 |
| WEST CAMERON 066 #B002 | WC066B0200 | G02826 | 177004017600 |
| WEST CAMERON 066 #B003 | WC066B0300 | G02826 | 177004017800 |
| WEST CAMERON 066 #B004 | WC066B0400 | G02826 | 177004018300 |
| WEST CAMERON 066 #B006 | WC066B0600 | G02826 | 177004019100 |
| WEST CAMERON 066 #B007 | WC066B0700 | G02826 | 177004019600 |
| WEST CAMERON 066 #B008D | WC066B08D0 | G02826 | 177004020400 |
| WEST CAMERON 066 #B009 | WC066B0900 | G02826 | 177004020801 |
| WEST CAMERON 066 #B010 | WC066B1000 | G02826 | 177004021400 |
| WEST CAMERON 066 #B012 | WC066B1200 | G02826 | 177004023000 |
| WEST CAMERON 066 #B014 | WC066B1401 | G02826 | 177004022001 |
| WEST CAMERON 066 #B015 | WC066B1500 | G02826 | 177004087600 |
| WEST CAMERON 066 #B016 | WC066B1601 | G02826 | 177004097101 |
| WEST CAMERON 066 #B017 | WC066B1700 | G02826 | 177004098700 |
| WEST CAMERON 066 #C001 | WC066C0102 | G01860 | 177004010502 |
| WEST CAMERON 066 #C002 ST3 | WC066C0203 | G01860 | 177004036603 |
| WEST CAMERON 066 #C005 ST2 | WC066C0502 | G01860 | 177004098302 |
| WEST CAMERON 066 #D007 | WC066D0702 | G01860 | 177004042902 |
| WEST CAMERON 066 #E001 | WC066E0100 | G02826 | 177004034700 |
| WEST CAMERON 066 #E002 | WC066E0200 | G02826 | 177004043400 |
| WEST CAMERON 066 #E003 | WC066E0300 | G02826 | 177004047900 |
| WEST CAMERON 066 #E004 | WC066E0400 | G02826 | 177004051500 |
| WEST CAMERON 066 #E006 | WC066E0600 | G02826 | 177004090700 |
| WEST CAMERON 071 #018 | WC07101800 | 00244 | 177004029400 |
| WEST CAMERON 071 #023 | WC07102300 | 00244 | 177004040500 |
| WEST CAMERON 071 #026 | WC07102600 | 00244 | 177004067600 |
| WEST CAMERON 071 #027 | WC07102700 | 00244 | 177004069700 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 071 #028 | WC07102800 | 00244 | 177004071000 |
| WEST CAMERON 071 #031 | WC07103100 | 00244 | 177004118900 |
| WEST CAMERON 071 #D001 | WC071D0100 | 00244 | 177002000100 |
| WEST CAMERON 071 #D003 | WC071D0300 | 00244 | 177002004800 |
| WEST CAMERON 071 #D005 | WC071D0501 | 00244 | 177002004101 |
| WEST CAMERON 071 #D006 | WC071D0600 | 00244 | 177002006900 |
| WEST CAMERON 071 #D009 | WC071D0900 | 00244 | 177002008000 |
| WEST CAMERON 071 #F001 | WC071F0100 | 00244 | 177004102400 |
| WEST CAMERON 071 #F002 | WC071F0200 | 00244 | 177004102600 |
| WEST CAMERON 072 #001 | WC07200100 | G23735 | 177004114900 |
| WEST CAMERON 072 #002 | WC07200200 | G23735 | 177004119400 |
| WEST CAMERON 072 #003 | WC07200301 | G23735 | 177004125001 |
| WEST CAMERON 102 #002 | WC10200200 | 00247 | 177002009300 |
| WEST CAMERON 102 #005 | WC10200500 | 00247 | 177004006800 |
| WEST CAMERON 102 #007 | WC10200700 | 00247 | 177004008600 |
| WEST CAMERON 102 #008 | WC10200800 | 00247 | 177004009400 |
| WEST CAMERON 102 #022 | WC10202200 | 00247 | 177004064300 |
| WEST CAMERON 102 #024 | WC10202400 | 00247 | 177004062500 |
| WEST CAMERON 102 #H001 | WC102H0100 | 00247 | 177004103400 |
| WEST CAMERON 102 #H002 | WC102H0202 | 00247 | 177004104402 |
| WEST CAMERON 110 #006 | WC11000600 | 00081 | 177002002700 |
| WEST CAMERON 110 #007 | WC11000700 | 00081 | 177002003000 |
| WEST CAMERON 110 #010 ST1 | WC11001001 | 00081 | 177004025001 |
| WEST CAMERON 110 #011 | WC11001100 | 00081 | 177004083400 |
| WEST CAMERON 110 #012 ST2 | WC11001202 | 00081 | 177004086302 |
| WEST CAMERON 110 #014 ST2 | WC11001402 | 00081 | 177004090002 |
| WEST CAMERON 110 #015 ST1 | WC11001501 | 00081 | 177004106501 |
| WEST CAMERON 110 #018 ST2 | WC11001802 | 00081 | 177004127002 |
| WEST CAMERON 110 #019 ST1 | WC11001901 | 00081 | 177004127801 |
| WEST CAMERON 110 #05A | WC1105AD64 | 00081 | 177002002200 |
| WEST CAMERON 110 #A001 | WC110A0100 | 00081 | 177000013100 |
| WEST CAMERON 110 #A002C | WC110A02C0 | 00081 | 177000013200 |
| WEST CAMERON 110 #A003 | WC110A0300 | 00081 | 177000013300 |
| WEST CAMERON 110 #A004 | WC110A0400 | 00081 | 177000013400 |
| WEST CAMERON 110 #A005 | WC110A0500 | 00081 | 177000038900 |
| WEST CAMERON 110 #A006 | WC110A0600 | 00081 | 177002004000 |
| WEST CAMERON 110 #C001 | WC110C0100 | 00081 | 177004112500 |
| WEST CAMERON 110 #F001 | WC110F0100 | 00081 | 177004107300 |
| WEST CAMERON 110 #F002 | WC110F0200 | 00081 | 177004119300 |
| WEST CAMERON 290 #002 | WC29002 | G04818 | 177014018400 |
| WEST CAMERON 290 #A001 | WC290A0100 | G04818 | 177014020700 |
| WEST CAMERON 290 #A002 | WC290A0200 | G04818 | 177014024200 |
| WEST CAMERON 290 #A003 | WC290A0300 | G04818 | 177014029100 |
| WEST CAMERON 295 #A001 | WC295A0101 | G24730 | 177014037501 |
| WEST CAMERON 295 #A002 | WC295A0201 | G24730 | 177014039001 |
| WEST CAMERON 67 #D1 | WC067D0100 | G03256 | 177004031600 |

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 67 #D10 | - | G03256 | 177004098501 |
| WEST CAMERON 67 #D6 | - | G03256 | 177004040700 |
| WEST CAMERON 67 #D9 | WC067D0900 | G03256 | 177004078600 |
| WEST DELTA 053 #001 | WD05300100 | 17935 | 170752037400 |
| WEST DELTA 068 #U001 | WD068U0100 | 00180 | 177190136200 |
| WEST DELTA 068 #U004 | WD068U0400 | 00180 | 177192007000 |
| WEST DELTA 068 #U005 ST2 | WD068U0502 | 00180 | 177192007502 |
| WEST DELTA 068 #U006 | WD068U0600 | 00180 | 177192008600 |
| WEST DELTA 068 #U009 | WD068U0900 | 00180 | 177192011401 |
| WEST DELTA 068 #U011 | WD068U11 | 00180 | 177192013603 |
| WEST DELTA 068 #U013 ST2 | WD068U1302 | 00180 | 177194065502 |
| WEST DELTA 068 #U014 | WD068U1400 | 00180 | 177194065300 |
| WEST DELTA 069 #D007 ST2 | WD069D0702 | 00181 | 177190063802 |
| WEST DELTA 070 #D001D | WD070D0100 | 00182 | 177190063300 |
| WEST DELTA 070 #D005 | WD070D0500 | 00182 | 177190063600 |
| WEST DELTA 070 #D008 | WD070D0800 | 00182 | 177190063900 |
| WEST DELTA 070 #D009 | WD070D0900 | 00182 | 177190064000 |
| WEST DELTA 070 #D010 | WD070D1000 | 00182 | 177190066700 |
| WEST DELTA 070 #D011 | WD070D1100 | 00182 | 177194036800 |
| WEST DELTA 070 #D012 | WD070D1200 | 00182 | 177194037200 |
| WEST DELTA 070 #D013 | WD070D1300 | 00182 | 177194057000 |
| WEST DELTA 070 #D014 | WD070D1400 | 00182 | 177194057200 |
| WEST DELTA 070 #E001 ST1 | WD070E0101 | 00182 | 177190108201 |
| WEST DELTA 070 #E002 | WD070E0200 | 00182 | 177190067800 |
| WEST DELTA 070 #E003 | WD070E0300 | 00182 | 177190066500 |
| WEST DELTA 070 #FF001 | WD070FF100 | 00182 | 177194084200 |
| WEST DELTA 070 #FF002 | WD070FF200 | 00182 | 177194084300 |
| WEST DELTA 070 #FF003 | WD070FF300 | 00182 | 177194084400 |
| WEST DELTA 070 #I003 ST1 | WD070I0301 | 00182 | 177190091301 |
| WEST DELTA 070 #I004 | WD070I0400 | 00182 | 177190091500 |
| WEST DELTA 070 #I005 ST1 | WD070I0501 | 00182 | 177190095001 |
| WEST DELTA 070 #I006 TV | WD070I0601 | 00182 | 177190095101 |
| WEST DELTA 070 #I008 ST1 | WD070I0801 | 00182 | 177190102101 |
| WEST DELTA 070 #I010 ST1 | WD070I1001 | 00182 | 177190105701 |
| WEST DELTA 070 #I012 STBP2 | WD070I1202 | 00182 | 177194010702 |
| WEST DELTA 070 #I013 | WD070I1300 | 00182 | 177194038400 |
| WEST DELTA 070 #I014 | WD070I1400 | 00182 | 177194061100 |
| WEST DELTA 070 #I015 | WD070I1500 | 00182 | 177194061300 |
| WEST DELTA 070 #I016 ST | WD070I1601 | 00182 | 177194064201 |
| WEST DELTA 070 #I017 | WD070I1700 | 00182 | 177194064600 |
| WEST DELTA 070 #L003 | WD070L0300 | 00182 | 177190113800 |
| WEST DELTA 070 #L004 | WD070L0400 | 00182 | 177190115100 |
| WEST DELTA 070 #L005 | WD070L0500 | 00182 | 177190115500 |
| WEST DELTA 070 #L006 | WD070L0600 | 00182 | 177190115000 |
| WEST DELTA 070 #L010 | WD070L1000 | 00182 | 177190119500 |
| WEST DELTA 070 #L011 | WD070L1100 | 00182 | 177190121400 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 071 #E006 | WD071E0600 | 00838 | 177190073200 |
| WEST DELTA 071 #E007 ST1 | WD071E0701 | 00838 | 177190095601 |
| WEST DELTA 071 #E009 ST1 | WD071E0901 | 00838 | 177190091701 |
| WEST DELTA 071 #E010 | WD071E1000 | 00838 | 177190095700 |
| WEST DELTA 071 #O001 ST2 | WD071O0102 | 00838 | 177190118502 |
| WEST DELTA 071 #O003 | WD071O0300 | 00838 | 177190121500 |
| WEST DELTA 071 #O004 ST1 | WD071O0401 | 00838 | 177190124301 |
| WEST DELTA 071 #O005 | WD071O0501 | 00838 | 177190125001 |
| WEST DELTA 071 #O006 | WD071O0601 | 00838 | 177190127101 |
| WEST DELTA 071 #O007 | WD071O0702 | 00838 | 177190129602 |
| WEST DELTA 071 #O009 | WD071O0900 | 00838 | 177190133600 |
| WEST DELTA 071 #O010 | WD071O1000 | 00838 | 177194002500 |
| WEST DELTA 071 #O013 | WD071O1303 | 00838 | 177192001102 |
| WEST DELTA 075 #A004B | WD075A04B0 | G01085 | 177190074300 |
| WEST DELTA 075 #A010D | WD075A10D0 | G01085 | 177190082700 |
| WEST DELTA 075 #A015 | WD075A1500 | G01085 | 177194030300 |
| WEST DELTA 075 #B002 | WD075B0201 | G01085 | 177190131301 |
| WEST DELTA 075 #B009 | WD075B0900 | G01085 | 177190136800 |
| WEST DELTA 075 #B017 ST | WD075B1701 | G01085 | 177194019501 |
| WEST DELTA 075 #B024 | WD075B2400 | G01085 | 177194045700 |
| WEST DELTA 075 #B026 ST | WD075B2601 | G01085 | 177194046601 |
| WEST DELTA 075 #F002 ST2 | WD075F0200 | G01085 | 177194042800 |
| WEST DELTA 075 #G002 | WD075G0200 | G01085 | 177194056600 |
| WEST DELTA 090 #A001 | WD090A0100 | G01089 | 177190061600 |
| WEST DELTA 090 #A005 | WD090A0500 | G01089 | 177190128700 |
| WEST DELTA 090 #A009D | WD090A09D0 | G01089 | 177190077300 |
| WEST DELTA 090 #B004 ST1 | WD090B0401 | G01089 | 177190132101 |
| WEST DELTA 090 #B011 ST | WD090B1101 | G01089 | 177192000801 |
| WEST DELTA 090 #B018 | WD090B1800 | G01089 | 177194040400 |
| WEST DELTA 090 #B020 | WD090B2001 | G01089 | 177190135901 |
| WEST DELTA 090 #B021 | WD090B2100 | G01089 | 177194041500 |
| WEST DELTA 090 #B027 | WD090B2700 | G01089 | 177194046700 |
| WEST DELTA 090 #F004 | WD090F0400 | G01089 | 177194057700 |
| WEST DELTA 090 #F005 ST2 | WD090F0502 | G01089 | 177194057902 |
| WEST DELTA 090 #F006 | WD090F0600 | G01089 | 177194058601 |
| WEST DELTA 094 #V001 | WD094V0100 | 00839 | 177192005700 |
| WEST DELTA 094 #V002 | WD094V0200 | 00839 | 177192011600 |
| WEST DELTA 094 #V003 | WD094V0300 | 00839 | 177192014900 |
| WEST DELTA 094 #V004 | WD094V0400 | 00839 | 177192015500 |
| WEST DELTA 094 #V014 | WD094V1400 | 00839 | 177194039000 |
| WEST DELTA 094 #V015 | WD094V1500 | 00839 | 177194064000 |
| WEST DELTA 094 #V016 | WD094V1602 | 00839 | 177194063900 |
| WEST DELTA 095 #S005 ST1BP1 | WD095S0502 | G01497 | 177190126202 |
| WEST DELTA 095 #S006 | WD095S0600 | G01497 | 177190135400 |
| WEST DELTA 095 #S008 | WD095S0800 | G01497 | 177190127700 |
| WEST DELTA 095 #S010 ST1 | WD095S1001 | G01497 | 177192000101 |

**Exhibit I-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST DELTA 095 #S012 ST | WD095S1201 | G01497 | 177192002301 |
| WEST DELTA 095 #X001 ST | WD095X0101 | G01497 | 177194002901 |
| WEST DELTA 095 #X003 | WD095X0300 | G01497 | 177194003200 |
| WEST DELTA 095 #X007 ST1 | WD095X0701 | G01497 | 177194003701 |
| WEST DELTA 095 #X010 ST2 | WD095X1001 | G01497 | 177194055301 |
| WEST DELTA 095 #X011 | WD095X1100 | G01497 | 177194055700 |
| WEST DELTA 095 #X012D | WD095X12D0 | G01497 | 177194055900 |
| WEST DELTA 096 #S002 ST1BP1 | WD096S0202 | G01498 | 177190123402 |
| WEST DELTA 096 #S007 ST1 | WD096S0701 | G01498 | 177190132901 |
| WEST DELTA 096 #X004 ST1 | WD096X0401 | G01498 | 177194003301 |
| WEST DELTA 096 #X006 ST2 | WD096X0602 | G01498 | 177194003502 |
| WEST DELTA 096 #X009 | WD096X0900 | G01498 | 177194004000 |
| WEST DELTA 103 #F001 ST1 | WD103F0101 | G12360 | 177194054801 |
| WEST DELTA 103 #F002 | WD103F0200 | G12360 | 177194055100 |
| WEST DELTA 103 #F003 | WD103F0300 | G12360 | 177194058200 |
| WEST DELTA 103 #F007 | WD103F0700 | 00840 | 177194083800 |
| WEST DELTA 104 #D005 | WD104D0500 | 00841 | 177190116200 |
| WEST DELTA 104 #D009 | WD104D0900 | 00841 | 177190118400 |
| WEST DELTA 104 #D010 ST | WD104D1001 | 00841 | 177190119801 |
| WEST DELTA 104 #D011 | WD104D1100 | 00841 | 177190119900 |
| WEST DELTA 104 #D012 | WD104D1200 | 00841 | 177190120500 |
| WEST DELTA 104 #D013 | WD104D1300 | 00841 | 177194068900 |
| WEST DELTA 104 #D014 | WD104D1400 | 00841 | 177194083900 |
| WEST DELTA 104 #E004 | WD104E0401 | 00841 | 177194040901 |
| WEST DELTA 104 #E009 | WD104E0901 | 00841 | 177194041601 |
| WEST DELTA 104 #E010 | WD104E1002 | 00841 | 177194040702 |
| WEST DELTA 104 #E015 | WD104E1504 | 00841 | 177194042504 |
| WEST DELTA 104 #E020 | WD104E2001 | 00841 | 177194064901 |
| WEST DELTA 105 #D003 | WD105D0300 | 00842 | 177190114300 |
| WEST DELTA 105 #E001 ST3 | WD105E0103 | 00842 | 177194039803 |
| WEST DELTA 105 #E002 ST1 | WD105E0201 | 00842 | 177194039901 |
| WEST DELTA 105 #E003 | WD105E0301 | 00842 | 177194040001 |
| WEST DELTA 105 #E005A | WD105E05A0 | 00842 | 177194040500 |
| WEST DELTA 105 #E006 | WD105E0600 | 00842 | 177194041000 |
| WEST DELTA 105 #E007 | WD105E0700 | 00842 | 177194040600 |
| WEST DELTA 105 #E008 ST1 | WD105E0801 | 00842 | 177194041101 |
| WEST DELTA 105 #E011 | WD105E1101 | 00842 | 177194041401 |
| WEST DELTA 105 #E012 | WD105E1200 | 00842 | 177194041800 |
| WEST DELTA 105 #E013 ST1 | WD105E1301 | 00842 | 177194042001 |
| WEST DELTA 105 #E014 | WD105E1400 | 00842 | 177194043200 |

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| BRAZOS 491 P/F-4 | BA4914CAS | G06069 | BA491 | 100.0% |
| BRAZOS 491 P/F-5 | BA4915CAS | G06069 | BA491 | 100.0% |
| BRAZOS 491 P/F-A | BA491AWP | G06069 | BA491 | 100.0% |
| BRAZOS A-105 P/F-A | BAA105PFA | G01757 | BAA105 | 12.5% |
| BRAZOS A-105 P/F-B | BAA105PFB | G01757 | BAA105 | 12.5% |
| BRAZOS A-133 P/F-A | BAA133APLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-B | BAA133BPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-C-AUX | BAA133CAUX | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-D | BAA133DPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-E | BAA133EPLT | G02665 | BAA133 | 25.0% |
| CHANDELEUR 043 P/F-A | CA43APLT | G32268 | CA043 | 50.00% |
| EAST CAMERON 002 P/F-1 SL16475 | SL164751PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-1 SL18121 | SL181211PT | 18121 | EC002 | 50.0000% |
| EAST CAMERON 002 P/F-1/1D16473 | SL164731PT | 16473 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-2 SL16475 | SL164752PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-2/2D16473 | SL164732PT | 16473 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-3/3D16475 | SL164753PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-4/4D16475 | SL164754PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-5 SL16475 | SL164755PT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-B (SL) | EC2BSL | 16475 | EC002 | 89.0625% |
| EAST CAMERON 002 P/F-C SL16475 | EC2CPLT | 16475 | EC002 | 89.0625% |
| EAST CAMERON 014 P/F-12 | EC1412CAS | G01440 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-13 | EC1413CAS | G01440 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-B | EC014PFB | G13572 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-CF | EC14CFPLT | G01440 | EC014 | 100.0000% |
| EAST CAMERON 014 P/F-CF-2 | EC14CF2PLT | G01440 | EC014 | 100.0000% |
| EAST CAMERON 265 P/F-D | EC265DPLT | G00972 | EC265 | 50.0000% |
| EAST CAMERON 278 P/F-B | EC278BPLT | G00974 | EC278 | 50.0000% |
| EAST CAMERON 278 P/F-C | EC278CPLT | G00974 | EC278 | 50.0000% |
| EAST CAMERON 338 P/F-A | EC338PFA | G02063 | EC338 | 15.6694% |
| EUGENE IS 053 P/F-10 | EI5310CAS | 00479 | EI053 | 100.0000% |
| EUGENE IS 053 P/F-12 | EI5312CAS | 00479 | EI053 | 100.0000% |
| EUGENE IS 053 P/F-8 | EI538CAS | 00479 | EI053 | 66.6667% |
| EUGENE IS 053 P/F-9 | EI539PLT | 00479 | EI053 | 66.6667% |
| EUGENE IS 053 P/F-B | EI53BPLT | 00479 | EI053 | 66.6667% |
| EUGENE IS 053 P/F-C | EI53CPLT | 00479 | EI053 | 83.3334% |
| EUGENE IS 053 P/F-D | EI53DCAS | 00479 | EI053 | 100.0000% |
| EUGENE IS 053 P/F-G | EI53GCAS | 00479 | EI053 | 66.6667% |
| EUGENE IS 089 P/F-23 | EI089PF23 | 00044 | EI089 | 75.0000% |
| EUGENE IS 119 P/F-13 | EI11913CAS | 00050 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-30 | EI11930WP | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-33 | EI11933CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-33-AUX | EI11933AUX | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-34 | EI11934CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-35 | EI11935CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-37 | EI11937CAS | 00049 | EI119 | 50.0000% |
| EUGENE IS 119 P/F-37 H | EI11937HCA | 00049 | EI119 | 50.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EUGENE IS 119 P/F-F | EI119FPLT | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-I | EI119IPLT | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-I-8 | EI119I8CAS | 00050 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-K | EI119KPLT | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-M-4 | EI119M4WP | 00049 | EI119 | 100.0000% |
| EUGENE IS 119 P/F-M-7 | EI119M7CAS | 00049 | EI119 | 100.0000% |
| EUGENE IS 120 P/F-11 | EI12011CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-12 | EI12012CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-14 | EI12014CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-15 | EI12015CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-17 | EI12017CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-19 | EI12019CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-20 | EI12020CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-9 | EI1209CAS | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-CF-QTRS | EI120CFQTR | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-CMP1 | EI120CMP1 | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-CMP2 | EI120CMP2 | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-FIRE STA | EI120FIRE | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-PROD | EI120PRD | 00050 | EI120 | 100.0000% |
| EUGENE IS 120 P/F-SC | EI120SCPLT | 00050 | EI120 | 100.0000% |
| EUGENE IS 125 P/F-2 | EI1252CAS | 00051 | EI125 | 100.0000% |
| EUGENE IS 125 P/F-A | EI125APLT | 00051 | EI125 | 100.0000% |
| EUGENE IS 125 P/F-R | EI125RPLT | 00051 | EI125 | 100.0000% |
| EUGENE IS 126 P/F-12 | EI12612CAS | 00052 | EI126 | 100.0000% |
| EUGENE IS 126 P/F-31 | EI12631CAS | 00052 | EI126 | 100.0000% |
| EUGENE IS 136 P/F-1 | EI1361CAS | G03152 | EI136 | 100.0000% |
| EUGENE IS 136 P/F-JA | EI136JAPLT | G03152 | EI136 | 100.0000% |
| EUGENE IS 158 P/F-14 | EI15814CAS | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-B | EI158BPLT | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-C | EI158CPLT | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-C-QRT | EI158CQTR | G01220 | EI158 | 100.0000% |
| EUGENE IS 158 P/F-JB | EI158JBPLT | G01220 | EI158 | 100.0000% |
| EUGENE IS 173 P/F-G | EI173GPLT | G13622 | EI173 | 100.0000% |
| EUGENE IS 175 P/F-C-PROD | EI175CPRD | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-D | EI175DPLT | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-F | EI175FPLT | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-H | EI175HCAS | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-I | EI175ICAS | 438 | EI175 | 75.0000% |
| EUGENE IS 175 P/F-J | EI175JPLT | 438 | EI175 | 75.0000% |
| EUGENE IS 187 P/F-2 | EI187PF2 | G10736 | EI187 | 100.0000% |
| EUGENE IS 187 P/F-JC | EI187JCPLT | G10736 | EI187 | 100.0000% |
| EUGENE IS 187 P/F-JD | EI187JDPLT | G10736 | EI187 | 100.0000% |
| EUGENE IS 188 P/F-A | EI188APLT | 00443 | EI188 | 100.0000% |
| EUGENE IS 188 P/F-JE | EI188JEPLT | G10736 | EI188 | 100.0000% |
| EUGENE IS 188 P/F-P-VALVE | EI188PVALV | 00443 | EI188 | 100.0000% |
| EUGENE IS 189 P/F-B | EI189BPLT | 423 | EI189 | 100.0000% |
| EUGENE IS 189 P/F-JG | EI189JGPLT | 423 | EI189 | 100.0000% |

Exhibit I-C(i)

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EUGENE IS 212 P/F-A | EI212APLT | G05503 | EI212 | 66.6667% |
| EUGENE IS 224 P/F-A | EI224APLT | G05504 | EI224 | 100.0000% |
| EUGENE IS 224 P/F-C | EI224CPLT | G05504 | EI224 | 100.0000% |
| EUGENE IS 296 P/F-B | EI296PFB | G01687M | EI 296 | 85.5270% |
| EUGENE IS 307 P/F-A | EI307PFA | G02110 | EI307 | 0.0000% |
| EUGENE IS 307 P/F-B | EI307PFB | G02110 | EI307 | 0.0000% |
| EUGENE IS 312 P/F-D | EI312PFD | G22679 | EI312 | 0.0000% |
| EUGENE IS 315 P/F-A | EI315APLT | G24912 | EI315 | 75.2917% |
| EUGENE IS 315 P/F-C | EI315PFC | G24912 | EI315 | 25.0000% |
| EUGENE IS 316 P/F-A | EI316APLT | G05040 | EI316 | 100.0000% |
| EUGENE IS 330 P/F A C S | EI330ACSPF | G02115 | EI330 | 27.0000% |
| EUGENE IS 330 P/F-B | EI330BPLT | G02115 | EI330 | 65.0249% |
| EUGENE IS 330 P/F-D | EI330DPLT | G02115 | EI330 | 70.0249% |
| EUGENE IS 333 P/F-B | EI333BPLT | G02317 | EI333 | 100.0000% |
| EUGENE IS 334 P/F-D | EI334DPLT | G15263 | EI334 | 100.0000% |
| EUGENE IS 337 P/F-A | EI337APLT | G03332 | EI337 | 100.0000% |
| EUGENE IS 342 P/F-C | EI342CPLT | G02319 | EI342 | 67.4286% |
| EUGENE IS 346 P/F-A | EI346APLT | G14482 | EI346 | 100.0000% |
| EUGENE IS 353 P/F-D | EI353PFD | G02324 | EI353 | 3.7850% |
| EUGENE IS 354 P/F-D | EI354DPLT | G10752 | EI354 | 100.0000% |
| EUGENE IS 360 P/F-C | EI360PFC | G02324 | EI360 | 3.2730% |
| EUGENE IS 360 P/F-E | EI360PFE | G02324 | EI360 | 4.3730% |
| EUGENE IS 361 P/F-A | EI361PFA | G02324 | EI361 | 6.7568% |
| EWING BANK 826 P/F-A | EW826APLT | G05800 | EW826 | 100.0000% |
| GALVESTON 210 P/F-1 | GA2101CAS | G25524 | GA210 | 66.6700% |
| GALVESTON 210 P/F-2 | GA2102CAS | G25524 | GA210 | 66.6700% |
| GALVESTON 210 P/F-B | GA210BPLT | G25524 | GA210 | 66.6700% |
| GRAND ISLE 039 P/F-Q | GI39QPLT | 00127 | GI039 | 75.0000% |
| GRAND ISLE 040 P/F-G | GI40GPLT | 00128 | GI040 | 75.0000% |
| GRAND ISLE 040 P/F-M | GI40MPLT | 00128 | GI040 | 75.0000% |
| GRAND ISLE 041 P/F-B | GI41BPLT | 00129 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-D | GI041PFD | 00129 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-E | GI41EPLT | 00130 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-H | GI41HPLT | 00130 | GI041 | 75.0000% |
| GRAND ISLE 041 P/F-I | GI41ICAS | 00132 | GI041 | 75.0000% |
| GRAND ISLE 042 P/F-C | GI42CPLT | 00131 | GI042 | 75.0000% |
| GRAND ISLE 042 P/F-F | GI42FPLT | 00131 | GI042 | 75.0000% |
| GRAND ISLE 043 P/F-AC-CMP | GI043PFAC | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AP-QRT | GI43APPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AQ-QRT | GI43AQPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AR-RSR | GI43ARPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 043 P/F-AS-SEP | GI43ASPLT | 00175 | GI043 | 75.0000% |
| GRAND ISLE 047 P/F-A | GI47APLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-AP | GI47APPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-AQ-QTRS | GI47AQPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-AX (BRACE) | GI47AXPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 047 P/F-L | GI47LPLT | 00133 | GI047 | 75.0000% |

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| GRAND ISLE 047 P/F-O | GI47OPLT | 00133 | GI047 | 75.0000% |
| GRAND ISLE 048 P/F-E | GI48EPLT | 00134 | GI048 | 75.0000% |
| GRAND ISLE 048 P/F-J | GI48JPLT | 00134 | GI048 | 75.0000% |
| GRAND ISLE 048 P/F-P | GI48PPLT | 00134 | GI048 | 75.0000% |
| GRAND ISLE 054 P/F-A | GI54APLT | G27173 | GI054 | 50.0000% |
| GRAND ISLE 076 P/F-A | GI076PFA | G02161 | GI076 | 95.8333% |
| GRAND ISLE 116 P/F-A | GI116APLT | G13944 | GI116 | 50.0000% |
| HIGH ISLAND 110 P/F-A | HI110PFA | G02353 | HI110 | 20.0000% |
| HIGH ISLAND 110 P/F-B | HI110PFB | G02353 | HI110 | 20.0000% |
| HIGH ISLAND 120 P/F-A-PROCESS | HI120APROC | G01848 | HI120 | 34.33% |
| HIGH ISLAND 129 P/F-1 | HI1291CAS | G01848 | HI129 | 0.0000% |
| HIGH ISLAND 129 P/F-16 | HI12916CAS | G01848 | HI129 | 0.0000% |
| HIGH ISLAND 129 P/F-17 | HI12917CAS | G01848 | HI129 | 90.0000% |
| HIGH ISLAND 129 P/F-18 | HI129PF18 | G01848 | HI129 | 27.0000% |
| HIGH ISLAND 129 P/F-5/6 | HI1295PLT | G01848 | HI129 | 90.0000% |
| HIGH ISLAND 129 P/F-CPF | HI129CPF | G01848 | HI129 | 0.0000% |
| HIGH ISLAND 179 P/F-A | HI179APLT | G03236 | HI179 | 69.0750% |
| HIGH ISLAND 206 P/F-B | HI206BPLT | G20660 | HI206 | 100.0000% |
| HIGH ISLAND A-341 P/F-B | HIA341BPLT | G25605 | HIA341 | 60.0000% |
| HIGH ISLAND A-376 P/F-A | HIA376APLT | G02754 | HIA376 | 48.8298% |
| HIGH ISLAND A-376 P/F-B | HIA376BPLT | G02754 | HIA376 | 48.8298% |
| HIGH ISLAND A-376 P/F-C | HIA376CPLT | G02754 | HIA376 | 48.8298% |
| HIGH ISLAND A-382 P/F-F | HIA382FPLT | G02757 | HIA382 | 72.4106% |
| HIGH ISLAND A-474 P/F-A | HIA474PFA | G02366 | HIA474 | 10.0000% |
| HIGH ISLAND A-489 P/F-B | HIA489PFB | G02372 | HIA489 | 8.5000% |
| HIGH ISLAND A-545 P/F-JA | HIA545JAPT | G17199 | HIA545 | 60.0000% |
| HIGH ISLAND A-573 P/F-A | HIA573APLT | G02393 | HIA573 | 72.4102% |
| HIGH ISLAND A-573 P/F-B | HIA573BPLT | G02393 | HIA573 | 72.4102% |
| HIGH ISLAND A-582 P/F-C | HIA582PFC | G02719 | HIA582 | 18.0975% |
| HIGH ISLAND A-582 P/F-D | HIA582PFD | G02719 | HIA582 | 36.5786% |
| HIGH ISLAND A-595 P/F-CF | HIA595CFPT | G02721 | HIA595 | 72.4102% |
| HIGH ISLAND A-595 P/F-D | HIA595DPLT | G02721 | HIA595 | 72.4102% |
| HIGH ISLAND A-596 P/F-E | HIA596EPLT | G02722 | HIA596 | 72.4102% |
| MAIN PASS 077 P/F-A | MP077PFA | G04481 | MP077 | 26.1683% |
| MAIN PASS 140 P/F-A | MP140APLT | G02193 | MP140 | 65.0000% |
| MAIN PASS 140 P/F-B | MP140BPLT | G02193 | MP140 | 65.0000% |
| MAIN PASS 153 P/F-B | MP153BPLT | G01967 | MP153 | 50.0000% |
| MAIN PASS 153 P/F-C | MP153CPLT | G01967 | MP153 | 50.0000% |
| MAIN PASS 259 P/F-A | MP259APLT | G07827 | MP259 | 56.9016% |
| MAIN PASS 275 P/F-A | MP275APLT | G15395 | MP275 | 100.0000% |
| MAIN PASS 289 P/F-B | MP289BPLT | G01666 | MP289 | 100.0000% |
| MAIN PASS 289 P/F-C | MP289CPLT | G01666 | MP289 | 100.0000% |
| MAIN PASS 296 P/F-B | MP296BPLT | G01673 | MP296 | 55.0343% |
| MAIN PASS 296 P/F-C | MP296CPLT | G01673 | MP296 | 50.4846% |
| MAIN PASS 301 P/F-A | MP301PFA | G04486 | MP301 | 22.7793% |
| MAIN PASS 301 P/F-B | MP301PFB | G04486 | MP301 | 22.7793% |
| MAIN PASS 308 P/F-A | MP308APLT | G32265 | MP308 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| MAIN PASS 310 P/F-A | MP310APLT | G04126 | MP310 | 100.0000% |
| MAIN PASS 310 P/F-JA | MP310JAPT | G04126 | MP310 | 100.0000% |
| MAIN PASS 311 P/F-A | MP311APLT | G02213 | MP311 | 50.0000% |
| MAIN PASS 311 P/F-B | MP311BPLT | G02213 | MP311 | 50.0000% |
| MATAGORDA IS 622 P/F-C | MI622CPLT | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-C-COMPRES | MI622CCMP | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-C-PRD | MI622CPRD | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-C-QRT | MI622CQTR | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 622 P/F-D | MI622DPLT | G05000 | MI622 | 81.0000% |
| MATAGORDA IS 623 P/F-B-DRIL | MI623BPLT | G03088 | MI623 | 81.0000% |
| MATAGORDA IS 623 P/F-B-PRD | MI623BPRD | G03088 | MI623 | 81.0000% |
| MATAGORDA IS 623 P/F-H | MI623HPLT | G03088 | MI623 | 100.0000% |
| MATAGORDA IS 635 P/F-F | MI635FPLT | G06043 | MI635 | 81.0000% |
| MATAGORDA IS 635 P/F-G | MI635GPLT | G05000 | MI635 | 81.0000% |
| MISSISSIPPI CANYON 311 P/F-A | MC311APLT | G02968 | MC311 | 100.0000% |
| MOBILE 821 P/F-A-QRT | MO821AQTR | G05058 | MO821 | 100.0000% |
| MOBILE 826 P/F-D | MO826DPLT | G26176 | MO826 | 75.0000% |
| NORTH PADRE IS 969 P/F-JA | PN969PFJA | G05953 | PN969 | 1.2500% |
| NORTH PADRE IS 975 P/F-A | PN975PFA | G05953 | PN969 | 1.2500% |
| SHIP SHOAL 030 #011 CAS P/F | SS030PF11 | 00333 | SS030 | 28.9474% |
| SHIP SHOAL 030 #013 CAS P/F | SS030PF13 | 00333 | SS030 | 28.9474% |
| SHIP SHOAL 030 P/F-14 | SS030PF14 | 00333 | SS030 | 28.9474% |
| SHIP SHOAL 031 P/F-10 | SS031PF10 | 00334 | SS031 | 28.9474% |
| SHIP SHOAL 031 P/F-A | SS031PFA | 00333 | SS031 | 28.9474% |
| SHIP SHOAL 032 P/F-18 | SS032PF18 | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 032 P/F-20 | SS032PF20 | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 032 P/F-24 | SS032PF24 | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 032 P/F-E-1 | SS032PFE | 00335 | SS032 | 28.9474% |
| SHIP SHOAL 033 #005 CAS P/F | SS033PF05 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 033 P/F-C-1 | SS033PFC1 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 033 P/F-C-2 | SS033PFC2 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 033 P/F-C-3(PROD) | SS033PFC3 | 00336 | SS033 | 28.9474% |
| SHIP SHOAL 068 P/F-05 | SS685CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-10 | SS6810CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-2 | SS682CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-4 | SS684CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-9 | SS689CAS | G02917 | SS068 | 100.0000% |
| SHIP SHOAL 068 P/F-F | SS68FPLT | G02925 | SS068 | 100.0000% |
| SHIP SHOAL 091 P/F-A | SS91APLT | G02919 | SS091 | 100.0000% |
| SHIP SHOAL 091 P/F-B | SS91BPLT | G02919 | SS091 | 100.0000% |
| SHIP SHOAL 105 P/F-A | SS105APLT | G09614 | SS105 | 100.0000% |
| SHIP SHOAL 105 P/F-B | SS105BPLT | G09614 | SS105 | 100.0000% |
| SHIP SHOAL 126 P/F-B | SS126BPLT | G12940 | SS126 | 100.0000% |
| SHIP SHOAL 129 P/F-A | SS129APLT | G12941 | SS129 | 100.0000% |
| SHIP SHOAL 129 P/F-A-AUX | SS129AAUX | G12941 | SS129 | 100.0000% |
| SHIP SHOAL 129 P/F-B | SS129BPLT | G12941 | SS129 | 100.0000% |
| SHIP SHOAL 129 P/F-L | SS129LCAS | G12941 | SS129 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SHIP SHOAL 144 PF 1 | - | G30275 | SS 144 | 15.5400% |
| SHIP SHOAL 169 P/F-BB | SS169PFBB | 00820 | SS169 | 66.6667% |
| SHIP SHOAL 169 P/F-C | SS169PFC | 00820 | SS169 | 66.6667% |
| SHIP SHOAL 169 P/F-G | SS169PFG | 00820 | SS169 | 66.6667% |
| SHIP SHOAL 176 P/F-1 | SS1761PLT | G33646 | SS176 | 57.1429% |
| SHIP SHOAL 178 P/F-A | SS178APLT | G05551 | SS178 | 100.0000% |
| SHIP SHOAL 182 P/F-A | SS182APLT | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 182 P/F-A-AUX | SS182AAUX | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 182 P/F-B | SS182BPLT | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 182 P/F-C | SS182CPLT | G03998 | SS182 | 100.0000% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 99.0000% |
| SHIP SHOAL 189 P/F-C | SS189PFC | G04232 | SS189 | 24.7396% |
| SHIP SHOAL 190 P/F-B | SS190BPLT | G10775 | SS190 | 100.0000% |
| SHIP SHOAL 193 P/F-A | SS193APLT | G13917 | SS193 | 100.0000% |
| SHIP SHOAL 193 P/F-A-PROD | SS193APRD | G13917 | SS193 | 100.0000% |
| SHIP SHOAL 193 P/F-M | SS193MPLT | G13917 | SS193 | 100.0000% |
| SHIP SHOAL 194 P/F-A | SS194APLT | G15288 | SS194 | 100.0000% |
| SHIP SHOAL 198 P/F-G | SS198PFG | 00593 | SS198 | 50.0000% |
| SHIP SHOAL 198 P/F-G-QTRS | SS198PFGQR | 00593 | SS198 | 50.0000% |
| SHIP SHOAL 198 P/F-K | SS198PFK | 00593 | SS198 | 50.0000% |
| SHIP SHOAL 204 P/F-A | SS204APLT | G01520 | SS204 | 55.2000% |
| SHIP SHOAL 204 P/F-A-GEN | SS204AGEN | G01520 | SS204 | 55.2000% |
| SHIP SHOAL 204 P/F-A-PROD | SS204APRD | G01520 | SS204 | 55.2000% |
| SHIP SHOAL 206 P/F-E | SS206EPLT | G01522 | SS206 | 60.0000% |
| SHIP SHOAL 207 P/F-A-CMP | SS207ACOMP | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-A-DRILL | SS207ADRL | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-A-MANTIS | SS207PFAMA | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-A-PROD | SS207APRD | G01523 | SS207 | 52.4000% |
| SHIP SHOAL 207 P/F-D | SS207DPLT | G01523 | SS207 | 52.8000% |
| SHIP SHOAL 207 P/F-DWPF | SS207PFDWP | G01523 | SS207 | 0.0000% |
| SHIP SHOAL 216 P/F-C | SS216CPLT | G01524 | SS216 | 70.0000% |
| SHIP SHOAL 259 P/F-JA | SS259JAPLT | G05044 | SS259 | 93.7130% |
| SHIP SHOAL 274 P/F-A | SS274APLT | G01039 | SS274 | 100.0000% |
| SHIP SHOAL 274 P/F-C | SS274CPLT | G01039 | SS274 | 100.0000% |
| SHIP SHOAL 291 P/F-A | SS291PFA | G02923 | SS291 | 0.0000% |
| SHIP SHOAL 354 P/F-A | SS354APLT | G15312 | SS354 | 100.0000% |
| SOUTH MARSH IS 010 P/F-4 | SM010PF4 | G01181 | SM010 | 100.0000% |
| SOUTH MARSH IS 010 P/F-A | SM10APLT | G01181 | SM010 | 100.0000% |
| SOUTH MARSH IS 011 P/F-34 | SM011PF34 | G01182 | SM011 | 100.0000% |
| SOUTH MARSH IS 011 P/F-58 | SM011PF58 | G01182 | SM011 | 100.0000% |
| SOUTH MARSH IS 018 P/F-A | SM018PFA | G08680 | SM018 | 100.0000% |
| SOUTH MARSH IS 048 P/F-E | SM048PFE | 786 | SM048 | 100.0000% |
| SOUTH MARSH IS 066 P/F-C | SM66CPLT | G01198 | SM058 | 50.0000% |
| SOUTH MARSH IS 066 P/F-D | SM66DPLT | G01198 | SM066 | 50.0000% |
| SOUTH MARSH IS 076 P/F-F | SM76FPLT | G01208 | SM076 | 100.0000% |
| SOUTH MARSH IS 093 P/F-A | SM093PFA | G21618 | SM093 | 12.5000% |
| SOUTH MARSH IS 105 P/F-A | SM105APLT | G17938 | SM105 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SOUTH MARSH IS 106 P/F-A-NORTH | SM106ANPLT | G03776 | SM106 | 100.0000% |
| SOUTH MARSH IS 106 P/F-JUNCTIO | SM106JCT | G02279 | SM106 | 100.0000% |
| SOUTH MARSH IS 128 P/F-A | SM128APLT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 128 P/F-B | SM128BPLT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 128 P/F-C | SM128CPLT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 128 P/F-SA-2 | SM128SADPT | G02587 | SM128 | 84.0133% |
| SOUTH MARSH IS 132 P/F-B | SM132BPLT | G02282 | SM132 | 50.0000% |
| SOUTH MARSH IS 137 P/F-A | SM137APLT | G02589 | SM137 | 50.0000% |
| SOUTH MARSH IS 149 P/F-C | SM149CPLT | G02592 | SM149 | 50.0000% |
| SOUTH MARSH IS 149 P/F-D | SM149DPLT | G02592 | SM149 | 100.0000% |
| SOUTH MARSH IS 239 156 CAIS | SM239PF156 | 00310 | SM240 | 16.0000% |
| SOUTH MARSH IS 239 191 CAIS | SM239PF191 | 00310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 1 CAIS | SM240PF1 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 153 CAIS | SM240PF153 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 192 CAIS | SM240PF192 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 196 CAIS | SM240PF196 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 2 CAIS | SM240PF2 | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 E DOLPHIN | SM240PF0E | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 240 P/F-E-PRD | SM240PFE | 310 | SM240 | 16.0000% |
| SOUTH MARSH IS 241 CAS 149 P/F | SM241PF149 | 310 | SM241 | 16.0000% |
| SOUTH MARSH IS 241 CAS 200 P/F | SM241PF200 | 00310 | SM241 | 16.0000% |
| SOUTH MARSH IS 241 CAS 302 P/F | SM241PF302 | 00310 | SM241 | 16.0000% |
| SOUTH MARSH IS 268 P/F-A-DRL | SM268APLT | G02310 | SM268 | 69.4185% |
| SOUTH MARSH IS 268 P/F-A-PRD | SM268APRD | G02310 | SM268 | 69.4185% |
| SOUTH MARSH IS 268 P/F-D | SM268DPLT | G02310 | SM268 | 69.4185% |
| SOUTH MARSH IS 269 P/F-B | SM269BPLT | G02311 | SM269 | 72.8000% |
| SOUTH MARSH IS 269 P/F-F | SM269FCAS | G02311 | SM269 | 87.7000% |
| SOUTH MARSH IS 280 P/F-G | SM280GPLT | G14456 | SM280 | 50.0000% |
| SOUTH MARSH IS 280 P/F-H | SM280HPLT | G14456 | SM280 | 50.0000% |
| SOUTH MARSH IS 280 P/F-I | SM280IPLT | G02600 | SM280 | 58.4000% |
| SOUTH MARSH IS 281 P/F-C | SM281PFC | G02600 | SM281 | 68.1000% |
| SOUTH MARSH IS 281 P/F-E | SM281EPLT | G02600 | SM281 | 68.1000% |
| SOUTH PASS 062 P/F-A | SP62APLT | G01294 | SP062 | 100.0000% |
| SOUTH PASS 062 P/F-B | SP62BPLT | G01294 | SP062 | 100.0000% |
| SOUTH PASS 062 P/F-C | SP062PFC | G01294 | SP062 | 100.0000% |
| SOUTH PASS 062 P/F-D | SP062PFD | G01294 | SP062 | 100.0000% |
| SOUTH PASS 065 P/F-A | SP65APLT | G01610 | SP065 | 50.0000% |
| SOUTH PASS 070 P/F-C | SP070PFC | G01614 | SP070 | 100.0000% |
| SOUTH PASS 070 P/F-D | SP070PFD | G01614 | SP070 | 100.0000% |
| SOUTH PASS 075 P/F-A | SP75APLT | G05051 | SP075 | 100.0000% |
| SOUTH PASS 087 P/F-D | SP87DPLT | G07799 | SP087 | 86.1125% |
| SOUTH PASS 089 P/F-B | SP89BPLT | G01618 | SP089 | 50.0000% |
| SOUTH PELTO 001 P/F-A | PL001PFA | G04234 | PL001 | 100.0000% |
| SOUTH PELTO 009 P/F-10 | PL009PF10 | G02924 | PL009 | 50.0000% |
| SOUTH PELTO 009 P/F-5 | PL009PF05 | G02924 | PL009 | 100.0000% |
| SOUTH PELTO 009 P/F-6 | PL009PF06 | G02924 | PL009 | 100.0000% |
| SOUTH PELTO 009 P/F-7 | PL009PF07 | G02924 | PL009 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SOUTH PELTO 010 #2 (2924)CAIS | PL0102CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-10 | PL1010CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-10-8 | PL10108CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-11 | PL1011CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-12 | PL1012WP | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-14 | PL1014CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-16 | PL1016CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-17 | PL1017CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-19 | PL1019CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-20 | PL1020CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-22 | PL1022CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-23 | PL1023CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-26 | PL1026CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-2A | PL102ACAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-3A | PL103ACAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-4 | PL104WP | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-7 | PL107CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-9-1-A | PL1091ACAS | G02925 | PL010 | 50.0000% |
| SOUTH PELTO 010 P/F-A | PL10APLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-B | PL10BPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-B25 | PL10B25CAS | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-B-AUX | PL10BAUXPT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-C | PL10CPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-D | PL10DPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-E | PL10EPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 010 P/F-LQ | PL10LQPLT | G02925 | PL010 | 100.0000% |
| SOUTH PELTO 011 P/F-17 | PL1117CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-19 | PL1119CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-22 | PL1122CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-25 | PL1125CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-F | PL11FPLT | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-F-3 | PL11F3CAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 011 P/F-G | PL11GCAS | 00071 | PL011 | 100.0000% |
| SOUTH PELTO 025 JA PF | PL025PFJA | G14535 | PL025 | 100.0000% |
| SOUTH PELTO 025 JB PF | PL025PFJB | G14535 | PL025 | 100.0000% |
| SOUTH TIMBALIER 049 P/F-A | ST49APLT | G24956 | ST049 | 100.0000% |
| SOUTH TIMBALIER 053 P/F-4 | ST053PF4 | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-6 | ST053PF6 | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-A | ST053PFA | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-A-AUX | ST053PFAAX | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-C (5) | ST053PFC5 | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 053 P/F-I | ST053PFI | G04000 | ST053 | 50.0000% |
| SOUTH TIMBALIER 068 P/F-1 | ST681CAS | 00020 | ST068 | 79.6666% |
| SOUTH TIMBALIER 148 P/F-A | ST148PFA | G01960 | ST148 | 15.5500% |
| SOUTH TIMBALIER 161 P/F-C | ST161PFC | G01248 | ST161 | 100.0000% |
| SOUTH TIMBALIER 203 P/F-B | ST203PFB | G01269 | ST203 | 40.0000% |
| SOUTH TIMBALIER 205 P/F-B | ST205BPLT | G05612 | ST205 | 50.0000% |

Exhibit I-C(i)

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SOUTH TIMBALIER 205 P/F-G | ST205GPLT | G05612 | ST205 | 100.0000% |
| SOUTH TIMBALIER 206 P/F-A | ST206APLT | G05612 | ST206 | 50.0000% |
| SOUTH TIMBALIER 291 P/F-A | ST291APLT | G16455 | ST291 | 35.0000% |
| SOUTH TIMBALIER 295 P/F-A | ST295APLT | G05646 | ST295 | 92.9167% |
| SOUTH TIMBALIER 295 P/F-B | ST295BPLT | G05646 | ST295 | 92.9167% |
| SOUTH TIMBALIER 311 P/F-A | ST311APLT | G31418 | ST311 | 22.5000% |
| SOUTH TIMBALIER 316 P/F-A | ST316PFA | G22762 | ST316 | 20.0000% |
| VERMILION 261 P/F-A | VR261APLT | G03328 | VR261 | 75.0000% |
| VERMILION 261 P/F-A-AUX | VR261AAUX | G03328 | VR261 | 75.0000% |
| VERMILION 265 P/F-A-DRL | VR265ADRL | G01955 | VR265 | 100.0000% |
| VERMILION 265 P/F-A-PRD | VR265APRD | G01955 | VR265 | 100.0000% |
| VERMILION 326 P/F-A | VR326APLT | G21096 | VR326 | 70.3148% |
| VERMILION 369 P/F-A | VR369PFA | G02274 | VR369 | 10.9700% |
| VERMILION 369 P/F-D | VR369PFD | G02274 | VR369 | 23.1707% |
| VERMILION 380 P/F-A | VR380APLT | G02580 | VR380 | 100.0000% |
| VERMILION 408 P/F-A | VR408PF | G15212 | VR408 | 50.0000% |
| VIOSCA KNOLL 203 P/F-A | VK203PFA | G07890 | VK203 | 33.3333% |
| VIOSCA KNOLL 203 P/F-B | VK203PFB | G07890 | VK203 | 33.3333% |
| VIOSCA KNOLL 204 P/F-3 | VK204PF3 | G04921 | VK204 | 33.3333% |
| VIOSCA KNOLL 204 P/F-C | VK204PFC | G04921 | VK204 | 33.3333% |
| VIOSCA KNOLL 780 P/F-A | VK780APLT | G15436 | VK780 | 100.0000% |
| WEST CAMERON 033 P/F-1 | WC033PF1 | G15050 | WC033 | 100.0000% |
| WEST CAMERON 033 P/F-N | WC033PFN | G15050 | WC033 | 100.0000% |
| WEST CAMERON 033 P/F-O | WC033PFO | G15050 | WC033 | 100.0000% |
| WEST CAMERON 065 P/F-8 | WC065CAIS8 | G02825 | WC065 | 100.0000% |
| WEST CAMERON 065 P/F-9 | WC065CAIS9 | G02825 | WC065 | 100.0000% |
| WEST CAMERON 065 P/F-JA | WC65JAPLT | G02825 | WC065 | 100.0000% |
| WEST CAMERON 065 P/F-JA-AUX | WC65JAAUX | G02825 | WC065 | 100.0000% |
| WEST CAMERON 066 P/F-A | WC66APLT | G01860 | WC066 | 91.0585% |
| WEST CAMERON 066 P/F-B | WC066PFB | G02826 | WC066 | 82.9104% |
| WEST CAMERON 066 P/F-C | WC066PFC | G01860 | WC066 | 75.0000% |
| WEST CAMERON 066 P/F-E | WC066PFE | G02826 | WC066 | 75.0000% |
| WEST CAMERON 066 P/F-F(FMR31) | WC066PFF31 | 00244 | WC066 | 100.0000% |
| WEST CAMERON 071 P/F-28 | WC071PF28 | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-D | WC071PFD | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-D-AUX | WC071PFDAX | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-F (FMR18) | WC71FPLT | 00244 | WC071 | 100.0000% |
| WEST CAMERON 071 P/F-QTR | WC71QTR | 00244 | WC071 | 100.0000% |
| WEST CAMERON 072 P/F-1 | WC072PF1 | G23735 | WC072 | 25.0000% |
| WEST CAMERON 072 P/F-2 | WC072PF2 | G23735 | WC072 | 25.0000% |
| WEST CAMERON 072 P/F-3 | WC072PF3 | G23735 | WC072 | 25.0000% |
| WEST CAMERON 102 P/F-2 | WC102PF2 | 00247 | WC102 | 100.0000% |
| WEST CAMERON 102 P/F-G | WC102GPLT | 00247 | WC102 | 100.0000% |
| WEST CAMERON 102 P/F-G-AUX | WC102GAUX | 00247 | WC102 | 100.0000% |
| WEST CAMERON 102 P/F-H | WC102HPLT | 00247 | WC102 | 100.0000% |
| WEST CAMERON 110 P/F-10 | WC11010CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-11 | WC11011CAS | 00081 | WC110 | 100.0000% |

**Exhibit I-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| WEST CAMERON 110 P/F-12 | WC11012CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-15 | WC11015CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-18 | WC11018CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-19 | WC11019CAS | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-A | WC110APLT | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-A-AUX1 | WC110AAUX1 | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-E | WC110EPLT | 00081 | WC110 | 100.0000% |
| WEST CAMERON 110 P/F-H | WC110HPLT | 00081 | WC110 | 100.0000% |
| WEST CAMERON 111 P/F-C | WC111CCAS | 00081 | WC111 | 100.0000% |
| WEST CAMERON 111 P/F-F | WC111FCAS | 00081 | WC111 | 100.0000% |
| WEST CAMERON 144 P/F-B | WC144BPLT | G01953 | WC144 | 100.0000% |
| WEST CAMERON 225 P/F-C | WC225PFC | G00900 | WC225 | 26.6675% |
| WEST CAMERON 289 P/F-A-PROCESS | WC289APROC | G04818 | WC289 | 100.0000% |
| WEST CAMERON 290 P/F-A | WC290PFA | G04818 | WC290 | 10.3759% |
| WEST CAMERON 295 P/F-A | WC295ACAS | G24730 | WC295 | 20.60% |
| WEST DELTA 068 P/F-U | WD68UPLT | 00180 | WD068 | 75.0000% |
| WEST DELTA 070 P/F-D | WD070PFD | 00182 | WD070 | 75.0000% |
| WEST DELTA 070 P/F-FF | WD070PFFF | 00182 | WD070 | 75.0000% |
| WEST DELTA 070 P/F-I | WD070PFI | 00182 | WD070 | 75.0000% |
| WEST DELTA 070 P/F-L | WD070PFL | 00182 | WD070 | 75.0000% |
| WEST DELTA 071 P/F-E | WD71EPLT | 00838 | WD071 | 75.0000% |
| WEST DELTA 071 P/F-O | WD071OPLT | 00838 | WD071 | 75.0000% |
| WEST DELTA 075 P/F-D | WD075PFD | G01085 | WD075 | 100.0000% |
| WEST DELTA 075 P/F-F | WD075PFF | G01085 | WD075 | 100.0000% |
| WEST DELTA 075 P/F-G | WD075PFG | G01085 | WD075 | 100.0000% |
| WEST DELTA 090 P/F-A | WD090PFA | G01089 | WD090 | 100.0000% |
| WEST DELTA 090 P/F-B | WD090PFB | G01089 | WD090 | 100.0000% |
| WEST DELTA 090 P/F-E | WD090PFE | G01089 | WD090 | 100.0000% |

**Exhibit I-C(ii)**

| Name | State | County/Parish | Ownership % |
|------|-------|---------------|-------------|
| Blue Water Gas Plant | Louisiana | | 0.1000% |
| Galveston 300/301 Facility | Texas | Galveston | 100.0000% |
| Gibbstown Separation Station | Louisiana | Cameron | 100.0000% |
| Grand Bay Receiving Station | Louisiana | Plaquemines | 65.0000% |
| Grand Chenier Separation Facility | Louisiana | Cameron | 5.4% |
| Grand Chenier Tank Battery | Louisiana | Cameron | 100.0000% |
| Grand Isle Fuel Line (supply line for municipality) | Louisiana | Jefferson | 100.0000% |
| Grand Isle Tank Bat | Louisiana | Jefferson | 75.0000% |
| Johnson Bayou Onshore Separation Facility | Louisiana | Cameron | 24.31% of Co-Owned Equipment |
| Johnson Bayou Onshore Separation Facility | Louisiana | Cameron | 54.875% of Producers' Equipment |
| MI 519 Bay City Compressor Station | Texas | Matagorda | 81.8979% |
| North Terrebonne Gas Processing Plant | Louisiana | Terrebonne | 0.0000% |
| Sea Robin Condensate Separation Facility (aka "Henry Hub") | Louisiana | Vermilion | 8.0000% |
| Sea Robin Gas Plant | Louisiana | Vermilion | 23.7285% |
| Stingray Onshore Separation Facility (Cameron Onshore Commingling Facility) | Louisiana | Cameron | 11.1300% |
| Targa Venice | Louisiana | Plaquemines | 100.0000% |
| Thousand Square Mile Area (TASMA) | Louisiana | Vermilion | 100.0000% |
| Tivoli Plant | Texas | Refugio | 56.1394% |
| TOCA Gas Processing Plant | Louisiana | St. bernard | 4.2900% |
| Venice Dehydration Facility (South Pass Dehydration Station) | Louisiana | Plaquemines | 35.2000% |
| Vermilion 76 Onshore Scrubber | Louisiana | Vermilion | 93.9% |

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15213 | Fieldwood Energy, LLC | BS | 41 | B | BS | 42 | 24" SSTI | 10 | G/C | Partial Abandon | G25383 | G11142 |
| 17938 | Fieldwood Energy, LLC | CA | 43 | A | VK | 247 | 24"SSTI | 6 | GAS | Active | G29431 | G32268 |
| 3519 | Fieldwood Energy, LLC | EC | 14 | CF | EC | 9 | F/S | 4 | COND | Out of Service | G13721 | G01440 |
| 13104 | Fieldwood Energy, LLC | EC | 2 | F/S | EC | 2 | 6" SSTI | 4 | BLKO | Permitted for Abandonment | G22383 | G15050 |
| 17801 | Fieldwood Energy, LLC | EC | 14 | CF | WC | 69 | 30 SSTI | 12 | GAS | Permitted for Abandonment | G28556 | G01440 |
| 44 | Fieldwood Energy, LLC | EI | 175 | A | EI | 176 | 12" SSTI | 8 | OIL | Out of Service | G13445 | 00438 |
| 1128 | Fieldwood Energy, LLC | EI | 330 | flanged end | EI | 306 | 14-inch SSTI | 14 | OIL | Active | G02139A | G02115 |
| 6818 | Fieldwood Energy, LLC | EI | 337 | A | EI | 330 | B | 6 | GAS | Out of Service | G05932 | G03332 |
| 6819 | Fieldwood Energy, LLC | EI | 337 | A | EI | 330 | 14 SSTI | 6 | GAS | Out of Service | G05931 | G03332 |
| 6852 | Fieldwood Energy, LLC | EI | 315 | A | EI | 330 | 14 SSTI | 6 | OIL | Out of Service | G13447 | G02112 |
| 7290 | Fieldwood Energy, LLC | EI | 316 | A | EI | 330 | 14 SSTI | 8 | OIL | Active | G07537 | G05040 |
| 7347 | Fieldwood Energy, LLC | EI | 316 | A | EI | 330 | 8" SSTI | 6 | GAS | Active | G07555 | G05040 |
| 7914 | Fieldwood Energy, LLC | EI | 212 | A | SS | 152 | 24 SSTI | 6 | GAS | Out of Service | G08530 | G05503 |
| 7915 | Fieldwood Energy, LLC | EI | 212 | A | EI | 213 | 12 SSTI | 6 | OIL | Out of Service | G08531 | G05503 |
| 7943 | Fieldwood Energy, LLC | EI | 342 | C | EI | 327 | 08 SSTI | 6 | OIL | Out of Service | G08541 | G02319 |
| 9211 | Fieldwood Energy, LLC | EI | 53 | B | EI | 64 | 22 SSTI | 6 | G/C | Partial Abandon | G12373 | 00479 |
| 9376 | Fieldwood Energy, LLC | EI | 142 | A | EI | 141 | 10 SSTI | 4 | OIL | Out of Service | G12734 | 00052 |
| 11923 | Fieldwood Energy, LLC | EI | 53 | C | EI | 64 | 22 SSTI | 10 | G/C | Out of Service | G20539 | 00479 |
| 14073 | Fieldwood Energy, LLC | EI | 188 | JE | EI | 188 | 06 SSTI | 4 | BLKG | Out of Service | G29056 | 00443 |
| 14479 | Fieldwood Energy, LLC | EI | 158 | C | EI | 176 | 12"SSTI | 6 | OIL | Out of Service | G13702 | G01220 |
| 15906 | Fieldwood Energy, LLC | EI | 173 | G | EI | 175 | C | 4 | BLKG | Out of Service | G28239 | G13622 |
| 16225 | Fieldwood Energy, LLC | EI | 354 | D | EI | 337 | A | 4 | OIL | Out of Service | G28598 | G10752 |
| 16226 | Fieldwood Energy, LLC | EI | 354 | D | EI | 337 | A | 4 | GAS | Out of Service | G28599 | G10752 |
| 16243 | Fieldwood Energy, LLC | EI | 189 | B | EI | 188 | A | 4 | GAS | Out of Service | G29057 | 00423 |
| 18493 | Fieldwood Energy, LLC | EI | 342 | C | EI | 343 | SSTI | 6 | OIL | Out of Service | G29108 | G02319 |
| 19960 | Fieldwood Energy LLC | EI | 342 | C | EI | 342 | Blind Flange | 6 | OIL | Out of Service | G29471 | G02319 |
| 8487 | Fieldwood Energy, LLC | EI | 187 | 2 | EI | 187 | 2 | | | Out of Service | G30283 | 010736 |
| 15298 | Fieldwood Energy, LLC | EW | 826 | A | ST | 300 | 12 SSTI | 12 | OIL | Out of Service | G10110 | G05800 |
| 7866 | Fieldwood Energy, LLC | GA | 210 | B | GA | 239 | 12 SSTI | 8 | GAS | Active | G26931 | G25524 |
| 9084 | GOM Shelf, LLC | GI | 33 | A | GI | 22 | L | 8 | GAS | Permitted for Abandonment Approved | G08514 | G04002 |
| 17673 | Fieldwood Energy, LLC | GI | 43 | AS | GI | 19 | F/S | 10 | OIL | Active | G12304 | 00175 |
| 5470 | Fieldwood Energy, LLC | GI | 54 | #2 | GI | 47 | L | 4 | BLKO | Permitted for Abandonment Approved | G28528 | G27173 |
| 6504 | Fieldwood Energy, LLC | HI | A356 | Valve | HI | A343 | HIOS | 12 | GAS | Out of Service | G04050 | G02754 |
| 6669 | Fieldwood Energy, LLC | HI | A595 | D | HI | 573 | B | 8 | OIL | Out of Service | G28525 | G02721 |
| 6669 | Fieldwood Energy, LLC | HI | A 376 | A | HI | A 356 | 12 SSTI | 10 | GAS | Out of Service | G05238 | G02754 |
| 6669 | Fieldwood Energy, LLC | HI | A 376 | Platform A | HI | A 356 | 12 SSTI W/PSN 10882 | 10 | GAS | Out of Service | G05238 | G02754 |
| 10882 | Fieldwood Energy, LLC | HI | A356 | 10SST | HI | A356 | 12SSTI | 12 | GAS | Out of Service | G04051 | G02754 |
| 11841 | Fieldwood Energy, LLC | HI | A 545 | JA | HI | A 547 | B | 4 | BLKG | Permitted for Abandonment | G20510 | G17199 |
| 14650 | Fieldwood Energy, LLC | HI | 201 | #1 | HI | 199 | A | 6 | BLKG | Partial Abandon | G25397 | G23199 |
| 15401 | Fieldwood Energy, LLC | HI | A 341 | B | HI | A 340 | 30" SSTI | 812 | G/C | Active | G26938 | G25605 |
| 15581 | Fieldwood Energy, LLC | HI | 120 | A | HI | 128 | SSTI | 6 | GAS | Out of Service | G26968 | G24730 |
| 16077 | Fieldwood Energy, LLC | HI | 130 | #2 | HI | 165 | 8-inch SSTI | 8 | BLKO | Partial Abandon | G28284 | G25579 |
| 18789 | Fieldwood Energy LLC | HI | 116 | Platform A | HI | 71 | 16-inch SSTI | 16 | G/C | PABN | G28649 | G06156 |
| 9032 | Fieldwood Energy, LLC | MC | 311 | A | MC | 312 | 8 SSTI | 8 | OIL | Out of Service | G11747 | G02968 |
| 3472 | Fieldwood Energy, LLC | MP | 140 | B | MP | 56 | F/S | 18 | GAS | Out of Service | G13511 | G02193 |
| 5917 | GOM Shelf, LLC | MP | 311 | A | MP | 313 | 12 SSTI | 8 | OIL | Out of Service | G13466 | G02213 |
| 7143 | Fieldwood Energy, LLC | MP | 310 | A | MP | 299 | 12 SSTI | 6 | OIL | Out of Service | G07100 | G04126 |
| 13100 | Fieldwood Energy, LLC | MP | 259 | A | VK | 739 | #01 | 5 | UMB | Out of Service | G22377 | G07827 |
| 15818 | Fieldwood Energy Offshore LLC | MP | 77 | A | MP | 151 | 18"SSTI | 8 | GAS | Out of Service | G28221 | G04481 |
| 5408 | Fieldwood Energy, LLC | PL | 10 | B | PL | 13 | 20 SSTI | 8 | OIL | Active | G09317 | G02925 |
| 16044 | Fieldwood Energy, LLC | PL | 9 | #10 | PL | 10 | B | 6 | BLKG | Out of Service | G28276 | G02924 |
| 4008 | Fieldwood Energy, LLC | SM | 268 | A | SS | 28 | A | 12 | OIL | Out of Service | G02816 | G34284 |
| 4647 | Fieldwood Energy, LLC | SM | 149 | 6"SSTI | SM | 132 | B | 6 | BLKO | Out of Service | G03432 | G02592 |
| 5427 | Fieldwood Energy, LLC | SM | 281 | E | SM | 268 | A | 12 | SPLY | Out of Service | G02817 | G02600 |
| 5429 | Fieldwood Energy, LLC | SM | 281 | C | SM | 281 | 12 SSTI | 10 | SPLY | Out of Service | G02817 | G02600 |
| 6512 | Fieldwood Energy, LLC | SM | 281 | C | SM | 268 | D | 6 | BLKO | Out of Service | G29131 | G02600 |
| 6513 | Fieldwood Energy, LLC | SM | 268 | D | SM | 268 | A | 10 | BLKO | Out of Service | G29132 | G02310 |
| 10977 | Fieldwood Energy, LLC | SM | 268 | A | SM | 280 | #03 | 3 | BLKG | Active | G28756 | G14456 |
| 11046 | Fieldwood Energy, LLC | SM | 11 | Well No.34 | SM | 10 | A | 3 | OIL | Out of Service | G28813 | G01182 |
| 11047 | Fieldwood Energy, LLC | SM | 10 | A | SM | 11 | 34 | 3 | LIFT | Out of Service | G28812 | G01181 |
| 11986 | Fieldwood Energy, LLC | SM | 39 | A | SM | 33 | 30 SSTI | 4 | GAS | Out of Service | G20565 | G16320 |
| 11987 | Fieldwood Energy, LLC | SM | 39 | A | SM | 40 | 10 SSTI | 6 | OIL | Out of Service | G20566 | G16320 |
| 13642 | Fieldwood Energy, LLC | SM | 280 | H | SM | 268 | A | 10 | BLKG | Permitted for Abandonment | G28758 | G14456 |
| 17499 | Fieldwood Energy, LLC | SM | 269 | B | SM | 268 | A | 6 | GAS | Active | G28484 | G02311 |
| 18057 | Fieldwood Energy, LLC | SM | 11 | No.58 Caisson | SM | 10 | A | 4 | BLKG | Out of Service | G28815 | G01182 |
| 18510 | Fieldwood Energy, LLC | SM | 48 | A | SM | 287 | SSTI | 6 | GAS | Active | G29113 | G01181 |
| 18563 | Fieldwood Energy, LLC | SM | 48 | E | SM | 39 | A | 6 | GAS | Out of Service | G29128 | 00786 |
| 18583 | Fieldwood Energy, LLC | SM | 48 | F | SM | 39 | 1 | SSTI | 4 | GAS | Out of Service | G28814 | G01181 |
| 18802 | Fieldwood Energy, LLC | SM | 39 | A | SM | 48 | E | 3 | LIFT | Out of Service | G29182 | G16320 |
| 4716 | Fieldwood Energy, LLC | SP | 70 | C | SP | 60 | B | 8 | GAS | Out of Service | G30436 | G01614 |
| 15064 | FW GOM Pipeline, Inc. | SP | 49 | A | SP | 27 | F/S Boundary | 10 | G/O | Active | G07561 | G05051 |
| 15598 | Fieldwood Energy, LLC | SP | 70 | C | SP | 60 | B | 6 | OIL | Out of Service | G26860 | G01614 |
| 15626 | Fieldwood Energy, LLC | SP | 65 | A | SP | 62 | 18 SSTI | 6 | OIL | Out of Service | G01686A | G01614 |
| 1137 | Fieldwood Energy, LLC | SS | 207 | A Platform | SS | 204 | A | 4 | GAS | Out of Service | G13489 | G01523 |
| 1138 | Fieldwood Energy, LLC | SS | 204 | A | SS | 207 | A | 6 | G/O | Out of Service | G13491 | G01520 |
| 1147 | Fieldwood Energy, LLC | SS | 207 | A | SS | 208 | F-Pump | 12 | OIL | Out of Service | G13492 | G01523 |
| 6432 | Fieldwood Energy, LLC | SS | 182 | A | SS | 169 | 18 SSTI | 6 | OIL | Active | G09321 | G03998 |
| 6538 | Fieldwood Energy, LLC | SS | 91 | PL | SS | 11 | 08 SSTI | 6 | GAS | Out of Service | G05146 | G02919 |
| 6748 | Fieldwood Energy, LLC | SS | 169 | C Platform | SS | 169 | 18-inch SSTI | 6 | OIL | Out of Service | G09322 | 00820 |
| 7650 | Fieldwood Energy, LLC | SS | 178 | A | SS | 169 | 18 SSTI | 6 | GAS | Out of Service | G08054 | G05551 |
| 10406 | Fieldwood Energy, LLC | SS | 274 | A | EI | 259 | A | 8 | OIL | Active | G14731 | G01039 |
| 10780 | Fieldwood Energy, LLC | SS | 193 | A | SS | 183 | 18 SSTI | 6 | OIL | Active | G15683 | G13917 |
| 10781 | Fieldwood Energy, LLC | SS | 193 | A | SS | 183 | 10 SSTI | 6 | GAS | Active | G15684 | G13917 |
| 11137 | Fieldwood Energy, LLC | SS | 129 | A | SS | 149 | 18 SSTI | 6 | GAS | Out of Service | G16084 | G12941 |
| 11145 | Fieldwood Energy, LLC | SS | 129 | A | SS | 149 | 6 SSTI | 6 | G/C | Out of Service | G16087 | G12941 |
| 11480 | Fieldwood Energy, LLC | SS | 105 | A | EI | 165 | 30 SSTI | 10 | GAS | Out of Service | G18801 | G09614 |
| 11544 | Fieldwood Energy, LLC | SS | 126 | B | SS | 105 | A | 4 | BLKG | Out of Service | G18820 | G12940 |
| 12778 | Fieldwood Energy, LLC | SS | 189 | A | SS | 185 | 26"SSTI | 8 | BLKG | Out of Service | G22139 | G04232 |
| 15530 | Fieldwood Energy, LLC | SS | 183 | Flange | SS | 169 | Flange | 10 | GAS | Out of Service | G01460 | G13917 |
| 16036 | Fieldwood Energy, LLC | SS | 190 | Capped End | SS | 207 | A | 4 | BLKO | Permitted for Abandonment | G14734 | G10775 |
| 18837 | Fieldwood Energy, LLC | SS | 176 | C | EI | 212 | A | 6 | BLKG | Out of Service | G29190 | G33646 |
| 20050 | Fieldwood Energy, LLC | SS | 168 | SSTI | SS | 168 | SSTI | 6 | | Proposed | G28788 | 00820 |
| 5890 | Fieldwood Energy, LLC | ST | 53 | A | ST | 52 | A | 6 | OIL | Out of Service | G05919 | G04000 |
| 7802 | Fieldwood Energy, LLC | ST | 295 | A | ST | SS 8487 | 13 | OIL | Active | G08385 | G05646 |
| 8676 | Fieldwood Energy, LLC | ST | 206 | A | ST | 175 | T-22 | 16 | G/C | Out of Service | G11146 | G05613 |
| 9313 | Fieldwood Energy, LLC | ST | 295 | A | ST | 295 | 24 SSTI | 8 | BLKG | Out of Service | G12709 | G05646 |
| 13462 | Fieldwood Energy, LLC | ST | 205 | G | ST | 206 | A | 8 | OIL | Out of Service | G028821 | G05612 |
| 13462 | Fieldwood Energy, LLC | ST | 205 | G | ST | 206 | A | 4 | BLKG | Out of Service | G29451 | G05612 |
| 17265 | Fieldwood Energy, LLC | ST | 68 | Caisson No. 1 | ST | 53 | A | 6 | BLKO | Out of Service | G28385 | G04000 |
| 17898 | Fieldwood Energy, LLC | ST | 49 | Platform A | ST | 35 | 6-inch SSTI | 6 | OIL | Out of Service | G28577 | G24956 |
| 19776 | Fieldwood Energy, LLC | ST | 295 | 24" SSTI | ST | 292 | A | 24 | GAS | Active | G29376 | G05646 |
| 13098 | Fieldwood Energy, LLC | VK | 804 | #04 | MP | 259 | A | 4 | BLKG | Out of Service | G22376 | G13055 |
| 13099 | Fieldwood Energy, LLC | VK | 739 | SS #3 | MP | 259 | A | 5 | BLKG | Out of Service | G22377 | G07827 |
| 13720 | Fieldwood Energy, LLC | VK | 340 | 8"SSTI | VK | 251 | A | 8 | GAS | Out of Service | G28201 | G10483 |
| 13720 | Fieldwood Energy Offshore LLC | VK | 340 | 8-inch SSTI | VK | 251 | Platform A | 8 | BLGH | Active | G28703 | G10933 |
| 13721 | Fieldwood Energy, LLC | VK | 251 | A | VK | 340 | A | 3 | AIR | Active | G28704 | G10930 |
| 14876 | Fieldwood Energy, LLC | VK | 251 | A | MP | 154 | A | 4 | H2O | Active | G22465 | G10930 |
| 6113 | Fieldwood Energy, LLC | VR | 380 | A | VR | 397 | 24 SSTI | 12 | GAS | Out of Service | G04645 | G02580 |
| 12502 | Fieldwood Energy, LLC | VR | 326 | A Platform | VR | 321 | 22-inch SSTI | 6 | G/C | Active | G21523 | G21096 |
| 17090 | Fieldwood Energy, LLC | VR | 261 | A | VR | 265 | A | 8 | OIL | Out of Service | G28347 | G03328 |
| 18502 | Fieldwood Energy, LLC | VR | 380 | A | VR | 398 | 16" SSTI | 6 | OIL | Out of Service | G02919 | G02580 |
| 18502 | Fieldwood Energy, LLC | VR | 380 | Platform A | VR | 398 | 16-inch SSTI | 6 | OIL | Out of Service | G29109 | G02580 |
| 2698 | Fieldwood Energy, LLC | WC | 102 | flange | WC | 102 | G | 6 | GAS | Out of Service | G02124D | G02407 |
| 3763 | Fieldwood Energy, LLC | WC | 102 | #02 | WC | 102 | 08 SSTI | 8 | GAS | Out of Service | G02124D | G02407 |
| 3986 | Fieldwood Energy, LLC | WC | 66 | A | WC | 31 | F/S | 10 | G/O | Active | G03345 | G01860 |

Exhibit I-D(i)

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5343 | Fieldwood Energy, LLC | WC | 34 | D | WC | 35 | 10 SSTI | 8 | G/O | Out of Service | G28659 | G01860 |
| 8621 | Bandon Oil and Gas, LP | WC | 290 | A | WC | 289 | A | 6 | BLKG | Out of Service | G10532 | G04818 |
| 9504 | Fieldwood Energy, LLC | WC | 71 | 12 SSTI | WC | 71 | 12 SSTI | 12 | GAS | Out of Service | G04346 | O0244 |
| 14251 | Fieldwood Energy Offshore LLC | WC | 72 | #1 | WC | 65 | JA | 4 | BLKG | Out of Service | G25275 | G23735 |
| 15210 | Fieldwood Energy, LLC | WC | 295 | 2 | HI | 120 | A-PROCESS | 6 | BLKG | Out of Service | G26886 | G24730 |
| 15952 | Fieldwood Energy, LLC | WC | 33 | O | WC | 34 | D | 4 | G/O | Out of Service | G28657 | G15050 |

Exhibit I-D(ii)

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|
| EI | 188 | JE | 26052 | G30268 | G10736 | Fieldwood Energy LLC | 04/18/14 | EI 187 JC001, JD001, JD002, 002 & JE002 |
| HI | 120 | A-PROCESS | 10450 | G30270 | G01848 | Fieldwood Energy LLC | 08/06/14 | WC 295 A001 & A002 |
| SM | 132 | B | 21982 | G30329 | G02588 | Fieldwood Energy LLC | 05/06/19 | SM 136 C007, SM 149 C001, C002 & C004 |
| ST | 206 | A | 23851 | G30291 | G05612 | Fieldwood Energy LLC | 12/11/15 | ST 205 G001 & G003 |
| SM | 10 | A | 20706 | G30365 | G01181 | Fieldwood Energy LLC | | |

**Exhibit I-E**

Call Sign:
KKS457
WQFI654
WQGX432
WPSH741
KNDQ614
WPXX340

Exhibit I-F

| Contract Type | Contract Date | Contract Title | Contract Description |
|---|---|---|---|
| Land | 8/7/1953 | UA | HI 179 Unit Agreement |
| Land | 10/27/1954 | Unit Agreement No. 14-08-001-20221 | Grand Isle CATCO Unit Agreement, dated October 27, 1954, between Continental Oil Company and The Atlantic Refining Company, Tide Water Associated Oil Company and Cities Service Oil Company.; Unit No. 891002021 |
| Land | 5/1/1995 | Unit Operating Agreement | Amendment-to Unit Operating Agreement, dated effective May 1, 1995, by and between Conoco Inc.,Vastar Resources, Inc., Texaco Exploration and Production Inc. and Oxy USA Inc. |
| Land | 11/21/1955 | Unit Agreement No. 14-08-001-2454 | West Delta-Grand Isle Unit Agreement, dated November 21,1955, between Continental Oil Company, as unit operator, and The Atlantic Refining Company, Tidewater Associated Oil Company and Cities Service Production Company, as non-operators, as amended ; Unit No. 891002454 |
| Land | 4/10/1956 | Unit Agreement | Unit No. 891002891 - SS 32 |
| Land | 12/4/1958 | OPERATING AGREEMENT | OPERATING AGREEMENT BY AND BETWEEN THE TEXAS COMPANY AND PAN AMERICAN PETROLEUM CORPORATION , AS AMENDED |
| Land | 12/4/1958 | Operating Agreement | Operating Agreement eff. 12/4/58 |
| Land | 7/25/1960 | Operating Agreement | Operating Agreement, dated effective July 25,1960, as amended, between Second Mobil Oil Company, Inc., Gulf Oil 'Corporation, and Humble Oil & Refining Company, as amended, SS 169 Field. |
| Land | 8/3/1964 | UOA | Operating Agreement eff. 8-3-64 |
| Land | 11/2/1964 | UA | EI 266 Unit Agreement |
| Land | 1/12/1965 | Joint Operating Agreement | Joint Agreement, dated effective January 12,1965, between Cities Service Oil Company, Skelly Oil Company, Sunray DX Oil Company and Tidewater Oil Company, governing operations on the contract area. The Operating Agreement contained in Exhibit "C" of the Main Agreement was superseded by the Joint Operating Agreement eff. 1/1/97 |
| Land | 1/21/1966 | Unit Agreement No. 14-08-001-8784 | Unit No. 891008784 - SS 271 |
| Land | 2/26/1966 | Offshore Operating Agreement | Operating Agreement by and between Hardy Oil & Gas USA Inc., as Operator and British-Borneo Exploration, Inc. and Zilkha Energy Company, As Non-Operators |
| Land | 6/10/1966 | Unit Operating Agreement Ship Shoal | SS 271 Unit Operating Agreement (Unit#891008784) As Amended, originally by and between Forest Oil Corp. as Operator, and Texas Gas Exploration Corp. et al as Non-Operators |
| Land | 2/6/1967 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN CONTINENTAL OIL COMPANY AND TENNECO OIL COMPANY ET AL, AS AMENDED |
| Land | 1/1/1971 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC., MESA PETROLEUM CO., ET AL. |
| Land | 2/1/1971 | Joint Operating Agreement | Operating Agreement, dated February 1,1971, between Tenneco Oil Company and Texaco Inc. Amendment to Operating Agreement, dated effective May 1,1974, between Tenneco Oil Company, Texaco Inc. and Tenneco Exploration 11, Ltd., whereby Tenneco Exploration II became a party to, and ratified, the operating agreement. |
| Land | 1/1/1972 | Joint Operating Agreement | OPERATING AGREEMENT BY AN D BETWEEN SIGNAL OIL AND GAS COMPANY AND THE LOUISIANA LAND AND EXPLORATION COMPANY, ET AL. |
| Land | 3/24/1972 | Unit Agreement | SP 65 G-1 Unit Res B Unit Agreement -891012327 |
| Land | 5/18/1972 | Unit Agreement | SP 65 G-1 Unit Res A Unit Agreement-891012332 |
| Land | 5/18/1972 | Unit Agreement | SP 65 G2-G3 Unit Agreement-891012333 |
| Land | 1/1/1973 | Offshore Operating Agreement | Offshore Operating Agreement* (VR 369/386+) *Unit Operating Agreement supersedes JOperating Agreement 1/1/1973 |
| Land | 8/1/1973 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN MOBIL OIL CORPORATION AND UNION OIL COMPANY OF CALIFORNIA ET AL |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8/1/73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8/1/73 |
| Land | 5/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN PENNZOIL OFFSHORE GAS OPERATORS, INC. AND PENNZOIL LOUISIANA AND TEXAS OFFSHORE, INC. ET AL. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 9/3/1974 | FO | Farmout Agreement by and between CNG Producing Company, Columbia Gas Development Corporation and Forest Oil Corporation |
| Land | 12/1/1974 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC. AND PENNZOIL LOUISIANA AND TEXAS OFFSHORE, INC. ET AL. |
| Land | 4/23/1975 | Joint Operating Agreement | Operating Agreement eff. 4-23-75 |
| Land | 7/1/1975 | Joint Operating Agreement | Operating Agreement eff. 7/1/75 by and between Mesa Petroleum as Operator and American Natural Gas Production Co, et al |
| Land | 3/1/1976 | Joint Operating Agreement | Operating Agreement eff. 3-1-76 b/b POGO, Mesa and Mobil, et al |
| Land | 4/1/1976 | Joint Operating Agreement | Operating Agreement eff. 4-1-76 as amended |
| Land | 4/1/1977 | Unit Operating Agreement | UNIT OPERATING AGREEMENT BY AND BETWEEN  DEVON ENERGY PRODUCTION , APACHE CORPORATION, ET AL. |
| Land | 4/1/1977 | Unit Agreement No. 14-08-001-16943 | Unit Agreement, JD Sand, Reservoir A, Eugene Island Block 330 Field (Unit Number 891016943), dated effective April 1,1977, naming Pennzoil Oil & Gas, Inc., as Operator, and Texaco Inc. and Shell Oil Company, as sub-operators |
| Land | 12/12/1977 | Unit Agreement | Unit Agreement (VR 369 Unit Area) 12/12/1977 |
| Land | 12/23/1977 | Unit Operating Agreement | Unit Operating Agreement* (VR 369 Unit Area) *UOperating Agreement supersedes JOperating Agreement 12/23/1977 |
| Land | 1/1/1978 | UOA | HI 179 Unit Operating Agreement |
| Land | 5/2/1978 | FO | FARMOUT AGREEMENT EFFECTIVE MAY 2, 1978, BY AND BETWEEN ENSERCH, FARMOR, AND ANADARKO, FARMEE. |
| Land | 11/1/1978 | OA | Operating Agreement eff. 11/1/78 |
| Land | 11/17/1978 | FO | Farmout Agreement dated November 17,1978 between Gulf Oil Corporation and Shell Oil Company covering the Northeast Quarter (NE/4) of that certain Oil and Gas Lease dated July 1,1967 bearing Serial No. OCS-G 1609, South Pass Area Block 61. |
| Land | 3/1/1979 | Joint Operating Agreement | OPERATING AGREEMENT DATED MARCH 1, 1979, BY AND BETWEEN UNION OIL COMPANY OF CALIFORNIA AND MOBIL OIL EXPLORATION & PRODUCTION SOUTHEAST INC. |
| Land | 9/15/1979 | Joint Operating Agreement | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO, AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC, AND SAMEDAN OIL CORPORATION, NON-OPERATORS. |
| Land | 12/1/1979 | OFFSHORE OPERATING AGREEMENT | OFFSHORE OPERATING AGREEMENT b/b SHELL OIL COMPANYand FLORIDA EXPLORATION COMPANY, ET AL. |
| Land | 4/1/1981 | Unit Operating Agreement | Unit Operating Agreement; dated April 1,1981, by and between Conoco Inc., Atlantic Richfield Company, Getty Oil Company, Cities Service Company, Placid Oil Company, Hamilton Brother Oil Company, Mobil Oil Exploration and Producing S.E., Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt Industries and Prosper Energy Corporation, comprising all working interest owners in the Ship ShOperating Agreement! Blocks 206, 207,,OCS-G i523 and OCS-G 1523, respectively. |
| Land | 9/1/1981 | Joint Operating Agreement | Operating Agreement 9/1/1981 |
| Land | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement 9/1/1981 |
| Land | 1/1/1982 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN SOHIO PETROLEUM COMPANY AND EXXON CORPORATION |
| Land | 4/28/1982 | Letter Agreement | Letter Agreement dated April 28,1982 between Gulf Oil Corporation and Shell Oil Company evidencing an agreement for Gulf Oil Company to install a Drilling Platform in the Northeast Quarter (NE/4) South Pass Area Block 61. |
| Land | 11/1/1982 | UNIT AGREEMENT FOR OUTER CONTINENTAL SHELF, 'N' SERIES | UNIT AGREEMENT BY AND BETWEEN CONOCO INC. AND CITIES SERVICE COMPANY ET AL |
| Land | 1/1/1983 | ORRI | Conveyance of Overriding Royalty Interests, dated effective January 1,1983, creating the Tel Offshore Trust, and granting an overriding royalty interest, equivalent to 25% net profits interest, in all of Tenneco Exploration, Ltd.'s oil and gas properties |

Exhibit I-F

| | | | |
|---|---|---|---|
| Land | 7/1/1983 | UOA | EI 212 Unit Operating Agreement |
| Land | 8/4/1983 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement effective August 4, 1984 BY AND BETWEEN APACHE CORPORATION AND SHELL OFFSHORE CONTIGUOUS BLOCK TO SHELL VENTURE PROPERTY THAT MAY TRIGGER AMI RESPONSIBILITY REGARDING FUTURE PURCHASE OR BID OF TRACTS COVERING GEOLOGIC STRUCTURE COMMON TO EXISTING SHELL VENTURE PROPERTY |
| Land | 7/1/1984 | Unit Agreement | UNIT AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND FLORIDA EXPLORATION COMPANY ET AL |
| Land | 7/1/1984 | UOA | MP 310 Unit Operating Agreement |
| Land | 1/1/1985 | OA | Operating Agreement eff. 1/1/85 |
| Land | 6/3/1985 | Consent to Assign | Consent to Assignment of Interest, dated June 3,1985, between Tenneco Exploration, Ltd. and Texaco Inc., as Grantors of Consent, and Huffco Petroleum, as Assignor, and L. S. Holding Company, AE Investments, Inc., Colton Gulf COperating Agreementsl, Inc., and Huffco 1982 Exploration Limited Partnership, as Assignees, assigning all of Huffco Petroleum's record title interest to the Assignees. |
| Land | 5/1/1986 | Assignment | Assignment, dated effective May 1,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Plumb Offshore, Inc., subject to the reservation of an overriding royalty interest. |
| Land | 7/2/1986 | FARMOUT AGREEMENT | Farmout Agreement 7/2/1986 |
| Land | 10/31/1986 | Assignment | Assignment of Interest, dated effective October 31,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Tenneco Oil Company. |
| Land | 11/2/1987 | SIMULTANEOUS EXCHANGE AGREEMENT | EXCHANGE AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC AND CONOCO INC |
| Land | 3/3/1988 | PA | PARTICIPATION AGREEMENT EFFECTIVE MARCH 3, 1988, BY AND BETWEEN WESTPORT OIL AND GAS COMPANY, INC., AND BASIN EXPLORATION INC. |
| Land | 6/7/1988 | UA | EI 212 Unit Agreement |
| Land | 10/31/1988 | FO | Farmout Agreement 10/31/1988 |
| Land | 1/1/1989 | OPERATING AGREEMENT | WD/GI UOA - CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | GI CATCO UOA - CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL Unit No. 891002021 |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | UOA | EI 266 Unit Operating Agreement |
| Land | 1/1/1989 | OA | CATCO Operating Agreement eff. 1/1/89 by and between Conoco, Richfield , Texaco, et al |
| Land | 1/1/1989 | OA | Operating Agreement 1/1/89 |
| Land | 3/10/1989 | FO | Ratification of Farmout Agreement 3/10/1989 |
| Land | 5/2/1989 | Letter Agreement | Letter Agreement, dated May 2, 1989, between Southern Natural Gas Company and Chevron U.S.A. Inc.,concerning the "Construction, Installation, Operation and Maintenance of Measurement and Pipeline Facilities " for receipt points at various locations on the OCS, including Main Pass 77 'A' platform (as amended). Consent Sec. 1O. |
| Land | 7/1/1989 | OA | Operating Agreement eff. 7/1/89 |
| Land | 12/15/1989 | FO | FARMOUT AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC., ET. AL. AND CNG PRODUCING COMPANY |
| Land | 7/1/1990 | UA & UOA | MP 259 Unit Agreement and Unit Operating Agreement |
| Land | 10/1/1990 | Joint Operating Agreement | RATIFICATION AND AMENDMENT NUMBER 1 TO JOINT OPERATING AGREEMENT DATED OCTOBER 1, 1990, BY AND BETWEEN CONOCO INC. AND TEXAS PRODUCING INC. |
| Land | 1/1/1991 | PA | Offshore Participation Agreement, dated effectiveJanuary 1,1991, between Unocal Exploration Corporation, The Northwestern Mutual Life Insurance Company, and Hardy Oil & Gas USA Inc., BA A105. |
| Land | 4/15/1991 | OA | Operating Agreement eff. 4-15-91 b/b Conoco and Shell |
| Land | 5/1/1991 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC., MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST ET AL |
| Land | 6/1/1991 | UA | UNIT AGREEMENT, SOUTH TIMBALIER BLOCK 295 FIELD UNIT BY AND BETWEEN SHELL OFFSHORE INC. AND APACHE CORPORATION, ET AL. |
| Land | 7/1/1983 | UOA | ST 295 UOA. As amended |
| Land | 8/15/1991 | OA | HI A442 Operating Agreement C-02-0004194 |
| Land | 9/10/1991 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN ATLANTIC RICHFIELD COMPANY AND EXXON CORPORATION |
| Land | 10/1/1991 | FO | FO and Operating Agreement dated 10/1/91 between Torch Energy Advisors Inc etal and Hall-Houston Oil Company |
| Land | 4/1/1992 | Unit Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development and  Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf, Contract No. 754394018, as amended |
| Land | 4/1/1992 | Unit Agreement | Amendment to Unit Agreement. For Outer Continental Shelf Exploration, Development and Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf (Contract No. 754394018) to expand the Unit Agreement to include the NE/4 of the NW/4 of Block 61, OCS-G 1609, South. Pass Area. |
| Land | 5/2/1992 | ABOS | Agreement and Bill of Sale, dated effective May 2,1992, between Union Oil Company of California, as Seller, and The Northwestern Mutual Life Insurance Company and Hardy Oil & Gas USA Inc., as Buyers, selling 43.75% interest in the BA A-105 "A" Platform, equipment arid pipeline, to NW Mutual 31.25%, and Hardy 12.50%. |
| Land | 6/25/1992 | Letter Agreement | Letter Agreement, dated June 25, 1992, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana ", whereby Chevron obtained consent from Southern for Chevron to connect, operate and maintain pneumatic chart recorders on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
| Land | 7/1/1992 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN ATLANTIC RICHFIELD COMPANY AND SAMEDAN OIL CORPORATION |
| Land | 7/1/1992 | OA | Operating Agreement eff. 7-1-92 b/b Kerr-McGee and Samedan |
| Land | 1/1/1993 | Unit Operating Agreement | Unit Operating Agreement eff. 1-1-93 |
| Land | 2/15/1993 | Letter Agreement | Letter Agreement, dated effective February 15, 1993, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana", whereby Chevron and Southern agree to amend and replace Exhibit "A" to that certain Letter Agreement, dated June 25, 1992 (described hereinabove). |
| Land | 4/2/1993 | ABOS | Bill of Sale, dated April 2, 1993, from Southern Natural Gas Company ("Southern") to Chevron U.S.A. Inc.("Purchaser"), whereby Southern sells to Purchaser certain Barton chart recorders and appurtenant equipment located at various on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
| Land | 5/7/1993 | Letter Agreement | Letter Agmt. dated 5-7-1993 b/b Shell Offshore Inc. and Freeport McMoRan Oil and Gas Company. |
| Land | 6/1/1993 | FO | Farmout Agmt. eff. 6-1-1993 b/b Shell Offshore Inc. and Samedan Oil COporation. |
| Land | 6/11/1993 | Joint Operating Agreement | Operating Agreement eff. 6-11-1993 b/b Samedan Oil COrporation and British Borneo Exploration Inc., et al |
| Land | 8/1/1993 | Assignment | Assignment of Interest in Oil and Gas Lease (OCS-G 13944) effective date 08/01/93 from Anadarko Petroleum Corporation, Assignor, to Phillips Petroleum Company,Assignee, 50% of its right, title and interest in OCS-G 13944, GI Block 116, South Addition. |
| Land | 8/16/1993 | Joint Operating Agreement | Amendment to'Operating Agreement, dated August 16, 1993, between Express Acquisition Company and Torch EnergyAdvisors Inc. |
| Land | 12/30/1993 | OA | WD 90, WD 103 Operating Agreements 12-30-1993 |

| | | | |
|---|---|---|---|
| Land | 1/1/1994 | Joint Operating Agreement | BP EXPLORATION & OIL INC. AND SHELL OFFSHORE INC ET AL. |
| Land | 1/1/1994 | Co-Development Agreement and Amendment to Unit Operating Agreement | Co-Development Agreement and Amendment to Unit Operating Agreement originally and between CNG Producing Company & Columbia Gas Development Corp., et al |
| Land | 1/21/1994 | Unit Operating Agreement | Unit Operating Agreement for the Viosca Knoll 252 Unit, by and between Samedan Oil Corporation, as Operator, and Continental Land &'Fur Co., Inc., dated effective January 21,1994. Preferential Right to Purchase - 15 Days. (Section 26.2) |
| Land | 2/1/1994 | JOA | JOperating Agreement eff. 2/1/94 |
| Land | 2/10/1994 | JDA | JOINT DEVELOPMENT AGREEMENT DATED FEBRUARY 10, 1994, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA - TERMINATED BY LETTER AGREEMENT DATED MARCH 10, 1999. |
| Land | 2/11/1994 | Unit Agreement | Unit Agreement For Outer Continental Shelf Exploration, Development and Production Operations on theViosca Knoll 252 Unit designated Contract No. 754394013, by the Minerals Management Service, dated effective February 11, 1994, executed by Samedan Oil Corporation (as Unit Operator) and Chevron U.S.A. Inc.(as a working interest owner). |
| Land | 6/1/1994 | Joint Operating Agreement | OPERATING AGREEMENT DATED JUNE 1, 1994, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. |
| Land | 6/6/1994 | Letter Agreement | Letter Agreement, dated June 6, 1994, whereby Chevron U.S.A. Inc. approves, adopts and.recognizes the Unit Operating Agreement, date January 21, 1994 for the Viosca Knoll 252 Unit |
| Land | 6/9/1994 | Letter Agreement | Letter Agreement, dated June 9, 1994, by and between Chevron U.S.A. Inc., Samedan Oil Corporation and Continental Land & Fur Co., Inc. |
| Land | 6/24/1994 | OA | Operating Agreement eff. 6-24-94 |
| Land | 7/1/1994 | OA | Operating Agreement 7/1/1974 |
| Land | 7/7/1994 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN POGO PRODUCING COMPANY AND COCKRELL OIL AND GAS, L.P., ET AL |
| Land | 7/15/1994 | Letter Agreement | LETTER AGREEMENT DATED JULY 15, 1994 BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELDY. |
| Land | 9/1/1994 | UOA | EI 89 Field UOperating Agreement 9/1/94 |
| Land | 9/1/1994 | FARMOUT AGREEMENT | Farmout Agmt Eff. 9-1-94 |
| Land | 10/19/1994 | JDA | Joint Venture Development Agreement, dated October 19,1994',between Norcen Explorer, Inc and Texaco Exploration and Production, Inc. forming a working-interest unit comprising portions of Ship ShOperating Agreement Block 206 and OCS-G 1523, Ship ShOperating Agreementl Block 207'. |
| Land | 11/16/1994 | JDA | Joint Venture Development Agreement, dated November 16>1994, between Norcen.Explorer, Inc., Texaco Exploration and1 Production, Inc., Industries, TheiGeorge R. Brown Partnership, JOC Venture, LamarHunt Trust Estate, Mobil Oil Exploration SoProducingiSoutheast Inc.,-and Hunt Oil Company, covering all of Blocks 206 and 207 Ship ShOperating Agreementl Area. |
| Land | 11/30/1994 | JDA | Amendment to Joint Venture Development Agreement, dated November'30,1994, between iNorcen Explorer,.'Inc., Texaco Exploration, and Production; Inc., Hunt Industries, The George.R..Brown Partnership, JOG Venture, Laniar Hunt Trust Estate, Mobil Oil Exploration &+Producing Southeast Inc., and Hunt Oil Company, covering all of Blocks 206 and 207 Ship ShOperating Agreementl Area. |
| Land | 3/28/1995 | Letter Agreement | LETTER AGREEMENT DATED MARCH 28,1995, BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELDY, ET AL. |
| Land | 4/6/1995 | JDA | Amendment to Joint Venture Development Agreement, dated April 6, 1995, between Norcen Explorer, Inc., Texaco Exploration and Production; Inc., Hunt Industries, The George R. Brown, Partnership; JOC Venture, Lamar Hunt Trust Estate, Mobil Oil Exploration 8i Producing Southeast Inc., and Hunt Oil Company, covering; all of'Blocks.206 and 207 Ship ShOperating Agreementl Area. |
| Land | 5/1/1995 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MAY 1, 1995, BY AND BETWEEN CONOCO INC. AND VASTAR RESOURCES, INC., ET ALL. |
| Land | 7/1/1995 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT EFFECTIVE JULY 1, 1995, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, DALEN RESOURCES OIL & GAS CO AND GLOBAL NATURAL RESOURCES CORPORATION OF NEVADA COVERING PORTIONS OF BLOCK 117 AND 118, EUGENE ISLAND, AS AMENDED TO EXCLUDE JOINT DEVELOPMENT ACREAGE. |
| Land | 10/1/1995 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN AMERADA HESS CORPORATION AND VASTAR RESOURCES INC. |
| Land | 11/8/1995 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN FORCENERGY GAS EXPLORATION INC. AND ENERGY INVESTMENTS INC. |
| Land | 12/14/1995 | LOI | REVISED LETTER OF INTENT (FARMOUT) DATED DECEMBER 14, 1995, BY AND BETWEEN ENSERCH EXPLORATION, INC, AND PETROBRAS AMERICA, INC. |
| Land | 2/23/1996 | JOINT DEVELOPMENT AGREEMENT | JOINT DEVELOPMENT AGREEMENT BY AND BETWEEN APACHE CORPORATION, W & T, DEVON, NCX |
| Land | 3/7/1996 | Conditional Letter of Acceptance to Exploration Agreement | Letter Agreement by and between Hardy Oil & Gas USA, Inc., British Borneo Oil & Gas USA, Inc., British Borneo Exploration, Inc. and Zilkha Energy Company |
| Land | 3/7/1996 | JDA | JOINT DEVELOPMENT AREA AGREEMENT DATED MARCH 7, 1996, BY AND BETWEEN LOUISIANA LAND AND EXPLORATION COMPANY AND ENSERCH EXPLORATION, INC, ET AL COVERING PORTIONS OF BLOCKS 107, 108, 118 AND 117, EUGENE ISLAND. |
| Land | 9/1/1996 | Joint Operating Agreement | JOA BY AND BETWEEN CAIRNE ENERGY USA, INC. AND NORCEN EXPLORER, INC. ET AL. |
| Land | 9/1/1996 | OA | Offshore Operating Agreement 9/1/1996 |
| Land | 9/3/1996 | OA | Operating Agreement (depths below 9000' on VR 392 & VR 408; and all depths VR 407) 9/3/1996 |
| Land | 12/15/1996 | OA | Operating Agreement eff. 12-15-96 b/b Vastar and Union |
| Land | 1/3/1997 | Joint Operating Agreement | Operating Agreement eff. 1-3-1977 b/b Transco Exploration Company, as Operator, and Freeport Oil Company, Energy Development Corporation, Pioneer Production Corporation, et al |
| Land | 1/21/1997 | Assignment | Assignment of Record Title effective date 01/21/97 from Phillips Petroleum Company to SOI. SOI will acquire a 50.0% of 6/6ths interest in OCS-G 13944, GI Block 116, South Addition. |
| Land | 1/21/1997 | PSA | Purchase and Sale Agreement between Phillips Petroleum Company ("Seller") and SOI ("Purchaser"), whereby Phillips reserves a prop01tonately reduced 10% of 6/6ths Overriding Royalty Interest in OCS-G 13944, effective date 01/21197 |
| Land | 5/1/1997 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective May 1,1997, between GOM Shelf, LLC, and ChevronTexaco and Kerr-McGee Oil & Gas Corporation, amending Exhibit "A" to reflect a new division of interest. |
| Land | 7/7/1997 | Letter Agreement | Letter Agreement, dated July 7, 1997, by and between Chevron U.S.A. Inc. and Samedan Oil Corporation,concerning of the OCSTG 10930 Well #1 in Viosca Knoll Block 251 to a proposed depth of 22,500' and certain earning and assignment provisions, more fully described therein. |
| Land | 10/1/1997 | UOA | MI 623 Unit Operating Agreement |
| Land | 10/1/1997 | UOA | SP 65 G G-1 Unit Res A UOperating Agreement |
| Land | 10/1/1997 | UOA | SP 65 G G-1 Unit Res B UOperating Agreement |
| Land | 10/1/1997 | UOA | SP 65 G2-G3 UOperating Agreement |
| Land | 10/1/1997 | OA | SP 61, 70 Joint Operating Agreement eff. 10-1-97 |
| Land | 12/18/1997 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC. |
| Land | 2/1/1998 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC. AND WESTPORT OIL AND GAS COMPANY INC |
| Land | 2/28/1998 | Letter Agreement | Letter Agreement dated 02/28/98 between CNG Producing Company, et al, and SOI and Anadarko Petroleum Corporation, whereby SOI acquires 50% working interest in GI Block 110. |
| Land | 3/1/1998 | Unit Operating Agreement | UNIT OPERATING AGREEMENT DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION AND SHELL OFFSHORE INC. UNIT NO.754398019 |
| Land | 3/1/1998 | Unit Agreement | UNIT AGREEMENT FOR OUTER CONTINENTAL SHELF EXPLORATION, DEVELOPMENT, AND PRODUCTION OPERATIONS ON THE GRAND ISLE BLOCK 116 UNIT, DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, AND SHELL OFFSORE INC. UNIT NO.754398019 |
| Land | 3/1/1998 | ORRI | Assignment of Overriding Royalty Interest, dated effective 03/01/98, whereby ANADARKO and SOI assigns 1 % (of 6/6ths) ORRI to BHP, CNG and Amoco, re: GI 11OCS-G18069, GI 116 OCS-G 13944, GI 11OOCS-G13943. |

| | | | |
|---|---|---|---|
| Land | 3/1/1998 | Assignment | Record Title Assignment of Oil and Gas Lease (OCS-G 13943) effective date 03/01/98 whereby BHP Petroleum (GOM) Inc., (Assignor) assigns to SOI and Anadarko Petroleum Corporation (Assignees) a 25% of 6/6ths, equally to Assignees, being of all right, title and interest, covering OCS-G 13943, GI Block 110, South Addition. |
| Land | 3/1/1998 | ORRI | Assignment of Overriding Royalty Interest, dated effective 03/01/98, whereby ANADARKO and SOI assigns 1 % (of 6/6ths) ORRI to BHP, CNG and Amoco, re: GI 1110CS-G18069, GI 116 OCS-G 13944, GI 110OCS-G13943. |
| Land | 3/2/1998 | LA | LETTER AGREEMENT DATED MARCH 2, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, ET AL, AND AMOCO PRODUCTION COMPANY, ET AL. |
| Land | 3/3/1998 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN WESTPORT OIL AND GAS COMPANY INC. AND BASIN EXPLORATION INC |
| Land | 3/13/1998 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MARCH 13, 1998, BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC. AND VASTAR RESOURCES, INC. |
| Land | 4/1/1998 | JVA | JOINT VENTURE AGREEMENT - SPECTER PROSPECT DATED APRIL 1, 1998 BY AND BETWEEN SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL., as amended. |
| Land | 4/1/1998 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. |
| Land | 4/6/1998 | Letter Agreement | LETTER (ELF OFFERS NIPPON PART OF THE COperating AgreementSTAL INTEREST) DATED APRIL 6, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED |
| Land | 4/6/1998 | JVA | AMENDMENT TO JOINT VENTURE AGREEMENT- ELF ASSUMES COperating AgreementSTAL POSISTION DATED APRIL 6, 1998 ELF EXPLORATION INC. AND COperating AgreementSTAL O&G CORPORATION. |
| Land | 4/7/1998 | Assignment | Assignment of Record Title Interest, dated 4/7/98, whereby SOI assigns 12.5% Record Title to OBI regarding GI 116, OCS-G 13944. |
| Land | 4/10/1998 | FO | FARMOUT AGREEMENT DATED APRIL 10, 1998, BY AND BETWEEN COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 4/13/1998 | Letter Agreement | LETTER- NIPPON TAKES ITS SHARE OF COperating AgreementSTAL F/O & SHARE OF ELF'S INTEREST DATED APRIL 13, 1998, BY AND BETWEEN ELF EXPLORATION INC., COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 7/1/1998 | Farmout Agreement | FO by and between Energy Development Corp & Juniper Energy Kp |
| Land | 7/12/1998 | Joint Operating Agreement | JOINT OPERATING AGREEMENT DATED JULY 12, 1998 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 11/5/1998 | JVA | ADDENDUM TO JOINT VENTURE AGREEMENT DATED NOVEMBER 5, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| Land | 2/11/1999 | OA | Operating Agreement eff. 2-11-99 |
| Land | 6/1/1999 | AREA OF MUTUAL INTEREST | AREA OF MUTUAL INTEREST BY AND BETWEEN OCEAN ENERGY INC. AND DUKE ENERGY HYDROCARBONS, LLC |
| Land | 8/5/1999 | EA | EXPLORATION AGREEMENT DATED AUGUST 5, 1999 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 11/18/1999 | Letter Agreement | Letter Agreement, dated November. 18, 1999, by and between Chevron U.S.A. tic. and Samedan Oil Corporatiori being a COPAS Amendment to Unit Operating Agreement for the Viosca Knoll 252 Unit concerning Subpart (L) of Section m. "Overhead", andimade effective January 1,2000. |
| Land | 12/1/1999 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN FORCENERGY INC. AND MAKO OFFSHORE EXPLORATION, INC., ET AL. |
| Land | 11/1/1980 | Joint Operating Agreement | Operating Agreement, Main Pass Area, Blocks 77 and 78, Gulf of Meidco, dated effective November 1, 1980,between Gulf Oil Corporation, Texoma Production'Company, The Anschutz Corporation, NICOR Exploration Company, and The Superior Oil Company, covering the federal Oil and Gas Lease OCS-G 4481, Blocks 77+and78 Main Pass Area, Offshore Louisiana, a true copy of the original is recorded in C.O.B. 592, Folio 658, Plaquemines Parish, Louisiana. |
| Land | 12/15/1999 | Letter Agreement | Letter Agreement, dated December 15, 1999, between Apache Corporation, Chevron U.S.A. Production Company, Kelley Oil Corporation, Key Production Company, Mobil Exploration & Producing U.S. Inc. and Sabco Oil and Gas Corporation, regarding the OCS-G 4481 #A-23 Well, Main Pass Block 77, Main Pass Block 151 Field, Offshore. LA. Note: only have Key's executed cop |
| Land | 1/1/2000 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN OCEAN ENERGY, INC., MCMORAN OIL & GAS LLC., ET AL. |
| Land | 1/31/2000 | FO | Farmout Letter Agreement 1/31/2000 |
| Land | 2/7/2000 | OA | Operating Agreement eff. 2-7-00 |
| Land | 5/1/2000 | OA | Operating Agreement eff. 5/1/00 |
| Land | 8/4/2000 | FO | Farmout Agreement 8/4/2000 |
| Land | 11/17/2000 | PA | Participation Agreement and Operating Agreement 11-17-00 b/b Samedan and Stone |
| Land | 12/8/2000 | Letter Agreement | Letter Agreement, dated December 8, 2000 (effective December 1, 2000), by and between Chevron U.S.A. Inc.and Williams Field Services - Gulf COperating Agreementst Company, L.P., whereby Chevron U.S.A. Inc. consents to an assignment by Williams Field Services - Gulf COperating Agreementstst Company, L.P., to its affiliate, Williams Mobile Bay Producer Services, L.L.C. |
| Land | 1/11/2001 | LETTER AGREEMENT | Letter, dated January 11, 2001, from the United States Department of the Interior, Minerals Management Serviceto Chevron U.S.A. Inc., approving the initial participating area plat and Exhibit C for the Viosca Knoll 252 Unit,Agreement No. 754394013, effective November 8, 2000 |
| Land | 6/1/2001 | OA | Offshore Operating Agreement 6/1/2001 |
| Land | 6/15/2001 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND RWE PERTROLEUM COMPANY ET AL. |
| Land | 6/15/2001 | JDA | JOINT DEVELOPMENT AGREEMENT  EFFECTIVE JUNE 15, 2001, BY AND BETWEEN RME PETROLEUM COMPANY AND W&T OFFSHORE, INC, "SM280 OWNERS" AND RME ET AL "SM 281 OWNERS" AND THAT CERTAIN JOINT OPERATING AGREEMENT ATTACHED THERETO AS EXHIBIT "B". |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 66 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering OCS-G 2282, South Marsh Island Block 132. |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 135 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 136 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 137 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 149 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 150 |
| Land | 10/1/2001 | OA | Operating Agreement eff. 10-1-01 b/b Union and Forest |
| Land | 10/1/2001 | OA | Operating Agreement eff. 10-1-01 b/b Union and Forest |
| Land | 11/3/2001 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| Land | 1/9/2002 | Letter Agreement | Letter, dated January 9, 2002, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit C for the Viosca Knoll 252 Unit, Agreement No. 754394d73, effective December 1, 2001. |
| Land | 3/1/2002 | FO | Farmout Agmt. eff. 3-1-2002 b/b Samedan Oil Corporation (Farmor) and Pure Resources, L.P. (Farmee) |
| Land | 8/23/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc., as Operator, and Spinnaker Exploration Company, L.L.C., as Non-Operator |
| Land | 8/30/2002 | Assignment | Assignment of Record Title Interest, approved 8/30/2002, whereby SOI assigns unto OBI, covering GI 110 OCS-G 13943. |
| Land | 9/20/2002 | Assignment | Assignment of Operating Rights, approved 9/20/2002, whereby SOI assigns unto OEI, covering GI 110, OCS-G 13943. |
| Land | 12/18/2002 | Pooling Agreement | POOLING AGREEMENT DECEMBER 18, 2002, BY AND BETWEEN THE STATE OF TEXAS AND SPINNAKER EXPLORATION COMPANY, INC. |

| | | | |
|---|---|---|---|
| Land | 12/20/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC |
| Land | 3/31/2003 | Letter Agreement | Letter Agreement, dated March 31, 2003, between Chevron U.S.A. Inc., Sabco Oil and Gas Corporation, Apache Corporation, ExxonMobil Production Company, Key Production Company and Contour Energy Company regarding Second Opportunity to Participate - Election to Acquire^Non-Participating Interest, in the MP77 OCS-G 4481 A-6 TTPG, Project No. UWGHP-R3011, Cost Center LCP170500, Main Pass Block 77. Key Production Company election. |
| Land | 5/1/2003 | Joint Operating Agreement | Offshore Operating Agreement dated May 1, 2003 between Magnum Hunter Production,Inc, and Westport Resources Corporation et al |
| Land | 5/19/2003 | JOA | JOperating Agreement eff. 5/19/03 |
| Land | 5/19/2003 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between FIELDWOOD ENERGY OFFSHORE LLC(SUCCESSOR TO GRYPHON GRYPHON COMPANY) ANDAPACHE CORPORATION (SUCCESSOR TO SPINNAKER EXPLORATION COMPANY, L.L.C.) |
| Land | 6/9/2003 | PA | Participation Agmt. eff. 6-9-2003 b/b Samedan Oil Corporation and CLX Company |
| Land | 8/7/2003 | PA | Exploration Participation Agreement, dated August 7, 2003, by and between Chevron U.S.A. Inc. and Westport Resources Corporation, as amended, concerning certain Offshore Continental Shelf properties, all as is more fully, provided for and described therein. |
| Land | 9/25/2003 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between Apache Corporation and Chevron USA |
| Land | 1/1/2004 | Area of Mutual Interest Agreement | FARMOUT AGREEMENT DATED JANUARY 21, 2004, BY AND BETWEEN CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. |
| Land | 1/7/2004 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between Apache Corporation and Shell Offshore et al |
| Land | 2/25/2004 | FO | Farmout Agmt eff. 2-25-2004 b/b Forest Oil Corporation, Texas Standard Oil Company, Noble Energy, Inc. and Pioneer Natural Resources USA, Inc., as Farmors, and Houston Energy, L.P., as Farmee |
| Land | 2/25/2004 | Joint Operating Agreement | Ratification and Amdt. Of Operating Agreement eff. 2-25-2004 b/b Forest Oil Corporation et al |
| Land | 3/18/2004 | PSA | PSA dated 3-18-04 but eff. 9-1-2003 b/b Noble Energy, Inc. and Northstar Gulfsands, LLC |
| Land | 3/25/2004 | JVA | Amendment to Joint Venture Development Agreement, dated. March 25, 2004 between Anadarko E Bt P Company LP: Chevron U.S.A. Inc.; Hunt Oil Company, Hunt Petroleum, the George,R. Brown Partnership LP, Offshore Investment ,Cov and the'Lamar Hunt Trust Estate,, whereby the Unit 'was expanded |
| Land | 4/1/2004 | Joint Operating Agreement | AMENDMENT OF JOINT OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 4/2/2004 | Divestiture | ASSET SALE AGREEMENT DATED APRIL 2, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 4/19/2004 | FO | Farmout Agreement by and between Newfield Exploration Company and Westport Resources Company, as Owners of WC 73, and Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC as Owners of WC 72 |
| Land | 5/28/2004 | Letter Agreement | Letter, dated May 28, 2004, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit Cfor theViosca Knoll 252 Unit, Agreement No. 754394013, effective December 1, 2003. |
| Land | 6/1/2004 | OA | Operating Agreement eff. 6-1-04 by and between Newfield Exploration Co & Triumph Energy LLC |
| Land | 6/29/2004 | Letter Agreement | LETTER AGREEMENT DATED JUNE 29, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. |
| Land | 7/20/2004 | PHA | PHA eff. 7-20-2004 b/b Forest Oil Corporation, as operator and co-owner of the WD 34 A PF and Red Willow Offshore, LLC, et al, as producers |
| Land | 7/27/2004 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Corporation and Applied Drilling Technology, Inc. |
| Land | 8/1/2004 | Unit Operating Agreement | Amendment and Supplement to?Unit Operating Agreement for the Viosca Knoll 252 Unit, dated August 1,2004, by and between Chevron UiS.A. Inc. and-Noble Energy, Inc |
| Land | 8/1/2004 | OA | Operating Agreement 8/1/04 |
| Land | 8/11/2004 | Notice | NOTICE OF ASSIGNMENT DATED AUGUST 11, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 8/24/2004 | Letter Agreement | Letter Agreement dated August 24, 2004, between Chevron U.S.A. Inc. and Williams Field Services- Gulf COperating Agreementst Company, L.P. |
| Land | 9/7/2004 | Settlement and Release Agreement | SETTLEMENT AND RELEASE AGREEMENT DATED SEPTEMBER 7, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 10/1/2004 | OA | Operating Agreement eff. 10-1-04 |
| Land | 10/6/2004 | LOI | LETTER OF INTENT DATED OCTOBER 6, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 10/7/2004 | EA | EXPLORATION AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 10/14/2004 | Letter Agreement | Letter Agreement, dated October. 14, 2004, between Chevron U.S.A. Inc and Noble Energy, Inc. concerning Production Handling Agreement Terin's, Viosca Knoll 251 "A" PlatfomvCadillacProspect and any Other Future Non-unit Production |
| Land | 10/28/2004 | PSA | PSA dated 10-28-2004 but eff. 7-1-2004 B/B Eni Deepwater LLC and Northstar Gulfsands, LLC |
| Land | 11/1/2004 | PA | Exploration Participation Agreement, dated November 1, 2004, by and between Chevron U.S.A. Inc. and Newfield Exploration Company, concerning certain Offshore Continental Shelf properties, all as is more fully provided for and described therein |
| Land | 11/18/2004 | Letter Agreement | Letter Agreement, dated November 18, 2004, between Chevron U.S.A. Inc. and Newfield Exploration Company, amending'the;terms of Letter Agreement•,dated October 14, 2004, between Chevron U.S.A. Inc. and Noble Energy, Inc. concerning Production Handling Agreement Terms, Viosca knoll.251 "A" Platform, Cadillac Prospect and any Other Future Non-unit Production. |
| Land | 1/1/2005 | VUA | VOLUNTARY UNIT AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY. |
| Land | 1/1/2005 | Operating Agreement | Operating Agreement 1-1-05 by an between Maritech and Arena |
| Land | 1/25/2005 | Letter Agreement | Letter Agreement for the Operation and Ownership Transfer of Certain South Marsh Island Block 66 Facilities, dated effective January 25, 2005, between Transcontinental Gas Pipeline Corporation,,as Seller> and Union Oil "Company-of California and Forest Oil Corporation, as Purchasers, for facilities and pipeline associated with "A" and "C" Platforms'. NEVER CONSOMATED. |
| Land | 2/1/2005 | Letter Agreement | Letter Agreement, dated February 1, 2005, between Union Oil Company of California and Forest Oil , covering OCS-G 2589, South Marsh Island Block 137, anine Unit Operating Agreement for South Marsh Island Block 137 Unit, identified as Unit Agreement No. 14-08-001-20237, replacing and superseding, effective October 1, 2001, that certain Unit Operating Agreement dated January 1,1989 between Conoco Inc., Texaco Producing Inc. and CanadianOXY Offshore Production Company. |
| Land | 3/28/2005 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN GOM SHELF LLC BY APACHE CORPORATION AND RIDGEWOOD ENERGY CORPORATION |
| Land | 5/27/2005 | Joint Operating Agreement | Operating Agreement eff. 5-27-2005 b/b BP Exploration & Production Inc. and EOG Resources, Inc. |
| Land | 5/28/2005 | PA | Participation Agmt eff. 5-28-2005 b/b BP Exploration & Production Inc. and EOG Resources, Inc. |
| Land | 8/2/2005 | PSA | PURCHASE AND SALE AGREEMENT DATED AUGUST 2, 2005, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 10/25/2005 | OA | Operating Agreement 10-25-05 |
| Land | 11/1/2005 | JDA | JOINT DEVELOPMENT AGREEMENT BY AND BETWEEN MERIT ENERGY COMPANY AND STONE ENERGY CORPORATION ET AL. |
| Land | 11/1/2005 | Partition and Redemption Agreement | Partition and Redemption Agmt. dated 11-1-2005 b/b Northstar Gulfsands, LLC and Gulfsands Petroleum USA, Inc. |
| Land | 11/7/2005 | Unit Agreement | Amendment to Unit Agreement, Viosca Knoll Block 252 Unit, Contract No. 754394013, dated November 7, 2005 (effective November 1, 2005) as approved by the Minerals Management Service by letter dated January 10,2007; but made effective November 8, 2006, replacing Exhibits "A", "B" and "C" and Article 13.1 in its entirety (reduction of Unit Area) |
| Land | 12/20/2005 | Letter Agreement | Letter Agreement, dated December 20, 2005, between Noble Energy, Inc. and Ghevron U.S.A. Inc., being a consent.to.disclose confidential data |
| Land | 2/22/2006 | FO | Farmout Proposal Letter Agreement Between The Houston Exploration Company and Noble Energy Inc. 2/22/2006 |

| Land | 3/1/2006 | ABOS | |
| | | | ABOS eff. 3-1-2006 b/b Noble Energy, Inc. as Assignor and Coldren Resources LP as Assignee. |
| Land | 4/4/2006 | Joint Operating Agreement | STONE ENERGY CORPORATION AND GOM SHELF LLC, ET AL |
| Land | 6/28/2006 | OA | JOperating Agreement eff. 6-28-86 |
| Land | 7/24/2006 | OA | Operating Agreement eff. 7-24-06 |
| Land | 10/17/2006 | JOA | Operating Agreement eff. 10-17-06 |
| Land | 10/30/2006 | FO | |
| | | | Farmout Agreement, dated effective October 30, 2006, between Chevron U.S.A. Inc., as-Farmor, and Mariner Energy Resources, Inc., as farmee, covering 5/2 of SM 149 (OCS-G 2592) and 5/2 of SM 150 (005-016325) and limited to depths from the surface to the stratigraphic equivalent of 100' below the deepest depth drilled in the #1 Well as proposed. |
| Land | 1/10/2007 | Letter Agreement | |
| | | | Letter dated January 10, 2007, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision Exhibits "A", "B" and "C" reflecting a change in the Unit Area due to contraction provisions in the Viosca Knoll 252 Unit, Agreement No. 754394013. |
| Land | 2/28/2007 | FO | FO eff. 2/28/07 by and between Newfield and Apache |
| Land | 4/3/2007 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Coporation, Samson Contour Energy and Shell Offshore |
| Land | 5/17/2007 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN DEVON ENERGY PRODUCTION COMPANY, L.P. AND HUNT PETROLEUM CORPORATION, ET AL, |
| Land | 9/21/2007 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand SENECA RESOURCES CORPORATION |
| Land | 12/31/2007 | PSA | PURCHASE AND SALE AGREEMENT BY AND BETWEEN GOM SHELF LLC AND WILD WILL CONTROL INC. |
| Land | 12/31/2007 | Company Agreement | Company Agreement, dated effective December 31, 2007, between BP America Production Company,Chevron USA Inc. and GOM Shelf LLC, amending the Operating Agreements for certain jointly-owned Facilities and Wells in GI 40, 41, 47, 48 and WD 69 and 70 damaged by Hurricane Katrina. |
| Land | 12/31/2007 | PSA | Agreement for Purchase and Sale, effective December 31, 2007, between Chevron U.S.A. Inc., as Seller, and Wild Well Control, Inc., as Buyer, conveying Chevron's undivided interest in certain Facilities and Wells in GI 40, 41, 47, 48 and WD 69 and 70 to Wild Well Control for the purpose of decommissioning |
| Land | 5/1/2008 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN MARINER ENERGY, INC. AND APACHE CORPORATION |
| Land | 7/7/2008 | Acquisition | Stock Purchase Agmt dated July 7, 2008 b/b Northstar E&P, LP and Dynamic Offshore Resources, LLC |
| Land | 7/7/2008 | Letter Agreement | VR 332 AS Letter Agmt dated July 7, 2008 b/b Northstar Interests, L.C. and Dynamic Offshore Resources, LLC |
| LAND | 7/15/2008 | Participation Agreement | ST 311 Participation Agreement-Walter & APA-7-15-2008 |
| LAND | 7/15/2008 | Assignment of ORRI | ST 311 Walter ORRI Assign. |
| Land | 8/27/2008 | FO | |
| | | | FARMOUT AGREEMENT BY AND BETWEEN PIESCES ENERGY LLC AND APACHE CORPORATION |
| Land | 12/8/2008 | Platform Sale | Platform Sale Agreement, WD 94 G Auxiliary Platform, dated-effective December 8, 2008 between BP America'Production Company and GOM Shelf LLC, as-sellers, and Chevron USA Inc., as buyer. |
| Land | 4/30/2009 | OA | Operating Agreement eff. 4-30-09 Chevron USA, et al |
| Land | 6/1/2009 | FO | Farmout Agreement dated effective June 1, 2009, between Chevron U.S.A. Inc., and Phoenix Exploration Company, LP and Challenger Minerals Inc., covering OCS-G 32267, Chandeleur Block 42 and OCS-G 32268, Chandeleur Block 43, INSOFAR AND ONLY INSOFAR as they cover those depths from the surface to one hundred feet (100') below the deepest depth drilled and logged in the earning well. |
| Land | 6/1/2009 | OA | JOperating Agreement CA 42/43 |
| Land | 6/1/2009 | OA | Operating Agreement eff. 6-1-09 Chevron USA, et al |
| Land | 8/7/2009 | Confidentiality Agreement | |
| | | | Confidentiality Agreement by and between Apache Corporaiton and Houston Energy, L.P. |
| Land | 12/14/2009 | OPTION AGREEMENT | OPTION AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 2/1/2010 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 2/25/2010 | OA | Operating Agreement eff. 2-25-10 |
| Land | 4/8/2010 | Letter Agreement | |
| | | | Letter Agreement, dated 4/8/2010 between Shell Offshore Inc., Apache Corporation and Nippon Oil Exploration U.S.A. Limited amending the Unit Operating Agreement, dated March 1, 1998. |
| Land | 6/1/2010 | PA | Approval of Revision of Participation Area, effective June 1, 2010, whereby the Grand Isle CATCO Unit was revised. |
| Land | 6/1/2010 | ABOS | |
| | | | Bill of Sale and Conveyance, effective June 1, 2010, whereby Chevron U.S.A. Inc. transferred certain Interests in Grand Isle Block 46, OCS-G 00132 N-l well/API No. 17-717-40959-00, certain interests in Grand Isle Block 46, OCS-G 00132 Platform, the line fill as of the effective date, and the Minerals Management Segment Number 15732 Pipeline as well as its associated Right of Way, equipment and facilities to GOM Shelf |
| Land | 7/23/2010 | Confidentiality Agreement | |
| | | | Confidentiality Agreement by and between Apache Corporaoion and W & T Offshore Inc. |
| LAND | 9/1/2010 | OCS Exploration Venture | mp-295-Joint Venture Letter Agreement |
| Land | 9/14/2010 | Letter Agreement | CHEVRON USA INC. AND GOM SHELF LLC |
| Land | 2/1/2011 | ABOS | Assignment and Conveyance, dated effective February 1, 2011, between Harrigan Energy Partners, Inc.,Assignor, and Chevron U.S.A. Inc* as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities; pipelines, equipment, contracts., etc., all as more fully described therein. |
| Land | 3/15/2011 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATIONand STONE ENERGY OFFSHORE LLC |
| Land | 4/21/2011 | PSA | Asset Purchase and Sale Agreement, dated April 21, 2011, but made effective February 1, 2011, between SabcoOil and Gas Corporation, as Seller, and Chevron U.S.A. Inc., as Purchaser, whereby Purchaser acquired 0.63149% of 0.83922% of 8/8ths of Seller's right title and interest in the Lease, together with Seller's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein. |
| Land | 4/21/2011 | ABOS | Assignment and BUI of.Sale, dated April 21, 2011, but made effective February 1, 2011, between Sabco Oil and Gas Corporation, as Assignor/and Chevron U.S.A. Inc., as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein |
| Land | 8/1/2011 | ABOS | OS eff. 8-1-2011 b/b XTO Offshore Inc. ("Assingor") and Dynamic Offshore Resources, LLC ("Assignee") |
| Land | 8/25/2011 | PARTICIPATION AGREEMENT | PARTICIPATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| LAND | 9/20/2011 | Slot and Wellbore Acquisition | MP 296 MP 296 B-19 Slot, Wellbore Acquisition Agreement |
| Land | 11/3/2011 | Letter Agreement | |
| | | | Letter Agreement dated November 3, 2011 evidencing Chevron U.S.A. Inc.'s consent to an assignment of interest from Phoenix Exploration Company LP in that certain Iternout Agreement dated and made effective June 1, 2009, to Apache Corporation and Castex Offshore, Inc. |
| Land | 11/3/2011 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| LAND | 11/17/2011 | Assignment and Bill of Sale | MP 295, MP 296, MP 303, MP 304, MP 311, MP 312, MP 313 ABOS Stone to EPL 11-1-2011 |
| LAND | 12/1/2011 | Participation Agreement | ST 311 Participation Agreement-Walter & APA & Castex-12-1-2011 |
| LAND | 12/15/2011 | Slot and Well Bore Acquisition | MP 296 MP 296 B19 ST2 Slot & Well Bore Acq Agmt |
| Land | 4/1/2012 | PA | Approval of. Revision of Participation Area, effective April 1, 2012, whereby the Grand, Isle CATCO Unit was revised. |
| Land | 5/1/2012 | CONDENSATE TRANSPORT & SEPARATION AGREEMENT | CONDENSATE TRANSPORT & SEPARATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| Land | 5/2/2012 | Letter Agreement | Letter, dated May 2, 2012 between Newfield Exploration Company and Chevron U.S.A. Inc., being a waiver of confidentiality provision grant by Chevron in favor of Newfield; |

| | | | |
|---|---|---|---|
| Land | 6/1/2012 | PSA | Ratification of Purchase and Sale Agreement by Holders of Preferential Right to Purchase, dated effective June I , 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc. and Dynamic Offshore Resources, LLC, as Preferential Right Purchasers, affecting that certain Purchase and Sale Agreement, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc., as Buyer. |
| Land | 6/1/2012 | ABOS | Conveyance, Assignment and Bill of Sale, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Assignor, and Chevron U.S.A. be. and Dynamic Offshore Resources, LLC, as Assignees, covering an undivided 0.83922% right, title and interest in certain property described in Exhibit "A" attached thereto, assigning 75.247% thereof to Chevron (0.63149% net) and 24.753% thereof to Dynamic (0.207.73%.net). |
| Land | 6/27/2012 | PSA | Purchase and Sale Agreement, dated June 27, 2012 but made effective June I , 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc., as Buyer, covering all of Seller's right, title and interest in that certain Oil & Gas Lease bearing Serial No. OCS-G 448,1, ), together with Seller's interest in certain wells, facilities, pipelines, equipment contracts, etc, all as more fully described herein. |
| Land | 7/9/2012 | Joint Operating Agreement | Offshore Operating Agreement (Ship ShOperating Agreement 176 Prospect OCS-G 33646) Originally by and between Hall-Houston Exploration IV, L.P, as Operator and GOM Offshore Exploration I, LLC and Apache Corporation as Non-Operators |
| Land | 8/1/2012 | Throughput Capacity Lease Agreement | Fieldwood leases capacity to Arena for Barnacle Pipeline |
| Land | 9/17/2012 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN APACHE CORPORATION AND WALTER OIL & GAS CORPORATION |
| LAND | 12/20/2012 | Farmout Agreement Extension Letter | MP 295 Extension 12-20-12 |
| Land | 2/1/2013 | AREA OF MUTUAL INTEREST | AREA OF MUTUAL INTEREST AGREEMENT BY AND BETWEEN APACHE CORPORATION AND ENERGY XXI GOM, LLC |
| Land | 2/1/2013 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN APACHE CORPORATION AND ENERGY XXI GOM, LLC |
| Land | 2/1/2013 | Data Agreement | Data Agreement effective 2-1-2013 by and between Fieldwood Energy LLC, GOM Shelf LLC, Apache Corporation and EXXI |
| LAND | 2/1/2013 | Memorandum of OA and Financing Statement | Primary Term Lands - MOA Recorded 01-2015 Revision |
| LAND | 2/1/2013 | Exploration Agreement | MP 296 EXXI Exploration Agreement\Exploration Agreement Apache & Energy XXI 2-1-2013 with Exhibits (less B) |
| LAND | 2/22/2013 | Exploration Agreement Letter | Heron Prospect (MP 295) Letter of Agreement 2-22-13 |
| Land | 3/15/2013 | Exploration Venture | Exploration Venture for portions of VR 271 SM 87 by and between Fieldwood Energy Offshore LLC, Apache Corporation and Pisces Energy LLC |
| Land | 6/1/2013 | OA | Operating Agreement eff. 6-1-13 Castex, et al |
| Land | 7/1/2013 | Acquisition | PURCHASE AND SALE AGREEMENT by and among APACHE CORPORATION,APACHE SHELF, INC., and APACHE DEEPWATER LLC collectively as the Sellers, and FIELDWOOD ENERGY LLCas Buyer and GOM SHELF LLC Dated as of July 18, 2013 |
| Land | 7/1/2013 | Acquisition | Acquistion by and between Fieldwood Energy LLC and Callon Petroleum Operating Co. |
| Land | 7/1/2013 | MOA | EI 136 Recorded Memorandum of Operating Agreement and Financing Statement |
| Land | 7/1/2013 | Joint Operating Agreement | EI 136 Operating Agreement covering depths below 19,135' SSTVD |
| Land | 7/1/2013 | Joint Operating Agreement | JOperating Agreement covering OCS-G 32264 MP 302 |
| Land | 7/1/2013 | Stipulation and Corrective Assignment | Stipulates the interest held by Apache Offshore Petroleum Limited Partnership, Fieldwood Energy LLC and Third parties |
| Land | 7/1/2013 | Assignment of Federal OCS Pipeline Right of Way | Assignment of Pipeline ROW Apache to Fieldwood LLC |
| Land | 9/9/2013 | Amendment No. 1 Bar Prospect Offshore Operating Agreement | Amends certain JOperating Agreement dated 02/01/2013 |
| Land | 9/30/2013 | Acquisition | Purchased GOM Shelf as a company from Apache |
| Land | 10/7/2013 | Election Letter Agreement PL 13 007 ST2 Well | Election Letter Agreement by and between Fieldwood Energy LLC and Enven Energy Ventures LLC |
| LAND | 10/16/2013 | Fabrication Agreement | ST 311 A Platform Construction Contract Gulf Island LLC and Walter Oil and Gas dtd 10-16-13 |
| Land | 10/25/2013 | Letter Agreement | Letter Agreement dated October 25, 2013 evidencing Chevron U.S.A. Inc.'s consent to an assignment of interest from Apache Corporation in that-certain Farmout Agreement dated and made effective June 1, 2009, to Fieldwood Energy LLC. |
| Land | 12/1/2013 | Acquisition | Equity Purchase Agreement between Sandridge Energy, Inc., Sandridge Holdings, Inc. and Fieldwood Energy LLC: Fieldwood purchased all companies listed with their assets which included Offshore and SandRidge Legacy South Texas and South Louisiana assets. |
| Land | 12/4/2013 | Extension Request - Slot Rental Agreement | by and between Fieldwood Energy LLC, GOM Shelf LLC and EPL Oil & Gas, LLC - Amends certain Slot Rental Agreement dated 12/26/2012 |
| Land | 12/4/2013 | Extension Request - Slot Rental Agreement | by and between Fieldwood Energy LLC, GOM Shelf LLC and Apache Shelf Exploration LLC - Amends certain Slot Rental Agreement dated 12/26/2012 |
| Land | 12/16/2013 | Joint Operating Agreement | TANA EXPLORATION COMPANY LLC AND APACHE CORPORATION |
| Land | 12/28/2013 | Well Proposal | Letter proposing well B-19 MP 302 well by and between Fieldwood Energy LLC, GOM Shelf LLC, Apache Corporation and Apache Shelf Exploration LLC |
| Land | 12/30/2013 | Withdrawal Agreement | Withdrawal Agreement by and between Fieldwood Energy LLC and Chevron U.S.A. Inc. |
| Land | 1/10/2014 | Prospect Proposal | Gilligan & Bingo: Stone offering of prospects to Fieldwood Fieldwood election |
| Land | 1/10/2014 | Prospect Proposal | Gilligan & Bingo: Stone offering of prospects to Fieldwood Fieldwood election |
| Land | 2/5/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldowood's election |
| Land | 2/5/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldowood's election |
| Land | 3/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Black Elk Energy Offshore Operations, LLC: Leases where Fieldwood was the operator and Black Elk held interest. Exception is ST 53 where Black Elk was the Operator. |
| LAND | 3/1/2014 | Contract Operating Agreement | ST 320 Contract Operating Agreement dtd 3-1-14 |
| Land | 3/13/2014 | Casing Point Election Letter MP 302 B-19 Well | by and between  Fieldwood Energy LLC, GOM Shelf LLC and Apache Shelf Exploration LLC: Proposal to run casing and election by Apache |
| Land | 3/13/2014 | Contract Operations Agreement | Pursuant to change in operatorship per that PSA btw SandRidge and Black Elk |
| Land | 3/24/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and Fieldwood's election |
| Land | 3/24/2014 | Prospect Proposal | Gilligan & Bingo: Stone requesting extension and fieldwood's election |
| Land | 3/28/2014 | Prospect Proposal | Proposal Amendment and Various requests for extension from Stone and election by Fieldwood |
| Land | 3/28/2014 | Prospect Proposal | Proposal Amendment and Various requests for extension from Stone and election by Fieldwood |
| Land | 4/1/2014 | FO | Farmout Agreement: OCS-G 13576; East Cameron Block 71 (Limited to the NE/4 of the block and a Contract Area created to include the Farmout Area and EC 58 S/2) |
| Land | 4/16/2014 | Settlement Agreement and Release | Settlement Agreementa nd Release - SS 198/VR 369/VR 408/ SP 8/13 |
| Land | 4/23/2014 | Letters of No Objection | Letters of No Objection, Lease & Pipeline Crossings: Appies to ST 276, 296 & 311, includes indemnification |
| Land | 4/28/2014 | Letter Agreement | Letter Agreement, dated April 28, 2014, between Chevron U.S.A. Inc. and Samson Contour Energy E&P, LLC, regarding Main Pass 77 OiI Imbalance Claim |
| Land | 5/2/2014 | Letter Agreement Well Proposal | Set forth the agreement between Apache Shelf and Fieldwood for the drilling of the EI 126 A-5 well |
| Land | 6/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC, NW Pipeline, Inc. and Northwestern Mutual Life Ins. Co.HIPS 13-III |
| LAND | 6/1/2014 | Memorandum of OA and Financing Statement | Heron Prospect MOA amd. No.2 6-1-14 |
| Land | 7/2/2014 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and Castex Offshore, Inc. : Fieldwood Divestiture of HI 116 Platform and pipelines |
| Land | 7/21/2014 | Contract Operation Agreement | Castex is named as operator of HI 167 Platform |
| Land | 8/7/2014 | Recompletion Proposal Election | MP 259 A-7 Recompletion Proposal Election: McMoRan elects not to participate in A-7 welll to Tex W-5 Sand |
| Land | 8/15/2014 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and W & T Offshore, Inc. : Assignment of interest in HI 129#16 well |
| Land | 8/15/2014 | Letter Agreement | by and between  Fieldwood Energy LLC and W & T Offshore, Inc. : RE: High Island 129 No. 12 Well Assignment |
| Land | 10/1/2014 | Divestiture | by and between  Fieldwood Energy Offshore LLC, Renaissance Offshore LLC and Apache Corporation: Assignment of Contractual interest Main Pass 76 SL 13287 #1 Well |
| Land | 10/15/2014 | Release and Settlment Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, Prime Offshore L.L.C., Tammany Oil and Gas LLC and Castex Offshore, Inc. |

| | | | |
|---|---|---|---|
| Land | 11/5/2014 | Request for extnelon of Timely Operations | MP 259 A-7 Recompletion Request for extneion of Timely Operations: Request timely operations extension for proped A-7 well |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 11/7/2014 | Stipulation of Interest and Corrective Assignment | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Apache Offshore Petroleum Limited Partnership and Apache Corporation |
| Land | 1/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC UNOCAL, and Chevron U.S.A. Inc. : GOM NOJV - Grand Isle/West Delta etc. |
| Land | 1/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC and Shell Offshore Inc.: Hickory Unit - GI 110/116 |
| Land | 1/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC and Japex (U.S.) Corp.: WD 90 & WD 103 |
| LAND | 1/13/2015 | Letter Agreement | Heron Prospect (MP 295) Letter Agent 1-13-15. |
| Land | 4/1/2015 | Assignment of Operating Rights Interest in Oil & Gas Lease | by and between Fieldwood Energy Offshore LLC, Peregrine Oil & Gas, LLC RTR Fund I, L.P, and Hall-Houston Exploration II, L.P.: Assignment of Operating Rights Interest in Oil & Gas Lease - GA 151 Operating Rights |
| LAND | 4/1/2015 | Gas Dedication and Gathering Agreement | ST 311 Gas Dedication and Gathering Agreement eff 04012015 |
| LAND | 4/1/2015 | Liquids Separation, Handling, Stabilization and Redelivery Agreement | ST 311 Liquids Separation, Handling, and Redeliv Agreement eff 04012015 |
| LAND | 4/1/2015 | Liquids Transportation Agreement | ST 311 Liquids Transportation Agreement eff 04012015 |
| Land | 4/2/2015 | Consent to Disclose Confidential Information | by and between Fieldwood Energy LLC, Bandon Oil and Gas, LP and Chevron U.S.A. Inc.: VK 252 Unit Area |
| Land | 4/30/2015 | Settlement Agreement and Release | by and between Fieldwood Energy Offshore LLC, Black Elk Energy Offshore Operations LLC and Northstar Offshore Group, LLC: |
| Land | 5/1/2015 | Divestiture | by and between Fieldwood Energy LLC and Discvovery Producer Services LLC: ST 311 Pipeline Divestiture |
| Land | 5/14/2015 | Second Amendment to the Participation Agreement | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C.: Second Amendment to the Participation Agreement OCS-G0786, South Marsh Island Area, Block 48 Offshore Federal Waters |
| Land | 6/15/2015 | Election and Designation of Successor Operator Letter | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Wichita Partnership, Ltd., W & T Energy VI, LLC and W&T Offshore, L.L.C.: In furtherance of April 14, 2015 letter Areana earned assignment from Chevron Chevron to resign as operator |
| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |
| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |
| Land | 6/29/2015 | Settlement | by and between Fieldwood Energy LLC and Discvovery Producer Services LLC: ST 311 Pipeline Divestiture |
| Land | 6/30/2015 | Consent to Assign | Consent to Assign ROW - Martin O. Miller II, LLC Sec. 11, T15S-R6W Cameron Parish LA |
| Land | 7/1/2015 | Settlement Agreement and Release | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI Petroleum US LLC and ENI US Operating Co. Inc.: SS 249 D-5 RIG Incident |
| Land | 7/2/2015 | Bill of Sale, Assignment and Assumption Agreement | by and between Walter Oil & Gas Corporation, Castex Offshore, Inc., Fieldwood Energy LLC and Apache Shelf Exploration LLC as "Seller" and Discovery Producer Services LLC as "Buyer" |
| LAND | 7/10/2015 | Termination of Farmout Agreement | MP 295 9-18-2012 Farmout Termination Ltr dtd 7-10-15 |
| Land | 8/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: MP 77, 78 and VK 251, 252, 340  Fields |
| Land | 8/3/2015 | Release and Settlement Agreement | Release and Settlement Agreement by and between Fieldwood Energy Offshore and Browning Offshore Partners, Inc. |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/9/2015 | Supplemental Bonding Agreement | by and between Fieldwood Energy LLC, SEO 4 LLC, Stone Energy Corporation and Stone Energy Offshore, L.L.C.: Fieldwood will apply own Supp Bonding |
| Land | 9/9/2015 | Transmittal of Supplemental Bonding | by and between Fieldwood Energy LLC and Stone Energy Corporation: Stone acknowledgement of reciept of Bond |
| Land | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/17/2015 | Election and Designation of Successor Operator Letter | In furtherance of April 14, 2015 and June 15, 2015 letters, Areana earned assignment from Chevron Chevron to resign as operator, clarifying Working Interests, etc. |
| Land | 10/15/2015 | Release and Settlement Agreement | by and between Fieldwood Energy LLC and Fairways Offshore Exploration, Inc. : Release and Settlement Agreement |
| Land | 10/19/2015 | Contract Operations Agreement | by and between Fieldwood Energy LLC and Helis Oil and Gas Company L.L.C.: Contract Operations Agreement #18 Helis well |
| Land | 11/19/2015 | Production Handling Agreement SM10 | PHA between Fieldwood and Byron for Byron's SM 6 production |
| Land | 12/1/2015 | Acquisition | by and between Fieldwood Energy Offshore LLC, ENI US Operating Inc.  and ENI Petroleum US LLC: GA 151, SS 246, SS 247, SS 248, SS 249, SS 270, SS 271, VR 78, VR 313, WC 72, WC 100, WC 130 |
| Land | 12/1/2015 | Release and Settlement Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI US Operating Inc. and ENI Petroleum US LLC: Release and Settlement Agreement |
| Land | 2/2/2016 | Correction Assignment | by and between Fieldwood Energy LLC and Chevron U.S.A. Inc.: Correction Assignment of Operating Rights EI 353 |
| Land | 2/22/2016 | Withdrawal Election | by and between Fieldwood Energy LLC, Apache Shelf Exploration LLC, Hall-Houston Exploration IV, L.P. and GOM Offshore Exploration I, LLC: Hall Houston withdrawal Election |
| Land | 3/1/2016 | Ratification and Amendment to Farmout Agreement | by and between Fieldwood Energy LLC, Walter Oil and Gas Corporation and Cairn Energy USA: Ratify and amend that certain Farmout dated 12/31/1984 |
| Land | 3/2/2016 | Withdrawal Election | by and between Fieldwood Energy LLC and Hall-Houston Exploration IV, L.P.: Hall Houston withdrawal Agreement |
| Land | 3/11/2016 | Waiver of Confidentiality and Consent to Disclose | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: applies to HIE 129 and ST 229 |
| Land | 4/13/2016 | Recommendation to Add Compression Services | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil and Gas II, LLC and Castex Offshore, Inc.: Requests change to compression standards in that certain Processing & Contract Operating Services Agreement dated 07/01/2011 |
| Land | 4/25/2016 | Release and Settlement Agreement | by and between Fieldwood Energy LLC, Peregrine Oil & Gas, LP and Peregrine Oil & Gas II, LLC: Release and Settlement Agreement |
| Land | 5/31/2016 | Election to Continue or Cease Compression Services | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC and Castex Offshore, Inc.: Increases to continue compression services past orignal test period |
| Land | 6/29/2016 | Election to elect out of Badger Tax Partnership | by and between Fieldwood Energy LLC, Chevron U.S.A. Inc., Peregrine Oil & Gas II, LLC and Castex Offshore, Inc.: |
| Land | 7/1/2016 | Acquisition | by and between Fieldwood Energy LLC and Monforte Exploration, LLC: 3% ORRI SM 48 E wells |
| Land | 7/1/2016 | Assignment and Bill of Sale | by and between Fieldwood Energy LLC and All Aboard Development Corporation: Assignment All Aboard to Fieldwood |
| Land | 7/8/2016 | Letter Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: Fieldwood's response to W&T Letter Agreement  - HI 129 #16 Well - Final Agreement |
| Land | 7/21/2016 | Contract Operations Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: Contract Operating Agreement eff. 7-21-16 |
| Land | 7/21/2016 | Contract Operations Agreement | by and between Fieldwood Energy LLC and W&T Offshore, Inc.: Contract Operating Agreement - #16 well |
| Land | 8/1/2016 | Letter Agreement | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/1/2016 | Letter Agreement | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/4/2016 | Letter of No Objection | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 8/4/2016 | Letter of No Objection | by and between Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 8/25/2016 | Amendment and Ratification of Production Handling Agreement | by and between Fieldwood Energy LLC, CL&F Resources, L.P, Houston Energy LP., Helis Oil and Gas Company LLC and W&T Offshore, Inc.: Amendment and Ratification of Production Handling Agreement (High Island, East Addition Block 129) |

| | | | |
|---|---|---|---|
| Land | 9/13/2016 | Agreement for Payment of Insurance Charges | by and between  Fieldwood Energy LLC and Monforte Exploration L.L.C.: Fieldwood agrees to pay Monforte's insurance charges |
| Land | 10/1/2016 | ABOS | by and between  Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: |
| Land | 11/9/2016 | Confidentiality Agreement | Confidentiality Agreement:BY AND BETWEEN FIELDWOOD ENERGY LLC AND LLOG EXPLORATION OFFSHORE, L.L.C. |
| Land | 11/21/2016 | Offer to Purchase | by and between  Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: Offer to Purchase GS E &R America Offshore, LLC's Interest in GI 94, SS 79, VR 332 and WD 34 |
| Land | 12/14/2016 | Surrener of Interest Agreement | by and between  Fieldwood Energy LLC and All Aboard Development Corporation: All Aboard Development Corp. surrender of interest |
| Land | 1/1/2017 | Acquisition | by and between  Fieldwood Energy Offshore LLC and GOM Offshore Exploration I, LLC: SS 176 Lease, Well and facilities |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawal from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 3/1/2017 | Reimbursement Agreement | by and between  Fieldwood Energy LLC, W & T Offshore, Inc., Renaissance Offshore LLC, Transcontinental Gas Pipe Line and Chevron U.S.A. Inc.: Transco Facilities Subseaq Modification - Shell owned ST 300 Platform |
| Land | 3/27/2017 | Offshore Tie-in Agreement | by and between  Fieldwood Energy Offshore LLC, Fieldwood Energy LLC and Amberjack Pipeline Company LLC: Consent of PSA between Empire and Amberjack subject to addendum |
| Land | 3/30/2017 | Letter of No Objection | Fieldwood agreed to file COX request/letter of no objectin to allow cox to produce its EI 64# 9 well. Fieldwood is the operator of SW/4 of EI 53 |
| Land | 6/8/2017 | Bill of Sale and Assumption Agreement | by and between  Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.: Manta Ray sells to Fieldood  pursuant to reverse of gas flow  in ST 295 block to direct flow of gas to ST 292 Platform |
| Land | 6/8/2017 | Interconnection and Measurement Agreement | by and between  Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.: Fieldwood desires to connect with Mata Ray's ST 292 platform and piping, etc. |
| Land | 6/8/2017 | Lease of Offshore Platform Space - ST 292 Platform | by and between  Fieldwood Energy LLC and Manta Ray Offshore Gathering, L.L.C.: |
| Land | 7/28/2017 | Indemnity and Release Agreement | by and between  Fieldwood Energy LLC and Chevron U.S.A. Inc.: Chevron sold to Cantium and needed DOO from Fieldood, Fieldwood required this Agreement to allow DOO |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| LAND | 9/15/2017 | Memorandum of OA and Financing Statement | ST 311 320 UCC, Mortgage and Conveyance |
| LAND | 9/15/2017 | Offshore Operating Agreement | ST 311-320 JDA Offshore Operating Agreement dtd 9-15-17, as amended |
| LAND | 9/15/2017 | Participation Agreement | ST 311-320 JDA Participation Agreement dtd 9-15-17 |
| Land | 9/19/2017 | Offer to Purchase | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: Offer to Purchase SCL Resources, LLC's Interest in GI 94, SS 79, VR 332 and WD 34 |
| Land | 11/7/2017 | Modification to PHA | Enhancement and modification to test separator MBD -4010 at HI 547 B Platform - PHA Agreement dated May 8, 1998 |
| Land | 4/6/2018 | Notification of Withdrawal - WC 269 | Withdrawal Election |
| Land | 4/17/2018 | Amendment | by and between  Fieldwood Energy LLC and Arena Energy, LP: Amendment to Production Handling Service Agreement dated May 8, 1988 |
| Land | 5/1/2018 | Assignment Conveyance and Bill of Sale | by and between Fieldwood Energy LLC, Peregrine Oil & Gas II, LLC and Castex Offshore, Inc. as "Assignor" and Northstar Offshore Ventures LLC as "Assignee" |
| Land | 5/15/2018 | Divestiture | Divestiture of Interests in Mustang Island to TR Offshore, L.L.C. |
| Land | 6/1/2018 | Property Exchange Agreement | Property Exchange Letter Agreement dated June 1, 2018 - BS 25 (OCS-G 31442; St. of LA Lease No. 19718) EI Area, South Addition, North Half of Block 315 (OCS-G 24912) Offshore Louisiana |
| Land | 6/14/2018 | Performance Bond | Sanare Energy Partners, LLC is the new principal replacing  Northstar Offshore Ventures LLC |
| Land | 7/11/2018 | Assignment of Operating Interest | Assignment of Operating Rights Interest  from Apaceh to Fieldwood and GOM Shelf |
| Land | 7/23/2018 | Amendment to Property Exchange Agreement | Amendment to Property Exchange Letter Agreement dated June 1, 2018 - BS 25 (OCS-G 31442; St. of LA Lease No. 19718) EI Area, South Addition, North Half of Block 315 (OCS-G 24912) Offshore Louisiana |
| Land | 8/1/2018 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech's Interest in the SS 271 Unit (SS 247,248,249) |
| Land | 8/1/2018 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdraws from SS 271 Unit |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/8/2018 | Take Over Election Letter Agreement | In accordance with certain Farmout Agreeements dated 12/17/2002, 05/19/2003 and 02/13/2004, Fieldwood elects to decline |
| Land | 8/13/2018 | Confidentiality Agreement | Confidentiality Agreement: GOM SHELF - DEEPWATER PROPERTIES |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 10/1/2018 | Acquisition | Assignment of Hall-Houston overriding royalty interest in SS 176 |
| Land | 10/18/2018 | Abandonment Agreement | pursuant to that certain PHA for MC 496 produced at SP B Platform dated 11/1/2002 |
| Land | 12/4/2018 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Byron Energy Inc. |
| Land | 12/10/2018 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Exxon Mobil Corporation |
| Land | 12/20/2018 | Letter of Intent | by and between  Fieldwood Energy LLC and TR Offhsore. L.L.C.: Contemplation of Contract Operating Agreement, Transportation Agreement |
| Land | 2/4/2019 | Termination of Exchange Agreement | Termination of Property Exchange Letter Agreement dated June 1, 2018 - BS 25 (OCS-G 31442; St. of LA Lease No. 19718) EI Area, South Addition, North Half of Block 315 (OCS-G 24912) Offshore Louisiana |
| LAND | 2/22/2019 | Exploration Agreement Letter | APA - EXXI MP 295 Side Ltr Agrmnt dtd 2-22-13 |
| Land | 3/5/2019 | Relinquishment | by and between  GOM Shelf LLC and Arena Energy, LP: Relinquishment of OCS G0978 |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and ANKOR |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Sa nare |
| Land | 4/1/2019 | PHA Amendment | First Amendment to that certain Production Handling Agreement, dated September 1, 2009 - Eugene Island 224 "A" Platform - Federal Offshore Louisiana |

| | | | |
|---|---|---|---|
| Land | 5/1/2019 | Confidentiality Agreement | Confidentiality Agreement: BY AND BETWEEN FIELDWOOD ENERGY LLC AND CIBCO RESOURCES, LLC |
| Land | 5/16/2019 | Letter Agreement | by and between Fieldwood Energy LLC and Panther Pipeline, LLC: Letter Agreement Matagorda Operating Agreement MI 518/519 with regard to natural gas pipeline work. |
| Land | 6/10/2019 | Confidentiality Agreement | by and between Fieldwood Energy LLC and TRANSCONTINENTAL GAS PIPELINE COMPANY: Confidentiality Agreement: |
| Land | 7/25/2019 | Letter Agreement OCS-G 14535 JB15T2 Well | Pursuant to that certain Farmout dated 12/17/2002. Reassignment to Arena and P&A liability |
| LAND | 7/25/2019 | Exploration Agreement | Exploration Venture Agreement by and between Fieldwood Energy LLC and Juneau Oil & Gas LLC (terminated 6-23-20) |
| Land | 11/5/2019 | Confidentiality Agreement | |
| LAND | 11/5/2019 | Transfer Notice | by and between  Fieldwood Energy LLC and W&T OFFSHORE, INC: Confidentiality Agreement: |
| Land | 11/8/2019 | Confidentiality Agreement | by and between  Fieldwood Energy LLC and PROMETHEAN ENERGY CORPORATION: Confidentiality Agreement: |
| Land | 11/8/2019 | Confidentiality Agreement | by and between  Fieldwood Energy LLC and RDC OIL PTY LTD: Confidentiality Agreement: |
| Land | 11/12/2019 | Confidentiality Agreement | by and between  Fieldwood Energy LLC and CASTEX ENERGY, INC: Confidentiality Agreement: |
| Land | 11/14/2019 | Confidentiality Agreement | by and between  Fieldwood Energy LLC and COX OIL OFFSHORE, LLC: Confidentiality Agreement: |
| Land | 11/21/2019 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and W&T Offshore, Inc.: W&T Withdrawal from EC 2 SL 18121 - W&T did not prepay abandonment |
| Land | 11/21/2019 | Letter Agreement | Letter Agreement SS 19B J-11 Well zone shift: Zone shift recommended and election from HO to HG sand by and between GOM Shelf Offshore LLC and Talos Energy Offshore LLC |
| Land | 11/21/2019 | Letter Agreement | Letter Agreement SS 19B J-11 Well zone shift: Zone shift recommended and election from HO to HG sand by and between GOM Shelf Offshore LLC and Renaissance Offshore LLC |
| Land | 12/10/2019 | Non-Consent | by and between  Fieldwood Energy LLC and W&T Offshore, Inc.: W&T Non-consent lease saving ooperation on EC 2 SL 18121 for failure to respond to lease number FW194042 |
| Land | 12/12/2019 | Purchase of Pipeline ROW OCS-G 14731 Seg. No. 10406 | by and between Fieldwood Energy LLC and Monforte Exploration L.L.C.: SS 274 A Platform to EI 259 A Platform |
| Land | 1/22/2020 | Confidentiality Agreement | by and between  Fieldwood Energy LLC and WERRUS AQUAMARINE, LLC: Confidentiality Agreement: |
| Land | 1/27/2020 | Acquisition | by and between  Fieldwood Energy LLC, Castex Offshore, Inc., GOME 12711 LLC and Dorado Deep GP, LLC : Assignment of Interest in MP 275 A-3 Well |
| Land | 3/2/2020 | Confidentiality Agreement | Confidentiality Agreement BY AND BETWEEN FIELDWOOD ENERGY LLC AND ODYSSEY PIPELINE LLC = MP 289 "C" PF |
| Land | 3/4/2020 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Arena Energy |
| Land | 01/01/1994, 04/08/1994 | Unit Operating Agreement | U nit Operating Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Total Minatome Corporation, Energy Development Corporation, Murphy Exploration and Production Company and Anadarko Petroleum Corporation; and Forest Oil Corporation and Timbuck Company/The Hat Creek Production Company, Limited Partnership (referred to as "Override Parties") |
| Land | 12/31/2013 | First Amendment to the Participation Agreement | First Amendment to the Participation Agreement OCS-G0786, South Marsh Island Area, Block 48 Offshore Federal Waters |
| Pipeline Transport | 10/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Arena Offshore LP and Arena Offshore LP |
| Pipeline Transport | 10/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Arena Offshore LP and Arena Offshore LP |
| Pipeline Transport | 10/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Arena Offshore LP and Arena Offshore LP |
| Pipeline Transport | 7/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 7/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 7/31/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 6/3/2015 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 6/3/2015 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 6/3/2015 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Energy XXI and Energy XXI |
| Pipeline Transport | 7/8/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC |
| Pipeline Transport | 7/8/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC |
| Pipeline Transport | 7/8/2013 | Barnacle Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Tana Exploration Company, LLC and Tana Exploration Company, LLC |
| Pipeline Transport | 8/1/2015 | Cheetah Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Talos Energy Offshore, LLC and Talos Energy Offshore, LLC |
| Pipeline Transport | 8/1/2015 | Cheetah Pipeline Throughput Capacity Agreement | Capacity Agreement by and between Fieldwood and Talos Energy Offshore, LLC and Talos Energy Offshore, LLC |
| Pipeline Transport | 11/12/2013 | THROUGHPUT CAPACITY LEASE AND TIE IN AGREEMENT | Capacity Agreement by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| Pipeline Transport | 12/1/2018 | EWING BANK FLOWLINE THROUGHPUT CAPACITY LEASE AGREEMENT | Capacity Agreement by and between Fieldwood and Apache Shelf Exploration LLC and Apache Shelf Exploration LLC |
| Pipeline Transport | 12/1/2018 | EWING BANK FLOWLINE THROUGHPUT CAPACITY LEASE AGREEMENT | Capacity Agreement by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| Pipeline Transport | 12/1/2018 | EWING BANK FLOWLINE THROUGHPUT CAPACITY LEASE AGREEMENT | Capacity Agreement by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| Pipeline Transport | 2/2/1996 | GATHERING AGREEMENT | Gathering Agreement by and between Fieldwood and CMA Pipeline and CMA Pipeline |
| Pipeline Transport | 9/30/2015 | AMENDMENT TO GATHERING AGREEMENT | Gathering Agreement by and between Fieldwood and CMPA PIPELINE PARTNERSHIP, LLC and CMPA PIPELINE PARTNERSHIP, LLC |
| PHA SS182/SS170 | 5/1/2013 | PRODUCTION HANDLING AGMT | PHA by and between Fieldwood and BOIS D'ARC EXPLORATION, LLC and BOIS D'ARC EXPLORATION, LLC |
| PHA EI316A/EI 315C | 7/14/2008 | PRODUCTION HANDLING AGMT | PHA EI 3316A/EI 315C by and between Fieldwood and TANA EXPLORATION COMPANY LLC and TANA EXPLORATION COMPANY LLC |
| PHA for EB165A/EB430 | 9/30/2004 | PRODUCTION HANDLING AGMT | PHA for EB165A/EB430 by and between Fieldwood and WALTER OIL & GAS CORPORATION and WALTER OIL & GAS CORPORATION |
| PHA for SP108/ST72 | 12/1/2014 | PRODUCTION HANDLING AGMT | PHA for SP108/ST72 by and between Fieldwood and WALTER OIL & GAS CORPORATION and WALTER OIL & GAS CORPORATION |
| PHA GI 116A/ST 229 | 6/1/2005 | PRODUCTION HANDLING AGMT | PHA for GI 116A/ST229 by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| PHA SS178A/SS177#7A-4ST | 8/25/1998 | PRODUCTION HANDLING AGMT | PHA SS178A/SS177#7A-4ST by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| PHA MP 310A/MP 315 | 11/30/2015 | PRODUCTION HANDLING AGMT | PHA MP 310A/MP315 by and between Fieldwood and TALOS ENERGY OFFSHORE, LLC and TALOS ENERGY OFFSHORE, LLC |
| PHA MP 310A/MP 315 | 11/30/2015 | PRODUCTION HANDLING AGMT | PHA MP 310A/MP315 by and between Fieldwood and HE&D OFFSHORE LP and HE&D OFFSHORE LP |
| Service Agreements | 4/1/2009 | SERVICE CONTRACT | Service Agreement by and between Fieldwood and Allocation Specialists, LLC and Allocation Specialists, LLC |
| LEASE OF PLATFORM SPACE | 2/1/1990 | Access and Right of Use Agreement3/1/2020 - 2/28/2021 | A-LOPS-WD075 by and between Fieldwood and American Panther, LLC and American Panther, LLC |
| LEASE OF PLATFORM SPACE | 10/10/1984 | Platform Space Rental Agreement SMI 268A Platform10/01/2020 - 11/30/2021 | A-LOPS- SM268A by and between Fieldwood and American Panther, LLC and American Panther, LLC |
| LEASE OF PLATFORM SPACE | 11/29/2009 | Amendment to Lease of Platform Space Agreement Main Pass 289 C8/1/2020 - 7/31/2021(Horn Mountain) | A-LOPS-MP289C(Horn Mountain) by and between Fieldwood and Anadarko US Offshore LLC and Anadarko US Offshore LLC |
| LEASE OF PLATFORM SPACE | 7/12/2016 | Marathon Pipeline Facilities Exxon's vermilion Block 265 Platform A | A-LOPS-AccessSvc by and between Fieldwood and East Cameron Gathering LLC and East Cameron Gathering LLC |

| | | | |
|---|---|---|---|
| LEASE OF PLATFORM SPACE | 4/15/1988 | Amendment of SMI Gathering System (Vermilion Block 265 Platform) Access and Services Agreement1/1/2020- 12/31/2020 | Annual LOPS-VR 265 P/F-A-DRL by and between Fieldwood and Crimson Gulf Accounts Payable and Crimson Gulf Accounts Payable |
| LEASE OF PLATFORM SPACE | 8/1/1996 | Lease of Platform Space5/1/2020 - 4/30/2021 | ALOPS-ODYSSEY by and between Fieldwood and Shell Pipeline Company LP and Shell Pipeline Company LP |
| LEASE OF PLATFORM SPACE | 11/1/2001 | Lease of Platform Space11/1/2020 - 10/30/2021 | A-LOPS-SM128SA2 by and between Fieldwood and Shell Pipeline Company LP and Shell Pipeline Company LP |
| LEASE OF PLATFORM SPACE | 4/27/1977 | FIRST AMENDMENT AND RATIAFICATION TO TIE-IN SERVICE AGREEMENT04/01/2020-3/31/2021 | A-LOPS-MP288-MP289FWE0240 by and between Fieldwood and Stone Energy Corpration and Stone Energy Corpration |
| LEASE OF PLATFORM SPACE | 11/15/1996 | Lease of Platform space Agreement | ALOPS-RAM POWELL by and between Fieldwood and Stone Energy Corpration and Stone Energy Corpration |
| LEASE OF PLATFORM SPACE | 10/25/1985 | PLATFORM SPACE AGREEMENT10/25/2020 - 9/24/2021 | A-LOPS-SP89B by and between Fieldwood and Texas Eastern Transmission and Texas Eastern Transmission |
| LEASE OF PLATFORM SPACE | 3/1/1980 | | 4/1/2020 - 3/31/2021       A-LOPS-HI179A by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation |
| LEASE OF PLATFORM SPACE | 9/5/1981 | Receipt and Measurement Facility LOPS EI Block 158  Platform4/1/2020 - 3/31/2021 | A-LOPS-EI158B by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation |
| LEASE OF PLATFORM SPACE | 9/15/1981 | Receipt and Measurement Facility LOPS EI Block 135 "JA" Platform4/1/2020 - 3/31/2021 | A-LOPS-EI136JA by and between Fieldwood and Transcontinental Gas Pipeline Corporation and Transcontinental Gas Pipeline Corporation |
| LEASE OF PLATFORM SPACE | 7/1/1997 | Lease of Offshore Platform Space Gas Measurement Facility, Pipeline Rise, Liquids Scrubber Facility | A-LOPS-SM128 by and between Fieldwood and Trunkline Gas Company LLC and Trunkline Gas Company LLC |
| LEASE OF PLATFORM SPACE | 3/1/1998 | | 3/01/2020 - 2/28/2021     A-LOPS-SS354A by and between Fieldwood and Williams Field Services and Williams Field Services |
| LEASE OF PLATFORM SPACE | 11/29/2001 | | 03/01/2020 - 02/28/2021     A-LOPS- MP289C by and between Fieldwood and W & T OFFSHORE INC and W & T OFFSHORE INC |
| LEASE OF PLATFORM SPACE | 11/29/2001 | LEASE OF PLATFORM SPACE | ANA103-LOPS (Horn Mountain Monthly) by and between Fieldwood and Anadarko US Offshore LLC and Anadarko US Offshore LLC |
| LEASE OF PLATFORM SPACE | 12/21/2002 | PLATFORM OPERATIONS AGMT | ARE101-LOPS - PL25 by and between Fieldwood and ARENA OFFSHORE LP and ARENA OFFSHORE LP |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 1/1/2018 | SERVICES CONTRACT | EAS101 VR265ADRL by and between Fieldwood and EAST CAMERON GATHERING LLC and EAST CAMERON GATHERING LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 4/28/2009 | LEASE OF PLATFORM SPACE | ROT101-LOPS EI 189P/F B by and between Fieldwood and Rotorcraft Leasing Company, LLC and Rotocraft Leasing Company, LLC |
| LEASE OF PLATFORM SPACE | 4/28/2009 | LEASE OF PLATFORM SPACE | ROT101-LOPS MATAGORDA ISLAND 622C by and between Fieldwood and Rotocraft Leasing Company, LLC and Rotocraft Leasing Company, LLC |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-1 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-2 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-3 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-4 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-5 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-6 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-7 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-8 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-9 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-13 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-17 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-18 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-14 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-16 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-20 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-24 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-25 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-26 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 4/15/1968 | LEASE OF PLATFORM SPACE | KIN129-LOPS by and between Fieldwood and KINETICA DEEPWATER EXPRESS, LLC and KINETICA DEEPWATER EXPRESS, LLC |
| LEASE OF PLATFORM SPACE | 6/14/2000 | FACILITIES OPERATING AND MAINTENANCE AGMT | WIL174 OP&MN FEE-VK251A  by and between Fieldwood and WILLIAMS FIELD SERVICES and WILLIAMS FIELD SERVICES |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC                    and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-3 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC                    and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-3 | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA PL009-PL010B by and between Fieldwood and MCMORAN OIL & GAS LLC                and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (JIB)-3 | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA PL009-PL010B by and between Fieldwood and RIDGEWOOD ENERGY CORPORATION and RIDGEWOOD ENERGY CORPORATION |
| PRODUCTION HANDLING AGMT (JIB)-3 | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA PL009-PL010B by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC               and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC               and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-5 | 6/9/2008 | JIB PHA EC 2C/EC2#1 | PHA EC002-EC002C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-5 | 6/9/2008 | JIB PHA EC 2C/EC2#1 | PHA EC002-EC002C by anon Fieldwood and C/O FAIRFIELD-MAXWELL LTD               and C/O FAIRFIELD-MAXWELL LTD |
| PRODUCTION HANDLING AGMT (JIB)-5 | 6/9/2008 | JIB PHA EC 2C/EC2#1 | PHA EC002-EC002C by anon Fieldwood and HILCORP ENERGY 1 LP                and HILCORP ENERGY 1 LP |
| PRODUCTION HANDLING AGMT (JIB)-6 | 5/1/2012 | JIB PHA EI 354#A6/EI337A10 | PHA EI354-EI337A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-6 | 5/1/2012 | JIB PHA EI 354#A6/EI337A10 | PHA EI354-EI337A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-6 | 5/1/2012 | JIB PHA EI 354#A6/EI337A10 | PHA EI354-EI337A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-7 | 1/1/2001 | PHA VK694-MP0259A-FWE0313 | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (JIB)-7 | 1/1/2001 | PHA VK694-MP0259A-FWE0313 | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and PIQUANT INC and PIQUANT INC |
| PRODUCTION HANDLING AGMT (JIB)-7 | 1/1/2001 | PRODUCTION HANDLING AGREEMENT | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-7 | 1/1/2001 | PRODUCTION HANDLING AGREEMENT | PHA VK694-MP0259A-FWE0313 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (JIB)-8 | 10/1/2002 | PRODUCTION HANDLING AGREEMENT | PHA ST205-ST206A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-8 | 10/1/2002 | PRODUCTION HANDLING AGREEMENT | PHA ST205-ST206A by and between Fieldwood and FWE and FWE |

| | | | |
|---|---|---|---|
| PRODUCTION HANDLING AGMT (J8)-8 | 10/1/2002 | PRODUCTION HANDLING AGREEMENT | PHA ST205-ST206A by and between Fieldwood and MARATHON OIL COMPANY and MARATHON OIL COMPANY |
| PRODUCTION HANDLING AGMT (J8)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MPD259A-FWE0317 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (J8)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MPD259A-FWE0317 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (J8)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MPD259A-FWE0317 by and between Fieldwood and PIQUANT INC and PIQUANT INC |
| PRODUCTION HANDLING AGMT (J8)-9 | 9/1/2002 | FLOWLINE USE AGREEMENT | PHA VK694-MPD259A-FWE0317 by and between Fieldwood and MCMORAN OIL & GAS LLC and MCMORAN OIL & GAS LLC |
| PRODUCTION HANDLING AGMT (J8)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | |
| PRODUCTION HANDLING AGMT (J8)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP312-MP311A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (J8)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP312-MP311A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (J8)-10 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP312-MP311A by and between Fieldwood and EPL OIL & GAS, LLC and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (J8)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (J8)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (J8)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and TANA EXPLORATION COMPANY LLC and TANA EXPLORATION COMPANY LLC |
| PRODUCTION HANDLING AGMT (J8)-12 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP311B-MP302B19 by and between Fieldwood and APACHE SHELF EXPLORATION LLC and APACHE SHELF EXPLORATION LLC |
| PRODUCTION HANDLING AGMT (J8)-12 | 4/28/2014 | PRODUCTION HANDLING AGREEMENT | PHA MP311B-MP302B19 by and between Fieldwood and EPL OIL & GAS, LLC and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (J8)-13 | 4/1/2007 | PRODUCTION HANDLING AGREEMENT | RID108101-MP289C-MP275 by and between Fieldwood and RIDGEWOOD ENERGY CORPORATION and RIDGEWOOD ENERGY CORPORATION |
| PRODUCTION HANDLING AGMT (J8)-13 | 4/1/2007 | PRODUCTION HANDLING AGREEMENT | RID108101-MP289C-MP275 by and between Fieldwood and Talos Energy |
| PRODUCTION HANDLING AGMT (J8) | 10/23/2018 | AGREEMENT FOR THE GATHERING AND PROCESSING OF MO 826 ("SLEEPING BEAR") | MO826-VK251 by and between Fieldwood and W& T Offshore and W& T Offshore |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | ST 320 A-55T1 by and between Fieldwood and W&T Offshore, Inc. and W&T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/30/1999 | PRODUCTION HANDLING AGREEMENT | MC 108/MC 109 by and between Fieldwood and Talos Energy LLC and Talos Energy LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | ST 311 A1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 7/18/2002 | PRODUCTION HANDLING AGREEMENT | HI A-582 by and between Fieldwood and Cox Operating, LLC and Cox Operating, LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 10/21/2018 | PRODUCTION HANDLING AGREEMENT | ST 320 A02 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 5/20/2019 | PRODUCTION HANDLING AGREEMENT | ST 320 A03 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/13/1996 | PRODUCTION HANDLING AGREEMENT | SS 300 B/SS301 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/30/1999 | PLATFORM ACCESS, OPERATING SERVICES AND PRODUCTION HANDLING AGREEMENT(ORION) | MC 109/MC110 by and between Fieldwood and Talos Energy and Talos Energy |
| PRODUCTION HANDLING AGMT (Non-Op) | 5/5/2009 | PRODUCTION HANDLING AGREEMENT | SS 189 C-1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| PRODUCTION HANDLING AGMT (Non-Op) | 3/1/2007 | PRODUCTION HANDLING AGREEMENT | SM 107 by and between Fieldwood and Talos Energy and Talos Energy |
| PRODUCTION HANDLING AGMT (Non-Op) | 7/1/2014 | PRODUCTION HANDLING AND FACILITY USE AGREEMENT | VR 271 by and between Fieldwood and Castex Offshore Inc and Castex Offshore Inc |
| PRODUCTION HANDLING AGMT (Non-Op) | 8/1/1997 | PRODUCTION HANDLING AGREEMENT | ST 176/ST 148 by and between Fieldwood and Arena Offshore LLC and Arena Offshore LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 8/1/1997 | PRODUCTION HANDLING AGREEMENT | ST 176/ST 148 by and between Fieldwood and Arena Offshore LLC and Arena Offshore LLC |
| CONNECTION AGREEMENT EI 342C | 9/17/1986 | PIPELINE CONNECTION & OPERATION AGREEMENT EUGENE ISLAND PIPELINE SYSTEM | Interconnection Agreement EI 346 by and between Fieldwood and GEL Offshore Pipeline, LLC and GEL Offshore Pipeline, LLC |
| CONNECTION AGREEMENT EI 342C | 1/1/2010 | RATIFICATION OF & SUPPLEMENT TO PIPELINE CONNECTION AND OPERATION AGREEMENT | Interconnect Agreement EI 346 by and between Fieldwood and GEL Offshore Pipeline, LLC and GEL Offshore Pipeline, LLC |
| CONNECTION AGREEMENT EI 342C | 8/7/2018 | AMENDMENT NO.1 TO PIPELINE CONNECTION AND OPERATION AGREEMENT | Interconnect Agreement EI 346 by and between Fieldwood and GEL Offshore Pipeline, LLC and GEL Offshore Pipeline, LLC |
| CONNECTION AGREEMENT EI 342 | 10/26/2011 | FACILITIES LETTER AGREEMENT | Agreement for Gas Connection at EI 346 by and between Fieldwood and ANR Pipeline Company and ANR Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | ISCT Contract | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | ISCT Contract | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 9/13/2011 | IT Transport Contract | Chandeleur IT Transportation - Fieldwood interest in MP 59 was sold to Cantium by and between Fieldwood Energy LLC and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream and Chandeleur Pipeline, LLC, now owned by Third Coast Midstream |
| Marketing Gas - Transport | 4/1/2015 | FT -2 Transport | Discovery Gas - FT2 agreement;  by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission |
| Marketing Gas - Transport | 2/1/2019 | Pool Agreement | Pool Agreement by and between Fieldwood Energy LLC and Gulf South Pipeline Company, LP and Gulf South Pipeline Company, LP |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2003 | IT Transport Contract- Reserve Dedication and Discount Commodity Rate Agreement | Stingray Reserve Dedication VR Block 326 S.10 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 10/1/2019 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy LLC and Venice Gathering and Venice Gathering |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and High Point Gas Transmission, LLC and High Point Gas Transmission, LLC |
| Marketing Gas - Transport | 4/1/2000 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedication , Disount Rate of $.06 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 12/1/2015 | Firm - Gathering | Firm - Gathering by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 12/1/1992 | Firm Gathering & Dedication | Manta Ray firm Gatheing , Disount Rate of $.032 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 4/1/2010 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedicaiton , Disount Rate of $.12 by and between Manta Ray Offshore, LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 4/1/2010 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedicaiton , Disount Rate of $.12 by and between Fieldwood Energy Offshore, LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 4/1/2010 | Firm Gathering & Dedication | Manta Ray firm Gatheing  and Dedicaiton , Disount Rate of $.12 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company and Manta Ray Offshore Gathering Company |
| Marketing Gas - Transport | 10/30/2017 | FT -2 Transport | EW 910 / ST 320 by and between Fieldwood Energy, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company |
| Marketing Gas - Transport | 4/1/2010 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy Offshore, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT PR Transport Contract | Searobin West PTR Transprt,  max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport,  IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT RetrogradecontractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT RetrogradecontractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT RetrogradecontractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT RetrogradecontractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT RetrogradecontractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT RetrogradecontractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT RetrogradecontractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011 | IT-PTR Transport | Searobin Pipeline - sandridge /Dynamic IT transport by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 10/1/2011 | IT-Retrograde Transport | SearobinWest  Pipeline - sandridge./Dynamic IT Retrograde by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 4/1/2015 | FT-2 Discount Letter Agreement | Discovery Gas FT2 Discount letter by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission |
| Marketing Gas - Gathering and Dedication | 4/1/2015 | Gas Dedication and Gathering Agreement | Discovery Gas Gathering and Gas Dedication by and between Fieldwood Energy LLC and Discovery Gas Transmission and Discovery Gas Transmission |
| Marketing Gas - Transport | 1/1/2012 | IT Transport Contract - Reserve Dedication and Discount Rate | Stinray - HI 350, WC 144 WC269 S.10 discount. Reserve Dedicaton agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 1/1/2012 | IT Transport Contract - Reserve Dedication and Discount Rate | Stinray - HI 350, WC 144 WC269 S.10 discount. Reserve Dedicaton agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 1/1/2012 | IT Transport Contract - Reserve Dedication and Discount Rate | Stinray - HI 350, WC 144 WC269 S.10 discount. Reserve Dedicaton agreement 310074 by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 1/1/2017 | IT-Transport- Discount Letter | Searobin East - Transport,  IT Discount Life of reserves at ST 292 (IW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 1/1/2017 | IT-Transport- Discount Letter | Searobin East - Transport,  IT Discount Life of reserves at ST 292 (IW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 1/1/2017 | IT-PTR Transport | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (IW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 1/1/2017 | IT-PTR Transport | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (IW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport- Discount Letter | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (IW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport- Discount Letter | Searobin East - PTR Transport,  IT Discount Life of reserves at ST 292 (IW production- GI 116, ST 295) by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas-Transport | 12/17/1997 | FT - Transport | Venice Gatheing  Firm Transport with Discount S.05, ST-14B by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. |
| Marketing Gas-Transport | 8/13/1997 | Precedent Agreement for Transportation of Gas and Non-Jurisdictional Services | Venice Gatheing  Firm Transport with Discount S.05, ST-14B by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. |
| Marketing Gas-Transport | 12/15/1997 | Reserve Commitment Agreement | Venice Gatheing  Firm Transport with Discount S.05, ST-14B by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. |
| Marketing Gas-Gathering | 4/1/2003 | IT Transport | GC 45, WD 41 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. |
| Marketing Gas-Gathering | 11/1/2010 | IT Transport | Venice Gathiering, Max Rate,WD 41 Effective date 11/1/2010 by and between Fieldwood Energy LLC and Venice Gatheering System, L.L.C. and Venice Gatheering System, L.L.C. |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Marketing Gas-Gathering | 9/10/1990 | Gas Gathering Agreement | Gathering Agreement - Discount for BA 491 by and between Fieldwood Energy LLC and WFS and WFS |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System. Facility separates condesate from Sea Robin PI by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | Ites the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and  and |

| Operating and Management Agreement | les the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Fieldwood Energy LLC and  and between Fieldwood Energy LLC and |
|---|---|---|---|
| Operating and Management Agreement | les the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Fieldwood Energy LLC and  and between Fieldwood Energy LLC and |
| Operating and Management Agreement | les the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Fieldwood Energy LLC and  and between Fieldwood Energy LLC and |
| Operating and Management Agreement | les the Construction and Operation | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Fieldwood Energy LLC and  and between Fieldwood Energy LLC and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC  and and |
| Ownership and Operating Agreement | 10/1/1982 | Construction, Ownership and Operating Agreement | Governs the Ownership and Operations of the Facility. The Facility is co-owned by two groups, Owners and Producers.  Facility assets are owned in three different classes: either solely owned by Owners, co-owned by Owners and Producers or soley owned by Pr by and between Fieldwood Energy LLC and Kinetica Partners LLC and Kinetica Partners LLC |
| Ownership Agreement | 12/2/1985 | Ownership Agreement for the Producers' Facility Sabine Pass, as amended | Governs the Ownership and Operations of the Producers' Facility. The Producers' Facility consists of assets owned by Producers, as well as those assets co-owned by the Producers and Owners. Fieldwood, as the designated Producers' Representative, reprents th by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Ownership and Operating Agreement | 3/6/1974 | Construction and Operating Agreement for Onshore Separation Facility Cameron Parish, Louisiana as amended | Provides for the construction and operation of the onshore separation facility which is connected to the facilites of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Stinray by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |

| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
|---|---|---|---|
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Contribution Agreement (LLC formation) | 11/2/2010 | Contribution Agreement | SP 49 Pipeline LLC (the "Entity"), an limited liability company, was formed on November 2, 2010 by Apache GOM Pipeline, Inc, (succeeded by FW GOM Pipeline, Inc), Energy XXI GOM LLC, and Stone Energy Offshore, LLC (succeeded by Talos Resources LLC).  The e by and between Fieldwood Energy LLC and Talos Resources LLC and Energy XXI GOM, LLC and Talos Resources LLC and Energy XXI GOM, LLC |
| Operating Agreement | 11/2/2010 | Operating Agreement South Pass Block 49 & Southwest Pass 24 Pipeline System | The Operator is responsible for the entity's operations, accounting, and reporting detailed in the Operating Agreement, including pipeline operation, repair, and maintenance, as well as administrative functios such as paying expenses and maintaing records by and between Fieldwood Energy LLC and  and |
| Operating Agreement | 11/2/2010 | Operating Agreement South Pass Block 49 & Southwest Pass 24 Pipeline System | The Operator is responsible for the entity's operations, accounting, and reporting detailed in the Operating Agreement, including pipeline operation, repair, and maintenance, as well as administrative functios such as paying expenses and maintaing records by and between Fieldwood Energy LLC and  and |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Operating Agreement | 7/1/1970 | Agreement for the Construction and Operation of the TOCA Gas Processing Plant  St. Bernard Parish, Louisiana | The Operator shall receive the gas to be processed at the Plant Delivery Point for the account of each owner and, after processing, deliver the Residue Gas to Highpoint, all in accordance with agreements by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Construction and Operating Agreement | 10/22/1976 | Agreement for the Construction and Operation of the Blue Water Gas Plant  Acadia Parish, Louisiana | Processing of Owners' gas all in accordance with agreements by and between Fieldwood Energy LLC and EnLink Midstream Operating, LP and EnLink Midstream Operating, LP |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned by High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline.  Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline.  Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |

| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline. Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement | 10/1/1984 | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline. Originating from the EI 361 A Platform to the Bonito Pipeline System by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline. All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshore LLC and and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshore LLC and and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshore LLC and and |
| Proposed Ownership Agreement | 7/11/2009 | Letter of Intent Amberjack Pipeline Repair - Mississippi Canyon Block 109 Area and Chevron Pipe Line Company Valve Project - South Pass 50 | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and and |
| Proposed Ownership Agreement | 7/11/2009 | Letter of Intent Amberjack Pipeline Repair - Mississippi Canyon Block 109 Area and Chevron Pipe Line Company Valve Project - South Pass 50 | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and and |
| Proposed Ownership Agreement | 7/11/2009 | Letter of Intent Amberjack Pipeline Repair - Mississippi Canyon Block 109 Area and Chevron Pipe Line Company Valve Project - South Pass 50 | Proposes that the producers utilizing the Amberjack Pipeline, collectively, "the Producers", become owners in the Amberjack Pipeline. by and between Fieldwood Energy LLC and and |
| Oil Purchase and Sale Agreement/Transport | 12/23/1995 | Oil Purchase and Sale Agreement Between Anadarko Petroleum Corporation and Texaco Trading and Transportation INC     (now Poseidon Oil Pipeline Company LLC) | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 6/1/2003 | Oil Gathering Agreement Between Westport Resources Corporation Noble Energy Inc M | Crude Oil Transport. by and between Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC |
| Oil Purchase and Sale Agreement/Transport | 7/15/2003 | Oil Purchase and Sale Agreement Between Westport Resources Corporation Mariner Energy Inc Noble Energy Inc and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Purchase and Sale Agreement/Transport | 4/10/2012 | Oil Purchase and Sale Agreement Between Apache Shelf Inc and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 3/6/2020 | Oil Gathering and Reserve Dedication Agreement Between Rosefield Pipeline Company, LLC and Fieldwood Energy LLC as Producer | Crude Oil Transport. by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Gathering Agreement | 3/6/2020 | Oil Gathering and Reserve Dedication Agreement Between Rosefield Pipeline Company, LLC and Fieldwood Energy LLC as Producer | Crude Oil Transport. by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |

| | | | |
|---|---|---|---|
| Oil Gathering Agreement | 3/6/2020 | Oil Gathering and Reserve Dedication Agreement Between Rosefield Pipeline Company, LLC and Fieldwood Energy LLC as Producer | Crude Oil Transport. by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Pipeline Connection Agreeet | 7/23/2020 | ST 53/67 Connection Agreement ST 52 "A" Topsides Work-Connecting Fieldwood Energy LLC Pipeline Segment No 5890 to Rosefield Pipeline System 10" Pipeline | Connection Agreement by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Pipeline Connection Agreeet | 7/23/2020 | ST 53/67 Connection Agreement ST 52 "A" Topsides Work-Connecting Fieldwood Energy LLC Pipeline Segment No 5890 to Rosefield Pipeline System 10" Pipeline | Connection Agreement by and between Fieldwood Energy LLC and Rosefield Pipeline Company LLC and Rosefield Pipeline Company LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Liquids Transportation Agreement | 4/1/2015 | Liquids Transportation Agreement (ST 311-"Megalodon") By and Among Discovery Gas Transmission LLC and Fieldwood Energy LLC | Liquids Transportation Agreement by and between Fieldwood Energy LLC and Discovery Gas Transmission LLC and Discovery Gas Transmission LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |

| | | | |
|---|---|---|---|
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 4/8/2010 | Amendment Liquid HydrocarbonTransportation Agreement (NHI/Johnson Bayou) Cont. No. 1022772, Doc. No. 97 0515 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC( formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipe Line Company LLC( formerly  Transcontinental Gas Pipe Line Corporation) |
| Liquid Transportation | 8/6/1997 | Liquid Hydrocarbon Transportation Agreement | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 7/1/2008 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement Central Texas Gathering System 28 0384 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |

| | | | |
|---|---|---|---|
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | eement Between WFS-Liquids Company ar | WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidslc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Oil Liquids Transportation Agreement | 9/1/1997 | Agreement Cocodrie/Pecan Island Plants | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation Agreement for Bluewater System | 10/22/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 4/1/2004 | Liquids Transportation Agreement #51051 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51051 dated 4/1/2004 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | iginal Contract; Amendment Effecti | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | /1992, Amendment Effective 1/1/2 | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Amendment to Liquids Transport Agreement | ent date 8/1/2014 contract date 1 | Amendment to Associated Liquids Transportation Agreement Patterson Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Amendment to Liquids Transport Agreement | ent date 8/1/2014 contract date 1 | Amendment to Associated Liquids Transportation Agreement Patterson Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Amendment to Liquids Transport Agreement | ent date 8/1/2014 contract date 1 | Amendment to Associated Liquids Transportation Agreement Patterson Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquid Handling Agreement | 5/1/2008 | Liquid Handling Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement | 3/1/2011 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement to transfer from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/1/2012 amended 12/1/2013 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 3/1/2011 | Liquids Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 3/1/2011 | Liquids Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 3/1/2011 | Liquids Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |

| | | | |
|---|---|---|---|
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement Amendment | 12/1/2012 Amended effective 12/1/2012 | Amendment | Oil Liquids Transportation transferring agreement from apache Corporation to Fieldwood Energy LLC by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement Amendment | 12/1/2012 Amended effective 12/1/2012 | Amendment | Oil Liquids Transportation transferring agreement from apache Corporation to Fieldwood Energy LLC by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Assignment, Assumption and Consent Agreement | 7/1/2013 | Assignment, Assumption and Consent Agreement | Consent to assign liquids separation 7 stabilization agreement as amended dated 1/17/2001 between Manta Ray and Apache (Contract Nos. 101939, 310225 and 106968) by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Assignment, Assumption and Consent Agreement | 7/1/2013 | Assignment, Assumption and Consent Agreement | Consent to assign liquids separation 7 stabilization agreement as amended dated 1/17/2001 between Manta Ray and Apache (Contract Nos. 101939, 310225 and 106968) by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separtion and Stabilization Agreement | 11/1/2010 | Liquids Separtion and Stabilization Agreement | LSA by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2008 | First Amendment to Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2008 | First Amendment to Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Second Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 11/1/2000 | Second Amendment to Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 4/27/2004 | Manta Ray Liquids Separation and Stabilization Agreement | Oil Liquids Separation and Stabilization Agreement by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2014 | Second Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Block on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 3/1/2014 | Second Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Block on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids and Stabilization Agreement | 6/1/2014 | Third Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 4/1/2018 | Liquids Separtion Agreement | Contract for ST 320 by and between Fieldwood Energy LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Transporation Agreement | 4/1/2018 | Nautilus Pipeline Company, L.L.C. Liquids Transportation Agreement | LTA for ST 320 by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 3/1/2014 | First Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 1/1/2015 | Second Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 1/1/2015 | Second Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 11/1/2010 | First Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 11/1/2010 | First Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transporation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transporation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transporation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil LiquidsTransporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC | Amendment No. 2 by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

| | | | |
|---|---|---|---|
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/5/2006 | Amendment No. 1 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/5/2006 | Amendment No. 1 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2003 | Liquid Hydrocarbons Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 7/1/2010 | Amendment No. 2 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 7/1/2010 | Amendment No. 2 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 7/1/2010 | Amendment No. 2 to Liquid Transportation Agreement No. 1389 between Sea Robin Pipeline company, LLC and Apache Corporation dated 5/1/2003 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

| | | | |
|---|---|---|---|
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline Field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Separation Agreement | 10/1/2004 | Liquid Hydrocarbons Separation Agreement | LSA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Separation Agreement | 10/1/2004 | Liquid Hydrocarbons Separation Agreement | LSA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/19/2012 | Amendment No. 4 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/19/2012 | Amendment No. 4 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/19/2012 | Amendment No. 4 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 6/1/2011 | Amendment No. 3 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 6/1/2011 | Amendment No. 3 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 6/1/2011 | Amendment No. 3 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/1/2011 | Amendment No. 2 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/1/2011 | Amendment No. 2 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 1/1/2011 | Amendment No. 2 to Liquid Hydrocarbon Separation Agreement for Interruptible Service | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 5/1/2009 | Amendment No. 1 to Liquid Hydrocarbon Separatiaon Agreement dated 10/1/2004 between Trunkline Field Services, LLC and Apache Corporation | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 5/1/2009 | Amendment No. 1 to Liquid Hydrocarbon Separatiaon Agreement dated 10/1/2004 between Trunkline Field Services, LLC and Apache Corporation | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon Separation Agreement | 5/1/2009 | Amendment No. 1 to Liquid Hydrocarbon Separatiaon Agreement dated 10/1/2004 between Trunkline Field Services, LLC and Apache Corporation | Liquid Hydrocarbon Separation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

Exhibit I-G

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qt | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 54401 | | WH/B42/S1 | LINER: PWR CYL | | EA | | 1 | 3,975.83 | 100.0% | 3,975.83 |
| North Warehouse | Fieldwood | 54402 | | WH/B42/FLR | PSTN/ROD ASSY: 10-1/2", GMWA, | | EA | | 1 | 15,303.69 | 100.0% | 15,303.69 |
| North Warehouse | Fieldwood | 54403 | | WH/B42/FLR | PSTN/ROD ASSY: 28", GMWA, ROD | | EA | | 1 | 21,498.05 | 100.0% | 21,498.05 |
| North Warehouse | Fieldwood | 54406 | | WH/B42/S1 | PSTN: 18", PISTON, GMVC 1ST STGE | | EA | | 1 | 19,676.18 | 100.0% | 19,676.18 |
| North Warehouse | Fieldwood | 54407 | | B3/B3/S2 | LINER: 2ND STGE CYL | | EA | | 1 | 2,542.05 | 100.0% | 2,542.05 |
| North Warehouse | Fieldwood | 54408 | | WH/B41/S2 | LINER: GMVC 1ST STGE | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 54409 | | WH/B37/FL | HD: 2ND STGE CRNKEND | | EA | | 1 | 4,372.48 | 100.0% | 4,372.48 |
| North Warehouse | Fieldwood | 54411 | | WH/SE Wall/FLR | CRNKSHFT: GMVA/GMVC-12 | | EA | | 1 | 82,650.64 | 100.0% | 82,650.64 |
| North Warehouse | Fieldwood | 54412 | | WH/SE Wall/FLR | CRNKSHFT: GMVA/GMVC-12 | | EA | | 2 | 81,082.47 | 100.0% | 81,082.47 |
| North Warehouse | Fieldwood | 54419 | | B3/B3/S2 | PMP: GMVA LUBE OIL | | EA | | 1 | 5,829.98 | 100.0% | 5,829.98 |
| North Warehouse | Fieldwood | 54420 | | WH/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 6,095.65 | 100.0% | 6,095.65 |
| North Warehouse | Fieldwood | 54421 | | WH/B41/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 6,095.65 | 100.0% | 6,095.65 |
| North Warehouse | Fieldwood | 54422 | | WH/FL | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 7,703.92 | 100.0% | 7,703.92 |
| North Warehouse | Fieldwood | 54445 | | B3/B3/S2 | GEAR: GMVC BLOWER DRV | | EA | | 1 | 3,352.24 | 100.0% | 3,352.24 |
| North Warehouse | Fieldwood | 54447 | | WH/B42/FLR | PSTN/ROD ASSY: 18", 1ST STGE | | EA | | 1 | 14,956.39 | 100.0% | 14,956.39 |
| North Warehouse | Fieldwood | 54448 | | WH/B42/S1 | LINER: 18", 1ST STGE COMPRSSR | | EA | | 1 | 1,967.62 | 100.0% | 1,967.62 |
| North Warehouse | Fieldwood | 54449 | | WH/B42/S1 | LINER: 15", 2ND STGE COMPRSSR | | EA | | 1 | 1,785.43 | 100.0% | 1,785.43 |
| North Warehouse | Fieldwood | 54450 | | WH/B41/S2 | LINER: 9-3/4", 3RD STGE COMPRSSR | | EA | | 1 | 1,909.90 | 100.0% | 1,909.90 |
| North Warehouse | Fieldwood | 54452 | | B3/B1/S1 | GEAR: GMV3-FB, PARTCO BLOWER W/HUB | | EA | | 1 | 16,032.44 | 100.0% | 16,032.44 |
| North Warehouse | Fieldwood | 54456 | | WH/B42/FLR | PSTN/ROD ASSY: 9-3/4", 3RD STGE | | EA | | 1 | 2,399.73 | 100.0% | 2,399.73 |
| North Warehouse | Fieldwood | 54457 | | WH/B43/S1 | PSTN/ROD ASSY: 9-5/8", GMWA, | | EA | | 1 | 16,032.44 | 100.0% | 16,032.44 |
| North Warehouse | Fieldwood | 54458 | | WH/B43/FLR | PSTN/ROD ASSY: 17-1/4", GMVA-8 1ST S TGE | | EA | | 1 | 18,636.17 | 100.0% | 18,636.17 |
| North Warehouse | Fieldwood | 54460 | | B3/B2/FLR | ROD: ALL GMV PWR PISTON | | EA | | 2 | 1,821.87 | 100.0% | 1,821.87 |
| North Warehouse | Fieldwood | 54468 | | B3/B2/S3 | PMP: GMVA H2O W/GSKTS | | EA | | 1 | 13,481.83 | 100.0% | 13,481.83 |
| North Warehouse | Fieldwood | 54469 | | WH/B41/FLR | CRSSHD ASSY: GMVA/VC/VH | | EA | | 1 | 13,051.81 | 100.0% | 13,051.81 |
| North Warehouse | Fieldwood | 54480 | | WH/B43/FLR | PSTN/ROD ASSY: 16-1/4", 2ND STGE, | | EA | | 1 | 18,408.45 | 100.0% | 18,408.45 |
| North Warehouse | Fieldwood | 54481 | | Bay3/N Wall/FLR | PSTN/ROD ASSY: GMWE PWR,FITS GMWE-12 | | EA | | 1 | 3,223.36 | 100.0% | 3,223.36 |
| North Warehouse | Fieldwood | 54486 | | WH/B43/FLR | PSTN/ROD ASSY: GMWA | | EA | | 1 | 21,945.24 | 100.0% | 21,945.24 |
| North Warehouse | Fieldwood | 56001 | | WH/B41/S1 | BEARING: TLA COMPRSSR RD, BEARING | | EA | | 5 | 725.83 | 100.0% | 725.83 |
| North Warehouse | Fieldwood | 56002 | | WH/B41/S1 | BEARING: TLA MAIN | | EA | | 7 | 635.76 | 100.0% | 635.76 |
| North Warehouse | Fieldwood | 56633 | | B3/B5B53 | KT: RRR CYL, TLA PWR | | EA | | 5 | 725.10 | 100.0% | 725.10 |
| North Warehouse | Fieldwood | 56644 | | B3/B4/S2 | SPRCKT: TLA CRNKSHFT | | EA | | 1 | 6,085.04 | 100.0% | 6,085.04 |
| North Warehouse | Fieldwood | 56645 | | B3/B4/S3 | SPRCKT: TLA | | EA | | 1 | 3,377.74 | 100.0% | 3,377.74 |
| North Warehouse | Fieldwood | 56646 | | B3/B3/S2 | SPRCKT: HYD PUMP & DRV | | EA | | 1 | 2,135.23 | 100.0% | 2,135.23 |
| North Warehouse | Fieldwood | 56648 | | WH/B41/S1 | LINE: CYL, TLA 2ND STG | | EA | | 1 | 7,817.91 | 100.0% | 7,817.91 |
| North Warehouse | Fieldwood | 56653 | | WH/B43/S2,TOP IN BACK | PSTN: TLA 2ND STGE | | EA | | 1 | 20,689.57 | 100.0% | 20,689.57 |
| North Warehouse | Fieldwood | 56654 | | WH/B44/S1 | PSTN: TLA 1ST STGE | | EA | | 1 | 22,170.79 | 100.0% | 22,170.79 |
| North Warehouse | Fieldwood | 56657 | | B3/B4/FLR | PMP: SHFT, TLA IDLER | | EA | | 1 | 1,136.85 | 100.0% | 1,136.85 |
| North Warehouse | Fieldwood | 56658 | | B3/B4/S3 | PMP: SHFT, TLA DRIVE | | EA | | 1 | 3,188.27 | 100.0% | 3,188.27 |
| North Warehouse | Fieldwood | 56659 | | B3/B4/S3 | PMP: SHFT, TLA WATER PUMP | | EA | | 1 | 1,789.07 | 100.0% | 1,789.07 |
| North Warehouse | Fieldwood | 56663 | | WH/B41/S2 | SHOE: TLA TPE XHD SLIPPER | | EA | | 1 | 2,514.18 | 100.0% | 2,514.18 |
| North Warehouse | Fieldwood | 56695 | | B3/B4/FLR | NUT: TLA CONNECTING ROD | | EA | | 4 | 397.17 | 100.0% | 397.17 |
| North Warehouse | Fieldwood | 56744 | | B3/B4/FLR | GEAR: TLA BULL TIMING CNTRL | | EA | | 1 | 1,898.39 | 100.0% | 1,898.39 |
| North Warehouse | Fieldwood | 56746 | | B3/B4/S3 | GEAR: TLA OIL PUMP | | EA | | 2 | 3,800.42 | 100.0% | 3,800.42 |
| North Warehouse | Fieldwood | 56771 | | B3/B4/FLR | LABYRINTH: TLA TURBINE | | EA | | 1 | 1,745.35 | 100.0% | 1,745.35 |
| North Warehouse | Fieldwood | 56772 | | B3/B4/FLR | LABYRINTH: TLA | | EA | | 2 | 626.73 | 100.0% | 626.73 |
| North Warehouse | Fieldwood | 56779 | | B3/B4/FLR | CARRIER: TLA BULL GEAR | | EA | | 3 | 1,286.24 | 100.0% | 1,286.24 |
| North Warehouse | Fieldwood | 56780 | | B3/B4/FLR | CARRIER: TLA IDLER GEAR | | EA | | 3 | 1,187.86 | 100.0% | 1,187.86 |
| North Warehouse | Fieldwood | 56782 | | B3/B4/FLR | LINKAGE: TLA LWR/CNTRL | | EA | | 2 | 1,435.63 | 100.0% | 1,435.63 |
| North Warehouse | Fieldwood | 56788 | | B3/B4/FLR | SHFT COMPRSSR: TLA TIMER DR | | EA | | 1 | 739.68 | 100.0% | 739.68 |
| North Warehouse | Fieldwood | 56799 | | B3/B4/S3 | VLV: TLA FUEL | | EA | | 6 | 2,288.27 | 100.0% | 2,288.27 |
| North Warehouse | Fieldwood | 56800 | | B3/B5/S3 | SPRCKT: TLA CRNKSHFT | | EA | | 1 | 6,512.01 | 100.0% | 6,512.01 |
| North Warehouse | Fieldwood | 56802 | | WH/B44/S2 | PSTN/ROD ASSY: TLA MATL NO DRAW TYP E | | EA | | 1 | 9,300.03 | 100.0% | 9,300.03 |
| North Warehouse | Fieldwood | 56806 | | B3/B6/S1 | ROD: TLA W/LCKNG STDDS & PN SZ W/RO CAP | | EA | | 1 | 24,799.27 | 100.0% | 24,799.27 |
| North Warehouse | Fieldwood | 56808 | | B3/B3/S2 | WHEEL: TLA TRBN | | EA | | 1 | 23,760.81 | 100.0% | 23,760.81 |
| North Warehouse | Fieldwood | 56809 | | WH/B30/S1 | SCRN ASSY: TLA DWG | | EA | | 1 | 3,917.02 | 100.0% | 3,917.02 |
| North Warehouse | Fieldwood | 56810 | | B3/B4/S2 | JT: EXPNSN, TLA | | EA | | 2 | 1,435.63 | 100.0% | 1,435.63 |
| North Warehouse | Fieldwood | 56811 | | B3/B1/S2 | JT: EXPNSN, TLA EXHAUST | | EA | | 1 | 980.17 | 100.0% | 980.17 |
| North Warehouse | Fieldwood | 56815 | | B3/B10/S2 | INTCLR ASSY: TLA SCAV AIR | | EA | | 6 | 4,339.69 | 100.0% | 4,339.69 |
| North Warehouse | Fieldwood | 56816 | | B3/B4/FLR | NUT: TLA ROD ALL STGS | | EA | | 1 | 1,012.96 | 100.0% | 1,012.96 |
| North Warehouse | Fieldwood | 56817 | | B3/B4/S3 | RING: TLA TURB NZZLE | | EA | | 2 | 8,435.25 | 100.0% | 8,435.25 |
| North Warehouse | Fieldwood | 58585 | | WH/SE Wall/FLR | CRNKSHFT | | EA | | 1 | 15,303.69 | 100.0% | 15,303.69 |
| North Warehouse | Fieldwood | 59286 | | WH/B43/S1 | PSTN/ROD ASSY: 9-3/4", GMV, W/ 3" ROD | | EA | | 1 | 12,227.14 | 100.0% | 12,227.14 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 71926 | | Bay3/N Wall/FLR | STDDS: STEP, CYL. W/ NUTS 4 SUCT | | EA | | 24 | 72.87 | 100.0% | 72.87 |
| North Warehouse | Fieldwood | 71936 | | B2/B1/S2 | CYL: HYD, I/BRD, UNRPRD | | EA | | 1 | 1,020.25 | 100.0% | 1,020.25 |
| North Warehouse | Fieldwood | 71937 | | B2/B1/S2 | CYL, HYD, I/BRD, UNRPRD | | EA | | 1 | 1,020.25 | 100.0% | 1,020.25 |
| North Warehouse | Fieldwood | 71939 | | B2/B4/S | CYL: COMPRSSR, 8", W/ ALL HD STDDS & NTS | | EA | | 1 | 6,558.73 | 100.0% | 6,558.73 |
| North Warehouse | Fieldwood | 71948 | | B2/B5/S1 | VLV CHR: UNRPR'D | | EA | | 8 | 153.04 | 100.0% | 153.04 |
| North Warehouse | Fieldwood | 71952 | | B2/B1/S2 | CYL: CMPRSSR, 8", W/ IB HEAD & P. GL ND | | EA | | 1 | 3,497.99 | 100.0% | 3,497.99 |
| North Warehouse | Fieldwood | 71955 | | B2/B4/S1 | PSTN: COMP, C.I., W/2 STEEL DONUTS | | EA | | 1 | 1,311.75 | 100.0% | 1,311.75 |
| North Warehouse | Fieldwood | 71971 | | B2/B1/S2 | PSTN/ ROD ASSY: X 2", NO RINGS, TUNGSTEN | | EA | | 1 | 1,289.88 | 100.0% | 1,289.88 |
| North Warehouse | Fieldwood | 71975 | | B2/B1/S2 | CRSSHD: GUIDE, WBF-74, BORE | | EA | | 1 | 3,279.36 | 100.0% | 3,279.36 |
| North Warehouse | Fieldwood | 71977 | | B2/B1/S2 | DIST PC: WBF-74, NEW OEM 14" CYL | | EA | | 1 | 2,040.49 | 100.0% | 2,040.49 |
| North Warehouse | Fieldwood | 71980 | | WH/B29/S1 | FAN ASSY: 7 BLADE 132" DIA AIR-X-CHANGER | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 71983 | | WH/B29/S1 | FAN BLDES: FIBERGLASS 62" L X 11-1/1 4" W | | EA | | 6 | 364.37 | 100.0% | 364.37 |
| North Warehouse | Fieldwood | 72001 | | WH/B8/S2 | PMP ASSY: LUBE, MVS, W/ ATMOS IND. & | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 72002 | | WH/B8/S2 | PMP ASSY: LUBE, MVS, W/ ATMOS IND. & | | EA | | 1 | 2,186.24 | 100.0% | 2,186.24 |
| North Warehouse | Fieldwood | 72013 | | WH/B8/FLR | HD: CYL, PWR, RECOND | | EA | | 2 | 1,311.75 | 100.0% | 1,311.75 |
| North Warehouse | Fieldwood | 72025 | | WH/B38/S1 | MANIFOLD: INTAKE | | EA | | 1 | 728.75 | 100.0% | 728.75 |
| North Warehouse | Fieldwood | 72027 | | WH/B36/S1 | MANIFOLD: EXHST, P9390, SECTIONS | | EA | | 3 | 655.87 | 100.0% | 655.87 |
| North Warehouse | Fieldwood | 72037 | | WH/B6/S2 | ROD: CONN, P9390, US'D | | EA | | 16 | 510.12 | 100.0% | 510.12 |
| North Warehouse | Fieldwood | 81982 | | B3/B2/FLR | ROD: ARTIC1D, GMVC | | EA | | 1 | 1,366.40 | 100.0% | 1,366.40 |
| North Warehouse | Fieldwood | 81984 | | B3/B4/S3 | SPRCKT: TLA SGL SPLIT | | EA | | 1 | 6,635.24 | 100.0% | 6,635.24 |
| North Warehouse | Fieldwood | 81985 | | B3/B4/FLR | SPRCKT: TLA IDLER W/PUMP | | EA | | 1 | 1,923.89 | 100.0% | 1,923.89 |
| North Warehouse | Fieldwood | 81987 | | WH/B41/S2 | SHOE: GMVC XHD | | EA | | 1 | 1,689.76 | 100.0% | 1,689.76 |
| North Warehouse | Fieldwood | 89087 | | WH/B43/S1 | PSTN/ROD ASSY: SZ 28" US'D C7120-3A 3172 | | EA | | 1 | 9,838.09 | 100.0% | 9,838.09 |
| North Warehouse | Fieldwood | 96073 | | WH/B8/S2 | PMP,HYD: 5.2gpm | | EA | | 1 | 9,793.64 | 100.0% | 9,793.64 |
| North Warehouse | Fieldwood | 96074 | | WH/B8/S2 | PMP,HYD: 1.9gpm | | EA | | 1 | 9,793.64 | 100.0% | 9,793.64 |
| North Warehouse | Fieldwood | 112605 | | B3/B8/FLR | KT: RPR VRA | | EA | | 3 | 852.63 | 100.0% | 852.63 |
| North Warehouse | Fieldwood | 112606 | | B3/B10/S1 | VLV | | EA | | 3 | 1,093.12 | 100.0% | 1,093.12 |
| North Warehouse | Fieldwood | 112608 | | B3/B10/S1 | VLV | | EA | | 6 | 655.87 | 100.0% | 655.87 |
| North Warehouse | Fieldwood | 197167 | | WH/B25/S2 | TRBCHRGR: VTC2S4 BBC W/MNTNG GSKT | | EA | | 1 | 33,066.91 | 100.0% | 33,066.91 |
| North Warehouse | Fieldwood | 200368 | | WH/B30/FLR | ROTOR ASSY, DEEPWELL PUMP | | EA | | 1 | 7,651.85 | 100.0% | 7,651.85 |
| North Warehouse | Fieldwood | 200371 | | B2/B10/FLR | CYL: WRTHGTN SIZE 9-1/4" | | EA | | 1 | 10,931.21 | 100.0% | 10,931.21 |
| North Warehouse | Fieldwood | 200372 | | B2/B11/FLR | CYL: WRTHGTN, SIZE 7" | | EA | | 1 | 8,744.97 | 100.0% | 8,744.97 |
| North Warehouse | Fieldwood | 200379 | | B2/B11/FLR | CYL: WRTHGTN SIZE 7.007 | | EA | | 1 | 9,838.09 | 100.0% | 9,838.09 |
| North Warehouse | Fieldwood | 200380 | | WH/B5/S2 | IMPELLER: TURBINE | | EA | | 1 | 16,560.78 | 100.0% | 16,560.78 |
| North Warehouse | Fieldwood | 200381 | | WH/B5/S2 | IMPELLER: 'C30' B STG, SOLAR | | EA | | 1 | 17,289.53 | 100.0% | 17,289.53 |
| North Warehouse | Fieldwood | 200387 | | WH/B11/S1 | COMPR: AIR | | EA | | 1 | 6,194.35 | 100.0% | 6,194.35 |
| North Warehouse | Fieldwood | 200390 | | WH/B27/S2 | GEAR: BX TYPE, 206HS, RAT 1.262-1 | | EA | | 1 | 29,149.89 | 100.0% | 29,149.89 |
| North Warehouse | Fieldwood | 200400 | | WH/B5/S2 | BEARING ASSY: C30 SLR GC DMPR SUCT | | EA | | 1 | 21,060.80 | 100.0% | 21,060.80 |
| North Warehouse | Fieldwood | 200401 | | WH/B5/S2 | BEARING ASSY: C30 DIS SLR GC TILT PAD | | EA | | 1 | 18,346.21 | 100.0% | 18,346.21 |
| North Warehouse | Fieldwood | 200414 | | B2/B7/S1 | CYL: 6, WRTHGTN COMPRSSR | | EA | | 1 | 8,744.97 | 100.0% | 8,744.97 |
| North Warehouse | Fieldwood | 200421 | | B2/B9/FLR | CYL: 15", COMPRSSR,  NO STDDS F/VLV CAPS | | EA | | 1 | 14,574.95 | 100.0% | 14,574.95 |
| North Warehouse | Fieldwood | 200422 | | B2/B5/S1 | CYL: 9", COMPRSSR #10674-E I/R -RDS | | EA | | 1 | 10,931.21 | 100.0% | 10,931.21 |
| North Warehouse | Fieldwood | 200423 | | B2/B11/S1 | CYL: 11-1/4", COMPRSSR W/ 11.287 BORE | | EA | | 1 | 13,117.45 | 100.0% | 13,117.45 |
| North Warehouse | Fieldwood | 200424 | | B2/B5/S2 | CYL: 5", COMPRSSR  I/R-RDS | | EA | | 1 | 9,327.97 | 100.0% | 9,327.97 |
| North Warehouse | Fieldwood | 200426 | | WH/B20/S1 | TURBINE | | EA | | 1 | 3,643.74 | 100.0% | 3,643.74 |
| North Warehouse | Fieldwood | 202849 | | YD/R4 | HEAT EXCHNGR | | EA | | 1 | 22,226.79 | 100.0% | 22,226.79 |
| North Warehouse | Fieldwood | 202850 | | WH/B38/FLR | PMP: CMSD 4X6X10.5 | | EA | | 1 | 65,000.00 | 100.0% | 65,000.00 |
| North Warehouse | Fieldwood | 202854 | | Bay 6 | COMPR: PKG | | EA | | 1 | 22,117.48 | 100.0% | 22,117.48 |
| North Warehouse | Fieldwood | 202876 | | YD/R4 | ENG: NG 399 | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 227188 | | B3/B6/S1 | CYL: CPR GMWA-9-1A PWR CYLINDERS | | EA | | 1 | 7,651.85 | 100.0% | 7,651.85 |
| North Warehouse | Fieldwood | 228011 | | Bay 2 | PSTN/ROD ASSY: 29-1/2", CPR F/ V250 COM | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 228012 | | B2/B2/S1 | PSTN ROD: I/R RDS 2.125 IN CRBDE CTD | | EA | | 1 | 2,379.02 | 100.0% | 2,379.02 |
| North Warehouse | Fieldwood | 229324 | | WH/B44/S1 | PSTN/ROD ASSY: TLA COMPRSSR | | EA | | 1 | 4,733.25 | 100.0% | 4,733.25 |
| North Warehouse | Fieldwood | 233282 | | Linear Controls | ENG:NG,235hp,1200rpm | | EA | | 1 | 26,909.80 | 100.0% | 26,909.80 |
| North Warehouse | Fieldwood | 233305 | | B1/Floor | ENG:DIESEL,318hp,8,2100 rpm | | EA | | 1 | 13,481.83 | 100.0% | 13,481.83 |
| North Warehouse | Fieldwood | 233453 | | Yard/Row 3 | GEN:DIESEL,30kW,208/48 0V,AC,1800rpm, 3ph | | EA | | 1 | 9,291.53 | 100.0% | 9,291.53 |
| North Warehouse | Fieldwood | 241167 | | B2/B6/FLR | CYL: 28", VRA CLRK COMPRSSR | | EA | | 1 | 3,079.21 | 100.0% | 3,079.21 |
| North Warehouse | Fieldwood | 241168 | | B2/B7/FLR | CYL: 17", VRA CLRK COMPRSSR | | EA | | 1 | 2,309.41 | 100.0% | 2,309.41 |
| North Warehouse | Fieldwood | 241169 | | B2/B2/FLR | CYL: 9, VRA CLRK COMPRSSR | | EA | | 1 | 1,539.61 | 100.0% | 1,539.61 |
| North Warehouse | Fieldwood | 241173 | | WH/B44/FL | PSTN/ROD ASSY: VRA CLRK COMPRSSR | | EA | | 1 | 1,539.61 | 100.0% | 1,539.61 |
| North Warehouse | Fieldwood | 241179 | | WH/B1/Floor | HD: VRA CLRK O/BRD UNLDR | | EA | | 1 | 3,849.02 | 100.0% | 3,849.02 |
| North Warehouse | Fieldwood | 241181 | | B10K/B36/S1 | VLV CHR: VRA CLRK VLV CHRS F/13" | | EA | | 12 | 173.21 | 100.0% | 173.21 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| North Warehouse | Fieldwood | 241182 | | B3/B10,11,12/FLR | PSTN: VRA CLRK PWR | | EA | | 6 | 2,169.33 | 100.0% | 2,169.33 |
| North Warehouse | Fieldwood | 241185 | | B3/B9/S1 | ROD: VRA CLRK ART CONN | | EA | | 1 | 11,708.19 | 100.0% | 11,708.19 |
| North Warehouse | Fieldwood | 241189 | | B3/B10/S3 | PIN: WRIST, VRA CLRK PWR PISTON | | EA | | 4 | 1,255.26 | 100.0% | 1,255.26 |
| North Warehouse | Fieldwood | 241191 | | B3/B8/S1 | TENSIONER: VRA CLRK CHAIN | | EA | | 2 | 1,196.78 | 100.0% | 1,196.78 |
| North Warehouse | Fieldwood | 241202 | | B3/B2/S2 | GVRNR: GMVC-12 | | EA | | 1 | 8,409.66 | 100.0% | 8,409.66 |
| North Warehouse | Fieldwood | 241203 | | B3/B1/FLR | JUMPER: H2O, GMVC-12 HD TO CYL | | EA | | 12 | 148.50 | 100.0% | 148.50 |
| North Warehouse | Fieldwood | 241205 | | B3/B3/S2 | JUMPER: H2O, GMVC-12 CYL TO RAIL | | EA | | 6 | 111.47 | 100.0% | 111.47 |
| North Warehouse | Fieldwood | 241216 | | B3/B3/S3 | EXHST: ELBOW, GMVC-12, GMVA-34-2C | | EA | | 4 | 857.27 | 100.0% | 857.27 |
| North Warehouse | Fieldwood | 251608 | | B2/Yard | ENG | | EA | | 1 | - | 100.0% | - |
| North Warehouse | Fieldwood | 252667 | | B2/B5/S2 | CYL: 6", WHT SUPR COMPRSSR CMPLT | | EA | | 1 | 4,862.67 | 100.0% | 4,862.67 |
| North Warehouse | Fieldwood | 323171 | | WH/B41/S1 | PSTN: RING FOR 23.00" PISTON | | EA | | 2 | 238.14 | 100.0% | 238.14 |
| North Warehouse | Fieldwood | 323172 | | WH/B41/S1 | PSTN: RING FOR 16.50" PISTON | | EA | | 2 | 223.27 | 100.0% | 223.27 |
| North Warehouse | Fieldwood | 323173 | | WH/B41/S1 | PSTN: RING FOR 10.50" PISTON | | EA | | 3 | 139.85 | 100.0% | 139.85 |
| North Warehouse | Fieldwood | 326861 | | WH/B41/FLR | PSTN: 10.50", PART #579-062-001 | | EA | | 1 | 6,451.03 | 100.0% | 6,451.03 |
| North Warehouse | Fieldwood | 326862 | | WH/B44/FLR | PSTN: ROD FOR 10.50", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 326863 | | WH/B44/FLR | PSTN: ROD FOR 23.00", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 326864 | | WH/B44/FLR | PSTN: ROD FOR 16.50", PISTON | | EA | | 1 | 3,373.74 | 100.0% | 3,373.74 |
| North Warehouse | Fieldwood | 328243 | | WH/B41/FLR | PSTN: 16.50", PART #579-082-201 | | EA | | 1 | 18,426.94 | 100.0% | 18,426.94 |
| North Warehouse | Fieldwood | 329558 | | Linear Controls | ENG:NG,423hp,12,7in,H2 0,900rpm | | EA | | 1 | 84,000.00 | 100.0% | 84,000.00 |
| North Warehouse | Fieldwood | 333387 | | WH/B41/FLR | PSTN: 23.00", PART #579-303-201 | | EA | | 1 | 33,442.43 | 100.0% | 33,442.43 |
| North Warehouse | Fieldwood | 348619 | | B1/B1/S1 | MTR,ELEC:TEFC,3600rpm,150hp,445LP | | EA | | 1 | 7,220.06 | 100.0% | 7,220.06 |
| North Warehouse | Fieldwood | 370132 | | Linear Controls | ENG:NG,85-220hp,1905in3,6,7IN | | EA | | 1 | 60,750.95 | 100.0% | 60,750.95 |
| North Warehouse | Fieldwood | 500133 | | Fluid Crane | SUMP TANK,4'WX10'LX4'H,ATM OS,EXT,16" PFLA | | EA | | 1 | 26,250.00 | 100.0% | 26,250.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 61 | 1-48" X 15' X 230 WP L.P. Horizontal Separator (No Skid) | ? | EA | | 1 | 4,850.00 | 100.0% | 4,850.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 64 | 24" X 10' Vertical H.P. Separator w/Skid | Eugene Island Block#266-B | EA | | 1 | 1,770.00 | 100.0% | 1,770.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 65 | 12" X 6' Vertical LP Fuel Gas Scrubber (No Skid) | ? | EA | | 1 | 1,235.00 | 100.0% | 1,235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 66 | 12" X 6' Vertical LP Fuel Gas Scrubber w/Skid | South Marsh Island 11-N | EA | | 1 | 1,235.00 | 100.0% | 1,235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 70 | 1-120 Degree Boat Landing with 48" Plate Doublers | South Marsh Island 11 | EA | | 1 | 820.00 | 100.0% | 820.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 73 | 24" X 10' Vertical H.P. Separator w/Skid | ? | EA | | 1 | 1,625.00 | 100.0% | 1,625.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 74 | 30" X 10' Vertical LP Test Separator w/Skid | ? | EA | | 1 | 1,895.00 | 100.0% | 1,895.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 77 | 16" X 8' Vertical LP Separator (No Skid) | South Marsh Island 10 | EA | | 1 | 1,455.00 | 100.0% | 1,455.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 90 | 1-48" X 10' X 275 WP L.P. Horizontal Scrubber Vessel NO SKID | South Marsh Island Block# 48 E | EA | | 1 | 4,120.00 | 100.0% | 4,120.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 96 | 1-Glycol Reboiler with Stack & Stihl Column | High Island Block# 467 A | EA | | 1 | 8,145.00 | 100.0% | 8,145.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 100 | 48" X 10' X 275# W.P. Horizontal Water Skimmer with Skid | N/A | EA | | 1 | 4,175.00 | 100.0% | 4,175.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 101 | 42" X 15' X 1440# W.P. Horizontal 3-Phase Separator "No Skid" | N/A | EA | | 1 | 3,895.00 | 100.0% | 3,895.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 102 | 42" X 12' 6" X 125# W.P. Horizontal Skimmer with Skid | N/A | EA | | 1 | 3,215.00 | 100.0% | 3,215.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 103 | 20" X 7' 6" X 275 W.P. Vertical Separator with Skid | N/A | EA | | 1 | 1,210.00 | 100.0% | 1,210.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 104 | 30" X 10' X 1480 W.P. Horizontal Separator with Skid | N/A | EA | | 1 | 2,150.00 | 100.0% | 2,150.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 105 | One Dual Meter Run Skid with Pig Traps | N/A | EA | | 1 | 1,385.00 | 100.0% | 1,385.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 106 | 30" X 6' X 150# W.P. Vertical Scrubber Vessel with Skid | N/A | EA | | 1 | 1,665.00 | 100.0% | 1,665.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. KK | 30" X 4' X 250 WP Vertical Scrubber Vessel w/Skid | From Offshore Specialty Fabricators in Houma | EA | | 1 | 1,570.00 | 100.0% | 1,570.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. CCC | Line Heater/Reboiler Package 8' W X 22' 6"L X 10' 1" T | Eugene Island Block# 212 "A" | EA | | 1 | 12,275.00 | 100.0% | 12,275.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. DDD | 3-Vapor Recovery Stands | Eugene Island Block# 212 "A" | EA | | 1 | 235.00 | 100.0% | 235.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. EEE | 1-Heater Stack, 1-Still Column, and Misc Pipe and Hardware for Line Heater/Reboiler | Eugene Island Block# 212 "A" | EA | | 1 | 355.00 | 100.0% | 355.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 107 | 1-Pallet of Used Spool Piping | West Cameron Block# 165 "A" | EA | | 1 | 295.00 | 100.0% | 295.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 109 | 1-Filter Separator with Skid (5' X 12' X 8' Tall) Est. 10,000# | High Island Block# A376 B | EA | | 1 | 1,155.00 | 100.0% | 1,155.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 110 | 1-Float Cell with Skid (7' X 12' X 9' Tall) Est. 10,000# | High Island Block# A376 B | EA | | 1 | 1,490.00 | 100.0% | 1,490.00 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qt | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 111 | Two (2) Plate Heat Exchanger Skids | High Island Block# A595 "CF" | EA | | 1 | 475.00 | 100.0% | 475.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 112 | 1-Piggy-Back Water Skimmer & Float Cell Package (Newly Fabricated) | Main Pass Block# 140-A | EA | | 1 | 5,025.00 | 100.0% | 5,025.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 113 | 1-Verticle Water Skimmer Vessel with Skid (60" X 12" X 15,000#) (MBM-1800) | Vermilion Block# 60-A | EA | | 1 | 3,375.00 | 100.0% | 3,375.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 114 | 1-Verticle Floatation Unit (4M Spinsep) with Skid (ABM-1908) (10,150#) (Monosep Corporation-Serial# MCO-2076) | West Cameron Block# 68-A | EA | | 1 | 655.00 | 100.0% | 655.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 115 | 1-Verticle Test Separator with Skid (MBD-4501) (36 X 10 Foot X 17,000#) (2,000 WP @ 100 deg, MFG 1982) | West Cameron Block# 68-A | EA | | 1 | 865.00 | 100.0% | 865.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 116 | 1-Horizontal 3-Phase H.P. Production Separator with Skid (MBD-4502) (60" X 15') (1440 @ 100 Deg-Yr Built 1982) | West Cameron Block# 68-A | EA | | 1 | 1,435.00 | 100.0% | 1,435.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 117 | 1-Vertical Vent Scrubber Package with Skid (MBF-2401) (30" X 10' X 22,000#) | West Cameron Block# 68-A | EA | | 1 | 1,775.00 | 100.0% | 1,775.00 |
| Acadian - Lafayette | Acadian Contractors, Inc. | | | Lot No. 118 | 1-Horizontal 2-Phase Vent Scrubber Vessel W/Skid (48" X 10' X 150# @ 100 Deg) Built 1987 | East cameron Block# 320-A | EA | | 1 | 3,545.00 | 100.0% | 3,545.00 |
| Viking - Henderson | Viking Fabricators, LLC | | | | Handrails | | EA | | 179 | 315.00 | 100.0% | 315.00 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 10 FT. LONG LADDER CAGES | | EA | | 1 | 763.87 | 100.0% | 763.87 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 12'-6" LONG LADDER CAGES | | EA | | 84 | 1,291.85 | 100.0% | 1,291.85 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 10 FT. LONG LADDERS | | EA | | 81 | 622.75 | 100.0% | 622.75 |
| Viking - Youngsville | Viking Fabricators, LLC | | | | 20 FT. LONG LADDERS | | EA | | 107 | 1,236.43 | 100.0% | 1,236.43 |
| Linear - Lafayette | Linear Controls | 2124118-01 | 11233630-1 | ATS - OUTDOOR | ASSY, TREE CAP, BP TROIKA | | EA | 7,155 | 1 | 5,545.13 | 100.0% | 5,545.13 |
| Linear - Lafayette | Linear Controls | 2124617-01 | 2659561170 | ATS - OUTDOOR | ASSY, RIG TEST SKID, SUBSEA TREE, | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124117-07 | 400257303-01 | ATS - OUTDOOR | CONV. ASSY, SUBSEA TREE, 4" X 2"-10M, | | EA | 80,000 | 1 | 62,000.00 | 100.0% | 62,000.00 |
| Linear - Lafayette | Linear Controls | 2273013-01 | 110598733-1(RR1) | ATS - OUTDOOR | ASSEMBLY, 5" X 2"-10M SPOOLTREE | | EA | 66,000 | 1 | 51,150.00 | 100.0% | 51,150.00 |
| Linear - Lafayette | Linear Controls | 2124123-01 | 96101817050 | ATS - OUTDOOR | ASSY, TREE CAP SHIPPING SKID | | EA | 1,850 | 1 | 1,433.75 | 100.0% | 1,433.75 |
| Linear - Lafayette | Linear Controls | 2124145-01 | 45256012-5 | ATS - OUTDOOR | ASSY, HUB, 4" WELL TERMINATION, | | EA | 1,400 | 1 | 1,085.00 | 100.0% | 1,085.00 |
| Linear - Lafayette | Linear Controls | 2141833-01 | 11227730-01 | ATS - OUTDOOR | ASSY, TREE TRANSPORTATION SKID, BP | | EA | 5,800 | 1 | 4,495.00 | 100.0% | 4,495.00 |
| Linear - Lafayette | Linear Controls | 2124836-01 | 11171617-1 | ATS - OUTDOOR | TEST STUMP BODY, TREE FAT SKID, | | EA | 6,200 | 1 | 4,805.00 | 100.0% | 4,805.00 |
| Linear - Lafayette | Linear Controls | 2124641-01 | 11384318-1 | ATS - OUTDOOR | ASSY, COMPLETION GUIDE BASE, STM-15 | | EA | 20,500 | 1 | 15,887.50 | 100.0% | 15,887.50 |
| Linear - Lafayette | Linear Controls | 2098861-02 | 11197244-1 | ATS - OUTDOOR | ASSY, MCPAC CONNECTION TOOL, SHELL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2098861-02 | 11199037-1 | ATS - OUTDOOR | ASSY, MCPAC CONNECTION TOOL, SHELL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124119-01 | 964534560 | ATS - OUTDOOR | ASSY, TREE RUNNING TOOL | | EA | 11,000 | 1 | 8,525.00 | 100.0% | 8,525.00 |
| Linear - Lafayette | Linear Controls | 2124129-01 | 265340930 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER RUNNING TOOL | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124128-01 | 11286013-17 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER, STM-15, | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |
| Linear - Lafayette | Linear Controls | 2124135-01 | 2659561200 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER HANDLING / TEST | | EA | 300 | 1 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2124135-01 | 2659561190 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER HANDLING / TEST | | EA | 300 | 1 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2018904-01 | 265956120(RR2) | TOOLSKID - OUTDOOR | ASSY, LEAD IMPRESSION TOOL | | EA | 900 | 1 | 697.50 | 100.0% | 697.50 |
| Linear - Lafayette | Linear Controls | 2124129-01 | 266013010 | TOOLSKID - OUTDOOR | ASSY, TUBING HANGER RUNNING TOOL | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124139-01 | 11186901-01 | TOOLSKID - OUTDOOR | ASSY, DUMMY TBG HGR, STM-15, 4.06" | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |
| Linear - Lafayette | Linear Controls | 2055294-12 | 110357224-01 | CPB 077 - INDOOR | ASSEMBLY, TUBING HANGER, 5 IN NOM. | | EA | 2,500 | 1 | 1,937.50 | 100.0% | 1,937.50 |
| Linear - Lafayette | Linear Controls | 2748033-01 | 45353783-01-01 | CPB 077 - INDOOR | WIRELINE PLUG, 5.25" DIA, METAL AND | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2749898-01 | 4500436775-2-1 | CPB 077 - INDOOR | 5.250" WIRELINE PLUG 'HH' TRIM WITH | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2055296-02-01 | 110407008-1 | CPB 078 - INDOOR | ASSEMBLY, INTERNAL TREE CAP, 10K WP | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 60007268 | 96953428110 | SF-YARD - OUTDOOR | TROIKA TOOL SHED | | EA | | 1 | 15,000.00 | 100.0% | 15,000.00 |
| Linear - Lafayette | Linear Controls | 2124147-04 | 11180674 | TRI 168 - INDOOR | ASSY, CLAMP, W/ SEAL PLATE, 10" | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-05 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-06 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-05 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11363037-01 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-04 | TRI 170 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124159-01 | 45284821-04 | TRI 171 - INDOOR | BODY, HUB, 10" FLOWLINE TEST STAND | | EA | 250 | 1 | 193.75 | 100.0% | 193.75 |
| Linear - Lafayette | Linear Controls | 2124159-01 | 45284821-01 | TRI 171 - INDOOR | BODY, HUB, 10" FLOWLINE TEST STAND | | EA | 250 | 1 | 193.75 | 100.0% | 193.75 |

| Facility | Facility Owner | Item Number | Serial No | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qt | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 041700-47 | 4503010723-1-1 | TRI 171 - INDOOR | GASKET, AX - 18-3/4" 10/15M 316 SS | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 96111219520 | TRI 172 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 96111219570 | TRI 172 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2141279-01 | 4502534448-01-01 | TRI 172 - INDOOR | CLAMP, 10" FLOWLINE/ PIGGING LOOP/ | | EA | 1,500 | 1 | 1,162.50 | 100.0% | 1,162.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-02-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-01-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2124581-06-02 | 4504055507-03-01 | TRI 174 - INDOOR | CONVERSION BLANKING SEAL PLATE, 4" WELL | | EA | 180 | 1 | 139.50 | 100.0% | 139.50 |
| Linear - Lafayette | Linear Controls | 2142930-01 | 4501742451-1-2 | TRI 174 - INDOOR | ACCESS STAND, G2 TUBING HANGER RUNNING | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170113-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11410124-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11170112-02 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-02 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-03 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-04 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-07 | 4503345734-01-01 | TRI 174 - INDOOR | SEAL PLATE, COATING ON OD ONLY | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-03 | 4502533058-01-01 | TRI 174 - INDOOR | SEAL PLATE, 10" FLOWLINE JUMPER | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124581-01 | 11251434-01 | TRI 174 - INDOOR | SEAL PLATE, 4" WELL & MANIFOLD | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124586-01 | 450605865-1 | TRI 175 - INDOOR | END PLATE, MANDREL RETAINER, | | EA | 500 | 1 | 387.50 | 100.0% | 387.50 |
| Linear - Lafayette | Linear Controls | 2124584-01 | 450605849-1-1 | TRI 175 - INDOOR | MANDREL, RETAINER SLEEVE, | | EA | 400 | 1 | 310.00 | 100.0% | 310.00 |
| Linear - Lafayette | Linear Controls | 2124535-01 | NS20160402072902I | TRI 175 - INDOOR | ANNULUS LOOP, 2.875 O.D. X 2.125 | | EA | 300 | 4 | 232.50 | 100.0% | 232.50 |
| Linear - Lafayette | Linear Controls | 2124624-01 | 450604006-1 | TRI 175 - INDOOR | BODY, 4" PRODUCTION STAB, | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2124585-01 | 450605858-1 | TRI 175 - INDOOR | RETAINER PLATE, MASTER VALVE BLOCK | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2156742-01 | 11328834-01 | TRI 175 - INDOOR | SUB-ASSY, BOP SPANNER JOINT, 7.625" | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2156773-02 | 11322641-01 | TRI 175 - INDOOR | UPPER ADAPTER, BOP SPANNER JOINT, | | EA | 200 | 1 | 155.00 | 100.0% | 155.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 400297648 | TRI 176 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124147-01 | 11213146-1 | TRI 176 - INDOOR | ASSY, CLAMP, W/SEAL PLATE, 4" WELL | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 041700-09-01 | 400133273 | TRI 178 - INDOOR | AX GASKET, 11"- 5M/10MM, ST/STL WITH | | EA | 30 | 1 | 23.25 | 100.0% | 23.25 |
| Linear - Lafayette | Linear Controls | 041700-09-01 | 400133274 | TRI 178 - INDOOR | AX GASKET, 11"- 5M/10MM, ST/STL WITH | | EA | 30 | 1 | 23.25 | 100.0% | 23.25 |
| Linear - Lafayette | Linear Controls | 2098477-01 | 175670-1 | TRI 178 - INDOOR | AX-VX GASKET | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2098477-01 | 175670-2 | TRI 178 - INDOOR | AX-VX GASKET | | EA | 110 | 1 | 85.25 | 100.0% | 85.25 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-8 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-6 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-3 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-11 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-3 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-2 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45438628-1 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-4 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 501040-1 | 961276244180 | TRI 178 - INDOOR | 6" Gasket Sealing Ring | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-04 | 45424496-2 | TRI 178 - INDOOR | GASKET W/ O-RING, 10"-15M SEAL | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434247-01 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-01 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-06 | 45424796-06 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45434274-02 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-04 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45424796-03 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124579-02 | 45445642-04 | TRI 178 - INDOOR | GASKET, 10"-15M, SEAL PLATE, MCPAC | | EA | 20 | 1 | 15.50 | 100.0% | 15.50 |
| Linear - Lafayette | Linear Controls | 2124134-01 | 2659561110 | TRI 180 - INDOOR | ASSY, TUBING HANGER ADJUSTMENT STAN | | EA | 600 | 1 | 465.00 | 100.0% | 465.00 |
| Linear - Lafayette | Linear Controls | 2099720-02 | 26-1567 | TRI FLOOR - INDOOR | ASSY, TREE CAP RUNNING TOOL, BP | | EA | 5,000 | 1 | 3,875.00 | 100.0% | 3,875.00 |
| Linear - Lafayette | Linear Controls | 60031311 | 9523237807360 | TRI SHED - INDOOR | Troika Dummy Control Pod | | EA | 3,000 | 1 | 2,325.00 | 100.0% | 2,325.00 |
| Linear - Lafayette | Linear Controls | 60031470 | 9523237807390 | TRI SHED - INDOOR | SHELL DUMMY CONTROL POD SHIPPING SKID | | EA | 1,000 | 1 | 775.00 | 100.0% | 775.00 |

| Facility | Facility Owner | Item Number | Serial No. | Location | Item Description | Project Name | UOM | Wt. (lbs) | On Hand Qty | Total Value | Wt% | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linear - Lafayette | Linear Controls | 2123000-01 | 9624280360 | TRI-SHELL - OUTDOOR | HANDLING TOOL ASSY, TREE CAP & TREE | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2123000-01 | 2657807220 | TRI-SHELL - OUTDOOR | HANDLING TOOL ASSY, TREE CAP & TREE | | EA | 150 | 1 | 116.25 | 100.0% | 116.25 |
| Linear - Lafayette | Linear Controls | 2123738-01 | 9624280370 | TRI-SHELL - OUTDOOR | LIFT SUB, 1.50" NOM SHACKLE X | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2099099-03 | 11196376-1 | TRI-SHELL - OUTDOOR | ASSY, TEST HUB, 10" FLOWLINE / | | EA | 350 | 1 | 271.25 | 100.0% | 271.25 |
| Linear - Lafayette | Linear Controls | 2099099-03 | 11210778-1 | TRI-SHELL - OUTDOOR | ASSY, TEST HUB, 10" FLOWLINE / | | EA | 350 | 1 | 271.25 | 100.0% | 271.25 |
| Linear - Lafayette | Linear Controls | 2035504-02 | 961276650350 | TRI-SHELL - OUTDOOR | ASSY, DEBRIS CAP, 18-3/8" OD MCPAC | | EA | 100 | 1 | 77.50 | 100.0% | 77.50 |
| Linear - Lafayette | Linear Controls | 2035519-01 | 1276650650 | TRI-SHELL - OUTDOOR | ASSY, ROV RETRIEVABLE DEBRIS/TEST | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2035519-01 | 1276650660 | TRI-SHELL - OUTDOOR | ASSY, ROV RETRIEVABLE DEBRIS/TEST | | EA | 50 | 1 | 38.75 | 100.0% | 38.75 |
| Linear - Lafayette | Linear Controls | 2156132-01 | 9523237807220 | TRI-SHELL - OUTDOOR | ASSY, COMBINATION (TREE/TREE CAP) | | EA | 500 | 1 | 387.50 | 100.0% | 387.50 |
| Linear - Lafayette | Linear Controls | 2156145-01 | 11324065-01 | TRI-SHELL - OUTDOOR | ASSY, 3-1/16-15M MONOBORE TUBING | | EA | 8,500 | 1 | 6,587.50 | 100.0% | 6,587.50 |
| Linear - Lafayette | Linear Controls | 2124137-01 | 9523237807330 | TRI-SHELL - OUTDOOR | ASSY, TOOL STORAGE & SHIPPING SKID | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124137-01 | 9523237807340 | TRI-SHELL - OUTDOOR | ASSY, TOOL STORAGE & SHIPPING SKID | | EA | 2,000 | 1 | 1,550.00 | 100.0% | 1,550.00 |
| Linear - Lafayette | Linear Controls | 2124118-01 | 11278658-1 | TRI-SHELL - OUTDOOR | ASSY, TREE CAP, BP TROIKA | | EA | 8,000 | 1 | 6,200.00 | 100.0% | 6,200.00 |
| Linear - Lafayette | Linear Controls | | Serial.# WPI317 | | Waukesha Engine  L7042 GSI | | EA | | 1 | 82,625.00 | 100.0% | 82,625.00 |
| Linear - Lafayette | Linear Controls | | Serial.#  48799 | | Waukesha Engine  L3711 | | EA | | 1 | 51,250.00 | 100.0% | 51,250.00 |
| Linear - Lafayette | Linear Controls | | Serial.#  1029776 | | Waukesha Engine  F1905 | | EA | | 1 | 43,765.00 | 100.0% | 43,765.00 |
| Linear - Lafayette | Linear Controls | | Serial.# 218794 | | Waukesha Engine  F1905 | | EA | | 1 | 43,765.00 | 100.0% | 43,765.00 |
| Linear - Lafayette | Linear Controls | | Serial.#396632 | | Waukesha Engine  F1197 | | EA | | 1 | 24,315.00 | 100.0% | 24,315.00 |
| Linear - Lafayette | Linear Controls | | Serial.#  362530 | | Waukesha Engine  F1197 | | EA | | 1 | 24,315.00 | 100.0% | 24,315.00 |
| Whitco - Broussard | Whitco Supply | 357501 | | | 1" x 3' x 20' Galvanized Grating | | EA | | 106 | 395.00 | 100.0% | 395.00 |
| Whitco - Broussard | Whitco Supply | 333963 | | | 1-1/2" x 3' x 20' Galvanized Grating | | EA | | - | 598.00 | 100.0% | 598.00 |
| Express - Fourchon | Express Supply & Steel | | | | 1" x 3-1/16" x 36" x 20' Serrated Galvanized Domestic Grating | | EA | | 10 | 400.65 | 100.0% | 400.65 |
| Express - Fourchon | Express Supply & Steel | | | | 1-1/2" x 3-1/16" x 36" x 20' Serrated Galvanized Domestic Grating | | EA | | 35 | 555.67 | 100.0% | 555.67 |

Cash and other balances to be determined at effective date

**Surety Bonds in favor of FWE I:**

| DATE | BOND NO. | Amount | Lease | PARTIES | SURETY | BENEFICIARY |
|------|----------|--------|-------|---------|--------|-------------|
| 3/6/19 | B011964 | $300,000 | OCS-G 01194 | Fieldwood Energy LLC; Byron Energy Inc. | U.S. Specialty Insurance Company | Fieldwood Energy LLC |
| 3/6/19 | B011963 | $450,000 | OCS-G 01194 | Fieldwood Energy LLC; Byron Energy Inc.;BOEM | U.S. Specialty Insurance Company | Fieldwood Energy LLC; BOEM |
| 11/29/18 | N-7001005 | $2,366,855 | OCS-0810; OCS-0812 | Northstar Offshore Ventures LLC; SanareEnergy Partners, LLC; Fieldwood Energy LLC | Indemnity National Insurance Company | Fieldwood Energy LLC |
| 3/9/18 | N-7000930 | $2,640,126 | OCS-G11691 | Monforte Exploration L.L.C.; FieldwoodEnergy LLC | Indemnity National Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149835 | $250,000 | OCS-G03587 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149836 | $1,000,000 | OCS-G03171 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149838 | $2,500,000 | OCS-G01216;OCS-G01217 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 5/1/16 | RLB0016261 | $1,514,600 | 2 A; ROW G12732;ROW G13 | Whitney Oil & Gas, LLC; Apache Corporation; GOM Shelf LLC | RLI Insurance Company | Apache Corporation; GOM Shelf LLC |

**Exhibit I-I**

**<u>Subsidiaries:</u>**
GOM Shelf LLC
FW GOM Pipeline Inc.

**<u>Equity Interests:</u>**
Paloma Pipeline Company - 9.65%
SP 49 LLC - 33.33% (owned by FW GOM Pipeline Inc.)

Exhibit I-J

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 287 | G24987 | Federal | RT | 5/1/2003 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 287 | G24987 | Federal | OP 1 | 5/1/2003 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 287 | G24987 | Federal | OP 2 | 5/1/2003 | | 5000 | Fieldwood En | 50.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 308 | G21685 | Federal | RT | 6/1/2000 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 308 | G21685 | Federal | OP 1 | 6/1/2000 | | 5000 | Fieldwood En | 100.0% | PROD |
| SOUTH TIMBALIER 308 / EWING BANK 873 | ST 308 | G21685 | Federal | OP 2 | 6/1/2000 | | 5000 | Fieldwood En | 50.0% | PROD |
| VERMILION 362/371 | VR 362 | G10687 | Federal | RT | 6/1/1989 | | 5,000 | Fieldwood En Off | 100.0% | UNIT |
| VERMILION 362/371 | VR 362 | G10687 | Federal | OP | 6/1/1989 | | 5,000 | Fieldwood En Off | 16.7% | UNIT |
| VERMILION 362/371 | VR 363 | G09522 | Federal | RT | 5/1/1988 | | 5,000 | Fieldwood En | 100.0% | ACTIVE |
| VERMILION 362/371 | VR 363 | G09522 | Federal | OP 1 | 5/1/1988 | | 5,000 | Fieldwood En | 100.0% | ACTIVE |
| VERMILION 362/371 | VR 363 | G09522 | Federal | OP 2 | 5/1/1988 | | 5,000 | Fieldwood En Off | 33.3% | ACTIVE |
| VERMILION 362/371 | VR 363 | G09522 | Federal | OP 3 | 5/1/1988 | | 5,000 | Fieldwood En | 50.0% | ACTIVE |
| VERMILION 362/371 | VR 371 | G09524 | Federal | RT | 7/1/1988 | | 5,000 | Fieldwood En Off | 100.0% | ACTIVE |
| VERMILION 362/371 | VR 371 | G09524 | Federal | OP | 7/1/1988 | | 5,000 | Fieldwood En Off | 16.7% | ACTIVE |
| VERMILION 78 | VR 78 | G04421 | Federal | RT | 11/1/1980 | | 5,000 | Fieldwood En | 37.5% | ACTIVE |
| VERMILION 78 | VR 78 | G04421 | Federal | OP | 11/1/1980 | | 5,000 | Fieldwood En | 18.8% | ACTIVE |

Right of Way bearing Serial No. OCS-G29427 for Pipeline Segment No. 20278 pertaining to South Timbalier 308
Right of Way bearing Serial No. OCS-G15047 for Pipeline Segment No. 10675 pertaining to Vermilion 371
All other right, title and interest of FWE in any assets to the extent such assets relate to any of the foregoing leases or rights of way.

Exhibit I-K(i)

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | e Cur Acre | Operator | WI | Lease Status | |
|-------|-------|-------|------|--------|-------------|-------------|-----------|----------|-----|-------------|---|
| EAST CAMERON 2 - (SL LA) | EC 2 | SL18121 | SL - LA | WI | 5/12/2004 | 11/6/2020 | 220 | Fieldwood | 50.0% | RELINQ | |
| CHANDELEUR 42/43 | CA 43 | G32268 | Federal | OP 1 | 7/1/2008 | | 5,000 | ieldwood E | 7.69% | PROD | Knight Default |
| CHANDELEUR 42/43 | CA 42 | G32267 | Federal | OP 1 | 7/1/2008 | 6/21/2019 | 5,000 | ieldwood E | 7.69% | RELINQ | Knight Default |
| WEST CAMERON 295 | WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | | 5,000 | ieldwood E | 6.00% | PROD | Tammany Default |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | | 5,000 | ldwood En | 0.042% | UNIT | Hillcrest GOM Default in Unit |
| SHIP SHOAL 246/247/248/270/271 | SS 248 | G01029 | Federal | RT B | 6/1/1962 | | 5,000 | ldwood En | 0.04% | UNIT | Hillcrest GOM Default in Unit |
| SOUTH TIMBALIER 205/206 | ST 205 | G05612 | Federal | ORRI | 7/1/1983 | | 5,000 | ieldwood E | 2.0% | PROD | |

Exhibit I-K(ii)

| Asset Name | FWE Acct. Code | Lease Number | API | WI | NRI |
|---|---|---|---|---|---|
| CHANDELEUR 042 #A002 | CA042A0200 | G32267 | 177294001500 | 7.7% | 5.4% |
| CHANDELEUR 043 #A001 | CA043A0100 | G32268 | 177294001400 | 7.7% | 5.4% |
| CHANDELEUR 043 #A003 | CA043A0300 | G32268 | 177294001600 | 7.7% | 5.4% |
| EAST CAMERON 002 #001 SL 18121 | SL18121010 | 18121 | 177032013600 | 50.0% | 37.3% |
| EUGENE IS 330 #B003 ST1 | EI330B0301 | G02115 | 177104008001 | 35.0% | 29.1% |
| MAIN PASS 259 #A007 | MP259A0700 | G07827 | 177244071800 | 43.1% | 29.7% |
| MAIN PASS 303 #B015 | MP303B1500 | G04253 | 177244024800 | 42.9% | 35.7% |
| MATAGORDA IS 519 #L001 | MI519L1SL0 | MF-79413 | 427033030000 | 15.8% | 12.2% |
| MATAGORDA IS 519 #L002 | MI519L2SL0 | MF-79413 | 427033034000 | 15.8% | 12.2% |
| MATAGORDA IS 519 #L003 | MI519L3SL0 | MF-79413 | 427033039500 | 15.8% | 12.2% |
| MATAGORDA IS 519 #L004 | MI519L4SL0 | MF-79413 | 427033039700 | 15.8% | 12.2% |
| SHIP SHOAL 249 #D017 | SS249D1700 | G01030 | 177124020800 | 0.042% | TA |
| SOUTH TIMBALIER 205 #B002A ST1 | ST205B02A1 | G05612 | 177154062901 | 25.0% | 20.8% |
| SOUTH TIMBALIER 205 #B004 ST1 | ST205B0401 | G05612 | 177154081601 | 25.0% | 20.8% |
| SOUTH TIMBALIER 206 #A002 ST1 | ST206A0201 | G05613 | 177154060101 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A003 | ST206A0300 | G05613 | 177154061000 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A004A | ST206A04A0 | G05613 | 177154074300 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A006 | ST206A0600 | G05613 | 177154075100 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A007 | ST206A0700 | G05613 | 177154075200 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A008 | ST206A0800 | G05613 | 177154075300 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A009 | ST206A0900 | G05613 | 177154075400 | 25.0% | TA |
| SOUTH TIMBALIER 206 #A010ST2BP | ST206A1002 | G05613 | 177154075702 | 25.0% | TA |
| SOUTH TIMBALIER 206 #B003 ST1 | ST206B0301 | G05613 | 177154074001 | 25.0% | 20.8% |
| SOUTH TIMBALIER 206 #B006 | ST206B0600 | G05613 | 177154103000 | 25.0% | 20.8% |
| WEST CAMERON 295 #A002 | WC295A0201 | G24730 | 170014039001 | 6.0% | 4.9% |
| SOUTH TIMBALIER 205 #G001 ST1 | ST205G0101 | G05612 | 177154106701 | 0.0% | 2.0% |
| SOUTH TIMBALIER 205 #G003 ST1 | ST205G0301 | G05612 | 177154115301 | 0.0% | 2.0% |

Exhibit I-K(iii)

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| CHANDELEUR 043 P/F-A | CA43APLT | G32268 | CA043 | 7.69% |
| HIGH ISLAND 120 P/F-A-PROCESS | HI120APROC | G01848 | HI120 | 6.00% |
| WEST CAMERON 295 P/F-A | WC295ACAS | G24730 | WC295 | 6.00% |
| SHIP SHOAL 248 P/F-G | SS248PFG | G01029 | SS248 | 0.04% |
| SOUTH TIMBALIER 206 P/F-A | ST206APLT | G05612 | ST206 | 25.00% |
| SOUTH TIMBALIER 205 P/F-B | ST205BPLT | G05612 | ST205 | 25.00% |
| MATAGORDA IS 487 P/F-L(SL) | MI487LSL | MF-88562 | MI487 | 15.80% |
| MATAGORDA IS 519 P/F-L - SL | MI519LSL | MF-88562 | MI519 | 15.80% |
| Venice Dehydration Facility (South Pass Dehydration Station) | VENICEDHYD | | | 64.80% |
| Tivoli Plant | TIVOLIPL | | | 43.86% |
| MI 519 Bay City Compressor Station | MI519BAY | | | 18.10% |
| Vermilion 76 Onshore Scrubber | VR76SCRUB | | | 6.08% |
| Grand Chenier Separation Facility | GRCHENPF | | | 72.08% |
| EAST CAMERON 002 P/F-1 SL18121 | SL181211PT | 18121 | EC002 | 50.00% |

Exhibit II-A

Exhibit II-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| BRETON SOUND 41 | BS 41 | G21142 | Federal | OP 2 | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | 10.0% | TERMIN |
| BRETON SOUND 41 | BS 41 | G21142 | Federal | Contractual | 5/1/1999 | 1/26/2014 | 4,995 | Fieldwood En Off | 25.0% | TERMIN |
| EAST CAMERON 257 | EC 257 | G21580 | Federal | OP 1 | 7/1/2000 | 2/2/2018 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| GALVESTON 241 | GA 241 | G01772 | Federal | OP 1 | 7/1/1968 | 8/2/2014 | 1,440 | Fieldwood En Off | 100.0% | TERMIN |
| GALVESTON 241 | GA 241 | G01773 | Federal | RT | 7/1/1968 | 8/2/2014 | 1,440 | Fieldwood En Off | 100.0% | TERMIN |
| GALVESTON 241 | GA 255 | G01777 | Federal | RT | 7/1/1968 | 4/3/1998 | 5,760 | Fieldwood En Off | 100.0% | TERMIN |
| GRAND ISLE 83 | GI 83 | G03793 | Federal | RT | 6/1/1978 | 11/26/2019 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| HIGH IS. A-446 | HI A-446 | G02359 | Federal | RT | 8/1/1973 | 4/12/2016 | 5,760 | Bandon O&G | 100.0% | TERMIN |
| HIGH ISLAND A-446 | HI A-447 | G02360 | Federal | RT | 8/1/1973 | 9/4/2010 | 5,760 | Bandon O&G | 100.0% | TERMIN |
| MAIN PASS 154 | MP 154 | G10902 | Federal | RT | 7/1/1989 | 7/29/2000 | 4,995 | Fieldwood En Off | 100.0% | TERMIN |
| MAIN PASS 29/112/114/116/118/125 | MP 112 | G09707 | Federal | RT | 6/1/1988 | 4/19/2017 | 4,995 | Fieldwood En Off | 100.0% | RELINQ |
| SOUTH MARSH IS. 39 | SM 39 | G16320 | Federal | RT | 7/1/1996 | | 5,000 | Fieldwood En Off | 50.0% | PROD |
| SOUTH TIMBALIER 242 | ST 242 | G23933 | Federal | RT | 6/1/2002 | 5/7/2019 | 5,000 | Fieldwood En Off | 60.0% | TERMIN |
| VERMILION 315/332 | VR 314 | G05438 | Federal | OP 2 | 7/1/1983 | | 5,000 | Fieldwood En Off | 50.0% | PROD |
| VERMILION 315/332 | VR 315 | G04215 | Federal | OP 1 | 1/1/1980 | 3/7/2012 | 5,000 | Dynamic Off Res | 50.0% | TERMIN |
| VERMILION 315/332 | VR 332 | G09514 | Federal | OP 1 | 7/1/1988 | | 5,000 | Fieldwood En | 67.0% | PROD |
| VERMILION 315/332 | VR 332 | G09514 | Federal | RT | 7/1/1988 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| VERMILION 315/332 | VR 333 | G14417 | Federal | RT | 7/1/1994 | 11/29/1999 | 4,201 | Fieldwood En Off | 67.0% | TERMIN |
| VIOSCA KNOLL 113 | VK 113 | G16535 | Federal | RT | 6/1/1996 | 2/23/2020 | 5,760 | Fieldwood En Off | 100.0% | TERMIN |
| VIOSCA KNOLL 251/340/384 | VK 251 | G10930 | Federal | OP 1 | 7/1/1989 | | 5,760 | Fieldwood En Off | 100.0% | UNIT |
| VIOSCA KNOLL 251/340/384 | VK 340 | G10933 | Federal | OP 1 | 7/1/1989 | | 5,760 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 100 | WC 100 | G22510 | Federal | RT | 7/1/2001 | 6/13/2018 | 5,000 | Fieldwood En Off | 100.0% | RELINQ |
| WEST CAMERON 289/290/294 | WC 290 | G04818 | Federal | OP 1 | 9/1/1981 | 7/21/2020 | 5,000 | Fieldwood En Off | 50.0% | TERMIN |

**Exhibit II-B**

Exhibit II-B

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST CAMERON 257 #001 | EC25701 | G21580 | 177044102500 |
| GALVESTON 241 #A005 | GA241A05 | G01772 | 427064001500 |
| GALVESTON 241 #A006 | GA241A06 | G01773 | 427064001700 |
| GALVESTON 241 #A010 | GA241A10 | G01773 | 427064001402 |
| GALVESTON 255 #A002 | GA255A02 | G01777 | 427063002300 |
| GALVESTON 255 #A003 | GA255A03 | G01777 | 427064000500 |
| GRAND ISLE 083 #A002 | GI083A02 | G03793 | 177174011002 |
| GRAND ISLE 083 #A003 | GI083A03 | G03793 | 177174030200 |
| GRAND ISLE 083 #B001 | GI083B01 | G03793 | 177174097400 |
| GRAND ISLE 083 #B002 | GI083B02 | G03793 | 177174098000 |
| GRAND ISLE 083 #B003 | GI083B03 | G03793 | 177174098100 |
| HIGH ISLAND A-446 #A001 | HIA446A01 | G02359 | 427094055400 |
| HIGH ISLAND A-446 #A002B | HIA446A02 | G02360 | 427094055700 |
| HIGH ISLAND A-446 #A004 | HIA446A04 | G02359 | 427094056300 |
| HIGH ISLAND A-446 #A005 | HIA446A05 | G02359 | 427094056700 |
| HIGH ISLAND A-446 #A006 | HIA446A06 | G02359 | 427094056700 |
| HIGH ISLAND A-446 #A007 | HIA446A07 | G02359 | 427094056800 |
| HIGH ISLAND A-446 #A008 | HIA446A08 | G02359 | 427094057400 |
| HIGH ISLAND A-446 #A009 | HIA446A09 | G02359 | 427094060200 |
| HIGH ISLAND A-446 #A010 | HIA446A10 | G02359 | 427094058300 |
| HIGH ISLAND A-446 #A011 | HIA446A11 | G02359 | 427094058700 |
| HIGH ISLAND A-446 #A012 | HIA446A12 | G02359 | 427094059400 |
| HIGH ISLAND A-446 #A014 | HIA446A14 | G02359 | 427094060900 |
| HIGH ISLAND A-446 #A015 | HIA446A15 | G02359 | 427094061300 |
| HIGH ISLAND A-446 #A016 | HIA446A16 | G02359 | 427094062300 |
| MAIN PASS 154 #A001 | MP154A01 | G10902 | 177244060400 |
| MAIN PASS 154 #A002 | MP154A02 | G10902 | 177244060000 |
| SOUTH MARSH IS 039 #A001 | SM039A01 | G16320 | 177074077000 |
| SOUTH MARSH IS 039 #B001 | SM039B01 | G16320 | 177074074702 |
| SOUTH MARSH IS 039 #B002 | SM039B02 | G16320 | 177074076102 |
| SOUTH MARSH IS 039 #C001 | SM039C01 | G16320 | 177074077900 |
| SOUTH MARSH IS 039 #C002 | SM039C02 | G16320 | 177074078000 |
| SOUTH MARSH IS 039 #C003 | SM039C03 | G16320 | 177074078200 |
| SOUTH MARSH IS 039 #C004 | SM039C04 | G16320 | 177074810200 |
| SOUTH TIMBALIER 242 #A001 | ST242A01 | G23933 | 177164032800 |
| VERMILION 314 #A009 | VR314A09 | G05438 | 177064076900 |
| VERMILION 332 #A001 | VR332A01 | G09514 | 177064069400 |
| VERMILION 332 #A002 | VR332A02 | G09514 | 177064069900 |
| VERMILION 332 #A003 | VR332A03 | G09514 | 177064072300 |
| VERMILION 332 #A005 | VR332A05 | G09514 | 177064077802 |
| VERMILION 332 #A006 | VR332A06 | G09514 | 177064077901 |
| VERMILION 333 #A004 | VR333A04 | G14417 | 177064072600 |
| VIOSCA KNOLL 113 #A001 | VK113A01 | G16535 | 608164039101 |
| VIOSCA KNOLL 251 #A001 | VK251A001 | G10930 | 608164029800 |
| VIOSCA KNOLL 251 #A002 | VK251A002 | G10930 | 608164034501 |
| VIOSCA KNOLL 251 #A003 | VK251A003 | G10930 | 608164041500 |
| VIOSCA KNOLL 251 #A004 | VK251A004 | G10930 | 608164042101 |
| VIOSCA KNOLL 340 #A001 | VK340A01 | G10933 | 608164038800 |

**Exhibit II-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VIOSCA KNOLL 340 #A002 | VK340A02 | G10933 | 608164044400 |
| WEST CAMERON 100 #A001 | WC100A01 | G22510 | 177004112100 |
| WEST CAMERON 100 #A002 | WC100A02 | G22510 | 177004112602 |
| WEST CAMERON 100 #A003 | WC100A03 | G22510 | 177004117102 |
| WEST CAMERON 100 #A004 | WC100A04 | G22510 | 177004118100 |
| WEST CAMERON 290 #002 | WC29002 | G04818 | 177014018400 |
| WEST CAMERON 290 #A001 | WC290A0100 | G04818 | 177014020700 |
| WEST CAMERON 290 #A002 | WC290A0200 | G04818 | 177014024200 |
| WEST CAMERON 290 #A003 | WC290A0300 | G04818 | 177014029100 |

**Exhibit II-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EAST CAMERON 257 P/F-A | EC257PFA | G21580 | EC257 | 100.0% |
| GALVESTON 255 P/F-A | GA255PFA | G01777 | GA255 | 100.0% |
| GRAND ISLE 083 P/F-A | GI083PFA | G03793 | GI083 | 100.0% |
| GRAND ISLE 083 P/F-B | GI083PFB | G03793 | GI083 | 100.0% |
| HIGH ISLAND A-446 P/F-A | HIA446PFA | G02359 | HIA446 | 100.0% |
| MAIN PASS 154 P/F-A | MP154PFA | G10902 | MP154 | 100.0% |
| SOUTH MARSH IS 039 P/F-A | SM039PFA | G16320 | SM039 | 100.0% |
| SOUTH MARSH IS 039 P/F-B | SM039PFB | G16320 | SM039 | 100.0% |
| SOUTH MARSH IS 039 P/F-C | SM039PFC | G16320 | SM039 | 100.0% |
| SOUTH TIMBALIER 242 P/F-A | ST242PFA | G23933 | ST242 | 60.0% |
| VERMILION 315 P/F-A | VR315PFA | G04215 | VR315 | 100.0% |
| VERMILION 315 P/F-A-AUX | VR315PFAAU | G04215 | VR315 | 100.0% |
| VERMILION 332 P/F-A | VR332PFA | G09514 | VR332 | 80.2% |
| VIOSCA KNOLL 113 P/F-A | VK113PFA | G16535 | VK113 | 100.0% |
| VIOSCA KNOLL 251 P/F-A | VK251PFA | G10930 | VK251 | 100.0% |
| VIOSCA KNOLL 251 P/F-A-AUX | VK251PFAAU | G10930 | VK251 | 100.0% |
| VIOSCA KNOLL 340 P/F-A | VK340PFA | G10933 | VK340 | 100.0% |
| WEST CAMERON 100 P/F-A | WC100APLT | G22510 | WC100 | 100.0% |
| WEST CAMERON 289 P/F-A-PROCESS | WC289APROC | G04818 | WC289 | 0.0% |

**Exhibit II-C(ii)**

None

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15213 | Fieldwood Energy, LLC | BS | 41 | B | BS | 42 | 24" SSTI | 10 | G/C | Partial Abandon | G25383 | G21142 |
| 5911 | Bandon Oil and Gas, LP | GI | 83 | A | GI | 82 | 16 SSTI | 6 | GAS | Permitted for Abandonment | G04355 | G03793 |
| 9006 | Fieldwood Energy, LLC | MP | 112 | #02 | MP | 117 | 08 SSTI | 6 | BLKG | Permitted for Abandonment Approved | G11738 | G09707 |
| 15220 | Fieldwood Energy Offshore LLC | ST | 242 | A | SS | 283 | 24 SSTI | 8 | G/C | Permitted for Abandonment | G26891 | G23933 |
| 19427 | Fieldwood Energy, LLC | VK | 113 | A | CA | 43 | A | 4 | BLKG | | G29321 | G16535 |
| 13721 | Fieldwood Energy, LLC | VK | 251 | A | VK | 340 | A | 3 | AIR | Active | G28704 | G10930 |
| 14876 | Fieldwood Energy, LLC | VK | 251 | A | MP | 154 | A | 4 | H2O | Active | G22465 | G10930 |
| 13720 | Fieldwood Energy Offshore LLC | VK | 340 | 8-inch SSTI | VK | 251 | Platform A | 8 | BLGH | Active | G28703 | G10933 |
| 7298 | Dynamic Industries, Inc | VR | 315 | A | VR | 331 | 06 SSTI | 6 | OIL | Out of Service | G07545 | G04215 |
| 10736 | Dynamic Industries, Inc | VR | 332 | A | VR | 315 | A | 8 | BLKG | Out of Service | G15672 | G09514 |
| 10737 | Dynamic Industries, Inc | VR | 332 | A | VR | 315 | A | 6 | LIFT | Out of Service | G15673 | G09514 |
| 14210 | Fieldwood Energy Offshore LLC | WC | 100 | A | WC | 102 | 30" SSTI | 8 | G/C | Permitted for Abandonment | G24699 | G22510 |
| 13864 | Fieldwood Energy, LLC | WC | 100 | A | WC | 102 | 30 SSTI | 8 | G/C | Permitted for Abandonment Approved | G24253 | G22510 |
| 8621 | Bandon Oil and Gas, LP | WC | 290 | A | WC | 289 | A | 6 | BLKG | Out of Service | G10532 | G04818 |

**Exhibit II-D(ii)**

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|
| GA | 255 | A | 10050 | G30195 | G01777 | Fieldwood Energy Offshore LLC | 06/12/13 | GA 241 A005 & B004 |
| MP | 154 | A | 24171 | G30337 | G10902 | Fieldwood Energy Offshore LLC | 02/03/17 | MP 154 A001 & A002 |
| VR | 315 | A | 22981 | G30213 | G04215 | Fieldwood Energy Offshore LLC | 11/26/13 | VR 332 A001, A002, A005 & A006 |
| VR | 315 | A-AUX | 22981 | G30213 | G04215 | Fieldwood Energy Offshore LLC | 11/26/13 | Production from VR 315 A RUE |
| WC | 289 | A-PROCESS | 23036 | G14262 | G04818 | Fieldwood Energy LLC | 12/03/93 | ROW accessory PF WC 289 A |

**Exhibit II-E**

None

| Contract Type | Contract Date | Contract Title | Contract Description |
|---|---|---|---|
| Land | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement 9/1/1981 |
| Land | 7/2/1986 | FARMOUT AGREEMENT | Farmout Agreement 7/2/1986 |
| Land | 1/1/1987 | Joint Operating Agreement | Joint Operating Agreement 1-1-87 |
| Land | 5/7/1993 | Letter Agreement | Letter Agmt. dated 5-7-1993 b/b Shell Offshore Inc. and Freeport McMoRan Oil and Gas Company. |
| Land | 6/1/1993 | FO | Farmout Agmt. eff. 6-1-1993 b/b Shell Offshore Inc. and Samedan Oil Coporation. |
| Land | 6/11/1993 | Joint Operating Agreement | Operating Agreement eff. 6-11-1993 b/b Samedan Oil Corporation and British Borneo Exploration Inc., et al |
| Land | 1/21/1994 | Unit Operating Agreement | Unit Operating Agreement for the Viosca Knoll .252 Unit, by and between Samedan Oil Corporation, as Operator, and Continental Land &"Fur Co., Inc., dated effective January 21,1994. Preferential Right to Purchase - 15 Days. (Section 26.2) |
| Land | 2/11/1994 | Unit Agreement | Unit Agreement For Outer Continental Shelf Exploration, Development and Production Operations on theViosca Knoll 252 Unit designated Contract No. 754394013, by the Minerals Management Service, dated
effective February 11, 1994, executed by Samedan Oil Corporation (as Unit Operator) and Chevron U.S.A. Inc.(as a working interest owner). |
| Land | 6/6/1994 | Letter Agreement | Letter Agreement, dated June 6, 1994, whereby Chevron U.S.A. Inc. approves, adopts and.recognizes the Unit Operating Agreement, dated January 21, 1994 for the Viosca Knoll 252 Unit |
| Land | 6/9/1994 | Letter Agreement | Letter Agreement, dated June 9, 1994, by and between Chevron U.S.A. Inc., Samedan Oil Corporation and Continental Land & Fur Co., Inc. |
| Land | 9/20/1995 | OA | Operating Agreement eff. 9-20-95 b/b Samedan and Walter |
| Land | 7/1/1996 | JOA | 7.1.1996 SM 39 Joint Operating Agreement, as amended |
| Land | 7/7/1997 | Letter Agreement | Letter Agreement, dated July 7, 1997, by and between Chevron U.S.A. Inc. and Samedan Oil Corporation,concerning of the OCSTG 10930 Well #1 in Viosca Knoll Block 251 to a proposed depth of 22,500' and certain
earning and assignment provisions, more fully described therein. |
| Land | 11/18/1999 | Letter Agreement | Letter Agreement, dated November. 18, 1999, by and between Chevron U.S.A. Inc. and Samedan Oil Corporatidri being a COPAS Amendment to Unit Operating Agreement for the Viosca Knoll 252 Unit concerning
Subpart (i;) of Section m. "Overhead", andimade effective January 1,2000. |
| Land | 8/5/2000 | Transfer Agreement | Transfer of Ownership and Title Agreement, made and entered into August 5, 2000, by and between Bonray,Inc.; Energen Resources Corporation; Forcenergy Inc; Gardner Offshore Corporation; Gulfstar Energy, Inc;;
Gulfstream Energy Services, Inc.; Liberty Energy Gulf Corporation; Range Energy Ventures Corporation; and V.Saia Energy Interests, Inc., as Seller, to Range Resources Corporation and Chevron U.S.A. Inc., concerning the sale of the Main Pass Block 154 Platform "A" and the wells OCS-G 10902 No. A001 and OCS-G 10902 No.
A002, all as more fully described in said document. |
| Land | 8/5/2000 | ABOS | Bill of Sale, Conveyance and Quit Claim, dated effective August 5, 2000, from Energen Resources Corporation to Chevron •U.S.A. Inc., covering Energeh's right, title 'and interests in and to the.'Main Pass Block 154 Platform"A" and the wells OCS-G 10902. No. A001 and OCS-G 10902 No. A002. all as more fully described in said
document. |
| Land | 10/23/2000 | Letter Agreement | Letter Agreement, dated October 23, 2000, between Range Resources Corporation and Chevron U.S.A. Inc.,entitled "Annual Reciprocity Notice Regarding Conveyance to Chevron U.S.A. Inc. of Main Pass Block 154,
South and East Addition Platform "A" arid Two'Wells Thereon, Federal OCS, Offshore Alabama." |
| Land | 12/8/2000 | Letter Agreement | Letter Agreement, dated December 8, 2000 (effective December 1, 2000), by and between Chevron U.S.A. Inc.and Williams Field Services - Gulf COperating Agreementst Company, L.P., whereby Chevron U.S.A. Inc. consents to an
assignment by Williams Field Services - Gulf COperating Agreementst Company, L.P., to its affiliate, Williams Mobile Bay Producer Services, L.L.C. |
| Land | 1/11/2001 | LETTER AGREEMENT | Letter, dated January 11, 2001, from the United States Department of the Interior, Minerals Management Serviceto Chevron U.S.A. Inc., approving the initial participating area plat and Exhibit C for the Viosca Knoll 252 Unit,Agreement No. 754394013, effective November 8, 2000 |
| Land | 11/1/2001 | Letter Agreement | Letter Agreement, dated November 1, 2001, between Range Resources Corporation and Chevron U.S^A. Inc.,entitled "Satisfaction and Accord of Seller's P&A Obligation, Release and Discharge of Surety Bond
Requirement, Amwest Surety Bond No. 15005293, Main Pass Block 154, So. and East Add." |
| Land | 11/3/2001 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional
consent to assign. |
| Land | 1/9/2002 | Letter Agreement | Letter, dated January 9, 2002, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving.a revision to the participating area plat and Exhibit C for the Viosca Knoll 252 Unit, Agreement No. 754394bl'3, effective December 1, 2001. |
| Land | 3/1/2002 | FO | Farmout Agmt. eff. 3-1-2002 b/b Samedan Oil Corporation (Farmor) and Pure Resources, L.P. (Farmee) |
| Land | 6/9/2003 | PA | Participation Agmt. eff. 6-9-2003 b/b Samedan Oil Corporation and CLK Company |
| Land | 8/7/2003 | PA | Exploration Participation Agreement, dated August 7, 2003, by and between Chevron U.S.A. Inc. and'Westport Resources Corporation, as amended, concerning certain Offshore Continental Shelf properties, all as is
more fully, provided'for and described therein. |
| Land | 3/18/2004 | PSA | PSA dated 3-18-04 but eff. 9-1-2003 b/b Noble Energy, Inc. and Northstar Gulfsands, LLC |
| Land | 5/28/2004 | Letter Agreement | Letter, dated May 28, 2004, from the United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision to the participating area plat and Exhibit Cfor theViosca Knoll 252
Unit, Agreement No. 754394013, effective December 1, 2003. |
| Land | 8/1/2004 | Unit Operating Agreement | Amendment and Supplement to?Unit Operating Agreement for the Viosca Knoll 252 Unit, dated August 1,2004, by and between Chevron UiS.A. Inc. and-Noble Energy, Inc |
| Land | 9/1/2004 | JOA | Operating Agreement eff. 9-1-04 |

| | | | |
|---|---|---|---|
| Land | 10/14/2004 | Letter Agreement | Letter Agreement, dated October. 14, 2004, between Ghevron U.S.A. Inc. and Noble Energy,.Inc. concerning Production Handling Agreement Terin's, Viosca Knoll 251 "A' PlatfomvCadillacProspect and any Other Future Non-unit Production |
| Land | 10/28/2004 | PSA | PSA dated 10-28-2004 but eff. 7-1-2004 B/B Eni Deepwater LLC and Northstar Gulfsands, LLC |
| Land | 11/1/2004 | PA | Exploration Participation Agreement, dated November 1, 2004, by and between Chevron U.S.A. Inc. and Newfield Exploration Company, concerning certain Offshore Continental Shelf properties, all as is more fully provided for and described therein |
| Land | 11/18/2004 | Letter Agreement | Letter Agreement, dated November 18; 2004, between Chevron U.S.A. Inc. and Newfield Exploration Company, amendihg'the;terms of Letter Agreement•,dated October f4, 2004, between Chevron U.S.A. Inc. and Noble Energy, Inc. concerning Production Handling Agreement Terms, Viosca knoll.251 "A"' Platform, Cadillac Prospect and any Other Future Non-unit Production: |
| Land | 11/1/2005 | Partition and Redemption Agreement | Partition and Redemption Agmt. dated 11-1-2005 b/b Northstar Gulfsands, LLC and Gulfsands Petroleum USA, Inc. |
| Land | 11/7/2005 | Unit Agreement | Amendment to Unit Agreement, Viosca Knoll Block 252 Unit, Contract No. 754394013, dated November 7, 2005 (effective November 1, 2005) as approved by the Minerals Management Service by letter dated January 10,2007, but made effective November 8, 2006, replacing Exhibits "A", "B" and "C" and Article 13.1 in its entirety (reduction of Unit Area) |
| Land | 12/20/2005 | Letter Agreement | Letter Agreement, dated December 20, 2005, between Noble Energy, Inc. and Ghevron U.S.A. Inc., being a consent.to.disclose confidential data |
| Land | 3/1/2006 | ABOS | ABOS eff. 3-1-2006 b/b Noble Energy, Inc. as Assignor and Coldren Resources LP as Assignee. |
| Land | 1/10/2007 | Letter Agreement | Letter dated January 10, 2007, from the.United States Department of the Interior, Minerals Management Service to Chevron U.S.A. Inc., approving a revision Exhibits "A", "B" and "C" reflecting a change in the Unit Area due to contraction provisions in the Viosca Knoll 252 Unit, Agreement No. 754394013. |
| Land | 7/7/2008 | Acquisition | Stock Purchase Agmt dated July 7, 2008 b/b Northstar E&P, LP and Dynamic Offshore Resources, LLC |
| Land | 7/7/2008 | Letter Agreement | VR 332 A5 Letter Agmt dated July 7, 2008 b/b Northstar Interests, L.C. and Dynamic Offshore Resources, LLC |
| ABOS | 8/1/2011 | ABOS | ABOS eff. 8-1-2011 b/b XTO Offshore Inc. ("Assingor") and Dynamic Offshore Resources, LLC ("Assignee") |
| Land | 11/3/2011 | Letter Agreement | Letter Agreement, dated November 3, 2011, executed between Chevron U.S.A. Inc. (granting party) and Phoenix Exploration Company, LP, Apache Corporation and Castex Offshore, Inc. (grantees), being a conditional consent to assign. |
| Land | 5/2/2012 | Letter Agreement | Letter, dated May 2, 2012 between Newfield Exploration Company and Chevron U.S.A. Inc., being a waiver of confidentiality provision grant by Chevron in favor of Newfield; |
| Land | 7/1/2013 | Acquisition | PURCHASE AND SALE AGREEMENT by and among APACHE CORPORATION,APACHE SHELF, INC., and APACHE DEEPWATER LLC collectively as the Sellers, and FIELDWOOD ENERGY LLCas Buyer and GOM SHELF LLC Dated as of July 18, 2013 |
| Land | 12/1/2013 | Acquisition | Equity Purchase Agreement between Sandridge Energy, Inc., Sandridge Holdings, Inc. and Fieldwood Energy LLC: Fieldwood purchased all companies listed with their assets which included Offshore and SandRidge Legacy South Texas and South Louisiana assets. |
| Land | 10/15/2014 | Release and Settlment Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, Prime Offshore L.L.C., Tammany Oil and Gas LLC and Castex Offshore, Inc. |
| Land | 4/2/2015 | Consent to Disclose Confidential Information | by and between Fieldwood Energy LLC,  Bandon Oil and Gas, LP and Chevron U.S.A. Inc.: VK 252 Unit Area |
| Land | 8/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc. : MP 77, 78 and VK 251, 252, 340   Fields |
| Land | 10/15/2015 | Release and Settlement Agreement | by and between  Fieldwood Energy LLC and Fairways Offshore Exploration, Inc. : Release and Settlement Agreement |
| Land | 12/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC, ENI US Operating Inc,  and ENI Petroleum US LLC: GA 151, SS 246, SS 247, SS 248, SS 249, SS 270, SS 271, VR 78, VR 313, WC 72, WC 100, WC 130 |
| Land | 12/1/2015 | Release and Settlement Agreement | by and between  Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI US Operating Inc. and ENI Petrolem US LLC: Release and Settlement Agreement |
| Land | 8/1/2016 | Letter Agreement | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/1/2016 | Letter Agreement | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: RUE No. OCS-G 22052 for MP 154 surface wells used as disposal wells for VK 252 Unit |
| Land | 8/4/2016 | Letter of No Objection | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 8/4/2016 | Letter of No Objection | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc.: submitted new RUE to rpelace OCS -G 22052, consent by chevron to issuance of new RUE |
| Land | 10/1/2016 | ABOS | by and between  Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: |
| Land | 11/21/2016 | Offer to Purchase | by and between  Fieldwood Energy Offshore LLC and GS E&R America Offshore, LLC: Offer to Purchase GS E &R America Offshore, LLC's Interest in GI 94, SS 79, VR 332 and WD 34 |
| Land | 8/1/2017 | ABOS | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: |
| Land | 9/19/2017 | Offer to Purchase | by and between  Fieldwood Energy Offshore LLC and SCL Resources, LLC: Offer to Purchase SCL Resources, LLC'S Interest in GI 94, SS 79, VR 332 and WD 34 |
| PHA VR 315/VR 332 A01and VR 333 | 10/15/1995 | PRODUCTION HANDLING AGMT | PHA VR 315/VR 332 and VR 333 by and between Fieldwood and CANNAT ENERGY INC. and CANNAT ENERGY INC. |
| PHA VR 315/VR 332A02 and VR 333 | 10/15/1995 | PRODUCTION HANDLING AGMT | PHA VR 315/VR 332 and VR 333 by and between Fieldwood and CANNAT ENERGY INC. and CANNAT ENERGY INC. |
| PHA VR 315/VR 332A05 | 10/15/1995 | PRODUCTION HANDLING AGMT | PHA VR 315/VR 332 and VR 333 by and between Fieldwood and ANKOR E&P HOLDINGS CORPORATION and ANKOR E&P HOLDINGS CORPORATION |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-22 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 6/14/2000 | FACILITIES OPERATING AND MAINTENANCE AGMT | WIL174 OP&MN FEE-VK251A  by and between Fieldwood and WILLIAMS FIELD SERVICES and WILLIAMS FIELD SERVICES |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |

Exhibit II-F

| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | ISCT Contract | ISCT Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 10/1/2014 | IT Gathering | Pelican Pipeline by and between Fieldwood Energy LLC and Targa Midstream Services and Targa Midstream Services |
| Marketing Gas - Transport | 12/12013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2012 | IT Transport &  Discount Letter | Searobin West Discounted Trans =.1758 plus Discounted Gathering .0642 = total discounted rate -$.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2012 | IT Retrograde & Discount Letter | Searobin West Discounted Trans =.1758 plus Discounted Gathering .0642 = total discounted rate -$.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2012 | IT PTR & Discount Letter | Searobin West Discounted Trans =.1758 plus Discounted Gathering .0642 = total discounted rate -$.24 - Discount only for SMI 39 & EI 337 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Marketing Gas-Gathering | 6/14/2000 | Gas Gathering Agreement | Gas Gathering Agreement  by and between Fieldwood Energy LLC and Carbonate Trend and Carbonate Trend |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy Offshore LLC and Third Coast Midstream LLC  (formerly Panther Operating Company, LLC)  and Third Coast Midstream LLC  (formerly Panther Operating Company, LLC) |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement to the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem ownedhy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Dynamic Offshore Resources, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem ownedhy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Dynamic Offshore Resources, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem ownedhy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0065 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |

| | | | |
|---|---|---|---|
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 10/1/2010 | PROCESSING AGREEMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 11/1/2010 | PROCESSING AGREEMENT- 1ST AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 7/24/2012 | PROCESSING AGREEMENT- 2ND AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 10/1/1995 | CONTRUCTION/OPERATING (NI) | CONTRUCTION/OPERATING (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 9/1/2010 | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/18/2010 | BALLOT TO EXTEND MCMORAN GPA THORUGH 12/31/2011 | BALLOT TO EXTEND MCMORAN GPA THORUGH 12/31/2011 by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 12/1/2010 | BALLOT TO AMEND EXHIBIT E TO C&O AGREEMENT | BALLOT TO AMEND EXHIBIT E TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 6/1/2012 | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT | EXHIBIT B-1 COMMITMENT FORM TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/2012 | BALLOT TO APPROVE ENTERPRISE AS PLANT OPERATOR TO C&O AGREEMENT | BALLOT TO APPROVE ENTERPRISE AS PLANT OPERATOR TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/2012 | APPROVAL OF AFES TO C&O AGREEMENT | APPROVAL OF AFES TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 9/25/2013 | BALLOT TO C&O AGREEMENT | BALLOT TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/6/2013 | REVISED EXHIBIT C TO C&O AGREEMENT | REVISED EXHIBIT C TO C&O AGREEMENT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 12/1/2000 | SERVICE-DEHYDRATION (NI) | SERVICE-DEHYDRATION (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 2/1/2000 | SERVICE-FRACTIONATION (NI) | SERVICE-FRACTIONATION (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/1992 | BASE | BASE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/1/1995 | CONSTRUCTION/OPERATING (NI) | CONSTRUCTION/OPERATING (NI) by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/13/1998 | RAW MAKE | RAW MAKE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 11/13/1998 | AMENDMEMT | AMENDMEMT by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/31/2001 | LIQ EXCHANGE | LIQ EXCHANGE by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 2/1/2005 | GAS PROCESSING AGREEMENT | 88/12% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 2/20/2008 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 88/12% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Environmental/Govt | 6/24/2019 | Master Services Contract | – IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 10/2/2019 | Software License Agreement | IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 11/19/2018 | Master Service Contract | Regulatory |
| Environmental/Govt | 11/1/2013 | Master Services Contract | Platform Audits / BSEE Drawings |
| Environmental/Govt | 10/30/2019 | Master Client Agreement | Industry Standards, Analytics, and Research / Subscription Service |
| Environmental/Govt | 11/15/2019 | Order Form | Industry Standards, Analytics, and Research / Subscription Service |
| Land | 10/1/2003 | PSA | By and Between UNOCAL, Pure Resources, L.P., Pure Partners, L.P. and SPN Resources, LLC (Fieldwood SP) |
| Land | 5/16/2001 | JOA | Unocal and Callon dated 5/16/2001 but effective 2/14/2001 |
| Land | 8/1/2010 | JOA | Amdt to JOA dated 5/16/2001 by and between Unocal and Callon |
| Land | 11/28/1979 | OA | McMoRan et al |
| Land | 2/18/2000 | OA | b/b Chevron and Samedan |

**Exhibit II-G**

None

Exhibit III-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| MYETTE POINT - ONSHORE | -- | 14519 | SL - TX | WI | -- | -- | -- | -- | 50.0% | UNIT |
| MYETTE POINT - ONSHORE | -- | 14520 | SL - TX | WI | -- | -- | -- | -- | 50.0% | UNIT |
| MYETTE POINT - ONSHORE | -- | 14914 | SL - TX | WI | -- | -- | -- | -- | 65.6% | UNIT |
| SOUTH PASS 42/43 FED / SL LA | -- | 16869 | SL - LA | WI | -- | -- | -- | -- | 100.0% | PROD |
| EUGENE ISLAND 010 (SL 19269) - (SL LA) | -- | 19266 | SL - LA | WI | -- | -- | -- | -- | 17.3% | ACTIVE |
| FRANKLIN GAP | -- | JMB Partnership | Onshore | | 2/6/2019 | | | | 100.0% | |
| FRANKLIN GAP | -- | JMB Partnership | Onshore | | 2/25/2018 | | | | 100.0% | |
| FRANKLIN GAP | -- | Richardson A Caffery et al | Onshore | | 2/1/2016 | | | | 100.0% | |
| FRANKLIN GAP | -- | Caroline Baker Trust No 1 | Onshore | | 1/22/2016 | | | | 100.0% | |
| ONSHORE/ STATE LEASE | -- | 19051 | SL - LA | ORRI | 8/9/2006 | | | Southern Oil of Louisiana | 0.2% | UNIT |
| WEST CAMERON 009 (SL LA) | -- | 18287 | SL - LA | WI | -- | -- | -- | -- | 44.2% | -- |
| | -- | 17072 | SL - LA | WI | -- | -- | -- | -- | 37.8% | ACTIVE |
| | -- | 42450 | SL - LA | WI | -- | -- | -- | Fieldwood Onshore | 62.5% | TERMINATED |
| | -- | 490100 | SL - LA | WI | -- | -- | -- | 3Ridge Exploration & Produc | 100.0% | SCOPING |
| STATE TRACT 773 | -- | 111650 | SL - TX | | -- | -- | -- | TR Offshore, LLC | 7.2% | ACTIVE |
| STATE TRACT 773 | -- | 115727 | SL - TX | | -- | -- | -- | TR Offshore, LLC | 7.0% | ACTIVE |
| STATE TRACT 773 | -- | 114988 | SL - TX | | -- | -- | -- | TR Offshore, LLC | 7.0% | ACTIVE |
| | -- | 19334 | SL - TX | WI | -- | -- | -- | Elliott Oil & Gas Operating | 75.0% | INJECTION |
| | -- | 136449 | SL - TX | | -- | -- | -- | TR Offshore, LLC | 7.0% | ACTIVE |
| | -- | 09061 | SL - TX | WI | -- | -- | -- | Landon Browning | 33.3% | TERMIN |
| | -- | 168986 | SL - TX | | -- | -- | -- | Fieldwood Onshore | 100.0% | TERMIN |
| | -- | 189098 | SL - TX | | -- | -- | -- | Fieldwood Onshore | 100.0% | TERMIN |
| | -- | 206882 | SL - TX | WI | -- | -- | -- | Fieldwood Onshore | 100.0% | TERMIN |
| BRETON SOUND 52/53 FED / SL LA | -- | 03770 | SL - LA | WI | -- | -- | -- | -- | 50.0% | UNIT |
| BRAZOS A-102/A-105 | BA A-102 | G01754 | Federal | RT | 6/1/1968 | 6/14/2020 | 5,760 | Fieldwood En | 100.0% | TERMIN |
| BRAZOS A-102/A-105 | BA A-105 | G01757 | Federal | RT A | 7/1/1968 | | 5,760 | Fieldwood En | 87.5% | PROD |
| BRAZOS A-102/A-105 | BA A-105 | G01757 | Federal | RT B | 7/1/1968 | | 5,760 | Fieldwood En | 100.0% | PROD |
| BRAZOS A-133 | BA A-133 | G02665 | Federal | RT | 7/1/1974 | | 5,760 | GOM Shelf | 25.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 158 | G02645 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 66.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 159 | G02646 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 66.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 160 | G02647 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 100.0% | PROD |
| EAST BREAKS 158/159/160/161 | EB 161 | G02648 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood SD Off | 100.0% | PROD |
| EAST BREAKS 165 | EB 165 | G06280 | Federal | RT | 10/1/1983 | | 5,760 | Fieldwood SD Off | 100.0% | UNIT |
| EAST BREAKS 165 | EB 209 | G07397 | Federal | RT | 9/1/1984 | | 5,760 | Fieldwood SD Off | 100.0% | UNIT |
| EAST CAMERON 330 | EC 330 | G03540 | Federal | OP 1 | 8/1/1977 | 2/8/2017 | 5,000 | Fieldwood En Off | 50.0% | TERMIN |
| EAST CAMERON 331/332 | EC 331 | G08658 | Federal | OP 1 | 8/1/1987 | | 5,000 | Fieldwood En Off | 92.8% | TERMIN |
| EAST CAMERON 331/332 | EC 331 | G08658 | Federal | OP 2 | 8/1/1987 | | 5,000 | Fieldwood En Off | 92.8% | TERMIN |
| EAST CAMERON 331/332 | EC 332 | G09478 | Federal | RT | 5/1/1988 | | 5,000 | Fieldwood En Off | 88.0% | TERMIN |
| EAST CAMERON 331/332 | EC 332 | G09478 | Federal | OP 1 | 5/1/1988 | | 5,000 | Fieldwood En Off | 88.0% | TERMIN |
| EAST CAMERON 349 | EC 349 | G14385 | Federal | OP 1 | 5/1/1994 | | 5,000 | W & T Off | 25.0% | PROD |
| EAST CAMERON 349 | EC 350 | G15157 | Federal | OP 1 | 9/1/1995 | 12/27/2001 | 5,000 | W & T Off | 25.0% | TERMIN |
| EAST CAMERON 349 | EC 356 | G13592 | Federal | RT | 9/1/1992 | 12/29/1999 | 5,000 | Fieldwood En Off | 25.0% | TERMIN |
| EAST CAMERON 371 | EC 371 | G02267 | Federal | CONT | 2/1/1973 | 3/31/2010 | 5,000 | Talos ERT | 25% | TERMIN |
| EUGENE IS. 100 | EI 100 | 00796 | Federal | Contractual | 5/1/1960 | -- | 5,000 | Fieldwood En | 100.0% | PROD |
| EUGENE IS. 173/174/175 | EI 175 | 00438 | Federal | OP 1 | 12/1/1954 | | 5,000 | Fieldwood En | 25.0% | PROD |
| EUGENE IS. 307 | EI 307 | G02110 | Federal | RT | 2/1/1971 | 11/4/2019 | 2,500 | Fieldwood En Off | 25.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 311 | G27918 | Federal | RT | 7/1/2006 | 9/27/2012 | 5,000 | Dynamic Off Res | 60.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | EI 312 | G22679 | Federal | OP 1 | 6/1/2001 | 8/7/2020 | 5,000 | Fieldwood En | 60.0% | TERMIN |
| EUGENE IS. 32 | EI 32 | 00196 | Federal | OP 1 | 11/26/1946 | | 5,000 | Cox Op | 23.7% | PROD |
| EUGENE IS. 330 | EI 330 | G02115 | Federal | Contractual | 1/1/1971 | | 5,000 | Fieldwood En | 17.0% | UNIT |
| EUGENE IS. 342/343 | EI 342 | G02319 | Federal | RT A | 2/1/1973 | | 5,000 | Fieldwood En | 50.0% | TERMIN |
| EUGENE IS. 53 | EI 53 | 00479 | Federal | OP 1 | 12/1/1954 | | 5,000 | Fieldwood En | 11.1% | PROD |
| EUGENE IS. 62/63/77 | EI 63 | 00425 | Federal | RT | 12/1/1954 | 10/20/2003 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| EWING BANK 782/826 / ST 291 | EW 782 | G05793 | Federal | CONT | 7/1/1983 | 3/25/1994 | 1093 | Fieldwood En | 100.0% | TERMIN |
| GALVESTON 151 | GA 151 | G15740 | Federal | RT | 11/1/1995 | 4/12/2016 | 4,804 | Fieldwood En | 33.0% | TERMIN |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 1 | 12/1/2003 | | 5,760 | Fieldwood En | 16.7% | PROD |
| GALVESTON 210 | GA 210 | G25524 | Federal | OP 3 | 12/1/2003 | | 5,760 | Fieldwood En | 33.0% | PROD |
| GALVESTON A-155 | GA A-155 | G30654 | Federal | RT | 10/1/2006 | 5/14/2018 | 5,760 | Peregrine O&G | 10.8% | TERMIN |
| GREEN CANYON 157 | GC 157 | G24154 | Federal | RT | 6/1/2002 | 8/15/2020 | 5760 | LLOG Exp Off | 15.0% | TERMIN |
| GREEN CANYON 157 | GC 201 | G12210 | Federal | OP | 5/1/1990 | | 5760 | Fieldwood En Off | 15.0% | UNIT |
| GREEN CANYON 200 (Troika) | GC 245 | G05916 | Federal | CONT | 7/1/1983 | | 5760 | Fieldwood En Off | 100.0% | PROD |
| GREEN CANYON 64/65/108/109/243 | GC 64 | G07005 | Federal | CONT | 6/1/1984 | 5/29/1998 | 5760 | Fieldwood En Off | 49.0% | RELINQ |
| HIGH IS. A-341 | HI A-341 | G25605 | Federal | RT | 12/1/2003 | | 5,760 | Fieldwood En | 40.0% | PROD |
| HIGH IS. A-365/A-376 | HI A-365 | G02750 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 49.6% | PROD |
| HIGH IS. A-365/A-376 | HI A-376 | G02754 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 55.4% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-382 | G02757 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 27.6% | PROD |
| HIGH IS. A-474 | HI A-474 | G02366 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 12.0% | TERMIN |
| HIGH ISLAND A-474/489 | HI A-475 | G02367 | Federal | CONT | 8/1/1973 | 12/25/1999 | 5,760 | McMoRan O&G | 12.0% | TERMIN |
| HIGH IS. A-474 | HI A-489 | G02372 | Federal | RT | 8/1/1973 | 2/28/2017 | 5,760 | McMoRan O&G | 12.0% | TERMIN |
| HIGH ISLAND A-510 | HI A-531 | G02696 | Federal | OP 1 | 7/1/1974 | 11/6/2016 | 5,760 | Fieldwood En Off | 75.0% | TERMIN |
| HIGH IS. A-550 | HI A-550 | G04081 | Federal | RT | 10/1/1979 | | 5,760 | Fieldwood En Off | 100.0% | PROD |
| HIGH IS. A-550 | HI A-550 | G04081 | Federal | OP 1 | 10/1/1979 | | 5,760 | Fieldwood En Off | 100.0% | PROD |
| HIGH IS. A-550 | HI A-550 | G04081 | Federal | OP 2 | 10/1/1979 | | 5,760 | Fieldwood En Off | 100.0% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-563 | G02388 | Federal | RT | 8/1/1973 | | 5,760 | Cox Op | 2.0% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-564 | G02389 | Federal | OP 1 | 8/1/1973 | 4/18/1998 | 5,760 | Fieldwood En | 24.1% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-572 | G02392 | Federal | RT | 8/1/1973 | 5/18/2006 | 5,760 | Fieldwood En | 27.6% | TERMIN |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-573 | G02393 | Federal | RT | 8/1/1973 | | 5,760 | Fieldwood En | 27.6% | PROD |
| HIGH IS. A-563 (563/564/581/582) | HI A-581 | G02859 | Federal | RT | 12/1/1997 | 7/7/2005 | 5,760 | Cox Op | 2.0% | TERMIN |
| HIGH IS. A-563 (563/564/581/582) | HI A-582 | G02719 | Federal | OP 1 | 7/1/1974 | | 5,760 | Cox Op | 2.3% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-595 | G02721 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 27.6% | PROD |
| HIGH IS. A-573 (382/572/573/595/596) | HI A-596 | G02722 | Federal | RT | 7/1/1974 | | 5,760 | Fieldwood En | 27.6% | PROD |
| MOBILE BAY 861 | MO 861 | G05062 | Federal | RT | 4/1/1982 | 10/13/2009 | 5,198 | Providence Res GOM 2 | 100.0% | TERMIN |
| MOBILE BAY 861 | MO 861 | G05062 | Federal | OP 1 | 4/1/1982 | 10/13/2009 | 5,198 | Providence Res GOM 2 | 50.0% | TERMIN |
| MAIN PASS 101 | MP 101 | G22792 | Federal | RT | 7/1/2001 | 9/5/2014 | 4,995 | Fieldwood En Off | 77.5% | TERMIN |
| MAIN PASS 109 | MP 109 | G22794 | Federal | OP 1 | 5/1/2001 | 4/1/2016 | 4,995 | W & T Off | 33.3% | TERMIN |
| MAIN PASS 109 | MP 109 | G22794 | Federal | OP 2 | 5/1/2001 | 4/1/2016 | 4,995 | W & T Off | 33.3% | TERMIN |
| MAIN PASS 77 | MP 77 | G04481 | Federal | RT | 1/1/1980 | | 4,655 | Fieldwood En Off | 73.8% | RELINQ |
| SOUTH PELTO 13 | PL 13 | G03171 | Federal | OP 3 | 7/1/1975 | 5/23/2018 | 5,000 | ANKOR En | 2.0% | TERMIN |
| VERMILION 272 / SOUTH MARSH 102 | SM 102 | G24872 | Federal | RT | 5/1/2003 | | 3,113 | Fieldwood En Off | 100.0% | PROD |
| SOUTH MARSH IS. 132 | SM 132 | G02282 | Federal | RT | 2/1/1973 | 4/1/2016 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 135 | G19776 | Federal | RT | 5/1/1998 | 2/18/2012 | 3,293 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 136 | G02588 | Federal | RT | 5/1/1974 | 8/4/2019 | 2,500 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 137 | G02589 | Federal | RT | 5/1/1974 | 6/30/2015 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 147 | SM 139 | G21106 | Federal | OP 1 | 7/1/1999 | 8/22/2020 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | SM 142 | G01216 | Federal | RT | 6/1/1962 | 8/7/2020 | 2,761 | Fieldwood En | 86.1% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | SM 142 | G01216 | Federal | OP 1 | 6/1/1962 | 8/7/2020 | 2,761 | Fieldwood En | 86.1% | TERMIN |
| SOUTH MARSH IS. 142 / EUGENE IS. 312 | SM 143 | G01217 | Federal | CONT | 5/1/1962 | 7/17/1997 | 2,738 | Fieldwood En | 16.0% | TERMIN |
| SOUTH MARSH IS. 147 | SM 146 | G09546 | Federal | RT | 7/1/1988 | 6/17/2020 | 5,000 | Dynamic Off Res | 100.0% | TERMIN |
| SOUTH MARSH IS. 147 | SM 147 | G06693 | Federal | RT | 7/1/1984 | 1/14/2011 | 5,000 | Fieldwood En | 50.0% | TERMIN |
| SOUTH MARSH IS. 136/137/149/150 | SM 150 | G16325 | Federal | RT | 6/1/1996 | 5/22/2018 | 3,329 | Fieldwood En | 50.0% | RELINQ |
| SOUTH MARSH IS. 268/269/280/281 | SM 268 | G02310 | Federal | RT | 9/1/1993 | 9/7/2009 | 3,237 | Fieldwood En | 30.1% | TERMIN |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | RT | 1/1/1973 | | 5,000 | Fieldwood En | 17.7% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | RT | 1/1/1973 | | 5,000 | Fieldwood En | 9.1% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 269 | G02311 | Federal | RT | 1/1/1973 | | 5,000 | Fieldwood En | 0.4% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 1 | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 280 | G14456 | Federal | OP 3 | 6/1/1994 | | 5,000 | Fieldwood En | 50.0% | PROD |
| SOUTH MARSH IS. 268/269/280/281 | SM 281 | G02600 | Federal | RT | 4/1/1974 | | 3,214 | Fieldwood En | 31.9% | PROD |

Exhibit III-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| SOUTH MARSH IS. 66 | SM 66 | G01198 | Federal | RT | 6/1/1962 | 9/25/2019 | 5,000 | Fieldwood En Off | 50.0% | TERMIN |
| VERMILION 272 / SOUTH MARSH 102 | SM 87 | G24870 | Federal | RT | 5/1/2003 | | 3,077 | Castex Off | 100.0% | PROD |
| SOUTH PASS 60 | SP 17 | G02938 | Federal | RT | 11/1/1974 | | 962 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 37 | SP 37 | 00697 | Federal | OP 1 | 10/1/1959 | -- | 2,500 | Whitney O&G | 44.0% | PROD |
| SOUTH PASS 42/43 FED / SL LA | SP 42 | 03011 | SL LA | WI | | -- | -- | -- | 100.0% | SOP |
| SOUTH PASS 60 | SP 59 | G02942 | Federal | RT | 11/1/1974 | | 1,657 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 59 | G02943 | Federal | RT | 11/1/1974 | | 907 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 59, SP 60 | G01608 | Federal | RT | 4/1/1967 | | 3,510 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 6 | G03337 | Federal | RT | 4/1/1976 | | 318 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 6 | G03337 | Federal | OP | 4/1/1976 | | 318 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 60 | G02137 | Federal | RT | 11/1/1971 | | 1,762 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 61 | G01609 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH PASS 60 | SP 61 | G01609 | Federal | OP 1 | 7/1/1967 | | 5,000 | Fieldwood En | 100.0% | UNIT |
| SOUTH PASS 60 | SP 66 | G01611 | Federal | RT | 6/1/1967 | | 4,310 | Fieldwood En Off | 100.0% | UNIT |
| SOUTH PASS 60 | SP 67 | G01612 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En Off | 100.0% | UNIT |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | OP 1 | 1/1/1955 | 2/25/2020 | 5,000 | W & T Off | 3.0% | TERMIN |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | OP 2 | 1/1/1955 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | RT | 1/1/1955 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 149 | SS 149 | 00434 | Federal | OP 2 | 1/1/1955 | 2/25/2020 | 5,000 | W&T Off | 3.0% | TERMIN |
| SHIP SHOAL 169/182/193/194 | SS 169 | 00820 | Federal | RT | 4/1/1960 | | 5,000 | Fieldwood En | 100.0% | PROD |
| SHIP SHOAL 177 | SS 177 | 00590 | Federal | RT | 9/1/1955 | | 5,000 | W & T Off | 25.0% | PROD |
| SHIP SHOAL 189 | SS 189 | G04232 | Federal | OP 5 | 12/1/1979 | | 5,000 | Fieldwood En | 1.0% | PROD |
| SHIP SHOAL 204 | SS 204 | G01520 | Federal | RT | 7/1/1962 | | 5,000 | Fieldwood En | 20.9% | PROD |
| SHIP SHOAL 204 | SS 204 | G01520 | Federal | RT | 7/1/1962 | | 5,000 | Fieldwood En | 0.2% | PROD |
| SHIP SHOAL 190/206/216 | SS 206 | G01522 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 40.0% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 27.5% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 0.3% | UNIT |
| SHIP SHOAL 190/206/216 | SS 207 | G01523 | Federal | OP | 7/1/1967 | | 5,000 | Fieldwood En | 0.3% | UNIT |
| SHIP SHOAL 214 | SS 214 | 00828 | Federal | RT | 5/1/1960 | | 5,000 | W & T Off | 35.5% | PROD |
| SHIP SHOAL 214 | SS 214 | 00828 | Federal | OP 1 | 5/1/1960 | | 5,000 | W & T Off | 13.5% | PROD |
| SHIP SHOAL 190/206/216 | SS 216 | G01524 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 19.7% | PROD |
| SHIP SHOAL 190/206/216 | SS 216 | G01524 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En | 0.3% | PROD |
| SHIP SHOAL 233/238 | SS 232 | G01529 | Federal | RT | 9/1/1995 | 2/10/2012 | 5,000 | W & T Off | 33.8% | TERMIN |
| SHIP SHOAL 233/238 | SS 233 | G01528 | Federal | RT | 7/1/1967 | | 5,000 | W & T Off | 33.8% | PROD |
| SHIP SHOAL 233/238 | SS 238 | G03169 | Federal | RT | 7/1/1975 | | 5,000 | W & T Off | 34.5% | PROD |
| SHIP SHOAL 233/238 | SS 238 | G03169 | Federal | OP 2 | 7/1/1975 | | 5,000 | Peregrine O&G II | 34.5% | PROD |
| SHIP SHOAL 246/247/248/270/271 | SS 246 | G01027 | Federal | OP 11 | 6/1/1962 | | 5,000 | Fieldwood En Off | 80.7% | TERMIN |
| SHIP SHOAL 246/247/248/270/271 | SS 246 | G01027 | Federal | OP 13 | 6/1/1962 | | 5,000 | Fieldwood En Off | 76.8% | TERMIN |
| SHIP SHOAL 246/247/248/270/271 | SS 247 | G01028 | Federal | RT B | 6/1/1962 | | 5,000 | Fieldwood En Off | 89.2% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 247 | G01028 | Federal | RT C | 6/1/1962 | | 5,000 | Fieldwood En Off | 77.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 248 | G01029 | Federal | RT B | 6/1/1962 | | 5,000 | Fieldwood En Off | 77.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En Off | 79.7% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 249 | G01030 | Federal | OP 2 | 6/1/1962 | | 5,000 | Fieldwood En Off | 68.8% | UNIT |
| SHIP SHOAL 252/253 | SS 252 | G01529 | Federal | RT | 7/1/1967 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 252 | G01529 | Federal | OP 1 | 7/1/1967 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 252 | G01529 | Federal | OP 2 | 7/1/1967 | | 5,000 | Fieldwood En Off | 31.9% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | RT | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 2 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 4 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 252/253 | SS 253 | G01031 | Federal | OP 5 | 6/1/1962 | | 5,000 | Fieldwood En Off | 100.0% | PROD |
| SHIP SHOAL 246/247/248/270/271 | SS 270 | G01037 | Federal | RT | 3/13/1962 | | 5,000 | Fieldwood En Off | 89.2% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 271 | G01038 | Federal | RT | 3/13/1962 | | 5,000 | Fieldwood En Off | 72.3% | UNIT |
| SHIP SHOAL 246/247/248/270/271 | SS 271 | G01038 | Federal | OP | 3/13/1962 | | 5,000 | Fieldwood En Off | 72.3% | UNIT |
| SHIP SHOAL 300/314/315 | SS 291 | G02923 | Federal | RT B | 12/1/1974 | | 3,750 | Fieldwood En | 15.4% | OPERNS |
| SHIP SHOAL 300/314/315 | SS 300 | G07760 | Federal | RT | 8/1/1985 | | 5,000 | W & T Off | 24.3% | PROD |
| SHIP SHOAL 300/314/315 | SS 315 | G09631 | Federal | RT | 6/1/1988 | | 5,000 | W & T Off | 25.0% | PROD |
| | ST 169 | G01253 | Federal | RT | 6/1/1962 | 1/8/2010 | 4,708 | Beryl O&G | 100.0% | TERMIN |
| SOUTH TIMBALIER 195 | ST 195 | G03593 | Federal | RT | 8/1/1977 | 2/5/2019 | 5,000 | Fieldwood En Off | 100.0% | TERMIN |
| SOUTH TIMBALIER 316 | ST 315 | G23946 | Federal | RT | 7/1/2002 | | 4,458 | W & T Off | 50.0% | PROD |
| SOUTH TIMBALIER 316 | ST 316 | G22762 | Federal | RT | 6/1/2001 | | 4,435 | W & T Off | 40.0% | PROD |
| VIOSCA KNOLL 780 | VK 824 | G15436 | Federal | CONT | 9/1/1995 | 8/20/2013 | 5,760 | Fieldwood En | 6.1% | RELINQ |
| VIOSCA KNOLL 826 (NEPTUNE) | VK 826 | G06888 | Federal | RT | 8/1/1994 | 5/16/2018 | 5,760 | Fieldwood En | 100.0% | PROD |
| VK0826-VIOSCA KNOLL 826 (NEPTUNE) SWO | VK 917 | G15441 | Federal | OP | 7/1/1995 | | 5760 | Fieldwood En | 85.0% | PROD |
| VIOSCA KNOLL 917 / 962 (SWORDFISH) | VK 962 | G15445 | Federal | OP 1 | 7/1/1995 | 8/4/2019 | 5760 | Fieldwood En | 85.0% | PROD |
| VERMILION 196 | VR 196 | G19760 | Federal | RT | 8/1/1998 | | 5,000 | Fieldwood En Off | 63.1% | TERMIN |
| VERMILION 196 | VR 207 | G19761 | Federal | OP 1 | 8/1/1998 | 7/27/2009 | 5,000 | Fieldwood En | 46.4% | RELINQ |
| VERMILION 261/262 | VR 261 | G03328 | Federal | RT | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 25.0% | RELINQ |
| VERMILION 261/262 | VR 261 | G03328 | Federal | OP 1 | 4/1/1976 | 8/10/2020 | 5,429 | Fieldwood En | 25.0% | RELINQ |
| VERMILION 261/262 | VR 262 | G34257 | Federal | RT | 10/1/2012 | 7/7/2017 | 5,485 | Fieldwood En | 25.0% | RELINQ |
| VERMILION 272 / SOUTH MARSH 102 | VR 272 | G23829 | Federal | RT | 6/1/2002 | | 4,381 | Fieldwood En Off | 100.0% | PROD |
| VERMILION 272 / SOUTH MARSH 102 | VR 273 | G14412 | Federal | OP 3 | 5/1/1994 | 6/1/2010 | 5,000 | Fieldwood En Off | 100.0% | PROD |
| VERMILION 279 | VR 279 | G11881 | Federal | OP 1 | 5/1/1994 | | 5,000 | Talos En Off | 50.0% | TERMIN |
| VERMILION 313 | VR 313 | G01172 | Federal | OP 1 | 6/1/1962 | | 5,000 | Fieldwood En | 33.2% | TERMIN |
| VERMILION 313 | VR 313 | G01172 | Federal | OP 2 | 6/1/1962 | | 5,000 | Fieldwood En | 33.2% | TERMIN |
| VERMILION 408 | VR 408 | G15212 | Federal | CONT | 7/1/1995 | | 5,000 | Fieldwood En | 33.2% | PROD |
| WEST CAMERON 171 | WC 171 | G01997 | Federal | RT | 1/1/1971 | 1/31/2014 | 5,000 | XTO | 33.5% | TERMIN |
| WEST CAMERON 295 | WC 295 | G24730 | Federal | OP 1 | 5/1/2003 | | 5,000 | Fieldwood En | 13.8% | PROD |
| WEST CAMERON 485/507 | WC 485 | G02220 | Federal | RT | 2/1/1973 | | 5,000 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 498 | WC 498 | G03520 | Federal | RT | 8/1/1977 | | 5,000 | Cox Op | 3.7% | PROD |
| WEST CAMERON 485/507 | WC 507 | G02549 | Federal | RT | 4/1/1974 | | 2,500 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 485/507 | WC 507 | G10594 | Federal | OP 1 | 4/1/1974 | | 2,500 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 485/507 | WC 507 | G10594 | Federal | OP 1 | 6/1/1989 | | 2,500 | Fieldwood En Off | 100.0% | UNIT |
| WEST CAMERON 35/65/66 | WC 65 | G02825 | Federal | OP | 12/1/1974 | | 5,000 | Fieldwood En | 18.8% | PROD |
| WEST CAMERON 35/65/66 | WC 66 | G02826 | Federal | OP 2 | 12/1/1974 | | 3,750 | Fieldwood En | 18.8% | PROD |
| | WC 67 | G02556 | Federal | CONT | 9/1/1975 | | 5,000 | Fieldwood En | 17.5% | TERMIN |
| WEST CAMERON 71/72/102 | WC 72 | G23735 | Federal | RT | 7/1/2002 | | 5,000 | Talos | 75.0% | PROD |
| | WC 96 | G23740 | Federal | OP 1 | 5/1/2002 | | 5,000 | Talos | 25.0% | UNIT |
| WEST DELTA 90/103 | WD 103 | G12360 | Federal | OP 1 | 5/1/1960 | | 1,016 | Fieldwood En Off | 16.0% | PROD |
| WEST DELTA 121/122 | WD 121 | G19843 | Federal | OP 1 | 8/1/1998 | | 5,000 | Fieldwood En Off | 16.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 1 | 8/1/1992 | | 5,000 | Fieldwood En Off | 16.0% | PROD |
| WEST DELTA 121/122 | WD 122 | G13645 | Federal | OP 2 | 8/1/1992 | | 5,000 | Fieldwood En Off | 16.0% | PROD |
| WEST DELTA 27 | WD 27 | G04473 | Federal | RT B | 11/1/1980 | | 5,000 | Cox Op | 13.8% | PROD |
| WEST DELTA 79/80 | ST, WD 79, WC | G01449 | Federal | RT | 5/1/1966 | | 3,125 | Fieldwood En | 100.0% | UNIT |
| WEST DELTA 63/64 | WD 63 | G19839 | Federal | OP 1 | 8/1/1998 | 5/25/2016 | 5,000 | Peregrine O&G | 12.5% | RELINQ |
| WEST DELTA 63/64 | WD 64 | G25008 | Federal | RT | 5/1/2003 | 2/21/2017 | 5,000 | Peregrine O&G | 5.9% | TERMIN |
| WEST DELTA 73/74 | WD 73 | G01083 | Federal | OP 2 | 6/1/1962 | | 5,000 | Cox Op | 5.9% | UNIT |
| WEST DELTA 73/74 | WD 74 | G01084 | Federal | RT | 6/1/1962 | | 5,000 | Cox Op | 5.9% | UNIT |
| WEST DELTA 79/80 | WD 79, WD 80 | G01874 | Federal | RT | 12/1/1968 | | 3,438 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 79/80 | WD 80 | G01989 | Federal | RT | 8/1/1970 | | 1,875 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 79/80 | WD 80 | G02136 | Federal | RT | 1/1/1972 | | 938 | Fieldwood En Off | 100.0% | UNIT |
| WEST DELTA 86 | WD 85 | G04895 | Federal | RT | 12/1/1981 | 5/9/2019 | 2,630 | Fieldwood En | 24.3% | TERMIN |
| WEST DELTA 86 | WD 85 | G04895 | Federal | OP 1 | 12/1/1981 | 5/9/2019 | 2,630 | Fieldwood En | 24.3% | TERMIN |
| WEST DELTA 86 | WD 86 | G02934 | Federal | RT | 12/1/1974 | 8/30/2010 | 2,500 | SPN Res | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G04243 | Federal | RT | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En Off | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G04243 | Federal | OP 1 | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En Off | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G04243 | Federal | OP 2 | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En Off | 100.0% | TERMIN |
| WEST DELTA 86 | WD 86 | G04243 | Federal | OP 3 | 1/1/1980 | 6/27/2020 | 2,500 | Fieldwood En Off | 100.0% | TERMIN |

Exhibit III-A

| Field | Block | Lease | Type | Rights | Date Le Eff | Date Le Exp | Le Cur Acres (Ac) | Operator | WI | Lease Status |
|---|---|---|---|---|---|---|---|---|---|---|
| WEST DELTA 90/103 | WD 90 | G01089 | Federal | OP 3 | 6/1/1962 | | 5,000 | Fieldwood En | 18.8% | PROD |
| GREEN CANYON 200 (Troika) | GC 201 | G12210 | Federal | RT NE4 | 5/1/1990 | | 5760 | Fieldwood En Off | 100.0% | UNIT |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| ACOM O H EST GU 3R | ACOMGU3 | 168986 | 42071321150 |
| ARCO SANGER EST 5 | ARCOSANG5 | 09061 | 422973358000 |
| BRAZOS A-102 #A002 | BAA102A02 | G01754 | 427054002500 |
| BRAZOS A-105 #002 | BAA105002 | G01757 | 427054000400 |
| BRAZOS A-105 #A001 | BAA105A01 | G01757 | 427054003100 |
| BRAZOS A-105 #A003 | BAA105A03 | G01757 | 427054002900 |
| BRAZOS A-105 #A004 | BAA105A04 | G01757 | 427054003000 |
| BRAZOS A-105 #A005 | BAA105A05 | G01757 | 427054003200 |
| BRAZOS A-105 #B001 | BAA105B010 | G01757 | 427054012200 |
| BRAZOS A-105 #B002 | BAA105B020 | G01757 | 427054012600 |
| BRAZOS A-105 #B003 | BAA105B030 | G01757 | 427054012800 |
| BRAZOS A-105 #B004 | BAA105B040 | G01757 | 427054013000 |
| BRAZOS A-105 #B005 | BAA105B050 | G01757 | 427054013300 |
| BRAZOS A-133 #A001 | BAA133A010 | G02665 | 427054002400 |
| BRAZOS A-133 #A002 | BAA133A020 | G02665 | 427054003300 |
| BRAZOS A-133 #A003 | BAA133A030 | G02665 | 427054003500 |
| BRAZOS A-133 #A004 ST1 | BAA133A041 | G02665 | 427054004301 |
| BRAZOS A-133 #A005 ST1 | BAA133A051 | G02665 | 427054004001 |
| BRAZOS A-133 #A006 | BAA133A060 | G02665 | 427054004500 |
| BRAZOS A-133 #A007 | BAA133A070 | G02665 | 427054004800 |
| BRAZOS A-133 #A008 | BAA133A080 | G02665 | 427054005200 |
| BRAZOS A-133 #A009 | BAA133A090 | G02665 | 427054005400 |
| BRAZOS A-133 #A010 | BAA133A100 | G02665 | 427054013100 |
| BRAZOS A-133 #C001 | BAA133C010 | G02665 | 427054007800 |
| BRAZOS A-133 #C002 | BAA133C020 | G02665 | 427054008200 |
| BRAZOS A-133 #C003 | BAA133C030 | G02665 | 427054010700 |
| BRAZOS A-133 #C004 | BAA133C040 | G02665 | 427054013500 |
| BRAZOS A-133 #D001 ST1 | BAA133D011 | G02665 | 427054009201 |
| BRAZOS A-133 #D003 | BAA133D030 | G02665 | 427054012700 |
| BRETON SOUND 053 #001 SL3770 | SL0377001 | 03770 | 1.7726E+11 |
| BRETON SOUND 053 #007 SL 3770 | SL0377007 | 03770 | 177262015800 |
| BRETON SOUND 053 #008 SL 3770 | SL0377008 | 03770 | 177262016300 |
| EAST BREAKS 158 #A003 | EB158A03 | G02645 | 608044004104 |
| EAST BREAKS 158 #A007 | EB158A07 | G02645 | 608044005100 |
| EAST BREAKS 158 #A012 | EB158A12 | G02645 | 608044005601 |
| EAST BREAKS 158 #A014 | EB158A14 | G02645 | 608044005901 |
| EAST BREAKS 159 #A002 | EB159A02 | G02646 | 608044003800 |
| EAST BREAKS 159 #A005 | EB159A05 | G02646 | 608044004503 |
| EAST BREAKS 159 #A006 | EB159A06 | G02646 | 608044004401 |
| EAST BREAKS 159 #A009 | EB159A09 | G02646 | 608044005200 |
| EAST BREAKS 159 #A011 | EB159A11 | G02646 | 608044005400 |
| EAST BREAKS 159 #A017 | EB159A17 | G02646 | 608044018300 |
| EAST BREAKS 160 #A005 HB-2 | EB160A05 | G02647 | 608044003700 |
| EAST BREAKS 160 #A009 HB2 | EB160A09 | G02647 | 608044005800 |
| EAST BREAKS 160 #A010 GA1 | EB160A10 | G02647 | 608044008702 |
| EAST BREAKS 160 #A016 | EB160A16 | G02647 | 608044006000 |
| EAST BREAKS 160 #A018 ST4 | EB160A18 | G02647 | 608044006904 |
| EAST BREAKS 160 #A023 | EB160A23 | G02647 | 608044003900 |
| EAST BREAKS 160 #A025 | EB160A25 | G02647 | 608044004600 |
| EAST BREAKS 160 #A027 HB2 | EB160A27 | G02647 | 608044004900 |
| EAST BREAKS 160 #A031 HB2 | EB160A31 | G02647 | 608044008400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST BREAKS 160 #A033 ST TA | EB160A33 | G02647 | 608044007002 |
| EAST BREAKS 161 #002 (CORONA) | EB16102 | G02648 | 608044022600 |
| EAST BREAKS 161 #A001 ST | EB161A01 | G02648 | 608044002801 |
| EAST BREAKS 161 #A002 | EB161A02 | G02648 | 608044003100 |
| EAST BREAKS 161 #A003 HB4 | EB161A03 | G02648 | 608044002900 |
| EAST BREAKS 161 #A007 GM1 | EB161A07 | G02648 | 608044004300 |
| EAST BREAKS 161 #A008 HB2 | EB161A08 | G02648 | 608044004800 |
| EAST BREAKS 161 #A013 ST | EB161A13 | G02648 | 608044024501 |
| EAST BREAKS 161 #A029 GA3 | EB161A29 | G02648 | 608044005300 |
| EAST BREAKS 165 #A001 | EB165A01 | G06280 | 608044010800 |
| EAST BREAKS 165 #A002 | EB165A02 | G06280 | 608044010900 |
| EAST BREAKS 165 #A003 | EB165A03 | G06280 | 608044011100 |
| EAST BREAKS 165 #A004 | EB165A04 | G06280 | 608044011200 |
| EAST BREAKS 165 #A005 | EB165A05 | G06280 | 608044011300 |
| EAST BREAKS 165 #A007 | EB165A07 | G06280 | 608044011700 |
| EAST BREAKS 165 #A008 | EB165A08 | G06280 | 608044011600 |
| EAST BREAKS 165 #A009 | EB165A09 | G06280 | 608044011900 |
| EAST BREAKS 165 #A010 | EB165A10 | G06280 | 608044011802 |
| EAST BREAKS 165 #A011 | EB165A11 | G06280 | 608044012300 |
| EAST BREAKS 165 #A012 | EB165A12 | G06280 | 608044012200 |
| EAST BREAKS 165 #A014 | EB165A14 | G06280 | 608044012501 |
| EAST BREAKS 165 #A015 | EB165A15 | G06280 | 608044012800 |
| EAST BREAKS 165 #A017 | EB165A17 | G06280 | 608044013100 |
| EAST BREAKS 165 #A018 | EB165A18 | G06280 | 608044013201 |
| EAST BREAKS 165 #A019 | EB165A19 | G06280 | 608044013302 |
| EAST BREAKS 165 #A020 | EB165A20 | G06280 | 608044013501 |
| EAST BREAKS 165 #A021 | EB165A21 | G06280 | 608044013400 |
| EAST BREAKS 165 #A022 | EB165A22 | G06280 | 608044013700 |
| EAST BREAKS 165 #A023 | EB165A23 | G06280 | 608044013600 |
| EAST BREAKS 165 #A024 | EB165A24 | G06280 | 608044014000 |
| EAST BREAKS 165 #A025 | EB165A25 | G06280 | 608044013900 |
| EAST BREAKS 165 #A026 | EB165A26 | G06280 | 608044014100 |
| EAST BREAKS 165 #A029 | EB165A29 | G06280 | 608044014401 |
| EAST BREAKS 165 #A030 | EB165A30 | G06280 | 608044014501 |
| EAST BREAKS 209 #A013 GA RA13 | EB209A13 | G07397 | 608044012400 |
| EAST CAMERON 330 #B003 | EC330B03 | G03540 | 177044055600 |
| EAST CAMERON 330 #B004 | EC330B04 | G03540 | 177044055800 |
| EAST CAMERON 330 #B005 | EC330B05 | G03540 | 177044056100 |
| EAST CAMERON 330 #B006 | EC330B06 | G03540 | 177044056200 |
| EAST CAMERON 330 #B008 | EC330B08 | G03540 | 177044056800 |
| EAST CAMERON 331 #A001 | EC331A01 | G08658 | 177044076300 |
| EAST CAMERON 331 #A003 | EC331A03 | G08658 | 177044076400 |
| EAST CAMERON 331 #A004 | EC331A04 | G08658 | 177044076700 |
| EAST CAMERON 331 #A009 | EC331A09 | G08658 | 177044079400 |
| EAST CAMERON 331 #A010 | EC331A10 | G08658 | 177044079500 |
| EAST CAMERON 331 #A012 | EC331A12 | G08658 | 177044083300 |
| EAST CAMERON 331 #A013 | EC331A13 | G08658 | 177044083400 |
| EAST CAMERON 332 #A002 | EC332A02 | G09478 | 177044076200 |
| EAST CAMERON 332 #A005 | EC332A05 | G09478 | 177044076800 |
| EAST CAMERON 332 #A006 | EC332A06 | G09478 | 177044077301 |
| EAST CAMERON 332 #A007 | EC332A07 | G09478 | 177044077400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EAST CAMERON 332 #A008 | EC332A08 | G09478 | 177044077700 |
| EAST CAMERON 332 #A011 | EC332A11 | G09478 | 177044083101 |
| EAST CAMERON 332 #A014 | EC332A14 | G09478 | 177044094600 |
| EAST CAMERON 332 #A016 | EC332A16 | G09478 | 177044097901 |
| EAST CAMERON 332 #A017 | EC332A17 | G09478 | 177044078103 |
| EAST CAMERON 349 #A001 | EC349A01 | G15157 | 177044082700 |
| EAST CAMERON 349 #A002U | EC349A02U | G13592 | 177044081400 |
| EAST CAMERON 349 #A004 | EC349A04 | G14385 | 177044097700 |
| EAST CAMERON 350 #A005 S04 | EC350A05 | G15157 | 177044098200 |
| EAST CAMERON 356 #A003 | EC356A03 | G13592 | 177044097301 |
| EAST CAMERON 371 #A002 | EC371A02 | G02267 | 177044094300 |
| EUGENE IS 032 #008 | EI03208 | 00196 | 177090061800 |
| EUGENE IS 032 #010 | EI03210 | 00196 | 177090072400 |
| EUGENE IS 032 #011 | EI03211 | 00196 | 177090054400 |
| EUGENE IS 032 #012 | EI03212 | 00196 | 177090054500 |
| EUGENE IS 032 #016 | EI03216 | 00196 | 177090061500 |
| EUGENE IS 032 #020 | EI03220 | 00196 | 177092019100 |
| EUGENE IS 032 #022 | EI03222 | 00196 | 177094014800 |
| EUGENE IS 032 #024 | EI03224 | 00196 | 177094032800 |
| EUGENE IS 032 #026 | EI03226 | 00196 | 177094097200 |
| EUGENE IS 032 #028 | EI03228 | 00196 | 177094098601 |
| EUGENE IS 032 #029 | EI03229 | 00196 | 177094110003 |
| EUGENE IS 032 #030 | EI03230 | 00196 | 177094116401 |
| EUGENE IS 032 #031 | EI03231 | 00196 | 177094126501 |
| EUGENE IS 032 #032 | EI03232 | 00196 | 177094126700 |
| EUGENE IS 032 #033 | EI03233 | 00196 | 177094136900 |
| EUGENE IS 032 #A001 | EI032A01 | 00196 | 177090052800 |
| EUGENE IS 032 #A002 | EI032A02 | 00196 | 177090052901 |
| EUGENE IS 032 #A003 | EI032A03 | 00196 | 177090053000 |
| EUGENE IS 032 #A005 | EI032A05 | 00196 | 177090053200 |
| EUGENE IS 032 #A006 | EI032A06 | 00196 | 1770900533 |
| EUGENE IS 032 #E001 | EI032E01 | 00196 | 177090053800 |
| EUGENE IS 032 #E002 | EI032E02 | 00196 | 177090053900 |
| EUGENE IS 032 #E003 | EI032E03 | 00196 | 177090054000 |
| EUGENE IS 032 #E004 | EI032E04 | 00196 | 177090054100 |
| EUGENE IS 032 #F001 | EI032F01 | 00196 | 177090054200 |
| EUGENE IS 053 #008D | EI053008D0 | 00479 | 177094086200 |
| EUGENE IS 053 #009 | EI05300900 | 00479 | 177094094000 |
| EUGENE IS 053 #B001D | EI053B01D0 | 00479 | 177094085900 |
| EUGENE IS 053 #C002 | EI053C0200 | 00479 | 177094122600 |
| EUGENE IS 053 #G001 ST1 | EI053G01D2 | 00479 | 177094144201 |
| EUGENE IS 100 #013 | EI10013 | 00796 | 177090032601 |
| EUGENE IS 100 #020 | EI10020 | 00796 | 177090088800 |
| EUGENE IS 100 #024 | EI10024 | 00796 | 177092019204 |
| EUGENE IS 100 #027 | EI10027 | 00796 | 177092018602 |
| EUGENE IS 100 #030 | EI10030 | 00796 | 177094052700 |
| EUGENE IS 100 #031 | EI10031 | 00796 | 177094091603 |
| EUGENE IS 100 #033 | EI10033 | 00796 | 177094093001 |
| EUGENE IS 100 #041 | EI10041 | 00796 | 177094115601 |
| EUGENE IS 175 #D008 | EI175D0800 | 00438 | 177094003900 |
| EUGENE IS 175 #F001 ST1 | EI175F0101 | 00438 | 177094035401 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| EUGENE IS 175 #F003 ST | EI175F0302 | 00438 | 177094039702 |
| EUGENE IS 175 #F004 ST | EI175F0401 | 00438 | 177094041001 |
| EUGENE IS 175 #F005 | EI175F0500 | 00438 | 177094042900 |
| EUGENE IS 175 #F007 | EI175F0700 | 00438 | 177094048900 |
| EUGENE IS 175 #F009 | EI175F0901 | 00438 | 177094087601 |
| EUGENE IS 175 #H002 | EI175H0200 | 00438 | 177094106700 |
| EUGENE IS 175 #H003 | EI175H0300 | 00438 | 177094110800 |
| EUGENE IS 175 #H004 | EI175H0400 | 00438 | 177094110900 |
| EUGENE IS 175 #H005 ST1BP1 | EI175H0502 | 00438 | 177094112002 |
| EUGENE IS 175 #I002 | EI175I0201 | 00438 | 177094107101 |
| EUGENE IS 175 #I004 | EI175I0400 | 00438 | 177094109200 |
| EUGENE IS 175 #J002 ST1 | EI175J0201 | 00438 | 177094123201 |
| EUGENE IS 307 #A001 | EI307A01 | G02110 | 177104007400 |
| EUGENE IS 307 #A002 | EI307A02 | G02110 | 177104042401 |
| EUGENE IS 307 #A003 | EI307A03 | G02110 | 177104059300 |
| EUGENE IS 307 #A004 | EI307A04 | G02110 | 177104060900 |
| EUGENE IS 307 #A005 | EI307A05 | G02110 | 177104062000 |
| EUGENE IS 307 #A006 | EI307A06 | G02110 | 177104065900 |
| EUGENE IS 307 #A007 | EI307A07 | G02110 | 177104067100 |
| EUGENE IS 307 #A008 | EI307A08 | G02110 | 177104164600 |
| EUGENE IS 307 #B001 | EI307B01 | G02110 | 177104078501 |
| EUGENE IS 307 #B003 | EI307B03 | G02110 | 177104113302 |
| EUGENE IS 307 #B008 | EI307B08 | G02110 | 177104153802 |
| EUGENE IS 311 #D003 | EI311D03 | G27918 | 177104162000 |
| EUGENE IS 312 #D001 | EI312D0100 | G22679 | 177104160900 |
| EUGENE IS 312 #D002 | EI312D0200 | G22679 | 177104161900 |
| EUGENE IS 330 #B015 ST1 | EI330B1501 | G02115 | 177104028601 |
| EUGENE IS 342 #004 | EI34200400 | G02319 | 177104113000 |
| EUGENE IS 342 #C002 ST1 | EI342C0201 | G02319 | 177104110601 |
| EUGENE IS 342 #C003 | EI342C0300 | G02319 | 177104114000 |
| EUGENE IS 342 #C004 | EI342C0401 | G02319 | 177104120101 |
| EUGENE IS 342 #C005 | EI342C0502 | G02319 | 177104120202 |
| EUGENE IS 342 #C006 | EI342C0600 | G02319 | 177104120300 |
| EUGENE IS 342 #C007 | EI342C0700 | G02319 | 177104120800 |
| EUGENE IS 342 #C008 | EI342C0800 | G02319 | 177104121000 |
| EUGENE IS 342 #C009 | EI342C0900 | G02319 | 177104121300 |
| EUGENE IS 342 #C011 | EI342C1100 | G02319 | 177104122000 |
| EUGENE IS 342 #C012 | EI342C1200 | G02319 | 177104122200 |
| EUGENE IS 342 #C013 | EI342C1300 | G02319 | 177104122700 |
| EUGENE IS 342 #C014 | EI342C1400 | G02319 | 177104135800 |
| EUGENE IS 342 #C015 | EI342C1501 | G02319 | 177104162101 |
| EUGENE IS 342 #C016 | EI342C1601 | G02319 | 177104162201 |
| EUGENE IS 342 #C017 BP1 | EI342C1701 | G02319 | 177104162501 |
| EVANS GAS UNIT 1 | EVANSGASU1 | 19334 | 4216701288 |
| EVANS OIL UNIT 1 | EVANSOILU1 | 19334 | 4216701288 |
| EWING BANK 782 #A012 | EW826A1200 | G05793 | 608105001800 |
| FROST - ACOM GU 1 | FROSTAC1 | 189098 | 42071320621 |
| FROST - ACOM GU 2 | FROSTAC2 | 206882 | 42071320921 |
| GALVESTON 151 #005 | GA15100500 | G15740 | 427064044200 |
| GALVESTON 210 #001 | GA21000100 | G25524 | 427064044300 |
| GALVESTON 210 #002 | GA21000200 | G25524 | 427064044800 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| GALVESTON A-155 #A001 | GAA155A01 | G30654 | 427074010800 |
| GREEN CANYON 064 #A040 | GC064A40 | G07005 | 608114016202 |
| GREEN CANYON 157 SS003 | GC157003 | G24154 | 608114043901 |
| GREEN CANYON 201 #001 ST2 | GC201001 | G12210 | 608114043802 |
| GREEN CANYON 201 SS001 | GC157001 | G12210 | 608114043802 |
| GREEN CANYON 245 # TA 8 TROIKA | - | G05916 | 608114032900 |
| HAYES LUMBER 1 - HBY 4 RC SUA | HAYESLUM1 | 42450 | 17053212861 |
| HAYES LUMBER CO 28 2 | HAYESLUM02 | Onshore | 170532123800 |
| HAYES LUMBER HBY 4 RA SUA 1ALT | HAYESLUM01 | 42450 | 170532122800 |
| HAYES MINERALS 29 001 | HAYESMIN29 | 42450 | 170532130600 |
| HELIS 2 | HELIS2 | 17072 | 1704520888 |
| HIGH ISLAND A-341 #B001 | HIA341B010 | G25605 | 427114085900 |
| HIGH ISLAND A-341 #B002 | HIA341B020 | G25605 | 427114087101 |
| HIGH ISLAND A-365 #A001 | HIA365A010 | G02750 | 427114052200 |
| HIGH ISLAND A-365 #A004 | HIA365A040 | G02750 | 427114053700 |
| HIGH ISLAND A-365 #A006 | HIA365A060 | G02750 | 427114053100 |
| HIGH ISLAND A-365 #A007 | HIA365A070 | G02750 | 427114054100 |
| HIGH ISLAND A-365 #A008 | HIA365A080 | G02750 | 427114054800 |
| HIGH ISLAND A-365 #A010 | HIA365A100 | G02750 | 427114055200 |
| HIGH ISLAND A-365 #A012 | HIA365A120 | G02750 | 427114055600 |
| HIGH ISLAND A-365 #A013 ST1 | HIA365A131 | G02750 | 427114055801 |
| HIGH ISLAND A-365 #A016 | HIA365A160 | G02750 | 427114056700 |
| HIGH ISLAND A-365 #A020 | HIA365A200 | G02750 | 427114057500 |
| HIGH ISLAND A-365 #A021 | HIA365A210 | G02750 | 427114057600 |
| HIGH ISLAND A-365 #A024 | HIA365A240 | G02750 | 427114066300 |
| HIGH ISLAND A-365 #A025 | HIA365A250 | G02750 | 427114066500 |
| HIGH ISLAND A-376 #A002 ST1 | HIA376A021 | G02754 | 427114052601 |
| HIGH ISLAND A-376 #A003 | HIA376A030 | G02754 | 427114052700 |
| HIGH ISLAND A-376 #A005 | HIA376A050 | G02754 | 427114053500 |
| HIGH ISLAND A-376 #A009 | HIA376A090 | G02754 | 427114054400 |
| HIGH ISLAND A-376 #A011 | HIA376A110 | G02754 | 427114055000 |
| HIGH ISLAND A-376 #A014 ST2 | HIA376A142 | G02754 | 427114056002 |
| HIGH ISLAND A-376 #A015 | HIA376A150 | G02754 | 427114056200 |
| HIGH ISLAND A-376 #A017 | HIA376A170 | G02754 | 427114057200 |
| HIGH ISLAND A-376 #A018 | HIA376A180 | G02754 | 427114057300 |
| HIGH ISLAND A-376 #A019 | HIA376A190 | G02754 | 427114057400 |
| HIGH ISLAND A-376 #A022 | HIA376A220 | G02754 | 427114057700 |
| HIGH ISLAND A-376 #B001 | HIA376B010 | G02754 | 427114068700 |
| HIGH ISLAND A-376 #B002 | HIA376B020 | G02754 | 427114068900 |
| HIGH ISLAND A-376 #B003 | HIA376B031 | G02754 | 427114078701 |
| HIGH ISLAND A-376 #B004 | HIA376B041 | G02754 | 427114079001 |
| HIGH ISLAND A-376 #B005 | HIA376B050 | G02754 | 427114079600 |
| HIGH ISLAND A-376 #C001 | HIA376C010 | G02754 | 427114088900 |
| HIGH ISLAND A-376 #C002 | HIA376C020 | G02754 | 427114089600 |
| HIGH ISLAND A-376 #C003 | HIA376C030 | G02754 | 427114089500 |
| HIGH ISLAND A-376 #C004 | HIA376C040 | G02754 | 427114089400 |
| HIGH ISLAND A-382 #A009 | HIA382A090 | G02757 | 427094018600 |
| HIGH ISLAND A-382 #B013 | HIA382B130 | G02757 | 427094025500 |
| HIGH ISLAND A-382 #F001 ST1 | HIA382F011 | G02757 | 427114059401 |
| HIGH ISLAND A-382 #F002 | HIA382F020 | G02757 | 427114059800 |
| HIGH ISLAND A-382 #F003 | HIA382F031 | G02757 | 427114059901 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-382 #F004 | HIA382F040 | G02757 | 427114060600 |
| HIGH ISLAND A-382 #F005 | HIA382F050 | G02757 | 427114060900 |
| HIGH ISLAND A-382 #F006 | HIA382F061 | G02757 | 427114061001 |
| HIGH ISLAND A-382 #F008 | HIA382F080 | G02757 | 427114061700 |
| HIGH ISLAND A-382 #F010 ST5 | HIA382F105 | G02757 | 427114062605 |
| HIGH ISLAND A-382 #F011 | HIA382F110 | G02757 | 427114063100 |
| HIGH ISLAND A-382 #F012 | HIA382F121 | G02757 | 427114063601 |
| HIGH ISLAND A-382 #F013 | HIA382F130 | G02757 | 427114063800 |
| HIGH ISLAND A-382 #F014 | HIA382F140 | G02757 | 427114063900 |
| HIGH ISLAND A-382 #F015 | HIA382F151 | G02757 | 427114064701 |
| HIGH ISLAND A-382 #F017 | HIA382F171 | G02757 | 427114066701 |
| HIGH ISLAND A-382 #F019 | HIA382F190 | G02757 | 427114067100 |
| HIGH ISLAND A-382 #F020 | HIA382F200 | G02757 | 427114067500 |
| HIGH ISLAND A-382 #F021 | HIA382F211 | G02757 | 427114067801 |
| HIGH ISLAND A-474 #A001 | HIA474A010 | G02366 | 427094017100 |
| HIGH ISLAND A-474 #A002 | HIA474A020 | G02366 | 427094017200 |
| HIGH ISLAND A-474 #A003 | HIA474A030 | G02366 | 427094019900 |
| HIGH ISLAND A-474 #A004 | HIA474A040 | G02366 | 427094022800 |
| HIGH ISLAND A-474 #A005 | HIA474A050 | G02366 | 427094023500 |
| HIGH ISLAND A-474 #A006 | HIA474A060 | G02366 | 427094024300 |
| HIGH ISLAND A-474 #A007 | HIA474A070 | G02366 | 427094027702 |
| HIGH ISLAND A-474 #A008 | HIA474A080 | G02366 | 427094026100 |
| HIGH ISLAND A-474 #A010 | HIA474A100 | G02366 | 427094029400 |
| HIGH ISLAND A-474 #A011 | HIA474A110 | G02366 | 427094030000 |
| HIGH ISLAND A-474 #A012 | HIA474A120 | G02366 | 427094030801 |
| HIGH ISLAND A-474 #A013 | HIA474A130 | G02366 | 427094036104 |
| HIGH ISLAND A-474 #A014 | HIA474A140 | G02366 | 427094035000 |
| HIGH ISLAND A-474 #A017 | HIA474A170 | G02366 | 427094032500 |
| HIGH ISLAND A-474 #A020 | HIA474A200 | G02366 | 427094038500 |
| HIGH ISLAND A-474 #A021 | HIA474A210 | G02366 | 427094040700 |
| HIGH ISLAND A-474 #B023 | HIA474B230 | G02366 | 427094037200 |
| HIGH ISLAND A-475 #A016 | HIA475A16 | G02367 | 427094035500 |
| HIGH ISLAND A-489 #A009 | HIA489A090 | G02372 | 427094028500 |
| HIGH ISLAND A-489 #A015 | HIA489A150 | G02372 | 427094037000 |
| HIGH ISLAND A-489 #B002 | HIA489B020 | G02372 | 427094021000 |
| HIGH ISLAND A-489 #B003 | HIA489B030 | G02372 | 427094020901 |
| HIGH ISLAND A-489 #B007 | HIA489B070 | G02372 | 427094027601 |
| HIGH ISLAND A-489 #B009 | HIA489B090 | G02372 | 427094026500 |
| HIGH ISLAND A-489 #B010 | HIA489B100 | G02372 | 427094028800 |
| HIGH ISLAND A-489 #B012 | HIA489B120 | G02372 | 427094031400 |
| HIGH ISLAND A-489 #B013 | HIA489B130 | G02372 | 427094028600 |
| HIGH ISLAND A-489 #B014 | HIA489B140 | G02372 | 427094029700 |
| HIGH ISLAND A-489 #B015 | HIA489B150 | G02372 | 427094030400 |
| HIGH ISLAND A-489 #B016 | HIA489B160 | G02372 | 427094029800 |
| HIGH ISLAND A-489 #B017 | HIA489B170 | G02372 | 427094023802 |
| HIGH ISLAND A-489 #B018 | HIA489B180 | G02372 | 427094032801 |
| HIGH ISLAND A-489 #B020 | HIA489B200 | G02372 | 427094028101 |
| HIGH ISLAND A-489 #B021 | HIA489B210 | G02372 | 427094026202 |
| HIGH ISLAND A-489 #B022 | HIA489B220 | G02372 | 427094036000 |
| HIGH ISLAND A-489 #B024 | HIA489B240 | G02372 | 427094035400 |
| HIGH ISLAND A-489 #B025 | HIA489B250 | G02372 | 427094041400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-489 #B026 | HIA489B260 | G02372 | 427094043100 |
| HIGH ISLAND A-489 #B027 | HIA489B270 | G02372 | 427094042501 |
| HIGH ISLAND A-489 #B028 | HIA489B280 | G02372 | 427094054500 |
| HIGH ISLAND A-489 #B029 | HIA489B290 | G02372 | 427094111100 |
| HIGH ISLAND A-550 #002 | HIA55002 | G04081 | 427094062700 |
| HIGH ISLAND A-550 #003 | HIA55003 | G04081 | 427094063700 |
| HIGH ISLAND A-550 #A001 | HIA550A01 | G04081 | 427094057004 |
| HIGH ISLAND A-550 #A002 | HIA550A02 | G04081 | 427094074101 |
| HIGH ISLAND A-550 #A003 | HIA550A03 | G04081 | 427094076000 |
| HIGH ISLAND A-550 #A004 | HIA550A04 | G04081 | 427094099501 |
| HIGH ISLAND A-550 #A005 | HIA550A05 | G04081 | 427094099801 |
| HIGH ISLAND A-550 #A006 | HIA550A06 | G04081 | 427094104801 |
| HIGH ISLAND A-563 #B001 | HIA563B01 | G02388 | 427094029900 |
| HIGH ISLAND A-563 #B004 | HIA563B04 | G02388 | 427094034402 |
| HIGH ISLAND A-563 #B005 | HIA563B05 | G02388 | 427094037100 |
| HIGH ISLAND A-563 #B007 | HIA563B07 | G02388 | 427094038600 |
| HIGH ISLAND A-563 #B008 | HIA563B08 | G02388 | 427094038900 |
| HIGH ISLAND A-563 #B009 | HIA563B09 | G02388 | 427094039601 |
| HIGH ISLAND A-563 #B010 | HIA563B10 | G02388 | 427094040000 |
| HIGH ISLAND A-563 #B012 | HIA563B12 | G02388 | 427094043502 |
| HIGH ISLAND A-563 #B013 | HIA563B13 | G02388 | 427094040501 |
| HIGH ISLAND A-563 #B015 | HIA563B15 | G02388 | 427094048000 |
| HIGH ISLAND A-563 #B016 | HIA563B16 | G02388 | 427094048102 |
| HIGH ISLAND A-563 #B017 | HIA563B17 | G02388 | 427094045804 |
| HIGH ISLAND A-563 #B018 | HIA563B18 | G02388 | 427094052501 |
| HIGH ISLAND A-563 #B019 | HIA563B19 | G02388 | 427094052000 |
| HIGH ISLAND A-563 #B022 | HIA563B22 | G02388 | 427094055000 |
| HIGH ISLAND A-563 #B023 | HIA563B23 | G02388 | 427094056400 |
| HIGH ISLAND A-563 #B024 | HIA563B24 | G02388 | 427094056601 |
| HIGH ISLAND A-563 #B025 | HIA563B25 | G02388 | 427094059300 |
| HIGH ISLAND A-563 #B026 | HIA563B26 | G02388 | 427094066801 |
| HIGH ISLAND A-563 #B027 | HIA563B27 | G02388 | 427094068100 |
| HIGH ISLAND A-563 #C004 | HIA563C04 | G02388 | 427094059602 |
| HIGH ISLAND A-563 #C005 | HIA563C05 | G02388 | 427094062800 |
| HIGH ISLAND A-563 #C008 | HIA563C08 | G02388 | 427094069400 |
| HIGH ISLAND A-563 #C009 | HIA563C09 | G02388 | 427094064600 |
| HIGH ISLAND A-564 #B006 | HIA563B06 | G02389 | 427094033801 |
| HIGH ISLAND A-564 #B020 | HIA564B20 | G02389 | 427094053102 |
| HIGH ISLAND A-564 #B021 | HIA563B21 | G02389 | 427094053900 |
| HIGH ISLAND A-572 #A003 ST1 | HIA572A031 | G02392 | 427094012901 |
| HIGH ISLAND A-572(573)A014 | HIA572A140 | G02392 | 427094034100 |
| HIGH ISLAND A-573 #006 | HIA5730060 | G02393 | 427094053700 |
| HIGH ISLAND A-573 #A001 ST2 | HIA573A012 | G02393 | 427094007102 |
| HIGH ISLAND A-573 #A002 ST3 | HIA573A023 | G02393 | 427094013803 |
| HIGH ISLAND A-573 #A004 | HIA573A040 | G02393 | 427094015000 |
| HIGH ISLAND A-573 #A005 ST1 | HIA573A051 | G02393 | 427094015501 |
| HIGH ISLAND A-573 #A008 | HIA573A080 | G02393 | 427094018000 |
| HIGH ISLAND A-573 #A010 | HIA573A100 | G02393 | 427094020500 |
| HIGH ISLAND A-573 #A015 | HIA573A150 | G02393 | 427094034200 |
| HIGH ISLAND A-573 #A016 | HIA573A160 | G02393 | 427094034300 |
| HIGH ISLAND A-573 #A017 | HIA573A170 | G02393 | 427094036500 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-573 #A019 ST1 | HIA573A191 | G02393 | 427094038001 |
| HIGH ISLAND A-573 #B001 | HIA573B010 | G02393 | 427094012800 |
| HIGH ISLAND A-573 #B002 | HIA573B020 | G02393 | 427094014100 |
| HIGH ISLAND A-573 #B005 | HIA573B050 | G02393 | 427094016400 |
| HIGH ISLAND A-573 #B006 | HIA573B060 | G02393 | 427094017000 |
| HIGH ISLAND A-573 #B008 | HIA573B080 | G02393 | 427094017900 |
| HIGH ISLAND A-573 #B010 | HIA573B100 | G02393 | 427094021100 |
| HIGH ISLAND A-573 #B012 | HIA573B120 | G02393 | 427094022700 |
| HIGH ISLAND A-573 #E007 | HIA573E070 | G02393 | 427094098200 |
| HIGH ISLAND A-573 #E012 | HIA573E120 | G02393 | 427094115000 |
| HIGH ISLAND A-573 #F007 | HIA573F070 | G02393 | 427114061200 |
| HIGH ISLAND A-573 #F009 | HIA573F090 | G02393 | 427114062000 |
| HIGH ISLAND A-573 #F016 ST5 | HIA573F165 | G02393 | 427114066805 |
| HIGH ISLAND A-573 #F018 ST1 | HIA573F181 | G02393 | 427114067301 |
| HIGH ISLAND A-573 #F022 | HIA573F220 | G02393 | 427114068400 |
| HIGH ISLAND A-573 #F023 ST2 | HIA573F232 | G02393 | 427114069302 |
| HIGH ISLAND A-581 #D004 | HIA581D040 | G18959 | 427094112200 |
| HIGH ISLAND A-581 #D004 | HIA581D040 | G18959 | 427094112200 |
| HIGH ISLAND A-582 #C001 | HIA582C010 | G02719 | 427094061500 |
| HIGH ISLAND A-582 #C002 | HIA582C020 | G02719 | 427094061900 |
| HIGH ISLAND A-582 #C003 | HIA582C030 | G02719 | 427094058000 |
| HIGH ISLAND A-582 #C006 | HIA582C060 | G02719 | 427094063400 |
| HIGH ISLAND A-582 #C007 | HIA582C070 | G02719 | 427094063900 |
| HIGH ISLAND A-582 #C010 | HIA582C100 | G02719 | 427094070200 |
| HIGH ISLAND A-582 #C011 | HIA582C110 | G02719 | 427094071400 |
| HIGH ISLAND A-582 #C012 | HIA582C120 | G02719 | 427094074900 |
| HIGH ISLAND A-582 #C013 | HIA582C130 | G02719 | 427094072700 |
| HIGH ISLAND A-582 #C014 | HIA582C140 | G02719 | 427094073800 |
| HIGH ISLAND A-582 #C015 | HIA582C150 | G02719 | 427094075800 |
| HIGH ISLAND A-582 #C019 | HIA582C190 | G02719 | 427094108200 |
| HIGH ISLAND A-582 #D001 | HIA582D010 | G18959 | 42094110200 |
| HIGH ISLAND A-582 #D002 ST1 | HIA582D021 | G02719 | 427094110801 |
| HIGH ISLAND A-582 #D003 ST | HIA582D031 | G02719 | 427094111401 |
| HIGH ISLAND A-582 #D005 | HIA582D050 | G02719 | 427094114300 |
| HIGH ISLAND A-582 #D006 | HIA582D060 | G02719 | 427094114700 |
| HIGH ISLAND A-595 #D001 ST2 | HIA595D1D2 | G02721 | 427094055302 |
| HIGH ISLAND A-595 #D003 | HIA595D03 | G02721 | 427094058500 |
| HIGH ISLAND A-595 #D005 | HIA595D050 | G02721 | 427094092900 |
| HIGH ISLAND A-595 #D006 | HIA595D063 | G02721 | 427094063205 |
| HIGH ISLAND A-595 #D010 | HIA595D100 | G02721 | 427094070500 |
| HIGH ISLAND A-595 #D012 | HIA595D120 | G02721 | 427094077000 |
| HIGH ISLAND A-595 #D017 ST2 | HIA595D172 | G02721 | 427094083702 |
| HIGH ISLAND A-595 #D018 | HIA595D181 | G02721 | 427094093501 |
| HIGH ISLAND A-595 #E011 | HIA595E110 | G02721 | 427094114501 |
| HIGH ISLAND A-596 #B014 | HIA596B140 | G02722 | 427094025800 |
| HIGH ISLAND A-596 #D002 | HIA596D020 | G02722 | 427094056901 |
| HIGH ISLAND A-596 #D004 | HIA596D040 | G02722 | 427094060500 |
| HIGH ISLAND A-596 #D007 ST4 | HIA596D074 | G02722 | 427094064304 |
| HIGH ISLAND A-596 #D008 ST1 | HIA596D081 | G02722 | 427094067001 |
| HIGH ISLAND A-596 #D009 | HIA596D090 | G02722 | 427094068400 |
| HIGH ISLAND A-596 #D011 | HIA596D110 | G02722 | 427094075700 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| HIGH ISLAND A-596 #D013 ST2 | HIA596D132 | G02722 | 427094079502 |
| HIGH ISLAND A-596 #D014 | HIA596D140 | G02722 | 427094080100 |
| HIGH ISLAND A-596 #D016 | HIA596D160 | G02722 | 427094082400 |
| HIGH ISLAND A-596 #E005 | HIA596E050 | G02722 | 427094085900 |
| HIGH ISLAND A-596 #E008 | HIA596E080 | G02722 | 427094112801 |
| HIGH ISLAND A-596 #E009 | HIA596E090 | G02722 | 427094114200 |
| LA ST LSE 3011 1 SWD BURRWOOD | BURWOOD | 03011 | 177210074800 |
| LANDREAU ET UX 1 | LANDREAU1 | 490100 | UNKNOWN |
| MAIN PASS 077 #A001 | MP077A0100 | G04481 | 177254033800 |
| MAIN PASS 077 #A002 | MP077A0201 | G04481 | 177254043101 |
| MAIN PASS 077 #A003 | MP077A0300 | G04481 | 177254036100 |
| MAIN PASS 077 #A004 | MP077A0400 | G04481 | 177254036900 |
| MAIN PASS 077 #A005 | MP077A0500 | G04481 | 177254038000 |
| MAIN PASS 077 #A006 ST2 | MP077A0602 | G04481 | 177254036402 |
| MAIN PASS 077 #A010 | MP077A1000 | G04481 | 177254039600 |
| MAIN PASS 077 #A011 | MP077A1100 | G04481 | 177254042400 |
| MAIN PASS 077 #A012 | MP077A1200 | G04481 | 177254039700 |
| MAIN PASS 077 #A013 | MP077A1300 | G04481 | 177254044900 |
| MAIN PASS 077 #A014 | MP077A1400 | G04481 | 177254044500 |
| MAIN PASS 077 #A015 | MP077A1501 | G04481 | 177254045101 |
| MAIN PASS 077 #A016 | MP077A1600 | G04481 | 177254045900 |
| MAIN PASS 077 #A017 | MP077A1700 | G04481 | 177254046200 |
| MAIN PASS 077 #A018 | MP077A1800 | G04481 | 177254046800 |
| MAIN PASS 077 #A019 | MP077A1900 | G04481 | 177254048200 |
| MAIN PASS 077 #A020 | MP077A2001 | G04481 | 177254048501 |
| MAIN PASS 077 #A021 ST | MP077A2100 | G04481 | 177254067002 |
| MAIN PASS 077 #A022 | MP077A2201 | G04481 | 177254067401 |
| MAIN PASS 077 #A023 | MP077A23 | G04481 | 177254067601 |
| MAIN PASS 077 #A07 | MP077A0700 | G04481 | 177254041000 |
| MAIN PASS 077 #A08 | MP077A0800 | G04481 | 177254038200 |
| MAIN PASS 077 #A09 | MP077A0900 | G04481 | 177254039000 |
| NW MYETTE POINT SL 14519 #001 | SL1451901 | 14519 | 171012195100 |
| NW MYETTE POINT SL 14519 #002 | SL1451902 | 14519 | 171012200800 |
| NW MYETTE POINT SL 14520 #002 | SL1452002 | 14520 | 171012201500 |
| NW MYETTE POINT SL 14914 #002 | SL1491402 | 14914 | 171012206300 |
| NW MYETTE POINT SL 14914 #003 | SL1491403 | 14914 | 171012239600 |
| NW MYETTE POINT SL14519 #1 SWD | SL14519SWD | 14519 | 171018805900 |
| SHIP SHOAL 149 #A017 (ORRI) | SS149A17 | 00434 | 177114131300 |
| SHIP SHOAL 149 #C001 | SS149C01 | 00434 | 177114005500 |
| SHIP SHOAL 149 #C002 | SS149C02 | 00434 | 177114007002 |
| SHIP SHOAL 149 #C003 | SS149C03 | 00434 | 177114016000 |
| SHIP SHOAL 149 #C004 | SS149C04 | 00434 | 177114024301 |
| SHIP SHOAL 149 #C005 | SS149C05 | 00434 | 177114025800 |
| SHIP SHOAL 149 #C019 (ORRI) | SS149C19 | 00434 | 177114132300 |
| SHIP SHOAL 149 #E007 | SS149E07 | 00434 | 177114113100 |
| SHIP SHOAL 169 #BB001 | SS169BB010 | 00820 | 177114048100 |
| SHIP SHOAL 169 #BB002 | SS169BB020 | 00820 | 177114055501 |
| SHIP SHOAL 169 #BB003 | SS169BB030 | 00820 | 177114057800 |
| SHIP SHOAL 169 #BB004 | SS169BB040 | 00820 | 177114056500 |
| SHIP SHOAL 169 #BB005 | SS169BB050 | 00820 | 177114059600 |
| SHIP SHOAL 169 #BB006 | SS169BB060 | 00820 | 177114060101 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 169 #C001 | SS169C0100 | 00820 | 177114075600 |
| SHIP SHOAL 169 #C003 | SS169C0300 | 00820 | 177114078500 |
| SHIP SHOAL 169 #C004 | SS169C0400 | 00820 | 177114077400 |
| SHIP SHOAL 169 #C006 | SS169C0600 | 00820 | 177114080201 |
| SHIP SHOAL 169 #C007 | SS169C0700 | 00820 | 177114080601 |
| SHIP SHOAL 169 #C008 | SS169C0800 | 00820 | 177114081300 |
| SHIP SHOAL 169 #C009 | SS169C0900 | 00820 | 177114144400 |
| SHIP SHOAL 169 #C010 | SS169C1000 | 00820 | 177114144800 |
| SHIP SHOAL 169 #G001 | SS169G0100 | 00820 | 177114127400 |
| SHIP SHOAL 169 #G002 | SS169G0200 | 00820 | 177114128500 |
| SHIP SHOAL 169 #G003 | SS169G0300 | 00820 | 177114156600 |
| SHIP SHOAL 177 #007 | SS17700700 | 00590 | 177114101100 |
| SHIP SHOAL 177 #A001 | SS177A01 | 00590 | 177114056300 |
| SHIP SHOAL 177 #A002 | SS177A02 | 00590 | 177114055000 |
| SHIP SHOAL 177 #A003 | SS177A03 | 00590 | 177114056100 |
| SHIP SHOAL 177 #A005 | SS177A05 | 00590 | 177114119301 |
| SHIP SHOAL 189 #A001A | SS189A01A0 | G04232 | 177114062000 |
| SHIP SHOAL 189 #A003A | SS189A03A0 | G04232 | 177114085200 |
| SHIP SHOAL 189 #A005 | SS189A0500 | G04232 | 177114088400 |
| SHIP SHOAL 189 #A007 ST2 | SS189A0702 | G04232 | 177114129502 |
| SHIP SHOAL 189 #A008 | SS189A0800 | G04232 | 177114130900 |
| SHIP SHOAL 189 #A009 ST1 | SS189A0901 | G04232 | 177114133800 |
| SHIP SHOAL 189 #A010BP1 | SS189A1001 | G04232 | 177114154701 |
| SHIP SHOAL 189 #A4 (SS210) | SS189A04 | G04232 | 177114086801 |
| SHIP SHOAL 189 #A6 (SS188) | SS189A06 | G04232 | 177114088906 |
| SHIP SHOAL 204 #A008 | SS204A0800 | G01520 | 177110083000 |
| SHIP SHOAL 204 #A015 ST1 | SS204A1501 | G01520 | 177112003401 |
| SHIP SHOAL 204 #A016 | SS204A1601 | G01520 | 177112005401 |
| SHIP SHOAL 204 #A020 | SS204A2000 | G01520 | 177112012600 |
| SHIP SHOAL 204 #A024 ST1 | SS204A2401 | G01520 | 177112017701 |
| SHIP SHOAL 204 #A028 ST3 | SS204A2803 | G01520 | 177110071003 |
| SHIP SHOAL 204 #A030A | SS204A30A1 | G01520 | 177114002801 |
| SHIP SHOAL 204 #A031 | SS204A3101 | G01520 | 177110084201 |
| SHIP SHOAL 204 #A034 | SS204A3400 | G01520 | 177114146700 |
| SHIP SHOAL 204 #A035 | SS204A3502 | G01520 | 177114147402 |
| SHIP SHOAL 204 #A036 ST1 | SS204A3603 | G01520 | 177114146803 |
| SHIP SHOAL 206 #E002 | SS206E0201 | G01522 | 177114118101 |
| SHIP SHOAL 206 #E003 | SS206E0301 | G01522 | 177114118201 |
| SHIP SHOAL 206 #E004 | SS206E0400 | G01522 | 177114141800 |
| SHIP SHOAL 206 #E005 | SS206E0500 | G01522 | 177114142000 |
| SHIP SHOAL 207 #A003 ST1 | SS207A0301 | G01523 | 177110072801 |
| SHIP SHOAL 207 #A004B | SS207A04B0 | G01523 | 177110075500 |
| SHIP SHOAL 207 #A006D | SS207A06D0 | G01523 | 177110078200 |
| SHIP SHOAL 207 #A008B | SS207A08B0 | G01523 | 177110080700 |
| SHIP SHOAL 207 #A009 | SS207A0900 | G01523 | 177110082400 |
| SHIP SHOAL 207 #A010D | SS207A10D0 | G01523 | 177110083900 |
| SHIP SHOAL 207 #A013 | SS207A1300 | G01523 | 177112002500 |
| SHIP SHOAL 207 #A015 ST1 | SS207A1501 | G01523 | 177112010601 |
| SHIP SHOAL 207 #A016 ST1 | SS207A1601 | G01523 | 177112011401 |
| SHIP SHOAL 207 #A018 | SS207A1800 | G01523 | 177112005000 |
| SHIP SHOAL 207 #A019ST | SS207A1901 | G01523 | 177114009401 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 207 #A020 | SS207A2000 | G01523 | 177114010300 |
| SHIP SHOAL 207 #A022 ST1 | SS207A2201 | G01523 | 177114011301 |
| SHIP SHOAL 207 #A023B | SS207A23B0 | G01523 | 177114013500 |
| SHIP SHOAL 207 #A024 | SS207A2400 | G01523 | 177114014300 |
| SHIP SHOAL 207 #A025 | SS207A2500 | G01523 | 177114015500 |
| SHIP SHOAL 207 #A026 | SS207A2601 | G01523 | 177112001101 |
| SHIP SHOAL 207 #A027 | SS207A2701 | G01523 | 177110079401 |
| SHIP SHOAL 207 #A028 | SS207A2801 | G01523 | 177110077301 |
| SHIP SHOAL 207 #A029 ST | SS207A2901 | G01523 | 177112001901 |
| SHIP SHOAL 207 #A030 | SS207A3001 | G01523 | 177110071501 |
| SHIP SHOAL 207 #A031 ST2 | SS207A3102 | G01523 | 177114117702 |
| SHIP SHOAL 207 #A032 | SS207A3201 | G01523 | 177114119701 |
| SHIP SHOAL 207 #A033 ST1 | SS207A3301 | G01523 | 177114121901 |
| SHIP SHOAL 207 #A034 | SS207A3400 | G01523 | 177114122200 |
| SHIP SHOAL 207 #A035 ST1 | SS207A3501 | G01523 | 177114133301 |
| SHIP SHOAL 207 #A036 | SS207A3600 | G01523 | 177114137700 |
| SHIP SHOAL 207 #D002 | SS207D0200 | G01523 | 177114025400 |
| SHIP SHOAL 207 #D007 | SS207D0700 | G01523 | 177114030300 |
| SHIP SHOAL 207 #D008 | SS207D0800 | G01523 | 177114032300 |
| SHIP SHOAL 207 #D009 | SS207D0900 | G01523 | 177114116400 |
| SHIP SHOAL 207 #D010 ST1 | SS207D1001 | G01523 | 177114116501 |
| SHIP SHOAL 214 #004 | SS21404 | 00828 | 177110060600 |
| SHIP SHOAL 214 #E003 | SS214E03 | 00828 | 177110071100 |
| SHIP SHOAL 214 #E004 | SS214E04 | 00828 | 177110073500 |
| SHIP SHOAL 214 #E007 | SS214E07 | 00828 | 177110070200 |
| SHIP SHOAL 214 #E014 | SS214E14 | 00828 | 177110076400 |
| SHIP SHOAL 214 #F003 | SS214F03 | 00828 | 177110069900 |
| SHIP SHOAL 214 #F005 | SS214F05 | 00828 | 177110073600 |
| SHIP SHOAL 214 #F006 | SS214F06 | 00828 | 177110075600 |
| SHIP SHOAL 214 #F007 | SS214F07 | 00828 | 177110075801 |
| SHIP SHOAL 214 #F008 | SS214F08 | 00828 | 177110077200 |
| SHIP SHOAL 214 #F009 | SS214F09 | 00828 | 177110078000 |
| SHIP SHOAL 214 #F014 | SS214F14 | 00828 | 177110078600 |
| SHIP SHOAL 214 #H004 | SS214H04 | 00828 | 177112017100 |
| SHIP SHOAL 214 #H007 | SS214H07 | 00828 | 177114000900 |
| SHIP SHOAL 214 #H008 | SS214H08 | 00828 | 177114002100 |
| SHIP SHOAL 214 #H009 | SS214H09 | 00828 | 177114002600 |
| SHIP SHOAL 214 #H011 | SS214H11 | 00828 | 177114003500 |
| SHIP SHOAL 214 #H012 | SS214H12 | 00828 | 177114004000 |
| SHIP SHOAL 214 #K001 | SS214K01 | 00828 | 177114053900 |
| SHIP SHOAL 214 #K002 | SS214K02 | 00828 | 177114054000 |
| SHIP SHOAL 214 #K008 | SS214K08 | 00828 | 177114145700 |
| SHIP SHOAL 214 #K010 | SS214K10 | 00828 | 177114144300 |
| SHIP SHOAL 214 #K011 | SS214K11 | 00828 | 177114147300 |
| SHIP SHOAL 214 #L001 | SS214L01 | 00828 | 177114066500 |
| SHIP SHOAL 214 #L002 | SS214L02 | 00828 | 177114068100 |
| SHIP SHOAL 214 #L003 | SS214L03 | 00828 | 177114068300 |
| SHIP SHOAL 214 #L004 | SS214L04 | 00828 | 177114070100 |
| SHIP SHOAL 214 #L005 | SS214L05 | 00828 | 177114070200 |
| SHIP SHOAL 214 #L006 | SS214L06 | 00828 | 177114074601 |
| SHIP SHOAL 214 #L007 | SS214L07 | 00828 | 177114075500 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 214 #L008 | SS214L08 | 00828 | 177114076101 |
| SHIP SHOAL 216 #C004 ST1 | SS216C0401 | G01524 | 177112014901 |
| SHIP SHOAL 216 #C005A | SS216C05A0 | G01524 | 177112017400 |
| SHIP SHOAL 216 #C007 ST1 | SS216C0701 | G01524 | 177114001201 |
| SHIP SHOAL 216 #C009 ST1 | SS216C0901 | G01524 | 177114003801 |
| SHIP SHOAL 216 #C010 | SS216C1000 | G01524 | 177114004900 |
| SHIP SHOAL 216 #C012C | SS216C12C0 | G01524 | 177114006700 |
| SHIP SHOAL 216 #C013 | SS216C1300 | G01524 | 177114007700 |
| SHIP SHOAL 216 #C015 | SS216C1500 | G01524 | 177114009000 |
| SHIP SHOAL 216 #C016 | SS216C1601 | G01524 | 177114000101 |
| SHIP SHOAL 216 #C017A | SS216C17A1 | G01524 | 177114000301 |
| SHIP SHOAL 216 #C019 | SS216C1900 | G01524 | 177114031900 |
| SHIP SHOAL 216 #C023 | SS216C2300 | G01524 | 177114134600 |
| SHIP SHOAL 216 #C024 ST2 | SS216C2402 | G01524 | 177114135102 |
| SHIP SHOAL 232 #B012 | SS233B12 | G15293 | 1771141070 |
| SHIP SHOAL 232 #B02 | SS233002 | G15293 | 1771140371 |
| SHIP SHOAL 233 #B001 | SS233B01 | G01528 | 177114028700 |
| SHIP SHOAL 233 #B003 | SS233B03 | G01528 | 177114059800 |
| SHIP SHOAL 233 #B004 | SS233B04 | G01528 | 177114060400 |
| SHIP SHOAL 233 #B006 | SS233B06 | G01528 | 177114063500 |
| SHIP SHOAL 233 #B007 | SS233B07 | G01528 | 177114065400 |
| SHIP SHOAL 233 #B010 | SS233B10 | G01528 | 177114069901 |
| SHIP SHOAL 233 #B011 | SS233B11 | G01528 | 177114073201 |
| SHIP SHOAL 233 #E006 | SS233E06 | G01528 | 177110071900 |
| SHIP SHOAL 233 #H005 | SS233H05 | G01528 | 177112017800 |
| SHIP SHOAL 238 #A001 | SS238A01 | G03169 | 177124023400 |
| SHIP SHOAL 238 #A003 | SS238A03 | G03169 | 177124025701 |
| SHIP SHOAL 238 #A005 | SS238A05 | G03169 | 177124027200 |
| SHIP SHOAL 238 #B005 | SS238B05 | G03169 | 177114061400 |
| SHIP SHOAL 238 #B008 | SS238B08 | G03169 | 177114086600 |
| SHIP SHOAL 238 #C001 ( ORRI) | SS238C01 | G03169 | 177124068100 |
| SHIP SHOAL 238 #C002 | SS238C02 | G03169 | 177124068400 |
| SHIP SHOAL 246 #A001 | SS246A01 | G01027 | 177124005700 |
| SHIP SHOAL 246 #A002 | SS246A02 | G01027 | 177124007400 |
| SHIP SHOAL 246 #A004 | SS246A04 | G01027 | 177124008200 |
| SHIP SHOAL 246 #A005 | SS246A05 | G01027 | 177124008300 |
| SHIP SHOAL 246 #A006 | SS246A06 | G01027 | 177124009000 |
| SHIP SHOAL 246 #A007 | SS246A07 | G01027 | 177124009100 |
| SHIP SHOAL 246 #A009 | SS246A09 | G01027 | 177124010200 |
| SHIP SHOAL 246 #A011 | SS246A11 | G01027 | 177124011500 |
| SHIP SHOAL 246 #A014 | SS246A14 | G01027 | 177124014600 |
| SHIP SHOAL 246 #A019 | SS246A19 | G01027 | 177124016100 |
| SHIP SHOAL 246 #A020 | SS246A20 | G01027 | 177124012901 |
| SHIP SHOAL 246 #J001 | SS246J01 | G01027 | 177124061800 |
| SHIP SHOAL 247 #D003 | SS247D03 | G01028 | 177124013100 |
| SHIP SHOAL 247 #D007 | SS247D07 | G01028 | 177124015600 |
| SHIP SHOAL 247 #D009 | SS247D09 | G01028 | 177124016600 |
| SHIP SHOAL 247 #D012 | SS247D12 | G01028 | 177124017903 |
| SHIP SHOAL 247 #F002 | SS247F02 | G01028 | 177124019702 |
| SHIP SHOAL 247 #F010 | SS247F10 | G01028 | 177124022400 |
| SHIP SHOAL 247 #F014 | SS247F14 | G01028 | 177124022301 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 247 #F017 | SS247F17 | G01028 | 177124022901 |
| SHIP SHOAL 247 #F018 | SS247F18 | G01028 | 177124023201 |
| SHIP SHOAL 247 #F019 | SS247F19 | G01028 | 177124052500 |
| SHIP SHOAL 248 #D006 | SS248D06 | G01029 | 177124015000 |
| SHIP SHOAL 248 #D015 | SS248D15 | G01029 | 177124020600 |
| SHIP SHOAL 248 #D016 | SS248D16 | G01029 | 177124021000 |
| SHIP SHOAL 248 #D018 | SS248D18 | G01029 | 177124021100 |
| SHIP SHOAL 248 #D020 | SS248D2000 | G01029 | 177124022000 |
| SHIP SHOAL 248 #F008 | SS248F08 | G01029 | 177124022100 |
| SHIP SHOAL 248 #G001 | SS248G01 | G01029 | 177124049500 |
| SHIP SHOAL 248 #G002 | SS248G02 | G01029 | 177124053000 |
| SHIP SHOAL 248 #G003 | SS248G03 | G01029 | 177124053300 |
| SHIP SHOAL 249 #006 | SS24906 | G01030 | 177124062200 |
| SHIP SHOAL 249 #D002 | SS249D02 | G01030 | 177124012000 |
| SHIP SHOAL 249 #D004 | SS249D04 | G01030 | 177124017100 |
| SHIP SHOAL 249 #D005 | SS249D05 | G01030 | 177124014200 |
| SHIP SHOAL 249 #D008 | SS249D08 | G01030 | 177124015900 |
| SHIP SHOAL 249 #D011 | SS249D11 | G01030 | 177124018500 |
| SHIP SHOAL 249 #D014 | SS249D14 | G01030 | 177124019200 |
| SHIP SHOAL 249 #D017 | SS249D1700 | G01030 | 177124020800 |
| SHIP SHOAL 249 #D019 | SS249D19 | G01030 | 177124021500 |
| SHIP SHOAL 252 #C004 | SS252C04 | G01529 | 177122001500 |
| SHIP SHOAL 252 #C005 | SS252C05 | G01529 | 177122002000 |
| SHIP SHOAL 252 #C009 | SS252C09 | G01529 | 177124029401 |
| SHIP SHOAL 252 #C012 | SS252C12 | G01529 | 177124047300 |
| SHIP SHOAL 252 #F001 | SS252F01 | G01529 | 177124052000 |
| SHIP SHOAL 252 #F003 | SS252F03 | G01529 | 177124052200 |
| SHIP SHOAL 252 #F004 | SS252F04 | G01529 | 177124067400 |
| SHIP SHOAL 253 #C001 | SS253C01 | G01031 | 177122000100 |
| SHIP SHOAL 253 #C002 | SS253C02 | G01031 | 177122006700 |
| SHIP SHOAL 253 #C003 | SS253C03 | G01031 | 177122001400 |
| SHIP SHOAL 253 #C006 | SS253C06 | G01031 | 177122002100 |
| SHIP SHOAL 253 #C007 | SS253C07 | G01031 | 177122002300 |
| SHIP SHOAL 253 #C008 | SS253C08 | G01031 | 177124030000 |
| SHIP SHOAL 253 #C010 | SS253C10 | G01031 | 177124029300 |
| SHIP SHOAL 253 #C011 | SS253C11 | G01031 | 177124030900 |
| SHIP SHOAL 253 #D001 | SS253D01 | G01031 | 177122004200 |
| SHIP SHOAL 253 #D003 | SS253D03 | G01031 | 177124000400 |
| SHIP SHOAL 253 #D004 | SS253D04 | G01031 | 177124001100 |
| SHIP SHOAL 253 #D005 | SS253D05 | G01031 | 177124001200 |
| SHIP SHOAL 253 #D006 | SS253D06 | G01031 | 177124001300 |
| SHIP SHOAL 253 #D007 | SS253D07 | G01031 | 177124001401 |
| SHIP SHOAL 253 #D008 | SS253D08 | G01031 | 177124001600 |
| SHIP SHOAL 253 #D009 | SS253D09 | G01031 | 177124001800 |
| SHIP SHOAL 253 #D010 | SS253D10 | G01031 | 177124002001 |
| SHIP SHOAL 253 #D013 | SS253D13 | G01031 | 177124002600 |
| SHIP SHOAL 253 #D014 | SS253D14 | G01031 | 177124002701 |
| SHIP SHOAL 253 #E001 | SS253E01 | G01031 | 177124024200 |
| SHIP SHOAL 253 #E002 | SS253E02 | G01031 | 177124024600 |
| SHIP SHOAL 253 #E003 | SS253E03 | G01031 | 177124025301 |
| SHIP SHOAL 253 #E004 | SS253E04 | G01031 | 177124025400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SHIP SHOAL 253 #E005 | SS253E05 | G01031 | 177124025500 |
| SHIP SHOAL 253 #E006 | SS253E06 | G01031 | 177124026600 |
| SHIP SHOAL 253 #E007 | SS253E07 | G01031 | 177124026800 |
| SHIP SHOAL 253 #E008 | SS253E08 | G01031 | 177124027600 |
| SHIP SHOAL 253 #E009 | SS253E09 | G01031 | 177124027701 |
| SHIP SHOAL 253 #E010 | SS253E10 | G01031 | 177124027800 |
| SHIP SHOAL 253 #E011 | SS253E11 | G01031 | 177124028200 |
| SHIP SHOAL 253 #E012 | SS253E12 | G01031 | 177124028400 |
| SHIP SHOAL 253 #E013 | SS253E13 | G01031 | 177124037500 |
| SHIP SHOAL 253 #E014 | SS253E14 | G01031 | 177124042100 |
| SHIP SHOAL 253 #E015 | SS253E15 | G01031 | 177124044401 |
| SHIP SHOAL 253 #F002 | SS253F02 | G01031 | 177124052100 |
| SHIP SHOAL 300 #A001 | SS300A01 | G07760 | 177124037401 |
| SHIP SHOAL 300 #A003 | SS300A03 | G07760 | 177124041602 |
| SHIP SHOAL 300 #A004 | SS300A04 | G07760 | 177124043100 |
| SHIP SHOAL 300 #A005 | SS300A05 | G07760 | 177124053600 |
| SHIP SHOAL 300 #A006 | SS300A06 | G07760 | 177124053700 |
| SHIP SHOAL 300 #B001 | SS300B01 | G07760 | 177124044100 |
| SHIP SHOAL 300 #B002 | SS300B02 | G07760 | 177124044800 |
| SHIP SHOAL 300 #B003 | SS300B03 | G07760 | 177124045600 |
| SHIP SHOAL 300 #B004 | SS300B04 | G07760 | 177124045700 |
| SHIP SHOAL 300 #B005 | SS300B05 | G07760 | 177124045900 |
| SHIP SHOAL 315 #A001 | SS315A01 | G09631 | 177124046901 |
| SHIP SHOAL 315 #A003 | SS315A03 | G09631 | 177124047402 |
| SHIP SHOAL206#E001(SS207E1 | SS207E0100 | G01523 | 177114115500 |
| SOUTH MARSH IS 066 #C001 | SM066C0100 | G01198 | 177070041200 |
| SOUTH MARSH IS 066 #C002 | SM066C0200 | G01198 | 177070049000 |
| SOUTH MARSH IS 066 #C003 | SM066C0300 | G01198 | 177074005800 |
| SOUTH MARSH IS 066 #C004 | SM066C0400 | G01198 | 177070050000 |
| SOUTH MARSH IS 066 #C005 | SM066C0500 | G01198 | 177070050700 |
| SOUTH MARSH IS 066 #C006 | SM066C0600 | G01198 | 177072018700 |
| SOUTH MARSH IS 066 #C007 | SM066C0700 | G01198 | 177070052800 |
| SOUTH MARSH IS 066 #C009B | SM066C09B0 | G01198 | 177072001200 |
| SOUTH MARSH IS 066 #C011 | SM066C1100 | G01198 | 177074072900 |
| SOUTH MARSH IS 066 #C012 | SM066C1200 | G01198 | 177074073500 |
| SOUTH MARSH IS 066 #D001 | SM066D0100 | G01198 | 177074025400 |
| SOUTH MARSH IS 066 #D003 | SM066D0300 | G01198 | 177074029000 |
| SOUTH MARSH IS 066 #D004 | SM066D0400 | G01198 | 177074032000 |
| SOUTH MARSH IS 066 #D005 | SM066D0500 | G01198 | 177074032600 |
| SOUTH MARSH IS 066 #D006 ST | SM066D0601 | G01198 | 177074031201 |
| SOUTH MARSH IS 066 #D007 ST1BP | SM066D0701 | G01198 | 177074027401 |
| SOUTH MARSH IS 087 #A002 | SM087A02 | G24870 | 177084092201 |
| SOUTH MARSH IS 087 #A004 | SM087A04 | G24870 | 177084093704 |
| SOUTH MARSH IS 087 #A005 | SM087A05 | G24870 | 177084093802 |
| SOUTH MARSH IS 087 #I002 | SM087I02 | G24870 | 177064097900 |
| SOUTH MARSH IS 102 #A001 | SM102A01 | G24872 | 177084091200 |
| SOUTH MARSH IS 102 #A006 | SM102A06 | G24872 | 177084094101 |
| SOUTH MARSH IS 132 #B002 | SM132B0200 | G02282 | 177084031800 |
| SOUTH MARSH IS 132 #B003 ST1 | SM132B0301 | G02282 | 177084031601 |
| SOUTH MARSH IS 132 #B004 | SM132B0400 | G02282 | 177084033000 |
| SOUTH MARSH IS 132 #B005 | SM132B0500 | G02282 | 177084033500 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 132 #B006 | SM132B0600 | G02282 | 177084033900 |
| SOUTH MARSH IS 132 #B007 | SM132B0700 | G02282 | 177084034100 |
| SOUTH MARSH IS 132 #B008 | SM132B0800 | G02282 | 177084035500 |
| SOUTH MARSH IS 132 #B009 | SM132B0900 | G02282 | 177084036200 |
| SOUTH MARSH IS 132 #B010 | SM132B1000 | G02282 | 177084036500 |
| SOUTH MARSH IS 132 #B011 | SM132B1100 | G02282 | 177084037800 |
| SOUTH MARSH IS 135 #C003 BP1 | SM135C0301 | G19776 | 177084089401 |
| SOUTH MARSH IS 136 #A004 | SM136A0400 | G02588 | 177084021900 |
| SOUTH MARSH IS 136 #A008 | SM136A08 | G02588 | 177084032401 |
| SOUTH MARSH IS 136 #A010 | SM136A1000 | G02588 | 177084035700 |
| SOUTH MARSH IS 136 #A015 | SM136A1500 | G02588 | 177084071200 |
| SOUTH MARSH IS 136 #C007 | SM136C0700 | G02588 | 177084091900 |
| SOUTH MARSH IS 137 #A001 | SM137A0100 | G02589 | 177084007700 |
| SOUTH MARSH IS 137 #A003 | SM137A0300 | G02589 | 177084020400 |
| SOUTH MARSH IS 137 #A005 | SM137A0500 | G02589 | 177084024100 |
| SOUTH MARSH IS 137 #A009 | SM137A0900 | G02589 | 177084034600 |
| SOUTH MARSH IS 137 #A011 ST1 | SM137A1101 | G02589 | 177084030201 |
| SOUTH MARSH IS 137 #A012 | SM137A1200 | G02589 | 177084040400 |
| SOUTH MARSH IS 137 #A013 | SM137A1300 | G02589 | 177084042900 |
| SOUTH MARSH IS 137 #A014 | SM137A1400 | G02589 | 177084045000 |
| SOUTH MARSH IS 137 #A018 | SM137A1800 | G02589 | 177084072800 |
| SOUTH MARSH IS 139 #B001 | SM139B01 | G21106 | 177084092300 |
| SOUTH MARSH IS 139 #B002 | SM139B02 | G21106 | 177084093501 |
| SOUTH MARSH IS 142 #A001 | SM142A01 | G01216 | 177084014100 |
| SOUTH MARSH IS 142 #A002 | SM142A02 | G01216 | 177084014800 |
| SOUTH MARSH IS 142 #A003 | SM142A03 | G01216 | 177084016500 |
| SOUTH MARSH IS 142 #A004 | SM142A04 | G01216 | 177084017900 |
| SOUTH MARSH IS 142 #A005 | SM142A05 | G01216 | 177084019200 |
| SOUTH MARSH IS 142 #A006 | SM142A06 | G01216 | 177084020300 |
| SOUTH MARSH IS 142 #A007 | SM142A07 | G01216 | 177084021000 |
| SOUTH MARSH IS 142 #A008 | SM143A08 | G01216 | 177084023000 |
| SOUTH MARSH IS 142 #A009 | SM142A09 | G01216 | 177084026300 |
| SOUTH MARSH IS 142 #A010 | SM142A10 | G01216 | 177084077000 |
| SOUTH MARSH IS 142 #A011 | SM142A11 | G01216 | 177084091100 |
| SOUTH MARSH IS 142 #C001 | SM142C01 | G01216 | 177084082900 |
| SOUTH MARSH IS 142 #C002 | SM142C02 | G01216 | 177084084201 |
| SOUTH MARSH IS 142 #C003 | SM142C03 | G01216 | 177084085000 |
| SOUTH MARSH IS 142 #C004 | SM142C04 | G01216 | 177084085400 |
| SOUTH MARSH IS 142 #C005 | SM142C05 | G01216 | 177084091301 |
| SOUTH MARSH IS 146 #A008 | SM146A08 | G09546 | 177084077102 |
| SOUTH MARSH IS 150 #C006 BP2 | SM150C0600 | G16325 | 177084091802 |
| SOUTH MARSH IS 150 #D003 | SM150D0301 | G16325 | 177084096401 |
| SOUTH MARSH IS 268 #A002C | SM268A02C0 | G02310 | 177074007600 |
| SOUTH MARSH IS 268 #A007A | SM268A07A0 | G02310 | 177074013600 |
| SOUTH MARSH IS 268 #A017B | SM268A17B0 | G02310 | 177074016800 |
| SOUTH MARSH IS 268 #D001 | SM268D0100 | G02310 | 177074020600 |
| SOUTH MARSH IS 268 #D003D | SM268D03D0 | G02310 | 177074021600 |
| SOUTH MARSH IS 268 #D004 | SM268D0400 | G02310 | 177074022500 |
| SOUTH MARSH IS 268 #D006 | SM268D0600 | G02310 | 177074024700 |
| SOUTH MARSH IS 268 #D007 | SM268D0700 | G02310 | 177074025700 |
| SOUTH MARSH IS 268 #D012 | SM268D1200 | G02310 | 177074028700 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 268 #D016D | SM268D16D1 | G02310 | 177074029901 |
| SOUTH MARSH IS 269 #A021B | SM269A21B0 | G02311 | 177074018100 |
| SOUTH MARSH IS 269 #B002 | SM269B0200 | G02311 | 177074008100 |
| SOUTH MARSH IS 269 #B017 ST1 | SM269B1701 | G02311 | 177074075701 |
| SOUTH MARSH IS 269 #B019 BP1 | SM269B1901 | G02311 | 177074088501 |
| SOUTH MARSH IS 269 #F001 ST1 | SM269F0101 | G02311 | 177074080401 |
| SOUTH MARSH IS 280 #G001 | SM280G0100 | G14456 | 177074071400 |
| SOUTH MARSH IS 280 #G002 | SM280G0200 | G14456 | 177074080700 |
| SOUTH MARSH IS 280 #H001 ST1 | SM280H0102 | G14456 | 177074081802 |
| SOUTH MARSH IS 280 #H002 STB | SM280H0203 | G14456 | 177074082303 |
| SOUTH MARSH IS 281 #C001 | SM281C0100 | G02600 | 177074012500 |
| SOUTH MARSH IS 281 #C003A | SM281C03A0 | G02600 | 177074013900 |
| SOUTH MARSH IS 281 #C005A | SM281C05A0 | G02600 | 177074015300 |
| SOUTH MARSH IS 281 #C006 | SM281C0600 | G02600 | 177074015800 |
| SOUTH MARSH IS 281 #C008 ST1 | SM281C0801 | G02600 | 177074017701 |
| SOUTH MARSH IS 281 #C010 ST | SM281C1001 | G02600 | 177074020701 |
| SOUTH MARSH IS 281 #C011 ST1 | SM281C1101 | G02600 | 177074022401 |
| SOUTH MARSH IS 281 #C012A | SM281C12A0 | G02600 | 177074024100 |
| SOUTH MARSH IS 281 #C014 ST | SM281C1401 | G02600 | 177074026901 |
| SOUTH MARSH IS 281 #C016C | SM281C16C0 | G02600 | 177074029600 |
| SOUTH MARSH IS 281 #C017 | SM281C1700 | G02600 | 177074030500 |
| SOUTH MARSH IS 281 #C019B | SM281C19B0 | G02600 | 177074034400 |
| SOUTH MARSH IS 281 #C020 ST1 | SM281C2001 | G02600 | 177074034901 |
| SOUTH MARSH IS 281 #C021B | SM281C21B0 | G02600 | 177074035500 |
| SOUTH MARSH IS 281 #C023 ST2 | SM281C2302 | G02600 | 177074036802 |
| SOUTH MARSH IS 281 #C024 | SM281C2400 | G02600 | 177074037300 |
| SOUTH MARSH IS 281 #C025 | SM281C2500 | G02600 | 177074083500 |
| SOUTH MARSH IS 281 #C026 | SM281C2600 | G02600 | 177074083700 |
| SOUTH MARSH IS 281 #C027 | SM281C2700 | G02600 | 177074085200 |
| SOUTH MARSH IS 281 #C028 BP2 | SM281C2802 | G02600 | 177074089402 |
| SOUTH MARSH IS 281 #D002 | SM281D0200 | G02600 | 177074021100 |
| SOUTH MARSH IS 281 #D009 | SM281D0900 | G02600 | 177074027100 |
| SOUTH MARSH IS 281 #D010A | SM281D10A0 | G02600 | 177074027500 |
| SOUTH MARSH IS 281 #D011 | SM281D1100 | G02600 | 177074028000 |
| SOUTH MARSH IS 281 #D013 | SM281D1300 | G02600 | 177074029100 |
| SOUTH MARSH IS 281 #D014A | SM281D14A0 | G02600 | 177074029700 |
| SOUTH MARSH IS 281 #D05A | SM281D05A0 | G02600 | 177074023200 |
| SOUTH MARSH IS 281 #D08A | SM281D08A0 | G02600 | 177074026600 |
| SOUTH MARSH IS 281 #E001D | SM281E01D0 | G02600 | 177074018500 |
| SOUTH MARSH IS 281 #E002A | SM281E02A0 | G02600 | 177074024600 |
| SOUTH MARSH IS 281 #E003 | SM281E0300 | G02600 | 177074027800 |
| SOUTH MARSH IS 281 #E004 | SM281E0400 | G02600 | 177074028500 |
| SOUTH MARSH IS 281 #E005A | SM281E05A0 | G02600 | 177074029300 |
| SOUTH MARSH IS 281 #E006 | SM281E0601 | G02600 | 177074030101 |
| SOUTH MARSH IS 281 #E007 | SM281E0700 | G02600 | 177074031600 |
| SOUTH MARSH IS 281 #E008A | SM281E08A1 | G02600 | 177074033101 |
| SOUTH MARSH IS 281 #E009A | SM281E09A0 | G02600 | 177074033800 |
| SOUTH MARSH IS 281 #E010A | SM281E10A0 | G02600 | 177074034800 |
| SOUTH MARSH IS 281 #E011 ST | SM281E1101 | G02600 | 177074035601 |
| SOUTH MARSH IS 281 #E012 | SM281E1200 | G02600 | 177074036000 |
| SOUTH MARSH IS 281 #E013 | SM281E1300 | G02600 | 177074036600 |

Exhibit III-B

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH MARSH IS 281 #E014 | SM281E1400 | G02600 | 177074038600 |
| SOUTH MARSH IS 281 #I001 | SM281I0101 | G02600 | 177074082601 |
| SOUTH MARSH IS 281 #I002 ST1 | SM281I0201 | G02600 | 177074082701 |
| SOUTH MARSH IS 281 #I003 | SM281I0300 | G02600 | 177074082800 |
| SOUTH PASS 017 #A023 | SP017A23 | G02938 | 177212022601 |
| SOUTH PASS 017 #D006 | SP017D06 | G02938 | 177214012901 |
| SOUTH PASS 017 #D009 | SP017D09 | G02938 | 177214013303 |
| SOUTH PASS 017 #D029 | SP017D29 | G02938 | 177214012203 |
| SOUTH PASS 017 #D032 | SP017D32 | G02938 | 177214030101 |
| SOUTH PASS 017 #E004 | SP017E04 | G02938 | 177214020300 |
| SOUTH PASS 017 #E006 | SP017E06 | G02938 | 177214020101 |
| SOUTH PASS 017 #G016 | SP017G16 | G02938 | 177214035501 |
| SOUTH PASS 017 #G026 | SP017G26 | G02938 | 177214037203 |
| SOUTH PASS 017 #G029 | SP017G29 | G02938 | 177214037504 |
| SOUTH PASS 037 #003 | SP03703 | 00697 | 177214045700 |
| SOUTH PASS 042 SWD 1 | SL301101 | 03011 | UNKNOWN |
| SOUTH PASS 059 #A018 | SP059A18 | G01608 | 177234015204 |
| SOUTH PASS 059 #C007 | SP059C07 | G02943 | 177212021402 |
| SOUTH PASS 059 #C008 | SP059C08 | G01608 | 177212022502 |
| SOUTH PASS 059 #C017 | SP059C17 | G02943 | 177212022802 |
| SOUTH PASS 059 #C018 | SP059C18 | G02943 | 177212024601 |
| SOUTH PASS 059 #C019 | SP059C19 | G01608 | 177214006906 |
| SOUTH PASS 059 #C020 | SP059C20 | G02943 | 177214007004 |
| SOUTH PASS 059 #C022 | SP059C22 | G02943 | 177214009002 |
| SOUTH PASS 059 #C026 | SP059C26 | G02943 | 177214010400 |
| SOUTH PASS 059 #C027 | SP059C27 | G02943 | 177214011302 |
| SOUTH PASS 059 #C030 | SP059C30 | G01608 | 177214005703 |
| SOUTH PASS 059 #C037 | SP059C37 | G02942 | 177212022701 |
| SOUTH PASS 059 #C039 | SP059C39 | G02943 | 177214006201 |
| SOUTH PASS 059 #C040 | SP059C40 | G01608 | 177214032304 |
| SOUTH PASS 059 #C041 | SP059C41 | G02942 | 177214032602 |
| SOUTH PASS 059 #C042 | SP059C42 | G02943 | 177214039603 |
| SOUTH PASS 059 #D023 | SP059D23 | G02942 | 177214017802 |
| SOUTH PASS 059 #D025 | SP059D25 | G02943 | 177214018403 |
| SOUTH PASS 059 #D026 | SP059D26 | G02942 | 177214019302 |
| SOUTH PASS 059 #D027 | SP059D27 | G02942 | 177214020500 |
| SOUTH PASS 059 #D033 | SP059D33 | G02942 | 177214031102 |
| SOUTH PASS 059 #D034 | SP059D34 | G02943 | 177214030901 |
| SOUTH PASS 059 #G002 | SP059G02 | G02943 | 177214033500 |
| SOUTH PASS 059 #G005 | SP059G05 | G02943 | 177214034000 |
| SOUTH PASS 059 #G012 | SP059G12 | G02943 | 177214035100 |
| SOUTH PASS 059 #G018 | SP059G18 | G02943 | 177214035601 |
| SOUTH PASS 059 #G020 | SP059G20 | G02943 | 177214036101 |
| SOUTH PASS 060 #A003 | SP060A03 | G02137 | 177214001501 |
| SOUTH PASS 060 #A004 | SP060A04 | G02137 | 177214001601 |
| SOUTH PASS 060 #A005 | SP060A05 | G02137 | 177212012400 |
| SOUTH PASS 060 #A006 | SP060A06 | G02137 | 177214001801 |
| SOUTH PASS 060 #A007 | SP060A07 | G02137 | 177212012700 |
| SOUTH PASS 060 #A009 | SP060A09 | G02137 | 177212014702 |
| SOUTH PASS 060 #A010 | SP060A10 | G02137 | 177214002902 |
| SOUTH PASS 060 #A012 | SP060A12 | G02137 | 177212017600 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 060 #A013 | SP060A13 | G01608 | 177214004000 |
| SOUTH PASS 060 #A017 | SP060A17 | G01608 | 177214004901 |
| SOUTH PASS 060 #A018 | SP060A18 | G02137 | 177212020600 |
| SOUTH PASS 060 #A019 | SP060A19 | G02137 | 177212020802 |
| SOUTH PASS 060 #A021 | SP060A21 | G02137 | 177212022201 |
| SOUTH PASS 060 #A025 | SP060A25 | G02938 | 177212024501 |
| SOUTH PASS 060 #A028 | SP060A28 | G02137 | 177212025003 |
| SOUTH PASS 060 #A029 | SP060A29 | G01608 | 177214008101 |
| SOUTH PASS 060 #A031 | SP060A31 | G01608 | 177214007106 |
| SOUTH PASS 060 #A032 | SP060A32 | G01608 | 177212018702 |
| SOUTH PASS 060 #A033 | SP060A33 | G02137 | 177214001303 |
| SOUTH PASS 060 #A034 | SP060A34 | G01608 | 177212017501 |
| SOUTH PASS 060 #A035 | SP060A35 | G02137 | 177212019302 |
| SOUTH PASS 060 #A036 | SP060A36 | G01608 | 177214001202 |
| SOUTH PASS 060 #A037 | SP060A37 | G02137 | 177212013701 |
| SOUTH PASS 060 #B001 | SP060B01 | G01608 | 177214002001 |
| SOUTH PASS 060 #B003 | SP060B03 | G01608 | 177214002302 |
| SOUTH PASS 060 #B004 | SP060B04 | G02137 | 177214002402 |
| SOUTH PASS 060 #B006 | SP060B06 | G01608 | 177214003001 |
| SOUTH PASS 060 #B007 | SP060B07 | G01608 | 177214003601 |
| SOUTH PASS 060 #B008 | SP060B08 | G01608 | 177214003701 |
| SOUTH PASS 060 #B012 | SP060B12 | G01608 | 177214004202 |
| SOUTH PASS 060 #B013 | SP060B13 | G01608 | 177214003904 |
| SOUTH PASS 060 #B014 | SP060B14 | G01608 | 177214004403 |
| SOUTH PASS 060 #B015 | SP060B15 | G01608 | 177214004502 |
| SOUTH PASS 060 #B017 | SP060B17 | G01608 | 177214004703 |
| SOUTH PASS 060 #B020 | SP060B20 | G01608 | 177214005101 |
| SOUTH PASS 060 #B021 | SP060B21 | G01608 | 177214002502 |
| SOUTH PASS 060 #B022 | SP060B22 | G01608 | 177214004106 |
| SOUTH PASS 060 #B026 | SP060B26 | G01608 | 177214005003 |
| SOUTH PASS 060 #C006 | SP060C06 | G02137 | 177212021100 |
| SOUTH PASS 060 #C023 | SP060C23 | G02137 | 177214009200 |
| SOUTH PASS 060 #C031 | SP060C31 | G02137 | 177214011806 |
| SOUTH PASS 060 #C038 | SP060C38 | G01608 | 177214005502 |
| SOUTH PASS 060 #D002 | SP060D02 | G02137 | 177214011601 |
| SOUTH PASS 060 #D010 | SP060D10 | G02137 | 177214013902 |
| SOUTH PASS 060 #D012 | SP060D12 | G02137 | 177214014301 |
| SOUTH PASS 060 #D014 | SP060D14 | G01608 | 177214014401 |
| SOUTH PASS 060 #D015 | SP060D15 | G01608 | 177214015102 |
| SOUTH PASS 060 #D016 | SP060D16 | G02137 | 177214016101 |
| SOUTH PASS 060 #D017 | SP060D17 | G02137 | 177214016202 |
| SOUTH PASS 060 #D018 | SP060D18 | G02137 | 177214016501 |
| SOUTH PASS 060 #D021 | SP060D21 | G02137 | 177214016703 |
| SOUTH PASS 060 #D022 | SP060D22 | G02137 | 177214015802 |
| SOUTH PASS 060 #D024 | SP060D24 | G02137 | 177214018200 |
| SOUTH PASS 060 #D025 | SP060D25 | G02137 | 177214038901 |
| SOUTH PASS 060 #D031 | SP060D31 | G02137 | 177214028901 |
| SOUTH PASS 060 #D035 | SP060D35 | G02137 | 177214022703 |
| SOUTH PASS 060 #E001 | SP060E01 | G01608 | 177214019202 |
| SOUTH PASS 060 #E002 | SP060E02 | G01608 | 177214021602 |
| SOUTH PASS 060 #E003 | SP060E03 | G01608 | 177214022201 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 060 #E005 | SP060E05 | G01608 | 177214022902 |
| SOUTH PASS 060 #E008 | SP060E08 | G01608 | 177214023900 |
| SOUTH PASS 060 #E009 | SP060E09 | G01608 | 177214024405 |
| SOUTH PASS 060 #E011 | SP060E11 | G01608 | 177214027500 |
| SOUTH PASS 060 #E012 | SP060E12 | G01608 | 177214025100 |
| SOUTH PASS 060 #E013 | SP060E13 | G01608 | 177214025601 |
| SOUTH PASS 060 #E014 | SP060E14 | G01608 | 177214025903 |
| SOUTH PASS 060 #E015 | SP060E15 | G01608 | 177214026300 |
| SOUTH PASS 060 #E016 | SP060E16 | G01608 | 177214026603 |
| SOUTH PASS 060 #E019 | SP060E19 | G01608 | 177214027400 |
| SOUTH PASS 060 #E021 | SP060E21 | G01608 | 177214027802 |
| SOUTH PASS 060 #E022 | SP060E22 | G02137 | 177214028700 |
| SOUTH PASS 060 #E023 | SP060E23 | G01608 | 177214029302 |
| SOUTH PASS 060 #E024 | SP060E24 | G01608 | 177214029403 |
| SOUTH PASS 060 #E025 | SP060E25 | G01608 | 177214031301 |
| SOUTH PASS 060 #E026 | SP060E26 | G01608 | 177214031501 |
| SOUTH PASS 060 #E028 | SP060E28 | G01608 | 177214032201 |
| SOUTH PASS 060 #G001 | SP060G01 | G02137 | 177214032901 |
| SOUTH PASS 060 #G003 | SP060G03 | G02137 | 177214033400 |
| SOUTH PASS 060 #G004 | SP060G04 | G02137 | 177214033700 |
| SOUTH PASS 060 #G006 | SP060G06 | G02137 | 177214033801 |
| SOUTH PASS 060 #G007 | SP060G07 | G01608 | 177214034102 |
| SOUTH PASS 060 #G008 | SP060G08 | G02137 | 177214034200 |
| SOUTH PASS 060 #G009 | SP060G09 | G01608 | 177214034600 |
| SOUTH PASS 060 #G010 | SP060G10 | G02137 | 177214034900 |
| SOUTH PASS 060 #G011 | SP060G11 | G01608 | 177214035000 |
| SOUTH PASS 060 #G013 | SP060G13 | G01608 | 177214034803 |
| SOUTH PASS 060 #G014 | SP060G14 | G02137 | 177214035301 |
| SOUTH PASS 060 #G015 | SP060G15 | G02137 | 177214035404 |
| SOUTH PASS 060 #G017 | SP060G17 | G01608 | 177214035701 |
| SOUTH PASS 060 #G019 | SP060G19 | G02137 | 177214035903 |
| SOUTH PASS 060 #G021 | SP060G21 | G02137 | 177214036201 |
| SOUTH PASS 060 #G022 | SP060G22 | G01608 | 177214036501 |
| SOUTH PASS 060 #G023 | SP060G23 | G01608 | 177214036700 |
| SOUTH PASS 060 #G024 | SP060G24 | G01608 | 177214036900 |
| SOUTH PASS 060 #G025 | SP060G25 | G02137 | 177214037001 |
| SOUTH PASS 060 #G027 | SP060G27 | G01608 | 177214037100 |
| SOUTH PASS 060 #G028 | SP060G28 | G01608 | 177214037301 |
| SOUTH PASS 060 #G031 | SP060G31 | G02137 | 177214038101 |
| SOUTH PASS 060 #G032 | SP060G32 | G02137 | 177214038302 |
| SOUTH PASS 060 #G033 | SP060G33 | G01608 | 177214037700 |
| SOUTH PASS 060 #G034 | SP060G34 | G02137 | 177214038901 |
| SOUTH PASS 060 #G035 | SP060G35 | G02137 | 177214039200 |
| SOUTH PASS 060 #G036 | SP060G36 | G02137 | 177214039301 |
| SOUTH PASS 061 #B018 | SP061B18 | G01609 | 177214004802 |
| SOUTH PASS 061 #E029 | SP061E29 | G01609 | 177214031802 |
| SOUTH PASS 066 #A012 | SP066A1200 | G01611 | 177234011401 |
| SOUTH PASS 066 #A015 | SP066A15 | G01611 | 177234011702 |
| SOUTH PASS 066 #C001 | SP066C0100 | G01611 | 177212019402 |
| SOUTH PASS 066 #C013 | SP066C1300 | G01611 | 177214005803 |
| SOUTH PASS 066 #C021 | SP066C2100 | G01611 | 177214008303 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| SOUTH PASS 066 #C025 | SP066C2500 | G01611 | 177214010301 |
| SOUTH PASS 066 #C029 | SP066C29 | G01611 | 177214012702 |
| SOUTH PASS 066 #C036 | SP066C3600 | G01611 | 177214005305 |
| SOUTH PASS 067 #A001 | SP067A01 | G01612 | 177234010501 |
| SOUTH PASS 067 #A004 | SP067A04 | G01612 | 177234010603 |
| SOUTH PASS 067 #A005 | SP067A05 | G01612 | 177234010702 |
| SOUTH PASS 067 #A008 | SP067A08 | G01612 | 177234010901 |
| SOUTH PASS 067 #A009 | SP067A09 | G01612 | 177234011001 |
| SOUTH PASS 067 #A010 | SP067A10 | G01612 | 177234011100 |
| SOUTH PASS 067 #A011 | SP067A11 | G01612 | 177234011200 |
| SOUTH PASS 067 #A013 | SP067A13 | G01612 | 177234011502 |
| SOUTH PASS 067 #A014 | SP067A14 | G01612 | 177234011601 |
| SOUTH PASS 067 #A016 | SP067A16 | G01612 | 177234015101 |
| SOUTH PASS 067 #A019 | SP067A19 | G01612 | 177234015700 |
| SOUTH PASS 067 #A020 | SP067A20 | G01612 | 177234015301 |
| SOUTH PASS 067 #A021 | SP067A21 | G01612 | 177234015600 |
| SOUTH PASS 067 #A022 | SP067A22 | G01612 | 177234015900 |
| SOUTH PASS 067 #A023 | SP067A23 | G01612 | 177234015801 |
| SOUTH PASS 067 #A024 | SP067A24 | G01612 | 177234016000 |
| SOUTH PASS 067 #A025 | SP067A25 | G01612 | 177234017400 |
| SOUTH PELTO 013 #009 | PL01300900 | G03171 | 177134019701 |
| SOUTH TIMBALIER 195 #B001 | ST195B01 | G03593 | 177154091400 |
| SOUTH TIMBALIER 195 #B002 | ST195B02 | G03593 | 177154092500 |
| SOUTH TIMBALIER 195 #B003 | ST195B03 | G03593 | 177154117901 |
| SOUTH TIMBALIER 315 #A003 | ST315A03 | G23946 | 177164029004 |
| SOUTH TIMBALIER 316 #A001 | ST316A0100 | G22762 | 177164028600 |
| SOUTH TIMBALIER 316 #A002 | ST316A0200 | G22762 | 177164028800 |
| STATE TRACT 773 #L001 (NW/4) | ST773L1N | 111650 | 427023021000 |
| STATE TRACT 773 #L001 (SW/4) | ST773L1S | 136449 | 426023016700 |
| STATE TRACT 773 #L002 | ST773L2 | 115727 | 427023021800 |
| STATE TRACT 773 #L003 | ST773L3 | 114988 | 427023022000 |
| VERMILION 196 #A001 | VR196A01 | G19760 | 177054112300 |
| VERMILION 196 #A002 | VR196A02 | G19760 | 177054116700 |
| VERMILION 196 #A004 | VR196A04 | G19760 | 177054127900 |
| VERMILION 207 #A003 | VR207A03 | G19761 | 177054117600 |
| VERMILION 261 #A001 | VR261A0100 | G03328 | 177064029000 |
| VERMILION 261 #A002 | VR261A0200 | G03328 | 177064033000 |
| VERMILION 261 #A004 | VR261A0402 | G03328 | 177064032902 |
| VERMILION 261 #A005 | VR261A0500 | G03328 | 177064034600 |
| VERMILION 261 #A007 | VR261A0700 | G03328 | 177064035400 |
| VERMILION 261 #A008 | VR261A0800 | G03328 | 177064084900 |
| VERMILION 262 #A006 | VR262A06 | G34257 | 177064035201 |
| VERMILION 272 #A001 | VR272A01 | G23829 | 177064091300 |
| VERMILION 272 #A002 | VR272A02 | G23829 | 177064091400 |
| VERMILION 272 #A003 | VR272A03 | G23829 | 177084093603 |
| VERMILION 272 #A004 | VR272A04 | G23829 | 177064091602 |
| VERMILION 272 #A005 | VR272A05 | G23829 | 177064091700 |
| VERMILION 272 #A006 | VR272A06 | G23829 | 177064096100 |
| VERMILION 272 #A007 | VR272A07 | G23829 | 177064096200 |
| VERMILION 272 #B001 | VR272B01 | G23829 | 177064091800 |
| VERMILION 272 #B002 | VR272B02 | G23829 | 177064092502 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VERMILION 272 #C001 | VR272C01 | G23829 | 177064096001 |
| VERMILION 273 #B003 | VR273B03 | G14412 | 177064092600 |
| VERMILION 279 #A001 | VR279A01 | G11881 | 177064074701 |
| VERMILION 279 #A002 | VR279A02 | G11881 | 177064075701 |
| VERMILION 279 #A003 | VR279A03 | G11881 | 177064076601 |
| VERMILION 279 #A004 | VR279A04 | G11881 | 177064087600 |
| VERMILION 279 #A005 | VR279A05 | G11881 | 177064075802 |
| VERMILION 279 #A006 | VR279A06 | G11881 | 177064079900 |
| VERMILION 279 #A007 | VR279A07 | G11881 | 177064078800 |
| VERMILION 279 #A008 | VR279A08 | G11881 | 177064079600 |
| VERMILION 279 #A009 | VR279A09 | G11881 | 177064080400 |
| VERMILION 279 #A010 | VR279A10 | G11881 | 177064080700 |
| VERMILION 279 #A011 | VR279A11 | G11881 | 177064080802 |
| VERMILION 279 #A012 | VR279A12 | G11881 | 177064087100 |
| VERMILION 313 #B001 | VR313B01 | G01172 | 177064028100 |
| VERMILION 313 #B002 | VR313B02 | G01172 | 177064029700 |
| VERMILION 313 #B003 | VR313B03 | G01172 | 177064030100 |
| VERMILION 313 #B005 | VR313B05 | G01172 | 177064032800 |
| VERMILION 313 #B006 | VR313B06 | G01172 | 177064031900 |
| VERMILION 313 #B007 | VR313B07 | G01172 | 177064032700 |
| VERMILION 313 #B009 | VR313B09 | G01172 | 177064033801 |
| VERMILION 313 #B010 | VR313B10 | G01172 | 177064035700 |
| VERMILION 313 #B011 | VR313B11 | G01172 | 177064037100 |
| VERMILION 313 #B012 | VR313B12 | G01172 | 177064036200 |
| VERMILION 313 #C001 | VR313C01 | G01172 | 177064071700 |
| VERMILION 313 #C002 | VR313C02 | G01172 | 177064071900 |
| VERMILION 313 #C003 | VR313C03 | G01172 | 177064072200 |
| VERMILION 313 #C004 | VR313C04 | G01172 | 177064072000 |
| VERMILION 313 #D001 | VR313D01 | G01172 | 177064090000 |
| VERMILION 313 #D002 | VR313D02 | G01172 | 177064090201 |
| VERMILION 313 #D003 | VR313D03 | G01172 | 177064090300 |
| VERMILION 313 #D004 | VR313D04 | G01172 | 177064090501 |
| VERMILION 313 #D005 | VR313D05 | G01172 | 177064090701 |
| VERMILION 408 #A001 | VR408A01 | G15212 | 177064084401 |
| VERMILION 408 #A002 | VR408A02 | G15212 | 177064086600 |
| VERMILION 408 #A003 | VR408A03 | G15212 | 177064089900 |
| VIOSCA KNOLL 824 #004 | VK82400402 | G15436 | 608164032902 |
| VIOSCA KNOLL 826  A-10 ST1 | VK826A1001 | G06888 | 608164032601 |
| VIOSCA KNOLL 826  A-12 BP1 | VK826A1201 | G06888 | 608164038101 |
| VIOSCA KNOLL 826  A-13 | VK826A13 | G06888 | 608164038200 |
| VIOSCA KNOLL 826  A-14 ST1 | VK826A1401 | G06888 | 608164038001 |
| VIOSCA KNOLL 826  A-3 | VK826A03 | G06888 | 608164022000 |
| VIOSCA KNOLL 826  A-4 | VK826A04 | G06888 | 608164020500 |
| VIOSCA KNOLL 826  A-5 | VK826A05 | G06888 | 608164022100 |
| VIOSCA KNOLL 826  A-6 | VK826A06 | G06888 | 608164022200 |
| VIOSCA KNOLL 826  A-7 | VK826A07 | G06888 | 608164023600 |
| VIOSCA KNOLL 826  A-8 | VK826A08 | G06888 | 608164032400 |
| VIOSCA KNOLL 826  A-9 ST1 | VK826A0901 | G06888 | 608164032501 |
| VIOSCA KNOLL 826 A-1 ST | VK826A0101 | G06888 | 608164019401 |
| VIOSCA KNOLL 826 A-2 | VK826A02 | G06888 | 608164021900 |
| VIOSCA KNOLL 826 SS12 | VK826SS012 | G06888 | 608164035800 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| VIOSCA KNOLL 917 SS01 ST2 | VK917SS102 | G15441 | 608164040002 |
| VIOSCA KNOLL 962 SS01 | VK962SS01 | G15445 | 608164039901 |
| WEST CAMERON 009 #001 SL 18287 | SL1828701 | 18287 | 177002025000 |
| WEST CAMERON 065 #B018 | WC065B1800 | G02825 | 177004098900 |
| WEST CAMERON 065 #B019 | WC065B1901 | G02825 | 177004099501 |
| WEST CAMERON 065 #B020 ST2 | WC065B2001 | G02825 | 177004099701 |
| WEST CAMERON 066 #A017 | WC066A1700 | G02826 | 177004100600 |
| WEST CAMERON 066 #B002 | WC066B0200 | G02826 | 177004017600 |
| WEST CAMERON 066 #B003 | WC066B0300 | G02826 | 177004017800 |
| WEST CAMERON 066 #B004 | WC066B0400 | G02826 | 177004018300 |
| WEST CAMERON 066 #B006 | WC066B0600 | G02826 | 177004019100 |
| WEST CAMERON 066 #B007 | WC066B0700 | G02826 | 177004019600 |
| WEST CAMERON 066 #B008D | WC066B08D0 | G02826 | 177004020400 |
| WEST CAMERON 066 #B009 | WC066B0900 | G02826 | 177004020801 |
| WEST CAMERON 066 #B010 | WC066B1000 | G02826 | 177004021400 |
| WEST CAMERON 066 #B012 | WC066B1200 | G02826 | 177004023000 |
| WEST CAMERON 066 #B014 | WC066B1401 | G02826 | 177004022001 |
| WEST CAMERON 066 #B015 | WC066B1500 | G02826 | 177004087600 |
| WEST CAMERON 066 #B016 | WC066B1601 | G02826 | 177004097101 |
| WEST CAMERON 066 #B017 | WC066B1700 | G02826 | 177004098700 |
| WEST CAMERON 066 #E001 | WC066E0100 | G02826 | 177004034700 |
| WEST CAMERON 066 #E002 | WC066E0200 | G02826 | 177004043400 |
| WEST CAMERON 066 #E003 | WC066E0300 | G02826 | 177004047900 |
| WEST CAMERON 066 #E004 | WC066E0400 | G02826 | 177004051500 |
| WEST CAMERON 072 #001 | WC07200100 | G23735 | 177004114900 |
| WEST CAMERON 072 #002 | WC07200200 | G23735 | 177004119400 |
| WEST CAMERON 072 #003 | WC07200301 | G23735 | 177004125001 |
| WEST CAMERON 295 #A001 | WC295A0101 | G24730 | 177014037501 |
| WEST CAMERON 295 #A002 | WC295A0201 | G24730 | 177014039001 |
| WEST CAMERON 485 #A001 | WC485A01 | G02220 | 177024010002 |
| WEST CAMERON 485 #A010 | WC485A10 | G02220 | 177024117800 |
| WEST CAMERON 485 #A011 | WC485A11 | G02220 | 177024118300 |
| WEST CAMERON 485 #B006 | WC485B06 | G02220 | 177024108300 |
| WEST CAMERON 498 #B001 | WC498B01 | G03520 | 177024106500 |
| WEST CAMERON 498 #B002 | WC498B02 | G03520 | 177024106901 |
| WEST CAMERON 498 #B003 | WC498B03 | G03520 | 177024109002 |
| WEST CAMERON 498 #B004 | WC498B04 | G03520 | 177024109400 |
| WEST CAMERON 498 #B005 | WC498B05 | G03520 | 177024116001 |
| WEST CAMERON 498 #B006 | WC498B06 | G03520 | 177024116100 |
| WEST CAMERON 498 #B007 | WC498B07 | G03520 | 177024116200 |
| WEST CAMERON 498 #B008 | WC498B08 | G03520 | 177024118801 |
| WEST CAMERON 498 #B009 | WC498B09 | G03520 | 177024120201 |
| WEST CAMERON 498 #B010 | WC498B10 | G03520 | 177024121000 |
| WEST CAMERON 498 #B011 | WC498B11 | G03520 | 177024131700 |
| WEST CAMERON 507 #A002 | WC507A02 | G02549 | 177024018200 |
| WEST CAMERON 507 #A003 | WC507A03 | G02549 | 177024020101 |
| WEST CAMERON 507 #A004 | WC507A04 | G10594 | 177024023002 |
| WEST CAMERON 507 #A005 | WC507A05 | G02549 | 177024023500 |
| WEST CAMERON 507 #A006 | WC507A06 | G02549 | 177024024902 |
| WEST CAMERON 507 #A007 | WC507A07 | G02549 | 177024094900 |
| WEST CAMERON 507 #A008 | WC507A08 | G02549 | 177024094400 |

**Exhibit III-B**

| Asset Name | FWE Acct. Code | Lease Number | API |
|---|---|---|---|
| WEST CAMERON 507 #A009 | WC507A09 | G02549 | 177024094700 |
| WEST CAMERON 507 #B001 | WC507B01 | G02549 | 177024098304 |
| WEST CAMERON 507 #B002 | WC507B02 | G02549 | 177024099001 |
| WEST CAMERON 507 #B003 | WC507B03 | G02549 | 177024100201 |
| WEST CAMERON 507 #B004 | WC507B04 | G02549 | 177024108202 |
| WEST CAMERON 507 #B005 | WC507B05 | G02549 | 177024101200 |
| WEST CAMERON 507 #C001 | WC507C01 | G02549 | 177024130300 |
| WEST CAMERON 67 #D1 | WC067D0100 | G03256 | 177004031600 |
| WEST CAMERON 67 #D10 | - | G03256 | 177004098501 |
| WEST CAMERON 67 #D6 | - | G03256 | 177004040700 |
| WEST CAMERON 67 #D9 | WC067D0900 | G03256 | 177004078600 |
| WEST DELTA 027 #008 | WD02708 | G04473 | 177194065801 |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| BRAZOS A-105 P/F-A | BAA105PFA | G01757 | BAA105 | 87.5% |
| BRAZOS A-105 P/F-B | BAA105PFB | G01757 | BAA105 | 87.5% |
| BRAZOS A-133 P/F-A | BAA133APLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-B | BAA133BPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-C-AUX | BAA133CAUX | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-D | BAA133DPLT | G02665 | BAA133 | 25.0% |
| BRAZOS A-133 P/F-E | BAA133EPLT | G02665 | BAA133 | 25.0% |
| EAST BREAKS 159 P/F-A | EB159PFA | G02646 | EB159 | 66.7% |
| EAST BREAKS 160 P/F-A | EB160PFA | G02647 | EB160 | 100.0% |
| EAST BREAKS 165 P/F-A | EB165PFA | G06280 | EB165 | 100.0% |
| EAST CAMERON 330 P/F-B | EC330PFB | G03540 | EC330 | 95.0% |
| EAST CAMERON 332 P/F-A | EC332PFA | G09478 | EC332 | 90.4% |
| EAST CAMERON 349 P/F-A | EC349PFA | G14385 | EC349 | 25.0% |
| EUGENE IS 032 #012 CAS P/F | EI032PF12 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #016 CAS P/F | EI032PF16 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #020 CAS P/F | EI032PF20 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #029 CAS P/F | EI032PF29 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 #8 CAS P/F | EI032PF08 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-10 | EI032PF10 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-22 | EI032PF22 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-23 | EI032PF23 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-24 | EI032PF24 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-25 | EI032PF25 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-26 | EI032PF26 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-27 | EI032PF27 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-28 | EI032PF28 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-30 | EI032PF30 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-5 | EI032PF5 | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A | EI032PFA | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A-PRD | EI032PFAPR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A-QRT | EI032PFAQR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-A-TNK | EI032PFATN | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-E | EI032PFE | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-E-PRD | EI032PFEPR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-CMP | EI032PFFCM | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-PROD | EI032PFFPR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-TANK | EI032PFFTN | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-F-TRT | EI032PFFTR | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-GM-VALVE | EI032PFGMV | 00196 | EI032 | 23.7% |
| EUGENE IS 032 P/F-H | EI032PFH | 00196 | EI032 | 23.7% |
| EUGENE IS 053 P/F-10 | EI5310CAS | 00479 | EI053 | 0.0% |
| EUGENE IS 053 P/F-12 | EI5312CAS | 00479 | EI053 | 0.0% |
| EUGENE IS 053 P/F-8 | EI538CAS | 00479 | EI053 | 11.1% |
| EUGENE IS 053 P/F-9 | EI539PLT | 00479 | EI053 | 11.1% |
| EUGENE IS 053 P/F-B | EI53BPLT | 00479 | EI053 | 11.1% |
| EUGENE IS 053 P/F-C | EI53CPLT | 00479 | EI053 | 5.6% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| EUGENE IS 053 P/F-D | EI53DCAS | 00479 | EI053 | 0.0% |
| EUGENE IS 053 P/F-G | EI53GCAS | 00479 | EI053 | 11.1% |
| EUGENE IS 063 P/F-A | EI063PFA | 00425 | EI062 | 140.0% |
| EUGENE IS 063 P/F-B | EI063PFB | 00425 | EI062 | 140.0% |
| EUGENE IS 063 P/F-C-QTR | EI063PFC | 00425 | EI062 | 140.0% |
| EUGENE IS 100 P/F-D-QTR | EI100PFD | 00796 | EI100 | 100.0% |
| EUGENE IS 175 P/F-C-PROD | EI175CPRD | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-D | EI175DPLT | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-F | EI175FPLT | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-H | EI175HCAS | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-I | EI175ICAS | 438 | EI175 | 25.0% |
| EUGENE IS 175 P/F-J | EI175JPLT | 438 | EI175 | 25.0% |
| EUGENE IS 296 P/F-B | EI296PFB | G01687M | EI 296 | 14.5% |
| EUGENE IS 307 P/F-A | EI307PFA | G02110 | EI307 | 100.0% |
| EUGENE IS 307 P/F-B | EI307PFB | G02110 | EI307 | 100.0% |
| EUGENE IS 312 P/F-D | EI312PFD | G22679 | EI312 | 60.0% |
| EUGENE IS 330 P/F A C S | EI330ACSPF | G02115 | EI330 | 0.0% |
| EUGENE IS 330 P/F-B | EI330BPLT | G02115 | EI330 | 0.0% |
| EUGENE IS 330 P/F-D | EI330DPLT | G02115 | EI330 | 0.0% |
| EUGENE IS 342 P/F-C | EI342CPLT | G02319 | EI342 | 0.0% |
| GALVESTON 210 P/F-1 | GA2101CAS | G25524 | GA210 | 33.3% |
| GALVESTON 210 P/F-2 | GA2102CAS | G25524 | GA210 | 33.3% |
| GALVESTON 210 P/F-B | GA210BPLT | G25524 | GA210 | 33.3% |
| GALVESTON A-155 P/F-A | GAA155PFA | G30654 | GAA155 | 8.1% |
| HIGH ISLAND A-341 P/F-B | HIA341BPLT | G25605 | HIA341 | 40.0% |
| HIGH ISLAND A-376 P/F-A | HIA376APLT | G02754 | HIA376 | 51.2% |
| HIGH ISLAND A-376 P/F-B | HIA376BPLT | G02754 | HIA376 | 51.2% |
| HIGH ISLAND A-376 P/F-C | HIA376CPLT | G02754 | HIA376 | 51.2% |
| HIGH ISLAND A-382 P/F-F | HIA382FPLT | G02757 | HIA382 | 27.6% |
| HIGH ISLAND A-474 P/F-A | HIA474PFA | G02366 | HIA474 | 12.0% |
| HIGH ISLAND A-489 P/F-B | HIA489PFB | G02372 | HIA489 | 12.0% |
| HIGH ISLAND A-550 P/F-A | HIA550PFA | G04081 | HIA550 | 100.0% |
| HIGH ISLAND A-563 P/F-B | HIA563PFB | G02388 | HIA563 | 2.7% |
| HIGH ISLAND A-573 P/F-A | HIA573APLT | G02393 | HIA573 | 27.6% |
| HIGH ISLAND A-573 P/F-B | HIA573BPLT | G02393 | HIA573 | 27.6% |
| HIGH ISLAND A-582 P/F-C | HIA582PFC | G02719 | HIA582 | 3.0% |
| HIGH ISLAND A-582 P/F-D | HIA582PFD | G02719 | HIA582 | 2.6% |
| HIGH ISLAND A-595 P/F-CF | HIA595CFPT | G02721 | HIA595 | 27.6% |
| HIGH ISLAND A-595 P/F-D | HIA595DPLT | G02721 | HIA595 | 27.6% |
| HIGH ISLAND A-596 P/F-E | HIA596EPLT | G02722 | HIA596 | 27.6% |
| MAIN PASS 077 P/F-A | MP077PFA | G04481 | MP077 | 73.8% |
| SHIP SHOAL 149 P/F-C | SS149PFC | 434 | SS149 | 3.0% |
| SHIP SHOAL 169 P/F-BB | SS169PFBB | 00820 | SS169 | 33.3% |
| SHIP SHOAL 169 P/F-C | SS169PFC | 00820 | SS169 | 33.3% |
| SHIP SHOAL 169 P/F-G | SS169PFG | 00820 | SS169 | 33.3% |
| SHIP SHOAL 177 P/F-7 | SS177PF7 | 00590 | SS177 | 25.0% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SHIP SHOAL 177 P/F-A | SS177PFA | 00590 | SS177 | 25.0% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 0.0% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 1.0% |
| SHIP SHOAL 189 P/F-A | SS189APLT | G04232 | SS189 | 1.0% |
| SHIP SHOAL 189 P/F-C | SS189PFC | G04232 | SS189 | 0.0% |
| SHIP SHOAL 204 P/F-A | SS204APLT | G01520 | SS204 | 20.9% |
| SHIP SHOAL 204 P/F-A | SS204APLT | G01520 | SS204 | 0.2% |
| SHIP SHOAL 204 P/F-A-GEN | SS204AGEN | G01520 | SS204 | 20.9% |
| SHIP SHOAL 204 P/F-A-GEN | SS204AGEN | G01520 | SS204 | 0.2% |
| SHIP SHOAL 204 P/F-A-PROD | SS204APRD | G01520 | SS204 | 20.9% |
| SHIP SHOAL 204 P/F-A-PROD | SS204APRD | G01520 | SS204 | 0.2% |
| SHIP SHOAL 206 P/F-E | SS206EPLT | G01522 | SS206 | 40.0% |
| SHIP SHOAL 207 P/F-A-CMP | SS207ACOMP | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-CMP | SS207ACOMP | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-A-DRILL | SS207ADRL | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-DRILL | SS207ADRL | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-A-MANTIS | SS207PFAMA | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-MANTIS | SS207PFAMA | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-A-PROD | SS207APRD | G01523 | SS207 | 47.3% |
| SHIP SHOAL 207 P/F-A-PROD | SS207APRD | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-D | SS207DPLT | G01523 | SS207 | 47.0% |
| SHIP SHOAL 207 P/F-D | SS207DPLT | G01523 | SS207 | 0.3% |
| SHIP SHOAL 207 P/F-DWPF | SS207PFDWP | G01523 | SS207 | 19.8% |
| SHIP SHOAL 214 P/F-4 | SS214PF4 | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-E | SS214PFE | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-F | SS214PFF | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-H | SS214PFH | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-K | SS214PFK | 00828 | SS214 | 35.5% |
| SHIP SHOAL 214 P/F-L | SS214PFL | 00828 | SS214 | 35.5% |
| SHIP SHOAL 216 P/F-C | SS216CPLT | G01524 | SS216 | 5.2% |
| SHIP SHOAL 216 P/F-C | SS216CPLT | G01524 | SS216 | 0.3% |
| SHIP SHOAL 233 P/F-A | SS233PFA | G15293 | SS233 | 33.8% |
| SHIP SHOAL 233 P/F-B | SS233PFB | G01528 | SS233 | 33.8% |
| SHIP SHOAL 238 P/F-A | SS238PFA | G03169 | SS238 | 34.5% |
| SHIP SHOAL 238 P/F-B | SS238PFB | G03169 | SS238 | 34.5% |
| SHIP SHOAL 246 P/F-A | SS246PFA | G01027 | SS246 | 78.7% |
| SHIP SHOAL 246 P/F-E | SS246PFE | G01027 | SS246 | 78.7% |
| SHIP SHOAL 246 P/F-J | SS246PFJ | G01027 | SS246 | 100.0% |
| SHIP SHOAL 247 P/F-F | SS247PFF | G01028 | SS247 | 87.0% |
| SHIP SHOAL 248 P/F-D | SS248PFD | G01029 | SS248 | 83.3% |
| SHIP SHOAL 248 P/F-G | SS248PFG | G01029 | SS248 | 83.3% |
| SHIP SHOAL 253 P/F-C | SS253PFC | G01031 | SS253 | 100.0% |
| SHIP SHOAL 253 P/F-D | SS253PFD | G01031 | SS253 | 100.0% |
| SHIP SHOAL 253 P/F-E | SS253PFE | G01031 | SS253 | 100.0% |
| SHIP SHOAL 253 P/F-F | SS253PFF | G01031 | SS253 | 100.0% |
| SHIP SHOAL 291 P/F-A | SS291PFA | G02923 | SS291 | 100.0% |

Exhibit III-C(i)

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| SHIP SHOAL 300 P/F-A | SS300PFA | G07760 | SS300 | 24.3% |
| SHIP SHOAL 300 P/F-B | SS300PFB | G07760 | SS300 | 21.8% |
| SHIP SHOAL 315 P/F-A | SS315PFA | G09631 | SS315 | 25.0% |
| SOUTH MARSH IS 066 P/F-C | SM66CPLT | G01198 | SM058 | 50.0% |
| SOUTH MARSH IS 066 P/F-D | SM66DPLT | G01198 | SM066 | 50.0% |
| SOUTH MARSH IS 102 P/F-A | SM102PFA | G24872 | SM102 | 100.0% |
| SOUTH MARSH IS 132 P/F-B | SM132BPLT | G02282 | SM132 | 50.0% |
| SOUTH MARSH IS 137 P/F-A | SM137APLT | G02589 | SM137 | 50.0% |
| SOUTH MARSH IS 142 P/F-A | SM142PFA | G01216 | SM142 | 100.0% |
| SOUTH MARSH IS 142 P/F-C | SM142PFC | G01216 | SM142 | 100.0% |
| SOUTH MARSH IS 146 P/F-B | SM146PFB | G09546 | SM146 | 100.0% |
| SOUTH MARSH IS 147 P/F-A | SM147PFA | G06693 | SM147 | 100.0% |
| SOUTH MARSH IS 268 P/F-A-DRL | SM268APLT | G02310 | SM268 | 30.1% |
| SOUTH MARSH IS 268 P/F-A-DRL | SM268APLT | G02310 | SM268 | 0.4% |
| SOUTH MARSH IS 268 P/F-A-PRD | SM268APRD | G02310 | SM268 | 30.1% |
| SOUTH MARSH IS 268 P/F-A-PRD | SM268APRD | G02310 | SM268 | 0.4% |
| SOUTH MARSH IS 268 P/F-D | SM268DPLT | G02310 | SM268 | 30.1% |
| SOUTH MARSH IS 268 P/F-D | SM268DPLT | G02310 | SM268 | 0.4% |
| SOUTH MARSH IS 269 P/F-B | SM269BPLT | G02311 | SM269 | 26.8% |
| SOUTH MARSH IS 269 P/F-B | SM269BPLT | G02311 | SM269 | 0.4% |
| SOUTH MARSH IS 269 P/F-F | SM269FCAS | G02311 | SM269 | 11.9% |
| SOUTH MARSH IS 269 P/F-F | SM269FCAS | G02311 | SM269 | 0.4% |
| SOUTH MARSH IS 280 P/F-G | SM280GPLT | G14456 | SM280 | 0.0% |
| SOUTH MARSH IS 280 P/F-H | SM280HPLT | G14456 | SM280 | 50.0% |
| SOUTH MARSH IS 280 P/F-I | SM280IPLT | G02600 | SM280 | 41.2% |
| SOUTH MARSH IS 280 P/F-I | SM280IPLT | G02600 | SM280 | 0.3% |
| SOUTH MARSH IS 281 P/F-C | SM281PFC | G02600 | SM281 | 31.4% |
| SOUTH MARSH IS 281 P/F-C | SM281PFC | G02600 | SM281 | 0.5% |
| SOUTH MARSH IS 281 P/F-E | SM281EPLT | G02600 | SM281 | 31.4% |
| SOUTH MARSH IS 281 P/F-E | SM281EPLT | G02600 | SM281 | 0.5% |
| SOUTH PASS 060 P/F-A | SP060PFA | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-B | SP060PFB | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-C | SP060PFC | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-D | SP60PFD | G01608 | SP60P | 100.0% |
| SOUTH PASS 060 P/F-E | SP060PFE | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-F | SP060PFF | G01608 | SP060 | 100.0% |
| SOUTH PASS 060 P/F-G | SP60PFG | G01608 | SP60P | 100.0% |
| SOUTH PASS 067 P/F-A | SP067PFA | G01612 | SP067 | 100.0% |
| SOUTH PELTO 013 P/F-7 | PL013PF7 | G03171 | PL013 | 2.0% |
| SOUTH PELTO 013 P/F-9 | PL013PF9 | G03171 | PL013 | 2.0% |
| SOUTH PELTO 013 P/F-A | PL013PFA | G03171 | PL013 | 0.0% |
| SOUTH PELTO 013 P/F-B | PL013PFB | G03171 | PL013 | 0.0% |
| SOUTH PELTO 013 P/F-S | PL013PFS | G03171 | PL013 | 0.0% |
| SOUTH TIMBALIER 195 P/F-B | ST195PFB | G03593 | ST195 | 100.0% |
| SOUTH TIMBALIER 316 P/F-A | ST316PFA | G22762 | ST316 | 40.0% |
| VERMILION 196 P/F-A | VR196PFA | G19760 | VR196 | 100.0% |

**Exhibit III-C(i)**

| Asset Name | FWE Acct. Code | Lease Number | Area/Block | WI |
|---|---|---|---|---|
| VERMILION 261 P/F-A | VR261APLT | G03328 | VR261 | 25.0% |
| VERMILION 261 P/F-A-AUX | VR261AAUX | G03328 | VR261 | 25.0% |
| VERMILION 272 P/F-A | VR272PFA | G23829 | VR272 | 100.0% |
| VERMILION 272 P/F-B | VR272PFB | G23829 | VR272 | 100.0% |
| VERMILION 272 P/F-C | VR272PFC | G23829 | VR272 | 100.0% |
| VERMILION 313 P/F-B | VR313PFB | G01172 | VR313 | 100.0% |
| VERMILION 313 P/F-C | VR313PFC | G01172 | VR313 | 100.0% |
| VERMILION 313 P/F-D | VR313PFD | G01172 | VR313 | 100.0% |
| VERMILION 408 P/F-A | VR408PF | G15212 | VR408 | 0.331868 |
| VIOSCA KNOLL 826 NEPTUNE SPAR | VK826NEP | G15441 | VK826 | 100.0% |
| WEST CAMERON 065 P/F-8 | WC065CAIS8 | G02825 | WC065 | 0.0% |
| WEST CAMERON 065 P/F-9 | WC065CAIS9 | G02825 | WC065 | 0.0% |
| WEST CAMERON 065 P/F-JA | WC65JAPLT | G02825 | WC065 | 0.0% |
| WEST CAMERON 065 P/F-JA-AUX | WC65JAAUX | G02825 | WC065 | 0.0% |
| WEST CAMERON 066 P/F-B | WC066PFB | G02826 | WC066 | 17.1% |
| WEST CAMERON 066 P/F-E | WC066PFE | G02826 | WC066 | 25.0% |
| WEST CAMERON 072 P/F-1 | WC072PF1 | G23735 | WC072 | 75.0% |
| WEST CAMERON 072 P/F-2 | WC072PF2 | G23735 | WC072 | 75.0% |
| WEST CAMERON 072 P/F-3 | WC072PF3 | G23735 | WC072 | 75.0% |
| WEST CAMERON 171 P/F-A | WC171PFA | G01997 | WC171 | 21.2% |
| WEST CAMERON 171 P/F-A-AUX1 | WC171PFAA1 | G01997 | WC171 | 21.2% |

**Exhibit III-C(ii)**

Exhibit III-C(ii)

| Name | State | County/Parish |
|---|---|---|
| BURRWOOD | Louisiana | Plaquemines |
| HAYES LUMBER | Louisiana | Jefferson Davis |
| HELIS 2 | Louisiana | Iberia |
| MYETTE POINT | Louisiana | St. Mary |

Exhibit III-D(i)

| SEGMENTNUMBER | COMPANYNAME | ORGAREA | ORGBLOCK | ORGNAME | RECAREA | RECBLOCK | RECNAME | SIZE | PRODUCT | STATUS | ROWNUMBER | FW Lease: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7912 | Fieldwood Energy, LLC | EB | 160 | A | HI | A582 | SSTI | 12 | GAS | Out of Service | G08528 | G02647 |
| 7923 | Fieldwood Energy, LLC | EB | 165 | A | HI | A 582 | 30 SSTI | 12 | GAS | Active | G08536 | G06280 |
| 10301 | Bandon Oil and Gas, LP | EC | 332 | A | EC | 330 | 08 SSTI | 6 | OIL | Out of Service | G14699 | G09478 |
| 44 | Fieldwood Energy, LLC | EI | 175 | C | EI | 176 | 12" SSTI | 8 | OIL | Out of Service | G13445 | 00438 |
| 1128 | Fieldwood Energy, LLC | EI | 330 | flanged end | EI | 306 | 14-inch SSTI | 14 | OIL | Out of Service | G02139A | G02115 |
| 7943 | Fieldwood Energy, LLC | EI | 342 | C | EI | 327 | 08 SSTI | 4 | OIL | Out of Service | G08541 | G02319 |
| 18493 | Fieldwood Energy, LLC | EI | 342 | C | EI | 343 | SSTI | 6 | GAS | Out of Service | G29108 | G02319 |
| 19960 | Fieldwood Energy LLC | EI | 342 | C | EI | 342 | Blind Flange | 6 | OIL | Out of Service | G29471 | G02319 |
| 11923 | Fieldwood Energy, LLC | EI | 53 | C | EI | 64 | 22 SSTI | 10 | G/C | Out of Service | G20539 | 00479 |
| 9211 | Fieldwood Energy, LLC | EI | 53 | B | EI | 64 | 22 SSTI | 6 | G/C | Partial Abandon | G12373 | 00479 |
| 15298 | Fieldwood Energy, LLC | GA | 210 | B | GA | 239 | SSTI | 8 | G/C | Active | G26931 | G25524 |
| 16077 | Fieldwood Energy, LLC | HI | 130 | #2 | HI | 165 | 8-inch SSTI | 8 | BLGH | Partial Abandon | G28284 | G25579 |
| 15401 | Fieldwood Energy, LLC | HI | A 341 | B | HI | A 340 | 30" SSTI | 812 | G/C | Active | G26938 | G25605 |
| 6669 | Fieldwood Energy LLC | HI | A 376 | A | HI | A 356 | 12 SSTI | 10 | GAS | Out of Service | G05238 | G02754 |
| 6669 | Fieldwood Energy LLC | HI | A 376 | Platform A | HI | A 356 | 12 SSTI W/PSN 10882 | 10 | GAS | Out of Service | G05238 | G02754 |
| 7684 | Fieldwood Energy, LLC | HI | A 550 | A | HI | A 568 | SSTI | 10 | GAS | Out of Service | G08276 | G04081 |
| 6340 | Fieldwood Energy, LLC | HI | A 568 | Subsea Valve | HI | A 539 | 20 SSTI | 20 | G/C | Out of Service | G04974 | G04081 |
| 5470 | Fieldwood Energy, LLC | HI | A356 | Valve | HI | A343 | HIOS | 12 | GAS | Out of Service | G04050 | G02754 |
| 10882 | Fieldwood Energy, LLC | HI | A356 | 10SST | HI | A356 | 12SSTI | 12 | GAS | Out of Service | G04051 | G02754 |
| 6504 | Fieldwood Energy, LLC | HI | A595 | D | HI | 573 | B | 8 | OIL | Out of Service | G28525 | G02721 |
| 14304 | Fieldwood Energy, LLC | MP | 101 | SSTI Manifold | MP | 102 | Plat A | 8 | BLKG | Partial Abandon | G24687 | G22792 |
| 15810 | Fieldwood Energy Offshore LLC | MP | 29 | Well No. 1 | MP | 118 | Platform A | 6 | BLKG | Out of Service | G28216 | G27196 |
| 15818 | Fieldwood Energy Offshore LLC | MP | 77 | A | MP | 151 | 18"SSTI | 8 | GAS | Out of Service | G28221 | G04481 |
| 4733 | Fieldwood Energy Offshore LLC | SM | 142 | A | SM | 127 | 24 SSTI | 10 | G/C | Out of Service | G03441 | G01216 |
| 15106 | Fieldwood Energy Offshore LLC | SM | 146 | B | SM | 147 | A | 8 | BLKG | Out of Service | G26837 | G09546 |
| 15107 | Fieldwood Energy, LLC | SM | 146 | B | SM | 147 | A | 4 | BLKG | Out of Service | G26838 | G09546 |
| 15108 | Fieldwood Energy, LLC | SM | 147 | A | SM | 146 | B | 2 | LIFT | Out of Service | G26839 | G09546 |
| 19363 | Fieldwood Energy Offshore LLC | SM | 147 | A | SM | 130 | 12 SSTI | 10 | BLKO | Out of Service | G14093 | G06693 |
| 19363 | Fieldwood Energy Offshore LLC | SM | 147 | A | SM | 130 | 12 SSTI | 6 | BLKO | Out of Service | G29316 | G06693 |
| 10977 | Fieldwood Energy, LLC | SM | 268 | A | SM | 280 | #03 | 3 | BLKG | Out of Service | G28756 | G14456 |
| 17499 | Fieldwood Energy, LLC | SM | 269 | B | SM | 268 | A | 10 | GAS | Out of Service | G28484 | G02311 |
| 13642 | Fieldwood Energy, LLC | SM | 280 | H | SM | 268 | A | 10 | BLKG | Permitted for Abandonment | G28758 | G14456 |
| 5427 | Fieldwood Energy, LLC | SM | 281 | E | SM | 268 | A | 12 | SPLY | Out of Service | G02817 | G02600 |
| 5429 | Fieldwood Energy, LLC | SM | 281 | C | SM | 281 | 12 SSTI | 10 | SPLY | Out of Service | G02817 | G02600 |
| 6512 | Fieldwood Energy, LLC | SM | 281 | C | SM | 268 | D | 10 | BLKO | Out of Service | G29131 | G02600 |
| 10268 | Fieldwood Energy SP LLC | SP | 60 | A | SP | 6 | F/S | 10 | OIL | Out of Service | G14679 | G02137 |
| 20050 | Fieldwood Energy, LLC | SS | 168 | SSTI | SS | 168 | SSTI | 6 | | Proposed | G28788 | 00820 |
| 6748 | Fieldwood Energy, LLC | SS | 169 | C Platform | SS | 169 | 18-inch SSTI | 6 | OIL | Out of Service | G09322 | 00820 |
| 12778 | Fieldwood Energy, LLC | SS | 189 | A | SS | 185 | 26"SSTI | 8 | G/C | Out of Service | G22139 | G04232 |
| 1138 | Fieldwood Energy, LLC | SS | 204 | A | SS | 207 | A | 6 | G/O | Out of Service | G13491 | G01520 |
| 1137 | Fieldwood Energy, LLC | SS | 207 | A Platform | SS | 204 | A | 4 | GAS | Out of Service | G13489 | G01523 |
| 1147 | Fieldwood Energy, LLC | SS | 207 | A | SS | 208 | F-Pump | 12 | OIL | Out of Service | G13492 | G01523 |
| 17775 | Fieldwood Energy, LLC | SS | 253 | C | SS | 208 | F-Pump | 4 | OIL | Out of Service | G01691C | G01031 |
| 18094 | Bandon Oil and Gas, LP | ST | 195 | B | ST | 196 | SSTI | 8 | G/C | Permitted for Abandonment Approved | G29005 | G03593 |
| 11107 | Bandon Oil and Gas, LP | ST | 196 | 06-inch SSTI | SS | 208 | F | 6 | OIL | Permitted for Abandonment Approved | G05120 | G03593 |
| 13720 | Fieldwood Energy, LLC | VK | 340 | 8"SSTI | VK | 251 | A | 8 | BLGH | Active | G28221 | G04481 |
| 13193 | Bandon Oil and Gas, LP | VR | 196 | A | VR | 206 | 12 SSTI | 8 | G/C | Out of Service | G22418 | G19760 |
| 18591 | Fieldwood Energy, LLC | VR | 196 | A | VR | 215 | A | 4 | BLKO | Out of Service | G29137 | G19760 |
| 18588 | Fieldwood Energy, LLC | VR | 215 | A | VR | 196 | A | 4 | GAS | Active | G29136 | G19760 |
| 17090 | Fieldwood Energy, LLC | VR | 261 | A | VR | 265 | A | 8 | BLKO | Out of Service | G28347 | G03328 |
| 14609 | Fieldwood Energy, LLC | VR | 272 | "A" | VR | 250 | 8" SSTI | 4 | OIL | Out of Service | G25384 | G23829 |
| 14277 | Fieldwood Energy, LLC | VR | 272 | A | SM | 116 | 20" SSTI | 10 | G/C | Out of Service | G25288 | G23829 |
| 5440 | Fieldwood Energy Offshore LLC | VR | 313 | B | VR | 313 | 20 SSTI | 10 | GAS | Out of Service | G04044 | G01172 |
| 15136 | Fieldwood Energy, LLC | VR | 313 | B | VR | 313 | 6" SSTI | 6 | OIL | Out of Service | G03879 | G01172 |
| 4289 | Fieldwood Energy Offshore LLC | WC | 485 | A | WC | 509 | GP | 12 | GAS | Out of Service | G02122E | G02220 |
| 14251 | Fieldwood Energy Offshore LLC | WC | 72 | #1 | WC | 65 | JA | 4 | BLKG | Out of Service | G25275 | G23735 |
| 16088 | Fieldwood Energy, LLC | WD | 122 | A | WD | 105 | E | 6 | GAS | Out of Service | G28289 | G13645 |
| 16089 | Fieldwood Energy, LLC | WD | 122 | A | WD | 105 | E | 3 | OIL | Out of Service | G28290 | G13645 |
| 15960 | Fieldwood Energy, LLC | WD | 90 | A | WD | 73 | SSTI | 4 | OIL | Out of Service | G28260 | G01089 |

**Exhibit III-D(ii)**

| Area | Block No. | Structure | Complex ID No. | Authority No. | FW Lease | Operator | Approval Date | Associated Assets |
|------|-----------|-----------|----------------|---------------|----------|----------|---------------|-------------------|
| EI | 63 | A | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | EI 63 002,003, EI 62 and 005, 006, 008, 009, 010 and 011 |
| EI | 63 | B | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | Production from EI 63 A |
| EI | 63 | C-QTR | 21515 | G30244 | 00425 | Fieldwood Energy Offshore LLC | 12/02/13 | Production from EI 63 A |
| SM | 146 | B | 1663 | G30248 | G09546 | Fieldwood Energy Offshore LLC | 08/21/13 | SM 139 B001 & B002 |
| SM | 147 | A | 23389 | G30200 | G06693 | Fieldwood Energy Offshore LLC | 09/12/13 | SM 139 B001, B002 & B002D |
| WD | 86 | A | 22593 | G30173 | G04243 | Fieldwood Energy Offshore LLC | 06/20/13 | WD 86 B001, B002 & B005 |
| VK | 826 | A-Neptune Spar | 24235 | G30353 | G15441 | Fieldwood Energy LLC | 07/03/18 | VK 917 SS001 & VK 962 SS001 |

**Exhibit III-E**

Call Signs:
WQBQ549
WQRK423

Exhibit III-F

| Contract Type | Contract Date | Contract Title | Contract Description |
|---|---|---|---|
| Land | 8/29/1956 | Operating Agreement | Operating Agreement eff. 8-29-1956 |
| Land | 12/4/1958 | Operating Agreement | Operating Agreement eff. 12-4-58 |
| Land | 7/25/1960 | Operating Agreement | Operating Agreement, dated effective July 25,1960, as amended, between Second Mobil Oil Company, Inc., Gulf Oil 'Corporation, and Humble Oil & Refining Company, as amended, SS 169 Field. |
| Land | 3/1/1961 | Operating Agreement | SS 214 Operating Agreement eff. 3-1-61 |
| Land | 3/13/1962 | Operating Agreement | Operating Agreement dated 3/13/62 between The Pure Oil Company and The Ohio Oil Company |
| Land | 7/3/1962 | Operating Agreement | Operating Agreement eff 7-3-62 as amended |
| Land | 1/12/1965 | Joint Operating Agreement | Main Agreement, dated effective January 12,1965, between Cities Service Oil Company, Skelly Oil Company, Sunray DX Oil Company and Tidewater Oil Company, governing operations on the contract area. The Operating Agreement contained in Exhibit "C" of the Main Agreement was superseded by the Joint Operating Agreement eff. 1/1/97 |
| Land | 1/21/1966 | Unit Agreement No. 14-08-001-8784 | Unit No. 891008784 - SS 271 |
| Land | 2/26/1966 | Offshore Operating Agreement | Operating Agreement by and between Hardy Oil & Gas USA Inc., As Operator and British-Borneo Exploration, Inc. and Zilkha Energy Company, As Non-Operators |
| Land | 6/10/1966 | Unit Operating Agreement Ship Shoal | SS 271 Unit Operating Agreement (Unit#891008784) As Amended, originally by and between Forest Oil Corp. as Operator, and Texas Gas Exploration Corp. et al as Non-Operators |
| Land | 12/23/1966 | Joint Operating Agreement | Operating Agreement by and between American Petrofina Exploration Company (Operator), Chambers & Kennedy, COperating Agreementstal Production Company, Waymon G. Peavy, Harbert Construction Company, Jenney Manufacturing Company, Kirby Petroleum Co., HC Price Co., States Marine Lines, Inc., Pan American Petroleum Corporation |
| Land | 1/1/1971 | Joint Operating Agreement | PENNZOIL OFFSHORE GAS OPERATORS, INC., MESA PETROLEUM CO., ET AL. |
| Land | 2/1/1971 | Joint Operating Agreement | Operating Agreement, dated February 1,1971, between Tenneco Oil Company and Texaco Inc. Amendment to Operating Agreement, dated effective May 1,1974, between Tenneco Oil Company, Texaco Inc. and Tenneco Exploration 11, Ltd., whereby Tenneco Exploration II became a party to, and ratified, the operating agreement. |
| Land | 8/1/1973 | Joint Operating Agreement | OPERATING AGREEMENT BY AND BETWEEN MOBIL OIL CORPORATION AND UNION OIL COMPANY OF CALIFORNIA ET AL |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement 8/1/1973 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 8/1/1973 | Offshore Operating Agreement | Operating Agreement eff. 8-1-73 |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 7/1/1974 | Joint Operating Agreement | Operating Agreement originally by and between Mobil Oil Corporation, Union Oil Company of Califomia and Amoco Production Company, as amended |
| Land | 9/3/1974 | FO | Farmout Agreement by and between CNG Producing Company, Columbia Gas Development Corporation and Forest Oil Corporation |
| Land | 7/1/1975 | Joint Operating Agreement | Operating Agreement eff. 7/1/75 by and between Mesa Petroleum as Operator and American Natural Gas Production Co, et al |
| Land | 9/1/1975 | Joint Operating Agreement | First Amendment to Operating. Agreements, dated effective September 1, 1975, between Mobil Oil Corporation, Amoco Production Company, and 'Union Oil Company of Califomia. |
| Land | 3/17/1976 | Joint Operating Agreement | Unit Operating Agreement 3/17/76 between Forest Oil Corp and Columbia Gas Development Corp, etal |
| Land | 4/1/1976 | Joint Operating Agreement | Operating Agreement eff. 4-1-76 as amended |
| Land | 4/1/1977 | Unit Operating Agreement | UNIT OPERATING AGREEMENT BY AND BETWEEN  DEVON ENERGY PRODUCTION , APACHE CORPORATION, ET AL. |
| Land | 4/1/1977 | Unit Agreement No. 14-08-0001-16943 | Unit Agreement, JD Sand, Reservoir A, Eugene Island Block 330 Field (Unit Number 891016943), dated effective April 1,1977, naming Pennzoil Oil & Gas, Inc., as Operator, and Texaco Inc. and Shell Oil Company, as sub-operators |
| Land | 8/1/1977 | Joint Operating Agreement | Operating Agreement eff. 8-1-77 b/b Transco et al |
| Land | 5/2/1978 | FO | FARMOUT AGREEMENT EFFECTIVE MAY 2, 1978, BY AND BETWEEN ENSERCH, FARMOR, AND ANADARKO, FARMEE. |
| Land | 8/17/1978 | Ownership Agreement "F" Platform | Platform Ownership Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Texas Gas Exploration Corporation, Pelto Oil Company, Ocean Production Company, Ocean Oil and Gas Company |
| Land | 9/15/1978 | Joint Operating Agreement | Amendment of Operating Agreement, dated September 15, 1978, between Amoco Production Company, Mobil Oil Corporation, and 'Union Oil Company of California. |
| Land | 11/13/1978 | Joint Operating Agreement | Second Amendment to Operating Agreements, dated effective; November 13, 1978, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of California |
| Land | 11/13/1978 | Joint Operating Agreement | Fourth Amendment to Operating Agreements, dated effective; November 13, 1978, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company of California |
| Land | 11/17/1978 | FO | Farmout Agreement dated November 17,1978 between Gulf Oil Corporation and Shell Oil Company covering the Northeast Quarter (NE/4) of that certain Oil and Gas Lease dated July 1,1967 bearing Serial No. OCS-G 1609, South Pass Area Block 61. |

| Land | 5/2/1979 | Proposed Installation and Operating Agreement of Ship Shoal Area Block 246 Field ("A" Platform) | Installation and Operating Agreement by and between CNG Producing Company, Consolidated Gas Supply Corporation |
|---|---|---|---|
| Land | 9/15/1979 | Joint Operating Agreement | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO, AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC, AND SAMEDAN OIL CORPORATION, NON-OPERATORS. |
| Land | 12/1/1979 | OFFSHORE OPERATING AGREEMENT | OFFSHORE OPERATING AGREEMENT b/b SHELL OIL COMPANYand FLORIDA EXPLORATION COMPANY, ET AL |
| Land | 1/1/1980 | Joint Operating Agreement | Third Amendment to Operating Agreements, dated effective January 1, 1980, between Mobil Oil Corporation, Amoco Production Company, and Union Oil Company bf Califomia. |
| Land | 4/1/1981 | Unit Operating Agreement | Unit Operating Agreement; dated April 1,1981, by and between Conoco Inc., Atlantic Richfield Company, Getty Oil Company, Cities Service Company, Placid Oil Company, Hamilton Brother Oil Company, Mobil Oil Exploration and Producing S.E., Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt Industries and Prosper Energy Corporation, comprising all working interest owners in the Ship ShOperating Agreementl Blocks 206, 207,,OCS-G:i523:and OCS-G 1523, respectively. |
| Land | 4/22/1980 | Joint Operating Agreement | Amendment to Operating Agreement, dated April 22, 1980, between Union Oil Company, of California and,Amoco;Production Company. |
| Land | 9/1/1981 | Joint Operating Agreement | Offshore Operating Agreement (MP 108+) 9/1/1981 |
| Land | 4/28/1982 | Letter Agreement | Letter Agreement dated April 28,1982 between Gulf Oil Corporation and Shell Oil Company evidencing an agreement for Gulf Oil Company to install a Drilling Platform in the Northeast Quarter (NE/4) South Pass Area Block 61. |
| Land | 1/1/1983 | ORRI | Conveyance of Overriding Royalty Interests, dated effective January 1,1983, creating the Tel Offshore Trust, and granting an overriding royalty interest, equivalent to 25% net profits interest, in all of Tenneco Exploration, Ltd.'s oil and gas properties |
| Land | 8/4/1983 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement effective August 4, 1984 BY AND BETWEEN APACHE CORPORATION AND SHELL OFFSHORE CONTIGUOUS BLOCK TO SHELL VENTURE PROPERTY THAT MAY TRIGGER AMI RESPONSIBILITY REGARDING FUTURE PURCHASE OR BID OF TRACTS COVERING GEOLOGIC STRUCTURE COMMON TO EXISTING SHELL VENTURE PROPERTY |
| Land | 4/13/1984 | Unit Operating Agreement | WD 27 28 Unit Operating Agreement Tenneco OP & Samedan et al as amended |
| Land | 6/3/1985 | Consent to Assign | Consent to Assignment of Interest, dated June 3,1985, between Tenneco Exploration, Ltd. and Texaco Inc., as Grantors of Consent, and Huffco Petroleum, as Assignor, and L. S. Holding Company, AE Investments, Inc., Colton Gulf COperating Agreementst, Inc., and Huffco 1982 Exploration Limited Partnership, as Assignees, assigning all of Huffco Petroleum's record title interest to the Assignees. |
| Land | 3/3/1986 | OA | Offshore Operating Agreement (All of Block 300 - A Wells) 3/3/1986 |
| Land | 5/1/1986 | Assignment | Assignment, dated effective May 1,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Plumb Offshore, Inc., subject to the reservation of an overriding royalty interest. |
| Land | 7/1/1986 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective July 1, 1986,, between Amoco Production Company; Union Oil Company of California, and Mobil ProducingTexas & New Mexico, Inc. |
| Land | 10/20/1986 | UA | Unit Agreement 10/20/86  between Chevron USA Inc., Union Exploraiton partners, LTD, and Pennzoil Producing Company |
| Land | 10/31/1986 | Assignment | Assignment of Interest, dated effective October 31,1986, whereby Tenneco Exploration, Ltd. transferred all of its interests in Block 342, Eugene Island Area, Official Leasing Map No. 4A, to Tenneco Oi! Company. |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OPERATING AGREEMENT | CATCO OPERATING AGREEMENT BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY ET AL |
| Land | 1/1/1989 | OA | Operating Agreement 1/1/89 |
| Land | 5/2/1989 | Letter Agreement | Letter Agreement, dated May 2, 1989, between Southern Natural Gas Company and Chevron U.S.A. Inc.,concerning the "Construction, Installation, Operation and Maintenance of Measurement and Pipeline Facilities " for receipt points at various locations on the OCS, including Main Pass 77 'A' platform (as amended). Consent Sec. 10. |
| Land | 9/10/1990 | FO | Farmout Agreement (Forest - SS 291/300) 9/10/1990 |
| Land | 9/15/1990 | OA | Offshore Operating Agreement (NW/4 NW/4 Blk 300 - B Wells) 9/15/1990 |
| Land | 10/1/1990 | Joint Operating Agreement | RATIFICATION AND AMENDMENT NUMBER 1 TO JOINT OPERATING AGREEMENT DATED OCTOBER 1, 1990, BY AND BETWEEN CONOCO INC. AND TEXAS PRODUCING INC. |
| Land | 10/1/1990 | UOA | UA and Unit Operating Agreement dated 10/1/90 between Marathon Oil Co and Phillips Petroleum etal |
| Land | 1/1/1991 | PA | Offshore Participation Agreement, dated effectiveJanuary 1,1991, between Unocal Exploration Corporation, The Northwestern Mutual Life Insurance Company, and Hardy Oil & Gas USA Inc., BA A105. |
| Land | 5/1/1991 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC., MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST ET AL |
| Land | 10/1/1991 | FO | FO and Operating Agreement dated 10/1/91 between Torch Energy Advisors Inc etal and Hall-Houston Oil Company |
| Land | 4/1/1992 | Unit Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development and. Production Operations on the South Pass Block 60 Unit (Blocks.6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf, Contract No. 754394018, as amended |
| Land | 4/1/1992 | Unit Agreement | Amendment to Unit Agreement. For Outer Continental Shelf Exploration, Development and Production Operations on the South Pass Block 60 Unit (Blocks 6,17, 59, 60, 66 and 67) South Pass Area, Offshore Louisiana Outer Continental Shelf (Contract No. 754394018) to expand the Unit Agreement to include the NE/4 of the NW/4 of Block 61, OCS-G 1009, South. Pass Area. |
| Land | 5/2/1992 | ABOS | Agreement and Bill of Sale, dated effective May 2,1992, between Union Oil Company of California, as Seller, and The Northwestern Mutual Life Insurance Company and Hardy Oil & Gas USA Inc., as Buyers, selling 43.75% interest in the BA A-105 "A" Platform, equipment arid pipeline, to NW Mutual 31.25%, and Hardy 12.50%. |
| Land | 5/15/1992 | Unit Agreement | EC 331/332 Unit Agreement |

| | | | |
|---|---|---|---|
| Land | 6/25/1992 | Letter Agreement | Letter Agreement, dated June 25, 1992, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana ", whereby Chevron obtained consent from Southern for Chevron to connect, operate and maintain pneumatic chart recorders on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
| Land | 7/1/1992 | FO | Farmout Agreement 7/1/1992 |
| Land | 7/1/1992 | OA | Offshore Operating Agreement 7/1/1992 |
| Land | 1/1/1993 | OA | Operating Agreement 1/1/1993 |
| Land | 2/15/1993 | Letter Agreement | Letter Agreement, dated effective February 15, 1993, between Chevron U.S.A. Inc. ("Chevron") and Southern Natural Gas Company ("Southern"), concerning the "Interconnection of Pneumatic Chart Recorders Permit - Various Meter Stations, Offshore Louisiana ", whereby Chevron and Southern agree to amend and replace Exhibit "A" to that certain Letter Agreement, dated June 25, 1992 (described hereinabove). |
| Land | 4/2/1993 | ABOS | Bill of Sale, dated April 2, 1993, from Southern Natural Gas Company ("Southern") to Chevron U.S.A. Inc.("Purchaser"), whereby Southern sells to Purchaser certain Barton chart recorders and appurtenant equipment located at various on various of Southern's existing meter stations, offshore, Louisiana (including Main Pass Area Block 77 "A" platform). |
| Land | 6/15/1993 | GC 244 Unit Agreement | Unit Agreement for Outer Continental Shelf Exploration, Development, and Production Operations on the Green Canyon Block 244 Unit (Contract No. 754393016) dated effective June 15, 1993, covering OCS-G 11043 (Green Canyon Block 244), OCS-G 12209 (Green Canyon Block 200), and OCS-G 12210 (Green Canyon Block 201). |
| Land | 6/15/1993 | Unit Operating Agreement | Unit Operating Agreement dated effective June 15, 1993 between Shell Offshore Inc and Marathon Oil Company, as successors in interest. |
| Land | 8/16/1993 | Joint Operating Agreement | Amendment to'Operating Agreement, dated August 16, 1993, between Express Acquisition Company and Torch EnergyAdvisors Inc. |
| Land | 12/30/1993 | OA | WD 90, WD 103 Operating AgreementS 12-30-1993 |
| Land | 1/1/1994 | Co-Development Agreement and Amendment to Unit Operating Agreement | Co-Development Agreement and Amendment to Unit Operating Agreement originally by and between CNG Producing Company & Columbia Gas Development Corp., et al |
| Land | 2/10/1994 | JDA | JOINT DEVELOPMENT AGREEMENT DATED FEBRUARY 10, 1994, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA - TERMINATED BY LETTER AGREEMENT DATED MARCH 10, 1999. |
| Land | 5/12/1994 | Letter Agreement | Letter Agreement by and between CNG Producing Company and Columbia Gas Development Corporation |
| Land | 6/1/1994 | Joint Operating Agreement | OPERATING AGREEMENT DATED JUNE 1, 1994, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. |
| Land | 7/1/1994 | OA | Operating Agreement 7/1/1974 |
| Land | 7/7/1994 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN POGO PRODUCING COMPANY AND COCKRELL OIL AND GAS, L.P., ET AL |
| Land | 7/15/1994 | Letter Agreement | LETTER AGREEMENT DATED JULY 15, 1994 BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY. |
| Land | 10/19/1994 | JDA | Joint Venture Development Agreement, dated October 19,1994',,between Norcen Explorer, Inc. and Texaco Exploration and Production, Inc. forming a working-interest unit comprising portions of'Ship .ShOperating Agreementl Block 206 and OCS-G 1523,-Ship ShOperating Agreementl Block 207; |
| Land | 11/16/1994 | JDA | Joint Venture Development Agreement, dated November 16><1994, between Norcen.Explorer, Inc., Texaco Exploration and1 Production, Inc., Industries, TheiGeorge R. Brown Partnership, JOC Venture, LamarHunt Trust Estate, Mobil Oil Exploration SoProducingiSoutheast Inc.,-and Hunt Oil Company,.covering all of Blocks 206 and 207 Ship ShOperating Agreementl Area. |
| Land | 11/30/1994 | JDA | Amendment to Joint Venture Development Agreement, dated November'30,1994, between iNorcen Explorer,.'Inc., Texaco Exploration and Production; Inc., Hunt Industries, The George.R..Brown Partnership, JOG Venture, Laniar Hunt Trust Estate, Mobil Oil Exploration &«Producing Southeast Inc., and Hunt Oil Company, covering all of Blocks 206 and 207 Ship ShOperating Agreementl Area. |
| Land | 3/28/1995 | Letter Agreement | LETTER AGREEMENT DATED MARCH 28,1995, BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY, ET AL. |
| Land | 4/6/1995 | JDA | Amendment to Joint Venture Development Agreement, dated April 6, 1995, between Norcen. Explorer, Inc., Texaco Exploration and Production; Inc., Hunt Industries, The George R. Brown, Partnership; JOC Venture, Lamar Hunt Trust Estate, Mobil Oil Exploration 8i Producing Southeast Inc., and Hunt Oil Company, covering; all of'Blocks.206 and 207 Ship ShOperating Agreementl Area. |
| Land | 5/1/1995 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MAY 1, 1995, BY AND BETWEEN CONOCO INC. AND VASTAR RESOURCES, INC., ET AL. |
| Land | 8/16/1995 | Letter Agreement | Letter Agreement by and between Columbia Gas Development and CNG Producing Company |
| Land | 10/1/1995 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN AMERADA HESS CORPORATION AND VASTAR RESOURCES INC. |
| Land | 12/14/1995 | LOI | REVISED LETTER OF INTENT (FARMOUT) DATED DECEMBER 14, 1995, BY AND BETWEEN ENSERCH EXPLORATION, INC, AND PETROBRAS AMERICA, INC. |
| Land | 3/7/1996 | Conditional Letter of Acceptance to Exploration Agreement | Letter Agreement by and between Hardy Oil & Gas USA, Inc., British-Borneo Exploration by Hardy Oil & Gas USA, Inc., British Borneo Exploration, Inc. and Zilkha Energy Company |
| Land | 4/17/1996 | Plan of Development | Plan of Development by and between Shell Offshore Inc, BP Exploration and Oil, Inc and marathon oil compnay dated effective 17 Apr 1996. |
| Land | 8/26/1996 | PSA | Purchase and Sale Agreement, dated August 26, 1996, between Amoco Production Company and Union Oil Company of California, EB 158/EB 159. |
| Land | 9/1/1996 | OA | Offshore Operating Agreement 9/1/1996 |

| | | | |
|---|---|---|---|
| Land | 9/3/1996 | OA | Operating Agreement (depths below 9000' on VR 392 & VR 408; and all depths VR 407) 9/3/1996 |
| Land | 1/1/1997 | OA | Operating Agreement eff. 1-1-97 |
| Land | 5/1/1997 | Joint Operating Agreement | Amendment to Operating Agreement, dated effective May 1,1997, between GOM Shelf, LLC, and ChevronTexaco and Kerr-McGee Oil & Gas Corporation, amending Exhibit "A" to reflect a new division of interest. |
| Land | 8/1/1997 | UOA | EC 331/332 Unit Operating Agreement |
| Land | 3/13/1998 | Joint Operating Agreement | AMENDMENT TO OPERATING AGREEMENT DATED MARCH 13, 1998, BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC. AND VASTAR RESOURCES, INC. |
| Land | 4/1/1998 | JVA | JOINT VENTURE AGREEMENT - SPECTER PROSPECT DATED APRIL 1, 1998 BY AND BETWEEN SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL., as amended. |
| Land | 4/1/1998 | Joint Operating Agreement | OFFSHORE OPERATING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. |
| Land | 4/6/1998 | Letter Agreement | LETTER (ELF OFFERS NIPPON PART OF THE COperating AgreementSTAL INTEREST) DATED APRIL 6, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED |
| Land | 4/6/1998 | JVA | AMENDMENT TO JOINT VENTURE AGREEMENT- ELF ASSUMES COperating AgreementSTAL POSITION DATED APRIL 6, 1998 ELF EXPLORATION INC. AND COperating AgreementSTAL O&G CORPORATION. |
| Land | 4/10/1998 | FO | FARMOUT AGREEMENT DATED APRIL 10, 1998, BY AND BETWEEN COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 4/13/1998 | Letter Agreement | LETTER- NIPPON TAKES ITS SHARE OF COperating AgreementSTAL F/O & SHARE OF ELF'S INTEREST DATED APRIL 13, 1998, BY AND BETWEEN ELF EXPLORATION INC., COperating AgreementSTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| Land | 11/5/1998 | JVA | ADDENDUM TO JOINT VENTURE AGREEMENT DATED NOVEMBER 5, 1998, BY AND BETWEEN SHELL OFSSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| Land | 2/9/1999 | Joint Operating Agreement | Offshore Operating Agreement, dated February 9, 1999, between Ocean Energy, Inc. and Shell Offshore Inc., covering Vermilion 195, 196 and 207, as amended December 23, 1999 by that certain Letter Agreement regarding the sale of properties to McMoran Oil & Gas LLC, and further amended August 22, 2000, December 31, 2001 and September 15, 2010. |
| Land | 12/1/1999 | Assignment | Assignment of Record Title Leasehold Interest dated effective December 1, 1999 between Shell Offshore Inc., as Assignor, and McMoRan Oil & Gas LLC, as Assignee, covering OCS-G 17960, Vermilion Block 196 |
| Land | 11/1/1980 | Joint Operating Agreement | Operating Agreement, Main Pass Area, Blocks 77 and 78, Gulf of Meidco, dated effective November 1, 1980,between Gulf Oil Corporation, Texoma Production'Company, The Anschutz Corporation, NICOR Exploration Company, and The Superior Oil Company, covering the federal Oil and Gas Lease OCS-G 4481, Blocks 77>and78 Main Pass Area, Offshore Louisiana, a true copy of the original is recorded in C.O.B. 592, Folio 658, Plaquemines Parish, Louisiana. |
| Land | 12/15/1999 | Letter Agreement | Letter Agreement, dated December 15, 1999, between Apache Corporation, Chevron U.S.A. Production Company, Kelley Oil Corporation, Key Production Company, Mobil Exploration & Producing U.S. Inc. and Sabco Oil and Gas Corporation, regarding the OCS-G 4481 #A-23 Well, Main Pass Block 77, Main Pass Block 151 Field, Offshore. LA. Note: only have Key's executed cop |
| Land | 1/31/2000 | FO | Farmout Letter Agreement 1/31/2000 |
| Land | 8/4/2000 | FO | Farmout Agreement 8/4/2000 |
| Land | 1/1/2001 | Joint Operating Agreement | Fifth Amendment to Operating Agreements, dated effective January 1,, 2001, between Union Oil Company of Califomia and 'Vastar Offshore,Inc |
| Land | 1/15/2001 | Joint Operating Agreement | Amendment to Operating Agreement,, dated January 15, .2001, between Union Oil Company, Amoco Production Company, and Vastar Offshore,'Inc |
| Land | 11/17/2000 | PA | Participation Agreement and Operating Agreement 11-17-00 b/b Samedan and Stone |
| Land | 3/1/2001 | JDA | Joint Development Agreement with Operating Agreement, dated March 1, 2001, between Union Oil Company of Califomia, Vastar Offshore, Inc. and Panaco, Inc., parts of EB 161 and 205. |
| Land | 6/1/2001 | OA | Offshore Operating Agreement 6/1/2001 |
| Land | 6/15/2001 | Joint Operating Agreement | JOINT OPERATING AGREEMENT BY AND BETWEEN TEXACO EXPLORATION AND RWE PERTROLEUM COMPANY ET AL |
| Land | 6/15/2001 | JDA | JOINT DEVELOPMENT AGREEMENT  EFFECTIVE JUNE 15, 2001, BY AND BETWEEN RWE PETROLEUM COMPANY AND W&T OFFSHORE, INC, "SM280 OWNERS" AND RME ET AL "SM 281 OWNERS" AND THAT CERTAIN JOINT OPERATING AGREEMENT ATTACHED THERETO AS EXHIBIT "B". |
| Land | 9/17/2001 | Joint Operating Agreement | Joint Operating Agreement attached to and made part of that certain Farmout Agreement dated September 17, 2001 by and between Amoco Production Company (Samedan Oil Corporation was successor-in-interest to Amoco Production Company and subsequently merged with Noble Energy, Inc.; Fieldwood is successor-in-interest to Noble Energy, Inc.) and Mariner Energy, Inc. |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 66 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering OCS-G 2282, South Marsh Island Block 132. |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 135 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 136 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 137 |
| Land | 10/1/2001 | OA | Joint Operating Agreement, dated effective October 1,2001, between Union Oil Company of California and Forest Oil Corporation, covering SM 150 |
| Land | 11/1/2001 | Joint Operating Agreement | Operating Agreement by and between Dominion Exploration & Production, Inc., as Operator, and Aviara Energy Corporation |
| Land | 11/1/2001 | PA | Participation Agreement by and between Dominion Exploration & Production, Inc. and Aviara Energy Corporation |
| Land | 3/15/2002 | Bidding Agreement | BIDDING AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P. AND LLOG EXPLORATION OFFSHORE, INC. |
| Land | 8/23/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Dominion Exploration & Production, Inc., as Operator, and Spinnaker Exploration Company, L.L.C., as Non-Operator |

| Land | 8/30/2002 | OA | SP 42 43 Operating Agreement LLOG and Pure et al |
|------|-----------|----|-----|
| Land | 9/1/2002 | Operating Agreement | Operating Agreement by and between Union Oil and Northstar Gulfsands |
| Land | 12/12/2002 | PA | PARTICIPATION AGREEMENT BY AND BETWEEN LLOG EXPLORATION OFFSHORE, INC. AND DAVIS OFFSHORE, L.P. |
| Land | 12/12/2002 | MOA | MEMORANDUM OF OPERATING AGREEMENT LLOG EXPLORATION OFFSHORE, INC. AND DAVIS OFFSHORE, L.P. |
| Land | 12/12/2002 | Joint Operating Agreement | Joint Operating Agreement by and between Llog Exploraiton Offshore, Inc and Davis Offshore L.P. dated 12 Dec 02 |
| Land | 3/24/2003 | FO | FARMOUT AGREEMENT BY AND BETWEEN NOBLE / KERR-MCGEE FARMOUT (MP 109) 3/24/2003 |
| Land | 3/31/2003 | Letter Agreement | Letter Agreement, dated March 31, 2003, between Chevron U.S.A. Inc., Sabco Oil and Gas Corporation, Apache Corporation, ExxonMobil Production Company, Key Production Company and Contour Energy<br>Company regarding Second Opportunity to Participate - Election to Acquire^Non-Participating Interest, in the MP77 OCS-G 4481 A-6 TTPG, Project No. UWGHP-R3011, Cost Center UCP170500, Main Pass Block 77.<br>Key Production Company election. |
| Land | 5/1/2003 | Joint Operating Agreement | Offshore Operating Agreement dated May 1, 2003 between Magnum Hunter Production,Inc, and Westport Resourcs Corporation et al |
| Land | 9/25/2003 | Area of Mutual Interest Agreement | Area of Mutual Interest Agreement by and between Apache Corporation and Chevron USA |
| Land | 1/1/2004 | FO | FARMOUT AGREEMENT DATED JANUARY 21, 2004, BY AND BETWEEN CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. |
| Land | 1/1/2004 | Assignments | Assignment from BP Exploration and Production to Noble Energy Inc dated effective 1 Jan 04 (Relevant PSA was excluded from NBL - FW Deal) |
| Land | 2/1/2004 | OA | VR 272 Operating Agreement eff/ 2-1-04 LLOG and ST Mary |
| Land | 3/18/2004 | PSA | PSA dated 3-18-04 but eff. 9-1-2003 b/b Noble Energy, Inc. and Northstar Gulfsands, LLC |
| Land | 3/25/2004 | JVA | Amendment to Joint Venture Development Agreement, dated. March 25, 2004 between Anadarko E 8t P Company LP: Chevron U.S.A. Inc.; Hunt Oil Company, Hunt Petroleum, the George,R. Brown Partnership LP, Offshore Investment ,Cov and the'Lamar Hunt Trust Estate,, whereby the Unit 'was expanded |
| Land | 4/1/2004 | Joint Operating Agreement | AMENDMENT OF JOINT OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 4/1/2004 | OA | Operating Agreement dated 4/1/04 between Newfieveld Exploration Co and Hunt Petroleum (AEC) Inc |
| Land | 4/2/2004 | Divestiture | ASSET SALE AGREEMENT DATED APRIL 2, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 4/19/2004 | FO | Farmout Agreement by and between Newfield Exploration Company and Westport Resources Company, as Owners of WC 73, and Dominion Exploration & Production, Inc. and Spinnaker Exploration Company, LLC as Owners of WC 72 |
| Land | 5/26/2004 | Production Handling Agreement | Production Handling Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 26 May 2004 and as amended by<br>(a) 1st Amendment dated 27 Jun 2005<br>(b) 2nd Amendment dated 6 Feb 2006<br>© 3rd Amendment dated 30 Jan 2008 |
| Land | 6/29/2004 | Letter Agreement | LETTER AGREEMENT DATED JUNE 29, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. |
| Land | 8/1/2004 | OA | Operating Agreement 8/1/04 |
| Land | 8/11/2004 | Notice | NOTICE OF ASSIGNMENT DATED AUGUST 11, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| Land | 8/24/2004 | Letter Agreement | Letter Agreement dated August 24, 2004, between Chevron U.S.A. Inc. and Williams Field Services- Gulf COperating Agreement Company, L.P. |
| Land | 9/7/2004 | Settlement and Release Agreement | SETTLEMENT AND RELEASE AGREEMENT DATED SEPTEMBER 7, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 10/6/2004 | LOI | LETTER OF INTENT DATED OCTOBER 6, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 10/7/2004 | EA | EXPLORATION AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| Land | 11/1/2004 | FO | FO eff. 11/1/04 as Amended, between Newfield Exploration Company, Continental Land & Fur Co., Inc., KCS Resources, Inc., and Fidelity Oil Co., as Farmors, and Explore Offshore LLC as Farmee |
| Land | 12/20/2004 | Preferential Right Agreement | Purchase and Sale agreement by and between BP Exploration and Production Inc and Marathon Oil Company dated 20 Dec 2004 |
| Land | 1/1/2005 | VUA | VOLUNTARY UNIT AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY. |
| Land | 1/11/2005 | Pref Right | Preferential Right Agreement dated 01/11/05 between BP and SOI for the acquisition of 49.999985% ofBP's 33.33333% interest at Troika. |
| Land | 1/25/2005 | Letter Agreement | Letter Agreement for the Operation and Ownership Transfer of Certain South Marsh Island Block 66 Facilities, dated effective January 25, 2005, between Transcontinental Gas Pipeline Corporation,;as Seller> and Union Oil "Company of California and Forest Oil Corporation, as Purchasers, for facilities and pipeline associated with "A" and "C" Platforms'. NEVER CONSOMATED. |
| Land | 2/1/2005 | Letter Agreement | Letter Agreement, dated February 1, 2005, between Union Oil Company of California and Forest Oil , covering OCS-G 2589, South Marsh Island Block 137, asthe Unit Operating Agreement for South Marsh Island Block 137 Unit, identified as Unit Agreement No. 14-08-001-20237, replacing and superseding, effective October 1, 2001, that certain Unit Operating Agreement dated January 1,1989 between Conoco Inc., Texaco Producing Inc. and CanadianOXY Offshore Production Company. |
| Land | 2/28/2005 | OA | JOperating Agreement eff. 2-28-05 b/b Peregrine O&G and Chroma Energy, et al; as amended |
| Land | 8/2/2005 | PSA | PURCHASE AND SALE AGREEMENT DATED AUGUST 2, 2005, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| Land | 9/12/2005 | Notice | NOTICE AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC AND DAVIS OFFSHORE, L.P. |
| Land | 10/25/2005 | OA | Operating Agreement 10-25-05 |
| Land | 1/19/2006 | Letter Agreement | Letter Agreement, - dated January 19, 2006, between BP Exploration & Production Inc. and Union Oil Company of California: |

| Land | 2/22/2006 | FO | Farmout Proposal Letter Agreement between The Houston Exploration Company and Noble Energy Inc. 2/22/2006 |
|---|---|---|---|
| Land | 3/1/2006 | ABOS | ABOS eff. 3-1-2006 b/b Noble Energy, Inc. as Assignor and Coldren Resources LP as Assignee. |
| Land | 10/30/2006 | FO | Farmout Agreement, dated effective October 30, 2006, between Chevron U.S.A. Inc., as Farmor, and Mariner Energy Resources, Inc., as farmee, covering S/2 of SM 149 (OCS-G 2592) and S/2 of SM 150 (005-016325) and limited to depths from the surface.to the stratigraphic equivalent of 100' below the deepest depth drilled in the #1 Well as proposed. |
| Land | 4/3/2007 | Confidentiality Agreement | Confidentiality Agreement by and between Apache Coporation, Samson Contour Energy and Shell Offshore |
| Land | 9/21/2007 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand SENECA RESOURCES CORPORATION |
| Land | 11/10/2007 | Purchase and Sale Agreement | Purchase and Sale agreement by and between BP Exploration and Production Inc and W+T Offshore, Inc  dated9 Nov 2004 (Preempted by Shell and Marathon) |
| Land | 5/14/2008 | Notice | Final Notification Letter Memo-Well Payout, elated May 14, 2008, EB 160 #A-13 well paid out on March 3, 2008. |
| Land | 10/1/2008 | ORRI | OVERRIDING ROYALTY INTEREST AGREEMENT BY AND BETWEEN LLOG EXPLORATION OFFSHORE INC AND DAVIS OFFSHORE, L.P. TO SHELL OFFSHORE INC AND MARATHON OIL COMPANY |
| Land | 10/1/2008 | Farmout Agreement | Farmout Agreement by and between Shell Offshore, Marathon Oil Company, Llog Exploraiton Offshore, Inc and Davis Offshore L.P. dated 1 Oct 2008 |
| Land | 2/15/2009 | FO | Farmout Agreement dated February 15, 2009 between SPN Resources LLC and Moreno Offshore Resources, L.L.C., Farmors, and Houston Energy, L.P., Farmee |
| Land | 2/17/2009 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN DAVIS OFFSHORE, L.P. AND LLOG EXPLORATION OFFSHORE, INC. |
| Land | 3/6/2009 | Letter Agreement | LETTER AGREEMENT BY AND BETWEEN SHELL OFFSHORE INC., LLOG EXPLORATION OFFSHORE, INC. AND DAVIS OFFSHORE, L.P. |
| Land | 3/30/2009 | PA | Participation Agreement dated March 30, 2009 between Helis Oil & Gas Company, L.L.C., et al and Challenger Minerals Inc. |
| Land | 3/30/2009 | Joint Operating Agreement | Offshore Operating Agreement dated March 30 2009 between Helis Oil & Gas Company, L.L.C., Operator, and Houston Energy, LP, et al, Non-operators; as Ratified and Amended by Ratification And Amendment of Operating Agreement dated March 16, 2012 |
| Land | 3/30/2009 | MOA | Memorandum of Offshore Operating Agreement and Financing Agreement dated March 30, 2009 between Helis Oil & Gas Company, L.L.C. et al |
| Land | 12/14/2009 | OPTION AGREEMENT | OPTION AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 2/1/2010 | FARMOUT AGREEMENT | FARMOUT AGREEMENT b/b APACHE CORPORATIONand WALTER OIL & GAS CORPORATION, ET AL |
| Land | 3/30/2010 | Marketing Election | Ship ShOperating Agreementl 252 Marketing Election Letter dated March 30, 2010 (Helis Oil & Gas Company, L.L.C.) |
| Land | 2/1/2011 | ABOS | Assignment and Conveyance, dated effective February 1, 2011, between Harrigan Energy Partners, Inc.,Assignor, and Chevron U.S.A. Inc^ as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities; pipelines; equipment, contracts,, etc., all as more fully described therein. |
| Land | 4/21/2011 | PSA | Asset Purchase and Sale Agreement, dated April 21, 2011, but made effective February 1, 2011, between SabcoOil and Gas Corporation, as Seller, and Chevron U.S.A. Inc., as Purchaser, whereby Purchaser acquired 0.63149% of 0.83922% of 8/8ths of Seller's right title and interest in the Lease, together with Seller's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein. |
| Land | 4/21/2011 | ABOS | Assignment and BUI of.Sale, dated April 21, 2011, but made effective February 1, 2011, between Sabco Oil and Gas Corporation, as Assignor/and Chevron U.S.A. Inc., as Assignee, covering Assignor's right, title and interest in the Lease, together with Assignor's interest in certain wells, facilities, pipelines, equipment, contracts, etc., all as more fully described therein |
| Land | 5/31/2011 | Tolling Agreement | Tolling Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 31 May 2011 and as extended by (a) 1st Extension dated 30 Jun 2012 (b) 2nd Extension dated 30 Sept 2012 |
| Land | 6/3/2011 | Notice | Apache Notice Letter, dated June 3, 2011, non-consented EB 159 #A-9 Well, Thru Tubing Gravel Pack GM 2-2. |
| Land | 8/1/2011 | ABOS | ABOS eff. 8-1-2011 b/b XTO Offshore Inc. ("Assingor") and Dynamic Offshore Resources, LLC ("Assignee") |
| Land | 8/25/2011 | PARTICIPATION AGREEMENT | PARTICIPATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| Land | 3/20/2012 | Notice | Chevron's Notice to Apache Letter, dated March 20, 2012, EB 159 #A-I5 Well (GM-2-2 Sand) conductor removal. |
| Land | 4/27/2012 | PHA | Production Handling Agreement dated August 1, 2009 between SPN Resources, LLC and Moreno Offshore Resources, L.L.C., Platform Owners, and Helis Oil & Gas Company, L.L.C., et al, Producers; as amended by agreement on April 27, 2012. |
| Land | 5/1/2012 | CONDENSATE TRANSPORT & SEPARATION AGREEMENT | CONDENSATE TRANSPORT & SEPARATION AGREEMENT b/b APACHE CORPORATIONand CASTEX OFFSHORE, INC., ET AL |
| Land | 6/1/2012 | PSA | Ratification of Purchase and Sale Agreement by Holders of Preferential Right to Purchase, dated effective June I , 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc. and Dynamic Offshore Resources, LLC, as Preferential Right Purchasers, affecting that certain Purchase and Sale Agreement, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Seller, and Chevron U.S.A. Inc., as Buyer. |
| Land | 6/1/2012 | ABOS | Conveyance, Assignment and Bill of Sale, dated June 27, 2012 but made effective June 1, 2012, between Key Production Company, Inc., as Assignor, and Chevron U.S.A. be. and Dynamic Offshore Resources, LLC, as Assignees, covering an undivided 0.83922% right, title and.interest in certain property described in Exhibit "A" attached thereto, assigning 75.247% thereof to Chevron (0.63149% net) and 24.753% thereof to Dynamic (0.207.73%.net). |

| Land | 6/27/2012 | PSA | Purchase and Sale Agreement, dated June 27, 2012 but made.effective June 1, 2012, between Key Production Company, Inc,,. as'Seller, and Chevron U.S.A. Inc., as Buyer, covering all of Seller's.right, title and interest in that certain Oil & Gas Lease bearing Serial No. OCS-G 448,1, ), together with Seller's interest in certain wells, facilities, pipelines, equipment contracts, etc, all as more.fully described therein. |
| Land | 8/1/2012 | Throughput Capacity Lease Agreement | Fieldwood leases capacity to Arena for Barnacle Pipeline |
| Land | 11/30/2012 | Permit Agmt(incl Seismic) | Seismic Reprocessing and Data Use Agreement by and between Noble Energy, Inc and Apache Deepwater LLC dated 30 Nov 12 |
| Land | 2/6/2013 | Letter Agreement | Letter Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 6 Feb 2013 re system upgrades |
| Land | 3/15/2013 | Exploration Venture | Exploration Venture for portions of VR 271 SM 87 by and between Fieldwood Energy Offshore LLC, Apache Corporation and Pisces Energy LLC |
| Land | 5/1/2013 | Transportation Agreement | Transportation Agreement by and between Dynamic Offshore Resources NS, LLC, W&T Offshore, Inc., Hall-Houston Exploration IV, L.P., GOM Offshore Exploration I, LLC and PetroQuest Energy, LLC |
| Land | 7/1/2013 | Acquisition | PURCHASE AND SALE AGREEMENT by and among APACHE CORPORATION,APACHE SHELF, INC., and APACHE DEEPWATER LLC collectively as the Sellers, and FIELDWOOD ENERGY LLCas Buyer and GOM SHELF LLC Dated as of July 18, 2013 |
| Land | 7/1/2013 | Acquisition | Acquistion by and between Fieldwood Energy LLC and Callon Petroleum Operating Co. |
| Land | 9/12/2013 | Amendemnbt of Exhibit "D" to Unit Operating Agreement | Amends UOperating Agreement dated 04/13/1984 as amended 09/08/2011 |
| Land | 9/30/2013 | Acquisition | Purchased GOM Shelf as a company from Apache |
| Land | 10/7/2013 | Election Letter Agreement PL 13 007 ST2 Well | Election Letter Agreement by and between Fieldwood Energy LLC and Enven Energy Ventures LLC |
| Land | 11/1/2013 | Purchase & Sale Agreement | Purchase and Sale Agreement by and between Noble Energy, Inc, Anadarko Petroleum, Anadarko US Offshore Corp and Eni Petroleum US LLC dated 1 Nov 13 as amended 21 July 2016 (but effective 1 Oct 14) |
| Land | 12/1/2013 | Acquisition | Equity Purchase Agreement between Sandridge Energy, Inc., Sandridge Holdings, Inc. and Fieldwood Energy LLC: Fieldwood purchased all companies listed with their assets which included Offshore and SandRidge Legacy South Texas and South Louisiana assets. |
| Land | 12/30/2013 | Withdrawal Agreement | Withdrawal Agreement by and between Fieldwood Energy LLC and Chevron U.S.A. Inc. |
| Land | 1/20/2014 | Letter Agreement | Letter Agreement by and between Shell Offshore Inc, LLOG Exploration Offshore, Inc and Davis Offshore L.P. dated 20 Jan 2014 re settlement of reallOperating Agreementction |
| Land | 3/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Black Elk Energy Offshore Operations, LLC: Leases where Fieldwood was the operator and Black Elk held interest. Exception is ST 53 where Black Elk was the Operator. |
| Land | 4/16/2014 | Settlment Agreement and Release | Settlement Agreementa and Release - SS 198/VR 369/VR 408/ SP 8/13 |
| Land | 4/21/2014 | Production Handling Agreement | For WD 27 "A" platform hadnling WD 28 production |
| Land | 4/28/2014 | Letter Agreement | Letter Agreement, dated April 28, 2014, between Chevron U.S.A. Inc. and Samson Contour Energy E&P, LLC, regarding Main Pass 77 Oil Imbalance Claim |
| Land | 5/16/2014 | Termination of Farmout Agreements | Terminates Farmouts dated 05.01.13 and 06.01.13 |
| Land | 6/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Davis Offshore L.P. |
| Land | 6/1/2014 | Acquisition | by and between  Fieldwood Energy Offshore LLC, NW Pipeline, Inc. and Northwestern Mutual Life Ins. Co:HIPS 13-III |
| Land | 7/25/2014 | Amendment and Ratification of Production Handling Agreement | Amend PHA for WD 27 "A" platform handling WD 28 production dated 04/21/14 |
| Land | 8/5/2014 | Purchase and Sale Agreement | Equity Purchase Agreement by and between Davis Petroleum Acquisition Corp, Davis Offshore Partners, LLC< and Davis Offshore, L.P. and Fieldwood Energy Offshore dated 5 Aug 2014 |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy SP LLC, Paul G. Hendershott and C. Gordon Lindsey: Conversion of NPI to ORI for the WD 79/80/85/86 - fields |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood SD Offshore LLC, Unocal Pipeline Companyand Union Oil Company of California : East Breaks 158/160 Fields |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC UNOCAL, and Chevron U.S.A. Inc. : GOM NOJV - Grand Isle/West Delta etc. |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Shell Offshore Inc.: Troika Unit - GC 244, 200, 201 |
| Land | 1/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Japex (U.S.) Corp.: WD 90 & WD 103 |
| Land | 1/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy SP LLC, Paul G. Hendershott and C. Gordon Lindsey, : Net Profits Interest |
| Land | 1/1/2015 | Confidential Mutual Release and Settlement Agreement | by and between Fieldwood Energy LLC, Fieldwood Energy Offshore LLC,  Fieldwood Energy SP LLC, Paul G. Hendershott and C. Gordon Lindsey, |
| Land | 1/1/2015 | Overriding Royalty Assignment | by and between  Fieldwood Energy Offshore LLC and Shell Offshore Inc: Overridign Royalty Assignment |
| Land | 1/13/2015 | Acquisition | by and between  Fieldwood Onshore LLC and Energy XXi Onshore, LLC: relative to (1) the transfer and ownership of certain existing leasehold rights, (2) the acquisition of additional leasehold rights, (3) the conduct of a 3-D geophysical survey and (4) the drilling, completion and operation of oil and/or gas wells relative to the lands outlined in Red on Exhibit "B" (the "Contract Area") |
| Land | 4/1/2015 | Assignment of Operating Rights Interest in Oil & Gas Lease | by and between  Fieldwood Energy Offshore LLC, Peregrine Oil & Gas, LLC RTR Fund I, L.P, and Hall-Houston Exploration II, L.P.: Assignment of Operating Rights Interest in Oil & Gas Lease - GA 151 Operating Rights |
| Land | 4/1/2015 | Production Handling Agreement | by and between  Bandon Oil and Gas, LP, Tana Exploration Company LLC, CSL Exploration LLC, GCER Offshore LLC and W&T Offshore, INC.: PHA |
| Land | 5/14/2015 | ORRI | Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of Stat Energy & Consulting, Inc. dated May 14, 2015 |
| Land | 5/14/2015 | ORRI | Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of James A. Bibby dated May 14, 2015 |
| Land | 5/14/2015 | ORRI | Assignment of Overriding Royalty Interest from Knight Resources, LLC, in favor of Clifford T. Crowe dated May 14, 2015 |
| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |

| Land | 6/18/2015 | Memorandum of Understanding | Pursuant to that certain assignment and bill of sale dated 01/01/2015 |
|------|-----------|------------------------------|------------------------------------------------------------------------|
| Land | 7/1/2015 | Settlment Agreement and Release | by and between  Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI Petroleum US LLC and ENI US Operating Co. Inc.: SS 249 D-5 RIG incident |
| Land | 8/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Chevron U.S.A. Inc. : MP 77, 78 and VK 251, 252, 340   Fields |
| Land | 8/12/2015 | Pipeline Modification Agreement | Relative to pipelines near SS 208 Seg #1849 and #882 |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/1/2015 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 9/16/2015 | Withdrawal Agreement | by and between  Fieldwood Energy LLC and JOC Venture: JOC Venture withdrawal |
| Land | 12/1/2015 | Acquisition | by and between  Fieldwood Energy Offshore LLC, ENI US Operating Inc,  and ENI Petroleum US LLC: GA 151, SS 246, SS 247, SS 248, SS 249, SS 270, SS 271, VR 78, VR 313, WC 72, WC 100, WC 130 |
| Land | 12/1/2015 | Release and Settlement Agreement | by and between  Fieldwood Energy LLC, Fieldwood Energy Offshore LLC, ENI US Operating Inc. and ENI Petrolem US LLC: Release and Settlement Agreement |
| Land | 12/18/2015 | Welll Operations Agreement | by and between Fieldwood Enegy Offshore LLC, Fieldwood Energy SP LLC, Arena Energy, LP, Arena Energy GP, LLC and Arena Energy Offshore, LP : WD 86 B-3 well |
| Land | 3/14/2016 | Completions Letter Agreement | by and between  Fieldwood Energy LLC and Whitney Oil & Gas, LLC: SP #37 #3 well dually completed and no longer economic for Feildwood |
| Land | 4/1/2016 | Divestiture | by and between  Fieldwood Energy Offshore LLC and Whitney Oil & Gas, LLC: Assignment of interest in the SP 37#3 J1 and J2 sands |
| Land | 4/1/2016 | Second Amendment of Production Handling Agreement | by and between  Fieldwood Energy Offshore LLC and Walter Oil & Gas Corporation : Second Amendment of Production Handling Agreement - East Breaks 165 A Platform |
| Land | 4/25/2016 | Release and Settlement Agreement | by and between  Fieldwood Energy LLC, Peregrine Oil & Gas, LP and Peregrine Oil & Gas II, LLC: Release and Settlement Agreement |
| Land | 7/1/2016 | Acquisition | by and between  Fieldwood Energy Offshore LLC and JOC Venture: SS 246 JOC Withdrawal |
| Land | 7/1/2016 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and All Aboard Development Corporation: Assignment All Aboard to Fieldwood |
| Land | 7/1/2016 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and JOC Venture: ABOS pursuant to JOC Venture withdrawal |
| Land | 8/8/2016 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and JOC Venture: JOC Venture Withdrawal |
| Land | 9/13/2016 | Agreement for Payment of Insurance Charges | by and between  Fieldwood Energy LLC and Monforte Exploration L.L.C.: Fieldwood agrees to pay Monforte's insurance charges |
| Land | 12/14/2016 | Surrender of Interest Agreement | by and between  Fieldwood Energy LLC and All Aboard Development Corporation: All Aboard Development Corp. surrender of interest |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | ABOS | by and between  Fieldwood Energy LLC and Lamar Hunt Trust Estate: Assignment made as result of Withdrawl from Operating Agreement |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 1/1/2017 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Lamar Hunt Trust Estate: Withdrawal Letter Agreement dated 6-15-2017 but effective 1/1/2017 |
| Land | 3/1/2017 | Reinbursement Agreement | by and between Fieldwood Energy LLC, W & T Offshore, Inc., Renaissance Offshore LLC, Transcontinental Gas Pipe Line and Chevron U.S.A. Inc.: Transco Facilities Subseaq Modification - Shell owned ST 300 Platform |
| Land | 3/1/2017 | Reinbursement Agreement | by and between Fieldwood Energy LLC, W & T Offshore, Inc., Renaissance Offshore LLC, Transcontinental Gas Pipe Line and Chevron U.S.A. Inc.: Transco Facilities Subseaq Modification - Shell owned ST 300 Platform |
| Land | 3/30/2017 | Letter of No Objection | Fieldwood agreed to COX request/letter of no objectin to allow cox to produce its EI 64# 9 well. Fieldwood is the operator of SW/4 of EI 53 |
| Land | 1/1/2018 | Acquisition | by and between  Fieldwood Energy SP LLC and Knight Resources LLC: Acquisition of Knight's interest in the SS 252 #F-4 |
| Land | 1/2/2018 | Letter Agreement | by and between  Fieldwood Energy LLC and EXXI GOM, LLC: Governs particpation in WD 73 C-27 McCloud drill well |
| Land | 4/1/2018 | Purchase and Sale Agreement | Purchase and Sale agreement by and between Fieldwood Energy LLC and Marathon Oil Company dated 20 June 2018 and effective 1 April 2018 |
| Land | 4/11/2018 | F40 Cost Memorialization Agreement | by and between  Fieldwood Energy LLC and EXXI GOM, LLC: WD 73 C-27 Well McCloud F-40 Reservoir  memorialization of drilling costs, etc. |

| Land | 4/11/2018 | West Delta 73 C-27 "MCCLOUD" F-40 Sand Reservoir A | by and between  Fieldwood Energy LLC and Energy XXI GOM, LLC: West Delta 73 C-27 "MCCLOUD" F-40 Sand Reservoir A - Letter Agreement |
|---|---|---|---|
| Land | 5/21/2018 | Consent to Assign | Consent to Assignment  by and Between Fieldwood Energy, Noble Energy and Eni Petroleum 21 May 2018  governing transition from NBL to Fieldwood Ownership of Neptune |
| Land | 5/22/2018 | Consent to Assign | Consent to Assignment  by and Between Fieldwood Energy, Noble Energy and Anadarko Petroleum Corporation dated  22 May 2018  governing transition from NBL to Fieldwood Ownership of Neptune |
| Land | 8/1/2018 | Acquisition | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech's Interest in the SS 271 Unit (SS 247,248,249) |
| Land | 8/1/2018 | Withdrawal Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdraws from SS 271 Unit |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Assignment and Bill of Sale |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: ABOS pursuant to Entech Enterprises Withdrawal |
| Land | 8/1/2018 | Assignment and Bill of Sale | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: ABOS pursuant to Entech Enterprises Withdrawal |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Withdrawal and settlement |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Enterprises withdrawal & settlemnet |
| Land | 8/27/2018 | Withdrawal & Settlement Agreement | by and between  Fieldwood Energy Offshore LLC and Entech Enterprises, Inc.: Entech Enterprises withdrawal & settlemnet |
| Land | 9/18/2018 | Constuction and Operating Agreement for the Interconnect Pipeline | |
| Land | 12/5/2018 | Escrow Agreement | Escrow Agreement by and between Anadarko Offshore LLC, Eni Petroleum US LLC and Noble Energy, Inc dated 5 December 2013 and amended by that first amendment dated 5 Dec 2018 |
| Land | 12/10/2018 | Confidentiality Agreement | Confidentiality Agreement by and between Fielwood Energy LLC and Exxon Mobil Corporation |
| Land | 2/8/2019 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and Richard Schmidt, as Trustee for the Black Elk Litigation Trust and the Black Elk Liquidating Trust: Pursuant to that certain Stipulation and Agreed Order including Terra Point Petroleum LLC |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and ANKOR |
| Land | 3/19/2019 | Confidentiality Agreement | Confidentiality Agreement by and between Fieldwood Energy LLC and Sa nare |
| Land | 4/30/2019 | CPHTA Extension Letter Agreement | by and between Fieldwood Energy Offshore LLC, ANKOR E&P Holding Corporation and Orinoco Natural Resources LLC :Ankors production from MC 21 processed at SP 60 |
| Land | 6/10/2019 | Confidentiality Agreement | by and between  Fieldwood Energy LLC and TRANSCONTINENTAL GAS PIPELINE COMPANY: Confidentiality Agreement: |
| Land | 7/1/2019 | Divestiture | by and between  Fieldwood Energy LLC and Energy XXI GOM, LLC: Fieldwood Divestiture of WD 73 Field Interests in the F40 Sands |
| Land | 7/1/2019 | Farmout Agreement | By and between W & T Offshore, Inc. and Dynamic Offshore Resources NS, LLC and Peregrine Oil and Gas II, LLC and GOM Energy Venture I, LLC |
| Land | 7/1/2019 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and Energy XXI GOM, LLC: Assignment and Bill of Sale |
| Land | 7/1/2019 | Assignment and Bill of Sale | by and between  Fieldwood Energy LLC and Energy XXI GOM, LLC: Assignment and Bill of Sale |
| Land | 7/2/2019 | Letter Agreement | By and between W & T Offshore, Inc. and Dynamic Offshore Resources NS, LLC and Peregrine Oil and Gas II, LLC and GOM Energy Venture I, LLC |
| Land | 8/28/2019 | CPHTA Extension Letter Agreement | Extension to 04/30/2019 Letter Agreement. Ankors production from MC 21 processed at SP 60 |
| Land | 11/1/2019 | Amendment No. 3 to CPHYA, PHA and Transportation Agreement | by and between Fieldwood Energy LLC and Fieldwood Energy Offshore LLC as Processor and ANKOR Energy LLC, ANKOR E&P Holdings Coporation, KOA Energy LP and Sanare Energy Partners, LLC as Producer |
| Land | 2/13/2020 | CPHTA Subsea Tie-in Deadline Extension Letter Agreement | by and between Sanare Energy Partners, Fieldwood Energy LLC, ANKOR E&P Holidngs Corporation and KOA Energy LP |
| Land | 4/23/2020 | CPHTA Subsea Tie-in Deadline Extension Letter Agreement | by and between Sanare Energy Partners, Fieldwood Energy LLC, ANKOR E&P Holdings Corporation and KOA Energy LP |
| Land | 01/01/1994, 04/08/1994 | Unit Operating Agreement | U nit Operating Agreement by and between CNG Producing Company, Columbia Gas Development Corporation, Total Minatome Corporation, Energy Development Corporation, Murphy Exploration and Production Company and Anadarko Petroleum Corporation; and Forest Oil Corporation and Timbuck Company/The Hat Creek Production Company, Limited Partnership (referred to as "Override Parties") |
| PHA SP 60F/MC 21 | 4/29/2005 | CONSTRUCTION, PRODUCTION HANDLING AND TRANSPORTATION AGREEMENT | PHA by and between Fieldwood and ANKOR E&P HOLDINGS CORPORATION and ANKOR E&P HOLDINGS CORPORATION |
| PHA SM 278/SM 257 | 1/1/2008 | PRODUCTION HANDLING AGMT | PHA by and between Fieldwood and HELIS OIL & GAS CO and HELIS OIL & GAS CO |
| LEASE OF PLATFORM SPACE | 10/10/1984 | Platform Space Rental Agreement SMI 268A Platform10/01/2020 - 11/30/2021 | A-LOPS- SM268A by and between Fieldwood and American Panther, LLC and American Panther, LLC |
| LEASE OF PLATFORM SPACE | 10/25/1985 | Lease of Platform Space | ALOPS-WD86A by and between Fieldwood and Texas Eastern Transmission and Texas Eastern Transmission |
| LEASE OF PLATFORM SPACE | 9/1/1997 | 09/01/2020 - 8/30/2021 | A-LOPS-WD79A by and between Fieldwood and PANTHER AS COUNTRACT OPERATOR FOR VENICE GATHERING SYSTEM and PANTHER AS COUNTRACT OPERATOR FOR VENICE GATHERING SYSTEM |
| LEASE OF PLATFORM SPACE | 1/1/2011 | LEASE OF PLATFORM SPACE | BRI116-LOPS by and between Fieldwood and BRISTOW U.S. LLC and BRISTOW U.S. LLC |
| LEASE OF PLATFORM SPACE | 11/1/2006 | LEASE OF PLATFORM SPACE | ERA100-LOPS by and between Fieldwood and ERA Helicopters LLC and ERA Helicopters LLC |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-1 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-11 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-12 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-17 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-14 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |

| | | | |
|---|---|---|---|
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-15 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-21 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-27 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 8/12/2019 | LEASE OF PLATFORM SPACE | TAM102-LOPS-26 by and between Fieldwood and TAMPNET and TAMPNET |
| LEASE OF PLATFORM SPACE | 9/1/1997 | LEASE OF PLATFORM SPACE | VEN104-LOPS by and between Fieldwood and Panther as Contract Operator for Venice Gathering System and Panther as Contract Operator for Venice Gathering System |
| LEASE OF PLATFORM SPACE | 4/15/1968 | LEASE OF PLATFORM SPACE | KIN129-LOPS by and between Fieldwood and KINETICA DEEPWATER EXPRESS, LLC and KINETICA DEEPWATER EXPRESS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC            and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and EPL OIL & GAS, LLC            and EPL OIL & GAS, LLC |
| PRODUCTION HANDLING AGMT (JIB)-2 | 1/1/2007 | PRODUCTION HANDLING AGREEMENT | PHA EI312-SM142 by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC            and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and MP GULF OF MEXICO, LLC            and MP GULF OF MEXICO, LLC |
| PRODUCTION HANDLING AGMT (JIB)-4 | 8/14/1995 | PRODUCTION HANDLING AGREEMENT | PHA SM280-SM268A by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and FWE and FWE |
| PRODUCTION HANDLING AGMT (JIB)-11 | 12/19/2003 | PRODUCTION PROCESSING HANDLING AND OPERATING AGMT | PHA EI342C-EI342C by and between Fieldwood and TANA EXPLORATION COMPANY LLC and TANA EXPLORATION COMPANY LLC |
| PRODUCTION HANDLING AGMT (JIB) | 1/31/2005 | PRODUCTION HANDLING AGREEMENT(NEPTUNE)Swordfish Producers | VK826NEP by and between Fieldwood and Apache Deepwater and Apache Deepwater LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 7/18/2002 | PRODUCTION HANDLING AGREEMENT | HI A-582  by and between Fieldwood and Cox Operating, LLC and Cox Operating, LLC |
| PRODUCTION HANDLING AGMT (Non-Op) | 11/14/1996 | PRODUCTION HANDLING AGREEMENT | EC 349 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | SS 315A3/ST 314 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | | PRODUCTION HANDLING AGREEMENT | SS 315A3/ST 314 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 6/13/1996 | PRODUCTION HANDLING AGREEMENT | SS 300 B/SS301 by and between Fieldwood and W & T Offshore, Inc. and W & T Offshore, Inc. |
| PRODUCTION HANDLING AGMT (Non-Op) | 5/5/2009 | PRODUCTION HANDLING AGREEMENT | SS 189 C-1 by and between Fieldwood and Walter Oil & Gas Corporation and Walter Oil & Gas Corporation |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Transco and Transco |
| Marketing Gas - Transport | 8/1/2005 | Gas Gathering Agreement | DIGS Gathering Agreement for Swordfish-Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | Gas Gathering Agreement | DIGS Gathering Agreement for Swordfish-Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | Gas Gathering Agreement | DIGS Gathering Agreement for Swordfish-Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Texas Eastern and Texas Eastern |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 2/1/2019 | Pool Agreement | Pool Agreement by and between Fieldwood Energy LLC and Gulf South Pipeline Company, LP and Gulf South Pipeline Company, LP |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Transport | 11/1/1995 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and HIGH ISLAND OFFSHORE SYSTEM, llc and HIGH ISLAND OFFSHORE SYSTEM, llc |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Gathering | 4/1/2020 | IT Gathering | IT Gathering by and between Fieldwood Energy LLC and Kinetica Midstream Energy, LLC and Kinetica Midstream Energy, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 12/1/2013 | IT Transport Contract | IT Transport Contract by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Marketing Gas - Transport | 8/7/2009 | IT Transport Contract - "IT Discount Life of Reserves" | Stingray - WC 485, WC 507 5.13 discount Life Of Reserve Dedicaiton by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas - Transport | 10/1/2019 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy LLC and Venice Gathering and Venice Gathering |
| Marketing Gas - Transport | 12/1/2013 | IT Gathering | IT Gathering Agreement by and between Fieldwood Energy LLC and High Point Gas Gathering, LLC and High Point Gas Gathering, LLC |
| Marketing Gas - Transport | 4/1/2010 | FT -2 Transport | FT -2 Transport by and between Fieldwood Energy Offshore, LLC and Nautilus Pipeline Company and Nautilus Pipeline Company |
| Marketing Gas - Transport | 12/12013 | IT Transport Contract | Searobin West Transprt, IT max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT PR Transport Contract | Searobin West PTR Transprt, max rate - all receipt points by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde Transport | Searobin Retrograde contract. IT max rate by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-PTR Transport | Searobin East - PTR - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Transport | Searobin East - Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 12/1/2013 | IT-Retrograde -Flash-Transport | Searobin East - Rertrgrade-Flash- Transport, IT max Rate. by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Gathering | 8/1/2018 | IT Retrograde contractTransport Contract | IT Retrograde contractTransport Contract by and between Fieldwood Energy LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011, disocunt letter 9/16/2011 | IT-PTR Transport plus discount letter letter | Searobin WestIT PTR Contract for Discount SMI 142 and SMI 140 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011 | IT Transport Contract | Searobin West Pipeline - sandridge /Dynamic IT transport plus Discount letter for SMI 142 and SMI 40 by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 10/1/2011 | IT-Retrograde Transport | SearobinWest Pipeline - sandridge /Dynamic IT Retrograde by and between Fieldwood Energy Offshore, LLC and Sea Robin Pipeline Company and Sea Robin Pipeline Company |
| Marketing Gas - Transport | 8/1/2008 | Gas Gathering Agreement-Amendment | DIGS Gathering Agreement for Swordfish-Neptune - Amendment adds Burlington Resources WI by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2008 | Gas Gathering Agreement-Amendment | DIGS Gathering Agreement for Swordfish-Neptune - Amendment adds Burlington Resources WI by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2008 | Gas Gathering Agreement-Amendment | DIGS Gathering Agreement for Swordfish-Neptune - Amendment adds Burlington Resources WI by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement | DIGP - FT2 & Reserve Dedication - Swordfish Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement | DIGP - FT2 & Reserve Dedication - Swordfish Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement | DIGP - FT2 & Reserve Dedication - Swordfish Neptune by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners and DCP Midstream, Dauphin Island Gathering Partners |

| | | | |
|---|---|---|---|
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement - Amendment | DIGP - FT2 & Reserve Dedication - Swordfish Neptune - Amendment Adds Burlington Resourses WI; plus 2 more amendments Revising MDQ by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement - Amendment | DIGP - FT2 & Reserve Dedication - Swordfish Neptune - Amendment Adds Burlington Resourses WI; plus 2 more amendments Revising MDQ by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/1/2005 | FT-2 (MP) Reserve Commitment Agreement - Amendment | DIGP - FT2 & Reserve Dedication - Swordfish Neptune - Amendment Adds Burlington Resourses WI; plus 2 more amendments Revising MDQ by and between Fieldwood Energy LLC and DCP Midstream, Dauphin Island Gathering Partners  and DCP Midstream, Dauphin Island Gathering Partners |
| Marketing Gas - Transport | 8/7/2009 | IT Transport Contract - "IT Discount Life of Reserves" | Stingray - WC 485, WC 507 $.13 discount Life Of Reserve Dedicaiton by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Marketing Gas-Transport | 12/18/1997 | FT - Transport | Venice Gathering  Firm Transport with Disount $.05, WD 79 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Transport | 1/1/2001 | FT - Transport | Venice Gathering  Firm transport Max rate WD 79 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Marketing Gas-Gathering | 11/1/2006 | IT Transport | Venice Gathering, WD 39 Effective date 11/1/2006 WD 64 Effective 11/1/2010 by and between Fieldwood Energy LLC and Venice Gathering System, L.L.C. and Venice Gathering System, L.L.C. |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy Offshore LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 6/1/2015 | Operating and Management Agreement Panther Operating Company (Third Coast) | Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System by and between Fieldwood Energy Offshore LLC and Panther Operating Company, LLC (Third Coast Midstream) and Panther Operating Company, LLC (Third Coast Midstream) |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/17/1963 | Conveyance and Operating Agreement Grand Chenier Separation Facilities Cameron Parish, Louisiana | Governs the Facility Operations and ownership. by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Operating and Management Agreement | 1/1/2014 (Amends and supercedes the Construction and Operations Agreement dated June 1, 1972. | Amended Agreement for the Operations of Facility for the Removal of Condensate from the Sea Robin Pipeline | Governs the Ownership and Operations of the Facility. Operator to perform the physical operations, maintenance, and repair of the System, as well as the management and administrative functions for the System. Facility separates condesate from Sea Robin Pi by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Construction and Operation Agreement | 10/1/1995 | Restated and Amendment Agreement fo the Construction and Operation of the Sea Robin Gas Processing Plant Vermilion Parish, Louisiana | The facility recovers Plant Products attributable to gas transported in the Sea Robin Pipeline. Separator gas from the Sea Robin Condensate Removal Facility is returned to the Sea Robin Pipeline system and processed through the Gas Plant.  by and between Fieldwood Energy LLC and  and |
| Ownership and Operating Agreement | 9/26/1982 | Venice Dehydration Station Operations and Maintenance Agreement | Provides for the use of the Venice Dehydration Station by the Venice Dehydration Station Owners by and between Fieldwood Energy LLC and  and |

| | | | |
|---|---|---|---|
| Service Agreement | 11/1/2015 | South Pass Dehydration Service Agreement as amended | Provides for certain monitoring, maintenance and repais for the South Pass Dehydration Station on behalf of Owners  by and between Fieldwood Energy LLC and Venice Energy Services Company LLC (Targa Resources) and Venice Energy Services Company LLC (Targa Resources) |
| Ownership and Operating Agreement | 3/6/1974 | Construction and Operating Agreement for Shore Separation Facility Cameron Parish, Louisiana  as amended | Provides for the construction and operation of the onshore separation facility which is connected to the facilites of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Stinray by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Ownership and Operating Agreement | 3/6/1974 | Construction and Operating Agreement for Shore Separation Facility Cameron Parish, Louisiana  as amended | Provides for the construction and operation of the onshore separation facility which is connected to the facilites of Stingray Pipeline Company and which separates condensate from the natural gas injected into and transported by Stinray by and between Fieldwood Energy LLC and Stingray Pipeline Company LLC (MCP Operating) and Stingray Pipeline Company LLC (MCP Operating) |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Construction and Management Agreement | 10/1/1981 | Construction and Management Agreement South Pass West Delta Gathering System | Provides for the construction management of the Facility by and between Fieldwood Energy LLC and N/A and N/A |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Owners' Agreement | 10/1/1981 | Owners' Agreement South Pass West Delta Gathering System | Provides description and ownership of said Gathering System by and between Fieldwood Energy LLC and Energy XXI Pipeline II, LLC and Energy XXI Pipeline II, LLC |
| Construction and Operating Agreement | 10/22/1976 | Agreement for the Construction and Operation of the Blue Water Gas Plant Acadia Parish, Louisiana | Processing of Owners' gas all in accordance with agreements by and between Fieldwood Energy LLC and EnLink Midstream Operating, LP and EnLink Midstream Operating, LP |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Apache Corporation and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Dynamic Offshore Resources, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Sandridge Offshore, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Operating Agreement | | Lateral Line Operating Agreement Between Sandridge Offshore, LLC and Enterprise GTM Offshore Operating Company, LLC | Owners constructed and own the Lateral Line which is used to connect Gas supplies in the High Island Area to s trunk pipelinesystem owned hy High Island Offshore System. Theis Agreement sets forth Operator and Owners rights and responsibilities with respe by and between Fieldwood Energy Offshore LLC and  and |
| Construction, Ownership and Operating Agreement Amendment 2 | 2/25/2011 | Amendment No. 2 Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | Provides for the construction and operation of the EI 361 Pipeline (Segment I) and EI Pipeline (Segment II) which was installed to connect the Barnacle Pipeline (the still in service portion what was formerly Bonito Pipeline) . by and between Fieldwood Energy LLC and Chevron Pipeline Company and Chevron Pipeline Company |
| Assignment | | Eugene Island Block 361 Pipeline Construction, Ownership and Operating Agreement | The Barnacle Pipeline is comprised of the sections of the Bonito Pipeline System (Segments I and II), that remained in service after abandonment of Bonito Pipeline.  All owners in the Bonito Pipeline assigned their respective interest to Apache (Fielwood) by and between Fieldwood Energy LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshoe LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshoe LLC and  and |
| Operating Agreement | 5/1/1996 | Pipeline Operating Agreement | To provide for the use, maintenance, operation, administration and removal of the Seagate Pipeline. by and between Fieldwood Energy LLC / Fieldwood Energy Offshoe LLC and  and |
| Oil Purchase and Sale Agreement/Transport | 8/1/2018 | Oil Purchase and Sale Agreement between Fieldwood Energy Offshore LLC and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Memorandum of Agreement | 8/1/2020 | Memorandum of Agreement Between Fieldwood Energy Offshore LLC and Poseidon Oil Pipeline Company LLC | Memorandum of Agreement by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 6/1/2003 | Oil Gathering Agreement Between Westport Resources Corporation Noble Energy Inc M | Crude Oil Transport.  by and between Fieldwood Energy LLC and Manta Ray Gathering Co.,LLC and Manta Ray Gathering Co.,LLC |

| | | | |
|---|---|---|---|
| Oil Purchase and Sale Agreement/Transport | 7/15/2003 | Oil Purchase and Sale Agreement Between Westport Resources Corporation Mariner Energy Inc Noble Energy Inc and Poseidon Oil Pipeline Company LLC | Crude Oil Purchase and Sale/Transport by and between Fieldwood Energy LLC and Poseidon Oil Pipeline Company LLC and Poseidon Oil Pipeline Company LLC |
| Oil Gathering Agreement | 7/1/2005 | Oil Gathering Agreement | Crude Oil Transport.  by and between Fieldwood Energy LLC and Main Pass Oil Gathering Company and Main Pass Oil Gathering Company |
| Oil Gathering Agreement | 7/1/2005 | Oil Gathering Agreement | Crude Oil Transport.  by and between Fieldwood Energy LLC and Main Pass Oil Gathering Company and Main Pass Oil Gathering Company |
| Oil Gathering Agreement | 7/1/2005 | Oil Gathering Agreement | Crude Oil Transport.  by and between Fieldwood Energy LLC and Main Pass Oil Gathering Company and Main Pass Oil Gathering Company |
| Reimbursement Agreement | 1/21/2019 | Pigging Service Reimbursement Agreement | Reimbursement Agreement by and between Fieldwood Energy LLC and Main Pass Oil Gatherind LLC and Main Pass Oil Gatherind LLC |
| Reimbursement Agreement | 1/21/2019 | Pigging Service Reimbursement Agreement | Reimbursement Agreement by and between Fieldwood Energy LLC and Main Pass Oil Gatherind LLC and Main Pass Oil Gatherind LLC |
| Reimbursement Agreement | 1/21/2019 | Pigging Service Reimbursement Agreement | Reimbursement Agreement by and between Fieldwood Energy LLC and Main Pass Oil Gatherind LLC and Main Pass Oil Gatherind LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 8/1/2009 | High Island Pipeline System Throughput Capacity Lease Agreement | Oil Transport by and between Fieldwood Energy LLC and McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Oil Transport | 11/30/2018 | Crimson Gulf Dedication and Transportation Services Agreement | Oil Transport by and between Fieldwood Energy LLC and Crimson Gulf LLC and Crimson Gulf LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | 2/10/2014 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2001 | Central Texas Gathering System (1st) Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Agreement For Measurement and Allocation of Condensate | 7/1/2014 | Central Texas Gathering System Second Amended and Restated Agreement for Measurement and Allocation of Condensate | Measurement and Allocation of Condensate by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Company LLC and Transcontinental Gas Pipe Line Company LLC |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation | 9/27/1993 | Liquid Transportation Nouth High Island/Johnson Bayou, Markham Plant Tailgate, Bayou Black & Vermilion Separation Facility. Contract # 94 0674 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |

| | | | |
|---|---|---|---|
| Amendment Liquid Transportation | 11/1/2007 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Amendment Liquid Transportation | 1/22/2013 | Amendment to Liquid Transportation Agreement Between Transcontinental Gas Pipe Line Corporatio and Apache Corp Contract # 94 0674 001/1005198 | Liquid Transpotation by and between Fieldwood Energy LLC and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) and Transcontinental Gas Pipeline Company, LLC (formerly Transcontinental Gas Pipe Line Corporation) |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Liquid Transportation BTU Makeup | 11/1/2007 | Injected and Retrograde Condensate Transportation and Btu Reduction Make-up Agreement-Southeast Lateral (into Bayou Black) 28 0008 000 | Liquid Transportation BTU Makeup by and between Fieldwood Energy LLC and Transcontinental Gas Pipe Line Corporation and Transcontinental Gas Pipe Line Corporation |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Apache Corp. | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 9/1/2009 | Terminalling Agreement Between WFS-Liquids Company and Mariner Energy inc | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid Company and WFS-Liquid Company |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Terminalling Agreement | 2/1/2014 | Terminalling Agreement Between WFS-Liquidsllc and Fieldwood Energy LLC - Contract BB111 | Terminalling Agreement  by and between Fieldwood Energy LLC and WFS-Liquid LLC and WFS-Liquid LLC |
| Oil Liquids Transportation Agreement for Bluewater System | 10/22/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51169 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 4/1/2004 | Liquids Transportation Agreement #51051 dated 2/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Bluewater Pipeline System | 9/30/2009 | Liquids Transportation Agreement #51051 dated 4/1/2004 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |

Exhibit III-F

| | | | |
|---|---|---|---|
| Oil Liquids Transportation for Grand Chenier Offshore Pipeline System | 2/25/2010 | Liquids Transportation Agreement No. 50031 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | 1/1/2007 Original Contract; Amendment Effective 1/1/2007 | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Amendment No. 6 | 8/1/1992, Amendment Effective 1/1/2007 | Amendment No. 6 to the Liquids Transportation Contract | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Energy Express, LLC and Kinetica Energy Express, LLC |
| Oil Liquids Transportation | 3/3/2011 | Associated Liquids Transportation Agreement #117842 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Deepwater Express, LLC and Kinetica Deepwater Express, LLC |
| Oil Liquids Transportation | 3/3/2011 | Associated Liquids Transportation Agreement #117842 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Deepwater Express, LLC and Kinetica Deepwater Express, LLC |
| Oil Liquids Transportation | 11/1/2012 Amendment Date: 8/1/2014 | Amendment No. 1 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica Deepwater Express, LLC and Kinetica Deepwater Express, LLC |
| Oil Amendment transferring from Apache to Fieldwood Energy LLC | 12/1/2013 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Rate Amendment to Liquid Transportation Agreement | Amendment effective 1/1/2011 | Agreement for the Allocation of Liquid Hydrocarbons at the Patterson Terminal effective 7/1/2007 | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquid Handling Agreement | 5/1/2008 | Liquid Handling Agreement | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement | 3/1/2011 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Amendment to Oil Liquid Handling Agreement  to transfer from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/1/2012 amended 12/1/2013 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement transferring from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/2/2010 amended effective 12/1/2014 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement transferring from Apache Shelf, Inc. to Fieldwood Energy LLC | 11/2/2010 amended effective 12/1/2014 | Amendment | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Agreement | 11/1/2012 | Associated Liquids Transporation Agreement Grand Chenier Terminal | Oil Liquids Transportation by and between Fieldwood Energy LLC and Kinetica and Kinetica |
| Oil Liquids Separation and Stabilization Agreement | 6/1/2014 | Third Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Block on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Separation and Stabilization Agreement | 1/1/2015 | Fourth Amendment to Liquids Separation and Stabilization Agreement | LSSA putting all Blocks on one contract by and between Fieldwood Energy Offshore LLC and Manta Ray Offshore Gathering Company, L.L.C. and Manta Ray Offshore Gathering Company, L.L.C. |
| Oil Liquids Transporation Agreement | 1/1/2015 | Second Amendment to Liquids Transporation Agreement | LTA by and between Fieldwood Energy Offshore LLC and Nautilus Pipeline Company, L.L.C. and Nautilus Pipeline Company, L.L.C. |
| Oil Liquids Transporation Agreement | 5/1/2015 | Amendment to Transportation Agreement | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transporation Agreement | 5/1/2015 | Transportation Agreement for Interruptible Service Under Rate Schedule ITS Between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |

| | | | |
|---|---|---|---|
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 5/1/2015 | Exhibit A for Transportation Agreement for Interruptible Service Under Rate Schedule ITS between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC | Amendment No. 2 for LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transport | 2/1/2018 | Amendment No. 1 to Liquid Hydrocarbon Separation Agreement dated October 1, 2004 between Trunkline field Services LLC and Fieldwood Energy LLC-Agreement No. 2430 | LTA by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Hydrocarbon | 2/1/2018 | Amendment No. 1 to Liquids Hydrocarbon Transportation Agreement Dated October 1, 2004 between Sea Robin Pipeline Company, LLC and Fieldwood Energy LLC-Agreement No. 2431 | Liquid Hydrocarbon Transportation Agreement by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 9/1/2012 | Amendment No. 3 to Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 5/1/2001 | Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 5/1/2001 | Retrograde Condensate Separation Agreement | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Retrograde Condensate Separation Agreement | 3/1/2018 | Amendment No. 5 to Retrograde Condensate Separation Agreement No. 2393 | Retrograde Condensate Separation by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transportation Agreement | Start date 12/1/2013-End Date 1/1/2200 | Rate Schedule ITS Interruptible Transportation Service | Liquids Transportation Service by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Oil Liquids Transportation Agreement | Start date 5/1/2014-End date 1/1/2200 | Amendment to Interruptible Transportation Agreement | Liquids Transportation Service by and between Fieldwood Energy LLC and Sea Robin Pipeline Company, LLC |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/18/2020 | STUSCO CONTRACT REF. NO. - CL69LP0063 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0064 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0065 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0066 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |

| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
|---|---|---|---|
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0069 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/19/2020 | STUSCO CONTRACT REF. NO. - CL69LP0071 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/14/2020 | STUSCO CONTRACT REF. NO. - CL69LP0062 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/14/2020 | STUSCO CONTRACT REF. NO. - CL69LP0062 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/14/2020 | STUSCO CONTRACT REF. NO. - CL69LP0062 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/13/2020 | STUSCO CONTRACT REF. NO. - CLP0003971 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/13/2020 | STUSCO CONTRACT REF. NO. - CLP0003971 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 8/11/2020 | STUSCO CONTRACT REF. NO. - CLP0003964 | STUSCO buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Shell Trading (US) Company and Shell Trading (US) Company |
| Crude Sales | 1/31/2014 | Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/30/2014 | Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/31/2014 | Term Evergreen Lease Purchase | Chevron buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Chevron Products Company and Chevron Products Company |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |
| Crude Sales | 1/23/2014 | | ExxonMobil Oil Supply buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and EXXONMOBIL Oil CORPORATION and EXXONMOBIL Oil CORPORATION |

| | | | |
|---|---|---|---|
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales | 3/5/2014 | | Marathon Petroleum Corporation buys crude oil from Fieldwood Energy by and between Fieldwood Energy LLC and Marathon Petroleum Company LP and Marathon Petroleum Company LP |
| Crude Sales/Purchase | 6/1/1998 | Crude Oil Purchase and Sale Agreement | Producers sell Crude Oil to Questor and Questor purchases Crude Oil from Producers. Producers buy back a volume of Crude Oil at HIPS Segment III tie-in equal to their monthly production sold to Questor at the Platform. by and between Fieldwood Energy LLC and Questor Pipeline Venture and Questor Pipeline Venture |
| MARKETING - GAS PROCESSING | 10/22/1976 | CONSTRUCTION/OPERATING | Agreement for the Construction and Operation of the Blue Water Gas Plant, Acadia Parish, Louisiana by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 7/1/2019 | PROCESSING-FEE | between $.15 /mmbtu to $.10 /mmbtu depending on volume esc by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC and Arrowhead Louisiana Pipeline, LLC |
| MARKETING - GAS PROCESSING | 7/1/2019 | PROCESSING-FEE | between $.15 /mmbtu to $.10 /mmbtu depending on volume esc by and between Fieldwood Energy LLC and Arrowhead Louisiana Pipeline, LLC and Arrowhead Louisiana Pipeline, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 4/1/2020 | PROCESSING-POL-THEORETICAL | POL 90%/10% by and between Fieldwood Energy LLC and ENLINK LIG LIQUIDS, LLC and ENLINK LIG LIQUIDS, LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | PROCESSING-Greater of Fee or POL | 80%/20% POL with a minimum $.13 /MMBtu by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 12/1/2010 | 1st AMENDMENT | 80%/20% POL with a minimum $.13 /MMBtu by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 11/5/2004 | LETTER AGREEMENT- PROCESSING-FEE | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 2/1/2004 | LETTER AGREEMENT- PROCESSING-FEE | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 9/1/2004 | 1st AMENDMENT PROCESSING-FEE | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 8/1/2004 | LETTER AGREEMENT- PROCESSING-FEE | PTR KEEP WHOLE -fee=$.06 /MMBtu - no liquids received by and between Fieldwood Energy LLC and Williams Field Services and Williams Field Services |
| MARKETING - GAS PROCESSING | 8/1/2005 | GAS PROCESSING / CONDITIONING AGREEMENT | GPM: <2=80%, 2-3=82.5%, >3=85% by and between Fieldwood Energy LLC and DCP Midstream, DCP Mobile Bay Processing, LLC and DCP Midstream, DCP Mobile Bay Processing, LLC |
| MARKETING - GAS PROCESSING | 8/1/2005 | GAS PROCESSING / CONDITIONING AGREEMENT | GPM: <2=80%, 2-3=82.5%, >3=85% by and between Fieldwood Energy LLC and DCP Midstream, DCP Mobile Bay Processing, LLC and DCP Midstream, DCP Mobile Bay Processing, LLC |
| MARKETING - GAS PROCESSING | 1/8/2019 | GAS PROCESSING AGREEMENT-FEE | $.16 /MMBTU (escl) plus electricity fee by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/8/2019 | GAS PROCESSING AGREEMENT-FEE | $.16 /MMBTU (escl) plus electricity fee by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 5/1/2009 | PROCESSING AGREEMENT-GREATER of Fee or POL | 92/8% or $.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 6/29/2010 | PROCESSING AGREEMENT AMENDMENT-GREATER of Fee or POL | 92/8% or $.08/MMBtu by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 10/1/2010 | PROCESSING AGREEMENT-GREATER of Fee or POL | GPM: <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |

| | | | |
|---|---|---|---|
| MARKETING - GAS PROCESSING | 11/1/2010 | PROCESSING AGREEMENT- 1ST AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 7/24/2012 | PROCESSING AGREEMENT- 2ND AMENDMENT-GREATER of Fee or POL | GPM; <1.25 = 15%, 1.25 - 2.5 = 12.5%, >2.5 = 10% by and between Fieldwood Energy LLC and Plains Gas Solutions, LLC. and Plains Gas Solutions, LLC. |
| MARKETING - GAS PROCESSING | 7/1/2011 | GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/1/2012 | FIRST AMENDMENT - GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 7/1/2011 | GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/19/2012 | FIRST AMENDMENT - GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/19/2012 | GAS PROCESSING AGREEMENT-POL | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 1/19/2012 | GAS PROCESSING AGREEMENT-POL | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 2/17/2014 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 2/17/2014 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 92% / 8% by and between Fieldwood Energy LLC and ENLINK Midstream current operator |
| MARKETING - GAS PROCESSING | 11/9/2004 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/8/2007 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 4/1/2010 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/12/2011 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 4/1/2011 | GAS PROCESSING AGREEMENT | 85/15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/16/2004 | GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/16/2004 | GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/1/2005 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 3/1/2005 | FIRST AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/2009 | THIRD AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/2009 | THIRD AMENDMENT TO GAS PROCESSING AGREEMENT | 87/13% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/1970 | CONSTRUCTION/OPERATING (NI) | Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/1/1970 | CONSTRUCTION/OPERATING (NI) | Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/25/2014 | RATIFICATION AND ADOPTION OF C&O AGREEMENT | Ratificaton to the Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 7/25/2014 | RATIFICATION AND ADOPTION OF C&O AGREEMENT | Ratificaton to the Agreement for the Construction and Operation of the Toca Gas Processing Plant, St. Bernard Parish, Louisiana by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/1998 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 1/1/1998 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2010 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2010 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2011 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 5/1/2011 | GAS PROCESSING AGREEMENT-AMENDMENT- POL | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2005 | POL -GAS PROCESSING AGREEMENT | POL DEPENDENT ON GPm by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2005 | POL -GAS PROCESSING AGREEMENT | POL DEPENDENT ON GPm by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2006 | POL -GAS PROCESSING AGREEMENT | POL= 85%/15% by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 9/1/2011 | POL -GAS PROCESSING AGREEMENT-AMENDMENT | POL DEPENDENT ON GPM PLU FEE - 77%/23% -$.12026 by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 3/15/2020 | GREATER OF FEE OR POL - GAS PROCESSING AGREEMENT | GREATER OF FEE OR POL 85%/15% OR $.15 / MMBTU PLUS dgs FEE by and between Fieldwood Energy LLC and TARGA MIDSTREAM SERVICES LP and TARGA MIDSTREAM SERVICES LP |
| MARKETING - GAS PROCESSING | 1/1/2012 | FEE GAS PROCESSING AGREEMENT | FEE - .08005 /MCF (SUBJECT TO gdp (NEVER LESS THAT .075 OR GRATER THAN $.12 /MCF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/1/2012 | FEE GAS PROCESSING AGREEMENT | FEE - .08005 /MCF (SUBJECT TO gdp (NEVER LESS THAT .075 OR GRATER THAN $.12 /MCF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |

| | | | |
|---|---|---|---|
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 8/1/2009 | FEE GAS PROCESSING AGREEMENT | FEE - .0800 PER mcF by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 1/18/2012 | FEE GAS PROCESSING AGREEMENT - AMENDMENT | FEE - .0800 PER MCF - ESCALATOR ADDED  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/1/2012 | POL- GAS PROCESSING AGREEMENT | pol 85% 15% by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| MARKETING - GAS PROCESSING | 10/1/2012 | Gas processing Raw make purchase | Gas processing Raw make purchase  by and between Fieldwood Energy LLC and Enterprise Gas Processing LLC and Enterprise Gas Processing LLC |
| Environmental/Govt | 6/24/2019 | Master Services Contract | – IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 10/2/2019 | Software License Agreement | IT and Consulting Support for the HWCG - Fieldwood Portal for Various Exercises |
| Environmental/Govt | 11/19/2018 | Master Service Contract | Regulatory |
| Environmental/Govt | 11/1/2013 | Master Services Contract | Platform Audits / BSEE Drawings |
| Environmental/Govt | 10/30/2019 | Master Client Agreement | Industry Standards, Analytics, and Research / Subscription Service |
| Environmental/Govt | 11/15/2019 | Order Form | Industry Standards, Analytics, and Research / Subscription Service |
| Land | 4/1/1981 | Unit Agreement No. 14-08-001-20231 | Unit Agreement for the C-6/JS Sand, effective April 1,1981, between. Arco Oil and Gas,Company;,Getty Oil Company, Cities Service Company, Hamilton Brothers Oil Company, Mobil Oil. Exploration &>. Producing S.E. Inc., Gulf Oil Corporation, Hunt Oil Company, Highland Resources, Inc., Hunt; Industries, and Prosper Energy Corporation.; Unit No. 891020231 |

**Exhibit III-G**

None

Exhibit III-H

Cash and other balances to be determined at effective date

**Surety Bonds in favor of FWE Survivor:**

| DATE | BOND NO. | Amount | Lease | PARTIES | SURETY | BENEFICIARY |
|---|---|---|---|---|---|---|
| 10/17/18 | SUR0049418 | $631,130 | ROW OCS-G16039 | Talos Gulf Coast Offshore LLC; W&TOffshore Inc.; Bandon Oil and Gas, LP | Argonaut Insurance Company | Bandon Oil and Gas, LP |
| 10/17/18 | SUR0049419 | $3,455,326 | OCS-G 11881 | Talos Gulf Coast Offshore LLC; W&TOffshore Inc.; Bandon Oil and Gas, LP | Argonaut Insurance Company | Bandon Oil and Gas, LP |
| 2/13/18 | 1149839 | $500,000 | OCS-G19760 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |
| 2/13/18 | 1149840 | $50,000 | OCS-G19761 | Northstar Offshore Ventures LLC | Lexon Insurance Company | Fieldwood Energy LLC |

**<u>Exhibit 5A</u>**
***Attachment to Plan of Merger (Exhibit 5)***

**Certificate of Merger (TX) (FWE)**

**CERTIFICATE OF MERGER**
**(DOMESTIC ENTITY DIVISIONAL MERGER)**
**OF**
**FIELDWOOD ENERGY LLC**


**[●], 2021**

Pursuant to Title 1, Chapter 10 and Title 3 of the Texas Business Organizations Code (the "TBOC"), the undersigned, Fieldwood Energy, LLC, a Texas limited liability company ("FWE"), submits this certificate of merger for the purpose of dividing itself into a surviving domestic entity and one new domestic entity, and hereby certifies the following:

FIRST:  The name of the domestic filing entity that is dividing itself is Fieldwood Energy, LLC.

SECOND:  The principal place of business of FWE is 2000 W Sam Houston Pkwy S #1200, Houston, TX 77042.

THIRD:  The filing number issued to FWE by the Secretary of State of the State of Texas is [●][1].

FOURTH:  FWE is organized as a limited liability company.

FIFTH:  FWE shall survive the merger and shall maintain its separate existence and continue as a filing entity under the name "Fieldwood Energy III LLC" ("FWE III").

SIXTH:  In lieu of providing the plan of merger, the filing entity certifies that:

(i)  An executed copy of the Agreement and Plan of Merger, dated as of [●], 2021 (the "Plan of Merger"), of FWE is on file at the principal place of business of each surviving and new domestic entity provided in this form.

(ii)  On written request, a copy of the Plan of Merger will be furnished without cost by each surviving or new domestic entity to any member of any domestic entity that is a party to or created by the Plan of Merger, and any creditor or obligee of the parties to the merger at the time of the merger if a liability or obligation is then outstanding.

SEVENTH:  The certificate of formation of FWE shall continue to be the certificate of formation of FWE following the merger, provided that the certificate of formation of FWE shall be amended to change the name of such entity to "Fieldwood Energy III, LLC".

EIGHTH:  The name, jurisdiction of organization, principal place of business address, and entity description of the entity to be created pursuant to the plan of merger are set forth

---

[1] **Note to Draft**:  to be assigned upon conversion of FWE to a Texas LLC.

below.  The certificate of formation of the new domestic filing entity to be created is being filed with this certificate of merger.

    <u>Name</u>:  Fieldwood Energy I LLC

    <u>Entity Description</u>:  limited liability company

    <u>Jurisdiction of Organization</u>:  Texas

    <u>Principal place of business</u>: [●].

    NINTH:   The Plan of Merger has been approved, adopted, certified, executed and acknowledged as required by the TBOC and the governing documents of the filing entity.

    TENTH:  This document shall be effective when the document is accepted and filed by the Secretary of State of the State of Texas.

    ELEVENTH:  In lieu of providing the tax certificate, FWE III shall continue to be liable for the payment of all required franchise taxes of FWE III.

*  *  *  *  *  *

WEIL:\97689497\5\45327.0007

IN WITNESS WHEREOF, the undersigned has caused this certificate of merger to be duly executed as of the date first set forth above.

**FIELDWOOD ENERGY, LLC**
a Texas limited liability company

By: _____
Name: _____
Title: _____

**Exhibit 5B**
*Attachment to Plan of Merger (Exhibit 5)*

**Certificate of Formation (TX) (Fieldwood Energy I LLC)**

**Form 205**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $300**



This space reserved for office use.

## Certificate of Formation
## Limited Liability Company

### Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company.  The name of the entity is:

FIELDWOOD ENERGY I LLC
The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

### Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete either A or B and complete C.)

☒  A.  The initial registered agent is an organization (cannot be entity named above) by the name of:

CAPITOL CORPORATE SERVICES, INC.
**OR**
☐  B.  The initial registered agent is an individual resident of the state whose name is set forth below:

_____
*First Name*                          *M.I.*          *Last Name*                                          *Suffix*

C.  The business address of the registered agent and the registered office address is:

206 E. 9TH STREET, SUITE 1300          AUSTIN                          TX     78701
*Street Address*                          *City*                                  *State*     *Zip Code*

### Article 3—Governing Authority
(Select and complete either A or B and provide the name and address of each governing person.)

☒  A.  The limited liability company will have managers. The name and address of each initial manager are set forth below.

☐  B.  The limited liability company will not have managers.  The company will be governed by its members, and the name and address of each initial member are set forth below.

| GOVERNING PERSON 1 |
| --- |
| **NAME** (Enter the name of either an individual or an organization, but not both.) |
| **IF INDIVIDUAL** |
| |
| *First Name*          *M.I.*          *Last Name*                              *Suffix* |
| **OR** |
| **IF ORGANIZATION** |
| |
| *Organization Name* |
| **ADDRESS** |
| |
| *Street or Mailing Address*                    *City*                    *State*     *Country*     *Zip Code* |

Form 205                                                  4

| GOVERNING PERSON 2 |
|---|

**NAME** (Enter the name of either an individual or an organization, but not both.)
   **IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | | *Suffix* |
|---|---|---|---|---|
| **OR** | | | | |
| **IF ORGANIZATION** | | | | |

   *Organization Name*
**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|

| GOVERNING PERSON 3 |
|---|

**NAME** (Enter the name of either an individual or an organization, but not both.)
   **IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | | *Suffix* |
|---|---|---|---|---|
| **OR** | | | | |
| **IF ORGANIZATION** | | | | |

   *Organization Name*
**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

## Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

The entity is formed pursuant to a plan of merger. The name of the merging entity is Fieldwood Energy LLC.

The address of the converting entity is 2000 W. Sam Houston Pkwy. S., Suite 1200, Houston, Texas 77042.

The merging entity was formed on 11/5/2012 under the laws of the State of Delaware, USA.

The merging entity was previously a Delaware limited liability company. The merger entity converted to a Texas limited liability company on [__]/[__]/2021.

## Organizer

The name and address of the organizer:

_____

*Name*

_____

*Street or Mailing Address*                          *City*                    *State*    *Zip Code*

## Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing.  The delayed effective date is: _____

C. ☒ This document takes effect upon the occurrence of the future event or fact, other than the passage of time.  The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

> the filing of the certificate of merger of Fieldwood Energy LLC with the Secretary of State of Texas.

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment.  The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date: _____

_____

Signature of organizer

_____

Printed or typed name of organizer

| Print | Reset |

TX060BOC - 11/27/2013 Wolters Kluwer Online

**Exhibit 6**

**Fieldwood Energy I LLC Agreement**

[Exhibit to Apache Term Sheet Implementation Agreement]

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## FIELDWOOD ENERGY I LLC

*(a Texas Limited Liability Company)*

### [●], 2021

**THE MEMBERSHIP INTERESTS REFERENCED IN THIS LIMITED LIABILITY COMPANY AGREEMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY APPLICABLE STATE SECURITIES LAWS. SUCH MEMBERSHIP INTERESTS MAY NOT BE SOLD, ASSIGNED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF AT ANY TIME WITHOUT EFFECTIVE REGISTRATION UNDER SUCH ACT AND LAWS OR EXEMPTION THEREFROM, AS WELL AS COMPLIANCE WITH THE OTHER SUBSTANTIAL RESTRICTIONS ON TRANSFERABILITY THAT ARE SET FORTH HEREIN.**

# TABLE OF CONTENTS

**ARTICLE I       DEFINITIONS** ................................................................................................**1**

    **Section 1.01     Definitions** ...................................................................................**1**

    **Section 1.02     Interpretation** ...........................................................................**12**

**ARTICLE II      ORGANIZATION** ........................................................................................**12**

    **Section 2.01     Formation** ..................................................................................**12**

    **Section 2.02     Name** ..........................................................................................**13**

    **Section 2.03     Principal Office** ........................................................................**13**

    **Section 2.04     Registered Office; Registered Agent** .......................................**13**

    **Section 2.05     Purposes; Powers** .....................................................................**13**

    **Section 2.06     Term** ..........................................................................................**14**

**ARTICLE III     CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS** ...........................**14**

    **Section 3.01     Initial Capital Contributions** ...................................................**14**

    **Section 3.02     Additional Capital Contributions** ............................................**15**

    **Section 3.03     Maintenance of Capital Accounts** ............................................**15**

    **Section 3.04     Succession Upon Transfer** ........................................................**15**

    **Section 3.05     Negative Capital Accounts** .......................................................**15**

    **Section 3.06     No Withdrawals from Capital Accounts** ...................................**16**

    **Section 3.07     Treatment of Loans from Members** ..........................................**16**

    **Section 3.08     Modifications** ...........................................................................**16**

**ARTICLE IV     MEMBERS** ....................................................................................................**16**

    **Section 4.01     No Personal Liability** ...............................................................**16**

    **Section 4.02     No Withdrawal** .........................................................................**16**

    **Section 4.03     No Interest in Company Property** ..............................................**16**

    **Section 4.04     Certification of Membership Interests** ......................................**17**

    **Section 4.05     Meetings of Members** ...............................................................**17**

    **Section 4.06     Action Without Meeting** ...........................................................**18**

    **Section 4.07     Power of Members** ....................................................................**19**

    **Section 4.08     Similar or Competitive Activities; Business Opportunities** .......**19**

**ARTICLE V      ALLOCATIONS** ...........................................................................................**19**

    **Section 5.01     Allocation of Net Income and Net Loss** ....................................**19**

    **Section 5.02     Regulatory and Special Allocations** .........................................**19**

    **Section 5.03     Tax Allocations** ........................................................................**20**

    **Section 5.04     Allocations in Respect of Transferred Membership Interests** ....**22**

i

**ARTICLE VI    DISTRIBUTIONS** ..................................................................................**22**

    **Section 6.01    General** ...........................................................................................**22**

    **Section 6.02    Tax Advances** ................................................................................**23**

    **Section 6.03    Tax Withholding; Withholding Advances** ...................................**24**

    **Section 6.04    Distributions in Kind** ...................................................................**25**

**ARTICLE VII    MANAGEMENT** ..................................................................................**25**

    **Section 7.01    Management of the Company** .......................................................**25**

    **Section 7.02    Independent Director** ...................................................................**25**

    **Section 7.03    Sole Manager** ..............................................................................**26**

    **Section 7.04    Service Provider** .........................................................................**26**

    **Section 7.05    Actions Requiring Independent Director Consent** ....................**27**

    **Section 7.06    Actions Requiring Apache Consent** ...........................................**28**

    **Section 7.07    Compensation and Reimbursement of the Independent Director, the Sole Manager, the Service Provider and Credit Bid Purchaser** ....................**31**

    **Section 7.08    No Personal Liability** ..................................................................**31**

    **Section 7.09    Funding Capital Expenditures** ....................................................**32**

**ARTICLE VIII    TRANSFER** .......................................................................................**33**

    **Section 8.01    General Restrictions on Transfer** ...............................................**33**

**ARTICLE IX    EXCULPATION AND INDEMNIFICATION** .....................................**34**

    **Section 9.01    Exculpation of Covered Persons** ................................................**34**

    **Section 9.02    Liabilities and Duties of Covered Persons** ................................**35**

    **Section 9.03    Indemnification** ..........................................................................**36**

    **Section 9.04    Survival** ......................................................................................**38**

**ARTICLE X    ACCOUNTING; TAX MATTERS** ......................................................**38**

    **Section 10.01    Financial Statements and Other Information** ...........................**38**

    **Section 10.02    Inspection Rights** ......................................................................**39**

    **Section 10.03    Income Tax Status** ....................................................................**40**

    **Section 10.04    Tax Matters Representative** ......................................................**40**

    **Section 10.05    Tax Returns** ...............................................................................**41**

    **Section 10.06    Company Funds** .........................................................................**42**

**ARTICLE XI    WINDING UP AND TERMINATION** ...............................................**42**

    **Section 11.01    Events Requiring Winding Up** ..................................................**42**

    **Section 11.02    Effectiveness of Termination** ....................................................**42**

    **Section 11.03    Liquidation** ...............................................................................**43**

Section 11.04   **Certificate of Termination**.............................................................44
Section 11.05   **Survival of Rights, Duties, and Obligations**...............................44
Section 11.06   **Recourse for Claims**........................................................................44


**ARTICLE XII   MISCELLANEOUS**.......................................................................44

Section 12.01   **Expenses**..............................................................................................44
Section 12.02   **Further Assurances**..........................................................................45
Section 12.03   **Confidentiality**...................................................................................45
Section 12.04   **Notices**.................................................................................................46
Section 12.05   **Headings**..............................................................................................47
Section 12.06   **Severability**.........................................................................................47
Section 12.07   **Entire Agreement**.............................................................................48
Section 12.08   **Successors and Assigns**...................................................................48
Section 12.09   **No Third-Party Beneficiaries**.........................................................48
Section 12.10   **Amendment**.........................................................................................48
Section 12.11   **Waiver**..................................................................................................48
Section 12.12   **Governing Law**..................................................................................48
Section 12.13   **Submission to Jurisdiction**..............................................................49
Section 12.14   **Waiver of Jury Trial**........................................................................49
Section 12.15   **Equitable Remedies**..........................................................................49
Section 12.16   **Attorney's Fees**..................................................................................49
Section 12.17   **Remedies Cumulative**.......................................................................49
Section 12.18   **Counterparts**......................................................................................50


EXHIBIT A          FORM OF TRANSITION SERVICES AGREEMENT
SCHEDULE A         MEMBERS SCHEDULE
SCHEDULE B         INDEPENDENT DIRECTOR'S COMPENSATION
SCHEDULE C         SOLE MANAGER'S COMPENSATION
SCHEDULE D         ACCOUNTING PROCEDURES FOR APACHE OFFICERS AND
                   EMPLOYEES

## LIMITED LIABILITY COMPANY AGREEMENT OF
## FIELDWOOD ENERGY I LLC

This Limited Liability Company Agreement of Fieldwood Energy I LLC, a Texas limited liability company (the "**Company**"), dated as of [●], 2021 (this "**Agreement**"), is entered into by and among the Company, the Initial Member[1] executing this Agreement as of the date hereof, and each other Person who after the date hereof becomes a Member of the Company and becomes a party to this Agreement by executing a joinder agreement in form and substance acceptable to the Company.  Capitalized terms not defined where used in this Agreement shall have the meanings assigned to such terms in ARTICLE I of this Agreement.

### RECITALS

**WHEREAS,** the Company was formed under the laws of the State of Texas by the filing of a Certificate of Formation with the Secretary of State of the State of Texas on [●], 2021 (the "**Certificate of Formation**") for the purposes set forth in Section 2.05 of this Agreement;

**WHEREAS,** pursuant to and in accordance with the Confirmation Order and the Term Sheet, respectively, and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company will own (i) the Legacy Apache Properties subject to the operational liabilities in connection therewith, including plugging and abandonment and decommissioning liabilities relating to the Legacy Apache Properties, and (ii) the equity interests of GOM Shelf;

**WHEREAS,** in accordance with the Term Sheet, [●] has been appointed to serve as the initial Independent Director of the Company in accordance with this Agreement; and

**WHEREAS,** the Initial Member wishes to enter into this Agreement to set forth the terms and conditions governing the operation and management of the Company;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I
### DEFINITIONS

**Section 1.01   Definitions.**  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in this Section 1.01:

"**Acceptance Notice**" has the meaning set forth in Section 7.09.

---

[1] NTD: Please confirm identity of Initial Member and the equity holders of the Initial Member.

"**Adjusted Capital Account Deficit**" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

(a)      crediting to such Capital Account any amount that such Member is obligated to restore or is deemed to be obligated to restore pursuant to Treasury Regulations Sections 1.704-1(b)(2)(ii)(c), 1.704-2(g)(1) and 1.704-2(i); and

(b)      debiting to such Capital Account the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6).

"**Adjusted Taxable Income**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year (or portion thereof) with respect to the Membership Interest held by such Member means the federal taxable income allocated by the Company to the Member with respect to its Membership Interest (as adjusted by any final determination in connection with any tax audit or other proceeding) for such Fiscal Year (or portion thereof); provided, that such taxable income shall be computed (i) minus any excess taxable loss of the Company for any prior period allocable to such Member with respect to its Membership Interest that were not previously taken into account for purposes of determining such Member's Adjusted Taxable Income in a prior Fiscal Year to the extent such loss would be available under the Code to offset income of the Member (or, as appropriate, the direct or indirect owners of the Member) determined as if the income and loss from the Company were the only income and loss of the Member (or, as appropriate, the direct or indirect owners of the Member) in such Fiscal Year and all prior Fiscal Years, and (ii) taking into account any special basis adjustment with respect to such Member resulting from an election by the Company under Code Section 754.

"**Affiliate**" means, with respect to any Person, any other Person who, directly or indirectly (including through one or more intermediaries), controls, is controlled by, or is under common control with, such Person.  For purposes of this definition, "control," when used with respect to any specified Person, shall mean the power, direct or indirect, to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or partnership or other ownership interests, by contract or otherwise; and the terms "controlling" and "controlled" shall have correlative meanings.  For the avoidance of doubt, neither Apache nor any of its Subsidiaries nor Credit Bid Purchaser nor any of its Subsidiaries shall constitute an Affiliate of the Company.

"**Agreement**" has the meaning set forth in the Preamble.

"**Apache**" means Apache Corporation, a Delaware corporation, and its successors or assigns.

"**Applicable Law**" means all applicable provisions of (a) constitutions, treaties, statutes, laws (including the common law), rules, regulations, decrees, ordinances, codes, proclamations, declarations, or orders of any Governmental Authority; (b) any consents or approvals of any Governmental Authority; and (c) any orders, decisions, advisory or interpretative opinions, injunctions, judgments, awards, decrees of, or agreements with, any Governmental Authority.

"**Approved Providers**" has the meaning set forth in Section 7.02(a).

"**BOC**" means the Texas Business Organizations Code, as amended and in effect at the time of this Agreement.

"**Book Depreciation**" means, with respect to any Company asset for each Fiscal Year, the Company's depreciation, amortization, or other cost recovery deductions determined for federal income tax purposes, except that if the Book Value of an asset differs from its adjusted tax basis at the beginning of such Fiscal Year, Book Depreciation shall be (a) if such difference is being eliminated by use of the remedial method under Treasury Regulations Section 1.704-3(d), the amount of book basis recovered for such period under the rules prescribed by Treasury Regulations Section 1.704-3(d)(2), or (b) if the remedial method is not used, an amount which bears the same ratio to such beginning Book Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; provided, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero and the Book Value of the asset is positive, Book Depreciation shall be determined with reference to such beginning Book Value using any permitted method selected by the Sole Manager in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g)(3).

"**Book Value**" means, with respect to any Company asset, the adjusted basis of such asset for federal income tax purposes, except as follows:

(a)     the initial Book Value of any Company asset contributed by a Member to the Company shall be the gross Fair Market Value of such Company asset as of the date of such contribution;

(b)     immediately before the distribution by the Company of any Company asset to a Member, the Book Value of such asset shall be adjusted to its gross Fair Market Value as of the date of such distribution;

(c)     the Book Value of all Company assets may, in the sole discretion of the Sole Manager, be adjusted to equal their respective gross Fair Market Values, as reasonably determined by the Sole Manager, as of the following times:

(i)     the acquisition of an additional Membership Interest in the Company by a new or existing Member in consideration for more than a *de minimis* Capital Contribution;

(ii)     the distribution by the Company to a Member of more than a *de minimis* amount of property (other than cash) as consideration for all or a part of such Member's Membership Interest in the Company; and

(iii)     the liquidation of the Company within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g);

(d)     the Book Value of each Company asset shall be increased or decreased, as the case may be, to reflect any adjustments to the adjusted tax basis of such Company asset

3

pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Account balances pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m); provided, that Book Values shall not be adjusted pursuant to this paragraph (d) to the extent that an adjustment pursuant to paragraph (c) above is made in conjunction with a transaction that would otherwise result in an adjustment pursuant to this paragraph (d); and

(e)　　if the Book Value of a Company asset has been determined pursuant to paragraph (a) or adjusted pursuant to paragraphs (c) or (d) above, such Book Value shall thereafter be adjusted to reflect the Book Depreciation taken into account with respect to such Company asset for purposes of computing Net Income and Net Losses.

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in the State of Texas are authorized or required to close.

"**Capital Account**" has the meaning set forth in Section 3.03.

"**Capital Contribution**" means, for any Member, the total amount of cash and cash equivalents and the Book Value of any property contributed to the Company by such Member.

"**Certificate of Formation**" has the meaning set forth in the Recitals.

"**Certificate of Termination**" means a certificate to be filed upon completion of the winding up and liquidation of the Company as set forth in Section 11.04, which certificate shall be in the form required by § 11.101 of the BOC.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company**" has the meaning set forth in the Preamble.

"**Company Minimum Gain**" means "partnership minimum gain" as defined in Treasury Regulations Section 1.704-2(b)(2), substituting the term "Company" for the term "partnership" as the context requires.

"**Confidential Information**" has the meaning set forth in Section 12.03(a).

"**Confirmation Order**" means the confirmation order entered in Chapter 11 Case 20-33948, In re: Fieldwood Energy LLC, *et al*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in form and substance reasonably acceptable to Apache.

"**Continuance**" has the meaning set forth in Section 11.01.

"**Covered Person**" has the meaning set forth in Section 9.01(a).

"**Credit Bid Purchaser**" means [_____],[2] a Delaware limited liability company, and its successors and assigns.

"**Credit Bid Purchaser Documents**" means the agreements entered into between the Credit Bid Purchaser and the Company in connection with the Plan of Reorganization, including but not limited to the Farmout Agreement, Transition Services Agreement, and the Credit Bid Purchaser Contract Services Agreement, if executed.

"**Credit Bid Purchaser Contract Services Agreement**" means, in the event the Credit Bid Purchaser becomes the Service Provider under Section 7.04 of this Agreement, the Contract Services Agreement to be entered into between the Credit Bid Purchaser and the Company in the form attached to the Implementation Agreement, which, if executed, will be deemed the Service Provider Agreement hereunder.

"**Decommissioning Agreement**" means that certain Decommissioning Agreement, dated as of September 30, 2013, by and among Apache, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, Fieldwood and GOM Shelf, as amended by (i) the First Amendment thereto dated as of September 30, 2013, (ii) the Second Amendment thereto dated as of September 30, 2013, (iii) the Third Amendment thereto dated effective as of April 25, 2017, (iv) the Fourth Amendment thereto dated effective as of September 1, 2017, as amended by that certain Letter Agreement dated January 3, 2018, and (v) the Fifth Amendment thereto dated effective as of April 11, 2018.

"**Decommissioning Security**" means the funds available from Trust A, the letters of credit, and the bonds from time to time outstanding pursuant to the Decommissioning Agreement or documents or instruments related thereto.

"**Depletable Property**" means each separate oil and gas property as defined in Section 614 of the Code.

"**Divisive Merger Documents**" means the certificate of division, the plan of division, the certificate of merger, and other documents filed by or on behalf of Fieldwood with respect to the Company with the Texas Secretary of State related to the divisive merger pursuant to the Plan of Merger and the formation of the Company.

"**Electronic Transmission**" means any form of communication, including communication by use of or participation in one or more electronic networks or databases, not directly involving the physical transmission of paper that creates a record that may be retained, retrieved, and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

---

[2] NTD: Name to be confirmed.

"**Equity Securities**" means any and all Membership Interests of the Company and any securities of the Company convertible into, exchangeable for, or exercisable for, such Membership Interests, and warrants or other rights to acquire such Membership Interests.

"**Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the Member's Tax Amount for such Fiscal Year as estimated in good faith from time to time by the Sole Manager. In making such estimate, the Sole Manager shall take into account amounts shown on Internal Revenue Service Form 1065 filed by the Company and similar state or local forms filed by the Company for the preceding taxable year and such other adjustments as the Sole Manager reasonably determines are necessary or appropriate to reflect the estimated operations of the Company for the Fiscal Year.

"**Excess Amount**" has the meaning set forth in Section 6.02(c).

"**Fair Market Value**" of any asset as of any date means the purchase price that a willing buyer having all relevant knowledge would pay a willing seller for such asset in an arm's length transaction, as determined in good faith by the Sole Manager on such factors as the Sole Manager, in the exercise of his or her reasonable business judgment, considers relevant.

"**Farmout Agreement**" means that certain Farmout Agreement of even date herewith by and between the Company and Credit Bid Purchaser in the form attached to the Implementation Agreement.

"**Fieldwood**" means, prior to the effectiveness of the divisive merger pursuant to the Plan of Merger, Fieldwood Energy LLC, and, from and after the effectiveness of the divisive merger pursuant to the Plan of Merger, Fieldwood Energy III, LLC, a Texas limited liability company. and its successors and assigns (excluding, for the avoidance of doubt, the Company).

"**Fiscal Year**" means the calendar year, unless the Company is required to have a taxable year other than the calendar year, in which case Fiscal Year shall be the period that conforms to its taxable year.

"**GAAP**" means generally accepted accounting principles in the United States of America in effect from time to time; provided, that, notwithstanding any term or provision contained in this Agreement, GAAP will be deemed for all purposes hereof to treat leases that would have not been considered to be indebtedness in accordance with GAAP as in effect on December 31, 2017 (whether such leases were in effect on such date or are entered into thereafter) in a manner consistent with the treatment of such leases under GAAP as in effect on December 31, 2017, notwithstanding any modification or interpretative changes thereto or implementations of any such modifications or interpretative changes that may have occurred thereafter.

"**GOM Shelf**" means GOM Shelf LLC, a Delaware limited liability company, and its successors and assigns.

"**GOM Shelf Properties**" means those assets or properties owned by GOM Shelf.

"**Governmental Authority**" means any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations, or orders of such organization or authority have the force of law), or any arbitrator, court, or tribunal of competent jurisdiction.

"**Implementation Agreement**" means the [Second Amended Apache Term Sheet Implementation Agreement].

"**Independent Director**" means, initially, [●], or such other Person as may be designated or become the Independent Director pursuant to the terms of this Agreement. The Independent Director shall constitute a "manager" (as that term is defined in the BOC) of the Company.

"**Information Notice**" has the meaning set forth in Section 7.09.

"**Initial Member**" has the meaning set forth in the term Member.

"**Legacy Apache Properties**" means the list of assets set forth on Schedule I to the Plan of Merger.

"**Legacy Apache Properties PSA**" means that Purchase and Sale Agreement, dated as of July 18, 2013, between Apache and certain of its affiliates, Fieldwood and certain of its affiliates, and GOM Shelf, as such agreement has been amended.

"**Lien**" means any mortgage, pledge, security interest, option, right of first offer, encumbrance, or other restriction or limitation of any nature whatsoever.

"**Liquidator**" has the meaning set forth in Section 11.03(a).

"**Losses**" has the meaning set forth in Section 9.03(a).

"**Member**" means (a) each Person identified on the Members Schedule as of the date hereof as a Member and who has executed this Agreement or a counterpart thereof (each, an "**Initial Member**"); and (b) each Person who is hereafter admitted as a Member in accordance with the terms of this Agreement and the BOC, in each case so long as such Person is shown on the Company's books and records as the owner of Membership Interests.  The Members shall constitute "members" (as that term is defined in the BOC) of the Company.

"**Member Nonrecourse Debt**" means "partner nonrecourse debt" as defined in Treasury Regulations Section 1.704-2(b)(4), substituting the term "Company" for the term "partnership" and the term "Member" for the term "partner" as the context requires.

"**Member Nonrecourse Debt Minimum Gain**" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if the Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Treasury Regulations Section 1.704-2(i)(3).

"**Member Nonrecourse Deduction**" means "partner nonrecourse deduction" as defined in Treasury Regulations Section 1.704-2(i), substituting the term "Member" for the term "partner" as the context requires.

"**Members Schedule**" has the meaning set forth in Section 3.01.

"**Membership Interest**" means an interest in the Company owned by a Member, including such Member's right (a) to its distributive share of Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company; (b) to its distributive share of the assets of the Company; (c) to vote on, consent to, or otherwise participate in any decision of the Members as provided in this Agreement; and (d) to any and all other benefits to which such Member may be entitled as provided in this Agreement or the BOC.  The Membership Interest of each Member shall be expressed as a percentage interest and shall be as set forth on the Members Schedule.

"**Net Income**" and "**Net Loss**" mean, for each Fiscal Year or other period specified in this Agreement, an amount equal to the Company's taxable income or taxable loss, or particular items thereof, determined in accordance with Code Section 703(a) (where, for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or taxable loss), but with the following adjustments:

(f)  any income realized by the Company that is exempt from federal income taxation, as described in Code Section 705(a)(1)(B), shall be added to such taxable income or taxable loss, notwithstanding that such income is not includable in gross income;

(g)  any expenditures of the Company described in Code Section 705(a)(2)(B), including any items treated under Treasury Regulations Section 1.704-1(b)(2)(iv)(I) as items described in Code Section 705(a)(2)(B), shall be subtracted from such taxable income or taxable loss, notwithstanding that such expenditures are not deductible for federal income tax purposes;

(h)  any gain or loss (including Simulated Gain) resulting from any disposition of Company property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of the property so disposed, notwithstanding that the adjusted tax basis of such property differs from its Book Value;

(i)  any items of depreciation, amortization, and other cost recovery deductions with respect to Company property having a Book Value that differs from its adjusted tax basis shall be computed by reference to the property's Book Value (as adjusted for Book Depreciation) in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g);

(j)  if the Book Value of any Company property is adjusted as provided in the definition of Book Value, then the amount of such adjustment shall be treated as an item of gain or loss and included in the computation of such taxable income or taxable loss;

(k)  to the extent an adjustment to the adjusted tax basis of any Company property pursuant to Code Sections 732(d), 734(b) or 743(b) is required, pursuant to Treasury Regulations Section 1.704 1(b)(2)(iv)(m), to be taken into account in determining

Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis); and

(l)     any items which are specially allocated pursuant to Section 5.02 hereof shall not be taken into account in computing Net Income or Net Loss.  The amounts of the items of Company income, gain, loss or deduction available to be specially allocated pursuant to Section 5.02 hereof shall be determined by applying rules analogous to those set forth in subparagraphs (a) through (f) above.

"**Nonrecourse Deductions**" has the meaning set forth in Treasury Regulations Section 1.704-2(b).

"**Nonrecourse Liability**" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity.

"**Plan of Merger**" means the Agreement and Plan of Merger of Fieldwood into the Company and Fieldwood Energy III LLC, dated as of [●], 2021, and adopted by Fieldwood .

"**Plan of Reorganization**" means the plan of reorganization of Fieldwood that was included in, and was confirmed by, the Confirmation Order.

"**Qualified Person**" has the meaning set forth in Section 7.02(a).

"**Quarterly Estimated Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any calendar quarter of a Fiscal Year means the excess, if any of: (a) the product of (i) a quarter (1/4) in the case of the first calendar quarter of the Fiscal Year, half (1/2) in the case of the second calendar quarter of the Fiscal Year, three-quarters (3/4) in the case of the third calendar quarter of the Fiscal Year, and one (1) in the case of the fourth calendar quarter of the Fiscal Year and (ii) the Member's Estimated Tax Amount for such Fiscal Year; over (b) all distributions previously made during such Fiscal Year to such Member.

"**Recharacterization Mortgages**" has the meaning assigned to such term in Section 6.7 of the Decommissioning Agreement.

"**Regulatory Allocations**" has the meaning set forth in Section 5.02(f).

"**Rejection Notice**" has the meaning set forth in Section 7.09.

"**Related Party Agreement**" means any agreement, arrangement, or understanding between or among the Company or any of its Affiliates, on the one hand, and the Independent Director, the Sole Manager or any member or officer of the Company or any of its Affiliates, or any Affiliate of the Independent Director, the Sole Manager or any member or officer of the

Company or any of its Affiliates; in each case, as such agreement may be amended, modified, supplemented, or restated in accordance with the terms of this Agreement.

"**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors or lenders, counsel, accountants, and other agents of such Person.

"**Restructuring Support Agreement**" means the Restructuring Support Agreement, dated as of August 4, 2020, by and among (i) Fieldwood and including the Fieldwood PSA Parties (as defined therein); (ii) the Consenting FLTL Lenders (as defined therein); (iii) the Consenting SLTL Lenders (as defined therein); and (iv) Apache.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations thereunder, which shall be in effect at the time.

"**Service Provider**" has the meaning set forth in Section 7.04(a).

"**Service Provider Agreement**" has the meaning set forth in Section 7.04(a).

"**Shortfall Amount**" has the meaning set forth in Section 6.02(b).

"**Simulated Basis**" means, with respect to each Depletable Property, the Book Value of such property.

"**Simulated Depletion**" means, with respect to each Depletable Property, a depletion allowance computed in accordance with U.S. federal income tax principles (as if the Simulated Basis of the property were its adjusted tax basis and using simulated cost depletion) and in the manner specified in Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2), provided that the Simulated Depletion with respect to a Depletable Property shall in no event exceed the Simulated Basis of such Depletable Property.

"**Simulated Gain or Loss**" means the simulated gain or loss computed with respect to a sale or other disposition of any Depletable Property pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(k)(2).

"**Sole Manager**" has the meaning set forth in Section 7.01.

"**Standby Facility**" means a secured line of credit to be provided by Apache to the Company and GOM Shelf to fund the ongoing plugging and abandonment and decommissioning of the Legacy Apache Properties and the GOM Shelf Properties, which shall become available to advance funds to the Company and for use in accordance with the Standby Facility Documentation. The Standby Facility shall be secured by a first-priority lien on all the assets of the Company (including all of the equity interests of GOM Shelf) and on all the GOM Shelf Properties, provided that such lien shall also secure the obligations of the Company to Apache under the Decommissioning Agreement.

"**Standby Facility Documentation**" means the Standby Loan Agreement, dated as of [●], 2020, by and between the Company and GOM Shelf, as borrowers, and Apache, as lender, and all of the other agreements, documents and instruments related thereto governing or setting forth terms and conditions of the Standby Facility or of the loans/borrowings made thereunder.

"**Subsidiary**" means, with respect to any Person, any other Person of which a majority of the outstanding shares or other equity interests having the power to vote for directors or comparable managers are owned, directly or indirectly, by the first Person.

"**Tax Advance**" has the meaning set forth in Section 6.02(a).

"**Tax Amount**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for a Fiscal Year means the lesser of (i) the product of (a) the Tax Rate for such Fiscal Year (but not to exceed the Tax Rate applicable to C-corporations for such Fiscal Year) and (b) the Adjusted Taxable Income of the Member for such Fiscal Year with respect to its Membership Interest or (ii) the actual amount of U.S. federal, state and local income tax (including any state or local tax imposed in lieu of an income tax) paid by such Member with respect to such Fiscal Year in respect of the taxable income allocated to the Member by the Company, after taking into account all deductions available to such Member from all sources in excess of such Member's income from other sources; *provided, however*, that if at any time Fieldwood Energy Inc. has a cash tax liability (including an estimated tax liability) on account of items of income or gain of the Company without sufficient cash on hand from a corresponding cash distribution in respect of such income or gain (all as reasonably determined by Fieldwood Energy Inc.), then the Tax Amount shall be increased such that the Company timely distributes cash sufficient to pay such tax liability.

"**Tax Matters Representative**" has the meaning set forth in Section 10.04(a).

"**Tax Rate**" of a Member, or if the Member is disregarded for U.S. federal income tax purposes, the members or beneficiaries of such Member, for any period, means the highest effective marginal combined federal, state, and local tax rate applicable to an individual residing in Houston, Texas (or, if higher, a corporation doing business in Houston, Texas), taking into account (a) the character (for example, long-term or short-term capital gain, ordinary, or exempt) of the applicable income and (b) if applicable, the deduction under IRC Section 199A.

"**Taxing Authority**" has the meaning set forth in Section 6.03(b).

"**Term Sheet**" means that certain term sheet, dated July 31, 2020, among Fieldwood and certain of its Affiliates, on the one hand, and Apache and certain of its Affiliates, on the other hand.

"**Transfer**" means to, directly or indirectly, sell, transfer, assign, gift, pledge, encumber, hypothecate, or similarly dispose of, either voluntarily or involuntarily, by operation of law or otherwise, or to enter into any contract, option, or other arrangement or understanding with respect to the sale, transfer, assignment, gift, pledge, encumbrance, hypothecation, or similar disposition of, any Membership Interests owned by a Person or any interest (including a beneficial interest) in any Membership Interests owned by a Person.   "**Transfer**" when used as a noun shall have a

correlative meaning.  "**Transferor**" and "**Transferee**" mean a Person who makes or receives a Transfer, respectively.

"**Transition Services Agreement**" means the transition services agreement in form and substance attached to the Implementation Agreement and attached hereto as Exhibit A.

"**Treasury Regulations**" means the final or temporary regulations issued by the United States Department of Treasury pursuant to its authority under the Code, and any successor regulations.

"**Trust A**" means the Fieldwood Decommissioning Trust A, a Delaware statutory trust.

"**Withholding Advances**" has the meaning set forth in Section 6.03(b).

**Section 1.02   Interpretation.**  For purposes of this Agreement: (a) the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole.

The definitions given for any defined terms in this Agreement shall apply equally to both the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms.

Unless the context otherwise requires, references herein: (x) to Articles, Sections, Exhibits, and Schedules mean the Articles and Sections of, and Exhibits and Schedules attached to, this Agreement; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder.

This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

The Exhibits and Schedules referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

<div align="center">

**ARTICLE II**
**ORGANIZATION**

</div>

**Section 2.01   Formation**.

<div align="center">12</div>

(a)     The Company was formed on [●], 2021, pursuant to the provisions of the BOC, upon the filing, or constructive filing with the Divisive Merger Documents, of the Certificate of Formation with the Secretary of State of the State of Texas.

(b)     This Agreement shall constitute the "company agreement" (as that term is used in the BOC) of the Company.  The rights, powers, duties, obligations, and liabilities of the Members, the Sole Manager and the Independent Director shall be determined pursuant to the BOC and this Agreement.  To the extent that the rights, powers, duties, obligations, and liabilities of any Member, the Sole Manager or the Independent Director are different by reason of any provision of this Agreement than they would be under the BOC in the absence of such provision, this Agreement shall, to the extent permitted by the BOC, control.

**Section 2.02   Name.**  The name of the Company is "Fieldwood Energy I LLC" or such other name or names as may be designated by the Sole Manager; provided, that the name shall always contain the words "Limited Liability Company" or "Limited Company" or an abbreviation of one of those phrases.  Amendments to the Certificate of Formation or this Agreement to reflect any such name change may be made by the Sole Manager without the consent of the Members.  The Sole Manager shall give prompt notice to the Members of any change to the name of the Company and any related amendment to the Certificate of Formation or this Agreement.  The Company may conduct business under any assumed or fictitious name required by Applicable Law or otherwise deemed desirable by the Sole Manager.

**Section 2.03   Principal Office.**  The principal office of the Company is located at [●], or such other place as may from time to time be determined by the Sole Manager.  The Sole Manager shall give prompt notice of any such change to each of the Members and Apache.

**Section 2.04   Registered Office; Registered Agent.**

(a)     The registered office of the Company shall be the office of the initial registered agent named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

(b)     The registered agent for service of process on the Company in the State of Texas shall be the initial registered agent named in the Certificate of Formation or such other Person or Persons as the Sole Manager may designate from time to time in the manner provided by the BOC and Applicable Law.

**Section 2.05   Purposes; Powers.**

(a)     The purposes of the Company are to engage in the acquisition, disposition, ownership, operation, plugging and abandonment, and decommissioning of the Legacy Apache Properties and to cause GOM Shelf to engage in the acquisition, disposition, ownership, operation, plugging and abandonment, and decommissioning of the GOM Shelf Properties, and to engage in any and all activities necessary or incidental to the foregoing purposes.

13

(b)     At the date of this Agreement, the Company has no assets other than (i) the Legacy Apache Properties, including any accounts receivable associated with the Legacy Apache Properties accruing after the effective date of the Plan of Reorganization and any cash flow generated from the Legacy Apache Properties after the effective date of the Plan of Reorganization (such cash flow shall be reinvested and used to fund operating expenditures, to fund plugging and abandonment and decommissioning activities associated with the Legacy Apache Properties and the GOM Shelf Properties, to fund capital expenditures on the Legacy Apache Properties approved and authorized in accordance with this Agreement, and to repay amounts outstanding, if any, under the Standby Facility); (ii) 100% of the limited liability company interests or other equity interests in GOM Shelf; and (iii) the initial capitalization provided by Fieldwood pursuant to the divisive merger in an amount equal to $50 million *minus* the actual plugging and abandonment and decommissioning expenses incurred by Fieldwood between the date of its bankruptcy petition filing on August 3, 2020, and the effective date of the Plan of Reorganization.

(c)     At the date of this Agreement, the Company has no liabilities other than (i) operational liabilities accruing after the effective date of the Plan of Reorganization (including any accounts payable associated with the Legacy Apache Properties accruing after the effective date of the Plan of Reorganization), (ii) plugging and abandonment and decommissioning liabilities and obligations (A) relating to the Legacy Apache Properties and (B) of GOM Shelf relating to the GOM Shelf Properties, (iii) obligations under the Decommissioning Agreement and the Legacy Apache Properties PSA, and (iv) obligations under the Standby Facility Documentation.

(d)     The Company shall have all the powers necessary or convenient to carry out the purposes for which it is formed, including the powers granted by the BOC.

**Section 2.06   Term.**  The term of the Company commenced on the date the Certificate of Formation was filed with the Secretary of State of the State of Texas and shall continue in existence perpetually until the Company is terminated in accordance with the provisions of this Agreement.

## ARTICLE III
## CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS

**Section 3.01   Initial Capital Contributions.**  Contemporaneously with the execution of this Agreement, and pursuant to the Plan of Reorganization and as a result of a divisive merger pursuant to § 10.008 of the BOC, the Company shall have the property and assets identified in clauses (i) through (iii) in Section 2.05(b), which shall constitute the aggregate Capital Contributions made by the Initial Member.  The Initial Member shall own Membership Interests in the amount set forth opposite such Member's name on Schedule A attached hereto (the "**Members Schedule**").  From and after the date of this Agreement, the Sole Manager shall maintain and update the Members Schedule upon the issuance or Transfer of any Membership Interests to any new or existing Member in accordance with this Agreement.

**Section 3.02    Additional Capital Contributions.**  No Member shall be required to make any additional Capital Contributions to the Company.  Any future Capital Contributions made by any Member shall only be made with the consent of the Sole Manager and, in connection with an issuance of additional Membership Interests, made in compliance with Section 7.06(e).  To the extent that a Member makes an additional Capital Contribution to the Company, the Sole Manager shall revise the Members Schedule to reflect an increase in the Membership Interest of the contributing Member that fairly and equitably reflects the value of its additional Capital Contribution in relation to the aggregate amount of all Capital Contributions made by the Members.

**Section 3.03    Maintenance of Capital Accounts.**  The Company shall establish and maintain for each Member a separate capital account (a "**Capital Account**") on its books and records in accordance with this Section 3.03.  Each Capital Account shall be established and maintained in accordance with the following provisions:

(a)    Each Member's Capital Account shall be increased by the amount of:

(i)    such Member's Capital Contributions, including such Member's initial Capital Contribution and any additional Capital Contributions;

(ii)    any Net Income or other item of income or gain allocated to such Member pursuant to ARTICLE V; and

(iii)    any liabilities of the Company that are assumed by such Member or secured by any property distributed to such Member.

(b)    Each Member's Capital Account shall be decreased by:

(i)    the cash amount or Book Value of any property distributed to such Member pursuant to ARTICLE VI and Section 11.03(d);

(ii)    the amount of any Net Loss or other item of loss or deduction allocated to such Member pursuant to ARTICLE V; and

(iii)    the amount of any liabilities of such Member assumed by the Company or that are secured by any property contributed by such Member to the Company.

**Section 3.04    Succession Upon Transfer.**  In the event that any Membership Interests are Transferred in accordance with the terms of this Agreement, the Transferee shall succeed to the Capital Account of the Transferor to the extent it relates to the Transferred Membership Interests and, subject to Section 5.04, shall receive allocations and distributions pursuant to ARTICLE V, ARTICLE VI, and ARTICLE XI in respect of such Membership Interests.

**Section 3.05    Negative Capital Accounts.**  In the event that any Member shall have a deficit balance in its Capital Account, such Member shall have no obligation, during the term of the Company or upon termination or liquidation thereof, to restore such negative balance or make

any Capital Contributions to the Company by reason thereof, except as may be required by Applicable Law or in respect of any negative balance resulting from a withdrawal of capital or termination in contravention of this Agreement.

**Section 3.06    No Withdrawals from Capital Accounts.**   No Member shall be entitled to withdraw any part of its Capital Account or to receive any distribution from the Company, except as otherwise provided in this Agreement.  No Member shall receive any interest, salary, or drawing with respect to its Capital Contributions or its Capital Account, except as otherwise provided in this Agreement.  The Capital Accounts are maintained for the sole purpose of allocating items of income, gain, loss, and deduction among the Members and shall have no effect on the amount of any distributions to any Members, in liquidation or otherwise.

**Section 3.07    Treatment of Loans from Members.**   Loans by any Member to the Company shall not be considered Capital Contributions and shall not affect the maintenance of such Member's Capital Account, other than to the extent provided in Section 3.03(a)(iii), if applicable.

**Section 3.08    Modifications.**   The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations Section 1.704-1(b) and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  If the Sole Manager determines that it is prudent to modify the manner in which the Capital Accounts, or any increases or decreases to the Capital Accounts, are computed in order to comply with such Treasury Regulations, the Sole Manager may authorize such modifications without the consent of any Member.

<div align="center">

**ARTICLE IV**
**MEMBERS**

</div>

**Section 4.01    No Personal Liability.**   Except as otherwise provided in the BOC, by Applicable Law, or expressly in this Agreement, no Member will be obligated personally for any debt, obligation, or liability of the Company or other Members, whether arising in contract, tort, or otherwise, including a debt, obligation, or liability under a judgment, decree, or order of a court, solely by reason of being a Member.

**Section 4.02    No Withdrawal.**   So long as a Member continues to hold a Membership Interest, such Member shall not have the ability to withdraw or resign as a Member prior to the winding up and termination of the Company and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to the winding up and termination of the Company shall be null and void.  As soon as any Person who is a Member ceases to hold a Membership Interest, such Person shall no longer be a Member.

**Section 4.03    No Interest in Company Property.**   No real or personal property of the Company shall be deemed to be owned by any Member individually, but shall be owned by, and title shall be vested solely in, the Company.  Without limiting the foregoing, each Member hereby irrevocably waives during the term of the Company any right that such Member may have to maintain any action for partition with respect to the property of the Company.

**Section 4.04    Certification of Membership Interests.**

(a)    The Sole Manager may, but shall not be required to, issue certificates to the Members representing the Membership Interests held by such Member.

(b)    In the event that the Sole Manager shall issue certificates representing Membership Interests in accordance with Section 4.04(a), then in addition to any other legend required by Applicable Law, all certificates representing issued and outstanding Membership Interests shall bear a legend substantially in the following form:

> THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO A LIMITED LIABILITY COMPANY AGREEMENT AMONG THE COMPANY AND ITS MEMBERS, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL EXECUTIVE OFFICE OF THE COMPANY.  NO TRANSFER, SALE, ASSIGNMENT, GIFT, PLEDGE, HYPOTHECATION, ENCUMBRANCE, OR OTHER DISPOSITION OF THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE MAY BE MADE EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF SUCH COMPANY AGREEMENT.

> THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS AND MAY NOT BE TRANSFERRED, SOLD, ASSIGNED, GIFTED, PLEDGED, HYPOTHECATED, OR OTHERWISE DISPOSED EXCEPT PURSUANT TO (A) A REGISTRATION STATEMENT EFFECTIVE UNDER SUCH ACT AND LAWS, OR (B) AN EXEMPTION FROM REGISTRATION THEREUNDER.

**Section 4.05    Meetings of Members.**

(a)    Meetings of the Members may be called by (i) the Sole Manager or (ii) a Member or group of Members holding a majority of the Membership Interests.

(b)    Written notice stating the place, date, and time of the meeting and, in the case of a meeting of the Members not regularly scheduled, describing the purposes for which the meeting is called, shall be delivered not fewer than ten days and not more than 60 days before the date of the meeting to each Member, by or at the direction of the Sole Manager or the Member(s) calling the meeting, as the case may be.  The Members may hold meetings at the Company's principal office or at such other place, within or outside the State of Texas, as the Sole Manager or the Member(s) calling the meeting may designate in the notice for such meeting.

(c)    Any Member may participate in a meeting of the Members by means of conference telephone or other communications equipment by means of which all Persons

participating in the meeting can talk to and hear each other, and participation in a meeting by such means shall constitute presence in person at such meeting.

(d)     On any matter that is to be voted on by Members, a Member may vote in person or by proxy, and such proxy may be granted in writing, by means of Electronic Transmission or as otherwise permitted by Applicable Law.  Every proxy shall be revocable in the discretion of the Member executing it unless otherwise provided in such proxy; provided, that such right to revocation shall not invalidate or otherwise affect actions taken under such proxy prior to such revocation.  In lieu of a proxy, a Member may grant an irrevocable power of attorney to conduct the affairs of such Member with respect to matters of the Company, including matters relating to the organization, internal affairs, or termination of the Company.

(e)     The business to be conducted at such meeting need not be limited to the purpose described in the notice and can include business to be conducted by Members; provided, that the appropriate Members shall have been notified of the meeting in accordance with Section 4.05(b).  Attendance of a Member at any meeting shall constitute a waiver of notice of such meeting, except where a Member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(f)     A quorum of any meeting of the Members shall require the presence, whether in person or by proxy, of the Members holding a majority of the Membership Interests.  Subject to Section 4.06, no action may be taken by the Members unless the appropriate quorum is present at a meeting.

(g)     Subject to Section 4.06, Section 7.05, Section 7.06, Section 12.10 or any provision of this Agreement or the BOC requiring the vote, consent, or approval of a different percentage of the Membership Interests, no action may be taken by the Members at any meeting at which a quorum is present without the affirmative vote of the Members holding a majority of the outstanding Membership Interests.

**Section 4.06   Action Without Meeting.**

(a)     Notwithstanding the provisions of Section 4.05, any matter that is to be voted on, consented to, or approved by the Members may be taken without a meeting, without prior notice, and without a vote if consented to, in writing or by Electronic Transmission, by a Member or Members holding not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which each Member entitled to vote on the action is present and votes.  A record shall be maintained by the Sole Manager of each such action taken by written consent of a Member or Members.

(b)     A Member's consent may not be established by a Member's failure to object to an action in a timely manner or by any other means not explicitly provided for in this Agreement.

(c)      If any action or decision permitted by this Agreement to be taken or made by less than all of the Members is taken or made by a written consent signed by less than all of the Members, the Sole Manager shall, within ten calendar days after such action is taken or such decision is made, give written notice of the action taken or the decision made to the Members who did not sign the written consent.

**Section 4.07   Power of Members.**   The Members shall have the power to exercise any and all rights or powers granted to Members pursuant to the express terms of this Agreement and the BOC.   Except as otherwise specifically provided by this Agreement or required by the BOC, no Member, in its capacity as a Member, shall have the power to act for or on behalf of, or to bind, the Company, other than to the extent that the Company has granted a power of attorney to such Member to bind the Company on such actions.

**Section 4.08   Similar or Competitive Activities; Business Opportunities.**   Nothing contained in this Agreement shall prevent any Member or any of its Affiliates from engaging in any other activities or businesses, regardless of whether those activities or businesses are similar to or competitive with the Company.   None of the Members nor any of their Affiliates shall be obligated to account to the Company or to the other Members for any profits or income earned or derived from such other activities or businesses.   None of the Members nor any of their Affiliates shall be obligated to inform the Company or the other Members of a business opportunity of any type or description.

<div align="center">

**ARTICLE V**
**ALLOCATIONS**

</div>

**Section 5.01   Allocation of Net Income and Net Loss.**   For each Fiscal Year (or portion thereof), after giving effect to the special allocations set forth in Section 5.02, Net Income and Net Loss of the Company shall be allocated among the Members pro rata in accordance with their Membership Interests.

**Section 5.02   Regulatory and Special Allocations.**   Notwithstanding the provisions of Section 5.01:

(a)      If there is a net decrease in Company Minimum Gain (determined according to Treasury Regulations Section 1.704-2(d)(1)) during any Fiscal Year, each Member shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2(g). The items to be so allocated shall be determined in accordance with Treasury Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2).   This Section 5.02(a) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)      Member Nonrecourse Deductions shall be allocated in the manner required by Treasury Regulations Section 1.704-2(i).   Except as otherwise provided in Treasury Regulations Section 1.704-2(i)(4), if there is a net decrease in Member Nonrecourse Debt Minimum Gain during any Fiscal Year, each Member that has a share of such Member

<div align="center">19</div>

Nonrecourse Debt Minimum Gain shall be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to that Member's share of the net decrease in Member Nonrecourse Debt Minimum Gain.  Items to be allocated pursuant to this paragraph shall be determined in accordance with Treasury Regulations Sections 1.704-2(i)(4) and 1.704-2(j)(2).  This Section 5.02(b) is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)       Nonrecourse Deductions shall be allocated to the Members in accordance with their Membership Interests.

(d)       In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), Net Income shall be specially allocated to such Member in an amount and manner sufficient to eliminate the Adjusted Capital Account Deficit created by such adjustments, allocations, or distributions as quickly as possible.  This Section 5.02(d) is intended to comply with the "qualified income offset" requirement in Treasury Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(e)       Simulated Depletion and Simulated Loss with respect to any Depletable Property shall be allocated among the Members in proportion to their shares of the Simulated Basis in such property.  Each Member's share of the Simulated Basis in each of the Company's Depletable Properties shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such Depletable Property is acquired by the Company, and shall be reallocated among the Members in accordance with the Members' Membership Interest as determined immediately following the occurrence of an event giving rise to any adjustment to the Book Values of the Company's oil and gas properties pursuant to the terms of this Agreement (or at the time of any material additions to the federal income tax basis of such Depletable Property).

(f)       The allocations set forth in subsections Section 5.02(a), Section 5.02(b), Section 5.02(c), Section 5.02(d) and Section 5.02(e) above (the "**Regulatory Allocations**") are intended to comply with certain requirements of the Treasury Regulations under Code Section 704.  Notwithstanding any other provisions of this ARTICLE V (other than the Regulatory Allocations), the Regulatory Allocations shall be taken into account in allocating Net Income and Net Losses among Members so that, to the extent possible, the net amount of such allocations of Net Income and Net Losses and other items and the Regulatory Allocations to each Member shall be equal to the net amount that would have been allocated to such Member if the Regulatory Allocations had not occurred.

**Section 5.03   Tax Allocations.**

(a)       Subject to Section 5.03(b), Section 5.03(c), and Section 5.03(d), all income, gains, losses and deductions of the Company shall be allocated, for federal, state, and local income tax purposes, among the Members in accordance with the allocation of such income, gains, losses, and deductions pursuant to Section 5.01 and Section 5.02, except

that if any such allocation for tax purposes is not permitted by the Code or other Applicable Law, the Company's subsequent income, gains, losses, and deductions shall be allocated among the Members for tax purposes, to the extent permitted by the Code and other Applicable Law, so as to reflect as nearly as possible the allocation set forth in Section 5.01 and Section 5.02.

(b)      Items of Company taxable income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall be allocated among the Members in accordance with Code Section 704(c) using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager, so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its Book Value.

(c)      If the Book Value of any Company asset is adjusted pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(f) as provided in Section 1.01(c) of the definition of Book Value, subsequent allocations of items of taxable income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value using such reasonable method under Treasury Regulations Section 1.704-3 as shall be determined by the Sole Manager.

(d)      Allocations of tax credit, tax credit recapture, and any items related thereto shall be allocated to the Members according to their interests in such items as determined by the Sole Manager taking into account the principles of Treasury Regulations Section 1.704-1(b)(4)(ii).

(e)      The deduction for depletion with respect to each separate oil and gas property (as defined in Section 614 of the Code) shall, in accordance with Section 613A(c)(7)(D) of the Code, be computed for federal income tax purposes separately by the Members rather than the Company.  The proportionate share of the adjusted tax basis of each oil and gas property shall be allocated to each Member in accordance with such Member's Membership Interest as of the time such oil and gas property is acquired by the Company (and any additions to such U.S. federal income tax basis resulting from expenditures required to be capitalized in such basis shall be allocated among the Members in a manner designed to cause the Members' proportionate shares of such adjusted U.S. federal income tax basis to be in accordance with their Membership Interests as determined at the time of any such additions), and shall be reallocated among the Members in accordance with the Members' Membership Interests as determined immediately following the occurrence of an event giving rise to an adjustment to the Book Values of the Company's oil and gas properties.  For purposes of the separate computation of gain or loss by each Member on the taxable disposition of each oil and gas property, the amount realized from such disposition shall be allocated (i) first, to the Members in an amount equal to the Simulated Basis in such oil and gas property in proportion to their allocable shares thereof and (ii) second, any remaining amount realized shall be allocated consistent with the allocation of Simulated Gain.  The allocations described in this Section 5.03(e) are intended to be applied in accordance with the Members' "interests in

21

partnership capital" under Section 613A(c)(7)(D) or the Code; provided, however, that the Members understand and agree that the Sole Manager may authorize special allocations of federal income tax basis, income, gain, deduction or loss, as computed for U.S. federal income tax purposes, in order to eliminate differences between Simulated Basis and adjusted U.S. federal income tax basis with respect to each oil and gas property, in such manner as determined consistent with the principles outlined in Sections 5.03(b) and 5.03(c). The provisions of this Section 5.03(e) and the other provisions of this Agreement relating to allocations under Section 613A(c)(7)(D) of the Code are intended to comply with Treasury Regulations Section 1.704-1(b)(4)(v) and shall be interpreted and applied in a manner consistent with such Treasury Regulations. Each Member, with the assistance of the Company, shall separately keep records of its share of the adjusted tax basis in each oil and gas property, adjust such share of the adjusted tax basis for any cost or percentage depletion allowable with respect to such property and use such adjusted tax basis in the computation of its cost depletion or in the computation of its gain or loss on the disposition of such property by the Company. Upon the reasonable request of the Company, each Member shall advise the Company of its adjusted tax basis in each oil and gas property and any depletion computed with respect thereto, both as computed in accordance with the provisions of this subsection for purposes of allowing the Company to make adjustments to the tax basis of its assets as a result of certain transfers of interests in the Company or distributions by the Company. The Company may rely on such information and, if it is not provided by the Member, may make such reasonable assumptions as it shall determine with respect thereto. When reasonably requested by the Members, the Company shall provide all available information needed by such Members to comply with the record keeping requirements of this Section 5.03(e) and other applicable tax reporting obligations.

(f)     Allocations pursuant to this Section 5.03 are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account or share of Net Income, Net Losses, distributions, or other items pursuant to any provisions of this Agreement.

**Section 5.04   Allocations in Respect of Transferred Membership Interests.**   In the event of a Transfer of Membership Interests during any Fiscal Year made in compliance with the provisions of ARTICLE VIII, Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company attributable to such Membership Interests for such Fiscal Year shall be determined using the interim closing of the books method.

<div align="center">

**ARTICLE VI**
**DISTRIBUTIONS**

</div>

**Section 6.01   General.**

(a)     Subject to Section 6.02, distributions of available cash shall be made to the Members when and in such amounts as determined by the Sole Manager and only following (i) payment of all operating expenses of the Company, including required payments under the Transition Services Agreement or the Service Provider Agreement, (ii) the repayment in full to Apache of any outstanding principal amounts borrowed by the

<div align="center">22</div>

Company under the Standby Facility and the payment of any accrued interest or premium thereon, in each case, pursuant to the Standby Facility Documentation, (iii) the reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates (A) in performing services on behalf of the Company in connection with the Legacy Apache Properties or the GOM Shelf Properties pursuant to a services contract between Apache or any of its Affiliates and the Company, (B) pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, and (C) pursuant to or as may be required in connection with the Decommissioning Agreement or plugging and abandonment and decommissioning of the Legacy Apache Properties or the GOM Shelf Properties, unless otherwise reimbursed in accordance with the Decommissioning Agreement, and (iv) the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties.  After making all distributions required for a given Fiscal Year under Section 6.02 and repaying/paying all amounts then due and outstanding under the Standby Facility as described in the preceding sentence, distributions determined to be made by the Sole Manager pursuant to this Section 6.01(a) shall be paid to the Members in accordance with their respective Membership Interests.

(b)      Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make any distribution to the Members (i) prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, except as provided in Section 6.02, or (ii) if such distribution would violate § 101.206 of the BOC or other Applicable Law.

**Section 6.02   Tax Advances.**

(a)      At least three days before each date prescribed by the Code for a calendar-year corporation to pay quarterly installments of estimated tax, the Company shall use commercially reasonable efforts to distribute cash to each Member in proportion to and to the extent of such Member's Quarterly Estimated Tax Amount for the applicable calendar quarter (each such distribution, a "**Tax Advance**").

(b)      If, at any time after the final Quarterly Estimated Tax Amount has been distributed pursuant to Section 6.02(a) with respect to any Fiscal Year, the aggregate Tax Advances to any Member with respect to such Fiscal Year are less than such Member's Tax Amount for such Fiscal Year (a "**Shortfall Amount**"), the Company shall use commercially reasonable efforts to distribute cash in proportion to and to the extent of each Member's Shortfall Amount.  The Company shall use commercially reasonable efforts to distribute Shortfall Amounts with respect to a Fiscal Year before the 90th day of the next succeeding Fiscal Year; provided, that if the Company has made distributions other than pursuant to this Section 6.02, the Sole Manager may apply such distributions to reduce any Shortfall Amount.

23

(c)     If the aggregate Tax Advances made to any Member pursuant to this Section 6.02 for any Fiscal Year exceed such Member's Tax Amount (an "**Excess Amount**"), such Excess Amount shall reduce subsequent Tax Advances that would be made to such Member pursuant to this Section 6.02, except to the extent taken into account as an advance pursuant to Section 6.02(d).

(d)     Any distributions made pursuant to this Section 6.02 shall be treated for purposes of this Agreement as advances on distributions pursuant to Section 6.01 and shall reduce, dollar-for-dollar, the amount otherwise distributable to such Member pursuant to Section 6.01.

**Section 6.03   Tax Withholding; Withholding Advances.**

(a)     **Tax Withholding.**  Each Member agrees to furnish the Company with any representations and forms as shall be reasonably requested by the Company to assist it in determining the extent of, and in fulfilling, any withholding obligations it may have.

(b)     **Withholding Advances.**  The Company is hereby authorized at all times to make payments ("**Withholding Advances**") with respect to each Member in amounts required to discharge any obligation of the Company, including any obligation under Section 6225 of the Code (as determined by the Tax Matters Representative) based on the advice of legal or tax counsel to the Company) to withhold or make payments to any federal, state, local or foreign taxing authority (a "**Taxing Authority**") with respect to any distribution or allocation by the Company of income or gain to such Member and to withhold the same from distributions to such Member.  Any funds withheld from a distribution by reason of this Section 6.03(b) shall nonetheless be deemed distributed to the Member in question for all purposes under this Agreement.  If the Company makes any Withholding Advance in respect of a Member hereunder that is not immediately withheld from actual distributions to the Member, then the Member shall promptly reimburse the Company for the amount of such payment, plus interest at a rate equal to the prime rate published in the Wall Street Journal on the date of payment plus two percent (2.0%) per annum, compounded annually, on such amount from the date of such payment until such amount is repaid (or deducted from a distribution) by the Member (any such payment shall not constitute a Capital Contribution).  Each Member's reimbursement obligation under this Section 6.03(b) shall continue after such Member transfers its Membership Interests.

(c)     **Indemnification.**  Each Member hereby agrees to indemnify and hold harmless the Company and the other Members from and against any liability with respect to taxes, interest, or penalties that may be asserted by reason of the Company's failure to deduct and withhold tax on amounts distributable or allocable to such Member.  The provisions of this Section 6.03(c) and the obligations of a Member pursuant to Section 6.03(b) shall survive the termination, dissolution, liquidation, and winding up of the Company and the withdrawal of such Member from the Company or Transfer of its Membership Interests.  The Company may pursue and enforce all rights and remedies it may have against each Member under this Section 6.03, including bringing a lawsuit to collect repayment with interest of any Withholding Advances.

(d)      **Overwithholding.**   None of the Company, the Sole Manager or the Independent Director shall be liable for any excess taxes withheld in respect of any distribution or allocation of income or gain to a Member.   In the event of an overwithholding, a Member's sole recourse shall be to apply for a refund from the appropriate Taxing Authority.

### Section 6.04   Distributions in Kind.

(a)      Subject to Sections 6.01 and 6.02, the Sole Manager is hereby authorized, as it may reasonably determine, to make distributions to the Members in the form of securities or other property (but not including any oil and gas properties) held by the Company; provided, that Tax Advances shall only be made in cash.   In any non-cash distribution, the securities or property so distributed will be distributed among the Members in the same proportion and priority as cash equal to the Fair Market Value of such securities or property would be distributed among the Members pursuant to Section 6.01.

(b)      Any distribution of securities shall be subject to such conditions and restrictions as the Sole Manager determines are required or advisable to ensure compliance with Applicable Law.   In furtherance of the foregoing, the Sole Manager may require that the Members execute and deliver such documents as the Sole Manager may deem necessary or appropriate to ensure compliance with all federal and state securities laws that apply to such distribution and any further Transfer of the distributed securities, and may appropriately legend the certificates that represent such securities to reflect any restriction on Transfer with respect to such laws.

## ARTICLE VII
## MANAGEMENT

**Section 7.01   Management of the Company.**   The business and affairs of the Company shall be managed, operated, and controlled by or under the direction of the Sole Manager ("**Sole Manager**").   Subject to the provisions of Section 7.06, the Sole Manager shall have, and is hereby granted, full and complete power, authority, and discretion for, on behalf of, and in the name of the Company, to take such actions as it may deem necessary or advisable to carry out any and all of the objectives and purposes of the Company.

**Section 7.02   Independent Director.**

(a)      The Independent Director shall (i) be a natural person who is not, nor for the prior five years has been, a director, officer, employee, trade creditor or equityholder (or spouse, parent, sibling or child of any of the foregoing) of (A) Fieldwood or any Affiliate of Fieldwood or (B) any prior or current lender of Fieldwood (a natural person satisfying such condition set forth in this clause (i), a "**Qualified Person**") and (ii) be provided by Citadel SPV, Global Securitization Services, LLC, Corporation Service Company, CT Corporation, [Lord Securities Corporation],[3] Wilmington Trust Company,

---

[3] NTD: Does this entity still exist?  They are now at Citadel SPV.  Lord does not exist.

or, if none of those companies is then in the service of providing professional independent directors, another nationally recognized company selected by Fieldwood (or, following the divisive merger of Fieldwood pursuant to § 10.008 of the BOC, Credit Bid Purchaser) subject to Apache's prior consent, which may be given or withheld in its sole discretion (such providers collectively, the "**Approved Providers**").  [●] is the Qualified Person provided by an Approved Provider that, as of the date of this Agreement, has been appointed to serve as the initial Independent Director and has also been approved to serve as the initial Independent Director for the Company in connection with the Confirmation Order entered by the Bankruptcy Court for the Southern District of Texas before which the reorganization of Fieldwood was being conducted.

(b)     The Independent Director may not be removed without Apache's prior written consent, which may be given or withheld in its sole discretion.  If the Independent Director is removed with Apache's written consent or the Independent Director resigns or otherwise ceases to serve in such capacity, then the Company (acting by majority vote of its Members) shall select another Qualified Person from the Approved Providers to serve as the Independent Director.

**Section 7.03   Sole Manager.**  The Company shall not have any officers or employees other than a Sole Manager.  In accordance with the procedure for the selection of the Sole Manager set forth in the Term Sheet, [●] has been selected and designated to serve as the initial Sole Manager.  The Sole Manager may not be removed without Apache's prior written consent, which may be given or withheld in its sole discretion.  In the event that the Sole Manager is removed with Apache's written consent or the Sole Manager resigns or otherwise ceases to serve in such capacity, then the Sole Manager shall be selected pursuant to the following procedure:  Apache and the Company (acting through the Independent Director for all purposes under this Section 7.03, who shall solicit input from Credit Bid Purchaser for all purposes under this Section 7.03) shall each provide the other with a list of three natural persons, each having a minimum of five years of relevant experience in the energy sector; and if one or more names appear on both Apache's and the Company's lists, then the Company will select, and the Member(s) shall cause the Company to select, the new Sole Manager from those common names; if, however, there are no common names between Apache's and the Company's lists, then Apache and the Company (acting through the Independent Director, who shall solicit input from Credit Bid Purchaser) shall each have the right to strike two names from the other's list, and the new Sole Manager shall be selected by the Independent Director from the remaining two names.

**Section 7.04   Service Provider.**

(a)     Subject to the Transition Services Agreement, the Sole Manager shall hire one or more third-party service provider(s) (whether one or more, collectively, the "**Service Provider**") to perform all operations and plugging and abandonment and decommissioning activities with respect to the Company's and GOM Shelf's properties or assets in a manner consistent with the procedures set forth in this Section 7.04.  The Sole Manager shall solicit and obtain a bid for the work to be performed by each Service Provider from not less than three qualified candidates, each of which must (i) have a minimum of five years of relevant experience and (ii) not be, as of such date when bids are submitted, an Affiliate of Apache;

such bids shall detail the scope, terms and conditions of the work to be performed, along with the price to be paid for the performance of such work.  The Company shall share copies of each such bid received with Apache promptly following receipt thereof. Following the receipt of such bids, with Apache's prior written consent (which may be given or withheld in its sole discretion), the Sole Manager shall select the candidate whose bid contains the lowest price and best terms for the work to be performed, in view of their relevant experience (all as determined in good faith by the Sole Manager and consented to by Apache), to serve as the Service Provider, and shall cause the Company to enter into an agreement with such Service Provider (such agreement, a "**Service Provider Agreement**") to provide services contemplated in this Section 7.04; provided that, immediately prior to executing such Service Provider Agreement, the Sole Manager shall have confirmed that the proposed Service Provider satisfies the candidate qualifications detailed in clause (ii) of the immediately prior sentence (as if being considered on the date of such Service Provider Agreement rather than the date when bids are submitted), and if the proposed Service Provider does not satisfy such candidate qualifications, the Sole Manager shall then reconsider the submitted bids and select another candidate in accordance with the requirements of this sentence as if the previously selected candidate had not submitted a bid. Any Service Provider Agreement shall be in such form and contain such terms as the Sole Manager determines in good faith to be appropriate and consistent with this Section 7.04.  In the event that the Sole Manager elects to remove the Service Provider or the Service Provider otherwise ceases to provide its services in such capacity, then the Sole Manager shall again bid out the work, and shall select the Person to serve as the successor Service Provider, in accordance with the foregoing procedures of this Section 7.04.  The Credit Bid Purchaser shall be deemed to satisfy the requirements of a candidate for the Service Provider under this Section 7.04(a).

(b)     Upon the effectiveness of the Plan of Reorganization, the Company shall enter into the Transition Services Agreement and the Farmout Agreement with Credit Bid Purchaser.  Pursuant to the Transition Services Agreement, Credit Bid Purchaser shall provide transitional operations for the Company in accordance with the terms of the Transition Services Agreement.  The Company and Credit Bid Purchaser (in its sole discretion) may mutually agree that Credit Bid Purchaser shall become the Service Provider, at the effective time of which the Transition Services Agreement shall terminate, and the Sole Manager shall cause the Company to enter into the Service Provider Agreement with Credit Bid Purchaser.  Furthermore, as provided in the Transition Services Agreement, the Transition Services Agreement may be terminated by the Company, in its sole discretion, in accordance with the terms of the Transition Services Agreement.

**Section 7.05   Actions Requiring Independent Director Consent and Service Provider.**  Without the prior consent of the Independent Director (which consent may be given or withheld in the sole discretion of the Independent Director), and the Company shall not do, or enter into any commitment to do, and shall not cause or permit GOM Shelf to do, or enter into any commitment to do, any of the following:

(a)     amend, modify, supplement or waive the Certificate of Formation, this Agreement or any other organizational documents of the Company or its Subsidiaries;

27

(b)      remove or replace the Sole Manager or the Service Provider;

(c)      enter into a fundamental business transaction (as such term is defined in the BOC), including a merger, consolidation, interest exchange, conversion or sale of all or substantially all of the Company's or GOM Shelf's properties or assets;

(d)      wind-up, dissolve, liquidate or terminate the Company or any of its Subsidiaries prior to the occurrence of any event set forth in Section 11.01 or enter into a receivership or initiate a bankruptcy proceeding involving the Company or any of its Subsidiaries;

(e)      revoke a voluntary decision to wind up the Company or GOM Shelf or cancel the required winding up of the Company due to an event specified in § 11.051 of the BOC; or

(f)      reinstate the Company or GOM Shelf after termination.

Except as provided in the fourth sentence of Section 9.02(a), in exercising its rights and performing its duties under this Agreement (including pursuant to this Section 7.05), the Independent Director shall have fiduciary duties of loyalty and care similar to that of a director of a business corporation organized under the BOC.

**Section 7.06   Actions Requiring Apache Consent.**  Without the prior written consent of Apache (which written consent may be given or withheld in Apache's sole discretion, unless expressly indicated otherwise), the Company shall not do, or enter into any commitment to do, and shall not cause or permit GOM Shelf to do, or enter into any commitment to do, any of the following:

(a)      conduct or be involved in any business or operations other than (i) operating or plugging and abandoning and decommissioning the Legacy Apache Properties, (ii) causing GOM Shelf to operate or plug and abandon and decommission the GOM Shelf Properties, and (iii) performing its obligations under the Credit Bid Purchaser Documents and the Services Provider Agreement;

(b)      purchase or farm-in any properties or assets or sell any of the Company's or GOM Shelf's properties or assets; provided that, following receipt of any such written consent from Apache to purchase or farm-in any properties or assets, other than with respect to usual and ordinary G&A and operating expenditures required to own and maintain such properties or assets, no additional funds of, or available to, the Company or GOM Shelf shall be spent with respect to such properties or assets without the prior written consent of Apache (which written consent may be given or withheld in Apache's sole discretion), provided further, however, that if any Person makes an unsolicited proposal to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties on fair market terms and conditions (including fair market rates of return), then the Company shall be obligated to market (or cause GOM Shelf to market) such farm-in opportunity and accept (or cause GOM Shelf to accept) the highest and best offer for such farm-in opportunity as long as the farm-in transaction would be accretive to the Company's consolidated cash

flow, and in such instance no consent from Apache will be required if Apache has made or bid on such farm-in opportunity;

(c)     farm-out any of the Company's or GOM Shelf's properties or assets; provided, however, if any Person makes an unsolicited proposal to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties on fair market terms and conditions (including fair market rates of return), then the Company shall be obligated to market (or cause GOM Shelf to market) such farm-in opportunity and accept (or cause GOM Shelf to accept) the highest and best offer for such farm-in opportunity as long as the farm-in transaction would be accretive to the Company's consolidated cash flow, and in such instance no consent from Apache will be required if Apache has made or bid on such farm-in opportunity;

(d)     incur indebtedness for borrowed money other than pursuant to the Standby Facility, pledge or grant Liens on any properties or assets of the Company or GOM Shelf other than those provided pursuant to the Standby Facility Documentation and the Recharacterization Mortgages, or guarantee, assume, endorse or otherwise become responsible for the obligations of any other Person; provided, however, the Company may (i) establish a working capital line of credit secured by Liens subordinated in all respects to the Liens and payment and other obligations provided for in the Standby Facility Documentation, (ii) draw on such line of credit solely for the business purposes specified in 7.06(a), and (iii) repay up to $50,000,000 of such debt in the ordinary course of its business prior to repayment of the obligations secured by Liens in favor of Apache; provided further, however, that the Company shall not establish, draw on, or repay any such line of credit during the existence of an event of default under the Standby Facility Documentation or if such action would cause an event of default under the Standby Facility Documentation;

(e)     issue additional Membership Interests or any other Equity Securities or admit additional Members to the Company, or issue additional equity interests of or admit additional members to GOM Shelf;

(f)     use its free cash flow (after operating expenses, including fees paid under the Credit Bid Purchaser Documents and the Services Provider Agreement) for any purposes other than fulfilling its obligations to Apache under the Decommissioning Agreement and the Standby Facility Documentation for so long as the obligations thereunder have yet to be satisfied in full (for the avoidance of doubt, Apache's consent shall be required for any development activities proposed by Credit Bid Purchaser under the Farmout Agreement);

(g)     make any loan, advance, or capital contribution or make any investment in any Person;

(h)     enter into, amend, waive, or terminate any Related Party Agreement;

(i)     amend, modify, supplement, restate, or waive any provision of the Certificate of Formation, this Agreement, or any other organizational documents of the

29

Company or its Subsidiaries (and any such amendment, modification, supplement, or waiver that is attempted without Apache's prior written consent shall be void *ab initio* and without effect);

(j)      engage in any activity or take any action with respect to its properties or assets, other than in the ordinary course of business;

(k)      select, remove (other than for gross negligence or willful misconduct), or replace, or change the work to be performed by, the Service Provider;

(l)      remove (other than for gross negligence or willful misconduct), replace, or change the powers, rights, or responsibilities of, the Sole Manager or the Independent Director;

(m)      establish a Subsidiary or enter into any joint venture or similar business arrangement or enter into a transaction covered by Section 7.09;

(n)      settle any lawsuit, action, dispute, or other proceeding or otherwise assume any liability or agree to the provision of any equitable relief by the Company or GOM Shelf;

(o)      enter into a fundamental business transaction (as such term is defined in the BOC), including a merger, consolidation, interest exchange, conversion, or sale of all or substantially all of the Company's or GOM Shelf's properties or assets;

(p)      wind-up, dissolve, liquidate, or terminate the Company or any of its Subsidiaries or initiate a bankruptcy proceeding involving the Company or any of its Subsidiaries;

(q)      revoke a voluntary decision to wind up the Company or GOM Shelf or cancel the required winding up of the Company due to an event specified in § 11.051 of the BOC; or

(r)      reinstate the Company or GOM Shelf after termination.

In addition to the foregoing, if (i)(A) the Company or GOM Shelf defaults on its plugging and abandonment and decommissioning obligations under the Decommissioning Agreement, (B) any Governmental Authority or any other Person seeks to cause Apache or its Affiliates to conduct plugging and abandonment or decommissioning activity that is required in accordance with Applicable Law or contract in respect of any of the Legacy Apache Properties or the GOM Shelf Properties, and (C) Apache conducts such plugging and abandonment or decommissioning activity or activities, or (ii) prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties, any letter of credit or bond that is part of the Decommissioning Security is not renewed in a manner consistent in all respects with the existing terms of such letter of credit or bond, then the Company shall, and the Independent Director and the Sole Manager shall cause the Company to:  (x) if applicable, as promptly as practicable after the Independent Director or the

Sole Manager becomes aware of an event described in clause (ii) immediately above, provide written notice to Apache of the upcoming expiration of, and inability to renew, such letter of credit or bond in a manner consistent in all respects with the existing terms of such letter of credit or bond and (y) pay or reimburse Apache for the costs (which costs shall include, without limitation, costs of compensation and benefits of officers and employees of Apache and its Affiliates that devote any of their productive time to performing or overseeing any of the plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties in accordance with the provisions on Schedule D attached hereto applied in a consistent manner as the application of COPAS procedures, which costs shall be determined in good faith by Apache based on the time spent by such employees in performing or overseeing such activities) and expenses incurred in conducting such activity or activities; provided, however, that, to the extent such costs are not direct, out-of-pocket costs incurred by Apache that are reimbursable under the Decommissioning Agreement, such costs shall be reimbursed to Apache only by draws on the Standby Facility which shall not be repaid by the Company unless and until all  surety bonds and letters of credit included within Decommissioning Security have been fully utilized by Apache or it is determined in good faith by Apache that it will have no further drawings under such bonds and letters of credit.

Furthermore, the Company shall provide written notice to Apache of (i) each request or proposal the Company or GOM Shelf receives from a Person to farm in to any of the Legacy Apache Properties or the GOM Shelf Properties and (ii) each prospective joint development under the Farmout Agreement.  In connection with each of the foregoing, the Company shall, and shall cause GOM Shelf to, provide Apache full and open access to all information that the Company or GOM Shelf has regarding each such opportunity.

**Section 7.07   Compensation and Reimbursement of the Independent Director, the Sole Manager, the Service Provider and Credit Bid Purchaser.**  The Independent Director shall be compensated for the services provided by such individual as the Independent Director of the Company in the amount as specified in Schedule B attached hereto. The Sole Manager shall be compensated for the services provided by such individual as the Sole Manager of the Company in the amount as specified in Schedule C attached hereto.  The Company shall reimburse the Independent Director and the Sole Manager for all ordinary, necessary, and direct third-party expenses incurred by the Independent Director and the Sole Manager, respectively, on behalf of the Company in carrying out the Company's business activities.  All reimbursements for expenses shall be reasonable in amount and shall not exceed $[●] in the aggregate for any Fiscal Year.  The Service Provider shall be compensated for the services provided by the Service Provider and reimbursed for the out-of-pocket costs and expenses incurred in connection therewith as shall be set forth in the applicable Service Provider Agreement.  Credit Bid Purchaser shall be compensated for its services under the Transition Services Agreement and reimbursed for the out-of-pocket costs and expenses incurred in connection therewith as set forth in the Transition Services Agreement.

**Section 7.08   No Personal Liability.**  Except as otherwise provided in the BOC, by Applicable Law, or expressly in this Agreement, neither the Independent Director nor the Sole Manager will be obligated personally for any debt, obligation, or liability of the Company, whether arising in contract, tort, or otherwise, including a debt, obligation, or liability under a judgment,

31

decree, or order of a court, solely by reason of being or acting as the Independent Director or the Sole Manager, as applicable.

   **Section 7.09   Funding Capital Expenditures.**   Prior to the cessation of all production from, and completion of all plugging and abandonment and decommissioning activities on, the Legacy Apache Properties and the GOM Shelf Properties, if the Company receives a proposal that the Company engage in any project that is forecast to increase production or cash flow generated from the Legacy Apache Properties or the GOM Shelf Properties (excluding any proposed development activities pursuant to the Farmout Agreement), then the Sole Manager shall, through a written notice, offer to Apache the opportunity to fund the capital expenditures related to such project on behalf of the Company on terms and subject to conditions to be mutually agreed between the Company and Apache; provided that the Company acknowledges and agrees that if any such capital expenditures are funded, in whole or in part, out of funds available to be borrowed by the Company under the Standby Facility, any additional properties or assets obtained or that come into existence as a result of the use of such borrowed amounts under the Standby Facility, including, without limitation, any increased production or cash amounts generated thereby, shall be pledged as additional security under the Standby Facility Documentation.  Such written notice provided to Apache shall include all available details about such opportunity, including, but not limited to, the forecast impact on production and cash flow from the Legacy Apache Properties or the GOM Shelf Properties, as appropriate.  Apache shall have a reasonable period (not to exceed 20 Business Days) following its receipt of such written notice to provide written notice to the Company of (a) Apache's election to fund any such capital expenditures and the terms and conditions that Apache proposes to apply thereto, including whether it will fund such capital expenditure, in whole or in part, using amounts then available to be borrowed by the Company under the Standby Facility (such notice, an "**Acceptance Notice**"), (b) Apache's election not to fund any such capital expenditures (such notice, a "**Rejection Notice**"), or (c) Apache's request for additional information it requires to fully evaluate the proposed project (such notice, an "**Information Notice**").  If Apache provides a timely Acceptance Notice, then the Company and Apache shall endeavor in good faith to negotiate the proposed terms and conditions that will apply thereto, and if mutually satisfactory terms are agreed to by the Company and Apache, such terms and conditions shall be documented as promptly as practicable and the closing of such agreement and funding(s) of such capital expenditures shall occur as so agreed.  If (i) Apache timely provides to the Company a Rejection Notice, (ii) Apache timely provides an Acceptance Notice but the Company and Apache are unable within 60 Business Days after the Company's receipt of the Acceptance Notice to agree upon mutually satisfactory terms and conditions applicable thereto, or (iii) Apache does not submit a timely response to the offer, then the offer for Apache to fund the capital expenditures of the Company in the applicable project shall be deemed rejected by Apache and the Company shall have 180 days within which to obtain third-party funding for such capital expenditures subject to, and in accordance with, the other terms and conditions of this Agreement (including, without limitation, Section 7.06); provided, however, if the Company is unable to obtain such funding subject to, and in accordance with, the other terms and conditions of this Agreement within such 180-day period, then the Company must again follow the procedures in this Section 7.09 and offer Apache the opportunity to fund such expenditures.  If Apache timely provides the Company with an Information Notice, then the Company shall endeavor in good faith to promptly provide the requested information to Apache, and following Apache's receipt of such

32

information, Apache shall have the right to accept or reject such offer on the terms set forth in this Section 7.09.

## ARTICLE VIII
## TRANSFER

**Section 8.01    General Restrictions on Transfer.**

(a)    No Member shall Transfer all or any portion of its Membership Interest in the Company without the prior written approval of:

(i)    Apache and the Company prior to (A) the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties, (B) the repayment in full of any and all amounts outstanding under the Standby Facility and the satisfaction of all obligations under the Standby Facility Documentation, (C) the payment or reimbursement by the Company or from funds available under the Decommissioning Security of the costs (which costs shall include, without limitation, costs of compensation and benefits of officers and employees of Apache and its Affiliates that devote any of their productive time to performing or overseeing any of the plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties in accordance with the provisions on Schedule D attached hereto applied in a consistent manner as the application of COPAS procedures) and expenses incurred by Apache and its Affiliates (1) in performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties or (2) pursuant to or as may be required in connection with the Decommissioning Agreement, and (D) the reimbursement to Apache and its Affiliates for any and all costs and expenses incurred by Apache or any of its Affiliates pursuant to the penultimate sentence of Section 12.01 in connection with evaluating any matter specified in Section 7.06 for which Apache's consent is requested or required; and

(ii)    thereafter, the Company.

(b)    Subject to Section 8.01(a), each Member agrees that it will not Transfer all or any portion of its Membership Interest in the Company, and the Company agrees that it shall not issue any Membership Interests:

(i)    except as permitted under the Securities Act and other applicable federal or state securities or blue sky laws, and then, with respect to a Transfer of Membership Interests, only upon delivery to the Company of an opinion of counsel in form and substance satisfactory to the Company to the effect that such Transfer may be effected without registration under the Securities Act;

(ii)    if such Transfer or issuance would cause the Company to be considered a "publicly traded partnership" under Section 7704(b) of the Code

33

within the meaning of Treasury Regulations Section 1.7704-1(h)(1)(ii), including the look-through rule in Treasury Regulations Section 1.7704-1(h)(3);

(iii)     if such Transfer or issuance would affect the Company's existence or qualification as a limited liability company under the BOC;

(iv)     if such Transfer or issuance would cause the Company to lose its status as a partnership for federal income tax purposes;

(v)     if such Transfer or issuance would cause the Company to be required to register as an investment company under the Investment Company Act of 1940, as amended; or

(vi)     if such Transfer or issuance would cause the assets of the Company to be deemed "Plan Assets" as defined under the Employee Retirement Income Security Act of 1974 or its accompanying regulations or result in any "prohibited transaction" thereunder involving the Company.

(c)     Any Transfer or attempted Transfer of any Membership Interest in violation of this Agreement shall be null and void *ab initio*, no such Transfer shall be recorded on the Company's books, and the purported Transferee in any such Transfer shall not be treated (and the purported Transferor shall continue to be treated) as the owner of such Membership Interest for all purposes of this Agreement.

(d)     Subject to Section 7.06(e), no Transfer of any Membership Interest to a Person not already a Member of the Company shall be deemed completed until the prospective Transferee has executed a joinder agreement in form and substance acceptable to the Company.

(e)     For the avoidance of doubt, any completed Transfer of a Membership Interest permitted by this Agreement shall be deemed a sale, transfer, assignment, or other disposal of such Membership Interest in its entirety as intended by the parties to such Transfer, and shall not be deemed a sale, transfer, assignment, or other disposal of any less than all of the rights and benefits described in the definition of the term "Membership Interest."

## ARTICLE IX
## EXCULPATION AND INDEMNIFICATION

### Section 9.01   Exculpation of Covered Persons.

(a)     **Covered Persons.**  As used herein, the term "**Covered Person**" shall mean (i) each current or former Member; (ii) each current or former manager, officer, director (including the Independent Director), shareholder, partner, member, Affiliate, employee, agent, or Representative of each Member, and each of their Affiliates; and (iii) each manager (including the Sole Manager), officer (if any), employee (if any), agent, or Representative of the Company.

(b)    **Standard of Care.**   Subject to Section 9.02(a) with respect to the Independent Director, no Covered Person shall be liable to the Company or any other Covered Person for any loss, damage, or claim incurred by reason of any action taken or omitted to be taken by such Covered Person in good faith reliance on the provisions of this Agreement, so long as such action or omission does not constitute fraud or willful misconduct by such Covered Person.

(c)    **Good Faith Reliance.**   A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports, or statements (including financial statements and information, opinions, reports, or statements as to the value or amount of the assets, liabilities, Net Income, or Net Losses of the Company or any facts pertinent to the existence and amount of assets from which distributions might properly be paid) of the following Persons or groups: (i) another Member; (ii) one or more officers or employees of the Company; (iii) any attorney, independent accountant, appraiser, or other expert or professional employed or engaged by or on behalf of the Company; or (iv) any other Person selected in good faith by or on behalf of the Company, in each case as to matters that such relying Person reasonably believes to be within such other Person's professional or expert competence.   The preceding sentence shall in no way limit any Person's right to rely on information to the extent provided in § 3.102 or § 3.105 of the BOC.

**Section 9.02    Liabilities and Duties of Covered Persons.**

(a)    **Limitation of Liability.**   This Agreement, unless otherwise specifically stated herein, is not intended to, and does not, create or impose any fiduciary duty on any Covered Person. Furthermore, each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligations of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.   Notwithstanding anything to the contrary in this Article IX, to the fullest extent permitted by Applicable Law, and notwithstanding any duty otherwise existing at law or in equity, the Independent Director shall consider only the interests of the Company, including its creditors, in acting or otherwise consenting to matters requiring the consent of the Independent Director in this Agreement.   Except for duties to the Company as set forth in the immediately preceding sentence (including duties to the Members and the Company's creditors solely to the extent of their respective economic interests in the Company but excluding (i) all other interests of the Members, (ii) the interests of other Affiliates of the Company, and (iii) the interests of any group of Affiliates of which the Company is a part) and in the last sentence of Section 7.05, the Independent Director shall not have any fiduciary duties to the Members or any other Person bound by this Agreement; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.   To the fullest extent permitted by law, the Independent Director shall not be liable to the Company, the Members or any other Person bound by this Agreement for breach of contract or breach of

duties (including fiduciary duties), unless the Independent Director acted in bad faith or engaged in willful misconduct.

(b) **Duties.** Except as provided in Section 9.02(a) with respect to the Independent Director, whenever in this Agreement a Covered Person is permitted or required to make a decision (including a decision that is in such Covered Person's "discretion" or under a grant of similar authority or latitude), the Covered Person shall be entitled to consider only such interests and factors as such Covered Person desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person. Whenever in this Agreement a Covered Person is permitted or required to make a decision in such Covered Person's "good faith," the Covered Person shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or any other Applicable Law.

**Section 9.03   Indemnification.**

(a) **Indemnification.** To the fullest extent permitted by the BOC, as the same now exists or may hereafter be amended, substituted or replaced (but, in the case of any such amendment, substitution, or replacement, only to the extent that such amendment, substitution, or replacement permits the Company to provide broader indemnification rights than the BOC permitted the Company to provide prior to such amendment, substitution, or replacement), the Company shall indemnify, hold harmless, defend, pay, and reimburse any Covered Person against any and all losses, claims, damages, judgments, fines, or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines, or liabilities, and any amounts expended in settlement of any claims (collectively, "**Losses**") to which such Covered Person may become subject by reason of:

(i) any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member, or any direct or indirect Subsidiary of the foregoing in connection with the business of the Company; or

(ii) such Covered Person being or acting in connection with the business of the Company as a member, shareholder, Affiliate, manager, director, officer, employee, or agent of the Company, any Member, or any of their respective Affiliates, or that such Covered Person is or was serving at the request of the Company as a member, manager, director, officer, employee, or agent of any Person including the Company;

provided, that (x) such Covered Person acted in good faith and in a manner believed by such Covered Person to be in, or not opposed to, the best interests of the Company and, with respect to any criminal proceeding, had no reasonable cause to believe his conduct was unlawful, and (y) such Covered Person's conduct did not constitute fraud or willful and intentional misconduct, in either case as determined by a final, nonappealable order of a court of competent jurisdiction. In connection with the foregoing, the termination of any

36

action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Covered Person did not act in good faith or, with respect to any criminal proceeding, had reasonable cause to believe that such Covered Person's conduct was unlawful, or that the Covered Person's conduct constituted fraud or willful misconduct.

(b)     **Control of Defense.**  Upon a Covered Person's discovery of any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03, the Covered Person shall give prompt written notice to the Company of such claim, lawsuit, or proceeding, provided, that the failure of the Covered Person to provide such notice shall not relieve the Company of any indemnification obligation under this Section 9.03, unless the Company shall have been materially prejudiced thereby.  The Company shall be entitled to participate in or assume the defense of any such claim, lawsuit, or proceeding at its own expense.  After notice from the Company to the Covered Person of its election to assume the defense of any such claim, lawsuit, or proceeding, the Company shall not be liable to the Covered Person under this Agreement or otherwise for any legal or other expenses subsequently incurred by the Covered Person in connection with investigating, preparing to defend, or defending any such claim, lawsuit, or other proceeding.  If the Company does not elect (or fails to elect) to assume the defense of any such claim, lawsuit, or proceeding, the Covered Person shall have the right to assume the defense of such claim, lawsuit, or proceeding as it deems appropriate, but it shall not settle any such claim, lawsuit, or proceeding without the consent of the Company (which consent shall not be unreasonably withheld, conditioned, or delayed).

(c)     **Reimbursement.**  The Company shall promptly reimburse (and/or advance to the extent reasonably required) each Covered Person for reasonable legal or other expenses (as incurred) of such Covered Person in connection with investigating, preparing to defend, or defending any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 9.03; provided, that if it is finally judicially determined that such Covered Person is not entitled to the indemnification provided by this Section 9.03, then such Covered Person shall promptly reimburse the Company for any reimbursed or advanced expenses.

(d)     **Entitlement to Indemnity.**  The indemnification provided by this Section 9.03 shall not be deemed exclusive of any other rights to indemnification to which those seeking indemnification may be entitled under any agreement or otherwise.  The provisions of this Section 9.03 shall continue to afford protection to each Covered Person regardless of whether such Covered Person remains in the position or capacity pursuant to which such Covered Person became entitled to indemnification under this Section 9.03 and shall inure to the benefit of the executors, administrators, legatees, and distributees of such Covered Person.

(e)     **Insurance.**  To the extent available on commercially reasonable terms, the Company may purchase, at its expense, insurance to cover Losses covered by the foregoing indemnification provisions and to otherwise cover Losses for any breach or alleged breach

by any Covered Person of such Covered Person's duties in such amount and with such deductibles as the Sole Manager may reasonably determine; provided, that the failure to obtain such insurance shall not affect the right to indemnification of any Covered Person under the indemnification provisions contained herein, including the right to be reimbursed or advanced expenses or otherwise indemnified for Losses hereunder.  If any Covered Person recovers any amounts in respect of any Losses from any insurance coverage, then such Covered Person shall, to the extent that such recovery is duplicative, reimburse the Company for any amounts previously paid to such Covered Person by the Company in respect of such Losses.

(f)  **Funding of Indemnification Obligation.**  Notwithstanding anything contained herein to the contrary, any indemnity by the Company relating to the matters covered in this Section 9.03 shall be provided out of and to the extent of Company assets only, and no Member (unless such Member otherwise agrees in writing) shall have personal liability on account thereof or shall be required to make additional Capital Contributions to help satisfy such indemnity by the Company.

(g)  **Savings Clause.**  If this Section 9.03 or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify and hold harmless each Covered Person pursuant to this Section 9.03 to the fullest extent permitted by any applicable portion of this Section 9.03 that shall not have been invalidated and to the fullest extent permitted by Applicable Law.

(h)  **Amendment.**  The provisions of this Section 9.03 shall be a contract between the Company, on the one hand, and each Covered Person who served in such capacity at any time while this Section 9.03 is in effect, on the other hand, pursuant to which the Company and each such Covered Person intend to be legally bound.  No amendment, modification, or repeal of this Section 9.03 that adversely affects the rights of a Covered Person to indemnification for Losses incurred or relating to a state of facts existing prior to such amendment, modification or repeal shall apply in such a way as to eliminate or reduce such Covered Person's entitlement to indemnification for such Losses without the Covered Person's prior written consent.

**Section 9.04   Survival.**  The provisions of this ARTICLE IX shall survive the dissolution, liquidation, winding up, and termination of the Company.

### ARTICLE X
### ACCOUNTING; TAX MATTERS

**Section 10.01 Financial Statements and Other Information.**  The Company shall furnish to each Member and Apache the following reports:

(a)  **Annual Financial Statements.**  As soon as available, and in any event within 105 days after the end of each Fiscal Year, its audited consolidated balance sheet and related consolidated statements of operations, Members' equity and cash flows as of the end of and for such year prepared under AICPA auditing standards, setting forth in each case in comparative form the figures for the previous Fiscal Year, all reported on by

independent public accountants acceptable to each Member and Apache (without a "going concern" or like qualification, commentary, or exception (except to the extent that any such qualification, commentary, or exception expressly indicates that after giving effect to the exclusion of asset retirement obligations reflected on the accompanying balance sheet, there would be no such qualification, commentary, or exception), and without any qualification or exception as to the scope of such audit) to the effect that such consolidated financial statements present fairly in all material respects the consolidated financial condition and results of operations of the Company and GOM Shelf in accordance with GAAP consistently applied;

(b)     **Quarterly Financial Statements.**  As soon as available, and in any event within 50 days after the end of each quarterly accounting period in each Fiscal Year (including the last fiscal quarter of the Fiscal Year), its unaudited consolidated balance sheet and related unaudited consolidated statements of operations, Members' equity and cash flows as of the end of and for such fiscal quarter and the then elapsed portion of the current Fiscal Year, setting forth in each case in comparative form the figures for the corresponding period or periods of the previous Fiscal Year or as at the end of such period or periods, all in reasonable detail and certified by the Company as presenting fairly in all material respects the consolidated financial condition and results of operations of the Company and GOM Shelf in accordance with GAAP consistently applied, subject to normal year-end audit adjustments and the absence of footnotes; and

(c)     **Monthly Operating Data.**  As soon as available, but in no event later than 15 Business Days after the end of each calendar month, a statement in a form reasonably satisfactory to each Member and Apache showing all operating data for the Company and GOM Shelf, including operating expenses and revenue for each of the Company and GOM Shelf, for such calendar month.

(d)     **Operating Budget.**  As soon as available, but in any event no later than 60 days after the end of each Fiscal Year of the Company, a detailed operating budget for the Fiscal Year, forecasting revenue, operating costs, and capital expenses for each fiscal quarter in form reasonably satisfactory to each Member and Apache.

(e)     **Additional Information.**   Promptly following any reasonable request therefor, such other information regarding the operations, business affairs and financial condition of each of the Company and GOM Shelf, as any Member or Apache may reasonably request, including, without limitation, decommissioning cost estimates and calculations.

**Section 10.02 Inspection Rights.**  Upon reasonable notice from a Member or Apache, the Company shall afford each Member or Apache and their respective Representatives access during normal business hours to (a) the Company's properties, offices, plants, and other facilities; (b) the corporate, financial, and similar records, reports, and documents of the Company, including, without limitation, all books and records, minutes of proceedings, internal management documents, reports of operations, reports of adverse developments, copies of any management letters and communications with Members or the Sole Manager or Independent Director, and to

permit each Member or Apache and their respective Representatives to examine such documents and make copies thereof; and (c) any officers, senior employees, and public accountants of the Company, and to afford each Member or Apache and their respective Representatives the opportunity to discuss and advise on the affairs, finances, and accounts of the Company with such officers, senior employees, and public accountants (and the Company hereby authorizes said accountants to discuss with such Member or Apache and their respective Representatives such affairs, finances, and accounts).

**Section 10.03 Income Tax Status.** It is the intent of the Company and the Members that the Company shall be treated as a partnership or a disregarded entity for U.S., federal, state, and local income tax purposes. Neither the Company nor any Member shall make an election for the Company to be classified as other than a partnership or a disregarded entity pursuant to Treasury Regulations Section 301.7701-3.

**Section 10.04 Tax Matters Representative.**

(a)     **Appointment.** The Members hereby appoint the Sole Manager as "partnership representative" as provided in Code Section 6223(a) (the "**Tax Matters Representative**"). If any state or local tax law provides for a tax matters partner/partnership representative or Person having similar rights, powers, authority or obligations, the person designated as the Tax Matters Representative shall also serve in such capacity. To the extent required by Applicable Law, if the Tax Matters Representative is an entity, it shall appoint a "designated individual" to act on its behalf. The Tax Matters Representative can be removed at any time by a vote of Members holding a majority of the Membership Interests, and shall resign if it is no longer a Member. In the event of the resignation or removal of the Tax Matters Representative, Members holding a majority of the Membership Interests shall select a replacement Tax Matters Representative.

(b)     **Tax Examinations and Audits.** The Tax Matters Representative is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by Taxing Authorities, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith. The Tax Matters Representative shall promptly notify the Members in writing of the commencement of any tax audit of the Company, upon receipt of a tax assessment and upon receipt of a notice of final partnership adjustment, and shall keep the Members reasonably informed of the status of any tax audit and resulting administrative and judicial proceedings. Without the consent of Members holding a majority of the Membership Interests, the Tax Matters Representative shall not extend the statute of limitations, file a request for administrative adjustment, file suit relating to any Company tax refund or deficiency or enter into any settlement agreement relating to items of income, gain, loss or deduction of the Company with any Taxing Authority.

(c)     **US Federal Tax Proceedings.** The Members acknowledge that the Company may elect the application of Section 6226 of the Code. This acknowledgement applies to each Member whether or not the Member owns an interest in the Company in

both the reviewed year and the year of the tax adjustment. In the event that the Company elects the application of Section 6226 of the Code, the Members agree and covenant to take into account and report to the Internal Revenue Service (or any other applicable taxing authority) any adjustment to their tax items for the reviewed year of which they are notified by the Company in a written statement, in the manner provided in Section 6226(b) of the Code, whether or not the Member owns any interest in the Company at such time. Any Member that fails to report its share of such adjustments on its tax return, agrees to indemnify and hold harmless the Company and the Tax Matters Representative from and against any and all losses, costs, liabilities and expenses related to taxes (including penalties and interest) imposed on the Company as a result of the Member's inaction. If the Company is required to pay the assessment of the imputed underpayment under Section 6225(a)(1) of the Code or similar provisions of state law, any taxes, penalties, and interest payable by the Company shall be treated as attributable to the Members, and, to the extent possible, the Tax Matters Representative shall allocate the burden of any such amounts to those Members to whom such amounts are reasonably attributable taking into account the Member's or former Member's allocable share of taxable income or loss with respect to the Fiscal Year to which such assessment pertains and adjustments that may have been made in computing the imputed underpayment. To the extent that any such amount is payable by the Company, at the option of the Tax Matters Representative, such amount shall be recoverable from such Member as provided in Section 6.03(c). The provisions contained in this Section 10.04 shall survive the dissolution, termination or liquidation of the Company, the withdrawal of any Member or the transfer of any Member's interest in the Company and apply to unadmitted assignees of a Member Interest who may be considered current or former partners of the Company for federal tax purposes.

(d)     **Tax Returns.** Each Member agrees that such Member shall not treat any Company item inconsistently on such Member's federal, state, foreign or other income tax return with the treatment of the item on the Company's return.

(e)     **Section 754 Election.** The Tax Matters Representative will make an election under Code Section 754, if the Company is to be taxed as a partnership for federal tax purposes.

(f)     **Indemnification**.  The Company shall defend, indemnify, and hold harmless the Tax Matters Representative against any and all liabilities sustained as a result of any act or decision concerning Company tax matters and within the scope of responsibilities as Tax Matters Representative, so long as such act or decision was done or made in good faith and does not constitute gross negligence or willful misconduct.

**Section 10.05 Tax Returns.** At the expense of the Company, the Sole Manager (or any officer of the Company that it may designate pursuant to this Agreement) shall endeavor to cause the preparation and timely filing (including extensions) of all tax returns required to be filed by the Company pursuant to the Code as well as all other required tax returns in each jurisdiction in which the Company owns property or does business. As soon as reasonably possible after the end of each Fiscal Year, the Sole Manager or any designated officer of the Company, as applicable, will cause to be delivered to each Person who was a Member at any time during such Fiscal Year,

IRS Schedule K-1 to Form 1065, if applicable, and such other information with respect to the Company as may be necessary for the preparation of such Person's federal, state, and local income tax returns for such Fiscal Year.

**Section 10.06 Company Funds.**  All funds of the Company shall be deposited in its name, or in such name as may be designated by the Sole Manager, in such checking, savings, or other accounts, or held in its name in the form of such other investments as shall be designated by the Sole Manager.  The funds of the Company shall not be commingled with the funds of any other Person.  All withdrawals of such deposits or liquidations of such investments by the Company shall be made exclusively upon the signature or signatures of the Sole Manager, or any officer or officers of the Company that may be designated by the Sole Manager, as applicable, pursuant to this Agreement.

<div align="center">

**ARTICLE XI**
**WINDING UP AND TERMINATION**

</div>

**Section 11.01 Events Requiring Winding Up.**  The Company shall begin to wind up its business and affairs only upon the occurrence of any of the following events (in each case, subject to the applicable provisions of Section 7.06):

      (a)    upon the cessation of all production from, and completion of all plugging and abandonment and decommissioning on, the Legacy Apache Properties and the GOM Shelf Properties;

      (b)    the occurrence of a nonwaivable event under the terms of the BOC which requires the winding up of the Company after its termination unless a Continuance occurs in respect of such event; or

      (c)    the entry of a judicial decree ordering winding up and termination under § 11.314 of the BOC in proceedings of which Apache has been given notice and an opportunity to participate.

Notwithstanding the occurrence of an event referenced in Section 11.01(b), if the Company is permitted prior to the termination of its existence in accordance with the BOC to revoke a winding up upon the occurrence of such event and each of Apache, the Sole Manager, and the Independent Director provide their prior written consent to such revocation, then, to the extent so permitted under the BOC and in the manner provided therein, the Company's existence shall be continued (the revocation of such a winding up and continuance of the Company, a "**Continuance**").

**Section 11.02 Effectiveness of Termination.**  The Company shall begin to wind up its business and affairs as soon as reasonably practicable upon the occurrence of an event described in Section 11.01 (if such event has not been revoked or cancelled), but the Company shall not terminate until the winding up of the Company has been completed, the assets of the Company have been distributed as provided in Section 11.03, and the Certificate of Termination shall have been filed as provided in Section 11.04.

<div align="center">42</div>

**Section 11.03  Liquidation.**  If the Company is to be terminated pursuant to Section 11.01, the Company shall be liquidated and its business and affairs wound up in accordance with the BOC and the following provisions:

(a)     **Liquidator.**  The Sole Manager shall act as liquidator to wind up the Company (the "**Liquidator**"); provided, however, that if there is then a vacancy in the position of the Sole Manager or the Sole Manager is not willing to act as the Liquidator, the Members shall appoint a person to act as the Liquidator.  The Liquidator shall have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and business-like manner.

(b)     **Accounting.**  As promptly as possible after the event requiring winding up and again after final liquidation, the Liquidator shall cause a proper accounting to be made by a recognized firm of certified public accountants of the Company's assets, liabilities, and operations through the last day of the calendar month in which such event occurs or the final liquidation is completed, as applicable.

(c)     **Notice.**  The Liquidator shall deliver to each known claimant of the Company the notice required by § 11.052 of the BOC.

(d)     **Distribution of Proceeds.**  The Liquidator shall liquidate the assets of the Company and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of Applicable Law:

(i)     First, to the payment of all of the Company's debts and liabilities to its creditors (including Members, if applicable) and the expenses of liquidation (including sales commissions incident to any sales of assets of the Company);

(ii)     Second, to Trust A until the aggregate funds in Trust A are in an amount equal to 125% of the then Remaining Decommissioning (as defined in the Decommissioning Agreement);

(iii)     Third, to the establishment of and additions to other reserves that are determined by the Liquidator to be reasonably necessary for any contingent unforeseen liabilities or obligations of the Company; and

(iv)     Fourth, to the Members in accordance with the positive balances in their respective Capital Accounts, as determined after taking into account all Capital Account adjustments for the taxable year of the Company during which the liquidation of the Company occurs.

(e)     **Discretion of Liquidator.**  Notwithstanding the provisions of Section 11.03(d) that require the liquidation of the assets of the Company, but subject to the order of priorities set forth in Section 11.03(d), if upon winding up of the Company the Liquidator reasonably determines that an immediate sale of part or all of the Company's assets would be impractical or could cause undue loss to the Members, the Liquidator may defer the liquidation of any assets except those necessary to satisfy Company liabilities,

43

Trust A, and reserves, and may, upon approval of holders of a majority of the outstanding Membership Interests, distribute to the Members, in lieu of cash, as tenants in common and in accordance with the provisions of Section 11.03(d), undivided interests in such Company assets as the Liquidator deems not suitable for liquidation. Any such distribution in kind shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any agreements governing the operating of such properties at such time. For purposes of any such distribution, any property to be distributed will be valued at its Fair Market Value.

**Section 11.04 Certificate of Termination.** Upon completion of the distribution of the assets of the Company as provided in Section 11.03(d) hereof, the Liquidator or other such officer shall execute and cause to be filed a Certificate of Termination in the State of Texas and shall cause the cancellation of all qualifications and registrations of the Company as a foreign limited liability company in jurisdictions other than the State of Texas and shall take such other actions as may be necessary to terminate the Company. Upon acceptance of the Certificate of Termination by the Texas Secretary of State, the Company shall be terminated.

**Section 11.05 Survival of Rights, Duties, and Obligations.** Dissolution, liquidation, winding up, or termination of the Company for any reason shall not release any party from any Loss that at the time of such dissolution, liquidation, winding up, or termination already had accrued to any other party or thereafter may accrue in respect of any act or omission prior to such dissolution, liquidation, winding up, or termination. For the avoidance of doubt, none of the foregoing shall replace, diminish, or otherwise adversely affect any Member's right to indemnification pursuant to Section 9.03.

**Section 11.06 Recourse for Claims.** Each Member shall look solely to the assets of the Company for all distributions with respect to the Company, such Member's Capital Account, and such Member's share of Net Income, Net Loss, and other items of income, gain, loss, and deduction, and shall have no recourse therefor (upon termination or otherwise) against the Liquidator, the Independent Director, or any other Member.

## ARTICLE XII
## MISCELLANEOUS

**Section 12.01 Expenses.** Except as otherwise expressly provided herein, in the Restructuring Support Agreement, or in the Confirmation Order, all costs and expenses, including fees and disbursements of counsel, financial advisors, and accountants, incurred in connection with the preparation and execution of this Agreement, or any amendment or waiver hereof, and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses. In addition to the immediately preceding sentence and the payment or reimbursement to Apache and its Affiliates for the costs and expenses of performing any plugging and abandonment and decommissioning activities with respect to the Legacy Apache Properties or the GOM Shelf Properties as provided in the final paragraph of Section 7.06, from time to time as Apache evaluates any matter specified in Section 7.06 for which its consent is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, the Company shall reimburse Apache for all costs and expenses incurred in connection therewith, with such

reimbursement to be made regardless of whether Apache consents to such matter or provides an Acceptance Notice, Rejection Notice, or Information Notice to the Company with respect to such proposal. Apache's costs shall include, without limitation, third-party costs and the reimbursable costs of compensation and benefits of employees of Apache and its Affiliates who devote productive time to evaluating any matter specified in Section 7.06 for which the consent of Apache is requested or required or any proposal for prospective funding of capital expenditures pursuant to Section 7.09, which costs shall be determined in good faith by Apache based on the time spent by such employees in conducting such evaluation. The reimbursement to be made pursuant to the immediately preceding sentences shall be made within 30 days of the Company's receipt of a statement from Apache specifying the costs to be so reimbursed.

**Section 12.02 Further Assurances.** In connection with this Agreement and the transactions contemplated hereby, the Company and each Member hereby agrees, at the request of the Company or any other Member, to execute and deliver such additional documents, instruments, conveyances, and assurances and to take such further actions as may be required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

**Section 12.03 Confidentiality.**

(a) Each Member acknowledges that, during the term of this Agreement, it will have access to and become acquainted with trade secrets, proprietary information, and confidential information belonging to the Company and its Affiliates that are not generally known to the public, including, but not limited to, information concerning business plans, financial statements, and other information provided pursuant to this Agreement, operating practices and methods, expansion plans, strategic plans, marketing plans, contracts, customer lists, or other business documents that the Company treats as confidential, in any format whatsoever (including oral, written, electronic, or any other form or medium) (collectively, "**Confidential Information**"). In addition, each Member acknowledges that: (i) the Company has invested, and continues to invest, substantial time, expense, and specialized knowledge in developing its Confidential Information; (ii) the Confidential Information provides the Company with a competitive advantage over others in the marketplace; and (iii) the Company would be irreparably harmed if the Confidential Information were disclosed to competitors or made available to the public. Without limiting the applicability of any other agreement to which any Member is subject, no Member shall, directly or indirectly, disclose or use (other than solely for the purposes of such Member monitoring and analyzing its investment in the Company) at any time, including, without limitation, use for personal, commercial, or proprietary advantage or profit, either during its association with the Company or thereafter, any Confidential Information of which such Member is or becomes aware. Each Member in possession of Confidential Information shall take all appropriate steps to safeguard such information and to protect it against disclosure, misuse, espionage, loss, and theft.

(b) Nothing contained in Section 12.03(a) shall prevent any Member from disclosing Confidential Information: (i) upon the order of any court or administrative agency; (ii) upon the request or demand of any regulatory agency or authority having jurisdiction over such Member; (iii) to the extent compelled by legal process or required or

requested pursuant to subpoena, interrogatories, or other discovery requests; (iv) to the extent necessary in connection with the exercise of any remedy hereunder; (v) to the other Members; or (vi) to such Member's Representatives who, in the reasonable judgment of such Member, need to know such Confidential Information and agree to be bound by the provisions of this Section 12.03 as if a Member; or (vii) to any potential Transferee in connection with a proposed Transfer of Membership Interests from such Member, as long as such potential Transferee agrees in writing to be bound by the provisions of this Section 12.03 as if a Member before receiving such Confidential Information; provided, that in the case of clause (i), (ii), or (iii), such Member shall notify the Company and other Members of the proposed disclosure as far in advance of such disclosure as practicable (but in no event make any such disclosure before notifying the Company and other Members) and use reasonable efforts to ensure that any Confidential Information so disclosed is accorded confidential treatment satisfactory to the Company, when and if available.

(c)     The restrictions of Section 12.03(a) shall not apply to Confidential Information that: (i) is or becomes generally available to the public other than as a result of a disclosure by a Member in violation of this Agreement; (ii) is or has been independently developed or conceived by such Member without use of Confidential Information; or (iii) becomes available to such Member or any of its Representatives on a non-confidential basis from a source other than the Company, the other Members, or any of their respective Representatives, provided, that such source is not known by the receiving Member to be bound by a confidentiality agreement regarding the Company.

(d)     The obligations of each Member under this Section 12.03 shall survive for so long as such Member remains a Member, and for three years following the earlier of (i) termination, dissolution, liquidation, and winding up of the Company; (ii) the withdrawal of such Member from the Company; or (iii) such Member's Transfer of its Membership Interests; provided that with respect to Confidential Information that constitutes a trade secret under Applicable Law, the obligations of each Member under this Section 12.03 shall survive until, if ever, such Confidential Information loses its trade secret protection other than due, directly or indirectly, to an act or omission of the Member.

**Section 12.04 Notices.**  All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given:

(a)     when delivered by hand (with written confirmation of receipt);

(b)     when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); or

(c)     on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 12.04):

| **If to the Company:** | Fieldwood Energy I LLC |
| | [COMPANY ADDRESS] |
| | Attention: [TITLE OF OFFICER TO RECEIVE NOTICES] |

with a copy to:

(which shall not
constitute notice)

Hunton Andrews Kurth LLP
600 Travis Street
Suite 4200
Houston, TX 77002
Attention: G. Michael O'Leary

**If to the Independent
Director:**

[INDEPENDENT DIRECTOR ADDRESS]
Attention: [TITLE OF OFFICER TO RECEIVE NOTICES]

with a copy to:

(which shall not
constitute notice)

Hunton Andrews Kurth LLP
600 Travis Street
Suite 4200
Houston, TX 77002
Attention: G. Michael O'Leary

**If to a Member**:

To the Member's respective mailing address as set forth on the Members Schedule.

**Section 12.05 Headings.**  The headings in this Agreement are inserted for convenience or reference only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision of this Agreement.

**Section 12.06 Severability.**  If any term or provision of this Agreement is held to be invalid, illegal, or unenforceable under Applicable Law in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.  Except as provided in Section 9.03(g), upon such determination that any term or other provision is invalid, illegal, or unenforceable, this Agreement shall be modified automatically so as to effect the original intent of the parties as closely as possible in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible, legal, and enforceable.

**Section 12.07 Entire Agreement.** This Agreement, together with the Certificate of Formation and all related Exhibits and Schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

**Section 12.08 Successors and Assigns.** Subject to the restrictions on Transfers set forth herein, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns.

**Section 12.09 No Third-Party Beneficiaries.** Except (a) with respect to certain rights reserved to Apache as set forth in this Agreement, which shall be for the benefit of and enforceable by Apache, and (b) as provided in ARTICLE IX, which shall be for the benefit of and enforceable by Covered Persons as described therein, this Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, successors, and assigns) and nothing herein, express or implied, is intended to or shall confer upon any other Person, including any creditor of the Company, any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 12.10 Amendment.** Subject to Sections 2.02 and 7.06(i), no provision of this Agreement may be amended or modified except by an instrument in writing executed by the Company and the Members holding a majority of the Membership Interests. Any such written amendment or modification will be binding upon the Company and each Member. Notwithstanding the foregoing, amendments to the Members Schedule following any new issuance, redemption, repurchase, or Transfer of Membership Interests in accordance with this Agreement may be made by the Independent Director without the consent of or execution by the Members.

**Section 12.11 Waiver.** No waiver by any party or Apache of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving or Apache, respectively. No waiver by any party or Apache shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege. For the avoidance of doubt, nothing contained in this Section 12.11 shall diminish any of the explicit and implicit waivers described in this Agreement.

**Section 12.12 Governing Law.** All issues and questions concerning the application, construction, validity, interpretation, and enforcement of this Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Texas.

**Section 12.13  Submission to Jurisdiction.**  The parties hereby agree that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the federal courts of the United States of America or the courts of the State of Texas, in each case located in Harris County and in Houston, Texas.  Each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding that is brought in any such court has been brought in an inconvenient forum.  Service of process, summons, notice, or other document by registered mail to the address set forth in Section 12.04 shall be effective service of process for any suit, action, or other proceeding brought in any such court.

**Section 12.14  Waiver of Jury Trial**.  EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**Section 12.15  Equitable Remedies.**  Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties or Apache, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto and Apache shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance, and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

**Section 12.16  Attorney's Fees.**  In the event that any party or third-party beneficiary hereto institutes any legal suit, action, or proceeding, including arbitration, against another party in respect of a matter arising out of or relating to this Agreement, the prevailing party or third-party beneficiary in the suit, action, or proceeding shall be entitled to receive, in addition to all other damages to which it may be entitled, the costs incurred by it in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

**Section 12.17  Remedies Cumulative.**  The rights and remedies under this Agreement are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise, except to the extent expressly provided in Section 9.02 to the contrary.

**Section 12.18 Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by email or other means of Electronic Transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

<div align="center">(SIGNATURE PAGE FOLLOWS)</div>

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**The Company:**

FIELDWOOD ENERGY I LLC,
a Texas limited liability company


By:_____
[NAME]
[TITLE]


**The Initial Member:**

[_____]
a [_____]


By:_____
[NAME]
[TITLE]

**EXHIBIT A**

**FORM OF TRANSITION SERVICES AGREEMENT**

**SCHEDULE A**

**MEMBERS SCHEDULE**

| Member Name, and Address | Capital Contribution | Membership Interest |
|---|---|---|
| [_____]<br>[ADDRESS] | $[AMOUNT] | 100% |
| Total: | $[AMOUNT] | 100% |

**SCHEDULE B**

**INDEPENDENT DIRECTOR'S COMPENSATION**

[To be the market compensation needed to attract a qualified candidate to accept the position.]

**SCHEDULE C**

**SOLE MANAGER'S COMPENSATION**

[To be the market compensation needed to attract a qualified candidate to accept the position.]

**SCHEDULE D**

**ACCOUNTING PROCEDURES FOR APACHE OFFICERS AND EMPLOYEES**

I.     DIRECT CHARGES

1.     LABOR

A.     Salaries and wages, including incentive compensation programs as set forth in COPAS MFI-37 ("Chargeability of Incentive Compensation Programs"), for:

> (1)     Apache's field employees directly employed on-site in the conduct of plugging and abandonment and decommissioning activities with respect to the applicable Legacy Apache Property or the GOM Shelf Property, and
>
> (2)     Apache's employees providing First Level Supervision.

Charges for Apache's employees identified in Section I.1.A may be made based on the employee's actual salaries and wages, or in lieu thereof, a day rate representing Apache's average salaries and wages of the employee's specific job category.

Charges for personnel chargeable under this Section I.1.A who are foreign nationals shall not exceed comparable compensation paid to an equivalent U.S. employee pursuant to this Section I.1.

B.     Apache's cost of holiday, vacation, sickness, and disability benefits, and other customary allowances paid to employees whose salaries and wages are chargeable under Section I.1.A, excluding severance payments or other termination allowances. Such costs under this I.1.B may be charged on a "when and as-paid basis" or by "percentage assessment" on the amount of salaries and wages chargeable under Section I.1.A. If percentage assessment is used, the rate shall be based on Apache's cost experience.

C.     Expenditures or contributions made pursuant to assessments imposed by governmental authority that are applicable to costs chargeable under Sections I.1.A and B.

D.     Personal expenses of personnel whose salaries and wages are chargeable under Section I.1.A when the expenses are incurred in connection with directly chargeable activities.

E.     Apache's cost of established plans for employee benefits, as described in COPAS MFI-27 ("Employee Benefits Chargeable to Joint Operations and Subject to Percentage Limitation"), applicable to Apache's labor costs chargeable under Sections I.1.A and B based on Apache's actual cost not to exceed 40%.

F.      Award payments to employees, in accordance with COPAS MFI-49 ("Awards to Employees and Contractors") for personnel whose salaries and wages are chargeable under Section I.1.A.

## II. OVERHEAD

As compensation for costs not specifically identified as chargeable pursuant to Section I (Direct Charges), Apache shall be reimbursed in accordance with this Section II.

Functions included in the overhead rates regardless of whether performed by Apache, Apache's Affiliates or third parties and regardless of location, shall include, but not be limited to, costs and expenses of:

- design and drafting
- inventory costs
- procurement
- administration
- accounting and auditing
- human resources
- management
- supervision not directly charged under Section I.1 (Labor)
- in-house legal services
- taxation
- preparation and monitoring of permits and certifications; preparing regulatory reports; appearances before or meetings with governmental agencies or other authorities having jurisdiction over the applicable Legacy Apache Property or GOM Shelf Property, other than on-site inspections.

Overhead charges shall include the salaries or wages plus applicable payroll burdens, benefits, and personal expenses of personnel performing overhead functions, as well as office and other related expenses of overhead functions.

To compensate Apache for overhead costs incurred in connection with any particular plugging and abandonment or decommissioning project conducted on any applicable Legacy Apache Property or GOM Shelf Property, the following overhead rates shall be applied to those costs incurred in the performance of such plugging, abandonment, and decommissioning activities:

(1)     5% of total costs if such costs are less than $100,000; plus

(2)     3% of total costs in excess of $100,000 but less or equal to $1,000,000; plus

(3)     2% of total costs in excess of $1,000,000.

Total cost shall mean the gross cost of any one project