**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY, LLC, *et al.*,[1] | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |

**OBJECTION OF XTO OFFSHORE, INC., HHE ENERGY COMPANY, AND XH LLC**
**TO THE JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY, LLC**
**AND ITS AFFILIATED DEBTORS**

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

COME NOW XTO Offshore, Inc., HHE Energy Company, and XH LLC, and their respective affiliates and subsidiaries (collectively, "XTO Energy"), and file this Objection (the "Objection") to the *Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors* (the "Joint Plan") [Docket No. 722]. In support of this Objection, XTO Energy would respectfully show the Court as follows:

**I.    Summary Statement**

1.    Despite the Debtors' obligation to pay hundreds of millions of dollars in P&A Obligations (defined below), their Joint Plan seeks to abandon more than 185 offshore oil and gas properties and, with them, the Debtors' obligation to pay the P&A Obligations relating to such properties. However, the law is clear that the Debtors cannot abandon contaminated estate property, including oil and gas properties subject to substantial P&A Obligations, in violation of state and federal environmental regulations aimed at protecting the health and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

safety of the public. Environmental laws requiring the decommissioning of offshore oil and gas properties are aimed at protecting the public's health and safety. Thus, the Debtors cannot simply abandon oil and gas properties and thereby avoid their substantial P&A Obligations.

2.  Moreover, under well-established authority, the Debtors' P&A Obligations constitute administrative expenses of their bankruptcy estates under section 503(b)(1)(A) of the Bankruptcy Code. Consequently, because the Joint Plan does not adequately provide for the payment of all administrative expenses, including the costs to perform all P&A Obligations associated with the properties to be abandoned, the Joint Plan cannot be confirmed because it does not satisfy section 1129(a)(9)(A) of the Bankruptcy Code and is not feasible under section 1129(a)(11). Finally, the Joint Plan contains improper third-party releases.

## II.      Jurisdiction and Venue

3.  This Court has jurisdiction to hear and determine this Objection under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157, and this Court may enter a final order on this Objection consistent with Article III of the United States Constitution.

4.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.  The bases for the relief requested herein are 11 U.S.C. §§ 1128(b) and 1129; Rule 3020(b) of the Federal Rules of Bankruptcy Procedure; Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas, and the Procedures for Complex Chapter 11 in the Cases Southern District of Texas.

6.  The Court has constitutional authority to enter a final order in this matter. If it is determined that the bankruptcy judge does not have the constitutional authority to enter a final order or judgment in this matter, then XTO Energy consents to the entry of a final order or judgment by this Court in this matter.

## III.     Background Information relating to XTO Energy Leases

7.  On or about July 29, 2011, XTO Offshore, Inc., HHE Energy Company, and XH, LLC, as sellers, entered into a Purchase and Sale Agreement ("PSA") with Dynamic Offshore

Resources, LLC ("Dynamic Offshore"), as buyer. A copy of the PSA is attached hereto as **Exhibit A.** The PSA, which collectively defines the sellers as "XTO Energy," provided for the sale by XTO Energy of XTO Energy's interests in certain oil and gas leasehold estates and other interests (collectively, the "Leases") to Dynamic Offshore.

8. On or about August 1, 2011, a separate Assignment and Bill of Sale was executed by each of XTO Offshore, Inc., HHE Energy Company, and XH, LLC in favor of Dynamic Offshore, pursuant to which XTO Energy sold, assigned, and conveyed the Leases to Dynamic Offshore. A copy of each Assignment and Bill of Sale from XTO Offshore, Inc., HHE Energy Company, and XH, LLC to Dynamic Offshore are attached as **Exhibit B, Exhibit C and Exhibit D,** respectively.

9. According to the chapter 11 petition filed in Case No 20-22950, Fieldwood Energy Offshore, LLC ("Fieldwood Offshore"), which is included among the Debtors in this jointly administered case, is a successor in interest to Dynamic Offshore. Consequently, Dynamic Offshore is referred to hereinafter as Fieldwood Offshore.

10. Pursuant to section 9.08 of the PSA, Fieldwood Offshore agreed to perform all plugging, abandoning and remediation obligations (collectively, the "P&A Obligations") relating to the Leases. Specifically, section 9.08 of the PSA requires Fieldwood Offshore to "perform or assure that performance is accomplished properly and in accordance with applicable law and the Related Agreements, all obligations to abandon, restore, and remediate the Interests and Properties, whether arising before or after the Effective Time, including obligations, as applicable to the Interests and Properties." See Ex. A, p. 27, § 9.08.

11. In addition, section 16.03 of the PSA requires Fieldwood Offshore to "indemnify, defend, and hold XTO Energy and its Associated Parties harmless from each Claim and Liability relating to the Interests, Property or this Transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable." See Ex. A, p. 35, § 16.03. Finally, section 16.04(b)(8) of the PSA provides that Fieldwood Offshore's

duty to defend, indemnify and hold XTO Energy harmless includes any claims or liabilities arising from "obligations to plug and abandon Wells and remediate the Interests and Property." See Ex. A, p. 36, § 16.04(b)(8).

12.    Thus, pursuant to the PSA, Fieldwood Offshore agreed to perform all P&A Obligations relating to the Leases.  Notwithstanding these obligations, the Debtors' Joint Plan seeks to abandon certain oil and gas properties, which include the Leases, along with the Debtors' duty to perform all P&A Obligations associated with such properties.

13.    On November 24, 2020, XTO Energy filed Proof of Claim No. 5 seeking liquidated damages in the amount of $11.9 million, along with unliquidated damages for any P&A Obligations incurred by XTO Energy relating to the Leases.

### IV.    Plan Provisions relating to the Leases

14.    On January 1, 2021, the Debtors filed their Joint Plan, along with a *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors* (the "Disclosure Statement") [Docket No. 723].  Exhibit "F" to the Plan reflects in excess of 180 offshore leases which the Debtors intend to abandon.  This includes the Leases transferred from XTO Energy to Fieldwood Offshore.

15.    Section 5.08 of the Joint Plan provides as follows:

> **5.12    *Abandonment of Certain Properties***
>
> Immediately upon the occurrence of the Effective Date, the Debtors' rights to and interests in executory contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements listed on the Schedule of Abandoned Properties are abandoned pursuant to the Plan without further notice to or order of the Bankruptcy Court pursuant to Sections 105(a) and 554(a) of the Bankruptcy Code and/or deemed rejected pursuant to Section 365 of the Bankruptcy Code, as applicable. The Abandoned Properties shall not be allocated to nor vest in the Post-Effective Date Debtors or NewCo and its subsidiaries, including the Credit Bid Purchaser. Except as otherwise provided in this Plan or the Confirmation Order, the Debtors, their Estates, and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Properties. Nothing in this Plan or the Confirmation Order shall be construed as barring, waiving, or limiting the United States' rights to assert a claim against the Debtors, the Post-Effective Date Debtors or any co-lessees or predecessors in interest with respect to the Abandoned Properties for any decommissioning obligations for the Abandoned Properties.

See Plan [Docket No. 722], pp. 38-39, § 5.12 (emphasis added).

16.     As the foregoing highlighted language of section 5.12 of the Joint Plan makes clear, the Debtors seek to abandon approximately 185 properties, including the Leases, along with their liability for "any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Properties."  In other words, although Fieldwood Offshore agreed to perform all P&A Obligations associated with the Leases, the Debtors are now seeking to abandon the Leases and their obligation to perform such obligations through the Joint Plan.  In addition to these contractual obligations, Debtors are obligated under applicable laws and regulations to perform these P&A Obligations as a part of the decommissioning of the Abandoned Properties.

17.     In addition to seeking to abandon their environmental responsibilities pertaining to the Abandoned Properties, including their P&A Obligations relating to the Leases, the Debtors are also attempting to transfer such P&A Obligations to prior owners in the chain of title. Indeed, the Debtors' Disclosure Statement acknowledges that the Debtors are jointly and severally liable for any P&A liability to the United States government along with prior owners of the Abandoned Properties.  Stated differently, the U.S. government can look to the Debtors' predecessors in interest to either perform the P&A Obligations or pay any P&A liability relating to the Abandoned Properties.

18.     Specifically, section III(B)(1)(c) of the Disclosure Statement, provides:

(c)     Obligations to Third Parties

Pursuant to BSEE regulations, the Company is jointly and severally liable for P&A obligations with all current and prior owners in the chain of title for all P&A liability that was accrued during the prior and current owners' ownership period.  Therefore, in connection with many of its acquisitions of oil and gas properties, the Company has entered into various arrangements with the sellers that establish how the decommissioning of the subject oil and gas properties will be addressed in compliance with BOEM regulations, including (as discussed below) with Apache.

See Disclosure Statement [Docket No. 723], p. 17, § III(B)(1)(c) (emphasis added); see also, e.g., 30 C.F.R. §§ 250.146 and 250.1700-1754; *Noble Energy, Inc. v. Salazar*, 671 F.3d 1241, 1242-44 (D.C. Cir. 2012) (discussing the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq., and specifying the applicable regulations requiring the plugging, abandoning and decommissioning of OCS leases, which accrue the moment an entity drills a well or becomes a lessee, are discharged only when satisfied, and expressly survive termination, transfer or assignment of a lease).  In other words, although the PSA provides that Fieldwood Offshore would be responsible for all P&A Obligations relating the Leases, federal regulations provide that prior owners in the chain of title nevertheless remain responsible to the U.S. government for any P&A Obligations associated with properties for which they are in the chain of title.  *Id.* However, primary responsibility for the P&A Obligations rests with the Debtors.

19.     The P&A Obligations the Debtors are seeking to avoid relating to the Abandoned Properties, and thereby transfer to prior owners in the chain of title, are substantial and believed to exceed hundreds of millions (if not billions) of dollars.  Although the Debtors' Disclosure Statement provides that the Debtors possess $494 million in surety bonds relating to the Abandoned Properties (see Disclosure Statement, p. 17, § III(B)(1)(c)), the total amount of estimated P&A Obligations relating to the Abandoned Properties (and a breakdown of the surety bonds among such Abandoned Properties) is not disclosed.  On information and belief, the amount of P&A Obligations relating to the Abandoned Properties will greatly exceed the amount of the Debtors' surety bonds.  For example, with respect to the XTO Energy Leases, which constitute only a fraction of the total Abandoned Properties,[2] XTO Energy has received surety bonds in the amount of approximately $33 million and has already incurred more than $11 million in P&A liability, leaving only approximately $22 million under the surety bonds.  However, the total P&A Obligations for the Leases included among the Abandoned Properties is believed

---

[2] The number of XTO Leases included among the Abandoned Properties is not entirely clear from the schedules to the Disclosure Statement but appear to constitute approximately 20 of the 185 total Abandoned Properties.

to be hundreds of millions of dollars.  Thus, although the Disclosure Statement does not provide a breakdown of the surety bonds as compared to the estimated P&A Obligations for each of the Abandoned Properties, it appears the Debtors' existing surety bonds will be woefully inadequate to satisfy their P&A Obligations relating to the Abandoned Properties.  The Joint Plan does not provide for the payment of any P&A Obligations for the Abandoned Properties that exceed the amount of the surety bonds.  Instead, the Debtors apparently expect predecessors in the chain of title of the Abandoned Properties (including XTO Energy) to bear these substantial costs.

20.     The Debtors' Join Plan ignores the fact that, under longstanding authority, they cannot simply abandon properties under sections 105(a) and 554(a) of the Bankruptcy Code in violation of state and federal environmental regulations aimed at protecting the health and safety of the public and thereby avoid hundreds of millions of dollars in P&A Obligations. Moreover, the P&A Obligations pertaining to the Abandoned Properties, including the Leases, constitute administrative expenses of their bankruptcy estates under section 503(b)(1)(A) of the Bankruptcy Code.  Consequently, because the Debtors' Joint Plan does not adequately provide for the payment of all administrative expenses, including the costs associated with performing the P&A Obligations for the Abandoned Properties, the Joint Plan cannot be confirmed because it does not satisfy section 1129(a)(9)(A) and is not feasible under section 1129(a)(11) of the Bankruptcy Code.

21.     Finally, the Joint Plan also contains broad release provisions, which include third-party releases of any claims against the "Apache PSA Parties."  Specifically, the Joint Plan defines the "Released Parties" as follows:

> ***Released Parties*** means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Consenting Creditors, (e) the Prepetition Agents, (f) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (g) the Exit Facility Agents, (h) the Exit Facility Lenders, (i) the Backstop Parties, (j) the Apache PSA Parties, (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless

of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

See Joint Plan [Docket No. 722], § 1.1, pp. 16-17 (emphasis added).

22.     The "Apache PSA Parties," which are included among the "Released Parties," include Apache Corporation, Apache Shelf, Inc., Apache Deepwater, LLC, and Apache Shelf Exploration LLC.  See Joint Plan [Docket No. 722], § 1.1, p. 2.

23.     The "Releasing Parties" are defined in the Joint Plan as follows:

> **Releasing Parties** means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

See Joint Plan [Docket No. 722], § 1.1, p. 17.  Although the definition of "Releasing Parties" references the ability of the holders of claims against the Debtors to "opt out" of granting the releases set forth in the Joint Plan, the process for opting out of the releases is not described in the Joint Plan and the "Opt-Out Form" to be provided to parties entitled to vote on the Joint Plan as described in the Disclosure Statement is not among the exhibits attached thereto.

24.     The "**Releases by Holders of Claims or Interests**" is provided in section 10.7(b) of the Joint Plan, and provides for the release of any claims against the Released Parties relating in any manner to the transactions giving rise to any claim treated in the Joint Plan.  Specifically, section 10.7(b) provides, in pertinent part, as follows:

**THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED,** TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE **BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER … BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART … THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN,** THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY … **IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

See Joint Plan [Docket No. 722], § 10.7(b), pp. 62-63 (emphasis added).  In other words, the Joint Plan seeks to release all claims against the Apache PSA Parties by any party holding a claim against the Debtors arising from or relating to any claim that is treated in the Joint Plan based on any act, transaction, agreement or other occurrence taking place on or before the effective date of the Joint Plan.

25.     The Apache PSA Parties are in the chain of title on certain of the Abandoned Properties.  As is discussed in greater detail below, because the Apache PSA Parties are in the chain of title of certain of the Abandoned Properties, they are responsible for P&A Obligations relating to those properties.  The broad release of the Apache PSA Parties in the Joint Plan would have the effect of releasing all claims against the Apache PSA Parties pertaining to the Abandoned Properties, including claims for contribution for P&A Obligations.  The Joint Plan cannot release the claims of third parties against the Apache PSA Parties relating to the Abandoned Properties, including any claims against the Apache PSA Parties by XTO Energy pertaining to the Leases.  At present, the "Opt-Out Forms" are not provided and XTO Energy cannot evaluate the extent the "Opt-Out Forms" would preserve its claims against the Apache PSA Parties.  As a result, XTO Energy expressly objects to the inclusion of the Apache PSA

Parties among the "Released Parties" and the inclusion of XTO Energy among the "Releasing Parties" under Article VIII of the Joint Plan.

## V.    Arguments and Authorities

### A.    Standard of Review

26.    The Debtors bear the burden of establishing that the Joint Plan complies with all of the elements of section 1129.  *In re Cypresswood Land Partners, I*, 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009) ("The Debtor, as the proponent of the [plan], has the burden of proving that all elements of 11 U.S.C. § 1129(a) are satisfied.").

27.    Section 1129 of the Bankruptcy Code sets forth the requirements for confirming a chapter 11 plan of reorganization.  11 U.S.C. § 1129.  The proponent of the plan must show, by a preponderance of the evidence, that each of the applicable requirements is met.  *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993); *In re Sandridge Energy, Inc.*, No. 16-32488 (DRJ), 2016 Bankr. LEXIS 4622 at *34 (Bankr. S.D. Tex. Sep. 20, 2016).  The burden of persuasion rests with the plan proponent. *Briscoe*, 994 F.2d at 1165; *In re Nuvira Hosp., Inc.*, No. 15-80432-G3-11, 2016 Bankr. LEXIS 4033 at *8 (Bankr. S.D. Tex. Nov. 21, 2016).

28.    As proponents of the Joint Plan, the Debtors must bear the burden of showing that the prerequisites to confirmation are satisfied. For the reasons described below, the Debtors cannot carry their burden.

### B.    Objections to Confirmation

#### 1.    *The Debtors Cannot Abandon their P&A Obligations relating to the Abandoned Properties in Violation of Applicable State and Federal Law*

29.    In the Disclosure Statement, the Debtors assert that the "Abandoned Properties are burdensome to the Debtors' estates."  See Disclosure Statement [Docket No. 723], p. 35, VI(C).  As a result, the Debtors seek to abandon such properties under section 105(a) and 554(a) of the Bankruptcy Code.  The Debtors' Disclosure Statement does not articulate the

basis for their determination that the Abandoned Properties are burdensome or provide the total estimated costs to perform the P&A Obligations associated with the Abandoned Properties. However, as discussed above, XTO Energy believes the Debtors are seeking to abandon the Abandoned Properties, including the Leases, because such properties are subject to hundreds of millions (if not billions) of dollars in plugging, abandoning and decommissioning costs.

30.     Although section 554(a) of the Bankruptcy Code generally permits debtors to abandon property that is either burdensome or of inconsequential value to the estate, a debtor is not immune from state and federal laws of general applicability and "cannot abandon contaminated estate property if state health or safety law prohibits such abandonment." *In re American Coastal Energy*, 399 B.R. 805, 810 (Bankr. S.D. Tex. 2009) (Isgur, J.). Indeed, more than thirty years ago, in *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986), the Supreme Court determined that section 554(a) does not preempt all state and local laws and, therefore, "the Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety." *Midlantic*, 474 U.S. at 506-07. Consequently, the Court held that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Id.* at 507.

31.     In this case, the Debtors presently own and operate deep water and shallow water offshore oil and gas properties located in the Gulf of Mexico. The oil and gas properties sought to be abandoned by the Debtors are believed to be subject to hundreds of millions of dollars in P&A Obligations. Moreover, the applicable federal and state environmental statutes and regulations requiring the plugging, abandoning and decommissioning of the Debtors' offshore oil and gas properties are reasonably designed to protect the public health or safety from imminent and identifiable harm. *E.g., American Coastal Energy,* 399 B.R. at 813 ("the applicable provisions of the Texas Natural Resources Code [requiring the plugging and remediation of wells] are reasonably designed to protect the public health and safety."). As a

result, the Count cannot permit the Debtors to abandon the Abandoned Properties without formulating conditions that will adequately protect the public's health and safety.

32. The Debtors' Joint Plan does not provide for payment of the costs associated with performing the P&A Obligations pertaining to the Abandoned Properties, including the Leases. Although the Disclosure Statement provides that the Debtors have obtained $494 million in surety bonds pertaining to the Abandoned Properties (See Disclosure Statement, p. 17, § III(B)(1)(c)), the Disclosure Statement does not provide the total estimated costs associated with performing the P&A Obligations on the Abandoned Properties. As a result, there is no way for the Court or parties in interest to know if the amount of the surety bonds will be adequate to satisfy the Debtors' total P&A Obligations. Likewise, the Disclosure Statement does not specify to which Abandoned Properties the surety bonds apply. As a result, there is no way for XTO Energy to determine whether the Debtors' surety bonds will be sufficient to satisfy the P&A Obligations associated with the abandoned Leases. As discussed above, however, XTO Energy believes the Debtors' surety bonds will not be sufficient to pay for the hundreds of millions (if not billions) in P&A Obligations relating to the Abandoned Properties. Consequently, unless the Debtors can demonstrate that the $494 million in existing surety bonds is sufficient to cover all of the P&A Obligations for the Abandoned Properties, or the Joint Plan is modified to provide for the performance of all such P&A Obligations by the Debtors, it cannot be confirmed in contravention of state and federal environmental regulations requiring the plugging, abandoning and decommissioning of the Abandoned Properties, including the Leases.

2. **The Debtors' Environmental Liabilities Constitute Administrative Expenses under Section 503(b)(1)(A)**

33. Section 503(b)(1)(A) defines an "administrative expense" to include "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). "The Fifth Circuit has held that post-petition plugging and abandonment obligations are generally entitled to administrative priority." *American Coastal Energy,* 309 B.R. at 808 (*citing Tex. v. Lowe (In re*

*H.L.S. Energy Co., Inc.)*, 1551 F.3d 434, 437 (5th Cir. 1998)).  Consequently, the Debtors' post-petition P&A Obligations constitute administrative expenses.  *Id.*

34.    In addition, even if the Debtors' P&A Obligations arise from prepetition conduct or leases, they are nevertheless entitled to administrative expense priority under section 503(b)(1)(A).  Indeed, in *American Coastal*, this Court found that post-petition expenditures required to remedy prepetition environmental liabilities constitute administrative expenses under section 503(b)(1)(A).  *American Coastal*, 309 B.R. at 817.  The Court explained its rationale as follows:

> Because the debtor-in-possession is required to operate the estate in accordance with state law, post-petition expenditures necessary to bring the estate into compliance with the law are necessary for the debtor's rehabilitation. The need to bring the estate into compliance with state environmental and safety laws is no less significant than the need to maintain commercial relations with trade-creditors that provide the raw materials of the debtor's business. A debtor cannot operate an estate in violation of environmental and safety laws.

*Id.* at 816.  As a result, because "***expenditures for remedying violations of environmental and safety laws are necessary to preserve the estate, regardless of whether liability for the state law violation first occurred before or after the filing of a bankruptcy petition***," the Court held that a claim for plugging costs was entitled to administrative priority.  *Id.* at 816-17 (emphasis added).

35.    In a subsequent opinion, *In re ATP Oil & Gas Corp.*, No. 12-36187, 2014 Bankr. LEXIS 1050 (Bankr. S.D. Tex. March 18, 2014), the Court again interpreted *Midlantic* as placing a duty upon the debtor to make the properties safe for abandonment under state law and concluded that expenditures for remedying violations of applicable environmental and safety laws were necessary to preserve the estate regardless of whether the liability for violation of the environmental laws first occurred before or after the filing of the bankruptcy petition. *Id.* at *21. The Court further found that "a debtor's obligation to expend funds to bring the estate into compliance with a state health and safety law does not change just because another entity has

the same obligation."  *Id.*  As a result, the Court found that a claim for post-petition "safe out" work on a production platform was entitled to administrative priority.

36.     Consequently, under *Midlantic*, *Coastal America,* and *ATP Oil & Gas Co.*, all costs associated with the Debtors' P&A Obligations constitute administrative expenses entitled to administrative priority under section 503(b)(1)(A) regardless of the fact that such obligations may arise from prepetition contracts and/or other parties may be jointly and severally liable to the U.S. government for such P&A Obligations.

### 3.     The Plan Does Not Satisfy Section 1129(a)(1)(A) or 1129(a)(11) of the Bankruptcy Code Because It Does Not Provide for the Payment of the Debtors' P&A Obligations as Administrative Expenses

37.     A chapter 11 plan must provide for the payment in full of all administrative expenses on the effective date of the plan, unless the holders of such administrative expenses agree to a different treatment.  11 U.S.C. § 1129(a)(9)(A); *In re American Coastal Energy*, 309 B.R. at 808.  Section 2.1 of the Debtors' Joint Plan provides for the payment in full of all allowed administrative expenses on the later of (i) the effective date of the Joint Plan or (ii) the first business day that is thirty (30) days after the administrative claim becomes an allowed administrative claim.  See Joint Plan [Docket No. 722], section 2.1, pp. 21-22.  Moreover, section 5.12 of the Joint Plan provides that "Nothing in this Plan or the Confirmation Order shall be construed as barring, waiving, or limiting the United States' rights to assert a claim against the Debtors, the Post-Effective Date Debtors or any co-lessees or predecessors in interest with respect to the Abandoned Properties for any decommissioning obligations for the Abandoned Properties."  See Joint Plan [Docket No. 722], section 5.12, pp. 38-39.

38.     As an initial matter, although section 5.12  purports to preserve the United States' "rights to assert a claim" against the Debtors or Post-Effective Date Debtors (and all co-lessees and predecessors in interest) with respect to the Abandoned Properties, such preservation is illusory because the immediately preceding sentence provides that "the Debtors, their Estates, and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising

from or relating to the post-Effective Date period with regards to the Abandoned Properties."  In other words, although the United States' ability to "assert a claim" against the Debtors and Post-Effective Date Debtors for their P&A Obligations relating to the Abandoned Properties is purportedly preserved, the United States' ability to recover from the Debtors or Post-Effective Date Debtors on any such claim for P&A Obligations is precluded by the immediately preceding sentence in section 5.12 of the Joint Plan.  As a result, this provision of the Joint Plan preserves nothing in relation to the Debtors and Post-Effective Date Debtors, and instead only preserves the United States' ability to pursue claims for the P&A Obligations against the Debtors' co-lessees and predecessors in interest.  Indeed, in order for the purported carve-out for the United States' ability to *assert a claim* against the Debtors or Post-Effective Date Debtors for P&A Obligations to be meaningful, the Joint Plan must provide that nothing in the Joint Plan or Confirmation Order shall impair the Debtors' or the Post-Effective Date Debtors' *liability* to the United States for the Debtors' P&A Obligations relating to the Abandoned Properties.

39.     Moreover, pursuant to the Court's *Order (i) Establishing Deadline to File Proofs of Claim, and (ii) Approving Form and Manner of Notice Thereof* [Docket No. 466], the deadline for governmental agencies to file a proof of claim does not expire until February 1, 2021 at 5:00 p.m.  Although the estimated costs for the Debtors' P&A Obligations is not set forth in the Disclosure Statement, XTO Energy believes the cost to perform such P&A Obligations will be hundreds of millions of dollars.  At the time of filing of this Objection, neither the United States nor any other state or local governmental entity has filed a proof of claim reflecting an estimate of the Debtors' P&A Obligations relating to the Abandoned Properties.  Likewise, the Debtors have not yet filed any of their financial documents supporting the Joint Plan with their Disclosure Statement, including their liquidation analysis (Exhibit A to Disclosure Statement), valuation analysis (Exhibit B to Disclosure Statement), or Financial Projections (Exhibit C to Disclosure Statement).  As a result, there is no way for the Court or parties in interest to know whether the Debtors and Post-Effective Date Debtors will be able to pay the Debtors' P&A Obligations

relating to the Abandoned Properties as an administrative expense either on the effective date of the Joint Plan or within 30 days of such administrative expenses being allowed by the Court.

40.     Unless the Joint Plan is amended to preserve the Debtors' and the Post-Effective Date Debtors' liability to the United States (or any other governmental entity) for the P&A Obligations relating to the Abandoned Properties, and the Debtors' financial projections in support of the Plan clearly demonstrate the Debtors' or Post-Effective Date Debtors' ability to satisfy the hundreds of millions of dollars owed by the Debtors for P&A Obligations for the Abandoned Properties as administrative expenses, the Joint Plan fails to satisfy section 1129(a)(9)(A) of the Bankruptcy Code and cannot be confirmed.  The Joint Plan also would not be feasible under section 1129(a)(11) of the Bankruptcy Code because it fails to demonstrate that confirmation "is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan."  11 U.S.C. § 1129(a)(11).  Consequently, unless the Joint Plan is amended to clearly provide for the payment of all of the Debtors' P&A Obligations relating to the Abandoned Properties as administrative expenses, and the Debtors' financial projections demonstrate the Debtors' and Post-Effective Date Debtors' ability to pay such P&A Obligations, the Joint Plan cannot be confirmed.

### 4.  The Joint Plan includes Improper Third Party Releases

41.     The Fifth Circuit has expressly held that section 524(e) prohibits non-debtor discharges or non-consensual third-party releases under a plan.  *See Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 761 (5th Cir. 1995) ("[B]ecause the permanent injunction as entered improperly discharged a potential debt of CIGNA, a nondebtor, the bankruptcy court exceeded its powers under § 105."); *see also Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.),* 522 F.3d 575, 590 (5th Cir. 2008) (holding that section 524(e) prohibits non-debtor discharges and finding that a plan may not release third-party claims against a non-debtor).

42.     An exception exists for statutory committees, their members, and their professionals, who may be released only to the extent of their qualified immunity from negligent acts or omissions, during the pendency of a chapter 11 case, that fall within the scope of their section 1103(c) duties.  *See In re Bigler LP, 442 B.R. 537, 546 (Bankr. S.D. Tex. 2010)*; and *In re Pilgrim's Pride Corp.,* Case No. 08-45664, 2010 Bankr. LEXIS 72, at *13 (Bankr. N.D. Tex. 2010) ("[C]ommittees and their members are entitled to qualified immunity for any acts or omissions during a chapter 11 case that were within the scope of their duties.").

43.     Based on this principle, courts in the Fifth Circuit have consistently stricken provisions that extend non-consensual releases to parties other than debtors, reorganized debtors, statutory committees, statutory committee members, and statutory committee professionals.  *See In re Pac. Lumber Co.*, 584 F.3d at 252-53 (striking non-debtor releases, including releases of the debtors' officers and directors, except with respect to creditors' committee and members); *Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.),* Case No. 17-1958, 2018 U.S. Dist. LEXIS 179769, at *61-69 (N.D. Tex. Oct. 19, 2018) (reversing bankruptcy court's approval of injunction and exculpation provisions that released non-debtor third parties, such as the debtor's parent company, officers, and directors").

44.     As described above, the release provisions in section 10.7(b) of the Joint Plan would release the claims of any party against the Apache PSA Parties for P&A Obligations relating to the Abandoned Properties, including any claims by XTO Energy against the Apache PSA Parties for P&A Obligations relating to the Leases.  Although the Joint Plan and Disclosure Statement reference the ability for the holder of claims against the Debtors to "opt out" of the releases, the "Opt-Out Forms" are not provided and XTO Energy cannot evaluate the extent the "Opt-Out Forms" would preserve its claims against the Apache PSA Parties.  Consequently, as described on page 11 of the Disclosure Statement, by this Objection, XTO Energy hereby opts out of the releases contained in Article VIII of the Joint Plan and expressly objects to (i) the

inclusion of the Apache PSA Parties among the "Released Parties," and (ii) the inclusion of XTO Energy as a "Releasing Party" under the provisions contained in Article VIII of the Joint Plan.

## VI. Reservation of Rights

45.     This Objection is submitted without prejudice to, and with a full express reservation of, the rights of XTO Energy to supplement and amend this Objection and to introduce evidence at any hearing relating to this Objection, and to further object to the Joint Plan on any and all grounds.  Moreover, XTO Energy reserves its right to invoke each issue, fact, legal basis, and matter identified in the Objection as a basis for denying confirmation of the Joint Plan pursuant to any applicable provision of the Bankruptcy Code, regardless of the particular subsection of this Objection in which the issue is raised.

DATED:  January 12, 2021                    Respectfully Submitted,

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Lynda L. Lankford
State Bar No. 11935020
FORSHEY & PROSTOK LLP
777 Main St., Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile:  (817) 877-4161
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
llankford@forsheyprostok.com

ATTORNEYS FOR XTO OFFSHORE, INC., HHE
ENERGY COMPANY, AND XH LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing objection has been served upon all parties receiving electronic notice via the Court's CM/ECF system on January 12, 2021.

/s/ J. Robert Forshey
J. Robert Forshey

L:\BFORSHEY\XTO - Fieldwood Energy (CrR) #6145\Pleadings\XTO Objection to Plan 1.12.2021.docx

# Exhibit A

# PURCHASE AND SALE AGREEMENT

## BETWEEN

## XTO OFFSHORE INC.,

## HHE ENERGY COMPANY,

## XH, LLC,

## AND

## DYNAMIC OFFSHORE RESOURCES, LLC

## EFFECTIVE TIME:

## AUGUST 1, 2011 AT 7:00AM CDT

# TABLE OF CONTENTS

Page

ARTICLE 1. DEFINITIONS .................................................................................... 2
    1.01.   Ad Valorem Taxes ........................................................................... 2
    1.02.   Additional Instruments .................................................................... 2
    1.03.   Affiliate ............................................................................................ 2
    1.04.   Allocation ......................................................................................... 2
    1.05.   Associated Parties ........................................................................... 2
    1.06.   Base Purchase Price ....................................................................... 2
    1.07.   Business Day .................................................................................... 2
    1.08.   Claim or Claims .............................................................................. 2
    1.09.   Closing ............................................................................................. 3
    1.10.   Closing Date .................................................................................... 3
    1.11.   Closing Settlement Statement ......................................................... 3
    1.12.   Code ................................................................................................. 3
    1.13.   Condition ......................................................................................... 3
    1.14.   Effective Time ................................................................................. 3
    1.15.   Environmental Laws ....................................................................... 3
    1.16.   Execution Date ................................................................................ 3
    1.17.   XTO Energy-operated .................................................................... 3
    1.18.   Final Settlement Statement ............................................................. 3
    1.19.   Interest or Interests ......................................................................... 3
    1.20.   Liability or Liabilities .................................................................... 5
    1.21.   Material Difference ......................................................................... 5
    1.22.   NORM .............................................................................................. 5
    1.23.   Occurrence ....................................................................................... 5
    1.24.   Oil .................................................................................................... 5
    1.25.   Operator ........................................................................................... 5
    1.26.   Performance Deposit ....................................................................... 5
    1.27.   Person .............................................................................................. 6
    1.28.   Property or Properties ..................................................................... 6
    1.29.   Property Sales Accounting Agreement ........................................... 6
    1.30.   Intentionally Left Blank .................................................................. 6
    1.31.   Related Agreements ........................................................................ 6
    1.32.   Strict Liability ................................................................................. 6
    1.33.   Title Defect ..................................................................................... 6
    1.34.   Well or Wells ................................................................................... 6
ARTICLE 2. PURCHASE AND SALE ................................................................. 6
ARTICLE 3. PURCHASE PRICE ........................................................................ 6
    3.01.   Base Purchase Price ....................................................................... 6
    3.02.   Additional Consideration ................................................................
    3.03.   Performance Deposit and Payment ................................................ 6
    3.04.   Allocation of Base Purchase Price ................................................. 7
ARTICLE 4. RESERVED OVERRIDING ROYALTY ...................................... 7

**ARTICLE 5. BUYER'S REVIEW** ................................................................................................ **9**

   5.01.   Buyer's Review before Signing this Agreement .......................................... 9
   5.02.   Access to XTO Energy-Operated Interests................................................ 10
   5.03.   Environmental Assessment....................................................................... 10
   5.04.   Access to Interests Operated by Others .................................................. 11
   5.05.   Material, Facilities, Platforms, and Equipment ...................................... 11
   5.06.   No Warranty of Accuracy; Disclaimer .................................................... 11
   5.07.   Buyer's Confidentiality Obligations ........................................................ 11

**ARTICLE 6. TITLE AND TITLE DEFECTS** ......................................................................... **12**

   6.01.   Title Defect .............................................................................................. 12
   6.02.   Adjustments to Allocations....................................................................... 13
   6.03.   Description and Other Errors................................................................... 14
   6.04.   Restrictions on Use .................................................................................. 15
   6.05.   Engineering Controls ............................................................................... 16
   6.06.   Covenants Running with the Land............................................................ 16

**ARTICLE 7. PRE-CLOSING OBLIGATIONS** ....................................................................... **16**

   7.01.   Preferential Rights. .................................................................................. 16
   7.02.   Related Agreements .................................................................................. 17
   7.03.   Third Party Notifications and Approvals ................................................. 17
   7.04.   Change of Operator.................................................................................. 18
   7.05.   INTENTIONALLY OMITTED ................................................................. 18

**ARTICLE 8. CLOSING** .............................................................................................................. **18**

   8.01.   Closing Date ............................................................................................ 18
   8.02.   Buyer's Request to Delay Closing............................................................ 18
   8.03.   XTO Energy's Right to Delay Closing...................................................... 18
   8.04.   Closing Obligations.................................................................................. 19
   8.05.   Offset of Amounts Owed to XTO Energy and Affiliates ........................... 24
   8.06.   Condition Precedent................................................................................. 24
   8.07.   Buyer's Representation by Closing .......................................................... 24
   8.08.   Insurance ................................................................................................. 24
   8.09.   Right to Terminate ................................................................................... 25

**ARTICLE 9. POST-CLOSING OBLIGATIONS** ..................................................................... **25**

   9.01.   Filing and Recording .............................................................................. 25
   9.02.   Copies ...................................................................................................... 25
   9.03.   Further Assurances .................................................................................. 26
   9.04.   Post-Closing Third-Party Consents ......................................................... 26
   9.05.   Reassignment ........................................................................................... 26
   9.06.   Buyer's Compliance ................................................................................. 26
   9.07.   Property Sales Accounting Agreement..................................................... 26
   9.08.   Plugging and Abandoning Wells; Remediation....................................... 27
   9.09.   Surrender or Abandonment of Interests .................................................. 27

**ARTICLE 10. TAXES** ................................................................................................................. **27**

   10.01.  Ad Valorem Taxes .................................................................................... 27
   10.02.  Production Taxes ...................................................................................... 28

10.03. Other Taxes .................................................................................................28
10.04. Tax-Deferred Exchange .................................................................................28

**ARTICLE 11. OIL IN STORAGE, PROCEEDS, COSTS, EXPENSES, CLAIMS, AND
DISBURSEMENTS .........................................................................................................28**
11.01. Oil in Storage. ...............................................................................................28
11.02. Proceeds, Costs, and Expenses .....................................................................30
11.03. Notice to Remitters of Proceeds ...................................................................30
11.04. Reservation of Claims ...................................................................................31

**ARTICLE 12. XTO ENERGY-OPERATED INTERESTS ...........................................31**
12.01. Operation by XTO Energy .............................................................................31
12.02. Charges Paid by Buyer ..................................................................................31
12.03. Risk of Loss ...................................................................................................31
12.04. Selection of Operator .....................................................................................32
12.05. Removal of Signs ...........................................................................................33

**ARTICLE 13. INTERESTS OPERATED BY OTHERS ...............................................33**
13.01. Charges Paid by Buyer ..................................................................................33
13.02. Risk of Loss ...................................................................................................33

**ARTICLE 14. PREFERENTIAL RIGHT TO PURCHASE OIL...................................34**

**ARTICLE 15. INTENTIONALLY OMITTED ..............................................................35**

**ARTICLE 16. BUYER'S RELEASE, DISCHARGE, AND COVENANT NOT TO SUE
AND BUYER'S OBLIGATIONS TO INDEMNIFY, DEFEND, AND HOLD HARMLESS ..35**
16.01. Buyer's Release and Discharge of XTO Energy and its Associated Parties ...............35
16.02. Buyer's Covenant Not to Sue XTO Energy or its Associated Parties ..........................35
16.03. Buyer's Obligations to Indemnify, Defend, and Hold XTO Energy and its
        Associated Parties Harmless ..........................................................................35
16.04. Buyer's Obligations. .....................................................................................36
16.05. Buyer's Duty to Defend .................................................................................37
16.06. Buyer's Waiver of Consumer Rights Under the Texas Deceptive Trade Practices
        Consumer Protection Act and Other Consumer Protection Laws ..................38
16.07. Retroactive Effect .........................................................................................38
16.08. Inducement to XTO Energy ...........................................................................38

**ARTICLE 17. Alternate Dispute Resolution and Arbitration...................................38**
17.01. General ............................................................................................................38
17.02. Negotiations ...................................................................................................39
17.03. Arbitration ......................................................................................................39
17.04. Notice ..............................................................................................................39

**ARTICLE 18. ENVIRONMENTAL MATTERS ...........................................................40**
18.01. Buyer's Acknowledgment Concerning Possible Contamination of the Interests and
        Property ...........................................................................................................40
18.02. Adverse Environmental Conditions ...............................................................40
18.03. Remediation ...................................................................................................41
18.04. Disposal of Materials, Substances, and Wastes; Compliance with Law ......43

**ARTICLE 19. BUYER'S REPRESENTATIONS .........................................................44**

19.01. Representations Not Exclusive ..................................................................44
19.02. Securities Laws. .................................................................................44
19.03. Basis of Buyer's Decision.......................................................................44
19.04. Material Factor..................................................................................44
**ARTICLE 20. GAS IMBALANCES** ................................................................**45**
20.01. XTO Energy's and Buyer's Respective Obligations .....................................45
20.02. Settlement. .......................................................................................45
**ARTICLE 21. FINAL SETTLEMENT STATEMENT** ................................................**46**
**ARTICLE 22. BROKER'S AND FINDER'S FEES** ..................................................**46**
**ARTICLE 23. COMMUNICATIONS** ................................................................**46**
**ARTICLE 24. BUYER'S DEFAULT**....................................................................**47**
**ARTICLE 25. HART-SCOTT-RODINO ANTITRUST IMPROVEMENTS ACT OF 1976** ..**47**
**ARTICLE 26. XTO ENERGY'S DISCLAIMER OF WARRANTIES AND
REPRESENTATIONS** ...................................................................................**48**
**ARTICLE 27. MISCELLANEOUS** ....................................................................**48**
27.01. No Joint and Several Obligations ............................................................48
27.02. Entire Agreement...............................................................................48
27.03. Successors and Assigns; Amendment; Survival.............................................48
27.04. Choice of Law...................................................................................49
27.05. Assignment .......................................................................................49
27.06. No Admissions...................................................................................49
27.07. No Third-Party Beneficiaries.................................................................49
27.08. Public Communications........................................................................49
27.09. Audit Clause .....................................................................................50
27.10. Headings and Titles ............................................................................50
27.11. Exhibits ...........................................................................................50
27.12. Includes...........................................................................................50
27.13. Severability ......................................................................................50
27.14. Counterparts.....................................................................................50
27.15. Conflicts..........................................................................................51
27.16. Not to Be Construed against the Drafter....................................................51
27.17. No Waiver........................................................................................51
27.18. Conspicuousness.................................................................................51
27.19  Notice of Litigation.............................................................................54
27.20  Authority For Expenditures ..................................................................51
27.21  Execution by the Parties ......................................................................51
**EXHIBIT A.  DESCRIPTION OF THE INTERESTS** ................................................**A-1**
**EXHIBIT A-1.  CONTRACTS** ........................................................................**A-1-1**
**EXHIBIT A-2.  DESCRIPTION OF WORKING AND NET REVENUE INTERESTS** .........**A-2-1**
**EXHIBIT B.  EASEMENTS, PERMITS, ETC.**..........................................................**B-1**
**EXHIBIT B-1.  RIGHTS-OF-WAY** ..................................................................**B-1-1**
**EXHIBIT B-2.  DESCRIPTION OF PIPELINES** ....................................................**B-2-1**
**EXHIBIT B-3.  DESCRIPTION OF PLATFORMS** ..................................................**B-3-1**

**EXHIBIT C.  FORM OF ASSIGNMENT AND BILL OF SALE**.................................................**C-1**

**EXHIBIT D.  PROPERTY SALES ACCOUNTING AGREEMENT**.......................................**D-1**

**EXHIBIT E.  GAS-PRODUCTION-IMBALANCE ACCOUNTS**...........................................**E-1**

**EXHIBIT F.  ENVIRONMENTAL ASSESSMENT AND TESTING CONFIDENTIALITY, RELEASE AND INDEMNIFICATION AGREEMENT**.....................**F-1**

**EXHIBIT G.  INTENTIONALLY LEFT BLANK**.................................................................**G-1**

**EXHIBIT H.  GEOLOGICAL REQUIREMENTS**.................................................................**H-1**

**EXHIBIT I.  TRANSITION SERVICES AGREEMENT** .......................................................**I-1**

**EXHIBIT J.  PENDING LITIGATION** ..............................................................................**J-1**

**EXHIBIT K.  PERFORMANCE BOND** .............................................................................**K-1**

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement ("Agreement") is executed between XTO Offshore Inc. and HHE Energy Company, each a Delaware corporation, and XH, LLC, a Delaware limited liability company, all with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 ("XTO Energy"), as seller(s), and Dynamic Offshore Resources, LLC, a Delaware limited liability company with an address of 1301 McKinney, Suite 900, Houston, Texas 77010 ("Buyer"), as buyer, (collectively, the "Parties") as of the Execution Date. Sellers are hereinafter sometimes referred to as "XTO Energy" for convenience and simplicity; the abbreviation is not intended to override the corporate separateness of these separate legal entities.

Buyer desires to purchase certain Interests (as defined hereafter) from XTO Energy, and XTO Energy desires to sell such Interests to Buyer, subject to the terms and conditions of this Agreement. It is the Parties' intent that Buyer will assume the responsibility and all liability for all matters relating to the Interests assigned, whether related to events occurring before, on or after closing this transaction, except to the limited extent provided in this Agreement.

In consideration of their mutual promises under this Agreement, the benefits to be derived by each Party, and other good and valuable consideration, Buyer and XTO Energy agree as follows:

## ARTICLE 1. DEFINITIONS

The following terms, when used in this Agreement, will have the following definitions:

1.01.   Ad Valorem Taxes.  Defined in Section 10.01.

1.02.   Additional Instruments.  The instruments executed by Buyer before Closing and delivered to XTO Energy in connection with this transaction, including Buyer's investigation of and bid for the Interests.

1.03.   Affiliate.  In relation to a Person, any Person controlled by, controlling or under common control with, such Person.

1.04.   Allocation.  The amount allocated by Buyer to each individual part of the Interests.

1.05.   Associated Parties.  Successors, assigns, directors, officers, employees, agents, contractors, subcontractors, and Affiliates.

1.06.   Base Purchase Price.  The amount set forth in Section 3.01.

1.07.   Business Day.  Any day that the headquarters offices of XTO Energy, in Fort Worth, Texas, are scheduled to be and are open for business.

1.08.   Claim or Claims.  Collectively, claims, demands, causes of action, and lawsuits asserted or filed by any Person; a local, state, or federal governmental entity; a Person holding

2

rights under any Related Agreement; an Associated Party of Buyer or XTO Energy; or a third party.

1.09.   Closing.  The delivery of the conveyancing instruments and funds by the Parties to close the purchase and sale of the Interests.

1.10.   Closing Date.  The date on which Closing is scheduled to and does occur.

1.11.   Closing Settlement Statement.  Defined in Section 8.04(c).

1.12.   Code.  The Internal Revenue Code of 1986, as amended.

1.13.   Condition.  Defined in Section 18.02.

1.14.   Effective Time.   7 a.m. local time where the Interests are located, on August 1, 2011.

1.15.   Environmental Laws.  Applicable federal, state, and local laws, including statutes, regulations, orders and ordinances, previously or currently enacted or enacted in the future, and common law, relating to protection of public health, welfare, and the environment, including those laws relating to storage, handling, and use of chemicals and other hazardous materials; those relating to the generation, processing, treatment, storage, transport, disposal, cleanup, remediation, or other management of waste materials or hazardous substances of any kind; and those relating to the protection of environmentally sensitive or protected areas.  "Environmental Laws" includes the Comprehensive Environmental Response, Compensation and Liability Act of 1980, the Resource Conservation and Recovery Act of 1976, the Clean Water Act, the Safe Drinking Water Act, the Hazardous Materials Transportation Act, the Toxic Substance Control Act, and the Clean Air Act, as each is amended from time to time.

1.16.   Execution Date.   The date on which the last of the Parties executes this Agreement.

1.17.   XTO Energy-operated.   The interests and facilities of which XTO Energy is Operator.

1.18.   Final Settlement Statement.  Defined in Article 21.

1.19.   Interest or Interests.  XTO Energy's interest in the oil and gas leasehold estates or other interests set forth on Exhibit A and Exhibit A-1, together with XTO Energy's interest in the following:

> (a)     each Well located on the leases, units and land described on Exhibit A and Exhibit A-1, including, without limitation, the wells described on Exhibit A-2, which includes  wells drilled from the leases conveyed pursuant to this Agreement that cross or bottomhole on leases not conveyed under this Agreement;

(b)    the easements, permits, licenses, surface and subsurface leases, rights-of-way, servitudes, and other surface and subsurface rights affecting the land and leases described on Exhibit A and Exhibit A-1, including those set forth on Exhibit B, Exhibit B-1 and Exhibit B-2;

(c)    material, equipment, facilities, and platforms, including but not limited to the platforms set forth on Exhibit B-3, in and on the land and used solely in connection with the use or operation of the leasehold estates and other interests described on Exhibit A and Exhibit A-1 for oil or gas purposes;

(d)    the facilities and pipelines located pursuant to the rights described in (b) above and used solely to market and/or process the production from the Interests; and

(e)    contracts to which the Interests are subject, including but not limited to agreements for sale or purchase of oil, gas, and other hydrocarbons, processing agreements, division orders, unit agreements, and operating agreements, including those set forth on Exhibit A-1.

Any references to XTO Energy Accounting Codes are for XTO Energy use only and are not a part of the description of the Interests.

The following are specifically excluded from the Interests:

(f)    reservations, exceptions and exclusions listed in Exhibits A and B;

(g)    pipelines, fixtures, equipment, and interests owned by third parties such as lessors, purchasers, or transporters of Oil or gas;

(h)    computer equipment (including Rosemont transmitters), telecommunications equipment, vehicles, boats, tools, pulling machines, and other equipment and material temporarily located on the Property or expressly excluded from the sale;

(i)    items specifically excluded in written information or correspondence provided to Buyer before the Execution Date;

(j)    any gas processing plant not listed on Exhibit A and Exhibit A-1;

(k)    personal property, fixtures, equipment, pipelines, facilities, and buildings located on the Property, but currently in use in connection with the ownership or operation of other property not included in the Interests;

(l)    Unless otherwise described on Exhibit A, if XTO Energy is a party to a joint operating agreement that affects an Interest, this Agreement is limited as to that Interest to the depths subject to the joint operating agreement (e.g., total depth, total depth plus 100 feet, base of formation

penetrated by initial test well), but excludes depths previously conveyed and all depths not subject to a joint operating agreement; and

(m) If XTO Energy owns unleased mineral interests purportedly within the Interests, those mineral interests are not included in the term "Interests" and will not be conveyed to Buyer.

(n) XTO Energy and its Affiliates reserve and exclude from this Agreement all rights under that certain Lease Purchase Agreement dated effective January 22, 2002 by and between EEX Corporation ("EEX") and Aviara Energy Corporation ("Aviara"), as amended April 1, 2005, by and between Newfield Exploration Gulf Coast, Inc. and Hunt Petroleum (AEC), Inc., as such agreements pertain to all depths from 17,000 feet down to 100,000 feet subsea and expressly reserve and exclude from this Agreement the five percent of eight-eights (5% of 8/8ths) overriding royalty interest reserved by Aviara in that certain Assignment of Operating Rights dated effective January 22, 2002 by and between Aviara and EEX.

(o) Responsibility and liability for the proper payment of royalties to any governmental entity with respect to production attributable to the Interests prior to the Effective Time in the event prior payments to such governmental entity were improperly calculated.

1.20. <u>Liability</u> or <u>Liabilities</u>. Collectively, all damages of every nature, including, without limitation, consequential and punitive damages and damages for or related to personal injury, death, or damage to personal or real property (both surface and subsurface) and costs for remediation, restoration, or clean up of contamination, whether the injury, death, or damage occurred or occurs on or off the Property by migration, disposal, or otherwise; losses; fines; penalties, expenses; costs to remove or modify facilities on or under the Property; plugging liabilities for all Wells; attorneys' fees; court and other costs incurred in defending a Claim; liens; and judgments; in each instance, whether these damages and other costs are foreseeable or unforeseeable.

1.21. <u>Material Difference</u>. Defined in Section 20.02.

1.22. <u>NORM</u>. Naturally occurring radioactive material.

1.23. <u>Occurrence</u>. Defined in Section 18.03(g).

1.24. <u>Oil</u>. Crude oil, distillate, drip gasoline, condensate, and other liquid hydrocarbons.

1.25. <u>Operator</u>. The Person recognized as operator of an Interest by the applicable regulatory agency.

1.26. <u>Performance Deposit</u>. Defined in Section 3.03.

1.27. <u>Person.</u> Any individual, firm, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization, government or agency or subdivision thereof, or any other entity.

1.28. <u>Property</u> or <u>Properties</u>. The real property in which and on which the Interests exist or are located, whether in whole or in part.

1.29. <u>Property Sales Accounting Agreement</u>. An agreement substantially in the form of Exhibit D.

1.30. <u>Intentionally Left Blank</u>.

1.31. <u>Related Agreements</u>. Defined in Section 7.02.

1.32. <u>Strict Liability</u>. Includes strict statutory liability and strict products liability.

1.33. <u>Title Defect</u>. Defined in Section 6.01.

1.34. <u>Well</u> or <u>Wells</u>. All wellbores, both abandoned and unabandoned, including oil wells, gas wells, injection wells, disposal wells, and water wells.

## ARTICLE 2. PURCHASE AND SALE

Pursuant to Buyer's offer, XTO Energy agrees to sell the Interests to Buyer, and Buyer agrees to buy the Interests from XTO Energy, for the consideration recited in and subject to the terms of this Agreement.

## ARTICLE 3. PURCHASE PRICE

3.01. <u>Base Purchase Price</u>. The Base Purchase Price is $182,500,000.00, subject to adjustment only as provided in this Agreement.

3.02. <u>Additional Considerations.</u> As additional consideration to this Agreement:

    (a)    XTO Energy reserves the Overriding Royalty Interest as defined and further described in Article 4 herein; and

    (b)    Buyer agrees to provide the information described on the attached Exhibit H for any New Wells (as defined in Article 4).

3.03. <u>Performance Deposit and Payment</u>. As evidence of good faith, Buyer has deposited with XTO Energy a performance deposit of $18,250,000.00 (the "Performance Deposit"). The Performance Deposit will be credited to the Base Purchase Price at Closing, will not bear interest, and is not refundable except as provided in this Agreement. If Closing does not occur as to any Interest, and this Agreement provides that the Performance Deposit allocable on a pro rata basis to that Interest is to be refunded for any reason, XTO Energy will deduct any amounts due to it under this Agreement and remit the remainder of the Performance Deposit to Buyer, without interest. The Performance Deposit is an earnest money deposit or liquidated

damages, and forfeiture of the Performance Deposit as provided in this Agreement will be in lieu of any other rights and remedies XTO Energy may have under law or in equity, if Closing does not occur due to Buyer's failure to perform as provided in this Agreement.

3.04.  Allocation of Base Purchase Price.  XTO Energy has delivered to Buyer an allocation form, which Buyer executed and returned to XTO Energy prior to the execution of this Agreement, reflecting an Allocation of the Base Purchase Price to each individual part of the Interests listed on the form (including an Allocation for non-investment account balances such as gas-production-imbalance accounts and, as required for compliance with applicable law, for equipment or other items).  Buyer will make reasonable Allocations, in good faith, and XTO Energy may rely on the Allocations for all purposes.  The Allocations will be used (a) to notify holders of preferential rights of Buyer's offer; (b) to collect taxes, to the extent required by law and as provided in Article 10; (c) as a basis for adjustments to the Base Purchase Price; and (d) as otherwise provided in this Agreement.  XTO Energy, solely at its discretion, may rely on these allocations and reserves the right to review the Allocation.

## ARTICLE 4.  RESERVED OVERRIDING ROYALTY

4.01.  Reserved Overriding Royalty.  XTO Energy shall reserve from the leasehold interest applicable to each of the oil and gas leases described on Exhibit A (collectively, the "Leases", individually a "Lease"), an overriding royalty interest equal to five percent of eight-eighths (5% of 8/8ths) as to production from any New Wells, as defined hereafter ("Overriding Royalty Interest").  "New Wells", for the purposes of this Article 4, is defined as any wells drilled on the Leases from and after the Closing Date, together with any sidetrack or deepening after the Closing Date of an existing well on the Leases, to the extent and only to the extent that said sidetrack bottom hole is located 1,000 feet or greater from the bottom hole location of such existing well; provided, however, such 1,000 foot restriction does not apply to the sidetracks identified in that certain Letter between XTO Energy and Buyer, dated July 29, 2011.  New Wells shall not include any recompletions, workovers, or mechanical bypasses of an existing well.  The Overriding Royalty Interest shall be paid and/or delivered by Buyer to XTO Energy in accordance with the following terms and conditions:

> (a)     On oil, delivery of such oil shall be made free of all costs and expenses in developing and operating the Interests, free of all costs of production and unencumbered in any way to XTO Energy's credit into the pipelines or tanks to which the applicable well or wells may be connected, or otherwise as XTO Energy may from time to time direct.  Should XTO Energy elect not to take its overriding royalty on oil in kind, then XTO Energy's part of such oil shall be paid based upon the same market value as received by Buyer with respect to its Interests pursuant to an arm's length contract with a third party purchaser of such oil at the applicable well or wells, free of all costs and expenses in of developing and operating the Interests, free of all costs of production and unencumbered in any way.

> (b)     On all gas, including casinghead gas or other gaseous substances and liquid constituents of said gas, produced from and sold (on or off the Interests) or used off the Interests, or for the extraction of gasoline or other

products therefrom, the overriding royalty shall be based upon the same market value as received by Buyer with respect to its Interests pursuant to an arm's length contract with a third party purchaser at the well or wells of gas so produced, sold or utilized, free of all costs of developing and operating the Interests, free of all costs of production.

Payment by Buyer of the Overriding Royalty Interest must be made from the Closing Date and at all times thereafter on the basis of one hundred percent (100%) of the New Well's production (proportionately reduced as hereafter provided), and such payment must be made regardless of (a) whether Buyer is or is not banking or storing gas, whether pursuant to the provisions of an agreement so permitting, or otherwise; (b) whether Buyer is or is not selling all or any part of its share of the total production; and (c) the identity of the purchaser or purchasers of such gas if Buyer should be selling all or any part of the total gas produced. The Overriding Royalty Interest shall be delivered to XTO Energy free of all cost and expense of developing and operating the Leases and free and clear of all taxes except gross production, severance taxes, and ad valorem taxes applicable thereto; provided that, the Overriding Royalty Interest will be subject to and bear a proportionate share of all reasonable costs and expenses of a non-affiliated third party incurred for the transportation, compression, dehydration and treating of the said gas and condensate in the preparation for marketing of such production. Such payments shall be made on or before the sixtieth (60th) day following the month of the production. If payment is not made within the time prescribed, the unpaid amount will bear interest at the rate of one percent (1%) for each month or fraction of a month, by which payment is delayed, or the maximum lawful rate, whichever is less. Buyer agrees to send all division orders covering the Overriding Royalty Interest retained to XTO Energy at the address shown in Article 23 of the Purchase and Sale Agreement.

If the Leases cover less than a full interest in the land covered thereby or if the interest assigned hereunder in said Leases is less than a full interest, then the Overriding Royalty Interest herein reserved shall be reduced in the proportion that the interest assigned to Buyer herein bears to the full interest in the land covered or bears to the full interest in the Leases assigned hereunder; provided, however, that the overriding royalties herein reserved are exclusive of and in addition to any royalties, overriding royalties or payments out of production affecting the Leases as of the Effective Time. It is expressly agreed that operations, if any, on the Leases and the extension and duration thereof, as well as the preservation of the Leases by rental payments or otherwise, shall be solely at the will and discretion of Buyer or any successor owner of the working interest in the Leases. The Overriding Royalty Interest hereby reserved is subject to the rights conferred on the lessees (now Buyer) by said Leases to pool or unitize the lands covered thereby; and neither the joinder nor consent by XTO Energy shall be required in connection with any such pooling or unitization. Where oil and/or gas is produced from any unit so formed, XTO Energy shall receive on production from such unit only such portion of the overriding royalty stipulated herein, as the amount of surface acreage of the land affected by such overriding royalty and placed in said unit bears to the total surface acreage included in the unit, unless some other formula for appointment of production is adopted for the unit and in such case the formula shall be used.

XTO Energy upon notice in writing to Buyer, shall have the right to audit Buyer's accounts and records relating to the Overriding Royalty Interest reserved herein and any other

records related to the determination of the amounts due XTO Energy for any calendar year within the twenty-four (24) month period following the end of such calendar year.

The Overriding Royalty Interest is expressly subject to the terms and provisions of any of the Related Agreements, to the extent and only to the extent that such terms and provisions contractually apply to and prohibit the establishment of an overriding royalty interest affecting any of the Leases. If pursuant to the terms of any Related Agreement all or a portion of Buyer's interest in a Lease, or all or a portion of its interest in the production therefrom, is forfeited or assigned to one or more other working interest owners, either permanently or for a stipulated period, because Buyer fails to participate in any operation or operations, then to the extent that such forfeited or assigned interest is subject to and burdened by the Overriding Royalty Interest, the working interest so assigned or forfeited by Buyer shall be free and clear of such Overriding Royalty Interest for the period of such forfeiture or assignment of overriding royalty interests. The Overriding Royalty Interest will become effective again when the interest is reassigned or reverts back to Buyer, and Buyer shall pay such Overriding Royalty Interest as provided in this Section 4.01. Further, to the extent any Related Agreement establishes security rights in favor of the parties thereto, the Overriding Royalty Interest conveyed herein shall be subordinated to such security rights.

It is understood and agreed that the Overriding Royalty Interests reserved herein, will be a permanent burden on the Leases subject to the provisions of this Section 4.01, and will continue in effect as to each Lease for so long as each Lease remains in effect. In addition in the event Buyer secures a renewal or extension for any such Leases, covering all or any part of the land previously covered thereby, then the interests reserved herein will apply to such renewed or extended Lease. A "renewal" or "extension" of a Lease as those terms are used therein shall mean any Lease or Leases covering all or a part of the land covered by the Leases that is executed by Buyer within twelve (12) months after termination of any Lease, or the next ensuing Federal or state lease sale pertaining to all or any part of the land previously covered by a Lease, whichever may come first.

Notwithstanding anything to the contrary set forth in this Agreement, the Overriding Royalty Interest shall not apply to any production attributable to Block 188, Ship Shoal Area, OCS Leasing Map, Louisiana Map No. 5, INSOFAR AND ONLY INSOFAR AS to those depths from 17,000 feet subsea down to 100,000 feet subsea, currently affected by that certain federal offshore lease bearing serial number OCS-G 22712, dated May 1, 2001, granted by the United States of America, as Lessor, in favor of Aviara Energy Corporation, as Lessee, that being the same interest referenced in Section 1.19(n).

## ARTICLE 5. BUYER'S REVIEW

5.01. <u>Buyer's Review before Signing this Agreement</u>. XTO Energy gathered data relating to the Interests and the Properties for Buyer's review before Buyer submitted a bid and signed this Agreement. Buyer must notify XTO Energy in writing if it wishes to review files or data in addition to those provided, but XTO Energy's obligation to provide additional files or data is limited to files and data that are reasonably available to it. **XTO ENERGY HAS NO OBLIGATION TO PROVIDE ACCESS TO, AND BUYER WAIVES ALL CLAIMS TO INSPECT, XTO ENERGY'S INTERPRETIVE, PREDICTIVE, CONFIDENTIAL, PRIVATE, PROPRIETARY, OR**

9

**PRIVILEGED INFORMATION (INCLUDING PERSONNEL RECORDS), OR INFORMATION WHOSE DISSEMINATION IS RESTRICTED BY AGREEMENTS BETWEEN XTO ENERGY AND THIRD PARTIES.** XTO Energy has no obligation to provide any information to Buyer that is available to the general public, whether in the public records or from a governmental entity or agency on request.

By entering into this Agreement, Buyer acknowledges and represents that it has reviewed the Interests and Property to its satisfaction to enable it to make its bid and execute this Agreement and that it may request adjustments to the Allocations and the Base Purchase Price after the Execution Date only for Title Defects, Conditions, and Material Differences, as provided in this Agreement. Buyer has undertaken all appropriate inquiry, to its satisfaction, and has made an informed decision to acquire the Interests on the basis of its own investigations and without reliance on statements or investigations by any other Person, including XTO Energy and its Associated Parties.

5.02.   <u>Access to XTO Energy-Operated Interests</u>. Buyer had the opportunity to inspect and inventory the XTO Energy-operated Interests and Property before signing this Agreement. On Buyer's request, XTO Energy will provide additional access to the XTO Energy-operated Interests and Property and associated facilities, at any reasonable time before Closing.

All visits to the premises and facilities by Buyer and on Buyer's behalf will be scheduled by mutual consent of the Parties, subject to Buyer's providing XTO Energy at least five (5) days written notice of the locations that it wishes to visit and the proposed times. XTO Energy may accompany Buyer and its Associated Parties during their site visits. Entry onto the XTO Energy-operated Interests, Property, and facilities will be subject to third-party restrictions, if any, and to XTO Energy's safety, industrial hygiene, and drug and alcohol requirements and at Buyer's sole risk and expense.

XTO Energy shall cooperate and grant to Buyer's independent accounting firm, Hein & Associates LLP, access to XTO Energy's financial and accounting information directly relating to the Interests as needed for the preparation of certain financial statements that may be required of Buyer pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC") including SEC Regulation S-X and Rule 3-05. Such access shall be limited to information from September 1, 2008 through August 31, 2011 that exists in XTO Energy's offices, as may reasonably be required to prepare audited financial statements reflecting gross revenues and direct lease operating expenses related to the Interests. Buyer will provide XTO Energy a description of the sample financial and accounting information necessary to conduct said review prior to Closing. XTO Energy will cooperate with Buyer's independent accounting firm to complete the actions contemplated in this paragraph by Closing, or as soon thereafter as is reasonably practical; however, the completion of these actions shall not delay Closing. It is understood that such review will only be required to be carried out one time, unless otherwise required under the security laws. Furthermore, unless otherwise agreed by XTO Energy, the accounting firm shall not disclose information to Buyer that is proprietary to XTO Energy or its Associated Parties, including gas and liquids sales prices.

5.03.   <u>Environmental Assessment</u>. Buyer and its Associated Parties may inspect the premises and conduct an environmental assessment of the Interests and Property, including investigations to identify wetlands and sensitive and protected habitats, but Buyer must execute

the form of environmental testing and confidentiality agreement attached as Exhibit F before performing an assessment. If Buyer undertakes an environmental assessment, both the Buyer's consultant (if consultants are employed) and the scope of the proposed assessment, including testing protocols, must be approved in writing by XTO Energy before the work may begin. If Buyer and XTO Energy cannot agree on Buyer's proposed environmental assessment plan, then XTO Energy may, at its sole option, withdraw from this Agreement any of the Interests that Buyer proposes to assess or all the Interests, and the Base Purchase Price will be adjusted by the Allocation for each withdrawn Interest. If XTO Energy withdraws all the Interests, this Agreement will terminate, and XTO Energy will refund the Performance Deposit to Buyer.

If Buyer takes samples from the Property, XTO Energy may require splitting of each sample. Buyer will deliver copies of all draft and final reports, results, data, and analyses of the site visits, inspections, and assessments to XTO Energy within five (5) days of Buyer's receipt of them, at Buyer's cost. XTO Energy will have no confidentiality obligation with regard to this information and may disclose it to third parties or use it for any purpose.

5.04. <u>Access to Interests Operated by Others</u>. On request, XTO Energy will assist Buyer by making initial contact with the Operators of the Interests that are operated by others, but Buyer will be responsible for contacting each Operator to arrange for review of the Interests. XTO Energy will provide Buyer with access to XTO Energy file information relating to the Interests operated by others, to the extent described in Section 5.01.

5.05. <u>Material, Facilities, Platforms, and Equipment</u>. By signing this Agreement, Buyer acknowledges that it has had the opportunity to inspect and inventory the material, facilities, platforms, and equipment and is satisfied with them. There will be no adjustment on the basis of material, facilities, platforms, and equipment, whether for XTO Energy-operated Interests or Interests operated by others. Material, facilities, platforms, and equipment observed during Buyer's inspection may be used or replaced before Closing as a result of normal and customary operations.

5.06. <u>No Warranty of Accuracy; Disclaimer</u>. **XTO ENERGY MAKES NO WARRANTY, AND EXPRESSLY DISCLAIMS ALL WARRANTIES, AS TO THE ACCURACY OR COMPLETENESS OF THE FILES AND OTHER INFORMATION THAT IT MAY PROVIDE TO BUYER OR THAT MAY BE PROVIDED BY OTHERS. If Buyer determines during its review that any XTO Energy files or data may be incomplete or inaccurate, it will either notify XTO Energy of its conclusions in writing not later than five (5) days before the Closing Date or be deemed to have waived complaints as to the incompleteness or inaccuracy of the files or data.**

5.07. <u>Buyer's Confidentiality Obligations</u>. Buyer will keep confidential all information concerning the Interests, except to the extent that information (a) was public knowledge when Buyer received the information; (b) becomes public knowledge without breach of this Agreement by Buyer; (c) was known to Buyer before receipt or discovery of the information in connection with its review of the Interests, from a source that was authorized to disclose the information to third parties; or (d) is required by applicable law or court order to be disclosed. If information is required to be disclosed by law or court order, Buyer will make every reasonable effort to give XTO Energy notice of the requirement as far in advance of the disclosure as possible. Buyer may not use the information for any purpose other than evaluation of the

Interests and may not divulge the information to any Person except those who need to know it in order to evaluate the Interests for Buyer under this Agreement. Buyer will enforce this confidentiality obligation as to all Persons with whom it shares the information and is liable to XTO Energy for a breach of this obligation by any Person to whom Buyer has disclosed the information. If this transaction does not close by the Closing Date, Buyer will return to XTO Energy all information concerning the Interests that it obtained from XTO Energy, destroy all of its work papers and analyses that incorporate the information, and be subject to these confidentiality obligations for five years after the Execution Date. Buyer's confidentiality obligation will not, however, survive Closing.

## ARTICLE 6. TITLE AND TITLE DEFECTS

6.01. <u>Title Defect</u>. "Title Defect" means any one of the following:

(a) XTO Energy's title at the Effective Time as to all or any part of the Interests is subject to an outstanding mortgage, deed of trust, lien, or other monetary encumbrance or adverse claim not listed or referenced on Exhibit A and Exhibit A-1 that would induce a purchaser to suspend payment of proceeds for the Interest or require the furnishing of security or indemnity. Evidence that XTO Energy receives its full share of proceeds from a purchaser or third-party Operator attributable to an Interest creates a rebuttable presumption that no Title Defect exists with respect to the Interest;

(b) XTO Energy's net revenue interest for an Interest at the Effective Time is less than that shown on Exhibit A-2, or XTO Energy's working interest for an Interest at the Effective Time is greater than shown on Exhibit A-2 without a corresponding increase in the net revenue interest for such Interest;

(c) XTO Energy's interest would be reduced if a third party were to exercise a reversionary, back-in, or other similar right not listed or referenced on Exhibit A-2; or

(d) XTO Energy is in material default under some material provision of a lease, farmout agreement, or other agreement, resulting in loss of all or any part of the Interests.

"Title Defect" does not include (a) a lien or encumbrance in the form of a judgment secured by a supersedeas bond or other security approved by the court issuing the order; or (b) the loss of lease acreage between the Effective Time or the Execution Date (whichever is earlier) and the Closing Date, because the lease term expires.

Buyer must notify XTO Energy in writing promptly if Buyer determines that XTO Energy's net revenue interest or working interest for an Interest is greater than that shown on Exhibit A-2.

6.02.  Adjustments to Allocations.

(a)  Buyer may request an adjustment to an Allocation at any time on or before
the 5th day before the Closing Date, if the adjustment is based on a Title
Defect.  XTO Energy may request an adjustment to the Base Purchase
Price based on an Allocation at any time before the Closing Date, if XTO
Energy's net revenue interest for the Interest is greater than that shown on
Exhibit A-2.  A notice requesting an adjustment must be timely and in
writing and include appropriate documentation to substantiate the
adjustment, or the claimant will be deemed to have waived its claim to
adjust the Base Purchase Price based on an Allocation for the matter stated
in the notice.

(b)  If either Party gives notice under the previous Section, the Parties will
meet and use their best efforts to agree on the validity of the claim and, if
applicable, the amount of the adjustment, using the following criteria:

(1)  If the claim is based on XTO Energy's owning a different net
revenue interest than that shown on Exhibit A-2, then the
adjustment will be the absolute value of the number determined by
the following formula:

Adjustment = A x (1-[B/C])

A  =  Allocation for the affected Interest

B  =  correct net revenue interest for the affected Interest

C  =  net revenue interest for the affected Interest as
shown on Exhibit A-2.

(2)  If the claim is based on an obligation or burden that is liquidated in
amount, then the adjustment will be the sum necessary to remove
the obligation or burden from the affected Interest.

(3)  If the claim is based on an obligation or burden that is not
liquidated, but can be estimated with reasonable certainty, the
adjustment will be the sum necessary to compensate Buyer on the
Closing Date for the adverse economic effect on the affected
Interest.

(c)  If the amount of the adjustment for each Title Defect cannot be determined
based on the above criteria, and if the Parties cannot otherwise agree on
the amount of an adjustment by the Closing Date, XTO Energy may, at its
sole option and upon written notice to Buyer, either:

(1)  terminate this Agreement and refund the Performance Deposit;

      (2)    remove the affected Interest from this Agreement and adjust the Base Purchase Price by the Allocation for that Interest;

      (3)    elect to cure the Title Defect pursuant to Section 6.02(e); or

      (4)    elect to resolve the dispute pursuant to the provisions of Article 17.

(d)    The Base Purchase Price will be adjusted only if the sum (i.e. offsetting of increases and decreases) of all adjustments under this Section 6.02 is greater than $250,000.00. If the sum of all adjustments would result in the Base Purchase Price being reduced by more than ten percent (10%), XTO Energy may, upon written notice to Buyer, either:

      (1)    terminate this Agreement and refund the Performance Deposit; or

      (2)    remove the affected Interest from the Agreement and adjust the Base Purchase Price by the Allocation for that Interest.

(e)    XTO Energy may, at its sole option, notify Buyer before the Closing Date that it elects to cure some or all of the Title Defects. No adjustment will be made at Closing for the Title Defects that XTO Energy elects to cure. If any Title Defect is not cured within ninety (90) days after Closing, an adjustment to the Base Purchase Price will be calculated and made under the criteria set forth in this Section 6.02, and subject to the limitations contained in Section 6.02(d).

## 6.03. <u>Description and Other Errors.</u>

(a)    If either Party determines, either before or within one (1) year after Closing that:

      (i)    certain Interests were erroneously included in or excluded from the Agreement or the conveyancing instruments; or

      (ii)    certain gas-production imbalance accounts were erroneously included in or erroneously excluded from this Agreement,

then XTO Energy and Buyer will meet and use their reasonable efforts to resolve the error. If necessary, the Parties will execute and record (if after Closing) appropriate correction instruments to correct the error.

(b)    If XTO Energy and Buyer cannot resolve an error with respect to such an error discovered before the Closing Date, then XTO Energy may, at its sole option, either:

      (i)    with Buyer's consent, terminate this Agreement and refund the Performance Deposit;

      (ii)     remove the affected Interest from this Agreement, if applicable, and adjust the Base Purchase Price by the Allocation for such Interest; or

      (iii)    elect to resolve the dispute pursuant to the provisions of Article 17.

   (c)     If XTO Energy and Buyer cannot resolve such an error with respect to an Interest assigned to Buyer and discovered within one (1) year after the Closing Date, then Buyer, upon written demand by XTO Energy at its sole option, will reassign all or any part of the Interests assigned to Buyer under this Agreement  in the same manner as provided in Section 9.05, and undertake all other acts reasonably required to return XTO Energy to its pre-Closing position as to the reassigned Interest, including revising regulatory filings.   XTO Energy will refund to Buyer the Allocation for each reassigned Interest, without interest, upon Buyer's performance of its obligations under this Section 6.03(c).

Notwithstanding the foregoing, the Parties will cooperate at all times after Closing to execute and record correction instruments to correct scrivener's errors in the preparation of Closing documents.

6.04.   <u>Restrictions on Use</u>.  Where any of the Interests include a fee simple interest in real property that has been used for oil, gas, or other mineral operations, including pipeline operations, the Buyer covenants that it will not use or develop the real property for the following uses, in whole or in part, and the Buyer acknowledges such uses are expressly prohibited and forbidden:

   (a)     any hotel use;

   (b)     any purpose that would constitute a "Permitted Use" under any of the residential zones, districts, or classifications set forth in any applicable municipal, county/parish or state zoning laws in effect at the Effective Time,

   (c)     any other residential use;

   (d)     any health care, clinic, hospital or other medical facility;

   (e)     any playground, recreational park, day nursery, day-care center, child care center, nursing home, house of worship, or school;

   (f)     any agricultural use;

   (g)     construction or installation of any basements; or

   (h)     any water wells for irrigation or drinking purposes.

6.05. <u>Engineering Controls.</u> The Buyer covenants that any development or redevelopment of the real property conveyed as Interests will, at the cost of the Buyer, adopt and use all engineering and related technical assistance reasonably available to enhance the environmental amenity associated with the real property. Buyer acknowledges that depending upon the nature of the Buyer's development that engineering controls that may need to be considered for use by the Buyer include: vapor barriers; vapor installation systems; sealed sumps and storm pond liners. Necessity of engineer controls shall be determined by a professional engineer licensed in the state with experience in the field.

6.06. <u>Covenants Running with the Land.</u> The covenants contained in provisions 6.04 and 6.05 of this Agreement shall be covenants running with the land, shall be recorded in the real property records, and shall be binding on Buyer and its successors and assigns.

## ARTICLE 7. PRE-CLOSING OBLIGATIONS

7.01. <u>Preferential Rights.</u>

(a) <u>Notice.</u> Promptly upon execution of this Agreement, XTO Energy will notify the preferential rights holders, if any, of applicable preferential rights to purchase the Interests. Prior to sending such notifications, an advance copy of the notice will be provided to Buyer.

(b) <u>Adjustment to Base Purchase Price.</u> If a third party gives notice of its intent to exercise a preferential right to purchase any of the Interests, such Interest will be removed from this transaction, subject to (c) below, and the Base Purchase Price will be adjusted by the Allocation for the preferential right property. If Buyer has allocated a positive dollar amount to the preferential right property, the Base Purchase Price will be reduced by the dollar amount of the positive Allocation. If Buyer has allocated a negative dollar amount to the preferential right property, the Base Purchase Price will be increased by the absolute value of the negative Allocation.

(c) <u>Third Party Failure to Purchase.</u> If a third party gives notice of its intent to exercise a preferential right to purchase any of the Interests, but does not close the purchase for any reason either before or within a reasonable time after Closing, Buyer will be obligated to acquire the preferential right property under the terms of this Agreement, for the positive dollar Allocation (or if the Allocation is a negative amount, XTO Energy will refund the absolute value of the negative amount to Buyer, without interest). Closing on the preferential right property will be scheduled to occur within forty-five (45) days after Buyer receives XTO Energy's notice that the third party has not closed. The effective time for the preferential right property will be the Effective Time under this Agreement.

(d)    <u>Waiver of Preferential Rights</u>. If a third party holding a preferential right to purchase any of the Interests has not waived such right prior to the Closing and the period to exercise such preferential right has not yet expired by the scheduled Closing Date, Closing on such preferential right property will postponed for a maximum period of five (5) days after the preferential right period has expired without being exercised and the Base Purchase Price for the unaffected Interests will be adjusted by the Allocation for such preferential right property in connection with the Closing with respect to the unaffected Interests. The Closing Date with respect to the unaffected Interests shall not be delayed.

7.02.    <u>Related Agreements</u>. Except as otherwise provided in this Agreement, the sale of the Interests will be subject to all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements concerning or pertaining to the Interests ("Related Agreements"), to the extent that they are binding on XTO Energy or its successors or assigns. Buyer will assume all of XTO Energy's obligations and liabilities under the Related Agreements as of the Effective Time, insofar as the obligations or liabilities concern or pertain to the Interests, and the Parties will execute all documents necessary for Buyer to assume the Related Agreements. Buyer's obligation applies to all Related Agreements, whether recorded or not. Based on XTO Energy's information and belief, after reasonable inquiry to the appropriate personnel, all material Related Agreements pertaining to the Interests are identified on Exhibit A, Exhibit A-1, Exhibit B, and/or Exhibit B-1.

7.03.    <u>Third Party Notifications and Approvals</u>. The sale of the Interests may require the approval or consent of lessors, joint interest owners, farmors, sublessors, assignors, grantors, parties to agreements, governmental bodies having jurisdiction, or other third parties. XTO Energy is responsible, at its sole cost, for obtaining approvals from all applicable third parties and will furnish Buyer with a list of required third-party consents, as well as proof of each consent, approval, or waiver obtained before the Closing Date, except with respect to approvals from governmental bodies that are customarily obtained post-Closing. As to all such governmental body approvals, evidence of receipt of same shall be provided by Buyer to XTO Energy promptly upon receipt thereof as provided in Section 9.04. XTO Energy will make reasonable efforts to obtain waivers of maintenance-of-uniform interest provisions, if any are necessary, from joint interest owners. Within five (5) days of its execution of this Agreement, XTO Energy will furnish Buyer with a listing, which based upon XTO Energy's information and belief, after reasonable inquiry to the appropriate personnel, will contain all such required third party approvals, except approvals from governmental bodies that are customarily obtained post-Closing.

If XTO Energy does not furnish Buyer with all third party approvals applicable to any Interest, then XTO Energy may, at its option, elect to:

(a)    delay Closing as to any or all of the Interests, with no charge to either Party for the delay;

(b)    with Buyer's consent, close without all third party approvals; or

(c)    with Buyer's consent, remove the affected Interest from this Agreement and adjust the Base Purchase Price by the Allocation for that Interest.

If XTO Energy elects to close without all third party approvals, XTO Energy may require Buyer to reassign the affected Interest to XTO Energy if the third party refuses to approve the assignment after Closing. The reassignment will be in the manner described in Section 9.05.

7.04.    <u>Change of Operator</u>. Unless otherwise provided by applicable law, regulation, or Related Agreement, Buyer, at its sole cost, must apply for and obtain any and all regulatory approvals and permits and satisfy requirements of financial security to operate the Interests either that it will operate or for which it intends to stand for election as Operator, and deliver copies or other evidence of compliance to XTO Energy before Closing.

7.05.    <u>INTENTIONALLY OMITTED</u>.

7.06.    <u>Outstanding Suspensions of Production (MP 112, MP 116)</u>. OCS-G 9707, covering Main Pass Block 112, and OCS-G 3419, covering Main Pass Block 116 (collectively, the "MP 112/116 Properties"), are each currently being maintained by a suspension of production ("SOP") approved by the Bureau of Ocean Management, Regulation and Enforcement ("BOEM") through August 31, 2011. If production attributable to the MP 112/116 Properties is not restored on or before the Closing Date, Closing with respect to the MP 112/116 Properties will be scheduled to occur within five (5) days after Buyer receives XTO Energy's notice that production attributable to the MP 112/116 Properties has been restored. To the extent necessary, XTO Energy will attempt to obtain from the BOEM extensions of the existing SOPs, or attempt to obtain new SOPs, with respect to the MP 112/116 Properties until production attributable to such Properties has been restored.

## ARTICLE 8. CLOSING

8.01.    <u>Closing Date</u>. The Closing Date will be on or before August 31, 2011, unless delayed as provided in this Agreement, at 800 Bell, Houston, Texas, or at another place that XTO Energy designates. If the Parties agree, Closing may be handled by exchange of documents (by mail or by courier). No price adjustment will be made if Closing is delayed.

8.02.    <u>Buyer's Request/Right to Delay Closing</u>. Buyer may request that Closing be delayed for up to thirty (30) days after the originally-scheduled Closing Date upon written notice to XTO Energy in order for the Parties to pursue necessary third party consents or waivers of preferential rights. Buyer may elect to delay Closing for up to five (5) days from the Closing Date, upon written notice to XTO Energy.

8.03.    <u>XTO Energy's Right to Delay Closing</u>. XTO Energy may, at its sole option and for any reason, delay Closing for up to thirty (30) days after the originally-scheduled Closing Date, upon written notice to Buyer.

8.04. <u>Closing Obligations</u>.

    (a)    <u>Certificates of Authority</u>. XTO Energy may require Buyer to deliver, at least five (5) days before the Closing Date, certificates in form and substance satisfactory to XTO Energy, effective as of the Closing Date and executed by Buyer's duly authorized officer, partner, or owner, as appropriate, to the effect that:

        (1)    Buyer has all requisite corporate, partnership, or other power and authority to purchase the Interests on the terms of this Agreement and to perform its other obligations under this Agreement and has fulfilled all corporate, partnership, or other prerequisites to closing this transaction; and

        (2)    each individual executing the closing documents has the authority to act on behalf of Buyer.

    (b)    <u>Change of Operatorship</u>. For XTO Energy-operated Interests, and except to the extent waived by XTO Energy, Buyer will deliver to XTO Energy on or before the Closing Date evidence of the following:

        (1)    that Buyer has complied with the requirements of all laws and regulations relating to the transfer of operatorship, including those regarding the assumption of responsibility for the plugging and abandoning of each Well that is included in the applicable Interests or located on the Property;

        (2)    that the appropriate bond, surety letter, letter of credit, or other financial security has been accepted by the relevant regulatory agency; and

        (3)    that Buyer has, to the extent possible under applicable regulations, obtained all necessary designation of operator forms required by a governmental entity (to the extent delivered by non-operator third parties to Buyer), permits or transfers of permits to operate the applicable Interests and Property.

    (c)    <u>Closing Settlement Statement</u>. XTO Energy will prepare a Closing Settlement Statement (the "Closing Settlement Statement") in accordance with the provisions of this Agreement, including items such as Base Purchase Price, adjustments to the Base Purchase Price (if any), Performance Deposit, revenue received, costs and expenses as provided in this Agreement, Ad Valorem Taxes, severance taxes, federal excise and energy taxes, gas imbalance adjustments, and copying and recording fees, to the extent this information is available at Closing. XTO Energy will submit the Closing Settlement Statement to Buyer, together with all available records or data supporting the calculation of amounts presented, no later than three (3) business days prior to the Closing Date. The

Closing Settlement Statement shall be based upon actual information available to XTO Energy at the time of preparation and upon XTO Energy's good faith estimates and assumptions. Prior to the Closing, Buyer shall review the Closing Settlement Statement and provide written notice to XTO Energy of any comments or objections in order that the Closing Settlement Statement can be modified, if necessary, prior to the Closing. If Buyer and XTO Energy agree on any changes to the Closing Settlement Statement, then the Closing Settlement Statement shall be adjusted accordingly. If the Buyer and XTO Energy do not agree on proposed changes to the Closing Settlement Statement, then Buyer will have funds available for Closing based on the information provided for in the original Closing Settlement Statement. XTO Energy will use estimates in the Closing Settlement Statement to the extent that estimates are necessary and may correct the estimates in the Final Settlement Statement.

(d)  <u>Closing Documents</u>. The Parties, as indicated, will execute the following instruments to close this transaction:

(1)  An instrument in the form of the Assignment and Bill of Sale attached as Exhibit C, modified to the extent necessary to conform to the terms of this Agreement. As reflected on Exhibit C, Buyer will execute a separate Assignment and Bill of Sale with each XTO Energy entity. The Assignment and Bill of Sale will be effective as of the Effective Time, be without warranty of any kind (e.g., title, fitness, condition), and restate the indemnities, releases, and waivers contained in this Agreement. Exhibit A-2 to this Agreement states XTO Energy's working and net revenue interests, to the best of XTO Energy's knowledge and belief. The Assignment and Bill of Sale will not, however, state or warrant the working or net revenue interests assigned to Buyer.

If XTO Energy will own an interest after Closing in any Interest or Property (excluding overriding royalties, but including deep rights, and facilities, equipment, or pipelines) or continue to own interests for which XTO Energy requires access across the Interests or Property in order to exercise its rights, then, in the Assignment and Bill of Sale, XTO Energy will reserve concurrent interests in the applicable easements, rights-of-way, contracts, and other rights relating to the retained or reserved interests. In the event XTO Energy retains an overriding royalty interest or other interest in production in the Interests, the Assignment and Bill of Sale shall also grant XTO Energy the right to audit Buyer's records relating to such retained interest and to transport, utilizing applicable easements, rights-of-way and pipelines comprising a portion of the Interests and paying its proportionate share of any applicable third party transportation fees, any production attributable to the

Overriding Royalty Interest that XTO Energy chooses to take-in-kind.

(2) Letter-in-lieu-of-transfer order (or other instrument) to give notice of this transaction to remitters of proceeds.

(3) The Property Sales Accounting Agreement, substantially in the form of Exhibit D attached hereto.

(4) Other documents reasonably required to close this transaction and implement the terms of this Agreement, including but not limited to deeds, bills of sale, and the like and instruments necessary under operating agreements, plans of unitization, laws, and regulations affecting the Interests to transfer the Interests and related obligations from XTO Energy to Buyer.

(5) Change-of-operator forms for each Well that Buyer intends to operate after Closing. If the Operator of a Well must be elected or designated after Closing, the applicable instruments will be executed after the election or designation, as applicable.

(6) The Closing Settlement Statement.

(7) An agreement in the form of the Transition Services Agreement attached as Exhibit I.

(8) Any documents and permits necessary or required by the Bureau of Ocean Energy Management, Regulation and Enforcement to convey the Interests and transfer operations to Buyer.

(9) The performance bond, pursuant to the terms set forth in Section 8.04(f).

(e) <u>Third-Party Consents</u>. At Closing, XTO Energy will deliver proof of required third-party consents and approvals obtained unless XTO Energy, with Buyer's consent, exercises its option to close without receipt of all third party consents and approvals, as provided in Section 7.03, in which case XTO Energy shall deliver to Buyer a notice reflecting which consents and/or approvals remain outstanding.

(f) <u>Financial Security</u>. As a condition of Closing, pursuant to Section 8.04(d)(9), Buyer shall deliver to XTO Energy a performance bond, in a form substantially similar to the form attached as Exhibit K, to guarantee Buyer's obligations under this Agreement, including its obligations to abandon, restore and remediate the Interests and Properties, providing for a penal sum in the amount of thirty-five million dollars ($35,000,000.00) issued by RLI Insurance Company, or by a mutually acceptable financial

21

institution, as surety, and providing for terms acceptable to such surety, XTO Energy and Buyer.

(1)    Within thirty (30) days prior to the following dates, January 1, 2015 ("1st Redetermination Period"), January 1, 2018 ("2nd Redetermination Period") and January 1, 2021 ("3rd Redetermination Period"), and every three (3) years thereafter (each a "Redetermination Period"), the Parties shall arrange for a mutually acceptable third party to determine the estimated costs of the total remaining obligations assumed by Buyer under Section 9.08 with respect to the Interests and Properties owned by Buyer. Within ninety (90) days following each such redetermination of the estimated costs, Buyer is required to have a fully executed bond in place issued by RLI Insurance Company, or by a mutually acceptable financial institution, as Surety, and providing terms substantially similar to the form attached as Exhibit K, except that said bond shall provide for a penal sum that is equal to at least: sixty percent (60%) as regards the 1st Redetermination Period, seventy percent (70%) as regards the 2nd Redetermination Period and eighty percent (80%) as regards to the 3rd Redetermination Period and every Redetermination Period thereafter, of the estimated costs of the total remaining obligations of Buyer with respect to the Interests and Properties owned by Buyer as so redetermined. If a new bond is not issued at such Redetermination Period, Buyer will confirm in writing to XTO Energy that the current performance bond is for a penal amount equal to or greater than the above requirements; it being understood that the financial security described in this section is not intended to cover new wells, pipelines and/or platforms or equipment installed on the Properties after the Effective Time. The penal sum of the performance bond may only be adjusted within a Redetermination Period, unless XTO Energy, at its sole option, extends said time period. Notwithstanding the provisions set forth above, if during any Redetermination Period it is determined that the estimated costs of the total remaining liabilities of Buyer is less than $3,000,000.00, then Buyer shall no longer be obligated to maintain the performance bond and the Parties shall execute such documentation as may be required to secure the release and termination of the performance bond.

(2)    Upon occurrence of any of the following, XTO Energy may draw on the performance bond, in whole or in part, without prior notice to Buyer:

(A)    XTO Energy is required in any manner to perform obligations under Section 9.08, pursuant to an order or

directive issued by a governmental body or regulatory agency; or

(B)    the insolvency of Buyer; or

(C)    Buyer passes a resolution, commences proceedings or has proceedings commenced against it (which proceedings are not stayed within twenty-one (21) days of service thereof on Buyer) in the nature of bankruptcy or reorganization resulting from insolvency or its liquidation or for the appointment of a receiver, administrator, trustee in bankruptcy or liquidator or its undertakings or assets; or

(D)    With respect to any draw that occurs under this Section, XTO Energy will provide Buyer with a courtesy copy of the notice within twenty-four (24) hours of the performance bond draw request.

(3)    In the event that XTO Energy draws on any performance bond pursuant to its rights to do so under any of Section 8.04(f)(2)(B) – (C), then to guarantee Buyer's P&A Obligations (as defined below) XTO Energy shall be entitled to devote the entirety of the funds from such draw down to obtaining solely for its own benefit its replacement financial security, of a value substantially equal to the aggregate amount of all such drawn down funds, in the form of a bond, insurance policy (which bond or insurance policy names XTO Energy as its sole beneficiary), escrow account, or other financial security acceptable to XTO Energy in its sole discretion, the proceeds of which shall only be used for P&A Obligations (as defined below) and costs incurred by XTO Energy in obtaining, maintaining and administering the replacement financial security, including attorneys' fees and related transaction and financial institution charges.

(4)    XTO Energy shall return to the issuing financial institution funds equal to any amounts which it may draw down in error.

(5)    For purposes of Section 8.04(f) and the performance bond, all of the obligations to abandon, restore and remediate the Interests and Property owned by Buyer, as contemplated by Section 9.08, are referred to collectively as the "P&A Obligations". For purposes of this Section 8.04(f), Section 9.08 and the performance bond, evidence that a P&A Obligation has been performed shall include executed forms or other written documentation as may be required by any governmental authority under applicable law to reflect completion of a P&A Obligation (including, without limitation, forms and documentation related to plugging and abandonment

activities, decommissioning activities, site clearance activities and pipeline abandonment or removal activities and completion of remedial activities) (collectively, the "P&A Documentation"). When Buyer presents to XTO Energy P&A Documentation evidencing that all of the P&A Obligations with respect to the Interests and Property owned by Buyer have been performed, XTO Energy shall release the performance bond on or before the date that is sixty (60) days from the day of receipt of such P&A Documentation.

(g)    <u>Payment to XTO Energy</u>. At Closing, Buyer will pay XTO Energy the net amount shown on the Closing Settlement Statement by electronic funds transfer. This amount is subject to further adjustment after Closing as provided in this Agreement. Notwithstanding any other provision of this Agreement, Buyer must make payment by the specific means stated, or XTO Energy may refuse to proceed with Closing until XTO Energy, in its sole discretion, is satisfied that it has received full payment. This right is in addition to all other rights and remedies XTO Energy may have under this Agreement, at law, or in equity.

(h)    <u>Delivery of Possession</u>. Subject to the terms of applicable joint operating agreements, if any, the Related Agreements, and this Agreement, XTO Energy will deliver possession of the Interests to Buyer as soon as practicable after the Closing Date.

8.05.    <u>Offset of Amounts Owed to XTO Energy and Affiliates</u>. Before Closing, XTO Energy may review all outstanding accounts between Buyer and XTO Energy and its Affiliates and include any amounts due to XTO Energy or any of its Affiliates in the Closing Settlement Statement. Buyer will pay the amounts due to XTO Energy or any of its Affiliates, if any, as a condition of Closing.

8.06.    <u>Condition Precedent</u>. Buyer's performance of its obligations under this Article 8 is a condition precedent to XTO Energy's obligation to close this transaction.

8.07.    <u>Buyer's Representation by Closing</u>. By closing this transaction, Buyer will be deemed to represent to XTO Energy that all of Buyer's representations under this Agreement and the Additional Instruments are true as of the Closing Date.

8.08.    <u>Insurance</u>. XTO Energy will terminate all insurance that it has provided to cover its ownership share in the Interests on the Closing Date, except to the extent that insurance is required by or provided under a joint operating or similar agreement. If the Effective Time is before the Closing Date, the termination will be effective retroactive to the Effective Date. Buyer relinquishes and waives, on its behalf and on behalf of all persons subrogated to Buyer's rights, all rights to claim against any insurance provided by XTO Energy. To the extent that XTO Energy, as Operator, may have obtained commercial insurance applicable to the Interests that is required by or provided under a joint operating or similar agreement, then Buyer shall take

over stewardship of such insurance policies on behalf of the non-operators, if Buyer operates the Interests after the Closing Date.

8.09.  Right to Terminate.  Notwithstanding anything herein to the contrary, in the event that Closing has not occurred on or before October 31, 2011 for reasons not within the control of XTO Energy, XTO Energy shall have a continuing right thereafter to terminate this Agreement by providing written notice of termination to Buyer.  In the event of such termination, XTO Energy shall refund the Performance Deposit, however, subject to Article 24.

## ARTICLE 9.  POST-CLOSING OBLIGATIONS

9.01.  Filing and Recording.  XTO Energy will decide which Party will file or record the conveyancing documents in the appropriate governmental records.  The recording Party will provide either the original or photocopies of the filed or recorded document, including the recording data, as agreed by the Parties, to the non-recording Party.  Buyer will reimburse XTO Energy for the filing, recording, and other reasonable fees that XTO Energy incurs if XTO Energy files or records the documents.

9.02.  Copies.  Within sixty (60) days after the Closing Date, XTO Energy will deliver to Buyer, at Buyer's cost and request, originals, if available, if not copies, of data and records relating to the Interests and Property as agreed by the Parties (including, without limitation, to the extent in XTO Energy's possession and delivery to Buyer is not subject to a third party restriction, all lease files, land files, well files, gas and oil sales contract files, gas processing files, division order files, abstract, title opinion, land surveys, cores, logs, geological and geophysical information and studies, maps, hazard surveys, engineering data, studies and reports, production records, reservoir studies and evaluations (insofar as same cover and exist within the boundaries of the Interests and Properties) and other books, records, data, files, maps and accounting records, in each case to the extent related to the Interests and Properties, or used, or held for use in connection with the ownership, use, maintenance or operation thereof).  In the event XTO Energy requires copies of original files that are delivered or requested by Buyer, Buyer shall pay for the costs associated with said copies.  XTO Energy is not obligated to provide copies of any data or records that would not have been made available to Buyer under Section 5.01.  Buyer must advise XTO Energy before Closing which data and records that it wants to be delivered or copied.  If Buyer requests geophysical, proprietary seismic data, and proprietary reprocessing data or derivatives and if XTO Energy is restricted from releasing the data to Buyer, Buyer's execution of a licensing agreement satisfactory to the third part owner of the data will be a condition of XTO Energy's delivering the data to Buyer.  For leases subject to the jurisdiction of the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE"), XTO Energy will sign and deliver to Buyer, if required, a complete list of the copies of data and records delivered to Buyer (with omissions noted and explained for records required under federal regulations, but which are not available).  Buyer will sign the list and submit it to the BOEMRE in accordance with applicable regulations.

If originals or the last-remaining copies of any data or records are provided to Buyer, XTO Energy may have access to them at reasonable times and upon reasonable notice during regular business hours for as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or a longer period if required by

law or governmental regulation). XTO Energy may, during this period and at its expense, make copies of the data and records pursuant to a reasonable request. Without limiting the generality of the two preceding sentences, for as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or for a longer period if required by law or governmental regulation), Buyer may not destroy or give up possession of any original or last-remaining copy of the data or records without first offering XTO Energy the opportunity, at XTO Energy's expense, to obtain the original or a copy. After this period expires, Buyer must offer to deliver the data and records (or copies) to XTO Energy, at XTO Energy's expense, before giving up possession or destroying them.

9.03. <u>Further Assurances</u>. Buyer and XTO Energy each will, from time to time after Closing and upon reasonable request, execute, acknowledge, and deliver in proper form any conveyance, assignment, transfer, or other instrument reasonably necessary to accomplish the purposes of this Agreement.

9.04. <u>Post-Closing Third-Party Consents</u>. If XTO Energy elects to close without all third-party consents and approvals, Buyer must proceed diligently after Closing to obtain and promptly provide evidence of them to XTO Energy. If any third party (including any governmental or regulatory agency) having a right to approve or reject assignment of any Interest by XTO Energy to Buyer in order for title to transfer does not approve the assignment, or if Buyer does not meet conditions imposed for approval of the assignment, after Buyer has made a good faith effort to obtain the approval or permits or to satisfy the conditions, then XTO Energy may require reassignment of those Interests for which approval or consent was not received. The Interests and Property must be in the same condition on the reassignment date as they were on the Closing Date, reasonable wear and tear excepted. Upon reassignment, XTO Energy will refund to Buyer the Allocation for each reassigned Interest, without interest, but adjusted for operating expenses and revenue attributable to the period before reassignment. Buyer will be responsible for all amounts due under contracts, including the Related Agreements, as to any Interest that requires approval for assignment, from the Effective Time forward. This obligation will end only if an Interest is reassigned under this Section 9.04.

9.05. <u>Reassignment</u>. For reassignment of any Interest under this Agreement, Buyer will execute and deliver to XTO Energy a reassignment by special warranty, in a form satisfactory to XTO Energy and sufficient to place XTO Energy in the same position it occupied before the assignment to Buyer. Buyer's release and discharge of XTO Energy and its Associated Parties, its covenant not to sue XTO Energy or its Associated Parties, and its obligations to indemnify, defend, and hold XTO Energy and its Associated Parties harmless will apply to Interests that are reassigned for the period of Buyer's ownership, and the reassignment instrument will restate Buyer's obligations.

9.06. <u>Buyer's Compliance</u>. Buyer will comply with all rules, regulations, statutes, and laws applicable to Buyer's ownership or operation of the Interests or Property and with all Related Agreements, insofar as they concern or pertain to the Interests.

9.07. <u>Property Sales Accounting Agreement</u>. Buyer will perform all its obligations under the Property Sales Accounting Agreement, including payment of rentals, shut-in payments, and minimum royalties.

9.08.  Plugging and Abandoning Wells; Remediation.  Buyer recognizes, and will either perform or assure that performance is accomplished properly and in accordance with applicable law and the Related Agreements, all obligations to abandon, restore, and remediate the Interests and Properties, whether arising before or after the Effective Time, including obligations, as applicable to the Interests and Properties, to:

 (a) obtain plugging exceptions in Operator's name for each Well with a current plugging exception, or permanently plug and abandon the Well;

 (b) plug, abandon, and if necessary, re-abandon each Well;

 (c) remove all equipment and facilities, including flowlines, pipelines, and platforms;

 (d) close all pits; and

 (e) restore and remediate the surface, subsurface, and offshore sites associated with the Interests or Property.

Buyer will pay all costs and expenses associated with the obligations assumed under this Section 9.08.  XTO Energy may require Buyer to prove its financial ability to perform these obligations after Closing or to provide and maintain a letter of credit, establish an escrow account, or obtain a performance bond or other financial security in an amount, in a form, and from an institution acceptable to XTO Energy to guarantee Buyer's obligations under this Section.  Pursuant to Section 8.04(d)(9), Buyer will deliver the required financial security at Closing.

9.09.  Surrender or Abandonment of Interests.  If Buyer decides to surrender or abandon any of the Interests after Closing, Buyer must give XTO Energy written notice of its intent at least forty-five (45) days before surrender or abandonment if XTO Energy:

 (a) has retained an interest in the Interests;

 (b) has other interests for which XTO Energy requires access across the Interests or Property in order to exercise its rights; or

 (c) has other interests that are held by production from the Interests.  XTO Energy will have thirty (30) days after receipt of Buyer's notice to notify Buyer that it elects to require Buyer to reassign all or any part of the Interests.  Reassignment will be in the manner described in Section 9.05.

## ARTICLE 10.  TAXES

10.01.  Ad Valorem Taxes.  Ad valorem taxes (including production-based ad valorem taxes), real property taxes, and similar obligations imposed on the Interests and Property according to their value ("Ad Valorem Taxes") will be apportioned between XTO Energy and Buyer as of the Effective Time.  Whether the Interests and Property are valued based on the previous year's production or any other basis, Buyer is obligated to pay the current year's Ad

Valorem Tax assessment and all subsequent Ad Valorem Taxes, subject to the following apportionment provisions. The basis of the apportionment will be the assessment for the tax year in which the Effective Time occurs or, if that assessment is not known, then the basis of the apportionment will be the assessment for the previous tax year. If Ad Valorem Taxes have not been paid before Closing, Buyer will be credited for XTO Energy's portion of the Ad Valorem Taxes on the Closing Settlement Statement. If they have been paid before Closing, XTO Energy will be credited for Buyer's portion of the taxes on the Closing Settlement Statement. Buyer will be responsible for all Ad Valorem Taxes and interest that are applied to the Interests retroactively after the Effective Time.

10.02. <u>Production Taxes</u>. All taxes (other than Ad Valorem Taxes and income taxes) imposed on or with respect to the production of Oil, gas, or other hydrocarbons or minerals, or the receipt of proceeds from their sale (including severance, production, and excise taxes) will be apportioned between the Parties as of the Effective Time. XTO Energy will be responsible for paying or withholding all taxes that have accrued before the Effective Time or as otherwise provided in the Property Sales Accounting Agreement and for filing all statements, returns, and documents pertinent to them. Buyer will be responsible for paying or withholding all taxes that accrue or are applied retroactively after the Effective Time or as otherwise provided in the Property Sales Accounting Agreement; for filing all statements, returns, documents incident to them; and for obtaining reimbursements, if any, relating to those taxes.

10.03. <u>Other Taxes</u>. At Closing, XTO Energy will collect from Buyer and pay all applicable state and local sales taxes, use taxes, gross receipts taxes, business license taxes, other taxes (except taxes imposed by reason of income to XTO Energy), and fees. The taxes collected will be based on Buyer's Allocations, as adjusted under this Agreement. Buyer will pay all state and local taxes, including penalty and interest, if any, assessed after the Effective Time against either Party with respect to this transaction or, if paid by XTO Energy, Buyer will promptly reimburse XTO Energy for amounts paid. Buyer will pay all documentary stamp taxes.

10.04. <u>Tax-Deferred Exchange</u>. XTO Energy may elect by notice to Buyer before the Closing Date to effect a tax-deferred exchange under Section 1031 of the Code of all or part of the Interests. If XTO Energy so elects, Buyer will accommodate XTO Energy and will execute escrow instructions, documents, agreements, or other instruments, as reasonably requested by XTO Energy, to effect the exchange; provided, however, such execution(s) shall not result in any additional cost, expense or liability to Buyer. XTO Energy may assign its rights and delegate its duties under this Agreement to an exchange intermediary that it selects, as may be necessary to effect a tax-deferred exchange.

## ARTICLE 11. OIL IN STORAGE, PROCEEDS, COSTS, EXPENSES, CLAIMS, AND DISBURSEMENTS

11.01. <u>Oil in Storage.</u>

    (a)    All Oil in storage at the Effective Time, including working inventory, belongs to XTO Energy. Title to Oil in storage for both XTO Energy-operated Interests and Interests operated by others will transfer to Buyer as of the Effective Time.

(b)  XTO Energy, at its sole option, may include as "Oil in storage" all Oil in the system downstream of the wellhead at the Effective Time, including Oil in stock tanks, wash tanks, heater treaters, flowlines, and pipelines. For XTO Energy-operated Interests, at the Effective Time XTO Energy will:

(1)  at its sole option, either run or gauge the Oil in storage; and

(2)  read and replace all gas meter charts.

If the Effective Time is after the Execution Date, Buyer may be present for these operations.

(c)  XTO Energy will use measured Oil inventories in the Closing Settlement Statement, if available or, if not available, then estimated Oil inventories. The estimates will be based on the average month-end inventories of the three most recent calendar months prior to the Effective Time. If there is a difference between the value of the estimated Oil in storage and the value of inventories run or gauged at the Effective Time, XTO Energy may include the difference in the Final Settlement Statement.

(d)  Oil inventories will be credited to XTO Energy in the Closing Settlement Statement. The assessed value of the Oil in storage will be priced, at XTO Energy's option, at either:

(1)  XTO Energy's posted price at the Effective Time for Oil of like grade and gravity in the field where the relevant Interest is located;

(2)  if there is no XTO Energy-posted price for the field, then the average of the two highest prices, as determined by XTO Energy, posted by other purchasing companies in the field or locality where the Interest is located, for Oil of like grade and gravity, in effect at the Effective Time;

(3)  the applicable posted price, with appropriate gravity adjustments; or

(4)  the price received for the Oil from the purchaser (or an estimate of the price) or the price paid shall be a mutually agreeable negotiated price, with transportation charges deducted, where applicable.

(e)  For Interests operated by others, XTO Energy will include in the Closing Settlement Statement the quantity of Oil in storage at the Effective Time as represented by the Operator or as obtained from information filed with the applicable regulatory agency. The value of Oil in storage for Interests operated by others will be determined on the same basis as that used to determine the value of Oil inventories for XTO Energy-operated Interests.

11.02. <u>Proceeds, Costs, and Expenses</u>.

(a) Except as otherwise provided in this Agreement and without prejudice to the provisions of the Property Sales Accounting Agreement:

    (1) XTO Energy reserves all rights to proceeds, receipts, reimbursements, credits, and income attributable to the Interests and accruing before the Effective Time; and

    (2) all proceeds, receipts, credits, income, and charges attributable to the Interests and accruing after the Effective Time will be Buyer's property and responsibility.

For accounts held in suspense or escrow at Closing, XTO Energy will pay in full the royalty accounts that were suspended because the amount due is less than the statutory minimum for payment and, as to all other accounts, will disburse funds after Closing upon proof satisfactory to XTO Energy that the money is due to the party claiming it.

(b) Except as otherwise provided in this Agreement and without prejudice to the provisions of the Property Sales Accounting Agreement, XTO Energy will make all disbursements for:

    (1) payment of charges and invoices for costs and expenses accruing before the Effective Time and attributable to the Interests; and

    (2) payments necessary as the result of sales of production from the Interests occurring before the Effective Time (including disbursements out of proceeds held in suspense or escrow).

Buyer will be responsible for all payments and disbursements after the Effective Time but if XTO Energy makes any of these payments or disbursements (including rentals paid prior to the Effective time, but covering periods after the Effective Time), Buyer will reimburse XTO Energy for the amounts paid.

(c) All amounts due from one Party to the other under this Section 11.02 may be made by debits and credits in the Closing Settlement Statement and Final Settlement Statement.

11.03. <u>Notice to Remitters of Proceeds</u>. XTO Energy will make reasonable efforts to notify all remitters of proceeds from the sale of production of this transaction. Except as otherwise provided in the Property Sales Accounting Agreement, XTO Energy is responsible for obtaining from the remitters revenues accrued before the Effective Time, and Buyer is responsible for obtaining from the remitters revenues accruing after the Effective Time. The Parties will inform the remitters that this transaction has closed by letter-in-lieu-of-transfer order or other documents required by each remitter.

11.04. <u>Reservation of Claims</u>. XTO Energy reserves all Claims and rights of any kind concerning the Interests or Property against third parties that accrue before the Effective Time (including those against overriding royalty owners, royalty owners, working-interest owners, and gas purchasers), whether discovered before or after Closing. The reservations under this Section do not include gas-production-imbalance accounts, which are the subject of Article 20.

## ARTICLE 12. XTO ENERGY-OPERATED INTERESTS

12.01. <u>Operation by XTO Energy</u>. XTO Energy will operate the XTO Energy-operated Interests until the later of the Closing Date or the time that the applicable operating agreement, plan of unitization, or law requires. As soon as practicable thereafter, operations will be turned over to, and become the responsibility of, XTO Energy's successor as Operator. XTO Energy is not obligated to obtain Buyer's approval of any aspect of operations while it operates the Interests, except to the extent provided for in the Transition Services Agreement attached as Exhibit I to be effective as of the Closing Date. Notwithstanding anything to the contrary in this Agreement, XTO Energy may cancel its applicable regulatory permits at any time and for any reason after it ceases to operate an Interest, with prior notice to the Buyer.

12.02. <u>Charges Paid by Buyer</u>. For the period of operation by XTO Energy from the Effective Time until the Closing, Buyer will pay XTO Energy as follows:

(a) Operation and Maintenance Expenses. A fixed monthly rate for operation and maintenance expenses and other miscellaneous costs and expenses incidental to the operation, protection, and maintenance of the Interests and Property (but excluding costs under paragraph (b) below) based on the average operation, maintenance, and miscellaneous costs and expenses for each Interest for the three-month period before the Effective Time.

(b) Other Costs. Reimbursement for workover costs, plugging, abandoning, and re-abandoning costs, $CO_2$ purchases, prepaid items (e.g., utility charges, rentals, deposits and any other prepays excluding taxes) prorated before and after the Effective Time, and other major costs incurred by XTO Energy incidental to the operation, protection, and maintenance of the Interests and Property, on an actual-cost basis.

(c) Overhead. Overhead at a rate equal to 12.5% of the sum of the amounts under paragraphs (a) and (b) above.

These charges will be included in the Closing Settlement Statement or Final Settlement Statement, as applicable. The Transition Services Agreement shall provide additional charges related to operations and accounting service post Closing.

12.03. <u>Risk of Loss</u>. Unless this Agreement is terminated as to an Interest, the risk of loss for damage to or destruction of the XTO Energy-operated Interests and Property associated with that Interest will pass from XTO Energy to Buyer as of the Closing Date, EVEN IF SUCH DAMAGE OR DESTRUCTION IS CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO ENERGY OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE

**RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY.** Any such damage or destruction will not be cause for Buyer to delay Closing or terminate this Agreement.

For purposes of this Section, a Casualty Loss shall be defined as a loss resulting from a hurricane, other weather event, or an act of God, in the Gulf of Mexico between the Execution Date and Closing, and shall not include any change in the condition of an XTO Energy-operated Interest and Property associated with that Interest arising from normal depletion, watering-out, casing collapse or sand infiltration of any well and the depreciation of property through ordinary wear and tear. If prior to Closing, XTO Energy becomes aware of a Casualty Loss associated with an XTO-Operated Interest or Property, XTO Energy shall promptly notify Buyer of the Interest and Property affected by such Casualty Loss. Prior to Closing, the Parties shall endeavor to assess the extent of the Casualty Loss and mutually agree to an adjustment to the Base Purchase Price resulting from the Casualty Loss; provided, however, if the Parties fail to mutually agree to such adjustment, XTO Energy, at its sole election shall have the option to remove the affected Interest from this Agreement and adjust the Base Purchase Price by the Allocation for that Interest. However, in the event a Casualty Loss affects the SMI 41 Field (XTO File Numbers 3445-0001-00 (OCS-G 13607 South Marsh Island 40 Block), 3446-001-00 (OCS-G 1192 South Marsh Island 41 Block), 3447-0001-00 (OCS-G 23840 South Marsh Island 44 Block), and 3080-0001-00 (OCS-G 31353 South Marsh Island 45 Block), as referenced on Exhibit A, referred to collectively as "SMI 41 Field"), the Parties must mutually agree to remove SMI 41 Field from this Agreement and adjust the Base Purchase Price by the Allocation for the SMI 41 Field in the event the Parties do not mutually agree to an adjustment to the Base Purchase Price resulting from such Casualty Loss. Notwithstanding anything to the contrary set forth in this Agreement, Buyer shall have, at its sole election, the right upon written notice to XTO Energy to terminate this Agreement and receive a refund of the Performance Deposit if the SMI 41 Field is removed because of a Casualty Loss.

In the event a Casualty Loss occurs between the Execution Date and the Closing Date specified in Section 8.01, as same may be extended under either Sections 8.02 or 8.03, either Party may delay Closing for the affected Interest up to sixty (60) days, unless otherwise extended by mutual agreement of the Parties, after the originally-scheduled Closing Date upon written notice to the other Party, unless XTO Energy elects to remove the affected Interest from this Agreement under and in accordance with this Section 12.03.

12.04. <u>Selection of Operator</u>. Upon execution of this Agreement, XTO Energy or Buyer may poll the parties to applicable joint operating agreements or plans of unitization before Closing to select a successor Operator. The poll may stipulate that XTO Energy will not resign as Operator unless Closing occurs. XTO Energy may resign as Operator under applicable regulations if Buyer does not diligently pursue its designation as Operator of the Interests that it will operate. If any such polling commenced by XTO Energy or Buyer is not completed by Closing, then it will be Buyer's responsibility to complete such polling immediately after Closing. Buyer's selection as Operator, whether under a joint operating or similar agreement or pursuant to applicable regulations, is not a condition of Buyer's performance under this Agreement.

12.05. <u>Removal of Signs</u>. XTO Energy may either remove its name and signs from the XTO Energy-operated Interests and Property or require Buyer to do so for those Interests that it will operate. Once Buyer has become Operator, Buyer must:

      (a)    remove any remaining signs and references to XTO Energy from the Property or Interests promptly, but no later than the time required by applicable regulations or 45 days after XTO Energy ceases to be Operator, whichever occurs first;

      (b)    install signs complying with applicable governmental regulations, including signs showing Buyer as Operator of the Interests it operates; and

      (c)    notify XTO Energy of the removal of signs and references to XTO Energy and installation of new signs.

XTO Energy reserves a right of access to the Interests and Property after it ceases to be Operator to remove its signs and name from all Wells, facilities, and Property, or to confirm that

Buyer has done so for the Interests operated by Buyer. If XTO Energy removes signs because Buyer has not done so, XTO Energy will charge its costs to Buyer, and Buyer will pay the invoice within fifteen (15) days of receipt.

## ARTICLE 13. INTERESTS OPERATED BY OTHERS

13.01. <u>Charges Paid by Buyer</u>. Buyer will reimburse XTO Energy for charges made by the Operator after the Effective Time and paid by XTO Energy.

13.02. <u>Risk of Loss</u>. Unless this Agreement is terminated as to an Interest, the risk of loss for damage to or destruction of each Interest operated by others and the Property associated with that Interest will pass from XTO Energy to Buyer as of the Closing Date, EVEN IF SUCH DAMAGE OR DESTRUCTION IS CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO ENERGY OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY. Any such damage or destruction will not be cause for Buyer to delay Closing or terminate this Agreement.

For purposes of this Section, a Casualty Loss shall be defined as a loss resulting from a hurricane, other weather event, or an act of God, in the Gulf of Mexico between the Execution Date and Closing, and shall not include any change in the condition of an Interest operated by others and Property associated with that Interest arising from normal depletion, watering-out, casing collapse or sand infiltration of any well and the depreciation of property through ordinary wear and tear. If prior to Closing, XTO Energy becomes aware of a Casualty Loss associated with an Interest operated by others and the Property associated with the Interest, XTO Energy shall promptly notify Buyer of the Interest and Property affected by such Casualty Loss. Prior to Closing, the Parties shall endeavor to assess the extent of the Casualty Loss and mutually agree to an adjustment to the Base Purchase Price resulting from the Casualty Loss; provided, however, if the Parties fail to mutually agree to such adjustment, XTO Energy, shall, at its sole

option, have the option to remove the affected Interest from this Agreement and adjust the Base Purchase Price by the Allocation for that Interest. In the event a Casualty Loss occurs between the Execution Date and the Closing Date specified in Section 8.01, as same may be extended under either Sections 8.02 or 8.03, either Party may delay Closing for the affected Interest up to sixty (60) days, unless otherwise extended by mutual agreement of the Parties, after the originally-scheduled Closing Date upon written notice to the other Party, unless XTO Energy elects to remove the affected Interest from this Agreement under this Section 13.02.

## ARTICLE 14. PREFERENTIAL RIGHT TO PURCHASE OIL

XTO Energy shall have, for the life of the lease in any instrument(s) of conveyance concerning the Interests, the preferential right to purchase from time to time all or any portion of the Oil, which may be produced and saved from or allocated to the Interests conveyed by XTO Energy hereunder, except for that Oil which is used for operations upon and for the sole benefit of the Interests conveyed by this Agreement. The price to be paid shall be a mutually agreeable negotiated price, with transportation charges deducted, where applicable.

Notwithstanding anything herein to the contrary, if Buyer receives a bona fide offer from an independent third party to purchase the above Oil, which exceeds the price that XTO Energy is currently paying, then Buyer shall furnish XTO Energy with a copy of said offer and XTO Energy shall have the option (but not the obligation) to match such offer and purchase such Oil on terms identical to that contained in the offer. Notice of XTO Energy's election to match said offer shall be provided in writing to Buyer within ten (10) working days after receipt of such notice.

Should XTO Energy, on any one or more occasions, elect not to purchase or not respond within ten (10) working days after notification by Buyer, then XTO Energy's right to purchase Oil shall be considered temporarily waived until such third party term purchase has expired or until such time as XTO Energy is willing to match the independent third party's offer, consistent with the cancellation notice period of said offer.

XTO Energy shall have the right to assign its preferential right to purchase to any of its subsidiaries or affiliates. Upon such assignment, the subsidiary or affiliate shall have the same rights as XTO Energy under this Article 14.

All notifications under this Article shall be sent to:

| XTO Energy: | Buyer: |
| --- | --- |
| ExxonMobil Oil Corporation | Dynamic Offshore Resources, LLC |
| 3225 Gallows Road | 1301 McKinney, Suite 900 |
| Fairfax, Virginia 22037 | Houston, Texas 77010 |
| Attention:  Manager, North America Crude Trading | Attention:  Vice President of Land and Business Development |

The provisions of this Article 14 will be incorporated into the Assignment and Bill of Sale.

## ARTICLE 15.  INTENTIONALLY OMITTED

## ARTICLE 16.  BUYER'S RELEASE, DISCHARGE, AND COVENANT NOT TO SUE AND BUYER'S OBLIGATIONS TO INDEMNIFY, DEFEND, AND HOLD HARMLESS

16.01.  <u>Buyer's Release and Discharge of XTO Energy and its Associated Parties</u>.  Buyer releases and discharges XTO Energy and its Associated Parties from each Claim and Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. **BUYER'S RELEASE AND DISCHARGE OF XTO ENERGY AND ITS ASSOCIATED PARTIES INCLUDES CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO ENERGY OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY.**  The only exception to Buyer's release and discharge of XTO Energy and its Associated Parties is stated in Section 16.04(e), and the release and discharge are binding on Buyer and its successors and assigns.

16.02.  <u>Buyer's Covenant Not to Sue XTO Energy or its Associated Parties</u>.  Buyer covenants not to sue XTO Energy or its Associated Parties with regard to any Claim or Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. **BUYER'S COVENANT NOT TO SUE XTO ENERGY OR ITS ASSOCIATED PARTIES INCLUDES CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO ENERGY OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLIES REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY.**  The only exception to Buyer's covenant not to sue XTO Energy or its Associated Parties is stated in Section 16.04(e), and the covenant is binding on Buyer and its successors and assigns.

16.03.  <u>Buyer's Obligations to Indemnify, Defend, and Hold XTO Energy and its Associated Parties Harmless</u>.  Buyer will indemnify, defend, and hold XTO Energy and its Associated Parties harmless from each Claim and Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable.  **BUYER'S OBLIGATIONS TO INDEMNIFY, DEFEND, AND HOLD XTO ENERGY AND ITS ASSOCIATED PARTIES HARMLESS INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO ENERGY OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY.**  The only exceptions to Buyer's obligations to indemnify, defend, and hold XTO Energy and its Associated Parties harmless are stated in Sections 16.04(c) and 16.04(e), and the obligations are binding on Buyer and its successors and assigns.

16.04.  Buyer's Obligations.

(a)     In each instance of Buyer's obligations to release, discharge, indemnify, defend, and hold XTO Energy and its Associated Parties harmless and its covenant not to sue XTO Energy or its Associated Parties, the Claims and Liabilities subject to the obligations include the following:

(1)     the ownership of the Interests by XTO Energy, their operation by XTO Energy or its Associated Parties, and the acts or omissions of XTO Energy or its Associated Parties in connection with the Interests or the Related Agreements;

(2)     the ownership of the Interests by Buyer, their operation by Buyer or its Associated Parties, and the acts or omissions of Buyer or its Associated Parties in connection with the Interests or under this Agreement or the Related Agreements; and

(3)     the acts or omissions of third parties relating to the Interests.

(b)     Buyer's obligations under this Agreement to release, discharge, indemnify, defend, and hold XTO Energy and its Associated Parties harmless and its covenant not to sue XTO Energy or its Associated Parties include Claims and Liabilities arising in any manner from the following:

(1)     Buyer's Allocations;

(2)     preferential and similar rights held by third parties to purchase any portion of the Interests;

(3)     the review, inspection, and assessment of the Interests and Property by Buyer and its Associated Parties;

(4)     an error in describing the Interests or an error in the conveyancing instruments;

(5)     rights and obligations of the parties or third parties under the Related Agreements;

(6)     closing without a third party consent or approval;

(7)     failure by third parties to approve or consent to any aspect of this transaction after Closing;

(8)     obligations to plug and abandon Wells and remediate the Interests and Property;

(9)     payment of Real Property Taxes or other taxes applicable to the Interests and Property;

36

(10)     payments or disbursements paid or payable by XTO Energy or Buyer to third parties;

(11)     a physical or environmental condition relating to the Interests and Property, including Claims and Liabilities under the Environmental Laws, or failure to comply with the Environmental Laws;

(12)     remediation activities, including damages incurred by Buyer or its Associated Parties during or arising from remediation activities; and

(13)     lawsuits filed before the Effective Time, but amended after the Effective Time to include the Interests or Property or XTO Energy's ownership of or activities regarding the Interests or Property.

(c)     Buyer's obligations to indemnify, defend, and hold XTO Energy and its Associated Parties harmless do not apply, however, to Claims or Liabilities that result from a judgment rendered or settlement reached in a lawsuit filed before the Effective Time, but only to the extent that acts or omissions that gave rise to the cause of action are attributable to the conduct or operation or ownership of XTO Energy or its Associated Parties before the Effective Time.

(d)     The Parties recognize that certain lawsuits may have been filed before the Effective Time, but concern activities continuing after the Effective Time, so that after Closing Buyer may be a proper party to the lawsuit. For these lawsuits, Buyer's obligations to indemnify, defend, and hold XTO Energy and its Associated Parties harmless will apply to activities occurring after the Effective Time. XTO Energy will continue to defend its own interests and provide principal counsel in an action under this paragraph for which it remains a party after the Effective Time.

(e)     Buyer's release and discharge of XTO Energy and its Associated Parties and its covenant not to sue do not include Claims that Buyer may enforce against contractors and subcontractors for work regarding the Interests and the Properties. In addition, Buyer's release and discharge of XTO Energy and its Associated Parties and its obligation to indemnify, defend and hold XTO Energy harmless under this Agreement does not include Claims that XTO Energy breached this Agreement. Any such Claims will be resolved in accordance with Article 17.

16.05. Buyer's Duty to Defend. Buyer acknowledges that its obligations to indemnify, defend, and hold XTO Energy and its Associated Parties harmless under this Agreement include obligations to pay the attorneys' fees and court and other costs incurred by XTO Energy and its Associated Parties in defending all Claims. As to each Claim and Liability, XTO Energy, at its sole option, may elect to:

(a)    manage its own defense, in which event Buyer will reimburse XTO Energy and its Associated Parties for all attorneys' fees and court and other costs reasonably incurred in defending a claim, upon delivery to Buyer of invoices for these fees and costs; or

(b)    tender its defense as to any Claim to Buyer, in which event Buyer will be responsible for all aspects of defending the Claim at issue and resulting Liabilities.

16.06. Buyer's Waiver of Consumer Rights Under the Texas Deceptive Trade Practices Consumer Protection Act and Other Consumer Protection Laws. AS PARTIAL CONSIDERATION TO XTO ENERGY TO ENTER INTO THIS AGREEMENT, TO THE EXTENT THAT THE TEXAS DECEPTIVE TRADE PRACTICES CONSUMER PROTECTION ACT IS APPLICABLE TO THIS TRANSACTION, BUYER CAN AND DOES EXPRESSLY WAIVE ITS RIGHTS UNDER THE TEXAS DECEPTIVE TRADE PRACTICES CONSUMER PROTECTION ACT, SECTIONS 17.41 THROUGH 17.63, TEXAS BUSINESS AND COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION, BUYER VOLUNTARILY CONSENTS TO THIS WAIVER. IN ADDITION, BUYER WAIVES ITS RIGHTS UNDER ALL OTHER CONSUMER PROTECTION LAWS IN OTHER STATES APPLICABLE TO THIS TRANSACTION THAT MAY BE WAIVED BY THE PARTIES.

16.07. Retroactive Effect. Buyer acknowledges that its obligations to release, discharge, defend, and hold XTO Energy and its Associated Parties harmless and its covenant not to sue XTO Energy or its Associated Parties apply to matters occurring or arising before the Execution Date to the extent provided in this Agreement.

16.08. Inducement to XTO Energy. BUYER ACKNOWLEDGES THAT IT EVALUATED ITS OBLIGATIONS UNDER THIS ARTICLE 16 BEFORE IT DETERMINED AND SUBMITTED ITS BID FOR THE INTERESTS AND THAT ITS ASSUMPTION OF THESE OBLIGATIONS IS A MATERIAL INDUCEMENT TO XTO ENERGY TO ENTER INTO THIS AGREEMENT WITH, AND CLOSE THE SALE TO, BUYER.

## ARTICLE 17. ALTERNATE DISPUTE RESOLUTION AND ARBITRATION

17.01. General.

(a)    This Article 17 applies to any dispute between the Parties, arising at any time, that is not subject to Buyer's release and discharge of XTO Energy and its Associated Parties or Buyer's covenant not to sue XTO Energy or its Associated Parties or is not specifically excluded under this Article 17. Whether a dispute is subject to Buyer's release, discharge, or covenant not to sue or to this Article (or is excluded from this Article by its terms), and whether there is a contract between the Parties, are issues that will be resolved under the alternate dispute resolution and arbitration provisions of this Article 17.

(b)    As to the disputes subject to this Article 17, any Claim or controversy of whatever nature, including an action in tort or contract or a statutory

action ("Disputed Claim"), or the arbitrability of a Disputed Claim, will be resolved under the terms, conditions, and procedures of set forth in this Article 17 and will be binding on both Parties and their respective successors and assigns. Neither Party may prosecute or commence any suit or action against the other Party relating to any matters that are subject to this Article 17, except as provided in this Article 17.

(c)     XTO Energy will determine, at its sole option, whether a Claim filed by a third party against Buyer or XTO Energy will be subject to this Article. If Buyer has notified XTO Energy before Closing of a Disputed Claim by Buyer before Closing and the Disputed Claim is not resolved before Closing, the Disputed Claim will not be subject to this Article unless agreed by the Parties.

17.02. <u>Negotiations</u>. The Parties agree to attempt to resolve any dispute arising out of or relating to this Agreement through negotiation. Within thirty (30) days after one Party gives the other Party written notice describing the dispute and requesting negotiations, representatives of the Parties with authority to resolve the dispute shall meet at a mutually agreed upon location to attempt to resolve the dispute. Negotiations shall continue until the Parties have resolved the dispute or until one of the Parties gives written notice that it will no longer continue to negotiate. If for any reason, the Parties' representatives fail to meet within the thirty (30) day deadline or if a Party gives written notice that it is no longer willing to continue negotiations, either Party may commence binding arbitration of the dispute pursuant to Section 17.03.

17.03. <u>Arbitration</u>. Any dispute arising out of or relating to this Agreement that the Parties fail to resolve by negotiation as set forth in Section 17.02 shall be resolved by arbitration before three arbitrators pursuant to the CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration as modified herein. Each Party shall appoint one arbitrator as provided in CPR Rules 3.3 and 3.5, and the two arbitrators so appointed shall appoint the third, who shall chair the tribunal, selected as provided in CPR Rule 5.2. The place of arbitration shall be Houston, Texas. The arbitrators shall apply the substantive law of Texas to the merits of the dispute, except that the arbitrators shall not apply any choice of law rules that would call for the application of the substantive law of any other jurisdiction. The Federal Arbitration Act shall apply to the arbitration. The arbitrators' award shall be final and binding on the Parties. Judgment on the award may be entered in any court of competent jurisdiction.

17.04. <u>Notice</u>. The addresses for notice under this Article 17 are:

XTO Energy:                                    Buyer:

XTO Energy Inc                                 Dynamic Offshore Resources, LLC
810 Houston Street                             1301 McKinney, Suite 900
Fort Worth, Texas 76102                        Houston, Texas  77010
Attention: Litigation Coordinator              Attention:  General Counsel

and

ExxonMobil Production Company
P. O. Box 2180
Houston, Texas 77252-2180
Attention:    Planning Department
              Asset Enhancement Manager

## ARTICLE 18. ENVIRONMENTAL MATTERS

18.01. <u>Buyer's Acknowledgment Concerning Possible Contamination of the Interests and Property</u>.  Buyer is aware that the Interests and Property have been used for exploration, development, and production of oil and gas and that there may be petroleum, produced water, wastes, or other materials located on or under the Property or associated with the Interests. Equipment and sites included in the Interests or Property may contain asbestos, hazardous substances, or NORM.  NORM may affix or attach itself to the inside of Wells, materials, and equipment as scale, or in other forms; the Wells, materials, and equipment located on the Property or included in the Interests may contain NORM and other wastes or hazardous substances; and NORM-containing material and other wastes or hazardous substances may have been buried, come in contact with the soil, or otherwise been disposed of on the Property. Special procedures may be required for the remediation, removal, transportation, or disposal of wastes, asbestos, hazardous substances, and NORM from the Interests and the Property.

**BUYER WILL ASSUME ALL LIABILITY FOR THE ASSESSMENT, REMEDIATION, REMOVAL, TRANSPORTATION, AND DISPOSAL OF WASTES, ASBESTOS, HAZARDOUS SUBSTANCES, AND NORM FROM THE INTERESTS AND PROPERTY AND ASSOCIATED ACTIVITIES AND WILL CONDUCT THESE ACTIVITIES IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS, INCLUDING ENVIRONMENTAL LAWS.**

18.02. <u>Adverse Environmental Conditions</u>.

    (a)    Buyer will have until ten (10) days before the Closing Date to notify XTO Energy of any material adverse environmental condition of the Interests or Property that Buyer finds unacceptable and provide evidence of the condition to XTO Energy.  An environmental condition is a material adverse environmental condition ("Condition") only if all the following criteria are met:

        (1)    the environmental condition is required to be remediated on the Execution Date under the Environmental Laws in effect on the Execution Date;

        (2)    the total of the cost to remediate all environmental conditions identified by Buyer to levels required by the Environmental Laws in effect on the Execution Date is reasonably estimated to be more than one percent (1%) of the Base Purchase Price; and

        (3)    the environmental condition was not disclosed to or known by Buyer before the Execution Date.

(b)     XTO Energy will have thirty (30) days after receipt of Buyer's notice under the preceding paragraph, or until five (5) days before the Closing Date if it determines that an adverse environmental condition (whether material or not) may exist with respect to an Interest or Property, to elect any of the following:

(1)     adjust the Allocation for an Interest by a mutually acceptable amount reflecting XTO Energy's proportionate share, based on its working interest, of the cost reasonably estimated to remediate a Condition affecting the Interest;

(2)     remove the affected Interest from this Agreement and adjust the Base Purchase Price by the Allocation for the affected Interest;

(3)     remedy, or agree to remedy, the Condition, as provided below; or

(4)     terminate this Agreement.

XTO Energy may delay Closing until the end of this thirty-day period, which delay will be in addition to and under the same terms as XTO Energy's right to delay Closing under Section 8.03.

(c)     If XTO Energy and Buyer agree to adjust an Allocation because of a Condition, the amount of the adjustment will be the cost to remediate the Condition, but only to the level required by the Environmental Laws in effect on the Execution Date. XTO Energy may require Buyer to remit the full Allocation at Closing, without adjustment for the Condition, but if it does so, it will pay the amount of the adjustment to Buyer when the remediation is complete under applicable law. If the cost to remediate exceeds the amount of the adjustment, Buyer will pay the additional costs to remediate the Condition as required by applicable law.

18.03.  Remediation.  If XTO Energy agrees with Buyer to remediate a Condition or is required by a governmental or regulatory agency to remediate a Condition, the following will govern the remediation:

(a)     XTO Energy will be responsible for all negotiations and contacts with federal, state, and local agencies and authorities with regard to the Condition or remediation. Buyer may not make any independent contacts with any agency, authority, or other third party with respect to the Condition or remediation and will keep all information regarding the Condition and remediation confidential, except in each instance to the extent required by applicable law.

(b)     XTO Energy will remediate the Condition to the level agreed upon by XTO Energy and Buyer, but in no event will XTO Energy be required to remediate the Condition beyond the level required by the Environmental Laws in effect on the Execution Date.

(c)     Buyer will grant and warrant access to the Interests and entry on the Property after Closing to XTO Energy, its Associated Parties, and third parties conducting assessments or remediation, to the extent and as long as necessary to conduct and complete the assessment or remediation work, to remove equipment and facilities, and to perform any other activities reasonably necessary in connection with assessment or remediation.

(d)     Buyer will use its best efforts not to interfere with XTO Energy's ingress and egress or assessment or remediation activities. XTO Energy will make reasonable efforts to perform the work so as to minimize disruption to Buyer's business activities and to the Interests and the Property.

(e)     XTO Energy will continue remediation of the Condition until the first of the following occurs:

     (1)     the appropriate governmental authorities provide written notice to XTO Energy or Buyer that no further remediation of the Condition is required; or

     (2)     XTO Energy determines that the Condition has been remediated to the level required by the Environmental Laws or as agreed by the Parties.

Upon the occurrence of either (1) or (2) above, XTO Energy will notify Buyer that remediation of the Condition is complete and provide a copy of the notification described in (1) above, if applicable. Upon delivery of XTO Energy's notice, XTO Energy will be released from all liability and have no further obligations under any provisions of this Agreement in connection with a Condition.

(f)     Until XTO Energy completes remediation of a Condition, XTO Energy and Buyer will each notify the other of any pending or threatened Claim, action, or proceeding by any authority or private party that relates to or would affect the environmental condition, the assessment, or the remediation of the Interests or Property.

(g)     After delivery of possession or Closing (whichever occurs first) and before XTO Energy has completed remediation of a Condition, if a leak, spill, or discharge of any material or substance ("Occurrence") occurs on the Property or Interests, or any part of them, Buyer will promptly notify XTO Energy and act promptly to minimize the effects of the Occurrence. If a spill, leak or discharge occurs and XTO Energy determines that it may affect the area where XTO Energy is conducting remediation or assessment, Buyer will hire a consultant (who must be acceptable to XTO Energy) to assess the effect of the occurrence on the environmental condition of the Property, Interest, and XTO Energy's remediation work and the cost of the additional work required as the result of the

Occurrence. Unless the Occurrence was caused solely by XTO Energy, Buyer will be responsible for the incremental cost of remediating the impact of the Occurrence. If XTO Energy's remediation is expanded to incorporate remediation of the Occurrence, Buyer will promptly pay its share of costs and expenses to XTO Energy as the work is performed, within thirty (30) days of receipt of invoices for the work (with supporting documentation). Payments not made timely will bear interest at a rate of twelve percent (12%) per annum or the maximum lawful rate, whichever is less, compounded daily from the date of Buyer's receipt of the invoice until paid.

If the cost of the additional work equals or exceeds the cost which would have been incurred but for the Occurrence, XTO Energy will pay Buyer the cost that would have been incurred by XTO Energy to complete the remediation but for the Occurrence. As consideration for this payment, Buyer will accept the environmental condition of the Property and Interests as they exist on the date of the payment, assume full responsibility for remediating the Property and Interests and related off-site contamination in accordance with this Agreement, and agree to release, not to sue, indemnify, hold harmless, and defend XTO Energy and its Associated Parties as to Claims and Liabilities arising from the Occurrence to the same extent as described in Article 16.

(h)     If XTO Energy undertakes remediation as to any Interest in which XTO Energy's ownership was less than one hundred percent (100%), Buyer will bill the other working interest owners for their share of the remediation expenses. Regardless of whether Buyer recoups any amount from the other working interest owners, Buyer will refund to XTO Energy, within sixty (60) days of each XTO Energy invoice, with documentation, any amounts expended by XTO Energy over the amount formerly attributable to XTO Energy's working interest share.

(i)     If XTO Energy will assess or remediate the Interests or Property after Closing, the Assignment and Bill of Sale or other recordable instrument will restate the rights and obligations of this Section 18.03.

18.04. Disposal of Materials, Substances, and Wastes; Compliance with Law. Buyer will store, handle, transport, and dispose of or discharge all materials, substances, and wastes from the Interests and Property (including produced water, drilling fluids, NORM, and other wastes), whether present before or after the Effective Time, in accordance with applicable local, state, and federal laws and regulations. Buyer will keep records of the types, amounts, and location of materials, substances, and wastes that are stored, transported, handled, discharged, released, or disposed of onsite and offsite. When any lease terminates, an interest in which has been assigned under this Agreement, Buyer will undertake additional testing, assessment, closure, reporting, or remedial action with respect to the Interests or Property affected by the termination as is necessary to satisfy all local, state, or federal requirements in effect at that time and necessary to restore the Property or Interests.

## ARTICLE 19.  BUYER'S REPRESENTATIONS

19.01.  <u>Representations Not Exclusive</u>.  Buyer's representations under this Article are in addition to its other representations under this Agreement and the Additional Instruments.

19.02.  <u>Securities Laws</u>.

    (a)    Buyer acknowledges that the solicitation of an offer for and the sale of the Interests by XTO Energy has not been registered under any securities laws.

    (b)    Buyer intends to acquire the Interests for its own benefit and account and is not acquiring the Interests with the intent of distributing fractional undivided interests in them or otherwise selling them in a manner that would be subject to regulation by federal or state securities laws.  If Buyer sells, transfers, or otherwise disposes of the Interests or fractional undivided interests in them in the future, it will do so in compliance with applicable federal and state laws.

    (c)    Buyer represents that at no time has it been presented with or solicited by or through any public promotion or other form of advertising in connection with this transaction.

19.03.  <u>Basis of Buyer's Decision</u>.  Buyer represents that:

    (a)    it has reviewed and investigated the Interests and Property to its satisfaction in order to enter into this Agreement;

    (b)    it has evaluated the Interests and Property to its satisfaction and has made an informed decision, as a prudent and knowledgeable purchaser, to acquire the Interests and Property;

    (c)    it is knowledgeable and experienced in the evaluation, acquisition, and operation of oil and gas properties;

    (d)    it has evaluated the merits and risks of purchasing the Interests and has formed an opinion based solely upon its knowledge and experience and not in reliance on any statements or actions by XTO Energy or its Associated Parties; and

    (e)    it will acquire the Interests and Property "as is, where is," and with all faults.

19.04.  <u>Material Factor</u>.  Buyer acknowledges that its representations under this Article, the rest of this Agreement, and the Additional Instruments are a material inducement to XTO Energy to enter into this Agreement with, and close the sale to, Buyer.

## ARTICLE 20. GAS IMBALANCES

20.01. <u>XTO Energy's and Buyer's Respective Obligations</u>. For those Interests with cumulative gas-production-imbalance accounts among working interest owners, Buyer acknowledges that the amounts are derived from either Operator's statements or XTO Energy's estimates based upon current production, prior sales history, and contract information; were provided to Buyer before the Execution Date; and were taken into consideration in Buyer's calculation of the Base Purchase Price and the Allocations. After the Effective Time, all benefits, obligations, and liabilities associated with these gas-production-imbalance accounts and related agreements will accrue to and become Buyer's responsibility. Buyer will assume XTO Energy's overproduced or underproduced position as of the Effective Time and subject to the other provisions of this Agreement, unless the operating agreement, plan of unitization, or gas balancing agreement for an Interest provides for the cash settlement of gas-production-imbalance accounts when the Interest is assigned, in which event XTO Energy reserves the gas-production-imbalance account and the right to the cash settlement. XTO Energy specifically reserves certain of the gas imbalance accounts as same are identified on Exhibit E for which Buyer shall have no responsibility or liability.

Buyer represents that in calculating the Base Purchase Price and its Allocations, it has considered XTO Energy's procedures for paying royalties and severance taxes with regard to each gas-production-imbalance account.

20.02. <u>Settlement</u>.

(a) If either (1) before Closing, or (2) on the later of XTO Energy's preparation of the Final Settlement Statement or one hundred and fifty (150) days after Closing, either Party determines that a Material Difference (as defined below) exists between the total of the gas-production-imbalance accounts represented in Exhibit E and the total of the gas-production-imbalance accounts as of the Effective Time, then the Base Purchase Price will be adjusted if there is a Material Difference. The value of the difference will be calculated by multiplying the volume difference by $4.38 per Mcf (thousand cubic feet). A "Material Difference" exists if the absolute value of the difference exceeds $100,000.00.

(b) Regardless of whether a Material Difference exists, if the difference between the represented and actual gas-production imbalance account for an Interest exceeds $100,000.00, then XTO Energy, at its sole option, may withdraw that Interest from this Agreement and adjust the Base Purchase Price by the Allocation for the Interest. The difference in the gas-production-imbalance account for the withdrawn Interest will not be used to determine whether a Material Difference exists.

(c) If a Material Difference identified before Closing exceeds one percent (1%) of the Base Purchase Price, then either Party may, upon written notice to the other, terminate this Agreement. Before terminating this

Agreement, however, XTO Energy and Buyer will each make a good-faith effort to negotiate a settlement. If this Agreement is terminated under this Section 20.02, XTO Energy will refund the Performance Deposit to Buyer.

## ARTICLE 21. FINAL SETTLEMENT STATEMENT

XTO Energy will prepare a final settlement statement and submit it to Buyer within one hundred and fifty (150) days after the Closing Date (the "Final Settlement Statement"). The Final Settlement Statement will deduct royalties, operating expenses, taxes, overhead, and other amounts due to XTO Energy from amounts due to Buyer as provided in this Agreement, with adjustments as necessary for items identified after Closing. XTO Energy may set off any resulting amount due to Buyer against amounts that Buyer may otherwise owe to XTO Energy or its Affiliates when the Final Settlement Statement is prepared.

Buyer must respond in writing with objections and proposed corrections within thirty (30) days of receiving the Final Settlement Statement. If the Parties cannot resolve their differences within ninety (90) days of XTO Energy's receipt of Buyer's objections, then the alternate-dispute-resolution and arbitration procedures of Article 17 will be triggered. If Buyer does not respond to the Final Settlement Statement by signing or objecting in writing within the 30-day period, the statement will be deemed approved by Buyer. After approval of the Final Settlement Statement, XTO Energy will send a check or invoice to Buyer for the net amount. If payment is not made within thirty (30) days of Buyer's receiving the invoice, the amount due may, at XTO Energy's option, bear interest at a rate of twelve percent (12%) percent per annum or the maximum lawful rate, whichever is less, compounded daily from the date of Buyer's receipt of the invoice until paid. Inquiries regarding the Final Settlement Statement must be in writing, addressed to:

> ExxonMobil Production Company
> P.O. Box 2180
> Houston, Texas 77252-2180
> Attention: Planning Department, Asset Enhancement Manager

## ARTICLE 22. BROKER'S AND FINDER'S FEES

XTO Energy and Buyer each represents and warrants to the other that it has incurred no liability, contingent or otherwise, for broker's or finder's fees in connection with this Agreement or the transaction contemplated by it for which the other Party will have any responsibility.

## ARTICLE 23. COMMUNICATIONS

Unless otherwise provided in this Agreement, communications (including notices) under this Agreement that must be in writing and delivered by a specified date will be deemed to have been made when received at the following addresses by registered or certified mail, postage prepaid, or by messenger:

XTO Energy:                                 Buyer:

XTO Energy Inc                              Dynamic Offshore Resources, Inc.
810 Houston Street                          1301 McKinney, Suite 900
Fort Worth, Texas 76102                     Houston, Texas  77010
Attention:  Senior Vice President Land      Attention:      President and Chief
                                                            Executive Officer

and

ExxonMobil Production Company
P.O. Box 2180
Houston, Texas  77252-2180
800 Bell, Room 241-H EB
Houston, Texas  77002
Attention:  Planning Department
            Asset Enhancement Manager

## ARTICLE 24.  BUYER'S DEFAULT

Prior to Closing, if Buyer defaults under this Agreement in a material way, including Buyer's failure to perform its obligations to close this transaction, XTO Energy may, at its sole option, terminate this Agreement and retain the Performance Deposit in lieu of any other rights and remedies XTO Energy may have under law or in equity.  Such option to terminate shall not be exercised by XTO Energy unless and until XTO Energy has provided Buyer with written notice of its default or failure and Buyer has failed to remedy such fault or render such performance within thirty (30) days of its receipt of such written notice.

## ARTICLE 25.  HART-SCOTT-RODINO ANTITRUST IMPROVEMENTS ACT OF 1976

If the Parties determine that the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "Act") applies to this transaction, each will promptly file with the Federal Trade Commission the required notifications, reports, and supplemental information to comply, in all respects, with the requirements of the Act.  Buyer will promptly pay to the appropriate government agency all filing fees required of "acquiring persons" under the Act. Notwithstanding anything to the contrary in this Agreement, the Execution Date of this Agreement will be the date of XTO Energy's notice to Buyer that, in the opinion of XTO Energy's counsel, this transaction complies with the Act and the rules and regulations of the Federal Trade Commission and the Department of Justice.

In order that Closing occurs without violation of the Act, the Parties agree to delay Closing for up to five (5) business days after the transaction contemplated by this Agreement is approved under the Act, if such approval is required and not obtained by the originally scheduled Closing Date.

## ARTICLE 26. XTO ENERGY'S DISCLAIMER OF WARRANTIES AND REPRESENTATIONS

**XTO ENERGY HAS NOT MADE, AND WILL NOT MAKE, ANY WARRANTY OR REPRESENTATION, EXPRESS, IMPLIED, OR STATUTORY, WHATSOEVER IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED BY IT, INCLUDING THE ACCURACY OR COMPLETENESS OF DATA, INFORMATION, OR MATERIALS FURNISHED AT ANY TIME TO BUYER IN CONNECTION WITH THE INTERESTS OR PROPERTY, OR THE QUALITY OR QUANTITY OF HYDROCARBON RESERVES (IF ANY) ATTRIBUTABLE TO THE INTERESTS, OR THE ABILITY OF THE INTERESTS TO PRODUCE HYDROCARBONS. NONE OF XTO ENERGY'S ASSOCIATED PARTIES IS AUTHORIZED TO MAKE ANY WARRANTY OR REPRESENTATION ON XTO ENERGY'S BEHALF. ALL DATA, INFORMATION, AND OTHER MATERIALS FURNISHED BY XTO ENERGY ARE PROVIDED TO BUYER AS A CONVENIENCE, AND RELIANCE ON OR USE OF THEM IS AT BUYER'S SOLE RISK.**

## ARTICLE 27. MISCELLANEOUS

27.01. <u>No Joint and Several Obligations</u>. In the event that there are multiple sellers under this Agreement, the obligations of each seller are several, and not joint and several.

27.02. <u>Entire Agreement</u>. This Agreement and the Additional Instruments constitute the entire agreement between the Parties as to the transaction described in this Agreement. All previous negotiations and communications between the Parties as to these matters are merged into this Agreement and the Additional Instruments.

27.03. <u>Successors and Assigns; Amendment; Survival</u>.

(a) This Agreement is binding on and inures to the benefit of the Parties and their respective successors, heirs, representatives, and assigns and may be supplemented, altered, amended, modified, or revoked only in writing signed by both Parties. Neither the assignment of this Agreement nor of the Interests or any part of them will relieve Buyer of its obligations under this Agreement unless and to the extent XTO Energy consents in writing to release Buyer, which consent may be withheld for any reason.

(b) All provisions of this Agreement and the Additional Instruments that cannot be performed before Closing and all representations, promises, releases, and indemnities under this Agreement and the Additional Instruments will survive Closing.

(c) The following provisions survive the termination of this Agreement:

(1) Section 5.02 (Access to XTO Energy-Operated Interests);

(2) Section 5.03 (Environmental Assessment), including Exhibit F;

(3) Section 5.07 (Buyer's Confidentiality Obligations);

     (4)     Article 16 (Buyer's Release, Discharge, and Covenant not to Sue and Buyer's Obligations to Indemnify, Defend, and Hold Harmless);

     (5)     Article 17 (Alternate Dispute Resolution and Arbitration);

     (6)     Article 18 (Environmental Matters);

     (7)     Article 19 (Buyer's Representations);

     (8)     Article 22 (Broker's and Finder's Fees);

     (9)     Article 23 (Communications);

     (10)    Article 26 (XTO Energy's Disclaimer of Warranties and Representations); and

     (11)    Article 27 (Miscellaneous).

27.04. <u>Choice of Law</u>. This Agreement and its performance will be construed in accordance with, and enforced under, the internal laws of the State of Texas, without regard to choice of law rules of any jurisdiction, including Texas.

27.05. <u>Assignment</u>. Prior to Closing, neither this Agreement nor the rights and obligations under it may be assigned or delegated by Buyer without ExxonMobil's prior written consent, which consent may be withheld for any reason, and an attempted assignment or delegation is void. After Closing, Buyer shall provide ExxonMobil with prior written notice at the address listed in Article 23 of any assignment of rights and obligations under this Agreement to a transferee of all or any portion of the Interests or Properties; provided, however, no assignment or delegation by Buyer of its rights and obligations under this Agreement shall serve to release Buyer from such rights or obligations in the absence of an express release by ExxonMobil. Buyer shall deliver to ExxonMobil copies of any and all such assignments or delegation agreements within thirty (30) days of execution.

27.06. <u>No Admissions</u>. Neither this Agreement, nor any part of it, nor any performance under this Agreement, nor any payment of any amount under this Agreement will constitute or may be construed as a finding, evidence of, or an admission or acknowledgment of any liability, fault, past or present wrongdoing, or violation of law, rule, regulation, or policy, by either XTO Energy or Buyer or their respective Associated Parties.

27.07. <u>No Third-Party Beneficiaries</u>. There are no third party beneficiaries of this Agreement.

27.08. <u>Public Communications</u>. Unless provided otherwise in this Agreement, Buyer will not make any press release or public communication concerning this transaction (other than as required in a S-1 filing, reasonable advance notice of which will be provided to XTO Energy) or XTO Energy's operation of the Interests without XTO Energy's prior written consent, which consent may be withheld for any reason. Without prejudice to the foregoing, Buyer shall provide

XTO Energy with any proposed press release or public communication ten (10) days prior to its proposed release date. If Buyer is required by law, rule or stock exchange requirement to make a public comment, statement or communication or any other disclosure with respect to this Agreement, it will provide written notice to XTO Energy specifying the content of the proposed disclosure, the reason that such disclosure is required, and the time and place that the disclosure will be made.

27.09. <u>Audit Clause</u>. If XTO Energy will own an interest after Closing in any Interest or Property (including overriding royalties, deep rights, and facilities, equipment, or pipelines) or continue to own interests for which XTO Energy requires access across the Interests or Property in order to exercise its rights, then, XTO Energy will reserve concurrent interests in the applicable easements, rights-of-way, contracts and other rights relating to the retained or reserved interests. XTO Energy reserves the right to perform an audit as stated below one (1) time per calendar year, unless the Parties mutually agree to additional audits to be performed in the same calendar year.

XTO Energy, upon reasonable advance notice in writing to Buyer, shall have the right during normal business hours to access Buyer's offices, facilities, work sites, warehouses, books, records, correspondence, instructions, plans, drawings, receipts, vouchers, financial accounts, data stored in computer files or microfiche and personnel to audit Buyer's accounts and records relating to the retained royalty interest, including any hedge agreements, facilities used for the measurement of production from the properties, for any calendar year within the twenty-four (24) month period following the end of such calendar year. The same audit rights are to extend to subcontractors. Buyer shall maintain supporting data and accounting records consistent with generally accepted accounting principles, and the employees and agents of XTO Energy shall have the right to reproduce and retain for the purpose of audit, any of these documents. XTO Energy shall not be liable for any of Buyer's contractor's or subcontractor's costs resulting from an audit hereunder.

27.10. <u>Headings and Titles</u>. The headings and titles in this Agreement are for guidance and convenience of reference only and do not limit or otherwise affect or interpret the terms or provisions of this Agreement.

27.11. <u>Exhibits</u>. All exhibits referenced in and attached to this Agreement are incorporated into it.

27.12. <u>Includes</u>. The word "includes" and its syntactical variants mean "includes, but is not limited to" and corresponding syntactical variants. The rule *ejusdem generis* may not be invoked to restrict or limit the scope of the general term or phrase followed or preceded by an enumeration of particular examples.

27.13. <u>Severability</u>. If a court of competent jurisdiction finds any part of this Agreement to be void, invalid, or otherwise unenforceable, then XTO Energy may decide whether to enforce this Agreement without the void, invalid, or unenforceable parts or to terminate this Agreement.

27.14. <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, all of which together will be considered one instrument.

27.15. <u>Conflicts</u>. If the text of this Agreement conflicts with the terms of any exhibit to this Agreement, then the text of this Agreement will control. Additionally, if the text of this Agreement conflicts or is inconsistent with the terms of any Additional Instruments, then the text of this Agreement will control.

27.16. <u>Not to Be Construed against the Drafter</u>. Buyer acknowledges that it has read this Agreement, has had opportunity to review it with an attorney of its choice, and has agreed to all of its terms. Under these circumstances, the Parties agree that the rule of construction that a contract be construed against the drafter may not be applied in interpreting this Agreement.

27.17. <u>No Waiver</u>. No waiver by either Party of any part of this Agreement will be deemed to be a waiver of any other part of this Agreement or a waiver of strict performance of the waived part in the future.

27.18. <u>Conspicuousness</u>. **BUYER ACKNOWLEDGES THAT THE PROVISIONS OF THIS AGREEMENT THAT ARE PRINTED IN THE SAME MANNER AS THIS SECTION ARE CONSPICUOUS.**

27.19. <u>Notice of Litigation</u>. XTO Energy is aware that there are litigation matters pending against XTO Energy which may affect the Interests as described on Exhibit J. XTO Energy shall notify Buyer promptly upon receipt of any new litigation matters served upon it between Execution Date and Closing Date which may affect the Interests.

27.20. <u>Authority For Expenditures</u>. Upon receipt by XTO Energy of any authorities for expenditure ("AFE") pertaining to the Interests and Property providing for an amount greater than $50,000.00 net to XTO Energy's interest in the Interests and Property, XTO Energy will use its best efforts to promptly deliver notice of such AFE to Buyer and shall not render any formal decision with respect to the AFE to its sender without first discussing such decision with Buyer; provided, however, in the event of an emergency, XTO Energy shall have the right to take such actions as are reasonably necessary under the circumstances without prior discussion with Buyer if time does not permit such discussions.

27.21. <u>Execution by the Parties</u>. Neither the submission of this instrument or any information concerning the Interests for Buyer's examination, nor discussions or negotiations between the Parties constitutes an offer to sell, a reservation of, or an option for the Interests or Property, and this instrument and the underlying transaction will become enforceable and binding between the Parties only upon execution and delivery of this instrument by both XTO Energy and Buyer.

[The remainder of this page is intentionally left blank.]

The Parties have executed this Agreement on the date below their signatures, to be enforceable and binding as of the Execution Date.

**DYNAMIC OFFSHORE
RESOURCES, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**XTO OFFSHORE INC.**

By: _____

Name: James L. Death

Title: Attorney-in-Fact

Date: July 29, 2011

**HHE ENERGY COMPANY**

By: _____

Name: James L. Death

Title: Attorney-in-Fact

Date: July 29, 2011

**XH, LLC**

By: _____

Name: James L. Death

Title: Attorney-in-Fact

Date: July 29, 2011

52

The Parties have executed this Agreement on the date below their signatures, to be enforceable and binding as of the Execution Date.

**DYNAMIC OFFSHORE**
**RESOURCES, LLC**

By: _____

Name: G. M. McCarroll

Title: President and Chief Executive Officer

Date: 7/29/11

**XTO OFFSHORE INC.**

By: _____

Name: _____

Title: _____

Date: _____

**HHE ENERGY COMPANY**

By: _____

Name: _____

Title: _____

Date: _____

**XH, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**EXHIBIT A**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

**DESCRIPTION OF INTERESTS**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 16240001-00 | **Breton Sound 25 - OCS-G 31442**<br>That portion of Block 25, Breton Sound Area, OCS Leasing Map, Louisiana Map No. 10B, seaward of the 1975 Supreme Court Decree Line specifically described in the OCS Block Diagram attached to the lease instrument | Record Title | 50.00000% | XTO Offshore Inc. |
| 1624-0002-00 | **Breton Sound 25 - LA SL 19718**<br>State Lease No. 19718, recorded in COB 1190, Page 672, File # 2008-00005015, Plaquemines Parish, Louisiana, being a portion of Tract 39932, Plaquemines Parish Louisiana, containing 425.25 acres, more or less. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3147-0002-00 | **Breton Sound 27 - LA SL 4574**<br>State Lease No. 4574, recorded in COB 292, Folio 163, Plaquemines Parish, Louisiana, limited in depth from the surface of the earth to 6,500' subsea and insofar and insofar only as said lease covers and affects those lands included within that certain Voluntary Unit Agreement dated October 19, 2000 created for the S.L. 15958 No. 1 Well covering 687.3 acres for Breton Sound 27 Field. | Leasehold | 50.00000% | XTO Offshore Inc. |

EXHIBIT A

-1-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3147-0001-00 | **Breton Sound 27 - LA SL 15958**<br>State Lease No. 15958, recorded in COB 925, Folio 27, Plaquemines Parish, Louisiana, limited in depth from the surface of the earth to 6,500' subsea and insofar and insofar only as said lease covers and affects those lands included within that certain Voluntary Unit Agreement dated October 19, 2000 created for the S.L. 15958 No. 1 Well covering 687.3 acres for Breton Sound 27 Field. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3148-0001-00 | **Breton Sound 28 - LA SL 1999**<br>State Lease No. 1999, recorded in COB 156, Folio 184, Plaquemines Parish, Louisiana:  (Pt. B) insofar and insofar only as said lease is situated within the boundaries of the unit created for the LLOG Exploration Co. S.L. 1999 #2, designated as the 10,200' RA SUA est. by Order # 255-R, insofar and only insofar as said lease covers and affects rights beginning at a depth of 7,200' subsea TVD down to a depth of 11,100' TVD (being 100' below the total depth drilled), **AND** (Pt. C) insofar and only insofar as said lease covers and affects rights in the stratigraphic equivalent of the electric log depth intervals of 4,928' - 4,966', 5,358' - 5,360' and 5,505' - 5,640' as measured in the LLOG Exploration Offshore, Inc. SL 1999 #4 ST. | Leasehold | 75.00000%<br>100.00000% | Pt. B: XTO Offshore Inc.<br>Pt. C: XTO Offshore Inc. |
| 3148-0003-00 | **Breton Sound 29 - LA SL 2000**<br>State Lease No. 2000, recorded in COB 156, Folio 191, Plaquemines Parish, Louisiana, insofar and insofar only as said lease is situated within the boundaries of the unit created for the LLOG Exploration Co. S.L. 1999 #2, designated as the 10,200' RA SUA est. by Order # 255-R, insofar and only insofar as said lease covers and affects rights beginning at a depth of 7,200' subsea TVD down to a depth of 11,100' TVD (being 100' below the total depth drilled). | Leasehold | 75.00000% | XTO Offshore Inc. |
| 3148-0002-00 | **Breton Sound 36 - LA SL 1230**<br>State Lease No. 1230, recorded in COB 126, Folio 417, Plaquemines Parish, Louisiana, insofar and insofar only as said lease is situated within the boundaries of the unit created for the LLOG Exploration Co. S.L. 1999 #2, designated as the 10,200' RA SUA est. by Order # 255-R, insofar and only insofar as said lease covers and affects rights beginning at a depth of 7,200' subsea TVD down to a depth of 11,100' TVD (being 100' below the total depth drilled). | Leasehold | 75.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-2-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3148-0004-00 | **Breton Sound 37 - LA SL 4409**<br>State Lease No. 4409, recorded in COB 282, Folio 129, Plaquemines Parish, Louisiana, insofar and insofar only as said lease is situated within the boundaries of the unit created for the LLOG Exploration Co. S.L. 1999 #2, designated as the 10,200' RA SUA est. by Order # 255-R, insofar and only insofar as said lease covers and affects rights beginning at a depth of 7,200' subsea TVD down to a depth of 11,100' TVD (being 100' below the total depth drilled). | Leasehold | 75.00000% | XTO Offshore Inc. |
| 3372-0001-00 | **Breton Sound 44 - LA SL 16736**<br>State Lease No. 16736, recorded in COB 978, Folio 422, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3372-0004-00 | **Breton Sound 45 - LA SL 16735**<br>State Lease No. 16735, recorded in COB 978, Folio 405, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3372-0006-00 | **Breton Sound 45 - LA SL 15683**<br>State Lease No. 15683, recorded in COB 893, Folio 225, Plaquemines Parish, Louisiana: (Pt. C) insofar and only insofar as said lease covers and effects interests below the depth of 10,000' subsea and less and except all rights to the UV3-B interval, being the stratigraphic equivalent of the interval encountered between the measured depths of 10,860' and 10,950' in the Phasor Induction/Sonic/GR log in the Century (Tenneco) SL 12806 # 1 Well located in Breton Sound Block 52, and limited to that area included within the geographical boundaries of the UV B RA VUA and the TEX W RA, comprising 232.41 acres, **AND** (Pt. D) that part of SL 15683 comprising 46.82 acres within the boundary of the UV B RA VUA from the depths between 10,596' MD and 10,822' MD | Leasehold | 50.00000%<br>37.50000% | Pt. C: XTO Offshore Inc.<br>Pt. D: XTO Offshore Inc. |

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3470-0003-00 | **Breton Sound 45 - LA SL 17942**<br>State Lease 17942, recorded in COB 1061, Folio 29, Plaquemines Parish, Louisiana, insofar and only insofar as said lease covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well. | Leasehold | 37.50000% | XTO Offshore Inc. |
| 3470-0001-00 | **Breton Sound 45 - LA SL 17674**<br>State Lease No. 17674, recorded in COB 1038, Folio 330, Plaquemines Parish, Louisiana, insofar and only insofar as said lease covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well. | Leasehold | 37.50000% | XTO Offshore Inc. |
| 3470-0002-00 | **Breton Sound 52 - LA SL 17675**<br>State Lease No. 17675, recorded in COB 1038, Folio 318, Plaquemines Parish, Louisiana, insofar and only insofar as said lease covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well. | Leasehold | 37.50000% | XTO Offshore Inc. |
| 3372-0005-00 | **Breton Sound 52 - LA SL 12806**<br>State Lease No. 12806, recorded in COB 670, Folio 207, Plaquemines Parish, Louisiana: (Pt. D) less and except all rights to the UV3-B interval defined as being the stratigraphic equivalent of the interval encountered between the measured depths of 10,860' and 10,950' in the Phasor Induction/Sonic/GR log in the Century (Tenneco) SL 12806 #1 Well located in Breton Sound Block 52, **AND** (Pt. E) insofar and only insofar as SL 12806 falls within the boundaries of that certain Voluntary Unit known as the UV B RA SUA operated by Century Exploration New Orleans, Inc., covering 1113.02 acres and insofar only as SL 12806 covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well | Leasehold | 50.00000%<br>37.50000% | Pt. D: XTO Offshore Inc.<br>Pt. E: XTO Offshore Inc. |
| 3372-0003-00 | **Breton Sound 52 - LA SL 16737**<br>State Lease No. 16737, recorded in COB 978, Folio 439, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-4-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3149-0001-00 | **Breton Sound 53 - LA SL 3770**<br>State Lease No. 3770, recorded in COB 239, Folio 675, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers depths from the surface down to a subsurface depth of 10,800'. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3372-0002-00 | **Breton Sound 53 - LA SL 16738**<br>State Lease No. 16738, recorded in COB 978. Folio 456, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3203-0001-00 | **East Cameron 9 & 14 - OCS-G 1440**<br>SE/4; E/2SW/4 of Block 9, East Cameron Area, and E/2NW/4;NE/4 of Block 14, East Cameron Area | Record Title | 50.00000% | XH, LLC |
| 3076-0001-00 | **East Cameron 178 - OCS-G 27834**<br>All of Block 178, East Cameron Area | Record Title | 60.00000% | XTO Offshore Inc. |
| 1634-0001-00 | **Eugene Island 226, OCS-G 33094**<br>All of Block 226, Eugene Island Area | Record Title | 100.00000% | XTO Offshore Inc. |
| | **Eugene Island 273 Reservoir Unit (0'-4900' Sand) Federal Unit 891012338**<br>Comprised of portions of Eugene Island 272, 273, 284 and 285 | Federal Unit | 10.96445% | XTO Offshore Inc. |
| 3215-0001-00 | **Eugene Island 272 - OCS-G 0986**<br>All of Block 272, Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | E/2/SE/4; SW/4SE/4; E/2NW/4SE/4; SW/4NW/4SE/4; E/2SE/4SW/4; SE/4SW/4NE/4; SW/4/NE/4NE/4; SE/4NE/4; SE/4NE/4NE/4 of Block 272, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR as said lease covers operating rights from the surface to the base of the 4900-B Sand, the base of which sand is identified on the IES Log of the Amoco Production Company, et al, Block 273 Well No. 1 at a depth of 4,896' MD (4,859' subsea) | Operating Rights | 30.00000% | XTO Offshore Inc. |
| 3216-0001-00 | **Eugene Island 284 - OCS-G 0991** NE/4; SE/4; E/2SE/4NW/4; E/2SW/4; SW/4SW/4; SE/4NW/4SW/4; SE/4NE/4NW/4 of Block 284, Eugene Island Area, South Addition | Record Title 1: | 15.00000% | XTO Offshore Inc. |
| | NE/4NE/4NW/4; W/2E/2NW/4; W/2NW/4; N/2NW/4SW/4; SW/4NW/4SW/4 of Block 284, Eugene Island Area, South Addition | Record Title 2: | 30.00000% | XTO Offshore Inc. |
| | W/2NW/4; W/2SE/4NW/4; W/2NE/4NW/4; NE/4NE/4NW/4; W/2NW/4SW/4;NE/4NW/4SW/4 of Block 284, Eugene Island Area, South Addition, from the surface to the base of the 4900-B Sand, the base of which Sand is identified on the IES Log of the Amoco Production Company, et al, Block 273 Well No. 1 at a depth of 4896' MD (4859' subsea) | Operating Rights 1: | 30.00000% | XTO Offshore Inc. |
| | NE/4NE/4NW/4; W/2E/2NW/4; W/2NW/4; N/2NW/4SW/4; SW/4NW/4SW/4 of Block 284, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR as said lease covers operating rights in depths below the base of the 4900-B Sand, the base of which is identified on the IES log of the Amoco Production Company, et al, Block 273 Well No. 1 at a depth of 4896' MD (4859' subsea) | Operating Rights 2: | 15.00000% | XTO Offshore Inc. |
| | **EI 292 Field Unit Federal Unit #891008764** Comprised of portions of Eugene Island 286, 292, 293, 308, 309 | Federal Unit | 29.87349% | XTO Offshore Inc. |
| 3217-0001-00 | **Eugene Island 286, OCS-G 0993** All of Block 286, Eugene Island Area, South Addition | Record Title | 45.00000% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | N/2 of Block 286, Eugene Island Area, South Addition, from the surface of the earth to the stratigraphic equivalent of 6,611 feet subsea (which represents a depth of 100 feet below the depth of 6,511 feet subsea, as encountered at a total depth in the Hall-Houston Oil Company OCS-G 0993 Well No. 6 ST No. 1. | Operating Rights | 45.00000% | XTO Offshore Inc. |
| 3218-0001-00 | **Eugene Island 292, OCS-G 0994**<br>All of Block 292, Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3219-0001-00 | **Eugene Island 293, OCS-G 0995**<br>All of Block 293 Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| | N/2N/2 of Block 293, Eugene Island Area, South Addition, from the surface to 5,505' TVD | Operating Rights 1: | 100.00000% | XTO Offshore Inc. |
| | NE/4SW/4; NW/4SE/4; SE/4NW/4 of Block 293, Eugene Island Area, South Addition from the surface to 5,995' TVD | Operating Rights 2: | 100.00000% | XTO Offshore Inc. |
| 3220-0001-00 | **Eugene Island 308, OCS-G 0996**<br>All of Block 308, Eugene Island Area, South Addition | Record Title | 12.00000% | XTO Offshore Inc. |
| | N/2NW/4NW/4; SW/4NW/4SW/4; W/2SW/4SW/4 of Block 308, Eugene Island Area, South Addition | Operating Rights | 30.00000% | XTO Offshore Inc. |
| | All of Block 308, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR AS to operating rights as to the C-1 Sand, identified as that sand found in the interval in the Forest Oil Corporation Unit No. 1 Well, 3,985 feet to 4,125 feet (both measured depths), and any extension of said sand found on OCS-G 0996 and OCS-G 1982 | Operating Rights | 30.00000% | XTO Offshore Inc. |

**EXHIBIT A**                                                                   -7-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | SE/4SE/4NE/4; E/2E/2SE/4 of Block 308, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR AS to operating rights from the surface down to a depth which is the stratigraphic equivalent of the measured depth of 6,050 feet found in the No. 2 OCS-G 0996 Well | Operating Rights | 30.00000% | XTO Offshore Inc. |
| 3221-0001-00 | **Eugene Island 309, OCS-G 0997** All of Block 309, Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| | SW/4 of Block 309, Eugene Island Area, South Addition INSOFAR AND ONLY INSOFAR as to depths from the surface of the earth down to and including, but not below, a total depth of 7,014' TVD (identified as the total depth of the Columbia Gas Development Corporation OCS-G 1981 J-1 S/T #1 - being 7,014' TVD /8,385' MD) | Operating Rights | 37.50000% | XTO Offshore Inc. |
| 3077-0001-00 | **Eugene Island 311 - OCS-G 27918** All of Block 311, Eugene Island Area, South Addition | Record Title | 60.00000% | XTO Offshore Inc. |
| 3212-0001-00 | **Eugene Island 312 - OCS-G 22679** E/2NW/4 & W/2NE/4 of Block 312, Eugene Island Area, South Addition, from 0 to 9,000' TVD | Operating Rights | 60.00000% | XTO Offshore Inc. |
| 3214-0001-00 | **Eugene Island 313 - OCS-G 2608** NE/4 of Block 313, Eugene Island Area, South Addition, from the sub-surface of the ground down to and including 100' below the stratigraphic equivalent of the true vertical depth of 8,320 feet subsea as encountered in the Aviara Energy Corporation OCS-G 2608 No. J-4 Well | Operating Rights | 25.00000% | XTO Offshore Inc. |
| 3264-0001-00 | **High Island 34, OCS-G 20655** All of Block 34, High Island Area | Record Title | 45.00000% | XTO Offshore Inc. |
| 3261-0001-00 | **High Island A-376 - OCS-G 2754** All of Block A-376, High Island Area, East Addition, South Extension | Record Title | 12.50000% | XTO Offshore Inc. |

**EXHIBIT A**

-8-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3265-0001-00 | **High Island A-554, OCS-G 21356**<br>All of Block A-554, High Island Area, South Addition | Record Title | 25.00000% | XTO Offshore Inc. |
| 3074-0001-00 | **Main Pass 29, OCS-G 27196**<br>All of Block 29, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 1625-0001-00 | **Main Pass 87- OCS-G 31433**<br>All of Block 87, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3329-0001-00 | **Main Pass 94 - OCS-G 7802**<br>SE/4 of Block 94, Main Pass Area, as to those depths from the surface of the earth down to 9,414' MD / 5,666' TVD | Operating Rights | 20.85200%<br>5.88133% | XTO Offshore Inc.<br>HHE Energy Company |
| 1625-0002-00 | **Main Pass 96- OCS-G 31434**<br>All of Block 96, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3318-0001-00 | **Main Pass 101 - OCS-G 22792**<br>All of Block 101, Main Pass Area | Record Title | 60.45000%<br>17.05000% | XTO Offshore Inc.<br>HHE Energy Company |
|  | N/2N/2NE/4 of Block 101, Main Pass Area, limited to those depths from the surface of the earth down to a depth equal to the stratigraphic equivalent of the total depth drilled in the Main Pass Block 101 Well No. 7, being 5,434 feet True Vertical Depth | Operating Rights | 58.50000%<br>16.50000% | XTO Offshore Inc.<br>HHE Energy Company |
| 3322-0001-00 | **Main Pass 109 - OCS-G 22794**<br>SW/4NW/4, NW/4SE/4NW/4, SW/4NE/4NW/4 of Block 109, Main Pass Area, from the surface of the earth down to a depth of 100' below the stratigraphic equivalent of a true vertical depth of 4,622 feet as measured in the LLOG Exploration Offshore, Inc. OCS-G 22794 No. 1 Well | Operating Rights | 25.99740%<br>7.33260% | XTO Offshore Inc.<br>HHE Energy Company |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | N/2NE/4, NW/4SW/4NE/4, NE/4SE/4NW/4, SE/4NE/4NW/4 of Block 109, Main Pass Area, from the surface of the earth down to a depth of 100' below the stratigraphic equivalent of a true vertical depth of 9,937 feet as measured in the LLOG Exploration Offshore, Inc. OCS-G 22794 No. 2 Well (currently named the #D-1 Well) | Operating Rights | 25.99740% 7.33260% | XTO Offshore Inc. HHE Energy Company |
| 3325-0001-00 | **Main Pass 112 - OCS-G 9707** All of Block 112, Main Pass Area | Record Title | 100.00000% | XTO Offshore Inc. |
| 3072-0001-00 | **Main Pass 114, OCS-G 27201** All of Block 114, Main Pass Area | Record Title | 100.00000% | XTO Offshore Inc. |
| 3326-0001-00 | **Main Pass 116 - OCS-G 3419** All of Block 116, Main Pass Area | Record Title | 100.00000% | XTO Offshore Inc. |
| 3331-0001-00 | **Main Pass 118, OCS-G 22797** S/2 of Block 118, Main Pass Area, from the surface down to 20,000 feet true vertical depth subsea **\*This interest is subject to Consent from Shell Offshore Inc. pursuant to that certain Farmout Agreement dated effective July 1, 2005** | Operating Rights | 83.33333%* | XTO Offshore Inc. |
| 1626-0001-00 | **Main Pass 119, OCS-G 31438** All of Block 119, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3061-0001-00 | **Main Pass 125, OCS-G 25019** All of Block 125, Main Pass Area | Record Title | 62.50000% | XTO Offshore Inc. |
| 3561-0001-00 | **Main Pass 179, OCS-G 33127** All of Block 179, Main Pass Area, South and East Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| 3422-0001-00 | **Ship Shoal 79 - OCS-G 15277** All of Block 79, Ship Shoal Area, INSOFAR AND ONLY INSOFAR as the Lease covers from the surface to one hundred feet below the stratigraphic equivalent of 11,318' true vertical depth as seen in the electric log dated March 7, 2001 for the OCS-G 15277 Well No. 2 | Operating Rights | 35.10000% 9.90000% | XTO Offshore Inc. HHE Energy Company |

**EXHIBIT A**

-10-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3423-0001-00 | **Ship Shoal 188 - OCS-G 22712**<br>All of Block 188, Ship Shoal Area | Record Title | 100.00000% | XTO Offshore Inc. |
| | All of Block 188, Ship Shoal Area, INSOFAR AND ONLY INSOFAR as to depths from the surface of the earth down to 17,000 feet subsea | Operating Rights | 75.00000% | XTO Offshore Inc. |
| | XTO Offshore Inc. and its Affiliates reserve and exclude all rights they have under that certain Lease Purchase Agreement dated effective January 22, 2002, by and between EEX Corporation ("EEX") and Aviara Energy Corporation ("Aviara"), as amended April 1, 2005, by and between Newfield Exploration Gulf Coast, Inc. and Hunt Petroleum (AEC), Inc., as such agreements pertain to all depths from 17,000 feet to 100,000 feet subsea and expressly reserve and exclude the 5% of 8/8ths overriding royalty interest reserved by Aviara in that certain Assignment of Operating Rights dated effective January 22, 2002, by and between Aviara and EEX. | | | |
| 3416-0001-00 | **Ship Shoal 204, OCS-G 1520**<br>All of Block 204, Ship Shoal Area | Record Title | 5.60514% | XH, LLC |
| 3418-0001-00 | **Ship Shoal 207, OCS-G 1523**<br>All of Block 207, Ship Shoal Area | Record Title | 6.18214% | XH, LLC |
| | All of Block 207, Ship Shoal area, INSOFAR AND ONLY INSOFAR, as it pertains to all rights below 15,000' down to 99,999' TVD | Operating Rights | 6.18214% | XH, LLC |
| | **Ship Shoal 207 Field Unit (C-6/JS Sand) Federal Unit 891020231**<br>A Unit Area comprised of portions of OCS-G 1522 covering Ship Shoal Block 206 and OCS-G 1523 covering Ship Shoal Block 207 as to the Unitized Reservoir described as the C-6/JS Sand Reservoir, found in the dual induction electrical log of the OCS-G 1523 Well A-1 between the measured depths of 10,615' and 10,793'. | Federal Unit | 6.08364% | XH, LLC |

**EXHIBIT A**

-11-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3419-0001-00 | **Ship Shoal 216, OCS-G 1524**<br>All of Block 216, Ship Shoal Area | Record Title | 5.77000% | XH, LLC |
| | **Ship Shoal 271 Field Unit Federal Unit #891008784**<br>Comprised of portions of Ship Shoal 247, 248, 249, 270, 271 | Federal Unit | 34.27967% | XTO Offshore Inc. |
| 3424-0001-00 | **Ship Shoal 247, OCS-G 1028**<br>N/2 of Block 247, Ship Shoal Area, South Addition | Record Title | 36.66670% | XTO Offshore Inc. |
| | SW/4 of Block 247, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| | SE/4 of Block 247, Ship Shoal Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3425-0001-00 | **Ship Shoal 248, OCS-G 1029**<br>NW/4; S/2 of Block 248, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| | NE/4 of Block 248, Ship Shoal Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3426-0001-00 | **Ship Shoal 249, OCS-G 1030**<br>All of Block 249, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| | NE/4; S/2 of Block 249, Ship Shoal Area, South Addition only as to those depths above the stratigraphic equivalent of 15,108 feet as identified on the electric log for the OCS-G 1030, well No. D-2. | Operating Rights | 12.00000% | XTO Offshore Inc. |
| | NW/4 of Block 249, Ship Shoal Area, South Addition only as to those depths above the stratigraphic equivalent of 15,108 feet as identified on the electric log for the OCS-G 1030, well No. D-2. | Operating Rights | 12.00000% | XTO Offshore Inc. |
| 3427-0001-00 | **Ship Shoal 270, OCS-G 1037**<br>All of Block 270, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |

**EXHIBIT A** -12-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3428-0001-00 | **Ship Shoal 271, OCS-G 1038**<br>All of Block 271, Ship Shoal Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3421-0001-00 | **Ship Shoal 291, OCS-G 2923**<br>N/2NW/4; SW/4NW/4; NW/4SE/4NW4 of Block 291, Ship Shoal Area, South Addition, INSOFAR, as it pertains to all rights and horizons from the surface down to and including 100' below the stratigraphic equivalent of 6110 feet subsea as drilled and logged in the Hall-Houston Oil Company OCS-G 2923 No. 4 Well (currently named the B-1 Well). | Operating Rights | 7.01463%<br>2.10000% | XH, LLC<br>HHE Energy Company |
| 3445-0001-00 | **South Marsh Island 40, OCS-G 13607**<br>All of Block 40, South Marsh Island Area | Record Title | 89.00000%<br>11.00000% | XTO Offshore Inc.<br>HHE Energy Company |
| 3446-0001-00 | **South Marsh Island 41, OCS-G 1192**<br>E/2 of Block 41, South Marsh Island Area, INSOFAR AND ONLY INSOFAR as to depths from surface of the earth down to 11,500 feet TVD | Operating Rights | 89.00000%<br>11.00000% | XTO Offshore Inc.<br>HHE Energy Company |
| 3447-0001-00 | **South Marsh Island 44, OCS-G 23840**<br>All of Block 44, South Marsh Island Area, from surface down to a depth of 15,500' TVD | Operating Rights | 50.00000% | XTO Offshore Inc. |
| 3080-0001-00 | **South Marsh Island 45, OCS-G 31353**<br>All of Block 45, South Marsh Island Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3435-0001-00 | **South Marsh Island 109, OCS-G 24873**<br>All of Block 109, South Marsh Island Area, South Addition | Record Title | 54.16667% | XTO Offshore Inc. |
| 1383-0003-00 | **South Marsh Island 138, OCS-G 33616**<br>All of Block 138, South Marsh Island Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-13-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3437-0001-00 | **South Marsh Island Block 139, OCS-G 21106** <br> SW/4SW/4 and S/2NW/4SW/4 of Block 139 South Marsh Island Area, South Addition, as to depths from below 6,000' TVD subsea to and including 9,830' TVD, being 100' below the stratigraphic equivalent of the total depth drilled in the Hunt Petroleum (AEC), Inc. OCS-G 21106 No. B-2 ST00 BP01 Well | Operating Rights | 75.00000% | XTO Offshore Inc. |
| 3439-0001-00 | **South Marsh Island Block 146 , OCS-G 9546** <br> NW/4NW/4 and NW/4NE/4NW/4 of Block 146, South Marsh Island Area, South Addition, as to depths from 6,000' TVD subsea down to and including 9,830' TVD being 100' below the stratigraphic equivalent of the total depth drilled (9730' TVD) in the Hunt Petroleum (AEC), Inc. OCS-G 21106 (South Marsh Island Block 139) No. B-2 ST00 BP01 Well. | Operating Rights | 75.00000% | XTO Offshore Inc. |
| 3438-0001-00 | **South Marsh Island 142, OCS-G 1216** <br> All of Block 142, South Marsh Island Area, South Addition | Record Title | 55.00000% | XTO Offshore Inc. |
| | S/2SE/4; E/2S/2SW/4 of Block 142, South Marsh Island Area, South Addition | Operating Rights | 55.00000% | XTO Offshore Inc. |
| 3443-0001-00 | **South Marsh Island 269, OCS-G 2311** <br> All of Block 269, South Marsh Island Area, North Addition | Record Title | 9.06733% | XH, LLC |
| 3444-0001-00 | **South Marsh Island 281, OCS-G 2600** <br> All of Block 281, South Marsh Island Area, North Addition | Record Title | 10.47658% | XH, LLC |
| 3451-0001-00 | **South Pass 42 - LA SL 16869** <br> State Lease No. 16869, recorded in COB 995, Folio 683, Plaquemines Parish, Louisiana, INSOFAR ONLY as said lease covers land lying INSIDE the geographic boundaries of that certain Voluntary Unit designated as the **04 RA VUA Unit**, established by that certain Voluntary Unit Agreement dated October 19, 2005, recorded in Book 1137, Page 493, File No. 2007-00001208 of the Conveyance Records of Plaquemines Parish, Louisiana | Leasehold | 75.00000% | XTO Offshore Inc. |

EXHIBIT A                                         -14-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3451-0007-00 | **South Pass 43 - LA SL 16870** State Lease No. 16870, recorded in COB 992, Folio 8, Plaquemines Parish, Louisiana, INSOFAR ONLY as said lease covers land lying INSIDE the geographic boundaries of that certain Voluntary Unit designated as the **04 RA VUA Unit**, established by that certain Voluntary Unit Agreement dated October 19, 2005, recorded in Book 1137, Page 493, File No. 2007-00001208 of the Conveyance Records of Plaquemines Parish, Louisiana | Leasehold | 75.00000% | XTO Offshore Inc. |
| 3451-0006-00 | **South Pass 43, OCS-G 22781** That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument. | Record Title | 9.75000% 2.75000% | XTO Offshore Inc. HHE Energy Company |
| | That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument INSOFAR AND ONLY INSOFAR as it covers depths from the surface of the earth to the base of the "O" Sand Series defined as the stratigraphic equivalent of a measured depth of 12,030 feet as seen on the Induction Electric Log for the Shell Oil Company, State Lease 2554 No. 10 Well. | Operating Rights | 58.50000% 16.50000 | XTO Offshore Inc. HHE Energy Company |
| | That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument INSOFAR AND ONLY INSOFAR as it covers depths from below the base of the "O" Sand Series to 30,000 feet | Operating Rights | 19.50000% 5.50000% | XTO Offshore Inc. HHE Energy Company |
| 3531-0001-00 | **Vermilion 313 OCS-G 1172** All of Block 313, Vermilion Area, South Addition | Record Title | 50.00000% | XTO Offshore Inc. |
| | SE/4 of Block 313, Vermilion Area, South Addition, INSOFAR AND ONLY INSOFAR as the operating rights cover from the surface of the earth down to and including, but not below, a total depth of 9,000' TVD | Operating Rights 1 | 50.00000% | XTO Offshore Inc. |

EXHIBIT A

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | N/2; SW/4 of Block 313, Vermilion Area, South Addition, INSOFAR AND ONLY INSOFAR as the operating rights cover from the surface of the earth down to and including, but not below, a total depth of 9,000' TVD | Operating Rights 2 | 50.00000% | XTO Offshore Inc. |
| 3567-0001-00 | **Vermilion 264, OCS-G 33603**<br>All of Block 264, Vermilion Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| | **West Cameron Block 507 Field Unit Federal Unit #754394008**<br>Comprised of portions of West Cameron 485 & 507 | Federal Unit | 100.00000% | XTO Offshore Inc. |
| 3163-0001-00 | **West Cameron 485, OCS-G 2220**<br>All of Block 485, West Cameron Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| 3165-0001-00 | **West Cameron 507 (S/2), OCS-G 10594**<br>S/2 of Block 507, West Cameron Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| | SW/4SE/4; E/2SE/4; S/2NW/4SE/4; NE/4NW/4SE/4 of Block 507, West Cameron Area, South Addition, from the surface of the earth down to and including 100' below the stratigraphic equivalent of the true vertical depth of 10,798' as encountered in the Newfield Exploration Company, OCS-G 2549 No. C-1 (formerly No. 2) Well | Operating Rights | 50.00000% | XTO Offshore Inc. |
| 3164-0001-00 | **West Cameron 507 (N/2), OCS-G 2549**<br>N/2 of Block 507, West Cameron Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| | E/2NE/4; SE/4SW/4NE/4 of Block 507, West Cameron Area, South Addition, from the surface of the earth down to and including 100' below the stratigraphic equivalent of the true vertical depth of 10,798' as encountered in the Newfield Exploration Company OCS-G 2549 No. C-1 (formerly No. 2) Well. | Operating Rights | 50.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-16-

**EXHIBIT A-1**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

<u>**CONTRACTS**</u>

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0283698 | Breton Sound Area | 25 | SL 19718 | Lease | July 9, 2008 | State of Louisiana | Robert A. Schreider, Inc. | 9-Jul-08 |
| 0283658 | Breton Sound Area | 25 | 31442 | Lease | February 1, 2008 | United States of America | LLOG Exploration Offshore, Inc. | 1-Mar-09 |
| 0297856 | Breton Sound Area | 25 | SL 19718 & 31442 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc. | LLOG Exploration Offshore, Inc. et al | 1-Mar-09 |
| 0297980 | Breton Sound Area | 25 | SL 19718 & 31442 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc. et al | XTO Offshore Inc. | 1-Feb-08 |
| | | | | | | | | |
| | | | | | | | | |
| 0276211 | Breton Sound | 36 | SL 1230 | Lease | June 16, 1947 | State of Louisiana | Barnsdall Oil Company, et al | |
| 0276210 | Breton Sound | 28 | SL 1999 | Lease | August 8, 1951 | State of Louisiana | Kerr-McGee Oil Industries, Inc. | |

**EXHIBIT A-1**                                              -17-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276212 | Breton Sound | 29 | SL 2000 | Lease | August 8, 1951 | State of Louisiana | Kerr-McGee Oil Industries, Inc. | |
| 0276213 | Breton Sound | 37 | SL 4409 | Lease | October 22, 1964 | State of Louisiana | Sunray DX Oil Company | |
| 0276208 | Breton Sound | 27 | SL 4574 | Lease | August 16, 1965 | State of Louisiana | Kerr-McGee Oil Industries, Inc., et al | |
| 0276207 | Breton Sound | 27 | SL 15958 | Lease | January 14, 1998 | State of Louisiana | Kerr-McGee Oil & Gas Corp. | |
| 0295071 | Breton Sound | 27 | SL 4574 & 15958 | Participation Agreement, as amended | April 1, 2000 | Kerr-McGee Oil & Gas Corp. | LLOG Exploration Offshore, Inc. | |
| 0295072 | Breton Sound | 27 | SL 4574 & 15958 | Operating Agreement | June 26, 2000 | Kerr-McGee Oil & Gas Corp. | LLOG Exploration Offshore, Inc. | |
| 0418833 | Breton Sound | 27 | SL 4574 & 15958 | Voluntary Unit Agreement | October 19, 2000 | The State Mineral Board | Kerr-McGee Oil & Gas Corp., et al | Voluntary Unit Agreement |
| 0295077 | Breton Sound | 27, 28, 29, 36 & 37 | SL 4574, 1999, 2000, 1230 & 4409 | Farmout Agreement | September 5, 2002 | Kerr-McGee Oil & Gas Corp. | LLOG Exploration Offshore, Inc. | |
| 0295077 | Breton Sound | 28, 29, 36 & 37 | SL 1999, 2000, 1230 & 4409 | Operating Agreement | March 19, 2003 | Kerr-McGee Oil & Gas Corp. | LLOG Exploration Offshore, Inc. | 10,200' RA SUA; SL 1999 #2 |
| 0419405 | Breton Sound | 28, 29, 36 & 37 | SL 1999, 2000, 1230 & 4409 | Office of Conservation Order No. 255-R | November 4, 2003 | Louisiana Office of Conservation | | Order No. 255-R, 10,200' RA SUA |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417942 | Breton Sound | 27, 28, 29, 36 & 37 | SL 4574, 15958, 1999, 2000, 1230 & 4409 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| | | | | | | | | |
| | | | | | | | | |
| 0276214 | Breton Sound | 53 | SL 3770 | Lease | April 26, 1961 | State of Louisiana | Union Oil Company of California | |
| 0276222 | Breton Sound | 52 | SL 12806 | Lease | July 13, 1987 | State of Louisiana | Tenneco Oil Company | |
| 0276214 | Breton Sound | 53 | SL 3770 | Partial Assignment | May 1, 1994 | Union Oil Company of California | Badger Oil Corporation | Consent to Assign; Mariner Energy Resources, Inc. |
| 0276223 | Breton Sound | 45 | SL 15683 | Lease | April 14, 1997 | State of Louisiana | Stephen M. Jenkins & Associates, Inc. | |
| 0276218 | Breton Sound | 44 | SL 16736 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |
| 0276221 | Breton Sound | 45 | SL 16735 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |
| 0276220 | Breton Sound | 52 | SL 16737 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |
| 0276219 | Breton Sound | 53 | SL 16738 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295080 | Breton Sound | 44, 45, 52, 53 | SL 3770, 12806, 15683, 16735, 16736, 16737 & 16738 | Operating Agreement, as amended | January 15, 2001 | LLOG Exploration & Production Company | Century Exploration New Orleans, Inc. | |
| 0342454 | Breton Sound | 45 & 53 | SL 3770 & 15683 | Production Handling Agreement, as amended | December 1, 2001 | LLOG Exploration & Production Company | Century Exploration Company | |
| 0276227 | Breton Sound | 45 | SL 17674 | Lease | December 16, 2002 | State of Louisiana | Century Exploration Company | |
| 0276228 | Breton Sound | 52 | SL 17675 | Lease | December 16, 2002 | State of Louisiana | Century Exploration Company | |
| 0295082 | Breton Sound | 45 & 52 | SL 12806, 15683, 17674, 17675 & 17942 | Operating Agreement | March 27, 2003 | Century Exploration New Orleans, Inc. | LLOG Exploration & Production Company | |
| 0295081 | Breton Sound | 44, 45, 52, 53 | SL 12806, 15683, 16735, 16736, 16737 & 16738 | TEX W RA SUA Unit Agreement | June 16, 2003 | Louisiana Office of Conservation | LLOG Exploration Company, LLC | TEX W RA SUA; Order No. 1245-B |
| 0295079 | Breton Sound | 45 & 52 | SL 12806, 15683, 17674, 17675 & 17942 | UV B RA Voluntary Unit Agreement | August 14, 2003 | The State Mineral Board | Century Exploration Company, et al | UV B RA VUA; SL 17675 No. 1 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0314460 | Breton Sound | 52 & 53 | SL 3770 & 12806 | Production Handling Agreement | August 19, 2003 | Palace Operating Company | LLOG Exploration & Production Company, et al | |
| 0276229 | Breton Sound | 45 | SL 17942 | Lease | November 17, 2003 | State of Louisiana | Cypress Exploration Company | |
| 0417942 | Breton Sound | 44, 45, 52, 53 | SL 3770, 12806, 15683, 16735, 16736, 16737, 16738, 17942, 17674, 17675 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0295083 | Breton Sound | 52 | SL 17675 | Production Handling Agreement | May 15, 2004 | Century Exploration New Orleans, Inc., et al | Century Exploration New Orleans, Inc. | UV B RA VUA; SL 17675 No. 1 Well Production |
| 0361567 | Breton Sound | 45 | SL 15683 | Farmout Agreement, as amended | November 1, 2010 | XTO Offshore, Inc. | Century Exploration New Orleans, Inc. | Century SL 19051 #1; Virgo N. Prospect |
| 0365804 | Breton Sound | 45 | SL 15683 | Order No. 1245-B | January 12, 2011 | The State Mineral and Energy Board | | BS 53 3-B RA VUA; SL 19051 #1 |
| | | | | | | | | |
| | | | | | | | | |
| 0253897 | East Cameron Area | 9&14 | 1440 | Lease | April 1, 1966 | United States of America | Pan American Petroleum Corp., et al | (9&14) April 1, 1966 |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0253895 | East Cameron Area | 9&14 | 1440 | Operating Agreement, as amended | April 1, 1966 | Pan American Petroleum Corporation | Mobil Oil Corporation | 1-Apr-66 |
| | | | | | | | | |
| | | | | | | | | |
| 0278039 | East Cameron Area | 178 | 27834 | Lease | July 1, 2006 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-06 |
| 0295297 | East Cameron Area | 178 | 27834 | Operating Agreement | February 1, 2008 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | February 1, 2008 Nippon |
| 0295296 | East Cameron Area | 178 | 27834 | Participation Agreement | February 1, 2008 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | February 1, 2008 Nippon |
| 0295295 | East Cameron Area | 178 | 28533 | Right-Of-Way | October 7, 2008 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 28533, Segment 17688 |
| | | | | | | | | |
| | | | | | | | | |
| 0297145 | Eugene Island Area | 226 | 33094 | Lease | July 1, 2009 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-09 |
| 0340710 | Eugene Island Area | 226 | 33094 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward |
| | | | | | | | | |

**EXHIBIT A-1**                                                                 -22-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0265425 | Eugene Island Area, South Addition | 272 | 986 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294344 | Eugene Island Area, South Addition | 272 | 986 | Unit Operating Agreement | February 13, 1970 | Forest Oil Corporation | Cabot Corporation, et al | 13-Feb-70 |
| 0417927 | Eugene Island Area, South Addition | 272 | 986 | Unit Agreement #14-08-0001-12338 | December 1, 1972 | Forest Oil Corporation | Amoco Production Company, et al | #14-08-0001-12338 Dtd. December 1, 1972 |
| 0294344 | Eugene Island Area, South Addition | 272 | 986 | Gas Balancing & Storage Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | (GBA) |
| | | | | | | | | |
| | | | | | | | | |
| 0265426 | Eugene Island Area, South Addition | 284 | 991 | Lease | June 1,1962 | United States of America | Forest Oil Corporation | June 1,1962 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294344 | Eugene Island Area, South Addition | 284 | 991 | Unit Operating Agreement | February 13, 1970 | Forest Oil Corporation | Cabot Corporation, et al | (See EI 272 File) |
| 0417927 | Eugene Island Area, South Addition | 284 | 991 | Unit Agreement #14-08-0001-12338 | December 1, 1972 | Forest Oil Corporation | Amoco Production Company, et al | (See EI 272 File) |
| 0294344 | Eugene Island Area, South Addition | 284 | 991 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | (See EI 272 File) |
| | | | | | | | | |
| | | | | | | | | |
| 0265419 | Eugene Island Area, South Addition | 286 | 993 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294315 | Eugene Island Area, South Addition | 286 | 993 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294314 | Eugene Island Area, South Addition | 286 | 993 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | |
| 0417934 | Eugene Island Area, South Addition | 286 | 993 | Unit Agreement EI 287 "D" Platform WI Unit | December 29, 1977 | Forest Oil Corporation | Columbia Gas Development Corporation | EI 287 "D" Platform WI Unit |
| 0294314 | Eugene Island Area, South Addition | 286 | 993 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| 0418812 | Eugene Island Area, South Addition | 286 | 993 | Operating Agreement | April 28, 1995 | Hall-Houston Oil Company | Columbia Gas Development Corporation | (N/2) April 28, 1995 |
| 0294321 | Eugene Island Area, South Addition | 286 | 993 | Participation Agreement, as amended | April 28, 1995 | Columbia Gas Development Corporation | Hall-Houston Oil Company | (N/2) April 28, 1995 |
| 0317713 | Eugene Island Area, South Addition | 286 | 993 | Production Handling Agreement | June 14, 1995 | Columbia Gas Development Corporation | Hall-Houston Oil Company | I Platform  June 14, 1995 |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0265418 | Eugene Island Area, South Addition | 292 | 994 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294315 | Eugene Island Area, South Addition | 292 | 994 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 May 4, 1966 |
| 0294314 | Eugene Island Area, South Addition | 292 | 994 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | 4-May-66 |
| 0294314 | Eugene Island Area, South Addition | 292 | 994 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| | | | | | | | | |
| | | | | | | | | |
| 0265422 | Eugene Island Area, South Addition | 293 | 995 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294314 | Eugene Island Area, South Addition | 293 | 995 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | See Eugene Island 292 |
| 0294315 | Eugene Island Area, South Addition | 293 | 995 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0294314 | Eugene Island Area, South Addition | 293 | 995 | Gas Balancing & Storage Agreement | September 29, 1994 | CNG Producing Company | Columbia Gas Development Corporation | GBA September 29, 1994 |
| | | | | | | | | |
| | | | | | | | | |
| 0265416 | Eugene Island Area, South Addition | 308 | 996 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294314 | Eugene Island Area, South Addition | 308 | 996 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | May 4, 1966 See EI 292 UNIT |

**EXHIBIT A-1**                                    -27-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294315 | Eugene Island Area, South Addition | 308 | 996 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0419424 | Eugene Island Area, South Addition | 308 | 996 | Operating Agreement | June 1, 1991 | Energy Development Corporation | Columbia Gas Development Corporation, et al | June 1, 1991  Blks 308 & 315 (N/2) |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
| 0265423 | Eugene Island Area, South Addition | 309 | 997 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation |  |
| 0294315 | Eugene Island Area, South Addition | 309 | 997 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0294314 | Eugene Island Area, South Addition | 309 | 997 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al |  |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418286 | Eugene Island Area, South Addition | 309 | 997 | Participation Agreement, as amended | November 22, 1989 Amended January 2, 1990 | Columbia Gas Development Corporation | Total Minatome Corporation, et al | EI 309 "J" Platform |
| 0294314 | Eugene Island Area, South Addition | 309 | 997 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| 0418585 | Eugene Island Area, South Addition | 309 | 997 | Unit Agreement EI 309 "C" & "G" Platforms | January 1, 1996 | Forest Oil Corporation | Columbia Gas Development Corporation | EI 309 "C" & "G" Platforms - WI Unit (supercedes 12/29/77 Unit Agmt) |
| 0294581 | Eugene Island Area, South Addition | 309 | 997 | Operating Agreement | June 1, 1999 | Aviara Energy Corporation | Eugene Island 309, LLC | EI 309 Development Program - Exhibit "C" to Venture Agmt |
| 0292529 | Eugene Island Area, South Addition | 309 | 997 | Venture Agreement | June 15, 1999 | Aviara Energy Corporation | Eugene Island 309, LLC | |
| 0418053 | Eugene Island Area, South Addition | 309 | 997 | Production Handling and Operating Agreement | July 1, 2008 | Mariner Energy, Inc., et al | Hunt Petroleum (AEC), Inc., et al | PHA - EI 309 "J" - EI 309 "G" |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0340710 | Eugene Island Area, South Addition | 311 | 27918 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward Obligations |
| 0418791 | Eugene Island Area, South Addition | 311 | 27918 | Area of Mutual Interest Agreement | March 29, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | AMI - EI 311 (S/2) |
| 0352139 | Eugene Island Area, South Addition | 311 | 27918 | Operating Agreement, as amended | October 25, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | See EI 312 Participation Agmt. File |
| 0278043 | Eugene Island Area, South Addition | 311 | 27918 | Lease | July 1, 2006 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-06 |
| | | | | | | | | |
| | | | | | | | | |
| 0277275 | Eugene Island Area, South Addition | 312 | 22679 | Lease | June 1, 2001 | United States of America | Devon Energy Production Company, L.P. | 1-Jun-01 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0340710 | Eugene Island Area, South Addition | 312 | 27679 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward Obligations |
| 0418791 | Eugene Island Area, South Addition | 312 | 27679 | Area of Mutual Interest Agreement | March 29, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | AMI - EI 312 (N/2) |
| 0295226 | Eugene Island Area, South Addition | 312 | 22679 | Farmout Agreement, as amended | October 25, 2005 | Devon Energy Production Company, L.P. | Hunt Petroleum (AEC), Inc. | Oct. 25, 2005   EI 312 with Devon |
| 0295225 | Eugene Island Area, South Addition | 312 | 22679 | Participation Agreement | October 25, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | Oct. 25, 2005   EI 311/312 includes JOA with EPL |
| 0352139 | Eugene Island Area, South Addition | 312 | 22679 | Operating Agreement, as amended | October 25, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | See Participation Agmt File |
| 0314146 | Eugene Island Area, South Addition | 312 | 22679 | Production Handling Agreement | January 1, 2007 | Hunt Petroleum (AEC), Inc. et al | Hunt Petroleum (AEC), Inc. et al | Jan. 1, 2007   EI 312/SM 142 |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0266169 | Eugene Island Area, South Addition | 313 | 2608 | Lease | May 1, 1974 | United States of America | Gulf Oil Corporation, et al | 1-May-74 |
| 0294574 | Eugene Island Area, South Addition | 313 | 2608 | Farmout Agreement | May 17, 1999 | PennzEnergy Exploration and Production L.L.C. | Aviara Energy Corporation | May 17, 1999 PennzEnergy |
| 0294331 | Eugene Island Area, South Addition | 313 | 2608 | Participation Agreement | May 18, 1999 | Texaco Exploration and Production Inc. | Aviara Energy Corporation | May 18, 1999 J4 Well Texaco |
| 0294578 | Eugene Island Area, South Addition | 313 | 2608 | Operating Agreement | May 18, 1999 | Aviara Energy Corporation | Texaco Exploration and Production Inc. | See 5/18/99 Participation Agmt File Exhibit "C" to Participation Agmt |
| 0294581 | Eugene Island Area, South Addition | 313 | 2608 | Venture Agreement | June 15, 1999 | Aviara Energy Corporation | Eugene Island 309, L.L.C. | June 15, 1999 EI 309 LLC Venture" Agmt" |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265885 | High Island Area | 34 | 20655 | Lease | December 1, 1998 | United States of America | Aviara Energy Corporation, et al | 1-Dec-98 |
| 0294467 | High Island Area | 34 | 20655 | Operating Agreement, as amended | December 1, 1998 | Aviara Energy Corporation | Pure Resources, L.P., et al | 1-Dec-98 |
| 0265886 | High Island Area | 34 | 24287 | Right-Of-Way | October 15, 2002 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 24287, Segment 13955 |
| | | | | | | | | |
| | | | | | | | | |
| 0313848 | High Island Area, East Add., South Ext. | A365 | 2750 | Operating Agreement, as amended | September 15, 1979 | Anadarko Production Company | Pan Eastern Exploration Company, et al | 9/15/79 HIA-365/376 Contract Area |
| | | | | | | | | |
| | | | | | | | | |
| 0265435 | High Island Area, East Add., South Ext. | A376 | 2754 | Lease | July 1, 1974 | United States of America | Texaco Inc., et al | 1-Jul-74 |
| 0313848 | High Island Area, East Add., South Ext. | A376 | 2754 | Operating Agreement, as amended | September 15, 1979 | Anadarko Production Company | Pan Eastern Exploration Company, et al | 9/15/79 HIA-365/376 Contract Area |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| 0266179 | High Island Area, South Addition | A554 | 21356 | Lease | November 1, 1999 | United States of America | Chieftain International (U.S.) Inc. | 1-Nov-99 |
| 0294591 | High Island Area, South Addition | A554 | 21356 | Participation Agreement / Operating Agreement | October 25, 2000 | Chieftain International (U.S.) Inc. | Aviara Energy Corporation, et al | October 25, 2000 - Includes Operating Agmt |
| | | | | | | | | |
| | | | | | | | | |
| 0277242 | Main Pass Area | 29 | 27196 | Lease | May 1, 2005 | United States of America | Hunt Petroleum (AEC), Inc. | 1-May-05 |
| 0295214 | Main Pass Area | 29 | 27196 | Lease Purchase & Well Participation Agreement | May 18, 2005 | Andex Resources, L.L.C., et al | Hunt Petroleum (AEC), Inc. | 18-May-05 |
| 0295215 | Main Pass Area | 29 | 27196 | Operating Agreement | May 18, 2005 | Hunt Petroleum (AEC), Inc. | Andex Resources, L.L.C., et al | |
| 0295216 | Main Pass Area | 29 | 27196 | Facility Sharing Agreement | July 3, 2006 | Hunt Petroleum (AEC), Inc., et al | Hunt Petroleum (AEC), Inc., et al | MP 29, 118 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0277243 | Main Pass Area | 29 | 28216 | Right-Of-Way | October 31, 2006 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 28216, Segment No. 15810 |
| 0317495 | Main Pass Area | 29 | 27196 | Measurement and Allocation Agreement | November 14, 2007 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | MP 29, 114, 118 |
| 0417466 | Main Pass Area | 29 | 27196 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| 0417463 | Main Pass Area | 29 | 27196 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| | | | | | | | | |
| 0283491 | Main Pass Area | 87 | 31433 | Lease | January 1, 2008 | United States of America | LLOG Exploration Offshore, Inc. | 1-Jan-08 |
| 0297795 | Main Pass Area | 87 | 31433 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc. | XTO Offshore Inc. | 1-Mar-09 |
| 0297980 | Main Pass Area | 87 | 31433 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc., et al | XTO Offshore Inc. | See BS 25 Federal Lease Folder |
| | | | | | | | | |
| 0276265 | Main Pass Area | 94 | 7802 | Lease | July 1, 1985 | United States of America | Kerr-McGee Corporation, et al | 1-Jul-85 |

**EXHIBIT A-1**

-35-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295118 | Main Pass Area | 94 | 7802 | Operating Agreement, as amended | March 3, 1986 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | |
| 0295115 | Main Pass Area | 94 | 7802 | Participation Agreement | November 1, 2001 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | November 1, 2001 Includes OPERATING AGMT |
| 0418824 | Main Pass Area | 94 | 7802 | Production Handling Agreement | January 24, 2002 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | 24-Jan-02 |
| 0417942 | Main Pass Area | 94 | 7802 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| | | | | | | | | |
| | | | | | | | | |
| 0283524 | Main Pass Area | 96 | 31434 | Lease | January 1, 2008 | United States of America | LLOG Exploration Offshore, Inc. | 1-Jan-08 |
| 0297835 | Main Pass Area | 96 | 31434 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc. | XTO Offshore Inc. | See Main Pass 87 |
| 0297980 | Main Pass Area | 96 | 31434 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc., et al | XTO Offshore Inc. | See BS 25 Federal Lease Folder |
| | | | | | | | | |
| | | | | | | | | |
| 0276266 | Main Pass Area | 101 | 22792 | Lease | July 1, 2001 | United State of America | Cheniere Energy, Inc., et al | 1-Jul-01 |

EXHIBIT A-1

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295122 | Main Pass Area | 101 | 22792 | Operating Agreement, as amended | August 10, 2001 | Cheniere Energy, Inc. | Davis Gulf Coast, Inc. et al | 10-Aug-01 |
| 0295115 | Main Pass Area | 101 | 22792 | Participation Agreement | November 2, 2001 | LLOG Exploration Offshore, Inc. | Cheniere Energy, Inc. | November 2, 2001 LLOG-Chenier |
| 0276267 | Main Pass Area | 101 | 24687 | Right-Of-Way | September 29, 2003 | Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 24687 Seg 14304 |
| 0417942 | Main Pass Area | 101 | 22792 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0295125 | Main Pass Area | 101 | 22792 | Compromise Settlement Agreement | March 26, 2006 | Century Exploration New Orleans, Inc. | Davis Gulf Coast, Inc. et al | MP 101 B3 Well |
| | | | | | | | | |
| | | | | | | | | |
| 0276271 | Main Pass Area | 109 | 22794 | Lease | May 1, 2001 | United States of America | Samedan Oil Corporation, et al | 1-May-01 |
| 0295141 | Main Pass Area | 109 | 22794 | Joint Operating Agreement | May 1, 2001 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | Exhibit D to FO & JPA |
| 0295140 | Main Pass Area | 109 | 22794 | Farmout & Joint Participation Agreement | April 23, 2003 | Kerr-McGee Oil & Gas Corporation | LLOG Exploration Offshore Inc. | April 23, 2003 Farmout & Joint Participation Agmt |
| 0417942 | Main Pass Area | 109 | 22794 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| 0278033 | Main Pass Area | 112 | 9707 | Lease | June 1, 1988 | United States of America | Diamond Shamrock Offshore Partners Limited Partnership | 1-Jun-88 |
| 0278034 | Main Pass Area | 112 | 11738 | Right-Of-Way | April 26, 1990 | Minerals Management Service | Diamond Shamrock Offshore Partners Limited Partnership | ROW OCS-G 11738, Seg 9006 |
| 0419576 | Main Pass Area | 112 | 9707 | Purchase & Sale Agreement | April 1, 2006 | Vintage Petroleum, LLC | Hunt Petroleum (AEC), Inc. | Dated August 17, 2006, eff April 1, 2006 |
| 0417466 | Main Pass Area | 112 | 9707 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| 0417463 | Main Pass Area | 112 | 9707 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| | | | | | | | | |
| 0277281 | Main Pass Area | 114 | 27201 | Lease | July 1, 2005 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-05 |
| 0323989 | Main Pass Area | 114 | 27201 | Production Handling Agreement | August 1, 2007 | Hunt Petroleum (AEC), Inc. | Hunt Petroleum (AEC), Inc., et al | 1-Aug-07 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0317495 | Main Pass Area | 114 | 27201 | Measurement & Allocation Agreement | November 14, 2007 | XTO Offshore Inc. et al | XTO Offshore Inc., et al | |
| | | | | | | | | |
| | | | | | | | | |
| 0278035 | Main Pass Area | 116 | 3419 | Lease | January 1, 1977 | United States of America | Diamond Shamrock Corporation | 1-Jan-77 |
| 0278036 | Main Pass Area | 116 | 12708 | Right-Of-Way | January 8, 1991 | Minerals Management Service | Diamond Shamrock Offshore Partners Limited Partnership | ROW OCS-G 12708, Segment 9248 |
| 0278037 | Main Pass Area | 116 | 25478 | Right-Of-Way | September 24, 2004 | Minerals Management Service | XTO Offshore Inc. | ROW OCS-G 25478 Segment 14895 |
| 0419576 | Main Pass Area | 116 | 3419 | Purchase & Sale Agreement | April 1, 2006 | Vintage Petroleum, LLC | Hunt Petroleum (AEC), Inc. | Dated August 17, 2006, eff April 1, 2006 |
| 0417466 | Main Pass Area | 116 | 3419 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| C0410663 | Main Pass Area | 116 | 3419 | Offshore Connection Agreement | March 1, 2011 | XTO Offshore Inc., et al | Odyssey Pipeline L.L.C. | 1-Mar-11 |
| C0410589 | Main Pass Area | 116 | 3419 | Boarding Agreement | March 1, 2011 | XTO Offshore Inc. | Odyssey Pipeline L.L.C. | 1-Mar-11 |

**EXHIBIT A-1**

-39-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417463 | Main Pass Area | 116 | 3419 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| | | | | | | | | |
| 0277244 | Main Pass Area | 118 | 22797 | Lease | June 1, 2001 | United States of America | Shell Offshore Inc. | 1-Jun-01 |
| 0295220 | Main Pass Area | 118 | 22797 | Farmout Agreement | July 1, 2005 | Shell Offshore Inc. | Hunt Petroleum (AEC), Inc. | July 1, 2005 SHELL FARMOUT & ASSIGNMENTS |
| 0295219 | Main Pass Area | 118 | 22797 | Operating Agreement | August 11, 2005 | Hunt Petroleum (AEC), Inc. | Rosetta Resources Offshore, LLC, et al | August 11, 2005 (Hunt-PetroQuest-Rosetta) |
| 0295218 | Main Pass Area | 118 | 22797 | Participation Agreement | August 11, 2005 | Hunt Petroleum (AEC), Inc. | PetroQuest Energy, L.L.C. | Aug 11, 2005 AGMT W/PETROQUEST & ASSIGNMENTS |
| 0295217 | Main Pass Area | 118 | 22797 | Participation Agreement | August 11, 2005 | Hunt Petroleum (AEC), Inc. | Rosetta Resources Offshore, LLC | Aug 11, 2005 AGMT W/ROSETTA & ASSIGNMENTS |
| 0295216 | Main Pass Area | 118 | 22797 | Facility Sharing Agreement | July 3, 2006 | Hunt Petroleum (AEC), Inc., et al | Hunt Petroleum (AEC), Inc., et al | Jul 3, '06 Incl. Measrmnt & Alloc Agmt 11/14/07 |

**EXHIBIT A-1**

-40-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0277245 | Main Pass Area | 118 | 28217 | Right-Of-Way | October 31, 2006 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 28217, Segment 15811 |
| 0323989 | Main Pass Area | 118 | 22797 | Production Handling Agreement | August 1, 2007 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | MP 114 to 118 |
| 0317495 | Main Pass Area | 118 | 22797 | Measurement and Allocation Agreement | November 14, 2007 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | |
| 0317474 | Main Pass Area | 118 | 22797 | Production Handling Agreement | November 1, 2008 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | MP 125 to 118 |
| 0317474 | Main Pass Area | 118 | 22797 | Production Handling Agreement | November 1, 2008 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | Only applies to MP 29, 114 & 118 |
| 0417466 | Main Pass Area | 118 | 22797 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| Pending | Main Pass Area | 118 | Pending | Right-Of-Way (Pending) | December 1, 2010 | Bureau of Ocean Energy Management, Regulation and Enforcement | XTO Offshore Inc. | ROW OCS-G (Pending) SEGMENT 16342; ROW No. to be assigned |
| 0409199 | Main Pass Area | 118 | 22797 | Sales and Conveyance Agreement | December 10, 2010 | Chevron Pipe Line Company | XTO Offshore Inc. | MP 127 SSTI |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0409295 | Main Pass Area | 118 | 22797 | Letter Agreement | January 11, 2011 | W&T Offshore Inc. | XTO Offshore Inc. | To acquire a portion of ROW OCS-G 11727, Seg 8985 |
| C0410589 | Main Pass Area | 118 | 22797 | Boarding Agreement | March 1, 2011 | XTO Offshore Inc. | Odyssey Pipeline L.L.C. | 1-Mar-11 |
| C0410663 | Main Pass Area | 118 | 22797 | Offshore Connection Agreement | March 1, 2011 | XTO Offshore Inc., et al | Odyssey Pipeline L.L.C. | 1-Mar-11 |
| 0417463 | Main Pass Area | 118 | 22797 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| | | | | | | | | |
| 0283355 | Main Pass Area | 119 | 31438 | Lease | March 1, 2008 | United States of America | LLOG Exploration Offshore Inc. | 1-Mar-08 |
| 0297835 | Main Pass Area | 119 | 31438 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore Inc. | XTO Offshore Inc., et al | 1-Mar-09 |
| 0297980 | Main Pass Area | 119 | 31438 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore Inc., et al | XTO Offshore Inc., et al | See BS 25 Federal Lease Folder |
| | | | | | | | | |
| | | | | | | | | |
| 0266623 | Main Pass Area | 125 | 25019 | Lease | July 1, 2003 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-03 |

**EXHIBIT A-1**

-42-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294625 | Main Pass Area | 125 | 25019 | Participation Agreement | February 28, 2008 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore Inc. | Feb 28, 2008 (Include Operating Agmt) |
| 0294626 | Main Pass Area | 125 | 25019 | Joint Operating Agreement | February 28, 2008 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore Inc. | |
| 0317474 | Main Pass Area | 125 | 25019 | Production Handling Agreement | November 1, 2008 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | Only applies to MP 29, 114 & 118 |
| 0417466 | Main Pass Area | 125 | 25019 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| 0417463 | Main Pass Area | 125 | 25019 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| 0314026 | Main Pass Area, South & East Addition | 179 | 33127 | Lease | July 1, 2009 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-09 |
| | | | | | | | | |
| 0294987 | Ship Shoal Area | 71 | 12347 | Participation Agreement & JOA | October 6, 2003 | PetroQuest Energy, L.L.C. | Hunt Petroleum (AEC) Inc., et al | October 6, 2003 (Includes Operating Agmt) |

**EXHIBIT A-1**                                                                -43-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294986 | Ship Shoal Area | 71 | 12347 | Production Handling Agreement | October 6, 2003 | PetroQuest Energy, L.L.C. | PetroQuest Energy, L.L.C., et al | 6-Oct-03 |
| | | | | | | | | |
| | | | | | | | | |
| 0276280 | Ship Shoal Area | 80 | 9330 | Right-Of-Way | December 8, 1987 | United States of America, Department of Interior, Minerals Management Service | Samedan Oil Corporation | ROW OCS-G 9330 Segment 8204 |
| 0296277 | Ship Shoal Area | 79 | 15277 | Lease | August 1, 1995 | United States of America | Enron Oil & Gas Company | 1-Aug-95 |
| 0295146 | Ship Shoal Area | 79 | 15277 | Farmout Agreement | June 14, 2000 | EOG Resources Inc. | PetroQuest Energy One, L.L.C. | June 14, 2000 EOG Farmout |
| 0295144 | Ship Shoal Area | 79 | 15277 | Participation Agreement | July 15, 2000 | PetroQuest Energy One, L.L.C. | LLOG Exploration & Production Company | Jul 15, '00 Includes Operating Agmt |
| 0295145 | Ship Shoal Area | 79 | 15277 | Joint Operating Agreement | July 15, 2000 | PetroQuest Energy One, L.L.C. | LLOG Exploration & Production Company | Jul 15, '00 Includes Operating Agmt |
| 0276279 | Ship Shoal Area | 79 | 23713 | Right-Of-Way | May 29, 2002 | United States of America, Department of Interior, Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 23713 Segment 13737 |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276278 | Ship Shoal Area | 79 | 23712 | Right-Of-Way | May 29, 2002 | United States of America, Department of Interior, Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 23712 Segment 13736 |
| 0418821 | Ship Shoal Area | 79 | 15277 | Purchase and Sale Agreement | April 15, 2003 | Noble Energy, Inc., et al | LLOG Exploration Offshore, Inc., et al | Purchase of SS 80 "A" |
| 0417942 | Ship Shoal Area | 79 | 15277 | Purchase and Sale Agreement | April 1, 2004 | LLOG Exploration Company, L.L.C., et al | Hunt Petroleum Corporation | Dated 7/9/04, effective 4/1/04 |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
| 0239135 | Ship Shoal Area | 188 | 22712 | Lease | May 1, 2001 | United States of America | Aviara Energy Corporation |  |
| 0294599 | Ship Shoal Area | 188 | 22712 | Purchase and Sale Agreement, as amended (XTO reserves all rights reserved by it under this Agreement, as amended 4-1-05, as to depths from 17,000' to 100,000' subsea) | January 22, 2002 | Aviara Energy Corporation | EEX Corporation | Deep Rights; 17,000 to 100,000' subsea |

**EXHIBIT A-1**

-45-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418795 | Ship Shoal Area | 188 | 22712 | Unit Agreement #754305002 | March 1, 2005 | ExxonMobil Corporation | Newfield Exploration Gulf Coast Inc., et al | #754305002; S. Timbalier Block 168 Unit |
| 0294600 | Ship Shoal Area | 188 | 22712 | Participation Agreement | March 21, 2005 | Hunt Petroleum (AEC), Inc. | Choice Exploration, Inc. | Dated 3/21/05, effective 3/1/05 |
| 0294601 | Ship Shoal Area | 188 | 22712 | Operating Agreement | March 21, 2005 | Hunt Petroleum (AEC), Inc. | Choice Exploration, Inc. | Dated 3/21/05, effective 3/1/05 |
| 0266437 | Ship Shoal Area | 188 | 26977 | Right-of-Way | May 8, 2006 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 26977, Segment 15614 |
| | | | | | | | | |
| | | | | | | | | |
| 0253742 | Ship Shoal Area | 204 | 1520 | Lease | July 1, 1967 | United States of America | Hamilton Brothers Oil Company, et al | 1-Jul-67 |
| 0293021 | Ship Shoal Area | 204 | 1520 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0293021 | Ship Shoal Area | 204 | 1520 | Letter Agreement | February 8, 2006 | Apache Corporation | Chevron U.S.A. Inc., et al | SS 204 A36ST1 Non-Consent 500% Penalty |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0253744 | Ship Shoal Area | 207 | 1523 | Lease | July 1, 1967 | United States of America | General Crude Oil Company, et al | 1-Jul-67 |
| 0350621 | Ship Shoal Area | 207 | 1523 | Unit Operating Agreement | April 1, 1981 | Conoco, Inc. | Atlantic Richfield Company, et al | April 1, 1981  C-6/JS Sand Reservoir |
| 0418888 | Ship Shoal Area | 207 | 1523 | Unit Plan #14-08-0001-20231 | April 1, 1981 | Conoco, Inc. | Atlantic Richfield Company, et al | #14-08-0001-20231 |
| 0293057 | Ship Shoal Area | 207 | 1523 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0324109 | Ship Shoal Area | 207 | 1523 | Production Handling Agreement | October 26, 1994 | Norcen Explorer, Inc., et al | Norcen Explorer, Inc., et al | October 26, 1994 SS 207 A"/SS 190" |
| 0293240 | Ship Shoal Area | 207 | 1523 | Joint Development Agreement, as amended | November 16, 1994 | Norcen Explorer Inc. et al | Norcen Offshore Properties Ltd., et al | November 16, 1994    SS 206 & 207 |
| | | | | | | | | |
| 0253745 | Ship Shoal Area | 216 | 1524 | Lease | July 1, 1967 | United States of America | General Crude Oil Company, et al | 1-Jul-67 |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0293060 | Ship Shoal Area | 216 | 1524 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| | | | | | | | | |
| | | | | | | | | |
| 0265449 | Ship Shoal Area, South Addition | 247 | 1028 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0418811 | Ship Shoal Area, South Addition | 247 | 1028 | Unit Operating Agreement, as amended | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | June 10, 1966 - SEE SS 271 UNIT OA |
| 0418801 | Ship Shoal Area, South Addition | 247 | 1028 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | Unit #14-08-0001-8784 |
| 0418847 | Ship Shoal Area, South Addition | 247 | 1028 | Ownership Agreement | August 17, 1978 | CNG Producing Company | Columbia Gas Development Corporation, et al | "F" Platform |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419113 | Ship Shoal Area, South Addition | 247 | 1028 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |
| 0418811 | Ship Shoal Area, South Addition | 247 | 1028 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0265446 | Ship Shoal Area, South Addition | 248 | 1029 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0418811 | Ship Shoal Area, South Addition | 248 | 1029 | Unit Operating Agreement, as amended | June 10, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | June 10, 1966 - SEE SS 271 UNIT OA |
| 0418801 | Ship Shoal Area, South Addition | 248 | 1029 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |

**EXHIBIT A-1**

-49-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418847 | Ship Shoal Area, South Addition | 248 | 1029 | Ownership Agreement | August 17, 1978 | CNG Producing Company | Columbia Gas Development Corporation, et al | "F" Platform |
| 0419113 | Ship Shoal Area, South Addition | 248 | 1029 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | January 28, 1981 - Gas Balancing Agmt |
| 0418811 | Ship Shoal Area, South Addition | 248 | 1029 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0265445 | Ship Shoal Area, South Addition | 249 | 1030 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation, et al | 1-Jun-62 |
| 0418811 | Ship Shoal Area, South Addition | 249 | 1030 | Unit Operating Agreement, as amended | June 10 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | June 10 1966 - SEE SS 271 UNIT OA |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418801 | Ship Shoal Area, South Addition | 249 | 1030 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418838 | Ship Shoal Area, South Addition | 249 | 1030 | Farmout Agreement | April 5, 1972 | Forest Oil Corporation, et al | Pelto Oil Company, et al | April 5, 1972 - Pelto, et al (also covers SS 270) |
| 0419113 | Ship Shoal Area, South Addition | 249 | 1030 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |
| 0418811 | Ship Shoal Area, South Addition | 249 | 1030 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0265448 | Ship Shoal Area, South Addition | 270 | 1037 | Lease | June 1. 1962 | United States of America | Forest Oil Corporation, et al | June 1. 1962 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418811 | Ship Shoal Area, South Addition | 270 | 1037 | Unit Operating Agreement, as amended | June 10. 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | June 10. 1966 - SEE SS 271 UNIT OA |
| 0418801 | Ship Shoal Area, South Addition | 270 | 1037 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418838 | Ship Shoal Area, South Addition | 270 | 1037 | Farmout Agreement | April 5, 1972 | Forest Oil Corporation, et al | Pelto Oil Company, et al | April 5, 1972 - Pelto, et al (also covers SS 249) |
| 0419113 | Ship Shoal Area, South Addition | 270 | 1037 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |
| 0418811 | Ship Shoal Area, South Addition | 270 | 1037 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

-52-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265450 | Ship Shoal Area, South Addition | 271 | 1038 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation, et al | 1-Jun-62 |
| 0418811 | Ship Shoal Area, South Addition | 271 | 1038 | Unit Operating Agreement, as amended | June 10, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | 10-Jun-66 |
| 0418801 | Ship Shoal Area, South Addition | 271 | 1038 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418848 | Ship Shoal Area, South Addition | 271 | 1038 | Farmout Agreement | September 3, 1974 | Forest Oil Corporation, et al | Columbia Gas Development Corp., et al | September 3, 1974 Forest - CGDC |
| 0419113 | Ship Shoal Area, South Addition | 271 | 1038 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418811 | Ship Shoal Area, South Addition | 271 | 1038 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0253746 | Ship Shoal Area, South Addition | 291 | 2923 | Lease | December 1, 1974 | United States of America | Ashland Oil, Inc., et al | 1-Jun-62 |
| 0419103 | Ship Shoal Area, South Addition | 291 | 2923 | Farmout Agreement, as amended, and Operating Agreement | October 1, 1991 | Torch Energy Advisors Incorporated, et al | Hall-Houston Oil Company | 1-Jun-62 |
| 0295476 | Ship Shoal Area, South Addition | 291 | 2923 | Purchase and Sale Agreement | March 1, 2008 | Maritech Resources, Inc., et al | Montforte Exploration L.L.C., et al | 1-Jun-62 |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

-54-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0266626 | South Marsh Island Area | 40 | 13607 | Lease | August 1, 1992 | United State of America | Shell Offshore Inc. | 1-Aug-92 |
| 0294629 | South Marsh Island Area | 40 | 13607 | Operating Agreement, as revised | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | SM 40/41 Shallow Rights - revised 6-1-03 |
| 0294629 | South Marsh Island Area | 40 | 13607 | Participation Agreement & JOA, as amended | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | Feb. 24, 2003 (INCLUDES SM 40 OPER AGMT) |
| 0294621 | South Marsh Island Area | 40 | 13607 | Joint Area Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P., et al | June 1, 2003 (Includes OA SM 40/41 Deep Rights) |
| 0294629 | South Marsh Island Area | 40 | 13607 | Operating Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | SM 40/41 Deep Rights |
| 0295463 | South Marsh Island Area | 40 | 13607 | Platform Lease and Operations Agreement | June 30, 2003 | Apache Corporation | Hunt Petroleum (AEC), Inc. | JA" PF Lse & Opers Agmt-TERMINATED" but obligations survive under Joint Area Agreement Para 12. |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417942 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0316161 | South Marsh Island Area | 40 | 13607 | Production Handling Agreement, as Ratified | September 1, 2004 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | Sept. 1, 2004  JA" PF SM 41" |
| 0266626 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | October 1, 2004 | Apache Corporation | Hunt Petroleum Corporation | October 1, 2004 APACHE Acquisition |
| 0316161 | South Marsh Island Area | 40 | 13607 | Production Handling Agreement, as amended | December 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Nippon Oil Exploration U.S.A. Limited | PHA SM 44 "C" - SM 40 "JA" |
| 0294629 | South Marsh Island Area | 40 | 13607 | Ratification and Amendment | April 1, 2008 | Hunt Petroleum (AEC), Inc., et al | Devon Energy Production Company, L.P. | Ratification of SM 44 "C" - SM 40 "JA" PHA for SM 40 C-2 / C2D Well |
| 0266626 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | January 1, 2010 | Nippon Oil Exploration U.S.A. Limited | XTO Offshore Inc., et al | January 1, 2010 (Acq Nippon Deep Rights SM 40/41) |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0266627 | South Marsh Island Area | 41 | 1192 | Lease | June 1, 1962 | United State of America | California Oil Company | 1-Jun-62 |
| 0294629 | South Marsh Island Area | 41 | 1192 | Participation Agreement & JOA, as amended | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | Feb. 24, 2003 (Includes SM 40 OA) |
| 0294629 | South Marsh Island Area | 41 | 1192 | Operating Agreement, as revised | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | SM 40/41 Shallow Rights - revised 6-1-03 |
| 0294621 | South Marsh Island Area | 41 | 1192 | Joint Area Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P., et al | June 1, 2003 (Includes OA SM 40/41 Deep Rights) |
| 0294629 | South Marsh Island Area | 41 | 1192 | Operating Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | SM 40/41 Deep Rights |
| 0417942 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0316161 | South Marsh Island Area | 41 | 1192 | Production Handling Agreement, as ratified | September 1, 2004 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | Sept. 1, 2004  JA" PF SM 41" |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0266626 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | October 1, 2004 | Apache Corporation | Hunt Petroleum Corporation | October 1, 2004 APACHE Acquisition |
| 0266626 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | January 1, 2010 | Nippon Oil Exploration U.S.A. Limited | XTO Offshore Inc., et al | January 1, 2010 (Acq Nippon Deep Rights SM 40/41) |
| | | | | | | | | |
| | | | | | | | | |
| 0278245 | South Marsh Island Area | 44 | 23840 | Lease | May 1, 2002 | United States of America | Devon Energy Production Company, L.P. | 1-May-02 |
| 0295304 | South Marsh Island Area | 44 | 23840 | Farmout Agreement | January 4, 2007 | Devon Energy Production Company, L.P. | Hunt Petroleum (AEC), Inc. | 4-Jan-07 |
| 0295305 | South Marsh Island Area | 44 | 23840 | Operating Agreement, as amended | January 4, 2007 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | 4-Jan-07 |
| 0295308 | South Marsh Island Area | 44 | 23840 | Participation Agreement, as amended | March 8, 2007 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | 8-Mar-07 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0316099 | South Marsh Island Area | 44 | 23840 | Production Handling Agreement, as amended | December 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Nippon Oil Exploration U.S.A. Limited, et al | 1-Dec-07 |
| 0316099 | South Marsh Island Area | 44 | 23840 | Ratification and Amendment | April 1, 2008 | Hunt Petroleum (AEC), Inc., et al | Devon Energy Production Company, L.P. | Ratification of SM 44 "C" - SM 40 "JA" PHA for SM 40 C-2 / C2D Well |
| | | | | | | | | |
| | | | | | | | | |
| 0295305 | South Marsh Island Area | 45 | 31353 | Operating Agreement, as amended | January 4, 2007 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | SM 44 JOA amended eff 2-1-08 to include SM 45 |
| 0215991 | South Marsh Island Area | 45 | 31353 | Lease | February 1, 2008 | United States of America | Hunt Petroleum (AEC), Inc. et al | 1-Feb-08 |
| | | | | | | | | |
| 0340710 | South Marsh Island Area, South Addition | 109 | 24873 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276089 | South Marsh Island Area, South Addition | 109 | 24873 | Lease | June 1, 2003 | United States of America | Hunt Petroleum (AEC), Inc., et al | 1-Jun-03 |
| 0294983 | South Marsh Island Area, South Addition | 109 | 24873 | Operating Agreement | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Cheyenne International Corporation, et al | 1-Jun-03 |
| 0276089 | South Marsh Island Area, South Addition | 109 | 24873 | Acquisition of Interest Letter Agreement | December 9, 2003 | CL&F Resources LP | Hunt Petroleum (AEC), Inc. | November 20, 2003 eff date (Acq of CL&F interest) |
| | | | | | | | | |
| | | | | | | | | |
| 0340710 | South Marsh Island Area, South Addition | 138 | 33616 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0331362 | South Marsh Island Area, South Addition | 138 | 33616 | Lease | June 1, 2010 | United States of America | Chieftain International (U.S.) Inc. | 1-Jun-10 |
| | | | | | | | | |
| | | | | | | | | |
| 0279702 | South Marsh Island Area, South Addition | 139 | 21106 | Lease | July 1, 1999 | United States of America | Chieftain International (U.S.) Inc. | |
| 0340710 | South Marsh Island Area, South Addition | 139 | 21106 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |
| 0295340 | South Marsh Island Area, South Addition | 139 | 21106 | Joint Area Agreement, as amended | March 22, 2004 | Newfield Exploration Company, et al | Hunt Petroleum (AEC), Inc. | |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419195 | South Marsh Island Area, South Addition | 139 | 21106 | Participation Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0295341 | South Marsh Island Area, South Addition | 139 | 21106 | Operating Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0314481 | South Marsh Island Area, South Addition | 139 | 21106 | Production Handling Agreement | July 27, 2005 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0419647 | South Marsh Island Area, South Addition | 139 | 21106 | Letter Agreement | May 25, 2011 | McMoRan Oil & Gas, L.L.C. | XTO Offshore Inc., et al | SM 146 A-8ST Recompletion |
| | | | | | | | | |
| | | | | | | | | |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294392 & 0294343 | South Marsh Island Area, South Addition | 142 | 1216 | Operating Agreement, as amended | May 17, 1961 | Forest Oil Corporation | Hope Natural Gas Company, et al | Exhibit to Geophysical Exploration Agmt dated 5-17-61 (Non Unit) |
| 0265447 | South Marsh Island Area, South Addition | 142 | 1216 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294393 | South Marsh Island Area, South Addition | 142 | 1216 | Unit Operating Agreement | March 17, 1976 | Forest Oil Corporation | Columbia Gas Development Corporation, et al | 3/17/1976 Unit Operating Agreement survives Unit Termination |
| 0325391 | South Marsh Island Area, South Addition | 142 | 3441 | Right-Of-Way | August 26, 1977 | Minerals Management Service | Columbia Gulf Transmission Company | ROW OCS-G 3441 Segment 4733 (Columbia Gulf Acq) |
| 0331679 | South Marsh Island Area, South Addition | 142 | 1216 | Contract/Pipeline Connection and Operating Agreement | May 6, 1996 | Marathon Pipeline Company | Forest Oil Corporation, et al | A" OA & Pipeline Connection Contract" |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265447 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | April 19, 1999 | Kerr-McGee Oil & Gas Corporation | Energy Resources MAQ, Inc. | April 19, 1999 effective January 1, 1998 (Acq of KMG A" PF Interest) |
| 0265447 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | June 16, 1999 | Aries Resources, L.L.C. | Aviara Energy Corporation, et al | June 16, 1999 effective April 1, 1998 (Aries Acq) |
| 0314146 | South Marsh Island Area, South Addition | 142 | 1216 | Production Handling Agreement | January 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Hunt Petroleum (AEC), Inc., et al | EI 312 "D" - SM 142 "A" |
| 0341611 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | October 1, 2009 | Eni Petroleum US, LLC | XTO Offshore Inc. | Oct. 1, 2009 (Acq of Eni Interest) |
| 0341720 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | February 4, 2010 | Columbia Gulf Transmission Company | XTO Offshore Inc. | Acq. ROW OCS-G 3441, Segment 4733 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294314 | South Marsh Island Area, South Addition | 142 | 1216 | Gas Balancing & Storage Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| | | | | | | | | |
| 0283008 | South Marsh Island Area, South Addition | 146 | 9546 | Lease | July 1, 1988 | United States of America | Phillips Petroleum Company | |
| 0340710 | South Marsh Island Area, South Addition | 146 | 9546 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |
| 0295340 | South Marsh Island Area, South Addition | 146 | 9546 | Joint Area Agreement, as amended | March 22, 2004 | Newfield Exploration Company, et al | Hunt Petroleum (AEC), Inc. | |
| 0419195 | South Marsh Island Area, South Addition | 146 | 9546 | Participation Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295341 | South Marsh Island Area, South Addition | 146 | 9546 | Operating Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0277271 | South Marsh Island Area, South Addition | 146 | 26837 | Right-of-Way | May 31, 2005 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | |
| 0277272 | South Marsh Island Area, South Addition | 146 | 26838 | Right-of-Way | May 31, 2005 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | |
| 0277273 | South Marsh Island Area, South Addition | 146 | 26839 | Right-of-Way | May 31, 2005 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | |
| 0314481 | South Marsh Island Area, South Addition | 146 | 9546 | Production Handling Agreement | July 27, 2005 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0314481 | South Marsh Island Area, South Addition | 146 | 9546 | Letter Agreement | July 1, 2008 | McMoRan Oil & Gas, L.L.C., et al | Hunt Petroleum (AEC), Inc. | SM 146 Assignment of Operating Rights |
| 0419647 | South Marsh Island Area, South Addition | 146 | 9546 | Letter Agreement | May 25, 2011 | McMoRan Oil & Gas, L.L.C. | XTO Offshore Inc., et al | SM 146 A-8ST Recompletion |
|  |  |  |  |  |  |  |  |  |
| 0293161 | South Marsh Island Area, North Addition | 268 | 2310 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0314492 | South Marsh Island Area, North Addition | 268 | 2310 | Space Lease and Production Handling and Operations Agreement | August 14, 1995 | Norcen Explorer, Inc. et al | Norcen Explorer, Inc. et al | 8/14/95 Space Lse & PH & Ops Agmt SM 280 @ 268 A |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0420017 | South Marsh Island Area, North Addition | 268 | 2310 | Contract/Connection Agreement | January 18, 1996 | Norcen Explorer, Inc. | The George R. Brown Partnership, et al | Letter Agreement 12 Producer PL Seg 4008" |
| 0314476 | South Marsh Island Area, North Addition | 268 | 2310 | Production Handling Agreement | May 1, 2007 | Apache Corporation, et al | Helis Oil & Gas Company, L.L.C., et al | 4/18/07 SM 265 Prod @ 268 A |
| 0316079 | South Marsh Island Area, North Addition | 268 | 2310 | Production Handling Agreement | January 1, 2008 | Apache Corporation, et al | Helis Oil & Gas Company, L.L.C., et al | 1/1/08 SM 257 No. 1 @ 268 A |
| | | | | | | | | |
| | | | | | | | | |
| 0253772 | South Marsh Island Area, North Addition | 269 | 2311 | Lease | January 1, 1973 | United States of America | TransOcean Oil, Inc. et al | 1-Jan-73 |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0293157 | South Marsh Island Area, North Addition | 269 | 2311 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| | | | | | | | | |
| | | | | | | | | |
| 0293183 | South Marsh Island Area, North Addition | 280 | 14456 | Unit Operating Agreement | June 15, 2001 | Texaco Exploration and Production Inc. | W&T Offshore, Inc., et al | SM 280/281 Pooled Unit "I" Platform |
| | | | | | | | | |
| | | | | | | | | |
| 0253773 | South Marsh Island Area, North Addition | 281 | 2600 | Lease | April 1, 1974 | United States of America | Hamilton Brothers Oil Company, et al | 1-Apr-74 |
| 0293162 | South Marsh Island Area, North Addition | 281 | 2600 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |

EXHIBIT A-1

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0293182 | South Marsh Island Area, North Addition | 281 | 2600 | Joint Development Agreement | June 15, 2001 | RME Petroleum Company, et al | RME Petroleum Company, et al | June 15, 2001 (SM 280/281 Pooled Unit) |
| 0293183 | South Marsh Island Area, North Addition | 281 | 2600 | Unit Operating Agreement | June 15, 2001 | Texaco Exploration and Production Inc. | W&T Offshore, Inc., et al | SM 280/281 Pooled Unit "I" Platform |
| | | | | | | | | |
| | | | | | | | | |
| 0276248 | South Pass | 42 & 43 | DACW29-2-81-37 | ROW | May 18, 1981 | The Secretary of the Army | Burrwood Gathering Company | |
| 0276231 | South Pass | 42 | SL 16869 | Lease | November 13, 2000 | State of Louisiana | IP Petroleum, Inc., et al | |
| 0276250 | South Pass | 42 & 43 | DACW29-2-01-16 | ROW | May 8, 2001 | The Secretary of the Army | Energy Development Corporation | |
| 0276246 | South Pass | 42 | SL 4300 | Surface Lease | June 1, 2001 | State of Louisiana | Andex Resources, L.L.C., et al | |
| 0295086 | South Pass | 42 & 43 | SL 16869 & OCS-G 22781 | Participation Agreement | August 30, 2002 | Pure Resources, L.P. | Andex Resources, L.L.C., et al | |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295095 | South Pass | 42 & 43 | SL 16869, 16870 & OCS-G 22781 | Operating Agreement | August 30, 2002 | LLOG Exploration & Production Company | Pure Resources, L.P., et al | |
| 0276247 | South Pass | 42 | SL 4279 | Surface Lease | September 3, 2002 | State of Louisiana | IP Petroleum, Inc., et al | |
| 0417942 | South Pass | 42 & 43 | SL 16860, 16870 & OCS-G 22781 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0278048 | South Pass | 42 & 43 | SL 4584 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0278049 | South Pass | 42 & 43 | SL 4585 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0278050 | South Pass | 42 & 43 | SL 4586 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0278051 | South Pass | 42 & 43 | SL 4587 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0278047 | South Pass | 42 & 43 | SL 576 | Surface Lease | June 2, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0295095 | South Pass | 42 & 43 | SL 16869 & 16870 | 04 RA Voluntary Unit Agreement | October 19, 2005 | The State Mineral Board | Hunt Petroleum (AEC), Inc., et al | 04 RA VUA |
| 0314614 | South Pass | 42 & 43 | SL 16869, 16870 & OCS-G 22781 | Production Handling Agreement | February 1, 2007 | Hunt Petroleum (AEC), Inc. | Andex Resources, L.L.C., et al | |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276253 | South Pass | 42 & 43 | SL 3011 | Surface Lease | October 17, 2007 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| | | | | | | | | |
| | | | | | | | | |
| 0276237 | South Pass | 43 | SL 16870 | Lease | November 13, 2000 | State of Louisiana | Energy Partners, Ltd. | |
| 0276236 | South Pass | 43 | 22781 | Lease | June 1, 2001 | United States of America | Andex Resources, L.L.C., et al | |
| 0295085 | South Pass | 43 | SL 16870 | Farmout Agreement | December 6, 2002 | Energy Partners, Ltd. | LLOG Exploration & Production Company | |
| | | | | | | | | |
| | | | | | | | | |
| 0340710 | Vermilion Area, South Addition | 264 | 33603 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward Obligation |
| 0340457 | Vermilion Area, South Addition | 264 | 33603 | Lease | July 1, 2010 | United States of America | XTO Offshore Inc. | 1-Jul-10 |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**                                                              -72-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265436 | Vermilion Area, South Addition | 313 | 1172 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | |
| 0419428 | Vermilion Area, South Addition | 313 | 1172 | Letter Agreement | May 12, 1994 | Columbia Gas Development Corporation | CNG Producing Company | Trade Agreement; VR 313 |
| 0419888 | Vermilion Area, South Addition | 313 | 1172 | Letter Agreement | August 16, 1995 | Columbia Gas Development Corporation | CNG Producing Company | Exchange of ORRIs |
| 0294347 | Vermilion Area, South Addition | 313 | 1172 | Participation Agreement | November 1, 2001 | Dominion Exploration & Production, Inc. | Aviara Energy Corporation | VR 313 "D" |
| 0294351 | Vermilion Area, South Addition | 313 | 1172 | Operating Agreement | November 1, 2001 | Dominion Exploration & Production, Inc. | Aviara Energy Corporation | VR 313 "D" |
| 0322545 | Vermilion Area, South Addition | 313 | 1172 | Production Handling Agreement | January 31, 2002 | Dominion Exploration & Production, Inc., et al | Dominion Exploration & Production, Inc. | VR 313 "D" - VR 313 "B" |
| 0322545 | Vermilion Area, South Addition | 313 | 1172 | Lease of Platform Space Agreement | June 21, 2007 | Dominion Exploration & Production, Inc., et al | Dominion Exploration & Production, Inc. | VR 313 "D" |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0253756 | West Cameron Area | 171 | 1997 | Lease | January 1, 1971 | United States of America | Placid Oil Co., et al | |
| 0293110 | West Cameron Area | 171 | 1997 | Joint Operating Agreement, as amended | January 1, 1971 | Transocean Oil, Inc. | Placid Oil Co., et al | Amendments dated July 25, 1979, October 21, 1982, January 1, 1989, and February 21, 1989 |
| 0418897 | West Cameron Area | 171 | 1997 | Letter Agreement | November 5, 1997 | Hunt Petroleum Corporation, et al | Captiva Energy, Inc. | Includes Election Letter dated November 10, 1997 |
| 0418935 | West Cameron Area | 171 | 1997 | Natural Gas Processing Agreement (as described in Exhibits A&B of Assignment and Bill of Sale attached to Assignment of Record Title Interest from Chevron USA to Hunt Petroleum Corporation, et al) | March 1, 2002 | Chevron U.S.A. Inc., et al | Targa Midstream Services, Limited Partnership | Dedication of Chevron interest |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| Pending | West Cameron Area | 171 | 1997 | Assignment and Bill of Sale | October 4, 2010 | XH, LLC, et al | Conn Energy, Inc., et al | Attached as Exhibit "A" to MMS-150 Assignment of Record Title Interest pending BOEMRE approval - executed pursuant to Notice of Surrender dated September 4, 2010 |
| | | | | | | | | |
| | | | | | | | | |
| 0265437 | West Cameron Area | 485 | 2220 | Lease | February 1, 1973 | United States of America | Columbia Gas Development Corporation, et al | |
| 0419458 | West Cameron Area | 485 | 2220 | Production Payment Conveyance | March 25, 1973 | COLEVE, a Joint Venture | Columbia Gas Development Corporation | As supplemented and amended, including 10-12-90 |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419455 | West Cameron Area | 485 | 2220 | Assignment of Interest in Oil & Gas Lease, Bill of Sale and Conveyance with Reservation of Overriding Royalty Subject to Production Payment | October 1, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| # Not Available | West Cameron Area | 485 | 2220 | Purchase and Sale Agreement | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| 0419456 | West Cameron Area | 485 | 2220 | Distribution and Assignment of Interests in Oil and Gas Leases, Bill of Sale & Conveyance Subject to Production Payment with Substitution of Obligor | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294364 | West Cameron Area | 485 | 2220 | Unit Agreement #7543-94008 | May 1, 1994 | Minerals Management Service | Columbia Gas Development Corporation | WC 507 Unit - Unit Agreement No. 7543-94008 |
| 0310077 | West Cameron Area | 485 | 2220 | Letter Agreement for Leak Testing | May 11, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | Leak test on 12" pipeline |
| 0310077 | West Cameron Area | 485 | 2220 | Sale Agreement | May 12, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | ROW OCS-G 2122E, Seg. 4289 - 12" Pipeline |
| 0310077 | West Cameron Area | 485 | 2220 | Letter Agreement for Cut and Cap | July 9, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | Cut & cap 16" pipeline |
| 0310077 | West Cameron Area | 485 | 2220 | Sale Agreement | July 9, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | Sale of 16" riser, meter & platform equipment |
| 0310077 | West Cameron Area | 485 | 2220 | Facilities Agreement | July 15, 2009 | Stingray Pipeline Company, L.L.C. | XTO Offshore Inc. | Interconnection - WC 485 "A" and WC 509 |
| 0308965 | West Cameron Area | 485 | 2122E | Right-of-Way | Date Unknown | Minerals Management Service | | ROW OCS-G 2122E, Seg. 4289 - 12" Pipeline |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419458 | West Cameron Area | 507 (N/2) | 2549 | Production Payment Conveyance | March 25, 1973 | COLEVE, a Joint Venture | Columbia Gas Development Corporation | As supplemented and amended, including 10-12-90 |
| 0265443 | West Cameron Area | 507 (N/2) | 2549 | Lease | April 1, 1974 | United States of America | Forest Oil Corporation, et al | |
| 0419455 | West Cameron Area | 507 (N/2) | 2549 | Assignment of Interest in Oil & Gas Lease, Bill of Sale and Conveyance with Reservation of Overriding Royalty Subject to Production Payment | October 1, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| # Not Available | West Cameron Area | 507 (N/2) | 2549 | Purchase and Sale Agreement | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419456 | West Cameron Area | 507 (N/2) | 2549 | Distribution and Assignment of Interests in Oil and Gas Leases, Bill of Sale & Conveyance Subject to Production Payment with Substitution of Obligor | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| 0294364 | West Cameron Area | 507 (N/2) | 2549 | Unit Agreement #7543-94008 | May 1, 1994 | Minerals Management Service | Columbia Gas Development Corporation | WC 507 Unit - Unit Agreement No. 7543-94008 |
| 0294988 | West Cameron Area | 507 (N/2) | 2549 | Participation Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C-1 Well |
| 0294989 | West Cameron Area | 507 (N/2) | 2549 | Offshore Operating Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C Platform |
| | | | | | | | | |
| | | | | | | | | |
| 0419458 | West Cameron Area | 507 (S/2) | 10594 | Production Payment Conveyance | March 25, 1973 | COLEVE, a Joint Venture | Columbia Gas Development Corporation | As supplemented and amended, including 10-12-90 |

**EXHIBIT A-1**

-79-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265453 | West Cameron Area | 507 (S/2) | 10594 | Lease | June 1, 1989 | United States of America | Columbia Gas Development Corporation | |
| 0419455 | West Cameron Area | 507 (S/2) | 10594 | Assignment of Interest in Oil & Gas Lease, Bill of Sale and Conveyance with Reservation of Overriding Royalty Subject to Production Payment | October 1, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| # Not Available | West Cameron Area | 507 (S/2) | 10594 | Purchase and Sale Agreement | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419456 | West Cameron Area | 507 (S/2) | 10594 | Distribution and Assignment of Interests in Oil and Gas Leases, Bill of Sale & Conveyance Subject to Production Payment with Substitution of Obligor | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| 0294364 | West Cameron Area | 507 (S/2) | 10594 | Unit Agreement #7543-94008 | May 1, 1994 | Minerals Management Service | Columbia Gas Development Corporation | WC 507 Unit - Unit Agreement No. 7543-94008 |
| 0294988 | West Cameron Area | 507 (S/2) | 10594 | Participation Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C-1 Well |
| 0294989 | West Cameron Area | 507 (S/2) | 10594 | Offshore Operating Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C Platform |
| 0316109 | West Cameron Area | 507 (S/2) | 10594 | Production Handling Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | PHA WC 507 "C" - WC 485 "A" |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Agreement for the Construction and Operation of the Calumet Gas Processing Plant | January 1, 1970 | Atlantic Richfield Company | Chevron Oil Corporation, et al | C&O Agreement |
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Restated and Amended Agreement between ANR Pipeline Company and the Owners of The Calumet Gas Processing Plant | March 1, 1997 | ANR Pipeline Company | Shell Western E&P Inc. | ANR/Calumet Plant Straddle Agreement |
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Restated and Amended Agreement between Trunkline Gas Company and the Owners of The Calumet Gas Processing Plant | March 1, 1997 | Trunkline Gas Company | Shell Western E&P Inc. | Trunkline/Calumet Plant Straddle Agreement |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | First Amendment to Restated and Amended Agreement between Trunkline Gas Company and the Owners of The Calumet Gas Processing Plant | July 1, 2007 | Enterprise Gas Processing, LLC | Enterprise Gas Processing , LLC | |
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Amendment of Agreement for the Construction of the Calumet Gas Processing Plant | August 7, 2009 | Enterprise Gas Processing, LLC | Apache Corporation, et al | |
| | | | | | | | | |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Agreement for the Construction and Operation of the Yscloskey Processing Plant | July 30, 1968 | Shell Oil Company | Getty Oil Company, et al | C&O Agreement |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Hydrocarbon Fractionation Agreement | July 30, 1968 | Shell Oil Company | Getty Oil Company, et al | |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Hydrocarbon Fractionation Agreement | May 1, 1969 | Shell Oil Company | Getty Oil Company, et al | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Agreement of Settlement And Compromise | August 2, 2002 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Construction and Operating Agreement | April 1, 2003 | Dynegy Midstream Services, Limited Partnership | Anadarko E&P Company LP | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amended and Restated Straddle and Processing Agreement | April 1, 2003 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Agreement of Settlement And Compromise | April 1, 2003 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Second Amendment to Hydrocarbon Fractionation Agreement | August 1, 2003 | Enterprise Gas Processing, LLC | Apache Corporation, et al | |

**EXHIBIT A-1**

EXHIBIT A-2
ATTACHED TO AND MADE A PART OF THAT CERTAIN
PURCHASE AND SALE AGREEMENT,
DATED EFFECTIVE AS OF AUGUST 1, 2011,
BETWEEN XTO OFFSHORE INC.,
HHE ENERGY COMPANY, XH, LLC, AS SELLER,
AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER

## DESCRIPTION OF WORKING AND NET REVENUE INTERESTS

Producing working interests and net revenue interests are believed to be as follows while interests for non-producing wells, tracts and depth intervals are not given.

The net revenue interests shown do not take into account the overriding royalty interest reserved at non-producing depths, if any, as described in Exhibit A and Exhibit A-1, however, do take into account all existing overriding royalty interests expressly retained on Exhibit A and Exhibit A-1, if any, and those to be conveyed to Buyer based upon the net revenue interests shown below as provided for in the Agreement.

BRETON SOUND BLOCK(s) 27/28/29/36/37

XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | SL 15958 | SL 15958 #1D | 1D | BRETON SOUND 20 | PLAQUEMINES | 1772620501D | TEXAS PETROLEUM INVESTMENT CORPORATION | 401977 | SI | GAS | 50.00000 | 41.07842 | | |
| | SL 4574 | VUA SUA; SL 4574 #2 | 2 | BRETON SOUND 20 | PLAQUEMINES | 17726205010000 | TEXAS PETROLEUM INVESTMENT CORPORATION | 401822 | PDP | GAS | 50.00000 | 41.07842 | | |
| | SL 1999 | 10,200 RA SUA;SL 1999 #2 | 2 | BRETON SOUND 20 | PLAQUEMINES | 17726205480000 | TEXAS PETROLEUM INVESTMENT CORPORATION | 401818 | PDP | GAS | 75.00000 | 63.98378 | | |
| | SL 1999 | SL 1999 #50 | 50 | BRETON SOUND 20 | PLAQUEMINES | 17726205550000 | TEXAS PETROLEUM INVESTMENT CORPORATION | 401819 | PDP | OIL | 100.00000 | 80.67708 | | |

EXHIBIT A-2

**BRETON SOUND BLOCK(s) 44/45/52/53**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | SL 15683 | TEX W RA SUA; SL 15683 #3 | 3 | BRETON SOUND 53 | PLAQUEMINES | 17726205310000 | CENTURY OFFSHORE | 401815 | PDP | GAS | 50.00000 | 38.84751 | | |
| | SL 15683 | TEX W RA SUA; SL 15683 #1 ALT | 1ALT | BRETON SOUND 53 | PLAQUEMINES | 17726205260000 | CENTURY OFFSHORE | 401976 | PDP | GAS | 50.00000 | 38.84751 | | |
| | SL 17675 | UV B RA VUA; SL 17675 #1 | 1 | BRETON SOUND 53 | PLAQUEMINES | 17726205510000 | CENTURY OFFSHORE | 401817 | PDP | GAS | 37.50000 | 28.87500 | | |
| | SL 3770 | SL 3770 #1 | 1 | BRETON SOUND 53 | PLAQUEMINES | 17726000010000 | CENTURY OFFSHORE | 401842 | SI | OIL | 50.00000 | 37.50000 | | |
| | SL 3770 | SL 3770 #1D | 1D | BRETON SOUND 53 | PLAQUEMINES | 17726000010000 | CENTURY OFFSHORE | 401843 | SI | OIL | 50.00000 | 37.50000 | | |
| | SL 3770 | SL 3770 #7 | 7 | BRETON SOUND 53 | PLAQUEMINES | 17726201580000 | CENTURY OFFSHORE | 401821 | PDP | OIL | 50.00000 | 37.50000 | | |
| | SL 3770 | SL 3770 #8 | 8 | BRETON SOUND 53 | PLAQUEMINES | 17726201630000 | CENTURY OFFSHORE | 401821 | PDP | OIL | 50.00000 | 37.50000 | | |
| | SL 4772 | SL 4772 #1 | 1 | BRETON SOUND 53 | PLAQUEMINES | 17726003000000 | CENTURY OFFSHORE | 401970 | SI | OIL | 50.00000 | 41.66667 | | |

**EAST CAMERON BLOCK 9/14**

**XH, LLC**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EC14 | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 #12 | #12 | East Cameron 9/14 | Offshore Louisiana | 177034060600S03 | MARINER ENERGY RESOURCES | 401896 | SI | OIL | 50.00000 | 41.66666 | | |
| EC14 | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 #13 | #13 | East Cameron 9/14 | Offshore Louisiana | 177034101300S04 | MARINER ENERGY RESOURCES | 401897 | PDP | GAS | 50.00000 | 41.66666 | | |

**EXHIBIT A-2**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-06 | B-06 | East Cameron 9/14 | Offshore Louisiana | 177032003700S03 | MARINER ENERGY RESOURCES | | TA | OIL | 50.00000 | 41.66666 | | |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-07 | B-07 | East Cameron 9/14 | Offshore Louisiana | 177032004000S04 | MARINER ENERGY RESOURCES | 401898 | SI | OIL | 50.00000 | 41.66666 | | |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-08 | B-08 | East Cameron 9/14 | Offshore Louisiana | 177032004200S01 | MARINER ENERGY RESOURCES | | TA | GAS | 50.00000 | 41.66666 | | |
| EC14B | OCS-G-01440 EC 9 | OCS-G-01440 EC 9 B-09 | B-09 | East Cameron 9/14 | Offshore Louisiana | 177032004300S04 | MARINER ENERGY RESOURCES | 401899 | SI | GAS | 50.00000 | 41.66666 | | |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-10ST1 | B-10ST1 | East Cameron 9/14 | Offshore Louisiana | 177032004601S03 | MARINER ENERGY RESOURCES | 401900 | PDP | OIL | 50.00000 | 41.66666 | | |
| EC14CF | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 CF-01 | CF-01 | East Cameron 9/14 | Offshore Louisiana | 177030032800S04 | MARINER ENERGY RESOURCES | | SI | OIL | 50.00000 | 41.66666 | | |
| EC14CF | OCS-G-13572 EC 14 | OCS-G-13572 EC 14 CF-02 | CF-02 | East Cameron 9/14 | Offshore Louisiana | 177034068600S05 | MARINER ENERGY RESOURCES | 402648 | TA | GAS | 50.00000 | 0.00000 | | |

**EAST CAMERON BLOCK 178**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EC178D | OCS-G-27834 EC178 | OCS-G-27834 EC178 #D1STBP1 | #D1STBP1 | EAST CAMERON 185 | OFFSHORE LOUISIANA | 177034101202S01 | XTO OFFSHORE INC. | 401901 | PDP | GAS | 60.00000 | 49.10000 | | |

**Well name change from #1STBP1 is pending.**

EUGENE ISLAND BLOCK 273D (EI 272/273/284/285 Unit)

XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 B-01BP1 | B-01BP1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104114800S03 | MARINER ENERGY RESOURCES | 401903 | SI | GAS | 15.00000 | 12.50000 | | |
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 B-03 | B-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104116400S01 | MARINER ENERGY RESOURCES | 403386 | SI | GAS | 15.00000 | 12.50000 | | |
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 B-05A | B-05 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104116500D03 | MARINER ENERGY RESOURCES | 401911 | SI | GAS | 15.00000 | 12.50000 | | |
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 B-05D | B-05D | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104116500D02 | MARINER ENERGY RESOURCES | 401911 | SI | GAS | 15.00000 | 12.50000 | | |
| EI273D | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 D-01 | D-01 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104155900S01 | MARINER ENERGY RESOURCES | 401761 | PDP | GAS | 12.14659 | 10.12216 | | |
| EI273D | OCS-G-0987 EI 273 | OCS-G-0987 EI 273 D-02 | D-02 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158200S01 | MARINER ENERGY RESOURCES | 401760 | PDP | GAS | 12.14659 | 10.12216 | | |
| EI273D | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 D-03 | D-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158300S01 | MARINER ENERGY RESOURCES | 401905 | SI | GAS | 12.14659 | 10.12216 | | |
| EI273D | OCS-G-0986 EI 272 | OCS-G-0986 EI 272 D-04 | D-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158400D01 | MARINER ENERGY RESOURCES | 401759 | SI | GAS | 12.14659 | 10.12216 | | |
| EI273D | OCS-G-0986 EI 272 | OCS-G-0986 EI 272 D-04D | D-04D | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158400D02 | MARINER ENERGY RESOURCES | 401759 | PDP | GAS | 12.14659 | 10.12216 | | |

EUGENE ISLAND BLOCKS 286/292/293/308/309 Unit

XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

EXHIBIT A-2                                                      -91-

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EI286I | OCS-G-00993 EI 286 | OCS-G-00993 EI 286 D-09ST | D-09ST | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104002202S01 | MARINER ENERGY RESOURCES | | TA | OIL | 26.66320 | 22.19332 | 0.00000 | 0.00000 |
| EI309G | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-01 | D-01 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104000100S02 | MARINER ENERGY (FOREST OIL) | 403251 | TA | OIL | 26.66320 | 22.19332 | |
| EI309G | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-02 | D-02 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104000400S01 | MARINER ENERGY (FOREST OIL) | | TA | OIL | 26.66320 | 22.19332 | |
| EI309G | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-03 | D-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104000800S03 | MARINER ENERGY (FOREST OIL) | | TA | OIL | 26.66320 | 22.19332 | |
| EI309G | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-04 | D-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001200S01 | MARINER ENERGY (FOREST OIL) | | TA | OIL | 26.66320 | 22.19332 | |
| EI309G | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-05 | D-05 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001400S01 | MARINER ENERGY (FOREST OIL) | | TA | OIL | 26.66320 | 22.19332 | |
| EI309G | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-07 | D-07 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001500S01 | MARINER ENERGY (FOREST OIL) | | TA | OIL | 26.66320 | 22.19332 | |
| EI309G | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-08 | D-08 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001900S01 | MARINER ENERGY (FOREST OIL) | | TA | OIL | 26.66320 | 22.19332 | |
| EI309G | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-011A | D-11A | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104100800D03 | MARINER ENERGY (FOREST OIL) | | TA | OIL | 26.66320 | 22.19332 | |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-01A | B-01A | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000200D03 | MARINER ENERGY RESOURCES | 401909 | TA | OIL | 30.00000 | 25.00000 | |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-02 | B-02 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000500S01 | MARINER ENERGY RESOURCES | 401913 | TA | OIL | 30.00000 | 25.00000 | |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-03 | B-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000600S01 | MARINER ENERGY RESOURCES | 18076 (HUNT) | TA | OIL | 30.00000 | 25.00000 | |

**EXHIBIT** A-2

| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-03ST1 | B-03ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000601S02 | MARINER ENERGY RESOURCES | 401910 | TA | OIL | 30.00000 | 25.00000 |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-04 | B-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001200S01 | MARINER ENERGY RESOURCES | | TA | OIL | 30.00000 | 25.00000 |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-05ST1 | B-05ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001300S03 | MARINER ENERGY RESOURCES | 401911 | TA | OIL | 30.00000 | 25.00000 |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-06 | B-06 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001400S01 | MARINER ENERGY RESOURCES | | TA | OIL | 30.00000 | 25.00000 |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-07 | B-07 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001500S01 | MARINER ENERGY RESOURCES | | TA | OIL | 30.00000 | 25.00000 |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-08 | B-08 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001600S01 | MARINER ENERGY RESOURCES | | TA | OIL | 30.00000 | 25.00000 |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-9ST1 | B-09ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065300D02 | MARINER ENERGY RESOURCES | 401828 | TA | OIL | 30.00000 | 25.00000 |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-10 | B-10 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065400D02 | MARINER ENERGY RESOURCES | | TA | OIL | 30.00000 | 25.00000 |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-11ST1 | B-11ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065500D03 | MARINER ENERGY RESOURCES | 401914 | TA | OIL | 30.00000 | 25.00000 |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-12ST1 | B-12ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065000D02 | MARINER ENERGY RESOURCES | 401915 | TA | OIL | 30.00000 | 25.00000 |
| EI292D | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 D-12 | D-12 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104101600D04 | MARINER ENERGY RESOURCES | 401912 | TA | OIL | 26.66320 | 22.19332 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EI293 | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 D-6 | D-6 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102004100S04 | MARINER ENERGY (FOREST OIL) | 401916 | TA | OIL | 26.66320 | 22.19332 |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-01 | G-01 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104045600D03 | MARINER ENERGY RESOURCES | 401928 | SI | OIL | 28.25430 | 23.54525 |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-01B | G-01B | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104045600D04 | MARINER ENERGY RESOURCES | 401928 | PDP | OIL | 28.25430 | 23.54525 |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-02ST | G-02ST | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104049801S01 | MARINER ENERGY RESOURCES | 401929 | PDP | OIL | 28.25430 | 23.54525 |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-04 | G-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104050700S01 | MARINER ENERGY RESOURCES | 401930 | PDP | OIL | 28.25430 | 23.54525 |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-07 | G-07 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104049300S01 | MARINER ENERGY RESOURCES | | SI | OIL | 28.25430 | 23.54525 |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-08 | G-08 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104048900D05 | MARINER ENERGY RESOURCES | 403325 | PDP | GAS | 28.25430 | 23.54525 |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-09 | G-09 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104054100S01 | MARINER ENERGY RESOURCES | 401931 | SI | OIL | 28.25430 | 23.54525 |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-11ST | G-11ST | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104053001D02 | MARINER ENERGY RESOURCES | | SI | OIL | 28.25430 | 23.54525 |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-13 | G-13 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104052300D01 | MARINER ENERGY RESOURCES | 401932 | SI | OIL | 28.25430 | 23.54525 |

**EXHIBIT A-2**

**EUGENE ISLAND BLOCK 309J (EI 309/313)**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EI309J | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 J-01ST | J-01ST | EUGENE ISLAND SA 292 | OFFSHORE LOUISIANA | 177104129701D02 | XTO OFFSHORE INC. | 401831 | SI | GAS | 37.50000 | 30.87500 | | |
| EI309J | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 J-02 | J-02 | EUGENE ISLAND SA 292 | OFFSHORE LOUISIANA | 177104130600S01 | XTO OFFSHORE INC. | 401937 | SI | OIL | 37.50000 | 30.87500 | | |
| EI309J | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 J-03 | J-03 | EUGENE ISLAND SA 292 | OFFSHORE LOUISIANA | 177104150300S02 | XTO OFFSHORE INC. | 401938 | SI | OIL | 37.50000 | 30.87500 | | |
| EI309J | OCS-G-2608 EI 313 | OCS-G-2608 EI 313 J-04 | J-04 | EUGENE ISLAND SA 330 | OFFSHORE LOUISIANA | 177104150600S01 | XTO OFFSHORE INC. | 401940 | SI | GAS | 25.00000 | 19.58333 | | |

**EUGENE ISLAND BLOCK 311/312**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EI312D | OCS-G-22679 EI 312 | OCS-G-22679 EI 312 D-01 | D-01 | EUGENE ISLAND SA 333 | OFFSHORE LOUISIANA | 177104160900S01 | XTO OFFSHORE INC. | 401793 | PDP | GAS | 60.00000 | 41.08800 | 60.00000 | 42.04800 |
| EI312D | OCS-G-22679 EI 312 | OCS-G-22679 EI 312 D-02 | D-02 | EUGENE ISLAND SA 333 | OFFSHORE LOUISIANA | 177104161900S01 | XTO OFFSHORE INC. | 401794 | PDP | GAS | 60.00000 | 41.08800 | 60.00000 | 41.08800 |
| EI312D | OCS-G-27918 EI 311 | OCS-G-27918 EI 311 D-03 | D-03 | EUGENE ISLAND SA 333 | OFFSHORE LOUISIANA | 177104162000S01 | XTO OFFSHORE INC. | 401795 | SI | GAS | 60.00000 | 46.84800 | 60.00000 | 46.84800 |

**EUGENE ISLAND BLOCK(s) 314 & 315**

**EXHIBIT A-2**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EI309G | OCS-G-1981 EI 314 | OCS-G-1981 EI 314 G-03 | G-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104048200S02 | MARINER ENERGY RESOURCES | 401941 | SI | OIL | 28.25430 | 0.00000 | | |
| EI309G | OCS-G-1981 EI 314 | OCS-G-1981 EI 314 G-05ST2 | G-05ST2 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104051402S01 | MARINER ENERGY RESOURCES | 401942 | SI | OIL | 28.25430 | 0.00000 | | |
| EI309G | OCS-G-1981 EI 314 | OCS-G-1981 EI 314 G-06 | G-06 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104051800S02 | MARINER ENERGY RESOURCES | 401943 | SI | OIL | 28.25430 | 0.00000 | | |
| EI309G | OCS-G-1982 EI 315 | OCS-G-1982 EI 315 G-12 | G-12 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104046600S01 | MARINER ENERGY RESOURCES | 401944 | SI | GAS | 28.25430 | 0.00000 | | |

**HIGH ISLAND BLOCK 34**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HI34B | OCS-G-20655 HI 34 | OCS-G-20655 HI 34 B-01 | B-01 | HIGH ISLAND 22 | OFFSHORE TEXAS | 427084055800S01 | XTO OFFSHORE INC. | 400406 | PDP | GAS | 45.00000 | 35.10000 | | |

**HIGH ISLAND BLOCK(S) A-365/A-376**

**XTO OFFSHORE INC.**

EXHIBIT A-2

-96-

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-01 | A-01 | High Island A376 | Offshore Louisiana | 427114052200S01 | APACHE CORPORATION | 400401 | PDP | OIL | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-02ST1 | A-02ST1 | High Island A376 | Offshore Louisiana | 427114052601S03 | APACHE CORPORATION | 403573 | PDP | GAS | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-03ST | A-03ST | High Island A376 | Offshore Louisiana | 427114052701S01 | APACHE CORPORATION | | SI | OIL | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-03DST | A-03STD | High Island A376 | Offshore Louisiana | 427114052700D03 | APACHE CORPORATION | 18323 (Hunt #) | PDP | GAS | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-04 | A-04 | High Island A376 | Offshore Louisiana | 427114053700S01 | APACHE CORPORATION | 402732 | SI | OIL | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-05 | A-05 | High Island A376 | Offshore Louisiana | 427114053500S01 | APACHE CORPORATION | | SI | OIL | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-06 | A-06 | High Island A376 | Offshore Louisiana | 427114053100S02 | APACHE CORPORATION | 18315 (Hunt #) | TA | OIL | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-07 | A-07 | High Island A376 | Offshore Louisiana | 427114054100S02 | APACHE CORPORATION | 403566 | PDP | GAS | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-08 | A-08 | High Island A376 | Offshore Louisiana | 427114054800S03 | APACHE CORPORATION | 403558 | PDP | GAS | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-09 | A-09 | High Island A376 | Offshore Louisiana | 427114054400S03 | APACHE CORPORATION | 403574 | SI | OIL | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-10 | A-10 | High Island A376 | Offshore Louisiana | 427114055200S0I | APACHE CORPORATION | 403559 | SI | OIL | 6.25000 | 5.20833 | | |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-11 | A-11 | High Island A376 | Offshore Louisiana | 427114055000S0I | APACHE CORPORATION | | SI | OIL | 6.25000 | 5.20833 | | |

**EXHIBIT A-2**

| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-12 | A-12 | High Island A376 | Offshore Louisiana | 427114055600S01 | APACHE CORPORATION | 403560 | PDP | GAS | 6.25000 | 5.20833 |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-12D | A-12D | High Island A376 | Offshore Louisiana | 427114055600D03 | APACHE CORPORATION | 403561 | SI | GAS | 6.25000 | 5.20833 |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-13ST1 | A-13ST1 | High Island A376 | Offshore Louisiana | 427114055801S01 | APACHE CORPORATION | 403562 | PDP | OIL | 6.25000 | 5.20833 |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-14ST2 | A-14ST2 | High Island A376 | Offshore Louisiana | 427114056002S02 | APACHE CORPORATION | 403155 | PDP | GAS | 6.25000 | 5.20833 |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-16 | A-16 | High Island A376 | Offshore Louisiana | 427114056700S01 | APACHE CORPORATION | | PDP | OIL | 6.25000 | 5.20833 |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-17 | A-17 | High Island A376 | Offshore Louisiana | 427114057200S02 | APACHE CORPORATION | 403567 | SI | OIL | 6.25000 | 5.20833 |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-18 | A-18 | High Island A376 | Offshore Louisiana | 427114057300S02 | APACHE CORPORATION | 403568 | SI | OIL | 6.25000 | 5.20833 |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-19 | A-19 | High Island A376 | Offshore Louisiana | 427114057400S03 | APACHE CORPORATION | 403154 | PDP | GAS | 6.25000 | 5.20833 |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-20 | A-20 | High Island A376 | Offshore Louisiana | 427114057500S01 | APACHE CORPORATION | | TA | OIL | 6.25000 | 5.20833 |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-21 | A-21 | High Island A376 | Offshore Louisiana | 427114057600S03 | APACHE CORPORATION | 403563 | PDP | OIL | 6.25000 | 5.20833 |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-22 | A-22 | High Island A376 | Offshore Louisiana | 427114057700S01 | APACHE CORPORATION | 403569 | SI | OIL | 6.25000 | 5.20833 |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-24 | A-24 | High Island A376 | Offshore Louisiana | 427114066300S02 | APACHE CORPORATION | 403564 | PDP | OIL | 6.25000 | 5.20833 |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-25 | A-25 | High Island A376 | Offshore Louisiana | 427114066500S01 | APACHE CORPORATION | 400402 | PDP | OIL | 6.25000 | 5.20833 |

**EXHIBIT** A-2

| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-01 | B-01 | High Island A376 | Offshore Louisiana | 427114068700S03 | APACHE CORPORATION | 403570 | PDP | OIL | 6.25000 | 5.20833 |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-02BP1 | B-02BP1 | High Island A376 | Offshore Louisiana | 427114068900S03 | APACHE CORPORATION | 403575 | SI | GAS | 6.25000 | 5.20833 |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-03ST1 | B-03ST1 | High Island A376 | Offshore Louisiana | 427114078701S02 | APACHE CORPORATION | 403571 | PDP | GAS | 6.25000 | 5.20833 |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-04ST1 | B-04ST1 | High Island A376 | Offshore Louisiana | 427114079001S01 | APACHE CORPORATION | | SI | GAS | 6.25000 | 5.20833 |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-05 | B-05 | High Island A376 | Offshore Louisiana | 427114079600S01 | APACHE CORPORATION | | SI | GAS | 0.00000 | 1.04167 |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-01 | C-01 | High Island A376 | Offshore Louisiana | 427114088900S01 | APACHE CORPORATION | 40354I | PDP | OIL | 6.25000 | 5.20833 |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-02 | C-02 | High Island A376 | Offshore Louisiana | 427114089600 | APACHE CORPORATION | 403109 | PDP | OIL | 6.25000 | 5.20833 |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-03 | C-03 | High Island A376 | Offshore Louisiana | 427114089500 | APACHE CORPORATION | 403145 | TA | OIL | 6.25000 | 5.20833 |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-04 | C-04 | High Island A376 | Offshore Louisiana | 427114089400 | APACHE CORPORATION | 403146 | PDP | OIL | 6.25000 | 5.20833 |

**HIGH ISLAND BLOCK A-554**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT A-2**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HI554A | OCS-G-21356 HI A554 | OCS-G-21356 HI A554 A-01D | A-01D | HI A552 | Offshore Louisiana | 427094110400D02 | HUNT OIL COMPANY | 402723 | PDP | GAS | 25.00000 | 20.83333 | |
| HI554A | OCS-G-21356 HI A554 | OCS-G-21356 HI A554 A-01 | A-01 | HI A552 | Offshore Louisiana | 427094110400D01 | HUNT OIL COMPANY | 402724 | PDP | GAS | 25.00000 | 20.83333 | |

**MAIN PASS BLOCK 29**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP029 | OCS-G-27196 MP29 | OCS-G-27196 MP29 #1 | #1 | MAIN PASS 29 | OFFSHORE LOUISIANA | 177254081901S01 | XTO OFFSHORE INC. | 401945 | PDP | GAS | 50.00000 | 40.16667 | 100.00000 | 80.33333 |

**MAIN PASS BLOCK 94**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP94 #5 | #5 | MAIN PASS 094 | Offshore Louisiana | 177254081800S01 | W&T OFFSHORE, INC. | 401786 | PDP | GAS | 20.85200 | 16.12938 | | |
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP 94 #4ST | #4ST | MAIN PASS 094 | Offshore Louisiana | 177254072400S01 | W&T OFFSHORE, INC. | 401785 | PDP | GAS | 20.85200 | 16.12938 | | |

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

EXHIBIT A-2

| | | | | MAIN PASS 094 | Offshore Louisiana | 177254081800S01 | W&T OFFSHORE, INC. | 401786 | PDP | GAS | 5.88133 | 4.54931 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP94 #5 | #5 | MAIN PASS 094 | Offshore Louisiana | 177254081800S01 | W&T OFFSHORE, INC. | 401786 | PDP | GAS | 5.88133 | 4.54931 | | |
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP, 94 #4ST | #4ST | MAIN PASS 094 | Offshore Louisiana | 177254072400S01 | W&T OFFSHORE, INC. | 401785 | PDP | GAS | 5.88133 | 4.54931 | | |

**MAIN PASS BLOCK 101/106**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-01 | B-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254074600S01 | XTO OFFSHORE INC. | 401801 | PDP | GAS | 60.45000 | 45.65130 | | |
| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-02 | B-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254075100S01 | XTO OFFSHORE INC. | 401802 | PDP | GAS | 60.45000 | 45.65130 | | |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-01 | D-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076000S01 | XTO OFFSHORE INC. | 401948 | TA | OIL | 60.45000 | 45.65130 | | |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-02 | D-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076100S02 | XTO OFFSHORE INC. | 401949 | PDP | GAS | 60.45000 | 45.65130 | 66.42858 | 50.45408 |
| MP101D | OCS-G-23967 MP106 | OCS-G-23967 MP106 D-03ST1 | D-03ST1 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077101S01 | XTO OFFSHORE INC. | 401950 | PDP | GAS | 78.00000 | 56.94000 | | |
| MP101D | OCS-G-03798 MP102 | OCS-G-03798 MP102 D-04A | D-04A | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077400S02 | XTO OFFSHORE INC. | 401837 | TA | GAS | 78.00000 | 52.00002 | | |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-05 | D-05 | MAIN PASS 93 | OFFSHORE LOUISIANA | 177254078000S01 | XTO OFFSHORE INC. | 401803 | PDP | OIL | 60.45000 | 45.65130 | | |

**EXHIBIT A-2**

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP101E (#6) | OCS-G-22792 MP101 | OCS-G-22792 MP101 E-01 (#6) | E-01 (#6) | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254079000D03 | XTO OFFSHORE INC. | 401834 | PDP | GAS | 60.45000 | 45.65130 | | | |

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-01 | B-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254074600S01 | XTO OFFSHORE INC. | 401801 | PDP | GAS | 17.05000 | 12.87603 | | |
| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-02 | B-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254075100S01 | XTO OFFSHORE INC. | 401802 | PDP | GAS | 17.05000 | 12.87603 | | |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-01 | D-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076000S01 | XTO OFFSHORE INC. | 401948 | TA | OIL | 17.05000 | 12.87603 | | |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-02 | D-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076100S02 | XTO OFFSHORE INC. | 401949 | PDP | GAS | 17.05000 | 12.87603 | 18.73626 | 14.23066 |
| MP101D | OCS-G-23967 MP106 | OCS-G-23967 MP106 D-03ST1 | D-03ST1 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077101S01 | XTO OFFSHORE INC. | 401950 | PDP | GAS | 22.00000 | 16.06000 | | |
| MP101D | OCS-G-03798 MP102 | OCS-G-03798 MP102 D-04A | D-04A | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077400S02 | XTO OFFSHORE INC. | 401837 | TA | GAS | 22.00000 | 14.66668 | | |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-05 | D-05 | MAIN PASS 93 | OFFSHORE LOUISIANA | 177254078000S01 | XTO OFFSHORE INC. | 401803 | PDP | OIL | 17.05000 | 12.87603 | | |
| MP101E (#6) | OCS-G-22792 MP101 | OCS-G-22792 MP101 E-01 (#6) | E-01 (#6) | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254079000D03 | XTO OFFSHORE INC. | 401834 | PDP | GAS | 17.05000 | 12.87603 | | |

**EXHIBIT A-2**

**MAIN PASS BLOCK 101**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP101B | OCS-G 22792 MP101 | OCS-G 22792 MP101B3 | B3 | MAIN PASS 101 | Offshore Louisiana | 177254081000S01 | CENTURY EXPLORATION NEW ORLEANS, INC. | 401946 | PDP | GAS | 60.45000 | 45.65130 | 0.00000 | 0.00000 |

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP101B | OCS-G 22792 MP101 | OCS-G 22792 MP101B3 | B3 | MAIN PASS 101 | Offshore Louisiana | 177254081000S01 | CENTURY EXPLORATION NEW ORLEANS, INC. | 401946 | PDP | GAS | 17.05000 | 12.87603 | 0.00000 | 0.00000 |

**MAIN PASS BLOCK 109**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP109C | OCS-G-22794 MP109 | OCS-G-22794 MP109 C-I | C-01 | MAIN PASS 109 | Offshore Louisiana | 177254076700S03 | W&T OFFSHORE, INC. | 401952 | SI | GAS | 25.99740 | 21.66472 | | |
| MP109 D | OCS-G-22794 MP109 | OCS-G-22794 MP109 D-01ST00BP02 | D-01ST00BP02 | MAIN PASS 109 | Offshore Louisiana | 177254076802S02 | W&T OFFSHORE, INC. | 401953 | PDP | GAS | 25.99740 | 21.66472 | | |

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| MP109C | OCS-G-22794 MP109 | OCS-G-22794 MP109 C-1 | C-01 | MAIN PASS 109 | Offshore Louisiana | 177254076700S03 | W&T OFFSHORE, INC. | 401952 | SI | GAS | 7.33260 | 6.11056 |
| MP109D | OCS-G-22794 MP109 | OCS-G-22794 MP109 D-01ST00BP02 | D-01ST00BP02 | MAIN PASS 109 | Offshore Louisiana | 177254076802S02 | W&T OFFSHORE, INC. | 401953 | PDP | GAS | 7.33260 | 6.11056 |

**MAIN PASS BLOCK 112**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP112A | OCS-G-09707 MP 112 | OCS-G-09707 MP 112 A-01ST1 | A-01ST1 | MAIN PASS 112 | OFFSHORE LOUISIANA | 177254054301S02 | XTO OFFSHORE INC. | 401956 | PDP | OIL | 100.00000 | 83.33333 | | |
| MP112A | OCS-G-09707 MP 112 | OCS-G-09707 MP 112 A-02 | A-02 | MAIN PASS 112 | OFFSHORE LOUISIANA | 177254085400S01 | XTO OFFSHORE INC. | 401958 | PDP | GAS | 100.00000 | 83.33333 | | |
| MP No. 2 | OCS-G-09707 MP 112 | OCS-G-09707 MP 112 02 | 2 | MAIN PASS 112 | OFFSHORE LOUISIANA | 177254054400S02 | XTO OFFSHORE INC. | 401957 | SI | GAS | 100.00000 | 83.33333 | | |

**MAIN PASS BLOCK 114**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP114 | OCS-G-27201 MP 114 | OCS-G-27201 MP 114 #1ST1 | #1ST1 | MAIN PASS 114 | OFFSHORE LOUISIANA | 177254084001S01 | XTO OFFSHORE INC. | 401959 | PDP | GAS | 100.00000 | 83.33333 | | |

**MAIN PASS BLOCK 116**

**EXHIBIT A-2**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-01 | B-01 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254017600S03 | XTO OFFSHORE INC. | 401840 | SI | GAS | 100.00000 | 83.33333 | | |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-02 | B-02 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254018800S02 | XTO OFFSHORE INC. | 401961 | SI | GAS | 100.00000 | 83.33333 | | |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-04 | B-04 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254023500S01 | XTO OFFSHORE INC. | 401962 | SI | GAS | 100.00000 | 83.33333 | | |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-06 | B-06 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254052200S01 | XTO OFFSHORE INC. | 401963 | SI | GAS | 100.00000 | 83.33333 | | |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-07 | B-07 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254052300D02 | XTO OFFSHORE INC. | 401964 | SI | GAS | 100.00000 | 83.33333 | | |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-09 | B-09 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254083700 | XTO OFFSHORE INC. | 401965 | TA | GAS | 100.00000 | 83.33333 | | |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 #08 | #08 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254078600D03 | XTO OFFSHORE INC. | 401839 | SI | GAS | 100.00000 | 83.33333 | | |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 #08D | #08D | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254078600D04 | XTO OFFSHORE INC. | 401838 | SI | GAS | 100.00000 | 83.33333 | | |

**MAIN PASS BLOCK 118**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP118A | OCS-G 22797 MP 118 | OCS-G 22797 MP 118 A-01 | A-01 | MAIN PASS 118 | OFFSHORE LOUISIANA | 177254081100S01 | XTO OFFSHORE INC. | 401966 | PDP | GAS | 83.33333 | 61.11111 | | |

**MAIN PASS BLOCK 125**

**EXHIBIT A-2**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP125B | OCS-G-25019 MP125 | OCS-G-25019 MP125 B-01 | B-01 | MAIN PASS 125 | OFFSHORE LOUISIANA | 177254084402S01 | XTO OFFSHORE INC. | 401968 | PDP | GAS | 62.50000 | 52.08333 | | |

**SOUTH MARSH ISLAND BLOCK 40/41**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01 | B-01 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074083600D01 | XTO OFFSHORE INC. | 401787 | SI | OIL | 89.00000 | 70.60667 | | |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01D | B-01D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074083600D02 | XTO OFFSHORE INC. | 401788 | PDP | OIL | 89.00000 | 70.60667 | | |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-02ST | B-02ST | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074084901S01 | XTO OFFSHORE INC. | 401868 | PDP | OIL | 89.00000 | 70.60667 | | |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-03 | B-03 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085300S01 | XTO OFFSHORE INC. | 401763 | PDP | OIL | 89.00000 | 70.60667 | | |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04 | B-04 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085400D01 | XTO OFFSHORE INC. | 401887 | SI | OIL | 89.00000 | 70.60667 | | |
| SMI40B | OCS-G-01192 SMI 4I | OCS-G-1192 SMI 41 B-04D | B-04D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085400D02 | XTO OFFSHORE INC. | 401888 | PDP | OIL | 89.00000 | 70.60667 | | |

EXHIBIT A-2

-106-

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04E | B-04E | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085400D03 | XTO OFFSHORE INC. | 401764 | PDP | OIL | 89.00000 | 70.60667 |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-05 | B-05 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085700D01 | XTO OFFSHORE INC. | 401865 | SI | GAS | 89.00000 | 70.60667 |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-05D | B-05D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085700D02 | XTO OFFSHORE INC. | 401889 | PDP | OIL | 89.00000 | 70.60667 |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-06 | B-06 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074087600S01 | XTO OFFSHORE INC. | 401766 | PDP | OIL | 89.00000 | 70.60667 |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-07 | B-07 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089800D01 | XTO OFFSHORE INC. | 402019 | PDP | GAS | 89.00000 | 70.60667 |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-07D | B-07D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089800D02 | XTO OFFSHORE INC. | 402967 | PDP | GAS | 89.00000 | 70.60667 |
| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02 | C-02 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089500D01 | XTO OFFSHORE INC. | 402020 | PDP | GAS | 71.20000 | 59.33333 |
| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02D | C-02D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089500D02 | XTO OFFSHORE INC. | 402608 | PDP | GAS | 71.20000 | 59.33333 |
| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 01ST2 | JA-01ST2 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074063600S02 | XTO OFFSHORE INC. | 402021 | SI | GAS | 89.00000 | 74.16666 |
| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 02BP01 | JA-02 BP01 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074069100S01 | XTO OFFSHORE INC. | 401866 | SI | GAS | 89.00000 | 74.16666 |

**EXHIBIT A-2**

-107-

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01 | B-01 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074083600D01 | XTO OFFSHORE INC. | 401787 | SI | OIL | 11.00000 | 8.72666 | | |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01D | B-01D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074083600D02 | XTO OFFSHORE INC. | 401788 | PDP | OIL | 11.00000 | 8.72666 | | |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-02ST | B-02ST | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074084901S01 | XTO OFFSHORE INC. | 401868 | PDP | OIL | 11.00000 | 8.72666 | | |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-03 | B-03 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085300S01 | XTO OFFSHORE INC. | 401763 | PDP | OIL | 11.00000 | 8.72666 | | |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04 | B-04 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085400D01 | XTO OFFSHORE INC. | 401887 | SI | OIL | 11.00000 | 8.72666 | | |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04D | B-04D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085400D02 | XTO OFFSHORE INC. | 401888 | PDP | OIL | 11.00000 | 8.72666 | | |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04E | B-04E | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085400D03 | XTO OFFSHORE INC. | 401764 | PDP | OIL | 11.00000 | 8.72666 | | |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-05 | B-05 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085700D01 | XTO OFFSHORE INC. | 401865 | SI | GAS | 11.00000 | 8.72666 | | |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-05D | B-05D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085700D02 | XTO OFFSHORE INC. | 401889 | PDP | OIL | 11.00000 | 8.72666 | | |

**EXHIBIT A-2**

| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-06 | B-06 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074087600S01 | XTO OFFSHORE INC. | 401766 | PDP | OIL | 11.00000 | 8.72666 | | |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-07 | B-07 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089800D01 | XTO OFFSHORE INC. | 402019 | PDP | GAS | 11.00000 | 8.72666 | | |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-07D | B-07D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089800D02 | XTO OFFSHORE INC. | 402967 | PDP | GAS | 11.00000 | 8.72666 | | |
| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02 | C-02 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089500D01 | XTO OFFSHORE INC. | 402020 | PDP | GAS | 8.80000 | 7.33333 | | |
| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02D | C-02D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089500D02 | XTO OFFSHORE INC. | 402608 | PDP | GAS | 8.80000 | 7.33333 | | |
| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 01ST2 | JA-01ST2 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074063600S02 | XTO OFFSHORE INC. | 402021 | SI | GAS | 11.00000 | 9.16666 | | |
| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 02BP01 | JA-02 BP01 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074069100S01 | XTO OFFSHORE INC. | 401866 | SI | GAS | 11.00000 | 9.16666 | | |

**SOUTH MARSH ISLAND BLOCK 44**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI44C | OCS-G-23840 SMI 44 | OCS-G-23840 SMI 44 C-01 | C-01 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074088300D01 | XTO OFFSHORE INC. | 401804 | SI | GAS | 50.00000 | 36.66667 | | |

EXHIBIT A-2

| SMI44C | OCS-G-23840 SMI 44 | OCS-G-23840 SMI 44 C-01D | C-01D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074088300D02 | XTO OFFSHORE INC. | 401805 | PDP | GAS | 50.00000 | 36.66667 | | |

## SOUTH MARSH ISLAND BLOCK 109

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-01 | A-01 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091500S01 | XTO OFFSHORE INC. | 401812 | PDP | GAS | 54.16667 | 42.25000 | | |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-02 | A-02 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091600D01 | XTO OFFSHORE INC. | 401813 | PDP | GAS | 54.16667 | 42.25000 | | |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-02D | A-02D | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091600D02 | XTO OFFSHORE INC. | 401895 | PDP | GAS | 54.16667 | 42.25000 | | |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-03 | A-03 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091700S01 | XTO OFFSHORE INC. | 401979 | SI | GAS | 54.16667 | 42.25000 | | |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-04 | A-04 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084092800S01 | XTO OFFSHORE INC. | 401814 | SI | GAS | 54.16667 | 42.25000 | | |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-05 | A-05 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084092900S01 | XTO OFFSHORE INC. | 401980 | PDP | GAS | 54.16667 | 42.25000 | | |

## SOUTH MARSH ISLAND BLOCK 139

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI146B | OCS-G-21106 SMI 139 | OCS-G-21106 SMI 139 B-01 | B-01 | SOUTH MARSH IS SA 146 | OFFSHORE LOUISIANA | 177084092300S01 | XTO OFFSHORE INC. | 401792 | SI | OIL | 75.00000 | 51.30000 | | |

EXHIBIT A-2

-110-

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI146B | OCS-G-21106 SMI 139 | OCS-G-21106 SMI 139 B-02D | B-02D | SOUTH MARSH IS SA 146 | OFFSHORE LOUISIANA | 177084093501D02 | XTO OFFSHORE INC. | 401851 | SI | OIL | 75.00000 | 51.30000 | 100.00000 | 68.40000 |
| SMI146B | OCS-G-21106 SMI 139 | OCS-G-21106 SMI 139 B-02 | B-02 | SOUTH MARSH IS SA 146 | OFFSHORE LOUISIANA | 177084093501D01 | XTO OFFSHORE INC. | 401850 | SI | OIL | 75.00000 | 51.30000 | 100.00000 | 68.40000 |

**SOUTH MARSH ISLAND BLOCK 142/143**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-01 | A-01 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084014100S02 | XTO OFFSHORE INC. | 401981 | SI | OIL | 52.67010 | 43.89175 | | |
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-02 | A-02 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084014800S02 | XTO OFFSHORE INC. | 401982 | SI | GAS | 52.67010 | 43.89175 | | |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-03 | A-03B | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084016500S03 | XTO OFFSHORE INC. | 401983 | PDP | GAS | 55.00000 | 45.83333 | | |
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-04 | A-04 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084017900D02 | XTO OFFSHORE INC. | 401984 | SI | GAS | 52.67010 | 43.89175 | | |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-05 | A-05 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084019200S01 | XTO OFFSHORE INC. | 401985 | SI | GAS | 52.67010 | 43.89175 | | |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-06C | A-06C | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084020300D06 | XTO OFFSHORE INC. | 401852 | SI | GAS | 55.00000 | 45.83333 | | |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-07A | A-07A | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084021000D04 | XTO OFFSHORE INC. | 401854 | SI | GAS | 52.67010 | 43.89175 | | |

EXHIBIT A-2

| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-08A | A-08A | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084023000D01 | XTO OFFSHORE INC. | 401856 | SI | GAS | 52.67010 | 43.89175 |
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-08D | A-08D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084023000D02 | XTO OFFSHORE INC. | 401857 | SI | GAS | 52.67010 | 43.89175 |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-09B | A-09B | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084026300S03 | XTO OFFSHORE INC. | 401986 | SI | GAS | 52.67010 | 43.89175 |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-10 | A-10 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084077000D01 | XTO OFFSHORE INC. | 403034 | TA | OIL | 55.00000 | 45.83333 |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-10D | A-10D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084077000D02 | XTO OFFSHORE INC. | 403035 | TA | GAS | 55.00000 | 45.83333 |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-11 | A-11 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091100D01 | XTO OFFSHORE INC. | 401767 | SI | GAS | 55.00000 | 45.83333 |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-11D | A-11D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091100D02 | XTO OFFSHORE INC. | 401768 | SI | GAS | 55.00000 | 45.83333 |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-01 | C-01 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084082900S01 | XTO OFFSHORE INC. | 401987 | SI | GAS | 55.00000 | 45.83333 |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-02 | C-02 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084084201D01 | XTO OFFSHORE INC. | 401858 | SI | OIL | 55.00000 | 45.83333 |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-03A | C-03A | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084085000D03 | XTO OFFSHORE INC. | 401890 | PDP | OIL | 55.00000 | 45.83333 |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-03D | C-03D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084085000D02 | XTO OFFSHORE INC. | 401891 | PDP | GAS | 55.00000 | 45.83333 |

**EXHIBIT A-2**

| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-04B | C-04B | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084085400S03 | XTO OFFSHORE INC. | 403585 | PDP | GAS | 55.00000 | 45.83333 |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-05 | C-05 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091301D01 | XTO OFFSHORE INC. | 401860 | PDP | GAS | 55.00000 | 45.83333 |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-05D | C-05D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091301D02 | XTO OFFSHORE INC. | 401861 | PDP | GAS | 55.00000 | 45.83333 |

**SOUTH MARSH ISLAND BLOCK(s)**
**268/269/280/281**
**XH, LLC**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 A-02 | A-02 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074007600S05 | APACHE CORPORATION | | TA | GAS | 10.11417 | 8.42848 | | |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 A-07 | A-07 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074013600S01 | APACHE CORPORATION | 18296 (HUNT) | TA | GAS | 10.11417 | 8.42848 | | |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 A-17B | A-17B | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074016800S03 | APACHE CORPORATION | 401991 | TA | | 10.11417 | 8.42848 | | |
| SMI268A | OCS-G-02311 SMI 269 | OCS-G-02311 SMI 269 A-21B | A-21B | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018100S03 | APACHE CORPORATION | | TA | | 10.11417 | 8.42848 | | |

**EXHIBIT A-2**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 D-1 | D-1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402060OS01 | APACHE CORPORATION | | TA | | 10.11417 | 8.42848 |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 D-3D | D-3D | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402160OD02 | APACHE CORPORATION | | TA | | 10.11417 | 8.42848 |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 D-4 | D-4 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402250OS01 | APACHE CORPORATION | | TA | | 10.11417 | 8.42848 |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 D-6A | D-6A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402470OS02 | APACHE CORPORATION | | TA | | 10.11417 | 8.42848 |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 D-7 | D-7 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402570OS03 | APACHE CORPORATION | | TA | | 10.11417 | 8.42848 |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 D-12 | D-12 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402870OS01 | APACHE CORPORATION | | TA | | 10.11417 | 8.42848 |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 D-16ST1 | D-16ST1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402990IS02 | APACHE CORPORATION | | TA | | 10.11417 | 8.42848 |
| SMI269B | OCS-G-02311 SMI 269 | OCS-G-02311 SMI 269 B-02BP1 | B-02BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707400810OS02 | APACHE CORPORATION | 401993 | TA | GAS | 9.06733 | 7.55614 |
| SMI269B | OCS-G-02311 SMI 269 | OCS-G-02311 SMI 269 B-04 | B-04 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707401320OS03 | APACHE CORPORATION | | TA | GAS | 9.06733 | 7.55614 |
| SMI269B | OCS-G-02311 SMI 269 | OCS-G-02311 SMI 269 B-09 | B-09 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707401590OS03 | APACHE CORPORATION | | TA | GAS | 9.06733 | 7.55614 |

**EXHIBIT A-2**

-114-

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI269B | OCS-G-02311 SMI 269 | OCS-G-02311 SMI 269 B-10ST | B-10ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17074017001D02 | APACHE CORPORATION | 401995 | TA | OIL | 9.06733 | 7.55614 | |
| SMI269B | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 B-16 | B-16 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17074019200S01 | APACHE CORPORATION | | SI | OIL | 10.11417 | 8.42840 | |
| SMI269B | OCS-G-02311 SMI 269 | OCS-G-02311 SMI 269 B-17ST | B-17ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17074075701S01 | APACHE CORPORATION | 402687 | SI | OIL | 9.06733 | 7.55611 | |
| SMI269B | OCS-G-02311 SMI 269 | OCS-G-02311 SMI 269 B-19BPI | B-19BPI | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17074088501S02 | APACHE CORPORATION | 401996 | PDP | OIL | 9.06733 | 7.55611 | |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-01 | C-01 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707401250OS01 | APACHE CORPORATION | | SI | OIL | 10.47658 | 8.70348 | |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-02 | C-02 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17074010500S02 | APACHE CORPORATION | 403187 | EOR PENDING | OIL | 10.47658 | 8.70348 | |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-03 | C-03 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17074013900S01 | APACHE CORPORATION | 401999 | SI | OIL | 10.47658 | 8.70348 | |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-04 | C-04 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17074014900S02 | APACHE CORPORATION | 402000 | EOR PENDING | OIL | 10.47658 | 8.70348 | |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-05 | C-05 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17074015300S02 | APACHE CORPORATION | | SI | OIL | 10.47658 | 8.70348 | |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-06 | C-06 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17074015800S04 | APACHE CORPORATION | 402001 | SI | GAS | 10.47658 | 8.70348 | 0.00000 0.00000 |

**EXHIBIT** A-2

| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-07 | C-07 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074016500S01 | APACHE CORPORATION | 402002 | EOR PENDING | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-08ST | C-08ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074017701S01 | APACHE CORPORATION | 402003 | PDP | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-09 | C-09 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018200S04 | APACHE CORPORATION | | SI | GAS | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-10ST | C-10ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074020701S01 | APACHE CORPORATION | 402004 | PDP | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-11ST | C-11ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074022401S01 | APACHE CORPORATION | 402005 | SI | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-12 | C-12 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024100D02 | APACHE CORPORATION | 402006 | SI | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-13BP1 | C-13BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024900S01 | APACHE CORPORATION | 11794 (HUNT) | SI | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-14ST | C-14ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074026901S01 | APACHE CORPORATION | 402007 | PDP | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-15 | C-15 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074028300S07 | APACHE CORPORATION | 402008 | PDP | GAS | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-16BP1 | C-16BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029600S02 | APACHE CORPORATION | 402009 | PDP | OIL | 10.47658 | 8.70348 |

EXHIBIT A-2

| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-17 | C-17 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074030500X01 | APACHE CORPORATION | | TA | | 10.47658 | 8.70348 |
|---------|---------------------|--------------------------|-------|------------------------|--------------------|-----------------|--------------------|--------|-------------|-----|----------|---------|
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-19 | C-19 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074034400S03 | APACHE CORPORATION | | SI | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-20 | C-20 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074034900S03 | APACHE CORPORATION | 402011 | SI | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-21 | C-21 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074035500S03 | APACHE CORPORATION | 403188 | EOR PENDING | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-22 | C-22 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036100S02 | APACHE CORPORATION | 403189 | EOR PENDING | GAS | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-23ST2 | C-23ST2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036802S01 | APACHE CORPORATION | 401864 | PDP | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-24 | C-24 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074037300S03 | APACHE CORPORATION | 402012 | PDP | GAS | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-25 | C-25 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074083500S03 | APACHE CORPORATION | 402013 | PDP | GAS | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-26 | C-26 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074083700S01 | APACHE CORPORATION | 401783 | SI | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-27 | C-27 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074085200S02 | APACHE CORPORATION | 402014 | SI | GAS | 10.47658 | 8.70348 |

EXHIBIT A-2

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-28BP2 | C-28BP2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707408940 2S0 1 | APACHE CORPORATION | 402015 | PDP | OIL | 10.47658 | 8.70348 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-2 | D-2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402110 0S0 1 | APACHE CORPORATION | | TA | GAS | 10.47658 | 8.73043 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-5A | D-5A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402320 0S0 2 | APACHE CORPORATION | | TA | OIL | 10.47658 | 8.73043 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-8A | D-8A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402660 0S0 2 | APACHE CORPORATION | | TA | GAS | 10.47658 | 8.73043 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-9D | D-9D | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402710 0D0 3 | APACHE CORPORATION | | TA | GAS | 10.47658 | 8.73043 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-10A | D-10A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402750 0S0 2 | APACHE CORPORATION | 402661 | TA | OIL | 10.47658 | 8.73043 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-11 | D-11 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402800 0S0 1 | APACHE CORPORATION | | TA | GAS | 10.47658 | 8.73043 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-13 | D-13 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402910 0S0 2 | APACHE CORPORATION | 402662 | TA | GAS | 10.47658 | 8.73043 |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-14 | D-14 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707402970 0S0 3 | APACHE CORPORATION | | TA | GAS | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-01 | E-01 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 17707401850 0S0 1 | APACHE CORPORATION | | TA | OIL | 10.47658 | 8.73043 |

**EXHIBIT A-2**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-01D | E-01D | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018500D02 | APACHE CORPORATION | | SI | OIL | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-02BP2 | E-02BP2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024600S01 | APACHE CORPORATION | 402016 | TA | OIL | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-03 | E-03 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074027800 | APACHE CORPORATION | | TA | | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-04 | E-04 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074028500S01 | APACHE CORPORATION | | TA | OIL | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-05 | E-05 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029300S01 | APACHE CORPORATION | 402017 | PDP | OIL | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-06ST | E-06ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074030100S01 | APACHE CORPORATION | | TA | GAS | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-07 | E-07 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074031600S01 | APACHE CORPORATION | | TA | OIL | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-08ST | E-08ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074033100S02 | APACHE CORPORATION | | TA | GAS | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-09BP1 | E-09BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074033800S02 | APACHE CORPORATION | 402018 | TA | GAS | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-10 | E-10 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074034800S01 | APACHE CORPORATION | | TA | GAS | 10.47658 | 8.73043 |

EXHIBIT A-2

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-11 | E-11 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074035600 | APACHE CORPORATION | | TA | | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-12BP2 | E-12BP2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036000S02 | APACHE CORPORATION | | TA | GAS | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-13 BP1 | E-13BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036600S01 | APACHE CORPORATION | | TA | OIL | 10.47658 | 8.73043 |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-14 | E-14 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074038600 | APACHE CORPORATION | 402616 | TA | OIL | 10.47658 | 8.73043 |
| SMI269F | OCS-G-02311 SMI 269 | OCS-G-02311 SMI 269 F-01 | F-01 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074080401S01 | APACHE CORPORATION | 401997 | PDP | GAS | 11.91519 | 9.92932 |
| SMI280I | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 I-01 BP1 | I-01 BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074082601S02 | APACHE CORPORATION | 401998 | PDP | OIL | 7.86287 | 6.49081 |
| SMI280I | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 I-02ST | I-02ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074082701S02 | APACHE CORPORATION | 401862 | PDP | OIL | 7.86287 | 6.49081 |
| SMI280I | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 I-03 | I-03 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074082800S01 | APACHE CORPORATION | 401784 | PDP | OIL | 7.86287 | 6.49081 |

**SOUTH PASS BLOCK 42/43**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | N[RI] BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-01 | A-01 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404580000 | XTO OFFSHORE INC. | 401799 | 1PDP | OIL | 58.50000 | 46.99500 |
| OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-02 | A-02 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404590000 | XTO OFFSHORE INC. | 401800 | 1PDP | GAS | 58.50000 | 46.99500 |
| SL 16869 | SL 16869 #I 0-4RA VUA | 1 | SOUTH PASS 42 | OFFSHORE LOUISIANA | 17721205180000 | XTO OFFSHORE INC. | 401816 | 1PDP | GAS | 58.50000 | 44.12643 |
| SL 3011 | SL 3011 #001 SWD | #001 SWD | SOUTH PASS 42 | OFFSHORE LOUISIANA | 17721007480000 | XTO OFFSHORE INC. | 703024* | 1PDP | SWD | 58.50000 | |

* Burrwood Central Facility

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-01 | A-01 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404580000 | XTO OFFSHORE INC. | 401799 | 1PDP | OIL | 16.50000 | 13.25500 | | |
| | OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-02 | A-02 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404590000 | XTO OFFSHORE INC. | 401800 | 1PDP | GAS | 16.50000 | 13.25500 | | |
| | SL 16869 | SL 16869 #I 0-4RA VUA | 1 | SOUTH PASS 42 | OFFSHORE LOUISIANA | 17721205180000 | XTO OFFSHORE INC. | 401816 | 1PDP | GAS | 16.50000 | 12.44591 | | |
| | SL 3011 | SL 3011 #001 SWD | #001 SWD | SOUTH PASS 42 | OFFSHORE LOUISIANA | 17721007480000 | XTO OFFSHORE INC. | 703024* | 1PDP | SWD | 16.50000 | | | |

**SHIP SHOAL BLOCK 71**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO* | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT A-2**

| SS72J | OCS-G-12347 SS 71 | OCS-G-12347 SS 71 #1 | #1 | SHIP SHOAL 072 | Offshore Louisiana | 177114141000S04 | PETROQUEST ENERGY, LLC | 402022 | TA | GAS | 25.00000 | 20.00000 |

*Subject to additional royalty equivalent to any severance, gross production, or occupation taxes imposed by the State of Louisiana on production from the lease, less the State's royalty interest in such production.

**SHIP SHOAL BLOCK 79/80**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS079A | OCS-G-15277 SS 79 | OCS G-15277 SS 79 A-02 | A-02 | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D03 | XTO OFFSHORE INC. | 401789 | PDP | OIL | 35.10000 | 26.09100 | | |
| SS079A | OCS-G-15277 SS 79 | OCS G-15277 SS 79 A-02D | A-02D | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D02 | XTO OFFSHORE INC. | 401893 | PDP | OIL | 35.10000 | 26.09100 | | |

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS079A | OCS-G-15277 SS 79 | OCS G-15277 SS 79 A-02 | A-02 | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D03 | XTO OFFSHORE INC. | 401789 | PDP | OIL | 9.90000 | 7.35900 | | |
| SS079A | OCS-G-15277 SS 79 | OCS G-15277 SS 79 A-02D | A-02D | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D02 | XTO OFFSHORE INC. | 401893 | PDP | OIL | 9.90000 | 7.35900 | | |

**SHIP SHOAL BLOCK 188**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT A-2**

-122-

| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 A-01 | A-01 | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114146000D01 | XTO OFFSHORE INC. | 401797 | PDP | GAS | 75.00000 | 62.50000 | | |
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 A-01D | A-01D | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114146000D02 | XTO OFFSHORE INC. | 403174 | PDP | GAS | 75.00000 | 62.50000 | | |
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 #02 | #02 | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114147500S00 | XTO OFFSHORE INC. | 401796 | SI | GAS | 75.00000 | 62.50000 | 100.00000 | 83.33333 |
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 #02A | #02A | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114147500S02 | XTO OFFSHORE INC. | 402541 | SI | GAS | 75.00000 | 62.50000 | 100.00000 | 83.33333 |

**SHIP SHOAL BLOCK 204**
**XH, LLC**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-06 | A-06 | SHIP SHOAL 204 | Offshore Louisiana | 177110081300D03 | APACHE CORPORATION | | SI | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-06D | A-06D | SHIP SHOAL 204 | Offshore Louisiana | 177110081300D02 | APACHE CORPORATION | | SI | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-08 | A-08 | SHIP SHOAL 204 | Offshore Louisiana | 177110083000S02 | APACHE CORPORATION | 401770 | PDP | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-14 | A-14 | SHIP SHOAL 204 | Offshore Louisiana | 177110084200D01 | APACHE CORPORATION | | SI | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-14D | A-14D | SHIP SHOAL 204 | Offshore Louisiana | 177110084200D02 | APACHE CORPORATION | | SI | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-15ST1 | A-15ST1 | SHIP SHOAL 204 | Offshore Louisiana | 17711200340S04 | APACHE CORPORATION | 402033 | PDP | GAS | 5.60514 | 4.67095 | | |

**EXHIBIT A-2**

| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-16ST1 | A-16ST1 | SHIP SHOAL 204 | Offshore Louisiana | 177112005401S01 | APACHE CORPORATION | 402034 | PDP | OIL | 5.60514 | 4.67095 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-20 | A-20 | SHIP SHOAL 204 | Offshore Louisiana | 177112012600D01 | APACHE CORPORATION | 401771 | SI | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-20D | A-20D | SHIP SHOAL 204 | Offshore Louisiana | 177112012600D02 | APACHE CORPORATION | 401771 | PDP | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-24ST1 | A-24ST1 | SHIP SHOAL 204 | Offshore Louisiana | 177112017701S02 | APACHE CORPORATION | 402035 | PDP | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-28ST3 | A-28ST3 | SHIP SHOAL 204 | Offshore Louisiana | 177110071003S01 | APACHE CORPORATION | 402036 | PDP | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-30 | A-30 | SHIP SHOAL 204 | Offshore Louisiana | 177114002801S03 | APACHE CORPORATION | | TA | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-30D | A-30D | SHIP SHOAL 204 | Offshore Louisiana | 177114002801D02 | APACHE CORPORATION | | TA | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-31 | A-31 | SHIP SHOAL 204 | Offshore Louisiana | 177110084201S04 | APACHE CORPORATION | | TA | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-34 | A-34 | SHIP SHOAL 204 | Offshore Louisiana | 177114146700S01 | APACHE CORPORATION | 401772 | PDP | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-35 BP2 | A-35BP2 | SHIP SHOAL 204 | Offshore Louisiana | I77114147402S01 | APACHE CORPORATION | 402037 | PDP | OIL | 5.60514 | 4.67095 | | |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-36ST1BP2 | A-36ST1 BP2 | SHIP SHOAL 204 | Offshore Louisiana | 177114146803S01 | APACHE CORPORATION | 402038 | PDP | OIL | 5.60514 | 4.67095 | 0.00000 | 0.00000 |

SHIP SHOAL BLOCK(s) 206/207/216

XH,
LLC

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS206E | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 E-01 | E-01 | SHIP SHOAL 207 | Offshore Louisiana | 177114115500S03 | APACHE CORPORATION | 402039 | PDP | OIL | 0.92732 | 0.77277 | | |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-2ST1BP1 | E-2ST1BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114118101S01 | APACHE CORPORATION | 402040 | PDP | OIL | 0.92732 | 0.77277 | | |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-3ST | E-3ST | SHIP SHOAL 207 | Offshore Louisiana | 177114118201S01 | APACHE CORPORATION | | SI | GAS | 0.92722 | 0.77277 | | |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-04 | E-04 | SHIP SHOAL 207 | Offshore Louisiana | 177114141800S01 | APACHE CORPORATION | 402041 | SI | GAS | 0.92732 | 0.77277 | | |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-05 | E-05 | SHIP SHOAL 207 | Offshore Louisiana | 177114142000S01 | APACHE CORPORATION | 402042 | SI | GAS | 0.92732 | 0.77277 | | |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-03ST1 | A-03ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177110072801D02 | APACHE CORPORATION | 402044 | TA | GAS | 6.18214 | 5.15179 | | |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-04 | A-04 | SHIP SHOAL 207 | Offshore Louisiana | 177110075500D01 | APACHE CORPORATION | 401773 | PDP | OIL | 6.08363 | 5.06971 | | |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-04D | A-04D | SHIP SHOAL 207 | Offshore Louisiana | 177110075500D02 | APACHE CORPORATION | 401773 | SI | GAS | 6.08363 | 5.06971 | | |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-06 | A-06 | SHIP SHOAL 207 | Offshore Louisiana | 177110078200D02 | APACHE CORPORATION | | TA | OIL | 6.18214 | 5.15179 | | |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-08C | A-08C | SHIP SHOAL 207 | Offshore Louisiana | 177110080700D03 | APACHE CORPORATION | | TA | OIL | 6.18214 | 5.15179 | | |

EXHIBIT A-2

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-09D | A-09D | SHIP SHOAL 207 | Offshore Louisiana | 177110082400D02 | APACHE CORPORATION | | TA | OIL | 6.08363 | 5.06971 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-10 | A-10 | SHIP SHOAL 207 | Offshore Louisiana | 177110083900S03 | APACHE CORPORATION | 402045 | TA | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-13 | A-13 | SHIP SHOAL 207 | Offshore Louisiana | 177112002500S03 | APACHE CORPORATION | | TA | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-15ST1 | A-15ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177112010601S02 | APACHE CORPORATION | | TA | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-16ST1 | A-16ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177112011401D03 | APACHE CORPORATION | 402046 | SI | OIL | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-18A | A-18A | SHIP SHOAL 207 | Offshore Louisiana | 177112005000D04 | APACHE CORPORATION | | TA | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-19 | A-19 | SHIP SHOAL 207 | Offshore Louisiana | 177114009400S02 | APACHE CORPORATION | | TA | OIL | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-20 | A-20 | SHIP SHOAL 207 | Offshore Louisiana | 177114010300S04 | APACHE CORPORATION | 402047 | PDP | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-21 | A-21 | SHIP SHOAL 207 | Offshore Louisiana | 177114011000S02 | APACHE CORPORATION | 402048 | TA | OIL | 6.08363 | 5.06971 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-22ST1 | A-22ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114011301S03 | APACHE CORPORATION | 402049 | PDP | OIL | 6.18214 | 5.15178 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-22DST | A-22DST | SHIP SHOAL 207 | Offshore Louisiana | 177114011301D02 | APACHE CORPORATION | 402049 | TA | OIL | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-23B | A-23B | SHIP SHOAL 207 | Offshore Louisiana | 177114013500D04 | APACHE CORPORATION | | TA | OIL | 6.18214 | 5.15179 |

**EXHIBIT A-2**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-24 | A-24 | SHIP SHOAL 207 | Offshore Louisiana | 177114014300S01 | APACHE CORPORATION | | TA | OIL | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-25 | A-25 | SHIP SHOAL 207 | Offshore Louisiana | 177114015500S01 | APACHE CORPORATION | | TA | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-26ST1BP1 | A-26ST1BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177112001101S04 | APACHE CORPORATION | 402050 | TA | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-27 | A-27 | SHIP SHOAL 207 | Offshore Louisiana | 177110079401D03 | APACHE CORPORATION | 402051 | TA | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-27D | A-27D | SHIP SHOAL 207 | Offshore Louisiana | 177110079401D04 | APACHE CORPORATION | 402051 | TA | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-28ST1 | A-28ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177110077301S01 | APACHE CORPORATION | | TA | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-29ST1BP2 | A-29ST1BP2 | SHIP SHOAL 207 | Offshore Louisiana | 177112001901S03 | APACHE CORPORATION | 402052 | TA | GAS | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-30ST1 | A-30ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177110071501D02 | APACHE CORPORATION | | TA | OIL | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-31ST2 | A-31ST2 | SHIP SHOAL 207 | Offshore Louisiana | 177114117702S03 | APACHE CORPORATION | 402053 | PDP | OIL | 6.18214 | 5.15179 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-32BP1 | A-32BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114119701S02 | APACHE CORPORATION | 402054 | PDP | OIL | 6.08363 | 5.06971 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-33ST1 | A-33ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114121901D01 | APACHE CORPORATION | 402055 | PDP | OIL | 6.18214 | 5.15179 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-33DST | A-33DST | SHIP SHOAL 207 | Offshore Louisiana | 177114121901D02 | APACHE CORPORATION | | PDP | OIL | 6.18214 | 5.15179 | |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-34 | A-34 | SHIP SHOAL 207 | Offshore Louisiana | 177114122200D01 | APACHE CORPORATION | 401774 | PDP | GAS | 6.18214 | 5.15179 | 6.47345 5.39454 |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-34D | A-34D | SHIP SHOAL 207 | Offshore Louisiana | 177114122200D02 | APACHE CORPORATION | | SI | GAS | 6.47345 | 5.39454 | |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-35ST1 | A-35ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114133301S01 | APACHE CORPORATION | 401870 | PDP | OIL | 6.18214 | 5.15179 | |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-36 | A-36 | SHIP SHOAL 207 | Offshore Louisiana | 177114137700S03 | APACHE CORPORATION | 402056 | PDP | GAS | 6.18214 | 5.15179 | |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-02 | D-02 | SHIP SHOAL 207 | Offshore Louisiana | 177114025400D01 | APACHE CORPORATION | | SI | OIL | 6.18214 | 5.15179 | |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-07BP1 | D-07BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114030300D02 | APACHE CORPORATION | | SI | GAS | 6.18214 | 5.15179 | |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-08 | D-08 | SHIP SHOAL 207 | Offshore Louisiana | 177114032300S02 | APACHE CORPORATION | | SI | GAS | 6.18214 | 5.15179 | |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-09 | D-09 | SHIP SHOAL 207 | Offshore Louisiana | 177114116400D03 | APACHE CORPORATION | 402059 | PDP | GAS | 6.08363 | 5.06971 | |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-09D | D-09D | SHIP SHOAL 207 | Offshore Louisiana | 177114116400D02 | APACHE CORPORATION | | SI | GAS | 6.18214 | 5.15179 | |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-010ST1 | D-10ST1 | SHIP SHOAL 207 | Offshore Louisiana | 17711411 6501S03 | APACHE CORPORATION | 402060 | PDP | OIL | 6.18214 | 5.15179 | |

| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-01 | C-01 | SHIP SHOAL 207 | Offshore Louisiana | 177112009200D02 | APACHE CORPORATION | | SI | OIL | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-03A | C-03A | SHIP SHOAL 207 | Offshore Louisiana | 177112014500S03 | APACHE CORPORATION | | SI | OIL | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-04ST1 | C-04ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177112014900D01 | APACHE CORPORATION | 402061 | SI | OIL | 5.77000 | 4.80833 | 0.00000 | 0.00000 |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-05A | C-05A | SHIP SHOAL 207 | Offshore Louisiana | 177112017400S03 | APACHE CORPORATION | | SI | GAS | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-7ST1 | C-07ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114001201S01 | APACHE CORPORATION | 402062 | PDP | GAS | 5.77000 | 4.80833 | 6.61065 | 5.50887 |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-09ST1 | C-09ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114003800S01 | APACHE CORPORATION | 402528 | SI | GAS | 5.77000 | 4.80833 | 5.95117 | 4.95931 |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-10 | C-10 | SHIP SHOAL 207 | Offshore Louisiana | 177114004900S02 | APACHE CORPORATION | | TA | GAS | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-11A | C-11A | SHIP SHOAL 207 | Offshore Louisiana | 177114005700S02 | APACHE CORPORATION | | SI | GAS | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-12 | C-12 | SHIP SHOAL 207 | Offshore Louisiana | 177114006700S03 | APACHE CORPORATION | | SI | OIL | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-14A | C-14A | SHIP SHOAL 207 | Offshore Louisiana | 177114007900S02 | APACHE CORPORATION | 402529 | TA | OIL | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-15 | C-15 | SHIP SHOAL 207 | Offshore Louisiana | 177114009000S01 | APACHE CORPORATION | | TA | OIL | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-16ST1BP1 | C-16ST1B P1 | SHIP SHOAL 207 | Offshore Louisiana | 177114000101S01 | APACHE CORPORATION | | SI | OIL | 5.77000 | 4.80833 | | |

**EXHIBIT** A-2

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-17ST1 | C-17ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114003001S02 | APACHE CORPORATION | | SI | OIL | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-18 | C-18 | SHIP SHOAL 207 | Offshore Louisiana | 177114028500S01 | APACHE CORPORATION | | TA | GAS | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-19 | C-19 | SHIP SHOAL 207 | Offshore Louisiana | 177114031900D05 | APACHE CORPORATION | | TA | GAS | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-20 | C-20 | SHIP SHOAL 207 | Offshore Louisiana | 177114032400S01 | APACHE CORPORATION | | SI | GAS | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-21 | C-21 | SHIP SHOAL 207 | Offshore Louisiana | 177114124301S01 | APACHE CORPORATION | 402063 | SI | GAS | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-22ST1 | C-22ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114127200S01 | APACHE CORPORATION | | SI | GAS | 5.77000 | 4.80833 | 5.94893 | 4.95744 |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-23 | C-23 | SHIP SHOAL 207 | Offshore Louisiana | 177114134600D02 | APACHE CORPORATION | 401775 | SI | GAS | 5.77000 | 4.80833 | | |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-24BP2 | C-24BP2 | SHIP SHOAL 207 | Offshore Louisiana | 177114135102S02 | APACHE CORPORATION | 402064 | SI | OIL | 5.77000 | 4.80833 | | |

**SHIP SHOAL BLOCK(s) 247/248/249/270/271 (Unit)**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-02ST2 | F-02ST2 | SHIP SHOAL 246 | Offshore Louisiana | 177124019702S01 | ENI US OPERATING CO. INC. | 402065 | PDP | OIL | 40.00000 | 30.20833 | | |

**EXHIBIT A-2**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS247F | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 F-08 | F-08 | SHIP SHOAL 246 | Offshore Louisiana | 177124022100S01 | ENI US OPERATING CO. INC. | | TA | GAS | 40.00000 | 30.20833 |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-10 | F-10 | SHIP SHOAL 246 | Offshore Louisiana | 177124022400S01 | ENI US OPERATING CO. INC. | | SI | GAS | 30.00000 | 25.00000 |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-14ST1 | F-14ST1 | SHIP SHOAL 246 | Offshore Louisiana | 177124022301S01 | ENI US OPERATING CO. INC. | 402066 | PDP | GAS | 40.00000 | 30.20833 |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-17ST | F-17ST | SHIP SHOAL 246 | Offshore Louisiana | 177124022901S02 | ENI US OPERATING CO. INC. | 402067 | PDP | OIL | 40.00000 | 30.20833 |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-18ST1 | F-18ST1 | SHIP SHOAL 246 | Offshore Louisiana | 177124023201S02 | ENI US OPERATING CO. INC. | 402068 | PDP | GAS | 30.00000 | 25.00000 |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-19 | F-19 | SHIP SHOAL 246 | Offshore Louisiana | 177124015000S01 | ENI US OPERATING CO. INC. | 403324 | SI | GAS | 30.00000 | 25.00000 |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-02 | D-02 | SHIP SHOAL 246 | Offshore Louisiana | 177124012000S01 | ENI US OPERATING CO. INC. | | SI | OIL | 16.00000 | 13.20756 |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-03BP2 | D-03BP2 | SHIP SHOAL 246 | Offshore Louisiana | 177124013100S02 | ENI US OPERATING CO. INC. | | TA | OIL | 16.00000 | 13.20756 |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-04 | D-04 | SHIP SHOAL 246 | Offshore Louisiana | 177124017100 | ENI US OPERATING CO. INC. | | TA | OIL | 16.00000 | 13.20756 |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-05 | D-05 | SHIP SHOAL 246 | Offshore Louisiana | 177124014200S02 | ENI US OPERATING CO. INC. | 401762 | PDP | OIL | 12.00000 | 10.00000 |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-06 | D-06 | SHIP SHOAL 246 | Offshore Louisiana | 177124015000 | ENI US OPERATING CO. INC. | | TA | OIL | 16.00000 | 13.20756 |

**EXHIBIT A-2**

| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-07BP3 | D-07BP3 | SHIP SHOAL 246 | Offshore Louisiana | 177124015600S01 | ENI US OPERATING CO. INC. | | SI | GAS | 30.00000 | 25.00000 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-08 | D-08 | SHIP SHOAL 246 | Offshore Louisiana | 177124015900S05 | ENI US OPERATING CO. INC. | 402069 | SI | GAS | 16.00000 | 13.20756 | | |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-09 | D-09 | SHIP SHOAL 246 | Offshore Louisiana | 177124016600S04 | ENI US OPERATING CO. INC. | 402070 | TA | GAS | 30.00000 | 25.00000 | | |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-10 | D-10 | SHIP SHOAL 246 | Offshore Louisiana | 177124017900 | ENI US OPERATING CO. INC. | | SI | GAS | 30.00000 | 25.00000 | | |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-11 | D-11 | SHIP SHOAL 246 | Offshore Louisiana | 177124018500S05 | ENI US OPERATING CO. INC. | | PDP | GAS | 12.00000 | 10.00000 | | |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-12ST3 | D-12ST3 | SHIP SHOAL 246 | Offshore Louisiana | 177124017903S01 | ENI US OPERATING CO. INC. | 402071 | SI | GAS | 30.00000 | 25.00000 | | |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-14BP1 | D-14BP1 | SHIP SHOAL 246 | Offshore Louisiana | 1771240192000 | ENI US OPERATING CO. INC. | | TA | GAS | 16.00000 | 13.20756 | | |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-15 | D-15 | SHIP SHOAL 246 | Offshore Louisiana | 177124020600S01 | ENI US OPERATING CO. INC. | | SI | GAS | 26.48039 | 20.89961 | | |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-16 | D-16 | SHIP SHOAL 246 | Offshore Louisiana | 177124021000S02 | ENI US OPERATING CO. INC. | 402072 | SI | GAS | 26.48039 | 20.89961 | | |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-17 | D-17 | SHIP SHOAL 246 | Offshore Louisiana | 177124020800S01 | ENI US OPERATING CO. INC. | 402073 | SI | GAS | 26.48039 | 20.89961 | | |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-18 | D-18 | SHIP SHOAL 246 | Offshore Louisiana | 177124021100S01 | ENI US OPERATING CO. INC. | 402074 | SI | GAS | 26.48039 | 20.89961 | | |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-19 | D-19 | SHIP SHOAL 246 | Offshore Louisiana | 177124021500S05 | ENI US OPERATING CO. INC. | 402080 | SI | GAS | 12.00000 | 10.00000 | 14.57490 | 12.06431 |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-20 | D-20 | SHIP SHOAL 246 | Offshore Louisiana | 177124022000S08 | ENI US OPERATING CO. INC. | 402075 | SI | GAS | 26.48039 | 20.89961 | | |

**EXHIBIT A-2**

-132-

| SS248G | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 G-01 | G-01 | SHIP SHOAL 246 | Offshore Louisiana | 177124049500S01 | ENI US OPERATING CO. INC. | 402076 | PDP | GAS | 26.48039 | 20.89961 |
| SS248G | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 G-02 | G-02 | SHIP SHOAL 246 | Offshore Louisiana | 177124053000S01 | ENI US OPERATING CO. INC. | 402077 | SI | GAS | 26.48039 | 20.89961 |
| SS248G | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 G-03 | G-03 | SHIP SHOAL 246 | Offshore Louisiana | 177124053300D02 | ENI US OPERATING CO. INC. | 402078 | SI | GAS | 26.48039 | 20.89961 |
| | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 06 | 6 | SHIP SHOAL 246 | Offshore Louisiana | 177124062200 | ENI US OPERATING CO. INC. | 402079 | TA | | 12.00000 | 9.25300 |

**VERMILION BLOCK 313**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-01 | D-01 | VERMILION 313 | Offshore Louisiana | 177064090000S02 | ENI US OPERATING CO. INC. | 402106 | PDP | OIL | 50.00000 | 40.10416 | | |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-02ST1 | D-02ST1 | VERMILION 313 | Offshore Louisiana | 177064090201S05 | ENI US OPERATING CO. INC. | 402107 | PDP | GAS | 50.00000 | 40.10416 | | |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-03 | D-03 | VERMILION 313 | Offshore Louisiana | 177064090300S02 | ENI US OPERATING CO. INC. | 402108 | PDP | OIL | 50.00000 | 40.10416 | | |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-04BP1 | D-04BP1 | VERMILION 313 | Offshore Louisiana | 177064090501S02 | ENI US OPERATING CO. INC. | 402109 | SI | OIL | 50.00000 | 40.10416 | | |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-05ST1 | D-05ST1 | VERMILION 313 | Offshore Louisiana | 177064090701S01 | ENI US OPERATING CO. INC. | 402110 | PDP | OIL | 50.00000 | 40.10416 | | |

**EXHIBIT A-2**

**WEST CAMERON BLOCK 171**

XH,
LLC

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WC171 A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-01BP1 | A-01BP1 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004000600D01 | CONN ENERGY | | SI | GAS | 11.19285 | 0.00000 | | |
| WC171 A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-02C | A-02C | WEST CAMERON BLK 146 | Offshore Louisiana | 177004005100S03 | CONN ENERGY | | SI | GAS | 11.19285 | 0.00000 | | |
| WC171 A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-3 | A-3 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004005200S01 | CONN ENERGY | | SI | GAS | 11.19285 | 0.00000 | | |
| WC171 A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-03ST | A-03ST | WEST CAMERON BLK 146 | Offshore Louisiana | 177004005201S05 | CONN ENERGY | 402111 | PDP | GAS | 12.43650 | 0.00000 | | |
| WC171 A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-04D | A-04D | WEST CAMERON BLK 146 | Offshore Louisiana | 177004006000D02 | CONN ENERGY | | SI | GAS | 11.19285 | 0.00000 | | |
| WC171 A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-05ST | A-05ST | WEST CAMERON BLK 146 | Offshore Louisiana | 177004006901S01 | CONN ENERGY | 402112 | SI | GAS | 11.19285 | 0.00000 | | |
| WC171 A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-6 | A-6 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007000S03 | CONN ENERGY | | SI | GAS | 11.19285 | 0.00000 | | |
| WC171 A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-07C | A-07C | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007100S03 | CONN ENERGY | 402113 | TA | GAS | 11.19285 | 0.00000 | | |

| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-08 | A-08 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007400S02 | CONN ENERGY | | SI | | 11.19285 | 0.00000 |
|---------|--------|-------|------|-------|--------|--------|--------|-----|--------|------|----------|---------|
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-09 | A-09 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007801S01 | CONN ENERGY | 402670 | TA | | 11.19285 | 0.00000 |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-10D | A-10D | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007900D02 | CONN ENERGY | | SI | | 11.19285 | 0.00000 |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-12D | A-12D | WEST CAMERON BLK 146 | Offshore Louisiana | 177004008800D02 | CONN ENERGY | | SI | GAS | 11.19285 | 0.00000 |
| | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 B-7 | B-7 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004009900 | CONN ENERGY | | ST | GAS | 11.19285 | 0.00000 |

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|----------|---------------|----------------|-----------|-------|--------|---------|----------|--------------|--------|------|----------|-----------|----------|-----------|
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-01BP1 | A-01BP1 | WEST CAMERON 146 | Offshore Louisiana | 177004000600D01 | CONN ENERGY | | SI | GAS | 10.00000 | 0.00000 | | |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-02C | A-02C | WEST CAMERON 146 | Offshore Louisiana | 177004005100S03 | CONN ENERGY | | SI | GAS | 10.00000 | 0.00000 | | |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-3 | A-3 | WEST CAMERON 146 | Offshore Louisiana | 177004005200S01 | CONN ENERGY | | SI | GAS | 10.00000 | 0.00000 | | |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-03ST | A-03ST | WEST CAMERON 146 | Offshore Louisiana | 177004005201S05 | CONN ENERGY | 402111 | PDP | GAS | 11.11111 | 0.00000 | | |

EXHIBIT A-2

| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-04D | A-04D | WEST CAMERON 146 | Offshore Louisiana | 177004006000D02 | CONN ENERGY | | SI | GAS | 10.00000 | 0.00000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-05ST | A-05ST | WEST CAMERON 146 | Offshore Louisiana | 177004006901S01 | CONN ENERGY | 402112 | SI | GAS | 10.00000 | 0.00000 |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-6 | A-6 | WEST CAMERON 146 | Offshore Louisiana | 177004007000S03 | CONN ENERGY | | SI | GAS | 10.00000 | 0.00000 |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-07C | A-07C | WEST CAMERON 146 | Offshore Louisiana | 177004007100S03 | CONN ENERGY | 402113 | TA | GAS | 10.00000 | 0.00000 |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-08 | A-08 | WEST CAMERON 146 | Offshore Louisiana | 177004007400S02 | CONN ENERGY | | SI | | 10.00000 | 0.00000 |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-09 | A-09 | WEST CAMERON 146 | Offshore Louisiana | 177004007801S01 | CONN ENERGY | 402670 | TA | | 10.00000 | 0.00000 |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-10D | A-10D | WEST CAMERON 146 | Offshore Louisiana | 177004007900D02 | CONN ENERGY | | SI | | 10.00000 | 0.00000 |
| WC171 A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-12D | A-12D | WEST CAMERON 146 | Offshore Louisiana | 177004008800D02 | CONN ENERGY | | SI | GAS | 10.00000 | 0.00000 |
| | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 B-7 | B-7 | WEST CAMERON 146 | Offshore Louisiana | 177004009900 | CONN ENERGY | | ST | GAS | 10.00000 | 0.00000 |

**WEST CAMERON BLOCK 485/507**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Status | Type | WI % APO | NRI % APO | WI % BPO | NRI % BPO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-01ST2 | A-01ST2 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024010002S01 | XTO OFFSHORE INC. | 402114 | SI | GAS | 100.00000 | 83.33333 | | |

| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-02 | A-02 | WEST CAMER ON SA 507 | OFFSHORE LOUISIANA | 177024018200D03 | XTO OFFSHORE INC. | 401796 | SI | GAS | 100.00000 | 83.33333 |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-03EST1 | A-03EST1 | WEST CAMER ON SA 507 | OFFSHORE LOUISIANA | 177024020101D03 | XTO OFFSHORE INC. | 402979 | SI | GAS | 100.00000 | 83.33333 |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-03FST1 | A-03FST1 | WEST CAMER ON SA 507 | OFFSHORE LOUISIANA | 177024020101D04 | XTO OFFSHORE INC. | 402117 | SI | GAS | 100.00000 | 83.33333 |
| WC485 A | OCS-G-10594 WC 507 | OCS-G-10594 WC 507 A-04ST2 | A-04ST2 | WEST CAMER ON SA 507 | OFFSHORE LOUISIANA | 177024023002S01 | XTO OFFSHORE INC. | 402118 | PDP | GAS | 100.00000 | 83.33333 |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-05 | A-05 | WEST CAMER ON SA 507 | OFFSHORE LOUISIANA | 177024023500S01 | XTO OFFSHORE INC. | 77163 (Hunt#) | TA | GAS | 100.00000 | 83.33333 |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 485 A-06(B) ST2 | A-06(B)ST2 | WEST CAMER ON SA 507 | OFFSHORE LOUISIANA | 177024024902S03 | XTO OFFSHORE INC. | 401883 | PDP | GAS | 100.00000 | 83.33333 |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-07(B) | A-07(B) | WEST CAMER ON SA 507 | OFFSHORE LOUISIANA | 177024094900S03 | XTO OFFSHORE INC. | 402119 | TA | GAS | 100.00000 | 83.33333 |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC507 A-08(A) | A-08(A) | WEST CAMER ON SA 507 | OFFSHORE LOUISIANA | 177024094400S02 | XTO OFFSHORE INC. | 401781 | PDP | GAS | 100.00000 | 83.33333 |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-09E | A-09E | WEST CAMER ON SA 507 | OFFSHORE LOUISIANA | 177024094700D03 | XTO OFFSHORE INC. | 401885 | PDP | GAS | 100.00000 | 83.33333 |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-09F | A-09F | WEST CAMER ON SA 507 | OFFSHORE LOUISIANA | 177024094700D04 | XTO OFFSHORE INC. | 401886 | PDP | GAS | 100.00000 | 83.33333 |

**EXHIBIT A-2**

-137-

| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-10 | A-10 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024117800S01 | XTO OFFSHORE INC. | 402115 | SI | GAS | 100.00000 | 83.33333 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-11 | A-11 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024118300S02 | XTO OFFSHORE INC. | 402116 | SI | GAS | 100.00000 | 83.33333 |
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-11D | A-11D | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024118300S03 | XTO OFFSHORE INC. | 402116 | SI | GAS | 100.00000 | 83.33333 |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-01(A) ST4 | B-01(A) ST4 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024098304S02 | XTO OFFSHORE INC. | 402120 | PDP | GAS | 100.00000 | 83.33333 |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-02ST1 | B-02ST1 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024099001S01 | XTO OFFSHORE INC. | 402121 | PDP | GAS | 100.00000 | 83.33333 |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-03ST1 | B-03ST1 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024100201X01 | XTO OFFSHORE INC. | (no well #) | TA | GAS | 100.00000 | 83.33333 |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-04ST2 | B-04ST2 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024108202S02 | XTO OFFSHORE INC. | 402122 | SI | GAS | 100.00000 | 83.33333 |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-05 | B-05 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024101200S01 | XTO OFFSHORE INC. | 402123 | SI | GAS | 100.00000 | 83.33333 |
| WC507B | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 B-06 | B-06 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024108300S01 | XTO OFFSHORE INC. | 401780 | PDP | GAS | 100.00000 | 83.33333 |
| WC507C | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 C-01 | C-01 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024130300S01 | XTO OFFSHORE INC. | 401782 | SI | GAS | 50.00000 | 41.66667 |

**EXHIBIT B**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

## EASEMENTS AND PERMITS

| XTO Ref # | Lease # | Eff Date | Description | WI Int. |
|---|---|---|---|---|
| 0276247 | SL 4279 | 9/30/2002 | Surface Lease with Sub-Surface Agreement Block 42, South Pass Area, SL 16869 No. 1 Recorded 10/29/03 in Plaquemines Parish Book #1034, Page #60, File No. 02006520 | 100% |
| 0278047 | SL 576 | 6/2/2005 | Approximately 29,275 square feet of state owned water bottoms in Burrwood Bayou, in front of Section 46, Township 24 South Range 30 East, Plaquemines Parish, Louisiana.  Recorded 6/15/05 at Plaquemines Parish Book #1095, Page #158, File No. 2005-00003264. (Commercial Water Bottom Lease) | 100% |
| 0276246 | SL 4300 | 12/30/2002 | Block 42, South Pass Area being within the boundary of State Mineral Lease No. 17199 and the bottomhole being situated on acreage described as Block 43, South Pass Area, Offshore Federal Waters, OCS-G 22781.  Recorded 1/29/03 in Plaquemines Parish Book #1039, Page #106, File No. 03000773. | 100% |
| 0276253 | SL 3011 | 10/17/2007 | 3.0 acre circular area centered at point having a Lambert coordinates of X = 3,905,250 and Y = 172,757 which encircles SL 1922 SWD Well #3 located in T24S-R30E. Recorded 12/13/07 in Plaquemines Parish Book #1167, Page #880, File No. 2007-0008342. SWD Well name has changed to SL 3011 SWD #1. | 100% |



**EXHIBIT B-1**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

**DESCRIPTION OF RIGHTS-OF-WAY**

**East Cameron 178** (XTO File Ref #3202-RW0003-00)
OCS-G 28533, Segment No. 17688, a right-of-way 200 feet wide for the installation, operation and maintenance of a 6 5/8-inch pipeline, 4.87 miles in length, to transport gas and condensate from Block 178, A Platform, to Block 184, 30-inch Subsea Tie-in, all located in East Cameron Area.

**High Island 34** (XTO File Ref #3264-RW0001-00)
OCS-G 24287, Segment No. 13955, a right-of-way 200 feet wide for the installation, operation and maintenance of a 8-5/8-inch pipeline, 9,647 feet long, to transport gas and condensate from High Island Area Block 34 Caisson No. 1, Lease Number OCS-G 20655 through High Island Blocks 34-35 to a sub-sea tie in at High Island Block 21.

**Main Pass 29** (XTO File Ref #3074-RW0001-00)
OCS-G 28216, Segment No. 15810, a right-of-way 200 feet wide to install, operate and maintain a 6 5/8-inch pipeline, 6.80 miles in length, to transport bulk gas from Block 29 Well No. 1 thru blocks 116, 117 to Block 118 "A" all of which is located in the Main Pass Area.

**Main Pass 101** (XTO File Ref #3318-RW0001-00)
OCS-G 24687, Segment No. 14304, a right-of-way 200 feet wide for the operation and maintenance of a 8-inch pipeline, 20,102 feet in length, to transport bulk gas from a SSTI Manifold Main Pass Area, South and East Addition Block 101, OCS-G 22792, to Platform "A" Main Pass Area, South and East Addition, Block 102, OCS-G 3798.

**Main Pass 112** (XTO File Ref #3325-RW0001-00)
OCS-G 11738, Segment No. 9006, a right-of-way 200 feet in width, for a 6 5/8-inch pipeline, 6.77 miles in length, from Platform No. 2 in Main Pass Block 112, crossing Block 113 and Block 114, to a subsea tie-in with an 8-inch pipeline (Segment 9248) in Main Pass Block 117.

**Main Pass 116** (XTO File Ref #3326-RW0001-00)
OCS-G 12708, Segment No. 9248, a right-of-way 200 feet in width, for an 8 5/8-inch pipeline, 3.31 miles in length, from an 8 5/8-inch subsea tie-in in Main Pass Block 117, to Platform B in Main Pass Block 116.

**Main Pass 116** (XTO File Ref #3326-RW0002-00)
OCS-G 25478, Segment No. 14895, a 200-feet wide right-of-way to operate and maintain a 03-inch pipeline, 2.58 miles in length, to transport condensate from Platform B in Block 116 to a 6-inch Subsea Tie-in in Block 127, all in Main Pass Area.

**Main Pass 118** (XTO File Ref #3331-RW0001-00)
OCS-G 28217, Segment No. 15811, a 200 feet wide right-of-way to operate and maintain an existing 6-5/8-inch pipeline, 6.67 miles in length, to transport oil from Platform A in Block 118 through Blocks 117 and 126 to a 6-inch Subsea tie-in in Block 127, and also to operate and maintain the existing associated subsea tie-in assembly appurtenance in Block 127, all in Main Pass Area.

**Main Pass 116 & 118** (XTO File Ref # Pending)
OCS-G BOEMRE Pending, Segment No. 16342, a 200-foot wide right-of-way to operate and maintain a 4 ½-inch pipeline, 11.00 miles in length, to transport oil from a flange in Block 127, through Blocks 126, 117, 118, 113 to a subsea tie-in in Block 112, all located in the Main Pass Area.

**Ship Shoal 79** (XTO File Ref #3422-RW0001-00)
OCS-G 23712, Segment No. 13736, a right-of-way 200 feet in width and 8,790 feet in length, for the installation, operation and maintenance of a 4-1/2" pipeline to transport bulk gas from Ship Shoal Block 79 No. 2 Caisson, Lease OCS-G 15277 to Ship Shoal Block 80 "A" Platform, open lease.

**Ship Shoal 79** (XTO File Ref #3422-RW0002-00)
OCS-G 23713, Segment No. 13737, a right-of-way 200 feet in width and 8,790 feet in length, for the installation, operation and maintenance of a 4-1/2 inch pipeline to transport bulk gas from Ship Shoal Block 79 No. 2 Caisson, Lease OCS-G 15277 to Ship Shoal Block 80 "A" Platform, open lease.

**Ship Shoal 80** (XTO File Ref #3422-RW0003-00)
OCS-G 9330, Segment No. 8204, a right-of-way 200 feet in width, for the construction operation and maintenance of a 6 5/8-inch natural gas and condensate pipeline, 8.06 miles in length, from Platform A in Block 80, Ship Shoal Area, across Blocks 123 and 124, Eugene Island Area, to a subsea connection with ANR Pipeline Company's existing 30-inch pipeline (OCS-G 1687) in Block 125, Eugene Island Area.

**Ship Shoal 188** (XTO File Ref #3423-RW0001-00)
OCS-G 26977, Segment No. 15614, a right-of-way 200 feet wide for the installation, operation and maintenance of a 6-in pipeline, 1.65 miles in length, to transport gas and condensate from Block 188 Well No. 1 to a 10-inch subsea tie-in in Block 189, all of which is located in the Ship Shoal Area.

**South Marsh Island 142**  (XTO File Ref #3438-RW0001-00)
OCS-G 3441, Segment No. 4733, a right-of-way 200 feet in width for the construction, maintenance and operation of a 10 ¾-inch natural gas pipeline, 2.67 miles in length, from Forest Oil Corporation's Platform "A" in Block 142, South Marsh Island Area, South Addition, to a subsea connection with Sea Robin Pipeline Company's 24-inch pipeline in the southeast quadrant of Block 127, South Marsh Island Area, South Addition, as shown on Drawing No. OS-33 dated February 3, 1977.

**South Marsh Island 146** (XTO File Ref #3439-RW0001-00)
OCS-G 26837, Segment No. 15106, a right-of-way 200 feet wide for the installation, operation and maintenance of a 6 5/8-inch pipeline, approximately 1.34 miles in length,  to transport bulk gas from South Marsh Island Block 146 "B" to South Marsh Island Block 147 "A".

**South Marsh Island 146** (XTO File Ref #3439-RW0002-00)
OCS-G 26838, Segment No. 15107, a right-of-way 200 feet wide for the installation, operation and maintenance of a 4 1/2-inch pipeline, approximately 1.34 miles in length, to transport bulk gas from South Marsh Island Block 146 "B" to South Marsh Island Block 147 "A".

**South Marsh Island 146** (XTO File Ref #3439-RW0003-00)
OCS-G 26839, Segment No. 15108, a right-of-way 200 feet wide for the installation, operation and maintenance of a 2 ½-inch gas lift pipeline, approximately 1.34 miles in length, from South Marsh Island Block 147 "A" to South Marsh Island Block 146 "B".

**South Pass 42 Field** (XTO File Ref #3450-RW0005-00)
Department of the Army ("Army") Easement No. DACW29-2-01-16 dated September 10, 2001, as amended, granting a Right-of-Way to operate and maintain an existing production facility to serve oil and gas wells drilled in South Pass 42 Field in the Gulf of Mexico, within the Army's Mississippi River South and Southwest Passes Project, Section 46, Township 24 South, Range 30 East, Plaquemines Parish, Louisiana, amended, to include Tract No. 1, Sections 2 and 46, Townships 24 and 25 South, Range 30 East, Plaquemines Parish, Louisiana and to include a proposed Salt Water Disposal (SWD) well, an additional 15-foot wide (construction width) servitude for construction, operation and maintenance of a 4-inch pipeline to serve the proposed SWD well, and a servitude for maintenance of the access canal by wheel washing, as shown on the exhibits attached to the amendment.  Recorded in Plaquemines Parish Book #1080, Page #801, File No. 2004-00006681.

(XTO File Ref #3450-RW0003-00)
Department of the Army ("Army") Easement No. DACW29-2-81-37 dated May 18, 1981, as amended, granting Rights-of-Way for the construction, operation, maintenance and repair of four oil and gas flowlines; one saltwater disposal line; one oil tie-in line and one gas tie-in line, located in our Mississippi River South and Southwest Passes Project, Tract No. 1, Sections 46 and 47, Township 24 South, Range 30 East, Plaquemines Parish, Louisiana.  Recorded July 14, 1981 in Plaquemines Parish Book #526, Page #231, File No. 27.

(XTO File Ref #3448-RW0001-00)
State Lease Right-of-Way 4584, One six (6) inch gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40, South Pass Area, Section 1 of Township 25 South, Range 30 East and Section 46 of Township 24 South, Range 30 East, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page #27, File No. 2005-00002059.

(XTO File Ref #3448-RW0002-00)
State Lease Right of Way 4585, One (1) four inch (4") gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40 and 42, South Pass Area, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page 36, File No. 2005-00002060.

(XTO File Ref #3448-RW0003-00)
State Lease Right-of-Way 4586, One (1) eight inch (8") gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40, South Pass Area, Section 1 of Township 25 South, Range 30 East and Section 46 of Township 24 South, Range 30 East, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page #45, File No. 2005-00002061.

(XTO File Ref #3448-RW0004-00)
State Lease Right-of-Way 4587, One (1) six inch (6") gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40, South Pass Area, Section 1 of Township 25 South, Range 30 East and Section 46 of Township 24 South, Range 30 East, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page #54, File No. 2005-00002062.

**West Cameron 485** (XTO File Ref # 3542-RW0001-00)
OCS-G 2122E, Segment No. 4289, a right-of-way 200 feet in width for the construction, operation and maintenance of a 12" natural gas pipeline from an existing platform in Block 485, crossing Blocks 507 and 508 to an existing platform in Block 509, West Cameron Area, South Addition, a distance of 28,720 feet

**EXHIBIT B-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

## DESCRIPTION OF PIPELINES

| Segment Number | Originating Area/Block | Originating Lease | Destination Area/Block | Destination Lease | Status | Segment Length | Size |
|---|---|---|---|---|---|---|---|
| 16161 | EI 309J | G00997 | EI309G | G00997 | Proposed | 9875 | 6-5/8" |
| 16162 | EI 309J | G00997 | EI309G | G00997 | Proposed | 9875 | 6-5/8" |
| 16016 | EI312 | G22679 | SM142 | G01216 | Active | 18112 | 4" |
| 16017 | EI312 | G22679 | SM142 | G01216 | Active | 18115 | 6 5/8" |
| 14138 | MP101 | G22792 | MP101 | G22792 | Active | 4546 | 6 5/8" |
| 14821 | MP101 | G22792 | MP101 | G22792 | Active | 5194 | 4" |
| 14822 | MP101 | G22792 | MP101 | G22792 | Out of Service | 5197 | 4" |
| 14315 | MP101 | G22792 | MP101 | G22792 | Active | 8745 | 8 5/8" |
| 9011 | MP112 | G09707 | MP112 | G09707 | Out of Service | 9088 | 4" |
| 17188 | MP114 | G27201 | MP118 | G22797 | Active | 22027 | 4" |
| 8372 | MP116 | G03419 | MP116 | G03419 | Out of Service | 10893 | 8 5/8" |
| 8373 | MP116 | G03419 | MP116 | G03419 | Out of Service | 10893 | 8 5/8" |
| 15792 | MP118 | G22797 | MP125 | G25019 | Active | 4649 | 8 5/8" |
| 17557 | MP125 | G25019 | MP118 | G22797 | Active | 13939 | 6 5/8" |
| 14741 | SM109 | G24873 | SM109 | G24873 | Active | 10719 | 10 3/4" |
| 10934 | SM142 | G01216 | SM142 | G01216 | Active | 3080 | 4" |
| 11552 | SM142 | G01216 | SM142 | G01216 | Active | 8504 | 4" |
| 11553 | SM142 | G01216 | SM142 | G01216 | Active | 8359 | 6 5/8" |
| 14292 | SM40 | G13607 | SM40 | G13607 | Active | 5584 | 6 5/8" |
| 14293 | SM40 | G13607 | SM40 | G13607 | Active | 6015 | 6 5/8" |
| 14294 | SM40 | G13607 | SM40 | G13607 | Active | 6017 | 6 5/8" |
| 14295 | SM40 | G13607 | SM40 | G13607 | Active | 6020 | 2 1/2" OR 2 7/8" |
| 17203 | SM40 | G13607 | SM44 | G23840 | Active | 9233 | 2 1/2" OR 2 7/8" |
| 17201 | SM44 | G23840 | SM40 | G13607 | Active | 9233 | 6 5/8" |
| 17202 | SM44 | G23840 | SM40 | G13607 | Active | 9233 | 4" |
| 15611 | SS188 | G22712 | SS188 | G22712 | Out of Service | 8167 | 4" |
| 10390 | WC507 | G02549 | WC485 | G02220 | Active | 2100 | 6 5/8" |

| Segment Number | Originating Area/Block | Originating Lease | Destination Area/Block | Destination Lease | Status | Segment Length | Size |
|---|---|---|---|---|---|---|---|
| 10391 | WC507 | G02549 | WC485 | G02220 | Active | 2100 | 6 5/8" |
| 16222 | WC507 | G02549 | WC485 | G02220 | Out of Service | 8670 | 6 5/8" |

**EXHIBIT B-3**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

**DESCRIPTION OF PLATFORMS**

| XTO # | PLATFORM NAME | OPERATOR | STATE | WI % |
|---|---|---|---|---|
| N/A | PLATFORM BS 52 A | CENTURY EXPLORATION NEW ORLEANS, INC. | LA | 0.5000000 |
| N/A | PLATFORM BS 53 CF | CENTURY EXPLORATION NEW ORLEANS, INC. | LA | 0.5000000 |
| N/A | PLATFORM EC 014 12 | APACHE CORPORATION | LA | 0.5000000 |
| N/A | PLATFORM EC 014 13 | APACHE CORPORATION | LA | 0.5000000 |
| 703485 | PLATFORM EC 014 B | APACHE CORPORATION | LA | 0.5000000 |
| N/A | PLATFORM EC 014 CF | APACHE CORPORATION | LA | 0.5000000 |
| N/A | PLATFORM EC 014 CF2 | APACHE CORPORATION | LA | 0.5000000 |
| 703463 | PLATFORM EC 178 D | XTO OFFSHORE INC. | LA | 0.6000000 |
| 703445 | PLATFORM EI 273 D | MARINER ENERGY INC | LA | 0.1214660 |
| 703458 | PLATFORM EI 284 B | MARINER ENERGY INC | LA | 0.1500000 |
| 703371 | PLATFORM EI 287 D | MARINER ENERGY INC | LA | 0.2666320 |
| 402689 | PLATFORM EI 292 B | MARINER ENERGY INC | LA | 0.3000000 |
| 703447 | PLATFORM EI 309 G | MARINER ENERGY INC | LA | 0.2825430 |
| 703342 | PLATFORM EI 309 J | XTO OFFSHORE INC. | LA | 0.3750000 |
| 703331 | PLATFORM EI 312 D | XTO OFFSHORE INC. | LA | 0.6000000 |
| 703353 | PLATFORM HI 034 B | XTO OFFSHORE INC. | TX | 0.4500000 |
| 703430 | PLATFORM HI A376 A | APACHE CORPORATION | TX | 0.0625000 |
| N/A | PLATFORM HI A376 B | APACHE CORPORATION | TX | 0.0625000 |
| 703408 | PLATFORM HI A376 C | APACHE CORPORATION | TX | 0.0625000 |
| 403304 | PLATFORM HI A554 A | HUNT OIL COMPANY | TX | 0.2500000 |
| 703359 | PLATFORM MP 029 1 | XTO OFFSHORE INC. | LA | 0.5000000 |
| 703355 | PLATFORM MP 101 06 | XTO OFFSHORE INC. | LA | 0.7750000 |
| 703332 | PLATFORM MP 101 B | XTO OFFSHORE INC. | LA | 0.7750000 |
| 703333 | PLATFORM MP 101 D | XTO OFFSHORE INC. | LA | 0.9000000 |
| 703436 | PLATFORM MP 109 C | W & T OFFSHORE INC | LA | 0.3333000 |
| 703437 | PLATFORM MP 109 D | W & T OFFSHORE INC | LA | 0.3333000 |

| XTO # | PLATFORM NAME | OPERATOR | STATE | WI % |
|---|---|---|---|---|
| 703336 | PLATFORM MP 112 2 | XTO OFFSHORE INC. | LA | 1.0000000 |
| 703335 | PLATFORM MP 112 A | XTO OFFSHORE INC. | LA | 1.0000000 |
| 703360 | PLATFORM MP 114 1 | XTO OFFSHORE INC. | LA | 1.0000000 |
| N/A | PLATFORM MP 116 8 | XTO OFFSHORE INC. | LA | 1.0000000 |
| 703357 | PLATFORM MP 116 A | XTO OFFSHORE INC. | LA | 1.0000000 |
| 703327 | PLATFORM MP 116 B | XTO OFFSHORE INC. | LA | 1.0000000 |
| 703361 | PLATFORM MP 118 A | XTO OFFSHORE INC. | LA | 0.8333333 |
| 703449 | PLATFORM MP 125 B | XTO OFFSHORE INC. | LA | 0.6250000 |
| N/A | PLATFORM MP 94 4 | W & T OFFSHORE INC | LA | 0.2673333 |
| 703362 | PLATFORM SMI 040 B | XTO OFFSHORE INC. | LA | 1.0000000 |
| 703347 | PLATFORM SMI 040 JA | XTO OFFSHORE INC. | LA | 1.0000000 |
| 703338 | PLATFORM SMI 044 C | XTO OFFSHORE INC. | LA | 0.5000000 |
| 703139 | PLATFORM SMI 109A | XTO OFFSHORE INC. | LA | 0.5416667 |
| 703132 | PLATFORM SMI 142A | XTO OFFSHORE INC. | LA | 0.5267010 |
| 703133 | PLATFORM SMI 142C | XTO OFFSHORE INC. | LA | 0.5500000 |
| 703328 | PLATFORM SMI 146B | XTO OFFSHORE INC. | LA | 0.7500000 |
| N/A | PLATFORM SMI 268 A Prod | APACHE CORPORATION | LA | 0.1011417 |
| 703425 | PLATFORM SMI 268 A | APACHE CORPORATION | LA | 0.1011417 |
| 703423 | PLATFORM SMI 268 D | APACHE CORPORATION | LA | 0.1011417 |
| 703426 | PLATFORM SMI 269 B | APACHE CORPORATION | LA | 0.0906733 |
| N/A | PLATFORM SMI 269 F | APACHE CORPORATION | LA | 0.1191519 |
| 703410 | PLATFORM SMI 280 I | APACHE CORPORATION | LA | 0.0786287 |
| 703341 | PLATFORM SMI 281 C | APACHE CORPORATION | LA | 0.1047658 |
| 703424 | PLATFORM SMI 281 E | APACHE CORPORATION | LA | 0.1047658 |
| 703128 | PLATFORM SP 42A | XTO OFFSHORE INC. | LA | 0.7500000 |
| 703339 | PLATFORM SS 079 A | XTO OFFSHORE INC. | LA | 0.4500000 |
| 703370 | PLATFORM SS 080 A | XTO OFFSHORE INC. | LA | 0.4500000 |
| 703363 | PLATFORM SS 188 02 | XTO OFFSHORE INC. | LA | 1.0000000 |
| 703349 | PLATFORM SS 188 A | XTO OFFSHORE INC. | LA | 0.7500000 |
| 703443 | PLATFORM SS 204 A | APACHE CORPORATION | LA | 0.0560514 |
| N/A | PLATFORM SS 204 A-Gen | APACHE CORPORATION | LA | 0.0560514 |
| N/A | PLATFORM SS 204 A-Prod | APACHE CORPORATION | LA | 0.0560514 |
| N/A | PLATFORM SS 206 E | APACHE CORPORATION | LA | 0.0092732 |
| 703433 | PLATFORM SS 207 A | APACHE CORPORATION | LA | 0.0618214 |
| N/A | PLATFORM SS 207 A-Comp | APACHE CORPORATION | LA | 0.0618214 |

| XTO # | PLATFORM NAME | OPERATOR | STATE | WI % |
|---|---|---|---|---|
| N/A | PLATFORM SS 207 A-Drill | APACHE CORPORATION | LA | 0.0618214 |
| N/A | PLATFORM SS 207 A-Mantis | APACHE CORPORATION | LA | 0.0618214 |
| N/A | PLATFORM SS 207 A-Prod | APACHE CORPORATION | LA | 0.0618214 |
| 703431 | PLATFORM SS 207 D | APACHE CORPORATION | LA | 0.0608363 |
| N/A | PLATFORM SS 207 DWPF | APACHE CORPORATION | LA | 0.0618214 |
| 703407 | PLATFORM SS 216 C | APACHE CORPORATION | LA | 0.0577000 |
| 703411 | PLATFORM SS 247 F | ENI PETROLEUM COMPANY INC | LA | 0.3676471 |
| 703404 | PLATFORM SS 248 D | ENI PETROLEUM COMPANY INC | LA | 0.2648039 |
| 703412 | PLATFORM SS 248 G | ENI PETROLEUM COMPANY INC | LA | 0.2648039 |
| N/A | PLATFORM SS 71 1 | PETROQUEST ENERGY, L.L.C. | LA | 0.2500000 |
| 703403 | PLATFORM VR 313 D | ENI PETROLEUM COMPANY INC | LA | 0.5000000 |
| N/A | PLATFORM WC 171 A | CONN ENERGY INC. | LA | 0.2119285 |
| N/A | PLATFORM WC 171 A - AUX 1 | CONN ENERGY INC. | LA | 0.2119285 |
| N/A | PLATFORM WC 171 A - AUX 2 | CONN ENERGY INC. | LA | 0.2119285 |
| 703135 | PLATFORM WC 485 A | XTO OFFSHORE INC. | LA | 1.0000000 |
| 703340 | PLATFORM WC 507B | XTO OFFSHORE INC. | LA | 1.0000000 |
| 703137 | PLATFORM WC 507C | XTO OFFSHORE INC. | LA | 0.5000000 |

**EXHIBIT B-3**

**EXHIBIT C**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

**[FORM OF ASSIGNMENT AND BILL OF SALE TO BE CONFORMED WITH**
**PURCHASE AND SALE AGREEMENT AT CLOSING. A SEPARATE ASSIGNMENT**
**AND BILL OF SALE WILL BE USED FOR XTO OFFSHORE INC., HHE ENERGY**
**COMPANY, AND XH, LLC.]**

**FORM OF**
**ASSIGNMENT AND BILL OF SALE FOR**
**[XTO OFFSHORE INC., HHE ENERGY COMPANY, AND XH, LLC]**

| | |
|---|---|
| STATE OF | § |
| | § |
| COUNTY / PARISH OF | § |

This Assignment and Bill of Sale ("Assignment") is effective as of _____, 20 __, at 7:00 a.m. Central Time ("Effective Time"), and is from XTO OFFSHORE INC., a Delaware corporation with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 ("XTO Energy"), to _____, a _____ with an address of _____ ("Assignee").

**ARTICLE 1.**

1.01.    <u>Assignment</u>.   For $10 and other good and valuable consideration, the receipt and sufficiency of which XTO Energy acknowledges, XTO Energy bargains, sells, assigns, and conveys to Assignee and its successors and assigns, all of XTO Energy's right, title, and interest in and to the following real and personal properties (collectively, "Properties"), subject to the terms of this Assignment, including its exhibits, and all applicable instruments of record in the [county/counties/parish/parishes] where the Properties are located:

(a)    The oil and gas leasehold estates and other interests, ***insofar but only insofar*** as set out on Exhibit A (collectively, "Interests");

XTO ENERGY EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL RIGHT, TITLE, AND INTEREST NOT SET OUT ON EXHIBIT A, INCLUDING THE RESERVATION BY XTO ENERGY OR ITS PREDECESSORS IN TITLE OF ANY KIND OF INTEREST (INCLUDING OVERRIDING ROYALTY, DEPTH LIMITATIONS, FORMATIONS, AND CONTRACTUAL RIGHTS) FROM ANY CONVEYANCE OR AGREEMENT, WHETHER

EXHIBIT C                                          -150-

**RECORDED OR NOT, THAT WAS EXECUTED OR EFFECTIVE BEFORE THE EXECUTION OF THIS ASSIGNMENT. [ENSURE THAT THIS PARAGRAPH IS IN CONFORMANCE WITH THE PSA]**

(b)     All contracts affecting the Interests, to the extent each is assignable, including agreements for the sale or purchase of oil, gas, and other hydrocarbons; processing agreements; division orders; unit agreements; operating agreements; and other contracts and agreements arising out of, connected with, or attributable to production from the Interests, including the items listed on Exhibit B;

**XTO ENERGY EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL RIGHT, TITLE, AND INTEREST IN THESE CONTRACTS INSOFAR AS THEY PERTAIN TO ANY INTEREST NOT ASSIGNED IN THIS ASSIGNMENT.**

(c)     All personal property, including material, equipment, and facilities situated in and on the Properties and used solely in connection with the use or operation of the Interests for the production, treating, storing, transporting, and marketing of oil, gas, and other hydrocarbons from the Interests;

**XTO ENERGY EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL PERSONAL PROPERTY, WELLS, FIXTURES, PIPELINES, AND EQUIPMENT USED IN XTO ENERGY'S OPERATION OF ANY LEASE, WELL, OR MINERAL INTEREST NOT ASSIGNED IN THIS ASSIGNMENT.**

(d)     All easements, permits, licenses, surface and subsurface leases, rights-of-way, servitudes, and other surface and subsurface rights affecting the Interests, to the extent each is assignable, including the items listed on Exhibit B; and

(e)     Copies of the data and records relating to the Properties and Interests that have been or will be delivered by XTO Energy to Assignee ("Documents").

1.02.     <u>Exclusions</u>.  The following are excluded from this Assignment:

(a)     reservations, exceptions and exclusions listed in Exhibits A and B;

(b)     pipelines, fixtures, equipment, and interests owned by third parties such as lessors, purchasers, or transporters of Oil or gas;

(c)     computer equipment (including Rosemont transmitters), telecommunications equipment, vehicles, boats, tools, pulling machines, and other equipment and material temporarily located on the Property or expressly excluded from the sale;

**EXHIBIT C**                                                   -151-

(d)     items specifically excluded in written information or correspondence provided to XTO Energy before the Execution Date;

(e)     any gas processing plant not listed on Exhibit A and Exhibit A-1;

(f)     personal property, fixtures, equipment, pipelines, facilities, and buildings located on the Property, but currently in use in connection with the ownership or operation of other property not included in the Interests;

(g)     Unless otherwise described on Exhibit A, if XTO Energy is a party to a joint operating agreement that affects an Interest, this Agreement is limited as to that Interest to the depths subject to the joint operating agreement (e.g., total depth, total depth plus 100 feet, base of formation penetrated by initial test well), but excludes depths previously conveyed and all depths not subject to a joint operating agreement; and

(h)     If XTO Energy owns unleased mineral interests purportedly within the Interests, those mineral interests are not included in the term "Interests" and will not be conveyed to XTO Energy.

(i)     XTO Energy and its affiliates reserve and exclude from this Agreement all rights under that certain Lease Purchase Agreement dated effective January 22, 2002 by and between EEX Corporation ("EEX") and Aviara Energy Corporation ("Aviara"), as amended April 1, 2005, by and between Newfield Exploration Gulf Coast, Inc. and Hunt Petroleum (AEC), Inc., as such agreements pertain to all depths from 17,000 feet down to 100,000 feet subsea and expressly reserve and exclude from this Agreement the five percent of eight-eights (5% of 8/8ths) overriding royalty interest reserved by Aviara in that certain Assignment of Operating Rights dated effective January 22, 2002 by and between Aviara and EEX.

(j)     Responsibility and liability for the proper payment of royalties to any governmental entity with respect to production attributable to the Interests prior to the Effective Time in the event prior payments to such governmental entity were improperly calculated.

(k)     **[The Execution Version of this document shall describe the Overriding Royalty Interest provided for in Article 4 of the PSA including such terms therein as should be referenced, of record.]**

1.03.     <u>Restrictions on Use</u>.  Where any of the Interests include a fee simple interest in real property that has been used for oil, gas, or other mineral operations, the following uses of the affected land, or any portion thereof, are expressly prohibited and forbidden:

(a)     any hotel use;

(b)     any purpose that would constitute a "Permitted Use" under any of the residential zones, districts, or classifications set forth in any applicable

**EXHIBIT C**                    -152-

municipal, county/parish or state zoning laws in effect at the Effective Time,

(c)     any other residential use;

(d)     any health care, clinic, hospital or other medical facility;

(e)     any playground, recreational park, day nursery, day-care center, child care center, nursing home, house of worship, or school;

(f)     any agricultural use;

(g)     construction or installation of any basements; or

(h)     any water wells for irrigation or drinking purposes.

1.04.     Documents.  If originals or the last-remaining copies of the Documents have been provided to Assignee, XTO Energy may have access to them at reasonable times and upon reasonable notice during regular business hours for as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or a longer period if required by law or governmental regulation).  XTO Energy may, during this period and at its expense, make copies of the Documents pursuant to a reasonable request.  Without limiting the generality of the two preceding sentences, for a period as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or for a longer period if required by law or governmental regulation), Assignee may not destroy or give up possession of any original or last-remaining copy of the Documents without first offering XTO Energy the opportunity, at XTO Energy's expense, to obtain the original or a copy.  After this period expires, Assignee must offer to deliver the Documents (or copies) to XTO Energy, at XTO Energy's expense, before giving up possession or destroying them.

1.05.     Reservations.  To the extent that XTO Energy has reserved or continues to own an interest (excluding overriding-royalty interests but including, if any, mineral-fee, leasehold interests, deep rights or facilities, equipment, or pipelines) after the Effective Time for which XTO Energy requires access across the land associated with the Interests in order to exercise its rights, XTO Energy reserves concurrent interests in all applicable easements, rights-of-way, contracts, and other rights relating to the reserved interests and necessary as reasonably required for exploring, drilling, producing, storing, or marketing oil, gas, and other hydrocarbons from the respective zones or interests of the Parties, including rights to lay pipelines, water lines, and power lines; dig pits; erect structures; and perform any other act reasonably necessary to XTO Energy's interests.

1.06.     Surrender or Abandonment of Interests.  If Assignee decides to surrender or abandon any of the Interests after Closing, Assignee must give XTO Energy written notice of its intent at least 45 days before surrender or abandonment if XTO Energy:

(a)     has retained an interest in the Interests;

**EXHIBIT C**                    -153-

(b)    has other interests for which XTO Energy requires access across the Interests or Property in order to exercise its rights; or

(c)    has other interests that are held by production from the Interests. XTO Energy will have 30 days after receipt of Assignee's notice to notify Assignee that it elects to require Assignee to reassign all or any part of the Interests. Reassignment will be in the manner described in Section 1.07.

1.07.    Reassignment. For reassignment of any Interest under this Assignment, Assignee will execute and deliver to XTO Energy a reassignment by special warranty, in a form satisfactory to XTO Energy and sufficient to place XTO Energy in the same position it occupied before the assignment to Assignee. Assignee's release and discharge of XTO Energy and its Associated Parties, its covenant not to sue XTO Energy or its Associated Parties, and its obligations to indemnify, defend, and hold XTO Energy and its Associated Parties harmless will apply to Interests that are reassigned for the period of Assignee's ownership, and the reassignment instrument will restate Assignee's obligations.

## ARTICLE 2.

Ad valorem taxes assessed against the Properties for the year of the Effective Time are apportioned between XTO Energy and Assignee as of the Effective Time.

## ARTICLE 3.

Assignee will comply with all rules, regulations, statutes, and laws applicable to Assignee's ownership or operation of the Properties. Except to the extent specifically excepted or reserved by XTO Energy [in this Assignment or in the Purchase and Sale Agreement (as defined below)], Assignee accepts this Assignment and assumes all XTO Energy's obligations and liabilities under all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements (including compliance with express and implied covenants and payment of costs, rentals, shut-in-payments, minimum royalties, and production royalties), to the extent that these obligations and liabilities concern or pertain to the Properties and are binding on XTO Energy or its successors or assigns. Assignee's obligations under this article apply to all applicable instruments, whether recorded or not.

## ARTICLE 4.

Assignee acknowledges that the Interests and Properties have been used for exploration, development, and production of oil and gas and that there may be petroleum, produced water, wastes, or other materials located on or under the Properties or associated with the Interests. Equipment and sites included in the Interests or Properties may contain asbestos, hazardous substances, or naturally occurring radioactive material ("NORM"). NORM may affix or attach itself to the inside of wells, materials, and equipment as scale, or in other forms; the wells, materials, and equipment located on the Properties or included in the Interests may contain NORM and other wastes or hazardous substances; and NORM-containing material and other wastes or hazardous substances may have been buried, come in contact with the soil, or

EXHIBIT C                                    -154-

otherwise been disposed of on the Properties. Special procedures may be required for the remediation, removal, transportation, or disposal of wastes, asbestos, hazardous substances, and NORM from the Interests and Properties.

Assignee will store, handle, transport, and dispose of or discharge all material, substances, and wastes from the Properties (including produced water, drilling fluids, NORM, and other wastes), whether present before or after the Effective Time, in accordance with applicable local, state, and federal laws and regulations. Assignee will keep records of the types, amounts, and location of materials, substances, and wastes that are stored, transported, handled, discharged, released, or disposed of onsite and offsite. When any lease terminates, an interest in which has been assigned under this Assignment, Assignee will take additional testing, assessment, closure, reporting, and remedial action with respect to the Properties as is necessary to satisfy all local, state, and federal requirements directed in effect at that time and necessary to restore the Properties.

### ARTICLE 5.

Assignee recognizes, and will either perform or assure that performance is accomplished properly and in accordance with applicable law and the obligations and liabilities described in Article 3, all obligations to abandon, restore, and remediate the Properties and the Interests, whether arising before or after the Effective Time, including obligations, as applicable, to:

1. obtain plugging exceptions in the operator's name for each well located on the Properties (abandoned and unabandoned) with a current plugging exception or permanently plug and abandon each well;
2. plug, abandon, and if necessary, reabandon each well located on the Properties (abandoned and unabandoned);
3. remove all equipment and facilities, including flowlines, pipelines and platforms;
4. close all pits; and
5. restore the surface, subsurface, and offshore sites associated with the Interests and Properties.

Assignee will take all necessary steps to ensure that Assignee is recognized as the owner and, if applicable, operator of the Properties by all appropriate parties, including any regulatory commission, body or board with jurisdiction. If XTO Energy is the principal on any financial assurance (including a bond) relating to the Properties, which financial assurance is required by any law, rule, or regulation, then Assignee will secure new financial assurance in the required amount and supply it to the regulatory body requiring the financial assurance, to the end that XTO Energy's financial assurance is released and discharged.

Assignee will pay all costs and expenses associated with the obligations assumed under this article. XTO Energy may require Assignee to maintain a performance bond in an amount, in a form, and from an institution acceptable to XTO Energy, to guarantee Assignee's obligations, all as provided for in the Purchase and Sale Agreement.

**EXHIBIT C** -155-

## ARTICLE 6.

XTO ENERGY MAKES NO WARRANTY OF ANY TYPE IN THIS ASSIGNMENT, WHETHER EXPRESS, STATUTORY, OR IMPLIED. ASSIGNEE HAS INSPECTED AND HAS SATISFIED ITSELF AS TO THE CONDITION OF THE PROPERTIES. THIS ASSIGNMENT IS MADE BY XTO ENERGY AND ACCEPTED BY ASSIGNEE ON AN "AS IS, WHERE IS" BASIS. XTO ENERGY DISCLAIMS ALL WARRANTIES, INCLUDING:

(a)   AS TO THE FITNESS OR CONDITION OR MERCHANTABILITY OF THE MATERIALS, EQUIPMENT, OR FACILITIES CONVEYED;

(b)   AS TO THE PHYSICAL, OPERATIONAL, OR ENVIRONMENTAL CONDITION OF THE PROPERTIES;

(c)   AS TO THE OIL, GAS, AND OTHER HYDROCARBON OPERATIONS OF THE PROPERTIES COVERED BY THE TERMS AND CONDITIONS OF ANY LEASES OR OTHER AGREEMENTS THAT ARE A PART OF THE PROPERTIES;

(d)   AS TO THE ISSUANCE, REISSUANCE, OR TRANSFER OF ANY PERMITS RELATING TO ANY OF THE PROPERTIES;

(e)   AS TO ANY CONSENT OR APPROVAL REQUIRED UNDER ANY INSTRUMENT DESCRIBED IN ARTICLE III; AND

(f)   AS TO TITLE, EITHER EXPRESS, IMPLIED, OR STATUTORY.

## ARTICLE 7.

The terms Claim or Claims mean, collectively, claims, demands, causes of action, and lawsuits asserted or filed by any person, including an artificial or natural person, a local, state, or federal governmental entity; a person holding rights under any instrument described in Article 3; an Associated Party of XTO Energy or Assignee; or a third party. The term Liability or Liabilities means, collectively, all damages (including consequential and punitive damages), including those for personal injury, death, or damage to personal or real property (both surface and subsurface) and costs for remediation, restoration, or clean up of contamination, whether the injury, death, or damage occurred or occurs on or off the Properties by migration, disposal, or otherwise; losses; fines; penalties; expenses; costs to remove or modify facilities on or under the Properties; plugging liabilities for all wells; attorneys' fees; court and other costs incurred in defending a Claim; liens; and judgments; in each instance, whether these damages and other costs are known or unknown, foreseeable or unforeseeable on the Effective Time. The term Associated Parties means successors, assigns, directors, officers, employees, agents, contractors, subcontractors, and Affiliates.

Assignee releases and discharges XTO Energy and its Associated Parties from each Claim and Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S RELEASE AND DISCHARGE OF XTO ENERGY AND ITS ASSOCIATED PARTIES INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS,

EXHIBIT C                                          -156-

**SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO ENERGY OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY,** and this release and discharge are binding on Assignee and its successors and assigns The only exception to Assignee's release and discharge of XTO Energy and its Associated Parties is that (a) Assignee does not release Claims against contractors and subcontractors for work regarding the Interests and Properties, and (b) Assignee does not release or discharge Claims that XTO Energy breached the Purchase and Sale Agreement.

Assignee covenants not to sue XTO Energy or its Associated Parties with regard to any Claim or Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. **ASSIGNEE'S COVENANT NOT TO SUE XTO ENERGY OR ITS ASSOCIATED PARTIES INCLUDES CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO ENERGY OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLIES REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY,** and this covenant is binding on

Assignee and its successors and assigns. The only exception to Assignee's covenant not to sue XTO Energy or its Associated Parties is that Assignee does not covenant not to sue contractors and subcontractors for work regarding the Interests and Properties.

Assignee will indemnify, defend, and hold XTO Energy and its Associated Parties harmless from each Claim or Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. **ASSIGNEE'S OBLIGATIONS TO INDEMNIFY, DEFEND, AND HOLD XTO ENERGY AND ITS ASSOCIATED PARTIES HARMLESS INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO ENERGY OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY.** The only exception to Assignee's obligations to indemnify, defend, and hold XTO Energy and its Associated Parties harmless is (a) a judgment rendered or settlement reached in a lawsuit filed before the Effective Time, but only to the extent that the acts or omissions that gave rise to the cause of action are attributable to the conduct or operations or ownership of XTO Energy or its Associated Parties before the Effective Time and (b) a Claim that XTO Energy breached the Purchase and Sale Agreement. Assignee's obligations are binding on Assignee and its successors and assigns.

Assignee's duty to release, discharge, not to sue, indemnify, defend, and hold XTO Energy and its Associated Parties harmless includes Claims or Liabilities arising in any manner from the physical or environmental condition of the Interests and Properties, including Claims or Liabilities under applicable laws and regulations now enacted or that may be enacted in the future, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time.

EXHIBIT C                                    -157-

# ARTICLE 8.

Assignee represents that it has acquired the Properties for its own benefit and account and has not acquired the Properties with the intent of distributing fractional undivided interests in them or otherwise selling them in a manner that would be subject to regulation by federal or state securities laws. If Assignee sells, transfers, or otherwise disposes of the Properties or fractional undivided interests in them in the future, it will do so in compliance with applicable federal and state laws.

This Assignment is subject to the terms of the Purchase and Sale Agreement between XTO Energy and Assignee concerning the Properties, dated effective as of August 1, 2011 (the "Purchase and Sale Agreement"), including XTO Energy's Preferential Right to purchase all Oil produced and saved from the Interests. [In the event of a conflict or inconsistency between the terms and provisions of this Assignment and those set forth in the Purchase and Sale Agreement, the terms and provisions in the Purchase and Sale Agreement shall control]. The Purchase and Sale Agreement provides, in part, that the Parties will correct errors that may have been made in the conveyancing instruments; that XTO Energy may require that all or a part of the Properties be reassigned under certain circumstances; and that disputes concerning the Properties or the transaction will be resolved by alternate dispute resolution, to the extent, if any, that Assignee has not released, discharged, or covenanted not to sue XTO Energy or its Associated Parties.

If XTO Energy will own an interest after Closing in any Interest or Property (including overriding royalties, deep rights, and facilities, equipment, or pipelines) or continue to own interests for which XTO Energy requires access across the Interests or Property in order to exercise its rights, then, XTO Energy will reserve concurrent interests in the applicable easements, rights-of-way, contracts and other rights relating to the retained or reserved interests. XTO Energy reserves the right to perform an audit as stated below.

XTO Energy, upon notice in writing to Assignee, shall have the right to access the Assignee's offices, facilities, work sites, warehouses, books, records, correspondence, instructions, plans, drawings, receipts, vouchers, financial accounts, data stored in computer files or microfiche and personnel to audit Assignee's accounts and records relating to the retained royalty interest, including any hedge agreements, facilities used for the measurement of production from the properties, for any calendar year within the twenty-four (24) month period following the end of such calendar year. The same audit rights are to extend to subcontractors. XTO Energy shall maintain supporting data and accounting records consistent with generally accepted accounting principles, and the employees and agents of company shall have the right to reproduce and retain for the purpose of audit, any of these documents. XTO Energy shall not be liable for any of Assignee's contractor's or subcontractor's costs resulting from an audit hereunder.

The provisions of this Assignment are severable. If a court of competent jurisdiction finds any part of this Assignment to be void, invalid, or otherwise unenforceable (except for the release, waiver, defense, and indemnity provisions), this holding will not affect other portions that can be given effect without the invalid or void portion.

**EXHIBIT C** -158-

All covenants and agreements in this Assignment (except Article 8) bind and inure to the benefit of the heirs, successors, and assigns of XTO Energy and Assignee; are covenants running with the land; and are effective as stated, whether or not the covenants and agreements are memorialized in assignments and other conveyances executed and delivered by the Parties and their respective heirs, successors, and assigns from time to time.

Recitation of or reference to any agreement or other instrument in this Assignment, including its exhibits, does not operate to ratify, confirm, revise, or reinstate the agreement or instrument if it has previously lapsed or expired.

This Assignment and its performance will be construed in accordance with, and governed by, the internal laws of the State of Texas, without regard to the choice of law rules of any jurisdiction, including Texas.

The word includes and its syntactical variants mean "includes, but not limited to" and its corresponding syntactical variants. The rule of *ejusdem generis* may not be invoked to restrict or limit the scope of the general term or phrase followed or preceded by an enumeration of particular examples.

All exhibits referenced in and attached to this Assignment are incorporated into it.

This instrument may be executed in counterparts, all of which together will be considered one instrument.

Executed on the dates indicated below, but effective as of the Effective Time.

DYNAMIC OFFSHORE RESOURCES, LLC      XTO OFFSHORE INC.

BY: _____      BY: _____

NAME: _____      NAME: _____

TITLE: _____      TITLE: _____

DATE: _____      DATE: _____

STATE OF TEXAS         §
                       §
COUNTY OF HARRIS       §


    This instrument was acknowledged before me on _____ by _____, _____ of XTO Offshore Inc., a Delaware corporation, on behalf of said corporation.


_____
Notary Public, State of Texas


STATE OF _____         §
                        §
COUNTY OF _____        §

    This instrument was acknowledged before me on _____ by _____, _____ of _____, a _____, on behalf of said _____.


_____
Notary Public, State of _____

**EXHIBIT C**        -160-

**EXHIBIT D**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**


**PROPERTY SALES ACCOUNTING AGREEMENT**
**SELLER: XTO OFFSHORE INC.**
**BUYER: DYNAMIC OFFSHORE RESOURCES, LLC**

**PROPERTIES:** _____

_____  Buyer will work with XTO Energy operations personnel to disconnect from any XTO Energy owned electrical system and provide its own electrical arrangements at Buyer's expense within 60 days of the actual closing of the subject XTO Energy property(ies). XTO Energy will bill Buyer for any electricity used after the Effective Time and paid for by XTO Energy.

_____  Buyer will notify utility companies to effect a change in ownership and billing responsibility.

_____  Buyer will work with XTO Energy operations personnel to disconnect from applicable facilities within that 60 days or negotiate any contract as appropriate with XTO Energy. XTO Energy may charge $50.00 per well per month for salt water disposal as long as Buyer stays connected to XTO Energy's system or has not executed a contract with XTO Energy for salt water disposal.

_____  XTO Energy will notify the operator of non-XTO Energy operated properties of change in ownership as soon as possible after the closing and will request that future billings be addressed to Buyer.

_____  Buyer will obtain an oil contract, effective on [_____], or as soon thereafter as XTO Energy is able to effect cancellation of its contract (in accordance with the applicable cancellation provisions of such contracts), or XTO Energy will notify the operator to begin storing oil on that date until a contract can be obtained if XTO Energy's oil contract has been cancelled or is not valid.

_____ Where gas is dedicated under long-term contracts, the contracts will be assigned to Buyer subsequent to closing; otherwise, Buyer will obtain a gas contract effective on [_____], or as soon thereafter as XTO Energy is able to effect cancellation of its gas contract (in accordance with the applicable cancellation provisions of such contracts), or XTO Energy will notify the operator to begin storing gas on that date until a contract can be obtained if XTO Energy's gas contract has been cancelled or is not valid.

_____ XTO Energy will continue to pay royalties and severance taxes for sales through the production month of [_____] 200__. If any revenue is received by XTO Energy for later months, it will be forwarded to Buyer within 30 days. However, XTO Energy will not pay any royalties or severance taxes out of that revenue. Buyer will be responsible for the payment of royalties and severance taxes, if applicable, after the production month of [_____] 200__.

_____ XTO Energy will continue to bill the joint owners for expenses through the production month of [_____] 200__. The [Xxxxxx +1 200__] bill will be XTO Energy's final billout to joint owners for charges incurred before the Closing Date, but received after the Closing Date.

_____ Expenses received late (i.e., after XTO Energy's final billout to joint owners) for services rendered after the Effective Time will be handled as follows: if paid by XTO Energy, 100% of the charges will be included in the Final Settlement Statement and backup support will be provided to Buyer, or invoices will be returned to vendor for rebilling to Buyer.

_____ XTO Energy will continue to pay the operator of non-XTO Energy operated properties for joint billings for the billing month of [_____] 200__. All subsequent bills will be returned to the operator for rebilling to Buyer, forwarded to Buyer for payment, or if already paid by XTO Energy, charged against Buyer in the final settlement.

_____ XTO Energy will continue to prepare all regulatory and other monthly production reports through the production month of [_____] 200__. Copies of reports filed after the Effective Time will be provided to Buyer, along with the final ending inventory balance.

_____ Buyer will file all appropriate documents of record at the appropriate courthouses and agencies.

_____ Buyer will pay current year ad valorem taxes. Proration of taxes through the Effective Time will be handled in the final settlement. Any statements received by XTO Energy will be forwarded promptly to the Buyer for payment.

_____ XTO Energy will continue to pay all shut-in royalties, minimum royalties, delay rentals and other lease obligations through the production month of [_____] 200__. Proration of the amounts paid by XTO Energy, through the Effective Time will be reflected in the Final Settlement Statement.

DYNAMIC OFFSHORE RESOURCES, LLC            XTO OFFSHORE INC.


BY: _____                BY: _____


NAME: _____              NAME: _____


TITLE: _____             TITLE: _____


DATE: _____              DATE: _____

**EXHIBIT E**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

**GAS-PRODUCTION-IMBALANCE ACCOUNTS**

| July 25, 2011 | | | | CUMULATIVE | SALES |
|---|---|---|---|---|---|
| **PLATFORM** | **XTO PROPERTY NO** | **XTO PROPERTY NAME** | **OPERATOR** | **OVER/(UNDER)** | **MONTH** |
| HIA365 | 402949 | HI A365 A UNIT | APACHE CORPORATION | (911,229) | 12/31/2008 |
| HIA376 | | HI A376 A 15 | APACHE CORPORATION | 910,660 | 12/31/2008 |
| SMI268 | 401992 | SMI 268 A 23;OCS G02310 (P&A) | APACHE CORPORATION | (688) | 4/30/2011 |
| SMI268 | 402940 | SMI 268 UNIT | APACHE CORPORATION | 254 | 4/30/2011 |
| SMI269 | 402687 | SMI 269 B 17-ST 1;OCS G02311 | APACHE CORPORATION | (338) | 4/30/2011 |
| SMI269 | 401997 | SMI 269 F 01;OCS G02311 | APACHE CORPORATION | 86 | 4/30/2011 |
| SMI269 | 402941 | SMI 269 UNIT | APACHE CORPORATION | 441 | 4/30/2011 |
| SMI269 | 401993 | SMI 269 B 02D;OCS G02311 (INA) | APACHE CORPORATION | 537 | 4/30/2011 |
| SMI269 | 401996 | SMI 269 B 19;OCS G02311 | APACHE CORPORATION | 1,198 | 4/30/2011 |
| SMI281 | 402942 | SMI 281 UNIT | APACHE CORPORATION | (677) | 4/30/2011 |
| SMI281 | | SMI 281 I | APACHE CORPORATION | (645) | 4/30/2011 |
| SMI281 | 401862 | SMI 280 I 02 ST 01;OCS G02600 | APACHE CORPORATION | (25) | 4/30/2011 |
| SMI281 | 401864 | SMI 281 C 23 ST;OCS G02600 | APACHE CORPORATION | 4 | 4/30/2011 |
| SMI281 | 401863 | SMI 280 I 02;OCS G02600 | APACHE CORPORATION | 33 | 4/30/2011 |
| SMI281 | 402017 | SMI 281 E 05A;OCS G02600 | APACHE CORPORATION | 148 | 4/30/2001 |
| SMI281 | 402005 | SMI 281 C 11 ST;OCS G02600 | APACHE CORPORATION | 231 | 4/30/2011 |
| SMI281 | 402000 | SMI 281 C 04A;OCS G02600 (P&A) | APACHE CORPORATION | 332 | 4/30/2011 |
| | | | | | |

| PLATFORM | XTO PROPERTY NO | XTO PROPERTY NAME | OPERATOR | OVER/(UNDER) | MONTH |
|---|---|---|---|---|---|
| SMI281 | 402004 | SMI 281 C 10ST;OCS G026000 | APACHE CORPORATION | 759 | 4/30/2011 |
| SMI281 | | SMI 281 C & E | APACHE CORPORATION | 36,140 | 4/30/2011 |
| SS204 | 402035 | SS 204 A 24 ST 01;OCS G01520 | APACHE CORPORATION | (6,921) | 4/30/2011 |
| SS204 | 402033 | SS 204 A 15 ST 01;OCS G01520 | APACHE CORPORATION | (4,006) | 4/30/2011 |
| SS204 | 402034 | SS 204 A 16 ST 01;OCS G01520 | APACHE CORPORATION | 56 | 4/30/2011 |
| SS204 | 402033 | SS 204 A 15 ST 01;OCS G01520 | APACHE CORPORATION | 70 | 4/30/2011 |
| SS204 | 402033 | SS 204 A 15 ST 01;OCS G01520 | APACHE CORPORATION | 535 | 4/30/2011 |
| SS204 | 401772 | SS 204 A 34;OCS G01520 | APACHE CORPORATION | 707 | 4/30/2011 |
| SS204 | 402035 | SS 204 A 24 ST 01;OCS G01520 | APACHE CORPORATION | 825 | 4/30/2011 |
| SS204 | 402037 | SS 204 A 35;OCS G01520 | APACHE CORPORATION | 2,229 | 4/30/2011 |
| SS204 | 402943 | SS 204 UNIT | APACHE CORPORATION | 11,849 | 4/30/2011 |
| SS206 | 402040 | SS 206 E 02;OCS G01522 | APACHE CORPORATION | 152 | 4/30/2011 |
| SS206 | 402042 | SS 206 E 05;OCS G01522 | APACHE CORPORATION | 1,106 | 4/30/2011 |
| SS206 | 402041 | SS 206 E 04;OCS G01522 | APACHE CORPORATION | 4,072 | 4/30/2011 |
| SS207 | 402945 | SS 207 UNIT | APACHE CORPORATION | (45,258) | 4/30/2011 |
| SS207 | 402055 | SS 207 A 33;OCS G01523 | APACHE CORPORATION | (321) | 4/30/2011 |
| SS207 | 402054 | SS 207 A 32;OCS G01523 | APACHE CORPORATION | (188) | 3/31/2000 |
| SS207 | 402055 | SS 207 A 33;OCS G01523 | APACHE CORPORATION | (34) | 4/30/2011 |
| SS207 | 402060 | SS 207 D 10;OCS G01523 | APACHE CORPORATION | 13 | 4/30/2011 |
| SS207 | 402059 | SS 207 D 09 (C 06 SU);OCS G01 | APACHE CORPORATION | 14 | 3/31/2010 |
| SS207 | 402059 | SS 207 D 09 (C 06 SU);OCS G01 | APACHE CORPORATION | 1,224 | 4/31/2011 |
| SS207 | 402039 | SS 207 E 01;OCS G01523 | APACHE CORPORATION | 1,365 | 4/30/2011 |
| SS207 | 402054 | SS 207 A 32;OCS G01523 | APACHE CORPORATION | 1,412 | 4/31/2011 |
| SS207 | 401774 | SS 207 A 34;OCS G01523 | APACHE CORPORATION | 1,993 | 4/30/2011 |
| SS207 | 402053 | SS 207 A 31 ST 02;OCS G01523 | APACHE CORPORATION | 2,041 | 4/31/2011 |
| SS207 | 401773 | SS 207 A 04;OCS G01523 | APACHE CORPORATION | 63,603 | 4/31/2011 |

| PLATFORM | XTO PROPERTY NO | XTO PROPERTY NAME | OPERATOR | OVER/(UNDER) | MONTH |
|---|---|---|---|---|---|
| SS216 | 403453 | SS 216 C 22;OCS G01524 | APACHE CORPORATION | (11,286) | 4/30/2011 |
| SS216 | 401776 | SS 216 C 23D;OCS G01524 | APACHE CORPORATION | (114) | 4/3/2011 |
| SS216 | 401775 | SS 216 C 23;OCS G01524 | APACHE CORPORATION | (67) | 4/30/2011 |
| SS216 | 402580 | SS 291 B 02;OCS G02923 (P&A) | APACHE CORPORATION | (4) | 4/30/2011 |
| SS216 | 402062 | SS 216 C 07 ST;OCS G01524 | APACHE CORPORATION | 1,071 | 4/30/2011 |
| SS291 | 402090 | SS 291 B 01;OCS G02923 (P&A) | APACHE CORPORATION | 24,107 | 4/30/2011 |
| SS291 | 402580 | SS 291 B 02;OCS G02923 (P&A) | APACHE CORPORATION | 68,358 | 4/30/2011 |
| VM313 | 403594 | VR 313 D UNIT;OCS G01172 | ENI PETROLEUM CO, INC | 1,544 | 5/31/2011 |
| SS247 | 402962 | SS 247/248/249 UNIT | ENI PETROLEUM CO, INC | (453,217) | 5/31/2011 |
| SS248 | 402959 | SS 248 D UNIT;OCS G01030 | ENI PETROLEUM CO, INC | (32,376) | 5/31/2011 |
| SS248 | 402958 | SS 248 D&G UNIT;OCS G01029 | ENI PETROLEUM CO, INC | 4,798 | 5/31/2011 |
| EC14 | 401900 | EC 014 B 10 ST 01;OCS G01440 | MARINER ENERGY, INC | 1 | 9/30/2010 |
| EC14 | VARIOUS | EC 014 B PLATFORM | MARINER ENERGY, INC | 9,224 | 9/30/2010 |
| EI273 | 402963 | EI 273 D UNIT | MARINER ENERGY, INC | (306) | 9/30/2010 |
| EI284 | VARIOUS | EI 284 B | MARINER ENERGY, INC | 32,600 | 9/30/2010 |
| EI292 | VARIOUS | EI 292 PLATFORM | MARINER ENERGY, INC | (255,197) | 9/30/2010 |
| EI309 | 402938 | EI 309 G UNIT | MARINER ENERGY, INC | (462,342) | 9/30/2010 |
| EI314 | 402939 | EI 314 G UNIT | MARINER ENERGY, INC | 103,392 | 9/30/2010 |
| EI287 | 403251 | EI 287 D-1 | MARINER ENERGY, INC | 278,278 | 5/31/2010 |
| EC178 | 401901 | EC 178 01;OCS G27834 | XTO ENERGY | 864 | 5/31/2011 |
| EI309 | 401933 | EI 309 H 01;OCS G00997 | XTO ENERGY | (198,094) | 7/31/2008 |
| EI309 | | EI 309 J1 & 1D | XTO ENERGY | (95,137) | 1/31/2011 |
| EI309 | 401938 | EI 309 J 03A;OCS G00997 | XTO ENERGY | (26,473) | 7/31/2008 |
| EI309 | 401829 & 401830 | EI 309 H 15B;OCS G00997 (INA) & EI 309 H 15C;OCS G00997 (INA) | XTO ENERGY | (19,148) | 7/31/2008 |

**EXHIBIT E**   -166-

| PLATFORM | XTO PROPERTY NO | XTO PROPERTY NAME | OPERATOR | OVER/(UNDER) | MONTH |
|---|---|---|---|---|---|
| EI309 | 401940 | EI 309 J 04;OCS G02608 | XTO ENERGY | (1,059) | 7/31/2008 |
| EI309 | | EI 309 H-12 | XTO ENERGY | 46,024 | 1/31/2011 |
| EI309 | 401936 | EI 309 H 05 ST 02;OCS G00997 | XTO ENERGY | 60,141 | 7/31/2008 |
| EI309 | 401934 & 401935 | EI 309 H 02D;OCS G00997 (INA) & EI 309 H 04;OCS G00997 (INA) | XTO ENERGY | 176,678 | 7/31/2008 |
| EI312 | 401793 | EI 312 D 01;OCS G22679 | XTO ENERGY | (36,994) | 5/31/2011 |
| MP118 | 401966 | MP 118 A 01;OCS G22797 | XTO ENERGY | (39,840) | 6/30/2011 |
| MP125 | 401968 | MP 125 B 01;OCS G25019 | XTO ENERGY | (13,314) | 6/30/2011 |
| MP29 | 401945 | MP 029 01;OCS G27196 | XTO ENERGY | (27,788) | 6/30/2011 |
| SMI109 | 401980 | SMI 109 A 05;OCS G24873 | XTO ENERGY | (160) | 5/31/2011 |
| SMI109 | 401814 | SMI 109 A 04;OCS G24873 | XTO ENERGY | (38) | 5/31/2011 |
| SMI109 | 401979 | SMI 109 A 03;OCS G24873 (INA) | XTO ENERGY | (33) | 5/31/2011 |
| SMI109 | 401813 | SMI 109 A 02;OCS G24873 | XTO ENERGY | (10) | 5/31/2011 |
| SMI109 | 401895 | SMI 109 A 02D;OCS G24873 | XTO ENERGY | 128 | 5/31/2011 |
| SMI109 | 401812 | SMI 109 A 01;OCS G24873 | XTO ENERGY | 3,640 | 5/31/2011 |
| SMI142 | 401852 | SMI 142 A 06C;OCS G01216 (INA) | XTO ENERGY | (20,224) | 5/31/2011 |
| SMI142 | 401983 | SMI 142 A 03B;OCS G01216 | XTO ENERGY | (15,320) | 5/31/2011 |
| SMI142 | 401857 | SMI 142 A 08D;OCS G01216 (INA) | XTO ENERGY | (5) | 5/31/2011 |
| SMI142 | 401890 | SMI 142 C 03A;OCS G01216 | XTO ENERGY | 45 | 5/31/2011 |
| SMI142 | 401767 | SMI 142 A 11;OCS G01216 | XTO ENERGY | 61 | 5/31/2011 |
| SMI142 | 403035 | SMI 142 A 10D;OCS G01216 (P&A) | XTO ENERGY | 1,117 | 5/31/2011 |
| SMI142 | 401768 | SMI 142 A 11D;OCS G01216 | XTO ENERGY | 6,587 | 5/31/2011 |
| SMI142 | 403034 | SMI 142 A 10;OCS G01216 (P&A) | XTO ENERGY | 67,479 | 5/31/2011 |
| SMI40 | 401765 | SMI 040 B 05D;OCS G01192 | XTO ENERGY | (4,485) | 5/31/2011 |
| SMI40 | 401787 | SMI 040 B 01;OCS G13607 | XTO ENERGY | (642) | 5/31/2011 |
| SMI40 | 401866 | SMI 040 JA 02;OCS G13607 (INA) | XTO ENERGY | (3) | 5/31/2011 |
| SMI40 | 402019 | SMI 040 B 07;OCS G13607 | XTO ENERGY | 27 | 5/31/2011 |

**EXHIBIT E**

| PLATFORM | XTO PROPERTY NO | XTO PROPERTY NAME | OPERATOR | OVER/(UNDER) | MONTH |
|---|---|---|---|---|---|
| SMI40 | 402967 | SMI 040 B 07D;OCS G13607 | XTO ENERGY | 451 | 5/31/2011 |
| SMI40 | 401788 | SMI 040 B 01D;OCS G13607 | XTO ENERGY | 2,988 | 5/31/2011 |
| SMI40 | 402020 | SMI 040 C 02;OCS G13607 | XTO ENERGY | 3,823 | 5/31/2011 |
| SMI40 | 402608 | SMI 040 C 02D;OCS G13607 | XTO ENERGY | 4,660 | 5/31/2011 |
| SMI41 | 401764 | SMI 041 B 04E;OCS G01192 | XTO ENERGY | 14 | 5/31/2011 |
| SMI41 | 401869 | SMI 041 B 02;OCS G01192 | XTO ENERGY | 561 | 5/31/2011 |
| SMI41 | 401887 | SMI 041 B 04;OCS G01192 | XTO ENERGY | 618 | 5/31/2011 |
| SMI41 | 401868 | SMI 041 B 02ST;OCS G011922 | XTO ENERGY | 3,337 | 5/31/2011 |
| SMI41 | 401763 | SMI 041 B 03;OCS G01192 | XTO ENERGY | 5,052 | 5/31/2011 |
| SMI41 | 401889 | SMI 041 B 05D;OCS G01192 | XTO ENERGY | 5,331 | 5/31/2011 |
| SMI41 | 401766 | SMI 041 B 06;OCS G01192 | XTO ENERGY | 10,725 | 5/31/2011 |
| SMI44 | 401804 | SMI 044 01;OCS G23840 | XTO ENERGY | (6) | 5/31/2011 |
| SMI44 | 401805 | SMI 044 01D;OCS G23840 | XTO ENERGY | 7,219 | 5/31/2011 |
| SS79 | 401789 | SS 079 A 02;OCS G15277 | XTO ENERGY | (169) | 7/31/2008 |
| SS79 | 401790 | SS 079 A 02D;OCS G15277 | XTO ENERGY | 516 | 7/31/2008 |
| | | | | (708,633) | |
| | | | | | |

**The following Gas Imbalance Accounts are reserved by XTO Energy:**

| PLATFORM | XTO PROPERTY NO | XTO PROPERTY NAME | OPERATOR | OVER/(UNDER) | SALES MONTH |
|---|---|---|---|---|---|
| SMI139 | 401851 | SMI 139 B 02D;OCS G21106 | MCMORAN OIL & GAS LLC | 18,433.49 | 1/31/2011 |
| SMI139 | 401792 | SMI 139 B 01;OCS G21106 | MCMORAN OIL & GAS LLC | 34,215.51 | 1/31/2011 |
| SMI139 | 401850 | SMI 139 B 02;OCS G21106 | MCMORAN OIL & GAS LLC | 47,411.35 | 1/31/2011 |
| WC485/507 | VARIOUS | WC 485 | XTO ENERGY | 24,177.36 | 7/31/2008 |

| WC507 | 401782 | WC 507 C 01;OCS G02549 | XTO ENERGY | 17,780.19 | 7/31/2008 |
|-------|--------|------------------------|------------|-----------|-----------|
|       |        |                        |            | 142,017.90 |          |

EXHIBIT F
**ATTACHED TO AND MADE A PART OF THAT CERTAIN
PURCHASE AND SALE AGREEMENT,
DATED EFFECTIVE AS OF AUGUST 1, 2011,
BETWEEN XTO OFFSHORE INC.,
HHE ENERGY COMPANY, XH, LLC, AS SELLER,
AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

**ENVIRONMENTAL ASSESSMENT AND TESTING**

**CONFIDENTIALITY, RELEASE AND INDEMNIFICATION AGREEMENT**

**(BUYER FORM)**

In connection with the possible sale by XTO ENERGY INC. ("XTO Energy") to _____ ("Buyer") of certain properties located in the Federal Outer Continental Shelf and/or Plaquemines Parish, Louisiana, more fully described in the Purchase and Sale Agreement between XTO Energy and Buyer effective _____ (the "Properties"), and in consideration for and as a condition of Buyer's and its Representatives' (as hereinafter defined) being allowed:

(1)     to examine and copy certain non-public, confidential, and proprietary information provided by XTO Energy relating to the environmental and physical condition of the Properties, and

(2)     access to the Properties to conduct an environmental assessment thereon,

XTO Energy and Buyer agree as follows:

A.     As used herein, the term "Information" refers to all environmental data and reports provided by XTO Energy to Buyer and all information and data obtained by, taken, or discovered from XTO Energy or the Properties as a result of Buyer's and its Representatives' environmental assessment and due diligence, including, but not limited to, soil samples and water samples. All reports, analyses, compilations, data, studies, or other materials prepared by Buyer or its Representatives that are based, in whole or in part, on any Information shall also be included in the term "Information". The following will not constitute Information for purposes of this Agreement:

(1)     information which is available to the public at the time of receipt by Buyer;

(2)     information which becomes available to the public subsequently without breach of this Agreement by Buyer; and

(3)   —information which is known to Buyer before receipt or discovery of Information in connection with this Agreement in circumstances not involving breach of a confidentiality obligation.

(a)   Buyer hereby agrees that:

    (1)   should Buyer undertake an environmental assessment, both the consultant (if consultants are employed) and the scope of the proposed assessment, including test protocols, must be approved in writing by XTO Energy before the work may begin.  Buyer and its Representatives and subcontractors will follow the ExxonMobil Subsurface Clearance Protocol and associated checklist if sampling or any other work includes drilling or excavation of any kind.  ExxonMobil will provide said Subsurface Clearance Protocol and associated checklist to the Buyer for review prior to conducting an environmental assessment if sampling or any other work includes drilling or excavation of any kind;

    (2)   it shall use the Information solely for the purpose of environmental evaluation of the Properties and for no other purpose;

    (3)   it shall keep the Information confidential and shall not divulge any of the Information to any party except those of its Representatives who need to know the information in order to carry out Buyer's evaluation of the Properties; and

    (4)   subject to the provisions of Paragraph J of this Agreement, it shall be responsible for enforcing the maintenance of confidentiality of the Information and shall take such action, legal or otherwise, to the extent necessary to prevent or remedy any disclosure through Buyer or its Representatives.

(b)   Buyer shall be responsible for any breach of this Agreement by its Representatives.

(c)   Without the other Party's written consent, no public announcement or statement with respect to any potential transaction between XTO Energy and Buyer, or with respect to Buyer's or its Representatives' participation in an environmental assessment, shall be made unless, in the opinion of XTO Energy's or Buyer's counsel, XTO Energy or Buyer is required to make a disclosure under the Securities Act of 1933, the Securities Exchange Act of 1934, or any other law or regulation.

(d)   Buyer will provide XTO Energy with at least five days written notice before its desired date for testing the Properties and at least 24 hours written notice before its desired date for assessing the Properties and will specify in the notice the desired locations to be tested or assessed.  XTO Energy will have the right to be present during any testing or other assessments and will have the right to require splitting of all samples.

(e)     Buyer and its Representatives will provide XTO Energy with a preliminary report and access to drafts of all other reports, data, and other information produced or obtained by Buyer or its Representatives as a result of the environmental assessment and testing before a final version of any report is written.  After receiving the preliminary report and reviewing any other reports, data, and other information, it desires, XTO Energy shall have the opportunity to provide Buyer and its Representatives with comments and additional information.  Buyer and its Representatives agree to review the comments and information before a final version of any report is written.  Upon completion of the final reports, Buyer and its Representatives will provide XTO Energy with copies of all reports, data, and other information produced or obtained by Buyer or its Representatives as a result of the environmental assessment and testing.

(f)     Except for Buyer's due diligence efforts, which are solely of an information-gathering nature, XTO Energy retains all rights to contact, discuss, and notify any governmental and regulatory bodies in connection with any Information, including any public information, disclosed under this Agreement or discovered in the preparation of Buyer's environmental assessment.  Except for Buyer's due diligence efforts, which are solely of an information-gathering nature, neither Buyer nor its Representatives may make any governmental contacts not specifically authorized by XTO Energy unless the failure to make that contact is a violation of law or regulation, in which case, Buyer will give XTO Energy 10 days notice before the contact.

(g)     Buyer agrees that XTO Energy would be irreparably injured by a breach of this Agreement and that XTO Energy is entitled to equitable relief by way of injunction if Buyer breaches or threatens to breach any of the provisions of this Agreement.  This remedy will not be deemed to be the exclusive remedy for breach, but will be in addition to all other remedies available to XTO Energy at law or in equity.

(h)     XTO Energy makes no representation or warranty, express or implied, as to the accuracy or completeness of the Information.  XTO Energy will have no liability to Buyer from Buyer's use of the Information.  Buyer will rely upon its own investigation and evaluation with respect to the environmental condition of the Properties.

(i)     If Buyer does not acquire the Properties for any reason, then upon XTO Energy's request to Buyer, Buyer and its Representatives shall return all Information to XTO Energy and shall destroy all materials prepared by it or its Representatives that incorporate the Information pertaining to the Properties.

(j)     If Buyer or any of its Representatives is requested or required by oral questions, documents, subpoena, civil investigative demands, interrogatories, requests for information, or other similar process to disclose any Information supplied or discovered in connection with this Agreement, Buyer agrees that it will provide XTO Energy with notice of the request(s) so XTO Energy may seek an

appropriate protective order or waive Buyer's compliance with the provision of this Agreement. The Parties agree that, if in the absence of a protective order or the receipt of a waiver under this Agreement, Buyer or any of its Representatives is nevertheless, in the opinion of that Party's counsel, required to disclose the information or portion of it to any tribunal or agency having jurisdiction or else stand liable for contempt or suffer other censure or penalty, Buyer or its Representatives may disclose the Information or portion of it to the tribunal or agency having jurisdiction without liability under this Agreement.

(k) Buyer assumes all responsibility for and all risk of damage or injury that may occur to Buyer and its Representatives in the course of any visit to the Properties and in conducting the environmental assessment whether caused by XTO Energy's:

  (1) active or passive, joint, concurrent, or sole negligence, or

  (2) strict liability.

(l) Buyer hereby releases XTO Energy from any liability resulting in the course of the visit and environmental assessment whether that liability is caused by XTO Energy's:

  (1) active or passive, joint, concurrent, or sole negligence, or

  (2) strict liability.

(m) Buyer will defend, protect, indemnify, and hold XTO Energy harmless from and against any and all losses, liabilities, claims, demands, and causes of action of every kind on account of personal injuries, illnesses, or death of persons or damage to or loss of property (including, but not limited to, damage to XTO Energy's property) resulting directly or indirectly from the use of, occupancy of, visitation to, or environmental assessment of the Properties by Buyer and its Representatives, even if the personal injuries, illnesses, death of persons, or damage to or loss of property is caused by XTO Energy's:

  (1) active or passive, joint, concurrent, or sole negligence, or

  (2) strict liability.

(n) Buyer agrees to comply fully with all rules, regulations, and instructions issued by XTO Energy regarding the actions of Buyer and its Representatives while upon, entering, or leaving the premises of XTO Energy's property.

(o) The provisions of this Paragraph K do not apply to XTO Energy's gross negligence or willful misconduct.

(p) As used here, the term "Representatives" shall mean: the officers, directors, employees, legal counsel, accountants, financial advisors, consultants, agents, and representatives of Buyer, its partners, subsidiaries, and Affiliates.

(q)    This Agreement is in addition to, and not in lieu of, any other confidentiality, release, or indemnification agreements signed by Buyer or its Representatives relating to the proposed transaction or the Properties.

(r)    This Agreement will be binding upon and inure to the benefit of XTO Energy and Buyer and their respective successors and assigns.

(s)    **This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas.**

(t)    If Buyer does not purchase the Properties, this Agreement shall expire five years after the date the Information is returned to XTO Energy or Buyer certifies that all materials prepared by Buyer or its Representatives incorporating the Information have been destroyed, whichever is later.

DYNAMIC OFFSHORE RESOURCES, LLC          XTO ENERGY INC.

BY: _____          BY: _____

NAME: _____          NAME: _____

TITLE: _____          TITLE: _____

DATE: _____          DATE: _____

**EXHIBIT G**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

**[This Exhibit is intentionally left blank.]**

# EXHIBIT H
## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## PURCHASE AND SALE AGREEMENT,
## DATED EFFECTIVE AS OF AUGUST 1, 2011,
## BETWEEN XTO OFFSHORE INC.,
## HHE ENERGY COMPANY, XH, LLC, AS SELLER,
## AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER

## GEOLOGICAL REQUIREMENTS

| NO. OF COPIES | ATTENTION | REQUIRED/REQUESTED INFORMATION |
|---|---|---|
| 2 | Designated Landman / Reservoir Engineer | Drilling Application/Permit, Location Plat with Elevation, Completion Report, Abandonment Report, FERC Filings, Federal MMS Filings and all other regulatory reports |
| 1 | Reservoir Engineer | Casing Program; Completion Procedure (when applicable) |
| 1 | Designated Geologist | Daily Mud Logs/MWD Logs (Petrolink preferred); if available, E-mail daily to lorna.m.campbell@exxonmobil.com |
| 2 | Designated Geologist | DST Reports/Charts, DST Fluid and Gas Sample Analysis Sample Descriptions, Core Descriptions and Analyses, Final Copy of Mud Log: Fax to 281-654-7763 and Mail to Designated Geologist; E-mail digital data to lorna.m.campbell@exxonmobil.com |
| | Designated Geologist / Reservoir Engineer | Casing Approval or P&A Approval (as required by Contracts) |
| 3 Field & 3 Final | Designated Geologist | Wireline Logs (as soon as available) Fax to 281-654-7481 and E-mail to lorna.m.campbell@exxonmobil.com; Mail log prints |
| 1 | Designated Geologist | Mail LAS diskette of wireline logs; E-mail LAS file to lorna.m.campbell@exxonmobil.com |
| 1 | Designated Geologist | Geological Correspondence and information, Paleo Report, Slabbed Section of Cored Interval, (if applicable) |
| 1 | ExxonMobil Global Services | One set of wet cutting samples to: Attn: Ric Coronado, ExxonMobil Global Services, Geologic Warehouse, 300 Old Choate Road, Houston, Texas 77034----Phone: 281-925-3718, Fax 281-925-3888 |
| 1 | Designated Landman | Land Correspondence, Operating Agreements, Payout Notices, Well Proposals, etc. |
| 1 | Designated Geophysicist | Geophysical Data |

**EXHIBIT H**            -176-

1          Reservoir Engineer          Monthly Production Reports (including gas, oil, and water with producing days and FTP), Pressure Surveys (Bottomhole and Surface), Annual Back Pressure Deliverability Tests, Gas and Water Analyses

## DAILY DRILLING AND COMPLETION REPORTS/MWD LOGS

Designated Geologist          **Email daily by 7 a.m. to Operations Geology** one copy of detailed report. Email to lorna.m.campbell@exxonmobil.com

## 24 HOUR NOTIFICATION

Designated Geologist          Log Runs, Tests, Changes in Evaluation Programs, (Notify Designated Geologist or, if unavailable, Mike T Farrell @ 281-654-1761

∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎

### EXXON MOBIL CORPORATION
### 222 Benmar
### P.O. Box 4778
### Houston, Texas 77060, 77210-4778
### Continuous Fax: 281-654-7481

DESIGNATED GEOLOGIST:      Lorna M. Campbell      Office      281-654-2968
DESIGNATED GEOPHYSICIST:      Lorna M. Campbell      Office      281-654-2968
GEOSCIENCE MANAGER:      Lorna M. Campbell      Office      281-654-2968
DESIGNATED LANDMAN:      Jeffrey McDonald      Office      281-654-1992

**EXHIBIT I**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**


**TRANSITION SERVICES AGREEMENT**

THIS TRANSITION SERVICES AGREEMENT ("Agreement") is entered into this ___ day of August, 2011, by and between _____ with an address of _____ (referred to herein as "Contractor"), and _____, a _____ with an address of _____ (referred to herein as "Company"). Contractor and Company are sometimes collectively referred to herein as the "Parties", and each a "Party".

WHEREAS, effective as of the 1st day of August, 2011 ("Effective Date"), Company and Contractor entered into a Purchase and Sale Agreement ("PSA") providing for the sale of certain Contractor owned Interests as described in Section 1.19 of the PSA, as well as certain platforms, pipelines, flowlines, and facilities associated with the Interests (the "Property" or "Properties") that are either operated by Contractor or outside operated; and

WHEREAS, said PSA provides for a Closing Date on or before August 31, 2011, unless otherwise extended; and

WHEREAS, Company has requested that Contractor continue to operate and provide operational and accounting related services for the Interests and Properties for a period of time after the Closing Date in order to effect an orderly transfer from Contractor to Company of the operational, accounting, marketing, and other matters associated with the Interests and Properties in accordance with terms of this Agreement and the PSA; and

WHEREAS, as an accommodation to Company, subject to Closing under the PSA, Contractor has agreed to continue to operate the Interests and Properties as set forth in this Agreement.

NOW, THEREFORE, based upon the mutual covenants and considerations contained herein, Contractor and Company agree as follows with respect to the Contractor operated Interests and Properties only:

1.     <u>SCOPE OF SERVICES</u>: Subject to the provisions in Article 3 below, from the Closing Date until 7:00 a.m. on November 30, 2011 ("Transition Period"), Contractor shall perform transition services for Company as set forth below. The services to be provided by Contractor to Company in this regard (the "Services") shall include, to the extent reasonable and applicable, the following:

**EXHIBIT I**         -178-

(A) Operational-related services:

(1) Contractor shall employ such personnel as may be reasonably necessary for the efficient and safe operation of the Interests and Properties. During such period, Contractor shall retain all employee payroll and benefit obligations, including, but not limited to, the withholding and depositing of payroll taxes, with respect to its employees that perform the Services required under this Agreement;

(2) Contractor shall purchase supplies, materials, tools, facilities, and equipment as may be reasonably necessary for the efficient and safe operation of the subject Interests and Properties;

(3) Contractor shall contract for services as may be reasonably necessary for the efficient and safe operation of the subject Interests and Properties;

(4) Contractor shall provide marketing, gas control and other similar services necessary to sell the products produced from the Interests and Properties in a manner consistent with Contractor's past practices; provided that Contractor will not alter the current marketing arrangement without Company's consent;

(5) Contractor shall inform the Company of any pending or threatened action or investigation of which the Contractor receives written notice and which Contractor believes in good faith could have an adverse impact on the Interests and Properties, including all actions initiated or investigations threatened by a third party or governmental authority under applicable environmental laws;

(6) Contractor shall execute routine contracts or documents as necessary for carrying on business related to the Interests and Properties during the Transition Period, provided, however, that Contractor shall not, without the prior written consent of Company, (i) approve any Authority for Expenditure ("AFE"); (ii) issue any AFEs; (iii) enter into any single contractual arrangement that would result in a charge, obligation, or liability in excess of a gross amount of Two Hundred Fifty Thousand dollars ($250,000.00); or (iv) enter into pipeline construction contracts;

(7) Contractor shall timely submit returns, reports, and responses to state, federal, or regulatory authorities due during the Transition Period, as appropriate, and provide copies of such filings to Company; and

(8) Contractor shall provide assistance, as reasonably requested by Company, in familiarizing Company's personnel (including contract personnel) with the operation of the subject Interests and Properties during the Transition Period.

(9) Contractor shall provide access and use of the Interests and Properties for the Company to witness the installation, operation, maintenance, calibration and repair of equipment and facilities related to the Interests and Properties.

**EXHIBIT I**                                     -179-

(10) If requested, Contractor shall provide helicopter transportation for the Company representatives to and from platforms and other facilities related to the Interests and Properties on a space-available basis on regularly scheduled trips. If space is unavailable on regularly scheduled helicopter trips, Company may request specific transportation and flight arrangements with forty-eight (48)-hours written notice. Any additional costs associated with Company requested non-regularly scheduled trips will be reimbursed to Contractor.

(11) Contractor shall provide quartering for Company representatives on platforms associated with the Interests and Properties. Company, to the extent possible, shall give Contractor reasonable notice of expected personnel to be quartered. If space is limited, Contractor and Company will work together to ensure that the limited space can be utilized for the mutual benefit of both parties.

(12) In the event of an emergency, including but not limited to an explosion, fire, or other occurrence that may threaten life, property or the environment, Contractor shall have the right to take actions, which in the Contractor's sole discretion, are necessary and appropriate to prevent, remedy or otherwise mitigate the effects of such emergency including the right to shutdown operations associated with the Interests and Properties, and temporarily discontinue the Services contemplated by this Agreement to make any necessary changes or repairs, and shall not be liable to the Company for any such action or inaction. Contractor shall notify Company by telephone of such emergency as soon as practicable, followed promptly by written notification of such emergency and such actions taken.

(13) In the event of a hydrocarbon leak or spill emanating from platforms or pipelines associated with the operations of the Interests and Properties, Contractor shall have the responsibility for the appropriate reporting of such leak or spill to the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE") district office, the National Response Center and any other regulatory agencies as may be required. However, it is expressly understood that upon approval by the BOEMRE of the Designation of Operator forms submitted by the Parties in connection with the PSA, Contractor will no longer be authorized to contact the BOEMRE on behalf of Company, such that Company will have this responsibility and Contractor will notify Company immediately in the event of said leak or spill and provide Company with information available to Contractor appropriate for Company's response to the BOEMRE. All costs and risks associated with said leak or spill shall be the sole responsibility of the Company.

(14) For purposes of this Agreement "Force Majeure" shall be defined as acts of God, strikes, lockouts or other industrial disturbances, governmental intervention or suspensions, acts of the public enemy, wars, blockades, insurrections, riots, epidemic, lighting, earthquakes, fires, storms, floods, washouts, arrests and restraints of government and people, civil disturbances, explosions, breakage or accident to machinery or lines of pipe, freezing of wells

**EXHIBIT I**                                    -180-

or lines of pipe, partial or entire failure of wells or any other causes, whether of the kind herein enumerated, not reasonably within the control of the Contractor. In the event of Force Majeure, Contractor shall:

(a) not be liable to the Company for failure to perform any of the obligations under this Agreement, other than the obligation to make monetary payments, to the extent such performance is hindered, delayed or prevented by Force Majeure;

(b) promptly give written notice to Company stating in reasonable detail the circumstances underlying such Force Majeure;

(c) diligently use all reasonable and prudent efforts to remove the cause, condition, event or circumstance of such Force Majeure; and

(d) promptly give written notice to the Company of the termination of such Force Majeure and resume performance of any suspended obligation as soon as reasonably possible after termination of such Force Majeure.

(B)     <u>Accounting-related services:</u>

(1)     On or before sixty (60) days after the end of the production month, Contractor shall identify all cash, checks, or other proceeds received and paid which relate to the Interests and Properties. During such period, Contractor shall prepare and deliver to Company a settlement statement indicating all Transition Period revenues, receipts or other proceeds and costs and expenditures, which are attributable to that production month. The form and content of such statement shall be in substantially the same form as the attached Exhibit A (the "Settlement Statement"). On or before sixty (60) days after the end of the production month, Contractor shall remit to Company, the net amount calculated as set forth on the Settlement Statement. All remittances shall be made by wire transfer of immediately available funds to the account of Company, as may be specified by an authorized representative of Company in writing in accordance with Article 23 of the PSA. For any expenses that could not be offset by revenues as provided for herein, payment shall be sent to Contractor at the address provided in Article 23 of the PSA;

(2)     Contractor shall perform all revenue accounting functions relating to the Interests and Properties, including disbursement of revenue proceeds to all working interest, third party, royalty and overriding royalty owners as well as all rentals, severance or production taxes, and right-of-way payments and any and all lease, minimum or advance payments due in the normal course of business during the Transition Period. If any revenue is received by Contractor for later months, it will be credited one hundred percent (100%) to Company in a final settlement statement or forwarded to Company when received; provided, however, that Contractor will not pay any royalties or severance taxes out of such later months' revenues. Company shall be responsible for the payment of royalties and severance taxes, if applicable, to be paid after the end of the

**EXHIBIT I**                                              -181-

Transition Period. Regardless of the revenue accounting functions performed by Contractor during the Transition Period as a result of this paragraph, all disbursements to working interest, third party, royalty and overriding royalty owners, as well as all rentals, severance or production taxes, and right-of-way payments and any and all lease, minimum or advance payments due in the normal course of business, remain the obligations of the Company.

(3)    Contractor shall bill the joint owners for expenses paid during the term of this Agreement. All expenses paid by Contractor after the end of the Transition Period will be accumulated and charged one hundred percent (100%) to Company or the invoices will be returned to the vendor for rebilling to Company.

(4)    Contractor shall prepare all regulatory and other monthly production reports due during the Transition Period.

(5)    Contractor shall provide assistance, as reasonably requested by Company, in familiarizing Company's personnel (including contract personnel) with the accounting, reporting and distribution requirements concerning the subject Interests and Properties during the Transition Period.

2.    CHARGES PAID BY COMPANY:    As consideration for the performance of the Services, Company shall compensate Contractor in accordance with the terms of this Agreement and as follows:

(A)    Operation and Maintenance Expenses:  A fixed monthly rate for operation and maintenance expenses and other miscellaneous costs and expenses incidental to the operation, protection, and maintenance of the Interests and Property (but excluding costs under paragraph (B) below) based on the average operation, maintenance, and miscellaneous costs and expenses for each Interest for the three-month period before the Effective Date;

(B)    Other Costs:  Reimbursement for workover costs, plugging, abandoning, and re-abandoning costs, $CO_2$ purchases, prepaid items (e.g., utility charges, rentals, deposits and any other prepays excluding taxes) prorated before and after the Effective Date, and other major costs incurred by XTO Energy incidental to the operation, protection, and maintenance of the Interests and Property, on an actual-cost basis; and

(C)    Overhead:  During the Transition Period, Company shall pay Contractor an overhead rate equal to twelve and one half percent (12.50%) of the sum of the amounts under paragraphs 2(A) and 2(B) above, excluding, however, the cost of insurance coverages.  At such time that, (i) thirty (30) days have elapsed from the Closing Date, (ii) any and all forms, documents and permits necessary or required by the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE") to transfer the operatorship of the Properties operated by Contractor to Company, or to a third party in the event Company cannot succeed

EXHIBIT I                                                                                    -182-

Contractor as operator, have been submitted to the BOEMRE, and (iii) a list of such filings with the BOEMRE has been provided to Contractor, then the overhead rate shall be reduced from 12.5% to 5%.

(D) <u>Salaries, Wages, etc.:</u> Company will pay Contractor's employee costs (salaries, wages and benefits, and workers' compensation insurance costs) attributable to Contractor personnel located on or associated with the Interests and Properties during the Transition Period.

3. <u>TERM:</u> The term of the Agreement shall be from the Closing Date until 7:00 a.m. on November 30, 2011, unless terminated earlier by Company upon thirty (30) days prior written notice, or as extended in writing by mutual agreement of the Parties. If Company provides less than thirty (30) days' written notice of termination of this Agreement, then Company will be responsible to pay any fees or charges incurred by Contractor for cancelling service contracts that require thirty (30) days' written notice to terminate. Said fees or charges incurred by Contractor for the time period that the service contracts remain in place, during the thirty (30) day termination period, will be reflected on the applicable Settlement Statement. In no event shall this Agreement be terminated with less than ten (10) days written notice.

4. <u>REGULATORY CHANGE IN OPERATORSHIP:</u> The Parties shall work together to ensure that the appropriate documentation and other measures are taken for Company (or its designee) to become operator-of-record as concerns the applicable regulatory agencies, upon the termination of the operational-related services.

5. <u>PERMITS:</u> It is understood that certain permits necessary for operation of the Interests and Properties may not have been obtained by Company by the Closing Date, and under the PSA, under certain circumstances, Closing may take place notwithstanding the pending transfer to Company of permits or receipt of replacement permits by Company. In such case, and in consideration for the granting to Company the right to operate under the authority of the permits during the Transition Period, Company shall grant Contractor authority to advise regarding certain aspects of Company's operations as follows:

(A) Contractor shall advise Company regarding placement of personnel in positions that Contractor believes are critical to permit compliance activities, and Company agrees to consider in good faith Contractor's instruction in selecting such personnel during the Transition Period.

(B) Unless otherwise agreed, Contractor shall advise regarding Company's planned procedures to maintain the operations and activities under the permits in compliance with applicable laws. Company shall advise Contractor of procedures prior to implementation.

(C) Company shall update Contractor weekly on progress and expected timing of full transfer of permits not transferred to Company prior to Closing.

**EXHIBIT I**      -183-

6. **DISCLAIMER OF WARRANTIES: NOTWITHSTANDING ANY OTHER TERMS IN THIS AGREEMENT, CONTRACTOR, ITS AFFILIATES AND ITS AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, AGENTS AND REPRESENTATIVES (THE "CONTRACTOR GROUP") MAKE NO, AND DISCLAIM ANY, REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE PERFORMANCE OF THE SERVICES, AND CONTRACTOR GROUP SHALL HAVE NO LIABILITY FOR, OR IN CONNECTION WITH, ANY AND ALL CLAIMS, DEMANDS, SUITS, CAUSES OF ACTION, LOSSES, DAMAGES, LIABILITIES, FINES, PENALTIES AND COSTS (INCLUDING REASONABLE ATTORNEYS' FEES AND COSTS OF LITIGATION) ARISING OUT OF OR RESULTING FROM THE PERFORMANCE OR NONPERFORMANCE OF THE SERVICES BY CONTRACTOR GROUP OR CONTRACTOR GROUP'S CONTRACTORS OR SUBCONTRACTORS OF ANY TIER.**

7. <u>ASSIGNMENT:</u> Neither this Agreement nor the rights and obligations under it may be assigned or delegated by either party without prior written consent of the non-assigning party, which consent may be withheld for any reason. If such consent is withheld, any attempted assignment or delegation shall be null and void.

8. <u>NOTICE:</u> All notices, requests and other communication shall be provided in accordance with Article 23 of the PSA.

9. <u>MEDIA STATEMENTS:</u> Contractor shall have no obligation to make any statements to the media with respect to Services performed under this Agreement. Contractor shall refer all media inquiries concerning the Interests and Property during the Transition Period to Company.

10. <u>INSURANCE:</u>

    A.    In accordance with Section 8.08 of the PSA, Contractor shall terminate all insurance it has provided with respect to the Interests and Property as of the Closing Date, except to the extent that insurance is required by or provided under a joint operating or similar agreement which, in such case, Company shall take over stewardship of such insurance policies on behalf of the non-operators. Company shall obtain insurance coverage for the Interests and Property during the term of this Agreement. Notwithstanding the foregoing, Contractor shall continue to provide workers' compensation coverage for Contractor employees located on or associated with the Interests and Properties during the Transition Period.

    B.    Notwithstanding any contrary provision of the PSA or this Agreement, Company agrees that all of its property and liability insurance policies in any way related to the Interests and Property and liabilities in connection therewith (including, without limitation, the policies for which Company is assuming stewardship under Article 10(A), above, but expressly excluding workers' compensation policies), whether or not required by this Agreement or the PSA, will, to the extent of the risks and liabilities assumed by Company in this Agreement, name

**EXHIBIT I**             -184-

Contractor Group (as defined in Article 6 of this Agreement) and its and their contractors and subcontractors of every tier (hereafter referred to collectively with Contractor Group as "Contractor Indemnitees") as additional insureds on a broad form basis (with such additional insured coverage including coverage for the sole or concurrent negligence of the additional insured and not being restricted to (i) "ongoing operations," (ii) coverage for vicarious liability, or (iii) circumstances in which the named insured is partially negligent), waive subrogation against Contractor Indemnitees, and be primary and exclusive of any other existing valid and collectible insurance providing any coverage to any of the Contractor Indemnitees.

C.  Company and Contractor agree that as respects all services performed by or on behalf of Contractor in Louisiana, or offshore Louisiana, that are subject to the Louisiana Anti-Indemnity Act, Contractor (on behalf of itself and the Contractor Indemnitees, as defined above) will timely pay to Company's insurers (or their agent or representative) the premium required by their insurers for extending all of Contractor's liability insurance policies to include coverage for any claims for bodily injury or death asserted against any of the Contractor Indemnitees as required under this Agreement (including naming them as additional insured, waiving subrogation, and being primary), and such insurance protection shall be governed by Louisiana law.  Company will arrange to have Contractor billed for that premium by Company's insurers (or their agent or representative), and Company will advise Contractor prior to the execution of this Agreement if such premium will be in excess of one thousand dollars ($1,000.00).  At each subsequent renewal of Company's insurances, Company will advise Contractor as respects the amount of the premium required for such extensions and arrange to have Contractor billed for the appropriate premium by their insurers (or their agent or representative).  Company warrants that such amount constitutes the full cost of extending such insurance protection to all Contractor Indemnitees.

11.  CHOICE OF LAW:  This Agreement and its performance will, except to the extent expressly provided to the contrary, be construed in accordance with, and enforced under, the internal laws of the State of Texas, without regard to choice of law rules of any jurisdiction, including Texas.

12.  DISPUTES/CLAIMS/INDEMNIFICATION:

**COMPANY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD CONTRACTOR INDEMNITEES (AS DEFINED IN ARTICLE 10(B) OF THIS AGREEMENT) HARMLESS FROM ANY DAMAGES, EXPENSES (INCLUDING COURT COSTS AND ATTORNEY'S FEES), CIVIL FINES, PENALTIES AND OTHER COSTS, AND LIABILITIES INCURRED AS A RESULT OF CLAIMS, DEMANDS, AND CAUSES OF ACTION MADE AND ARISING ON OR AFTER THE DATE OF EXECUTION OF THIS AGREEMENT AS A RESULT OF OR RELATED TO THE PERFORMANCE OF SERVICES, OPERATIONS OR ACTIVITIES IN CONNECTION WITH THIS AGREEMENT OR FOR NON-PERFORMANCE OF SERVICES BY CONTRACTOR, CONTRACTOR GROUP**

EXHIBIT I                    -185-

OR CONTRACTOR GROUP'S CONTRACTORS OR SUBCONTRACTORS OF ANY TIER IN CONNECTION WITH THE SUBJECT MATTER OF THIS AGREEMENT. SAID DUTY TO RELEASE, DEFEND, INDEMNIFY AND HOLD CONTRACTOR INDEMNITEES HARMLESS SHALL EXTEND TO AND INCLUDE, WITHOUT LIMITATION, CLAIMS, DEMANDS, AND CAUSES OF ACTION ASSERTED BY COMPANY, ITS AFFILIATES AND ITS AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, AGENTS AND REPRESENTATIVES (THE "COMPANY GROUP"), OR THIRD PARTIES (INCLUDING, BUT NOT LIMITED TO, ANY LOCAL, STATE, OR FEDERAL GOVERNMENT, AGENCY OR BODY THEREOF, AND PERSONS HOLDING RIGHTS UNDER ANY AGREEMENT ASSUMED BY COMPANY AND ANY OF COMPANY'S CONTRACTORS OR SUBCONTRACTORS OF ANY TIER) OR BY ANY CONTRACTOR INDEMNITEE FOR DEATH, INJURY, DAMAGE TO PROPERTY, OR FOR FAILURE TO COMPLY WITH THE EXPRESS OR IMPLIED TERMS OF THIS AGREEMENT OR ANY AGREEMENT ASSUMED BY COMPANY. COMPANY'S INDEMNIFICATION OF CONTRACTOR INDEMNITEES SHALL EXTEND TO AND INCLUDE, WITHOUT LIMITATION, CLAIMS, CAUSES OF ACTION AND DEMANDS BASED ON (I) THE NEGLIGENCE OF CONTRACTOR OR ANY CONTRACTOR INDEMNITEE, COMPANY GROUP OR THIRD PARTIES, WHETHER SUCH NEGLIGENCE IS GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE, OR (II) STRICT LIABILITY, UNSEAWORTHINESS, OR OTHER LEGAL FAULT OF ANY OF THE FOREGOING, AND SHALL ALSO INCLUDE ANY CLAIMS, CAUSES OF ACTION OR DEMANDS ARISING OUT OF ANY LOADING, UNLOADING, INGRESS, OR EGRESS OF CARGO OR PERSONNEL. COMPANY AGREES THAT IT WILL SUPPORT ITS INDEMNITY OBLIGATIONS IN THIS ARTICLE 12 WITH LIABILITY INSURANCE OBTAINED FOR THE BENEFIT OF CONTRACTOR AND ALL OF THE CONTRACTOR INDEMNITEES AS INDEMNITEES, WITH MINIMUM LIMITS NOT LESS THAN TWENTY MILLION DOLLARS ($20,000,000.00).

Any disputes or claims under this Agreement shall be subject to and governed by Article 17 of the PSA. In the event of a conflict between the terms of this Agreement and the PSA, the terms of the PSA will control except to the extent expressly provided to the contrary.

13.    AUDIT RIGHT: Company has the right for a period of one hundred eighty (180) days after the termination of the Transition Period (the "Audit Period") to conduct, during normal business hours upon at least thirty (30) days prior notice, an audit of Contractor's records to the extent relating to the Services and appropriate adjustments shall be made if any error is discovered. If Company does not exercise its audit right within the Audit Period, Company shall be deemed to have waived its audit right. Furthermore, any audit issues not raised to Contractor in writing by the end of the Audit Period shall be deemed to have been waived by Company. Contractor shall retain all its records relating to the Services performed hereunder for no less than twelve (12) months after the termination of

EXHIBIT I                                           -186-

the Transition Period and if audit issues are timely raised, shall retain said records until all such issues are resolved by agreement of the Parties or under Article 17 of the PSA.

14. INDEPENDENT CONTRACTOR: Contractor shall perform the Services under the general direction of Company, but in all events Contractor shall be an independent contractor in accordance with the specifications herein set out. Company shall look to Contractor for results only and shall have no right at any time to direct or supervise Contractor or its servants or employees as to the manner, means, and method in which the Services are performed. The detailed manner and method of performing the Services shall be under the control of Contractor, subject to the terms hereof. Neither Contractor nor anyone employed by Contractor shall be deemed to be an employee, agent, servant, or representative of Company. Contractor shall be responsible for the payment of federal income tax, social security tax, workers' compensation insurance, unemployment tax, and other similar payments, if any, relating to Contractor's business and employees, and Company shall not withhold any amounts for such purposes from payments made to Contractor. As an independent contractor, neither Contractor nor anyone employed by Contractor will be eligible for the benefits provided to regular employees of Company, including, but not limited to health and disability insurance. Contractor's engagement as an independent contractor by Company will terminate upon the termination of this Agreement as provided for herein.

15. MAINTENANCE OF SOFTWARE APPLICATIONS: During the Transition Period, Contractor shall maintain all of its existing software and technological licenses and applications relating to the Interests, provided it has the right to do so under its license agreements, unless, prior to the expiration of the Transition Period, (a) Company determines that such licenses or applications are no longer necessary in connection with operations on the Interests and Property, (b) such licenses and applications are transferred to Company, or (c) Company has obtained replacement licenses or applications with respect thereto.

16. RELATIONSHIP MANAGEMENT:

  (A) As soon as practical after execution of this Agreement, each Party shall appoint a representative for the purposes of being the primary contact for coordinating the Services under this Agreement ("Transition Manager"). Each Party may from time to time replace its Transition Manager by giving written notice to the other Party.

  (B) Each Party shall ensure that its Transition Manager is kept informed of all relevant information, and is involved to a high degree, concerning the performance by it of its obligations under this Agreement.

  (C) Upon Company's request and with at least three (3) days' notice, the Parties shall hold weekly meetings in person or by phone. The Parties agree that their Transition Managers, or their designees, will participate in the weekly meetings, as reasonably practical.

  (D) Contractor has identified the contacts on the attached Exhibit B for the various functions that may be necessary to complete the transfer of Services to Company. The functional contact will be the lead representative for the Contractor for the

EXHIBIT I                                        -187-

applicable function during the Transition Period. Upon request, Contractor will provide an updated version of Exhibit B to Company in writing if there are any modifications to the attached Exhibit B prior to the termination of this Agreement.

(E) Subject to the terms and conditions set forth in this Agreement, the Company and Contractor agree to use all reasonable efforts to take, or to cause to be taken, all actions, and to do, or to cause to be done, all things reasonably necessary, proper or advisable under applicable laws to consummate and make effective the transition of operations of the Interests and Properties from Contractor to Company. At any time after the execution of this Agreement, if further action is deemed necessary or desirable to carry out the transition of operations, the appropriate representatives of the Company and Contractor will take or cause to be taken all such reasonably necessary action.

17. <u>HEADINGS AND TITLES:</u> The headings and titles in this Agreement are for guidance and convenience of reference only and do not limit or otherwise affect or interpret the terms or provisions of this Agreement.

18. <u>DEFINITIONS:</u> Unless otherwise defined in this Agreement, capitalized terms used in this Agreement have the meanings given to them in the PSA.

19. <u>SEVERABILITY:</u> If a court of competent jurisdiction finds any part of this Agreement to be void, invalid, or otherwise unenforceable, then Contractor may decide whether to enforce this Agreement without the void, invalid, or unenforceable parts or to terminate this Agreement.

20. <u>COUNTERPARTS:</u> This Agreement may be executed in multiple counterparts, all of which together will be considered one instrument.

21. <u>CONFLICTS:</u> If the text of this Agreement conflicts with the terms of any exhibit to this Agreement, then the text of this Agreement will control. If any of the terms of this Agreement conflict with the terms of the PSA, then the terms of the PSA shall control except to the extent expressly provided to the contrary.

**EXHIBIT I** -188-

IN WITNESS WHEREOF, the parties agree to the foregoing on the day and year set forth above.

 

**("Company")**

By: _____

Name:

Title:

 

**("Contractor")**

By: _____

Name:

Title:

**EXHIBIT I** -189-

**Exhibit A**
*Attached to and made a part of that certain*
*TRANSITION SERVICES AGREEMENT*
*Between*
+++++
*and*
+++++

**Settlement Statement**
**Due to Company from Contractor**

| | |
|---|---|
| Transition Period Revenues (Net Company share) | $XXX |
| | |
| Transition Period Receipts | <u>XXX</u> |
|     Operations | |
| | |
|        Total Receipts | $XXX |

Less:

| | |
|---|---|
| Transition Period Expenditures (Net Company share) | $XXX |
| | |
|     Direct Operating Costs | XXX |
| | |
|     Capital Expenditures | XXX |
| | |
|     Rentals, Rights-of-way, Leasehold Minimum, or Advanced Payments | XXX |
| | |
|     Overhead | XXX |
| | |
| Other Expenditures Attributable to Transition Period | <u>XXX</u> |
| | |
|        Total Expenditures | $<u>XXX</u> |
| | |
|         Settlement | $<u>XXX</u> |

**Exhibit B**
*Attached to and made a part of that certain*
*TRANSITION SERVICES AGREEMENT*
*Between*
+++++
*AND*
+++++


**Relationship Management**
**Company and Contractor Representatives**

[To be Inserted]

EXHIBIT I -191-

**EXHIBIT J**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**PURCHASE AND SALE AGREEMENT,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.,**
**HHE ENERGY COMPANY, XH, LLC, AS SELLER,**
**AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER**

PENDING LITIGATION

| Case Name | Date Commenced | Court | Nature of Action |
|---|---|---|---|
| Cory **Romero** v. Hunt Oil Company and/or Hunt Oil Company of Louisiana, Inc. and/or Hunt Petroleum (AEC), Inc. and/or Hunt Petroleum Corporation and/or Hunt Petroleum of Texas, Inc. and/or Louisiana-Hunt Petroleum Corporation | 6/30/2006 | United States District Court Western District of Louisiana Lafayette-Opelousas Division | Plaintiff, employee of contractor Island Operators Company, alleges he was aboard Hunt's Ship Shoal Block 80A platform attempting to fix the compressor when he slipped and twisted his left knee on 7/2/2005. |
| John **Aubrey** v. Hunt Petroleum Corporation and Rodi Marine, LLC | 9/17/2008 | In the 15th Judicial District Court for the Parish of Lafayette, Louisiana | Plaintiff alleges that he injured his back on 2/29/2008 while working as an employee of Fugro Chance, Inc., a contractor for Defendant, Hunt Petroleum Company on the M/V Miss Peggy Ann, in route to drilling rig ENSCO 83 on location at EC 178 No. 1. |
| Rennie Nathaniel **Smith** v. XTO Offshore, Inc. AKA and D/B/A XTO Energy Inc., Dishman & Bennett Specialty Company, Inc. and Wright's Well Control Services, LLC | 6/3/2011 | In the 32nd Judicial District Court of Terrebonne Parish, Louisiana | Plaintiff alleges he worked for Wright's Well Control Services, LLC as an operator on West Cameron #507B platform, and that on 6/9/2010 tongs swung him toward him and hit him, causing him to sustain personal injuries. |

| Case Name | Date Commenced | Court | Nature of Action |
|---|---|---|---|
| Oscar Felipe Maldonado **Patlain** v. Apache Corporation, Rowan Companies, Inc., M&M Industrial Services, Inc., and Blue Water Industrial Technologies LP | | In the 136th Judicial District Court of Jefferson County, Texas | Plaintiff, an employee of M&M Industrial Services, Inc., a subcontractor of Rowan Companies, Inc., allegedly suffered injuries as a result of a fire that took place during operations being conducted on the Rowan Juneau Drilling Rig at ship Shoal 216C, offshore Louisiana, on or about 9/25/2008. |
| Corey C. **Denney** v. Y&S Marine, Inc. and XTO Energy Inc. | 3/10/2011 | United States District Court Eastern District of Louisiana | Plaintiff, a seaman and employee of Y&S Marine, Inc, served aboard the *M/V Sun Trae*. Plaintiff alleges he was injured on July 29, 2010 when was assisting in unloading cargo, via crane, while the *Sun Trae* was attached to XTO's Main Pass 116B platform located off Louisiana on the OCS. |

## EXHIBIT K
## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## PURCHASE AND SALE AGREEMENT,
## DATED EFFECTIVE AS OF AUGUST 1, 2011,
## BETWEEN XTO OFFSHORE INC.,
## HHE ENERGY COMPANY, XH, LLC, AS SELLER,
## AND DYNAMIC OFFSHORE RESOURCES, LLC, AS BUYER

### PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

That, Dynamic Offshore Resources, LLC, with its principal office at 1301 McKinney, Suite 900, Houston, Texas 77010, (hereinafter called the "Principal") and RLI Insurance Company, with its principal office at _____ (hereinafter called the "Surety"), are held and firmly bound unto XTO Offshore Inc., HHE Energy Company, and XH, LLC, all with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 (hereinafter collectively called the "Obligee"), in the Penal Sum of Thirty Five Million and $^{NO}/_{100}$ Dollars ($35,000,000.00) lawful money of the United States of America for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated effective as of August 1, 2011 (hereinafter called the "Agreement"), which Agreement is by reference made a part hereof and which provides for the sale and assignment from Obligee to Principal of the interests of Obligee in certain oil and gas leases and properties, including the oil and gas leases described on Annex 1 to this Performance Bond ("Bond"), all as more particularly described in the Agreement (collectively, the "Leases" and each individually, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells, platforms, facilities, equipment and pipelines existing on the Leases as of the date of the Agreement, including the wells described on Annex 2 (collectively, the "Wells" and individually, the "Well") (the Leases, Wells and such platforms, facilities, equipment and pipelines, being collectively referred to as the "Properties" and each as "Property"); and

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of any of the Leases, whether by operation of law or otherwise, this Bond shall remain in full force and effect until Principal has presented satisfactory evidence to Obligee, as set forth below, that all P&A Obligations (as such term is defined below) have been performed and discharged; and

WHEREAS, as used in this Bond, the term "P&A Obligations" means all obligations and liabilities of Principal to abandon, restore and remediate the Properties, whether arising before or after August 1, 2011 (the "Effective Time"), including obligations, as applicable to the Properties, to: (a) obtain plugging exceptions in the operator's name for each Well with a current plugging exception, or permanently plugging and abandoning a Well; (b) plug, abandon,

EXHIBIT K                                    -194-

and if necessary, re-abandon each Well; (c) remove all equipment and facilities, including flowlines, pipelines and platforms; (d) close all pits; and (e) restore and remediate the surface, subsurface and offshore sites associated with the Properties; and

WHEREAS, Principal has agreed to deliver to Obligee this Bond, executed by Principal and Surety, at the Closing as defined and contemplated by the Agreement; and

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, Surety represents that it has duly executed a power of attorney, appointing the hereafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising, out of or founded upon this Bond or any liability hereunder, and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder;

NOW THEREFORE, Principal and Surety agree as follows:

Surety hereby guarantees the full and faithful performance by Principal of, and compliance by Principal with, the P&A Obligations in accordance with all current and future requirements of applicable federal and state law or any agency, authority or body having, jurisdiction or authority over the Properties or any operations thereon, and in accordance with the Leases and the Agreement.

PROVIDED, HOWEVER, whenever the Principal shall present to Obligee satisfactory evidence that all of the P&A Obligations have been performed (and as set forth in the Agreement, such satisfactory evidence shall comprise executed forms or other written documentation as may be required by any governmental authority under applicable law to reflect completion of the P&A Obligations, including, without limitation, forms and documentation relating to plugging and abandonment activities, decommissioning activities, site clearance activities and pipeline abandonment or removal activities and completion of remedial activities), then this Bond shall be null and void; otherwise, it shall remain in full force and effect in the amount as provided.

In the event Principal fails to carry out its obligations to bear the cost and expense to perform the P&A Obligations for a Property or certain identified Properties, and Obligee has presented to Surety a written notice that Principal is in default of its obligation under the terms of the Agreement, and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to Principal and Surety, Surety shall, within fifteen (15) days of such presentations:  1) Pay to Obligee an amount equal to the actual costs for performing the P&A Obligations with respect to the Property or identified Properties in an amount up to, but not exceeding, the maximum penal amount of this obligation and the penal amount of this

obligation shall be further reduced by the amount of this obligation; or 2) Commence the necessary operations to perform the P&A Obligations with respect to the Property or identified Properties as set forth in the Agreement.

In the event Obligee commences or completes the P&A Obligations with respect to a Property or identified Properties upon Principal's default under the terms of the Agreement, Surety's obligations shall remain the same as set forth in this Bond regarding payment to Obligee as set forth above.

If Surety shall decide, upon default by Principal, to commence, or cause to be commenced, the performance of the aforementioned P&A Obligations, said performance shall continue until such time as the P&A Obligations have been met, thereby reducing the penal amount as set forth herein. **Surety agrees to indemnify, defend, and hold harmless Obligee, its directors, and agents from all claims, demands, and causes of action for personal injury, death, property and/or environmental damage resulting in whole or in part from Surety's or Surety's contractors' negligence, whether joint (including with Obligee or Principal) active, passive, concurrent or sole, or willful misconduct with respect to the performance of the P&A Obligations, if and only if Surety elects, as stated herein, to commence the aforementioned P&A Obligations in lieu of payment to Obligee.**

Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits attached thereto shall release Principal and Surety or either of them from their liability under this Bond. Notice to Surety of any such amendment or supplement is hereby waived, except to the extent that is herein provided.

No forbearance of Obligee, to Principal, shall release Principal and Surety from their liability under this Bond except where Obligee agrees to reduce the penal amount as provided above. No assignment of the Agreement or of the Property by the Principal, its successors and assigns, and no assignment of the Agreement by operation of law or consent of Obligee or otherwise shall in any degree relieve Principal and Surety of their obligations under this Bond except as provided herein. No delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in case of default on the part of Principal or Surety shall in any degree relieve Principal and Surety of their obligations under this Bond except as herein stated.

No assignment, in whole or in part, of the Agreement or of the Properties by Principal, its successors and assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal shall in any degree relieve Principal and Surety or either of their obligations under this Bond.

HOWEVER, if upon assignment, in whole or in part, of the Agreement or the Property or any Well and facilities thereon by Principal, its successors or assigns, Principal may cause its assignee to post security, in the form of a bond or other acceptable security from Surety, or a surety acceptable to Obligee, covering the same obligations as stated herein as to the assigned

interest ("Transferee Bond"). The penal sum provided for in the Transferee Bond with respect to such assigned Properties shall be in an amount equal to the estimated cost to perform the P&A Obligations with respect to the assigned Property, which cost estimate shall be subject to Obligee's approval.

No right or action shall accrue on this Bond to or for the use of any person or corporation other than Principal, Obligee, their respective successors and assigns.

NOW THEREFORE, Principal and Obligee agree that any dispute, claim, or controversy concerning the interpretation of this Bond or the Agreement or any party's compliance with the terms of this Bond shall be resolved in accordance with the terms, conditions, and procedures in Article 17 of the Agreement and each agrees not to prosecute or commence any suit or action against the other(s) relating to any such matters.

This Bond is subject to the provisions of Section 8.04(f) of the Agreement including, without limitation, the redetermination provisions that may serve to adjust the penal sum provided for herein and the ability of Obligee to draw on the Bond, in whole or in part, as expressly provided for therein. Any such redetermination shall not include estimated costs with respect to P&A Obligations for which a Transferee Bond has been obtained and approved by Obligee. Obligee will accept such Transferee Bond as financial security for the assigned Property. Further, as provided in Section 8.04(f)(1) of the Agreement, when it is determined that the estimated costs of the total remaining liabilities of Principal with respect to the P&A Obligations is less than $3,000,000.00, then this Bond shall be null and void and Obligee and Principal shall execute such documentation as is reasonably necessary in order to release and relinquish the Bond, which documentation will b executed promptly but in any event not less than sixty (60) days of being presented for execution. Further, Obligee agrees that in the event either XTO Offshore Inc., HHE Energy Company or XH, LLC terminates its corporate existence, then it will appoint one of the remaining seller entities or, at its sole option, its parent company, as agent to act on its behalf with respect to the obligations stated in Section 8.04(f) of the Agreement.

In the event of a conflict or inconsistency between the terms and provisions of this Bond and those set forth in the Agreement, as between Principal and Obligee, the terms and provisions of the Agreement shall control.

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on _____, 2011, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

PRINCIPAL: DYNAMIC OFFSHORE RESOURCES, LLC

WITNESSES:

By: _____

Name: _____

Title: _____

Date: _____

SURETY: RLI INSURANCE COMPANY

WITNESSES:

_____

_____

By: _____

Name: _____

Title: _____

Date: _____

OBLIGEE: XTO OFFSHORE INC.

WITNESSES:

_____

_____

By: _____

Name: _____

Title: _____

Date: _____

OBLIGEE: HHE ENERGY COMPANY

WITNESSES:

_____

_____

By: _____

Name: _____

Title: _____

Date: _____

OBLIGEE: XH, LLC

WITNESSES:

_____

_____

By: _____

Name: _____

Title: _____

Date: _____

# Exhibit B

## ASSIGNMENT AND BILL OF SALE

This Assignment and Bill of Sale ("Assignment") is effective as of August 1, 2011, at 7:00 a.m. Central Time ("Effective Time"), and is from XTO OFFSHORE INC., a Delaware corporation with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 ("XTO Offshore"), to DYNAMIC OFFSHORE RESOURCES, LLC, a Delaware limited liability company, with an address of 1301 McKinney, Suite 900, Houston, Texas 77010 ("Assignee"). XTO Offshore and Assignee may each be referred to hereafter as a "Party", or collectively referred to as the "Parties".

## ARTICLE 1.

1.01.　　__Assignment__. For $10 and other good and valuable consideration, the receipt and sufficiency of which XTO Offshore acknowledges, XTO Offshore bargains, sells, assigns, and conveys to Assignee and its successors and assigns, all of XTO Offshore's right, title, and interest in and to the following real and personal properties (collectively, "Properties"), subject to the terms of this Assignment, including its exhibits, and all applicable instruments of record in the county/counties/parish/parishes where the Properties are located:

> (a)　　The oil and gas leasehold estates and other interests, __*insofar but only insofar*__ as set out on Exhibit A and Exhibit A-1, together with XTO Offshore's interest in each well located on the leases, units and land described on Exhibit A and Exhibit A-1, including, without limitation, the wells described on Exhibit A-2 (collectively, "Interests");

XTO OFFSHORE EXCEPTS FROM THIS ASSIGNMENT THE EXCLUSIONS PROVIDED IN SECTION 1.02 OF THIS ASSIGNMENT AND MAKES SUCH ASSIGNMENT SUBJECT TO ANY CONVEYANCE OR AGREEMENT, WHETHER RECORDED OR NOT, THAT PERTAINS TO THE INTERESTS AND WHICH WAS EXECUTED OR EFFECTIVE BEFORE THE EXECUTION OF THIS ASSIGNMENT.

> (b)　　All contracts affecting the Interests, to the extent each is assignable, including agreements for the sale or purchase of oil, gas, and other hydrocarbons; processing agreements; division orders; unit agreements; operating agreements; and other contracts and agreements arising out of, connected with, or attributable to production from the Interests, including the items listed on Exhibit A-1;

XTO OFFSHORE EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL RIGHT, TITLE, AND INTEREST IN THESE CONTRACTS INSOFAR AS THEY PERTAIN TO ANY INTEREST NOT ASSIGNED IN THIS ASSIGNMENT.

> (c)　　All personal property, including material, equipment, pipelines, platforms and facilities situated in and on the Properties and used solely in connection with the use or operation of the Interests for the production, treating, storing, transporting, and marketing of oil, gas, and other

hydrocarbons from the Interests, including the items listed on Exhibit B-2 and Exhibit B-3;

**XTO OFFSHORE EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL PERSONAL PROPERTY, WELLS, FIXTURES, PIPELINES, AND EQUIPMENT USED IN XTO OFFSHORE'S OPERATION OF ANY LEASE, WELL, OR MINERAL INTEREST NOT ASSIGNED IN THIS ASSIGNMENT.**

    (d)    All easements, permits, licenses, surface and subsurface leases, rights-of-way, servitudes, and other surface and subsurface rights affecting the Interests, to the extent each is assignable, including the items listed on Exhibit B and Exhibit B-1; and

    (e)    Copies of the data and records relating to the Properties and Interests that have been or will be delivered by XTO Offshore to Assignee as provided for in the Purchase and Sale Agreement defined hereafter ("Documents").

1.02.    <u>Exclusions</u>.  The following are excluded from this Assignment:

    (a)    reservations, exceptions and exclusions listed in Exhibits A, B and B-1;

    (b)    pipelines, fixtures, equipment, and interests owned by third parties such as lessors, purchasers, or transporters of Oil or gas;

    (c)    computer equipment (including Rosemont transmitters), telecommunications equipment, vehicles, boats, tools, pulling machines, and other equipment and material temporarily located on the Property or expressly excluded from the sale;

    (d)    items specifically excluded in written information or correspondence provided to Assignee before the Execution Date;

    (e)    any gas processing plant not listed on Exhibit A and Exhibit A-1;

    (f)    personal property, fixtures, equipment, pipelines, facilities, and buildings located on the Property, but currently in use in connection with the ownership or operation of other property not included in the Interests;

    (g)    Unless otherwise described on Exhibit A, if XTO Offshore is a party to a joint operating agreement that affects an Interest, this Agreement is limited as to that Interest to the depths subject to the joint operating agreement (e.g., total depth, total depth plus 100 feet, base of formation penetrated by initial test well), but excludes depths previously conveyed and all depths not subject to a joint operating agreement; and

    (h)    If XTO Offshore owns unleased mineral interests purportedly within the Interests, those mineral interests are not included in the term "Interests" and will not be conveyed to XTO Offshore.

(i)    XTO Offshore and its affiliates reserve and exclude from this Assignment all rights under that certain Lease Purchase Agreement dated effective January 22, 2002 by and between EEX Corporation ("EEX") and Aviara Energy Corporation ("Aviara"), as amended April 1, 2005, by and between Newfield Exploration Gulf Coast, Inc. and Hunt Petroleum (AEC), Inc., as such agreements pertain to all depths from 17,000 feet down to 100,000 feet subsea and expressly reserve and exclude from this Assignment the five percent of eight-eights (5% of 8/8ths) overriding royalty interest reserved by Aviara in that certain Assignment of Operating Rights dated effective January 22, 2002 by and between Aviara and EEX.

(j)    Responsibility and liability for the proper payment of royalties to any governmental entity with respect to production attributable to the Interests prior to the Effective Time in the event prior payments to such governmental entity were improperly calculated.

(k)    The Reserved Overriding Royalty Interest as defined in Section 1.08.

1.03.    <u>Restrictions on Use</u>.  Where any of the Interests include a fee simple interest in real property that has been used for oil, gas, or other mineral operations, the following uses of the affected land, or any portion thereof, are expressly prohibited and forbidden:

(a)    any hotel use;

(b)    any purpose that would constitute a "Permitted Use" under any of the residential zones, districts, or classifications set forth in any applicable municipal, county/parish or state zoning laws in effect at the Effective Time,

(c)    any other residential use;

(d)    any health care, clinic, hospital or other medical facility;

(e)    any playground, recreational park, day nursery, day-care center, child care center, nursing home, house of worship, or school;

(f)    any agricultural use;

(g)    construction or installation of any basements; or

(h)    any water wells for irrigation or drinking purposes.

1.04.    <u>Documents</u>.  If originals or the last-remaining copies of the Documents have been provided to Assignee, XTO Offshore may have access to them at reasonable times and upon reasonable notice during regular business hours for as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or a longer period if required by law or governmental regulation).  XTO Offshore may, during this period and at its expense, make copies of the Documents pursuant to a reasonable request.

Without limiting the generality of the two preceding sentences, for a period as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or for a longer period if required by law or governmental regulation), Assignee may not destroy or give up possession of any original or last-remaining copy of the Documents without first offering XTO Offshore the opportunity, at XTO Offshore's expense, to obtain the original or a copy. After this period expires, Assignee must offer to deliver the Documents (or copies) to XTO Offshore, at XTO Offshore's expense, before giving up possession or destroying them.

1.05. <u>Reservations</u>. To the extent that XTO Offshore has reserved or continues to own an interest (excluding overriding-royalty interests but including, if any, mineral-fee, leasehold interests, deep rights or facilities, equipment, or pipelines) after the Effective Time for which XTO Offshore requires access across the land associated with the Interests in order to exercise its rights, XTO Offshore reserves concurrent interests in all applicable easements, rights-of-way, contracts, and other rights relating to the reserved interests and necessary as reasonably required for exploring, drilling, producing, storing, or marketing oil, gas, and other hydrocarbons from the respective zones or interests of the Parties, including rights to lay pipelines, water lines, and power lines; dig pits; erect structures; and perform any other act reasonably necessary to XTO Offshore's interests. Additionally, XTO Offshore reserves and retains a preferential right to purchase all Oil produced and saved from the Interests, pursuant to and in accordance with the terms and provisions of the Purchase and Sale Agreement defined hereafter. The term "Oil" as used herein means crude oil, distillate, drip gasoline, condensate, and other liquid hydrocarbons.

1.06. <u>Surrender or Abandonment of Interests</u>. If Assignee decides to surrender or abandon any of the Interests after execution of this Assignment, Assignee must give XTO Offshore written notice of its intent at least 45 days before surrender or abandonment if XTO Offshore:

    (a)    has retained an interest in such Interests;

    (b)    has other interests for which XTO Offshore requires access across such Interests or Property in order to exercise its rights; or

    (c)    has other interests that are held by production from such Interests. XTO Offshore will have 30 days after receipt of Assignee's notice to notify Assignee that it elects to require Assignee to reassign all or any part of such Interests. Reassignment will be in the manner described in Section 1.07.

1.07. <u>Reassignment</u>. For reassignment of any Interest under this Assignment, Assignee will execute and deliver to XTO Offshore a reassignment by special warranty, in a form satisfactory to XTO Offshore and sufficient to place XTO Offshore in the same position it occupied before the assignment to Assignee. Assignee's release and discharge of XTO Offshore and its Associated Parties, its covenant not to sue XTO Offshore or its Associated Parties, and its obligations to indemnify, defend, and hold XTO Offshore and its Associated Parties harmless

-4-

will apply to Interests that are reassigned for the period of Assignee's ownership, and the reassignment instrument will restate Assignee's obligations.

1.08.  Reserved Overriding Royalty.  XTO Offshore reserves from the leasehold interest applicable to each of the oil and gas leases described on Exhibit A (collectively, the "Leases", individually a "Lease"), an overriding royalty interest interest equal to five percent of eight-eighths (5% of 8/8) as to production from any New Wells, as defined hereafter (the "Overriding Royalty Interest").  "New Wells", for the purposes of this Assignment is defined as any wells drilled on the Leases from and after the date of execution of this Assignment (the "Execution Date"), together with any sidetrack or deepening after the Execution Date of an existing well on the Leases, to the extent and only to the extent that said sidetrack bottom hole is located 1,000 feet or greater from the bottom hole location of such existing wells; provided, however, such 1,000 foot restriction does not apply to the sidetracks identified in that certain Letter between XTO Offshore and Assignee, dated July 29, 2011.  New Wells shall not include any recompletions, workovers, or mechanical bypasses of an existing well.  The Overriding Royalty Interest shall be paid or delivered by Assignee to XTO Offshore in accordance with the following terms and conditions:

(a)  On oil, delivery of such oil shall be made free of all costs and expenses in developing and operating the Interests, free of all costs of production and unencumbered in any way to XTO Offshore's credit into the pipelines or tanks to which the applicable well or wells may be connected, or otherwise as XTO Offshore may from time to time direct.  Should XTO Offshore elect not to take its Overriding Royalty Interest on oil in kind, then XTO Offshore's part of such oil shall be paid based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser of such oil at the applicable well or wells, free of all costs and expenses in of developing and operating the Interests, free of all costs of production and unencumbered in any way.

(b)  On all gas, including casinghead gas or other gaseous substances and liquid constituents of said gas, produced from and sold (on or off the Interests) or used off the Interests, or for the extraction of gasoline or other products therefrom, the Overriding Royalty Interest shall be based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser at the well or wells of gas so produced, sold or utilized, free of all costs of developing and operating the Interests, free of all costs of production.

Payment by Assignee of the Overriding Royalty Interest must be made from the Execution Date and at all times thereafter on the basis of one hundred percent (100%) of the New Well's production (proportionately reduced as hereafter provided), and such payment must be made regardless of (a) whether Assignee is or is not banking or storing gas, whether pursuant to the provisions of an agreement so permitting, or otherwise; (b) whether Assignee is or is not selling all or any part of its share of the total production; and (c) the identity of the purchaser or purchasers of such gas if Assignee should be selling all or any part of the total gas produced.

The Overriding Royalty Interest shall be delivered to XTO Offshore free of all cost and expense of developing and operating the Leases and free and clear of all taxes except gross production, severance taxes, and ad valorem taxes applicable thereto; provided that, the Overriding Royalty Interest will be subject to and bear a proportionate share of all reasonable costs and expenses of a non-affiliated third party incurred for the transportation, compression, dehydration and treating of the said gas and condensate in the preparation for marketing of such production. Such payments shall be made on or before the sixtieth (60th) day following the month of the production. If payment is not made within the time prescribed, the unpaid amount will bear interest at the rate of one percent (1%) for each month or fraction of a month, by which payment is delayed, or the maximum lawful rate, whichever is less. Assignee agrees to send all division orders covering the Overriding Royalty Interest reserved by to XTO Offshore at the following address:

> XTO Energy Inc.
> P.O. Box 730586
> Dallas, Texas 75373-0586

If the Leases cover less than a full interest in the land covered thereby or if the interest assigned hereunder in said Leases is less than a full interest, then the Overriding Royalty Interest herein reserved shall be reduced in the proportion that the interest assigned to Assignee herein bears to the full interest in the land covered or bears to the full interest in the Leases assigned hereunder; provided, however, that the overriding royalties herein reserved are exclusive of and in addition to any royalties, overriding royalties or payments out of production affecting the Leases as of the Effective Time. It is expressly agreed that operations, if any, on the Leases and the extension and duration thereof, as well as the preservation of the Leases by rental payments or otherwise, shall be solely at the will and discretion of Assignee or any successor owner of the working interest in the Leases. The Overriding Royalty Interest hereby reserved is subject to the rights conferred on the lessees (now Assignee) by said Leases to pool or unitize the lands covered thereby; and neither the joinder nor consent by XTO Offshore shall be required in connection with any such pooling or unitization. Where oil and/or gas is produced from any unit so formed, XTO Offshore shall receive on production from such unit only such portion of the overriding royalty stipulated herein, as the amount of surface acreage of the land affected by such overriding royalty and placed in said unit bears to the total surface acreage included in the unit, unless some other formula for appointment of production is adopted for the unit and in such case the formula shall be used.

XTO Offshore upon notice in writing to Assignee, shall have the right to audit Assignee's accounts and records relating to the Overriding Royalty Interest reserved herein and any other records related to the determination of the amounts due XTO Offshore for any calendar year within the twenty-four (24) month period following the end of such calendar year.

The Overriding Royalty Interest is expressly subject to the terms and provisions of any of the Related Agreements, to the extent and only to the extent that such terms and provisions contractually apply to and prohibit the establishment of an overriding royalty interest affecting any of the Leases. If pursuant to the terms of any Related Agreement all or a portion of Assignee's interest in a Lease, or all or a portion of its interest in the production therefrom, is forfeited or assigned to one or more other working interest owners, either permanently or for a

stipulated period, because Assignee fails to participate in any operation or operations, then to the extent that such forfeited or assigned interest is subject to and burdened by the Overriding Royalty Interest, the working interest so assigned or forfeited by Assignee shall be free and clear of such Overriding Royalty Interest for the period of such forfeiture or assignment of overriding royalty interests. The Overriding Royalty Interest will become effective again when the interest is reassigned or reverts back to Assignee, and Assignee shall pay such Overriding Royalty Interest as provided in this Section 1.08. Further, to the extent any Related Agreement establishes security rights in favor of the parties thereto, the Overriding Royalty Interest conveyed herein shall be subordinated to such security rights. For the purposes of this Assignment, "Related Agreements" shall mean all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements concerning or pertaining to the Interests, to the extent that they are binding on XTO Offshore or its successors or assigns.

It is understood and agreed that the Overriding Royalty Interests reserved herein, will be a permanent burden on the Leases subject to the provisions of this Section 1.08, and will continue in effect as to each Lease for so long as each Lease remains in effect. In addition in the event Assignee secures a renewal or extension for any such Leases, covering all or any part of the land previously covered thereby, then the interests reserved herein will apply to such renewed or extended Lease. A "renewal" or "extension" of a Lease as those terms are used therein shall mean any Lease or Leases covering all or a part of the land covered by the Leases that is executed by Assignee within twelve (12) months after termination of any Lease, or the next ensuing Federal or state lease sale pertaining to all or any part of the land previously covered by a Lease, whichever may come first.

Notwithstanding anything to the contrary set forth in this Assignment, the Overriding Royalty Interest shall not apply to any production attributable to Block 188, Ship Shoal Area, OCS Leasing Map, Louisiana Map No. 5, INSOFAR AND ONLY INSOFAR AS to those depths from 17,000 feet subsea down to 100,000 feet subsea, currently affected by that certain federal offshore lease bearing serial number OCS-G 22712, dated May 1, 2001, granted by the United States of America, as Lessor, in favor of Aviara Energy Corporation, as Lessee, that being the same interest referenced in Section 1.02(i) above.

1.09. <u>Governmental Transfers.</u> Where separate transfers of any of the Properties have been, or will be, executed for filing with and approval by applicable governmental authorities, any such separate transfer (a) shall not constitute an additional assignment or conveyance of the affected Properties, (b) shall not constitute an additional reservation of the Overriding Royalty Interest provided for in this Assignment and (c) shall not modify any of the terms, covenants and conditions, or limitations on warranties, set forth in this Assignment, and are not intended to create and shall not create any representations, warranties or additional covenants of or by either of the parties to this Assignment.

## ARTICLE 2.

Ad valorem taxes assessed against the Properties for the year of the Effective Time are apportioned between XTO Offshore and Assignee as of the Effective Time.

-7-

## ARTICLE 3.

Assignee will comply with all rules, regulations, statutes, and laws applicable to Assignee's ownership or operation of the Properties. Except to the extent specifically excepted or reserved by XTO Offshore in this Assignment or in the Purchase and Sale Agreement (as defined hereafter), Assignee accepts this Assignment and assumes all XTO Offshore's obligations and liabilities under all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements (including compliance with express and implied covenants and payment of costs, rentals, shut-in-payments, minimum royalties, and production royalties), to the extent that these obligations and liabilities concern or pertain to the Properties and are binding on XTO Offshore or its successors or assigns. Assignee's obligations under this article apply to all applicable instruments, whether recorded or not.

## ARTICLE 4.

Assignee acknowledges that the Interests and Properties have been used for exploration, development, and production of oil and gas and that there may be petroleum, produced water, wastes, or other materials located on or under the Properties or associated with the Interests. Equipment and sites included in the Interests or Properties may contain asbestos, hazardous substances, or naturally occurring radioactive material ("NORM"). NORM may affix or attach itself to the inside of wells, materials, and equipment as scale, or in other forms; the wells, materials, and equipment located on the Properties or included in the Interests may contain NORM and other wastes or hazardous substances; and NORM-containing material and other wastes or hazardous substances may have been buried, come in contact with the soil, or otherwise been disposed of on the Properties. Special procedures may be required for the remediation, removal, transportation, or disposal of wastes, asbestos, hazardous substances, and NORM from the Interests and Properties.

Assignee will store, handle, transport, and dispose of or discharge all material, substances, and wastes from the Properties (including produced water, drilling fluids, NORM, and other wastes), whether present before or after the Effective Time, in accordance with applicable local, state, and federal laws and regulations. Assignee will keep records of the types, amounts, and location of materials, substances, and wastes that are stored, transported, handled, discharged, released, or disposed of onsite and offsite. When any lease terminates, an interest in which has been assigned under this Assignment, Assignee will take additional testing, assessment, closure, reporting, and remedial action with respect to the Properties as is necessary to satisfy all local, state, and federal requirements directed in effect at that time and necessary to restore the Properties.

## ARTICLE 5.

Assignee recognizes, and will either perform or assure that performance is accomplished properly and in accordance with applicable law and the obligations and liabilities described in Article 3, all obligations to abandon, restore, and remediate the Properties and the Interests, whether arising before or after the Effective Time, including obligations, as applicable, to:

a) obtain plugging exceptions in the operator's name for each well located on the Properties (abandoned and unabandoned) with a current plugging exception or permanently plug and abandon each well;

b) plug, abandon, and if necessary, reabandon each well located on the Properties (abandoned and unabandoned);

c) remove all equipment and facilities, including flowlines, pipelines and platforms;

d) close all pits; and

e) restore the surface, subsurface, and offshore sites associated with the Interests and Properties.

Assignee will take all necessary steps to ensure that Assignee is recognized as the owner and, if applicable, operator of the Properties by all appropriate parties, including any regulatory commission, body or board with jurisdiction. If XTO Offshore is the principal on any financial assurance (including a bond) relating to the Properties, which financial assurance is required by any law, rule, or regulation, then Assignee will secure new financial assurance in the required amount and supply it to the regulatory body requiring the financial assurance, to the end that XTO Offshore's financial assurance is released and discharged.

Assignee will pay all costs and expenses associated with the obligations assumed under this article. XTO Offshore may require Assignee to maintain a performance bond in an amount, in a form, and from an institution acceptable to XTO Offshore, to guarantee Assignee's obligations, all as provided for in the Purchase and Sale Agreement as defined hereafter.

## ARTICLE 6.

XTO OFFSHORE MAKES NO WARRANTY OF ANY TYPE IN THIS ASSIGNMENT, WHETHER EXPRESS, STATUTORY, OR IMPLIED. ASSIGNEE HAS INSPECTED AND HAS SATISFIED ITSELF AS TO THE CONDITION OF THE PROPERTIES. THIS ASSIGNMENT IS MADE BY XTO OFFSHORE AND ACCEPTED BY ASSIGNEE ON AN "AS IS, WHERE IS" BASIS. XTO OFFSHORE DISCLAIMS ALL WARRANTIES, INCLUDING:

(a) AS TO THE FITNESS OR CONDITION OR MERCHANTABILITY OF THE MATERIALS, EQUIPMENT, OR FACILITIES CONVEYED;

(b) AS TO THE PHYSICAL, OPERATIONAL, OR ENVIRONMENTAL CONDITION OF THE PROPERTIES;

(c) AS TO THE OIL, GAS, AND OTHER HYDROCARBON OPERATIONS OF THE PROPERTIES COVERED BY THE TERMS AND CONDITIONS OF ANY LEASES OR OTHER AGREEMENTS THAT ARE A PART OF THE PROPERTIES;

(d) AS TO THE ISSUANCE, REISSUANCE, OR TRANSFER OF ANY PERMITS RELATING TO ANY OF THE PROPERTIES;

(e) AS TO ANY CONSENT OR APPROVAL REQUIRED UNDER ANY INSTRUMENT DESCRIBED IN ARTICLE III; AND

(f)     AS TO TITLE, EITHER EXPRESS, IMPLIED, OR STATUTORY.

## ARTICLE 7.

The terms "Claim" or "Claims" mean, collectively, claims, demands, causes of action, and lawsuits asserted or filed by any person, including an artificial or natural person, a local, state, or federal governmental entity; a person holding rights under any instrument described in Article 3; an Associated Party of XTO Offshore or Assignee; or a third party. The term "Liability" or "Liabilities" means, collectively, all damages (including consequential and punitive damages), including those for personal injury, death, or damage to personal or real property (both surface and subsurface) and costs for remediation, restoration, or clean up of contamination, whether the injury, death, or damage occurred or occurs on or off the Properties by migration, disposal, or otherwise; losses; fines; penalties; expenses; costs to remove or modify facilities on or under the Properties; plugging liabilities for all wells; attorneys' fees; court and other costs incurred in defending a Claim; liens; and judgments; in each instance, whether these damages and other costs are known or unknown, foreseeable or unforeseeable on the Effective Time. The term "Associated Parties" means successors, assigns, directors, officers, employees, agents, contractors, subcontractors, and affiliates.

Assignee releases and discharges XTO Offshore and its Associated Parties from each Claim and Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S RELEASE AND DISCHARGE OF XTO OFFSHORE AND ITS ASSOCIATED PARTIES INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO OFFSHORE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY, and this release and discharge are binding on Assignee and its successors and assigns The only exception to Assignee's release and discharge of XTO Offshore and its Associated Parties is that (a) Assignee does not release Claims against contractors and subcontractors for work regarding the Interests and Properties, and (b) Assignee does not release or discharge Claims that XTO Offshore breached the Purchase and Sale Agreement as defined hereafter.

Assignee covenants not to sue XTO Offshore or its Associated Parties with regard to any Claim or Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S COVENANT NOT TO SUE XTO OFFSHORE OR ITS ASSOCIATED PARTIES INCLUDES CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO OFFSHORE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLIES REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY, and this covenant is binding on Assignee and its successors and assigns. The only exception to Assignee's covenant not to sue XTO Offshore or its Associated Parties is that Assignee does not covenant not to sue contractors and subcontractors for work regarding the Interests and Properties.

-10-

Assignee will indemnify, defend, and hold XTO Offshore and its Associated Parties harmless from each Claim or Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S OBLIGATIONS TO INDEMNIFY, DEFEND, AND HOLD XTO OFFSHORE AND ITS ASSOCIATED PARTIES HARMLESS INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO OFFSHORE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY. The only exception to Assignee's obligations to indemnify, defend, and hold XTO Offshore and its Associated Parties harmless is (a) a judgment rendered or settlement reached in a lawsuit filed before the Effective Time, but only to the extent that the acts or omissions that gave rise to the cause of action are attributable to the conduct or operations or ownership of XTO Offshore or its Associated Parties before the Effective Time and (b) a Claim that XTO Offshore breached the Purchase and Sale Agreement defined hereafter. Assignee's obligations are binding on Assignee and its successors and assigns.

Assignee's duty to release, discharge, not to sue, indemnify, defend, and hold XTO Offshore and its Associated Parties harmless includes Claims or Liabilities arising in any manner from the physical or environmental condition of the Interests and Properties, including Claims or Liabilities under applicable laws and regulations now enacted or that may be enacted in the future, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time.

## ARTICLE 8.

Assignee represents that it has acquired the Properties for its own benefit and account and has not acquired the Properties with the intent of distributing fractional undivided interests in them or otherwise selling them in a manner that would be subject to regulation by federal or state securities laws. If Assignee sells, transfers, or otherwise disposes of the Properties or fractional undivided interests in them in the future, it will do so in compliance with applicable federal and state laws.

This Assignment is subject to the terms of the Purchase and Sale Agreement between XTO Offshore, among others, and Assignee concerning the Properties, dated effective as of August 1, 2011 (the "Purchase and Sale Agreement"). In the event of a conflict or inconsistency between the terms and provisions of this Assignment and those set forth in the Purchase and Sale Agreement, the terms and provisions in the Purchase and Sale Agreement shall control. The Purchase and Sale Agreement provides, in part, that the Parties will correct errors that may have been made in the conveyancing instruments; that XTO Offshore may require that all or a part of the Properties be reassigned under certain circumstances; and that disputes concerning the Properties or the transaction will be resolved by alternate dispute resolution, to the extent, if any, that Assignee has not released, discharged, or covenanted not to sue XTO Offshore or its Associated Parties.

XTO Offshore, upon notice in writing to Assignee, shall have the right to access the Assignee's offices, facilities, work sites, warehouses, books, records, correspondence,

instructions, plans, drawings, receipts, vouchers, financial accounts, data stored in computer files or microfiche and personnel to audit Assignee's accounts and records relating to the retained royalty interest, including any hedge agreements, facilities used for the measurement of production from the properties, for any calendar year within the twenty-four (24) month period following the end of such calendar year. The same audit rights are to extend to subcontractors. XTO Offshore shall maintain supporting data and accounting records consistent with generally accepted accounting principles, and the employees and agents of company shall have the right to reproduce and retain for the purpose of audit, any of these documents. XTO Offshore shall not be liable for any of Assignee's contractor's or subcontractor's costs resulting from an audit hereunder.

The provisions of this Assignment are severable. If a court of competent jurisdiction finds any part of this Assignment to be void, invalid, or otherwise unenforceable (except for the release, waiver, defense, and indemnity provisions), this holding will not affect other portions that can be given effect without the invalid or void portion.

All covenants and agreements in this Assignment (except Article 8) bind and inure to the benefit of the heirs, successors, and assigns of XTO Offshore and Assignee; are covenants running with the land; and are effective as stated, whether or not the covenants and agreements are memorialized in assignments and other conveyances executed and delivered by the Parties and their respective heirs, successors, and assigns from time to time.

Recitation of or reference to any agreement or other instrument in this Assignment, including its exhibits, does not operate to ratify, confirm, revise, or reinstate the agreement or instrument if it has previously lapsed or expired.

This Assignment and its performance will be construed in accordance with, and governed by, the internal laws of the State of Texas, without regard to the choice of law rules of any jurisdiction, including Texas.

The word includes and its syntactical variants mean "includes, but not limited to" and its corresponding syntactical variants. The rule of *ejusdem generis* may not be invoked to restrict or limit the scope of the general term or phrase followed or preceded by an enumeration of particular examples.

All exhibits referenced in and attached to this Assignment are incorporated into it.

[Intentionally Left Blank]

This instrument may be executed in counterparts, all of which together will be considered one instrument.

Executed in the presence of the undersigned witnesses on the dates indicated below, but effective as of the Effective Time.

**WITNESSES:**

Print or Type Name: James F. Wiggins

Print or Type Name: Clyde Vanderbrouk

**XTO Offshore Inc.**

BY: _____

NAME:   James L. Death

TITLE:   Attorney-in-Fact

DATE:   August 31, 2011

Print or Type Name: James F. Wiggins

Print or Type Name: Clyde Vanderbrouk

**XTO Offshore Inc.**

BY: _____

NAME:   Christopher N. Claeys

TITLE:   Attorney-in-Fact

DATE:   August 31, 2011

Print or Type Name: John H. Smith

Print or Type Name: Lambert M. Lapeirouse

**Dynamic Offshore Resources, LLC**

BY: _____

NAME:   G.M. McCarroll

TITLE:   President and Chief Executive Officer

DATE:   August 31, 2011

-13-

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §


This instrument was acknowledged before me on August 31, 2011, by James L. Death, Attorney-in-Fact, and Christopher N. Claeys, Attorney-in-Fact, of XTO Offshore Inc., a Delaware corporation, on behalf of said corporation.

_____
Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____

SIRA M PINEIRO
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
APRIL 6, 2012


STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §


This instrument was acknowledged before me on August 31, 2011, by G.M. McCarroll, President and Chief Executive Officer of Dynamic Offshore Resources, LLC, a Delaware limited liability company, on behalf of said limited liability company.

_____
Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____

ROBYN E ARNOLD
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MAY 14, 2014

**EXHIBIT A**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF INTERESTS**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 16240001-00 | **Breton Sound 25 - OCS-G 31442** <br> That portion of Block 25, Breton Sound Area, OCS Leasing Map, Louisiana Map No. 10B, seaward of the 1975 Supreme Court Decree Line specifically described in the OCS Block Diagram attached to the lease instrument | Record Title | 50.00000% | XTO Offshore Inc. |
| 1624-0002-00 | **Breton Sound 25 - LA SL 19718** <br> State Lease No. 19718, recorded in COB 1190, Page 672, File # 2008-00005015, Plaquemines Parish, Louisiana, being a portion of Tract 39932, Plaquemines Parish Louisiana, containing 425.25 acres, more or less. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3148-0001-00 | **Breton Sound 28 - LA SL 1999** <br> State Lease No. 1999, recorded in COB 156, Folio 184, Plaquemines Parish, Louisiana, insofar and only insofar as said lease covers and affects rights in the stratigraphic equivalent of the electric log depth intervals of 4,928' - 4,966', 5,358' - 5,360' and 5,505' - 5,640' as measured in the LLOG Exploration Offshore, Inc. SL 1999 #4 ST. | Leasehold | 100.00000% | XTO Offshore Inc. |
| 3372-0001-00 | **Breton Sound 44 - LA SL 16736** <br> State Lease No. 16736, recorded in COB 978, Folio 422, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |

EXHIBIT A

-1-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3372-0004-00 | **Breton Sound 45 - LA SL 16735**<br>State Lease No. 16735, recorded in COB 978, Folio 405, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3372-0006-00 | **Breton Sound 45 - LA SL 15683**<br>State Lease No. 15683, recorded in COB 893, Folio 225, Plaquemines Parish, Louisiana: (Pt. C) insofar and only insofar as said lease covers and effects interests below the depth of 10,000' subsea and less and except all rights to the UV3-B interval, being the stratigraphic equivalent of the interval encountered between the measured depths of 10,860' and 10,950' in the Phasor Induction/Sonic/GR log in the Century (Tenneco) SL 12806 # 1 Well located in Breton Sound Block 52, and limited to that area included within the geographical boundaries of the UV B RA VUA and the TEX W RA, comprising 232.41 acres, AND (Pt. D) that part of SL 15683 comprising 46.82 acres within the boundary of the UV B RA VUA from the depths between 10,596' MD and 10,822' MD | Leasehold | 50.00000%<br>37.50000% | Pt. C: XTO Offshore Inc.<br>Pt. D: XTO Offshore Inc. |
| 3470-0003-00 | **Breton Sound 45 - LA SL 17942**<br>State Lease 17942, recorded in COB 1061, Folio 29, Plaquemines Parish, Louisiana, insofar and only insofar as said lease covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well. | Leasehold | 37.50000% | XTO Offshore Inc. |
| 3470-0001-00 | **Breton Sound 45 - LA SL 17674**<br>State Lease No. 17674, recorded in COB 1038, Folio 330, Plaquemines Parish, Louisiana, insofar and only insofar as said lease covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well. | Leasehold | 37.50000% | XTO Offshore Inc. |

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3470-0002-00 | **Breton Sound 52 - LA SL 17675**<br>State Lease No. 17675, recorded in COB 1038, Folio 318, Plaquemines Parish, Louisiana, insofar and only insofar as said lease covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well. | Leasehold | 37.50000% | XTO Offshore Inc. |
| 3372-0005-00 | **Breton Sound 52 - LA SL 12806**<br>State Lease No. 12806, recorded in COB 670, Folio 207, Plaquemines Parish, Louisiana: (Pt. D) less and except all rights to the UV3-B interval defined as being the stratigraphic equivalent of the interval encountered between the measured depths of 10,860' and 10,950' in the Phasor Induction/Sonic/GR log in the Century (Tenneco) SL 12806 #1 Well located in Breton Sound Block 52, **AND** (Pt. E) insofar and only insofar as SL 12806 falls within the boundaries of that certain Voluntary Unit known as the UV B RA SUA operated by Century Exploration New Orleans, Inc., covering 1113.02 acres and insofar only as SL 12806 covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well | Leasehold | 50.00000%<br>37.50000% | Pt. D: XTO Offshore Inc.<br>Pt. E: XTO Offshore Inc. |
| 3372-0003-00 | **Breton Sound 52 - LA SL 16737**<br>State Lease No. 16737, recorded in COB 978, Folio 439, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3149-0001-00 | **Breton Sound 53 - LA SL 3770**<br>State Lease No. 3770, recorded in COB 239, Folio 675, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers depths from the surface down to a subsurface depth of 10,800'. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3372-0002-00 | **Breton Sound 53 - LA SL 16738**<br>State Lease No. 16738, recorded in COB 978. Folio 456, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-3-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3076-0001-00 | **East Cameron 178 - OCS-G 27834**<br>All of Block 178, East Cameron Area | Record Title | 60.00000% | XTO Offshore Inc. |
| 1634-0001-00 | **Eugene Island 226, OCS-G 33094**<br>All of Block 226, Eugene Island Area | Record Title | 100.00000% | XTO Offshore Inc. |
| | **Eugene Island 273 Reservoir Unit (0'-4900' Sand) Federal Unit 891012338**<br>Comprised of portions of Eugene Island 272, 273, 284 and 285 | Federal Unit | 10.96445% | XTO Offshore Inc. |
| 3215-0001-00 | **Eugene Island 272 - OCS-G 0986**<br>All of Block 272, Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| | E/2/SE/4; SW/4SE/4; E/2NW/4SE/4; SW/4NW/4SE/4; E/2SE/4SW/4; SE/4SW/4NE/4; SW/4/NE/4NE/4; SE/4NE/4; SE/4NE/4NE/4 of Block 272, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR as said lease covers operating rights from the surface to the base of the 4900-B Sand, the base of which sand is identified on the IES Log of the Amoco Production Company, et al, Block 273 Well No. 1 at a depth of 4,896' MD (4,859' subsea) | Operating Rights | 30.00000% | XTO Offshore Inc. |
| 3216-0001-00 | **Eugene Island 284 - OCS-G 0991**<br>NE/4; SE/4; E/2SE/4NW/4; E/2SW/4; SW/4SW/4; SE/4NW/4SW/4; SE/4NE/4NW/4 of Block 284, Eugene Island Area, South Addition | Record Title 1: | 15.00000% | XTO Offshore Inc. |
| | NE/4NE/4NW/4; W/2E/2NW/4; W/2NW/4; N/2NW/4SW/4; SW/4NW/4SW/4 of Block 284, Eugene Island Area, South Addition | Record Title 2: | 30.00000% | XTO Offshore Inc. |
| | W/2NW/4; W/2SE/4NW/4; W/2NE/4NW/4; NE/4NE/4NW/4; W/2NW/4SW/4; NE/4NW/4SW/4 of Block 284, Eugene Island Area, South Addition, from the surface of the earth down to the base of the 4900-B Sand, the base of which sand is identified on the IES log of the Amoco Production Company, et al, Block 273 Well No. 1 at a depth of 4,896' MD / 4,859' subsea TVD | Operating Rights 1: | 30.00000% | XTO Offshore Inc. |

EXHIBIT A

-4-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | NE/4NE/4NW/4; W/2E/2NW/4; W/2NW/4; N/2NW/4SW/4; SW/4NW/4SW/4 of Block 284, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR as said lease covers those depths from below the base of the 4900-ft Sand, the base of which is identified on the IES log of the Amoco Production Company, et al, Block 273 Well No. 1 at a depth of 4,896' MD / 4,859' subsea TVD | Operating Rights 2: | 15.00000% | XTO Offshore Inc. |
| | **EI 292 Field Unit Federal Unit #891008764** Comprised of portions of Eugene Island 286, 292, 293, 308, 309 | Federal Unit | 29.87349% | XTO Offshore Inc. |
| 3217-0001-00 | **Eugene Island 286, OCS-G 0993** All of Block 286, Eugene Island Area, South Addition | Record Title | 45.00000% | XTO Offshore Inc. |
| | N/2 of Block 286, Eugene Island Area, South Addition, from the surface of the earth to the stratigraphic equivalent of 6,611 feet subsea (which represents a depth of 100 feet below the depth of 6,511 feet subsea, as encountered at a total depth in the Hall-Houston Oil Company OCS-G 0993 Well No. 6 ST No. 1. | Operating Rights | 45.00000% | XTO Offshore Inc. |
| 3218-0001-00 | **Eugene Island 292, OCS-G 0994** All of Block 292, Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3219-0001-00 | **Eugene Island 293, OCS-G 0995** All of Block 293 Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| | N/2N/2 of Block 293, Eugene Island Area, South Addition, from the surface of the earth, down to and including, but not below, a total depth of 5,505' TVD | Operating Rights 1: | 100.00000% | XTO Offshore Inc. |
| | NE/4SW/4; NW/4SE/4; SE/4NW/4 of Block 293, Eugene Island Area, South Addition, from the surface of the earth down to and including, but not below, a total depth of 5,995' TVD | Operating Rights 2: | 100.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-5-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3220-0001-00 | **Eugene Island 308, OCS-G 0996**<br>All of Block 308, Eugene Island Area, South Addition | Record Title | 12.00000% | XTO Offshore Inc. |
| | N/2NW/4NW/4; SW/4NW/4SW/4; W/2SW/4SW/4 of Block 308, Eugene Island Area, South Addition | Operating Rights | 30.00000% | XTO Offshore Inc. |
| | All of Block 308, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR AS to operating rights as to the C-1 Sand, identified as that sand found in the interval in the Forest Oil Corporation Unit No. 1 Well, 3,985 feet to 4,125 feet (both measured depths), and any extension of said sand found on OCS-G 0996 and OCS-G 1982 | Operating Rights | 30.00000% | XTO Offshore Inc. |
| | SE/4SE/4NE/4; E/2E/2SE/4 of Block 308, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR AS to operating rights from the surface down to a depth which is the stratigraphic equivalent of the measured depth of 6,050 feet found in the No. 2 OCS-G 0996 Well | Operating Rights | 30.00000% | XTO Offshore Inc. |
| 3221-0001-00 | **Eugene Island 309, OCS-G 0997**<br>All of Block 309, Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| | SW/4 of Block 309, Eugene Island Area, South Addition INSOFAR AND ONLY INSOFAR as to depths from the surface of the earth down to and including, but not below, a total depth of 7,014' TVD (identified as the total depth of the Columbia Gas Development Corporation OCS-G 1981 J-1 S/T #1 - being 7,014' TVD /8,385' MD) | Operating Rights | 37.50000% | XTO Offshore Inc. |
| 3077-0001-00 | **Eugene Island 311 - OCS-G 27918**<br>All of Block 311, Eugene Island Area, South Addition | Record Title | 60.00000% | XTO Offshore Inc. |
| 3212-0001-00 | **Eugene Island 312 - OCS-G 22679**<br>E/2NW/4 & W/2NE/4 of Block 312, Eugene Island Area, South Addition, from 0 to 9,000' TVD | Operating Rights | 60.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-6-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3214-0001-00 | **Eugene Island 313 - OCS-G 2608**<br>NE/4 of Block 313, Eugene Island Area, South Addition, from the sub-surface of the ground down to and including 100' below the stratigraphic equivalent of the true vertical depth of 8,320 feet subsea as encountered in the Aviara Energy Corporation OCS-G 2608 No. J-4 Well | Operating Rights | 25.00000% | XTO Offshore Inc. |
| 3264-0001-00 | **High Island 34, OCS-G 20655**<br>All of Block 34, High Island Area | Record Title | 45.00000% | XTO Offshore Inc. |
| 3261-0001-00 | **High Island A-376 - OCS-G 2754**<br>All of Block A-376, High Island Area, East Addition, South Extension | Record Title | 12.50000% | XTO Offshore Inc. |
| 3265-0001-00 | **High Island A-554, OCS-G 21356**<br>All of Block A-554, High Island Area, South Addition | Record Title | 25.00000% | XTO Offshore Inc. |
| 3074-0001-00 | **Main Pass 29, OCS-G 27196**<br>All of Block 29, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 1625-0001-00 | **Main Pass 87- OCS-G 31433**<br>All of Block 87, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3329-0001-00 | **Main Pass 94 - OCS-G 7802**<br>SE/4 of Block 94, Main Pass Area, as to those depths from the surface of the earth down to 9,414' MD / 5,666' TVD | Operating Rights | 20.85200% | XTO Offshore Inc. |
| 1625-0002-00 | **Main Pass 96- OCS-G 31434**<br>All of Block 96, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3318-0001-00 | **Main Pass 101 - OCS-G 22792**<br>All of Block 101, Main Pass Area | Record Title | 60.45000% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | N/2N/2NE/4 of Block 101, Main Pass Area, limited to those depths from the surface of the earth down to a depth equal to the stratigraphic equivalent of the total depth drilled in the Main Pass Block 101 Well No. 7, being 5,434 feet True Vertical Depth | Operating Rights | 58.50000% | XTO Offshore Inc. |
| 3322-0001-00 | **Main Pass 109 - OCS-G 22794** SW/4NW/4, NW/4SE/4NW/4, SW/4NE/4NW/4 of Block 109, Main Pass Area, from the surface of the earth down to a depth of 100' below the stratigraphic equivalent of a true vertical depth of 4,622 feet as measured in the LLOG Exploration Offshore, Inc. OCS-G 22794 No. 1 Well | Operating Rights | 25.99740% | XTO Offshore Inc. |
| | N/2NE/4, NW/4SW/4NE/4, NE/4SE/4NW/4, SE/4NE/4NW/4 of Block 109, Main Pass Area, from the surface of the earth down to a depth of 100' below the stratigraphic equivalent of a true vertical depth of 9,937 feet as measured in the LLOG Exploration Offshore, Inc. OCS-G 22794 No. 2 Well (currently named the #D-1 Well) | Operating Rights | 25.99740% | XTO Offshore Inc. |
| 3325-0001-00 | **Main Pass 112 - OCS-G 9707** All of Block 112, Main Pass Area | Record Title | 100.00000% | XTO Offshore Inc. |
| 3072-0001-00 | **Main Pass 114, OCS-G 27201** All of Block 114, Main Pass Area | Record Title | 100.00000% | XTO Offshore Inc. |
| 3326-0001-00 | **Main Pass 116 - OCS-G 3419** All of Block 116, Main Pass Area | Record Title | 100.00000% | XTO Offshore Inc. |
| 3331-0001-00 | **Main Pass 118, OCS-G 22797** S/2 of Block 118, Main Pass Area, from the surface down to 20,000 feet true vertical depth subsea | Operating Rights | 50.00000% | XTO Offshore Inc. |
| 1626-0001-00 | **Main Pass 119, OCS-G 31438** All of Block 119, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3061-0001-00 | **Main Pass 125, OCS-G 25019** All of Block 125, Main Pass Area | Record Title | 62.50000% | XTO Offshore Inc. |

EXHIBIT A

-8-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3561-0001-00 | **Main Pass 179, OCS-G 33127**<br>All of Block 179, Main Pass Area, South and East Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| 3422-0001-00 | **Ship Shoal 79 - OCS-G 15277**<br>All of Block 79, Ship Shoal Area, INSOFAR AND ONLY INSOFAR as the Lease covers from the surface to one hundred feet below the stratigraphic equivalent of 11,318' true vertical depth as seen in the electric log dated March 7, 2001 for the OCS-G 15277 Well No. 2 | Operating Rights | 35.10000% | XTO Offshore Inc. |
| 3423-0001-00 | **Ship Shoal 188 - OCS-G 22712**<br>All of Block 188, Ship Shoal Area | Record Title | 100.00000% | XTO Offshore Inc. |
| | All of Block 188, Ship Shoal Area, INSOFAR AND ONLY INSOFAR as to depths from the surface of the earth down to 17,000 feet subsea | Operating Rights | 75.00000% | XTO Offshore Inc. |
| | XTO Offshore Inc. and its Affiliates reserve and exclude all rights they have under that certain Lease Purchase Agreement dated effective January 22, 2002, by and between EEX Corporation ("EEX") and Aviara Energy Corporation ("Aviara"), as amended April 1, 2005, by and between Newfield Exploration Gulf Coast, Inc. and Hunt Petroleum (AEC), Inc., as such agreements pertain to all depths from 17,000 feet to 100,000 feet subsea and expressly reserve and exclude the 5% of 8/8ths overriding royalty interest reserved by Aviara in that certain Assignment of Operating Rights dated effective January 22, 2002, by and between Aviara and EEX. | | | |
| | **Ship Shoal 271 Field Unit Federal Unit #891008784**<br>Comprised of portions of Ship Shoal 247, 248, 249, 270, 271 | Federal Unit | 34.27967% | XTO Offshore Inc. |
| 3424-0001-00 | **Ship Shoal 247, OCS-G 1028**<br>N/2 of Block 247, Ship Shoal Area, South Addition | Record Title | 36.66670% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | SW/4 of Block 247, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| | SE/4 of Block 247, Ship Shoal Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3425-0001-00 | **Ship Shoal 248, OCS-G 1029**<br>NW/4; S/2 of Block 248, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| | NE/4 of Block 248, Ship Shoal Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3426-0001-00 | **Ship Shoal 249, OCS-G 1030**<br>All of Block 249, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| | NE/4 and S/2 of Block 249, Ship Shoal Area, South Addition only as to those depths above the stratigraphic equivalent of 15,108 feet as identified on the electric log for the OCS-G 1030, well No. D-2. | Operating Rights | 12.00000% | XTO Offshore Inc. |
| | NW/4 of Block 249, Ship Shoal Area, South Addition only as to those depths above the stratigraphic equivalent of 15,108 feet as identified on the electric log for the OCS-G 1030, well No. D-2. | Operating Rights | 12.00000% | XTO Offshore Inc. |
| 3427-0001-00 | **Ship Shoal 270, OCS-G 1037**<br>All of Block 270, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| 3428-0001-00 | **Ship Shoal 271, OCS-G 1038**<br><br>All of Block 271, Ship Shoal Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3445-0001-00 | **South Marsh Island 40, OCS-G 13607**<br>All of Block 40, South Marsh Island Area | Record Title | 89.00000% | XTO Offshore Inc. |
| 3446-0001-00 | **South Marsh Island 41, OCS-G 1192**<br>E/2 of Block 41, South Marsh Island Area, INSOFAR AND ONLY INSOFAR as to depths from surface of the earth down to 11,500 feet TVD | Operating Rights | 89.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-10-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3447-0001-00 | **South Marsh Island 44, OCS-G 23840**<br>All of Block 44, South Marsh Island Area, from surface down to a depth of 15,500' TVD | Operating Rights | 50.00000% | XTO Offshore Inc. |
| 3080-0001-00 | **South Marsh Island 45, OCS-G 31353**<br>All of Block 45, South Marsh Island Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3435-0001-00 | **South Marsh Island 109, OCS-G 24873**<br>All of Block 109, South Marsh Island Area, South Addition | Record Title | 54.16667% | XTO Offshore Inc. |
| 1383-0003-00 | **South Marsh Island 138, OCS-G 33616**<br>All of Block 138, South Marsh Island Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| 3437-0001-00 | **South Marsh Island Block 139, OCS-G 21106**<br>SW/4SW/4 and S/2NW/4SW/4 of Block 139 South Marsh Island Area, South Addition, as to depths from below 6,000' TVD subsea to and including 9,830' TVD, being 100' below the stratigraphic equivalent of the total depth drilled in the Hunt Petroleum (AEC), Inc. OCS-G 21106 No. B-2 ST00 BP01 Well | Operating Rights | 75.00000% | XTO Offshore Inc. |
| 3439-0001-00 | **South Marsh Island Block 146 , OCS-G 9546**<br>NW/4NW/4 and NW/4NE/4NW/4 of Block 146, South Marsh Island Area, South Addition, as to depths from 6,000' TVD subsea down to and including 9,830' TVD being 100' below the stratigraphic equivalent of the total depth drilled (9730' TVD) in the Hunt Petroleum (AEC), Inc. OCS-G 21106 (South Marsh Island Block 139) No. B-2 ST00 BP01 Well. | Operating Rights | 75.00000% | XTO Offshore Inc. |
| 3438-0001-00 | **South Marsh Island 142, OCS-G 1216**<br>All of Block 142, South Marsh Island Area, South Addition | Record Title | 55.00000% | XTO Offshore Inc. |
|  | S/2SE/4; E/2S/2SW/4 of Block 142, South Marsh Island Area, South Addition | Operating Rights | 55.00000% | XTO Offshore Inc. |

-11-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner | |
|---|---|---|---|---|---|
| 3451-0001-00 | **South Pass 42 - LA SL 16869**<br>State Lease No. 16869, recorded in COB 995, Folio 683, Plaquemines Parish, Louisiana, INSOFAR ONLY as said lease covers land lying INSIDE the geographic boundaries of that certain Voluntary Unit designated as the **04 RA VUA Unit**, established by that certain Voluntary Unit Agreement dated October 19, 2005, recorded in Book 1137, Page 493, File No. 2007-00001208 of the Conveyance Records of Plaquemines Parish, Louisiana | Leasehold | 75.00000% | XTO Offshore Inc. | |
| 3451-0007-00 | **South Pass 43 - LA SL 16870**<br>State Lease No. 16870, recorded in COB 992, Folio 8, Plaquemines Parish, Louisiana, INSOFAR ONLY as said lease covers land lying INSIDE the geographic boundaries of that certain Voluntary Unit designated as the **04 RA VUA Unit**, established by that certain Voluntary Unit Agreement dated October 19, 2005, recorded in Book 1137, Page 493, File No. 2007-00001208 of the Conveyance Records of Plaquemines Parish, Louisiana | Leasehold | 75.00000% | XTO Offshore Inc. | |
| 3451-0006-00 | **South Pass 43, OCS-G 22781**<br>That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument. | Record Title | 9.75000% | XTO Offshore Inc. | |
| | That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument INSOFAR AND ONLY INSOFAR as it covers depths from the surface of the earth to the base of the "O" Sand Series defined as the stratigraphic equivalent of a measured depth of 12,030 feet as seen on the Induction Electric Log for the Shell Oil Company, State Lease 2554 Well No. 10 | Operating Rights | 58.50000% | XTO Offshore Inc. | |
| | That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument INSOFAR AND ONLY INSOFAR as it covers depths from below the base of the "O" Sand Series to 30,000 feet | Operating Rights | 19.50000% | XTO Offshore Inc. | H |

**EXHIBIT A**

-12-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3531-0001-00 | **Vermilion 313 OCS-G 1172**<br>All of Block 313, Vermilion Area, South Addition | Record Title | 50.00000% | XTO Offshore Inc. |
| | SE/4 of Block 313, Vermilion Area, South Addition, INSOFAR AND ONLY INSOFAR as the operating rights cover from the surface of the earth down to and including, but not below, a total depth of 9,000' TVD | Operating Rights 1 | 50.00000% | XTO Offshore Inc. |
| | N/2; SW/4 of Block 313, Vermilion Area, South Addition, INSOFAR AND ONLY INSOFAR as the operating rights cover from the surface of the earth down to and including, but not below, a total depth of 9,000' TVD | Operating Rights 2 | 50.00000% | XTO Offshore Inc. |
| 3567-0001-00 | **Vermilion 264, OCS-G 33603**<br>All of Block 264, Vermilion Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| | **West Cameron Block 507 Field Unit Federal Unit #754394008**<br>Comprised of portions of West Cameron 485 & 507 | Federal Unit | 100.00000% | XTO Offshore Inc. |
| 3163-0001-00 | **West Cameron 485, OCS-G 2220**<br>All of Block 485, West Cameron Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| 3165-0001-00 | **West Cameron 507 (S/2), OCS-G 10594**<br>S/2 of Block 507, West Cameron Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| | SW/4SE/4; E/2SE/4; S/2NW/4SE/4; NE/4NW/4SE/4 of Block 507, West Cameron Area, South Addition, from the surface of the earth down to and including 100' below the stratigraphic equivalent of the true vertical depth of 10,798' as encountered in the Newfield Exploration Company, OCS-G 2549 No. C-1 (formerly No. 2) Well | Operating Rights | 50.00000% | XTO Offshore Inc. |
| 3164-0001-00 | **West Cameron 507 (N/2), OCS-G 2549**<br>N/2 of Block 507, West Cameron Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | E/2NE/4; SE/4SW/4NE/4 of Block 507, West Cameron Area, South Addition, from the surface of the earth down to and including 100' below the stratigraphic equivalent of the true vertical depth of 10,798' as encountered in the Newfield Exploration Company OCS-G 2549 No. C-1 (formerly No. 2) Well. | Operating Rights | 50.00000% | XTO Offshore Inc. |

# EXHIBIT A-1
## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## ASSIGNMENT AND BILL OF SALE
## DATED EFFECTIVE AS OF AUGUST 1, 2011,
## BETWEEN XTO OFFSHORE INC.
## AND DYNAMIC OFFSHORE RESOURCES, LLC

### CONTRACTS

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0283698 | Breton Sound Area | 25 | SL 19718 | Lease | July 9, 2008 | State of Louisiana | Robert A. Schreider, Inc. | 9-Jul-08 |
| 0283658 | Breton Sound Area | 25 | 31442 | Lease | February 1, 2008 | United States of America | LLOG Exploration Offshore, Inc. | 1-Mar-09 |
| 0297856 | Breton Sound Area | 25 | SL 19718 & 31442 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc. | LLOG Exploration Offshore, Inc. et al | 1-Mar-09 |
| 0297980 | Breton Sound Area | 25 | SL 19718 & 31442 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc.et al | XTO Offshore Inc. | 1-Feb-08 |
| | | | | | | | | |
| 0276210 | Breton Sound | 28 | SL 1999 | Lease | August 8, 1951 | State of Louisiana | Kerr-McGee Oil Industries, Inc. | |
| 0295077 | Breton Sound | 28 | SL 1999 | Farmout Agreement | September 5, 2002 | Kerr-McGee Oil & Gas Corp. | LLOG Exploration Offshore, Inc. | |

EXHIBIT A-1                                   -15-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417942 | Breton Sound | 28 | SL 1999 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| | | | | | | | | |
| 0276214 | Breton Sound | 53 | SL 3770 | Lease | April 26, 1961 | State of Louisiana | Union Oil Company of California | |
| 0276222 | Breton Sound | 52 | SL 12806 | Lease | July 13, 1987 | State of Louisiana | Tenneco Oil Company | |
| 0276214 | Breton Sound | 53 | SL 3770 | Partial Assignment | May 1, 1994 | Union Oil Company of California | Badger Oil Corporation | Consent to Assign; Mariner Energy Resources, Inc. |
| 0276223 | Breton Sound | 45 | SL 15683 | Lease | April 14, 1997 | State of Louisiana | Stephen M. Jenkins & Associates, Inc. | |
| 0276218 | Breton Sound | 44 | SL 16736 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |
| 0276221 | Breton Sound | 45 | SL 16735 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |
| 0276220 | Breton Sound | 52 | SL 16737 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |
| 0276219 | Breton Sound | 53 | SL 16738 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295080 | Breton Sound | 44, 45, 52, 53 | SL 3770, 12806, 15683, 16735, 16736, 16737 & 16738 | Operating Agreement, as amended | January 15, 2001 | LLOG Exploration & Production Company | Century Exploration New Orleans, Inc. | |
| 0342454 | Breton Sound | 45 & 53 | SL 3770 & 15683 | Production Handling Agreement, as amended | December 1, 2001 | LLOG Exploration & Production Company | Century Exploration Company | |
| 0276227 | Breton Sound | 45 | SL 17674 | Lease | December 16, 2002 | State of Louisiana | Century Exploration Company | |
| 0276228 | Breton Sound | 52 | SL 17675 | Lease | December 16, 2002 | State of Louisiana | Century Exploration Company | |
| 0295082 | Breton Sound | 45 & 52 | SL 12806, 15683, 17674, 17675 & 17942 | Operating Agreement | March 27, 2003 | Century Exploration New Orleans, Inc. | LLOG Exploration & Production Company | |
| 0295081 | Breton Sound | 44, 45, 52, 53 | SL 12806, 15683, 16735, 16736, 16737 & 16738 | TEX W RA SUA Unit Agreement | June 16, 2003 | Louisiana Office of Conservation | LLOG Exploration Company, LLC | TEX W RA SUA; Order No. 1245-B |
| 0295079 | Breton Sound | 45 & 52 | SL 12806, 15683, 17674, 17675 & 17942 | UV B RA Voluntary Unit Agreement | August 14, 2003 | The State Mineral Board | Century Exploration Company, et al | UV B RA VUA; SL 17675 No. 1 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0314460 | Breton Sound | 52 & 53 | SL 3770 & 12806 | Production Handling Agreement | August 19, 2003 | Palace Operating Company | LLOG Exploration & Production Company, et al | |
| 0276229 | Breton Sound | 45 | SL 17942 | Lease | November 17, 2003 | State of Louisiana | Cypress Exploration Company | |
| 0417942 | Breton Sound | 44, 45, 52, 53 | SL 3770, 12806, 15683, 16735, 16736, 16737, 16738, 17942, 17674, 17675 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0295083 | Breton Sound | 52 | SL 17675 | Production Handling Agreement | May 15, 2004 | Century Exploration New Orleans, Inc., et al | Century Exploration New Orleans, Inc. | UV B RA VUA; SL 17675 No. 1 Well Production |
| 0361567 | Breton Sound | 45 | SL 15683 | Farmout Agreement, as amended | November 1, 2010 | XTO Offshore, Inc. | Century Exploration New Orleans, Inc. | Century SL 19051 #1; Virgo N. Prospect |
| 0365804 | Breton Sound | 45 | SL 15683 | Order No. 1245-B | January 12, 2011 | The State Mineral and Energy Board | | BS 53 3-B RA VUA; SL 19051 #1 |
| | | | . | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0278039 | East Cameron Area | 178 | 27834 | Lease | July 1, 2006 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-06 |
| 0295297 | East Cameron Area | 178 | 27834 | Operating Agreement | February 1, 2008 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | February 1, 2008 Nippon |
| 0295296 | East Cameron Area | 178 | 27834 | Participation Agreement | February 1, 2008 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | February 1, 2008 Nippon |
| 0295295 | East Cameron Area | 178 | 28533 | Right-Of-Way | October 7, 2008 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 28533, Segment 17688 |
| | | | | | | | | |
| 0297145 | Eugene Island Area | 226 | 33094 | Lease | July 1, 2009 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-09 |
| 0340710 | Eugene Island Area | 226 | 33094 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward |
| | | | | | | | | |
| 0265425 | Eugene Island Area, South Addition | 272 | 986 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |

**EXHIBIT A-1**

-19-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294344 | Eugene Island Area, South Addition | 272 | 986 | Unit Operating Agreement | February 13, 1970 | Forest Oil Corporation | Cabot Corporation, et al | 13-Feb-70 |
| 0417927 | Eugene Island Area, South Addition | 272 | 986 | Unit Agreement #14-08-0001-12338 | December 1, 1972 | Forest Oil Corporation | Amoco Production Company, et al | #14-08-0001-12338 Dtd. December 1, 1972 |
| 0294344 | Eugene Island Area, South Addition | 272 | 986 | Gas Balancing & Storage Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | (GBA) |
| | | | | | | | | |
| | | | | | | | | |
| 0265426 | Eugene Island Area, South Addition | 284 | 991 | Lease | June 1,1962 | United States of America | Forest Oil Corporation | June 1,1962 |
| 0294344 | Eugene Island Area, South Addition | 284 | 991 | Unit Operating Agreement | February 13, 1970 | Forest Oil Corporation | Cabot Corporation, et al | (See EI 272 File) |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417927 | Eugene Island Area, South Addition | 284 | 991 | Unit Agreement #14-08-0001-12338 | December 1, 1972 | Forest Oil Corporation | Amoco Production Company, et al | (See EI 272 File) |
| 0294344 | Eugene Island Area, South Addition | 284 | 991 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | (See EI 272 File) |
| | | | | | | | | |
| | | | | | | | | |
| 0265419 | Eugene Island Area, South Addition | 286 | 993 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294315 | Eugene Island Area, South Addition | 286 | 993 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0294314 | Eugene Island Area, South Addition | 286 | 993 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417934 | Eugene Island Area, South Addition | 286 | 993 | Unit Agreement EI 287 "D" Platform WI Unit | December 29, 1977 | Forest Oil Corporation | Columbia Gas Development Corporation | EI 287 "D" Platform WI Unit |
| 0294314 | Eugene Island Area, South Addition | 286 | 993 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| 0418812 | Eugene Island Area, South Addition | 286 | 993 | Operating Agreement | April 28, 1995 | Hall-Houston Oil Company | Columbia Gas Development Corporation | (N/2) April 28, 1995 |
| 0294321 | Eugene Island Area, South Addition | 286 | 993 | Participation Agreement, as amended | April 28, 1995 | Columbia Gas Development Corporation | Hall-Houston Oil Company | (N/2) April 28, 1995 |
| 0317713 | Eugene Island Area, South Addition | 286 | 993 | Production Handling Agreement | June 14, 1995 | Columbia Gas Development Corporation | Hall-Houston Oil Company | I Platform June 14, 1995 |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

-22-

| XTO Agmt. # | Area | Block | OCS-G / ST. Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265418 | Eugene Island Area, South Addition | 292 | 994 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294315 | Eugene Island Area, South Addition | 292 | 994 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 May 4, 1966 |
| 0294314 | Eugene Island Area, South Addition | 292 | 994 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | 4-May-66 |
| 0294314 | Eugene Island Area, South Addition | 292 | 994 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| | | | | | | | | |
| | | | | | | | | |
| 0265422 | Eugene Island Area, South Addition | 293 | 995 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294314 | Eugene Island Area, South Addition | 293 | 995 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | See Eugene Island 292 |
| 0294315 | Eugene Island Area, South Addition | 293 | 995 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0294314 | Eugene Island Area, South Addition | 293 | 995 | Gas Balancing & Storage Agreement | September 29, 1994 | CNG Producing Company | Columbia Gas Development Corporation | GBA September 29, 1994 |
| | | | | | | | | |
| | | | | | | | | |
| 0265416 | Eugene Island Area, South Addition | 308 | 996 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294314 | Eugene Island Area, South Addition | 308 | 996 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | May 4, 1966 See EI 292 UNIT |

**EXHIBIT A-1**

-24-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294315 | Eugene Island Area, South Addition | 308 | 996 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0419424 | Eugene Island Area, South Addition | 308 | 996 | Operating Agreement | June 1, 1991 | Energy Development Corporation | Columbia Gas Development Corporation, et al | June 1, 1991  Blks 308 & 315 (N/2) |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
| 0265423 | Eugene Island Area, South Addition | 309 | 997 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation |  |
| 0294315 | Eugene Island Area, South Addition | 309 | 997 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0294314 | Eugene Island Area, South Addition | 309 | 997 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al |  |

**EXHIBIT A-1**

-25-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418286 | Eugene Island Area, South Addition | 309 | 997 | Participation Agreement, as amended | November 22, 1989 Amended January 2, 1990 | Columbia Gas Development Corporation | Total Minatome Corporation, et al | EI 309 "J" Platform |
| 0294314 | Eugene Island Area, South Addition | 309 | 997 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| 0418585 | Eugene Island Area, South Addition | 309 | 997 | Unit Agreement EI 309 "C" & "G" Platforms | January 1, 1996 | Forest Oil Corporation | Columbia Gas Development Corporation | EI 309 "C" & "G" Platforms - WI Unit (supercedes 12/29/77 Unit Agmt) |
| 0294581 | Eugene Island Area, South Addition | 309 | 997 | Operating Agreement | June 1, 1999 | Aviara Energy Corporation | Eugene Island 309, LLC | EI 309 Development Program - Exhibit "C" to Venture Agmt |
| 0292529 | Eugene Island Area, South Addition | 309 | 997 | Venture Agreement | June 15, 1999 | Aviara Energy Corporation | Eugene Island 309, LLC | |
| 0418053 | Eugene Island Area, South Addition | 309 | 997 | Production Handling and Operating Agreement | July 1, 2008 | Mariner Energy, Inc., et al | Hunt Petroleum (AEC), Inc., et al | PHA - EI 309 "J" - EI 309 "G" |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0340710 | Eugene Island Area, South Addition | 311 | 27918 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward Obligations |
| 0418791 | Eugene Island Area, South Addition | 311 | 27918 | Area of Mutual Interest Agreement | March 29, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | AMI - EI 311 (S/2) |
| 0352139 | Eugene Island Area, South Addition | 311 | 27918 | Operating Agreement, as amended | October 25, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | See EI 312 Participation Agmt. File |
| 0278043 | Eugene Island Area, South Addition | 311 | 27918 | Lease | July 1, 2006 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-06 |
| | | | | | | | | |
| | | | | | | | | |
| 0277275 | Eugene Island Area, South Addition | 312 | 22679 | Lease | June 1, 2001 | United States of America | Devon Energy Production Company, L.P. | 1-Jun-01 |

**EXHIBIT A-1**

-27-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0340710 | Eugene Island Area, South Addition | 312 | 27679 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward Obligations |
| 0418791 | Eugene Island Area, South Addition | 312 | 27679 | Area of Mutual Interest Agreement | March 29, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | AMI - EI 312 (N/2) |
| 0295226 | Eugene Island Area, South Addition | 312 | 22679 | Farmout Agreement, as amended | October 25, 2005 | Devon Energy Production Company, L.P. | Hunt Petroleum (AEC), Inc. | Oct. 25, 2005  EI 312 with Devon |
| 0295225 | Eugene Island Area, South Addition | 312 | 22679 | Participation Agreement | October 25, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | Oct. 25, 2005  EI 311/312 includes JOA with EPL |
| 0352139 | Eugene Island Area, South Addition | 312 | 22679 | Operating Agreement, as amended | October 25, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | See Participation Agmt File |
| 0314146 | Eugene Island Area, South Addition | 312 | 22679 | Production Handling Agreement | January 1, 2007 | Hunt Petroleum (AEC), Inc. et al | Hunt Petroleum (AEC), Inc. et al | Jan. 1, 2007  EI 312/SM 142 |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0266169 | Eugene Island Area, South Addition | 313 | 2608 | Lease | May 1, 1974 | United States of America | Gulf Oil Corporation, et al | 1-May-74 |
| 0294574 | Eugene Island Area, South Addition | 313 | 2608 | Farmout Agreement | May 17, 1999 | PennzEnergy Exploration and Production L.L.C. | Aviara Energy Corporation | May 17, 1999 PennzEnergy |
| 0294331 | Eugene Island Area, South Addition | 313 | 2608 | Participation Agreement | May 18, 1999 | Texaco Exploration and Production Inc. | Aviara Energy Corporation | May 18, 1999   J4 Well Texaco |
| 0294578 | Eugene Island Area, South Addition | 313 | 2608 | Operating Agreement | May 18, 1999 | Aviara Energy Corporation | Texaco Exploration and Production Inc. | See 5/18/99 Participation Agmt File Exhibit "C" to Participation Agmt |
| 0294581 | Eugene Island Area, South Addition | 313 | 2608 | Venture Agreement | June 15, 1999 | Aviara Energy Corporation | Eugene Island 309, L.L.C. | June 15, 1999   EI 309 LLC Venture" Agmt" |
| | | | | | | | | |
| | | | | | | | | |

EXHIBIT A-1

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265885 | High Island Area | 34 | 20655 | Lease | December 1, 1998 | United States of America | Aviara Energy Corporation, et al | 1-Dec-98 |
| 0294467 | High Island Area | 34 | 20655 | Operating Agreement, as amended | December 1, 1998 | Aviara Energy Corporation | Pure Resources, L.P., et al | 1-Dec-98 |
| 0265886 | High Island Area | 34 | 24287 | Right-Of-Way | October 15, 2002 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 24287, Segment 13955 |
| | | | | | | | | |
| 0313848 | High Island Area, East Add., South Ext. | A365 | 2750 | Operating Agreement, as amended | September 15, 1979 | Anadarko Production Company | Pan Eastern Exploration Company, et al | 9/15/79 HIA-365/376 Contract Area |
| | | | | | | | | |
| | | | | | | | | |
| 0265435 | High Island Area, East Add., South Ext. | A376 | 2754 | Lease | July 1, 1974 | United States of America | Texaco Inc., et al | 1-Jul-74 |
| 0313848 | High Island Area, East Add., South Ext. | A376 | 2754 | Operating Agreement, as amended | September 15, 1979 | Anadarko Production Company | Pan Eastern Exploration Company, et al | 9/15/79 HIA-365/376 Contract Area |

EXHIBIT A-1                                                    -30-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| 0266179 | High Island Area, South Addition | A554 | 21356 | Lease | November 1, 1999 | United States of America | Chieftain International (U.S.) Inc. | 1-Nov-99 |
| 0294591 | High Island Area, South Addition | A554 | 21356 | Participation Agreement / Operating Agreement | October 25, 2000 | Chieftain International (U.S.) Inc. | Aviara Energy Corporation, et al | October 25, 2000 - Includes Operating Agmt |
| | | | | | | | | |
| | | | | | | | | |
| 0277242 | Main Pass Area | 29 | 27196 | Lease | May 1, 2005 | United States of America | Hunt Petroleum (AEC), Inc. | 1-May-05 |
| 0295214 | Main Pass Area | 29 | 27196 | Lease Purchase & Well Participation Agreement | May 18, 2005 | Andex Resources, L.L.C., et al | Hunt Petroleum (AEC), Inc. | 18-May-05 |
| 0295215 | Main Pass Area | 29 | 27196 | Operating Agreement | May 18, 2005 | Hunt Petroleum (AEC), Inc. | Andex Resources, L.L.C., et al | |
| 0295216 | Main Pass Area | 29 | 27196 | Facility Sharing Agreement | July 3, 2006 | Hunt Petroleum (AEC), Inc., et al | Hunt Petroleum (AEC), Inc., et al | MP 29, 118 |

EXHIBIT A-1                                    -31-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0277243 | Main Pass Area | 29 | 28216 | Right-Of-Way | October 31, 2006 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 28216, Segment No. 15810 |
| 0317495 | Main Pass Area | 29 | 27196 | Measurement and Allocation Agreement | November 14, 2007 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | MP 29, 114, 118 |
| 0417466 | Main Pass Area | 29 | 27196 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| 0417463 | Main Pass Area | 29 | 27196 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| | | | | | | | | |
| 0283491 | Main Pass Area | 87 | 31433 | Lease | January 1, 2008 | United States of America | LLOG Exploration Offshore, Inc. | 1-Jan-08 |
| 0297795 | Main Pass Area | 87 | 31433 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc. | XTO Offshore Inc. | 1-Mar-09 |
| 0297980 | Main Pass Area | 87 | 31433 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc., et al | XTO Offshore Inc. | See BS 25 Federal Lease Folder |
| | | | | | | | | |
| | | | | | | | | |
| 0276265 | Main Pass Area | 94 | 7802 | Lease | July 1, 1985 | United States of America | Kerr-McGee Corporation, et al | 1-Jul-85 |

**EXHIBIT A-1**

-32-

·

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295118 | Main Pass Area | 94 | 7802 | Operating Agreement, as amended | March 3, 1986 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | |
| 0295115 | Main Pass Area | 94 | 7802 | Participation Agreement | November 1, 2001 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | November 1, 2001 Includes OPERATING AGMT |
| 0418824 | Main Pass Area | 94 | 7802 | Production Handling Agreement | January 24, 2002 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | 24-Jan-02 |
| 0417942 | Main Pass Area | 94 | 7802 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| | | | | | | | | |
| | | | | | | | | |
| 0283524 | Main Pass Area | 96 | 31434 | Lease | January 1, 2008 | United States of America | LLOG Exploration Offshore, Inc. | 1-Jan-08 |
| 0297835 | Main Pass Area | 96 | 31434 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc. | XTO Offshore Inc. | See Main Pass 87 |
| 0297980 | Main Pass Area | 96 | 31434 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc., et al | XTO Offshore Inc. | See BS 25 Federal Lease Folder |
| | | | | | | | | |
| | | | | | | | | |
| 0276266 | Main Pass Area | 101 | 22792 | Lease | July 1, 2001 | United State of America | Cheniere Energy, Inc., et al | 1-Jul-01 |

EXHIBIT A-1

-33-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295122 | Main Pass Area | 101 | 22792 | Operating Agreement, as amended | August 10, 2001 | Cheniere Energy, Inc. | Davis Gulf Coast, Inc. et al | 10-Aug-01 |
| 0295115 | Main Pass Area | 101 | 22792 | Participation Agreement | November 2, 2001 | LLOG Exploration Offshore, Inc. | Cheniere Energy, Inc. | November 2, 2001 LLOG-Chenier |
| 0276267 | Main Pass Area | 101 | 24687 | Right-Of-Way | September 29, 2003 | Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 24687 Seg 14304 |
| 0417942 | Main Pass Area | 101 | 22792 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0295125 | Main Pass Area | 101 | 22792 | Compromise Settlement Agreement | March 26, 2006 | Century Exploration New Orleans, Inc. | Davis Gulf Coast, Inc. et al | MP 101 B3 Well |
|  |  |  |  |  |  |  |  |  |
| 0276271 | Main Pass Area | 109 | 22794 | Lease | May 1, 2001 | United States of America | Samedan Oil Corporation, et al | 1-May-01 |
| 0295141 | Main Pass Area | 109 | 22794 | Joint Operating Agreement | May 1, 2001 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | Exhibit D to FO & JPA |
| 0295140 | Main Pass Area | 109 | 22794 | Farmout & Joint Participation Agreement | April 23, 2003 | Kerr-McGee Oil & Gas Corporation | LLOG Exploration Offshore Inc. | April 23, 2003 Farmout & Joint Participation Agmt |
| 0417942 | Main Pass Area | 109 | 22794 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| 0278033 | Main Pass Area | 112 | 9707 | Lease | June 1, 1988 | United States of America | Diamond Shamrock Offshore Partners Limited Partnership | 1-Jun-88 |
| 0278034 | Main Pass Area | 112 | 11738 | Right-Of-Way | April 26, 1990 | Minerals Management Service | Diamond Shamrock Offshore Partners Limited Partnership | ROW OCS-G 11738, Seg 9006 |
| 0419576 | Main Pass Area | 112 | 9707 | Purchase & Sale Agreement | April 1, 2006 | Vintage Petroleum, LLC | Hunt Petroleum (AEC), Inc. | Dated August 17, 2006, eff April 1, 2006 |
| 0417466 | Main Pass Area | 112 | 9707 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| 0417463 | Main Pass Area | 112 | 9707 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| | | | | | | | | |
| 0277281 | Main Pass Area | 114 | 27201 | Lease | July 1, 2005 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-05 |
| 0323989 | Main Pass Area | 114 | 27201 | Production Handling Agreement | August 1, 2007 | Hunt Petroleum (AEC), Inc. | Hunt Petroleum (AEC), Inc., et al | 1-Aug-07 |

**EXHIBIT A-1**

-35-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0317495 | Main Pass Area | 114 | 27201 | Measurement & Allocation Agreement | November 14, 2007 | XTO Offshore Inc. et al | XTO Offshore Inc., et al | |
| | | | | | | | | |
| | | | | | | | | |
| 0278035 | Main Pass Area | 116 | 3419 | Lease | January 1, 1977 | United States of America | Diamond Shamrock Corporation | 1-Jan-77 |
| 0278036 | Main Pass Area | 116 | 12708 | Right-Of-Way | January 8, 1991 | Minerals Management Service | Diamond Shamrock Offshore Partners Limited Partnership | ROW OCS-G 12708, Segment 9248 |
| 0278037 | Main Pass Area | 116 | 25478 | Right-Of-Way | September 24, 2004 | Minerals Management Service | XTO Offshore Inc. | ROW OCS-G 25478 Segment 14895 |
| 0419576 | Main Pass Area | 116 | 3419 | Purchase & Sale Agreement | April 1, 2006 | Vintage Petroleum, LLC | Hunt Petroleum (AEC), Inc. | Dated August 17, 2006, eff April 1, 2006 |
| 0417466 | Main Pass Area | 116 | 3419 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| C0410663 | Main Pass Area | 116 | 3419 | Offshore Connection Agreement | March 1, 2011 | XTO Offshore Inc., et al | Odyssey Pipeline L.L.C. | 1-Mar-11 |
| C0410589 | Main Pass Area | 116 | 3419 | Boarding Agreement | March 1, 2011 | XTO Offshore Inc. | Odyssey Pipeline L.L.C. | 1-Mar-11 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417463 | Main Pass Area | 116 | 3419 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| 0277244 | Main Pass Area | 118 | 22797 | Lease | June 1, 2001 | United States of America | Shell Offshore Inc. | 1-Jun-01 |
| 0295220 | Main Pass Area | 118 | 22797 | Farmout Agreement | July 1, 2005 | Shell Offshore Inc. | Hunt Petroleum (AEC), Inc. | July 1, 2005 SHELL FARMOUT & ASSIGNMENTS |
| 0295219 | Main Pass Area | 118 | 22797 | Operating Agreement | August 11, 2005 | Hunt Petroleum (AEC), Inc. | Rosetta Resources Offshore, LLC, et al | August 11, 2005 (Hunt-PetroQuest-Rosetta) |
| 0295218 | Main Pass Area | 118 | 22797 | Participation Agreement | August 11, 2005 | Hunt Petroleum (AEC), Inc. | PetroQuest Energy, L.L.C. | Aug 11, 2005 AGMT W/PETROQUEST & ASSIGNMENTS |
| 0295217 | Main Pass Area | 118 | 22797 | Participation Agreement | August 11, 2005 | Hunt Petroleum (AEC), Inc. | Rosetta Resources Offshore, LLC | Aug 11, 2005 AGMT W/ROSETTA & ASSIGNMENTS |
| 0295216 | Main Pass Area | 118 | 22797 | Facility Sharing Agreement | July 3, 2006 | Hunt Petroleum (AEC), Inc., et al | Hunt Petroleum (AEC), Inc., et al | Jul 3, '06 Incl. Measrmnt & Alloc Agmt 11/14/07 |

**EXHIBIT A-1**

-37-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0277245 | Main Pass Area | 118 | 28217 | Right-Of-Way | October 31, 2006 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 28217, Segment 15811 |
| 0323989 | Main Pass Area | 118 | 22797 | Production Handling Agreement | August 1, 2007 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | MP 114 to 118 |
| 0317495 | Main Pass Area | 118 | 22797 | Measurement and Allocation Agreement | November 14, 2007 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | |
| 0317474 | Main Pass Area | 118 | 22797 | Production Handling Agreement | November 1, 2008 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | MP 125 to 118 |
| 0317474 | Main Pass Area | 118 | 22797 | Production Handling Agreement | November 1, 2008 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | Only applies to MP 29, 114 & 118 |
| 0417466 | Main Pass Area | 118 | 22797 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| Pending | Main Pass Area | 118 | Pending | Right-Of-Way (Pending) | December 1, 2010 | Bureau of Ocean Energy Management, Regulation and Enforcement | XTO Offshore Inc. | ROW OCS-G (Pending) SEGMENT 16342; ROW No. to be assigned |
| 0409199 | Main Pass Area | 118 | 22797 | Sales and Conveyance Agreement | December 10, 2010 | Chevron Pipe Line Company | XTO Offshore Inc. | MP 127 SSTI |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0409295 | Main Pass Area | 118 | 22797 | Letter Agreement | January 11, 2011 | W&T Offshore Inc. | XTO Offshore Inc. | To acquire a portion of ROW OCS-G 11727, Seg 8985 |
| C0410589 | Main Pass Area | 118 | 22797 | Boarding Agreement | March 1, 2011 | XTO Offshore Inc. | Odyssey Pipeline L.L.C. | 1-Mar-11 |
| C0410663 | Main Pass Area | 118 | 22797 | Offshore Connection Agreement | March 1, 2011 | XTO Offshore Inc., et al | Odyssey Pipeline L.L.C. | 1-Mar-11 |
| 0417463 | Main Pass Area | 118 | 22797 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| 0283355 | Main Pass Area | 119 | 31438 | Lease | March 1, 2008 | United States of America | LLOG Exploration Offshore Inc. | 1-Mar-08 |
| 0297835 | Main Pass Area | 119 | 31438 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore Inc. | XTO Offshore Inc., et al | 1-Mar-09 |
| 0297980 | Main Pass Area | 119 | 31438 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore Inc., et al | XTO Offshore Inc., et al | See BS 25 Federal Lease Folder |
| | | | | | | | | |
| 0266623 | Main Pass Area | 125 | 25019 | Lease | July 1, 2003 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-03 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294625 | Main Pass Area | 125 | 25019 | Participation Agreement | February 28, 2008 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore Inc. | Feb 28, 2008 (Include Operating Agmt) |
| 0294626 | Main Pass Area | 125 | 25019 | Joint Operating Agreement | February 28, 2008 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore Inc. | |
| 0317474 | Main Pass Area | 125 | 25019 | Production Handling Agreement | November 1, 2008 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | Only applies to MP 29, 114 & 118 |
| 0417466 | Main Pass Area | 125 | 25019 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| 0417463 | Main Pass Area | 125 | 25019 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| 0314026 | Main Pass Area, South & East Addition | 179 | 33127 | Lease | July 1, 2009 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-09 |
| | | | | | | | | |
| 0294987 | Ship Shoal Area | 71 | 12347 | Participation Agreement & JOA | October 6, 2003 | PetroQuest Energy, L.L.C. | Hunt Petroleum (AEC) Inc., et al | October 6, 2003 (Includes Operating Agmt) |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294986 | Ship Shoal Area | 71 | 12347 | Production Handling Agreement | October 6, 2003 | PetroQuest Energy, L.L.C. | PetroQuest Energy, L.L.C., et al | 6-Oct-03 |
| | | | | | | | | |
| 0276280 | Ship Shoal Area | 80 | 9330 | Right-Of-Way | December 8, 1987 | United States of America, Department of Interior, Minerals Management Service | Samedan Oil Corporation | ROW OCS-G 9330 Segment 8204 |
| 0296277 | Ship Shoal Area | 79 | 15277 | Lease | August 1, 1995 | United States of America | Enron Oil & Gas Company | 1-Aug-95 |
| 0295146 | Ship Shoal Area | 79 | 15277 | Farmout Agreement | June 14, 2000 | EOG Resources Inc. | PetroQuest Energy One, L.L.C. | June 14, 2000 EOG Farmout |
| 0295144 | Ship Shoal Area | 79 | 15277 | Participation Agreement | July 15, 2000 | PetroQuest Energy One, L.L.C. | LLOG Exploration & Production Company | Jul 15, '00 Includes Operating Agmt |
| 0295145 | Ship Shoal Area | 79 | 15277 | Joint Operating Agreement | July 15, 2000 | PetroQuest Energy One, L.L.C. | LLOG Exploration & Production Company | Jul 15, '00 Includes Operating Agmt |
| 0276279 | Ship Shoal Area | 79 | 23713 | Right-Of-Way | May 29, 2002 | United States of America, Department of Interior, Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 23713 Segment 13737 |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276278 | Ship Shoal Area | 79 | 23712 | Right-Of-Way | May 29, 2002 | United States of America, Department of Interior, Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 23712 Segment 13736 |
| 0418821 | Ship Shoal Area | 79 | 15277 | Purchase and Sale Agreement | April 15, 2003 | Noble Energy, Inc., et al | LLOG Exploration Offshore, Inc., et al | Purchase of SS 80 "A" |
| 0417942 | Ship Shoal Area | 79 | 15277 | Purchase and Sale Agreement | April 1, 2004 | LLOG Exploration Company, L.L.C., et al | Hunt Petroleum Corporation | Dated 7/9/04, effective 4/1/04 |
| | | | | | | | | |
| | | | | | | | | |
| 0239135 | Ship Shoal Area | 188 | 22712 | Lease | May 1, 2001 | United States of America | Aviara Energy Corporation | |
| 0294599 | Ship Shoal Area | 188 | 22712 | Purchase and Sale Agreement, as amended (XTO reserves all rights reserved by it under this Agreement, as amended 4-1-05, as to depths from 17,000' to 100,000' subsea) | January 22, 2002 | Aviara Energy Corporation | EEX Corporation | Deep Rights; 17,000 to 100,000' subsea |

EXHIBIT A-1                                          -42-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418795 | Ship Shoal Area | 188 | 22712 | Unit Agreement #754305002 | March 1, 2005 | ExxonMobil Corporation | Newfield Exploration Gulf Coast Inc., et al | #754305002; S. Timbalier Block 168 Unit |
| 0294600 | Ship Shoal Area | 188 | 22712 | Participation Agreement | March 21, 2005 | Hunt Petroleum (AEC), Inc. | Choice Exploration, Inc. | Dated 3/21/05, effective 3/1/05 |
| 0294601 | Ship Shoal Area | 188 | 22712 | Operating Agreement | March 21, 2005 | Hunt Petroleum (AEC), Inc. | Choice Exploration, Inc. | Dated 3/21/05, effective 3/1/05 |
| 0266437 | Ship Shoal Area | 188 | 26977 | Right-of-Way | May 8, 2006 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 26977, Segment 15614 |
| | | | | | | | | |
| | | | | | | | | |
| 0265449 | Ship Shoal Area, South Addition | 247 | 1028 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0418811 | Ship Shoal Area, South Addition | 247 | 1028 | Unit Operating Agreement, as amended | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | June 10, 1966 - SEE SS 271 UNIT OA |
| 0418801 | Ship Shoal Area, South Addition | 247 | 1028 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | Unit #14-08-0001-8784 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418847 | Ship Shoal Area, South Addition | 247 | 1028 | Ownership Agreement | August 17, 1978 | CNG Producing Company | Columbia Gas Development Corporation, et al | "F" Platform |
| 0419113 | Ship Shoal Area, South Addition | 247 | 1028 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |
| 0418811 | Ship Shoal Area, South Addition | 247 | 1028 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0265446 | Ship Shoal Area, South Addition | 248 | 1029 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0418811 | Ship Shoal Area, South Addition | 248 | 1029 | Unit Operating Agreement, as amended | June 10, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | June 10, 1966 - SEE SS 271 UNIT OA |

EXHIBIT A-1

-44-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418801 | Ship Shoal Area, South Addition | 248 | 1029 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418847 | Ship Shoal Area, South Addition | 248 | 1029 | Ownership Agreement | August 17, 1978 | CNG Producing Company | Columbia Gas Development Corporation, et al | "F" Platform |
| 0419113 | Ship Shoal Area, South Addition | 248 | 1029 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | January 28, 1981 - Gas Balancing Agmt |
| 0418811 | Ship Shoal Area, South Addition | 248 | 1029 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0265445 | Ship Shoal Area, South Addition | 249 | 1030 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation, et al | 1-Jun-62 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418811 | Ship Shoal Area, South Addition | 249 | 1030 | Unit Operating Agreement, as amended | June 10 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | June 10 1966 - SEE SS 271 UNIT OA |
| 0418801 | Ship Shoal Area, South Addition | 249 | 1030 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418838 | Ship Shoal Area, South Addition | 249 | 1030 | Farmout Agreement | April 5, 1972 | Forest Oil Corporation, et al | Pelto Oil Company, et al | April 5, 1972 - Pelto, et al (also covers SS 270) |
| 0419113 | Ship Shoal Area, South Addition | 249 | 1030 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |
| 0418811 | Ship Shoal Area, South Addition | 249 | 1030 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265448 | Ship Shoal Area, South Addition | 270 | 1037 | Lease | June 1. 1962 | United States of America | Forest Oil Corporation, et al | June 1. 1962 |
| 0418811 | Ship Shoal Area, South Addition | 270 | 1037 | Unit Operating Agreement, as amended | June 10. 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | June 10. 1966 - SEE SS 271 UNIT OA |
| 0418801 | Ship Shoal Area, South Addition | 270 | 1037 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418838 | Ship Shoal Area, South Addition | 270 | 1037 | Farmout Agreement | April 5, 1972 | Forest Oil Corporation, et al | Pelto Oil Company, et al | April 5, 1972 - Pelto, et al (also covers SS 249) |
| 0419113 | Ship Shoal Area, South Addition | 270 | 1037 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418811 | Ship Shoal Area, South Addition | 270 | 1037 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| 0265450 | Ship Shoal Area, South Addition | 271 | 1038 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation, et al | 1-Jun-62 |
| 0418811 | Ship Shoal Area, South Addition | 271 | 1038 | Unit Operating Agreement, as amended | June 10, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | 10-Jun-66 |
| 0418801 | Ship Shoal Area, South Addition | 271 | 1038 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418848 | Ship Shoal Area, South Addition | 271 | 1038 | Farmout Agreement | September 3, 1974 | Forest Oil Corporation, et al | Columbia Gas Development Corp., et al | September 3, 1974 Forest - CGDC |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419113 | Ship Shoal Area, South Addition | 271 | 1038 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |
| 0418811 | Ship Shoal Area, South Addition | 271 | 1038 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0266626 | South Marsh Island Area | 40 | 13607 | Lease | August 1, 1992 | United State of America | Shell Offshore Inc. | 1-Aug-92 |
| 0294629 | South Marsh Island Area | 40 | 13607 | Operating Agreement, as revised | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | SM 40/41 Shallow Rights - revised 6-1-03 |
| 0294629 | South Marsh Island Area | 40 | 13607 | Participation Agreement & JOA, as amended | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | Feb. 24, 2003 (INCLUDES SM 40 OPER AGMT) |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294621 | South Marsh Island Area | 40 | 13607 | Joint Area Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P., et al | June 1, 2003 (Includes OA SM 40/41 Deep Rights) |
| 0294629 | South Marsh Island Area | 40 | 13607 | Operating Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | SM 40/41 Deep Rights |
| 0295463 | South Marsh Island Area | 40 | 13607 | Platform Lease and Operations Agreement | June 30, 2003 | Apache Corporation | Hunt Petroleum (AEC), Inc. | JA" PF Lse & Opers Agmt- TERMINATED" but obligations survive under Joint Area Agreement Para 12. |
| 0417942 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0316161 | South Marsh Island Area | 40 | 13607 | Production Handling Agreement, as Ratified | September 1, 2004 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | Sept. 1, 2004  JA" PF SM 41" |
| 0266626 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | October 1, 2004 | Apache Corporation | Hunt Petroleum Corporation | October 1, 2004 APACHE Acquisition |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0316161 | South Marsh Island Area | 40 | 13607 | Production Handling Agreement, as amended | December 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Nippon Oil Exploration U.S.A. Limited | PHA SM 44 "C" - SM 40 "JA" |
| 0294629 | South Marsh Island Area | 40 | 13607 | Ratification and Amendment | April 1, 2008 | Hunt Petroleum (AEC), Inc., et al | Devon Energy Production Company, L.P. | Ratification of SM 44 "C" - SM 40 "JA" PHA for SM 40 C-2 / C2D Well |
| 0266626 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | January 1, 2010 | Nippon Oil Exploration U.S.A. Limited | XTO Offshore Inc., et al | January 1, 2010 (Acq Nippon Deep Rights SM 40/41) |
| | | | | | | | | |
| | | | | | | | | |
| 0266627 | South Marsh Island Area | 41 | 1192 | Lease | June 1, 1962 | United State of America | California Oil Company | 1-Jun-62 |
| 0294629 | South Marsh Island Area | 41 | 1192 | Participation Agreement & JOA, as amended | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | Feb. 24, 2003 (Includes SM 40 OA) |
| 0294629 | South Marsh Island Area | 41 | 1192 | Operating Agreement, as revised | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | SM 40/41 Shallow Rights - revised 6-1-03 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294621 | South Marsh Island Area | 41 | 1192 | Joint Area Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P., et al | June 1, 2003 (Includes OA SM 40/41 Deep Rights) |
| 0294629 | South Marsh Island Area | 41 | 1192 | Operating Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | SM 40/41 Deep Rights |
| 0417942 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0316161 | South Marsh Island Area | 41 | 1192 | Production Handling Agreement, as ratified | September 1, 2004 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | Sept. 1, 2004 JA" PF SM 41" |
| 0266626 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | October 1, 2004 | Apache Corporation | Hunt Petroleum Corporation | October 1, 2004 APACHE Acquisition |
| 0266626 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | January 1, 2010 | Nippon Oil Exploration U.S.A. Limited | XTO Offshore Inc., et al | January 1, 2010 (Acq Nippon Deep Rights SM 40/41) |
| | | | | | | | | |
| | | | | | | | | |

EXHIBIT A-1

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0278245 | South Marsh Island Area | 44 | 23840 | Lease | May 1, 2002 | United States of America | Devon Energy Production Company, L.P. | 1-May-02 |
| 0295304 | South Marsh Island Area | 44 | 23840 | Farmout Agreement | January 4, 2007 | Devon Energy Production Company, L.P. | Hunt Petroleum (AEC), Inc. | 4-Jan-07 |
| 0295305 | South Marsh Island Area | 44 | 23840 | Operating Agreement, as amended | January 4, 2007 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | 4-Jan-07 |
| 0295308 | South Marsh Island Area | 44 | 23840 | Participation Agreement, as amended | March 8, 2007 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | 8-Mar-07 |
| 0316099 | South Marsh Island Area | 44 | 23840 | Production Handling Agreement, as amended | December 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Nippon Oil Exploration U.S.A. Limited, et al | 1-Dec-07 |
| 0316099 | South Marsh Island Area | 44 | 23840 | Ratification and Amendment | April 1, 2008 | Hunt Petroleum (AEC), Inc., et al | Devon Energy Production Company, L.P. | Ratification of SM 44 "C" - SM 40 "JA" PHA for SM 40 C-2 / C2D Well |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295305 | South Marsh Island Area | 45 | 31353 | Operating Agreement, as amended | January 4, 2007 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | SM 44 JOA amended eff 2-1-08 to include SM 45 |
| 0215991 | South Marsh Island Area | 45 | 31353 | Lease | February 1, 2008 | United States of America | Hunt Petroleum (AEC), Inc. et al | 1-Feb-08 |
| | | | | | | | | |
| | | | | | | | | |
| 0340710 | South Marsh Island Area, South Addition | 109 | 24873 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |
| 0276089 | South Marsh Island Area, South Addition | 109 | 24873 | Lease | June 1, 2003 | United States of America | Hunt Petroleum (AEC), Inc., et al | 1-Jun-03 |
| 0294983 | South Marsh Island Area, South Addition | 109 | 24873 | Operating Agreement | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Cheyenne International Corporation, et al | 1-Jun-03 |

EXHIBIT A-1

-54-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276089 | South Marsh Island Area, South Addition | 109 | 24873 | Acquisition of Interest Letter Agreement | December 9, 2003 | CL&F Resources LP | Hunt Petroleum (AEC), Inc. | November 20, 2003 eff date (Acq of CL&F interest) |
| | | | | | | | | |
| | | | | | | | | |
| 0340710 | South Marsh Island Area, South Addition | 138 | 33616 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |
| 0331362 | South Marsh Island Area, South Addition | 138 | 33616 | Lease | June 1, 2010 | United States of America | Chieftain International (U.S.) Inc. | 1-Jun-10 |
| | | | | | | | | |
| | | | | | | | | |
| 0279702 | South Marsh Island Area, South Addition | 139 | 21106 | Lease | July 1, 1999 | United States of America | Chieftain International (U.S.) Inc. | |

EXHIBIT A-1

-55-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0340710 | South Marsh Island Area, South Addition | 139 | 21106 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |
| 0295340 | South Marsh Island Area, South Addition | 139 | 21106 | Joint Area Agreement, as amended | March 22, 2004 | Newfield Exploration Company, et al | Hunt Petroleum (AEC), Inc. | |
| 0419195 | South Marsh Island Area, South Addition | 139 | 21106 | Participation Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0295341 | South Marsh Island Area, South Addition | 139 | 21106 | Operating Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0314481 | South Marsh Island Area, South Addition | 139 | 21106 | Production Handling Agreement | July 27, 2005 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |

EXHIBIT A-1

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419647 | South Marsh Island Area, South Addition | 139 | 21106 | Letter Agreement | May 25, 2011 | McMoRan Oil & Gas, L.L.C. | XTO Offshore Inc., et al | SM 146 A-8ST Recompletion |
| | | | | | | | | |
| 0294392 & 0294343 | South Marsh Island Area, South Addition | 142 | 1216 | Operating Agreement, as amended | May 17, 1961 | Forest Oil Corporation | Hope Natural Gas Company, et al | Exhibit to Geophysical Exploration Agmt dated 5-17-61 (Non Unit) |
| 0265447 | South Marsh Island Area, South Addition | 142 | 1216 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294393 | South Marsh Island Area, South Addition | 142 | 1216 | Unit Operating Agreement | March 17, 1976 | Forest Oil Corporation | Columbia Gas Development Corporation, et al | 3/17/1976 Unit Operating Agreement survives Unit Termination |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0325391 | South Marsh Island Area, South Addition | 142 | 3441 | Right-Of-Way | August 26, 1977 | Minerals Management Service | Columbia Gulf Transmission Company | ROW OCS-G 3441 Segment 4733 (Columbia Gulf Acq) |
| 0331679 | South Marsh Island Area, South Addition | 142 | 1216 | Contract/Pipeline Connection and Operating Agreement | May 6, 1996 | Marathon Pipeline Company | Forest Oil Corporation, et al | A" OA & Pipeline Connection Contract" |
| 0265447 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | April 19, 1999 | Kerr-McGee Oil & Gas Corporation | Energy Resources MAQ, Inc. | April 19, 1999 effective January 1, 1998 (Acq of KMG A" PF Interest) |
| 0265447 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | June 16, 1999 | Aries Resources, L.L.C. | Aviara Energy Corporation, et al | June 16, 1999 effective April 1, 1998 (Aries Acq) |
| 0314146 | South Marsh Island Area, South Addition | 142 | 1216 | Production Handling Agreement | January 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Hunt Petroleum (AEC), Inc., et al | EI 312 "D" - SM 142 "A" |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0341611 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | October 1, 2009 | Eni Petroleum US, LLC | XTO Offshore Inc. | Oct. 1, 2009 (Acq of Eni Interest) |
| 0341720 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | February 4, 2010 | Columbia Gulf Transmission Company | XTO Offshore Inc. | Acq. ROW OCS-G 3441, Segment 4733 |
| 0294314 | South Marsh Island Area, South Addition | 142 | 1216 | Gas Balancing & Storage Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| 0283008 | South Marsh Island Area, South Addition | 146 | 9546 | Lease | July 1, 1988 | United States of America | Phillips Petroleum Company | |
| 0340710 | South Marsh Island Area, South Addition | 146 | 9546 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |

EXHIBIT A-1

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295340 | South Marsh Island Area, South Addition | 146 | 9546 | Joint Area Agreement, as amended | March 22, 2004 | Newfield Exploration Company, et al | Hunt Petroleum (AEC), Inc. | |
| 0419195 | South Marsh Island Area, South Addition | 146 | 9546 | Participation Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0295341 | South Marsh Island Area, South Addition | 146 | 9546 | Operating Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0277271 | South Marsh Island Area, South Addition | 146 | 26837 | Right-of-Way | May 31, 2005 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | |
| 0277272 | South Marsh Island Area, South Addition | 146 | 26838 | Right-of-Way | May 31, 2005 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | |

EXHIBIT A-1

-60-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0277273 | South Marsh Island Area, South Addition | 146 | 26839 | Right-of-Way | May 31, 2005 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | |
| 0314481 | South Marsh Island Area, South Addition | 146 | 9546 | Production Handling Agreement | July 27, 2005 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0314481 | South Marsh Island Area, South Addition | 146 | 9546 | Letter Agreement | July 1, 2008 | McMoRan Oil & Gas, L.L.C., et al | Hunt Petroleum (AEC), Inc. | SM 146 Assignment of Operating Rights |
| 0419647 | South Marsh Island Area, South Addition | 146 | 9546 | Letter Agreement | May 25, 2011 | McMoRan Oil & Gas, L.L.C. | XTO Offshore Inc., et al | SM 146 A-8ST Recompletion |
| | | | | | | | | |
| | | | | | | | | |
| 0276248 | South Pass | 42 & 43 | DACW29-2-81-37 | Easement | May 18, 1981 | The Secretary of the Army | Burrwood Gathering Company | |

**EXHIBIT A-1**

-61-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276231 | South Pass | 42 | SL 16869 | Lease | November 13, 2000 | State of Louisiana | IP Petroleum, Inc., et al | |
| 0276250 | South Pass | 42 & 43 | DACW29-2-01-16 | Easement | May 8, 2001 | The Secretary of the Army | Energy Development Corporation | |
| 0276246 | South Pass | 42 | SL 4300 | Subsurface Agreement | June 1, 2001 | State of Louisiana | Andex Resources, L.L.C., et al | |
| 0295086 | South Pass | 42 & 43 | SL 16869 & OCS-G 22781 | Participation Agreement | August 30, 2002 | Pure Resources, L.P. | Andex Resources, L.L.C., et al | |
| 0295095 | South Pass | 42 & 43 | SL 16869, 16870 & OCS-G 22781 | Operating Agreement | August 30, 2002 | LLOG Exploration & Production Company | Pure Resources, L.P., et al | |
| 0276247 | South Pass | 42 | SL 4279 | Surface Lease w/ Subsurface Agreement | September 3, 2002 | State of Louisiana | IP Petroleum, Inc., et al | |
| 0417942 | South Pass | 42 & 43 | SL 16860, 16870 & OCS-G 22781 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0278048 | South Pass | 42 & 43 | SL 4584 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0278049 | South Pass | 42 & 43 | SL 4585 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0278050 | South Pass | 42 & 43 | SL 4586 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |

EXHIBIT A-1

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0278051 | South Pass | 42 & 43 | SL 4587 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0278047 | South Pass | 42 & 43 | SL 576 | Water Bottom Lease | June 2, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0295095 | South Pass | 42 & 43 | SL 16869 & 16870 | 04 RA Voluntary Unit Agreement | October 19, 2005 | The State Mineral Board | Hunt Petroleum (AEC), Inc., et al | 04 RA VUA |
| 0314614 | South Pass | 42 & 43 | SL 16869, 16870 & OCS-G 22781 | Production Handling Agreement | February 1, 2007 | Hunt Petroleum (AEC), Inc. | Andex Resources, L.L.C., et al | |
| 0276253 | South Pass | 42 & 43 | SL 3011 | Surface/ Subsurface Lease | October 17, 2007 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| | | | | | | | | |
| 0276237 | South Pass | 43 | SL 16870 | Lease | November 13, 2000 | State of Louisiana | Energy Partners, Ltd. | |
| 0276236 | South Pass | 43 | 22781 | Lease | June 1, 2001 | United States of America | Andex Resources, L.L.C., et al | |
| 0295085 | South Pass | 43 | SL 16870 | Farmout Agreement | December 6, 2002 | Energy Partners, Ltd. | LLOG Exploration & Production Company | |
| | | | | | | | | |
| | | | | | | | | |

EXHIBIT A-1                                                          -63-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0340710 | Vermilion Area, South Addition | 264 | 33603 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward Obligation |
| 0340457 | Vermilion Area, South Addition | 264 | 33603 | Lease | July 1, 2010 | United States of America | XTO Offshore Inc. | 1-Jul-10 |
| | | | | | | | | |
| | | | | | | | | |
| 0265436 | Vermilion Area, South Addition | 313 | 1172 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | |
| 0419428 | Vermilion Area, South Addition | 313 | 1172 | Letter Agreement | May 12, 1994 | Columbia Gas Development Corporation | CNG Producing Company | Trade Agreement; VR 313 |
| 0419888 | Vermilion Area, South Addition | 313 | 1172 | Letter Agreement | August 16, 1995 | Columbia Gas Development Corporation | CNG Producing Company | Exchange of ORRIs |
| 0294347 | Vermilion Area, South Addition | 313 | 1172 | Participation Agreement | November 1, 2001 | Dominion Exploration & Production, Inc. | Aviara Energy Corporation | VR 313 "D" |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294351 | Vermilion Area, South Addition | 313 | 1172 | Operating Agreement | November 1, 2001 | Dominion Exploration & Production, Inc. | Aviara Energy Corporation | VR 313 "D" |
| 0322545 | Vermilion Area, South Addition | 313 | 1172 | Production Handling Agreement | January 31, 2002 | Dominion Exploration & Production, Inc., et al | Dominion Exploration & Production, Inc. | VR 313 "D" - VR 313 "B" |
| 0322545 | Vermilion Area, South Addition | 313 | 1172 | Lease of Platform Space Agreement | June 21, 2007 | Dominion Exploration & Production, Inc., et al | Dominion Exploration & Production, Inc. | VR 313 "D" |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 0265437 | West Cameron Area | 485 | 2220 | Lease | February 1, 1973 | United States of America | Columbia Gas Development Corporation, et al | |
| 0419458 | West Cameron Area | 485 | 2220 | Production Payment Conveyance | March 25, 1973 | COLEVE, a Joint Venture | Columbia Gas Development Corporation | As supplemented and amended, including 10-12-90 |

**EXHIBIT A-1**

-65-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419455 | West Cameron Area | 485 | 2220 | Assignment of Interest in Oil & Gas Lease, Bill of Sale and Conveyance with Reservation of Overriding Royalty Subject to Production Payment | October 1, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| # Not Available | West Cameron Area | 485 | 2220 | Purchase and Sale Agreement | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| 0419456 | West Cameron Area | 485 | 2220 | Distribution and Assignment of Interests in Oil and Gas Leases, Bill of Sale & Conveyance Subject to Production Payment with Substitution of Obligor | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294364 | West Cameron Area | 485 | 2220 | Unit Agreement #7543-94008 | May 1, 1994 | Minerals Management Service | Columbia Gas Development Corporation | WC 507 Unit - Unit Agreement No. 7543-94008 |
| 0310077 | West Cameron Area | 485 | 2220 | Letter Agreement for Leak Testing | May 11, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | Leak test on 12" pipeline |
| 0310077 | West Cameron Area | 485 | 2220 | Sale Agreement | May 12, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | ROW OCS-G 2122E, Seg. 4289 - 12" Pipeline |
| 0310077 | West Cameron Area | 485 | 2220 | Letter Agreement for Cut and Cap | July 9, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | Cut & cap 16" pipeline |
| 0310077 | West Cameron Area | 485 | 2220 | Sale Agreement | July 9, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | Sale of 16" riser, meter & platform equipment |
| 0310077 | West Cameron Area | 485 | 2220 | Facilities Agreement | July 15, 2009 | Stingray Pipeline Company, L.L.C. | XTO Offshore Inc. | Interconnection - WC 485 "A" and WC 509 |
| 0308965 | West Cameron Area | 485 | 2122E | Right-of-Way | Date Unknown | Minerals Management Service | | ROW OCS-G 2122E, Seg. 4289 - 12" Pipeline |
| | | | | | | | | |
| | | | | | | | | |

EXHIBIT A-1

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419458 | West Cameron Area | 507 (N/2) | 2549 | Production Payment Conveyance | March 25, 1973 | COLEVE, a Joint Venture | Columbia Gas Development Corporation | As supplemented and amended, including 10-12-90 |
| 0265443 | West Cameron Area | 507 (N/2) | 2549 | Lease | April 1, 1974 | United States of America | Forest Oil Corporation, et al | |
| 0419455 | West Cameron Area | 507 (N/2) | 2549 | Assignment of Interest in Oil & Gas Lease, Bill of Sale and Conveyance with Reservation of Overriding Royalty Subject to Production Payment | October 1, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| # Not Available | West Cameron Area | 507 (N/2) | 2549 | Purchase and Sale Agreement | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419456 | West Cameron Area | 507 (N/2) | 2549 | Distribution and Assignment of Interests in Oil and Gas Leases, Bill of Sale & Conveyance Subject to Production Payment with Substitution of Obligor | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| 0294364 | West Cameron Area | 507 (N/2) | 2549 | Unit Agreement #7543-94008 | May 1, 1994 | Minerals Management Service | Columbia Gas Development Corporation | WC 507 Unit - Unit Agreement No. 7543-94008 |
| 0294988 | West Cameron Area | 507 (N/2) | 2549 | Participation Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C-1 Well |
| 0294989 | West Cameron Area | 507 (N/2) | 2549 | Offshore Operating Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C Platform |
| | | | | | | | | |
| 0419458 | West Cameron Area | 507 (S/2) | 10594 | Production Payment Conveyance | March 25, 1973 | COLEVE, a Joint Venture | Columbia Gas Development Corporation | As supplemented and amended, including 10-12-90 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265453 | West Cameron Area | 507 (S/2) | 10594 | Lease | June 1, 1989 | United States of America | Columbia Gas Development Corporation | |
| 0419455 | West Cameron Area | 507 (S/2) | 10594 | Assignment of Interest in Oil & Gas Lease, Bill of Sale and Conveyance with Reservation of Overriding Royalty Subject to Production Payment | October 1, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| # Not Available | West Cameron Area | 507 (S/2) | 10594 | Purchase and Sale Agreement | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419456 | West Cameron Area | 507 (S/2) | 10594 | Distribution and Assignment of Interests in Oil and Gas Leases, Bill of Sale & Conveyance Subject to Production Payment with Substitution of Obligor | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| 0294364 | West Cameron Area | 507 (S/2) | 10594 | Unit Agreement #7543-94008 | May 1, 1994 | Minerals Management Service | Columbia Gas Development Corporation | WC 507 Unit - Unit Agreement No. 7543-94008 |
| 0294988 | West Cameron Area | 507 (S/2) | 10594 | Participation Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C-1 Well |
| 0294989 | West Cameron Area | 507 (S/2) | 10594 | Offshore Operating Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C Platform |
| 0316109 | West Cameron Area | 507 (S/2) | 10594 | Production Handling Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | PHA WC 507 "C" - WC 485 "A" |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Agreement for the Construction and Operation of the Calumet Gas Processing Plant | January 1, 1970 | Atlantic Richfield Company | Chevron Oil Corporation, et al | C&O Agreement |
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Restated and Amended Agreement between ANR Pipeline Company and the Owners of The Calumet Gas Processing Plant | March 1, 1997 | ANR Pipeline Company | Shell Western E&P Inc. | ANR/Calumet Plant Straddle Agreement |
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Restated and Amended Agreement between Trunkline Gas Company and the Owners of The Calumet Gas Processing Plant | March 1, 1997 | Trunkline Gas Company | Shell Western E&P Inc. | Trunkline/Calumet Plant Straddle Agreement |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | First Amendment to Restated and Amended Agreement between Trunkline Gas Company and the Owners of The Calumet Gas Processing Plant | July 1, 2007 | Enterprise Gas Processing, LLC | Enterprise Gas Processing , LLC | |
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Amendment of Agreement for the Construction of the Calumet Gas Processing Plant | August 7, 2009 | Enterprise Gas Processing, LLC | Apache Corporation, et al | |
| | | | | | | | | |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Agreement for the Construction and Operation of the Yscloskey Processing Plant | July 30, 1968 | Shell Oil Company | Getty Oil Company, et al | C&O Agreement |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Hydrocarbon Fractionation Agreement | July 30, 1968 | Shell Oil Company | Getty Oil Company, et al | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Hydrocarbon Fractionation Agreement | May 1, 1969 | Shell Oil Company | Getty Oil Company, et al | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Agreement of Settlement And Compromise | August 2, 2002 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Construction and Operating Agreement | April 1, 2003 | Dynegy Midstream Services, Limited Partnership | Anadarko E&P Company LP | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amended and Restated Straddle and Processing Agreement | April 1, 2003 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |

**EXHIBIT A-1**

-76-

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Agreement of Settlement And Compromise | April 1, 2003 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Second Amendment to Hydrocarbon Fractionation Agreement | August 1, 2003 | Enterprise Gas Processing, LLC | Apache Corporation, et al | |

**EXHIBIT A-1**

**EXHIBIT A-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF WELLS**

**BRETON SOUND BLOCK 28**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|----------|---------------|----------------|-----------|-------|---------------|---------|----------|-------------|--------|------|
| | SL 1999 | SL 1999 #50 | 50 | BRETON SOUND 20 | PLAQUEMINES | 17726205550000 | TEXAS PETROLEUM INVESTMENT CORPORATION | 401819 | PDP | OIL |

**BRETON SOUND BLOCK(s) 44/45/52/53**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|----------|---------------|----------------|-----------|-------|---------------|---------|----------|-------------|--------|------|
| | SL 15683 | TEX W RA SUA; SL 15683 #3 | 3 | BRETON SOUND 53 | PLAQUEMINES | 17726205310000 | CENTURY OFFSHORE | 401815 | PDP | GAS |
| | SL 15683 | TEX W RA SUA; SL 15683 #1 ALT | 1ALT | BRETON SOUND 53 | PLAQUEMINES | 17726205260000 | CENTURY OFFSHORE | 401976 | PDP | GAS |
| | SL 17675 | UV B RA VUA; SL 17675 #1 | 1 | BRETON SOUND 53 | PLAQUEMINES | 17726205510000 | CENTURY OFFSHORE | 401817 | PDP | GAS |
| | SL 3770 | SL 3770 #1 | 1 | BRETON SOUND 53 | PLAQUEMINES | 17726000010000 | CENTURY OFFSHORE | 401842 | SI | OIL |

**EXHIBIT A-2**

| SL 3770 | SL 3770 #1D | 1D | BRETON SOUND 53 | PLAQUEMINES | 17726000010000 | CENTURY OFFSHORE | 401843 | SI | OIL |
| SL 3770 | SL 3770 #7 | 7 | BRETON SOUND 53 | PLAQUEMINES | 17726201580000 | CENTURY OFFSHORE | 401821 | PDP | OIL |
| SL 3770 | SL 3770 #8 | 8 | BRETON SOUND 53 | PLAQUEMINES | 17726201630000 | CENTURY OFFSHORE | 401821 | PDP | OIL |
| SL 4772 | SL 4772 #1 | 1 | BRETON SOUND 53 | PLAQUEMINES | 17726003000000 | CENTURY OFFSHORE | 401970 | SI | OIL |

## EAST CAMERON BLOCK 178

## XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|----------|---------------|----------------|-----------|-------|---------------|---------|----------|-------------|--------|------|
| EC178D | OCS-G-27834 EC178 | OCS-G-27834 EC178 #D1STBP1 | #D1STBP1 | EAST CAMERON 185 | OFFSHORE LOUISIANA | 177034101202S01 | XTO OFFSHORE INC. | 401901 | PDP | GAS |

**Well name change from #1STBP1 is pending.**

## EUGENE ISLAND BLOCK 273D (EI 272/273/284/285 Unit)

## XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|----------|---------------|----------------|-----------|-------|---------------|---------|----------|-------------|--------|------|
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 B-01BP1 | B-01BP1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104114800S03 | MARINER ENERGY RESOURCES | 401903 | SI | GAS |
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 B-03 | B-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104116400S01 | MARINER ENERGY RESOURCES | 403386 | SI | GAS |
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 B-05A | B-05 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104116500D03 | MARINER ENERGY RESOURCES | 401911 | SI | GAS |
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 | B-05D | EUGENE ISLAND SA | Offshore Louisiana | 177104116500D02 | MARINER ENERGY RESOURCES | 401911 | SI | GAS |

**EXHIBIT A-2**

| | | B-05D | | 292 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EI273D | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 D-01 | D-01 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104155900S01 | MARINER RESOURCES | ENERGY | 401761 | PDP | GAS |
| EI273D | OCS-G-0987 EI 273 | OCS-G-0987 EI 273 D-02 | D-02 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158200S01 | MARINER RESOURCES | ENERGY | 401760 | PDP | GAS |
| EI273D | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 D-03 | D-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158300S01 | MARINER RESOURCES | ENERGY | 401905 | SI | GAS |
| EI273D | OCS-G-0986 EI 272 | OCS-G-0986 EI 272 D-04 | D-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158400D01 | MARINER RESOURCES | ENERGY | 401759 | SI | GAS |
| EI273D | OCS-G-0986 EI 272 | OCS-G-0986 EI 272 D-04D | D-04D | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158400D02 | MARINER RESOURCES | ENERGY | 401759 | PDP | GAS |

**EUGENE ISLAND BLOCKS 286/292/293/308/309 Unit**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EI287D | OCS-G-00993 EI 286 | OCS-G-00993 EI 286 D-09ST | D-09ST | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104002202S01 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-01 | D-01 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104000100S02 | MARINER (FOREST OIL) | ENERGY | 403251 | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-02 | D-02 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104000400S01 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-03 | D-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104000800S03 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-04 | D-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001200S01 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-05 | D-05 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001400S01 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-07 | D-07 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001500S01 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-08 | D-08 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001900S01 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-011A | D-11A | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104100800D03 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-01A | B-01A | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000200D03 | MARINER RESOURCES | ENERGY | 401909 | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-02 | B-02 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000500S01 | MARINER RESOURCES | ENERGY | 401913 | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-03 | B-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000600S01 | MARINER RESOURCES | ENERGY | 18076 (HUNT) | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-03ST1 | B-03ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000601S02 | MARINER RESOURCES | ENERGY | 401910 | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-04 | B-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001200S01 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-05ST1 | B-05ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001300S03 | MARINER RESOURCES | ENERGY | 401911 | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-06 | B-06 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001400S01 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-07 | B-07 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001500S01 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-08 | B-08 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001600S01 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-9ST1 | B-09ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065300D02 | MARINER RESOURCES | ENERGY | 401828 | TA | OIL |

**EXHIBIT A-2**

| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-10 | B-10 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065400D02 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-11ST1 | B-11ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065500D03 | MARINER RESOURCES | ENERGY | 401914 | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-12ST1 | B-12ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065000D02 | MARINER RESOURCES | ENERGY | 401915 | TA | OIL |
| EI287D | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 D-12 | D-12 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104101600D04 | MARINER RESOURCES | ENERGY | 401912 | TA | OIL |
| EI287D | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 D-6 | D-6 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102004100S04 | MARINER (FOREST OIL) | ENERGY | 401916 | TA | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-01 | G-01 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104045600D03 | MARINER RESOURCES | ENERGY | 401928 | SI | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-01B | G-01B | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104045600D04 | MARINER RESOURCES | ENERGY | 401928 | PDP | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-02ST | G-02ST | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104049801S01 | MARINER RESOURCES | ENERGY | 401929 | PDP | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-04 | G-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104050700S01 | MARINER RESOURCES | ENERGY | 401930 | PDP | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-07 | G-07 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104049300S01 | MARINER RESOURCES | ENERGY | | SI | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-08 | G-08 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104048900D05 | MARINER RESOURCES | ENERGY | 403325 | PDP | GAS |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-09 | G-09 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104054100S01 | MARINER RESOURCES | ENERGY | 401931 | SI | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-11ST | G-11ST | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104053001D02 | MARINER RESOURCES | ENERGY | | SI | OIL |

**EXHIBIT A-2**

| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-13 | G-13 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104052300D01 | MARINER ENERGY RESOURCES | 401932 | SI | OIL |

## EUGENE ISLAND BLOCK 309J (EI 309/313)

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| EI309J | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 J-01ST | J-01ST | EUGENE ISLAND SA 292 | OFFSHORE LOUISIANA | 177104129701D02 | XTO OFFSHORE INC. | 401831 | SI | GAS |
| EI309J | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 J-02 | J-02 | EUGENE ISLAND SA 292 | OFFSHORE LOUISIANA | 177104130600S01 | XTO OFFSHORE INC. | 401937 | SI | OIL |
| EI309J | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 J-03 | J-03 | EUGENE ISLAND SA 292 | OFFSHORE LOUISIANA | 177104150300S02 | XTO OFFSHORE INC. | 401938 | SI | OIL |
| EI309J | OCS-G-2608 EI 313 | OCS-G-2608 EI 313 J-04 | J-04 | EUGENE ISLAND SA 330 | OFFSHORE LOUISIANA | 177104150600S01 | XTO OFFSHORE INC. | 401940 | SI | GAS |

## EUGENE ISLAND BLOCK 311/312

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| EI312D | OCS-G-22679 EI 312 | OCS-G-22679 EI 312 D-01 | D-01 | EUGENE ISLAND SA 333 | OFFSHORE LOUISIANA | 177104160900S01 | XTO OFFSHORE INC. | 401793 | PDP | GAS |
| EI312D | OCS-G-22679 EI 312 | OCS-G-22679 EI 312 D-02 | D-02 | EUGENE ISLAND SA 333 | OFFSHORE LOUISIANA | 177104161900S01 | XTO OFFSHORE INC. | 401794 | PDP | GAS |
| EI312D | OCS-G-27918 EI 311 | OCS-G-27918 EI 311 D-03 | D-03 | EUGENE ISLAND SA 333 | OFFSHORE LOUISIANA | 177104162000S01 | XTO OFFSHORE INC. | 401795 | SI | GAS |

**EXHIBIT A-2**

**EUGENE ISLAND BLOCK(s) 314 & 315**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| EI309G | OCS-G-1981 EI 314 | OCS-G-1981 EI 314 G-03 | G-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104048200S02 | MARINER ENERGY RESOURCES | 401941 | SI | OIL |
| EI309G | OCS-G-1981 EI 314 | OCS-G-1981 EI 314 G-05ST2 | G-05ST2 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104051402S01 | MARINER ENERGY RESOURCES | 401942 | SI | OIL |
| EI309G | OCS-G-1981 EI 314 | OCS-G-1981 EI 314 G-06 | G-06 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104051800S02 | MARINER ENERGY RESOURCES | 401943 | SI | OIL |
| EI309G | OCS-G-1982 EI 315 | OCS-G-1982 EI 315 G-12 | G-12 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104046600S01 | MARINER ENERGY RESOURCES | 401944 | SI | GAS |

**HIGH ISLAND BLOCK 34**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| HI34B | OCS-G-20655 HI 34 | OCS-G-20655 HI 34 B-01 | B-01 | HIGH ISLAND 22 | OFFSHORE TEXAS | 427084055800S01 | XTO OFFSHORE INC. | 400406 | PDP | GAS |

**HIGH ISLAND BLOCK(S) A-365/A-376**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-01 | A-01 | High Island A376 | Offshore Louisiana | 427114052200S01 | APACHE CORPORATION | 400401 | PDP | OIL |

EXHIBIT A-2

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-02ST1 | A-02ST1 | High Island A376 | Offshore Louisiana | 427114052601S03 | APACHE CORPORATION | 403573 | PDP | GAS |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-03ST | A-03ST | High Island A376 | Offshore Louisiana | 427114052701S01 | APACHE CORPORATION | | SI | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-03DST | A-03STD | High Island A376 | Offshore Louisiana | 427114052700D03 | APACHE CORPORATION | 18323 (Hunt #) | PDP | GAS |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-04 | A-04 | High Island A376 | Offshore Louisiana | 427114053700S01 | APACHE CORPORATION | 402732 | SI | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-05 | A-05 | High Island A376 | Offshore Louisiana | 427114053500S01 | APACHE CORPORATION | | SI | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-06 | A-06 | High Island A376 | Offshore Louisiana | 427114053100S02 | APACHE CORPORATION | 18315 (Hunt #) | TA | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-07 | A-07 | High Island A376 | Offshore Louisiana | 427114054100S02 | APACHE CORPORATION | 403566 | PDP | GAS |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-08 | A-08 | High Island A376 | Offshore Louisiana | 427114054800S03 | APACHE CORPORATION | 403558 | PDP | GAS |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-09 | A-09 | High Island A376 | Offshore Louisiana | 427114054400S03 | APACHE CORPORATION | 403574 | SI | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-10 | A-10 | High Island A376 | Offshore Louisiana | 427114055200S01 | APACHE CORPORATION | 403559 | SI | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-11 | A-11 | High Island A376 | Offshore Louisiana | 427114055000S01 | APACHE CORPORATION | | SI | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-12 | A-12 | High Island A376 | Offshore Louisiana | 427114055600S01 | APACHE CORPORATION | 403560 | PDP | GAS |

**EXHIBIT A-2**

| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-12D | A-12D | High Island A376 | Offshore Louisiana | 427114055600D03 | APACHE CORPORATION | 403561 | SI | GAS |
|---|---|---|---|---|---|---|---|---|---|---|
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-13ST1 | A-13ST1 | High Island A376 | Offshore Louisiana | 427114055801S01 | APACHE CORPORATION | 403562 | PDP | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-14ST2 | A-14ST2 | High Island A376 | Offshore Louisiana | 427114056002S02 | APACHE CORPORATION | 403155 | PDP | GAS |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-16 | A-16 | High Island A376 | Offshore Louisiana | 427114056700S01 | APACHE CORPORATION | | PDP | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-17 | A-17 | High Island A376 | Offshore Louisiana | 427114057200S02 | APACHE CORPORATION | 403567 | SI | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-18 | A-18 | High Island A376 | Offshore Louisiana | 427114057300S02 | APACHE CORPORATION | 403568 | SI | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-19 | A-19 | High Island A376 | Offshore Louisiana | 427114057400S03 | APACHE CORPORATION | 403154 | PDP | GAS |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-20 | A-20 | High Island A376 | Offshore Louisiana | 427114057500S01 | APACHE CORPORATION | | TA | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-21 | A-21 | High Island A376 | Offshore Louisiana | 427114057600S03 | APACHE CORPORATION | 403563 | PDP | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-22 | A-22 | High Island A376 | Offshore Louisiana | 427114057700S01 | APACHE CORPORATION | 403569 | SI | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-24 | A-24 | High Island A376 | Offshore Louisiana | 427114066300S02 | APACHE CORPORATION | 403564 | PDP | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-25 | A-25 | High Island A376 | Offshore Louisiana | 427114066500S01 | APACHE CORPORATION | 400402 | PDP | OIL |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-01 | B-01 | High Island A376 | Offshore Louisiana | 427114068700S03 | APACHE CORPORATION | 403570 | PDP | OIL |

EXHIBIT A-2

-86-

| Platform | Lease Block | Long Name | Well | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|----------|-------------|-----------|------|-----------|-------|---------------|---------|----------|-------------|--------|------|
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-02BP1 | | B-02BP1 | High Island A376 | Offshore Louisiana | 427114068900S03 | APACHE CORPORATION | 403575 | SI | GAS |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-03ST1 | | B-03ST1 | High Island A376 | Offshore Louisiana | 427114078701S02 | APACHE CORPORATION | 403571 | PDP | GAS |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-04ST1 | | B-04ST1 | High Island A376 | Offshore Louisiana | 427114079001S01 | APACHE CORPORATION | | SI | GAS |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-05 | | B-05 | High Island A376 | Offshore Louisiana | 427114079600S01 | APACHE CORPORATION | | SI | GAS |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-01 | | C-01 | High Island A376 | Offshore Louisiana | 427114088900S01 | APACHE CORPORATION | 403541 | PDP | OIL |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-02 | | C-02 | High Island A376 | Offshore Louisiana | 427114089600 | APACHE CORPORATION | 403109 | PDP | OIL |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-03 | | C-03 | High Island A376 | Offshore Louisiana | 427114089500 | APACHE CORPORATION | 403145 | TA | OIL |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-04 | | C-04 | High Island A376 | Offshore Louisiana | 427114089400 | APACHE CORPORATION | 403146 | PDP | OIL |

**HIGH ISLAND BLOCK A-554**

**XTO OFFSHORE INC.**

| Platform | Lease Block | / | Long Name | Well | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|----------|-------------|---|-----------|------|-----------|-------|---------------|---------|----------|-------------|--------|------|

**EXHIBIT A-2**

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HI554A | OCS-G-21356 HI A554 | OCS-G-21356 HI A554 A-01D | A-01D | HI A552 | Offshore Louisiana | 427094110400D02 | HUNT OIL COMPANY | 402723 | PDP | GAS |
| HI554A | OCS-G-21356 HI A554 | OCS-G-21356 HI A554 A-01 | A-01 | HI A552 | Offshore Louisiana | 427094110400D01 | HUNT OIL COMPANY | 402724 | PDP | GAS |

## MAIN PASS BLOCK 29

## XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MP029 | OCS-G-27196 MP29 | OCS-G-27196 MP29 #1 | | #I | MAIN PASS 29 | OFFSHORE LOUISIANA | 177254081901S01 | XTO OFFSHORE INC. | 401945 | PDP | GAS |

## MAIN PASS BLOCK 94
## XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP94 #5 | | #5 | MAIN PASS 094 | Offshore Louisiana | 177254081800S01 | W&T OFFSHORE, INC. | 401786 | PDP | GAS |
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP 94 #4ST | | #4ST | MAIN PASS 094 | Offshore Louisiana | 177254072400S01 | W&T OFFSHORE, INC. | 401785 | PDP | GAS |

## MAIN PASS BLOCK 101/106

## XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|

EXHIBIT A-2

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-01 | B-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254074600S01 | XTO OFFSHORE INC. | 401801 | PDP | GAS |
| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-02 | B-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254075100S01 | XTO OFFSHORE INC. | 401802 | PDP | GAS |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-01 | D-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076000S01 | XTO OFFSHORE INC. | 401948 | TA | OIL |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-02 | D-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076100S02 | XTO OFFSHORE INC. | 401949 | PDP | GAS |
| MP101D | OCS-G-23967 MP106 | OCS-G-23967 MP106 D-03ST1 | D-03ST1 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077101S01 | XTO OFFSHORE INC. | 401950 | PDP | GAS |
| MP101D | OCS-G-03798 MP102 | OCS-G-03798 MP102 D-04A | D-04A | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077400S02 | XTO OFFSHORE INC. | 401837 | TA | GAS |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-05 | D-05 | MAIN PASS 93 | OFFSHORE LOUISIANA | 177254078000S01 | XTO OFFSHORE INC. | 401803 | PDP | OIL |
| MP101E (#6) | OCS-G-22792 MP101 | OCS-G-22792 MP101 E-01 (#6) | E-01 (#6) | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254079000D03 | XTO OFFSHORE INC. | 401834 | PDP | GAS |

**MAIN PASS BLOCK 101**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT A-2**

| MP101B | OCS-G 22792 MP101 | OCS-G 22792 MP101B3 | B3 | MAIN PASS 101 | Offshore Louisiana | 177254081000S01 | CENTURY EXPLORATION NEW ORLEANS, INC. | 401946 | PDP | GAS |

## MAIN PASS BLOCK 109

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP109C | OCS-G-22794 MP109 | OCS-G-22794 MP109 C-1 | C-01 | MAIN PASS 109 | Offshore Louisiana | 177254076700S03 | W&T OFFSHORE, INC. | 401952 | SI | GAS |
| MP109 D | OCS-G-22794 MP109 | OCS-G-22794 MP109 D-01ST00BP02 | D-01ST00BP02 | MAIN PASS 109 | Offshore Louisiana | 177254076802S02 | W&T OFFSHORE, INC. | 401953 | PDP | GAS |

## MAIN PASS BLOCK 112
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP112A | OCS-G-09707 MP 112 | OCS-G-09707 MP 112 A-01ST1 | A-01ST1 | MAIN PASS 112 | OFFSHORE LOUISIANA | 177254054301S02 | XTO OFFSHORE INC. | 401956 | PDP | OIL |
| MP112A | OCS-G-09707 MP 112 | OCS-G-09707 MP 112 A-02 | A-02 | MAIN PASS 112 | OFFSHORE LOUISIANA | 177254085400S01 | XTO OFFSHORE INC. | 401958 | PDP | GAS |
| MP No. 2 | OCS-G-09707 MP 112 | OCS-G-09707 MP 112 02 | 2 | MAIN PASS 112 | OFFSHORE LOUISIANA | 177254054400S02 | XTO OFFSHORE INC. | 401957 | SI | GAS |

**EXHIBIT A-2**

**MAIN PASS BLOCK 114**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP114 | OCS-G-27201 MP 114 | OCS-G-27201 MP 114 #1ST1 | #1ST1 | MAIN PASS 114 | OFFSHORE LOUISIANA | 177254084001S01 | XTO OFFSHORE INC. | 401959 | PDP | GAS |

**MAIN PASS BLOCK 116**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-01 | B-01 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254017600S03 | XTO OFFSHORE INC. | 401840 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-02 | B-02 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254018800S02 | XTO OFFSHORE INC. | 401961 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-04 | B-04 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254023500S01 | XTO OFFSHORE INC. | 401962 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-06 | B-06 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254052200S01 | XTO OFFSHORE INC. | 401963 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-07 | B-07 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254052300D02 | XTO OFFSHORE INC. | 401964 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-09 | B-09 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254083700 | XTO OFFSHORE INC. | 401965 | TA | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 #08 | #08 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254078600D03 | XTO OFFSHORE INC. | 401839 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 #08D | #08D | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254078600D04 | XTO OFFSHORE INC. | 401838 | SI | GAS |

**MAIN PASS BLOCK 118**

EXHIBIT A-2

-91-

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP118A | OCS-G 22797 MP 118 | OCS-G 22797 MP 118 A-01 | A-01 | MAIN PASS 118 | OFFSHORE LOUISIANA | 177254081100S01 | XTO OFFSHORE INC. | 401966 | PDP | GAS |

**MAIN PASS BLOCK 125**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP125B | OCS-G-25019 MP125 | OCS-G-25019 MP125 B-01 | B-01 | MAIN PASS 125 | OFFSHORE LOUISIANA | 177254084402S01 | XTO OFFSHORE INC. | 401968 | PDP | GAS |

**SOUTH MARSH ISLAND BLOCK 40/41**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01 | B-01 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074083600D01 | XTO OFFSHORE INC. | 401787 | SI | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01D | B-01D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074083600D02 | XTO OFFSHORE INC. | 401788 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-02ST | B-02ST | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074084901S01 | XTO OFFSHORE INC. | 401868 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-03 | B-03 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085300S01 | XTO OFFSHORE INC. | 401763 | PDP | OIL |

**EXHIBIT A-2**

| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04 | B-04 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085400D01 | XTO OFFSHORE INC. | 401887 | SI | OIL |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04D | B-04D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085400D02 | XTO OFFSHORE INC. | 401888 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04E | B-04E | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085400D03 | XTO OFFSHORE INC. | 401764 | PDP | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-05 | B-05 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085700D01 | XTO OFFSHORE INC. | 401865 | SI | GAS |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-05D | B-05D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085700D02 | XTO OFFSHORE INC. | 401889 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-06 | B-06 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074087600S01 | XTO OFFSHORE INC. | 401766 | PDP | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-07 | B-07 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089800D01 | XTO OFFSHORE INC. | 402019 | PDP | GAS |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-07D | B-07D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089800D02 | XTO OFFSHORE INC. | 402967 | PDP | GAS |
| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02 | C-02 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089500D01 | XTO OFFSHORE INC. | 402020 | PDP | GAS |
| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02D | C-02D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089500D02 | XTO OFFSHORE INC. | 402608 | PDP | GAS |

**EXHIBIT A-2**

-93-

| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 01ST2 | JA-01ST2 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074063600S02 | XTO OFFSHORE INC. | 402021 | SI | GAS |
| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 02BP01 | JA-02BP01 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074069100S01 | XTO OFFSHORE INC. | 401866 | SI | GAS |

## SOUTH MARSH ISLAND BLOCK 44
### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI44C | OCS-G-23840 SMI 44 | OCS-G-23840 SMI 44 C-01 | C-01 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074088300D01 | XTO OFFSHORE INC. | 401804 | SI | GAS |
| SMI44C | OCS-G-23840 SMI 44 | OCS-G-23840 SMI 44 C-01D | C-01D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074088300D02 | XTO OFFSHORE INC. | 401805 | PDP | GAS |

## SOUTH MARSH ISLAND BLOCK 109
### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-01 | A-01 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091500S01 | XTO OFFSHORE INC. | 401812 | PDP | GAS |

EXHIBIT A-2

| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-02 | A-02 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091600D01 | XTO OFFSHORE INC. | 401813 | PDP | GAS |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-02D | A-02D | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091600D02 | XTO OFFSHORE INC. | 401895 | PDP | GAS |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-03 | A-03 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091700S01 | XTO OFFSHORE INC. | 401979 | SI | GAS |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-04 | A-04 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084092800S01 | XTO OFFSHORE INC. | 401814 | SI | GAS |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-05 | A-05 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084092900S01 | XTO OFFSHORE INC. | 401980 | PDP | GAS |

**SOUTH MARSH ISLAND BLOCK 139**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI146B | OCS-G-21106 SMI 139 | OCS-G-21106 SMI 139 B-01 | B-01 | SOUTH MARSH IS SA 146 | OFFSHORE LOUISIANA | 177084092300S01 | XTO OFFSHORE INC. | 401792 | SI | OIL |
| SMI146B | OCS-G-21106 SMI 139 | OCS-G-21106 SMI 139 B-02D | B-02D | SOUTH MARSH IS SA 146 | OFFSHORE LOUISIANA | 177084093501D02 | XTO OFFSHORE INC. | 401851 | SI | OIL |
| SMI146B | OCS-G-21106 SMI 139 | OCS-G-21106 SMI 139 B-02 | B-02 | SOUTH MARSH IS SA 146 | OFFSHORE LOUISIANA | 177084093501D01 | XTO OFFSHORE INC. | 401850 | SI | OIL |

**SOUTH MARSH ISLAND BLOCK 142/143**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT A-2**

| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-01 | A-01 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084014100S02 | XTO OFFSHORE INC. | 401981 | SI | OIL |
|---------|------|------|------|------|------|------|------|------|------|------|
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-02 | A-02 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084014800S02 | XTO OFFSHORE INC. | 401982 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-03 | A-03B | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084016500S03 | XTO OFFSHORE INC. | 401983 | PDP | GAS |
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-04 | A-04 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084017900D02 | XTO OFFSHORE INC. | 401984 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-05 | A-05 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084019200S01 | XTO OFFSHORE INC. | 401985 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-06C | A-06C | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084020300D06 | XTO OFFSHORE INC. | 401852 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-07A | A-07A | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084021000D04 | XTO OFFSHORE INC. | 401854 | SI | GAS |
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-08A | A-08A | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084023000D01 | XTO OFFSHORE INC. | 401856 | SI | GAS |
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-08D | A-08D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084023000D02 | XTO OFFSHORE INC. | 401857 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-09B | A-09B | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084026300S03 | XTO OFFSHORE INC. | 401986 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-10 | A-10 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084077000D01 | XTO OFFSHORE INC. | 403034 | TA | OIL |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-10D | A-10D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084077000D02 | XTO OFFSHORE INC. | 403035 | TA | GAS |

**EXHIBIT A-2**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-11 | A-11 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091100D01 | XTO OFFSHORE INC. | 401767 | | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-11D | A-11D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091100D02 | XTO OFFSHORE INC. | 401768 | | SI | GAS |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-01 | C-01 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084082900S01 | XTO OFFSHORE INC. | 401987 | | SI | GAS |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-02 | C-02 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084084201D01 | XTO OFFSHORE INC. | 401858 | | SI | OIL |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-03A | C-03A | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084085000D03 | XTO OFFSHORE INC. | 401890 | | PDP | OIL |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-03D | C-03D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084085000D02 | XTO OFFSHORE INC. | 401891 | | PDP | GAS |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-04B | C-04B | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084085400S03 | XTO OFFSHORE INC. | 403585 | | PDP | GAS |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-05 | C-05 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091301D01 | XTO OFFSHORE INC. | 401860 | | PDP | GAS |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-05D | C-05D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091301D02 | XTO OFFSHORE INC. | 401861 | | PDP | GAS |

**SOUTH PASS BLOCK 42/43**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT A-2**

-97-

| OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-01 | A-01 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404580000 | XTO OFFSHORE INC. | 401799 | 1PDP | OIL |
| OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-02 | A-02 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404590000 | XTO OFFSHORE INC. | 401800 | 1PDP | GAS |
| SL 16869 | SL 16869 #1 0-4RA VUA | 1 | SOUTH PASS 42 | OFFSHORE LOUISIANA | 17721205180000 | XTO OFFSHORE INC. | 401816 | 1PDP | GAS |
| SL 3011 | SL 3011 #001 SWD | #001 SWD | SOUTH PASS 42 | OFFSHORE LOUISIANA | 17721007480000 | XTO OFFSHORE INC. | 703024* | Active | SWD |

\* Burrwood Central Facility

## SHIP SHOAL BLOCK 71

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SS72J | OCS-G-12347 SS 71 | OCS-G-12347 SS 71 #1 | #1 | SHIP SHOAL 072 | Offshore Louisiana | 177114141000S04 | PETROQUEST ENERGY, LLC | 402022 | TA | GAS |

## SHIP SHOAL BLOCK 79/80
### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SS079A | OCS-G-15277 SS 79 | OCS G-15277 SS 79 A-02 | A-02 | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D03 | XTO OFFSHORE INC. | 401789 | PDP | OIL |
| SS079A | OCS-G-15277 SS 79 | OCS G-15277 SS 79 A-02D | A-02D | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D02 | XTO OFFSHORE INC. | 401893 | PDP | OIL |

**EXHIBIT A-2**

**SHIP SHOAL BLOCK 188**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 A-01 | A-01 | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114146000D 01 | XTO OFFSHORE INC. | 401797 | PDP | GAS |
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 A-01D | A-01D | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114146000D 02 | XTO OFFSHORE INC. | 403174 | PDP | GAS |
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 #02 | #02 | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114147500S 00 | XTO OFFSHORE INC. | 401796 | SI | GAS |
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 #02A | #02A | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114147500S 02 | XTO OFFSHORE INC. | 402541 | SI | GAS |

**SHIP SHOAL BLOCK(s) 247/248/249/270/271 (Unit)**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-02ST2 | F-02ST2 | SHIP SHOAL 246 | Offshore Louisiana | 177124019702S0 1 | ENI US OPERATING CO. INC. | 402065 | | PDP | OIL |

**EXHIBIT A-2**             -99-

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SS247F | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 F-08 | F-08 | SHIP SHOAL 246 | Offshore Louisiana | 177124022100S01 | ENI US OPERATING CO. INC. | | TA | GAS |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-10 | F-10 | SHIP SHOAL 246 | Offshore Louisiana | 177124022400S01 | ENI US OPERATING CO. INC. | | SI | GAS |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-14ST1 | F-14ST1 | SHIP SHOAL 246 | Offshore Louisiana | 177124022301S01 | ENI US OPERATING CO. INC. | 402066 | PDP | GAS |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-17ST | F-17ST | SHIP SHOAL 246 | Offshore Louisiana | 177124022901S02 | ENI US OPERATING CO. INC. | 402067 | PDP | OIL |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-18ST1 | F-18ST1 | SHIP SHOAL 246 | Offshore Louisiana | 177124023201S02 | ENI US OPERATING CO. INC. | 402068 | PDP | GAS |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-19 | F-19 | SHIP SHOAL 246 | Offshore Louisiana | 177124015000S01 | ENI US OPERATING CO. INC. | 403324 | SI | GAS |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-02 | D-02 | SHIP SHOAL 246 | Offshore Louisiana | 177124012000S01 | ENI US OPERATING CO. INC. | | SI | OIL |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-03BP2 | D-03BP2 | SHIP SHOAL 246 | Offshore Louisiana | 177124013100S02 | ENI US OPERATING CO. INC. | | TA | OIL |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-04 | D-04 | SHIP SHOAL 246 | Offshore Louisiana | 177124017100 | ENI US OPERATING CO. INC. | | TA | OIL |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-05 | D-05 | SHIP SHOAL 246 | Offshore Louisiana | 177124014200S02 | ENI US OPERATING CO. INC. | 401762 | PDP | OIL |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-06 | D-06 | SHIP SHOAL 246 | Offshore Louisiana | 177124015000 | ENI US OPERATING CO. INC. | | TA | OIL |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-07BP3 | D-07BP3 | SHIP SHOAL 246 | Offshore Louisiana | 177124015600S01 | ENI US OPERATING CO. INC. | | SI | GAS |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-08 | D-08 | SHIP SHOAL 246 | Offshore Louisiana | 177124015900S05 | ENI US OPERATING CO. INC. | 402069 | SI | GAS |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-09 | D-09 | SHIP SHOAL 246 | Offshore Louisiana | 177124016600S04 | ENI US OPERATING CO. INC. | 402070 | TA | GAS |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-10 | D-10 | SHIP SHOAL 246 | Offshore Louisiana | 177124017900 | ENI US OPERATING CO. INC. | | SI | GAS |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-11 | D-11 | SHIP SHOAL 246 | Offshore Louisiana | 177124018500S05 | ENI US OPERATING CO. INC. | | PDP | GAS |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-12ST3 | D-12ST3 | SHIP SHOAL 246 | Offshore Louisiana | 177124017903S01 | ENI US OPERATING CO. INC. | 402071 | SI | GAS |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-14BP1 | D-14BP1 | SHIP SHOAL 246 | Offshore Louisiana | 1771240192000 | ENI US OPERATING CO. INC. | | TA | GAS |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-15 | D-15 | SHIP SHOAL 246 | Offshore Louisiana | 177124020600S01 | ENI US OPERATING CO. INC. | | SI | GAS |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-16 | D-16 | SHIP SHOAL 246 | Offshore Louisiana | 177124021000S02 | ENI US OPERATING CO. INC. | 402072 | SI | GAS |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-17 | D-17 | SHIP SHOAL 246 | Offshore Louisiana | 177124020800S01 | ENI US OPERATING CO. INC. | 402073 | SI | GAS |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-18 | D-18 | SHIP SHOAL 246 | Offshore Louisiana | 177124021100S01 | ENI US OPERATING CO. INC. | 402074 | SI | GAS |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-19 | D-19 | SHIP SHOAL 246 | Offshore Louisiana | 177124021500S05 | ENI US OPERATING CO. INC. | 402080 | SI | GAS |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-20 | D-20 | SHIP SHOAL 246 | Offshore Louisiana | 177124022000S08 | ENI US OPERATING CO. INC. | 402075 | SI | GAS |
| SS248G | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 G-01 | G-01 | SHIP SHOAL 246 | Offshore Louisiana | 177124049500S01 | ENI US OPERATING CO. INC. | 402076 | PDP | GAS |

| SS248G | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 G-02 | G-02 | SHIP SHOAL 246 | Offshore Louisiana | 177124053000S01 | ENI US OPERATING CO. INC. | 402077 | | SI | GAS |
| SS248G | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 G-03 | G-03 | SHIP SHOAL 246 | Offshore Louisiana | 177124053300D02 | ENI US OPERATING CO. INC. | 402078 | | SI | GAS |
| | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 06 | 6 | SHIP SHOAL 246 | Offshore Louisiana | 177124062200 | ENI US OPERATING CO. INC. | 402079 | | TA | |

**VERMILION BLOCK 313**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-01 | D-01 | VERMILION 313 | Offshore Louisiana | 177064090000S02 | ENI US OPERATING CO. INC. | 402106 | | PDP | OIL |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-02ST1 | D-02ST1 | VERMILION 313 | Offshore Louisiana | 177064090201S05 | ENI US OPERATING CO. INC. | 402107 | | PDP | GAS |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-03 | D-03 | VERMILION 313 | Offshore Louisiana | 177064090300S02 | ENI US OPERATING CO. INC. | 402108 | | PDP | OIL |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-04BP1 | D-04BP1 | VERMILION 313 | Offshore Louisiana | 177064090501S02 | ENI US OPERATING CO. INC. | 402109 | | SI | OIL |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-05ST1 | D-05ST1 | VERMILION 313 | Offshore Louisiana | 177064090701S01 | ENI US OPERATING CO. INC. | 402110 | | PDP | OIL |

**WEST CAMERON BLOCK 485/507**

**XTO OFFSHORE INC.**

**EXHIBIT A-2**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-01ST2 | A-01ST2 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024010002S 01 | XTO OFFSHORE INC. | 402114 | | SI | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-02 | A-02 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024018200D 03 | XTO OFFSHORE INC. | 401796 | | SI | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-03EST1 | A-03EST1 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024020101D 03 | XTO OFFSHORE INC. | 402979 | | SI | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-03FST1 | A-03FST1 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024020101D 04 | XTO OFFSHORE INC. | 402117 | | SI | GAS |
| WC485 A | OCS-G-10594 WC 507 | OCS-G-10594 WC 507 A-04ST2 | A-04ST2 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024023002S 01 | XTO OFFSHORE INC. | 402118 | | PDP | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-05 | A-05 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024023500S 01 | XTO OFFSHORE INC. | 77163 (Hunt#) | | TA | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 485 A-06(B) ST2 | A-06(B)ST 2 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024024902S 03 | XTO OFFSHORE INC. | 401883 | | PDP | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-07(B) | A-07(B) | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024094900S 03 | XTO OFFSHORE INC. | 402119 | | TA | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC507 A-08(A) | A-08(A) | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024094400S 02 | XTO OFFSHORE INC. | 401781 | | PDP | GAS |

**EXHIBIT A-2**

| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-09E | A-09E | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024094700D 03 | XTO OFFSHORE INC. | 401885 | PDP | GAS |
|---------|---------|---------|---------|---------|---------|---------|---------|---------|---------|---------|
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-09F | A-09F | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024094700D 04 | XTO OFFSHORE INC. | 401886 | PDP | GAS |
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-10 | A-10 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024117800S 01 | XTO OFFSHORE INC. | 402115 | SI | GAS |
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-11 | A-11 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024118300S 02 | XTO OFFSHORE INC. | 402116 | SI | GAS |
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-11D | A-11D | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024118300S 03 | XTO OFFSHORE INC. | 402116 | SI | GAS |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-01(A) ST4 | B-01(A) ST4 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024098304S 02 | XTO OFFSHORE INC. | 402120 | PDP | GAS |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-02ST1 | B-02ST1 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024099001S 01 | XTO OFFSHORE INC. | 402121 | PDP | GAS |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-03ST1 | B-03ST1 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024100201X 01 | XTO OFFSHORE INC. | (no well #) | TA | GAS |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-04ST2 | B-04ST2 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024108202S 02 | XTO OFFSHORE INC. | 402122 | SI | GAS |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-05 | B-05 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024101200S 01 | XTO OFFSHORE INC. | 402123 | SI | GAS |

**EXHIBIT A-2**

| WC507B | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 B-06 | B-06 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024108300S 01 | XTO OFFSHORE INC. | 401780 | PDP | GAS |
| WC507C | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 C-01 | C-01 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024130300S 01 | XTO OFFSHORE INC. | 401782 | SI | GAS |

**EXHIBIT A-2**

# EXHIBIT B
## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## ASSIGNMENT AND BILL OF SALE
## DATED EFFECTIVE AS OF AUGUST 1, 2011,
## BETWEEN XTO OFFSHORE INC.
## AND DYNAMIC OFFSHORE RESOURCES, LLC

### EASEMENTS AND PERMITS

| XTO Ref # | Lease # | Eff Date | Description | WI Int. |
|-----------|---------|----------|-------------|---------|
| 0276247 | SL 4279 | 9/30/2002 | Surface Lease with Sub-Surface Agreement Block 42, South Pass Area, SL 16869 No. 1 Recorded 10/29/03 in Plaquemines Parish Book #1034, Page #60, File No. 02006520 | 100% |
| 0278047 | SL 576 | 6/2/2005 | Approximately 29,275 square feet of state owned water bottoms in Burrwood Bayou, in front of Section 46, Township 24 South Range 30 East, Plaquemines Parish, Louisiana. Recorded 6/15/05 at Plaquemines Parish Book #1095, Page #158, File No. 2005-00003264. (Commercial Water Bottom Lease) | 100% |
| 0276246 | SL 4300 | 12/30/2002 | Block 42, South Pass Area being within the boundary of State Mineral Lease No. 17199 and the bottomhole being situated on acreage described as Block 43, South Pass Area, Offshore Federal Waters, OCS-G 22781. Recorded 1/29/03 in Plaquemines Parish Book #1039, Page #106, File No. 03000773. | 100% |
| 0276253 | SL 3011 | 10/17/2007 | 3.0 acre circular area centered at point having a Lambert coordinates of X = 3,905,250 and Y = 172,757 which encircles SL 1922 SWD Well #3 located in T24S-R30E. Recorded 12/13/07 in Plaquemines Parish Book #1167, Page #880, File No. 2007-0008342. SWD Well name has changed to SL 3011 SWD #1. | 100% |

**EXHIBIT B-1**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

## DESCRIPTION OF RIGHTS-OF-WAY

**East Cameron 178** (XTO File Ref #3202-RW0003-00)
OCS-G 28533, Segment No. 17688, a right-of-way 200 feet wide for the installation, operation and maintenance of a 6 5/8-inch pipeline, 4.86 miles in length, to transport gas and condensate from Block 178, A Platform, to Block 184, 30-inch Subsea Tie-in, all located in East Cameron Area.

**High Island 34** (XTO File Ref #3264-RW0001-00)
OCS-G 24287, Segment No. 13955, a right-of-way 200 feet wide for the installation, operation and maintenance of an 8-5/8-inch pipeline, 1.83 miles in length, to transport gas and condensate from High Island Area Block 34 Caisson No. 1, Lease Number OCS-G 20655 through High Island Blocks 34 and 35 to a sub-sea tie in at High Island Block 21.

**Main Pass 29** (XTO File Ref #3074-RW0001-00)
OCS-G 28216, Segment No. 15810, a right-of-way 200 feet wide to install, operate and maintain a 6 5/8-inch pipeline, 6.80 miles in length, to transport bulk gas from Block 29 Well No. 1 thru blocks 116, 117 to Block 118 "A" all of which is located in the Main Pass Area.

**Main Pass 101** (XTO File Ref #3318-RW0001-00)
OCS-G 24687, Segment No. 14304, a right-of-way 200 feet wide for the operation and maintenance of a 8-inch pipeline, 20,102 feet in length, to transport bulk gas from a SSTI Manifold Main Pass Area, South and East Addition Block 101, OCS-G 22792, to Platform "A" Main Pass Area, South and East Addition, Block 102, OCS-G 3798.

**Main Pass 112** (XTO File Ref #3325-RW0001-00)
OCS-G 11738, Segment No. 9006, a right-of-way 200 feet in width, for a 6 5/8-inch pipeline, 6.77 miles in length, from Platform No. 2 in Main Pass Block 112, crossing Block 113 and Block 114, to a subsea tie-in with an 8-inch pipeline (Segment 9248) in Main Pass Block 117.

**Main Pass 116** (XTO File Ref #3326-RW0001-00)
OCS-G 12708, Segment No. 9248, a right-of-way 200 feet in width, for the operation and maintenance of an existing 8 5/8-inch pipeline, 3.31 miles in length, to transport bulk gas from an 8 5/8-inch subsea tie-in in Main Pass Block 117, to Platform B in Main Pass Block 116 , all in the Main Pass Area.

**Main Pass 116** (XTO File Ref #3326-RW0002-00)
OCS-G 25478, Segment No. 14895, a 200-feet wide right-of-way to operate and maintain a 03-inch pipeline, 2.58 miles in length, to transport condensate from Platform B in Block 116 to a 6-inch Subsea Tie-in in Block 127, all in Main Pass Area.

**Main Pass 118** (XTO File Ref #3331-RW0001-00)
OCS-G 28217, Segment No. 15811, a 200 feet wide right-of-way to operate and maintain an existing 6-5/8-inch pipeline, 6.67 miles in length, to transport oil from Platform A in Block 118 through Blocks 117 and 126 to a 6-inch Subsea tie-in in Block 127, and also to operate and maintain the existing associated subsea tie-in assembly appurtenance in Block 127, all in Main Pass Area.

**Main Pass 116 & 118** (XTO File Ref # Pending)
OCS-G BOEMRE Pending, Segment No. 16342, a 200-foot wide right-of-way to operate and maintain a 4 ½-inch pipeline, 11.00 miles in length, to transport oil from a flange in Block 127, through Blocks 126, 117, 118, 113 to a subsea tie-in in Block 112, all located in the Main Pass Area.

**Ship Shoal 79** (XTO File Ref #3422-RW0001-00)
OCS-G 23712, Segment No. 13736, a right-of-way 200 feet in width and 1.77 miles in length, for the installation, operation and maintenance of a 4-1/2" pipeline to transport bulk gas from Ship Shoal Block 79 No. 2 Caisson, Lease OCS-G 15277 to Ship Shoal Block 80 "A" Platform, Open Lease.

**Ship Shoal 79** (XTO File Ref #3422-RW0002-00)
OCS-G 23713, Segment No. 13737, a right-of-way 200 feet in width and 1.77 miles in length, for the installation, operation and maintenance of a 4-1/2 inch pipeline to transport bulk gas from Ship Shoal Block 79 No. 2 Caisson, Lease OCS-G 15277 to Ship Shoal Block 80 "A" Platform, open lease.

**Ship Shoal 80** (XTO File Ref #3422-RW0003-00)
OCS-G 9330, Segment No. 8204, a right-of-way 200 feet in width, for the construction operation and maintenance of a 6 5/8-inch natural gas and condensate pipeline, 8.06 miles in length, from Samedan Oil Corporation's Platform A in Block 80, Ship Shoal Area, across Blocks 123 and 124, Eugene Island Area, to a subsea connection with ANR Pipeline Company's existing 30-inch pipeline (OCS-G 1687) in Block 125, Eugene Island Area.

**Ship Shoal 188** (XTO File Ref #3423-RW0001-00)
OCS-G 26977, Segment No. 15614, a right-of-way 200 feet wide for the installation, operation and maintenance of a 6-in pipeline, 1.65 miles in length, to transport gas and condensate from Block 188 Well No. 1 to a 10-inch subsea tie-in in Block 189, all in the Ship Shoal Area.

**South Marsh Island 142** (XTO File Ref #3438-RW0001-00)
OCS-G 3441, Segment No. 4733, a right-of-way 200 feet in width for the construction, maintenance and operation of a 10 ¾-inch natural gas pipeline, 2.67 miles in length, from Forest Oil Corporation's Platform "A" in Block 142, South Marsh Island Area, South Addition, to a subsea connection with Sea Robin Pipeline Company's 24-inch pipeline in the southeast quadrant of Block 127, South Marsh Island Area, South Addition, as shown on Drawing No. OS-33 dated February 3, 1977.

**South Marsh Island 146** (XTO File Ref #3439-RW0001-00)
OCS-G 26837, Segment No. 15106, a right-of-way 200 feet wide for the installation, operation and maintenance of a 6 5/8-inch pipeline, approximately 1.3 miles in length, to transport bulk gas from South Marsh Island Block 146 "B" to South Marsh Island Block 147 "A".

**South Marsh Island 146** (XTO File Ref #3439-RW0002-00)
OCS-G 26838, Segment No. 15107, a right-of-way 200 feet in width for the installation, operation and maintenance of a 4 1/2-inch pipeline, approximately 1.3 miles in length, to transport bulk gas from South Marsh Island Block 146 "B" to South Marsh Island Block 147 "A".

**South Marsh Island 146** (XTO File Ref #3439-RW0003-00)
OCS-G 26839, Segment No. 15108, a right-of-way 200 feet in width for the installation, operation and maintenance of a 2 ½-inch gas lift pipeline, 1.3 miles in length, from South Marsh Island Block 147 "A" to South Marsh Island Block 146 "B".

**South Pass 42 Field** (XTO File Ref #3450-RW0005-00)
Department of the Army ("Army") Easement No. DACW29-2-01-16 dated September 10, 2001, as amended, granting a Right-of-Way to operate and maintain an existing production facility to serve oil and gas wells drilled in South Pass 42 Field in the Gulf of Mexico, within the Army's Mississippi River South and Southwest Passes Project, Section 46, Township 24 South, Range 30 East, Plaquemines Parish, Louisiana, amended, to include Tract No. 1, Sections 2 and 46, Townships 24 and 25 South, Range 30 East, Plaquemines Parish, Louisiana and to include a proposed Salt Water Disposal (SWD) well, an additional 15-foot wide (construction width) servitude for construction, operation and maintenance of a 4-inch pipeline to serve the proposed SWD well, and a servitude for maintenance of the access canal by wheel washing, as shown on the exhibits attached to the amendment. Recorded in Plaquemines Parish Book #1080, Page #801, File No. 2004-00006681.

(XTO File Ref #3450-RW0003-00)
Department of the Army ("Army") Easement No. DACW29-2-81-37 dated May 18, 1981, as amended, granting Rights-of-Way for the construction, operation, maintenance and repair of four oil and gas flowlines; one saltwater disposal line; one oil tie-in line and one gas tie-in line, located in our Mississippi River South and Southwest Passes Project, Tract No. 1, Sections 46 and 47, Township 24 South, Range 30 East, Plaquemines Parish, Louisiana. Recorded July 14, 1981 in Plaquemines Parish Book #526, Page #231, File No. 27.

(XTO File Ref #3448-RW0001-00)
State Lease Right-of-Way 4584, One six (6) inch gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40, South Pass Area, Section 1 of Township 25 South, Range 30 East and Section 46 of Township 24 South, Range 30 East, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page #27, File No. 2005-00002059.

(XTO File Ref #3448-RW0002-00)
State Lease Right of Way 4585, One (1) four inch (4") gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40 and 42, South Pass Area, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page 36, File No. 2005-00002060.

(XTO File Ref #3448-RW0003-00)
State Lease Right-of-Way 4586, One (1) eight inch (8") gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40, South Pass Area, Section 1 of Township 25 South, Range 30 East and Section 46 of Township 24 South, Range 30 East, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page #45, File No. 2005-00002061.

(XTO File Ref #3448-RW0004-00)
State Lease Right-of-Way 4587, One (1) six inch (6") gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40, South Pass Area, Section 1 of Township 25 South, Range 30 East and Section 46 of Township 24 South, Range 30 East, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page #54, File No. 2005-00002062.

**West Cameron 485** (XTO File Ref # 3542-RW0001-00)
OCS-G 2122E, Segment No. 4289, a right-of-way 200 feet in width for the construction, operation and maintenance of a 12" natural gas pipeline from an existing platform in Block 485, crossing Blocks 507 and 508 to an existing platform in Block 509, West Cameron Area, South Addition, a distance of 28,720 feet

**EXHIBIT B-1**                                        -110-

# EXHIBIT B-2
## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## ASSIGNMENT AND BILL OF SALE
## DATED EFFECTIVE AS OF AUGUST 1, 2011,
## BETWEEN XTO OFFSHORE INC.
## AND DYNAMIC OFFSHORE RESOURCES, LLC

### DESCRIPTION OF PIPELINES

| Segment Number | Originating Area/Block | Originating Lease | Destination Area/Block | Destination Lease | Status | Segment Length | Size |
|---|---|---|---|---|---|---|---|
| 16161 | EI 309J | G00997 | EI309G | G00997 | Proposed | 9875 | 6-5/8" |
| 16162 | EI 309J | G00997 | EI309G | G00997 | Proposed | 9875 | 6-5/8" |
| 16016 | EI312 | G22679 | SM142 | G01216 | Active | 18112 | 4" |
| 16017 | EI312 | G22679 | SM142 | G01216 | Active | 18115 | 6 5/8" |
| 14138 | MP101 | G22792 | MP101 | G22792 | Active | 4546 | 6 5/8" |
| 14821 | MP101 | G22792 | MP101 | G22792 | Active | 5194 | 4" |
| 14822 | MP101 | G22792 | MP101 | G22792 | Out of Service | 5197 | 4" |
| 14315 | MP101 | G22792 | MP101 | G22792 | Active | 8745 | 8 5/8" |
| 9011 | MP112 | G09707 | MP112 | G09707 | Out of Service | 9088 | 4" |
| 17188 | MP114 | G27201 | MP118 | G22797 | Active | 22027 | 4" |
| 8372 | MP116 | G03419 | MP116 | G03419 | Out of Service | 10893 | 8 5/8" |
| 8373 | MP116 | G03419 | MP116 | G03419 | Out of Service | 10893 | 8 5/8" |
| 15792 | MP118 | G22797 | MP125 | G25019 | Active | 4649 | 8 5/8" |
| 17557 | MP125 | G25019 | MP118 | G22797 | Active | 13939 | 6 5/8" |
| 14741 | SM109 | G24873 | SM109 | G24873 | Active | 10719 | 10 3/4" |
| 10934 | SM142 | G01216 | SM142 | G01216 | Active | 3080 | 4" |
| 11552 | SM142 | G01216 | SM142 | G01216 | Active | 8504 | 4" |
| 11553 | SM142 | G01216 | SM142 | G01216 | Active | 8359 | 6 5/8" |
| 14292 | SM40 | G13607 | SM40 | G13607 | Active | 5584 | 6 5/8" |
| 14293 | SM40 | G13607 | SM40 | G13607 | Active | 6015 | 6 5/8" |
| 14294 | SM40 | G13607 | SM40 | G13607 | Active | 6017 | 6 5/8" |
| 14295 | SM40 | G13607 | SM40 | G13607 | Active | 6020 | 2 1/2" OR 2 7/8" |
| 17203 | SM40 | G13607 | SM44 | G23840 | Active | 9233 | 2 1/2" OR 2 7/8" |
| 17201 | SM44 | G23840 | SM40 | G13607 | Active | 9233 | 6 5/8" |
| 17202 | SM44 | G23840 | SM40 | G13607 | Active | 9233 | 4" |
| 15611 | SS188 | G22712 | SS188 | G22712 | Out of Service | 8167 | 4" |
| 10390 | WC507 | G02549 | WC485 | G02220 | Active | 2100 | 6 5/8" |
| 10391 | WC507 | G02549 | WC485 | G02220 | Active | 2100 | 6 5/8" |
| 16222 | WC507 | G02549 | WC485 | G02220 | Out of Service | 8670 | 6 5/8" |

**EXHIBIT B-2**

EXHIBIT B-3
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

## DESCRIPTION OF PLATFORMS

| XTO # | PLATFORM NAME | OPERATOR | STATE |
|-------|---------------|----------|-------|
| N/A | PLATFORM BS 52 A | CENTURY EXPLORATION NEW ORLEANS, INC. | LA |
| N/A | PLATFORM BS 53 CF | CENTURY EXPLORATION NEW ORLEANS, INC. | LA |
| 703463 | PLATFORM EC 178 D | XTO OFFSHORE INC. | LA |
| 703445 | PLATFORM EI 273 D | MARINER ENERGY INC | LA |
| 703458 | PLATFORM EI 284 B | MARINER ENERGY INC | LA |
| 703371 | PLATFORM EI 287 D | MARINER ENERGY INC | LA |
| 402689 | PLATFORM EI 292 B | MARINER ENERGY INC | LA |
| 703447 | PLATFORM EI 309 G | MARINER ENERGY INC | LA |
| 703342 | PLATFORM EI 309 J | XTO OFFSHORE INC. | LA |
| 703331 | PLATFORM EI 312 D | XTO OFFSHORE INC. | LA |
| 703353 | PLATFORM HI 034 B | XTO OFFSHORE INC. | TX |
| 703430 | PLATFORM HI A376 A | APACHE CORPORATION | TX |
| N/A | PLATFORM HI A376 B | APACHE CORPORATION | TX |
| 703408 | PLATFORM HI A376 C | APACHE CORPORATION | TX |
| 403304 | PLATFORM HI A554 A | HUNT OIL COMPANY | TX |
| 703359 | PLATFORM MP 029 1 | XTO OFFSHORE INC. | LA |
| 703355 | PLATFORM MP 101 06 | XTO OFFSHORE INC. | LA |
| 703332 | PLATFORM MP 101 B | XTO OFFSHORE INC. | LA |
| 703333 | PLATFORM MP 101 D | XTO OFFSHORE INC. | LA |
| 703436 | PLATFORM MP 109 C | W & T OFFSHORE INC | LA |
| 703437 | PLATFORM MP 109 D | W & T OFFSHORE INC | LA |
| 703336 | PLATFORM MP 112 2 | XTO OFFSHORE INC. | LA |
| 703335 | PLATFORM MP 112 A | XTO OFFSHORE INC. | LA |
| 703360 | PLATFORM MP 114 1 | XTO OFFSHORE INC. | LA |
| N/A | PLATFORM MP 116 8 | XTO OFFSHORE INC. | LA |

**EXHIBIT B-3**

| XTO # | PLATFORM NAME | OPERATOR | STATE |
|-------|---------------|----------|-------|
| 703357 | PLATFORM MP 116 A | XTO OFFSHORE INC. | LA |
| 703327 | PLATFORM MP 116 B | XTO OFFSHORE INC. | LA |
| 703361 | PLATFORM MP 118 A | XTO OFFSHORE INC. | LA |
| 703449 | PLATFORM MP 125 B | XTO OFFSHORE INC. | LA |
| N/A | PLATFORM MP 94 4 | W & T OFFSHORE INC | LA |
| 703362 | PLATFORM SMI 040 B | XTO OFFSHORE INC. | LA |
| 703347 | PLATFORM SMI 040 JA | XTO OFFSHORE INC. | LA |
| 703338 | PLATFORM SMI 044 C | XTO OFFSHORE INC. | LA |
| 703139 | PLATFORM SMI 109A | XTO OFFSHORE INC. | LA |
| 703132 | PLATFORM SMI 142A | XTO OFFSHORE INC. | LA |
| 703133 | PLATFORM SMI 142C | XTO OFFSHORE INC. | LA |
| 703328 | PLATFORM SMI 146B | XTO OFFSHORE INC. | LA |
| 703128 | PLATFORM SP 42A | XTO OFFSHORE INC. | LA |
| 703339 | PLATFORM SS 079 A | XTO OFFSHORE INC. | LA |
| 703370 | PLATFORM SS 080 A | XTO OFFSHORE INC. | LA |
| 703363 | PLATFORM SS 188 02 | XTO OFFSHORE INC. | LA |
| 703349 | PLATFORM SS 188 A | XTO OFFSHORE INC. | LA |
| 703411 | PLATFORM SS 247 F | ENI PETROLEUM COMPANY INC | LA |
| 703404 | PLATFORM SS 248 D | ENI PETROLEUM COMPANY INC | LA |
| 703412 | PLATFORM SS 248 G | ENI PETROLEUM COMPANY INC | LA |
| N/A | PLATFORM SS 71 1 | PETROQUEST ENERGY, L.L.C. | LA |
| 703403 | PLATFORM VR 313 D | ENI PETROLEUM COMPANY INC | LA |
| 703135 | PLATFORM WC 485 A | XTO OFFSHORE INC. | LA |
| 703340 | PLATFORM WC 507B | XTO OFFSHORE INC. | LA |
| 703137 | PLATFORM WC 507C | XTO OFFSHORE INC. | LA |

## ASSIGNMENT AND BILL OF SALE

This Assignment and Bill of Sale ("Assignment") is effective as of August 1, 2011, at 7:00 a.m. Central Time ("Effective Time"), and is from XTO OFFSHORE INC., a Delaware corporation with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 ("XTO Offshore"), to DYNAMIC OFFSHORE RESOURCES, LLC, a Delaware limited liability company, with an address of 1301 McKinney, Suite 900, Houston, Texas 77010 ("Assignee"). XTO Offshore and Assignee may each be referred to hereafter as a "Party", or collectively referred to as the "Parties".

## ARTICLE 1.

1.01.    Assignment.  For $10 and other good and valuable consideration, the receipt and sufficiency of which XTO Offshore acknowledges, XTO Offshore bargains, sells, assigns, and conveys to Assignee and its successors and assigns, all of XTO Offshore's right, title, and interest in and to the following real and personal properties (collectively, "Properties"), subject to the terms of this Assignment, including its exhibits, and all applicable instruments of record in the county/counties/parish/parishes where the Properties are located:

> (a)    The oil and gas leasehold estates and other interests, *insofar but only insofar* as set out on Exhibit A and Exhibit A-1, together with XTO Offshore's interest in each well located on the leases, units and land described on Exhibit A and Exhibit A-1, including, without limitation, the wells described on Exhibit A-2 (collectively, "Interests");

XTO OFFSHORE EXCEPTS FROM THIS ASSIGNMENT THE EXCLUSIONS PROVIDED IN SECTION 1.02 OF THIS ASSIGNMENT AND MAKES SUCH ASSIGNMENT SUBJECT TO ANY CONVEYANCE OR AGREEMENT, WHETHER RECORDED OR NOT, THAT PERTAINS TO THE INTERESTS AND WHICH WAS EXECUTED OR EFFECTIVE BEFORE THE EXECUTION OF THIS ASSIGNMENT.

> (b)    All contracts affecting the Interests, to the extent each is assignable, including agreements for the sale or purchase of oil, gas, and other hydrocarbons; processing agreements; division orders; unit agreements; operating agreements; and other contracts and agreements arising out of, connected with, or attributable to production from the Interests, including the items listed on Exhibit A-1;

XTO OFFSHORE EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL RIGHT, TITLE, AND INTEREST IN THESE CONTRACTS INSOFAR AS THEY PERTAIN TO ANY INTEREST NOT ASSIGNED IN THIS ASSIGNMENT.

> (c)    All personal property, including material, equipment, pipelines, platforms and facilities situated in and on the Properties and used solely in connection with the use or operation of the Interests for the production, treating, storing, transporting, and marketing of oil, gas, and other

hydrocarbons from the Interests, including the items listed on Exhibit B-2 and Exhibit B-3;

**XTO OFFSHORE EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL PERSONAL PROPERTY, WELLS, FIXTURES, PIPELINES, AND EQUIPMENT USED IN XTO OFFSHORE'S OPERATION OF ANY LEASE, WELL, OR MINERAL INTEREST NOT ASSIGNED IN THIS ASSIGNMENT.**

(d) All easements, permits, licenses, surface and subsurface leases, rights-of-way, servitudes, and other surface and subsurface rights affecting the Interests, to the extent each is assignable, including the items listed on Exhibit B and Exhibit B-1; and

(e) Copies of the data and records relating to the Properties and Interests that have been or will be delivered by XTO Offshore to Assignee as provided for in the Purchase and Sale Agreement defined hereafter ("Documents").

1.02. Exclusions. The following are excluded from this Assignment:

(a) reservations, exceptions and exclusions listed in Exhibits A, B and B-1;

(b) pipelines, fixtures, equipment, and interests owned by third parties such as lessors, purchasers, or transporters of Oil or gas;

(c) computer equipment (including Rosemont transmitters), telecommunications equipment, vehicles, boats, tools, pulling machines, and other equipment and material temporarily located on the Property or expressly excluded from the sale;

(d) items specifically excluded in written information or correspondence provided to Assignee before the Execution Date;

(e) any gas processing plant not listed on Exhibit A and Exhibit A-1;

(f) personal property, fixtures, equipment, pipelines, facilities, and buildings located on the Property, but currently in use in connection with the ownership or operation of other property not included in the Interests;

(g) Unless otherwise described on Exhibit A, if XTO Offshore is a party to a joint operating agreement that affects an Interest, this Agreement is limited as to that Interest to the depths subject to the joint operating agreement (e.g., total depth, total depth plus 100 feet, base of formation penetrated by initial test well), but excludes depths previously conveyed and all depths not subject to a joint operating agreement; and

(h) If XTO Offshore owns unleased mineral interests purportedly within the Interests, those mineral interests are not included in the term "Interests" and will not be conveyed to XTO Offshore.

(i)     XTO Offshore and its affiliates reserve and exclude from this Assignment all rights under that certain Lease Purchase Agreement dated effective January 22, 2002 by and between EEX Corporation ("EEX") and Aviara Energy Corporation ("Aviara"), as amended April 1, 2005, by and between Newfield Exploration Gulf Coast, Inc. and Hunt Petroleum (AEC), Inc., as such agreements pertain to all depths from 17,000 feet down to 100,000 feet subsea and expressly reserve and exclude from this Assignment the five percent of eight-eights (5% of 8/8ths) overriding royalty interest reserved by Aviara in that certain Assignment of Operating Rights dated effective January 22, 2002 by and between Aviara and EEX.

(j)     Responsibility and liability for the proper payment of royalties to any governmental entity with respect to production attributable to the Interests prior to the Effective Time in the event prior payments to such governmental entity were improperly calculated.

(k)     The Reserved Overriding Royalty Interest as defined in Section 1.08.

1.03.    Restrictions on Use.  Where any of the Interests include a fee simple interest in real property that has been used for oil, gas, or other mineral operations, the following uses of the affected land, or any portion thereof, are expressly prohibited and forbidden:

(a)     any hotel use;

(b)     any purpose that would constitute a "Permitted Use" under any of the residential zones, districts, or classifications set forth in any applicable municipal, county/parish or state zoning laws in effect at the Effective Time,

(c)     any other residential use;

(d)     any health care, clinic, hospital or other medical facility;

(e)     any playground, recreational park, day nursery, day-care center, child care center, nursing home, house of worship, or school;

(f)     any agricultural use;

(g)     construction or installation of any basements; or

(h)     any water wells for irrigation or drinking purposes.

1.04.    Documents.  If originals or the last-remaining copies of the Documents have been provided to Assignee, XTO Offshore may have access to them at reasonable times and upon reasonable notice during regular business hours for as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or a longer period if required by law or governmental regulation). XTO Offshore may, during this period and at its expense, make copies of the Documents pursuant to a reasonable request.

Without limiting the generality of the two preceding sentences, for a period as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or for a longer period if required by law or governmental regulation), Assignee may not destroy or give up possession of any original or last-remaining copy of the Documents without first offering XTO Offshore the opportunity, at XTO Offshore's expense, to obtain the original or a copy. After this period expires, Assignee must offer to deliver the Documents (or copies) to XTO Offshore, at XTO Offshore's expense, before giving up possession or destroying them.

      1.05.    <u>Reservations</u>. To the extent that XTO Offshore has reserved or continues to own an interest (excluding overriding-royalty interests but including, if any, mineral-fee, leasehold interests, deep rights or facilities, equipment, or pipelines) after the Effective Time for which XTO Offshore requires access across the land associated with the Interests in order to exercise its rights, XTO Offshore reserves concurrent interests in all applicable easements, rights-of-way, contracts, and other rights relating to the reserved interests and necessary as reasonably required for exploring, drilling, producing, storing, or marketing oil, gas, and other hydrocarbons from the respective zones or interests of the Parties, including rights to lay pipelines, water lines, and power lines; dig pits; erect structures; and perform any other act reasonably necessary to XTO Offshore's interests. Additionally, XTO Offshore reserves and retains a preferential right to purchase all Oil produced and saved from the Interests, pursuant to and in accordance with the terms and provisions of the Purchase and Sale Agreement defined hereafter. The term "Oil" as used herein means crude oil, distillate, drip gasoline, condensate, and other liquid hydrocarbons.

      1.06.    <u>Surrender or Abandonment of Interests</u>. If Assignee decides to surrender or abandon any of the Interests after execution of this Assignment, Assignee must give XTO Offshore written notice of its intent at least 45 days before surrender or abandonment if XTO Offshore:

      (a)    has retained an interest in such Interests;

      (b)    has other interests for which XTO Offshore requires access across such Interests or Property in order to exercise its rights; or

      (c)    has other interests that are held by production from such Interests. XTO Offshore will have 30 days after receipt of Assignee's notice to notify Assignee that it elects to require Assignee to reassign all or any part of such Interests. Reassignment will be in the manner described in Section 1.07.

      1.07.    <u>Reassignment</u>. For reassignment of any Interest under this Assignment, Assignee will execute and deliver to XTO Offshore a reassignment by special warranty, in a form satisfactory to XTO Offshore and sufficient to place XTO Offshore in the same position it occupied before the assignment to Assignee. Assignee's release and discharge of XTO Offshore and its Associated Parties, its covenant not to sue XTO Offshore or its Associated Parties, and its obligations to indemnify, defend, and hold XTO Offshore and its Associated Parties harmless

will apply to Interests that are reassigned for the period of Assignee's ownership, and the reassignment instrument will restate Assignee's obligations.

      1.08.    <u>Reserved Overriding Royalty.</u>  XTO Offshore reserves from the leasehold interest applicable to each of the oil and gas leases described on Exhibit A (collectively, the "Leases", individually a "Lease"), an overriding royalty interest interest equal to five percent of eight-eighths (5% of 8/8) as to production from any New Wells, as defined hereafter (the "Overriding Royalty Interest"). "New Wells", for the purposes of this Assignment is defined as any wells drilled on the Leases from and after the date of execution of this Assignment (the "Execution Date"), together with any sidetrack or deepening after the Execution Date of an existing well on the Leases, to the extent and only to the extent that said sidetrack bottom hole is located 1,000 feet or greater from the bottom hole location of such existing wells; provided, however, such 1,000 foot restriction does not apply to the sidetracks identified in that certain Letter between XTO Offshore and Assignee, dated July 29, 2011. New Wells shall not include any recompletions, workovers, or mechanical bypasses of an existing well. The Overriding Royalty Interest shall be paid or delivered by Assignee to XTO Offshore in accordance with the following terms and conditions:

           (a)    On oil, delivery of such oil shall be made free of all costs and expenses in developing and operating the Interests, free of all costs of production and unencumbered in any way to XTO Offshore's credit into the pipelines or tanks to which the applicable well or wells may be connected, or otherwise as XTO Offshore may from time to time direct. Should XTO Offshore elect not to take its Overriding Royalty Interest on oil in kind, then XTO Offshore's part of such oil shall be paid based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser of such oil at the applicable well or wells, free of all costs and expenses in of developing and operating the Interests, free of all costs of production and unencumbered in any way.

           (b)    On all gas, including casinghead gas or other gaseous substances and liquid constituents of said gas, produced from and sold (on or off the Interests) or used off the Interests, or for the extraction of gasoline or other products therefrom, the Overriding Royalty Interest shall be based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser at the well or wells of gas so produced, sold or utilized, free of all costs of developing and operating the Interests, free of all costs of production.

      Payment by Assignee of the Overriding Royalty Interest must be made from the Execution Date and at all times thereafter on the basis of one hundred percent (100%) of the New Well's production (proportionately reduced as hereafter provided), and such payment must be made regardless of (a) whether Assignee is or is not banking or storing gas, whether pursuant to the provisions of an agreement so permitting, or otherwise; (b) whether Assignee is or is not selling all or any part of its share of the total production; and (c) the identity of the purchaser or purchasers of such gas if Assignee should be selling all or any part of the total gas produced.

The Overriding Royalty Interest shall be delivered to XTO Offshore free of all cost and expense of developing and operating the Leases and free and clear of all taxes except gross production, severance taxes, and ad valorem taxes applicable thereto; provided that, the Overriding Royalty Interest will be subject to and bear a proportionate share of all reasonable costs and expenses of a non-affiliated third party incurred for the transportation, compression, dehydration and treating of the said gas and condensate in the preparation for marketing of such production. Such payments shall be made on or before the sixtieth (60th) day following the month of the production. If payment is not made within the time prescribed, the unpaid amount will bear interest at the rate of one percent (1%) for each month or fraction of a month, by which payment is delayed, or the maximum lawful rate, whichever is less. Assignee agrees to send all division orders covering the Overriding Royalty Interest reserved by to XTO Offshore at the following address:

> XTO Energy Inc.
> P.O. Box 730586
> Dallas, Texas 75373-0586

If the Leases cover less than a full interest in the land covered thereby or if the interest assigned hereunder in said Leases is less than a full interest, then the Overriding Royalty Interest herein reserved shall be reduced in the proportion that the interest assigned to Assignee herein bears to the full interest in the land covered or bears to the full interest in the Leases assigned hereunder; provided, however, that the overriding royalties herein reserved are exclusive of and in addition to any royalties, overriding royalties or payments out of production affecting the Leases as of the Effective Time. It is expressly agreed that operations, if any, on the Leases and the extension and duration thereof, as well as the preservation of the Leases by rental payments or otherwise, shall be solely at the will and discretion of Assignee or any successor owner of the working interest in the Leases. The Overriding Royalty Interest hereby reserved is subject to the rights conferred on the lessees (now Assignee) by said Leases to pool or unitize the lands covered thereby; and neither the joinder nor consent by XTO Offshore shall be required in connection with any such pooling or unitization. Where oil and/or gas is produced from any unit so formed, XTO Offshore shall receive on production from such unit only such portion of the overriding royalty stipulated herein, as the amount of surface acreage of the land affected by such overriding royalty and placed in said unit bears to the total surface acreage included in the unit, unless some other formula for appointment of production is adopted for the unit and in such case the formula shall be used.

XTO Offshore upon notice in writing to Assignee, shall have the right to audit Assignee's accounts and records relating to the Overriding Royalty Interest reserved herein and any other records related to the determination of the amounts due XTO Offshore for any calendar year within the twenty-four (24) month period following the end of such calendar year.

The Overriding Royalty Interest is expressly subject to the terms and provisions of any of the Related Agreements, to the extent and only to the extent that such terms and provisions contractually apply to and prohibit the establishment of an overriding royalty interest affecting any of the Leases. If pursuant to the terms of any Related Agreement all or a portion of Assignee's interest in a Lease, or all or a portion of its interest in the production therefrom, is forfeited or assigned to one or more other working interest owners, either permanently or for a

stipulated period, because Assignee fails to participate in any operation or operations, then to the extent that such forfeited or assigned interest is subject to and burdened by the Overriding Royalty Interest, the working interest so assigned or forfeited by Assignee shall be free and clear of such Overriding Royalty Interest for the period of such forfeiture or assignment of overriding royalty interests. The Overriding Royalty Interest will become effective again when the interest is reassigned or reverts back to Assignee, and Assignee shall pay such Overriding Royalty Interest as provided in this Section 1.08. Further, to the extent any Related Agreement establishes security rights in favor of the parties thereto, the Overriding Royalty Interest conveyed herein shall be subordinated to such security rights. For the purposes of this Assignment, "Related Agreements" shall mean all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements concerning or pertaining to the Interests, to the extent that they are binding on XTO Offshore or its successors or assigns.

It is understood and agreed that the Overriding Royalty Interests reserved herein, will be a permanent burden on the Leases subject to the provisions of this Section 1.08, and will continue in effect as to each Lease for so long as each Lease remains in effect. In addition in the event Assignee secures a renewal or extension for any such Leases, covering all or any part of the land previously covered thereby, then the interests reserved herein will apply to such renewed or extended Lease. A "renewal" or "extension" of a Lease as those terms are used therein shall mean any Lease or Leases covering all or a part of the land covered by the Leases that is executed by Assignee within twelve (12) months after termination of any Lease, or the next ensuing Federal or state lease sale pertaining to all or any part of the land previously covered by a Lease, whichever may come first.

Notwithstanding anything to the contrary set forth in this Assignment, the Overriding Royalty Interest shall not apply to any production attributable to Block 188, Ship Shoal Area, OCS Leasing Map, Louisiana Map No. 5, INSOFAR AND ONLY INSOFAR AS to those depths from 17,000 feet subsea down to 100,000 feet subsea, currently affected by that certain federal offshore lease bearing serial number OCS-G 22712, dated May 1, 2001, granted by the United States of America, as Lessor, in favor of Aviara Energy Corporation, as Lessee, that being the same interest referenced in Section 1.02(i) above.

1.09. _Governmental Transfers._ Where separate transfers of any of the Properties have been, or will be, executed for filing with and approval by applicable governmental authorities, any such separate transfer (a) shall not constitute an additional assignment or conveyance of the affected Properties, (b) shall not constitute an additional reservation of the Overriding Royalty Interest provided for in this Assignment and (c) shall not modify any of the terms, covenants and conditions, or limitations on warranties, set forth in this Assignment, and are not intended to create and shall not create any representations, warranties or additional covenants of or by either of the parties to this Assignment.

## ARTICLE 2.

Ad valorem taxes assessed against the Properties for the year of the Effective Time are apportioned between XTO Offshore and Assignee as of the Effective Time.

## ARTICLE 3.

Assignee will comply with all rules, regulations, statutes, and laws applicable to Assignee's ownership or operation of the Properties. Except to the extent specifically excepted or reserved by XTO Offshore in this Assignment or in the Purchase and Sale Agreement (as defined hereafter), Assignee accepts this Assignment and assumes all XTO Offshore's obligations and liabilities under all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements (including compliance with express and implied covenants and payment of costs, rentals, shut-in-payments, minimum royalties, and production royalties), to the extent that these obligations and liabilities concern or pertain to the Properties and are binding on XTO Offshore or its successors or assigns. Assignee's obligations under this article apply to all applicable instruments, whether recorded or not.

## ARTICLE 4.

Assignee acknowledges that the Interests and Properties have been used for exploration, development, and production of oil and gas and that there may be petroleum, produced water, wastes, or other materials located on or under the Properties or associated with the Interests. Equipment and sites included in the Interests or Properties may contain asbestos, hazardous substances, or naturally occurring radioactive material ("NORM"). NORM may affix or attach itself to the inside of wells, materials, and equipment as scale, or in other forms; the wells, materials, and equipment located on the Properties or included in the Interests may contain NORM and other wastes or hazardous substances; and NORM-containing material and other wastes or hazardous substances may have been buried, come in contact with the soil, or otherwise been disposed of on the Properties. Special procedures may be required for the remediation, removal, transportation, or disposal of wastes, asbestos, hazardous substances, and NORM from the Interests and Properties.

Assignee will store, handle, transport, and dispose of or discharge all material, substances, and wastes from the Properties (including produced water, drilling fluids, NORM, and other wastes), whether present before or after the Effective Time, in accordance with applicable local, state, and federal laws and regulations. Assignee will keep records of the types, amounts, and location of materials, substances, and wastes that are stored, transported, handled, discharged, released, or disposed of onsite and offsite. When any lease terminates, an interest in which has been assigned under this Assignment, Assignee will take additional testing, assessment, closure, reporting, and remedial action with respect to the Properties as is necessary to satisfy all local, state, and federal requirements directed in effect at that time and necessary to restore the Properties.

## ARTICLE 5.

Assignee recognizes, and will either perform or assure that performance is accomplished properly and in accordance with applicable law and the obligations and liabilities described in Article 3, all obligations to abandon, restore, and remediate the Properties and the Interests, whether arising before or after the Effective Time, including obligations, as applicable, to:

a) obtain plugging exceptions in the operator's name for each well located on the Properties (abandoned and unabandoned) with a current plugging exception or permanently plug and abandon each well;

b) plug, abandon, and if necessary, reabandon each well located on the Properties (abandoned and unabandoned);

c) remove all equipment and facilities, including flowlines, pipelines and platforms;

d) close all pits; and

e) restore the surface, subsurface, and offshore sites associated with the Interests and Properties.

Assignee will take all necessary steps to ensure that Assignee is recognized as the owner and, if applicable, operator of the Properties by all appropriate parties, including any regulatory commission, body or board with jurisdiction. If XTO Offshore is the principal on any financial assurance (including a bond) relating to the Properties, which financial assurance is required by any law, rule, or regulation, then Assignee will secure new financial assurance in the required amount and supply it to the regulatory body requiring the financial assurance, to the end that XTO Offshore's financial assurance is released and discharged.

Assignee will pay all costs and expenses associated with the obligations assumed under this article. XTO Offshore may require Assignee to maintain a performance bond in an amount, in a form, and from an institution acceptable to XTO Offshore, to guarantee Assignee's obligations, all as provided for in the Purchase and Sale Agreement as defined hereafter.

## ARTICLE 6.

XTO OFFSHORE MAKES NO WARRANTY OF ANY TYPE IN THIS ASSIGNMENT, WHETHER EXPRESS, STATUTORY, OR IMPLIED. ASSIGNEE HAS INSPECTED AND HAS SATISFIED ITSELF AS TO THE CONDITION OF THE PROPERTIES. THIS ASSIGNMENT IS MADE BY XTO OFFSHORE AND ACCEPTED BY ASSIGNEE ON AN "AS IS, WHERE IS" BASIS. XTO OFFSHORE DISCLAIMS ALL WARRANTIES, INCLUDING:

(a) AS TO THE FITNESS OR CONDITION OR MERCHANTABILITY OF THE MATERIALS, EQUIPMENT, OR FACILITIES CONVEYED;

(b) AS TO THE PHYSICAL, OPERATIONAL, OR ENVIRONMENTAL CONDITION OF THE PROPERTIES;

(c) AS TO THE OIL, GAS, AND OTHER HYDROCARBON OPERATIONS OF THE PROPERTIES COVERED BY THE TERMS AND CONDITIONS OF ANY LEASES OR OTHER AGREEMENTS THAT ARE A PART OF THE PROPERTIES;

(d) AS TO THE ISSUANCE, REISSUANCE, OR TRANSFER OF ANY PERMITS RELATING TO ANY OF THE PROPERTIES;

(e) AS TO ANY CONSENT OR APPROVAL REQUIRED UNDER ANY INSTRUMENT DESCRIBED IN ARTICLE III; AND

(f)     **AS TO TITLE, EITHER EXPRESS, IMPLIED, OR STATUTORY.**

## ARTICLE 7.

The terms "Claim" or "Claims" mean, collectively, claims, demands, causes of action, and lawsuits asserted or filed by any person, including an artificial or natural person, a local, state, or federal governmental entity; a person holding rights under any instrument described in Article 3; an Associated Party of XTO Offshore or Assignee; or a third party. The term "Liability" or "Liabilities" means, collectively, all damages (including consequential and punitive damages), including those for personal injury, death, or damage to personal or real property (both surface and subsurface) and costs for remediation, restoration, or clean up of contamination, whether the injury, death, or damage occurred or occurs on or off the Properties by migration, disposal, or otherwise; losses; fines; penalties; expenses; costs to remove or modify facilities on or under the Properties; plugging liabilities for all wells; attorneys' fees; court and other costs incurred in defending a Claim; liens; and judgments; in each instance, whether these damages and other costs are known or unknown, foreseeable or unforeseeable on the Effective Time. The term "Associated Parties" means successors, assigns, directors, officers, employees, agents, contractors, subcontractors, and affiliates.

Assignee releases and discharges XTO Offshore and its Associated Parties from each Claim and Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. **ASSIGNEE'S RELEASE AND DISCHARGE OF XTO OFFSHORE AND ITS ASSOCIATED PARTIES INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO OFFSHORE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY,** and this release and discharge are binding on Assignee and its successors and assigns The only exception to Assignee's release and discharge of XTO Offshore and its Associated Parties is that (a) Assignee does not release Claims against contractors and subcontractors for work regarding the Interests and Properties, and (b) Assignee does not release or discharge Claims that XTO Offshore breached the Purchase and Sale Agreement as defined hereafter.

Assignee covenants not to sue XTO Offshore or its Associated Parties with regard to any Claim or Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. **ASSIGNEE'S COVENANT NOT TO SUE XTO OFFSHORE OR ITS ASSOCIATED PARTIES INCLUDES CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO OFFSHORE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLIES REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY,** and this covenant is binding on Assignee and its successors and assigns. The only exception to Assignee's covenant not to sue XTO Offshore or its Associated Parties is that Assignee does not covenant not to sue contractors and subcontractors for work regarding the Interests and Properties.

Assignee will indemnify, defend, and hold XTO Offshore and its Associated Parties harmless from each Claim or Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S OBLIGATIONS TO INDEMNIFY, DEFEND, AND HOLD XTO OFFSHORE AND ITS ASSOCIATED PARTIES HARMLESS INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XTO OFFSHORE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY. The only exception to Assignee's obligations to indemnify, defend, and hold XTO Offshore and its Associated Parties harmless is (a) a judgment rendered or settlement reached in a lawsuit filed before the Effective Time, but only to the extent that the acts or omissions that gave rise to the cause of action are attributable to the conduct or operations or ownership of XTO Offshore or its Associated Parties before the Effective Time and (b) a Claim that XTO Offshore breached the Purchase and Sale Agreement defined hereafter. Assignee's obligations are binding on Assignee and its successors and assigns.

Assignee's duty to release, discharge, not to sue, indemnify, defend, and hold XTO Offshore and its Associated Parties harmless includes Claims or Liabilities arising in any manner from the physical or environmental condition of the Interests and Properties, including Claims or Liabilities under applicable laws and regulations now enacted or that may be enacted in the future, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time.

## ARTICLE 8.

Assignee represents that it has acquired the Properties for its own benefit and account and has not acquired the Properties with the intent of distributing fractional undivided interests in them or otherwise selling them in a manner that would be subject to regulation by federal or state securities laws. If Assignee sells, transfers, or otherwise disposes of the Properties or fractional undivided interests in them in the future, it will do so in compliance with applicable federal and state laws.

This Assignment is subject to the terms of the Purchase and Sale Agreement between XTO Offshore, among others, and Assignee concerning the Properties, dated effective as of August 1, 2011 (the "Purchase and Sale Agreement"). In the event of a conflict or inconsistency between the terms and provisions of this Assignment and those set forth in the Purchase and Sale Agreement, the terms and provisions in the Purchase and Sale Agreement shall control. The Purchase and Sale Agreement provides, in part, that the Parties will correct errors that may have been made in the conveyancing instruments; that XTO Offshore may require that all or a part of the Properties be reassigned under certain circumstances; and that disputes concerning the Properties or the transaction will be resolved by alternate dispute resolution, to the extent, if any, that Assignee has not released, discharged, or covenanted not to sue XTO Offshore or its Associated Parties.

XTO Offshore, upon notice in writing to Assignee, shall have the right to access the Assignee's offices, facilities, work sites, warehouses, books, records, correspondence,

instructions, plans, drawings, receipts, vouchers, financial accounts, data stored in computer files or microfiche and personnel to audit Assignee's accounts and records relating to the retained royalty interest, including any hedge agreements, facilities used for the measurement of production from the properties, for any calendar year within the twenty-four (24) month period following the end of such calendar year. The same audit rights are to extend to subcontractors. XTO Offshore shall maintain supporting data and accounting records consistent with generally accepted accounting principles, and the employees and agents of company shall have the right to reproduce and retain for the purpose of audit, any of these documents. XTO Offshore shall not be liable for any of Assignee's contractor's or subcontractor's costs resulting from an audit hereunder.

The provisions of this Assignment are severable. If a court of competent jurisdiction finds any part of this Assignment to be void, invalid, or otherwise unenforceable (except for the release, waiver, defense, and indemnity provisions), this holding will not affect other portions that can be given effect without the invalid or void portion.

All covenants and agreements in this Assignment (except Article 8) bind and inure to the benefit of the heirs, successors, and assigns of XTO Offshore and Assignee; are covenants running with the land; and are effective as stated, whether or not the covenants and agreements are memorialized in assignments and other conveyances executed and delivered by the Parties and their respective heirs, successors, and assigns from time to time.

Recitation of or reference to any agreement or other instrument in this Assignment, including its exhibits, does not operate to ratify, confirm, revise, or reinstate the agreement or instrument if it has previously lapsed or expired.

This Assignment and its performance will be construed in accordance with, and governed by, the internal laws of the State of Texas, without regard to the choice of law rules of any jurisdiction, including Texas.

The word includes and its syntactical variants mean "includes, but not limited to" and its corresponding syntactical variants. The rule of *ejusdem generis* may not be invoked to restrict or limit the scope of the general term or phrase followed or preceded by an enumeration of particular examples.

All exhibits referenced in and attached to this Assignment are incorporated into it.

[Intentionally Left Blank]

This instrument may be executed in counterparts, all of which together will be considered one instrument.

Executed in the presence of the undersigned witnesses on the dates indicated below, but effective as of the Effective Time.

**WITNESSES:**

_____
Print or Type Name: James F. Wiggins

_____
Print or Type Name: Clyde Vanderbrouk

**XTO Offshore Inc.**

BY: _____

**NAME:** James L. Death

**TITLE:** Attorney-in-Fact

**DATE:** August 31, 2011

_____
Print or Type Name: James F. Wiggins

_____
Print or Type Name: Clyde Vanderbrouk

**XTO Offshore Inc.**

BY: _____

**NAME:** Christopher N. Claeys

**TITLE:** Attorney-in-Fact

**DATE:** August 31, 2011

_____
Print or Type Name: John H. Smith

_____
Print or Type Name: Lambert M. Laperouse

**Dynamic Offshore Resources, LLC**

BY: _____

**NAME:** G.M. McCarroll

**TITLE:** President and Chief Executive Officer

**DATE:** August 31, 2011

-13-

STATE OF TEXAS     §
                      §

COUNTY OF HARRIS    §

      This instrument was acknowledged before me on August 31, 2011, by James L. Death, Attorney-in-Fact, and Christopher N. Claeys, Attorney-in-Fact, of XTO Offshore Inc., a Delaware corporation, on behalf of said corporation.

_____

Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____

> SIRA M PINEIRO
> NOTARY PUBLIC. STATE OF TEXAS
> MY COMMISSION EXPIRES
> APRIL 6, 2012

STATE OF TEXAS     §
                      §

COUNTY OF HARRIS    §

      This instrument was acknowledged before me on August 31, 2011, by G.M. McCarroll, President and Chief Executive Officer of Dynamic Offshore Resources, LLC, a Delaware limited liability company, on behalf of said limited liability company.

_____

Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____

> ROBYN E ARNOLD
> NOTARY PUBLIC, STATE OF TEXAS
> MY COMMISSION EXPIRES
> MAY 14, 2014

**EXHIBIT A**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF INTERESTS**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 16240001-00 | **Breton Sound 25 - OCS-G 31442**<br>That portion of Block 25, Breton Sound Area, OCS Leasing Map, Louisiana Map No. 10B, seaward of the 1975 Supreme Court Decree Line specifically described in the OCS Block Diagram attached to the lease instrument | Record Title | 50.00000% | XTO Offshore Inc. |
| 1624-0002-00 | **Breton Sound 25 - LA SL 19718**<br>State Lease No. 19718, recorded in COB 1190, Page 672, File # 2008-00005015, Plaquemines Parish, Louisiana, being a portion of Tract 39932, Plaquemines Parish Louisiana, containing 425.25 acres, more or less. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3148-0001-00 | **Breton Sound 28 - LA SL 1999**<br>State Lease No. 1999, recorded in COB 156, Folio 184, Plaquemines Parish, Louisiana,  insofar and only insofar as said lease covers and affects rights in the stratigraphic equivalent of the electric log depth intervals of 4,928' - 4,966', 5,358' - 5,360' and 5,505' - 5,640' as measured in the LLOG Exploration Offshore, Inc. SL 1999 #4 ST. | Leasehold | 100.00000% | XTO Offshore Inc. |
| 3372-0001-00 | **Breton Sound 44 - LA SL 16736**<br>State Lease No. 16736, recorded in COB 978, Folio 422, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |

EXHIBIT A

-1-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| **3372-0004-00** | **Breton Sound 45 - LA SL 16735**<br>State Lease No. 16735, recorded in COB 978, Folio 405, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |
| **3372-0006-00** | **Breton Sound 45 - LA SL 15683**<br>State Lease No. 15683, recorded in COB 893, Folio 225, Plaquemines Parish, Louisiana: (Pt. C) insofar and only insofar as said lease covers and effects interests below the depth of 10,000' subsea and less and except all rights to the UV3-B interval, being the stratigraphic equivalent of the interval encountered between the measured depths of 10,860' and 10,950' in the Phasor Induction/Sonic/GR log in the Century (Tenneco) SL 12806 # 1 Well located in Breton Sound Block 52, and limited to that area included within the geographical boundaries of the UV B RA VUA and the TEX W RA, comprising 232.41 acres, **AND** (Pt. D) that part of SL 15683 comprising 46.82 acres within the boundary of the UV B RA VUA from the depths between 10,596' MD and 10,822' MD | Leasehold | 50.00000%<br>37.50000% | Pt. C: XTO Offshore Inc.<br>Pt. D: XTO Offshore Inc. |
| **3470-0003-00** | **Breton Sound 45 - LA SL 17942**<br>State Lease 17942, recorded in COB 1061, Folio 29, Plaquemines Parish, Louisiana, insofar and only insofar as said lease covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well. | Leasehold | 37.50000% | XTO Offshore Inc. |
| **3470-0001-00** | **Breton Sound 45 - LA SL 17674**<br>State Lease No. 17674, recorded in COB 1038, Folio 330, Plaquemines Parish, Louisiana, insofar and only insofar as said lease covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well. | Leasehold | 37.50000% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3470-0002-00 | **Breton Sound 52 - LA SL 17675**<br>State Lease No. 17675, recorded in COB 1038, Folio 318, Plaquemines Parish, Louisiana, insofar and only insofar as said lease covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well. | Leasehold | 37.50000% | XTO Offshore Inc. |
| 3372-0005-00 | **Breton Sound 52 - LA SL 12806**<br>State Lease No. 12806, recorded in COB 670, Folio 207, Plaquemines Parish, Louisiana: (Pt. D) less and except all rights to the UV3-B interval defined as being the stratigraphic equivalent of the interval encountered between the measured depths of 10,860' and 10,950' in the Phasor Induction/Sonic/GR log in the Century (Tenneco) SL 12806 #1 Well located in Breton Sound Block 52, **AND** (Pt. E) insofar and only insofar as SL 12806 falls within the boundaries of that certain Voluntary Unit known as the UV B RA SUA operated by Century Exploration New Orleans, Inc., covering 1113.02 acres and insofar only as SL 12806 covers depths between 10,596' and 10,822' MD in the electric log for the Century UV B RA VUA; SL 17675 #1 Well | Leasehold | 50.00000%<br>37.50000% | Pt. D: XTO Offshore Inc.<br>Pt. E: XTO Offshore Inc. |
| 3372-0003-00 | **Breton Sound 52 - LA SL 16737**<br>State Lease No. 16737, recorded in COB 978, Folio 439, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3149-0001-00 | **Breton Sound 53 - LA SL 3770**<br>State Lease No. 3770, recorded in COB 239, Folio 675, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers depths from the surface down to a subsurface depth of 10,800'. | Leasehold | 50.00000% | XTO Offshore Inc. |
| 3372-0002-00 | **Breton Sound 53 - LA SL 16738**<br>State Lease No. 16738, recorded in COB 978. Folio 456, Plaquemines Parish, Louisiana, insofar and insofar only as said lease covers and effects acreage located within the confines of the Textularia W Zone, Reservoir A Unit, created by Order No. 1245-B. | Leasehold | 50.00000% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3076-0001-00 | **East Cameron 178 - OCS-G 27834**<br>All of Block 178, East Cameron Area | Record Title | 60.00000% | XTO Offshore Inc. |
| 1634-0001-00 | **Eugene Island 226, OCS-G 33094**<br>All of Block 226, Eugene Island Area | Record Title | 100.00000% | XTO Offshore Inc. |
| | **Eugene Island 273 Reservoir Unit (0'-4900' Sand) Federal Unit 891012338**<br>Comprised of portions of Eugene Island 272, 273, 284 and 285 | Federal Unit | 10.96445% | XTO Offshore Inc. |
| 3215-0001-00 | **Eugene Island 272 - OCS-G 0986**<br><br>All of Block 272, Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| | E/2/SE/4; SW/4SE/4; E/2NW/4SE/4; SW/4NW/4SE/4; E/2SE/4SW/4; SE/4SW/4NE/4; SW/4/NE/4NE/4; SE/4NE/4; SE/4NE/4NE/4 of Block 272, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR as said lease covers operating rights from the surface to the base of the 4900-B Sand, the base of which sand is identified on the IES Log of the Amoco Production Company, et al, Block 273 Well No. 1 at a depth of 4,896' MD (4,859' subsea) | Operating Rights | 30.00000% | XTO Offshore Inc. |
| 3216-0001-00 | **Eugene Island 284 - OCS-G 0991**<br>NE/4; SE/4; E/2SE/4NW/4; E/2SW/4; SW/4SW/4; SE/4NW/4SW/4; SE/4NE/4NW/4 of Block 284, Eugene Island Area, South Addition | Record Title 1: | 15.00000% | XTO Offshore Inc. |
| | NE/4NE/4NW/4; W/2E/2NW/4; W/2NW/4; N/2NW/4SW/4; SW/4NW/4SW/4 of Block 284, Eugene Island Area, South Addition | Record Title 2: | 30.00000% | XTO Offshore Inc. |
| | W/2NW/4; W/2SE/4NW/4; W/2NE/4NW/4; NE/4NE/4NW/4; W/2NW/4SW/4; NE/4NW/4SW/4 of Block 284, Eugene Island Area, South Addition, from the surface of the earth down to the base of the 4900-B Sand, the base of which sand is identified on the IES log of the Amoco Production Company, et al, Block 273 Well No. 1 at a depth of 4,896' MD / 4,859' subsea TVD | Operating Rights 1: | 30.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-4-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | NE/4NE/4NW/4; W/2E/2NW/4; W/2NW/4; N/2NW/4SW/4; SW/4NW/4SW/4 of Block 284, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR as said lease covers those depths from below the base of the 4900-B Sand, the base of which is identified on the IES log of the Amoco Production Company, et al, Block 273 Well No. 1 at a depth of 4,896' MD / 4,859' subsea TVD | Operating Rights 2: | 15.00000% | XTO Offshore Inc. |
| | **EI 292 Field Unit Federal Unit #891008764** Comprised of portions of Eugene Island 286, 292, 293, 308, 309 | Federal Unit | 29.87349% | XTO Offshore Inc. |
| 3217-0001-00 | **Eugene Island 286, OCS-G 0993** All of Block 286, Eugene Island Area, South Addition | Record Title | 45.00000% | XTO Offshore Inc. |
| | N/2 of Block 286, Eugene Island Area, South Addition, from the surface of the earth to the stratigraphic equivalent of 6,611 feet subsea (which represents a depth of 100 feet below the depth of 6,511 feet subsea, as encountered at a total depth in the Hall-Houston Oil Company OCS-G 0993 Well No. 6 ST No. 1. | Operating Rights | 45.00000% | XTO Offshore Inc. |
| 3218-0001-00 | **Eugene Island 292, OCS-G 0994** All of Block 292, Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3219-0001-00 | **Eugene Island 293, OCS-G 0995** All of Block 293 Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| | N/2N/2 of Block 293, Eugene Island Area, South Addition, from the surface of the earth, down to and including, but not below, a total depth of 5,505' TVD | Operating Rights 1: | 100.00000% | XTO Offshore Inc. |
| | NE/4SW/4; NW/4SE/4; SE/4NW/4 of Block 293, Eugene Island Area, South Addition, from the surface of the earth down to and including, but not below, a total depth of 5,995' TVD | Operating Rights 2: | 100.00000% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3220-0001-00 | **Eugene Island 308, OCS-G 0996**<br>All of Block 308, Eugene Island Area, South Addition | Record Title | 12.00000% | XTO Offshore Inc. |
| | N/2NW/4NW/4; SW/4NW/4SW/4; W/2SW/4SW/4 of Block 308, Eugene Island Area, South Addition | Operating Rights | 30.00000% | XTO Offshore Inc. |
| | All of Block 308, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR AS to operating rights as to the C-1 Sand, identified as that sand found in the interval in the Forest Oil Corporation Unit No. 1 Well, 3,985 feet to 4,125 feet (both measured depths), and any extension of said sand found on OCS-G 0996 and OCS-G 1982 | Operating Rights | 30.00000% | XTO Offshore Inc. |
| | SE/4SE/4NE/4; E/2E/2SE/4 of Block 308, Eugene Island Area, South Addition, INSOFAR AND ONLY INSOFAR AS to operating rights from the surface down to a depth which is the stratigraphic equivalent of the measured depth of 6,050 feet found in the No. 2 OCS-G 0996 Well | Operating Rights | 30.00000% | XTO Offshore Inc. |
| 3221-0001-00 | **Eugene Island 309, OCS-G 0997**<br>All of Block 309, Eugene Island Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| | SW/4 of Block 309, Eugene Island Area, South Addition INSOFAR AND ONLY INSOFAR as to depths from the surface of the earth down to and including, but not below, a total depth of 7,014' TVD (identified as the total depth of the Columbia Gas Development Corporation OCS-G 1981 J-1 S/T #1 - being 7,014' TVD /8,385' MD) | Operating Rights | 37.50000% | XTO Offshore Inc. |
| 3077-0001-00 | **Eugene Island 311 - OCS-G 27918**<br>All of Block 311, Eugene Island Area, South Addition | Record Title | 60.00000% | XTO Offshore Inc. |
| 3212-0001-00 | **Eugene Island 312 - OCS-G 22679**<br>E/2NW/4 & W/2NE/4 of Block 312, Eugene Island Area, South Addition, from 0 to 9,000' TVD | Operating Rights | 60.00000% | XTO Offshore Inc. |

**EXHIBIT A** -6-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3214-0001-00 | **Eugene Island 313 - OCS-G 2608**<br>NE/4 of Block 313, Eugene Island Area, South Addition, from the sub-surface of the ground down to and including 100' below the stratigraphic equivalent of the true vertical depth of 8,320 feet subsea as encountered in the Aviara Energy Corporation OCS-G 2608 No. J-4 Well | Operating Rights | 25.00000% | XTO Offshore Inc. |
| 3264-0001-00 | **High Island 34, OCS-G 20655**<br>All of Block 34, High Island Area | Record Title | 45.00000% | XTO Offshore Inc. |
| 3261-0001-00 | **High Island A-376 - OCS-G 2754**<br>All of Block A-376, High Island Area, East Addition, South Extension | Record Title | 12.50000% | XTO Offshore Inc. |
| 3265-0001-00 | **High Island A-554, OCS-G 21356**<br>All of Block A-554, High Island Area, South Addition | Record Title | 25.00000% | XTO Offshore Inc. |
| 3074-0001-00 | **Main Pass 29, OCS-G 27196**<br>All of Block 29, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 1625-0001-00 | **Main Pass 87- OCS-G 31433**<br>All of Block 87, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3329-0001-00 | **Main Pass 94 - OCS-G 7802**<br>SE/4 of Block 94, Main Pass Area, as to those depths from the surface of the earth down to 9,414' MD / 5,666' TVD | Operating Rights | 20.85200% | XTO Offshore Inc. |
| 1625-0002-00 | **Main Pass 96- OCS-G 31434**<br>All of Block 96, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3318-0001-00 | **Main Pass 101 - OCS-G 22792**<br>All of Block 101, Main Pass Area | Record Title | 60.45000% | XTO Offshore Inc. |

EXHIBIT A

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | N/2N/2NE/4 of Block 101, Main Pass Area, limited to those depths from the surface of the earth down to a depth equal to the stratigraphic equivalent of the total depth drilled in the Main Pass Block 101 Well No. 7, being 5,434 feet True Vertical Depth | Operating Rights | 58.50000% | XTO Offshore Inc. |
| 3322-0001-00 | **Main Pass 109 - OCS-G 22794**<br>SW/4NW/4, NW/4SE/4NW/4, SW/4NE/4NW/4 of Block 109, Main Pass Area, from the surface of the earth down to a depth of 100' below the stratigraphic equivalent of a true vertical depth of 4,622 feet as measured in the LLOG Exploration Offshore, Inc. OCS-G 22794 No. 1 Well | Operating Rights | 25.99740% | XTO Offshore Inc. |
| | N/2NE/4, NW/4SW/4NE/4, NE/4SE/4NW/4, SE/4NE/4NW/4 of Block 109, Main Pass Area, from the surface of the earth down to a depth of 100' below the stratigraphic equivalent of a true vertical depth of 9,937 feet as measured in the LLOG Exploration Offshore, Inc. OCS-G 22794 No. 2 Well (currently named the #D-1 Well) | Operating Rights | 25.99740% | XTO Offshore Inc. |
| 3325-0001-00 | **Main Pass 112 - OCS-G 9707**<br>All of Block 112, Main Pass Area | Record Title | 100.00000% | XTO Offshore Inc. |
| 3072-0001-00 | **Main Pass 114, OCS-G 27201**<br>All of Block 114, Main Pass Area | Record Title | 100.00000% | XTO Offshore Inc. |
| 3326-0001-00 | **Main Pass 116 - OCS-G 3419**<br>All of Block 116, Main Pass Area | Record Title | 100.00000% | XTO Offshore Inc. |
| 3331-0001-00 | **Main Pass 118, OCS-G 22797**<br>S/2 of Block 118, Main Pass Area, from the surface down to 20,000 feet true vertical depth subsea | Operating Rights | 50.00000% | XTO Offshore Inc. |
| 1626-0001-00 | **Main Pass 119, OCS-G 31438**<br>All of Block 119, Main Pass Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3061-0001-00 | **Main Pass 125, OCS-G 25019**<br>All of Block 125, Main Pass Area | Record Title | 62.50000% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3561-0001-00 | **Main Pass 179, OCS-G 33127**<br>All of Block 179, Main Pass Area, South and East Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| 3422-0001-00 | **Ship Shoal 79 - OCS-G 15277**<br>All of Block 79, Ship Shoal Area, INSOFAR AND ONLY INSOFAR as the Lease covers from the surface to one hundred feet below the stratigraphic equivalent of 11,318' true vertical depth as seen in the electric log dated March 7, 2001 for the OCS-G 15277 Well No. 2 | Operating Rights | 35.10000% | XTO Offshore Inc. |
| 3423-0001-00 | **Ship Shoal 188 - OCS-G 22712**<br>All of Block 188, Ship Shoal Area | Record Title | 100.00000% | XTO Offshore Inc. |
| | All of Block 188, Ship Shoal Area, INSOFAR AND ONLY INSOFAR as to depths from the surface of the earth down to 17,000 feet subsea | Operating Rights | 75.00000% | XTO Offshore Inc. |
| | XTO Offshore Inc. and its Affiliates reserve and exclude all rights they have under that certain Lease Purchase Agreement dated effective January 22, 2002, by and between EEX Corporation ("EEX") and Aviara Energy Corporation ("Aviara"), as amended April 1, 2005, by and between Newfield Exploration Gulf Coast, Inc. and Hunt Petroleum (AEC), Inc., as such agreements pertain to all depths from 17,000 feet to 100,000 feet subsea and expressly reserve and exclude the 5% of 8/8ths overriding royalty interest reserved by Aviara in that certain Assignment of Operating Rights dated effective January 22, 2002, by and between Aviara and EEX. | | | |
| | **Ship Shoal 271 Field Unit Federal Unit #891008784**<br>Comprised of portions of Ship Shoal 247, 248, 249, 270, 271 | Federal Unit | 34.27967% | XTO Offshore Inc. |
| 3424-0001-00 | **Ship Shoal 247, OCS-G 1028**<br>N/2 of Block 247, Ship Shoal Area, South Addition | Record Title | 36.66670% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | SW/4 of Block 247, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| | SE/4 of Block 247, Ship Shoal Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3425-0001-00 | **Ship Shoal 248, OCS-G 1029**<br>NW/4; S/2 of Block 248, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| | NE/4 of Block 248, Ship Shoal Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3426-0001-00 | **Ship Shoal 249, OCS-G 1030**<br>All of Block 249, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| | NE/4 and S/2 of Block 249, Ship Shoal Area, South Addition only as to those depths above the stratigraphic equivalent of 15,108 feet as identified on the electric log for the OCS-G 1030, well No. D-2. | Operating Rights | 12.00000% | XTO Offshore Inc. |
| | NW/4 of Block 249, Ship Shoal Area, South Addition only as to those depths above the stratigraphic equivalent of 15,108 feet as identified on the electric log for the OCS-G 1030, well No. D-2. | Operating Rights | 12.00000% | XTO Offshore Inc. |
| 3427-0001-00 | **Ship Shoal 270, OCS-G 1037**<br>All of Block 270, Ship Shoal Area, South Addition | Record Title | 40.00000% | XTO Offshore Inc. |
| 3428-0001-00 | **Ship Shoal 271, OCS-G 1038**<br>All of Block 271, Ship Shoal Area, South Addition | Record Title | 30.00000% | XTO Offshore Inc. |
| 3445-0001-00 | **South Marsh Island 40, OCS-G 13607**<br>All of Block 40, South Marsh Island Area | Record Title | 89.00000% | XTO Offshore Inc. |
| 3446-0001-00 | **South Marsh Island 41, OCS-G 1192**<br>E/2 of Block 41, South Marsh Island Area, INSOFAR AND ONLY INSOFAR as to depths from surface of the earth down to 11,500 feet TVD | Operating Rights | 89.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-10-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3447-0001-00 | **South Marsh Island 44, OCS-G 23840** <br> All of Block 44, South Marsh Island Area, from surface down to a depth of 15,500' TVD | Operating Rights | 50.00000% | XTO Offshore Inc. |
| 3080-0001-00 | **South Marsh Island 45, OCS-G 31353** <br> All of Block 45, South Marsh Island Area | Record Title | 50.00000% | XTO Offshore Inc. |
| 3435-0001-00 | **South Marsh Island 109, OCS-G 24873** <br> All of Block 109, South Marsh Island Area, South Addition | Record Title | 54.16667% | XTO Offshore Inc. |
| 1383-0003-00 | **South Marsh Island 138, OCS-G 33616** <br> All of Block 138, South Marsh Island Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| 3437-0001-00 | **South Marsh Island Block 139, OCS-G 21106** <br> SW/4SW/4 and S/2NW/4SW/4 of Block 139 South Marsh Island Area, South Addition, as to depths from below 6,000' TVD subsea to and including 9,830' TVD, being 100' below the stratigraphic equivalent of the total depth drilled in the Hunt Petroleum (AEC), Inc. OCS-G 21106 No. B-2 ST00 BP01 Well | Operating Rights | 75.00000% | XTO Offshore Inc. |
| 3439-0001-00 | **South Marsh Island Block 146 , OCS-G 9546** <br> NW/4NW/4 and NW/4NE/4NW/4 of Block 146, South Marsh Island Area, South Addition, as to depths from 6,000' TVD subsea down to and including 9,830' TVD being 100' below the stratigraphic equivalent of the total depth drilled (9730' TVD) in the Hunt Petroleum (AEC), Inc. OCS-G 21106 (South Marsh Island Block 139) No. B-2 ST00 BP01 Well. | Operating Rights | 75.00000% | XTO Offshore Inc. |
| 3438-0001-00 | **South Marsh Island 142, OCS-G 1216** <br> All of Block 142, South Marsh Island Area, South Addition | Record Title | 55.00000% | XTO Offshore Inc. |
|  | S/2SE/4; E/2S/2SW/4 of Block 142, South Marsh Island Area, South Addition | Operating Rights | 55.00000% | XTO Offshore Inc. |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner | |
|---|---|---|---|---|---|
| 3451-0001-00 | **South Pass 42 - LA SL 16869**<br>State Lease No. 16869, recorded in COB 995, Folio 683, Plaquemines Parish, Louisiana, INSOFAR ONLY as said lease covers land lying INSIDE the geographic boundaries of that certain Voluntary Unit designated as the **04 RA VUA Unit**, established by that certain Voluntary Unit Agreement dated October 19, 2005, recorded in Book 1137, Page 493, File No. 2007-00001208 of the Conveyance Records of Plaquemines Parish, Louisiana | Leasehold | 75.00000% | XTO Offshore Inc. | |
| 3451-0007-00 | **South Pass 43 - LA SL 16870**<br>State Lease No. 16870, recorded in COB 992, Folio 8, Plaquemines Parish, Louisiana, INSOFAR ONLY as said lease covers land lying INSIDE the geographic boundaries of that certain Voluntary Unit designated as the **04 RA VUA Unit**, established by that certain Voluntary Unit Agreement dated October 19, 2005, recorded in Book 1137, Page 493, File No. 2007-00001208 of the Conveyance Records of Plaquemines Parish, Louisiana | Leasehold | 75.00000% | XTO Offshore Inc. | |
| 3451-0006-00 | **South Pass 43, OCS-G 22781**<br>That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument. | Record Title | 9.75000% | XTO Offshore Inc. | |
| | That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument INSOFAR AND ONLY INSOFAR as it covers depths from the surface of the earth to the base of the "O" Sand Series defined as the stratigraphic equivalent of a measured depth of 12,030 feet as seen on the Induction Electric Log for the Shell Oil Company, State Lease 2554 Well No. 10 | Operating Rights | 58.50000% | XTO Offshore Inc. | |
| | That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument INSOFAR AND ONLY INSOFAR as it covers depths from below the base of the "O" Sand Series to 30,000 feet | Operating Rights | 19.50000% | XTO Offshore Inc. | H |

**EXHIBIT A**

-12-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3531-0001-00 | **Vermilion 313 OCS-G 1172**<br>All of Block 313, Vermilion Area, South Addition | Record Title | 50.00000% | XTO Offshore Inc. |
| | SE/4 of Block 313, Vermilion Area, South Addition, INSOFAR AND ONLY INSOFAR as the operating rights cover from the surface of the earth down to and including, but not below, a total depth of 9,000' TVD | Operating Rights 1 | 50.00000% | XTO Offshore Inc. |
| | N/2; SW/4 of Block 313, Vermilion Area, South Addition, INSOFAR AND ONLY INSOFAR as the operating rights cover from the surface of the earth down to and including, but not below, a total depth of 9,000' TVD | Operating Rights 2 | 50.00000% | XTO Offshore Inc. |
| 3567-0001-00 | **Vermilion 264, OCS-G 33603**<br>All of Block 264, Vermilion Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| | **West Cameron Block 507 Field Unit Federal Unit #754394008**<br>Comprised of portions of West Cameron 485 & 507 | Federal Unit | 100.00000% | XTO Offshore Inc. |
| 3163-0001-00 | **West Cameron 485,  OCS-G 2220**<br>All of Block 485, West Cameron Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| 3165-0001-00 | **West Cameron 507 (S/2), OCS-G 10594**<br>S/2 of Block 507, West Cameron Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |
| | SW/4SE/4; E/2SE/4; S/2NW/4SE/4; NE/4NW/4SE/4 of Block 507, West Cameron Area, South Addition, from the surface of the earth down to and including 100' below the stratigraphic equivalent of the true vertical depth of 10,798' as encountered in the Newfield Exploration Company, OCS-G 2549 No. C-1 (formerly No. 2) Well | Operating Rights | 50.00000% | XTO Offshore Inc. |
| 3164-0001-00 | **West Cameron 507 (N/2), OCS-G 2549**<br>N/2 of Block 507, West Cameron Area, South Addition | Record Title | 100.00000% | XTO Offshore Inc. |

**EXHIBIT A**

-13-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | E/2NE/4; SE/4SW/4NE/4 of Block 507, West Cameron Area, South Addition, from the surface of the earth down to and including 100' below the stratigraphic equivalent of the true vertical depth of 10,798' as encountered in the Newfield Exploration Company OCS-G 2549 No. C-1 (formerly No. 2) Well. | Operating Rights | 50.00000% | XTO Offshore Inc. |

**EXHIBIT A**

**EXHIBIT A-1**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

## CONTRACTS

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0283698 | Breton Sound Area | 25 | SL 19718 | Lease | July 9, 2008 | State of Louisiana | Robert A. Schreider, Inc. | 9-Jul-08 |
| 0283658 | Breton Sound Area | 25 | 31442 | Lease | February 1, 2008 | United States of America | LLOG Exploration Offshore, Inc. | 1-Mar-09 |
| 0297856 | Breton Sound Area | 25 | SL 19718 & 31442 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc. | LLOG Exploration Offshore, Inc. et al | 1-Mar-09 |
| 0297980 | Breton Sound Area | 25 | SL 19718 & 31442 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc.et al | XTO Offshore Inc. | 1-Feb-08 |
| | | | | | | | | |
| 0276210 | Breton Sound | 28 | SL 1999 | Lease | August 8, 1951 | State of Louisiana | Kerr-McGee Oil Industries, Inc. | |
| 0295077 | Breton Sound | 28 | SL 1999 | Farmout Agreement | September 5, 2002 | Kerr-McGee Oil & Gas Corp. | LLOG Exploration Offshore, Inc. | |

**EXHIBIT A-1**                                                    -15-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417942 | Breton Sound | 28 | SL 1999 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| | | | | | | | | |
| | | | | | | | | |
| 0276214 | Breton Sound | 53 | SL 3770 | Lease | April 26, 1961 | State of Louisiana | Union Oil Company of California | |
| 0276222 | Breton Sound | 52 | SL 12806 | Lease | July 13, 1987 | State of Louisiana | Tenneco Oil Company | |
| 0276214 | Breton Sound | 53 | SL 3770 | Partial Assignment | May 1, 1994 | Union Oil Company of California | Badger Oil Corporation | Consent to Assign; Mariner Energy Resources, Inc. |
| 0276223 | Breton Sound | 45 | SL 15683 | Lease | April 14, 1997 | State of Louisiana | Stephen M. Jenkins & Associates, Inc. | |
| 0276218 | Breton Sound | 44 | SL 16736 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |
| 0276221 | Breton Sound | 45 | SL 16735 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |
| 0276220 | Breton Sound | 52 | SL 16737 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |
| 0276219 | Breton Sound | 53 | SL 16738 | Lease | June 19, 2000 | State of Louisiana | Robert A. Schroeder, Inc. | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295080 | Breton Sound | 44, 45, 52, 53 | SL 3770, 12806, 15683, 16735, 16736, 16737 & 16738 | Operating Agreement, as amended | January 15, 2001 | LLOG Exploration & Production Company | Century Exploration New Orleans, Inc. | |
| 0342454 | Breton Sound | 45 & 53 | SL 3770 & 15683 | Production Handling Agreement, as amended | December 1, 2001 | LLOG Exploration & Production Company | Century Exploration Company | |
| 0276227 | Breton Sound | 45 | SL 17674 | Lease | December 16, 2002 | State of Louisiana | Century Exploration Company | |
| 0276228 | Breton Sound | 52 | SL 17675 | Lease | December 16, 2002 | State of Louisiana | Century Exploration Company | |
| 0295082 | Breton Sound | 45 & 52 | SL 12806, 15683, 17674, 17675 & 17942 | Operating Agreement | March 27, 2003 | Century Exploration New Orleans, Inc. | LLOG Exploration & Production Company | |
| 0295081 | Breton Sound | 44, 45, 52, 53 | SL 12806, 15683, 16735, 16736, 16737 & 16738 | TEX W RA SUA Unit Agreement | June 16, 2003 | Louisiana Office of Conservation | LLOG Exploration Company, LLC | TEX W RA SUA; Order No. 1245-B |
| 0295079 | Breton Sound | 45 & 52 | SL 12806, 15683, 17674, 17675 & 17942 | UV B RA Voluntary Unit Agreement | August 14, 2003 | The State Mineral Board | Century Exploration Company, et al | UV B RA VUA; SL 17675 No. 1 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0314460 | Breton Sound | 52 & 53 | SL 3770 & 12806 | Production Handling Agreement | August 19, 2003 | Palace Operating Company | LLOG Exploration & Production Company, et al | |
| 0276229 | Breton Sound | 45 | SL 17942 | Lease | November 17, 2003 | State of Louisiana | Cypress Exploration Company | |
| 0417942 | Breton Sound | 44, 45, 52, 53 | SL 3770, 12806, 15683, 16735, 16736, 16737, 16738, 17942, 17674, 17675 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0295083 | Breton Sound | 52 | SL 17675 | Production Handling Agreement | May 15, 2004 | Century Exploration New Orleans, Inc., et al | Century Exploration New Orleans, Inc. | UV B RA VUA; SL 17675 No. 1 Well Production |
| 0361567 | Breton Sound | 45 | SL 15683 | Farmout Agreement, as amended | November 1, 2010 | XTO Offshore, Inc. | Century Exploration New Orleans, Inc. | Century SL 19051 #1; Virgo N. Prospect |
| 0365804 | Breton Sound | 45 | SL 15683 | Order No. 1245-B | January 12, 2011 | The State Mineral and Energy Board | | BS 53 3-B RA VUA; SL 19051 #1 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

-18-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0278039 | East Cameron Area | 178 | 27834 | Lease | July 1, 2006 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-06 |
| 0295297 | East Cameron Area | 178 | 27834 | Operating Agreement | February 1, 2008 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | February 1, 2008 Nippon |
| 0295296 | East Cameron Area | 178 | 27834 | Participation Agreement | February 1, 2008 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | February 1, 2008 Nippon |
| 0295295 | East Cameron Area | 178 | 28533 | Right-Of-Way | October 7, 2008 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 28533, Segment 17688 |
| | | | | | | | | |
| | | | | | | | | |
| 0297145 | Eugene Island Area | 226 | 33094 | Lease | July 1, 2009 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-09 |
| 0340710 | Eugene Island Area | 226 | 33094 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward |
| | | | | | | | | |
| | | | | | | | | |
| 0265425 | Eugene Island Area, South Addition | 272 | 986 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294344 | Eugene Island Area, South Addition | 272 | 986 | Unit Operating Agreement | February 13, 1970 | Forest Oil Corporation | Cabot Corporation, et al | 13-Feb-70 |
| 0417927 | Eugene Island Area, South Addition | 272 | 986 | Unit Agreement #14-08-0001-12338 | December 1, 1972 | Forest Oil Corporation | Amoco Production Company, et al | #14-08-0001-12338 Dtd. December 1, 1972 |
| 0294344 | Eugene Island Area, South Addition | 272 | 986 | Gas Balancing & Storage Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | (GBA) |
| | | | | | | | | |
| | | | | | | | | |
| 0265426 | Eugene Island Area, South Addition | 284 | 991 | Lease | June 1,1962 | United States of America | Forest Oil Corporation | June 1,1962 |
| 0294344 | Eugene Island Area, South Addition | 284 | 991 | Unit Operating Agreement | February 13, 1970 | Forest Oil Corporation | Cabot Corporation, et al | (See EI 272 File) |

**EXHIBIT A-1**

-20-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417927 | Eugene Island Area, South Addition | 284 | 991 | Unit Agreement #14-08-0001-12338 | December 1, 1972 | Forest Oil Corporation | Amoco Production Company, et al | (See EI 272 File) |
| 0294344 | Eugene Island Area, South Addition | 284 | 991 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | (See EI 272 File) |
| | | | | | | | | |
| | | | | | | | | |
| 0265419 | Eugene Island Area, South Addition | 286 | 993 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294315 | Eugene Island Area, South Addition | 286 | 993 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0294314 | Eugene Island Area, South Addition | 286 | 993 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417934 | Eugene Island Area, South Addition | 286 | 993 | Unit Agreement EI 287 "D" Platform WI Unit | December 29, 1977 | Forest Oil Corporation | Columbia Gas Development Corporation | EI 287 "D" Platform WI Unit |
| 0294314 | Eugene Island Area, South Addition | 286 | 993 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| 0418812 | Eugene Island Area, South Addition | 286 | 993 | Operating Agreement | April 28, 1995 | Hall-Houston Oil Company | Columbia Gas Development Corporation | (N/2) April 28, 1995 |
| 0294321 | Eugene Island Area, South Addition | 286 | 993 | Participation Agreement, as amended | April 28, 1995 | Columbia Gas Development Corporation | Hall-Houston Oil Company | (N/2) April 28, 1995 |
| 0317713 | Eugene Island Area, South Addition | 286 | 993 | Production Handling Agreement | June 14, 1995 | Columbia Gas Development Corporation | Hall-Houston Oil Company | I Platform  June 14, 1995 |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265418 | Eugene Island Area, South Addition | 292 | 994 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294315 | Eugene Island Area, South Addition | 292 | 994 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 May 4, 1966 |
| 0294314 | Eugene Island Area, South Addition | 292 | 994 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | 4-May-66 |
| 0294314 | Eugene Island Area, South Addition | 292 | 994 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| | | | | | | | | |
| 0265422 | Eugene Island Area, South Addition | 293 | 995 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294314 | Eugene Island Area, South Addition | 293 | 995 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | See Eugene Island 292 |
| 0294315 | Eugene Island Area, South Addition | 293 | 995 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0294314 | Eugene Island Area, South Addition | 293 | 995 | Gas Balancing & Storage Agreement | September 29, 1994 | CNG Producing Company | Columbia Gas Development Corporation | GBA September 29, 1994 |
| | | | | | | | | |
| | | | | | | | | |
| 0265416 | Eugene Island Area, South Addition | 308 | 996 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294314 | Eugene Island Area, South Addition | 308 | 996 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | May 4, 1966 See EI 292 UNIT |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294315 | Eugene Island Area, South Addition | 308 | 996 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0419424 | Eugene Island Area, South Addition | 308 | 996 | Operating Agreement | June 1, 1991 | Energy Development Corporation | Columbia Gas Development Corporation, et al | June 1, 1991  Blks 308 & 315 (N/2) |
| | | | | | | | | |
| | | | | | | | | |
| 0265423 | Eugene Island Area, South Addition | 309 | 997 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | |
| 0294315 | Eugene Island Area, South Addition | 309 | 997 | Unit Agreement #14-08-0001-8764 | May 4, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | #14-08-0001-8764 |
| 0294314 | Eugene Island Area, South Addition | 309 | 997 | Unit Operating Agreement, as amended | May 4, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | |

**EXHIBIT A-1**

-25-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418286 | Eugene Island Area, South Addition | 309 | 997 | Participation Agreement, as amended | November 22, 1989 Amended January 2, 1990 | Columbia Gas Development Corporation | Total Minatome Corporation, et al | EI 309 "J" Platform |
| 0294314 | Eugene Island Area, South Addition | 309 | 997 | Gas Storage & Balancing Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| 0418585 | Eugene Island Area, South Addition | 309 | 997 | Unit Agreement EI 309 "C" & "G" Platforms | January 1, 1996 | Forest Oil Corporation | Columbia Gas Development Corporation | EI 309 "C" & "G" Platforms - WI Unit (supercedes 12/29/77 Unit Agmt) |
| 0294581 | Eugene Island Area, South Addition | 309 | 997 | Operating Agreement | June 1, 1999 | Aviara Energy Corporation | Eugene Island 309, LLC | EI 309 Development Program - Exhibit "C" to Venture Agmt |
| 0292529 | Eugene Island Area, South Addition | 309 | 997 | Venture Agreement | June 15, 1999 | Aviara Energy Corporation | Eugene Island 309, LLC | |
| 0418053 | Eugene Island Area, South Addition | 309 | 997 | Production Handling and Operating Agreement | July 1, 2008 | Mariner Energy, Inc., et al | Hunt Petroleum (AEC), Inc., et al | PHA - EI 309 "J" - EI 309 "G" |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0340710 | Eugene Island Area, South Addition | 311 | 27918 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward Obligations |
| 0418791 | Eugene Island Area, South Addition | 311 | 27918 | Area of Mutual Interest Agreement | March 29, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | AMI - EI 311 (S/2) |
| 0352139 | Eugene Island Area, South Addition | 311 | 27918 | Operating Agreement, as amended | October 25, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | See EI 312 Participation Agmt. File |
| 0278043 | Eugene Island Area, South Addition | 311 | 27918 | Lease | July 1, 2006 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-06 |
| | | | | | | | | |
| | | | | | | | | |
| 0277275 | Eugene Island Area, South Addition | 312 | 22679 | Lease | June 1, 2001 | United States of America | Devon Energy Production Company, L.P. | 1-Jun-01 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0340710 | Eugene Island Area, South Addition | 312 | 27679 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward Obligations |
| 0418791 | Eugene Island Area, South Addition | 312 | 27679 | Area of Mutual Interest Agreement | March 29, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | AMI - EI 312 (N/2) |
| 0295226 | Eugene Island Area, South Addition | 312 | 22679 | Farmout Agreement, as amended | October 25, 2005 | Devon Energy Production Company, L.P. | Hunt Petroleum (AEC), Inc. | Oct. 25, 2005 EI 312 with Devon |
| 0295225 | Eugene Island Area, South Addition | 312 | 22679 | Participation Agreement | October 25, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | Oct. 25, 2005 EI 311/312 includes JOA with EPL |
| 0352139 | Eugene Island Area, South Addition | 312 | 22679 | Operating Agreement, as amended | October 25, 2005 | Hunt Petroleum (AEC), Inc. | Energy Partners, Ltd. | See Participation Agmt File |
| 0314146 | Eugene Island Area, South Addition | 312 | 22679 | Production Handling Agreement | January 1, 2007 | Hunt Petroleum (AEC), Inc. et al | Hunt Petroleum (AEC), Inc. et al | Jan. 1, 2007 EI 312/SM 142 |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0266169 | Eugene Island Area, South Addition | 313 | 2608 | Lease | May 1, 1974 | United States of America | Gulf Oil Corporation, et al | 1-May-74 |
| 0294574 | Eugene Island Area, South Addition | 313 | 2608 | Farmout Agreement | May 17, 1999 | PennzEnergy Exploration and Production L.L.C. | Aviara Energy Corporation | May 17, 1999 PennzEnergy |
| 0294331 | Eugene Island Area, South Addition | 313 | 2608 | Participation Agreement | May 18, 1999 | Texaco Exploration and Production Inc. | Aviara Energy Corporation | May 18, 1999  J4 Well Texaco |
| 0294578 | Eugene Island Area, South Addition | 313 | 2608 | Operating Agreement | May 18, 1999 | Aviara Energy Corporation | Texaco Exploration and Production Inc. | See 5/18/99 Participation Agmt File Exhibit "C" to Participation Agmt |
| 0294581 | Eugene Island Area, South Addition | 313 | 2608 | Venture Agreement | June 15, 1999 | Aviara Energy Corporation | Eugene Island 309, L.L.C. | June 15, 1999  EI 309 LLC Venture" Agmt" |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265885 | High Island Area | 34 | 20655 | Lease | December 1, 1998 | United States of America | Aviara Energy Corporation, et al | 1-Dec-98 |
| 0294467 | High Island Area | 34 | 20655 | Operating Agreement, as amended | December 1, 1998 | Aviara Energy Corporation | Pure Resources, L.P., et al | 1-Dec-98 |
| 0265886 | High Island Area | 34 | 24287 | Right-Of-Way | October 15, 2002 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 24287, Segment 13955 |
| | | | | | | | | |
| | | | | | | | | |
| 0313848 | High Island Area, East Add., South Ext. | A365 | 2750 | Operating Agreement, as amended | September 15, 1979 | Anadarko Production Company | Pan Eastern Exploration Company, et al | 9/15/79 HIA-365/376 Contract Area |
| | | | | | | | | |
| 0265435 | High Island Area, East Add., South Ext. | A376 | 2754 | Lease | July 1, 1974 | United States of America | Texaco Inc., et al | 1-Jul-74 |
| 0313848 | High Island Area, East Add., South Ext. | A376 | 2754 | Operating Agreement, as amended | September 15, 1979 | Anadarko Production Company | Pan Eastern Exploration Company, et al | 9/15/79 HIA-365/376 Contract Area |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0266179 | High Island Area, South Addition | A554 | 21356 | Lease | November 1, 1999 | United States of America | Chieftain International (U.S.) Inc. | 1-Nov-99 |
| 0294591 | High Island Area, South Addition | A554 | 21356 | Participation Agreement / Operating Agreement | October 25, 2000 | Chieftain International (U.S.) Inc. | Aviara Energy Corporation, et al | October 25, 2000 - Includes Operating Agmt |
| | | | | | | | | |
| 0277242 | Main Pass Area | 29 | 27196 | Lease | May 1, 2005 | United States of America | Hunt Petroleum (AEC), Inc. | 1-May-05 |
| 0295214 | Main Pass Area | 29 | 27196 | Lease Purchase & Well Participation Agreement | May 18, 2005 | Andex Resources, L.L.C., et al | Hunt Petroleum (AEC), Inc. | 18-May-05 |
| 0295215 | Main Pass Area | 29 | 27196 | Operating Agreement | May 18, 2005 | Hunt Petroleum (AEC), Inc. | Andex Resources, L.L.C., et al | |
| 0295216 | Main Pass Area | 29 | 27196 | Facility Sharing Agreement | July 3, 2006 | Hunt Petroleum (AEC), Inc., et al | Hunt Petroleum (AEC), Inc., et al | MP 29, 118 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0277243 | Main Pass Area | 29 | 28216 | Right-Of-Way | October 31, 2006 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 28216, Segment No. 15810 |
| 0317495 | Main Pass Area | 29 | 27196 | Measurement and Allocation Agreement | November 14, 2007 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | MP 29, 114, 118 |
| 0417466 | Main Pass Area | 29 | 27196 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| 0417463 | Main Pass Area | 29 | 27196 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| 0283491 | Main Pass Area | 87 | 31433 | Lease | January 1, 2008 | United States of America | LLOG Exploration Offshore, Inc. | 1-Jan-08 |
| 0297795 | Main Pass Area | 87 | 31433 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc. | XTO Offshore Inc. | 1-Mar-09 |
| 0297980 | Main Pass Area | 87 | 31433 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc., et al | XTO Offshore Inc. | See BS 25 Federal Lease Folder |
| | | | | | | | | |
| 0276265 | Main Pass Area | 94 | 7802 | Lease | July 1, 1985 | United States of America | Kerr-McGee Corporation, et al | 1-Jul-85 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295118 | Main Pass Area | 94 | 7802 | Operating Agreement, as amended | March 3, 1986 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | |
| 0295115 | Main Pass Area | 94 | 7802 | Participation Agreement | November 1, 2001 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | November 1, 2001 Includes OPERATING AGMT |
| 0418824 | Main Pass Area | 94 | 7802 | Production Handling Agreement | January 24, 2002 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | 24-Jan-02 |
| 0417942 | Main Pass Area | 94 | 7802 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| | | | | | | | | |
| 0283524 | Main Pass Area | 96 | 31434 | Lease | January 1, 2008 | United States of America | LLOG Exploration Offshore, Inc. | 1-Jan-08 |
| 0297835 | Main Pass Area | 96 | 31434 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc. | XTO Offshore Inc. | See Main Pass 87 |
| 0297980 | Main Pass Area | 96 | 31434 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore, Inc., et al | XTO Offshore Inc. | See BS 25 Federal Lease Folder |
| | | | | | | | | |
| | | | | | | | | |
| 0276266 | Main Pass Area | 101 | 22792 | Lease | July 1, 2001 | United State of America | Cheniere Energy, Inc., et al | 1-Jul-01 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295122 | Main Pass Area | 101 | 22792 | Operating Agreement, as amended | August 10, 2001 | Cheniere Energy, Inc. | Davis Gulf Coast, Inc. et al | 10-Aug-01 |
| 0295115 | Main Pass Area | 101 | 22792 | Participation Agreement | November 2, 2001 | LLOG Exploration Offshore, Inc. | Cheniere Energy, Inc. | November 2, 2001 LLOG-Chenier |
| 0276267 | Main Pass Area | 101 | 24687 | Right-Of-Way | September 29, 2003 | Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 24687 Seg 14304 |
| 0417942 | Main Pass Area | 101 | 22792 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0295125 | Main Pass Area | 101 | 22792 | Compromise Settlement Agreement | March 26, 2006 | Century Exploration New Orleans, Inc. | Davis Gulf Coast, Inc. et al | MP 101 B3 Well |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
| 0276271 | Main Pass Area | 109 | 22794 | Lease | May 1, 2001 | United States of America | Samedan Oil Corporation, et al | 1-May-01 |
| 0295141 | Main Pass Area | 109 | 22794 | Joint Operating Agreement | May 1, 2001 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | Exhibit D to FO & JPA |
| 0295140 | Main Pass Area | 109 | 22794 | Farmout & Joint Participation Agreement | April 23, 2003 | Kerr-McGee Oil & Gas Corporation | LLOG Exploration Offshore Inc. | April 23, 2003 Farmout & Joint Participation Agmt |
| 0417942 | Main Pass Area | 109 | 22794 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| 0278033 | Main Pass Area | 112 | 9707 | Lease | June 1, 1988 | United States of America | Diamond Shamrock Offshore Partners Limited Partnership | 1-Jun-88 |
| 0278034 | Main Pass Area | 112 | 11738 | Right-Of-Way | April 26, 1990 | Minerals Management Service | Diamond Shamrock Offshore Partners Limited Partnership | ROW OCS-G 11738, Seg 9006 |
| 0419576 | Main Pass Area | 112 | 9707 | Purchase & Sale Agreement | April 1, 2006 | Vintage Petroleum, LLC | Hunt Petroleum (AEC), Inc. | Dated August 17, 2006, eff April 1, 2006 |
| 0417466 | Main Pass Area | 112 | 9707 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| 0417463 | Main Pass Area | 112 | 9707 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| | | | | | | | | |
| 0277281 | Main Pass Area | 114 | 27201 | Lease | July 1, 2005 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-05 |
| 0323989 | Main Pass Area | 114 | 27201 | Production Handling Agreement | August 1, 2007 | Hunt Petroleum (AEC), Inc. | Hunt Petroleum (AEC), Inc., et al | 1-Aug-07 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0317495 | Main Pass Area | 114 | 27201 | Measurement & Allocation Agreement | November 14, 2007 | XTO Offshore Inc. et al | XTO Offshore Inc., et al | |
| | | | | | | | | |
| | | | | | | | | |
| 0278035 | Main Pass Area | 116 | 3419 | Lease | January 1, 1977 | United States of America | Diamond Shamrock Corporation | 1-Jan-77 |
| 0278036 | Main Pass Area | 116 | 12708 | Right-Of-Way | January 8, 1991 | Minerals Management Service | Diamond Shamrock Offshore Partners Limited Partnership | ROW OCS-G 12708, Segment 9248 |
| 0278037 | Main Pass Area | 116 | 25478 | Right-Of-Way | September 24, 2004 | Minerals Management Service | XTO Offshore Inc. | ROW OCS-G 25478 Segment 14895 |
| 0419576 | Main Pass Area | 116 | 3419 | Purchase & Sale Agreement | April 1, 2006 | Vintage Petroleum, LLC | Hunt Petroleum (AEC), Inc. | Dated August 17, 2006, eff April 1, 2006 |
| 0417466 | Main Pass Area | 116 | 3419 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| C0410663 | Main Pass Area | 116 | 3419 | Offshore Connection Agreement | March 1, 2011 | XTO Offshore Inc., et al | Odyssey Pipeline L.L.C. | 1-Mar-11 |
| C0410589 | Main Pass Area | 116 | 3419 | Boarding Agreement | March 1, 2011 | XTO Offshore Inc. | Odyssey Pipeline L.L.C. | 1-Mar-11 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417463 | Main Pass Area | 116 | 3419 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| | | | | | | | | |
| 0277244 | Main Pass Area | 118 | 22797 | Lease | June 1, 2001 | United States of America | Shell Offshore Inc. | 1-Jun-01 |
| 0295220 | Main Pass Area | 118 | 22797 | Farmout Agreement | July 1, 2005 | Shell Offshore Inc. | Hunt Petroleum (AEC), Inc. | July 1, 2005 SHELL FARMOUT & ASSIGNMENTS |
| 0295219 | Main Pass Area | 118 | 22797 | Operating Agreement | August 11, 2005 | Hunt Petroleum (AEC), Inc. | Rosetta Resources Offshore, LLC, et al | August 11, 2005 (Hunt-PetroQuest-Rosetta) |
| 0295218 | Main Pass Area | 118 | 22797 | Participation Agreement | August 11, 2005 | Hunt Petroleum (AEC), Inc. | PetroQuest Energy, L.L.C. | Aug 11, 2005 AGMT W/PETROQUEST & ASSIGNMENTS |
| 0295217 | Main Pass Area | 118 | 22797 | Participation Agreement | August 11, 2005 | Hunt Petroleum (AEC), Inc. | Rosetta Resources Offshore, LLC | Aug 11, 2005 AGMT W/ROSETTA & ASSIGNMENTS |
| 0295216 | Main Pass Area | 118 | 22797 | Facility Sharing Agreement | July 3, 2006 | Hunt Petroleum (AEC), Inc., et al | Hunt Petroleum (AEC), Inc., et al | Jul 3, '06 Incl. Measrmnt & Alloc Agmt 11/14/07 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0277245 | Main Pass Area | 118 | 28217 | Right-Of-Way | October 31, 2006 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 28217, Segment 15811 |
| 0323989 | Main Pass Area | 118 | 22797 | Production Handling Agreement | August 1, 2007 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | MP 114 to 118 |
| 0317495 | Main Pass Area | 118 | 22797 | Measurement and Allocation Agreement | November 14, 2007 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | |
| 0317474 | Main Pass Area | 118 | 22797 | Production Handling Agreement | November 1, 2008 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | MP 125 to 118 |
| 0317474 | Main Pass Area | 118 | 22797 | Production Handling Agreement | November 1, 2008 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | Only applies to MP 29, 114 & 118 |
| 0417466 | Main Pass Area | 118 | 22797 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| Pending | Main Pass Area | 118 | Pending | Right-Of-Way (Pending) | December 1, 2010 | Bureau of Ocean Energy Management, Regulation and Enforcement | XTO Offshore Inc. | ROW OCS-G (Pending) SEGMENT 16342; ROW No. to be assigned |
| 0409199 | Main Pass Area | 118 | 22797 | Sales and Conveyance Agreement | December 10, 2010 | Chevron Pipe Line Company | XTO Offshore Inc. | MP 127 SSTI |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0409295 | Main Pass Area | 118 | 22797 | Letter Agreement | January 11, 2011 | W&T Offshore Inc. | XTO Offshore Inc. | To acquire a portion of ROW OCS-G 11727, Seg 8985 |
| C0410589 | Main Pass Area | 118 | 22797 | Boarding Agreement | March 1, 2011 | XTO Offshore Inc. | Odyssey Pipeline L.L.C. | 1-Mar-11 |
| C0410663 | Main Pass Area | 118 | 22797 | Offshore Connection Agreement | March 1, 2011 | XTO Offshore Inc., et al | Odyssey Pipeline L.L.C. | 1-Mar-11 |
| 0417463 | Main Pass Area | 118 | 22797 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| | | | | | | | | |
| 0283355 | Main Pass Area | 119 | 31438 | Lease | March 1, 2008 | United States of America | LLOG Exploration Offshore Inc. | 1-Mar-08 |
| 0297835 | Main Pass Area | 119 | 31438 | Operating Agreement | March 1, 2009 | LLOG Exploration Offshore Inc. | XTO Offshore Inc., et al | 1-Mar-09 |
| 0297980 | Main Pass Area | 119 | 31438 | Participation Agreement | March 1, 2009 | LLOG Exploration Offshore Inc., et al | XTO Offshore Inc., et al | See BS 25 Federal Lease Folder |
| | | | | | | | | |
| | | | | | | | | |
| 0266623 | Main Pass Area | 125 | 25019 | Lease | July 1, 2003 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-03 |

**EXHIBIT A-1**                                           -39-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294625 | Main Pass Area | 125 | 25019 | Participation Agreement | February 28, 2008 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore Inc. | Feb 28, 2008 (Include Operating Agmt) |
| 0294626 | Main Pass Area | 125 | 25019 | Joint Operating Agreement | February 28, 2008 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore Inc. | |
| 0317474 | Main Pass Area | 125 | 25019 | Production Handling Agreement | November 1, 2008 | XTO Offshore Inc., et al | XTO Offshore Inc., et al | Only applies to MP 29, 114 & 118 |
| 0417466 | Main Pass Area | 125 | 25019 | Pipeline Use Agreement | November 1, 2010 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| 0417463 | Main Pass Area | 125 | 25019 | Pipeline Tie-In & Use Agreement | May 11, 2011 | LLOG Exploration Offshore, LLC, et al | XTO Offshore Inc., et al | MP 29, 112, 118 & 125 |
| | | | | | | | | |
| 0314026 | Main Pass Area, South & East Addition | 179 | 33127 | Lease | July 1, 2009 | United States of America | Hunt Petroleum (AEC), Inc. | 1-Jul-09 |
| | | | | | | | | |
| 0294987 | Ship Shoal Area | 71 | 12347 | Participation Agreement & JOA | October 6, 2003 | PetroQuest Energy, L.L.C. | Hunt Petroleum (AEC) Inc., et al | October 6, 2003 (Includes Operating Agmt) |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294986 | Ship Shoal Area | 71 | 12347 | Production Handling Agreement | October 6, 2003 | PetroQuest Energy, L.L.C. | PetroQuest Energy, L.L.C., et al | 6-Oct-03 |
| | | | | | | | | |
| | | | | | | | | |
| 0276280 | Ship Shoal Area | 80 | 9330 | Right-Of-Way | December 8, 1987 | United States of America, Department of Interior, Minerals Management Service | Samedan Oil Corporation | ROW OCS-G 9330 Segment 8204 |
| 0296277 | Ship Shoal Area | 79 | 15277 | Lease | August 1, 1995 | United States of America | Enron Oil & Gas Company | 1-Aug-95 |
| 0295146 | Ship Shoal Area | 79 | 15277 | Farmout Agreement | June 14, 2000 | EOG Resources Inc. | PetroQuest Energy One, L.L.C. | June 14, 2000 EOG Farmout |
| 0295144 | Ship Shoal Area | 79 | 15277 | Participation Agreement | July 15, 2000 | PetroQuest Energy One, L.L.C. | LLOG Exploration & Production Company | Jul 15, '00 Includes Operating Agmt |
| 0295145 | Ship Shoal Area | 79 | 15277 | Joint Operating Agreement | July 15, 2000 | PetroQuest Energy One, L.L.C. | LLOG Exploration & Production Company | Jul 15, '00 Includes Operating Agmt |
| 0276279 | Ship Shoal Area | 79 | 23713 | Right-Of-Way | May 29, 2002 | United States of America, Department of Interior, Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 23713 Segment 13737 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276278 | Ship Shoal Area | 79 | 23712 | Right-Of-Way | May 29, 2002 | United States of America, Department of Interior, Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 23712 Segment 13736 |
| 0418821 | Ship Shoal Area | 79 | 15277 | Purchase and Sale Agreement | April 15, 2003 | Noble Energy, Inc., et al | LLOG Exploration Offshore, Inc., et al | Purchase of SS 80 "A" |
| 0417942 | Ship Shoal Area | 79 | 15277 | Purchase and Sale Agreement | April 1, 2004 | LLOG Exploration Company, L.L.C., et al | Hunt Petroleum Corporation | Dated 7/9/04, effective 4/1/04 |
| | | | | | | | | |
| | | | | | | | | |
| 0239135 | Ship Shoal Area | 188 | 22712 | Lease | May 1, 2001 | United States of America | Aviara Energy Corporation | |
| 0294599 | Ship Shoal Area | 188 | 22712 | Purchase and Sale Agreement, as amended (XTO reserves all rights reserved by it under this Agreement, as amended 4-1-05, as to depths from 17,000' to 100,000' subsea) | January 22, 2002 | Aviara Energy Corporation | EEX Corporation | Deep Rights; 17,000 to 100,000' subsea |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418795 | Ship Shoal Area | 188 | 22712 | Unit Agreement #754305002 | March 1, 2005 | ExxonMobil Corporation | Newfield Exploration Gulf Coast Inc., et al | #754305002; S. Timbalier Block 168 Unit |
| 0294600 | Ship Shoal Area | 188 | 22712 | Participation Agreement | March 21, 2005 | Hunt Petroleum (AEC), Inc. | Choice Exploration, Inc. | Dated 3/21/05, effective 3/1/05 |
| 0294601 | Ship Shoal Area | 188 | 22712 | Operating Agreement | March 21, 2005 | Hunt Petroleum (AEC), Inc. | Choice Exploration, Inc. | Dated 3/21/05, effective 3/1/05 |
| 0266437 | Ship Shoal Area | 188 | 26977 | Right-of-Way | May 8, 2006 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | ROW OCS-G 26977, Segment 15614 |
| | | | | | | | | |
| | | | | | | | | |
| 0265449 | Ship Shoal Area, South Addition | 247 | 1028 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0418811 | Ship Shoal Area, South Addition | 247 | 1028 | Unit Operating Agreement, as amended | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | June 10, 1966 - SEE SS 271 UNIT OA |
| 0418801 | Ship Shoal Area, South Addition | 247 | 1028 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | Unit #14-08-0001-8784 |

**EXHIBIT A-1**

-43-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418847 | Ship Shoal Area, South Addition | 247 | 1028 | Ownership Agreement | August 17, 1978 | CNG Producing Company | Columbia Gas Development Corporation, et al | "F" Platform |
| 0419113 | Ship Shoal Area, South Addition | 247 | 1028 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |
| 0418811 | Ship Shoal Area, South Addition | 247 | 1028 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0265446 | Ship Shoal Area, South Addition | 248 | 1029 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0418811 | Ship Shoal Area, South Addition | 248 | 1029 | Unit Operating Agreement, as amended | June 10, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | June 10, 1966 - SEE SS 271 UNIT OA |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418801 | Ship Shoal Area, South Addition | 248 | 1029 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418847 | Ship Shoal Area, South Addition | 248 | 1029 | Ownership Agreement | August 17, 1978 | CNG Producing Company | Columbia Gas Development Corporation, et al | "F" Platform |
| 0419113 | Ship Shoal Area, South Addition | 248 | 1029 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | January 28, 1981 - Gas Balancing Agmt |
| 0418811 | Ship Shoal Area, South Addition | 248 | 1029 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0265445 | Ship Shoal Area, South Addition | 249 | 1030 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation, et al | 1-Jun-62 |

**EXHIBIT A-1**

-45-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418811 | Ship Shoal Area, South Addition | 249 | 1030 | Unit Operating Agreement, as amended | June 10 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | June 10 1966 - SEE SS 271 UNIT OA |
| 0418801 | Ship Shoal Area, South Addition | 249 | 1030 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418838 | Ship Shoal Area, South Addition | 249 | 1030 | Farmout Agreement | April 5, 1972 | Forest Oil Corporation, et al | Pelto Oil Company, et al | April 5, 1972 - Pelto, et al (also covers SS 270) |
| 0419113 | Ship Shoal Area, South Addition | 249 | 1030 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |
| 0418811 | Ship Shoal Area, South Addition | 249 | 1030 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

-46-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265448 | Ship Shoal Area, South Addition | 270 | 1037 | Lease | June 1. 1962 | United States of America | Forest Oil Corporation, et al | June 1. 1962 |
| 0418811 | Ship Shoal Area, South Addition | 270 | 1037 | Unit Operating Agreement, as amended | June 10. 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | June 10. 1966 - SEE SS 271 UNIT OA |
| 0418801 | Ship Shoal Area, South Addition | 270 | 1037 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418838 | Ship Shoal Area, South Addition | 270 | 1037 | Farmout Agreement | April 5, 1972 | Forest Oil Corporation, et al | Pelto Oil Company, et al | April 5, 1972 - Pelto, et al (also covers SS 249) |
| 0419113 | Ship Shoal Area, South Addition | 270 | 1037 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418811 | Ship Shoal Area, South Addition | 270 | 1037 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0265450 | Ship Shoal Area, South Addition | 271 | 1038 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation, et al | 1-Jun-62 |
| 0418811 | Ship Shoal Area, South Addition | 271 | 1038 | Unit Operating Agreement, as amended | June 10, 1966 | Forest Oil Corporation | Texas Gas Exploration Corporation, et al | 10-Jun-66 |
| 0418801 | Ship Shoal Area, South Addition | 271 | 1038 | Unit Agreement #14-08-0001-8784 | June 10, 1966 | Forest Oil Corporation | Consolidated Gas Supply Corporation, et al | |
| 0418848 | Ship Shoal Area, South Addition | 271 | 1038 | Farmout Agreement | September 3, 1974 | Forest Oil Corporation, et al | Columbia Gas Development Corp., et al | September 3, 1974 Forest - CGDC |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419113 | Ship Shoal Area, South Addition | 271 | 1038 | Gas Balancing Agreement | January 28, 1981 | Texas Gas Exploration Corporation, et al | CNG Producing Company | |
| 0418811 | Ship Shoal Area, South Addition | 271 | 1038 | Co-Development Agreement & Amendment to Unit Operating Agreement | January 1, 1994 | CNG Producing Company | Forest Oil Corporation, et al | "D" & "G" Platforms, aliquots, wells, interests |
| | | | | | | | | |
| | | | | | | | | |
| 0266626 | South Marsh Island Area | 40 | 13607 | Lease | August 1, 1992 | United State of America | Shell Offshore Inc. | 1-Aug-92 |
| 0294629 | South Marsh Island Area | 40 | 13607 | Operating Agreement, as revised | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | SM 40/41 Shallow Rights - revised 6-1-03 |
| 0294629 | South Marsh Island Area | 40 | 13607 | Participation Agreement & JOA, as amended | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | Feb. 24, 2003 (INCLUDES SM 40 OPER AGMT) |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294621 | South Marsh Island Area | 40 | 13607 | Joint Area Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P., et al | June 1, 2003 (Includes OA SM 40/41 Deep Rights) |
| 0294629 | South Marsh Island Area | 40 | 13607 | Operating Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | SM 40/41 Deep Rights |
| 0295463 | South Marsh Island Area | 40 | 13607 | Platform Lease and Operations Agreement | June 30, 2003 | Apache Corporation | Hunt Petroleum (AEC), Inc. | JA" PF Lse & Opers Agmt-TERMINATED" but obligations survive under Joint Area Agreement Para 12. |
| 0417942 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0316161 | South Marsh Island Area | 40 | 13607 | Production Handling Agreement, as Ratified | September 1, 2004 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | Sept. 1, 2004   JA" PF SM 41" |
| 0266626 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | October 1, 2004 | Apache Corporation | Hunt Petroleum Corporation | October 1, 2004 APACHE Acquisition |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0316161 | South Marsh Island Area | 40 | 13607 | Production Handling Agreement, as amended | December 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Nippon Oil Exploration U.S.A. Limited | PHA SM 44 "C" - SM 40 "JA" |
| 0294629 | South Marsh Island Area | 40 | 13607 | Ratification and Amendment | April 1, 2008 | Hunt Petroleum (AEC), Inc., et al | Devon Energy Production Company, L.P. | Ratification of SM 44 "C" - SM 40 "JA" PHA for SM 40 C-2 / C2D Well |
| 0266626 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | January 1, 2010 | Nippon Oil Exploration U.S.A. Limited | XTO Offshore Inc., et al | January 1, 2010 (Acq Nippon Deep Rights SM 40/41) |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
| 0266627 | South Marsh Island Area | 41 | 1192 | Lease | June 1, 1962 | United State of America | California Oil Company | 1-Jun-62 |
| 0294629 | South Marsh Island Area | 41 | 1192 | Participation Agreement & JOA, as amended | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | Feb. 24, 2003 (Includes SM 40 OA) |
| 0294629 | South Marsh Island Area | 41 | 1192 | Operating Agreement, as revised | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | SM 40/41 Shallow Rights - revised 6-1-03 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294621 | South Marsh Island Area | 41 | 1192 | Joint Area Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P., et al | June 1, 2003 (Includes OA SM 40/41 Deep Rights) |
| 0294629 | South Marsh Island Area | 41 | 1192 | Operating Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | SM 40/41 Deep Rights |
| 0417942 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0316161 | South Marsh Island Area | 41 | 1192 | Production Handling Agreement, as ratified | September 1, 2004 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | Sept. 1, 2004  JA" PF SM 41" |
| 0266626 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | October 1, 2004 | Apache Corporation | Hunt Petroleum Corporation | October 1, 2004 APACHE Acquisition |
| 0266626 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | January 1, 2010 | Nippon Oil Exploration U.S.A. Limited | XTO Offshore Inc., et al | January 1, 2010 (Acq Nippon Deep Rights SM 40/41) |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0278245 | South Marsh Island Area | 44 | 23840 | Lease | May 1, 2002 | United States of America | Devon Energy Production Company, L.P. | 1-May-02 |
| 0295304 | South Marsh Island Area | 44 | 23840 | Farmout Agreement | January 4, 2007 | Devon Energy Production Company, L.P. | Hunt Petroleum (AEC), Inc. | 4-Jan-07 |
| 0295305 | South Marsh Island Area | 44 | 23840 | Operating Agreement, as amended | January 4, 2007 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | 4-Jan-07 |
| 0295308 | South Marsh Island Area | 44 | 23840 | Participation Agreement, as amended | March 8, 2007 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | 8-Mar-07 |
| 0316099 | South Marsh Island Area | 44 | 23840 | Production Handling Agreement, as amended | December 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Nippon Oil Exploration U.S.A. Limited, et al | 1-Dec-07 |
| 0316099 | South Marsh Island Area | 44 | 23840 | Ratification and Amendment | April 1, 2008 | Hunt Petroleum (AEC), Inc., et al | Devon Energy Production Company, L.P. | Ratification of SM 44 "C" - SM 40 "JA" PHA for SM 40 C-2 / C2D Well |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295305 | South Marsh Island Area | 45 | 31353 | Operating Agreement, as amended | January 4, 2007 | Hunt Petroleum (AEC), Inc. | Nippon Oil Exploration U.S.A. Limited | SM 44 JOA amended eff 2-1-08 to include SM 45 |
| 0215991 | South Marsh Island Area | 45 | 31353 | Lease | February 1, 2008 | United States of America | Hunt Petroleum (AEC), Inc. et al | 1-Feb-08 |
| | | | | | | | | |
| | | | | | | | | |
| 0340710 | South Marsh Island Area, South Addition | 109 | 24873 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |
| 0276089 | South Marsh Island Area, South Addition | 109 | 24873 | Lease | June 1, 2003 | United States of America | Hunt Petroleum (AEC), Inc., et al | 1-Jun-03 |
| 0294983 | South Marsh Island Area, South Addition | 109 | 24873 | Operating Agreement | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Cheyenne International Corporation, et al | 1-Jun-03 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276089 | South Marsh Island Area, South Addition | 109 | 24873 | Acquisition of Interest Letter Agreement | December 9, 2003 | CL&F Resources LP | Hunt Petroleum (AEC), Inc. | November 20, 2003 eff date (Acq of CL&F interest) |
| | | | | | | | | |
| | | | | | | | | |
| 0340710 | South Marsh Island Area, South Addition | 138 | 33616 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |
| 0331362 | South Marsh Island Area, South Addition | 138 | 33616 | Lease | June 1, 2010 | United States of America | Chieftain International (U.S.) Inc. | 1-Jun-10 |
| | | | | | | | | |
| | | | | | | | | |
| 0279702 | South Marsh Island Area, South Addition | 139 | 21106 | Lease | July 1, 1999 | United States of America | Chieftain International (U.S.) Inc. | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0340710 | South Marsh Island Area, South Addition | 139 | 21106 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |
| 0295340 | South Marsh Island Area, South Addition | 139 | 21106 | Joint Area Agreement, as amended | March 22, 2004 | Newfield Exploration Company, et al | Hunt Petroleum (AEC), Inc. | |
| 0419195 | South Marsh Island Area, South Addition | 139 | 21106 | Participation Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0295341 | South Marsh Island Area, South Addition | 139 | 21106 | Operating Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0314481 | South Marsh Island Area, South Addition | 139 | 21106 | Production Handling Agreement | July 27, 2005 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419647 | South Marsh Island Area, South Addition | 139 | 21106 | Letter Agreement | May 25, 2011 | McMoRan Oil & Gas, L.L.C. | XTO Offshore Inc., et al | SM 146 A-8ST Recompletion |
| | | | | | | | | |
| | | | | | | | | |
| 0294392 & 0294343 | South Marsh Island Area, South Addition | 142 | 1216 | Operating Agreement, as amended | May 17, 1961 | Forest Oil Corporation | Hope Natural Gas Company, et al | Exhibit to Geophysical Exploration Agmt dated 5-17-61 (Non Unit) |
| 0265447 | South Marsh Island Area, South Addition | 142 | 1216 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | 1-Jun-62 |
| 0294393 | South Marsh Island Area, South Addition | 142 | 1216 | Unit Operating Agreement | March 17, 1976 | Forest Oil Corporation | Columbia Gas Development Corporation, et al | 3/17/1976 Unit Operating Agreement survives Unit Termination |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0325391 | South Marsh Island Area, South Addition | 142 | 3441 | Right-Of-Way | August 26, 1977 | Minerals Management Service | Columbia Gulf Transmission Company | ROW OCS-G 3441 Segment 4733 (Columbia Gulf Acq) |
| 0331679 | South Marsh Island Area, South Addition | 142 | 1216 | Contract/Pipeline Connection and Operating Agreement | May 6, 1996 | Marathon Pipeline Company | Forest Oil Corporation, et al | A" OA & Pipeline Connection Contract" |
| 0265447 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | April 19, 1999 | Kerr-McGee Oil & Gas Corporation | Energy Resources MAQ, Inc. | April 19, 1999 effective January 1, 1998 (Acq of KMG A" PF Interest) |
| 0265447 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | June 16, 1999 | Aries Resources, L.L.C. | Aviara Energy Corporation, et al | June 16, 1999 effective April 1, 1998 (Aries Acq) |
| 0314146 | South Marsh Island Area, South Addition | 142 | 1216 | Production Handling Agreement | January 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Hunt Petroleum (AEC), Inc., et al | EI 312 "D" - SM 142 "A" |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0341611 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | October 1, 2009 | Eni Petroleum US, LLC | XTO Offshore Inc. | Oct. 1, 2009 (Acq of Eni Interest) |
| 0341720 | South Marsh Island Area, South Addition | 142 | 1216 | Purchase & Sale Agreement | February 4, 2010 | Columbia Gulf Transmission Company | XTO Offshore Inc. | Acq. ROW OCS-G 3441, Segment 4733 |
| 0294314 | South Marsh Island Area, South Addition | 142 | 1216 | Gas Balancing & Storage Agreement | December 29, 1994 | Forest Oil Corporation | Columbia Gas Development Corporation | |
| | | | | | | | | |
| 0283008 | South Marsh Island Area, South Addition | 146 | 9546 | Lease | July 1, 1988 | United States of America | Phillips Petroleum Company | |
| 0340710 | South Marsh Island Area, South Addition | 146 | 9546 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk-Reward Obligations |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0295340 | South Marsh Island Area, South Addition | 146 | 9546 | Joint Area Agreement, as amended | March 22, 2004 | Newfield Exploration Company, et al | Hunt Petroleum (AEC), Inc. | |
| 0419195 | South Marsh Island Area, South Addition | 146 | 9546 | Participation Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0295341 | South Marsh Island Area, South Addition | 146 | 9546 | Operating Agreement | April 1, 2004 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0277271 | South Marsh Island Area, South Addition | 146 | 26837 | Right-of-Way | May 31, 2005 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | |
| 0277272 | South Marsh Island Area, South Addition | 146 | 26838 | Right-of-Way | May 31, 2005 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0277273 | South Marsh Island Area, South Addition | 146 | 26839 | Right-of-Way | May 31, 2005 | Minerals Management Service | Hunt Petroleum (AEC), Inc. | |
| 0314481 | South Marsh Island Area, South Addition | 146 | 9546 | Production Handling Agreement | July 27, 2005 | Newfield Exploration Company | Hunt Petroleum (AEC), Inc. | |
| 0314481 | South Marsh Island Area, South Addition | 146 | 9546 | Letter Agreement | July 1, 2008 | McMoRan Oil & Gas, L.L.C., et al | Hunt Petroleum (AEC), Inc. | SM 146 Assignment of Operating Rights |
| 0419647 | South Marsh Island Area, South Addition | 146 | 9546 | Letter Agreement | May 25, 2011 | McMoRan Oil & Gas, L.L.C. | XTO Offshore Inc., et al | SM 146 A-8ST Recompletion |
| | | | | | | | | |
| 0276248 | South Pass | 42 & 43 | DACW29-2-81-37 | Easement | May 18, 1981 | The Secretary of the Army | Burrwood Gathering Company | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276231 | South Pass | 42 | SL 16869 | Lease | November 13, 2000 | State of Louisiana | IP Petroleum, Inc., et al | |
| 0276250 | South Pass | 42 & 43 | DACW29-2-01-16 | Easement | May 8, 2001 | The Secretary of the Army | Energy Development Corporation | |
| 0276246 | South Pass | 42 | SL 4300 | Subsurface Agreement | June 1, 2001 | State of Louisiana | Andex Resources, L.L.C., et al | |
| 0295086 | South Pass | 42 & 43 | SL 16869 & OCS-G 22781 | Participation Agreement | August 30, 2002 | Pure Resources, L.P. | Andex Resources, L.L.C., et al | |
| 0295095 | South Pass | 42 & 43 | SL 16869, 16870 & OCS-G 22781 | Operating Agreement | August 30, 2002 | LLOG Exploration & Production Company | Pure Resources, L.P., et al | |
| 0276247 | South Pass | 42 | SL 4279 | Surface Lease w/ Subsurface Agreement | September 3, 2002 | State of Louisiana | IP Petroleum, Inc., et al | |
| 0417942 | South Pass | 42 & 43 | SL 16860, 16870 & OCS-G 22781 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0278048 | South Pass | 42 & 43 | SL 4584 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0278049 | South Pass | 42 & 43 | SL 4585 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0278050 | South Pass | 42 & 43 | SL 4586 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0278051 | South Pass | 42 & 43 | SL 4587 | ROW | February 15, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0278047 | South Pass | 42 & 43 | SL 576 | Water Bottom Lease | June 2, 2005 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| 0295095 | South Pass | 42 & 43 | SL 16869 & 16870 | 04 RA Voluntary Unit Agreement | October 19, 2005 | The State Mineral Board | Hunt Petroleum (AEC), Inc., et al | 04 RA VUA |
| 0314614 | South Pass | 42 & 43 | SL 16869, 16870 & OCS-G 22781 | Production Handling Agreement | February 1, 2007 | Hunt Petroleum (AEC), Inc. | Andex Resources, L.L.C., et al | |
| 0276253 | South Pass | 42 & 43 | SL 3011 | Surface/ Subsurface Lease | October 17, 2007 | State of Louisiana | Hunt Petroleum (AEC), Inc. | |
| | | | | | | | | |
| | | | | | | | | |
| 0276237 | South Pass | 43 | SL 16870 | Lease | November 13, 2000 | State of Louisiana | Energy Partners, Ltd. | |
| 0276236 | South Pass | 43 | 22781 | Lease | June 1, 2001 | United States of America | Andex Resources, L.L.C., et al | |
| 0295085 | South Pass | 43 | SL 16870 | Farmout Agreement | December 6, 2002 | Energy Partners, Ltd. | LLOG Exploration & Production Company | |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0340710 | Vermilion Area, South Addition | 264 | 33603 | Data Acquisition Agreement | April 2, 2002 | Western Geco, L.L.C. | Aviara Energy Corporation, et al | Risk Reward Obligation |
| 0340457 | Vermilion Area, South Addition | 264 | 33603 | Lease | July 1, 2010 | United States of America | XTO Offshore Inc. | 1-Jul-10 |
| | | | | | | | | |
| | | | | | | | | |
| 0265436 | Vermilion Area, South Addition | 313 | 1172 | Lease | June 1, 1962 | United States of America | Forest Oil Corporation | |
| 0419428 | Vermilion Area, South Addition | 313 | 1172 | Letter Agreement | May 12, 1994 | Columbia Gas Development Corporation | CNG Producing Company | Trade Agreement; VR 313 |
| 0419888 | Vermilion Area, South Addition | 313 | 1172 | Letter Agreement | August 16, 1995 | Columbia Gas Development Corporation | CNG Producing Company | Exchange of ORRIs |
| 0294347 | Vermilion Area, South Addition | 313 | 1172 | Participation Agreement | November 1, 2001 | Dominion Exploration & Production, Inc. | Aviara Energy Corporation | VR 313 "D" |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294351 | Vermilion Area, South Addition | 313 | 1172 | Operating Agreement | November 1, 2001 | Dominion Exploration & Production, Inc. | Aviara Energy Corporation | VR 313 "D" |
| 0322545 | Vermilion Area, South Addition | 313 | 1172 | Production Handling Agreement | January 31, 2002 | Dominion Exploration & Production, Inc., et al | Dominion Exploration & Production, Inc. | VR 313 "D" - VR 313 "B" |
| 0322545 | Vermilion Area, South Addition | 313 | 1172 | Lease of Platform Space Agreement | June 21, 2007 | Dominion Exploration & Production, Inc., et al | Dominion Exploration & Production, Inc. | VR 313 "D" |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 0265437 | West Cameron Area | 485 | 2220 | Lease | February 1, 1973 | United States of America | Columbia Gas Development Corporation, et al | |
| 0419458 | West Cameron Area | 485 | 2220 | Production Payment Conveyance | March 25, 1973 | COLEVE, a Joint Venture | Columbia Gas Development Corporation | As supplemented and amended, including 10-12-90 |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419455 | West Cameron Area | 485 | 2220 | Assignment of Interest in Oil & Gas Lease, Bill of Sale and Conveyance with Reservation of Overriding Royalty Subject to Production Payment | October 1, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| # Not Available | West Cameron Area | 485 | 2220 | Purchase and Sale Agreement | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| 0419456 | West Cameron Area | 485 | 2220 | Distribution and Assignment of Interests in Oil and Gas Leases, Bill of Sale & Conveyance Subject to Production Payment with Substitution of Obligor | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294364 | West Cameron Area | 485 | 2220 | Unit Agreement #7543-94008 | May 1, 1994 | Minerals Management Service | Columbia Gas Development Corporation | WC 507 Unit - Unit Agreement No. 7543-94008 |
| 0310077 | West Cameron Area | 485 | 2220 | Letter Agreement for Leak Testing | May 11, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | Leak test on 12" pipeline |
| 0310077 | West Cameron Area | 485 | 2220 | Sale Agreement | May 12, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | ROW OCS-G 2122E, Seg. 4289 - 12" Pipeline |
| 0310077 | West Cameron Area | 485 | 2220 | Letter Agreement for Cut and Cap | July 9, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | Cut & cap 16" pipeline |
| 0310077 | West Cameron Area | 485 | 2220 | Sale Agreement | July 9, 2009 | Tennessee Gas Pipeline Company | XTO Offshore Inc. | Sale of 16" riser, meter & platform equipment |
| 0310077 | West Cameron Area | 485 | 2220 | Facilities Agreement | July 15, 2009 | Stingray Pipeline Company, L.L.C. | XTO Offshore Inc. | Interconnection - WC 485 "A" and WC 509 |
| 0308965 | West Cameron Area | 485 | 2122E | Right-of-Way | Date Unknown | Minerals Management Service | | ROW OCS-G 2122E, Seg. 4289 - 12" Pipeline |
| | | | | | | | | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419458 | West Cameron Area | 507 (N/2) | 2549 | Production Payment Conveyance | March 25, 1973 | COLEVE, a Joint Venture | Columbia Gas Development Corporation | As supplemented and amended, including 10-12-90 |
| 0265443 | West Cameron Area | 507 (N/2) | 2549 | Lease | April 1, 1974 | United States of America | Forest Oil Corporation, et al | |
| 0419455 | West Cameron Area | 507 (N/2) | 2549 | Assignment of Interest in Oil & Gas Lease, Bill of Sale and Conveyance with Reservation of Overriding Royalty Subject to Production Payment | October 1, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| # Not Available | West Cameron Area | 507 (N/2) | 2549 | Purchase and Sale Agreement | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419456 | West Cameron Area | 507 (N/2) | 2549 | Distribution and Assignment of Interests in Oil and Gas Leases, Bill of Sale & Conveyance Subject to Production Payment with Substitution of Obligor | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| 0294364 | West Cameron Area | 507 (N/2) | 2549 | Unit Agreement #7543-94008 | May 1, 1994 | Minerals Management Service | Columbia Gas Development Corporation | WC 507 Unit - Unit Agreement No. 7543-94008 |
| 0294988 | West Cameron Area | 507 (N/2) | 2549 | Participation Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C-1 Well |
| 0294989 | West Cameron Area | 507 (N/2) | 2549 | Offshore Operating Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C Platform |
| | | | | | | | | |
| | | | | | | | | |
| 0419458 | West Cameron Area | 507 (S/2) | 10594 | Production Payment Conveyance | March 25, 1973 | COLEVE, a Joint Venture | Columbia Gas Development Corporation | As supplemented and amended, including 10-12-90 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0265453 | West Cameron Area | 507 (S/2) | 10594 | Lease | June 1, 1989 | United States of America | Columbia Gas Development Corporation | |
| 0419455 | West Cameron Area | 507 (S/2) | 10594 | Assignment of Interest in Oil & Gas Lease, Bill of Sale and Conveyance with Reservation of Overriding Royalty Subject to Production Payment | October 1, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| # Not Available | West Cameron Area | 507 (S/2) | 10594 | Purchase and Sale Agreement | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0419456 | West Cameron Area | 507 (S/2) | 10594 | Distribution and Assignment of Interests in Oil and Gas Leases, Bill of Sale & Conveyance Subject to Production Payment with Substitution of Obligor | October 22, 1990 | Engy Inc. | Columbia Gas Development Corporation | |
| 0294364 | West Cameron Area | 507 (S/2) | 10594 | Unit Agreement #7543-94008 | May 1, 1994 | Minerals Management Service | Columbia Gas Development Corporation | WC 507 Unit - Unit Agreement No. 7543-94008 |
| 0294988 | West Cameron Area | 507 (S/2) | 10594 | Participation Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C-1 Well |
| 0294989 | West Cameron Area | 507 (S/2) | 10594 | Offshore Operating Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | WC 507 C Platform |
| 0316109 | West Cameron Area | 507 (S/2) | 10594 | Production Handling Agreement | March 25, 2002 | Newfield Exploration Company | Aviara Energy Corporation | PHA WC 507 "C" - WC 485 "A" |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Agreement for the Construction and Operation of the Calumet Gas Processing Plant | January 1, 1970 | Atlantic Richfield Company | Chevron Oil Corporation, et al | C&O Agreement |
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Restated and Amended Agreement between ANR Pipeline Company and the Owners of The Calumet Gas Processing Plant | March 1, 1997 | ANR Pipeline Company | Shell Western E&P Inc. | ANR/Calumet Plant Straddle Agreement |
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Restated and Amended Agreement between Trunkline Gas Company and the Owners of The Calumet Gas Processing Plant | March 1, 1997 | Trunkline Gas Company | Shell Western E&P Inc. | Trunkline/Calumet Plant Straddle Agreement |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | First Amendment to Restated and Amended Agreement between Trunkline Gas Company and the Owners of The Calumet Gas Processing Plant | July 1, 2007 | Enterprise Gas Processing, LLC | Enterprise Gas Processing , LLC | |
| 3401 & 3403 | Ship Shoal Area & South Marsh Island Area, South Addition | SS 188 & SM 109 | Calumet | Amendment of Agreement for the Construction of the Calumet Gas Processing Plant | August 7, 2009 | Enterprise Gas Processing, LLC | Apache Corporation, et al | |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Agreement for the Construction and Operation of the Yscloskey Processing Plant | July 30, 1968 | Shell Oil Company | Getty Oil Company, et al | C&O Agreement |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Hydrocarbon Fractionation Agreement | July 30, 1968 | Shell Oil Company | Getty Oil Company, et al | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Hydrocarbon Fractionation Agreement | May 1, 1969 | Shell Oil Company | Getty Oil Company, et al | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Agreement of Settlement And Compromise | August 2, 2002 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Construction and Operating Agreement | April 1, 2003 | Dynegy Midstream Services, Limited Partnership | Anadarko E&P Company LP | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amended and Restated Straddle and Processing Agreement | April 1, 2003 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Agreement of Settlement And Compromise | April 1, 2003 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Second Amendment to Hydrocarbon Fractionation Agreement | August 1, 2003 | Enterprise Gas Processing, LLC | Apache Corporation, et al | |

**EXHIBIT A-1**

**EXHIBIT A-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF WELLS**

**BRETON SOUND BLOCK 28**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| | SL 1999 | SL 1999 #50 | 50 | BRETON SOUND 20 | PLAQUEMINES | 17726205550000 | TEXAS PETROLEUM INVESTMENT CORPORATION | 401819 | PDP | OIL |

**BRETON SOUND BLOCK(s) 44/45/52/53**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| | SL 15683 | TEX W RA SUA; SL 15683 #3 | 3 | BRETON SOUND 53 | PLAQUEMINES | 17726205310000 | CENTURY OFFSHORE | 401815 | PDP | GAS |
| | SL 15683 | TEX W RA SUA; SL 15683 #1 ALT | 1ALT | BRETON SOUND 53 | PLAQUEMINES | 17726205260000 | CENTURY OFFSHORE | 401976 | PDP | GAS |
| | SL 17675 | UV B RA VUA; SL 17675 #1 | 1 | BRETON SOUND 53 | PLAQUEMINES | 17726205510000 | CENTURY OFFSHORE | 401817 | PDP | GAS |
| | SL 3770 | SL 3770 #1 | 1 | BRETON SOUND 53 | PLAQUEMINES | 17726000010000 | CENTURY OFFSHORE | 401842 | SI | OIL |

**EXHIBIT A-2**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| SL 3770 | SL 3770 #1D | 1D | BRETON SOUND 53 | PLAQUEMINES | 17726000010000 | CENTURY OFFSHORE | 401843 | SI | OIL |
| SL 3770 | SL 3770 #7 | 7 | BRETON SOUND 53 | PLAQUEMINES | 17726201580000 | CENTURY OFFSHORE | 401821 | PDP | OIL |
| SL 3770 | SL 3770 #8 | 8 | BRETON SOUND 53 | PLAQUEMINES | 17726201630000 | CENTURY OFFSHORE | 401821 | PDP | OIL |
| SL 4772 | SL 4772 #1 | 1 | BRETON SOUND 53 | PLAQUEMINES | 17726003000000 | CENTURY OFFSHORE | 401970 | SI | OIL |

## EAST CAMERON BLOCK 178

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| EC178D | OCS-G-27834 EC178 | OCS-G-27834 EC178 #1STBP1 | #D1STBP1 | EAST CAMERON 185 | OFFSHORE LOUISIANA | 177034101202S01 | XTO OFFSHORE INC. | 401901 | PDP | GAS |

**Well name change from #1STBP1 is pending.**

## EUGENE ISLAND BLOCK 273D (EI 272/273/284/285 Unit)

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 B-01BP1 | B-01BP1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104114800S03 | MARINER ENERGY RESOURCES | 401903 | SI | GAS |
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 B-03 | B-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104116400S01 | MARINER ENERGY RESOURCES | 403386 | SI | GAS |
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 B-05A | B-05 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104116500D03 | MARINER ENERGY RESOURCES | 401911 | SI | GAS |
| EI284B | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 | B-05D | EUGENE ISLAND SA | Offshore Louisiana | 177104116500D02 | MARINER ENERGY RESOURCES | 401911 | SI | GAS |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | B-05D | | | 292 | | | | | | |
| EI273D | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 D-01 | D-01 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104155900S01 | MARINER RESOURCES | ENERGY | 401761 | PDP | GAS |
| EI273D | OCS-G-0987 EI 273 | OCS-G-0987 EI 273 D-02 | D-02 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158200S01 | MARINER RESOURCES | ENERGY | 401760 | PDP | GAS |
| EI273D | OCS-G-0991 EI 284 | OCS-G-0991 EI 284 D-03 | D-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158300S01 | MARINER RESOURCES | ENERGY | 401905 | SI | GAS |
| EI273D | OCS-G-0986 EI 272 | OCS-G-0986 EI 272 D-04 | D-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158400D01 | MARINER RESOURCES | ENERGY | 401759 | SI | GAS |
| EI273D | OCS-G-0986 EI 272 | OCS-G-0986 EI 272 D-04D | D-04D | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104158400D02 | MARINER RESOURCES | ENERGY | 401759 | PDP | GAS |

**EUGENE ISLAND BLOCKS 286/292/293/308/309 Unit**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EI287D | OCS-G-00993 EI 286 | OCS-G-00993 EI 286 D-09ST | D-09ST | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104002202S01 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-01 | D-01 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104000100S02 | MARINER (FOREST OIL) | ENERGY | 403251 | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-02 | D-02 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104000400S01 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-03 | D-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104000800S03 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-04 | D-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001200S01 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-05 | D-05 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001400S01 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |

**EXHIBIT A-2**

| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-07 | D-07 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001500S01 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-08 | D-08 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104001900S01 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI287D | OCS-G-1979 EI 287 | OCS-G-1979 EI 287 D-011A | D-11A | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104100800D03 | MARINER (FOREST OIL) | ENERGY | | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-01A | B-01A | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000200D03 | MARINER RESOURCES | ENERGY | 401909 | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-02 | B-02 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000500S01 | MARINER RESOURCES | ENERGY | 401913 | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-03 | B-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000600S01 | MARINER RESOURCES | ENERGY | 18076 (HUNT) | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-03ST1 | B-03ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102000601S02 | MARINER RESOURCES | ENERGY | 401910 | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-04 | B-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001200S01 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-05ST1 | B-05ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001300S03 | MARINER RESOURCES | ENERGY | 401911 | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-06 | B-06 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001400S01 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-07 | B-07 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001500S01 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-08 | B-08 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102001600S01 | MARINER RESOURCES | ENERGY | | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-9ST1 | B-09ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065300D02 | MARINER RESOURCES | ENERGY | 401828 | TA | OIL |

**EXHIBIT A-2** -81-

| EI292B | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 B-10 | B-10 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065400D02 | MARINER RESOURCES | ENERGY | | TA | OIL |
|--------|------|------|------|------|------|------|------|------|------|------|------|
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-11ST1 | B-11ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065500D03 | MARINER RESOURCES | ENERGY | 401914 | TA | OIL |
| EI292B | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 B-12ST1 | B-12ST1 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104065000D02 | MARINER RESOURCES | ENERGY | 401915 | TA | OIL |
| EI287D | OCS-G-00994 EI 292 | OCS-G-00994 EI 292 D-12 | D-12 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104101600D04 | MARINER RESOURCES | ENERGY | 401912 | TA | OIL |
| EI287D | OCS-G-00995 EI 293 | OCS-G-00995 EI 293 D-6 | D-6 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177102004100S04 | MARINER (FOREST OIL) | ENERGY | 401916 | TA | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-01 | G-01 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104045600D03 | MARINER RESOURCES | ENERGY | 401928 | SI | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-01B | G-01B | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104045600D04 | MARINER RESOURCES | ENERGY | 401928 | PDP | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-02ST | G-02ST | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104049801S01 | MARINER RESOURCES | ENERGY | 401929 | PDP | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-04 | G-04 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104050700S01 | MARINER RESOURCES | ENERGY | 401930 | PDP | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-07 | G-07 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104049300S01 | MARINER RESOURCES | ENERGY | | SI | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-08 | G-08 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104048900D05 | MARINER RESOURCES | ENERGY | 403325 | PDP | GAS |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-09 | G-09 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104054100S01 | MARINER RESOURCES | ENERGY | 401931 | SI | OIL |
| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-11ST | G-11ST | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104053001D02 | MARINER RESOURCES | ENERGY | | SI | OIL |

**EXHIBIT A-2**

| EI309G | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 G-13 | G-13 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104052300D01 | MARINER ENERGY RESOURCES | 401932 | SI | OIL |

## EUGENE ISLAND BLOCK 309J (EI 309/313)

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| EI309J | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 J-01ST | J-01ST | EUGENE ISLAND SA 292 | OFFSHORE LOUISIANA | 177104129701D02 | XTO OFFSHORE INC. | 401831 | SI | GAS |
| EI309J | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 J-02 | J-02 | EUGENE ISLAND SA 292 | OFFSHORE LOUISIANA | 177104130600S01 | XTO OFFSHORE INC. | 401937 | SI | OIL |
| EI309J | OCS-G-0997 EI 309 | OCS-G-0997 EI 309 J-03 | J-03 | EUGENE ISLAND SA 292 | OFFSHORE LOUISIANA | 177104150300S02 | XTO OFFSHORE INC. | 401938 | SI | OIL |
| EI309J | OCS-G-2608 EI 313 | OCS-G-2608 EI 313 J-04 | J-04 | EUGENE ISLAND SA 330 | OFFSHORE LOUISIANA | 177104150600S01 | XTO OFFSHORE INC. | 401940 | SI | GAS |

## EUGENE ISLAND BLOCK 311/312

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| EI312D | OCS-G-22679 EI 312 | OCS-G-22679 EI 312 D-01 | D-01 | EUGENE ISLAND SA 333 | OFFSHORE LOUISIANA | 177104160900S01 | XTO OFFSHORE INC. | 401793 | PDP | GAS |
| EI312D | OCS-G-22679 EI 312 | OCS-G-22679 EI 312 D-02 | D-02 | EUGENE ISLAND SA 333 | OFFSHORE LOUISIANA | 177104161900S01 | XTO OFFSHORE INC. | 401794 | PDP | GAS |
| EI312D | OCS-G-27918 EI 311 | OCS-G-27918 EI 311 D-03 | D-03 | EUGENE ISLAND SA 333 | OFFSHORE LOUISIANA | 177104162000S01 | XTO OFFSHORE INC. | 401795 | SI | GAS |

**EXHIBIT A-2**

## EUGENE ISLAND BLOCK(s) 314 & 315

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| EI309G | OCS-G-1981 EI 314 | OCS-G-1981 EI 314 G-03 | G-03 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104048200S02 | MARINER ENERGY RESOURCES | 401941 | SI | OIL |
| EI309G | OCS-G-1981 EI 314 | OCS-G-1981 EI 314 G-05ST2 | G-05ST2 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104051402S01 | MARINER ENERGY RESOURCES | 401942 | SI | OIL |
| EI309G | OCS-G-1981 EI 314 | OCS-G-1981 EI 314 G-06 | G-06 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104051800S02 | MARINER ENERGY RESOURCES | 401943 | SI | OIL |
| EI309G | OCS-G-1982 EI 315 | OCS-G-1982 EI 315 G-12 | G-12 | EUGENE ISLAND SA 292 | Offshore Louisiana | 177104046600S01 | MARINER ENERGY RESOURCES | 401944 | SI | GAS |

## HIGH ISLAND BLOCK 34
### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| HI34B | OCS-G-20655 HI 34 | OCS-G-20655 HI 34 B-01 | B-01 | HIGH ISLAND 22 | OFFSHORE TEXAS | 427084055800S01 | XTO OFFSHORE INC. | 400406 | PDP | GAS |

## HIGH ISLAND BLOCK(S) A-365/A-376

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-01 | A-01 | High Island A376 | Offshore Louisiana | 427114052200S01 | APACHE CORPORATION | 400401 | PDP | OIL |

**EXHIBIT A-2**                      -84-

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-02ST1 | A-02ST1 | High Island A376 | Offshore Louisiana | 427114052601S03 | APACHE CORPORATION | 403573 | PDP | GAS |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-03ST | A-03ST | High Island A376 | Offshore Louisiana | 427114052701S01 | APACHE CORPORATION | | SI | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-03DST | A-03STD | High Island A376 | Offshore Louisiana | 427114052700D03 | APACHE CORPORATION | 18323 (Hunt #) | PDP | GAS |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-04 | A-04 | High Island A376 | Offshore Louisiana | 427114053700S01 | APACHE CORPORATION | 402732 | SI | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-05 | A-05 | High Island A376 | Offshore Louisiana | 427114053500S01 | APACHE CORPORATION | | SI | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-06 | A-06 | High Island A376 | Offshore Louisiana | 427114053100S02 | APACHE CORPORATION | 18315 (Hunt #) | TA | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-07 | A-07 | High Island A376 | Offshore Louisiana | 427114054100S02 | APACHE CORPORATION | 403566 | PDP | GAS |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-08 | A-08 | High Island A376 | Offshore Louisiana | 427114054800S03 | APACHE CORPORATION | 403558 | PDP | GAS |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-09 | A-09 | High Island A376 | Offshore Louisiana | 427114054400S03 | APACHE CORPORATION | 403574 | SI | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-10 | A-10 | High Island A376 | Offshore Louisiana | 427114055200S01 | APACHE CORPORATION | 403559 | SI | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-11 | A-11 | High Island A376 | Offshore Louisiana | 427114055000S01 | APACHE CORPORATION | | SI | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-12 | A-12 | High Island A376 | Offshore Louisiana | 427114055600S01 | APACHE CORPORATION | 403560 | PDP | GAS |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-12D | A-12D | High Island A376 | Offshore Louisiana | 427114055600D03 | APACHE CORPORATION | 403561 | SI | GAS |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-13ST1 | A-13ST1 | High Island A376 | Offshore Louisiana | 427114055801S01 | APACHE CORPORATION | 403562 | PDP | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-14ST2 | A-14ST2 | High Island A376 | Offshore Louisiana | 427114056002S02 | APACHE CORPORATION | 403155 | PDP | GAS |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-16 | A-16 | High Island A376 | Offshore Louisiana | 427114056700S01 | APACHE CORPORATION | | PDP | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-17 | A-17 | High Island A376 | Offshore Louisiana | 427114057200S02 | APACHE CORPORATION | 403567 | SI | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-18 | A-18 | High Island A376 | Offshore Louisiana | 427114057300S02 | APACHE CORPORATION | 403568 | SI | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-19 | A-19 | High Island A376 | Offshore Louisiana | 427114057400S03 | APACHE CORPORATION | 403154 | PDP | GAS |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-20 | A-20 | High Island A376 | Offshore Louisiana | 427114057500S01 | APACHE CORPORATION | | TA | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-21 | A-21 | High Island A376 | Offshore Louisiana | 427114057600S03 | APACHE CORPORATION | 403563 | PDP | OIL |
| HI376A | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 A-22 | A-22 | High Island A376 | Offshore Louisiana | 427114057700S01 | APACHE CORPORATION | 403569 | SI | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-24 | A-24 | High Island A376 | Offshore Louisiana | 427114066300S02 | APACHE CORPORATION | 403564 | PDP | OIL |
| HI376A | OCS-G-2750 HI A365 | OCS-G-2750 HI A365 A-25 | A-25 | High Island A376 | Offshore Louisiana | 427114066500S01 | APACHE CORPORATION | 400402 | PDP | OIL |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-01 | B-01 | High Island A376 | Offshore Louisiana | 427114068700S03 | APACHE CORPORATION | 403570 | PDP | OIL |

**EXHIBIT A-2**

| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-02BP1 | B-02BP1 | High Island A376 | Offshore Louisiana | 427114068900S03 | APACHE CORPORATION | 403575 | SI | GAS |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-03ST1 | B-03ST1 | High Island A376 | Offshore Louisiana | 427114078701S02 | APACHE CORPORATION | 403571 | PDP | GAS |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-04ST1 | B-04ST1 | High Island A376 | Offshore Louisiana | 427114079001S01 | APACHE CORPORATION | | SI | GAS |
| HI376B | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 B-05 | B-05 | High Island A376 | Offshore Louisiana | 427114079600S01 | APACHE CORPORATION | | SI | GAS |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-01 | C-01 | High Island A376 | Offshore Louisiana | 427114088900S01 | APACHE CORPORATION | 403541 | PDP | OIL |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-02 | C-02 | High Island A376 | Offshore Louisiana | 427114089600 | APACHE CORPORATION | 403109 | PDP | OIL |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-03 | C-03 | High Island A376 | Offshore Louisiana | 427114089500 | APACHE CORPORATION | 403145 | TA | OIL |
| HI376C | OCS-G-2754 HI A376 | OCS-G-2754 HI A376 C-04 | C-04 | High Island A376 | Offshore Louisiana | 427114089400 | APACHE CORPORATION | 403146 | PDP | OIL |

**HIGH ISLAND BLOCK A-554**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Name | Well | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|

| HI554A | OCS-G-21356 HI A554 | OCS-G-21356 HI A554 A-01D | A-01D | HI A552 | Offshore Louisiana | 427094110400D02 | HUNT OIL COMPANY | 402723 | PDP | GAS |
| HI554A | OCS-G-21356 HI A554 | OCS-G-21356 HI A554 A-01 | A-01 | HI A552 | Offshore Louisiana | 427094110400D01 | HUNT OIL COMPANY | 402724 | PDP | GAS |

## MAIN PASS BLOCK 29

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP029 | OCS-G-27196 MP29 | OCS-G-27196 MP29 #1 | #1 | MAIN PASS 29 | OFFSHORE LOUISIANA | 177254081901S01 | XTO OFFSHORE INC. | 401945 | PDP | GAS |

## MAIN PASS BLOCK 94
### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP094 | OCS-G-07802 MP94 | OCS-G-07802 MP94 #5 | #5 | MAIN PASS 094 | Offshore Louisiana | 177254081800S01 | W&T OFFSHORE, INC. | 401786 | PDP | GAS |
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP 94 #4ST | #4ST | MAIN PASS 094 | Offshore Louisiana | 177254072400S01 | W&T OFFSHORE, INC. | 401785 | PDP | GAS |

## MAIN PASS BLOCK 101/106

### XTO OFFSHORE INC.

| Platform | Lease / Block | Long Name | Well | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT A-2**

| Platform | Lease / Block | Long Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-01 | B-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254074600S01 | XTO OFFSHORE INC. | 401801 | PDP | GAS |
| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-02 | B-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254075100S01 | XTO OFFSHORE INC. | 401802 | PDP | GAS |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-01 | D-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076000S01 | XTO OFFSHORE INC. | 401948 | TA | OIL |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-02 | D-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076100S02 | XTO OFFSHORE INC. | 401949 | PDP | GAS |
| MP101D | OCS-G-23967 MP106 | OCS-G-23967 MP106 D-03ST1 | D-03ST1 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077101S01 | XTO OFFSHORE INC. | 401950 | PDP | GAS |
| MP101D | OCS-G-03798 MP102 | OCS-G-03798 MP102 D-04A | D-04A | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077400S02 | XTO OFFSHORE INC. | 401837 | TA | GAS |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-05 | D-05 | MAIN PASS 93 | OFFSHORE LOUISIANA | 177254078000S01 | XTO OFFSHORE INC. | 401803 | PDP | OIL |
| MP101E (#6) | OCS-G-22792 MP101 | OCS-G-22792 MP101 E-01 (#6) | E-01 (#6) | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254079000D03 | XTO OFFSHORE INC. | 401834 | PDP | GAS |

**MAIN PASS BLOCK 101**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT A-2**

-89-

| MP101B | OCS-G 22792 MP101 | OCS-G 22792 MP101B3 | B3 | MAIN PASS 101 | Offshore Louisiana | 177254081000S01 | CENTURY EXPLORATION NEW ORLEANS, INC. | 401946 | PDP | GAS |

**MAIN PASS BLOCK 109**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP109C | OCS-G-22794 MP109 | OCS-G-22794 MP109 C-1 | C-01 | MAIN PASS 109 | Offshore Louisiana | 177254076700S03 | W&T OFFSHORE, INC. | 401952 | SI | GAS |
| MP109 D | OCS-G-22794 MP109 | OCS-G-22794 MP109 D-01ST00BP02 | D-01ST00BP02 | MAIN PASS 109 | Offshore Louisiana | 177254076802S02 | W&T OFFSHORE, INC. | 401953 | PDP | GAS |

**MAIN PASS BLOCK 112**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP112A | OCS-G-09707 MP 112 | OCS-G-09707 MP 112 A-01ST1 | A-01ST1 | MAIN PASS 112 | OFFSHORE LOUISIANA | 177254054301S02 | XTO OFFSHORE INC. | 401956 | PDP | OIL |
| MP112A | OCS-G-09707 MP 112 | OCS-G-09707 MP 112 A-02 | A-02 | MAIN PASS 112 | OFFSHORE LOUISIANA | 177254085400S01 | XTO OFFSHORE INC. | 401958 | PDP | GAS |
| MP No. 2 | OCS-G-09707 MP 112 | OCS-G-09707 MP 112 02 | 2 | MAIN PASS 112 | OFFSHORE LOUISIANA | 177254054400S02 | XTO OFFSHORE INC. | 401957 | SI | GAS |

**EXHIBIT A-2**

**MAIN PASS BLOCK 114**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP114 | OCS-G-27201 MP 114 | OCS-G-27201 MP 114 #1ST1 | #1ST1 | MAIN PASS 114 | OFFSHORE LOUISIANA | 177254084001S01 | XTO OFFSHORE INC. | 401959 | PDP | GAS |

**MAIN PASS BLOCK 116**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-01 | B-01 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254017600S03 | XTO OFFSHORE INC. | 401840 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-02 | B-02 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254018800S02 | XTO OFFSHORE INC. | 401961 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-04 | B-04 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254023500S01 | XTO OFFSHORE INC. | 401962 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-06 | B-06 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254052200S01 | XTO OFFSHORE INC. | 401963 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-07 | B-07 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254052300D02 | XTO OFFSHORE INC. | 401964 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 B-09 | B-09 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254083700 | XTO OFFSHORE INC. | 401965 | TA | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 #08 | #08 | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254078600D03 | XTO OFFSHORE INC. | 401839 | SI | GAS |
| MP116B | OCS-G-03419 MP 116 | OCS-G-03419 MP 116 #08D | #08D | MAIN PASS 127 | OFFSHORE LOUISIANA | 177254078600D04 | XTO OFFSHORE INC. | 401838 | SI | GAS |

**MAIN PASS BLOCK 118**

**EXHIBIT A-2**

## XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP118A | OCS-G 22797 MP 118 | OCS-G 22797 MP 118 A-01 | A-01 | MAIN PASS 118 | OFFSHORE LOUISIANA | 177254081100S01 | XTO OFFSHORE INC. | 401966 | PDP | GAS |

## MAIN PASS BLOCK 125
## XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP125B | OCS-G-25019 MP125 | OCS-G-25019 MP125 B-01 | B-01 | MAIN PASS 125 | OFFSHORE LOUISIANA | 177254084402S01 | XTO OFFSHORE INC. | 401968 | PDP | GAS |

## SOUTH MARSH ISLAND BLOCK 40/41
## XTO OFFSHORE INC.

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01 | B-01 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074083600D01 | XTO OFFSHORE INC. | 401787 | SI | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01D | B-01D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074083600D02 | XTO OFFSHORE INC. | 401788 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-02ST | B-02ST | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074084901S01 | XTO OFFSHORE INC. | 401868 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-03 | B-03 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085300S01 | XTO OFFSHORE INC. | 401763 | PDP | OIL |

**EXHIBIT A-2**

-92-

| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04 | B-04 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085400D01 | XTO OFFSHORE INC. | 401887 | SI | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04D | B-04D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085400D02 | XTO OFFSHORE INC. | 401888 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04E | B-04E | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085400D03 | XTO OFFSHORE INC. | 401764 | PDP | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-05 | B-05 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085700D01 | XTO OFFSHORE INC. | 401865 | SI | GAS |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-05D | B-05D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074085700D02 | XTO OFFSHORE INC. | 401889 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-06 | B-06 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074087600S01 | XTO OFFSHORE INC. | 401766 | PDP | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-07 | B-07 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089800D01 | XTO OFFSHORE INC. | 402019 | PDP | GAS |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-07D | B-07D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089800D02 | XTO OFFSHORE INC. | 402967 | PDP | GAS |
| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02 | C-02 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089500D01 | XTO OFFSHORE INC. | 402020 | PDP | GAS |
| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02D | C-02D | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074089500D02 | XTO OFFSHORE INC. | 402608 | PDP | GAS |

**EXHIBIT A-2**

| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 01ST2 | JA-01ST2 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074063600S02 | XTO OFFSHORE INC. | 402021 | SI | GAS |
| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 02BP01 | JA-02 BP01 | SOUTH MARSH ISLAND BLK 41 | OFFSHORE LOUISIANA | 177074069100S01 | XTO OFFSHORE INC. | 401866 | SI | GAS |

**SOUTH MARSH ISLAND BLOCK 44**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI44C | OCS-G-23840 SMI 44 | OCS-G-23840 SMI 44 C-01 | C-01 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074088300D01 | XTO OFFSHORE INC. | 401804 | SI | GAS |
| SMI44C | OCS-G-23840 SMI 44 | OCS-G-23840 SMI 44 C-01D | C-01D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074088300D02 | XTO OFFSHORE INC. | 401805 | PDP | GAS |

**SOUTH MARSH ISLAND BLOCK 109**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-01 | A-01 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091500S01 | XTO OFFSHORE INC. | 401812 | PDP | GAS |

**EXHIBIT A-2**

| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-02 | A-02 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091600D01 | XTO OFFSHORE INC. | 401813 | PDP | GAS |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-02D | A-02D | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091600D02 | XTO OFFSHORE INC. | 401895 | PDP | GAS |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-03 | A-03 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084091700S01 | XTO OFFSHORE INC. | 401979 | SI | GAS |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-04 | A-04 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084092800S01 | XTO OFFSHORE INC. | 401814 | SI | GAS |
| SMI109A | OCS-G-24873 SMI 109 | OCS-G-24873 SMI 109 A-05 | A-05 | SOUTH MARSH IS SA 109 | OFFSHORE LOUISIANA | 177084092900S01 | XTO OFFSHORE INC. | 401980 | PDP | GAS |

**SOUTH MARSH ISLAND BLOCK 139**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI146B | OCS-G-21106 SMI 139 | OCS-G-21106 SMI 139 B-01 | B-01 | SOUTH MARSH IS SA 146 | OFFSHORE LOUISIANA | 177084092300S01 | XTO OFFSHORE INC. | 401792 | SI | OIL |
| SMI146B | OCS-G-21106 SMI 139 | OCS-G-21106 SMI 139 B-02D | B-02D | SOUTH MARSH IS SA 146 | OFFSHORE LOUISIANA | 177084093501D02 | XTO OFFSHORE INC. | 401851 | SI | OIL |
| SMI146B | OCS-G-21106 SMI 139 | OCS-G-21106 SMI 139 B-02 | B-02 | SOUTH MARSH IS SA 146 | OFFSHORE LOUISIANA | 177084093501D01 | XTO OFFSHORE INC. | 401850 | SI | OIL |

**SOUTH MARSH ISLAND BLOCK 142/143**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT A-2**

| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-01 | A-01 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084014100S02 | XTO OFFSHORE INC. | 401981 | SI | OIL |
|---------|---------------------|--------------------------|------|------------------------|---------------------|------------------|--------------------|--------|-----|-----|
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-02 | A-02 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084014800S02 | XTO OFFSHORE INC. | 401982 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-03 | A-03B | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084016500S03 | XTO OFFSHORE INC. | 401983 | PDP | GAS |
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-04 | A-04 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084017900D02 | XTO OFFSHORE INC. | 401984 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-05 | A-05 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084019200S01 | XTO OFFSHORE INC. | 401985 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-06C | A-06C | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084020300D06 | XTO OFFSHORE INC. | 401852 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-07A | A-07A | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084021000D04 | XTO OFFSHORE INC. | 401854 | SI | GAS |
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-08A | A-08A | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084023000D01 | XTO OFFSHORE INC. | 401856 | SI | GAS |
| SMI142A | OCS-G-1217 SMI 143 | OCS-G-1217 SMI 143 A-08D | A-08D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084023000D02 | XTO OFFSHORE INC. | 401857 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-09B | A-09B | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084026300S03 | XTO OFFSHORE INC. | 401986 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-10 | A-10 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084077000D01 | XTO OFFSHORE INC. | 403034 | TA | OIL |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-10D | A-10D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084077000D02 | XTO OFFSHORE INC. | 403035 | TA | GAS |

**EXHIBIT A-2**

| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-11 | A-11 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091100D01 | XTO OFFSHORE INC. | 401767 | SI | GAS |
| SMI142A | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 A-11D | A-11D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091100D02 | XTO OFFSHORE INC. | 401768 | SI | GAS |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-01 | C-01 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084082900S01 | XTO OFFSHORE INC. | 401987 | SI | GAS |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-02 | C-02 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084084201D01 | XTO OFFSHORE INC. | 401858 | SI | OIL |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-03A | C-03A | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084085000D03 | XTO OFFSHORE INC. | 401890 | PDP | OIL |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-03D | C-03D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084085000D02 | XTO OFFSHORE INC. | 401891 | PDP | GAS |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-04B | C-04B | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084085400S03 | XTO OFFSHORE INC. | 403585 | PDP | GAS |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-05 | C-05 | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091301D01 | XTO OFFSHORE INC. | 401860 | PDP | GAS |
| SMI142C | OCS-G-1216 SMI 142 | OCS-G-1216 SMI 142 C-05D | C-05D | SOUTH MARSH IS SA 142 | OFFSHORE LOUISIANA | 177084091301D02 | XTO OFFSHORE INC. | 401861 | PDP | GAS |

**SOUTH PASS BLOCK 42/43**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|

**EXHIBIT A-2**                                        -97-

| OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-01 | A-01 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404580000 | XTO OFFSHORE INC. | 401799 | 1PDP | OIL |
| OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-02 | A-02 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404590000 | XTO OFFSHORE INC. | 401800 | 1PDP | GAS |
| SL 16869 | SL 16869 #1 0-4RA VUA | 1 | SOUTH PASS 42 | OFFSHORE LOUISIANA | 17721205180000 | XTO OFFSHORE INC. | 401816 | 1PDP | GAS |
| SL 3011 | SL 3011 #001 SWD | #001 SWD | SOUTH PASS 42 | OFFSHORE LOUISIANA | 17721007480000 | XTO OFFSHORE INC. | 703024* | Active | SWD |

\* Burrwood Central Facility

**SHIP SHOAL BLOCK 71**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SS72J | OCS-G-12347 SS 71 | OCS-G-12347 SS 71 #1 | #1 | SHIP SHOAL 072 | Offshore Louisiana | 177114141000S04 | PETROQUEST ENERGY, LLC | 402022 | TA | GAS |

**SHIP SHOAL BLOCK 79/80**
**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SS079A | OCS-G-15277 SS 79 | OCS G-15277 SS 79 A-02 | A-02 | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D03 | XTO OFFSHORE INC. | 401789 | PDP | OIL |
| SS079A | OCS-G-15277 SS 79 | OCS G-15277 SS 79 A-02D | A-02D | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D02 | XTO OFFSHORE INC. | 401893 | PDP | OIL |

**EXHIBIT A-2**

**SHIP SHOAL BLOCK 188**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 A-01 | A-01 | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114146000D 01 | XTO OFFSHORE INC. | 401797 | PDP | GAS |
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 A-01D | A-01D | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114146000D 02 | XTO OFFSHORE INC. | 403174 | PDP | GAS |
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 #02 | #02 | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114147500S 00 | XTO OFFSHORE INC. | 401796 | SI | GAS |
| SS188 | OCS-G-22712 SS 188 | OCS G22712 SS 188 #02A | #02A | SHIP SHOAL 189 | OFFSHORE LOUISIANA | 177114147500S 02 | XTO OFFSHORE INC. | 402541 | SI | GAS |

**SHIP SHOAL BLOCK(s) 247/248/249/270/271 (Unit)**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-02ST2 | F-02ST2 | SHIP SHOAL 246 | Offshore Louisiana | 177124019702S0 1 | ENI US OPERATING CO. INC. | 402065 | PDP | OIL |

**EXHIBIT A-2**

| SS247F | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 F-08 | F-08 | SHIP SHOAL 246 | Offshore Louisiana | 177124022100S01 | ENI US OPERATING CO. INC. | | TA | GAS |
|--------|-------------------|------------------------|------|----------------|--------------------|-----------------|---------------------------|--|----|-----|
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-10 | F-10 | SHIP SHOAL 246 | Offshore Louisiana | 177124022400S01 | ENI US OPERATING CO. INC. | | SI | GAS |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-14ST1 | F-14ST1 | SHIP SHOAL 246 | Offshore Louisiana | 177124022301S01 | ENI US OPERATING CO. INC. | 402066 | PDP | GAS |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-17ST | F-17ST | SHIP SHOAL 246 | Offshore Louisiana | 177124022901S02 | ENI US OPERATING CO. INC. | 402067 | PDP | OIL |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-18ST1 | F-18ST1 | SHIP SHOAL 246 | Offshore Louisiana | 177124023201S02 | ENI US OPERATING CO. INC. | 402068 | PDP | GAS |
| SS247F | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 F-19 | F-19 | SHIP SHOAL 246 | Offshore Louisiana | 177124015000S01 | ENI US OPERATING CO. INC. | 403324 | SI | GAS |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-02 | D-02 | SHIP SHOAL 246 | Offshore Louisiana | 177124012000S01 | ENI US OPERATING CO. INC. | | SI | OIL |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-03BP2 | D-03BP2 | SHIP SHOAL 246 | Offshore Louisiana | 177124013100S02 | ENI US OPERATING CO. INC. | | TA | OIL |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-04 | D-04 | SHIP SHOAL 246 | Offshore Louisiana | 177124017100 | ENI US OPERATING CO. INC. | | TA | OIL |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-05 | D-05 | SHIP SHOAL 246 | Offshore Louisiana | 177124014200S02 | ENI US OPERATING CO. INC. | 401762 | PDP | OIL |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-06 | D-06 | SHIP SHOAL 246 | Offshore Louisiana | 177124015000 | ENI US OPERATING CO. INC. | | TA | OIL |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-07BP3 | D-07BP3 | SHIP SHOAL 246 | Offshore Louisiana | 177124015600S01 | ENI US OPERATING CO. INC. | | SI | GAS |

**EXHIBIT A-2**

| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-08 | D-08 | SHIP SHOAL 246 | Offshore Louisiana | 177124015900S05 | ENI US OPERATING CO. INC. | 402069 | SI | GAS |
|--------|-------|-------|------|------|------|------|------|------|------|------|
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-09 | D-09 | SHIP SHOAL 246 | Offshore Louisiana | 177124016600S04 | ENI US OPERATING CO. INC. | 402070 | TA | GAS |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-10 | D-10 | SHIP SHOAL 246 | Offshore Louisiana | 177124017900 | ENI US OPERATING CO. INC. | | SI | GAS |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-11 | D-11 | SHIP SHOAL 246 | Offshore Louisiana | 177124018500S05 | ENI US OPERATING CO. INC. | | PDP | GAS |
| SS248D | OCS-G-1028 SS 247 | OCS-G-1028 SS 247 D-12ST3 | D-12ST3 | SHIP SHOAL 246 | Offshore Louisiana | 177124017903S01 | ENI US OPERATING CO. INC. | 402071 | SI | GAS |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-14BP1 | D-14BP1 | SHIP SHOAL 246 | Offshore Louisiana | 1771240192000 | ENI US OPERATING CO. INC. | | TA | GAS |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-15 | D-15 | SHIP SHOAL 246 | Offshore Louisiana | 177124020600S01 | ENI US OPERATING CO. INC. | | SI | GAS |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-16 | D-16 | SHIP SHOAL 246 | Offshore Louisiana | 177124021000S02 | ENI US OPERATING CO. INC. | 402072 | SI | GAS |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-17 | D-17 | SHIP SHOAL 246 | Offshore Louisiana | 177124020800S01 | ENI US OPERATING CO. INC. | 402073 | SI | GAS |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-18 | D-18 | SHIP SHOAL 246 | Offshore Louisiana | 177124021100S01 | ENI US OPERATING CO. INC. | 402074 | SI | GAS |
| SS248D | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 D-19 | D-19 | SHIP SHOAL 246 | Offshore Louisiana | 177124021500S05 | ENI US OPERATING CO. INC. | 402080 | SI | GAS |
| SS248D | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 D-20 | D-20 | SHIP SHOAL 246 | Offshore Louisiana | 177124022000S08 | ENI US OPERATING CO. INC. | 402075 | SI | GAS |
| SS248G | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 G-01 | G-01 | SHIP SHOAL 246 | Offshore Louisiana | 177124049500S01 | ENI US OPERATING CO. INC. | 402076 | PDP | GAS |

**EXHIBIT A-2**

| SS248G | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 G-02 | G-02 | SHIP SHOAL 246 | Offshore Louisiana | 177124053000S01 | ENI US OPERATING CO. INC. | 402077 | SI | GAS |
| SS248G | OCS-G-1029 SS 248 | OCS-G-1029 SS 248 G-03 | G-03 | SHIP SHOAL 246 | Offshore Louisiana | 177124053300D02 | ENI US OPERATING CO. INC. | 402078 | SI | GAS |
| | OCS-G-1030 SS 249 | OCS-G-1030 SS 249 06 | 6 | SHIP SHOAL 246 | Offshore Louisiana | 177124062200 | ENI US OPERATING CO. INC. | 402079 | TA | |

**VERMILION BLOCK 313**

**XTO OFFSHORE INC.**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-01 | D-01 | VERMILION 313 | Offshore Louisiana | 177064090000S02 | ENI US OPERATING CO. INC. | 402106 | | PDP | OIL |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-02ST1 | D-02ST1 | VERMILION 313 | Offshore Louisiana | 177064090201S05 | ENI US OPERATING CO. INC. | 402107 | | PDP | GAS |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-03 | D-03 | VERMILION 313 | Offshore Louisiana | 177064090300S02 | ENI US OPERATING CO. INC. | 402108 | | PDP | OIL |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-04BP1 | D-04BP1 | VERMILION 313 | Offshore Louisiana | 177064090501S02 | ENI US OPERATING CO. INC. | 402109 | | SI | OIL |
| VR313D | OCS-G-1172 VR 313 | OCS-G-1172 VR 313 D-05ST1 | D-05ST1 | VERMILION 313 | Offshore Louisiana | 177064090701S01 | ENI US OPERATING CO. INC. | 402110 | | PDP | OIL |

**WEST CAMERON BLOCK 485/507**

**XTO OFFSHORE INC.**

**EXHIBIT A-2**

-102-

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-01ST2 | A-01ST2 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024010002S 01 | XTO OFFSHORE INC. | 402114 | | SI | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-02 | A-02 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024018200D 03 | XTO OFFSHORE INC. | 401796 | | SI | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-03EST1 | A-03EST1 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024020101D 03 | XTO OFFSHORE INC. | 402979 | | SI | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-03FST1 | A-03FST1 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024020101D 04 | XTO OFFSHORE INC. | 402117 | | SI | GAS |
| WC485 A | OCS-G-10594 WC 507 | OCS-G-10594 WC 507 A-04ST2 | A-04ST2 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024023002S 01 | XTO OFFSHORE INC. | 402118 | | PDP | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-05 | A-05 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024023500S 01 | XTO OFFSHORE INC. | 77163 (Hunt#) | | TA | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 485 A-06(B) ST2 | A-06(B)ST 2 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024024902S 03 | XTO OFFSHORE INC. | 401883 | | PDP | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-07(B) | A-07(B) | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024094900S 03 | XTO OFFSHORE INC. | 402119 | | TA | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC507 A-08(A) | A-08(A) | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024094400S 02 | XTO OFFSHORE INC. | 401781 | | PDP | GAS |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-09E | A-09E | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024094700D 03 | XTO OFFSHORE INC. | 401885 | PDP | GAS |
| WC485 A | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 A-09F | A-09F | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024094700D 04 | XTO OFFSHORE INC. | 401886 | PDP | GAS |
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-10 | A-10 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024117800S 01 | XTO OFFSHORE INC. | 402115 | SI | GAS |
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-11 | A-11 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024118300S 02 | XTO OFFSHORE INC. | 402116 | SI | GAS |
| WC485 A | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 A-11D | A-11D | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024118300S 03 | XTO OFFSHORE INC. | 402116 | SI | GAS |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-01(A) ST4 | B-01(A) ST4 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024098304S 02 | XTO OFFSHORE INC. | 402120 | PDP | GAS |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-02ST1 | B-02ST1 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024099001S 01 | XTO OFFSHORE INC. | 402121 | PDP | GAS |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-03ST1 | B-03ST1 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024100201X 01 | XTO OFFSHORE INC. | (no well #) | TA | GAS |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-04ST2 | B-04ST2 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024108202S 02 | XTO OFFSHORE INC. | 402122 | SI | GAS |
| WC507B | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 B-05 | B-05 | WEST CAME RON SA 507 | OFFSHORE LOUISIANA | 177024101200S 01 | XTO OFFSHORE INC. | 402123 | SI | GAS |

**EXHIBIT A-2**

| WC507B | OCS-G-2220 WC 485 | OCS-G-2220 WC 485 B-06 | B-06 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024108300S01 | XTO OFFSHORE INC. | 401780 | PDP | GAS |
| WC507C | OCS-G-2549 WC 507 | OCS-G-2549 WC 507 C-01 | C-01 | WEST CAMERON SA 507 | OFFSHORE LOUISIANA | 177024130300S01 | XTO OFFSHORE INC. | 401782 | SI | GAS |

**EXHIBIT A-2**

-105-

**EXHIBIT B**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

**EASEMENTS AND PERMITS**

| XTO Ref # | Lease # | Eff Date | Description | WI Int. |
|-----------|---------|----------|-------------|---------|
| 0276247 | SL 4279 | 9/30/2002 | Surface Lease with Sub-Surface Agreement Block 42, South Pass Area, SL 16869 No. 1 Recorded 10/29/03 in Plaquemines Parish Book #1034, Page #60, File No. 02006520 | 100% |
| 0278047 | SL 576 | 6/2/2005 | Approximately 29,275 square feet of state owned water bottoms in Burrwood Bayou, in front of Section 46, Township 24 South Range 30 East, Plaquemines Parish, Louisiana. Recorded 6/15/05 at Plaquemines Parish Book #1095, Page #158, File No. 2005-00003264. (Commercial Water Bottom Lease) | 100% |
| 0276246 | SL 4300 | 12/30/2002 | Block 42, South Pass Area being within the boundary of State Mineral Lease No. 17199 and the bottomhole being situated on acreage described as Block 43, South Pass Area, Offshore Federal Waters, OCS-G 22781. Recorded 1/29/03 in Plaquemines Parish Book #1039, Page #106, File No. 03000773. | 100% |
| 0276253 | SL 3011 | 10/17/2007 | 3.0 acre circular area centered at point having a Lambert coordinates of X = 3,905,250 and Y = 172,757 which encircles SL 1922 SWD Well #3 located in T24S-R30E. Recorded 12/13/07 in Plaquemines Parish Book #1167, Page #880, File No. 2007-0008342. SWD Well name has changed to SL 3011 SWD #1. | 100% |

**EXHIBIT B-1**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

## DESCRIPTION OF RIGHTS-OF-WAY

**East Cameron 178** (XTO File Ref #3202-RW0003-00)
OCS-G 28533, Segment No. 17688, a right-of-way 200 feet wide for the installation, operation and maintenance of a 6 5/8-inch pipeline, 4.86 miles in length, to transport gas and condensate from Block 178, A Platform, to Block 184, 30-inch Subsea Tie-in, all located in East Cameron Area.

**High Island 34** (XTO File Ref #3264-RW0001-00)
OCS-G 24287, Segment No. 13955, a right-of-way 200 feet wide for the installation, operation and maintenance of an 8-5/8-inch pipeline, 1.83 miles in length, to transport gas and condensate from High Island Area Block 34 Caisson No. 1, Lease Number OCS-G 20655 through High Island Blocks 34 and 35 to a sub-sea tie in at High Island Block 21.

**Main Pass 29** (XTO File Ref #3074-RW0001-00)
OCS-G 28216, Segment No. 15810, a right-of-way 200 feet wide to install, operate and maintain a 6 5/8-inch pipeline, 6.80 miles in length, to transport bulk gas from Block 29 Well No. 1 thru blocks 116, 117 to Block 118 "A" all of which is located in the Main Pass Area.

**Main Pass 101** (XTO File Ref #3318-RW0001-00)
OCS-G 24687, Segment No. 14304, a right-of-way 200 feet wide for the operation and maintenance of a 8-inch pipeline, 20,102 feet in length, to transport bulk gas from a SSTI Manifold Main Pass Area, South and East Addition Block 101, OCS-G 22792, to Platform "A" Main Pass Area, South and East Addition, Block 102, OCS-G 3798.

**Main Pass 112** (XTO File Ref #3325-RW0001-00)
OCS-G 11738, Segment No. 9006, a right-of-way 200 feet in width, for a 6 5/8-inch pipeline, 6.77 miles in length, from Platform No. 2 in Main Pass Block 112, crossing Block 113 and Block 114, to a subsea tie-in with an 8-inch pipeline (Segment 9248) in Main Pass Block 117.

**Main Pass 116** (XTO File Ref #3326-RW0001-00)
OCS-G 12708, Segment No. 9248, a right-of-way 200 feet in width, for the operation and maintenance of an existing 8 5/8-inch pipeline, 3.31 miles in length, to transport bulk gas from an 8 5/8-inch subsea tie-in in Main Pass Block 117, to Platform B in Main Pass Block 116 , all in the Main Pass Area.

**Main Pass 116** (XTO File Ref #3326-RW0002-00)
OCS-G 25478, Segment No. 14895, a 200-feet wide right-of-way to operate and maintain a 03-inch pipeline, 2.58 miles in length, to transport condensate from Platform B in Block 116 to a 6-inch Subsea Tie-in in Block 127, all in Main Pass Area.

**Main Pass 118** (XTO File Ref #3331-RW0001-00)
OCS-G 28217, Segment No. 15811, a 200 feet wide right-of-way to operate and maintain an existing 6-5/8-inch pipeline, 6.67 miles in length, to transport oil from Platform A in Block 118 through Blocks 117 and 126 to a 6-inch Subsea tie-in in Block 127, and also to operate and maintain the existing associated subsea tie-in assembly appurtenance in Block 127, all in Main Pass Area.

**Main Pass 116 & 118** (XTO File Ref # Pending)
OCS-G BOEMRE Pending, Segment No. 16342, a 200-foot wide right-of-way to operate and maintain a 4 ½-inch pipeline, 11.00 miles in length, to transport oil from a flange in Block 127, through Blocks 126, 117, 118, 113 to a subsea tie-in in Block 112, all located in the Main Pass Area.

**Ship Shoal 79** (XTO File Ref #3422-RW0001-00)
OCS-G 23712, Segment No. 13736, a right-of-way 200 feet in width and 1.77 miles in length, for the installation, operation and maintenance of a 4-1/2" pipeline to transport bulk gas from Ship Shoal Block 79 No. 2 Caisson, Lease OCS-G 15277 to Ship Shoal Block 80 "A" Platform, Open Lease.

**Ship Shoal 79** (XTO File Ref #3422-RW0002-00)
OCS-G 23713, Segment No. 13737, a right-of-way 200 feet in width and 1.77 miles in length, for the installation, operation and maintenance of a 4-1/2 inch pipeline to transport bulk gas from Ship Shoal Block 79 No. 2 Caisson, Lease OCS-G 15277 to Ship Shoal Block 80 "A" Platform, open lease.

**Ship Shoal 80** (XTO File Ref #3422-RW0003-00)
OCS-G 9330, Segment No. 8204, a right-of-way 200 feet in width, for the construction operation and maintenance of a 6 5/8-inch natural gas and condensate pipeline, 8.06 miles in length, from Samedan Oil Corporation's Platform A in Block 80, Ship Shoal Area, across Blocks 123 and 124, Eugene Island Area, to a subsea connection with ANR Pipeline Company's existing 30-inch pipeline (OCS-G 1687) in Block 125, Eugene Island Area.

**Ship Shoal 188** (XTO File Ref #3423-RW0001-00)
OCS-G 26977, Segment No. 15614, a right-of-way 200 feet wide for the installation, operation and maintenance of a 6-in pipeline, 1.65 miles in length, to transport gas and condensate from Block 188 Well No. 1 to a 10-inch subsea tie-in in Block 189, all in the Ship Shoal Area.

**South Marsh Island 142**  (XTO File Ref #3438-RW0001-00)
OCS-G 3441, Segment No. 4733, a right-of-way 200 feet in width for the construction, maintenance and operation of a 10 ¾-inch natural gas pipeline, 2.67 miles in length, from Forest Oil Corporation's Platform "A" in Block 142, South Marsh Island Area, South Addition, to a subsea connection with Sea Robin Pipeline Company's 24-inch pipeline in the southeast quadrant of Block 127, South Marsh Island Area, South Addition, as shown on Drawing No. OS-33 dated February 3, 1977.

**South Marsh Island 146** (XTO File Ref #3439-RW0001-00)
OCS-G 26837, Segment No. 15106, a right-of-way 200 feet wide for the installation, operation and maintenance of a 6 5/8-inch pipeline, approximately 1.3 miles in length,  to transport bulk gas from South Marsh Island Block 146 "B" to South Marsh Island Block 147 "A".

**South Marsh Island 146** (XTO File Ref #3439-RW0002-00)
OCS-G 26838, Segment No. 15107, a right-of-way 200 feet in width for the installation, operation and maintenance of a 4 1/2-inch pipeline, approximately 1.3 miles in length, to transport bulk gas from South Marsh Island Block 146 "B" to South Marsh Island Block 147 "A".

**South Marsh Island 146** (XTO File Ref #3439-RW0003-00)
OCS-G 26839, Segment No. 15108, a right-of-way 200 feet in width for the installation, operation and maintenance of a 2 ½-inch gas lift pipeline, 1.3 miles in length, from South Marsh Island Block 147 "A" to South Marsh Island Block 146 "B".

**South Pass 42 Field** (XTO File Ref #3450-RW0005-00)
Department of the Army ("Army") Easement No. DACW29-2-01-16 dated September 10, 2001, as amended, granting a Right-of-Way to operate and maintain an existing production facility to serve oil and gas wells drilled in South Pass 42 Field in the Gulf of Mexico, within the Army's Mississippi River South and Southwest Passes Project, Section 46, Township 24 South, Range 30 East, Plaquemines Parish, Louisiana, amended, to include Tract No. 1, Sections 2 and 46, Townships 24 and 25 South, Range 30 East, Plaquemines Parish, Louisiana and to include a proposed Salt Water Disposal (SWD) well, an additional 15-foot wide (construction width) servitude for construction, operation and maintenance of a 4-inch pipeline to serve the proposed SWD well, and a servitude for maintenance of the access canal by wheel washing, as shown on the exhibits attached to the amendment.  Recorded in Plaquemines Parish Book #1080, Page #801, File No. 2004-00006681.

(XTO File Ref #3450-RW0003-00)
Department of the Army ("Army") Easement No. DACW29-2-81-37 dated May 18, 1981, as amended, granting Rights-of-Way for the construction, operation, maintenance and repair of four oil and gas flowlines; one saltwater disposal line; one oil tie-in line and one gas tie-in line, located in our Mississippi River South and Southwest Passes Project, Tract No. 1, Sections 46 and 47, Township 24 South, Range 30 East, Plaquemines Parish, Louisiana.  Recorded July 14, 1981 in Plaquemines Parish Book #526, Page #231, File No. 27.

(XTO File Ref #3448-RW0001-00)
State Lease Right-of-Way 4584, One six (6) inch gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40, South Pass Area, Section 1 of Township 25 South, Range 30 East and Section 46 of Township 24 South, Range 30 East, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page #27, File No. 2005-00002059.

(XTO File Ref #3448-RW0002-00)
State Lease Right of Way 4585, One (1) four inch (4") gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40 and 42, South Pass Area, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page 36, File No. 2005-00002060.

(XTO File Ref #3448-RW0003-00)
State Lease Right-of-Way 4586, One (1) eight inch (8") gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40, South Pass Area, Section 1 of Township 25 South, Range 30 East and Section 46 of Township 24 South, Range 30 East, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page #45, File No. 2005-00002061.

(XTO File Ref #3448-RW0004-00)
State Lease Right-of-Way 4587, One (1) six inch (6") gas/condensate pipeline crossing lands of State of Louisiana, situated in Block 40, South Pass Area, Section 1 of Township 25 South, Range 30 East and Section 46 of Township 24 South, Range 30 East, Plaquemines Parish, Louisiana. Recorded April 22, 2005 in Plaquemines Parish Book #1091, Page #54, File No. 2005-00002062.

**West Cameron 485** (XTO File Ref # 3542-RW0001-00)
OCS-G 2122E, Segment No. 4289, a right-of-way 200 feet in width for the construction, operation and maintenance of a 12" natural gas pipeline from an existing platform in Block 485, crossing Blocks 507 and 508 to an existing platform in Block 509, West Cameron Area, South Addition, a distance of 28,720 feet

**EXHIBIT B-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

## DESCRIPTION OF PIPELINES

| Segment Number | Originating Area/Block | Originating Lease | Destination Area/Block | Destination Lease | Status | Segment Length | Size |
|---|---|---|---|---|---|---|---|
| 16161 | EI 309J | G00997 | EI309G | G00997 | Proposed | 9875 | 6-5/8" |
| 16162 | EI 309J | G00997 | EI309G | G00997 | Proposed | 9875 | 6-5/8" |
| 16016 | EI312 | G22679 | SM142 | G01216 | Active | 18112 | 4" |
| 16017 | EI312 | G22679 | SM142 | G01216 | Active | 18115 | 6 5/8" |
| 14138 | MP101 | G22792 | MP101 | G22792 | Active | 4546 | 6 5/8" |
| 14821 | MP101 | G22792 | MP101 | G22792 | Active | 5194 | 4" |
| 14822 | MP101 | G22792 | MP101 | G22792 | Out of Service | 5197 | 4" |
| 14315 | MP101 | G22792 | MP101 | G22792 | Active | 8745 | 8 5/8" |
| 9011 | MP112 | G09707 | MP112 | G09707 | Out of Service | 9088 | 4" |
| 17188 | MP114 | G27201 | MP118 | G22797 | Active | 22027 | 4" |
| 8372 | MP116 | G03419 | MP116 | G03419 | Out of Service | 10893 | 8 5/8" |
| 8373 | MP116 | G03419 | MP116 | G03419 | Out of Service | 10893 | 8 5/8" |
| 15792 | MP118 | G22797 | MP125 | G25019 | Active | 4649 | 8 5/8" |
| 17557 | MP125 | G25019 | MP118 | G22797 | Active | 13939 | 6 5/8" |
| 14741 | SM109 | G24873 | SM109 | G24873 | Active | 10719 | 10 3/4" |
| 10934 | SM142 | G01216 | SM142 | G01216 | Active | 3080 | 4" |
| 11552 | SM142 | G01216 | SM142 | G01216 | Active | 8504 | 4" |
| 11553 | SM142 | G01216 | SM142 | G01216 | Active | 8359 | 6 5/8" |
| 14292 | SM40 | G13607 | SM40 | G13607 | Active | 5584 | 6 5/8" |
| 14293 | SM40 | G13607 | SM40 | G13607 | Active | 6015 | 6 5/8" |
| 14294 | SM40 | G13607 | SM40 | G13607 | Active | 6017 | 6 5/8" |
| 14295 | SM40 | G13607 | SM40 | G13607 | Active | 6020 | 2 1/2" OR 2 7/8" |
| 17203 | SM40 | G13607 | SM44 | G23840 | Active | 9233 | 2 1/2" OR 2 7/8" |
| 17201 | SM44 | G23840 | SM40 | G13607 | Active | 9233 | 6 5/8" |
| 17202 | SM44 | G23840 | SM40 | G13607 | Active | 9233 | 4" |
| 15611 | SS188 | G22712 | SS188 | G22712 | Out of Service | 8167 | 4" |
| 10390 | WC507 | G02549 | WC485 | G02220 | Active | 2100 | 6 5/8" |
| 10391 | WC507 | G02549 | WC485 | G02220 | Active | 2100 | 6 5/8" |
| 16222 | WC507 | G02549 | WC485 | G02220 | Out of Service | 8670 | 6 5/8" |

**EXHIBIT B-3**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XTO OFFSHORE INC.**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

## DESCRIPTION OF PLATFORMS

| XTO # | PLATFORM NAME | OPERATOR | STATE |
|-------|---------------|----------|-------|
| N/A | PLATFORM BS 52 A | CENTURY EXPLORATION NEW ORLEANS, INC. | LA |
| N/A | PLATFORM BS 53 CF | CENTURY EXPLORATION NEW ORLEANS, INC. | LA |
| 703463 | PLATFORM EC 178 D | XTO OFFSHORE INC. | LA |
| 703445 | PLATFORM EI 273 D | MARINER ENERGY INC | LA |
| 703458 | PLATFORM EI 284 B | MARINER ENERGY INC | LA |
| 703371 | PLATFORM EI 287 D | MARINER ENERGY INC | LA |
| 402689 | PLATFORM EI 292 B | MARINER ENERGY INC | LA |
| 703447 | PLATFORM EI 309 G | MARINER ENERGY INC | LA |
| 703342 | PLATFORM EI 309 J | XTO OFFSHORE INC. | LA |
| 703331 | PLATFORM EI 312 D | XTO OFFSHORE INC. | LA |
| 703353 | PLATFORM HI 034 B | XTO OFFSHORE INC. | TX |
| 703430 | PLATFORM HI A376 A | APACHE CORPORATION | TX |
| N/A | PLATFORM HI A376 B | APACHE CORPORATION | TX |
| 703408 | PLATFORM HI A376 C | APACHE CORPORATION | TX |
| 403304 | PLATFORM HI A554 A | HUNT OIL COMPANY | TX |
| 703359 | PLATFORM MP 029  1 | XTO OFFSHORE INC. | LA |
| 703355 | PLATFORM MP 101 06 | XTO OFFSHORE INC. | LA |
| 703332 | PLATFORM MP 101 B | XTO OFFSHORE INC. | LA |
| 703333 | PLATFORM MP 101 D | XTO OFFSHORE INC. | LA |
| 703436 | PLATFORM MP 109 C | W & T OFFSHORE INC | LA |
| 703437 | PLATFORM MP 109 D | W & T OFFSHORE INC | LA |
| 703336 | PLATFORM MP 112 2 | XTO OFFSHORE INC. | LA |
| 703335 | PLATFORM MP 112 A | XTO OFFSHORE INC. | LA |
| 703360 | PLATFORM MP 114 1 | XTO OFFSHORE INC. | LA |
| N/A | PLATFORM MP 116 8 | XTO OFFSHORE INC. | LA |

| XTO # | PLATFORM NAME | OPERATOR | STATE |
|---|---|---|---|
| 703357 | PLATFORM MP 116 A | XTO OFFSHORE INC. | LA |
| 703327 | PLATFORM MP 116 B | XTO OFFSHORE INC. | LA |
| 703361 | PLATFORM MP 118 A | XTO OFFSHORE INC. | LA |
| 703449 | PLATFORM MP 125 B | XTO OFFSHORE INC. | LA |
| N/A | PLATFORM MP 94 4 | W & T OFFSHORE INC | LA |
| 703362 | PLATFORM SMI 040 B | XTO OFFSHORE INC. | LA |
| 703347 | PLATFORM SMI 040 JA | XTO OFFSHORE INC. | LA |
| 703338 | PLATFORM SMI 044 C | XTO OFFSHORE INC. | LA |
| 703139 | PLATFORM SMI 109A | XTO OFFSHORE INC. | LA |
| 703132 | PLATFORM SMI 142A | XTO OFFSHORE INC. | LA |
| 703133 | PLATFORM SMI 142C | XTO OFFSHORE INC. | LA |
| 703328 | PLATFORM SMI 146B | XTO OFFSHORE INC. | LA |
| 703128 | PLATFORM SP 42A | XTO OFFSHORE INC. | LA |
| 703339 | PLATFORM SS 079 A | XTO OFFSHORE INC. | LA |
| 703370 | PLATFORM SS 080 A | XTO OFFSHORE INC. | LA |
| 703363 | PLATFORM SS 188 02 | XTO OFFSHORE INC. | LA |
| 703349 | PLATFORM SS 188 A | XTO OFFSHORE INC. | LA |
| 703411 | PLATFORM SS 247 F | ENI PETROLEUM COMPANY INC | LA |
| 703404 | PLATFORM SS 248 D | ENI PETROLEUM COMPANY INC | LA |
| 703412 | PLATFORM SS 248 G | ENI PETROLEUM COMPANY INC | LA |
| N/A | PLATFORM SS 71 1 | PETROQUEST ENERGY, L.L.C. | LA |
| 703403 | PLATFORM VR 313 D | ENI PETROLEUM COMPANY INC | LA |
| 703135 | PLATFORM WC 485 A | XTO OFFSHORE INC. | LA |
| 703340 | PLATFORM WC 507B | XTO OFFSHORE INC. | LA |
| 703137 | PLATFORM WC 507C | XTO OFFSHORE INC. | LA |

# Exhibit C

## ASSIGNMENT AND BILL OF SALE

This Assignment and Bill of Sale ("Assignment") is effective as of August 1, 2011, at 7:00 a.m. Central Time ("Effective Time"), and is from HHE ENERGY COMPANY, a Delaware corporation with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 ("HHE"), to DYNAMIC OFFSHORE RESOURCES, LLC, a Delaware limited liability company, with an address of 1301 McKinney, Suite 900, Houston, Texas 77010 ("Assignee"). HHE and Assignee may each be referred to hereafter as a "Party", or collectively referred to as the "Parties".

## ARTICLE 1.

1.01.    Assignment.  For $10 and other good and valuable consideration, the receipt and sufficiency of which HHE acknowledges, HHE bargains, sells, assigns, and conveys to Assignee and its successors and assigns, all of HHE's right, title, and interest in and to the following real and personal properties (collectively, "Properties"), subject to the terms of this Assignment, including its exhibits, and all applicable instruments of record in the county/counties/parish/parishes where the Properties are located:

(a)    The oil and gas leasehold estates and other interests, *insofar but only insofar* as set out on Exhibit A and Exhibit A-1, together with HHE's interest in each well located on the leases, units and land described on Exhibit A and Exhibit A-1, including, without limitation, the wells described on Exhibit A-2 (collectively, "Interests");

HHE EXCEPTS FROM THIS ASSIGNMENT THE EXCLUSIONS PROVIDED IN SECTION 1.02 OF THIS ASSIGNMENT AND MAKES SUCH ASSIGNMENT SUBJECT TO ANY CONVEYANCE OR AGREEMENT, WHETHER RECORDED OR NOT, THAT PERTAINS TO THE INTERESTS AND WHICH WAS EXECUTED OR EFFECTIVE BEFORE THE EXECUTION OF THIS ASSIGNMENT.

(b)    All contracts affecting the Interests, to the extent each is assignable, including agreements for the sale or purchase of oil, gas, and other hydrocarbons; processing agreements; division orders; unit agreements; operating agreements; and other contracts and agreements arising out of, connected with, or attributable to production from the Interests, including the items listed on Exhibit A-1;

HHE EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL RIGHT, TITLE, AND INTEREST IN THESE CONTRACTS INSOFAR AS THEY PERTAIN TO ANY INTEREST NOT ASSIGNED IN THIS ASSIGNMENT.

(c)    All personal property, including material, equipment, pipelines, platforms and facilities situated in and on the Properties and used solely in connection with the use or operation of the Interests for the production, treating, storing, transporting, and marketing of oil, gas, and other hydrocarbons from the Interests, including the items listed on Exhibit B-2 and Exhibit B-3;

0446025

**HHE Excepts From This Assignment And Reserves To Itself All Personal Property, Wells, Fixtures, Pipelines, And Equipment Used In HHE's Operation Of Any Lease, Well, Or Mineral Interest Not Assigned In This Assignment.**

    (d)   All easements, permits, licenses, surface and subsurface leases, rights-of-way, servitudes, and other surface and subsurface rights affecting the Interests, to the extent each is assignable, including the items listed on Exhibit B and Exhibit B-1; and

    (e)   Copies of the data and records relating to the Properties and Interests that have been or will be delivered by HHE to Assignee as provided for in the Purchase and Sale Agreement defined hereafter ("Documents").

1.02.   <u>Exclusions</u>.  The following are excluded from this Assignment:

    (a)   reservations, exceptions and exclusions listed in Exhibits A, B and B-1;

    (b)   pipelines, fixtures, equipment, and interests owned by third parties such as lessors, purchasers, or transporters of Oil or gas;

    (c)   computer equipment (including Rosemont transmitters), telecommunications equipment, vehicles, boats, tools, pulling machines, and other equipment and material temporarily located on the Property or expressly excluded from the sale;

    (d)   items specifically excluded in written information or correspondence provided to Assignee before the Execution Date;

    (e)   any gas processing plant not listed on Exhibit A and Exhibit A-1;

    (f)   personal property, fixtures, equipment, pipelines, facilities, and buildings located on the Property, but currently in use in connection with the ownership or operation of other property not included in the Interests;

    (g)   Unless otherwise described on Exhibit A, if HHE is a party to a joint operating agreement that affects an Interest, this Agreement is limited as to that Interest to the depths subject to the joint operating agreement (e.g., total depth, total depth plus 100 feet, base of formation penetrated by initial test well), but excludes depths previously conveyed and all depths not subject to a joint operating agreement; and

    (h)   If HHE owns unleased mineral interests purportedly within the Interests, those mineral interests are not included in the term "Interests" and will not be conveyed to HHE.

    (i)   [Intentionally Left Blank].

(j)    Responsibility and liability for the proper payment of royalties to any governmental entity with respect to production attributable to the Interests prior to the Effective Time in the event prior payments to such governmental entity were improperly calculated.

(k)    The Reserved Overriding Royalty Interest as defined in Section 1.08.

1.03.    <u>Restrictions on Use</u>. Where any of the Interests include a fee simple interest in real property that has been used for oil, gas, or other mineral operations, the following uses of the affected land, or any portion thereof, are expressly prohibited and forbidden:

(a)    any hotel use;

(b)    any purpose that would constitute a "Permitted Use" under any of the residential zones, districts, or classifications set forth in any applicable municipal, county/parish or state zoning laws in effect at the Effective Time,

(c)    any other residential use;

(d)    any health care, clinic, hospital or other medical facility;

(e)    any playground, recreational park, day nursery, day-care center, child care center, nursing home, house of worship, or school;

(f)    any agricultural use;

(g)    construction or installation of any basements; or

(h)    any water wells for irrigation or drinking purposes.

1.04.    <u>Documents</u>. If originals or the last-remaining copies of the Documents have been provided to Assignee, HHE may have access to them at reasonable times and upon reasonable notice during regular business hours for as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or a longer period if required by law or governmental regulation). HHE may, during this period and at its expense, make copies of the Documents pursuant to a reasonable request. Without limiting the generality of the two preceding sentences, for a period as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or for a longer period if required by law or governmental regulation), Assignee may not destroy or give up possession of any original or last-remaining copy of the Documents without first offering HHE the opportunity, at HHE's expense, to obtain the original or a copy. After this period expires, Assignee must offer to deliver the Documents (or copies) to HHE, at HHE's expense, before giving up possession or destroying them.

1.05.    <u>Reservations</u>. To the extent that HHE has reserved or continues to own an interest (excluding overriding-royalty interests but including, if any, mineral-fee, leasehold interests, deep rights or facilities, equipment, or pipelines) after the Effective Time for which

HHE requires access across the land associated with the Interests in order to exercise its rights, HHE reserves concurrent interests in all applicable easements, rights-of-way, contracts, and other rights relating to the reserved interests and necessary as reasonably required for exploring, drilling, producing, storing, or marketing oil, gas, and other hydrocarbons from the respective zones or interests of the Parties, including rights to lay pipelines, water lines, and power lines; dig pits; erect structures; and perform any other act reasonably necessary to HHE's interests. Additionally, HHE reserves and retains a preferential right to purchase all Oil produced and saved from the Interests, pursuant to and in accordance with the terms and provisions of the Purchase and Sale Agreement defined hereafter. The term "Oil" as used herein means crude oil, distillate, drip gasoline, condensate, and other liquid hydrocarbons.

      1.06.   Surrender or Abandonment of Interests. If Assignee decides to surrender or abandon any of the Interests after execution of this Assignment, Assignee must give HHE written notice of its intent at least 45 days before surrender or abandonment if HHE:

        (a)    has retained an interest in such Interests;

        (b)    has other interests for which HHE requires access across such Interests or Property in order to exercise its rights; or

        (c)    has other interests that are held by production from such Interests. HHE will have 30 days after receipt of Assignee's notice to notify Assignee that it elects to require Assignee to reassign all or any part of such Interests. Reassignment will be in the manner described in Section 1.07.

      1.07.   Reassignment. For reassignment of any Interest under this Assignment, Assignee will execute and deliver to HHE a reassignment by special warranty, in a form satisfactory to HHE and sufficient to place HHE in the same position it occupied before the assignment to Assignee. Assignee's release and discharge of HHE and its Associated Parties, its covenant not to sue HHE or its Associated Parties, and its obligations to indemnify, defend, and hold HHE and its Associated Parties harmless will apply to Interests that are reassigned for the period of Assignee's ownership, and the reassignment instrument will restate Assignee's obligations.

      1.08.   Reserved Overriding Royalty. HHE reserves from the leasehold interest applicable to each of the oil and gas leases described on Exhibit A (collectively, the "Leases", individually a "Lease"), an overriding royalty interest interest equal to five percent of eight-eighths (5% of 8/8) as to production from any New Wells, as defined hereafter (the "Overriding Royalty Interest"). "New Wells", for the purposes of this Assignment is defined as any wells drilled on the Leases from and after the date of execution of this Assignment (the "Execution Date"), together with any sidetrack or deepening after the Execution Date of an existing well on the Leases, to the extent and only to the extent that said sidetrack bottom hole is located 1,000 feet or greater from the bottom hole location of such existing wells; provided, however, such 1,000 foot restriction does not apply to the sidetracks identified in that certain Letter between HHE and Assignee, dated July 29, 2011. New Wells shall not include any recompletions, workovers, or mechanical bypasses of an existing well. The Overriding Royalty Interest shall be paid or delivered by Assignee to HHE in accordance with the following terms and conditions:

-4-

(a)     On oil, delivery of such oil shall be made free of all costs and expenses in developing and operating the Interests, free of all costs of production and unencumbered in any way to HHE's credit into the pipelines or tanks to which the applicable well or wells may be connected, or otherwise as HHE may from time to time direct. Should HHE elect not to take its Overriding Royalty Interest on oil in kind, then HHE's part of such oil shall be paid based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser of such oil at the applicable well or wells, free of all costs and expenses in of developing and operating the Interests, free of all costs of production and unencumbered in any way.

(b)     On all gas, including casinghead gas or other gaseous substances and liquid constituents of said gas, produced from and sold (on or off the Interests) or used off the Interests, or for the extraction of gasoline or other products therefrom, the Overriding Royalty Interest shall be based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser at the well or wells of gas so produced, sold or utilized, free of all costs of developing and operating the Interests, free of all costs of production.

Payment by Assignee of the Overriding Royalty Interest must be made from the Execution Date and at all times thereafter on the basis of one hundred percent (100%) of the New Well's production (proportionately reduced as hereafter provided), and such payment must be made regardless of (a) whether Assignee is or is not banking or storing gas, whether pursuant to the provisions of an agreement so permitting, or otherwise; (b) whether Assignee is or is not selling all or any part of its share of the total production; and (c) the identity of the purchaser or purchasers of such gas if Assignee should be selling all or any part of the total gas produced. The Overriding Royalty Interest shall be delivered to HHE free of all cost and expense of developing and operating the Leases and free and clear of all taxes except gross production, severance taxes, and ad valorem taxes applicable thereto; provided that, the Overriding Royalty Interest will be subject to and bear a proportionate share of all reasonable costs and expenses of a non-affiliated third party incurred for the transportation, compression, dehydration and treating of the said gas and condensate in the preparation for marketing of such production. Such payments shall be made on or before the sixtieth (60th) day following the month of the production. If payment is not made within the time prescribed, the unpaid amount will bear interest at the rate of one percent (1%) for each month or fraction of a month, by which payment is delayed, or the maximum lawful rate, whichever is less. Assignee agrees to send all division orders covering the Overriding Royalty Interest reserved by to HHE at the following address:

> XTO Energy Inc.
> P.O. Box 730586
> Dallas, Texas 75373-0586

If the Leases cover less than a full interest in the land covered thereby or if the interest assigned hereunder in said Leases is less than a full interest, then the Overriding Royalty Interest herein reserved shall be reduced in the proportion that the interest assigned to Assignee herein

bears to the full interest in the land covered or bears to the full interest in the Leases assigned hereunder; provided, however, that the overriding royalties herein reserved are exclusive of and in addition to any royalties, overriding royalties or payments out of production affecting the Leases as of the Effective Time. It is expressly agreed that operations, if any, on the Leases and the extension and duration thereof, as well as the preservation of the Leases by rental payments or otherwise, shall be solely at the will and discretion of Assignee or any successor owner of the working interest in the Leases. The Overriding Royalty Interest hereby reserved is subject to the rights conferred on the lessees (now Assignee) by said Leases to pool or unitize the lands covered thereby; and neither the joinder nor consent by HHE shall be required in connection with any such pooling or unitization. Where oil and/or gas is produced from any unit so formed, HHE shall receive on production from such unit only such portion of the overriding royalty stipulated herein, as the amount of surface acreage of the land affected by such overriding royalty and placed in said unit bears to the total surface acreage included in the unit, unless some other formula for appointment of production is adopted for the unit and in such case the formula shall be used.

HHE upon notice in writing to Assignee, shall have the right to audit Assignee's accounts and records relating to the Overriding Royalty Interest reserved herein and any other records related to the determination of the amounts due HHE for any calendar year within the twenty-four (24) month period following the end of such calendar year.

The Overriding Royalty Interest is expressly subject to the terms and provisions of any of the Related Agreements, to the extent and only to the extent that such terms and provisions contractually apply to and prohibit the establishment of an overriding royalty interest affecting any of the Leases. If pursuant to the terms of any Related Agreement all or a portion of Assignee's interest in a Lease, or all or a portion of its interest in the production therefrom, is forfeited or assigned to one or more other working interest owners, either permanently or for a stipulated period, because Assignee fails to participate in any operation or operations, then to the extent that such forfeited or assigned interest is subject to and burdened by the Overriding Royalty Interest, the working interest so assigned or forfeited by Assignee shall be free and clear of such Overriding Royalty Interest for the period of such forfeiture or assignment of overriding royalty interests. The Overriding Royalty Interest will become effective again when the interest is reassigned or reverts back to Assignee, and Assignee shall pay such Overriding Royalty Interest as provided in this Section 1.08. Further, to the extent any Related Agreement establishes security rights in favor of the parties thereto, the Overriding Royalty Interest conveyed herein shall be subordinated to such security rights. For the purposes of this Assignment, "Related Agreements" shall mean all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements concerning or pertaining to the Interests, to the extent that they are binding on HHE or its successors or assigns.

It is understood and agreed that the Overriding Royalty Interests reserved herein, will be a permanent burden on the Leases subject to the provisions of this Section 1.08, and will continue in effect as to each Lease for so long as each Lease remains in effect. In addition in the event Assignee secures a renewal or extension for any such Leases, covering all or any part of

the land previously covered thereby, then the interests reserved herein will apply to such renewed or extended Lease. A "renewal" or "extension" of a Lease as those terms are used therein shall mean any Lease or Leases covering all or a part of the land covered by the Leases that is executed by Assignee within twelve (12) months after termination of any Lease, or the next ensuing Federal or state lease sale pertaining to all or any part of the land previously covered by a Lease, whichever may come first.

      1.09.   <u>Governmental Transfers.</u>   Where separate transfers of any of the Properties have been, or will be, executed for filing with and approval by applicable governmental authorities, any such separate transfer (a) shall not constitute an additional assignment or conveyance of the affected Properties, (b) shall not constitute an additional reservation of the Overriding Royalty Interest provided for in this Assignment and (c) shall not modify any of the terms, covenants and conditions, or limitations on warranties, set forth in this Assignment, and are not intended to create and shall not create any representations, warranties or additional covenants of or by either of the parties to this Assignment.

## ARTICLE 2.

Ad valorem taxes assessed against the Properties for the year of the Effective Time are apportioned between HHE and Assignee as of the Effective Time.

## ARTICLE 3.

Assignee will comply with all rules, regulations, statutes, and laws applicable to Assignee's ownership or operation of the Properties. Except to the extent specifically excepted or reserved by HHE in this Assignment or in the Purchase and Sale Agreement (as defined hereafter), Assignee accepts this Assignment and assumes all HHE's obligations and liabilities under all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements (including compliance with express and implied covenants and payment of costs, rentals, shut-in-payments, minimum royalties, and production royalties), to the extent that these obligations and liabilities concern or pertain to the Properties and are binding on HHE or its successors or assigns. Assignee's obligations under this article apply to all applicable instruments, whether recorded or not.

## ARTICLE 4.

Assignee acknowledges that the Interests and Properties have been used for exploration, development, and production of oil and gas and that there may be petroleum, produced water, wastes, or other materials located on or under the Properties or associated with the Interests. Equipment and sites included in the Interests or Properties may contain asbestos, hazardous substances, or naturally occurring radioactive material ("NORM"). NORM may affix or attach itself to the inside of wells, materials, and equipment as scale, or in other forms; the wells, materials, and equipment located on the Properties or included in the Interests may contain NORM and other wastes or hazardous substances; and NORM-containing material and other wastes or hazardous substances may have been buried, come in contact with the soil, or

-7-

otherwise been disposed of on the Properties. Special procedures may be required for the remediation, removal, transportation, or disposal of wastes, asbestos, hazardous substances, and NORM from the Interests and Properties.

Assignee will store, handle, transport, and dispose of or discharge all material, substances, and wastes from the Properties (including produced water, drilling fluids, NORM, and other wastes), whether present before or after the Effective Time, in accordance with applicable local, state, and federal laws and regulations. Assignee will keep records of the types, amounts, and location of materials, substances, and wastes that are stored, transported, handled, discharged, released, or disposed of onsite and offsite. When any lease terminates, an interest in which has been assigned under this Assignment, Assignee will take additional testing, assessment, closure, reporting, and remedial action with respect to the Properties as is necessary to satisfy all local, state, and federal requirements directed in effect at that time and necessary to restore the Properties.

## ARTICLE 5.

Assignee recognizes, and will either perform or assure that performance is accomplished properly and in accordance with applicable law and the obligations and liabilities described in Article 3, all obligations to abandon, restore, and remediate the Properties and the Interests, whether arising before or after the Effective Time, including obligations, as applicable, to:

a) obtain plugging exceptions in the operator's name for each well located on the Properties (abandoned and unabandoned) with a current plugging exception or permanently plug and abandon each well;

b) plug, abandon, and if necessary, reabandon each well located on the Properties (abandoned and unabandoned);

c) remove all equipment and facilities, including flowlines, pipelines and platforms;

d) close all pits; and

e) restore the surface, subsurface, and offshore sites associated with the Interests and Properties.

Assignee will take all necessary steps to ensure that Assignee is recognized as the owner and, if applicable, operator of the Properties by all appropriate parties, including any regulatory commission, body or board with jurisdiction. If HHE is the principal on any financial assurance (including a bond) relating to the Properties, which financial assurance is required by any law, rule, or regulation, then Assignee will secure new financial assurance in the required amount and supply it to the regulatory body requiring the financial assurance, to the end that HHE's financial assurance is released and discharged.

Assignee will pay all costs and expenses associated with the obligations assumed under this article. HHE may require Assignee to maintain a performance bond in an amount, in a form, and from an institution acceptable to HHE, to guarantee Assignee's obligations, all as provided for in the Purchase and Sale Agreement as defined hereafter.

## ARTICLE 6.

HHE MAKES NO WARRANTY OF ANY TYPE IN THIS ASSIGNMENT, WHETHER EXPRESS, STATUTORY, OR IMPLIED. ASSIGNEE HAS INSPECTED AND HAS SATISFIED ITSELF AS TO THE CONDITION OF THE PROPERTIES. THIS ASSIGNMENT IS MADE BY HHE AND ACCEPTED BY ASSIGNEE ON AN "AS IS, WHERE IS" BASIS. HHE DISCLAIMS ALL WARRANTIES, INCLUDING:

(a)     AS TO THE FITNESS OR CONDITION OR MERCHANTABILITY OF THE MATERIALS, EQUIPMENT, OR FACILITIES CONVEYED;

(b)     AS TO THE PHYSICAL, OPERATIONAL, OR ENVIRONMENTAL CONDITION OF THE PROPERTIES;

(c)     AS TO THE OIL, GAS, AND OTHER HYDROCARBON OPERATIONS OF THE PROPERTIES COVERED BY THE TERMS AND CONDITIONS OF ANY LEASES OR OTHER AGREEMENTS THAT ARE A PART OF THE PROPERTIES;

(d)     AS TO THE ISSUANCE, REISSUANCE, OR TRANSFER OF ANY PERMITS RELATING TO ANY OF THE PROPERTIES;

(e)     AS TO ANY CONSENT OR APPROVAL REQUIRED UNDER ANY INSTRUMENT DESCRIBED IN ARTICLE III; AND

(f)     AS TO TITLE, EITHER EXPRESS, IMPLIED, OR STATUTORY.

## ARTICLE 7.

The terms "Claim" or "Claims" mean, collectively, claims, demands, causes of action, and lawsuits asserted or filed by any person, including an artificial or natural person, a local, state, or federal governmental entity; a person holding rights under any instrument described in Article 3; an Associated Party of HHE or Assignee; or a third party. The term "Liability" or "Liabilities" means, collectively, all damages (including consequential and punitive damages), including those for personal injury, death, or damage to personal or real property (both surface and subsurface) and costs for remediation, restoration, or clean up of contamination, whether the injury, death, or damage occurred or occurs on or off the Properties by migration, disposal, or otherwise; losses; fines; penalties; expenses; costs to remove or modify facilities on or under the Properties; plugging liabilities for all wells; attorneys' fees; court and other costs incurred in defending a Claim; liens; and judgments; in each instance, whether these damages and other costs are known or unknown, foreseeable or unforeseeable on the Effective Time. The term "Associated Parties" means successors, assigns, directors, officers, employees, agents, contractors, subcontractors, and affiliates.

Assignee releases and discharges HHE and its Associated Parties from each Claim and Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S RELEASE AND DISCHARGE OF HHE AND ITS ASSOCIATED PARTIES INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT,

CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF HHE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY, and this release and discharge are binding on Assignee and its successors and assigns The only exception to Assignee's release and discharge of HHE and its Associated Parties is that (a) Assignee does not release Claims against contractors and subcontractors for work regarding the Interests and Properties, and (b) Assignee does not release or discharge Claims that HHE breached the Purchase and Sale Agreement as defined hereafter.

Assignee covenants not to sue HHE or its Associated Parties with regard to any Claim or Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S COVENANT NOT TO SUE HHE OR ITS ASSOCIATED PARTIES INCLUDES CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF HHE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLIES REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY, and this covenant is binding on Assignee and its successors and assigns. The only exception to Assignee's covenant not to sue HHE or its Associated Parties is that Assignee does not covenant not to sue contractors and subcontractors for work regarding the Interests and Properties.

Assignee will indemnify, defend, and hold HHE and its Associated Parties harmless from each Claim or Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S OBLIGATIONS TO INDEMNIFY, DEFEND, AND HOLD HHE AND ITS ASSOCIATED PARTIES HARMLESS INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF HHE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY. The only exception to Assignee's obligations to indemnify, defend, and hold HHE and its Associated Parties harmless is (a) a judgment rendered or settlement reached in a lawsuit filed before the Effective Time, but only to the extent that the acts or omissions that gave rise to the cause of action are attributable to the conduct or operations or ownership of HHE or its Associated Parties before the Effective Time and (b) a Claim that HHE breached the Purchase and Sale Agreement defined hereafter. Assignee's obligations are binding on Assignee and its successors and assigns.

Assignee's duty to release, discharge, not to sue, indemnify, defend, and hold HHE and its Associated Parties harmless includes Claims or Liabilities arising in any manner from the physical or environmental condition of the Interests and Properties, including Claims or Liabilities under applicable laws and regulations now enacted or that may be enacted in the future, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time.

## ARTICLE 8.

Assignee represents that it has acquired the Properties for its own benefit and account and has not acquired the Properties with the intent of distributing fractional undivided interests in them or otherwise selling them in a manner that would be subject to regulation by federal or state securities laws. If Assignee sells, transfers, or otherwise disposes of the Properties or fractional undivided interests in them in the future, it will do so in compliance with applicable federal and state laws.

This Assignment is subject to the terms of the Purchase and Sale Agreement between HHE, among others, and Assignee concerning the Properties, dated effective as of August 1, 2011 (the "Purchase and Sale Agreement"). In the event of a conflict or inconsistency between the terms and provisions of this Assignment and those set forth in the Purchase and Sale Agreement, the terms and provisions in the Purchase and Sale Agreement shall control. The Purchase and Sale Agreement provides, in part, that the Parties will correct errors that may have been made in the conveyancing instruments; that HHE may require that all or a part of the Properties be reassigned under certain circumstances; and that disputes concerning the Properties or the transaction will be resolved by alternate dispute resolution, to the extent, if any, that Assignee has not released, discharged, or covenanted not to sue HHE or its Associated Parties.

HHE, upon notice in writing to Assignee, shall have the right to access the Assignee's offices, facilities, work sites, warehouses, books, records, correspondence, instructions, plans, drawings, receipts, vouchers, financial accounts, data stored in computer files or microfiche and personnel to audit Assignee's accounts and records relating to the retained royalty interest, including any hedge agreements, facilities used for the measurement of production from the properties, for any calendar year within the twenty-four (24) month period following the end of such calendar year. The same audit rights are to extend to subcontractors. HHE shall maintain supporting data and accounting records consistent with generally accepted accounting principles, and the employees and agents of company shall have the right to reproduce and retain for the purpose of audit, any of these documents. HHE shall not be liable for any of Assignee's contractor's or subcontractor's costs resulting from an audit hereunder.

The provisions of this Assignment are severable. If a court of competent jurisdiction finds any part of this Assignment to be void, invalid, or otherwise unenforceable (except for the release, waiver, defense, and indemnity provisions), this holding will not affect other portions that can be given effect without the invalid or void portion.

All covenants and agreements in this Assignment (except Article 8) bind and inure to the benefit of the heirs, successors, and assigns of HHE and Assignee; are covenants running with the land; and are effective as stated, whether or not the covenants and agreements are memorialized in assignments and other conveyances executed and delivered by the Parties and their respective heirs, successors, and assigns from time to time.

Recitation of or reference to any agreement or other instrument in this Assignment, including its exhibits, does not operate to ratify, confirm, revise, or reinstate the agreement or instrument if it has previously lapsed or expired.

This Assignment and its performance will be construed in accordance with, and governed by, the internal laws of the State of Texas, without regard to the choice of law rules of any jurisdiction, including Texas.

The word <u>includes</u> and its syntactical variants mean "includes, but not limited to" and its corresponding syntactical variants. The rule of *ejusdem generis* may not be invoked to restrict or limit the scope of the general term or phrase followed or preceded by an enumeration of particular examples.

All exhibits referenced in and attached to this Assignment are incorporated into it.

[Intentionally Left Blank]

This instrument may be executed in counterparts, all of which together will be considered one instrument.

Executed in the presence of the undersigned witnesses on the dates indicated below, but effective as of the Effective Time.

**WITNESSES:**

_____
Print or Type Name: James F. Wiggins

_____
Print or Type Name: Clyde Vanderbrouk

**XH, LLC**

BY: _____

NAME:   James L. Death

TITLE:   Attorney-in-Fact

DATE:   August 31, 2011


_____
Print or Type Name: James F. Wiggins

_____
Print or Type Name: Clyde Vanderbrouk

**XH, LLC**

BY: _____

NAME:   Christopher N. Claeys

TITLE:   Attorney-in-Fact

DATE:   August 31, 2011


_____
Print or Type Name: John H. Smith

_____
Print or Type Name:  Lambert M. Laperouse

**Dynamic Offshore Resources, LLC**

BY: _____

NAME:   G.M. McCarroll

TITLE:   President and Chief Executive Officer

DATE:   August 31, 2011

-13-

STATE OF TEXAS            §
                         §
COUNTY OF HARRIS          §


This instrument was acknowledged before me on August 31, 2011, by James L. Death, Attorney-in-Fact, and Christopher N. Claeys, Attorney-in-Fact, of XTO Offshore Inc., a Delaware corporation, on behalf of said corporation.



Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____

SIRA M PINEIRO
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
APRIL 6, 2012


STATE OF TEXAS            §
                         §
COUNTY OF HARRIS          §


This instrument was acknowledged before me on August 31, 2011, by G.M. McCarroll, President and Chief Executive Officer of Dynamic Offshore Resources, LLC, a Delaware limited liability company, on behalf of said limited liability company.



Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____

ROBYN E ARNOLD
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MAY 14, 2014

# EXHIBIT A
## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## ASSIGNMENT AND BILL OF SALE
## DATED EFFECTIVE AS OF AUGUST 1, 2011,
## BETWEEN HHE ENERGY COMPANY
## AND DYNAMIC OFFSHORE RESOURCES, LLC

### DESCRIPTION OF INTERESTS

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3329-0001-00 | **Main Pass 94 - OCS-G 7802**<br>SE/4 of Block 94, Main Pass Area, as to those depths from the surface of the earth down to 9,414' MD / 5,666' TVD | Operating Rights | 5.88133% | HHE Energy Company |
| 3318-0001-00 | **Main Pass 101 - OCS-G 22792**<br>All of Block 101, Main Pass Area | Record Title | 17.05000% | HHE Energy Company |
| | N/2N/2NE/4 of Block 101, Main Pass Area, limited to those depths from the surface of the earth down to a depth equal to the stratigraphic equivalent of the total depth drilled in the Main Pass Block 101 Well No. 7, being 5,434 feet True Vertical Depth | Operating Rights | 16.50000% | HHE Energy Company |
| 3322-0001-00 | **Main Pass 109 - OCS-G 22794**<br>SW/4NW/4, NW/4SE/4NW/4, SW/4NE/4NW/4 of Block 109, Main Pass Area, from the surface of the earth down to a depth of 100' below the stratigraphic equivalent of a true vertical depth of 4,622 feet as measured in the LLOG Exploration Offshore, Inc. OCS-G 22794 No. 1 Well | Operating Rights | 7.33260% | HHE Energy Company |
| | N/2NE/4, NW/4SW/4NE/4, NE/4SE/4NW/4, SE/4NE/4NW/4 of Block 109, Main Pass Area, from the surface of the earth down to a depth of 100' below the stratigraphic equivalent of a true vertical depth of 9,937 feet as measured in the LLOG Exploration Offshore, Inc. OCS-G 22794 No. 2 Well (currently named the #D-1 Well) | Operating Rights | 7.33260% | HHE Energy Company |

EXHIBIT A

-1-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3422-0001-00 | **Ship Shoal 79 - OCS-G 15277**<br>All of Block 79, Ship Shoal Area, INSOFAR AND ONLY INSOFAR as the Lease covers from the surface to one hundred feet below the stratigraphic equivalent of 11,318' true vertical depth as seen in the electric log dated March 7, 2001 for the OCS-G 15277 Well No. 2 | Operating Rights | 9.90000% | HHE Energy Company |
| 3421-0001-00 | **Ship Shoal 291, OCS-G 2923**<br>N/2NW/4; SW/4NW/4; NW/4SE/4NW4 of Block 291, Ship Shoal Area, South Addition, INSOFAR, as it pertains to all rights and horizons from the surface down to and including 100' below the stratigraphic equivalent of 6110 feet subsea as drilled and logged in the Hall-Houston Oil Company OCS-G 2923 No. 4 Well (currently named the B-1 Well). | Operating Rights | 2.10000% | HHE Energy Company |
| 3445-0001-00 | **South Marsh Island 40, OCS-G 13607**<br>All of Block 40, South Marsh Island Area | Record Title | 11.00000% | HHE Energy Company |
| 3446-0001-00 | **South Marsh Island 41, OCS-G 1192**<br>E/2 of Block 41, South Marsh Island Area, INSOFAR AND ONLY INSOFAR as to depths from surface of the earth down to 11,500 feet TVD | Operating Rights | 11.00000% | HHE Energy Company |
| 3451-0006-00 | **South Pass 43, OCS-G 22781**<br>That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument. | Record Title | 2.75000% | HHE Energy Company |

**EXHIBIT A**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument INSOFAR AND ONLY INSOFAR as it covers depths from the surface of the earth to the base of the "O" Sand Series defined as the stratigraphic equivalent of a measured depth of 12,030 feet as seen on the Induction Electric Log for the Shell Oil Company, State Lease 2554 Well No. 10. | Operating Rights | 16.50000 | HHE Energy Company |
| | That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument INSOFAR AND ONLY INSOFAR as it covers depths from below the  base of the "O" Sand Series to 30,000 feet | Operating Rights | 5.50000% | HHE Energy Company |

**EXHIBIT A**

-3-

# EXHIBIT A-1
## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## ASSIGNMENT AND BILL OF SALE
## DATED EFFECTIVE AS OF AUGUST 1, 2011,
## BETWEEN  HHE ENERGY COMPANY
## AND DYNAMIC OFFSHORE RESOURCES, LLC

## CONTRACTS

| XTO Agmt # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276265 | Main Pass Area | 94 | 7802 | Lease | July 1, 1985 | United States of America | Kerr-McGee Corporation, et al | 1-Jul-85 |
| 0295118 | Main Pass Area | 94 | 7802 | Operating Agreement, as amended | March 3, 1986 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | |
| 0295115 | Main Pass Area | 94 | 7802 | Participation Agreement | November 1, 2001 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | November 1, 2001 Includes OPERATING AGMT |
| 0418824 | Main Pass Area | 94 | 7802 | Production Handling Agreement | January 24, 2002 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | 24-Jan-02 |
| 0417942 | Main Pass Area | 94 | 7802 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276266 | Main Pass Area | 101 | 22792 | Lease | July 1, 2001 | United State of America | Cheniere Energy, Inc., et al | 1-Jul-01 |
| 0295122 | Main Pass Area | 101 | 22792 | Operating Agreement, as amended | August 10, 2001 | Cheniere Energy, Inc. | Davis Gulf Coast, Inc. et al | 10-Aug-01 |
| 0295115 | Main Pass Area | 101 | 22792 | Participation Agreement | November 2, 2001 | LLOG Exploration Offshore, Inc. | Cheniere Energy, Inc. | November 2, 2001 LLOG-Chenier |
| 0276267 | Main Pass Area | 101 | 24687 | Right-Of-Way | September 29, 2003 | Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 24687 Seg 14304 |
| 0417942 | Main Pass Area | 101 | 22792 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0295125 | Main Pass Area | 101 | 22792 | Compromise Settlement Agreement | March 26, 2006 | Century Exploration New Orleans, Inc. | Davis Gulf Coast, Inc. et al | MP 101 B3 Well |
| | | | | | | | | |
| 0276271 | Main Pass Area | 109 | 22794 | Lease | May 1, 2001 | United States of America | Samedan Oil Corporation, et al | 1-May-01 |
| 0295141 | Main Pass Area | 109 | 22794 | Joint Operating Agreement | May 1, 2001 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | Exhibit D to FO & JPA |
| 0295140 | Main Pass Area | 109 | 22794 | Farmout & Joint Participation Agreement | April 23, 2003 | Kerr-McGee Oil & Gas Corporation | LLOG Exploration Offshore Inc. | April 23, 2003 Farmout & Joint Participation Agmt |
| 0417942 | Main Pass Area | 109 | 22794 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |

**EXHIBIT A-1**

-5-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276280 | Ship Shoal Area | 80 | 9330 | Right-Of-Way | December 8, 1987 | United States of America, Department of Interior, Minerals Management Service | Samedan Oil Corporation | ROW OCS-G 9330 Segment 8204 |
| 0296277 | Ship Shoal Area | 79 | 15277 | Lease | August 1, 1995 | United States of America | Enron Oil & Gas Company | 1-Aug-95 |
| 0295146 | Ship Shoal Area | 79 | 15277 | Farmout Agreement | June 14, 2000 | EOG Resources Inc. | PetroQuest Energy One, L.L.C. | June 14, 2000 EOG Farmout |
| 0295144 | Ship Shoal Area | 79 | 15277 | Participation Agreement | July 15, 2000 | PetroQuest Energy One, L.L.C. | LLOG Exploration & Production Company | Jul 15, '00 Includes Operating Agmt |
| 0295145 | Ship Shoal Area | 79 | 15277 | Joint Operating Agreement | July 15, 2000 | PetroQuest Energy One, L.L.C. | LLOG Exploration & Production Company | Jul 15, '00 Includes Operating Agmt |
| 0276279 | Ship Shoal Area | 79 | 23713 | Right-Of-Way | May 29, 2002 | United States of America, Department of Interior, Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 23713   Segment 13737 |
| 0276278 | Ship Shoal Area | 79 | 23712 | Right-Of-Way | May 29, 2002 | United States of America, Department of Interior, Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 23712   Segment 13736 |
| 0418821 | Ship Shoal Area | 79 | 15277 | Purchase and Sale Agreement | April 15, 2003 | Noble Energy, Inc., et al | LLOG Exploration Offshore, Inc., et al | Purchase of SS 80 "A" |

EXHIBIT A-1

-6-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417942 | Ship Shoal Area | 79 | 15277 | Purchase and Sale Agreement | April 1, 2004 | LLOG Exploration Company, L.L.C., et al | Hunt Petroleum Corporation | Dated 7/9/04, effective 4/1/04 |
| | | | | | | | | |
| | | | | | | | | |
| 0253746 | Ship Shoal Area, South Addition | 291 | 2923 | Lease | December 1, 1974 | United States of America | Ashland Oil, Inc., et al | 1-Jun-62 |
| 0419103 | Ship Shoal Area, South Addition | 291 | 2923 | Farmout Agreement, as amended, and Operating Agreement | October 1, 1991 | Torch Energy Advisors Incorporated, et al | Hall-Houston Oil Company | 1-Jun-62 |
| 0295476 | Ship Shoal Area, South Addition | 291 | 2923 | Purchase and Sale Agreement | March 1, 2008 | Maritech Resources, Inc., et al | Montforte Exploration L.L.C., et al | 1-Jun-62 |
| | | | | | | | | |
| 0266626 | South Marsh Island Area | 40 | 13607 | Lease | August 1, 1992 | United State of America | Shell Offshore Inc. | 1-Aug-92 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294629 | South Marsh Island Area | 40 | 13607 | Operating Agreement, as revised | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | SM 40/41 Shallow Rights - revised 6-1-03 |
| 0294629 | South Marsh Island Area | 40 | 13607 | Participation Agreement & JOA, as amended | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | Feb. 24, 2003 (INCLUDES SM 40 OPER AGMT) |
| 0294621 | South Marsh Island Area | 40 | 13607 | Joint Area Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P., et al | June 1, 2003 (Includes OA SM 40/41 Deep Rights) |
| 0294629 | South Marsh Island Area | 40 | 13607 | Operating Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | SM 40/41 Deep Rights |
| 0295463 | South Marsh Island Area | 40 | 13607 | Platform Lease and Operations Agreement | June 30, 2003 | Apache Corporation | Hunt Petroleum (AEC), Inc. | JA" PF Lse & Opers Agmt-TERMINATED" but obligations survive under Joint Area Agreement Para 12. |
| 0417942 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0316161 | South Marsh Island Area | 40 | 13607 | Production Handling Agreement, as Ratified | September 1, 2004 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | Sept. 1, 2004   JA" PF SM 41" |
| 0266626 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | October 1, 2004 | Apache Corporation | Hunt Petroleum Corporation | October 1, 2004 APACHE Acquisition |
| 0316161 | South Marsh Island Area | 40 | 13607 | Production Handling Agreement, as amended | December 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Nippon Oil Exploration U.S.A. Limited | PHA SM 44 "C" - SM 40 "JA" |
| 0294629 | South Marsh Island Area | 40 | 13607 | Ratification and Amendment | April 1, 2008 | Hunt Petroleum (AEC), Inc., et al | Devon Energy Production Company, L.P. | Ratification of SM 44 "C" - SM 40 "JA" PHA for SM 40 C-2 / C2D Well |
| 0266626 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | January 1, 2010 | Nippon Oil Exploration U.S.A. Limited | XTO Offshore Inc., et al | January 1, 2010 (Acq Nippon Deep Rights SM 40/41) |
| | | | | | | | | |
| | | | | | | | | |
| 0266627 | South Marsh Island Area | 41 | 1192 | Lease | June 1, 1962 | United State of America | California Oil Company | 1-Jun-62 |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294629 | South Marsh Island Area | 41 | 1192 | Participation Agreement & JOA, as amended | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | Feb. 24, 2003 (Includes SM 40 OA) |
| 0294629 | South Marsh Island Area | 41 | 1192 | Operating Agreement, as revised | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | SM 40/41 Shallow Rights - revised 6-1-03 |
| 0294621 | South Marsh Island Area | 41 | 1192 | Joint Area Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P., et al | June 1, 2003 (Includes OA SM 40/41 Deep Rights) |
| 0294629 | South Marsh Island Area | 41 | 1192 | Operating Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | SM 40/41 Deep Rights |
| 0417942 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0316161 | South Marsh Island Area | 41 | 1192 | Production Handling Agreement, as ratified | September 1, 2004 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | Sept. 1, 2004 JA" PF SM 41" |
| 0266626 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | October 1, 2004 | Apache Corporation | Hunt Petroleum Corporation | October 1, 2004 APACHE Acquisition |

EXHIBIT A-1

-10-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0266626 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | January 1, 2010 | Nippon Oil Exploration U.S.A. Limited | XTO Offshore Inc., et al | January 1, 2010 (Acq Nippon Deep Rights SM 40/41) |
| | | | | | | | | |
| 0295086 | South Pass | 42 & 43 | SL 16869 & OCS-G 22781 | Participation Agreement | August 30, 2002 | Pure Resources, L.P. | Andex Resources, L.L.C., et al | |
| 0295095 | South Pass | 42 & 43 | SL 16869, 16870 & OCS-G 22781 | Operating Agreement | August 30, 2002 | LLOG Exploration & Production Company | Pure Resources, L.P., et al | |
| 0417942 | South Pass | 42 & 43 | SL 16860, 16870 & OCS-G 22781 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0314614 | South Pass | 42 & 43 | SL 16869, 16870 & OCS-G 22781 | Production Handling Agreement | February 1, 2007 | Hunt Petroleum (AEC), Inc. | Andex Resources, L.L.C., et al | |
| | | | | | | | | |
| 0276236 | South Pass | 43 | 22781 | Lease | June 1, 2001 | United States of America | Andex Resources, L.L.C., et al | |
| | | | | | | | | |
| | | | | | | | | |
| 0253756 | West Cameron Area | 171 | 1997 | Lease | January 1, 1971 | United States of America | Placid Oil Co., et al | |

**EXHIBIT A-1**                                                    -11-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0293110 | West Cameron Area | 171 | 1997 | Joint Operating Agreement, as amended | January 1, 1971 | Transocean Oil, Inc. | Placid Oil Co., et al | Amendments dated July 25, 1979, October 21, 1982, January 1, 1989, and February 21, 1989 |
| 0418897 | West Cameron Area | 171 | 1997 | Letter Agreement | November 5, 1997 | Hunt Petroleum Corporation, et al | Captiva Energy, Inc. | Includes Election Letter dated November 10, 1997 |
| 0418935 | West Cameron Area | 171 | 1997 | Natural Gas Processing Agreement (as described in Exhibits A&B of Assignment and Bill of Sale attached to Assignment of Record Title Interest from Chevron USA to Hunt Petroleum Corporation, et al) | March 1, 2002 | Chevron U.S.A. Inc., et al | Targa Midstream Services, Limited Partnership | Dedication of Chevron interest |

**EXHIBIT A-1**

-12-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| Pending | West Cameron Area | 171 | 1997 | Assignment and Bill of Sale | October 4, 2010 | XH, LLC, et al | Conn Energy, Inc., et al | Attached as Exhibit "A" to MMS-150 Assignment of Record Title Interest pending BOEMRE approval - executed pursuant to Notice of Surrender dated September 4, 2010 |
| | | | | | | | | |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Agreement for the Construction and Operation of the Yscloskey Processing Plant | July 30, 1968 | Shell Oil Company | Getty Oil Company, et al | C&O Agreement |

**EXHIBIT A-1**                    -13-

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Hydrocarbon Fractionation Agreement | July 30, 1968 | Shell Oil Company | Getty Oil Company, et al | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Hydrocarbon Fractionation Agreement | May 1, 1969 | Shell Oil Company | Getty Oil Company, et al | |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Agreement of Settlement And Compromise | August 2, 2002 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Construction and Operating Agreement | April 1, 2003 | Dynegy Midstream Services, Limited Partnership | Anadarko E&P Company LP | |

**EXHIBIT A-1**

-15-

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amended and Restated Straddle and Processing Agreement | April 1, 2003 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Agreement of Settlement And Compromise | April 1, 2003 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Second Amendment to Hydrocarbon Fractionation Agreement | August 1, 2003 | Enterprise Gas Processing, LLC | Apache Corporation, et al | |

**EXHIBIT A-1**

-17-

**EXHIBIT A-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN HHE ENERGY COMPANY**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

<u>**DESCRIPTION OF WELLS**</u>

**MAIN PASS BLOCK 94**
**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP94 #5 | #5 | MAIN PASS 094 | Offshore Louisiana | 177254081800S01 | W&T OFFSHORE, INC. | 401786 | PDP | GAS |
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP 94 #4ST | #4ST | MAIN PASS 094 | Offshore Louisiana | 177254072400S01 | W&T OFFSHORE, INC. | 401785 | PDP | GAS |

**MAIN PASS BLOCK 101/106**

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-01 | B-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254074600S01 | XTO OFFSHORE INC. | 401801 | PDP | GAS |

**EXHIBIT A-2**                                                                -18-

| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-02 | B-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254075100S01 | XTO OFFSHORE INC. | 401802 | PDP | GAS |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-01 | D-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076000S01 | XTO OFFSHORE INC. | 401948 | TA | OIL |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-02 | D-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076100S02 | XTO OFFSHORE INC. | 401949 | PDP | GAS |
| MP101D | OCS-G-23967 MP106 | OCS-G-23967 MP106 D-03ST1 | D-03ST1 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077101S01 | XTO OFFSHORE INC. | 401950 | PDP | GAS |
| MP101D | OCS-G-03798 MP102 | OCS-G-03798 MP102 D-04A | D-04A | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077400S02 | XTO OFFSHORE INC. | 401837 | TA | GAS |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-05 | D-05 | MAIN PASS 93 | OFFSHORE LOUISIANA | 177254078000S01 | XTO OFFSHORE INC. | 401803 | PDP | OIL |
| MP101E (#6) | OCS-G-22792 MP101 | OCS-G-22792 MP101 E-01 (#6) | E-01 (#6) | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254079000D03 | XTO OFFSHORE INC. | 401834 | PDP | GAS |

**EXHIBIT A-2**

-19-

**MAIN PASS BLOCK 101**

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP101B | OCS-G 22792 MP101 | OCS-G 22792 MP101B3 | B3 | MAIN PASS 101 | Offshore Louisiana | 177254081000S01 | CENTURY EXPLORATION NEW ORLEANS, INC. | 401946 | PDP | GAS |

**MAIN PASS BLOCK 109**

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP109C | OCS-G-22794 MP109 | OCS-G-22794 MP109 C-1 | C-01 | MAIN PASS 109 | Offshore Louisiana | 177254076700S03 | W&T OFFSHORE, INC. | 401952 | SI | GAS |
| MP109D | OCS-G-22794 MP109 | OCS-G-22794 MP109 D-01ST00BP02 | D-01ST00BP02 | MAIN PASS 109 | Offshore Louisiana | 177254076802S02 | W&T OFFSHORE, INC. | 401953 | PDP | GAS |

**SOUTH MARSH ISLAND BLOCK 40/41**
**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01 | B-01 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074083600D01 | XTO OFFSHORE INC. | 401787 | SI | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01D | B-01D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074083600D02 | XTO OFFSHORE INC. | 401788 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-02ST | B-02ST | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074084901S01 | XTO OFFSHORE INC. | 401868 | PDP | OIL |

**EXHIBIT A-2**

-20-

| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-03 | B-03 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085300S01 | XTO OFFSHORE INC. | 401763 | PDP | OIL |
|--------|--------|--------|------|--------|--------|--------|--------|--------|-----|-----|
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04 | B-04 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085400D01 | XTO OFFSHORE INC. | 401887 | SI | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04D | B-04D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085400D02 | XTO OFFSHORE INC. | 401888 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04E | B-04E | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085400D03 | XTO OFFSHORE INC. | 401764 | PDP | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-05 | B-05 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085700D01 | XTO OFFSHORE INC. | 401865 | SI | GAS |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-05D | B-05D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085700D02 | XTO OFFSHORE INC. | 401889 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-06 | B-06 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074087600S01 | XTO OFFSHORE INC. | 401766 | PDP | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-07 | B-07 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089800D01 | XTO OFFSHORE INC. | 402019 | PDP | GAS |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-07D | B-07D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089800D02 | XTO OFFSHORE INC. | 402967 | PDP | GAS |
| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02 | C-02 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089500D01 | XTO OFFSHORE INC. | 402020 | PDP | GAS |

**EXHIBIT A-2**

-21-

| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02D | C-02D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089500D02 | XTO OFFSHORE INC. | 402608 | PDP | GAS |
| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 01ST2 | JA-01ST2 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074063600S02 | XTO OFFSHORE INC. | 402021 | SI | GAS |
| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 02BP01 | JA-02 BP01 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074069100S01 | XTO OFFSHORE INC. | 401866 | SI | GAS |

**SOUTH PASS BLOCK 42/43**
**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| | OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-01 | A-01 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404580000 | XTO OFFSHORE INC. | 401799 | IPDP | OIL |
| | OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-02 | A-02 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404590000 | XTO OFFSHORE INC. | 401800 | IPDP | GAS |
| | SL 3011 | SL 3011 #001 SWD | #001 SWD | SOUTH PASS 42 | OFFSHORE LOUISIANA | 17721007480000 | XTO OFFSHORE INC. | 703024* | Active | SWD |

* Burrwood Central Facility

**EXHIBIT A-2**

**SHIP SHOAL BLOCK 79/80**
**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SS079A | OCS-G-15277 SS 79 | OCS G-15277 SS 79 A-02 | A-02 | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D 03 | XTO OFFSHORE INC. | 401789 | | PDP | OIL |
| SS079A | OCS-G-15277 SS 79 | OCS G-15277 SS 79 A-02D | A-02D | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D 02 | XTO OFFSHORE INC. | 401893 | | PDP | OIL |

**WEST CAMERON BLOCK 171**

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WC171A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-01BP1 | A-01BP1 | WEST CAMERON 146 | Offshore Louisiana | 177004000600D0 1 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-02C | A-02C | WEST CAMERON 146 | Offshore Louisiana | 17700400510 0S0 3 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-3 | A-3 | WEST CAMERON 146 | Offshore Louisiana | 17700400520 0S0 1 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS-G-01997 WC 171 | OCS-G-01997 WC 171 A-03ST | A-03ST | WEST CAMERON 146 | Offshore Louisiana | 17700400520 1S0 5 | CONN ENERGY | 402111 | | PDP | GAS |

**EXHIBIT A-2**

-23-

| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-04D | A-04D | WEST CAMERON 146 | Offshore Louisiana | 177004006000D02 | CONN ENERGY | | SI | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-05ST | A-05ST | WEST CAMERON 146 | Offshore Louisiana | 177004006901S01 | CONN ENERGY | 402112 | SI | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-6 | A-6 | WEST CAMERON 146 | Offshore Louisiana | 177004007000S03 | CONN ENERGY | | SI | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-07C | A-07C | WEST CAMERON 146 | Offshore Louisiana | 177004007100S03 | CONN ENERGY | 402113 | TA | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-08 | A-08 | WEST CAMERON 146 | Offshore Louisiana | 177004007400S02 | CONN ENERGY | | SI | |
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-09 | A-09 | WEST CAMERON 146 | Offshore Louisiana | 177004007801S01 | CONN ENERGY | 402670 | TA | |
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-10D | A-10D | WEST CAMERON 146 | Offshore Louisiana | 177004007900D02 | CONN ENERGY | | SI | |
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-12D | A-12D | WEST CAMERON 146 | Offshore Louisiana | 177004008800D02 | CONN ENERGY | | SI | GAS |
| | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 B-7 | B-7 | WEST CAMERON 146 | Offshore Louisiana | 177004009900 | CONN ENERGY | | ST | GAS |

**EXHIBIT B**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN  HHE ENERGY COMPANY**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**


THIS PAGE LEFT INTENTIONALLY BLANK

**EXHIBIT B-1**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN  HHE ENERGY COMPANY**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

## DESCRIPTION OF RIGHTS-OF-WAY

THIS PAGE LEFT INTENTIONALLY BLANK

**EXHIBIT B-1**                           -26-

# EXHIBIT B-2
## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## ASSIGNMENT AND BILL OF SALE
## DATED EFFECTIVE AS OF AUGUST 1, 2011,
## BETWEEN HHE ENERGY COMPANY
## AND DYNAMIC OFFSHORE RESOURCES, LLC

### DESCRIPTION OF PIPELINES

| Segment Number | Originating Area/Block | Originating Lease | Destination Area/Block | Destination Lease | Status | Segment Length | Size |
|---|---|---|---|---|---|---|---|
| 14138 | MP101 | G22792 | MP101 | G22792 | Active | 4546 | 6 5/8" |
| 14821 | MP101 | G22792 | MP101 | G22792 | Active | 5194 | 4" |
| 14822 | MP101 | G22792 | MP101 | G22792 | Out of Service | 5197 | 4" |
| 14315 | MP101 | G22792 | MP101 | G22792 | Active | 8745 | 8 5/8" |
| 14292 | SM40 | G13607 | SM40 | G13607 | Active | 5584 | 6 5/8" |
| 14293 | SM40 | G13607 | SM40 | G13607 | Active | 6015 | 6 5/8" |
| 14294 | SM40 | G13607 | SM40 | G13607 | Active | 6017 | 6 5/8" |
| 14295 | SM40 | G13607 | SM40 | G13607 | Active | 6020 | 2 1/2" OR 2 7/8" |

**EXHIBIT B-3**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN HHE ENERGY COMPANY**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

## DESCRIPTION OF PLATFORMS

| XTO # | PLATFORM NAME | OPERATOR | STATE |
|---|---|---|---|
| 703355 | PLATFORM MP 101 06 | XTO OFFSHORE INC. | LA |
| 703332 | PLATFORM MP 101 B | XTO OFFSHORE INC. | LA |
| 703333 | PLATFORM MP 101 D | XTO OFFSHORE INC. | LA |
| 703436 | PLATFORM MP 109 C | W & T OFFSHORE INC | LA |
| 703437 | PLATFORM MP 109 D | W & T OFFSHORE INC | LA |
| N/A | PLATFORM MP 94 4 | W & T OFFSHORE INC | LA |
| 703362 | PLATFORM SMI 040 B | XTO OFFSHORE INC. | LA |
| 703347 | PLATFORM SMI 040 JA | XTO OFFSHORE INC. | LA |
| 703128 | PLATFORM SP 42A | XTO OFFSHORE INC. | LA |
| 703339 | PLATFORM SS 079 A | XTO OFFSHORE INC. | LA |
| 703370 | PLATFORM SS 080 A | XTO OFFSHORE INC. | LA |
| N/A | PLATFORM WC 171 A | CONN ENERGY INC. | LA |
| N/A | PLATFORM WC 171 A - AUX 1 | CONN ENERGY INC. | LA |
| N/A | PLATFORM WC 171 A - AUX 2 | CONN ENERGY INC. | LA |

**EXHIBIT B-3**

## ASSIGNMENT AND BILL OF SALE

This Assignment and Bill of Sale ("Assignment") is effective as of August 1, 2011, at 7:00 a.m. Central Time ("Effective Time"), and is from HHE ENERGY COMPANY, a Delaware corporation with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 ("HHE"), to DYNAMIC OFFSHORE RESOURCES, LLC, a Delaware limited liability company, with an address of 1301 McKinney, Suite 900, Houston, Texas 77010 ("Assignee"). HHE and Assignee may each be referred to hereafter as a "Party", or collectively referred to as the "Parties".

### ARTICLE 1.

1.01.     Assignment.  For $10 and other good and valuable consideration, the receipt and sufficiency of which HHE acknowledges, HHE bargains, sells, assigns, and conveys to Assignee and its successors and assigns, all of HHE's right, title, and interest in and to the following real and personal properties (collectively, "Properties"), subject to the terms of this Assignment, including its exhibits, and all applicable instruments of record in the county/counties/parish/parishes where the Properties are located:

(a)     The oil and gas leasehold estates and other interests, *insofar but only insofar* as set out on Exhibit A and Exhibit A-1, together with HHE's interest in each well located on the leases, units and land described on Exhibit A and Exhibit A-1, including, without limitation, the wells described on Exhibit A-2 (collectively, "Interests");

**HHE EXCEPTS FROM THIS ASSIGNMENT THE EXCLUSIONS PROVIDED IN SECTION 1.02 OF THIS ASSIGNMENT AND MAKES SUCH ASSIGNMENT SUBJECT TO ANY CONVEYANCE OR AGREEMENT, WHETHER RECORDED OR NOT, THAT PERTAINS TO THE INTERESTS AND WHICH WAS EXECUTED OR EFFECTIVE BEFORE THE EXECUTION OF THIS ASSIGNMENT.**

(b)     All contracts affecting the Interests, to the extent each is assignable, including agreements for the sale or purchase of oil, gas, and other hydrocarbons; processing agreements; division orders; unit agreements; operating agreements; and other contracts and agreements arising out of, connected with, or attributable to production from the Interests, including the items listed on Exhibit A-1;

**HHE EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL RIGHT, TITLE, AND INTEREST IN THESE CONTRACTS INSOFAR AS THEY PERTAIN TO ANY INTEREST NOT ASSIGNED IN THIS ASSIGNMENT.**

(c)     All personal property, including material, equipment, pipelines, platforms and facilities situated in and on the Properties and used solely in connection with the use or operation of the Interests for the production, treating, storing, transporting, and marketing of oil, gas, and other hydrocarbons from the Interests, including the items listed on Exhibit B-2 and Exhibit B-3;

**HHE Excepts From This Assignment And Reserves To Itself All Personal Property, Wells, Fixtures, Pipelines, And Equipment Used In HHE's Operation Of Any Lease, Well, Or Mineral Interest Not Assigned In This Assignment.**

(d) All easements, permits, licenses, surface and subsurface leases, rights-of-way, servitudes, and other surface and subsurface rights affecting the Interests, to the extent each is assignable, including the items listed on Exhibit B and Exhibit B-1; and

(e) Copies of the data and records relating to the Properties and Interests that have been or will be delivered by HHE to Assignee as provided for in the Purchase and Sale Agreement defined hereafter ("Documents").

1.02. <u>Exclusions</u>. The following are excluded from this Assignment:

(a) reservations, exceptions and exclusions listed in Exhibits A, B and B-1;

(b) pipelines, fixtures, equipment, and interests owned by third parties such as lessors, purchasers, or transporters of Oil or gas;

(c) computer equipment (including Rosemont transmitters), telecommunications equipment, vehicles, boats, tools, pulling machines, and other equipment and material temporarily located on the Property or expressly excluded from the sale;

(d) items specifically excluded in written information or correspondence provided to Assignee before the Execution Date;

(e) any gas processing plant not listed on Exhibit A and Exhibit A-1;

(f) personal property, fixtures, equipment, pipelines, facilities, and buildings located on the Property, but currently in use in connection with the ownership or operation of other property not included in the Interests;

(g) Unless otherwise described on Exhibit A, if HHE is a party to a joint operating agreement that affects an Interest, this Agreement is limited as to that Interest to the depths subject to the joint operating agreement (e.g., total depth, total depth plus 100 feet, base of formation penetrated by initial test well), but excludes depths previously conveyed and all depths not subject to a joint operating agreement; and

(h) If HHE owns unleased mineral interests purportedly within the Interests, those mineral interests are not included in the term "Interests" and will not be conveyed to HHE.

(i) [Intentionally Left Blank].

(j)      Responsibility and liability for the proper payment of royalties to any governmental entity with respect to production attributable to the Interests prior to the Effective Time in the event prior payments to such governmental entity were improperly calculated.

(k)      The Reserved Overriding Royalty Interest as defined in Section 1.08.

1.03.      <u>Restrictions on Use</u>. Where any of the Interests include a fee simple interest in real property that has been used for oil, gas, or other mineral operations, the following uses of the affected land, or any portion thereof, are expressly prohibited and forbidden:

(a)      any hotel use;

(b)      any purpose that would constitute a "Permitted Use" under any of the residential zones, districts, or classifications set forth in any applicable municipal, county/parish or state zoning laws in effect at the Effective Time,

(c)      any other residential use;

(d)      any health care, clinic, hospital or other medical facility;

(e)      any playground, recreational park, day nursery, day-care center, child care center, nursing home, house of worship, or school;

(f)      any agricultural use;

(g)      construction or installation of any basements; or

(h)      any water wells for irrigation or drinking purposes.

1.04.      <u>Documents</u>. If originals or the last-remaining copies of the Documents have been provided to Assignee, HHE may have access to them at reasonable times and upon reasonable notice during regular business hours for as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or a longer period if required by law or governmental regulation). HHE may, during this period and at its expense, make copies of the Documents pursuant to a reasonable request. Without limiting the generality of the two preceding sentences, for a period as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or for a longer period if required by law or governmental regulation), Assignee may not destroy or give up possession of any original or last-remaining copy of the Documents without first offering HHE the opportunity, at HHE's expense, to obtain the original or a copy. After this period expires, Assignee must offer to deliver the Documents (or copies) to HHE, at HHE's expense, before giving up possession or destroying them.

1.05.      <u>Reservations</u>. To the extent that HHE has reserved or continues to own an interest (excluding overriding-royalty interests but including, if any, mineral-fee, leasehold interests, deep rights or facilities, equipment, or pipelines) after the Effective Time for which

HHE requires access across the land associated with the Interests in order to exercise its rights, HHE reserves concurrent interests in all applicable easements, rights-of-way, contracts, and other rights relating to the reserved interests and necessary as reasonably required for exploring, drilling, producing, storing, or marketing oil, gas, and other hydrocarbons from the respective zones or interests of the Parties, including rights to lay pipelines, water lines, and power lines; dig pits; erect structures; and perform any other act reasonably necessary to HHE's interests. Additionally, HHE reserves and retains a preferential right to purchase all Oil produced and saved from the Interests, pursuant to and in accordance with the terms and provisions of the Purchase and Sale Agreement defined hereafter. The term "Oil" as used herein means crude oil, distillate, drip gasoline, condensate, and other liquid hydrocarbons.

1.06.    Surrender or Abandonment of Interests.  If Assignee decides to surrender or abandon any of the Interests after execution of this Assignment, Assignee must give HHE written notice of its intent at least 45 days before surrender or abandonment if HHE:

(a)    has retained an interest in such Interests;

(b)    has other interests for which HHE requires access across such Interests or Property in order to exercise its rights; or

(c)    has other interests that are held by production from such Interests.  HHE will have 30 days after receipt of Assignee's notice to notify Assignee that it elects to require Assignee to reassign all or any part of such Interests. Reassignment will be in the manner described in Section 1.07.

1.07.    Reassignment.  For reassignment of any Interest under this Assignment, Assignee will execute and deliver to HHE a reassignment by special warranty, in a form satisfactory to HHE and sufficient to place HHE in the same position it occupied before the assignment to Assignee.  Assignee's release and discharge of HHE and its Associated Parties, its covenant not to sue HHE or its Associated Parties, and its obligations to indemnify, defend, and hold HHE and its Associated Parties harmless will apply to Interests that are reassigned for the period of Assignee's ownership, and the reassignment instrument will restate Assignee's obligations.

1.08.    Reserved Overriding Royalty.  HHE reserves from the leasehold interest applicable to each of the oil and gas leases described on Exhibit A (collectively, the "Leases", individually a "Lease"), an overriding royalty interest interest equal to five percent of eight-eighths (5% of 8/8) as to production from any New Wells, as defined hereafter (the "Overriding Royalty Interest").  "New Wells", for the purposes of this Assignment is defined as any wells drilled on the Leases from and after the date of execution of this Assignment (the "Execution Date"), together with any sidetrack or deepening after the Execution Date of an existing well on the Leases, to the extent and only to the extent that said sidetrack bottom hole is located 1,000 feet or greater from the bottom hole location of such existing wells; provided, however, such 1,000 foot restriction does not apply to the sidetracks identified in that certain Letter between HHE and Assignee, dated July 29, 2011.  New Wells shall not include any recompletions, workovers, or mechanical bypasses of an existing well.  The Overriding Royalty Interest shall be paid or delivered by Assignee to HHE in accordance with the following terms and conditions:

(a)     On oil, delivery of such oil shall be made free of all costs and expenses in developing and operating the Interests, free of all costs of production and unencumbered in any way to HHE's credit into the pipelines or tanks to which the applicable well or wells may be connected, or otherwise as HHE may from time to time direct. Should HHE elect not to take its Overriding Royalty Interest on oil in kind, then HHE's part of such oil shall be paid based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser of such oil at the applicable well or wells, free of all costs and expenses in of developing and operating the Interests, free of all costs of production and unencumbered in any way.

(b)     On all gas, including casinghead gas or other gaseous substances and liquid constituents of said gas, produced from and sold (on or off the Interests) or used off the Interests, or for the extraction of gasoline or other products therefrom, the Overriding Royalty Interest shall be based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser at the well or wells of gas so produced, sold or utilized, free of all costs of developing and operating the Interests, free of all costs of production.

Payment by Assignee of the Overriding Royalty Interest must be made from the Execution Date and at all times thereafter on the basis of one hundred percent (100%) of the New Well's production (proportionately reduced as hereafter provided), and such payment must be made regardless of (a) whether Assignee is or is not banking or storing gas, whether pursuant to the provisions of an agreement so permitting, or otherwise; (b) whether Assignee is or is not selling all or any part of its share of the total production; and (c) the identity of the purchaser or purchasers of such gas if Assignee should be selling all or any part of the total gas produced. The Overriding Royalty Interest shall be delivered to HHE free of all cost and expense of developing and operating the Leases and free and clear of all taxes except gross production, severance taxes, and ad valorem taxes applicable thereto; provided that, the Overriding Royalty Interest will be subject to and bear a proportionate share of all reasonable costs and expenses of a non-affiliated third party incurred for the transportation, compression, dehydration and treating of the said gas and condensate in the preparation for marketing of such production. Such payments shall be made on or before the sixtieth (60th) day following the month of the production. If payment is not made within the time prescribed, the unpaid amount will bear interest at the rate of one percent (1%) for each month or fraction of a month, by which payment is delayed, or the maximum lawful rate, whichever is less. Assignee agrees to send all division orders covering the Overriding Royalty Interest reserved by to HHE at the following address:

XTO Energy Inc.
P.O. Box 730586
Dallas, Texas 75373-0586

If the Leases cover less than a full interest in the land covered thereby or if the interest assigned hereunder in said Leases is less than a full interest, then the Overriding Royalty Interest herein reserved shall be reduced in the proportion that the interest assigned to Assignee herein

bears to the full interest in the land covered or bears to the full interest in the Leases assigned hereunder; provided, however, that the overriding royalties herein reserved are exclusive of and in addition to any royalties, overriding royalties or payments out of production affecting the Leases as of the Effective Time. It is expressly agreed that operations, if any, on the Leases and the extension and duration thereof, as well as the preservation of the Leases by rental payments or otherwise, shall be solely at the will and discretion of Assignee or any successor owner of the working interest in the Leases. The Overriding Royalty Interest hereby reserved is subject to the rights conferred on the lessees (now Assignee) by said Leases to pool or unitize the lands covered thereby; and neither the joinder nor consent by HHE shall be required in connection with any such pooling or unitization. Where oil and/or gas is produced from any unit so formed, HHE shall receive on production from such unit only such portion of the overriding royalty stipulated herein, as the amount of surface acreage of the land affected by such overriding royalty and placed in said unit bears to the total surface acreage included in the unit, unless some other formula for appointment of production is adopted for the unit and in such case the formula shall be used.

HHE upon notice in writing to Assignee, shall have the right to audit Assignee's accounts and records relating to the Overriding Royalty Interest reserved herein and any other records related to the determination of the amounts due HHE for any calendar year within the twenty-four (24) month period following the end of such calendar year.

The Overriding Royalty Interest is expressly subject to the terms and provisions of any of the Related Agreements, to the extent and only to the extent that such terms and provisions contractually apply to and prohibit the establishment of an overriding royalty interest affecting any of the Leases. If pursuant to the terms of any Related Agreement all or a portion of Assignee's interest in a Lease, or all or a portion of its interest in the production therefrom, is forfeited or assigned to one or more other working interest owners, either permanently or for a stipulated period, because Assignee fails to participate in any operation or operations, then to the extent that such forfeited or assigned interest is subject to and burdened by the Overriding Royalty Interest, the working interest so assigned or forfeited by Assignee shall be free and clear of such Overriding Royalty Interest for the period of such forfeiture or assignment of overriding royalty interests. The Overriding Royalty Interest will become effective again when the interest is reassigned or reverts back to Assignee, and Assignee shall pay such Overriding Royalty Interest as provided in this Section 1.08. Further, to the extent any Related Agreement establishes security rights in favor of the parties thereto, the Overriding Royalty Interest conveyed herein shall be subordinated to such security rights. For the purposes of this Assignment, "Related Agreements" shall mean all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements concerning or pertaining to the Interests, to the extent that they are binding on HHE or its successors or assigns.

It is understood and agreed that the Overriding Royalty Interests reserved herein, will be a permanent burden on the Leases subject to the provisions of this Section 1.08, and will continue in effect as to each Lease for so long as each Lease remains in effect. In addition in the event Assignee secures a renewal or extension for any such Leases, covering all or any part of

the land previously covered thereby, then the interests reserved herein will apply to such renewed or extended Lease. A "renewal" or "extension" of a Lease as those terms are used therein shall mean any Lease or Leases covering all or a part of the land covered by the Leases that is executed by Assignee within twelve (12) months after termination of any Lease, or the next ensuing Federal or state lease sale pertaining to all or any part of the land previously covered by a Lease, whichever may come first.

1.09. <u>Governmental Transfers.</u> Where separate transfers of any of the Properties have been, or will be, executed for filing with and approval by applicable governmental authorities, any such separate transfer (a) shall not constitute an additional assignment or conveyance of the affected Properties, (b) shall not constitute an additional reservation of the Overriding Royalty Interest provided for in this Assignment and (c) shall not modify any of the terms, covenants and conditions, or limitations on warranties, set forth in this Assignment, and are not intended to create and shall not create any representations, warranties or additional covenants of or by either of the parties to this Assignment.

## ARTICLE 2.

Ad valorem taxes assessed against the Properties for the year of the Effective Time are apportioned between HHE and Assignee as of the Effective Time.

## ARTICLE 3.

Assignee will comply with all rules, regulations, statutes, and laws applicable to Assignee's ownership or operation of the Properties. Except to the extent specifically excepted or reserved by HHE in this Assignment or in the Purchase and Sale Agreement (as defined hereafter), Assignee accepts this Assignment and assumes all HHE's obligations and liabilities under all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements (including compliance with express and implied covenants and payment of costs, rentals, shut-in-payments, minimum royalties, and production royalties), to the extent that these obligations and liabilities concern or pertain to the Properties and are binding on HHE or its successors or assigns. Assignee's obligations under this article apply to all applicable instruments, whether recorded or not.

## ARTICLE 4.

Assignee acknowledges that the Interests and Properties have been used for exploration, development, and production of oil and gas and that there may be petroleum, produced water, wastes, or other materials located on or under the Properties or associated with the Interests. Equipment and sites included in the Interests or Properties may contain asbestos, hazardous substances, or naturally occurring radioactive material ("NORM"). NORM may affix or attach itself to the inside of wells, materials, and equipment as scale, or in other forms; the wells, materials, and equipment located on the Properties or included in the Interests may contain NORM and other wastes or hazardous substances; and NORM-containing material and other wastes or hazardous substances may have been buried, come in contact with the soil, or

otherwise been disposed of on the Properties. Special procedures may be required for the remediation, removal, transportation, or disposal of wastes, asbestos, hazardous substances, and NORM from the Interests and Properties.

Assignee will store, handle, transport, and dispose of or discharge all material, substances, and wastes from the Properties (including produced water, drilling fluids, NORM, and other wastes), whether present before or after the Effective Time, in accordance with applicable local, state, and federal laws and regulations. Assignee will keep records of the types, amounts, and location of materials, substances, and wastes that are stored, transported, handled, discharged, released, or disposed of onsite and offsite. When any lease terminates, an interest in which has been assigned under this Assignment, Assignee will take additional testing, assessment, closure, reporting, and remedial action with respect to the Properties as is necessary to satisfy all local, state, and federal requirements directed in effect at that time and necessary to restore the Properties.

## ARTICLE 5.

Assignee recognizes, and will either perform or assure that performance is accomplished properly and in accordance with applicable law and the obligations and liabilities described in Article 3, all obligations to abandon, restore, and remediate the Properties and the Interests, whether arising before or after the Effective Time, including obligations, as applicable, to:

  a) obtain plugging exceptions in the operator's name for each well located on the Properties (abandoned and unabandoned) with a current plugging exception or permanently plug and abandon each well;
  b) plug, abandon, and if necessary, reabandon each well located on the Properties (abandoned and unabandoned);
  c) remove all equipment and facilities, including flowlines, pipelines and platforms;
  d) close all pits; and
  e) restore the surface, subsurface, and offshore sites associated with the Interests and Properties.

Assignee will take all necessary steps to ensure that Assignee is recognized as the owner and, if applicable, operator of the Properties by all appropriate parties, including any regulatory commission, body or board with jurisdiction. If HHE is the principal on any financial assurance (including a bond) relating to the Properties, which financial assurance is required by any law, rule, or regulation, then Assignee will secure new financial assurance in the required amount and supply it to the regulatory body requiring the financial assurance, to the end that HHE's financial assurance is released and discharged.

Assignee will pay all costs and expenses associated with the obligations assumed under this article. HHE may require Assignee to maintain a performance bond in an amount, in a form, and from an institution acceptable to HHE, to guarantee Assignee's obligations, all as provided for in the Purchase and Sale Agreement as defined hereafter.

## ARTICLE 6.

HHE MAKES NO WARRANTY OF ANY TYPE IN THIS ASSIGNMENT, WHETHER EXPRESS, STATUTORY, OR IMPLIED. ASSIGNEE HAS INSPECTED AND HAS SATISFIED ITSELF AS TO THE CONDITION OF THE PROPERTIES. THIS ASSIGNMENT IS MADE BY HHE AND ACCEPTED BY ASSIGNEE ON AN "AS IS, WHERE IS" BASIS. HHE DISCLAIMS ALL WARRANTIES, INCLUDING:

(a)   AS TO THE FITNESS OR CONDITION OR MERCHANTABILITY OF THE MATERIALS, EQUIPMENT, OR FACILITIES CONVEYED;

(b)   AS TO THE PHYSICAL, OPERATIONAL, OR ENVIRONMENTAL CONDITION OF THE PROPERTIES;

(c)   AS TO THE OIL, GAS, AND OTHER HYDROCARBON OPERATIONS OF THE PROPERTIES COVERED BY THE TERMS AND CONDITIONS OF ANY LEASES OR OTHER AGREEMENTS THAT ARE A PART OF THE PROPERTIES;

(d)   AS TO THE ISSUANCE, REISSUANCE, OR TRANSFER OF ANY PERMITS RELATING TO ANY OF THE PROPERTIES;

(e)   AS TO ANY CONSENT OR APPROVAL REQUIRED UNDER ANY INSTRUMENT DESCRIBED IN ARTICLE III; AND

(f)   AS TO TITLE, EITHER EXPRESS, IMPLIED, OR STATUTORY.

## ARTICLE 7.

The terms "Claim" or "Claims" mean, collectively, claims, demands, causes of action, and lawsuits asserted or filed by any person, including an artificial or natural person, a local, state, or federal governmental entity; a person holding rights under any instrument described in Article 3; an Associated Party of HHE or Assignee; or a third party. The term "Liability" or "Liabilities" means, collectively, all damages (including consequential and punitive damages), including those for personal injury, death, or damage to personal or real property (both surface and subsurface) and costs for remediation, restoration, or clean up of contamination, whether the injury, death, or damage occurred or occurs on or off the Properties by migration, disposal, or otherwise; losses; fines; penalties; expenses; costs to remove or modify facilities on or under the Properties; plugging liabilities for all wells; attorneys' fees; court and other costs incurred in defending a Claim; liens; and judgments; in each instance, whether these damages and other costs are known or unknown, foreseeable or unforeseeable on the Effective Time. The term "Associated Parties" means successors, assigns, directors, officers, employees, agents, contractors, subcontractors, and affiliates.

Assignee releases and discharges HHE and its Associated Parties from each Claim and Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S RELEASE AND DISCHARGE OF HHE AND ITS ASSOCIATED PARTIES INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT,

CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF HHE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY, and this release and discharge are binding on Assignee and its successors and assigns The only exception to Assignee's release and discharge of HHE and its Associated Parties is that (a) Assignee does not release Claims against contractors and subcontractors for work regarding the Interests and Properties, and (b) Assignee does not release or discharge Claims that HHE breached the Purchase and Sale Agreement as defined hereafter.

Assignee covenants not to sue HHE or its Associated Parties with regard to any Claim or Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S COVENANT NOT TO SUE HHE OR ITS ASSOCIATED PARTIES INCLUDES CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF HHE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLIES REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY, and this covenant is binding on Assignee and its successors and assigns. The only exception to Assignee's covenant not to sue HHE or its Associated Parties is that Assignee does not covenant not to sue contractors and subcontractors for work regarding the Interests and Properties.

Assignee will indemnify, defend, and hold HHE and its Associated Parties harmless from each Claim or Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S OBLIGATIONS TO INDEMNIFY, DEFEND, AND HOLD HHE AND ITS ASSOCIATED PARTIES HARMLESS INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF HHE OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY. The only exception to Assignee's obligations to indemnify, defend, and hold HHE and its Associated Parties harmless is (a) a judgment rendered or settlement reached in a lawsuit filed before the Effective Time, but only to the extent that the acts or omissions that gave rise to the cause of action are attributable to the conduct or operations or ownership of HHE or its Associated Parties before the Effective Time and (b) a Claim that HHE breached the Purchase and Sale Agreement defined hereafter. Assignee's obligations are binding on Assignee and its successors and assigns.

Assignee's duty to release, discharge, not to sue, indemnify, defend, and hold HHE and its Associated Parties harmless includes Claims or Liabilities arising in any manner from the physical or environmental condition of the Interests and Properties, including Claims or Liabilities under applicable laws and regulations now enacted or that may be enacted in the future, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time.

# ARTICLE 8.

Assignee represents that it has acquired the Properties for its own benefit and account and has not acquired the Properties with the intent of distributing fractional undivided interests in them or otherwise selling them in a manner that would be subject to regulation by federal or state securities laws. If Assignee sells, transfers, or otherwise disposes of the Properties or fractional undivided interests in them in the future, it will do so in compliance with applicable federal and state laws.

This Assignment is subject to the terms of the Purchase and Sale Agreement between HHE, among others, and Assignee concerning the Properties, dated effective as of August 1, 2011 (the "Purchase and Sale Agreement"). In the event of a conflict or inconsistency between the terms and provisions of this Assignment and those set forth in the Purchase and Sale Agreement, the terms and provisions in the Purchase and Sale Agreement shall control. The Purchase and Sale Agreement provides, in part, that the Parties will correct errors that may have been made in the conveyancing instruments; that HHE may require that all or a part of the Properties be reassigned under certain circumstances; and that disputes concerning the Properties or the transaction will be resolved by alternate dispute resolution, to the extent, if any, that Assignee has not released, discharged, or covenanted not to sue HHE or its Associated Parties.

HHE, upon notice in writing to Assignee, shall have the right to access the Assignee's offices, facilities, work sites, warehouses, books, records, correspondence, instructions, plans, drawings, receipts, vouchers, financial accounts, data stored in computer files or microfiche and personnel to audit Assignee's accounts and records relating to the retained royalty interest, including any hedge agreements, facilities used for the measurement of production from the properties, for any calendar year within the twenty-four (24) month period following the end of such calendar year. The same audit rights are to extend to subcontractors. HHE shall maintain supporting data and accounting records consistent with generally accepted accounting principles, and the employees and agents of company shall have the right to reproduce and retain for the purpose of audit, any of these documents. HHE shall not be liable for any of Assignee's contractor's or subcontractor's costs resulting from an audit hereunder.

The provisions of this Assignment are severable. If a court of competent jurisdiction finds any part of this Assignment to be void, invalid, or otherwise unenforceable (except for the release, waiver, defense, and indemnity provisions), this holding will not affect other portions that can be given effect without the invalid or void portion.

All covenants and agreements in this Assignment (except Article 8) bind and inure to the benefit of the heirs, successors, and assigns of HHE and Assignee; are covenants running with the land; and are effective as stated, whether or not the covenants and agreements are memorialized in assignments and other conveyances executed and delivered by the Parties and their respective heirs, successors, and assigns from time to time.

Recitation of or reference to any agreement or other instrument in this Assignment, including its exhibits, does not operate to ratify, confirm, revise, or reinstate the agreement or instrument if it has previously lapsed or expired.

This Assignment and its performance will be construed in accordance with, and governed by, the internal laws of the State of Texas, without regard to the choice of law rules of any jurisdiction, including Texas.

The word includes and its syntactical variants mean "includes, but not limited to" and its corresponding syntactical variants. The rule of *ejusdem generis* may not be invoked to restrict or limit the scope of the general term or phrase followed or preceded by an enumeration of particular examples.

All exhibits referenced in and attached to this Assignment are incorporated into it.

[Intentionally Left Blank]

This instrument may be executed in counterparts, all of which together will be considered one instrument.

Executed in the presence of the undersigned witnesses on the dates indicated below, but effective as of the Effective Time.

**WITNESSES:**

_____
Print or Type Name: James F. Wiggins

_____
Print or Type Name: Clyde Vanderbrouk

**HHE Energy Company**

BY: _____

NAME: James L. Death

TITLE: Attorney-in-Fact

DATE: August 31, 2011

_____
Print or Type Name: James F. Wiggins

_____
Print or Type Name: Clyde Vanderbrouk

**HHE Energy Company**

BY: _____

NAME: Christopher N. Claeys

TITLE: Attorney-in-Fact

DATE: August 31, 2011

_____
Print or Type Name: John H. Smith

_____
Print or Type Name: Lambert M. Laperouse

**Dynamic Offshore Resources, LLC**

BY: _____

NAME: G.M. McCarroll

TITLE: President and Chief Executive Officer

DATE: August 31, 2011

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §


This instrument was acknowledged before me on August 31, 2011, by James L. Death, Attorney-in-Fact, and Christopher N. Claeys, Attorney-in-Fact, of HHE Energy Company, a Delaware corporation, on behalf of said corporation.

_Sira M Pineiro_
Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____

> SIRA M PINEIRO
> NOTARY PUBLIC, STATE OF TEXAS
> MY COMMISSION EXPIRES
> APRIL 6, 2012


STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §


This instrument was acknowledged before me on August 31, 2011, by G.M. McCarroll, President and Chief Executive Officer of Dynamic Offshore Resources, LLC, a Delaware limited liability company, on behalf of said limited liability company.

_Robyn E Arnold_
Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____

> ROBYN E ARNOLD
> NOTARY PUBLIC, STATE OF TEXAS
> MY COMMISSION EXPIRES
> MAY 14, 2014

-14-

**EXHIBIT A**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN HHE ENERGY COMPANY**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF INTERESTS**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3329-0001-00 | **Main Pass 94 - OCS-G 7802** SE/4 of Block 94, Main Pass Area, as to those depths from the surface of the earth down to 9,414' MD / 5,666' TVD | Operating Rights | 5.88133% | HHE Energy Company |
| 3318-0001-00 | **Main Pass 101 - OCS-G 22792** All of Block 101, Main Pass Area | Record Title | 17.05000% | HHE Energy Company |
| | N/2N/2NE/4 of Block 101, Main Pass Area, limited to those depths from the surface of the earth down to a depth equal to the stratigraphic equivalent of the total depth drilled in the Main Pass Block 101 Well No. 7, being 5,434 feet True Vertical Depth | Operating Rights | 16.50000% | HHE Energy Company |
| 3322-0001-00 | **Main Pass 109 - OCS-G 22794** SW/4NW/4, NW/4SE/4NW/4, SW/4NE/4NW/4 of Block 109, Main Pass Area, from the surface of the earth down to a depth of 100' below the stratigraphic equivalent of a true vertical depth of 4,622 feet as measured in the LLOG Exploration Offshore, Inc. OCS-G 22794 No. 1 Well | Operating Rights | 7.33260% | HHE Energy Company |
| | N/2NE/4, NW/4SW/4NE/4, NE/4SE/4NW/4, SE/4NE/4NW/4 of Block 109, Main Pass Area, from the surface of the earth down to a depth of 100' below the stratigraphic equivalent of a true vertical depth of 9,937 feet as measured in the LLOG Exploration Offshore, Inc. OCS-G 22794 No. 2 Well (currently named the #D-1 Well) | Operating Rights | 7.33260% | HHE Energy Company |

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3422-0001-00 | **Ship Shoal 79 - OCS-G 15277**<br>All of Block 79, Ship Shoal Area, INSOFAR AND ONLY INSOFAR as the Lease covers from the surface to one hundred feet below the stratigraphic equivalent of 11,318' true vertical depth as seen in the electric log dated March 7, 2001 for the OCS-G 15277 Well No. 2 | Operating Rights | 9.90000% | HHE Energy Company |
| 3421-0001-00 | **Ship Shoal 291, OCS-G 2923**<br>N/2NW/4; SW/4NW/4; NW/4SE/4NW4 of Block 291, Ship Shoal Area, South Addition, INSOFAR, as it pertains to all rights and horizons from the surface down to and including 100' below the stratigraphic equivalent of 6110 feet subsea as drilled and logged in the Hall-Houston Oil Company OCS-G 2923 No. 4 Well (currently named the B-1 Well). | Operating Rights | 2.10000% | HHE Energy Company |
| 3445-0001-00 | **South Marsh Island 40, OCS-G 13607**<br>All of Block 40, South Marsh Island Area | Record Title | 11.00000% | HHE Energy Company |
| 3446-0001-00 | **South Marsh Island 41, OCS-G 1192**<br>E/2 of Block 41, South Marsh Island Area, INSOFAR AND ONLY INSOFAR as to depths from surface of the earth down to 11,500 feet TVD | Operating Rights | 11.00000% | HHE Energy Company |
| 3451-0006-00 | **South Pass 43, OCS-G 22781**<br>That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument. | Record Title | 2.75000% | HHE Energy Company |

**EXHIBIT A**

-2-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| | That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument INSOFAR AND ONLY INSOFAR as it covers depths from the surface of the earth to the base of the "O" Sand Series defined as the stratigraphic equivalent of a measured depth of 12,030 feet as seen on the Induction Electric Log for the Shell Oil Company, State Lease 2554 Well No. 10. | Operating Rights | 16.50000 | HHE Energy Company |
| | That portion of Block 43, South Pass Area, seaward of the 1975 Supreme Court Decree Line specifically described on the OCS Block Diagram attached to the lease instrument INSOFAR AND ONLY INSOFAR as it covers depths from below the base of the "O" Sand Series to 30,000 feet | Operating Rights | 5.50000% | HHE Energy Company |

**EXHIBIT A**

-3-

EXHIBIT A-1
ATTACHED TO AND MADE A PART OF THAT CERTAIN
ASSIGNMENT AND BILL OF SALE
DATED EFFECTIVE AS OF AUGUST 1, 2011,
BETWEEN  HHE ENERGY COMPANY
AND DYNAMIC OFFSHORE RESOURCES, LLC

## CONTRACTS

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0276265 | Main Pass Area | 94 | 7802 | Lease | July 1, 1985 | United States of America | Kerr-McGee Corporation, et al | 1-Jul-85 |
| 0295118 | Main Pass Area | 94 | 7802 | Operating Agreement, as amended | March 3, 1986 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | |
| 0295115 | Main Pass Area | 94 | 7802 | Participation Agreement | November 1, 2001 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | November 1, 2001 Includes OPERATING AGMT |
| 0418824 | Main Pass Area | 94 | 7802 | Production Handling Agreement | January 24, 2002 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | 24-Jan-02 |
| 0417942 | Main Pass Area | 94 | 7802 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| | | | | | | | | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0276266 | Main Pass Area | 101 | 22792 | Lease | July 1, 2001 | United State of America | Cheniere Energy, Inc., et al | 1-Jul-01 |
| 0295122 | Main Pass Area | 101 | 22792 | Operating Agreement, as amended | August 10, 2001 | Cheniere Energy, Inc. | Davis Gulf Coast, Inc. et al | 10-Aug-01 |
| 0295115 | Main Pass Area | 101 | 22792 | Participation Agreement | November 2, 2001 | LLOG Exploration Offshore, Inc. | Cheniere Energy, Inc. | November 2, 2001 LLOG-Chenier |
| 0276267 | Main Pass Area | 101 | 24687 | Right-Of-Way | September 29, 2003 | Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 24687 Seg 14304 |
| 0417942 | Main Pass Area | 101 | 22792 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0295125 | Main Pass Area | 101 | 22792 | Compromise Settlement Agreement | March 26, 2006 | Century Exploration New Orleans, Inc. | Davis Gulf Coast, Inc. et al | MP 101 B3 Well |
|  |  |  |  |  |  |  |  |  |
| 0276271 | Main Pass Area | 109 | 22794 | Lease | May 1, 2001 | United States of America | Samedan Oil Corporation, et al | 1-May-01 |
| 0295141 | Main Pass Area | 109 | 22794 | Joint Operating Agreement | May 1, 2001 | Kerr-McGee Oil & Gas Corporation | Samedan Oil Corporation, et al | Exhibit D to FO & JPA |
| 0295140 | Main Pass Area | 109 | 22794 | Farmout & Joint Participation Agreement | April 23, 2003 | Kerr-McGee Oil & Gas Corporation | LLOG Exploration Offshore Inc. | April 23, 2003 Farmout & Joint Participation Agmt |
| 0417942 | Main Pass Area | 109 | 22794 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0276280 | Ship Shoal Area | 80 | 9330 | Right-Of-Way | December 8, 1987 | United States of America, Department of Interior, Minerals Management Service | Samedan Oil Corporation | ROW OCS-G 9330 Segment 8204 |
| 0296277 | Ship Shoal Area | 79 | 15277 | Lease | August 1, 1995 | United States of America | Enron Oil & Gas Company | 1-Aug-95 |
| 0295146 | Ship Shoal Area | 79 | 15277 | Farmout Agreement | June 14, 2000 | EOG Resources Inc. | PetroQuest Energy One, L.L.C. | June 14, 2000 EOG Farmout |
| 0295144 | Ship Shoal Area | 79 | 15277 | Participation Agreement | July 15, 2000 | PetroQuest Energy One, L.L.C. | LLOG Exploration & Production Company | Jul 15, '00 Includes Operating Agmt |
| 0295145 | Ship Shoal Area | 79 | 15277 | Joint Operating Agreement | July 15, 2000 | PetroQuest Energy One, L.L.C. | LLOG Exploration & Production Company | Jul 15, '00 Includes Operating Agmt |
| 0276279 | Ship Shoal Area | 79 | 23713 | Right-Of-Way | May 29, 2002 | United States of America, Department of Interior, Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 23713 Segment 13737 |
| 0276278 | Ship Shoal Area | 79 | 23712 | Right-Of-Way | May 29, 2002 | United States of America, Department of Interior, Minerals Management Service | LLOG Exploration Offshore, Inc. | ROW OCS-G 23712 Segment 13736 |
| 0418821 | Ship Shoal Area | 79 | 15277 | Purchase and Sale Agreement | April 15, 2003 | Noble Energy, Inc., et al | LLOG Exploration Offshore, Inc., et al | Purchase of SS 80 "A" |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0417942 | Ship Shoal Area | 79 | 15277 | Purchase and Sale Agreement | April 1, 2004 | LLOG Exploration Company, L.L.C., et al | Hunt Petroleum Corporation | Dated 7/9/04, effective 4/1/04 |
| | | | | | | | | |
| | | | | | | | | |
| 0253746 | Ship Shoal Area, South Addition | 291 | 2923 | Lease | December 1, 1974 | United States of America | Ashland Oil, Inc., et al | 1-Jun-62 |
| 0419103 | Ship Shoal Area, South Addition | 291 | 2923 | Farmout Agreement, as amended, and Operating Agreement | October 1, 1991 | Torch Energy Advisors Incorporated, et al | Hall-Houston Oil Company | 1-Jun-62 |
| 0295476 | Ship Shoal Area, South Addition | 291 | 2923 | Purchase and Sale Agreement | March 1, 2008 | Maritech Resources, Inc., et al | Montforte Exploration L.L.C., et al | 1-Jun-62 |
| | | | | | | | | |
| 0266626 | South Marsh Island Area | 40 | 13607 | Lease | August 1, 1992 | United State of America | Shell Offshore Inc. | 1-Aug-92 |

**EXHIBIT A-1**

-7-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294629 | South Marsh Island Area | 40 | 13607 | Operating Agreement, as revised | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | SM 40/41 Shallow Rights - revised 6-1-03 |
| 0294629 | South Marsh Island Area | 40 | 13607 | Participation Agreement & JOA, as amended | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | Feb. 24, 2003 (INCLUDES SM 40 OPER AGMT) |
| 0294621 | South Marsh Island Area | 40 | 13607 | Joint Area Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P., et al | June 1, 2003 (Includes OA SM 40/41 Deep Rights) |
| 0294629 | South Marsh Island Area | 40 | 13607 | Operating Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | SM 40/41 Deep Rights |
| 0295463 | South Marsh Island Area | 40 | 13607 | Platform Lease and Operations Agreement | June 30, 2003 | Apache Corporation | Hunt Petroleum (AEC), Inc. | JA" PF Lse & Opers Agmt-TERMINATED" but obligations survive under Joint Area Agreement Para 12. |
| 0417942 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0316161 | South Marsh Island Area | 40 | 13607 | Production Handling Agreement, as Ratified | September 1, 2004 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | Sept. 1, 2004 JA" PF SM 41" |
| 0266626 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | October 1, 2004 | Apache Corporation | Hunt Petroleum Corporation | October 1, 2004 APACHE Acquisition |
| 0316161 | South Marsh Island Area | 40 | 13607 | Production Handling Agreement, as amended | December 1, 2007 | Hunt Petroleum (AEC), Inc., et al | Nippon Oil Exploration U.S.A. Limited | PHA SM 44 "C" - SM 40 "JA" |
| 0294629 | South Marsh Island Area | 40 | 13607 | Ratification and Amendment | April 1, 2008 | Hunt Petroleum (AEC), Inc., et al | Devon Energy Production Company, L.P. | Ratification of SM 44 "C" - SM 40 "JA" PHA for SM 40 C-2 / C2D Well |
| 0266626 | South Marsh Island Area | 40 | 13607 | Purchase & Sale Agreement | January 1, 2010 | Nippon Oil Exploration U.S.A. Limited | XTO Offshore Inc., et al | January 1, 2010 (Acq Nippon Deep Rights SM 40/41) |
| | | | | | | | | |
| | | | | | | | | |
| 0266627 | South Marsh Island Area | 41 | 1192 | Lease | June 1, 1962 | United State of America | California Oil Company | 1-Jun-62 |

**EXHIBIT A-1**

-9-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0294629 | South Marsh Island Area | 41 | 1192 | Participation Agreement & JOA, as amended | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | Feb. 24, 2003 (Includes SM 40 OA) |
| 0294629 | South Marsh Island Area | 41 | 1192 | Operating Agreement, as revised | February 24, 2003 | Hunt Petroleum (AEC), Inc. | LLOG Exploration Offshore, Inc. | SM 40/41 Shallow Rights - revised 6-1-03 |
| 0294621 | South Marsh Island Area | 41 | 1192 | Joint Area Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P., et al | June 1, 2003 (Includes OA SM 40/41 Deep Rights) |
| 0294629 | South Marsh Island Area | 41 | 1192 | Operating Agreement, as amended | June 1, 2003 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | SM 40/41 Deep Rights |
| 0417942 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0316161 | South Marsh Island Area | 41 | 1192 | Production Handling Agreement, as ratified | September 1, 2004 | Hunt Petroleum (AEC), Inc. | Devon Energy Production Company, L.P. | Sept. 1, 2004 JA" PF SM 41" |
| 0266626 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | October 1, 2004 | Apache Corporation | Hunt Petroleum Corporation | October 1, 2004 APACHE Acquisition |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0266626 | South Marsh Island Area | 41 | 1192 | Purchase & Sale Agreement | January 1, 2010 | Nippon Oil Exploration U.S.A. Limited | XTO Offshore Inc., et al | January 1, 2010 (Acq Nippon Deep Rights SM 40/41) |
| 0295086 | South Pass | 42 & 43 | SL 16869 & OCS-G 22781 | Participation Agreement | August 30, 2002 | Pure Resources, L.P. | Andex Resources, L.L.C., et al | |
| 0295095 | South Pass | 42 & 43 | SL 16869, 16870 & OCS-G 22781 | Operating Agreement | August 30, 2002 | LLOG Exploration & Production Company | Pure Resources, L.P., et al | |
| 0417942 | South Pass | 42 & 43 | SL 16860, 16870 & OCS-G 22781 | Purchase & Sale Agreement | April 1, 2004 | LLOG Exploration Offshore Inc., et al | Hunt Petroleum Corporation | LLOG Acquisition |
| 0314614 | South Pass | 42 & 43 | SL 16869, 16870 & OCS-G 22781 | Production Handling Agreement | February 1, 2007 | Hunt Petroleum (AEC), Inc. | Andex Resources, L.L.C., et al | |
| 0276236 | South Pass | 43 | 22781 | Lease | June 1, 2001 | United States of America | Andex Resources, L.L.C., et al | |
| | | | | | | | | |
| 0253756 | West Cameron Area | 171 | 1997 | Lease | January 1, 1971 | United States of America | Placid Oil Co., et al | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0293110 | West Cameron Area | 171 | 1997 | Joint Operating Agreement, as amended | January 1, 1971 | Transocean Oil, Inc. | Placid Oil Co., et al | Amendments dated July 25, 1979, October 21, 1982, January 1, 1989, and February 21, 1989 |
| 0418897 | West Cameron Area | 171 | 1997 | Letter Agreement | November 5, 1997 | Hunt Petroleum Corporation, et al | Captiva Energy, Inc. | Includes Election Letter dated November 10, 1997 |
| 0418935 | West Cameron Area | 171 | 1997 | Natural Gas Processing Agreement (as described in Exhibits A&B of Assignment and Bill of Sale attached to Assignment of Record Title Interest from Chevron USA to Hunt Petroleum Corporation, et al) | March 1, 2002 | Chevron U.S.A. Inc., et al | Targa Midstream Services, Limited Partnership | Dedication of Chevron interest |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| Pending | West Cameron Area | 171 | 1997 | Assignment and Bill of Sale | October 4, 2010 | XH, LLC, et al | Conn Energy, Inc., et al | Attached as Exhibit "A" to MMS-150 Assignment of Record Title Interest pending BOEMRE approval - executed pursuant to Notice of Surrender dated September 4, 2010 |
|  |  |  |  |  |  |  |  |  |

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Agreement for the Construction and Operation of the Yscloskey Processing Plant | July 30, 1968 | Shell Oil Company | Getty Oil Company, et al | C&O Agreement |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Hydrocarbon Fractionation Agreement | July 30, 1968 | Shell Oil Company | Getty Oil Company, et al | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Hydrocarbon Fractionation Agreement | May 1, 1969 | Shell Oil Company | Getty Oil Company, et al | |

**EXHIBIT A-1**

-14-

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Agreement of Settlement And Compromise | August 2, 2002 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amendment to Construction and Operating Agreement | April 1, 2003 | Dynegy Midstream Services, Limited Partnership | Anadarko E&P Company LP | |

**EXHIBIT A-1**

-15-

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Amended and Restated Straddle and Processing Agreement | April 1, 2003 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Agreement of Settlement And Compromise | April 1, 2003 | Tennessee Gas Pipeline Company | Dynegy Midstream Services, Limited Partnership | |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | Gas Plant | Agreement | Date | Party 1 | Party 2 | Comment |
|---|---|---|---|---|---|---|---|---|
| 3907 | Eugene Island Area, South Addition, Ship Shoal Area, South Addition & South Pass | EI 309, SS 271 Unit, SP 42 & SP 43 | Yscloskey | Second Amendment to Hydrocarbon Fractionation Agreement | August 1, 2003 | Enterprise Gas Processing, LLC | Apache Corporation, et al | |

**EXHIBIT A-1**

**EXHIBIT A-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN HHE ENERGY COMPANY**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

## DESCRIPTION OF WELLS

**MAIN PASS BLOCK 94**
**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP94 #5 | #5 | MAIN PASS 094 | Offshore Louisiana | 177254081800S01 | W&T OFFSHORE, INC. | 401786 | PDP | GAS |
| MP094 | OCS-G-07802 MP 94 | OCS-G-07802 MP 94 #4ST | #4ST | MAIN PASS 094 | Offshore Louisiana | 177254072400S01 | W&T OFFSHORE, INC. | 401785 | PDP | GAS |

**MAIN PASS BLOCK 101/106**

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-01 | B-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254074600S01 | XTO OFFSHORE INC. | 401801 | PDP | GAS |

**EXHIBIT A-2**

-18-

| MP101B | OCS-G-22792 MP101 | OCS-G-22792 MP101 B-02 | B-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254075100S01 | XTO OFFSHORE INC. | 401802 | PDP | GAS |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-01 | D-01 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076000S01 | XTO OFFSHORE INC. | 401948 | TA | OIL |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-02 | D-02 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254076100S02 | XTO OFFSHORE INC. | 401949 | PDP | GAS |
| MP101D | OCS-G-23967 MP106 | OCS-G-23967 MP106 D-03ST1 | D-03ST1 | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077101S01 | XTO OFFSHORE INC. | 401950 | PDP | GAS |
| MP101D | OCS-G-03798 MP102 | OCS-G-03798 MP102 D-04A | D-04A | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254077400S02 | XTO OFFSHORE INC. | 401837 | TA | GAS |
| MP101D | OCS-G-22792 MP101 | OCS-G-22792 MP101 D-05 | D-05 | MAIN PASS 93 | OFFSHORE LOUISIANA | 177254078000S01 | XTO OFFSHORE INC. | 401803 | PDP | OIL |
| MP101E (#6) | OCS-G-22792 MP101 | OCS-G-22792 MP101 E-01 (#6) | E-01 (#6) | MAIN PASS 107 | OFFSHORE LOUISIANA | 177254079000D03 | XTO OFFSHORE INC. | 401834 | PDP | GAS |

**EXHIBIT A-2**

-19-

**MAIN PASS BLOCK 101**

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP101B | OCS-G 22792 MP101 | OCS-G 22792 MP101B3 | B3 | MAIN PASS 101 | Offshore Louisiana | 177254081000S01 | CENTURY EXPLORATION NEW ORLEANS, INC. | 401946 | PDP | GAS |

**MAIN PASS BLOCK 109**

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| MP109C | OCS-G-22794 MP109 | OCS-G-22794 MP109 C-1 | C-01 | MAIN PASS 109 | Offshore Louisiana | 177254076700S03 | W&T OFFSHORE, INC. | 401952 | SI | GAS |
| MP109D | OCS-G-22794 MP109 | OCS-G-22794 MP109 D-01ST00BP02 | D-01ST00BP02 | MAIN PASS 109 | Offshore Louisiana | 177254076802S02 | W&T OFFSHORE, INC. | 401953 | PDP | GAS |

**SOUTH MARSH ISLAND BLOCK 40/41**

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01 | B-01 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074083600D01 | XTO OFFSHORE INC. | 401787 | SI | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-01D | B-01D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074083600D02 | XTO OFFSHORE INC. | 401788 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-02ST | B-02ST | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074084901S01 | XTO OFFSHORE INC. | 401868 | PDP | OIL |

**EXHIBIT A-2**

-20-

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-03 | B-03 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085300S01 | XTO OFFSHORE INC. | 401763 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04 | B-04 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085400D01 | XTO OFFSHORE INC. | 401887 | SI | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04D | B-04D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085400D02 | XTO OFFSHORE INC. | 401888 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-1192 SMI 41 B-04E | B-04E | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085400D03 | XTO OFFSHORE INC. | 401764 | PDP | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-05 | B-05 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085700D01 | XTO OFFSHORE INC. | 401865 | SI | GAS |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-05D | B-05D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074085700D02 | XTO OFFSHORE INC. | 401889 | PDP | OIL |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-06 | B-06 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074087600S01 | XTO OFFSHORE INC. | 401766 | PDP | OIL |
| SMI40B | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 B-07 | B-07 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089800D01 | XTO OFFSHORE INC. | 402019 | PDP | GAS |
| SMI40B | OCS-G-01192 SMI 41 | OCS-G-01192 SMI 41 B-07D | B-07D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089800D02 | XTO OFFSHORE INC. | 402967 | PDP | GAS |
| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02 | C-02 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089500D01 | XTO OFFSHORE INC. | 402020 | PDP | GAS |

**EXHIBIT A-2**

| SMI44C | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 C-02D | C-02D | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074089500D02 | XTO OFFSHORE INC. | 402608 | PDP | GAS |
| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 01ST2 | JA-01ST2 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074063600S02 | XTO OFFSHORE INC. | 402021 | SI | GAS |
| SMI40JA | OCS-G-13607 SMI 40 | OCS-G-13607 SMI 40 JA 02BP01 | JA-02 BP01 | SOUTH MARSH ISLAND 41 | OFFSHORE LOUISIANA | 177074069100S01 | XTO OFFSHORE INC. | 401866 | SI | GAS |

**SOUTH PASS BLOCK 42/43**
**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| | OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-01 | A-01 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404580000 | XTO OFFSHORE INC. | 401799 | 1PDP | OIL |
| | OCS-G 22781 SP 43 | OCS-G-22781 SP 43 #A-02 | A-02 | SOUTH PASS 43 | OFFSHORE LOUISIANA | 17721404590000 | XTO OFFSHORE INC. | 401800 | 1PDP | GAS |
| | SL 3011 | SL 3011 #001 SWD | #001 SWD | SOUTH PASS 42 | OFFSHORE LOUISIANA | 17721007480000 | XTO OFFSHORE INC. | 703024* | Active | SWD |

* Burrwood Central Facility

**EXHIBIT A-2**

**SHIP SHOAL BLOCK 79/80**
**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SS079A | OCS-G-15277 79 | SS OCS G-15277 SS 79 A-02 | A-02 | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D03 | XTO OFFSHORE INC. | 401789 | PDP | OIL |
| SS079A | OCS-G-15277 79 | SS OCS G-15277 SS 79 A-02D | A-02D | SHIP SHOAL 78 | OFFSHORE LOUISIANA | 177114134300D02 | XTO OFFSHORE INC. | 401893 | PDP | OIL |

**WEST CAMERON BLOCK 171**

**HHE ENERGY COMPANY**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-01BP1 | A-01BP1 | WEST CAMERON 146 | Offshore Louisiana | 177004000600D01 | CONN ENERGY | | SI | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-02C | A-02C | WEST CAMERON 146 | Offshore Louisiana | 177004005100S03 | CONN ENERGY | | SI | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-3 | A-3 | WEST CAMERON 146 | Offshore Louisiana | 177004005200S01 | CONN ENERGY | | SI | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G-01997 WC 171 A-03ST | A-03ST | WEST CAMERON 146 | Offshore Louisiana | 177004005201S05 | CONN ENERGY | 402111 | PDP | GAS |

**EXHIBIT A-2**

-23-

| WC171A | OCS -G-01997 WC 171 | OCS -G- 01997 WC 171 A-04D | A-04D | WEST CAMERON 146 | Offshore Louisiana | 177004006000D0 2 | CONN ENERGY | | SI | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G- 01997 WC 171 A- 05ST | A- 05ST | WEST CAMERON 146 | Offshore Louisiana | 17700400690150 1 | CONN ENERGY | 402112 | SI | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G- 01997 WC 171 A-6 | A-6 | WEST CAMERON 146 | Offshore Louisiana | 17700400700050 3 | CONN ENERGY | | SI | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G- 01997 WC 171 A-07C | A-07C | WEST CAMERON 146 | Offshore Louisiana | 17700400710050 3 | CONN ENERGY | 402113 | TA | GAS |
| WC171A | OCS -G-01997 WC 171 | OCS -G- 01997 WC 171 A-08 | A-08 | WEST CAMERON 146 | Offshore Louisiana | 17700400740050 2 | CONN ENERGY | | SI | |
| WC171A | OCS -G-01997 WC 171 | OCS -G- 01997 WC 171 A-09 | A-09 | WEST CAMERON 146 | Offshore Louisiana | 17700400780150 1 | CONN ENERGY | 402670 | TA | |
| WC171A | OCS -G-01997 WC 171 | OCS -G- 01997 WC 171 A-10D | A-10D | WEST CAMERON 146 | Offshore Louisiana | 177004007900D0 2 | CONN ENERGY | | SI | |
| WC171A | OCS -G-01997 WC 171 | OCS -G- 01997 WC 171 A-12D | A-12D | WEST CAMERON 146 | Offshore Louisiana | 177004008800D0 2 | CONN ENERGY | | SI | GAS |
| | OCS -G-01997 WC 171 | OCS -G- 01997 WC 171 B-7 | B-7 | WEST CAMERON 146 | Offshore Louisiana | 177004009900 | CONN ENERGY | | ST | GAS |

**EXHIBIT A-2**

**EXHIBIT B**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN  HHE ENERGY COMPANY**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

THIS PAGE LEFT INTENTIONALLY BLANK

.

**EXHIBIT B-1**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN  HHE ENERGY COMPANY**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF RIGHTS-OF-WAY**

THIS PAGE LEFT INTENTIONALLY BLANK

**EXHIBIT B-1**                    -26-

**EXHIBIT B-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN  HHE ENERGY COMPANY**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF PIPELINES**

| Segment Number | Originating Area/Block | Originating Lease | Destination Area/Block | Destination Lease | Status | Segment Length | Size |
|---|---|---|---|---|---|---|---|
| 14138 | MP101 | G22792 | MP101 | G22792 | Active | 4546 | 6 5/8" |
| 14821 | MP101 | G22792 | MP101 | G22792 | Active | 5194 | 4" |
| 14822 | MP101 | G22792 | MP101 | G22792 | Out of Service | 5197 | 4" |
| 14315 | MP101 | G22792 | MP101 | G22792 | Active | 8745 | 8 5/8" |
| 14292 | SM40 | G13607 | SM40 | G13607 | Active | 5584 | 6 5/8" |
| 14293 | SM40 | G13607 | SM40 | G13607 | Active | 6015 | 6 5/8" |
| 14294 | SM40 | G13607 | SM40 | G13607 | Active | 6017 | 6 5/8" |
| 14295 | SM40 | G13607 | SM40 | G13607 | Active | 6020 | 2 1/2" OR 2 7/8" |

**EXHIBIT B-3**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN HHE ENERGY COMPANY**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF PLATFORMS**

| XTO # | PLATFORM NAME | OPERATOR | STATE |
|---|---|---|---|
| 703355 | PLATFORM MP 101 06 | XTO OFFSHORE INC. | LA |
| 703332 | PLATFORM MP 101 B | XTO OFFSHORE INC. | LA |
| 703333 | PLATFORM MP 101 D | XTO OFFSHORE INC. | LA |
| 703436 | PLATFORM MP 109 C | W & T OFFSHORE INC | LA |
| 703437 | PLATFORM MP 109 D | W & T OFFSHORE INC | LA |
| N/A | PLATFORM MP 94 4 | W & T OFFSHORE INC | LA |
| 703362 | PLATFORM SMI 040 B | XTO OFFSHORE INC. | LA |
| 703347 | PLATFORM SMI 040 JA | XTO OFFSHORE INC. | LA |
| 703128 | PLATFORM SP 42A | XTO OFFSHORE INC. | LA |
| 703339 | PLATFORM SS 079 A | XTO OFFSHORE INC. | LA |
| 703370 | PLATFORM SS 080 A | XTO OFFSHORE INC. | LA |
| N/A | PLATFORM WC 171 A | CONN ENERGY INC. | LA |
| N/A | PLATFORM WC 171 A - AUX 1 | CONN ENERGY INC. | LA |
| N/A | PLATFORM WC 171 A - AUX 2 | CONN ENERGY INC. | LA |

# Exhibit D

## ASSIGNMENT AND BILL OF SALE

This Assignment and Bill of Sale ("Assignment") is effective as of August 1, 2011, at 7:00 a.m. Central Time ("Effective Time"), and is from XH, LLC, a Delaware limited liability company with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 ("XH"), to DYNAMIC OFFSHORE RESOURCES, LLC, a Delaware limited liability company, with an address of 1301 McKinney, Suite 900, Houston, Texas 77010 ("Assignee"). XH and Assignee may each be referred to hereafter as a "Party", or collectively referred to as the "Parties".

## ARTICLE 1.

1.01. <u>Assignment</u>. For $10 and other good and valuable consideration, the receipt and sufficiency of which XH acknowledges, XH bargains, sells, assigns, and conveys to Assignee and its successors and assigns, all of XH's right, title, and interest in and to the following real and personal properties (collectively, "Properties"), subject to the terms of this Assignment, including its exhibits, and all applicable instruments of record in the county/counties/parish/parishes where the Properties are located:

      (a)    The oil and gas leasehold estates and other interests, *insofar but only insofar* as set out on Exhibit A and Exhibit A-1, together with XH's interest in each well located on the leases, units and land described on Exhibit A and Exhibit A-1, including, without limitation, the wells described on Exhibit A-2 (collectively, "Interests");

**XH EXCEPTS FROM THIS ASSIGNMENT THE EXCLUSIONS PROVIDED IN SECTION 1.02 OF THIS ASSIGNMENT AND MAKES SUCH ASSIGNMENT SUBJECT TO ANY CONVEYANCE OR AGREEMENT, WHETHER RECORDED OR NOT, THAT PERTAINS TO THE INTERESTS AND WHICH WAS EXECUTED OR EFFECTIVE BEFORE THE EXECUTION OF THIS ASSIGNMENT.**

      (b)    All contracts affecting the Interests, to the extent each is assignable, including agreements for the sale or purchase of oil, gas, and other hydrocarbons; processing agreements; division orders; unit agreements; operating agreements; and other contracts and agreements arising out of, connected with, or attributable to production from the Interests, including the items listed on Exhibit A-1;

**XH EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL RIGHT, TITLE, AND INTEREST IN THESE CONTRACTS INSOFAR AS THEY PERTAIN TO ANY INTEREST NOT ASSIGNED IN THIS ASSIGNMENT.**

      (c)    All personal property, including material, equipment, pipelines, platforms and facilities situated in and on the Properties and used solely in connection with the use or operation of the Interests for the production, treating, storing, transporting, and marketing of oil, gas, and other hydrocarbons from the Interests, including the items listed on Exhibit B-2 and Exhibit B-3;

0446025

**XH Excepts From This Assignment And Reserves To Itself All Personal Property, Wells, Fixtures, Pipelines, And Equipment Used In XH's Operation Of Any Lease, Well, Or Mineral Interest Not Assigned In This Assignment.**

    (d)    All easements, permits, licenses, surface and subsurface leases, rights-of-way, servitudes, and other surface and subsurface rights affecting the Interests, to the extent each is assignable, including the items listed on Exhibit B and Exhibit B-1; and

    (e)    Copies of the data and records relating to the Properties and Interests that have been or will be delivered by XH to Assignee as provided for in the Purchase and Sale Agreement defined hereafter ("Documents").

1.02.    Exclusions. The following are excluded from this Assignment:

    (a)    reservations, exceptions and exclusions listed in Exhibits A, B and B-1;

    (b)    pipelines, fixtures, equipment, and interests owned by third parties such as lessors, purchasers, or transporters of Oil or gas;

    (c)    computer equipment (including Rosemont transmitters), telecommunications equipment, vehicles, boats, tools, pulling machines, and other equipment and material temporarily located on the Property or expressly excluded from the sale;

    (d)    items specifically excluded in written information or correspondence provided to Assignee before the Execution Date;

    (e)    any gas processing plant not listed on Exhibit A and Exhibit A-1;

    (f)    personal property, fixtures, equipment, pipelines, facilities, and buildings located on the Property, but currently in use in connection with the ownership or operation of other property not included in the Interests;

    (g)    Unless otherwise described on Exhibit A, if XH is a party to a joint operating agreement that affects an Interest, this Agreement is limited as to that Interest to the depths subject to the joint operating agreement (e.g., total depth, total depth plus 100 feet, base of formation penetrated by initial test well), but excludes depths previously conveyed and all depths not subject to a joint operating agreement; and

    (h)    If XH owns unleased mineral interests purportedly within the Interests, those mineral interests are not included in the term "Interests" and will not be conveyed to XH.

    (i)    [Intentionally Left Blank].

> (j) Responsibility and liability for the proper payment of royalties to any governmental entity with respect to production attributable to the Interests prior to the Effective Time in the event prior payments to such governmental entity were improperly calculated.
>
> (k) The Reserved Overriding Royalty Interest as defined in Section 1.08.

1.03. <u>Restrictions on Use</u>. Where any of the Interests include a fee simple interest in real property that has been used for oil, gas, or other mineral operations, the following uses of the affected land, or any portion thereof, are expressly prohibited and forbidden:

> (a) any hotel use;
>
> (b) any purpose that would constitute a "Permitted Use" under any of the residential zones, districts, or classifications set forth in any applicable municipal, county/parish or state zoning laws in effect at the Effective Time,
>
> (c) any other residential use;
>
> (d) any health care, clinic, hospital or other medical facility;
>
> (e) any playground, recreational park, day nursery, day-care center, child care center, nursing home, house of worship, or school;
>
> (f) any agricultural use;
>
> (g) construction or installation of any basements; or
>
> (h) any water wells for irrigation or drinking purposes.

1.04. <u>Documents</u>. If originals or the last-remaining copies of the Documents have been provided to Assignee, XH may have access to them at reasonable times and upon reasonable notice during regular business hours for as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or a longer period if required by law or governmental regulation). XH may, during this period and at its expense, make copies of the Documents pursuant to a reasonable request. Without limiting the generality of the two preceding sentences, for a period as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or for a longer period if required by law or governmental regulation), Assignee may not destroy or give up possession of any original or last-remaining copy of the Documents without first offering XH the opportunity, at XH's expense, to obtain the original or a copy. After this period expires, Assignee must offer to deliver the Documents (or copies) to XH, at XH's expense, before giving up possession or destroying them.

1.05. <u>Reservations</u>. To the extent that XH has reserved or continues to own an interest (excluding overriding-royalty interests but including, if any, mineral-fee, leasehold interests, deep rights or facilities, equipment, or pipelines) after the Effective Time for which XH

requires access across the land associated with the Interests in order to exercise its rights, XH reserves concurrent interests in all applicable easements, rights-of-way, contracts, and other rights relating to the reserved interests and necessary as reasonably required for exploring, drilling, producing, storing, or marketing oil, gas, and other hydrocarbons from the respective zones or interests of the Parties, including rights to lay pipelines, water lines, and power lines; dig pits; erect structures; and perform any other act reasonably necessary to XH's interests. Additionally, XH reserves and retains a preferential right to purchase all Oil produced and saved from the Interests, pursuant to and in accordance with the terms and provisions of the Purchase and Sale Agreement defined hereafter. The term "Oil" as used herein means crude oil, distillate, drip gasoline, condensate, and other liquid hydrocarbons.

1.06. <u>Surrender or Abandonment of Interests</u>. If Assignee decides to surrender or abandon any of the Interests after execution of this Assignment, Assignee must give XH written notice of its intent at least 45 days before surrender or abandonment if XH:

  (a)  has retained an interest in such Interests;

  (b)  has other interests for which XH requires access across such Interests or Property in order to exercise its rights; or

  (c)  has other interests that are held by production from suchInterests. XH will have 30 days after receipt of Assignee's notice to notify Assignee that it elects to require Assignee to reassign all or any part of such Interests. Reassignment will be in the manner described in Section 1.07.

1.07. <u>Reassignment</u>. For reassignment of any Interest under this Assignment, Assignee will execute and deliver to XH a reassignment by special warranty, in a form satisfactory to XH and sufficient to place XH in the same position it occupied before the assignment to Assignee. Assignee's release and discharge of XH and its Associated Parties, its covenant not to sue XH or its Associated Parties, and its obligations to indemnify, defend, and hold XH and its Associated Parties harmless will apply to Interests that are reassigned for the period of Assignee's ownership, and the reassignment instrument will restate Assignee's obligations.

1.08. <u>Reserved Overriding Royalty</u>. XH reserves from the leasehold interest applicable to each of the oil and gas leases described on Exhibit A (collectively, the "Leases", individually a "Lease"), an overriding royalty interest interest equal to five percent of eight-eighths (5% of 8/8) as to production from any New Wells, as defined hereafter (the "Overriding Royalty Interest"). "New Wells", for the purposes of this Assignment is defined as any wells drilled on the Leases from and after the date of execution of this Assignment (the "Execution Date"), together with any sidetrack or deepening after the Execution Date of an existing well on the Leases, to the extent and only to the extent that said sidetrack bottom hole is located 1,000 feet or greater from the bottom hole location of such existing wells; provided, however, such 1,000 foot restriction does not apply to the sidetracks identified in that certain Letter between XH and Assignee, dated July 29, 2011. New Wells shall not include any recompletions, workovers, or mechanical bypasses of an existing well. The Overriding Royalty Interest shall be paid or delivered by Assignee to XH in accordance with the following terms and conditions:

(a)  On oil, delivery of such oil shall be made free of all costs and expenses in developing and operating the Interests, free of all costs of production and unencumbered in any way to XH's credit into the pipelines or tanks to which the applicable well or wells may be connected, or otherwise as XH may from time to time direct.  Should XH elect not to take its Overriding Royalty Interest on oil in kind, then XH's part of such oil shall be paid based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser of such oil at the applicable well or wells, free of all costs and expenses in of developing and operating the Interests, free of all costs of production and unencumbered in any way.

(b)  On all gas, including casinghead gas or other gaseous substances and liquid constituents of said gas, produced from and sold (on or off the Interests) or used off the Interests, or for the extraction of gasoline or other products therefrom, the Overriding Royalty Interest shall be based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser at the well or wells of gas so produced, sold or utilized, free of all costs of developing and operating the Interests, free of all costs of production.

Payment by Assignee of the Overriding Royalty Interest must be made from the Execution Date and at all times thereafter on the basis of one hundred percent (100%) of the New Well's production (proportionately reduced as hereafter provided), and such payment must be made regardless of (a) whether Assignee is or is not banking or storing gas, whether pursuant to the provisions of an agreement so permitting, or otherwise; (b) whether Assignee is or is not selling all or any part of its share of the total production; and (c) the identity of the purchaser or purchasers of such gas if Assignee should be selling all or any part of the total gas produced. The Overriding Royalty Interest shall be delivered to XH free of all cost and expense of developing and operating the Leases and free and clear of all taxes except gross production, severance taxes, and ad valorem taxes applicable thereto; provided that, the Overriding Royalty Interest will be subject to and bear a proportionate share of all reasonable costs and expenses of a non-affiliated third party incurred for the transportation, compression, dehydration and treating of the said gas and condensate in the preparation for marketing of such production.  Such payments shall be made on or before the sixtieth (60th) day following the month of the production.  If payment is not made within the time prescribed, the unpaid amount will bear interest at the rate of one percent (1%) for each month or fraction of a month, by which payment is delayed, or the maximum lawful rate, whichever is less. Assignee agrees to send all division orders covering the Overriding Royalty Interest reserved by to XH at the following address:

XTO Energy Inc.
P.O. Box 730586
Dallas, Texas 75373-0586

If the Leases cover less than a full interest in the land covered thereby or if the interest assigned hereunder in said Leases is less than a full interest, then the Overriding Royalty Interest herein reserved shall be reduced in the proportion that the interest assigned to Assignee herein

bears to the full interest in the land covered or bears to the full interest in the Leases assigned hereunder; provided, however, that the overriding royalties herein reserved are exclusive of and in addition to any royalties, overriding royalties or payments out of production affecting the Leases as of the Effective Time. It is expressly agreed that operations, if any, on the Leases and the extension and duration thereof, as well as the preservation of the Leases by rental payments or otherwise, shall be solely at the will and discretion of Assignee or any successor owner of the working interest in the Leases. The Overriding Royalty Interest hereby reserved is subject to the rights conferred on the lessees (now Assignee) by said Leases to pool or unitize the lands covered thereby; and neither the joinder nor consent by XH shall be required in connection with any such pooling or unitization. Where oil and/or gas is produced from any unit so formed, XH shall receive on production from such unit only such portion of the overriding royalty stipulated herein, as the amount of surface acreage of the land affected by such overriding royalty and placed in said unit bears to the total surface acreage included in the unit, unless some other formula for appointment of production is adopted for the unit and in such case the formula shall be used.

XH upon notice in writing to Assignee, shall have the right to audit Assignee's accounts and records relating to the Overriding Royalty Interest reserved herein and any other records related to the determination of the amounts due XH for any calendar year within the twenty-four (24) month period following the end of such calendar year.

The Overriding Royalty Interest is expressly subject to the terms and provisions of any of the Related Agreements, to the extent and only to the extent that such terms and provisions contractually apply to and prohibit the establishment of an overriding royalty interest affecting any of the Leases. If pursuant to the terms of any Related Agreement all or a portion of Assignee's interest in a Lease, or all or a portion of its interest in the production therefrom, is forfeited or assigned to one or more other working interest owners, either permanently or for a stipulated period, because Assignee fails to participate in any operation or operations, then to the extent that such forfeited or assigned interest is subject to and burdened by the Overriding Royalty Interest, the working interest so assigned or forfeited by Assignee shall be free and clear of such Overriding Royalty Interest for the period of such forfeiture or assignment of overriding royalty interests. The Overriding Royalty Interest will become effective again when the interest is reassigned or reverts back to Assignee, and Assignee shall pay such Overriding Royalty Interest as provided in this Section 1.08. Further, to the extent any Related Agreement establishes security rights in favor of the parties thereto, the Overriding Royalty Interest conveyed herein shall be subordinated to such security rights. For the purposes of this Assignment, "Related Agreements" shall mean all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements concerning or pertaining to the Interests, to the extent that they are binding on XH or its successors or assigns.

It is understood and agreed that the Overriding Royalty Interests reserved herein, will be a permanent burden on the Leases subject to the provisions of this Section 1.08, and will continue in effect as to each Lease for so long as each Lease remains in effect. In addition in the event Assignee secures a renewal or extension for any such Leases, covering all or any part of

the land previously covered thereby, then the interests reserved herein will apply to such renewed or extended Lease. A "renewal" or "extension" of a Lease as those terms are used therein shall mean any Lease or Leases covering all or a part of the land covered by the Leases that is executed by Assignee within twelve (12) months after termination of any Lease, or the next ensuing Federal or state lease sale pertaining to all or any part of the land previously covered by a Lease, whichever may come first.

      1.09.   <u>Governmental Transfers.</u>  Where separate transfers of any of the Properties have been, or will be, executed for filing with and approval by applicable governmental authorities, any such separate transfer (a) shall not constitute an additional assignment or conveyance of the affected Properties, (b) shall not constitute an additional reservation of the Overriding Royalty Interest provided for in this Assignment and (c) shall not modify any of the terms, covenants and conditions, or limitations on warranties, set forth in this Assignment, and are not intended to create and shall not create any representations, warranties or additional covenants of or by either of the parties to this Assignment.

## ARTICLE 2.

      Ad valorem taxes assessed against the Properties for the year of the Effective Time are apportioned between XH and Assignee as of the Effective Time.

## ARTICLE 3.

      Assignee will comply with all rules, regulations, statutes, and laws applicable to Assignee's ownership or operation of the Properties. Except to the extent specifically excepted or reserved by XH in this Assignment or in the Purchase and Sale Agreement (as defined hereafter), Assignee accepts this Assignment and assumes all XH's obligations and liabilities under all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements (including compliance with express and implied covenants and payment of costs, rentals, shut-in-payments, minimum royalties, and production royalties), to the extent that these obligations and liabilities concern or pertain to the Properties and are binding on XH or its successors or assigns. Assignee's obligations under this article apply to all applicable instruments, whether recorded or not.

## ARTICLE 4.

      Assignee acknowledges that the Interests and Properties have been used for exploration, development, and production of oil and gas and that there may be petroleum, produced water, wastes, or other materials located on or under the Properties or associated with the Interests. Equipment and sites included in the Interests or Properties may contain asbestos, hazardous substances, or naturally occurring radioactive material ("NORM"). NORM may affix or attach itself to the inside of wells, materials, and equipment as scale, or in other forms; the wells, materials, and equipment located on the Properties or included in the Interests may contain NORM and other wastes or hazardous substances; and NORM-containing material and other wastes or hazardous substances may have been buried, come in contact with the soil, or

otherwise been disposed of on the Properties. Special procedures may be required for the remediation, removal, transportation, or disposal of wastes, asbestos, hazardous substances, and NORM from the Interests and Properties.

Assignee will store, handle, transport, and dispose of or discharge all material, substances, and wastes from the Properties (including produced water, drilling fluids, NORM, and other wastes), whether present before or after the Effective Time, in accordance with applicable local, state, and federal laws and regulations. Assignee will keep records of the types, amounts, and location of materials, substances, and wastes that are stored, transported, handled, discharged, released, or disposed of onsite and offsite. When any lease terminates, an interest in which has been assigned under this Assignment, Assignee will take additional testing, assessment, closure, reporting, and remedial action with respect to the Properties as is necessary to satisfy all local, state, and federal requirements directed in effect at that time and necessary to restore the Properties.

## ARTICLE 5.

Assignee recognizes, and will either perform or assure that performance is accomplished properly and in accordance with applicable law and the obligations and liabilities described in Article 3, all obligations to abandon, restore, and remediate the Properties and the Interests, whether arising before or after the Effective Time, including obligations, as applicable, to:

a) obtain plugging exceptions in the operator's name for each well located on the Properties (abandoned and unabandoned) with a current plugging exception or permanently plug and abandon each well;

b) plug, abandon, and if necessary, reabandon each well located on the Properties (abandoned and unabandoned);

c) remove all equipment and facilities, including flowlines, pipelines and platforms;

d) close all pits; and

e) restore the surface, subsurface, and offshore sites associated with the Interests and Properties.

Assignee will take all necessary steps to ensure that Assignee is recognized as the owner and, if applicable, operator of the Properties by all appropriate parties, including any regulatory commission, body or board with jurisdiction. If XH is the principal on any financial assurance (including a bond) relating to the Properties, which financial assurance is required by any law, rule, or regulation, then Assignee will secure new financial assurance in the required amount and supply it to the regulatory body requiring the financial assurance, to the end that XH's financial assurance is released and discharged.

Assignee will pay all costs and expenses associated with the obligations assumed under this article. XH may require Assignee to maintain a performance bond in an amount, in a form, and from an institution acceptable to XH, to guarantee Assignee's obligations, all as provided for in the Purchase and Sale Agreement as defined hereafter.

## ARTICLE 6.

XH Makes No Warranty Of Any Type In This Assignment, Whether Express, Statutory, Or Implied. Assignee Has Inspected And Has Satisfied Itself As To The Condition Of The Properties. This Assignment Is Made By XH And Accepted By Assignee On An "As Is, Where Is" Basis. XH Disclaims All Warranties, Including:

(a)   AS TO THE FITNESS OR CONDITION OR MERCHANTABILITY OF THE MATERIALS, EQUIPMENT, OR FACILITIES CONVEYED;

(b)   AS TO THE PHYSICAL, OPERATIONAL, OR ENVIRONMENTAL CONDITION OF THE PROPERTIES;

(c)   AS TO THE OIL, GAS, AND OTHER HYDROCARBON OPERATIONS OF THE PROPERTIES COVERED BY THE TERMS AND CONDITIONS OF ANY LEASES OR OTHER AGREEMENTS THAT ARE A PART OF THE PROPERTIES;

(d)   AS TO THE ISSUANCE, REISSUANCE, OR TRANSFER OF ANY PERMITS RELATING TO ANY OF THE PROPERTIES;

(e)   AS TO ANY CONSENT OR APPROVAL REQUIRED UNDER ANY INSTRUMENT DESCRIBED IN ARTICLE III; AND

(f)   AS TO TITLE, EITHER EXPRESS, IMPLIED, OR STATUTORY.

## ARTICLE 7.

The terms "Claim" or "Claims" mean, collectively, claims, demands, causes of action, and lawsuits asserted or filed by any person, including an artificial or natural person, a local, state, or federal governmental entity; a person holding rights under any instrument described in Article 3; an Associated Party of XH or Assignee; or a third party. The term "Liability" or "Liabilities" means, collectively, all damages (including consequential and punitive damages), including those for personal injury, death, or damage to personal or real property (both surface and subsurface) and costs for remediation, restoration, or clean up of contamination, whether the injury, death, or damage occurred or occurs on or off the Properties by migration, disposal, or otherwise; losses; fines; penalties; expenses; costs to remove or modify facilities on or under the Properties; plugging liabilities for all wells; attorneys' fees; court and other costs incurred in defending a Claim; liens; and judgments; in each instance, whether these damages and other costs are known or unknown, foreseeable or unforeseeable on the Effective Time. The term "Associated Parties" means successors, assigns, directors, officers, employees, agents, contractors, subcontractors, and affiliates.

Assignee releases and discharges XH and its Associated Parties from each Claim and Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. Assignee's release and discharge of XH and its Associated Parties include Claims and Liabilities caused in whole or in part by the gross, sole, joint, concurrent, active or passive negligence of XH or any of its Associated Parties

OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY, and this release and discharge are binding on Assignee and its successors and assigns The only exception to Assignee's release and discharge of XH and its Associated Parties is that (a) Assignee does not release Claims against contractors and subcontractors for work regarding the Interests and Properties, and (b) Assignee does not release or discharge Claims that XH breached the Purchase and Sale Agreement as defined hereafter.

Assignee covenants not to sue XH or its Associated Parties with regard to any Claim or Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S COVENANT NOT TO SUE XH OR ITS ASSOCIATED PARTIES INCLUDES CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XH OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLIES REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY, and this covenant is binding on Assignee and its successors and assigns. The only exception to Assignee's covenant not to sue XH or its Associated Parties is that Assignee does not covenant not to sue contractors and subcontractors for work regarding the Interests and Properties.

Assignee will indemnify, defend, and hold XH and its Associated Parties harmless from each Claim or Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S OBLIGATIONS TO INDEMNIFY, DEFEND, AND HOLD XH AND ITS ASSOCIATED PARTIES HARMLESS INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XH OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY. The only exception to Assignee's obligations to indemnify, defend, and hold XH and its Associated Parties harmless is (a) a judgment rendered or settlement reached in a lawsuit filed before the Effective Time, but only to the extent that the acts or omissions that gave rise to the cause of action are attributable to the conduct or operations or ownership of XH or its Associated Parties before the Effective Time and (b) a Claim that XH breached the Purchase and Sale Agreement defined hereafter. Assignee's obligations are binding on Assignee and its successors and assigns.

Assignee's duty to release, discharge, not to sue, indemnify, defend, and hold XH and its Associated Parties harmless includes Claims or Liabilities arising in any manner from the physical or environmental condition of the Interests and Properties, including Claims or Liabilities under applicable laws and regulations now enacted or that may be enacted in the future, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time.

## ARTICLE 8.

Assignee represents that it has acquired the Properties for its own benefit and account and has not acquired the Properties with the intent of distributing fractional undivided interests in them or otherwise selling them in a manner that would be subject to regulation by federal or state securities laws. If Assignee sells, transfers, or otherwise disposes of the Properties or fractional undivided interests in them in the future, it will do so in compliance with applicable federal and state laws.

This Assignment is subject to the terms of the Purchase and Sale Agreement between XH, among others, and Assignee concerning the Properties, dated effective as of August 1, 2011 (the "Purchase and Sale Agreement"). In the event of a conflict or inconsistency between the terms and provisions of this Assignment and those set forth in the Purchase and Sale Agreement, the terms and provisions in the Purchase and Sale Agreement shall control. The Purchase and Sale Agreement provides, in part, that the Parties will correct errors that may have been made in the conveyancing instruments; that XH may require that all or a part of the Properties be reassigned under certain circumstances; and that disputes concerning the Properties or the transaction will be resolved by alternate dispute resolution, to the extent, if any, that Assignee has not released, discharged, or covenanted not to sue XH or its Associated Parties.

XH, upon notice in writing to Assignee, shall have the right to access the Assignee's offices, facilities, work sites, warehouses, books, records, correspondence, instructions, plans, drawings, receipts, vouchers, financial accounts, data stored in computer files or microfiche and personnel to audit Assignee's accounts and records relating to the retained royalty interest, including any hedge agreements, facilities used for the measurement of production from the properties, for any calendar year within the twenty-four (24) month period following the end of such calendar year. The same audit rights are to extend to subcontractors. XH shall maintain supporting data and accounting records consistent with generally accepted accounting principles, and the employees and agents of company shall have the right to reproduce and retain for the purpose of audit, any of these documents. XH shall not be liable for any of Assignee's contractor's or subcontractor's costs resulting from an audit hereunder.

The provisions of this Assignment are severable. If a court of competent jurisdiction finds any part of this Assignment to be void, invalid, or otherwise unenforceable (except for the release, waiver, defense, and indemnity provisions), this holding will not affect other portions that can be given effect without the invalid or void portion.

All covenants and agreements in this Assignment (except Article 8) bind and inure to the benefit of the heirs, successors, and assigns of XH and Assignee; are covenants running with the land; and are effective as stated, whether or not the covenants and agreements are memorialized in assignments and other conveyances executed and delivered by the Parties and their respective heirs, successors, and assigns from time to time.

Recitation of or reference to any agreement or other instrument in this Assignment, including its exhibits, does not operate to ratify, confirm, revise, or reinstate the agreement or instrument if it has previously lapsed or expired.

This Assignment and its performance will be construed in accordance with, and governed by, the internal laws of the State of Texas, without regard to the choice of law rules of any jurisdiction, including Texas.

The word <u>includes</u> and its syntactical variants mean "includes, but not limited to" and its corresponding syntactical variants. The rule of *ejusdem generis* may not be invoked to restrict or limit the scope of the general term or phrase followed or preceded by an enumeration of particular examples.

All exhibits referenced in and attached to this Assignment are incorporated into it.

[Intentionally Left Blank]

This instrument may be executed in counterparts, all of which together will be considered one instrument.

Executed in the presence of the undersigned witnesses on the dates indicated below, but effective as of the Effective Time.

**WITNESSES:**

Print or Type Name: James F. Wiggins

Print or Type Name: Clyde Vanderbrouk

**XH, LLC**

BY:

NAME:   James L. Death

TITLE:   Attorney-in-Fact

DATE:   August 31, 2011

Print or Type Name: James F. Wiggins

Print or Type Name: Clyde Vanderbrouk

**XH, LLC**

BY:

NAME:   Christopher N. Claeys

TITLE:   Attorney-in-Fact

DATE:   August 31, 2011

Print or Type Name: John H. Smith

Print or Type Name:  Lambert M. Laperouse

**Dynamic Offshore Resources, LLC**

BY:

NAME:   G.M. McCarroll

TITLE:   President and Chief Executive Officer

DATE:   August 31, 2011

STATE OF TEXAS § 
§ 
COUNTY OF HARRIS §

This instrument was acknowledged before me on August 31, 2011, by James L. Death, Attorney-in-Fact, and Christopher N. Claeys, Attorney-in-Fact, of HHE Energy Company, a Delaware corporation, on behalf of said corporation.

_____
Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____

SIRA M PINEIRO
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
APRIL 6, 2012


STATE OF TEXAS § 
§ 
COUNTY OF HARRIS §

This instrument was acknowledged before me on August 31, 2011, by G.M. McCarroll, President and Chief Executive Officer of Dynamic Offshore Resources, LLC, a Delaware limited liability company, on behalf of said limited liability company.

_____
Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____



ROBYN E ARNOLD
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MAY 14, 2014

**EXHIBIT A**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF INTERESTS**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3416-0001-00 | **Ship Shoal 204, OCS-G 1520**<br>All of Block 204, Ship Shoal Area | Record Title | 5.60514% | XH, LLC |
| 3418-0001-00 | **Ship Shoal 207, OCS-G 1523**<br>All of Block 207, Ship Shoal Area | Record Title | 6.18214% | XH, LLC |
| | All of Block 207, Ship Shoal area, INSOFAR AND ONLY INSOFAR, as it pertains to all rights below 15,000' down to 99,999' TVD | Operating Rights | 6.18214% | XH, LLC |
| | **Ship Shoal 207 Field Unit (C-6/JS Sand) Federal Unit 891020231**<br>A Unit Area comprised of portions of OCS-G 1522 covering Ship Shoal Block 206 and OCS-G 1523 covering Ship Shoal Block 207 as to the Unitized Reservoir described as the C-6/JS Sand Reservoir, found in the dual induction electrical log of the OCS-G 1523 Well A-1 between the measured depths of 10,615' and 10,793'. | Federal Unit | 6.08364% | XH, LLC |
| 3419-0001-00 | **Ship Shoal 216, OCS-G 1524**<br>All of Block 216, Ship Shoal Area | Record Title | 5.77000% | XH, LLC |

EXHIBIT A

-1-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3421-0001-00 | **Ship Shoal 291, OCS-G 2923**<br>N/2NW/4; SW/4NW/4; NW/4SE/4NW4 of Block 291, Ship Shoal Area, South Addition, INSOFAR, as it pertains to all rights and horizons from the surface down to and including 100' below the stratigraphic equivalent of 6110 feet subsea as drilled and logged in the Hall-Houston Oil Company OCS-G 2923 No. 4 Well (currently named the B-1 Well). | Operating Rights | 7.01463% | XH, LLC |
| 3443-0001-00 | **South Marsh Island 269, OCS-G 2311**<br>All of Block 269, South Marsh Island Area, North Addition | Record Title | 9.06733% | XH, LLC |
| 3444-0001-00 | **South Marsh Island 281, OCS-G 2600**<br>All of Block 281, South Marsh Island Area, North Addition | Record Title | 10.47658% | XH, LLC |

**EXHIBIT A**

# EXHIBIT A-1
## ATTACHED TO AND MADE A PART OF THAT CERTAIN ASSIGNMENT AND BILL OF SALE
## DATED EFFECTIVE AS OF AUGUST 1, 2011,
## BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC

## CONTRACTS

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |
| 0253742 | Ship Shoal Area | 204 | 1520 | Lease | July 1, 1967 | United States of America | Hamilton Brothers Oil Company, et al | 1-Jul-67 |
| 0293021 | Ship Shoal Area | 204 | 1520 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0293021 | Ship Shoal Area | 204 | 1520 | Letter Agreement | February 8, 2006 | Apache Corporation | Chevron U.S.A. Inc., et al | SS 204 A36ST1 Non-Consent 500% Penalty |
|  |  |  |  |  |  |  |  |  |
| 0253744 | Ship Shoal Area | 207 | 1523 | Lease | July 1, 1967 | United States of America | General Crude Oil Company, et al | 1-Jul-67 |
| 0350621 | Ship Shoal Area | 207 | 1523 | Unit Operating Agreement | April 1, 1981 | Conoco, Inc. | Atlantic Richfield Company, et al | April 1, 1981   C-6/JS Sand Reservoir |

EXHIBIT A-1                                                           -3-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418888 | Ship Shoal Area | 207 | 1523 | Unit Plan #14-08-0001-20231 | April 1, 1981 | Conoco, Inc. | Atlantic Richfield Company, et al | #14-08-0001-20231 |
| 0293057 | Ship Shoal Area | 207 | 1523 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0324109 | Ship Shoal Area | 207 | 1523 | Production Handling Agreement | October 26, 1994 | Norcen Explorer, Inc., et al | Norcen Explorer, Inc., et al | October 26, 1994 SS 207 A"/SS 190" |
| 0293240 | Ship Shoal Area | 207 | 1523 | Joint Development Agreement, as amended | November 16, 1994 | Norcen Explorer Inc. et al | Norcen Offshore Properties Ltd., et al | November 16, 1994 SS 206 & 207 |
| | | | | | | | | |
| 0253745 | Ship Shoal Area | 216 | 1524 | Lease | July 1, 1967 | United States of America | General Crude Oil Company, et al | 1-Jul-67 |
| 0293060 | Ship Shoal Area | 216 | 1524 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| | | | | | | | | |

**EXHIBIT A-1**

-4-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0253746 | Ship Shoal Area, South Addition | 291 | 2923 | Lease | December 1, 1974 | United States of America | Ashland Oil, Inc., et al | 1-Jun-62 |
| 0419103 | Ship Shoal Area, South Addition | 291 | 2923 | Farmout Agreement, as amended, and Operating Agreement | October 1, 1991 | Torch Energy Advisors Incorporated, et al | Hall-Houston Oil Company | 1-Jun-62 |
| 0295476 | Ship Shoal Area, South Addition | 291 | 2923 | Purchase and Sale Agreement | March 1, 2008 | Maritech Resources, Inc., et al | Montforte Exploration L.L.C., et al | 1-Jun-62 |
| | | | | | | | | |
| 0293161 | South Marsh Island Area, North Addition | 268 | 2310 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0314492 | South Marsh Island Area, North Addition | 268 | 2310 | Space Lease and Production Handling and Operations Agreement | August 14, 1995 | Norcen Explorer, Inc. et al | Norcen Explorer, Inc. et al | 8/14/95 Space Lse & PH & Ops Agmt SM 280 @ 268 A |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0420017 | South Marsh Island Area, North Addition | 268 | 2310 | Contract/Connection Agreement | January 18, 1996 | Norcen Explorer, Inc. | The George R. Brown Partnership, et al | Letter Agreement 12 Producer PL Seg 4008" |
| 0314476 | South Marsh Island Area, North Addition | 268 | 2310 | Production Handling Agreement | May 1, 2007 | Apache Corporation, et al | Helis Oil & Gas Company, L.L.C., et al | 4/18/07 SM 265 Prod @ 268 A |
| 0316079 | South Marsh Island Area, North Addition | 268 | 2310 | Production Handling Agreement | January 1, 2008 | Apache Corporation, et al | Helis Oil & Gas Company, L.L.C., et al | 1/1/08 SM 257 No. 1 @ 268 A |
| 0253772 | South Marsh Island Area, North Addition | 269 | 2311 | Lease | January 1, 1973 | United States of America | TransOcean Oil, Inc. et al | 1-Jan-73 |
| 0293157 | South Marsh Island Area, North Addition | 269 | 2311 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |

**EXHIBIT A-1**

-6-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0293183 | South Marsh Island Area, North Addition | 280 | 14456 | Unit Operating Agreement | June 15, 2001 | Texaco Exploration and Production Inc. | W&T Offshore, Inc., et al | SM 280/281 Pooled Unit "I" Platform |
| 0253773 | South Marsh Island Area, North Addition | 281 | 2600 | Lease | April 1, 1974 | United States of America | Hamilton Brothers Oil Company, et al | 1-Apr-74 |
| 0293162 | South Marsh Island Area, North Addition | 281 | 2600 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0293182 | South Marsh Island Area, North Addition | 281 | 2600 | Joint Development Agreement | June 15, 2001 | RME Petroleum Company, et al | RME Petroleum Company, et al | June 15, 2001 (SM 280/281 Pooled Unit) |

**EXHIBIT A-1**

-7-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0293183 | South Marsh Island Area, North Addition | 281 | 2600 | Unit Operating Agreement | June 15, 2001 | Texaco Exploration and Production Inc. | W&T Offshore, Inc., et al | SM 280/281 Pooled Unit "I" Platform |
| | | | | | | | | |
| 0253756 | West Cameron Area | 171 | 1997 | Lease | January 1, 1971 | United States of America | Placid Oil Co., et al | |
| 0293110 | West Cameron Area | 171 | 1997 | Joint Operating Agreement, as amended | January 1, 1971 | Transocean Oil, Inc. | Placid Oil Co., et al | Amendments dated July 25, 1979, October 21, 1982, January 1, 1989, and February 21, 1989 |
| 0418897 | West Cameron Area | 171 | 1997 | Letter Agreement | November 5, 1997 | Hunt Petroleum Corporation, et al | Captiva Energy, Inc. | Includes Election Letter dated November 10, 1997 |

EXHIBIT A-1                                     -8-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418935 | West Cameron Area | 171 | 1997 | Natural Gas Processing Agreement (as described in Exhibits A&B of Assignment and Bill of Sale attached to Assignment of Record Title Interest from Chevron USA to Hunt Petroleum Corporation, et al) | March 1, 2002 | Chevron U.S.A. Inc., et al | Targa Midstream Services, Limited Partnership | Dedication of Chevron interest |
| Pending | West Cameron Area | 171 | 1997 | Assignment and Bill of Sale | October 4, 2010 | XH, LLC, et al | Conn Energy, Inc., et al | Attached as Exhibit "A" to MMS-150 Assignment of Record Title Interest pending BOEMRE approval - executed pursuant to Notice of Surrender dated September 4, 2010 |
| | | | | | | | | |

**EXHIBIT A-1**

-9-

**EXHIBIT A-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

<u>**DESCRIPTION OF WELLS**</u>

**SHIP SHOAL BLOCK 204**
**XH, LLC**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SS204A | OCS -G- 01520 SS 204 | OCS-G-01520 SS 204 A-06 | A-06 | SHIP SHOAL 204 | Offshore Louisiana | 177110081300D03 | APACHE CORPORATION | | | SI | OIL |
| SS204A | OCS -G- 01520 SS 204 | OCS-G-01520 SS 204 A-06D | A-06D | SHIP SHOAL 204 | Offshore Louisiana | 177110081300D02 | APACHE CORPORATION | | | SI | OIL |
| SS204A | OCS -G- 01520 SS 204 | OCS-G-01520 SS 204 A-08 | A-08 | SHIP SHOAL 204 | Offshore Louisiana | 177110083000S02 | APACHE CORPORATION | 401770 | | PDP | OIL |
| SS204A | OCS -G- 01520 SS 204 | OCS-G-01520 SS 204 A-14 | A-14 | SHIP SHOAL 204 | Offshore Louisiana | 177110084200D01 | APACHE CORPORATION | | | SI | OIL |
| SS204A | OCS -G- 01520 SS 204 | OCS-G-01520 SS 204 A-14D | A-14D | SHIP SHOAL 204 | Offshore Louisiana | 177110084200D02 | APACHE CORPORATION | | | SI | OIL |
| SS204A | OCS -G- 01520 SS 204 | OCS-G-01520 SS 204 A-15ST1 | A-15ST1 | SHIP SHOAL 204 | Offshore Louisiana | 17711200340 1S04 | APACHE CORPORATION | 402033 | | PDP | GAS |
| SS204A | OCS -G- 01520 SS 204 | OCS-G-01520 SS 204 A-16ST1 | A-16ST1 | SHIP SHOAL 204 | Offshore Louisiana | 17711200540 1S01 | APACHE CORPORATION | 402034 | | PDP | OIL |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-20 | A-20 | SHIP SHOAL 204 | Offshore Louisiana | 177112012600D01 | APACHE CORPORATION | 401771 | SI | OIL |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-20D | A-20D | SHIP SHOAL 204 | Offshore Louisiana | 177112012600D02 | APACHE CORPORATION | 401771 | PDP | OIL |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-24ST1 | A-24ST1 | SHIP SHOAL 204 | Offshore Louisiana | 177112017701S02 | APACHE CORPORATION | 402035 | PDP | OIL |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-28ST3 | A-28ST3 | SHIP SHOAL 204 | Offshore Louisiana | 177110071003S01 | APACHE CORPORATION | 402036 | PDP | OIL |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-30 | A-30 | SHIP SHOAL 204 | Offshore Louisiana | 177114002801S03 | APACHE CORPORATION | | TA | OIL |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-30D | A-30D | SHIP SHOAL 204 | Offshore Louisiana | 177114002801D02 | APACHE CORPORATION | | TA | OIL |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-31 | A-31 | SHIP SHOAL 204 | Offshore Louisiana | 177110084201S04 | APACHE CORPORATION | | TA | OIL |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-34 | A-34 | SHIP SHOAL 204 | Offshore Louisiana | 177114146700S01 | APACHE CORPORATION | 401772 | PDP | OIL |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-35BP2 | A-35BP2 | SHIP SHOAL 204 | Offshore Louisiana | 177114147402S01 | APACHE CORPORATION | 402037 | PDP | OIL |
| SS204A | OCS -G-01520 SS 204 | OCS-G-01520 SS 204 A-36ST1BP2 | A-36ST1BP2 | SHIP SHOAL 204 | Offshore Louisiana | 177114146803S01 | APACHE CORPORATION | 402038 | PDP | OIL |

**EXHIBIT A-2**

**SHIP SHOAL BLOCK(s) 206/207/216**

**XH, LLC**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SS206E | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 E-01 | E-01 | SHIP SHOAL 207 | Offshore Louisiana | 177114115500S03 | APACHE CORPORATION | 402039 | | PDP | OIL |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 E-2ST1BP1 | E-2ST1BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114118101S01 | APACHE CORPORATION | 402040 | | PDP | OIL |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-3ST | E-3ST | SHIP SHOAL 207 | Offshore Louisiana | 177114118201S01 | APACHE CORPORATION | | | SI | GAS |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-04 | E-04 | SHIP SHOAL 207 | Offshore Louisiana | 177114141800S01 | APACHE CORPORATION | 402041 | | SI | GAS |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-05 | E-05 | SHIP SHOAL 207 | Offshore Louisiana | 177114142000S01 | APACHE CORPORATION | 402042 | | SI | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-03ST1 | A-03ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177110072801D02 | APACHE CORPORATION | 402044 | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-04 | A-04 | SHIP SHOAL 207 | Offshore Louisiana | 177110075500D01 | APACHE CORPORATION | 401773 | | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-04D | A-04D | SHIP SHOAL 207 | Offshore Louisiana | 177110075500D02 | APACHE CORPORATION | 401773 | | SI | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-06 | A-06 | SHIP SHOAL 207 | Offshore Louisiana | 177110078200D02 | APACHE CORPORATION | | | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-08C | A-08C | SHIP SHOAL 207 | Offshore Louisiana | 177110080700D03 | APACHE CORPORATION | | | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-09D | A-09D | SHIP SHOAL 207 | Offshore Louisiana | 177110082400D02 | APACHE CORPORATION | | | TA | OIL |

**EXHIBIT A-2**

-12-

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-10 | A-10 | SHIP SHOAL 207 | Offshore Louisiana | 177110083900S03 | APACHE CORPORATION | 402045 | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-13 | A-13 | SHIP SHOAL 207 | Offshore Louisiana | 177112002500S03 | APACHE CORPORATION | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-15ST1 | A-15ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177112010601S02 | APACHE CORPORATION | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-16ST1 | A-16ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177112011401D03 | APACHE CORPORATION | 402046 | SI | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-18A | A-18A | SHIP SHOAL 207 | Offshore Louisiana | 177112005000D04 | APACHE CORPORATION | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-19 | A-19 | SHIP SHOAL 207 | Offshore Louisiana | 177114009400S02 | APACHE CORPORATION | | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-20 | A-20 | SHIP SHOAL 207 | Offshore Louisiana | 177114010300S04 | APACHE CORPORATION | 402047 | PDP | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-21 | A-21 | SHIP SHOAL 207 | Offshore Louisiana | 177114011000S02 | APACHE CORPORATION | 402048 | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-22ST1 | A-22ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114011301S03 | APACHE CORPORATION | 402049 | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-22DST | A-22DST | SHIP SHOAL 207 | Offshore Louisiana | 177114011301D02 | APACHE CORPORATION | 402049 | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-23B | A-23B | SHIP SHOAL 207 | Offshore Louisiana | 177114013500D04 | APACHE CORPORATION | | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-24 | A-24 | SHIP SHOAL 207 | Offshore Louisiana | 177114014300S01 | APACHE CORPORATION | | TA | OIL |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-25 | A-25 | SHIP SHOAL 207 | Offshore Louisiana | 177114015500S01 | APACHE CORPORATION | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-26ST1BP1 | A-26ST1BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177112001101S04 | APACHE CORPORATION | 402050 | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-27 | A-27 | SHIP SHOAL 207 | Offshore Louisiana | 177110079401D03 | APACHE CORPORATION | 402051 | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-27D | A-27D | SHIP SHOAL 207 | Offshore Louisiana | 177110079401D04 | APACHE CORPORATION | 402051 | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-28ST1 | A-28ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177110077301S01 | APACHE CORPORATION | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-29ST1BP2 | A-29ST1BP2 | SHIP SHOAL 207 | Offshore Louisiana | 177112001901S03 | APACHE CORPORATION | 402052 | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-30ST1 | A-30ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177110071501D02 | APACHE CORPORATION | | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-31ST2 | A-31ST2 | SHIP SHOAL 207 | Offshore Louisiana | 177114117702S03 | APACHE CORPORATION | 402053 | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-32BP1 | A-32BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114119701S02 | APACHE CORPORATION | 402054 | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-33ST1 | A-33ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114121901D01 | APACHE CORPORATION | 402055 | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-33DST | A-33DST | SHIP SHOAL 207 | Offshore Louisiana | 177114121901D02 | APACHE CORPORATION | | PDP | OIL |

**EXHIBIT A-2**

| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-34 | A-34 | SHIP SHOAL 207 | Offshore Louisiana | 177114122200D01 | APACHE CORPORATION | 401774 | PDP | GAS |
|--------|--------------------|-----------------------|------|----------------|--------------------|-----------------|--------------------|--------|-----|-----|
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-34D | A-34D | SHIP SHOAL 207 | Offshore Louisiana | 177114122200D02 | APACHE CORPORATION | | SI | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-35ST1 | A-35ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114133301S01 | APACHE CORPORATION | 401870 | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-36 | A-36 | SHIP SHOAL 207 | Offshore Louisiana | 177114137700S03 | APACHE CORPORATION | 402056 | PDP | GAS |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-02 | D-02 | SHIP SHOAL 207 | Offshore Louisiana | 177114025400D01 | APACHE CORPORATION | | SI | OIL |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-07BP1 | D-07BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114030300D02 | APACHE CORPORATION | | SI | GAS |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-08 | D-08 | SHIP SHOAL 207 | Offshore Louisiana | 177114032300S02 | APACHE CORPORATION | | SI | GAS |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-09 | D-09 | SHIP SHOAL 207 | Offshore Louisiana | 177114116400D03 | APACHE CORPORATION | 402059 | PDP | GAS |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-09D | D-09D | SHIP SHOAL 207 | Offshore Louisiana | 177114116400D02 | APACHE CORPORATION | | SI | GAS |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-010ST1 | D-10ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114116501S03 | APACHE CORPORATION | 402060 | PDP | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-01 | C-01 | SHIP SHOAL 207 | Offshore Louisiana | 177112009200D02 | APACHE CORPORATION | | SI | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-03A | C-03A | SHIP SHOAL 207 | Offshore Louisiana | 177112014500S03 | APACHE CORPORATION | | SI | OIL |

**EXHIBIT A-2**

| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-04ST1 | C-04ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177112014900D01 | APACHE CORPORATION | 402061 | SI | OIL |
|---|---|---|---|---|---|---|---|---|---|---|
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-05A | C-05A | SHIP SHOAL 207 | Offshore Louisiana | 177112017400S03 | APACHE CORPORATION | | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-7ST1 | C-07ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114001201S01 | APACHE CORPORATION | 402062 | PDP | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-09ST1 | C-09ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114003800S01 | APACHE CORPORATION | 402528 | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-10 | C-10 | SHIP SHOAL 207 | Offshore Louisiana | 177114004900S02 | APACHE CORPORATION | | TA | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-11A | C-11A | SHIP SHOAL 207 | Offshore Louisiana | 177114005700S02 | APACHE CORPORATION | | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-12 | C-12 | SHIP SHOAL 207 | Offshore Louisiana | 177114006700S03 | APACHE CORPORATION | | SI | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-14A | C-14A | SHIP SHOAL 207 | Offshore Louisiana | 177114007900S02 | APACHE CORPORATION | 402529 | TA | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-15 | C-15 | SHIP SHOAL 207 | Offshore Louisiana | 177114009000S01 | APACHE CORPORATION | | TA | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-16ST1BP1 | C-16ST1BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114000101S01 | APACHE CORPORATION | | SI | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-17ST1 | C-17ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114003001S02 | APACHE CORPORATION | | SI | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-18 | C-18 | SHIP SHOAL 207 | Offshore Louisiana | 177114028500S01 | APACHE CORPORATION | | TA | GAS |

**EXHIBIT A-2**

| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-19 | C-19 | SHIP SHOAL 207 | Offshore Louisiana | 177114031900D05 | APACHE CORPORATION | | TA | GAS |
|---|---|---|---|---|---|---|---|---|---|---|
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-20 | C-20 | SHIP SHOAL 207 | Offshore Louisiana | 177114032400S01 | APACHE CORPORATION | | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-21 | C-21 | SHIP SHOAL 207 | Offshore Louisiana | 177114124301S01 | APACHE CORPORATION | 402063 | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-22ST1 | C-22ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114127200S01 | APACHE CORPORATION | | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-23 | C-23 | SHIP SHOAL 207 | Offshore Louisiana | 177114134600D02 | APACHE CORPORATION | 401775 | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-24BP2 | C-24BP2 | SHIP SHOAL 207 | Offshore Louisiana | 177114135102S02 | APACHE CORPORATION | 402064 | SI | OIL |

**SOUTH MARSH ISLAND BLOCK(s) 268/269/280/281 XH, LLC**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO Well No. | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 A-02 | A-02 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074007600S05 | APACHE CORPORATION | | TA | GAS |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 A-07 | A-07 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074013600S01 | APACHE CORPORATION | 18296 (HUNT) | TA | GAS |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 A-17B | A-17B | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074016800S03 | APACHE CORPORATION | 401991 | TA | |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI268A | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 A-21B | A-21B | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018100S03 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-1 | D-1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074020600S01 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-3D | D-3D | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074021600D02 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-4 | D-4 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074022500S01 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-6A | D-6A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024700S02 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-7 | D-7 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074025700S03 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-12 | D-12 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074028700S01 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-16ST1 | D-16ST1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029901S02 | APACHE CORPORATION | | TA |
| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-02BP1 | B-02BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074008100S02 | APACHE CORPORATION | 401993 | TA | GAS |
| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-04 | B-04 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074013200S03 | APACHE CORPORATION | | TA | GAS |

**EXHIBIT A-2**                                                -18-

| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-09 | B-09 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074015900S03 | APACHE CORPORATION | | TA | GAS |
|---------|---------|---|---------|---------|---------|---------|---------|---------|---------|---------|---------|
| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-10ST | B-10ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074017001D02 | APACHE CORPORATION | 401995 | TA | OIL |
| SMI269B | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 B-16 | B-16 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074019200S01 | APACHE CORPORATION | | SI | OIL |
| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-17ST | B-17ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074075701S01 | APACHE CORPORATION | 402687 | SI | OIL |
| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-19BP1 | B-19BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074088501S02 | APACHE CORPORATION | 401996 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-01 | C-01 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074012500S01 | APACHE CORPORATION | | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-02 | C-02 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074010500S02 | APACHE CORPORATION | 403187 | EOR PENDING | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-03 | C-03 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074013900S01 | APACHE CORPORATION | 401999 | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-04 | C-04 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074014900S02 | APACHE CORPORATION | 402000 | EOR PENDING | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-05 | C-05 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074015300S02 | APACHE CORPORATION | | SI | OIL |

**EXHIBIT A-2**

| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-06 | C-06 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074015800S04 | APACHE CORPORATION | 402001 | SI | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-07 | C-07 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074016500S01 | APACHE CORPORATION | 402002 | EOR PENDING | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-08ST | C-08ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074017701S01 | APACHE CORPORATION | 402003 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-09 | C-09 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018200S04 | APACHE CORPORATION | | SI | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-10ST | C-10ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074020701S01 | APACHE CORPORATION | 402004 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-11ST | C-11ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074022401S01 | APACHE CORPORATION | 402005 | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-12 | C-12 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024100D02 | APACHE CORPORATION | 402006 | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-13BP1 | C-13BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024900S01 | APACHE CORPORATION | 11794 (HUNT) | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-14ST | C-14ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074026901S01 | APACHE CORPORATION | 402007 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-15 | C-15 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074028300S07 | APACHE CORPORATION | 402008 | PDP | GAS |

**EXHIBIT A-2**

| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-16BP1 | C-16BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029600S02 | APACHE CORPORATION | 402009 | PDP | OIL |
|---------|---------|---------|---------|---------|---------|---------|---------|---------|---------|---------|
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-17 | C-17 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074030500X01 | APACHE CORPORATION | | TA | |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-19 | C-19 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074034400S03 | APACHE CORPORATION | | SI | OIL |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-20 | C-20 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074034900S03 | APACHE CORPORATION | 402011 | SI | OIL |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-21 | C-21 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074035500S03 | APACHE CORPORATION | 403188 | EOR PENDING | OIL |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-22 | C-22 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036100S02 | APACHE CORPORATION | 403189 | EOR PENDING | GAS |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-23ST2 | C-23ST2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036802S01 | APACHE CORPORATION | 401864 | PDP | OIL |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-24 | C-24 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074037300S03 | APACHE CORPORATION | 402012 | PDP | GAS |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-25 | C-25 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074083500S03 | APACHE CORPORATION | 402013 | PDP | GAS |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-26 | C-26 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074083700S01 | APACHE CORPORATION | 401783 | SI | OIL |

**EXHIBIT A-2**

| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-27 | C-27 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074085200S02 | APACHE CORPORATION | 402014 | SI | GAS |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 C-28BP2 | C-28BP2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074089402S01 | APACHE CORPORATION | 402015 | PDP | OIL |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-2 | D-2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074021100S01 | APACHE CORPORATION | | TA | GAS |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-5A | D-5A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074023200S02 | APACHE CORPORATION | | TA | OIL |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-8A | D-8A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074026600S02 | APACHE CORPORATION | | TA | GAS |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-9D | D-9D | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074027100D03 | APACHE CORPORATION | | TA | GAS |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-10A | D-10A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074027500S02 | APACHE CORPORATION | 402661 | TA | OIL |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-11 | D-11 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074028000S01 | APACHE CORPORATION | | TA | GAS |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-13 | D-13 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029100S02 | APACHE CORPORATION | 402662 | TA | GAS |
| SMI281C | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 D-14 | D-14 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029700S03 | APACHE CORPORATION | | TA | GAS |

**EXHIBIT A-2**

-22-

| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-01 | E-01 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018500S01 | APACHE CORPORATION | | TA | OIL |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-01D | E-01D | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018500D02 | APACHE CORPORATION | | SI | OIL |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-02BP2 | E-02BP2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024600S01 | APACHE CORPORATION | 402016 | TA | OIL |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-03 | E-03 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074027800 | APACHE CORPORATION | | TA | |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-04 | E-04 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074028500S01 | APACHE CORPORATION | | TA | OIL |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-05 | E-05 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029300S01 | APACHE CORPORATION | 402017 | PDP | OIL |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-06ST | E-06ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074030100S01 | APACHE CORPORATION | | TA | GAS |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-07 | E-07 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074031600S01 | APACHE CORPORATION | | TA | OIL |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-08ST | E-08ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074033100S02 | APACHE CORPORATION | | TA | GAS |
| SMI281E | OCS-G-02600 SMI 281 | OCS-G-02600 SMI 281 E-09BP1 | E-09BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074033800S02 | APACHE CORPORATION | 402018 | TA | GAS |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI281E | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 E-10 | E-10 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074034800S01 | APACHE CORPORATION | | TA | GAS |
| SMI281E | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 E-11 | E-11 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074035600 | APACHE CORPORATION | | TA | |
| SMI281E | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 E-12BP2 | E-12BP2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036000S02 | APACHE CORPORATION | | TA | GAS |
| SMI281E | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 E-13 BP1 | E-13BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036600S01 | APACHE CORPORATION | | TA | OIL |
| SMI281E | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 E-14 | E-14 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074038600 | APACHE CORPORATION | 402616 | TA | OIL |
| SMI269F | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 F-01 | F-01 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074080401S01 | APACHE CORPORATION | 401997 | PDP | GAS |
| SMI280I | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 I-01 BP1 | I-01 BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074082601S02 | APACHE CORPORATION | 401998 | PDP | OIL |
| SMI280I | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 I-02ST | I-02ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074082701S02 | APACHE CORPORATION | 401862 | PDP | OIL |
| SMI280I | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 I-03 | I-03 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074082800S01 | APACHE CORPORATION | 401784 | PDP | OIL |

**EXHIBIT A-2**                                                    -24-

**WEST CAMERON BLOCK 171**

**XH, LLC**

| Platform | Lease Block | / | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WC171A | OCS 01997 171 | -G-WC | OCS -G-01997 WC 171 A-01BP1 | A-01BP1 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004000600D01 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS 01997 171 | -G-WC | OCS -G-01997 WC 171 A-02C | A-02C | WEST CAMERON BLK 146 | Offshore Louisiana | 177004005100S03 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS 01997 171 | -G-WC | OCS -G-01997 WC 171 A-3 | A-3 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004005200S01 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS 01997 171 | -G-WC | OCS -G-01997 WC 171 A-03ST | A-03ST | WEST CAMERON BLK 146 | Offshore Louisiana | 177004005201S05 | CONN ENERGY | 402111 | | PDP | GAS |
| WC171A | OCS 01997 171 | -G-WC | OCS -G-01997 WC 171 A-04D | A-04D | WEST CAMERON BLK 146 | Offshore Louisiana | 177004006000D02 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS 01997 171 | -G-WC | OCS -G-01997 WC 171 A-05ST | A-05ST | WEST CAMERON BLK 146 | Offshore Louisiana | 177004006901S01 | CONN ENERGY | 402112 | | SI | GAS |
| WC171A | OCS 01997 171 | -G-WC | OCS -G-01997 WC 171 A-6 | A-6 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007000S03 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS 01997 171 | -G-WC | OCS -G-01997 WC 171 A-07C | A-07C | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007100S03 | CONN ENERGY | 402113 | | TA | GAS |
| WC171A | OCS 01997 171 | -G-WC | OCS -G-01997 WC 171 A-08 | A-08 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007400S02 | CONN ENERGY | | | SI | |

| WC171A | OCS -G- WC 01997 171 | OCS -G- 01997 WC 171 A-09 | A-09 | WEST CAMER ON BLK 146 | Offshore Louisiana | 177004007801S01 | CONN ENERGY | 402670 | TA | |
| WC171A | OCS -G- WC 01997 171 | OCS -G- 01997 WC 171 A-10D | A-10D | WEST CAMER ON BLK 146 | Offshore Louisiana | 177004007900D02 | CONN ENERGY | | SI | |
| WC171A | OCS -G- WC 01997 171 | OCS -G- 01997 WC 171 A-12D | A-12D | WEST CAMER ON BLK 146 | Offshore Louisiana | 177004008800D02 | CONN ENERGY | | SI | GAS |
| | OCS -G- WC 01997 171 | OCS -G- 01997 WC 171 B-7 | B-7 | WEST CAMER ON BLK 146 | Offshore Louisiana | 177004009900 | CONN ENERGY | | ST | GAS |

**EXHIBIT A-2**

-26-

**EXHIBIT B**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC**

THIS PAGE LEFT INTENTIONALLY BLANK

**EXHIBIT B**

-27-

**EXHIBIT B-1**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC**


THIS PAGE LEFT INTENTIONALLY BLANK


**EXHIBIT B-1**                                    -28-

**EXHIBIT B-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC**

THIS PAGE LEFT INTENTIONALLY BLANK

**EXHIBIT B-2**

**EXHIBIT B-3**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC**

## DESCRIPTION OF PLATFORMS

| XTO # | PLATFORM NAME | OPERATOR | STATE |
|-------|---------------|----------|-------|
| N/A | PLATFORM SMI 268 A Prod | APACHE CORPORATION | LA |
| 703425 | PLATFORM SMI 268 A | APACHE CORPORATION | LA |
| 703423 | PLATFORM SMI 268 D | APACHE CORPORATION | LA |
| 703426 | PLATFORM SMI 269 B | APACHE CORPORATION | LA |
| N/A | PLATFORM SMI 269 F | APACHE CORPORATION | LA |
| 703410 | PLATFORM SMI 280 I | APACHE CORPORATION | LA |
| 703341 | PLATFORM SMI 281 C | APACHE CORPORATION | LA |
| 703424 | PLATFORM SMI 281 E | APACHE CORPORATION | LA |
| 703443 | PLATFORM SS 204 A | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 204 A-Gen | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 204 A-Prod | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 206 E | APACHE CORPORATION | LA |
| 703433 | PLATFORM SS 207 A | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 207 A-Comp | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 207 A-Drill | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 207 A-Mantis | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 207 A-Prod | APACHE CORPORATION | LA |
| 703431 | PLATFORM SS 207 D | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 207 DWPF | APACHE CORPORATION | LA |
| 703407 | PLATFORM SS 216 C | APACHE CORPORATION | LA |
| N/A | PLATFORM WC 171 A | CONN ENERGY INC. | LA |
| N/A | PLATFORM WC 171 A - AUX 1 | CONN ENERGY INC. | LA |
| N/A | PLATFORM WC 171 A - AUX 2 | CONN ENERGY INC. | LA |

# ASSIGNMENT AND BILL OF SALE

This Assignment and Bill of Sale ("Assignment") is effective as of August 1, 2011, at 7:00 a.m. Central Time ("Effective Time"), and is from XH, LLC, a Delaware limited liability company with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 ("XH"), to DYNAMIC OFFSHORE RESOURCES, LLC, a Delaware limited liability company, with an address of 1301 McKinney, Suite 900, Houston, Texas 77010 ("Assignee"). XH and Assignee may each be referred to hereafter as a "Party", or collectively referred to as the "Parties".

## ARTICLE 1.

1.01.     Assignment.  For $10 and other good and valuable consideration, the receipt and sufficiency of which XH acknowledges, XH bargains, sells, assigns, and conveys to Assignee and its successors and assigns, all of XH's right, title, and interest in and to the following real and personal properties (collectively, "Properties"), subject to the terms of this Assignment, including its exhibits, and all applicable instruments of record in the county/counties/parish/parishes where the Properties are located:

    (a)    The oil and gas leasehold estates and other interests, *insofar but only insofar* as set out on Exhibit A and Exhibit A-1, together with XH's interest in each well located on the leases, units and land described on Exhibit A and Exhibit A-1, including, without limitation, the wells described on Exhibit A-2 (collectively, "Interests");

**XH EXCEPTS FROM THIS ASSIGNMENT THE EXCLUSIONS PROVIDED IN SECTION 1.02 OF THIS ASSIGNMENT AND MAKES SUCH ASSIGNMENT SUBJECT TO ANY CONVEYANCE OR AGREEMENT, WHETHER RECORDED OR NOT, THAT PERTAINS TO THE INTERESTS AND WHICH WAS EXECUTED OR EFFECTIVE BEFORE THE EXECUTION OF THIS ASSIGNMENT.**

    (b)    All contracts affecting the Interests, to the extent each is assignable, including agreements for the sale or purchase of oil, gas, and other hydrocarbons; processing agreements; division orders; unit agreements; operating agreements; and other contracts and agreements arising out of, connected with, or attributable to production from the Interests, including the items listed on Exhibit A-1;

**XH EXCEPTS FROM THIS ASSIGNMENT AND RESERVES TO ITSELF ALL RIGHT, TITLE, AND INTEREST IN THESE CONTRACTS INSOFAR AS THEY PERTAIN TO ANY INTEREST NOT ASSIGNED IN THIS ASSIGNMENT.**

    (c)    All personal property, including material, equipment, pipelines, platforms and facilities situated in and on the Properties and used solely in connection with the use or operation of the Interests for the production, treating, storing, transporting, and marketing of oil, gas, and other hydrocarbons from the Interests, including the items listed on Exhibit B-2 and Exhibit B-3;

**XH Excepts From This Assignment And Reserves To Itself All Personal Property, Wells, Fixtures, Pipelines, And Equipment Used In XH's Operation Of Any Lease, Well, Or Mineral Interest Not Assigned In This Assignment.**

<div style="margin-left:2em">

(d)    All easements, permits, licenses, surface and subsurface leases, rights-of-way, servitudes, and other surface and subsurface rights affecting the Interests, to the extent each is assignable, including the items listed on Exhibit B and Exhibit B-1; and

(e)    Copies of the data and records relating to the Properties and Interests that have been or will be delivered by XH to Assignee as provided for in the Purchase and Sale Agreement defined hereafter ("Documents").

</div>

1.02.    <u>Exclusions</u>.  The following are excluded from this Assignment:

<div style="margin-left:2em">

(a)    reservations, exceptions and exclusions listed in Exhibits A, B and B-1;

(b)    pipelines, fixtures, equipment, and interests owned by third parties such as lessors, purchasers, or transporters of Oil or gas;

(c)    computer equipment (including Rosemont transmitters), telecommunications equipment, vehicles, boats, tools, pulling machines, and other equipment and material temporarily located on the Property or expressly excluded from the sale;

(d)    items specifically excluded in written information or correspondence provided to Assignee before the Execution Date;

(e)    any gas processing plant not listed on Exhibit A and Exhibit A-1;

(f)    personal property, fixtures, equipment, pipelines, facilities, and buildings located on the Property, but currently in use in connection with the ownership or operation of other property not included in the Interests;

(g)    Unless otherwise described on Exhibit A, if XH is a party to a joint operating agreement that affects an Interest, this Agreement is limited as to that Interest to the depths subject to the joint operating agreement (e.g., total depth, total depth plus 100 feet, base of formation penetrated by initial test well), but excludes depths previously conveyed and all depths not subject to a joint operating agreement; and

(h)    If XH owns unleased mineral interests purportedly within the Interests, those mineral interests are not included in the term "Interests" and will not be conveyed to XH.

(i)    [Intentionally Left Blank].

</div>

(j)      Responsibility and liability for the proper payment of royalties to any governmental entity with respect to production attributable to the Interests prior to the Effective Time in the event prior payments to such governmental entity were improperly calculated.

(k)     The Reserved Overriding Royalty Interest as defined in Section 1.08.

1.03.   Restrictions on Use. Where any of the Interests include a fee simple interest in real property that has been used for oil, gas, or other mineral operations, the following uses of the affected land, or any portion thereof, are expressly prohibited and forbidden:

(a)     any hotel use;

(b)     any purpose that would constitute a "Permitted Use" under any of the residential zones, districts, or classifications set forth in any applicable municipal, county/parish or state zoning laws in effect at the Effective Time,

(c)     any other residential use;

(d)     any health care, clinic, hospital or other medical facility;

(e)     any playground, recreational park, day nursery, day-care center, child care center, nursing home, house of worship, or school;

(f)     any agricultural use;

(g)     construction or installation of any basements; or

(h)     any water wells for irrigation or drinking purposes.

1.04.   Documents. If originals or the last-remaining copies of the Documents have been provided to Assignee, XH may have access to them at reasonable times and upon reasonable notice during regular business hours for as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or a longer period if required by law or governmental regulation). XH may, during this period and at its expense, make copies of the Documents pursuant to a reasonable request. Without limiting the generality of the two preceding sentences, for a period as long as any Interest is in effect after the Effective Time (or for 21 years in the case of a mineral fee or other non-leasehold interest or for a longer period if required by law or governmental regulation), Assignee may not destroy or give up possession of any original or last-remaining copy of the Documents without first offering XH the opportunity, at XH's expense, to obtain the original or a copy. After this period expires, Assignee must offer to deliver the Documents (or copies) to XH, at XH's expense, before giving up possession or destroying them.

1.05.   Reservations. To the extent that XH has reserved or continues to own an interest (excluding overriding-royalty interests but including, if any, mineral-fee, leasehold interests, deep rights or facilities, equipment, or pipelines) after the Effective Time for which XH

requires access across the land associated with the Interests in order to exercise its rights, XH reserves concurrent interests in all applicable easements, rights-of-way, contracts, and other rights relating to the reserved interests and necessary as reasonably required for exploring, drilling, producing, storing, or marketing oil, gas, and other hydrocarbons from the respective zones or interests of the Parties, including rights to lay pipelines, water lines, and power lines; dig pits; erect structures; and perform any other act reasonably necessary to XH's interests. Additionally, XH reserves and retains a preferential right to purchase all Oil produced and saved from the Interests, pursuant to and in accordance with the terms and provisions of the Purchase and Sale Agreement defined hereafter. The term "Oil" as used herein means crude oil, distillate, drip gasoline, condensate, and other liquid hydrocarbons.

1.06. <u>Surrender or Abandonment of Interests</u>. If Assignee decides to surrender or abandon any of the Interests after execution of this Assignment, Assignee must give XH written notice of its intent at least 45 days before surrender or abandonment if XH:

(a) has retained an interest in such Interests;

(b) has other interests for which XH requires access across such Interests or Property in order to exercise its rights; or

(c) has other interests that are held by production from such Interests. XH will have 30 days after receipt of Assignee's notice to notify Assignee that it elects to require Assignee to reassign all or any part of such Interests. Reassignment will be in the manner described in Section 1.07.

1.07. <u>Reassignment</u>. For reassignment of any Interest under this Assignment, Assignee will execute and deliver to XH a reassignment by special warranty, in a form satisfactory to XH and sufficient to place XH in the same position it occupied before the assignment to Assignee. Assignee's release and discharge of XH and its Associated Parties, its covenant not to sue XH or its Associated Parties, and its obligations to indemnify, defend, and hold XH and its Associated Parties harmless will apply to Interests that are reassigned for the period of Assignee's ownership, and the reassignment instrument will restate Assignee's obligations.

1.08. <u>Reserved Overriding Royalty</u>. XH reserves from the leasehold interest applicable to each of the oil and gas leases described on Exhibit A (collectively, the "Leases", individually a "Lease"), an overriding royalty interest interest equal to five percent of eight-eighths (5% of 8/8) as to production from any New Wells, as defined hereafter (the "Overriding Royalty Interest"). "New Wells", for the purposes of this Assignment is defined as any wells drilled on the Leases from and after the date of execution of this Assignment (the "Execution Date"), together with any sidetrack or deepening after the Execution Date of an existing well on the Leases, to the extent and only to the extent that said sidetrack bottom hole is located 1,000 feet or greater from the bottom hole location of such existing wells; provided, however, such 1,000 foot restriction does not apply to the sidetracks identified in that certain Letter between XH and Assignee, dated July 29, 2011. New Wells shall not include any recompletions, workovers, or mechanical bypasses of an existing well. The Overriding Royalty Interest shall be paid or delivered by Assignee to XH in accordance with the following terms and conditions:

(a)  On oil, delivery of such oil shall be made free of all costs and expenses in developing and operating the Interests, free of all costs of production and unencumbered in any way to XH's credit into the pipelines or tanks to which the applicable well or wells may be connected, or otherwise as XH may from time to time direct. Should XH elect not to take its Overriding Royalty Interest on oil in kind, then XH's part of such oil shall be paid based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser of such oil at the applicable well or wells, free of all costs and expenses in of developing and operating the Interests, free of all costs of production and unencumbered in any way.

(b)  On all gas, including casinghead gas or other gaseous substances and liquid constituents of said gas, produced from and sold (on or off the Interests) or used off the Interests, or for the extraction of gasoline or other products therefrom, the Overriding Royalty Interest shall be based upon the same market value as received by Assignee with respect to its Interests pursuant to an arm's length contract with a third party purchaser at the well or wells of gas so produced, sold or utilized, free of all costs of developing and operating the Interests, free of all costs of production.

Payment by Assignee of the Overriding Royalty Interest must be made from the Execution Date and at all times thereafter on the basis of one hundred percent (100%) of the New Well's production (proportionately reduced as hereafter provided), and such payment must be made regardless of (a) whether Assignee is or is not banking or storing gas, whether pursuant to the provisions of an agreement so permitting, or otherwise; (b) whether Assignee is or is not selling all or any part of its share of the total production; and (c) the identity of the purchaser or purchasers of such gas if Assignee should be selling all or any part of the total gas produced. The Overriding Royalty Interest shall be delivered to XH free of all cost and expense of developing and operating the Leases and free and clear of all taxes except gross production, severance taxes, and ad valorem taxes applicable thereto; provided that, the Overriding Royalty Interest will be subject to and bear a proportionate share of all reasonable costs and expenses of a non-affiliated third party incurred for the transportation, compression, dehydration and treating of the said gas and condensate in the preparation for marketing of such production. Such payments shall be made on or before the sixtieth (60th) day following the month of the production. If payment is not made within the time prescribed, the unpaid amount will bear interest at the rate of one percent (1%) for each month or fraction of a month, by which payment is delayed, or the maximum lawful rate, whichever is less. Assignee agrees to send all division orders covering the Overriding Royalty Interest reserved by to XH at the following address:

XTO Energy Inc.
P.O. Box 730586
Dallas, Texas 75373-0586

If the Leases cover less than a full interest in the land covered thereby or if the interest assigned hereunder in said Leases is less than a full interest, then the Overriding Royalty Interest herein reserved shall be reduced in the proportion that the interest assigned to Assignee herein

bears to the full interest in the land covered or bears to the full interest in the Leases assigned hereunder; provided, however, that the overriding royalties herein reserved are exclusive of and in addition to any royalties, overriding royalties or payments out of production affecting the Leases as of the Effective Time. It is expressly agreed that operations, if any, on the Leases and the extension and duration thereof, as well as the preservation of the Leases by rental payments or otherwise, shall be solely at the will and discretion of Assignee or any successor owner of the working interest in the Leases. The Overriding Royalty Interest hereby reserved is subject to the rights conferred on the lessees (now Assignee) by said Leases to pool or unitize the lands covered thereby; and neither the joinder nor consent by XH shall be required in connection with any such pooling or unitization. Where oil and/or gas is produced from any unit so formed, XH shall receive on production from such unit only such portion of the overriding royalty stipulated herein, as the amount of surface acreage of the land affected by such overriding royalty and placed in said unit bears to the total surface acreage included in the unit, unless some other formula for appointment of production is adopted for the unit and in such case the formula shall be used.

XH upon notice in writing to Assignee, shall have the right to audit Assignee's accounts and records relating to the Overriding Royalty Interest reserved herein and any other records related to the determination of the amounts due XH for any calendar year within the twenty-four (24) month period following the end of such calendar year.

The Overriding Royalty Interest is expressly subject to the terms and provisions of any of the Related Agreements, to the extent and only to the extent that such terms and provisions contractually apply to and prohibit the establishment of an overriding royalty interest affecting any of the Leases. If pursuant to the terms of any Related Agreement all or a portion of Assignee's interest in a Lease, or all or a portion of its interest in the production therefrom, is forfeited or assigned to one or more other working interest owners, either permanently or for a stipulated period, because Assignee fails to participate in any operation or operations, then to the extent that such forfeited or assigned interest is subject to and burdened by the Overriding Royalty Interest, the working interest so assigned or forfeited by Assignee shall be free and clear of such Overriding Royalty Interest for the period of such forfeiture or assignment of overriding royalty interests. The Overriding Royalty Interest will become effective again when the interest is reassigned or reverts back to Assignee, and Assignee shall pay such Overriding Royalty Interest as provided in this Section 1.08. Further, to the extent any Related Agreement establishes security rights in favor of the parties thereto, the Overriding Royalty Interest conveyed herein shall be subordinated to such security rights. For the purposes of this Assignment, "Related Agreements" shall mean all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements concerning or pertaining to the Interests, to the extent that they are binding on XH or its successors or assigns.

It is understood and agreed that the Overriding Royalty Interests reserved herein, will be a permanent burden on the Leases subject to the provisions of this Section 1.08, and will continue in effect as to each Lease for so long as each Lease remains in effect. In addition in the event Assignee secures a renewal or extension for any such Leases, covering all or any part of

the land previously covered thereby, then the interests reserved herein will apply to such renewed or extended Lease. A "renewal" or "extension" of a Lease as those terms are used therein shall mean any Lease or Leases covering all or a part of the land covered by the Leases that is executed by Assignee within twelve (12) months after termination of any Lease, or the next ensuing Federal or state lease sale pertaining to all or any part of the land previously covered by a Lease, whichever may come first.

      1.09.    <u>Governmental Transfers.</u>  Where separate transfers of any of the Properties have been, or will  be, executed for filing with and approval by applicable governmental authorities, any such separate transfer (a) shall not constitute an additional assignment or conveyance of the affected Properties, (b) shall not constitute an additional reservation of the Overriding Royalty Interest provided for in this Assignment and (c) shall not modify any of the terms, covenants and conditions, or limitations on warranties, set forth in this Assignment, and are not intended to create and shall not create any representations, warranties or additional covenants of or by either of the parties to this Assignment.

## ARTICLE 2.

      Ad valorem taxes assessed against the Properties for the year of the Effective Time are apportioned between XH and Assignee as of the Effective Time.

## ARTICLE 3.

      Assignee will comply with all rules, regulations, statutes, and laws applicable to Assignee's ownership or operation of the Properties. Except to the extent specifically excepted or reserved by XH in this Assignment or in the Purchase and Sale Agreement (as defined hereafter), Assignee accepts this Assignment and assumes all XH's obligations and liabilities under all oil, gas, and mineral leases, assignments, subleases, farmout agreements, unit agreements, joint operating agreements, pooling agreements, letter agreements, easements, rights-of-way, gathering and transportation agreements, sales agreements, and other agreements (including compliance with express and implied covenants and payment of costs, rentals, shut-in-payments, minimum royalties, and production royalties), to the extent that these obligations and liabilities concern or pertain to the Properties and are binding on XH or its successors or assigns. Assignee's obligations under this article apply to all applicable instruments, whether recorded or not.

## ARTICLE 4.

      Assignee acknowledges that the Interests and Properties have been used for exploration, development, and production of oil and gas and that there may be petroleum, produced water, wastes, or other materials located on or under the Properties or associated with the Interests. Equipment and sites included in the Interests or Properties may contain asbestos, hazardous substances, or naturally occurring radioactive material ("NORM"). NORM may affix or attach itself to the inside of wells, materials, and equipment as scale, or in other forms; the wells, materials, and equipment located on the Properties or included in the Interests may contain NORM and other wastes or hazardous substances; and NORM-containing material and other wastes or hazardous substances may have been buried, come in contact with the soil, or

otherwise been disposed of on the Properties. Special procedures may be required for the remediation, removal, transportation, or disposal of wastes, asbestos, hazardous substances, and NORM from the Interests and Properties.

Assignee will store, handle, transport, and dispose of or discharge all material, substances, and wastes from the Properties (including produced water, drilling fluids, NORM, and other wastes), whether present before or after the Effective Time, in accordance with applicable local, state, and federal laws and regulations. Assignee will keep records of the types, amounts, and location of materials, substances, and wastes that are stored, transported, handled, discharged, released, or disposed of onsite and offsite. When any lease terminates, an interest in which has been assigned under this Assignment, Assignee will take additional testing, assessment, closure, reporting, and remedial action with respect to the Properties as is necessary to satisfy all local, state, and federal requirements directed in effect at that time and necessary to restore the Properties.

## ARTICLE 5.

Assignee recognizes, and will either perform or assure that performance is accomplished properly and in accordance with applicable law and the obligations and liabilities described in Article 3, all obligations to abandon, restore, and remediate the Properties and the Interests, whether arising before or after the Effective Time, including obligations, as applicable, to:

a) obtain plugging exceptions in the operator's name for each well located on the Properties (abandoned and unabandoned) with a current plugging exception or permanently plug and abandon each well;

b) plug, abandon, and if necessary, reabandon each well located on the Properties (abandoned and unabandoned);

c) remove all equipment and facilities, including flowlines, pipelines and platforms;

d) close all pits; and

e) restore the surface, subsurface, and offshore sites associated with the Interests and Properties.

Assignee will take all necessary steps to ensure that Assignee is recognized as the owner and, if applicable, operator of the Properties by all appropriate parties, including any regulatory commission, body or board with jurisdiction. If XH is the principal on any financial assurance (including a bond) relating to the Properties, which financial assurance is required by any law, rule, or regulation, then Assignee will secure new financial assurance in the required amount and supply it to the regulatory body requiring the financial assurance, to the end that XH's financial assurance is released and discharged.

Assignee will pay all costs and expenses associated with the obligations assumed under this article. XH may require Assignee to maintain a performance bond in an amount, in a form, and from an institution acceptable to XH, to guarantee Assignee's obligations, all as provided for in the Purchase and Sale Agreement as defined hereafter.

## ARTICLE 6.

XH MAKES NO WARRANTY OF ANY TYPE IN THIS ASSIGNMENT, WHETHER EXPRESS, STATUTORY, OR IMPLIED. ASSIGNEE HAS INSPECTED AND HAS SATISFIED ITSELF AS TO THE CONDITION OF THE PROPERTIES. THIS ASSIGNMENT IS MADE BY XH AND ACCEPTED BY ASSIGNEE ON AN "AS IS, WHERE IS" BASIS. XH DISCLAIMS ALL WARRANTIES, INCLUDING:

(a) AS TO THE FITNESS OR CONDITION OR MERCHANTABILITY OF THE MATERIALS, EQUIPMENT, OR FACILITIES CONVEYED;

(b) AS TO THE PHYSICAL, OPERATIONAL, OR ENVIRONMENTAL CONDITION OF THE PROPERTIES;

(c) AS TO THE OIL, GAS, AND OTHER HYDROCARBON OPERATIONS OF THE PROPERTIES COVERED BY THE TERMS AND CONDITIONS OF ANY LEASES OR OTHER AGREEMENTS THAT ARE A PART OF THE PROPERTIES;

(d) AS TO THE ISSUANCE, REISSUANCE, OR TRANSFER OF ANY PERMITS RELATING TO ANY OF THE PROPERTIES;

(e) AS TO ANY CONSENT OR APPROVAL REQUIRED UNDER ANY INSTRUMENT DESCRIBED IN ARTICLE III; AND

(f) AS TO TITLE, EITHER EXPRESS, IMPLIED, OR STATUTORY.

## ARTICLE 7.

The terms "Claim" or "Claims" mean, collectively, claims, demands, causes of action, and lawsuits asserted or filed by any person, including an artificial or natural person, a local, state, or federal governmental entity; a person holding rights under any instrument described in Article 3; an Associated Party of XH or Assignee; or a third party. The term "Liability" or "Liabilities" means, collectively, all damages (including consequential and punitive damages), including those for personal injury, death, or damage to personal or real property (both surface and subsurface) and costs for remediation, restoration, or clean up of contamination, whether the injury, death, or damage occurred or occurs on or off the Properties by migration, disposal, or otherwise; losses; fines; penalties; expenses; costs to remove or modify facilities on or under the Properties; plugging liabilities for all wells; attorneys' fees; court and other costs incurred in defending a Claim; liens; and judgments; in each instance, whether these damages and other costs are known or unknown, foreseeable or unforeseeable on the Effective Time. The term "Associated Parties" means successors, assigns, directors, officers, employees, agents, contractors, subcontractors, and affiliates.

Assignee releases and discharges XH and its Associated Parties from each Claim and Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S RELEASE AND DISCHARGE OF XH AND ITS ASSOCIATED PARTIES INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XH OR ANY OF ITS ASSOCIATED PARTIES

OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY, and this release and discharge are binding on Assignee and its successors and assigns The only exception to Assignee's release and discharge of XH and its Associated Parties is that (a) Assignee does not release Claims against contractors and subcontractors for work regarding the Interests and Properties, and (b) Assignee does not release or discharge Claims that XH breached the Purchase and Sale Agreement as defined hereafter.

Assignee covenants not to sue XH or its Associated Parties with regard to any Claim or Liability relating to the Interests, Properties, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S COVENANT NOT TO SUE XH OR ITS ASSOCIATED PARTIES INCLUDES CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XH OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLIES REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY, and this covenant is binding on Assignee and its successors and assigns. The only exception to Assignee's covenant not to sue XH or its Associated Parties is that Assignee does not covenant not to sue contractors and subcontractors for work regarding the Interests and Properties.

Assignee will indemnify, defend, and hold XH and its Associated Parties harmless from each Claim or Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable. ASSIGNEE'S OBLIGATIONS TO INDEMNIFY, DEFEND, AND HOLD XH AND ITS ASSOCIATED PARTIES HARMLESS INCLUDE CLAIMS AND LIABILITIES CAUSED IN WHOLE OR IN PART BY THE GROSS, SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE OF XH OR ANY OF ITS ASSOCIATED PARTIES OR ANY THIRD PARTY AND APPLY REGARDLESS OF WHO MAY BE AT FAULT OR OTHERWISE RESPONSIBLE UNDER ANY OTHER CONTRACT OR ANY STATUTE, RULE OR THEORY OF LAW INCLUDING THEORIES OF STRICT LIABILITY. The only exception to Assignee's obligations to indemnify, defend, and hold XH and its Associated Parties harmless is (a) a judgment rendered or settlement reached in a lawsuit filed before the Effective Time, but only to the extent that the acts or omissions that gave rise to the cause of action are attributable to the conduct or operations or ownership of XH or its Associated Parties before the Effective Time and (b) a Claim that XH breached the Purchase and Sale Agreement defined hereafter. Assignee's obligations are binding on Assignee and its successors and assigns.

Assignee's duty to release, discharge, not to sue, indemnify, defend, and hold XH and its Associated Parties harmless includes Claims or Liabilities arising in any manner from the physical or environmental condition of the Interests and Properties, including Claims or Liabilities under applicable laws and regulations now enacted or that may be enacted in the future, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time.

## ARTICLE 8.

Assignee represents that it has acquired the Properties for its own benefit and account and has not acquired the Properties with the intent of distributing fractional undivided interests in them or otherwise selling them in a manner that would be subject to regulation by federal or state securities laws. If Assignee sells, transfers, or otherwise disposes of the Properties or fractional undivided interests in them in the future, it will do so in compliance with applicable federal and state laws.

This Assignment is subject to the terms of the Purchase and Sale Agreement between XH, among others, and Assignee concerning the Properties, dated effective as of August 1, 2011 (the "Purchase and Sale Agreement"). In the event of a conflict or inconsistency between the terms and provisions of this Assignment and those set forth in the Purchase and Sale Agreement, the terms and provisions in the Purchase and Sale Agreement shall control. The Purchase and Sale Agreement provides, in part, that the Parties will correct errors that may have been made in the conveyancing instruments; that XH may require that all or a part of the Properties be reassigned under certain circumstances; and that disputes concerning the Properties or the transaction will be resolved by alternate dispute resolution, to the extent, if any, that Assignee has not released, discharged, or covenanted not to sue XH or its Associated Parties.

XH, upon notice in writing to Assignee, shall have the right to access the Assignee's offices, facilities, work sites, warehouses, books, records, correspondence, instructions, plans, drawings, receipts, vouchers, financial accounts, data stored in computer files or microfiche and personnel to audit Assignee's accounts and records relating to the retained royalty interest, including any hedge agreements, facilities used for the measurement of production from the properties, for any calendar year within the twenty-four (24) month period following the end of such calendar year. The same audit rights are to extend to subcontractors. XH shall maintain supporting data and accounting records consistent with generally accepted accounting principles, and the employees and agents of company shall have the right to reproduce and retain for the purpose of audit, any of these documents. XH shall not be liable for any of Assignee's contractor's or subcontractor's costs resulting from an audit hereunder.

The provisions of this Assignment are severable. If a court of competent jurisdiction finds any part of this Assignment to be void, invalid, or otherwise unenforceable (except for the release, waiver, defense, and indemnity provisions), this holding will not affect other portions that can be given effect without the invalid or void portion.

All covenants and agreements in this Assignment (except Article 8) bind and inure to the benefit of the heirs, successors, and assigns of XH and Assignee; are covenants running with the land; and are effective as stated, whether or not the covenants and agreements are memorialized in assignments and other conveyances executed and delivered by the Parties and their respective heirs, successors, and assigns from time to time.

Recitation of or reference to any agreement or other instrument in this Assignment, including its exhibits, does not operate to ratify, confirm, revise, or reinstate the agreement or instrument if it has previously lapsed or expired.

This Assignment and its performance will be construed in accordance with, and governed by, the internal laws of the State of Texas, without regard to the choice of law rules of any jurisdiction, including Texas.

The word <u>includes</u> and its syntactical variants mean "includes, but not limited to" and its corresponding syntactical variants. The rule of *ejusdem generis* may not be invoked to restrict or limit the scope of the general term or phrase followed or preceded by an enumeration of particular examples.

All exhibits referenced in and attached to this Assignment are incorporated into it.

[Intentionally Left Blank]

This instrument may be executed in counterparts, all of which together will be considered one instrument.

Executed in the presence of the undersigned witnesses on the dates indicated below, but effective as of the Effective Time.

**WITNESSES:**

Print or Type Name: James F. Wiggins

Print or Type Name: Clyde Vanderbrouk

**XH, LLC**

**BY:**

**NAME:** James L. Death

**TITLE:** Attorney-in-Fact

**DATE:** August 31, 2011

Print or Type Name: James F. Wiggins

Print or Type Name: Clyde Vanderbrouk

**XH, LLC**

**BY:**

**NAME:** Christopher N. Claeys

**TITLE:** Attorney-in-Fact

**DATE:** August 31, 2011

Print or Type Name: John H. Smith

Print or Type Name: Lambert M. Laperouse

**Dynamic Offshore Resources, LLC**

**BY:**

**NAME:** G.M. McCarroll

**TITLE:** President and Chief Executive Officer

**DATE:** August 31, 2011

-13-

STATE OF TEXAS     §
    §
COUNTY OF HARRIS     §

     This instrument was acknowledged before me on August 31, 2011, by James L. Death, Attorney-in-Fact, and Christopher N. Claeys, Attorney-in-Fact, of XH, LLC, a Delaware limited liability company, on behalf of said limited liability company.

Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____



SIRA M PINEIRO
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
APRIL 6, 2012

STATE OF TEXAS     §
    §
COUNTY OF HARRIS     §

     This instrument was acknowledged before me on August 31, 2011, by G.M. McCarroll, President and Chief Executive Officer of Dynamic Offshore Resources, LLC, a Delaware limited liability company, on behalf of said limited liability company.

Notary Public, State of Texas
Notary Name: _____
My Commission expires on _____

ROBYN E ARNOLD
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MAY 14, 2014

-14-

**EXHIBIT A**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF INTERESTS**

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3416-0001-00 | **Ship Shoal 204, OCS-G 1520**<br>All of Block 204, Ship Shoal Area | Record Title | 5.60514% | XH, LLC |
| 3418-0001-00 | **Ship Shoal 207, OCS-G 1523**<br>All of Block 207, Ship Shoal Area | Record Title | 6.18214% | XH, LLC |
| | All of Block 207, Ship Shoal area, INSOFAR AND ONLY INSOFAR, as it pertains to all rights below 15,000' down to 99,999' TVD | Operating Rights | 6.18214% | XH, LLC |
| | **Ship Shoal 207 Field Unit (C-6/JS Sand) Federal Unit 891020231**<br>A Unit Area comprised of portions of OCS-G 1522 covering Ship Shoal Block 206 and OCS-G 1523 covering Ship Shoal Block 207 as to the Unitized Reservoir described as the C-6/JS Sand Reservoir, found in the dual induction electrical log of the OCS-G 1523 Well A-1 between the measured depths of 10,615' and 10,793'. | Federal Unit | 6.08364% | XH, LLC |
| 3419-0001-00 | **Ship Shoal 216, OCS-G 1524**<br>All of Block 216, Ship Shoal Area | Record Title | 5.77000% | XH, LLC |

EXHIBIT A

-1-

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3421-0001-00 | **Ship Shoal 291, OCS-G 2923**<br>N/2NW/4; SW/4NW/4; NW/4SE/4NW4 of Block 291, Ship Shoal Area, South Addition, INSOFAR, as it pertains to all rights and horizons from the surface down to and including 100' below the stratigraphic equivalent of 6110 feet subsea as drilled and logged in the Hall-Houston Oil Company OCS-G 2923 No. 4 Well (currently named the B-1 Well). | Operating Rights | 7.01463% | XH, LLC |
| 3443-0001-00 | **South Marsh Island 269, OCS-G 2311**<br>All of Block 269, South Marsh Island Area, North Addition | Record Title | 9.06733% | XH, LLC |
| 3444-0001-00 | **South Marsh Island 281, OCS-G 2600**<br>All of Block 281, South Marsh Island Area, North Addition | Record Title | 10.47658% | XH, LLC |

**EXHIBIT A**

**EXHIBIT A-1**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC**

## CONTRACTS

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0253742 | Ship Shoal Area | 204 | 1520 | Lease | July 1, 1967 | United States of America | Hamilton Brothers Oil Company, et al | 1-Jul-67 |
| 0293021 | Ship Shoal Area | 204 | 1520 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0293021 | Ship Shoal Area | 204 | 1520 | Letter Agreement | February 8, 2006 | Apache Corporation | Chevron U.S.A. Inc., et al | SS 204 A36ST1 Non-Consent 500% Penalty |
| | | | | | | | | |
| 0253744 | Ship Shoal Area | 207 | 1523 | Lease | July 1, 1967 | United States of America | General Crude Oil Company, et al | 1-Jul-67 |
| 0350621 | Ship Shoal Area | 207 | 1523 | Unit Operating Agreement | April 1, 1981 | Conoco, Inc. | Atlantic Richfield Company, et al | April 1, 1981  C-6/JS Sand Reservoir |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418888 | Ship Shoal Area | 207 | 1523 | Unit Plan #14-08-0001-20231 | April 1, 1981 | Conoco, Inc. | Atlantic Richfield Company, et al | #14-08-0001-20231 |
| 0293057 | Ship Shoal Area | 207 | 1523 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0324109 | Ship Shoal Area | 207 | 1523 | Production Handling Agreement | October 26, 1994 | Norcen Explorer, Inc., et al | Norcen Explorer, Inc., et al | October 26, 1994 SS 207 A"/SS 190" |
| 0293240 | Ship Shoal Area | 207 | 1523 | Joint Development Agreement, as amended | November 16, 1994 | Norcen Explorer Inc. et al | Norcen Offshore Properties Ltd., et al | November 16, 1994 SS 206 & 207 |
| | | | | | | | | |
| 0253745 | Ship Shoal Area | 216 | 1524 | Lease | July 1, 1967 | United States of America | General Crude Oil Company, et al | 1-Jul-67 |
| 0293060 | Ship Shoal Area | 216 | 1524 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| | | | | | | | | |

**EXHIBIT A-1**

-4-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0253746 | Ship Shoal Area, South Addition | 291 | 2923 | Lease | December 1, 1974 | United States of America | Ashland Oil, Inc., et al | 1-Jun-62 |
| 0419103 | Ship Shoal Area, South Addition | 291 | 2923 | Farmout Agreement, as amended, and Operating Agreement | October 1, 1991 | Torch Energy Advisors Incorporated, et al | Hall-Houston Oil Company | 1-Jun-62 |
| 0295476 | Ship Shoal Area, South Addition | 291 | 2923 | Purchase and Sale Agreement | March 1, 2008 | Maritech Resources, Inc., et al | Montforte Exploration L.L.C., et al | 1-Jun-62 |
| | | | | | | | | |
| 0293161 | South Marsh Island Area, North Addition | 268 | 2310 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0314492 | South Marsh Island Area, North Addition | 268 | 2310 | Space Lease and Production Handling and Operations Agreement | August 14, 1995 | Norcen Explorer, Inc. et al | Norcen Explorer, Inc. et al | 8/14/95 Space Lse & PH & Ops Agmt SM 280 @ 268 A |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0420017 | South Marsh Island Area, North Addition | 268 | 2310 | Contract/Connection Agreement | January 18, 1996 | Norcen Explorer, Inc. | The George R. Brown Partnership, et al | Letter Agreement 12 Producer PL Seg 4008" |
| 0314476 | South Marsh Island Area, North Addition | 268 | 2310 | Production Handling Agreement | May 1, 2007 | Apache Corporation, et al | Helis Oil & Gas Company, L.L.C., et al | 4/18/07 SM 265 Prod @ 268 A |
| 0316079 | South Marsh Island Area, North Addition | 268 | 2310 | Production Handling Agreement | January 1, 2008 | Apache Corporation, et al | Helis Oil & Gas Company, L.L.C., et al | 1/1/08 SM 257 No. 1 @ 268 A |
| | | | | | | | | |
| 0253772 | South Marsh Island Area, North Addition | 269 | 2311 | Lease | January 1, 1973 | United States of America | TransOcean Oil, Inc. et al | 1-Jan-73 |
| 0293157 | South Marsh Island Area, North Addition | 269 | 2311 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |

**EXHIBIT A-1**

-6-

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 0293183 | South Marsh Island Area, North Addition | 280 | 14456 | Unit Operating Agreement | June 15, 2001 | Texaco Exploration and Production Inc. | W&T Offshore, Inc., et al | SM 280/281 Pooled Unit "I" Platform |
| | | | | | | | | |
| 0253773 | South Marsh Island Area, North Addition | 281 | 2600 | Lease | April 1, 1974 | United States of America | Hamilton Brothers Oil Company, et al | 1-Apr-74 |
| 0293162 | South Marsh Island Area, North Addition | 281 | 2600 | Operating Agreement, as amended | May 1, 1991 | Texaco Exploration and Production Inc. | Mobil Oil Exploration & Producing Southeast Inc., et al | 1-May-91 |
| 0293182 | South Marsh Island Area, North Addition | 281 | 2600 | Joint Development Agreement | June 15, 2001 | RME Petroleum Company, et al | RME Petroleum Company, et al | June 15, 2001 (SM 280/281 Pooled Unit) |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0293183 | South Marsh Island Area, North Addition | 281 | 2600 | Unit Operating Agreement | June 15, 2001 | Texaco Exploration and Production Inc. | W&T Offshore, Inc., et al | SM 280/281 Pooled Unit "I" Platform |
| | | | | | | | | |
| 0253756 | West Cameron Area | 171 | 1997 | Lease | January 1, 1971 | United States of America | Placid Oil Co., et al | |
| 0293110 | West Cameron Area | 171 | 1997 | Joint Operating Agreement, as amended | January 1, 1971 | Transocean Oil, Inc. | Placid Oil Co., et al | Amendments dated July 25, 1979, October 21, 1982, January 1, 1989, and February 21, 1989 |
| 0418897 | West Cameron Area | 171 | 1997 | Letter Agreement | November 5, 1997 | Hunt Petroleum Corporation, et al | Captiva Energy, Inc. | Includes Election Letter dated November 10, 1997 |

**EXHIBIT A-1**

| XTO Agmt. # | Area | Block | OCS-G / ST Lse # | Agreement Type | Agmt Date | Party 1 | Party 2 | File Description |
|---|---|---|---|---|---|---|---|---|
| 0418935 | West Cameron Area | 171 | 1997 | Natural Gas Processing Agreement (as described in Exhibits A&B of Assignment and Bill of Sale attached to Assignment of Record Title Interest from Chevron USA to Hunt Petroleum Corporation, et al) | March 1, 2002 | Chevron U.S.A. Inc., et al | Targa Midstream Services, Limited Partnership | Dedication of Chevron interest |
| Pending | West Cameron Area | 171 | 1997 | Assignment and Bill of Sale | October 4, 2010 | XH, LLC, et al | Conn Energy, Inc., et al | Attached as Exhibit "A" to MMS-150 Assignment of Record Title Interest pending BOEMRE approval - executed pursuant to Notice of Surrender dated September 4, 2010 |
|  |  |  |  |  |  |  |  |  |

**EXHIBIT A-1**

**EXHIBIT A-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE,**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC**
**AND DYNAMIC OFFSHORE RESOURCES, LLC**

**DESCRIPTION OF WELLS**

**SHIP SHOAL BLOCK 204**
**XH, LLC**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SS204A | OCS -G- 01520 SS 204 | OCS-G- 01520 SS 204 A-06 | A-06 | SHIP SHOAL 204 | Offshore Louisiana | 177110081300D03 | APACHE CORPORATION | | | SI | OIL |
| SS204A | OCS -G- 01520 SS 204 | OCS-G- 01520 SS 204 A-06D | A-06D | SHIP SHOAL 204 | Offshore Louisiana | 177110081300D02 | APACHE CORPORATION | | | SI | OIL |
| SS204A | OCS -G- 01520 SS 204 | OCS-G- 01520 SS 204 A-08 | A-08 | SHIP SHOAL 204 | Offshore Louisiana | 177110083000S02 | APACHE CORPORATION | 401770 | | PDP | OIL |
| SS204A | OCS -G- 01520 SS 204 | OCS-G- 01520 SS 204 A-14 | A-14 | SHIP SHOAL 204 | Offshore Louisiana | 177110084200D01 | APACHE CORPORATION | | | SI | OIL |
| SS204A | OCS -G- 01520 SS 204 | OCS-G- 01520 SS 204 A-14D | A-14D | SHIP SHOAL 204 | Offshore Louisiana | 177110084200D02 | APACHE CORPORATION | | | SI | OIL |
| SS204A | OCS -G- 01520 SS 204 | OCS-G- 01520 SS 204 A-15ST1 | A-15ST1 | SHIP SHOAL 204 | Offshore Louisiana | 17711200340lS04 | APACHE CORPORATION | 402033 | | PDP | GAS |
| SS204A | OCS -G- 01520 SS 204 | OCS-G- 01520 SS 204 A-16ST1 | A-16ST1 | SHIP SHOAL 204 | Offshore Louisiana | 17711200540lS01 | APACHE CORPORATION | 402034 | | PDP | OIL |

**EXHIBIT A-2**

-10-

| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-20 | A-20 | SHIP SHOAL 204 | Offshore Louisiana | 177112012600D01 | APACHE CORPORATION | 401771 | SI | OIL |
|---|---|---|---|---|---|---|---|---|---|---|
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-20D | A-20D | SHIP SHOAL 204 | Offshore Louisiana | 177112012600D02 | APACHE CORPORATION | 401771 | PDP | OIL |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-24ST1 | A-24ST1 | SHIP SHOAL 204 | Offshore Louisiana | 177112017701S02 | APACHE CORPORATION | 402035 | PDP | OIL |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-28ST3 | A-28ST3 | SHIP SHOAL 204 | Offshore Louisiana | 177110071003S01 | APACHE CORPORATION | 402036 | PDP | OIL |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-30 | A-30 | SHIP SHOAL 204 | Offshore Louisiana | 177114002801S03 | APACHE CORPORATION | | TA | OIL |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-30D | A-30D | SHIP SHOAL 204 | Offshore Louisiana | 177114002801D02 | APACHE CORPORATION | | TA | OIL |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-31 | A-31 | SHIP SHOAL 204 | Offshore Louisiana | 177110084201S04 | APACHE CORPORATION | | TA | OIL |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-34 | A-34 | SHIP SHOAL 204 | Offshore Louisiana | 177114146700S01 | APACHE CORPORATION | 401772 | PDP | OIL |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-35BP2 | A-35BP2 | SHIP SHOAL 204 | Offshore Louisiana | 177114147402S01 | APACHE CORPORATION | 402037 | PDP | OIL |
| SS204A | OCS-G-01520 SS 204 | OCS-G-01520 SS 204 A-36ST1BP2 | A-36ST1BP2 | SHIP SHOAL 204 | Offshore Louisiana | 177114146803S01 | APACHE CORPORATION | 402038 | PDP | OIL |

**EXHIBIT A-2**

**SHIP SHOAL BLOCK(s) 206/207/216**

**XH, LLC**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SS206E | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 E-01 | E-01 | SHIP SHOAL 207 | Offshore Louisiana | 177114115500S03 | APACHE CORPORATION | 402039 | | PDP | OIL |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-2ST1BP1 | E-2ST1BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114118101S01 | APACHE CORPORATION | 402040 | | PDP | OIL |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-3ST | E-3ST | SHIP SHOAL 207 | Offshore Louisiana | 177114118201S01 | APACHE CORPORATION | | | SI | GAS |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-04 | E-04 | SHIP SHOAL 207 | Offshore Louisiana | 177114141800S01 | APACHE CORPORATION | 402041 | | SI | GAS |
| SS206E | OCS-G-01522 SS 206 | OCS-G-01522 SS 206 E-05 | E-05 | SHIP SHOAL 207 | Offshore Louisiana | 177114142000S01 | APACHE CORPORATION | 402042 | | SI | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-03ST1 | A-03ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177110072801D02 | APACHE CORPORATION | 402044 | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-04 | A-04 | SHIP SHOAL 207 | Offshore Louisiana | 177110075500D01 | APACHE CORPORATION | 401773 | | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-04D | A-04D | SHIP SHOAL 207 | Offshore Louisiana | 177110075500D02 | APACHE CORPORATION | 401773 | | SI | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-06 | A-06 | SHIP SHOAL 207 | Offshore Louisiana | 177110078200D02 | APACHE CORPORATION | | | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-08C | A-08C | SHIP SHOAL 207 | Offshore Louisiana | 177110080700D03 | APACHE CORPORATION | | | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-09D | A-09D | SHIP SHOAL 207 | Offshore Louisiana | 177110082400D02 | APACHE CORPORATION | | | TA | OIL |

**EXHIBIT A-2**

| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-10 | A-10 | SHIP SHOAL 207 | Offshore Louisiana | 177110083900S03 | APACHE CORPORATION | 402045 | TA | GAS |
|---|---|---|---|---|---|---|---|---|---|---|
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-13 | A-13 | SHIP SHOAL 207 | Offshore Louisiana | 177112002500S03 | APACHE CORPORATION | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-15ST1 | A-15ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177112010601S02 | APACHE CORPORATION | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-16ST1 | A-16ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177112011401D03 | APACHE CORPORATION | 402046 | SI | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-18A | A-18A | SHIP SHOAL 207 | Offshore Louisiana | 177112005000D04 | APACHE CORPORATION | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-19 | A-19 | SHIP SHOAL 207 | Offshore Louisiana | 177114009400S02 | APACHE CORPORATION | | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-20 | A-20 | SHIP SHOAL 207 | Offshore Louisiana | 177114010300S04 | APACHE CORPORATION | 402047 | PDP | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-21 | A-21 | SHIP SHOAL 207 | Offshore Louisiana | 177114011000S02 | APACHE CORPORATION | 402048 | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-22ST1 | A-22ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114011301S03 | APACHE CORPORATION | 402049 | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-22DST | A-22DST | SHIP SHOAL 207 | Offshore Louisiana | 177114011301D02 | APACHE CORPORATION | 402049 | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-23B | A-23B | SHIP SHOAL 207 | Offshore Louisiana | 177114013500D04 | APACHE CORPORATION | | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-24 | A-24 | SHIP SHOAL 207 | Offshore Louisiana | 177114014300S01 | APACHE CORPORATION | | TA | OIL |

**EXHIBIT A-2**

-13-

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-25 | A-25 | SHIP SHOAL 207 | Offshore Louisiana | 177114015500S01 | APACHE CORPORATION | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-26ST1BP1 | A-26ST1BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177112001101S04 | APACHE CORPORATION | 402050 | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-27 | A-27 | SHIP SHOAL 207 | Offshore Louisiana | 177110079401D03 | APACHE CORPORATION | 402051 | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-27D | A-27D | SHIP SHOAL 207 | Offshore Louisiana | 177110079401D04 | APACHE CORPORATION | 402051 | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-28ST1 | A-28ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177110077301S01 | APACHE CORPORATION | | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-29ST1BP2 | A-29ST1BP2 | SHIP SHOAL 207 | Offshore Louisiana | 177112001901S03 | APACHE CORPORATION | 402052 | TA | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-30ST1 | A-30ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177110071501D02 | APACHE CORPORATION | | TA | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-31ST2 | A-31ST2 | SHIP SHOAL 207 | Offshore Louisiana | 177114117702S03 | APACHE CORPORATION | 402053 | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-32BP1 | A-32BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114119701S02 | APACHE CORPORATION | 402054 | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-33ST1 | A-33ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114121901D01 | APACHE CORPORATION | 402055 | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-33DST | A-33DST | SHIP SHOAL 207 | Offshore Louisiana | 177114121901D02 | APACHE CORPORATION | | PDP | OIL |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-34 | A-34 | SHIP SHOAL 207 | Offshore Louisiana | 177114122200D01 | APACHE CORPORATION | 401774 | PDP | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-34D | A-34D | SHIP SHOAL 207 | Offshore Louisiana | 177114122200D02 | APACHE CORPORATION | | SI | GAS |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-35ST1 | A-35ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114133301S01 | APACHE CORPORATION | 401870 | PDP | OIL |
| SS207A | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 A-36 | A-36 | SHIP SHOAL 207 | Offshore Louisiana | 177114137700S03 | APACHE CORPORATION | 402056 | PDP | GAS |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-02 | D-02 | SHIP SHOAL 207 | Offshore Louisiana | 177114025400D01 | APACHE CORPORATION | | SI | OIL |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-07BP1 | D-07BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114030300D02 | APACHE CORPORATION | | SI | GAS |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-08 | D-08 | SHIP SHOAL 207 | Offshore Louisiana | 177114032300S02 | APACHE CORPORATION | | SI | GAS |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-09 | D-09 | SHIP SHOAL 207 | Offshore Louisiana | 177114116400D03 | APACHE CORPORATION | 402059 | PDP | GAS |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-09D | D-09D | SHIP SHOAL 207 | Offshore Louisiana | 177114116400D02 | APACHE CORPORATION | | SI | GAS |
| SS207D | OCS-G-01523 SS 207 | OCS-G-01523 SS 207 D-010ST1 | D-10ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114116501S03 | APACHE CORPORATION | 402060 | PDP | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-01 | C-01 | SHIP SHOAL 207 | Offshore Louisiana | 177112009200D02 | APACHE CORPORATION | | SI | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-03A | C-03A | SHIP SHOAL 207 | Offshore Louisiana | 177112014500S03 | APACHE CORPORATION | | SI | OIL |

**EXHIBIT A-2**

| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-04ST1 | C-04ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177112014900D01 | APACHE CORPORATION | 402061 | SI | OIL |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-05A | C-05A | SHIP SHOAL 207 | Offshore Louisiana | 177112017400S03 | APACHE CORPORATION | | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-7ST1 | C-07ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114001201S01 | APACHE CORPORATION | 402062 | PDP | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-09ST1 | C-09ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114003800S01 | APACHE CORPORATION | 402528 | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-10 | C-10 | SHIP SHOAL 207 | Offshore Louisiana | 177114004900S02 | APACHE CORPORATION | | TA | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-11A | C-11A | SHIP SHOAL 207 | Offshore Louisiana | 177114005700S02 | APACHE CORPORATION | | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-12 | C-12 | SHIP SHOAL 207 | Offshore Louisiana | 177114006700S03 | APACHE CORPORATION | | SI | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-14A | C-14A | SHIP SHOAL 207 | Offshore Louisiana | 177114007900S02 | APACHE CORPORATION | 402529 | TA | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-15 | C-15 | SHIP SHOAL 207 | Offshore Louisiana | 177114009000S01 | APACHE CORPORATION | | TA | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-16ST1BP1 | C-16ST1BP1 | SHIP SHOAL 207 | Offshore Louisiana | 177114000101S01 | APACHE CORPORATION | | SI | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-17ST1 | C-17ST1 | SHIP SHOAL 207 | Offshore Louisiana | 177114003001S02 | APACHE CORPORATION | | SI | OIL |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-18 | C-18 | SHIP SHOAL 207 | Offshore Louisiana | 177114028500S01 | APACHE CORPORATION | | TA | GAS |

**EXHIBIT A-2**

| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-19 | C-19 | SHIP SHOAL 207 | Offshore Louisiana | 177114031900D05 | APACHE CORPORATION | | TA | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-20 | C-20 | SHIP SHOAL 207 | Offshore Louisiana | 17711403240S01 | APACHE CORPORATION | | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-21 | C-21 | SHIP SHOAL 207 | Offshore Louisiana | 17711412430S01 | APACHE CORPORATION | 402063 | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-22ST1 | C-22ST1 | SHIP SHOAL 207 | Offshore Louisiana | 17711412720S01 | APACHE CORPORATION | | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-23 | C-23 | SHIP SHOAL 207 | Offshore Louisiana | 177114134600D02 | APACHE CORPORATION | 401775 | SI | GAS |
| SS216C | OCS-G-01524 SS 216 | OCS-G-01524 SS 216 C-24BP2 | C-24BP2 | SHIP SHOAL 207 | Offshore Louisiana | 17711413510 2S02 | APACHE CORPORATION | 402064 | SI | OIL |

**SOUTH MARSH ISLAND BLOCK(s) 268/269/280/281 XH, LLC**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|----------|---------------|----------------|-----------|-------|---------------|---------|----------|---------|------|--------|------|
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 A-02 | A-02 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074007600S05 | APACHE CORPORATION | | | TA | GAS |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 A-07 | A-07 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074013600S01 | APACHE CORPORATION | 18296 (HUNT) | | TA | GAS |
| SMI268A | OCS-G-02310 SMI 268 | OCS-G-02310 SMI 268 A-17B | A-17B | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074016800S03 | APACHE CORPORATION | 401991 | | TA | |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI268A | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 A-21B | A-21B | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018100S03 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-1 | D-1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074020600S01 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-3D | D-3D | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074021600D02 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-4 | D-4 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074022500S01 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-6A | D-6A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024700S02 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-7 | D-7 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074025700S03 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-12 | D-12 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074028700S01 | APACHE CORPORATION | | TA |
| SMI268A | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 D-16ST1 | D-16ST1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029901S02 | APACHE CORPORATION | | TA |
| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-02BP1 | B-02BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074008100S02 | APACHE CORPORATION | 401993 | TA | GAS |
| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-04 | B-04 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074013200S03 | APACHE CORPORATION | | TA | GAS |

**EXHIBIT A-2**

| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-09 | B-09 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074015900S03 | APACHE CORPORATION | | TA | GAS |
|---------|---------|---------|---------|---------|---------|---------|---------|---------|---------|---------|---------|
| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-10ST | B-10ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074017001D02 | APACHE CORPORATION | 401995 | TA | OIL |
| SMI269B | OCS-G-02310 268 | SMI | OCS-G-02310 SMI 268 B-16 | B-16 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074019200S01 | APACHE CORPORATION | | SI | OIL |
| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-17ST | B-17ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074075701S01 | APACHE CORPORATION | 402687 | SI | OIL |
| SMI269B | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 B-19BP1 | B-19BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074088501S02 | APACHE CORPORATION | 401996 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-01 | C-01 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074012500S01 | APACHE CORPORATION | | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-02 | C-02 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074010500S02 | APACHE CORPORATION | 403187 | EOR PENDING | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-03 | C-03 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074013900S01 | APACHE CORPORATION | 401999 | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-04 | C-04 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074014900S02 | APACHE CORPORATION | 402000 | EOR PENDING | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-05 | C-05 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074015300S02 | APACHE CORPORATION | | SI | OIL |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-06 | C-06 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074015800S04 | APACHE CORPORATION | 402001 | SI | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-07 | C-07 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074016500S01 | APACHE CORPORATION | 402002 | EOR PENDING | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-08ST | C-08ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074017701S01 | APACHE CORPORATION | 402003 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-09 | C-09 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018200S04 | APACHE CORPORATION | | SI | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-10ST | C-10ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074020701S01 | APACHE CORPORATION | 402004 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-11ST | C-11ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074022401S01 | APACHE CORPORATION | 402005 | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-12 | C-12 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024100D02 | APACHE CORPORATION | 402006 | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-13BP1 | C-13BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024900S01 | APACHE CORPORATION | 11794 (HUNT) | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-14ST | C-14ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074026901S01 | APACHE CORPORATION | 402007 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-15 | C-15 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074028300S07 | APACHE CORPORATION | 402008 | PDP | GAS |

**EXHIBIT A-2**

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-16BP1 | C-16BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029600S02 | APACHE CORPORATION | 402009 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-17 | C-17 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074030500X01 | APACHE CORPORATION | | TA | |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-19 | C-19 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074034400S03 | APACHE CORPORATION | | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-20 | C-20 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074034900S03 | APACHE CORPORATION | 402011 | SI | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-21 | C-21 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074035500S03 | APACHE CORPORATION | 403188 | EOR PENDING | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-22 | C-22 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036100S02 | APACHE CORPORATION | 403189 | EOR PENDING | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-23ST2 | C-23ST2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036802S01 | APACHE CORPORATION | 401864 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-24 | C-24 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074037300S03 | APACHE CORPORATION | 402012 | PDP | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-25 | C-25 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074083500S03 | APACHE CORPORATION | 402013 | PDP | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-26 | C-26 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074083700S01 | APACHE CORPORATION | 401783 | SI | OIL |

**EXHIBIT A-2**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-27 | C-27 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074085200S02 | APACHE CORPORATION | 402014 | SI | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 C-28BP2 | C-28BP2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074089402S01 | APACHE CORPORATION | 402015 | PDP | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 D-2 | D-2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074021100S01 | APACHE CORPORATION | | TA | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 D-5A | D-5A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074023200S02 | APACHE CORPORATION | | TA | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 D-8A | D-8A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074026600S02 | APACHE CORPORATION | | TA | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 D-9D | D-9D | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074027100D03 | APACHE CORPORATION | | TA | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 D-10A | D-10A | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074027500S02 | APACHE CORPORATION | 402661 | TA | OIL |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 D-11 | D-11 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074028000S01 | APACHE CORPORATION | | TA | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 D-13 | D-13 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029100S02 | APACHE CORPORATION | 402662 | TA | GAS |
| SMI281C | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 D-14 | D-14 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029700S03 | APACHE CORPORATION | | TA | GAS |

**EXHIBIT A-2**

-22-

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SMI281E | OCS-G-02600 281 SMI | OCS-G-02600 SMI 281 E-01 | E-01 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018500S01 | APACHE CORPORATION | | TA | OIL |
| SMI281E | OCS-G-02600 281 SMI | OCS-G-02600 SMI 281 E-01D | E-01D | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074018500D02 | APACHE CORPORATION | | SI | OIL |
| SMI281E | OCS-G-02600 281 SMI | OCS-G-02600 SMI 281 E-02BP2 | E-02BP2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074024600S01 | APACHE CORPORATION | 402016 | TA | OIL |
| SMI281E | OCS-G-02600 281 SMI | OCS-G-02600 SMI 281 E-03 | E-03 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074027800 | APACHE CORPORATION | | TA | |
| SMI281E | OCS-G-02600 281 SMI | OCS-G-02600 SMI 281 E-04 | E-04 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074028500S01 | APACHE CORPORATION | | TA | OIL |
| SMI281E | OCS-G-02600 281 SMI | OCS-G-02600 SMI 281 E-05 | E-05 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074029300S01 | APACHE CORPORATION | 402017 | PDP | OIL |
| SMI281E | OCS-G-02600 281 SMI | OCS-G-02600 SMI 281 E-06ST | E-06ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074030100S01 | APACHE CORPORATION | | TA | GAS |
| SMI281E | OCS-G-02600 281 SMI | OCS-G-02600 SMI 281 E-07 | E-07 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074031600S01 | APACHE CORPORATION | | TA | OIL |
| SMI281E | OCS-G-02600 281 SMI | OCS-G-02600 SMI 281 E-08ST | E-08ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074033100S02 | APACHE CORPORATION | | TA | GAS |
| SMI281E | OCS-G-02600 281 SMI | OCS-G-02600 SMI 281 E-09BP1 | E-09BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074033800S02 | APACHE CORPORATION | 402018 | TA | GAS |

**EXHIBIT A-2**

| SMI281E | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 E-10 | E-10 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074034800S01 | APACHE CORPORATION | | TA | GAS |
|---------|------------------|-----|--------------------------|------|------------------------|--------------------|-----------------|---------------------|--------|-----|-----|
| SMI281E | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 E-11 | E-11 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074035600 | APACHE CORPORATION | | TA | |
| SMI281E | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 E-12BP2 | E-12BP2 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036000S02 | APACHE CORPORATION | | TA | GAS |
| SMI281E | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 E-13 BP1 | E-13BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074036600S01 | APACHE CORPORATION | | TA | OIL |
| SMI281E | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 E-14 | E-14 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074038600 | APACHE CORPORATION | 402616 | TA | OIL |
| SMI269F | OCS-G-02311 269 | SMI | OCS-G-02311 SMI 269 F-01 | F-01 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074080401S01 | APACHE CORPORATION | 401997 | PDP | GAS |
| SMI280I | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 I-01 BP1 | I-01 BP1 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074082601S02 | APACHE CORPORATION | 401998 | PDP | OIL |
| SMI280I | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 I-02ST | I-02ST | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074082701S02 | APACHE CORPORATION | 401862 | PDP | OIL |
| SMI280I | OCS-G-02600 281 | SMI | OCS-G-02600 SMI 281 I-03 | I-03 | SOUTH MARSH ISLAND 269 | Offshore Louisiana | 177074082800S01 | APACHE CORPORATION | 401784 | PDP | OIL |

**EXHIBIT A-2**

**WEST CAMERON BLOCK 171**

**XH, LLC**

| Platform | Lease Block | / | Long Well Name | Well Name | Field | County/Parish | API No. | Operator | XTO No. | Well | Status | Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WC171A | OCS 01997 171 | -G- WC | OCS -G- 01997 WC 171 A-01BP1 | A-01BP1 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004000600D01 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS 01997 171 | -G- WC | OCS -G- 01997 WC 171 A-02C | A-02C | WEST CAMERON BLK 146 | Offshore Louisiana | 177004005100S03 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS 01997 171 | -G- WC | OCS -G- 01997 WC 171 A-3 | A-3 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004005200S01 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS 01997 171 | -G- WC | OCS -G- 01997 WC 171 A-03ST | A-03ST | WEST CAMERON BLK 146 | Offshore Louisiana | 177004005201S05 | CONN ENERGY | 402111 | | PDP | GAS |
| WC171A | OCS 01997 171 | -G- WC | OCS -G- 01997 WC 171 A-04D | A-04D | WEST CAMERON BLK 146 | Offshore Louisiana | 177004006000D02 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS 01997 171 | -G- WC | OCS -G- 01997 WC 171 A-05ST | A-05ST | WEST CAMERON BLK 146 | Offshore Louisiana | 177004006901S01 | CONN ENERGY | 402112 | | SI | GAS |
| WC171A | OCS 01997 171 | -G- WC | OCS -G- 01997 WC 171 A-6 | A-6 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007000S03 | CONN ENERGY | | | SI | GAS |
| WC171A | OCS 01997 171 | -G- WC | OCS -G- 01997 WC 171 A-07C | A-07C | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007100S03 | CONN ENERGY | 402113 | | TA | GAS |
| WC171A | OCS 01997 171 | -G- WC | OCS -G- 01997 WC 171 A-08 | A-08 | WEST CAMERON BLK 146 | Offshore Louisiana | 177004007400S02 | CONN ENERGY | | | SI | |

**EXHIBIT A-2**

| WC171A | OCS -G- WC 01997 171 | OCS -G- 01997 WC 171 A-09 | A-09 | WEST CAMER ON BLK 146 | Offshore Louisiana | 177004007801S0 1 | CONN ENERGY | 402670 | TA | |
| WC171A | OCS -G- WC 01997 171 | OCS -G- 01997 WC 171 A-10D | A-10D | WEST CAMER ON BLK 146 | Offshore Louisiana | 177004007900D0 2 | CONN ENERGY | | SI | |
| WC171A | OCS -G- WC 01997 171 | OCS -G- 01997 WC 171 A-12D | A-12D | WEST CAMER ON BLK 146 | Offshore Louisiana | 177004008800D0 2 | CONN ENERGY | | SI | GAS |
| | OCS -G- WC 01997 171 | OCS -G- 01997 WC 171 B-7 | B-7 | WEST CAMER ON BLK 146 | Offshore Louisiana | 177004009900 | CONN ENERGY | | ST | GAS |

**EXHIBIT A-2**

# EXHIBIT B
## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## ASSIGNMENT AND BILL OF SALE
## DATED EFFECTIVE AS OF AUGUST 1, 2011,
## BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC

THIS PAGE LEFT INTENTIONALLY BLANK

**EXHIBIT B-1**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC**


THIS PAGE LEFT INTENTIONALLY BLANK

**EXHIBIT B-2**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC**


THIS PAGE LEFT INTENTIONALLY BLANK

**EXHIBIT B-3**
**ATTACHED TO AND MADE A PART OF THAT CERTAIN**
**ASSIGNMENT AND BILL OF SALE**
**DATED EFFECTIVE AS OF AUGUST 1, 2011,**
**BETWEEN XH, LLC AND DYNAMIC OFFSHORE RESOURCES, LLC**

## DESCRIPTION OF PLATFORMS

| XTO # | PLATFORM NAME | OPERATOR | STATE |
|-------|---------------|----------|-------|
| N/A | PLATFORM SMI 268 A Prod | APACHE CORPORATION | LA |
| 703425 | PLATFORM SMI 268 A | APACHE CORPORATION | LA |
| 703423 | PLATFORM SMI 268 D | APACHE CORPORATION | LA |
| 703426 | PLATFORM SMI 269 B | APACHE CORPORATION | LA |
| N/A | PLATFORM SMI 269 F | APACHE CORPORATION | LA |
| 703410 | PLATFORM SMI 280 I | APACHE CORPORATION | LA |
| 703341 | PLATFORM SMI 281 C | APACHE CORPORATION | LA |
| 703424 | PLATFORM SMI 281 E | APACHE CORPORATION | LA |
| 703443 | PLATFORM SS 204 A | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 204 A-Gen | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 204 A-Prod | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 206 E | APACHE CORPORATION | LA |
| 703433 | PLATFORM SS 207 A | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 207 A-Comp | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 207 A-Drill | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 207 A-Mantis | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 207 A-Prod | APACHE CORPORATION | LA |
| 703431 | PLATFORM SS 207 D | APACHE CORPORATION | LA |
| N/A | PLATFORM SS 207 DWPF | APACHE CORPORATION | LA |
| 703407 | PLATFORM SS 216 C | APACHE CORPORATION | LA |
| N/A | PLATFORM WC 171 A | CONN ENERGY INC. | LA |
| N/A | PLATFORM WC 171 A - AUX 1 | CONN ENERGY INC. | LA |
| N/A | PLATFORM WC 171 A - AUX 2 | CONN ENERGY INC. | LA |