UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § § | (Jointly Administered) |

**GENESIS ENERGY, L.P.'S OBJECTION TO NOTICE TO CONTRACT PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE SCHEDULE OF ASSUMED CONTRACTS AND CURE AMOUNTS [Docket Nos. 1395 & 1456]**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Genesis Energy, L.P. and its affiliates, High Island Offshore System, L.L.C., Poseidon Oil Pipeline Company, L.L.C., GEL Offshore Pipeline, LLC and Manta Ray Gathering Company, L.L.C. (collectively, "***Genesis***") hereby submit this Objection ("***Objection***") to the Notice ("***Notice***") to Contract Parties to Executory Contracts and Unexpired Leases of the Schedule of Assumed Contracts and Cure Amounts [Docket Nos. 1395 & 1456] and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      The Notice coupled with the Plan create a fundamental lack of clarity as to how Genesis will be provided adequate assurance of future performance or otherwise will be protected

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

1

in the context of an assumed contract under Section 365 of the Bankruptcy Code and then purportedly assumed and assigned pursuant to various divisive mergers.  There is no roadmap in the Plan that provides the necessary detail to ensure this chosen path complies with applicable law and provides adequate due process to the counterparties being subjected to this treatment.  For example, and without limitation, it is not clear which entity is assuming any particular contract and responsible for providing adequate assurance of future performance.  In addition, the Debtors have conveniently provided wholesale zero cure amounts for hundreds of contracts, including the Genesis Contracts,  thereby requiring Genesis to incur resources to correct the record and identify that there are indeed amounts due and owing under the Genesis Contracts that will be required to be paid as a condition precedent to assumption and assignment.

2. In summary, Genesis supports the efforts of Newco to restructure and reorganize successfully. Genesis does not have any issue with the assumption and assignment mechanics with regard to Newco and the only matter in this context is settling up on the appropriate cure claim. However, there is a fundamental lack of information and due process with regard to what is happening with the executory contracts being subjected to this bifurcated approach of Section 365 of the Bankruptcy Code and then assumed and allocated pursuant to divisive mergers.  Genesis has made multiple attempts through both business and legal channels to engage in a meaningful dialogue with the Debtors to get on the same page as to how these contracts will work in the practical and legal sense and how it will unfold as part of the wind down operations of these unique entities such as FWE I, FWE III and FWE IV.  Under a divisive merger scenario, the assets, property, rights, series, debts, liabilities and duties allocated between the parties to the merger must be reasonably identified such that the identity of such assets, property, rights, series, debts, liabilities and duties of each party are objectively determinable. This level of identification has not

been provided to date either formally or informally. Genesis remains available to attempt to resolve these matters in advance of the confirmation hearing currently rescheduled for June 18, 2021. Genesis would normally expect to have substantive dialogue with its business counterparty with regard to future operations as the provider of gathering and midstream services.

## FACTUAL AND PROCEDURAL HISTORY

3. On April 15, 2021, the Debtors filed the solicitation version of the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors [Docket No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "***Plan***").

4. In accordance with Section 8.1 of the Plan and sections 365(a) and 1123 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date of the Plan, all of the Debtors' executory contracts and unexpired leases shall be deemed rejected unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in Sections 8.4 or 8.5 of the Plan; or (v) is identified for assumption on the Schedule of Assumed Contracts, attached to the Notice as Exhibit A, which identifies executory contracts or unexpired leases proposed to be assumed or assumed and assigned (as may be amended, supplemented, or modified, the "***Schedule of Assumed Contracts***"). The Notice states in note 8 that the "proposed treatment set forth on the Scheduled of Assumed Contracts is for informational purposes only. In the event of any conflict between any of the Credit Bid Purchase Agreement, the Definitive Documents or any other documents relating to any Plan

of Merger (collectively, the "Transaction Documents"), on the one hand, and this Schedule of Assumed Contracts, the applicable Transaction Documents shall control."

## GENESIS

5. Genesis Energy, L.P. is a publicly traded, master limited partnership headquartered in Houston, Texas. It owns and operates midstream assets in four business segments: offshore pipeline transportation, sodium minerals and sulfur services, onshore facilities and transportation, and marine transportation. Its operations are located primarily in the Gulf Coast region of the United States, Wyoming, and the Gulf of Mexico.

6. Genesis' primary business strategy is to provide an integrated suite of services to refiners, crude oil and natural gas producers, and industrial and commercial enterprises. Its businesses include supporting long lived, world class oil developments of integrated and large independent energy companies in the Gulf of Mexico, producing, transporting, and marketing bulk and specialty chemicals with no known substitutes and providing strategic transportation into refinery centric demand centers.

