# EXHIBIT 1

# OFFSHORE OPERATING AGREEMENT

BETWEEN

HELIS OIL & GAS COMPANY, L.L.C.

AS OPERATOR

AND

HOUSTON ENERGY, L.P.

CL&F RESOURCES LP

CHALLENGER MINERALS INC.

RED WILLOW OFFSHORE, LLC

MARLIN COASTAL, L.L.C.

AND

BADGER OIL CORPORATION

AS NON-OPERATORS

COVERING

BLOCK 252, SHIP SHOAL AREA,

SOUTH ADDITION

OCS-G 01529

DATED

March 30, 2009

14.2 **PURCHASE OF SALVAGE MATERIALS.** OPERATOR shall give all PARTIES written notice when it is determined under Section 14.1 that FACILITIES or other materials are not needed for further operations and may be moved from the LEASE. Within fifteen (15) days after receipt of such notice any PARTY desiring to acquire such materials shall give OPERATOR written notice of such fact. If more than one PARTY desires to acquire such materials, OPERATOR shall designate a time and place at which each PARTY may submit written bids for such materials. If only one PARTY desires to acquire such materials, it may do so on the basis of the value thereof as determined in accordance with the provisions of Exhibit "C", with prefabricated materials being valued on the basis of cost including but not limited to cost of fabrication. All materials removed from the LEASE shall be removed at the expense of the PARTIES unless purchased hereunder, then at the expense of the acquiring PARTY. In the event no PARTY desires to purchase said materials, the materials shall be disposed of in accordance with the provisions of Exhibit "C".

14.3 **ABANDONMENT OF PRODUCING WELL.** Any PARTY may propose the abandonment of a well by notifying the other PARTIES, who shall have the time period set forth in Section 9.3.2 from receipt thereof within which to respond. No well shall be abandoned without the mutual consent of the PARTICIPATING PARTIES. The PARTICIPATING PARTIES not consenting to the abandonment shall pay to each PARTICIPATING PARTY desiring to abandon its share of the current value of the well's salvageable material and equipment as determined pursuant to Exhibit "C", less the estimated current costs of salvaging same and of plugging and abandoning the well as determined by the PARTICIPATING PARTIES. Provided, however, if such salvage value is less than such estimated current costs, then each PARTICIPATING PARTY desiring to abandon shall pay to OPERATOR for the benefit of the PARTICIPATING PARTIES not consenting to abandonment a sum equal to its share of such deficiency.

14.4 **ASSIGNMENT OF INTEREST.** Each PARTICIPATING PARTY desiring to abandon a well pursuant to Section 14.3 shall assign effective as of the last applicable election date, to the non-abandoning PARTIES, in proportion to their PARTICIPATING INTERESTS, its interest in such well and the equipment therein and its ownership in the production of such well. Any PARTY so assigning shall be relieved from any further liability with respect to said well except as to any accrued liability.

14.5 **ABANDONMENT OPERATIONS REQUIRED BY GOVERNMENTAL AUTHORITY.** Any well abandonment or platform removal required by a governmental authority shall be accomplished by OPERATOR with the costs, risks and net proceeds, if any, to be shared by the PARTIES owning such well or platform in proportion to their PARTICIPATING INTEREST.

**ARTICLE XV**
**WITHDRAWAL**

15.1 **WITHDRAWAL.** Any PARTY may withdraw from this Agreement and thereby be relieved of all responsibilities with respect to the LEASE by giving notice to

the other PARTIES of such desire together with an offer to convey at no cost by a recordable instrument, without warranty, express or implied, except for its own acts, all of its interest in and to the LEASE, the oil and gas, and the property and equipment owned hereunder. Any such conveyance or assignment shall be free and clear of any overriding royalties, production payments or other burdens on production created after the effective date of this Agreement and shall be subject to the LEASE provisions and to the rules and regulations of the lessor. If any PARTY(S) desires to acquire such interest and to assume the obligations of the assigning PARTY under this Agreement and the LEASE, the withdrawing PARTY shall deliver such conveyance or assignment ratably to the acquiring PARTIES, unless the acquiring PARTIES agree otherwise. If no PARTY desires to acquire such interest, the PARTY desiring to withdraw may do so only by paying to those PARTIES not desiring to withdraw its pro-rata share of the estimated costs of plugging and abandoning all wells and removal of all platforms, structures and other equipment on the LEASE, less any salvage value approved under the voting procedure hereof, and such withdrawing PARTY shall remain liable for any costs, expenses or damages theretofore accrued or arising out of any event occurring prior to such PARTY'S withdrawal. Thereafter, the withdrawing PARTY shall assign its entire interest ratably to the remaining PARTIES. If the remaining PARTIES do not wish to continue operations on the LEASE, all PARTIES shall proceed with abandoning and surrendering the same.

    **15.2   LIMITATIONS ON WITHDRAWAL.** No PARTY shall be relieved of its obligations hereunder during a well or platform fire, blowout or other emergency that poses a threat to life, safety, property, or the environment thereon, but may withdraw from this Agreement and be relieved of such obligations after termination of such emergency, provided such PARTY shall be and remain liable for its full share of all costs arising out of said emergency, including without limitation, the drilling of a relief well, containment and cleanup of oil spill and pollution and all costs of platform debris removal made necessary by the emergency.

**ARTICLE XVI**
**RENTALS, ROYALTIES AND OTHER PAYMENTS**

    **16.1   CREATION OF OVERRIDING ROYALTY.** If after the effective date of this Agreement, any PARTY creates any overriding royalty (other than the applicable overriding royalty interest in favor of Houston Energy, L.P. or its designee), production payment or other burden payable out of production attributable to such PARTY'S WORKING INTEREST in the LEASE owned and if any other PARTY(S) becomes entitled to an assignment pursuant to the provisions of this Agreement (except for Paragraph 26.2) or as a result of NON-CONSENT OPERATIONS hereunder becomes entitled to receive the WORKING INTEREST otherwise belonging to a NON-PARTICIPATING PARTY in such operations, the PARTY entitled to receive the assignment from or the WORKING INTEREST production of such NON-PARTICIPATING PARTY shall receive same free and clear of such burdens, and the