IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

**BP EXPLORATION & PRODUCTION INC.'S OBJECTION TO
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**
[Relating to Docket No. 1395]

BP Exploration & Production Inc. ("BP") hereby objects (the "Objection") to the proposed assumption and assignment of certain BP Contracts (as defined below) by the above-captioned debtors (collectively, the "Debtors"). In support of this Objection, BP respectfully states as follows:

**RELEVANT BACKGROUND**[2]

**A.  Prepetition Relationship Between BP and the Debtors**

1.  From approximately 1996 through 2008, pursuant to several purchase and sale agreements, BP or its affiliates sold their right, title, and interest in and to numerous OCS leases to the Debtors (or a predecessor of the Debtors). In addition, BP is a contract counterparty to the Debtors on various agreements affecting properties being transferred to the Credit Bid Purchaser,

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fieldwood Energy LLC (6778), Fieldwood Energy Inc. (4991), Fieldwood Onshore LLC (3489), Fieldwood SD Offshore LLC (8786), Fieldwood Energy Offshore LLC (4494), Fieldwood Offshore LLC (2930), GOM Shelf LLC (8107), FW GOM Pipeline, Inc. (8440), Galveston Bay Procession LLC (5703), Galveston Bay Procession LLC (0422), Fieldwood Energy SP LLC (1971), Dynamic Offshore Resources NS, LLC (0158), Bandon Oil and Gas, LP (9266), and Bandon Oil and Gas GP, LLC (9172). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2]  Additional background regarding BP's prepetition relationship with the Debtors and the Plan, including the Plan's material deficiencies, is set forth in *BP Exploration & Production Inc.'s Objection to Confirmation of Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1468] (the "BP Confirmation Objection").

FWE I, and FWE IV (collectively, the "Successor FWE Entities") and has other contractual relationships related to numerous leases in the Gulf of Mexico.

### B. The Assigned Contracts

2.  On May 27, 2021, the Debtors filed the Schedule of Assumed Contracts [Docket No. 1395, Ex. A.], which was subsequently amended on June 2, 2021 [Docket No. 1456, Ex. A] (the "Assignment Schedule") in connection with the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1284] (as may be amended, revised, or supplemented, the "Plan").[3] The Assignment Schedule identifies at least 1,884 purported executory contracts that the Debtors propose to assume and assign to the Fieldwood Successors, including approximately 116 contracts and leases in which BP has an interest (collectively, the "BP Contracts") comprised of (a) approximately 56 contracts on which BP is identified as a "Known Contract Counterparty" and (b) approximately 60 contracts on which BP is identified as a "Related Lease Party," 17 of which include BP as a Known Contract Counterparty.[4]

3.  The BP Contracts include various acquisition agreements, operating agreements, joint operating agreements, and production handling agreements with respect to various oil and gas lease interests that the Debtors propose to transfer to the Successor FWE Entities, without any cure and without any offer of adequate protection. As set forth herein and in the BP Confirmation Objection, NewCo and FWE IV are not feasible and cannot satisfy the associated P&A Obligations. FWE I has also failed to provide adequate assurance of future performance.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[4] Attached hereto as **Exhibit A** (the "Schedule of BP Contracts") is a schedule of the BP Contracts as identified in the Debtors' Assignment Schedule. BP has used its best efforts to identify all contracts on which it is a Known Contract Counterparty or a Related Lease Party and reserves the right to further object or supplement this Objection to the extent it identifies additional contracts on the Assignment Schedule in which BP may have an interest. Additionally, BP does not admit that any BP Contract constitutes an executory contract within the meaning of the Bankruptcy Code and reserves all rights with respect thereto.

**OBJECTION**

4. BP objects to the proposed assumption and assignment of the BP Contracts to the Successor FWE Entities in the Assignment Schedule, because the Debtors and the applicable Successor FWE Entities have failed to provide adequate assurance of future performance as required under section 365(f) of the Bankruptcy Code. Accordingly, the proposed assumption and assignment of the BP Contracts must be subject to the Debtors' cure of all (monetary and non-monetary) defaults and adequate assurance of future performance by the designated assignee.

**A. The Debtors and the Applicable Successor FWE Entities Must Provide Adequate Assurance of Future Performance**

5. Under section 365(f) of the Bankruptcy Code, a debtor may assign an executory contract ***only if*** "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365 (f)(2)(B). The requirement to show adequate assurance of future performance depends heavily on the facts and circumstances of each case. *Tex. Health Enters. v. Lytle Nursing Home (In re Tex. Health Enters.)*, 72 F. App'x 122, 126 (5th Cir. 2003). "The terms 'adequate assurance of future performance' are not words of art; the legislative history of the Code shows that they were intended to be given a practical, pragmatic construction." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985). Accordingly, "'adequate assurance' is to be defined by commercial rather than legal standards." *Id.* at 1310.

