IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, et al. | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**MERIT ENERGY COMPANY'S OBJECTION TO CONFIRMATION OF THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND NOTICE OF OPT OUT**

Merit Energy Company and its affiliates[1] (collectively, "Merit") file this *Objection to Confirmation of the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Doc. No. 1284) (the "Plan")[2] and state as follows:

### I.    INTRODUCTION

Merit is a predecessor in title for a number of OCS mineral leases in which Fieldwood also has interests. Under Fieldwood's Plan, these leases have different treatment and fall into assets transferred to NewCo, FWE I, and to be abandoned. Merit anticipates Fieldwood's abandonment of its interest may result in other parties, including Fieldwood's predecessors, having to turn to operating agreements and other contractual rights to handle the empty seat left by Fieldwood. The Plan is objectionable for the following reasons:

- Fieldwood's Plan and continued uncertainty regarding abandoned assets fails to comply with Fieldwood's environmental regulations. Moreover FWE I will be unable to perform its environmental and decommissioning obligations, which further violates

---

[1] For purposes of this Objection, Merit's affiliates include Merit Management Partners I, L.P, Merit Management Partners II, L.P., Merit Management Partners III, L.P., Merit Energy Partners III, L.P. MEP III GOM, LLC, Merit Energy Partners D-III, L.P., Merit Energy Partners E-III, L.P., Merit Energy Partners F-III, L.P., and Devon Energy Production Co. LP.

[2] Merit's objection deadline was extended to June 11, 2021, by agreement.

**PAGE 1**

applicable law. Therefore the Plan does not satisfy section 1129(a)(3) of the Bankruptcy Code.

- The Plan's release and exculpation provisions at Articles 10.7 and 10.8 are impermissibly broad and exceed the scope of releases allowed to third parties under *Pacific Lumber*. These releases implicate the Apache RSA Parties and similar arrangements related settlements placed under the FWE III and FWE IV entities.

Under any circumstance, the Plan and Confirmation Order should make clear that they do not modify or impair rights among third parties under operating agreements, Purchase and Sale Agreements, security interests under operating agreements, other agreements and subrogation rights among third parties.

## II. FACTUAL BACKGROUND

Fieldwood's Plan calls for an allocation of assets between an entity controlled by the Credit Bid Purchaser (consisting primarily of deepwater assets) and entities created by divisive merger including FWE I (Legacy Apache assets), FWE III (a decommissioning entity), FWE IV (legacy Chevron / Noble assets), and abandoned properties. (*See* Doc. 1254 at Art. 5.7, 5.12, 5.13). The abandonment proposal leaves predecessors and working interest owners to complete legally required decommissioning without Fieldwood's participation or financial contribution. *See* 30 CFR §§ 250.1710, 250.1725 (requiring decommissioning of platforms and wells within one year of lease termination).

Even for the decommissioning work FWE I plans to perform, the projected plugging and abandonment will not allow it to comply with applicable regulations. FWE I has an enormous amount of decommissioning liabilities in its future and a large number of leases that have already expired or terminated where decommissioning has matured and is legally past due under 30

C.F.R. §§ 250.1710, 250.1725; yet, the testimony will show that Fieldwood has not positioned FWE I to complete the work this year. The decommissioning already past under the regulations for FWE I vastly exceeds the $70 million proposed for decommissioning spending by that entity in its financial projections. (*See* Doc. No. 1285, Ex. O).

Additional regulatory approvals are needed as well. FWE I and FWE III are both thinly capitalized as decommissioning entities that must be designated as operators and approved by BOEM and BSEE. FWE I and FWE III further need bonding to satisfy applicable regulations for operations. Upon information and belief, at this time, none of these regulator permissions has been granted.

Merit is a predecessor in interest for a number of leases owned in part by various Debtor entities. Leases with a former or current Merit interest appear on Fieldwood's lists of purchased assets, FWE I assets, and abandoned assets and involve millions of dollars in decommissioning liabilities.

### III.    ARGUMENTS AND AUTHORITIES

**A.    Fieldwood's Plan Fails to Adequately Provide for Environmental Obligations.**

Fieldwood cannot abandon its environmental liabilities, and any entity created by the Plan must also be able to carry out those environmental obligations to comply with applicable law. *See* 11 U.S.C. § 1129(a)(3). The health, safety, and environmental laws governing Fieldwood and its reorganized entities require compliance with regulations related to decommissioning of expired and terminated leases. *See* 30 CFR § 250.1702; *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986); *In re Anglo-Suisse Offshore Partners, LLC*, Case No. 15-36566 (Bankr. S.D. Tex. Apr. 6, 2016) (Dkt. No. 63); *In re Amer. Coastal Energy, Inc.*, 339 B.R. 805, 812 (Bankr. S.D. Tex. 2009).

