IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, et al. | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**W&T OFFSHORE, INC. AND W&T ENERGY VI, LLC'S LIMITED OBJECTION TO CONFIRMATION OF THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND NOTICE OF OPT OUT**

W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "W&T") file this *Limited Objection to Confirmation of the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Doc. No. 1284) (the "Plan")[1] and state as follows:

## I. INTRODUCTION

W&T is a predecessor in title, a current working interest owner and an operator of a significant number of OCS mineral leases in which Fieldwood also has interests. Under Fieldwood's Plan, these leases have different treatment and fall into assets transferred to NewCo, FWE I, FWE III, and to be abandoned. W&T anticipates Fieldwood's abandonment of its interest may result in other parties, including Fieldwood's predecessors, having to turn to operating agreements and other contractual rights to handle the empty seat left by Fieldwood. Because of the extensive contractual arrangements governing rights related to Fieldwood's leases, the Plan's release and exculpation provisions with their sweeping protections for the Apache RSA Parties are impermissibly broad. Similar releases and protections appear under the FWE III and FWE IV entities in connection with certain plan settlements.

---

[1] W&T's objection deadline was extended to June 11, 2021, by agreement.

PAGE 1

Under any circumstance, the Plan and Confirmation Order should make clear that they do not modify or impair rights among third parties under operating agreements, Purchase and Sale Agreements, security interests under operating agreements, other agreements and subrogation rights among third parties.

## II.     FACTUAL BACKGROUND

Fieldwood's Plan calls for an allocation of assets between an entity controlled by the Credit Bid Purchaser (consisting primarily of deepwater assets) and entities created by divisive merger including FWE I (Legacy Apache assets), FWE III (a decommissioning entity), FWE IV (legacy Chevron / Noble assets), and abandoned properties. (*See* Doc. 1254 at Art. 5.7, 5.12, 5.13). Article 10.7 contains a broad release provision, and Article 10.8 provides a broad exculpation provision. The Apache RSA Parties—who are parties or predecessors to a vast number of agreements related to Fieldwood's assets—receive releases under the release and exculpation provisions. While the Plan provides for an opt out of the release provisions in Article 10.7, no similar right to opt out exists for the Plan's exculpation provision.

W&T and Fieldwood have a large number of contractual and legal relationships related to the ownership and operation of leases in the Gulf of Mexico Outer Continental Shelf as well as certain state leases. W&T and Fieldwood are parties to a vast set of contracts including operating agreements, production handling agreements, gas gathering and processing agreements, unit agreements, and many others. W&T operates leases in which Fieldwood holds a working interest, and Fieldwood operates leases in which W&T holds a working interest. Additionally, W&T is a predecessor in title for certain assets in which Fieldwood has operating or working interests resulting in plugging and abandonment and decommissioning obligations

under the applicable operating agreements, law, and regulations.[2]  Leases in which W&T operates or has a working interest appear on the Plan's schedules for Purchased assets, FWE I, FWE III, and abandoned.  The total liabilities related to these leases are substantial by any measure.

### III.  ARGUMENTS AND AUTHORITIES

The release and exculpation provisions provided at Articles 10.7 and 10.8 of the Plan are impermissibly broad.  The Plan and Confirmation Order cannot release claims against these non-debtor, third parties and must make clear that these third parties benefactors remain obligated for these obligations under applicable law, the applicable operating agreements, and under other contractual rights.  The scope of releases is particularly concerning because Apache remains the predecessor in interest for the FWE I assets and must continue to be liable to third parties for its share of plugging and abandonment should FWE I fail to complete the task.  Article 10.7 of the Plan provides for the release of "any and all claims and causes of action whatsoever" related to, among other things "the Debtors . . . or their estates . . ."  Doc. No. 1284, Art. 10.7.  By providing such broad protections to non-debtors, the proposed third party release  the scope of releases allowed under *In re Pacific Lumber*, 584 F.3d 229, 250 (5th Cir. 2009).

In addition to the problematic release provisions discussed above, which at least W&T had the opportunity to opt out of, the non-consensual exculpation provisions in Article 10.8 of the Plan significantly exceed what is permitted under Fifth Circuit law.  The proper purpose of exculpation provisions in chapter 11 plans is to allow parties "to engage in the give-and-take of

---

[2] Fieldwood's abandonment of these interests violates applicable law and constitutes an impermissible attempt to abandon environmental obligations.  *See* 30 CFR § 250.1702; *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986); *In re Anglo-Suisse Offshore Partners, LLC*, Case No. 15-36566 (Bankr. S.D. Tex. Apr. 6, 2016) (Dkt. No. 63); *In re Amer. Coastal Energy, Inc.*, 339 B.R. 805, 812 (Bankr. S.D. Tex. 2009).  W&T joins in the objection related to *Midlantic* asserted in the Objection to Confirmation filed by Merit Energy Company in Section III.A at Doc. No. 1535.

the bankruptcy proceeding without fear of subsequent litigation over any potentially negligent actions in those proceedings." *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1084 (9th Cir. 2020). The provisions of Section 10.8, however, go well beyond this. As written, the exculpation provisions would release the Exculpated Parties, including the Apache RSA Parties, from their obligations to non-debtors arising out of prepetition contractual agreements between the Exculpated Parties and those non-debtors. This is an improper use of exculpation in a chapter 11 plan, and it should be seen for what it really is—an attempt to release the non-fiduciary Exculpated Parties from the legitimate claims of other non-debtors without their consent.

