IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.*, | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

### HCC INTERNATIONAL INSURANCE COMPANY PLC'S OBJECTION TO CONFIRMATION OF FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND JOINDER

[Relates to Docket No. 1284]

To the Honorable Marvin Isgur,
United States Bankruptcy Judge:

HCC International Insurance Company Plc's ("***HCCI***") submits this objection (the "***Objection***") to the confirmation of the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1284] (the "***Proposed Plan***"), and respectfully would show the Court as follows:

### SUMMARY

1. HCCI is a surety on two bonds securing the plugging and abandonment decommissioning obligations of Fieldwood Energy LLC. Under Fieldwood's Proposed Plan, it appears that the various leasehold interests associated with HCCI's two surety bonds will be transferred to FWE I. Further, HCCI asserts that the Proposed Plan, in its current form, cannot be

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources, NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Filedwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9255); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 200 W. Same Houston Parkway S., Suite 1200, Houston, TX 77042.

1

confirmed because it cannot satisfy 11 U.S.C. § 1129(a)(3), among other provisions. HCCI objects to confirmation of the Debtors' Proposed Plan for the following reasons:

    (i)    The exculpation provisions of the Proposed Plan are overly broad and do not comply with current Fifth Circuit law as set forth in *Pac. Bank of New York Trust Company, N.A. v. Official Committee of Unsecured Creditors (In re Pacific Lumber Co)*, 584 F.3d 229 (5th Cir. 2009) and the Bankruptcy Code.

2.    The Debtors bear the burden of establishing that the Proposed Plan meets the requirements under the Bankruptcy Code to be confirmed. The Debtors cannot meet this burden. The breadth of the exculpation provisions is contrary to established law. For this reason, the Court should deny confirmation of the Proposed Plan.

## BACKGROUND

3.    The Debtors' Proposed Plan calls for an allocation of assets into five (5) buckets: (i) an entity controlled by the Credit Bid Purchaser (consisting primarily of deepwater assets); (ii) FWE I (Legacy Apache assets); (iii) FWE III (a decommissioning entity); (iv) FWE IV (legacy Chevron/Noble assets); and (v) abandoned assets. [*See* Docket No. 1285, Art. I.A.].

4.    The Debtors, along with their non-debtor affiliates, are an independent exploration and production company with operations primarily in the Gulf of Mexico. In order to perform oil and gas operations offshore, HCCI issued certain bonds to secure decommissioning obligations of the Debtors. Fieldwood Energy Offshore, LLC, Fieldwood Energy LLC, GOM Shelf LLC, and Fieldwood SD Offshore LLC (collectively, the "***Debtors***") and HCCI are parties to a General Indemnity Agreement (the "***Indemnity Agreement***") which was entered into in connection with and incorporated as part of the bonds issued by HCCI. HCCI's proof of claim filed in the Fieldwood Energy Offshore, LLC, which includes the Indemnity Agreement, is attached hereto as

**Exhibit 1**. A copy of HCCI's proof of claim is incorporated herein for all intents and purposes. Under the Indemnity Agreement, HCCI issued the following Bonds:

| Bond number | Penalty amount | Principal | Beneficiary |
|---|---|---|---|
| ES00001441 | $50,000,000.00 | Fieldwood Energy LLC | Apache Corporation |
| BS/MA/00089 | $50,000,000.00 | Fieldwood Energy LLC | Deutsche Bank AG New York Branch |
| **Total** | **$100,000,000.00** | | |

5. Under the terms of the Indemnity Agreement, each of the Debtors is a principal and is jointly and severally liable for the Bonds issued under the Indemnity Agreement.

6. Bond Number ES00001441, was issued in connection with the Fieldwood Entities' obligations under a Decommissioning Agreement by and between Apache Corporation, Apache Shelf, Inc., and Apache Deepwater LLC (collectively, "*Apache*") on the one hand and Fieldwood Energy LLC and GOM Shelf LLC, on the other.

