IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) Re: ECF No. 1415 |

**DEBTORS' RESPONSE TO MOTION OF BP EXPLORATION & PRODUCTION, INC. TO QUASH DEBTORS' BANKRUPTCY RULE 2004 DISCOVERY REQUESTS**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), submit this response (the "**Response**") to the *Motion of BP Exploration & Production, Inc. to Quash Debtors' Bankruptcy Rule 2004 Discovery Requests* [ECF No. 1415] (the "**Motion**")[2] filed by BP Exploration & Production, Inc. ("**BP**"). In support of the Response, the Debtors respectfully represent the matters set forth below.

**PRELIMINARY STATEMENT**

1. BP's Motion should be denied because the Debtors are entitled to the discovery they seek under Rule 2004 ("**Rule 2004**") of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Plan (as defined herein), as applicable.

2. Rule 2004 broadly permits discovery related to "the . . . property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004. The Debtors' Rule 2004 Requests to BP (the "**Rule 2004 Requests**" or the "**Requests**") fit squarely within this broad scope. Namely, the Rule 2004 Requests seek information related to potentially valuable claims against BP concerning BP's conduct in connection with and leading to the execution of the *Purchase and Sale Agreement by and between BP Exploration & Production Inc. and Fieldwood Energy LLC in respect of Mississippi Canyon Block 519*, dated May 17, 2019 (the "**PSA**") and thereafter.

3. BP's arguments about arbitration are a red herring. BP incorrectly argues that the Rule 2004 Requests are related to claims which are subject to an arbitration provision contained in the parties' *Galapagos Area Loop Subsea Production System Construction and Operating Agreement*, dated December 1, 2011 (as amended from time to time, the "**LSPS OA**"), and as such, the Debtors are precluded from seeking discovery for such claims through Rule 2004. However, the arbitration provision in the LSPS OA expressly only covers claims ***arising out of***, ***relating to***, or ***in connection with*** interpretations of the LSPS OA (an agreement which this Court has already found BP to have breached), which are ***not*** the subject of the Rule 2004 Requests.

4. Pursuant to the PSA, which does ***not*** contain an arbitration provision, BP sold the Debtors all of its interest in the Genovesa well, which is the well that was the subject of the contested hearing before this Court in February 2021. At the time of the PSA, BP (1) had the means to obstruct Genovesa from coming online before BP and Shell's Manuel well, which shares the same reservoir as Genovesa, (2) had a motive to prevent it from coming online on the

2

Debtors' stated timeline, namely, to benefit production from Manuel, and (3) in fact, went on to engage in conduct to prevent Genovesa from coming online until well over a year after the Debtors' reasonable timeline expressed consistently represented before, during, and after the PSA negotiations. The Rule 2004 Requests seek discovery relating to BP's conduct and intent in connection with the PSA (and its related post-execution conduct) for purposes of investigating a variety of claims—none of which *arise out of*, *relate to*, or are *in connection with* interpretations of the LSPS OA.

        5.        Separate from its arbitration claim, BP raises several other misplaced arguments in its Motion. *First*, BP seeks to quash the Rule 2004 Requests based on the "pending proceedings" rule, but that rule is inapplicable where, as here, there is no pending proceeding. *Second*, BP argues that the Rule 2004 Requests are burdensome and harassing, even though the Debtors tried to confer with BP regarding the scope of the requests, custodians, and search terms, yet BP refused to even discuss these issues, instead summarily claiming that the Debtors were not entitled to any discovery at all. The Debtors remain willing to confer on these issues, and, in any event, the significance of the potential damages claims being investigated outweighs any burden associated with compliance with the Rule 2004 Requests. *Third*, BP complains that the Rule 2004 Requests seek confidential information, but as BP is aware (because it is a signatory), there is already a protective order in place in this case that covers confidential documents. *Fourth*, BP's untimeliness arguments lack merit. There is no deadline to serve Rule 2004 requests, and the Debtors are entitled to seek this discovery under the rules. Accordingly, for these reasons and as explained further below, the Court should deny the Motion.

**BACKGROUND**

A.  **Debtors' Chapter 11 Cases**

6. On August 3 and 4, 2020, the Debtors each commenced in this Court a voluntary case under title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

8. On April 15, 2021, the Debtors filed their *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [ECF No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**"). A hearing to consider confirmation of the Plan is set for June 18, 2021 at 9:30 a.m. (prevailing Central Time). [ECF No. 1486].

