IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |
| | § | Re: ECF No. 1412 |

**DEBTORS' RESPONSE TO MOTION OF SHELL OFFSHORE INC. TO
QUASH DEBTORS' BANKRUPTCY RULE 2004 DISCOVERY REQUESTS**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), submit this response (the "**Response**") to the *Shell Offshore Inc.'s Motion to Quash Debtors' Notice of Bankruptcy Rule 2004 Request for Production of Documents From Shell Offshore Inc.* [ECF No. 1412] (the "**Motion**")[2] filed by Shell Offshore Inc. ("**Shell**"). In support of the Response, the Debtors respectfully represent the matters set forth below.

## PRELIMINARY STATEMENT

1. Shell's Motion should be denied because the Debtors are entitled to the discovery they seek pursuant to Rule 2004 ("**Rule 2004**") of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Plan (as defined herein), as applicable.

2.      Rule 2004 broadly permits discovery related to "the . . . property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004. The Debtors' Rule 2004 Requests to Shell (the "**Rule 2004 Requests**" or "**Requests**") aim to examine one issue: delays related to operations at the Genovesa well ("**Genovesa**") and the associated loss to the Debtors. The Requests fit squarely within Rule 2004's broad scope, despite Shell's assertions that the Debtors lack "good cause" for the Requests.

3.      As the Court is aware, the undue delay with respect to Genovesa going online caused significant harm to the Debtors' estates. On information and belief, the delay was a particular result of BP Exploration & Production, Inc.'s ("**BP**") various actions, or inactions, with respect to the *Purchase and Sale Agreement by and between BP Exploration & Production Inc. and Fieldwood Energy LLC in respect of Mississippi Canyon Block 519*, dated May 17, 2019 (the "**PSA**"). On further information and belief, Shell may also be responsible for the delay. Through the Rule 2004 Requests, the Debtors seek to investigate the events leading to the Genovesa delay to determine the extent that the Debtors' estates can recover its lost value. Specifically, the Requests investigate potential claims against Shell as well as information relevant to potential claims against third parties, including BP. Accordingly, "good cause" supports the Rule 2004 Requests.

4.      Shell raises several arguments in its Motion, each of which is misplaced. *First*, Shell deems the Rule 2004 Requests irrelevant. However, in doing so, Shell ignores the broad scope of Rule 2004, downplays Shell's relationship with BP, and overlooks Shell's connection with Genovesa. *Second*, Shell complains that the Rule 2004 Requests seek confidential information, but as Shell is aware (because it is a signatory), there is already a

protective order in place in this case that covers confidential documents. ***Third***, Shell argues that the Rule 2004 Requests are burdensome, harassing, and overbroad, even though the potential benefits of the Debtors' successful prosecution of potential claims (large damages recovery that would inure to the benefit of creditors) far outweigh any burden associated with Shell's compliance with the Rule 2004 Requests. Accordingly, for these reasons and as explained further below, the Court should deny the Motion.

## BACKGROUND

**A.    Debtors' Chapter 11 Cases**

5. On August 3 and 4, 2020, the Debtors each commenced in this Court a voluntary case under title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

7. On April 15, 2021, the Debtors filed their *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [ECF No. 1284] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**"). A hearing to consider confirmation of the Plan is set for June 18, 2021 at 9:30 a.m. (prevailing Central Time). [ECF No. 1486].

**B.    The Genovesa Well**

8. Genovesa is located in the Gulf of Mexico. Genovesa is one of several wells and prospects that currently flow or eventually will flow production on a nearby undersea

3

loop pipeline called the Galapagos Area Loop Subsea Production System ("**LSPS**"). The LSPS transports hydrocarbons from these wells to the Na Kika platform, which BP and Shell co-own (the Debtors are not co-owner of this platform) and operate.

9. The Debtors and BP, among others, are parties to the *Galapagos Area Loop Subsea Production System Construction and Operating Agreement*, dated December 1, 2011 (as amended from time to time, the "**LSPS OA**"), which governs Genovesa's access to the loop system. The same parties are signatories to the *Production Handling and Operating Services Agreement*, effective September 21, 2010 and last amended May 1, 2019 (the "**PHA**"), which governs access to Na Kika. In effect, the LSPS OA governs the relationship of the parties as joint owners of the LSPS. The PHA, on the other hand, governs the relationship of the parties as producers on the LSPS to Na Kika.

