# Exhibit 1

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| Fill in this information to identify the case (Select only one Debtor per claim form): | |
|---|---|
| ☒ Fieldwood Energy LLC (20-33948) | ☐ GOM Shelf LLC (20-33954) |
| ☐ Dynamic Offshore Resources NS, LLC (20-33947) | ☐ Bandon Oil and Gas GP, LLC (20-33955) |
| ☐ Fieldwood Energy Inc. (20-33949) | ☐ Bandon Oil and Gas, LP (20-33956) |
| ☐ Fieldwood Energy Offshore LLC (20-33950) | ☐ Fieldwood Energy SP LLC (20-33958) |
| ☐ Fieldwood Onshore LLC (20-33951) | ☐ Galveston Bay Pipeline LLC (20-33959) |
| ☐ Fieldwood SD Offshore LLC (20-33952) | ☐ Galveston Bay Processing LLC (20-33960) |
| ☐ FW GOM Pipeline, Inc. (20-33953) | ☐ Fieldwood Offshore LLC (20-33961) |

## Modified Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

---

### Part 1:   Identify the Claim

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | **U.S. Specialty Insurance Company** | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. **Has this claim been acquired from someone else?** | ☒ No ☐ Yes. From whom? _____ | |
| 3. **Where should notices and payments to the creditor be sent?** <br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | Contact phone 713-226-1200 | Contact phone 310-242-4403 |
| | Contact email peisenberg@lockelord.com | Contact email flanak@tmhcc.com |
| 4. **Does this claim amend one already filed?** | ☒ No ☐ Yes.  Claim number on court claims registry (if known)_____   Filed on ___/___/___ <br> MM / DD / YYYY | |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No ☐ Yes. Who made the earlier filing? _____ | |

---

**Claim Number: 477**                              Proof of Claim

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|---------|

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____

**7. How much is the claim?**  $ 74,528,695.00

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

| | | Amount entitled to priority |
|---|---|---|

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.  $_____

*\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.*

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

☒ No

☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**  $_____

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Frank M. Lanak*
Frank M. Lanak (Nov 20, 2020 14:39 CST)

**Email:** eguffy@lockelord.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Frank M. Lanak |
| | First name        Middle name        Last name |
| Title | Vice President |
| Company | U.S. Specialty Insurance Company |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 801 S. Figueroa Street, Suite 700 |
| | Number        Street |
| | Los Angeles        CA        90017 |
| | City        State        ZIP Code |
| Contact phone | 310-242-4403        Email   flanak@tmhcc.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
   **(attach below)**

☐ **I do _not_ have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

<u>Modified Official Form 410</u>

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                                     12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

**Do not file these instructions with your form**

## STATEMENT OF CLAIM

**Claimant:**  U.S. Specialty Insurance Company ("USSIC")

**Debtor:**  Fieldwood Energy, LLC.

**Supporting Documentation:**  Supporting documentation for this claim includes bonds, a payment and indemnity agreement (the "Payment and Indemnity Agreement"), additional named principal supplements (the "Principal Supplements"), letter agreements, and other related documentation (collectively, the "Agreements").  The claims based on the Agreements are generally described below.  Copies of the Payment and Indemnity Agreement and the Principal Supplements are attached hereto.  Additional documentation is available for inspection and/or production upon request and upon execution of a confidentiality agreement and/or protective order.

**Factual Background:**  The Debtor and USSIC, along with certain affiliates of the Debtor, are parties to a significant number of bonds (the "Bonds"), summarized as follows:

| Bond number | Penalty amount | Principal |
|---|---|---|
| B0059901 | $3,000,000.00 | Fieldwood SD Offshore, LLC |
| B005991 | $300,000.00 | Fieldwood SD Offshore, LLC |
| B005992 | $790,000.00 | Fieldwood Onshore, LLC |
| B005993 | $25,000.00 | Galveston Bay Pipeline, LLC |
| B005994 | $770,000.00 | Fieldwood SD Offshore, LLC |
| B007994 | $2,000,000.00 | Fieldwood Onshore, LLC |
| B008781 | $325,000.00 | Fieldwood Energy Offshore, LLC |
| B008837 | $1,651,851.00 | Fieldwood Energy Offshore, LLC |
| B008838 | $115,988.00 | Fieldwood Energy Offshore, LLC |
| B008839 | $1,676,556.00 | Fieldwood Energy Offshore, LLC |
| B008899 | $75,000.00 | Fieldwood Onshore, LLC |

1

| B008908 | $6,000.00 | Fieldwood Energy Offshore, LLC |
|---|---|---|
| B008940 | $3,000,000.00 | Bandon Oil and Gas, LP |
| B008941 | $300,000.00 | Bandon Oil and Gas, LP |
| B008942 | $3,000,000.00 | Dynamic Offshore Resources, NS |
| B008943 | $300,000.00 | Dynamic Offshore Resources, NS |
| B008963 | $350,000.00 | Fieldwood Energy, LLC |
| B009064 | $100,000.00 | Fieldwood Energy, LLC |
| B009075 | $125,000.00 | Fieldwood Energy Offshore, LLC |
| B009076 | $250,000.00 | Fieldwood Energy Offshore, LLC |
| B009183 | $146,000.00 | Fieldwood Energy, LLC |
| B009311 | $4,560,000.00 | GOM Shelf, LLC |
| B009344 | $50,000,000.00 | Fieldwood Energy Offshore, LLC |
| B010590 | $175,000.00 | Fieldwood Energy, LLC |
| B010618 | $1,212,300.00 | Fieldwood Energy, LLC |
| B012528 | $225,000.00 | Fieldwood Energy, LLC |
| **Total** | **$74,528,695.00** | |

The terms of the Agreements between the Debtor and USSIC and their respective obligations in connection with the Bonds are more fully set out in the Supporting Documentation described above.  The Debtor is a Principal as to each of the Bonds listed above and is fully liable to USSIC as to each of them.

