IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

### DEBTORS' EMERGENCY MOTION TO STRIKE
### LILY CHEUNG'S PURPORTED EXPERT TESTIMONY

> THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
>
> REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.
>
> EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.
>
> THERE WILL BE A HEARING ON THIS MOTION ON JUNE 16, 2021 AT 2:00 PM CT. YOU MAY PARTICIPATE IN THE HEARING BY AUDIO/VIDEO CONNECTION.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fieldwood Energy LLC (6778), Fieldwood Energy Inc. (4991), Fieldwood Onshore LLC (3489), Fieldwood SD Offshore LLC (8786), Fieldwood Energy Offshore LLC (4494), Fieldwood Offshore LLC (2930), GOM Shelf LLC (8107), FW GOM Pipeline, Inc. (8440), Galveston Bay Procession LLC (5703), Galveston Bay Procession LLC (0422), Fieldwood Energy SP LLC (1971), Dynamic Offshore Resources NS, LLC (0158), Bandon Oil and Gas, LP (9266), and Bandon Oil and Gas GP, LLC (9172). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

> PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS (GENERAL ORDER 2020-4, EXTENDED AND MODIFIED BY GENERAL ORDERS 2020-11, 2020-17, 2020-18, 2020-20). IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.
>
> AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.
>
> YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.
>
> HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE MARVIN ISGUR. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE." SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

Fieldwood Energy, LLP ("**Fieldwood**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), file this Emergency Motion to Strike[2] Aspen American Insurance Company, Berkley Insurance Company, Everest Reinsurance Company, Lexon Insurance Company, Philadelphia Indemnity Insurance Company, Sirius America Insurance Company, HCC International Insurance Company PLC and Zurich American Insurance Company's (collectively, "**the Sureties**") purported expert, Lily

---

[2] All capitalized terms not otherwise defined in this document shall have the meanings prescribed to them in the *Fourth Amended Joint Chapter 11 Plan of Reorganization of Fieldwood Energy LLC and its Affiliated Debtors* [ECF No. 1284] filed on April 15, 2021.

2

Cheung, in connection with the June 18, 2021, confirmation hearing (the "**Motion**") and in support state the matters set forth below.

## PRELIMINARY STATEMENT

1. On May 24, 2021—two weeks after the deadline for opening expert reports—the Sureties produced an expert report (the "**Report**") prepared by Lily Cheung from Netherland, Sewell & Associates, Inc. ("**NSAI**"). During her June 4, 2021 deposition, Ms. Cheung admitted that her financial feasibility conclusions were founded on only half of a proper financial calculation. She disclosed during her deposition that she relied on critical work papers and calculations that were neither disclosed nor timely produced to the Debtors with the Report or even prior to her deposition. Further, she admitted that her Report never mentions or directly rebuts any opinion reached by the Debtors' valuation expert, casting real doubt as to whether her report is proper rebuttal. The Debtors submit it is not.

2. Ms. Cheung's Report should be stricken and her testimony excluded because:

(i) the Report's conclusions are unreliable and inaccurate because they depend on financial projections that fail to account for necessary reductions in expenses tied to Ms. Cheung's reduced production rates;

(ii) Ms. Cheung failed to timely produce the work papers and backup materials underlying her Report in violation of Rule 26 and the deposition notice *duces tecum* requesting the same[3] (indeed, the Debtors only received these materials on June 8, 2021—*i.e.*, four days after her deposition and the close of the expert

---

[3] *See* Declaration of Erin M. Choi ("**Choi Decl.**") Ex. 3 ("To the extent not previously identified and produced, the witness is hereby commanded to immediately produce to counsel for Debtors all documents upon which she relies in rendering any opinion(s) she intends to offer at the Hearing in connection with the Hearing or confirmation of the Plan and **all documents which reflect, support, or relate to any such opinion(s)**.") (emphasis added), which is being filed contemporaneously herewith.

