IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>**FIELDWOOD ENERGY LLC,** *et al.,*<br><br>Debtors.[1] | **CHAPTER 11**<br><br>Case No. 20-33948 (MI)<br><br>**(Jointly Administered)** |

**AD HOC GROUP OF SECURED LENDERS' (I) STATEMENT IN SUPPORT OF CONFIRMATION OF FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND (II) JOINDER TO DEBTORS' OMNIBUS REPLY TO OBJECTIONS THERETO**

The Ad Hoc Group of Secured Lenders[2] hereby submits this statement (the "**Ad Hoc Group Joinder**") in support of confirmation of the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [D.I. 1284] (the "**Plan**") filed in the chapter 11 cases (the "**Chapter 11 Cases**") of Fieldwood Energy, LLC ("**Fieldwood**") and the other above-captioned debtors (collectively, the "**Debtors**") and joinder to the *Debtors' Memorandum of Law in Support of (I) Confirmation of Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Omnibus Reply to Objections Thereto* (the "**Debtors'**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] The "Ad Hoc Group of Secured Lenders" shall herein have the meaning ascribed to it in the *Second Amended Joint Verified Statement of Davis Polk & Wardwell LLP and Haynes and Boone, LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019* [D.I. 1243] (the "**2019 Statement**"). The members of the Ad Hoc Group of Secured Lenders are identified in the 2019 Statement.

**Reply**").[3] The Ad Hoc Group of Secured Lenders agrees with and adopts the arguments set forth in the Debtors' Reply, submits this joinder to address the objections (the "**Objections**") of certain of the Debtors' predecessors-in-interest (the "**Predecessors**") and surety bond providers (the "**Sureties**") and respectfully asks the Court to confirm the Plan. The Ad Hoc Group of Secured Lenders further states as follows:

## STATEMENT

1. The Debtors filed the Chapter 11 Cases in the face of unprecedented global upheaval driven by the COVID-19 pandemic, the resulting dramatic decline in hydrocarbon prices, and significant disruption in the capital markets. Nearly one year later, the Debtors' tireless efforts have resulted in a Plan that includes hundreds of millions of dollars in new capital, permits continued operation of the Debtors' productive assets, and ensures a responsible, feasible plan for the decommissioning of the remaining assets. Specifically, the Plan incorporates settlements with the Debtors' largest Predecessors and other operators of the Debtors' assets and addresses approximately 91% of the anticipated decommissioning obligations fully consensually. The Plan is supported by the Ad Hoc Group of Lenders, the UCC, and overwhelmingly by almost all the voting classes across the Debtors' capital structure, including the holders of 100% of the voting FLFO Claims, 100% of the voting FLTL Claims, 100% of the voting SLTL Claims, and 94.15% of the voting Unsecured Trade Claims. *See Declaration of Alex Orchowski of Prime Clerk LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors*, Exhibit A [D.I. 1521].

---

[3] The Ad Hoc Group Joinder is being filed substantially contemporaneously with the Debtors' Reply and supporting declarations, including the *Declaration of Michael Dane in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (the "**Dane Declaration**").

Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Debtors' Reply or the Plan, as applicable.

2. Importantly, the Debtors have held extensive and forthright discussions with the government agencies supervising the Debtors' operations and charged with protecting the public's health and safety—including the Bureau of Ocean Energy Management, Bureau of Safety and Environmental Enforcement, the Department of Interior and the Department of Justice, and other key regulatory constituencies (collectively, the "**Government Agencies**"). As a result of those discussions—to supplement the very significant resources dedicated pursuant to settlements with various Predecessors—the Debtors, the Ad Hoc Group, and other parties-in-interest have structured the Plan to allocate tens of millions of dollars to facilitate the safe-out and decommissioning of the properties being abandoned or transitioned to the FWE I, FWE III, and FWE IV entities, as well as to establish a framework for the provision of transition services in connection therewith. Notably, the Debtors anticipate that the Government Agencies will issue orders on or after the Effective Date directing all, or certain of, the Predecessors and/or co-working interest owners, to complete the decommissioning obligations associated with the applicable abandoned properties. The Debtors do not anticipate any objections to the Plan being filed by the Government Agencies, although conversations remain ongoing.

3. A number of the Predecessors and Sureties that did not reach settlements with the Debtors filed objections in an effort to upend the Plan's network of hard-fought compromises and evade their own potential legal obligations arising from the anticipated decommissioning obligations and associated bonding. Most of their arguments were already advanced in their objections to the Disclosure Statement, and responded to by the Debtors at that time. The Debtors have further addressed those arguments in the Debtors' Reply as well as their submissions filed in the adversary proceeding captioned *Fieldwood Energy LLC, et al, Everest Reinsurance Company, Philadelphia Indemnity Insurance Company, HCC International Insurance Company PLC,*

*Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, and Apache Shelf Exploration LLC*, Case No. 20-33948 (MI), including in *Plaintiff's Motion for Summary Judgment on Claims for Declaratory Relief* [D.I. 4].

