**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.*, | § | **Case No. 20-33948 (MI)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |

**DECLARATION OF MARC J. BROWN IN SUPPORT OF DEBTORS'
FOURTH AMENDED JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC
AND ITS AFFILIATED DEBTORS**

I, Marc J. Brown, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.      I am a Managing Director at AlixPartners, LLP ("**AlixPartners**"), the restructuring advisor to Fieldwood Energy LLC and its debtor affiliates as debtors and debtors-in-possession (collectively, "**Fieldwood**" or the "**Debtors**") in the above captioned chapter 11 Cases (the "**Chapter 11 Cases**").  I submit this Declaration in support of confirmation of the *Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (ECF No. 1284) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**").[2]

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2.     Through my role as an advisor to the Debtors, I am familiar with the Debtors' financial affairs, current and anticipated post-emergence capital structure, creditors, and related matters.  I am also familiar with the terms of the Debtors' Plan and *Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors*, filed on April 15, 2021 [Docket No. 1285] (the "**Disclosure Statement**").  Unless otherwise indicated, the statements set forth in this Declaration are based on (a) my personal knowledge or experiences; (b) information that I have received from the Debtors, my colleagues at AlixPartners working directly with me or under my supervision, direction, or control, or other advisors of the Debtors; or (c) my review of relevant documents, including the Plan and the Disclosure Statement.

3.     I am over the age of 18 and authorized to submit this Declaration in support of the Plan.  I am not being specifically compensated for this testimony other than through payments received by AlixPartners as a professional retained by the Debtors.  In any event, no aspect of my testimony is contingent on any payment to AlixPartners.  If called upon to testify, I could and would testify to the facts set forth herein.

### Professional Background and Qualifications

4.     I have been employed by AlixPartners for approximately 20 years.  Prior to joining AlixPartners, I was a Senior Analyst in the Valuation Services Group of Price Waterhouse, LLP. I also worked as an Investment Analyst at Chicago Fundamental Investment Partners, LLC, a distressed and fundamental credit investment fund, where I valued public companies as well as specific assets and subsidiaries of these companies, analyzed the market prices of debt, equity, and derivative securities, and made recommendations to buy or sell specific securities or provide additional debt capital.

5.      I have approximately 25 years of professional experience in valuation and financial analysis, much of which has involved troubled or bankrupt companies, and have analyzed companies in a diverse range of industries, including numerous entities operating in the oil and gas industry.

6.      I have a Bachelor of Science degree in finance from the University of Illinois at Urbana-Champaign – College of Business and a Masters of Business Administration with concentrations in accounting, finance, and strategy with honors from the University of Chicago Booth School of Business.  I am a Chartered Financial Analyst Charterholder.

7.      As an advisor, I have conducted numerous liquidation analyses for various companies, including for Pacific Drilling S.A., Oasis Petroleum Inc., Bruin E&P Partners, LLC, Linn Energy, Inc, Memorial Production Partners LP, Triangle USA Petroleum Corporation, McDermott International, Inc., Basic Energy Services, C&J Energy Co., Tidewater, Inc, General Motors Corp., SIGA Technologies, Inc., and Paragon Offshore PLC, and I have also performed liquidation analyses as an investment analyst.

8.      A copy of my complete curriculum vitae is attached hereto as **Exhibit B**, and a list of my speeches and publications in the last ten (10) years and a list of matters in which I have testified over the last four (4) years is attached hereto as **Exhibit C**.

9.      During my time at AlixPartners, I have been involved in many notable chapter 11 and restructuring assignments, such as Linn Energy, Inc, General Motors Corp., Intelsat SA, Neiman Marcus Group LTD LLC, Windstream Holdings, Inc., The Gymboree Corporation, Velocity Holding Company, Inc., C&J Energy Co., Paragon Offshore PLC, Eastman Kodak Company, and Safety-Kleen Corporation.

