IN RE FIELDWOOD ENERGY LLC
CH. 11 CASE NO. 20-33948 (MI)

SUMMARY CHART OF PLAN OBJECTIONS[1]

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 1. | 1366 | Deepsea Quality Consulting, Inc. ("**Deepsea**") | a) Deepsea has been unable to obtain confirmation from Debtor that these claims will be paid or provided for payment in Debtor's Plan despite repeated request in writing to Debtor. (¶ 2) <br> b) Deepsea has not been offered adequate protection for its secured claim. (¶ 3) | a) Debtors' counsel provided Deepsea's counsel with a copy of the proposed Plan and Deepsea's counsel subsequently confirmed by email that Deepsea's objections are resolved. <br> b) See above. |
| 2. | 1406 | Lewis Andrews and Patrick Burnett ("**Maritime Tort Claimants**") | The Maritime Tort Claimants assert that the Plan does not address or provide for the adjudication and liquidation of post-petition, preconfirmation personal injury claims. Rather, the terms of the Plan are limited to releasing and enjoining pending claims and reserving the adjudication of such claims to the bankruptcy case. The Maritime Tort Claimants object to any release of their claims and reserve their rights to adjudication and jury trial outside of the bankruptcy case. (¶ 6) | The Debtors intend to engage with the Maritime Tort Claimants to resolve their objection through consensual language added to the proposed Confirmation Order. |
| 3. | 1407 | Brian Cloyd ("**Maritime Tort Claimant**") | The Maritime Tort Claimant asserts that the Plan does not address or provide for the adjudication and liquidation of post-petition, preconfirmation personal injury claims. Rather, the terms of the Plan are limited to releasing and enjoining pending claims and reserving the adjudication of such claims to the bankruptcy case. The Maritime Tort Claimant objects to any release of their claims and reserve their rights to adjudication and jury trial outside of the bankruptcy case. (¶ 6) | The Debtors intend to engage with the Maritime Tort Claimant to resolve its objection through consensual language added to the proposed Confirmation Order.[2] |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' Memorandum of Law in Support of (I) Confirmation of Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors and (II) Omnibus Reply to Objections Thereto* (ECF No. 1553) (the "**Brief**"). This chart summarizes certain key issues raised in the Objections. To the extent that an Objection or a specific point raised in an Objection is not addressed herein, the Debtors reserve the right to respond to such Objection up to and at the confirmation hearing.

[2] To the extent that the Debtors note that they intend to engage with objecting parties, the Debtors do not waive any of their rights with respect to such Objections.

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 4. | 1427 | Hanover Insurance Company ("**Hanover**"), Liberty Mutual Insurance Company ("**Liberty**"), Travelers Casualty & Surety Company of America ("**Travelers**"), and XL Specialty Insurance Company ("**XL**") (collectively the "**Hanover Sureties**") | a) The Debtors cannot abandon their P&A responsibilities. (¶¶ 16-21)<br>b) The Debtors cannot "abandon to" predecessors in the chain of title under section 554 of the Bankruptcy Code. (¶ 22)<br>c) The Debtors should not be permitted to use the Bankruptcy Code to avoid obligations to sureties. The surety bonds cannot be transferred without a surety's consent. Credit Bid Purchaser and FWE I cannot rely on current bonds riding through the bankruptcy. (¶¶ 23-33)<br>d) Bonds cannot be chopped and apportioned among different buckets. (¶¶ 34-36) | a) *See* Brief, Argument § II.<br>b) The Debtors are not seeking to abandon properties to specific predecessors. The Plan only provides that the Abandoned Properties will be abandoned immediately upon the occurrence of the Effective Date. *See* Brief, Argument § II; Plan 5.13(a).<br>c) The Debtors do not seek to transfer any surety bonds where a Debtor is the principal. The Debtors will prove at confirmation that Credit Bid Purchaser and FWE I will have the requisite bonding needed to own and operate their respective assets. *See* Brief, Argument § III.<br>d) The Plan does not seek to "split" surety bonds. |
| 5. | 1431 | Cypress-Fairbanks ISD, Galveston County, Harris County, Lavaca County, Live Oak CAD, Matagorda County, Rio Grande City CISD, and Starr County ("**Taxing Authorities**") | The Taxing Authorities object to the Plan on the basis that it fails to:<br>a) specifically provide for how the Taxing Authorities' claims will be paid (¶ 4a)<br>b) properly provide for the payment of interest on the Taxing Authorities' claims as required by 11 U.S.C. §§ 506(b) and 1129 (¶ 4b)<br>c) provide for the retention of the Taxing Authorities' liens on the collateral (¶ 4c)<br>The Taxing Authorities object to the Plan to the extent it purports to impose a requirement of filing an administrative expense claim in order for the 2021 taxes to be paid. (¶ 4d) | The Plan does not need to specify how a specific creditor's claim will be paid. The Debtors dispute the assertions regarding what the Plan does or does not provide for. The Debtors intend to engage with the Taxing Authorities to resolve their objection through consensual language added to the proposed Confirmation Order. |
| 6. | 1432 | Colorado County Tax Office, Sheldon Independent Dickinson Independent School District, Bay City Independent School District, and Burleson County Tax Office, secured creditor and party in interest (the "**Certain** | The Certain Texas Taxing Entities object to confirmation of the Plan in that:<br>a) it fails to provide for the retention of their pre-petition and post-petition liens on its collateral. (¶ 5)<br>b) it fails to provide for the payment of interest on their claims at the applicable non-bankruptcy rate from date of delinquency until paid in full as required by 11 U.S.C. § 511 and Texas law. (¶ 6)<br>c) it requires prior approval for the amendment of claims. (¶ 7)<br>d) it fails to provide for a clear provision for notice of and remedies for default. (¶ 8) | The Debtors dispute the assertions regarding what the Plan does or does not provide for. The Debtors intend to engage with the Certain Texas Taxing Entities to resolve their objection through consensual language added to the proposed Confirmation Order. |