7. Genesis, including its affiliates, has numerous gathering and midstream contracts with the Debtors. With respect to the contracts that the Debtors intend to reject, Genesis reserves all of its rights, including by opting-out of any third party releases. Further, Genesis intends to assert the appropriate rejection damage claims and raise any regulatory or environmental matters at the appropriate time.

8. Debtors have included numerous contracts, which have Genesis as a counterparty, on their Schedule of Assumed Contracts ("*Genesis Contracts*"). See **Exhibit A** attached hereto and incorporated herein reference. All of the contracts were conveniently labeled with a zero cure cost.

**OBJECTIONS**

A.  **No Adequate Assurance of Future Performance**

9.  The assignee(s) of the Genesis Contracts have not met their burden of adequate assurance of future performance in the context of assumption and assignment in connection with divisive mergers.

10.  The bankruptcy code allows a trustee to assume or reject any executory contract of the debtor with the bankruptcy court's approval. See 11 U.S.C. § 365 (2000). Because 11 U.S.C. § 1107(a) gives a debtor-in-possession most rights of a trustee, a debtor-in-possession may assume an executory contract with bankruptcy court approval. See Id. § 1107(a). Under § 365(b)(1), a debtor-in-possession that has previously defaulted on an executory contract may not assume that contract unless it: (A) cures, or provides adequate assurance that it will promptly cure, the default; (B) compensates the non- debtor party for pecuniary loss resulting from the default; and (C) "provides adequate assurance of future performance under such contract or lease." Id. § 365(b)(1).

11.  According to the Fifth Circuit, what constitutes adequate assurance of future performance is "extremely fact-specific." *In re Texas Health Enterprises Inc., 72 Fed. Appx. 122, 126 (5th Cir. 2003)*. Factors the Fifth Circuit has used in assessing whether a debtor has provided adequate assurance of future performance under a lease include (1) whether the debtor's financial data indicates its ability to generate an income stream sufficient to meet its obligations; (2) the general economic outlook in the debtor's industry; and (3) the presence of a guarantee. *Id.* (citing *Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1310 (5th Cir. 1985))*. Additional factors that courts have examined include (1) the debtor's payment history; (2) presence of a

security deposit; (3) evidence of profitability; (4) plan that would earmark money exclusively for the landlord; and (5) whether the unexpired lease is at, or below, the prevailing rate.

12. The Fifth Circuit has previously stated that "the question of whether a lease should be rejected . . . is one of business judgment," but has also recognized that the bankruptcy court need not approve every contract that is beneficial to the debtor if the debtor cannot assure performance on the contract. Id. at 1309 (quoting *Group of Inst. Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550, 87 L. Ed. 959, 63 S. Ct. 727 (1943)). Though Section 365 benefits the debtor by allowing it to assume contracts beneficial to the estate, it also puts a specific limitation (the adequate assurance requirement) on which contracts may be assumed, providing a measure of protection for the non-debtor. Id.

13. Under section 365(f), the burden is on the assignee to show by a preponderance of evidence that future performance is likely. *See In re Resource Technology Corp.,* 624 F.3d 376, 384 (7th Cir. 2010) (assignment of executory contract was not permitted where the prospective assignee could not show by a preponderance of evidence that future performance was likely to occur).

14. As demonstrated on Exhibit A, the assignees of the Genesis Contracts include Newco, FWE I, III, and IV.

15. The Debtors and/or the pertinent assignees must meet their burden that future performance is likely.

16. Debtors' valuation and projections related to the FWE entities created by the Plan (other than Newco) do not demonstrate that sustained performance is likely for the duration of the assumed contracts given the very nature of these entities as short term wind down holding companies. See Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood

Energy LLC and Its Affiliated Debtors [Docket No. 1285]. However, Genesis welcomes the provision of additional information to clarify how this situation is going to unfold both legally and practically.

**B.    The Divisive Merger Further Complicates Adequate Assurance of Further Performance**

17.    Pursuant to the Plan, the Debtors will create certain of the assignees by attempting to effectuate a series of divisive mergers.

18.    The relevant provisions regarding divisive mergers are as follows:

Delaware Law

In order to effect a divisive merger, the dividing LLC must first adopt a plan of division, which must set forth:

(1)    the terms and conditions of the division, including (i) the conversion or exchange of the LLC interests of the dividing LLC into or for LLC interests or other securities of the division LLCs and the allocation of assets, properties, rights, series, debts, liabilities, and (ii) duties of the dividing LLC among the division LLCs;

(2)    the name of each resulting LLC (including the name of the dividing LLC if it will survive the division merger);

(3)    the name and business address of a division contact which shall have custody of a copy of the plan of division; and

(4)    any other matters that the dividing LLC determines to include.