6. The standard for "'adequate assurance of future performance' must be determined by consideration of the facts of the proposed assumption." *Id.* (*quoting* Report of the Commission on Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93d Cong., 1st Sess. Pt. II 156-57 (1973)). "What constitutes adequate assurance is a factual question to be determined on a case by case basis with due regard to the nature of the parties, their past dealings and present commercial

3

realities." *Id.* at 127. Application of the standard may involve "evaluating the relationship between the parties, the circumstances surrounding prior breaches, and the conflicting testimony about the possibility of future breaches." *Id.* at 125 n.4. "Some helpful factors include whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee." *Id.* at 126 (internal quotations omitted); *see also In re Patriot Place, Ltd.*, 486 B.R. 773, 801 (Bankr. W.D. Tex. 2013) (recognizing that courts consider "(1) whether the debtor's financial data indicates its ability to generate an income stream sufficient to meet its obligations; (2) the general economic outlook in the debtor's industry; and (3) the presence of a guaranty"). "Speculative, conjectural, or unrealistic projections cannot support a debtor's prediction of future performance." *Patriot Place*, 486 B.R. at 801. The burden of proof is on the debtor in possession to show it gave "adequate assurance." *Tex. Health Enters.*, 72 F. App'x at 126. The fact that the assumption of the contract would benefit the estate does not automatically approve the assumption if the debtor in possession does not give adequate assurance of future performance. *Id.*

7. Here, the Debtors have fallen woefully short of meeting their burden to demonstrate that they, or the applicable Successor FWE Entities, have provided adequate assurance of future performance under each of the BP Contracts. Specifically, NewCo, which will own 100% of the equity interests of the Credit Bid Purchaser, is unable to provide adequate assurance of future performance with respect to the leases and joint operating agreements being assigned to it. In particular, NewCo's ability to satisfy the P&A Obligations that will arise under those leases and joint operating agreements is unsustainable because, as set forth in the BP Confirmation Objection, NewCo's success is based upon faulty and unrealistic financial projections. Likewise, FWE IV will not have sufficient funds to satisfy at least $40 million in estimated decommissioning

4

liabilities associated with the non-Chevron portion of leases being assigned to FWE IV. Moreover, the Debtors have acknowledged that they "have not prepared separate financial projections relating to FWE IV," and have thus failed to establish feasibility for FWE IV. Disclosure Statement, at Ex. O. FWE I has also failed to offer any adequate assurance of future performance. Thus, because the Credit Bid Purchaser and FWE IV cannot satisfy ongoing obligations with respect to the BP Contracts, and FWE I has failed to meet its burden, the Debtors and the respective Successor FWE Entities have not provided adequate assurance of future performance necessary to assign the BP Contracts.

8. <u>NewCo</u>. As described in greater detail in the BP Confirmation Objection, NewCo is not feasible and will fail. Exhibit O to the Disclosure Statement sets forth the Debtors' financial projections for NewCo (the "<u>Financial Projections</u>"). The Financial Projections provide that over the first five years of the Plan (the "<u>Projection Period</u>"), NewCo will have cash of approximately $876 million, reduce its first lien debt by approximately $96 million, incur additional drilling and completion costs of $390 million to complete six additional deepwater drilling projects, and have cash of over $550 million in excess of the outstanding first lien debt and estimated P&A Obligations. These projections, however, do not account for the full impact of costs of the P&A Obligations, assume substantially lower P&A Obligations compared to BSEE estimates, are inconsistent with the Debtors' historical performance, and provide no cushion for the risk of the Debtors not achieving the projected results. Notably, the Debtors/NewCo do not have permitting in place for any of the six new deepwater wells, creating immediate uncertainty at the inception of the Projection Period. Because the Financial Projections are not reasonable and based upon faulty assumptions, NewCo will not be able to meet its future financial obligations under the various contracts, including the BP Contracts, that are being assigned to it. Accordingly, to assume and

assign the contracts, the Debtors and NewCo must provide adequate assurance to BP with respect to each BP Contract as described on the Schedule of BP Contracts, including by, among other things, demonstrating evidence of adequate funding or financial security in place as of the Effective Date to satisfy all future P&A Obligations with respect to the assets being transferred to NewCo.