Compliance with law and ability to carry out decommissioning work further ties to the feasibility requirement of section 1129(a)(11).

Fieldwood's plan does not comply with applicable law to the extent it fails to provide for timely decommissioning of expired and terminated leases that are past due under the applicable regulations. 30 C.F.R. §§ 250.1712, 250.1725; Doc. No. 1285, Ex. C. (showing lease status including terminated, relinquished, and expired leases). Fieldwood's proposed $70 million in decommissioning spend in 2021, which Fieldwood will not resolve its required decommissioning obligations on terminated leases as required under the applicable regulations for 2021.[3]

Moreover, it is unclear at this time whether regulators will approve the divisive merger-based transfer of leases to FWE I, FWE III, and FWE IV, which creates another legal and regulatory compliance and feasibility problem. In addition to FWE I and FWE III being immediately out of compliance with applicable law, Fieldwood plans to abandon another set of assets, which will also not comply with applicable state and federal law. The failure to comply with applicable law presents barriers to confirmation under both 1129(a)(3) and 1129(a)(11) of the Bankruptcy Code.

**B.     The Plan's Release and Exculpation Provisions Improperly Release Third Parties.**

The potential for failure with FWE I, FWE III, and FWE IV and abandonment of other leases will leave other parties to address lease obligations. At minimum, the Plan and Confirmation Order cannot release claims against these non-debtor, third parties and must make clear that these third parties benefactors remain obligated for these obligations under applicable law, the applicable operating agreements, and under other contractual rights. The scope of releases is particularly concerning because Apache remains the predecessor in interest for the

---

[3] *See* Doc. No. 1285, Ex. O.

FWE I assets and must continue to be liable to third parties for its share of plugging and abandonment should FWE I fail to complete the task. Article 10.7 of the Plan provides for the release of "any and all claims and causes of action whatsoever" related to, among other things "the Debtors . . . or their estates . . ." Doc. No. 1284, Art. 10.7. By providing such broad protections to non-debtors, the proposed release and exculpation of Apache exceeds the scope of releases allowed under *In re Pacific Lumber*, 584 F.3d 229, 250 (5th Cir. 2009).

In addition to the problematic release provisions discussed above, which at least Merit had the opportunity to opt out of, the non-consensual exculpation provisions in Article 10.8 of the Plan significantly exceed what is permitted under Fifth Circuit law. The proper purpose of exculpation provisions in chapter 11 plans is to allow parties "to engage in the give-and-take of the bankruptcy proceeding without fear of subsequent litigation over any potentially negligent actions in those proceedings." *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1084 (9th Cir. 2020). The provisions of Section 10.8, however, go well beyond this. As written, the exculpation provisions would release the Exculpated Parties, including the Apache RSA Parties, from their obligations to non-debtors arising out of prepetition contractual agreements between the Exculpated Parties and those non-debtors. This is an improper use of exculpation in a chapter 11 plan, and it should be seen for what it really is—an attempt to release the non-fiduciary Exculpated Parties from the legitimate claims of other non-debtors without their consent.

The detrimental effects of Section 10.8 on creditors' rights are made even worse by the fact that the scope of the claims that would potentially be released is extremely broad and decidedly vague. For example, the Exculpated Parties would be released from all types of claims "in connection with or arising out of," among other things, the Apache Definitive Documents, "any additional predecessor agreement documents," and "the transactions in furtherance of any

of the foregoing." Plan, Section 10.8. The Apache Definitive Documents consist of over 900 pages of various types of documents and agreements, many of which are to take effect only after the Effective Date of the Plan. (See Doc. No. 1365). Section 10.8 not only releases the Apache RSA Parties from any claims "in connection with or arising out of" that multitude of documents, it would also release the Apache RSA Parties from claims "in connection with or arising out of" "the transactions in furtherance of" those documents. The potential scope of claims held by non-debtor parties that could be released under these provisions is breathtaking.

The scope of the releases provided under Section 10.8 is not only incredibly broad in its specifics, it is broadened even further by its vagueness. The Exculpated Parties are to be released from claims "in connection with or arising out of" "any additional predecessor agreement documents" and "the transactions in furtherance of" those documents. The term "any additional predecessor agreement documents" is not defined in the Plan and cannot be determined by its use in this context. By including a vague, undefined term like this in Section 10.8, the Debtors have clearly exceeded even the scope of nonconsensual releases permitted by the courts that are more liberal than the Fifth Circuit on this issue.