The detrimental effects of Section 10.8 on creditors' rights are made even worse by the fact that the scope of the claims that would potentially be released is extremely broad and decidedly vague. For example, the Exculpated Parties would be released from all types of claims "in connection with or arising out of," among other things, the Apache Definitive Documents, "any additional predecessor agreement documents," and "the transactions in furtherance of any of the foregoing." Plan, Section 10.8. The Apache Definitive Documents consist of over 900 pages of various types of documents and agreements, many of which are to take effect only after the Effective Date of the Plan. (*See* Doc. No. 1365). Section 10.8 not only releases the Apache RSA Parties from any claims "in connection with or arising out of" that multitude of documents, it would also release the Apache RSA Parties from claims "in connection with or arising out of" "the transactions in furtherance of" those documents. The potential scope of claims held by non-debtor parties that could be released under these provisions is breathtaking.

The scope of the releases provided under Section 10.8 is not only incredibly broad in its specifics, it is broadened even further by its vagueness. The Exculpated Parties are to be released from claims "in connection with or arising out of" "any additional predecessor

agreement documents" and "the transactions in furtherance of" those documents. The term "any additional predecessor agreement documents" is not defined in the Plan and cannot be determined by its use in this context. By including a vague, undefined term like this in Section 10.8, the Debtors have clearly exceeded even the scope of nonconsensual releases permitted by the courts that are more liberal than the Fifth Circuit on this issue.

In contrast, the Fifth Circuit taken a very conservative approach to the permissible scope of non-debtor releases or exculpations in a chapter 11 plan. In *Bank of New York Trust Co., NA v. Official Unsecured Creditors' Committee (In re The Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009), the Fifth Circuit addressed an exculpation clause that included parties other than estate fiduciaries and whose "essential function" was to "absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy." *Id*. at 252. The court held that "the non-debtor releases must be struck except with respect to the Creditors Committee and its members." *Id*. 253. As one court noted, "[T]hird-party releases are not a merit badge that somebody gets in return for making a positive contribution to a restructuring." *In re Agean Marine Petroleum Network Inc.* 599 B.R. 717, 726 (Bankr. S.D.N.Y. 2019).

The exculpation provision in Section 10.8 of the Plan is undeniably an attempt to obtain non-consensual releases of other non-debtor parties' claims against the Exculpated Parties. The Debtors can, of course, exercise their business judgment and decide to release the Exculpated Parties from the Debtors' own claims arising in connection with the chapter 11 cases. And based on the Fifth Circuit's holding in *Pacific Lumber*, the Plan can provide a narrow exculpation for estate fiduciaries as to those types of claims. But the Debtors' attempt to force the release of a very broad swath of claims held by creditors against non-debtor third parties without the

creditors' consent clearly runs afoul of controlling Fifth Circuit precedent and cannot be approved.

To address the flaws in the Plan's releases, W&T proposes the following language for the Confirmation Order:

> W&T Offshore, Inc. and W&T Energy VI, LLC's (collectively, "W&T") rights, including, but not limited to, security interests, security rights, contract rights, setoff and recoupment rights, and subrogation rights, against non-Debtors under operating agreements, other contracts, and applicable law are hereby reserved, and nothing contained in the Plan, Confirmation Order, and related exhibits and associated transaction documents shall modify or impair W&T's rights with respect to any non-Debtor parties, including Debtors' predecessors and any other co-liable or jointly and severally liable parties.  Nothing contained in the Plan, Confirmation Order, and related exhibits and associated transaction documents shall be deemed or construed to be a release or discharge of any liability or obligations of any third parties with respect to decommissioning liabilities of Debtors' predecessors and any other co-liable and/or jointly and severally liable parties with respect to Debtors' assets.  W&T's claims and causes of action against any third parties are hereby reserved.

## IV.     NOTICE OF OPT OUT

W&T has timely submitted ballots containing an election to opt out of the releases. However, for the avoidance of doubt, W&T hereby provides notice that it opts out of the releases contained in Article 10.7 of the Plan as well as the exculpation contained in Article 10.8 and any releases contained in any of the related exhibits and transaction documents.

## V.     RESERVATION OF RIGHTS

W&T reserves all rights regarding any amended plan, contract assumption and rejection, and its claims in this case, including, but not limited to, administrative priority claims related to decommissioning work, adequate protection for such expenditures, assumption and cure obligations, and all other rights in this case.

WHEREFORE, W&T Offshore, Inc. and W&T Energy VI, LLC pray the Court sustain this objection and grant such other relief as may be just and proper.

Dated: June 11, 2021

*/s/ Philip G. Eisenberg*
**Philip G. Eisenberg**
  Texas Bar No. 24033923
**Elizabeth Guffy**
  Texas Bar No. 8592525
**Simon Mayer**
  Texas Bar No. 24060243
**Eric Boylan**
  Texas Bar No. 24105519
**LOCKE LORD LLP**
600 Travis Street, Suite 2800
Houston, Texas 77002
Telephone: (713) 226-1200
Fax: (713) 223-3717
peisenberg@lockelord.com
eguffy@lockelord.com
simon.mayer@lockelord.com
eric.boylan@lockelord.com

-and-

**Omer F. Kuebel, III**
  Federal Bar No. 32595
**Bradley C. Knapp**
  Texas Bar No. 24060101
**LOCKE LORD LLP**
601 Poydras St., Suite 2660
New Orleans, Louisiana 70130
Telephone: (504) 558-5210
Fax: (504) 558-5200
rkuebel@lockelord.com
bknapp@lockelord.com

**ATTORNEYS FOR W&T OFFSHORE, INC. AND W&T ENERGY VI, LLC**

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing was served via the Court's ECF system on those parties consenting to service through same on June 11, 2021.

*/s/ Philip G. Eisenberg*
Philip G. Eisenberg