7. Bond Number BS/MA/00089 was issued in connection with the Fieldwood Entities' obligations to Deutsche Bank AG New York Branch ("*DB*") under a *Continuing Agreement for Standby Letters of Credit* dated January 4, 2016 (the "**Reimbursement Agreement**"). Under the terms of the Reimbursement Agreement, DB has issued Standby Letter of Credit No. 839BGC1600430 (the "***Letter of Credit***") for the benefit of Apache Corporation ("***Apache***").

8. Prepetition, the Debtor defaulted on its obligations under the Indemnity Agreement by, among other things, failing to provide collateral as demanded by HCCI.

9. The Proposed Plan impermissibly strips the rights of HCCI and other similarly situated creditors under the Bankruptcy Code and does not satisfy the required elements of section 1129(a). Confirmation of the Proposed Plan should be denied.

3

## **OBJECTION**

10. As the Plan proponents, the Debtors bear the burden of establishing that the Proposed Plan complies with each confirmation requirement under section 1129(a) by a preponderance of evidence. *Heartland Federal Sav. & Loan Assoc. v. Briscoe Enterprises, Ltd. (In re Briscoe Enterprises, Ltd.)*, 994 F.2d 1160, 1165, 66–68 (5th Cir. 1993). If the Proposed Plan fails to comply with any one of those requirements, it cannot be confirmed. Among other reasons, the exculpations contained in the Proposed Plan exceed the scope of permissible exculpations thereby violating section 1129(a)(3). For this reason, the Proposed Plan cannot be confirmed.

### A. **The exculpation provisions of the Proposed Plan are overly broad and do not comply with current Fifth Circuit law.**

11. As other parties have pointed out in their objections to confirmation, the exculpation provisions in Section 10.8 of the Plan significantly exceed what is permitted under Fifth Circuit law. The provisions are over-broad, lack any temporal limit, and release claims held by creditors against non-debtor third parties without the creditors' consent. Moreover, the scope of the provisions' releases extends well beyond the proper purpose of exculpation provisions in chapter 11 plans.

12. The proper purpose of exculpation provisions in chapter 11 plans is to allow parties "to engage in the give-and-take of the bankruptcy proceeding without fear of subsequent litigation over any potentially negligent actions in those proceedings." *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1084 (9th Cir. 2020). The provisions of Section 10.8, however, go well beyond this. As written, the exculpation provisions would release the Exculpated Parties, including the Apache RSA Parties, from their obligations to non-debtors arising out of prepetition contractual agreements between the Exculpated Parties and those non-debtors. This is an improper use of

exculpation in a chapter 11 plan, and it should be seen for what it really is—an attempt to release the non-fiduciary Exculpated Parties from the legitimate claims of other non-debtors without their consent.

13. The Debtors recognized the need to obtain creditors' consent to the third-party releases set out in Section 10.7 of the Plan. Each creditor, whether they were entitled to vote or not, was given the opportunity to fully opt out of those releases. But although the so-called exculpation provisions in Section 10.8 contain the same kind of third-party releases as Section 10.7, creditors were not given an opportunity to opt out—a result that is both arbitrary and unfair.

14. The detrimental effects of Section 10.8 on creditors' rights are made even worse by the fact that the scope of the claims that would potentially be released is extremely broad and decidedly vague. For example, the Exculpated Parties would be released from all types of claims "in connection with or arising out of," among other things, the Apache Definitive Documents, "any additional predecessor agreement documents," and "the transactions in furtherance of any of the foregoing." Plan, Section 10.8. The Apache Definitive Documents consist of over __ pages of various types of documents and agreements, many of which are to take effect only after the Effective Date of the Plan. Section 10.8 not only releases the Apache RSA Parties from any claims "in connection with or arising out of" that multitude of documents, it would also release the Apache RSA Parties from claims "in connection with or arising out of" "the transactions in furtherance of" those documents. The potential scope of claims held by non-debtor parties that could be released under these provisions is breathtaking.

15. The scope of the releases provided under Section 10.8 is not only incredibly broad in its specifics, it is broadened even further by its vagueness. The Exculpated Parties are to be released from claims "in connection with or arising out of" "any additional predecessor agreement

documents" and "the transactions in furtherance of" those documents. The term "any additional predecessor agreement documents" is not defined in the Plan and cannot be determined by its use in this context. The reader is left wondering which predecessors and what types of documents are intended by this reference. Courts have made it clear that exculpation provisions are to be drawn narrowly. By including a vague, undefined term like this in Section 10.8, the Debtors have clearly exceeded even the scope of nonconsensual releases permitted by the courts that are more liberal than the Fifth Circuit on this issue.