B.  **The Genovesa Well**

9. The Genovesa well ("**Genovesa**") is located in the Gulf of Mexico. Genovesa is one of several wells and prospects that currently flow or eventually will flow production on a nearby undersea loop pipeline called the Galapagos Area Loop Subsea Production System ("**LSPS**"). The LSPS transports hydrocarbons from these wells to the Na Kika platform, which BP partially owns (the Debtors are not co-owner of this platform) and operates.

10. The Debtors and BP, among others, are parties to the LSPS OA (December 21, 2011), which governs Genovesa's access to the loop system. The same parties are signatories to the *Production Handling and Operating Services Agreement*, effective

September 21, 2010 and last amended May 1, 2019 (the "**PHA**"), which governs access to Na Kika.  In effect, the LSPS OA governs the relationship of the parties as joint owners of the LSPS.  The PHA, on the other hand, governs the relationship of the parties as producers on the LSPS to Na Kika.

11. In 2018, Genovesa was owned by the Debtors and BP, among others.  The Debtors also operate Genovesa.

12. In addition to its ownership in Genovesa, BP also owned the Manuel well ("**Manuel**"), which draws from the same oil reservoir as Genovesa.  Manuel's production flows to Na Kika, as well, though not through the LSPS.

13. In 2018, the Debtors were enthusiastic about Genovesa's prospect to produce oil.  BP did not share the Debtors' enthusiasm, in part because, on information and belief, BP had already made a considerable investment in the drilling of Manuel and Genovesa would serve to reduce the reserves captured from Manuel.

14. In 2019, BP sold its interest in Genovesa to the Debtors and focused its efforts on Manuel.  Upon the sale, the parties entered into the PSA.

15. After execution of the PSA, the Debtors became concerned about the propriety of BP's actions.  These concerns resulted in delays that ultimately culminated in the *Debtors' Emergency Motion to Compel BP to Perform Pre-Petition Contracts* [ECF No. 792], considered and decided by this Court on February 2, 2021 [ECF No. 845].

C. **The Debtors' Rule 2004 Requests**

16. In an effort to derive additional value for the Debtors' estate and in light of BP's conduct even prior to the execution of the PSA, the Debtors are in the process of investigating potential claims against BP and other third parties.

17. As part of this investigation, on May 21, 2021, the Debtors served BP with the *Debtors' Notice of Bankruptcy Rule 2004 Request for Production of Documents from BP Exploration & Production Inc.* (the "**Rule 2004 Notice**").

18. Contrary to BP's assertions, the Rule 2004 Requests do not relate to potential claims arising from the LSPS OA. Indeed, the Court has already found that BP breached the LSPS OA: "In this case, I have BP, who is willfully failing to comply with a contract, and they are doing so for their own economic benefit. They are in breach." (Feb. 2, 2021 Hr'g. Tr. 229:23–25). Rather, the Rule 2004 Requests are targeted at potential claims regarding, among other things, BP's conduct in connection with execution of the PSA and its related post-execution conduct.

## RESPONSE

**A.    The Broad Scope of Rule 2004 Authorizes the Rule 2004 Requests**

19. Rule 2004 permits the Bankruptcy Court to order "the examination of persons and entities that have knowledge" of the debtor's "property or [] liabilities . . . or to any matter which may affect the administration of the estate." *In re Buccaneer Res., LLC*, 2015 WL 8527424, at *6 (Bankr. S.D. Tex. 2015) (Jones, J.) (quoting Fed. R. Bankr. P. 2004(b)). A Rule 2004 examination is "nonadversarial in nature," instead "aimed at discovering evidence upon which future causes of action may be based." *In re Bounds*, 443 B.R. 729, 732 (Bankr. W.D. Tex. 2010) (Gargotta, J.) (citation omitted).

20. "[T]he scope of a Rule 2004 examination is exceptionally broad," "unfettered," and "virtually unlimited," encompassing ***any matter*** which "may affect administration of the debtor's estate." *In re Correra*, 589 B.R. 76, 108–09 (Bankr. N.D. Tex. 2018) (Jernigan, J.); *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) (Ayers, C.J.); *see also In re NE 40 Partners, Ltd. P'ship*, 440 B.R. 124, 129 (Bankr. S.D. Tex. 2010) (Bohm, J.)