10. In 2018, Genovesa was owned by the Debtors and BP, among others. The Debtors also operate Genovesa.

11. In addition to its ownership in Genovesa, BP also owned the Manuel well ("**Manuel**"), which draws from the same oil reservoir as Genovesa. Shell is also an owner of Manuel. Manuel's production flows to Na Kika, as well, though not through the LSPS.

12. In 2018, the Debtors were enthusiastic about Genovesa's prospect to produce oil. BP and Shell did not share the Debtors' enthusiasm, in part because, on information and belief, BP had already made a considerable investment in the drilling of Manuel and Genovesa would serve to reduce the reserves captured from Manuel.

13. In 2019, BP sold all of its interest in Genovesa to the Debtors and focused its efforts on Manuel. Upon the sale, the parties entered into the PSA.

14. After execution of the PSA, the Debtors became concerned about the propriety of BP's actions. These concerns resulted in delays that ultimately culminated in the *Debtors' Emergency Motion to Compel BP to Perform Pre-Petition Contracts* [ECF No. 792], considered and decided by this Court on February 2, 2021 [ECF No. 845].

15. In February 2020, BP representatives indicated to the Debtors for the first time that, in order to access Na Kika on the Debtors' timeline, the Debtors would need to come to an agreement with Shell—who is not a party to the PHA. On further information and belief, Shell directed BP and BP acquiesced in refusing the Debtors' access to Na Kika.

C.  **The Debtors' Rule 2004 Requests**

16. In an effort to derive additional value for the Debtors' estate and in light of Shell's conduct regarding Genovesa, the Debtors are in the process of investigating potential claims against Shell and other third parties.

17. As part of this investigation, on May 21, 2021, the Debtors served Shell with the *Debtors' Notice of Bankruptcy Rule 2004 Request for Production of Documents from Shell Offshore Inc.* (the "**Rule 2004 Notice**").

18. The Rule 2004 Requests are targeted at potential claims regarding Shell's conduct and conduct of third parties about which Shell may have information or documents related to the Genovesa delay.

## RESPONSE

A.  **The Broad Scope of Rule 2004 Authorizes the Rule 2004 Requests.**

19. Rule 2004 permits the Bankruptcy Court to order "the examination of persons and entities that have knowledge" of the debtor's "property or [] liabilities . . . or to any matter which may affect the administration of the estate." *In re Buccaneer Res., LLC*, 2015 WL 8527424, at *6 (Bankr. S.D. Tex. 2015) (Jones, J.) (quoting Fed. R. Bankr. P. 2004(b)). A Rule

2004 examination is "nonadversarial in nature," instead "aimed at discovering evidence upon which future causes of action may be based." *In re Bounds*, 443 B.R. 729, 732 (Bankr. W.D. Tex. 2010) (Gargotta, J.) (citation omitted).

20. "[T]he scope of a Rule 2004 examination is exceptionally broad," "unfettered," and "virtually unlimited," encompassing **any matter** which "may affect administration of the debtor's estate." *In re Correra*, 589 B.R. 76, 108–09 (Bankr. N.D. Tex. 2018) (Jernigan, J.); *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) (Ayers, C.J.); *see also In re NE 40 Partners, Ltd. P'ship*, 440 B.R. 124, 129 (Bankr. S.D. Tex. 2010) (Bohm, J.) (noting that Bankruptcy Rule 2004 "effectively permit[s] [a debtor] to go on 'licensed fishing expeditions'") (citing *Bounds*, 443 B.R. at 736). Even the cases cited by Shell recognize that, "[n]ecessarily, the scope of Rule 2004 is extremely broad." *In re Buckner*, 271 B.R. 213 (B.A.P. 10th Cir. 2001) (cited by Shell at Mot. ¶ 20); *Matter of Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) ("the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted") (cited by Shell at Mot. ¶ 20).