The Payment and Indemnity Agreement, *inter alia*, contains the following specific provisions:

"The Surety may at any time and from time to time hereafter, in its sole discretion, require the Principals to provide collateral, in form and amounts acceptable to the Surety, to secure the Principals' obligations to the Surety hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond.  Immediately upon Surety's demand therefor, each Principal shall execute such

2

documents and take such further action as may be necessary in order to provide such collateral."

"In the even any action is instituted to enforce any of the provisions of this Agreement or to recover damages for the breach of any provision hereof, the prevailing party therein shall be entitled to recover any costs or expenses incurred, including without limitation, costs of court and reasonable attorneys' fees."

Prior to the Petition Date, USSIC made demand on the Debtor and its affiliates for collateral security in the amount of $74,528,695.00. Despite this demand, as of the date of this Proof of Claim, the Debtor and its affiliates have failed to provide the collateral security as required by the Payment and Indemnity Agreement.

**Claims:**     USSIC hereby asserts the following claims (together, the "Claim"):

(a)  All rights under the Payment and Indemnity Agreements;

(b)  Without limiting (a) above, all unpaid premiums due under the Agreements, including all applicable interest and late fees;

(c)  Without limiting (a) or (b) above, USSIC's right to immediate and full collateralization of the Debtor's actual and potential liabilities under the Bonds, which right hereby USSIC fully asserts as of the petition date;

(c)  Without limiting (a), (b), or (c) above, USSIC's right to reimbursement of the amounts it has been and will be required to expend during the Debtor's chapter 11 case related to the Bonds;

(d)  Attorneys' fees and costs as provided by the terms of the Payment and Indemnity Agreements; and

(e)  All other rights of USSIC under the Agreements.

USSIC reserves all rights with respect to cure, adequate assurance, or rejection damages claims that may arise, to the extent that the Debtor treated the Agreements as executory contracts, and specifically reserves all rights to require assumption of the indemnity obligations set out in the Payment and Indemnity Agreements and the other Agreements. USSIC also reserves the right to dispute any characterization of the Agreements as executory contracts.

USSIC further reserves its right to assert all premiums accrued or accruing postpetition as administrative claims against the Debtor's estate.

3

This Claim is without prejudice to USSIC's rights and claims against third parties in connection with the Agreements, and all such rights and claims are fully reserved.

**Reservation of Rights**

Investigation continues, and USSIC reserves its rights to amend this Claim and to submit additional backup and other supporting documentation as necessary and appropriate.   In particular, USSIC reserves its rights to assert additional or amended claims against the Debtor, as warranted and as further information is developed and investigation continues.   USSIC further reserves the right to assert administrative priority claims against the Debtor.

Without limitation, USSIC reserves its rights to assert that cure amounts are due under the Agreements on a post-petition basis or that such cure amounts have administrative priority.

(01/31/13 - special)                                                                                  Fieldwood / PIA No. 1055

## PAYMENT AND INDEMNITY AGREEMENT No. 1055

THIS PAYMENT AND INDEMNITY AGREEMENT (as amended and supplemented, this "Agreement") is executed by each of the undersigned on behalf of each Principal (as defined below) for the benefit of U.S. Specialty Insurance Company (the "Surety") in connection with any bond or bonds executed or to be executed on behalf of any Principal and to induce the Surety to execute or procure the execution of such bond(s) and any extensions, modifications, or renewals thereof, additions thereto, or substitutions therefor (the "Bonds"). The term "Principal" as defined and used herein shall mean any of the undersigned individuals or entities, as well as any and all affiliates, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of the undersigned or any wholly or partially owned subsidiary, division or affiliate has an interest or participation, whether now existing or which may hereafter be created or acquired.

IN CONSIDERATION of the execution or procurement of the Bonds, and for other good and valuable consideration, the receipt and sufficiency of which the Principals hereby acknowledge, the Principals hereby agree, for themselves, their personal representatives, successors, and assigns, jointly and severally, as follows:

1. **Bond Premiums**   The Principals shall pay to the Surety premiums and charges at the rates and at the times specified by the Surety with respect to each Bond (as the Surety may specify at any time before or after the issuance of any Bond), continuing until the Surety shall be discharged or released from any and all liability and responsibility under the Bonds, and all matters arising therefrom, and until the Surety receives evidence, satisfactory to the Surety, of such discharge or release. All first year premiums are fully earned immediately upon issuance of each Bond and must be paid in full unless otherwise agreed in writing. If any Principal fails to pay when due any premium or portion thereof, or fails to pay within ten days after demand of any other sum becoming due the Surety hereunder; then, unless the Principals shall, immediately upon demand therefor: (a) deliver to the Surety evidence, satisfactory to the Surety, of the discharge and release of the Surety from any and all liability and responsibility under the Bonds and all matters arising therefrom; and (b) pay to the Surety all sums owed the Surety as of the effective date of such absolute release of the Surety from said obligations, the Surety may require there be paid, and the Principals jointly and severally agree they shall forthwith pay to the Surety, an amount equal to the full penalty amount of the Bonds, to be held as collateral until: (i) all sums due and to become due to the Surety have been paid, and (ii) the Surety shall be wholly discharged and released from all liability under the Bonds.