3

discovery period after learning of their existence during her June 4 deposition).

(iii) Ms. Cheung's Report is an opening expert report focused on the Debtors' ability to achieve certain production projections and not a true "rebuttal" report, so the production of her Report on May 24, 2021, was untimely (two weeks late); and

(iv) excluding Ms. Cheung's unhelpful and untimely Report will not unfairly prejudice the Sureties since they can still cross-examine Debtors' fact witness and Chief Financial Officer, Mike Dane, (who will testify at the confirmation hearing regarding the Debtors' financial projections and financial models that were the sole focus of Ms. Cheung's Report).

3. For these reasons and as explained below, Ms. Cheung should not be permitted to provide expert testimony for the Sureties and her Report should be stricken.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT AND AUTHORITIES

5. Trial courts serve an important "gatekeeping" role with respect to the admissibility of expert testimony. *Kumho Tire Co. Ltd. v. Carmichael*, 536 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). This Court, as "gatekeeper," should strike the Sureties' purported expert, Ms. Cheung, because her opinions are unreliable and unhelpful, and the Sureties' untimely production of her Report and supporting materials violate Federal Rule of Civil Procedure 26 ("**Rule 26**") and this Court's scheduling order [ECF No. 1224].

4

A.   **Ms. Cheung's Opinions are Unhelpful and Unreliable**

6.   Federal Rule of Evidence 702 "imposes a special obligation upon a trial judge to ensure than any and all scientific testimony . . . is not only relevant, but reliable." *Kumho Tire Co. Ltd. v. Carmichael*, 536 U.S. 137, 147 (1999). Courts must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* As such, an expert must provide a "reliable" methodology that serves as an adequate basis to support a conclusion. *Dupont Flooring Sys. v. Discovery Zone, Inc.*, 98 Civ. 5101 (SHS), 2005 LEXIS 81 (S.D.N.Y. Jan. 4, 2005) (citing Fed. R. Evid. 702, 403; *Kumho Tire*, 526 U.S. at 137; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Fifth Circuit courts exclude expert testimony when it contains "basic mathematical errors and flaws in methodology." *Dart v. Kitchens Bros. Mfg. Co.,* 253 Fed. Appx. 395, 399 (5th Cir. 2007) (exclusion of expert testimony on the basis of flawed calculations and a methodology that failed to account for alternative influences affecting the expert's conclusions); *see also Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014) (expert excluded for failing to consider all relevant factors in his causation analysis); *E.E.O.C. v. Freeman*, 778 F.3d 463, 470 (4th Cir. 2015) (Agee, J. concurring) (expert excluded where his work was "riddled with fundamental errors, mistakes, and misrepresentations").

7.   Like the expert in *Dart*, Ms. Cheung's conclusions on FWE I's financial feasibility suffer from several "basic mathematical errors and flaws in methodology." *See Dart*, 253 Fed. Appx. at 399. Ms. Cheung opines in her Report that:

> Based on the March 5, 2021, Strip Pricing, utilizing the estimated Adjusted Company Forecast, and before any other adjustments, year ending 2021 and 2022 are expected to yield a negative cash flow. Without sufficient cash flow, potential projects will be deferred.[4]

---

[4] *See* Choi Decl. Ex. 2 ("**Report**").

5

In reaching this conclusion, however, Ms. Cheung's calculations and methodology are facially flawed and violate fundamental principles of financial mathematics. Specifically, Ms. Cheung adjusts FWE I's projections to account for a hypothetical reduced production revenue, but fails to even consider, let alone calculate and credit against, those projections with the expenses saved by reducing that production.[5]

> **Q.** [Referring to the conclusion] **What do you mean by "before any other adjustments"?**
> A. I did not adjust any of these lease operating cost assumptions the company had made in their forecast or any of the other line items outside of the production.