4. Many of the Predecessor and Surety Objections are cloaked in purported concern for public welfare, expressing doubts regarding the feasibility of Credit Bid Purchaser and the wherewithal of the emerging FWE I, FWE III, and FWE IV entities to perform the anticipated necessary future decommissioning. As the Debtors' Reply explains, those Objections fail because the Plan is feasible, the post-Effective Date entities are more than adequately capitalized, and Credit Bid Purchaser anticipates securing sufficient new bonding prior to confirmation. *See* Debtors' Reply; Dane Declaration. Moreover, assertions of concern for the public welfare voiced by sophisticated, self-interested oil and gas companies and sureties ring hollow given that the Debtors remain in direct discussions regarding Plan structure with the Government Agencies—the parties actually focused on and tasked with protecting those public interests by ensuring oil and gas operators have sufficient wherewithal and bonding to perform decommissioning safely and granting related regulatory operating approvals—to resolve their concerns and obviate their potential objections.

5. Similarly, the Objections based on a skewed interpretation of *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494 (1986) are misplaced and have already been rejected by this Court. *Midlantic* restricts debtors from abandoning property "in violation of certain state and federal laws," specifically those laws "designed to protect public health or safety." *Id.* at 501–02. But for good reason, this Court has repeatedly expressed the view that only a governmental entity has the right to object on such grounds. *See In re Am. Coastal Energy Inc.*, 399 B.R. 805, 813 (Bankr. S.D. Tex. 2009) ("It is not the Court's prerogative to

replace the legislature's judgment with its own judgment as to what conduct constitutes a sufficient threat to the public."); *In re Castex Energy 2005 Holdco, LLC*, et al., No 21-30710 (MI) (Bankr. S.D. Tex. June 7, 2021) [D.I. 324] (Courtroom Minutes, 56:30); *see also In re Fieldwood Energy LLC*, Case No. 20-33948 (MI) (Bankr. S.D. Tex. Mar. 24, 2021) (Hrg. on Approval of Discl. Stmt., 5:15–18, 25:18–20). Here, the Plan does not provide for the abandonment of any property in violation of any laws designed to protect public health and safety, and no objections filed thus far are by Governmental Agencies arguing otherwise. The mere fact that the sophisticated Predecessors and Sureties may be required to fulfill their contractual promises or statutory obligations or may not recover fully under prepetition unsecured indemnity agreements does not change these facts.

6. To the extent the Sureties argue that any contingent indemnification claims they may hold arising from their prepetition bonds warrant administrative expense status under section 503(b) of the Bankruptcy Code, such argument is without merit. First and foremost, the sureties have not spent a single dollar reimbursing any parties, let alone the Debtors, for work performed on account of the Debtors' own decommissioning obligations.

7. Second, such claims against the Debtors are prepetition obligations because such claims arise out of bonds and contracts that were issued and entered into prior to the Petition Date, and therefore did not arise "from a transaction with the debtor in possession." *See In re Whistler Energy II, L.L.C.*, 931 F.3d 432, 442 (5th Cir. 2019) (quoting *In re Phones for All, Inc.*, 288 F.3d 730, 732 (5th Cir. 2002)).

8. Third, any decommissioning work performed for the post-Effective Date entities and any reimbursements in connection therewith cannot give rise to an administrative expense claim by definition because they do not involve the Debtors, the Debtors' estates, or the Debtors'

5

property.  This Court and others have recognized that requests for administrative expense status should be denied when made by parties that have conducted decommissioning work on property that is no longer part of a debtor's estate.  *See In re Am. Coastal Energy Inc.*, 399 B.R. at 813 ("Opinions that have denied administrative expense characterization of post-petition expenditures to remediate pre-petition environmental liabilities involved expenditures on property that was no longer property of the bankruptcy estate. . . . Since the property was no longer estate property, the expenditure was not necessary to preserve the estate.") (citing *In re Dant & Russell, Inc.,* 853 F.2d 700, 709 (9th Cir. 1988); *Ohio v. Kovacs,* 469 U.S. 274 (1985); *Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir. 1985)); *In re McCrory Corp*, 188 B.R. 763, 769–70 (Bankr. S.D.N.Y. 1995) (holding where a leasehold interest was no longer property of the estate following rejection and no imminent harm was posed to public health or safety, abandonment was permitted and post-petition clean-up costs were not entitled to an administrative expense claim); *In re Insilco Techs., Inc.*, 309 B.R. 111, 115 (Bankr. D. Del. 2004) (denying administrative expense claim for property sold prepetition and ruling that in "general only those costs incurred to cleanup property for which an estate has an interest in or owns may qualify as administrative expenses").