10.     AlixPartners is a global independent restructuring consulting firm that has a wealth of experience in providing financial advisory services and has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Chapter 11 Cases.  Since its inception in 1981, AlixPartners has provided restructuring or crisis management services in numerous large cases.  One of the services AlixPartners provides is assisting its clients with the preparation of liquidation analyses for purposes of determining whether proposed chapter 11 plans comply with the requirements of Section 1129(a)(7) of the Bankruptcy Code

11.     Since AlixPartners' initial engagement by the Debtors on or about May 15, 2020, the AlixPartners' personnel providing services to the Debtors have worked closely with the Debtors' management and other professionals in assisting with the Debtors' restructuring efforts and the various requirements of the Chapter 11 Cases.  As a result of that work, I am generally familiar with the Debtors' capital structure, business operations, books and records, restructuring efforts to date.

### The Plan is in the Best Interests of All Creditors and Equity Interest Holders

12.     I understand that to satisfy the "best interests" test under Section 1129(a)(7) of the Bankruptcy Code, a debtor must demonstrate that each holder of a claim or equity interest in an impaired class has neither (a) accepted the plan or (b) is receiving at least as much value under a proposed plan as it would receive a hypothetical chapter 7 liquidation.  To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, one or both of these requirements are true as to each holder of a claim or equity interest in an impaired class.

13.     I personally oversaw the preparation of the Debtors' hypothetical, reasonable, and good-faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code (the "**Liquidation Analysis**"), a true and correct copy of which is attached hereto as **Exhibit A**.  I am familiar with the methods used and the conclusions reached in the preparation of the Liquidation Analysis.  I completed the Liquidation Analysis after extensive due diligence by the Debtors, Houlihan Lokey, and AlixPartners.  The Liquidation Analysis reflects the views and input of the Debtors' management based upon their experience with the Debtors' assets, and includes a detailed description of the assumptions, analysis, and results of a hypothetical chapter 7 liquidation of the Debtors.  The Liquidation Analysis was set forth in the Disclosure Statement and a complete description of the process and results of the Liquidation Analysis are set forth in "Exhibit M" to the Disclosure Statement.

14.     As stated in the Liquidation Analysis, subject to the assumptions and limitations described therein, a chapter 7 liquidation would require the Debtors to satisfy the $10 million DIP Facility.  The Debtors would also need to satisfy the estimated amount needed to plug and abandon and decommission the FWE III Properties which would likely be substantially greater than the up to $27 million under the Plan currently allocated to plug and abandon and decommission the FWE III Properties.  Additionally, expenses associated with maintaining the Apache Legacy Properties, the Abandoned Properties, and FWE IV Properties, as further described in the Liquidation Analysis, would require further incremental funding.  Given the shortfall in the value of the Debtors' assets relative to the additional expenses and Claims that would need to be satisfied in full before a recovery could be provided to holders of Allowed general unsecured Claims, it is expected that no distributions would be available for any general unsecured creditors, including

Prepetition SLTL Lenders.  Thus, as set forth in the Liquidation Analysis, the proceeds realized from a hypothetical chapter 7 liquidation of the Debtors would provide a distribution value to each Class of Allowed Claims that would be equal to, or less than, the value of distributions provided to each Class under the Plan.

15.     Based on my involvement in the preparation of the Liquidation Analysis and my experience as a restructuring advisor, I believe that the methodology used to prepare the Liquidation Analysis is appropriate and the assumptions and conclusions set forth therein are fair and reasonable under the circumstances.  I believe that the recoveries under the Plan are equal to or exceed those under a hypothetical liquidation, as set forth in the Liquidation Analysis.  In addition, a chapter 7 liquidation would cause delay and added expense, which would negatively impact the creditors' recoveries.  Furthermore, I believe that the Debtors' value under the Plan exceeds the recoveries described in the Liquidation Analysis.

### Conclusion

16.     In light of the foregoing, I believe that the best interests test of section 1129(a)(7) of the Bankruptcy Code is satisfied, and confirmation of the Plan is in the best interests of the Debtors and their Estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 13, 2021
      Chicago, Illinois

                                 */s/ Marc J. Brown*
                                 Marc J. Brown, CFA
                                 Managing Director
                                 AlixPartners, LLP

                                 *Restructuring Advisor to the Debtors and Its Affiliates*

**<u>Certificate of Service</u>**

I hereby certify that on June 13, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


  */s/ Alfredo R. Pérez*
Alfredo R. Pérez

## Exhibit A

**Liquidation Analysis**

A.   **Introduction**

The Bankruptcy Code requires that each holder of an impaired Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.[1]   This requirement is customarily referred to as the "best interests" of creditors test.