WEIL:\97998080\12\45327.0005

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | Texas Taxing Entities") | e) to the extent that they are required to file administrative claims for post-petition taxes or are subject to any administrative bar dates. (¶ 9)<br>f) it fails to provide for the payment of post-petition taxes in the ordinary course of business prior to delinquency, making the failure to pay such taxes an event of default under the Plan. (¶ 10)<br>g) to the extent that the confirmation order allows for any exit-financing that would prime the senior secured liens of The Certain Texas Taxing Entities. (¶ 11) | |
| 7. | 1434 | Valero Marketing and Supply Company ("Valero") | a) Valero objects to confirmation of the Plan to the extent that Fieldwood intends to sell and/or transfer the claim against Valero free and clear of Valero's setoff rights and defenses (¶ 20)<br>b) Valero's requests that the Supplement Language's provision regarding the Adversary Proceeding be amended to include "subject to Valero's right to set off any damages owed to Fieldwood against the damages it seeks from Valero." (¶ 21) | The Debtors intend to engage with Valero to resolve its objection through consensual language added to the proposed Confirmation Order. |
| 8. | 1435 | North American Specialty Insurance ("NAS") | NAS joins the objections of the other sureties. (¶ 2)<br>a) Debtors want to assign parts of leases while abandoning other portions of the leases carrying significant P&A obligations. There is no approach to the assumption of leases by the Debtors that is recognized in §365 of the Code. (¶ 5)<br>b) The Debtors cannot abandon decommissioning liabilities. (¶ 6)<br>c) The Plan potentially interferes with the ability of NAS to assert surety defenses against the obligees. (¶ 7)<br>d) The underlying obligations of bonds issued by NAS potentially give rise to administrative obligations of the Debtors. (¶ 8)<br>e) It is unclear how the Plan treats surety credit. (¶ 9)<br>f) If the post-confirmation entities remain principals of the bonds, sureties will have rights of exoneration and reimbursement against such entities. (¶ 10) | a) *See* Brief, Argument § II; *see also* Brief, Confirmation Objections § IV.<br>b) The Debtors are permitted to abandon properties that do not pose an imminent threat of harm to public health and safety. The Debtors have provided for conditions under their Plan that will adequately protect the public health and safety post-abandonment. *See* Brief, Argument § II.<br>c) The Plan does not impair NAS' rights to assert defenses to claims of obligees.<br>d) *See* Brief, Argument § III.<br>e) This does not appear to be an objection to confirmation of the Plan. As the Debtors have stated previously, the Plan does not provide for the assumption or rejection of any surety bonds. *See* Omnibus Reply of Debtors to Objections to Disclosure Statement [ECF No. 1124], Ex. A, at 13.<br>f) Any claims held by NAS against the Debtors under the bonds or related indemnity agreements are prepetition unsecured claims that will be discharged under the Plan. |
| 9. | 1436 | Lexon Insurance Company, Ironshore Indemnity Inc. and | a) The Lexon bonds cannot be transferred to other entities, which appears to be what the Debtors are contemplating under the Plan. (¶ 35) | a) The Plan does not provide for the transfer of Lexon's bonds. |

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | Ironshore Specialty Insurance Company (collectively, "**Lexon**") | b) The Debtors have not demonstrated that Credit Bid Purchaser, FWE I, FWE III, and FWE IV can obtain the necessary bonds associated with the Debtors' assets. (¶ 39)<br>c) The divisive merger does not meet the requirements of the Texas Business Organization Code. The Debtors are using the divisive merger to circumvent obligations under various surety indemnity agreements and to allow a foreign entity to effectuate a divisive merger to create a new domestic entity. (¶¶ 41, 52)<br>d) The Plan potentially violates *Midlantic* for the Abandoned Properties. (¶ 69)<br>e) The Lexon bonds cannot be split amongst various assets. (¶ 70).<br>f) The Debtors cannot abandon property upon that theory that Lexon will pay for any obligations upon abandonment. (¶ 77)<br>g) Lexon is entitled to an administrative expense claim if it is required to pay for the obligations arising out of the Abandoned Properties. (¶ 89)<br>h) The proposed abandonment of the Abandoned Properties violates 28 U.S.C. § 959(b) based on the proposed abandonment of the Abandoned Properties. (¶ 94)<br>i) The Plan contains overly broad releases and injunction provisions. (¶ 98)<br>j) The amount of administrative expense claims renders the Plan unconfirmable. (¶ 113) | b) The Debtors will establish at confirmation that the Credit Bid Purchaser, FWE I, FWE III, and FWE IV will be able to obtain the requisite bonding to own and/or operate the Debtors' assets. *See* Brief, Argument § I.C.<br>c) *See* Brief, Argument § I.<br>d) *See* Brief, Argument § II.<br>e) Neither the Plan nor Disclosure Statement purport to split any of the surety bonds.<br>f) The Plan does not "split" surety bonds. *See* Brief, Argument § II.<br>g) *See* Brief, Argument § III.<br>h) *See* Brief, Argument § II.<br>i) The release provision cited to by Lexon as being an impermissible, nonconsensual third-party release is a consensual release, which is permitted under Fifth Circuit case law. Moreover, the exculpation provisions are not overly broad. *See* Brief, Argument § V.<br>j) *See* Brief, Argument § III. |
| 10. | 1438 | Multiklient Invest AS ("**MKI**") | a) To the extent Debtor assumes the MLA, MKI objects to the Plan to preserve its rights with respect to (i) confidentiality; (ii) consent; (iii) use and disclosure of data; (iv) assignment and transfer; (vi) change of control; (vi) termination; and (vi) payment of a transfer fee. (¶ 5)<br>b) MKI further objects to the Plan to the extent it authorizes Debtor to disclose any confidential and proprietary information protected by the Licensing Agreements to any successor before this Objection is resolved. (¶ 6)<br>c) To the extent that the License Agreements are rejected, MKI objects to the Plan to preserve its rights and enforce Debtor's obligations with respect to the destruction of data that is subject to the License Agreements. (¶ 7)<br>d) MKI further objects to the Plan's release and exculpation provisions as overly broad and contrary to law. (¶ 8) | a) The Debtors intend to engage with MKI to resolve its objection.<br>b) See above.<br>c) See above.<br>d) *See* Brief, Argument § V. |

WEIL:\97998080\12\45327.0005

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 11. | 1442 | ConocoPhillips Company, The Louisiana Land & Exploration Company and Burlington Resources Offshore (collectively, "**COPC**") | a) Fieldwood's plan does not comply with applicable law to the extent it fails to provide for timely decommissioning of all assets under the applicable regulations. (p. 3)<br>b) It is unclear at this time whether regulators will approve the divisive merger-based transfer of leases to FWE I and FWE III, creating a compliance and feasibility problem. (p. 3)<br>c) Abandoning assets does not comply with applicable law. (p.3)<br>d) The proposed release and exculpation of Apache exceeds the scope of releases allowed under *In re Pacific Lumber*. (p. 4) | a) *See* Brief, Argument § II.<br>b) *See* Brief, Argument § I.<br>c) *See* Brief, Argument § II.<br>d) *See* Brief, Argument § V. |
| 12. | 1443 | Marathon Oil Company and its affiliates and subsidiaries (collectively "**Marathon**") | a) The Debtors' Plan attempts to have this court bless the commission of a crime in contravention of § 30:34 of the Louisiana Revised Statutes. (p. 1)<br>b) The Fourth Amended Plan provides for third-party releases under a convoluted opt-out plan that is not transparent. (p. 2)<br>c) The Debtors have not secured approval from the Bureau of Ocean Energy Management to transfer property such that the Fourth Amended Plan is not feasible and confirmation should be denied. (p. 2)<br>d) The Fourth Amended Plan does not treat like creditors alike. The Debtors have not proven that the value of assets going to NewCo treats the secured creditors appropriately on account of their deficiency claims. (p. 3) | a) The Debtors' Plan does not constitute a crime.  In a series of U.S. Supreme Court cases dubbed the "tidewaters controversy", the Supreme Court determined that the federal government—and federal law—must apply in the high seas, defined originally as extending from three nautical miles off the coast of the states. See *United States v. California,* 332 U.S. 19, 28 (US 1947).  *See also United States v. Texas*, 339 U.S. 707 (U.S. 1950) and *United States v. Louisiana*, 339 U.S. 699 (U.S. 1950) (collectively, the "**Tidelands Cases**").  In the Tidelands Cases, the states of California, Texas and Louisiana attempted to claim sovereignty over the oil and gas located in the seas beyond the three mile traditional limit.  In each case, the Supreme Court rejected the state's attempt to exercise domain over the open seas.<br><br>A few years later, in 1953, the U.S. Congress passed the Outer Continental Shelf Lands Act ("**OCSLA**") which provides:<br><br>"It is hereby declared to be the policy of the United States that –(1) the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition as provided in this subchapter…"<br>43 U.S.C. Sec. 1332.  (The term "outer Continental Shelf" is defined by OCSLA as "… all submerged lands lying seaward and outside the area of lands beneath the navigable waters as defined in section 1301 of this title, and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control."). |