*See* DLLCA § 18-217(g).

Texas Law

To effect a divisive merger under Texas law, the dividing entity must adopt a plan of merger. If more than one organization is to survive or to be created by the plan of merger, the plan of merger must include:

(1)    the manner and basis of allocating and vesting the property of each organization that is a party to the merger among one or more of the surviving or new organizations;

(2) the name of each surviving or new organization that is primarily obligated for the payment of the fair value of an ownership or membership interest of an owner or member of a domestic entity subject to dissenters' rights that is a party to the merger and who complies with the requirements for dissent and appraisal under this code applicable to the domestic entity; and

(3) the manner and basis of allocating each liability and obligation of each organization that is a party to the merger, or **adequate provisions for the payment and discharge of each liability and obligation**, among one or more of the surviving or new organizations.

TBOC § 10.003 (emphasis added).

19. The Plan is not clear (i) how the Debtors will effectuate the divisive mergers to create FWE I, III, and IV and (ii) how the process complies with the safeguards under applicable non-bankruptcy law (much less the procedural safeguards under Section 365 of the Bankruptcy Code). Further, it appears that the Debtors seek to take one contract and duplicate it into two contracts with different counterparties. This lack of clarity gives the Genesis Entities concern that there will be unanticipated operational snafus if not adequately addressed in advance.

C. **The Cure Amounts Are Not Sufficient and Notice of Opt Out of Third Party Releases**

20. Genesis' records indicate that the zero amounts listed in the Notice are insufficient to cure the debt owed to Genesis. The pre-petition claim amounts and the post-petition claim amounts owed to Genesis for each contract are reflected on the summary attached hereto as **Exhibit A** and incorporated herein by reference. The cure amounts are as of June 3, 2021 and Genesis reserves all of its rights in this regard.

21. Given the lack of clarity over the treatment of the executory contracts under the Plan as of the date of the voting deadline under the Plan, the Genesis Entities elected to abstain from voting on the Plan and elected to opt-out of the third party releases to ensure it is adequately protected with regard to its contractual rights in the context of either rejection or this hybrid

approach of Section 365 of the Bankruptcy Code combined with the concept of assumption and assignment pursuant to divisive mergers.

22. Finally, the Schedule of Assumed Contracts is far from a model of clarity itself. It was amended and filed again with no indication of what was modified or altered. The descriptions contained therein do not necessarily match the actual contracts themselves and sometimes refer to predecessor parties instead of the current party. To the extent there is a contract that is intended to be assumed and assigned and it is not on Exhibit A with an asserted cure amount, the Genesis Entities reserve all of their rights to assert the appropriate cure cost as required to be paid.

23. Due to the limited amount of information provided by Fieldwood to identify each of the Genesis contracts, and the vague nature of much of the information provided with respect to the identification of the Genesis agreements which are being accepted or rejected, Genesis is unable to confirm whether many of the contracts it has with Fieldwood are being rejected, assumed or assumed and assigned. Genesis has sought further clarification on a number of the Genesis agreements identified on the amended disclosure and has not yet received such information. Genesis objects to the sufficiency of the identification of the Genesis agreements until further identification information is provided for the Genesis agreements.

## **CONCLUSION**

For the reasons set forth above, Genesis respectfully requests the Court enter an order sustaining its Objection to the Notice absent further necessary information to provide due process and ample protection to the counterparties that their rights are protected and granting such other relief as the Court deems just and proper.

Dated: June 7, 2021   Respectfully submitted,

       /s/ Tom A. Howley
**Tom A. Howley**
Texas Bar No.  24010115
**Eric Terry**
Texas Bar No.  00794729
HOWLEY LAW PLLC
Pennzoil Place – South Tower
711 Louisiana St., Suite 1850
Houston, Texas 77002
Telephone:  713-333-9125
Facsimile:  713-659-9601
Email:  tom@howley-law.com
Email:  eric@howley-law.com

*Counsel to Genesis Energy, L.P. and its Affiliates*

and

Tom Zabel
ZABEL FREEMAN
Texas Bar No.  22235500
1135 Heights Boulevard
Houston, Texas 77008
Telephone: 713-802-9117
Facsimile: 713-802-9114
Email: tzabel@zflawfirm.com

*Litigation Counsel to Genesis Energy, L.P. and its Affiliates*

## CERTIFICATE OF SERVICE

    I certify that on June 7, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

       /s/ Tom A. Howley
       One of Counsel

10