9.  <u>FWE IV</u>. As an initial matter, the Debtors have admittedly not prepared financial projections for FWE IV and have not even attempted to demonstrate adequate assurance of future performance with respect to the BP Contracts it seeks to assume. Additionally, under the terms of the Chevron Term Sheet (Plan Supplement, Ex. N1), Chevron is only required to pay its predecessor-in-interest share of the FWE IV working interest percentage share, and neither the Debtors nor Chevron have provided for any additional funding to meet the balance of FWE IV's P&A Obligations. Thus, FWE IV is unable to provide adequate assurance that it can or will meet its future obligations with respect to any BP Contract that is being assigned to it.

10.  Because NewCo and FWE IV are not feasible, and lack sufficient cash flow to meet all future obligations, the Debtors and those Successor FWE Entities have failed to provide adequate assurance of future performance with respect to the BP Contracts proposed to be assigned to those entities as required by section 365(f). Moreover, FWE I has not offered any adequate assurance of future performance. Even if the Successor Entities can establish feasibility, the Successor Entities should be required to provide adequate assurance for each BP Contract proposed to be assumed and assigned.

### B. Reservation of Rights

11.  Nothing contained in this Objection shall be deemed an admission by BP of liability on any alleged claims against it, and BP does not waive any rights against any party or Person. BP

reserves all rights, including, without limitation: (a) the right to amend, modify, or supplement this Objection and to bring further and separate objections to the proposed assumption and assignment of BP Contracts, including any amendment or modification thereto, or any other alternative transaction now or hereafter asserted; (b) all rights against the Debtors, the entities created under the Plan, the proposed assignees of the BP Contracts or other potentially liable or responsible parties; and (c) all rights with respect to the United States, its respective departments and subdivisions, and all governmental units (as defined in 11 U.S.C. § 101(27)) concerning any government lease interests, law or regulation, including, without limitation, such laws and regulations concerning the P&A Obligations related to the Debtors' interests in state or federal oil and/or gas leases.

12. BP hereby reserves and preserves and does not waive any rights at law or in equity or any rights or causes of action that it has or may have against any Person(s), including, but not limited to, the Debtors and their affiliates, or any non-Debtor party related to the Plan, or any assignee of the BP Contracts. The filing of this Objection is not intended to be, and shall not be construed as: (i) an election of remedies; (ii) a waiver of any defaults; (iii) an admission as to the jurisdiction of this Court or a waiver to contest the jurisdiction of this Court; (iv) a waiver of the right to trial by jury in this Court or any other court in any proceeding, notwithstanding the designation or not of any matter as a "core proceeding" pursuant to 28 U.S.C. §157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (v) a waiver of the contractual right to arbitration; (vi) a release of BP's right to have any and all final orders in any and all non-core matters or proceedings entered only after a de novo review by a United States District Court judge; (vii) a waiver of the right to withdraw the reference with respect to the subject matter of any claim it may file, any objection thereto or other proceeding which may be

commenced in these cases against or otherwise involving BP; or (viii) a waiver or limitation of any rights, remedies, claims, or interests of BP.

13. BP hereby reserves and preserves the right to raise additional, amended and supplemental objections to the proposed assumption and assignment of the BP Contracts, including without limitation, objections based upon events and circumstances subsequent to the date of this Objection, objections based upon additional defaults by the Debtors under the BP Contracts, objections seeking additional cure amounts that come due and objections based upon circumstances requiring additional assurance of adequate assurance.

WHEREFORE, BP respectfully requests that the Court deny the Debtors' request to assume and assign the BP Contracts, unless (a) the Debtors cure all (monetary and nonmonetary) defaults under the BP Contracts as required by section 365(b)(1) of the Bankruptcy Code, and (b) the Debtors and the applicable Successor FWE Entities provide adequate assurance of future performance as required under section 365(f) of the Bankruptcy Code.

*(Signature page follows)*

Date:   June 7, 2021                              Respectfully submitted,

                                                **GREENBERG TRAURIG, LLP**

By: */s/ Shari L. Heyen*
    Shari L. Heyen (SBN 09564750)
    HeyenS@gtlaw.com
    Karl D. Burrer (SBN 24043584)
    BurrerK@gtlaw.com
    1000 Louisiana Street, Suite 1700
    Houston, Texas 77002
    Telephone: (713) 374-3500
    Facsimile: (713) 374-3505

– and –

Craig A. Duewall (admitted *pro hac vice*)
Texas State Bar Number 24025334
DuewallC@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

– and –

**Greenberg Traurig, P.A.**
John B. Hutton (admitted *pro hac vice*)
HuttonJ@gtlaw.com
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

*Counsel for BP Exploration & Production Inc.*

9

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on June 7, 2021, I caused a copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas by electronic mail.

By: */s/ Karl D. Burrer*
Karl D. Burrer