In contrast, the Fifth Circuit taken a very conservative approach to the permissible scope of non-debtor releases or exculpations in a chapter 11 plan. *In Bank of New York Trust Co., NA v. Official Unsecured Creditors' Committee (In re The Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009), the Fifth Circuit addressed an exculpation clause that included parties other than estate fiduciaries and whose "essential function" was to "absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy." Id. at 252. The court held that "the non-debtor releases must be struck except with respect to the Creditors Committee and its members." Id. 253. As one court noted, "[T]hird-party releases are not a merit badge that

somebody gets in return for making a positive contribution to a restructuring." *In re Agean Marine Petroleum Network Inc.*, 599 B.R. 717, 726 (Bankr. S.D.N.Y. 2019)..

The exculpation provision in Section 10.8 of the Plan is undeniably an attempt to obtain non-consensual releases of other non-debtor parties' claims against the Exculpated Parties. The Debtors can, of course, exercise their business judgment and decide to release the Exculpated Parties from the Debtors' own claims arising in connection with the chapter 11 cases. And based on the Fifth Circuit's holding in Pacific Lumber, the Plan can provide a narrow exculpation for estate fiduciaries as to those types of claims. But the Debtors' attempt to force the release of a very broad swath of claims held by creditors against non-debtor third parties without the creditors' consent clearly runs afoul of controlling Fifth Circuit precedent and cannot be approved.

To address the flaws in the Plan's releases, Merit proposes the following language for the Confirmation Order:

> Merit Enegy Company, Merit Management Partners I, L.P, Merit Management Partners II, L.P., Merit Management Partners III, L.P., Merit Energy Partners III, L.P. MEP III GOM, LLC, Merit Energy Partners D-III, L.P., Merit Energy Partners E-III, L.P., Merit Energy Partners F-III, L.P., and Devon Energy Production Co. LP.'s (collectively, "Merit") rights, including, but not limited to, security interests, security rights, contract rights, setoff and recoupment rights, and subrogation rights, against non-Debtors under operating agreements, other contracts, and applicable law are hereby reserved, and nothing contained in the Plan, Confirmation Order, and related exhibits and associated transaction documents shall modify or impair Merit's rights with respect to any non-Debtor parties, including Debtors' predecessors and any other co-liable or jointly and severally liable parties. Nothing contained in the Plan, Confirmation Order, and related exhibits and associated transaction documents entered into related to the Plan and Confirmation Order shall be deemed or construed to be a release or discharge of any liability or obligations of any third parties with respect to decommissioning liabilities of Debtors' predecessors and any other co-liable and/or jointly and severally liable parties with respect to Debtors' assets. Merit's claims and causes of action against any third parties are hereby reserved.

## IV. NOTICE OF OPT OUT

Merit has timely submitted ballots containing an election to opt out of the releases. However, for the avoidance of doubt, Merit hereby provides notice that it opts out of the releases contained in Article 10.7 of the Plan as well as the exculpation contained in Article 10.8 and any releases contained in any of the related exhibits and transaction documents.

## V. RESERVATION OF RIGHTS

Merit reserves all rights regarding any amended plan, contract assumption and rejection, and its claims in this case, including, but not limited to, administrative priority claims related to decommissioning work, adequate protection for such expenditures, assumption and cure obligations, and all other rights in this case.

WHEREFORE, Merit Energy Company and its affiliates pray the Court sustain this objection and grant such other relief as may be just and proper.

Dated: June 11, 2021                Respectfully submitted,

*/s/ Bradley C. Knapp*
Bradley C. Knapp (Tex. Bar No. 24060101)
**LOCKE LORD, LLP**
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130
Telephone: (504) 558-5210
Facsimile: (504) 910-6847
bknapp@lockelord.com
-and-
Philip G. Eisenberg (La Bar No. 14250)
**LOCKE LORD, LLP**
2800 JP Morgan Chase Tower
600 Travis Street
Houston, Texas 77002
Telephone: (713) 226-1200
Facsimile: (713) 223-3717
Email: peisenberg@lockelord.com

**COUNSEL FOR MERIT ENERGY COMPANY, LLC**

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing was served via the Court's ECF system on those parties consenting to service through same on June 11, 2021.

*/s/ Bradley C. Knapp*
Bradley C. Knapp