16. In contrast, the Fifth Circuit taken a very conservative approach to the permissible scope of non-debtor releases or exculpations in a chapter 11 plan. In *Bank of New York Trust Co., NA v. Official Unsecured Creditors' Committee (In re The Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009), the Fifth Circuit addressed an exculpation clause that included parties other than estate fiduciaries and whose "essential function" was to "absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy." *Id*. at 252. The court held that "the non-debtor releases must be struck except with respect to the Creditors Committee and its members." *Id*. 253.

17. The Fifth Circuit's holding in *Pacific Lumber* was based to some extent on the provisions of 11 U.S.C. § 524(e), which provides that the discharge of a debtor in bankruptcy does not affect the liability of a non-debtor entity who was liable with the debtor on the discharged debt. This point is particularly relevant here because the Apache RSA Parties, who are included as Exculpated Parties, are liable with the Debtors for the decommissioning of the Legacy Apache Properties by virtue of their position as predecessor in title to the Debtors. This liability is a function of federal regulations and was not created by the Decommissioning Agreement. However, the scope of the exculpation provision is broad enough—both in its subject matter and

its lack of a restricted time period—that other non-debtor third parties could be held to have nonconsensually released their claims against the Apache RSA Parties as they relate to the decommissioning of those properties, regardless of whether those claims arose prepetition, postpetition, or post-Effective Date. Such a release would expressly run afoul of the holding in *Pacific Lumber* and cannot be approved here.

18. The fact that the Exculpated Parties may have participated in the formulation of the Plan does not justify the proposed releases of third-party claims. Even if the Fifth Circuit's ruling in *Pacific Lumber* permitted nonconsensual releases on that basis, mere participation in formulating a chapter 11 plan is not a sufficient reason to provide a non-debtor with nonconsensual releases from claims held by parties other than the debtors. As one court noted, "[T]hird-party releases are not a merit badge that somebody gets in return for making a positive contribution to a restructuring." *In re Agean Marine Petroleum Network Inc.* 599 B.R. 717, 726 (Bankr. S.D.N.Y. 2019). The Debtors have not provided clear and convincing evidence that would support the inclusion of each of the Exculpated Parties in the broad releases contemplated by Section __ of the Plan. As a result, even if providing releases to those parties was allowed under *Pacific Lumber*, the Debtors have not established that the Exculpated Parties' participation in these chapter 11 cases has resulted in anything more than those parties' having protected their own interests. The nonconsensual release of claims held by other parties requires a much higher standard.

19. The Debtors have also failed to demonstrate why the requested release of non-debtor claims against each of the Exculpated Parties is in the best interests of the Debtors, their estates and their creditors. In particular, there has been no showing at all—much less clear and convincing evidence—as to why the release of non-debtor claims against the Apache RSA Parties is beneficial to the Debtors' estates. While it is clear that the Apache RSA Parties have made those

7

releases a requirement for their entering into the RSA and the Apache Term Sheet, it is not at all clear how the transactions proposed under the Apache Definitive Documents benefits the Debtors' estates and their creditors. As noted above, the Apache RSA Parties are liable for the decommissioning of the Legacy Apache Properties independent of any provision in the Decommissioning Agreement or the Plan. Moreover, the Decommissioning Agreement is an executory contract that the Debtors have the right to assume or reject under Section 365. But the Debtors did not simply elect to assume the Decommissioning Agreement. Instead, they entered into an agreement that contemplates a complicated series of transactions that do not improve the Debtors' position vis-à-vis the Apache RSA Parties or under the Decommissioning Agreement. To the contrary, the transactions set out in the Apache Definitive Documents are calculated to improve *Apache's* position under the Decommissioning Agreement. The Debtors appear to have made a bad bargain with the Apache RSA Parties, and they may have to abide by that bargain. But that does not constitute a sufficient evidentiary showing that stripping non-debtor parties of their potential claims against the Apache RSA Parties is a benefit to the Debtors' estates and their creditors.