6

(noting that Bankruptcy Rule 2004 "effectively permit[s] [a debtor] to go on 'licensed fishing expeditions'") (citing *Bounds*, 443 B.R. at 736). Even the cases cited by BP recognize that "[t]he scope of a Rule 2004 examination is 'unfettered and broad.'" *In re Washington Mutual, Inc.*, 408 B.R. 45, 49 (Bankr. D. Del. 2009) (citation omitted) (cited by BP at Mot. ¶ 33); *see also Snyder v. Soc'y Bank*, 181 B.R. 40, 41 (Bankr. S.D. Tex. 1994), *aff'd sub. nom.*, *In re Snyder*, 52 F.3d 1067 (5th Cir. 1995) ("Rule 2004 affords creditors and debtors the broad rights of examination") (cited by BP at Mot. ¶ 33).

21. If the party served with a Rule 2004 examination request objects, the party requesting the examination has the burden of showing "good cause" for the request. *See, e.g.*, *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998). To establish "good cause," the requesting party must show "some reasonable basis" for requesting the examination. *In re Youk-See*, 450 B.R. 312, 320 (Bankr. D. Mass. 2011) (quoting *In the Matter of Wilcher*, 56 B.R. 428 (Bankr. N.D. Ill. 1985)). This may include the requesting party's need to "determine the scope of viable claims that [the debtor may have] against potential third parties." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (Silverstein, J.); *see also Correra*, 589 B.R. at 108 (describing the Rule's investigative purposes); *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (explaining that courts should consider whether "the denial of such request would cause the proposed examiner undue hardship or injustice" when analyzing whether "good cause" exists).

22. Courts routinely authorize Rule 2004 examinations aimed at investigating potential claims against third parties, especially where successful pursuit of any such claims will enlarge a debtor's estate to the benefit of creditors. *See Bounds*, 443 B.R. at 736; *In re Mirant Corp.*, 326 B.R. 354, 357 (Bankr. N.D. Tex. 2005); *Millennium Lab*, 562 B.R. at 626. For

example, in *Bounds*, Judge Gargotta authorized a creditor to examine another creditor because the requested documents "affect[ed] administration of the debtor's estate" insofar as "[a]ny judgment obtained [by the requesting creditor] . . . would [increase] the amount to which other creditors would be entitled." 443 B.R. at 736. Similarly, in *In re Mirant Corp.*, Judge Lynn authorized a Rule 2004 examination because the court found that such examination "may be critical to ensure that no viable cause of action is lost." *Id.* at 357. Also, in *Millennium Lab*, Judge Silverstein found that Rule 2004 authorized a plan trustee to obtain documents from a third party because (i) such discovery was used "to explore prepetition causes of action the [d]ebtors may have against [t]hird [p]arties" and (ii) any "proceeds from the claims . . . w[ould] be distributed to all creditors." *Id.* at 630.

23. Here, "good cause" supports the Rule 2004 Requests because they seek information relating to potential claims that the Debtors have against BP and others, which may yield proceeds that will significantly benefit the Debtors, their estates, and creditors. *See Bounds*, 443 B.R. at 736; *Mirant Corp.*, 326 B.R. at 357; *Millennium Lab*, 562 B.R. at 630.

24. Through the Rule 2004 Requests, the Debtors thus properly use Bankruptcy Rule 2004 to investigate potential claims against BP. *See Millennium Lab*, 562 B.R. at 630; *Correra*, 589 B.R. at 108. The Rule 2004 Requests are narrowly focused on specific information, during a specific timeframe, about specific conduct regarding the PSA upon which the Debtors have a good faith basis to believe claims may exist. And if as a result of that investigation the Debtors bring claims against BP or third parties, any recovery will benefit creditors. Accordingly, "good cause" supports the Rule 2004 Requests.

**B.     An Arbitration Provision in the LSPS OA Does Not Bar the Rule 2004 Requests**

25. In a mistaken attempt to restrict the exceptionally broad and "virtually unlimited" reach of Bankruptcy Rule 2004, BP contends that the Debtors are precluded from

8

seeking the discovery sought through the Requests because the Requests are targeted at claims that are subject to the arbitration provision in the LSPS OA. BP is factually (and legally) incorrect.