21. If the party served with a Rule 2004 examination request objects, the party requesting the examination has the burden of showing "good cause" for the request. *See, e.g.*, *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998). To establish "good cause," the requesting party must show "some reasonable basis" for requesting the examination. *In re Youk-See*, 450 B.R. 312, 320 (Bankr. D. Mass. 2011) (quoting *In the Matter of Wilcher,* 56 B.R. 428 (Bankr. N.D. Ill. 1985)). This may include the requesting party's need to "determine the scope of viable claims that [the debtor may have] against potential third parties." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (Silverstein, J.); *see also Correra*, 589 B.R. at 108 (describing the Rule's investigative purposes);

6

*In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (explaining that courts should consider whether "the denial of such request would cause the proposed examiner undue hardship or injustice" when analyzing whether "good cause" exists).

22. Courts routinely authorize Rule 2004 examinations aimed at investigating potential claims against third parties, especially where successful pursuit of any such claims will enlarge a debtor's estate to the benefit of creditors. *See Bounds*, 443 B.R. at 736; *In re Mirant Corp.*, 326 B.R. 354, 357 (Bankr. N.D. Tex. 2005); *Millennium Lab*, 562 B.R. at 626. For example, in *Bounds*, Judge Gargotta authorized a creditor to examine another creditor because the requested documents "affect[ed] administration of the debtor's estate" insofar as "[a]ny judgment obtained [by the requesting creditor] . . . would [increase] the amount to which other creditors would be entitled." 443 B.R. at 736. Similarly, in *In re Mirant Corp.*, Judge Lynn authorized a Rule 2004 examination because the court found that such examination "may be critical to ensure that no viable cause of action is lost." *Id.* at 357. Also, in *Millennium Lab*, Judge Silverstein found that Rule 2004 authorized a plan trustee to obtain documents from a third party because (i) such discovery was used "to explore prepetition causes of action the [d]ebtors may have against [t]hird [p]arties" and (ii) any "proceeds from the claims . . . w[ould] be distributed to all creditors." *Id.* at 630.

23. Here, "good cause" supports the Rule 2004 Requests because the Requests seek information relating to potential claims that the Debtors have against Shell, BP, and other third parties which may yield proceeds that will significantly benefit the Debtors, their estates, and creditors. *See Bounds*, 443 B.R. at 736; *Mirant Corp.*, 326 B.R. at 357; *Millennium Lab*, 562 B.R. at 630.

24. Through the Rule 2004 Requests, the Debtors thus properly use Rule 2004 to investigate potential claims to pursue against Shell. *See Millennium Lab*, 562 B.R. at 630; *Correra*, 589 B.R. at 108. The Rule 2004 Requests are narrowly focused on specific information, during a specific timeframe, about specific conduct regarding the Genovesa delay upon which the Debtors have a good faith basis to believe claims may exist. To that end, although Shell asserts that the "expansive time period" of the Requests "would be extremely burdensome" (Mot. ¶ 2), the requested timeframe (from 2018 through 2021) aligns with the relevant events outlined in this Response and Shell's own Motion. *See supra* ¶¶ 5–12; Mot. ¶¶ 4–8. If, as a result of their investigation the Debtors bring claims against Shell, BP, or another third party, any recovery will benefit creditors. Accordingly, "good cause" supports the Rule 2004 Requests.

**B.     Any Confidential Information Can Be Produced Subject to the Protective Order in this Case.**

25. Shell also asserts that the Rule 2004 Requests should be quashed because the Requests seek confidential information. Regarding confidentiality, the fact that some documents might be "confidential" does not provide a basis to deny the Rule 2004 Requests. *See In re Metiom, Inc.*, 318 B.R. 263, 271 (S.D.N.Y. 2004) (denying examinee's appeal of order requiring examinee to submit to a Rule 2004 examination and noting "[i]t is well settled that there is no absolute privilege for . . . confidential information; the protection afforded is that if the information sought is shown to be relevant and necessary, proper safeguards will attend disclosure") (citation omitted). Axiomatically, confidentiality does not shield a party from discovery. *See, e.g., id.* As Shell is aware, there is a protective order in place in this case that protects confidential information. Indeed, Shell itself is already a signatory to the operative protective order. [ECF Nos. 354, 989]. Also, just as the Debtors have been required to share

8

confidential documents with Shell during these chapter 11 cases despite the Debtors' concerns about providing business sensitive information to a competitor like Shell, Shell must do the same.