2. **Indemnification of Surety**   The Principals shall jointly and severally indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, damage, loss, cost, and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which the Surety may at any time sustain or incur by reason or in consequence of having executed or procured the execution of the Bonds or in enforcing this Agreement against any Principal or in procuring or in attempting to procure the Surety's release from liability or a settlement under any Bonds. If the Surety deems it necessary to make an independent investigation of a claim, demand or suit, the Principals jointly and severally acknowledge and agree that all expenses attendant to such investigation, whether incurred internally or with third parties, is included as an indemnified expense.

3. **Security**   The Surety may at any time and from time to time hereafter, in its sole and absolute discretion, require the Principals to provide collateral, in form and amounts acceptable to the Surety (such amounts not to exceed the aggregate penalty sum of all then-issued Bonds) to secure the Principals' obligations to the Surety hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond. Immediately upon the Surety's demand therefor, each Principal shall execute such documents and take such further action as may be necessary in order to provide such collateral. Each Principal hereby grants to the Surety a security interest in all money and other property now or hereafter delivered by such Principal to the Surety, and all income (if any) thereon. If a Principal provides the Surety with a letter of credit or similar instrument, such Principal agrees that the Surety has the right to call on the same from time to time, in whole or in part and for any reason or no reason, and to hold the proceeds thereof as collateral for the obligations of the Principals hereunder. Any collateral provided at any time by any Principal shall be available, in the discretion of the Surety, as collateral security on any or all Bonds heretofore or hereafter executed for or at the request of such Principal or any other Principal.

4. **Inspection**   Until the Surety shall have been furnished with evidence of its full, final and complete discharge without loss from any and all Bonds, the Surety and its agents shall have free access, at any and all reasonable times, to the books and records of each Principal relevant to the obligations under this Agreement. Each individual Principal consents to the Surety's requests for, and use of, consumer credit reports and investigative consumer credit reports with respect to such Principal. Any bank, creditor, credit bureau or credit reporting agency, obligee of a Bond or other individual or entity possessing records or having information concerning the financial affairs and operations of any Principal is hereby authorized to furnish to the Surety and its agents any such records or information requested by the Surety. Each Principal will execute any additional document requested by the Surety to cause the release of such records and information.

Deposit Box



Page 1 of 5

(01/31/13 - special)                                                                                                                          Fieldwood / PIA No. 1055

5. **Additional Sureties**  If IndemCo L.P. or the Surety shall procure any other company or companies, including but not limited to American Contractors Indemnity Company and/or SureTec Insurance Company, to execute or join with it in executing, or to reinsure any Bond, this Agreement shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give it or them a direct right of action against the Principals to enforce the provisions hereof.

6. **Evidence of Liability**  An itemized statement of payments made by the Surety for any of the purposes specified herein, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Principals to reimburse the Surety for such payments.

7. **Additional Rights of Surety**  The Surety, in its sole discretion and without notice to any Principal, is hereby authorized but not required, (a) from time to time to make or consent to any change in the Bonds or to issue any substitutes or any renewal thereof, and this Agreement shall apply to such substituted, changed or renewed Bonds; (b) take such action as it may deem appropriate to prevent or minimize loss under the Bonds, including, but not limited to, taking steps to procure discharge from liability under the Bonds; and (c) to adjust, settle, or compromise any claim or suit arising under the Bonds and, with respect to any such claim or suit, to take any action it may deem appropriate. Any adjustment, settlement, or compromise made or action taken by the Surety shall be conclusive against and binding upon the Principals.

8. **Bond Forms**  The Principals acknowledge and agree it is their sole responsibility to provide the proper forms for the Bonds to be executed by the Surety, and neither the Surety nor its agents shall have any liability whatsoever to any Principal if the Principals fail to furnish the Surety with the proper forms. It shall be the sole responsibility of the Principals to review the bond form to be executed by the Surety for any errors or omissions before delivery of any Bond to its obligee, and the Surety and its agents shall have no liability to the Principals on account of any such errors and omissions. Before requesting the Surety issue any Bond, the Principals shall obtain confirmation the proposed obligee on the Bond will accept the Surety as surety on the proposed Bond, and neither the Surety nor its agents shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any Bond. Each Principal agrees the Principals shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any Bond to its obligee. The Surety and its agents shall have no liability to the Principal if the Bond is not timely delivered to any obligee for any reason whatsoever.

9. **Additional Obligations of Principals**  Each Principal agrees to pay all amounts owed and/or described herein regardless of (a) the failure of any Principal to sign any application for a Bond; (b) any claim that other indemnity, security, or collateral was to have been obtained; (c) the release, return, or exchange by the Surety with or without the consent of any other Principal, of any indemnity, security, or collateral that may have been obtained, or (d) the fact that any other Principal is not bound for any reason. The Surety is expressly subrogated to all rights, if any (but if a Principal has waived its rights of subrogation against any party, such waiver shall control this Agreement), of the Principals (or any or all of them) to collect, receive, recover, and/or be reimbursed from (i) any co-owners or owners of undivided interest in any properties, wells, and leasehold interests relative to which the Bonds shall apply (collectively, the "Related Property"); (ii) any party contractually bound to pay or reimburse any Principal on account of ownership or operation of any Related Property; or (iii) any other party otherwise obligated to, or for, any Principal in any way, in connection with, or arising out of damage to any Related Property. The Surety, as subrogee, upon default of payment of any sums becoming payable hereunder by any Principal, may enforce all of the rights of the Principals in and to any such above-described claims and interests; and may pursue its remedies hereunder in its own name or in the name of the relevant Principal(s); but nothing herein shall require that the Surety pursue any such remedy or claim against any third party. Each Principal agrees, upon demand of the Surety therefor, to execute and deliver any and all appropriate further documentation evidencing and authorizing the Surety to pursue, recover, collect, and hold for its account any such claims or rights.