8.      In other words, she only considered the revenue side of the calculation and drew her ultimate cash flow conclusions from there without adjusting the expense side. When asked why she ignored these expense elements of the forecast, she said, "The scope of my work was just to understand the production forecasts."[6] By analogy, her work is akin to a lost profits analysis that calculates a reduction in revenue rather than profits. Her Report is flawed, incomplete, unreliable and of no help to this Court.

9.      Indeed, Ms. Cheung acknowledged her flawed methodology at her deposition when she conceded that (i) expenses will go down with reduced production, (ii) she did not factor that into her calculations, and (iii) she only did "part of" the cash flow analysis:[7]

> **Q.** **I'm asking you about the operating expenses listed below on Page 11 of your report which is an adjustment to the – a partial adjustment to business plan.**
> A. Yes.
> **Q.** **Direct operating expense, R&M, transportation, workover and insurance. Are any of those – will any of those go down if production goes down? Yes or no?**
> A. Yes.
> **Q.** **You didn't make that calculation?**

---

[5] *See* Choi Decl. Ex. 1 at 63:2–7 ("**Cheung Tr.**").
[6] *Id.* at 63:8–10.
[7] *Id.* at 65:2–66:4.

6

>    A.   No.
>    Q    **You don't know how much they would go down, do you?**
>    A.   No.
>    Q.   **You really did part of the analysis, didn't you?**
>         *Mr. Knapp: Objection. Form.*
>    Q.   **In that regard?**
>    A.   Yes.
>    Q.   **And where you have – where you show un-levered cash flow being negative for 2021 and 2022, that's without making those adjustments that – that in terms of expenses; correct?**
>    A.   Correct.

10. To be clear, these flaws in methodology are fundamental and mathematical. They are not mere differences in opinion or preference. Ms. Cheung reaches mathematical summations as to FWE I's "Ending Cash Balance" only after ignoring necessary adjustments to expense line items contributing to that summation.[8] For example, the financial projections in Exhibit O of the Disclosure Statement reflect an expense item accounting for "Transportation" costs.[9] Transportation costs are those expenses attributable to transporting produced hydrocarbons and are charged to the producer based on the volume of hydrocarbons transported. Therefore, an Ending Cash Balance forecast adjusted for reduced hydrocarbon production—like Ms. Cheung's—*must* account for the fact that with her assumed reduced hydrocarbon production comes a proportionate reduction in transportation expenses. In other words, production rates are inextricably linked to Transportation costs, and, therefore, ignoring the reduction in Transportation costs necessarily results in a mathematically inaccurate calculation.

11. Similarly, FWE I's projections account for an expense called "Trust Contribution." The Trust Contribution expense refers to FWE I's obligation to contribute a percentage of its production revenue into Trust A to help fund future P&A obligations. Because this expense is *a percentage of* production revenue, it is mathematically certain that it will decrease with any

---

[8] *See* Report, at pg. 11 (calculating the Ending Cash Balance to be $-8mm).
[9] Choi Decl. Ex. 5.

decrease in production revenue. Yet, as with the Transportation costs and other expense items, Ms. Cheung fails to account for this reduction in expenses in performing her calculations:[10]

> **Q.    Do you understand that if there were reduced production, the trust contribution costs would be reduced?**
> A.    That sounds like it could be something. I don't know the details of the trust contributions.
> **Q.    Did you ask anyone about the details of that?**
> A.    No.
> **Q.    And that, by way of example, that trust contribution number, just like we talked about operating expenses, could affect your overall opinion as to whether the company has free – has cash flow in 21 and 22, right?**
> *Mr. Knapp: Objection. Form.*
> A.    It could affect it. I don't know to what magnitude.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

---

[10] Cheung Tr. at 91:1–17.