9.  As noted by the Fifth Circuit in *H.L.S. Energy Co., Inc. v. Lowe*, *Midlantic*'s rationale can be interpreted to support the non-controversial proposition that, if the government were to assert claims against a debtor to protect public health or safety, those claims by the government could be entitled to administrative priority status.  *See* 151 F.3d 434, 438 (5th Cir. 1998); *In re Am. Coastal Energy Inc.*, 399 B.R. at 816.  However, the fact that the Objections are asserted by private companies is dispositive here.  *Midlantic* never purported to create a new class of administrative claims to private companies based on those own companies' decommissioning obligations or hypothetical subrogation rights to theoretical—but never filed—government claims

for the protection of public health and safety. Nor has any case in this circuit interpreted *Midlantic* in that way. Indeed, the rationale underlying this Court's decision in *Am. Coastal* only underscores this point. While the government's "expenditures for remedying violations of environmental and safety laws are necessary to preserve the estate" because such services are necessary to bring the estate into compliance with health and safety laws, *In re Am. Coastal Energy Inc.*, 399 B.R. at 816, a surety's payment to a third party who performs plugging and abandonment work pursuant to its own obligations after the effective date of a plan cannot, by definition, preserve a debtor's estate. Rather, such payment only enhances the assets of a non-debtor based on contractual reimbursement obligations.

10. Moreover, as noted above, the Plan provides for the orderly administration of the anticipated future decommissioning obligations. FWE I, FWE III, and FWE IV are sufficiently capitalized and supported to complete any applicable decommissioning work and Credit Bid Purchaser anticipates securing sufficient new bonding prior to confirmation of the Plan. *See* Debtors' Reply; Dane Declaration. Furthermore, the Predecessors with respect to those assets not being purchased by Credit Bid Purchaser are statutorily obligated to complete the decommissioning work themselves, and the Debtors have come to a consensual resolution with the Predecessors addressing the performance of all such work except with respect to a de minimis approximately 9% of the estimated total decommissioning work. *See* Debtors' Reply; Dane Declaration. As discussed above, any issues arising from the assets on the Schedule of Abandoned Properties are the Government's to assert, and currently no such assertions are anticipated. And for the reasons noted above, any claims of the Sureties with respect to the assets on the Schedule of Abandoned Properties will not give rise to administrative claims.

["

11. Finally, if the Sureties' objections succeed in unraveling the hard work of the numerous parties-in-interest supporting this Plan, the Debtors will not have another, more attractive alternative. In that event, the Plan includes a "toggle" option that would require the Debtors to pivot to a sale of secured collateral under section 363 of the Bankruptcy Code. *See* Plan § 5.2(c). Regardless, the Debtors' view, supported by the diligent work and analysis of its management team and professionals that will be confirmed by evidence presented at the confirmation hearing, together with the broad stakeholder consensus across the Debtors' capital structure, the consensual resolution with Predecessors obligated in connection with approximately 91% of the anticipated decommissioning obligations, and Credit Bid Purchaser's sufficient capitalization and expected new bonding, demonstrates why the Plan is the best path available for the Debtors' stakeholders and estates. As aggrieved unsecured creditors, the Objecting Predecessors and Sureties provide no legitimate basis to deny confirmation.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Ad Hoc Group of Secured Lenders respectfully requests that the Court overrule the Objections (to the extent still outstanding), grant the Motion, enter the proposed Confirmation Order, and grant such other and further relief as is just and proper.

Dated:   Houston, Texas
         June 13, 2021

By: */s/ Charles A. Beckham Jr.*
**HAYNES AND BOONE, LLP**
Charles A. Beckham, Jr.
Texas State Bar No. 02016600
Martha Wyrick
Texas State Bar No. 24101606
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone.: (713) 547-2000
Facsimile: (713) 547-2600
Email: charles.beckham@haynesboone.com
Email: martha.wyrick@haynesboone.com


**COUNSEL FOR THE AD HOC
GROUP OF SECURED LENDERS**

**DAVIS POLK & WARDWELL LLP**
Damian S. Schaible (admitted *pro hac vice*)
Elliot Moskowitz (admitted *pro hac vice*)
Natasha Tsiouris (admitted *pro hac vice*)
Joshua Sturm (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: damian.schaible@davispolk.com
Email: elliot.moskowitz@davispolk.com
Email: natasha.tsiouris@davispolk.com
Email: joshua.sturm@davispolk.com


**COUNSEL FOR THE AD HOC
GROUP OF SECURED LENDERS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on June 13, 2021.

*/s/ Charles A. Beckham, Jr.*
Charles A. Beckham, Jr.