To demonstrate that the Plan satisfies the best interests test, the Debtors, with the assistance of their restructuring advisors, AlixPartners, LLP, have prepared this hypothetical liquidation analysis (the "Liquidation Analysis"), which is based upon certain assumptions discussed in the Disclosure Statement and the accompanying notes to this Liquidation Analysis.

The first step in determining whether the Plan satisfies the best interests test is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtors' assets and properties in the context of a chapter 7 liquidation case.  The gross amount of Cash that would be available for satisfaction of Claims and Interests would be the sum consisting of the proceeds resulting from the disposition of the assets and properties of the Debtors, augmented by the unencumbered Cash held by the Debtors at the time of the chapter 7 conversion.

The next step is to reduce that gross amount by (i) the costs and expenses of the chapter 7 cases, (ii) the proceeds received from the disposition of encumbered assets that would be distributed to the holders of the liens on such assets up to the value of such assets, and (iii) the amount of additional administrative expense claims and priority claims arising from the use of the chapter 7 process for the purposes of liquidation.  Any remaining Cash would be allocated to unsecured creditors and interest holders in strict priority in accordance with section 726 of the Bankruptcy Code.

B.   **Statement of Limitations**

The preparation of a liquidation analysis is an uncertain process involving the use of estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their financial and legal advisors, are inherently subject to significant business, economic, and competitive risks, uncertainties and contingencies, most of which are difficult to predict and many of which are beyond the control of the Debtors, their management, and their advisors.  Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation.  The Liquidation Analysis was prepared for the sole purpose of generating a reasonable, good faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code; it is not intended, and should not be used, for any other purpose.

---

[1] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, to which this exhibit is attached as Exhibit M.

The underlying financial information in the Liquidation Analysis, and the values stated herein, have not been subject to review, compilation, or audit by any independent accounting firm. In addition, various liquidation decisions, upon which certain of the assumptions are based, are subject to change. As a result, the actual amount of the Claims against the Debtors' Estates could vary significantly from the estimates stated herein, depending on the nature and amount of Claims asserted during the pendency of the chapter 7 cases. Similarly, the value of the Debtors' assets in a liquidation scenario is uncertain and could vary significantly from the values set forth in the Liquidation Analysis. The Debtors have not estimated, and the Liquidation Analysis does not take into account: (i) the tax consequences that may result from the liquidation of the Debtors' assets; (ii) the avoidance of any prepetition liens and recoveries resulting from any potential preference, fraudulent transfer, or other litigation or avoidance actions; or (iii) certain of the Claims that may be entitled to priority under the Bankruptcy Code, including certain administrative priority Claims under sections 503(b) and 507(b) of the Bankruptcy Code. ACCORDINGLY, NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A LIQUIDATION OF THE DEBTORS WOULD OR WOULD NOT, IN WHOLE OR IN PART, APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED HEREIN. THE ACTUAL LIQUIDATION VALUE OF THE DEBTORS IS SPECULATIVE AND RESULTS COULD VARY MATERIALLY FROM ESTIMATES PROVIDED HEREIN.

In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in these Chapter 11 Cases, but which could be asserted and allowed in a chapter 7 liquidation, including unpaid administrative priority Claims relating to wind-down costs and chapter 7 trustee fees. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims under the Plan. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

### C.   **Basis of Presentation**

This Liquidation Analysis has been prepared assuming that the Debtors' Chapter 11 Cases are converted to Chapter 7 cases on or about May 1, 2021 (the "Liquidation Date"). It is assumed that on the Liquidation Date, the Bankruptcy Court would appoint a Chapter 7 trustee (the "Trustee") to oversee the liquidation of the Debtors' estates, during which time all of the assets of the Debtors would be sold, on a piecemeal basis or as a whole, and the Cash proceeds, net of liquidation-related costs, would then be distributed to creditors in accordance with applicable law: (i) first, to pay wind-down expenses and other Allowed administrative priority Claims; (ii) second, to pay the secured portions of Allowed Claims relating to the respective collateral; and (iii) third, to pay other priority Claims. Any remaining net Cash would be

distributed to creditors holding Allowed general unsecured Claims, including any unsecured deficiency Claims.