WEIL:\97998080\12\45327.0005

|  | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
|  |  |  |  | The oil and gas properties subject to these cases are located upon the outer Continental Shelf of the United States and are, therefore, subject to the exclusive jurisdiction and domain of federal, not state law.  Marathon's argument simply ignores long-established notions of the sovereignty of the United States.  In fact, Marathon's invocation of Louisiana law, which applies merely to oil and gas activities conducted on state lands, ignores even the boundaries that the state law places on itself.  In a few sections beyond the section of the Louisiana Revised Statute cited by Marathon, the Louisiana statute recognizes the axiomatic principles of the Tidewaters Cases:<br><br>"With the exception of Section 2117 [related to radioactive waste disposal] and 2111(A) [related to agreements between the state government and the federal government] of this Chapter, none of the provisions of this Chapter shall be applicable to any activity which is regulated by the United States government or which is otherwise subject to federal law."<br><br>LA R.S. Sec. 30:2118. (Emphasis added.)   As noted above, federal law applies to the activities of exploring oil and gas in federal waters.  See 43 U.S.C. 1332 et. seq. and 30 CFR 250 et. seq.<br><br>b)  *See* Brief, Argument § V.<br>c)  *See* Brief, Argument § I.<br>d)  *See* Brief, Confirmation Objections §§ III, V. |
| 13. | 1446 | Zurich American Insurance Company ("**Zurich**") | a)  The Plan treats similarly situated creditors differently in violation of 1123(a)(4) because Apache is treated more favorably. (¶¶ 26-32)<br>b)  The Plan violates section 1123(a)(6) and (a)(7) of the Bankruptcy Code because the Sureties are entitled to share in the governance and management of FWE I in the same manner as Apache. (¶¶ 33-40) | a)  *See* Brief, Confirmation Objections §§ III, V.<br>b)  *See* Brief, Argument § IV.<br>c)  *See* Brief, Confirmation Objections § II.<br>d)  *See* Brief, Confirmation Objections § III.<br>e)  *See* Brief, Argument § I.<br>f)  *See* Brief, Argument § V. |

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | c) The treatment of the Zurich Bonds and Zurich GAI under the Plan is improper and violates Sections 1129(a)(1) and 1123(a)(5) because (i) the Debtors cannot assume Zurich's bonds and indemnity agreements with Zurich's consent, (ii) the Debtors must assume the Zurich bonds and indemnity agreements if they are assuming the Decommissioning Agreement, and (iii) Zurich's common law indemnification claims survive a discharge. (¶¶ 41-55)<br>d) The Plan's was not proposed in good faith because the Debtors did not sell all or part of the Legacy Apache Assets and the Plan is designed to serve only Apache(¶¶ 56–64)<br>e) FWE I is not feasible. (¶¶ 65-70)<br>f) The Plan's exculpation provisions are improper and constitute impermissible, third-party releases. (¶¶ 71-79)<br>Zurich joins the objections filed by other sureties. (¶ 80) | |
| 14. | 1449 | Philadelphia Indemnity Insurance Company ("**Philadelphia**") | a) The Decommissioning Agreement, Bond, and Indemnity Agreement are one agreement that must be assumed, if at all, *cum onere* (¶¶ 46-54)<br>b) The Bond and Indemnity Agreement are one agreement and are not assumable under section 365(c)(2) as a financial accommodation without Philadelphia's consent. (¶¶ 53 – 64)<br>c) The Debtors cannot allocate the Bond to FWE I after discharging the Indemnity Agreement. (¶¶ 65-67)<br>d) Allocating the Bond to FWE I means that the Indemnity Agreement must be allocated to FWE I. Philadelphia will retain common law rights if the Debtors seek to retain the benefits of the Bond. (¶¶ 68-70)<br>e) The Plan violates 11 U.S.C. §§ 1223(a)(6) and (a)(7) because Apache has control over FWE I. (¶¶ 71 – 79)<br>f)  The Plan's preferred treatment of Apache violates 11 U.S.C. § 1123(a)(4). (¶¶ 80- 91)<br>g) The Debtors' failure to market the FWE I assets or propose value-maximizing operational agreements means the Plan is not proposed in good faith. (¶¶ 92 – 96)<br>h) The exculpation provisions violate Fifth Circuit precedent and 11 U.S.C. § 524 (¶¶ 97 – 104)<br>i) FWE I is not feasible because of inadequate capital structure, earning power, and economic conditions. (¶¶ 105 – 106)<br>Philadelphia joins the other sureties objections. (¶ 107) | a) *See* Brief, Confirmation Objections § II.<br>b) The Debtors are not seeking to assume the Bond and/or Indemnity Agreement. Accordingly, this objection should be overruled because it is based on a flawed assumption.<br>c) The Debtors are not allocating bonds to FWE I or any other entity. Accordingly, this objection should be overruled because it is based on a flawed assumption.<br>d) The Debtors are not allocating bonds where a Debtor is the principal on such bond to FWE I or any other entity. Additionally, any obligations owed to Philadelphia by the Debtors, including common law claims, will be discharged under the Plan.<br>e) *See* Brief, Argument § IV.<br>f) *See* Brief, Confirmation Objections §§ III, V.<br>g) *See* Brief, Argument § IV.<br>h) *See* Brief, Argument § V.<br>i) *See* Brief, Argument § I. |