20. The exculpation provision in Section 10.8 of the Plan is undeniably an attempt to obtain non-consensual releases of other non-debtor parties' claims against the Exculpated Parties. The Debtors can, of course, exercise their business judgment and decide to release the Exculpated Parties from the Debtors' own claims arising in connection with the chapter 11 cases. And based on the Fifth Circuit's holding in *Pacific Lumber*, the Plan can provide a narrow exculpation for estate fiduciaries as to those types of claims. But the Debtors' attempt to force the release of a

very broad swath of claims held by creditors against non-debtor third parties without the creditors' consent clearly runs afoul of controlling Fifth Circuit precedent and cannot be approved.

## NOTICE OF OPT OUT

21.     HCCI has timely submitted ballots containing an election to opt of the releases. However, for the avoidance of doubt, HCCI hereby provides notice that it opts out of the releases contained in Article 10.7 of the Proposed Plan, as well as the exculpation contained in Article 10.8 of the Proposed Plan. Finally, HCCI provides notice that it hereby opts out of any releases contained in any of the related exhibits and transaction documents.[2]

## JOINDER

22.     HCCI hereby joins and incorporates herein by reference Zurich American Insurance Company's *(I) Objection to Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors and (II) Limited Objection to Assumption of Decommissioning Agreement* [Docket No. 1446]; and the *Objection of Aspen American Insurance Company, Berkley Insurance Company, Everest Reinsurance Company, and Sirius America Insurance Company to the Fourth Amended Chapter 11 Plan* [Docket No. 1461]. HCCI hereby joins and incorporates herein by reference the *Objection by Lexon Insurance Company, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company to the Motion of Debtors for Entry of an Order for Confirmation of the Debtors' Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1436] specifically with respect to the portion of the objection addressing the *Midlantic* environmental abandonment issues set forth in paragraphs 62 through 69 and paragraphs 90 through 97.

---

[2] Additionally, there are other provisions in the Proposed Plan that may contain disguised releases which are similarly objectionable.

9

## **RESERVATION OF RIGHTS**

23. HCCI reserves all rights, including, but not limited to, security interests, security rights, liens, contract rights, setoff and recoupment rights, and subrogation rights, against non-Debtors under bonds, payment and indemnity agreements, other contracts, and applicable law are hereby reserved, and nothing contained in the Plan or Confirmation Order shall modify or impair HCCI's rights with respect to any non-Debtor parties, including Debtors' predecessors and any other co-liable or jointly and severally liable parties. Nothing contained in the Plan or Confirmation Order shall be deemed or construed to be a release or discharge of any liability or obligations of any third parties with respect to decommissioning liabilities of Debtors' predecessors and any other co-liable and/or jointly and severally liable parties with respect to Debtors' assets. HCCI's claims and causes of action against any third parties are hereby reserved.

## **CONCLUSION**

HCC International Insurance Company Plc respectfully requests that the Court (i) sustain this Objection; (ii) deny confirmation of the Debtors' Proposed Plan; and (iii) for such other relief as the Court deems just and proper.

[*Remainder of page intentionally left blank.*]

Dated: June 11, 2021

                                        Respectfully submitted,

                                        */s/ Philip G. Eisenberg*
                                        Philip G. Eisenberg
                                        Texas Bar No. 24033923
                                        Elizabeth M. Guffy
                                        Texas Bar No. 08592525
                                        Simon R. Mayer
                                        Texas Bar No. 24060243
                                        **LOCKE LORD LLP**
                                        600 Travis St., Suite 2800
                                        Houston, TX 77002
                                        Telephone:  (713) 226-1200
                                        Facsimile:  (713) 223-3717
                                        peisenberg@lockelord.com
                                        eguffy@lockelord.com
                                        simon.mayer@lockelord.com

                                        *Attorneys for*
                                        *HCC International Insurance Company Plc*

## Certificate of Service

     I certify that on June 11, 2021, a copy of the foregoing document was served electronically via the Court's Electronic Case Filing System on all parties registered for such service, including, but not limited to, counsel for the Debtors.

                                        */s/  Simon R. Mayer*
                                        Simon R. Mayer