26. As a factual matter and contrary to BP's assertion, the Requests are not related to the Notice for Removal of Operator for Cause the Debtors sent to BP on May 14, 2021. Rather, the Requests are targeted at information related to the potential claims the Debtors are investigating against BP—claims that are mostly related to BP's conduct in connection with and following the execution of the PSA.

27. The Requests' focus on information related to claims regarding the PSA is evident from the language of the Requests themselves. For example, Request No. 3 expressly seeks "[a]ll Documents and Communications concerning the PSA, including, but not limited to, BP's decision to enter into the PSA." Similarly, Request No. 13 seeks "[a]ll Documents and communications concerning the Authorizations for Expenditure related to the 2019 TAR . . . , including, but not limited to, BP's reasons for delaying sending them to Fieldwood until after closing on the PSA." Further, several requests directly relate to events leading up to and closely following the parties' execution of the PSA and representations made in connection therewith. *See* Request Nos. 1, 5, 6, 7, 8, and 12. Several other requests relate to financial positions that BP has in competing wells, which are relevant to demonstrating any conflict of interests that BP had at the time the PSA was entered. *See* Request Nos. 9, 10, and 11. To the extent that any of the Rule 2004 Requests touch upon the LSPS OA, they do so only in an effort to target information relating to claims regarding the PSA or other wrongful conduct by BP unrelated to a claim under the LSPS OA (which, again, this Court has already found BP to have breached).

28. As a legal matter, the arbitration provision in the LSPS OA unquestionably does not cover claims related to the PSA or other claims that are not arising from the LSPS OA. The LSPS OA's arbitration provision is strictly and narrowly limited to disputes related to the LSPS OA. The relevant provision provides:

> Any claim, controversy or dispute ***arising out of***, ***relating to*** or ***in connection with*** the interpretations of ***this Agreement*** or any activity or operation conducted or to be conducted ***hereunder***, shall be resolved in accordance with the mediation and binding arbitration provision set forth in Exhibit "F" (*Dispute Resolution Procedures*) to ***this Agreement***.

LSPS OA, Art. 22.28 (emphasis added). The relevant portion of Exhibit F, in turn, provides:

> Arbitration as used in this statement is a procedure whereby an Arbitrator resolves any claim(s), controversy(ies) or dispute(s) (the "Dispute") between the Parties ***arising out of***, ***relating to*** or ***in connection*** with ***the Agreement***, including the interpretation, validity, termination or breach ***thereof***.

*Id.*, Exh. F ¶ 1A (emphasis added).

29. Based on the express language of the arbitration provision in the LSPS OA, the claims the Debtors are investigating through the Requests would not be subject to arbitration. Accordingly, despite BP's efforts to implicate the LSPS OA's arbitration provision, the provision is inapplicable and thus does not preclude the Rule 2004 examination.[3]

---

[3] Even if the claims being investigated were subject to an arbitration provision (which they are not), that does not necessarily mean Rule 2004 discovery is unavailable. BP cites *In re Daisytek*, 323 B.R. 180, 186–87 (N.D. Tex. 2005) as support for its contention that requests under Bankruptcy Rule 2004 somehow cannot be approved by a court if there is an applicable arbitration provision that would require the bankruptcy court to send claims being investigated to arbitration. In addition to the fact that no arbitration provision applies here, *Daisytek* has drawn criticism for conflating two distinct analyses (the Rule 2004 analysis versus the arbitration removal analysis) and disregard for the underlying purpose of Rule 2004. *See Millennium Lab*, 562 B.R. at 631 ("[T]he Court will not speculate as to what causes of action the Trustee may unearth through the Rule 2004 investigations, and therefore the reasoning in *Daisytek* is not compelling."); *In re Friedman's, Inc.*, 356 B.R. 779, 784 (Bankr. S.D. Ga. 2005), *appeal denied, judgment aff'd sub nom. In re Friedman's Inc.*, No. 406CV024, 2006 WL 8434145 (S.D. Ga. June 21, 2006) (emphasis added) ("To follow *Daisytek* in these circumstances ***would defeat a fundamental purpose of Rule 2004***, which is to grant debtors like Friedman's a broad power to determine what causes of action they may possess.") (emphasis added) (citations omitted).