26. Accordingly, the Court should deny Shell's attempts to avoid answering the Rule 2004 Requests on the basis that they seek confidential information.

C. **The Rule 2004 Requests Do Not Unduly Burden, Oppress, or Harass Shell Nor are the Requests Overly Broad.**

27. The benefits that the Debtors will receive from the Rule 2004 Requests—namely, support for claims that would potentially result in significant recovery ultimately benefitting the creditors—outweigh any possible burdens to Shell.

28. Courts limit Rule 2004 examinations only if the requests are overly broad or burdensome. *See Express One Int'l*, 217 B.R. at 217; *Correra*, 589 B.R. at 108 (noting that a bankruptcy court "has abundant legal authority to order the retrieval of information concerning a debtor and his estate from persons and entities who are not parties in a bankruptcy case.") Courts allow examinations where, as here, the potential benefits of an examination to the examiner outweigh any costs or disruptions to the person being examined. *See In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (granting Rule 2004 motion after finding that "the cost and disruption to the person being examined" did not "outweigh the benefits to the examiner").

29. Courts also regularly reject arguments that requests pursuant to Rule 2004 are overly broad in light of the broad scope of Rule 2004 generally. *See, e.g.*, *In re Whitley*, No. 10-10426C-7G, 2011 WL 6202895, at *2 (Bankr. M.D.N.C. Dec. 13, 2011) (overruling an over-breadth objection to Rule 2004 discovery "does not present a valid reason for limiting [discovery]" because of "the breadth of the language of Rule 2004"); *In re M4 Enters., Inc.*, 190

9

B.R. 471, 474 (Bank. N.D. Ga. 1995) (rejecting the argument that Rule 2004 discovery was overbroad because accepting that argument "would substantially contravene the policy behind the Rule and compromise bankruptcy's general predilection for open-aired examination").

30. As this Court knows, the Debtors were not able to begin production with respect to Genovesa as quickly as the Debtors justifiably planned. In fact, bringing Genovesa online has taken more than a year longer than anticipated. In light of Shell's conduct in connection with the Genovesa delay, the Debtors have incurred significant damages and believe they might have viable claims against Shell, among others. Although the Debtors cannot be certain of the extent and value of such claims until they complete the Rule 2004 examination, the potential damages appear to be large, especially given the competitive nature of the Debtors' industry and of this well in particular. Thus, the Debtors have reason to think they have valuable claims against Shell, BP, and others and seek proper use of Rule 2004 to further investigate.

31. Accordingly, the benefits of the Debtors receiving the requested information (i.e., potentially large damages recovery if claims related to Genovesa delay are successfully prosecuted, which would ultimately inure to the benefit of creditors) greatly outweigh the burdens (i.e., standard discovery protocols). All Rule 2004 examinations are "burdensome" and invasive to a certain extent. Here, however, the Rule 2004 Requests do not burden, harass, or oppress Shell under the applicable standard espoused by this Court. *See Buccaneer Res.*, 2015 WL 8527424, at *6. This is especially true given the tailored nature of the Rule 2004 Requests. Rather, the Rule 2004 Requests will appropriately allow the Debtors to obtain valuable information about the delays related to Genovesa and the surrounding circumstances. Especially given the purpose and broad scope of Rule 2004, the Court should reject Shell's arguments here. *See Whitley*, 2011 WL 6202895, at *2.

## CONCLUSION

32. For the foregoing reasons, good cause exists for the Rule 2004 Requests, and the Motion should be denied.

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the Motion.

Dated: June 11, 2021
      Houston, Texas

        /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email:  Alfredo.Perez@weil.com
         Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:  Matt.Barr@weil.com
         Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email:  Paul.Genender@weil.com
         Erin.Choi@weil.com

*Attorneys for the Debtors*
*and Debtors in Possession*

**Certificate of Conference**

The Debtors' counsel conferred with Shell's counsel by phone on June 11, 2021, in an attempt to resolve the Motion, but were unable to resolve the Motion.

 _/s/ Erin M. Choi_
Erin M. Choi

**Certificate of Service**

I hereby certify that, on June 11, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

 _/s/ Alfredo R. Pérez_
Alfredo R. Pérez