10. **Suits to Enforce**  Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any and all of the Principals; and any suit or suits upon one or more causes of action, or against one or more of the Principals, shall not prejudice or bar subsequent suits against any other Principals on the same or any other causes of action, whether theretofore or thereafter accruing.

11. **Liability Limitation**  Each Principal agrees the Surety's liability, if any, to any one or more of the Principals on account of any acts or omissions by the Surety (whether such acts or omissions arise in tort, breach of contract, or at law) arising out of or related to any Bonds or any other conduct by the Surety, **WHETHER THE SAME ARISES FROM THE NEGLIGENCE OF THE SURETY OR OTHERWISE**, shall be and is hereby expressly limited to an amount equal to the premium actually paid to the Surety for such Bond.

12. **Waiver of Notice**  Each Principal hereby expressly waives notice from the Surety of any claim or demand made against the Surety or any Principal under the Bonds or of any information the Surety may receive concerning any Principal, any Bond, or any contract.

13. **No Obligation to Issue Bonds**  The Surety shall have the right to decline to issue any or all Bonds applied for hereunder and shall have the right to withdraw from or cancel any application for a Bond at any time, all without incurring any liability to any Principal. The use of the plural term "Bonds" herein shall not be interpreted to require that the Surety issue multiple bonds or any bond whatsoever.

14. **Conflict and Modification**  If any portion of this Agreement is in conflict with any law controlling the construction hereof, such portion of this instrument shall be considered to be deleted and the remainder shall continue in full force and effect.

IndemCo

(01/31/13 - special)                                                   Fieldwood / PIA No. 1055

15. **Waivers**   To the maximum extent not prohibited by applicable law, each Principal hereby waives all rights to claim any of its property is exempt from levy, execution, sale, or other legal process in any action hereunder.

16. **Continuing Obligation**   This Agreement is a continuing obligation of each Principal, and no Principal shall have the right to terminate its obligations for any Bonds issued during the term hereof. A Principal may terminate this Agreement as to future Bonds by notice to the Surety, but such termination as to a Principal shall in no way affect the obligation of any other Principal who has not given such notice. In order to terminate liability as to future Bonds, a Principal must notify the Surety of such termination and state in such notice the effective date (not less than 30 days after receipt thereof by the Surety) of termination of such Principal's liability for future Bonds. After the effective date of such termination, the Principal giving notice of termination shall nonetheless be liable hereunder for Bonds executed or authorized before such date and renewal, substitutions, and extensions thereof.

17. **Place of Performance and Enforcement**   All obligations hereunder of each Principal is performable in, and all monies due the Surety hereunder are payable in, Harris County, Texas. This Agreement shall be construed and enforced in accordance with the laws of the state of Texas, without regard to its conflict of law rules. **EACH PRINCIPAL HEREBY IRREVOCABLY CONSENTS TO THE EXCLUSIVE VENUE AND JURISDICTION OF THE FEDERAL AND STATE COURTS SITTING IN HARRIS COUNTY, TEXAS, AND DOES FURTHER WAIVE ANY AND ALL RIGHTS TO OBJECT TO SUCH VENUE OR JURISDICTION.**

18. **Rights Not Exclusive**   Nothing herein-contained shall be construed to waive or abridge any right or remedy which the Surety might have if this Agreement was not executed.

19. **Other Bonds and Agreements**   This Agreement shall also extend to and cover and indemnify the Surety against loss under any presently outstanding Bonds, and the obligation of the Principals hereunder, with respect to such pre-existing Bonds, shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of any or all of the Principals under any presently existing agreement relating to or securing such pre-existing Bonds. Further, with respect to any future Bonds, the obligation of any or all of the Principals under any such presently existing agreement(s) shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of the Principals hereunder.

20. **Joint and Several Liability**   Each Principal shall be deemed to have made all of the representations, warranties, covenants, and agreements set forth herein, and each Principal shall be jointly and severally liable for each and every obligation and duty of the Principals set forth herein. A default of any Principal in the performance of any of its obligations to the Surety under this or any other agreement shall constitute a default hereunder by all Principals. Each Principal understands and agrees that the circumstances, financial or otherwise, of any one or more of the other Principals may change substantially over the term of this Agreement, and the Principals therefore agree to keep themselves fully informed as to the business activities and financial affairs of each Principal and of the risks being engaged in, so that each is always aware of the risks of hazards in continuing to act as a Principal. Each Principal expressly waives any requirement for notice from the Surety of any fact or information coming to the notice or knowledge of the Surety affecting its rights or the rights or liabilities of the Principals. If any claim or demand is made by the Surety against the Principals, or any one or more of them, by reason of the execution of a Bond, the Surety is expressly authorized to settle or compromise with any one or more of the Principals individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others and each Principal expressly waives the right to be discharged by reason of the release of one or more of the joint debtors, and hereby consents to any settlement or composition that may hereafter be made. The liability of the Principals hereunder shall not be affected by the failure of the Principals, or any one or more of them, to sign any Bond or this Agreement, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, nor the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

21. **Required Notices**   The Principals agree to notify the Surety (a) in the event of any change, alteration, restructuring, cancellation, transfer (including, without limitation, the conveyance of a security interest), or other modification to (i) the working interest ownership of the property for which a Bond is issued, or (ii) any lease for or relating to the property for which a Bond is issued, or (b) upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Surety may be subsequently charged under any Bond.