8

12. The table below shows the partial adjustments Ms. Cheung did make—in addition to those she did not make—as compared to the numbers in Exhibit O of the Disclosure Statement:

| ($ millions) | May-Dec 2021 | | 2022 | | 2023 | | 2024 | | 2025 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Ex. O | Cheung Adjustment (Delta) | Ex. O | Cheung Adjustment (Delta) | Ex. O | Cheung Adjustment (Delta) | Ex. O | Cheung Adjustment (Delta) | Ex. O | Cheung Adjustment (Delta) |
| Daily Net Production (mboe/d) | 28 | 23 (-5) | 27 | 22 (-5) | 25 | - | 24 | 26 (+2) | 22 | 23 (+1) |
| % Liquids | 67% | 69% (+2%) | 62% | 72% (+10%) | 57% | 72% (+15%) | 54% | 65% (+11%) | 52% | 58% (+6%) |
| **Total Revenue** | **309** | **251 (-58)** | **379** | **342 (-37)** | **321** | **351 (+30)** | **279** | **323 (+44)** | **250** | **254 (+4)** |
| Direct Operating | (133) | - | (173) | - | (167) | - | (156) | - | (148) | - |
| R&M | (23) | - | (30) | - | (26) | - | (19) | - | (15) | - |
| Transportation | (8) | - | (10) | - | (8) | - | (7) | - | (5) | - |
| Workover | (6) | - | (8) | - | (7) | - | (6) | - | (5) | - |
| Insurance | (8) | - | (11) | - | (10) | - | (8) | - | (8) | - |
| **Total Operating Expenses** | (179) | - | (232) | - | (218) | - | (195) | - | (181) | - |
| G&A | (22) | - | (33) | - | (32) | - | (35) | - | (34) | - |
| **EBITDA** | **108** | **51 (-57)** | **115** | **78 (-37)** | **71** | **102 (+31)** | **54** | **98 (+44)** | **40** | **44 (+4)** |
| Capital Expenditures | (29) | - | (35) | - | (35) | - | (34) | - | (34) | - |
| P&A | (70) | - | (80) | - | (14) | - | (9) | - | - | - |
| Trust Contributions | (7) | - | (13) | - | (9) | - | (8) | - | (7) | - |
| Change in Net Working Capital | 36 | - | 1 | - | 2 | - | (2) | - | (1) | - |
| **Unlevered Cash Flow** | **39** | **(19) (-40)** | **(13)** | **(50) (-37)** | **15** | **45 (+30)** | **1** | **45 (+44)** | **(2)** | **2 (+4)** |
| Cash Interest | (3) | - | (4) | - | (4) | - | (4) | - | (4) | - |
| **Levered Cash Flow** | **36** | **(21) (-57)** | **(17)** | **(54) (-37)** | **11** | **41 (+30)** | **(3)** | **41 (+44)** | **(6)** | **(2) (+4)** |
| Beginning Balance | 13 | - | 49 | (8) (-57) | 32 | (63) (-95) | 43 | (21) (-64) | 40 | 19 (-21) |
| Levered Cash Flow | 36 | (21) (-57) | (17) | (54) (-37) | 11 | 41 (+30) | (3) | 41 (+44) | (6) | (2) (+4) |
| **Ending Balance** | **49** | **(8) (-57)** | **32** | **(63) (-95)** | **43** | **(21) (-64)** | **40** | **19 (-21)** | **34** | **18 (-16)** |

9

13. Ms. Cheung admitted that these oversights to expense adjustments *could* affect her overall opinion as to whether the company has cash flow in 2021 and 2022,[11] but the reality is that it is mathematically certain that the flaws in her cash flow calculation affect her overall summation of the Ending Cash Balance and other totals. The Debtors simply cannot know to what magnitude her math is flawed since she did not do that work, thereby rendering her analysis incomplete and unhelpful.

14. There are also material flaws in other aspects of Ms. Cheung's cash flow conclusions. For example, Ms. Cheung admits that her analysis does not consider the fact that FWE I will have other sources of capital outside of its production revenue:[12]

> **Q.     Do you know what capital sources the company has that are not reflected in Exhibit O, the financial projections?**
> A.     I know that they – I don't know specifically.
> . . .
> I just don't know specifically what sources they have.
> **Q.     Regardless of what they are, they were not considered by you in doing your work, right?**
> A.     Correct.