### D.    Assumptions and Analysis

The timeframe associated with the liquidation analysis is uncertain and there is no assurance that the recoveries assigned to the assets would in fact be realized.  Under Section 704 of the Bankruptcy Code, a trustee must, among other duties, collect and convert the property of the estate as expeditiously (generally in a distressed process) as is compatible with the best interests of parties-in-interest.

In the event of a chapter 7 liquidation, it is likely that a chapter 7 liquidation would (i) incur increased costs and expenses arising from fees payable to the Trustee in bankruptcy and professional advisors to the Trustee, (ii) erode value of any remaining assets in the context of a forced sale or takeover, and (iii) result in the potentially substantial increase in Claims that would dilute creditor recoveries.

**1.    Increased Fees and Expenses.**  This Liquidation Analysis assumes that the Debtors' costs of liquidation under chapter 7 would include the fees payable to the Trustee as well as those fees that might be payable to attorneys and other professionals that the Trustee might engage.  Other liquidation costs include the expenses incurred during the Chapter 11 Cases that are allowed as administrative priority Claims in the chapter 7 cases, such as compensation for attorneys, financial advisors, appraisers, accountants, and other professionals for the Debtors and statutory committees appointed in the Chapter 11 Cases, and costs and expenses of members of such committees, as well as other compensation Claims.

**2.    Increased Costs and Additional Claims Incurred by a Delayed Liquidation**.  This Liquidation Analysis assumes the operations of the Debtors will cease and that the Plan construct associated with FWE I, FWE III, FWE IV, the Abandoned Properties and the Credit Bid Acquired Interests would no longer apply.  Each of these groups of properties or assets were evaluated for how they would be treated in a hypothetical chapter 7 liquidation scenario.

For the Credit Bid Acquired Interests, it is assumed that the Prepetition FLTL Lenders, in conjunction with the FLFO Lenders, will credit bid their outstanding debt or otherwise seize their collateral.  The Trustee would be responsible for abandoning or otherwise winding-down all of the Debtors' assets that are not sold or otherwise seized by the Prepetition FLTL Lenders and/or the Prepetition FLFO Lenders, including the FWE I Properties, the FWE III Properties, the FWE IV Properties and the Abandoned Properties.  As a result, the Debtors expect they would need additional funding to wind-down the estates.

For the FWE I Assets and the FWE IV assets, it is assumed that the Apache Implementation Agreement and the Chevron Definitive Documents, respectively, will no longer be in place upon a chapter 7 conversion and that the Trustee would attempt to negotiate an alternative agreement with Apache (or other third party) with respect to the Legacy Apache Properties and similarly, the Trustee would attempt to negotiate an alternative agreement with Chevron (or other third party) with respect to the FWE IV Properties.  It is assumed that the Debtors would continue to remain financially responsible for maintaining the Legacy Apache Properties and the FWE IV Properties while such negotiations were pending.  As a result, the

Debtors expect that the failure to consummate the Apache Implementation Agreement and the Chevron Definitive Documents would substantially increase the costs of administering the FWE I Assets and the FWE IV assets to the Debtors and their estates.

For the Abandoned Properties, FWE III Properties, and FWE IV Properties, the plan and timing for abandoning these properties and transitioning to predecessors in the chain-of-title or other responsible parties the plugging and abandonment and decommissioning responsibilities associated with these properties is unclear and not currently knowable without the Plan in place. The Debtors believe, however, that any such transition would be significantly delayed by several months, if not longer, as a result of the Debtors' cessation of operations and the loss and disruption to the Debtors' workforce responsible for facilitating such transition. In addition, the Trustee would likely determine that additional professionals would need to be retained to help aid the Trustee in facilitating such transition. If the Debtors continued to be financially and legally responsible for maintaining the Abandoned Properties, FWE III Properties, and FWE IV Properties, it is expected they would incur in excess of approximately $7.5 million in carrying costs each month beyond the Liquidation Date. Further, any litigation associated with abandoning the Abandoned Properties, FWE III Properties, and FWE IV Properties would result in additional professional fees and expenses to the Debtors and their estates and additional delays in the transition.