WEIL:\97998080\12\45327.0005

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 15. | 759, 1451, 1476 | XTO Offshore, Inc., HHE Energy Company, and XH, LLC, and their respective affiliates and subsidiaries (collectively, "**XTO**") | a) XTO's Original Objection asserts that the Plan should not be confirmed because (i) it fails to satisfy the requirements for abandonment set forth in the U.S. Supreme Court's *Midlantic* opinion because it does not provide a means for paying the billions of dollars needed to satisfy the Debtors' P&A Obligations, which constitute administrative expenses of the Debtors' bankruptcy estates; and (ii) the Plan includes improper third party releases, which are prohibited under applicable Fifth Circuit case law. (¶ 1)<br>b) XTO objects to the proposed cure amounts pertaining to the XTO Contracts included in the Plan Supplement. (¶ 2)<br>c) XTO objects to the Plan on the grounds that the Debtors cannot satisfy their burden of showing that the Plan is feasible under section 1129(a)(11) of the Bankruptcy Code because the special purpose vehicles created through the Debtors' proposed divisive merger are undercapitalized and will not be able to perform under the Plan. (¶ 2)<br>XTO objects to the Plan, and does not consent to any action by the Debtors through the Plan that would have the effect of impairing XTO's rights against third parties under its surety bonds relating to the Abandoned Properties. (¶ 2) | a) *See* Brief, Argument §§ II, III, V.<br>b) The Debtors intend to engage with XTO to resolve its cure claim.<br>c) *See* Brief, Argument § I. |
| 16. | 1454 | Cox Oil, LLC, Cox Operating LLC, Energy XXI GOM, LLC, Energy XXI Gulf Coast, Inc., Energy XXI Onshore, LLC, Energy XXI Pipeline, LLC, Energy XXI Pipeline I, LLC, Energy XXI Pipeline II, LLC, M21K, LLC and EPL Oil & Gas, Inc., on behalf of themselves and their | a) The Plan lacks any language expressly preserving setoff and recoupment rights for all parties. (¶ 13)<br>b) The Plan Injunction interferes with the rights of secured creditors to their collateral by enjoining creditors and parties in interest from "creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor . . ." (¶ 14) | a) Debtors intend to engage with the Cox Entities to resolve their objection.<br>b) *See* Brief, Argument § V. |

WEIL:\97998080\12\45327.0005

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | applicable affiliates (collectively, the "**Cox Entities**"), | | |
| 17. | 1455 | Ecopetrol America LLC ("**Ecopetrol**") | a) The Credit Bid Purchase Agreement fails to preserve certain provisions and terms of the Unit Operating Agreement (the "**UOA**"). (§ II) The Debtors have failed to exclude Ecopetrol's Security Interest from the Exit Facility Lenders' Collateral. (§ III)<br>b) Ecopetrol's Proposed Cure Amount is Incorrect and Fails to Consider the UOA and the Related Contracts (§ IV) | The Debtors intend to engage with Ecopetrol to resolve its objections through consensual language added to the proposed Confirmation Order. |
| 18. | 1459 | Secretary of the Louisiana Department of Revenue ("**LDR**") | a) The LDR objects to Section 2.1 of the Plan, arguing that 1129(a)(9)(A) requires payment upon the Effective Date or payment upon the due date in the ordinary course of business accordance with tax law, whichever is later. The LDR does not consent to lesser treatment. (§ 2(A))<br>b) The Plan provides for such ordinary course payments to be paid consistent "past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities, but consistent with the tax law is not included." (§ 2(B))<br>c) The LDR objects to the language in Section 6.2 to the extent applicable to Administrative Tax Claims. (§ 2(C))<br>d) The LDR objects to Section 2.5 because it provides for Priority Tax Claims to be paid consistent with the provisions of section 1129(a)(9), when Priority Tax Claims are required to be paid in conformity with section 1129(a)(9)(C), absent agreement to lesser treatment by the creditor. LDR does not agree to lesser treatment. Section 2.5 fails to provide for the commencement date of distributions and the frequency of payment of such distributions. (§ 3(A))<br>e) The Plan does not differentiate between (1) the interest that accrues between the Petition Date and the Effective Date versus (2) the Post-Effective Date interest required by Section 1129(a)(9). (§ 3(B))<br>f) The LDR also objects to Claim 6.5 as an impairment of collection interest on any of the LDR's Administrative Tax Claims and Priority Tax Claims. (§ 3(C)) | The Debtors intend to engage with the LDR to resolve its objection through consensual language added to the proposed Confirmation Order. |

WEIL:\97998080\12\45327.0005

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | g) LDR objects to Section 6.6 of the Plan stating that distributions will be made to the address on the books and records of the Debtors. (§ 4(A)) <br> h) LDR objects to Section 6.7 of the Plan because Priority Tax Payments can stretch over the course of five years from the Petition Date. (§ 5(A)) <br> i) LDR also objects to Section 6.10 with respect to the Plan Administrator not making a final Plan Distribution of less than $50.00. (§ 5(B)) <br> j) LDR objects to Section 7.4. There is no provision in the Bankruptcy Code that allows the Plan Administrator or anyone else to assume that a claim is either amended or superseded (or as seen in some objections, both) and expunge it. (§ 6) <br> k) LDR objects to Section 7.7 of the Plan because permission of the Post-Effective Date Debtors should not be required for amending a pleading. (§ 7) <br> l) The Plan injunction at Section 10.6 fails to preserve the statutory setoff and recoupment rights afforded under applicable non-bankruptcy law and the Bankruptcy Code. (§ 8) | |
| 19. | 1460 | Red Willow Offshore, LLC ("**RWO**") and Houston Energy Deepwater Ventures I, LLC ("**HEDV**") | a) RWO and HEDV object on the grounds that the third party release provisions are impermissible because Section 524(e) of the Bankruptcy Code "prohibits the discharge of debts of nondebtors." (§ 2) | a) *See* Brief, Argument § V. |
| 20. | 1461 | Aspen American Insurance Company ("**Aspen**"), Berkley Insurance Company ("**Berkley**"), Everest Reinsurance Company ("**Everest**"), and Sirius America Insurance Company ("**Sirius**" and together with Aspen, | a) FWE I is not feasible because the Debtors' financial projections are inaccurate. (¶¶ 29-36) <br> b) The Plan is not proposed in good faith because the Debtors set aside no funding for the decommissioning obligations of NewCo. (¶¶ 37-39) <br> c) FWE I is not feasible because the Debtors have no plan with respect to obtaining surety bonds for FWE I and the Debtors cannot allocate existing surety bonds to FWE I (¶¶ 40-56) <br> d) The Plan is also not feasible because there is no allocation of funding for new bonds for Credit Bid Purchaser. (¶¶ 57-61) | a) *See* Brief, Argument § I. <br> b) The Sureties provide no legal support for its position that in order to confirm a chapter 11 plan, the Debtors must set aside funds to backstop future, contingent obligations of a non-debtor entity purchasing certain estate assets. <br> c) Despite Aspen's statements to the contrary, the Debtors are not allocating or transferring any bonds where FWE is the principal. *See* Aspen Obj., ¶ 73. Rather, the bonds identified by Aspen that are being allocated pursuant to the Initial Plan of Merger are bonds where FWE is the ***beneficiary***, not principal. <br> d) *See* Brief, Argument § I. |