**C.     The Pending Proceeding Rule Does Not Apply Here Because There is No Pending Proceeding**

30.     BP also improperly relies on the "pending proceeding" rule, which is inapplicable here.  Under the "pending proceeding" rule, a party may not use an examination solely to gather information for use in pending litigation such as an adversary proceeding or contested matter.  *In re Kipp*, 86 B.R. at 491; *see also In re Nat'l Risk Assessment, Inc.*, 547 B.R. 63, 65 (Bankr. W.D.N.Y. 2016).  Rather, once an adversary proceeding, contested matter, or non-bankruptcy litigation is formally commenced, parties generally should make discovery requests under Bankruptcy Rules 7026–7037 or Federal Rules of Civil Procedure, as applicable.  *Kipp*, 86 B.R. at 491; *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002).  However, "[u]ntil an adversary proceeding (or contested matter) is actually commenced, Part VII of the Rules of Bankruptcy Procedure does not apply, and discovery under Rule 7026 *et seq.* cannot occur."  *Mirant*, 326 B.R. at 357.  Thus, the "pending proceeding" rule does not prevent a Rule 2004 examination where litigation **may be** commenced.  Indeed, this limitation only applies after an adversary proceeding **has actually commenced**.  *See, e.g.*, *Mirant*, 326 B.R. at 356 (refusing to "invoke a court-made exception to the plain language of Rule 2004 on the basis that a suit will be filed in the future" and noting that "some courts have allowed discovery under Rule 2004 even when it is in aid of pending litigation.").  By extension, the fact that a requesting party may use information obtained during a Bankruptcy Rule 2004 examination in a subsequent (even unrelated) proceeding does not implicate the "pending proceeding" rule if the subsequent proceeding is not yet "pending."  *See In re Enron Corp. Secs. Litig.*, No. H-01-3624, 2004 WL 613091, at *3 (S.D. Tex. Mar. 16, 2004) (citations omitted) (collecting cases for the proposition that "[a] number of cases . . . are clear on the point that just because information gained via Rule 2004 may be used later in a collateral proceeding is no reason to forbid Rule 2004 discovery.");

*see also Millennium Lab*, 562 B.R. at 631 (refusing to "speculate as to what causes of action" a party might "unearth" or later bring as a result of information gathered during an examination).

31. The "pending proceeding" rule does not preclude the Debtors from obtaining the information requested in the Rule 2004 Requests for three reasons. **First**, the Debtors have not commenced any adversary proceeding, contested matter, or non-bankruptcy litigation related to the information sought by the Rule 2004 Requests. **Second**, while BP points to the Removal Notice as a basis to apply the "pending proceeding" rule (*see* Mot. ¶ 32), as explained above, the Rule 2004 Requests are targeted at information related to BP's conduct involving the PSA and are unrelated to the Removal Notice. **Third**, despite BP's contention that the Debtors cannot benefit from discovery gained from the Requests in a dispute regarding the Removal Notice, the weight of authority does not support this argument, especially given that the removal issue is unrelated to the Requests. *See Enron Corp. Secs. Litig.*, 2004 WL 613091, at *3 (holding that Rule 2004 discovery may be used in a collateral proceeding); *see also Mirant*, 326 B.R. at 356 (same). The fact that the Debtors might "unearth" additional causes of action from BP's responses to the Rule 2004 Requests does not render the Requests impermissible; rather, it means the Requests fall squarely within the investigatory purpose of Rule 2004. *See Millennium Lab*, 562 B.R. at 631. Indeed, the Debtors can appropriately obtain information by the Rule 2004 Requests that can be used in a future adversary proceeding commenced in the bankruptcy court or even in disputes outside of these chapter 11 cases, whether such claims focus on the PSA or not. To hold otherwise would be contrary to the very purpose of Rule 2004.

**D.     The Rule 2004 Requests Do Not Unduly Burden, Oppress, or Harass BP**

33. The benefits that the Debtors will receive from the Rule 2004 Requests—namely, support for claims that would potentially result in significant recovery ultimately benefitting creditors—outweigh any possible burdens.