22. **Manner of Notices**   All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered against receipt therefor or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed (a) in the case of a Principal, to such Principal's address set forth below and (b) in the case of the Surety, to (i) the Surety at 13403 Northwest Freeway, Houston, Texas 77040-6094, Attention: President, and (ii) IndemCo L.P. at 777 Post Oak Boulevard, Houston, Texas 77056. Such names and addresses may be changed by written notice given as provided in this Agreement. Actual notice, however given, shall always be effective.

23. **Interest**   Any and all sums not paid when due shall bear interest at the lesser of (a) ten percent (10%) per annum, or (b) the maximum non-usurious rate of interest allowed by applicable law.

24. **Entire Agreement and Amendments**   This Agreement contains the entire understanding of the parties hereto with respect to the subject matter contained herein and may be amended or terminated only by a document executed by all parties, or their respective successors or assigns. There are no restrictions, promises, warranties, covenants, or undertakings other than those expressly set forth herein.

IndemCo

(01/31/13 - special)                                                                            Fieldwood / PIA No. 1055

25. **Headings**   The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

26. **Attorney's Fees**   In the event any action is instituted to enforce any of the provisions of this Agreement or to recover damages for the breach of any provision hereof, the prevailing party therein shall be entitled to recover any costs or expenses incurred, including without limitation, costs of court and reasonable attorneys' fees.

27. **Number and Gender**   Whenever required by the context, any reference herein to the singular shall include the plural, any reference to the plural shall include the singular, and the gender of any pronoun shall mean and include the appropriate gender, whether masculine, feminine, or neuter.

28. **Counterparts**   This Agreement may be executed in multiple counterparts, and by the Principals on separate counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery by telecopy or email of a signed counterpart of this Agreement shall be effective as physical delivery.

29. **Continuing Agreement**   Each Principal understands and agrees (a) this Agreement is a continuing agreement to indemnify over an indefinite period; (b) Bonds may vary widely in amounts and nature, and (c) each Principal will be bound by all Bonds, and any increases in the penal limits of all Bonds. Each Principal shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of any Principal, accepted or released other agreements of indemnity or collateral from some or all of the Principals or others in connection with the procurement of Bonds, it being expressly understood and agreed by each Principal that any and all other rights which the Surety may have or acquire against such Principal or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

30. **No Conflict**   Each Principal represents and warrants that neither this Agreement nor any condition relating to the issuance of any Bond shall be a breach or default in any other obligation of such Principal, specifically including, without limitation, any loan agreement.

31. *ENTIRE AGREEMENT*   EACH PRINCIPAL REPRESENTS TO THE SURETY THAT SUCH PRINCIPAL HAS CAREFULLY READ THIS ENTIRE AGREEMENT, AND THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. THE EFFECTIVE DATE OF THIS AGREEMENT SHALL BE THE DATE SET FORTH BELOW, REGARDLESS OF THE DATE OR DATES ON WHICH ANY PRINCIPAL MAY EXECUTE THIS AGREEMENT AND REGARDLESS OF WHETHER BONDS WERE ISSUED BY THE SURETY BEFORE OR AFTER THE EXECUTION OR EFFECTIVE DATE OF THIS AGREEMENT. THE SURETY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND FOR THE PRINCIPALS OR ANY OF THEM, WITH OR WITHOUT THE SURETY'S SIGNATURE BEING AFFIXED THERETO.

32. Individual Certification.   Each individual signing below on behalf of any Principal certifies that (a) such individual is familiar with the organizational documents and other records of such Principal; (b) the name of such Principal as reflected below is its correct name; (c) such Principal exists and is in good standing in the jurisdiction of its organization; (d) the execution, delivery and performance of this Agreement by such Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions, and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; (e) the form of signature block for such Principal is an appropriate signature block for it; (f) such individual holds the position reflected below and is duly authorized to execute this Agreement on behalf of such Principal, and (g) this Agreement has been duly executed and delivered on behalf of such Principal.

EXECUTED effective as of _MAY 21_, 20_14_.

*EXECUTION ON FOLLOWING PAGE(S)*

IndemCo

(01/31/13 - special)                                                                 Fieldwood / PIA No. 1055

**For entity as Principal:**

TYPE OF ENTITY: _____Limited Liability Company_____

TAXPAYER IDENTIFICATION NO.: _46- 1326028_

_Fieldwood Energy LLC_
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: **Howard M. Tate**
Senior Vice President and

TITLE: **Chief Financial Officer**

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on _____, 20___

by _Howard M. Tate_ , _Senior Vice President & Chief Financial Officer_
(Name of officer)        (Title of officer)

of _____Fieldwood Energy LLC_____ ,
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL _____

Notary Signature __Rachel Thibodaux__
Printed Name
Notary in and for the State of _Texas_
My commission expires _12/23/20__

RACHEL THIBODAUX
Notary Public, State of Texas
My Commission Expires
December 23, 2017

---

**For entity as Principal:**

TYPE OF ENTITY: _____Limited Liability Company_____

TAXPAYER IDENTIFICATION NO.: _11-3759786_

_Fieldwood SD Offshore LLC_
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: **Howard M. Tate**

TITLE: **Vice President**

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on _____, 20___

by _Howard Tate_ , _Vice President_
(Name of officer)        (Title of officer)

of _____Fieldwood SD Offshore LLC_____ ,
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL _____

Notary Signature __Rachel Thibodaux__
Printed Name
Notary in and for the State of _Texas_
My commission expires _12/23/2017_