15. Nevertheless, Ms. Cheung's failures to account for (1) how a change in net production would impact other items in the financial projections and (2) other sources of capital to fund FWE I projects renders her opinions as to the Debtors' Financial Projections incomplete, unreliable, and, most importantly, unhelpful. Accordingly, Ms. Cheung's Report should be stricken and her testimony excluded because her opinions are not based on "sufficient facts or data" or the "product of reliable principles and methods," as required by the Federal Rules of Evidence. *See* FED. R. EVID. 702. Exclusion will not prejudice the Sureties, who can cross examine the Debtors' fact witnesses on the Debtors' Financial Projections without the need for

---

[11] *Id.*
[12] *Id.* at 87:21–88:8.

expert testimony.

**B.     Ms. Cheung's Report Does Not Comply With Rule 26**

16.     Ms. Cheung's testimony and Report should also be excluded because the failure to produce the requisite backup materials violates Rule 26. Rule 26 requires, among other things, that an expert report contain "the facts or data considered by the witness in forming" the expert's opinions. For Rule 26 purposes, "considered" includes data or information that the expert read, reviewed, or authored in connection with forming their opinion. *See, e.g., Propat Int'l Corp. v. RPost, Inc.*, No. SACV 03-1011 JVS (VBKx), 2005 WL 5957834, at *1 (C.D. Cal. Sept. 19, 2005) (excluding expert testimony because the expert's report did not include all materials considered). If a party fails to disclose required information under Rule 26(a)(2) then, under Federal Rule of Civil Procedure 37(c)(1), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

17.     Here, the Sureties failed to provide the Debtors with critical documents backing up and reflecting Ms. Cheung's application of her methodology to the Debtors' projections until June 8, 2021—fifteen days after they produced the Report, and four days after Ms. Cheung's deposition and the deadline to conduct expert depositions:[13]

> [After discovering the existence of Ms. Cheung's unproduced work papers]
>
> **Q.     [W]e don't have the benefit of seeing your work papers as I sit here now. I haven't seen them, right?**
> A.     No.
> **Q.     I haven't seen how – your report doesn't reflect how you calculated things you calculated, it might have the answers, but it doesn't show how you calculated them, does it?**
> A.     No.

---

[13] *Id.* at 20:13–21:10. In fact, the Sureties June 8, 2021 production revealed that they had withheld 5 such documents containing Ms. Cheung's work product related to her Report.

11

> *Mr. Knapp: Objection. Form.*
> **Q. Can you answer the question?**
> A. No. The back-up to my results are not in here.
> **Q. And have you – did you have the benefit of seeing the back-up to Exhibit O?**
> A. Yes.
> **Q. Would you have been able to analyze Exhibit O without the back-up?**
> A. No.

18. Moreover, Ms. Cheung's expert report failed to list out all materials considered or relied upon in connection with the Report.[14] In fact, Ms. Cheung admitted during her deposition that she had created a document which she relied upon to form her conclusions.[15] To make matters worse, Ms. Cheung testified that she had provided this document to the Sureties several weeks ago, yet this document was not listed as a document that was considered in the Report.[16]

19. Although the Sureties belatedly produced the five withheld support documents on June 8, 2021—after the close of expert discovery and just over a week before the confirmation hearing—that eve-of-trial production does little to alleviate the prejudice already suffered by the Debtors. The deadline for expert depositions was June 4, 2021, the Debtors' confirmation brief is due on June 13, 2021, and the confirmation hearing is on June 18, 2021. Given that the Debtors' data that is the sole focus of Ms. Cheung's Report was produced to the Sureties by or before April 1, 2021, Ms. Cheung's untimely production of these backup materials on the eve of trial is prejudicial.

20. Making matters worse, Ms. Cheung had long ago provided this document to counsel for the Sureties:[17]

> **Q. Have you provided those work papers to your counsel?**
> A. In an -- in an Excel format that was put on PowerPoint.