The process of liquidating the Debtors' businesses would also be subject to review by numerous regulatory agencies, including BOEM and BSEE, which would likely further delay the liquidation process. In the event litigation was necessary to resolve claims asserted in the chapter 7 case, such delay would likely be further prolonged and involve additional costs to the Debtors and their estates.

**3. Other Additional Claims.** This Liquidation Analysis further assumes that additional Claims would arise by reason of the breach or rejection of obligations incurred and leases and executory contracts assumed or entered into by the Debtors during the pendency of the Chapter 11 Cases. The foregoing types of Claims, costs, expenses, fees, and such other Claims that may arise in a liquidation case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay prepetition priority and unsecured Claims, or available for distribution to the holders of Interests.

E. <u>Conclusion</u>

The Debtors estimate that, in a chapter 7 liquidation, the aggregate value of all property of the Debtors that is not subject to prepetition liens would total no more than approximately $11 million to $15 million. To provide a recovery to holders of general unsecured Claims, the value of such property would need to exceed the outstanding amounts due under the Debtors' senior secured superpriority postpetition DIP Facility and the estimated Allowed administrative priority Claims that arose in the Chapter 11 Cases and additional Allowed administrative priority Claims arising in the chapter 7 cases.

As detailed in the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors (A) To Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) To Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition*

*Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b) and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* (Docket No. 22) (the "DIP Motion"), and as approved in the final order approving the DIP Motion (Docket No. 346) (the "Final DIP Order"), the outstanding amounts owed by the Debtors under the DIP Facility is secured by a senior lien on effectively all of the Debtors' assets.  It is assumed that as of the Liquidation Date, the Debtors will owe approximately $10 million under the DIP Facility.

In addition to satisfying the $10 million DIP Facility, the estimated amount needed to plug and abandon and decommission the FWE III Properties in a chapter 7 liquidation would likely be substantially greater than the up to $27 million under the Plan currently allocated to plug and abandon and decommission the FWE III Properties, which the Debtors assumed under the Plan would be efficiently and cost-effectively wound-down in the two years after the Effective Date.   Additionally, expenses associated with maintaining the Apache Legacy Properties, the Abandoned Properties, and FWE IV Properties, as further described above, would require further incremental funding.  As such, given the shortfall in the value of the Debtors' assets relative to the additional expenses and Claims that would need to be satisfied in full before a recovery could be provided to holders of Allowed general unsecured Claims, it is expected that no distributions would be available for any general unsecured creditors, including the Prepetition SLTL Lenders.

Based on the foregoing, the Debtors believe that the value of any distributions to each Class of Allowed Claims in a chapter 7 liquidation, including all Allowed secured Claims, would be equal to, or less than, the value of distributions provided to each Class under the Plan, and many of the distributions made in a chapter 7 case liquidation would likely not occur until several months after the Liquidation Date, thus lowering the expected value of such distributions.

**Alix**Partners

**MARC J. BROWN, CFA**
**CURRICULUM VITAE**

| | |
|---|---|
| **POSITION** | Managing Director, AlixPartners, LLP, Chicago, Illinois |
| **EDUCATION** | B.S. – Finance (High Honors) University of Illinois at Urbana-Champaign, Urbana, Illinois |
| | Masters in Business Administration (Honors) Concentrations in Accounting, Finance and Strategic Management (Economics) University of Chicago, Graduate School of Business, Chicago, Illinois |

**PROFESSIONAL HISTORY**

| | | |
|---|---|---|
| AlixPartners, LLP Director | | 2008 - 2015 1998 - 2006 |
| Chicago Fundamental Investment Partners, LLC Investment Analyst | | 2006 - 2008 |
| Price Waterhouse LLP**,** Valuation Services Group Senior Analyst | | 1997 - 1998 |
| John Nuveen & Co. Inc. Investment Banking Analyst | | 1996 - 1997 |