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | Berkley and Everest, the "**Sureties**") | e) The Plan is unconfirmable because the Debtors are attempting to assume and assign financial bonds, which they cannot do because surety bonds are non-assumable financial accommodations. (¶¶ 62-67)<br>f) The Plan was not proposed in good faith because Fieldwood Energy LLC's conversion to a Texas limited liability company is to effectuate a fraudulent transfer. (¶¶ 68-77)<br>g) The Plan is unconfirmable because the Debtors' attempt to transfer indemnity obligations to FWE III constitutes a fraudulent transfer under Texas law. (¶¶ 78-82)<br>h) The Plan is unconfirmable because the Debtors cannot assume the Decommissioning Agreement and reject the associated indemnity agreements. (¶¶ 83-86)<br>i) The Plan is unconfirmable because Apache is being treated differently than similarly situated creditors in violation of section 1123(a)(4). (¶¶ 87-96)<br>j) The Plan is unconfirmable because the organizational documents of FWE I violate sections 1123(a)(6) and (7). (¶ 97)<br>k) The Plan was not proposed in good faith because the Debtors have not marketed the FWE I Assets. (¶¶ 98-104)<br>l) The exculpation provisions violate Fifth Circuit precedent and 11 U.S.C. § 524. (¶¶ 1505-112) | e) The Debtors are not moving to assume any of the Sureties' bonds.<br>f) The Sureties have not provided any factual or legal support for its assertion that it is improper for Fieldwood Energy LLC to convert to a Texas limited liability company for the purpose of undergoing a Texas divisive merger.<br>g) The assertion that the transfer of assets to FWE I constitutes a fraudulent transfer lacks merit. The Sureties provide no evidence or legal authority to support this allegation. Furthermore, the Sureties state that the divisive merger separates the benefits of the bonds issued by the Sureties from the correlative obligation to make the Sureties whole. *See* Obj. ¶ 73.  However, the Sureties' objection conflates the different types of bonds involved with this case. The bonds cited to by the Sureties as being allocated to FWE I are bonds for which ***Fieldwood is a beneficiary***. *See id.*<br>h) *See* Brief, Confirmation Objections § III.<br>i) *See* Brief, Confirmation Objections §§ III, V.<br>j) *See* Brief, Confirmation Objections §§ III, V.<br>k) *See* Brief, Confirmation Objections §§ III, V.<br>l) *See* Brief, Argument § V. |
| 21. | 1463 | Ridgewood Katmai, LLC ("**Ridgewood**") and ILX Prospect Katmai, LLC ("**ILX Prospect**," and together with Ridgewood Katmai, the "**Non-Op WIOs**") | a) The Plan fails to provide for sufficient cure costs and/or adequate assurance of future performance in violation of Section 365(b). (§ B.2)<br>b) The Plan fails to properly provide for the Non-Op WIOs' interests in violation of Section 1129(a)(3) of the Bankruptcy Code. (§ C)<br>c) The Plan provides for neither payment in full nor the indubitable equivalent of the Non-Op WIOs' Secured Claim in violation of Section 1129(b). (§ D) | a) The Debtors intend to engage with Ridgewood to resolve its cure objection.<br>b) *See* Brief, Confirmation Objections § III.<br>c) The Plan provides that the UOA will be assumed and assigned to the Credit Bid Purchaser.  To the extent that the Non-Op WIOs hold a valid secured claim, such claim shall be treated in accordance with the Plan. |
| 22. | 1464 | LLOG Exploration Offshore, L.L.C., and LLOG Energy, L.L.C. (collectively, "**LLOG**") | a) LLOG has a secured rejection damages claim in the amount of $19,808,461.47 on account of, among other things, future P&A costs, which is secured by proceeds of the GC 201 ORRI. (¶¶ 10-14)<br>b) LLOG objects to the proposed 363 sale as it will strip LLOG of its collateral. (¶¶ 15-18) | a) For the reasons set forth in the *Debtors' Objection to LLOG Exploration Offshore, L.L.C.'s Motion for Relief From the Automatic Stay* (ECF No. 757) and *Debtors' Objection to LLOG Exploration Offshore, L.L.C.'S Motion for Adequate Protection* (ECF No. 758), the Debtors submit that LLOG does not hold a valid and enforceable security interest in the GC 201 ORRI or any proceeds thereof. Moreover, to the extent LLOG asserts a |

WEIL:\97998080\12\45327.0005

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | c)  Credit Bid Purchaser does not have a lien on the GC 201 ORRI such that it can credit bid for purposes of the 363 sale. (¶ 18). | rejection damages claim for future P&A costs, such a claim would be disallowed under section 502(e)(1)(B). *See* Brief, Confirmation Objections § III.<br>b)  The Debtors dispute that LLOG holds a valid and enforceable security interest in the GC 201 ORRI. To the extent it does, the Debtors' interest in the GC ORRI can be sold "free and clear" of LLOG's alleged interest. *See* 11 U.S.C. § 363(f).<br>c)  The Credit Bid PSA provides for consideration other than the credit bid amount, including (among other forms of consideration) cash.  *See* Discl. St., Ex. H – Credit Bid Purchase Agreement § 2.1. |
| 23. | 1467 | Atlantic Maritime Services LLC ("**Atlantic**") | a)  Atlantic objects to preserve any and all rights, privileges, liens, and claims it has against non-debtors and non-debtor property interests based on the work it performed on five leases on the Outer Continental Shelf in the Gulf of Mexico or any other transactions. (¶ 1)<br>b)  Atlantic objects to the Credit Bid Transaction and the Credit Bid Purchase Agreement to the extent they purport to transfer any property interests of non-debtors free and clear of any rights, privileges, liens, and claims held by Atlantic. (¶ 2) | For the reasons set forth in each of the Debtors' filings in the adversary proceeding captioned *Fieldwood Energy LLC, et al. v. Atlantic Maritime Services, LLC*, Adv. Proc. No. 20-03476 (MI) (Bankr. S.D. Tex.), the Debtors are entitled to a determination that satisfaction of a debt owed by the Debtors to Atlantic under the Plan extinguishes the alleged lien securing such debt under LOWLA. |
| 24. | 1468 | BP Exploration & Production Inc. ("**BP**") | a)  The Plan fails to satisfy Section 1129(a)(11) of the Bankruptcy Code because FWE III, FWE IV and NewCo are not feasible. (§ A)<br>b)  The Plan:<br>  (i)  contains conflicting language that the Debtors may argue limits the Post-Effective Date performance obligations to the U.S. Government claims regarding the Non-Dischargeable P&A Obligations, and thus the subrogation rights that BP otherwise would have, as a de facto discharge of such rights; (§ B)<br>  (ii)  impermissibly seeks to transfer assets and contract rights to NewCo free and clear of BP's secured setoff rights, without providing any adequate protection to BP; and (§ C) | a)  *See* Brief, Argument § I.<br>b)<br>  (i)  *See* Brief, Argument § III.<br>  (ii)  *See* Brief, Argument § III.<br>  (iii) *See* Brief, Argument § IV.<br>c)  *See* Brief, Argument § II.<br>d)  *See* Brief, Argument § IV.<br>e)  *See* Brief, Argument § II. |