34. Courts limit Rule 2004 examinations only if the requests are overly broad or burdensome. *See Express One Int'l*, 217 B.R. at 217; *Correra*, 589 B.R. at 108 (noting that a bankruptcy court "has abundant legal authority to order the retrieval of information concerning a debtor and his estate from persons and entities who are not parties in a bankruptcy case"). Courts allow examinations where, as here, the potential benefits of an examination to the examiner outweigh any costs or disruptions to the person being examined. *See In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (granting Rule 2004 motion after finding that "the cost and disruption to the person being examined" did not "outweigh the benefits to the examiner").

34. As this Court knows, the Debtors' Genovesa well was not able to begin production as quickly as the Debtors justifiably planned. In fact, as BP is aware, bringing Genovesa online took well over a year longer than anticipated. In light of BP's conduct both prior to and subsequent to entering the PSA, the Debtors have incurred significant damages and believe they might have viable claims against BP, among others, as a result. Although the Debtors cannot be certain of the extent and value of such claims until they complete the Rule 2004 examination, the potential damages appear to be large, especially given the competitive nature of the Debtors' industry and of this well in particular. Thus, the Debtors have reason to think they have valuable claims against BP and others and seek proper use of Rule 2004 to further investigate.

13

35. Accordingly, the benefits of the Debtors receiving the requested information (*i.e.*, potentially large damages recovery if claims related to the PSA issues or additional valuable causes of action are successfully prosecuted, which would ultimately inure to the benefit of creditors) greatly outweigh the burdens (*i.e.*, standard discovery protocols). All Rule 2004 examinations are "burdensome" and invasive to a certain extent. Here, however, the Rule 2004 Requests do not burden, harass, or oppress BP under the applicable standard espoused by this Court. *See Buccaneer Res.*, 2015 WL 8527424, at *6. This is especially true given the tailored nature of the Rule 2004 Requests and the fact they target information related to the PSA. To that end, the Rule 2004 Requests will appropriately allow the Debtors to obtain valuable information about the PSA, surrounding circumstances, and other causes of action it might have against BP or others.

E. **Any Confidential Information Can Be Produced Subject to the Protective Order in this Case, and the Rule 2004 Requests Are Not Untimely**

36. BP also asserts that the Rule 2004 Requests should be quashed because the Requests seek confidential information and are untimely. Regarding confidentiality, the fact that some documents might be "confidential" under the terms of the PHA does not provide a basis to deny the Rule 2004 Requests. Axiomatically, confidentiality does not shield a party from discovery. As BP is aware, there is a protective order in place in this case that protects confidential information. Indeed, BP itself is already a signatory to the operative protective order. [ECF No. 354]. Also, just as the Debtors have been required to share confidential documents with BP during these chapter 11 cases despite the Debtors' concerns about providing business sensitive information to a competitor like BP, BP must do the same.

37. BP's timeliness argument is equally unpersuasive. While BP cites the Court's Scheduling Order [ECF No. 1224] to argue that the Rule 2004 Requests are untimely,

this Scheduling Order only applies to confirmation-related discovery—not Rule 2004 Requests, for which there is no Court-ordered deadline. The Rule 2004 Requests relate to potential causes of action against BP and others—as explained above and as the Debtors made clear to BP's counsel when the parties met and conferred prior to BP filing the Motion—***not*** the Plan's confirmability pursuant to section 1129 of the Bankruptcy Code. Accordingly, the Court should deny BP's attempts to avoid answering the Rule 2004 Requests.

## CONCLUSION

38. For the foregoing reasons, good cause exists for the Rule 2004 Requests, and the Motion should be denied.

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the Motion.

Dated: June 11, 2021
      Houston, Texas

      /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email:  Alfredo.Perez@weil.com
           Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:  Matt.Barr@weil.com
           Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:  Paul.Genender@weil.com
           Erin.Choi@weil.com

*Attorneys for the Debtors
and Debtors in Possession*

## Certificate of Conference

The Debtors' counsel conferred with BP's counsel by phone on June 11, 2021, in an attempt to resolve the Motion, but were unable to resolve the Motion.

                                                                                   */s/ Erin M. Choi*
                                                                                    Erin M. Choi

## Certificate of Service

I hereby certify that, on June 11, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                                 */s/ Alfredo R. Pérez*
                                                                                Alfredo R. Pérez