RACHEL THIBODAUX
Notary Public, State of Texas
My Commission Exp
December 23, 20

---

**For entity as Principal:**

TYPE OF ENTITY: _____Limited Liability Company_____

TAXPAYER IDENTIFICATION NO.: _47-0953489_

_Fieldwood Onshore LLC_
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: **Howard M. Tate**
**Vice President**

TITLE: _____

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on _____, 20___

by _Howard M Tate_ , _Vice President_
(Name of officer)        (Title of officer)

of _____Fieldwood Onshore LLC_____ ,
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL _____

Notary Signature __Rachel Thibodaux__
Printed Name
in and for the State of _Texas_
My commission expires _12/23/20__

RACHEL THIBODAUX
Notary Public, State of Texas
My Commission Expires
December 23, 2017

---

**For entity as Principal:**

TYPE OF ENTITY: _____Limited Liability Company_____

TAXPAYER IDENTIFICATION NO.: _26-0595703_

_Galveston Bay Pipeline LLC_
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: **Howard M. Tate**
**Vice President**

TITLE: _____

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on _____, 20___

by _Howard M Tate_ , _Vice President_
(Name of officer)        (Title of officer)

of _____Galveston Bay Pipeline LLC_____ ,
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL _____

Notary Signature __Rachel Thibodaux__
Printed Name
and for the State of _Texas_
My commission expires _12/23/20__

RACHEL THIBODAUX
Notary Public, State of Texas
My Commission Expires
December 23, 2017

IndemCo

Fieldwood PIA No. 1055

# Additional Named Principal Supplement

This Additional Named Principal Supplement (this "Supplement) shall be attached to and shall become a part of the Payment and Indemnity Agreement No. 1055 (including all amendments, supplements and riders thereto, hereinafter the "Agreement"). All other terms and conditions of the Agreement shall remain unchanged and in full force and effect. Any term defined in the Agreement and used in this Supplement shall have the meaning ascribed to it in the Agreement.

The Agreement provides that the Principals thereunder include the signatories thereto and any and all affiliates thereof, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of such signatories or any wholly or partially owned subsidiary, division or affiliate thereof has an interest or participation, whether then existing or which may thereafter be created or acquired.

Each of the undersigned (whether one or more, the "Additional Named Principals") [a] represents that it is an affiliate (whether as subsidiary, division or other affiliate, or partnership, venture or co-venture in which any Principal or any wholly or partially owned subsidiary, division or affiliate of a Principal has an interest or participation) of one or more of the Principals signatory to the Agreement (including any signatory to any amendment, supplement or rider thereto); [b] agrees that it is a Principal under the Agreement; [c] explicitly joins the Agreement as a party thereto and explicitly assumes all the obligations of a Principal thereunder; [d] confirms that it is bound by the provisions of the Agreement as if it had been an original party thereto, and [e] confirms the representations and warranties set forth in the Agreement with respect to it as a Principal.

Each individual signing below on behalf of any Additional Named Principal certifies that [a] such individual has access to the Agreement; [b] such individual is familiar with the organizational documents and other records of such Additional Named Principal; [c] the name of such Additional Named Principal as reflected below is its correct name; [d] such Additional Named Principal exists and is in good standing in the jurisdiction of its organization; [e] the execution, delivery and performance of this Supplement by such Additional Named Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions; and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; [f] the form of signature block for such Additional Named Principal is an appropriate signature block for it; [g] such individual holds the position reflected below and is duly authorized to execute this Supplement on behalf of such Additional Named Principal, and [h] this Supplement has been duly executed and delivered on behalf of such Additional Named Principal.

**For entity as Additional Named Principal:**

TYPE OF ENTITY:  _____Limited Liability Company_____

TAXPAYER IDENTIFICATION NO.: _26 - 1084499_

_____Fieldwood Energy Offshore LLC_____
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: _Howard M. Tate_

TITLE: _____

ADDRESS: _2000 W. Sam Houston Pkwy, South, Suite 1200_

_____Houston, Texas 77042_____

This instrument was acknowledged before me on _12th June_, 2014

by _Howard M. Tate_      _Vice President_
(Name of officer)            (Title of officer)

of _____Fieldwood Energy Offshore LLC_____,
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL

Notary Signature _Mindy A Gregory_

Printed Name _Mindy A Gregory_

Notary in and for the State of _Texas_

My commission expires _9/14/2017_



MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017

SCANNED IndemCo

Fieldwood PIA No. 1055

# Additional Named Principal Supplement

This Additional Named Principal Supplement (this "Supplement) shall be attached to and shall become a part of the Payment and Indemnity Agreement No. 1055 (including all amendments, supplements and riders thereto, hereinafter the "Agreement"). All other terms and conditions of the Agreement shall remain unchanged and in full force and effect. Any term defined in the Agreement and used in this Supplement shall have the meaning ascribed to it in the Agreement.

The Agreement provides that the Principals thereunder include the signatories thereto and any and all affiliates thereof, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of such signatories or any wholly or partially owned subsidiary, division or affiliate thereof has an interest or participation, whether then existing or which may thereafter be created or acquired.

Each of the undersigned (whether one or more, the "Additional Named Principals") [a] represents that it is an affiliate (whether as subsidiary, division or other affiliate, or partnership, venture or co-venture in which any Principal or any wholly or partially owned subsidiary, division or affiliate of a Principal has an interest or participation) of one or more of the Principals signatory to the Agreement (including any signatory to any amendment, supplement or rider thereto); [b] agrees that it is a Principal under the Agreement; [c] explicitly joins the Agreement as a party thereto and explicitly assumes all the obligations of a Principal thereunder; [d] confirms that it is bound by the provisions of the Agreement as if it had been an original party thereto, and [e] confirms the representations and warranties set forth in the Agreement with respect to it as a Principal.