---

[14] *See* Report.
[15] *See* Cheung Tr. at 17:5–13; 58:16–20.
[16] *Id.* at 17:22–18:19.
[17] *See id.* at 18:6–11.

12

> Q. When did you do that?
> A. It's been several weeks.

In other words, the Sureties were aware that Ms. Cheung had created a back-up document that she relied on in forming her opinions, yet chose not to produce it in a timely manner such that the Debtors could depose Ms. Cheung on her calculations and methodologies during the expert discovery period.

21. Further, in addition to the fact that Ms. Cheung was obligated to produce these materials with her Report under Rule 26, the Debtors *two other times* specifically requested the production of all documents that Ms. Cheung relied on to form her opinions in their confirmation discovery requests. The Debtors requested production of these documents in their discovery requests served on April 14, 2021, and in their deposition notice for Ms. Cheung served on June 2, 2021.[18] Despite this, Ms. Cheung's notes and back-up data were still not produced to the Debtors until well after her deposition.

22. Because materials considered by Ms. Cheung to form her opinion were not timely provided, Ms. Cheung's Report does not comply with Rule 26(a)(2), and Ms. Cheung's opinions should be excluded. *See, e.g.*, *Propat Int'l Corp.*, 2005 WL 5957834, at *1.

**C. Ms. Cheung's Report Was Untimely Because She is Not a Proper Rebuttal Expert**

23. Ms. Cheung's Report should also be excluded because the Sureties missed their expert report deadline by two weeks by mischaracterizing it as a "rebuttal report." On April 6, 2021, the Court signed a scheduling order that included deadlines for the production of various expert reports.[19] The order required the production of the Debtors' opening expert reports on April 21, 2021. Non-debtors were given until May 10, 2021 to produce their opening expert reports.

---

[18] *See* Choi Decl. Ex. 3; *see also* Choi Decl. Ex. 4.
[19] April 6, 2021 Scheduling Order [ECF No. 1224].

Rebuttal reports for all parties were due on May 24, 2021. The Sureties produced their expert report on May 24, 2021.

24. Rule 26 defines a rebuttal expert as one whose opinions are "intended solely to contradict or rebut evidence on the same subject matter identified" by another party's expert. FED. R. CIV. P. 26(a)(2)(D)(ii); *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (5th Cir. 1991). Even if a rebuttal expert's opinions relate to the "same subject matter," the rebuttal designation is considered based on "the findings" of the testifying expert—and not "the same general subject matter of the case." *Club v. Energy Future Holdings Corp.*, No. W-12-CV-108, 2014 WL 12690016, at *4 (W.D. Tex. Feb. 20, 2014). A party's rebuttal disclosures cannot be used as "an extension of the deadline by which a party must deliver the lion's share of its expert information." *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996); *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991)("Rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief."). Trial courts have broad discretion in determining whether to allow or exclude rebuttal evidence. *Cates*, 928 F.2d at 685.

25. Here, Ms. Cheung's Report does not actually rebut either of the Debtors' opening expert reports. In fact, Ms. Cheung's Report only mentions the "Houlihan Lokey Valuation Expert Report" in two places as simply being one of the numerous items reviewed. Rather than rebutting anything in the Debtors' April 21, 2021 opening expert reports, Ms. Cheung's Report can best be characterized as a challenge to Exhibit O to the Debtors' Disclosure Statement, which contains the Debtors' financial projections and not a rebuttal to the Debtors' experts.

26. Ms. Cheung effectively conceded at her deposition that her Report is not rebuttal:[20]

> Q.   So just to be -- make sure that you and I are not talking past each other, Exhibit 1, your report, contains all opinions that you intend to offer in this case?

---

[20] Cheung Tr. at 29:25–30:22.