**PROFESSIONAL CERTIFICATIONS & BUSINESS AFFILIATIONS**

Chartered Financial Analyst charterholder
Member – CFA Institute, CFA Society of Chicago
American Bankruptcy Institute
Turnaround Management Association
Business Valuation Association

**RANGE OF EXPERIENCE**

Marc's nearly 25 years of experience encompasses a wide variety of corporate finance engagements with a focus on valuation consulting.  Marc has valued hundreds of companies and assets for numerous purposes including:  mergers and acquisitions, divestitures, capital raising, litigation and other disputes, bankruptcy, distressed and workout situations, solvency, ESOPs, strategic assessments, financial reporting and tax planning and reporting.

In addition to business enterprise valuations, he has valued common and preferred stock, limited partnership interests, debt instruments, warrants, options and other derivatives and hybrid securities, as well as intellectual property and intangible assets. Marc has advised boards of directors, independent directors, law firms, lenders, creditors, investors, government agencies and

**AlixPartners**

public and private companies of all sizes and has also served as a valuation arbitrator.

Marc has been qualified as a valuation expert in federal district and a valuation, solvency and liquidation analysis expert bankruptcy court and has also calculated and testified to damages for litigation, arbitration and mediation purposes. Marc has considerable experience with valuation, transaction and securities disputes. He has performed numerous solvency analyses in connection with serving as a testifying solvency expert as well as advising boards of directors and independent directors related to potential dividend payments, contingency planning and settlement discussions as well as in connection with fraudulent conveyance and other avoidance actions.

He has served as a financial advisor in M&A and other corporate transactions and has acted as a financial advisor to debtors in possession as well as represented both secured and unsecured creditors in bankruptcy, turnaround and workout situations. He has advised on restructuring and sale scenarios, valuation disputes, executory contract rejection analyses, liquidation analyses, asset due diligence and cash flow monitoring and modeling.

Marc has consulted with companies in a number of industries and has presented to diverse audiences on a variety of valuation and financial topics including serving as an instructor on the fundamentals of valuation.

In addition to his consulting experience, Marc has worked as an investment banker and a distressed debt hedge fund investment analyst advising on primary lending and assessing the value of debt, equity and derivative securities and making recommendations to invest the fund's capital in public and private securities.

**AlixPartners**

MARC J. BROWN, CFA
PRESENTATIONS & PUBLICATIONS

---

Speeches and Presentations within the Last Ten Years

- "The Net-Short Debt Strategy Paradigm", with Marti Murray (Brattle Group), Emil Kleinhaus (Wachtell, Lipton, Rosen & Katz.), David Smith (UVA) and B. Steffen (GlassRatner), Association of Insolvency & Restructuring Advisors, 18th Annual Advanced Restructuring & POR Conference, New York, November 2019.

- "Fraud, Crime, Valuation and Damages in Restructuring", with D. Bart (RSM LLP), D. Doyle (Lashley & Baer, P.C.), R. Stark (Brown Rudnick LLP) and B. Steffen (GlassRatner, LLC), Association of Insolvency & Restructuring Advisors, 17th Annual Advanced Restructuring & POR Conference, New York, November 2018.

- "Catch Me if You Can:  Strategies to Stop the Shell Game – Successor Liability", with Honorable Erithe A. Smith (U.S. Bankruptcy Court, Central District of California), Jan Hayden (Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.) and Ryan Schultz (Fox Swibel Levin & Carroll, LLP), National Association of Bankruptcy Trustees, September 2017 Annual Convention, New Orleans, September 2017.

- Moderator of panel on Energy workouts and bankruptcy at the American Bankruptcy Institute Central States Workshop, Michigan, June 2017.

- "Pursuing and Defending Alleged Fraudulent Transfers" with Emil Kleinhaus (Wachtell, Litpton, Rosen & Katz) and Debra Dandeneau (Baker McKenzie, LLP) - American Bar Association CLE Webcast, April 2017.