WEIL:\97998080\12\45327.0005

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | (iii) includes overly broad and impermissible third-party releases in favor of various non-debtor, non-committee individuals and entities, without adequate justification or demonstration of contributions to the Plan by any of the beneficiaries of such releases. (§ D)<br>c) The Plan improperly seeks to abandon oil and gas properties without adequately addressing the most basic health and safety concerns and/or requirements. (¶ 6)<br>d) Section 10.6 of the Plan contains an overly broad injunction, preventing all Persons who have held, hold or may hold Claims from pursuing such Claims against numerous parties including a Debtor, a Post-Effective Date Debtor, or any successor, including Claims subject to arbitration. (¶ 55)<br>e) The Plan fails to satisfy Section 1129(a)(1) of the Bankruptcy Code because Section 554(a) of the Bankruptcy Code prohibits the Debtors' abandonment of P&A Obligations under these Circumstances (§ G) | |
| 25. | 1469 | Sparrows Offshore, LLC ("**Sparrows**") | a) Sparrows objected to the Plan to preserve its rights with respect to its claim and security interest in a certain crane boom. (¶ 3) | The Debtors intend to engage with Sparrows to resolve its objection prior to confirmation. |
| 26. | 1470 | Shell Offshore Inc. ("**Shell**") | a) The Plan contains impermissible third party releases and accompanying injunctions to non-debtor third parties such as "the Apache PSA Parties", which is in chain of title with Shell on certain of its oil and gas interests and may have decommissioning obligations for such interests along with creditors like Shell. (¶ 14)<br>b) The Plan is not proposed in good faith because the Debtors have not addressed the fact that they cannot avoid their environmental and regulatory liabilities through abandonment.(¶ 17)<br>c) The Plan is not feasible because it does not provide the means for the Debtors' satisfaction of their decommissioning obligations. (¶ 25) | a) *See* Brief, Argument § IV.<br>b) *See* Brief, Argument § II; *see also* Brief, Confirmation Objections § III.<br>c) *See* Brief, Argument § I. |
| 27. | 1480 | JX Nippon Oil Exploration (U.S.A.) Limited ("**Nippon**") | a) The Plan improperly provides alterations of executory contracts which the Debtors seek to assume and assign as it includes full releases of defaults in Section 8.2(e) of the Plan (§ A)<br>b) Nippon objects to the cure amounts listed in the Notice of Assumed Contracts. (§ B)<br>c) The Plan improperly provides for the release of setoff and recoupment rights. (§ C) | Debtors intend to engage Nippon to resolve its objection. |

WEIL:\97998080\12\45327.0005

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | d) The Plan improperly seeks to abandon property to predecessors in interest. (§ D)<br>e) Nippon submits that language should be included in the Confirmation Order providing that nothing in the Plan will impair Nippon's rights under the Fieldwood Replacement Bonds related to the proposed sale, abandonment or the divisive merger. (§ E) | |
| 28. | 1482 | RLI Insurance Company ("**RLI**") | a) The Plan improperly releases Post-Effective Date Debtors from future obligations related to the Abandoned Properties. (§ B)<br>b) The Plan does not address operator status and is not feasible with regard to properties being partially abandoned and partially retained. (§ C)<br>c) The Plan does not provide for a means to pay administrative expenses associated with the Abandoned Properties. (§ D)<br>d) Abandonment violates applicable laws designed to protect health and safety (§ E)<br>e) The Plan injunctions are vague and overbroad (§ F)<br>f) RLI objects to Section 10.7(c) of the Plan or any impairment of its collateral rights to the Panaco Collateral and (§ G)<br>g) RLI objects to releases or injunctions that impair its equitable subrogation rights against any non-debtor. (§ I) | a) *See* Brief, Argument § II, IV.<br>b) *See* Brief, Argument § I.<br>c) *See* Brief, Argument § III.<br>d) *See* Brief, Argument § II.<br>e) *See* Brief, Argument § IV.<br>f) *See* Brief, Argument § IV.<br>g) *See* Brief, Argument § IV. |
| 29. | 1528 | Superior Performance, Inc. ("**SPI**") | a) SPI objects to the Plan to the extent that the proposed releases are intended to release SPI's liens against Green Canyon Block 40 and/or Mississippi Canyon Block 519 without providing for payment, in full, of SPI's vendor lien claims. (¶ 5)<br>b) SPI further objects to, and opts out of, the third party releases provided for in the Plan. (¶ 6) | a) *See* Brief, Argument § V.<br>b) *See* Brief, Argument § V. |
| 30. | 1529 | Seitel Data, Ltd. and affiliates ("**Seitel**") | a) Seitel objects to the proposed rejection until the Debtors agree to return or destroy all seismic data, execute a verification with respect to same. (¶ 11) | a) The Debtors intend to engage with Seitel to resolve its objection prior to confirmation. |
| 31. | 1535 | Merit Energy Company and its affiliates (collectively, "**Merit**") | a) Fieldwood's Plan fails to adequately provide for environmental obligations. (§ A)<br>b) The Plan's release and exculpation provisions improperly release third parties. (§ B) | a) *See* Brief, Argument § II.<br>b) *See* Brief, Argument § V. |

14

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 32. | 1536 | W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "**W&T**") | a) The release and exculpation provisions provided at Articles 10.7 and 10.8 of the Plan are impermissibly broad. (p. 3) | a) *See* Brief, Argument § V. |
| 33. | 1537 | HCC International Insurance Company Plc's ("**HCCI**") | a) The exculpation provisions of the Proposed Plan are overly broad and do not comply with current Fifth Circuit law. (§ A)<br>b) The scope of the provisions' releases extends well beyond the proper purpose of exculpation provisions in chapter 11 plans. (§ A) | a) *See* Brief, Argument § V.<br>b) *See* Brief, Argument § V. |
| 34. | 1541 | McMoRan Oil & Gas LLC and Freeport-McMoRan Oil & Gas LLC (collectively, "**McMoRan**") | a) Fieldwood cannot abandon its environmental liabilities, and any entity created by the Plan must also be able to carry out those environmental obligations to comply with applicable law. (p. 4)<br>b) Fieldwood has yet to provide the management disclosures required by section 1129(a)(5). (p. 5)<br>c) Fieldwood has yet to address the vast administrative obligations of the estate arising from its environmental liabilities. (p. 5)<br>d) The failure to comply with applicable law presents barriers to confirmation under both 1129(a)(3) and 1129(a)(11) of the Bankruptcy Code. (p. 5)<br>e) The Plan's release and exculpation provisions are impermissibly broad. (p. 5) | a) *See* Brief, Argument § II.<br>b) *See* Brief, Confirmation Objections § V.<br>c) *See* Brief, Argument § III.<br>d) *See* Brief, Argument § I.<br>e) *See* Brief, Argument § V. |
| 35. | 1543 | U.S. Specialty Insurance Company's ("**USSIC**") | a) The Plan does not comply with the Bankruptcy Code to the extent it seeks to assume and assign surety bonds issued by USSIC without USSIC's consent in violation of section 365(c)(2) of the Bankruptcy Code. (§ A)<br>b) The Plan was not proposed in good faith because it lacks specific information regarding the Debtors' future surety program. (§ B)<br>c) The Plan is likely not feasible because the Plan does not provide information as to how decommissioning obligations will be addressed or how newly created entities will obtain surety coverage. (§ C) | a) The Debtors do not seek to assume and assign any surety bonds. *See also* Brief, Confirmation Objections § V.<br>b) *See* Brief, Argument § IV.<br>c) *See* Brief, Argument § I. |
| | | | **Assumption/Cure Objections** | |
| 36. | 1428 | Nautilus Pipeline Company, L.L.C. ("**Nautilus**") | a) Nautilus believes it is owed $13,517.44 for post-petition amounts due, an amount higher than the Proposed Cure Amount. (¶ 5) | The Debtors intend to engage with Nautilus to resolve its cure claim. |