Each individual signing below on behalf of any Additional Named Principal certifies that [a] such individual has access to the Agreement; [b] such individual is familiar with the organizational documents and other records of such Additional Named Principal; [c] the name of such Additional Named Principal as reflected below is its correct name; [d] such Additional Named Principal exists and is in good standing in the jurisdiction of its organization; [e] the execution, delivery and performance of this Supplement by such Additional Named Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions; and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; [f] the form of signature block for such Additional Named Principal is an appropriate signature block for it; [g] such individual holds the position reflected below and is duly authorized to execute this Supplement on behalf of such Additional Named Principal, and [h] this Supplement has been duly executed and delivered on behalf of such Additional Named Principal.

For entity as Additional Named Principal:

TYPE OF ENTITY: _____ Limited Liability Company

TAXPAYER IDENTIFICATION NO.: _____ 35-2190158

_____ Dynamic Offshore Resources NS, LLC
(Name of Entity)

BY: _____ (Signature)

PRINTED NAME: JOHN SMITH
TITLE: VICE PRESIDENT

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

_____ Houston, Texas 77042

This instrument was acknowledged before me on AUGUST 7, 2014
by JOHN SMITH VICE PRESIDENT
(Name of officer) (Title of officer)
of _____ Dynamic Offshore Resources NS, LLC
(Name of Principal)
on behalf of such entity.

NOTARIAL STAMP OR SEAL
Notary Signature: _____
Printed Name Mindy A Gregory
Notary in and for the State of Texas
My commission expires 9/14/2017

MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017

For entity as Additional Named Principal:

TYPE OF ENTITY: _____ Limited Partnership

TAXPAYER IDENTIFICATION NO.: _____ 20-4839266

_____ Bandon Oil and Gas, LP
(Name of Entity)

BY: _____ (Signature)

PRINTED NAME: JOHN SMITH
TITLE: VICE PRESIDENT

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

_____ Houston, Texas 77042

This instrument was acknowledged before me on AUGUST 7, 2014
by JOHN SMITH VICE PRESIDENT
(Name of officer) (Title of officer)
of _____ Bandon Oil and Gas, LP
(Name of Principal)
on behalf of such entity.

NOTARIAL STAMP OR SEAL
Notary Signature _____
Printed Name Mindy A Gregory
Notary In and for _____
My commission expires _____

MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017

IndemCo

# Additional Sureties Supplement

This Additional Sureties Supplement shall become and remain a part of that certain Payment and Indemnity Agreement numbered PIA No. 1055 effective May 21, 2014. It is hereby understood and agreed that paragraph 5 of PIA No. 1055 shall be deleted in its entirety and replaced by the following:

> **5. Additional Sureties** If IndemCo L.P. or the Surety shall procure any other company or companies, including but not limited to American Contractors Indemnity Company, Ironshore Indemnity Inc., Ironshore Specialty Insurance Company, Lexon Insurance Company, Bond Safeguard Insurance Company, North American Specialty Insurance Company, Westport Insurance Corporation, and/or Swiss Reinsurance America Corporation to execute or join with it in executing or to reinsure any Bond, this Agreement shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give it or them a direct right of action against the Principals to enforce the provisions hereof.

All other terms and conditions shall remain unchanged. Each individual signing below on behalf of any Principal certifies that (a) such individual is familiar with the organizational documents and other records of such Principal; (b) the name of such Principal as reflected below is its correct name; (c) such Principal exists and is in good standing in the jurisdiction of its organization; (d) the execution, delivery and performance of this Agreement by such Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions, and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; (e) the form of signature block for such Principal is an appropriate signature block for it; (f) such individual holds the position reflected below and is duly authorized to execute this Agreement on behalf of such Principal, and (g) this Agreement has been duly executed and delivered on behalf of such Principal.

Agreed and executed this 30th day of April, 2015.

TAXPAYER IDENTIFICATION NO.: 46-1326778

Fieldwood Energy LLC
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: James P. Ulm II

TITLE: Senior Vice President & Chief Financial Officer

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on May 4th, 2015

by James P. Ulm II, Senior Vice President & Chief Financial Officer
(Name of officer)        (Title of officer)

of Fieldwood Energy LLC
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL

Notary Signature _____

Printed Name Mindy A. Gregory

in and for the State of TX

My commission expires 9/14/2017

MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017

SCANNED

IndemCo

Fieldwood PIA No. 1055

# Additional Named Principal Supplement

This Additional Named Principal Supplement (this "Supplement) shall be attached to and shall become a part of the Payment and Indemnity Agreement No. 1055 (including all amendments, supplements and riders thereto, hereinafter the "Agreement"). All other terms and conditions of the Agreement shall remain unchanged and in full force and effect. Any term defined in the Agreement and used in this Supplement shall have the meaning ascribed to it in the Agreement.

The Agreement provides that the Principals thereunder include the signatories thereto and any and all affiliates thereof, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of such signatories or any wholly or partially owned subsidiary, division or affiliate thereof has an interest or participation, whether then existing or which may thereafter be created or acquired.

Each of the undersigned (whether one or more, the "Additional Named Principals") [a] represents that it is an affiliate (whether as subsidiary, division or other affiliate, or partnership, venture or co-venture in which any Principal or any wholly or partially owned subsidiary, division or affiliate of a Principal has an interest or participation) of one or more of the Principals signatory to the Agreement (including any signatory to any amendment, supplement or rider thereto); [b] agrees that it is a Principal under the Agreement; [c] explicitly joins the Agreement as a party thereto and explicitly assumes all the obligations of a Principal thereunder; [d] confirms that it is bound by the provisions of the Agreement as if it had been an original party thereto, and [e] confirms the representations and warranties set forth in the Agreement with respect to it as a Principal.