14

> A. Correct.
> Q. **Okay. And those opinions are reflected on Page 6 of your report under "Conclusion." Right?**
> A. Correct.
> Q. **And those four conclusions, and we will go into them in some detail throughout the deposition, but those four conclusions don't mention Mr. Hanson's report. Do they?**
> A. It does not.
> Q. **It does not mention any of Mr. Hanson's opinions either?**
> A. It does not.
> Q. **It doesn't mention any information he considered or relied upon. Does it?**
> A. If [sic] mentions some of the same data that he reviewed for his opinion but does not state exactly that I -- that I'm referencing Mr. Hanson.

27. In other words, Ms. Cheung disagrees with the underlying data from the Debtors, but not Mr. Hanson's expert opinion or report itself. Importantly, the data that the Report criticizes was produced to the Sureties by and before April 1, 2021, well before the Debtors served their opening expert reports on April 21, 2021, and well before the non-debtor opening expert report deadline on May 10, 2021.[21] As such, the Sureties had ample time to submit an opening report criticizing the Debtors' financial projections and data by the May 10 deadline, but failed to do so.

28. Mr. Hanson's report, served on April 21, focuses on the valuation of the different entities to be formed under the Debtors' Plan. Mr. Hanson was not engaged to offer any opinions on the inputs, estimates, or assumptions in Fieldwood's financial projections or related documents created by management and, thus, his Report does not contain any opinions on these topics.

29. Ms. Cheung's May 24 Report, on the other hand, focuses exclusively on the appropriateness of adjusting certain input parameters in Fieldwood's financial projections—without offering any opinion at all on the valuation of the Debtors' Plan.[22] Ms. Cheung admitted

---

[21] BP, on the other hand, served a true rebuttal report to Mr. Hanson's valuation report on the May 10 non-debtor expert report deadline.
[22] *See* Report.

in her deposition that the financial projections attached to the Disclosure Statement were not prepared by Mr. Hanson.[23]

30. Rather than follow this Court's instruction on the deadlines for expert reports, the Sureties instead chose to serve Ms. Cheung's so called "rebuttal" report on the rebuttal report deadline of May 24, giving the Debtors no opportunity to submit their own rebuttal to her Report. *See In re Quality Lease & Rental Holdings, LLC*, No. BR 14-6005, 2019 WL 5865596, at *6 (S.D. Tex. Nov. 8, 2019) (striking new opinions in a rebuttal report to which the other side had no opportunity to respond). Accordingly, because the May 24 deadline set by the Court was strictly for rebuttal reports and Ms. Cheung's Report is not rebuttal, the Report should be excluded as untimely.

## CONCLUSION

30. For the reasons set forth above, the Debtors respectfully request that the Court grant the Motion, strike Ms. Cheung's Report and her opinions in their entirety, and grant the Debtors such other and further relief, at law or in equity, as it deems just and proper.

## BASIS FOR EMERGENCY RELIEF

31. Because the Debtors seek to have the issues raised in this Motion determined before the confirmation hearing scheduled for next Friday, the Debtors respectfully request emergency consideration of this Motion in accordance with Bankruptcy Local Rule 9013-1(i). Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

---

[23] *See* Cheung Tr. at 28:20–22.

## **NOTICE**

32. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d), including Sureties' counsel.

Dated: June 11, 2021
       Houston, Texas

    /s/    Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez@weil.com
       Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Matt.Barr@weil.com
       Jessica.Liou@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Erin M. Choi (24079436)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777
Email: Paul.Genender@weil.com
Erin.Choi@weil.com

*Attorneys for Debtors
and Debtors in Possession*

**Certificate of Conference**

The Debtors' counsel and Sureties' counsel conferred by Zoom on June 11, 2021, in an attempt to resolve the Motion, but were unable to resolve the Motion.

    */s/ Paul R. Genender*
Paul R. Genender

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.

    */s/ Paul R. Genender*
Paul R. Genender

**Certificate of Service**

I hereby certify that, on June 11, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

    */s/ Paul R. Genender*
Paul R. Genender