- "Valuation Issues and Liquidity Alternatives for the Privately Owned Company Marital Asset" with Alan Lee, Chicago, Illinois, April 2016.

- Moderator of panel on "Use of Derivatives and Probabilistic Methods in Bankruptcy, Workouts and Insolvency Matters" at the American Bankruptcy Institute VALCON 2016, Las Vegas, Nevada, March 2016.

- Ravinia Capital Roundtable, Chicago, Illinois, January 2016.

- "Robotic Surgery, Are We Losing Money?" with Dr. Piero Giulianotti and Dr. Despoina Daskalaki, Clinical Robotic Surgery Association meeting, Chicago, Illinois, October 2015.

**AlixPartners**

MARC J. BROWN, CFA
PRESENTATIONS & PUBLICATIONS

- "Utilizing and Preparing Valuation Experts in Bankruptcy Litigation" with Richard L. Costella (Miles & Stockbridge P.C.), Laura Davis Jones (Pachulski Stang Ziehl & Jones LLP), Honorable Thomas J. Catliota (U.S. Bankruptcy Court, District of Maryland) – Turnaround Management Association CLE Webcast, June 2015.

- "Valuation: Applications and Methodologies" with John Finnerty, PhD and Matthew Wicker - AlixPartners America Team Meeting, Orlando, Florida, June 2015.

- Ravinia Capital Roundtable, Chicago, Illinois, April 2015.

- "Pursuing and Defending Alleged Fraudulent Transfers" with Debra Dandeneau (Weil, Gotschal), Samuel Lonergan and Scott Talmadge (Kaye Scholer) – American Bar Association CLE Webcast, December 2014.

- "M&A Litigation: Appraisal Rights and Their Continued Use in Shareholder Litigation" with Jessica Corely (Alston & Bird LLP) – American Bar Association CLE Webcast, July 2014.

- Panel speaker on "Valuation in a Distressed Context" at the American Bankruptcy Institute Central States Workshop, Lake Geneva, Wisconsin, 2014.

- "Pursuing and Defending Alleged Fraudulent Transfers: A Practical Guide" with David Rosenzweig (Fulbright & Jaworski) – American Bar Association CLE Webcast, December 2012.

- "Hot Topics in Valuation" – AlixPartners North American meeting, Chicago, Illinois, June 2011.

- "Bankruptcy and Turnaround Valuations" with R. Bruce Den Uyl at the April 2011 Business Valuation Association meeting, Chicago, Illinois.

Publications

- Quoted in "The Value of Loyalty" in *New York Times DealBook*, October 2020.

- "Financial Impact of the Robotic Approach in Liver Surgery: A Comparative Study of Clinical Outcomes and Costs between the Robotic and Open Technique in a Single Institution", *Journal of Laparoendoscopic & Advanced Surgical Technique*s, Spring 2017.

- "Appraisal Rights and Shareholder Fights," *alixpartners.com,* September 2016.

**AlixPartners**

**MARC J. BROWN, CFA**
**PRESENTATIONS & PUBLICATIONS**

- Quoted in *Crain's Chicago* article regarding litigation involving hospital trade secrets, April 2016.

- Quoted in "Valuation the Ultimate Challenge," *Private Funds Management*, March 2016.

- Marc J. Brown, "M&A Litigation: The Upswing in Appraisal Rights Actions," *Transaction Advisors*, June 2014.

- Marc J. Brown, Bruce Goldfarb, Alan Klein, and Richard J. Grossman, "Shareholder Activism in M&A," *Risk & Compliance*, October 2014.

- Marc J. Brown and Bruce Den Uyl, "Fair Value Accounting and Private Equity", *alixpartners.com,* March 2012.