WEIL:\97998080\12\45327.0005

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | b) Second, Nautilus believes that the universe of contracts between it and the Debtors may include additional agreements (the "Additional Agreements") that are not reflected on Exhibit D, and that all of those contracts are likely necessary to the post-confirmation operations of the Debtors or their assignees. (¶ 8) | |
| 37. | 1429 | Manta Ray Offshore Gathering Company, L.L.C. ("**Manta Ray**") | a) Manta Ray currently believes that the Debtors owe Manta Ray $77,616.30 for prepetition amounts, and $79,459.79 for post-petition amounts. (¶ 4)<br>b) Second, Manta Ray believes that the universe of contracts between it and the Debtors may include additional agreements that are not reflected on Exhibit D, and that all of those contracts are likely necessary to the post-confirmation operations of the Debtors or their assignees. (¶ 7) | The Debtors intend to engage with Manta Ray to resolve its cure claim. |
| 38. | 1445 | Enterprise Gas Processing LLC (together with each of its affiliates, collectively, "**Enterprise**") | a) Enterprise objects to the cure amount; the prepetition cure amount owed to Enterprise Gas Processing LLC by Fieldwood Energy LLC is $142,699.00. (¶ 2, 3)<br>b) Enterprise joins the objections of Nautilus and Manta Ray | The Debtors intend to engage with Enterprise to resolve its cure claim. |
| 39. | 1472 | Houston Energy Deepwater Ventures I, LLC ("**Claimant**" or "**HEDV**") | a) HEDV objects to the cure amounts. (¶ 10) | The Debtors intend to engage with HEDV to resolve its cure claim. |
| 40. | 1475, 1508 | Helis Oil & Gas Company, L.L.C. ("**Helis**") | a) Helis objects to the Schedule of Assumed Contracts/cure amounts; Helis believes a certain contract was not included on the schedule, and that the appropriate cure amount would be at least $2,048,850.00. (ECF No. 1475, ¶ 13)<br>b) Under Section 15.1 (and possibly other provisions of the JOA), Helis contends that the abandonment of the SS 252 assets constitutes a default under the JOA, and possibly under the other SS 252 Executory Contracts. (ECF No. 1508, ¶ 8) | The Debtors intend to engage with Helis to resolve its cure claim. |
| 41. | 1485 | Aker Solutions Inc. ("**Aker**") | a) Aker objects to the proposed zero dollar cure amount. The correct cure amount is approximately $380,612.20. (¶ 2) | The Debtors intend to engage with Aker to resolve its cure claim. |

16

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 42. | 1488, 1491, 1517 | XTO Offshore, Inc., HHE Energy Company, and XH, LLC, and their respective affiliates and subsidiaries (collectively, "**XTO**"), | a)  The Debtors have provided inadequate means for determining Cure Amounts (¶¶ 10-12)<br>b)  The Debtors' Plan seeks to impermissibly alter contract rights under the assumed XTO Contracts. (¶¶ 13-19)<br>c)  The Plan improperly proposes to disallow continuing obligations under assumed executory contracts. (¶¶ 20-23)<br>d)  The Amended Schedule of Assumed Contracts does not provide verifiable Cure Amounts. (¶ 27)<br>e)  The Debtors Cannot Provide Adequate Assurance of Future Performance by the Fieldwood Assignees (¶ 28) | a)  The Debtors served an Assumption Notice and Schedule of Assumed Contracts on counterparties to executory contracts and unexpired leases that will be assumed pursuant to the terms of the Plan.  The Assumption Notice provides details on, among other things, (i) the treatment of executory contracts and unexpired leases pursuant to the Plan, (ii) information regarding proposed cure amounts, and (iii) the procedures for objecting to the assumption and assignment of such contracts, including insofar as it relates to Debtors' proposed cure amounts.  In order for potential contract counterparties to evaluate the treatment of their respective contracts, the Schedule of Assumed Contracts provides comprehensive information and identifiers relating to thousands of contracts, including the following details: (a) the contract counterparties; (b) the oil and gas leases that are associated with or related to the underlying contract; (c) current lease co-working interest owners and JIB partners based on the Debtors' accounting system records; (d) the Cure Amount; and (e) the applicable entity to which contractual interests may be allocated and/or assigned pursuant to the Plan, the Credit Bid PSA, and the applicable Plan of Merger.  Although the Schedule of Assumed Contracts lists thousands of agreements, only a small number of counterparties have reached out to the Debtors with questions regarding the treatment of their agreements, and the Debtors continue to work with these parties in good faith to answer any questions they have regarding the relevant documents.  The Debtors submit that the Assumption Notice and the Schedule of Assumed Contracts provide adequate notice and detail for counterparties to identify their respective agreements and the proposed treatment thereof.<br>b)  *See* Debtors' Response (a) to Nippon Objection above.<br>c)  *See* Debtors' Response (a) to Nippon Objection above.<br>d)  *See* (a) above. The Debtors intend to engage with XTO to resolve its cure claim.<br>e)  *See* Brief, Argument § I. |
| 43. | 1489 | Sea Robin Pipeline Company, LLC, West Cameron Dehydration | a)  Energy Transfer has reason to believe that the Assumption and Cure Notice contains incorrect cure amounts with respect to a number of its contracts (¶ 6) | The Debtors intend to engage with Energy Transfer to resolve its cure claim. |

|  | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
|  |  | Company, L.L.C., Florida Gas Transmission, LLC, Stingray Pipeline Company, L.L.C., Trunkline Gas Company, LLC, and Trunkline Field Services LLC (collectively, "**Energy Transfer**") |  |  |
| 44. | 1490 | Fugro USA Marine, Inc. subsidiaries and related entities ("**Fugro**") | a) Fugro objects to the Notice because it would take $167,749.58 to cure the amounts outstanding to Fugro. The $0.00 cure amount listed on Exhibit A to the Notice fails to meet the test of Section 363(b) as it neither "cures" the contract nor provides adequate assurance of future performance to Fugro | The Debtors intend to engage with Fugro to resolve its cure claim. |
| 45. | 1503 | Genesis Energy, L.P. and its affiliates, High Island Offshore System, L.L.C., Poseidon Oil Pipeline Company, L.L.C., GEL Offshore Pipeline, LLC and Manta Ray Gathering Company, L.L.C. (collectively, "**Genesis**") | a) The assignee(s) of the Genesis Contracts have not met their burden of adequate assurance of future performance in the context of assumption and assignment in connection with divisive mergers. (¶ 9) <br> b) The Plan is not clear (i) how the Debtors will effectuate the divisive mergers to create FWE I, III, and IV and (ii) how the process complies with the safeguards under applicable non-bankruptcy law (much less the procedural safeguards under Section 365 of the Bankruptcy Code). (¶ 19) <br> c) Further, it appears that the Debtors seek to take one contract and duplicate it into two contracts with different counterparties. (¶ 19) <br> d) Genesis' records indicate that the zero amounts listed in the Notice are insufficient to cure the debt owed to Genesis.(¶ 20) | a) *See* Brief, Argument § I. <br> b) *See* Brief, Argument § I. <br> c) *See* Debtors' Response (a) to Ridgewood Objection above. <br> d) The Debtors intend to engage with Genesis to resolve its cure claim. |
| 46. | 1504 | Cox Oil, LLC, Cox Operating LLC, Energy XXI GOM, LLC, Energy XXI Gulf Coast, Inc., Energy XXI Onshore, LLC, | a) The Cox Entities object to preserve their rights to continue reconciling, netting, and payment in the ordinary course of such amounts. | The Debtors intend to engage with the Cox Entities to resolve its cure claim. |