Each individual signing below on behalf of any Additional Named Principal certifies that [a] such individual has access to the Agreement; [b] such individual is familiar with the organizational documents and other records of such Additional Named Principal; [c] the name of such Additional Named Principal as reflected below is its correct name; [d] such Additional Named Principal exists and is in good standing in the jurisdiction of its organization; [e] the execution, delivery and performance of this Supplement by such Additional Named Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions; and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; [f] the form of signature block for such Additional Named Principal is an appropriate signature block for it; [g] such individual holds the position reflected below and is duly authorized to execute this Supplement on behalf of such Additional Named Principal, and [h] this Supplement has been duly executed and delivered on behalf of such Additional Named Principal.

For entity as Additional Named Principal:

TYPE OF ENTITY: _____ Limited Liability Company _____

TAXPAYER IDENTIFICATION NO.: 76 - 064 - 8107

_____ GOM Shelf  LLC _____
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: Michael T. Dane

TITLE: Vice President

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

_____ Houston, Texas 77042 _____

This instrument was acknowledged before me on _____, 2016

by Michael T. Dane    Vice President
(Name of officer)          (Title of officer)

of _____ GOM Shelf LLC _____
(Name of Principal)

on behalf of such entity.

SCANNED

NOTARIAL STAMP OR SEAL

Notary Signature _____
Printed Name  Mindy A Gregory
Notary in and for the State of  Texas
My commission expires  9/14/2017

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2017
Notary ID 125433370

Original filed
in Safety
Deposit Box

IndemCo

Fieldwood PIA No. 1055

## Additional Named Principal Supplement

This Additional Named Principal Supplement (this "Supplement) shall be attached to and shall become a part of the Payment and Indemnity Agreement No. 1055 (including all amendments, supplements and riders thereto, hereinafter the "Agreement"). All other terms and conditions of the Agreement shall remain unchanged and in full force and effect. Any term defined in the Agreement and used in this Supplement shall have the meaning ascribed to it in the Agreement.

The Agreement provides that the Principals thereunder include the signatories thereto and any and all affiliates thereof, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of such signatories or any wholly or partially owned subsidiary, division or affiliate thereof has an interest or participation, whether then existing or which may thereafter be created or acquired.

Each of the undersigned (whether one or more, the "Additional Named Principals") [a] represents that it is an affiliate (whether as subsidiary, division or other affiliate, or partnership, venture or co-venture in which any Principal or any wholly or partially owned subsidiary, division or affiliate of a Principal has an interest or participation) of one or more of the Principals signatory to the Agreement (including any signatory to any amendment, supplement or rider thereto); [b] agrees that it is a Principal under the Agreement; [c] explicitly joins the Agreement as a party thereto and explicitly assumes all the obligations of a Principal thereunder; [d] confirms that it is bound by the provisions of the Agreement as if it had been an original party thereto, and [e] confirms the representations and warranties set forth in the Agreement with respect to it as a Principal.

Each individual signing below on behalf of any Additional Named Principal certifies that [a] such individual has access to the Agreement; [b] such individual is familiar with the organizational documents and other records of such Additional Named Principal; [c] the name of such Additional Named Principal as reflected below is its correct name; [d] such Additional Named Principal exists and is in good standing in the jurisdiction of its organization; [e] the execution, delivery and performance of this Supplement by such Additional Named Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions; and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; [f] the form of signature block for such Additional Named Principal is an appropriate signature block for it; [g] such individual holds the position reflected below and is duly authorized to execute this Supplement on behalf of such Additional Named Principal, and [h] this Supplement has been duly executed and delivered on behalf of such Additional Named Principal.

**For entity as Additional Named Principal:**

TYPE OF ENTITY: _Corporation_

TAXPAYER IDENTIFICATION NO.: _____

_Fieldwood Energy Inc._
(Name of Entity)

BY _____
(Signature)

PRINTED NAME: MARY R. MOZEL

TITLE: VICE PRESIDENT

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on MAY 20, 2019

by MARY R. MOZEL VICE PRESIDENT
(Name of officer)                (Title of officer)

of _____ Fieldwood Energy Inc.
(Name of Principal)

on behalf of such entity

NOTARIAL STAMP OR SEAL

Notary Signature _____
Printed Name Mindy Gregory
Notary in and for the State of Texas
My commission expires 09 / 14 /20 21

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 125433370





SCANNED                IndemCo

# Electronic Proof of Claim_QDZVX28824[[CSA#7711#CF]]

Final Audit Report 2020-11-20

| | |
|---|---|
| Created: | 2020-11-20 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAiY3I-kdRshHvua_5GJX7XCpxVMtb6LoC |

## "Electronic Proof of Claim_QDZVX28824[[CSA#7711#CF]]" History

📄 Web Form created by Prime Clerk (epoc@primeclerk.com)
2020-11-20 - 8:33:58 PM GMT

📎 Frank M. Lanak (eguffy@lockelord.com) uploaded the following supporting documents:
   📎 Attachment
2020-11-20 - 8:39:01 PM GMT

📄 Web Form filled in by Frank M. Lanak (eguffy@lockelord.com)
2020-11-20 - 8:39:01 PM GMT- IP address: 4.31.138.211

✍ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/86.0.4240.193 Safari/537.36)
2020-11-20 - 8:39:03 PM GMT- IP address: 4.31.138.211

✔ Agreement completed.
2020-11-20 - 8:39:03 PM GMT