**AlixPartners**

MARC J. BROWN, CFA
TESTIMONY WITHIN THE LAST FOUR YEARS

- Polaris Venture Partners VI, L.P. et al., v. Ad-Venture Capital Partners, L.P. and Brian F. Addy, Supreme Court of the State of New York, County of New York, Index No. 650623/2018

- Pacific Drilling SA, et al., Debtors. Chapter 11, United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case Number: 20-35212 (DRJ)

- Chesapeake Energy Corporation, et al., Debtors. Chapter 11, United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case Number: 20-33233 (DRJ)

- Securities and Exchange Commission v. Stiefel Laboratories Inc., et al., United States District Court, Southern District of Florida, Case Number: 1:11-CV-24438

- Oasis Petroleum Inc., et al., Debtors. Chapter 11, United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case Number: 20-34771 (MI)

- Bruin E&P Partners, LLC, et al., Debtors. Chapter 11, United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case Number: 20-33605 (MI)

- Forescout Technologies, Inc. v. Ferrari Group Holdings, L.P., et al., C.A. No. 2020-0385-SG, in the Court of Chancery of the state of Delaware

- McDermott International, Inc., et al., Debtors. Chapter 11, United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case Number: 20-30336 (DRJ)

- NMR E-tailing, LLC v. Oak Investment Partners, et al., Supreme Court of the State of New York, County of New York, Index. No. 656450/2017

- Veerappan Subramanian, et al. v. Lupin Inc., Civil Action No. 17-cv-5050, United States District Court, Southern District of New York

- In re Health Diagnostic Laboratory, Inc. et al., Chapter 11 Case No. 32919 (KRH) United States Bankruptcy Court, Eastern District of Virginia, Richmond Division

- In re Ditech Holding Corporation, et al., Chapter 11 Case No. 19-10412 (JLG), United

**AlixPartners**

States Bankruptcy Court, Southern District of New York

- Ken Yim, et al. v. London Trust Media, Incorporated, et al., Case No. BC596372, Superior Court for the State of California, County of Los Angeles, Central District

- Lyle Guidry, et al. v. Wilmington Trust, N.A., Case No. 17-250-RGA United States District Court, for the District of Delaware

- UPMC and UPMC Altoona v. CBIZ, Inc., Case No. 3:16-cv-204-KRG United States District Court, Western District of Pennsylvania

- Borden L.P., v. TPG Sixth Street Partners, et.al., Index No. 657398/2017 Supreme Court of the State of New York, County of New York

- PDL Biopharma, Inc. v.  Samuel J. Wohlstadter, et al., Supreme Court of the State of New York, County of New York, Index No. 653028/2015 IAS Part 3

- In re Pacific Drilling S.A., et al., Chapter 11 Case No. 17-13193 (MEW) United States Bankruptcy Court, Southern District of New York

- In re: ATD Corporation, et al. Chapter 11 Case No. 18-12221 (KG) United States Bankruptcy Court, District of Delaware

- LVI Group Investments, LLC v. NCM Group Holdings, LLC, et al. in the Court of Chancery of the state of Delaware, C.A. No. 12067-VC

- David Mark v. Dimensional Holdings, Inc., David G. Booth and Rex A. Sinquefield, No. 3:16-cv-02933-VC, United States District Court, Northern District of California

- Tidewater et al., Chapter 11 Case No. 17-11132 (BLS) United States Bankruptcy Court, District of Delaware

- In re Paragon Offshore plc, et al., Chapter 11 Case No. 16-10386 (CSS) United States Bankruptcy Court, District of Delaware

- Hugler v. Veronica Mueller, Roger Mueller et al.  United States District Court for the Eastern District of Wisconsin, Milwaukee Division (No.13-C-1302)

**AlixPartners**

MARC J. BROWN, CFA
TESTIMONY WITHIN THE LAST FOUR YEARS

- In re: Linn Energy, LLC et al. Chapter 11 Case No.16-60040 (DRJ), United States Bankruptcy Court, Southern District of Texas, Victoria Division

- In re:  C&J Holding Co, et al. Chapter 11 Case No. 1633590 (DRJ), United States Bankruptcy Court, Southern District of Texas, Victoria Division

- Perez v. Commodity Control Corporation, et al. United States District Court for the Southern District of Florida, Miami Division (No. 1:16-cv-20245-UU)

- Perez v. First Bankers Trust Services, et al. United States District Court for the Southern District of New York (No. 1:12-cv-08648)

- In re:  SIGA Technologies, Inc., Chapter 11 Case No. 14-12623 (SHL), United States Bankruptcy Court, Southern District of New York