WEIL:\97998080\12\45327.0005

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | Energy XXI Pipeline, LLC, Energy XXI Pipeline I, LLC, Energy XXI Pipeline II, LLC, M21K, LLC and EPL Oil & Gas, Inc., on behalf of themselves and their applicable affiliates (collectively, the "**Cox Entities**") | | |
| 47. | 1509, 1515 | Marubeni Oil & Gas (USA) LLC ("**MOGUS**") | a) The Cure Notice fails to provide sufficient information on its face to allow MOGUS to clearly identify the contracts at issue. (¶ 8)<br>b) The proper cure amount in order Fieldwood to assume the Bullwinkle PHA is $52,073.59. (¶ 10) The proper cure amount due to MOGUS under the relevant Thunder Hawk contracts is $1,731.44 (¶ 11) | a) *See* Debtors' Response (a) to XTO Objection above.<br>b) The Debtors intend to engage with MOGUS to resolve its claim. |
| 48. | 1510 | Targa Midstream Services, LLC, Targa Liquids Marketing and Trade, LLC and Venice Energy Services Company, L.L.C. (collectively, the "**Targa Entities**") | a) The Targa Entities file the Limited Objection to reserve their rights while they work with the Debtors to reconcile the Schedules. (¶ 9)<br>b) To the extent that any of the Unlisted Targa Agreements are included in the Schedules, the Targa Entities object to the Debtors' assumption or assumption and assignment of same unless and until the Debtors fully satisfy the cure amounts, as verified by the contracting Targa Entity.(¶ 14) | The Debtors intend to engage with the Targa Entities to resolve their cure claims. |
| 49. | 1512 | SBM Gulf Production, LLC ("**SBM**") | a) SBM files this limited objection to ensure that the correct PHA Agreements are included, to the extent that the Cure Notices contain any errors in the description of the agreements, parties, properties covered, or otherwise, or are incomplete with respect to any of the PHA Agreements. (¶ 3) | The Debtors intend to engage with SBM to resolve its cure claim. |
| 50. | 1513 | Walter Oil & Gas Corporation ("**Walter**") | a) The Cure Notice fails to provide sufficient information on its face to allow Walter to clearly identify the contracts at issue. (¶ 17) | c) *See* Debtors' Response (a) to XTO Objection above.<br>d) The Debtors intend to engage with Walter to resolve its cure claim. |

WEIL:\97998080\12\45327.0005

|  | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
|  |  |  | b) The objection identifies several incorrect cure amounts (¶ 19 – 23) |  |
| 51. | 1514 | Performance Energy Services, LLC ("**PES**") | a) PES files the Objection solely to preserve its rights while it continues these discussions with the Debtors. (¶ 11) | The Debtors intend to engage with PES to resolve its cure claim. |
| 52. | 1516 | Ankor Energy LLC and Ankor E&P Holdings LLC (collectively, "**Ankor**") | a) The proper cure amount in order for Fieldwood to assume the PL 13 OOA is **$554,449.36**. (¶ 4) | The Debtors intend to engage with Ankor to resolve its cure claim. |
| 53. | 1519 | BP Exploration & Production Inc. ("**BP**") | a) Because NewCo and FWE IV are not feasible, and lack sufficient cash flow to meet all future obligations, the Debtors and those Successor FWE Entities have failed to provide adequate assurance of future performance with respect to the BP Contracts proposed to be assigned to those entities as required by section 365(f). (¶ 10)<br>b) FWE I has not offered any adequate assurance of future performance. (¶ 10) | a) *See* Brief, Argument § I.<br>b) *See* Brief, Argument § I. |
| 54. | 1522 | The State of Louisiana, Department of Natural Resources and the State Mineral and Energy Board ("**State**") | a) The State objects to the assignment of these interests with a zero dollar cure amount. These discrepancies result in the net cure amount of $68,651.38. (p. 2) | The Debtors intend to engage with the State to resolve its cure claim. |
| 55. | 1523 | Plains Gas Solutions, LLC (referred to herein as "**PGS**") | a) PGS requests that Debtors be required to cure the defaults under the Agreements by making payment to PGS in the amount of $75,577.21. (p. 2) | The Debtors intend to engage with PGS to resolve its cure claim. |
| 56. | 1524 | Irongate Rental Services, LLC ("**Irongate**") | a) The correct cure amount associated with Irongate's agreement is **$11,601.16**. | The Debtors intend to engage with Irongate to resolve its cure claim. |
| 57. | 1525 | EXPRO AMERICAS, L.L.C. ("**Expro**") | a) The correct cure amount associated with Expro's agreement is $638,794.96. (p. 2) | The Debtors intend to engage with Expro to resolve its cure claim. |

| | ECF No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 58. | 1527 | Talos Energy Offshore LLC, Talos Energy LLC, Talos Energy Inc., and Talos Production Inc. (collectively, "**Talos**") | a) The correct cure amount for the Property Agreements is not less than $3,297,026.23. (¶ 17)<br>b) The Debtors and Talos must preserve the Mississippi UOA terms in the assignment and assumption of the Mississippi UOA. The indemnification obligations arising from the Mississippi UOA are liabilities which must be cured in order to assume and assign the Mississippi UOA or the UOA-related contracts. (¶ 22) | a) The Debtors intend to engage with Talos to resolve its cure claim.<br>b) The Debtors intend to engage with Talos to resolve its objection through consensual language added to the proposed Confirmation Order. |
| 59. | 1538 | W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "**W&T**") | a) Debtors' Cure Notices list $0 in cure instead of curing the amounts detailed on the Objection. (p. 4)<br>b) The releases in Article 10.7 of the Plan and treatment of security rights under operating agreements could impair W&T's rights under an assumed contract. (p. 4) | c) The Debtors intend to engage with W&T to resolve its asserted cure claim.<br>d) *See* Brief, Argument § IV. |
| 60. | 1542 | McMoRan Oil & Gas LLC and Freeport-McMoRan Oil & Gas LLC (collectively, "**McMoRan**") | a) Debtors' Cure Notices list $0 in cure instead of curing the approximately $2 million in unpaid joint interest billings. (p. 4)<br>b) The releases in Article 10.7 of the Plan and treatment of security rights under operating agreements could impair McMoRan's rights under an assumed contract. (p. 4)<br>c) Debtors must provide adequate assurance of future performance. (p. 4) | a) The Debtors intend to engage with McMoRan to resolve its asserted cure claim.<br>b) *See* Brief, Argument § IV.<br>c) *See* Brief, Argument § I. |

WEIL:\97998080\12\45327.0005